PRISON LAW OFFICE
DONALD SPECTER (State Bar # 83925)
KIMBER SIMPSON (State Bar # 190045)
San Quentin, California 94964
Telephone (415) 457-9144

McCUTCHEN, DOYLE, BROWN & ENERSEN
WARREN GEORGE (State Bar # 53588)
Three Embarcadero Center
San Francisco, California 94111
Telephone (415) 393-2000

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN (State Bar # 096891)
SANFORD JAY ROSEN (State Bar # 062566)
THOMAS NOLAN (State Bar # 169692)
155 Montgomery Street, 8th Floor
San Francisco, California  94104
Telephone (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF (State Bar # 36377)
701 Fifth Avenue
Seattle, Washington 98104
Telephone (206) 447-0900

DISABILITY RIGHTS AND EDUCATION DEFENSE FUND
ELAINE B. FEINGOLD (State Bar # 99226)
2212 6th Street
Berkeley, California 94710
Telephone (510) 644-2627

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al. | Case No. Civ. S 90-0520 LKK-JFM |
| Plaintiffs, | **PLAINTIFFS' OBJECTIONS TO THE FIRST MONITORING REPORT OF THE SPECIAL MASTER** |
| vs. | |
| PETE WILSON, et al., | Date: No Hearing Requested |
| Defendants | Time: No Hearing Requested |
| | Hon. Lawrence K. Karlton |

489\3\PLEADING
OBJECTIONS.05-01-98

937

TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| I. THE COURT SHOULD IMPOSE STRICT DEADLINES CONCERNING FINALIZATION OF A REMEDIAL PLAN FOR STAFFING AND SHOULD ISSUE MORE DETAILED REQUIREMENTS ON THE STAFFING ISSUE | 4 |
| II. THE CONCLUSIONS OF THE REPORT REGARDING TREATMENT AND POLICIES IN ADMINISTRATIVE SEGREGATION SHOULD BE MODIFIED. | 7 |
| III. THE COURT SHOULD SET FORTH SPECIFIC DEADLINES IN ITS ORDER ADOPTING THE FIRST REPORT AND SHOULD CAUTION THE PARTIES THAT THE DEADLINES WILL NOT BE EXTENDED AGAIN WITHOUT A PRIOR SHOWING OF GOOD CAUSE. | 10 |
| IV. THE COURT SHOULD CLARIFY THE NATURE OF THIS REPORT UNDER THE ORDER OF REFERENCE | 11 |
| V. CONCLUSION. | 13 |

## INTRODUCTION

In February 1998, the Special Master issued a draft version of his first report concerning Defendants' compliance with the plans and procedures provisionally approved by this Court last June. Plaintiffs and Defendants each timely submitted objections to the report. After considering the objections, the Special Master issued a final report on April 20, 1998 entitled "First Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols" ("First Report").

As a preliminary matter, Plaintiffs recognize that monitoring Defendants' mental health delivery system and the complex provisional remedial plans in thirty institutions is a daunting and overwhelming task. Furthermore, Plaintiffs appreciate the candor with which the Special Master acknowledges that the size of this monitoring task is greater than he or his staff initially understood, necessitating a substantial increase in his office's staffing, especially in the area of clinically trained monitors. First Report at 2-3. The Report is also appropriately frank and forthright about its limitations. See First Report at 4 ("This report can do no more than reflect the state of affairs at each institution at the time of the monitoring team's visit, which is noted at the beginning of the discussion of each facility.") Finally, although Plaintiffs continue to believe that some of the generalized assertions of Defendants' compliance in the Report are not supported by sufficient evidence, Plaintiffs will not press these fact-intensive objections here with the expectation that future monitoring reports will examine Defendants' compliance

1  efforts with greater specificity, documentation, and detail, and
2  with greater clinical participation.
3       It is necessary to bring several specific issues raised by
4  the Report to the attention of this Court at this time in the form
5  of objections.**1**  Plaintiffs object to four aspects of the First
6  Report.
7       Plaintiffs' <u>first</u> objection concerns the Special Master's
8  recommendations with respect to staffing, an area where no
9  remedial plan has been finalized or even provisionally approved.
10 The First Report makes clear that there is currently a mental
11 health care staffing crisis in the California Department of
12 Corrections.  The Report states that

