FILED

JUL 26 1999

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,　　　　　　No. CIV S-90-0520 LKK JFM P

vs.

PETE WILSON, et al.,

    Defendants.　　　　　　ORDER
_____/

    The special master has filed three reports, all of which include recommendations for action by this court. On May 19, 1999, the special master filed a report on staffing vacancies, in which he recommends that

> (1) defendants be required to reduce within 90 days the vacancy rate among psychiatrists to 25 percent or less and among psych social workers to ten percent or less, while keeping vacancy rates among other categories of mental health staff at present or comparable rates;
>
> (2) defendants be required to reduce within 90 days the employment of multiple, short-term contract psychiatrists[1] to fill vacancies from the current 40 percent to 25 percent or less of contract services provided, without reducing overall contract

---

[1] A short-term contract psychiatrist is defined by the special master as "[a] substitute psychiatrist who works less than 40 hours a month in any one institution, in the absence of some extenuating circumstance." (Special Master's Report on Staffing Vacancies, filed May 19, 1999, at 14.)

1   1055

services unless justified in specific instances by decreasing vacancies; and

(3) defendants be required to develop within 90 days a plan for the retention of psychiatrists in CDC, addressing such issues as the payment structure that penalizes clinical administrators, opportunities for career and professional development, flexibility and enhancements for remote assignments, the development of incentives, monetary and/or otherwise, for longevity, etc.

(Special Master's Report on Staffing Vacancies, at 14-15.) Neither of the parties have filed objections to report on staffing vacancies or the recommendations contained therein. Good cause appearing, the recommendations will be the order of the court.

Also on May 19, 1999, the special master filed supplementary recommendations on staffing ratios and administrative segregation.[2] He recommends as follows:

(1) The defendants' current ratios for reception, MHCB, EOP, PSU and 3CMS programs should be provisionally approved by the court, with the exception of the existing ratio of psychiatrists to inmates in the 3CMS program, which should be subject to further review;

(2) Defendants should be directed to adopt and implement within 90 days the following staffing ratio for administrative segregation:

(a) Seven-day weekly coverage in each administrative segregation unit by a psych tech, accomplished by adding a 0.61 psych tech position to each of the 30 positions now authorized;

(b) One half-time psychiatrist to each administrative segregation unit;

(c) One full-time case manager (psychologist or psych social worker) to each administrative segregation unit to handle ICC and IDTT hearings and meetings and provide individual counseling as needed;

(d) One additional full-time psych tech to each administrative segregation unit to extend the services of the unit case manager and offer sessions in activities of daily living or other therapeutic activities;

---

[2] The report is dated May 12, 1999, and the recommendations contained therein supersede previous recommendations of the special master concerning these issues.

(e) One full-time clerical position to support the work of the administrative segregation clinical team; and

(f) One full-time case manager (psychologist or psych social worker) for every nine EOP inmates in administrative segregation with a goal of providing ten hours a week of structured therapeutic activities for EOP inmates in administrative segregation units.

(3) Defendants should be directed to adopt an actual prevalence rate of 10.6 in their FY 99-00 budget and a prevalence rate of 11.1 percent as of January 1, 2000, and to review and adjust the projected prevalence figure annually based on the then actual prevalence rate; and

(4) Defendants should be directed to develop and implement a plan to train mental health staff, staff assistants and hearing officers involved in the new policy on mental health input into the adjudication of disciplinary infractions, the 115 process.

(See Supplementary Recommendations of the Special Master on Staffing Ratios and Administrative Segregation, at 12-13.)

Defendants filed limited objections, objecting principally to the time frame proposed by the special master for implementation of the staffing ratios for administrative segregation. Plaintiffs have filed a reply to defendants' objections. After further consultation with the special master, the court will extend until December 31, 1999 the time for implementation of the staffing ratios proposed by the special master. The special master has also advised the court that defendants have adopted the 10.6 prevalence rate in their FY 99-00 budget. No further order of the court in that regard is necessary at this time.

Finally, on May 26, 1999, the special master filed his third monitoring report concerning defendants compliance with the plans, policies, and protocols provisionally approved by the court. The report contains a series of recommendations. None of the parties have filed objections with the court. After review of the third monitoring report, further consultation with the special master, and good cause appearing therefore, the court will make certain orders in accordance with recommendations of the special master contained in the third monitoring report.

