

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,             No. CIV S-90-0520 LKK JFM P

vs.

PETE WILSON, et al.,

    Defendants.          ORDER
_____/

        Pursuant to the Agreement for Merger and Dismissal of <u>Gates v. Gomez</u>, Case No. CIV S-87-1636 LKK JFM P, approved by this court on November 13, 1998, defendants have filed a proposed transition plan. On November 15, 1999, the special master in the above-captioned case and the mediator in <u>Gates</u> filed joint recommendations on the transition plan. On November 23, 1999, the parties filed a stipulation of non-objection to the joint recommendations.

        In accordance with one of the recommendations of the special master and the mediator, by order filed December 21, 1999, the court ordered defendants to provide to the special master specific information on how they would meet the need for the 9.66 custody positions they have identified as necessary for the first stage of the transition process and directed the special master to report to the court thereafter on whether the information provided was satisfactory and whether the transition plan was ready for consideration of approval. On

//32

January 27, 2000, the special master reported to the court that defendants had not submitted the necessary funding request for the positions and recommended that defendants be ordered to fill the positions within thirty days. On February 2, 2000, defendants filed a document styled as objections to the special master's report accompanied by a declaration from David Tristan, the Deputy Director of the Institutions Division of the California Department of Corrections. Mr. Tristan avers that he has directed that the 9.66 positions be established immediately. Good cause appearing, the court will order defendants to maintain those positions continuously in accordance with the requirements of the transition plan and this order.

After review of the proposed transition plan and the recommendations of the special master and the mediator thereon, and good cause appearing, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to file the proposed transition plan lodged with the court on November 9, 1999.

2. The proposed transition plan is provisionally approved for implementation, subject to the conditions set forth in this order, as follows:

    A. Within twenty days from the date of this order, defendants shall provide to the special master a list of all inmates on the mental health caseload in CMF. The defendants shall update the list monthly thereafter to enable the tracking of each seriously mentally disordered inmate transferred out of CMF. These monthly updated lists shall continue to report the institutional and programmatic location of each transferred inmate until the transition plan has been fully implemented. Updated lists shall also report whether transferred inmates have spent any time during the preceding month in administrative segregation, a security housing unit (SHU) or an MHCB in the facility to which they have been transferred.

    B. During the transition period, prior to the transfer of any seriously mentally disordered inmate on the list referred to in the first sentence of paragraph 2A of this order out of California Medical Facility (CMF) to another mental health services delivery system

(MHSDS) program, whether that program be a psychiatric services unit (PSU), a mental health crisis bed unit or program (MHCB), Enhanced Outpatient Program (EOP) or clinical correctional case management system (3CMS), the defendants shall certify the following in writing, with copies to the special master:

    i. There is a bed available in the specific program to which the inmate is being transferred;

    ii. The treatment needs of the inmate can be met in the program to which the inmate is being transferred; and

    iii. Seventy-five percent of clinical staff positions allocated to the mental health program in the receiving institution to which the transferred inmate will be assigned are filled and the transferred inmate will be assigned to a case manager whose caseload does not exceed staffing ratios required by this action.

C. Until the transition plan is fully implemented the special master and his psychiatric experts shall follow up quarterly a representative sampling of transferred inmates to ascertain the adequacy of their treatment in the receiving programs.

D. Until the transition plan is fully implemented the MHSDS case manager assigned to each inmate transferred out of the CMF outpatient psychiatric program (OPP) shall provide to the special master within 45 days of the inmate's arrival in the receiving institution a copy of the treatment plan developed in the new facility for the former OPP inmate/patient.

E. The defendants shall conduct an assessment, including the completion of an MH-4, of the full caseload of mental health inmates in CMF at the time of entry of this order. Each individual inmate's assignment to an MHSDS program, whether in CMF or elsewhere, must be based on an assessment that has been completed not more than sixty days prior to the assignment.

/////

F. At least for the duration of the implementation of the transition plan in CMF, there shall be a cap on the population of seriously mentally disordered inmates at CMF of no more than 600 EOP and 499 3CMS inmate/patients. These caps shall apply only to the mainline EOP and 3CMS programs and shall not include the population of seriously mentally disordered inmates that may be housed in the Unit IV program or in S-3 and administrative segregation.[1] The latter units shall not be overcrowded. At the end of the transition period, the special master shall report to the court on whether population caps should remain in effect.

G. Defendants shall maintain continuously the 9.66 custody positions identified as necessary for the first stage of the transition process for as long as required by the transition plan.

H. Defendants shall enhance custody staffing for L-3 unit during the transition period to 1.61 positions for the first watch and 4.83 positions for the second and third watches. During the transition, the special master and his staff shall assess the need for this staffing augmentation and report to the court on staffing requirements at the end of the transition period.

I. All EOP inmates shall be provided tens hours weekly of structured therapeutic activities, subject to the following restrictions:

i. Work and education shall be counted as structured therapeutic activity only when a treatment plan sets forth in writing how the particular vocational, work or educational activity relates to the inmate's mental health needs.

ii. Such work and education programming as may be justified in an inmate's treatment plan may comprise no more than four of the inmate's weekly quota of ten hours of structured therapeutic activities.

