

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,     No. CIV S-90-0520 LKK JFM P

vs.

GRAY DAVIS, et al.,

    Defendants.     ORDER

    On July 26, 1999, this court issued an order requiring defendants to comply with a series of directives within specified periods of time. On April 26, 2000, defendants filed a second request for extension of time to comply with directives 6 and 8 of the July 26, 1999 order. By order filed May 1, 2000, plaintiffs were directed to respond to defendants' request and the special master was directed to file recommendations thereon. On May 11, 2000, plaintiffs filed opposition to the request. On May 24, 2000, the special master filed his recommendations. On June 2, 2000, defendants filed objections to the special master's recommendations and on June 21, 2000, plaintiffs filed a response to defendants' objections.

    Directive 6 of the court's July 26, 1999 order requires defendants to adopt and implement on or before December 31, 1999 specified staffing ratios for administrative segregation units. By order filed April 27, 2000, the time for compliance with Directive 6 was

1

extended to May 2, 2000. Defendants now seek an additional 150 days, until September 22, 2000, to comply with Directive 6.

Defendants' request for an extension of time is predicated primarily on bureaucratic delays caused by defendants' need to obtain approval from the CDC's Budget Management Branch and the state Department of Finance for proposed realignment of positions previously approved in a deficiency funding request.[1] The special master reports that the positions were allocated to prison institutions on April 25 and 26, 2000 and that all that remains is the actual hiring of necessary clinical staff, a function completely within defendants' control. (Special Master's Recommendations on Defendants' Second Request for Extensions to Comply with Court Orders, at 2-3.) The special master recommends that defendants be granted an extension until August 15, 2000 to fill the newly allocated positions and no further extensions thereafter.

Defendants object to the special master's recommendation, arguing that "the Special Master's recommendation does not account for the realities of the hiring process," that "half the process depends on individual applicants" and therefore the process is not entirely within their control, that there are several steps between allocation of a position and placement of

/////

/////

/////

---

[1] The deficiency funding request approved the hiring of 31 part-time psych tech positions, which defendants have recombined into 18 full-time positions. In their opposition to defendants' second request for extension of time, plaintiffs contend, inter alia, that the realignment "means that 15 of the Department's 33 institutions will not have sufficient staffing to provide for psychiatric technician coverage in their administrative segregation units on weekends." (Plaintiffs' Opposition to Defendants' Second Request for Extension of Time to Comply with Provisions 6 and 8 of the July 26, 1999 Order, at 6.) The special master reports that the reallocation will result in staffing in all administrative segregation units that satisfies the requirements of the July 26, 1999 order. (See Special Master's Recommendations, filed May 24, 2000, at 3-4.) At this juncture, the court expects full compliance with Directive 6 of the July 26, 1999 order by August 15, 1999 and will not intervene in the method chosen by defendants' to satisfy the requirements of that Directive.

2

a trained staff member in the position, and that until the end of the fiscal year the positions must be advertised as "limited term positions" which traditionally have been hard to fill.[2]

Defendants observe that they are only asking for 38 days more than the special master recommends and they contend that at the end of that time they will need no further extensions. Defendants contend that "given the nature of the processes involved in hiring, the defendants are fairly certain that it will be impossible for them to be fully compliant with the directive in the time recommended by the Special Master." (Defendants' Objections, at 5.)

Defendants acknowledge that they presented both the court and the special master with a timeline that sets August 15 as the deadline for complying with the July 26, 1999 order. (Exhibit 3 to Declaration of Eileen Baumgardner, filed April 26, 2000.) That timeline was predicated on establishment of positions at institutions on May 8, 2000 and prepared with the knowledge that the positions were allocated to the institutions in late April, 2000. (Id.) In their objections, defendants state that this date "is contingent upon all of the necessary components to the hiring process fall into place perfectly without any delays whatsoever." (Defendants' Objections, at 2.)[3]

What defendants ignore, whether willfully or otherwise, is that the delays that have plagued their ability to meet their constitutional obligation to provide adequate mental health care staffing for class members class have now consumed almost five years. The court and the special master have been exceedingly patient with the bureaucratic and other obstacles to

---

[2] Defendants represent that the positions will be reestablished as permanent positions in the next fiscal year and that there is a "greater likelihood" that they can fill such positions. (Defendants' Objections to the Special Master's Recommendations on Defendants' Second Request for Extension of Time for Directives 6 and 8, at 3.)

[3] Apparently to support their view that further delays are inevitable, defendants inform the court that although all institutions were to have established positions by May 8, 2000, five of them had not established positions as of June 2, 2000. (Id. at 3.) The May 8, 2000 deadline for establishment of positions is something that the CDC "had hoped" would happen and no explanation is offered for the non-compliance by the five institutions. (Attachment 1 to Defendants' Objections, Declaration of Eileen Baumgardner, at ¶ 3.)

3

compliance defendants have either interposed, or faced, or both. Plaintiffs are entitled to constitutionally adequate levels of mental health care staffing and they have waited an extraordinary period of time for defendants to comply with their constitutional obligations in this regard.[4]

The court will adopt the special master's recommendation and will order defendants to comply with Directive 6 of the July 26, 1999 order by August 15, 2000. The court will look with great disfavor on any further requests for extension of time to comply with this directive.

