FILED
JUL 17 2000
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,

vs.

GRAY DAVIS, et al.,

    Defendants.

No. CIV S-90-0520 LKK JFM P

FINDINGS AND RECOMMENDATIONS

    Plaintiffs have filed a motion to compel payment of disputed attorneys' fees and costs for the second quarter of 1999 and to set 1999 rates. Defendants oppose the motion.[1]

BACKGROUND

    Plaintiffs filed this class action lawsuit challenging on constitutional grounds the adequacy of mental health care to a class of inmates confined at within the California Department of Corrections (CDC). In September 1995, the district court found that defendants' provision of mental health care was constitutionally inadequate. Thereafter, a special master was appointed to oversee development and implementation of plans to remedy the constitutional deficiencies. The remedial phase of the action is ongoing.

/////

---

[1] The parties stipulated to submission of the motion without oral argument.

1182

In March 1996, the court entered an order pursuant to the stipulation of the parties governing procedures for period collection of attorneys' fees and costs. (See Stipulation and Order for Periodic Collection of Attorneys' Fees and Costs, filed March 19, 1996.) The instant motion is brought pursuant to provisions of that order governing resolution of disputes over requested fees and billing rates.[2]

The instant motion involves three disputes: (1) whether attorneys' fees for time spent seeking attorneys' fees ("fees-on-fees") are recoverable under applicable provisions of the Prison Litigation Reform Act of 1995 (PLRA); (2) whether time spent on four discrete tasks is compensable as part of the monitoring phase of this action; and (3) whether plaintiffs' proposed 1999 rates for paralegals are reasonable.[3]

ANALYSIS

I. <u>Fees-on-Fees</u>

In their billing statement for the second quarter of 1999, plaintiffs seek compensation for $6,935.75 in attorneys' fees for time spent seeking fees for monitoring work. (Exhibit A to Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Payment of Disputed Fees and Costs in the Second Quarter 1999 and to Set 1999 Rates.) Defendants object to payment of these fees, contending that such fees are not recoverable under 42 U.S.C. § 1997e(d), the statute which controls payment of attorneys' fees in this case involving prison conditions.[4]

/////

---

[2] The parties have been generally successful at resolving fee-related matters in the monitoring phase of this action without the need for court intervention.

[3] Plaintiffs also seek to increase the hourly rates for two attorneys to the $112.50 maximum rate allowed under the PLRA. Defendants have not opposed this request and the court will recommend that it be granted.

[4] Defendants contend only that fees-on-fees are not recoverable under the PLRA. Defendants do not contend that the amount sought by plaintiffs for fees-on-fees is unreasonable.

Section 1988(b) of Title 42 of the United States Code provides awards of attorneys' fees to prevailing parties in § 1983 litigation. Section 1997e(d) amends the provisions of 42 U.S.C. § 1988 with respect to cases brought by prisoners in relevant part, as follows:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –
>
> (A) The fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d)(1)(A), (B)(i)-(ii). Defendants contend that fees-on-fees are not "directly and reasonably incurred in enforcing the relief ordered," as required by 42 U.S.C. § 1997e(d)(1)(B)(ii). Plaintiffs argue that the incurrence of such fees is "a direct consequence of a prevailing party's victory on the merits." (Plaintiffs' Reply Brief in Support of Motion to Compel Payment of Disputed Second Quarter 1999 Fees and Costs and to Set 1999 Rates, at 2.)

"'The starting point in statutory interpretation is "the language [of the statute] itself."'" City of Auburn v. U.S. Government, 154 F.3d 1025, 1029-30 (9th Cir. 1998)(quoting United States v. James, 478 U.S. 597, 604, 106 S. Ct. 3116, 92 L.Ed.2d 483 (1986) (internal citation omitted)). If the statutory language "is ambiguous, i.e. gives rise to more than one reasonable interpretation," the court turns to legislative history and other extrinsic aids to statutory construction. A-Z International v. Phillips, 179 F.3d 1187, 1192 (9th Cir. 1999). Courts "do not lightly presume that Congress intended to work a substantive change to existing law with an ambiguous amendment. Absent any mention in a statute's legislative history that Congress intended a change, courts ordinarily will refuse to find that ambiguous statutory

/////

language significantly alters an existing statutory scheme." United States v. Bahe, 201 F.3d 1124, 1132 (9th Cir. 2000).

