**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**FILED**

SEP 2 6 2001  LKK

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____

RALPH COLEMAN, et al.

    Plaintiffs,

    vs.                 **No. CIV S-90-0520 LKK JFM P**

GRAY DAVIS, et al.,

    Defendants.

## SPECIAL MASTER'S FIRST QUARTERLY REPORT
## ON DEFENDANTS' EFFORTS TO REDUCE STAFFING VACANCIES

On July 26, 1999, the court issued an order that required the

defendants to reduce within 90 days the vacancy rate among psychiatrists to 25

percent or less and among psychiatric social workers to ten percent or less, while

keeping vacancy rates among other categories of mental health staff at then

current or comparable rates. After prolonged bureaucratic and political delays,

which resulted in no immediate improvement in the rate of clinical vacancies in

the California Department of Corrections' (CDC) mental health services delivery

system (MHSDS), the court in August, 2000, gave the defendants until the end of

2000 to meet its earlier vacancy reduction goals. At the same time the master

was directed to report in mid-December, 2000, on the defendants' progress in

bettering its recruitment efforts and make further recommendations, if needed,

on how the defendants might meet their staffing obligations.

The result was a report submitted to the court on December 19,

2000, in which the master estimated that the defendants were unlikely to comply

with the order to reduce clinical vacancies to the mandated levels and

1304

recommended a variety of alternative strategies for recruitment developed with the parties over the previous 60 days. The report generated some discussion and pleadings over the suggestion that the defendants and the Board of Prison Terms (BPT) should explore together for ways to reduce the return to CDC of mental health caseload inmates on parole. In early April, the court entered an order endorsing the December recommendations and directed the master to report quarterly on the defendants' success in implementing these alternative strategies, as well as their impact on staffing vacancies. This report is the first such quarterly accounting.

The purpose of all of the strategies generated in late 2000 was to somehow spur CDC's recruitment of mental health clinicians sufficiently to reduce overall clinician vacancies to acceptable levels. Six months later, it is clear that none of identified strategies has provided a swift boost to recruitment or a precipitous decline in staffing vacancies.

In December, the reported vacancy rate among psychiatrists was 29.36 percent; in mid-July of this year, the rate was nearly four percentage points lower at 25.49 percent and, at least, within striking distance of the 25 percent goal. On the other hand, among psychiatric social workers, the vacancy rate in December was 25.4 percent; in mid-July, the rate had risen to 27.03 percent, nowhere near the ten percent goal. In December, 23.63 percent of allocated psychologist positions were vacant; in mid-July, the rate was somewhat lower at 21.52 percent.

A slightly more optimistic way of looking at these generally discouraging percentages is to translate the numbers into bodies. In mid-July,

there were 32.7 more psychiatrists and case managers providing clinical services in CDC institutions than there were in December. But no amount of optimism can color these statistics as anything but disappointing. Filling empty clinical positions in CDC continues to be a painfully slow, infinitely challenging struggle, and there do not appear to be any quick fixes.

Among all of the strategies proposed in the December package of recommendations, the one with the most immediate and largest potential pay-off was the defendants' plan to engage a private contractor(s) to manage and provide all mental health services in Avenal State Prison and North Kern State Prison and operate a non-acute inpatient care program at California State Prison at Corcoran (CSP/Corcoran). After a skillfully persuasive effort, CDC was able to obtain support from the Department of Finance for the undertaking. An Initial invitation for bids went out in early March, but a series of amendments to the invitation, prompted by both internal and external demands for greater accountability on the part of prospective vendors, delayed the final submission of amended bids to potential contractors, who were given until June 11, 2001 to file their proposals. In the meantime, the department's initiative for the pending proposed private contract came under mounting and aggressive attack from organized labor.

In the end, only two bidders offered to undertake the services advertised by CDC and valued by the department at approximately $37 million. One bidder was willing to provide the proposed services for $84.6 million, well over twice the defendants' estimate of their worth, while the other vendor insisted on setting aside the department's condition for a prepaid $4.1

3

irrevocable letter of credit against which CDC might draw in the event of any contractual breaches by the service provider. Both bids were judged unresponsive and unacceptable. See Exhibit A. There is little likelihood that CDC will undertake further efforts to recruit a private vendor to operate institutional mental health programs.

One apparent casualty of the aborted experiment was the non-acute inpatient care program for 24 inmates at CSP/Corcoran, which was included in the request for proposals. There was much to commend the initiation of this in-house, intermediate, inpatient care program within a Level IV CDC institution with a significant security housing unit (SHU) population. CDC apparently succeeded in persuading the Department of Finance of the need for, and value of, such a program, which responds to a need for intensive long-term inpatient mental health programming for CDC inmates who require secure housing placement in the aftermath of the removal from the California Medical Facility of Level IV MHSDS inmates. The funding allocated for the initiation of such a program by a private vendor has quietly slipped off the table in the wake of the failed bids.

The contracting experiment was just one of many strategies endorsed by the court in the April order. In early June, before the fate of contractors' bids was known, the defendants submitted a report on their progress in implementing all of the recommended initiatives. See Exhibit B. The defendants' report speaks for itself, but progress in some areas deserves additional commentary.

CDC's participation in the National Health Services Corps program, which provides placement in service positions, in exchange for the forgiveness of educational loans, in areas characterized and certified as having a critical shortage of health professionals, seemed a promising strategy. The defendants applied to have 20 CDC facilities designated as "shortage areas," and managed to obtain approval for seven institutions to be included in the program for the placement of psychiatrists. Six of the certified facilities were approved for two psychiatrist slots, while Deuel Vocational Institution (DVI) was approved for four. As of early June, only one psychiatrist had been hired pursuant to the program, but the department was exploring the possible application of the program to positions for psychologists, psychiatric social workers and registered nurses, as well as for psychiatrists.

