

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,                  No. CIV S-90-0520 LKK JFM P

    vs.

GRAY DAVIS, et al.,

    Defendants.                <u>ORDER</u>

_____/

        On June 10, 2003, the special master filed an eleventh monitoring report. The report contains a series of recommendations for specific action by defendants. Each party has filed objections to certain of the recommendations, and plaintiffs have responded to defendants' objections. On July 21, 2003, the special master sent a letter to the court revising two of his recommendations in light of information received subsequent to the filing of the report. On July 23, 2003, plaintiffs submitted a letter objecting to two of the modifications.[1]

/////

---

[1] Plaintiffs also contend that the modifications contained in the special master's letter "should be considered a new report under Rule 53 [of the Federal Rules of Civil Procedure]" and that the court "should not take action" on those new recommendations "until the 10 day period for objections has expired." (Letter dated July 23, 2003, at 1.) This aspect of plaintiffs' objection is overruled.

The special master's first recommendation would have required defendants to "open the Department of Mental Health (DMH)-run intermediate bed program at Salinas Valley State Prison, fill 32 beds by September 1 and bring the facility to its planned 90 percent of capacity by December 31, 2003." (Eleventh Monitoring Report, filed June 10, 2003, at 280.) Defendants objected to the recommended deadlines for filling 32 beds[2] and bringing the program to 90 percent of capacity; plaintiffs responded that the deadlines should be adopted in full.

In his July 21, 2003 letter, the special master reports that the facility has opened and that it "reportedly admitted its first patient on June 2 and anticipated receiving over the next 30 to 60 days a total of some 15 inmate/patients, the maximum number the program can handle with its current complement of 17 MTAs[3] and four MTA supervisors." (Letter dated July 21, 2003, at 1.) The special master and the parties are in agreement that the the obstacle to full operation of the Salinas Valley facility is difficulties in hiring MTAs to staff the facility. In order to address this, defendants included in the budget for fiscal year 2002-2003 a recruitment and retention bonus of $1,000.00 a month for MTAs in department facilities in the Salinas Valley. The bonus was included in the budget but has apparently not yet been implemented. The special master therefore recommends in his July 21, 2003 letter that defendants be required immediately to apply the bonus to all of Salinas Valley State Prison (SVSP) and the Correctional Training Facility. Plaintiffs urge the court to adopt that recommendation. The court will do so.

The special master also recommends adjusting the timelines for filling 50% and 90% of the beds to November 1, 2003 and February 1, 2004, respectively. (Letter dated July 21, 2003, at 2.) Plaintiffs object to the proposed extension, contending that defendants have known for four years that they would have difficulties recruiting MTAs in the Salinas Valley, that they

/////

---

[2] Thirty-two beds represents half the capacity of the 64 bed facility.

[3] Medical Technical Assistants.

have failed to demonstrate the absence or unfeasibility of other staffing options to run the facility, and that the special master has failed to offer any explanation for the proposed extension.

With respect to the last objection, the special master specifically grounds his recommendation in the need to "permit the effective recruitment of MTAs." (Letter dated July 21, 2003, at 2.) While the court is not unsympathetic with plaintiffs' frustration at the delays that have obtained in this and other areas of the remedial phase of this action, under all of the circumstances presented here it is more prudent to allow defendants to effectively recruit staff to make the facility fully operational than it is to patch together temporary alternatives in order to hasten by two months the operation of the unit. The court will adopt in full the revised recommendations of the special master concerning the DMH-run intermediate bed program at SVSP.

The special master's second recommendation is that defendants "be required to finalize and initiate implementation of their new medication management policy by August 1, 2003." (Eleventh Monitoring Report, at 280.) Neither party has objected to this recommendation. It will be the order of the court.

The special master's third recommendation is that the medication policy "include a provision that requires the evening distribution of HS medications,[4] i.e. no earlier than 8:00 p.m., and a supervisory psychiatric oversight or peer review structure that is not so burdensome it precludes or unnecessarily discourages the prescription of HS medications when clinically appropriate." (Eleventh Monitoring Report, at 281.) Neither party has objected to this recommendation. It will be the order of the court.

