KENNETH R. MORROW CDC#C-53683

P.O. BOX 3481

COR CORAN, CA·93212





DECEMBER 29, 2004

IN RE COLEMAN VS. SCHWARZENGGER

NO. CIV S-90-0520 LKK JFM P

JUDGE KARLTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

501 "I" STREET

SACRAMENTO  CA. 95814

DEAR JUDGE KARLTON:

    I AM WRITING YOU IN REGARDS TO THE
COLEMAN V. SCHWARZENGGER, CASE.
    RECENTLY I WROTE A LETTER TO· ATTORNEY'S AT-
LAW, ROSEN, BIEN, AND ASARO, CO· COUNSEL IN
THE ABOVE MENTIONED CASE, SEE EXHIBIT "A".
ATTACHED). I AM TRYING TO CONTACT THE
SPECIAL MASTER, ATTORNEY MICHAEL KEATING,
TO THE ABOVE MENTIONED CASE.
    I WAS REFERRED TO "YOU," BY THE ABOVE
MENTIONED ATTORNEY'S, (SEE EXHIBIT "A" ATTACHED.)
    ALLOW ME TO INTRODUCE MY SELF.
    I AM INCARCERATED AT CORCORAN PRISON,
HOUSED IN MENTAL HEALTH UNIT (SHO) FOR

SUICIDAL IDEATION. I AM 42. YR.S OLD, AND HAVE BEEN IN PRISON 23. YR.S., AND MORE TIME TO SERVE. I AM CERTAINLY MAKING FULL PROOF PLANS FOR SELF ENDUCED DEMISE, FOR THE FOLLOWING REASONS.

UPON ARRIVING AT PRISON IN 1982, I WAS 20. YR.S OLD. I CAME FROM A BROKEN HOME, WHERE FOR YR.S I WAS BEATEN, MOLESTED, INJECTED WITH HEROIN, BY MY FATHER. I WAS RAISED IN MANY REFORM SCHOOLS.

I JOINED A PRISON GANG WHILE IN PRISON OUT OF PEER PRESSURE. I WAS LOOKING FOR A FAMILY, OR SOME KIND OF LOVE, TO BELONG TO SOMETHING. I HAD THREE CHOICES IN PRISON BACK THEN. BECOME A HOMOSEXUAL, GET PREYED UPON BY OTHER RACES, OR JOIN THE FEARED PRISON GANG THE ARYAN BROTHERHOOD.

I WAS SO USED BY THIS GANG FROM 1982, — 1998. I STABBED MANY MEN. BLOOD IN, BLOOD BLOOD OUT. I DROPED OUT OF THE GANG IN 1998. DUE TO THAT I'M A HUNTED MAN BY THE GANG. I'VE HAD A COUPLE SUICIDE ATTEMP1 HANGING, BEING PUT ON A RESPERATOR TO BREATI FOR THREE DAYS, ALSO I CUT MY THROAT, CAROTI ARTERY. I HAVE SPENT 17 YR.S IN SOLITARY CONFINEMENT, WHICH I SUFFER FROM SENSORY DEPRIVATION, WHICH CAUSES ME TO SMELL BLOOD AND FECES, TASTE COPPER IN MOUTH, AND HERE THINGS THAT AINT REAL, AND THINK-

#2

PEOPLE ARE OUT TO DO BAD THINGS TO ME. THIS IS IN MY OPINION NOT MENTAL ILLNESS. I CAN ARTICULATE QUITE WELL. I'M REQUESTING THAT JUDGE KARLTON, FORWARD THIS LETTER TO MR. M. KEATING, AND I DESIRE A INTERVIEW WITH HIM PRIOR TO MY AFOREMENTIONED PLANS.

IN 2001, AT CSP/CSATF, AT CORCORAN, PRISON OFFICIALS, REQUESTED I USE MY SKILLS, THAT I USED, AND TAUGHT WHILE IN THE ARYAN BROTHERHOOD, TO BLOW UP ON VIDEO, A BEVERAGE I DISCOVERED, BEING ISSUED OUT TO PRISONERS. THE BEVERAGE HAD THREE CHEMICALS IN IT, THAT WHEN MIXED TOGETHER, MAKE A MILITARY DUST BOMB. I ARRANGED TO MAKE A DEAL WITH SEVERAL PRISON OFFICIALS, UNDER THE TABLE. I BLEW UP THE BEVERAGE USING A WICK AS IGNITER. A SECURITY ALERT TRAINING VIDEO WAS MADE FOR CDC, AS I WAS VIDEOED, WHILE BLOWING IT UP. SEE EXHIBIT "B" ATTACHED. THERE WAS A STATE WIDE MEMO, SENT TO ALL WARDENS, WARNING THEM... CDC FAILED TO HONOR THEIR WORD AND PROVIDE ME WITH THE DEAL I MADE WITH THEM. THEY LIED TO ME. SEE EXHIBIT "C" ATTACHED. SUBSEQUENTLY, ALL INMATES ON THE PROTETIVE CUSTODY

# 3

FACILITIES, CALLED (SNY) BY CDC, FOUND OUT I CONFIDENTIALLY DID A SERVICE FOR THE COPS, AND I WAS LABLED WORSE THEN A SNITCH. I WAS SENT TO, CSP/ CSATF, CSP/LANCASTER, CSP/MCSP IN IONE, SEE EXHIBIT "D" ATTACHED SEVERAL STATE DOCUMENTS (ENEMIES) ENCLOSED.

I WAS ALMOST STABBED TO DEATH, BUT CDC, CONTINUALY, KEPT SENDING ME TO DIFFERENT PRISONS, KNOWING I'D GET STABBED. I FEARED FOR MY LIFE ON SNY FACILITIES EVEN. FOR A PROTECTIVE CUSTODY INMATE TO BECOME A TARGET BY OTHER PROTECTIVE CUSTODY INMATES, SENDS A CLEAR MESSAGE TO ANY ONE. CDC, IGNORED MY SAFETY ISSUES. AFTER DOING THE FLAMMABLE VIDEO AT CSP/CSATF, I WAS SENT TO LANCASTER PRISON, AND WAS APPROACHED BY SEVERAL STAFF MEMBERS, ON THE SECURITY SQUAD, TO MAKE VIDEO'S FOR THEM USING THINGS ACCESIBLE TO ALL PRISONERS. I SAID NO! I FINALLY GAVE IN, TO ONLY SHOW THEM HOW TO BUILD BOMBS, FLAMMABLE AND CHEMICAL, AND POISONS, AND BULLETS. I REFUSED TO BE ON VIDEO, AS I DID NT WANT TO REPEAT MY LATTER PROBLAM, AGAIN. SEE EXHIBIT "E" ATTACHED. IN 2003, I ASKED CDC, #4.

IF THEY WOULD GRANT ME ONE YEAR, PRISON SENTENCE, REDUCTION, UNDER CALIFORNIA PENAL CODE, SECTION 2935. THEY TURNED ME DOWN, SEE EXHIBIT "F" ATTACHED.

FINALLY CDC, DECIDED TO SEND ME OUT OF STATE, UNDER THE P.C. TO SERVE MY TIME, 'AND' INSTEAD OF HOUSING ME IN CORCORANS (PHU) PROTECTIVE HOUSING UNIT CDC, THREW ME IN THE (SHU) SECURITY HOUSING UNIT, INDETERMINIATELY, SEE ATTACHED EXHIBIT "G". SHU IS WHERE PRISONERS ARE HOUSED, FOR DISCIPLINARY CHARGES. ITS A PUNISHMENT UNIT. I AM DEPRIVED OF EVERYTHING, WORK, CONTACT VISITS, CANTEEN, ITEMS, PHONE CALLS, FREEDOM. ETC., AND SINCE I BEEN HERE IVE BEEN THREATEND BY PRISONERS, FINALLY THE PRISON LAW OFFICE, ATTORNEY PENNY GODBOLD, WROTE THE WARDEN IN MY BEHALF TO PUT ME IN PHU, WHERE E FIT THE CRITERIA TO BE HOUSED. SEE ATTACHED EXHIBIT "H". THE WARDEN SCRIBNER FAILED TO RESPOND.

