**J. Michael Keating, Jr.**
Office of the Special Master
<u>Coleman v. Schwarzenegger</u>

2351 Sussex Drive
Fernandina Beach, FL 32034
(904) 491-7157
Fax: (904) 491-7158
E-mail: jmichaelkeatingjr@msn.com

February 7, 2005

Clerk's Office
United States District Court
  for the Eastern District of California
501 I Street
Sacramento, CA  95814

    RE: <u>Ralph Coleman, et al. v. Arnold Schwarzenegger, et al.
       No. Civ. S-90-0520 LKK JFM P</u>

Dear Sir/Madam:

Please find attached for electronic filing the <u>Special Master's Request for Increased Compensation</u> and <u>Memorandum in Support of Special Master's Request for Increased Compensation</u>.

In the past, I would file, in addition to the original version of whatever report or recommendation I was submitting, copies for distribution to Judge Karlton, Magistrate Judge Moulds and Haven Gracey, Staff Attorney to Judge Moulds.  I would ask you to please distribute a copy of the attached filing to each of these three individuals.

If you have any questions about this filing or its distribution, please call.  Thank you for your courtesy.

Sincerely yours,

/s/ J. Michael Keating, Jr.

J. Michael Keating, Jr.
Special Master

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.          :
    Plaintiffs,                  :
                                 :   No. CIV S-90-0520 LKK JFM P
vs.                             :
                                 :
ARNOLD SCHWARZENEGGER, et al., :
    Defendants.                  :

## SPECIAL MASTER'S REQUEST
## FOR INCREASED COMPENSATION

On December 11, 1995, the court entered an order appointing the special master in the above-captioned matter, setting his compensation at an hourly rate of one hundred and fifty dollars ($150.00) for work on the case and seventy-five dollars ($75.00) for travel. On February 15, 1996, the court entered an order appointing the deputy special master, while setting his compensation for work on the case at one hundred and forty dollars ($140.00) and seventy-five dollars ($75.00) for travel. In 1999, the special master requested, and received, increased compensation for both himself and his deputy. Since early in the mastership, the special master, pursuant to the authorization in the order of reference for his appointment, has sought and received the approval of the court to hire a number of experts and monitors to assist him in his duties, which duties have steadily expanded to include more institutions and issues. For the reasons set forth in the accompanying memorandum, the special master seeks additional compensation for himself and his staff.

The special master respectfully requests an increase of his hourly compensation to two hundred and sixty dollars ($260.00) per hour. The special

master also requests that compensation for the deputy special master and all experts be set at two hundred and fifty dollars ($250.00) per hour; compensation for all monitors be set at two hundred dollars ($200.00) per hour; and compensation for travel time for all be set at ninety dollars ($90.00) per hour.

        Respectfully Submitted,

        /s/ J. Michael Keating, Jr.

        _____

        J. Michael Keating, Jr.
        Special Master

February 7, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.<br>      Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br>      Defendants. | :<br>:<br>: No. CIV S-90-0520 LKK JFM P<br>:<br>:<br>:<br>: |

**MEMORANDUM IN SUPPORT OF SPECIAL MASTER'S
REQUEST FOR INCREASED COMPENSATION**

The special master seeks the requested increase in compensation for himself and his staff because of the steady increase in the breadth of scope and responsibilities of the mastership in the above-captioned case. At the beginning of this mastership, monitoring involved the part-time efforts of three attorneys and three psychiatric experts. At the joint request of the parties, contained in the court-approved November 13, 1998 agreement to incorporate the Gates consent decree for the California Medical Facility at Vacaville into the on-going Coleman remedial process, the staff of monitors and experts was expanded to include five psychiatrists, a psychologist, six attorneys, a nurse, a medical administrator, a systems analyst and a correctional compliance coordinator. Over the past two years, however, the special master's staff has lost some members, while the number of mentally ill inmates has continued to increase dramatically and the tasks required of the special master's monitors and experts have grown in number and complexity. Today, only four psychiatrists, a psychologist, four attorneys and the correctional compliance coordinator remain on the special master's staff. The increase in CDC's mental health

caseload with a concurrent decrease in monitoring staff has had some dramatic impacts:

      1)      The amount of supervisory time required by the special master has been extraordinary, both in terms of the coordination of monitoring activities and the processing of reports and materials generated by the escalating number of site visits and specific substantive issues. Most of the directly operational supervisory tasks remain in the hands of the deputy special master while the special master has continued to compile and organize data for reports, as well as conduct negotiations on substantive issues.

      2)      For the past two years the special master and his staff have spent countless man hours helping the parties to revise the defendant's Program Guides. The original document, which was provisionally approved by the court in 1997, needed to be revised to reflect the maturity of an ever-evolving mental health system. When the Program Guides were provisionally approved in 1997, there were just over 14,000 seriously mentally disordered inmates in CDC institutions. That number has more than doubled to over 28,000 inmates. Meanwhile the number of clinicians and mental health staff members whose services are subject to monitoring has also more than doubled.

