BILL LOCKYER
Attorney General of the State of California
JAMES M. HUMES
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
STEPHEN P. ACQUISTO
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205

Attorneys for Defendants CLS Only, Michael T. Pickett, Gray Davis and Edward S. Alameida, Jr.
CF1997CS0003

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>　　　　　　　　　　　　Defendants. | CASE NO. CIV S-90-0520 LKK JFM P<br><br>**DECLARATION OF GARY SWARTHOUT IN SUPPORT OF DEFENDANTS' REPLY TO NOTICE OF NONCOMPLIANCE** |

I, Gary Swarthout, do declare:

1. I am employed at the California Department of Corrections and Rehabilitation ("Department") as the associate warden of Mule Creek State Prison. Since December 2003, I have been on special assignment to Headquarters, initially reporting to Suzan Hubbard of Institutions Division and, with the reorganization of the Department in July 2005, to Mike Knowles, Deputy Director of Adult Institutions.

2. I have personal knowledge of the facts stated in this declaration and if called to testify upon them would do so competently.

DECLARATION OF GARY SWARTHOUT

1

3. In April 2005, I was assigned to review and revise the Department's cardiopulmonary resuscitation (CPR) policy and training program.

4. I was aware that the Department had taken steps to address CPR and First Aid training and policy in the past.

5. In 1999, the Department issued an administrative bulletin requiring correctional offices who were "first responders" to an emergency event to perform CPR commensurate with their training and experience in CPR.

6. On August 31, 2004, then-Deputy Director Cheryl Pliler issued a memorandum providing for a four-hour First Aid/CPR recertification to be incorporated into the Off Post Training. Each officer was to undergo the training at a date that coincided with his birthdate.

7. By the time I was assigned to this project, many institutions had begun annual CPR training but with different vendors providing the training and with different safety equipment involved. I soon learned that there was no standardized CPR training program and no standard set of safety equipment provided to correctional officers throughout the thirty-two adult institutions. While all officers underwent CPR training at the Academy, only those assigned to particular posts (SHU, Ad seg, PSU) were given annual re-certification in CPR. While some officers had ambu-bags for safety precautions, others had Laerdal masks.

8. I realized that key elements of a proper CPR program had to be developed on a statewide basis: the provision of annual CPR training by a certified vendor, the choice, purchase, and ongoing distribution of safety equipment, and the revision of the CPR adminstrative memorandum.

9. By May 29, 2005, I had met with all stakeholders in this project and formulated an initial Action Plan. The plan detailed the steps to be taken to revise the CPR policy, evaluate safety equipment and determine a training program. (Attached as Exhibit 5 is a true and correct copy of this May 5, 2005 Action Plan.)

10. At the All Parties meeting of May 16, 2005, I provided Special Master Keating and Plaintiff counsels with a status report on the CPR Action Plan. I informed Special Master Keating and Plaintiff counsels that the new CPR policy was being formulated for presentation

DECLARATION OF GARY SWARTHOUT

2

1 and notification to the impacted bargaining units. I do not recall plaintiff counsels questioning
2 the timeline I provided at that meeting.

3   11. I received a copy of this Court's order of June 9, 2005 requiring defendants to
4 develop and implement a policy to require correctional officers to perform CPR regardless of
5 their duty statement.

6   12. Through July 2005, I researched the various providers of CPR training in the
7 community and in correctional law settings. I also researched and analyzed a variety of safety
8 barriers for use in performing CPR

9   13. At the end of July 2005, I presented my recommendations for standardizing the
10 training and equipment for CPR and First Aid to Director John Dovey and Deputy Director Mike
11 Knowles. The recommendations included a fiscal assessment for this training of some 25, 218
12 first responders within the Department. These recommendations were approved.

13   14. I prepared the July 20, 2005 memorandum directed from Deputy Director John
14 Dovey to the Associate Directors of Adult Institutions, the Associate Directors of the Division of
15 Correctional Health Services, Wardens and Health Care Managers. The memorandum stated that
16 the Department's new policy regarding each custody officer's responsibility for the use of
17 cardiopulmonary resuscitation "whenever the inmate might benefit from such efforts and when
18 reasonably safe to do so." (Attached as Exhibit 1 is a true and correct copy of the July 20, 2005
19 memorandum.)

