BILL LOCKYER
Attorney General of the State of California
JAMES M. HUMES
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
STEPHEN P. ACQUISTO
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>Defendants. | CASE NO. CIV S-90-0520 LKK JFM P<br><br>**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS' NOTICE OF NONCOMPLIANCE CONCERNING JUNE 9, 2005 COURT ORDER** |

**I.**

**INTRODUCTION**

Defendants respectfully submit this brief[1] in response to Plaintiffs' notice asserting Defendants' noncompliance with two parts of this Court's June 9, 2005 order: the mandate for development and implementation of a cardiopulmonary resuscitation (CPR) policy and the

---

1. Defendants submit this Amended Response because the original Response filed on September 13, 2005 was inadvertently the draft and not the final electronic file. The final electronic version was ready for filing on September 13, 2005, by 5:00 p.m. The Declarations are being re-filed, without any changes. Defendants apologize to the Court and Counsel for this inadvertent error.

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

1

mandate to track inmate suicide attempts in the present and/or any successor information management system. Plaintiffs asserted "no work" had been done to meet the order on the CPR policy and yet contended the submitted CPR plan was substantively flawed by containing a completion date of January 2006. Plaintiffs challenged the submitted tracking plan as untimely presented, but admitted they had not fully reviewed the tracking plan. No further challenges to the tracking plan have been presented by Plaintiffs and so Defendants understand the tracking plan is acceptable to Plaintiffs.[2/] Upon receiving the notice of non-compliance, Defendants re-evaluated the submitted CPR plan and have expedited key elements of the plan to ensure that all correctional officers and sergeants are - within days - provided the new CPR policy and provided the necessary training and protective equipment to enable compliance with the court order. Defendants submit that they are now in substantial compliance with the June 9, 2005 court order and will be in complete compliance by September 30, 2005. Defendants respectfully request this Court to accept this revised CPR action plan and find Defendants in substantial compliance.

**LEGAL ARGUMENT**

**DEFENDANTS HAVE EXERCISED GOOD FAITH IN RESPONDING TO THE COURT ORDER OF JUNE 9, 2005 AND ARE IN SUBSTANTIAL COMPLIANCE**

**A.  Defendants Undertook Efforts to Revise the CPR Policy and Conduct Annual CPR Training Prior to the June 9, 2005 Court Order.**

Well before the court order of June 9, 2005, Defendants undertook a series of steps to revise the CPR/First Aid policy to better meet the health and safety needs of inmates. In 1999, the Department of Corrections and Rehabilitation ("Department") issued an administrative bulletin requiring correctional officers who were "first responders" to an emergency event to perform cardiopulmonary resuscitation (CPR) commensurate with their training and experience in CPR. (Dec. Swarthout, ¶ 3.) On August 31, 2004, then-Deputy Director Cheryl Pliler issued a memorandum providing for a four-hour First Aid/CPR recertification to be incorporated in each officer's mandatory Off-Post Training. (*Id.*, at ¶ 6.) Each officer was to undergo the

---

2. Should this Court desire briefing on the tracking plan, Defendants will provide further explanation of the tracking plan.

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

training at a date that coincided with his birth date. (*Id.*) On or about February 22, 2005, Deputy Director Mike Knowles attended a meeting to address the legal and operational ramifications of revising the CPR policy to require its performance by trained correctional officers. (Dec. Knowles, ¶3.) No court order or recommendation had been received on this issue at that time. (*Id.*) This meeting was held to spearhead an effort to revise the policy and explore the implementation issues involved in such a revision, including the need to standardize training in CPR, determine the costs of training and equipment, and to notify any impacted bargaining unit of the change in policy. (*Id.*)

On or about February 28, 2005, Defendants received Special Master Keating's draft Report on Suicides Committed in the California Department of Corrections for Calendar Year 2003. The report made two recommendations: (1) the development and implementation of a CPR policy requiring custody staff to provide immediate life support, if trained to do so, until medical staff arrived to initiate or continue life support measures, and (2) the development of a process for tracking the suicidal history of inmates in Defendants' mental health caseload in the Mental Health Tracking System and/or any successor management information system utilized by the Department. Defendants did not file any objection to these draft recommendations. These recommendations were incorporated within the Final Report and became orders of the court on June 9, 2005.

