1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  STEPHEN P. ACQUISTO
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-7872
8    Fax: (916) 324-5205

9  Attorneys for Defendants
   CF1997CS0003

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | CASE NO. CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **DECLARATION OF MIKE KNOWLES IN SUPPORT OF DEFENDANTS' REPLY TO NOTICE OF NONCOMPLIANCE** |
| v. | |
| **ARNOLD SCHWARZENEGGER, et al.,** | |
| Defendants. | |

I, Michael Knowles, do hereby state:

1. I am employed at the California Department of Corrections and Rehabilitation ("Department") and have been so employed since September 1977. I served as the Central Record Administrator of the Institutions Division from October 2004 to July 2005. Since the reorganization of July 2005, I have served in the position of Deputy Director (Acting) of Adult Institutions. My duties include ensuring correctional officers at every state prison for adult offenders are properly trained and equipped in accordance with all applicable laws, regulations, and labor agreements.

2. I have personal knowledge of the facts stated in this declaration and if called to testify upon them would do so competently.

3. On or about February 22, 2005, I attended a meeting concerning the revision of the Department's policy on the performance of cardiopulmonary resuscitation (CPR) by correctional officers. No court order or recommendation had been received. This meeting was held to spearhead an effort to revise the policy and explore the implementation issues involved in such a revision, including the need to standardize training in CPR, determine the costs of training and equipment, and to notify any impacted bargaining unit of the change in policy.

4. I am aware of the June 9, 2005 order of this Court requiring defendants to develop and implement a policy that establishes clearly and unequivocally a requirement for custody staff to provide immediate life support, if trained to do so, until medical staff arrive to initiate or continue life support measures, irrespective of whether the obligation to do so is part of the particular custody staff member's duty statement.

5. On July 20, 2005, I signed on behalf of Deputy Director John Dovey a memorandum directed to the Associate Directors of Adult Institutions, the Associate Directors of the Division of Correctional Health Services, Wardens, and Health Care Managers. The memorandum stated that Department's new policy regarding each custody officer's responsibility for the use of cardiopulmonary resuscitation "whenever the inmate might benefit from such efforts and when reasonably safe to do so." (Attached as Exhibit 1 is a true and correct copy of the July 20, 2005 memorandum.)

6. In a letter dated August 9, 2005, a copy of the July 20, 2005 memorandum was provided to Special Master Keating to evidence defendants' compliance with the June 9, 2005 court order. (Attached as Exhibit 2 is a true and correct copy of the August 9, 2005 letter.)

7. Upon receiving the plaintiffs' notice of non-compliance, I met with staff to determine the status of the CPR policy and its implementation. I had believed that the July 20, 2005 memorandum had been sent to field personnel, such as the listed wardens, health care managers, and associate directors. However, I learned that the July 20, 2005 memorandum had only been relayed to the Department staff responsible for labor negotiations in order to properly notify

1 impacted bargaining units of the change in policy. The memorandum had not been sent to field
2 personnel.

3     8. I have since endeavored to ensure compliance with the July 9, 2005 court order. Under
4 my direction, the July 20, 2005 memorandum was amended with a new date and sent to field
5 personnel on September 12, 2005. (Attached as Exhibit 3 is a true and correct copy of the
6 September 12, 2005 policy memorandum.) Accompanying the September 12, 2005 policy
7 statement was a memorandum providing the field with three deadlines: September 15, 2005 to
8 confirm CPR equipment is stored with the emergency cut-down device and is readily available;
9 September 29, 2005 for providing on-the-job training on the new CPR policy; and September 30,
10 2005 for submitting documentation of the completion of such training. (Attached as Exhibit 4 is
11 a true and correct copy of the September 12, 2005 cover memorandum.) In addition, the cover
12 memorandum reminded staff of the legal duty to provide CPR and first aid with existent safety
13 equipment. Per my request, the procurement and distribution of the standard protective
14 equipment, the mouth shield, was substantially expedited from a three-month to a two-week
15 period.

16     9. In the course of my work with the Department, I have reviewed and observed many
17 instances of correctional officers performing CPR upon inmates. I believe correctional officers
18 have and will continue to perform such life-savings efforts. This new CPR policy, as well as the
19 standardized training and protective equipment, will provide a better understanding of this life-
20 saving act.

21     I declare under the penalty of perjury that the foregoing is true and correct.
22     Dated: September 13, 2005

23                 */s/ Mike Knowles*
                  Mike Knowles
24                   Deputy Director of Adult Institutions
                  California Department of Corrections and Rehabilitation

27 30037168.wpd

Declaration of Mike Knowles
3

1  impacted bargaining units of the change in policy. The memorandum had not been sent to field
2  personnel.
3      8.  I have since endeavored to ensure compliance with the July 9, 2005 court order. Under
4  my direction, the July 20, 2005 memorandum was amended with a new date and sent to field
5  personnel on September 12, 2005. (Attached as Exhibit 3 is a true and correct copy of the
6  September 12, 2005 policy memorandum.) Accompanying the September 12, 2005 policy
7  statement was a memorandum providing the field with three deadlines: September 15, 2005 to
8  confirm CPR equipment is stored with the emergency cut-down device and is readily available;
9  September 29, 2005 for providing on-the-job training on the new CPR policy; and September 30,
10 2005 for submitting documentation of the completion of such training. (Attached as Exhibit 4 is
11 a true and correct copy of the September 12, 2005 cover memorandum.) In addition, the cover
12 memorandum reminded staff of the legal duty to provide CPR and first aid with existent safety
13 equipment. Per my request, the procurement and distribution of the standard protective
14 equipment, the mouth shield, was substantially expedited from a three-month to a two-week
15 period.
16     9.  In the course of my work with the Department, I have reviewed and observed many
17 instances of correctional officers performing CPR upon inmates. I believe correctional officers
18 have and will continue to perform such life-savings efforts. This new CPR policy, as well as the
19 standardized training and protective equipment, will provide a better understanding of this life-
20 saving act.
21     I declare under the penalty of perjury that the foregoing is true and correct.
22     Dated: September 13, 2005

                                                     Mike Knowles
                                                     Deputy Director of Adult Institutions
                                                     California Department of Corrections and Rehabilitation

30037168.wpd

Declaration of Mike Knowles

3