```
 1  PRISON LAW OFFICE
    DONALD SPECTER Bar No.: 83925
 2  STEVEN FAMA Bar No.: 99641
    KEITH WATTLEY Bar No.: 203366
 3  General Delivery
    San Quentin, California 94964
 4  Telephone (415) 457-9144

 5  BINGHAM, McCUTCHEN, LLP
    WARREN E. GEORGE Bar No.: 53588
 6  Three Embarcadero Center
    San Francisco, California 94111
 7  Telephone (415) 393-2000

 8  ROSEN, BIEN & ASARO, LLP
    MICHAEL W. BIEN Bar No.: 096891
 9  JANE E. KAHN Bar No.: 112239
    THOMAS NOLAN Bar No.: 169692
10  155 Montgomery Street, 8th Floor
    San Francisco, California 94104
11  Telephone (415) 433-6830

12  HELLER, EHRMAN, WHITE & McAULIFFE
    RICHARD L. GOFF Bar No.: 36377
13  701 Fifth Avenue
    Seattle, Washington 98104
14  Telephone (206) 447-0900

15  THE LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
    CLAUDIA CENTER Bar No.: 158255
16  LEWIS BOSSING Bar No.: 227402
    600 Harrison Street, Suite 120
17  San Francisco, CA 94107
    Telephone: (415) 864-8848
18
    Attorneys for Plaintiffs
19
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, | No.: Civ S 90-0520 LKK-JFM |
| Plaintiffs, | **REPLY DECLARATION OF JANE KAHN IN SUPPORT OF PLAINTIFFS' NOTICE OF DEFENDANTS' FAILURE TO COMPLY WITH THE JUNE 9, 2005 ORDER AND REQUEST FOR RELIEF** |
| vs. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants | **HEARING** |
| | DATE: October 27, 2005<br>Time: 10:00 a.m.<br>Court: Hon. Lawrence K. Karlton |

H:\489\3\PLEADING\jk reply dec, 9-29-05, 489-3.DOC

I, Jane Kahn, do hereby declare under penalty of perjury as follows:

1. I am an Associate in the law firm Rosen, Bien & Asaro, one of the counsel of record for plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify.

2. I have reviewed the <u>Special Master's Report on Suicides Completed in the CDC in the Calendar Year 2003</u>, filed 4/28/05 ("Suicide Report for 2003"). In at least one-third of the suicides reviewed by the Special Master in the Suicide Report for 2003 the first responder custody officer did not initiate CPR. (<u>See</u>, e.g., Inmate One was discovered by a custody officer at 11:15 a.m. and by 11:20 a.m. when the MTA had arrived no CPR had been initiated, Suicide Report for 2003 at 1; Inmate 18 was discovered by custody officer at 9:30 p.m., cut down, handcuffed and CPR initiated by medical staff who arrived at the scene ten minutes later, Suicide Report for 2003 at 50; Inmate 25, a seventeen year old was discovered hanging in his administrative segregation cell at 12:35 a.m. by a custody officer who cut him down but did not initiate CPR which was not initiated until he arrived in the infirmary ten minutes after he was discovered, Suicide Report for 2003 at 73.)

3. The Special Master and plaintiffs' counsel receive notification of every CDCR suicide. In my August 26, 2005 Declaration I reported the Annual CDCR Suicide Rate for 2005 was 27.2 per hundred thousand based upon a total CDCR population figure of 160,000 inmates and based upon the fact that there had been 29 suicides in the first eight months of 2005. August 26, 2005 Kahn Dec. ¶4. Plaintiffs have received notification of five suicides since filing our August 26, 2005 Notice. As of September 29, 2005, the Annual CDCR Suicide Rate for 2005 is 28.3 per hundred thousand based upon a total CDCR population figure of 160,000 inmates and based upon the fact that there have been 34 suicides in the first nine months of 2005. The CDCR 2005 suicide rate of 28.3 per hundred thousand is twice the state prison suicide rate of 14 per 100,000 inmates as reported by the Bureau of Justice Statistics Special Report on Suicide and Homicide in State Prisons and Local Jails, which was issued by the U.S. Department of Justice in August 2005. <u>See</u> Exhibit 1, to 8/26/05 Kahn Dec.

I:\jk reply dec, 9-29-05, 489-3.DOC                    -1-

Reply Declaration Of Jane Kahn In Support Of Plaintiffs' Notice Of Defendants' Failure To Comply With
The June 9, 2005 Order And Request For Relief, Case No. Civ S 90-5020 LKK-JFM

4.   Since June 9, 2005, the Special Master and plaintiffs' counsel have received notification of 21 suicides and one death of an inmate from a drug overdose that defendants have reported as an "accidental death", which may require a suicide review.

5.   The CDCR prepares a Suicide Report for each inmate who commits suicide within the CDCR within 60 days of the death and provides the Special Master and plaintiffs' counsel with a copy of this Report. Within this Report there is an Executive Summary that describes the emergency response to the inmate's suicide. In addition, the Incident Report from the Suicide and emergency response documents, as well as the Inmate Death Report are attached. These include information regarding which staff person initiated CPR, when medical personnel arrived in the housing unit, and what the custody response included. I have reviewed the Suicide Reports that have been prepared to date for each of the 21 Suicides that have occurred since June 9, 2005. I have also reviewed medical records for some of the inmates who committed suicide since June 9, 2005. Based upon my review of the CDCR Suicide Reports provided to date and my review of the medical records provided to me by CDCR, I have concluded that in at least six of the 21 suicides (29%) that occurred since June 9, 2005, custody officers as first responders did not provide immediate life support. (See, e.g., on August 6, 2005, a twenty year old inmate was discovered hanging in his cell and was cut down by custody who did not initiate CPR but rather placed him on the floor where the LVN found him when entering the housing unit and initiated CPR; on June 11, 2005, an inmate was found hanging in administrative segregation at approximately 9:05 p.m. but CPR was not initiated until 9:16 p.m. when the MTA arrived after receiving a call for an *unspecified* medical emergency; on July 6, 2005 a twenty-six year old inmate was found hanging in administrative segregation by custody officers who cut him down but did not initiate CPR--CPR not initiated until inmate was transferred to the emergency room 20 minutes after he was discovered; on July 2, 2005, an inmate was found unconscious in his cell by officers who provided no CPR until the RN arrived five minutes later; on June 30, 2005, an inmate was found unconscious in his cell at 5:15 p.m. but no CPR was initiated until medical staff transported him to the

emergency room ten minutes later). All of these suicides occurred after the CDCR had notice of the June 9, 2005 Order.

6. Since August 8, 2005, plaintiffs' counsel have received notification from defendants of four suicides within CDCR. All four of the men who committed suicide were housed in locked units--either administrative segregation or security housing units—where defendants report that custody staff are given annual re-certification in CPR. Swarthout Declaration ¶7. Plaintiffs have not received complete records for these inmates in order to review whether custody officers as first responders provided them with immediate life support until medical personnel arrived as required by the June 9, 2005 Order.

7. On February 24, 2005, the Special Master, plaintiffs' counsel, counsel for defendants, and representatives from defendants met in Sacramento to discuss a variety of policy issues. During the meeting, Special Master Keating informed the parties that his Draft Suicide Report would be distributed on Monday, February 28, 2005, and would contain a recommendation that custody officers must provide CPR to inmates if trained to do so.

I do so declare under penalty of perjury this 30th day of September, 2005, at San Francisco, California that the foregoing is true and correct.

*Jane Kahn*
Jane Kahn