1 │ KENNY MORROW C-53683
2 │ 4B-1L-32/P.O.BOX 9831
3 │ CORCORAN CA. 93212



4 │            DEC - 5 2005
5 │
6 │ DATED: NOVEMBER 28, 2005



7 │
8 │
9 │ RE: SOLITARY CONFINEMENT, AND PSYCHOPATHOLOGICAL
10 │     EFFETS. ATTEMPT OF MURDER. DELIBERATE INDIFFERENCE
11 │     INVESTIGATION BY HANDSFORD DISTRICT ATTORNEY
12 │     AND INSPECTOR GENERAL OFFICES. VIOLATION
13 │     OF P.C. § 206.,TORTURE, P.C. § 147., OPPRESSION,
14 │     P.C. § 153., COMPOUNDING AND CONCEALING
15 │     CRIMES. CRIMES AGAINST HUMANITY.
16 │                 CASE NO. CIV S-90 -0520 LKKJFMP
17 │ CHIEF JUSTICE EMERITUS L. KARLTON
18 │ UNITED STATES DISTRICT COURT, E. DIV.
19 │ 501 I ST. STE.B-200
20 │ SACRAMENTO CA. 95814
21 │
22 │ DEAR JUDGE KARLTON:
23 │   I AM INCARCERATED AT CORCORAN PRISON. ILLEGALY
24 │ HOUSED IN SOLITARY CONFINEMENT. ON NO HUMAN
25 │ CONTACT STATUS, AND I AM FORTY THREE YEARS OF AGE.
26 │ A COPY OF THIS LETTER IS BEING SENT TO THE FOLLOW-
27 │ ING ENITIES.
28 │ CALIFORNIA GOVERNOR SCHWARZENEGGER, INSPECTOR

                     1.

1 | GENERAL, ATTORNEY GENERAL (DEPUTY) HANFORD) DISTRICT
2 | ATTORNEYS OFFICE, CDC DIRECTOR, CHIEF CDC PSYCHIATRIST
3 | FISHBACK, UNITED NATIONS HEADQUARTERS, U.S.
4 | ATTORNEY'S OFFICE (NORTHERN DISTRICT) STATE BAR OF
5 | CALIFORNIA.

6 | I AM IN SOLITARY CONFINEMENT FOR SAFETY ISSUES
7 | FOR ASSISTING PRISON OFFICIALS SAVE LIFES. THUS THE
8 | INMATE POPULATION THREATENED MY SAFETY FOR ASS-
9 | ISTING THE ENEMY. INSTEAD OF HOUSING ME IN
10 | CORCORNS PROTECTIVE HOUSING UNIT (PHU) CDC
11 | HOUSED ME IN A PUNITIVE SECURITY HOUSING UNIT
12 | (SHU) SOLITARY CONFINEMENT, KNOWING I FIT
13 | THE CRITERIA TO BE HOUSED IN PHU.

14 | I SPENT (17) SEVENTEEN YEARS IN SOLITARY CONFINE-
15 | MENT, PRIOR TO BEING RE-HOUSED AGAIN IN SOLITARY.
16 | MY MEDICAL FILE REFLECTS, THAT WHEN HOUSED
17 | IN SOLITARY CONFINEMENT, IT CAUSES PSYCHOLOGICAL
18 | TRAUMA. SYMPTOMS OF PSYCHOPATHOLOGY ARE MANI-
19 | FESTED, I COMMITTED SUICIDE ATTEMPTS ON THE FOLL-
20 | OWING DATES. 1990-1991-1992-1993-1994-1997, SEE
21 | ATTACHED CDC 128-G, MEMORANDUM DATED JAN. 28, 2004.
22 | DUE TO THE YEARS IN SOLITARY CONFINEMENT, I
23 | SUFFER FROM A HOST OF MENTAL ILLNESS, BROUGHT
24 | ON BY CDC, AND BANNED IN THIS COUNTRY. AND
25 | THE UNITED NATIONS (NUREMBURG PRINCIPLES) IN
26 | 1946, CONFIRMED, DECLARED, CODIFIED, CREATED, THE
27 | UNIVERSAL DEFINITIONS OF CRIMES AGAINST HUMANITY
28 | SEE NUREMBERG PRINCIPLES, ARTICLE 6. (a) (b.) (c.)

2.

1  AND THE CONVENTION AGAINST TORTURE.

2  I HAVE BEEN REPEATEDLY INHIBITED BY PRISON

3  OFFICIALS AT CORCORAN, WHERE BY ALL MY APPEALS

4  ADMINISTRATED GRIEVANCES, DISAPPEAR IN THIS

5  PRISONS INADEQUATE APPEALS SYSTEM. THERE FORE

6  THIS LETTER IS MY ONLY CHANCE TO RELIEF.

7      SOLITARY CONFINEMENT (FOR BREVITY HEREAFTER

8  CALLED S.C.) IS CALLED BY MANY HEADINGS, SHU-

9  ASU- MSU- PSU- SUPERMAX.THESE LIVING CONDITIONS

10  CAUSE A HOST OF ILLEGAL, SHOCKING PSYCHOLOGICAL

11  PAIN, AND EMOTIONAL PSYCHOLOGICAL DAMAGE.

12  SPECIFICALLY, LOSS OF SANITY, APPETITE, SLEEP,

13  DEPREVATION, ANXIETY, PANIC, RAGE, PARANOIA,

14  SELF MUTILATIONS, SUICIDE, HEADACHES, HALL-

15  UCINATIONS, ETC.

16  THE USE OF THIS CONFINEMENT IS AKIN TO BRAIN

17  WASHING, AND TORTURE. THESE NEGATIVE EFFECTS

18  FROM S.C. ARE ANALOGOUS AS ACUTE REACTIONS

19  SUFFERED BY TORTURE AND TRAUMA VICTIMS, IN-

20  CLUDING POST- TRAUMATIC STRESS DISORDER OR

21  PTSD, AND IS NO LESS DIFFERENT THEN THE KIND

22  OF PSYCHIATRIC SEQUELAE THAT PLAGUE VICTIMS

23  OF WHAT IS CALLED, "DEPRIVATION AND CONSTRAINT"

24  (TORTURE TECHNIQUES) (e.9. SOMNIER AND GEN-

25  EFKE 1986) PSYCHIATRICT JOURNAL.

26      I AM PLAGUED BY HYPERTENSION, SUICIDAL

27  IDEOLOGY, AUDITORY COMMANDS, EMOTIONAL

28  BREAKDOWNS, CHRONIC DEPRESSION, STEMMING

3.

1  FROM THIS SADISTICT HOUSING.

2  MANY OF THE FOLLOWING TORTURES I SUFFER FROM
3  ARE HEART PALPIATATIONS. OVER SENSITIVITY TO STIM-
4  ULATION, LOSS OF MEMORY, SOCIAL WITH DRAWL, EMO-
5  TIONAL FLATNESS, PERCEPTUAL DISTORTIONS ETC.

6  I AM SUFFERING UNWANTON PAIN, CRUEL AND UN-
7  USUAL PUNISHMENT. I AM CONTINUALLY TRYING TO
8  ADJUST TO THIS SADISTIC ENVIROMENT, AND FURTHER
9  WITH DRAWL SOCIALLY, TO BE INTROSPECTIVE AND AVOID
10  SOCIAL CONTACT.

11  I FIND THE GREATER MY AWARENESS OF THESE HORR-
12  ORS (THAT ATTACK MY CONSCIOUSNESS) THE HIGHER THE
13  FREQUENCY AND EXTENT OF NEGATIVE EFFECTS.

14  ON 5-25-05, THE CALIFORNIA DEPARTMENT OF
15  CORRECTIONS (CDC) DEPARTMENTAL REVIEW BOARD (DRB)
16  APPROVED MY HOUSING AND OUT OF STATE TRANS-
17  FER, WITH OUT CONSIDERING MY MENTAL HEALTH
18  STATE, VIOLATING THE LAW SEE ATTACHED)
19  CDC 128-G, DATED 5-25-05, THE DRB WAS
20  AWARE IN ADVANCE I HAD A SEVERE SUICIDE
21  PSYCHO PATHOLOGICAL HISTORY WHEN HOUSED IN
22  SOLITARY CON FINE MENT, THUS SHOWING DELIB-
23  ERATE INDIFFERENCE, SEE ATTACHED MEMORAN-
24  DUM DATED 1-28-2004.

25  THE PUNISHMENT MUST NOT OUT DO THE CRIME,
26  AND IN NO WAY WILL THE PUNISHMENT CAUSE
27  DAMAGE FOR THE REST OF A PRISONERS LIFE.

28  I CANNOT FILE A PPEAL OR DRB DECISION SEE

4.

1  CALIFORNIA CODE OF REGULATION ( CCR )TITLE 15., DIV-
2  ISION 3, ARTICLE 7" SECTION 3084.1 (a.)
3     SCREENING PROCEDURES HAVE BEEN IMPLEMENTED
4  IN CALIFORNIA BY THE IN RE,COLEMAN V. WILSON
5  CIVIL CASE (1995 ) PRISON OFFICIALS ARE TO SCREEN
6  ALL PRISONERS IN ADVANCE" BEFORE S.C., SHU,SEEKING
7  OUT MENTAL HEALTH HISTORY PRISONERS. THE DRB
8  WONT ALLOW ME TO APPEAL THEIR SENTENCE OF
9  INDETERMINATE SHU HOUSING, WHICH IS A PUNI-
10  TIVE ENVIROMENT.
11     CDC DRB FAILED TO SEEK THEE ABOVE, AND
12  MENTAL HEALTH STAFF AS WELL, AND I SUCCUM-
13  BED TO SUICIDE IDEATION UPON ARRIVAL IN
14  SHU - S.C.  IT IS NOT ENOUGH TO PROVIDE
15  PRISONERS WITH MENTAL HEALTH SERVICES
16  AFTER PRISONERS EXPERIENCED A MENTAL BREAK
17  DOWN.
18     ON 9-7-05, ASSOCIATE WARDEN YAMAMOTO
19  DR. JUAREZ, AND MENTAL HEALTH SUPERVISOR
20  SEYKORA STRIPPED ME OF MENTAL HEALTH IN-
21  VOLVIMENT, AND ORDERED ME TO BE HOUSED
22  IN S.C. SHU., EVEN WHEN I NOTIFIED THEM
23  I WOULD DECOMPENSATE SUFFERING IN PAIN,
24  AND I WILL COMMITT SUICIDE. DR.JUAREZ AND
25  SUPERVISOR SEYKORIA SAID THEIR HANDS ARE TIED
26  THAT CUSTODY ( YAMAMOTO ) CONTROLS MY HOUSING
27  EVEN IN THE FACE OF MY SUICIDAL HISTORY.
28     MY 8TH, AMENDMENT RIGHTS WERE VIOLATED.

