

Exhibit E

received
9/7/05

1  KENNY MORROW C-53683

2  P.O. BOX 3481

3  CORCORAN CA. 93212

4

5                    AUGUST 27, 2005

6                                        **FILED**

7  COURT OF APPEAL

8  THIRD APPELLATE DISTRICT                SEP - 1 2005

9  900 N. STREET, ROOM 400        COURT OF APPEAL · THIRD DISTRICT
                                        DEENA C. FAWCETT
10 SACRAMENTO CA. 95814            BY_____ Deputy

11

12 RE: INFORMAL RESPONSE DENIAL, ORDERS BY COURT ON 8-2-05.

13     IN RE KENNY MORROW, CASE NO. C050336
                                        RECEIVED
14     VS. CDC DIRECTOR J. WOODFORD et al.
                                        SEP - 1 2005
15
                                        Clerk, Court of Appeal,
16 TO THE HONORABLE JUSTICES OF THE COURT: Third Appellate District

17

18    ON JULY 28, 2005. PETITIONER KENNY MORROW FILED

19 A HABEAS CORPUS PETITION, IN THIS COURT, THAT WAS IN-

20 CORRECTLY DENIED IN AMADOR COUNTY SUPERIOR COURT,

21 WHILE INCARCERATED AT MULE CREEK STATE PRISON.

22    THE BASIS FOR THIS PETITION FOR WRIT OF HABEAS

23 CORPUS WAS FOR A REQUEST BY PETITIONER, TO CALIF-

24 I FORNIA DEPARTMENT OF CORRECTIONS, FOR BREVITY

25 HEREAFTER CALLED (CDC) DIRECTOR J. WOODFORD,

26 TO CONSIDER PETITIONER FOR MERITORIOUS PRISON

27 SENTENCE "REDUCTION" (NOTE THE WORD REDUCTION)

28

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

*HEROIC ACT, PRISON SENTENCE REDUCTION*
*BY DIRECTOR. J. WOODFORD.*

# FILED

SEP - 8 2005

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT

BY_____ Deputy

In re KENNY MORROW on Habeas Corpus.

C050336
Amador County
No. 03HC0493

BY THE COURT:

Let an order to show cause issue. Respondent's written return is to be served
and filed by September 28, 2005. Petitioner's replication, if any, is to be served and
filed with this court within 15 days after service of the return upon the petitioner. (See
*In re Young*, (2004) 32 Cal.4th 900.)

Upon proper request, petitioner is entitled to counsel. The Central California
Appellate Program is directed to send to petitioner the appropriate form forthwith.

*9 - 13 - 05  ☞ Wrote*

Dated: September 8, 2005

SCOTLAND, P.J.

cc: See Mailing List

*received by me on 9/13/05*
*AT CSPC/ 4B-1L-32, by c/o & cordova*

## CONCLUSION

Pursuant the statutory analysis set forth in *Oluwa*, Morrow is ineligible for a sentence reduction because the version of Penal Code section 190 that he was convicted under does not encompass the later-enacted, and legislatively-enacted, section 2935. Accordingly, respondent requests that the petition for writ of habeas corpus be denied.

Dated: September 15, 2005

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

STEPHEN P. ACQUISTO
Supervising Deputy Attorney General

R. MICHAEL LLEWELLYN
Deputy Attorney General

Attorneys for Respondents

30038387.wpd

7

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## THIRD APPELLATE DISTRICT

In re

KENNY MORROW,

On Habeas Corpus.

_____/

NO. C050336

Amador County No.
03HC0493

## PETITIONER MORROW'S REPLICATION (TRAVERSE) and MEMORANDUM of POINTS and AUTHORITIES

PAUL V. CARROLL, Bar. No. 121369
*Attorney at Law*
5 Manor Place
Menlo Park, California 94025
(650) 322-5652
Attorney for Appellant

By Appointment of the Court of
Appeal, Independent Case Program

**PAUL V. CARROLL**

*Attorney at Law*
5 Manor Place
Menlo Park, CA 94025

November 8, 2005

Mr. Kenneth R. Morrow, C-53683
4B 1L 32
PO Box 3481
Corcoran, CA 93212

*In re Morrow*, No. C050336

Dear Mr. Morrow:

I respond to your letters of October 7, 2005, and October 29, 2005.

I have been appointed by the court of appeal to represent you. Since you do not
have the funds to represent yourself, I am paid for my work on your behalf by the
State. As part of my practice, I regularly handle such indigent appeals.

If the court of appeal denies the traverse, you can petition for review to the
California Supreme Court. I would do that on your behalf if the court of appeal
maintains my appointment, which I believe it will.

You ask whether you pushed the envelope by raising in your traverse many issues
that the attorney general did not raise in his return. Perhaps, but it will not hurt
you. Better to be over-inclusive rather than under.

I hope this answers your questions.

Very truly yours,

Paul V. Carroll

cc: Colin Heran, Esq., CCAP

EX: "F"

| NO.: C-53683 | NAME: MORROW | CDC-128-G (Rev. 2/96) |
| --- | --- | --- |
| Custody: MAX | Assignment: ASU | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

| Location: MCSP | PS: 395 | Enemy: YES | MEPD: 9-5-08 |
| --- | --- | --- | --- |
| Gang: AB DROPOUT | | Prior DRB: YES | Restitution: N/A |
| Holds/Wants/Detainers: NOT APPLICABLE | | | |

**REASON FOR REFERRAL:** This case has been referred to DRB for approval of an Indeterminate Security Housing Unit (SHU) status placement pending approval of his out-of-state transfer request based on overriding safety concerns.

**CIRCUMSTANCES:** Inmate Morrow is a 42-year-old third-termer received into the California Department of Corrections (CDC) on 8-26-87 from San Diego County for First-Degree Murder. He was sentenced to a term of 26 years to Life. As noted in his DRB report, he has an extensive CDC disciplinary record (at least 40 Rules Violation Reports [RVRs]), although his behavior has improved over the last several years. The last RVR issued to Inmate Morrow was dated 6-7-01, issued for Threatening Staff. Inmate Morrow was assessed a five-month SHU term.

- Inmate Morrow was validated as a drop-out of the Aryan Brotherhood prison gang upon completing the Integrated Yard Program at California State Prison, Corcoran (COR), on 9-19-98.
- During 2001, Inmate Morrow provided confidential information to the Investigative Services Unit staff at California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) relative to "the utilization of Sugar Free Drink Mix (Kool-Aid) packets, which could be used for bomb-making material." The California State Prison, Los Angeles County (LAC), submitted Inmate Morrow's request for a Meritorious Sentence Credit Reduction to DRB based on this cooperation with CDC staff. On 4-14-03, the DRB denied the request because his life sentence made him ineligible for a sentence reduction.
- The LAC staff became aware of threats against Inmate Morrow, including information indicating he was going to be the victim of a stabbing by other Sensitive Needs Yard (SNY) inmates. As a result of these safety concerns, Inmate Morrow was transferred from LAC Level IV SNY to Mule Creek State Prison (MCSP) Level IV SNY on 8-19-03.
- Inmate Morrow programmed successfully on the MCSP SNY until 11-7-03 when he was placed into the Administrative Segregation Unit (ASU) due to his claim of safety concerns. Morrow claims that he cannot safely program on any SNY because other inmates have become aware of his cooperation with CDC investigators.
- Inmate Morrow has documented enemies at all SNY facilities with the exception of Pleasant Valley State Prison (PVSP) Level III. Inmate Morrow has stated that he will refuse to program at PVSP if transferred there.
- Inmate Morrow has requested transfer to the state of Montana or any Western state.
- On 12-17-03, the MCSP Institution Classification Committee (ICC) submitted a request to the Classification Staff Representative (CSR) for approval of Indeterminate SHU status for Inmate Morrow. The CSR reviewed the case and instructed staff to refer the case for DRB review.
- Inmate Morrow currently has no mental health or medical concerns that would impact his placement. He was removed as a participant from the Mental Health Services Delivery System on 8-7-03.

| Date: 5-25-04 | Classification: DRB ACTION | Institution: MCSP |
| --- | --- | --- |

| NO.: C-53683 | NAME: MORROW | CDC-128-G (Rev. 2/96) |
| Custody: MAX | Assignment: ASU | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

**INSTITUTION STAFF RECOMMENDATION:** The MCSP ICC recommended that Inmate Morrow be transferred to Pelican Bay State Prison (PBSP) or COR for placement in SHU on Indeterminate status pending out-of-state transfer.

**CLASSIFICATION SERVICES RECOMMENDATION:** The Classification Services Unit (CSU) recommends out-of-state placement to Montana, Wyoming, or Nevada for Inmate Morrow for safety concerns via the Western Interstate Corrections Compact. The CSU recommends that DRB approve placement of Inmate Morrow at COR on Indeterminate SHU status pending out-of-state transfer. The SHU placement recommendation is based on the unresolvable safety issues and his stated refusal to program on any General Population yard. The Law Enforcement Investigations Unit concurs with the CSU recommendation.

**DRB ACTION OF 5-25-04:** The DRB concurs with the MCSP ICC and acts to approve transfer to COR-SHU on Indeterminate status due to safety concerns, pending the Interstate transfer of Inmate Morrow to the state of Montana, Wyoming, or Nevada. The DRB notes that the states being approved have the authority to accept or deny Inmate Morrow's placement. The DRB also takes the following actions:

### MCSP

1. The MCSP Classification and Parole Representative (C&PR) is instructed to submit required documents, not already provided, pursuant to the Department Operations Manual, Sections 62040.4 and 62040.5, to the Interstate Compact Unit within 30 days after receiving this action.  $done\ 6/2/04$
2. Inmate Morrow to be advised that if, in fact, his transfer request is accepted by another state, actual transfer/placement may not be timely based on bed availability within that state.  $Done\ 6/18/04\ see\ 128B$
3. The MCSP C&PR is instructed to facilitate this placement/transfer in conjunction with the CDC Transportation Unit.
4. Inmate Morrow to be advised that any future BPT Hearings will be held telephonically if he is housed out of state.  $done\ 6/18/04\ see\ 128B$
5. The DRB elects to establish DRB transfer control of this case effective this date.

### COR

1. COR ICC is instructed to return this case to DRB in 12 months if Inmate Morrow has not transferred out of state.

RETAIN DRB TRANSFER CONTROL:   YES ☒ NO ☐

| Date: 5-25-04 | Classification: DRB ACTION | Institution: MCSP |

NO.: C-53683   NAME: MORROW   CDC-128-G (Rev. 2/96)
Custody: MAX   Assignment: ASU
Comments: DEPARTMENTAL REVIEW BOARD

**MEMBERS:**   **S. HUBBARD,** Deputy Director (A)
Institutions Division

**B. DEGROOT,** Assistant Deputy Director (A)
Parole and Community Services Division

**L. RIANDA,** Chief
Classification Services Unit

**RECORDER:**   **D. ROTHCHILD,** Correctional Counselor III
Classification Services Unit

L. RIANDA, Chief
Classification Services Unit

S. HUBBARD, Deputy Director (A)
Institutions Division

| Date: 5-25-04 | Classification: DRB ACTION | Institution: MCSP |



# DEPARTMENT OF CORRECTIONS

California State Prison-Los Angeles County
44750 60th Street West
Lancaster, CA 93536-7620
661/729-2000

July 28, 2003

Mr. K. Morrow, C53683
Housing Unit A-5, Cell 242
California State Prison-Los Angeles County
Lancaster, CA 93536

Mr. Morrow:

This is in response to your correspondence dated July 2, 2003, regarding enemy concerns. A review of your Central file revealed that you were seen by Institutional Classification Committee (ICC) on July 10, 2003. You will remain in Administrative Segregation pending an investigation into your safety concerns on Facility 'C'.

You are scheduled to be seen by ICC on September 11, 2003, at which time an appropriate decision as to where you can safely program will be made.

If you have further questions regarding this matter, please contact Captain H. Brown, Facility 'C', via institutional mail.

