BILL LOCKYER
Attorney General of the State of California
JAMES M. HUMES
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
STEPHEN P. ACQUISTO
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205
 Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>Defendants. | CIV S-90-0520 LKK JFM P<br><br>**DEFENDANTS' RESPONSES AND OBJECTIONS TO THE <u>DRAFT</u> FIFTEENTH MONITORING REPORT OF THE SPECIAL MASTER ON THE DEFENDANTS' COMPLIANCE WITH PROVISIONALLY APPROVED PLANS, POLICIES AND PROTOCOLS** |

Defendants respectfully submit the following objections to the Special Master's <u>Draft</u> Fifteenth Monitoring Report on Defendants' compliance with the Court's order provisionally approving Defendants' plans for the delivery of mental health services.

///

///

///

///

**I.  Responses and/or Objections to Findings As To Specific Institutions**

**A.  Overall Statement**: Respondents are grateful for the Special Master's findings and recommendations that certain institutions be placed on paper monitoring and respectfully requests a list of those institutions be provided in the final report.

**B.  California State Prison, Sacramento**:  Defendants respectfully object to two of the draft report's statements concerning this facility.

First, the report states under "New Problem", "Daily psych tech rounds were not conducted in the newly activated ASU." (*Id*., p. 11.)  Defendants respectfully request that statement be withdrawn as CSP Sacramento has submitted monthly documentation to DCHCS confirming rounds were conducted in the administrative segregation unit from January 2004 through September 2004.  Attached as Exhibit 1 is a copy of such documentation.

Second, Defendants respectfully state that the described inadequacy in the mental health screenings in the administrative segregation unit was not discussed in the exit conference nor in the monitoring visit and request such findings be discussed with staff at those times. (*Id*., at p. 11.)

**C.  California Medical Facility, Vacaville**: Defendants respectfully object to the draft report's statements that this facility "continued to utilize a disproportionate number of DMH/APP bed days," "from September 1 through December 31, CMF inmates represented 40 percent of DMH/APP admissions," and CMF failed to promulgate any written polices and procedures on the operation of its PAU.  (Draft Report, p. 86.)  Defendants state DMH records show the CMF population for the period of September 2004 through December 2004 to be, at the highest, 18 percent.  (Ex. 2, DMH Chart, 11/16/05.)  In addition, CMF and DMH have prepared and hereby submit their written polices on the operation of the PAU.  (Ex. 3, CMF PAU Policies.)  Defendants respectfully request these statements be withdrawn from the report.

**D.  Pleasant Valley State Prison**: Defendants note this draft report found that, at the time of the monitor's visit in September 2004, positions for three psychiatrists remained vacant. (Draft report, p.171.)  At this time, Defendants report that applications for those positions have been received.  In addition, Defendants note the positive exit report received at the last tour in

1  October 2005, with the Special Master's staff verifying the validity of the facility's numbers and
2  finding CAP items fully resolved, except one CAP item (new arrivals) which was in partial
3  compliance. Given the filling of the psychiatric vacancies and the positive exit of October 2005,
4  Defendants respectfully request this facility be restored to its paper compliance status.

**E. California Men's Colony:** Defendants respectfully object to two statements in the draft report.

First, the draft report states, "No central list of inmates in CMC on DOT-administered medications was maintained, in large part, because the institutional pharmacy management system...was primitive." (Draft report, p. 217.) Although written medication orders do not state DOT, nursing staff, such as RNs, MTAs and LPTs, do directly observe inmate ingestion of medications in the Outpatient Housing Unit, transitional living unit, the *Keyhea* housing area and the ADL housing area (all located in the 'D' yard). In all other areas, medications are administered as 'nurse-administered' as follows:

- -on the yards, custody staff observe inmates to prevent hoarding and/or diverting of medication after dispensing by a nurse;
- -in ad seg units, the nursing staff observe the inmate through the cell window to prevent hoarding and/or diverting medications;
- -for medications subject to abuse (such as narcotics and benzodiazepines) or inmates subject to abusing medications, the medications are dispensed as a liquid or as 'crush and float' as an alternative to DOT administration, especially in administrative segregation units.

Defendants respectfully request the report indicate the above statement concerning DOT orders and administration.

**F. Wasco State Prison**: Defendants respectfully object to three of the draft report's statements.

First, the statement, "The institution described a process designed to ensure that assessments were completed by clinicians other than the inmates' case managers, but no data existed to confirm whether the process was followed." (Draft Report, p. 229.) Defendants respectfully state that the RVR log provided to the monitors stated the housing location of the behavior and

1  the case manager assigned to the mental health assessment. A comparison of the list of case
2  managers assigned to each building with the RVR log will demonstrate that the case manager
3  assigned to do the assessment was not the inmate's assigned case manager. Defendants
4  respectfully request this statement be withdrawn.

