1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 327-7872
8   Fax: (916) 324-5205
    Email: Lisa.Tillman@doj.ca.gov
9
   Attorneys for Defendants
10

11
                 IN THE UNITED STATES DISTRICT COURT
12
                FOR THE EASTERN DISTRICT OF CALIFORNIA
13

14

15  **RALPH COLEMAN, et al.,**                    CIV S-90-0520 LKK JFM P

16                              Plaintiffs,        **DEFENDANTS' FURTHER
                                                   RESPONSE TO PLAINTIFFS'
17       v.                                        NOTICE OF
                                                   NONCOMPLIANCE RE: CPR
18  **ARNOLD SCHWARZENEGGER, et al.,**             POLICY AND
                                                   IMPLEMENTATION**
19                              Defendants.
                                                   Hearing:    January 5, 2006
20                                                 Time:       10:00 a.m.
                                                   Courtroom: Four
21                                                 Judge:      The Honorable
                                                               Lawrence K. Karlton
22

23                                    **I.**

24                              **INTRODUCTION**

25          Defendants respectfully submit this brief in response to plaintiffs' notice asserting

26  defendants' noncompliance with two parts of this Court's June 9, 2005 order: the mandate for

27  development and implementation of a cardiopulmonary resuscitation (CPR) policy. As stated in

28  the initial response to the notice of non-compliance, Defendants re-evaluated the submitted CPR

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

1  plan and expedited key elements of the plan in September 2005 to ensure that all correctional

2  officers and sergeants were provided the new CPR policy and provided the necessary training and

3  protective equipment to enable compliance with the court order.  In October 2005, additional

4  discussions with the Special Master and with plaintiffs' counsel resulted in the development and

5  distribution of an amended CPR policy statement of October 21, 2005.  The attached declarations

6  of wardens from institutions systemwide establish (1) the provision of standard CPR

7  (performance) training to designated correctional employees, (2) the distribution of and training

8  on the amended CPR policy of October 21, 2005, and (3) the distribution of and training on the

9  CPR mouth shields.  Defendants respectfully submit that they are now in substantial compliance

10  with the June 9, 2005 court order.

11                                          **II.**

12                  **FACTUAL AND PROCEDURAL BACKGROUND**

13          In an order dated June 9, 2005, this Court mandated that defendants develop and

14  implement a policy requiring correctional officers to provide immediate life support, if trained to

15  do so, to inmates irrespective of whether the obligation to do so is part of the correctional

16  officer's duty statement.

17          On August 26, 2005, plaintiffs filed a notice of non-compliance with said order.

18          On September 13, 2005, defendants filed a reply to the notice of non-compliance

19      stating, in pertinent part:

20          - 75 percent of the correctional officers and sergeants had already undergone their

21          annual training in CPR (the target date of January 2006 exists for the remaining

22          officers and sergeants);

23          -on September 12, 2005, the CPR policy memorandum of July 2005 was revised to

24          indicate the effective date of September 12, 2005, and to state that training on both the

25          new policy and new safety equipment must be incorporated immediately into formal

26          CPR training;

27  / / /

28  / / /

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

1    -mouth shields would be shipped to each institution directly by September 16, 2005;

2    -planned training in the new CPR policy and protective equipment will be done as "On

3    the Job Training".

4    In the week of October 17, 2005, defendants' counsel conferred with plaintiffs' counsel

5  and the Special Master about the CPR policy distributed to the field. (Dec. Tillman, ¶ 3 .) After

6  lengthy discussions and numerous revisions, a consensus was reached on an amended CPR

7  policy statement. (*Id.*)

8    On October 21, 2005, Director John Dovey issued to the wardens and associate

9  directors the amended CPR policy statement.[1/] (Ex. 3, 10/21/05 Memo; Dec. Hardy, ¶ 5.)  His

10  cover memo directed the wardens and associate directors to take immediate steps to ensure

11  compliance with this amended CPR policy statement, with December 9, 2005 the stated deadline

12  for completion of training on the amended CPR policy. (*Id.*)  The cover memo also indicated

13  that a conference call would be held on October 24, 2005 to discuss the amended CPR policy.

