1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 327-7872
8   Fax: (916) 324-5205
    Email: Lisa.Tillman@doj.ca.gov
9
   Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | CIV S-90-0520 LKK JFM P<br><br>**DECLARATION OF NANCY HARDY IN SUPPORT OF DEFENDANTS' FURTHER RESPONSE TO PLAINTIFFS' NOTICE OF NONCOMPLIANCE RE: CPR POLICY AND IMPLEMENTATION**<br><br>Hearing: January 5, 2006<br>Time: 10:00 a.m.<br>Courtroom: Four<br>Judge: The Honorable Lawrence K. Karlton |

I, Nancy Hardy, declare:

1. I am presently employed by the California Department of Corrections and Rehabilitation (CDCR) as a Correctional Administrator. I have been assigned to work on Special Projects since August 8, 2005 and I report to D. L. Runnels, Deputy Director (Acting) of the Division of Adult Institutions. I have been employed by the CDCR since July, 1993.

Declaration of Nancy Hardy, Support Of Reply To Notice Noncompliance re. CPR

1

2. I have personal knowledge of the facts stated in this declaration and if called to testify upon those facts would do so competently.

3. In October 2005, I was assigned to as the Headquarters' liaison with the field regarding the court mandate to develop and implement the court-mandated policy for correctional officers to provide cardiopulmonary resuscitation to inmates regardless of the officer's duty statement.

4. I have received and reviewed the court order of June 9, 2005 requiring CDCR to to develop and implement the court-mandated policy for correctional officers to provide cardiopulmonary resuscitation to inmates regardless of the officer's duty statement.

5. On October 21, 2005, Director John Dovey issued to the wardens and associate directors the amended CPR policy statement. His cover memo directed the wardens and associate directors to take immediate steps to ensure compliance with this amended CPR policy statement, with December 9, 2005 the stated deadline for completion of training on the amended CPR policy. The cover memo also indicated that a conference call would be held on October 24, 2005 to discuss the amended CPR policy. Attached as Exhibit 3 is a true and correct copy of this memo with the amended CPR policy.

6. On Monday, October 24, 2005, I attended a teleconference led by then-Acting Deputy Director Suzan Hubbard to discuss the amended CPR policy with all wardens and/or their designees.

7. On Friday, November 16, 2005, Sandra Acox sent, per my direction, an email to all the wardens reminding them of the deadline to submit proof of training on the amended CPR policy.

8. On December 5, 2005, I sent an email to all the wardens reminding them that of the need to complete all CPR training.

9. I also communicated with the CDCR associate directors of the Division of Adult Institutions about the status of the implementation of the CPR policy. Each associate director is responsible for a set of prisons with similar features:
-Suzan Hubbard is Associate Director for high security institutions;

Declaration of Nancy Hardy, Support Of Reply To Notice Noncompliance re. CPR
2

1  -Teresa Schwartz is associate director for reception centers;

2  -Claude Finn is Associate Director for general population institutions, levels 1, 2, and 3;

3  -Wendy Still is Associate Director for female offender institutions;

4  -Mike Knowles is associate director for general population institutions, levels 3 and 4.

5      10.    On December 5, 2005, Associate Director Claude Finn sent an email to the wardens of the institutions within their responsibility to remind them of the need to complete the CPR policy training and mouth shield distribution and training.

8      11.    On December 14, 2005, I sent an e-mail to all wardens. The email contained several attachments. These attachments included: 1) a memorandum dated December 14, 2005 and authored by D.L. Runnels entitled "Cardio-Pulmonary Resuscitation (CPR) Compliance: Response date of December 19, 2005; 2) a form declaration for review by each warden; 3) two attachments to assist the wardens in gathering the requested information to complete the declaration; 4) two charts reflecting the information that had previously been report by the institutions (informational purposes).

15     12.    From December 16, 2005 to December 20, 2005, I received the worksheets and declarations from wardens system-wide. Attached as Exhibit 5 are true and correct copies of the declaration received from the wardens.

18     13.    The data from each warden's worksheets was compiled and put into two matrixes, one matrix reflecting CPR mouth shield compliance and one matrix reflecting CPR policy compliance. Attached to this declaration as Exhibit 6 is a true and correct copy of these matrixes.

21     14.    The target date for completion of the training on performance of CPR is January 2006. To the extent some employees have not trained on the performance of CPR, the overall compliance rate will improve as those employees do train on the performance of CPR and then train on the use of the CPR mouth shield.

25     15.    I also serve on a rotating basis as the Administrative Officer of the Day (AOD), receiving notifications of unusual events from the field when I serve in that position. I have noticed that the amended CPR policy of October 21, 2005 is further implemented by a requirement, stated in a November 9, 2005 memorandum from then-Acting Deputy Director D.L.

Declaration of Nancy Hardy, Support Of Reply To Notice Noncompliance re. CPR

3

1  Runnels of the Division of Adult Institutions, that the AOD specifically ask about the
2  use of CPR in an event involving a medical situation/response. The memorandum states in part:
3      "In situations wherein a person's medical condition requires cardiopulmonary
4      resuscitation (CPR) be performed, identify the following:
5      -Was CPR performed?;
6      -If not, why not?
7      -What was the personnel classification of the person(s) that performed the
8      CPR?
9      -Were the CPR efforts successful?"
10 Attached to this declaration as Exhibit 7 is a true and correct copy of this November 9, 2005
11 memorandum.
12     I declare under the penalty of perjury that the foregoing is true and
13 correct.
14 Dated: Dec 21 '05.    By: *Nancy L Hardy*
                                  Nancy Hardy