PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>  Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>  Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' NOTICE OF DEFENDANTS' FAILURE TO COMPLY WITH THE JUNE 9, 2005 COURT ORDER, PARAGRAPHS 2 AND 5, RE: SUICIDE PREVENTION POLICIES**<br><br>**HEARING**<br><br>Date: January 5, 2006<br>Time: 10:00 a.m.<br>Location: Courtroom 4<br>The Honorable Lawrence K. Karlton |

## INTRODUCTION

Seven months have passed since the Court issued its June 9, 2005 Order requiring defendants to implement several important policies and procedures identified as necessary to reduce the risk of death by suicide in California's prisons. Defendants have still not complied with the Court's Order. 2005 will certainly be an infamous year for suicide in California's prisons: while the final count is still not in, records will be set for the highest number of suicides (41 suicides and counting) and highest rate of suicide – a rate of 26 per 100,000 men, which is nearly double the national average for prisons of 14 per 100,000. Reply declaration of Michael W. Bien ¶ 2 (current year data); 8/26/05 Kahn Declaration at Exhibit 1 (August 2005 US Bureau of Justice Statistics Report stating that prison suicide rates have dropped to 14 per 100,000) . While plaintiffs do not contend that defendants' failure to comply with the June 9, 2005 Order is directly responsible for specific deaths, defendants' conduct here is emblematic of the delay and neglect in complying with Court orders necessary to bring the California prison system into compliance with basic Constitutional standards.

A key provision of the Order remains at issue: ¶ 2 of the Order required defendants to develop and implement a policy, on or before August 8, 2005, to require custody officers, if trained to do so, to provide CPR or other emergency life support measures, to inmates in need of such assistance. Plaintiffs filed this Motion on August 26, 2005 due to defendants' initial failure to demonstrate compliance with this provision of the Court's Order. On October 25, 2005, this Court, at the parties' request, entered an Order postponing the hearing from October 27, 2005 to January 5, 2006, to provide defendants with additional time to comply with the June 9, 2005 Order, including assuring that the new policies and procedures were received by the individual prisons, implemented at the prisons and applicable training and equipment was provided. No later than December 22, 2005, defendants were to "file declarations establishing that they have completed the necessary steps to assure that the revised policy has been distributed and training on the revised policy on a system-wide basis has occurred." 10/25/05 Order ¶ 2.

While defendants filed pleadings with the Court on or before December 22, 2005, they

have failed to establish compliance with the Orders. Defendants' Further Response to Plaintiffs' Notice of Noncompliance Re: CPR Policy and Implementation was filed on December 22, 2005. Despite the substantial additional time provided to defendants to get this important job done, the task has not been completed. As a result, substantial numbers of class members remain at increased risk of death or serious injury due to defendants' inadequate policies and procedures. This Court should enter additional orders to assure that defendants complete the necessary training and implementation within 30 days: lives are at stake.

According to press reports, Stuart Alexander, a resident of San Quentin's death row, was found "unresponsive" in his cell at 4:30 a.m. on December 27, 2005. Bien Decl. at Ex. B. Sgt. Eric Messick, identified as a "prison spokesman," said "Alexander was immediately taken to a triage center inside the prison, where attempts to revive … [him] failed. Alexander was declared dead at the prison's infirmary at 5:15 a.m." Alexander's "mental state had deteriorated," and he "was being housed in an outpatient housing unit, where he was under constant video surveillance and was being regularly checked by a correctional officer." Messick said that "The officer had a good enough eye to notice around 4:30 that his chest was not moving up and down, which is a very difficult thing to do." Would Mr. Alexander's life have been saved if the correctional officer who found him "unresponsive" had immediately initiated CPR? Had the correctional officer been trained in CPR? Had he been trained in the new Court-ordered policy requiring him to provide CPR to prisoners? Had he been provided with a mouth shield and been trained in its use? We do not know the answers to these or many other questions about Mr. Alexander's death this week. We do know that full and rapid implementation of this Court's June 9th Order can save lives.

Defendants must be held accountable for their lack of compliance with Court Orders. The record before the Court shows that tens of thousands of prisoners, including thousands of prisoners with serious mental illness, are today housed in prisons where Wardens have failed to timely implement even the long-extended deadlines of this Court's June 9, 2005 Order.

