1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 327-7872
8   Fax: (916) 324-5205

9  Attorneys for Defendants
   CF1997CS0003
10

11                IN THE UNITED STATES DISTRICT COURT

12              FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14

15  RALPH COLEMAN, et al.,                    CASE NO. CIV S-90-0520 LKK
                                              JFM P
16                          Plaintiffs,
                                              **DEFENDANTS' SECOND
17       v.                                   FURTHER RESPONSE TO
                                              PLAINTIFFS' NOTICE OF
18  ARNOLD SCHWARZENEGGER, et al.,            NONCOMPLIANCE RE: CPR
                                              POLICY AND
19                          Defendants.       IMPLEMENTATION**

20                                            Hearing:    February 15, 2006
                                              Time:       1:30 p.m.
21                                            Courtroom:  Four
                                              Judge:      The Honorable
22                                                        Lawrence K. Karlton

23                              **I.**

24                         **INTRODUCTION**

25          Defendants respectfully submit this second further response to plaintiffs' notice

26  asserting Defendants' noncompliance with this Court's June 9, 2005 order to develop and

27  implement a cardiopulmonary resuscitation (CPR) policy.  Defendants now inform the Court that

28  systemwide training on the amended CPR policy and mouth shield has occurred, with the

DEFENDANTS' SECOND FURTHER RESPONSE RE: CPR
                        1

1  creation of procedures for continuing to ensure compliance with the Court's order. Defendants

2  respectfully request this Court make a finding of compliance and discharge the notice of

3  noncompliance.

4                                                    **II.**

5                            **FACTUAL AND PROCEDURAL BACKGROUND**

6           In an order dated June 9, 2005, this Court mandated that Defendants develop and

7  implement a policy requiring correctional officers to provide immediate life support, if trained to

8  do so, to inmates irrespective of whether the obligation to do so is part of the correctional

9  officer's duty statement.

10          On August 26, 2005, plaintiffs filed a notice of non-compliance with said order.

11          On September 13, 2005, Defendants filed a reply to the notice of non-compliance

12     stating, in pertinent part:

13            - 75 percent of the correctional officers and sergeants had already undergone their

14            annual training in CPR (the target date of January 2006 exists for the remaining

15            officers and sergeants);

16            -on September 12, 2005, the CPR policy memorandum of July 2005 was revised to

17            indicate the effective date of September 12, 2005, and to state that training on both the

18            new policy and new safety equipment must be incorporated immediately into formal

19            CPR training;

20            -mouth shields would be shipped to each institution directly by September 16, 2005;

21            -planned training in the new CPR policy and protective equipment will be done as "On

22            the Job Training".

23          In the week of October 17, 2005, Defendants' counsel conferred with plaintiffs'

24     counsel and the Special Master about the CPR policy distributed to the field.  (Dec. Tillman, ¶

25     3.) After lengthy discussions and numerous revisions, a consensus was reached on an amended

26     CPR policy statement.  (*Id.*)

27  ///

28  ///

DEFENDANTS' SECOND FURTHER RESPONSE RE. CPR

1        On October 21, 2005, Director John Dovey issued to the wardens and associate

2  directors the amended CPR policy statement.[1/] (Ex. 3, 10/21/05 Memo; Dec. Hardy, ¶ 5.)  His

3  cover memo directed the wardens and associate directors to take immediate steps to ensure

4  compliance with this amended CPR policy statement, with December 9, 2005 the stated deadline

5  for completion of training on the amended CPR policy.  (*Id.*)  The cover memo also indicated

6  that a conference call would be held on October 24, 2005 to discuss the amended CPR policy.

7  (*Id.*)

8        On October 25, 2005, this Court entered an order approving the stipulation of the

9  parties to continue the hearing on the notice of noncompliance to January 5, 2006.  Further, the

10  order stated, "No later than December 22, 2005, Defendants shall file declarations establishing

11  that they have completed the necessary steps to assure that the revised policy has been

12  distributed and training on the revised policy on a systemwide basis has occurred."

13        On November 9, 2005, Acting Deputy Director D.L. Runnels of the Division of Adult

14  Institutions issued a memorandum directing, in pertinent part, that the Administrative Officer of

15  the Day for Headquarters specifically ask about the use of CPR in an event involving a medical

16  situation/response.  (Dec. Hardy, ¶ 15; Ex. 7, 11/9/05 Memo.)  The memorandum states in part:

17        "In situations wherein a person's medical condition requires cardiopulmonary

18        resuscitation (CPR) be performed, identify the following:

19       -Was CPR performed?;

20       -If not, why not?

