# CHAPTER 5
## Mental Health Crisis Bed

**A.    <u>INTRODUCTION</u>**

The goal of the Mental Health Crisis Bed Program (MHCB) is to provide services for conditions which require an inpatient setting to ameliorate mental health symptoms in the least restrictive environment.    The MHCB is located in a California Department of Corrections and Rehabilitation (CDCR) correctional institution licensed as a Correctional Treatment Center (CTC) (Title XXII, Division 5, Chapter 12, Article 4, Section 79739, Mental Health Treatment Program), General Acute Care Hospital (GACH), or Skilled Nursing Facility (SNF) and operates 24 hours a day, seven days a week.  An inmate-patient admitted to the MHCB for mental health treatment may be described as having acute symptoms of a serious mental disorder or suffering from a significant or life threatening disability.  Refer also to the <u>Correctional Treatment Center Policy and Procedure Manual, Volume VIII, Mental Health</u>, for more detailed procedures.

Many conditions may precipitate a mental health care crisis during prison confinement.  At reception, the loss of the existing support system the individual had on the outside and/or the stress of initial imprisonment may lead to suicidal behavior, self-harm, or other symptoms.  In mainline settings within institutions, stress factors unique to imprisonment, may cause a pronounced degree of emotional strain and/or physical and interactive tension, and often compound existing stress factors inherent in everyday life.  Such factors as the restrictions of confinement, pressures to conform to the prison lifestyle, and fear of more predatory inmates may disrupt an inmate's coping abilities.  An inmate with no known mental health history may suffer acute symptoms, while another with mental illness in remission may have recurring symptoms.  Prior to release, fears of delayed release or inability to cope with the outside world or loss of the prison support system of food, shelter, clothing and structure of time may lead to crisis reactions.

The MHCB has a length of stay of up to 10 days.  The Chief Psychiatrist, or designee, must approve exceptions to the length of stay.  Not all crises require admission to the MHCB.  Crisis episodes for one inmate-patient may be handled on an outpatient basis.  Another inmate-patient, even if stabilized on medications, may have problems requiring placement in a structured therapeutic environment for ongoing treatment and monitoring.  This may necessitate a referral to an Enhanced Outpatient Program (EOP), or if longer-term intensive care is needed, to an inpatient facility operated by the Department of Mental Health (DMH).

Presenting problems may require continuous observation or monitoring before an inmate-patient's treatment needs can be fully assessed or the crisis brought under control.  Where

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

24-hour care is needed, an inmate-patient shall be placed in a MHCB for continuous nursing care.

## B.  PROGRAM OBJECTIVES

The primary objective of the MHCB is to evaluate the symptoms associated with the crisis and provide initial stabilization and recommendations for follow-up care, post discharge. More specific objectives include:

1.  To observe, monitor and provide continuous nursing assistance to inmate-patients whose condition requires 24 hours or more to achieve stabilization.

2.  To assess the inmate-patient's symptoms, formulate a provisional or differential diagnosis, and develop an initial treatment plan.  This may include a medical/neurological evaluation or an initiation of referral for such.

3.  To control symptoms of serious mental illness, using emergency medication when necessary.

4.  To alleviate psychiatric distress with appropriate therapy or counseling.

5.  To refer the inmate-patient for placement in an appropriate level of care.

6.  To provide an alternative to hospitalization for inmate-patients whose condition allows placement within 10 calendar days to a less intensive level of care.

## C.  POPULATION SERVED

**Overall Treatment Criteria**

Overall treatment criteria have been developed for the MHSDS.  An inmate must meet the criteria in either 1 or 2 below in order to receive MHSDS treatment at any level of care:

1.  Treatment and monitoring are provided to any inmate who has *current* symptoms and/or requires treatment for the current Diagnostic and Statistical Manual (DSM) diagnosed (may be provisional) Axis I serious mental disorders listed below:

    **Schizophrenia (all subtypes)**
    **Delusional Disorder**
    **Schizophreniform Disorder**
    **Schizoaffective Disorder**
    **Brief Psychotic Disorder**

| Mental Health Crisis Bed | Mental Health Services Delivery System |

**Substance-Induced Psychotic Disorder (exclude intoxication and withdrawal)**
**Psychotic Disorder Due To A General Medical Condition**
**Psychotic Disorder Not Otherwise Specified**
**Major Depressive Disorders**
**Bipolar Disorders I and II**

2. <u>Medical Necessity</u>:  Mental health treatment shall be provided as needed.  Treatment is continued as needed, after review by the Interdisciplinary Treatment Team (IDTT), for all cases in which:

**Mental health intervention is necessary to protect life and/or treat significant disability/dysfunction in an individual diagnosed with, or suspected of having, a mental disorder.  Treatment is continued for these cases only upon reassessment and determination by the IDTT that the significant or life threatening disability/dysfunction continues or regularly recurs.**

**Specific Treatment Criteria for MHCB**

In addition to the overall treatment criteria above, an inmate must meet the following specific treatment criteria to receive treatment at the MHCB level of care:

• Marked Impairment and Dysfunction in most areas (daily living activities, communication and social interaction) requiring 24 hour Nursing Care; and/or

• Dangerousness to Others as a consequence of a serious mental disorder/Dangerousness to Self.

• These conditions usually result in a Global Assessment of Functioning (GAF) Score of less than 30.

**D.  <u>REFERRAL AND TRANSFER</u>**

**Referrals**

An inmate-patient suffering from an acute, serious mental disorder resulting in serious functional disabilities, or who is dangerous to self or others, shall be referred to an MHCB.

**MHCB Transfer**

If the institution does not have an MHCB or there are no MHCB beds available in the institution where the inmate-patient is currently housed, the inmate-patient shall be

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

transferred to a designated MHCB institution. The inmate-patient shall be transferred within 24 hours of referral.

(See *Inmate Medical Services Policies and Procedures, Volume 4, Chapter 3, Health Care Transfer Process* and *Volume 6, Chapter 18, Transfer of Patient Health Records Within CDCR; Institution to Institution*, for specific requirements concerning transfers and Unit Health Records)

If the MHCB beds are not available at the designated hub institution, the inmate-patient shall be taken to an available MHCB bed that is able to provide MHCB care while simultaneously providing the commensurate level of custody and security. In most cases, movement from an institution to a MHCB bed shall be completed by institutional transportation staff via special transport within 24 hours. On weekends and after normal business hours, the mental health clinician on call or the physician on call at the referring institution shall contact the mental health clinician on call or the physician on call at other institutions to locate a vacant MHCB bed. **The Health Care Placement Unit may be contacted seven days a week to assist in locating a vacant MHCB bed.**

MHCB transfers shall be done under authority as "Emergency Medical Transfers" (DOM 62080.17). Since MHCB transfers are typically viewed as emergency moves, they do not require classification committee action or Classification Staff Representative (CSR) endorsement. MHCB transfers shall be done on a "Psychiatric and Return" basis.

Generally, the transfer process shall be initiated by the inmate-patient's Psychiatrist, Psychologist, or the Mental Health Program Manager.

The transferring Psychiatrist, Psychologist, or Mental Health Program Manager shall determine whether the inmate-patient is "medically cleared" to transfer. State law provides that, before a patient may be transferred to a health facility, the patient must be sufficiently stabilized to be safely transported. The transferring physician is responsible for determining whether the inmate-patient's condition will allow transfer. The California Code of Regulations provides, in part, that a transfer or discharge may not be carried out if, in the opinion of the inmate-patient's physician, such transfer or discharge would create a medical hazard. The transferring physician must initially evaluate the relative benefits and risks associated with transporting the inmate-patient. The determination of whether the transfer creates an unacceptable risk or a "medical hazard" will depend upon the inmate-patient's condition, the expected benefits to the inmate-patient if he or she is transferred, and whether the risks to the inmate-patient's health are outweighed by the benefits.

