| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

# CHAPTER 10
## Suicide Prevention and Response

### INTRODUCTION

It is the goal of the California Department of Corrections and Rehabilitation (CDCR) Suicide Prevention and Response Focused Improvement Team (SPR FIT) to prevent inmate deaths due to suicide. Suicide is defined as an intentional self-injurious behavior that causes or leads to one's own death. CDCR recognizes that prevention of suicide involves a team effort by every employee regardless of professional discipline or job title.

To accomplish this goal, each institution shall implement CDCR Division of Correctional Health Care Services (DCHCS) policies, described herein, regarding suicide prevention and response, via written operating procedures. The purpose of the policies is to

- Establish standards of intervention and care.

- Establish ongoing education and training for clinical, custodial, and administrative staff.

- Provide instructions and guidance for establishment and maintenance of the SPR FIT.

- Review suicide deaths regarding systems issues, clinical care issues, and custody response.

- Ensure that quality improvement (a.k.a. corrective action) plans are drafted and implemented, when indicated, to reduce the incidence of preventable suicides, improve the delivery of quality care, improve the involvement of non-healthcare staff, and contribute to the ongoing education and training.

This chapter of the Mental Health Services Delivery System (MHSDS) Program Guides is divided into the following subsections:

I. Suicide Prevention and Response Project

II. Training for Staff

III. Clinical Care Services

    A. Suicide Risk Assessment

    B. Interventions for Suicidal Ideation and Threats, Self-Injurious Behaviors and Suicide Attempts

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

      1.   Procedures for Suicide Precautions

      2.   Procedures for Suicide Watch

      3.   Response to Self-Injurious Behaviors and Suicide Attempts

  IV.  Suicide Reporting

   V.  Suicide Death Review

  VI.  Mental Health Evaluation Component for a Rules Violation Report

**I.**   <u>**SUICIDE PREVENTION AND RESPONSE PROJECT**</u>

**Policy**

<u>CDCR DCHCS</u>

The CDCR DCHCS Quality Management Committee (QMC) shall maintain an DCHCS Mental Health Program (MHP) Subcommittee that provides oversight to and coordination of the statewide mental health program to achieve statewide strategic objectives. The DCHCS MHP Subcommittee shall plan, develop, manage and improve timely access to and effectiveness of clinical services related to the mental health program. The DCHCS MHP Subcommittee shall also cooperate with, and respond in a timely manner to, any requests from the DCHCS Emergency Response & Death Review (ERDR) Subcommittee following a suicide.

The DCHCS MHP Subcommittee shall establish and maintain a statewide Suicide Prevention and Response Focused Improvement Team (SPR FIT). The DCHCS MHP Subcommittee shall appoint an DCHCS SPR FIT Coordinator. The Coordinator shall be a licensed physician, psychologist, social worker, nurse practitioner, or registered nurse.

<u>Local Institutions</u>

Each Local QMC shall maintain a Local MHP Subcommittee that provides oversight to and coordination of the local mental health program to achieve statewide strategic objectives. Each Local MHP Subcommittee shall plan, develop, manage and improve timely access to and effectiveness of clinical services related to the mental health program. Each Local MHP Subcommittee shall also cooperate with, and respond in a timely manner to, any requests from the Local ERDR Subcommittee following a suicide.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Each Local MHP Subcommittee shall establish and maintain a Local SPR FIT. Each Local MHP Subcommittee shall appoint a Local SPR FIT Coordinator. The Coordinator shall be a licensed physician, psychologist, social worker, nurse practitioner, or registered nurse.

**Purpose**

The DCHCS SPR FIT and each Local SPR FIT shall provide employees with training and guidance with regard to suicide prevention, response, reporting, and review for the purpose of reducing the risk of inmate suicides.

**Procedure**

    **A. Reporting Relationships**

       The DCHCS SPR FIT shall:

        → Send a management report, at least once a month, to the DCHCS MHP Subcommittee.

        → Receive formal communication, at least once a month, from the DCHCS MHP Subcommittee.

       Each local SPR FIT shall:

        → Send a management report, at least once a month, to the local MHP Subcommittee.

        → Receive formal communication, at least once a month, from the local MHP Subcommittee.

    **B. Responsibilities**

       **1. The DCHCS SPR FIT shall:**

          a. Provide oversight and guidance for each Local SPR FIT regarding time sensitive due dates.

          b. Monitor implementation and compliance with all CDCR policies and procedures relating to suicide prevention and response.

          c. Provide for the planning, development, and implementation of statewide training, in collaboration with the DCHCS Training Department, regarding the issue of suicide prevention and response.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

    d.  Monitor and track all suicides statewide.

    e.  Provide for the selection and dispatch of a mental health suicide reviewer (MHSR) after a suicide occurs.

    f.  Provide oversight, assistance, coordination, and supervision of MHSR activities and reports.

    g.  Track and analyze demographic and clinical information received from the DCHCS ERDR Subcommittee for improving suicide prevention and response processes.

**2. Each Local SPR FIT shall:**

    a.  Ensure implementation and compliance with all CDCR policies and procedures, relating to suicide prevention and response, at their institution.

    b.  Be responsible for updating local operating procedures (OP) to ensure consistency with DCHCS policies regarding suicide prevention and response. The institution's Suicide Prevention and Response OP shall be updated at least annually and sent to the DCHCS through the standard Quality Management process for review and approval.

    c.  Implement training, in collaboration with the local In-Service Training (IST) unit, regarding the issue of suicide prevention and response.

    d.  Review suicide watch and precaution procedures, including use of video cameras, to ensure they are being carried out consistent with operating procedures.

    e.  Work with the Local ERDR Subcommittee to review all suicides and those suicide attempts in which Cardiopulmonary Resuscitation (CPR) and/or other medical procedures were performed, as well as custody cell entry and cut-down procedures.

    f.  Monitor and track all suicide gestures, suicide attempts, self-mutilations, and deaths. Monitoring and tracking of suicide attempts should include a review of the appropriateness of treatment plans and five-day follow-ups.

    g.  Review and track all 5-day clinical follow-up treatment plans and custody wellness check procedures. The Mental Health Tracking System shall be used to track all clinical five-day follow-ups.

    h.  Ensure all required documentation for suicide death reporting is forwarded to DCHCS in adherence with time-sensitive due dates.

    i.  Provide assistance for the activities of the visiting MHSR.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

j.  Provide oversight for the implementation of DCHCS-issued quality improvement  plans (QIP) with input and assistance from the Local MHP and Local ERDR Subcommittees.

