PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' SECOND FURTHER RESPONSE TO PLAINTIFFS' NOTICE OF NONCOMPLIANCE RE: CPR POLICY AND IMPLEMENTATION**<br><br>Hearing:　February 15, 2006<br>Time:　　1:30 p.m.<br>Location:　Courtroom 4<br>　　　　The Honorable Lawrence K. Karlton |

# INTRODUCTION

Plaintiffs respectfully submit this reply to Defendants' Second Further Response to Plaintiffs' Notice of Noncompliance Re: CPR Policy and Implementation ("Defendants' Second Response").

The hearing on Plaintiffs' Notice of Defendants' Failure to Comply with the June 9, 2005 Court Order previously set for hearing on October 27, 2005 and January 5, 2005 was continued through the Court's Order to February 15, 2006 to enable defendants to submit another set of declarations from Wardens system-wide attesting that:

- the institution has trained all of its designated correctional officers who are available to be trained in the amended CPR Policy (October 21, 2005), in the use of the CPR mouth shield and in the performance of CPR;
- the institution has implemented a written procedure for replacing CPR mouth shields that have been used or that have been lost;
- the institution has taken an inventory of the cut-down kits in the institution and determined that there is a cut-down kit in every housing unit. If the warden delegates the inventory to a member of his or her staff, then the warden's declaration shall identify the name of the person who performed the inventory, the date of the inventory, and shall indicated that he or she has personally reviewed and approved the results of the inventory. As part of the inventory, the institution determined that the CPR shield and blood-borne pathogen protection equipment is available in every cut-down kit.

1/4/06 Stipulation and Order, ¶ 2, adopting requirements in ¶ 6. Defendants have submitted additional declarations from Wardens for every institution within CDCR. For the reasons set forth below, the declarations filed with Defendants' Second Response fail to clearly establish all of the requirements of the Court's Order. While defendants should respond to the deficits in the declarations, plaintiffs agree to dismiss the hearing set for February 15, 2006, and will request that the Special Master monitor compliance during the next round of *Coleman* tours.

## I. THE WARDENS' DECLARATIONS FAILED TO IDENTIFY THE PERSON(S) WHO PERFORMED THE INVENTORY OF CUT-DOWN KITS AS REQUIRED BY THE COURT'S ORDER

The January 4, 2006 Order states that: "Defendants shall file a declaration from the Warden of each CDCR institution establishing the elements set forth in paragraph 6 above to assure that the revised CPR policy has been fully implemented and that they have complied with the Court's June 9, 2005 Order no later than January 31, 2006." 1/4/06 Order, ¶ 2, adopting requirements in ¶ 6. Paragraph 6 states that: *"If the warden delegates the inventory to a member of his or her staff, his or her declaration shall identify the name of the person(s) who performed the inventory."*

Nine (9) of the thirty-three (33) Wardens signed declarations that failed to identify by name the individual(s) to whom he or she delegated the responsibility for conducting an inventory of the cut-down kits in the institution. These institutions included Avenal State Prison, California Correctional Center, Correctional Training Facility, Calipatria State Prison, California Men's Colony, California Substance Abuse Treatment Facility and State Prison, San Quentin State Prison, North Kern State Prison, and Kern Valley State Prison. Defendants' Second Response, Ex. 9 (for example, the Declaration of the Warden of San Quentin State Prison indicates that this task was delegated to "designated unit staff"; at Avenal State Prison to "various staff members"; at Kern Valley State Prison it was delegated to "custody staff assigned to each housing unit"; and at North Kern State Prison to "all custody officers assigned in the housing units in each facility"). *Id.*

The Court's Order clearly sets forth the requirements for the Warden's declarations – if the Warden did not conduct the inventory, then the declaration must identify by name the person(s) who performed the inventory. The parties intended to ensure careful oversight by the Wardens of the implementation of all elements of the CPR policy by including in the Warden's declaration the names of the person(s) who performed the task. In order to ensure accountability for this critical implementation element of the CPR policy, defendants must provide this missing information for the nine (9) institutions who failed to identify the staff members who conducted the inventory on behalf of the Wardens.

