IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.

    Plaintiffs,

vs.                        No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

**SPECIAL MASTER'S REPORT ON THE IMPACT OF DEFENDANTS' INCREASES IN DIFFERENTIAL PAY FOR MENTAL HEALTH CLINICIANS IN CALIFORNIA STATE PRISON, CORCORAN**

On March 7, 2005, the court ordered the defendants to submit to the special master within 30 days a plan for the provision of a meaningful schedule of differential pay, known in the California Department of Corrections and Rehabilitation (CDCR) as R&R, for mental health clinicians in a number of institutions with persistently high vacancy rates, including particularly California State Prison, Corcoran (CSP/Corcoran). The order sought to remedy long-standing staffing vacancies among psychiatrists, case managers (i.e., psychologists and psychiatric social workers), recreational therapists, psych techs and all categories of clinical supervisors, which contributed directly to CSP/Corcoran's continuing inability to implement effectively the plans, policies and protocols provisionally approved by the court in 1997 to remedy constitutionally inadequate mental health services.

The defendants' timely response to the order included base salaries, current monthly R&R rates, proposed additional R&R payments and resulting total monthly salary figures for various categories of mental health staff members. The

response also provided an implementation plan with a target goal of July 1, 2005 to implement the newly proposed R&R differential rates, although that target date was hedged about with traditional budgetary and bureaucratic caveats, including "approval of funding, labor relations negotiations, and passage of the Governor's Budget."

The proposed increases in R&R payments provided staff psychiatrists in CSP/Corcoran an additional $800.00 per pay period, amounting to $9,600 annually. That reportedly would bring their annual salaries to $170,172, exclusive of benefits, an increase in their annual base salary of 5.9 percent. R&R enhancements proposed for case managers were smaller. Psychologists working at CSP/Corcoran would be offered $100.00 a month more than they presently earned, representing a raise of 1.6 percent, while psych social workers would receive $225 more that they currently made monthly, an increase of 4.7 percent. The increases brought the annual salaries of clinical psychologists to $75,648.00 and psych social workers to $59,568.00. The size of the scheduled increases for psych social workers (4.7 Percent) and recreational therapists (11.1 percent) was larger than that for psychologists, but CSP/Corcoran has only six allocated psych social worker and four recreational tech positions, compared with 26 allocated psychologist positions. Lastly, clinical management positions at CSP/Corcoran, including those for the chief psychiatrist, three allocated senior/supervisory psychologists and the supervising psych social worker, were all provided with modest R&R increases of $100.00 a month that maintained the slight gap between clinicians and clinician-managers, at least among psychologists and psych social workers. No enhancements were provided for psych techs.

The defendants explained and justified their proposed R&R enhancements with data prepared by the Policy Development Office of the California Department of Personnel Administration (DPA) in April 2005 on comparable pay scales operative in other public and some private environments. DPA's <u>Report on Salaries for Occupations Comparable to Selected State Civil Service Classifications</u> indicated that the proposed increases would raise the salaries of staff psychiatrists in CSP/Corcoran considerably above the minimum salaries paid to staff psychiatrists in the seven California counties polled for the study and higher than the maximum salaries in all but one county. Similarly, the data indicated that the R&R enhancement proposed for clinical psychologists at CSP/Corcoran would marginally increase their existing salary advantage over the minimum salaries paid to staff psychiatrists in all but one of the California counties polled for DPA's comparative analysis.

In early May 2005, the special master reported the defendants' plans for filling vacant mental health positions at CSP/Corcoran to the court. While expressing some uncertainty whether the proposed increases would suffice to lure sufficient numbers of mental health clinicians, the special master noted that CSP/Corcoran's staffing vacancies and recruitment problems were not related solely to salaries. The institution's history of troubled violence, widely broadcast by the media throughout California, was a strong disincentive for clinicians contemplating a career in CDCR's mental health system to apply there. That observation was coupled with a warning that salaries offered to all categories of mental health clinicians at CSP/Corcoran might well have to be substantially higher than those offered in any other institution in CDCR.

Based on nearly a decade of watching the defendants implement other pay increases and enhancements, the special master's May 2005 report also expressed concern over the department's schedule for implementation of the proposed R&R enhancements in CSP/Corcoran, noting that budgetary approval was simply the initial step in a convoluted six-to12-month process for the actual delivery of the promised increases. Hence the report ended with a recommendation that the defendants be required to report to the special master on the status of their recruitment efforts at CSP/Corcoran and the special master, in turn, be directed to assess the defendants' status report and inform the court about the impact of the defendants' revised R&R schedule on the recruitment of clinicians at CSP/Corcoran.

