IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

           Plaintiffs,             No. CIV S-90-0520 LKK JFM P

     vs.

ARNOLD SCHWARZENEGGER,
et al.,

           Defendants.         <u>ORDER</u>

_____/

       On March 3, 2006, this court ordered defendants to file, by April 17, 2006, a plan for the provision of acute and intermediate inpatient beds for all seriously mentally ill male and female inmates in the California Department of Corrections and Rehabilitation (CDCR) clinically determined to be in need of those levels of inpatient care, and for the provision of mental health crisis beds for all seriously mentally ill male and female inmates in CDCR within 24 hours of a clinical determination that they require that level of care. (Order filed March 3, 2005, at ¶¶ 3, 5.) The court also set a hearing for April 26, 2006 on the adequacy of the plan.

       On April 17, 2006, defendants filed a Statewide Mental Health Bed Plan. On April 21, 2006, plaintiffs filed a series of objections to the plan. The matter came on for hearing on April 26 and 27, 2006, before the undersigned. Michael Bien, Esq., appeared as counsel for plaintiffs. Lisa Tillman, Deputy Attorney General, appeared as counsel for defendants.

At the start of the hearing, the court provided the parties with a series of questions to be addressed.  Thereafter, the court heard sworn testimony from a number of state officials in response to the questions.  The court has carefully considered that testimony, the plan and its supporting documents, and plaintiffs' objections thereto and their supporting evidence.

At issue is the access to necessary and constitutionally adequate levels of care for the most seriously mentally ill inmates in the CDCR, including the availability of sufficient numbers of acute inpatient beds, intermediate inpatient beds, and mental health crisis beds.  In their objections, plaintiffs note that the bed plan submitted to the court in April 2006 was based on population projections that were outdated by the time the plan was filed.  There is no dispute that the population figures on which the April 2006 plan is based are already out of date.[1]  Thus, while the long range plan appears sound in principle, it may require adjustments based on the new population data now available to defendants.  The long range plan will be approved subject to modification based on the new population data.

The special master reports, the record reflects, and defendants admit, that the plan presented to the court in no way adequately responds to the severe shortage of intermediate care facility beds and mental health crisis beds that currently exists in the CDCR.  It is undisputed that the shortage is leaving critically mentally ill inmates languishing in horrific conditions without access to immediately necessary mental health care.  In his testimony, Dr. Peter Farber-Szekrenyi, who was appointed to the position of CDCR's Director of Health Care Services on December 1, 2005, repeatedly referred to the shortage as a "crisis," a description entirely supported by the record before this court.  Dr. Farber-Szekrenyi testified that at present there is a shortage of 75 mental health crisis beds and 125 intermediate inpatient beds.  In the latter

/////

_____

[1]  In addition, defendants do not dispute that the methodology used to project future need for mental health care services, developed in 2002, also needs to be updated.  Douglas McKeever, Project Director for the Mental Health Care Services Division of CDCR, testified that defendants have entered into a contract to update the methodology.

1   category, the most serious shortfall is in beds for inmates who have a Level IV security

2   classification.

3           Over the course of the hearing, and in consultation with the special master, several

4   options emerged that are immediately available to help address both aspects of the crisis.   One

5   requires a short discussion; all will be made an order of this court.

6           At present, there is a unit at California Men's Colony (CMC) presently being used

7   as an outpatient housing unit.  Until approximately one year ago, this unit was a locked

8   observation unit (LOU) and provided 36 beds to inmates in need of a mental health crisis bed

9   level of care. Following a state court decision requiring the CDCR to bring its medical treatment

10  centers into compliance with state law licensing requirements,[2] the locked observation unit was

11  closed and reopened as an outpatient housing unit.  The closure of the locked observation unit,

12  and defendants' failure to replace the beds lost thereby, accounts for a significant portion of the

13  current shortfall in mental health crisis beds.

14          State licensing requirements serve an important function, and the judgments of

15  state courts are ordinarily, based on important concerns of comity and federalism, deferred to by

16  federal courts.  However, "the Supreme Court has stated that otherwise valid state laws or court

17  orders cannot stand in the way of a federal court's remedial scheme if the action is essential to

18  enforce the scheme." Stone v. City and County of San Francisco, 968 F.2d 850, 862 (9th Cir.

19  1992) (quoting, inter alia, North Carolina State Bd. of Educ. v. Swann, 402 U.S. 43, 45, 91 S.Ct.

20  1284, 1286, 28 L.Ed.2d 586 (1971).)  It is essential to provide immediately mental health crisis

21  beds to critically ill inmates in the CDCR.  Reopening of the locked observation unit will remedy

22  expeditiously a substantial amount of the shortage of such beds.  Under present circumstances,

23  state licensing requirements must temporarily give way to measures necessary to remedy the

24

25          [2] Budd, et al. v. Cambra, et al., Case No. 319578, Order Granting Plaintiffs' Motion for
    Summary Judgment and Permanent Injunction, filed August 14, 2002 in the San Francisco
26  County Superior Court.

