e.  Each State Hospital shall ensure that all psychological assessments of all individuals residing at the State Hospital who were admitted there before the Effective Date hereof shall be reviewed by qualified clinicians with demonstrated current competency in psychological testing and, as indicated, revised to meet the criteria in § D.2.a & d, above.

f.  Each State Hospital shall ensure that all appropriate psychological assessments shall be provided in a timely manner whenever clinically indicated, consistent with generally accepted professional standards of care, including whenever there has been a significant change in condition, a lack of expected improvement resulting from treatment, or an individual's behavior poses a significant barrier to treatment, therapeutic programming, safety to self or others, or school programming, and, in particular:

i.  before an individual's therapeutic and rehabilitation service plan is developed, a psychological assessment of the individual shall be performed that will:

1)  address the nature of the individual's impairments to inform the psychiatric diagnosis; and

2)  provide an accurate evaluation of the individual's psychological functioning

27

1          to inform the therapeutic and

2          rehabilitation service planning process;

3     ii.   if behavioral interventions are indicated, a

4          structural and functional assessment shall be

5          performed, consistent with generally accepted

6          professional standards of care, by a

7          professional having demonstrated competency

8          in positive behavior supports; and

9     iii.  additional psychological assessments shall be

10         performed, as appropriate, where clinical

11         information is otherwise insufficient, and to

12         address unresolved clinical or diagnostic

13         questions, including differential diagnosis,

14         "rule-out," "deferred," "no-diagnosis" and

15         "NOS" diagnoses.

16   g.   For individuals whose primary language is not

17        English, each State Hospital shall endeavor to

18        assess them in their own language; if this is not

19        possible, each State Hospital will develop and

20        implement a plan to meet the individual's

21        assessment needs, including, but not limited to the

22        use of interpreters in the individual's primary

23        language and dialect, if feasible.

24  3.   Nursing Assessments

25   a.   Each State Hospital shall develop standard nursing

26        assessment protocols, consistent with generally

27        accepted professional standards of care.  These

28        protocols shall address, at a minimum:

                              28

     i.    a description of presenting conditions;

    ii.   current prescribed medications;

    iii.  vital signs;

    iv.   allergies;

    v.    pain;

    vi.   use of assistive devices;

    vii.  activities of daily living;

    viii. immediate alerts (e.g., escape risk, physical assault, choking risk, suicidal risk, homicide risk, fall risk, sexual assault, self-injurious behavior, arson, or fire setting); and

    ix.   conditions needing immediate nursing interventions.

b.  Nursing may use a systems model (e.g., Johnson Behavioral System Model) for the nursing evaluation.

c.  Each State Hospital shall ensure that all nurses responsible for performing or reviewing nursing assessments are verifiably competent in performing the assessments for which they are responsible. All nurses who are employed at Metropolitan State Hospital shall have graduated from an approved nursing program, shall have passed the NCLEX-RN and shall have a license to practice in the state of California.

d.  Each State Hospital shall ensure that nursing assessments are undertaken on a timely basis, and in particular, that:

   i.   initial nursing assessments are completed within 24 hours of the individual's admission;

   ii.  Further nursing assessments are completed and integrated into the individual's therapeutic and rehabilitation service plan within 7 days of admission; and

   iii. nursing assessments are reviewed every 14 days during the first 60 days of admission and every 30 days thereafter and updated as appropriate.  The 3rd monthly review shall be a quarterly review and the 12th monthly review shall be the annual review.

4.  Rehabilitation Therapy Assessments

   a.  Each State Hospital shall develop standard rehabilitation therapy assessment protocols, consistent with generally accepted professional standards of care, for satisfying the necessary components of a comprehensive rehabilitation therapy assessment.

   b.  Each State Hospital shall ensure that each individual served shall have a rehabilitation assessment that, consistent with generally accepted professional standards of care:

30

         i.     is accurate and comprehensive as to the individual's functional abilities;

        ii.    identifies the individual's current functional status and the skills and supports needed to facilitate transfer to the next level of care; and

       iii.   identifies the individual's life goals, strengths, and motivation for engaging in wellness activities.

   c.  Each State Hospital shall ensure that all clinicians responsible for performing or reviewing rehabilitation therapy assessments are verifiably competent in performing the assessments for which they are responsible.

   d.  Each State Hospital shall ensure that all rehabilitation therapy assessments of all individuals who were admitted to the State Hospital before the Effective Date hereof shall be reviewed by qualified clinicians and, as indicated, revised to meet the criteria in § D.4.b, above.

5.  Nutrition Assessments

Each State Hospital shall provide nutrition assessments, reassessments, and interventions consistent with generally accepted professional standards of care. A comprehensive nutrition assessment will include the following:

   a.  For new admissions with high risk referral (e.g., type I diabetes mellitus, enteral/parenteral

31

feeding, dysphagia/recent choking episode), or upon request by physician, a comprehensive Admission Nutrition Assessment will be completed within 24 hours of notification to the dietitcian.

b.  For new admissions directly into the medical-surgical unit, a comprehensive Admission Nutrition Assessment will be completed within 3 days of admission.

c.  For new admissions directly into the skilled nursing facility unit, a comprehensive Admission Nutrition Assessment will be completed within 7 days of admission.

d.  For new admissions with identified nutritional triggers from Nursing Admission Assessment or physician's consult (e.g., for severe food allergies, tube feeding, extensive dental problems or dental surgery, NPO/clear liquid diet for more than three days, uncontrolled diarrhea/vomiting more than 24 hours, and MAOI, as clinically indicated), a comprehensive Admission Nutrition Assessment will be completed within 7 days of admission.

e.  For new admissions with therapeutic diet orders for medical reasons, a comprehensive Admission Nutrition Assessment will be completed within 7 days of admission.

f.  For individuals with therapeutic diet orders for medical reason after admission, a comprehensive

