v.      monitoring and oversight systems to support timely implementation of interventions and corrective actions and appropriate follow up; and

  c. Utilize, on an ongoing basis, appropriate performance improvement mechanisms to assess and address the facility's compliance with its identified service goals.

3. Environmental Conditions

Each State Hospital shall develop and implement a system to review regularly all units and areas of the hospital to which individuals being served have access to identify any potential environmental safety hazards and to develop and implement a plan to remedy any identified issues, consistent with generally accepted professional standards of care. Such a system shall require that:

  a. Potential suicide hazards are identified and prioritized for systematic corrective action, and that such action is implemented on a priority basis as promptly as feasible;

  b. All areas of the hospital that are occupied by individuals being served have adequate temperature control and deviations shall be promptly corrected;

  c. Each State Hospital reviews, revises, as appropriate, and implements procedures and practices so that individuals who are incontinent are assisted to change in a timely manner;

74

    d.   Each State Hospital thoroughly reviews and revises, as appropriate, its policy and practice regarding sexual contact among individuals served at the hospital. Each State Hospital shall establish clear guidelines regarding staff response to reports of sexual contact and monitor staff response to incidents. Each State Hospital documents comprehensively therapeutic interventions in the individual's charts in response to instances of sexual contact;

    e.   Each State Hospital develops and implements clear guidelines stating the circumstances under which it is appropriate to utilize staff who are not trained to provide mental health services in addressing incidents involving individuals. Each State Hospital ensures that persons who are likely to intervene in incidents are properly trained to work with individuals with mental health concerns; and

    f.   Metropolitan State Hospital will institute roving patrols of treatment units, except for the skilled nursing facility, by Hospital Police Officers on a schedule and frequency to be determined by the hospital administration.

J.   First Amendment and Due Process

Each State Hospital unconditionally permits individuals to exercise their constitutional rights of free speech, including the right to petition the government for redress of grievances without state monitoring and provides them due process.

ENHANCEMENT PLAN - APPENDIX A

| Trigger | Thresholds |
|---|---|
| Aggressive Act to Self | 1.1 Any aggression to self resulting in major injury*<br>1.2 2 or more aggressive acts to self in 7 consecutive days<br>1.3 4 or more aggressive acts to self in 30 consecutive days |
| Aggressive Act to Others | 2.1 Any peer-to-peer aggression resulting in major injury<br>2.2 Any aggression to staff resulting in major injury<br>2.3 2 or more aggressive acts to others in 7 consecutive days<br>2.4 4 or more aggressive acts to others in 30 |
| Alleged Abuse/Neglect/Exploitation | 3.1 Any alleged abuse/neglect/exploitation if minor** or major injury |

| | | |
|---|---|---|
| Body Weight | 4.1 | Body Mass Index (BMI) of 18.5 or less (underweight) |
| | 4.2 | Body Mass Index (BMI) between 25 and 29.9 (overweight) |
| | 4.3 | Body Mass Index (BMI) between 30 and 34.9 (Obesity-Grade I) |
| | 4.4 | Body Mass Index (BMI) between 35 and 39.9 (Obesity-Grade II) |
| | 4.5 | Body Mass Index (BMI) 40 or above (Obesity-Grade III) |
| | 4.6 | Weight Change ± 5% in 1 month |
| | 4.7 | Weight Change ± 7.5% in 3 months |
| | 4.8 | Weight Change ± 10% in 6 months |
| | 4.9 | Waist Circumference over 35" for females or over 40" for males |
| Combined Pharmacotherapy | 5.1 | More than 2 intra-class psychotropic medications for psychiatric reasons |
| | 5.2 | More than 3 inter-class psychotropic medications for psychiatric reasons |

| | | |
|---|---|---|
| Escape/AWOL | 6.1 | Any escape attempt/unauthorized absence within facility |
| | 6.2 | Any escape attempt/unauthorized absence outside of facility |
| Falls | 7.1 | Any fall resulting in major injury |
| | 7.2 | Three or more falls in 30 consecutive days |
| Illicit Substances | 8.1 | Any incident of an individual testing positive for illicit substance (street drug) use |
| Medication Variance (Error) | 9.1 | Any medication error that results in major injury or exacerbation of a disease or disorder (i.e., prescribing, transcribing, ordering/procurement, dispensing/storage, administration, and documentation) |

