BILL LOCKYER
Attorney General of the State of California
JAMES M. HUMES
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
　1300 I Street, Suite 125
　P.O. Box 944255
　Sacramento, CA 94244-2550
　Telephone: (916) 327-7872
　Fax: (916) 324-5205

Attorneys for Defendants and Stephen Mayberg,
Director of Department of Mental Health
CF1997CS0003

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>　　　　　　　　　　Defendants. | CASE NO. 2:90-cv-0520 LKK JFM P<br><br>**RESPONSE TO OSC RE: JOINDER OF STEPHEN MAYBERG, DIRECTOR OF DEPARTMENT OF MENTAL HEALTH, AS A DEFENDANT** |

**I.**

**INTRODUCTION**

Stephen Mayberg, Director of the California Department of Mental Health (DMH), hereby responds to this Court's Order to Show Cause as to why he should not be joined as a defendant in this action.[1]  Director Mayberg respectfully requests this Court to consider the

---

1. The Order to Show Cause does not specify whether Director Mayberg would be named in his personal or official capacity.  Given this action for injunctive and declaratory relief was filed

RESP. TO OSC RE: MAYBERG AS DEF.

1

history of and continued commitment of DMH to the remedial actions in this case. This action initially identified officers of the California Department of Corrections and Rehabilitation (CDCR) on the basis of CDCR's statutory and constitutional responsibility to provide mental health care to inmates. In contrast, DMH has stood in the status of a contractor of such services to CDCR. Further, DMH's statutory mission is to serve a designated population of persons placed in the state hospital by civil and judicial commitments. Director Mayberg respectfully requests this Court permit DMH to fulfill its statutory responsibilities to civilly-committed individuals while supporting CDCR's statutory responsibility to provide care to CDCR inmates.

## II.

## LEGAL STANDARD

A court may order injunctive relief to establish a constitutionally compliant mental health care system. *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (1995), citing *Balla v. Idaho State Board of Corrections*, 595 F. Supp. 1558, 1577 (D. Idaho 1984). However, the Prison Litigation Reform Act requires any such relief to be "narrowly drawn" and to be "the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626 (a)(1)(A). Indeed, the federal court's jurisdiction is limited to providing "no more than" the relief necessary to correct the underlying violation. *Hallett v. Morgan*, 296 F.3d 732, 743-44 (9th Cir. 2002). Such remedial planning is an "efficacious way to both 'cure [ ] . . . constitutional deficiencies and minimize intrusion into prison management." *Coleman*, 912 F. Supp. at 1304-05, quoting *Madrid v. Gomez*, 889 F. Supp. 1146, 1280 (N.D. Cal. 1995).

///

///

///

---

against certain officers of the California Department of Corrections and Rehabilitation in their official capacity, this brief assumes the Order to Show Cause addressed naming Director Mayberg only in his official capacity.

RESP. TO OSC RE: MAYBERG AS DEF.

2

## III.

## LEGAL ARGUMENT

**A. THERE IS NO NEED TO NAME MAYBERG AS A DEFENDANT IN THIS CASE IN LIGHT OF DMH'S COMMITMENT TO CONTINUED COOPERATION WITH CDCR TO PROVIDE MENTAL HEALTH CARE.**

Director Mayberg is aware of this Court's broad discretion to add a defendant to an action, even after the entry of judgment, to ensure remedial conduct is undertaken. Fed. R. Civ. P. 21; *DuShane v. Conlisk*, 583 F.2d 965 (1978). The exercise of such discretion is rendered unnecessary where the remedial conduct has been and continues to be undertaken.

The remedial actions in *Coleman* began with an acknowledgment of DMH's integral role in providing inpatient mental health care services to CDCR inmates. (Order, 5/20/98.) In 1998, CDCR and DMH anticipated a decline in the need for DMH-provided inpatient services and so proposed an intermediate bed plan consisting of care at California Medical Facility, Vacaville (CMF), Atascadero State Hospital (ASH) and Salinas Valley State Prison (SVSP). (*Id.*) In the ensuing years, these facilities remain the bulwark of intermediate care provided by DMH to CDCR inmates. The anticipated decrease in the need for intermediate beds and decreased DMH participation in the *Coleman* remedial plan has not occurred. (*See* Def. Bed Plan, 4/17/06.) Rather, DMH has increased its participation in the remedial plan with the rise in need for inpatient services for CDCR inmates. (*Id.*)

DMH has continued to provide and, indeed, has expanded inpatient services for CDCR inmates within the confines of CDCR facilities. DMH has operated the successful Day Treatment Program (DTP) at CMF since its inception. In partnership with CDCR, the DTP program at CMF was expanded in January 2005 and the Intermediate Care Program at CMF will undergo additional expansion in the coming months. (Order, 1/05; Order, 5/2/06; Def. Bed Plan, 8/05; Def. Bed Plan, 4/17/06.) Likewise, DMH has staffed and managed the inpatient psychiatric program at SVSP since its activation. This psychiatric program, too, is undergoing expansion to meet the inpatient needs of CDCR inmates. (*See*, Def. Bed Plan, 8/05; Def. Bed Plan, 4/17/06; Order, 5/2/06.)

