**APPENDIX A**

# ENROLLED BILL REPORT

| AGENCY | | BILL NUMBER |
|---|---|---|
| HEALTH AND WELFARE AGENCY | | AB 1529 |
| DEPARTMENT, BOARD OR COMMISSION | | AUTHOR |
| HEALTH | | Murphy |

This bill would require a preliminary determination of probable guilt before a finding of incompetence to stand trial. It will limit the indefinite commitment to a maximum of three years as well as allow for the commitment to local programs and/or private facilities as well as state hospitals. The bill requires periodic reports to the court, allows outpatient treatment, and amends the definition of gravely disabled to allow LPS conservatorship when an indefinite commitment expires, provided the person is still incompetent and is charged with a felony involving physical harm or threat of harm to another.

The bill would assist the Department in complying with the U.S. Supreme Court decision Jackson v. Indiana and the California decision In Re Davis. The reporting requirements are consistent with Department policy and the effect may be a reduction in the number of commitments to Atascadero and Patton State Hospitals since the use of other facilities is provided for. Local programs would have the opportunity to establish programs for PC 1370 patients.

There may be some small savings because of a reduction in population if the courts choose to use local programs rather than state hospitals for evaluation.

The Department's position on this bill throughout its history has been neutral.

RECOMMENDATION:

SIGN

DSM 9-4-74

| DEPARTMENT DIRECTOR | DATE | AGENCY SECRETARY | DATE |

# ENROLLED BILL REPORT

| AGENCY: GOVERNOR'S OFFICE | BILL NUMBER AB 1529 |
|---|---|
| DEPARTMENT, BOARD OR COMMISSION LEGAL AFFAIRS | AUTHOR Murphy |

This bill was necessitated after the Supreme Court rendered its decision in _In re Davis_ holding that the procedure for committing a mentally incompetent person to a mental institution, pursuant to Penal Code section 1368 ec seq. is unconstitutional.  This bill seeks to amend the current law so that it will conform with the constitutional standards.  This bill has been thoroughly reviewed by the Attorney General and by CPOA, and has met with their approval.  They do not object to any portion.

RECOMMENDATION:

SIGN.

| ANALYST | DATE | LEGAL AFFAIRS SECRETARY | DATE |
|---|---|---|---|

# APPENDIX  B

STATEMENT IN SUPPORT OF ASSEMBLY BILL NO. 1529

Assembly Bill 1529, as amended January 29, 1974, provides a comprehensive overhaul of the law in the area of commitment of those charged with crime who are mentally unable to stand trial. It is an overhaul which is directly necessitated by recent decisions of the California and United States Supreme Courts which hold much of the present statutes to be unconstitutional. But the necessity also flows from the fact that the statutes in this area are highly antiquated, having undergone no substantial revision since 1872.

If AB 1529 is passed in its present form, it will provide California with an intelligent and just method of dealing with the mentally incompetent defendant.

Some of its specific features are as follows:

1.   The bill eliminates one of the major medieval inequities found in present law; namely, the possibility that a person who is clearly innocent of any crime will be subjected to indeterminate incarceration in a maximum security mental hospital designed for the so-called "criminal insane."

Under present law, a person may be charged with as little as a traffic ticket, and even though it may be clear that the individual has committed no crime, he has no way of urging that he be spared from commitment on the grounds of innocence. In many cases, such commitments have been used merely as quick and convenient way to get "rid" of mentally ill persons by charging them with disturbing the peace or some other trivial offense, and then having them committed as unfit to stand trial.

2.   It places reasonable limitations on the duration of such commitments, and insures that while committed, the individual will be provided with meaningful treatment aimed at rendering him fit for trial.

There have been many cases under present law where men have been committed pursuant to mere traffic-ticket type offenses, and been left as "hopeless" for years in the back wards of State hospitals without treatment. This feature will put an end to such draconian abuses.

At the same time, while protecting the petty misdemeanor-type defendant, AB 1529 recognizes the possible danger to the community presented by those charged with violent felony offenses.  Extended commitment and supervision is provided for such persons in a way meeting constitutional requirements established by the California Supreme Court in the In re Davis case.

Where the offense charged carries a maximum sentence of life as do most violent felonies, supervision could extend for the rest of the defendant's life, but with provision for judicial review to insure that the person is receiving treatment, and, therefore, that he will be brought to trial at the earliest possible date.

