| | |
|---|---|
| PRISON LAW OFFICE<br>DONALD SPECTER Bar No.: 83925<br>STEVEN FAMA Bar No.: 99641<br>KEITH WATTLEY Bar No.: 203366<br>General Delivery<br>San Quentin, California 94964<br>Telephone: (415) 457-9144 | BINGHAM, McCUTCHEN, LLP<br>WARREN E. GEORGE Bar No.: 53588<br>Three Embarcadero Center<br>San Francisco, California 94111<br>Telephone: (415) 393-2000 |
| ROSEN, BIEN & ASARO, LLP<br>MICHAEL W. BIEN Bar No.: 096891<br>JANE E. KAHN Bar No.: 112239<br>THOMAS NOLAN Bar No.: 169692<br>155 Montgomery Street, 8th Floor<br>San Francisco, California 94104<br>Telephone: (415) 433-6830 | HELLER, EHRMAN, WHITE &<br>McAULIFFE<br>RICHARD L. GOFF Bar No.: 36377<br>701 Fifth Avenue<br>Seattle, Washington 98104<br>Telephone: (206) 447-0900 |
| THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>CLAUDIA CENTER Bar No.: 158255<br>LEWIS BOSSING Bar No.: 227402<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107<br>Telephone: (415) 864-8848 | |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' RESPONSE TO SPECIAL MASTER KEATING'S REPORT ON SUICIDES IN CALENDAR YEAR 2004 AND DEFENDANTS' REQUEST FOR A THREE-MONTH EXTENSION INTO THE NEXT BUDGET YEAR** |

## INTRODUCTION

Plaintiffs object to defendants' request to delay their plan to address the "escalating percentage of suicides occurring in administrative segregation units" for three months, and more significantly, into the next budget year. Without this Court's intervention, "business as usual" in State government will turn the three-month extension into a thirteen-month delay in obtaining basic resources that may be necessary to save lives. Unless defendants commit to seek and obtain any necessary funding by emergency measures in September 2006, this Court should deny defendants' requested extension.

### Background

On March 15, 2005, the Special Master provided plaintiffs and defendants with the draft of the Report on Suicides Completed in the California Department of Corrections in Calendar Year 2004 ("Master's 2004 Suicide Draft" or "Draft Report"). The Draft Report contained one recommendation:

> Defendants need to develop by May 15, 2006, a plan for dealing with the escalating percentage of suicides occurring in administrative segregation units. The plan must be based upon an analysis of causes for the increasing rate and depending on the outcome of the analysis, provide adequate resources of mental health and/or custody staff, create sufficient confidential interview space and/or enhance the quality of mental health services provided in administrative segregation units. Draft Report at 12.

On March 31, 2005, plaintiffs filed Plaintiffs' Comments and Objections to the Master's 2004 Suicide Draft ("Plaintiffs' Comments and Objections"). Plaintiffs requested additional recommendations from the Special Master, including a specific requirement that the plan developed by defendants include a budget and implementation schedule for any policy changes, staffing or building augmentation sufficiently timely for inclusion in the 2006-2007 FY Budget. Plaintiffs' Comments and Objections at 10.

Defendants submitted Objections to the Draft Report on April 14, 2006 ("Defendants' Objections"). Defendants' Letter to Keating, dated April 14, 2006. In their Objections, defendants argued that although 69% of the suicides occurred in administrative segregation units in 2004, the percentage of suicides in administrative segregation units had declined in 2005 and 2006, thereby negating the need for the Draft Report's recommendation. Defendants

also listed eleven items which they identified as measures that they had already taken to reduce the incidence of suicide in administrative segregation units.

On April 18, 2006, plaintiffs filed Plaintiffs' Response to Defendants' Objections to the Draft Report ("Plaintiffs' Response"). In their Response, plaintiffs addressed the on-going disproportionate rate of suicides within locked housing units in CDCR, the defendants' failure to develop a sufficient plan to address their spiraling suicide rate and defendants' failure to implement their suicide history tracking system.

On May 9, 2006, Special Master Keating filed the final version of the Report on Suicides Completed in the California Department of Corrections in Calendar Year 2004 ("Final Suicide Report"). The Final Suicide Report retained the original recommendation but moved the date for completion of the plan from May 15, 2006 to May 31, 2006.

