PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>   Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>   Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' DISCOVERY CONFERENCE STATEMENT PURSUANT TO FRCP 26F**<br><br>Date:         June 13, 2006<br>Time:        11:00 a.m.<br>Courtroom: 25<br>Judge:       Honorable John F. Moulds |

# INTRODUCTION

In January 1997, almost 13 months after the appointment of the Special Master, the Court directed the Special Master to work with the parties to complete and submit for approval plans, policies and protocols for meeting the requirements of the remedial order. This process took approximately five months and resulted in the California Department of Corrections Mental Health Services Delivery System Program Guides. These Program Guides were a collection of the standards for the delivery of mental health services within the CDCR's various levels of mental health care and within the different custody settings. The Court provisionally approved the submitted Program Guides on June 24, 1997. Special Master's Report and Recommendations on Defendants' Revised Program Guide, filed 2/3/06 at 2. Plaintiffs reserved objections to many issues.

Over the years since the provisional approval of the Program Guides, aspects of the plans, policies and protocols have been amended by the Court or by defendants. In 2002, the parties and Special Master agreed to revise and update the Program Guides. For the past three years the parties, the Special Master and his experts and monitors have met to review, discuss and negotiate provisions of the Program Guides. The parties, with the assistance of the Special Master, have reached agreement concerning most of defendants' extensive revisions to the 1997 Program Guides. See 1/3/06 Special Master's Report and Recommendations on Defendants' Revised Program Guides; See Plaintiffs' Objections to the Special Master's Report and Recommendations on Defendants' Revised Program Guide and Declaration of Michael W. Bien in Support of Objections, filed 2/17/06; 3/3/06 Order at ¶ 1 (Ordering defendants to implement undisputed portions of the revised Program Guides).

The parties have settled or made progress in resolving additional disputed program guide issues since the issuance of the March 3, 2006 Order directing defendants to implement the undisputed portions of the revised Program Guides. The scope of the program guide disputes have thus been reduced by resolution of the following issues:

**Use of Video-Monitoring as Sole Method of Observation on Suicide Watch** – Defendants have agreed to suspend the practice of video-monitoring as the sole method of observation on suicide watch and the parties have agreed to new Program Guide language that reflects the new suicide watch procedures. 5/4/06 Program Guide Revision at 12-10-16 and 12-10-17.

**Correctional Officer's Duty to Provide CPR to Inmates** – The parties have agreed to Program Guide language on this issue. 5/4/06 Program Guide Revision at 12-10-21.

**Standard for Custody Checks on Suicide Precautions** – Defendants have agreed to change the standard for custody checks for inmates on suicide precautions from an hourly check to staggered checks not to exceed fifteen minutes in accordance with national correctional health care standards. 5/4/06 Program Guide Revision at 12-10-15.

In addition, the parties have made significant progress with respect to the following issues:

**Psychiatrist Qualifications** – The parties have reached an agreement with respect to the standards for new hires. 5/4/06 Program Guide Revision at 12-1-8. The parties are working on a stipulation that would address a timeframe for a review of the qualifications for existing staff who do not meet the new requirements. Plaintiffs have not yet reviewed or agreed to the specific program being developed by defendants to review the qualifications of existing psychiatrists who do not meet the new hiring standard.

**Staffing Ratios** – Plaintiffs have objected to defendants' proposed staffing ratios, which are largely unchanged from the staffing ratios tentatively approved by the Court in 1999, despite subsequent recommendations from the Special Master and Court orders requiring additional staffing. Defendants have stated that they will undertake a new workload study to assess the adequacy of the proposed staffing ratios. Attachment A to Program Guides (see 12-1-8). Defendants have yet to commit to a schedule for the completion of the workload study or to describe the scope of the study.

**Non-Cage Treatment Option for PSU and EOP Administrative Segregation Inmates** – The defendants have indicated a willingness to consider plaintiffs' proposal that mental health treatment outside of cages be available for appropriate patients housed in the PSU program and the EOP administrative segregation units. Program Guides at 12-7-8 and 12-9-8 and 12-9-9.

In addition, defendants are still considering modifications to existing policies in the following areas:

**Classification and Discrimination Issues** – Defendants have indicated a willingness to change some of their policies that discriminate against mentally ill inmates and also result in the plaintiff class members having higher classification points than similar prisoners without mental illness. For example, defendants report a willingness to reconsider their policy concerning EOP patients earning point reductions for program participation while housed in EOP programs, similar to the point reductions for work, educational and vocational assignments. We have also been informed that defendants are considering the creation of EOP programs in Level I and Level II housing. Finally, defendants have not indicated their final position on whether they will end their discriminatory practice of adding four points to the classification score of each prisoner with a mental illness. See generally Program Guide Chapter 2 (reception center processing) and Chapter 4 (EOP program).

As a result of the continued negotiations, the scope of the remaining Program Guide dispute resolution process (and necessary discovery) has already been substantially reduced. As indicated, additional agreements appear possible, resulting in even fewer issues in dispute. The parties and the Special Master should take the time to reexamine the remaining disputes and determine whether, in fact, additional agreements may be possible.

On May 19, 2006, the parties appeared before Judge Karlton in a status conference to discuss the process for resolving the disputed Program Guide issues. After the conference with the parties, Judge Karlton set the matter for a discovery conference on June 13, 2006 pursuant to Rule 26(f) before the Honorable John F. Moulds. The parties were directed to file Status Conference Statements no later than June 2, 2006. Order filed 5/25/06 ¶ 1. Despite several

attempts to resolve some threshold discovery issues, the parties have been unable to reach an agreement over the nature or scope of discovery for the disputed portions of the Program Guide revisions.

