PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' RESPONSE TO STEPHEN MAYBERG'S MAY 17, 2006 RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. I

TABLE OF AUTHORITIES .......................................................................................................... II

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

    I.    THE COURT HAS THE POWER TO ADD DMH AS A PARTY AND DMH WILL NOT SUFFER ANY PREJUDICE BY BEING SO ADDED .......... 3

    II.    DMH'S RESISTANCE TO AND INTERFERENCE WITH THE REMEDY IN THIS CASE DEMONSTRATES THAT IT IS NECESSARY TO ADD DMH AS A PARTY ....................................................... 8

        A.    The Long Delayed and Mismanaged Project to Create 64 Intermediate Inpatient Beds at Salinas Valley State Prison ........................ 9

        B.    The Coalinga State Hospital Project ................................................................ 11

    III.    DMH MUST BE ADDED AS A PARTY BECAUSE DMH DOES NOT CONSIDER ITS MISSION OF PROVIDING TREATMENT TO CDCR INMATES TO BE OF EQUAL WEIGHT WITH ITS OTHER DUTIES ........... 12

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Board of Education v. York,
    429 F.2d 66 (10th Cir. 1970) .................................................................................... 4

Castro v. Beecher,
    386 F. Supp. 1281 (D. Mass. 1975) .......................................................................... 4

Coleman v. Wilson,
    912 F. Supp. 1282 (E.D. Cal. 1995) .................................................................. *passim*

Curtis v. United Transportation Union,
    468 F. Supp. 966 (E.D. Ark. 1980) ........................................................................... 7

Ford v. Air Line Pilots Association International,
    268 F. Supp. 2d 271 (E.D.N.Y. 2003) ....................................................................... 3

Kaminsky v. Abrams,
    41 F.R.D. 168 (D.C.N.Y. 1966) ................................................................................. 4

Mississippi Valley Barge Line Co. v. U.S.,
    273 F. Supp. 1 (E.D.Mo. 1967) .............................................................................. 3, 4

New York State Association for Retarded Children, Inc. v. Carey,
    483 F. Supp. 440 (E.D.N.Y. 1977) ....................................................................... 4, 13

State of Illinois v. United States Department of Health and Human Services,
    772 F.2d 329 (7th Cir. 1985) ..................................................................................... 5

United States v. Louisiana,
    354 U.S. 515 (1957) ................................................................................................... 3

## DOCKETED CASES

Gates v. Deukmejian,
    United States District Court, Eastern District of California
    Case No. CIV-S-87-1636 ............................................................................................ 6

In Re Osburn,
    Sacramento County Superior Court Case No 05F09064 ........................................ 13

United States v. State of California et al.,
    United States District Court, Central District of California
    (Western Division, Los Angeles) Case No. 2:06-CV-02667-GPS ......................... 13

## FEDERAL STATUTES AND RULES

All Writs Act, 28 U.S.C. § 1651 ......................................................................................5

Federal Rules of Civil Procedure

    Rule 21 ...............................................................................................................3
    Rule 65 ...............................................................................................................5

## CALIFORNIA STATUTES

Penal Code § 2684 ...............................................................................................2, 12, 13

Penal Code § 2974 ......................................................................................................2, 13

Welfare and Institutions Code § 4000 .............................................................................5

# INTRODUCTION

The resistance of the California Department of Mental Health ("DMH") to the efforts of the California Department of Corrections and Rehabilitation ("the CDCR"), the plaintiffs, and the Special Master in this case to provide constitutionally-adequate access to inpatient care and treatment for mentally ill prisoners in state custody is well-established. See 15th Report of the Special Master at 383-388. DMH has long regarded the problems of its sister state agency as someone else's problem, and has avoided providing care to mentally ill CDCR inmates, even when it has known that there is no other source for such care and treatment. *Id.*

In response to this long and well-documented history of delaying and impeding the remedy in the *Coleman* case, plaintiffs asked the Court to add DMH as a defendant in this action in April of this year. 4/21/06 Plaintiffs' Objections to Defendants' Inpatient, MHCB and EOP bed plans at 6:14-15 (request to add DMH Director Mayberg as a defendant) and at 9, 11-17 (describing the history of DMH interference with the remedy in this case). A hearing was held on the issue of access to DMH inpatient care for CDCR inmates on April 26-27, 2006, at which the issue of adding DMH as a party was discussed. See 4/26/06 Hearing Transcript at 56-97. On May 2, 2005, the Court issued an order to show cause if there is any reason why DMH Director Stephen W. Mayberg Ph.D. should not be added as a party. 5/2/06 Order at ¶ 1. On May 17, 2006, DMH Director Mayberg filed a response to the Court's Order to Show Cause. See 5/17/06 Response to OSC Re: Joinder of Stephen Mayberg, Director of Department of Mental Health, as a Defendant ("Response to OSC"). In an Order dated May 25, 2006, the Court gave plaintiffs 15-days in which to respond to the DMH filing. 5/25/06 Order at ¶ 4.

