PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' FORMAL ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

    I.    THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY HERE. .................................................................................................... 5

    II.    EVEN IF THE PRIVILEGE APPLIES HERE, THE BALANCE OF INTERESTS FAVORS DISCLOSURE OF THE BUDGET CHANGE PROPOSAL ............................................................................................... 10

        A.    The Interest Of The Special Master And The Plaintiff Class In The Production Of The Relevant Documents Is Extremely Substantial .............................................................................................. 10

        B.    Defendants Have Failed To Adequately Comply With The Procedural Requirements For Asserting The Official Information Privilege ................................................................................. 12

        C.    The Balancing Of Interests Favors Disclosure Of The Relevant Document ............................................................................................... 13

        D.    Defendants Have Not Established The Necessity Of An In Camera Review Of The Relevant Document, Or The Need For Filing It Under Seal ..................................................................... 15

CONCLUSION ................................................................................................................ 16

## TABLE OF CONTENTS

### FEDERAL CASES

*Coastal States Gas Corp v. Department of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) .............................................................................. 5, 6, 7

*Coleman v. Wilson,*
  912 F. Supp. 1282 (E.D. Ca. 1995) .......................................................................... *passim*

*Department of Interior v. Klamath Wupa,*
  532 U.S. 1 (2001) ........................................................................................................ 6

*EPA v. Mink,*
  410 U.S. 73 (1973) ..................................................................................................... 8

*FTC v. Warner Communications,*
  742 F.2d 1156 (9th Cir. 1984) ................................................................................. 12

*Franklin Savings Association v. Ryan,*
  922 F.2d 209 (4th Cir. 1991) ..................................................................................... 5

*Kelley v. City of San Jose,*
  114 F.R.D. 653 (N.D. Cal. 1987) ................................................................. 11, 12, 14

*Miller v. Pancucci,*
  141 F.R.D. 292 (C.D. Cal. 1992) ...................................................................... *passim*

*NLRB v. Sears Roebuck and Co.,*
  421 U.S. 132 (1975) .................................................................................................. 6

*Sanchez v. City of Santa Ana,*
  936 F.2d 1027 (9th Cir. 1990) .................................................................................. 6

*Spallone v. United States,*
  493 U.S. 265 (1990) .................................................................................................. 2

*State of Illinois v. United States Department of Health and Human Services,*
  772 F.2d 329 (7th Cir. 1985) ..................................................................................... 2

*United States v. Hall,*
  472 F.2d 261 (5th Cir. 1972) ............................................................................... 2, 11

*United States v. Morgan,*
  313 U.S. 409 (1941) .................................................................................................. 5

*United States v. Nixon,*
  418 U.S. 683 (1974) .................................................................................................. 1

*United States v. Zolin,*
  491 U.S. 554 (1989) ................................................................................................ 15

## FEDERAL STATUTES

Federal Rules of Civil Procedure
    53(d) .................................................................................................................. 9
    65(d) .................................................................................................................. 2

## CALIFORNIA STATUTES

California Government Code
    §§ 6250 *et seq* ................................................................................................ 15

California Evidence Code
    § 911 ................................................................................................................ 15
    § 1040(b) ......................................................................................................... 15

## INTRODUCTION

At bottom, this dispute is about the inherent power of the Court and its Special Master to implement the long overdue mental health staffing remedy for the ongoing federal constitutional violation of inadequate mental health care to the plaintiff class. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1306-1308 (E.D. Ca. 1995) ("The overwhelming weight of the evidence before this court demonstrates that the California Department of Corrections is significantly and chronically understaffed in the area of mental health care services"). The budget request at issue may provide unique and indispensable evidence of what specific mental health staffing is required to comply with this Court's March 3, 2006 Order to immediately implement the revised Program Guide, the remedy for the constitutional violation. The budget request does not involve a collaborative inter-agency decision that would even qualify under the deliberative process privilege. Rather, the document sets forth the final, independent decision of the California Department of Corrections and Rehabilitation (CDCR). Because it reflects a final agency decision, this budget request is not protected by the deliberative process privilege.

