**EXHIBIT A**

Thomas Nolan

---

| | |
|---|---|
| From: | Lisa Tillman [lisa.tillman@doj.ca.gov] |
| Sent: | Wednesday, June 08, 2005 11:59 AM |
| To: | jmichaelkeatingjr@yahoo.com |
| Cc: | DocKC99@aol.com; DoctorKoson@aol.com; harconwil@aol.com; melissawarren@appliedforensics.org; hammujones@comcast.net; rpattersonmd@earthlink.net; gmorrison@healthcaremediations.com; matthew.lopes@hklaw.com; paul_nicoll@msn.com; Donald Specter; kwattley@prisonlaw.com; sfama@prisonlaw.com; Jane E. Kahn; Michael W. Bien; Thomas Nolan; Jeffrey.metzner@uchsc.edu |
| Subject: | Corcoran Finance Letter |

   

Mental Health    MHSDS Alternative    Mental Health    Coleman-MHSDS
Finance Letter 0...    D - Attachme...    Finance Letter C...    SFL - One Pager...

June 8, 2005

Dear Mr. Keating:

Please find enclosed a copy of the finance letter concerning the clinical staffing of California State Prison, Corcoran.

Sincerely,

Lisa Tillman
Deputy Attorney General
Telephone: 916-327-7872
Facsimile: 916-324-5205

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

## CALIFORNIA DEPARTMENT OF CORRECTIONS
### SPRING FINANCE LETTER
### HEALTH CARE SERVICES DIVISION
### FISCAL YEAR 2005-06
### COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM

| Resources | FY 2004/05 | FY 2005/06 |
|---|---|---|
| Dollars (Thousands) | $0 | $4,115 |
| Positions | 0 | 51.3 |
| PY's | 0 | 49.5 |

**PURPOSE:**

This Finance Letter is requesting $4.1 million in FY 2005/06 for 51.3 positions and associated costs for new Mental Health Services Delivery System (MHSDS) guidelines to be implemented July 1, 2005.

Mental Health Treatment is provided in the California Department of Corrections (CDC) through the Mental Health Services Delivery System (MHSDS). The intent of the MHSDS is to advance the Department's mission to protect the public by providing timely, cost-effective mental health services that optimize the level of individual functioning of seriously mentally disordered inmates and parolees in the least restrictive environment.

The court case *Coleman v. Schwarzenegger et. al.* was filed contending that the CDC was violating Eighth and Fourteenth Amendments of the United States Constitution by providing inadequate mental health care to inmates throughout the prison system. In 1997, the MHSDS was established and created preliminary inmate mental health program guidelines, now those guidelines need to be adjusted as the program encompasses continuing litigation.

**BENEFITS:**

Implementing the revised MHSDS Program Guides will meet court ordered requirements to provide constitutionally adequate mental health treatment to inmates. Implementation of the new MHSDS Program Guides, as well as the IMSP Policies and Procedures regarding Mental Health Quality Management, will result in the reduction of costs associated with the *Coleman* case. The MHSDS Program Guides also address issues raised in the *Clark* and *Armstrong* cases against CDC. The Program Guides include requirements for language translation and for clinicians to ensure that disabled inmates receive appropriate accommodation and equally effective communication during clinical contacts.

**Budget Management Branch Staff Comments/Concerns:**

Current litigation costs can create a substantial fiscal impact on the Department of Corrections. BMB concurs with the changes. However, the implementation of new program changes should be evaluated at a later date and adjusted accordingly.

Contact Person: Mary Kostiew

Phone Number: (916) 650-6728

# CALIFORNIA DEPARTMENT OF CORRECTIONS
## MAY REVISE FINANCE LETTER
## COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM
## AT CORCORAN STATE PRISON
## FISCAL YEAR 2005/2006

## A. Nature of Request

This Finance Letter is requesting $4.1 million for 51.25 Mental Health positions and associated costs for new Mental Health Services Delivery System (MHSDS) guidelines to be implemented at California State Prison, Corcoran (COR) on July 1, 2005. Custody staffing related to this issue were inadvertently excluded from our original request and will be requested in a future budget change proposal (BCP).

Mental Health Treatment is provided in the California Department of Corrections (CDC) through the MHSDS. The intent of the MHSDS is to advance the Department's mission to protect the public by providing timely, cost-effective mental health services that optimize the level of individual functioning of seriously mentally disordered inmates and parolees in the least restrictive environment.

The court case *Coleman v. Schwarzenegger ET. Al.,* was filed contending that the CDC was violating Eighth and Fourteenth Amendments of the United States Constitution by providing inadequate mental health care to inmates throughout the prison system. In 1997, CDC issued a preliminary version of MHSDS Program Guides, which established preliminary policies and procedures to provide constitutionally adequate mental health services at all CDC institutions. Other court cases including *Clark* and *Armstrong,* require that CDC staff provide reasonable accommodation to inmates with disabilities, and ensure equally effective communication with disabled inmates during contacts of any kind within the MHSDS.

Since 1997, details of the MHSDS Program Guides have been negotiated with all parties in the *Coleman* case in order to develop a final version of the MHSDS Program Guides. Implementing these policy and procedural changes is an integral part of the strategy to exit the *Coleman* case and to reduce costs related to this litigation. In addition, one of the goals and objectives of the CDC is to take responsibility and accountability for the rehabilitation of offenders and provide training, counseling, and support services.

When the resource analysis process for this BCP was initiated in July 2004, final approval of the MHSDS Program Guides were anticipated to be completed by January 2005. The Special Master's Draft Report on Revised Program Guides (Attachment H) states, "The purpose of this report is to begin the movement toward final approval of the revised program guides." However, the *Coleman* parties have not completed negotiation regarding a few components of the MHSDS Program Guides. A subsequent BCP will be submitted to address resources needed to implement the revised MHSDS Program Guides

at all institutions, once the document receives final court approval. Information regarding resources that will be requested in a future BCP are included in this document.

A March 7, 2005 court order from Judge Karlton (Attachment G) requires the State of California to "include in the Fiscal Year (FY) 2005-2006 budget a request for sufficient clinical staff at COR to provide the mental health services required in the revised program guides for MHSDS caseload inmates in the Administrative Segregation Unit (ASU) and the Security Housing Unit (SHU) at said institution." In order to implement the revised MHSDS Program Guides at COR according to the court order, the CDC Health Care Services Division (HCSD) is requesting the following positions (see Alternative D - staffing summary - Attachment C):

**FY 2005-06 Request:**

1.  **0.5 Permanent Positions for the ASU, New Stand Alone Building (Non-MHSDS) Population**
    This Finance Letter requests 0.5 Psychiatric Social Workers, as permanent positions to provide follow up evaluations on positive mental health screenings of inmates in the ASU population.

2.  **5.39 Permanent Positions for the ASU Correctional Clinical Case Management Services (CCCMS) Population**
    This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the CCCMS population in the ASU: 0.5 Staff Psychiatrist, 1.5 Clinical Psychologists, 1.62 Psychiatric Technicians, and 1.77 Recreational Therapists.

3.  **13.08 Permanent Positions for the SHU CCCMS and Group Therapy**
    This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the SHU: 3.0 Clinical Psychologists, 3.0 Psychiatric Social Workers, 3.5 Staff Psychiatrists, 1.15 Recreational Therapists, and 2.43 Psychiatric Technicians.

4.  **3.77 Permanent Positions for ASU Enhanced Outpatient Program (EOP) Hubs**
    This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the ASU Hubs population: 1.62 Registered Nurses, 1.15 Recreational Therapists, and 1.0 Staff Psychiatrists

5.  **2.16 Permanent Positions for the Mental Health Crisis Bed (MHCB) Population**
    This Finance Letter requests the following permanent positions as a result of previously unfunded and new required duties in the MHCB population: 1.86 Clinical Psychologists, and 0.3 Staff Psychiatrists.

6.   **0.79 Permanent Positions for the Mental Health Participation in the Rules Violation Process**
     This Finance Letter requests 0.79 Clinical Psychologist permanent positions as a result of the changes in the Program Guides requiring Mental Health case managers to participate in the Rules Violation process.

7.   **18.24 Permanent Positions for Relief Factor**
     This Finance Letter is requesting 12.84 Psychiatric Technicians in order to establish a 0.62 relief factor for the Psychiatric Technician classification, to perform their duties on a 7 day per week basis. In addition, this Finance Letter requests a relief factor of 4.5 Clinical Psychologists and 0.9 Psychiatric Social Workers.

8.   **0.56 Positions for Forensic Evaluation**
     This Finance Letter requests 0.56 Clinical Psychologists to perform Mentally Disordered Offender, Board of Prison Term, Z Case, and Departmental Review Board evaluations.

9.   **3.47 Positions for Clerical Assistance**
     This Finance Letter requests 1.22 Office Technicians (OT), 1.0 Medical Transcribers, 0.5 Office Staff Supervisor II and 0.75 Office Assistants (Limited Term) with clerical support in the Mental Health Program throughout CDC.

10.  **1.79 Permanent Positions for Institution Level Supervision and for Upgrading 4.0 Psychiatric Technicians to 4.0 Senior Psychiatric Technicians**
     This Finance Letter requests 1.79 Supervising Psychiatric Social Workers, and upgrading 4.0 Psychiatric Technicians to 4.0 Senior Psychiatric Technician permanent positions to provide the Institutions with supervisory staff.

11.  **1.5 Permanent Positions for Mental Health Nursing**
     This Finance Letter requests 1.5 Registered Nurses permanent positions to perform Mental Health nursing duties.

12.  **Workload Study**
     $15,152 is requested to determine whether current clinical case manager and psychiatrist staffing in CCCMS and EOP level of care is sufficient to absorb additional duties after allocating staff requested in this Finance Letter.

13.    **Additional Resources**
The table below displays this Finance Letter's request for additional resources:

| Item | Quantity | Unit Cost | One-Time Cost |
|---|---|---|---|
| Treatment Cell | 1 | 1,069 | 1,069 |
| Photocopier | 1 | 9,000 | 9,000 |
| Laptops | 1 | 1,400 | 1,400 |
| Shredder | 1 | 2,500 | 2,500 |
| Fax Machine | 1 | 250 | 250 |
| Television | 1 | 499 | 499 |
| Group Therapy Materials | 1,096 | 2 | 2,192 |
| Printing (Forms) | | | 1,515 |
| **Grand Total** | | | **$18,425** |

## B.  Background History

### The MHSDS Program Guides

The CDC is mandated under the Federal constitution to provide adequate medical and mental health care to all inmates who need it. "Deliberate indifference" to mental health needs has long been held to be a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The CDC has been challenged in two court cases, *Plata and Coleman*, which alleged that the CDC had insufficient staffing levels and inadequate policies and procedures to provide necessary mental health and medical care to inmates.

The CDC has responded to this litigation by developing a comprehensive and fiscally prudent approach to health care for inmates. Implementation of the MHSDS began in FY 1994–1995. In 1997, CDC implemented the MHSDS Program Guides, which provide an initial set of standardized policies and procedures for mental health treatment at each institution.

The Inmate Medical Services Program (IMSP) Policies and Procedures were developed in 2001 to standardize medical treatment at each institution. The IMSP Policies and Procedures contain guidelines for Quality Management, which have been implemented across all medical and mental health programs.

The 1997 MHSDS Program Guides have been reviewed and revised over the past seven years through ongoing negotiation between all parties involved in the *Coleman* court case. CDC field experts and court appointed experts have worked to agree upon the new set of policies and procedures contained in the revised MHSDS Program Guides, which meet constitutional requirements for adequate mental health care. The revised MHSDS Program Guides will be incorporated as Volume 12, of the IMSP Policies and Procedures.

The purpose of implementing the revised MHSDS Program Guides is to meet court ordered requirements to provide constitutionally adequate mental health treatment to inmates. Implementation of the MHSDS Program Guides, as well as the IMSP Policies and Procedures regarding Mental Health Quality Management, will result in the reduction of costs associated with the *Coleman* case. The MHSDS Program Guides also address issues raised in the *Clark* and *Armstrong* cases against CDC. The Program Guides include requirements for language translation and for clinicians to ensure that disabled inmates receive appropriate accommodation and equally effective communication during clinical contacts.

