

FILED
JUN 19 2006
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
By _____
DEPUTY CLERK

```
 1             IN THE UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF CALIFORNIA
 3                          ---o0o---
 4      BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE
 5      BEFORE THE HONORABLE THELTON E. HENDERSON, SENIOR JUDGE
 6
 7   RALPH COLEMAN, et al.,
 8        Plaintiff,
 9   Vs.                          CASE NO. CIV. S-90-0520 LKK
10   ARNOLD SCHWARZENEGGER,
     et al.,
11
12        Defendants.
13   _____/
14
15
16
17                          ---o0o---
18
19                    REPORTER'S TRANSCRIPT
20                 THURSDAY, JUNE 8TH, 2006
21            RE:  STATUS OF COLEMAN AND PLATA
22
23                          ---o0o---
24
25   Reported by:        1848  CATHERINE E.F. BODENE,
                               CSR. No. 6926
```

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360


```
1                        APPEARANCES
2                         ---oOo---
3   COLEMAN SPECIAL MASTER:
4          JOSPEH MICHAEL KEATING
           OFFICE OF THE SPECIAL MASTER
5          2351 SUSSEX DRIVE
           FERNANDINA BEACH, FLORIDA   32034
6
7
    FOR COLEMAN PLAINTIFF:
8
           ROSEN, BIEN & ASARO, LLP
9          155 MONTGOMERY STREET, EIGHTH FLOOR
           SAN FRANCISCO, CALIFORNIA   94104
10         BY:   MICHAEL BIEN,
                 ATTORNEY AT LAW
11
           BY:   JANE KAHN,
12               ATTORNEY AT LAW

13         KEITH WATTLEY - STAFF ATTORNEY
           PRISON LAW OFFICE
14         GENERAL DELIVERY
           SAN QUENTIN, CALIFORNIA   94964
15
           BY:   KEITH WATTLEY,
16               ATTORNEY AT LAW

17

18  FOR PLATA PLAINTIFF:

19         DONALD HOWARD SPECTER - STAFF ATTORNEY
           PRISON LAW OFFICE
20         GENERAL DELIVERY
           SAN QUENTIN, CALIFORNIA   94964
21
           BY:   DONALD SPECTER,
22               ATTORNEY AT LAW

23

24                        ---oOo---

25
```

APPEARANCES

---oOo---

PLATA RECEIVER:

    ROBERT SILLEN,
    Receiver, California Prisons

PLATA SPECIAL MASTER:

    JOHN HAGAR, SPECIAL MASTER
    JUDGE'S READING ROOM
    450 GOLDEN GATE AVENUE, 18TH FLOOR
    SAN FRANCISCO, CALIFORNIA  94102

FOR COLEMAN DEFENDANTS:

    STATE OF CALIF., DEPT. OF JUSTICE
    OFFICE OF THE ATTORNEY GENERAL
    1300 I STREET
    SACRAMENTO, CALIFORNIA  94244

    BY:  LISA TILLMAN,
         DEPUTY ATTORNEY GENERAL

FOR PLATA DEFENDANTS:

    STATE OF CALIFORNIA, DEPT. OF JUSTICE
    OFFICE OF THE ATTORNEY GENERAL
    455 GOLDEN GATE AVENUE, SUITE 11000
    SAN FRANCISCO, CALIFORNIA  94102-7004

