**FILED**

JUN 19 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF CALIFORNIA

3                    ---oOo---

4    BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

5

6    RALPH COLEMAN, et al.,

7        Plaintiff,

8    Vs.                          CASE NO. CIV. S-90-0520 LKK

9    ARNOLD SCHWARZENEGGER,
     et al.,

10

11       Defendants.

12   _____/

13

14

15

16                  ---oOo---

17

18              REPORTER'S TRANSCRIPT

19          WEDNESDAY, JUNE 14TH, 2006

20          RE:  TELEPHONIC CONFERENCE

21

22                  ---oOo---

23

24

25   Reported by:            CATHERINE E.F. BODENE,
                             CSR. No. 6926

                     1849

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                (916) 446-6360

```
1                         APPEARANCES

2                         ---o0o---

3

4    FOR THE PLAINTIFF:

5             ROSEN, BIEN & ASARO, LLP
              155 MONTGOMERY STREET, EIGHTH FLOOR
6             SAN FRANCISCO, CALIFORNIA  94104

7             BY:  MICHAEL BIEN,
                   ATTORNEY AT LAW
8
              BY:  THOMAS NOLAN,
9                  ATTORNEY AT LAW

10

11   FOR THE DEFENDANTS:

12            STATE OF CALIFORNIA, DEPT. OF JUSTICE
              OFFICE OF THE ATTORNEY GENERAL
13            1300 I STREET
              SACRAMENTO, CALIFORNIA  95814
14
              BY:  LISA TILLMAN,
15                 DEPUTY ATTORNEY GENERAL

16            STATE OF CALIFORNIA, DEPT. OF JUSTICE
              OFFICE OF THE ATTORNEY GENERAL
17            455 GOLDEN GATE AVENUE, SUITE 11000
              SAN FRANCISCO, CALIFORNIA  94102-7004
18
              BY:  ROCHELLE C. EAST,
19                 SUPERVISING DEPUTY ATTORNEY GENERAL

20            STATE OF CALIFORNIA, DEPT. OF JUSTICE
              OFFICE OF THE ATTORNEY GENERAL
21            455 GOLDEN GATE AVENUE, SUITE 11000
              SAN FRANCISCO, CALIFORNIA  94102-7004
22
              BY:  FRANCES T. GRUNDER,
23                 SENIOR ASST. ATTORNEY GENERAL

24

25                        ---o0o---
```

1

```
 1                    SACRAMENTO, CALIFORNIA

 2           WEDNESDAY, JUNE 14TH, 2006 - 2:00 P.M.

 3                          ---o0o---

 4           (In chambers telephonic conference call.)

 5           THE COURT:  Good afternoon, folks.

 6           This is Judge Karlton.

 7           Mr. Bien and Mr. Nolan, are you on the line?

 8           MR. BIEN:  Yes, we are, Your Honor.

 9           THE COURT:  Miss Tillman, are you on the line?

10           MS. TILLMAN:  Yes, Your Honor, I am.

11           THE COURT:  You have Miss East and Mr. (sic.) Grunder

12    with you?

13           MS. EAST:  Yes, Your Honor.

14           MS. TILLMAN:  Miss Grunder, Your Honor.

15           THE COURT:  My apologies.

16           Michael, you're on the line as well?

17           MR. KEATING:  Yes, Judge.

18           THE COURT:  Folks, I have a court reporter present,

19    and I'm going to ask you to please remember to state your

20    name before you speak.

21           This matter is on for a telephone hearing because the

22    State has indicated its intention of appealing the Court's

23    order denying its motion to file under seal.

24           That is the present intention of the State; am I

25    correct, Miss Tillman?
```

2

1          MS. TILLMAN:  Yes, Your Honor.  We intend to file a

2    notice of appeal concerning your June 12 order requiring the

3    production --

4          (Reporter requests party speak up.)

5          THE COURT:  I just turned it up.  Try again.

6          MS. TILLMAN:  Your Honor, this is Lisa Tillman.

7          Yes, we do intend to file an appeal concerning your

8    June 12 order to disclose the documents of the Budget Change

9    Proposal.

10         THE COURT:  All right.

11         The problem -- Well, let me turn to the defendant.

12         My understanding is that what you seek is a stay

13    pending that appeal; is that correct, Miss Tillman?

