**Exhibit D**

Finance Letter – Cover Sheet
For Fiscal Year 2006/2007

| STATE OF CALIFORNIA<br>FINANCE LETTER - COVER SHEET<br>FOR FISCAL YEAR 2006/07<br>DF-46 (WORD Version)(REV 01/06)<br>*Please report dollars in thousands.* | | | Department of Finance<br>915 L Street<br>Sacramento, CA 95814<br>IMS Mail Code: A-15 |
|---|---|---|---|
| CP # | PRIORITY NO. | ORG. CODE<br>5225 | DEPARTMENT<br>Corrections and Rehabilitation |
| PROGRAM<br>50 | ELEMENT<br>.30, .50 | COMPONENT | |

TITLE OF PROPOSED CHANGE
Mental Health Program

SUMMARY OF PROPOSED CHANGES
The California Department of Corrections and Rehabilitation (CDCR) Division of Correctional Health Care Services (DCHCS) is requesting $20.2million to establish 254.6 positions and associated costs in 2006/07 to providing timely, cost-effective mental health services for seriously mentally disordered inmates and parolees. Proper screening and treatment of mental illness is the most effective way to reduce inmate-patients' potential for violence and associated costs. This Finance Letter (FL) addresses the minimum necessary field and headquarters staffing required for compliance with *Coleman* court orders mandated by the Court Special Master.

|  | Current Year | Budget Year |
|---|---|---|
| POS | 0.0 | 254.6 |
| PY's | 0.0 | 206.2 |
| $$ | $ 0.0 | $20,197 |

| REQUIRES<br>LEGISLATION<br>☐ YES<br>☒ NO | CODE SECTION(S) TO BE<br>AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND<br>MARK IF APPLICABLE<br>☒ ONE-TIME COST       ☐ FUTURE SAVINGS<br>☒ FULL-YEAR COSTS  ☐ REVENUE<br>☒ FACILITIES/CAPITAL COSTS | |
|---|---|---|---|
| PREPARED BY<br>Shama Chaiken 445-4114 | DATE<br>2/7/06 | REVIEWED BY<br>L. Bosnick | DATE<br>4/3/06 |
| DEPARTMENT DIRECTOR | DATE | AGENCY SECRETARY | DATE |

DOES THIS BCP CONTAIN INFORMATION TECHNOLOGY (IT) COMPONENTS?   YES ☐ OR NO ☐
IF YES, DEPARTMENT CHIEF INFORMATION OFFICER SIGNATURE       DATE

FOR IT REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY STUDY REPORT (FSR) WAS APPROVED BY THE DEPARTMENT OF FINANCE.

DATE       PROJECT #       FSR ☐   OR   SPR ☐

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?

☐ YES   ☐ NO       ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND
                    DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

**DEPARTMENT OF FINANCE ANALYST USE**
**(ADDITIONAL REVIEW)**

CAPITAL OUTLAY ☐   OTROS ☐   FSCU ☐   OSAE ☐   CALSTARS ☐

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**FINANCE LETTER**
**FISCAL YEAR (FY) 2006/07**

**INSTITUTION/DIVISION:** Division of Correctional Health Care Services      **NUMBER:**
**TITLE:** Mental Health Program

### A. NATURE OF REQUEST

In 1995, a federal class action lawsuit (*Coleman v. Schwarzenegger*) found that the California Department of Corrections and Rehabilitation (CDCR) violated the Eighth and Fourteenth Amendments by being deliberately indifferent to the mental health needs of inmates. The CDCR, Division of Correctional Health Care Services (DCHCS), Mental Health Program (MHP) at Headquarters, and the institutional Mental Health Services Delivery System (MHSDS) intend through this proposal to comply with the *Coleman* court's orders (see Attachment 1).

The CDCR DCHCS mission is to protect the health and safety of the public and CDCR staff by providing timely, cost-effective mental health services for seriously mentally disordered inmates and parolees. Proper screening and treatment of mental illness is the most effective way to reduce inmate-patient potential for violence and its associated costs. CDCR DCHCS MHSDS most critical areas of service delivery which are in need of immediate staffing are: Mental Health Outpatient Housing (MH-OHU), and Mental Health Reception Centers (RC).

