1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6  1300 I Street, Suite 125
   P.O. Box 944255
7  Sacramento, CA 94244-2550
   Telephone: (916) 327-7872
8  Fax: (916) 324-5205

9  Attorneys for Defendants
   CF1997CS0003
10

**FILED**

JUL 1 2 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

**SEALED**

11
                    IN THE UNITED STATES DISTRICT COURT
12
                   FOR THE EASTERN DISTRICT OF CALIFORNIA
13

14

15  **RALPH COLEMAN, et al.,**                    NO. CIV S-90-0520 LKK JFM P
                                                  *Filed Under Seal*
16                              Plaintiffs,        **DEFENDANTS' RESPONSE TO**
                                                  **SPECIAL MASTER'S REPORT**
17           v.                                    **ON DEFENDANTS' BUDGET**
                                                  **REQUESTS FOR STAFFING TO**
18  **ARNOLD SCHWARZENEGGER, et al.,**            **IMPLEMENT THE REVISED**
                                                  **PROGRAM GUIDE AND TO**
19                              Defendants.        **JOINDER OF DEPARTMENT**
                                                  **OF FINANCE, SEPARATE**
20                                                **STATEMENT OF OBJECTIONS,**
                                                  **DECLARATION OF JERUE**
21

22

23                                    I.

24                             **INTRODUCTION**

25       Defendants hereby respond to this Court's June 21, 2006 order to respond to Special

26  Master Keating's *Report on the Status and Sufficiency of the Defendants' Budget Request for*

27  *Staffing to Implement the Revised Program Guide* (the Report). Defendants hereby object to the

28

RESPONSE TO SM REPORT BCP

1

1  findings and recommendations stated in the Special Master's Report.[1]  Defendants request this

2  Court disregard certain findings and modify the recommendations to (1) eliminate the

3  recommended funding of positions in this fiscal year of 2006-07 and (2) require a baseline

4  assessment of the mental health positions allocated to CDCR be incorporated within any

5  workload study.

6  This Court also directed Defendants to submit a brief on the joinder of the Department

7  of Finance (DOF) as a defendant in this matter. Defendants assert the Eleventh Amendment bars

8  the joinder of DOF as a defendant in this case. Further, the Eleventh Amendment prohibits this

9  Court from exercising jurisdiction over the discretionary decisions of a state official. Neither

10  DOF nor its director, Michael Genest, can be properly joined.

11  Lastly, this Court requested the parties to submit briefs on the need for any continued

12  seal on the Special Master's report. Defendants do not seek a continued seal on the report.

13  **II.**

14  **FACTUAL AND PROCEDURAL BACKGROUND**

15  **A.    In Past Years, Court Orders Directed The Staffing Of Mental Health Positions In**

16  **Administrative Segregation Units and Defendants Have Obtained That Funding.**

17  This Court has ordered particular staffing ratios for the care of mentally ill inmates in

18  administrative segregation units and CDCR has obtained funding to enable such staffing ratios in

19  administrative segregation units.

20  In July 1999, this Court ordered Defendants to adopt certain staffing ratios in

21  administrative segregation units. Those staffing ratios included sufficient staff to provide weekly

22  coverage of psychiatric technician rounds, one half-time psychiatrist to each administrative

23  segregation unit, one full-time case manager (psychologist or psychiatric social worker) to each

24  administrative segregation unit for institutional classification committee, interdisciplinary team

25  treatment, and counseling; one full-time psych tech to each administrative segregation unit to

26

27

28  1. For convenience and expediency, the Defendants submit a copy of the Report with line numbers interlineated on the pages as Exhibit 1. A Separate Statement of Objections to the Report is also submitted.

RESPONSE TO SM REPORT BCP

2

1   extend the services of the unit case manager and do daily living activities or therapeutic sessions;
2   one full-time clerical position for administrative segregation clinical team; and one full-time case
3   manager (psychologist or psychiatric social worker) for every nine enhanced outpatient program
4   in administrative segregation unit for ten hours of structured therapeutic activities.

