# EXHIBIT A

PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY–
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

      Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

      Defendants

No.: Civ S 90-0520 LKK-JFM

**ORDER REGARDING DEFENDANTS'
REVISED PROGRAM GUIDE**

- 1 -

1    The Special Master's Report and Recommendations on Defendants' Revised Program

2    Guide was filed on February 3, 2006. Defendants filed the January 2006 Revised Program

3    Guide on February 3, 2006. Defendants filed limited objections to the Special Master's Report

4    on February 14, 2006, concerning issues of classification and disability discrimination.

5    Plaintiffs filed objections on February 17, 2006, listing and clarifying their remaining

6    objections to the January 2006 Revised Program Guide. The court has reviewed the Special

7    Master's Report and the objections to the Report filed by the parties.

8    Good cause appearing,

9    IT IS HEREBY ORDERED THAT:

10    1.    The court hereby approves the undisputed provisions of the January 2006

11    Revised Program Guide, and orders defendants to immediately implement all such provisions.

12    2.    The following disputed sections of the Revised Program Guide would, if

13    implemented, reduce the amount of care currently mandated by the 1997 Program Guides. As

14    to these disputed sections, the requirements of the 1997 Program Guide shall continue to apply

15    until plaintiffs' objections have been heard and decided:

16        a.    On page 12-7-4 of the Revised Program Guide, the defendants' proposed

17        reduction in daily psych tech rounding for non-MHSDS inmates in administrative

18        segregation to once a week rounds. The 1997 Program Guide requirement of daily

19        rounds shall continue to apply.

20        b.    On page 12-7-6 of the Revised Program Guide, the defendants' proposed

21        reduction in individual clinical case management contacts for 3CMS inmates housed in

22        administrative segregation to every other week clinical contacts. The 1997 Program

23        Guides requirement of weekly clinical contacts shall continue to apply.

24    3.    Plaintiffs have filed and maintained objections to various additional provisions in

25    the Revised Program Guides. Defendants are hereby ordered to immediately implement these

26    sections of the Revised Program Guide, even though they remain in dispute. These remaining

27    disputes are set forth in plaintiffs' objections. In addition, plaintiffs request that certain

28    additional requirements be added to the Revised Program Guide. Good cause appearing, this

1  matter is set for status conference on April 26, 2006 at 3:00 p.m. in Courtroom # 4 to

2  determine an appropriate procedure for hearing plaintiffs' objections and scheduling these

3  remaining issues for resolution.

4        4.    The special master and the parties are directed to finalize the provisions of the

5  Program Guide related to the review of psychiatrist qualifications, staffing ratios, CPR and

6  video monitoring within 30 days from the date of this order.  The parties are also directed to

7  report to the court concerning the resolution of those matters within 45 days from the date of

8  this order.

9  DATED:  March 2, 2006.

10                                             /s/Lawrence K. Karlton
                                               Lawrence K. Karlton
11                                             Senior Judge
                                               United States District Court
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1  PRISON LAW OFFICE
   DONALD SPECTER Bar No.: 83925
2  STEVEN FAMA Bar No.: 99641
   KEITH WATTLEY Bar No.: 203366
3  General Delivery
   San Quentin, California  94964
4  Telephone: (415) 457-9144

5  ROSEN, BIEN & ASARO, LLP
   MICHAEL W. BIEN Bar No.: 096891
6  JANE E. KAHN Bar No.: 112239
   THOMAS NOLAN Bar No.: 169692
7  155 Montgomery Street, 8th Floor
   San Francisco, California  94104
8  Telephone: (415) 433-6830

9  THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
10 CLAUDIA CENTER Bar No.: 158255
   LEWIS BOSSING Bar No.: 227402
11 600 Harrison Street, Suite 120
   San Francisco, CA  94107
12 Telephone:  (415) 864-8848

   BINGHAM, McCUTCHEN, LLP
   WARREN E. GEORGE Bar No.: 53588
   Three Embarcadero Center
   San Francisco, California  94111
   Telephone: (415) 393-2000

   HELLER, EHRMAN, WHITE &
   McAULIFFE
   RICHARD L. GOFF Bar No.: 36377
   701 Fifth Avenue
   Seattle, Washington  98104
   Telephone: (206) 447-0900

14 Attorneys for Plaintiffs

15                UNITED STATES DISTRICT COURT

16              EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18  RALPH COLEMAN, | No.:  Civ S 90-0520 LKK-JFM |
| 19         Plaintiffs, | **PLAINTIFFS' DISCOVERY CONFERENCE STATEMENT PURSUANT TO FRCP 26F** |
| 20  vs. | |
| 21  ARNOLD SCHWARZENEGGER, et al., | Date:         June 13, 2006 |
| 22         Defendants | Time:         11:00 a.m. |
| | Courtroom:  25 |
| 23 | Judge:        Honorable John F. Moulds |

**INTRODUCTION**

In January 1997, almost 13 months after the appointment of the Special Master, the Court directed the Special Master to work with the parties to complete and submit for approval plans, policies and protocols for meeting the requirements of the remedial order. This process took approximately five months and resulted in the California Department of Corrections Mental Health Services Delivery System Program Guides. These Program Guides were a collection of the standards for the delivery of mental health services within the CDCR's various levels of mental health care and within the different custody settings. The Court provisionally approved the submitted Program Guides on June 24, 1997. Special Master's Report and Recommendations on Defendants' Revised Program Guide, filed 2/3/06 at 2. Plaintiffs reserved objections to many issues.

Over the years since the provisional approval of the Program Guides, aspects of the plans, policies and protocols have been amended by the Court or by defendants. In 2002, the parties and Special Master agreed to revise and update the Program Guides. For the past three years the parties, the Special Master and his experts and monitors have met to review, discuss and negotiate provisions of the Program Guides. The parties, with the assistance of the Special Master, have reached agreement concerning most of defendants' extensive revisions to the 1997 Program Guides. See 1/3/06 Special Master's Report and Recommendations on Defendants' Revised Program Guides; See Plaintiffs' Objections to the Special Master's Report and Recommendations on Defendants' Revised Program Guide and Declaration of Michael W. Bien in Support of Objections, filed 2/17/06; 3/3/06 Order at ¶ 1 (Ordering defendants to implement undisputed portions of the revised Program Guides).