> <u>Any fair reading of the preceding institutional review makes clear that current, actual staffing patterns in CDC institutions impede or prevent the delivery of the mental health services required by the department's own program guides.</u>

17 First Report at 242.  Because of this critical staffing shortage,
18 this Court should issue specific orders to assure that all
19 vacancies in currently budgeted positions are promptly filled.
20      Plaintiffs' <u>second</u> objection concerns the Report's
21 consideration of Defendants' Administrative Segregation policies.
22 The Court and the Special Master should be particularly vigilant
23 in reviewing this critical area.  The First Report's
24 recommendations concerning Administrative Segregation must be
25 modified in several respects.  In addition, the Court should

---

**1** Plaintiffs are <u>not</u> requesting a hearing on the objections set forth herein, which concern a small number of issues, but rather suggest that the Court resolve these issues on the basis of briefing alone.  Pursuant to Paragraph C of the Order of Reference, Plaintiffs herein present only objections which were previously submitted to the Special Master.

1  require that Defendants amend their policy concerning
2  Administrative Segregation within 45 days to provide for immediate
3  central office review of custodial overrides on any clinical
4  recommendation to transfer a decompensating inmate out of
5  Administrative Segregation.
6     Plaintiffs' third objection concerns lack of compliance with
7  the schedules, time lines and instructions set forth in this
8  Court's prior Orders. As the Special Master recognizes, in the
9  last two years, schedules and deadlines established in Court
10 orders have not been met and, in most cases, requests to this
11 Court for relief from its Orders have been made after the fact.
12 Plaintiffs are concerned that, unless the Court intervenes, the
13 critical deadlines that the Special Master (again) requests the
14 Court extend will again go unmet without any consequences except
15 the resulting delay in the delivery of adequate mental health care
16 to the plaintiff class. Plaintiffs therefore request that the
17 Court, in adopting this Report, set forth a firm schedule and
18 caution Defendants that, if necessary, they must ask the Court for
19 an extension before the deadline expires and justify the delay.
20    Plaintiffs' fourth and final objection concerns the
21 procedural nature of this First Report. Because the Report
22 concerns compliance with "provisionally approved" plans and also
23 concerns Defendants' progress in developing non-approved remedial
24 plans and procedures in certain remaining areas, the Court should
25 clarify that this Report is an interim report on the progress of
26 the remedial plan under section A(3) of the Order of Reference.
27 It is important for the Court and the parties to recognize that as
28 of this date, there has only been formal monitoring of five of the

twelve areas in which the Court has called for the development of remedial plans, and that <u>none</u> of the remedial plans have been fully or finally approved by this Court. See First Report at 2.

I.  **THE COURT SHOULD IMPOSE STRICT DEADLINES CONCERNING FINALIZATION OF A REMEDIAL PLAN FOR STAFFING AND SHOULD ISSUE MORE DETAILED REQUIREMENTS ON THE STAFFING ISSUE**

The First Report reveals two critical problems with Defendants' mental health staffing. First, there is simply not enough mental health staff:

> No CDC institution is without vacancies in its mental health staff. Most have a substantial number of clinical vacancies, whether among psychiatrists, psychologists, or psych social workers. In late 1997, 25 percent of psychiatric positions system-wide (including chief psychiatrists, senior psychiatrists, and staff psychiatrists) were vacant. <u>There has not been much change in that figure since the Master's initial report on staffing and recruiting in April, 1996, when the percent of psychiatric vacancies was 24.8, and there has been no improvement in those numbers thus far in the first quarter of 1998</u>.