/////

In accordance with the above, and good cause appearing therefore, IT IS HEREBY ORDERED that:

1. Within ninety days from the date of this order defendants shall reduce the vacancy rate among psychiatrists to 25 percent or less and among psych social workers to ten percent or less, while keeping vacancy rates among other categories of mental health staff at present or comparable rates.

2. Within ninety days from the date of this order defendants shall reduce the employment of multiple, short-term contract psychiatrists, as defined by the special master and this order, to fill vacancies from the current 40 percent to 25 percent or less of contract services provided, without reducing overall contract services unless justified in specific instances by decreasing vacancies.

3. Within ninety days defendants shall develop and submit to the special master a plan for the retention of psychiatrists in CDC, addressing such issues as the payment structure that penalizes clinical administrators, opportunities for career and professional development, flexibility and enhancements for remote assignments, the development of incentives, monetary and/or otherwise, for longevity, etc.

4. The defendants' current ratios for reception, MHCB, EOP, PSU and 3CMS programs are provisionally approved by the court with the exception of the existing ratio of psychiatrists to inmates in the 3CMS program.

5. On or before December 31, 1999 the special master shall file further recommendations addressing the staffing ratio of psychiatrists to inmates in the 3CMS program.

6. On or before December 31, 1999, defendants shall adopt and implement the following staffing ratio for administrative segregation:

    a. Seven-day weekly coverage in each administrative segregation unit by a psych tech, accomplished by adding a 0.61 psych tech position to each of the 30 positions now authorized;

       b. One half-time psychiatrist to each administrative segregation unit;

       c. One full-time case manager (psychologist or psych social worker) to each administrative segregation unit to handle ICC and IDTT hearings and meetings and provide individual counseling as needed;

       d. One additional full-time psych tech to each administrative segregation unit to extend the services of the unit case manager and offer sessions in activities of daily living or other therapeutic activities;

       e. One full-time clerical position to support the work of the administrative segregation clinical team; and

       f. One full-time case manager (psychologist or psych social worker) for every nine EOP inmates in administrative segregation with a goal of providing ten hours a week of structured therapeutic activities for EOP inmates in administrative segregation units.

       7. Within ninety days from the date of this order defendants shall develop and implement a plan to train mental health staff, staff assistants and hearing officers involved in the new policy on mental health input into the adjudication of disciplinary infractions, the 115 process.

       8. Within ninety days from the date of this order defendants shall develop and implement a system-wide data collection process for capturing information on mental health transfers at the institutional level. The process shall include, among other things, use of a log that records the dates of referral, classification, endorsement and actual movement of inmates referred to a higher level of treatment at any other facility, together with the reasons for rejection of any such referral, and a requirement that reception centers keep a log of all inmates referred to a mental health program who remain in reception longer than sixty days.

       9. On or before December 31, 1999, defendants shall develop and implement a plan for expediting the transfers of seriously mentally disordered inmates to programs with the level of care to which they have been referred. Said plan shall be based on the information

1 gathered from data collected in the system-wide data collection process described in paragraph 7 of this order.

10. Within ninety days defendants shall develop a system in each institution for identifying and recording self-injurious episodes, including forms, logs and other documents necessary to support such a recording system.

11. Within ninety days defendants shall develop a process for tracking self-injurious inmates discharged from an infirmary or MHCB unit to make sure that indicated clinical follow-up occurs as prescribed.

12. Within ninety days defendants shall develop and implement a system-wide method for tracking, recording and aggregating institutional data on staff members' completion of mental health training courses required in the plans provisionally approved by the court in June 1997. Said system shall list all staff in an institution with an indication of whether each individual has, or has not, attended required courses.

DATED: July 23, 1999.

LAWRENCE K. KARLTON
CHIEF JUDGE EMERITUS
UNITED STATES DISTRICT COURT

United States District Court
for the
Eastern District of California
July 26, 1999

* * CERTIFICATE OF SERVICE * *

2:90-cv-00520

Coleman

v.

Reagan

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on July 26, 1999, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
Donald Specter                         SJ/LKK
Prison Law Office
General Delivery                       CF/JFM
San Quentin, CA  94964

Michael W Bien
Rosen Bien and Asaro
155 Montgomery Street
Eighth Floor
San Francisco, CA  94104

Bruce Michael Slavin
Attorney General's Office of the State of California
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-3664

J Michael Keating Jr
Christopher H Little & Associates
50 S Main St
Providence, RI  02903

Edmund F Brennan
United States Attorney
501 I Street
Suite 10-100
Sacramento CA 95814
```

Jack L. Wagner, Clerk