/////

---

[1] But see ¶ M, infra.

      iii. Occupational and recreational therapy shall be counted as structured therapeutic activity only if an appropriate clinician (an occupational therapist or a recreational therapist) is present and supervising the activity. Exercise is required for all inmates and shall not be counted as a therapeutic activity.

    J. The special master shall monitor closely the Day Treatment Program (DTP) throughout the transition period to ensure that it is not eliminated to provide additional intermediate inpatient treatment beds. Inmates identified by clinicians as requiring a DTP bed must be provided a DTP bed.

    K. The special master shall prepare and file by April 1, 2000 an interim assessment of the defendants' needs for inpatient beds. The court will retain jurisdiction over intermediate inpatient care until the defendants complete their study and submit on acceptable proposal for meeting the indicated need for inpatient beds.

    L. During the transition period, the special master shall monitor closely rejections by the Clinical Assessment Team (CAT) of inmates referred by CDC clinicians for admission to the Department of Mental Health (DMH) Acute Care Hospital. During the transition period, the special master shall also monitor closely custody rejections of transfers into CMF's emerging intermediate treatment program (ITP), with its continuing day treatment program (DTP) component, and from CMF to Atascadero State Hospital (ASH).

    M. Defendants shall not house any seriously mentally disordered inmate in the Willis Unit unless and until the special master reports to the court that the Willis Unit is fully staffed in accordance with this court's July 26, 1999 order. Any such report by the special master shall be filed not later than thirty days after the Willis Unit is fully staffed. During the interim, defendants shall consider limiting the housing of 3CMS inmates to a particular and separated location in the Willis Unit and shall report their deliberations to the special master within sixty days from the date of this order. The special master's report to the court on defendants' compliance with the staffing requirements of the July 26, 1999 order shall also

5

include recommendations on whether the housing of 3CMS inmates should be limited to a particular and separate location within the Willis Unit.

N. Defendants shall provide any staffing enhancements for EOP inmates in administrative segregation to the CMF EOP administrative segregation unit (I-3) as required by this court's July 26, 1999 Order.

O. During and after the transition period, the special master shall pay special attention to the Willis Unit in the monitoring process.

P. The defendants shall include the special master's psychiatric experts in the review of clinical recommendations for the placement of all inmates in the third-floor Intensive Outpatient Care (IOC) population. Within 90 days of the initiation of evaluations of third-floor IOC inmates under the transition plan, the defendants shall assess the need for, and, if indicated, prepare a proposal for any new program, or modification of an existing program, required to meet the treatment needs of the third-floor IOC population and provide their assessment and any resulting program proposals to the special master. The special master, with the assistance of his psychiatric experts, shall review and critique the defendants' assessment and any resulting program proposals.

Q. Defendants shall continue operation of the treatment unit (N-1) for long-term OPP inmates at CMF with current staffing resources and population levels until they can demonstrate such a unit is no longer necessary due to the establishment of a comparable EOP component in CMF.

R. The CMF compliance team shall continue tracking and recording the length of time between the clinical discharge of inmates from CMF/DMH inpatient beds and their transfer to other institutions. During the transition period, defendants shall meet the certification requirements set forth in paragraph 2(A)(i)-(iii) of this order for such inmates.

/////

/////

S. At the end of the transition period, the special master shall submit recommendations for any conditions that may need to be applied to psych and return procedures based on an assessment of transfers occurring during implementation of the transition plan.

T. Defendants shall retain at CMF all inmates discharged from DMH inpatients beds who have special needs that can only be met at CMF.

U. Within thirty days from the date of this order defendants shall submit to the special master a description of how their plan for delivering services to the <u>Clark</u> population will mesh with the transition plan.

V. The special master shall file quarterly reports on the progress of implementation of the transition plan, with the first quarterly report covering the period from the entry of this order through May 31, 2000.

DATED: February 9, 2000.

LAWRENCE K. KARLTON
CHIEF JUDGE EMERITUS
UNITED STATES DISTRICT COURT

/coleman.tpa

United States District Court
for the
Eastern District of California
February 10, 2000

* * CERTIFICATE OF SERVICE * *

2:90-cv-00520

Coleman

v.

Reagan

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on February 10, 2000, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Donald Specter                 SJ/LKK
    Prison Law Office
    General Delivery              CF/JFM
    San Quentin, CA  94964

    Michael W Bien
    Rosen Bien and Asaro
    155 Montgomery Street
    Eighth Floor
    San Francisco, CA  94104

    Jennifer Weck
    Attorney General's Office of the State of California
    PO Box 944255
    1300 I Street
    Suite 125
    Sacramento, CA  94244-2550

    J Michael Keating Jr
    Little Bulman and Whitney
    72 Pine Street
    Providence, RI  02903

    Edmund F Brennan
    United States Attorney
    501 I Street
    Suite 10-100                   Jack L. Wagner, Clerk
    Sacramento, CA  95814

                                               BY: _____
                                                      Deputy Clerk