Directive 8 of the July 26, 1999 order requires defendants to

> develop and implement a system-wide data collection process for capturing information on mental health transfers at the institutional level. The process shall include, among other things, use of a log that records the dates of referral, classification, endorsement and actual movement of inmates referred to a higher level of treatment at any other facility, together with the reasons for rejection of any such referral, and a requirement that reception centers keep a log of all inmates referred to a mental health program who remain in reception longer than sixty days.

(Order, filed July 26, 1999, at ¶ 6.) Defendants were to have complied with that order within ninety days. By order filed January 13, 2000, defendants were granted an additional 180 days, to April 26, 2000, to comply with Directive 8. Defendants now seek an extension until October 24, 2000 to comply.

Defendants' request is based on the status of their implementation of a statewide mental health tracking system (MHTS), which they expect to be fully implemented within six months. The special master reports that while the MHTS will be useful to department-wide tracking of institutional delivery of mental health services, "[n]one of the data collected in the tracking system is calculated to shed light on inter-institutional transfers of inmates in need of a

---

[4] The court is not unmindful of the fact that defendants have also submitted another request for an extension of time to comply with their obligation to reduce vacancies among psychiatrists and psychiatric social workers.

higher level of care." (Special Master's Recommendations, at 7.) The special master recommends that defendants be required to develop within thirty days a form, with directions for use, for recording the dates of referral, classification, endorsement and movement of seriously mentally disordered inmates transferred to higher levels of care at other institutions and, further, that defendants be required to implement use of the form at all institutions within thirty days thereafter.

Defendants raise several objections to the special master's recommendation. Of greatest significance for the court, defendants assert that the MHTS does capture the data required by Directive 8, and they cite to an "Input Layout for Mental Health Tracking System," appended as Attachment 7 to Exhibit 1 to the Declaration of Patti Henderson, filed April 26, 2000.

The court's principal concern in this area is with remedying the extensive delays in provision of necessary care to class members. The delays in access to necessary mental health care were well-documented at trial and in violation of defendants' constitutional obligations. See Coleman v. Wilson, 912 F.Supp. 1282, 1308-09 (E.D.Cal. 1995). Directive 9 of the July 26, 1999 order requires defendants to develop and implement "a plan for expediting the transfers of seriously mentally disordered inmates to programs with the level of care to which they have been referred." (Order filed July 26, 1999.) That plan is to be based on the data collected in the system developed pursuant to Directive 8. At present, defendants are required to comply with Directive 9 by June 30, 2000. (Order, filed April 27, 2000, at ¶ 5(b).)[5]

The special master reports that delays in transfers of seriously mentally disordered inmates to necessary levels of care "are recognized repeatedly, by institutions and monitors alike, as a serious problem." (Special Master's Recommendations, at 9.) The special master also reports that absent the data that Directive 8 was intended to capture "the cause of delays in

---

[5] Defendants have not yet requested an extension of time to comply with that directive.

5

transfers is difficult, if not impossible, to pinpoint." (Id.) The court is deeply troubled at the prospect that development of a plan for remedying the underlying constitutional deficiency is now apparently contingent on successful implementation of a system wide computer program.[6]

Good cause appearing, the court will direct the special master to meet and confer with the parties in order to develop a proposed timeline for development and implementation of an informed plan to expedite transfers of mentally ill inmates to necessary levels of care. The proposed timeline shall be filed within forty-five days from the date of this order, and this order will supersede all prior orders with respect to compliance with Directives 8 and 9 of the court's July 26, 1999 order.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' April 26, 2000 request for an extension of time is granted in part;

2. Defendants shall comply with Directive 6 of the July 26, 1999 order on or before August 15, 2000;

3. Within forty-five days from the date of this order, the special master shall meet and confer with the parties and shall develop and submit to the court a proposed timeline for development and implementation of an informed plan to expedite transfers of mentally ill inmates to necessary levels of care; and

4. This order supersedes all prior orders with respect to compliance with Directives 8 and 9 of the court's July 26, 1999 order.

DATED: June 29, 2000.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[6] The court's concern is not with defendants' decision to implement the MHTS. Rather, the court is concerned about extended delays that may occur if defendants wait until the MHTS is fully operational before starting to develop a plan to remedy to the delays in transferring class members to necessary levels of care.

United States District Court
for the
Eastern District of California
July 3, 2000

\* \* CERTIFICATE OF SERVICE \* \*

2:90-cv-00520

Coleman

v.

Reagan

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on July 3, 2000, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
    Donald Specter                  SJ/LKK
    Prison Law Office
    General Delivery                CF/JFM
    San Quentin, CA   94964

    Michael W Bien
    Rosen Bien and Asaro
    155 Montgomery Street
    Eighth Floor
    San Francisco, CA   94104

    Jennifer Weck
    Attorney General's Office of the State of California
    PO Box 944255
    1300 I Street
    Suite 125
    Sacramento, CA   94244-2550

    J Michael Keating Jr
    Little Bulman and Whitney
    72 Pine Street
    Providence, RI   02903
```

Edmund F Brennan
United States Attorney
501 I Street
Suite 10-100
Sacramento, CA   95814

Jack L. Wagner, Clerk

BY: _____
     Deputy Clerk