Even if the statutory language is ambiguous, the latter principle of statutory construction precludes adoption of defendants' interpretation of § 1997e(d).[5] "[C]ourts consistently have construed the Civil Rights Act to provide for 'fees on fees' despite the absence of clear Congressional directives within those Acts. . . If Congress did not intend for attorneys to be fully compensated for their work on civil rights claims for prisoners, Congress needed to explicitly express an intent to change the established construction" authorizing recovery of fees-on-fees. Hernandez v. Kalinowski, 146 F.3d 196, 199-200 (3rd Cir. 1998).

The language of § 1997e(d) does not expressly overrule the well-established construction of § 1988 authorizing recovery of fees-on-fees for successful plaintiffs in § 1983 cases, nor is there is any persuasive evidence before the court that Congress intended to override that established construction. This court will recommend that plaintiff's motion to compel payment of fees-on-fees be granted and that plaintiffs be awarded attorneys' fees in the amount of $6,935.75 for time spent seeking fees for monitoring work. Accord Hernandez, supra.

II. Time Spent on Specific Tasks

Plaintiffs also seek compensation for time spent (1) investigating and negotiating with defendants concerning alleged retaliation against a member of the plaintiff class; (2) investigating and negotiating concerning defendants' new policy of allowing clinical staff to carry weapons; (3) corresponding with inmates concerning staff harassment of mentally ill inmates; and (4) compiling and assembling exhibits, drafting letters to the court, and preparing proofs of service. Defendants contend that none of these tasks was "directly and reasonably incurred in monitoring compliance" with relief ordered in this action.

---

[5] Defendants argue that legislative history supports their interpretation. Defendants rely on legislative history of the Violent Criminal Incarceration Act of 1995, a bill that preceded the PLRA. The Violent Criminal Incarceration Act of 1995 was not enacted by Congress and the legislative history of that act is of little relevance to the task before the court.

A. Investigation and Negotiations Concerning Alleged Retaliation Against Inmate Lauranzano

Plaintiffs seek payment of attorneys' fees for 15.7 hours spent investigating and negotiation with defendants concerning allegations of retaliation by inmate Rick Lauranzano. (Plaintiffs' Exhibit A.) Inmate Lauranzano is a member of the plaintiff class who "has played a prominent role in the Gates[6] litigation at CMF[7] and in the discussions and negotiations over the transition of CMF into" this action. (Declaration of Thomas B. Nolan in Support of Plaintiffs' Motion to Compel Payment of Disputed Second Quarter 1999 Fees and Costs and to Set Rates, at ¶ 45.) The allegations arose in May 1999, when inmate Lauranzano, a member of the plaintiff class, was "re-classified as "Close B" in a manner that made plaintiffs attorneys and Lauranzano himself concerned that his classification was a form of retaliation for his activities" related to this litigation and to Gates v. Deukmejian, Case No. CIV S-87-1636 LKK JFM P. (Id. at ¶ 46.) Ultimately, inmate Lauranzano's reclassification was found to be improper and was rescinded, although the Gates mediator found "no conclusive evidence of retaliation." (Id.)

In the process of monitoring defendants' compliance with court orders, counsel for plaintiffs became concerned about a change in the classification status of a class member. They investigated the circumstances, and the classification change was rescinded. The 15.7 hours spent were "directly and reasonably incurred" by plaintiffs' counsels' while participating in the remedial phase of this litigation. The court will recommend that plaintiffs' motion to compel payment be granted as to these fees.

B. Hours Spent on New Policy Allowing Clinical Staff to Carry Weapons

Plaintiff seek payment of attorneys' fees for 3.9 hours spent investigating and negotiating concerning defendants' new policy of allowing medical technical assistants to carry Oleoresin Capsicum (OC) gas canisters. Defendants oppose payment of these fees on the

---

[6] Gates v. Deukmejian, No. CIV S-87-1636 LKK JFM P.