The defendants report they are about to launch a long-planned internship program for psychologists in seven CDC institutions in collaboration with the Central California Psychology Internship Consortium Association. Each of the seven participating CDC institutions has already interviewed and selected two interns, who will work with facility clinicians for a full year. The goal here is not the immediate expansion of case management resources. Indeed, supervision of the interns and limits on their duties will probably result in only a minimal interim net gain in services. It is the greatly enhanced prospect of hiring the graduates of these intern programs as full-time clinicians (along with some possible access to their graduating peers) that is the principal benefit of these internships, albeit one that will take at least a year to reap.

5

The establishment of a senior psychiatric technician within Health Care Services Division to coordinate statewide efforts to recruit psychiatric technicians and possibly develop an internship program comparable with that for psychologists went temporarily awry. The defendants now hope to have the position created and filled by September 1.

The department's pursuit of preventive measures involving parole has apparently been limited to discussions with CDC's own parole and community services division to enhance services provided to inmates on the MHSDS caseload scheduled for release on parole. The latest vehicle for such services, the mental health services continuum program, is designed to provide pre-release evaluations in all CDC institutions through contracts with two local agencies that have developed exceptional transition programs for the support of released HIV-positive inmates. During the upcoming ninth monitoring round the Coleman monitors will be reviewing the effectiveness of these new resources in augmenting institutional clinicians' efforts to provide appropriate pre-release planning for seriously mentally disordered inmates in CDC as required in the EOP Program Guide (at pp. 6-8 and 9) and the 3CMS Program Guide (at p. 7-10)

A summary of the status, as of mid-July, of all of the various initiatives undertaken to deal with the defendants' clinical vacancy problem is that the strategy with potentially greatest and most immediate impact has crashed in flames, while the rest are barely out of the hanger and are not scheduled for take-off until well into the current quarter. All of these alternative strategies have had as yet little appreciable impact on the recruitment and retention of mental health clinicians in CDC.

On the other hand, the defendants' historical alternative approach for dealing with the problem of vacancies, namely, the use of contracting to fill empty clinical positions, continues to expand. During April, May and June of this year, the department contracted for a monthly average of 6,100 hours of private psychiatrists' services. The average figure is a better measure because actual numbers fluctuate somewhat from month to month. The 6,100-hour average is equal, time-wise, to 38.13 full-time psychiatrists, using 160 hours as the measure for a monthly full-time employee. When you add the 38.13 contract psychiatrists, engaged monthly by the defendants during the quarter, to the 140.68 psychiatrists actually on the department's payroll in mid-June (see Exhibit C), the 50.30 vacancies are reduced to 12.17, or 6.37 percent of the 190.98 psychiatrist positions allocated in June.

The figures for case managers, including both psychologists and psychological social workers, are almost as impressive. During April, May and June of this year, the department contracted for an average of 11,136 hours a month of case management services, the equivalent of 69.6 case managers. When you add the 69.6 contract case managers to the 377.5 case managers actually on the payroll in mid-June, the 122.5 vacancies are reduced to 52.9, or 10.58 percent of the 500 case manager positions allocated in June.

These numbers reflect a continuing upward trend that is inexorably narrowing the vacancy gap. In October, 2000, the monthly total for contracted services was 14,449; during the months of April, May and June, total contract services averaged 17,236 hours, an increase just since October that is equal to 17.41 full-time clinicians. As often demonstrated in this case, it is a mistake to

assume that contracted service hours are the equivalent of full-time clinicians'
hours, and reports of the costs of discontinuity of clinicians' care, especially of
psychiatrists' care, continue to be heard, but on a reduced scale. Given the
historical pace of efforts to fill allocated clinician positions, as well as the singular
lack of impact of the latest round of recommended initiatives, the defendants'
reliance on contracted services appears increasingly reasonable. It seems to be
the only thing that works, however imperfectly.

Another earlier strategy adopted by the defendants was the
conversion of psychiatric social worker positions to psychologist positions, on the
theory that the latter were considerably easier to fill. Some conversions have
occurred, but not on the wholesale scale envisioned. By far the largest
percentage of case management positions allocated over the past three years
have been for psychologists, resulting in a slowly contracting proportion among
case managers of psychiatric social workers. Despite the department's
significantly growing overall allocation of case managers, the number of
psychiatric social workers employed by the department has remained largely
constant. The vacancy rate for psychologists (21.52 percent in July) is somewhat
better than for psychiatric social workers (27.03 percent in July), but not better
enough to insist on increased acceleration of the conversion effort.

In the next quarter there needs to be some further effort to attempt
the resuscitation of the initiative for the development of a non-acute inpatient
care program at CSP/Corcoran, a potentially useful clinical opportunity that
vanished along with the failed contract for the private provision of mental health
services. The issue will be on the agenda for the next meeting of Coleman

parties and counsel.  There also needs to be further exploration of some of the suggested financial incentives that were part of the array of strategies for enhancing recruitment caught up now by the currently stalled negotiations for an overall collective bargaining agreement between CDC and its various organized employees.

The beginning of the fiscal year also means, inevitably, that vacancy rates will rise as additional allocations of clinical positions included in the most recent budget are integrated into the department's MHSDS.  But, once again, these increased vacancy rates are the necessary prelude to enhanced resources and, ultimately, to better mental health services.