The special master's fourth recommendation, which has been modified in his July 21, 2003 letter, is the subject of objections from both parties. The recommendation concerns the Day Treatment Program (DTP) and the Intermediate Care Facility (ICF) at California Medical

---

[4] *Hora somni*, or hour of sleep, medications.

3

Facility (CMF), both of which the special master reports are slated for closure not later than September 2004 and, in fact, for closure in tandem with the opening of beds in the DMH program at SVSP. (Eleventh Monitoring Report, at 266.)[5]

The special master originally recommended that defendants begin forthwith the assessment of inmates in the DTP and ICF to determine, not later than August 30, 2003, the type of treatment each inmate will receive and where he will receive it, and that the master's experts review the assessments and "make appropriate recommendations relative either to the assignments or the need for any new program by October 31, 2003." (Eleventh Monitoring Report, at 281.) In his letter, the special master reports that defendants have identified 19 inmates for transfer to Atascadero State Hospital (ASH) and he recommends that they begin forthwith the process for referral and transfer of those inmates. He also recommends that his experts review the additional assessments by September 30, 2003, and that he recommend to the court by October 31, 2003 whether the program may be closed. (Letter dated July 21, 2003, at 4.)

Defendants object to the recommendation that the experts make "appropriate" recommendations, contending that the recommendations should be limited to "whether the inmate's mental health needs at the time of the assessment could be adequately met in an existing MHSDS [Mental Health Services Deliver System] program" and "based only upon a review of assessment documents and data from the UHR and/or C-File that pertains to the time period before the date of the assessment" and that the experts' review should not include "second-guessing the clinical judgment of Departmental staff." (Objections, filed June 23, 2003, at 4.)

---

[5] In their July 23, 2003 letter, plaintiffs object, inter alia, to the linking of the opening of beds at SVSP and the closure of beds in the DTP/ICF, referring to the special master's September 3, 2002 finding that the SVSP program was not designed for inmates coming from the DTP/ICF. (Letter dated July 23, 2003, at 4.) From the court's perspective, the issue is whether there is appropriate care available for all members of the plaintiff class and that will guide the court's review of any recommendation by the special master concerning the closure of the DTP/ICF at CMF.

4

The special master has modified slightly his recommendation in this regard and, in any event, defendants provide no foundation for their assertion that the recommended directive will not be followed or that it otherwise requires circumscription. Defendants' objection is overruled.

Although plaintiffs interposed no objection to the original recommendation contained in the Eleventh Monitoring Report, in their July 23, 2003 letter they now "object to the proposed change in the recommendations that would allow the CDC to close" the ICF. (Letter dated July 23, 2003, at 2.) In the court's view, plaintiffs misperceive the nature of the special master's recommendation.

The special master has not recommended closure of the ICF. What he recommends is that 19 inmates be transferred forthwith to ASH, that the inmates remaining be assessed by defendants, that the master's experts evaluate those assessments to determine whether the inmates' needs can be met in the recommended placements, and that thereafter the master recommend whether the program may be closed. The time to object to the proposed closure of the program is when, and if, the master so recommends. Plaintiffs' objection is premature and is therefore overruled.

The special master's fifth recommendation is that a deadline of July 31, 2003 be set for preparation and delivery of training materials for clinicians on DMH inpatient program resources available to CDC clinicians, the criteria for admission, and the documentation required to refer and obtain transfers for inmates. (Eleventh Monitoring Report, at 281.) Defendants object to the deadline, seeking additional time in order to provide effective materials and training. Plaintiffs have not opposed defendants' request for more time. Accordingly, the court will adopt the revised schedule proposed by defendants in their objections.