I CANNOT APPEAL MY SITUATION, BECAUSE DRB, DECISIONS ARE NOT APPEALABLE, SEE CALIFORNIA CODE OF REGULATIONS (CCR) TITLE 15, DIVISION, 3, CHAPTER ONE, ARTICLE 10. SECTION 3376.1. A FRIEND OF MINE

#5

COMMITTED SUICIDE AT CALAPATRIA STATE
PRISON, APRIL 7, 2003. SEE EXHIBIT "I"
ATTACHED. THEY SAY HE STABBED HIMSELF
(5) FIVE TIMES, (3) IN THE HEART, (1) IN
LUNG, (ONE) IN LIVER. HE WAS THE
FOUNDER OF THE ARYAN BROTHERHOOD. HE
TO, LIKE ME, WAS A DROPOUT, WANTED
BY THOUSANDS OF PEOPLE. I AM EXHAU-
STED. I HAVE NOTHING TO LIVE FOR. THE
CDC, IS CAMOUFLAGING, SETTING UP
OLD GANG MEMBERS, THAT ARE DROPPED
OUT OF GANG NOW. — I AM NEXT.
INSTEAD OF REWARDING ME FOR ASSISTING
THEM, THEY ARE IN SELF DENIAL, AND
CDC, IS SETTING ME UP.
        THE FOLLOWING INFORMATION, IS
FOR MR. KEATING.
        MY CASE MANAGER HERE IN EOP, AT
CSP / CORCORAN, IS DR. KABERSKI. HE
TOLD ASSOCIATE WARDEN YAMAMOTO,
THAT I BELONG IN PHU, NOT EOP.
HE SAID IF A.W. YAMAMOTO WOULD PUT
ME IN PHU, I WOULDN'T NEED EOP LEVEL
OF CARE. A.W. YAMAMOTO SAID "NO"!
SEE DR. KABERSKI'S, PROGRESS NOTE
ATTACHED AS EXHIBIT "J."
        ON 12-15-04, DR. KABERSKI, FINALLY GOT
TIRED OF CDC, REFUSING TO TAKE SOME
RESPONSEABILITY FOR ME, HE GOT HIS
#6

COMMITTED SUICIDE AT CALAPATRIA STATE
PRISON, APRIL 7, 2003. SEE EXHIBIT "I"
ATTACHED. THEY SAY HE STABBED HIMSELF
(5) FIVE TIMES, (3) IN THE HEART, (1) IN
LUNG, (ONE) IN LIVER. HE WAS THE
FOUNDER OF THE ARYAN BROTHERHOOD. HE
TO, LIKE ME, WAS A DROPOUT, WANTED
BY THOUSANDS OF PEOPLE. I AM EXHAU-
STED). I HAVE NOTHING TO LIVE FOR. THE
CDC, IS CAMOUFLAGING, SETTING UP
OLD GANG MEMBERS, THAT ARE DROPPED
OUT OF GANG NOW. — I AM NEXT.
INSTEAD OF REWARDING ME FOR ASSISTING
THEM, THEY ARE IN SELF DENIAL, AND
CDC, IS SETTING ME UP.

THE FOLLOWING INFORMATION, IS
FOR MR. KEATING.
MY CASE MANAGER HERE IN EOP, AT
CSP / CORCORAN, IS DR. KABERSKI. HE
TOLD ASSOCIATE WARDEN YAMAMOTO,
THAT I BELONG IN PHU, NOT EOP.
HE SAID IF A.W. YAMAMOTO WOULD PUT
ME IN PHU, I WOULDN'T NEED EOP LEVEL
OF CARE. A.W., YAMAMOTO SAID "NO"!
SEE DR. KABERSKI'S, PROGRESS NOTE
ATTACHED AS EXHIBIT "J".
ON 12-15-04, DR. KABERSKI, FINALLY GOT
TIRED OF CDC, REFUSING TO TAKE SOME
RESPONSEABILITY FOR ME, HE GOT HIS
# 6

SUPERVISOR, MS. SEYCORA, THE HUB,
MS. SEYKORA, TO SET UP A MEETING
WITH A.W. YAMAMOTO, AND SHE DID,
DURING THE MEETING DR. KABERSKI,
LOOKED A.W. YAMAMOTO IN THE EYE,
AND TOLD HER, THAT IF SHE DONT MOVE
ME TO PHU, THAT I "WILL COMMITT
SUICIDE IF LEFT IN THE SHU. DR.-
KABERSKI, MADE IT CLEAR THAT, THIS
IS HIS PROFESSIONAL OPINION, A.W.-
YAMAMOTO REFUSED TO HOUSE ME IN
PHU, IN VIOLATION OF THE AFOREMENTIONED
CODE. Dr. Kaberski, and MS. SEYKora,
were obviously SHOCKED, BY A.W. MS.-
YAMAMOTO'S DEFIENCE.

       TO LOCK ME UP in Solitary CON-
FINEMENT SHU, AFTER All These 23.
Yr.S, WITH NOTHING TO DO, but REFLECT
ON MY DESTROYED LIFE, IS SUICIDE.
I DO NOT FEEL AFRAID TO DO IT. I HAVE
NO MEMORIES OF FREEDOM. IF I WAS
released Today I'd DIE, TO SIT here in
Solitary The rest, OF MY LIFE IS, UNEX-
CEPTIBLE. PHU HAS MOVEMENT, A PROGram,
Freedom I don't have in SHU. I CANNOT
Survive in SHU, NO more. I need to Do Things,
Keep BUSY, in order not to, Dwell on my
ruined LIFE. I FEAR NOT Death, IN FACT IN
ONE RESPECT IT IS PEACE. I HAVE NO

                    # 7

decision in the matter. This depression, is "New", different, and uncontrollable. ITS impossible to describe. IT IS ALIVE, An d GHASTLY. When itS FULLY ENGULFED, ME, I WILL PULL THE PLUG. TO PUT ME in Suicide cell IS only A Short remedy. The bottom line IS NO one Can STOP IT, including me. I dont LIKE having NO Controll.

IVE GIVEN YOU THE REMEDY. CAN YOU ASSIST me? TO GO TO DmH, EOP, IS NOT The answer. I will be Sent back here to SHU, and It starts Anew.

Please talk TO Dr. KAbersKi, MY CASE MANAGER. "PlEASE I implore you." A lOT OF STAFF, & mental health StaFF AS well, are upset That CDC IS treating me This WAY, AFTER PUTTING MY LIFE ON The Line to help Them.

PLEASE GIVE MY REQUEST Serious Con-Sideration. I Thank YOU IN ADVANCE, I AM SINCERELY,

Kenny Morrow

P. S. PLEASE RETURN THESE EXHIBITS, DOCUMENTS, THEY ARE All I HAVE. Thank You.

# 8.

EXHIBIT A

GASSORD JAYGOSEN
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
JANE KAHN
MEGHAN LANG
THOMAS NOLAN
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

**ROSEN, BIEN & ASARO, LLP**
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

December 22, 2004

Kenny Morrow, C-53683
CSP-Corcoran/4B-1L-63
P.O. Box 3476
Corcoran, CA 93212

> Re:  Coleman v. Schwarzenegger
> Our File No. 489-3

Dear Mr. Morrow:

I am writing in response to the letter that you sent to our office to forward to the Special Master. The Special Master's name is Michael Keating. He is a lawyer. We are unable to forward his letter, but I can provide you with the address of the Court and you can send your letter to Judge Karlton, United States District Court, Eastern District of California, 501 "I" Street, Sacramento, CA, 95814. You should put the name of the case, Coleman v. Schwarzengger, No. CIV S-90-0520 LKK JFM P. Judge Karlton can decide whether to forward the letter to Mr. Keating.

It is our understanding after having spoken to Penny Godbold at the Prison Law Office, that they have requested that you be transferred to the PHU at Corcoran based upon your safety concerns. This issue is not a part of the Coleman case. With regard to your mental health care, we have contacted CDC Headquarters and been assured that you are meeting regularly with your case manager, and it appears from your own letters that you feel that he is your best advocate. In terms of the alternative plans that Corcoran is offering to you, I have visited the program at SVPP, and I suggest that you consider this program. It is an open program where you will be provided with extensive mental health programming in a less restrictive environment. It is really a gem within CDC. Also, as you know, mental health programming is limited in the PHU so the more extensive your suicidal ideation, the less likely you are to be transferred to that program where less clinical resources are available.

Kenny Morrow,
December 22, 2004
Page 2

I am returning your letter with mine so that you can forward it to the Court if you wish. I will enclose an envelope for you to use.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Jane E. Kahn

JEK:ts
enclosure



PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Anne Mania
Millard Murphy
Sara Norman
Keith Wattley

December 8, 2004

Mr. Morrow, C-53683
CSP-Corcoran, 4B-1L-63
P.O. Box 3481
Corcoran, CA 93212

Dear Mr. Morrow:

I am responding to your November 7, 2004 letter. Because your letter raises issues concerning your mental health, it has been forwarded to the law firm Rosen, Bien & Asaro. Inmate correspondence from your institution related to mental health issues are handled by Rosen, Bien & Asaro, our co-counsel in the Coleman lawsuit. You can also write to them directly at:

**Rosen, Bien and Asaro**
**155 Montgomery St., 8th Floor**
**San Francisco, CA 94104**

I am very sorry to hear about the difficult time you are having. I know that your current housing situation, and the continued confinement, are greatly impacting your mental health. I know that living under a constant state of fear is taking a toll on you and that, according to your letter, you are exhausted. At this stage we must wait for a response from the administration regarding your situation. After we receive a response, we will be able to determine what, if any, next steps can be taken. I encourage you to talk to mental health staff about how you are feeling and to especially let them know if you feel like hurting yourself. I will contact you as soon as I receive a response from the Warden.