      The Program Guides, as presently written and provisionally approved, moreover, have turned out to be inadequate for some segments of CDC's mental health system with more complex and security needs, including, for example, seriously mentally inmates housed in units for condemned inmates in California State Prison, San Quentin and the department's three Security Housing Units (SHUs) located in Pelican Bay State Prison; California State Prison, Corcoran; and California Correctional Institution. Efforts to define and provide adequate mental health services in these environments have proven difficult and time-consuming.

      The current draft of the Program Guides, which will be submitted to the court in February (along with the special master's recommendations), is a much more complete version of its predecessor and includes extensive revisions that have evolved during the past seven years of operation of the defendants' Mental Health Services Delivery System under the provisional Program Guides.

      The reshaping of these policies and procedures has required intensive negotiations and numerous drafts followed by more critiques, negotiations and redrafting. In fact, the parties and the special master have been working on this production of final Program Guides for more than two years.

As part of the 1998 Gates merger agreement, the court ordered the defendants to conduct a study of CDC's need for beds for seriously mentally ill inmates in need of inpatient hospitalization for either acute or intermediate care, provided at that time for CDC by the Department of Mental Health (DMH). For a variety of reasons, reiterated often in the pleadings in this case, each of the defendants' first three attempted assessments failed to define accurately or acceptably the department's needs for inpatient care. Finally, at the request of the parties, the special master's experts, working together with a team of experienced CDC clinicians, have undertaken a major effort to create and execute a process for evaluating the system' current need for inpatient beds. Over the past four months, joint teams of clinicians have analyzed patient records and often interviewed inmates to assess the need for inpatient beds. Preliminary indications are that the size of the need is considerably higher than the defendants anticipated, signaling a likely long and difficult struggle ahead to provide adequate treatment resources, a sample of which the court has overseen recently.

The growing demands of the Coleman case have increasingly consumed larger portions of the working time of the special master and all of his staff, pushing aside much of their opportunities for other employment. This requires, to a large extent, the abandonment of other practices and careers for intensive involvement in a case that promises to last at least another two years. The relentless expansion of the required commitment is the principal reason for the diminution of the special master's staff from 16 to 12 over the past two years, with a concomitant need for the shrinking

staff to undertake an expanding number of tasks.  It is critically important not to lose the unique accumulation of experience with and knowledge of CDC and its mental health system these four psychiatrists, one psychologist, four attorneys and the compliance coordinator have acquired   None of these 12 members of the special master's team have received a raise since they were hired, most of whom became involved in the case during the period from 1996 to 1998.  All of them, moreover, are currently working on this case at hourly rates substantially lower than those of their professional peers and substantially lower than they obtain in the severely limited practices they now manage to retain, outside of the demands of the <u>Coleman</u> case.  The current hourly rate for the special master is $210.00, while the deputy special master has an hourly rate of $200.00.  The experts currently have hourly fees of $200.00, and the present hourly rate for the monitors is $130.00.  The current hourly rate for travel time for everyone is $75.00.

        For all of these reasons, the special master requests that the following rates apply:

    1. Special Master                $260.00
    2. Deputy Special Master      $250.00
    3. Experts                          $250.00
    4. Monitors                       $200.00

The special master also requests a raise in the hourly travel rate to $90.00.

                Respectfully submitted,

                /s/ J. Michael Keating, Jr.
                _____
                J. Michael Keating, Jr.
                Special Master

February 7, 2005

## **DECLARATION OF SERVICE BY EMAIL AND U.S. MAIL**

Case Name:  Ralph Coleman, et al. v. Arnold Schwarzenegger, et al., U.S.D.C. Eastern District No. CIV S-90-0520 LKK JFM P

I am employed in the County of Nassau, Florida.  I am over the age of 18 years and not a party to the within entitled cause:  my business address is 2351 Sussex Drive, Fernandina Beach, FL 32034.

On February 7, 2005, I served the attached

**SPECIAL MASTER'S REQUEST FOR INCREASED COMPENSATION and MEMORANDUM IN SUPPORT OF SPECIAL MASTER'S REQUEST FOR INCREASED COMPENSATION**

in said cause by transmitting a true copy by EMAIL.  No error was reported by the machine used to email the document.  In addition, I placed a true copy thereof enclosed in a sealed envelope with postage thereof fully prepaid in the U.S. Mail at Fernandina Beach, FL, addressed as  follows:

Donald Specter, Esquire
Prison Law Office
2173 East Francisco Blvd.
Suite M
San Rafael, CA 94901

Michael Bien, Esquire
Rosen, Bien & Asaro
155 Montgomery St., 8th Fl.
San Francisco, CA  94104

Kathleen Keeshen, Esq.
Deputy Director (A), Legal Affairs
California Dept. of Corrections
1515 S Street
P.O. Box 942883
Sacramento, CA  94283-0001

Lisa A. Tillman, Esq.
Deputy Attorney General
1300 I Street, Room 125
P.O. Box 944255
Sacramento, CA 94244-2500

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct, and that this declaration was executed at Fernandina Beach, Florida on February 7, 2005.

/s/ J. Michael Keating, Jr.
_____

ii.