20   15. On July 27, 2005, the July 20, 2005 policy memorandum was relayed to Tim Virga
21 of the Department's Office of Labor Relations.

22   16. On August 25, 2005, the Office of Labor Relations officially noticed the impacted
23 bargaining unit of the new policy. (Attached as Exhibit 6 is a true and correct copy of the
24 notice.) I understand the impacted bargaining unit, California Correctional and Peace Officers
25 Association, has thirty days from the date of the notice to respond. (*Id.*) Formal negotiations are
26 anticipated to begin at the end of September 2005.

27   17. On September 2, 2005, I provided a CPR action plan for submission to Special
28 Master Keating and plaintiffs. (Attached as Exhibit 7 is a true and correct copy of the CPR

DECLARATION OF GARY SWARTHOUT
3

1  action plan.) The action plan was developed with the understanding that labor negotiations
2  would occur as part of the implementation of the new CPR policy and would precede
3  procurement and distribution of equipment and training on the new CPR policy.

4      18. Upon receiving the plaintiffs' notice of non-compliance, I evaluated the status of the
5  CPR action plan. I requested and received by September 2, 2005 a statement from each
6  institution stating how many of their officers and sergeants had undergone CPR/First Aid
7  training. I found that 75 percent of the correctional officers and sergeants had already undergone
8  their annual training in CPR; the target date of January 2006 exists for the remaining officers and
9  sergeants. Further, upon being contacted, the vendor of the mouth shields reported that 50,000
10 mouth shields could be shipped on an expedited basis. As of the date of this declaration of
11 September 13, 2005, I understand the mouth shields will be shipped to each institution directly
12 by September 16, 2005. I also learned that the planned training in the new CPR policy will be
13 done as "On the Job Training" by September 29, 2005, also serving to expedite the Action Plan.

14     19. On September 12, 2005, I revised the CPR policy memorandum of July 2005 to
15 indicate the date of September 12, 2005, and to state that training on both the new policy and
16 new safety equipment must be incorporated immediately into formal CPR training. I prepared an
17 accompanying cover letter providing compliance dates for each institution to meet. Each
18 institution must now meet three deadlines: September 15, 2005 to confirm CPR equipment is
19 stored with the emergency cut-down device and is readily available; September 29, 2005 for
20 providing on-the-job training on the new CPR policy; and September 30, 2005 for submitting
21 documentation of the completion of such training. The policy memorandum and the cover
22 memorandum were signed by Deputy Director Mike Knowles.

23     20. On the morning of September 13, 2005, the CPR policy memo and cover letter
24 were sent via email by Denise Perinati of the Legal Affairs Division to the wardens and health
25 care managers at every institution as well as to the Associate Directors of Adult Institutions and
26 the Associate Directors of the Division of Correctional Health Services. I directed the
27 transmission and reviewed the email read and received sheets and email confirmations.
28 ///

DECLARATION OF GARY SWARTHOUT

4

1 (Attached as Exhibit 8 is a true and correct copy of said transmission sheets and confirmation
2 sheets.)

3      21. I am confident each institution is informed of the CPR policy and the means of
4 complying with its directive. I am available to any staff of any institution should there be
5 questions about the policy, the protective equipment, or available training.

6      I declare under the penalty of perjury that the foregoing is true and correct.

7 Dated: September 13, 2005                    By: */s/ Gary Swarthout*
                                                  Gary Swarthout

30038694.wpd

DECLARATION OF GARY SWARTHOUT

5

1 | confirmation sheets.)

2 |     21. I am confident each institution is informed of the CPR policy and the means of
3 | complying with its directive. I am available to any staff of any institution should there be
4 | questions about the policy, the protective equipment, or available training.

5 |     I declare under the penalty of perjury that the foregoing is true and correct.

6 | Dated:                  By: _____
                               Gary Swarthout

30038694.wpd

DECLARATION OF GARY SWARTHOUT

5