After the draft Report was submitted, Gary Swarthout was tasked with reviewing and revising the Department's cardiopulmonary resuscitation policy and training program. By May 29, 2005, Mr. Swarthout had met with all stakeholders in this project and formulated an initial Action Plan. (Dec. Gary Swarthout, ¶ 9.) The plan detailed the steps to be taken to revise the CPR policy, evaluate safety equipment and determine a training program. (*Id.*, see also, Ex. 5, May 5, 2005 Action Plan.)

At the All Parties meeting of May 16, 2005, Mr. Swarthout provided Special Master Keating and Plaintiffs' counsels with a status report on the CPR Action Plan. Mr. Swarthout informed Special Master Keating and Plaintiffs' counsels that the new CPR policy was being formulated for presentation and notification to the impacted bargaining units. (Dec. Gary

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

Swarthout, ¶ 10.) Plaintiffs did not challenge the time line indicated by Mr. Swarthout at that meeting. (*Id.*) Through July 2005, Defendants researched the various providers of CPR training in the community and in correctional law settings. A variety of safety barriers for use in performing CPR were also examined. (*Id.*, at ¶ 12.) By the end of July 2005, recommendations for standardizing the training and equipment for CPR and First Aid were presented to Director John Dovey and Deputy Director Mike Knowles. (*Id.*, at ¶ 13.) The recommendations included a fiscal assessment for this training of some 25, 218 first responders within the Department. (*Id.*) The recommendations were approved. (*Id.*)

**B.  Defendants Developed a CPR Policy and Action Plan to Meet The Court Order.**

In accord with the June 9, 2005 court order, Defendants revised the Department's CPR policy and formulated a training plan. Unfortunately, both the CPR policy statement and the training plan were delayed in delivery to the field.

The new CPR policy was stated in a July 20, 2005 memorandum directed from Deputy Director John Dovey to the Associate Directors of Adult Institutions, the Associate Directors of the Division of Correctional Health Services, Wardens and Health Care Managers. (Dec. Swarthout, ¶ 14.) The memorandum stated that the Department's new policy regarding each custody officer's responsibility for the use of cardiopulmonary resuscitation "whenever the inmate might benefit from such efforts and when reasonably safe to do so." (*Id.*, *see also*, Ex. 1, July 20, 2005 memorandum.) While on its face the memorandum appeared directed to field staff, the memorandum was in actuality only sent to the Labor Relations Office of the Department. (*Id.*, ¶ 15; Dec. Knowles, ¶ 7.) Unfortunately, in a letter dated August 9, 2005, a copy of the July 20, 2005 memorandum was provided to Special Master Keating to evidence defendants' compliance with the June 9, 2005 court order. (Dec. Knowles, ¶ 6, Ex. 2, August 9, 2005 letter.)

On September 2, 2005, Defendants provided a CPR action plan for submission to Special Master Keating and plaintiffs. (Dec. Swarthout, ¶ 17; Ex. 7, Updated CPR Action Plan.) The action plan was developed with the understanding that labor negotiations would occur as part of the implementation of the new CPR policy and would precede procurement and

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

4

distribution of equipment and training on the new CPR policy. (*Id.*) The targeted date of January 2006 was stated for completion of the distribution of equipment and training on the new CPR policy. (*Id.*)

**C.  Defendants Have Expedited the Delivery of the CPR Policy Statement, Protective Equipment, and Training on the CPR Policy and Protective Equipment.**