1 THESE THREE PERPETRATORS, VIOLATED P.C. § 147.
2 OFFICER OPPRESSING A PRISONER, AND P.C. § 206.,
3 TORTURE.

4 THESE CRIMES AGAINST HUMANITY MUST BE
5 PURSUED. I REQUEST THE HANDFORD DISTRICT
6 ATTORNEY'S OFFICE, TO CHARGE THESE PEOPLE, AND
7 THE MEMBERS OF THE DRB (SEE ATTACHED 5-25-04
8 CHRONO) FOR VIOLATION OF P.C. § 147.- 206, AND
9 ATTEMPT OF MURDER, AND TO CONTACT THE OFFICE
10 OF INTERNAL AFFAIRS, AND INSPECTOR GENERAL'S
11 OFFICE, TO INVESTIGATE THE DRB OF DOCU-
12 MENT " 5-25-04, ATTACHED HERE TO.

13 THE PROSECUTORS FUNCTION IS TO SEEK JUSTICE,
14 NOT JUST CONVICTIONS. THIS VIEW OF PROSECUIAL
15 RESPONSIBILITIES WAS AUTHORITATIVELY STATED
16 BY THE U.S. SUPREME COURT IN BERGER V. U.S.
17 (1935) 295 U.S. 78,88. " GUILT SHALL NOT
18 ESCAPE OR INNOCENT SUFFER.

19 CALIFORNIA COURTS HAVE REPEATEDLY STATED
20 THE SAME VIEW OF THE PROSECUTORS ROLE. SEE
21 PEOPLE V. SUPERIOR COURT (GREER) (1977)
22 19 C3D 255. 266 137 CR 476 -483.

23 THE AMERICAN BAR ASSOCIATION'S CODE OF PROFESS-
24 IONAL RESPONSIBILITY STATES: THE RESPONSIBILITY
25 OF A PUBLIC PROSECUTOR DIFFERS FROM THAT OF
26 THE USUAL ADVOCATE. HIS DUTY IS TO SEEK JUSTICE
27 NOT MERELY CONVICT." ABA CODE PROF RESP EC-7/3,
28 AT 336 (AMENDED AUG. 1977). THE PROSECUTOR'S

6.

1  WIDE DISCRETION IS LIMITED, HOWEVER, BY THE
2  EQUAL PROTECTION CLAUSES OF THE FEDERAL
3  AND STATE CONSTITUTIONS. ENFORCEMENT OF THE
4  LAW THAT IS NOT DISCRIMINATORY ON ITS
5  FACE IN A MANNER THAT DISCRIMINATES ARBITRAR-
6  ILY, AGAINST AN IDENTIFIABLE GROUP OR
7  "CLASS OF PERSONS", VIOLATES THE EQUAL PROTEC-
8  TION CLAUSE OF THE FEDERAL CONSTITUTION.

9      I REQUEST THE HANDFORD DISTRICT ATTORNEY
10  TO PROSECUTE, SEEKING JUSTICE, AND CONTACT
11  THE PROPER AUTHORITIES, TO INVESTIGATE, AND
12  INTERVIEW ME, AND ORDER CDC TO HOUSE
13  ME IN PHU.

14      I REQUIRE JUSTICE, AS MY FUTURE HEALTH
15  AND PRESENT WELL BEING IS IN DANGER, AS
16  I STRUGGLE TO SURVIVE THE ILLEGAL RIGORS
17  OF S.C., AND ITS DEMAND OF CHANGE AND
18  THINKING PATTERNS, ACTING AND FEELING.
19  THESE TRANSFORMATIONS HAVE THE POTENTIAL
20  TO RIGIDFY, TO BECOME DEEPLY SET IN WAYS
21  OF BEING. THESE ARE PERMANENT CHANGES.

22      I NOTICE MY BEHAVIOR INCREASINGLY
23  BECOMING DSYFUNCTIONAL. AND SUSTAIN, A
24  LARGE FEAR WHEN I RETURN TO A NORMAL
25  SOCIAL SETTING. THE MENTAL TORTURE IN MY
26  DAY TO DAY LIFE IN SOLITARY IS CAREFULLY
27  AND COMPLETELY CIRCUMSCRIBED, THAT I LOSE
28  THE ABILITY TO SET LIMITS FOR MYSELF AND TO

7.

1 | CONTROL MY LIFE THROUGH INTERNAL MECHANISMS.
2 | I FEAR EVEN A MODICUM OF FREEDOM BECAUSE
3 | I HAVE LOST MY SENSE OF HOW TO BEHAVE (AFTER
4 | 24 YR.S IN PRISON) IN THE ABSENCE OF CONSTANT-
5 | LY ENFORCED RESTRICTIONS AND TIGHT EXTERNAL
6 | STRUCTURE, AND UBIQUITOUS PHYSICAL RESTRAINTS.
7 | CDC HAS STRIPPED ME OF ANY OPPORTUNITY TO ORG-
8 | ANISE, MY LIFE BECAUSE, FOR SO LONG IVE BEEN
9 | SUBJECTED TO THIS ACTION FOR PROLONGED PERIODS
10 | OF TIME. THE IMMEDIATE REPERCUSSION I EN-
11 | QUIRE IS CHRONIC APATHY, LETHARGY, DEPRESS-
12 | ION, DESPAIR AND SUICIDE.

13 | THE FEAR I EXPERIENCE IS THE ABSENCE
14 | OF NORMAL INTERPERSONNEL CONTACT AND ANY
15 | DEGREE OF A MEANINGFUL SOCIAL CONTEXT HAS
16 | BRED A FEELING OF UNREALITY, THAT IN-
17 | VADES MY EXISTENCE. I HAVE LOST MY
18 | INDIVIDUALITY, AND IDENITY, THAT AT ONE
19 | TIME WAS SOCIAL.

20 | MY GENUINE FORM OF SOCIAL CONTACT AND THE
21 | ABCENSE OF THE CHANCE TO GROUND MY THOUGHTS,
22 | FEELINGS, IN A HUMAN CONTEXT AS I DID PRIOR
23 | TO S.C.. IS A DISCONNECTED, LOSS OF SENSE OF
24 | SELF. S.C.. LITERALLY CREATES A LOSS OF
25 | IDENITY. AND I WONDER IF IM EVEN CONNEC-
26 | TED TO A LARGER SOCIAL WORLD THAT I WAS
27 | BORN IN.

28 | I HAVE WATCHED AS OTHER VICTIMS OF S.C.

8.

1 LOSE THEIR IDENITY TO THE POINT WHERE
2 THEY CREATE A CONFRONTATION WITH STAFF
3 IN ORDER TO REALISE THEIR STILL CAPABLE
4 OF ELICITING A GENUINE RESPONSE FROM
5 OTHER HUMAN BEINGS.

6 CDC IS TORTURING ME, WHEN I FIND MYSELF
7 INCREASINGLY UNFAMILIAR AND UNCOMFORT-
8 ABLE WITH ANY FORM OF SOCIAL INTERACTION.
9 S.C. IS SO PAINFUL AND SURREAL THAT
10 I CREATE MY OWN REALITY, A WORLD OF
11 FANTASY.

12 MENTAL HEALTH FORMAT CANNOT RELIEVE
13 THE MENTAL PAIN AND SUFFERING. THERE
14 CANNOT BE ANY TOLERABLE EQUILIBRIUM IN
15 THIS PSYCHOLOGICAL HOSTILE ENVIROMENT.

16 LONG TERM DEPRIVATIONS, IS TORTURE AND
17 BEING DENIED A SOCIAL PLATFORM, THROUGTH
18 WHICH I CAN INTELLIGENTLY SHARE MY EX-
19 PERIENCES OF HEIGHTENED INJUSTICE, INCREAS-
20 INGLY DEFINES MY OPPOSITION TO PRISON ADMIN-
21 ISTRATION. I CANNOT RECOVER FROM THE ATYPICAL
22 AND TRAUMATIC EXPERIENCES, AND I FEAR
23 BEYOND ALL PRIOR ADAPTATIONS THAT I MAY
24 NEVER BE NORMAL IN SOCIETY AND RESUME
25 A NORMAL HEALTHY PRODUCTIVE LIFE.

26 IT IS A CRIME AGAINST HUMANITY, AND
27 AMERICAN LAW AND JUSTICE, TO SUBJECT
28 ANY PRISONERS TO SUCH TORTURE. AND MORALITY

9.

1   AND UNETHICAL.
2   THE DELIBERATE PSYCHOLOGICAL ASSAULT OF MY
3   DEHUMANIZED ISOLATION, AND THE FEAR OF
4   HAVING MY SUFFERING DEEPEN TO SOMETHING
5   MORE PERMANENT AND DISABLEING, IS A CRIME
6   AGAINST HUMANITY. AND CAUSES MY SUICIDAL...
7     I BELIEVE S.C. HAS DISABLED ME FOR THE RE-
8   MAINDER OF MY LIFE.
9     CDC HAS FAILED TO DEAL WITH THE PSYCHOLOG-
10  ICAL CONSEQUENCES OF HOUSING PRISONERS
11  UNDER SUCH CONDITIONS THAT POSE SUCH SIG-
12  NIFICANT MENTAL HEALTH RISKS.
13    THE SHU, OR S.C.. IN CALIFORNIA OPERATES
14  BELOW CONSTITUTIONAL MINIMUM STANDARDS
15  VIOLATING 8TH AMENDMENT RIGHTS. THE
16  EXTREME ISOLATION, AND REGRESSIVE CONDITIONS
17  OF S.C. CAUSE SUFFERING, AND IS A INCU-
18  BATOR OF PSYCHOSIS, SEEDING MENTAL DISORDERS
19  THUS EXACERBATING ILLNESS, SUFFERING
20  INFIRMITIES. THIS S.C. IS DEPRAVED, IRREP-
21  ARABLE HARMFUL, AND CAUSES EMOTIONAL DAM-
22  AGE FOR LIFE.
23      FINALY IT IS IMPORTANT TO RECOGNIZE
24  THAT PLACING PEOPLE IN CONDITIONS OF CONFINE-
25  MENT THAT WE KNOW IN ADVANCE ARE LIKELY
26  TO PSYCHOLOGICALLY HARM AND ENDANGER THEM,
27  CANNOT BE MORALLY JUSTIFIED MERELY THROUGH
28  ASSURANCES THAT IF AND WHEN THEY DO DE-

10.