S. L. REED
Associate Warden (A)
Facilities C & D
CSP-Los Angeles County

CN/clc    A. W. REED (A)

5 COPIES

The following is a current listing and location of Morrow's enemies

|  | CDC# | Name | Location |
|---|---|---|---|
| 1 ▪ | C-54349 | Ethridge | Discharged |
| 2 ▪ | C-56257 | Dilts | Discharged |
| 3 ▪ | D-09186 | Maness | Discharged |
| 4 ▪ | C-41618 | Zimmerman | MCSP-III SNY |
| 5 ▪ | E-04448 | Hymes | SQ-ASU |
| 6 ▪ | C-09884 | Patton | Discharged |
| 7 ▪ | E-70318 | Johnson | Discharged |
| 8 ▪ | E-87737 | Gordon | Discharged |
| 9 ▪ | B-73151 | Mart | Discharged |
| 10 ▪ | H-77005 | Aselio | Discharged |
| 11 ▪ | C-84849 | Scott | COR-IV |
| 12 ▪ | T-92254 | Hughes | CIM-RCC |
| 13 ▪ | C-53655 | Miles | PBSP-IV |

The following is a listing of the location of Morrow's Confidential enemies

14 • LAC-IV SNY
15 • CEN-IV
16 • LAC-IV SNY
17 • SAC-IV C-yard
18 • SVSP-IV SNY
19 • CAL-IV SNY
20 • CAL-IV ASU
21 • PBSP-IV
22 • SACCO-WICC
23 • PBSP-ASU
24 • CMF
25 • CIM
26 • SAC-C-yard
27 • SATF-IV SNY
28 • MCSP-III SNY
29 • SOL
30 • CEN-IV
31 • SACCO-WICC
32 • SVSP SNY
33 • LAC-IV SNY
34 • LAC
35 • MCSP-III SNT
36 • MCSP-IV SNY
37 • MCSP-IV SNY

6-

## CALIFORNIA DEPARTMENT OF CORRECTIONS
## CALIFORNIA STATE PRISON-LOS ANGELES COUNTY

### SUPPLEMENTAL PAGE

**RE:** **APPEAL LOG#**    CSP-LAC-A-03-2338
Second Level Response

Name: MORROW
CDC#: C53683

**APPEAL DECISION:**    **PARTIALLY GRANTED**

**APPEAL ISSUE:**    LIVING CONDITIONS

In your appeal you state that you were housed in Administrative Segregation Unit (ASU) A4 with
Inmate Perez who relayed to you that he was a member of the 2-5 prison gang. You further
stated that he "fished" a weapon from Inmate Alanis in A4-219. You stated that you told Perez
to get the weapon out of the cell and that he sent it back. You stated that you got into a fight
with Inmate Perez and he moved out of the cell. You stated that you received another cellie
who also received "kites" to stab you. You concluded that due to the above, you are on the 2-5
prison gang's hit list.

You request a Category I investigation be initiated into your enemies and that the 2-5 prison
gang hit list is confiscated from 2-5 gang leaders in A4-219 and A4-217. You further requested
that all enemies be documented in your Central file and that you be housed single cell and
transferred to Mule Creek State Prison (MCSP).

### APPEAL RESPONSE:

On September 16, 2003, Correctional Lieutenant G. Sumpter interviewed you, via telephone at
Mule Creek State Prison, to provide you the opportunity to fully explain your appeal and for you
to provide any supporting information or documents. You did not provide any additional
information.

An inquiry of your appeal was conducted, which included your interview, a review of your appeal
with attachments, a review of your Central file and the California Code of Regulations, Title 15.

The results of the investigation revealed that you have previously submitted a list of enemies.
Those who were verified were placed on your CDC-812-C, Enemy List. Continuous searches of
ASU cells are conducted and contraband is confiscated. You, as an inmate, are not privy to the
results of any of those cell searches. You do not meet the criteria for single cell housing. Since
you filed this appeal, you have been transferred.

CONFIDENTIAL   CONFIDENTIAL

NAME AND NUMBER: MORROW      C-53683      CDC 128B

On 12-06-03 at approximately 1200 hours, I conducted an interview with Morrow C-53683 12-213L pertaining to Morrow having safety concerns in Ad-Seg. Morrow states, he was moved from "A" Facility to Ad-Seg because inmates on "A" Facility wanted to assault him. Morrow claims the inmates want him (Morrow) assaulted because of a CDC Video Morrow made at Pelican Bay in 2001. Morrows states these problems followed him into Ad-Seg and now the Ad-Seg inmates have threatened him. Morrow states he wants to stay on single-cell status and walk-alone yard while in Ad-Seg.

NOTE: Morrow refused to identify any inmates in Ad-Seg or "A" Facility that threatened him. Morrow states he does not want to identify any inmates because he has enough problems.

_Approved for placement into_
_Inmate Morrow Confidential_
_Section of his C-File_
_[signature] S/(A)_

SGT. R. ESPINOZA
FACILITY "A" 2W

CONFIDENTIAL
GENERAL CHRONO

INFORMATIONAL

DATE: 12-08-03




CONFIDENTIAL

ON 12-16-03, INMATE MARROW WAS INTERVIEWED PER his REQUEST REGARDING his CLAIM OF HAVING SAFETY CONCERNS. MARROW CLAIMS he HAS BEEN PROVIDING INFORMATION to the I.S.U., WHILE he WAS HOUSED ON FACILITY-A. IN Addition MARROW ALSO CLAIMS I.S.U. GAVE him THEIR DIRECT PHONE NUMBER to CALL WHEN he HAD NEW INFORMATION. MARROW CLAIMS that he BEGAN HAVING CONCERNS FOR his SAFETY WHEN his CELLMATE, INMATE ARTIST, E-64766 FOUND the PHONE NUMBER OF I.S.U. MARROW CLAIMS ARTIST CALLED I.S.U. AND INFORMED them that MARROW'S SAFETY WAS IN JEOPARDY to HAVE MARROW REMOVED FROM THIS YARD. MARROW CLAIMS that he MADE A VIDEO FOR I.S.U. that SHOWED how FLAMMABLE the CoolAid that C.D.C. WAS USING, Could BE. MARROW STATED that other INMATES ON the FACILITY BECAME AWARE OF this INFORMATION AND ADVISED ARTIST to tell MARROW to LEAVE the YARD. MARROW STATED that other INMATES who he is CLOSE to, INFORMED him that ARTIST WAS telling other INMATES OF MARROW HAVING I.S.U.'s PHONE NUMBER IN his CELL AND ALSO About the VIDEO he MADE FOR I.S.U. Due to the Above INFORMATION, MARROW CONSIDERS ARTIST to be AN ENEMY AND HAS REQUESTED to HAVE ARTIST LISTED ON his C.D.C. 812 MARROW ALSO CONSIDERS INMATE SILVA, P-21899 to be AN ENEMY AND REQUESTED to HAVE SILVA LISTED ON his 812. MARROW CLAIMS that SILVA INFORMED him OF his (SILVA'S) PLAN to STAB OFFICER Pitts who is ASSIGNED to RECEIVING AND RELEASE. MARROW STATED that he INFORMED STAFF OF SILVA's PLAN to ASSAULT OFFICER Pitts which RESULTED IN SILVA BEING PLACED IN Administrative SEGREGATION.

DATE 12-16-03          CONFIDENTIAL   Reviewed by: Daryl Grennan, C9R

CONFIDENTIAL PS II

MARROW stated that when SILVA was RELEASED FROM
Ad-SEg on 11-26-03, he (SILVA) informed other inmates
on Facility-A that MARROW had ratted (informed) on
him. Because of these events, MARROW claims he
can not return to Facility-A.

CONFIDENTIAL

S. Costa cc/

DATE / 2-/6-03

CDC 128-B (Rev. 4/74)

**NAME and NUMBER**    INMATE MORROW, C53683, FEB1-117U

It is requested that Subject be placed on single cell status in Housing Unit #3. Subject is involved in a very sensitive investigation with Investigative Services Unit and he has been receiving threats from inmates located in Housing Unit #1.

M. JOHNSON
Correctional Captain
Investigative Services Unit

**INFORMATION**

**DATE**    September 17, 2001

GENERAL CHRONO

Exhibit 6

*Matthew L. Cate, Inspector General*



*Office of the Inspector General*

April 4, 2005

Kenneth Ray Morrow, C-53683
California State Prison- Corcoran
P.O. Box 8800
Corcoran, CA 93212-8309

Dear Mr. Morrow:

The Office of the Inspector General has received your correspondence dated January 11, 2005.

After reviewing your correspondence, we determined that the issues you raise could be more effectively addressed through a general approach rather than individually. Given the volume and complexity of the complaints we receive, it is not possible for us to fully research and respond separately to each complaint. Therefore, we attempt to focus our audit and investigative resources on issues where the greatest needs exist. We believe that in this way we can provide the greatest benefit to you and others who have been affected. We have therefore included your concerns in our computer database for further review and analysis. If we conduct an audit or investigation of the issues you raise, you may be contacted later.

Meanwhile, we encourage you to continue to try to use available administrative remedies, such as the CDC-602 inmate/parolee appeal process. If you have questions about the process or the status of your appeal, please contact your correctional counselor for advice and assistance.

Thank you for bringing your concerns to our attention.

Sincerely,

TOM HANSEN
Deputy Inspector General

TH:kz:05-0001011-01

*received by me on 5-6-05*
*reroute mail.*

*Arnold Schwarzenegger, Governor*



PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
**Donald Specter**

*Staff Attorneys:*
Susan Christian
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Anne Mania
Millard Murphy
Sara Norman
Keith Wattley

November 5, 2004

A.K. Scribner, Warden
CSP - Corcoran
P.O. Box 8800
Corcoran, CA 93212

Dear Warden Scribner:

I am writing on behalf of Mr. Kenny Morrow, C-53683, a prisoner at CSP - Corcoran. Mr. Morrow contacted our office because he believes that he is in grave danger in his current housing situation. Mr. Morrow was validated as an Aryan Brotherhood drop-out in 1998. (See DRB chrono, p. 2., attached hereto as Exhibit A.) In 2001 Mr. Morrow provided confidential information to the Investigative Services Unit regarding the production of bombs made from supplies available in prison canteens. (See CDC form 128-B, attached hereto as Exhibit B.) He has documented enemies on all Level IV SNY yards and believes he can not safely program in California. (See DRB chrono, p. 1.) The CDC has validated his safety concerns by recommending him for out-of-state transfer; he is currently on the waiting list to be transferred. On 5/25/04 the DRB approved Mr. Morrow's transfer to CSP-Corcoran, where he was placed on indeterminate SHU status pending out-of-state transfer. (See DRB chrono, p. 2.) Mr. Morrow reports that the prisoners in his current housing unit are aware of the confidential information he provided to ISU and, therefore, his life is in danger. Our office considers Mr. Morrow's fears about his safety to be serious.

We are requesting that Mr. Morrow be placed in the PHU. According to Title 15, section 3341.5, PHU placement is appropriate when: (1) the inmate does not require specialized housing for reasons other than protection, (2) the inmate does not have a serious psychiatric or medical condition requiring prompt access to the hospital, (3) the inmate is not documented as a member or an affiliate of a prison gang, (4) the inmate does not pose a threat to the safety or security of other inmates in the PHU, (5) the inmate has specific, verified enemies identified on CDC form 812 likely to and capable of causing the inmate great bodily harm if placed in general population, (6) the inmate has notoriety likely to result in great bodily harm to the inmate if placed in general population, (7) there is no alternative placement which can ensure the inmate's safety and provide the degree of control required for the inmate, (8) it has been verified that the inmate is in present danger of great bodily harm. (Cal. Code Regs., tit. 15, § 3341.5.)

Mr. Morrow meets the criteria for PHU placement. He is a validated gang drop-out. Thus, prison gang affiliation is not an issue. (See DRB chrono, p. 2.) Mr. Morrow does not

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

require specialized housing or require prompt access to a hospital. In fact, according to the clinician's notes from his medical record, Mr. Morrow's mental health will improve if he is placed in the PHU. These records state, "[he is] unlikely to need EOP if placed in PHU." (See MH 3 notes, attached hereto as Exhibit C)  Mr. Morrow has documented enemies on all Level IV SNY yards and there is no alternative placement which can ensure his safety and provide the degree of control required for his custody placement. (See DRB chrono, p. 1.)