5      Second, Defendants object to the statement, "According to recent audits, follow-up IDTT
6  meetings for inmates remaining in the MHCB unit occurred only 78 percent of the time." (Draft
7  Report, p. 234.) Defendants respectfully submit that Wasco's audits showed 100 percent
8  compliance with the follow-up IDTT requirement and so requests withdrawal of this statement.

9      Third, Defendants object to the statement that "internal policy required suicide precaution
10 checks every 15 minutes, nursing rounds documented checks every 30minutes." (Draft Report,
11 p. 234.) Defendants admit that, due to a typographic error, the policy mistakenly indicated a 15-
12 minute check and this policy was corrected in the April 2005 revision process to state suicide
13 precaution checks are to be conducted every 30 minutes. Defendants respectfully requests
14 withdrawal of this statement.

15     **G.**   **California Rehabilitation Center**: Defendants respectfully object to certain
16 statements in the draft report concerning this facility and its staffing.

17     First, the draft report states that "the allocated position for chief psychiatrist was
18 subsequently converted to one for a senior psychiatrist specialist, but remained vacant." (Draft
19 report, p. 280.) Defendants respectfully state that the allocated position for chief psychiatrist was
20 not converted, it was taken from this facility. The senior psychiatrist position was already
21 provided to this facility and, at the time of the monitors' visit, was in the process of being
22 converted into a Senior Psychiatrist Supervising position. Defendants request the draft report be
23 revised to indicate that the allocated position for chief psychiatrist was taken from this facility
24 and the senior psychiatrist position was, at the time of the monitors' visit, in the process of being
25 converted into a Senior Psychiatrist Supervising position.

26     Second, the report states, "The facility's remaining 2.5 psychiatrist positions were reduced
27 to just one half-time position, which was also vacant." (*Id.*) Defendants state this facility had a
28 total of 2.5 psychiatrist position, one Senior Specialist, one full-time staff psychiatrist, and one

half-time psychiatrist. All psychiatrist positions at the time of this visit were being filled by any available contractors plus psychiatrists on loan from CIW one or two days a week from September through December 2004. Defendants respectfully request withdrawal of this statements or revision to state as follows: "This facility had a total of 2.5 psychiatrist position, one Senior Specialist, one full-time staff psychiatrist, and one half-time psychiatrist. All psychiatrist positions at the time of this visit were being filled by any available contractors plus psychiatrists on loan from CIW one or two days a week from September through December 2004."

Third, the report states that this facility's "allocation of clinical psychologists was nearly doubled from 5.5 positions to 10." (Draft report, p. 280.) Defendants respectfully state that this facility has been allocated of ten psychologists for *Coleman* purposes and two psychologist positions for *Clark* since 2003 and so request withdrawal of this statement.

Fourth, the report states that "another full-time position for a psych social worker was added, but the facility's allocation of 3.0 psych tech positions was reduced to 1.0." (Draft report, p. 280.) Defendants respectfully state that in 1999 or 2000 this facility converted one of its then-two social worker positions into a psych tech position. The remaining social worker position was filled at the time of this visit and has been filled for the past two years. This facility has never had 3.0 psych tech positions allocated and so there was no reduction in such positions to one. Rather, this facility has had only one psych tech position allocated, which was obtained by reclassifying the social worker position to a psych tech position. Defendants respectfully request the draft report be revised to state that this facility has one psych tech position allocated, 10 psychologist positions allocated, lost a chief psychiatrist position and is in the process of converting the Senior Psychiatrist Specialist position into a Senior Psychiatrist Supervising position.

**H.   Valley State Prison for Women**: Defendants respectfully object to three of the draft report's statements concerning this facility.

First, the draft report states, "VSPW, moreover, lacked procedures for handling inmates who arrived without verified medication orders." (Draft report, p. 335.) Defendants respectfully

submit the VSPW procedure for handling inmates who arrive without verified medication orders and so request withdrawal of this statement. (Ex. 4, VSPW Medication Policy.)

Second, the draft report states, "Nor did the institution make any effort to assess whether all instances of non-compliance were identified." (Draft report, p. 336.) Defendants respectfully state that VSPW pharmacy technicians have made daily rounds to the clinics, noting non-compliance and medication refusals, for the past four years. This information is given to Mental Health on a daily basis and documented in the pharmacy technicians' rounds. Defendants respectfully request withdrawal of this statement.

Third, the draft report states, "Between April 5 and July 27, 2004, 23 medication errors were noted, but no detailed information about the noted mistakes was recorded." (*Id.*) Defendants respectfully state that the facility has, for the past two years, required all medication errors to be noted in the Medication Management Subcommittee minutes and so request withdrawal of this statement.

### III. Responses and/or Objections to Summary

Defendants respectfully submit the following responses and/or objections to certain statements in the Summary. (Draft Report, pp. 345-411.)