14  (*Id.*)

15    On October 25, 2005, this Court entered an order approving the stipulation of the

16  parties to continue the hearing on the notice of noncompliance to January 5, 2006.  Further, the

17  order stated, "No later than December 22, 2005, defendants shall file declarations establishing

18  that they have completed the necessary steps to assure that the revised policy has been distributed

19  and training on the revised policy on a systemwide basis has occurred."

20    On November 9, 2005, Acting Deputy Director D.L. Runnels of the Division of Adult

21  Institutions issued a memorandum directing, in pertinent part, that the Administrative Officer of

22  the Day for Headquarters specifically ask about the use of CPR in an event involving a medical

23  situation/response. (Dec. Hardy, ¶ 15; Ex. 7, 11/9/05 Memo.)  The memorandum states in part:

24    "In situations wherein a person's medical condition requires cardiopulmonary

25    resuscitation (CPR) be performed, identify the following:

26

27

28    1. Although commonly referred to as the amended CPR policy, the memorandum of October
21, 2005 specifically references life support measures. (Ex. 3, 10/21/05 Memo.)  In addition,
defendants note that exhibit numbers 1, 2, and 4 are reserved and not used in this pleading.

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

3

1          -Was CPR performed?;

2          -If not, why not?

3          -What was the personnel classification of the person(s) that performed the

4          CPR?

5          -Were the CPR efforts successful?"

6    (*Id.*)

7          On December 5, 2005, Nancy Hardy, the headquarters' liaison for CPR issues sent an

8    email to all the wardens reminding them that all CPR training must be completed.  (Dec. Hardy,

9    ¶ 8.)  Ms. Hardy also communicated with associate directors of the Division of Adult Institutions

10   of the California Department of Corrections and Rehabilitation (CDCR) about the status of the

11   implementation of the CPR policy.  (*Id.* at ¶ 9.)

12          On December 14, 2005, Ms. Hardy sent an e-mail to all wardens.  These attachments

13   included:  1) a memorandum dated December 14, 2005 and authored by D.L. Runnels entitled

14   "Cardio-Pulmonary Resuscitation (CPR) Compliance: Response date of December 19, 2005;

15   2) a form declaration for review by each warden;  3) two attachments to assist the wardens in

16   gathering the requested information to complete the declaration;  4) two charts reflecting the

17   information that had previously been reported by the institutions (informational purposes).  (Dec.

18   Hardy, ¶ 11.)

19          On December 14, 2005, a teleconference was held with plaintiffs' counsel and Special

20   Master Keating.  (Dec. Tillman, ¶ 4.)  During that teleconference, plaintiffs' counsel indicated

21   their desire to have every warden sign a declaration attesting to compliance with the June 9, 2005

22   court order concerning CPR.  (*Id.* at ¶ 4.)

23          From December 16, 2005 to December 20, 2005, Ms Hardy received the worksheets

24   and declarations from wardens system-wide.  (Dec. Hardy, ¶ 12.)  The data from each warden's

25   worksheets was compiled and put into two matrixes, one matrix reflecting CPR mouth shield

26   compliance and one matrix reflecting CPR policy compliance.  (*Id.*, at ¶ 13; Ex. 6, Matrixes.)

27   The declarations from each of the wardens system-wide show compliance, with most of the

28    institutions reporting  that well-above 75% of the designated correctional employees have

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

1   received and been trained on the amended CPR policy and on the mouth shield.  (Ex. 5,

2   Wardens' Declarations.)

3                                        **III.**

4                              **LEGAL ARGUMENT**

5   **DEFENDANTS HAVE EXERCISED GOOD FAITH IN RESPONDING TO THE COURT**

6        **ORDER OF JUNE 9, 2005 AND ARE IN SUBSTANTIAL COMPLIANCE.**

7              Defendants have shown good faith in complying with the court order of June 9, 2005.

8   In their first reply to plaintiffs' notice of noncompliance, defendants submitted a CPR policy

9   dated September 12, 2005, and stated their intent to distribute and train on the CPR policy and on

10  CPR mouth shields by September 30, 2005.  In the following month, defendants' counsel and

11  plaintiffs' counsel discussed the language of the CPR policy on several occasions.  (Dec.