## ARGUMENT

### I. DEFENDANTS HAVE FAILED TO ESTABLISH THEIR COMPLIANCE WITH THE PROVISIONS OF THE COURT'S JUNE 9, 2005 ORDER CONCERNING EMERGENCY CPR AND LIFE SUPPORT

The initial policy developed by defendants to comply with ¶2 of the June 9, 2005 Order was inadequate. After extensive negotiations with plaintiffs and the Special Master, defendants, by John Dovey, Director of the Division of Adult Institutions, issued a revised policy on October 21, 2005 which addressed most of the deficiencies. Ex. 3 to Defendants' 12/22/05 Pleadings. Defendants also explained that their initial delay in compliance was caused, in part, by the need to identify, purchase and distribute appropriate safety equipment (mouth shields) to custody officers. Defendants' Response to Plaintiffs' Notice of Noncompliance Concerning June 9, 2005 Court Order, filed 9/13/05, at 5-6. Plaintiffs' counsel and the Special Master agreed to continue the October 27, 2005 Hearing for at least sixty days to provide sufficient time for defendants to get the safety equipment out to all the prisons and complete the training on the new policy and the new equipment. Director Dovey informed the Wardens that the new policy was issued pursuant to the Order of this Court, that training on the new policy must be completed by December 9, 2005 and that each Warden was to "confirm your compliance" by email on or before December 9, 2005. Ex. 3 to Defendants' 12/22/05 Pleadings.

Defendants ask the Court to find them in "substantial compliance" based on the Declarations of prison wardens filed on December 22, 2005. As defendants themselves admit, the declarations instead demonstrate noncompliance at several major prisons and delayed or incomplete compliance at almost every prison. Director Dovey's December 9, 2005 deadline for completion of the training is not even referred to in the Warden's Declarations. Despite defendants' representations to the Special Master that this schedule, for once, would be taken seriously, it appears that despite repeated reminders from headquarters, December 9th was ignored. See Declaration of Nancy Hardy ¶¶ 5-10 (multiple reminders). There is no evidence in the record that any Warden actually complied with the December 9, 2005 deadline.

Tens of thousands of prisoners remain at risk today due to defendants' failure to

complete the CPR training and comply with the Court Order. In fact, some of the prisons that are most out of compliance house large numbers of seriously mentally ill prisoners and have experienced substantial numbers of suicides:

- Duel Vocational Institute ("DVI"): Defendants failed to provide any information whatsoever for this prison. The Warden apparently did not provide a declaration despite the multiple reminders and requests. Four (4) suicides have taken place at DVI since January 1, 2003. Bien Decl. at ¶3. As of December 14, 2005, the population of DVI was 3,911 and approximately 400 identified Coleman class members are housed at DVI. Bien Decl. at ¶4 and Ex. A.

- California Institution for Men ("CIM"): Only 60.5% of the designated employees had been trained in CPR as of December 19, 2005. Only 72.3% had been provided with mouth shields and received training in their use by that date. Of the 325 employees who had not been provided with mouth shields, 80% were "available for such training," that is, not on vacation or leave. Warden Poulos Declaration. There is no explanation or excuse provided by the Warden. Six (6) suicides have taken place at CIM since January 1, 2003. Bien Decl. at ¶3. As of December 16, 2005, the population of CIM was 6,478 and approximately 2000 identified *Coleman* class members are at CIM today. Bien Decl. ¶4 and Ex. A.

- California Medical Facility at Vacaville ("CMF"): Only 67.5% of the designated employees have been trained on the amended CPR policy as of December 16, 2005. Of the 219 employees who had not been trained, 89% were "available for such training," that is, not on vacation or leave. Warden Veal Declaration. Once again, there is no explanation or excuse provided by the Warden. Eight (8) suicides have taken place at CMF since January 1, 2003. Bien Decl. at ¶3. As of December 16, 2005, the population of CMF was 3,203 and approximately 2000 identified Coleman class members are at CMF today. Bien Decl. ¶4 and Ex. A.