21       -What was the personnel classification of the person(s) that performed the

22       CPR?

23       -Were the CPR efforts successful?"

24  (*Id.*)

25  ///

26

27

28

---

1.  Although commonly referred to as the amended CPR policy, the memorandum of October 21, 2005 specifically references life support measures.  (Ex. 3, 10/21/05 Memo.)  In addition, Defendants note that exhibit numbers 1, 2, and 4 are reserved and not used in this pleading.

DEFENDANTS' SECOND FURTHER RESPONSE RE. CPR

1    On December 5, 2005, Nancy Hardy, the headquarters' liaison for CPR issues sent an

2  email to all the wardens reminding them that all CPR training must be completed.  (Dec. Hardy,

3  ¶ 8.)  Ms. Hardy also communicated with associate directors of the Division of Adult Institutions

4  of the California Department of Corrections and Rehabilitation (CDCR) about the status of the

5  implementation of the CPR policy.  (*Id.* at ¶ 9.)

6    On December 14, 2005, a teleconference was held with plaintiffs' counsel and Special

7  Master Keating.  (Dec. Tillman, ¶ 4.)  During that teleconference, plaintiffs' counsel indicated

8  their desire to have every warden sign a declaration attesting to compliance with the June 9,

9  2005 court order concerning CPR.  (*Id.* at ¶ 4.)

10    On December 22, 2005, Defendants submitted the declarations from wardens

11  systemwide concerning the number of employees provided training on the amended CPR policy,

12  the performance of CPR and the use of CPR mouth shields.

13    On January 3, 2006, counsel for the parties conferred via teleconference on CPR

14  compliance issues.  In a stipulation filed January 4, 2006, the parties agreed that the hearing on

15  CPR efforts would be continued and that the Defendants would submit declarations from the

16  wardens systemwide attesting that:

17    -the institution has trained all of its designated correctional officers who are available for

18    training (i.e. who are not on medical, family, disability, military or other leave) in the

19    October 21, 2005 amended CPR policy, in the use of the CPR mouth shield, and in the

20    performance of CPR;

21    -the institution has implemented a written procedure for replacing CPR mouth shields that

22    have been used or that have been lost;

23    -the institution has taken an inventory of the cut-down kits in the institution and determined

24    that there is a cut-down kit in every housing unit.  If the warden delegates the inventory to a

25    member of his or her staff, his or her declaration shall identify the name of the person who

26    performed the inventory, the date of the inventory and indicate that he or she has personally

27    reviewed and approved the results of the inventory;

28    -as part of the inventory of cut-down kits, the institution has determined that CPR mouth

DEFENDANTS' SECOND FURTHER RESPONSE RE. CPR

1  shields and blood-borne pathogen protection equipment are available as part of every cut-

2  down kit.

3  (Dec. Tillman, ¶ 5.)

4  **III.**

5  **LEGAL ARGUMENT**

6  **THE SUBMITTED DECLARATION S OF THE WARDENS ESTABLISH**

7  **GOOD FAITH AND SUBSTANTIAL COMPLIANCE IN RESPONDING**

8  **TO THE COURT ORDER OF JUNE 9, 2005.**

9  Defendants have twice now submitted declarations from the wardens systemwide to

10  establish their good faith in complying with the court order of June 9, 2005.  Notably, the

11  declarations were prepared to meet concerns voiced by plaintiffs' counsel.   In October 2005,

12  Plaintiffs' counsel asked for and Defendants agreed to provide declarations from each warden

13  systemwide attesting to the distribution and training on the amended CPR memo and mouth

14  shield.  (Dec. Tillman at ¶ 4; Stipulation and Order, 10/25/05.)  Declarations meeting the

15  October 2005 stipulated order were submitted to this Court in December 2005.  Plaintiffs'

16  counsel then requested and Defendants agreed to provide declarations showing improved

17  training statistics and additional operational details, such as written procedures for replacing

18  CPR mouth shields that have been used or that have been lost and an inventory of the cut-down

19  kits in the institution.  (*Id.* at ¶ 5; Stipulation and Order, 1/4/06.)  Defendants  now submit those

20  declarations showing each institution has engaged in training its designated employees who are

21  available for such training in CPR policy and performance and has conducted the inventory of

22  cut-down kits and preparation of inventory procedures requested by plaintiffs' counsel.  (Ex. 9,

23  Declarations of Wardens; Ex. 10, Matrixes.)   In short, Defendants have met the criteria stated in

24  the stipulated order of January 4, 2006 and so request the notice of noncompliance be

25  discharged.