The receiving facility must consent to the transfer. Title XXII licensing standards provide that a patient shall not be transferred unless and until the receiving facility has consented to accept the patient. Specifically, the California Code of Regulations provides, in part, that no

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

patient shall be transferred or discharged for purposes of transferring to a facility, unless arrangements have been made in advance for admission to such health facility. Therefore, the transferring clinician must secure the receiving health facility's approval in advance for the inmate-patient's admission. The transferring clinician shall document in the inmate-patient's Unit Health Record (UHR) that approval was obtained and from whom.

**Procedure**

The Mental Health Program Manager or designee at the sending institution shall contact the Clinical Director or designee at the receiving institution to obtain approval for the transfer.

In cases where the Clinical Director or designee at the receiving institution does not agree to the transfer, and the Mental Health Program Manager at the sending institution feels the clinical need for transfer remains, the case shall be referred to the Health Care Placement Unit and/or Mental Health Services for assistance. If an agreement cannot be reached, the inmate shall be admitted and evaluated.

Upon receipt of approval to transfer from the Clinical Director or designee at the receiving institution, the Mental Health Program Manager or designee at the sending institution shall complete a CDCR Form 128-C, Chrono – Medical/Psychiatric/Dental, indicating acceptance. Copies of the completed CDCR Form 128-C shall be forwarded to the Clinical Director or designee at the receiving institution and the Classification & Parole Representative (C&PR) at the sending institution.

The C&PR at the sending institution shall forward a copy of the completed CDCR Form 128-C to the C&PR at the receiving institution.

The Mental Health Program Manager or designee, Clinical Director or designee, and the C&PRs at both the sending and receiving institutions shall communicate to ensure all health care/classification/transportation aspects are addressed. The escort needs for each transport are different, given the variation of custody and health care concerns that may arise. At times, the transportation may be accomplished with just custody staff. However, occasions do arise when a combination of custody and clinical staff is needed to accompany an escort. This may be needed when the inmate-patient has highly sensitive and varying medication needs or when the presence of a clinical staff member can substantially reduce decompensating or disruptive inmate-patient behavior during transportation.

The C&PR at the receiving institution shall contact the Classification Services Unit for Teletype transfer approval. The transfer approval shall be obtained from a CSR if available on site.

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

Documentation and classification of inmate-patients accepted for transfer to another institution shall be consistent with procedures outlined in the Department Operations Manual (DOM). The sending institution shall clearly indicate on CDCR Form 135, Inmate Transfer Record that the purpose of the transfer is for psychiatric treatment.

The inmate-patient shall be informed of the reasons for and destination of the transfer.

The Receiving and Release Sergeant at the receiving institution shall notify the MHCB when the inmate-patient arrives. An inmate-patient who arrives by special transport because of urgent acuity shall be screened by a physician. If immediate admission is not possible, an inmate shall be housed in an appropriate medical setting until a bed is available (Title XXII Section 79789).

E. **ADMISSION**

**Pre-admission Screening**

All inmate-patients referred to the MHCB shall receive a pre-admission screening for the purpose of determining the appropriateness of the admission to the MHCB program. During the regular working hours, the screening shall be performed by a Psychiatrist or a licensed Psychologist privileged to practice in the MHCB and documented in the Interdisciplinary Progress Notes. During weekends, holidays, and after normal business hours, the screening shall be performed by an on-site physician on duty or any other licensed health care staff. The pre-admission screening may be performed via telephone prior to transfer when the inmate-patient is at an institution without an available MHCB bed. An inmate-patient in crisis may be screened where the crisis occurs (such as in the cell), or in the emergency service area of the CTC/GACH/SNF, prior to admission to the MHCB.

All inmates attempting suicide and those having suicidal ideation or showing signs and symptoms of suicide potential will be evaluated by a mental health clinician (Psychiatrist, Psychologist, or Psychiatric Social Worker) on an emergency basis. Inmates referred to health care by custody, because of suicide concerns, will be immediately evaluated for suicide risk by a mental health clinician which will include a Suicide Risk Assessment Checklist (SRAC). On weekends, evenings, and holidays, the SRAC will be performed by the Physician on Call (POC), Medical Officer of the Day (MOD), or Registered Nurse (RN) trained to administer the SRAC if mental health clinicians are not available. It is the responsibility of the Health Care Manager to establish procedures for suicide risk assessment by clinical staff outside of normal work hours. All SRACs will be filed in the inmate-patient's UHR whether or not admitted to the MHCB. An inmate showing suicidal potential cannot be refused admission until there is a face to face evaluation and SRAC by a clinician trained to do SRACs

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

All inmates who are screened positive for possible admission to the MHCB on a weekend, holiday, or after normal business hours shall be referred to an MHCB Psychiatrist or Psychologist with admitting privileges (On Call or On Duty) for admission. The clinician facilitates the admission based on the admission criteria indicated in Section C above. The actual admission may be done by the MOD or POC in consultation with the Psychiatrist or Psychologist (On Call or On Duty). For all inmates not admitted, the Psychiatrist or Psychologist (On Call or On Duty) shall prepare a detailed Interdisciplinary Progress Note explaining the reason for the decision. A log shall be kept by the referring institution, and shall include the following information for all inmates referred to the MHCB and evaluated but not admitted:

- Date of referral.
- Inmate-patient identification.
- Reason for referral.
- Reason for not being admitted.
- Referring clinician

**Admission/Transfer Log**

Each Mental Health program with a MHCB unit will develop and maintain a log of all MHCB admissions/transfers. This log shall include at least the following information:

- Date of referral.
- Inmate identification.
- Reason for referral to MHCB.
- Current level of care.
- Date of Admission to MHCB.
- Whether a Suicide Risk Assessment was performed upon admission (for suicidal inmates).
- Discharge diagnosis.
- Whether a Suicide Risk Assessment was performed upon discharge (for suicidal inmates).
- Date of clinical discharge from the MHCB.
- Date of physical discharge from the MHCB.
- Date of referral to new location/program.
- Date of transfer to new location/program.
- Location/program to which the inmate-patient has been transferred.

All inmate-patients who receive a pre-admission evaluation for suicide potential, but who are not admitted, will be tracked in a separate log (i.e., Treatment and Triage Area). The log

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

shall be kept by the MHCB that did not admit the inmate-patient, and will include at least the following information:

- Date of referral.
- Inmate-patient identification.
- Reason for referral
- Reason for not being admitted
- Deciding clinician.

**Procedure**

The MHCB shall accept inmates who meet the criteria for care and treatment and shall continue to house only those inmates for whom care is appropriate. No inmate shall be admitted to the MHCB until a provisional diagnosis or valid reason for admission has been stated and the appropriateness determined. When clinical differences of opinion exist regarding the appropriateness for admission and the clinicians involved cannot reach an agreement at the institutional level, the cases shall be referred to the Health Care Placement Unit and/or Mental Health Services for assistance.

Admissions to the MHCB shall be made on a "Psychiatric and Return" basis. A Psychiatrist or a Psychologist with admitting privileges in the MHCB, may admit an inmate to the MHCB. Inmates shall be admitted only upon the written or verbal order of a MHCB Psychiatrist or a Psychologist.