### C.  SPR FIT Membership

DCHCS shall include:
- SPR FIT Coordinator (Chairperson)
- Chief Psychiatrist
- Chief Psychologist
- Nurse Consultant
- Designated Facility Captain

Local shall include:
- SPR FIT Coordinator (Chairperson)
- Chief Psychiatrist*
- Chief Psychologist*
- Supervising Registered Nurse
- Sr. Medical Technical Assistant (MTA) or MTA (preferably from Administrative Segregation [ASU])
- Sr. Licensed Psychiatric Technician (LPT) or LPT (preferably from ASU)
- Health Program Coordinator
- Correctional Health Services Administrator

DCHCS may also include, but is not limited to:
- Senior Psychiatrist
- Senior Psychologist
- Administrative/Clerical Support

- Analyst Support

Local may also include, but is not limited to:
- Senior Psychiatrist
- Senior Psychologists
- Staff Psychiatrist:  Mental Health Crisis Bed (MHCB)/Outpatient Housing Unit (OHU)
- Staff Psychologist: MHCB/OHU
- Standards and Compliance Coordinator
- Litigation Coordinator
- Facility Captain
- ASU Lieutenant/Sergeant
- Reception Center Lieutenant/Sergeant
- Classification and Parole Representative
- In Service Training Lieutenant
- Administrative/Clerical Support
- Keyhea Coordinator

*Senior Psychiatrist/Senior Psychologist attendance shall meet quorum requirement in institutions without Chief Psychiatrist/Chief Psychologist positions.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

### D.  Frequency of Meetings

The DCHCS SPR FIT shall meet at least, but is not limited to, once a month.

Each Local SPR FIT shall meet at least, but is not limited to, once a month.

### E.  Attendance Requirements

A quorum consists of the above listed mandatory members.

### F.  Management Reports

The DCHCS SPR FIT shall submit a complete, standardized management report to the DCHCS MHP Subcommittee by the 5th day of each month.

Each Local SPR FIT shall submit a complete, standardized management report to the Local MHP Subcommittee by the 5th day of each month.

## II.    TRAINING FOR STAFF

### Definitions

| | |
|---|---|
| Suicidal ideation: | Thoughts of suicide or death, which can be specific or vague, and can include active thoughts of committing suicide or the passive desire to be dead. |
| Suicidal intent: | The intention to deliberately end one's own life. |
| Self-injurious behavior: | A behavior that causes, or is likely to cause, physical self-injury. |
| Self-mutilation: | An intentional self-injurious behavior without suicidal intent.  The purpose of the behavior may be to gain attention, relieve stress, or experience pain.  Self-mutilation can result in serious injury or accidental death. |
| Suicide gesture: | An intentional self-injurious behavior, accompanied by suicidal ideation and/or intent, which is unlikely to cause death.  The purpose of the behavior may be to gain attention and/or experiment with the possibility of suicide.  Suicide gestures may indicate increased suicide risk. |
| Suicide attempt: | An intentional self-injurious behavior, which is apparently designed to deliberately end one's life, and may require medical and/or custody intervention to reduce the likelihood of death or serious injury. |

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Suicide:                An intentional self-injurious behavior that causes or leads to one's own death.

All CDCR health care and custodial employees at the local institutions shall attend updated training on suicide prevention and response at least once annually. Suicide Prevention and Response training shall be part of the new employee orientation provided by mental health staff in collaboration with the In-Service Training (IST) unit at each local institution. New correctional officers shall receive this training at the Basic Correctional Officer Academy.

The suicide prevention and response training shall include the following elements:

- Suicide risk assessment
- Suicide methods awareness
- Interventions for suicidal ideation, threats, gestures, and attempts
- Suicide reporting and reviews
- Mental health evaluations for rules violation reports

Clinical and custody staff shall receive specialized training with respect to their particular roles in responding to self-injurious behaviors, suicide attempts, and suicides.

## III.    CLINICAL CARE SERVICES

This subsection addresses the various clinical care services for inmates regarding suicide prevention and response. Included are the assessment of risk for suicide, the utilization of a form for documenting the risk factors, and clinical interventions such as procedures for suicide precautions and suicide watch, and responses to suicide attempts and to suicide.

Education regarding the methods utilized by inmates when attempting suicide shall be taught as part of the suicide prevention and response training.

Employee strategies for maintaining a safe environment, and for ensuring that other policies and procedures relative to suicide prevention and response, such as regarding medication distribution and inmate-patient compliance, are detailed in the relevant chapters and sections of the complete Inmate Medical Services Program Policies & Procedures.

**Any CDCR employee who becomes aware of inmate current suicidal ideation, threats, gestures, self-injurious behaviors or suicide attempts shall immediately notify a member of the health care staff. The inmate shall be placed under direct observation, per local custody operating procedure, until a clinician trained to perform a suicide risk**

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

assessment (psychiatrist, psychologist, clinical social worker, primary care physician, nurse practitioner, or registered nurse) conducts a face-to-face evaluation.

**A. Suicide Risk Assessment**

All inmates are observed for suicide risk. Suicide risk assessment is critical to successful suicide prevention. Inmate-patients enrolled in the MHSDS shall be regularly monitored for risk of suicide as clinically appropriate. When an inmate expresses current suicidal ideation, or makes threats or attempts, a suicide risk assessment shall be made by collecting, analyzing, and documenting data. Documentation is achieved by utilizing the CDCR standardized Suicide Risk Assessment Checklist (SRAC) and by clinician notation in the unit health record (UHR). When an inmate expresses chronic suicidal ideation without intent or plan, the clinician may document that no change in suicide risk has occurred since completion of the prior SRAC, instead of completing a new SRAC.

**These clinicians shall be trained to perform a suicide risk assessment and complete the SRAC:**

- psychiatrists
- psychologists
- clinical social workers

- primary care physicians
- nurse practitioners
- registered nurses

This shall occur during the specialized training provided for clinical staff who are receiving either the new employee orientation or completing the required annual training module, or when determined necessary by supervisory and/or management staff.

When a primary clinician is scheduled to be available on-site, he or she shall be responsible for completing a SRAC. When a mental health clinician is not available, any other staff member who has been trained by CDCR in suicide risk assessment may complete the SRAC.

**At a minimum, a written SRAC shall be completed:**

- Every time an inmate has an initial face-to-face evaluation for suicidal ideation, gestures, threats, or attempts, by a clinician trained to complete the SRAC.
- By the referring clinician prior to placement of an inmate-patient into an Outpatient Housing Unit (OHU) for continued suicide risk assessment or into a Mental Health Crisis Bed (MHCB) for suicidal ideation, threats, or attempt.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

- After hours, on weekends and holidays, when the referring clinician has not completed an SRAC, by the clinician providing coverage, by the next day, for those inmate-patients placed into an OHU or MHCB.