## II. THE WARDENS' DECLARATIONS NEVER ESTABLISH THAT THERE IS A CUT DOWN KIT IN EVERY HOUSING UNIT AS REQUIRED BY THE COURT ORDER

Paragraph 6 of the Third Stipulation includes a statement that the Warden will attest "that the institution has taken an inventory of the cut-down kits in the institution and **determined that there is a cut-down kit in every housing unit**." Third Stipulation and Order at 6C. (emphasis added) The declarations submitted by each Warden do not establish this. Rather, they state that:

1. I have directed that the CPR mouth shields be placed in every cut down kit and housing unit in my prison.

2. I directed an inventory of each cut down kit in my facility be conducted.

3. The employee(s) conducting the inventory of cut down kits was/were directed to determine that a cut down tool/CPR mouth shield and blood borne pathogens-personal protective equipment were available as part of every cut down kit.

4. The date of the inventory and the name of the employee (if listed).

5. I personally reviewed the inventory conducted by these employees.

Defendants' Second Response, Ex. 9. The only clear statement in the Wardens' Declarations is that the Wardens have directed that a CPR mouth shield be placed in every cut down kit and in every housing unit. The Wardens' Declarations do not confirm that a cut down kit is present in every housing unit. The inventories conducted at the institutions should contain this data and presumably these inventories remain available for inspection. During the next round of *Coleman* tours, the Special Master's team should review these inventories with the staff who prepared them, to confirm that cut down kits, with the appropriate equipment, are available in all housing units.

## III. PROCEDURES FOR ENSURING TRAINING OF RETURNING OFFICERS

Each CDCR institution has been directed to develop a local procedure by February 28, 2006, to ensure that officers who have been on long-term absences from duty will receive training on the amended CPR policy, will be issued and trained in the use of the CPR mouth shield, and will receive their annual CPR training requirement before they will be placed in a post. Defendants' Second Response, Ex. 8. There are approximately 1189 officers who are on

leave that have not yet been trained in the amended CPR policy. Defendants' Second Response, Ex. 9. In addition to these returning officers, the CDCR continues to hire new officers as a result of the severe current custody staffing shortages. These officers will also require training in the October 21, 2005 Amended CPR Policy, the CPR mouth shield, and CPR training before they can be placed in a post unless this training has been implemented into the Academy training. Plaintiffs ask that the local training procedures be monitored during the next round of *Coleman* tours to ensure that returning custody officers and newly hired custody officers are trained in CPR policy and procedures before they are placed in a post.

## CONCLUSION

Defendants have made tremendous progress in their development and implementation of the June 9, 2005 Order requiring that defendants develop and implement a policy that establishes clearly and unequivocally that custody staff provide immediate life support. 6/9/05 Order, ¶ 2.

The Warden's declarations filed with the Defendants' Second Response do not, however, establish the requirements of the Court's January 4, 2006 Order. While defendants should respond to these deficits, plaintiffs are confident that this will occur without the need for a hearing. Given the level of compliance, there is no need for judicial intervention at this time and plaintiffs agree to take the hearing set for February 15, 2006, at 1:30 p.m. off calendar.

Now it is time to carefully monitor implementation of the policy and procedures developed by defendants in response to the June 9, 2005 Order and the subsequent court filings. Plaintiffs request that the Special Master monitor the following issues during the next round of *Coleman* tours to ensure full and appropriate implementation of a CPR Policy: (1) the presence of cut-down kits, with the appropriate inventory, in every housing unit in every CDCR institution; and (2) the local institutions' development of a procedure by February 28, 2006 to ensure that all returning staff (and newly hired staff) receive training in CPR, in the Amended October 21, 2005 CPR Policy and in the use of the micro-shield CPR mask before being placed in a post.

...
...

In addition, plaintiffs ask that during the next round of monitoring, the Special Master evaluate the appropriateness of the Amended CPR Policy itself, by reviewing the 837 Incident Reports for any emergency responses where CPR was not provided to an inmate, as well as through discussions with institutional staff, and review of the suicide records.

Dated: February 6, 2006

Respectfully submitted,

/s/ Jane E. Kahn
_____
Jane E. Kahn
Rosen, Bien & Asaro, LLP
Attorneys for Plaintiffs