The court adopted that recommendation and on June 9, 2005 ordered the defendants to report on the impact of the enhanced R&R payments on their recruitment efforts by January 1, 2006. The special master was also ordered to report on the defendants' efforts and provide specific recommendations for remedying any unresolved recruitment problems. This report responds to that requirement.

The defendants' status report, filed on January 3, 2006, is attached as Exhibit A. The report confirms that the Department of Personnel Administration (DPA), the California executive agency responsible for authorizing the R&R increase, did not issue "Pay Letter 05-24" to implement the court-mandated increases until September 19, 2005. Without the letter, CDCR could neither pay the R&R enhancements nor advertise their existence to prospective candidates for employment. The pay letter presumably authorized the increases reported by the defendants in their early April 2005 submission,

although nothing in the defendants' January 3, 2006 submission specifically confirms that to be the case, nor does the pay letter itself. See Exhibit B.

The defendants' report makes no attempt to explain why it took DPA over five months from the date of the filing of the proposed schedule of R&R enhancements with the special master on April 7, 2005 and over three months from the issuance of the court's June 9, 2005 order to issue the essential pay letter. Exhibit B appears to be little more than a compilation of boiler plate provisions for enactment of the R&R enhancements and includes just a couple of paragraphs related in the most generic of terms to this particular enhancement.

As a result of the dilatory actions of DPA, CDCR had just three months of data on which to base their status report on the impact of the R&R increments on subsequent recruiting. The department's data, moreover, obscures the impact of the R&R enhancements by comparing vacancy rates for the first six months against the last six months of 2005, even though the enhancements were available during only the latter part of the second six-month period. Further complicating the data was the allocation of 15.7 additional mental health positions to CSP/Corcoran after July 1, 2005. Whatever the failings of the report, the vacancy rate, which stood at 44.5 percent (34.1 vacancies among 76.6 positions) at the end of June, rose to 50.9 percent (47.0 of 92.3 positions) by the end of December. After the July allocation of 15.7 new clinical positions, the institution added just 2.8 actual bodies from July 1 to December 31, 2005. By the end of 2006, the R&R increases appeared to have had no discernible impact on the vacancy rate among clinical positions at CSP/Corcoran.

The defendants reported in January that they intended to evaluate additional methodology to help assess more accurately and analyze more thoroughly the success of the R&R increases. They also promised an update at six months and again at one year to quantify the impact of the R&R efforts, unless otherwise directed by the court.

There has been much discussion of late about the recently enhanced coordination between the executive agencies of State government involved in developing remedies for the various deficiencies of CDCR. Not a trace of that improved coordination is to be found here. DPA simply left CDCR to twist slowly in the wind for three to five months. The defendants have no explanation for the delay; they are obviously embarrassed by it, and urge that it represents a vestige of the past that will not be repeated. They also point to much accelerated procedures for reviewing and hiring medical personnel pursuant to the <u>Plata</u> litigation, which they assert are now equally applicable in <u>Coleman</u>. Also as a result of <u>Plata</u> developments, the department now claims to have access to emergency contracting resources for mental health, as well as medical, vendors. These developments, the defendants aver, augur well for improved future recruitment of clinicians needed for CSP/Corcoran. Perhaps.

The defendants should be given 90 days to reduce the vacancy rate among all categories of mental health personnel in CSP/Corcoran, including psychiatrists, case managers, psych techs, recreational techs and supervisory clinicians, to ten percent or less through the employment of permanent staff and/or contract providers. The failure to meet this deadline should result in a court order directing that all psychiatrists, both staff and supervisory, and all psych techs be paid the same R&R enhancement per pay period

as their peers in Pelican Bay State Prison are currently paid; that all case managers and case manager supervisors be paid a further R&R enhancement of $850.00 per pay period over and above their recently increased enhancements; and recreational technicians receive a further enhancement of $500.00 per pay period over and above their recently established enhancement.

It is now 22 months since the special master found overall mental health staffing in CSP/Corcoran insufficient to meet basic program guide requirements for that facility's large and complex mental health caseload. The defendants should be given 90 days to prove the efficacy of their recent administrative, organizational and personnel changes by providing adequate clinical resources in CSP/Corcoran to fulfill the requirements of the plans, policies and protocols provisionally adopted by the court in mid-1997. Nine years is simply too long to wait.

Respectfully submitted,

/s/ J. Michael Keating, Jr.

J. Michael Keating, Jr.
Special Master

February 15, 2006