3

1 Eighth Amendment violations that remain unresolved in this action.  Defendants will therefore be

2 directed to reopen forthwith the locked observation unit at CMC and to use it to provide 36

3 mental health crisis beds to class members until further order of this court.

4        In accordance with the foregoing, and good cause appearing, IT IS HEREBY

5 ORDERED that:

6        1.  The defendants' long term plan for provision of acute and intermediate

7 inpatient care and mental health crisis beds is approved, subject to modification based on current

8 population projections.  Within sixty days from the date of this order defendants shall file an

9 amended long term plan that is based on current population projections and incorporates an

10 updated version of the methodology first adopted in the 2002 Tucker-Alan bed needs

11 projections.

12        2.  The defendants' long term plan for enhanced outpatient beds describes a

13 shortfall of over 1000 such beds in the year 2011 and therefore is not approved.

14        3.  Defendants shall include with the amended long term plan a list of those

15 projects that can be accelerated as well as a list of any statutory, licensing, or staffing barriers to

16 such acceleration and/or to timely opening of the projects described in the amended long term

17 plan.

18        4.  Within forty-five days from the date of this order defendants shall file a plan

19 for interim provision of intermediate inpatient beds and mental health crisis beds.  Defendants

20 shall include with said interim plan, as appropriate, a list of any statutory, licensing, or staffing

21 barriers to implementation of any aspect of said plan.

22        5.  Plaintiffs are granted a period of ten days in which to file and serve a response

23 to the interim plan required by paragraph 3 of this order.

24        6.  Defendants shall maintain thirty-six (36) intermediate inpatient beds at the

25 California Medical Facility (CMF) P-2 unit until further order of court.  In connection therewith,

26 defendants are reminded of their obligations under the heat plan developed pursuant to prior

orders of this court, and defendants are directed to take every mechanical step presently feasible to maintain appropriate temperatures within said unit.

7. Not later than May 30, 2006, defendants shall open thirty-six (36) intermediate inpatient beds at Salinas Valley State Prison (SVSP) that were slated to receive inmates from CMF. Said beds shall be used for Level IV inmates.

8. Defendants shall create an additional thirty-six (36) intermediate inpatient beds at SVSP on the same time schedule and with the same waivers used to create the thirty-six (36) beds referred to in paragraph 7 of this order. Said beds shall also be used for Level IV inmates.

9. Defendants shall forthwith review the list of 123 inmates presently awaiting placement in the intermediate inpatient bed program at SVSP and shall identify all inmates on said list appropriate for placement in the DMH program at Atascadero State Hospital or Coalinga State Hospital. The provisions of the current memorandum of understanding between the CDCR and the California Department of Mental Health (DMH) notwithstanding, said review and identification shall be made by appropriate officials of the CDCR. Thereafter, appropriate officials of both CDCR and DMH shall take all steps necessary to facilitate promptly said placement decisions. Any dispute between CDCR and DMH over the appropriateness of a placement shall be promptly submitted to the special master for decision.

10. Twenty-five (25) intermediate inpatient beds shall be made immediately available at Coalinga State Hospital for appropriate CDCR inmates. Within thirty days thereafter, an additional 25 intermediate inpatient beds shall be made available at Coalinga State Hospital for appropriate CDCR inmates.

11. Within six months from the date of this order, defendants shall file a report on the feasibility and cost of creating thirty (30) intermediate inpatient beds at Coalinga State Hospital beds for Level IV high-custody CDCR inmates. Said report shall be prepared by the CDCR in collaboration with DMH and the California Department of General Services.

/////

1         12.  Defendants shall activate the mental health crisis beds in the correctional

2   treatment centers at Kern Valley State Prison and California State Prison-Sacramento not later

3   than July 1, 2006, or inform the court in writing by that date why said centers are not fully

4   operational.

5         13.  Defendants shall forthwith reopen the locked observation unit at the California

6   Men's Colony (CMC) as a thirty-six (36) bed mental health crisis bed unit on a  temporary

7   emergency basis.  Said mental health crisis beds shall remain in use until further order of this

8   court.

9         14.  Until further order of this court, defendants shall not close any intermediate

10  inpatient bed or mental health crisis bed on the basis of state licensing requirements without

11  approval of the special master.

12  DATED:   May 1, 2006.

13

14                                          /s/Lawrence K. Karlton
                                        LAWRENCE K. KARLTON

15                                          SENIOR JUDGE
                                        UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26