32

Admission Nutrition Assessment will be completed within 7 days of the therapeutic diet order but no later than 30 days of admission.

g. For all other individuals, a comprehensive Admission Nutrition Assessment will be completed within 30 days of admission.

h. Acuity level of an individual at nutritional risk will be determined by Nutritional Status Type ("NST") which defines minimum services provided by a registered dietitian.

i. The frequency of a comprehensive Nutrition Assessment Update will be determined by the NST. Updates should include, but not be limited to: subjective data, weight, body-mass index ("BMI"), waist circumference, appropriate weight range, diet order, changes in pertinent medication, changes in pertinent medical/psychiatric problems, changes in nutritional problem(s), progress toward goals/objectives, effectiveness of interventions, changes in goals/plan, recommendations, and follow-up as needed.

j. Every individual will be assessed annually. In addition, individuals will be reassessed when there is a significant change in condition.

6. Social History Assessments

Each State Hospital shall ensure that each individual has a social history evaluation that, consistent with generally accepted professional standards of care:

33

a.  Is, to the extent reasonably possible, accurate, current and comprehensive;

b.  Expressly identifies factual inconsistencies among sources, resolves or attempts to resolve inconsistencies, and explains the rationale for the resolution offered;

c.  Is included in the 7-day integrated assessment and fully documented by the 30th day of an individual's admission; and

d.  Reliably informs the individual's interdisciplinary team about the individual's relevant social factors and educational status.

7.  Court Assessments

a.  Each State Hospital shall develop and implement policies and procedures to ensure an interdisciplinary approach to the development of court submissions for individuals adjudicated "not guilty by reason of insanity" ("NGI") pursuant to Penal Code Section 1026, based on accurate information and individualized risk assessments. The forensic reports should include the following, as clinically indicated:

i.  clinical progress and achievement of stabilization of signs and symptoms of mental illness that were the cause, or contributing factor in the commission of the crime (i.e., instant offense);

34

1       ii.   acts of both verbal and physical aggression
2           and property destruction during the past year
3           of hospitalization and, if relevant, past
4           acts of aggression and dangerous criminal
5           behavior;

6       iii.   understanding of potential for danger and
7           precursors of dangerous/criminal behavior,
8           including instant offense;

9       iv.   acceptance of mental illness and
10          understanding of the need for treatment, both
11          psychosocial and biological, and the need to
12          adhere to treatment;

13      v.   development of relapse prevention plan (i.e.,
14          Personal Wellness Recovery Plan or Wellness
15          Recovery Action Plan) for mental illness
16          symptoms, including the individual's
17          recognition of precursors and warning signs
18          and symptoms and precursors for dangerous
19          acts;

20      vi.   willingness to achieve understanding of
21          substance abuse issues and to develop an
22          effective relapse prevention plan (as defined
23          above);

24      vii.   previous community releases, if the
25          individual has had previous CONREP
26          revocations;

27      viii. social support, financial resources, family
28          conflicts, cultural marginalization, and

history of sexual and emotional abuse, if
applicable; and

   ix.   relevant medical issues, all self-harm
behaviors, risks for self harm and risk of
harm to others, to inform the courts and the
facility where the individual will be housed
after discharge.

b.   Each State Hospital shall develop and implement
policies and procedures to ensure an
interdisciplinary approach to the development of
court submissions for individuals admitted to the
hospital pursuant to Penal Code Section 1370,
"incompetent to stand trial" ("IST"), based on
accurate information and individualized risk
assessments.  Consistent with the right of an
individual accused of a crime to a speedy trial,
the focus of the IST hospitalization shall be the
stabilization of the symptoms of mental illness so
as to enable the individual to understand the legal
proceedings and to assist his or her attorney in
the preparation of the defense.  The forensic
reports should include the following:

   i.   relevant clinical description of initial
presentation, if available, which caused the
individual to be deemed incompetent to stand
trial by the court;

   ii.   clinical description of the individual at the
time of admission to the hospital;

36

iii.    course of hospital stay, describing any progress or lack of progress, response to treatment, current relevant mental status, and reasoning to support the recommendation; and

iv.    all self-harm behaviors and relevant medical issues, to inform the courts and the facility where the individual will be housed after discharge.

c.    Each State Hospital shall establish a Forensic Review Panel ("FRP") to serve as the internal body that reviews and provides oversight of facility practices and procedures regarding the forensic status of all individuals admitted pursuant to Penal Code 1026 and 1370. The FRP shall review and approve all forensic court submissions by the Wellness and Recovery teams and ensure that individuals receive timely and adequate assessments by the teams to evaluate changes in their psychiatric condition, behavior and/or risk factors that may warrant modifications in their forensic status and/or level of restriction. The membership of the FRP shall include the Director of Forensic Psychiatry, Facility Director or designee, Medical Director or designee, Chief of Psychology or designee, Chief of Social Services or designee, Chief of Nursing Services or designee, and Chief of Rehabilitation Services or designee. The Director

37

1          of Forensic Psychiatry shall serve as the chair and

2          shall be a board certified forensic psychiatrist.

3          A quorum shall consist of a minimum of four FRP

4          members or their designees.

5    E.    Discharge Planning and Community Integration

6          Taking into account the limitations of court-imposed

7    confinement, the State shall pursue actively the appropriate

8    discharge of individuals under the State's care at each State

9    Hospital and, subject to legal limitations on the State's control

10   of the placement process, provide services in the most

11   integrated, appropriate setting in which they reasonably can be

12   accommodated, as clinically appropriate, that is consistent with

13   each individual's needs.