| | | |
|---|---|---|
| Mortality | 10.1 | Expected deaths |
| | 10.2 | Unexpected deaths |
| Non-Adherence to Wellness and Recovery Plan (WRP) | 11.1 | Non-adherence to WRP for more than 20% of the interventions in 7 consecutive days (Note: For children and adolescents: include non-attendance at school for more than 20% of the time in 7 consecutive days) |
| One-to-One Observations | 12.1 | 1:1 for psychiatric/behavioral reasons over 24 hours in 7 consecutive days |
| | 12.2 | Any 2:1 for psychiatric/behavioral reasons |
| PRN Medications | 13.1 | 2 PRNs in 24 hours (for psychiatric/behavioral reasons) |
| | 13.2 | 3 PRNs in 7 consecutive days |
| | 13.3 | 15 PRNs in 30 consecutive days |

| | |
|---|---|
| Restraint | 14.1 Restraint for more than 4 hours for adults (Note: more than 4 hours for adolescents and 2 hours for children) <br> 14.2 More than 3 episodes of restraint in 7 consecutive days <br> 14.3 More than 5 episodes of restraint in 30 consecutive days |
| Seclusion | 15.1 Seclusion for more than 4 hours for adults (Note: more than 4 hours for adolescents and 2 hours for children) <br> 15.2 More than 3 episodes of seclusion in 7 consecutive days <br> 15.3 More than 5 episodes of seclusion in 30 consecutive days |
| Stat Medications | 16.1 2 Stat medications in 24 hours <br> 16.2 3 Stat medications in 7 consecutive days <br> 16.3 15 Stat med in 30 consecutive days |

| | |
|---|---|
| Suicide Attempt | 17.1 Any suicide attempt |
| | 17.2 Any suicide threat or ideations |

\* A major injury is an injury that requires treatment of more than basic first aid by medical personnel or any injury resulting from alleged or suspected abuse or any injury judged to have potential for serious harm.

\*\* A minor injury is any injury, other than an injury caused by alleged or suspected abuse, that requires no treatment or only minor first aid and for which the potential for serious harm is judged to have been remote.

# PART II

## ENFORCEMENT

A. Selection of Monitor

Mohamed El-Sabaawi, M.D. shall be appointed as the expert to monitor the State's implementation of this Agreement (the "Monitor"). The Monitor shall have full authority to assess, review, and report independently on the Defendants' implementation of and compliance with the provisions of the Agreement. No Party, nor any employee or agent of any Party, shall have any supervisory authority over the Monitor's activities, reports, findings, or recommendations. In the event that Dr. El-Sabaawi is unable to serve or continue serving as the Monitor, or in the event that the Parties for any reason agree to discontinue the use of Dr. El-Sabaawi, the Parties shall meet or otherwise confer within thirty (30) days of being notified of the incapacity or the decision to discontinue use of Dr. El-Sabaawi to select a new Monitor. If the Parties are unable to agree upon a selection, each Party shall submit two names, along with resumes or curricula vitae and cost proposals, to the Court and the Court shall appoint the Monitor from among the names submitted. The procedure described in this paragraph shall apply to all successor Monitors. The Parties agree that the Monitor may use consultants to assist the Monitor. Any such consultants shall be paid for time, services, and expenses pursuant to the Monitor's existing budget. In collaboration with the Monitor, the Parties shall meet or otherwise confer whenever necessary to agree upon which particular consultant(s) the Monitor shall use to assist the Monitor in his duties as Monitor.

B.   Budget of the Monitor

   The Parties and the Monitor have agreed upon the annual budget for the Monitor's work.

C.   Reimbursement and Payment Provisions

   1.   The cost of the Monitor, including the cost of any consultant to assist the Monitor, shall be borne by the State in this action. All reasonable expenses incurred by the Monitor or any consultant, in the course of the performance of the duties of the Monitor, pursuant to the budget of the Monitor, shall be reimbursed by the State. The United States will bear its own expenses in this matter.

   2.   The Monitor shall submit monthly invoices to the Defendants, with a copy to the United States, detailing all expenses the Monitor incurred during the prior month. These invoices shall include daily records of time spent and expenses incurred, and shall include copies of any supporting documentation, including receipts. The Defendants agrees to pay each month's invoice in full from the Monitor within thirty (30) days of receipt of the monthly invoice from the Monitor. If the Defendants dispute all or part of the invoice, the Defendants shall notify in writing the Monitor and the United States within ten days of receipt of the Monitor's monthly invoice. The Monitor, the Defendants and the United States will endeavor to resolve any invoice disputes promptly and in good faith. Where the Monitor and the Parties are unable to

resolve any invoice dispute, the Monitor and/or the Parties may petition the Court to resolve the dispute.