///

RESP. TO OSC RE: MAYBERG AS DEF.

1    DMH has not only provided the staff necessary to run inpatient mental health care
2 programs within state prisons, it has also provided beds within state hospitals to care for CDCR
3 inmates. DMH has consistently contracted with CDCR to provide mental health care for CDCR
4 inmates at ASH. More recently, DMH committed to providing 175 beds to CDCR for the
5 inpatient needs of CDCR inmates. (*See* Def. Bed Plan, 4/17/06.) DMH acknowledges both
6 staffing and security issues have impeded this commitment, but is confident that the commitment
7 will be met. Significantly, DMH has been an active stakeholder in developing court-mandated
8 plans to provide needed intermediate and acute inpatient DMH care to CDCR inmates. (*See* Def.
9 Bed Plan, 8/05; Def. Bed Plan, 4/17/06.)

10    DMH has worked with CDCR to optimize utilization of these state hospital beds and
11 services. Joint training has been provided with CDCR and DMH on the referral process for
12 inpatient care provided by DMH. (*See* Def. Bed Plan, 4/17/06, at 7.) Weekly teleconferences are
13 held with CDCR and DMH staff, termed the Coordinated Clinical Assessment Team, to discuss
14 referral issues specific to particular inmates. (*See* Def. Resp. to Draft 15th Round Monitoring
15 Report.) Interagency agreements and memoranda of understanding have been adjusted to
16 address referral issues. (*See* Def. Weekly Report, 3/17/06 at 2; Def. Bed Plan, 4/17/06, Encl. IV,
17 V.)

18    The active participation of DMH in providing inpatient services, in the form of both
19 clinical staff for care within CDCR facilities as well as mental health care beds within DMH
20 facilities, to CDCR inmates makes it unnecessary to name Director Mayberg as a defendant.
21 DMH recognizes the urgent nature of the inpatient needs of CDCR inmates and remains
22 committed to working with this Court to meet those needs.

23 **B.    AS A CONTRACTOR OF MENTAL HEALTH SERVICES FOR CDCR INMATES, DMH FUNCTIONS IN A SUPPORT ROLE.**
24

25    DMH provides inpatient mental health services for CDCR inmates under a set of
26 contracts or interagency agreements. These contracts put DMH in essentially a support role to
27 provide staff and beds for the inpatient mental health care needs of CDCR inmates. DMH is thus
28 in a subordinate position to the authority of CDCR as the purchaser of the service. Given this

RESP. TO OSC RE: MAYBERG AS DEF.
4

subordinate or support role, Director Mayberg need not be named as a party.

The support role of DMH or, conversely, the role of CDCR as the employing party of a contractor, is evident in the Court's own orders. The Court has properly expected CDCR to act as the employer of the resources provided by DMH under contract. The apparent lack of CDCR control over the actual performance of the DMH contract has led to a series of court orders to impose such control. In response to the lack of centralized oversight of the referral process, this Court ordered CDCR to manage and monitor the admissions process for all DMH inpatient programs. (Order, 7/9/04.) CDCR was ordered to train its clinicians on DMH inpatient program resources and the criteria and procedures for referral and admission. (Order, 7/25/03; Order, 7/27/04.) CDCR's apparent failure to obtain and utilize necessary inpatient beds resulted in this Court ordering CDCR to conduct an assessment of any unmet need for DMH inpatient beds among seriously mentally disordered inmates in CDCR and to create a plan to meet the need. (Order, 10/5/04.) CDCR has complied with these orders by engaging the assistance of DMH, with actions ranging from joint training sessions to joint preparation of reports and plans. The Court's own orders show that CDCR manages the resources provided by contract with DMH. Therefore, Director Mayberg respectfully submits that there is no need to name him or any other official of the Department of Mental Health as a defendant.

**C.  BECAUSE THE STATUTORY RESPONSIBILITY FOR PROVIDING CARE TO CDCR INMATES LIES WITH CDCR, DIRECTOR MAYBERG OF DMH IS NOT PROPERLY NAMED AS A DEFENDANT.**

Under state law, CDCR is responsible for providing mental health care to its inmates. California Penal Code section 5054 states, "The supervision, management and control of the State prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the director." The import of this statute is reflected in the defendants originally named in this action: Secretary of Youth and Corrections Agency, the Director of California Department of Corrections, and the Chief of Psychiatric Services. Each of the named defendants have a statutory responsibility to provide mental health care to CDCR inmates. Conversely, the Director of DMH was dismissed from *Gates* upon the

RESP. TO OSC RE: MAYBERG AS DEF.

5

merger of *Gates* into *Coleman*.[2] Simply put, Director Mayberg is not properly named because he has no statutory responsibility to provide mental health care to CDCR inmates.