3.     Present law requires that "incompetent" defendants be committed only to a State hospital.  There are many cases in which a county, university, Veterans' Administration, or private hospital will be able to provide the best and most effective program for a given patient.  AB 1529, while still allowing commitments to State hospitals, also makes it possible for other facilities to develop programs for the incompetent defendant. The effect of this can only be salutary.

###

---

**APPENDIX C**

Appendix C

FACT SHEET - - Assembly Bill 1229 (Outpatient treatment)

Allows court the option of placing a judicially committed patient* in a local mental health facility or, in specified circumstances, on outpatient treatment.

Provides for evaluation of the patient by the local mental health director and recommendation to the court re: commitment to a state hospital, placement in a local facility, or placement on outpatient treatment.

Requires a hearing in open court at which the prosecuting attorney may contest the placement of the patient.

Provides that no person who is a danger to the health and safety of others can be placed by the court on outpatient treatment.

Provides that no mentally disordered sex offender can be placed directly on outpatient treatment.

CURRENT LAW:

AB 1529 (Murphy) of last session provided the court an option for local commitment of persons found incompetent to stand trial (P.C. 1374).

Current law already provides for outpatient treatment (called "leave of absence") for persons found incompetent to stand trial.

Current law already provides for outpatient treatment (called "parole") for persons found not guilty by reason of insanity (W&I Code 7375).

NOTE:   AB 1229 required court approval of any decision to place a judicially committed patient in a local mental health facility or on outpatient treatment.

_____  ____

*   Judicially committed patients are persons found incompetent to stand trial, not guilty by reason of insanity, and mentally disordered sex offenders.

3/20/75

<u>AB 1220</u>

This bill will provide to the court options for local commit-
ment and outpatient treatment of persons found incompetent to stand
trial  not guilty by reason of insanity, and mentally disordered
sex offenders as follows:

<u>P.C. 1370</u> (Incompetent to stand trial)

Option for local commitment or outpatient treatment in lieu
of commitment to a state hospital after evaluation by the
local mental health director and recommendation to the court.

<u>P.C. 1026</u> (Not guilty by reason of insanity)

Same as above.

<u>Mentally Disordered Sex Offender</u> (MDSO)

Option for local commitment in lieu of commitment to a state
hospital after evaluation by the local mental health director
and recommendation to the court.  Also allows option for out-
patient treatment subsequent to commitment.

The bill also provides 100% state funding for local treatment
(inpatient and outpatient) of judicially committed patients and
requires the Director of Health to compare the relative cost and
duration of treatment between those patients committed to state
hospitals and those patients committed to local facilities or
placed on outpatient treatment.

**APPENDIX  D**

Appendix D

# ENROLLED BILL REPORT

| AGENCY | | BILL NUMBER |
|---|---|---|
| HEALTH AND WELFARE AGENCY | | AB 1229 |
| DEPARTMENT, BOARD OR COMMISSION | | AUTHOR |
| HEALTH | | Lanterman |

## SUBJECT

This bill amends provisions for judicial commitment of persons who are not guilty by reason of insanity (PC 1026) or are mentally disordered sex offenders (WIC 6316-6330) so that courts may commit to local public or private inpatient facilities as well as to state hospitals. For these two categories and for persons who are incompetent to stand trial (PC 1370-1374, which already allows local commitment), the bill also gives courts authority to approve transfers between state and local facilities, with hearing provided on protested transfers. As a further alternative to commitment, the bill gives courts authority to order outpatient care for persons under PC 1026 and PC 1370 who are evaluated as not dangerous to the health and safety of others. For those who are dangerous, and for all mentally disordered sex offenders, commitment to inpatient care is required; however, the court could later approve a change to outpatient status when the person is evaluated as no longer dangerous. All judicially committable persons charged with or convicted of specified crimes involving harm to others would be required to undergo 90 days of inpatient treatment under commitment before outpatient status could be considered by the court. In all cases involving commitment or judicial order for outpatient treatment the court would receive a written evaluation and recommendation by the county mental health director. Both defense and prosecution attorneys would be provided notice of intent to place committable persons on outpatient status, and prosecutors may request a court hearing. Provision is made for outpatient supervision, for periodic progress reports, and for renewal of outpatient treatment orders in one-year periods, as well as for recommendation of termination when sanity is restored, and also for transfer from outpatient to inpatient care on the initiative of the outpatient supervisor, or, where dangerousness is at issue, on the initiative of the prosecuting attorney. The latter transfer requires a petition to court, a hearing, and court approval. Extensive provision is made at all decision points regarding the defendant's status for notification to concerned parties including the defendant, the defense and prosecuting attorneys, the county mental health director, and the court. The bill provides that all counties shall include services for judicially committable persons in annual Short-Doyle plans, and that such county services are to be 100% state reimbursed. The bill requires the Department of Health to analyze and report on the comparative cost of state and local treatment of judicially committed persons.