On May 19, 2006, defendants filed a Response to the Final Suicide Report. ("Defendants' Response"). In their Response, defendants requested an additional three months, until August 31, 2006, to complete their plan to address the suicide rate in their administrative segregation units. As part of their planning process, defendants requested that "[d]efendants be permitted to immediately commence the analysis in collaboration with the Special Master's experts and be permitted to present the plan by August 31, 2006". Defendants' Response at 2.

If defendants are permitted an extension until August 31, 2006, any remedial plan developed that requires funding will miss this budget year and be delayed until July 1, 2007— more than thirteen months from the date of the Special Master's recommended deadline for defendants' remedial plan. This Court should reject the request for an extension unless defendants commit to obtaining any necessary emergency funding in September 2006.

## ARGUMENT

I. **DEFENDANTS MUST ADDRESS THE CRISIS OF THE ESCALATING SUICIDE RATE WITHIN CDCR WITH A SERIOUS PLAN THAT INCLUDES A COMMITMENT TO OBTAIN THE NECESSARY FUNDING TO IMPLEMENT THE PLAN'S ELEMENTS**

Defendants' responses to the Draft and Final Suicide Report fail to recognize the

spiraling suicide rate within CDCR which has reached a crisis state. In 2005, plaintiffs identified at least 41 suicides in the CDCR. Declaration of Jane Kahn in Support of Plaintiffs' Objections to Defendants' In-Patient and MHCB Bed Plan, filed April 21, 2006 ("Kahn Dec.") ¶ 23.[1] Based upon 41 suicides, the CDCR suicide rate per 100,000 is 26.21, which is almost double the state prison rate reported by the U.S. Department of Justice in August 2005. Kahn Dec. ¶¶ 23, 24. Despite several months' notice of the Special Master's single recommendation in the Draft Report, defendants now seek a three-month extension of time to begin to address the escalating suicides within CDCR. Given the current rate of suicides within CDCR, a delay of three months to implement critically needed measures is not an insignificant matter. Defendants must ensure that any plan developed is meaningful and does not merely consist of memoranda or directives from CDCR Headquarters to local institutions without specific means for implementation of the necessary policies. As noted in the Final Suicide Report, the failure to implement necessary policies in a meaningful way has deadly consequences. For example, despite issuing numerous memoranda to the field addressing the need to double-cell inmates in administrative segregation, the majority of inmates who commit suicide in the administrative segregation units continue to be single-celled. Final Report at 13.

> "In 2004, all 18 inmates in administrative segregation who committed suicide were single-celled; preliminary data from 2005 suggests that all but one or two of all inmates who committed suicide in administrative segregation were single-celled. More needs to be done to make custody managers of administrative segregation address the single-celling issue; **it is a matter of life or death**." [emphasis added] Final Report at 13-14.

Defendants request the extension of time in order to analyze the causes of the rate and based upon the analysis determine "the steps to undertake to address the rate." Defendants' Response at 2. Defendants have already conducted an analysis of their suicides in administrative segregation in both 2003 and 2004, and have developed a series of

---

[1] Plaintiffs did not include four deaths reported by defendants as non-suicides which we have not yet reviewed. Kahn Dec. ¶ 23. In 2006, in the first three months of the year, plaintiffs had already been notified of thirteen suicides that had occurred within the CDCR. Kahn Dec. ¶ 24.

recommendations to address the disproportionate number of suicides in these units. Defendants' Annual Report for 2003, dated August 16, 2004 at 14-16; Defendants' Annual Report for 2004, dated September 26, 2005 at 14-16. It is now time to develop a strategy for implementing the sound policies and procedures that have already been identified by defendants. *Id.* The Special Master's experts and plaintiffs' expert can offer additional suggestions. Final Suicide Report, Summary and Recommendations, at 9-12.

Apparently, defendants have ignored the Special Master's recommendation (perhaps in the belief that their objections would be sustained) and have not developed a plan or sought funding to date. While the May Revise has already been submitted to the Legislature, there is still time now to seek additional necessary funding in the 2006-2007 Budget for the critical purpose of saving lives. Defendants' three-month extension, however, will result in a plan that cannot be funded, through the normal State process, until July 1, 2007, at the earliest. This is unacceptable. Defendants must commit to a mechanism to obtain any necessary funding to implement elements of their remedial plan in September 2006. Business as usual should not be acceptable when lives are at stake.