### JUDGE KARLTON'S ORDER SETS FORTH A PROCEDURE FOR ACTIVATING DISCOVERY AS PROGRAM GUIDE DISPUTES BECOME RIPE

Judge Karlton set forth a basic procedure for activating resolution of the disputed Program Guide issues as the parties determine that an issue is ripe for resolution by the Court. 5/25/06 Order ¶ 3. Plaintiffs propose the following discovery process with the acknowledgement that Rule 26 envisions that the process might be modified depending on the issue to be litigated before the Court:

1. A party files a formal objection raising the issue(s) for dispute resolution by the Court;

2. As appropriate, the party shall designate with the objection an expert witness to provide evidence relevant to resolution of the objection;

3. The Special Master and the opposing party shall have a period of fifteen days after the filing of a formal objection to designate, as appropriate, one expert witness each;

4. The parties and the Special Master shall file 26(a) Initial Disclosures on the issue thirty days after plaintiffs file the formal objection. The Special Master's Initial Disclosures will provide the foundation for his recommendation on the issue;

5. 15 days after the Initial Disclosures, any party can make requests for additional discovery, if any;

6. The parties will meet and confer if discovery is disputed. If the parties are unable to resolve their dispute, they will bring the issue before this Court with normal discovery motions.

7.  The parties and the Special Master appear to be in agreement that the parties shall conduct depositions of any experts so designated. Depositions of experts would be scheduled and taken;

### A. Timing, Form and Requirements for Disclosures under Rule 26(a)

At this time in the Program Guide Dispute Process, Initial Disclosures pursuant to Rule 26(a) would be premature and wasteful because some of the disputed issues may settle. The Court granted the parties additional time in which to negotiate the disputed portions of the Revised Program Guide. 5/25/0 Order ¶ 2.

Plaintiffs propose as part of the discovery process developed with the Magistrate Judge that the parties and the Special Master should be required to file 26(a) Initial Disclosures thirty days after the filing of a formal objection by a party raising a Program Guide issue for dispute resolution by the Court.

### B. Issues to be Resolved Now

Plaintiffs request that the Court set a briefing schedule and hearing date to resolve two issues that should be addressed in the next few months.

#### 1. Plaintiffs' Right to Discovery

Defendants have taken the absolute position that plaintiffs have no right to discovery whatsoever in the dispute resolution process before the Court. During the meet and confer with defendants, plaintiffs have made a number of proposals to reduce the burden of discovery in connect with the program guide hearings, including for example, the selection of representative institutions on certain issues, or agreeing to a statement of stipulated facts upon which an issue could be presented for decision. Defendants, however, have restated their position that no discovery is appropriate without providing any legal grounds for their position or making any proposals for alternatives to plaintiffs' discovery plan.

It is necessary for this Court to establish the fundamental right of plaintiffs' counsel to conduct reasonable and focused discovery. See Federal Rule of Civil Procedure 26 (b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the

claim or defense of any matter relevant to the subject matter involved in the action."").

Plaintiffs request that the Court establish a schedule for briefing and a hearing on this issue.

### 2. Plaintiffs' Right to Tour Binders and Other Documents Provided to Special Master on tours

Defendants have refused to provide plaintiffs with copies of the documents, including the tour binders, prepared for and provided to the court monitors when they tour the prisons every monitoring round. These documents provide the evidentiary foundation for the Special Master's Progress Reports and the recommendations to the Court. The court monitors visit approximately sixty-six prisons every year. Plaintiffs' counsel accompanies the court monitors on seven of those tours a year and is provided with the tour binders and other monitoring documents during those tours. The binders and documents provide invaluable information to plaintiffs' counsel about the mental health programs, staffing, suicide prevention practices, use of force and other issues of grave concern to the plaintiff class.

In 1998 the parties entered into a stipulation that merged the *Gates* case into the *Coleman* case. See 12/24/98 Stipulation and Order. As part of the stipulation, the defendants and the Special Master agreed to provide plaintiffs' counsel with copies of any documents provided to the Special Master by defendants. *Id* at ¶ 9. The Stipulation was entered as an order by Judge Karlton on July 23, 1999.

#### a. Benefits outweigh the Burden

The current monitoring process by the Special Master involves monitoring visits to most of the thirty-three prisons at least twice a year. Some of the prisons are visited more frequently. At the conclusion of a monitoring round (every six months), the Special Master files an extensive report with the Court. Given the breadth of the report, it is often filed months after the tours. For example, the Fifteenth Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols, filed January 15, 2006, reported on monitoring tours commencing in August 2004. As a result, plaintiffs must wait many months, if not longer, before learning specific information about the mental health care provided in the prisons where the plaintiff class is housed. Requiring

defendants to create an additional tour binder for plaintiffs' counsel is an insignificant burden when weighed against the important information contained within the binders about defendants' policies and practices and individual conditions and treatment of plaintiff class members. These tour binders are already prepared for the *Coleman* monitors and are provided to plaintiffs' counsel on the tours that they are permitted to attend. The production of these monitoring materials for all of the tours is not overly burdensome.

    Plaintiffs request that the Court establish a briefing schedule on the issue of plaintiffs' right to access to the tour binder documents and set the matter for hearing.

    Finally, plaintiffs believe that the parties may resolve several other Program Guide disputes in the next few months and request that the Court schedule a status conference for September 2006 at which time the parties can report on the status of unresolved Program Guide issues. The parties at that time can designate the initial issues for dispute resolution.

    Plaintiffs look forward to a constructive discussion of these issues at the June 13, 2006 discovery conference.

Dated: June 1, 2006

Respectfully submitted,

/s/ Jane E. Kahn
Jane E. Kahn
Rosen, Bien & Asaro, LLP
Attorneys for Plaintiffs