In many different respects, the DMH response to the Court's Order to Show Cause actually underscores the need to add DMH as a defendant:

- DMH concedes that the Court is within its rights in adding DMH as a party in order to ensure that the remedial measures in the *Coleman* case are successfully implemented. See Response to OSC at 3:5-7.

- DMH argues that it should not be made a party because it is only a contractor with respect to CDCR inmates and "functions in a support role" with respect to providing care to CDCR inmates and that the CDCR "manages the resources provided by contract with DMH." *Id.* at 4:23-5:15. Yet it is precisely this attitude of DMH that the Special Master has identified as interfering with a prompt and effective remedy in *Coleman*. See 15th Report of the Special Master at 385 ("DMH has long operated under the protective assumption that it has no obligation to provide mental health services for CDCR inmates who might pose a danger to DMH programs and staff, although it knew well that it was the only source of inpatient care available to the CDCR.") DMH must be added as a party in order to ensure that it treats the provision of mental health care to CDCR inmates as a central part of its mission that is on an equal footing with its other statutory obligations and missions.

- DMH argues that it should not be made a defendant because, unlike other areas where DMH "is obligated to meet its statutory responsibility to provide care to civil and judicial commitments," with respect to CDCR inmates, "DMH lacks statutory responsibility to provide mental health care." Response to OSC at 6:23 and 6:3. This argument ignores the reality that DMH is, in fact, required by statute to provide care to CDCR inmates. See Cal. Penal Code §§ 2684, 2974. Once again, it is precisely this attitude of DMH that requires the addition of DMH as a party.

- DMH argues that it is now subject to an order from the Sacramento County Superior Court concerning prisoners found incompetent to stand trial and that "DMH's failure to receive civil and judicial commitments due to lack of bed space has and will likely lead to court orders from other jurisdictions." Response to OSC at 7:17-18. Far from establishing that DMH should not be made a party, this argument makes clear that DMH *must* be made a party here because DMH is currently subject to competing demands of other courts and will likely be

subjected to additional competing court orders in the near future. See *id*. If this Court does not make DMH a defendant directly subject to its orders, other courts will be more likely to order that the resources being developed to meet the needs of the *Coleman* class be used for other purposes.

The remedy of access to intermediate and acute inpatient care is a critical part of the overall mental health care remedy in this case. Inpatient care is a lifeline for the most critically mentally ill CDCR inmates. And yet, currently, there is a waiting list of more than 120 inmates for intermediate inpatient care. See 5/2/06 Order at ¶ 9. The men and women who need inpatient care are among the sickest in the CDCR, and the potential consequences of denial of care are severe. As explained below, the current waiting list is the product of a series of joint failures in planning and cooperation by DMH and the CDCR. To begin to break the pattern of continuous delays and broken promises, the Court should join DMH as a party.

## ARGUMENT

### I. THE COURT HAS THE POWER TO ADD DMH AS A PARTY AND DMH WILL NOT SUFFER ANY PREJUDICE BY BEING SO ADDED

There can be no question as to the power of this Court to exercise its discretion under Federal Rule of Civil Procedure 21 and the All Writs Act to order that DMH be made a party to this action. Fed R. Civ. P. 21; 28 U.S.C. § 1651 (All Writs Act); *Ford v. Air Line Pilots Association International*, 268 F.Supp.2d 271 (E.D.N.Y. 2003) (Rule 21 "grants the court broad discretion to permit a change in the parties at any stage of a litigation."); see *United States v. Louisiana*, 354 U.S. 515, 516 (1957) (allowing addition of parties under Federal Rule of Civil Procedure 21 where "the just, orderly, and effective determination of [the] issues requires that they be adjudicated in proceeding in which all interested parties are before the Court"). It is well established that federal courts are vested with "the inherent and statutory power [under the All Writs Act, 28 U.S.C. § 1651] and authority to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise." *Mississippi Valley*

*Barge Line Co. v. U.S.*, 273 F.Supp. 1, 6 (E.D.Mo. 1967); see *id.* ("This rule applies whether or not the person charged with the violation of the judgment or decree was originally party defendants to the action" where the third party had actual knowledge of the court decree and was acting in concert with the defendant).