Moreover, beyond the narrow issue of the privilege defendants have improperly asserted in connection with this CDCR decision, this dispute also concerns evidence of a second decision: that of the Department of Finance (DOF) to refuse to fund the requested positions, thereby obstructing compliance with the orders of this Court. The conduct of the DOF in denying the CDCR's request is improper interference with the Court's orders, and is evidence of contempt of court. Far from raising lofty issues of federalism and deliberative privilege, this dispute raises the fundamental issue of the power of the federal courts to enforce the law of the land. See *United States v. Nixon*, 418 U.S. 683, 713 (1974) ("The generalized assertion of privilege must yield to the demonstrated, specific need for evidence"). The defendants have previously been ordered by this Court to *immediately* implement the new Program Guide. See 3/3/06 Court Order at ¶ 1 ("The court hereby approves the undisputed provisions of the January 2006 Revised Program Guide, and orders defendants to immediately implement all such provisions"). By rejecting the CDCR staffing request, the Department of Finance has

interfered with the Court's order. The Director of the Department of Finance is a subordinate of the Governor, and is therefore bound by the orders in this case. See Fed. R. Civ. P. 65(d) ("*Every order granting an injunction and every restraining order . . . is binding only u on the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise*").[1] The Court has the "inherent power . . . to protect its ability to render a binding judgment." *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972).

The documents that defendants are refusing to produce are necessary to determine not only what, in the CDCR's expert opinion, is necessary to comply with the March 3, 2006 Order, but also, who, at the Department of Finance or in the Governor's Office, is personally responsible for the decision to exclude the necessary funding request from the Governor's May Revise and thus from the 2006-07 State Budget. State officials responsible for the continued constitutional violations and who have the power to implement the remedy are hiding behind the convenient walls of anonymity that the slow-moving bureaucratic process provides. This Court has previously made clear that it will not accept "business as usual" in the face of these life-threatening constitutional violations. The individual state officials responsible for these decisions must be identified and brought before the Court. They are personally responsible and must be brought to task.

## BACKGROUND

This dispute arose, in part, as a result of a party admission during a conference call on May 14, 2006, in which plaintiffs' counsel, defendants and the Special Master participated.

---

[1] Federal Rule of Civil Procedure 65(d) has long been held to be a codification of "the common law rule allowing a non-party to be held in contempt for violating the terms of an injunction when a non-party is legally identified with the defendants or when the non-party aids or abets a violation of an injunction." *State of Illinois v. United States Dept. of Health and Human Svcs*, 772 F.2d 329, 332 (7th Cir. 1985). See *Spallone v. United States*, 493 U.S. 265, 276 (1990) (District Courts "have inherent power to enforce compliance with lawful orders through civil contempt.").

During that call, plaintiffs' counsel asked defendants to confirm that they had obtained the staffing necessary to comply with the Court's March 3, 2006 Order to implement the revised Program Guide. Declaration of Thomas Nolan in Support of Plaintiffs' Reply Regarding Defendants' Formal Assertion of the Deliberative Process Privilege ("Nolan Dec.") at ¶ 2. In response, defendants indicated that the CDCR had in fact sought additional staffing in order to implement the revised Program Guide, but that the staffing request had been rejected by the Department of Finance. *Id.* Both plaintiffs and the Special Master requested that defendants provide copies of the requested documents. *Id.* Defendants later refused. Hence the present dispute.

For years, the CDCR has delayed obtaining funding for the clinical positions necessary to provide appropriate mental health care. Last year, defendants failed to request necessary staffing, using the excuse that the Court had not yet issued an order requiring the implementation of the revised Program Guide. See Nolan Dec. ¶ 3, Ex. A at 41. In June of 2005, defendants provided plaintiffs and the Special Master with a copy of their Spring Finance Letter, Fiscal Year 2005-06, which sought funding for augmented clinical staffing but only for Corcoran State Prison. See Nolan Dec. ¶ 3, Ex. A. This 2005 Finance Letter asked for $4.1 million in funding to create 51.25 new Mental Health positions at Corcoran State Prison, which was required by a Corcoran specific Court Order. *Id.* The Finance Letter was approved and funded (although Corcoran has not been able to fill the positions!) Nolan Dec. ¶ 3. However, more significantly, the 2005 Finance Letter also provided a detailed description of an "Alternative A" approach which was neither requested nor funded. Nolan Dec. Ex. A at 40-41. Under the "Alternative A" approach, the state would fund a broader staffing package to fully implement the revised Program Guide. *Id.* This approach would require an additional 526 permanent field positions system-wide in 2005, along with another 296.1 permanent field positions in 2006-2007. Nolan Dec. Ex. A at 40-41. In a discussion of the "pros" of this approach, the letter stated:

> This alternative would provide compliance with policies and procedures contained in the revised MHSDS program guides, which were negotiated with all parties in the *Coleman v.*

> *Schwarzenegger* court case. This is the most likely alternative to lead to final exit of the *Coleman* case and reduction of legal costs associated with this case within the next two years.