Although the final version of the revised MHSDS Program Guides has not been court-approved, the March 7, 2005 court order requires that "Defendants shall include in the FY 2005-2006 budget a request for sufficient clinical staff at COR to provide the mental health services required in the ASU and the SHU at said institution."

Summary of the 1997 MHSDS Program Guides

The 1997 MHSDS Program Guides established a set of policies and procedures for providing a continuum of mental health services for inmates. Inmates who require mental health treatment are currently identified through reception center screening, staff referral, and inmate self-referral. The MHSDS is designed to provide mental health treatment to inmates who have serious mental illnesses that impact their ability to function. Mental health services are currently provided in the least restrictive environment consistent with the safety and security needs of both the inmate-patient and the institution. The MHSDS provides inmate-patients with mental health treatment ranging from crisis intervention to inpatient care. Each inmate-patient treated in the MHSDS receives an individualized mental health treatment plan, and is placed at a Level of Care (LOC) appropriate to his or her identified mental health needs. Three levels of care are offered within CDC institutions and two levels of care are offered through contract with the Department of Mental Health (DMH). The levels of care, in order from lowest level of services to highest level, provided within CDC are:

- CCCMS: Provides individual Case Manager contact at least once every 90 days and medication management by a psychiatrist at least once every 90 day. These patients are housed with other inmates who are not receiving MHSDS treatment services.

- EOP: Provides weekly contacts with a primary clinician, medication management by a psychiatrist as clinically appropriate (interpreted consistently as once every 30 days), and structured therapeutic activities 10 hours per week. Inmate-patients treated at EOP level of care are placed into housing units separated from the non-MHSDS inmate population, as soon as bed space is available.

- MHCB: Provides evaluation and treatment for inmate-patients who require the availability of 24 hour, 7 day per week mental health services to prevent danger to

themselves or others, or who have mental conditions which cause grave disability (an inability to use food, clothing, or shelter in appropriate ways), or inability to function at a lower level of care.

- Inmates requiring inpatient mental health care for more than 10 days are currently referred to the DMH. In the 1997 Program Guides, this was achieved through referral to a few CDC institutions, which then completed the DMH referral process, or recommended that the patient return to the CDC institution.

In addition to the LOC designation, each inmate-patient is placed into an institution determined by a classification score calculated to differentiate inmates by safety and security needs. Within institutions, inmates may be placed into the general population or they may be housed temporarily in an ASU when their placement in general population is likely to pose a threat to the safety and security of the institution. Inmate-patients, who, because of gang membership, rules violation, or other means, pose a threat to the safety and security of the institution, may be placed in a SHU for a specified or indeterminate sentence. In ASU and SHU housing, inmate patients are handcuffed and escorted by custody staff whenever they leave their housing cell. MHSDS treatment services for these inmate patients are provided in confidential interview booths and group rooms with treatment cells. These spaces are designed to provide a safe and secure environment for inmate-patients and for staff. Custody placement into general population, ASU or SHU housing is determined independently of MHSDS designation. Two institutions have Psychiatric Services Units (PSU) designed to treat inmate-patients at EOP level of care in a SHU setting. MHSDS levels of care are offered at all custody levels, but not all combinations of LOC and custody placement are offered at each institution.

Length of stay in each program is determined by the inmate-patient's progress in mental health treatment. Inmates receiving CCCMS LOC who are prescribed no psychotropic medication and are free from symptoms for one year may be removed from the MHSDS. Other inmate-patients may receive CCCMS LOC mental health services throughout their incarceration.

Inmate-patients placed at EOP LOC generally receive treatment in this program for at least six months, and may require continued EOP LOC treatment throughout their incarceration.

Summary of Revisions to the MHSDS Program Guides

Many of the revisions in the MHSDS Program Guides policies and procedures do not require additional resources. Of the revisions that do require resources, some have already been implemented through separate BCP. These requirements include:

- The MHCB level of care is now provided in a Correctional Treatment Center (CTC) licensed in accordance with Title XXII (Division 5, Chapter 12, Article 4, Section 79739, Mental Health Treatment Program) regulations.

- Two levels of care (Inpatient Acute Care, and Inpatient Intermediate Care) are provided through contract with the DMH.

- Inmate-patients who require services to treat a condition that does not warrant admission to a licensed mental health facility, or who require close observation and evaluation of a mental health condition, may be placed for up to 72 hours in an Outpatient Housing Unit (OHU). The OHU is not a licensed CTC, but has nursing staff on-site 24 hours per day.

- Inmates placed in ASU are screened within 72 hours to determine whether they have experienced the onset or exacerbation of mental health symptoms.

- All inmates in CDC custody are screened by psychologists for developmental disabilities. If determined to need reasonable accommodation, they are offered assistance in functioning as defined by an individualized assistance plan.

- The Mental Health Tracking System is a database, required to be used at all institutions to track mental health appointments and services rendered.

Since 1997, CDC has implemented, at all institutions, some of the policies and procedures in the MHSDS Program Guides, and requirements of other state and federal laws, without requesting any additional resources. These required implementations have included:

- Mental health assessments are conducted to give clinical input into the disciplinary process when an inmate who shows signs of possible mental illness, or who is in an EOP, MHCB, or DMH program receives a CDC For 115 - Rules Violation Report.

- Suicide Prevention Policies and Procedures – Suicide Prevention is required from all staff. Beginning in 1999, when an inmate-patient is discharged from a MHCB (and had been admitted due to potential suicide risk), the inmate patient is placed on a 5-day clinical follow-up and custody wellness check procedure. Suicide Prevention Training is required annually and is taught jointly by trained mental health and custody staff. When a suicide occurs, the suicide reporting and review process requires development and implementation of a corrective action plan.

- Developmentally disabled or cognitively impaired inmates may be designated as requiring housing in mental health treatment programs, even without past or current mental health symptoms. (A description of the Developmental Disability Program is beyond the scope of this BCP, but inmates-patients with these disabilities impact the time required to complete mental health duties).

- Mental health staff are required to use interpreters and interpreter services to achieve effective communication with inmates who do not speak English, or a language that the staff member has proficiency in speaking.

- Mental health staff have been directed to document methods used to achieve equally effective communication with all disabled inmate-patients.

- Mental health staff at all institutions have been trained and directed to complete referrals to DMH for all inmate-patients who may require a higher level of care, are not (at minimum) stable and programming at EOP level of care, have been in a MHCB for more than 10 days, or have more than three admissions to MHCB in a six month period.

- A Coordinated Clinical Assessment Team, including mental health and custody staff from involved institutions, HCSD, and the DMH, conducts regularly scheduled (generally twice a week) phone conferences to resolve issues related to DMH referral, placement, and transfer.

- The Quality Management System requires mental health staff participation in Quality Improvement Teams, Suicide Prevention and Response Focused Improvement Teams, Mental Health Subcommittees, and Quality Management Committees.

- The MHCB licensing requirements require weekend coverage by mental health clinicians, which was not funded as part of the MHCB licensing budget.

- Mental health staff conducts assessments for the Board of Prison Terms (BPT), Penal Code 2962 (Mentally Disordered Offender (MDO) Act), and Penal Code 1203.03 (Z Cases), and WIC 7301 (Transfer from DMH to CDC) as required by law.

The revised MHSDS Program Guides contain policies and procedures which, when implemented, will reduce required resources at the institutions. These include the following:

- The reception center and CCCMS assessment process was required within 5 days in the 1997 version, and will now be required within 10 days. The timeframe for completion of the treatment plan increased from 7 to 14 days.

- Inmates treated at EOP level of care may be scheduled for less than 10 hours per week of structured therapeutic activity, if clinically indicated.

- Clinicians treating EOP level of care patients are required to complete a monthly summary progress note, instead of documenting each contact with a patient.

- Inmate-patients may be clinically discharged from CCCMS if they have been in continuous remission and are functioning adequately in the mainline without treatment (including psychotropic medication) for six (6) months. This timeline is reduced from the 1997 version of one (1) year.

- Transfers from one CCCMS level of care program to another institution no longer require direct contact between the clinical case managers. This was not feasible and was not current practice, and CDC negotiated to remove the requirement from the revised Program Guides.

- The Transitional Case Management Program was designed to facilitate transfer of patients from EOP and MHCB levels of care to parole. This has relieved some responsibility of the mental health staff at the institutions to communicate individually with parole officers and the parole outpatient clinic when an inmate-patient paroles.

Requirements of the MHSDS Program Guides, which require new resources in order to implement are detailed in the "Justification" section of this proposal.

## C. State Level Considerations

Standardizing the delivery of mental health care is consistent with the CDC Strategic Plan and HCSD Goals and Initiatives to manage the inmate and parolee population in a safe, efficient, and cost effective manner that is in compliance with the law. By providing appropriate resources to comply with policies and procedures developed to provide constitutionally adequate mental health care, CDC will take an important step toward self-directed management of the IMSP. CDC currently spends approximately $3,000,000 per year to pay the *Coleman* plaintiffs' attorneys and Special Master fees. This figure does not include the CDC staff time required to respond to *Coleman* related inquiries, audits, hearings, and mandates. The most responsible fiscal strategy is to meet requirements for the provision of constitutionally adequate mental health services in order to facilitate a final settlement of the *Coleman* case. To continue current operations and fail to adequately implement the revised standards will leave the State open to further litigation and expenses associated with further court action.

This finance letter does not request resources to meet revised MHSDS Program Guides requirements at all institutions, but creates a model for provision of these services in ASU and SHU at COR, as required by court order.

## D. Facility/Capital Outlay Considerations

Implementation of the Revised MHSDS Program Guides is likely to have capital outlay impact at each institution. Additional office and treatment space may be needed in order to provide workspace and mental health treatment areas. A site-by-site evaluation of required facility and capital outlay would need to be conducted in conjunction with the IMSP implementation. Any Capital Outlay options must be juxtaposed with the outcomes of the Statewide Mental Health Study, which may provide treatment facilities specifically designed for patients who require EOP level of care. After assessment, a capital outlay BCP may be written to address these needs.

Because staffing, office space, workload and treatment space are intertwined concepts, funding for a workload and space survey is requested in this finance letter.

## E. Justification

### Methodology of the Revised MHSDS Resource Analysis

The Revised MHSDS Program Guides were reviewed by HCSD staff in order to list all changes since the 1997 Program Guides. Changes that institutions had been directed to implement were included, and resources allocated were noted. The list of changes was sent to one clinical and one custody contact at each institution. Each institution then completed an independent resource analysis in order to determine resources necessary to successfully implement the changes. The independent resource analyses were collected by HCSD and compiled into a common database. The data was analyzed by senior mental health staff with experience working at several institutions. Changes in the revised MHSDS Program Guides, which most institutions identified as requiring additional resources, are included below. A few unique needs at specific institutions were reviewed in the context of special missions.

Staffing appropriate for each mental health program level of care and custody setting (General Population (GP), ASU, or SHU) was determined by ratio to the number of inmates in the program. Supervisory staffing was determined by ratio to the number of staff requiring supervision. The ratios determined adequate via the resource analysis were then analyzed to determine any ways to improve efficiency and cost-effectiveness through the provision of equipment, clerical support, or use of alternate classifications.

### Outcome of the Revised MHSDS Resource Analysis

Changes to the Interdisciplinary Treatment Team (IDTT) Process:
The following describe changes to the IDTT Process for all MHSDS Programs. Recommendations for resource allocation are located under headings for the level of care (EOP, CCCMS, or MHCB) and custody level (GP, ASU, or SHU) and refer to resources required for "Changes in IDTT requirements."

The Revised MHSDS Program Guides specify that, for all inmate-patients in the MHSDS, the treatment plan must be formulated and approved during the IDTT meeting. The treatment plan must include measurable goals, and progress toward these goals must be discussed in the IDTT. This process adds approximately 10 minutes to the IDTT for each patient who attends.