    BY:  ROCHELLE C. EAST,
         SUPERVISING DEPUTY ATTORNEY GENERAL

    BY:  FRANCES T. GRUNDER,
         SENIOR ASST. ATTORNEY GENERAL

---oOo---

```
                                                                    1
 1                      SACRAMENTO, CALIFORNIA
 2              THURSDAY, JUNE 8TH, 2006 - 1:30 P.M.
 3                            ---oOo---
 4          THE CLERK:  All rise.  Court is in session.  The
 5   Honorable Lawrence K. Karlton and Judge Henderson are
 6   presiding.
 7          JUDGE KARLTON:  Please, be seated everyone.
 8          THE CLERK:  Calling Civil Case S-90-520, Coleman v.
 9   Schwarzenegger, and Civil S-01-1351, Plata v.
10   Schwarzenegger.
11          JUDGE KARLTON:  Counsel, approach the podium and
12   state your appearances for the record.
13          MR. BIEN:  Good afternoon, Your Honors.  Michael Bien
14   on behalf of the plaintiff class in Coleman.
15          MR. SPECTER:  Donald Specter on behalf of the
16   plaintiff class in Plata and Coleman.
17          MS. EAST:  Rochelle East representing defendants.
18          JUDGE KARLTON:  You all may retire.
19          You know that old movie line, "I suppose you're
20   wondering why we called you here tonight," Judge Henderson
21   and I felt it was very important that counsel and parties be
22   aware of the fact that he and I and the Receiver in Plata and
23   the Master in Coleman intend to closely coordinate activities
24   in both cases.
25          We are concerned.  We have heard rumors about what's
```

2

1  going on out in the field, that people are misapprehending
2  the relationship of the cases, and we felt it was important
3  to make clear that there will be very close coordination.
4      It is the intention of the court at this stage, until
5  we see how things work, that the Special Master in Coleman
6  and the Receiver in Plata will meet monthly, at minimum.
7  They're going to be talking on the phone, but I mean have a
8  real meeting once a month to discuss what's going on in both
9  of the cases and to be sure that everybody is working on the
10 same page.
11     The intention then will be that Judge Henderson and I
12 will meet with the Special Master and the Receiver about
13 every third month.  Again, a formal meeting.
14     We want to really make clear that what is -- we don't
15 anticipate -- maybe we're being unduly hopeful, but we don't
16 anticipate that there will be significant substantive issues
17 where there will be any reason to be concerned with possible
18 divergence of views.  But it is our intent and effort, to the
19 degree that we can, to head those off at the pass, if you
20 will.
21     Also I went to put to rest a rumor, which is
22 apparently wandering around the institutions, which is that
23 Coleman will be forthwith folded into Plata.
24     Whoever got that rumor started has got it wrong.  We
25 have our individual obligations under the decree, and those

3

will have to be attended to.

What else do you want to say?

JUDGE HENDERSON: Not much. There is not much more I can add, but to give you a bit more background we are going to be cooperating in this. What prompted this meeting and this plan to go forward is a desire for efficiency.

And what brought this to light for me was a visit that I had at the California Institute For Men in which I toured that institute for a day, and certainly Mr. Specter was there that day, I believe, and perhaps others.

We toured the institute, and were told of all of the need for space and the things that were not available there for Plata, including interview and treatment rooms for the doctors. And at the end of the day, while touring the prison, I saw about a dozen spacious, well furnished, highly polished offices. And I said: "What are those?" And they said: "Those are for Coleman interviews. Those are Judge Karlton's, and you can't use them."

And I called Judge Karlton, and I said: "Would you mind if we used them? They were all empty." And he said: "No, not at all." And I think we both came to realize that we needed to coordinate because we have the same goals in mind, constitutional delivery of mental health and constitutional delivery of health issues.

And so that's why we plan to work closely together

4

1    here and see a need to do so.
2         As Judge Karlton said, his Special Master, my
3    Receiver, and John Hagar will be meeting regularly and
4    coordinating so that nothing that my team does is a surprise
5    to anything and vice versa. And then to underscore, the
6    monitoring in Coleman will continue as it is, but we will
7    both be cooperating.
8         At this point I think I'd like to ask Bob Sillen and
9    Michael Keating in turn to address. We're concerned about --
10   we compiled a list of at least 32 items in our two cases that
11   we think overlap, and we're trying to identify kinds of
12   things that we think will benefit from this cooperative
13   report so that there is not duplication or conflict.
14        Bob, would you come up and address your game plan and
15   identify those, and then Mr. Keating will do the same.
16        MR. SILLEN:  Thank you.
17        I don't have off top of my head all 32, but obviously
18   there are areas that have significant overlap. So when we're
19   talking about issues, for instance, in the pharmacy, medical
20   records, space, transportation issues, and other issues such
21   as that, information technology, so there are some things
22   that are, in fact, going to be addressed in the short-term,
23   and then some other things that are more of a long-term
24   nature that it just would be so duplicative and inefficient
25   to approach these separately that this arrangement whereby,