14         MS. TILLMAN:  Yes, Your Honor, it is.

15         THE COURT:  All right.

16         Mr. Bien, the position of the plaintiffs?

17         MR. BIEN:  Your Honor, we do not believe that this is

18    an appropriate case for a stay and appeal.  And we believe

19    that it is true for several reasons.  First of all, it is not

20    an appealable order under Ninth Circuit authority.  It's a

21    discovery order.  The fact there is a government privilege

22    involved does not make it appealable, and I would refer the

23    Court to the Newton case at 726 F.2d 591.

24         THE COURT:  Hang on.

25         THE COURT:  726?

3

1          MR. BIEN:  F.2nd 591 also dealt with a claim of

2   government privilege by a state agency as to a discovery

3   order and held that the Ninth Circuit had not issued an

4   appealable order.  And therefore, you know, since the issue

5   for a stay is whether or not there is a likelihood of success

6   on the merits, there is no success on the merits since it is

7   not an appealable order.

8          The conclusions of that Ninth Circuit decision is

9   that if the state, in fact, refuses to produce these

10  documents, they should be subject to contempt and a contempt

11  order would be appealable.  And that's the route they have

12  available, but not to stay and appeal your order.

13         THE COURT:  All right.

14         MS. TILLMAN:  Your Honor, may I speak to that?

15         THE COURT:  Yes, please.

16         I just sent my law clerk out to get the case.

17         Go ahead.

18         MS. TILLMAN:  Essentially, we would assert this

19  decision is appealable.  I'm looking specifically at a case

20  called Wilkinson versus Federal Bureau of Investigation at

21  922 F.2d, page 555, also a Ninth Circuit case from 1991, in

22  which the court addressed post-judgment orders concerning

23  discovery and found that rather than have a litigant endure

24  the process of contempt and then appeal from the contempt

25  order, it was, according to the Ninth Circuit, only

4

1    appropriate for the District Court to, upon deciding the

2    discovery motion for that order, to be subject to an appeal

3    since it is a final judgment.

4         You know, there's a lot of case law coming from the

5    Cahn Case, a U.S. Supreme Court case, finding certain types

6    of discovery orders, particularly after judgment has been

7    rendered, are, indeed, appealable final judgments for the

8    purpose of review.  And this is essentially just that type of

9    order.

10        It determines all the issues in front of the District

11   Court on this matter.  So it is properly subject to appellate

12   review.

13        MS. EAST:  This is Rochelle East.  I would, again,

14   not only support Miss Tillman, but also note the Newton case

15   was a prejudgment case and so very different from obviously

16   the present Coleman case.

17        THE COURT:  Miss East, who do you represent?

18        Do you not represent -- are you not co-counsel with

19   Miss Tillman?

20        MS. EAST:  Yes, Your Honor.  I am from the AG's

21   Office.

22        THE COURT:  The rule is one lawyer gets to talk for

23   each side -- I mean, for each party.  And since you're all

24   representing the same party, Miss Tillman, I gather, is it.

25        Well, isn't this interesting.

5

1          Mr. Bien, what do you got to say about this asserted

2     distinction between prejudgment and post-judgment discovery

3     orders?

4          MR. BIEN:  Well, first of all I think that this

5     proceeding is -- we should maybe step back and look at the

6     proceeding in light of where it is.

7          This is a proceeding by the Court to seek to

8     enforce -- enforce it's own order for the defendants to

9     comply with the Program Guide.  And to some extent, this is

10    not -- this is the -- we're in the midsts of a proceeding.

11         Sure, it is post-judgment, but there is an on-going

12    enforcement effort of the Court's order.  And really the

13    Ninth Circuit should wait to see the actual outcome of

14    those -- of that order in order to resolve this appeal.

15         Also, in any case, there is a balancing of the

16    interests here and the relative hardships of the parties.

17    And the interests of the State, as we've demonstrated in our

18    papers, are quite amorphous in keeping this document from

19    view.  And the interests of the plaintiff class are urgent

20    and imminent in terms of the need for this information.

21         And again, we're seeing a situation, Your Honor,

22    where this is going to delay a critical part of this remedy

23    for well into the budget year.  And perhaps -- you know,

24    perhaps this is something designed to go beyond the election.

25    I don't really understand the interest here, other than to

6

1    delay.

2         And, you know, the other thing, I haven't read the

3    Wilkinson case, but it looks like it is a dispute in a denial

4    of request for discovery rather than an effort to -- it was

5    an attempt to appeal a denial of a request for discovery.

6    I'm not sure, you know, but if you continue to disobey it,

7    you can be found with contempt.  In other words, contempt was

8    not an alternative available there.