This Finance Letter (FL) addresses the necessary Headquarters staffing for compliance with the Special Master's recommendations, which are currently being adopted as final orders by the *Coleman* court (See attached Court Order dated March 2, 2006 issued by Lawrence Karlton). Review of current recruitment and program needs and requirements has led DCHCS to conclude that the most effective and efficient method of confronting the critical staffing shortage is to focus on meeting the staffing mandates of the 1999 and 2001 court orders and attacking current vacancies. While resolving these issues, the proposed workload study will determine the staffing needs of the 2006 MHSDS Revised Program Guide (see Attachment 2) without delaying their implementation. By proceeding in this fashion, DCHCS intends to immediately address existing inmate-patient mental health needs and staffing issues while simultaneously developing the necessary staffing methodology that will quantify and standardize the human resource requirements crucial to meeting the federal court mandated level of services.

This FL is divided into two sections. The first section addresses the staffing needs in the most critical care areas in the field institutions, and staffing necessary to comply with the 1999 and 2002 court orders. The second section addresses the Headquarters MHP staffing required for compliance with the pending 2006 *Coleman* court order.
This FL is requesting a total of 254.6 positions for FY 2006/07.

1

**SECTION I.**   **DIVISION OF CORRECTIONAL HEALTH CARE SERVICES (DCHCS), MENTAL HEALTH SERVICES DELIVERY SYSTEM (MHSDS) – 2006 REVISED PROGRAM GUIDE RESOURCES**

In 1997, CDCR established initial policies and procedures for providing mental health services at all CDCR institutions through the MHSDS Program Guide, which was provisionally approved by the court. Revisions to the Program Guide have been an ongoing requirement of the *Coleman* case. As a result, each revision has resulted in amending memoranda to the field requiring additional workload, changing timelines and/or new programs. These amending memoranda have been included in the pending 2006 MHSDS Revised Program Guide. (See attached Court Order dated March 2, 2006 issued by Lawrence Karlton.) Implementing the 2006 MHSDS Revised Program Guide is an integral part of the strategy to exit the *Coleman* case and to reduce costs related to this litigation. However, timing of resource allocation will appear to be more sagacious after completing a workload study to determine the necessary staffing that will quantify and standardize the human resource requirements critical in meeting the federal court mandated level of services. In the meantime, CDCR is requesting resources to address specific workload increases identified for MH-OHU's and RC's as a result of the new Program Guide Implementation

**SECTION II.**   **DIVISION OF CORRECTIONAL HEALTH CARE SERVICES (DCHCS), MENTAL HEALTH PROGRAM (MHP) – HEADQUARTERS**

The second section addresses the necessary MHP Headquarters staffing required for compliance with the pending *Coleman* court order. (See attached March 2, 2006 court order.) Recently, the federal court's Special Master specifically noted that there are inadequate DCHCS mental health leadership and management resources which prevents effective response "to the myriad of issues persistently hurled at them." The Special Master also found that various areas of noncompliance with currently required elements of mental health care in the institutions, and with future planning efforts, were due to a lack of ability to provide Headquarters support and Central Office oversight. On January 19, 2006, in a meeting with All Parties in the *Coleman* case, the Special Master and court experts extensively emphasized the need for a team of Headquarters' staff devoted to quality management assurance. The CDCR DCHCS is also requesting funds for extraordinary travel expenses for the Quality Management Assistance Program (QMAP) and Psychological Testing Units, quarterly meetings for the Psychological Testing staff and leadership staff, and miscellaneous equipment needs. In addition, CDCR DCHCS is requesting the above mentioned workload study of field and Headquarters' functions to identify, standardize and quantify the human resource requirements of the MHP and DCHCS.

**B. BACKGROUND/HISTORY**

On June 25 1991, a class action complaint (*Coleman vs. Schwarzenegger, et al.*) was filed against CDCR alleging that the department ". . . under color of state law . . . acted with deliberate indifference depriving the plaintiff class of their rights to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth amendments to the United States Constitution."

2

The United States District Court for the Eastern District of California ultimately found that the state and prison officials had acted with deliberate indifference to the medical needs of inmates with serious mental disorders by ignoring the advice of their own experts regarding the deficiencies that had existed in the correctional system for years. The court found that CDCR DCHCS MHSDS was a constitutionally inadequate system that lacked the necessary elements for delivery of adequate mental health care, such as: screening and identification of mentally ill inmates; prompt access to mental health professionals for diagnosis and treatment; patient access to necessary and appropriate levels of care as determined by clinicians, including outpatient care; residential care, crisis care, and inpatient care; medical records and an information management system; and a quality assurance system. The court concluded that California's system could not and did not meet the serious medical needs of mentally ill inmates incarcerated in its prisons and, on June 6, 1994, it was recommended that the district court order the appointment of a Special Master and that state and prison officials develop and implement forms, protocols, and plans necessary to remedy constitutional violations.