5           CDCR sought and obtained funding for the positions necessary to comply with this
6   court order. (Dec. Jerue ¶ 16.) The Governor's budget proposal for fiscal year 2000-01 stated
7   that CDCR only had 35 existing staff dedicated to mental health functions to serve inmates in
8   the administrative segregation areas of CDCR's mental health services delivery system, and
9   states the *Coleman* court ordered CDCR to increase mental health staffing to serve inmates in
10  those areas. (*Id.* at ¶ 17.) The proposal was approved by the Legislature, thus increasing the
11  staffing level for CDCR's administrative segregation, secured housing units, and condemned
12  units by 285.4 positions in accord with the methodology required by the order of the *Coleman*
13  court. (*Id.* at ¶ 19.) Therefore, with approval of this proposal, the department had a total of
14  320.4 positions allocated for these activities beginning in fiscal year 2000-01. (*Id.*)

15          On July 24, 2004, this Court ordered Defendants to plan for the provision of mental
16  health services in the Secured Housing Unit at California State Prison/Corcoran to meet the
17  standards for care included in the revised Program Guide for secured housing units and to include
18  a staffing ratio adequate to meet those needs.

19          In compliance with this Court order, the Governor's proposed budget for fiscal year
20  2005-06 sought approval by the Legislature of 51.3 positions for California State Prison,
21  Corcoran. (Dec. Jerue, ¶¶ 11, 13.) While the Special Master's report indicates that a budget
22  change proposal for that fiscal year sought positions for Program Guide implementation, that
23  particular proposal was never submitted to DOF. (*Id.* at ¶10.) DOF did receive a different
24  budget change proposal for Program Guide positions, but the request was not properly
25  substantiated by a court order or by an adequate analysis. As a result, the request was not
26  included in the Governor's proposed budget to the Legislature. (*Id.* at ¶ 11.) Rather, the
27  Legislature was alerted that a subsequent request for budget authority would be submitted to
28  address resources needed to implement the revised Program Guide at all institutions, once the

RESPONSE TO SM REPORT BCP

3

1   revised Program Guide received final court approval. (*Id.* at ¶ 13.)

2          At the beginning of fiscal year 2000-01, 320.4 positions were available to provide

3   mental health services to inmates in administrative segregation units as a result of the budget

4   change proposal process. (Dec. Jerue, ¶¶ 17, 19.) Another 44.0 positions were added under the

5   'prevalence and mix' process for the provision of mental health services in administrative

6   segregation over the subsequent six fiscal years. (*Id.* at ¶ 22.) The combined result was a total

7   resource level of at least 364.4 positions in administrative segregation by fiscal year 2005-06.

8   (*Id.*)

9   **B.   With The Exception of Positions In Administrative Segregation Units, The Mental**

10        **Health Positions Sought In The Budget Change Proposal For Headquarters and**

11        **Program Guide Staffing Were Funded.**

12         CDCR has obtained positions for the provision of mental health services in

13   administrative segregation by two methods: the annual budget process and the 'prevalence and

14   mix' process. (Dec. Jerue, ¶¶ 21.)

15         In 2006, CDCR sought 299.98 administrative segregation positions, 71.6 staff

16   positions in reception centers and 72.98 positions for mental health outpatient units, and 100

17   positions for headquarters staffing in its Mental Health Program Spring 2006 Finance Letter.

18   (Ex. 1, Special Master's Report, p. 6; Dec. Jerue, ¶ 14.) The Governor proposed to the

19   Legislature all the positions sought by CDCR in its reception centers, mental health outpatient

20   units and headquarters. The Governor chose not to propose to the Legislature 293.98 of the

21   299.98 administrative segregation positions requested by CDCR. (Dec. Jerue, ¶ 15.)