The parties have settled or made progress in resolving additional disputed program guide issues since the issuance of the March 3, 2006 Order directing defendants to implement the undisputed portions of the revised Program Guides. The scope of the program guide disputes have thus been reduced by resolution of the following issues:

1    **Use of Video-Monitoring as Sole Method of Observation on Suicide Watch** –

2    Defendants have agreed to suspend the practice of video-monitoring as the sole method of

3    observation on suicide watch and the parties have agreed to new Program Guide language that

4    reflects the new suicide watch procedures.  5/4/06 Program Guide Revision at 12-10-16 and

5    12-10-17.

6    **Correctional Officer's Duty to Provide CPR to Inmates** – The parties have agreed to

7    Program Guide language on this issue.  5/4/06 Program Guide Revision at 12-10-21.

8    **Standard for Custody Checks on Suicide Precautions** – Defendants have agreed to

9    change the standard for custody checks for inmates on suicide precautions from an hourly

10   check to staggered checks not to exceed fifteen minutes in accordance with national

11   correctional health care standards.  5/4/06 Program Guide Revision at 12-10-15.

12   In addition, the parties have made significant progress with respect to the following

13   issues:

14   **Psychiatrist Qualifications** – The parties have reached an agreement with respect to

15   the standards for new hires.  5/4/06 Program Guide Revision at 12-1-8.  The parties are

16   working on a stipulation that would address a timeframe for a review of the qualifications for

17   existing staff who do not meet the new requirements.  Plaintiffs have not yet reviewed or

18   agreed to the specific program being developed by defendants to review the qualifications of

19   existing psychiatrists who do not meet the new hiring standard.

20   **Staffing Ratios** – Plaintiffs have objected to defendants' proposed staffing ratios, which

21   are largely unchanged from the staffing ratios tentatively approved by the Court in 1999,

22   despite subsequent recommendations from the Special Master and Court orders requiring

23   additional staffing.  Defendants have stated that they will undertake a new workload study to

24   assess the adequacy of the proposed staffing ratios.  Attachment A to Program Guides (see 12-

25   1-8).  Defendants have yet to commit to a schedule for the completion of the workload study or

26   to describe the scope of the study.

27

28

1    **Non-Cage Treatment Option for PSU and EOP Administrative Segregation**

2    **Inmates** – The defendants have indicated a willingness to consider plaintiffs' proposal that

3    mental health treatment outside of cages be available for appropriate patients housed in the

4    PSU program and the EOP administrative segregation units.  Program Guides at 12-7-8 and

5    12-9-8 and 12-9-9.

6         In addition, defendants are still considering modifications to existing policies in the

7    following areas:

8    **Classification and Discrimination Issues** – Defendants have indicated a willingness to

9    change some of their policies that discriminate against mentally ill inmates and also result in

10    the plaintiff class members having higher classification points than similar prisoners without

11    mental illness.  For example, defendants report a willingness to reconsider their policy

12    concerning EOP patients earning point reductions for program participation while housed in

13    EOP programs, similar to the point reductions for work, educational and vocational

14    assignments.  We have also been informed that defendants are considering the creation of EOP

15    programs in Level I and Level II housing.  Finally, defendants have not indicated their final

16    position on whether they will end their discriminatory practice of adding four points to the

17    classification score of each prisoner with a mental illness.  See generally Program Guide

18    Chapter 2 (reception center processing) and Chapter 4 (EOP program).

19         As a result of the continued negotiations, the scope of the remaining Program Guide

20    dispute resolution process (and necessary discovery) has already been substantially reduced.

21    As indicated, additional agreements appear possible, resulting in even fewer issues in dispute.

22    The parties and the Special Master should take the time to reexamine the remaining disputes

23    and determine whether, in fact, additional agreements may be possible.

24         On May 19, 2006, the parties appeared before Judge Karlton in a status conference to

25    discuss the process for resolving the disputed Program Guide issues.  After the conference with

26    the parties, Judge Karlton set the matter for a discovery conference on June 13, 2006 pursuant

27    to Rule 26(f) before the Honorable John F. Moulds.  The parties were directed to file Status

28    Conference Statements no later than June 2, 2006.  Order filed 5/25/06 ¶ 1.  Despite several

1    attempts to resolve some threshold discovery issues, the parties have been unable to reach an

2    agreement over the nature or scope of discovery for the disputed portions of the Program

3    Guide revisions.

**JUDGE KARLTON'S ORDER SETS FORTH
A PROCEDURE FOR ACTIVATING DISCOVERY
AS PROGRAM GUIDE DISPUTES BECOME RIPE**

6        Judge Karlton set forth a basic procedure for activating resolution of the disputed

7    Program Guide issues as the parties determine that an issue is ripe for resolution by the Court.

8    5/25/06 Order ¶ 3.  Plaintiffs propose the following discovery process with the

9    acknowledgement that Rule 26 envisions that the process might be modified depending on the

10   issue to be litigated before the Court:

11       1.      A party files a formal objection raising the issue(s) for dispute resolution by

12               the Court;

13       2.      As appropriate, the party shall designate with the objection an expert witness

14               to provide evidence relevant to resolution of the objection;

15       3.      The Special Master and the opposing party shall have a period of fifteen days

16               after the filing of a formal objection to designate, as appropriate, one expert

17               witness each;

18       4.      The parties and the Special Master shall file 26(a) Initial Disclosures on the

19               issue thirty days after plaintiffs file the formal objection.  The Special

20               Master's Initial Disclosures will provide the foundation for his

21               recommendation on the issue;

22       5.      15 days after the Initial Disclosures, any party can make requests for

23               additional discovery, if any;

24       6.      The parties will meet and confer if discovery is disputed.  If the parties are

25               unable to resolve their dispute, they will bring the issue before this Court with

26               normal discovery motions.