First Report at 240-241. Second, in addition to the problem of vacancies, there is a serious problem raised by the Department's excessive reliance on contract clinicians. Although the Master notes that in one instance the Department has been able to secure some continuity of clinical staff using contract workers, <u>see</u> First Report a 241, the far more common experience has been that institutions using contract psychiatric workers "have struggled with a constantly rotating succession of mediocre practitioners." <u>Id.</u>

The original findings and recommendations of the Magistrate

1  Judge in this case required defendants to fill all presently
2  authorized positions for the provision of mental health care
3  services within ninety (90) days of the court order.  June 6, 1994
4  Findings and Recommendations at 80.  Defendants were further
5  required to develop and implement a formula for mental health care
6  staffing ratios at all institutions within ninety (90) days;
7  develop and implement a recruitment program including but not
8  limited to provision of adequate compensation, for the recruitment
9  of mental health staff at every institution within ninety (90)
10 days; and fill those positions determined to be necessary under
11 the formula in one hundred eighty (180) days of the Court order.
12 June 6, 1994 Findings and Recommendations at 80.

13     The District Court adopted the Findings and Recommendations
14 of the Magistrate Judge.  September 13, 1995 Order.  However, the
15 Court did not establish specific time frames for completion of
16 these tasks.  Id. at 80.  Instead, the Court referred the
17 establishment of timelines to the Special Master.  Id.  The
18 Special Master then set a sixty (60) day timeline from entry of
19 the February 7, 1996 Court Order for defendants to develop and
20 submit a plan and any other documentation on a ratio or formula
21 for health care staffing and a recruitment program for mental
22 health staff.  February 7, 1996 Order at 2.

23     Despite Plaintiffs' objections, Defendants were then given
24 several additional extensions for submission of the remedial plan,
25 but have not yet submitted a plan to date.  January 30, 1997 Order
26 at 1-2; April 17, 1997 Order.

27     Last May, Plaintiffs agreed to a further six-month delay in
28 this long-delayed process at the request of the Special Master in

1  return for Defendants' promise that they would make full
2  implementation of a recruitment plan the highest priority. First
3  Report at 242. Defendants, however, failed to comply with the
4  terms of the agreement and have failed to comply with other Court
5  orders related to staffing. See Id. at 243 ("Four years [after
6  the initial Findings and Recommendations], vacancies remain
7  unacceptably high.")  Moreover, the First Report states that the
8  long overdue bureaucratic enhancements to the recruitment process
9  have been in place since January 5, 1998, yet "through the end of
10 March, 1998 the changes have yet to bear fruit."  First Report at
11 243.  The inaction and delay by Defendants in this area has meant
12 that fundamental, serious and ongoing deficiencies in the
13 provision of mental health services have not been corrected.
14      The Special Master has recommended that defendants be given
15 one last chance to implement their recruitment plan, fill their
16 vacancies, and improve the quality and quantity of their
17 contracted services.  First Report at 244.  "The failure to do so
18 should result in an immediate and unqualified order to fill
19 vacancies within 60 days."  Id.
20      While plaintiffs believe that the record fully supports the
21 issuance of such an Order by this Court now, plaintiffs
22 reluctantly agree with the "one last chance" recommended by the
23 Master.  Plaintiffs request, however, that this Court set forth
24 specific requirements and a tight schedule for compliance assuring
25 that this critical part of the remedial process be fully addressed
26 this year.  Plaintiffs' proposed order, filed herewith, sets forth
27 a recommended schedule.
28

## II. THE CONCLUSIONS OF THE REPORT REGARDING TREATMENT AND POLICIES IN ADMINISTRATIVE SEGREGATION SHOULD BE MODIFIED

Plaintiffs have two primary objections to the First Report's treatment of Administrative Segregation issues. Plaintiffs object to the Report's failure (1) to include a finding and recommendation regarding the delivery of care in Administrative Segregation and (2) to require defendants to implement a policy allowing for immediate and meaningful review of custodial decisions to override clinical recommendations to transfer actively decompensating inmates out of Administrative Segregation.