[7] California Medical Facility.

5

grounds that they have repeatedly contended that issue is not part of this action and that the special master is considering, but has not yet decided, whether he has authority to address this issue. On May 25, 1999, which is part of the time frame at issue on this motion, the special master asked the parties to submit letter briefs to him on the matter. Plaintiffs' letter brief was prepared in the second quarter of 1999. (See Exhibit C to Reply Declaration of Thomas B. Nolan in Support of Plaintiffs' Motion to Compel Payment of Disputed Second Quarter 1999 Fees and Costs and to Set Rates.)

It is plain to this court that time spent by plaintiffs to assist the special master in resolution of questions related to the scope of the remedial plans in this action is compensable under 42 U.S.C. § 1997e(d). The court will recommend that plaintiffs' motion to compel payment be granted as to these fees.

C. Correspondence With Inmates Concerning Staff Harassment of Mentally Ill Inmates

Plaintiffs seek attorneys' fees for 4 hours of time spent communicating with class members about staff harassment of mentally ill inmates. Defendants do not dispute that this time is compensable; they dispute whether plaintiffs' billing entries are sufficiently specific to establish that the time spent arose out of harassment attributable to inmates' mental illness. The disputed fees are all sought by the law firm of Rosen, Bien and Asaro.

Plaintiffs have presented competent evidence that it is Rosen, Bien and Asaro's policy not to bill time for correspondence with inmates to the Coleman case unless the correspondence is to a class member and that this policy has been communicated to the firm's paralegals. (Nolan Reply Declaration, at ¶ 4.) Plaintiffs also represent that they have explained this policy to counsel for defendants. The court will recommend that plaintiffs' motion to compel payment be granted as to these fees.

D. Paralegal Time

Plaintiffs seek attorneys' fees for 7.65 hours spent on various tasks performed by paralegals. Defendants object to payment of paralegal rates for clerical work. The dispute

6

centers on which, if any, of the tasks for which fees are sought are clerical rather than properly performed by paralegals.

> It is well-settled that fees for paralegal services are separately compensable under § 1988 if such separate billing is in accord with the prevailing billing practice in the relevant legal market. Missouri v. Jenkins, 491 U.S. 274, 288 (1989). Examples of tasks compensable at paralegal rates include, "for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." Id. at 288 n.10. However, "'purely clerical or secretarial tasks should not be billed at a paralegal . . . rate, regardless of who performs them.'" Davis v. City and county of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) (quoting Missouri v. Jenkins, 491 U.S. at 288 n.10).

As this court noted in its January 21, 1997 findings and recommendations on Plaintiffs' Motion for an Interim Award of Attorneys' Fees,

(Findings and Recommendations, filed January 21, 1997, at 11.)

With these standards in mind, the court has reviewed the disputed billing entries, (see Plaintiffs' Motion to Compel Payment of Disputed Fees and Costs, at 19-20), and makes the following findings. Drafting proofs of service is a clerical task not compensable at paralegal rates. Therefore, the court will recommend that plaintiffs' motion to compel payment be denied as to the fees sought for the entries on June 25, 1999 for .3 hours, May 28, 1999 for .2 hours, and June 30, 1999 for .3 hours. Similarly, as described in the billing entries before the court, it appears that the task of preparing documents for filing and service with the courts is clerical and is not compensable at paralegal rates.[8] The court will, therefore, recommend that plaintiffs' motion to compel payment be denied as to the fees sought for the entries on June 25, 1999 for .4 hours, April 16, 1999 for .4 hours, and June 30, 1999 for .7 hours. Finally, as described the task of preparing a packet to messenger appears clerical in nature and the court will, therefore,

---

[8] In their billing statements, plaintiffs differentiate between drafting of letters and/or billing statements, and preparation of same for filing and service. See Plaintiffs' Motion, at 19-20.)