Respectfully submitted,

J. Michael Keating, Jr.
Special Master

September 25, 2001

9

## DECLARATION OF SERVICE BY FEDERAL EXPRESS

Case Name:  Ralph Coleman, et al. v. Gray Davis, et al.
U.S.D.C Eastern District No. CIV S-90-0520 LKK JFM P

I am employed in the County of Providence, Rhode Island.  I am over the age of 18 years and not a party to the within entitled cause:  my business address is Little Bulman, Medeiros & Whitney, P.C., 72 Pine Street, Providence, Rhode Island 02903.

On September 25, 2001, I served the attached

### SPECIAL MASTER'S FIRST QUARTERLY REPORT ON DEFENDANTS' EFFORTS TO REDUCE STAFFING VACANCIES

in said cause, placing, or causing to be place, a true copy thereof, enclosed in a sealed enveloped fully prepared and sent Airborne Express from Providence, Rhode Island as follows:

Honorable Lawrence K. Karlton
Chief Judge Emeritus
United States District Court
 Eastern District of California
501 I Street
Sacramento, CA  95814

Honorable John F. Moulds
Chief Magistrate Judge
United States District Court
 Eastern District of California
501 I Street, 8th Floor
Sacramento, CA  95814

Haven Gracey, Esq.
Senior Staff Attorney to
 Chief Magistrate John F. Moulds
U.S. District Court
 Eastern District of California
501 I Street, 8th Floor
Sacramento, CA  95814

Donald Specter, Esquire
Prison Law Office
2173 East Francisco Blvd.
Suite M
San Rafael, CA 94901

Michael Bien, Esquire
Rosen, Bien & Asaro
155 Montgomery St., 8th Fl.
San Francisco, CA 94104

John Sugiyama, Esq.
Deputy Director (A), Legal Affairs
California Dept. of Corrections
1515 S Street
P.O. Box 942883
Sacramento, CA 94283-0001

Jennifer Neill, Esq.
Deputy Attorney General
1300 I Street
P.O. Box 944255
Sacramento, CA 94244-2500

Rochelle Holzmann, Esq.
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

Anya Binsacca, Esq.
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury under the laws of the State of Rhode Island
that the foregoing is true and correct, and that this declaration was executed at
Providence, Rhode Island on September 25, 2001.

*Jeannie Lussier*

jmk\mastering\cert2 fedex.doc

ALL-STATE® LEGAL 800-222-0510    FORM 1    RECYCLED

EXHIBIT A

Defendants' Rejection of Private Contractors'
Bids to Provide Mental Health Services



**BILL LOCKYER**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: 415-703-5500
Telephone: 415-703-5719
Facsimile: 415-703-5843
E-Mail: rochelle.holzmann@doj.ca.gov

**Via Facsimile and U.S. Mail**

June 27, 2001



J. Michael Keating, Jr., Special Master
Little, Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI 02903

**RE:**   *Coleman et al. v. Davis et. al.,*
      **Case No.: CIV-S-90-0520 LKK JFM P**

Dear Mr. Keating:

This letter is to advise you that the recent Invitation for Bid (IFB) for contracting for mental health services did not yield a successful response. The California Department of Corrections received two bids, neither of which could be accepted because they did not comply with the IFB's requirements. One bidder significantly exceeded the maximum bid amount, while the other bidder refused to provide the required Irrevocable Letter of Credit. Consequently, CDC has notified each bidder that its bid was nonresponsive and ineligible for a contract award. I have enclosed copies of the letters CDC sent to the two bidders.

Defendants are in the process of evaluating other options for contracting mental health services. As always, Defendants welcome your suggestions, and appreciate the assistance you and your staff have provided in this endeavor.

Sincerely,

Rochelle C. Holzmann
Deputy Attorney General
For   BILL LOCKYER
      Attorney General

Enclosures
RCH:jb

cc:   Matthew Lopes (via facsimile)      Kathleen Keeshen
      Eileen Baumgardner               Jennifer Neill
      Michael Bien (via facsimile)       Donald Specter (via facsimile)
      Anya Binsacca                   Susann Steinberg

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                    GRAY DAVIS, *Governor*

**DEPARTMENT OF CORRECTIONS**
P.O. Box 942883
Sacramento, CA 94283-0001



June 12, 2001


Thomas Boshell, Senior Vice President
Liberty Behavioral Health Corporation
401 E. City Avenue, Suite 820
Bala Cynwyd, PA 19004-1155

Dear Mr. Boshell:

**INVITATION FOR BID NUMBER:  C00.178**

This letter is notification that your bid, which was opened on June 11, 2001, for Mental Health Program Services has been evaluated to ensure all requirements, have been met.

The Department has determined that your bid did not comply with the Invitation for Bid requirements, because your proposal contained multiple contract provision changes and your bid amount of $84,602,155 exceeded the Departments estimated amount of $37,412,280.   Therefore, your bid is considered nonresponsive and ineligible for a contract award.

Your interest in being a contractor with the California Department of Corrections is greatly appreciated.  If you have any questions or need assistance from this office, please contact me at (916) 323-8724.

Sincerely,

Susan Lew
Manager
Institution Contracts Section

doc: nonresp


STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                    GRAY DAVIS, *Governor*

## DEPARTMENT OF CORRECTIONS
P.O. Box 942883
Sacramento, CA 94283-0001

June 12, 2001

Robert W. May
MHM Correctional Services, Inc.,
34 Peachtree Street, NW, Suite 770
Atlanta, GA 30303

Dear Mr. May:

### INVITATION FOR BID NUMBER:  C00.178

This letter is notification that your bid, which was opened on June 11, 2001, for Mental
Health Program Services has been evaluated to ensure all requirements, have been
met.