Finally, the special master recommends adoption of a series of recommendations by his experts in connection with inmate suicides. Defendants object to the standards used to monitor completed suicides, while plaintiffs object to the final recommendation in the series as
/////

1  "too vague." Plaintiffs request a series of specific directives to defendants and to the special
2  master in connection with suicide monitoring.
3        The court is satisfied that the special master and his experts are appropriately
4  monitoring defendants' suicide prevention policies and procedures and that their
5  recommendations should be adopted in full. The parties' objections are therefore overruled.
6        In accordance with the above, IT IS HEREBY ORDERED that:
7        1. Defendants shall immediately apply the budgeted $1,000.00 recruitment and
8  retention bonus for medical technical assistants (MTA) to all MTA positions at Salinas Valley
9  State Prison and the Correctional Training Facility.
10       2. On or before November 1, 2003, defendants shall fill 32 beds in the DMH-run
11 intermediate inpatient psychiatric program at Salinas Valley State Prison.
12       3. On or before February 1, 2004, defendants shall bring the DMH-run
13 intermediate inpatient psychiatric program at Salinas Valley State Prison to 90% of capacity.
14       4. On or before August 1, 2003, defendants shall finalize and initiate
15 implementation of their new medication management policy.
16       5. Defendants' new medication policy shall include a provision that requires
17 evening distribution, i.e. no earlier than 8:00 p.m., of HS medications, and a supervisory
18 psychiatric oversight or peer review structure that is not so burdensome it precludes or
19 unnecessarily discourages the prescription of HS medications when clinically appropriate.
20       6. Defendants shall begin forthwith the process for the referral and transfer to
21 ASH of those 19 inmates currently housed in the DTP/ICF program who have been identified as
22 eligible for treatment at ASH.
23       7. On or before August 30, 2003, defendants shall assess the inmates remaining
24 in the DTP/ICF to determine the level of treatment they will receive and where they will receive
25 it and shall provide said assessments to the special master.
26 /////

8. On or before September 30, 2003, the special master's psychiatric experts shall review the assessments described in paragraph 7 of this order to evaluate whether their treatment needs can be met in the assigned placements, and, should such evaluation suggest that required treatment cannot be met, recommend an appropriate alternative placement.

9. Based on the review described in paragraph 8, on or before October 31, 2003, the special master shall recommend to the court whether the DTP/ICF program at CMF may be closed.

10. On or before September 1, 2003, defendants shall complete and approve a training program and instructional materials for institutional clinicians on all of DMH's inpatient program resources available to CDC clinicians, the criteria for admission to various programs and procedures and the documentation required to refer and obtain transfers for clinically eligible inmates.

11. On or before September 30, 2003, defendants shall schedule and complete the training described in paragraph 10.

12. Defendants shall forthwith implement the recommendations of the special master's experts contained in the <u>Report on Suicides Completed in the California Department of Corrections in Calendar Year 2001</u> and set forth by the special master at pages 288 and 289 of the Eleventh Monitoring Report.

DATED: July 25, 2003.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

/eleventh.mr

ndd

United States District Court
for the
Eastern District of California
July 25, 2003

* * CERTIFICATE OF SERVICE * *

2:90-cv-00520

Coleman

v.

Reagan

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  July 25, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
        Donald Specter                  AR/LKK
        Prison Law Office
        General Delivery                CF/JFM
        San Quentin, CA   94964

        Michael W Bien
        Rosen Bien and Asaro
        155 Montgomery Street
        Eighth Floor
        San Francisco, CA   94104

        Jennifer Anne Neill
        Attorney General's Office for the State of California
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA   94244-2550

        Jonathan Lloyd Wolff
        California Attorney General's Office
        455 Golden Gate Avenue
        Suite 11000
        San Francisco, CA   94102-7004
```

J Michael Keating Jr
Office of the Special Master
285 Terrace Avenue
Riverside, RI   02915

Edmund F Brennan
United States Attorney
501 I Street
Suite 10-100
Sacramento, CA   95814

Matthew A Lopes Jr
121 South Main St
Providence, RI   02903


                                        Jack L. Wagner, Clerk

                                   BY: _____
                                        Deputy Clerk