Also, I spoke with Sally from California Prison Focus. She stated that she will be returning the documents you sent to her. You should be receiving those any day now.

Very truly,

Penny Godbold

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

EXHIBIT-B''

CDC 128-B (Rev. 4/74)

NAME and NUMBER:    INMATE MORROW, C-53683

In March of 2001, the Investigative Services Unit (ISU) at the California Substance Abuse Treatment Facility concluded an investigation regarding a potentially flammable/combustible material. Inmate MORROW, C-53683, provided the ISU with information that the Sugar Free Drink Mix (Kool-Aid) packets issued to the inmate population could be utilized as possible bomb making material. With MORROW'S assistance the ISU conducted a test of the drink mix, utilizing a wick as an igniter. When lit the ingredients in the Kool-Aid mixture created a burst of flames similar to a military dust bomb. As a result of the investigation and the potential threat to both staff and inmates, the ISU produced a Security Alert Training Video, which resulted in the Kool-Aid packets being removed from inventory. Additionally, a Security Alert Memorandum dated June 30, 2002 was distributed to all Wardens advising them of the security issue.

Reviewed by:
Joseph Sola/CSR    12/5/03
signature    Date

K. HOLLAND
Correctional Lieutenant
Investigative Services Unit
CSATF/SP – Corcoran



Original:    Central File
cc:        CCI
          Writer
          Inmate

DATE:    September 6, 2002

GENERAL CHRONO

CONFIDENTIAL



'S' has provided valuable information to Special Services Unit (SSU), which is what prompted attempts to transfer him to CAL in February of 2000. A Warden to Warden agreement was generated to exchange inmate Morrow for the one enemy that was housed at CAL at that time. Before the exchange was made other enemies of Morrow's were transferred to CAL and his case was not presented to the CSR for endorsement.

Inmate Morrow has since given valuable information to Institutional Gang Investigator (IGI) and Institution Services Unit (ISU), here at SATF. Morrow was not promised anything for providing this information, however, IGI and ISU feel that the information is of such value that they want to reward inmate Morrow. ISU wants to assist inmate Morrow in his attempts to transfer as close to his family in San Diego as possible (see the 128B dated 4/16/01 authored by C/O Fisher of ISU, SATF). Inmate Morrow is also requesting that this transfer be considered a hardship, as his Mother is not in good health, however the supporting documentation for this request (located in the miscellaneous section of the C-file) is over a year old.

'S' is a 38 year old, White, multi termer, received into CDC on 8/26/87 from San Diego County for the controlling offense of murder 1st for which he received the term of 25 years to life. Restitution was not ordered. He was received at CSATF/SP on 10/22/98 from COR. CDC C-file reflects no history of arson, sex offenses, or computer crimes. Escapes are noted as a walk-away from juvenile facility on 8/13/79. 'S' CDC 127, CDC 812, CDC 812C and CDC 840 were reviewed and updated. Prior CDC numbers are noted as C48892. Registration is not required. Notification is required per PC 296 and PC 3058.6. GPL is GED. SVP is n/a, MDO is n/a. HOLDS are none. ENEMIES are noted on the CDC 812. GANG AFFILIATION is noted as a dropout of the prison gang "Aryan Brotherhood". Confidential file is noted. Disciplinary history includes CDC 115's for mutual combat, and assault with GBI. There is a history of substance abuse noted. 'S' is medically full duty per CDC 128C dated 2/10/97, food handling clear per 128B dated 12/25/98. TB code is 22 per 128C dated 5/4/00. Mental Health is clear per 128C dated 12/15/98. DPP is n/a. DDP is n/a. 'S' is ineligible for SAP, MSF, CAMP, CCF, MCCF, CCRC, and RESTITUTION CENTER due to life sentence.

Based on the foregoing committee elects to refer this case to the CSR recommending transfer to LAC IV SNY. 'S' is cleared for double cell status based on no history of in-cell assaultive, abusive, or predatory behavior towards a cellmate. 'S' transfer is considered non-adverse and he will retain WG/PG of A1/A, effective 7/7/00. S' was reviewed for custody and is appropriate at Close B. 'S' meets the criteria for 270-design placement.

S' was seen in absentia, therefore, he will be informed of this committee's actions and his right to appeal by receipt of this CDC 128G.

B. COLL
FACILITY CAPTAIN (A)
CHAIRPERSON

B. HORTON
CC II (A)
MEMBER

R. ANDERSON
CC I
RECORDER

DATE: 5/25/01    UCC/FACILITY D    CLASSIFICATION    INST: CSATF-SP

\INN T:\milcs\counselor\Desktop\SNY 128G's\MORROW\C5368315-25-01 TX SNY.doc



Exhibit "C"



DEPARTMENT OF CORRECTIONS
P.O. Box 942883
Sacramento, CA 94283-0001

March 27, 2002

Mr. Kenneth Morrow
C-53683
California State Prison, Corcoran
P.O. Box 3461
Corcoran, CA 93212

Dear Mr. Morrow:

This is in response to your recent letter, in which you are requesting a transfer to the
Calipatria State Prison (CAL) and a one-year meritorious sentence reduction. You indicate
that you made an agreement with the California Substance Abuse Treatment Facility and
State Prison at Corcoran (SATF), Investigative Services Unit (ISU), for a transfer to CAL-IV
as payment for your assistance in making a flammable video.

Mr. Morrow, please be advised that the California Code of Regulations (CCR) does not
authorize staff to provide inmates with payment for their assistance. Additionally, all
transfer of inmates must be in accordance with the CCR and Department Operations
Manual. The CCR, Section 3379, *Inmate Transfers*, states, "Any inmate transfer from a
facility other than a reception center shall require a classification committee action and
endorsement by a classification staff representative (CSR)...."

In a previous letter dated January 18, 2002, you were advised that the SATF ISU
requested that you be transferred to the California State Prison at Los Angeles
County (LAC) due to your enemy situations at CAL. Based on this recommendation,
the SATF Unit Classification Committee elected to refer your case to the CSR,
recommending transfer to LAC-IV Sensitive Needs Yard (SNY). On May 3, 2001, the CSR
reviewed your case and endorsed you for retention at SATF-IV for SNY placement.
You were also advised that the CSR noted numerous enemy concerns that needed
clarification by SATF staff prior to further CSR review. On March 13, 2002, the SATF
Institution Classification Committee referred your case to the CSR, recommending a
transfer to the LAC-SNY due to your enemy concerns. The referral is currently pending
endorsement review by the CSR.

Regarding your request for a one-year meritorious sentence reduction, the California Penal
Code, Section 2935, provides that the Director of the Department of Corrections may grant
a reduction of sentence to a prisoner who performs a heroic act in a life-threatening
situation or who has provided exceptional assistance in maintaining the safety and security
of a prison.

Mr. Kenneth Morrow
Page 2

Please be assured that we are sensitive to your concerns; however, due to the nature of your request, this issue must be addressed and resolved at the institution level. If you feel you qualify for this provision, I suggest you contact your assigned counselor who will review the merits of your case. If it is found that you meet the criteria for meritorious credit, a Classification Committee will carefully evaluate your case and will refer it to the Departmental Review Board, who maintains the authority to grant or deny your request for sentence reduction.

Sincerely,

J. MARTINEZ
Correctional Counselor II
Classification Services Unit

cc:   L. Cano, Assistant C&PR, COR
      D. Smith, C&PR, SATF



Exhibit D

CONFIDENTIAL                    CONFIDENTIAL

NAME AND NUMBER:  MORROW        C-53683        CDC 128B

On 12-06-03 at approximately 1200 hours, I conducted an interview with Morrow C-53683 12-213L pertaining to Morrow having safety concerns in Ad-Seg. Morrow states, he was moved from "A" Facility to Ad-Seg because inmates on "A" Facility wanted to assault him. Morrow claims the inmates want him (Morrow) assaulted because of a CDC Video Morrow made at Pelican Bay in 2001. Morrows states these problems followed him into Ad-Seg and now the Ad-Seg inmates have threatened him. Morrow states he wants to stay on single-cell status and walk-alone yard while in Ad-Seg.

NOTE- Morrow refused to identify any inmates in Ad-Seg or "A" Facility that threatened him. Morrow states he does not want to identify any inmates because he has enough problems.