Upon receiving Plaintiffs' notice of non-compliance, Defendants evaluated the status of the CPR policy and its implementation. (Dec. Swarthout, ¶ 18; Dec. Knowles, ¶¶ 7, 8.) Defendants realized that the July 20, 2005 memorandum had not been sent to the field personnel listed on the document, such as the wardens, health care managers, and associate directors. (Dec. Knowles, ¶ 7.) The July 20, 2005 memorandum had only been relayed to the Department staff responsible for labor negotiations in order to properly notify impacted bargaining units of the change in policy. (*Id.*)

Defendants recognized that many of their officers and sergeants had undergone CPR/First Aid training. (Dec. Swarthout, ¶ 18.) Mr. Swarthout found that 75 percent of the correctional officers and sergeants had already undergone their annual training in CPR (the target date of January 2006 exists for the remaining officers and sergeants. (*Id.*) Further, upon being contacted, the vendor of the mouth shields reported that 50,000 mouth shields could be shipped on an expedited basis. (*Id.*) As of the date of this brief, mouth shields will be shipped to each institution directly by September 16, 2005. (*Id.*) In addition, planned training in the new CPR policy and protective equipment will be done as "On the Job Training", also serving to expedite the Action Plan. (*Id.*)

On September 12, 2005, the CPR policy memorandum of July 2005 was revised to indicate the effective date of September 12, 2005, and to state that training on both the new policy and new safety equipment must be incorporated immediately into formal CPR training. (Dec. Swarthout, ¶ 19; Dec. Knowles, ¶ 8; *see also* Ex. 3, September 12, 2005 memorandum..) An accompanying cover letter provided compliance dates for each institution to meet: September 15, 2005 to confirm CPR equipment is stored with the emergency cut-down device and is readily available; September 29, 2005 for providing on-the-job training on the new CPR policy; and

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

1  September 30, 2005 for submitting documentation of the completion of such training.  (Dec.
2  Swarthout, ¶ 19; Dec. Knowles, ¶ 8; Ex. 4, September 12, 2005 cover memorandum; Ex. 8,
3  Email Delivery Confirmation Sheets.)  In addition, the cover memorandum reminded staff of the
4  legal duty to provide CPR and first aid with existent safety equipment.  (*Id.*)  The procurement
5  and distribution of the standard protective equipment, the mouth shield, was substantially
6  expedited from a three-month to a two-week period.  (Dec. Swarthout, ¶ 18; Dec. Knowles, ¶ 8.)
7  Defendants will provide to this Court confirmation of completion of the distribution and training
8  on the CPR policy and new equipment.

9  Defendants acknowledge and regret the flaws of the previously submitted CPR policy
10 and action plan.  Defendants respectfully submit the flaws have now been remediated, with
11 delivery of the new CPR policy to the field now confirmed and an expedited plan for training on
12 the CPR policy and equipment by September 30, 2005.  Defendants hope this Court will find
13 Defendants now in substantial compliance with the Court order and will accept Defendants'
14 proffer of complete compliance by September 30, 2005.

15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

6

**CONCLUSION**

Defendants respectfully request this Court accept their proffered statement of good faith efforts to comply and their expedited plan to ensure complete compliance by September 30, 2005.

Dated: September 14, 2005

    Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

STEPHEN P. ACQUISTO
Supervising Deputy Attorney General


*/s/ Lisa A Tillman*
LISA A. TILLMAN
Deputy Attorney General

Attorneys for Defendants

DEFENDANTS' AMENDED REPLY TO NOTICE OF NONCOMPLIANCE

7

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Coleman et al v. Schwarzenegger, et al**

No.:   **CIV S-90-0520 LKK JFM P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On September 15, 2005, I served the attached **AMENDED RESPONSE** with **DECLARATIONS** from Gary Swarthout and Mike Knowles in support thereof by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Kimberly S. Davenport
California Medical Association
221 Main Street
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 14, 2005, at Sacramento, California.

| A Buckley | /s/ A Buckley |
|---|---|
| Declarant | Signature |

30039289.wpd