1  TERIORATE THE PRISON SYSTEM WILL MAKE A
2  GOOD FAITH EFFORT TO IDENTIFY THE DAMAGE
3  AND WORK TO REPAIR IT.
4  THERE ARE LEGAL AND MORAL ISSUES AT THE
5  CORE OF THIS ISSUE. THE FACTS REMAINE THAT
6  SHU OR S.C. CONDITIONS INFLICT EXTRAORDINARY
7  LEVELS OF PSYCHOLOGICAL PAIN AND CREATE
8  SUBSTANTIAL MENTAL HEALTH RISKS.
9      I ASK YOU ALL TO TAKE ACTION, INCLUDING
10  INVESTIGATIONS MAKING SURE THE CDC DOES
11  NOT CONTINUE, TO IGNORE, OVERLOOK OR
12  MINIMISE THIS SUFFERING BEHAVIOR.
13     AND I SAY TO YOU, THAT SUICIDE IS FAR HU-
14  MANE THEN A SLOW MENTAL DEATH
15    THIS IS MY LAST VOICE TO THE AUTHORITIES
16  THAT BE, TO STEM THE TIDE OF BRUTALITY
17  AND DEPRESSION. THANK YOU. I AM,
18  SINCERELY,
19
20  DATED: NOV, 28, 2005
21                              Kenny Morrow
22
23
24
25
26
27
28

11

1  KENNY MORROW C-53683
2  9B-1L-32/P.O.BOX 5481
3  CORCORAN CA. 93212
4
5  NOVEMBER 28, 2005
6
7  RE: (P.C. § 147. OPPRESSING A PRISONER)- (P.C.§ 206.-
8     TORTURE)-(VIOLATION OF CALIFORNIA CONSTITUTION
9     ARTICLE "I" § 17-27) BY THE CALIFORNIA DEPT., OF
10    CORRECTIONS, & REHABILITATION — IRREPARABLE
11    HARM. CHARGE AND PROSECUTE REQUEST, (PURSUANT
12    TO GOVT, C. § 26501. et al); (GOVT C §§ 2600.-
13    26501, "CHARGING CRIMES"); (PEN C §§ 917-935;)
14    GRAND JURY;) (CCP 833, CIVIL COMPROMISE.)
15
16
17  SENIOR DISTRICT ATTORNEY
18  1900 WEST LACEY BOULEVARD
19  HANFORD CA. 93230
20
21  DEAR PROSECUTOR:
22    MY REQUEST CAN BE FOUND AROUND THE FACTS HEREIN.
23       I AM INCARCERATED IN CORCORAN STATE
24  PRISON, SERVING 26 YEARS TO LIFE, SEE ABSTRACT-
25  OF JUDEMENT EX: "A" ATTACHED.
26    I AM BEING SUBJECT TO IRREPARABLE HARM
27  BY THE CDC&R, WHICH HAS CAUSED PERMANENT
28  MENTAL DAMAGE.

SENATE JUD. DIST. C.T. - JUDGE Karlton
11-30-05

1.

1   GENERAL, ATTORNEY GENERAL (DEPUTY) (HANFORD) DISTRICT
2   ATTORNEYS OFFICE, CDC DIRECTOR, CHIEF CDC PSYCHIATRIST
3   FISHBACK, UNITED NATIONS HEADQUARTERS, U.S.
4   ATTORNEY'S OFFICE (NORTHERN DISTRICT) STATE BAR OF
5   CALIFORNIA.

6       I AM IN SOLITARY CONFINEMENT FOR SAFETY ISSUES
7   FOR ASSISTING PRISON OFFICIALS SAVE LIFES. THUS THE
8   INMATE POPULATION THREATENED MY SAFETY FOR ASS-
9   ISTING THE ENEMY. INSTEAD OF HOUSING ME IN
10  CORCORNS PROTECTIVE HOUSING UNIT (PHU) CDC
11  HOUSED ME IN A PUNITIVE <u>SECURITY HOUSING UNIT</u>
12  (SHU) <u>SOLITARY CONFINEMENT</u>, KNOWING I FIT
13  THE CRITERIA TO BE HOUSED IN PHU.

14      I SPENT (17) SEVENTEEN YEARS IN SOLITARY CONFINE-
15  MENT, PRIOR TO BEING RE-HOUSED AGAIN IN SOLITARY.
16      MY MEDICAL FILE REFLECTS, THAT WHEN HOUSED
17  IN SOLITARY CONFINEMENT. IT CAUSES PSYCHOLOGICAL
18  TRAUMA. SYMPTOMS OF PSYCHOPATHOLOGY ARE MANI-
19  FESTED, I COMMITTED SUICIDE ATTEMPTS ON THE FOLL-
20  OWING DATES. 1990-1991-1992-1993-1994-1997, SEE
21  ATTACHED CDC 128-G, MEMORANDUM DATED JAN. 28, 2004.
22      DUE TO THE YEARS IN SOLITARY CONFINEMENT, I
23  SUFFER FROM A HOST OF MENTAL ILLNESS, BROUGHT
24  ON BY CDC, AND BANNED IN THIS COUNTRY, AND
25  THE UNITED NATIONS (NUREMBURG PRINCIPLES) IN
26  1946, CONFIRMED, DECLARED, CODIFIED, CREATED, THE
27  UNIVERSAL DEFINITIONS OF CRIMES AGAINST HUMANITY
28  SEE NUREMBERG PRINCIPLES. ARTICLE 6: (a.) (b.) (c.)

2.

1  AND THE CONVENTION AGAINST TORTURE.

2  I HAVE BEEN REPEATEDLY INHIBITED BY PRISON

3  OFFICIALS AT CORCORAN, WHERE BY ALL MY APPEALS

4  ADMINISTRATED GRIEVANCES, DISAPPEAR IN THIS

5  PRISONS INADEQUATE APPEALS SYSTEM. THERE FORE

6  THIS LETTER IS MY ONLY CHANCE TO RELIEF.

7      SOLITARY CON FINEMENT ( FOR BREVITY HEREAFTER

8  CALLED S.C.) IS CALLED BY MANY HEADINGS, SHU-

9  ASU- MSU- PSU- SUPERMAX.THESE LIVING CONDITIONS

10  CAUSE A HOST OF ILLEGAL, SHOCKING PSYCHOLOGICAL

11  PAIN, AND EMOTIONAL PSYCHOLOGICAL DAMAGE.

12  SPECIFICALLY: LOSS OF SANITY, APPETITE, SLEEP,

13  DEPREVATION, ANXIETY, PANIC, RAGE, PARANOIA,

14  SELF MUTILATIONS, SUICIDE, HEADACHES, HALL-

15  UCINATIONS, ETC.

16  THE USE OF THIS CONFINEMENT IS AKIN TO BRAIN

17  WASHING, AND TORTURE. THESE NEGATIVE EFFECTS

18  FROM.S.C. ARE ANALOGOUS AS ACUTE REACTIONS

19  SUFFERED BY TORTURE AND TRAUMA VICTIMS, IN-

20  CLUDING POST- TRAUMATIC STRESS DISORDER.OR

21  PTSD, AND IS NO LESS DIFFERENT THEN THE KIND

22  OF PSYCHIATRIC SEQUELAE THAT PLAGUE VICTIMS

23  OF WHAT IS CALLED, "DEPRIVATION AND CONSTRAINT"

24  (TORTURE TECHNIQUES) (e.g. SOMNIER AND GEN-

25  EFKE 1986) PSYCHIATRICT JOURNAL.

26      I AM PLAGUED BY HYPERTENSION, SUICIDAL

27  IDEOLOGY, AUDITORY COMMANDS, EMOTIONAL

28  BREAKDOWNS, CHRONIC DEPRESSION, STEMMING

3.

1 FROM THIS SADISTIC HOUSING.

2 MANY OF THE FOLLOWING TORTURES I SUFFER FROM
3 ARE HEART PALPATATIONS. OVER SENSITIVITY TO STIM-
4 ULATION. LOSS OF MEMORY, SOCIAL WITHDRAWL, EMO-
5 TIONAL FLATNESS, PERCEPTUAL DISTORTIONS ETC.

6 I AM SUFFERING UNWANTON PAIN, CRUEL AND UN-
7 USUAL PUNISHMENT. I AM CONTINUALLY TRYING TO
8 ADJUST TO THIS SADISTIC ENVIROMENT. AND FURTHER
9 WITH DRAWL SOCIALLY, TO BE INTROSPECTIVE AND AVOID
10 SOCIAL CONTACT.

11 I FIND THE GREATER MY AWARENESS OF THESE HORR-
12 ORS (THAT ATTACK MY CONSCIOUSNESS) THE HIGHER THE
13 FREQUENCY AND EXTENT OF NEGATIVE EFFECTS.

14 ON 5-25-05, THE CALIFORNIA DEPARTMENT OF
15 CORRECTIONS (CDC) DEPARTMENTAL REVIEW BOARD (DRB)
16 APPROVED MY HOUSING AND OUT OF STATE TRANS-
17 FER, WITH OUT CONSIDERING MY MENTAL HEALTH
18 STATE, VIOLATING THE LAW SEE ATTACHED
19 CNC 128-G, DATED 5-25-05. THE DRB WAS
20 AWARE IN ADVANCE I HAD A SEVERE SUICIDE
21 PSYCHO PATHOLOGICAL, HISTORY WHEN HOUSED IN
22 SOLITARY CON FINE MENT, THUS SHOWING DELIB-
23 ERATE INDIFFERENCE. SEE ATTACHED MEMORAN-
24 DUM DATED 1-28-2004.