In addition, the fact that Mr. Morrow cooperated with the ISU is widely known. This incident has made him notorious among inmates who, as a result of his actions, have made threats to his life which have been verified by CDC staff. (See DRB chrono, p. 2.) Mr. Morrow was transferred from LAC's SNY after staff became aware of threats to his life. Mr. Morrow was able to program successfully at MCSP's SNY for only three months before staff were forced to move him as a result of safety concerns and threats to his life. (See DRB chrono, p. 2.) Thus, the risk of great bodily injury to Mr. Morrow as a result of other inmates learning about his cooperation with the CDC has been substantiated. Now, Mr. Morrow believes he is in present danger of great bodily harm in his current housing unit. He clearly fits the criteria for PHU placement and should be placed in the PHU pending transfer to an out-of-state institution.

Enclosed you will find a copy of Mr. Morrow's authorization forms. I look forward to hearing from you soon regarding this matter.

Sincerely,

Penny Godbold

encl:   Exh. A, B, C
        Auth. Forms

cc: Morrow, C-53683



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Anne Mania
Millard Murphy
Sara Norman
Keith Wattley

December 8, 2004

Mr. Morrow, C-53683
CSP-Corcoran, 4B-1L-63
P.O. Box 3481
Corcoran, CA 93212

Dear Mr. Morrow:

I am responding to your November 7, 2004 letter. Because your letter raises issues concerning your mental health, it has been forwarded to the law firm Rosen, Bien & Asaro. Inmate correspondence from your institution related to mental health issues are handled by Rosen, Bien & Asaro, our co-counsel in the Coleman lawsuit. You can also write to them directly at:

> **Rosen, Bien and Asaro**
> **155 Montgomery St., 8th Floor**
> **San Francisco, CA 94104**

I am very sorry to hear about the difficult time you are having. I know that your current housing situation, and the continued confinement, are greatly impacting your mental health. I know that living under a constant state of fear is taking a toll on you and that, according to your letter, you are exhausted. At this stage we must wait for a response from the administration regarding your situation. After we receive a response, we will be able to determine what, if any, next steps can be taken. I encourage you to talk to mental health staff about how you are feeling and to especially let them know if you feel like hurting yourself. I will contact you as soon as I receive a response from the Warden.

Also, I spoke with Sally from California Prison Focus. She stated that she will be returning the documents you sent to her. You should be receiving those any day now.

Very truly,

Penny Godbold

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns
Carac Laulann • Laura Mannani • Michael Marcum • Ruth Morgan • Dennis Roberts



PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Anne Mania
Millard Murphy
Sara Norman
Keith Wattley

January 14, 2005

Mr. Kenny Morrow, C-53683
CSP-Corcoran, 4B-1L-63
P.O. Box 3481
Corcoran, CA 93212

Dear Mr. Morrow:

I am writing in response to your letters received December 15th, 21st, 28th, January 3rd and 10th. I apologize for not responding to your letters sooner. However, I am frequently out of the office visiting prisons. As a result, it often takes a few weeks before I am able to respond to a letter.

I am enclosing a copy of the response from Warden Scribner regarding your request for PHU placement. Apparently CSP-Corcoran will not be recommending you for PHU placement. As you are already aware, and will read in the letter, CSP-Corcoran has recommended you for PSU placement pending your out-of-state transfer.

I am very sorry. I can imagine that you are very frustrated by this response because you believe, and at least one clinician has stated, that you may not need mental health treatment if placed in the PHU. Nevertheless, the Warden was already informed of this fact, and was provided with a copy of the doctor's notes. Although we have notified the CDC about your concerns and have asked that you be recommended for PHU placement, according to the CDC, they are aware of your situation and your safety needs and decline to place you in the PHU. Our office remains concerned about your safety, but there is nothing more that we can do to assist you with this matter at this time.

According to Jane Kahn at Rosen, Bien and Asaro, you are currently on the waiting list for PSU placement. My understanding is that PSU programing is very good and that you will not be "locked-up" if placed in the PSU. That said, I can not speak to how the PSU will address your specific safety concerns. I encourage you to raise the issue of PHU placement during your DRB hearing.

If you have concerns about your safety in PSU placement, the next step would be for you to file a petition for writ of habeas corpus. Unfortunately, as we've discussed, our office will not be able to

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts



assist you with this process, nor with your meritorious sentence reduction claim. Should you wish to pursue the safety issue on your own, you may be required to complete the 602 process first. I am enclosing information for you regarding an exception to the requirement that a prisoner complete the 602 process when the time it would take to do so would cause him to suffer an unreasonable risk of irreparable harm. In addition, I have previously sent you the Habeas Corpus Manual which further discusses the 602 process. I hope this information is helpful and I wish you all the best!

Sincerely,

Penny Godbold

Encl:   HB § 1.3 and Supp.
        Warden's Ltr.

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                    ARNOLD SCHWARZENEGGER, Governor

DEPARTMENT OF CORRECTIONS
California State Prison - Corcoran
4001 King Avenue
P.O. Box 8800
Corcoran, CA 93212-8800

December 14, 2004



Ms. Penny Godbold
Prison Law Office
General Delivery, CA 94964-0001

Dear Ms. Godbold:

This letter is in response to your letter dated November 5, 2004, regarding
Inmate Morrow's, C-53683, placement and safety at California State Prison-
Corcoran (CSP-COR). The copy of the Departmental Review Board (DRB) dated
May 25, 2004, enclosed with your letter placed inmate Morrow in the
Segregated Housing Unit (SHU) on indeterminate status. In accordance with the
California Code of Regulations, Section 3376.1(7), the DRB is the final review and
authority on classification issues. Under the Classification Services Recommendation,
the DRB placed Inmate Morrow at CSP-COR pending out of state transfer. Therefore,
we do not have the authority to move Inmate Morrow from indeterminate SHU.

On August 25, 2004, CSP-COR recommended to the DRB that he be transferred to a
Psychiatric Services Unit (PSU) due to his Enhanced Outpatient Program (EOP) level of
care pending out of state transfer. Inmate Morrow stated he understood his need for
treatment in a Mental Health Program and agreed to the transfer to PSU.  You
requested Inmate Morrow to be moved to PHU. The DRB has sole authority to move
Inmate Morrow to PHU. He will be able to request transfer to PHU placement his DRB
hearing; however, his mental health EOP status will be considered.

In regards to your concerns about inmate Morrow's safety, the custody staff is very
aware of his safety needs. Sergeant J. Lomeli and Licensed Clinical Social Worker
L. Repasky interviewed Inmate Morrow regarding his safety concerns on
December 2, 2004. The interview was documented and placed in inmate Morrow's
Central File.    The Managers, and Supervisors, Correctional Officers have this
information readily available for their review.

We will continue to provide a safe environment for Inmate Morrow, evaluate his case
factors, and ensure the DRB has up-to-date information.

A.K. Scribner
Warden
California State Prison-Corcoran

ṠANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com



May 3, 2005

Departmental Review Board
Room 300N
1515 S Street
Sacramento, CA 95817

Attn: S. Hubbard, Deputy Director, Institutions Division
B. DeGroot, Asst. Deputy Director, Parole and Community Services Division
L. Rianda, Chief, Classification Services Unit

Re: Kenneth Morrow, C-53683, DRB Action, 5-25-04
Our File No. 489-3

Dear Departmental Review Board:

I am writing on behalf of Coleman class member, Kenneth Morrow, C-53683.
Mr. Morrow's case was referred to the DRB on January 24, 2004 for approval of an
Indeterminate SHU pending his out-of-state transfer request based on overriding safety
concerns. (See Memo to Chief, Classification Services, dated January 24, 2004, attached
hereto.) At the time that Mr. Morrow was approved for transfer to COR-SHU on
Indeterminate status due to safety concerns, pending the Interstate transfer, he was not in
the Mental Health Services Delivery System. (See DRB chrono, dated 5-25-04, attached
hereto.) The DRB approved the Indeterminate SHU pending the out-of-state transfer and
instructed COR ICC to return his case to the DRB in 12 months if Mr. Morrow had not
transferred out of state. The date of the DRB decision was May 25, 2004. The case
should be returning to the DRB as Mr. Morrow has not yet transferred out of state.

We request that the DRB again recommend out-of-state transfer for Mr. Morrow.
His serious security and safety concerns make continued housing in California very
difficult. Mr. Morrow received a letter on February 18, 2005 from the Deputy Compact
Administrator for the Department of Corrections in New Hampshire, denying
California's request to transfer him there. (See February 18, 2005 letter to Morrow,
attached hereto.) According to this letter, Mr. Morrow was informed that New
Hampshire denied California's request to transfer him based upon the fact that "New
**Hampshire had requested additional medical information on numerous occasions
and received no response** as well as your past gang and violent history." It is critical

that the California Department of Corrections provide the other states with requested information in a timely manner in order to ensure Mr. Morrow his best chance at a positive response.

We request that the DRB consider housing Mr. Morrow in the PHU while he awaits responses from the remaining states regarding his Interstate Transfer request. In addition, we request that the DRB house Mr. Morrow in the PHU in the event that his Interstate Transfer requests are denied. Mr. Morrow cannot program in the COR SHU long-term due to mental health concerns that evidence decompensation if he is retained in long-term locked down conditions. He is an appropriate candidate for Protective Housing Unit. (15 CCR Section 3341.5(a)). Mr. Morrow does not require specialized housing for reasons other than protection; he does not have serious psychiatric problems requiring access to hospital care and his mental health needs can be maintained through medications and 3CMS case manager contacts; he is not a member or affiliate of a prison gang; he does not pose a threat to the safety or the security of the PHU; he has specific and verified enemies likely and capable of causing harm and notoriety likely to result in harm if he were placed in a general population yard or even an SNY yard; and he cannot be housed anywhere else.

Mr. Morrow did not fair well in the COR SHU. He was returned to the Mental Health Delivery System – first at a 3CMS level of care, and most recently as EOP level of care after experiencing suicidal ideation over the prospects of permanent SHU housing if his out-of-state transfer is denied. He was transferred to the PSU at SAC in January 2005, however, he does not participate in the EOP program in the PSU because he does not believe that he needs EOP level of care and reports that his clinical team concurs. We have requested that he be discharged from the PSU program and returned to the COR SHU while he waits for his responses to his out-of-state transfer requests. He believes that he can handle short term housing there while he waits DRB action.

Thank you very much for your consideration of this letter.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Jane E. Kahn

JEK:ts

cc:    J. Michael Keating, Jr.
       Lisa A. Tillman, Deputy Attorney General, Coleman v. Schwarzenegger
       Kenneth Morrow, C-53683 (CSP-SAC)

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

July 25, 2005

CONFIDENTIAL ATTORNEY-CLIENT PRIVILEGED
LEGAL MAIL
Kenny Morrow, C-53683
CSP - Corcoran
PO Box 3476
Corcoran, CA 93212

      Re:    Coleman v. Schwarzenegger
            Our File No. 489-3

Dear Kenny:

We received your letters dated July 20 and 21, 2005 today. I am sorry to hear that you are feeling frustrated and that you are once again feeling suicidal. I agree with you that what has been happening to you is unconscionable. It makes no sense to keep someone in severe isolation for their own protection when they have done nothing wrong – especially when, like you, the reason they need to be protected is that they did something right. Also, it sounds like the EOP staff is giving you a hard time for no real reason.

My only advice to you is to hang on and ignore them and see what happens. I know you have been hearing that for a while now, but your out-of-state transfers are still pending. and if they do not come through, the CDCR will need to send you back to the DRB for PHU consideration. I don't blame you for losing patience with this drawn-out process, but the CDCR will need to bring you back to the DRB soon. I'm not sure why the EOP staff there are threatening to send you to the PSU again – I'm hoping that they are just bluffing. In the meantime, you should be able to go to yard. Are there any decent groups there that you would be willing to try, if only to get out of your cell more often? Also, you should ask for one-on-one therapy. Maybe you will get lucky and find a decent case manager. Mike and Jane are out of the office this week, so I will be responding to your letters.