**A. Page 379, first paragraph:** "Initial renovations at SVSP [Salinas Valley State Prison] would focus on providing cells to accommodate 56 inmates, including the 36 inmates who needed to be removed from CMF [California Medical Facility] in April 2006 to install air conditioning, so rapid funding and completion of the renovation work at SVSP was critical."

**Defendants' Response:** Defendants' respectfully object and request that the typographic error in this sentence, "56 inmates", be corrected so the sentence indicates the initial modifications at SVSP will provide cells to accommodate 36 inmates.

**B. Page 380, second paragraph:** "Nonetheless, DMH decided that the 64 additional beds to be added now to the existing SVPP should include 32 single cells and 16 double-cells."

**Defendants' Response:** Defendants respectfully object and request the final monitoring report note that the design of 32 single cells and 16 double cells was originally developed with input from both CDCR and DMH and was ultimately changed to a design consisting entirely of

1  single cells in response to comments received from the Special Master's team in May 2005.

2  **C. Page 381, first paragraph:** "Because the change [to single-occupancy cells] will require additional construction funds, the defendants needed approval and support from the Department of Finance (DOF), which apparently has been denied."

**Defendants' Response:** Defendants respectfully object and ask the Court to note that the significant change in the scope of the project, as opposed to the increased construction costs, required the approval of the Department of Finance. Defendants respectfully request that the Special Master adopt and include in the final report the clarification that the significant change in the scope of the project required the approval of the Department of Finance. Further, Defendants respectfully take this opportunity to provide updated information to the Special Master on the SVSP project. The Department of Finance approved the scope change for the SVSP project in September 2005. The Public Works Board recognized this scope change at its September 2005 meeting and interim financing for this project was approved by the Pooled Money Investment Board at its November meeting. The project currently is in architectural programming and CDCR anticipates preliminary plans to be presented to the Public Works Board for approval in June 2006, with a construction completion estimated date of March 2009. Defendants respectfully request that this updated information on the SVSP project be stated in the final monitoring report.

**D. Page 383, first paragraph**: "Inexplicably, DMH selected to site the program in Salinas Valley State Prison (SVSP), where CDCR has always found it particularly difficult to hire and retain mental health and medical staff. Vacancies, for example, among MTAs and RNs at SVSP are regularly the highest in CDCR. Next and equally inexplicably, as alluded to above, DMH designed a 64-bed facility that included 32 single cells and eight dormitory-style rooms with four beds each. Neither of these decisions was shared with the court, and perhaps not with CDCR, until it was a fait accompli."

**Defendants' Response**: Defendants' respectfully object and request the final monitoring report note that the original 64-bed in-patient mental health facility was built at Salinas Valley State Prison (SVSP) because SVSP was a maximum security institution suitable to house Level

IV inmates. The SVSP's Architectural Program dated October 8, 1999 and approved by CDCR and DMH states in part on page 3 " was to provide housing and treatment for Level IV inmates requiring inpatient mental health treatment." The design which as a combination of cells and dorm rooms was predicated on input from DMH and CDCR.

**E. Page 384, first paragraph**: "During that same period, DMH has also repeatedly held out to CDCR, and the court, the prospect that the new DMH facility with 1,500 beds under construction at Coalinga and currently accepting patients would allow DMH to accommodate more Level IV CDCR inmates. This prospect also turned out to be illusory. Coalinga may be able to absorb some CDCR inmates in need of intermediate inpatient care, but the facility is not much more secure than Atascadero State Hospital (ASH), where most intermediate inpatient care is presently provided by DMH to CDCR inmates. DMH did not share with CDCR, or the court, information about security limitations of its Coalinga facility until early 2005."

**Defendants' Response:** Defendants respectfully request the final report note that in July 2004 CDCR and DMH staff toured Coalinga State Hospital to review its security features and agreed at the end of the tour that Coalinga State Hospital was not suitable for high-custody level IV inmates.

**F. Page 384, second paragraph**: "A presently unfunded and largely inert plan promises possibly another 112 beds in March 2009, some 39 months away."

**Defendants' Response:** Defendants respectfully object to the term "unfunded" and take this opportunity to provide updated information to the Special Master on this project. As stated in the above response to statements on page 381, this project has been funded. Further, Defendants report that in order to begin hiring DMH staff to open the additional 36 beds at SVSP the Department of Finance submitted to the Legislature on October 5, 2005 a Notification of the Receipt and Approval of a Deficiency authorizing the expenditure of an additional $4.6 million in the current year, consistent with the ICF bed plan submitted to the court in August 2005. Defendants request that this updated information be included in the final monitoring report to the Court.

**G. Page 395, first paragraph:** "By January of 2005, when the unit needed to be in

place, work on the project was suspended because the just-completed schematic design indicated the cost of the unit would be $8 million more than the $18.6 million originally allocated for its construction."