12  Tillman, ¶ 3 .)  With the help of Special Master Keating and his experts, defendants' counsel and

13  plaintiffs' counsel were able to agree upon the language now stated in the October 21, 2005

14  amended CPR policy memo.  (*Id.*)

15             Plaintiffs' counsel asked for declarations from each warden systemwide attesting to the

16  distribution and training on the amended CPR memo and mouth shield.  (Dec. Tillman, at ¶ 4.)

17  Those declarations have now been obtained and submitted to the Court.  The vast majority of the

18  declarations attest to substantial compliance with this Court's order, with nearly all the

19  institutions reporting distribution and training on the amended CPR policy and CPR mouth shield

20  to at least 75% of the designated correctional employees.  (Ex.  5, Declarations; Ex. 6, Matrixes.)

21  To the extent there is an institution or two that has not obtained substantial compliance yet, the

22  warden of that institution will submit a plan to obtain substantial compliance.          In addition,

23  defendants have incorporated the mandate of the amended CPR policy into the their usual

24  procedures for reporting unusual incidents.  On November 9, 2005, Acting Deputy

25   Director D.L. Runnels of the Division of Adult Institutions issued a memorandum directing, in

26  pertinent part, that the Administrative Officer of the Day specifically ask about the use of CPR in

27   an event involving a medical situation/response.  (Dec. Hardy, ¶ 15; Ex. 7, 11/9/05 Memo.)  The

28  memorandum states in part:

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

1    "In situations wherein a person's medical condition requires cardiopulmonary

2    resuscitation (CPR) be performed, identify the following:

3    -Was CPR performed?;

4    -If not, why not?

5    -What was the personnel classification of the person(s) that performed the

6    CPR?

7    -Were the CPR efforts successful?"

8    (*Id.*)

9    Defendants respectfully submit that the declarations of the wardens, combined with

10    previously-submitted declarations of Mike Knowles and Gary Swarthout, show substantial

11    compliance with this Court's order of June 9, 2005.

12    **IV.**

13    **CONCLUSION**

14    Defendants respectfully request this Court to discharge the notice of noncompliance

15    regarding the order mandating the development and implementation of a cardiopulmonary

16    resuscitation policy.   Per the request of plaintiffs' counsel, defendants have submitted

17    declarations from every warden in the system.  The declarations establish that nearly every

18    facility is in substantial compliance with the court order by training its designated correctional

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25

26

27

28

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

1  employees on the amended CPR policy and on the use of the CPR mouth shield.  Defendants

2  respectfully request the notice of noncompliance be discharged.

3           Dated: December 22, 2005

4                                         Respectfully submitted,

5                                         BILL LOCKYER
                                          Attorney General of the State of California

6                                         JAMES M. HUMES
                                          Chief Assistant Attorney General

7
                                          FRANCES T. GRUNDER
                                          Senior Assistant Attorney General
8

9                                         STEPHEN P. ACQUISTO
                                          Supervising Deputy Attorney General

10

11

12                                        */s/ Lisa Tillman*
                                          LISA A. TILLMAN

13                                        Deputy Attorney General
                                          Attorneys for Defendants

14

15
    30070461.wpd
16

17

18

19

20

21

22

23

24

25

26

27

28

FURTHER REPLY TO NOTICE OF NONCOMPLIANCE RE. CPR

7

**<u>DECLARATION OF SERVICE BY U.S. MAIL</u>**

Case Name:   **COLEMAN V. SCHWARZENEGGER, ET AL**

No.:         **CIV S-90-0520 LKK JFM P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age and older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>December 22, 2005</u>, I served the attached **RESPONSE and DECLARATIONS OF TILLMAN AND HARDY IN SUPPORT THEREOF** by placing a true copy of each enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Pete Cockeroft
H-86887
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532

 Kimbery S. Davenport
California Medical Association
221 Main Street
San Francisco CA 94105

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 21, 2005, at Sacramento, California.

|                    |                    |
| :----------------: | :----------------: |
| A Buckley          | */s/ A Buckley*    |
| Declarant          | Signature          |

30071578.wpd