- California Men's Colony ("CMC"): Only 51.8% of the designated employees have been trained in CPR as of December 16, 2005. Warden Marshal

4
REPLY BRIEF ISO PLFS' NOTICE OF DEFS' FAILURE TO COMPLY WITH COURT ORDER RE: SUICIDE PREVENTION POLICIES
No.: Civ S 90-0520 LKK-JFM

Declaration. There is no explanation or excuse provided by the Warden. Seven (7) suicides have taken place at CMC since January 1, 2003. Bien Decl. at ¶3. As of December 14, 2005, the population of CMC was 6,500 and approximately 1,600 identified *Coleman* class members are at CMC today. Bien Decl. ¶4 and Ex. A.

- California Rehabilitation Center ("CRC"): Only 81% of the designated employees had been trained in CPR as of December 16, 2005 and only 78% had been provided with mouth shields, and trained in their use. Of the 169 employees that had not been provided with mouth shields, 68% were "available for such training," that is, not on vacation or leave. Warden Hall Declaration. As of December 14, 2005, the population of CRC was 3,929 and approximately 900 identified *Coleman* class members are at CRC today. Bien Decl. ¶4 and Ex. A.

- California State Prison, Los Angeles ("LAC"): Only 74.1% of the designated employees were provided with and trained in the amended CPR policy as of December 16, 2005. Of the 208 employees that had not been trained, 81% were "available for such training," that is, not on vacation or leave. Warden Downs Declaration. Three (3) suicides have taken place at LAC since January 1, 2003. Bien Decl. at ¶3. As of December 14, 2005, the population of LAC was 4,206 and approximately 800 identified Coleman class members are at LAC today. Bien Decl. ¶4 and Ex. A.

- California Training Facility ("CTF"): Only 44.6% of the designated employees were provided with mouth shields, with on-the-job training provided, as of December 19, 2005. Of the 605 employees that had not been trained, 90% were "available for such training," that is, not on vacation or leave. Warden Kane Declaration. Three (3) suicides have taken place at CTF since January 1, 2003. Bien Decl. at ¶3. As of December 14, 2005, the population of CTF was 7,097 and approximately 300 identified Coleman class members are at CTF today.

Bien Decl. ¶4 and Ex. A.

Defendants' December 22, 2005 Filing is also deficient in its failure to establish that all of the necessary safety equipment identified by defendants in their plan has been purchased and distributed within each institution. The necessary safety equipment are cut-down kits, ambu-bags and blood-born pathogen suits which are supposed to be available in all housing units. In addition, defendants were to develop a procedure for replacing used mouth shields at each institution. The sole evidence provided on this issue in each of the form declarations prepared for individual wardens is the generic statement: "I have directed that the CPR mouth shields be placed in every cut-down kit and housing unit in my prison." See, e.g., Declaration of Warden W. J. Sullivan at ¶8. This vague statement does not establish anything other than a direction (issued to who? when?) to put extra mouth-shields in existing cut-down kits and housing units. It does not show that all housing units have the cut-down kits, protective gear and other equipment necessary for officers to perform life-saving measures, including CPR, and it does not show that there is a procedure at each institution for replacing lost or used mouth-shields. It does not even show that the Warden's directions were followed.

## CONCLUSION

For all of the reasons set forth above, plaintiffs respectfully request that the Court find that defendants have not demonstrated compliance with ¶2 of the Court's June 9, 2005 Order. The Court should require that the Wardens of the following institutions: DVI, CIM, CMF, CMC, CRC, LAC, CTF file declarations on or before January 31, 2006, establishing their institution's full compliance with the CPR Order (CPR training, mouth shield distribution and training, amended CPR policy training) and defendants' plan, including specific language confirming that cut-down kits, ambu-bags, and blood safety equipment is available in each and every housing unit, and that a working policy is in place for replacement of lost or used mouth shields. In addition, the Court should require Director Dovey to file a Declaration on or before February 15, 2006, certifying that all institutions are in full compliance with the Court Order and defendants' plan, including confirmation that cut-down kits, ambu-bags, and blood safety equipment is available in each and every housing unit, and that a working policy is in place for

replacement of lost or used mouth shields.

Dated: December 29, 2005

Respectfully submitted,

*/s/ Michael W. Bien*

Michael W. Bien
Rosen, Bien & Asaro, LLP
Attorneys for Plaintiffs