26  Defendants have gone beyond the criteria stated in the January 2006 stipulated order

27  and incorporated the mandate of the amended CPR policy at two key junctures of the reporting

28  process: the 837 unusual incident report and the officer of the day inquiry.  On January 10, 2006,

DEFENDANTS' SECOND FURTHER RESPONSE RE. CPR

1    Deputy Director David Runnels directed wardens to ensure that in any incidents requiring the

2    initiation of CPR the CDCR Form 837, Incident Report must include the following:

3            -Was CPR performed?

4            -If CPR was not performed, provide detail of the circumstances that precluded CPR.

5            -The classification of the person(s) providing CPR and their training status.

6            -The outcome of CPR efforts.

7    (Ex. 8, 1/11/06 Memo.)

8            This directive came on the heels of an earlier memo directing, in pertinent part, that the

9    Administrative Officer of the Day specifically ask about the use of CPR in an event involving a

10    medical situation/response.  (Ex. 7, 11/9/05 Memo.)  The memorandum states in part:

11            "In situations wherein a person's medical condition requires cardiopulmonary

12            resuscitation (CPR) be performed, identify the following:

13            -Was CPR performed?;

14            -If not, why not?

15            -What was the personnel classification of the person(s) that performed the

16            CPR?

17            -Were the CPR efforts successful?"

18    (*Id.*)

19            Defendants have built the necessary infrastructure - in terms of staff training,

20    equipment, written policies and procedures - to establish and continue compliance with this

21    Court's order of June 9, 2005.  The declarations of the wardens show the vast majority of

22    designated employees have been trained in CPR policy and performance.  (Ex. 9, Wardens'

23    Declarations.)  Further, inventories have been conducted at each institution to ensure the

24    necessary equipment for CPR is stored in housing units and cut-down kits.  (*Id.*)  Each institution

25    has been directed to prepare an established procedure for checking the training records of

26    returning personnel for CPR policy and performance training before any resumption of duties in

27    a post requiring knowledge of CPR.  (Ex. 8, 1/11/06 Memo; Dec. Hardy ¶ 5.)  Indeed, if a

28    designated employee is noticed *not* to be carrying a CPR mouth shield on their person while on

DEFENDANTS' SECOND FURTHER RESPONSE RE. CPR

duty, the employee must be provided a CPR mouth shield within one hour.  (*Id.*)  Defendants respectfully request this Court find that these elements of training, equipment and policies show substantial compliance with this Court's order of June 9, 2005.

**IV.**

**CONCLUSION**

Defendants respectfully request this Court to discharge the notice of noncompliance regarding the order mandating the development and implementation of a cardiopulmonary resuscitation policy.  Per the request of plaintiffs' counsel, Defendants have submitted declarations from every warden in the system showing training on the CPR policy, the performance of CPR, the use of CPR mouth shields, the inventory of housing units and cut-down kits for CPR mouth shields, and the preparation of policies and procedures to ensure the continued performance of CPR.  Defendants respectfully request the notice of noncompliance be discharged.

Dated: January 31, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

ROCHELLE C. EAST
Supervising Deputy Attorney General


*/s/ Lisa Tillman*
LISA A. TILLMAN
Deputy Attorney General

Attorneys for Defendants

30083649.wpd

DEFENDANTS' SECOND FURTHER RESPONSE RE. CPR

7

<u>**DECLARATION OF SERVICE BY U.S. MAIL**</u>

Case Name:    **Coleman v. Schwarzenegger, et al**

No.:    **CIV S-90-0520 LKK JFM P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age and older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>January 31, 2006</u>, I served the attached **SECOND FURTHER RESPONSE; DECLARATION OF LISA TILLMAN; DECLARATION OF NANCY HARDY;** by placing true copies thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Pete Cockeroft
H-86887
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532

 Kimbery S. Davenport
California Medical Association
221 Main Street
San Francisco CA 94105

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 31, 2006, at Sacramento, California.

| A Buckley | */s/ A Buckley* |
|-----------|----------------|
| Declarant | Signature |

30084206.wpd