Occasionally, crisis referrals require emergency and involuntary admission to the MHCB. An inmate-patient may, because of a psychotic episode, be confused, disoriented, disorganized and/or gravely disabled, or, because of acute depression, may be dangerously suicidal. An inmate-patient in crisis who is explosive and assaultive may also be admitted involuntarily if a serious mental disorder also exists. Assaultiveness that is assessed by the clinician as resulting from an antisocial behavior not as a result of a serious mental disorder is more appropriately dealt with by custody staff, per general institution policies.

Any inmate-patient admitted to the MHCB program because of suicidal threats or behavior shall receive a Suicide Risk Assessment from a clinician, upon admission and prior to discharge.

After hours, weekends, and holidays, the Administrative Officers of the Day, MODs, POCs, and Watch Commanders should be notified of an inmate who makes a serious suicide attempt or engages in self-injurious behavior requiring medical treatment.

Inmate-patients with multiple admissions to MHCB (three or more within a six month period) shall be evaluated for referral to DMH.

An Admission Note shall be completed within 24 hours of admission to the MHCB by the admitting clinician and include the inmate-patient's condition at the time of admission, provisional diagnosis, and an initial treatment plan.  This shall be documented on a CDCR Form 7230, Interdisciplinary Progress Notes, and filed in the UHR

**MHCB Nursing Evaluation**

*The nurse shall*:

a.  Interview and give orientation to the inmate-patient.

b.  Assess the inmate-patient and take vital signs.

c.  Notify the physician of admission status including any admission problems.

d.  Assemble the chart.

e.  Initiate the Patient Care Plan.

f.  Note and implement any admission orders, such as laboratory, x-rays, medications,

**Physical Examination**

For immediate care planning, a history and physical examination, including neurological screening, shall be completed, to the extent clinically possible, immediately before or within 24 hours of admission.  If the inmate-patient is uncooperative or otherwise cannot be fully examined, a description of all possible observations and findings of the physical examination shall be documented.  The complete physical examination shall be conducted as soon as clinically possible and documented in the UHR.

F.  **ASSESSMENT AND TREATMENT SERVICES**

**Intake Assessment**

Upon admission to the MHCB unit, an assessment shall immediately be made on how best to meet the critical needs of the seriously mentally disordered inmate-patient.  This is accomplished by reviewing and updating the Mental Health Evaluation (CDCR Form 7386) completed by the referring clinician at the time of referral.  At a minimum, a provisional diagnosis is determined and an initial plan of the CDCR Form 7386 in the "Recommended Follow Up/Initial Treatment Plan" section shall be formulated within 24 hours for immediate care planning and to rule out medical conditions that may be a cause of presenting

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

symptoms.  Serious medical conditions as a significant cause of the crisis may warrant acute care medical hospitalization.

**Interdisciplinary Treatment Team (IDTT) and Individualized Treatment Planning**

The IDTT is composed of, at a minimum:

- Assigned MHCB Psychiatrist.
- Assigned MHCB Primary Clinician (PC).
- Nursing staff.
- Correctional Counselor.
- Inmate-patient (if clinically and custodially appropriate).

Other staff who have direct knowledge of the inmate-patient are encouraged to attend or provide information:

- Custody officers.
- Registered Nurses (RNs).
- Medical Technical Assistants (MTAs).
- Recreational Therapists.

The IDTT is headed by a licensed mental health clinician.  The inmate-patient shall be included in the IDTT, if clinically and custodially appropriate as determined by the IDTT, unless the inmate-patient refuses to participate.  If the inmate-patient refuses to participate, the PC shall document the reason for refusal on the CDCR Form 7230-MH, Interdisciplinary Progress Notes. Inmate-patients shall not be disciplined for not participating in IDTT. Attempts shall be made to gather input from the inmate-patient such as talking to and observing the inmate at the cell door.

The IDTT shall meet within 72 hours of an inmate-patient's admission and at least weekly thereafter.  The IDTT shall begin discharge planning at the initial IDTT meeting.

An individual treatment plan shall be developed and implemented at the initial IDTT meeting.  The treatment plan, which is to be filed in the inmate-patient's UHR, shall be individualized and based on a comprehensive assessment, including, at a minimum, a mental status exam and the inmate-patient's legal, criminal, psychiatric, medical, and developmental history, and psychosocial evaluations.  Psychosocial evaluations shall include personal and family history, inmate-patient's strengths and weaknesses, and evaluation of support system.

**Mental Health Crisis Bed**        **Mental Health Services Delivery System**

The individualized treatment plan shall do the following:

1. Provide a primary diagnosis and identify the main presenting problems targeted for treatment.  The diagnosis may be provisional.

2. For every identified target problem, document the goals, interventions, and measurable objectives of treatment.

3. Specify the types, frequencies and providers of prescribed therapies and adjunct activities.

4. Document the success or failure in achieving stated objectives

5. Evaluate the factors contributing to the inmate-patient's progress or lack of progress toward recovery.

6. Document prescribed medication, dosage, and frequency of administration.

7. Be reviewed at each IDTT meeting, at least weekly, and updated accordingly.

8. Designate appropriate medications, therapies, and custody follow-up in an aftercare plan to be followed after the inmate-patient's release from the MHCB.  See MHSDS, Chapter 10, Suicide Prevention and Response, for specific follow-up requirements for inmate-patients admitted for suicide prevention.

**Case Reviews And Treatment Plan Update (Title XXII Section 79747)**

An inmate-patient's condition shall be assessed and monitored daily by the treating clinician, either a psychiatrist or psychologist.  On weekends or holidays, a Mental Health clinician on call or the MOD shall make daily rounds.  The Mental Health Program Manager is responsible to ensure that all physicians serving as MOD or POC are trained in the use of the SRAC.

Documentation of daily contacts shall be made within 24 hours in the UHR by the updating clinician.

The IDTT shall review each crisis case as often as necessary, but at least every seven days, and update the treatment plan accordingly.  Each treatment plan update shall include the following:

1. Documentation of an inmate-patient's response to treatment and his/her progress or lack of progress towards the goals of treatment.

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

2.  Evaluation of factors that hinder progress and the interventions planned by the team to facilitate progress.

3.  The most recent diagnoses and descriptions of the main presenting problems.

4.  Evaluation of risk factors.

5.  Review of release or discharge plans.

**Treatment Services**

The Clinical Director or designee shall be responsible for the prompt care and treatment of each inmate-patient admitted to the MHCB, development and implementation of a treatment plan, completeness and accuracy of the UHR, necessary special instructions, and transmitting reports of the inmate-patient's condition. Whenever these responsibilities are delegated to another staff, continuity shall be ensured (Title XXII Section 79741 (b)).

An inmate-patient suffering from crisis or acute manifestations of a serious mental disorder shall be provided the following services and treatment in the MHCB:

<u>Medication Evaluation and Management</u>

The assigned psychiatrist shall evaluate individually each MHCB inmate-patient at least twice weekly to address psychiatric medication issues.

Refer to <u>Inmate Medical Services Policies and Procedures,</u> *Volume 4, Chapter 11, Medication Management,* regarding procedures for administration of medication, medication refusals, Directly Observed Therapy (DOT), and other aspects of medication administration.

<u>Nursing Care</u>

Twenty-four hour nursing care is available to the MHCB to administer and supervise medication, provide assistance for activities of daily living, observe and monitor inmate-patients, obtain all physician-ordered laboratory studies, and provide counseling or inmate-patient supervision as needed.