- By the associated Interdisciplinary Treatment Team (IDTT) and/or clinician for all inmate-patients placed into an OHU, for mental health reasons, or MHCB, for any reason, upon decision to release or discharge.

- Subsequent to release from an OHU placement that was for the purpose of continued suicide risk assessment, or a MHCB placement for the reason of suicidal ideation, threats, or attempts, at a minimum of every ninety (90) days for a twelve month period, by a mental health clinician.

- Within seventy-two (72) hours of return from a Department of Mental Health (DMH) facility, or within 24 hours if clinically indicated based on new arrival screening.

- Any time the medical and mental health screening of a new arrival to an institution indicates a current or significant history, over the past year, of suicide risk factors, ideation, threats, or attempts.

**The clinician shall use the SRAC when documenting a suicide risk assessment, in addition to making a notation in the UHR. At a minimum, the following categories shall be used to assess potential risk:**

1.  Static Risk Factors (unchanging, historical):

    - Ethnicity

    - History of lewd and lascivious acts with a child and/or killed a child

    - History of violence

    - History of substance abuse

    - Suicide ideation and/or threats in past (when and method)

    - Previous suicide attempts (when and method)

    - Family history of suicide

    - History of mental illness with Axis I diagnosis

    - High profile case

2.  Slowly Changing Risk Factors (long-term risk factors):

    - First prison term

    - Long or life sentence; three strikes

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

- History of poor impulse control and/or poor coping skills

- Early in prison term

- Known new court proceedings and/or disciplinary actions

- Current term in ASU, Security Housing Unit, or Psychiatric Services Unit

- Level 4 custody score

- Chronic, serious or terminal illness

3.  <u>Dynamic Risk Factors (short-term risk factors that require ongoing assessment):</u>

- Recent suicidal ideation - acute or chronic
- Recent rejection and/or loss

- Recent release from psychiatric hospital
- Single-cell placement

- Sudden calm following ideation or attempt
- Significant current impulsivity

- Anxious and/or agitated and/or fearful
- Recent suicide attempt or self-injury

- Disturbance of mood (depression or mania)
- Well-planned, highly lethal, attempt or ideation

- Unstable or labile affect
- Hoarding and/or cheeking medication

- Current insomnia and/or poor appetite
- Poor compliance with treatment and/or medication

- Lack of perceived support system
- Recent trauma and/or threat to self-esteem

- Hopelessness and/or helplessness
- Recently assaultive or violent

- Feelings of guilt and/or worthlessness
- Pre-death behavior: note, gives things away

- Fearful for safety
- Disclosure of adverse court hearings

- Anniversary of important loss

4.  <u>Protective Factors:</u>

- Family support
- Adequate insight

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

- Children at home
- Religious support
- Spousal support
- Supportive friends
- Helping others

- Realistic life plan
- Exercises regularly
- Group activities
- Job assignment
- Other noted protective factors

Clinicians shall utilize their best clinical judgment and make a summary of the relative risk for suicide via an appropriate descriptor, such as "No apparent significant risk, Low Risk, Moderate Risk, High Risk, or Conditional Risk" based on a combination of the above factors, an interview of the inmate, and all other relevant information available to them.  Peer consultation is encouraged when information collected for making a suicide risk assessment is ambiguous. The clinician shall then make a recommendation regarding the appropriate level of care required.  They shall document their summary, recommendations, and plan on the SRAC and with appropriate notation in UHR.  Treatment recommendations should be as specific as possible, leaving as little room as possible for misinterpretation or confusion.  A brief rationale for each recommendation shall be provided.  They shall also address how the treatment plan will be implemented and any required follow-up procedures.


Peer Consultation

Peer consultation can be one of the most important clinical and legal safeguards a practitioner has at his or her disposal, especially when dealing with ambiguous cases.

Sources of peer consultation include, but are not limited to:

- Other clinical members of an IDTT
- Other colleagues working at the institution
- Clinical supervisors

When evaluating for suicide risk, peer consultation is not always necessary.  However, in those cases where there is clinical uncertainty about ambiguous issues, it can be of benefit for validating or challenging ideas and assumptions.  Another clinician's opinion may also uncover important additional information.  Peer consultation does not absolve a clinician for any decision that he or she ultimately makes, nor does it require the clinician to change his or her initial opinion.  It is to the clinician's advantage to consult with peers.  It demonstrates that the clinician cared enough about the case to seek another opinion and that he or she utilized prudent and reasonable judgment.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

**B.  Interventions for Suicidal Ideation, Threats, and Attempts**

Any CDCR employee who becomes aware of inmate suicidal ideation, threats, or attempt shall immediately notify a member of the health care staff.  The inmate shall be placed under observation, per local custody operating procedure, until a clinician trained to perform a suicide risk assessment (psychiatrist, psychologist, clinical social worker, primary care physician, nurse practitioner, or registered nurse) conducts a face-to-face evaluation.

Recommendation for placement or admission

Health care staff who assess a patient as a significant suicide risk shall initiate procedures to admit the patient into a MHCB.

A physician, licensed psychologist, or nurse practitioner may place an inmate-patient into an OHU for continued suicide risk assessment.  Custody staff shall inspect the cell to ensure that there are no known or obvious safety hazards present. When an inmate-patient in the OHU is determined to require MHCB level of care, including suicide precautions and/or watch, he or she shall be recommended for admission to that higher level of care.  The established timeframe for MHCB transfers is 24 hours from the time a physician or licensed psychologist determines the need for a MHCB.

Pending transfer out of the OHU direct observation by clinical and/or custody staff shall be provided, consistent with requirements for suicide precautions or watch, until the inmate-patient is transferred.

If there is a difference of opinion, between the clinician who makes the recommendation and the receiving/admitting clinician, regarding admission into a MHCB or placement into an OHU, then

1.  A third opinion and final decision shall be obtained by consultation with a Chief or Senior Psychiatrist, or a Chief or Senior Psychologist.

2.  When a Chief or Senior Psychiatrist, or a Chief or Senior Psychologist is not available, the third opinion and final decision shall be obtained from Chief Medical Officer or Chief Physician and Surgeon.

3.  The default shall be to place the inmate into the MHCB or OHU in the event that there is not a Chief, Senior, or CMO available to supply the third opinion and final decision.