14        1.   Each State Hospital shall identify at the 7-day

15             therapeutic and rehabilitation service planning

16             conference, and address at all subsequent planning

17             conferences, the particular considerations for each

18             individual bearing on discharge, including:

19             a.  those factors that likely would foster successful

20                 discharge, including the individual's strengths,

21                 preferences, and personal life goals;

22             b.  the individual's level of psychosocial functioning;

23             c.  any barriers preventing the individual from

24                 transitioning to a more integrated environment,

25                 especially difficulties raised in previously

26                 unsuccessful placements; and

27             d.  the skills and supports necessary to live in the

28                 setting in which the individual will be placed.

38

2.  Each State Hospital shall ensure that, beginning at the time of admission and continuously throughout the individual's stay, the individual is an active participant in the discharge planning process, to the fullest extent possible, given the individual's level of functioning and legal status.

3.  Each State Hospital shall ensure that, consistent with generally accepted professional standards of care, each individual has a professionally developed discharge plan that is integrated within the individual's therapeutic and rehabilitation service plan, that addresses his or her particular discharge considerations, and that includes:

    a.  Measurable interventions regarding these discharge considerations;

    b.  The staff responsible for implementing the interventions; and

    c.  The time frames for completion of the interventions.

4.  Each State Hospital shall provide transition supports and services consistent with generally accepted professional standards of care. In particular, each State Hospital shall ensure that:

    a.  Individuals who have met discharge criteria are discharged expeditiously, subject to the availability of suitable placements; and

    b.  Individuals receive adequate assistance in transitioning to the new setting.

39

5. For all children and adolescents it serves, each State Hospital shall:

   a. Develop and implement policies and protocols that identify individuals with lengths of stay exceeding six months; and

   b. Establish a regular review forum, which includes senior administration staff, to assess the children and adolescents identified in § E.5.a, above, to review their treatment plans, and to create an individualized action plan for each such child or adolescent that addresses the obstacles to successful discharge to the most integrated, appropriate placement as clinically and legally indicated.

F. Specific Therapeutic and Rehabilitation Services

   1. Psychiatric Services

   a. Each State Hospital shall develop and implement policies and procedures to ensure system-wide monitoring of the safety, efficacy, and appropriateness of all psychotropic medication use, consistent with generally accepted professional standards of care. In particular, policies and procedures shall require monitoring of the use of psychotropic medications to ensure that they are:

      i. specifically matched to current, clinically justified diagnoses or clinical symptoms;

ii.     prescribed in therapeutic amounts, as dictated by the needs of the individual served;

iii.   tailored to each individual's symptoms;

iv.    monitored for effectiveness against clearly identified target variables and time frames;

v.     monitored appropriately for side effects;

vi.    modified based on clinical rationales;

vii.   not inhibiting individuals from meaningfully participating in treatment, rehabilitation, or enrichment and educational services as a result of excessive sedation; and

viii. properly documented.

b.   Each State Hospital shall monitor the use of PRN and Stat medications to ensure that these medications are administered in a manner that is clinically justified and are not used as a substitute for appropriate long-term treatment of the individual's condition.

c.   Each State Hospital shall monitor the psychiatric use of benzodiazepines, anticholinergics, and polypharmacy to ensure clinical justification and attention to associated risks.

d.   Each State Hospital shall ensure the monitoring of the metabolic and endocrine risks associated with the use of new generation antipsychotic medications.

41

e.  Each State Hospital shall ensure regular monitoring, using a validated rating instrument (such as AIMS or DISCUS), of tardive dyskinesia ("TD"); a baseline assessment shall be performed for each individual at admission with subsequent monitoring of the individual every 12 months while he/she is receiving antipsychotic medication, and every 3 months if the test is positive, TD is present, or the individual has a history of TD.

f.  Each State Hospital shall ensure timely identification, reporting, data analyses, and follow up remedial action regarding all adverse drug reactions ("ADR").

g.  Each State Hospital shall ensure drug utilization evaluation ("DUE") occurs in accord with established, up-to-date medication guidelines that shall specify indications, contraindications, and screening and monitoring requirements for all psychotropic medications; the guidelines shall be in accord with current professional literature. A verifiably competent psychopharmacology consultant shall approve the guidelines and ensure adherence to the guidelines.

h.  Each State Hospital shall ensure documentation, reporting, data analyses, and follow up remedial action regarding actual and potential medication variances ("MVR") consistent with generally accepted professional standards of care.

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    i.   Each State Hospital shall ensure tracking of individual and group practitioner trends, including data derived from monitoring of the use of PRNs, Stat medications, benzodiazepines, anticholinergics, and polypharmacy, and of ADRs, DUE, and MVR consistent with generally accepted professional standards of care.

    j.   Each State Hospital shall ensure feedback to the practitioner and educational/corrective actions in response to identified trends consistent with generally accepted professional standards of care.

    k.   Each State Hospital shall ensure integration of information derived from ADRs, DUE, MVR, and the Pharmacy & Therapeutics, Therapeutics Review, and Mortality and Morbidity Committees consistent with generally accepted professional standards of care.

    l.   Each State Hospital shall ensure that all physicians and clinicians are verifiably competent, consistent with generally accepted professional standards of care, in appropriate medication management, interdisciplinary team functioning, and the integration of behavioral and pharmacological treatments.

    m.   Each State Hospital shall review and ensure the appropriateness and safety of the medication treatment, consistent with generally accepted professional standards of care, for:

       i.    all individuals prescribed continuous anticholinergic treatment for more than two months;

     ii.    all elderly individuals and individuals with cognitive disorders who are prescribed continuous anticholinergic treatment regardless of duration of treatment;

   iii.    all individuals prescribed benzodiazepines as a scheduled modality for more than two months;

    iv.    all individuals prescribed benzodiazepines with diagnoses of substance abuse or cognitive impairments, regardless of duration of treatment;

      v.    all individuals with a diagnosis or evidencing symptoms of tardive dyskinesia; and

    vi.    all individuals diagnosed with dyslipidemia, and/or obesity, and/or diabetes mellitus who are prescribed new generation antipsychotic medications.