D. Responsibilities and Powers of the Monitor

1. The overall duties of the Monitor shall be to observe, review, report findings, and make recommendations, where appropriate, with regard to the implementation of the foregoing Enhancement Plan at the State Hospitals. The Monitor shall regularly review the therapeutic and rehabilitation services provided to individuals to determine the Defendants' implementation of and compliance with this Consent Judgment. During the Monitor's review, the Monitor shall have full and complete access to all of the State Hospitals' buildings and facilities, staff, patients, patient records, documentation, and information relating to the issues addressed in this Consent Judgment. The State Hospitals' Executive Directors shall direct all employees to cooperate fully with the Monitor. The Monitor shall be permitted to initiate and receive ex parte communications with the Parties. The Monitor shall devote such time as is necessary to fulfill the purposes of the duties and responsibilities of the Monitor pursuant to this Consent Judgment.

2. The Monitor shall consult with the Parties and shall submit a written plan with regard to the methodologies to be used by the Monitor to assess the Defendants' compliance with and implementation of the Consent Judgment. The Monitor's evaluation shall include:

84

      regular on-site inspection of the State Hospitals' facilities and programs for patients, interviews with administrators, professional and other staff, contractors, and patients, and detailed review of pertinent documents and patient records. The Parties envision that the Monitor may provide specific recommendations to the Defendants with regard to steps to be taken to come into compliance with the Consent Judgment. However, the Defendants retain the discretion to achieve compliance by any legal means available to them, and may choose to utilize methods other than those that may be proposed by the Monitor or the United States. The Monitor shall not be empowered to direct the Defendants to take, or to refrain from taking, any specific action to achieve compliance with the Consent Judgment. The Parties do not intend for the Monitor to have the role of a "Special Master." The Agreement is the product of two governmental agencies exercising their expertise.

3. In any instance in which either party disagrees as to compliance, the Court shall give appropriate deference to the Monitor's assessment of compliance.

4. The Parties envision that the United States and the Monitor shall conduct a "baseline" evaluation of the Defendants' compliance with the terms of this Consent Judgment at the State Hospitals within the first 180 days after the filing of this Consent Judgment. This initial baseline evaluation is intended to inform the

|   |   |
|---|---|
| 1 | Parties and the Monitor of the status of compliance |
| 2 | with this Enhancement Plan. The Monitor shall produce |
| 3 | a written report to the Parties with regard to the |
| 4 | State's compliance with particular provisions of the |
| 5 | Consent Judgment as soon as possible, but at least |
| 6 | within 60 days of each visit. |

5. Following the baseline tour, the Monitor shall conduct subsequent tours of each State Hospital at least semi-annually, upon reasonable notice to the State Hospital, in order to fulfill his or her obligations pursuant to this Consent Judgment. In connection with the baseline tours, the Parties and the Monitor shall attempt to agree upon a schedule of subsequent tours and reports for the upcoming year, to be repeated annually thereafter.

6. The Monitor shall provide the Parties with a written report as soon as possible, but at least within 60 days of each tour and shall detail with as much specificity as possible how the State is or is not in compliance with particular provisions of the Consent Judgment. Drafts of the Monitor's reports shall be provided to the Parties for comment at least ten (10) business days prior to issuance of the reports. Upon the achievement of eighteen (18) months of substantial compliance with any substantive paragraph(s) of this Agreement, no further reporting shall be required on that paragraph.

   7. The Defendants shall notify the Monitor immediately upon the death of any current State Hospital patient, including any person who died following transfer due to medical condition from a State Hospital to another medical facility. The Defendants shall forward to the Monitor copies of any completed incident reports related to deaths, autopsies and/or death summaries of residents, as well as all final reports of investigations that involve State Hospital patients. The Defendants shall also notify the Monitor immediately if they receive a citation or threat to de-certify a State Hospital from the Centers for Medicaid and Medicare Services.

E. The United States' Access to Information and the State Hospitals

   1. The United States shall have full access to, and shall, upon request, receive copies of any documents, records, databases, and information relating to the implementation of this Consent Judgment. The Defendants shall provide any requested documents, records, databases, and information to the United States as soon as possible, but no later than within thirty (30) business days of the request, or within a time frame negotiated by the parties if the volume of requested material is too great to reasonably produce within thirty days. The United States, upon reasonable notice, shall have full access to all of the State Hospitals' buildings and facilities, staff, patients,

```
                    patients' records, documentation, and information
                    relating to the issues addressed in this Consent
                    Judgment. The State Hospitals' Executive Directors
                    shall direct all employees to cooperate fully with the
                    United States. The United States may receive and
                    respond to unsolicited calls or contacts from State
                    personnel outside the presence of State
                    representatives.
```

## PART III

### MODIFICATION OF TERMS

A.  If the Parties reach a subsequent agreement that varies from the Plan, the new agreement shall be reduced to writing, signed, and filed with the Court for approval.