Because DMH lacks statutory responsibility to provide mental health care, DMH lacks statutory authority to dictate the modality of care rendered to CDCR inmates within CDCR and DMH facilities. In lieu of statutory authority, DMH relied upon interagency agreements and MOUs to establish the care model acceptable to both CDCR and DMH. These agreements and MOUs empowered DMH over the care model only within the parameters of its role as a contract provider of services. Further, treatment modalities within DMH facilities are now determined by the CRIPA consent decree between DMH and the United States Department of Justice. (*See* Def. CRIPA Filing, 5/4/06.) The CRIPA decree mandates that patients, DMH or CDCR, housed within DMH for purposes of inpatient care are entitled to the recovery model of care. In short, Director Mayberg is not vested with authority over the modality of care rendered to patients within DMH.

Director Mayberg should not be named as a defendant. He does not have statutory authority over the modality of treatment provided to CDCR inmates within CDCR facilities. His authority over the modality of treatment provided to patients within DMH facilities is now largely eclipsed by the CRIPA consent decree. Moreover, like other directors of other agencies involved in *Coleman* remedies, Director Mayberg of DMH is responsive to and acts within the auspices of the Governor of the State of California. The Governor of the State of California is already a defendant in this case and will ensure state agencies and their officers cooperate with this Court in all remedial actions. Because naming Director Mayberg as a defendant in this case will not result in any additional remedies, this Court should find it unnecessary to do so.

**D.    DMH IS OBLIGATED TO MEET ITS STATUTORY RESPONSIBILITY TO PROVIDE CARE TO CIVIL AND JUDICIAL COMMITMENTS.**

DMH recognizes that this Court is engaged in creating a constitutionally compliant mental health care system for inmates within CDCR. Some of these inmates may well, as this

---

2. The *Gates/Coleman* merger was enabled by a transition plan involving the continued provision of DMH mental health care services to CDCR inmates.

RESP. TO OSC RE: MAYBERG AS DEF.

1 Court has indicated, be in CDCR because of the paucity of county and state mental health
2 facilities. This paucity suggests the countervailing pressures on DMH to provide services and
3 beds to non-CDCR patients. As much as DMH is committed to providing CDCR with staff and
4 services stated in the recently submitted bed plan, DMH is obligated by statute to provide mental
5 health care for certain designated persons who are not within the confines or custody of CDCR.
6 Naming Director Mayberg as a defendant in this case would overlook the statutory obligations of
7 DMH to an entirely different class of patients.

8 DMH must admit and treat individuals who are committed to the state hospitals by the
9 courts under specific state statutes. The California Penal Code provides for the commitment of
10 individuals found incompetent to stand trial, determined to be mentally disordered offenders, and
11 determined to be not guilty by reason of insanity. Cal. Penal Code §§ 1370, 2962, 1026. The
12 California Welfare and Institutions Code mandates the commitment of individuals who are found
13 to be sexually violent predators. Cal. Welf. & Inst. Code § 6600. Individuals whose mental
14 illness renders them dangerous to themselves or others must also be committed to the state
15 hospital. *Id.*, at § 5358. In essence, DMH cannot refuse or decline to admit patients sent to state
16 hospitals by state courts under these statutory provisions.

17 DMH's failure to timely receive civil and judicial commitments due to lack of bed space
18 has and will likely lead to court orders from other jurisdictions. DMH is now subject to a court
19 order granting a set of petitions for writs of habeas corpus for alleged failure to promptly receive
20 persons found incompetent to stand trial and ordered committed to Napa State Hospital pursuant
21 to Penal Code section 1370. (Ex. 1, Order Granting Habeas Corpus, *In Re Osburn*, Sacramento
22 County Superior Court, Case No. 05F09064.)[3/] The *Osburn* court emphasized that DMH
23 violated the constitutional rights of civil commitment patients by not timely admitting them to a
24 state hospital and ordered their admission within seven days of the order of commitment. (*Id.* at
25 63-64.) As much as this Court is asking DMH to provide increased beds and services to CDCR
26 ///
27

28   3. Director Mayberg respectfully requests this Court take judicial notice of the order rendered in *In Re Osburn*. Fed. R. Evid., 201(b), 801.

RESP. TO OSC RE: MAYBERG AS DEF.
7

inmates, DMH must respect its statutory and constitutional obligations to provide beds and services to patients designated by the state legislature to receive those services.

## IV.

## CONCLUSION

Director Mayberg of DMH respectfully submits this Response to the Order to Show Cause. Director Mayberg respects this Court's mandate to completely remediate the bed care needs of CDCR inmates. DMH has consistently provided inpatient beds for CDCR inmates and is now engaged in expanding the number of inpatient beds available to meet the short- and long-term needs of CDCR inmates. Director Mayberg respectfully submits that there is no need to name him as a defendant in his official capacity in light of the ongoing efforts of DMH to provide needed mental health services to CDCR inmates at CDCR facilities and at DMH facilities.

Dated: May 17, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

ROCHELLE C. EAST
Supervising Deputy Attorney General

*/s/ Lisa A. Tillman*

LISA A. TILLMAN
Deputy Attorney General

Attorneys for Defendants and Stephen Mayberg,
Director of Department of Mental Health

30117541.wpd

RESP. TO OSC RE: MAYBERG AS DEF.