## HISTORY, SPONSORSHIP, AND RELATED BILLS

The author, Assemblyman Lanterman, chaired a 1973-74 select committee which studied issues in both civil and criminal provisions for treating dangerous

| RECOMMENDATION: | | | | | |
|---|---|---|---|---|---|
| Sign Veto | Jerome A. Lackner M.D. | | | | |
| DEPARTMENT DIRECTOR | | DATE | AGENCY SECRETARY | | DATE |
| Jerome A. Lackner, M.D. | | 9/24/75 | Tom Elkin | | 9/26/75 |



AB 1229
Page Two

mentally ill individuals. AB 4200, passed and vetoed in the 1974 session, resulted from this study and contained provisions similar to those in this year's AB 1228, AB 1229, and AB 1422. The veto of AB 4200 was recommended by the Attorney General and the District Attorney's Association because of allegedly inadequate provision for notification to and participation by prosecuting attorneys in procedures for outpatient care. The provisions in AB 1229 have been amended to overcome these objections. The Department of Health has assisted Mr. Lanterman's staff in the initial study and in subsequent review of proposals. The Department's position on both AB 4200 in 1974 and on AB 1229 and related bills in this session has been neutral.

VOTE

Passed out of the Assembly 44-26 and the Senate 38-0. Assembly refused to concur in Senate amendments and bill went to conference.

SPECIFIC FINDINGS

1. At present judicially committed persons in all three categories receive inpatient treatment only in state hospitals. While PC 1370 allows local commitment since passage of AB 1529 in 1974, that bill failed to bring such treatment under Short-Doyle financing, so courts continue to use state hospitals. Local inpatient care for certain persons as proposed could shorten time under court commitment because the patient would remain closer to community resources which can be brought to bear on his rehabilitation, and because of easier access to and coordination among the various elements of the mental health and criminal justice systems which must cooperate in his eventual release from commitment. For this reason the higher daily cost of local inpatient care in most cases may well be offset by a shorter total period of such care than in a state hospital. There are appropriate safeguards proposed, such as evaluation and recommendation by local mental health officials, the requirement for use of local facilities which are approved, and for transfer between state and local inpatient facilities.

2. Present law provides no option for the court to order outpatient care as an alternative to judicial commitment. With the kind of screening for dangerousness, supervision, and reporting, and transfer to inpatient care when indicated that this bill would provide, outpatient treatment should be an effective and reasonably safe alternative for a

AB 1229
Page Three

significant proportion of persons now committed to inpatient care. For reasons of improved local coordination mentioned above, because outpatient care is considerably less expensive and is infinitely less restrictive than inpatient care, the bill represents an improvement. Evaluation of progress while on outpatient care might also allow earlier termination of commitment. The provisions for input from all concerned parties into decisions on both local inpatient and outpatient status are comprehensive.

3. Present cost of treating judicially committed persons is entirely borne by the state. While this bill appropriately places proposed local services to this population within the Short-Doyle system, which is financed 90/10, the proposal for 100% state reimbursement follows the logic of a workload transferred from state to local programs. Savings to the state to counterbalance cost of reimbursement of local services would result from lower admissions to and average population in state hospital programs for judicially committed persons.

FISCAL IMPACT

There would be minor savings to the Department of Health if judicially committed patients were treated in local mental health facilities in lieu of state hospitals. However, these savings would be used to offset the cost of conducting the required study and implementing a cost reporting/data collection system to accommodate the 100% reimbursement to the counties.