## II. DEFENDANTS SHOULD BE DIRECTED TO COLLABORATE WITH PLAINTIFFS AND PLAINTIFFS' SUICIDE EXPERT IN THE DEVELOPMENT OF THEIR PLAN TO ADDRESS THE ESCALATING SUICIDE RATE IN THEIR ADMINISTRATIVE SEGREGATION UNITS

Defendants have requested a three-month extension to develop their plan to deal with their suicide rate in the administrative segregation unit to permit them to collaborate with the Special Master's experts on their remedial plan.

Plaintiffs respectfully request that their suicide expert, Lindsay Hayes, a nationally recognized expert on suicide prevention within jails, prisons and juvenile facilities, participate in the meetings with defendants, plaintiffs and the Special Master's experts in developing a remedial plan to address CDCR's escalating suicide rate. Mr. Hayes is a Project Director of the National Center on Institutions and Alternatives and serves as a technical assistant expert

by conducting training seminars and assessing inmate and juvenile suicide prevention practices in various state and local jurisdictions throughout the country.[2] Mr. Hayes is available to consult with defendants during the following timeframes: June 26-30, 2006; July 3-14, 2006; and the month of August 2006. Mr. Hayes has been provided with the Revised Program Guides, the Final 2004 Suicide Report, the Special Master's Report on Suicides Completed in the California Department of Corrections in Calendar Year 2003, and various other memoranda related to suicide prevention and policy within CDCR. He is knowledgeable about the current state of mental health services and suicide prevention practices within CDCR.

## CONCLUSION

In their response to the Final Suicide Report, defendants no longer object to the recommendation to develop a plan to address their escalating suicide rate in administrative segregation units. In the face of a sky-rocketing suicide rate, however, defendants request additional months to develop a plan to study the causes of suicide and then undertake the steps to address the rate. Their response is business as usual in the face of a suicide rate that can only be described as shocking.

Perhaps the input of outside experts, who can bring their own perspective about CDCR's suicide rate and policies and procedures, will help defendants understand that a crisis exists within their prison system. It is difficult, however, to comprehend how this crisis has been ignored to date. In 2005, at least 41 inmates committed suicide within CDCR. An additional five or six inmates died of drug overdoses judged "accidental," in their housing units of "unknown causes" or at the hands of their mentally ill cellmates, or on suicide watch in crisis beds where the patient's death was not classified as a suicide. In his opinion discussing the reasons for the appointment of the receiver, Judge Henderson wrote that: "it is an uncontested fact that, on average, an inmate in one of California's prisons needlessly dies

---

[2] Mr. Hayes' curriculum vitae is attached as Ex. A to the Hayes Declaration filed in Support of Plaintiffs' Notice of Defendants' Failure to Comply with the June 9, 2005 Order and Request for Relief, 9/30/05.

every six to seven days due to constitutional deficiencies in the CDCR's medical delivery system." *Plata v. Schwarzenegger*, Findings of Fact and Conclusions of Law re Appointment of Receiver, October 3, 2005, at 1. CDCR officials must acknowledge the equally shocking suicide rate due to constitutional deficiencies in the mental health delivery system.

Defendants must work closely with the Special Master's experts and with plaintiffs' suicide expert to develop a meaningful plan with clear goals, timeframes, and a budget and implementation schedule for any policy and procedure changes, staffing or building augmentation, including a mechanism for mid-year funding.

Plaintiffs request the following recommendations:

1. The defendants need to develop by August 31, 2006, a plan for dealing with the escalating percentage of suicides occurring in administrative segregation units. The plan must be based on an analysis of the causes of the increasing rate and, depending on the outcome of the analysis, provide adequate resources of mental health and/or custody staff, create sufficient confidential interview space/or enhance the quality of mental health services provided in administrative segregation units. The plan must include a budget and implementation schedule for any policy and procedure changes, staffing or budget augmentation, and include a mechanism for obtaining mid-year funding on or before September 30, 2006.

2. The defendants will collaborate with one or more of the Special Master's experts, with plaintiffs' counsel and with plaintiffs' expert, Lindsay Hayes, to develop the plan for dealing with the escalating rate of suicides with CDCR.

3. The defendants will include an implementation schedule with their plan that will reflect the urgency of the escalating suicide rate within the CDCR and the need to address this crisis as an emergency.

Dated: May 23, 2006

Respectfully submitted,

Jane Kahn
Rosen, Bien & Asaro
Attorneys for Plaintiffs