Nor does adding a party for the purpose of effecting a remedy require re-litigation of the merits of the case. The case *New York State Association for Retarded Children, Inc. v. Carey*, 483 F. Supp. 440 (E.D.N.Y. 1977), is instructive on this point. The case involved a federal civil rights action on behalf of a group of developmentally disabled children living in an institution run by the defendant New York State Department of Mental Hygiene. *Carey*, 483 F. Supp. at 442. After the parties entered into a Consent Decree, the defendants sought to add the employees' union at the institution as a defendant. *Id.* The court allowed the union to be joined to facilitate the remedy in the case, explaining that a "number of cases have held that ancillary jurisdiction to take acts to effectuate a prior judgment exists over new parties who are interfering with the decree." *Id.* at 446 (citing *Board of Education v. York*, 429 F.2d 66 (10th Cir. 1970), *Castro v. Beecher*, 386 F.Supp. 1281 (D. Mass. 1975), and *Mississippi Valley Barge Line Co. v. US*, 273 F. Supp. 1 (E.D. Mo. 1967) ). The union in *Carey* resisted being joined in the case, arguing that "if it is drawn into this action, it must be able to litigate the issues which the present parties have long since settled." *Id.* at 443. However, the court rejected the argument, noting that there was nothing to re-litigate, and adding that re-litigation "would make no sense. Rule 21 permits the court to add parties 'at any stage of the action and on such terms as are just.' There is no reason to allow the union to litigate that which has already been adjudicated." *Id.* at 443.

This is also true here, where there is no dispute over the duty of DMH to provide inpatient mental health care to CDCR inmate-patients, and where there will be no prejudice to DMH by adding them as a defendant. See *Kaminsky v. Abrams*, 41 F.R.D. 168, 171 (D.C.N.Y. 1966) (allowing addition of new defendants where failure to add the defendants would result in a multiplicity of litigation and defendants failed to make a sufficient showing of prejudice). Significantly, the Response filed by DMH does not establish any prejudice to DMH if it were

to be added as a party. See Response to OSC. DMH has clearly failed to meet its burden on this critical point.

There are a number of affirmative reasons why DMH will not suffer any prejudice from being added as a party.

First, the Governor of California, who is directly responsible for the management and operation of the Department of Mental Health, has always been a defendant in this case and remains a defendant. The Governor oversees DMH and has the authority to direct DMH to take any actions necessary to ensure compliance in this case. California Constitution, Art. 5, §§ 1, 4, 6; Cal. Welfare and Institutions Code § 4000. As agents and employees of the Governor, it is clear that the orders in this case are already binding on DMH pursuant to Federal Rule of Civil Procedure 65 and under the All Writs Act. See Fed. R. Civ. P. 65(d) ("*Every order granting an injunction and every restraining order . . . is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.*"); see also 28 U.S.C. § 1651. Federal Rule of Civil Procedure 65 "is a codification of the common law rule allowing a non-party to be held in contempt for violating the terms of an injunction when a non-party is legally identified with the defendants or when the non-party aids or abets a violation of an injunction." *State of Illinois v. United States Dept. of Health and Human Services*, 772 F.2d 329, 332 (7th Cir. 1985).

Although it is already bound by the Court's orders, as discussed below, DMH has frequently operated as though it was not bound by the orders in this case. In a sense, adding DMH as a defendant directly will increase accountability and ease the administration of the remedy in this case, by bringing a party that is critical to the remedy to the table directly. Adding DMH will also allow the Court to avoid entangling the Governor of the State of California personally in protracted day-to-day enforcement proceedings.