*Id* at 41. This funding initiative and a second alternative approach which would have funded 50% of the needed positions were both considered and rejected "due to the fact that the MHSDS Program Guides have not received final court approval." *Id.* at 41, 42. In large part because of this excuse, the Special Master, plaintiffs and defendants sought and received the Court's order requiring defendants to immediately implement the new Program Guide on March 3, 2006, well before the deadline for the 2006-07 May Revise. Nolan Dec. ¶ 3.

Last year's Finance Letter is relevant to the present dispute for two reasons: First, it shows that defendants' proffered interest in keeping the rejected budget request secret is spurious, since last year the defendants freely disclosed detailed information about an extremely similar staffing request that was rejected because of the absence of an order to implement the new Program Guide. Second, it demonstrates the importance of the requested documents to plaintiffs, the Special Master and the Court. The staffing remedy at issue has been delayed for an entire year while the parties finalized the Program Guide; there is no justification for delaying the critical staffing package for yet another year. Nolan Dec. ¶ 3.

On May 25, 2006, this Court ordered a report from the Special Master within seven days on "the status and sufficiency of the defendants' budget requests for staffing augmentation necessary to implement the court-approved provisions of the revised Program Guide." 5/25/06 Order at ¶ 5. The Court has wisely delayed this report while the present dispute over the deliberative process is pending. 5/30/06 Order at ¶ 3. The Special Master must be given access to the relevant documents in order to respond meaningfully to the Court's May 25, 2005 Order.

The importance of the missing document is heightened by recent signals that defendants are backing away from a prior commitment to complete a new staffing workload study during the next six months in order to revise the staffing ratios attached to the Program Guide. In their April 7, 2006 Letter to Special Master Keating setting forth a timetable for implementing various aspects of the revised Program Guide, defendants promised to finish a workload and

-4-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' FORMAL ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE, NO.: CIV S 90-0520 LKK-JFM

efficiency study and "develop any needed adjustments in preparation for the next budget cycle" by December 2006. Nolan Dec. ¶ 4, Ex. B, at 3. In their June 2, 2006 Status Conference Statement, defendants backed away from this commitment, stating that "*a contract for the study is necessary. Once the contract is completed, Defendants will provide Plaintiffs with the completion date of that study.*" Nolan Dec. ¶ 7, Ex. D (6/2/06 Defendants' Status Conference Statement) at 3:1-3.

Thus the "game" of postponing indefinitely into the future the allocation of the necessary resources to fully staff the mental health delivery system continues unabated. Defendants skipped the 2005-6 Budget Year because of the lack of a Court Order. Defendants are now trying to skip 2006-7 Budget Year despite the existence of a Court Order. Defendants are already setting up the Court for missing the 2007-8 Budget Year by delaying the workload study. The "game" is up. People are dying. Defendants' delay tactics must be halted now.

## ARGUMENT

### I.   THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY HERE.

The deliberative process privilege is a conditional federal common law privilege that is designed to protect a government decision-maker from being compelled to testify about his or her mental processes in reaching an administrative decision "including the manner and extent of his study of the record and his consultation with subordinates." *Franklin Savings Association v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991) (quoting from *United States v. Morgan*, 313 U.S. 409, 421-22 (1941)). The rule also applies to pre-decisional documents and memorandum discussing or debating an agency decision. *Id.* The rule was developed to protect the deliberative, quasi-judicial administrative rule-making process from outside interference. *Coastal States Gas Corp v. Department of Energy*, 617 F.2d 854, 866-868 (D.C. Cir. 1980). In deciding whether the rule applies, courts "look to whether the document is 'predecisional' -- whether it was generated before the adoption of an agency policy -- and

whether it is 'deliberative' -- whether it reflects the give-and-take of the consultative process." *Id.* at 866.[2]

The rule overlaps somewhat with the related official information privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) ("Federal common law recognizes a qualified privilege for official information"). Both privileges are conditional and can be overcome by a strong showing of relevance and need, or by a failure of the party asserting the privilege to establish that a balancing of the competing interests favors non-disclosure. *Id.* at 1033-34 ("To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery"). Because of a strong federal policy in favor of disclosure, courts construe these exemptions narrowly: "These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act. Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Department of Interior v. Klamath Wupa*, 532 U.S. 1, 7-8 (2001).