The composition of the IDTT, in the Revised MHSDS Program Guides, indicates that the assigned clinical case manager or primary clinician, the assigned psychiatrist, and the assigned correctional counselor must be present. In the PSU, the assigned Correctional Counselor II (CC II) and the Facility Captain must attend all IDTTs. This is a change in requirement and current practice from the 1997 Program Guides, which required a mental

health clinician and a psychiatrist, but not the assigned clinician/psychiatrist to attend the IDTT. The IDTT documentation in the revised Program Guides must include the printed names and initials or signatures of all staff present. Estimates indicate that these requirements will double the amount of time each clinician spends in IDTT each week.

The initial IDTT must be held prior to the initial Institution Classification Committee (ICC), and the annual IDTT must be held before the annual ICC. The requirements for intake assessment for CCCMS LOC inmate-patients have increased from a short (2 page) evaluation form to a full intake evaluation (8 pages). This change in the evaluation process will increase intake assessment time approximately 30 minutes per CCCMS inmate-patient.

When an inmate-patient does not attend the IDTT, the Clinical Case Manager (CCM) is responsible for documenting the reason in a progress note. If the inmate-patient refused to attend, the CCM is responsible for documenting the reason for the refusal. If the CCM does not know the reason, this will require a discussion with the patient at cell front, or a discussion with custody staff to determine why the patient did not attend. This is likely to increase the IDTT related time for each clinician an average of one hour per IDTT.

The 1997 MHSDS Program Guides stated that patients treated at EOP Level of Care are required to receive ten hours per week of structured therapeutic activity. The Revised Program Guides state that a patient may be offered less than ten hours of structured therapeutic activity when the IDTT determines that ten hours per week is clinically contraindicated. This change reflects current practice. The Revised Program Guides require that a patient scheduled for less than ten hours per week of structured therapeutic activity must be reviewed by the IDTT every 30 days instead of every 90 days. This reflects an increase in workload for all members of the IDTT. Approximately 15 percent of inmates in EOP level of care programs are scheduled for less than 10 hours of structured therapeutic activity per week. These 15 percent of patients will have to be reviewed by the IDTT three times as often as previously, driving a significant increase in IDTT time.

The Revised MHSDS Program Guides state that CCCMS inmate-patients in SHU attend IDTT quarterly for the purpose of treatment plan update. This is an increase from the prior requirement for annual treatment plan review. The CCCMS SHU Clinicians will therefore spend four times the amount of time they previously spent in IDTT meetings.

GP CCCMS Level of Care – New Requirements

CCM Duties:

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
|---|---|---|
| Two -page summary Intake Evaluation completed within 5 days. | Eight page Intake Evaluation including C-file review, violence risk assessment, suicide risk assessment, social and family history, psychiatric | 1.5 hours per intake assessment. This will have the largest impact on Reception Center (RC) Clinicians (see RC Section). Average intakes of inmates |

| | history, request records from past treatment. Completed within 10 days. | new to CCCMS vary. Approximate 2 per week = 3 hours per week |
|---|---|---|
| CCM Completes Basic Treatment Plan in 7 days | The responsibility of overall treatment planning within the CCCMS program rests with an IDTT. The CCM documents specific recommendations regarding work, education and substance abuse counseling. The treatment plan must include measurable goals and be completed within 14 days. | Increases documentation time by approximately 15 minutes per inmate-patient. IDTT Time by at least 10 minutes per inmate-patient. = 25 minutes x 5 per week = 2 hours per week |
| Reduced IDTT Requirements | Increased IDTT Requirements. **Assigned** CCM required to attend. (Summarized in separate section above) | Doubles IDTT Time per week from approximately 4 hours to approximately 8 hours = Additional 4 hours per week |
| No requirement | Inmates who refuse to attend IDTT. The CCM documents the reason for the refusal on the progress note. | Requires follow-up cell front with inmate-patients who refuse = Additional 1 hour per week. |
| No requirement. However, group therapy is provided for a small percentage of CCCMS inmates in some institutions. | Group Therapy must be offered to inmates when clinically appropriate. Group therapy notes must be recorded in a monthly summary and include the inmates attendance, behavior in the group, and the progress toward achieving treatment goals. | Although group therapy may be offered by Licensed Psychiatric Technicians (LPT), the expertise of a psychologist or social worker may be required for some group topics. In addition, CCMs will inevitably cover group therapy when an LPT is not available. Additional 3 hours per week. |
| No requirement | When a CCCMS IDTT recommends transfer to an EOP, the CCM completes a Mental Health Evaluation (see above for time frame). | Additional 1 hour per week. |
| No requirement for 5-day follow-up when an inmate-patient is released from OHU. | Increased responsibility for tracking inmate-patients placed in OHU and released with requirement for 5-day | Additional 15 minutes per day = 1.5 hours per week. |

| | follow up. | |
|---|---|---|
| No requirement | Suicide Risk Assessments are required at minimum – <br><br> • Every time an inmate has an initial face-to-face evaluation for suicidal ideation, gestures, threats, or attempts, by a clinician trained to complete the SRAC. <br><br> • By the referring clinician prior to placement of an inmate-patient into an OHU for continued suicide risk assessment or into a MHCB for suicidal ideation, threats, or attempt. <br><br> • After hours, on weekends and holidays, when the referring clinician has not completed an SRAC, by the clinician providing coverage, by the next day, for those inmate-patients placed into an OHU or MHCB. <br><br> • By the associated IDTT and/or clinician for all inmate-patients placed into an OHU, for mental health reasons, or MHCB, for any reason, upon decision to release or discharge. <br><br> • Subsequent to release from an OHU placement that was for the purpose of continued suicide risk assessment, or a MHCB placement for the reason of suicidal ideation, threats, or attempts, at a | Unpredictable additional workload – Time study not completed |

|  |  |  |
|---|---|---|
|  | minimum of every ninety (90) days for a twelve month period, by a mental health clinician.<br><br>• Within seventy-two (72) hours of return from a DMH facility, or within 24 hours if clinically indicated based on new arrival screening.<br><br>• Any time the medical and mental health screening of a new arrival to an institution indicates a current or significant history, over the past year, of suicide risk factors, ideation, threats, or attempts. |  |
|  |  | **TOTAL INCREASE IN WORK TIME = AT LEAST 15.5 HOURS PER WEEK, LESS 5 HOURS PER WEEK GROUP THERAPY ASSIGNED TO LPTs BELOW** |

No additional CCMs are requested at this time to implement the increased requirements listed above for CCCMS GP. Staff requested in sections below will reduce clinical case manager responsibilities for group therapy, BPT reports, Rules Violation Report Assessments, and clerical duties in order to offset the increased caseload related duties.

Psychiatry Duties: Increased IDTT Time. The *Coleman* court case Special Master has expressed concern about the high caseloads of psychiatrists in CCCMS level of care.

The current ratio = 1 Psychiatrist: 210 CCCMS inmates (based on CCCMS GP and ASU staffed capacity). At this time, no additional psychiatrists are requested. The plan below includes a work-study to determine whether current and increased duties can be completed by allocated staff. The plan below allocates additional staff to provide group therapy as required by the revised MHSDS Program Guides in CCCMS level of care. The addition of this service is expected to reduce the need for emergency referrals to psychiatrists, as the patients with the highest need for service with have additional clinical contact in the group therapy setting.

LPT and Recreational Therapist (RT) duties:
Group Therapy when clinically indicated/ Monthly Group Therapy Notes/ Increased IDTT Time

Currently none allocated to GP CCCMS LOC.  A future BCP will include:

Additional 1. 62 LPT: 800 CCCMS Inmates = (based on CCCMS GP and ASU population) = 45.8 PY - 25.0 requested below for CCCMS ASU = 20.8 PY additional for CCCMS GP

Additional 1.15 RT: 1600 CCCMS Inmates = (based on CCCMS GP and ASU population) = 16.25 PY additional

*At this time, no additional staff is requested for COR General Population CCCMS because this population is not included in the current court order.*

EOP General Population Level of Care

CCM Duties: Reduction of duties - Revision allows reduced individual therapy contact from 1/week to every-other week with group therapy contact by primary clinician on weeks that individual therapy contact does not occur.

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
|---|---|---|
| Individual Therapy contact required weekly | Individual therapy contact may be every other week if clinically appropriate, with group therapy contact by the primary clinician on weeks between individual contact.  Group therapy notes must be recorded in a monthly summary and include the inmates attendance, behavior in the group, and the progress toward achieving treatment goals. | For approximately 20 percent of the EOP population.  Group therapy time replaces individual therapy time.  Detailed monthly notes are required for group therapy. This new requirement is more difficult to track and schedule.  Increases OT responsibility.  Overall increases CCM Duties = 2 hours per week. |
| Documentation of each clinical contact required. | Clinical staff shall document the progress of an inmate-patient at least monthly on an IDTT Progress Note.  The progress note shall include: record of attendance at | Requires monthly summary note instead of documentation of each weekly contact.  Documentation is more frequent if significant changes occur in the |

| | | |
|---|---|---|
| | treatment activities, description of participation in treatment activities, progress in resolving identified problems and symptoms, current mental status. | inmate-patient's level of functioning. Field experts report that the time to complete the monthly summary note is the same as completing weekly notes. Some clinicians will continue to complete progress notes for each contact and will have the added responsibility of this monthly summary. No overall change in CCM duties. |
| Quarterly review requirements. Annual review not different from quarterly reviews. | Additional quarterly review requirements. The quarterly review in the revised Program Guides focuses on interventions implemented since the last team review; assessment of willingness and ability to participate in the program, and description of attempts to improve participation; recommendations for modifications of treatment plan including problems, medications, and interventions. Discharge planning section includes specific follow-up recommendations and perceived impediments to discharge. An annual review is required for each inmate-patient with a full case summary and recommendations for continued placement or transfer to a different level of care. | More rigorous quarterly review process. Likely to add 10 minutes per inmate to each IDTT for quarterly review and 15 minutes for annual review. See total changes in IDTT process below. |
| Patients receive 10 hours per week structured therapeutic activity | A patient may be offered less than ten hours of structured therapeutic | Approximately 15 percent of inmates in EOP level of care programs are |

| | | |
|---|---|---|
| | activity when the IDTT determines that ten hours per week is clinically contraindicated. This change reflects current practice. The Revised Program Guides require that a patient scheduled for less than ten hours per week of structured therapeutic activity must be reviewed by the IDTT every 30 days instead of every 90 days. This reflects an increase in workload for all members of the IDTT. | scheduled for less than 10 hours of structured therapeutic activity per week. These 15 percent of patients will have to be reviewed by the IDTT three times as often as previously, driving a significant increase in IDTT time. Adds approximately 2 hours per week IDTT Time. |
| No requirement for 5-day follow-up when an inmate-patient is released from OHU. | Increased responsibility for tracking inmate-patients placed in OHU and released with requirement for 5-day follow up. | Average additional 30 minutes per day = 2.5 hours per week. |
| No Specific Requirement. DMH Referrals centralized to one institution. | EOP clinicians are often responsible for completing referrals to DMH. | Each DMH referral is estimated to take 6 hours to complete. Average 1 hour per week increase in workload. |
| No Requirement | Suicide Risk Assessment as defined in CCCMS Case Manager duties table above. | Unpredictable workload – Time studies not completed. |
| | | **TOTAL INCREASE IN WORK TIME = AT LEAST 7.5 HOURS PER WEEK** |

No additional clinical case managers are requested at this time to implement the increased requirements listed above for EOP GP. The work and space study requested below will provide data to guide determination of whether new duties can be adequately completed by existing staff.

LPT Duties:
New requirements include Group therapy/ Monthly Group Therapy Treatment Notes/ 5-day follow up for OHU discharge on weekends.

*At this time, no additional staff is requested for COR General Population EOP because this population is not included in the current court order.*

ASU – Stand Alone

Screening/ Daily rounds – LPTs have been previously allocated, but Case Managers to complete follow-up full evaluations for screenings were never funded.