5

1  you know, Michael and I will be working together on a monthly
2  basis and the two judges working together will really head
3  that off.
4          And to the degree it doesn't, and Michael's and my
5  judgment we need some help from the bench, we'll come get it.
6  We know your numbers, and we know you know ours.  So I think
7  that this will lay to rest some of those rumors that were
8  referred to, but also assure that we're not going in multiple
9  directions all at the same time because nothing positive will
10 come of that.
11         JUDGE KARLTON:  Thank you.
12         MR. KEATING:  Judge Henderson, Judge Karlton, as this
13 sort of historic combination occurs, I'm struck by the fact
14 that I certainly get the better name.  Being a Master is a
15 lot better than being a Receiver, I think.  Particularly at
16 home it's a better title.
17         But I'm very sensitive to the extraordinary breadth
18 of powers that the Receiver has in this case.  I'm especially
19 sensitive to the newness of the use of this particular
20 long-time judicial agent or instrument to effect change.  And
21 having labored in this field under Judge Karlton's guidance
22 for some ten years plus now, and being frustrated frequently
23 with the pace of change, seeing how great the need is, myself
24 and Matt Lopes, who has been with me throughout this period,
25 and the monitors and experts that have worked with me for ten

6

1  years, really look forward with great anticipation to the
2  addition of Plata and the intervention of the Receiver in
3  this case.
4      We hope that it is the means for resolving many of
5  the areas of the problem in mental health that are really not
6  directly mental health at all, but that are part and parcel
7  of the broader medical situation in the California Department
8  of Corrections and Rehabilitation.  And we look forward to
9  the additional strength and help that the Receiver will be
10  able to give us in moving mental health forward.
11      And we are very much wed to the notion of working
12  together to resolve the constitutional problems in both
13  areas.  I think our meeting today has been very useful in
14  laying the groundwork for that, and we look forward to this
15  wonderful experiment and hope for its quick and efficient
16  culmination.
17      Thank you.
18      JUDGE KARLTON:  We have been made aware this morning
19  as we talked that there are differences in the procedures
20  involved in Plata and Coleman which may require some
21  adjustment, or if this that's not the right word, may cause
22  some delay in Coleman in effectuating agreements between the
23  Master and the Receiver because there is a protest period in
24  Coleman, et cetera, which may make a difference.
25      Hopefully, and, you know, my own sense of what's been

1  going on in the cases is that there's been a fairly reasoned
2  ability of the parties to resolve issues requiring the
3  intervention of the court, at least in Coleman, much less
4  frequently than I anticipated many, many years ago when we
5  entered the order.  But we are available.  And what we have
6  said to the people out in the field, Michael and Bob, is you
7  know, there's a telephone.
8      I think Judge Henderson and I thought it might be
9  appropriate, and we're springing this on you, and we're not
10 asking you to commit yourselves in any way to anything, but
11 we thought it might be appropriate for counsel for the
12 parties to at least give us a first impression and response
13 to the notion that there's going to be this very close
14 coordination -- we believe very close coordination in the two
15 cases.
16     I guess we'll begin with plaintiffs.  We'll begin
17 with plaintiff Coleman.  I don't care.  Whatever you want.
18     MR. BIEN:  Good afternoon, Your Honors.
19     We too anticipate the effects of working together,
20 which we hope will be an increase in the -- We think that the
21 coordination of the receiver with the efforts of the Special
22 Master will enhance the speed of the remedy and the
23 effectiveness and the scope of the remedy.
24     Some of the problems we have been addressing in the
25 last year in Coleman involved dealing with roadblocks,