9         MS. TILLMAN:  Actually, with all due respect, it was

10   an alternative and discussed in full in the opinion.

11        MR. BIEN:  Okay.

12        THE COURT:  Let me interrupt.  Let me interrupt.

13        The question of whether it's an appealable order or

14   not, I don't have the faintest idea.  You know, it is never

15   my problem.  It's the Ninth Circuit's problem.  But even if

16   I -- Mr. Bien, you can stop talking now.

17        MR. BIEN:  As to whether to grant the stay --

18        THE COURT:  Mr. Bien, please stop talking now.

19        MR. BIEN:  Excuse me.

20        THE COURT:  Thank you, sir.

21        But the problem, Miss Tillman, is the whole question

22   about missing the budget cycle.  And that seems to me to be a

23   matter of crucial importance.

24        On the other hand, and here the situation is a little

25   bit unusual, the State has agreed to provide the Special

7

1    Master with the information which the Court has sought.  And

2    it is important to -- important to understand the Court

3    sought it, at least initially, rather than the plaintiffs'

4    class.

5        But in any event, it appears -- it may be, and I

6    probably am going to have to ask the Special Master what is

7    most appropriate, but it may be that the material having been

8    forwarded to the Special Master, the Special Master can make

9    his evaluation of whether or not the State is, in fact, in

10   compliance with the Court's orders and file that under seal.

11       If the answer is yes, I guess we don't have to do

12   anything but await the Ninth Circuit's determination as to

13   whether or not the material should be given to the

14   plaintiffs.  If the answer is no, I suppose the Special

15   Master and the Court can fashion an appropriate order.

16       MS. TILLMAN:  Your Honor, if I might speak to that?

17       And I recognize the Court's line of reasoning,

18   certainly a line of reasoning that was initiated by the

19   defendants' offer -- offer to compromise to provide the

20   materials to Special Master Keating under seal for in camera

21   review.  And we had certainly hoped that offer would have

22   been accepted earlier.

23       But I do have to say, with all due respect to the

24   Court, that now that this order has been received, my client

25   is no longer willing to produce those materials to be

8

1    provided to Mr. Keating for an in camera review.

2            THE COURT:  Okay.

3            MS. TILLMAN:  We are taking the position there is a

4    deliberative process in the State --

5            THE COURT:  Miss Tillman, you can stop taking.  I

6    understand.

7            In that case, the Court will deny the stay because it

8    seems to me it is indispensable that the Court receive this

9    material at a time where it will be meaningful relative to

10    the budget process.

11            If I could -- if I could -- if there were some

12    mechanism to ensure that if the Court ultimately receives

13    this material and determines that the financial process has

14    been such as to preclude compliance with the Court's order,

15    but that there would be some way to ensure an amendment of

16    the budget process -- of the budget to ensure compliance, I

17    would, of course, grant the stay.

18            But, under the circumstances, it appears to the Court

19    that the issue of ensuring compliance with the order in this

20    budget year is of sufficient -- of such sufficient -- of such

21    weight that it outweighs the Court's -- to be candid, I would

22    ordinarily, of course, grant the stay because there's always

23    some question about whether a court order is appropriate or

24    not.  But this order was directed, as I understand it, for

25    the court's evaluation of the relative merits of the relative

9

1    needs of the parties.  And thus, whether there is an

2    appealable order or not is going to be measured by abuse of

3    discretion, which is a much harder standard for you to meet.

4         And in any event, it appears to the Court it is

5    critical that the Court receive this material.  I would

6    advise you, Miss Tillman, that you better have an appeal on

7    file and a request for a stay granted within the next three

8    days or somebody will be cited for contempt for not turning

9    the material over.

10        MS. TILLMAN:  I understand, Your Honor.

11        Your Honor, if I might just have a moment or two to

12   speak to the issue of the critical need for these documents?

13        THE COURT:  Yep.

14        MS. TILLMAN:  Because what I recognize, I'm sure you

15   recognize as well, is that this is a document that is simply

16   the first step in the deliberative process undertaken to

17   determine what that need is in terms of staffing augmentation

18   for the Program Guide.

19        We will ultimately know far more about the staffing

20   needs not only once the Program Guide actually is distributed

21   to the field and training occurs and we start implementing

22   it, but also once the workload study is accomplished over the

23   next few months.