After 11 years of implementing the court's orders and the mandated services, as well as preparing for the implementation of the 2006 MHSDS Revised Program Guide, CDCR and DCHCS have determined that current resources are insufficient to implement the newly mandated 2006 MHSDS Revised Program Guide in a manner consistent with the court's requirements and level of community standards of quality care. Failure to implement the 2006 MHSDS Revised Program Guide will continue the current status of mentally ill inmates going undiscovered, undiagnosed, and untreated, while at the same time being subjected to conditions that aggravate their illnesses. Due to limited resources, those mentally ill inmates, who currently do receive some form of treatment, suffer needless extended and medically harmful delays in access to necessary psychiatric care.

CDCR DCHCS researched other states' correctional mental health staffing and found their mental health population small compared to California's, and that some states base their staffing on total inmate population in determining their mental health staff to inmate ratios (see Attachment 12). CDCR DCHCS also reviewed the American Association for Correctional Psychology accreditation requirements (see Attachment 13), which recommended a ratio of one FT psychologist for every 50-75 adult inmates; the National Commission on Correctional Health Care, which provided guidelines (see Attachment 14); and Human Rights Watch (see Attachment 15), which recommended that each prison system conduct an assessment to "ensure mentally ill prisoners receive mental health services consistent with community standards of care".

California has the largest mental health population in the nation. The CDCR DCHCS is responsible for administering the critical Mental Health Program for a population of nearly 170,000 inmates, including over 31,000 inmate-patients enrolled in the MHSDS. Of the over 31,000 inmates identified as seriously mentally ill, over 5,000 are high risk and in either residential or other in-patient treatment settings. Over 25,000 inmates are receiving psychotropic medications, usually twice every day.

To continue a MHSDS that is understaffed, significantly overworked, and lacking a quality assurance program places inmates and inmate-patients at risk, and the state, CDCR and key decision makers in danger of being found in contempt of court. Standardizing the delivery of mental health care in accordance with generally accepted medical practice, the National Commission on Correctional Health Care, community standards, and the law is

3

consistent with the CDCR's Strategic Plan and DCHCS's Goals and Initiatives to manage the inmate and parolee population in a safe, efficient, and cost effective manner.

To date, the State of California has spent $28,970,085 in monitoring and attorney fees in the *Coleman* matter. To continue current operations without making adequate provision for complying with the court's mandates and mental health professional standards will leave the State open to further litigation and expenses associated with additional court imposed remedies that may be avoided by implementing the proposed improvements.

CDCR is, therefore, requesting Headquarters positions to manage the increased workload relating to implementation and monitoring of the 2006 MHSDS Revised Program Guide. The proposed Headquarters structure is consistent with those of the Dental and Medical Programs, with each program under a Statewide Program Director.

In addition, if the current vacancy rates are not reduced to under ten percent, CDCR will be in violation of the pending court order that addresses psychiatry vacancies, and inmate-patients will continue to be harmed by inadequate and insufficient access to care.

The resources requested in this FL will provide the staffing level necessary to comply with court mandates and assist in extricating the state from federal judicial oversight. Unless noted otherwise, all positions are effective July 1, 2006.

## C. STATE LEVEL CONSIDERATIONS

CDCR acknowledges in its legislatively approved Strategic Plan that it is morally and constitutionally obligated to provide health care services to incarcerated offenders. The plan notes that a fundamental level of health care is necessary for incarcerated individuals' successful return and integration into the community and concedes that radical changes are necessary in the Department's health care systems to ensure efficient delivery of quality, cost-effective health care services.

As noted in the Special Master's January 2006 report:
> "*Coleman* will not be ended until the defendants can demonstrate an ability to provide meaningful mental health care . . .The defendants' recent history of developing erratic plans or plans they are unable subsequently to implement suggests the present need for something more than just another requirement for the generation of yet more plans."

Standardizing the delivery of mental health care is an essential, critical step to managing the inmate and parolee population and providing necessary mental health care in a safe, efficient, and the most cost effective manner possible. By providing the resources required to comply with the pending federal court order and the mandated policies and procedures essential to providing constitutionally adequate mental health care, CDCR will take an important step toward self-directed management of MHSDS.

In providing inmate-patient mental health services, MHSDS provides a continuum of inpatient care from a contractual relationship with DMH for acute and intermediate, as well as a short-term crisis, inpatient care program within CDCR institutions.

4

### D. FACILITY/CAPITAL OUTLAY CONSIDERATIONS

A space study is currently underway to determine the space needs of the Mental Health, Dental and Medical programs as well as other programs in the institutions.