22         As stated above, CDCR had at least 320.4 positions in administrative segregation as of

23   fiscal year 2000-01. Under the prevalence and mix process, CDCR automatically received 44.0

24   positions for the provision of mental health services in administrative segregation over the past

25   six fiscal years. (Dec. Jerue, ¶ 22.) When combined with the 320.4 positions available as of

26   fiscal year 2000-01, CDCR has thus obtained a total resource level of at least 364.4 positions in

27   administrative segregation units. (*Id.*)

28   //

1

**C.     Because The CDCR Failed To Explain The Past Funding and Present Use Of**

2

**The Administrative Segregation Positions, The Governor's Proposed Budget**

3

**For Fiscal Year 2006-07 Did Not Include Those Positions.**

4         The only issue posed by the Special Master's Report is the decision not to fund

5  administrative segregation positions in this fiscal year of 2006-07. The basis for the decision is

6  two-fold. First, it appears that those positions were previously allocated in fiscal year 2000-01 in

7  accord with this Court's 1999 order, and were increased through the prevalence and mix process

8  in fiscal years 2001-02 through 2005-06. (Dec. Jerue, ¶¶ 16 - 23.) CDCR was not able to

9  explain how those existing positions were accounted for in its request for positions submitted for

10  fiscal year 2006-07. (*Id.* at ¶¶ 16, 26; Exh. 2, *Final Budget Proposal, Modifications Necessary to*

11  *Meet July 26, 1999 Court Order in Coleman v. Davis*.) Second, and perhaps most significantly,

12  CDCR did not and apparently could not account for the present use of those previously allocated

13  positions. (Dec. Jerue, ¶ 27.) There is a concern that previously funded positions may have been

14  re-directed to other purposes within the same facilities or to other facilities to provide mental

15  health services. (*Id.*)

16         DOF informed CDCR of its questions regarding CDCR's proposal. (Dec. Jerue,

17  at ¶ 16.) CDCR did not provide any additional information for those positions. (*Id.*) This lack

18  of information is not a record on which to base an order to hire 299 additional CDCR employees.

19

**III.**

20

**LEGAL ARGUMENT**

21

**A.     Defendants Do Not Seek A Continued Seal On The Special Master's Report**

22

**Or The Attached Exhibits.**

23         This Court asked the parties to submit briefs addressing whether the budget

24  change proposal documents should remain under seal. For the discrete matter of the Special

25  Master's Report and its attached exhibits, Defendants no longer assert the deliberative process

26  privilege and therefore do not seek a continued seal on the records. Defendants note that their

27  appeal of this Court's June 12, 2006 and June 14, 2006 orders will be withdrawn.

28  //

**B.    Defendants Object To The Underlying Rationale and Recommendation Stated In Special Master Keating's Report.**

**1.    The Special Master's Report Does Not Have The Benefit Of The Facts Warranting The Decision To Deny Funding For Additional Administrative Segregation Positions.**

Special Master Keating's report acknowledges its fatal flaw: the Special Master reviewed only documents submitted by CDCR in support of its proposal for additional positions. Special Master Keating neither reviewed nor sought any information from DOF regarding the rejection of the budget change proposal. (Dec. Jerue, ¶¶ 3, 5, 29.) As a result, the report suffers from a skewed understanding of both the process and the justification of the budget change proposal.

The Court ordered Special Master Keating to report on the status and sufficiency of Defendants' budget requests for staffing augmentation necessary to implement the court-approved provisions of the January 2006 Revised Program Guide. (Order, May 30, 2006.) Special Master Keating requested the budget change proposals submitted by CDCR for the May Revise of 2006. (*Id.*) No other documents were requested by Special Master Keating. (Dec. Jerue, ¶¶ 5, 29.) The report shows only four documents were reviewed in preparing the report:

-the CDCR letter to Special Master Keating detailing the timetable for Program Guide implementation and indicating a 2004 workload study,

-the CDCR Finance Letter for Fiscal Year 2005-06,

-the CDCR Finance Letter for Fiscal Year 2006-07;

-the CDCR Finance Letter for Fiscal Year 2006-07.

(Exhs. A - D to Special Master's Report.)