27

28

7.    The parties and the Special Master appear to be in agreement that the parties shall conduct depositions of any experts so designated. Depositions of experts would be scheduled and taken;

**A.    Timing, Form and Requirements for Disclosures under Rule 26(a)**

At this time in the Program Guide Dispute Process, Initial Disclosures pursuant to Rule 26(a) would be premature and wasteful because some of the disputed issues may settle. The Court granted the parties additional time in which to negotiate the disputed portions of the Revised Program Guide. 5/25/0 Order ¶ 2.

Plaintiffs propose as part of the discovery process developed with the Magistrate Judge that the parties and the Special Master should be required to file 26(a) Initial Disclosures thirty days after the filing of a formal objection by a party raising a Program Guide issue for dispute resolution by the Court.

**B.    Issues to be Resolved Now**

Plaintiffs request that the Court set a briefing schedule and hearing date to resolve two issues that should be addressed in the next few months.

**1.    Plaintiffs' Right to Discovery**

Defendants have taken the absolute position that plaintiffs have no right to discovery whatsoever in the dispute resolution process before the Court. During the meet and confer with defendants, plaintiffs have made a number of proposals to reduce the burden of discovery in connect with the program guide hearings, including for example, the selection of representative institutions on certain issues, or agreeing to a statement of stipulated facts upon which an issue could be presented for decision. Defendants, however, have restated their position that no discovery is appropriate without providing any legal grounds for their position or making any proposals for alternatives to plaintiffs' discovery plan.

It is necessary for this Court to establish the fundamental right of plaintiffs' counsel to conduct reasonable and focused discovery. See Federal Rule of Civil Procedure 26 (b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the

1    claim or defense of any matter relevant to the subject matter involved in the action.").

2    Plaintiffs request that the Court establish a schedule for briefing and a hearing on this issue.

3    **2.    Plaintiffs' Right to Tour Binders and Other Documents Provided to Special Master on tours**

4

5    Defendants have refused to provide plaintiffs with copies of the documents, including

6    the tour binders, prepared for and provided to the court monitors when they tour the prisons

7    every monitoring round.  These documents provide the evidentiary foundation for the Special

8    Master's Progress Reports and the recommendations to the Court.  The court monitors visit

9    approximately sixty-six prisons every year.  Plaintiffs' counsel accompanies the court monitors

10   on seven of those tours a year and is provided with the tour binders and other monitoring

11   documents during those tours.  The binders and documents provide invaluable information to

12   plaintiffs' counsel about the mental health programs, staffing, suicide prevention practices, use

13   of force and other issues of grave concern to the plaintiff class.

14   In 1998 the parties entered into a stipulation that merged the *Gates* case into the

15   *Coleman* case. See 12/24/98 Stipulation and Order. As part of the stipulation, the defendants

16   and the Special Master agreed to provide plaintiffs' counsel with copies of any documents

17   provided to the Special Master by defendants.  *Id* at ¶ 9.  The Stipulation was entered as an

18   order by Judge Karlton on July 23, 1999.

19   a.    Benefits outweigh the Burden

20   The current monitoring process by the Special Master involves monitoring visits to most

21   of the thirty-three prisons at least twice a year.  Some of the prisons are visited more

22   frequently.  At the conclusion of a monitoring round (every six months), the Special Master

23   files an extensive report with the Court.  Given the breadth of the report, it is often filed

24   months after the tours.  For example, the Fifteenth Monitoring Report of the Special Master on

25   the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols, filed

26   January 15, 2006, reported on monitoring tours commencing in August 2004.  As a result,

27   plaintiffs must wait many months, if not longer, before learning specific information about the

28   mental health care provided in the prisons where the plaintiff class is housed.  Requiring

1   defendants to create an additional tour binder for plaintiffs' counsel is an insignificant burden

2   when weighed against the important information contained within the binders about

3   defendants' policies and practices and individual conditions and treatment of plaintiff class

4   members. These tour binders are already prepared for the *Coleman* monitors and are provided

5   to plaintiffs' counsel on the tours that they are permitted to attend. The production of these

6   monitoring materials for all of the tours is not overly burdensome.

7       Plaintiffs request that the Court establish a briefing schedule on the issue of plaintiffs'

8   right to access to the tour binder documents and set the matter for hearing.

9       Finally, plaintiffs believe that the parties may resolve several other Program Guide

10   disputes in the next few months and request that the Court schedule a status conference for

11   September 2006 at which time the parties can report on the status of unresolved Program

12   Guide issues. The parties at that time can designate the initial issues for dispute resolution.

13       Plaintiffs look forward to a constructive discussion of these issues at the June 13, 2006

14   discovery conference.

15

16   Dated: June 1, 2006                Respectfully submitted,

17

18

19                            Jane E. Kahn
                                 Rosen, Bien & Asaro, LLP

20                                 Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

# EXHIBIT C

1   BILL LOCKYER
    Attorney General of the State of California
2   JAMES M. HUMES
    Chief Assistant Attorney General
3   FRANCES T. GRUNDER
    Senior Assistant Attorney General
4   ROCHELLE C. EAST
    Supervising Deputy Attorney General
5   LISA A. TILLMAN, State Bar No. 126424
    Deputy Attorney General
6    1300 I Street, Suite 125
    P.O. Box 944255
7    Sacramento, CA 94244-2550
    Telephone: (916) 327-7872
8    Fax: (916) 324-5205

9   Attorneys for Defendants
    CF1997CS0003

10

11

12          IN THE UNITED STATES DISTRICT COURT

          FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14

15   **RALPH COLEMAN, et al.,**         CASE NO. CIV S-90-0520 LKK JFM P

16               Plaintiffs,

17       v.               **DEFENDANTS' DISCOVERY CONFERENCE STATEMENT**

18   **ARNOLD SCHWARZENEGGER, et al.,**

19               Defendants.    Hearing:    June 13, 2006
                        Time:      11:00 a.m.

20                             Courtroom:  25
                            Judge:    The Honorable John F. Moulds

21                    **INTRODUCTION**

22       This action arose many years ago, with judgment finally rendered in 1995. In the

23   ensuing years, the Special Master and his team of experts have monitored compliance with the

24   Court's orders. The monitoring has consisted of in-person tours of each and every adult

25   correctional facility, preparation and negotiation of the Program Guide (a set of policies and

26   procedures for mental health care), and oversight of internal policies and decisions.