First, Plaintiffs have numerous concerns regarding mental health treatment in Administrative Segregation. The Report cites at least seven institutions with either no psych tech or with rounds less frequent than the five per week required in the program guides. See, MHSDS Program Guide (attachment to June 6, 1997 Report on Plans) at 8-3; see also, First Report sections discussing SVSP, WAS, SOL, CVSP, HDSP, CCI, COR, NCWF. Even at the institutions which cited five rounds weekly by the psych tech or another clinician (First Report at discussion of ASP, CCC, CCWF, CIM, CIW, CTF, DVI, ISP, LAN, MCSP, NKSP, PVSP, RJD, SAC-FOL, SCC, VSPW), the Report found that at three of these institutions inmates were dissatisfied with their treatment and/or were not receiving adequate treatment in Ad Seg. See First Report at 222, 228(CCWF), at 28-29 (SAC-FOL), and at 45-46 (CCC). In addition, according to the Report, many prisons have sporadic, delayed, or inadequate availability of psychologists and/or psychiatrists in Ad Seg. First Report at 46 (CCC), 172 (CCI), 222, 228 (CCWF), 177 (CIM), 95, 101-102(COR), 28-29 (SAC-FOL),

1 | 76 (SOL), 117-118 (SVSP), 142 (WAS).  Altogether, at least eleven
2 | of the twenty-six institutions with Ad Seg units reviewed in the
3 | Report are having serious difficulties in providing adequate
4 | treatment in those units, including decompensating inmates,
5 | inadequate treatment, and lack of adequate staffing in
6 | Administrative Segregation.  See First Report at 222-224 (CCWF),
7 | 26 (SAC-FOL), 46 (CCC), 76 (SOL), 94-95 (COR), 111 (ASP), 117-118
8 | (SVSP), 138-143 (WSP), 161 (LAC), 168 (CCI), 177 (CIM).
9 |     In addition, data has been provided by Defendants regarding
10 | the number of CCCMS and EOP inmates in Ad Seg and the amount of
11 | time these inmates are housed there.  See Exhibit B to Nolan Decl.
12 | Two disturbing facts are revealed by this data.  First, a
13 | significant number of inmates receiving mental health treatment
14 | have been housed in Ad Seg for long periods of time, for some
15 | inmates, periods of six months to a year, or even longer. Id.
16 | Second, while an accurate measure of the percentage of EOP inmates
17 | is not given in the report, it appears from the sheer numbers of
18 | mental health category inmates listed in Exhibit B that the
19 | percentage of CCCMS and EOP inmates in Ad Seg is excessive.  The
20 | chart suggests that inmates with mental health concerns are not
21 | stabilized while in Ad Seg, and therefore continue to act out,
22 | resulting in their continued, and for some, apparently indefinite,
23 | placement in Ad Seg.  In addition, it appears that inmates with
24 | mental health problems are not being stabilized on the mainline
25 | and therefore are housed in Ad Seg at a disproportionately high
26 | rate.  While there may be other explanations as to why inmates
27 | with mental health concerns are in Ad Seg disproportionately and
28 | for long periods of time, Plaintiffs believe this data indicates

1 serious and ongoing problems that should be addressed immediately.

2 Based on the data provided by Defendants and the information
3 regarding continuing problems with Ad Seg treatment in the First
4 Report, Plaintiffs request that the Special Master be directed to
5 focus monitoring resources on this critical issue in order to
6 facilitate prompt resolution of this issue in the months ahead.

7 Second, the current policy on custodial overrides of clinical
8 recommendations that a decompensating inmate be removed from
9 Administrative Segregation does not comply with this Court's June
10 27, 1997 Order. The First Report explains that:

> The June 27, 1997 Order required the defendants to adopt a process in which custodial administrators who override a clinical recommendation to transfer an actively decompensating inmate out of administrative segregation must put the reasons for the override in writing. In addition, the override must be subject to review. Exhibit K provides a September 4, 1997 memorandum, which purports to meet that requirement. It clearly directs a classification committee that rejects a clinician's recommendation for transfer of an actively decompensating mentally ill inmate to a mental health program to document the reasons for its decision. Presumably, the normal appellate provisions of the classification process apply to this decision, which, thus, may be subject to review.