7

recommend that plaintiffs' motion to compel payment be denied as to the fees sought for the entry on June 30, 1999 for .3 hours. The rest of the time claims is compensable at paralegal rates and the court will recommend that plaintiffs' motion to compel payment be granted as to the remaining 5.05 hours claimed.

### E. Costs of Correctional Mental Health Reporter

Plaintiffs also seek to compel payment of $118 in costs. This represents the costs of a subscription to the Correctional Mental Health Reporter, a publication used "exclusively" by plaintiffs' counsel in the law firm of Rosen, Bien and Asaro. (Nolan Declaration, at ¶ 6.) Defendants have not opposed this aspect of plaintiffs' motion, and the court will recommend that it be granted.

### F. Summary

For the foregoing reasons, the court will recommend that plaintiffs' motion to compel payment of disputed fees and costs be granted in all respects except for 2.6 hours of claimed paralegal time. The court will therefore recommend that defendants be directed to pay plaintiffs attorney's fees in the amount of $22,470.40.[9]

## III. Proposed 1999 Paralegal Rates

Plaintiffs also request an increase in the hourly rates for paralegals to $110.00 for senior paralegals. Defendants oppose the request, arguing that paralegal rates must be "reduced to satisfy the intent of the PLRA." Defendants rely on Ilick v. Miller, 68 F.Supp.2d 1169, 1179 (D.Nev. 1999). In Ilick, the district court held that "the clear congressional intent behind the enactment of the fee caps in the PLRA" required a corresponding reduction in paralegal rates. Id. at 1179. This court does not agree.

The clearest manifestation of Congressional intent in enacting a statute is the language of the statute itself. See, e.g., United States v. Mohrbacher, 182 F.3d 1041, 1048 (9th

---

[9] The recommendation is calculated by deducting $286.00 (2.6 hours x $110.00 per hour) from the total of $22,756.40 in attorneys' fees and costs sought by plaintiff.

Cir.1999) (quoting Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 830 (9th Cir.1996)) (courts "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.") The PLRA provides in relevant part that "[n]o award of attorney's fees in [a prisoner civil rights action for which attorney's fees are available under 42 U.S.C. § 1988] . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). It is well-established that paralegal time is compensable under the attorney's fees provisions of 42 U.S.C. § 1988. See United Steelworkers of America v. Phelps Dodge Corporation, 896 F.2d 403, 407-08 (9th Cir. 1990) (quoting Cameo Convalescent Center v. Senn, 738 F.2d 836, 846 (9th *408 Cir.1984)).

Section 1997e(d)(3) imposes a cap on the hourly rate on which an award of attorney's fees may be based. Nothing in the statute, however, changes the well-established rule that paralegal services are compensable as attorney's fees, and nothing in the statute imposes the proportional reduction in fees urged by defendants.

Defendants also contend that the request exceeds relevant market rates for paralegal services. Plaintiffs have provided adequate competent evidence to support the requested rate. The court will recommend that plaintiffs' request to set 1999 hourly rates for senior paralegals at $110.00 per hour be granted.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion to compel payment of disputed fees and costs in the second quarter in 1999 and to set 1999 rates be granted in all respects except for plaintiffs' request for payment of 2.6 hours of paralegal time;

2. Defendants be directed to pay plaintiffs attorney's fees and costs for the second quarter of 1999 in the amount of $22,470.40; and

3. Hourly rates for senior paralegals for 1999 be set at $110 per hour.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 14, 2000.

UNITED STATES MAGISTRATE JUDGE

12
colefee.99

United States District Court
for the
Eastern District of California
July 17, 2000

* * CERTIFICATE OF SERVICE * *

2:90-cv-00520

Coleman

v.

Reagan

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on July 17, 2000, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA  94964

SJ/LKK

CF/JFM

Michael W Bien
Rosen Bien and Asaro
155 Montgomery Street
Eighth Floor
San Francisco, CA  94104

Jennifer Weck
Attorney General's Office of the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

J Michael Keating Jr
Little Bulman and Whitney
72 Pine Street
Providence, RI  02903

Edmund F Brennan
United States Attorney
501 I Street

Jack L. Wagner, Clerk

by: Deputy Clerk