The Department has determined that your bid contained exclusionary provisions
regarding the Irrevocable Letter of Credit (ILOC) and did not comply with the Invitation
for Bid requirements. Pursuant to your letter dated June 8, 2001 and my conversation
with Michael Pinkert, MHM Correctional Services, Inc., your company will not provide
the California Department of Corrections with an Irrevocable Letter of Credit (ILOC),
which is a requirement in the Invitation for Bid Package. Therefore, as discussed, your
bid is considered nonresponsive and ineligible for a contract award.

Your interest in being a contractor with the California Department of Corrections is
greatly appreciated.  If you have any questions or need assistance from this office,
please contact me at (916) 323-8724.

Sincerely,

Susan Lew
Manager
Institution Contracts Section

doc:  nonresp

ALL-STATE LEGAL  800-222-0510  EDM1  RECYCLED

EXHIBIT B

Defendants' Report on Alternative Strategies
for Reducing Mental Health Staffing Vacancies

**DEPARTMENT OF CORRECTIONS**
**Health Care Services Division**
**P.O. Box 942883**
**Sacramento, CA 94283-0001**



May 25, 2001

Mr. J. Michael Keating, Jr., Special Master
Little Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI 02903

Dear Mr. Keating:

Enclosed please find an update on activities related to the filling of mental health staffing vacancies. In particular, this information responds to suggestions identified in your December 20, 2000 report to the Court on staffing vacancies and the April 4, 2001 Order resulting from it.

If you wish any additional information on any of these activities, please contact me at (916) 323-0236.

Sincerely,

EILEEN V. BAUMGARDNER, Chief (A)
Mental Health Services
Health Care Services Division

Enclosure

cc: Steven Cambra, Jr.          Susann J. Steinberg, M.D.      Matthew Lopes
    Donna M. Wilson, M.D.       Stephen M. Boreman            Anya Binsacca
    David Barlow                Kathleen Keeshen             Leonti Thompson, M.D.
    Betty Sutton, Ph.D.         Millicent Gomes

The following information provides an update, as of May 15, 2001, of California Department of Corrections (CDC) activities in response to various alternatives suggested for filling mental health clinical vacancies in CDC. The alternatives were detailed in a December 20, 2000 report by the *Coleman* Special Master and adopted in an Order issued by the Court on April 4, 2001.

1.  Contracting for Services

- The CDC has released the Invitation For Bid (IFB) for contracted provision of the Mental Health Services Delivery System (MHSDS) programs at Avenal State Prison (ASP) and North Kern State Prison (NKSP), as well as a new inpatient intermediate level care program at California State Prison at Corcoran (CSP-COR). A bid package addendum, including an updated scope of services, was sent to prospective bidders via overnight mail May 14, 2001. (The new scope and other materials had been provided to the Special Master, and through him to his experts and plaintiffs' attorneys, for review prior to release to the bidders.) At present, the bid opening is scheduled for June 11, 2001 at 3:00 p.m. One informational meeting has also been held with three of the impacted Bargaining Units. Another meeting may be scheduled after they have had an opportunity to review the materials in the addendum and revised scope of services. It is unknown at this time if any of the Bargaining Units will appeal the contract, which could result in a delay in its award or implementation.

2.  Recruitment

- Institutional Websites: The CDC maintains a website at www.cdc.state.ca.us advertising job opportunities throughout the Department as well as providing general information on the Department and individual prison locations. The website provides information on the various mental health classifications including the minimum qualifications, salary range, applicable recruitment and retention bonus offered, benefits, as well as a contact person. The Health Care Services Division (HCSD) is currently working with the Webmaster to update the advertisements and develop a standardized format for the job bulletins, as well as providing additional links to examination bulletins and job specifications. Attachment 1 includes the updated job description information provided to the Webmaster related to Mental Health classifications.

    In addition, the CDC Office of Personnel Management (OPM) distributes a weekly "Job Opportunity Bulletin" reflecting positions currently vacant Statewide. Advertisements for Staff Psychiatrist, Chief Psychiatrist and Clinical Psychologist vacancies are placed on a continuous basis. The applicable recruitment and retention pay differential (R&R) is presently reflected for Clinical Psychologist and HCSD is working with the CDC OPM to include the presently approved R&R in the Staff and Chief Psychiatrist advertisements as well.

- Promotional computer disks for geographic areas: Although this project has been discussed with California State University, Sacramento Graphics Department, it has been deferred to next Fiscal Year (after July 1, 2001) due to lack of funding in this Fiscal Year.

- Institutional clinician participation in job fairs: Institutional clinical staff presently do participate in recruitment efforts, including job fairs, either along with, or in place of

central office clinicians. For example, Margaret McAloon, Ph.D., Greg Hirokawa, Ph.D., and Jerre Lender, Ph.D., participated with central office staff in recruitment activities at the California Psychological Association's annual convention March 29-April 1, 2001. As their time and institutional duties permit, expanded participation of field clinicians in recruiting activities will be solicited. Recruitment remains a primary activity for headquarters clinicians.

- Centralize aspects of the recruitment and hiring process: A number of key elements are already centralized. These include:

  a. Staff Psychiatrist and Psychologist lists are cleared continuously statewide by Central Hiring. For an expedited exam to be processed the certification list must be cleared. Expedited exams are requested as needed, with a 24-to 48-hour turn around time for processing the expedited exam.
  b. Hiring Above Minimum (HAM) requests are processed at centrally at HCSD and submitted to CDC Headquarters Personnel Operations for review and approval. This cuts up to several weeks off the process and assures that packages, when submitted the first time, include all the necessary information for processing.
  c. Open examinations are conducted for critical medical and mental health classifications frequently.