Approved for Placement Into
Inmate Morrow Confidential
Section of His C. File

Blueboy F(A)

                                        SGT. R ESPINOZA
                                        FACILITY "A" 2/W

INFORMATIONAL

DATE: 12-08-03

CONFIDENTIAL
GENERAL CHRONO



CONFIDENTIAL

ON 12-16-03. INMATE MARROW WAS INTERVIEWED PER his REQUEST REGARDING his CLAIM OF HAVING SAFETY CONCERNS. MARROW CLAIMS hE hAS bEEN PROVIDING INFORMATION to thE I.S.U., while hE WAS housED ON FACILITY-A. IN Additß MARROW ALSO CLAIMS I S.U. GAVE him thEIR dIRECT phoß NUMbER to CALL WhEN hE hAD NEW INFORMATION. MARROW CLAIMS that hE bEGAN hAVING CONCERNS FOR his SAFETY WhEN his CELLMATE, INMATE Artist, E-64766 FouND thE PhONE NUMbER OF I S.U. MARROW claims Artist cALLED I.S.U AND INFORMED thEM that MARROW'S SAFETY WAS IN jEOPARdy. to hAVE MARROW REMOVED FROM the yARd. MARROW cLAIMS that hE MAdE A VidEO FOR I SU that ShowED how FLAMMABLE thE CocLAid that C.DC. WAS USING, Could bE. MARROW StAtEd that othER INMATES ON thE FACILITY bECAME AWARE OF this INFORMAtioN ANd AdVISEd ARtist to tELL MARROW to LEAVE thE yARd. MARROW StAtEd that othER INMATES who hE is closE to, INFORMEd him that Artist wAS tElling othER INMATES OF MARROW hAVING I S.U's phoNE NUMbER IN his CELL ANd ALso About thE VidEO hE MAdE FOR I SU. DuE to thE AbovE INFORMATION, MARROW CONSidERS Artist to bE AN ENEMY ANd hAS REquEStEd to hAVE Artist ListEd ON his C.DC. 812 MARROW ALso CONSidERS INMATE SilVA, P-21899 to bE AN ENEMY ANd REquEStEd to hAVE SilVA ListEd ON his 812. MARROW cLAIMS that SilVA INFORMEd him OF his (SILVAS) plAN to StAb OFFICER Pitts who is AssigNEd to RECEIVING ANd RELEASE. MARROW StAtEd that hE INFORMEd StAFF OF SilVA's plAN to AssAult OFFICER Pitts which REsultEd IN SilVA bEING plACEd IN AdMINistRAtivE SEgREgAtioN.

DATE 12-16-03          CONFIDENTIAL                    GENERAL CHRONO

CONFIDENTIAL #3 II

MARROW stated that when SILVA was released from
Ad-SEG on 11-26-03, he (SILVA) informed other inmates
on FACILITY-A that MARROW had ratted (informed) on
him. Because of these events, MARROW claims he
can not return to FACILITY-A.

CONFIDENTIAL

S. Costa cci

NO: 53683   NAME: MORROW   HOUSING: E3-216L
CUSTODY: MAXCS USECS 7/14/05 GR   POWLE RO: 10-24-01   ACTION: MERD REVIEW: RETAIN IN
MEPD: 12-23-09   WGPG: D1/D   ASU PENDING COMPLETION OF ISU
ASSIGN: ASU   ETHNIC/AGE: W   GPL: GED   INVESTIGATION; ISSUE NEW CDC-
114-D; REFER TO CSR RX 90 DAY
ASU EXTENSION; AFFIX S SUFFIX;
SINGLE CELL; WALK ALONE #2
YARD GROUP.

I/M MORROW made a personal appearance this date before the ICC for the purpose of a MERD Review. "S" is not a participant in the MHSDS. Mental health concerns were addressed by M. Wanderer. No Mental health concerns were noted by the clinician and the "S" agreed with that assessment. Committee notes that the "S" is serving a SHU term with a MERD of 9-30-01. Committee also notes that ISU Captain M. Johnson has told the ASU C/C-II that information has been received by the ISU that the "S" safety would be jeopardized should he be returned to the Facility D-SNY population. "S" told this Comm. that he had talked to Captain Johnson and other members of the ISU and understood the nature of the safety concerns that the ISU is investigating.

COMMITTEE ACTION: Committee elects to retain "S" in ASU after his MERD. Committee reviewed a CDC-114-D authored by Captain M. Johnson and elects to return it to him for correction of an administrative error, noting that it was not signed nor was the date of the notice served or time served entered on the CDC-114-D. Committee elects to affix the "S" suffix and "S" will be single celled in ASU pending completion of the ISU investigation. ASU yard group will remain walk alone #2. WG/PG status of D1/D remains in effect. "S" is referred to the CSR RX 90-day ASU extension. "S" was advised of all actions of this Comm. and was in complete agreement. He was advised of his appeal rights. His next scheduled re-classification will be on 10-24-01 for a 30-Day Review of his ASU placement.

D. ADAMS, WARDEN
CHAIRPERSON

K. GABALDON, CAPTAIN
MEMBER

E. SANCHEZ, CDW
MEMBER

D. SIMONS, ASST. C&PR
MEMBER

J. J. KING, CCII
RECORDER

M. WANDERER, PSYCH.
MEMBER

DATE: 9-26-01   ICC/AD-SEG

CLASSIFICATION

INST: CSATF-SP   oo di 148

# MEMORANDUM

**Date:** November 10, 2001

**To:** INMATE MORROW, C-53683
E2-131L

## Subject: RESPONSE TO CORRESPONDENCE DATED 9-28-01

Warden D. G. Adams has asked me to respond to your letter dated 9-28-01 and mailed to him as "confidential mail". You allege that your retention in Administrative Segregation (Ad-Seg) is denying you the opportunity to be reviewed for a hardship transfer. At my direction, Ad-Seg CCII J. J. King thoroughly reviewed your concerns you addressed in your letter to Warden Adams and provided to me.

As you know, you were placed in Ad-Seg for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As you also know, you were ordered retained in Ad-Seg upon the expiration of your MERD by Investigative Services Unit (ISU) Captain M. Johnson because you were involved in a highly confidential investigation being conducted by the ISU. All of your due process rights have been complied with concerning your retention in Ad-Seg. You were not retained in Ad-Seg as punishment as you allege. Your placement was ordered by Captain Johnson. Institutional Classification Committee (ICC) affirmed the placement on 9-27-01 and 10-24-01, to protect the integrity of an on-going investigation and to protect your personal safety because you now have documented enemies housed at the California Substance Abuse Treatment Facility and State Prison at Corcoran's Level IV Sensitive Needs Yard (SNY).

Please rest assured that as soon as Mr. King is advised by the ISU that their investigation is closed, ICC will review your case for transfer to another SNY facility. Your "hardship" issue will be reviewed at that time as well. You will continue to be reviewed by the ICC at least once every 30 days. Your next review is due 11-22-01.

J. L. COBBS
Associate Warden
Housing Complex III

CDC 128-B (Rev. 4/74)

NAME and NUMBER    INMATE MORROW, C53683, FEB1-117U

It is requested that Subject be placed on single cell status in Housing Unit #3. Subject is involved in a very sensitive investigation with Investigative Services Unit and he has been receiving threats from inmates located in Housing Unit #1.

M. JOHNSON
Correctional Captain
Investigative Services Unit

INFORMATION

GENERAL CHRONO

DATE    September 17, 2001



**California State Prison-Los Angeles County**
**44750 60th Street West**
**Lancaster, CA 93536-7620**



March 27, 2003

K. Morrow, C-53683
Facility C- Building 2, Cell 131U
California State Prison-Los Angeles County
Lancaster, CA. 93536

Mr. Morrow:

This is in response to your letter to this office dated March 2, 2003, wherein you
voiced some concerns relating to certain elements on Facility "C" that could, if mixed
together, make an explosive device.

On March 27, 2003, Correctional Lieutenant G. D. Sumpter interviewed you
regarding the letter. During that interview you stated that you have already spoken
with Captain Wofford of the Institutional Investigative Services Unit and that he is
aware and handling the situation.

Lieutenant Sumpter also spoke with Captain Wofford and he stated that he did speak
with you and is drafting a memorandum reminding staff about the close supervision
of inmates when they are around combustible materials.

If you have any further questions, please contact Captain Wofford via institutional
mail.

C.A. ROUSTON
Associate Warden C & D
CSP- Los Angeles



October 24, 2002

Mr. Kenneth Morrow, C-53683
Facility C, Housing Unit C2-131L
California State Prison Los Angeles County
44750 60th Street West
Lancaster, California 93536

Dear Mr. Morrow:

This is in response to your correspondence dated December 2, 2002, addressed
to The Department of Corrections, Susan Hubbard. Within your correspondence
you allege Correctional Captain C. Wofford at California State Prison-Los Angeles
County (LAC) has not contacted you regarding alleged crimes being condoned at
Lancaster.

You indicated in 1992, Suzan Hubbard suspended your Segregated Housing Unit
Term (SHU) at The Correctional Medical Facility (CMF), in which she instructed
you to report any crimes to staff instead of taking things into your own hands. You
state that you have a bag of ammonia nitrate in your cell that you acquired from
the cold packs in the medical clinic. You further allege bullets are accessible to
inmates, which can be made in their cells. On March 21, 2003, Correctional
Captain C. Wofford conducted an interview with you regarding your allegations.
The interview disclosed information that you are a 40-year-old inmate who has
been incarcerated approximately 21 years. You were a member of the Aryan
Brotherhood (AB) who trained in methods of how to make weapons and explosive
devices. You have been providing information to staff, which may or may not pose
a threat to staff and inmates. All the information you provide is evaluated and
decisions are made for corrective action if warranted. The Institution greatly
appreciates your shared knowledge and the concerns you may have. The
appropriate documentation will be submitted for placement into your Central File if
it warrants placement.