25 THE PUNISHMENT MUST NOT OUT DO THE CRIME,
26 AND IN NO WAY WILL THE PUNISHMENT CAUSE
27 DAMAGE FOR THE REST OF A PRISONERS LIFE.

28 I CANNOT FILE APPEAL OR DRB DECISION SEE

4.

1  CALIFORNIA CODE OF REGULATION (CCR) TITLE 15., DIV-
2  ISION 3, ARTICLE 7" SECTION 3084.1 (a.)
3      SCREENING PROCEDURES HAVE BEEN IMPLEMENTED
4  IN CALIFORNIA BY THE IN RE COLEMAN V. WILSON
5  CIVIL CASE (1995) PRISON OFFICIALS ARE TO SCREEN
6  ALL PRISONERS IN "ADVANCE" BEFORE S.C., SHU SEEKING
7  OUT MENTAL HEALTH HISTORY PRISONERS. THE DRB
8  WONT ALLOW ME TO APPEIAL THEIR SENTENCE OF
9  INDETERMINATE SHU HOUSING, WHICH IS A PUNI-
10 TIVE ENVIRONMENT.
11      CDC DRB FAILED TO SEEK THEE ABOVE, AND
12 MENTAL HEALTH STAFF AS WELL, AND I SUCCUM-
13 BED TO SUICIDE IDEATION UPON ARRIVIAL IN
14 SHU - S.C. IT IS NOT ENOUGH TO PROVIDE
15 PRISONERS WITH MENTAL HEALTH SERVICES
16 AFTER PRISONERS EXPERIENCED A MENTAL BREAK
17 DOWN.
18      ON 9-7-05, ASSOCIATE WARDEN YAMAMOTO
19 DR. JUAREZ, AND MENTAL HEALTH SUPERVISOR
20 SEYKORA STRIPPED ME OF MENTAL HEALTH IN-
21 VOLVMENT, AND ORDERED ME TO BE HOUSED
22 IN S.C. SHU., EVEN WHEN I NOTIFIED THEM
23 I WOULD DECOMPENSATE SUFFERING IN PAIN,
24 AND I WILL COMMITT SUICIDE. DR. JUAREZ AND
25 SUPERVISOR SEYKORIA SAID THEIR HANDS ARE TIED
26 THAT CUSTODY (YAMAMOTO) CONTROLS MY HOUSING
27 EVEN IN THE FACE OF MY SUICIDAL HISTORY.
28      MY 8TH, AMENDMENT RIGHTS WERE VIOLATED.

5.

1 THESE THREE PERPETRATORS, VIOLATED P.C. § 147.
2 OFFICER OPPRESSING A PRISONER. AND P.C. § 206.,
3 TORTURE.

4 THESE CRIMES AGAINST HUMANITY MUST BE
5 PURSUED. I REQUEST THE HANDFORD DISTRICT
6 ATTORNEYS OFFICE, TO CHARGE THESE PEOPLE, AND
7 THE MEMBERS OF THE DRB (SEE ATTACHED) 5-25-04
8 CHRONO) FOR VIOLATION OF P.C. § 147.- 206, AND
9 ATTEMPT OF MURDER. AND TO CONTACT THE OFFICE
10 OF INTERNAL AFFAIRS, AND INSPECTOR GENERALS
11 OFFICE. TO INVESTIGATE THE DRB OF DOCU-
12 MENT "5-25-04, ATTACHED HERE TO.

13 THE PROSECUTORS FUNCTION IS TO SEEK JUSTICE,
14 NOT JUST CONVICTIONS. THIS VIEW OF PROSECUTAL
15 RESPONSIBILITIES WAS AUTHORITATIVELY STATED
16 BY THE U.S. SUPREME COURT IN BERGER V. U.S.
17 (1935) 295 U.S. 78, 88. — GUILT SHALL NOT
18 ESCAPE OR INNOCENT SUFFER.

19 CALIFORNIA COURTS HAVE REPEATEDLY STATED
20 THE SAME VIEW OF THE PROSECUTORS ROLE. SEE
21 PEOPLE V. SUPERIOR COURT (GREER) (1977)
22 19 C3D 255, 266 137 CR 476 -483.

23 THE AMERICAN BAR ASSOCIATIONS CODE OF PROFESS-
24 IONAL RESPONSIBILITY STATES: THE RESPONSIBILITY
25 OF A PUBLIC PROSECUTOR DIFFERS FROM THAT OF
26 THE USUAL ADVOCATE: HIS DUTY IS TO SEEK JUSTICE
27 NOT MERELY CONVICT." ABA CODE PROF RESP EC-7/3,
28 AT 33C (AMENDED AUG. 1977). THE PROSECUTOR'S

6.

1 | WIDE DISCRETION IS LIMITED, HOWEVER, BY THE
2 | EQUAL PROTECTION CLAUSES OF THE FEDERAL
3 | AND STATE CONSTITUTIONS. ENFORCEMENT OF THE
4 | LAW THAT IS NOT DISCRIMINATORY ON ITS
5 | FACE IN A MANNER THAT DISCRIMINATES ARBITRAR-
6 | ILY, AGAINST AN IDENTIFIABLE GROUP OR
7 | 'CLASS OF PERSONS", VIOLATES THE EQUAL PROTEC-
8 | TION CLAUSE OF THE FEDERAL CONSTITUTION.

9 | I REQUEST THE HANDFORD DISTRICT ATTORNEY
10 | TO PROSECUTE, SEEKING JUSTICE, AND CONTACT
11 | THE PROPER AUTHORITIES, TO INVESTIGATE, AND
12 | INTERVIEW ME, AND ORDER CDC TO HOUSE
13 | ME IN PHU.

14 | I REQUIRE JUSTICE, AS MY FUTURE HEALTH
15 | AND PRESENT WELL BEING IS IN DANGER, AS
16 | I STRUGGLE TO SURVIVE THE ILLEGAL RIGORS
17 | OF S.C., AND ITS DEMAND OF CHANGE AND
18 | THINKING PATTERNS, ACTING AND FEELING.
19 | THESE TRANSFORMATIONS HAVE THE POTENTIAL
20 | TO RIGIDIFY, TO BECOME DEEPLY SET IN WAYS
21 | OF BEING. THESE ARE PERMANENT CHANGES.

22 | I NOTICE MY BEHAVIOR INCREASINGLY
23 | BECOMING DSYFUNCTIONAL, AND SUSTAIN, A
24 | LARGE FEAR WHEN I RETURN TO A NORMAL
25 | SOCIAL SETTING. THE MENTAL TORTURE IN MY
26 | DAY TO DAY LIFE IN SOLITARY IS CAREFULLY
27 | AND COMPLETELY CIRCUMSCRIBED, THAT I LOSE
28 | THE ABILITY TO SET LIMITS FOR MYSELF AND TO

7.

1 CONTROL MY LIFE THROUGH INTERNAL MECHANISMS.
2 I FEAR EVEN A MODICUM OF FREEDOM BECAUSE
3 I HAVE LOST MY SENSE OF HOW TO BEHAVE (AFTER
4 24 YR.S IN PRISON) IN THE ABSENCE OF CONSTANT-
5 LY ENFORCED RESTRICTIONS AND TIGHT EXTERNAL
6 STRUCTURE, AND UBIQUITOUS PHYSICAL RESTRAINTS.
7     CDC HAS STRIPPED ME OF ANY OPPORTUNITY To ORG
8 ANISE, MY LIFE BECAUSE, FORSO LONG IVE BEEN
9 SUBJECTED TO THIS ACTION FOR PROLONGED PERIODS
10 OF TIME. THE IMMEDIATE REPERCUSSION I EN-
11 QUIRE IS CHRONIC APATHY, LETHARGY, DEPRESS-
12 ION, DESPAIR AND SUICIDE.

13     THE FEAR I EXPERIENCE IS THE ABSENCE
14 OF NORMAL INTERPERSONNEL CONTACT AND ANY
15 DEGREE OF A MEANINGFUL SOCIAL CONTEXT HAS
16 BRED A FEELING OF UNREALITY, THAT IN-
17 VADES MY EXISTENCE. I HAVE LOST MY
18 INDIVIDUALITY, AND IDENITY, THAT AT ONE
19 TIME WAS SOCIAL.

20     MY GENUINE FORM OF SOCIAL CONTACT AND THE
21 ABSENSE OF THE CHANCE TO GROUND MY THOUGHTS,
22 FEELINGS, IN A HUMAN CONTEXT AS I DID PRIOR
23 TO S.C.. IS A DISCONNECTED, LOSS OF SENSE OF
24 SELF. S.C., LITERALLY CREATES A LOSS OF
25 IDENITY. AND I WONDER IF IM EVEN CONNEC-
26 TED TO A LARGER SOCIAL WORLD THAT I WAS
27 BORN IN.

28     I HAVE WATCHED AS OTHER VICTIMS OF S.C.

8.

1  LOSE THEIR IDENITY TO THE POINT WHERE
2  THEY CREATE A CONFRONTATION WITH STAFF
3  IN ORDER TO REALISE THEIR STILL CAPABLE
4  OF ELICITING A GENUINE RESPONSE FROM
5  OTHER HUMAN BEINGS.

6    CDC IS TORTURING ME, WHEN I FIND MYSELF
7  INCREASINGLY UNFAMILIAR AND UNCOMFORT-
8  ABLE WITH ANY FORM OF SOCIAL INTERACTION,
9    S.C.  IS SO PAINFUL AND SURREAL THAT
10  I CREATE MY OWN REALITY, A WORLD OF
11  FANTASY.