      Take care of yourself and keep in touch.

                            Sincerely,

                            ROSEN, BIEN & ASARO, LLP

                            Tom Nolan

                        By: Tom Nolan

SASE

* MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
** MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

**ROSEN, BIEN & ASARO, LLP**
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

October 18, 2005

Lisa A. Tillman
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2500

Michael Stone
CDC Legal Affairs Division
P.O. Box 942883
Sacramento, CA 94283-0001

Departmental Review Board
Room 300 N
1515 S Street
Sacramento, CA 95817

> Re:   Coleman v. Schwarzenegger
>       Kenneth Morrow, C-53683
>       Our File No. 489-3

Dear Ms. Tillman, Mr. Stone, and Departmental Review Board:

Plaintiffs write on behalf of Coleman class member, Kenneth Morrow, C-53683, who is currently housed at CSP-Corcoran. Mr. Morrow's case was referred to the DRB on January 24, 2004, for approval of an Indeterminate SHU pending an out-of-state transfer request based upon overriding safety concerns. (See Memo to Chief, Classification Services, dated January 24, 2004, attached hereto.) Mr. Morrow was approved for transfer to the Corcoran SHU, pending his Interstate Transfer, but has repeatedly decompensated while housed in the Corcoran SHU--and has been transferred many times to the ACH, to the EOP HUB, to SAC PSU and to SVPP--while waiting for a final decision on his out-of-state transfer requests.

Mr. Morrow recently withdrew his request for transfer to New Hampshire, the last pending request. During the 16th Round monitoring tour of Corcoran, Dr. Metzner, who reviewed Mr. Morrow's file, stated that based upon his familiarity with New Hampshire's

Lisa A. Tillman
October 18, 2005
Page 2

Department of Corrections, he felt it was very unlikely that Mr. Morrow would be accepted for transfer by New Hampshire.

Plaintiffs' counsel wrote to the Departmental Review Board in May 2005 to request that Mr. Morrow be placed in the Protective Housing Unit (PHU) at Corcoran while he awaited responses on his out-of-state transfer requests. (See Letter to DRB, dated May 3, 2005, attached hereto.) In addition, plaintiffs requested that the DRB house Mr. Morrow in the PHU in the event that his out-of-state transfer requests were denied due to mental health concerns based on Mr. Morrow's documented history of mental decompensation when housed in long-term locked down conditions. (See Memo to Chief, January 28, 2004: 2 suicide attempts in 1990 in Corcoran SHU, one suicide attempt in 1992 in SAC ASU, multiple ACH admissions from Corcoran SHU recently.) These requests were denied. Unfortunately, and as predicted, Mr. Morrow again experienced decompensation while housed in the Corcoran SHU and was transferred to DMH during the subsequent months. He was returned to the Corcoran SHU.

Mr. Morrow was most recently housed in the Corcoran SHU where his mental health has again deteriorated. Following placement in the ACH on October 13, 2005, for suicide precautions, Mr. Morrow has written that his case manager is recommending that his treatment level be increased to EOP. We request that Mr. Morrow, whose Indeterminate SHU was imposed for safety concerns, be referred for transfer to the Level IV SNY EOP program at Mule Creek State Prison where he can program on a mainline. Mr. Morrow deserves the opportunity created by such a program.

In addition, Mr. Morrow's demonstrated inability to program in the SHU environment must not be ignored. "Cycling" a prisoner such as Mr. Morrow, between the SHU, crisis beds, the PSU and DMH causes permanent harm to a patient. This continued harm could be prevented by the placement that we have requested for Mr. Morrow.

Thank you in advance for your consideration and response to this request.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Jane E. Kahn

JEK:ts

cc:    J. Michael Keating, Jr.
       Matthew A. Lopes, Jr.
       Coleman Co-counsel
       Kenneth Morrow, C-53683 (CSP-Corcoran)

State of California                                    Department of Corrections and Rehabilitation

# **Memorandum**

Date    :    **August 16, 2005**

To    :    **K. Morrow**
            **C53683**


Subject:    **PHU REQUEST**


This is in response to the August 1, 2005, memo you wrote to Warden Scribner regarding the failure of CSP-COR's ICC to refer you to the Departmental Review Board (DRB) for PHU housing. Your placement is completely managed by the DRB.    CSP-COR does not have jurisdiction over your placement in PHU. You need to address this concern to the DRB since COR SHU is unable to assist you.

R. Lopez
Captain 4B-SHU

State of California                                                                    Department of Mental Health

**SALINAS VALLEY PSYCHIATRIC PROGRAM**
**PSYCHIATRIC DISCHARGE SUMMARY**

Identifying Information:

**Patient Name: MORROW, KENNETH**

Admission Date: 5/24/05
Discharge Date:6/21/05                          INMATE COPY
CDC# C 53683
DMH#111-00251-9
DOB: 8/12/1962 Age: 42
Sex X Male ☐ Female
Ethnicity: ☐African-American X Caucasian ☐ Hispanic ☐ Asian ☐ Other
Country of Origin: X USA ☐ Mexico ☐ Other

Controlling Offense: First-degree murder in 1987
Source of Information: X Patient X Unit Health Record X Staff X Other: CAT documents
Transferred From: COR/EOP
Referring Clinician: L.Kuberski, Ph.D.

Reason for Admission to SVPP: Recent Decompensation/Exacerbation of Symptoms;-Self-Harm or
Suicidal Behavior as a product of major/severe Axis I disorder

Behavior Alerts
☐ Recent Violence
X History of Patient or Staff assault
X Recently suicidal
X History of repeat suicidality
X Recent self harm or attempt
X Self harmful history
☐ Withdrawn/Isolative
☐ Impulsivity
CS=391    CL: Max S    Length of Term: 26 to Life    MEPD 9/5/08    MDO: Yes
Gang Affiliation: Aryan Brotherhood Dropout
Commitment Offense: 1ˢᵗ Degree Murder- Stabbed his older girlfriend several times when she
refused to move in with him. He had been released on parole only a short time. He denies that the
murder was premeitated. He claims that he pled guilty to 1ˢᵗ degree because he felt so humiliated in
court in front of the victims family that he had to end the proceedings by pleading guilty.
Disciplinary History: Threatening Staff x2, Mutual Combat x2, Slashing Assault W/Serious Bodily
Injury, Trafficing Narcitics, Battery on Staff x4, Fighting x2, Numerous Attempted Suicides/Self
Mutilation, Stabbing Assault, Battery on I/M w/WPN, cell fight, poss firing device.
Pending Disciplinaries: N/A
Offense History: He also has a conviction for robbery and many RVRs for battery,
threats/violence, and mutual combat.

DMH-SVPP

PSYCHIATRIC DISCHARGE SUMMARY
Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

MORROW, KENNETH
SVPP 111000251-9
C8/12/62    WH
CDC    C53683
05/24/05

State of California                                                        Department of Mental Health

**Sex:** No
**Escape:** Walkout of Juvenile Facility- 1979
**Arson:** No
**DDP Code:** NCF

# INMATE COPY

Recent Psychiatric History: Mr. Morrow has been referred because he is a danger to himself and represents a chronic, long-term risk for suicide within the CDC, although he is not currently a high risk for suicide at present . He has a serious history of suicidal behaviors within, and prior to his current CDC incarceration. He is experiencing depression, hopelessness, and demoralization & frequent suicidal thinking about his current life situation. He is on SHU on indeterminate status for safety concerns while serving a life sentence. He appeared in a training video for CDC officers, and used even now, that demonstrate how to make a bomb out of Kool Aid. Currently he is unable to walk any yards in CDC including SNY. He Is waiting for an Out-of-state Transfer but Has Been turned down twice. Increasingly, he becomes or pessimistic , hopeless, and self-dangerous, as he sees his options for a peace "Normal" life in CDC disappear.

**Admission Medications**
Risperidone 2 mg PO Q. AM & 4 mg PO Q. HS
Artane 2 mg PO BID
Wellbutrin 300 mg PO Q. AM & 150 mg PO Q. HS
Benadryl 50 mg PO Q. HS

Allergies: Haldol, Stelazine, Thorazine

Relevant Physical Illness: hepatitis C, Grand Mal Seizures

**Admitting Diagnosis :**
Axis 1    296.3 Major Depressive Episode, recurrent, moderate
          304.80 Polysubstance Dependence
Axis II   301.83 Borderline personality disorder with antisocial features (severe)
Axis III  Hepatitis C
Axis IV   Incarceraton, life term: SHU with indterterminate status
Axis V    GAF 40

Patient-Preferred interventions in the event of exacerbation of symptoms (based on past history of response)
   1. Medications" It don't help."
   2. Interpersonal contact "Probably not, it might make mc madder."
   3. Time Out " Oh, Sure  put me put me in another cage."
   4. Seclusion/Restraint" Never."

Primary Admitting Diagnosis: Major Depressive Disorder, moderate
Polysubstance Dependence

DMH-SVPP

**PSYCHIATRIC DISCHARGE SUMMARY**
Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

MORROW, KENNETH
S V P P 111000251-9
08/12/62    WR
C D C   C53683
05/24/05

**Significant Physical Examination Findings**
 X Examination essentially within normal limits

**Past Psychiatric History –**

INMATE COPY

Age 15-16 hospitalized in County Mental Health hospital in San Diego County for 1 year. Also hospitalized a second time in a mental health facility before coming into the prison system but cannot remember the name of the hospital.

The patient related the following serious suicide attempts: age 12 cut his jugular vein, hospitalized; age 20 hung himself in jail; age 27 overdosed on Vistaril and Sinequan; age 40 overdosed on heroin.

The patient's present SHU indeterminate status is the conclusion of years of prison gang involvement, institutional drug use, and attempts to assist custody staff. He faces life in solitary confinement. This has engendered a major depression with agitation, rage, demoralization, hopelessness, and a chronic suicidal ideation.

He appeared in a training video for CDC officers, still in use, that demonstrates how to make a bomb out of Kool Aide. He has been turned down twice for interstate transfer. He has significant safety concerns throughout CDC. He becomes increasingly more hopeless, pessimistic and self-dangerous as he sees his
 options for a " normal life " in prison disappear.

He has a long history of suicidal attempts/ behavior and presents as a serious risk for suicide.

Substance Abuse History-
ETOH age 6
Marijuana age 8
Methamphetamine age 12
LSD age 13
Heroin age 14
Ritalin as child prescribed by a psychiatrist

Past Medical History  (Relevant Medical, Surgical, and Trauma  History)
Hepatitis C positive
S/P 4 stab wounds, including neck, back, stomach and ribs.
S/P 2 gunshot wounds in legs, by prison guards
 S/P compound fracture left arm in childhood

PSYCHIATRIC DISCHARGE SUMMARY
Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

DMH-SVPP

MORROW, KENNETH
SVPP 111000251-9
08/12/62    WM
C D C   C53683
05/24/05

3

## Family History –

Patient was born in Santa Barbara, CA., grew up to age 6 with mother and father. Father was a heroin addict, committed suicide. Mother had a nervous breakdown when patient was age 6, and he was sent to a foster home. There followed a succession of foster homes, then reform school and Juvenile hall. Patient came into the prison system at age 20.

## Relevant Social History –

Patient worked at various jobs before prison, including manual labor in Nebraska for a food company, sandblasting on bridges, and working on an oil platform sinking pipes into the ground.

## Mental Status

Appearance, ability to give history and estimation of accuracy of information:
Appearance is fair. Patient has good short term and long term memory, gives a fairly accurate history. He was able to remember correctly 3 words in 5 minutes. He was able to remember details of his childhood and adolescence. His concentration was within normal limits. He was cooperative. His behavior was normal in that he had no tics or other abnormal motor movements.

Mood – Per patient, " pissed off, depressed and confused ".

Affect – Full range and appropriate

Speech– normal rate, rhythm and volume

Thought Content –
Patient stated that he began hearing voices at age 25 after he was in the prison system. He last heard voices calling his name 2 days ago. He alleges that he carries on conversations with the voices. He states that the voices talk to him about death and suicide.