**Defendants' Response:** Defendants take this opportunity to submit updated information on the status of this project. The Public Works Board approved preliminary plans for the project in September 2005. CDCR is currently finalizing the design before proceeding to construction. The latest schedule indicates project construction completion in February 2008. Facility licensure would follow, with an anticipated date of September 2008 for completion. Defendants request that this updated information be included in the final monitoring report to the Court.

**H. Page 414, top**: ". . . [CDCR] has been unable to obtain the essential support and cooperation of other executive agencies, including DMH, DHS, the Department of Finance or the Department of Personnel, or the Legislature to implement them."

**Defendants' Response**: Defendants respectfully object to this statement. Defendants respectfully state that the executive agencies have worked together to comply with previous court orders, including orders requiring salary differentials, bed plans, and coordinated efforts to place inmates in need of intermediate and acute care. Defendants respectfully request that the final monitoring report indicate the agencies have engaged in the following joint efforts:

-revised the memorandums of understanding and interagency agreements for intermediate care, acute care, and Day Treatment Program;

-instituted the Coordinated Clinical Assessment Team to oversee inpatient referrals from CDCR to DMH;

-developed a procedure for providing 1370 competency training for CDCR high-custody inmates;

-reconfigured the Vacaville Psychiatric Program (VPP) to enable additional beds for high-custody CDCR inmates;

-developed a plan to expand bed capacity at SVPP for high-custody inmates;

-provided DMH curricula to CDCR mental health staff for skill building;

-initiated at SVPP monthly meetings between the SVPP treatment teams and respective prisons (specifically PBSP and CSP-Sac) to discuss individual treatment progress, medication issues and

Defendants' Responses/Objections to Draft Report, 15th Round
9

-engaged in joint training and tours of prisons and DMH programs;

-resolved communication issues between DMH and CDCR clinicians about inmate-patients by having the state hospitals and psychiatric programs track clinician to clinician communication and the submission of discharge summaries and discharge packets.

In addition, DMH has agreed to provide 50 beds for certain CDCR inmates at Coalinga State Hospital and committed to provide 125 additional beds for CDCR inmates in 2006-2007 within the state hospital system.

Defendants report that a multi-agency group, including the CDCR, Department of Finance, Department of Personnel Administration, Department of Health Services, and Department of Mental Health, has now been established to ensure an integrated and cooperative effort towards compliance with the recommendations made in this report. Defendants request that this updated information be included in the final monitoring report to the Court.

### IV.  Responses and/or Objections to Summary Recommendations:

**A.  Recommendation One:** Defendants do not object to this recommendation and will provide the requested plan within the indicated time frame. Defendants state the plan may be supplemented or revised with the development and implementation of consolidated care centers.

**B.  Recommendation Two:** Defendants object to this recommendation only to the extent it may be read as requiring defendants to provide the indicated classifications within headquarters' central office pay levels higher than those provided to the same classifications in the field. Defendants will, within 30 days of the court order, take steps to ensure there is no loss in compensation sustained by any employee in Health Care Services headquarters position because of the location of their position in headquarters. Defendants will undertake workload studies to evaluate the need for increased pay for the indicated classifications at headquarters' central office and to evaluate the need for expanding staff at headquarters' central office to address the growth of the mental health population and any attendant program needs. Defendants will report to this Court on the workload studies and provide plans arising from the workload studies within the 60 day time frame stated in this recommendation.

**C. Recommendation Three:** Defendants do not object to this recommendation with the caveat that defendants be permitted sufficient time to prepare and present the plan in a manner to optimize the likelihood of legislative approval for funding this bed plan. Defendants therefore request that the plan be due to this Court on April 17, 2005.

**D. Recommendation Four:** Defendants do not object to this recommendation with the caveat that defendants be permitted sufficient time to prepare and present the plan in a manner to optimize the likelihood of legislative approval for funding this bed plan. Defendants therefore request that the plan be due to this Court on April 17, 2005.

Defendants thank the Special Master for the opportunity to submit these responses to his draft report on the fifteenth monitoring round.

Dated: December 12, 2005

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

STEPHEN P. ACQUISTO
Supervising Deputy Attorney General

*/s/ Lisa A Tillman*
LISA A. TILLMAN
Deputy Attorney General
Attorneys for Defendants

30067405.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Ralph Coleman, et al**

No.:          **CIV S-90-0520 LKK JFM P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>December 12, 2005</u>, I served the attached **Defendants' Responses and Objections** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Kimberly S. Davenport
California Medical Association
221 Main Street
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 12, 2005, at Sacramento, California.

|     A Buckley     |     /s/ A Buckley     |
|-------------------|-----------------------|
|     Declarant     |     Signature         |

30068641.wpd