<u>Therapy and Counseling</u>

One-to-one intervention is often necessary in a crisis case. Usually, brief, intensive therapy is helpful if it focuses on issues that precipitated the admission and explores changes in

**Mental Health Crisis Bed**         **Mental Health Services Delivery System**

behaviors, perceptions and expectations which facilitate coping with the crisis. Group therapy may be provided to MHCB inmate-patients, consistent with clinical needs.

Rehabilitation Therapy

Inmate-patients may participate in rehabilitation therapy activities, consistent with clinical needs. Rehabilitation therapy may include activities such as indoor or outdoor recreation. These activities provide a setting for additional observation of inmate-patients, allowing for the evaluation of exaggerated symptoms or severe symptoms that are masked (Title XXII Section 79749 (c) (1)).

Inmate-patients who are awaiting transfer to DMH and remain in an MHCB beyond 10 days, shall be offered additional rehabilitation therapy and other treatment activities, as clinically indicated.

**Aftercare Planning and Referral**

Planning for follow-up services is a critical component of the care an inmate-patient needs upon release from the MHCB. This planning may lead to a referral to a program or other appropriate placement to ensure continuity of care. An inmate-patient who clearly requires longer-term hospital care may be referred and transferred to an inpatient hospital program operated by the Department of Mental Health. Aftercare plans shall include:

1. The diagnosis and psychiatric problems continuing to require treatment.

2. Any other unique mental health or physical conditions that could affect treatment (e.g., allergies, special dietary needs, chronic diseases).

3. Recommendations for follow-up treatment, including medications and specific psychotherapies.

4. Referrals to other treatment programs and institutional services, including vocational or educational programs, substance abuse programs and job programs (Title XXII Section 79749 (d)).

5. The aftercare plan shall consider the inmate-patient's potential in-custody housing, proximity to release from incarceration, probable need for community treatment and social services, and need for continued mental health care. If an inmate-patient requires continued care upon paroling, the Parole Outpatient Clinic shall be contacted.

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

## G. INVOLUNTARY TREATMENT

An inmate-patient in crisis who does not consent for treatment with medication may be involuntarily treated to control symptoms which constitute:

- A danger to self, or
- A danger to others, or
- Grave disability on the basis of a serious mental disorder.

Involuntary medication administration refers to the administration of any psychotropic or antipsychotic medication or drug by use of force, or restraint.

The reasoning for the determination that an inmate-patient is a danger to self or others, or is gravely disabled, and is incompetent to render an informed consent shall be documented in the inmate-patient's UHR.

If, in the clinical judgment of a psychiatrist or other physician, an emergency exists, the physician or psychiatrist may order involuntary medication for a period not to exceed 72 hours. An emergency exists when there is a sudden marked change in the inmate-patient's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate-patient or others and it is impractical to first obtain consent.

An inmate-patient shall be afforded due process rights if involuntary treatment is necessary beyond 72 hours.

Refer to Correctional Treatment Center Policy and Procedure Manual, Volume VIII, Section 16, Involuntary Treatment, for detailed procedures.

## H. CLINICAL RESTRAINT AND SECLUSION

Restraint or seclusion shall be used only in response to an emergency to protect the inmate-patient and/or others from harm and/or clinical deterioration. The form of restraint or seclusion selected shall be the least restrictive level necessary to contain the emerging crisis/dangerous behavior. The determination of the presence of an emergent situation rests upon the clinical judgment of staff. It does not require the staff to defer restraint or seclusion until dangerous behavior occurs but may be based upon knowledge of the inmate-patient and its predictive value.

Restraint or seclusion shall never be used as punishment or for the convenience of staff. Threatening inmate-patients with restraint or seclusion is considered psychological abuse and is prohibited.

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

Any form of PRN (as needed) or standing order for restraint or seclusion is expressly prohibited.

For the purpose of this policy, authorized clinician means a Psychiatrist, licensed Psychologist, or (on weekends or after normal business hours) the physician or psychiatrist on call or the POD or MOD. Per Title 22 regulations, RNs who administer restraints and seclusion must receive training and pass a competency validation that they can safely and competently apply and monitor inmate-patients in restraints and seclusion.

**Restraint**

<u>Order and Documentation</u>

Restraint shall only be used on a written order of an authorized clinician. In an emergency circumstance, licensed nursing staff may authorize initiation of restraint. An emergency circumstance exists when there is a sudden marked change in the inmate-patient's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate-patient or others, and it is impractical to first obtain an order.

When an authorized clinician is present, the authorized clinician shall evaluate the need for restraint, approve, if appropriate, and write the order with a corresponding progress note.

When there is no authorized clinician present, a RN who has been trained in the use of restraint and seclusion shall immediately evaluate the need for restraint and initiate restraint, if appropriate. If an RN is not present, an RN shall be notified immediately and shall respond within fifteen (15) minutes of notification to evaluate the need for restraint and initiate restraint, if appropriate. When an RN initiates restraint, an authorized clinician shall immediately be notified and shall respond within one (1) hour of notification to give a verbal or written order. The authorized clinician may be a psychiatrist, licensed psychologist, medical officer of the day, physician or psychiatrist on call.

The documentation of a verbal order shall include the name of the authorized clinician giving the order, the time the order was received, the duration of the order, and the name and signature of the RN receiving the order.

The initial order for restraint shall not exceed four (4) hours.

Verbal initial orders for restraint shall be followed with written orders within four (4) hours of the time the restraints were first applied. Verbal subsequent orders for restraint shall be followed with written orders within four (4) hours of time the verbal order was given.

**Mental Health Crisis Bed**                **Mental Health Services Delivery System**

The order shall indicate the type of restraint and the time limits of the order.

A written order authorizing the use of restraint is required even if such use is discontinued prior to the authorized clinician's arrival.

When an RN initiates restraint, the RN shall document the need for the initiation of restraint on a CDCR Form 7316, Restraint/Seclusion Record. The documentation shall include a description of the inmate-patient's behavior including any precursor/antecedent behaviors and other relevant factors upon which the inmate-patient was determined to be a danger to self or others, staff actions taken to utilize alternatives to restraint, information given to the inmate-patient about the reasons for restraint, the conditions of release, and the inmate-patient's response, and injuries to the inmate-patient.

All inmate-patients placed into restraint shall remain under constant direct observation by trained custody or nursing staff until restraint is discontinued and a psychiatrist or psychologist has determined that constant direct observation is no longer clinically indicated. The RN shall perform a mental status and physical assessment of the inmate-patient within fifteen (15) minutes of the initiation of restraint use.

Each time an order for restraint is written, the authorized clinician shall complete a progress note documenting the need for initiation/continuation of restraint and shall specify the elements of the emergency that necessitated restraint use and behavior changes that may indicate the inmate-patient no longer presents a danger to self or others. The note shall describe what least restrictive measures were tried prior to this order.

Prior to the expiration of the initial four-hour order for restraint, an authorized clinician shall conduct a face-to-face evaluation of the inmate-patient to determine the necessity for continued restraint. The authorized clinician shall either write an order to discontinue restraint or write an order to continue or modify restraint for a period not to exceed eight (8) hours. For subsequent evaluations after the initial face to face evaluation by an authorized clinician, if there is no authorized clinician available, an RN who has received the appropriate training shall conduct the face-to-face evaluation. The RN shall contact an authorized clinician and provide a description of current behavior, attitudes, or other indicators of present dangerousness; PRN medication usage; change in vital signs, including pain assessment; changes in mental or physical status; and side effects (e.g., confusion, akathisia, EPS). The authorized clinician shall then either give a verbal order to discontinue restraint or give a verbal order to continue or modify restraint for a period not to exceed eight (8) hours.