Required Documentation

| Suicide Prevention and Response | Mental Health Services Delivery System |
| --- | --- |

The clinician who recommends an inmate for placement into an OHU for continued suicide risk assessment or into a MHCB for active suicidal ideation, or suicide threats or attempts, shall provide to the accepting clinician both a completed SRAC, the patient's medication administration record (MAR), and a written transfer summary that contains:

- Date and time of referral
- Identifying information: inmate name, CDCR number, date of birth, age, and race
- Current level of care and housing location
- Current diagnosis: all five DSM axes
- Reason for referral: suicidal ideation and/or threat and/or attempt
- History of present illness
- Mental status examination
- Brief psychiatric history including previous OHU, MHCB, or DMH placements
- History of previous suicidal ideation, threats, and/or attempts
- Treatment recommendations
- Contact information for the referring clinician

After hours and on weekends and holidays, the clinician providing coverage shall complete the required documentation by the next day.

Health Care Cost and Utilization Program

As an integral part of the DCHCS, the Health Care Cost and Utilization Program (HCCUP) provides timely and accurate information and analysis of health care service delivery data to assist in the provision of cost effective, quality health care. To facilitate this effort, the clinician who admits an inmate-patient to a MHCB shall record two codes for the diagnosis on the Mental Health Treatment Plan, CDCR Form 7388. One code shall be from the most current edition of the Diagnostic and Statistical Manual (DSM) of Mental Disorders and the other shall to be from the most current edition of the World Health Organization's International Classification of Diseases Code (ICD).

Additional Treatment Options

In addition to inpatient care, the clinician may recommend another type of treatment such as daily or weekly contact by a mental health clinician, intensive individual psychotherapy, resolution of a stressful environmental issue or interpersonal conflict, or other clinically appropriate intervention. Other interventions may be considered such as

Case 2:90-cv-00520-KJM-SCR     Document 1753-10     Filed 02/03/06     Page 14 of 30

| Suicide Prevention and Response | Mental Health Services Delivery System |

notifying a correctional counselor of the inmate-patient's desire or need to contact a family member. Alternative interventions, such as a housing change, may be considered in consultation with custody staff. Clinical and custody staff shall work together to develop an intervention to address the inmate's concerns and reduce the risk of suicide.

Physical Restraints and Seclusion

Physical restraints or placement in seclusion may be utilized to protect an inmate-patient from imminent self-harm, if clinically indicated, and other treatment measures are ineffective. Refer to Program Guide Chapter 5,: Mental Health Crisis Bed, for complete descriptions of procedures. In accordance with Health and Safety Code 1180, a clinical and quality review shall be conducted for each episode of the use of seclusion or restraints.

Inmate and Cell Search

Before placing an inmate-patient in a room for suicide precautions or watch, a custody officer shall conduct a complete body search.

Call-light cords, nightstands, bed frames, and sheets shall be removed, by order of a clinician, from the room unless the inmate is in physical restraints. Only a safety (no-tear) mattress, a safety (no-tear) blanket, and a safety (no-tear) smock/gown shall be provided and placed directly on the floor.

Additional inmate-patient clothing and furnishing items, while on suicide watch or precaution, shall be allowable by a clinician's order.

Custody staff shall conduct a complete cell search before placing an inmate in a cell.

Suicide Precautions and Suicide Watch

When clinically indicated, an inmate with active suicidal ideation, threats, or attempt shall be placed in an MHCB on suicide precautions, suicide watch, or both. These are methods used to provide a safe environment and prevent the inmate from harming him or herself or others. Suicide watch and suicide precaution procedures shall be a joint responsibility of custody and health care staff. A close working relationship shall be maintained between custody and health care staff to ensure the safety and security of the inmate.

The preferred location to place an inmate on suicide precautions or watch is in the MHCB, or in the OHU pending transfer to MHCB. The use of such precautions in any non-medical location shall be a temporary, short-term approach until an inmate can be moved to an OHU or MHCB, and shall require constant observation.

July 2004  (Revised 1/30/06)                                                    12-10-14

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

A psychiatrist, licensed psychologist, physician, or nurse practitioner shall review, modify, and/or renew the order for suicide precautions and/or watch at a minimum of every twenty-four (24) hours with input from at least one other member of the IDTT, such as the registered nurse on duty.

Inmate-patients that are placed in an OHU for continued assessment of suicide risk, or in an MHCB for active suicidal ideation, threats, or attempt, shall have a note regarding progress toward the treatment plan goals and objectives recorded *daily* by a treating clinician in the Interdisciplinary Progress Notes section of the Unit Health Record (UHR).

1.  **Suicide Precautions**

    When an inmate is in an MHCB because of high risk of attempting self-injurious behavior, but is not in immediate danger, he or she shall be placed on suicide precautions.

    These inmate-patient management procedures require an order from a psychiatrist, licensed psychologist, physician or nurse practitioner. Additional details of requirements and procedures are located in Chapter 5: Mental Health Crisis Bed.


    **Guidelines for clinician-ordered suicide precautions:**

| STATUS | CLOTHING | FURNITURE AND OTHER MATERIALS | BEHAVIORAL CHECKS |
|---|---|---|---|
| SAFE CELL STATUS | Safety (no-tear) smock/gown, no ID band on wrist | Remove all furniture. Safety (no-tear) mattress, Safety (not-tear) blanket | Hourly nursing checks |
| PARTIAL ISSUE | Shorts, T-Shirt, Socks | Remove all furniture. Safety (no-tear) mattress, Safety (no-tear) blanket, One book | Hourly nursing checks |
| FULL ISSUE | Shorts, T-Shirt, Socks | Safety (no-tear) mattress or | Hourly nursing checks |

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

|  |  | furniture. Reading and writing materials. Toiletries. |  |
|---|---|---|---|

A clinician, when writing orders, can utilize these guidelines and/or make modifications based on clinical judgment, with documentation of justification. The IDTT shall review all decisions regarding furniture, clothing, and other materials.

**2.** <u>**Suicide Watch**</u>

When an inmate is in an MHCB because of suicide risk *and* is in immediate danger of self-injurious behavior, suicide precautions shall be implemented *and* he or she shall be placed on suicide watch.

These inmate-patient management procedures require an order from a psychiatrist, licensed psychologist, physician or nurse practitioner. Additional details of requirements and procedures are located in Chapter 5: Mental Health Crisis Bed.

| <u>STATUS</u> | CLOTHING | FURNITURE AND OTHER MATERIALS | BEHAVIORAL CHECKS |
|---|---|---|---|
| SUICIDE WATCH | Safety (no-tear) smock/gown, no ID band on wrist | Remove all furniture. Safety (no-tear) mattress, Safety (no-tear) blanket | Continuous observation<br><br>15 minute nursing checks |

An inmate placed on suicide watch shall be placed in an MHCB room where continuous observation by assigned staff can occur. This can be by direct visual observation or by utilizing video camera technology. The clinician ordering suicide watch may order direct one-to-one visual observation.