n.    Each State Hospital shall ensure that the medication management of individuals with substance abuse disorders is provided consistent with generally accepted professional standards of care.

o.    Metropolitan State Hospital shall provide a minimum of 16 hours per year of psychopharmacology instruction, through conferences, seminars,

1        lectures and/or videotapes.  Such instruction may
2        be provided either on-site or through attendance at
3        conferences elsewhere.
4   2.   Psychological Services
5        Each State Hospital shall provide adequate and
6   appropriate psychological supports and services that are
7   derived from evidence-based practice or practice-based
8   evidence and are consistent with generally accepted
9   professional standards of care, to individuals who require
10  such services; and:
11       a.   Each State Hospital shall ensure that it has
12            positive behavior support teams (with 1 team for
13            each 300 individuals, consisting of 1 clinical
14            psychologist, 1 registered nurse, 2 psychiatric
15            technicians (1 of whom may be a behavior
16            specialist), and 1 data analyst (who may be a
17            behavior specialist) that have a demonstrated
18            competence, consistent with generally accepted
19            professional standards of care, in the following
20            areas:
21            i.   the development and use of positive behavior
22                 support plans, including methods of
23                 monitoring program interventions and the
24                 effectiveness of the interventions, providing
25                 staff training regarding program
26                 implementation, and, as appropriate, revising
27                 or terminating the program; and
28

                              45

ii.  the development and implementation of a facility-wide behavioral incentive system, referred to as "BY CHOICE," that encompasses self-determination and choice by the individuals served.

b.  Each State Hospital shall ensure that the Chief of Psychology has the clinical and administrative responsibility for the Positive Behavior Support Team and the BY CHOICE incentive program.

c.  Each State Hospital shall ensure that:

i.  behavioral assessments include structural and functional assessments, and, as necessary, functional analysis;

ii.  hypotheses on the maladapative behavior are based on structural and functional assessments;

iii.  there is documentation of previous behavioral interventions and their effects;

iv.  behavioral interventions, which shall include positive behavior support plans, are based on a positive behavior supports model and do not include the use of aversive or punishment contingencies;

v.  behavioral interventions are consistently implemented across all settings, including school settings;

vi.  triggers for instituting individualized behavioral interventions are specified and

46

1       utilized, and that these triggers include

2       excessive use of seclusion, restraint, or

3       psychiatric PRN and Stat medication for

4       behavior control;

5   vii.    positive behavior support teams and team

6       psychologists integrate their therapies with

7       other treatment modalities, including drug

8       therapy;

9   viii.   all positive behavior support plans are

10      specified in the objectives and interventions

11      sections of the individual's WRP;

12  ix.     all positive behavior support plans are

13      updated as indicated by outcome data and

14      reported at least quarterly in the present

15      status section of the case formulation in the

16      individual's WRP;

17  x.      all staff has received competency-based

18      training on implementing the specific

19      behavioral interventions for which they are

20      responsible, and performance improvement

21      measures are in place for monitoring the

22      implementation of such interventions;

23  xi.     all positive behavior support team members

24      shall have as their primary responsibility

25      the provision of behavioral interventions;

26      and

27  xii.    the BY CHOICE point allocation is updated

28      monthly in the individual's WRP.

47

d.  Each State Hospital shall ensure that it has at
    least one developmental and cognitive abilities
    team (consisting of 1 clinical psychologist, 1
    registered nurse, 1 social worker, 1 psychiatric
    technician, and 1 data analyst (who may be a
    behavior specialist)) who have a demonstrated
    competence, consistent with generally accepted
    professional standards of care, in:  assessing
    individuals with cognitive challenges/disorders;
    developing therapeutic interventions (including
    positive behavior supports); advising therapy and
    rehabilitation providers on the implementation of
    interventions at the cognitive level of the
    individuals; and managing discharge processes for
    individuals with developmental disabilities and
    cognitive challenges/disorders.  This team shall
    assume some of the functions of the positive
    behavior support teams if the individuals they
    serve also need positive behavior supports.

e.  Each State Hospital shall develop and implement a
    Behavioral Consultation Committee, chaired by the
    Chief of Psychology, and co-chaired by the Chief of
    Psychiatry, to review the WRP and maladaptive
    behavior(s) of individuals who have not made timely
    progress on positive behavior support plans.  The
    Chief of Psychology is responsible for the
    functions of this committee, together with members

48

of the positive behavior support team (in functions of the committee that relate to individuals under the care of those team members).  The committee membership shall include all clinical discipline heads, including the medical director, as well as the clinical administrator of the facility.

f.   Each State Hospital shall ensure that it has sufficient neuropsychological services for the provision of adequate neuropsychological assessment of individuals with persistent mental illness.

g.   All clinical psychologists with privileges at any State Hospital shall have the authority to write orders for the implementation of positive behavior support plans, consultation for educational or other testing, and behavior plan updates.

3.   Nursing Services

Each State Hospital shall provide adequate and appropriate nursing care and services consistent with generally accepted professional standards of care to individuals who require such services.

a.   Each State Hospital shall develop and implement policies and protocols regarding the administration of medication, including pro re nata ("PRN") and "Stat" medication (i.e., emergency use of psychoactive medication), consistent with generally accepted professional standards of care, to ensure:

i.    safe administration of PRN medications and Stat medications;

49

ii.    documentation of the circumstances requiring
       PRN and Stat administration of medications;
       and

iii.   documentation of the individual's response to
       PRN and Stat medication.

b.  Each State Hospital shall ensure that all failures
    to properly sign the Medication and Treatment
    Record ("MTR") or the controlled medication log are
    treated as medication variances, and that
    appropriate follow-up occurs to prevent recurrence
    of such variances.

c.  Each State Hospital shall ensure that all nursing
    interventions are fully integrated into the
    therapeutic and rehabilitation service plan and
    that nursing interventions are written in a manner
    aligned with the rest of the interventions in the
    therapeutic and rehabilitation service plan, in
    particular, in observable, behavioral, and/or
    measurable terms.  No nursing care plans other than
    the nursing interventions integrated in the
    therapeutic and rehabilitation service plan are
    required.  No nursing diagnoses other than as
    specified in the therapeutic and rehabilitation
    service plan, in terms of the current DSM criteria,
    are required.

d.  All nursing staff working with an individual shall
    be familiar with the goals, objectives, and
    interventions for that individual.