## PART IV

### COMPLIANCE AND TERMINATION

A.  The purpose of this Consent Judgment is that the Defendants will be able to achieve desired outcomes for and provide the necessary protections, supports, and services to the individuals served by the State Hospitals. All of the terms of the Plan set forth in Part I hereof shall be implemented at the State Hospitals within 36 months of the Enhancement Plan's effective date, except that § I.3 of the Plan and all provisions of the Plan having to do with suicide prevention measures shall be implemented at the State Hospitals upon the effective date of this Consent Judgment. This Consent Judgment will be terminated and the case dismissed five (5) years after the effective date of the Consent Judgment. This Consent Judgment may terminate at an earlier date if the Parties agree that the Defendants are in

substantial compliance with each provision of the Consent Judgment, and the State has maintained compliance for at least eighteen (18) months ("maintained sustained compliance"). If Defendants and the Monitor contend that the Defendants have maintained sustained compliance and the United States disagrees, Defendants may move this Court for an order terminating this Consent Judgment. In any instance in which the parties disagree as to compliance, the Court shall give appropriate deference to the Monitor's assessment of compliance. Noncompliance with mere technicalities, or temporary failure to comply during a period of otherwise sustained compliance shall not constitute failure to maintain substantial compliance. At the same time, temporary compliance during a period of sustained noncompliance shall not constitute substantial compliance.

B.   At all times, the State shall comply with applicable federal and state licensing requirements.

C.   If the United States maintains that the Defendants have failed to carry out any requirement of this Consent Judgment, the United States shall notify the Defendants with specificity of any instance(s) in which it maintains that the Defendants have failed to carry out the requirements of this Consent Judgment.

D.   With the exception of conditions or practices that pose an immediate and serious threat to the life, health, or safety of individuals served by the State Hospitals, the Defendants shall have thirty (30) days from the date of a deficiency notice from the United States to cure the claim of noncompliance. During this period, the Parties shall coordinate and shall discuss areas of disagreement and attempt to resolve outstanding differences.

E. Unless specified to the contrary elsewhere herein, in any compliance or other adversarial hearing prior to final dismissal of this action, the burden of proof will be on the Party moving the Court.

F. All provisions of this Consent Judgment shall have ongoing effect until the final dismissal of this action. The Court shall retain jurisdiction for all purposes until such time as this action dismissed. Independent of the foregoing, if the United States and the Defendants agree that the State Hospitals have achieved substantial compliance with each section of this Consent Judgment, the Parties shall file a joint motion to dismiss this action.

G. This case shall be treated administratively as inactive. However, the Court retains jurisdiction to enforce the terms of this Order.

DATED:   This _____ day of _____, 2006.

_____
UNITED STATES DISTRICT JUDGE

APPROVED AS TO FORM AND CONTENT:

_[signature]_
WAN J. KIM
Assistant Attorney General

_[signature]_
SHANETTA Y. CUTLAR
Chief, Special Litigation Section

_[signature]_
BENJAMIN O. ZAYLOE, JR.
LEE R. SELTMAN
MARY R. BOHAN
WILLIAM G. MADDOX
JACQUELINE CUNCANNAN
MATTHEW J. DONNELLY
ANITA C. SNYDER
Trial Attorneys
United States Department of Justice
Civil Rights Division

_[signature]_  (PAK *)
DEBRA W. YANG
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
GARY L. PLESSMAN
Assistant United States Attorney
Chief, Civil Fraud Section
HOWARD DANIELS (CA Bar No. 081764)
Assistant United States Attorney
        300 North Los Angeles Street
        Federal Building, Room 7516
        Los Angeles, CA 90012
        (213) 894-4024

* by AUSA final version
(per telephone authorization)

91

1
2  */s/ Kimberly Belshé*
   KIMBERLY BELSHÉ
3  Secretary, State of California
   Health and Human Services Agency
4  State of California
   Health and Human Services Agency
5  1600 Ninth Street, Room 460
   Sacramento, CA 95814
6
7  */s/ Frank S. Furtek*
8
   FRANK S. FURTEK
9  Chief Counsel, State of California
   Health and Human Services Agency
10 1600 9th Street, Room 460
   Sacramento, CA 95814
11
12 */s/ Stephen W. Mayberg*
13
14 STEPHEN W. MAYBERG
   Director, California Department
15 Of Mental Health
   California Department of Mental Health
16 1600 9th Street
   Sacramento, CA 95814
17
18 */s/ Cynthia Rodriguez*
19
   CYNTHIA RODRIGUEZ
20 Chief Counsel, California Department of Mental Health
   Office of Legal Services
21 California Department of Mental Health
   1600 9th Street, Room 153
22 Sacramento, CA 95814
23
24
25
26
27
28