RECOMMENDATION

The Department of Health recommends that the bill be ~~signed~~  VETO

Contacts:

Jerome A. Lackner, M.D.
5-1248
756-8536

William E. Reid
2-2816
422-9726

**APPENDIX  E**

# ENROLLED BILL REPORT

| | | | Form DF-44 (Rev. 5/25/AM) |
|---|---|---|---|
| AGENCY | AUTHOR | | BILL NO. |
| DEPARTMENT OF FINANCE | Lanterman | | AB 1229 |
| SUBJECT: | | | DATE LAST AMENDED |
| | | | 9/12/75 |

**SUBJECT:**

This bill establishes a system whereby the courts may commit individuals who are not guilty by reason of insanity, mentally incompetent to stand trial, or mentally disordered sex offenders to local mental health facilities or outpatient treatment in lieu of incarceration in State hospitals. Provides for 100 percent state Short-Doyle funding and various other provisions.

**HISTORY, SPONSORSHIP, AND RELATED BILLS**

AB 4200/1974

**ANALYSIS**

A. Specific Findings

This bill (AB 1229), AB 1228, and AB 1422 were contained in AB 4200/1974, vetoed by the prior administration on procedural grounds. The Department of Finance did not object to enactment of AB 4200.

AB 1229 authorizes the courts to utilize local mental health facilities or public or private mental health facilities approved by the Director of the county mental health program for the criminally insane (Penal Code 1026) and the mentally incompetent (PC 1370). Such services may include the use of outpatient services if patients are not determined to be a danger to society or themselves. Mentally disordered sex offenders could be placed by the courts in local mental health facilities. Currently, all mentally disordered criminal offenders are maintained in the state hospitals at Atascadero and Patton.

Certain other provisions are included and require the Director of the county mental health program to provide an evaluation and recommendation as to disposition including the appropriateness for outpatient services for the criminally insane and mentally incompetent; authorizes transfers between state hospitals and local programs; notifies the person's attorney and the prosecuting attorney of such transfer; and provisions for judicial review to safeguard the individuals as well as the public's interest.

Under this bill, the Director of the county mental health facility must evaluate and recommend disposition of all Penal Code 1026, PC 1370 and mentally disordered sex offenders. While each evaluation is subjective, the Department of Health believes certain individuals could be identified and would benefit from local programs and

(cont. on page 2)

**SUMMARY OF REASONS FOR SIGNATURE/VETO**

| | | | |
|---|---|---|---|
| RECOMMENDATION | | | ANALYST |
| Defer to the administration policy. | | | W.C. |
| DEPARTMENT REPRESENTATIVE | DATE | DIRECTOR | DATE |
| | 9/24 | Roy Bell | 9/24/75 |

AB 3229
9/2/75

-2-

not increase the risks to society.

It also specifies certain legal procedures in the transfer, denial, or revocation of an individual's status and to provide additional safeguards to society where the defendant was convicted of a serious crime.

Among the legal provisions, the defendant has the same right as provided in probation revocation hearings. In recent U.S. Supreme Court decisions, probation hearing procedures were explicit in the protection of individual rights and provision of legal counsel at the expense of the State.

To provide additional safeguards to the public, defendants convicted of a felony involving death, great bodily harm, or involved the threat to the well being of another person would be confined in a State hospital or approved mental health facility for a minimum of 90 days before outpatient treatment may be considered.

Consistent with current statutes, the State would continue to maintain full responsibility for the liability and financial cost of maintaining mentally disordered criminal offenders in local programs. Such costs would be included within the county Short-Doyle plan and reimbursed at 100 percent State funding.

Additionally, the bill contains provisions for a study to be conducted by the Department of Health to compare the relative cost and duration of treatment between patients in State hospitals and other facilities. The Department of Finance recommended this provision in AB 4200 in order to assess the impact of this new program.

B.   Fiscal Analysis

The Department of Health estimates approximately 70 patients may be suitable for local mental health placement. Assuming that outpatient services are offset through savings utilized, there would be a minor cost to the state in the hospital program. If community inpatient services are utilized, exclusively, the net cost could approximate $2.1 million based upon community inpatient costs of $120/day versus hospital costs of $34/day. An additional $125,000 is required to conduct the specified cost study and administrative expense.

The provision of probation revocation hearings and legal counsel is estimated to be minimal in view of the small number of alternative placements. The potential exists for increased future cost but is indeterminable at this time until the extent of utilization and a revocation pattern is established.