Second, DMH will not be prejudiced because DMH has always had notice of the orders in this case and has been able to closely monitor the activity in this lawsuit relevant to inpatient care. DMH has always been an active, if insufficiently cooperative, participant in both the

*Gates v. Deukmejian* and the *Coleman* lawsuit. Indeed, shortly before the *Coleman* case was tried, DMH signed a Consent Decree as a defendant in the *Gates* lawsuit acknowledging its Constitutional duty to provide access to inpatient care to mentally ill CDCR prisoners. 12/8/89 Consent Decree in *Gates v. Deukmejian*, E.D. Case No S-87-1636 LKK-JFM. Inpatient issues have always been part of the *Coleman* case -- they were litigated during the trial of this case and were specifically addressed in the Court's 1995 decision. *Coleman v. Wilson*, 912 F.Supp. 1282, 1308-09 (E.D. Cal. 1995). The issue of inpatient care was also one of the major areas discussed in 1998-1999, when the parties negotiated the merger of the *Gates* case into *Coleman*. See 7/23/99 Order approving 12/24/98 Stipulation and Order Amending Plaintiff Class and Application of Remedy in Coleman. Because DMH was a party in the *Gates* case, representatives of DMH participated in the negotiations that resulted in the merger of the mental health issues from *Gates* into *Coleman*, and DMH Director Mayberg signed the Merger Agreement. See 6/10/98 Agreement of the Parties for Merger and Dismissal and Request for Hearing in *Gates v. Gomez*, at 15. The Merger Agreement provided that "mental health care at CMF will be fully integrated into the state-wide mental health delivery system which was developed under the Coleman remedial process and is monitored by Special Master Keating." 6/10/98 Agreement at ¶ 8. When *Gates* was merged into *Coleman*, a Court-approved Transition Plan remained in force at CMF and *Gates* orders remained in effect. See 2/10/00 Order; 7/23/99 Order (adopting 12/24/98 Merger Agreement). As part of the merger, the Court-supervised Transition Process covered, among other things, access to inpatient care. 2/10/00 Order at ¶ K ("The special master shall prepare and file by April 1, 2000 an interim assessment of defendants' need for inpatient beds. The *court will retain jurisdiction over intermediate inpatient care* until the defendants complete their study and submit an acceptable proposal for meeting the indicated need for inpatient beds") (emphasis supplied), and ¶ L ("During the transition period, the special master shall also monitor closely custody rejections of transfers into CMF's emerging intermediate treatment program (ITP), with its continuing day treatment program (DTP) component, and from CMF to Atascadero State Hospital (ASH).")

At the end of the transition period, many remaining remedial elements of the *Gates* case and of the Transition Plan were dismissed. 4/9/02 Order. However, in its April 9, 2002 Order, this Court specifically retained jurisdiction over the inpatient issue from *Gates*, and thus over DMH, which was an active party defendant in the *Gates v. Deukmejian* case. 4/9/02 Order at ¶ 3 (terminating specific portions of the 2/10/00 Transition Plan Order but not terminating the key DMH provision – ¶ K – and noting that the "recommendation with respect to paragraph 2K of the February 19, 2000 Order shall henceforth be governed by the provisions of the court's March 4, 2002 order"); see March 4, 2002 Order (setting forth deadline for CDCR to complete the unmet inpatient needs bed study and for review of the same by the special master). Moreover, no order was ever entered dismissing DMH as a party. Thus, it is clear that DMH will not be prejudiced by adding them formally as a defendant here, since DMH was never formally relieved of its obligations to provide inpatient care to CDCR inmates under the *Gates* case when that case was merged into *Coleman*.

Finally, since the *Gates* merger, DMH has continued to be an active participant in these proceedings. Although, as discussed in detail below, this participation has been inadequate to effectively secure the remedy in this case, nonetheless, DMH officials have been involved in and have monitored these proceedings. See, e.g., *Curtis v. United Transportation Union*, 468 F.Supp. 966, 979 (E.D. Ark. 1980) (applying notice and opportunity to be heard due process analysis to question of adding party in remedial phase.) For example, DMH officials have frequently testified at hearings in this case. See 10/29/04 Coleman Hearing Transcript at 76-110 (DMH Deputy Director John Rodriguez), 1/14/05 Coleman Hearing Transcript at 9-14 (DMH Salinas Valley Psychiatric Program Director Victor Brewer), 4/26/06 Hearing Transcript at 56-96 (DMH Deputy Director John Rodriguez); 4/27/06 Hearing Transcript at 8-12 (DMH Deputy Director John Rodriguez). DMH officials have also had notice and an opportunity to participate in this case during numerous meetings with the Special Master and the parties over the years. As outlined in the DMH Response to the Order to Show Cause, DMH has also participated in efforts to streamline the inpatient referral process, train CDCR staff, and resolve inter-agency disputes over individual cases. See Response to OSC at 4:10-

17. This participation has been enough to give DMH ample notice of the *Coleman* proceedings, although, as detailed below, it has not been sufficient to secure a speedy and effective remedy for members of the *Coleman* class in the area of access to inpatient care.