The privilege does not apply here for many reasons:

First, the privilege does not apply because the document in question is not "pre-decisional" -- the document in question is a final decision of the CDCR, a state agency, to seek funding for staffing augmentations necessary to implement this Court's March 3, 2006 Order. See *Coastal States, supra*, 617 F.2d at 866 ("documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position"). The final CDCR budget request may in some respects be a predicate to the later decision made by the Department of Finance or the Governor to reject the request, but that is irrelevant for the

---

[2] See *NLRB v. Sears Roebuck and Co.*, 421 U.S. 132, 151 (1975) ("Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decision maker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached.").

purposes of the privilege because the documents do not reflect the thinking of the Governor or of the Department of Finance with respect to the decision. The privilege log does indicate that the first document has some notes in the margins from Department of Finance staff. See Genest Dec. Ex A. (Privilege Log) at 1. At best, these notes are the only "pre-decisional" aspects of the documents. The relevant request of the Special Master to produce the documents was made to the CDCR. See Nolan Dec. ¶ 2. Presumably, the CDCR has retained a copy of the relevant document that does not include any notes in the margins from DOF staff members. The relevant budget change proposal represents the final decision of the CDCR with respect to this issue. Any other interpretation would effectively insulate all agency decisions from public review. See *Coastal States* at 867 ("A strong theme of our opinions has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealing with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'")

Second, the privilege does not apply here because the requested documents are not of a deliberative nature, as defendants' privilege log makes clear. See Genest Dec. Ex. A. Deliberative documents are documents that "reflect the give and take of the consultative process." *Coastal States*, 617 F.2d at 866. As the Court explained in *Coastal States*: "To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Id.* The relevant documents do not reflect any candid, personal, or deliberative views of the Department of Finance, the agency on whose behalf the defendants have asserted the privilege. Nor do they contain the internal deliberative views of the CDCR, since they represent a final agency policy.

Moreover, much of the material that defendants assert is privileged in their privilege log is clearly factual material to which the deliberative process and/or official information privileges do not apply. The Supreme Court has clearly established that the privilege only applies to the "opinion" or "recommendatory" portions of such non-final documents, and not to

factual information contained in the document. *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available" notwithstanding the assertion of privilege). The following items, each of which defendant have claimed the deliberative process privilege in connection with, are clearly factual (see Defendants' Privilege Log, Exhibit A to Genest Declaration):

| | |
|---|---|
| Tab 2 | Summary of Program Guide Positions, Feasible Alternative A, Proposed Positions in Dollars |
| Tab 4 | 1997 v. 2006 Revised Program Guide Workload Requirements (including time analysis, comparison of resources needed, proposed resources for SHU/CCCMS and ASU/CCCMS, GP EOP) |
| Tab 5 | Workload Analysis |
| Tab 10 | Justification of Proposed Custody Positions |
| Tab 11 | Assessment of Proposed Upgrade of LPT to Sr. LPT position |
| Tab 12 | Mental Health OHU: Matrix Analyzing Staffing of Mental Health Treatment Program Staffing Per Title 22 |
| Tab 14 | Three Grids Providing Summaries of Equipment Costs |
| Tab 15 | Summary of Headquarters Positions and Dollars, Feasible Alternative A |
| Tab 16 | Mental Health Program Proposed Headquarters Organizational Chart |
| Tab 17 | Statement of Proposed Quality Management Assistance Program Workload Per 2006 Revised Program Guide |
| Tab 18 | Utilization Management Review Unit, Proposed Nurse Workload Analysis |
| Tab 20 | Proposed Psychological Testing Unit Workload Analysis |
| Tab 21 | Proposed Headquarters Capital Outlay, Office Requirements |
| Tab 22 | Draft Duty Statements for Proposed Positions |
| Tab 23 | Staffing Models for Other States, Allocation Comparison |
| Tab 24 | American Association for Correctional Psychology, Staffing Allocation Comparison |
| Tab 28 | Workload Study sample |

|   |   |
|---|---|
| Tab 30 | Summary of Psychiatry Vacancy Rate Strategies, Feasible Alternative A |
| Tab 33 | Salary Survey Report, Psychiatrists, 2/1/06 |
| Tab 34 | Economic Institute Salary Information |
| Tab 36 | Costing Date for Hiring Above Minimum Proposal for Psychiatrists and other Mental Health Professionals |
| Tab 37 | Salary proposals for various categories of clinicians and charts comparing salaries at various CDCR and DMH institutions (even if the draft proposals were privileged, the salary comparison charts appear purely factual). |
| Tab 38 | Coleman Fee Payments for Monitoring and Attorney's Fees |

All of these documents are purely factual in nature, and they should all be produced. Defendants appear to concede as much. See Defendants 6/2/06 Memo at 5:3-5 ("Defendants recognize that this Court may find these fact-based attachments to be severable from the privileged budget change proposal and so order their disclosure.").