A future BCP will request a ratio of 0.5 CCM per each institution that has an ASU Stand-Alone (10 institutions) = Psychiatric Social Worker 5.0 PY additional

*Current Request Additional 0.5 Psychiatric Social Worker for COR Stand Alone ASU*

ASU – CCCMS

In addition to GP EOP Duties CCCMS ASU new duties include:

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
|---|---|---|
| Requires a CCM to be present at Institutional Classification Committee meetings. | The **assigned** case manager (or psychiatrist) shall attend all ICC meetings. Mental health assessments are required for input into ICC, including the inmate-patient's current participation in treatment, medication compliance, suitability of single celling or double celling, risk assessment of self-injurious or assaultive behavior, status of Activities of Daily Living, ability to understand Due Process proceedings, likelihood of decompensation if retained in ASU, recommendations for alternative placement and any other custodial and clinical issues that have impact on inmate-patients' mental health treatment | These assessments are a large increase in responsibility for ASU CCCMS Clinicians. Estimate 8 hours per week increase in duties for CCMs and also to have impact on psychiatrists working in ASU. |
| ASU CCCMS Treatment Plans with requirements the same as to GP CCCMS Treatment Plan requirements. | Requirement to include in the treatment plan the inmate-patient's security concerns and status. | Responsibility for regularly tracking and updating treatment plans with security concerns and status. Estimate 2 hours per week increase in duties. |

| | | |
|---|---|---|
| A 31- item screening for ASU inmates was added with LPT resources since 1997 | No resources added for CCCMS Clinicians to conduct follow up for emergency, urgent, and routine referrals from screenings. | Approximately 2 hours per week increase in duties for CCMs and Psychiatrists. |
| | | TOTAL INCREASE IN WORK TIME = 15.5 HOURS PER WEEK for GP CCCMS LOC PLUS ADDITIONAL 12 HOURS FOR ASU SPECIFIC DUTIES: **TOTAL INCREASE IN WORK TIME = 27.5 HOURS / WEEK** |

Staffing in ASU and SHU has been a consistent concern of the *Coleman* case Special Master. From 1999 – 2003, the completed suicides in ASU/SHU account for 46 percent of all suicides in the CDC inmate population.

There is no currently established ratio for ASU CCCMS CCMs. These duties were never staffed separately from the CCCMS GP Population. The current ratio is therefore approximately the same as GP CCCMS = 1 CCM: 90 inmates. However, institutions have been free to redirect staff as deemed necessary to cover the ASU CCCMS mission.

A future BCP will request a ratio of 1 CCM: 40 CCCMS inmates at all institutions.

*Current Request Psychologist, CF 1.5 PY additional for COR ASU CCCMS*

Psychiatry Duties: Increased IDTT/ ICC Time/ Response to screenings
The current ratio = 1 Psychiatrist: 125 CCCMS inmates

A future BCP will request a ratio of 1 Psychiatrist: 100 CCCMS inmates at all institutions

*Current Request Psychiatrist, CF 0.5 PY additional for COR ASU CCCMS*

LPT and RT duties include Group Therapy when clinically indicated/ Monthly Group Therapy Notes/Increased IDTT Time

Currently no LPTs or RTs are allocated to ASU CCCMS for these duties. LPTs are allocated for screening, rounds, and medication.

A future BCP will request a ratio of 1.62 LPT: 100 ASU CCCMS inmates and 1.15 RT: 54 ASU CCCMS inmates.

*Current Request LPT 1.62 additional for COR ASU CCCMS*
*Current Request RT 1.77 additional for COR ASU CCCMS*

Custody Escorts ASU and SHU

Custody Escorts – ASU and SHU Individual and Group Therapy –

A future BCP will request a total ratio of 1 (1.18 PY's) escort officer: 60 CCCMS ASU/SHU inmates in all institutions.

***As stated earlier, this Finance Letter should have also included the following Custody component, which will be requested in a future BCP:***

***- 10.82 Correctional Officers for Security and Escort support***

IDTT Includes Assigned Correctional Counselor I (CC I):

The total workload identified by HCSD for increased IDTT time of 10 minutes per case as well as 15 percent of the population being seen every 30 days instead of 90 equates to 1.0 CC I for every 1,228 CCCMS ASU inmates (based upon an average work year of 1,776 hours). These positions should not be included the current ratio but rather should be exempt from the current CC I ratio and will fluctuate based upon the population.

A future BCP will request Total Ratio 1 CC I: 160 CCCMS ASU Inmates in all institutions

***As stated earlier, this Finance Letter should have also included the following Custody component, which will be requested in a future BCP:***

***- 0.63 CC I position for ASU CCCMS IDTT duties.***

SHU - CCCMS
In addition to GP EOP Duties CCCMS ASU new duties include:

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
|---|---|---|
| Requires a CCM to be present at Institutional Classification Committee meetings. | Mental health assessments are required for input into ICC, including medication compliance, suitability of single celling or double celling, risk assessment of self-injurious or assaultive behavior, status of Activities of Daily Living, | These assessments are an increase in responsibility for SHU CCCMS Clinicians. Estimate additional 4 hours per week. |

|  |  |  |
|---|---|---|
|  | ability to understand Due Process proceedings, likelihood of decompensation if retained in SHU, and recommendations for alternative placement. |  |
|  |  | TOTAL INCREASE IN WORK TIME = 15.5 HOURS PER WEEK for GP CCCMS LOC PLUS ADDITIONAL 4 HOURS FOR SHU SPECIFIC DUTIES: **TOTAL INCREASE IN WORK TIME = 19.5 HOURS / WEEK** |

In 1998 for SHU institutions, 1.0 CCM was added for each 300 SHU inmates (not tied to CCCMS ratios). The current ratio is 1 CCM to approximately 100 CCCMS inmates.

A future BCP will request a total ratio of 1 CCM: 50 CCCMS SHU inmates

*Current Request for COR SHU CCCMS includes*
*Psychologist, CF 3.0 PY additional*
*Psychiatric Social Worker, CF 3.0 PY additional*

Psychiatrist new duties – Increased participation in IDTT and ICC

A future BCP will request a total ratio of 1 Psychiatrist: 100 CCCMS SHU Inmates

*Current Request for COR SHU CCCMS includes*
*Psychiatrist, CF 3.5*

SHU LPT New Duties
Weekly Rounds required for CCCMS Inmates. Bi-Weekly Rounds required for Non-MHSDS Inmates

A future BCP will request an additional 1.62 LPT per Institution with CCCMS SHU Program (CCI, COR, VSPW)

*Current Request for COR SHU CCCMS includes*
*LPT 1.62 PY for rounds*

Group Therapy for SHU CCCMS/ Monthly Group Therapy Documentation:

A future BCP will request an additional .81 LPT per Institution with CCCMS SHU Program

*Current Request for COR SHU CCCMS includes*
*LPT .81 PY for group therapy and documentation*

*(Total combined request for LPT COR SHU CCCMS = 2.43 PY)*

A future BCP will request an additional 1.15 RT per Institution with CCCMS SHU Program

*Current Request for COR SHU CCCMS includes*
*RT 1.15 PY for group therapy and documentation*

Custody Escort for SHU CCCMS Individual and Group Therapy
See ASU Correctional Officer above.

Office Technician
See Clerical Section Below

ASU EOP Programs and HUBS

The current ratio for ASU EOP is 1 CCM to 9 EOP ASU EOP Inmate-patients.  This ratio is sufficient to meet new MHSDS Program Guides requirements.

The new Clinician requirements for EOP level of care in ASU can be absorbed by current ASU EOP clinician staffing, if additional Registered Nurse (RN) and RT staff is allocated to provide 10 hours per week of group therapy.

A future BCP will request a ratio of 1.62 RN: per institution with ASU EOP program (10 institutions)

*Current Request for COR ASU EOP includes*
*RN 1.62 PY*

A future BCP will request a ratio of 1.15 RT: per institution with ASU EOP program (10 institutions)

*Current Request for COR ASU EOP includes*
*RT 1.15 PY*

The Psychiatrist requirements in the revised MHSDS Program Guides for EOP level of care increase IDTT time.  This time is additionally increased by the more rapid placement and removal rate in ASU EOP.

A future BCP will request a psychiatrist ratio in ASU EOP of 1.0 Psychiatrist: 45 ASU EOP inmates. Institutions with more than 45 ASU EOP patients will require an additional allocation of 0.5 PY.

*Current Request for COR ASU EOP includes*
*Psychiatrist 1.0 PY*

<u>PSU</u>
Increased requirements can be absorbed by current PSU clinician staffing if relief LPT and RT positions are provided so clinicians do not get redirected to cover group therapy when LPTs are absent. See Nursing Section below.

<u>RC – New Requirements</u>
The bulk of the Intake Assessment requirements and Treatment Planning requirements described in the CCCMS GP section will be the responsibility of RC staff. The revised Program Guides require that EOP level of care patients be seen weekly until transfer (but does not require the 10 hours of weekly structured therapeutic activities). According the resource analysis data collected, for RC related duties, the caseloads should be reduced by 50 percent from the current staffing allocated. The current RC duties were never staffed separately from the CCCMS level of care duties, and the ratio below takes this into account along with the revised Program Guides duties.

A future BCP will request a ratio of 1 CCM: 45 MHSDS RC Inmates and a ratio of 1 Psychiatrist: 180 MHSDS RC Inmates

*COR has no RC, therefore no resources are requested at this time.*

RN new duties in RC
RC Screenings completed under the supervision of an RN

A future BCP will request 0.82 (0.5 plus relief) RN per RC = 9.02 PY additional to be allocated among the 11 institutions with RC mission.

*COR has no RC, therefore no resources are requested at this time.*

CC I new duties in RC - Counselors are required to review any mental health records in Central File and provide information in IDTT process.

A future BCP will request .25 CC I position for 500 intakes/week

*COR has no RC, therefore no resources are requested at this time.*

**MHCB**
Psychologist Duties: MHCB were never staffed for 7 day per week clinician coverage as required by Title XXII. The revised Program Guides have increased requirements for

discharge communication, and patients are often referred to DMH from MHCB. Each DMH referral is estimated to take 6 hours to complete. MHCB IDTT Time will also increase due to increased treatment planning requirements.

A future BCP will request change of all Psychologist, CF positions allocated to MHCB from 1.0 to 1.62 (to include relief factor).

*Current request for COR MHCB*
*Psychologist, CF 1.86 PY*

Psychiatrist Duties:  Psychiatrists will also be affected by increased IDTT time for treatment planning.

The requirement that will most affect psychiatrists is the new requirement in the revised MHSDS Program Guides that the Discharge Report be written and transmitted <u>before</u> a patient discharges.  In order to complete this fast turn-around time, the psychiatrist to patient ratio in MHCB must be increased.

A future BCP will request a total ratio of 1 Psychiatrist: 10 MHCB

*Current request for COR MHCB*
*Psychiatrist, CF 0.3 PY*

The revised Program Guides require a CC I assigned to MHCB attend the IDTT.

A future BCP will request a total ratio of .25 CC I: 12 MHCBs

***As stated earlier, this Finance Letter should have also included the following Custody component, which will be requested in a future BCP:***

***- .5 CC I***

The revised MHCB require a supervisor to review all MHCB Discharge Plans and to ensure implementation of the Discharge Plans.  See Institution Level Supervision section below.

In order to provide therapeutic activities required in Title XXII, some of these activities need to be scheduled on 3rd watch.  A custody supervisor is required for this to occur.

A future BCP will request an additional 1.0 Custody Sergeant per MHCB program

***As stated earlier, this Finance Letter should have also included the following Custody component, which will be requested in a future BCP:***

***- 1.0 (plus relief) Correctional Sergeant for 3rd Watch***

Resources required include a Transcription Service or additional Medical Transcription Staff for discharge reports (See Clerical Section).