8

1  bureaucratic obstacles, and rules and regulations that just
2  seem to be insurmountable to people who are charged with
3  implementing a remedy.
4      And we hope that the receivership and its
5  extraordinary powers will provide the means for defendants
6  acting, you know, through the Receiver to move forward
7  rapidly because the need is great and it is urgent and we're
8  at a time of crisis in the Department of Corrections.
9      We are also concerned about not only the rumors, but
10 rumors that have turned into actual actions in the field
11 where we're told that certain resources, that as the court
12 described, you know, used to be Coleman resources, we're told
13 now are Plata resources.
14     I think there is a lot of confusion in the field, not
15 necessarily for anything that's actually been ordered by the
16 Plata Court or by the Receiver, but a lot of -- a lot of
17 misperception and a lot of anticipation. And I think a lot
18 of people in the Department really don't know what to do.
19 And there is a real lack of direction.
20     I think it is crucial that the message -- the joint
21 message of the court here today be communicated and that --
22 but that as soon as possible, the kinds of conflicts that are
23 already arising in the field be resolved. I think there are
24 already conflicts right now.
25     The other concern I think we will work through is

9

1   issues of notice to the class and class counsel as to what's
2   happening.
3          Sometimes thinks are moving rapidly.  It is good they
4   move rapidly, but it is also important that counsel have a
5   chance to understand what's going on and participate in the
6   process.
7          And I think that we can work together with our
8   co-counsel, Prison Law Office, very easily, but we all need
9   to be kept informed of the actions of the Receiver so that we
10  can have some input.
11         We will not slow things down, but I think we add a
12  perspective.  And we have a duty to provide the information
13  that we have from our clients and from our experience to
14  inform the Receiver as to what has happened in the past and
15  what at least we believe is necessary in certain situations.
16         JUDGE KARLTON:  Thank you, Mr. Bien.
17         Mr. Specter.
18         MR. SPECTER:  Thank you, Your Honor.
19         One of the first things Bob Sillen said when he met
20  with us was this sort of oddness of the dichotomy of all
21  these cases.  You know, there is one for dental care, one for
22  mental health, one for medical care.  And he came from a
23  place, quite appropriately, where there is not that kind of
24  dichotomy.
25         I mean, our interest as counsel for the prisoners is

10

to have them treated as patients for all their needs regardless of what case it falls under. And we very much appreciate the fact of the courts willingness and stance and position to work together in these two cases. We think that accomplishes that goal very much. So we appreciate that.

We also pledge, as my colleague, Mr. Bien did, to work -- work as quickly as possible and as hard as necessary in order to accomplish any of the goals that will effectuate the changes that we all think need to be done.

And I also want to echo Mr. Bien's comments about the fact that it is important for us to be, while we're moving fast, we have a duty to our clients, in both cases, and it's important for us to be kept informed even as things move so that we can inform the changes and advise our clients about what is happening and what the plans are to happen so they can have some faith that things are going to get better.

Because at this time, as you sort of alluded to, there are a lot of rumors flying around in the field. We get lots of letters saying, "What's going to happen? We know the Receiver is appointed." So we look forward to sharing that information with our clients and helping the Receiver and the Special Master in any way we can.

Thank you.

JUDGE KARLTON: Who speaks for the State?