24        So, you know, I'm concerned that my client might be

25   judged on the basis of a single document when actually the

10

1    entire view right now is far more long-term -- long-term

2    strategy in terms of looking at what are the needs of the

3    field in order to accomplish the mission of the Program

4    Guide.

5         To simply look at one document and determine whether

6    or not the needs have been met might be a far more

7    short-ranged view than is appropriate given the long-term

8    strategy that now the Department of Corrections and

9    Rehabilitation is undertaking.

10        So I would certainly ask the Court to consider that

11   and try to perhaps understand the viewpoint of my clients in

12   looking at this document and seeing it was one of a

13   deliberative process to better understand what the needs are.

14        And that process continues.  And we are going to be

15   giving the Court the workload study.  We will be giving the

16   Court the opportunity to go into the facilities, to go out

17   into the field and see how well the Program Guide is being

18   implemented.

19        And in addition, the budget cycle is done.  The

20   budget cycle has already moved through the May Revise.  So if

21   there is a need for additional staffing, it is going to be

22   something that is going to have to be brought up in terms of

23   some sort of mechanism before the Legislature.  It is no

24   longer in the Governor's hands as far as I know.

25        Obviously, you know, we got a fall cycle to start up

11

1    in September and October, but as we speak today, the May

2    Revise is accomplished and now it is before the Legislature.

3         So any additional funding for additional staff

4    positions, that opportunity has now passed.  And we have to

5    wait for the Legislature to act upon the May Revise.  But we

6    also have to wait possibly until the fall cycle begins.

7         So I'd ask the Court to recognize that, you know, the

8    defendants are doing their best to accomplish the goals set

9    out by the Court.  But the timing of this effort is not such

10   that the Court can require some sort of additional monies to

11   be put into the May Revise.  It has already been put in front

12   of the Legislature.

13        THE COURT:  The problem is that what we are doing is

14   testing the good faith compliance by the State with the

15   Court's order.

16        It is all very -- I am -- I am sorry that I missed

17   the point that the May Revise is done and is not subject to

18   further revision.  But beyond that, is the very serious

19   problem of whether or not the State is, in fact, complying.

20   And the lack of willingness on the part of the State to

21   supply the very documents which would demonstrate either that

22   it is in compliance or not leaves the Court with great

23   concern about whether or not the State is moving forward in a

24   good faith fashion.

25        But you make a point which is, I think, not

12

1    unimportant, which is if the question is contempt rather than

2    an ability to revise the budget to ensure compliance, then

3    the need for an immediate resolution of the provision of the

4    budget tenders a different question.

5         Mr. Bien, what is your view?

6         I mean, what do you say in response to Miss Tillman's

7    assertion that the horse is out of the barn?

8         MR. BIEN:  I would just remind the Court, first of

9    all, that the Governor's Office and Department of Finance

10   testified at the hearing and said that you shouldn't be

11   concerned about the May, you know, deadlines, and that they

12   would be perfectly fine to deal with them on an emergency

13   basis.

14        I'd also point out they have been stalling.  And

15   there is nothing in the record of this motion, with all due

16   respect to Miss Tillman, that says anything about what she

17   just said.

18        I can -- I can offer to the same degree of

19   reliability that I spoke to Senator Romero in your courtroom

20   on the June 8th hearing who said that we can get anything

21   done that needs to get done, it doesn't matter what the

22   budget cycle is.

23        I think that was the point of your hearing.  This is

24   not business as usual.  The State knows how to get things

25   done.  The Receiver is not waiting for budget cycles, and

13

1    neither does this Court need to wait for budget cycles.

2         It is very courteous to do so, and federal courts

3    ordinarily should defer to budget cycles, but we have been

4    stalled.

5         The first order to comply with the Program Guide was

6    last year, not recently.  So, you know, I think that it's

7    time to require the State to comply with the Court's orders.

8         If their workload studies show they need fewer

9    resources, which I doubt, but if that's what their workload

10   study shows, this person who created this document, and the

11   chief psychiatrist, the one who told us about it, if his

12   estimates were overestimated, then certainly they can reduce

13   the staffing later.  But I don't think there is any evidence

14   they have ever overestimated any need in the history of this

15   case or any case I've been involved in.  So the likelihood is

16   the workload studies will show they need even more.

17        And the other thing, Your Honor, is, of course,

18   getting the positions authorized is just the beginning of a

19   long process that will take months and months and months and

20   maybe even years before actual clinicians are hired and in

21   the field ready to provide services.  So, you know, the delay

22   is a real serious issue.  And I think it is time to tell them

23   business as usual can't go on.