### E. JUSTIFICATION

The following pages are the justification for:

Section I.   Division of Correctional Health Care Services (DCHCS), Mental Health Services Delivery System (MHSDS) – 2006 Revised Program Guide Resources

Section II.  Division of Correctional Health Care Services (DCHCS), Mental Health Program (MHP) – Headquarters

# Section I:

# DIVISION OF CORRECTIONAL HEALTH CARE SERVICES

# MENTAL HEALTH SERVICES DELIVERY SYSTEM

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

# 2006 REVISED PROGRAM GUIDE

**SECTION I.    DIVISION OF CORRECTIONAL HEALTH CARE SERVICES (DCHCS), MENTAL HEALTH SERVICES DELIVERY SYSTEM (MHSDS) – 2006 REVISED PROGRAM GUIDE RESOURCES**

The court found that DCHCS MHSDS was an inadequate system that lacked, in whole or in part, the necessary elements for delivery of adequate mental health care. The 2006 MHSDS Revised Program Guide are policies and procedures that are consistent with the court's requirements.

Since there are new functions in the 2006 MHSDS Revised Program Guide and insufficient workload data available upon which to base an objective, meaningful conclusion as to the appropriate number and level of personnel necessary to adequately carry out the new duties, DCHCS compared with the functions with the 1997 court mandate ratios (see Attachment 3).

**1.    Mental Health Reception Center (RC)**

The MHSDS provides universal screening for all incoming inmates at Reception Centers and directs transfers from the Reception Center to the treatment facility for further evaluation and/or treatment if needed.

The bulk of the Intake Assessment requirements and Treatment Planning requirements described in the CCCMS GP Section will be the responsibility of RC staff. The 2006 MHSDS Revised Program Guide requires that EOP LOC patients be seen weekly until transfer (but does not require the ten hours of weekly structured therapeutic activities). According to the resource analysis data collected, for RC related duties, the caseloads should be reduced by 50 percent from the current staffing allocated. The current RC duties were never staffed separately from the CCCMS LOC duties, and the ratio below takes this into account along with the 2006 MHSDS Revised Program Guide duties.

Based on the above formula and population statistics for October 2005, DCHCS is requesting **51.0 Psychologist (Clinical) positions** (26 implemented 10/1/06 & 25 implemented on 1/1/07) **and 20.6 Correctional Counselor Is** for a total of 71.6 positions for the RC.

7

2. **Mental Health Outpatient Housing Unit (MH-OHU)**

The 2006 MHSDS Revised Program Guide requires seven-day per week coverage in for mental health patients in any OHU. Additional weekend clinical staffing is requested in institutions that have a significant OHU population and no MHCB (where weekend staffing is requested above). These five institutions are Avenal State Prison (ASP), CCI, CMC-East, NKSP, and SQ.

Based on the above formula and the February 6, 2006 population status for MH-OHU, DCHCS is requesting **72.98** positions (**38.7 LPT** (implement 10/1/06), **8.0 Staff Psychiatrists, 18 Clinical Psychologists, and 8.3 OT** positions).

3. **Institution Level Supervision -**

Currently, 265.6 LPTs are supervised by 26.7 Supervising Registered Nurse I (SRN I) staff members and two Sr. LPTs. At this time, this FL is only requesting Sr. LPTS to compensate for the existing LPTs (265.6). The total number of Supervisors required for a one Supervisor: ten LPT ratio at institutions with more than ten LPTs = 15 - *Less 3.0 Sr. LPT upgrades allocated to COR in FY 2005/06* = a need for 12.0 Sr. LPTs. Twelve recommended supervisors – two (current Senior LPT supervisors at SAC) = 10 Supervisors. The Sr. LPT classification has not been regularly used to supervise LPTs, but is recommended to ensure appropriate supervision relative to scope of practice (i.e., group therapy duties). Senior LPTs can still perform LPT duties if necessary. Total Ratio - one Sr. LPT: 10.0 LPT (at institutions with more than ten LPTs = a need for 10.0 Sr. LPT positions. This FL requests permanent upgrading of 10.0 LPTs to Sr. LPT positions

Unit Supervisors are required to provide supervision for Senior. LPTs across shifts at institutions with multiple mental health missions. Unit Supervisor positions have not previously been designated in CDCR. The CDCR duty statement for this position has been developed based on the Department of Personnel Administration specifications. The Unit Supervisor ensures the administration of the routine nursing services across correctional mental health units and custody levels; coordinates the work of the nursing staff and acts as a liaison between Unit staff on varying shifts; trains and develops shift leads; instructs LOC nursing personnel in nursing processes, habilitation, and rehabilitation techniques for inmate-patients; and provides continuous management and supervision of Units that offer routine and supportive nursing services for developmentally disabled or mentally ill inmate-patients.