Each of the documents reviewed by the Special Master in preparing his report was prepared by CDCR and described CDCR's perception of its staffing needs. (*Id.*) None of the documents reviewed by the Special Master in preparing the report was drafted by DOF. (Dec. Jerue, ¶¶ 3, 5, 29.) None contained the DOF analysis of the funding for staff positions sought by CDCR. (*Id.* at ¶¶ 5, 31.) The Special Master's analysis therefore did not benefit from any review of documents showing DOF deliberations and the rationale for any recommendation by

RESPONSE TO SM REPORT BCP

6

1  DOF to the Governor to exclude the administrative segregation positions from the proposed May
2  Revise budget.

3          Without the benefit of documents evidencing the actual analysis undertaken by
4  DOF, the report arrives at its findings by extrapolation. The report compares the CDCR
5  submission to the Governor's presented budget and finds a reduction in sought administrative
6  segregation staff positions. That reduction is assumed to be improper—not because the special
7  master reviewed the DOF recommendation and rationale for the reduction, but simply because
8  the reduction occurred. Because the Special Master did not review any documents showing
9  DOF's rationale for recommending exclusion of the administrative segregation positions that
10  CDCR sought, the finding that DOF improperly "rejected" the CDCR request for administrative
11  segregation positions lacks foundation and must be disregarded.

12          This finding and, unfortunately, the report as a whole misconstrues the role of
13  DOF in preparing the budget presented to the Legislature. The report describes DOF as
14  "rejecting" the administrative segregation positions stated in the BCP. (Exh. 1, Numbered
15  Report, 8:21-9:3; 10:9-10.) Throughout the report, DOF is portrayed as the gatekeeper on
16  requests for funding, denying positions and offering a workload study in return. (*Id.* at 9:4-8.)
17  Neither the record nor the law supports this portrayal of DOF.

18          The State Legislature has vested the DOF with general powers of supervision over
19  all matters concerning the financial and business policies of the state. Cal. Gov't Code § 13070.
20  The California Supreme Court has held that the purpose of section 13070 is "to conserve the
21  financial interests of the state, to prevent improvidence, and to control the expenditure of state
22  money by any of the several departments of the state." *State v. Brotherhood of R.R. Trainmen,*
23  37 Cal.2d 412, 422 (1951). This mission is accomplished by requiring every state agency to
24  submit to DOF "for approval" a complete and detailed budget at such time and in such form as
25  may be prescribed by the department. Cal. Gov't Code § 13320. The "approval" is in the form
26  of reviewing the justification proffered in support of the funding request to ensure the Governor's
27  proposed budget serves the public interest and can be reviewed on the merits by the approval of
28  the Legislature. (Dec. Jerue, ¶¶ 4, 6 - 9.) Once the DOF completes its review of submitted

RESPONSE TO SM REPORT BCP

7

1  budget requests, then DOF makes recommendations to the Governor and assists in the
2  preparation of the Governor's budget for presentation to the Legislature. (*Id.*)

3  The record shows that DOF abided by its statutory role in reviewing the budget
4  change proposal submitted by CDCR and advising the Governor in the preparation of the
5  Governor's May Revise budget for presentation to the Legislature. CDCR submitted a Mental
6  Health Program Spring 2006 Finance Letter. DOF reviewed the submitted finance letter by
7  analyzing its provided justification as well as the historic record of funding of mental health
8  staffing at CDCR. DOF found CDCR's proposal failed on both criteria.

9  CDCR failed to provide adequate justification for the requested administrative
10  segregation positions. The finance letter did not support CDCR's request with basic data: the
11  duties required, the duties capable of being performed by existing staff, the duties existing staff
12  could not perform, the amount of time required to perform such duties, and the level of staff
13  required to perform such duties. (Dec. Jerue, ¶ 24.) While the same finance letter provided this
14  type of basic analysis of the work activities and time required to implement the Revised Program
15  Guide requirements in the reception centers and mental health outpatient housing units, no such
16  analysis was provided for the administrative segregation units. (*Id.* at ¶ 25.) During the
17  interactive process, DOF notified CDCR of the paucity of justification for the administrative
18  segregation positions and yet received no further information. (*Id.* at ¶ 16.) As a result, DOF
19  was able to recommend to the Governor, and which he included in his budget, the positions
20  requested by CDCR for the reception centers and mental health outpatient housing units. DOF
21  could not, however, make such a recommendation for the administrative segregation units.