27       At this juncture, Defendants endeavor to resolve outstanding Program Guide issues in

28   an expeditious manner in order to facilitate closure of the case. The crux of providing a

1  constitutionally-adequate mental health care delivery system involves an adequate set of policies
2  and procedures for such care.  Defendants respectfully submit to this Court their understanding
3  of the discovery issues surrounding the Revised Program Guide.

**II.**

**STATUS REPORT ON ISSUES STATED IN COURT'S ORDER**

6       On March 2, 2006, Judge Karlton requested a report on certain Program Guide issues
7  as follows:

**1. Policy on Cardiopulmonary Resuscitation.**

9       The parties have agreed to the language in the Revised Program Guide providing the
10  court-mandated policy for the administration of cardiopulmonary resuscitation to inmates.

**2. Policy on Board Eligible Status For Psychiatrists.**

12       The parties have agreed to the language in the Revised Program Guide providing that
13  all newly hired psychiatrists must have board eligible status to be employed by Defendants.  The
14  parties are presently preparing a stipulation concerning (1) the language to be used in the
15  Revised Program Guide, (2) the June 1, 2006 deadline for submitting the plan to evaluate those
16  psychiatrists who are not board eligible, and (3) the time frame for evaluation of those
17  psychiatrists who are not board eligible.  A plan has been submitted to Plaintiffs' counsel and
18  Special Master Keating regarding the evaluation of psychiatrists who are not board eligible.

**3. Policy on Videomonitoring of Patients on Suicide Watch.**

20       As stated in the previous status conference statement, the parties have agreed to the
21  language in the Revised Program Guide stating that effective April 10 there is a  moratorium on
22  the use of videomonitoring as the sole means of providing suicide watch.

23       The parties have agreed upon a 45-day period for notice in the event of any re-
24  institution of video monitoring as a sole means for performing suicide watch.  The parties
25  have filed a stipulation on this policy.

**4. Staffing Ratios.**

27       The parties have met and conferred about Defendants proffered staffing ratios in
28  administrative segregation units, Enhanced Outpatient Programs (EOP), and CCCMS.

DISCOVERY CONFERENCE STATEMENT

1   Defendants have indicated that these ratios will be reviewed pending a workload study.  A

2   contract for the study is necessary.  Once the contract is completed, Defendants will provide

3   Plaintiffs with the completion date of that study.

4                                              **III.**

5              **DEFENDANTS' RESPONSE TO OTHER ISSUES STATED**

6                        **IN PLAINTIFFS' STATEMENT**

7         Defendants object to Plaintiffs' introduction of issues outside the court order of March

8   2, 2006 into this hearing.  Without waiving said objection, Defendants provide a limited

9   response to those issues as follows:

10      **1.    Non-Cage Treatment Option for PSU and EOP Administrative Segregation**

11              **Inmates**

12              Defendants have agreed to consider this concept.

13      **2.    Classification Issues**

14              Special Master Keating's report on the Program Guide identified disputed

15  classification issues, including the elimination of the four points added to the classification score

16  of inmates entering into CDCR with a history of mental illness, the addition of a requirement for

17  the housing of EOP and CCCMS inmates in security levels commensurate with their

18  classification  scores, and an end to exclusion of EOP and CCCMS from participation in the

19  programs and services available to the general population.  (Report at p. 8.)

20              In their responses to the Draft Report on the Revised Program Guide, defendants

21  agreed to the recommendation that EOP inmates receive annual point reductions in their

22  classification scores for participation in their EOP-related programs. (Def. Response to Draft

23  Report at p. 3.)  Defendants are presently working on the implementation of this concept.

24              Defendants assert this Court lacks jurisdiction in this case to hear all the classification

25  issues listed in Special Master Keating's Final Report on the Revised Program Guide.  Plaintiffs'

26  counsel may argue the listed classification issues fall within the parameters of a claim under the

27  Americans with Disabilities Act or the Rehabilitation Act.  However, judgment in this action was

28  based on the  Eighth Amendment.  Indeed, Plaintiffs chose to voluntarily dismiss their

DISCOVERY CONFERENCE STATEMENT

                                    3

1  Rehabilitation Act claim prior to entry of judgment in this matter.  Therefore, this Court does not

2  have jurisdiction to determine the classification issues listed in the Final Report.

3        Further, the legal issues contained in each of the listed classification issues will require

4  the development and determination of specific, individual claims and defenses under the

5  Americans with Disabilities Act.  Such claims and defenses are not properly heard by this Court

6  in the course of an evidentiary hearing on the Program Guide.