20 First Report at 251. The ICC appeals process is not a meaningful
21 review process. First, such a review process is not subject to
22 immediate review by CDC mental health personnel in Sacramento.
23 Second, such an appeal could only be initiated by the inmate, who,
24 since he is decompensating, would be in no position to press such
25 a matter. The Court should require Defendants to implement a
26 policy which provides for automatic, rapid, and meaningful
27 clinical review of all such overrides. See Proposed Order, filed
28 herewith.

### III. THE COURT SHOULD SET FORTH SPECIFIC DEADLINES IN ITS ORDER ADOPTING THE FIRST REPORT AND SHOULD CAUTION THE PARTIES THAT THE DEADLINES WILL NOT BE EXTENDED AGAIN WITHOUT A PRIOR SHOWING OF GOOD CAUSE.

In their preliminary objections to the draft monitoring report, Plaintiffs requested that the Special Master submit a revised timeline and schedule for compliance with the Court's prior Orders. See Exhibit A to Nolan Declaration ("Nolan Decl."), Plaintiffs' February 27, 1998 Objections to Special Master's Report, at 2-5. In response to these objections, the Special Master has set forth several new deadlines. See First Report at 246, 247, 251, 252-253.

Plaintiffs are concerned that simply adopting the report of the Special Master containing these deadlines, without more, could perpetuate a pattern that has developed in this case of allowing important Court deadlines to pass unmet without any explanation or consequences. In the past, a number of deadlines have been missed by Defendants without first approaching the Court or the other parties and asking for more time. For example, the CDC's policy allowing administration of Clozapine was adopted three months after the Court-ordered deadline. See First Report at 251-252. Another example has been the staffing issue, an area where deadlines have been repeatedly extended in the past. As the discussion of this issue by the Special Master makes clear, see First Report at 242-243, Defendants' deadlines for implementing a comprehensive staffing plan have been extended repeatedly without any consequences or warnings to Defendants. Compare Special

1  Masters' June 6, 1997 Report on Plans at 18 (setting September 25,
2  1997 deadline for defendants to implement that bureaucratic
3  structure of defendants' enhanced recruitment structure were in
4  place) with First Report at 243 (bureaucratic structure not in
5  place until January 5, 1998).  As discussed above, Plaintiffs
6  request that the Court give Defendants a specific order and
7  deadline for addressing this issue.

8      Plaintiffs acknowledge that the remedial task confronting the
9  Court and the parties in this case is a difficult one, and that
10 some steps in the development of adequate remedial plans and
11 programs will take longer than initially expected.  However, the
12 time has come for the Court to set and enforce strict compliance
13 with deadlines.  See Proposed Order Adopting Interim Report of
14 Special Master, filed herewith.

## IV. THE COURT SHOULD CLARIFY THE NATURE OF THIS REPORT UNDER THE ORDER OF REFERENCE

18     In the December 11, 1995 Order of Reference, the Court
19 appointed the Special Master and required him to work with
20 Defendants to develop remedial plans that address the
21 constitutional violations previously found to exist.  December 11,
22 1995 Order of Reference at 3 (A(1)).  The Court later directed the
23 Special Master to develop remedial plans in twelve (12) subject
24 areas.  February 7, 1997 Order at 2-4.  Upon Court approval of
25 each plan, the Special Master was directed to monitor Defendants'
26 implementation and compliance of each plan and prepare periodic
27 reports assessing such compliance.  Id. at 4.  On June 6, 1997,
28 the Special Master submitted a number of plans for Court approval

1  and a Report (hereafter "Report on Plans") containing
2  recommendations regarding unresolved issues. The June 27, 1997
3  Order preliminarily approved some of the remedial plans and
4  adopted the Report on Plans.

5  To date, fully developed remedial plans in the areas of
6  staffing and recruitment, involuntary medication, and quality
7  assurance and peer review have not been even preliminarily
8  approved by the Court.