- Use of a Central Valley Recruiter Specialist: In addition to his position as Chief Psychologist at CSP-COR, Dr. Greg Hirokawa has been serving as a "recruiter specialist" for his and surrounding institutions. As he has identified candidates interested in working at CSP-COR in particular and the Central Valley in general, he has shared this information with surrounding institutions. This activity is expected to increase as CSP-COR is successful in filling most of its vacancies.

- Training for personnel staff on dealing with clinicians: The HCSD support staff that are likely to have direct communication with clinicians and clinical position applicants will be registered for State Training Center classes in "Telephone Communication" and "Inter-Personnel Communication" when training funds are available in Fiscal Year 2001/2002.

3. Outreach to Professional Schools and Programs

- Psychologist internship program: Seven institutions have elected to participate in this program, which operates through the Central California Psychology Internship Consortium Association. The internships are for one year, which commences August 1, 2001. The seven participating institutions are: California Correctional Institution (CCI), California Men's Colony (CMC), California State Prison–San Quentin (CSP-SQ), Salinas Valley State Prison (SVSP), Central California Women's Facility (CCWF), Valley State Prison for Women (VSPW), and California Institution for Women (CIW). Each institution will have two clinical psychology interns. Psychology staff at each participating institution have interviewed and selected the interns who will work at their institution. The selected interns have been notified.

- Psychiatric residents program: CSP-SQ presently has two psychiatric fellows working at the institution as contract employees. The two psychiatrists are fifth year post-graduate students from the "Psychiatry and the Law" Program at University of California, San Francisco. The CSP-SQ Chief Psychiatrist, who serves as the institutional supervisor for the psychiatric fellows, states that the two are "not only excellent students, but also

excellent psychiatrists." He indicates that, apparently, neither candidate is expected to remain at CSP-SQ after the fellowship year (which ends in June 2001). One has indicated a desire to return to Kaiser (where he had worked previously). The other has expressed interest in working in a more purely forensic capacity, such as on Mentally Disordered Offender evaluations.

- **Establishment of headquarters senior psychiatric technician position:** The process of establishing this position has gotten off track. Therefore, the estimated start date of February 2001 has clearly been missed. We are renewing the process and hope to fill the position by September 2001. When hired, one of the primary roles of the senior psychiatric technician will be to promote CDC employment opportunities to students enrolled in psychiatric technician training programs.

## 4. Enhanced Compensation

- **Data on compensation levels:** We are investigating information on the most recent Department of Personnel Administration (DPA) salary survey(s) for mental health classifications.

- **R&R differentials:** The Department has been asked by the Administration to defer any discussion of additional Statewide recruitment and retention (R&R) pay pending completion of negotiation of new master agreements with all of the State's Bargaining Units. Negotiations are presently on-going, as the existing agreements expire June 30, 2001.

- **National Health Service Corps:** The National Health Service Corps (NHSC) "Health Professional Shortage Area" loan forgiveness program was approved for implementation at seven institutions for psychiatrists. (CDC originally requested approval for 20 institutions.) Approved institutions include: California Institution for Men (CIM), CSP-COR, CCWF, Deuel Vocational Institution (DVI), High Desert State Prison (HDSP), California Substance Abuse Treatment Facility and State Prison at Corcoran (CSATF), and Wasco State Prison (WSP). Each designated institution, except DVI, has been approved for two participants; DVI has been approved for two for the mainline and two for the Reception Center.

  The NHSC has shared with CDC two lists of the psychiatrists that were available for appointment. The HCSD recruitment staff contacted all the potential applicants. (Each list typically contains about 14 potential applicants.) All were sent recruitment and application materials. Two weeks ago, NHSC indicated there will not be another group of eligible applicants for a few months.

  To date, we have made one psychiatrist hire at CIM as a result of this program. Four other potential applicants showed interest when initially contacted but did not subsequently apply.

  In order to advertise this program, HCSD has added a line in our psychiatrist ads that indicate we are now an approved NHSC - Health Professional Shortage Area employer. We invite potential applicants to call for further information on locations available.

  The HCSD is presently investigating potential for application of this program to psychologists, psychiatric social workers, and registered nurses.

- Sign-on bonuses: As with the R&R differential, the Department has been asked to defer any discussion of sign-on bonuses pending completion of negotiation of new master agreements with all of the State's Bargaining Units.

- Work/study programs: As with the R&R differential, the Department has been asked to defer any discussion of work/study programs pending completion of negotiation of new master agreements with all of the State's Bargaining Units.

## 5. Realignment

- The Department is continuing to investigate options for consolidation or realignment of mental health services. Ability to recruit and retain staff will be a major factor considered in those investigations. HCSD's review of potential mental health delivery realignment is occurring at a time when CDC is looking at overall changes in its inmate population, including the potential impact of Proposition 36, and potential system-wide changes in some institutions' missions. However, the Department remains committed, foremost, to providing inmates timely access to appropriate mental health services.

## 6. Preventive Measures

- Parole Mental Health Program: The CDC Parole and Community Services Division (P&CSD) Mental Health Services Continuum Program (MHSCP) began implementation in July 2000. Attachment 2 provides a general overview of MHSCP. The program is an expansion and enhancement of mental health treatment services delivered by P&CSD's existing Parole Outpatient Clinics throughout the state. The MHSCP focuses on services to inmates/parolees who are receiving in-prison services through an Enhanced Outpatient Program or the Correctional Clinical Case Management System.