You are requesting a transfer to California Men Colony (CMC) and a meritorious
credit for the information you provided to staff. You indicated that you are
receiving assistance from the Unit Classification Committee (UCC) in preparing
appropriate documents for review and awaiting disposition from the Director's
Review Board. The Classification Committee would have to review your Central
File and consider appropriate housing needs in accordance with your custody
level. At that time a recommendation could be made to transfer you to CMC and
the ultimate approval rest with the Classification Service Representative (CSR).

## CALIFORNIA DEPARTMENT OF CORRECTIONS
## CALIFORNIA STATE PRISON - LOS ANGELES COUNTY

### SUPPLEMENTAL PAGE    03 10 16 1:12 24

**RE:    APPEAL LOG #LAC-C-03-01893**

**FIRST LEVEL REVIEWER'S RESPONSE**

**K. MORROW, C-53683**

*[handwritten: Ms. Know - This is A different seperate document then the ATTACHED Other.]*

**APPEAL DECISION:    DENIED**

**APPEAL ISSUE:    OTHER**

In your appeal you stated that on several occasions you assisted C. Wofford, Correctional Captain by providing information about dangerous material obtainable to the inmate population. You indicate you provided information about 'Cool Pack', which could be utilized to make bombs, gasoline that could be utilized to make napalm, Iodine-Hydrogen Peroxide and matches which could be used to make gunpowder and a method to construct bullets.

### ACTION REQUESTED:

You would like Captain Wofford to provide you with documentation in your Central File acknowledging your providing information regarding the above mentioned alleged security breeches and possible weapons construction for possible future meritorious credit. You also request that Captain Wofford honor his word and present packet to the Institutional Classification Committee (ICC) recommending transfer to California Men County.

### APPEAL RESPONSE:

On August 01, 2003, Correctional Sergeant J. Hamlin of the Investigative Services Unit conducted a interview of you, to provide you the opportunity to fully explain your appeal and/or provide any supporting information or documents. You did not provide any additional information.

An investigation of your appeal was conducted that included your interview, a review of your appeal with attachments, interview with Correctional Captain C Wofford, a review of the California Code of Regulations (CCR) Title 15 and the California Penal Code.

Captain Wofford did state that you provided information regarding the 'Cold Packs' the institution was providing to inmates and the designs to theoretically utilize to compose an explosive material. Captain Wofford also indicated you relayed that the gasoline may be used to produce an explosive mixture and/or napalm, matches could be utilized

to make a chemical bomb and that there was a way for inmates to construct bullets to be used against staff.

Captain Wofford stated upon questioning, you indicated that to your knowledge, inmates were currently in the process of fabricating or attempting to use any of the discussed chemical or weapons. As a precautionary measure, the medical department has removed all 'cold packs' from the institutional setting. The security issue regarding the matches had been previously resolved, due to inmates not being allowed to possess matches. There have always been procedures in place for the control of gasoline and any other flammable/explosive materials at practically all California institutions. Captain Wofford indicated that although the information you provided could theoretically be utilized to assault staff or breech institutional security. However, he indicated you stated during your interview that to your knowledge, inmates were currently or planning to utilize any of the items you had discussed.

Captain Wofford stated he did not indicate he would recommend you for a transfer to CMC as compensation for your providing information. UNTRUE!

Based on the findings in this investigation your appeal is hereby DENIED at this level. The institution, including the Investigative Services Unit, conducted an audit of all areas of the institution. There was no indication of a breech of institutional security or threat to staff as a result of any of the potential weapons discussed. The information you provided could have been a viable security threat. However, you indicated that to your knowledge inmates were currently in the process of utilizing any of the proposed weapons against the department.

This investigation further revealed that Captain Wofford and Warden M. Yarborough, California State Prison-Los Angeles County have previously addressed the issues you addressed in this CDC-602.

In light of the above, a recommendation for meritorious credit is not warranted.

J. HAMLIN
Correctional Sergeant
CSP-Los Angeles County

8/6/03
Date



| NO.: C-53683 | NAME: MORROW | CDC-128-G (Rev. 2/96) |
|---|---|---|

Custody: ~~MED~~ Assignment: ~~1635~~ ~~RECEIVED~~

Comments: DEPARTMENTAL REVIEW BOARD WARDEN'S OFFICE

| Location: LAC IV-SNY | CS: 404 | EOP ~~MH 8-15~~ WAIT 8-15 | MEPD: 6-24-09 |
|---|---|---|---|
| Gang: AB DROPOUT | | Prior DRB: NO | Restitution: N/A |
| Holds/Wants/Detainers: NOT APPLICABLE | | | |

**REASON FOR REFERRAL:** This case has been referred to the DRB for a Meritorious Sentence Reduction Review based on the following case factors:

1. During 2001, Inmate Morrow provided confidential information to the Investigative Services Unit staff at SATF relative to "the utilization of Sugar Free Drink Mix (Kool-Aid) packets, which could be used for bomb-making material." The reader is referred to page one, paragraph two, of the DRB referral for detailed information.
2. As the result of the inmate's assistance and subsequent investigation, a Security Alert Training Video was produced and a Security Alert Memorandum was distributed to all Wardens advising them of this security issue.
3. The reader is referred to an attached Confidential CDC 128B dated September 6, 2002, relative to Inmate Morrow's actions and assistance in this matter.
4. The LAC Institutional Classification Committee determined, pursuant to the Department Operations Manual, Section 62010.10.4 and Penal Code Section 2935, that Inmate Morrow was eligible for a sentence reduction review based on his actions.
5. Inmate Morrow is presently assigned to the LAC IV Sensitive Needs Yard (SNY).

**CIRCUMSTANCES:** Inmate Morrow was received into CDC in 1987 for First-Degree Murder. He was sentenced to a term of 26 years to Life. As noted in his DRB report, he has an extensive CDC disciplinary record (at least 40 Rules Violation Reports) and although his behavior has improved over the last several years, he has been less than a model inmate, and has continually ignored departmental rules and regulations.

**INSTITUTION STAFF RECOMMENDATION:** The LAC ICC recommended that Inmate Morrow be granted a 12-month Meritorious Sentence Reduction.

**CLASSIFICATION SERVICES RECOMMENDATION:** CSU notes that based on the inmate's Life commitment status, he is not eligible for a sentence reduction and therefore recommends that the DRB deny this Meritorious Sentence Reduction request. However, based on the inmate's actions as referenced in the DRB referral, the CSU recommends that the LAC Classification and Parole Representative document the inmate's actions in his Central File for Board of Prison Terms consideration during future Lifer Hearings.

| Date: 4-14-03 | Classification: DRB ACTION | Institution: LAC |
|---|---|---|

**DRB ACTION OF 4-14-03:** The DRB has reviewed all case factors and concurs with the CSU recommendation noting that Inmate Morrow is not eligible for a sentence reduction based on his Life term status. Therefore, the DRB denies this Meritorious Sentence Reduction request. However, based on the inmate's actions as referenced in the DRB referral, the DRB instructs the LAC Classification and Parole Representative to document the inmate's actions in his Central File for future Board of Prison Terms consideration during Lifer / Parole consideration hearings.

RETAIN DRB TRANSFER CONTROL:     YES ☐  NO ☒

**MEMBERS:**        W. A. DUNCAN, Deputy Director
                    Institutions Division

                    B. DEGROOT, Deputy Director (A)
                    Parole and Community Services Division

                    L. RIANDA, Chief
                    Classification Services Unit

**RECORDER:**       D. LANKFORD, Classification Staff Representative
                    Classification Services Unit

L. RIANDA, Chief                        W. A. DUNCAN, Deputy Director
Classification Services Unit            Institutions Division

| Date: 4-14-03 | Classification: DRB ACTION | Institution: LAC |

Exhibit

G

| NO.: C-53683 | NAME: MORROW | CDC-128-G (Rev. 2/96) |
|---|---|---|
| Custody: MAX | Assignment: ASU | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

| Location: MCSP | PS: 395 | Enemy: YES | MEPD: 9-5-08 |
|---|---|---|---|
| Gang: AB DROPOUT | | Prior DRB: YES | Restitution: N/A |
| Holds/Wants/Detainers: NOT APPLICABLE | | | |

**REASON FOR REFERRAL:** This case has been referred to DRB for approval of an Indeterminate Security Housing Unit (SHU) status placement pending approval of his out-of-state transfer request based on overriding safety concerns.

**CIRCUMSTANCES:** Inmate Morrow is a 42-year-old third-termer received into the California Department of Corrections (CDC) on 8-26-87 from San Diego County for First-Degree Murder. He was sentenced to a term of 26 years to Life. As noted in his DRB report, he has an extensive CDC disciplinary record (at least 40 Rules Violation Reports [RVRs]), although his behavior has improved over the last several years. The last RVR issued to Inmate Morrow was dated 6-7-01, issued for Threatening Staff. Inmate Morrow was assessed a five-month SHU term.