12    MENTAL HEALTH FORMAT CANNOT RELIEVE
13  THE MENTAL PAIN AND SUFFERING. THERE
14  CANNOT BE ANY TOLERABLE EQUILIBRIUM IN
15  THIS PSYCHOLOGICAL HOSTILE ENVIROMENT.
16    LONG TERM DEPRIVATIONS, IS TORTURE AND
17  BEING DENIED A SOCIAL PLATFORM, THROUGTH
18  WHICH I CAN INTELLIGENTLY SHARE MY EX-
19  PERIENCES OF HEIGHTENED INJUSTICE, INCREAS-
20  INGLY DEFINES MY OPPOSITION TO PRISON ADMIN-
21  ISTRATION. I CANNOT RECOVER FROM THE ATYPICAL
22  AND TRAUMATIC EXPERIENCES, AND I FEAR
23  BEYOND ALL PRIOR ADAPTATIONS THAT I MAY
24  NEVER BE NORMAL IN SOCIETY AND RESUME
25  A NORMAL HEALTHY PRODUCTIVE LIFE.
26    IT IS A CRIME AGAINST HUMANITY, AND
27  AMERICAN LAW AND JUSTICE, TO SUBJECT
28  ANY PRISONERS TO SUCH TORTURE, AND MORALITY

9.

1  AND UNETHICAL.
2    THE DELIBERATE PSYCHOLOGICAL ASSAULT OF MY
3  DEHUMAN(ZED) ISOLATION, AND THE FEAR OF
4  HAVING MY SUFFERING DEEPEN TO SOMETHING
5  MORE PERMANENT AND DISABLEING, IS A CRIME
6  AGAINST HUMANITY. AND CAUSES MY SUICIDAL ...
7    I BELIEVE S.C. HAS DISABLED ME FOR THE RE-
8  MAINDER OF MY LIFE.
9    CDC HAS FAILED TO DEAL WITH THE PSYCHOLOG-
10 ICAL CONSEQUENCES OF HOUSING PRISONERS
11 UNDER SUCH CONDITIONS THAT POSE SUCH SIG-
12 NIFICANT MENTAL HEALTH RISKS.
13   THE SHU, OR S.C., IN CALIFORNIA OPERATES
14 BELOW CONSTITUTIONAL MINIMUM STANDARDS
15 VIOLATING 8TH AMENDMENT RIGHTS. THE
16 EXTREME ISOLATION, AND REGRESSIVE CONDITIONS
17 OF S.C. CAUSE SUFFERING, AND IS A INCU-
18 BATOR OF PSYCHOSIS, SEEDING MENTAL DISORDERS
19 THUS EXACERBATING ILLNESS, SUFFERING
20 INFIRMITIES. THIS S.C. IS DEPRAVED, IRREP-
21 ARABLE HARMFUL, AND CAUSES EMOTIONAL DAM-
22 AGE FOR LIFE.
23   FINALY IT IS IMPORTANT TO RECOGNIZE
24 THAT PLACING PEOPLE IN CONDITIONS OF CONFINE-
25 MENT THAT WE KNOW IN ADVANCE ARE LIKELY
26 TO PSYCHOLOGICALLY HARM AND ENDANGER THEM
27 CANNOT BE MORALLY JUSTIFIED MERELY THROUGH
28 ASSURANCES THAT IF AND WHEN THEY DO DE-

10.

1  TER IORATE THE PRISON SYSTEM WILL MAKE A
2  GOOD FAITH EFFORT TO IDENTIFY THE DAMAGE
3  AND WORK TO REPAIR IT.

4   THERE ARE LEGAL AND MORAL ISSUES AT THE
5  CORE OF THIS ISSUE. THE FACTS REMAINE THAT
6  SHU OR S.C. CONDITIONS INFLICT EXTRA ORDINARY
7  LEVELS OF PSYCHOLOGICAL PAIN AND CREATE
8  SUBSTANTIAL MENTAL HEALTH RISKS.

9     I ASK YOU ALL TO TAKE ACTION, INCLUDING
10  INVESTIGATIONS MAKING SURE THE CDC DOES
11  NOT CONTINUE TO IGNORE, OVERLOOK OR
12  MINIMISE THIS SUFFERING BEHAVIOR.

13     AND I SAY TO YOU, THAT SUICIDE IS FAR HU-
14  MANE THEN A SLOW MENTAL DEATH.

15   THIS IS MY LAST VOICE TO THE AUTHORITIES
16  THAT BE, TO STEM THE TIDE OF BRUTALITY
17  AND DEPRESSION. THANK YOU. I AM,
18  SINCERELY,

19
20  DATED: NOV, 28, 2005
21                                    Kenny MORROW
22
23
24
25
26
27
28

11

# EXHIBIT A

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
**ABSTRACT OF JUDGMENT**
FOR COMMITMENT TO STATE PRISON

| THE PEOPLE OF THE STATE OF CALIFORNIA | | |
|---|---|---|
| PLAINTIFF | DATE | 8/20/87 |
| VS | CASE NUMBER: | CRN 12042 |
| | PRESENT | DON MARTINSON |

| | JUDGE OF THE SUPERIOR COURT |
|---|---|
| | Edwin L. Miller, Jr., District Attorney |

Kenneth Ray MORROW
DEFENDANT

| By | NANCY LLORENS | DEPUTY |
|---|---|---|

| | R. CAINE |
|---|---|
| | COUNSEL FOR DEFENDANT |
| | K. KENNARD/ R. SIMS |
| | CLERK |
| | M. PROVINSE |
| | REPORTER |

PROBATION HAVING HERETOFORE GRANTED AND SAID PROBATION HAVING BEEN REVOKED ON
XX APPLICATION FOR PROBATION IS DENIED.    THE DEFENDANT (IS DULY ARRAIGNED) (WAIVES FORMAL ARRAIGNMENT).

Count No.   01

of _____ GUILTY _____ . WHEREAS THE SAID DEFENDANT ON HIS PLEA _____ having
(GUILTY, NOT GUILTY, FORMER CONVICTION OR ACQUITTAL, ONCE IN JEOPARDY, NOT GUILTY BY REASON OF INSANITY)

been convicted by ___ PLEA ___ of ___ MURDER, 1st degree
(THE COURT OR JURY)    (DESIGNATION OF CRIME AND DEGREE IF ANY, INCLUDING FACT THAT IT CONSTITUTES A SECOND OR SUBSEQUENT, IF THAT

AFFECTS THE SENTENCE)

N VIOLATION OF _____ PC 187 _____
(REFERENCE TO CODE OR STATUTE, INCLUDING SECTION AND SUBSECTION THEREOF, IF ANY VIOLATED.)

YEAR CRIME COMMITTED IS ___ 1987 ___ .

THE DEFENDANT IS CREDITED FOR TIME SPENT IN CUSTODY, _319_ TOTAL DAYS, INCLUDING:
ACTUAL LOCAL TIME _213_ PC 4019(b) CREDIT _106_ , STATE INSTITUTIONS TIME _____ .

HE COURT FINDS:        (*IF NO FINDING MADE, ENTER "NO FINDING MADE")

. THE DEFENDANT ___ was ___ ARMED WITH A DEADLY WEAPON AT THE TIME OF HIS COMMISSION
(WAS OR WAS NOT)
F THE OFFENSE WITHIN THE MEANING OF Sections 969c and 12022 of the Penal Code.
no finding made        . THE DEFENDANT _____ A FIREARM IN HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING
(USED OR DID NOT USE)
F Sections 969d and 12022.5 OF THE Penal Code.
no finding made        . THE DEFENDANT _____ ARMED AT THE TIME OF HIS COMMISSION OF THE OFFENSE WITHIN THE
(WAS OR WAS NOT)
MEANING OF Section 1203 of the Penal Code and that weapon was

COPY

0001

IV. S

CRN12042 DA 31890201

32

TE 03-20-87 09:00 AT 97108692 M PROB HEAR-SENTENCING

PRESENT: HON. DON MARTINSON JUDGE PRESIDING DEPARTMENT B

CLERK _____ REPORTER M. Provine

THE PEOPLE OF THE STATE OF CALIFORNIA
VS
N. Harves
DEPUTY DISTRICT ATTORNEY

MORROW KENNETH R. CAINE
DEFENDANT ATTORNEY FOR DEFENDANT (APPT'D/RETAINED)
P.O Sawina

VIOLATION OF *PC187 w/12022(b)

☐ DEFENDANT ☐ NOT PRESENT ☐ ARRAIGNED FOR JUDGMENT ☑ WAIVES ARRAIGNMENT
☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐ WAIVES HEARING
PROBATION IS: ☑ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ____ YEARS (FORMAL/SUMMARY)

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION STAYED (SEE BELOW FOR TERM).
CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:
☐ COMMITMENT TO SHERIFF FOR ____ DAYS. ☐ ADULT INSTITUTIONS RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.
☐ FINE OF $ ____ INCLUDING PENALTY ASSESSMENT AT $ ____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.
☐ RESTITUTION OF $ ____ TO VICTIM/RESTITUTION FUND AT $ ____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.
☑ RESTITUTION/FINE OF $ 250.00 PER GC 13967, STAYED PER PC 1202.4(b). forthwith or per PC 2085.5
☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS.
☐ REGISTRATION PER PC 290/H&S 11590

CREDIT FOR TIME SERVED
213 DAYS LOCAL
____ DAYS STATE INST.
106 DAYS PC 4019
319 TOTAL DAYS CREDIT

☑ DEFENDANT IS COMMITTTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF 4 YEARS.
(SEE BELOW FOR ADDITIONAL COUNTS) alleg. PC 12022(b) 1 yr. count consecutive
☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐ PER W&I 707.2 ☐ PER W&I 731
(SEE BELOW FOR FINDINGS)
☑ DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐ DEFENDANT IS ADVISED REGARDING PAROLE

DEFENDANT REMAINS AT LIBERTY:
☐ ON BOND POSTED $ ____
☐ ON OWN RECOGNIZANCE
☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☑ WITHOUT BAIL
☐ WITH BAIL SET AT $ ____

☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
CONTINUED TO/SET FOR ____ AT ____ M IN DEPT. ____ ON MOTION OF
COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON:
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR ____ AT ____ M IN DEPT.

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ ____ SERVICE WITHHELD TO ____.
☐ BENCH WARRANT ISSUED ____ IS RECALLED.
☐ BOND FORFEITED BOND AMOUNT ____ BOND NO. ____ BOND COMPANY ____ AGENT ____
☐ BOND IS EXONERATED.