Suicidal ideation/Plan/Intent – Denies at the time of the interview.

Homicidal Ideation/Plan/Intent– Denies

Cognitive function and estimate of intellect – IQ within normal limits. Cognitive function may be impaired as a result of drug abuse.

Judgment - Poor

Insight Regarding Illness – Poor. However patient did point out that sensory deprivation in solitary confinement can make a patient suicidal.

Motivation For Treatment:
☐ Expresses desire for treatment
☐ Accepts need for treatment
☐ Indifferent toward treatment



DMH-SVPP

## PSYCHIATRIC DISCHARGE SUMMARY
### Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

MURROW, KENNETH
S V P P 1 1 1 0 0 0 2 5 1 - 9
06/32/62    WH
C D C   C53683
05/24/05

State of California                    INMATE COPY                    Department of Mental Health

☒ Reluctant to accept treatment – Patient states that being in DMH may prevent his being transferred to another state under the Western Interstate Corrections Compact. He is willing to accept treatment if it does not interfere with his transfer to another state, where he wants to make a fresh start.

☐ Denies need for treatment

☐ Refuses to participate in treatment

**Strengths**

☐ Cooperative                                    ☐ Medication compliant

☐ Positive past response to treatment            ☒ Average or above intelligence

☐ Expresses desire for treatment                 ☐ Social skills adequate

☒ Memory intact                                  ☒ Adequate learning skills

☒ Other – Tries to help others.

**Weaknesses**

☐ Uncooperative ☐ Due to illness      ☐ Not due to illness

☐ Refuses treatment ☐ Reluctant to accept treatment

☒ Medication non-compliant

☐ Medication compliant only with Keyhea Order

☒ Poor past response to treatment       ☐ Denies need for treatment

☒ Past History of violence              ☒ Poor impulse control

☒ Intellectual/Perceptual/Cognitive Limitations

☐ Memory impairment

☐ Illness is known to be treatment resistant

☒ Other – Becomes upset when ignored.

**Narrative Summary**

Patient is a 42 year old white male who is a dropout from the Aryan Brotherhood gang. He has a long history of suicidal behavior/attempts and is at serious risk for suicide. He has a history of numerous assaults on staff and other inmates. He has a life sentence. He is presently on an indeterminate SHU status which has engendered feelings of hopelessness, rage, demoralization and suicidal ideation. He hopes that if he is transferred to another state he has a chance, if he becomes a model prisoner, of getting out of prison.

At the time of this evaluation patient stated that he wanted to be discharged back to his referring facility. When asked why he said the he has applied for transfer to another state under the Western States Correction Compact. He believes that if he is treated in a mental health facility his chances of getting a transfer will be adversely affected. He has applied to and been turned down by Nevada, Montana and Wyoming, He thinks he still has a chance to be transferred to New Hampshire. He states that he needs Protective Housing Unit housing. He is fearful of going to groups because he has dropped out of the Aryan Brotherhood and has informed on them.

DMH-SVPP

PSYCHIATRIC DISCHARGE SUMMARY

Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

MORROW, KENNETH
SVPP 111000251-9
08/12/62    WH
CDC  C53683
05/24/05

State of California                                    INMATE COPY        Department of Mental Health

**Working Diagnosis**

**Admitting Diagnosis :**

Axis I    296.3 Major Depressive Episode, recurrent, moderate
          304.80 Polysubstance Dependence

Axis II   301.83 Borderline personality disorder with antisocial features (severe)

Axis III  Hepatitis C

Axis IV   Incarceraton, life term: SHU with indterterminate status

Axis V    GAF 40

**Prognosis**

☒ Favorable with Program completion

☒ Unfavorable with medication and/or rogram non-compliance

☒ Favorable if Axis II problems are not prominent

☒ Unfavorable if Axis II problems  predominate

Medication changes During SVPP Admission: All medications here are given as: injectable, liquid or crushed, and dissolved or dispersed before administration.

Risperidone was stopped  stopped due to X med refusal by patient

Artane : BID dosing  was stopped due to  X patient request, but was left  PRN BID

Wellbutrin and Benadryl are continued as on admission. Therapy Provided/Patient Response

Individual counseling  & IDTs      X  poor participation

| | |
|---|---|
| Biofeedback | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not offered |
| Health | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not attended |
| Coping Skills | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not attended |
| Anger Manageme nt | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not attended |
| Leisure skills | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not attended |
| Relapse Prevention | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not attended |
| Art Therapy | ☐ positive response ☐ indifferent response<br>☐ poor participation ☐ refused<br>X not attended |
| Music Therapy | ☐ positive response ☐ indifferent response   DMH-SVPP |

**PSYCHIATRIC DISCHARGE SUMMARY**

Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

MORROW, KENNETH
SVPP 111000251-9
08/12/62   WH
C D C   C53b83
05/24/05

State of California                                                                 Department of Mental Health

☐ poor participation ☐ refused
X not attended

INMATE COPY

**Symptom and Functioning Change:**
☐ Improved X No change X Uncooperative ☐ Assaultive/Disruptive/Destructive

Description: Mr. Morrow stated that while he had agreed to come here earlier, that before he was actually transferred to SVPP, he did not want to come here for two reasons: 1 -He had concerns that being identified as a DMH patient might disadvantage him in his quest for transfer out of state, 2-From his experience in other prisons with group therapy, he had found them too simplistic, insufficiently informative and boring.

In a later IDT (5/27/05) he reported that he was afraid that someone might kill him here. his attitude throughout his stay was one of resistance , complete refusal to have admission lab work drawn, selective compliance with meds, production of multi-page carefully crafted printed documents to the administration and various clinicians containing: demands, claims that we had lied, and betrayed him & revealed supposed private discussions to others. He made one clearly implied threat in writing, and one threat expressed to the Sr. MTA toward " a certain clinician" if he was not released. There were 2 IDTs after 2 weeks here, in which some progress seemed possible, but he promptly reverted to the above behavior.

He was informed that he would be discharged, and his demands greatly diminished , his attitude partially improved for several days..
Two days ago he wrote a threat that if he was not allowed to shave, he would create great problems in his cell, carefully detailing the severe threats to his life.

He had no evidence of psychosis , or substantial Axis I diagnoses at any time during his stay here. He seemed impulsive, angry, and routinely made nonnegotiable demands, since "power issues" ae the focus of his behaviors, seem paramount to him and are expressions of the Axis II dominance in his personality.

**Final Diagnosis**
**Admitting Diagnosis :**
Axis I    309.4Adjustment Disorder with Mixed Disturbance of Emotions and Conduct
*Not found here:*296.3 Major Depressive Episode, recurrent, moderate
            304.80 Polysubstance Dependence
Axis II   301.83 Borderline personality disorder with antisocial features (severe)
Axis III  Hepatitis C
Axis IV   Incarceraton, life term: SHU with indeterminate status
Axis V    GAF 40

Continuing Mental Health Goals and Recommended follow up
X Continue current medication regimen as ordered                    DMH-SVPP

**PSYCHIATRIC DISCHARGE SUMMARY**
**Salinas Valley Psychiatric Program**
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

MORROW, KENNETH
SVPP 111000251-9
08/12/62    WM
CDC  C53683
05/24/05

SVPP 1013 2/2003                                7

**Prognosis**                                            INMATE COPY

☐ Favorable:   Program completed
☐ Favorable:   So long as Axis II problems are not prominent
X Unfavorable: Axis II problems predominate
X Unfavorable: Due to medication/Program non-compliance
Discharge Medications: see attached physicians orders

**Polypharmacy Rationale:** NA

**Medical/Surgical Conditions Present: status Hepatitis C, and otherwise:**
 X  No significant illness detected

Significant Laboratory results: CBC, UA, Chem 25, RPR, HIV, Hepatitis & Lipid Panel
NONE: patient did not cooperate with any lab testing.

**Behavior Alerts**
X  Assaultive                              X  Intrusive
☐  Predatory                               ☐  Incitive
X  Abusive                                 ☐  Sexually inappropriate
☐  Dependent/needy                         X  Self-injurious
X  Oppositional/Defiant

**Other Discharge Recommendations**
☐  Continue Keyhea Order  ☐ with renewal upon expiration
X  Return to referring facility  X  EOP
☐  Resume PSU
☐  CCCMS
☐  Vacaville ☐ Acute Program ☐ Intermediate Program
☐  Atascadero State Hospital
☐  Community Mental Health Center

**Relapse Prevention Measures**
X  Patient known to be med non-compliant given the opportunity
☐  Continue/Renew/Obtain Keyhea Order
X  Medication to be given in crushed form, liquid form, or injection for medication
    compliance
X  Direct Observation of Treatment
X  Periodic blood levels of medications to assure medication compliance

                                        DMH-SVPP

                                        MORROW, KENNETH
                                        SVPP 111000251-9
PSYCHIATRIC DISCHARGE SUMMARY           08/12/62    WH
Salinas Valley Psychiatric Program      C D C   C53683
State of California Health and Welfare Agency    05/24/05
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

State of California                                                          Department of Mental Health

James G. Harrison, M.D. Staff Psychiatrist                    4/21/05    1000
Signature                                                              Date/Time

For further information contact SVPP at 831-678-5661 Fax 831-678-5666

## INMATE COPY

## Psychiatric Discharge Summary Morrow, Kenneth

DMH-SVPP

MORROW, KENNETH
: V P P 1 1 1000251-9
08/12/62    WH
C D C    C53683
05/24/05

PSYCHIATRIC DISCHARGE SUMMARY
Salinas Valley Psychiatric Program
State of California Health and Welfare Agency
Confidential Patient Information
W&I Code 5328 and 42 CFR 164.520

SVPP 1013 2/2003                              9

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

**ROSEN, BIEN & ASARO, LLP**
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

October 26, 2005

Kenny Morrow, C-53683
CSP-Corcoran
P.O. Box 4381
Corcoran, CA 93212

> Re:  Coleman v. Schwarzenegger
> Our File No. 489-3

Dear Mr. Morrow:

Jane Kahn provided me with your letter of October 23 (addressed to me) which responded to my October 18 letter.

We will begin the process of copying all of our correspondence with you. I remain concerned about the risk to you if your letters are stolen, lost or reviewed by other prisoners or CDC staff.

We are actively pursuing, as part of the Coleman case, some of the very problems that you have experienced in the SHU and other locked units. While I do not pretend to understand your feelings of depression and hopelessness, I am gravely concerned about your situation and will continue to fight to better your conditions, mental health treatment and housing. There is no advantage to anyone of your taking your life. Your life, and every life, has great value. You are helping obtain justice for yourself and others. Keep it up.

Very truly yours,

ROSEN, BIEN & ASARO, LLP

*mike Bien* JK

By: Michael W. Bien

MWB:ts

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

## ROSEN, BIEN & ASARO, LLP

ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

November 14, 2005

Kenny Morrow, C-53683
CSP-Corcoran
4B-1L-32
Corcoran, CA 93212

RECEIVED

NOV 2 1 2005

Rosen Bien & Asaro

Re:   Coleman v. Schwarzenegger
      Our File No. 489-3

Dear Mr. Morrow:

I am writing in response to your last letter that our office received while I was on a monitoring tour at CCI. I have made the copies that you requested and am enclosing them with this letter. I cannot forward the letters for you but will enclosed stamped envelopes for you to use.

I have also enclosed a response that I received from Linda Rianda, Chief of Classification Services Unit, regarding my letter to the DRB. In her letter she has written that she has contacted Warden Scribner at Corcoran and requested that your case be reviewed and referred to the DRB for appropriate placement. She indicates that as part of the review staff at Corcoran will speak with you about whether you will be comfortable with placement at the Level IV SNY EOP at Mule Creek State Prison. Let me know if and when that occurs.