**Mental Health Crisis Bed**                     **Mental Health Services Delivery System**

Subsequent orders for continuation of restraint shall not exceed eight (8) hours. An authorized clinician shall evaluate the inmate-patient at least every 24 hours after the first four hours.

The inmate-patient's treatment plan must be modified to include a sufficiently detailed description of the emergency and the rationale for the use of the specific degree of restraint. The criteria for establishing termination should be described in operational, objective terms comprehensible to the inmate-patient.

The inmate-patient's nursing care plan shall be modified to provide for the special needs of the inmate-patient while in restraint and/or seclusion.

Types of Restraint

Five point:  All extremities and chest restraint
Four point:  All four extremities
Two point:  Upper extremities only

Application

The inmate-patient shall be protected from injury during restraint application and use. Staff shall use the least physical force necessary to protect inmate-patient and staff yet exercise sufficient force to control the inmate-patient.

Inmate-patients shall be placed on their backs when restraints are applied unless clinically contraindicated.

Four or Five-point leather restraints shall be used by clinical staff in the MHCB when ordered by an authorized clinician. The key shall be carried by nursing staff after restraints have been applied to an inmate-patient until the procedure is discontinued.

Generally, four point restraints should be used unless there are compelling clinical reasons to the contrary.

If inmate-patient is an amputee or otherwise lacks one or more limbs, one restraint shall include the chest.

Generally, restraints should be applied to the chest or upper extremities first.

A soft cloth or bandage shall be applied to the extremity before applying the leather restraints to protect the skin.

**Mental Health Crisis Bed** **Mental Health Services Delivery System**

Nursing staff shall notify the watch commander and Clinical Director or designee of an order to place an inmate-patient in four or five point restraints. When restraints are applied to an inmate-patient, CTC staff shall have at least three custody personnel present for the application of these restraints, but the RN shall perform the actual application of restraints.

In emergency situations, custody staff may use metal restraints (handcuffs) on inmates in order to gain control. Metal restraints shall be replaced with leather restraints by the RN as soon as possible.

Evaluation and Monitoring

A physician or nurse practitioner shall perform a brief physical examination of the inmate-patient as soon as possible but no longer than four (4) hours after the initiation of restraint use. An authorized clinician shall conduct a face-to-face evaluation of the inmate-patient no longer than four (4) hours after the initiation of restraint use. If the use of restraints is discontinued prior to the physician's arrival, the physician shall conduct a brief physical examination no longer than twenty-four (24) hours after the episode of restraint use.

After the initial face-to-face evaluation by an authorized clinician, an authorized clinician or a trained RN shall conduct a face-to-face evaluation at least every eight (8) hours during the period an inmate-patient is in restraints. In all cases, each inmate-patient in restraints shall be interviewed face-to-face and evaluated for continued dangerousness by an authorized clinician at least daily. When a face-to-face evaluation is conducted by a trained RN, the RN shall contact an authorized clinician and provide a description of current behavior, attitudes, or other indicators of present risk; PRN medication usage; change in vital signs, including pain assessment; changes in mental or physical status; and side effects (e.g., confusion, akathisia, EPS). The RN shall document findings on CDCR 7316, Restraint/Seclusion Record.

During the first fifteen (15) minutes of the use of any form of restraint, the inmate-patient shall remain on direct one-on-one nursing observation. After the first fifteen (15) minutes of the use of restraint, constant direct observation may be continued by trained custody or nursing staff.

In order to ensure the continuation of adequate circulation, nursing staff shall physically check each extremity every fifteen (15) minutes. Each fifteen (15) minute assessment period shall be documented on the CDCR Form 7316.

Every two hours, nursing staff shall perform an assessment of the inmate-patient including condition of skin and circulation, need for toileting, personal hygiene procedures, and proper application of the restraint. Documentation of the two-hour evaluations shall summarize the

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

inmate-patient's overall physical condition, general behavior, and response to counseling/interviews.

Range of motion exercises shall be performed every two hours unless the inmate-patient is too agitated or assaultive to safely remove the restraints. For range of motion exercises, restraints on each extremity shall be removed, one at a time. Performance of range of motion exercises shall be clearly documented on the CDCR Form 7316 and shall include the inmate-patient's behavior, respiration, and responsiveness. If range of motion exercises are not performed, nursing staff shall clearly document the reason on the CDCR Form 7316.

Fluids and nourishment shall also be provided every two hours except during hours of sleep. The inmate-patient's head and shoulders shall be elevated, if needed, while being fed or receiving fluids to reduce the risk of aspiration. Meals and fluids shall be documented on the CDCR Form 7316.

Restraint may be suspended for short periods of time in order to transfer inmate-patients from place to place to attend to necessary nursing or personal needs (i.e., feeding, bathing, or other treatment needs as necessary). If an inmate-patient has been released from restraints for more than one (1) hour, a new order shall be obtained. Inmate-patients shall not be returned to the previous, or any state of restraint without continuing evidence of dangerousness to self or others.

<u>Termination</u>

Restraint shall be terminated when:

1. The emergency or dangerous behavior no longer exists based on previously established criteria for release; or
2. The inmate-patient's identified precursor behaviors indicating imminent danger to self or others are no longer present; or
3. Due to the presence of medical contraindications, it would be harmful for the inmate-patient to remain in restraints.

When it is determined by the trained RN or authorized clinician that the inmate-patient has reached the behavioral criteria for release and no longer presents an imminent danger, release from restraint shall be ordered by an authorized clinician or trained Supervising RN or designee.

Upon termination of the restraint use, an entry shall be made in the progress notes describing the condition and response of the inmate-patient.

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

In accordance with Health and Safety Code 1180, a clinical and quality review shall be conducted for each episode of the use of seclusion or restraints.

**Seclusion**

Seclusion is the isolation of an inmate-patient in a locked room. Seclusion of an inmate-patient shall occur in a room that is designed or modified to provide for sufficient space for freedom of movement of staff, is free from hazardous objects or fixtures, has adequate light and ventilation, is maintained at an appropriate temperature, has a secure, lockable door, and has a window which permits visual observation of the inmate-patient by staff. Each MHCB shall set aside and equip a specific room to be used for the purpose of seclusion.

Order and Documentation

Seclusion shall only be used on a written order of an authorized clinician. In an emergency circumstance, licensed nursing staff may authorize initiation of seclusion. An emergency circumstance exists when there is a sudden marked change in the inmate-patient's condition so that action is immediately necessary for the preservation of life, the prevention of serious bodily harm to the inmate-patient or others, or to prevent further clinical deterioration, and it is impractical to first obtain an order and approval.

When an authorized clinician is present, the authorized clinician shall evaluate the need for seclusion, approve as appropriate, and write the order with a corresponding progress note.

When there is no authorized clinician present, an RN trained in the use of seclusion shall immediately evaluate the need for seclusion and initiate seclusion, if appropriate. If an RN is not present, an RN shall be notified immediately and shall respond within fifteen (15) minutes of notification to evaluate the need for seclusion and initiate seclusion, if appropriate. When seclusion is initiated by an RN, an authorized clinician shall immediately be notified and shall respond within one (1) hour of notification to give a verbal or written order.