The assigned observer shall assume a position where continuous direct visual contact of the inmate can be maintained, including when the inmate uses the shower, sink, or toilet.

Suicide watch of more than one inmate by a single assigned observer is permitted as long as either the physical dimensions of the observation area or video camera

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

technology allow for continuous direct visual contact. The employee assigned to monitor direct observation shall be appropriately trained in suicide prevention and response procedures and can be either a custody or health care staff employee such as a nurses assistant or licensed psychiatric technician. Only a custody officer can be assigned to video camera monitoring.

Video Monitoring

The video monitoring system consists of video cameras that are installed in designated rooms and connected to a video monitor system which is located in a nearby monitoring area. The video monitors provide live viewing of each area covered by a video camera. One officer shall be assigned to monitor when six or fewer inmates are on suicide watch. When more than six inmates are on suicide watch, a second officer shall be assigned to assist with monitoring responsibilities. Officers shall be responsible for recording all inmate activity every 15 minutes on a CDCR 114A log for each inmate. The Watch Commander will ensure that all custody staff assigned to the monitoring system are trained and knowledgeable in its use. In the event that the video equipment is nonfunctional, an officer shall be assigned to monitor each inmate with direct visual contact. The physician or mental health clinician ordering suicide watch may order direct, in-person, one-on-one observation of an inmate-patient. When a physician or other mental health clinician orders direct observation, video monitoring may be used as a supplement to, but never a substitute for, direct visual contact.

Observation Documentation

The custody and/or health care staff employee assigned to provide continuous observation shall document such observation every 15 minutes on a log sheet.

Custody shall document behaviors and activities on a CDCR 114A Isolation/Segregation form per custody policy and procedures.

Nursing staff shall document behavioral checks and the inmate-patients' affect as often as is ordered and at least every hour for suicide precautions, and every 15 minutes for suicide watch. Nursing checks shall always include visual observation and, when the inmate-patient is awake, shall also include verbal interaction. Nursing staff shall document using CDCR Form 7212, Nursing Care Record (for non-acute care settings), or CDCR Form 7212A, Nursing Care Record-Acute Hospital (for acute care settings) in the UHR.

Leaving a Post Assignment

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

- The observer assigned to suicide watch shall only vacate the post if immediate attention or assistance is needed in a life-threatening situation, and no other alternative exists.

- A life-threatening situation is defined as a situation in which staff's failure to immediately respond will likely result in serious morbidity or mortality.

- In the event of a life-threatening situation, the officer shall activate a personal alarm in order to summon additional staff to the MHCB area.

- If it becomes necessary for staff assigned to suicide watch to leave their post due to a life-threatening situation, they shall request other staff in the vicinity, whenever possible, to provide direct observation coverage of the inmate-patients while away. If no other staff is available, and there is sufficient time, the officer shall contact the Watch Office before responding to the life-threatening situation.

- Any vacating of the post under these circumstances shall be for the minimal time necessary. Once the life-threatening situation has been contained, or there is sufficient staff at the scene to handle the situation, the officer shall immediately return to the suicide watch post.

- Upon return to post, the officer shall document his or her departure and return on the CDCR 114A. The officer shall also ensure that the staff that covered the post in his or her absence also documents that on the CDCR 114A.

- For the purpose of this procedure, a minimum of one custody officer and one health care professional shall respond to a life-threatening situation involving a general population or reception center inmate.

- For the purpose of this procedure, a minimum of one peace officer and one MTA shall respond to a life-threatening situation involving an ASU inmate. Responding staff shall obtain and wear a protective vest while responding in the ASU areas. The ASU Sergeant shall also be notified as soon as possible.

- Staff will use universal precautions when responding to medical emergencies and utilize Personal Protective Equipment kits, available in the MHCB unit.

Discharge or Return

Inmates sent to a MHCB because of active suicidal ideation, threats, or attempt shall be returned to their housing unit only after the IDTT and/or a clinician has

| Suicide Prevention and Response | Mental Health Services Delivery System |

completed a SRAC and has determined that the inmate-patient is no longer at imminent risk. The inmate-patient shall be placed on the 5-day clinical follow-up treatment plan and custody wellness check procedure as detailed below.

Inmates sent to an OHU for continued suicide risk assessment shall be returned to their housing unit only after the IDTT and/or a clinician has completed a SRAC and has determined that the inmate-patient is not at significant risk. The inmate-patient may, depending on clinical determination, be placed on the 5-day clinical follow-up treatment plan and custody wellness check procedure as detailed below.

<u>MHCB Discharge</u>

- A psychiatrist or licensed psychologist, in consultation with the IDTT, shall write the order to discontinue an inmate-patient from suicide precautions or suicide watch when the inmate is no longer in imminent danger of self-harm. After hours, on weekends and holidays, the Medical Officer of the Day (MOD) or psychiatrist, licensed psychologist, or primary care physician on call may write an order to discontinue suicide precautions or suicide watch.

- A psychiatrist or licensed psychologist shall complete the MHCB discharge summary.

- Before discharge, the IDTT shall develop a detailed and complete follow-up treatment plan, which shall be documented in the inmate's UHR on Physician's Orders, CDCR Form 7221. The plan shall include prescribed housing, medication, type and frequency of outpatient therapy, and an explicit recommendation on 5-day clinical follow-up treatment plan and custody wellness check procedure.

- The primary clinician (PC) or clinical case manager (CCM) (or in their absence, the senior mental health clinician) shall be notified person-to-person of the pending discharge of the inmate-patient and the discharge plan.

- Inmates with multiple MHCB admissions (three or more within a six-month period) shall be evaluated by the IDTT for referral to the Department of Mental Health. The results of this evaluation, decision of the IDTT, and outcome of the referral shall be documented on an Interdisciplinary Progress Note, CDCR Form 7230-MH in the UHR.