50

e.  Each State Hospital shall ensure that nursing staff timely monitor, document and report the status of symptoms, target variables, health, and mental health status of individuals in a manner that enables interdisciplinary teams to assess each individual's status and respond to interventions, and to modify, as appropriate, individuals' therapeutic and rehabilitation service plans.  Each State Hospital shall ensure that all nursing shift changes include a review of changes in status of individuals on the unit.

f.  Each State Hospital shall develop and implement a system to monitor nursing staff while administering medication to ensure that:

   i.   nursing staff are knowledgeable regarding each individual's prescribed medications;

   ii.  education is provided to individuals during medication administration;

   iii. nursing staff are following the appropriate medication administration protocol; and

   iv.  medication administration is documented in accordance with the appropriate medication administration protocol.

g.  Each State Hospital shall ensure that individuals remain in a "bed-bound" status only for clinically justified reasons.

h.  Each State Hospital shall ensure that, before they work directly with individuals, all nursing and

51

psychiatric technicians have successfully completed
competency-based training regarding:

    i.    mental health diagnoses, related symptoms,
psychotropic medications and their side
effects, monitoring of symptoms and target
variables, and documenting and reporting of
the individual's status;

    ii.    the provision of a therapeutic milieu on the
units and proactive, positive interventions
to prevent and de-escalate crises; and

    iii.  positive behavior support principles.

i. Each State Hospital shall ensure that, prior to
assuming their duties and on a regular basis
thereafter, all staff responsible for the
administration of medication have successfully
completed competency-based training on the
completion of the MTR and the controlled medication
log.

4. Rehabilitation Therapy Services

Each State Hospital shall provide adequate,
appropriate, and timely rehabilitation therapy services to
each individual in need of such services, consistent with
generally accepted professional standards of care.

a. Each State Hospital shall develop and implement
policies and procedures, consistent with generally
accepted professional standards of care, related to
the provision of rehabilitation therapy services
that address, at a minimum:

i.    the provision of direct services by rehabilitation therapy services staff; and

ii.   the oversight by rehabilitation therapists of individualized physical therapy programs implemented by nursing staff.

b.  Each State Hospital shall provide competency-based training to nursing staff, as appropriate, on the use and care of adaptive equipment, transferring, and positioning, as well as the need to promote individuals' independence.

c.  Each State Hospital shall ensure that individuals are provided with timely and adequate rehabilitation therapy services.

d.  Each State Hospital, consistent with generally accepted professional standards of care, shall ensure that each individual who requires adaptive equipment is provided with equipment that meets his/her assessed needs and promotes his/her independence, and shall provide individuals with training and support to use such equipment.

5.  Nutrition Services

Each State Hospital shall provide the individuals it serves, particularly those experiencing weight-related problems, adequate and appropriate dietary services consistent with generally accepted professional standards of care.

53

a. Each State Hospital shall modify policies and procedures to require that the therapeutic and rehabilitation service plans of individuals who experience weight problems and/or related health concerns include adequate strategies and methodologies to address the identified problems and that such strategies and methodologies are implemented in a timely manner, monitored appropriately, and revised, as warranted, consistent with generally accepted professional standards of care.

b. Each State Hospital shall ensure that one or more treatment team members demonstrate competence in the dietary and nutritional issues affecting the individuals they serve and the development and implementation of strategies and methodologies to address such issues.

c. Each State Hospital shall develop and implement policies and procedures to address the needs of individuals who are at risk for aspiration or dysphagia, including but not limited to, the development and implementation of assessments and interventions for mealtimes and other activities involving swallowing.

d. Each State Hospital shall ensure that staff with responsibilities for assessments and interventions regarding aspiration and dysphagia have

54

1    successfully completed competency-based training

2    commensurate with their responsibilities.

3    e.  Each State Hospital shall develop and implement

4    policies and procedures requiring treatment of the

5    underlying causes for tube feeding placement, and

6    ongoing assessment of the individuals for whom

7    these treatment options are utilized, to determine

8    the feasibility of returning them to oral intake

9    status.

10    6.  Pharmacy Services

11    Each State Hospital shall provide adequate and

12    appropriate pharmacy services consistent with generally

13    accepted professional standards of care.  Each State

14    Hospital shall develop and implement policies and procedures

15    that require:

16    a.  Upon the prescription of a new medication,

17    pharmacists to conduct reviews of each individual's

18    medication regimen and, as appropriate, make

19    recommendations to the prescribing physician about

20    possible drug-to-drug interactions, side effects,

21    and needs for laboratory work and testing; and

22    b.  Physicians to consider pharmacists'

23    recommendations, and for any recommendations not

24    followed, document in the individual's medical

25    record an adequate clinical justification.

26    7.  General Medical Services

27    a.  Each State Hospital shall provide adequate,

28    appropriate, and timely preventive, routine,

55

1  specialized, and emergency medical care to all

2  individuals in need of such services, consistent

3  with generally accepted professional standards of

4  care.  Each State Hospital shall ensure that

5  individuals with medical problems are promptly

6  identified, assessed, diagnosed, treated, monitored

7  and, as monitoring indicates is necessary,

8  reassessed, diagnosed, and treated, consistent with

9  generally accepted professional standards of care.