## II. DMH'S RESISTANCE TO AND INTERFERENCE WITH THE REMEDY IN THIS CASE DEMONSTRATES THAT IT IS NECESSARY TO ADD DMH AS A PARTY.

In its 1995 decision in this case, this Court relied on defendants' admission that access to acute inpatient hospitalization was "a major problem," and evidence of "delays of up to several months in transfers to Atascadero State Hospital for inpatient hospitalization" in finding that routine delays in access to various levels of mental health care including inpatient care were unconstitutional. *Coleman v. Wilson*, 912 F.Supp. 1282, 1308-09 (E.D. Cal. 1995). Now, after many years in which defendants, the Court, the Special Master, and plaintiffs have struggled to establish an adequate remedy for this longstanding constitutional violation, it has become overwhelmingly clear that the Department of Mental Health ("DMH") is a serious obstacle to a successful remedy for the inpatient care issue, and that DMH must be formally added as a defendant.

The reluctance of DMH to participate in the solution of the problem of access to care for CDCR inmates is not new. The Special Master explained in the recently adopted Fifteenth Monitoring Report that the relationship between the CDCR and DMH has consistently been an obstacle to a successful remedy for the shortage of inpatient care beds:

> Over the past seven to eight years, CDCR and DMH have struggled to shape an inter-agency relationship that is mutually acceptable and responsive to the needs of CDCR inmates for inpatient DMH treatment and care. During much of that time, due to the lack of facilities with a level of security compatible with the custody requirements of CDCR's most volatile inmates and the obligation to protect its staff and patients from assault and intimidation, DMH has consistently refused to accept CDCR referrals to intermediate inpatient care that presented security risks. This has left the CDCR without the means to provide an intermediate inpatient level of mental health care to that portion of its Level IV population.

15th Monitoring Report of the Special Master, dated 1/13/06, at 382-383. The reluctance of DMH to participate actively in the development of the *Coleman* remedy is demonstrated by its

role in two recent inpatient bed expansion projects, one at Salinas Valley State Prison, and the second at Coalinga, each of which failed to deliver the remedy promised by DMH to the parties and the Special Master in this case.

A. **The Long Delayed and Mismanaged Project to Create 64 Intermediate Inpatient Beds at Salinas Valley State Prison**

The important role of DMH in providing for inpatient care first became apparent in this case in 1998, when defendants approached counsel for plaintiffs about a stipulation to be entered in both the *Gates* and the *Coleman* case concerning inpatient care. See 5/21/98 Stipulation and Order. In the May 21, 1998 Stipulation and Order, defendants set forth a plan to expand inpatient beds at the California Medical Facility (CMF) and to construct a new inpatient care program at Salinas Valley State Prison, in exchange for permitting defendants and DMH to provide fewer beds at Atascadero State Hospital (ASH) for CDCR inmates. *Id.* Prior to this agreement, DMH provided 412 beds at ASH for CDCR inmates; afterwards, DMH was only required to provide 200 beds (a figure that DMH later unilaterally reduced to 106 beds). *Id.* In theory, the 212 lost ASH beds would be made up for by an expansion of beds at CMF and SVSP. However, the SVSP project was badly designed and plagued by delays. Initially scheduled to open in 2001, the SVSP program finally began accepting a handful of patients in the Fall of 2003. As the Special Master explained in the Twelfth Monitoring Report:

> Since early 1998, the defendants have repeatedly insisted that their proposed DMH inpatient program at Salinas Valley State Prison (SVSP) would meet the need to provide an intermediate inpatient level of care for severely mentally ill inmates with a history of violence and personality disorders, who required enhanced, tight security often for lengthy periods of time. The presence of these often volatile inmates in CDC's PSUs and administrative segregation units reflected DMH's inability to provide intermediate inpatient care in an adequately secure facility. Repeated delays in construction delayed the opening of this unit until early 2003, when the program announced a further postponement due to the inability to recruit MTAs. . . .
>
> [¶]

> Due to the delays in the opening of the DMH/SVSP program, the rippling effects of its addition [freeing up needed space in Psychiatric Services Units or PSU programs] are unlikely to be discernable until well into 2004. This means that the full implementation of this program for just 64 inmates will have taken six years. While the program's initiation and implementation are welcome, frustration with the pace of its development is readily understandable.