Moreover, some of these documents for which the privilege is claimed, including Tabs 23 and 24 above, may have been already produced by defendants as part of the package of budget document provided to Special Master Keating and plaintiffs by defendants on May 22, 2006. Nolan Dec. ¶ 5, Ex. C (attaching documents from May 22, 2006 package that appear to be Tabs 23 and 24 above). The law is clear that the privilege cannot be asserted with respect to documents that have not been kept confidential. *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Ca. 1992).

Third, the rule does not apply here because the relevant document is being sought by the Special Master. Defendants do not cite a single case, and plaintiff's counsel are aware of none, where the privilege has been held as a bar to discovery by a Special Master. Special Master Keating, like all special masters, has been vested with the equitable powers of the appointing court. See Fed. R. Civ. P. 53(d) (Special Master "may exercise the power of the appointing court to compel, take, and record evidence"); see 12/11/95 Order of Reference at ¶ B.5 (the special master shall have power "to have unlimited access to the records, files and papers maintained by defendants to the extent that such access is related to the performance of the

special master's duties under the order of reference"). The current situation is made even more remarkable in that the discovery being sought by the Special Master is in fact the details of efforts by some of the defendants to comply with this Court's Order and remedy the Constitutional violation.

Fourth, the privilege does not apply here because defendants have asserted the privilege on behalf of the wrong agency. Defendants have asserted the deliberative process privilege on behalf of an agency that did not prepare the document in question. Defendants admit that the binder in question was prepared and finalized by the CDCR and forwarded to the Department of Finance. See Magnum Dec. ¶¶ 6, 10. The "interest" at stake that defendants are trying to protect may be the interest of the Department of Finance in avoiding responsibility for denying the relevant CDCR request, but any privilege associated with this document, if it existed (and it does not), would belong to the Department of Corrections and Rehabilitation.

## II. EVEN IF THE PRIVILEGE APPLIES HERE, THE BALANCE OF INTERESTS FAVORS DISCLOSURE OF THE BUDGET CHANGE PROPOSAL.

Even if the Court determines that the privilege does apply in this instance, it is clear that the proper application of the relevant balancing test favors disclosure in this case.

### A. The Interest Of The Special Master And The Plaintiff Class In The Production Of The Relevant Documents Is Extremely Substantial.

Although defendants have asserted the privilege against the Special Master, plaintiffs' counsel also requests access to the relevant documents in order to be able to represent the interests of the plaintiff class in securing the staffing remedy to which plaintiffs are entitled. See 12/10/96 Order of Reference at 2 ("[T]his remains an adversarial proceeding where both sides of the litigation are represented by counsel. All parties are entitled to the advice of counsel as the litigation proceeds"). A plaintiff seeking to obtain discovery against a defendant who has asserted the privilege is generally required to explain (1) the relevance of the requested information, (2) the interest of the plaintiffs that would be harmed if the information is not disclosed, (3) how the harm would occur and how extensive it would be. *Miller v. Panucci*, 141 F.R.D. 292, 301 (C.D.Ca. 1992); *Kelley v. City of San Jose*, 114 F.R.D. 653, 671

(N.D. Cal. 1987).

(1) <u>The relevance of the requested information</u>: Defendants have been ordered to "immediately implement" the revised Program Guide to remedy an ongoing federal constitutional violation. 3/3/06 Order at ¶ 1. The budget information requested by the Special Master and plaintiffs is relevant because it constitutes the plan of the defendant CDCR to implement the Court's March 3, 2006 Order. Information about steps taken by a party to comply with the Court's Order is highly relevant to the remedial proceedings before the Court, and access to such information is necessarily part of the Court's "inherent power . . . to protect its ability to render a binding judgment." *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972). Such information is also clearly relevant to plaintiffs' counsel in representing the interests of the plaintiff class.