---

Rules Violation Report (RVR) – CDC Form 115X - Mental Health Evaluations

Inmates in the MHSDS or any inmate showing signs of possible mental illness may require a CDC 115-X RVR: Mental Health Assessment when they are charged with a disciplinary action. Time studies indicate that an initial assessment requires an average of 2.5 hours, and Mental Health Assessments conducted on repeat offenders take an average of 1.5 hours. At California State Prison-Sacramento (housing approximately 350 EOP level of care inmates) from April 2004 – November 2004, the average number of required Mental Health Assessments per month was 82. These RVR Assessments required an average of 162 hours per month to complete. RVR Assessments for CCCMS level of care inmate-patients are completed only when there is a referral indicating that the inmate demonstrated signs that mental illness may have impacted his/her behavior. RVR Assessments for CCCMS level of care inmate-patients may be absorbed by the clinical case manager staffing as requested for CCCMS level of care.

A future BCP will request an additional 1.0 Psychologist, CF: 300 EOP Level of Care Inmates (based on current GP, ASU and PSU combined EOP population)

*Current request for COR RVR Assessments*
*Psychologist .79 PY*

Nursing Duties – New Requirements – Not Program Specific

The revised MHSDS Program Guides require that Health Care Services Request Forms (Staff referrals and Inmate self-referrals) be processed and triaged 7 (seven) days per week. In institutions with mental health programs, the increased amount of referrals requires additional nursing staff to evaluate the urgency of the need and to access appropriate care. The referral process is currently not standardized across institutions, and this will be an entirely new workload assigned to RN staff. In the stipulated agreement for the *Plata* court case, RNs in some institutions are using this process for medical referrals, however, the additional mental health referrals require staff as requested below.

RNs are also responsible, in some cases, for drawing blood and coordinating laboratory analyses and communication of the results to the physician. This has been an area of non-compliance in the *Coleman* corrective action plans. Additional RNs requested below will also be sufficient to complete these duties:

A future BCP will request an additional 1. 62 RN: 800 MHSDS Inmates

*Current request for RN duties at COR*
*RN 1.5 PY*

<u>Relief Factor – LPT</u>
Mental Health Rounds are required in the New Stand-Alone ASU 7 days per week, but the LPT position allocated was only staffed as a 1.0 position. All LPT duties require full relief. In all Mental Health Programs, it is not cost effective to utilize mental health clinicians to cover group therapy and other triage and rounds duties when LPTs are not available. The above assumption that new CCM Duties can be absorbed by current staffing in CCCMS GP and EOP, and the CCM staffing ratios for ASU and SHU, assume that the LPT current 1.0 positions will be augmented to 1.62 positions. Failure to convert these positions would require a recalculation of CCM ratios. The 1.0 LPT positions will be augmented to 1.62 only in institutions with more than 10 LPTs.

A future BCP will request to augment existing LPT 1.0 positions at institutions with more than 10 LPTs to 1. 62.

*Current Request to augment LPT positions at COR*
*LPT 12.84 positions*

A separate BCP seeks an augmentation to the nursing classifications by an additional 0.08 PY per position for Training and an increase to Sick Leave allocations, including LPT. In the event that this BCP is approved, all new LPT positions identified by this finance letter will require the same augmentation of 0.08 PY per position. These calculations are as follows:

The descriptions of new LPT duties in the sections that are divided by program above, request additional LPTs = 69.3 PY. These positions were requested with relief allocation at 1.62 PY. The number of 1.0 LPTs requested is calculated: 69.3 PY/1.62 = 42.8 PY.

If the separate BCP were accepted, an additional 0.08 (as described above) would be added to each LPT position. 42.8 x .08 = 3.42 PY additional. + 3.42 = PY additional.

Telepsychiatry appointments were never staffed with LPTs required to complete appointments. *This staffing need can be resolved by above augmented positions.*

Increased Group Therapy Requirements/ Poor compliance with current requirements. *This staffing need will be resolved by above augmented positions.*

The revised MHSDS Program Guides require that policies and procedures be implemented to all medications to be administered after 7:00 p.m. when clinically appropriate (i.e., sedating medications). This requirement, in addition to the increase in the numbers of medications distributed in the CCCMS Population require nursing staff in addition to those regularly allocated for medication administration.
*This staffing need will be resolved by above augmented positions.*

The revised MHSDS Program Guides require that a Health Care Staff witness be present in RC when new medications are ordered.
*This staffing need will be resolved by above augmented positions.*

Relief Factor – CCMs
When staffing was allocated in order to implement the 1997 Program Guides, all Psychologist and Psychiatric Social Worker positions were established as 1.0 PY. The staffing did not adequately account for coverage of sick and vacation time. With increased CCM duties required by the revised Program Guides, it will not be feasible for allocated staff to cover required mental health services and IDTTs when a CCM is unexpectedly absent or is on vacation.

A future BCP will request to augment the 1.0 CCM positions to 1.15 only in institutions with more than 10 CCMs.

*Current request to augment CCM positions at COR*
*Psychologist, CF 4.5 PY*
*Psychiatric Social Worker, CF 0.9 PY*

OHU – 7 day per week coverage
The revised MHSDS Program Guides require 7-day per week coverage in OHU. Additional weekend clinical staffing is requested in institutions that have a significant OHU population and no MHCB (where weekend staffing is requested above. These five (5) institutions are Avenal State Prison, California Correctional Institution, California Men's Colony – East (CMC-E), North Kern State Prison, and California State Prison - San Quentin.

A future BCP will request .62 Psychologist, CF Positions at the above 5 institutions = 3.10 PY

MDO/BPT/Z Cases (PC 1203.03), DRB Placements from DMH (WIC 7301), Other legally required reports

4300 Lifer evaluations need to be conducted per year in CDC. A full time psychologist is able to complete approximately 150 evaluations per year. Currently, contract psychologists are used to complete some evaluations, and mental health staff are redirected from providing other court-ordered treatment in order to conduct these evaluations. In order to complete these evaluations without negatively impacting other treatment required by the revised MHSDS Program Guides, additional positions are required. It is estimated that approximately half of the evaluations can be conducted using existing staff.

A future BCP will request an additional Psychologist, CF per 300 evaluations per year

*Current request for COR MDO/BPT evaluations*
*Psychologist .56 PY*

<u>Clerical Needs</u>
When the Mental Health Tracking System was implemented, one Office Technician (OT) was allocated at each institution. For some institutions, this was sufficient. However, in order to complete required duties, additional OT support staff must be allocated considering the ratio of MHSDS inmates at each institution. These OTs are responsible for entering appointment and contact data, and generating the reports required to demonstrate compliance with court mandates. They are often responsible for tracking movement, new arrivals, scheduling group therapy, coordinating communications regarding 5-day (post MHCB) suicide follow-up, participating in QITs, completing staff meeting minutes, and providing administrative and clerical support to clinicians and supervisors. The revised MHSDS Program Guides now require tracking patients discharged from OHU with 5-day suicide follow up, increased group therapy scheduling in CCCMS, increased IDTT scheduling and tracking in EOP level of care, and tracking inmates who require translators an/or reasonable accommodation for disabilities.

A future BCP will request .5 Additional OT: 300 EOP level of care or 800 CCCMS level of care inmates.

*Current Request at COR*
*OT 0.75 PY*

In the revised MHSDS Program Guides, new requirements for MHCB require logs to be kept with specific data regarding patients admitted to the MHCB, and those evaluated, but not admitted. The revised MHSDS Program Guides also require the discharge report to be written, transcribed, and signed, prior to the patient leaving the MHCB. Without appropriate OT and transcription staff, CDC will not be able to comply with MHCB admission transfer timelines (Patients will be retained in needed beds pending transcription of a discharge report). These transcription duties will either require full time availability of medical transcription staff, or hiring contract medical transcribers. *This OT staffing need will be resolved by above requested positions.*

A future BCP will request additional 1.0 Medical Transcriber, or equivalent funding for contract medical transcription service where recruitment and retention is not feasible – A future BCP will request one additional Medical Transcriber per institution with a MHCB.

*Current request for COR medical transcriptions*
*Medical Transcriber 1.0 PY*

Supervision of these additional clerical staff is required at a ratio of 1: 10.
Request additional Office Services Supervisor II (OSS II) Positions = 6.0 PY additional

*Current request for COR Clerical Supervision*
*OSS II*

Pharmacy
Pharmacy needs are included in a separate BCP.

Medical Records
A Medical Records study is included in a separate BCP. Medical records duties that will increase related to the revised MHSDS Programs Guide include tracking and filing of requests for outside medical records, filing additional group therapy monthly notes and weekly rounds notes, as well as increased filing of quarterly review documentation and IDTT notes. At this time, 2-year limited term positions are requested for these additional duties until the results of the Medical Records study can be used to determine databased staffing levels.

A future BCP will request .5 Office Assistant per 300 EOP or 800 CCCMS.

*Current Request for COR Medical Records*
*Office Assistant 0.75 PY- 2 year limited term*

Institution Level Supervision
The revised MHSDS Program Guides require that a supervisor review all MHCB discharge treatment plans to audit implementation. This requires accessing Unit Health Records and reviewing care provided.

A future BCP will request an additional .25 Sr. Psychologist, Supervisor: 300 EOP Inmates or 800 CCCMS Inmates to review MHCB discharge treatment plans.

Supervision of clinical staff:
Supervisors are responsible for overall work quality, participation in the quality management system, chart audits, performance evaluations, and ensuring that the new requirements for treatment planning and local operating procedures are implemented. In institutions with a significant mental health mission, first line supervisors are responsible for functional supervision of the operation of a mental health program, which may include psychologists, psychiatrists, licensed psychiatric technicians and nurses. At smaller institutions, the mental health supervisor is responsible for all mental health operations at the facility. For this reason, mental health managers recommend that first line supervisors remain responsible for **direct** supervision of a maximum of 10 clinicians.

A future BCP will request a total ratio of 1.0 Sr. Psychologist or 1.0 Sr. Psychiatric Social Worker: 10.0 Clinicians

Although currently, LCSWs are generally supervised by Sr. Psychologists, it is fiscally prudent, and clinically appropriate to allocate Supervising Psychiatric Social Worker (SPSW) positions for these additional supervisory needs. SPSW's may serve as

functional program supervisors for mental health clinicians of any classification. Direct/clinical supervision may be provided by Supervising Psychologists and Psychiatrists for duties related to the clinician's scope of practice that cannot be assigned to a SPSW.

*Current request for Supervision of CCM at COR*
*Senior Psychiatric Social Worker 1.79 PY*

Supervision of nursing staff:
Experienced supervisors recommend that first line supervisors be responsible for direct supervision of no more than seven (7) mental health nursing staff.

Currently, 246.96 LPTs are supervised by 26.7 Supervising Registered Nurse I (SRN I) staff members and two (2) Sr. LPTs. This finance letter requests an additional 69.3 LPTs plus 153.74 PY allocated for relief over a two year period. The total number of LPTs will be 470. The total number of Supervisors required for a 1 Supervisor: 10 LPT ratio at institutions with more than 10 LPTs = 33.

33 recommended supervisors – 2 (current Sr. LPT supervisors) = 31 Supervisors
The Sr. LPT classification has not been regularly used to supervise LPTs, but is recommended to ensure appropriate supervision relative to scope of practice (i.e., group therapy duties).

A future BCP will request a total ratio of 1.0 Sr. LPT: 10.0 LPT (at institutions with more than 10 LPTs).

*This finance letter requests upgrading of 4.0 LPTs to Sr. LPT positions in FY 2005-2006. Net positions requested = 0*

Additional SRNI positions are required to supervise requested RN positions. Currently, 164.91 RNs are allocated to mental health programs. 26.7 SRN I's supervise the RN staff. 106.05 are requested in this finance letter. A total of 270.96 RNs will require a total of 27 SRN I Supervisors.