MS. EAST: Your Honors, defendants very much welcome

11

1   this coordination.
2           The Department has tried to move toward a vision of
3   health care, kind of what plaintiff's counsel has alluded to
4   as well.  And certainly having all the different cases tends
5   to fragment that.  So the State very much appreciates the
6   coordination and will certainly, of course, work very, very
7   closely with the Masters and Receiver.
8           And we would also add that because Mr. Hagar is also
9   involved on the Receiver staff, some of those issues
10  coordinate and conflict in some cases with Madrid.  So we
11  could look towards being able to coordinate that as well.
12          And we would request that perhaps at some point
13  consideration be given to working with the dental case
14  because --
15          JUDGE KARLTON:  With the dental case?
16          MS. EAST:  That's Perez.  That is Judge White.
17          JUDGE KARLTON:  You know what, until this morning I
18  didn't know there was a dental case.
19          MS. EAST:  This is why coordination is so good.  And
20  for that very reason.  Perhaps that case is not even close to
21  any of these other two cases, but --
22          JUDGE KARLTON:  There is no judgment entered in that
23  case?
24          MS. EAST:  Your Honor, it is a stipulation.  It's in
25  the process of going through certifying the class and class

12

1   comments.  So it is very much behind, but, again, possibly
2   consolidating and coordinating the tours and so forth might,
3   again, get us closer to that vision of health care rather
4   than different class actions.
5          JUDGE HENDERSON:  Have any of counsel talked to
6   Judge White?  He's in the same building.  I may even talk to
7   him this afternoon if I get back.  Have you talked to him
8   about this possibility?
9          MS. EAST:  Your Honor, he's aware of that.  He
10  certainly is.  Because he knows that initially Perez was
11  considered at one point perhaps to be part of Plata.  So he
12  knows that was broken out.
13         JUDGE HENDERSON:  Okay.
14         MS. EAST:  Thank you.
15         JUDGE HENDERSON:  In partial response to something
16  that Mr. Specter just said, and in interviewing for a
17  Receiver and finally settling on Mr. Sillen, one of the
18  things we talked about, and Mr. Sillen made clear, was his
19  notion and mine of transparency.  That there would be
20  transparency here.  Nothing would be done in secret or
21  decided in secret.
22         And I think that is consistent with your requests,
23  and I would certainly expect Mr. Sillen to be in
24  communication with you and let you know.
25         You've certainly learned by now he's not bashful, and

13

1  I think he'll be in communication with you about what he's
2  doing and will also be receptive to your input.
3      JUDGE KARLTON:  You know, I do want to say we're in a
4  new world here.  You know, this is the first Receiver, to my
5  knowledge, that has ever been appointed in a prison case.  So
6  we're feeling our way along.
7      At the same time, Mr. Sillen is developing his
8  approach and learning what the problems are.  And, you know,
9  we believe that we, in Coleman, are making substantial
10 progress.  You know, it is nothing to boast about, it is
11 almost eleven years, but we're making substantial progress.
12     And just the fact that we've had those differences
13 and experience are probably telling about the way lawyers
14 have understood how to approach the matter.
15     And, you know, I hope and I'm certain that -- Judge
16 Henderson and I have been friends for long before we came on
17 the bench.  You know, we'll work it out.  I must confess I
18 suspect that there will be some bumps along the way, and
19 about all we can do is say that there will be some bumps
20 along the way, and we'll just have to find ways of
21 straightening them out.
22     Anything else you want to say?
23     JUDGE HENDERSON:  No.  I think you've covered it.
24     JUDGE KARLTON:  Unless somebody has something to say,
25 we're going to adjourn the hearing.

14

1     Stand adjourned.

2     Thank you, folks.

3     (Off the record at 02:04 PM)

4                    ---o0o---

1   REPORTER'S CERTIFICATE

2   ---o0o---

3

4   STATE OF CALIFORNIA   )
    COUNTY OF SACRAMENTO  )

5

6

7       I certify that the foregoing is a correct transcript

8   from the record of proceedings in the above-entitled matter.

9

10              IN WITNESS WHEREOF, I subscribe this
    certificate at Sacramento, CALIFORNIA on this 19TH day of
11  JUNE, 2006.

12

13

14   *[signature: Catherine E. Bodene]*

15   CATHERINE E.F. BODENE,
     CSR NO. 6926

16

17

18

19

20

21

22

23

24

25