24        And I think that was the point.  I didn't issue this

25   order, and I didn't make this request.  Your Honor did.  And

14

1    I think it was correct that we need to know this information,

2    and we need to get this thing rolling.

3            MS. TILLMAN:  This is Lisa Tillman.

4            One thing I find curious is that we all seem to be in

5    agreement that the program needs to be implemented.  You have

6    not yet heard anyone in the case say that the documents that

7    we did produce showing what the May Revise contained by way

8    of Program Guide implementation was in any way inadequate.

9            And we all seem to be also in agreement that a

10   workload study performed by an outside contractor delineating

11   what the needs are and justifying additional positions in a

12   very methodical, acceptable fashion is something we are all

13   looking forward to.

14           So it seems to me, that although it is going to be --

15   it is always interesting to see what's part of the

16   deliberative process and what people are thinking, that is

17   privileged.  What really is of importance here is what

18   actually comes out.

19           What came out were additional funding is going to be

20   submitted to the Legislature for approval.  And what is also

21   coming out is a workload study to check and be sure do we

22   have the right number of position or don't we.  If we need

23   more, we get more.  If not, not.

24           The defendants are taking on quite a lot of work in

25   this endeavor.  And we all agree, though, that not only is it

15

1   important to ensure that there's the right number of

2   positions and confirm that with the workload study, but also

3   the largest effort is going to be recruitment, getting the

4   staff into those positions.

5          We have provided the Court and counsel with reports

6   about on-going recruitment efforts at a variety of different

7   institutions for a variety of different positions.  And we'll

8   do the same for the Program Guide positions if that's what

9   the Court desires.

10         We're fully willing to provide the Court with

11  whatever evidence it needs to show that we are engaged in

12  good faith compliance with the Court's orders.

13         The defendants simply ask they not be required to

14  divulge privileged discussions about budget matters because

15  of the chilling effect that will occur.

16         It is very important for those communications to

17  remain as candid as can be.  Disclosure of this type could

18  have a very significant effect on the ability to conduct

19  those discussions in the future.

20         And quite frankly, that sort of disclosure is not

21  necessary in this context where it is all about the proof

22  being in the pudding when you come to the facilities, when

23  you talk to the staffers, when you look at the workload

24  study, that's when you know whether or not the right number

25  of people are in the right positions to implement the Program

16

1    Guide.

2         THE COURT:  Wait.  Wait.

3         MR. BIEN:  Your Honor, if I may respond?

4         You guys did a workload study last year.  It was

5    attached -- it was attached to our papers we filed in

6    connection with this motion.  And the defendants made the

7    decision not to authorize the requested positions that you

8    studied to be necessary.

9         THE COURT:  That's really the underlying problem.

10        Mr. Bien, just hang on a second.

11        Mr. Kennedy  -- Mr. Keating, I'm sorry.  I'm off on

12   another case.

13        Mr. Keating, in the final analysis the question is

14   what do you need to give the Court an informed judgment about

15   these issues.  And I really am prepared to defer to your

16   judgment as to whether you need these documents immediately

17   or whether you can await a determination by the Ninth Circuit

18   as to whether production of the documents is appropriate.

19        MR. KEATING:  Well, Your Honor, let me give some

20   factual background here.

21        As Mr. Bien has indicated, in the preparation for

22   requests from the Legislature in the previous fiscal year,

23   the Department went through a process where their own

24   clinicians put together a task force and sort of analyzed all

25   the different requirements, both the additions and

1    subtractions, that are involved in the revised Program Guide

2    and came up with a projected need for staff to meet those

3    needs.

4         My understanding here - and this is hearsay on my

5    part and nothing more than that - is that when it came time

6    for the Department of Finance to decide whether or not to

7    make that request to the Legislature, the Department of

8    Finance decided on the basis of the fact that the Court had

9    not yet approved the revised Program Guide that it was not

10   time to do that.

11        Subsequent to that, early this year, the program --

12   the revised Program Guide was -- about 95 percent of them

13   were adopted by you without dispute from the parties.  And

14   the assumption was that something would be presented to the

15   Legislature that would allow the defendants to implement the

16   Program Guide.  And, in fact, your order that required the

17   implementation of the approved portions of the revised

18   Program Guide called for the immediate implementation of the

19   revisions.