One Unit Supervisor is required at each institution with multiple mental health missions including: RC, CCCMS, ASU-CCCMS, GP-EOP, ASU-EOP, and/or PSU. Unit supervisors at this time are requested for mental health "consolidated care center" institutions in the "CDCR Right Prison, Right Mission" plan. The 9 institutions are: CIM, CIW, CMC, CMF, LAC, MCSP, PBSP, RJD, and SAC.

Requesting 9.0 Unit Supervisors to be allocated to the nine Consolidated Care Centers (implement on 1/1/07).

Summary of positions needed to accomplish adequate Supervision Levels.
- Permanently Upgrade 10.0 LPTs to 10.0 Sr. LPTs (implemented on 10/1/06).

8

- 9.0 Unit Supervisors (implement on 1/1/07).

## 4. Performance Evaluation and *Colman* Court Case Compliance

The Quality Management System is required, by the *Coleman* and *Plata* court cases, in order to provide adequate performance management and to ensure compliance with mental health policies and procedures. Quality Management requirements specific to mental health involve identification of problems in delivery of mental health services, establishment of QIT, tracking progress of QIT, conducting Suicide Prevention Focused Improvement Team (FIT) meetings (including development and implementation of corrective action plans when a suicide occurs), conducting Mental Health Subcommittee meetings, and facilitating an overall data-based approach to bed utilization. All meetings require documentation, which is sent to other Quality Management Committees at the institution and at Headquarters. Although an analyst has been designated at some institutions for the purpose of health care quality management, a dedicated HPS I for mental health quality management is required to ensure that these important duties are completed as required. This position will also be responsible for oversight of tracking reasonable accommodation offered to MHSDS inmates who are part of the class action *Armstrong* court case. Each HPS I require clerical support in order to complete duties associated with taking meeting minutes, copying, tracking, filing, and communications.

Summary of positions needed to accomplish Quality Management. These positions are requested effective July 1, 2006.

   9.0 HPS Is

## 5. Reception Center (RC) Screening and Diagnostic Clarification

The Million Clinical Multiaxial Inventory – III (MCMI-III) test can be administered in approximately 30 minutes, either individually or in a group setting. Research indicates that this test is a valid and reliable diagnostic tool to assist in objectively triaging patients for immediate mental health needs, determining mental health diagnosis, as well as predicting future needs for mental health intervention. This test may also be used to predict reaction to authority, escape risk, sexual predation/victimization, disposition to malinger, response to crowding/isolation, suicidal tendencies, and amenability to treatment (see Attachment G: Retlzaff, P., Stoner, J., and Kleinsasser, <u>The Use of the MCMI-III in the Screening and Triage of Offenders</u>, *International Journal of Offender Therapy and Comparative Criminology, 46, 3, 319-332).*

The use of this test, along with a standard computer generated report of results, is proposed for use at RCs, for all newly arriving inmates who have a positive mental health screening indicator (approximately 20,000 inmates per year). A more rigorous interpretation/analysis of results is proposed for use with current inmate-patients at EOP LOC, when diagnostic clarification is needed (approximately 3,000 per year). See Attachment H for sample report.

The use of this instrument is expected to reduce overall mental health program cost. Data generated from the standard use of the MCMI-III at RCs will be used to determine appropriate mental health LOC, thereby reducing inappropriate placements into mental

9

health programs. Use of the MCMI-III at EOP LOC will significantly reduce the use of costly DMH beds for diagnostic clarification.

This FL requests a total for $778,800 per year for a two year period. - $748,800 per year for contract funding for a <u>two year pilot program</u> for valid and reliable test to predict mental health needs of inmates arriving in RC and to aid diagnostic clarification in EOP Level-of-care (LOC) and $30,000 for supplies for implementation of a pilot program for valid and reliable test to predict mental health needs of inmates arriving in RCs and to aid diagnostic clarification in EOP LOC. Request for funding is to be effective July 1, 2006.

## 6. <u>Additional Resources</u>

In order to implement the 2006 MHSDS Revised Program Guide, the CDCR DCHCS is requesting the following permanent positions:

1. 6.0 Senior Psychologist Supervisors to provide additional supervision in institutions where there is a high-propensity of mental health inmates in AD Seg or SHU. These positions will be located at CCI, PVSP, RJD, SATF, SQ-RC, and SCSP.

10