22  CDCR also failed to explain the present use of previously allocated administrative
23  segregation unit positions. CDCR had already requested similar positions for the same needs,
24  and those 320.4 positions had been approved by the Legislature for fiscal year 2000-01. (Dec.
25  Jerue, ¶¶ 19, 22; Exh.2: Final Budget Proposal, *Modifications Necessary to Meet July 26, 1999*
26  *Court Order in Coleman v. Davis*.) In addition to the 320.4 positions available beginning in
27  fiscal year 2000-01, DOF staff found another 44.0 administrative segregation positions were
28  added by the prevalence and mix process over the following six fiscal years, for a total resource

8

1  level of at least 364.4 positions. (Dec. Jerue, ¶¶ 19, 21, 22; Exh. 5, Chart, *Summary of Existing*
2  *Clinical and Custody Staffing for Ad Seg, SHU, and Condemned Units, As Approved in Budget*
3  *Acts Since Fiscal Year 2000-01*.)

4           DOF is vested with the statutory responsibility for independently assessing the
5  adequacy of budget proposals to ensure the Governor has the most accurate analysis available
6  when presenting his or her proposed budget the Legislature. A budget change proposal adopted
7  by the Governor for inclusion in his proposed budget to the Legislature will more likely obtain
8  approval and funding if it is adequately supported by, at the very least, a proper explanation of
9  the indicated need. (Dec. Jerue, ¶ 8.) CDCR did not provide a proper explanation of the need for
10 additional administrative segregation positions in fiscal year 2006-07, particularly against the
11 backdrop of 364.4 previously allocated administrative segregation positions that CDCR was
12 unable to account for in terms of present use. (*Id.*, at ¶¶ 16, 24.) DOF properly recommended to
13 the Governor that the administrative segregation units not be included in the proposed budget and
14 DOF properly supported CDCR's request for funds to perform a workload study to account for
15 these positions. (Dec. Jerue, ¶ 29.)

16          Defendants respectfully request Special Master Keating's report be modified to
17 reflect the facts provided by DOF on its review and recommendations concerning CDCR's
18 submitted request for administrative segregation positions.

19    **C.    NEITHER DOF NOR ITS DIRECTOR CAN BE JOINED IN THIS ACTION.**

20           **1.    Any Joinder Of DOF Or Of Director Michael Genest Will Contravene
                     The Eleventh Amendment.**
21

22          The order does not specify whether the Department of Finance would be named or
23 whether its director, Michael Genest, would be named in his official capacity. A state and a state
24 agency is not a "person" for the purposes of § 1983 jurisdiction. *Will v. Michigan Dep't of State*
25 *Police*, 491 U.S. 58 (1989) (state court § 1983 action against state barred); *Hafer v. Melo*, 502
26 U.S. 21 (1991) (federal court § 1983 action barred). Therefore, DOF cannot be not properly
27 named as a defendant in this action.

28          To the extent this Court's order inquired as to the propriety of joining Director

RESPONSE TO SM REPORT BCP

9

1  Michael Genest as a defendant, Defendants assert this Court lacks jurisdiction to join Director
2  Genest. Granted, state officials may be sued under § 1983 for injunctive relief because "official
3  capacity actions for prospective relief are not treated as actions against the State." *Will, supra,* at
4  71 n 10. A state official may not be joined, however, in a pending § 1983 action in order to
5  compel the official to perform a discretionary task. *Milli Lacs Band of Chippewa Indians v. State*
6  *of Minnesota,* 853 F. Supp. 1118, 1128 (1994) citing *Ex Parte Young,* 209 U.S. 123 (1908) and
7  *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-102 (1984). Director Michael
8  Genest is an executive official vested with discretionary authority in the preparation of the
9  Governor's budget. This Court does not have jurisdiction to compel Director Genest to advise
10 the Governor in any particular way on any particular item of the budget. As joinder of Director
11 Genest will result in this Court essentially abrogating Director Genest's independent and
12 discretionary authority over budgetary decisions, the Eleventh Amendment bars joinder of him.