7        To the extent Plaintiffs' counsel seeks discovery related to alleged discrimination

8  issues in this case, Defendants direct this Court's attention to other cases pending before this

9  Court under the Americans with Disabilities Act brought by Plaintiffs' counsel and against

10  Defendant. (*See, Hecker v. California Department of Corrections and Rehabilitation*, E.D. Case

11  No. S-05-2441, *Klemaske v.California Department of Corrections and Rehabilitation*, E.D. Case

12  No. S-04-1750, *Wilson v. Woodford*, E.D. Cal. Case No. S-05-0876.)  Defendants reiterate that

13  the *Coleman* action is brought under the Eighth Amendment and so no discovery of issues under

14  the Americans with Disabilities Act should be permitted.  Before any discovery of such claims

15  and defenses is permitted, Defendants request this Court permit briefing on the apparent

16  dovetailing of these issues in *Coleman* with other pending actions filed by Plaintiffs' counsel

17  against the California Department of Corrections and Rehabilitation under the Americans with

18  Disabilities Act.

19  **IV.**

20  **DEFENDANTS' RESPONSE TO PLAINTIFFS' PROCEDURAL ISSUES**

21        Plaintiffs request this Court determine their right to discovery certain issues in the

22  Revised Program Guide and to obtain tour binders.  Defendants hereby provide their response to

23  Plaintiffs' issues.

24      **1.**    **Discovery Requested by Plaintiffs.**

25        Plaintiffs seek the right to discovery, yet their request is untrammeled by any statement

26  of the issues sought to be discovered or the sought means of discovery.  In correspondence,

27  Plaintiffs' counsel has stated the broadly the need to conduct discovery over a period of several

28  months, with tours of institutions by their experts and depositions of Defendants' staff.

DISCOVERY CONFERENCE STATEMENT

4

1   Defendants cannot agree at this time to such broad discovery, particularly after a decade of

2   monitoring with production and tours already provided to Plaintiffs' counsels..

3          Indeed, Defendants' counsel has informed Plaintiff counsel that no discovery is

4   necessary given the ongoing years of tours to the facilities and the ongoing production of internal

5   documents in response to Special Master Keating's requests and, quite often, Plaintiffs' requests.

6   Indeed, the post-trial status of this case makes any sought discovery untimely under the Federal

7   Rules of Civil Procedure, Rules 26 and 30.  Such discovery is after the close of discovery under

8   Rule 26 and in the absence of a court order permitting discovery after entry of the verdict in this

9   matter.  Indeed, the discovery phase of *Coleman* ended years ago with the completion of the trial

10  and entry of judgment.  The discovery statutes do not provide for discovery during the remedial

11  phase of a class action suit.  The Order of Reference in this case does not permit discovery by

12  Plaintiffs.

13         Defendants urge this Court to deny Plaintiffs' broad request to conduct discovery into

14  Program Guide issues.  The Program Guide is supposed to enable closure of this case, not reopen

15  issues for discovery and litigation.  Indeed, the Order of Reference specified the responsibility of

16  the Special Master is to work with Defendants.  Defendants have followed the counsel of

17  Special Master Keating and his experts in writing the Revised Program Guide.  Any discovery

18  and litigation of these outstanding Program Guide issues undermines these years of work in

19  negotiating the Program Guide and brings the parties back to the starting point of this case.

20  Defendants respectfully request this Court simply approve the Revised Program Guide and let

21  Defendants move to the next and hopefully final steps of a compliant mental health system.  In

22  the alternative, Defendants respectfully request to brief Plaintiffs' counsel's request for

23  discovery.

24         **2.   Plaintiffs' Request for Tour Binders.**

25         Special Master Keating has monitored compliance with court orders by touring,

26  personally and with his team, each and every adult correctional facility often once, if not twice, a

27  year.  Plaintiffs' counsels have often been a participant in these tours, with the "attorney tours"

28  or tours involving for Plaintiffs' counsels'  participation scheduled to accommodate Plaintiffs'

DISCOVERY CONFERENCE STATEMENT

1  counsels' vacations and with the number of attorney tours negotiated at the start of every tour

2  cycle.  The tours begin with a review of binders of statistical information prepared by the

3  institution and end with an informal teleconference conveying the Special Master's experts'

4  findings to Plaintiffs' counsels, institutional staff, and defense counsels.  The tours result in

5  monitoring reports prepared by Special Master Keating, with recommendations for court orders.

6  The parties have the opportunity to object and have, indeed, objected to the Special Master's

7  findings and recommendations before court orders issue.

8         Defendants are now in the seventeenth round of tours.  Plaintiffs' counsel now seek the

9  tour binders for those tours that they are not invited to attend.  Defendants state that these

10  materials are produced to simply facilitate the Special Master's tours (and are produced to

11  Plaintiffs' counsel when on those tours to also enable their expeditious participation).  The

12  production of tour binders to plaintiffs' counsel before, during or after non-attorney tours will be

13  unduly burdensome to Defendants.  The materials will become litigation documents for use by

14  Plaintiffs' counsel in bringing or opposing motions, and so will have to be reviewed by in-house

15  and outside counsel before production.  The fact that the tours do not involve attorneys should be

16  read an indicator that Plaintiffs' counsel do not have a right to these materials.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

DISCOVERY CONFERENCE STATEMENT

1                                        **CONCLUSION**

2         Defendants will continue to discuss outstanding issues with Plaintiffs' counsel in the

3 hope of obtaining informal resolution of those issues.  Defendants are willing to

4 brief key issues, such as Plaintiffs' request for discovery and for production of the tour binders.

5         Dated: June 2, 2006

6                       Respectfully submitted,

7                       BILL LOCKYER
                      Attorney General of the State of California

8                       JAMES M. HUMES
                      Chief Assistant Attorney General

9                       FRANCES T. GRUNDER

10                     Senior Assistant Attorney General

11                     ROCHELLE C. EAST
                    Supervising Deputy Attorney General

12

13                     */s/ Lisa Tillman*

14                     LISA A. TILLMAN
                    Deputy Attorney General

15                     Attorneys for Defendants

16

17

30124948.wpd

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Coleman v. Schwarzenegger**

Case No.:          **CIV S-90-0520 LKK JFM P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On June 2, 2006, I served the attached Defendants' Discovery Conference Statement by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Pete Cockeroft, H-86887
California State Prison, Sacramento
FA2-205 - H86887
P.O. Box 290066
Represa, CA 95671-0066

Kimberly S. Davenport
California Medical Association
221 Main Street
San Francisco CA 94105

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 2, 2006, at Sacramento, California.

| A Buckley | */s/ A Buckley* |
|---|---|
| Declarant | Signature |

30125012.wpd

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

RALPH COLEMAN, et al.,

     Plaintiff,

Vs.                  CASE NO. CIV. S-90-0520 LKK

ARNOLD SCHWARZENEGGER,
et al.,

     Defendants.