9  Because the First Report contains information about these
10 three areas in which remedial plans are not yet final, the Court
11 should, at the very least, clarify that as to those three areas,
12 the First Report is not a Compliance Report at all, but is rather
13 a report on the steps taken by defendants to develop an
14 appropriate remedial plan.

15 The Order of Reference directs the Special Master to submit
16 formal compliance reports as to Court approved plans. See
17 December 11, 1995 Order of Reference at A(5). In addition, a
18 separate provision of the Order of Reference provides for more
19 informal interim reports on the progress of the remedial plans,
20 see Order of Reference at A(3), and directs the Special Master to
21 monitor defendants' implementation and compliance with any
22 remedial plan. Id. at A(4). The Order of Reference, at paragraph
23 C, sets forth specific procedures and standards for judicial
24 review of "any compliance report of the Special Master filed in
25 accordance with paragraph A(5)." Reports that are filed in
26 accordance with section A(3) of the Order of Reference are
27 presumably not subject to the same formal procedures.
28 Thus, the Order of Reference appears to require the Special

Master to file a compliance report pursuant to paragraph A(5) only as to Court approved remedial plans. However, to date, the Court has not fully or finally approved <u>any</u> plans. Rather, the Court has <u>preliminarily</u> approved plans in nine subject areas. June 27, 1997 Order at 1. Because plans have only been preliminarily approved, the Draft Report should be retitled as an "Interim Special Master's Report Pursuant to Paragraph A(3) of the Order of Reference."

In addition, the portions of the First Report on staffing must be identified as an interim report because to date a staffing plan has not even been preliminarily approved. Further, while the Draft Report addressed issues outside the five stated subject areas, reporting on these additional issues was not complete.**2** Reporting on these additional issues was generally sporadic in nature and did not systematically address defendants' level of compliance at the different institutions. Thus, at minimum, the Draft Report on all issues outside the five reported areas should be retitled as an interim report.

**CONCLUSION**

For all of the reasons set forth above, the Court should adopt the Special Master's Report as an Interim Report under

---

**2** The Special Master acknowledges in the First Report that he had addressed only five (5) of the remaining subject areas plus several unresolved issues. First Report at 2. The five areas addressed in the Draft Report were staffing and services, administrative segregation, inpatient transfers, the use of force and the heat plan. <u>Id.</u> The Report does not address the following six (6) provisionally approved plans: screening for new admissions and readmissions, training programs, medication management, screening of intra-departmental transfers, compilation and maintenance of mental health records, and procurement of mental health records.

1 | paragraph A(3) of the Order of Reference, set forth specific
2 | deadlines, and require Defendants to amend their Administrative
3 | Segregation policy as detailed in the attached Proposed Order.
4 |
5 |
6 | Dated:  May 1, 1998                    ROSEN, BIEN & ASARO, LLP
7 |
8 |                                         By: /s/ Michael W. Bien
9 |                                             Michael W. Bien
                                                Attorneys for Plaintiff

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the City and County of San Francisco, California, and not a party to the within action. My business address is 155 Montgomery Street, 8th Floor, San Francisco, California. On May 1, 1998 I served a true copy of the following documents:

PLAINTIFFS' OBJECTIONS TO THE FIRST MONITORING REPORT OF THE SPECIAL MASTER ON COMPLIANCE

DECLARATION OF THOMAS NOLAN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT

PROPOSED ORDER ACCEPTING REPORT OF SPECIAL MASTER AND SETTING DEADLINES

on the parties in said action by placing a true copy thereof enclosed in a sealed envelope to be delivered in the manner indicated below and addressed as follows:

By U.S. MAIL

J. Michael Keating, Jr.
Little Bulman & Reardon, P.C.
50 South Main Street
Providence, RI 02903

Bruce Slavin, Esq.
Assistant Supervising
Deputy Attorney General
50 Fremont St., Suite 300
San Francisco, CA 94105

I declare under penalty of perjury that the foregoing is true and correct. Executed this May 1, 1998 at San Francisco, California.

Cliona Plunkett

H:489\3\posm8.501