  The pre-release evaluations for the MHSCP are based on the existing Transitional Case Management Program (TCMP) model, which has been successfully used to assist parolees with HIV/AIDS as they transition to the community. P&CSD has contracted with two county agencies (Kern County Department of Public Health and San Diego County Department of Health Services), who have done outstanding jobs in implementing the existing TCMP, to provide the pre-release mental health evaluations. Pre-release services are provided at all institutions through these two contracts. The pre-release assessments and benefits counseling are conducted by social workers and are designed to be conducted at 90 and 30 day intervals before release.

## 7. Miscellaneous Activities

- Removal of cases from CCCMS: CDC will be developing a proposal, for discussion with the Special Master, experts, and plaintiffs' attorneys, regarding removal from the overall CCCMS caseload, on a case-by-case basis, of inmates who are stable, have asked to be removed and are no longer on medication.

- Use of marriage and family counselors as case managers: We have not yet begun to evaluate this option.

Attachment 1

**Job Description Information Provided to CDC Webmaster Related to Mental Health Classifications**

### PSYCHIATRIC SOCIAL WORKER
### (Correctional Facility)

**Minimum Qualifications:**

Possession of a valid license as a Licensed Clinical Social Worker issued by the California Board of Behavioral Science Examiners. (Applicants who are in the process of securing their license from the California Board of Behavioral Science Examiners will be admitted to the examination, but must secure a valid license before they will be considered eligible for appointment.) (Individuals who do not qualify for licensure by the California Board of Behavioral Examiners may be admitted into the examination and may be appointed but must secure a valid license within four years of appointment; however, an individual can be employed only to the extent necessary to be eligible for licensure plus one year. An extension of the waiver may be granted for an additional one year based on extenuating circumstances. The time duration for unlicensed employment does not apply to active doctoral candidates in social, social welfare, or social service, until the completion of such training.)

(Unlicensed individuals who are recruited from outside the State of California and who qualify for licensure may take the examination and may be appointed for a maximum of one year at which time licensure shall have been obtained or the employment shall be terminated; an extension of the waiver may be granted for an additional one year based on extenuating circumstances. Individuals granted an additional one year based on extenuating circumstances may be appointed for a maximum of two years at which time licensure shall have been obtained or the employment shall be terminated. Additionally, they must take the licensure examination at earliest possible date after the date of employment).

**and**

**Education:**

Completion of a master's degree program from an accredited school of social work, approved by the Council on Social Work Education or equivalent degree approved by the California Superintendent of Public Instruction.

**Salary Range:** (Updated April 2001)
$3163 - 3942

Recruitment and Retention Bonus
$400 per month Recruitment & Retention Bonus Pay
Also eligible for a $1,500 one time bonus at all institutions except Avenal State Prison, Calipatria State Prison, Chuckawalla State Prison and Ironwood State Prison

**Benefits:**

Fourteen Annual Holidays with Pay
Health/Dental/Vision Plans (Includes Immediate Family)
Life Insurance Policy
Generous Vacation and Sick Leave
Safety Retirement
Continuing Education Tuition Assistance
License Fees Reimbursement

**For more information or to request an application contact:**
Charles E. Nelson
Department of Corrections
Health Care Services Division
P.O. Box 942883
Sacramento, CA 94283-0001
(888) 232-4584 or (916) 327-1452
Fax (916) 327-1436
This is not an official document and all the information presented above is subject to change without notice.

## PSYCHIATRIC TECHNICIAN
### (Forensic Facility)

**Minimum Qualifications:**

Possession of a valid license to practice as a Psychiatric Technician issued by the California Board of Vocational Nurse and Psychiatric Technician Examiners (CBVNPTE). (Applicants who are within four months of completing the Psychiatric Technician curriculum accredited by the CBVNPTE will be admitted to the examination but they must secure this license before they will be eligible for appointment.)

**Salary Range:** Updated April 2001

|         |               |
|---------|---------------|
| Range A | $2617 – 3148  |
| Range B | $2723 - 3286  |
| Range C | $2832 - 3440  |

**Benefits:**

Medical/dental/vision plans
Generous vacation and sick leave
**Fourteen** holidays per year
License renewal fee reimbursement
Safety Retirement

**For information contact:**

Charles E. Nelson, Medical Recruiter
Department of Corrections
Health Care Services Division
P.O. Box 942883
Sacramento, CA 94283-0001
(888) 232-4584 or (916) 327-1452
(916) 327-1436 (FAX)
This is not an official document and the salaries are subject to change.

## PSYCHOLOGIST - Clinical
### (Correctional Facility)

**Salary Range:** (As of September 1, 2000) (9283)

$4,284 - $5,623

### Recruitment and Retention Bonus

$300 per month authorized for all institutions

Additional $2,400 on completion of every twelve (12) months of employment paid only at Chuckawalla Valley State Prison, Avenal State Prison and Ironwood State Prison

### Benefits:

Fourteen (14) paid holidays
Pre-retirement death benefit
Medical license renewal fee reimbursement (the initial California license fee is **not** reimbursed)
Public Employees Safety Retirement (attainable after five (5) years of service and reaching age of fifty (50)
Health, Dental, and Vision Plans
Paid vacation
Eight (8) hours sick leave per month
Bilingual Differential Pay
Professional Education and Training
Deferred Compensation Plans
Employee Assistance Program

### Limited Term Appointments:
- Employees, new to state service, are eligible for health benefits if their appointments are at least six months plus one day and the time base is half time or greater.
- Employees, new to state service, are not eligible to enroll for vision or dental benefits. The only way a new to state service employee is eligible for vision or dental benefits is to obtain a permanent appointment.