- Inmate Morrow was validated as a drop-out of the Aryan Brotherhood prison gang upon completing the Integrated Yard Program at California State Prison, Corcoran (COR), on 9-19-98.
- During 2001, Inmate Morrow provided confidential information to the Investigative Services Unit staff at California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF), relative to "the utilization of Sugar Free Drink Mix (Kool-Aid) packets, which could be used for bomb-making material." The California State Prison, Los Angeles County (LAC), submitted Inmate Morrow's request for a Meritorious Sentence Credit Reduction to DRB based on this cooperation with CDC staff. On 4-14-03, the DRB denied the request because his life sentence made him ineligible for a sentence reduction.
- The LAC staff became aware of threats against Inmate Morrow, including information indicating he was going to be the victim of a stabbing by other Sensitive Needs Yard (SNY) inmates. As a result of these safety concerns, Inmate Morrow was transferred from LAC Level IV SNY to Mule Creek State Prison (MCSP) Level IV SNY on 8-19-03.
- Inmate Morrow programmed successfully on the MCSP SNY until 11-7-03 when he was placed into the Administrative Segregation Unit (ASU) due to his claim of safety concerns. Morrow claims that he cannot safely program on any SNY because other inmates have become aware of his cooperation with CDC investigators.
- Inmate Morrow has documented enemies at all SNY facilities with the exception of Pleasant Valley State Prison (PVSP) Level III. Inmate Morrow has stated that he will refuse to program at PVSP if transferred there.
- Inmate Morrow has requested transfer to the state of Montana or any Western state.
- On 12-17-03, the MCSP Institution Classification Committee (ICC) submitted a request to the Classification Staff Representative (CSR) for approval of Indeterminate SHU status for Inmate Morrow. The CSR reviewed the case and instructed staff to refer the case for DRB review.
- Inmate Morrow currently has no mental health or medical concerns that would impact his placement. He was removed as a participant from the Mental Health Services Delivery System on 8-7-03.

| Date: 5-25-04 | Classification: DRB ACTION | Institution: MCSP |
|---|---|---|

**INSTITUTION STAFF RECOMMENDATION:** The MCSP ICC recommended that Inmate Morrow be transferred to Pelican Bay State Prison (PBSP) or COR for placement in SHU on Indeterminate status pending out-of-state transfer.

**CLASSIFICATION SERVICES RECOMMENDATION:** The Classification Services Unit (CSU) recommends out-of-state placement to Montana, Wyoming, or Nevada for Inmate Morrow for safety concerns via the Western Interstate Corrections Compact. The CSU recommends that DRB approve placement of Inmate Morrow at COR on Indeterminate SHU status pending out-of-state transfer. The SHU placement recommendation is based on the unresolvable safety issues and his stated refusal to program on any General Population yard. The Law Enforcement Investigations Unit concurs with the CSU recommendation. *I'M Protective Custody. CANT GO TO General Population.*

**DRB ACTION OF 5-25-04:** The DRB concurs with the MCSP ICC and acts to approve transfer to COR-SHU on Indeterminate status due to safety concerns, pending the Interstate transfer of Inmate Morrow to the state of Montana, Wyoming, or Nevada. The DRB notes that the states being approved have the authority to accept or deny Inmate Morrow's placement. The DRB also takes the following actions:

MCSP

1. The MCSP Classification and Parole Representative (C&PR) is instructed to submit required documents, not already provided, pursuant to the Department Operations Manual, Sections 62040.4 and 62040.5, to the Interstate Compact Unit within 30 days after receiving this action. *done 6/21/04*
2. Inmate Morrow to be advised that if, in fact, his transfer request is accepted by another state, actual transfer/placement may not be timely based on bed availability within that state. *Done 6/18/04 see 128*
3. The MCSP C&PR is instructed to facilitate this placement/transfer in conjunction with the CDC Transportation Unit.
4. Inmate Morrow to be advised that any future BPT Hearings will be held telephonically if he is housed out of state. *done 6/18/04 see 128*
5. The DRB elects to establish DRB transfer control of this case effective this date.

COR

1. COR ICC is instructed to return this case to DRB in 12 months if Inmate Morrow has not transferred out of state.

RETAIN DRB TRANSFER CONTROL: YES ☒ NO ☐

---

| Date: 5-25-04 | Classification: DRB ACTION | Institution: MCSP |

| Custody: MAX | Assignment: ASU |
|---|---|
| Comments: DEPARTMENTAL REVIEW BOARD | |

MEMBERS:    S. HUBBARD, Deputy Director (A)
Institutions Division

B. DEGROOT, Assistant Deputy Director (A)
Parole and Community Services Division

L. RIANDA, Chief
Classification Services Unit

RECORDER:    D. ROTHCHILD, Correctional Counselor III
Classification Services Unit

L. RIANDA, Chief
Classification Services Unit

S. HUBBARD, Deputy Director (A)
Institutions Division

| Date: 5-25-04 | Classification: DRB ACTION | Institution: MCSP |
|---|---|---|

Memorandum

**DATE:**   January 28, 2004

**TO:**     Chief, Classification Services
            Department of Corrections
            P.O. Box 942883



**FROM:**   Mule Creek State Prison, P.O. Box 409099, Ione, CA  95640

**RE:**     INMATE MORROW, KENNETH, C-53683

DEPARTMENTAL REVIEW BOARD CASE

I.   REASONS FOR REFERRAL TO DRB: Inmate Morrow is currently housed in the
     Administrative Segregation Unit (ASU) at Mule Creek State Prison (MCSP). Morrow
     arrived at MCSP from LAC-IV, Sensitive Needs Yard (SNY) on 8-19-2003 and has
     since been programming on our SNY. On 11-7-2003, Morrow was placed in the ASU
     due to his claim of safety concerns. Morrow claims he cannot safely program within
     the California Department of Corrections and is refusing to program on all sensitive
     Needs Yards. He states he cannot safely program due to other inmates having
     knowledge of the security alert training video that was produced based on the
     information he provided. In this video, Morrow provided information to Investigative
     Services Unit (ISU) at the Substance Abuse Treatment Facility (SATF) relative to "the
     utilization of sugar-free drink mix (Kool-Aid) packets, which could be used for bomb-
     making material." This information is well documented in his central file and was
     referred to the Departmental Review Board (DRB) on 1-17 2003 for meritorious
     sentence reduction for his assistance. The request for meritorious sentence reduction
     was denied on 4-14-03 due to Morrow's life sentence status. While housed at LAC-IV
     SNY, staff received information that Morrow was going to be the victim of a stabbing
     assault. The reason for the assault was that certain inmates became aware that
     Morrow was working for the Investigative Services Unit. Morrow claims that ISU
     instructed him not to reveal any information regarding his cooperation with them.  As
     a result of that incident, Morrow was transferred to MCSP. Morrow stated that until
     now, he has never revealed this information. He stated that he would claim that his
     safety concerns were from drug debts. Morrow stated that now that the information is
     out, he believes it will follow him wherever he goes within CDC. Morrow has
     documented enemies on all Sensitive Needs Yards except for PVSP-III. He claims
     his enemy situation with the inmates on these yards cannot be resolved and he will
     refuse to be housed at PVSP-III as well.

`On December 17, 2003, ICC referred the case to CSR recommending indeterminate SHU placement. On January 23, 2004, CSR reviewed the case and instructed staff to review departmental criteria for referral to DRB for indeterminate SHU.
As a result of reviewing the criteria, this case is being referred to DRB per memorandum dated June 24, 2003 directing staff to submit all indeterminate SHU and out of state requests for SNY inmates to DRB.

II.   SIGNIFICANT CRIMINAL HISTORY: Morrow's prior arrest history dates back to 1975 as a juvenile and consists of runaway, battery on his foster mother, resisting arrest, and escape. His adult arrest history consists of resisting arrest, burglary, robbery, kidnapping, battery on a person, petty theft, auto theft, battery of a peace officer, assault, and grand theft person. He was first committed to CDC on 9-22-82 for robbery, for which he received a three-year sentence. On 3-13-85, he received a two-year sentence for burglary.