☐ PROCEEDINGS SUSPENDED PER ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY

The foregoing instrument is a full, true and correct copy of
the original on file in this office.
Attest OCT 2 1999 19
ROBERT D. ZUMWALT, County Clerk and Clerk of the Superior Court of the State
of California, in and for the County of San Diego
By ____ Deputy

# EXHIBIT B

CDC 128-B (Rev. 4/74)

NAME and NUMBER:    INMATE MORROW, C-53683

In March of 2001, the Investigative Services Unit (ISU) at the California Substance Abuse Treatment Facility 53683, provided the ISU with information that the Sugar Free Drink Mix (Kool-Aid) packets issued to the inmate population could be utilized as possible bomb making material. With MORROW'S assistance the ISU conducted an investigation regarding a potentially flammable/combustible material. Inmate MORROW, C-conducted a test of the drink mix, utilizing a wick as an igniter. When lit the ingredients in the Kool-Aid mixture created a burst of flames similar to a military dust bomb. As a result of the investigation and the potential threat to both staff and inmates, the ISU produced a Security Alert Training Video, which resulted in the Kool-Aid packets being removed from inventory. Additionally, a Security Alert Memorandum dated June 30, 2002 was distributed to all Wardens advising them of the security issue.

Reviewed by:
Joseph Medola/CSR
Signature
12/5/13
Date

K. HOLLAND
Correctional Lieutenant
Investigative Services Unit
CSATF/SP – Corcoran

Original:
cc:
Central File
CCI
Writer
Inmate

DATE: September 6, 2002

CONFIDENTIAL

GENERAL CHRONO

# Memorandum

**CONFIDENTIAL**

**Date:** February 11, 2003

**To:** Inmate Morrow, C53683
California State prison Los Angeles County
44750 60th Street, West
Lancaster, CA 93536-7620

**Subject:** RESULTS OF INTERNAL AFFAIRS INVESTIGATIONS #C-SATF-139-02 AND #C-SATF-140-02

On November 30, 2001, a Category II investigation was initiated regarding your November 9, 2001, CDC 602, Inmate Appeal, Log #SATF-Z-02-00052, alleging staff misconduct.

The Office of Internal Affairs – Central Region completed their investigation on November 20, 2002, and the findings of said allegation(s) were partially sustained.

This notification is pursuant to DOM Subsection 31140.4.2 and closes our interest in this matter.

DERRAL G. ADAMS
Warden
California Substance Abuse Treatment Facility and State Prison at Corcoran

cc: Investigative File
Inmate Appeals

**NAME and NUMBER**                                                                                    CDC-128-B (Rev. 4/7)

MORROW; C-53683

REGARDING    WARREN, C-95766

On October 16, 1989, inmate MORROW, C-53683, informed this writer that inmate WARREN
C-95766, was in possession of a 45 caliber bullet. MORROW stated that WARREN had
gotten the bullet from inmate WINSON, S-01418, who had allegedly obtained the 45 caliber
round while housed in the Madera Co. Jail. Subsequently a search of inmate WARREN revealed
a 45 caliber bullet secreted in the anal cavity. Once discovered, WARREN surrendered the
contraband without incident.

T. D. PRUITT, PROGRAM ADMINISTRATOR

DATE  October 16, 1989          cc: as needed          128 B                    GENERAL CHRONO

of Morrow's were transferred to CAL and his case was not presented to the CSR for endorsement

Inmate Morrow has since given valuable information to Institutional Gang Investigator (IGI) and Institution Services Unit (ISU), here at SATF. Morrow was not promised anything for providing this information, however, IGI and ISU feel that the information is of such value that they want to reward inmate Morrow. ISU wants to assist inmate Morrow in his attempts to transfer as close to his family in San Diego as possible (see the 128B dated 4/16/01 authored by C/O Fisher of ISU, SATF). Inmate Morrow is also requesting that this transfer be considered a hardship, as his Mother is not in good health, however the supporting documentation for this request (located in the miscellaneous section of the C-file) is over a year old.

'S' is a 38 year old, White, multi termer, received into CDC on 8/26/87 from San Diego County for the controlling offense of murder 1st for which he received the term of 25 years to life. Restitution was not ordered. He was received at CSATF/SP on 10/22/98 from COR. CDC C-file reflects no history of arson, sex offenses, or computer crimes. Escapes are noted as a walk-away from juvenile facility on 8/13/79. 'S' CDC 127, CDC 812, CDC 812C and CDC 840 were reviewed and updated. Prior CDC numbers are noted as C48892. Registration is not required. Notification is required per PC 296 and PC 3058.6. GPL is GED. SVP is n/a, MDO is n/a. HOLDS are none. ENEMIES are noted on the CDC 812. GANG AFFILIATION is noted as a dropout of the prison gang "Aryan Brotherhood". Confidential file is noted. Disciplinary history includes CDC 115's for mutual combat, and assault with GBI. There is a history of substance abuse noted. 'S' is medically full duty per CDC 128C dated 2/10/97, food handling clear per 128B dated 12/25/98. TB code is 22 per 128C dated 5/4/00. Mental Health is clear per 128C dated 12/15/98. DPP is n/a. DDP is n/a. 'S' is ineligible for SAP, MSF, CAMP, CCF, MCCF, CCRC, and RESTITUTION CENTER due to life sentence.

Based on the foregoing committee elects to refer this case to the CSR recommending transfer to LAC IV SNY. 'S' is cleared for double cell status based on no history of in-cell assaultive, abusive, or predatory behavior towards a cellmate. 'S' transfer is considered non-adverse and he will retain WG/PG of A1/A, effective 7/7/00. S' was reviewed for custody and is appropriate at Close B. 'S' meets the criteria for 270-design placement.

S' was seen in absentia, therefore, he will be informed of this committee's actions and his right to appeal by receipt of this CDC 128G.

B. COLL
FACILITY CAPTAIN (A)
CHAIRPERSON

B. HORTON
CC II (A)
MEMBER

R. ANDERSON
CC I
RECORDER

DATE:  5/25/01      UCC/FACILITY D          CLASSIFICATION          INST: CSATF-SP

\INNT Profiles\counselor\Desktop\SNY 128G's\MORROW\C5368315-25-01 TX SNY.doc

# MEMORANDUM

**Date:** November 10, 2001

**To:** INMATE MORROW, C-53683
E2-131L

**Subject: RESPONSE TO CORRESPONDENCE DATED 9-28-01**

Warden D. G. Adams has asked me to respond to your letter dated 9-28-01 and mailed to him as "confidential mail". You allege that your retention in Administrative Segregation (Ad-Seg) is denying you the opportunity to be reviewed for a hardship transfer. At my direction, Ad-Seg CCII J. J. King thoroughly reviewed your concerns you addressed in your letter to Warden Adams and provided to me.

As you know, you were placed in Ad-Seg for ███████████████████████████████
████████████████████ As you also know, you were ordered retained in Ad-Seg upon the expiration of your MERD by Investigative Services Unit (ISU) Captain M. Johnson because you were involved in a highly confidential investigation being conducted by the ISU. All of your due process rights have been complied with concerning your retention in Ad-Seg. You were not retained in Ad-Seg as punishment as you allege. Your placement was ordered by Captain Johnson. Institutional Classification Committee (ICC) affirmed the placement on 9-27-01 and 10-24-01, to protect the integrity of an on-going investigation and to protect your personal safety because you now have documented enemies housed at the California Substance Abuse Treatment Facility and State Prison at Corcoran's Level IV Sensitive Needs Yard (SNY).

Please rest assured that as soon as Mr. King is advised by the ISU that their investigation is closed, ICC will review your case for transfer to another SNY facility. Your "hardship" issue will be reviewed at that time as well. You will continue to be reviewed by the ICC at least once every 30 days. Your next review is due 11-22-01.

J. L. COBBS
Associate Warden
Housing Complex III

44750 60ᵗʰ Street West
.Lancaster, CA 93536-7620
Telephone: (661) 729-2000



October 24, 2002

Mr. Kenneth Morrow, C-53683
Facility C, Housing Unit C2-131L
California State Prison Los Angeles County
44750 60ᵗʰ Street West
Lancaster, California 93536

Dear Mr. Morrow:

This is in response to your correspondence dated December 2, 2002. addressed to The Department of Corrections, Susan Hubbard. Within your correspondence you allege Correctional Captain C. Wofford at California State Prison-Los Angeles County (LAC) has not contacted you regarding alleged crimes being condoned at Lancaster.

You indicated in 1992, Suzan Hubbard suspended your Segregated Housing Unit Term (SHU) at The Correctional Medical Facility (CMF), in which she instructed you to report any crimes to staff instead of taking things into your own hands. You state that you have a bag of ammonia nitrate in your cell that you acquired from the cold packs in the medical clinic. You further allege bullets are accessible to inmates, which can be made in their cells. On March 21, 2003, Correctional Captain C. Wofford conducted an interview with you regarding your allegations. The interview disclosed information that you are a 40-year-old inmate who has been incarcerated approximately 21 years. You were a member of the Aryan Brotherhood (AB) who trained in methods of how to make weapons and explosive devices. You have been providing information to staff, which may or may not pose a threat to staff and inmates. All the information you provide is evaluated and decisions are made for corrective action if warranted. The Institution greatly appreciates your shared knowledge and the concerns you may have. The appropriate documentation will be submitted for placement into your Central File if it warrants placement.

You are requesting a transfer to California Men Colony (CMC) and a meritorious credit for the information you provided to staff. You indicated that you are receiving assistance from the Unit Classification Committee (UCC) in preparing appropriate documents for review and awaiting disposition from the Director's Review Board. The Classification Committee would have to review your Central File and consider appropriate housing needs in accordance with your custody level. At that time a recommendation could be made to transfer you to CMC and the ultimate approval rest with the Classification Service Representative (CSR).

# EXHIBIT C

State of California.
California Substance Abuse Treatment Facility and State Prison at Corcoran
**Memorandum**

Department of Corrections

Date:  July 11,.2002

To:  Morrow, C-53683
California State Prison, Los Angeles County

Subject: SECOND LEVEL APPEAL RESPONSE
LOG NO.:        SATF 02-02547

ISSUE:

D. Duvall, Appeals Coordinator, investigated your appeal at the Second Level of Review.

In your appeal you contend you should be granted a meritorious sentence reduction. You contend you provided information to the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) Investigative Services Unit (ISU), which possibly prevented both staff and inmate injury. Your request that your sentence be reduced.