Our office is copying your correspondence file. It is quite large and I apologize that this is taking a while to complete. It should be completed this week.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Jane E. Kahn

JEK:ts
Enclosures- Copies of 9/1/05 Morrow Letter, Rianda Letter, and SASE

* MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
** MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

**ROSEN, BIEN & ASARO, LLP**
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

November 21, 2005

CONFIDENTIAL - LEGAL MAIL
Mr. Kenneth R. Morrow, C-53683
CSP - Corcoran, 4B-1L-32-L
PO Box 3481
Corcoran, CA 93212

> Re:  Coleman v. Schwarzenegger
>      Our File No. 489-3

Dear Mr. Morrow:

I am writing to forward you this package of documents. It includes Ms. Kahn's letter to you, dated November 14, 2004, and includs all relevant enclosures. This package was returned to our office today, November 21, 2005, as a result of an inadequate address placed on the package.

We are also enclosing a copy of your letter, which was filed with the court on November 15, 2005. We have also received a letter from you today, and we are returning the original document you enclosed.

Sincerely yours,

ROSEN, BIEN & ASARO, LLP

By: Paloma Wu
Paralegal

Encl:
JK letter to i/m, dated 11-14-05, with all enclosures
I/m letter filed w/ court on 11-15-05
Orig, MWB letter to i/m, dated 10-26-05
PW:

*  MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
** MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

Exhibit H

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | 1. | |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| K. MORROW | C-53683 | SHU | 4B-11-32 |

A. Describe Problem: I FILED A 602 ON THIS SAME MATTER ON 9/20/05, AND 4B-EOP SGT. RORICHEAUX, ON 10-25-05, SAID I HAD 30 EXHIBITS TO MANY, & HE CANT SEND IT TO APPEALS OFFICE THAT WAY, AND SUGGESTED I RE-FILE w/FEWER EXHIBITS, SO HERE I DO SO. ON 5-25-04, THE DRR PUT ME IN SHU FOR SAFETY PENDING TRANSFER OUT OF STATE SEE CDC 12B-6-) ATTEN 5-25-04, ATTACHED. THE DRR REFERRAL DATED 1-28 OA (ATTACHED)

If you need more space, attach one additional sheet.                    CONTINUED PG "2"

B. Action Requested: 1 DFA INVESTIGATION, 2 PHU HOUSING 3 A WRITTEN APOLOGY BY CDC AND SEY KORIA OF CSPC, 4 THAT CHARGES BE BROUGHT AGAINST SEY KORH & YAMAMOTO SENT TO D.A. KINGS COUNTY.

Inmate/Parolee Signature: K. MORROW    DRB, be investigated by I.G.    Date Submitted: 10/26/05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:


Case 2:90-cv-00520-KJM-SCR   Document 1722-1   Filed 12/05/05   Page 46 of 62

**PAGE TWO (2) 602 DTD: 10/26/05/ SHU-PHU**

INDICATES PHU IS AN OPTION TO HOUSING. AND YET
I'm HOUSED ILLEGALLY IN SHU, FOR PRODUCING
A SECURUITY TRAINING ALERT VIDEO, WHERE
WHEN I/M'S DISCOVERED MY MERITORIOUS ASSISTENCE
IN SAVING STAFF & I/M'S LIFES. MADE THREATS
AGAINST ME FOR ASSISTING THE ENEMY.

I HAVE A LONG RECORD OF COMMITTING SERIOUS
SUICIDE ATTEMPTS, WHEN SUBJECT TO **SOLiTARY**
**CONFINEMENT**, AND THE HARMFUL PSYCHOLOGICAL
CONSEQUENCES OF SOLITARY CONFINEMENT **ENFLICTION OF**
UNWANTON PAIN] VIOLATES MY 8TH AMENDMENT
PROTECTION, AGAINST THIS ACTION OF CRUEL & UNUASUAL PUNIS-
MENT ON 9-7-05. CSPC **A.W. YAMAMOTO** AND, HUB
SUPERVISOR MS. **SEYKORA** AT INTT. HELD A
HEARING ON ME. SEYKORA REDUCED MY LEVEL OF
CARE FROM EOP TO CCCMS, AND A.W. **YAMAMOTO**
ORDERED ME TO BE REHOUSED IN SHU, AND
DENYING MY REQUEST TO BE HOUSED IN **PHU**.
WHERE I FIT, CRITERIA FOR, & REFUSING TO MAKE
A DRB REFERRAL —— FOR **PHU**. HOUSING.
ATTACHED MCSP, REFERRAL TO DRB DATED 1-28-04
INDICATES THAT WHEN I'M HOUSED. IN ANY SOLI-
TARY CONFINEMENT, ASU-SHU, PSU, ETC. I
SUFFER UNWANTON INFLICKTION OF PAIN, AND,
SUCCUMB TO SUICIDE, SEE REFERRAL, DATES OF
SUICIDE ATTEMPTS, **1990,- 1992- 1993 -1994-1997**.
THE DRB, AND CSPC, A.W. **YAMAMOTO** AND HUB
SUPERVISOR, **SEY KORA**; FAILED TO RECONSIDER THEIR
DECISION, AND IGNORING THE RECORD. VIOLATED
THE COURTS IN RE COLEMAN V. WILSON 912 F. SUPP
1282 (E.D. Cal. 1995) PAGE 1291, ORDER THE COURT RULED
QUOTE" POLICIES & PRACTICES REGARDING HOUSING I/M'S
IN SHU-ASU- KNOWING SAID HOUSING WOULD
INFLICT UNWANTON INFLICTION OF PAIN VIOLATES
8TH AMEND a RIGHTS OF I/M'S, DESPITE CLAIM

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*November 16, 2005*

*MORROW, C53683*
*4B1L0000000032L*

Log Number: CSPC-6-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Departmental Review Board decisions are (not appealable) in accordance with CCR 3084.1(a).*

Appeals Coordinator
CSP-Corcoran

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

3. New section refiled 10-23-92 as an emergency; operative 10-22-92 pursuant to Government Code section 11346.1(th) (Register 92, No. 43). A Certificate of Compliance must be transmitted to OAL 2-23-93 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 10-23-92 order transmitted to OAL 12-18-92 and filed 2-3-93 (Register 93, No. 6).

### Article 7.  Furloughs and Temporary Leave

#### 3080.  Administration.

Institution and parole division staff will administer inmate work and educational furloughs and temporary community release programs in a prudent manner, and in keeping with the basic need for public protection.

Comment: Former DP-1701, policy, general.

#### 3081.  Compliance.

Inmates who are granted a furlough or temporary leave must comply with all departmental rules and regulations governing such programs; with any conditions for approval; and, with all applicable laws; and must meet eligibility requirements in accordance with departmental procedures and Sections 2690, 2691, 6250 et seq., 6263 of the Penal Code and Section 3306 of the Welfare and Institutions Code.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 6250-6253 and 6260, Penal Code; and section 3306, Welfare and Institutions Code.

HISTORY:

1. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

#### 3082.  Temporary Leaves.

Temporary leaves will be granted only for inmates who meet the criteria for such leaves, as prescribed in guidelines established by the director, for the following reasons:

(a) Family Emergency. Emergency leaves will normally be considered only for attendance at services for deceased members of the inmate's immediate family, and for visits to critically ill members of the inmate's immediate family. Immediate family members are defined in section 3000.

(b) Prerelease Planning. Prerelease planning leaves may be considered for the purpose of employment interviews, making residential plans and for other reasons closely connected to release programs. A prerelease leave will not normally be granted earlier than 63 days before the inmate has an established or reasonably anticipated release date nor any earlier than is required to accomplish the purpose of a prerelease leave.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2690 and 5054, Penal Code.

HISTORY:

1. Amendment filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).

2. Amendment filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).

3. Amendment of subsection (b) filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).

4. Change without regulatory effect amending subsection (a) filed 12-2-2003 pursuant to section 100, Title 1, California Code of Regulations (Register 2003, No. 49).

#### 3083.  Court Hearing on Inmate's Children.

Upon a court order, inmates will be released to the custody of the sheriff for appearance in court in actions concerning termination of parental rights of an inmate or other parental or marital rights.

HISTORY:

1. Editorial correction of printing error (Register 92, No. 5).

### Article 8.  Appeals

#### 3084.  Definitions.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Change without regulatory effect repealing section filed 10-29-90 pursuant to section 100, Title 1, California Code of Regulations (Register 91, No. 6).

#### 3084.1.  Right to Appeal.

(a) Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy, which they can demonstrate as having an adverse effect upon their welfare. The decisions of the Departmental Review Board, which serve as the director's level decision, are not appealable and conclude the inmate or parolee's departmental administrative remedy pursuant to section 3376.1.

(b) Institution staff shall provide the assistance necessary to ensure that inmates who have difficulty communicating in written English have access to the appeal process.

(c) The department shall ensure departmental appeal forms and forms prescribed by the Board of Prison Terms, the Narcotic Addict Evaluation Authority, and the Prison Industry Authority for appeal of decisions, actions, or policies within their jurisdictions, are readily available to all inmates and parolees.

(d) No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in section 3084.4.

(e) Pursuant to Penal Code section 148.6, it is against the law to make a complaint against a departmental peace officer that the complainant knows to be false. An appeal alleging misconduct by a departmental peace officer as defined in section 3291(b) shall be accompanied by a Rights and Responsibility Statement as shown in section 3391(d). Failure to submit this form will be cause for rejecting the appeal, in accordance with section 3084.3(c)(5).

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 148.6, 832.5 and 5054, Penal Code.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed 9-15-89. For prior history, see section 3003.

2. Certificate of Compliance as to 5-18-89 order including a clarifying change of subsection (h) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Amendment of subsection (a) filed 1-16-92; operative 2-17-92 (Register 92, No. 13).

4. Amendment of subsections (a) and (d), new subsection (e), and amendment of Note filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

5. Amendment of subsections (a) and (d), new subsection (e), and amendment of Note refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

6. Editorial correction of History 5 (Register 97, No. 24).

11. Certificate of Compliance as to 3-20-96 order transmitted to OAL 7-25-96 and filed 9-5-96 (Register 96, No. 36).

12. Amendment of section and Note filed 5-1-97; operative 5-31-97 (Register 97, No. 18).

13. Amendment of subsection (d)(2)(A) filed 7-28-97 as an emergency; operative 7-28-97 (Register 97, No. 31). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 1-5-98 or emergency language will be repealed by operation of law on the following day.

14. Certificate of Compliance as to 7-28-97 order transmitted to OAL 10-27-97 and filed 12-8-97 (Register 97, No. 50).

15. Amendment of subsection (d)(2)(A), new subsection (d)(2)(B), subsection relettering and amendment of subsection (d)(3)(E) filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.

### 3376.1. Departmental Review Board.

The Departmental Review Board (DRB) provides the director's final review of classification issues, which are referred by an institution head for a resolution or decision at the headquarters level. The DRB decision serves as the director's level decision, which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues.

(a) Composition of the DRB:

(1) The deputy director or an assistant deputy director of the institutions division (chairperson).

(2) The deputy director or assistant deputy director of the parole and community services division.

(3) The chief of classification services (shall abstain on DRB issues resulting from a difference of opinion between an institution head and the chief of classification services).

(4) The chief of health services.

(b) Two members shall constitute a quorum.

(c) The DRB shall meet at the call of the chairperson.

(d) Referrals shall be made to the DRB when:

(1) An institution head is unable to resolve a difference of opinion with the chief of classification services.

(2) An institution head believes a clarification of departmental policy of statewide importance is required.

(3) An institution head believes a DRB level decision for placement of an inmate is required because of an unusual threat to the safety of persons or public interest in the case, e.g., commuted or modified death sentence or classification of an inactive gang member or associate. Subsequent DRB reviews of the continued placement of inactive gang members or associates in a security-housing unit (SHU) shall occur no earlier than two years after the previous DRB decision. Upon denial of an alternative placement for an inactive gang member or associate, the DRB is authorized to schedule an earlier review of the placement if the DRB determines that it is reasonable to expect that release from SHU will be granted in less than two years.

(4) A difference between a Board of Prison Terms' program placement order and the department's policies cannot be resolved.

(5) An out-of-state or federal prison placement is recommended by the institution classification committee.