The documentation of a verbal order shall include the name of the authorized clinician giving the order, the time the order was received, the duration of the order, and the name and signature of the RN receiving the order.

The initial order for seclusion shall not exceed four (4) hours.

Verbal initial orders for seclusion shall be followed with written orders within four (4) hours of the time seclusion was initiated. Verbal subsequent orders for seclusion shall be followed with written orders within four (4) hours of time the verbal order was given.

**Mental Health Crisis Bed**                    **Mental Health Services Delivery System**

The order shall indicate time limits.

A written order authorizing the use of seclusion is required, even if such use is discontinued prior to the authorized clinician's arrival.

When an RN authorizes seclusion, the RN shall document the need for the initiation of seclusion on a CDCR Form 7316. The documentation shall include a description of the inmate-patient's behavior including any precursor/antecedent behaviors and other relevant factors upon which the inmate-patient was determined to be a danger to self or others, staff actions taken to utilize alternatives to seclusion, information given to the inmate-patient about the reasons for seclusion, the conditions of release, and the inmate-patient's response, and injuries to the inmate-patient. The RN shall perform mental status and physical assessment of the inmate-patient within fifteen (15) minutes of the initiation of seclusion.

Each time an order for seclusion is written, the authorized clinician shall complete a progress note documenting the need for initiation/continuation of seclusion and shall specify the elements of the emergency that necessitate seclusion use and behavior changes that may indicate the inmate-patient no longer presents a danger to self or others. The note shall describe what least restrictive measures were tried prior to this order.

Prior to the expiration of the initial four-hour order for seclusion, an authorized clinician shall conduct a face-to-face evaluation of the inmate-patient to determine the necessity for continued seclusion. The authorized clinician shall either write an order to discontinue seclusion, or write an order to continue seclusion for a period not to exceed eight (8) hours. For subsequent evaluations after the initial face-to-face evaluation by an authorized clinician, if there is no authorized clinician available, an RN who has received the appropriate training shall conduct the face-to-face evaluation. The RN shall contact an authorized clinician and provide a description of current behavior, attitudes, or other indicators of present dangerousness; PRN medication usage; change in vital signs, including pain assessment; changes in mental or physical status; and side effects (e.g., confusion, akathisia, EPS). The authorized clinician shall then either give a verbal order to discontinue seclusion, or continue seclusion for a period not to exceed eight (8) hours.

Subsequent orders for continuation of seclusion shall not exceed eight (8) hours.

The inmate-patient's treatment plan must be modified to include a sufficiently detailed description of the emergency and the rationale for the use of the specific degree of seclusion. The criteria for establishing termination should be described in operational, objective terms comprehensible to the inmate-patient.

The inmate-patient's nursing care plan shall be modified to provide for the special needs of the inmate-patient while in seclusion.

| | |
|---|---|
| **Mental Health Crisis Bed** | **Mental Health Services Delivery System** |

Evaluation and Monitoring

A physician shall perform a brief physical examination of the inmate-patient as soon as possible, but no longer than four (4) hours after the initiation of seclusion. If seclusion is discontinued prior to the physician's arrival, the physician shall conduct a brief physical examination no longer than twenty-four (24) hours after the episode of seclusion.

An authorized clinician shall conduct a face-to-face evaluation of the inmate-patient no longer than four (4) hours after the initiation of seclusion.

After the initial face-to-face evaluation by an authorized clinician, an authorized clinician or trained RN shall conduct a face-to-face evaluation at least every eight (8) hours during the period an inmate-patient is in seclusion. In all cases, each inmate-patient in seclusion shall be interviewed face-to-face and evaluated for continued dangerousness by an authorized clinician at least daily. When a face-to-face evaluation is conducted by a trained RN, the RN shall contact an authorized clinician and provide a description of current behavior, attitudes, or other indicators of present dangerousness; PRN medication usage; change in vital signs, including pain assessment; changes in mental or physical status; and side effects (e.g., confusion, akathisia, EPS). The RN shall document findings on CDCR 7316, Restraint/Seclusion Record.

During the first fifteen (15) minutes of seclusion, the inmate-patient shall remain on direct one-on-one nursing observation.

Nursing staff shall observe the inmate-patient at least every fifteen (15) minutes while the inmate-patient is in seclusion and document each observation on a CDCR Form 7316. Nursing staff shall ensure that the inmate-patient is safely secluded. Nursing checks shall always include visual observation and, when the inmate-patient is awake, shall also include verbal interaction.

Every two hours, nursing staff shall perform an assessment of the inmate-patient including need for toileting; exercise; personal hygiene procedures; and room environment, temperature, and cleanliness. Fluids and nourishment shall also be provided every two hours except during hours of sleep. Documentation of the two-hour evaluations shall summarize the inmate-patient's overall physical condition, general behavior, and response to counseling/interviews.

Seclusion may be suspended for short periods of time in order to transfer inmate-patients from place to place to attend to necessary nursing or personal needs (i.e., feeding, bathing, or other treatment needs as necessary). If an inmate-patient has been released from seclusion for more than one (1) hour, a new order shall be obtained. Inmate-patients shall not be

**Mental Health Crisis Bed**          **Mental Health Services Delivery System**

returned to the previous, or any state of seclusion without continuing evidence of dangerousness to self or others.

Termination

Seclusion shall be terminated when:

1.  The emergency or dangerous behavior no longer exists; or
2.  The inmate-patient's identified precursor behaviors indicating imminent danger to self or others are no longer present; or
3.  Due to the presence of medical contraindications, it would be harmful for the inmate-patient to remain in seclusion.

When it is determined the inmate-patient no longer presents an imminent danger, release from seclusion shall be authorized by an authorized clinician or Supervising RN or designee.

Upon termination of seclusion, an entry shall be made in the progress notes describing the condition and response of the inmate-patient.

**I.  DISCHARGE**

It is the responsibility of the MHCB to provide for continuity of inmate-patient care upon discharge to another level of care, another facility, or self-care.

The inmate-patient has a right to information regarding discharge on an ongoing basis during his or her stay in the MHCB.

**Discharge Plan**

a.  The discharge plan is initiated at the time of admission.

b.  The IDTT shall assess the inmate-patient's need for further medical, psychiatric, psychological, social work and rehabilitative services; nursing services; education services; and transportation when developing the discharge plan.  The plan ensures that needed services are available at the appropriate level of care.

c.  The plan shall include participation by the inmate-patient to facilitate inmate-patient responsibility for his or her care and treatment.

d.  The plan reflects appropriate coordination with and utilization of MHCB custody staff.

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

e.  The plan includes documentation of contact to the Mental Health Program Manager at the institution where the inmate-patient is being transferred.

f.  Once the discharge plan is completed, referrals for appropriate aftercare placement shall be documented by an MHCB clinical staff member in the inmate-patient's treatment plan.

g.  The assigned CCM or PC at the institution where the inmate-patient is being transferred is responsible for implementing the discharge plan.

h.  Treatment shall continue for all inmate-patients clinically discharged until transferred.

**Discharge Criteria**

Criteria for discharge from the MHCB to an EOP or CCCMS program include:

•  a stabilization of the crisis behavior; and
•  the ability to function in a less clinically structured environment.

Discharge criteria do <u>not</u> necessarily include <u>complete</u> resolution of symptoms but a resolution sufficient to allow continuation of treatment at a less intensive level of care.

Discharge to DMH inpatient care requires the clinical need for inpatient services of a duration greater than 10 days.