- Careful consideration should be given by the IDTT when discharging from an MHCB an inmate-patient who was admitted for reasons of suicidal ideation, threats, or attempt, on a Friday, over the weekend, or the day before a holiday. Inmate-patients will only be released over a weekend if the IDTT has determined such and only after an updated face-to-face evaluation by a mental

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

health clinician. That clinician will establish the 5-day clinical follow-up treatment plan and custody wellness check procedure. The mental status, stability, and risk factors of the inmate-patient should be documented in detail on an Interdisciplinary Progress Note, CDCR Form 7230-MH. A mental health clinician must be available on weekends and holidays, either on duty or on call. **In the event that there is no mental health clinician on call in an institution, no discharges shall be accepted by that institution on, or the day before, a weekend or holiday.**

- A mental health clinician, usually the inmate-patient's PC or CCM, shall provide follow up treatment on an outpatient basis. This shall include daily contact with the inmate in their housing unit for five consecutive days following discharge. A psychiatric technician or other mental health clinician may conduct the contacts on weekends and holidays. The PC or CCM is responsible for ensuring that the contacts occur. The frequency of visits may then be reassessed. Housing unit custody officers and mental health staff shall communicate regarding the inmate-patient's status.

- Custody shall conduct an hourly check of inmate-patients discharged from the MHCB (admitted for suicidal ideations, threats, or attempt) for the first twenty-four (24) hours after discharge. A mental health clinician shall then discuss the inmate-patient's behavior with the custody staff and evaluate the inmate-patient to determine if the custody checks should be continued or discontinued. If the custody checks are continued, the mental health clinician shall determine whether the checks are to be every hour, every two hours, or every four hours for the next 24-48 hours. If after a second evaluation, mental health clinical staff feel additional hourly checks are required, the inmate shall be readmitted to the MHCB for further stabilization. Custody staff shall maintain a log on CDCR Form 114A Isolation/Segregation Record of rounds on inmate-patients.

- The Local SPR FIT shall regularly audit compliance with the 5-day clinical follow-up and custody wellness check procedure. Audit findings shall be forwarded monthly to the Local MHP Subcommittee.

**3. Response to Self-Injurious Behaviors and Suicide Attempts**

- Self-injurious behaviors cause, or are likely to cause, physical self-injury. A suicide attempt is an intentional act that is deliberately designed to end one's own life. Both are medical emergencies that require immediate and appropriate responses.

**In medical emergencies, the primary objective is to preserve life.** All peace officers who respond to a medical emergency are mandated, pursuant to court order, to provide immediate life support, if trained to do so, until medical staff

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

arrives to continue life support measures.  All peace officers must carry a personal Cardiopulmonary Resuscitation (CPR) mouth shield at all times.

Custody Protocol

**The officer must assess and ensure it is reasonably safe to perform life support by effecting the following actions:**

- Sound an alarm (a personal alarm or, if one is not issued, an alarm based on local procedures must be used) to summon necessary personnel and/or additional custody personnel.
- Determine and respond appropriately to any exposed bloodborne pathogens.
- Determine and neutralize any significant security threats to self or others including any circumstances causing harm to the involved inmate.
- Initiate life saving measures consistent with training.

The responding peace officer will be required to articulate the decision made regarding immediate life support and actions taken or not taken, including cases where life support is not initiated consistent with training and/or situations which pose significant threat to the officer or others.

Clinical and Custody Combined Efforts

**A Correctional Peace Officer's initiation of life support does not relieve responding medical personnel of their responsibility to assume life saving efforts upon arrival.  Responding medical personnel shall assume primary responsibility in the provision of medical attention and life saving efforts upon their arrival.  The combined efforts of both custody and medical personnel are expected.  Both custody and medical personnel are responsible to continue life saving efforts in unison as long as necessary.**

---

**Preservation of life shall take priority over preservation of a crime scene.**

---

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Emergency Response

The following first aid procedures shall be implemented when an inmate attempts suicide by hanging, laceration, or other methods:

Hanging

Medical and custodial staff shall be informed of the nature of the emergency by the most expedient method available. The cut-down kit shall be transported immediately by custody staff to the location. Clearing the obstruction to the airway as quickly as possible is critical to saving the life of the inmate who has attempted suicide by hanging. When it appears safe, a minimum of two staff shall enter the area where the inmate is located, relieve pressure on the airway by using a stable object for support of the inmate's body or by physically lifting the inmate's weight off the noose. The inmate shall be cut down by cutting above the knot and then loosening the noose. Custody staff shall preserve any item of evidentiary value.

Once the inmate is cut down, custody staff shall provide immediate life support, if trained to do so, until medical staff arrives to continue life support measures.

Medical staff, upon arrival, shall assume responsibility for medical care, as outlined in the institution's local operating procedures for emergencies, including any decisions regarding initiating or continuing CPR.

If possible, the inmate shall also be transported to a triage and treatment area.

Laceration

General guidelines:

- Use impervious latex gloves and/or appropriate, personal protective equipment
- Utilize whatever clean material is available to apply pressure to the wound site
- Elevate extremities if they are bleeding
- Transport to a triage and treatment area or an emergency room

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Other Methods (overdosing, trauma, swallowing dangerous objects):

- Provide assistance to medical staff and obtain as much information as possible.

- Staff shall perform the Heimlich maneuver if choking is evident.

Cut-down Kit Availability

Each warden shall ensure that cut-down kits:

- Are maintained within each housing unit

- Are inventoried and inspected on a daily basis with problems immediately reported to a supervisor

- Consist of a lockable metal box containing:

    a. One inventory list affixed to the inside of the box door

    b. One emergency cut-down tool

    c. One single-patient-use resuscitator (e.g., AMBU Single-Patient-Use Resuscitator)

    d. One CPR mask (e.g., Lardell CPR Mask, for use by CPR-certified staff only)

    e. Minimum of ten latex gloves

    f. Disposable oral airway

IV. **SUICIDE REPORTING**

All reports of death shall be in accordance with DOM section 51070, Deaths.

If at any point during the review of the case, questions arise regarding any circumstances surrounding or leading up to the suicide that may be attributed to employee misconduct, the MHSR, the Health Care Manager (HCM), or other responsible individuals may request a misconduct investigation. In this event, the MHSR shall immediately consult with the DCHCS SPR FIT Coordinator to determine further action. Requests for further misconduct inquiry and/or investigation shall be referred in accordance with DOM Chapter 3, Article 14, Employee Misconduct Investigations/Inquiries. Even if the matter is referred, all other aspects of the suicide review shall continue.

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Local Institution Responsibilities

- In the case of an inmate suicide death, the watch commander or senior custody officer shall be notified immediately, and shall subsequently notify the Warden, or evenings, weekends and holidays, the Administrative Officer of the Day. Upon notification of a possible death, the senior custody officer or the watch commander shall determine the need to secure the death scene and initiate investigation or other custody measures as indicated in accordance with DOM Section 51070.7.

- The institution's Chief Medical Officer (CMO) or physician designee shall have primary responsibility for reporting the death within eight (8) hours to the DCHCS Death Notification Coordinator (DNC).