10  b.  Each State Hospital shall develop and implement

11  protocols and procedures, consistent with generally

12  accepted professional standards of care, that:

13  i.  require the timely provision of initial and

14  ongoing assessments relating to medical care,

15  including but not limited to, vision care,

16  dental care, and laboratory and consultation

17  services;

18  ii.  require the timely provision of medical care,

19  including but not limited to, vision care,

20  dental care, and laboratory and consultation

21  services; timely and appropriate

22  communication between nursing staff and

23  physicians regarding changes in an

24  individual's physical status; and the

25  integration of each individual's mental

26  health and medical care;

27  iii.  define the duties and responsibilities of

28  primary care (non-psychiatric) physicians;

56

iv.    ensure a system of after-hours coverage by primary care physicians with formal psychiatric training (i.e., privileging and proctorship) and psychiatric backup support after hours; and

v.    endeavor to obtain, on a consistent and timely basis, an individual's medical records after the individual is treated in another medical facility.

c.    Each State Hospital shall ensure that physicians monitor each individual's health status indicators in accordance with generally accepted professional standards of care, and, whenever appropriate, modify their therapeutic and rehabilitation service plans to address any problematic changes in health status indicators.

d.    Each State Hospital shall monitor, on a continuous basis, outcome indicators to identify trends and patterns in individuals' health status, assess the performance of medical systems, and provide corrective follow-up measures to improve outcomes.

8.    Infection Control

Each State Hospital shall develop and implement infection control policies and procedures to prevent the spread of infections or communicable diseases, consistent with generally accepted professional standards of care.

a.    Each State Hospital shall establish an effective infection control program that:

57

     i.     actively collects data regarding infections and communicable diseases;

     ii.    assesses these data for trends;

     iii.   initiates inquiries regarding problematic trends;

     iv.    identifies necessary corrective action;

     v.     monitors to ensure that appropriate remedies are achieved; and

     vi.    integrates this information into the State Hospital's quality assurance review.

9.   Dental Services

Each State Hospital shall provide individuals with adequate, appropriate and timely routine and emergency dental care and treatment, consistent with generally accepted professional standards of care.

    a.  Each State Hospital shall retain or contract with an adequate number of qualified dentists to provide timely and appropriate dental care and treatment to all individuals it serves;

    b.  Each State Hospital shall develop and implement policies and procedures that require:

     i.     comprehensive and timely provision of dental services;

     ii.    documentation of dental services, including but not limited to, findings, descriptions of any treatment provided, and the plans of care;

        iii.   use of preventive and restorative care whenever possible; and

        iv.   tooth extractions be used as a treatment of last resort, which, when performed, shall be justified in a manner subject to clinical review.

c.   Each State Hospital shall ensure that dentists demonstrate, in a documented fashion, an accurate understanding of individuals' physical health, medications, allergies, and current dental status and complaints.

d.   Each State Hospital shall ensure that transportation and staffing issues do not preclude individuals from attending dental appointments, and individuals' refusals are addressed to facilitate compliance.

e.   Each State Hospital shall ensure that interdisciplinary teams review, assess, and develop strategies to overcome individuals' refusals to participate in dental appointments.

10.   Special Education

Each State Hospital shall provide the school-age and other residents, as required by law, who qualify for special education ("students"), individualized educational programs that are reasonably calculated to enable these students to receive educational benefits, as defined by applicable law.

a.   Each State Hospital shall develop and implement uniform systems for assessing students' individual

59

educational needs and monitoring their individual

progress.

b.  Each State Hospital shall ensure that all

Individual Education Plans ("IEPs") are developed

and implemented consistent with the Individuals

with Disabilities Education Act, 20 U.S.C. § 1400

et seq. (2002) ("IDEA").

c.  Each State Hospital shall ensure that teachers

providing instruction to students at the State

Hospital have completed competency-based training

regarding teaching and academic instruction,

behavioral interventions, monitoring of academic

and behavioral progress, and incident management

and reporting.

d.  Each State Hospital shall ensure that students

receive instruction and behavioral supports

appropriate to their learning abilities and needs,

consistent with generally accepted professional

standards of care.

e.  Each State Hospital shall provide appropriate

literacy instruction, consistent with generally

accepted professional standards of care, for

students who show deficits in one or more common

areas of reading (e.g., decoding or comprehending).

f.  Each State Hospital shall, on admission and as

statutorily required thereafter, assess each

student's capacity to participate, with appropriate

supports and services, in an integrated, non-

1          institutional, education environment, and provide

2          access to an integrated education environment for

3          those students who can participate in one with

4          appropriate supports and services.  Each State

5          Hospital shall ensure that all students receive

6          their education in the least restrictive setting

7          pursuant to the requirements of the IDEA,

8          consistent with their legal and clinical status.

9 G.    Documentation

10     Each State Hospital shall ensure that an individual's

11 records accurately reflect the individual's response to all

12 treatment, rehabilitation and enrichment activities identified in

13 the individual's therapeutic and rehabilitation service plan,

14 including for children and adolescents, their education plan,

15 consistent with generally accepted professional standards of

16 care.  Each State Hospital shall develop and implement policies

17 and procedures setting forth clear standards regarding the

18 content and timeliness of progress notes, transfer notes, school

19 progress notes, and discharge notes, including, but not limited

20 to, an expectation that such records include meaningful,

21 accurate, and coherent assessments of the individual's progress

22 relating to treatment plans and treatment goals, and that

23 clinically relevant information remains readily accessible.

24 H.    Restraints, Seclusion, and PRN and Stat Medications

25     Each State Hospital shall ensure that restraints, seclusion,

26 psychiatric PRN medications, and Stat medications are used

27 consistent with generally accepted professional standards of

28 care.