12th Monitoring Report of the Special Master, dated 12/8/03, at 234-236. After years of delay, opening of the new Salinas Valley Psychiatric Program (SVPP) program was spread out over nine months to due to staffing problems. See 6/9/03 11th Monitoring Report at 264 (*"reports now suggest, as predicted by both plaintiffs' counsel and the monitor when the program's location at SVSP was initially proposed, that DMH has been unable to recruit sufficient clinical staff to operate the program fully. From the beginning, the development of this essential, and hereto fore missing, component of the defendants' MHSDS has been plagued by difficulty and delay."*)

On July 23, 2003, in response to the Eleventh Report of the Special Master, this Court ordered that the new SVPP program fill fifty percent (50%) of its capacity by November 1, 2003 and ninety percent (90%) of capacity by February 1, 2004. 7/23/03 Order at ¶¶ 2, 3. Unfortunately, to this day, DMH and the defendants have been unable to comply with the second half of this order by filling the program to 90 percent occupancy, due to a design flaw in the program:

> DMH designed a 64-bed facility that included 32 single cells and eight dormitory-style rooms with four beds each. Neither of these decisions was shared with the court, and perhaps not with CDCR, until it was a *fait accompli*. Originally scheduled to be operational in 2001, the SVPP program came on line in late 2003; due to its design problems, it has never been fully occupied.

15th Report of the Special Master at 383 (emphasis supplied). The Court needs to add DMH as a party in order to ensure that this lack of timely and essential communication with the Special Master and the Court about inpatient bed expansion projects does not re-occur in the future, and to ensure that the development of the new DMH facilities planned for opening in June of 2011 is closely supervised so that unnecessary delays are avoided.

B. **The Coalinga State Hospital Project**

A second major example of the role of DMH in frustrating prompt implementation of the inpatient care remedy in this case involves the new Coalinga State Hospital (CSH). Beginning with the delays in the SVPP project in 2001, DMH consistently offered its Coalinga Hospital as a solution to the inpatient capacity problems that were causing severe problems for the CDCR. Once again, the story is set forth in undisputed portions of the reports of the Special Master:

> [D]uring the past seven or eight years, DMH has insisted repeated, publicly and privately, its willingness to accept Level IV CDCR inmates. In fact, DMH has accepted only a limited number of Level IV CDCR inmates, almost all of whom have no history of violence or predation. . . . During that same period, DMH has also repeatedly held out to CDCR, and the court, the prospect that the new DMH facility with 1,500 beds under construction at Coalinga and currently accepting patients would allow DMH to accommodate more Level IV CDCR inmates. This prospect also turned out to be illusory. Coalinga may be able to absorb some CDCR inmates in need of intermediate inpatient care, but the facility is not much more secure than Atascadero State Hospital (ASH), where most intermediate inpatient care is presently provided by DMH to CDCR inmates. DMH did not share information about the security limitations of its Coalinga facility with CDCR until June 2004 or the court until even later. Coalinga, absent a promptly executed physical retrofit to enhance security, offers no solutions to CDCR's need for sufficiently secure space within which to provide intermediate inpatient care to Level IV violence-prone inmates.

15th Report at 383-384. The Court must make DMH a party to this action in order to ensure that this type of evasion and failure to share critical information with the Special Master and the Court does not continue.

The subsequent history of the Coalinga project underscores this point. In October of 2004, DMH Deputy Director Rodriguez told this Court that he was confident that DMH would begin to provide inpatient care to CDCR inmates at Coalinga State Hospital in September 2005. 10/29/04 Reporter's Transcript at 45 ("When we open in September, our plan would be to move initially 200 sexual predators from Atascadero . . . and provide an additional 50 ICF beds for CDC because of their need."). As was the case with the SVSP program, when DMH opened CSH in September of 2005, it did so on an extremely limited basis due to problems

-11-

obtaining staff, and the program had not accepted any CDCR inmates as of April 2006. 4/26/06 Reporter's Transcript at 65 (explaining that Coalinga was unable to accept any of the promised 50 CDCR inmate-patients due to staffing problems, although Coalinga had accepted 300 non-CDCR patients as of April 2006); see *id.* at 69-70 (contending that the 50 beds at CSH are not needed); 5/2/06 Order at ¶ 10 (requiring that 25 intermediate inpatient beds be made available immediately for CDCR inmates and another 25 beds within 30 days).