(2) <u>The interest of the plaintiffs and the Special Master in the requested information</u>: The interest of the Special Master and the plaintiffs in the requested material is the interest in speeding the remedy for an ongoing violation of the Constitution. The budget request package at issue is a detailed, comprehensive package of factual materials compiled by the leadership of the California Department of Corrections to justify a package of staffing and other measures deemed necessary to implement the staffing remedy in the *Coleman* case. Production of these documents is essential because plaintiffs or the Special Master will seek an order from the Court that requires the defendant to implement the rejected proposal immediately. Nolan Dec. ¶ 6.

This necessary staffing remedy has already been significantly delayed. Nolan Dec. ¶ 2. The harm from inadequate staffing is well documented in the files of this Court. See 15th Report of the Special Master at 346-354. Defendants' repeated failure to promptly implement badly needed remedial plans like the staffing plan here is also well-documented. *Id.* at 422 ("The defendants' history of developing erratic plans or plans they are unable subsequently to implement suggests the present need for something more than just another requirement for the generation of yet more plans."). These are extremely important and compelling interests in favor of disclosure.

-11-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' FORMAL ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE, NO.: CIV S 90-0520 LKK-JFM

(3) <u>The extent of the harm to plaintiffs if the information were not disclosed</u>: The clinical managers of the CDCR's mental health program are in a unique position to assess what staffing augmentations are necessary to implement the program they have promised will deliver a Constitutional standard of mental health care. The best evidence of their good faith effort to implement such a standard is the staffing proposal in the Budget Request defendants are now seeking to withhold from the Court, the Special Master, and plaintiffs. The harm to the plaintiff class if this document were not disclosed would be significant, because this information could not be readily obtained from any other source, short of depositions and document requests to which the defendants would likely assert the same privilege. Nolan Dec. ¶ 6; see *FTC v. Warner Communications*, 742 F.2d 1156, 1161 (9th Cir. 1984) (emphasizing the availability of the evidence at issue from other sources in weighing the interests for and against disclosure of official information). The most significant harm to the plaintiff class would be the harm of further delay in the staffing remedy for the constitutional violation in this case. This staffing remedy has already been delayed for several years.

### B. Defendants Have Failed To Adequately Comply With The Procedural Requirements For Asserting The Official Information Privilege.

By setting forth a privilege log and the declaration of DOF Director Genest, defendants have attempted to comply with the procedural requirements for asserting the official information privilege. Defendants failed. As set forth in both *Miller v. Panucci*, 141 F.R.D. 292, 301 (C.D. Cal. 1992) and *Kelley v. City of San Jose*, 114 F.R.D. 653, 671 (N.D. Cal. 1987), the relevant declaration must be from the head of the agency of whose behalf the privilege is asserted and must include (1) an affirmation that the agency in question generated or collected the material in issue and has maintained its confidentiality, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the interest that would be threatened by disclosure, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm, and (5) a projection of how much harm would be done to the interest if the information were disclosed. *Miller*, 141

F.R.D. at 301.

Defendants have failed to meet the procedural requirements. As to the first requirement, defendants have failed to provide a declaration from the head of the CDCR. The information in question was in fact "generated or collected" by the CDCR, not by the DOF. As to the second requirement, the Declaration of DOF Director Genest indicates only a "cursory review of the document" – it does not indicate that he has personally reviewed the material to assess the impact of disclosure of this specific material. Genest Dec. ¶ 7. As to the fourth requirement, defendants have demonstrated why the confidentiality of the relevant documents may not be protected by an appropriately crafted protective order. As to the fifth item, the declaration does not include any assessment of how much harm would be done to the interest asserted if the specific document requested were disclosed. See *Miller*, 141 F.R.D. at 301. These procedural defects provide a sufficient basis for overruling defendants' privilege claim. However, even if these defects are overlooked, defendants' claim fails on the merits of the relevant balancing test.

### C. The Balancing Of Interests Favors Disclosure Of The Relevant Document.

The interest asserted by defendants in maintaining the confidentiality of the budget change proposal is set forth in the Declaration of Michael Genest, the Director of the Department of Finance:

> The confidentiality of the deliberative process reflected in the budget change proposal review process is essential to permit a full and free exchange of information between entities subject to the Governor's Budget and the DOF, as the Governor's budget office, in order to provide candid advice and disclosure to the Governor in his capacity as the author of the Governor's Budget and subsequent adjustments thereto. The disclosure of a budget change proposal in a high-profile class action suit can have a chilling effect on future communications with other agencies and thus impact the flow of information to the Governor.