*Currently allocated SRN I positions at COR are sufficient to meet this need.*

## RC Screening and Diagnostic Clarification

The Millon Clinical Multiaxial Inventory – III (MCMI-III) test can be administered in approximately 30 minutes, either individually or in a group setting. Research indicates that this test is a valid and reliable diagnostic tool to assist in to objectively triaging patients for immediate mental health needs, determining mental health diagnosis, as well as predicting future need for mental health intervention. This test may also be used to predict reaction to authority, escape risk, sexual predation/victimization, disposition to malinger, response to crowding/isolation, suicidal tendencies, and amenability to treatment (See Attachment D: Retlzaff, P., Stoner, J., and Kleinsasser, <u>The Use of the</u>

MCMI-III in the Screening and Triage of Offenders, *International Journal of Offender Therapy and Comparative Criminology, 46, 3, 319-332).*

The use of this test, along with a standard computer generated report of results, is proposed for use at RC, for all newly arriving inmates who have a positive mental health screening indicator (approximately 20,000 inmates per year). A more rigorous interpretation/analysis of results is proposed for use with current inmate-patients at EOP level of care, when diagnostic clarification is needed (approximately 3,000 per year). See Attachment E for sample report.

**The use of this instrument is expected to reduce overall mental health program cost.** Data generated from the standard use of the MCMI-III at reception centers will be used to determine appropriate mental health level of care, thereby reducing inappropriate placements into mental health programs. Use of the MCMI-III at EOP level of care will significantly reduce the use of costly DMH beds for diagnostic clarification.

A future BCP will request $443,967 in FY 2006-2007 and $402,500 ongoing annual funding for implementation of a valid and reliable test to predict mental health needs of inmates arriving in RC and to aid diagnostic clarification in EOP level of care (See Attachment F). In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

Workload Study

Because the designs of ASU and SHU differ in CDC institutions, the space for group therapy required by the revised MHSDS Program Guides required further assessment. In addition, the workload for mental health staff is likely to be affected by revised requirements offset by the allocation of staff requested in this and future budget change proposals.

A future one time funding totaling $500,000 (subtract $15,152 in current request) will be requested for a contractor to conduct a workload and treatment space survey statewide including:

- Treatment space availability in each institution that provides CCCMS level of care in ASU/SHU. Final recommendations regarding provision of group therapy is ASU/SHU with the most efficient use of staff time.
- Mental health workload and staffing survey to determine ways efficiency of staff time can be improved. Collection of workload data to determine any additional positions required for full implementation of the MHSDS program guides.

*Current Request is for $15,152 for a workload and space study at COR.*

Performance Evaluation and Court Case Compliance

The Quality Management System is required, by the *Coleman* and *Plata* court cases, in order to provide adequate performance management and to ensure compliance with mental health policies and procedures. Quality Management requirements specific to mental health involve identification of problems in delivery of mental health services,

establishment of Quality Improvement Teams, tracking progress of Quality Improvement Teams, conducting Suicide Prevention Focused Improvement Team meetings (including development and implementation of corrective action plans when a suicide occurs), conducting Mental Health Subcommittee meetings, and facilitating an overall data-based approach to bed utilization. All meetings require documentation, which is sent to other Quality Management Committees at the institution and at headquarters. Although an analyst has been designated at some institutions for the purpose of health care quality management, a dedicated Health Program Specialist I (HPS I) for mental health quality management is required to ensure that these important duties are completed as required. This position will also be responsible for oversight of tracking reasonable accommodation offered to MHSDS inmates who are part of the class action *Armstrong* court case. Each HPS I require clerical support in order to complete duties associated with taking meeting minutes, copying, tracking, filing, and communications.

A future BCP will request 1.0 dedicated HPS I at each institution with a significant mental health mission and 1.0 Mental Health Quality Management dedicated OT at each institution with a significant mental health mission.

<u>HCSD – Coordination, Supervision, and Policy Implementation</u>

MHSDS Program Guides Implementation and Suicide Prevention Coordination:
The revised MHSDS Program Guides contain policies and procedures, which continue to require resource analysis, resource allocation, training and implementation, review and revision.

HCSD Suicide Review duties as described below, will be assigned to Quality Management Oversite Sr. Psychologist, Specialists. Integration of Quality Improvement Plans into systemwide suicide prevention policies, procedures, and training, requires a separate personnel function, which will be assigned to the Senior Psychologist, Supervisor requested below. These duties require a full time Senior Psychologist, Specialist, to synthesize requirements of the *Coleman* court case and other policies and laws that affect the Program Guides.

A future BCP will request an additional 1.0 Sr. Psychologist, Specialist for HCSD.

<u>HCSD Quality Management Over-site</u>

Overview of HCSD Mental Health Manager Responsibilities:

**<u>The Chief of Mental Health (Currently Chief Psychiatrist) Duties</u>**
The Chief of Mental Health/ Chief Psychiatrist at HCSD maintains overall responsibility for:

- Supervision of Psychiatrists hired to provide services by tele-psychiatry
- Representation of the Department on issues regarding the MDO Act/ Penal Code (PC) 2962

- Review and approval of MDO (PC 2962) reports
- Consultation and communication with professional organizations, public officials, department staff, and community groups regarding all phases of CDC mental health programs
- Liaison with the mental health profession and allied groups, provider organizations, and other public and private agencies
- Mental health policy and standards development
- Mental health program strategic planning
- Mental health bed utilization
- Patient access to care
- Mental health services performance evaluation and quality management
- Suicide prevention and response program
- Review of suicides and corrective action
- Substance abuse treatment programs
- Mental health staff recruitment
- Mental health training for all CDC staff
- Resource (staff and equipment) allocation
- Compliance with laws and court mandates related to mental health
- Compliance with laws and court mandates related to developmental disabilities
- Compliance with and development of memoranda of understanding with other agencies (i.e., DMH)
- Supervision of the transfer of inmates to the DMH pursuant to appropriate Penal Code sections
- Coordinated Clinical Assessment Team/ Case Conference (Provide case review and clinical guidance regarding difficult patient cases)
- Coordination with Parole Services
- Coordination with Institutions Division/ Custody Related Issues
- Coordination with Inmate Medical Services
- Coordination of the HCSD forensic assessment unit
- Development and implementation of mental health policy
- Coordination of Long term planning
- Supervision of mental health staff working at HCSD
- Participation in Union Negotiations
- Presentation to professional groups, lay groups, and legislative committees

**E. Chief Psychologist Duties**

The Chief Psychologist at HCSD serves as backup for all duties of the Chief of Mental Health, and may be assigned duties related to any of the above tasks (except supervision of psychiatrists and approval of PC 2962 reports). The Chief Psychologist is additionally responsible for coordination of psychology internship programs in CDC institutions.

In order to fully implement HCSD's Quality Management mission, it is necessary to assign additional Senior Psychologists (Specialists and Supervisors) to provide oversight of *Coleman* compliance in the institutions. *Coleman* court mandates require coordinated over-site of the implementation of and compliance with mental health policies and

procedures, and CDC has not been successful in meeting these court mandates. The *Plata* court case also requires headquarters staff to facilitate implementation of medical policies and procedures. The staff structure suggested below is based on the new Inmate Medical Services Quality Management Assistance Teams. Providing this increased level of assistance to the CDC institutions in monitoring compliance with mental health policies and procedures is the only way to become compliant with *Coleman* court mandates.

In addition to general Quality Management requirements, specific requirements are included in the revised MHSDS Program Guides regarding Suicide Death Review:

- When a suicide occurs, within two (2) business days of receipt of the death review folder, the HCSD Suicide Prevention and Response Focused Improvement Team (SPR FIT) Coordinator shall appoint a Mental Health Suicide Reviewer (MHSR) from a pool of qualified mental health staff at HCSD, or regionally from an institution other than where the suicide occurred.

- Within one week, seven (7) calendar days, of being appointed, the MHSR shall begin reviewing the suicide case for compliance with the CDC SPR FIT policies and procedures. The MHSR shall also review all related documentation including the Unit Health Record; Central File; Inmate Death Reports, CDC 7229 A and B; Crime/Incident Report, CDC 837 A and B; and any other appropriate documentation. The MHSR shall have access to the inmate's cell, visiting log, recorded telephone conversations, and other information as required. The institution's SPR FIT Coordinator may assist the MHSR in his or her efforts. The assistance may include making available the Unit Health Record, the Central File, and any other appropriate information as well as arranging interviews if required. The MHSR may conduct interviews with clinical staff, custody staff, and inmates. However, should there be any indication an employee misconduct investigation may be warranted, the MHSR shall immediately consult with the HCSD SPR FIT Coordinator, who shall provide guidance in proceeding with the review. Generally, the MHSR shall discontinue interviews with any employees who may be associated with or implicated in the employee misconduct investigation, but shall continue with all other aspects of the suicide review process.

- In cases where there are concerns with clinical care, the case shall be referred to the local Clinical Performance Enhancement and Review Subcommittee (CPER).

- Within thirty (30) calendar days of the inmate suicide, the MHSR shall complete a preliminary Suicide Report containing the following information: inmate name, CDC number, age, date and time of discovery, time of death, institution, housing, mental health level of care (if applicable), method, cause of death, findings of coroner (if available), brief summary and preliminary findings including recommendations for quality improvement. The report shall also indicate whether further investigation/inquiry is recommended (if one has not already been initiated). This report shall be immediately forwarded to the HCSD SPR FIT Coordinator who will then schedule discussion of the report at the HCSD Emergency Response and Death

Review (ERDR) Subcommittee. The MHSR will present the case to the ERDR Subcommittee.

- The HCSD ERDR Subcommittee is the body that reviews the documentation and reports submitted by the institution and MHSR, determines compliance with the statewide SPR FIT policies and procedures, reviews the quality improvement (a.k.a. corrective action) plans (QIP), and continues its review, in collaboration with the HCSD MHP Subcommittee, until the QIPs are completed and the cases are closed.

- Within forty-five (45) days from the date of death, the HCSD ERDR Subcommittee shall complete its review of the preliminary suicide report; review the QIP on the preliminary suicide report, and forward the report to the MHSR for completion of the Suicide Report and the accompanying Executive Summary.

When warranted, the MHSR shall recommend a quality improvement (a.k.a. corrective action) plan (QIP), based on the findings from the review of the case, which shall address and make recommendations to improve identified problems with clinical care and compliance with policy and procedure. The QIP shall address problems identified, recommended actions, due dates for recommended actions, and supporting documents required from the institution.

The HCSD ERDR Subcommittee shall review the QIP and may take the following actions:

- Ensure consistency with policy and procedure

- Recommend remedial action, documentation, and monitoring

- Refer for further action in accordance with DOM Chapter 3, Article 14, Employee Misconduct Investigations/Inquiries, when appropriate

- Report to the appropriate professional licensing board for investigation, when appropriate

When approved by the HCSD ERDR Subcommittee, the Suicide Report shall be signed by the Deputy Director, HCSD, or designee.

The Suicide Report by the MHSR shall incorporate the QIP approved by the HCSD ERDR Subcommittee. The HCSD SPR FIT Coordinator shall include with this report the Inmate Death Reports CDC 7229 A and B, Crime/Incident Report CDC 837 A and B, Movement History and Offense History, and the Executive Summary serving as the cover page to complete the Final Suicide Report. The report shall then be forwarded to the Director, CDC, or designee, with copies to: Secretary, Youth and Adult Correctional Agency; Deputy Directors Institutions Division and HCSD; Regional Administrator, HCSD and Institutions Division; Legal Affairs Division; and to the reporting institution's: Warden; Health Care Manager/Chief Medical Officer (HCM/CMO); Mental Health Program Manager, Chief/Senior Psychiatrist and Chief/Senior Psychologist; and, other appropriate interested and legally designated persons within 60 days of date of death.

The Warden and HCM/CMO are responsible for ensuring the implementation of the QIP within the specified time frame, which is not greater than sixty (60) days of receipt of the finalized Executive Summary of the Suicide Report with signature approval from the Deputy Director, HCSD (120 days following the date of death).

The QIP shall be monitored by the Warden, HCM/CMO, Mental Health Program Manager, Chief Psychiatrist, Chief Psychologist, and SPR FIT Coordinator at the institution of occurrence. HCSD may require ongoing documentation of compliance.