20        My understanding - and again this is on hearsay -

21   but, again, in conversations with the parties, including

22   counsel from both sides, the defendants -- apparently the

23   Department of Corrections and Rehabilitation prepared a

24   request to the Department of Finance that was, from what I

25   understand, less than what was required, what was sought in

18

1    the preceding fiscal year budget, but that represented an

2    effort that would try, and until the study that Miss Tillman

3    mentioned was completed at the end of this year, would

4    represent a substantial effort to implement the Program Guide

5    and their revisions in the interim with the expectations that

6    when the study came out, the defendants and parties and the

7    Court would be in a better position to judge whether or not

8    the resources of staff were equal to implementation fully of

9    the revised Program Guide.

10        But it is also my understanding, and this was the

11   reason for the request for the BCP, that the Budget Change

12   Proposal the BCP that the Department of Corrections supplied

13   to the Department of Finance, included substantially more

14   than was eventually requested from the Legislature.  And

15   indeed, it differed in focus and in scope from the request

16   that had been made at the preceding fiscal year.

17        And it was my desire to see that because I thought

18   that represented a revised, perhaps retrenched, but probably

19   a pretty good guide to what the defendants really thought

20   they needed to do this and to compare that with what they

21   actually got -- got or will get from the Legislature.  It

22   would be a pretty good indication to determine whether or not

23   the request was an enlightened one or one unenlightened and

24   needed to be supplemented immediately.

25        That's the sort of factual background for the request

19

1    and for the information.

2         When the original request was made for the BCP, while

3    there have been discussions in the past over the BCP as being

4    part of the deliberative process as has been contested here,

5    we have in the past, on several different occasions, received

6    from the defendants copies of the BCP.  So I was not -- I was

7    not prepared for the sort of recourse to the legal forum we

8    find ourselves in now.

9         That's the background of it.

10        THE COURT:  Well, I mean even that raises yet other

11   questions about whether the Court should take the contention

12   that the deliberative process is of such importance that the

13   State can't recognize the critical need here if, in fact, in

14   the past Budget Change Proposals have been supplied.

15        Miss Tillman, I recognize the sincerity of your

16   argument.  I believe that the Court is significantly

17   handicapped in not knowing what happened and why.  And it

18   appears to me that the Budget Change Proposals, what

19   Mr. Keating's describing as the BCP, are of great or

20   significant use in trying to evaluate compliance with the

21   program and the expectations as to whether or not this will

22   ever, in fact, occur.

23        Accordingly, the Court will deny the motion for a

24   stay.  I note, however, that the Court's previous order

25   required production by the 14th, which, I think, is today.

20

1    And I'm hard put to tell you to do that, but I'm equally hard

2    put, to be candid, to even give you a couple of days because

3    part of the reason that we are here on the 14th, on the date

4    that you were supposed to comply, is because of your own time

5    table in response to the Court's previous order.

6            No.  I don't need further argument now.  I need to

7    think.

8            (Brief pause.)

9            What the Court is going to do is I'm going to direct

10   you to comply with the Court's order to produce the BCP, but

11   I will permit them to be filed under seal so that the State

12   need not at this time serve a copy on the plaintiff.

13           The Court will grant the State some period of time to

14   go file an appeal and seek a stay from the Ninth Circuit.

15           You know, I don't want to put you under extraordinary

16   pressure, Miss Tillman, but, you know, I keep saying we've

17   been here more than ten years.  It is time to start making

18   these orders -- impressing upon the State the urgency of

19   these orders.

20           MS. TILLMAN:  Your Honor, I can have the -- I can

21   file the appeal by this Friday morning, if that works for the

22   Court's calendar?

23           THE COURT:  That's fine.  That's fine.

24           You file your appeal, you seek your stay, but you

25   will file the documents under seal with the Special Master by

21

1  today -- by the end of today.

2          That will be the order of the Court.

3          Thank you, folks.

4          MS. TILLMAN:  Thank you, Your Honor.

5          MR. KEATING:  Thank you, Your Honor.

6          (Whereupon, the matter was concluded.)

7          (Off the record at 02:37 PM)

8                         ---o0o---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           REPORTER'S CERTIFICATE

2                                ---o0o---

3

4       STATE OF CALIFORNIA  )
        COUNTY OF SACRAMENTO )

5

6

7            I certify that the foregoing is a correct transcript

8       from the record of proceedings in the above-entitled matter.

9

10                     IN WITNESS WHEREOF, I subscribe this
        certificate at Sacramento, California on this 16TH day of
11      JUNE, 2006.

12

13

14                              *Catherine E.F. Bodene*

15                              CATHERINE E.F. BODENE,
                                CSR NO. 6926
16

17

18

19

20

21

22

23

24

25

                CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                              (916) 446-6360