13         **2.      The Joinder Of DOF Will Provide This Court With No Additional
                      Remedies Or Avenues Of Relief.**
14

15         DOF is not given plenary authority over all state budget activities. DOF advises
16 the Governor on the budget. Cal. Gov't Code § 13320; Dec. Jerue, ¶ 4. The Governor, who is
17 already a defendant in this case, presents the proposed budget to the Legislature. Cal. Const. Art.
18 IV. The legislative power of the State, particularly to appropriate monies to state agencies, is
19 vested in the California Legislature which consists of the Senate and Assembly. Cal. Const. Art.
20 IV, §1. Naming DOF in this lawsuit will not change its statutory place within the budgeting
21 scheme of the State of California.

22         Further, DOF should not be named because DOF reports directly to and serves the
23 Governor in all matters related to the state's budget affairs. The Governor is a named defendant
24 in this matter and is responsible for compliance with this Court's orders. This Court has ordered
25 Defendants to implement the Revised Program Guide. This Court did not mandate any particular
26 amount of staffing to implement the Revised Program Guide, but allowed CDCR in particular
27 and the Defendants in general discretion to make that determination. Following the usual
28 processes for ensuring fiscal prudence, DOF recommended and the Governor presented a budget

RESPONSE TO SM REPORT BCP

1    that contained every position sought by CDCR except those that were not properly justified,

2    those in administrative segregation. Allowing such discretion in the management of the state

3    budget abides by the maxim of keeping injunctive relief "narrowly drawn" and "the least

4    intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626

5    (a)(1)(A).

6           To the extent this Court is concerned with DOF's recommendation not to fund the

7    requested administrative segregation units, Defendants respectfully request this Court consider

8    DOF's concerns about CDCR's failure to account for previously allocated administrative

9    segregation resources and order that an audit be undertaken with the funded workload study to

10   determine the present location and use of those positions.

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27

28

RESPONSE TO SM REPORT BCP

11

**IV.**

**CONCLUSION**

Defendants request this Court direct Special Master Keating to modify his factual findings in accord with those submitted by DOF and to modify his recommendations to (1) a eliminate the recommended funding of positions in this fiscal year of 2006-07 and (2) require a baseline assessment of the mental health positions allocated to CDCR be incorporated within any workload study.

Dated: July 11, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

ROCHELLE C. EAST
Supervising Deputy Attorney General

LISA A. TILLMAN
Deputy Attorney General

Attorneys for Defendants

Coleman brief.wpd

RESPONSE TO SM REPORT BCP

12

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Ralph Coleman, et al. v. Arnold Schwarzenegger, et al.**

Court:   **U.S. District Court, Eastern District of California**

Case No.:   **2:90-CV-0520-LKK-JFM-P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On ___July 11, 2006___, I served the attached **DEFENDANTS' RESPONSE TO SPECIAL MASTER'S REPORT ON DEFENDANTS' BUDGET REQUESTS FOR STAFFING TO IMPLEMENT THE REVISED PROGRAM GUIDE AND TO JOINDER OF DEPARTMENT OF FINANCE, SEPARATE OF OBJECTIONS, DECLARATION OF JERUE** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Post Office Box 944255, Sacramento, California 94244-2550, addressed as follows:

**The Honorable Lawrence K. Karlton**
**c/o CLERK'S OFFICE**
**United States District Court**
**Eastern District of California**
**501 I Street, Room 4-200**
**Sacramento, CA 95814**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 11, 2006, at Sacramento, California.

| | |
|---|---|
| M. McIntosh | m. mcintosh |
| Declarant | Signature |

30139116.wpd