_____/

---oOo---

REPORTER'S TRANSCRIPT

WEDNESDAY, APRIL 26TH, 2006

RE:  EVIDENTIARY HEARING RE MOTION FOR COURT ORDER

---oOo---

Reported by:          CATHERINE E.F. BODENE,
                    CSR. No. 6926

```
 1                          APPEARANCES

 2                           ---oOo---

 3

 4   FOR THE PLAINTIFF:

 5           ROSEN, BIEN & ASARO, LLP
             155 MONTGOMERY STREET, EIGHTH FLOOR
 6           SAN FRANCISCO, CALIFORNIA  94104

 7           BY:  MICHAEL BIEN,
                  ATTORNEY AT LAW
 8

 9

10

11   FOR THE DEFENDANTS:

12            STATE OF CALIFORNIA, DEPT. OF JUSTICE
              OFFICE OF THE ATTORNEY GENERAL
13            1300 I STREET
              SACRAMENTO, CALIFORNIA  95814
14
              BY:  LISA TILLMAN,
15                 DEPUTY ATTORNEY GENERAL

16

17

18

19                           ---oOo---

20

21

22

23

24

25
```

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

1

SACRAMENTO, CALIFORNIA

WEDNESDAY, APRIL 26TH, 2006 - 2:00 PM

---o0o---

THE CLERK:  All rise.  Court is in session.

The Honorable Lawrence K. Karlton is presiding.

THE COURT:  Please, be seated.

Good morning, Ladies and Gentlemen.

May I have counsel approach the podium, state your appearance for the record and indicate whether you will be arguing.

MR. BIEN:  Good afternoon, Your Honor.  Michael Bien on behalf of plaintiffs.

MS. TILLMAN:  Good afternoon, Your Honor.  Lisa Tillman on behalf defendants.

THE COURT:  You are only two lawyers that will be talking this afternoon?

MS. TILLMAN:  Yes, Your Honor.

MR. BIEN:  Yes, Your Honor.

THE COURT:  All those other folks are welcome, but just be quiet.

I do want to talk a little bit about what I think is going on, and then I'm going to hand out some questions to the parties, ask the defendant -- take a recess, ask the defendant to consult with those persons that I've asked to be present, find out who is the appropriate person to answer

2

1    those questions, discuss it with them so that they know what

2    it is we're going to be talking about, and then we'll put

3    them on the stand and try and get the answers that I think

4    are critical.

5        I want to start by making an observation that I am in

6    a sense quite -- Actually, you folks can sit down because I'm

7    about to make a speech.

8        MS. TILLMAN:  Thank you, Your Honor.

9        THE COURT:  I'm happy that the plaintiffs have

10   objected to some of the matters because it gives me an

11   opportunity to have a hearing that I've been thinking I

12   needed for some time.

13       It is not unimportant to the Court that the judgment

14   in this case was entered 11 years ago.  And we are still in a

15   place in which the defendants have been unable to bring the

16   delivery of psychiatric care up to constitutional standards.

17       I don't want to be misunderstood.  I very much

18   understand how much progress has been made, but in a sense --

19   and I don't mean this disrespectfully, though I suspect

20   that's how it's going to sound -- what we've managed to do is

21   crawl our way out of the snake pit.

22       Well, good for us, but that's hardly the standard

23   required by the Constitution.

24       I have profound trust in my Special Master.  I got so

25   lucky, I can hardly believe it.  Nonetheless, it is 11 years,

3

1    and we are not done.  And that is unacceptable.  It is just

2    plain unacceptable.

3         I promised myself I wouldn't lose my temper, and I'm

4    not going to.

5         In a sense, this hearing is to help me understand why

6    we are where we are, and what we can possibly do to bring the

7    State into conformance with the Constitution of the United

8    States.

9         That's what this case is about.  Every defendant in

10   this case is in violation of the law.  That is shocking.

11   That is shocking.

12        And that we go on and talk about building out to

13   19 -- to 2011, or God knows how much beyond that.  There's no

14   sense of urgency.  There's no sense that the defendants are

15   in violation of the law.

16        So that's one purpose in this hearing.

17        Another purpose is engendered by the fact that

18   Judge Henderson has ordered a receivership in Plata.  And we

19   are going to have a joint hearing, as I think you all know,

20   on June the 8th at ten o'clock here in Sacramento.  I offered

21   to go down to San Francisco, but I think Judge Henderson,

22   because we met down there twice, thought it was his turn to

23   come up.  And it's important for me to be in a position when

24   we talk on June the 8th to have some better sense of what's

25   possible.

4

1          And in that regard, one of the purposes of the

2    meeting -- of the hearing will be to coordinate this case

3    with Plata and try and understand how we can achieve

4    appropriate relief for both medical care and psychiatric care

5    in this system.

6          I want to say something to the defendants, that I

7    appreciate how difficult the problem is.  I really do.  And

8    part of the reason, as I perceive it, that you are out of

9    conformance with the Constitution is the extraordinary

10   explosion both in population in the prison system and in the

11   number of folks who need psychiatric care.

12         And there appear to be at least two significant

13   reasons for that.  One is the determination of the people of

14   the State under the Three Strikes Law to imprison many, many

15   more people for much longer periods of time, thus increasing

16   the population in the prisons.  And the second reason, of

17   course, has been the closing of the statewide institutions --

18   mental institutions so that the prisons have become, in

19   effect, mental hospitals.