### Contact:
Anne Perez, Health Professional Recruiter
California Department of Corrections
Health Care Services Division
(888) 232-4584 or (916) 327-7081
Fax (916) 327-143

This is not an official document and salaries are subject to change

## STAFF PSYCHIATRIST
### (Correctional Facility)

**Salary Ranges:** (As of September 1, 2000) (9272)

All institutions **may** authorize a "Hiring Above the Minimum" (HAM) salary differential. Extraordinary Qualifications and Experience will determine salary for a Staff Psychiatrist.

Range A        $8,122 - $9,872 (Non Board Eligible)
Range B        $8,514 - $10,349 (Board Eligible)
Range C        $8,761 - $10,649 (Board Certified)

**Recruitment    and    Retention    (R&R)    Bonus**    (Effective    January    1,    2000)
All correctional institutions will pay Staff Psychiatrist(s) a monthly R&R bonus of $2,200.

Pelican Bay State Prison pays an additional $1,250 monthly Recruitment and Retention Bonus for a total monthly R&R bonus of $3,450 for Staff Psychiatrists.
**This monthly bonus is paid in addition to the monthly salary.**

Avenal State Prison, Ironwood State Prison, Chuckawalla Valley State Prison, Calipatria State Prison and the California Medical Facility pay an additional $2,400 recruitment and retention bonus at the completion of every twelve (12) months of employment. **This is paid in addition to the $2,200 monthly R&R.**

Contact our medical recruiter for further information.
### Benefits:
Fourteen (14) paid holidays
Pre-retirement death benefit
Medical license renewal fee reimbursement (the initial California license fee is **not** reimbursed)
Professional liability coverage (representation by the Office of Attorney General)
Public Employees Safety Retirement (attainable after five (5) years of service and reaching age fifty (50)
Health, Dental, and Vision Plans
Eleven (11) hours per month for Annual Leave Credits
Psychiatric Officer of the Day Pay (not all locations)
Bilingual Differential Pay
Continuing Medical Education Leave
Deferred Compensation Plans
Employee Assistance Program
### Limited Term Appointments:
- Employees, new to state service, are eligible for health benefits if their appointments are at least six months plus one day and the time base is half time or greater.
- Employees new to state service, are not eligible to enroll for vision or dental benefits. The only way a new to state service employee is eligible for vision or dental benefits is to obtain a permanent appointment.

### Contact:
Anne Perez, Health Professional Recruiter
California Department of Corrections
Health Care Services Division
(888) 232-4584 Toll Free or (916) 327-7081  Fax (916) 327-1436
This is not an official document and salaries are subject to change

**CDC Parole and Community Services Division (P&CSD)**
**Mental Health Services Continuum Program (MHSCP)**

### OVERVIEW

In July 2000, the California Department of Corrections (CDC), Parole and Community Services Division (P&CSD) implemented the Mental Health Services Continuum Program (MHSCP). The new program is an expansion and enhancement of mental health treatment services delivered by P&CSD's existing Parole Outpatient Clinics (POC) throughout the state. The mission of the MHSCP is to reduce the symptoms of mental illness among offenders by providing timely, cost-effective mental health services that optimize the level of individual functioning of mentally ill parolees in the community thereby reducing recidivism and improving public safety.

The MHSCP provides pre-release needs assessment, benefits eligibility and application assistance to paroling mentally ill inmates. Expanded and enhanced post-release mental health treatment for mentally ill parolees combined with improved continuity of care from institution's mental health service delivery system to parole's new MHSCP ensures successful reintegration into the community upon discharge from parole.

### TARGET POPULATION

The MHSCP target population consists of:

1. Parolees who were receiving mental health treatment in the institutions prior to release from prison, and are released on or after October 1, 2000, and/or;
2. Parolees who are referred by a parole agent and are found upon evaluation by the MHSCP clinician to meet the same criteria required for admission to the institution's mental health services delivery system.

The criteria for admission to both the institution's and parole's mental health treatment programs is a diagnosis of one or more of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) psychiatric disorders. The two mental health designations used to determine the level of treatment need for both inmates/parolees are Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient Program (EOP). The EOP parolee is lower functioning than the CCCMS due to an acute onset or significant deterioration of a serious mental disorder characterized by a definitive impairment of reality testing and/or judgment which creates dysfunctional or disruptive social interaction or severe impairment of activities of daily living.

### PROGRAM COMPONENTS

Pre-release needs assessments are done for all designated EOP and CCCMS inmates at ninety (90) and thirty (30) day intervals prior to release utilizing inmate files and face-to-face interviews. These assessments are used to provide pre-release services including benefits application, coordination of transportation and housing, provision of medications upon release, assurance of arrival at first parole agent and MHSCP appointments, and clinical treatment plans. This allows both the MHSCP clinical team of psychiatrist, psychologist, and psychiatric social worker, and the parole agent to prepare for their initial meeting with the parolee upon release.

On-going clinical treatment in both individual and group therapy settings is combined with quarterly interdisciplinary treatment team meetings to ensure effectiveness and evaluate progress of treatment while updating the treatment and service plans for the parolee. The interdisciplinary treatment team consists of the parolee's MHSCP clinical team, parole agent, and appropriate community resource providers. Its main purpose is to enhance the interaction between the MHSCP clinicians and the parole agent through assisting the parole agent with these high service cases.