III.  DEPARTMENTAL HISTORY: Morrow is a 42-year-old third termer, committed to CDC on August 26, 1987 from San Diego County. He received a 26-year to life sentence for first-degree murder in the stabbing death of his girlfriend. Morrow was initially housed at California Institution for Men, RCC, to complete his reception center processing. On September 23, 1987, Morrow was endorsed to San Quentin State Prison as a Level IV inmate, with a classification score of 176. He arrived there on October 2, 1987 and was assigned to the automotive paint shop. On November 6, 1987, his supervisor in the paint shop charged him with Destruction of State Property and Stealing State Property. Morrow was found guilty of those rule violations and was unassigned from the paint shop. On January 23,1988 Morrow was assigned to food services. On February 14, 1988, Morrow was placed in Administrative Segregation (Ad Seg) for being involved in a stabbing assault. Morrow was deemed to be the victim of that assault and was released from Ad Seg on March 17, 1988. While assigned to food services, Morrow received and was found guilty of a rules violation report on February 6, April 18, and May 15 of 1988 for failure to report. On June 28,1988, Morrow was placed in Ad Seg pending an investigation into allegations of being part of a white supremacy pressure group and assaulting an inmate. The allegations could not be proved and Morrow was released to the general population. Morrow was placed in Ad Seg on January 11,1989 and charged with a stabbing assault of another inmate. He was found guilty of the charges and assessed a 24-month SHU term. Morrow was transferred to Corcoran State Prison on February 24 1989 to complete his SHU term. While serving his SHU term, Morrow received and was found guilty of a Rules Violation Report on March 13,1989 for assault on an inmate with a weapon and on March 26, 1989 for assault of a peace officer. These violations extended the MERD of his SHU term to October 10,1992. In addition, Morrow also received and was found guilty of the following rules violations which increased his classification score to 279:

- March 26,1989,Possession of Controlled Substance
- April 23, 1989, Dangerous Contraband
- May 25, 1989, Destruction of State Property
- June 7, 1989, Assault on Staff with an Unknown Liquid
- October 12, 1989, Fighting

• On April 8, 1990, while housed at COR-SHU, Morrow was found unconscious in his cell. He was taken to the emergency room where it was determined that he ingested an overdose of controlled substance. He was returned to SHU housing and issued a rules violation for Stimulants and Sedatives for which he was found guilty. On May 7, 1990, Morrow attempted suicide by cutting his wrists. He was taken to the emergency room where he received treatment and was returned to SHU housing.

On May 9, 1990, Morrow was referred to California Medical Facility (CMF) CAT-I. He was endorsed on May 10, 1990, and arrived at CMF on May 11, 1990. Morrow received treatment from the Department of Mental Health (DMH), but on July 2, 1990 he was discharged from DMH and housed in Willis unit at CMF. On July 2, 1991, Psych. Staff at CMF declassified Morrow to CAT U, and recommended transfer to a Level-IV institution. On November 12, 1991, ICC referred his case to the CSR, recommending transfer to CCI-IV, with an alternate of Folsom State Prison IV. Classification score was adjusted to 307. While housed at CMF, Morrow received and was found guilty of the following violations:

- Threatening Staff on June 20, 1991
- Contraband on July 30, 1991
- Fighting on September 16, 1991
- Conduct on October 11, 1991

On December 6, 1991, Morrow was endorsed to New Folsom State Prison / CSP Sacramento and arrived there on December 18, 1991. Morrow was released to the general population and assigned to academic classes. On February 24, 1992, Morrow was issued a rules violation for failure to report to his assignment and was removed per his request. On April 15, 1992, Morrow was placed in Ad Seg for an alleged charge of Conspiracy to Stab Other Inmates. On May 3, 1992, while housed in Ad Seg, Morrow attempted to commit suicide by overdosing on prescription pills. He received medical attention and was returned to Ad Seg. Morrow was found not guilty of conspiracy to stab other inmates and released to the general population, but he was issued and found guilty of Attempted Suicide. Morrow was again placed in Ad Seg on March 17, 1993 for Possession of a Weapon. On May 5, 1993, the charges were dismissed and he was released back to general population. Morrow was placed back in Ad Seg on May 8, 1993 due to an enemy being identified on the yard, but he was released to an alternate yard on May 14, 1993. On September 15, 1993, UCC referred his case to CSR to recommend transfer to Calipatria State Prison IV with an alternate of Tehachapi State Prison IV. While housed at New Folsom, Morrow received and was found guilty of the following additional rules violations. His classification was adjusted to 335.

- Self Mutilation on March 28, 1993
- Possession of Alcohol on October 6, 1993

On October 8, 1993 Morrow was endorsed to Lancaster State Prison and arrived there on December 27, 1993. He was placed on the support services waiting list and released to general population. On February 1, 1994, Morrow attempted suicide again by cutting his neck. He was taken to the emergency room and received medical treatment. Morrow was issued and found guilty of a rules violation for Self Mutilation. On February 24, 1994, he was transferred to CMF for psychological evaluation.

•. On March 9, 1994, while housed at CMF, Morrow was charged with assault on staff. Morrow cut his wrist and when staff arrived to assist him, he threw blood on them. He received medical treatment and was placed in Ad Seg. He was found guilty of that offense and assessed a 12-month SHU term. On May 5, 1994, Morrow was issued a rules violation for manipulating a suicide attempt. Morrow was observed making a scratching motion on his neck with a small amount of blood noted. On September 26, 1994, Morrow was endorsed to CSP-Corcoran to complete his 12-month SHU term. On November 3, 1994, ICC requested CSR to rescind the SHU endorsement to Corcoran and recommended that he be transferred to Centinela State Prison IV (CEN) with an alternate of Tehachapi State Prison IV (CCI). On November 21, 1994, Morrow was endorsed to Tehachapi State Prison. His classification score was adjusted to 371.

Morrow arrived at CCI on December 22, 1994, involuntary unassigned and released to general population. Morrow was placed in Ad Seg on September 27, 1996 as a result of informing staff that he feared for his life. He was also issued a rules violation dated September 27, 1997 for Trafficking Narcotics. He was found guilty of that offense and assessed a 12-month SHU term. On December 18, 1996, ICC suspended the remainder of the SHU term and referred him for transfer to SVSP-IV with an alternate of HDSP-IV. On January 22, 1997, CSR endorsed him to CSP-SAC-IV. While housed at CCI, Morrow received and was found guilty of the following rules violations:

- Possession of inmate manufactured alcohol on June 19, 1995
- Use of Amphetamines on July 21, 1995
- Refusing a mandatory drug test on August 28, 1995
- Possession of Opiates on December 14, 1995
- Use of Narcotics on January 8, 1996
- Possession/Use of Narcotics on June 26, 1996

On February 7, 1997, Morrow arrived at CSP-SAC and was released to the general population. On May 16, 1997, Morrow was placed in Ad Seg pending an investigation into his involvement in a slashing assault of another inmate. On May 27, 1997, Morrow again attempted to commit suicide and was transferred to CMF for evaluation. Morrow was found guilty of that slashing assault and assessed a 15-month SHU term, which ICC suspended on September 9, 1997. On September 18,1997, the Institutional Gang Investigations (IGI) unit at CMF concluded that sufficient information existed to validate Morrow as a dropout of the Aryan Brotherhood prison gang. On January 20, 1998, CSR endorsed Morrow to an indeterminate SHU term to complete the Integrated Yard Program (IYP) at COR SHU. Morrow began the IYP on March 19, 1998 and completed the program on September 19, 1998.

On December 14, 1998, Morrow was endorsed to the Substance Abuse Treatment Facility (SATF), for sensitive needs placement and arrived there on December 22, 1998. Morrow was released to the general population and assigned to vocational silkscreen. On June 7, 2001, Morrow was placed in Ad Seg for threatening staff. He was found guilty of that offense and assessed a 5-month SHU term. A subsequent CDC 114-D was issued by the ISU Captain on September 26, 2001 retaining Morrow in Ad Seg beyond his MERD because of information received by ISU that Morrow's

• safety could be in jeopardy if he returned to the yard. ISU also acknowledged that Morrow was assisting them with an investigation. On June 12, 2002, Morrow was endorsed to CSP- Lancaster-IV, SNY.

Morrow arrived at LAC-IV on June 17, 2002. He was released to the general population and later assigned as a porter. On January 17, 2003, ICC referred to DRB for a meritorious sentence reduction for his assistance and information in the making of the "Security Alert " video. On June 18, 2003, Morrow was placed in Ad Seg pending as investigation into possible enemy concerns. Due to concerns for Morrow's safety, he was endorsed to Mule Creek State Prison (MCSP), (SNY) on August 7, 2003 with a classification score of 401.

Morrow arrived at MCSP on August 19, 2003 and was released to the general population. On November 7, 2003, he was placed in Ad Seg pending an investigation into possible safety concerns. Due to having irresolvable enemies and his refusal to program on any sensitive needs yard, ICC referred his case to CSR on December 17, 2003, recommending transfer to COR-IV with an alternate of PBSP-IV for indeterminate SHU.

Morrow has a current MEPD of September 5, 2008, and is scheduled for his number six Documentation hearing in February of 2006.

IV.    DISCUSSION: Morrow is a notorious inmate within CDC. During his association with the Aryan Brotherhood, he has stabbed and victimized many inmates creating enemies along the way. Since his days of violence, Morrow has disassociated himself with the Aryan Brotherhood and completed the debriefing process. Morrow has also worked with staff and provided important information, which led to the making of the "Security Alert" video. Morrow believes that this information will follow him throughout CDC, and is requesting an out of state transfer. He has failed to program on all sensitive need yards except for PVSP-III, which he has already stated that he will refuse to transfer to. At this point, an indeterminate amount of time in a security housing unit or protective housing unit appears to be the only safe place for Morrow to be housed, pending an out of state transfer.