INTERVIEWED BY: J. Prudhomme, Correctional Lieutenant.

REGULATIONS: The rules governing this issue are:

California Code of Regulations, Title 15, Section (CCR) 3043. Credit Earning.
(h) Heroic acts and exceptional assistance. Up to 12 months reduction of sentence may be awarded for the following acts:
(1) Acts preventing loss of life or injury to the public, staff, or other inmates.
(2) Acts preventing significant loss or destruction of property.
(3) Providing sworn testimony in judicial proceedings involving prosecution of a felony offense which occurred within the prison.

CCR 3376. Classification Committees.
(3) Institution and Facility Classification Committees shall:
(C) Review inmate requests for meritorious sentence reduction to determine compliance with Penal Code section 2935.

An investigation and review of your appeal reveals insufficient information available at this time to determine whether you meet the criteria for meritorious sentence reduction, as delineated in the aforementioned regulations. On July 3, 2002, CCII Duvall requested the SATF ISU Captain, M. Junious, provide information concerning your assertion that you provided information to staff, which prevented loss of life/injury to staff and inmates. At this time, Captain Junious is still investigating the information you provided in your appeal.

Penal Code 2935 provides the authority regarding meritorious conduct credits and the process is outlined in the CDC Operations Manual Section 62010. The Department Review Board (DRB) is the final authority to determine the merit of the request and the amount of credit reduction, if any, to be awarded. A descriptive staff report of the

incident must be included with the standard DRB-formatted report. Staff are to determine whether the inmate's actions appear to qualify for a reduction and, if so, recommend a specific number of days (up to 365) by which the total sentence should be reduced. Staff may recommend the sentence not be reduced; but they must process a request if the inmate appears to meet the criteria. Staff do not have the option of not processing a case that qualifies, but for other reasons may be undeserving. That discretion is reserved for the DRB, whose decision is not appealable.

Further, the inmate should provide his Counselor with documentation that an incident occurred. The Counselor is responsible for processing the case and if the inmate appears to qualify, the case shall be presented to the ICC. If the inmate clearly does not qualify, the Counselor shall document the specific reason on a CDC 128B, General Chrono, and give the inmate a copy.

DECISION: The appeal is granted in part. A Modification Order shall be issued to the SATF ISU, stipulating written documentation is provided concerning whether the appellant provided information that possibly prevented loss of life/injury to staff and inmates. Upon receipt of this information a second Modification Order shall be issued to the appellant's assigned Counselor. Should the appellant appear to qualify for sentence reducing credits, his case shall be presented to the ICC for DRB referral. Should the appellant not qualify, the assigned Counselor shall complete a CDC 128B documenting the specific reason the referral will not be made, at which time a copy of the chrono shall be forwarded to the appellant.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

DERRAL G. ADAMS
Warden
California Substance Abuse Treatment Facility and State Prison at Corcoran

CSATF APPEALS
JUL 1 2 2002

CALIFORNIA DEPARTMENT OF CORRECTIONS
CALIFORNIA STATE PRISON - LOS ANGELES COUNTY

**SUPPLEMENTAL PAGE**

**RE: APPEAL LOG #LAC-C-03-01893**

**FIRST LEVEL REVIEWER'S RESPONSE**

**K. MORROW, C-53683**

**APPEAL DECISION:**      **DENIED**

**APPEAL ISSUE:**      **OTHER**

In your appeal you stated that on several occasions you assisted C. Wofford, Correctional Captain by providing information about dangerous material obtainable to the inmate population. You indicate you provided information about 'Cool Pack', which could be utilized to make bombs, gasoline that could be utilized to make napalm, Iodine-Hydrogen Peroxide and matches which could be used to make gunpowder and a method to construct bullets.

**ACTION REQUESTED:**

You would like Captain Wofford to provide you with documentation in your Central File acknowledging your providing information regarding the above mentioned alleged security breeches and possible weapons construction for possible future meritorious credit. You also request that Captain Wofford honor his word and present packet to the Institutional Classification Committee (ICC) recommending transfer to California Men County.

**APPEAL RESPONSE:**

On August 01, 2003, Correctional Sergeant J. Hamlin of the Investigative Services Unit conducted a interview of you, to provide you the opportunity to fully explain your appeal and/or provide any supporting information or documents. You did not provide any additional information.

An investigation of your appeal was conducted that included your interview, a review of your appeal with attachments, interview with Correctional Captain C Wofford, a review of the California Code of Regulations (CCR) Title 15 and the California Penal Code.

Captain Wofford did state that you provided information regarding the 'Cold Packs' the institution was providing to inmates and the designs to theoretically utilize to compose an explosive material. Captain Wofford also indicated you relayed that the gasoline may be used to produce an explosive mixture and/or napalm, matches could be utilized

to make a chemical bomb and that there was a way for inmates to construct bullets to
be used against staff.

Captain Wofford stated upon questioning, you indicated that to your knowledge
inmates were currently in the process of fabricating or attempting to use any of the
discussed chemical or weapons. As a precautionary measure, the medical department
has removed all 'cold packs' from the institutional setting. The security issue regarding
the matches had been previously resolved, due to inmates not being allowed to
possess matches. There have always been procedures in place for the control of
gasoline and any other flammable/explosive materials at practically all California
institutions. Captain Wofford indicated that although the information you provided could
theoretically be utilized to assault staff or breech institutional security   However, he
indicated you stated during your interview that to your knowledge        inmates were
currently or planning to utilize any of the items you had discussed.


Based on the findings in this investigation your appeal is hereby DENIED at this level.
The institution, including the Investigative Services Unit, conducted an audit of all areas
of the institution. There was no indication of a breech of institutional security or threat
to staff as a result of any of the potential weapons discussed. The information you
provided could have been a viable security threat. However, you indicated that to your
knowledge      inmates were currently in the process of utilizing any of the proposed
weapons against the department.

This investigation further revealed that Captain Wofford and Warden M. Yarborough,
California State Prison-Los Angeles County have previously addressed the issues you
addressed in this CDC-602.

In light of the above, a recommendation for meritorious credit is not warranted.

J. HAMLIN
Correctional Sergeant
CSP-Los Angeles County

8/6/03
Date

| NO.: C-53683 | NAME: MORROW | CDC-128-G (Rev. 2/96) |
| --- | --- | --- |
| Custody: MED A | Assignment: LANCASTER | |
| Comments: DEPARTMENTAL REVIEW BOARD WARDEN'S OFFICE | | |

| Location: LAC IV-SNY | CS: 404 | EPRN: N/A | MEPD: 6-24-09 |
| --- | --- | --- | --- |
| Gang: AB DROPOUT | | Prior DRB: NO | Restitution: N/A |
| Holds/Wants/Detainers: NOT APPLICABLE | | | |

REASON FOR REFERRAL: This case has been referred to the DRB for a Meritorious Sentence Reduction Review based on the following case factors:

1. During 2001, Inmate Morrow provided confidential information to the Investigative Services Unit staff at SATF relative to "the utilization of Sugar Free Drink Mix (Kool-Aid) packets, which could be used for bomb-making material." The reader is referred to page one, paragraph two, of the DRB referral for detailed information.
2. As the result of the inmate's assistance and subsequent investigation, a Security Alert Training Video was produced and a Security Alert Memorandum was distributed to all Wardens advising them of this security issue.
3. The reader is referred to an attached Confidential CDC 128B dated September 6, 2002, relative to Inmate Morrow's actions and assistance in this matter.
4. The LAC Institutional Classification Committee determined, pursuant to the Department Operations Manual, Section 62010.10.4 and Penal Code Section 2935, that Inmate Morrow was eligible for a sentence reduction review based on his actions.
5. Inmate Morrow is presently assigned to the LAC IV Sensitive Needs Yard (SNY).

CIRCUMSTANCES: Inmate Morrow was received into CDC in 1987 for First-Degree Murder. He was sentenced to a term of 26 years to Life. As noted in his DRB report, he has an extensive CDC disciplinary record (at least 40 Rules Violation Reports) and although his behavior has improved over the last several years, he has been less than a model inmate, and has continually ignored departmental rules and regulations.

INSTITUTION STAFF RECOMMENDATION: The LAC ICC recommended that Inmate Morrow be granted a 12-month Meritorious Sentence Reduction.

CLASSIFICATION SERVICES RECOMMENDATION: CSU notes that based on the inmate's Life commitment status, he is not eligible for a sentence reduction and therefore recommends that the DRB deny this Meritorious Sentence Reduction request. However, based on the inmate's actions as referenced in the DRB referral, the CSU recommends that the LAC Classification and Parole Representative document the inmate's actions in his Central File for Board of Prison Terms consideration during future Lifer Hearings.

| Date: 4-14-03 | Classification: DRB ACTION | Institution: LAC |
| --- | --- | --- |

| NO.: C-53683 | NAME: MORROW | CDC-128-G (Rev. 2/96) |
|---|---|---|
| Custody: MED A | Assignment: | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

DRB ACTION OF 4-14-03: The DRB has reviewed all case factors and concurs with the CSU recommendation noting that Inmate Morrow is not eligible for a sentence reduction based on his Life term status. Therefore, the DRB denies this Meritorious Sentence Reduction request. However, based on the inmate's actions as referenced in the DRB referral, the DRB instructs the LAC Classification and Parole Representative to document the inmate's actions in his Central File for future Board of Prison Terms consideration during Lifer / Parole consideration hearings.

RETAIN DRB TRANSFER CONTROL:     YES ☐   NO ☒

MEMBERS:     W. A. DUNCAN, Deputy Director
Institutions Division

B. DEGROOT, Deputy Director (A)
Parole and Community Services Division

L. RIANDA, Chief
Classification Services Unit

RECORDER:     D. LANKFORD, Classification Staff Representative
Classification Services Unit

L. RIANDA, Chief
Classification Services Unit

W. A. DUNCAN, Deputy Director
Institutions Division

| Date: 4-14-03 | Classification: DRB ACTION | Institution: LAC |
|---|---|---|



Name _KENNY MORROW C-53683_

Address _P.O. BOX 409000_

_IONE CA. 95640_

CDC or ID Number _C-53683_

**MC-27**

F I L E D
AMADOR SUPERIOR COURT

NOV - 7 2003

Clerk of the Superior Court

By: _100.32_

_IN THE SUPERIOR COURT OF AMADOR COUNTY_

_STATE OF CALIFORNIA_
(Court)

_KENNY MORROW_
Petitioner

vs.