(6) Meritorious credit is recommended by an institution classification committee to reduce an inmate's period of confinement pursuant to Penal Code Section 2935.

(7) The inmate's current placement was ordered by the DRB and there is no documentation in the inmate's central file to indicate that the DRB has relinquished responsibility for the inmate's placement.

(e) Decisions of the DRB shall be in writing and implemented within 30 calendar days after the decision is made.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; and Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D.Cal. 1995) 889 F.Supp. 1146.

HISTORY:

1. New section filed 1-16-92; operative 2-17-92 (Register 92, No. 13).

2. Amendment of subsection (d)(3) and Note filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.

3. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).

### 3377. Facility Security Levels.

Each camp, facility, or area of a facility complex shall be designated at a security level based on its physical security and housing capability. Reception centers are not facilities of assignment and are exempt from the security level designations except for the assignment of permanent work crew inmates. The security levels are:

(a) Level I facilities and camps consist primarily of open dormitories with a low security perimeter.

(b) Level II facilities consist primarily of open dormitories with a secure perimeter, which may include armed coverage.

(c) Level III facilities primarily have a secure perimeter with armed coverage and housing units with cells adjacent to exterior walls.

(d) Level IV facilities have a secure perimeter with internal and external armed coverage and housing units described in section 3377(c), or cell block housing with cells non-adjacent to exterior walls.

NOTE: Authority cited: section 5058, 5058.3, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

HISTORY:

1. New section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.

2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).

3. New section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.

4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).

5. New section filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.

6. Certificate of Compliance including amendment transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).

7. Change without regulatory effect amending section filed 10-22-8 pursuant to section 100, Title 1, California Code of Regulati- (Register 91, No. 4).

8. Editorial correction of printing errors (Register 91, No. 11).

9. Editorial correction of printing error in subsection (b) (Register No. 5).

10. Amendment of section heading, first paragraph and Note 8-27-2002 as an emergency, operative 8-27-2002 (Register No. 35). Pursuant to Penal Code section 5058.3 a Certific Compliance must be transmitted to OAL by 2-4-2003 or gency language will be repealed by operation of law c following day.

11. Certificate of Compliance as to 8-27-2002 order transmi OAL 1-21-2003 and filed 3-6-2003 (Register 2003, No. 1'

### 3377.1. Inmate Custody Designations.

(a) Designation of a degree of an inmate's custody ; reasonably related to legitimate penological interests. Th

• Protective Housing Unit (PHU) – A Protective Housing Unit (PHU) is used to incarcerate those prisoners whose safety would be endangered by general population placement.[3] The PHU houses only a very small number of prisoners with extreme security concerns. A prisoner may be placed in a PHU if he or she: (1) does not require specialized housing for reasons other than protection; (2) does not have serious psychiatric or medical problems requiring hospital care; (3) is not a member or affiliate of a prison gang; (4) does not pose a threat to the safety or security of the PHU; (5) has specific verified enemies likely to cause harm if placed in general population; (6) has notoriety likely to result in harm if placed in the general population; (7) cannot be safely housed anywhere else; and (8) is in present danger of great bodily harm, as demonstrated by something more than the prisoner's uncorroborated report, the nature of the commitment offense or prior protective custody placement.[4]

A Classification Staff Representative (CSR) must approve all moves into a PHU.[5] As of January 2003, the CDC operates a small PHU at CSP–Corcoran. There are also a few cells that serve a similar purpose at the California Correctional Institution (Tehachapi) known as the Restricted Housing Unit (RHU). Although PHU placement involves stricter security, PHU prisoners (unlike administrative segregation and SHU prisoners) may get job assignments and corresponding privileges.

A prisoner who believes he or she is in danger should talk to prison staff about the safety issues. The prisoner should provide as much detail as possible to show why protection is needed, such as specific times, dates, places and details of attacks or threats. A prisoner can also ask family, friends, or an attorney to contact the prison about the situation, but prison officials will generally only act if they receive detailed information about why a prisoner is in danger.

If prison officials do not respond to the prisoner's concerns, a prisoner should file an administrative appeal using a CDC 602 form. A 602 appeal should be processed as an "emergency appeal" if it involves a need for protective custody or challenges a decision to transfer a prisoner to an institution housing a known enemy.[6] A prisoner should write "Emergency Appeal" on the top of the 602 form. The appeal can be sent directly to appeals coordinator for second level review (informal and first levels of review will be skipped). The second level response must be completed within five working days.[7] If the appeal is denied, the prisoner can re-submit it to the appeals coordinator for third level review; the appeal should be

---

[3] Cal. Code of Regs., tit. 15, § 3341.5(a).

[4] Ibid.

[5] Cal. Code of Regs., tit. 15, § 3341.5.

[6] Cal. Code of Regs., tit. 15, § 3084.7(a).

[7] Cal. Code of Regs., tit. 15, § 3074.7(a)(2)(B)

*DIVISION OF CORRECTIONAL HEALTH CARE SERVICES*

P.O. Box 942883
Sacramento, CA 94283-0001



October 26, 2005

Mr. Kenny Morrow, C-53683
California State Prison, Corcoran
P. O. Box 3475
Corcoran, CA 93212-3475

Dear Mr. Morrow:

This is in response to your correspondence dated September 8, 2005, to the
Division of Correctional Health Care Services (DCHCS), California Department of
Corrections and Rehabilitation (CDCR), regarding the medical care and treatment you are
receiving while incarcerated at the California State Prison, Corcoran (COR). I have been
asked to respond to your concerns.

In your correspondence you state you are a patient in the Mental Health Services Delivery
System (MHSDS), receiving treatment at the Enhanced Outpatient Program (EOP) level
of care. You state you are housed in the Security Housing Unit (SHU), are
decompensating, have been hearing voices, and are becoming extremely suicidal. You
state that due to the social isolation experienced in the SHU, you need to be transferred to
the protective housing unit, where you may receive a more appropriate level of mental
health care.

DCHCS contacted the COR medical staff who reviewed your Unit Health Record (UHR).
Your UHR indicates you are receiving psychotropic medications for your mental health
problems. On October 13, 2005, the MHSDS staff evaluated your condition, classified
your mental health as stable, and determined you were not presently at risk of harming
yourself. It was also determined that you are appropriately placed in the MHSDS at the
EOP level of care.

The inmate appeal process described in the California Code of Regulations, Title 15, is an
integral part of the administrative remedies available for inmates to resolve issues
concerning any departmental decision, action, condition or policy that they believe has
had an adverse effect upon their welfare. If you are not satisfied with the medical or
mental health care you are receiving, you are encouraged to continue to address your
issues through the inmate appeals process. The issues are reviewed and responded to
carefully and thoroughly. It is the Department's desire to resolve these issues at the local

Mr. Kenny Morrow
Page 2

level if at all possible. We were informed that you filed an appeal at COR to address the
issues you brought to our attention. The appeal response is due at the first level on
November 2, 2005.

If you require medical or mental health assistance, please use the sick call process by
completing a *Request for Health Care Services*, CDC Form 7362, to request an
appointment with a clinician to address your concerns.

I hope this information has been of assistance to you.

Sincerely,

TIMOTHY M. FISHBACK, M.D.
Chief Psychiatrist
Mental Health Program
Division of Correctional Health Care Services

cc:  Regional Administrator – Central
     Regional Medical Director – Central
     Warden, COR
     Health Care Manager, COR

SHU.   (Grassian Declaration at 17.)[56/]  He found that

> [o]f these, at least seven were actively
> psychotic and urgently in need of acute
> hospital treatment.  Nine others suffered
> serious psychopathological reactions to SHU
> confinement, including in several cases a
> history of periods of psychotic
> disorganization. Of the remaining eight, five
> gave a history of psychiatric problems not
> clearly exacerbated by SHU, two others
> appeared free of psychiatric difficulties, and
> in one a language barrier prevented adequate
> evaluation.

(Id.)   Dr. Grassian's findings concerning the seven actively psychotic inmates and the nine others suffering serious psychopathological reactions to SHU confinement, and the response of CDC staff to those conditions, (see id. at 18-43), fully support the magistrate judge's findings.  The descriptions tendered by another of plaintiffs' experts, Dr. Craig Haney, are equally disturbing.  (Haney Declaration at 45-47.)  Given this testimony, defendants' assertion that the concerns about possible psychological harm from confinement in the Pelican Bay SHU "never materialized" can only be viewed as evidence of defendants' deliberate indifference to the serious harm visited on class members.

    For the reasons set forth by the magistrate judge, defendants' present policies and practices with respect to housing of class members in administrative segregation and in segregated housing

_____

56/   As noted above, defendants raise several evidentiary objections to the use of Dr. Grassian's declaration.  Those are overruled.  In any event, Dr. Grassian's testimony concerning the condition of inmates confined in the SHU that he interviewed is plainly competent evidence.  See Fed. R. Evid. 703.

73



Exhibit I

KENNY MORROW C-53683
4B-1L-32 / PO BOX 3481
CORCORAN, CA. 93212

SEPTEMBER 12, 2005

RE: CONSPIRACY TO ATTEMPT OF MURDER,
MISPRISON OF MENTAL HEALTH STAFF
MEMBERS, HUB SUPERVISOR MS. SEYKORA,
CHIEF PSYCHIATRIST DR. JUAREZ, AND
PRISON OFFICIALS, "ASSOCIATE WARDEN"
YAMAMOTO, CAPTAIN LOPEZ.
       "SUICIDE", INSUFFICIENT TRAINING,
ABUSE OF PUBLIC TRUST, THREATS TO
MENTAL HEALTH PATIENTS, SHU,
HOUSING OF MENTALLY ILL PRISONERS,
TORTURE OF MENTALLY ILL PATIENTS,"
DELIBERATE INDIFFERENCE, WANTONESS
INFLICTION OF PAIN, PUNISHMENT OF
THE MENTALLY ILL PATIENTS, AND
ABUSE OF POWER BY MENTAL HEALTH
STAFF AT CORCORAN PRISON,

CASE NO: COLEMAN V. SWARZENEGGER
        CIV S-90-0520 LKK JFM/
CHIEF JUDGE EMERITUS LAWRENCE, KARLTON
UNITED STATES DISTRICT COURT - EASTERN DISTRICT
501 "I" STREET STE, 8-200, SACRAMENTO, CA. 95814.

DEAR HONORABLE JUSTICE KARLTON:

1

I AM A CLASS MEMBER OF THE ABOVE CITED CASE, AND IM, INCARCERATED AT CORCORAN STATE PRISON, IN EOP UNIT 4B-1L- MANAGED BY HUB, SUPERVISOR MS. SEYKORA.

MY REQUEST CAN BE FOUND AROUND THE FACTS HERE IN.

I WOULD LIKE TO ILLUSTRATE THE INE-FFECTUAL NATURE OF CORCORANS MENTAL HEALTH STAFF, "DR. JUAREZ" AND SUPERVISOR MS. SEYKORA" IN ATTENDANCE WITH ASSOCIATE WARDEN MS. YAMAMOTO.

JUDGE KARLTON, IT IS MY INTENTION TO EXPLAIN TO YOU, THE MEMBERS OF ABOVE MENTIONED STAFF (BEFORE I COMMITT SUI-CIDE AT THE HANDS OF THE ABOVE STAFFS DELIBERATE, ATTACK UPON MY MENTAL HEALTH SITUATION) IN THE HOPES THAT AFTER MY DEMISE (OR POSSIBLE DEMISE) YOU MAY DISCERN THE REASONING OF HOW SEGMENTS OF THE DILIGENT COLEMAN CASE YOU RULED OVER, HAS COLLAPSED AROUND CORCORAN PRISON STAFF, AND HOW SUCH A TRIAGEDY CAN UNFOLD, IN THE HOPES THAT YOU MAY LEARN, AND RULE AROUND SAID ISSUE, SO THAT IT WILL NEVER HAPPEN AGAIN.