**Procedure**

a.  Upon completion of MHCB inpatient treatment, cases transferred to the MHCB as "Psychiatric and Return" shall be returned to the sending institution, unless the sending institution does not provide the level of care that the inmate-patient currently requires or the inmate-patient has any other case factor(s) that preclude return to the sending institution.  In those cases, the MHCB will transfer the inmate-patient to an institution that provides the appropriate level of care and security.

b.  The MHCB Discharge Summary shall be completed by the attending psychiatrist or psychologist prior to release from the MHCB.  This should include specific recommendations regarding follow-up visits with the CCM or PC and custody staff.  The Discharge Summary, either handwritten or dictated, includes, but is not limited to, the MHCB course of treatment, current medications, response to treatment, condition at time of discharge, and detailed information regarding follow-up care needs.  The inmate-patient's participation, which supports inmate-patient responsibility, shall also be included.

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

c. An inmate-patient shall be discharged only on the written order of the MHCB psychiatrist or psychologist.

d. Each institution with an MHCB shall appoint a Discharge Coordinator who is responsible for notifying the Mental Health Program Manager or designee at the institution where the inmate-patient is being transferred of the pending discharge. The notification shall occur prior to discharge and shall include the inmate-patient's Discharge Summary, custody level, treatment needs, and any significant medical conditions. The Discharge Coordinator shall document the notification in the inmate-patient's discharge plan.

e. The Mental Health Program Manager or designee at the institution where the inmate-patient is being transferred shall notify the assigned CCM or PC. If the inmate-patient does not have an assigned CCM or PC, one shall be assigned. If the inmate-patient was admitted to the MHCB for suicide observation or watch, the Mental Health Program Manager shall also notify the mental health clerical staff responsible for the tracking system, clinical staff responsible for weekend or holiday coverage and the Facility Captain of the housing unit to which the inmate-patient is being transferred so that the required clinical and custody evaluation can be scheduled.

f. No inmate-patient shall be discharged from the MHCB without an IDTT review, or in the event a new IDTT can not be convened, a consultation with an IDTT member, such a nurse.

g. At the time of discharge, the original Inpatient Record is retained at the MHCB institution. The inmate-patient's UHR shall be transferred to the receiving institution at the time of discharge. Certain documents from the Inpatient Record are copied and filed in the Inpatient section of the UHR. This includes copies of the Admission Record, History and Physical, Operative Reports, Physician Orders, Discharge Summary, Consultations, Progress Notes, and Diagnostic Reports.

h. Prior to discharge from the MHCB, a nurse shall advise the inmate-patient regarding medications and follow-up visits, and clear the inmate-patient for MHCB discharge.

i. Any inmate-patient admitted to the MHCB program because of suicidal threats or behavior shall not be discharged to their housing unit until a Suicide Risk Assessment Checklist has been completed and a follow-up plan developed.

- The PC shall provide follow-up treatment on an outpatient basis. This shall include daily contact with the inmate-patient for five (5) consecutive days following discharge. On weekends and holidays, a Licensed Psychiatric Technician or mental health clinician other than the PC may conduct the daily contact; however, the PC is responsible for ensuring the contacts occur. The daily contact shall be documented

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

on a CDCR Form 7230, Interdisciplinary Progress Note. The note shall include the inmate-patient's current mental status and suicide risk.

- The contact shall occur in the inmate-patient's regular housing unit.

- Custody staff shall conduct an hourly check of inmate-patients admitted to the MHCB for suicidality for the first 24 hours after discharge. A mental health clinician shall then discuss the inmate-patient's behavior with the custody staff and evaluate the inmate-patient to determine if the custody checks should be continued or discontinued. If the custody checks are retained, the mental health clinician shall determine whether the checks are to be every hour, every two hours, or every four hours for the next 24-48 hours. Custody staff shall maintain a log of checks on inmates.

- If after any evaluation the mental health clinician feels the inmate-patient has not stabilized, the inmate-patient shall be returned to the MHCB for further treatment. Careful consideration by the IDTT should be given to releasing inmates on a Friday, over the weekend, or the day before a holiday. The mental status and stability of the inmate-patient should be documented in detail on a CDCR Form 7230, Interdisciplinary Progress Note. A mental health clinician must be available on weekends and holidays, either on duty or on call.

**Quality Management for Implementation of Discharge Planning**

Concurrent with the implementation of the discharge plan or within 21 days of the inmate-patient's discharge from the MHCB, the Mental Health Program Manager at the institution where the inmate-patient was transferred will audit the implementation of the discharge plan and follow up care.

For inmate-patients who were admitted to the MHCB for suicide observation or watch, the Mental Health Program Manager shall review the Suicide Risk Assessment Checklist that was completed prior to discharge from the MHCB to ensure the discharge plan is appropriate. The Mental Health Program Manager shall document the review in the UHR and forward a copy of the Suicide Risk Assessment form to the Suicide Prevention Committee. A copy will also be retained by the mental health clerical staff.

**J. MENTAL HEALTH PATIENTS IN OUTPATIENT HOUSING UNITS (OHU)**

Licensed mental health professionals may document placement need for patients who require observation and evaluation of behaviors that may be indicative of mental illness.

| Mental Health Crisis Bed | Mental Health Services Delivery System |

A physician, psychiatrist, or licensed psychologist shall place and release an inmate-patient into and out of the OHU for mental health care and shall be in charge of the inmate-patient's care while housed there. The placement into the OHU shall be made using the CDCR Form 7221, Physician's Order.

Psychologists placing inmate-patients in the OHU shall refer the inmate-patient to a physician for a physical examination and to a psychiatrist for a medication evaluation.

The physician's or psychologist's placement orders may be transmitted verbally or by telephone to the RN or MTA. The ordering physician or psychologist shall sign all verbal placement orders within twenty-four (24) hours.

A physician or psychologist shall document the need for placement on a CDCR Form 7230, Interdisciplinary Progress Note, within twenty-four (24) hours of placement. Within twenty-four (24) hours after placement, each inmate-patient shall have an evaluation, including admission history and physical examination for immediate care planning. The Mental Health evaluation shall be documented on a CDCR Form 7386.

The patient shall receive an additional face to face evaluation by a Mental Health clinician or other qualified medical staff within 48 hours. This contact shall be documented on a CDCR Form 7230-MH, Mental Health Progress Note. If at any time during this observation/evaluation period it is determined that the inmate-patient requires inpatient care, arrangements shall be made to transfer the inmate-patient within 24 hours of the determination to a MHCB. If evaluation of the inmate-patient's mental health need continues beyond 48 hours, arrangements shall be made to transfer the inmate-patient to a MHCB or inpatient facility. Inmate-patients shall not remain in OHU for more than 72 hours.

The only exception to this 72-hour limit shall occur, on a case-by-case basis, only if both of the following criteria are met:
1. The inmate-patient has been determined to need EOP level of care and is awaiting placement.
2. An IDTT determines that the inmate-patient may be at risk if returned to any of the housing units available at that institution while awaiting transfer.

When both of the above criteria are met, the inmate-patient may be held in OHU until transferred to an EOP level of care program. The timeline for transfer from OHU to EOP shall not exceed 30 days from EOP endorsement. This timeline for transfer shall include any days that the inmate-patient is in a Mental Health Crisis Bed following endorsement, and shall not be restarted if the inmate-patient returns to the OHU.