- The initial reporting procedures and submission of the CDCR Form 7229 A, Initial Inmate Death Report, shall be completed and submitted in accordance with the procedures set forth in DOM 51070.9, Deaths. The Initial Inmate Suicide Report (Form 7229 B) shall be completed by the Local SPR FIT Coordinator or designee, and shall be reviewed, signed and dated by the HCM/CMO. It shall be submitted to the DNC at Central Office by the close of the second business day following the date of death. This form shall contain relevant information including the method of suicide, mental health level of care, psychiatric diagnoses (if applicable), behavioral problems observed, recent history of suicidal ideations or attempts, medication, and recent stressors.

## V.   SUICIDE DEATH REVIEW

- Within one (1) business day of receipt of the initial data including CDCR Forms 7229 A and B, the DCHCS Death Notification Coordinator (DNC) shall forward the death review folder to the DCHCS SPR FIT Coordinator.

- Within two (2) business days of receipt of the death review folder, the DCHCS SPR FIT Coordinator shall appoint a MHSR from a pool of qualified mental health staff at DCHCS, or regionally from an institution other than where the suicide occurred.

- Within one week, seven (7) calendar days, of being appointed, the MHSR shall begin reviewing the suicide case for compliance with the CDCR SPR FIT policies and procedures. The MHSR shall also review all related documentation including the Unit Health Record; Central File; Inmate Death Reports, CDCR 7229 A and B; Crime/Incident Report, CDCR 837 A and B; and any other appropriate documentation. The MHSR shall have access to the inmate's cell, visiting log, recorded telephone conversations, and other information as required. The institution's SPR FIT Coordinator may assist the MHSR in his or her efforts. The assistance may include making available the Unit Health Record, the Central File,

| Suicide Prevention and Response | Mental Health Services Delivery System |

and any other appropriate information as well as arranging interviews if required. The MHSR may conduct interviews with clinical staff, custody staff, and inmates. However, should there be any indication an employee misconduct investigation may be warranted, the MHSR shall immediately consult with the DCHCS SPR FIT Coordinator, who shall provide guidance in proceeding with the review. Generally, the MHSR shall discontinue interviews with any employees who may be associated with or implicated in the employee misconduct investigation, but shall continue with all other aspects of the suicide review process.

- In cases where there are concerns with clinical care, the case shall be referred to the local Clinical Performance Enhancement and Review Subcommittee (CPER).

- Within thirty (30) calendar days of the inmate suicide, the MHSR shall complete a preliminary Suicide Report containing the following information: Inmate name, CDCR number, age, date and time of discovery, time of death, institution, housing, mental health level of care (if applicable), method, cause of death, findings of coroner (if available), brief summary and preliminary findings including recommendations for quality improvement.  The report shall also indicate whether further investigation/inquiry is recommended (if one has not already been initiated).  This report shall be immediately forwarded to the DCHCS SPR FIT Coordinator who will then schedule discussion of the report at the DCHCS Suicide Case Review (SCR) Subcommittee. The MHSR will present the case to the  SCR Subcommittee.

- The DCHCS SCR Subcommittee is the body that reviews the documentation and reports submitted by the institution and MHSR, determines compliance with the statewide SPR FIT policies and procedures, reviews the quality improvement (a.k.a. corrective action) plans (QIP), and continues its review, in collaboration with the DCHCS MHP Subcommittee, until the QIPs are completed and the cases are closed.

- Within forty-five (45) days from the date of death, the DCHCS ERDR Subcommittee shall complete its review of the preliminary suicide report, review the QIP on the preliminary suicide report, and forward the report to the MHSR for completion of the Suicide Report and the accompanying Executive Summary.

Quality Improvement Plan

When warranted, the MHSR shall recommend a quality improvement (a.k.a. corrective action) plan (QIP), based on the findings from the review of the case, which shall address and make recommendations to improve identified problems with clinical care and compliance with policy and procedure.  The QIP shall address problems identified, recommended actions, due dates for recommended actions, and supporting documents required from the institution.

**Suicide Prevention and Response          Mental Health Services Delivery System**

The DCHCS SCR Subcommittee shall review the QIP and may take the following actions:

- Ensure consistency with policy and procedure

- Recommend remedial action, documentation, and monitoring

- Refer for further action in accordance with DOM Chapter 3, Article 14, Employee Misconduct Investigations/Inquiries, when appropriate. When individual conduct of custody staff requires further investigation, a memorandum shall be forwarded to the Director, Adult Institutions Division, who shall initiate a CDCR form 989 Request for Investigation to the Office of Internal Affairs.

- Prepare a memorandum to refer the case to the DCHCS Professional Practice Executive Committee (PPEC) for review of individual practice of licensed psychologists, psychiatrist, and/or physicians when appropriate. The DCHCS PPEC shall report to the appropriate professional licensing board for investigation, when appropriate

When approved by the DCHCS SCR Subcommittee, the Suicide Report shall be signed by the Director, DCHCS, or designee.

The Suicide Report by the MHSR shall incorporate the QIP approved by the DCHCS SCR Subcommittee. The DCHCS SPR FIT Coordinator shall include with this report the Inmate Death Reports CDCR 7229 A and B, Crime/Incident Report CDCR 837 A and B, Movement History and Offense History, and the Executive Summary serving as the cover page to complete the Final Suicide Report. The report shall then be forwarded to the Director of the CDCR Division of Correctional Health Care Services (DCHCS) and the Director, Division of Adult Institutions (DAI). The report shall be signed by both Directors, and copied to Regional Administrators of DCHCS and DAI; Legal Affairs Division; and to the reporting institutions' Warden; Health Care Manager/Chief Medical Officer; Mental Health Program Manager, Chief/Senior Psychiatrist and Chief/Senior Psychologist; and, other appropriate interested and legally designated persons within 60 days of date of death.

When an investigation is required, the Office of Internal Affairs (OIA) shall track progress until the investigation is complete. The OIA shall forward a memorandum with a summary description of the methods and outcome of the investigation to the DCHCS SPR-FIT Coordinator, who shall forward the results to the *Coleman* special master through DCHCS routing procedures.

| Suicide Prevention and Response | Mental Health Services Delivery System |

For QIP items focused on institutional compliance, the Warden and HCM/CMO are responsible for ensuring the implementation of the QIP within the specified time frame, which is not greater than sixty (60) days of receipt of the finalized Executive Summary of the Suicide Report with signature approval from the Director, DCHCS (120 days following the date of death).  QIP items focused on system-wide policy or training shall be referred to the SPR-FIT at DCHCS.  The SPR-FIT Coordinator shall maintain a master list of QIP problems, corrective action, supporting documentation required, and completion dates.  A proof-of-practice binder shall be maintained by the SPR-FIT coordinator in order to track and record the progress of policy revisions and system-wide training.