1. Each State Hospital shall revise, as appropriate, and implement policies and procedures regarding the use of seclusion, restraints, psychiatric PRN medications, and Stat medications consistent with generally accepted professional standards of care. In particular, the policies and procedures shall expressly prohibit the use of prone restraints, prone containment and prone transportation and shall list the types of restraints that are acceptable for use.

2. Each State Hospital shall ensure that restraints and seclusion:

   a. Are used in a documented manner and only when individuals pose an imminent danger to self or others and after a hierarchy of less restrictive measures has been considered in a clinically justifiable manner or exhausted;

   b. Are not used in the absence of, or as an alternative to, active treatment, as punishment, or for the convenience of staff;

   c. Are not used as part of a behavioral intervention; and

   d. Are terminated as soon as the individual is no longer an imminent danger to self or others.

3. Each State Hospital shall comply with 42 C.F.R. § 483.360(f), requiring assessments by a physician or licensed clinical professional of any individual placed in seclusion or restraints within 1 hour. Each State Hospital shall also ensure that any individual placed

62

1    in seclusion or restraints is continuously monitored by

2    a staff person who has successfully completed

3    competency-based training on the administration of

4    seclusion and restraints.

5    4.    Each State Hospital shall ensure the accuracy of data

6         regarding the use of restraints, seclusion, psychiatric

7         PRN medications, or Stat medications.

8    5.    Each State Hospital shall revise, as appropriate, and

9         implement policies and procedures to require the review

10        within 3 business days of individuals' therapeutic and

11        rehabilitation service plans for any individuals placed

12        in seclusion or restraints more than 3 times in any

13        4-week period, and modification of therapeutic and

14        rehabilitation service plans, as appropriate.

15   6.    Each State Hospital shall develop and implement

16        policies and procedures consistent with generally

17        accepted professional standards of care governing the

18        use of psychiatric PRN medication and Stat medication,

19        requiring that:

20        a.   Such medications are used in a manner that is

21             clinically justified and are not used as a

22             substitute for adequate treatment of the underlying

23             cause of the individual's distress; and

24        b.   PRN medications, other than for analgesia, are

25             prescribed for specified and individualized

26             behaviors;

27        c.   PRN medications are appropriately time-limited;

28

63

d. Nursing staff assess the individual within 1 hour of the administration of the psychiatric PRN medication and Stat medication and documents the individual's response; and A psychiatrist conducts a face-to-face assessment of the individual within 24 hours of the administration of a Stat medication. The assessment shall address the reason for the Stat administration, the individual's response, and, as appropriate, appropriateness of adjustment to current treatment and/or diagnosis.

7. Each State Hospital shall ensure that all staff whose responsibilities include the implementation or assessment of seclusion, restraints, psychiatric PRN medications, or Stat medications successfully complete competency-based training regarding implementation of all such policies and the use of less restrictive interventions.

8. Each State Hospital shall:

a. Develop and implement a plan to reduce the use of side rails as restraints in a systematic and gradual way to ensure individuals' safety; and

b. Ensure that, as to individuals who need side rails, their therapeutic and rehabilitation service plans expressly address the use of side rails, including identification of the medical symptoms that warrant the use of side rails, methods to address the underlying causes of such medical symptoms, and

64

1    strategies to reduce the use of side rails, if

2    appropriate.

3  I.    Protection From Harm

4      Each State Hospital shall provide the individuals it serves

5  with a safe and humane environment and ensure that these

6  individuals are protected from harm.

7      1.    Incident Management

8        Each State Hospital shall develop and implement across

9    all settings, including school settings, an integrated

10   incident management system that is consistent with generally

11   accepted professional standards of care.

12       a.    Each State Hospital shall review, revise, as

13           appropriate, and implement incident management

14           policies, procedures and practices that are

15           consistent with generally accepted professional

16           standards of care.  Such policies, procedures and

17           practices shall require:

18           i.    that the State Hospital not tolerate abuse or

19                neglect of individuals and that staff are

20                required to report abuse or neglect of

21                individuals;

22           ii.    identification of the categories and

23                definitions of incidents to be reported and

24                investigated; immediate reporting by staff to

25                supervisory personnel and the State

26                Hospital's executive director (or that

27                official's designee) of serious incidents,

28

65

including but not limited to, death, abuse, neglect, and serious injury, using standardized reporting across all settings, including school settings;

iii.    mechanisms to ensure that when serious incidents such as allegations of abuse, neglect, and/or serious injury occur, staff take immediate and appropriate action to protect the individuals involved, including removing alleged perpetrators from direct contact with the involved individuals pending the outcome of the facility's investigation;

iv.    adequate competency-based training for all staff on recognizing and reporting potential signs and symptoms of abuse or neglect, including the precursors that may lead to abuse;

v.    notification of all staff when commencing employment and adequate training thereafter of their obligation to report abuse or neglect to the State Hospital and state officials.  All staff persons who are mandatory reporters of abuse or neglect shall sign a statement that shall be kept with their personnel records evidencing their recognition of their reporting obligations. Each State Hospital shall not tolerate any

66

1                  mandatory reporter's failure to report abuse

2                  or neglect;

3       vi.    mechanisms to inform individuals and their

4                  conservators how to identify and report

5                  suspected abuse or neglect;

6       vii.   posting in each living unit and day program

7                  site a brief and easily understood statement

8                  of individuals' rights, including information

9                  about how to pursue such rights and how to

10                 report violations of such rights;

11     viii. procedures for referring, as appropriate,

12                 allegations of abuse or neglect to law

13                 enforcement; and

14      ix.    mechanisms to ensure that any staff person,

15                 individual, family member or visitor who in

16                 good faith reports an allegation of abuse or

17                 neglect is not subject to retaliatory action,

18                 including but not limited to reprimands,

19                 discipline, harassment, threats or censure,

20                 except for appropriate counseling, reprimands

21                 or discipline because of an employee's

22                 failure to report an incident in an

23                 appropriate or timely manner.