This history recounted above makes clear that over the last eight years, the lack of involvement and serious commitment from DMH has been a powerful barrier that has impeded the effort of the parties to develop the remedy of prompt access to intermediate inpatient care. The most recent waiting list produced by defendants for Level IV intermediate care beds shows that the defendants have 112 inmates waiting for placement in such beds, even with 8 of the new 36 ICF beds expansion at SVSP occupied. See Defendants 5/26/06 Report at 1. The time has come to require more involvement and more commitment from DMH to curing the Constitutional violations of the State of California in this critical area of inmate mental health care. The best way to accomplish this goal is to make DMH a party subject to the direct supervision by the Court and direct involvement with the Special Master, the plaintiffs, and the CDCR in developing an effective and prompt remedy for the problem of access to intermediate inpatient care.

### III.  DMH MUST BE ADDED AS A PARTY BECAUSE DMH DOES NOT CONSIDER ITS MISSION OF PROVIDING TREATMENT TO CDCR INMATES TO BE OF EQUAL WEIGHT WITH ITS OTHER DUTIES

As noted in the introduction above, several aspects of DMH's Response to the Court's Order to Show Cause are themselves evidence that DMH does not appropriately prioritize its duty to provide care and treatment to CDCR inmates.

First, it is clear that DMH does not consider its statutory duty under California Penal Code Section 2684 to be of equal weight to its other statutory duties. <u>Compare</u> Response to OSC at 6:1-2 ("Director Mayberg is not properly named because he has no statutory responsibility to provide mental health care to CDCR inmates") and at 7:8-9 ("DMH must admit and treat individuals who are committed to the state hospitals by the courts under

specific statutes"), with Cal. Penal Code § 2684 (providing for transfers of CDCR inmates in need of mental health care to Department of Mental Health Hospitals for treatment) and Cal. Penal Code § 2974 (providing for placement of CDCR inmates or parolees into the Department of Mental Health pursuant to the Lanterman-Petris-Short Act). DMH must be made a party to this case in order to ensure that they acknowledge their statutory responsibilities to provide care to CDCR inmates.

Second, it is clear that DMH is currently under the supervision of several other courts, including the Sacramento County Superior Court, and the Federal District Court for the Central District of California in Los Angeles, presenting potential problems of administration and competing care priorities that are best addressed by making DMH a party to this action. See Response to OSC at 6:9-10 (Discussing CRIPA case, *United States v. State of California et al.*, Central District of California (Western Division, Los Angeles) Case No. 2:06-CV-02667-GPS) and at 7:18-21 and Exhibit 1 (Discussing 4/26/06 Order in *In Re Osburn*, Sacramento County Superior Court Case No 05F09064); see also *Carey*, 483 F.Supp. at 446-447 (adding defendants in part because of the existence of state court proceedings that could interfere with remedy). Moreover, DMH states in its brief that the current shortage of bed space in DMH hospitals for various categories of commitments "will likely lead to court orders from other jurisdictions." Response to OSC at 7:18. DMH suggests in response to these pending lawsuits that "[n]aming director Mayberg as a defendant in [*Coleman*] would overlook the statutory obligations of DMH to an entirely different class of patients." Response to OSC at 7:6-7. Yet it is not this Court or plaintiffs' counsel who are trying to play one class of persons needing mental health care off against another – it is DMH itself. DMH says it "cannot refuse or decline to admit patients sent to state hospitals by state courts under these statutory provisions," and yet it feels free to refuse to admit CDCR inmates despite substantially similar statutory provisions and the overriding imperatives of the US Constitution. See Response to OSC at 7:15-16. As the Special Master has explained, for too long, the importance of the obligation to provide inpatient care for CDCR inmates who need such care "has simply disappeared in the crack between he false assumptions of CDCR and DMH." 15th Report at

-13-
PLAINTIFFS' RESPONSE TO STEPHEN MAYBERG'S MAY 17, 2006 RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE, NO.: CIV S 90-0520 LKK-JFM

385. The Court must act now to ensure that DMH treats its obligation to provide care to prisoners as an imperative.

## CONCLUSION

For all of the reasons set forth above, the Court should join DMH as a party-defendant in this action.

Dated: June 8, 2006

Respectfully submitted,

*Thomas Nolan*
Thomas Nolan
Rosen, Bien & Asaro
Attorneys for Plaintiffs