Genest Dec. ¶ 10. This type of vague, generalized interest in the free flow of government information has generally been held to be insufficient when applying the balancing test. As the Court explained in *Miller, supra*:

> Defendants further claim . . . that the police department's internal

-13-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' FORMAL ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE, NO.: CIV S 90-0520 LKK-JFM

> investigatory system would be harmed by the disclosure of these Requests. Defendants, however, do not specifically describe how disclosure of the requested information in this case would be harmful. <u>As noted earlier, a general claim of harm is insufficient to overcome the burden placed on the party resisting disclosure.</u> In particular, Defendants have failed to describe how disclosure under a tailored protective order would harm a significant government interest and how much harm would be done to those interests by disclosure in this particular case.

141 F.R.D. at 301 (emphasis supplied). The same reasoning applies here to the interest asserted by the DOF. Defendants do no explain how <u>disclosure of the specific budget information in this case</u> would be harmful. If it has any impact, disclosure in this case would not chill candid discussion with respect to funding decisions in <u>all</u> other instances, but only in those funding decisions in budget areas impacted by specific remedial orders in pending civil rights litigation. This is a narrow category of budget proposals where the departmental interest in secrecy is in any event diminished and its freedom to act has already been circumscribed. Moreover, it is clear that defendants themselves have frequently disclosed rejected budget alternatives in their final funding proposals to the legislature, as they did last year with the Corcoran staffing package. See Nolan Dec. Ex. A. Moreover, defendants speculate that disclosure will chill the free exchange of information between the DOF and the Governor, but the document in question does not include any communications between the DOF and the Governor's office, or between the DOF and anyone. Finally, defendants have also failed to explain why an appropriate protective order will not prevent the disclosure from having <u>any</u> chilling effect.

In the few civil rights cases where court's actually reach the step of balancing the competing interests in favor of secrecy and disclosure, they generally use a "balancing test that is moderately pre-weighted in favor of disclosure." *Kelly v. City of San Jose,* 114 F.R.D. 653, 661 (N.D. Ca. 1987). It is clear that in this case, the balancing test strongly favors disclosure of the relevant information. The Court's Special Master and plaintiffs need the information to assess whether defendants should be ordered to implement the rejected staffing proposal. The information at issue cannot be obtained from other sources, and is necessary to avoid further delay in the staffing remedy for a constitutional violation. Defendants have been unable to

articulate a legitimate specific interest that will be harmed by disclosure in this case. Finally, any harm to defendants could be eliminated through the use of a well-crafted protected order.

### D. Defendants Have Not Established The Necessity Of An In Camera Review Of The Relevant Document, Or The Need For Filing It Under Seal.

Defendants have stated that they would be willing to provide the Court with a copy of the relevant document for in camera review, and they have also indicated that they might be willing to provide the document to Special Master Keating under seal. See Defendants' Formal Assertion at 7. However, defendants have failed to explain why such protections are necessary. Defendants have failed to articulate a specific reason in this case for keeping a component of the planned remedy for a federal constitutional violation secret. Although federal privilege law clearly governs this dispute, see *United States v. Zolin*, 491 U.S. 554 (1989), it is also relevant that California has a robust public disclosure law governing such matters that is embodied in the California Public Record Act and the State's Evidence Code. Cal. Gov. Code §§ 6250 *et seq.*; Cal. Evidence Code § 1040(b). California does not recognize a deliberative process exemption or privilege. See Cal. Evidence Code §911 (no privileges except as expressly provided by statute). California does have an "official information" evidence privilege which requires a finding that the need for confidentiality outweighs the interest of justice in the full disclosure of the relevant information. Cal. Evidence Code § 1040(b). It is clear that the interests favor disclosure here as discussed above. Moreover, it is clear that budget change proposals in California routinely include a detailed discussion of alternative proposals that were considered and rejected. See Nolan Dec. Ex. A. Defendants have not explained what makes the current request different, other than the possibility that the Court may order them to implement it.

///
///
///
///
///

## CONCLUSION

For all of the reasons set forth above, the Court should order that defendants immediately produce the relevant budget documents to plaintiffs and the Special Master.

Dated: June 9, 2006

Respectfully submitted,

*/s/ Thomas Nolan*
Thomas Nolan
Rosen, Bien & Asaro
Attorneys for Plaintiffs