The Local SPR FIT Coordinator shall prepare a follow up report of implementation addressing action taken on the recommendations of the QIP. All appropriate supporting documentation confirming that these actions have been taken shall be attached to this report. See table below for list of suggested supporting documentation. The Warden and HCM/CMO, or institution Mental Health Program Manager shall sign this report. The institution shall retain a copy of the report and forward the original to the HCSD ERDR for review. The report is due within thirty (30) days following the implementation of the QIP (90 days following receipt of the Executive Suicide Report). Additional follow up monitoring shall occur as necessary as dictated in the QIP.

**Action, Documentation, & Monitoring for Suicide Quality Improvement Plans**

| ACTION | DOCUMENTATION/MONITORING |
|---|---|
| Training | Copy of training agenda and sign-in sheet |
| Required appointments with clinicians are held | List of appointments from Mental Health Tracking System |
| Changes in operating procedure | Copy of procedure or memos |
| Develop Quality Improvement Team | Copy of recommendations or change in procedures |
| Missing medication due to transfer to a different housing unit | Ongoing monitoring of Medication Administration Records in the Unit Health Record (UHR) Provide sample audit |
| Proper Documentation | Provide plan to audit UHR and a sample audit |
| Five Day Follow-up of suicidal inmates released from MHCB | Audit of documentation in UHR; provide a sample audit |
| Rounds and evaluations done in ASU by psychiatric technicians | Audit UHR, CDC 114 Isolation log and CDC 114-A, Daily Log; provide sample audit |
| Inmates on Keyhea are identified | Review UHR |
| Conduct suicide risk assessment | Review UHR |
| Statewide policy issues | Review new policy |
| Investigation of individual practitioners | Provide status or completion date of investigation |

| Audit of records per specified length of time to be sure that quality improvement is being consistently followed | Periodic reports of audit findings to HCSD SPR FIT and HCSD MHP |
|---|---|

The HCSD ERDR Subcommittee shall continue to review all open suicide cases until the QIP is approved and each case is closed. The QIP shall be incorporated into the final Suicide Report. All decisions made by the HCSD SPR FIT regarding compliance and quality improvement shall be documented in the final Suicide Report.

The Follow-Up Report on implementation of the QIP shall be reviewed by the HCSD SPR FIT Coordinator, and distributed according to legal mandates.

If, during the suicide review process, other death related information arrives, such as CDC Form 837 C, CDC Form 7229 C, or Coroner's report, the DNC will locate the death review folder and place these documents inside. The DNC shall update the routing sheet and notify the SPR FIT Coordinator of the new information. Upon completion of the suicide review, the death review folder containing the Suicide Report and other related information shall be returned to the DNC for final data entry. The DNC shall ensure that all documentation is complete and then return the folder for final storage in a designated locked cabinet at HCSD.

The HCSD SPR FIT Coordinator appointed to oversee suicide-related activities shall coordinate analysis and review of each suicide, and compile and forward annual suicide statistics to: Secretary, Youth and Adult Correctional Agency; Director, CDC; Deputy Director, HCSD; Assistant Deputy Director, HCSD; Chief of Clinical Policies and Programs, HCSD; Institution Wardens; Institution HCM/CMOs; and, other appropriate senior HCSD staff.

<u>Duties of Requested Staff</u>

The staff requested below will complete the above suicide prevention and review duties, field questions and provide guidance to the field, identify and analyze problem areas in program compliance, conduct quality management assistance visits, and review Mental Health Tracking System reports from each institution, providing analysis and recommendations to the Mental Health Subcommittee and to HCSD management staff.

At present, three such positions exist at HCSD to oversee 32 institutions. We are requesting three (3) additional positions so that the Sr. Psychologists may be assigned to a ratio of one psychologist for approximately each five (5) institutions. In addition, in accordance with the structure of the Inmate Medical Services Quality Management Assistant Teams, one HPS I and one OT are requested for each of three CDC regions.

**Senior Psychologist, Specialist Duties**

The Senior Psychologists are currently assigned responsibility for monitoring mental health quality at assigned institutions. Time estimates, based on a time study by current staff, for assignment to five institutions are listed below:

**Quality Management/Performance Review/Court case compliance**
- Maintaining a quality improvement plan for each institution (3 hours/week)
- Monitoring progress toward meeting *Coleman* court corrective action plans for each institution (10 hours/week)
- Attendance at *Coleman* Exit Conferences (30 minutes/week)
- Responding to Plaintiff letters regarding concern about specific inmates (1 hour/week)
- Generating Mental Health Tracking System reports to provide data-based evidence of quality improvement (5 hours/ week)
- Presenting information related to Quality Management at weekly Mental Health Subcommittee meetings (3 hours/week)
- Generating solutions to areas of non-compliance/Participation in development of policies and local operating procedures ( 5 hours/week)
- Site visits to institutions/Assistance in meeting court mandates (Variable 1-2 days per week)

Suicide Review (Variable/ Average 8 hours per week)
- Review suicides (requires site visits)
- Generate corrective action plans related to suicides
- Follow-up on corrective action plans
- Provide information for a data-base related to suicides
- Analyze data related to suicides
- Generate yearly and multi-year reports summarizing data analysis
- Coordinate suicide prevention (including monthly teleconference, focused improvement teams, court recommendations, etc.).

**Total Time required for monitoring five (5) institutions, on average, exceeds 40 hours per week.**

One Senior Psychologist, Specialist is assigned half-time to coordinate mental health training of COs, including revision of training to include new policy.

In addition, Senior Psychologist, Specialists may be assigned projects related to many of the responsibilities of the Chief Psychiatrist.

**HPS I Duties:**
Each HPS I will be responsible for 10 institutions:

- Receipt, tracking, compiling and data base management for Quality Management data from each institution (10 hours/week)
- Communication related to Coordinated Clinical Assessment Team and DMH Referrals (2 hours/week)
- Maintain Suicide Data Base (2 hours/week)
- Follow up related to documentation of corrective action plan compliance (2 hours/week)
- Liaison with *Coleman* parties (3 hours/week)
- Attend and record *Coleman* Exit Conferences (2 hours/week)
- Document and track response to *Coleman* plaintiff concerns regarding specific inmates (2 hours/week)
- Mental Health Program Support – Response to questions from institutions regarding policies, procedures, contact information (2 hours/week)
- HCSD Mental Health Subcommittee (3 hours/week)
- Monitoring ASU Rounds compliance (2 hours/week)
- Fieldwork to assist troubled institutions (8 hours/week)

In addition, each HPS I may be assigned permanent duties, long term projects, or short-term projects including:

- Institution Staffing prevalence mix (32 hours/month + 24 hours quarterly)
- Population Projection (15 hours quarterly)
- Monthly report to *Coleman* Monitors regarding staffing (16 hours/month)
- Special Projects related to Chief of Mental Health duties (Variable)

**OT Duties per 10 institutions**
Staff meeting agenda and minutes (4 hours/week)
Quality Management meeting agendas and minutes (6 hours/week)
Memorandum preparation/editing (4 hours/ week)
Memorandum tracking (4 hours/ week)
Data entry (4 hours/ week)
Mail processing (in and out) (4 hours/ week)
Copying (4 hours/ week)
Filing (4 hours/ week)
Faxing (3 hours/ week)
Phone management/Communications (6 hours/ week)
Updating institution contact lists (1 hour/ week)
Travel plan preparation (2 hours/ week)
Submission of accounting documentation (2 hours/ week)
Hiring/ Interview support (2 hours/ week)

A future BCP will request a total ratio of
1.0 Sr. Psychologist Specialists: 5 Institutions (subtract 3.0 current positions) = 3.0 PY
1.0 HPS I: Region = 3.0 PY
1.0 OT: Region = 3.0 PY

Three (3) Sr. Psychiatrists will each be assigned approximately 10 institutions to provide oversight of Mental Health Forensic Field Consultation Services including court required BPT Reports and MDO Reports.

A future BCP will request 3.0 Sr. Psychiatrist, Specialist = 3.0 PY

Equipment and Supplies
A one-time cost for supplies is required to implement the revised MHSDS Program Guides at COR. A future BCP will request equipment for all institutions (see chart on page 4).

**F.  Analysis of All Feasible Alternatives**

**Alternative A:** Implement the revised MHSDS Program Guides at all institutions beginning July 2005 (see Alternative A staffing summary – Attachment A):

a.  Establish 526.0 permanent field positions and 21.2 limited term field positions in FY 2005-06 and 296.1 permanent field positions in FY 2006-07
b.  Establish 13.0 permanent central office staff positions
c.  One time funding totaling $728,862 for equipment (computers, copiers, shredders, fax machines, dictation equipment, golf carts and televisions).
d.  On going funding totaling $50,000 for printing and distribution of new forms.
e.  One time funding totaling $56,000 for group therapy materials and equipment.
f.  One time funding totaling $307,872 for inmate treatment cells.
g.  One time funding totaling $500,000 (allocated July 2005) for a contractor to conduct a workload and treatment space survey including:
    i. Treatment space availability in each institution that provides CCCMS level of care in ASU/SHU. Final recommendations regarding provision of group therapy is ASU/SHU with the most efficient use of staff time.
    ii. Mental health workload and staffing survey to determine ways efficiency of staff time can be improved. Collection of workload data to justify positions for group therapy in ASU/SHU and any additional positions required to fully implement the MHSDS program guides.
h.  One time funding totaling $443,967, and ongoing funding totaling $402,500 for use of the MCMI-III psychological testing and diagnostic clarification system. In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

**Pros**: This alternative would provide compliance with policies and procedures contained in the revised MHSDS program guides, which were negotiated with all parties in the *Coleman v, Schwarzenegger* court case. This is the most likely alternative to lead to final exit of the *Coleman* case and reduction of legal costs associated with this case within the next two years. This alternative is consistent with the mission of Youth and Adult Corrections Agency "to take responsibility and accountability for the rehabilitation of offenders" and to "provide training, counseling, and support" services.

**Cons**: This alternative requires significant resource allocation during two fiscal years to fund positions and equipment to implement the revised MHSDS Program Guides. The MHSDS Program Guides have not received final court approval, and requirements may change.

**Alternative B**: Implement the revised MHSDS Program Guides in the following three phases:

Phase One and Two - Allocate *50%* of positions requested for implementation in 2005/2006 and 2006/2007 (100% of headquarters and limited term staff) in order to reduce cost and provide partial compliance with revised mental health policies and procedures (see Alternative B staffing summary – Attachment B):

a. Establish 256.65 permanent field positions, 13.0 permanent Central Office Staff positions, and 21.2 limited term field positions for a total of 290.85 positions in FY 2005-06 and 261.0 in FY 2006-07.
b. In FY 2005-06 one time funding totaling $728,862 for equipment (computers, shredder, fax machine, dictation equipment, golf carts).
c. Starting in FY 2005-06, on going funding totaling $50,000 for printing and distribution of new forms.
d. In FY 2005-06, one time funding totaling $56,000 for group therapy materials and equipment.
e. In FY 2005-06, one time funding totaling $307,872 for inmate treatment cells.
f. In FY 2005-06, one time funding totaling $500,000 (allocated July 2005) for a contractor to conduct a workload and treatment space survey including:
    i. Treatment space availability in each institution that provides CCCMS level of care in ASU/SHU. Final recommendations regarding provision of group therapy is ASU/SHU with the most efficient use of staff time.
    ii. Mental health workload and staffing survey to determine ways efficiency of staff time can be improved. Collection of workload data to justify positions for group therapy in ASU/SHU and any additional positions required to fully implement the MHSDS program guides.
8) In FY 2005-06, one time funding totaling $443,967, and ongoing funding totaling $402,500 for use of the MCMI-III psychological testing and diagnostic clarification system. In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

Phase Three —Allocate resources as indicated by the above requested space survey and staffing survey.

**Pros:**  This alternative would provide partial compliance with policies and procedures contained in the revised MHSDS Program Guides. The requested study would provide specific information regarding space needs for implementing group therapy in CCCMS ASU and SHU, and recommendations regarding improving staff efficiency. This alternative reduces the resources used for MHSDS Program Guide implementation in 2005-2006 and 2006-2007. Fiscal impact is spread over additional years.