20         So many of the people who are in prison today, when I

21   was a lawyer, would have been in a mental institution.  And

22   there's an argument that's where they all belong.  But the

23   State made a different judgment and here we are.

24         And I understand the pressures and the difficulties

25   that that imposes upon the defendants.  But, you know, the

5

1    State has made that judgment.  And now the State must pay the

2    piper.

3         I tell the people in Finance who are here, I hope,

4    supposed to be here, the State made a policy judgment.  You

5    have to pay for it.  And it's going to be horrifically

6    expensive.  And if you think this is expensive, wait until

7    you find out what the physical medical costs are going to be.

8         All right.  I've sort of gotten, in a sense, what I

9    had to say about that.

10        I am going to ask the parties, if they will, when

11   they are testifying, and the lawyers as well, to avoid

12   acronyms to extent that you can.  My Special Master doesn't.

13   Very often, I frequently have to stop and say what in

14   goodness name is this.  And now he's taken to writing it out

15   then giving me a bracket so I can go back and find it later

16   on.  But it is not a useful thing, if you can avoid it.

17   Sometimes you can't.

18        What I wish to do today is first of all talk about

19   the Bed Plan, which I think is going to take some time and is

20   going to require the answering of a bunch of questions.  Then

21   the Plaintiffs to Outstanding Objections to the Monitoring

22   Report, and finally we'll send all the rest the folks but the

23   lawyers home, and we'll try and work out a status conference

24   concerning discovery for the upcoming hearing on the program.

25        Let me talk about the good things before we start

1                    REPORTER'S CERTIFICATE

2                         ---o0o---

3

STATE OF CALIFORNIA   )
4 COUNTY OF SACRAMENTO )

5

6

7       I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.
8

9

10            IN WITNESS WHEREOF, I subscribe this
certificate at Sacramento, California on this 14th day of
11 MAY, 2006.

12

13

14                              _____

15                              CATHERINE E.F. BODENE,
                                CSR NO. 6926
16

17

18

19

20

21

22

23

24

25

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                  (916) 446-6360

# EXHIBIT E

1

2

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11              Plaintiffs,              No. CIV S-90-0520 LKK JFM P

12        vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14
                Defendants.              ORDER
15   _____/

16              On March 3, 2006, this court ordered defendants to file, by April 17, 2006, a plan

17   for the provision of acute and intermediate inpatient beds for all seriously mentally ill male and

18   female inmates in the California Department of Corrections and Rehabilitation (CDCR)

19   clinically determined to be in need of those levels of inpatient care, and for the provision of

20   mental health crisis beds for all seriously mentally ill male and female inmates in CDCR within

21   24 hours of a clinical determination that they require that level of care.  (Order filed March 3,

22   2005, at ¶¶ 3, 5.)  The court also set a hearing for April 26, 2006 on the adequacy of the plan.

23              On April 17, 2006, defendants filed a Statewide Mental Health Bed Plan.  On

24   April 21, 2006, plaintiffs filed a series of objections to the plan.  The matter came on for hearing

25   on April 26 and 27, 2006, before the undersigned.  Michael Bien, Esq., appeared as counsel for

26   plaintiffs.  Lisa Tillman, Deputy Attorney General, appeared as counsel for defendants.

                                            1

1    At the start of the hearing, the court provided the parties with a series of questions

2    to be addressed.  Thereafter, the court heard sworn testimony from a number of state officials in

3    response to the questions.  The court has carefully considered that testimony, the plan and its

4    supporting documents, and plaintiffs' objections thereto and their supporting evidence.

5    At issue is the access to necessary and constitutionally adequate levels of care for

6    the most seriously mentally ill inmates in the CDCR, including the availability of sufficient

7    numbers of acute inpatient beds, intermediate inpatient beds, and mental health crisis beds.  In

8    their objections, plaintiffs note that the bed plan submitted to the court in April 2006 was based

9    on population projections that were outdated by the time the plan was filed.  There is no dispute

10   that the population figures on which the April 2006 plan is based are already out of date.[1]  Thus,

11   while the long range plan appears sound in principle, it may require adjustments based on the

12   new population data now available to defendants.  The long range plan will be approved subject

13   to modification based on the new population data.

14   The special master reports, the record reflects, and defendants admit, that the plan

15   presented to the court in no way adequately responds to the severe shortage of intermediate care

16   facility beds and mental health crisis beds that currently exists in the CDCR.  It is undisputed that

17   the shortage is leaving critically mentally ill inmates languishing in horrific conditions without

18   access to immediately necessary mental health care.  In his testimony, Dr. Peter Farber-

19   Szekrenyi, who was appointed to the position of CDCR's Director of Health Care Services on

20   December 1, 2005, repeatedly referred to the shortage as a "crisis," a description entirely

21   supported by the record before this court.  Dr. Farber-Szekrenyi testified that at present there is a

22   shortage of 75 mental health crisis beds and 125 intermediate inpatient beds.  In the latter

23   /////

24

25   [1]  In addition, defendants do not dispute that the methodology used to project future need
     for mental health care services, developed in 2002, also needs to be updated.  Douglas
     McKeever, Project Director for the Mental Health Care Services Division of CDCR, testified that
26   defendants have entered into a contract to update the methodology.

2

1    category, the most serious shortfall is in beds for inmates who have a Level IV security

2    classification.

3        Over the course of the hearing, and in consultation with the special master, several

4    options emerged that are immediately available to help address both aspects of the crisis.  One

5    requires a short discussion; all will be made an order of this court.

6        At present, there is a unit at California Men's Colony (CMC) presently being used

7    as an outpatient housing unit.  Until approximately one year ago, this unit was a locked

8    observation unit (LOU) and provided 36 beds to inmates in need of a mental health crisis bed

9    level of care. Following a state court decision requiring the CDCR to bring its medical treatment

10    centers into compliance with state law licensing requirements,[2] the locked observation unit was

11    closed and reopened as an outpatient housing unit.  The closure of the locked observation unit,

12    and defendants' failure to replace the beds lost thereby, accounts for a significant portion of the

13    current shortfall in mental health crisis beds.