A variety of clinical therapies are combined and tailored to meet the individual needs of each MHSCP parolee. An initial clinical evaluation including, in most cases, psychological testing is completed and a parolee criminal history is reviewed prior to the mental health treatment plan development. Therapies offered range from individual and group psychotherapies to specific to parolee needs such as anger management, social integration, community re-entry, and release preparation. The frequency and duration of therapy is determined by the primary clinician and reviewed by the interdisciplinary treatment team.

When the parolee is within 120 days of discharge from parole, MHSCP discharge planning is provided to prepare for release. It includes review and preparation of the parolee's file and treatment plan, assessment of parolees functioning with activities of daily living, completion of a written release plan which includes any community treatment and transitional resources, and facilitating the actual transition to the community by MHSCP psychiatric social workers.

ALL-STATE® LEGAL  800-222-0510    FORM    RECYCLED

EXHIBIT C

CDC's Monthly Statistics on Allocated
Mental Health Staff and Vacancies

EXHIBIT C

CDC's Monthly Statistics on Allocated
Mental Health Staff and Vacancies

# Mental Health Service Delivery System

## Staffing Allocation and Vacancy History

| | As of 7/19/01 | | | As of 7/20/01 | | | As of 5/18/01 | | | As of 4/20/01 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Time Base | Vac | Vacancy Rate | Time Base | Vac | Vacancy Rate | Time Base | Vac | Vacancy Rate | Time Base | Vac | Vacancy Rate |
| **Grand Total** | | | | | | | | | | | | |
| Psychiatrist | 191.48 | 48.80 | 25.49% | 190.98 | 50.30 | 26.34% | 190.98 | 52.30 | 27.39% | 193.48 | 56.80 | 29.36% |
| Psychologists | 363.00 | 78.10 | 21.52% | 363.50 | 85.60 | 23.55% | 363.50 | 88.60 | 24.37% | 362.00 | 88.60 | 24.48% |
| Social Workers | 136.50 | 36.90 | 27.03% | 136.50 | 36.90 | 27.03% | 137.50 | 39.50 | 28.73% | 138.80 | 40.80 | 29.39% |
| The Other Classifications | 577.00 | 113.70 | 19.71% | 576.50 | 113.00 | 19.60% | 577.00 | 118.10 | 20.47% | 574.70 | 121.00 | 21.05% |
| **Grand Total** | 1,267.98 | 277.50 | 21.89% | 1,267.48 | 285.80 | 22.55% | 1,268.98 | 298.50 | 23.52% | 1,268.98 | 307.20 | 24.21% |
| **213 * Medical** | | | | | | | | | | | | |
| Psychiatrists | 2.00 | 0.00 | 0.00% | 2.00 | 0.00 | 0.00% | 2.00 | 0.00 | 0.00% | 2.00 | 0.00 | 0.00% |
| Psychologists | 3.50 | 2.00 | 57.14% | 3.50 | 2.00 | 57.14% | 3.50 | 2.00 | 57.14% | 3.50 | 1.00 | 28.57% |
| Social Workers | 7.00 | 0.00 | 0.00% | 7.00 | 1.00 | 14.29% | 7.00 | 1.00 | 14.29% | 7.00 | 1.00 | 14.29% |
| The Other Classifications | 2.00 | 0.00 | 0.00% | 2.00 | 0.00 | 0.00% | 2.00 | 0.00 | 0.00% | 2.00 | 0.00 | 0.00% |
| **Medical** | 14.50 | 2.00 | 13.79% | 14.50 | 3.00 | 20.69% | 14.50 | 3.00 | 20.69% | 14.50 | 2.00 | 13.79% |
| **220 * Mental Health** | | | | | | | | | | | | |
| Psychiatrists | 176.78 | 47.10 | 26.64% | 176.28 | 48.60 | 27.57% | 176.28 | 50.60 | 28.70% | 178.78 | 54.10 | 30.26% |
| Psychologists | 337.50 | 75.10 | 22.25% | 338.00 | 82.60 | 24.44% | 338.00 | 85.60 | 25.33% | 337.50 | 87.60 | 25.96% |
| Social Workers | 123.00 | 36.40 | 29.59% | 123.00 | 35.40 | 28.78% | 124.00 | 38.00 | 30.65% | 124.30 | 38.30 | 30.81% |
| The Other Classifications | 574.00 | 113.70 | 19.81% | 573.50 | 113.00 | 19.70% | 574.00 | 118.10 | 20.57% | 571.70 | 121.00 | 21.16% |
| **Mental Health** | 1,211.28 | 272.30 | 22.48% | 1,210.78 | 279.60 | 23.09% | 1,212.28 | 292.30 | 24.11% | 1,212.28 | 301.00 | 24.83% |
| **320 * Mental Health** | | | | | | | | | | | | |
| Psychiatrists | 12.70 | 1.70 | 13.39% | 12.70 | 1.70 | 13.39% | 12.70 | 1.70 | 13.39% | 12.70 | 2.70 | 21.26% |
| Psychologists | 22.00 | 1.00 | 4.55% | 22.00 | 1.00 | 4.55% | 22.00 | 1.00 | 4.55% | 21.00 | 0.00 | 0.00% |
| Social Workers | 6.50 | 0.50 | 7.69% | 6.50 | 0.50 | 7.69% | 6.50 | 0.50 | 7.69% | 7.50 | 1.50 | 20.00% |
| The Other Classifications | 1.00 | 0.00 | 0.00% | 1.00 | 0.00 | 0.00% | 1.00 | 0.00 | 0.00% | 1.00 | 0.00 | 0.00% |