V.

RECOMMENDATION: Due to the restricted amount of bed space available for protective housing and the length of time waiting for an out of state transfer, it is recommended that DRB give consideration to housing Morrow at PBSP IV SHU with an alternate of COR-IV SHU for an indeterminate SHU, pending an out of state transfer. Morrow has requested to be transferred to Montana as a Western Interstate Corrections Compact (WICC), but states that he will accept any Western state.

The following is a current listing and location of Morrow's enemies

|   | CDC# | Name | Location |
|---|------|------|----------|
| 1 ▪ | C-54349 | Ethridge | Discharged |
| 2 ▪ | C-56257 | Dilts | Discharged |
| 3 ▪ | D-09186 | Maness | Discharged |
| 4 ▪ | C-41618 | Zimmerman | MCSP-III SNY |
| 5 ▪ | E-04448 | Hymes | SQ-ASU |
| 6 ▪ | C-09884 | Patton | Discharged |
| 7 ▪ | E-70318 | Johnson | Discharged |
| 8 ▪ | E-87737 | Gordon | Discharged |
| 9 ▪ | B-73151 | Mart | Discharged |
| 10 ▪ | H-77005 | Aselio | Discharged |
| 11 ▪ | C-84849 | Scott | COR-IV |
| 12 ▪ | T-92254 | Hughes | CIM-RCC |
| 13 ▪ | C-53655 | Miles | PBSP-IV |

The following is a listing of the location of Morrow's Confidential enemies

14 ▪ LAC-IV SNY
15 ▪ CEN-IV
16 ▪ LAC-IV SNY
17 ▪ SAC-IV C-yard
18 ▪ SVSP-IV SNY
19 ▪ CAL-IV SNY
20 ▪ CAL-IV ASU
21 ▪ PBSP-IV
22 ▪ SACCO-WICC
23 ▪ PBSP-ASU
24 ▪ CMF
25 ▪ CIM
26 ▪ SAC C-yard
27 ▪ SATF-IV SNY
28 ▪ MCSP-III SNY
29 ▪ SOL
30 ▪ CEN-IV
31 ▪ SACCO-WICC
32 ▪ SVSP SNY
33 ▪ LAC-IV SNY
34 ▪ LAC
35 ▪ MCSP-III SNT
36 ▪ MCSP-IV SNY
37 ▪ MCSP-IV SNY

All pertinent documents will accompany this report:

- 128-G dated 12-17-03
- Conf. 128-B dated 12-8-03
- Conf. 128-B dated 8-5-03
- 128-G dated7-10-03
- Conf. Memo dated 6-24-03
- 128-G dated 4-14-03
- 128-B dated 9-6-02
- 128-G dated 9-26-01

SCOTT KERNAN
Warden (A)
· Mule Creek State Prison

cc: C-file
    Inmate

EXhcbct                              H



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Anne Mania
Millard Murphy
Sara Norman
Keith Wattley

November 5, 2004

A.K. Scribner, Warden
CSP - Corcoran
P.O. Box 8800
Corcoran, CA 93212

Dear Warden Scribner:

I am writing on behalf of Mr. Kenny Morrow, C-53683, a prisoner at CSP - Corcoran. Mr. Morrow contacted our office because he believes that he is in grave danger in his current housing situation. Mr. Morrow was validated as an Aryan Brotherhood drop-out in 1998. (See DRB chrono, p. 2., attached hereto as Exhibit A.) In 2001 Mr. Morrow provided confidential information to the Investigative Services Unit regarding the production of bombs made from supplies available in prison canteens. (See CDC form 128-B, attached hereto as Exhibit B.) He has documented enemies on all Level IV SNY yards and believes he can not safely program in California. (See DRB chrono, p. 1.) The CDC has validated his safety concerns by recommending him for out-of-state transfer; he is currently on the waiting list to be transferred. On 5/25/04 the DRB approved Mr. Morrow's transfer to CSP-Corcoran, where he was placed on indeterminate SHU status pending out-of-state transfer. (See DRB chrono, p. 2.) Mr. Morrow reports that the prisoners in his current housing unit are aware of the confidential information he provided to ISU and, therefore, his life is in danger. Our office considers Mr. Morrow's fears about his safety to be serious.

We are requesting that Mr. Morrow be placed in the PHU. According to Title 15, section 3341.5, PHU placement is appropriate when: (1) the inmate does not require specialized housing for reasons other than protection, (2) the inmate does not have a serious psychiatric or medical condition requiring prompt access to the hospital, (3) the inmate is not documented as a member or an affiliate of a prison gang, (4) the inmate does not pose a threat to the safety or security of other inmates in the PHU, (5) the inmate has specific, verified enemies identified on CDC form 812 likely to and capable of causing the inmate great bodily harm if placed in general population, (6) the inmate has notoriety likely to result in great bodily harm to the inmate if placed in general population, (7) there is no alternative placement which can ensure the inmate's safety and provide the degree of control required for the inmate, (8) it has been verified that the inmate is in present danger of great bodily harm. (Cal. Code Regs., tit. 15, § 3341.5.)

Mr. Morrow meets the criteria for PHU placement. He is a validated gang drop-out. Thus, prison gang affiliation is not an issue. (See DRB chrono, p. 2.) Mr. Morrow does not

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

require specialized housing or require prompt access to a hospital. In fact, according to the clinician's notes from his medical record, Mr. Morrow's mental health will improve if he is placed in the PHU. These records state, "[he is] unlikely to need EOP if placed in PHU." (See MH 3 notes, attached hereto as Exhibit C)  Mr. Morrow has documented enemies on all Level IV SNY yards and there is no alternative placement which can ensure his safety and provide the degree of control required for his custody placement. (See DRB chrono, p. 1.)

In addition, the fact that Mr. Morrow cooperated with the ISU is widely known. This incident has made him notorious among inmates who, as a result of his actions, have made threats to his life which have been verified by CDC staff. (See DRB chrono, p. 2.) Mr. Morrow was transferred from LAC's SNY after staff became aware of threats to his life. Mr. Morrow was able to program successfully at MCSP's SNY for only three months before staff were forced to move him as a result of safety concerns and threats to his life. (See DRB chrono, p. 2.) Thus, the risk of great bodily injury to Mr. Morrow as a result of other inmates learning about his cooperation with the CDC has been substantiated. Now, Mr. Morrow believes he is in present danger of great bodily harm in his current housing unit. He clearly fits the criteria for PHU placement and should be placed in the PHU pending transfer to an out-of-state institution.

Enclosed you will find a copy of Mr. Morrow's authorization forms. I look forward to hearing from you soon regarding this matter.

Sincerely,

Penny Godbold

encl:    Exh. A, B, C
         Auth. Forms

cc: Morrow, C-53683



Exhibit I

## FOR IMPERIAL COUNTY, CA.

 **COPY**

### P.O. BOX 1040

### AUTOPSY REPORT

| | | |
|---|---|---|
| **Name of deceased:** WENDALL NORRIS | 57-W-M | **C#:** 03-062 |
| **Date and time of death:**    APRIL 7, 2003 | | 7:50 AM |
| **Date and time of autopsy:**    APRIL 8, 2003 | | 9:40 AM - 11:26 AM |

CAUSE OF DEATH:    MULTIPLE STAB WOUNDS TO THE CHEST

MANNER OF DEATH: SUICIDE

AUTOPSY FINDINGS:

   I. Five stab wounds to the left anterior chest.

   II. Acute heroin intoxication.

   III. Small abrasions on right cheek and bridge of nose.

   IV. Mild left ventricular hypertrophy.

   V. Cirrhosis of the liver.

   IV. Absent right testicle.

   VII. Fracture of mid sternum and anterior right rib fractures.

      A. Status post cardiopulmonary resuscitation.

   VIII. No other significant natural disease.

   IX. No other trauma.

The Foregoing Instrument Is A Correct
Copy Of The Original On File In This Office.
Attest:_____
                    Sheriff-Coroner
County Of Imperial, State of California

By _____ Deputy

OPINION: According to the Investigator's Report, the decedent is a 57 year old prison inmate
who was found collapsed in the exercise room with stab wounds to the chest. He failed to respond to resuscitative efforts.

Autopsy shows five grouped stab wounds to the left anterior chest each having a horizontal orientation, some with squared-off medial ends and primarily front to back directions. There were three stab wounds to the heart, one stab to the left lung hilum and one through the left lobe of the liver, causing death. Autopsy also shows small abrasions to the right cheek and bridge of nose, cirrhosis of the liver and absent right testicle. There is no other significant natural disease and no other significant trauma on the body. Toxicology shows a very high blood morphine level. The cause of death is multiple stab wounds to the chest.

From the scene investigation, autopsy examination and circumstances around the death as currently known, the manner of death is classified as suicide.

ROBERT E. WHITMORE, MD
FORENSIC PATHOLOGIST

Date signed: 6/12/03