_WARDEN S. KERNAN / MCSP_
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. _03 - HC - 0493_
(To be supplied by the Clerk of the Court)
_APPENDIX "A" W/ EXHIBITS_
_ATTACHED IN SUPPORT THEREOF._

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 (Rev. January 1, 1999)        PETITION FOR WRIT OF HABEAS CORPUS   WEST GROUP        Penal Code § 1473 et seq.:



**BILL LOCKYER**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 324-3892
Facsimile: (916) 324-5205
E-Mail: Jack.Duran@doj.ca.gov

September 13, 2004

Kenny Morrow
C-53683
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

RE:    In Re: KENNY MORROW
       Superior Court of Amador, Case No. 03HC0493

Dear Mr. Morrow:

        I recently received your letters dated July 31 and September 8, 2004. Thank you for
informing me that your case had not yet appeared before the DRB for consideration for a
meritorious sentence credit. Apparently, there was a misunderstanding between myself and the
Department of Corrections concerning the timing of your Departmental Review Board (DRB)
review of your case. I recently followed up on your concern with the CDC and I was assured
your case would be forwarded to the DRB for consideration shortly.

        Additionally, no letter on behalf of the Attorney General's office will be forthcoming
because the court did not order me to draft one.

        If you case has not been forwarded to the DRB within the next thirty-days, please let me
know and I will follow up on this issue.

                                        Sincerely,

                                        JACK DURAN, JR.
                                        Deputy Attorney General

                        For     BILL LOCKYER
                                Attorney General

JD:

1

2

3

4                                                                      F I L E D
                                                                   AMADOR SUPERIOR COURT

5                                                                      AUG 1 3 2004

6                                                                 Clerk of the Superior Court
7                                                            By: _____ 10033 _____

8                          SUPERIOR COURT OF CALIFORNIA

9                               COUNTY OF AMADOR

10

11                                      ) Case No.: 03HC0493
                                        ) ORDER DENYING PETITION FOR WRIT
12    In re:                            ) OF HABEAS CORPUS
                                        )
13    KENNY MORROW,                     )
                                        )
14    Petitioner,                       )
                                        )
15    On Habeas Corpus.                 )
                                        )
16                                      )
                                        )
17

18        On March 1, 2004, the Court requested an Informal Response from the respondent. An

19    informal response was filed and the petitioner subsequently filed a reply. After receiving the

20    response and reply, the California Supreme Court issued it decision in the case of In Re Young

21    (2004) 32 Cal.4th 400. The Court then requested further briefing from the parties.

22        Based on the holding of In Re Young, supra, the petitioner is entitled to be considered for

23    a sentence reduction pursuant to Penal Code Section 2935. In its supplemental response, the

24    respondent acknowledges that the petitioner's status as a life prisoner does not preclude him

25    from receiving a possible sentence reduction for meritorious service.

1        Respondent has agreed to forward petitioner's case to the Departmental Review Board

2   (DRB) for consideration on the merits. Therefore, the respondent has received the relief

3   requested by the petition and the issues raised by the petition are moot. The petition is denied on

4   that basis.

5        This order is without prejudice to the petitioner's right to seek judicial review, following

6   exhaustion of his administrative remedies, of the DRB's decision.

7   DATED:    $8/13/04$

8                                                 SUSAN C. HARLAN
                                              JUDGE OF THE

9                                                 SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*received by meon 12-24-04*
*at csp /corc.*

FILED
AMADOR SUPERIOR COURT

NOV 2 4 2004

Clerk of the Superior Court
By:_____ *16018*

SUPERIOR COURT OF CALIFORNIA

COUNTY OF AMADOR

| | |
|---|---|
| In re: | ) Case No.: 03HC0493 |
| | ) ORDER VACATING DENIAL OF |
| | ) PETITION FOR WRIT OF HABEAS |
| KENNY MORROW, | ) CORPUS; ORDER TO SHOW CAUSE |
| | ) |
| Petitioner, | ) |
| | ) |
| On Habeas Corpus. | ) |
| | ) |
| | ) |

On August 13, 2004, this court denied the petitioner's petition for a writ of habeas corpus. The denial was based on the respondents supplemental Informal Response. Respondent represented to the court, based on the holding of In Re Young (2004) 32 Cal.4th 400, that the petitioner would be granted DRB consideration of his request for meritorious credit. The petition was denied on the grounds that because the respondent agreed to grant the petitioner DRB review, the issues raised by the petition were moot.

On October 14, 2004, the respondent notified the court that its original interpretation of In Re Young was incorrect and petitioner is not entitled to DRB review. Therefore, the

1  peitioner's entitlement to the relief requested in his petition is again at issue and the court vacates
2  its August 13, 2004 order denying the petition.

3       In addition,

4       IT IS HEREBY ORDERED that respondents show cause before this Court as to why the
5  relief requested by the petitioner should not be granted. Respondents, or any of them, shall file a
6  return to this petition on or before December 30, 2004. Petitioner shall file a denial to such
7  return within 30 days after its service upon petitioner.

8       After the filing of the denial or after expiration of the time in which to do so, the Court
9  will rule on the matter or, if necessary, will set a date for hearing.

10

11  DATED: // · 2 3 · 04

12                                        SUSAN C. HARLAN
                                          JUDGE OF THE
13                                        SUPERIOR COURT

14

15

16

17

18

19

20

21

22

23

24

25



F I L E D
AMADOR SUPERIOR COURT

JUN - 6 2005

Clerk of the Superior Court

By: /QOO7

SUPERIOR COURT OF CALIFORNIA

COUNTY OF AMADOR

| | |
|---|---|
| | Case No.: 03HC0493 |
| | ORDER DENYING PETITION FOR WRIT |
| In re: | OF HABEAS CORPUS |
| KENNY MORROW, | |
| Petitioner, | |
| On Habeas Corpus. | |

On November 24, 2004 this court issued an Order to Show Cause in this matter. The OSC was following an earlier denial of the petition based on the respondent's representation that the relief sought by the petition, a referral to the Departmental Review Board (DRB) for consideration of the petitioner's request for a sentence reduction pursuant to Penal Code Section 2935, would be granted. This code section allows an inmate to receive up to a 12 months reduction of a sentence when the inmate performs a heroic act. The respondent initially agreed to grant the relief requested based on the holding of In re Young (2004) 32 Cal.4th 900 (Young).

1    After the petition was denied based on the grounds that it was moot due to the relief
2   being sought was granted, the respondent notified the court it determined that Young did not
3   apply and it would not make a DRB referral. According to the respondent there is a distinction
4   between Young and the petitioner's situation because the inmates were sentenced under different
5   statutory provisions and this affects the applicability of the holding in holding in Young.

6    In Young the petitioner was sentenced to an indeterminate life term under the "Three
7   Strikes" law. The petitioner performed an act qualifying for a sentence reduction but did not
8   receive the reduction because the Department of Corrections took the position that the heroic act
9   reduction would violate the provisions in the Three Strikes law, which limit good time/work time
10  credits to a maximum of 20% of the inmate's sentence. The California Supreme Court rejected
11  this argument and found that an inmate sentenced under the Three Strikes law is eligible for a
12  Penal Code Section 2935 sentence reduction.

13   In this case, the petitioner was not sentenced under the Three Strikes law. Rather, the
14  petitioner was sentenced in 1987 pursuant to Penal Code Section 190. At the time he was
15  sentenced, Penal Code Section 190 read in relevant portion:

16       The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of
17       Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25
18       to 15 years in a state prison imposed pursuant to this section, but such person shall
19       not otherwise be released on parole prior to such time.

20  At first blush it appears that this portion of Penal Code Section 190 would operate to allow the
21  petitioner the benefit of the Penal Code Section 2935 sentence reduction, as it is part of Article
22  2.5. However, when petitioner received his sentence in 1987, Penal Code Section 2935 had not
23  yet been enacted.

24   A similar issue was addressed in In re Oluwa (1989) 207 Cal.App.3d 439 (Oluwa). In
25  Oluwa, the defendant was sentenced in at indeterminate term pursuant to Penal Code Section

1   190.  After he was sentenced, the legislature adopted Penal Code Section Penal Code Section

2   2933.  The petitioner argued that he was entitled to the credit provided by this section because

3   Penal Code Section 190 referred to the provisions of Article 2.5, which included Section 2933.

4        The court, relying on the well established principles of statutory interpretation, held that

5   only those sections included in Article 2.5 that were in existence at the time that Penal Code

6   Section 190 was enacted by initiative could be applied to reduce an inmate sentence.  As Penal

7   Code Section 2933 was a later adopted statute, the petitioner was not entitled to the credits he

8   sought.

9        Likewise, the petitioner here cannot claim the benefit of Penal Code Section 2935

10  because it was not a statute in existence at the time Penal Code Section 190 was enacted.

11  Accordingly, the petition is denied.

12  DATED:      6 - 6 - 05

13                                                    SUSAN C. HARLAN
                                                      JUDGE OF THE
14                                                    SUPERIOR COURT

15

16

17

18

19

20

21

22

23

24

25





Sent on 4/18/05
by me. received
their letter on 4/28/c

**State of California**
**Commission on Judicial Performance**
455 Golden Gate Avenue, Suite 14400
San Francisco, CA 94102-3660
(415) 557-1200
FAX (415) 557-1266
Web Site: http://cjp.ca.gov

April 21, 2005

Kenny Morrow, C-53683
CSP/SAC A-1-106
P.O. Box 290066
Represa, CA 95671

Dear Mr. Morrow:

This letter is to acknowledge receipt of your complaint against a California
judge(s). We are presently reviewing this information and you will be advised in writing,
at a later date, of the Commission's action in this matter.

Very truly yours,

Bernadette M. Torivio
Executive Secretary

BMT:hs/