ON 9-7-05, AT INT ON CSP-CORCORAN 4B-1L- EOP-ASU- SUPERVISOR SEYKORA OF THE HUB, AND ASSOCIATE WARDEN YAMA-MOTO, et al., DECIDED TO LOWER MY EOP LOC, TO CCCMS, SO IT WOULD LOOK GOOD TO THE STATE OF NEW HAMPSHIRE AUTHOR-ITES, TO ACCEPT MY REQUEST TO BE INTER STATE TRANSFERED OUT THERE, AND BE -

CAUSE I ONLY PARTICIPATE IN 60% OF THE GROUPS HERE. I TOLD THE ENTIRE INT STAFF ( I BELIEVE IT WAS TAPED ) THAT I COULD NOT FUNCTION IN SHU, SOLITARY CONFINEMENT, THAT I WOULD CLEARLY DECOMPENSATE AS I DID EARLIER, (THAT I WOULD WITHIN 30 DAYS TIME COMMIT SUICIDE WHICH IS WELL DOCUMENTED IN MY MEDICAL FILE, AND OR COME BACK TO EOP LEVEL OF CARE) TO WHICH ASSOCIATE WARDEN YAMAMOTO STATED ITS OK IF I FEEL SUICIDAL BUT THEIR NOT ALLOWING ME TO EOP AGAIN.

JUDGE KARLTON I SPENT "17" YEARS IN THE MOST BRUTAL REPRESSIVE SOLITARY CONFINEMENT IN UNITED STATES, ON NO HUMAN CONTACT STATUS, BEAT AND TORTURED, ELECTROCUTED BY TASERS, CHAINED TO METAL STOOLS FOR DAYS AT TIMES NAILED, AND BEATEN TO A BLOODY PULP, AND THEN TASERD ON MY PRIVATE PARTS.

SUPERVISOR MS, SEYCORA TOLD ME THEY WOULD SEND ME TO PSU AT SAC- IV, WHERE I JUST CAME FROM WHERE I SUFFERED FROM SENSORY DEPRIVATION FAR WORSE THEN PLAIN SOLITARY CONFINEMENT, OR SHE WOULD REDUCE MY LOC TO CCCMS AND PUT ME BACK IN SHU. SO WITH THAT HIDEOUS THREAT HANGING OVER MY HEAD I SUCCUMBED TO CCCMS, WHICH WILL SEND

ME TO SHU SOLITARY CONFINEMENT WHICH IS
A HORROR SHOW IN MY MIND), II) RATHER
COMMIT SUICIDE, BECAUSE AFTER 24 YEARS
OF INCARCERATION AND AT AGE 43, MY
LIFE TOMORROW REALLY AINT WORTH LIVING
IFo₀. ESPECIALLY IN SOLITARY CONFINEMENT
WHICH DRAINS ME OF MY WILL TO LIVE, BE-
CAUSE THE MISERY FAR OUTWEIGHS THE
HOPE OF A BETTER EXISTENCE. I ALSO SUFF-
ER FROM AUDITORY COMMANDS TO SLICE OPEN
BOTH ARTERIES IN WRISTS, AND OPEN JUG-
LER VEIN, AND SIMULTANEOUSLY HANG MY
SELF FINALIZING SELF MURDER, "WHEN I
AM SUBJECTED TO SHU HOUSING."

→   OVER HERE IN EOP, IM NOT SO ADAMMANT
TO CAUSE SELF DEMISE, BECAUSE I GET YARD
TIME FOUR DAYS A WEEK FOR 5 HOURS
AT A TIME, AND I CAN GO TO TEACHER
MR. ZEGERS GROUP AND GET SCHOOL BOOKS
AND DO THE TESTS AND HE WILL GRADE
THEM FOR ME, EVEN THOUGH I DO HAVE A
GED. THIS STIMULATION OCCUPYS MY TIME.
      I WRITE YOU SO YOU CAN STOP THIS SADISTIC
PRACTICE AT SHU FROM BEING INFLICTED
UPON ANY OTHER MEN.
      THE INT HERE, TAILORS THEIR ACTIONS
TO FIT THEIR AGENDA, PLEASING CDC'S
STAFFS AGENDA NOT WHATS GOOD FOR
THE PATIENT, AND DR. JUAREZ AND HUB,
SUPERVISOR, SAY THEIR HANDS ARE TIED
BY MENITAL HEALTH RULES, TO HELP

4.

ME. THE MENTAL HEALTH STAFF ARE NOT
FREE TO DISREGARD THE CONSTITUTIONAL
RIGHTS OF ANY MENTALLY ILL PRISONERS
SUCH AS I. YOU RULED SO IN COLEMAN CASE."

SUPERVISOR MS. SEYCORA'S OBJECTIONS AT
INT MAY BE REGARDED A S OBLIQUELY
RELYING ON OPINIONS AND CONSTRAINTS
OF MY LEVEL OF COMPLIANCE TO GROUP AC-
TIVITIES, TO REFUTE OR DISGUISE HER
DELIBERATE INDIFFERENCE, AND RECKLESS
DISREGARD TO MY MENTAL HEALTH NEEDS
ARE AT BEST FRAGILE.

WHEN I TOLD INT ON 9-7-05, THAT
THEIR REDUCING MY LEVEL OF CARE TO CCCMS
AND SUBSEQUENT SHU HOUSING WOULD LEAD
ME TO DECOMPENSATE IN 30 DAYS LEADING
TO SUICIDE, IT WAS INT'S OBLIGATION
TO REEVALUATE MY MENTAL HEALTH CON-
DITION NOT TO ORDER ME INTO A HOUSING
SITUATION WHICH WOULD CLEARLY TRY MY
PSYCHOSIS AND INFLICT UNWANTON PAIN.
IT IS NOT ENOUGH TO SAY THAT CSPC
MENTAL HEALTH AUTHORITIES CONSIDER THE
ISSUE CAREFULLY ... AUTHORITIES ARE
ALSO REQUIRED TO AFFORD SUFFICIENT
WEIGHT TO THE CONSTITUTIONAL RIGHTS
OF INDIVIDUAL PATIENTS, WHICH IS
WELL DOCUMENTED WITH IN THE COLEMAN
CASE, LITIGATED IN THIS VERY COURT,
WHERE CORCORAN MENTAL HEALTH STAFF
OWE THEIR EMPLOYMENT TO. THE

FAILURE TO TREAT MY CONSTITUTIONAL PROVISIONS WITH APPROPRIATE RESPECT CONSTITUTES DELIBERATE INDIFFERENCE TO THE RIGHTS [AT STAKE] SEE JORDAN 986 F. 2d. at 1529.

SUPERVISOR MS. SEYCORA AND A.W. YAMAMOTO et al., ARE SIMPLY SEEKING TO DELAY THEIR CONSTITUTIONAL OBLIGATION TO MY MENTAL HEALTH ISSUE AT HAND, WHO IS THEIR CHARGE. I HAVE CONSIDERED IDT'S ARGUMENTS AND THEIR REASONING TENDERED BY THEM. I CONTEND THAT CSPC IDT STAFF ON 9-7-05. ARGUMENTS ARE SO SERIOUSLY FLAWED THAT THEY RAISE QUESTIONS OF GOOD FAITH. THEIR REASONING BEHIND THEIR PSEUDO ARGUMENT DOES NOT SUPPORT THEIR PROPOSITION FOR WHICH IT IS TENDERED). IN MANY INSTANCES THEIR OPINIONS AND ARGUMENTS, NOT ONLY DOES NOT SUPPORT THEIR CONTENTION, IT SUPPORTS THE VERY FINDING OF "MINE", TO WHICH THE OBJECTIONS IS BEING MADE.

SUPERVISOR OF THE CORCORAN HUB, MS. SEYCORA AND CDC ASSOCIATE WARDEN YAMAMOTO INDICATED THAT IF I STAYED IN EOP, IT WOULD HINDER MY TRANSFER TO THE STATE OF NEW HAMPSHIRE THAT NH. AUTHORITES DONT WANT A MENTAL HEALTH CASE, EVEN THOUGH ADMITTING THEY WERE IN THE PROCESS OF SENDING NH. MY REQUESTED MENTAL, AND MEDICAL HEALTH FILE, (AND DESPITE LAST YEAR ON 8-24-04, AT THE SAME EOP HOUSING AND SAME IDT STAFF, SEYCORA AND YAMAMOTO, SAID BEING EOP LEVEL OF CARE WOULD NOT STAND IN THE WAY OF MY NH. INTERSTATE TRANSFER) CLEARLY SHOWS THEIR DECISIONS ARE TAILORED TO THEIR ARBITRARY OPPRESSION OF MY LIFE AND MENTAL HEALTH CARE. THESE NEARLY DECISIONS CONCERNING MY M.H. STATUS, IS ACTING FOR THE SOLE PURPOSE OF DELAY, PERPETUATS MY

HUMAN SUFFERING, AND VIOLATES THE FEDERAL CONSTITUTION, WHICH THE EVIDENCE IN MY CASE DEMONSTRATES DELIBERATE INDIFFERENCE IS NOTHING IF, IT IS NOT THAT.

THE GROSS INADEQUANCIES IN THEIR DECISIONS IS OVER WHELMING, THE RISK OF HARM TO ME FROM THESE DEFICIENCES IS OBVIIOUS. THE ACTUAL SUFFERING EXPERIENCED BY ME IN BEING INDEFINATELY CONFINED IN SOLITARY CONFINEMENT FOR YEARS, ON NO HUMAN CONTACT STATUS IS APPARENT IN MY ACUTE, MENTAL ILLNESS, AND ONLY SERVES TO EXASBERIATE MY PSYCHOLOGICAL CONDITION.

JUDGE KARLTON, I AM ENCLOSING A LETTER FROM THE COLEMAN ATTORNEYS, ROSEN, BIEN AND ASARO, JANE KHAN TO CDC, REGARDING THE PERIL ATTRIBUTED TO ME IF LEFT IN SHU, (AND A PLEA TO PROPERLY HOUSE ME IN PHU PROTECTIVE HOUSING UNIT) SO IT AINT LIKE CDC CAN CLAIM IGNORANCE TO MY VIOLATILE SITUATION, DATED MAY 3, 2005.

IN THE COLEMAN V. WILSON CASE, THAT ITS ILLEGIAL TO HOUSE INMATES IN SHU WHERE THEY SUFFER SERIOUS PSYCHO PATHO-LOGICAL REACTIONS TO SHU CONFINEMENT AND PSYCHOTIC DISORGANIZATION SEE 912 F. Supp. 1282 (E.D. Cal. 1995) PAGE 1321.

IN THE SAME CASE PAGE 1288, IT STATES UNDER 8TH AMEND., PRISON OFFICIALS ARE RE-QUIRED TO MAINTAIN A SYSTEM IN WHICH INMATES WERE ABLE TO MAKE THEIR NEEDS FOR MENTAL HEALTH CARE KNOWN TO STAFF

"
COMPETENT TO PROVIDE SUCH CARE BEFORE
INMATES SUFFERERED UNNECESSARY AND
UNWANTON PAIN. SEY CORA AND YAMAMOTO INCOMPETENT.

.. FINALY PAGE 1285, SAME CASE, 27. STATES,
PRISON OFFICIALS CANNOT BE FOUND LIABLE UN-
DER 8TH AMEND., FOR DENYING INMATE HUMANE
CONDITIONS OF CONFINEMENT, UNLESS OFFICIAL
KNOWS OF AND DISREGARDS EXCESSIVE RISK
TO INMATE'S HEALTH OR SAFETY, OFFICIAL
MUST BE AWARE OF THE FACTS FROM WHICH
INFERENCE COULD BE DRAWN THAT SUBSTANTIAL
RISK OF SERIOUS HARM EXISTS."

THUS IN THE CASE OF MY DEATH IN
SHU, WHERE MY DECOMPENSATION WILL OCCUR,
I REQUEST YOU TAKE ACTION IN BRINGING
THESE MENTIONED STAFFS ABUSE OF POWER AND
INCOMPETENT DECISIONS TO JUSTICE. I THANK
YOU FOR YOUR VALUABLE TIME.    I AM,
SINCERELY,

DATED: SEPTEMBER 12, 2005

Kenny Morrow
RESPECTFULLY SUBMITTED