When it is determined that inpatient care is necessary and the institution staff are unable to expeditiously find a MHCB, they will contact the Health Care Placement Unit for assistance to ensure placement within the required timelines.  If it is determined that an order for Suicide Precaution or Watch is necessary, observation by clinical and/or custody staff, consistent with the Mental Health Services Delivery System Suicide Prevention policy, will be provided.

When an inmate is placed in the OHU for being potentially suicidal, a mental health clinician shall administer a SRAC at the time of placement and release.  On weekends, holidays, or after hours, the SRAC shall be administered by the MOD, POD, or RN trained on administration of the SRAC.  Inmate-patients housed in OHUs for suicide observation, who do not require MHCB level of care and who were discharged from the OHU before 24-hours, may be seen by clinicians and custody staff for follow-up care utilizing the process and timeframes described for MHCB suicide discharges, if clinically indicated.

When emergency circumstances exist, clinical restraint or clinical seclusion may be applied in OHUs, subject to the requirements for clinical restraint or clinical seclusion in the MHCB. Emergency circumstances exist when there is a sudden marked change in the inmate-patient's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate-patient or others and it is impractical to first transfer the inmate-patient to an MHCB bed.  The MHCB transfer process (See Section D. Referral and Transfer, MHCB Transfer) shall be immediately initiated upon determination that an inmate-patient requires clinical restraint or seclusion and transported when clinically safe to do so.

### *Mental Health Conditions Appropriate for Placement into an OHU*

1. Observation for suicide precaution or suicide watch consistent with the Department's Suicide Prevention and Response Project.
2. Inmates who engage in behaviors that might be indicative of a mental disorder that interferes with daily living and requires further observation and evaluation.
3. Inmate-patients who have been referred to an EOP or MHCB who are too ill or too vulnerable to be placed in the General Population while waiting for transfer.

If at any time the mental health clinician determines that the inmate-patient has improved and does not require a higher level of care, the clinician may discharge the inmate-patient back to the General Population at the appropriate level of care.

### K. **STAFFING**

The MHCB is designed to provide 24-hour care and is subject to State licensing requirements (Title XXII Section 79739).  Consequently, it must comply with the staffing standards of the

| Mental Health Crisis Bed | Mental Health Services Delivery System |
|---|---|

Correctional Treatment Center license under which it operates.  In programs with six or less beds, these services may be provided by the Clinical Director.  MHCB staff shall provide acute mental health services for inmate-patients admitted to MHCB beds.  Through contracts or temporary reassignment of other mental health staff from the other area of the programs, staffing shall be augmented as needed.

The MHCB shall have a Clinical Director who shall direct the clinical program and be responsible for the quality of clinical services (Title XXII Section 79741 (b)).  The Clinical Director shall be a psychiatrist, licensed clinical psychologist, licensed clinical social worker, or a psychiatric mental health nurse operating within his or her scope of licensure with at least three years of direct clinical experience with seriously mentally disordered individuals after completion of his or her last year of graduate education (Title XXII Section 79755 (a)).  Each inmate-patient admitted as a patient to the MHCB is under the treatment of Staff Psychiatrists, Psychologists and/or Licensed Clinical Social Workers.  Nursing services are provided by Registered Nurses, Medical Technical Assistants, Recreational or Occupational Therapists or Licensed Psychiatric Technicians.  Clerical services are provided by an Office Technician and a Medical Transcriber.

**Administrative Staff**

The MHCB is subject to the same medical staff organization, bylaws, and policies and procedures that govern the other licensed beds of the facility (Title XXII Sections 79775, 79777).  Staff serving in these positions shall meet the minimum qualifications specified in the California Code of Regulations, Title XXII.  All MHCB staff are responsible to the Clinical Director.

**Clinical Staff**

Individual therapy or counseling, aftercare planning and referral services, and the clinical lead role in treatment plan development and modification shall be performed by the Staff Psychiatrist, Staff Psychologist, or Licensed Clinical Social Worker.  A Chief or Senior Psychiatrist or a Chief or Senior Psychologist may also provide these clinical services in addition to his or her other supervisory or management responsibilities, as directed.  Supervising clinical staff may assist in these services if required by workload, staffing considerations or unusual complexity of an individual case. Staff Psychiatrists, Staff Psychologists, Licensed Clinical Social Workers, Senior Psychiatrists and Senior Psychologists serve as PCs and report to the Clinical Director.

**Nursing Staff**   (Title XXII Section 79629)

Two Supervising Registered Nurse positions oversee all nursing services delivered in the CTC:  one for medical services and one for mental health services (Title XXII Section 79755

| Mental Health Crisis Bed | Mental Health Services Delivery System |

(d)).  Although the latter includes the MHCB, the use of one Supervising Registered Nurse per shift may mean that MHCB nursing functions may be supervised by the medical Supervising Registered Nurse for part of each 24-hour day.

Supervising Registered Nurses are responsible for functional supervision of CTC line nursing staff and nursing administration, which includes the MHCB.  Twenty-four hour registered nursing coverage and availability of a Supervising Psychiatric Registered Nurse 40 hours a week are necessary in the MHCB.  There are sufficient nurses within a 24-hour period to provide at least 2.5 hours per inmate-patient (Title XXII Section 79759).  An inmate-patient with higher acuity needs receives additional nursing and professional care as symptoms require.  Registered nurses may co-manage selected inmate-patients assisting PCs with group therapies but will not function independently as PCs.

**Mental Health Rehabilitation Services Staff**

Mental health rehabilitation therapy services shall evaluate social, recreational and vocational needs in accordance with the interests, abilities and needs of the inmate-patient; shall develop and prepare related therapies; and shall include such evaluation, and documentation of therapy development and preparation, in the inmate-patient's treatment plan (Title XXII Section 79749).

Mental health rehabilitation therapy services shall be designed by and provided under the direction of a licensed mental health professional, a Recreational Therapist, an Occupational Therapist, or a Licensed Psychiatric Technician (Title XXII Section 79749 (c) (2)).

In the Department, appropriately trained Correctional Officers (COs) and Correctional Counselors may be counted to meet licensing ratios.  COs and Medical Technical Assistants also assist in managing, observing and escorting the assaultive or suicidal inmate-patients.

**Clerical Staff**

Clerical support in the MHCB is provided by an Office Technician, who reports to the Clinical Director, and a Medical Transcriber, who is placed in the institutional transcriber pool and reports to the pool's Supervising Medical Transcriber.

**L.  UNIT HEALTH RECORDS**

1.  Confidentiality

    Mental health records generally have a higher standard of confidentiality than other medical records.  All staff with possible access to such records shall sign an oath of

confidentiality to keep any information they learn from the records strictly confidential (Title XXII Section 79807).

2. Access

All MHCB clinicians and nursing staff must have access to the inmate-patient's records 24 hours per day. Records shall be brought as needed from the records storage area, kept in the MHCB treatment area or clinician offices while needed, and returned to the storage area when no longer needed. If records are required outside the MHCB treatment area or clinician's offices, the records shall be hand carried by escorting staff and returned to the MHCB with escorting staff as soon as the outside business is completed (Title XXII Section 79807).

3. The Clinical Director shall:

   a. Ensure the History and Physical is transcribed and delivered to the MHCB as soon as possible.

   b. Ensure that previous medical records are provided to the MHCB (Title XXII Section 79803 (d)).

**M. MENTAL HEALTH QUALITY MANAGEMENT SYSTEM (MHQMS)**

Ongoing assessment of the quality of clinical services will follow the MHQMS procedures.