The QIP shall be monitored by the Warden, HCM/CMO, Mental Health Program Manager, Chief Psychiatrist, Chief Psychologist, and SPR FIT Coordinator at the institution of occurrence.  DCHCS may require ongoing documentation of compliance.

The Local SPR FIT Coordinator shall prepare a follow up report of implementation addressing action taken on the recommendations of the QIP.  All appropriate supporting documentation confirming that these actions have been taken shall be attached to this report.  See table below for list of suggested supporting documentation.  The Warden and HCM/CMO, or institution Mental Health Program Manager shall sign this report.  The institution shall retain a copy of the report and forward the original to the DCHCS ERDR for review.  The report is due within thirty (30) days following the implementation of the QIP (90 days following receipt of the Executive Suicide Report).  Additional follow up monitoring shall occur as necessary as dictated in the QIP.

**Action, Documentation, & Monitoring for Suicide Quality Improvement Plans**

| ACTION | DOCUMENTATION/MONITORING |
|---|---|
| Training | Copy of training agenda and sign-in sheet |
| Required appointments with clinicians are held | List of appointments from Mental Health Tracking System |
| Changes in operating procedure | Copy of procedure or memos |
| Develop Quality Improvement Team | Copy of recommendations or change in procedures |
| Missing medication due to transfer to a different housing unit | Ongoing monitoring of Medication Administration Records in the Unit Health Record (UHR) Provide sample audit |
| Proper Documentation | Provide plan to audit UHR and a sample audit |
| Five Day Follow-up of suicidal inmates released from MHCB | Audit of documentation in UHR; provide a sample audit |
| Rounds and evaluations done in ASU by | Audit UHR, CDCR 114 Isolation log and |

**Suicide Prevention and Response          Mental Health Services Delivery System**

| ACTION | DOCUMENTATION/MONITORING |
|---|---|
| psychiatric technicians | CDCR 114-A, Daily Log; provide sample audit |
| Inmates on Keyhea are identified | Review UHR |
| Conduct suicide risk assessment | Review UHR |
| Statewide policy issues | Review new policy |
| Investigation of individual practitioners | Provide status or completion date of investigation |
| Audit of records per specified length of time to be sure that quality improvement is being consistently followed | Periodic reports of audit findings to DCHCS SPR FIT and DCHCS MHP |

The DCHCS Suicide Case Review Subcommittee shall continue to review all open suicide cases until the QIP is approved and each case is closed. The QIP shall be incorporated into the final Suicide Report. All decisions made by the DCHCS SPR FIT regarding compliance and quality improvement shall be documented in the final Suicide Report.

The Follow-Up Report on implementation of the QIP shall be reviewed by the DCHCS SPR FIT Coordinator. In cases where the QIP is not sufficiently completed by the institution within the required time frame, the SPR FIT coordinator shall send a memorandum indicating non-compliance to the institution and to the Regional Administrator at DCHCS and DAI. Appropriate follow-up shall be conducted by the Regional Administrator in order to ensure the completion of the QIP item. In cases where a system-wide QIP is not sufficiently completed by the SPR-FIT within the required time frame, a report of progress and any barriers to completion shall be forwarded from the SPR-FIT to the Director of the appropriate CDCR Division. The CDCR Division Director shall take appropriate action to ensure completion of the QIP. When complete, the QIP shall be distributed by the SPR-FIT Coordinator according to legal mandates.

If, during the suicide review process, other death related information arrives, such as CDCR Form 837 C, CDCR Form 7229 C, or Coroner's report, the DNC will locate the death review folder and place these documents inside. The DNC shall update the routing sheet and notify the SPR FIT Coordinator of the new information. Upon completion of the suicide review, the death review folder containing the Suicide Report and other related information shall be returned to the DNC for final data entry. The DNC shall ensure that all documentation is complete and then return the folder for final storage in a designated locked cabinet at DCHCS.

The DCHCS SPR FIT Coordinator appointed to oversee suicide-related activities shall coordinate analysis and review of each suicide, and compile and forward annual suicide

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

statistics to: Secretary, Youth and Adult Correctional Agency; Director, CDCR; Director, DCHCS; Deputy Director, DCHCS; Chief of Clinical Policies and Programs, DCHCS; Institution Wardens; Institution HCM/CMOs; and, other appropriate senior DCHCS staff.

## VI.  MENT AL HEALTH EV ALUATION COMPONENT FOR A RULES VIOLATION REPORT

Per California Code of Regulations, Title 15, Section 3317 "An inmate shall be referred for a mental health evaluation prior to documenting misbehavior on a CDCR Form 115, in any case where the inmate is suspected of self-mutilation or attempted suicide."

Staff are to utilize the Request for Mental Health Services Staff Referral, CDCR Form 128B, General Chrono, when requesting this mental health evaluation.

Subsequent to the mental health evaluation, the mental health clinician's determination will be documented on a CDCR Form 128C.  A copy of this CDCR Form 128C shall be forwarded to the custody staff who requested the mental health evaluation.

In order to preserve an inmate's due process rights, any decision that a suicide attempt was not a genuine one must be supported by the following:

1.  A thorough review of the UHR and Central File

2.  A complete mental health evaluation including a complete history, current mental status examination, and current DSM diagnosis

3.  Appropriate psychological testing to include both objective and projective testing

4.  A detailed summary supporting the conclusion that the suicide attempt was not genuine

5.  The clinician's summary must be approved and co-signed by the institution's Mental Health Program Manager before issuance of a CDCR 115.

If the mental health clinician determines the inmate's actions were an attempt to manipulate staff, the inmate may be charged under CCR Section 3005(a) for the specific act of "Attempted Manipulation of Staff." The specific act of "Attempted Suicide" or "Self Mutilation" is not an appropriate charge for a CDCR Form 115 and shall not be used.  In cases where a self-injurious behavior is found to be intended to manipulate staff, a copy of the completed mental health evaluation shall be sent to the local SPR FIT coordinator and the mental health program director.

If a mental health clinician determines that, the inmate's action was an "actual suicide attempt," or cannot make a clear determination that the inmate's action was an actual suicide attempt, a CDCR Form 115 shall not be written.  In both these instances the

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

behavior and/or the inability of mental health staff to make a clear determination shall be documented by custody staff on a CDCR Form 128B, General Chrono, for inclusion in the inmate's Central File and UHR.