24   b.  Each State Hospital shall review, revise, as

25       appropriate, and implement policies and procedures

26       to ensure the timely and thorough performance of

27       investigations, consistent with generally accepted

28       professional standards of care.  Such policies and

procedures shall:

    i.    require investigations of all deaths, as well as allegations of abuse, neglect, serious injury, and theft. The investigations shall be conducted by qualified investigators who have no reporting obligations to the program or elements of the facility associated with the allegation and have expertise in conducting investigations and working with persons with mental disorders;

    ii.    ensure that only the State Hospital staff who have successfully completed competency-based training on the conduct of investigations be allowed to conduct investigations of allegations of petty theft and all other unusual incidents;

    iii.    for investigations required by paragraph I.1.b.i, above, provide for the safeguarding of evidence; and

    iv.    for investigations required by paragraph I.1.b.i, above, require the development and implementation of standardized procedures and protocols for the conduct of investigations that are consistent with generally accepted professional standards. Such procedures and protocols shall require that:

1        1)  investigations commence within 24 hours

2            or sooner, if necessary, of the incident

3            being reported;

4        2)  investigations be completed within 30

5            business days of the incident being

6            reported, except that investigations

7            where material evidence is unavailable to

8            the investigator, despite best efforts,

9            may be completed within 5 business days

10          of its availability;

11      3)  each investigation result in a written

12          report, including a summary of the

13          investigation, findings and, as

14          appropriate, recommendations for

15          corrective action.  The report's contents

16          shall be sufficient to provide a clear

17          basis for its conclusion.  The report

18          shall set forth explicitly and

19          separately:

20        (i)    each allegation of wrongdoing

21             investigated;

22        (ii)  the names of all witnesses;

23        (iii) the names of all alleged victims

24             and perpetrators;

25        (iv)  the names of all persons

26             interviewed during the

27             investigation;

28        (v)   a summary of each interview;

      (vi)    a list of all documents reviewed during the investigation;

      (vii)   sources of evidence considered, including previous investigations and their results, involving the alleged victim(s) and perpetrator(s);

      (viii)  the investigator's findings, including findings related to the substantiation of the allegations as well as findings about staff's adherence to programmatic requirements; and

      (ix)    the investigator's reasons for his/her conclusions, including a summary indicating how potentially conflicting evidence was reconciled; and

4)  staff supervising investigations review the written report, together with any other relevant documentation, to ensure that the investigation is thorough and complete and that the report is accurate, complete, and coherent. Any deficiencies or areas of further inquiry in the investigation and/or report shall be addressed promptly. As necessary, staff responsible for investigations shall be

70

1          provided with additional training and/or

2          technical assistance to ensure the

3          completion of investigations and

4          investigation reports consistent with

5          generally accepted professional standards

6          of care.

7     c.   Each State Hospital shall ensure that whenever

8          disciplinary or programmatic action is necessary to

9          correct a situation or prevent reoccurrence, each

10         State Hospital shall implement such action promptly

11         and thoroughly, and track and document such actions

12         and the corresponding outcomes.

13    d.   Each State Hospital shall have a system to allow

14         the tracking and trending of investigation results.

15         Trends shall be tracked by at least the following

16         categories:

17         i.    type of incident;

18         ii.   staff involved and staff present;

19         iii.  individuals directly and indirectly involved;

20         iv.   location of incident;

21         v.    date and time of incident;

22         vi.   cause(s) of incident; and

23         vii.  outcome of investigation.

24    e.   Each State Hospital shall ensure that before

25         permitting a staff person to work directly with any

26         individual, the State Hospital shall investigate

27         the criminal history and other relevant background

28         factors of that staff person, whether full-time or

71

1    part-time, temporary or permanent, or a person who

2    volunteers on a regular basis.  Facility staff

3    shall directly supervise volunteers for whom an

4    investigation has not been completed when they are

5    working directly with individuals living at the

6    facility.  The facility shall ensure that a staff

7    person or volunteer may not interact with

8    individuals at the State Hospital in instances

9    where the investigation indicates that the staff

10   person or volunteer may pose a risk of harm to such

11   individuals.

12   2.    Performance Improvement

13        Each State Hospital shall develop, revise as

14   appropriate, and implement performance improvement

15   mechanisms that enable it to comply fully with this Plan, to

16   detect timely and adequately problems with the provision of

17   protections, treatment, rehabilitation, services and

18   supports, and to ensure that appropriate corrective steps

19   are implemented.  Each State Hospital shall establish a risk

20   management process to improve the identification of

21   individuals at risk and the provision of timely

22   interventions and other corrective actions commensurate with

23   the level of risk.  The performance improvement mechanisms

24   shall be consistent with generally accepted professional

25   standards of care and shall include:

26        a.   Mechanisms for the proper and timely identification

27             of high-risk situations of an immediate nature as

28             well as long-term systemic problems.  These

72

mechanisms shall include, but not be limited to:

   i.   data collection tools and centralized databases to capture and provide information on various categories of high-risk situations;

   ii.   establishment of triggers and thresholds that address different levels of risk, as set forth in Appendix A of this Plan; and

   iii.   identification of systemic trends and patterns of high risk situations;

b.  Mechanisms for timely interventions and other corrective actions by teams and disciplines to prevent or minimize risk of harm to individuals. These mechanisms shall include, but not be limited to:

   i.   a hierarchy of interventions by clinical teams that correspond to triggers and thresholds;

   ii.   timely corrective actions by teams and/or disciplines to address systemic trends and patterns;

   iii.   formalized systems for the notification of teams and needed disciplines to support appropriate interventions and other corrective actions;

   iv.   formalized systems for feedback from teams and disciplines to the standards compliance department regarding completed actions; and

73