**Cons:**  This alternative would need to be negotiated with all parties in the *Coleman* court case. The court may not approve the delay in implementation of group therapy in CCCMS and SHU, and may issue a Court Order to implement all policies and procedures in the revised MHSDS program guides. If this alternative is approved by the courts, this strategy is likely to lead to exit from the *Coleman* court case in five (5) years, rather than two (2). Costs associated with litigation in this case do not contribute to the YACA mission. The outcome of the space and staffing survey is likely to recommend allocation of additional staff which would need to be requested in future BCPs.

**Alternative C:**  Implement requirements of the revised MHSDS Program Guides without requested resources

**Pros:**  Requires no funding

**Cons:**  Failure to implement the revised MHSDS Program Guides with requested resources will lead to increased litigation costs and is likely to lead to a Court Order which may be more costly than the current proposal. Failure to provide constitutionally adequate mental health treatment may harm inmates and is a violation of inmate's rights under the Eighth and Fourteenth Amendments of the United States Constitution prohibiting cruel and unusual punishment. This alternative is not consistent with the Youth and Adult Corrections Agency mission.

**Alternative D:**  Implement requirements of the revised MHSDS Program Guides in ASU and SHU at COR as requested above beginning July 2005.

  a.  Establish 51.25 permanent positions for the Mental Health program at COR.
  b.  Resources totaling $18,425 for equipment to support the Mental Health Program at COR.
  c.  Resources totaling $15,152 for a workload and space survey.

*As stated earlier, this Finance Letter should have also included the following Custody component, which will be requested in a future BCP:*

Pros:  Meets requirement of current March 7, 2005 court order from Judge Karlton (Attachment G) which requires the State of California to "include in the FY 2005-2006 budget a request for sufficient clinical staff at COR to provide the mental health services

required in the revised program guides for MHSDS caseload inmates in the administrative segregation unit and the SHU at said institution.."  This alternative allocates appropriate resources in order to implement the revised MHSDS Program Guides at COR.  Provides a model for future implementation of revised MHSDS Program Guides once the document receives final court approval.

Cons:  Failure to implement the revised MHSDS Program Guides at all institutions in FY 2005-2006 may lead to increased litigation costs and/or a Court Order, which may be more costly than the current proposal.

## G.  Timetable
Resource augmentations are requested for implementation effective July1, 2005

## H.  Recommendation
The Youth and Adult Corrections Agency mission "to take responsibility and accountability for the rehabilitation of offenders" and to "provide training, counseling, and support" services is consistent with the revisions in the MHSDS Program Guides. Based on the current recommendations from Legal Affairs Division, the best strategy to exit the *Coleman v. Schwarzenegger* court case is to fully implement the revised MHSDS Program Guides.  However, due to the fact that the MHSDS Program Guides have not received final court approval, it is therefore recommended that Alternative D be implemented by July 2005.

Mental Health Program Guidelines Finance Letter
Fiscal Year 2005/06
Feasible Alternative D

Attachment C

| Mission SHU-C3MS | staffed cap 450 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Lic. Psych Tech | 2.43 to program | 2.43 | 0 | 2.43 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |
| Psychiatrist | 1 to 100 | 4.5 | 1 | 3.5 |
| Psychologist | 1 to 50* | 6 | 3 | 3 |
| Psych Soc Wrkr | 1 to 50* | 3 | 0 | 3 |

| Mission ASU | staffed cap 450 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psych Soc Wrkr | 0.5 to program | 0.5 | 0 | 0.5 |

| Mission ASU-C3MS | staffed cap 100 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 100 | 1 | 0.5 | 0.5 |
| Psychologist | 1 to 40* | 1.5 | 0 | 1.5 |
| Psych Soc Wrkr | 1 to 40* | 1 | 1 | 0 |
| Lic. Psych Tech | 1.62 to 100 | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to 54 | 1.77 | 0 | 1.77 |

| Mission ASU-EOP | staffed cap 63 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 45 | 1.5 | 0.5 | 1 |
| Registerd Nurse | 1.62 to program | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |

| Mission MHCB | staffed cap 23 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 10 | 2.33 | 2 | 0.3 |
| Psychologist | 0.62 by 3 staff | 1.86 | 0 | 1.86 |

| Mission MDO/BPT/Zcases | | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient report** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychologist | 1 to 150 | 0.56 | 0 | 0.56 |

| Mission RVRs | | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychologist | 1 to 300 | 0.79 | 0 | 0.79 |

Mental Health Program Guidelines Finance Letter
Fiscal Year 2005/06
Feasible Alternative D

Attachment C

**Mission**
**Relief Factors**

| Classification | Staff:relief factor | staff via ratio | less current relief | required additional staff |
|---|---|---|---|---|
| Lic Psych Tech | 1 to 0.62 | 13.64 | 0.8 | 12.84 |
| Psychologist | 1 to 0.15 | 4.5 | 0 | 4.5 |
| Psych Soc Wrkr | 1 to 0.15 | 0.9 | 0 | 0.9 |

**Mission**
**Nursing**

| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
|---|---|---|---|---|
| Registered Nurse | 1 to 800 | 1.5 | 0 | 1.5 |

**Mission**
**Supervision**

| Classification | Supv to staff | supv via ratio | less current supv | required additional supv |
|---|---|---|---|---|
| Sr. Psych Soc Wrke | 1 to 10 | 1.79 | 0 | 1.79 |
| Lic Psych Tech | | -4 | 0 | -4 |
| Sr. Lic Psych Tech | 1 to 10 | 4 | 0 | 4 |

**Mission**
**Clerical/Med Rec**

| Classification | Staff:EOP/C3MS | staff via ratio | less current supv | required additional staff |
|---|---|---|---|---|
| Office Tech | 1.0 to 300/800 | 1.22 | 0 | 1.22 |
| Office Asst (L.T.) | 0.5 to 300/800 | 0.75 | 0 | 0.75 |
| Med Transcriber | 1 to MHCB Prog. | 1 | 0 | 1 |
| OSS II | 1:10 | 0.5 | 0 | 0.5 |

**Mission**
**Custody**

| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
|---|---|---|---|---|
| Correctional Officer | 1.0:60, 550 Pop. | 10.82 | 0 | 10.82 |
| Corr. Sgt. | 1.0 to MHCB Prog. | 1 | 0 | 1.0 |
| CC I (MHCB) | 0.25:12 | 0.5 | 0 | 0.5 |
| CC I (ASU 3CMS) | 1:160 I/M | 0.63 | 0 | 0.63 |

| **Overall additions** | **P Y s** |
|---|---|
| Psychiatrist | 5.3 |
| Psychologist | 12.21 |
| Psych Soc Wrkr | 4.4 |
| Registerd Nurse | 3.12 |
| Lic. Psych Tech | 12.89 |
| Rec Therapist | 4.07 |
| Sr. PSW | 1.79 |
| Sr. LPT | 4.0 |
| OSS II | 0.5 |
| Office Tech | 1.22 |
| Office Asst | 0.75 |
| Med Transcriber | 1.0 |
| Correctional Officer | 10.82 |
| Corr. Sgt. | 1.0 |
| CC I | 1.13 |

Mental Health Program Guidelines Finance Letter
Fiscal Year 2005/06
Feasible Alternative D

| | |
|---|---|
| **Mental Health Staffing Total** | **51.25** |
| **Custody Total Staffing** | **13.0** |
| **Total Staffing** | **64.2** |

Mental Health Staffing Difference from Costing

Feasible Alternative "B"
California Department of Corrections
Health Care Services Division
Mental Health Program Guide Finance Letter Fiscal Year 2005/06

| Staffing Request Summary | 2005/06Staffing | 2006/07 Staffing | 2007/08 Staffing |
|---|---|---|---|
| **CCCMS GP** | | | |
| Psychiatric Technician | 10.4 | 10.4 | |
| Recreation Therapists | 8.2 | 8.2 | |
| | | | |
| **GP EOP** | | | |
| Psychiatric Technician | 6.1 | 6.1 | |
| | | | |
| **AdSeg EOP (Stand Alone)** | | | |
| Psychiatric Social Worker | 2.5 | 2.5 | |
| | | | |
| **AdSeg CCCMS** | | | |
| Psychologist | 12.9 | 12.9 | |
| Psychiatric Social Worker | 6.5 | 6.5 | |
| Staff Psychiatrist | | | 15.5 |
| Psychiatric Technician | 12.5 | 12.5 | |
| Recreational Therapist | | | 32.9 |
| Correctional Officer for ASU & SHU (Individual Therapy) | 6.4 | 6.4 | |
| Correctional Officer for ASU & SHU (Group Therapy) | 5.2 | 5.2 | 11.8 |
| Correctional Counselor I | 4.9 | 4.9 | |
| | | | |
| **Security Housing Unit (SHU)** | | | |
| Psychologist | 3.5 | 3.5 | |
| Psychiatric Social Worker | 2.0 | 2.0 | |
| Staff Psychiatrist | 2.8 | 2.8 | |
| Psychiatric Technician | 2.5 | 2.5 | |
| | | | |
| **Group Therapy SHU** | | | |
| Psychiatric Technician | 1.2 | 1.2 | |
| Recreation Therapist | 2.3 | 2.3 | |
| | | | |
| **AdSeg EOP Hubs** | | | |
| Registered Nurse | 8.1 | 8.1 | |
| Recreational Therapist | 5.8 | 5.8 | |
| Staff Psychiatrist | 1.3 | 1.3 | |
| | | | |
| **Reception Center** | | | |
| Psychologist | 16.3 | 16.3 | |
| Psychiatric Social Worker | 8.2 | 8.2 | |
| Staff Psychiatrist | 1.2 | 1.2 | |
| Registered Nurse | 4.5 | 4.5 | |
| Correctional Counselor I | 4.6 | 4.6 | |
| | | | |
| **Mental Health Crisis Beds** | | | |
| Psychologist | 7.8 | 7.8 | |
| Staff Psychiatrist | 1.6 | 1.6 | |
| Correctional Counselor I | 1.8 | 1.8 | |
| Correctional Sergeant | 3.0 | 2.0 | 9.0 |

**Rules Violation Report**

| | | | |
|---|---|---|---|
| Psychologist | 6.2 | 6.2 | |

**Nursing**

| | | | |
|---|---|---|---|
| Registered Nurse | | | 57.4 |

**Relief**

| | | | |
|---|---|---|---|
| Psychiatric Technicians | 38.5 | 38.5 | 76.9 |
| Psychologist | | | 58.2 |
| Psychiatric Social Worker | | | 21.1 |

**OHU**

| | | | |
|---|---|---|---|
| Psychologist (OHU 7 day per week coverage) | 3.1 | | |

**MDO/BPT/Z Cases/DRB Placements**

| | | | |
|---|---|---|---|
| Psychologist | 7.2 | 7.2 | |

**Clerical**

| | | | |
|---|---|---|---|
| OT  Clerical Needs | 10.6 | 10.6 | |
| Medical Transcriber | 8.5 | 8.5 | |
| OSS II | 3.0 | 3.0 | |
| Office Assistant - Limited Term (Medical Records) | 21.2 | | |

**Institution Level Supervision**

| | | | |
|---|---|---|---|
| Sr. Psychologist, Supervisor | 2.7 | 2.7 | 5.3 |
| Sr. Psychiatric Social Worker | 4.0 | 4.0 | 8.0 |
| Psychiatric Technician | -16.0 | -15.0 | |
| Sr. Psychiatric Technician | 16.0 | 15.0 | |

**Performance Evaluation and Court Compliance**

| | | | |
|---|---|---|---|
| HPS I | 14.0 | 14.0 | |
| OT | 14.0 | 14.0 | |

**HCSD**

| | | | |
|---|---|---|---|
| Sr. Psychologist Specialist (Program Guide Implementation & Suicide Prevention) | 1.0 | | |
| Sr. Psychologist Specialist (Institution Oversight) | 3.0 | | |
| Health Program Specialist I (1 per region) | 3.0 | | |
| OT (1 per region) | 3.0 | | |
| Sr. Psychiatrist, Specialist | 3.0 | | |
| Total Request | 299.3 | 261.0 | 296.1 |