14        State licensing requirements serve an important function, and the judgments of

15    state courts are ordinarily, based on important concerns of comity and federalism, deferred to by

16    federal courts.  However, "the Supreme Court has stated that otherwise valid state laws or court

17    orders cannot stand in the way of a federal court's remedial scheme if the action is essential to

18    enforce the scheme."  Stone v. City and County of San Francisco, 968 F.2d 850, 862 (9th Cir.

19    1992) (quoting, inter alia, North Carolina State Bd. of Educ. v. Swann, 402 U.S. 43, 45, 91 S.Ct.

20    1284, 1286, 28 L.Ed.2d 586 (1971).)  It is essential to provide immediately mental health crisis

21    beds to critically ill inmates in the CDCR.  Reopening of the locked observation unit will remedy

22    expeditiously a substantial amount of the shortage of such beds.  Under present circumstances,

23    state licensing requirements must temporarily give way to measures necessary to remedy the

24

---

25      [2] Budd, et al. v. Cambra, et al., Case No. 319578, Order Granting Plaintiffs' Motion for
Summary Judgment and Permanent Injunction, filed August 14, 2002 in the San Francisco
26   County Superior Court.

1 Eighth Amendment violations that remain unresolved in this action.  Defendants will therefore be

2 directed to reopen forthwith the locked observation unit at CMC and to use it to provide 36

3 mental health crisis beds to class members until further order of this court.

4        In accordance with the foregoing, and good cause appearing, IT IS HEREBY

5 ORDERED that:

6        1.  The defendants' long term plan for provision of acute and intermediate

7 inpatient care and mental health crisis beds is approved, subject to modification based on current

8 population projections.  Within sixty days from the date of this order defendants shall file an

9 amended long term plan that is based on current population projections and incorporates an

10 updated version of the methodology first adopted in the 2002 Tucker-Alan bed needs

11 projections.

12        2.  The defendants' long term plan for enhanced outpatient beds describes a

13 shortfall of over 1000 such beds in the year 2011 and therefore is not approved.

14        3.  Defendants shall include with the amended long term plan a list of those

15 projects that can be accelerated as well as a list of any statutory, licensing, or staffing barriers to

16 such acceleration and/or to timely opening of the projects described in the amended long term

17 plan.

18        4.  Within forty-five days from the date of this order defendants shall file a plan

19 for interim provision of intermediate inpatient beds and mental health crisis beds.  Defendants

20 shall include with said interim plan, as appropriate, a list of any statutory, licensing, or staffing

21 barriers to implementation of any aspect of said plan.

22        5.  Plaintiffs are granted a period of ten days in which to file and serve a response

23 to the interim plan required by paragraph 3 of this order.

24        6.  Defendants shall maintain thirty-six (36) intermediate inpatient beds at the

25 California Medical Facility (CMF) P-2 unit until further order of court.  In connection therewith,

26 defendants are reminded of their obligations under the heat plan developed pursuant to prior

4

1    orders of this court, and defendants are directed to take every mechanical step presently feasible

2    to maintain appropriate temperatures within said unit.

3           7. Not later than May 30, 2006, defendants shall open thirty-six (36) intermediate

4    inpatient beds at Salinas Valley State Prison (SVSP) that were slated to receive inmates from

5    CMF.  Said beds shall be used for Level IV inmates.

6           8. Defendants shall create an additional thirty-six (36) intermediate inpatient beds

7    at SVSP on the same time schedule and with the same waivers used to create the thirty-six (36)

8    beds referred to in paragraph 7 of this order.  Said beds shall also be used for Level IV inmates.

9           9. Defendants shall forthwith review the list of 123 inmates presently awaiting

10   placement in the intermediate inpatient bed program at SVSP and shall identify all inmates on

11   said list appropriate for placement in the DMH program at Atascadero State Hospital or Coalinga

12   State Hospital.  The provisions of the current memorandum of understanding between the CDCR

13   and the California Department of Mental Health (DMH) notwithstanding, said review and

14   identification shall be made by appropriate officials of the CDCR.  Thereafter, appropriate

15   officials of both CDCR and DMH shall take all steps necessary to facilitate promptly said

16   placement decisions.  Any dispute between CDCR and DMH over the appropriateness of a

17   placement shall be promptly submitted to the special master for decision.

18          10. Twenty-five (25) intermediate inpatient beds shall be made immediately

19   available at Coalinga State Hospital for appropriate CDCR inmates.  Within thirty days

20   thereafter, an additional 25 intermediate inpatient beds shall be made available at Coalinga State

21   Hospital for appropriate CDCR inmates.

22          11. Within six months from the date of this order, defendants shall file a report on

23   the feasibility and cost of creating thirty (30) intermediate inpatient beds at Coalinga State

24   Hospital beds for Level IV high-custody CDCR inmates.  Said report shall be prepared by the

25   CDCR in collaboration with DMH and the California Department of General Services.

26   /////

5

1        12.  Defendants shall activate the mental health crisis beds in the correctional

2   treatment centers at Kern Valley State Prison and California State Prison-Sacramento not later

3   than July 1, 2006, or inform the court in writing by that date why said centers are not fully

4   operational.

5        13.  Defendants shall forthwith reopen the locked observation unit at the California

6   Men's Colony (CMC) as a thirty-six (36) bed mental health crisis bed unit on a temporary

7   emergency basis.  Said mental health crisis beds shall remain in use until further order of this

8   court.

9        14.  Until further order of this court, defendants shall not close any intermediate

10  inpatient bed or mental health crisis bed on the basis of state licensing requirements without

11  approval of the special master.

12  DATED:  May 1, 2006.

13

14              /s/Lawrence K. Karlton
                LAWRENCE K. KARLTON
                SENIOR JUDGE
15              UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

6