# EXHIBIT S

## Thomas Nolan

| | |
|---|---|
| **From:** | Michael W. Bien |
| **Sent:** | Tuesday, May 09, 2006 12:17 PM |
| **To:** | Lisa Tillman |
| **Cc:** | Jane E. Kahn; Thomas Nolan; Keith Wattley |
| **Subject:** | Program Guide Discovery and Hearing/ Coleman/ 489-3 |

Lisa

I am writing in advance of our status conference with the Court on May 17.  There are several things we should discuss before May 17:

1. You have not responded to my letter of April 18 (a copy of which is attached).  While we are willing to work with you to reduce the scope of the proposed discovery, we have had no understanding of your position to date. What do you propose as an alternative?  To what do you object?. Why? In recent  conversations, you have indicated that you do not agree to any discovery at all on any issues whatsoever.  What is your basis for that position?  Your position is unreasonable.  We have suggested alternatives to you, such as agreeing on representative institutions.  You have not responded.

2. The agreements we have already reached since April 18 have already reduced some of the proposed discovery and you have indicated that there are other potential areas of agreement.  We should set a schedule for final negotiations of any potentially open issues (classification, suicide precautions, suicide history tracking, PSU program, etc.).

3. You have also refused to produce to plaintiffs the binders of documents and information that you regularly produce to the Special Master in connection with each tour.

4. You have also rejected our request to update and revise the order of reference.

We hope that you will reconsider your positions on each of these issues.  We look forward to yur response.

Michael W. Bien
Rosen, Bien & Asaro, LLP
155 Montgomery Street, 8th Floor
San Francisco, CA  94104
Telephone: 415-433-6830
Facsimile: 415-433-7104
mbien@rbalaw.com

CONFIDENTIALITY NOTICE

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rba@rbalaw.com.

5/11/2006

# EXHIBIT T

1 | BILL LOCKYER
Attorney General of the State of California
2 | JAMES M. HUMES
Chief Assistant Attorney General
3 | FRANCES T. GRUNDER
Senior Assistant Attorney General
4 | ROCHELLE C. EAST
Supervising Deputy Attorney General
5 | LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
6 | 1300 I Street, Suite 125
P.O. Box 944255
7 | Sacramento, CA 94244-2550
Telephone: (916) 327-7872
8 | Fax: (916) 324-5205

9 | Attorneys for Defendants
CF1997CS0003

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | CASE NO. CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **DEFENDANTS' STATUS CONFERENCE STATEMENT** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | Date:        May 19, 2006 |
| Defendants. | Time:        10:00 a.m. |
| | Courtroom:   4 |
| | Judge:       The Honorable Lawrence K. Karlton |

On March 2, 2006, this Court ordered that the parties meet and confer regarding four areas addressed by the Revised Program Guide: the cardiopulmonary resuscitation policy, the requirement of board eligible status for employment of psychiatrists, the use of video monitoring for suicide watch, and staffing ratios. The Court further ordered the parties file a status report on

//
//
//

DEF. STATUS CONFERENCE STATEMENT

1

1   those areas by April 17, 2006.  The parties, by and through their counsels, have met and

2   conferred since the hearing on April 26 and April 27, 2006.  Defendants now provide a further

3   status report.

4                                         **II.**

5              **STATUS REPORT ON ISSUES STATED IN COURT'S ORDER**

6              Defendants now provide the Court with their status conference statement on the issues

7   indicated in the March 2, 2006 order.

8         **1.  Cardiopulmonary Resuscitation.**

9              The parties have agreed to the language in the Revised Program Guide providing the

10  court-mandated policy for the administration of cardiopulmonary resuscitation to inmates.

11        **2.  Board Eligible Status For Psychiatrists.**

12             The parties have agreed to the language in the Revised Program Guide providing that

13  all newly hired psychiatrists must have board eligible status to be employed by Defendants.  The

14  parties are presently preparing a stipulation concerning (1) the language to be used in the

15  Revised Program Guide, (2) the June 1, 2006 deadline for submitting the plan to evaluate those

16  psychiatrists who are not board eligible, and (3) the time frame for evaluation of those

17  psychiatrists who are not board eligible.  The parties hope to have the stipulation filed with the

18  Court by the time of this hearing.

19             Defendants have provided Plaintiffs a spreadsheet showing the location and number of

20  presently-employed psychiatrists who do and do not have board-eligible status (with

21  psychiatrists names redacted from the spreadsheet).

22        **3.  Videomonitoring.**

23             As stated in the previous status conference statement, the parties have agreed to the

24  language in the Revised Program Guide stating that effective April 10 there is a  moratorium on

25  the use of videomonitoring as the sole means of providing suicide watch.

26             The parties have agreed upon a 45-day period for notice in the event of any re-

27  institution of video monitoring as a sole means for performing suicide watch.  The parties are

28  //

DEF. STATUS CONFERENCE STATEMENT

1    presently negotiating the period of meet-and-confer.  The parties hope to present their

2    stipulation on these matters to this Court by the time of this status conference.

3    **4. Staffing Ratios.**

4    The parties have met and conferred about Defendants proffered staffing ratios in

5    administrative segregation units, Enhanced Outpatient Programs (EOP), and CCCMS.

6    Defendants have indicated that these ratios will be reviewed pending a workload study.  A

7    contract for the study is necessary.  Once the contract is completed, Defendants will provide

8    Plaintiffs with the completion date of that study.

9    Plaintiffs have objected that the proffered staffing ratios are inadequate in many

10    respects, including their lack of adequacy to provide necessary care as well their lack of ratios

11    for correctional officer staffing for mental health services, clinical staffing to provide EOP care

12    in Reception Centers, and clinical staffing in ad seg EOP level of care commensurate with the

13    staffing provided for caseload inmates housed in PSU.  Defendants do not agree with Plaintiffs'

14    statement that Special Master Keating has objected to the proffered staffing ratios for all

15    programs.  (Plf. Status Conf. Statement, 5/16/06.)

16    **III.**

17    **DEFENDANTS' RESPONSE TO OTHER ISSUES STATED**

18    **IN PLAINTIFFS' STATEMENT**

19    Defendants object to Plaintiffs' introduction of issues outside the court order of March

20    2, 2006 into this hearing.  Without waiving said objection, Defendants provide a limited

21    response to those issues as follows:

22    1.    **Non-Cage Treatment Option for PSU and EOP Administrative Segregation**

23    **Inmates**

24    Defendants have agreed to consider this concept.

25    2.    **Classification Issues**

26    Special Master Keating's report on the Program Guide identified disputed

27    classification issues, including the elimination of the four points added to the classification score

28    of inmates entering into CDCR with a history of mental illness, the addition of a requirement for

DEF. STATUS CONFERENCE STATEMENT

3

1   the housing of EOP and CCCMS inmates in security levels commensurate with their

2   classification scores, and an end to exclusion of EOP and CCCMS from participation in the

3   programs and services available to the general population. (Report at p. 8.)

4         In their responses to the Draft Report on the Revised Program Guide, defendants

5   agreed to the recommendation that EOP inmates receive annual point reductions in their

6   classification scores for participation in their EOP-related programs. (Def. Response to Draft

7   Report at p. 3.) Defendants are presently working on the implementation of this concept.

8         Defendants assert this Court lacks jurisdiction in this case to hear all the classification

9   issues listed in Special Master Keating's Final Report on the Revised Program Guide. Plaintiffs'

10   counsel may argue the listed classification issues fall within the parameters of a claim under the

11   Americans with Disabilities Act or the Rehabilitation Act. However, judgment in this action was

12   based on the Eighth Amendment. Indeed, Plaintiffs chose to voluntarily dismiss their

13   Rehabilitation Act claim prior to entry of judgment in this matter. Therefore, this Court does not

14   have jurisdiction to determine the classification issues listed in the Final Report.

15         Further, the legal issues contained in each of the listed classification issues will require

16   the development and determination of specific, individual claims and defenses under the

17   Americans with Disabilities Act. Such claims and defenses are not properly heard by this Court

18   in the course of an evidentiary hearing on the Program Guide.

19                                  **IV.**

20   **DEFENDANTS' RESPONSE TO PLAINTIFFS' PROCEDURAL ISSUES**

21         Plaintiffs request this Court determine a number of procedural issues, some related and

22   some not related to the Revised Program Guide. Defendants hereby provide their response to

23   Plaintiffs' issues.

24        **1.   Discovery Requested by Plaintiffs.**

25         Defense counsel has informed Plaintiff counsel that no discovery is necessary given

26   the ongoing years of tours to the facilities and the ongoing production of internal documents in

27   response to Special Master Keating's requests and, quite often, Plaintiffs' requests. Indeed, the

28   post-trial status of this case makes any sought discovery untimely under the Federal Rules of

DEF. STATUS CONFERENCE STATEMENT

1    Civil Procedure, Rules 26 and 30. Such discovery is after the close of discovery under Rule 26

2    and in the absence of a court order permitting discovery after entry of the verdict in this matter.

3    Indeed, the discovery phase of *Coleman* ended years ago with the completion of the trial and

4    entry of judgment. The discovery statutes do not provide for discovery during the remedial

5    phase of a class action suit. The Order of Reference in this case does not permit discovery by

6    Plaintiffs.

7    Orders permitting discovery in other class action cases with different special masters and

8    different legal issues, not to mention different commencement dates, are inapposite. Defendants

9    respectfully request this Court disregard Plaintiffs' allusion any discovery orders in *Valdivia v.*

10   *Schwarzenegger*, ED Cal. Case No.  and *Armstrong v. Schwarzenegger*, ND Cal. Case No. C 94-

11   2307 CW.

12          Defendants urge this Court to deny Plaintiffs' broad request to conduct discovery into

13   Program Guide issues. Plaintiffs have represented the need for some months of discovery, with

14   depositions and site inspections, on various revised Program Guide issues. The Program Guide

15   is supposed to enable closure of this case, not reopen issues for discovery and litigation. Indeed,

16   the Order of Reference specified the responsibility of the Special Master is to work with

17   Defendants. Defendants have followed the counsel of Special Master Keating and his experts in

18   writing the Revised Program Guide. Any discovery and litigation of these outstanding Program

19   Guide issues undermines these years of work in negotiating the Program Guide and brings the

20   parties back to the starting point of this case. Defendants respectfully request this Court simply

21   approve the Revised Program Guide and let Defendants move to the next and hopefully final

22   steps of a compliant mental health system.

23          **2.    Order of Reference**

24          Overall, Defendants see no need to amend the December 11, 1995 Order of Reference.

25   The 2003 amendments to Rule 53 of the Federal Rules of Civil Procedure do not necessarily

26   have retroactive application to the outstanding Order of Reference in this case. In the past ten

27   years, the needs of the parties have been well-served by the 1995 Order of Reference. Some

28   //

DEF. STATUS CONFERENCE STATEMENT

1    specific areas of Plaintiffs' requested changes (as stated in their correspondence) are addressed

2    as follows:

3        a.    Timeline for Objections.

4            At most,  Defendants are willing to stipulate that the ten-day time period of the 1995

5    Order of Reference should be lengthened to the twenty-day time period given the significance of

6    the findings and recommendations stated in these reports.

7        b.    Standard of Review of Factual Findings and Recommendations of the Special

8            Master.

9            Defendants see no need to stipulate to a 'de novo' standard of review for the Special

10    Master's findings of fact.  The monitoring tours conducted by Special Master Keating and his

11    team render his findings of fact particularly well-suited to use of the clearly erroneous standard

12    of review provided by the 1995 Order of Reference.

13        c.    Time for Opposition to Objections by the Other Party.

14            The 1995 Order of Reference does not address the time period for responding to

15    objections filed by the opposing party.  To the extent the Special Master and Court are willing to

16    entertain such objections, then Defendants are willing to stipulate to a ten-day time period for

17    presenting such objections.

18        d.    Ex Parte Communications.

19            Defendants do not believe this Court or the Special Master need to be guided in the

20    propriety of any ex parte communications.

21        e.    Changes that Reflect the *Gates-Coleman* Merger and Settlement.

22            Defendants believe the 1998 Stipulation and Order provide a sufficient statement of

23    the class definition to include San Quentin and CMF.  Defendants do not see any need to further

24    delineate the class definition.  To the extent Plaintiffs seek to incorporate the production of tour

25    binders into the *Coleman* Order of Reference, Defendants state that these materials are produced

26    to simply facilitate the Special Master's tours (and are produced to Plaintiffs' counsel when on

27    those tours to also enable their expeditious participation).  The production of tour binders to

28    plaintiffs' counsel before, during or after non-attorney tours will be unduly burdensome to

DEF. STATUS CONFERENCE STATEMENT

1   Defendants.  The fact that the tours do not involve attorneys should be read an indicator that

2   Plaintiffs' counsel do not have a right to these materials.

3         f.  <u>Changes to Reflect New Rule 53 Requirement That The Order of Reference Specify</u>

4   <u>the Record of Evidence to Be Preserved and Filed by the Master and Set Forth Time</u>

5   <u>Limits for Reports.</u>

6         After ten years of monitoring, Defendants are confident that the record of evidence has

7   been and will be properly maintained by Special Master Keating.  Defendants do not believe the

8   Order of Reference should be used to determine the parameters of any discovery of Program

9   Guide issues.

10        **3.   Access to Information**

11         As stated above, Defendants are not willing to produce tour binders to Plaintiffs for

12   those tours that they are not invited by Special Master Keating to attend.  Such production is

13   unnecessary and overly burdensome.

14        **4.   Scheduling Information**

15         Plaintiffs intimate that discovery related to discrimination issues asserted in other cases

16   pending before this Court will occur in this case.  (*See, Hecker v. California Department of*

17   *Corrections and Rehabilitation*, E.D. Case No. S-05-2441, *Klemaske v.California Department of*

18   *Corrections and Rehabilitation*, E.D. Case No. S-04-1750, *Wilson v. Woodford*, E.D. Cal. Case

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

DEF. STATUS CONFERENCE STATEMENT

1  No. S-05-0876.)   Defendants reiterate that the *Coleman* action is brought under the Eighth

2  Amendment and so no discovery of issues under the Americans with Disabilities Act should be

3  permitted.

4  Dated: May 18, 2006

Respectfully submitted,

5

6  BILL LOCKYER
Attorney General of the State of California

7  JAMES M. HUMES
Chief Assistant Attorney General

8  FRANCES T. GRUNDER
Senior Assistant Attorney General

9  ROCHELLE C. EAST
Supervising Deputy Attorney General

10

11  */s/ Lisa Tillman*

12  LISA A. TILLMAN
Deputy Attorney General

13  Attorneys for Defendants

14

15

16  30119790.wpd

17

18

19

20

21

22

23

24

25

26

27

28

DEF. STATUS CONFERENCE STATEMENT

8

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Coleman v. Schwarzenegger**

No.:    **CIV S-90-0520 LKK JFM P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>May 18, 2006,</u> I served the attached *Status Conference Statement* by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Pete Cockeroft
California State Prison, Sacramento
FA2-205 - H86887
P.O. Box 290066
Represa, CA 95671-0066

Kimberly S. Davenport
California Medical Association
221 Main Street
San Francisco CA 94105

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 18, 2006, at Sacramento, California.

| | |
|---|---|
| A Buckley | */s/ A Buckley* |
| Declarant | Signature |

30120176.wpd

# EXHIBIT U



**BILL LOCKYER**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 327-7872
Facsimile: (916) 324-5205
E-Mail: Lisa.Tillman@doj.ca.gov



RECEIVED

MAR 2 1 2006

ROSEN BIEN & ASARO

March 20, 2006

Michael W. Bien, Esq.                               *Via US Mail and EMail*
Rosen, Bien & Asaro, LLP
155 Montgomery Street, 8th Floor
San Francisco, CA 94104

RE:     Coleman v. Schwarzenegger
        USDC, Eastern District of California, Case No. CIV S-90-0520 LKK JFM P

Dear Mr. Bien:

        This letter is in response to your correspondence concerning the production of each
facility's tour binders to Plaintiffs' counsel during the upcoming round of monitoring.  I
understand that your office asserts that any document provided to Special Master Keating and his
team at the start of each monitoring tour of a facility must also be provided to Plaintiffs' counsel,
regardless of whether Plaintiffs' counsel is participating in the tour or not.  Your office further
asserts that such production is required by the July 23, 1999 order amending the plaintiff class
and application of remedy.  I must differ with your interpretation of the 1999 order and disagree
with your request.

        The July 23, 1999 order simply adopted the parties' stipulation that California Medical
Facility at Vacaville and San Quentin Prison would be subject to the jurisdiction of the Coleman
court.  Granted, paragraph 9 of the 1999 order states, "The Defendants and the Special Master
also agree to routinely provide Plaintiffs' counsel with copies of any documents provided to the
Master by defendants."  However, this specific provision should not be interpreted to impose a
system-wide requirement of document production on Defendants.

        Indeed, the 1995 Order of Reference does not specifically require that each and every
document communicated between Defendants and the Special Master be provided to Plaintiffs'
counsel.  The absence of any such provision in the 1995 Order of Reference is obvious in your
correspondence of March 9, 2006 requesting an amendment of the Order of Reference to include
a requirement that "Defendants shall promptly provide copies of all documents provided to the
special master and his staff to Plaintiffs' counsel. This includes tour binders and other
documentation provided to the Special Master's staff, assistants and experts on institutional

Michael W. Bien, Esq.
March 20, 2006
Page 2

tours." (Proposed Amended Order, 6:19-22.)  I must assume that your contention that the 1999 order requires production of tour binders is withdrawn in light of your request for an amendment of the Order of Reference to reflect such a requirement.

Indeed, the Order of Reference provides that the Special Master may set the parameters for the production of documents by Defendants.  These particular documents are produced to simply provide preliminary information for use by the monitors in their tour of the facility.  The monitors may confirm or disaffirm or not even rely upon the documents during the tour.  I understand the documents can be voluminous and, more often than not, are not taken from the facility by the monitors.  Any production of these documents to your office, especially in light of possible evidentiary hearings in the near future, would require the oversight and review given to documents produced in federal discovery proceedings.  As a result, production to your offices would hamper the timely transmission of the documents to the Special Master's team and be unduly burdensome to Defendants.

Defendants respectfully will not agree to your request for production of the tour binders and for amendment of the Order of Reference to require such production.

Sincerely,

LISA A. TILLMAN
Deputy Attorney General

For    BILL LOCKYER
Attorney General

cc: J. Michael Keating, Jr.
Matthew Lopes
Steve Fama

30099381.wpd

# EXHIBIT V

PRISON LAW OFFICE
DONALD SPECTER (State Bar # 83925)
General Delivery
San Quentin, California 94964
Telephone (415) 457-9144

McCUTCHEN, DOYLE, BROWN & ENERSEN
WARREN E. GEORGE (State Bar # 53588)
Three Embarcadero Center
San Francisco, California 94111
Telephone (415) 393-2000

ROSEN, BIEN & ASARO
MICHAEL W. BIEN (State Bar # 096891)
THOMAS NOLAN (State Bar # 169692)
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF (State Bar # 36377)
701 Fifth Avenue
Seattle, WA 98104
Telephone (206) 447-0900

DISABILITY RIGHTS AND EDUCATION DEFENSE FUND
2212 6th Street
Berkeley, California 94710
Telephone (510) 644-2627

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,                         ) No. Civ S 90-0520 LKK-JFM
                                       )
              Plaintiff,               ) STIPULATION AND ORDER AMENDING
                                       ) PLAINTIFF CLASS AND APPLICATION
vs.                                    ) OF REMEDY IN COLEMAN
                                       )
PETE WILSON, et al.,                   )
                                       )
              Defendants.              )
_____)

ORIGINAL
FILED

DEC 24 1998

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN COLEMAN

1    It is hereby stipulated between defendants Pete Wilson,

2  Governor of California, Thomas Maddock, Secretary of the

3  California Youth and Adult Corrections Agency, Cal Terhune,

4  Director of the California Department of Corrections, Susann

5  Steinberg, M.D., Deputy Director of the Health Care Services

6  Division, and Marjorie Tavoularis, M.D. Chief of Mental Health

7  Services for the Department of Corrections, by their counsel

8  Daniel E. Lungren, Attorney General of California, Bruce M.

9  Slavin, Deputy Attorney General and plaintiffs Ralph Coleman, and

10  all other members of the plaintiff class, by their counsel Prison

11  Law Office, Donald Specter, Rosen, Bien & Asaro, Michael Bien,

12  McCutchen, Doyle, Brown and Enersen, Warren George, Heller,

13  Ehrman, White and McAuliffe, Richard L. Goff, that:

14      1.   The parties stipulate and agree that all Findings and

15  Recommendations and Orders issued in this action apply to

16  prisoners and conditions at the California Medical Facility at

17  Vacaville ("CMF") and San Quentin Prison and that this Court has

18  jurisdiction and power to issue relief and orders concerning CMF

19  and San Quentin to the same extent as the Court has jurisdiction

20  and power to do so as to any other California prison.

21      2.   The parties stipulate and agree that the order filed in

22  this case on November 14, 1991, certifying the plaintiff class

23  shall be amended as follows:

24      The plaintiff class consists of all inmates with

25      serious mental disorders who are now, or who will in

26      the future, be confined within the California

27      Department of Corrections.

28

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN COLEMAN

3.   Defendants will dismiss, no later than ten days after final approval of the dismissal of <u>Gates</u>, all pending appeals in <u>Coleman</u> with prejudice and will agree not to appeal, at any time, from any now existing orders of this Court.  These include: the September 13, 1995 finding of liability (appeal No. 97-16622); the February 21, 1997 interim fee order (appeal No. 97-16622); the July 12, 1996 order concerning special master compensation under the PLRA (appeal No. 97-16622); the September 30, 1997 order holding the PLRA inapplicable to plaintiffs' post-April 1996 attorneys' fees and expenses (appeal No. 97-17014); the June 27, 1997 order approving the remedial plan (appeal No. 97-16622).

4.   Defendants hereby waive any rights to assert any limitations on the powers or compensation of the Special Master based on the now existing provisions of the Prison Litigation Reform Act, 18 U.S.C. §3626, <u>et seq.</u>.

5.   Defendants agree to comply with the existing Court orders in <u>Gates</u> and <u>Coleman</u> concerning compensation to plaintiffs' counsel for their reasonable legal fees and expenses for all work performed until the case is dismissed by the Court. Plaintiffs waive any right to seek further increases in hourly rates in <u>Gates</u>.  Defendants further agree to waive any right to recoupment, refund or set-off for fees and expenses that have been paid or will be paid to plaintiffs' counsel in <u>Gates</u> or <u>Coleman</u> for any reason, including, but not limited to, the PLRA, up to and including the end of the quarter in which the <u>Gates</u> case is dismissed by the Court.  Defendants agree to continue to comply with the <u>Coleman</u> Court orders concerning compensation of plaintiffs' counsel from that date forward, but reserve the right

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN <u>COLEMAN</u>

3

1  to seek recoupment, refund or set off as under the PLRA,

2  beginning with fees paid for work performed on the first day of

3  the quarter following dismissal of the <u>Gates</u> case.  In the event

4  plaintiffs' counsel are required to refund any part of the fees

5  paid to them in <u>Coleman</u>, defendants agree that the payment can be

6  made over the course of a year.  The parties agree to be bound by

7  the decision of the Ninth Circuit in <u>Madrid v. Gomez</u>, No. 97-

8  16237, when final, as to the application of the PLRA for

9  monitoring work, assuming the Supreme Court has not held to the

10  contrary in another case.

11     6.   Defendants agree that they will not bring any motion to

12  terminate relief governing CMF under the PLRA, 18 U.S.C. §3626,

13  until two years after this Court issues an order approving

14  defendants' transition plan for CMF required by this stipulation

15  and order.

16     7.   The parties stipulate and agree that this Court and the

17  special master have the power and duty to monitor and report on

18  defendants' suicide prevention program, the incidence of suicide

19  and any related issues concerning suicides in the CDC.

20     8.   The parties stipulate and agree that this Court and the

21  special master will have the power and duty to evaluate and

22  approve, monitor and report on the following issues at CMF only:

23        a.   Defendants' design and implementation of a quality

24  assurance program for medical care at CMF, including the need for

25  problem lists.  Defendants agree to prepare a remedial plan

26  within ninety (90) days of the date of this Order.

27        b.   Defendants' provision of a Medical Officer of the

28  Day (MOD) at all times at CMF.

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN <u>COLEMAN</u>

4

1    c.    Defendants' provision of a Psychiatric Officer of

2  the Day (POD) at all times at CMF.

3    9.    The parties are concerned about the capacity of the

4  Special Master to take on the significant additional

5  responsibilities for monitoring at CMF.  In addition, the parties

6  wish to assure continuity and consistency in the monitoring of

7  existing policies and procedures at CMF.  Therefore, the parties

8  have requested and the Special Master has agreed to increase his

9  staffing of the case (including an increase in mental health

10 professionals) to assure appropriate and timely monitoring.  The

11 defendants and the Special Master also agree to routinely provide

12 plaintiffs' counsel with copies of any documents provided to the

13 Master by defendants, and to give plaintiffs' counsel notice of

14 any prison tours or visits immediately upon scheduling the same

15 with defendants.  Defendants agree to retain and staff the

16 Compliance Office at CMF in the same manner as it is currently

17 staffed and operated until such time as the private settlement

18 agreement is of no force or effect and the transition plan for

19 CMF has been approved, or the Special Master recommends a change.

20 The parties and the Special Master agree that quarterly

21 monitoring of CMF shall continue until the transition plan is

22 approved and that, during the period of implementation of the

23 transition plan, monitoring will require at least two

24 comprehensive tours and reports per year for the first two years.

25              CMF TRANSITION PLAN

26    10.   No later than ninety (90) days after this Court's

27 approval, after the fairness hearing, of the merger and dismissal

28 of the Gates consent decree, defendants shall develop a

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN COLEMAN

489\3\PLEADING\
STIP-8.602

1   comprehensive transition plan for CMF.  The plan shall address

2   the following issues:

3       A.      Individual assessments will be performed of the

4           following categories of CMF prisoners in order to

5           ensure proper clinical placement of class members at

6           CMF or some other CDC facility in an existing Mental

7           Health Services Delivery System program or some other

8           new program which is determined to be needed to meet

9           the needs of the reassigned class members.  The

10          categories are as follows: prisoners who are currently

11          receiving any form of mental health treatment

12          (including, but not limited to, individual or group

13          therapy, suicide observation and psychotropic

14          medication); prisoners who are currently classified I,

15          J, K, T, U, Psych Eval, CCCMS, or EOP; prisoners who

16          are currently housed in the OPP, including the intake

17          unit.  The plan will require that discharge summaries

18          and recommendations for further evaluation or treatment

19          accompany each class member transferred from the CMF

20          OPP.  The plan will also require that any transfer of a

21          prisoner in need of further mental health treatment

22          take into account the actual staffing, resources and

23          capacity of the receiving prison to address the needs

24          of the mentally ill prisoner.

25      B.      The plan shall also address the clinical and

26          custodial staffing of CMF, and changes to the staffing

27          that will occur as CMF is brought into conformity with

28

1    CDC's statewide Mental Health Care Services Program,

2    including a time line for any changes.

3    C.    The plan shall also address the specific mental

4    health programs that will remain at CMF, including the

5    clinical staffing, clinical administrative staffing,

6    custodial staffing and the prisoner population of each

7    program.  These programs will include, at minimum, the

8    following: the DMH inpatient programs (at CMF and at

9    Atascadero State Hospital) and the DMH Day Treatment

10    Program at CMF; a psychiatric intake unit; a CCCMS

11    program; an EOP program; a mental health program to

12    address the needs of the HIV population at CMF; and

13    short term psychiatric crisis care for CMF prisoners by

14    admission to the DMH acute inpatient psychiatric

15    program at CMF.

16    D.    The plan shall specifically address the treatment,

17    housing and security issues raised by the prisoners

18    housed in the IOC (or "third floor") locked units at

19    CMF as a group.  The plan shall address the treatment

20    and housing required for all of these prisoners.

21    E.    The plan shall also address the use of Willis Unit

22    for housing prisoners with mental illness.

23    F.    The plan shall address the housing and clinical

24    needs of prisoners discharged from the DMH inpatient

25    units at CMF and Atascadero State Hospital, including

26    the maintenance of prisoners on psychotropic

27    medications, such as Clozapine, initiated by DMH.

28

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN COLEMAN

G.        The plan shall be developed in consultation with the <u>Coleman</u> Special Master and his experts, and plaintiffs' counsel. The Special Master shall be assisted by consultants familiar with CDC and CMF mental health issues in the development and evaluation of the transition plan.  The parties shall negotiate in good faith, with the assistance of the Special Master, to resolve any disputes concerning the adequacy of the transition plan.  The transition plan, including any recommendations on unresolved issues, shall be submitted by the Special Master to this Court for approval.  The standard to be applied in evaluating the adequacy of the transition plan is whether it addresses each of the elements set forth in this section and whether the plan satisfies Eighth Amendment remedial standards.

11.  The parties stipulate and agree that no clinical or custodial resources shall be removed from CMF without the approval of this Court which shall address clinical and custodial staffing requirements.  Defendants, including the Department of Mental Health, will continue to comply with all <u>Gates</u> orders and procedures governing mental health care until the transition plan is approved in the <u>Coleman</u> case.  This Court may fully enforce these Orders in the <u>Coleman</u> case unless and until the transition plan for CMF is approved.  Attached hereto as Exhibit <u>1</u> are the applicable <u>Gates</u> orders, plans and procedures that the parties agree will remain in effect and fully enforceable by the Court in <u>Coleman</u>.

1        Dated: _June 17_, 1998

2

3    Attorneys for Plaintiffs:              Attorneys for Defendants:

4

5    _Donald Specter_                       _Peter J. Siggins_
6    PRISON LAW OFFICE                      DANIEL B. LUNGREN
     DONALD SPECTER                         Attorney General
7    General Delivery                       PETER J. SIGGINS
     San Quentin, CA 94964                  Senior Asst. Attorney General
8                                           BRUCE M. SLAVIN
                                            Deputy Attorney General
9    _Michael W. Bien_

10   ROSEN, BIEN & ASARO
     MICHAEL W. BIEN
11   155 Montgomery St., 8Th Floor
     San Francisco  CA  94104
12

13   McCUTCHEN, DOYLE, BROWN &
     ENERSEN
14   WARREN GEORGE
     Three Embarcadero Center
15   San Francisco  CA  94111

16   HELLER, ERHMAN, WHITE &
     McAULIFFE
17   RICHARD L. GOFF
     701 Fifth Avenue
18   SEATTLE, WA 98104

19

20

21

22

23

24

25

26

27

28

STIPULATION AND ORDER AMENDING PLF CLASS AND
APPLICATION OF REMEDY IN <u>COLEMAN</u>

# EXHIBIT W

FILED

JUL 2 3 1999

CLERK, U. S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                      DEPUTY CLERK

RECEIVED

JUL 2 6 1999

ROSEN BIEN & ASARO

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,        No. CIV S-90-0520 LKK JFM P

    vs.

PETE WILSON, et al.,

        Defendants.    <u>ORDER</u>

_____/

        Pursuant to court order, on December 24, 1998, the parties submitted a stipulation

and proposed order amending the plaintiff class and application of remedy in the above-

captioned action. A copy of said stipulation is appended hereto. Good cause appearing, IT IS

HEREBY ORDERED that all matters stipulated by the parties are so ordered nunc pro tunc to

December 24, 1998.

DATED: July 23, 1999.

                             LAWRENCE K. KARLTON
                             CHIEF JUDGE EMERITUS
                             UNITED STATES DISTRICT COURT

1

1054

# EXHIBIT X

1  PRISON LAW OFFICE
   DONALD SPECTER – 83925
2  SARA NORMAN – 189536
   General Delivery
3  San Quentin, California 94964
   Telephone: (415) 457-9144
4
5  DISABILITY RIGHTS EDUCATION &
   DEFENSE FUND, INC.
   LINDA KILB - 136101
6  2212 6th Street
   Berkeley, California 94710
7  Telephone: (510) 644-2555

8  JONES DAY
   CAROLINE MITCHELL - 143124
9  555 California Street, 25th Floor
   San Francisco, CA 94104
10 Tel: (415) 875-5712
   Fax: (415) 680-2344

   BINGHAM, McCUTCHEN, LLP
   WARREN E. GEORGE – 53588
   Three Embarcadero Center
   San Francisco, California 94111-4066
   Telephone: (415) 393-2000

   ROSEN, BIEN & ASARO, LLP
   MICHAEL W. BIEN – 096891
   ERNEST GALVAN – 196065
   155 Montgomery Street, 8th Floor
   San Francisco, California 94104
   Telephone (415) 433-6830

   LAW OFFICES OF ELAINE B. FEINGOLD
   ELAINE B. FEINGOLD – 99226
   1524 Scenic Avenue
   Berkeley, California 94708
   Telephone: (510) 848-8125

11
12
13 Attorneys for Plaintiffs
14
15
16
17 JOHN ARMSTRONG, et al.,           )   Case No. C-94-2307 CW
                                     )
18       Plaintiffs,                 )
                                     )
19 v.                                )   **STIPULATION AND [PROPOSED]**
                                     )   **ORDER REGARDING POST-TRIAL**
20 GRAY DAVIS, et al.,               )   **DISCOVERY**
                                     )
21       Defendants                  )
                                     )
22
23        The parties enter into this agreement regarding post-trial discovery regarding this

24 Court's February 11, 2002 Revised Permanent Injunction ("Injunction").

25        On March 19, 2001, this Court entered an order on post-trial discovery ("Monitoring

26 Order"). The Court ordered (1) that the Defendants' motion for appointment of a special

27 counsel to monitor compliance with the Injunction was denied; and (2) that the parties'

28 stipulation regarding parameters of monitoring by Plaintiffs' counsel was approved, as

1  recited in the Monitoring Order.

2      The Monitoring Order provided for three principal monitoring mechanisms:

3  (1) periodic production of certain categories of documents to plaintiffs' counsel;

4  (2) production of other documents to plaintiffs' counsel on request; and, (3) observations of

5  parole proceedings, limited to a total of five days of hearings and five days of screenings

6  (serves) every three months.[1]

7      That Order set limitations on Plaintiffs access to parolee files during observations of

8  hearings and screenings (serves).  Under the Order Plaintiffs are allowed to "examine, and

9  have copied, non-confidential documents relevant to the hearings or screenings of class

10  members or those prisoners and parolees Plaintiffs' counsel have a good faith belief are

11  class members whether or not defendants have so identified whose hearings or screenings

12  were observed".[2]

13      Plaintiffs have taken the position  that, with such a small sample of proceedings (out

14  of approximately 90,000 revocations per year), Plaintiffs must have access to all inmate and

15  parolee files being used at the monitoring location on the day of the tour, not just the files of

16  inmates and parolees Defendants identify as class members.  Plaintiffs contend that such

17  access is particularly critical to monitor compliance with the Injunction provisions that

18  require the Defendants to "maintain a system for tracking prisoner and parolees that the

19  BPT identifies as having disabilities" (to the extent CDC does not track such information) as

20  provided in the Revised Permanent Injunction and to "take reasonable steps to identify

21  prisoners and parolees with disabilities" before a parole proceeding.  (Injunction ¶¶ 15, 16.)

22  Defendants have limited Plaintiffs' access to files of inmates or parolees whom Defendants

23  have identified as class members based on information in the inmates' and parolees' files

24  _____

25  [1] Because Defendants requested additional time to train staff on policies and procedures
    required by the Injunction, active monitoring of parole proceedings did not begin until

26  October 2001, and then only in certain pilot locations where Defendants were beginning to
    implement policies and procedures.  Statewide monitoring did not begin until April 2002,

27  when Defendants began implementing at least some of the required procedures statewide.

28  [2] Stipulation and Order Regarding Post-Trial Discovery, March 19, 2001, page 3, line 26.

STIPULATION AND [PROPOSED] ORDER REGARDING POST-TRIAL DISCOVERY, Case No. C 94 2307 CW

1    and those for whom the plaintiffs can articulate a good faith belief of class membership.

2        The parties have met and conferred and have negotiated this agreement to modify the

3    Monitoring Order as follows:

4    I.    <u>Access to Information</u>

5        A.    Documents

6            1.    Plaintiffs' counsel shall have reasonable access to information

7                sufficient to assess the BPT's compliance with the Injunction and

8                implementation of its policies, plans and procedures required by the

9                Injunction. This information shall include, but is not limited to, the

10               following documents:

11           a)    Administrative Directives, statistical reports, proposed

12               regulations, and instructional memoranda routinely prepared by

13               the BPT, excluding draft versions and/or documents protected

14               by privilege;

15           b)    the complete medical, psychiatric, parole field, and

16               nonconfidential portions of central files of class members (any

17               portion of those files may be requested for review or copying by

18               Plaintiffs' counsel) and those parolees or prisoners Plaintiffs'

19               counsel have a good faith belief are class members, whether or

20               not Defendants have so identified; and

21           c)    relevant blank versions of forms used in relation to BPT

22               proceedings, including but not limited to, forms 1001, 1001(a),

23               1002, 1004, 1005(a), 1005(b), 1007, 1008(a)X, 1008(b)X,

24               1008(c)X, 1009, 1010, 1013, 1014, 1014(a), 1015, 1016X,

25               1017X, 1040, 1041, 1043, 1044, 1050, 1051, 1052, 1053, 1055,

26               1073, 1073(b), 1074, 1079(a), 1083, 1083(a), 1083W, 1084,

27               1091, 1092, 1093, 1100, 1100(a), 1100(b), 1100(b)W, 1100(c),

28               1101, 1101(a), 1101(b), 1102, 1102(a), 1103, 1103X, 1104(a),

1104(b), 1104X, 1105, 1107, 1109, 1135, 1135(a)-x, 1138, 1139, 1400, 1401, 1410, 1410(a), 1415, 1420(a), 1460, 1460(a), 1470, and California Department of Corrections (CDC) forms 112, 128-C, 611, 872, 872A, 873, 1244, 1521, 1521-B, 1521-D, 1654, 1676, and 1845.

2.  In addition, on the first day of every third month, the BPT shall send to Plaintiffs' counsel the following documents:

a)  All final reports of internal reviews or audits regarding compliance with the Injunction completed by the BPT since the last document production;

b)  All BPT grievances and appeals (such as 1073, 1074, 1040 forms) and all responses thereto, involving a request for accommodation for a disability or a claim of discrimination based on a disability;

c)  All BPT policies, procedures, or guidelines promulgated by the BPT as a result of this Injunction or relating to accommodations for prisoners with disabilities in relation to parole proceedings completed since the last document production.

II.  Post-Trial Visits

Every three months, Plaintiffs' counsel shall be able to observe BPT hearings and processes by which inmates and parolees are served with notices of hearing rights and screening offers. The visits shall be limited to ten days of hearings and/or screenings (serves) every three months.

The parties shall schedule post-trial visits by whatever means they agree upon, provided (1) that Plaintiffs' counsel shall provide the BPT with notice one week in advance of their intent to observe hearings and screenings, and the locations of such hearings and locations, and (2) that at any time, Plaintiffs' counsel may demand that BPT provide within five working days a list of the dates, times and locations of all hearings scheduled within the

1   next two weeks.  This information shall include an indication of which of these hearings

2   involve prisoners with disabilities.

3        Plaintiffs' counsel shall be permitted to interview the inmates whose hearings or

4   screenings are observed on the day of the hearing or screening.  Participation in interviews

5   by non-class members is subject to the inmate's consent.  The commissioners, deputy

6   commissioners, BCPAs, and district hearing agents shall be available for a brief interview,

7   lasting no longer then ten minutes each, at the conclusion of any hearing or screening that

8   has been observed.  The number of counsel, experts, or consultants who may observe

9   hearings and screenings is subject to space availability.  Plaintiffs' counsel may examine

10  any non-confidential documents relevant to the hearings or screenings of the parolees or

11  inmates that they observe on the day of the observations.  Plaintiffs' counsel may also

12  examine any non-confidential and reasonably accessible documents relevant to the hearings

13  or screenings of as many as seven other parolees or inmates who are scheduled for hearings

14  or screenings (serves) on the day of the observations, but whose parole proceedings are not

15  observed by plaintiffs' counsel.  Of the documents examined, Plaintiffs' counsel may have

16  copied any non-confidential documents relevant to this action.  Plaintiffs' access to files of

17  non-class members shall not place an undue burden on CDC or BPT staff. Requests for any

18  additional information from inmates' or parolees' files shall be subject to Paragraph I.A.1.b,

19  above, i.e., Plaintiffs' counsel may request additional documents from the files of class

20  members or those inmates or parolees Plaintiffs' counsel have a good faith belief are class

21  members, whether or not Defendants have so identified.

22  III.    Access to Staff

23        Individuals from the BPT's Americans with Disabilities Act Compliance Unit shall

24  be reasonably available to Plaintiffs' counsel for meetings or telephone calls, and shall

25  generally keep them informed of BPT's progress in complying with the terms of the

26  Injunction, including but not limited to BPT's ability to secure funding.

27        Plaintiffs' counsel shall also have the right to interview BPT staff and any CDC staff

28  carrying out BPT functions, including but not limited to, district hearing agents and

STIPULATION AND [PROPOSED] ORDER REGARDING POST-TRIAL DISCOVERY, Case No. C 94-2307 CW

1   counselors facilitating access to documents relating to parole proceedings. Each person

2   interviewed is entitled to the presence of Defendants' counsel, either counsel of record or

3   any attorney from the BPT or the CDC, during any interview by Plaintiffs' counsel.

4       Plaintiffs' counsel may take depositions of staff members if necessary for a motion to

5   enforce compliance with the Injunction. Any depositions are subject to the applicable

6   Federal Rules of Civil Procedure. Counsel of record shall be served with a copy of any

7   deposition notice served on any staff member.

8   IV.   Training

9       Plaintiffs' counsel shall be able attend a representative sample of each type of

10  training session required by the Injunction regarding implementation of the Injunction.

11  Defendants shall inform Plaintiffs' counsel at least 30 days in advance of any such training

12  sessions. Plaintiffs' counsel shall be provided with a copy of any trainer's manuals, training

13  videotape and any documents distributed in connection with the training sessions.

14  V.    Tours of Facilities

15      Upon request Defendants shall provide Plaintiffs' counsel within three working days

16  with an up-to-date list of facilities where parole proceedings for class members are held.

17  Defendants shall not deny Plaintiffs' counsel, with or without their experts or consultants,

18  reasonable access to non-CDC facilities where parole proceedings are held. The access

19  shall be sufficient to assess the BPT's compliance with the Injunction. Plaintiffs' counsel

20  shall provide the BPT with notice two weeks in advance of their intent to tour and examine

21  facilities where such proceedings are held.

22      Plaintiffs' counsel shall examine BPT hearing areas in all Disability Placement

23  Program (DPP) designated facilities simultaneously with tours regarding CDC compliance

24  with the *Armstrong v. Davis* settlement agreement. Plaintiffs' counsel shall give notice of

25  intent to tour a designated CDC facility to Defendants at the same time notice is given to

26  CDC.

27

28

VI.    **Disputed Issues**

If Plaintiffs' counsel have reason to believe that Defendants are not complying with the Injunction, they shall notify the BPT in writing. The parties shall attempt to resolve the issue informally. If the issue is not resolved informally, Plaintiffs' counsel may seek relief from the Court by noticed motion.

VII.   **Termination, Modification, and Appeal Rights**

This agreement is without prejudice to the parties' rights to appeal any issue; to seek modification of this agreement from the Court; or to seek termination under the provisions of the Prison Litigation Reform Act, or any other applicable law.

**IT IS SO STIPULATED.**

Dated:    9/25/03

By    _____
      Gregory S. Walston
      Deputy Attorney General
      Attorney for Defendants

Dated:    8/18/03

By    _____
      Michael W. Bien
      Rosen Bien & Asaro
      Attorney for Plaintiffs

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated:    OCT - 2 2003

CLAUDIA WILKEN

_____
CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the City and County of San Francisco, California, and not a party to the within action. My business address is 155 Montgomery Street, 8th Floor, San Francisco, California. On the date and in the manner indicated below, I served the following documents

**STIPULATION AND [PROPOSED] ORDER REGARDING POST-TRIAL DISCOVERY**

on the parties in said action by placing a true copy thereof in an envelope, sealing it, and causing same to be delivered to the following address:

**BY U.S. MAIL**

Gregory S. Walston
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of September, 2003, at San Francisco, California.

Marina Ponomarchuk

# EXHIBIT Y

**FILED**

MAR – 9 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

1  BINGHAM McCUTCHEN
   KAREN KENNARD – 141925
2  KRISTEN A. PALUMBO - 215857
   Three Embarcadero Center
3  San Francisco, California 94111-4067
   Telephone: (415) 393-2000
4
   PRISON LAW OFFICE                ROSEN, BIEN & ASARO, LLP
5  DONALD SPECTER – 83925           MICHAEL W. BIEN – 096891
   General Delivery                 ERNEST GALVAN – 196065
6  San Quentin, California 94964    MARI L. WILLITS – 209612
   Telephone: (415) 457-9144        155 Montgomery Street, 8th Floor
7                                   San Francisco, California 94104
                                    Telephone (415) 433-6830
8
   STEPHEN J. PERRELLO, JR. – 56288  ALEX LANDON – 50957
9  P.O. Box 880738                   2442 Fourth Avenue
   San Diego, California 92618       San Diego, California 92101
10 Telephone: (858) 277-5900         Telephone: (619) 232-6022
11
12 Attorneys for Plaintiffs

**LODGED**

13

NOV 18 2003

14                         UNITED STATES DISTRICT COURT

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
15          EASTERN DISTRICT OF CALIFORNIA
BY_____
      DEPUTY CLERK
16

**RECEIVED**

MAR 11 2004

ROSEN BIEN & ASARO

17 JERRY VALDIVIA, et al.,          No. Civ. S-94-0671 LKK/GGH

18        Plaintiffs,

19                                  **STIPULATED ORDER FOR
                                    PERMANENT INJUNCTIVE RELIEF**
20 v.

21 ARNOLD SCHWARZENEGGER, et al.,

22        Defendants.

23

24

25

26

27

28

1034

# I.    **INTRODUCTION**

1.    This action was filed on May 2, 1994.  Plaintiffs, on behalf of themselves and the class they represent, challenged the constitutionality of parole revocation procedures conducted by the California Board of Prison Terms ("BPT") and the California Department of Corrections ("CDC").

2.    The Court certified this case as a class action by order dated December 1, 1994.  The Plaintiff class consists of the following persons:  (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

3.    The Defendants are state officials responsible for the policies and procedures by which California conducts parole revocation proceedings.

4.    On June 13, 2002, this Court granted partial summary judgment in favor of Plaintiffs, holding that California's unitary parole revocation system violates the due process rights of the Plaintiff class under Morrissey v. Brewer, 408 U.S. 481 (1972), Gagnon v. Scarpelli, 411 U.S. 778 (1973), and related authority.  The Court held that California's parole revocation system violated the due process clause of the Fourteenth Amendment by "allowing a delay of up to forty-five days or more before providing the parolee an opportunity to be heard regarding the reliability of the probable cause determination."  Valdivia v. Davis, 206 F. Supp. 2d 1068, 1078 (E.D. Cal. 2002).

5.    The parties stipulate that this is not a "civil case with respect to prison conditions," as those terms are defined and applied in the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and that therefore this Order is not governed by the PLRA.

6.    The parties hereby stipulate that the Court shall ADJUDGE, DECLARE, AND DECREE as follows:

## II.  PARTIES

7.     The Plaintiff class consists of the following persons:  (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

8.     The Defendants are state officials responsible for the policies and procedures by which California conducts parole revocation proceedings.  Defendant Arnold Schwarzenegger is Governor of the State of California and Chief Executive of the state government.  Defendant Roderick Q. Hickman is the Secretary of the California Youth and Adult Correctional Agency.  Defendant Edward S. Alameida, Jr., is Director of the California Department of Corrections.  Defendant Richard Rimmer is Deputy Director of the California Department of Corrections, Parole and Community Services Division ("P&CSD").  Defendant Carol A. Daly is a Commissioner and Chair of the Board of Prison Terms ("BPT").  Defendants Alfred R. Angele, Sharon Lawin, Booker T. Welch, Jones M. Moore, and Kenneth L. Risen are Commissioners of the BPT.  Defendant Kenneth E. Cater is Chief Deputy Commissioner of the BPT.

## III.  DEFINITIONS

9.     The following terms when used in this Order shall have the meanings specified below:

(a)  "Parolee(s)" shall mean any member of the Plaintiff class.

(b)  "Day(s)" shall mean calendar days, unless otherwise specified.

(c)  "Revocation process" or "revocation proceedings" shall mean all stages of the process by which parole may be revoked, including placement of a parole hold, notice, waivers, service of Return to Custody Assessments, and hearings.

(d)  "Return to Custody Assessments" ("RTCAs") shall mean the practice by which Defendants offer a parolee a specific disposition in return for a waiver of the

1  parolee's right to a preliminary or final revocation hearing, or both.

2      (e) "Parole hold" shall mean any invocation by Defendants of their authority to

3  involuntarily detain a parolee for revocation proceedings under Section 3056 of the

4  California Penal Code. This term shall not apply to the detention of a parolee who has

5  absconded from the State of California until he or she is physically returned to the State

6  of California and is in its custody.

7

8  **IV.    POLICIES, PROCEDURES, FORMS, AND PLANS**

9      10.    For all policies, procedures, forms, and plans developed under this Order,

10  the parties shall use the following process: Defendants shall meet periodically with

11  Plaintiffs' counsel to discuss their development of policies, procedures, forms, and

12  plans. In preparation for such meetings, Defendants will provide Plaintiffs' counsel

13  with copies of the proposed policies, procedures, forms, and plans in draft form no later

14  than 7 days before the meeting. If the parties reach an impasse on any particular issues,

15  they may bring the disputed issues to the Court in a motion to be heard on shortened

16  time.

17      11.    Using the procedure set forth above in Paragraph 10, Defendants shall do

18  the following:

19      (a)    Defendants shall develop and implement sufficiently specific Policies and

20  Procedures that will ensure continuous compliance with all of the requirements of this

21  Order. The Policies and Procedures will provide for implementation of the August 21,

22  2003 Remedial Plan Outline (attached hereto as Exhibit A), as well as the requirements

23  set forth below in Paragraphs 12–24. Defendants shall submit the completed Policies

24  and Procedures to the Court no later than July 1, 2004.

25      (b)    By July 1, 2004, Defendants shall begin implementing the following steps

26  in the parole revocation process, which shall be completely implemented by January 1,

27  2005:

28      (i) Defendants shall appoint counsel for all parolees beginning at the

RTCA stage of the revocation proceeding.  Defendants shall provide an expedited probable cause hearing upon a sufficient offer of proof by appointed counsel that there is a complete defense to all parole violation charges that are the basis of the parole hold.

(ii)  No later than 48 hours after the parole hold, or no later than the next business day if the hold is placed on a weekend or holiday, the parole agent and unit supervisor will confer to determine whether probable cause exists to continue the parole hold, and will document their determination.

(iii)  If the parole hold is continued thereafter, no later than 3 business days after the placement of the hold, the parolee will be served with actual notice of the alleged parole violation, including a short factual summary of the charged conduct and written notice of the parolee's rights regarding the revocation process and timeframes.

(iv)  For all parolees who do not waive or seek a continuance of a final revocation hearing, Defendants shall provide a final revocation hearing on or before the 35th calendar day after the placement of the parole hold.

(c)    By July 1, 2004, Defendants shall serve on counsel for Plaintiffs an assessment of the availability of facilities and a plan to provide hearing space for separate probable cause hearings.

(d)    By July 1, 2005, in addition to the steps listed above, for all parolees who do not waive or seek a continuance of a probable cause hearing, Defendants shall provide a hearing to determine probable cause no later than 10 business days after the parolee has been served with notice of the charges and rights (at the 3rd business day after the placement of the hold).

(e)    Defendants shall complete implementation of the Policies and Procedures by July 1, 2005.

12.    In addition to the provisions of the August 21, 2003 Remedial Plan Outline, the Policies and Procedures shall ensure that the following requirements are met:

13.    At the time of appointment, counsel appointed to represent parolees who have difficulty in communicating or participating in revocation proceedings, shall be

1  informed of the nature of the difficulty, including but not limited to: mental illness,

2  other cognitive or communication impairments, illiteracy, limited English-language

3  proficiency, and the need for a foreign language interpreter. The appointment shall

4  allow counsel adequate time to represent the parolee properly at each stage of the

5  proceeding.

6      14.    At the time of appointment, counsel shall be provided with all non-

7  confidential reports and any other documents that the state intends to rely upon at the

8  probable cause or final revocation hearing. After appointment, if the state learns of

9  additional evidence or documents, and intends to rely on such additional evidence or

10  documents, it shall produce them to counsel as soon as practicable before the hearing.

11      15.    Defendants shall develop and implement policies and procedures for the

12  designation of information as confidential that are consistent with the requirements of

13  due process.

14      16.    Non-confidential portions of parolees' field files shall be available to

15  parolees' counsel unless good cause exists for failure to provide access to such files.

16  Field file information shall be withheld from counsel as confidential only in accordance

17  with the policies and procedures referenced in Paragraph 15.

18      17.    Defendants shall develop standards, guidelines, and training for effective

19  assistance of state appointed counsel in the parole revocation process.

20      18.    Defendants will ensure that parolees receive effective communication

21  throughout the entire revocation process.

22      19.    Defendants will ensure that all BPT and CDC forms provided to parolees

23  are reviewed for accuracy and are simplified to the extent possible through a procedure

24  similar to that used to revise forms in Armstrong v. Davis, C94-2307 CW (N.D. Cal.).

25  This process will include translation of forms to Spanish. Revised forms will be

26  submitted to Plaintiffs' counsel for review prior to finalization, dissemination, or

27  modification.

28      20.    Upon written request, parolees shall be provided access to tapes of parole

revocation hearings.

21. Parolees' counsel shall have the ability to subpoena and present witnesses and evidence to the same extent and under the same terms as the state.

22. At probable cause hearings, parolees shall be allowed to present evidence to defend or mitigate against the charges and proposed disposition. Such evidence shall be presented through documentary evidence or the charged parolee's testimony, either or both of which may include hearsay testimony.

23. Final revocation hearings shall occur within 35 calendar days of the parole hold.

24. The use of hearsay evidence shall be limited by the parolees' confrontation rights in the manner set forth under controlling law as currently stated in <u>United States v. Comito</u>, 177 F.3d 1166 (9th Cir. 1999). The Policies and Procedures shall include guidelines and standards derived from such law.

## V.    STAFFING LEVELS

Defendants shall maintain sufficient staffing levels in the CDC and BPT to meet all of the obligations of this Order.

## VI.    MONITORING

25. The parties shall cooperate so that Plaintiffs' counsel has access to the information reasonably necessary to monitor Defendants' compliance with this Order and the Policies and Procedures adopted in response thereto. Such information shall include but not be limited to: access to documents, tours, observation of parole revocation proceedings, observation of training sessions, interviews of staff, and interviews with parolees. Plaintiffs' counsel may notice depositions under the Federal Rules of Civil Procedure either: (1) if Plaintiffs' counsel are unable to obtain relevant information through interviews and informal document requests, or (2) after notifying Defendants of non-compliance with this Order under Section VII, below. Before

noticing a deposition, Plaintiffs' counsel must consult with opposing counsel about the deposition schedule so that the convenience of counsel, witnesses, and parties may be accommodated, if possible.

26.    The parties shall meet regularly, and at least once every 90 days, to discuss implementation issues.  At least once every 90 days, Defendants shall provide Plaintiffs' counsel with a report on hold-to-hearing time in substantially the same form, and with the same content as that currently used in Defendants' weekly "RSTS" meetings.

27.    The parties shall agree on a mechanism for promptly addressing concerns raised by Plaintiffs' counsel regarding individual class members and emergencies.

## VII.    ENFORCEMENT

28.    The Court shall retain jurisdiction to enforce the terms of this Order.  The Court shall have the power to enforce the terms of this Order through specific performance and all other remedies permitted by law or equity.

29.    If Plaintiffs' counsel believe that Defendants are not complying with any of the acts required by this Order, the Remedial Plans, or Policies and Procedures produced pursuant to it, they shall notify Defendants in writing of the facts supporting their belief. Defendants shall investigate the allegations and respond in writing within 30 days.  If Plaintiffs' counsel are not satisfied with Defendants' response, the parties shall conduct negotiations to resolve the issue(s).  If the parties are unable to resolve the issue(s) satisfactorily, Plaintiffs may move the Court for any relief permitted by law or equity.

## VIII.  ATTORNEY'S FEES AND COSTS

30.    Plaintiffs are the prevailing party in this action.  Plaintiffs' counsel may move for an award of reasonable attorney's fees and costs for obtaining relief for the Plaintiff class pursuant to 42 U.S.C. § 1988 or any other applicable law.  Defendants shall pay Plaintiffs' counsel reasonable attorney's fees for work performed in connection with monitoring and enforcing this Order.  The parties reserve the right to

address at a future date whether 42 U.S.C. § 1997e(d) applies to an award of attorney's fees in this suit.

## IX.   **RESOLUTION OF CLAIMS**

31.     This stipulated order resolves all the claims in this case, except the following, to the extent that they are alleged in the Fifth Amended Complaint, if at all:

(a)     Appeals.  Plaintiffs assert that Defendants' administrative-appeals system for parole-revocation and revocation-extension decisions violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

(b)     Revocation-Extension Proceedings.  Plaintiffs assert that Defendants' policies, procedures, and practices for extending parole revocations based on alleged rules violations while in custody violate the Due Process Clause.

32.     The parties anticipate that these issues will be resolved informally, without need for the Court's intervention.  The parties will inform the Court if this does not occur.


                            **IT IS SO STIPULATED.**


Dated: November 12, 2003                         ROSEN, BIEN & ASARO


                                          By _____
                                             **MICHAEL BIEN**


Dated: November 12, 2003                         PRISON LAW OFFICE


                                          By _____
                                             **DONALD SPECTER**

                                             Attorneys for Plaintiffs

Dated: _November 17_, 2003

BILL LOCKYER, Attorney General
of the State of California,
ROBERT R. ANDERSON, Chief
Assistant Attorney General,
FRANCES T. GRUNDER, Senior
Assistant Attorney General,
JONATHAN L. WOLFF,
Supervising Deputy Attorney
General

By _Thomas S. Patterson_
THOMAS S. PATTERSON,
Deputy Attorney General
Attorneys for Defendants

Dated: _November 17_, 2003

By _Roderick Q. Hickman_
RODERICK Q. HICKMAN
Secretary, Youth and Adult
Correctional Agency

Dated: _November 17_, 2003

By _E. S. Almeida_
EDWARD S. ALAMEIDA, JR.
Director, California Department of
Corrections

Dated: _November 17th_, 2003

By _Carol A. Daly_
CAROL A. DALY
Chair, California Board of Prison
Terms

# ORDER

The Court finds that this is not a "civil case with respect to prison conditions," as those terms are defined and applied in the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and that therefore this Order is not governed by the PLRA. Defendants, their agents, employees, and successors in office are ordered to comply with all the terms stated above.

**IT IS SO ORDERED**

Dated: 3/8 , 2004

LAWRENCE K. KARLTON
Chief Judge, Emeritus

**BILL LOCKYER**
**Attorney General**



**State of California**
**DEPARTMENT OF JUSTICE**



455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5727
Facsimile: (415) 703-5843
E-Mail: Thomas.Patterson@doj.ca.gov

August 20, 2003

The Honorable Lawrence K. Karlton
Chief Judge Emeritus
United States District Court, Eastern District
501 "I" Street
Sacramento, CA 95814

> RECEIVED
> AUG 2 2 2003
> ROSEN BIEN & ASARO

RE:  Jerry Valdivia, et al. v. Gray Davis, et al.
     USDC E.D. Cal., Case No. CIV-S-94-0671 LKK GGH P

Dear Judge Karlton:

The following is Defendants' revised remedial plan in this case. This plan represents a tremendous amount of work by the Defendants and other state officials since the July 23, 2003 order, much of which has been done recently while consulting Plaintiff's counsel.

Defendants continue to work with Plaintiffs' counsel to refine the revised remedial plan in efforts to perfect a viable revocation system that affords appropriate process.

With this in mind, neither Plaintiffs nor Defendants desire the Court to rule immediately on the adequacy of the revised remedial plan. Rather, they hope to resolve the issues soon and, of course, will advise the Court of the outcome of their efforts.

Sincerely,

THOMAS S. PATTERSON
Deputy Attorney General
Attorney for Defendants

For   BILL LOCKYER
      Attorney General

DONALD SPECTER
Prison Law Office
Attorney for Plaintiffs

*Exh A*

# Valdivia Remedial Plan



**Violation Occurs**

**Remedial Sanctions-If Appropriate**
**(COP/SATCU/Alternate Placement)**

**Probable Cause Determination Review/Case**
**Conference regarding PC 3056 Hold**

*Within 48 Hours of*
*Hold Placement*
*(If on Weekend/Hol*
*no later than next*
*Business day)*

• PCH Time starts 1st
day after Notice and
runs for 10 Bus days

**Parolee Noticed of Charges**
**(Activity Report)/**
**Interviewed and Provided Copies**
**(Charges, BPT 1073, Notice of Rights)**

3 Business Days
of Hold Placement

**Violation Report Submitted by Agent of Record**

*1-3 Bus Days

**Violation Report Reviewed by Unit Supervisor**

4 Bus Days

COP/
Remedial
Sanction

**Rev Packet Reviewed by Parole Administrator (PAD)**

**Decentralized Revocation Unit**
**Revocation Packets Received - Data Entry (RSTS)**

**Attorneys Receive Revocation Packets**
**and Consult with Parolee**

5-6 Bus Days

Case
Resolved

**RTC Assessment by DC or PAD**
**Offers Communicated to Attorneys**

6-8 Bus Days

**Expedited Hearing with Offer of Proof**

Accepts/
COP/CTS/
NIC/
Remedial
Sanctions/
Dismiss

**Probable Cause Hearing**
**DC or PAD/Attorney/Parolee**
**Exculpatory/Documentary Evidence Presented**

9-10 Bus Days

**Rejection of offer**
**(Witness Selection/Hearing Location/ADA Review)**

Case
Resolved

**Revocation Hearing**

On or Before
35 Calendar
Days of Hold
Placement

Revised 8/21/03 (1130 Hours)

# VALDIVIA REMEDIAL PLAN POLICY OUTLINE

## VIOLATION OCCURS

There are a myriad of circumstances under which a Parolee can violate his or her conditions of parole. There are approximately 100,000 parole violations referred to the Board of Prison Terms each calendar year.

Currently about 60% of the reported violations are the result of arrests by local law enforcement. Of that 60% arrested by local law enforcement, many are charged in the local jurisdictions for crimes against the state, while others are not charged locally but instead referred to the Board of Prison Terms for administrative disposition.

The remaining 40% are arrests that involve the Parole officer, which may also result in local charges or referral to the Board of Prison Terms for administrative disposition.

The average parole violator's term in prison is five and one half months.

Approximately 66% of the cases referred to the Board of Prison Terms are resolved prior to the revocation hearing. Last year, the Board of Prison Terms conducted approximately 37,000 revocation hearings.

## REMEDIAL SANCTIONS

As part of the overall reform of the revocation process, the Parole and Community Services Division of the Department of Corrections will begin using remedial sanctions/community based treatment placement in January of 2004.

Some of the remedial sanctions/community based treatment programs that will be used are the Substance Abuse Treatment Control Units, Electronic Monitoring, Self-Help Outpatient/aftercare programs, and alternative placement in structured and supervised environments.

1

These remedial sanctions are not considered violations of parole because participation in the remedial sanctions program is voluntary and participation in the remedial sanctions program will not make the parolee presumptively ineligible for discharge at 13 months.

The goal is to reduce the number of returns to prison for violations of parole by up to 10% in 2004 and by up to 30% by 2006.

**IF REMEDIAL SANCTIONS ARE DEEMED INAPPROPRIATE AND A PAROLE HOLD IS PLACED ON THE PAROLEE, A PROBABLE CAUSE DETERMINATION/REVIEW WILL TAKE PLACE WITHIN 48 HOURS OF THE HOLD AND IF THE HOLD IS PLACED ON A WEEKEND OR HOLIDAY, THE PROBABLE CAUSE REVIEW WILL BE CONDUCTED NO LATER THAN THE NEXT BUSINESS DAY FOLLOWING THE HOLD BEING PLACED.**

Although this probable cause review for parolees is not required under any of the current, relevant case law, it is being put in place in an attempt to take a second look at those individuals who have been placed into custody to determine if the "present danger to public safety" concern still exists or if remedial sanctions/community based treatment is possible at this juncture.

As an example, a parolee who was strung out on dope may have "dried out" sufficiently that he or she is no longer a danger to him or herself or the public and may be an appropriate candidate for community based treatment in a structured, supervised program.

Under such a scenario, the parolee would be released to a community based treatment program with the understanding that a specific condition of his or her release is the completion of the program and any other special conditions of parole that the Parole Agent deems appropriate.

Current regulation and case law require any special conditions of parole to have a nexus to the parolees' commitment offense or behavior.

2

**PAROLEE IS GIVEN ACTUAL WRITTEN NOTICE OF CHARGES WITH A SHORT FACTUAL SUMMARY OF THE BEHAVIOR; THE NOTICE OF RIGHTS REGARDING THE REVOCATION PROCESS; AND THE BPT 1073 ADA DETERMINATION IS MADE VIA A FACE TO FACE INTERVIEW WITHIN 3 BUSINESS DAYS OF THE HOLD BEING PLACED.**

If the remedial sanctions are deemed inappropriate, within three business days of the hold being placed, the parolee shall be served actual notice of the charges against him or her accompanied by a short factual summary of the behavior; he or she shall be interviewed; an a ADA determination shall be made; the BPT form 1073 shall be completed, and parolee shall be provided with a written notice of rights regarding the revocation process and time frames. (Hereinafter referred to as "notice.")

The principles of "effective communication" apply to the revocation process. ADA accommodation must be provided for all parolees when necessary. In addition, all forms shall be printed in Spanish and English and a Spanish speaking person shall be available to interpret and explain the forms to the parolee where necessary.

**THE PROBABLE CAUSE HEARING SHALL BE CONDUCTED WITHIN 10 BUSINESS DAYS FOLLOWING THE DATE OF ACTUAL SERVICE OF THE NOTICE OF CHARGES, THE ADA DETERMINATION, AND THE NOTICE OF RIGHTS.**

Within the first 3 days after the parolee has been served with notice, the violation report must be completed and submitted to the Parole Unit supervisor.

On or before the fourth business day, the Unit Supervisor must review the report and: (1) determine if there is sufficient basis for the revocation to go forward; (2) determine if the report is accurate, complete, and contains the correct Title 15 violation sections; and (3) review the report and consider whether or not remedial sanctions/community based treatment is appropriate in lieu of proceeding with referral to the Board of Prison Terms with a recommendation that the parolee be returned to prison.

3

On or before the 4th business day, the revocation packet is reviewed by the Parole Administrator to determine whether or not there is a sufficient basis for the case to move forward and whether or not Remedial Sanctions/Community Based Treatment is appropriate at this juncture.

On or before the 5th business day, the revocation packet is forwarded to the decentralized revocation unit where the parolee is being held.

On or before the 6th business day, the parolee (including non-Armstrong class members) shall be appointed an attorney and the attorney shall be provided with a copy of the revocation packet, which shall contain a signed copy of the notice of charges, notice of revocation of rights, and a completed BPT 1073.

Attorney shall meet with the Parolee, provide the parolee with a copy of the revocation packet, and shall communicate any offer or offers made by the Board of Prison Terms Deputy Commissioner/Parole Administrator prior to the probable cause hearing.

In the event the parolee can make a sufficient offer of proof of a complete defense to the charges the Board of Prison Terms Deputy Commissioner/Parole Administrator, an expedited Probable Cause Hearing with Documentary and/or live testimony shall be scheduled. As an example, if the parole has uncontroverted documentary evidence that he or she was in Santa Rita jail when this violation allegedly occurred in Los Angeles, parolee shall be allowed to present such evidence at an expedited probable cause hearing between the 6th and 8th business day or at the earliest time possible thereafter if parolee is unable to produce such evidence by the 6th to 8th day.

On or before the 6th to 8th business day, a return to custody assessment (an offer) is made by the Deputy Commissioner/Parole Administrator, and the offer shall be communicated to the parolee's attorney.

On or before the 10th business day, a Probable Cause Hearing shall be held with the Deputy Commissioner/Parole Administrator, the parolee, and parolee's attorney.

4

The Deputy Commissioner/Parole Administrator conducting the hearing shall be the same Deputy Commissioner/Parole Administrator who made the return to custody assessment (offer) where practicable.

Parolee shall be permitted to present documentary evidence and hearsay testimony by way of offer of proof through his or her attorney in mitigation or as a partial or complete defense to the charges and/or the proposed disposition.

The Deputy Commissioner/Parole Administrator shall have the complete range of options to resolve the case. (Continue on parole, credit for time served, release from custody with pending charges, remedial sanctions/community based treatment, reduce the offer downward, dismiss some or all of the charges)

The Deputy Commissioner shall not have the authority to adjust the return to custody assessment upward at or during the probable cause hearing.

Parolee shall have the right to waive time as to any of these hearing time constraints with or without good cause.

Attorney shall have the right to a continuance upon the showing of good cause in the absence of his or her client's consent in cases of emergency or illness or upon such other showing that the Deputy Commissioner/Parole Administrator can make a finding of good cause.

There shall be a written record of this proceeding and the basis for any decisions made therein.

It is not necessary that the Probable Cause Hearing be audio/video recorded.

If at the conclusion of the probable cause hearing, the parolee has rejected the offer, parolee shall provide the Deputy Commissioner/Parole Administrator with a list of witnesses he or she would like to call at the revocation hearing. The location of the hearing shall be determined (within 50 miles of the violation), and the Deputy Commissioner/Parole Administrator shall make an independent ADA accommodation determination.

## <u>REVOCATION HEARING</u>

The revocation hearing shall be held at the earliest possible time and in no case later than 35 calendar days after the parole hold has been placed.

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **JERRY VALDIVIA, et al. v. GRAY DAVIS, et al.**

No.:    **USDC E.D. #CIV-S-94-0671 LKK GGH P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>August 21, 2003,</u> I served the attached

## DEFENDANTS' REVISED REMEDIAL PLAN

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, San Francisco, California 94102-7004, addressed as follows:

Michael W. Bien, Esq.
Rosen, Bien & Asaro
155 Montgomery Street, 8ᵗʰ Floor
San Francisco, CA 94104

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

Stephen J. Perrello, Jr.
P.O. Box 880738
San Diego, CA 92168

Alexander L. Landon
Law Offices of Alex Landon
2442 Fourth Avenue
San Diego, CA 92101

Karen Kennard
Kristen A. Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 21, 2003, at San Francisco, California.

| A. ALBANO | _Albano_ |
|-----------|-----------|
| Declarant | Signature |

40006164.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Jerry Valdivia, et al. v. Gray Davis, et al.*

No.:    **USDC, Eastern District of California, Case No. CIV-S-94-0671 LKK GGH P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On November 18, 2003, I served the attached

### STIPULATED ORDER FOR PERMANENT INJUNCTIVE RELIEF

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, P.O. Box 944255, Sacramento, California 94244-2550, addressed as follows:

| | |
|---|---|
| **Karen L. Kennard**<br>**Bingham McCutchen LLP**<br>**Three Embarcadero Center**<br>**San Francisco, CA 94111-4067** | **Alex Landon**<br>**Law Offices of Alex Landon**<br>**2442 Fourth Avenue**<br>**San Diego, CA 92101** |
| **Donald Specter**<br>**Prison Law Office**<br>**General Delivery**<br>**San Quentin, CA 94964** | **Stephen J. Perrello, Jr.**<br>**Law Offices of Stephen J. Perello**<br>**P.O. Box 880738**<br>**San Diego, CA 92168** |
| **Michael W. Bien**<br>**Rosen, Bien & Asaro**<br>**155 Montgomery Street, 8th Floor**<br>**San Francisco, CA 94104** | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 18, 2003, at Sacramento, California.

| | |
|---|---|
| R. Wells | *R Wells* |
| Declarant | Signature |

10025232.wpd

United States District Court
for the
Eastern District of California
March 9, 2004

* * CERTIFICATE OF SERVICE * *

2:94-cv-00671

Valdivias

v.

Schwarzenegger

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  March 9, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Stephen J Perrello Jr          AR/LKK
    Law Office of Stephen J Perrello
    P O Box 880738
    San Diego, CA  92168

    Alexander L Landon
    Law Offices of Alex Landon
    2442 Fourth Avenue
    San Diego, CA  92101

    Karen Kennard
    Bingham McCutchen LLP
    Three Embarcadero Center
    Suite 1800
    San Francisco, CA  94111

    Michael W Bien
    Rosen Bien and Asaro
    155 Montgomery Street
    Eighth Floor
    San Francisco, CA  94104

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA  94964

William Vernon Cashdollar
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Erika C Aljens
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Benjamin Laurence Pavone
Law Office of Benjamin Pavone
7676 Hazard Center Drive
Fifth Floor
San Diego, CA  92108-4503

Thomas Stuart Patterson
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-7004

John T Philipsborn
Law Offices of John T Philipsborn
507 Polk Street
Suite 250
San Francisco, CA  94102

Kristen A Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA  94111-4067

Peter D Nussbaum
Altshuler Berzon Nussbaum Rubin and Demain
177 Post Street
Suite 300
San Francisco, CA  94108

Mark F Adams
San Diego Criminal
Defense Bar Association
962 Fifth Avenue
Suite 214
San Diego, CA  92101

Michael J McCabe
Criminal Defense Lawyers
Club of San Diego
2442 Fourth Avenue
San Diego CA 92101

Jack L. Wagner, Clerk

by: Deputy Clerk

# EXHIBIT Z

LITTLE, BULMAN,
MEDEIROS & WHITNEY, P.C.
*ATTORNEYS*

72 Pine Street
Providence, Rhode Island 02903
(401) 272-8080
Facsimile (401) 521-3555
Email: info@lbmwlaw.com

RECEIVED
FEB 2 5 2002
ROSEN BIEN & ASARO

Christopher H. Little *
John E. Bulman*
Matthew F. Medeiros*
Christopher C. Whitney*
Henry R. Kates*
Fredrika Quinn Little†
Norma P. D'Apolito
Scott K. Pomeroy
Kristen K. Mead*

J. Michael Keating, Jr.
John D. Deacon, Jr.*
*Of Counsel*

*Also admitted in Massachusetts
†Also admitted in Connecticut

February 21, 2002

**VIA AIRBORNE EXPRESS**

Clerk's Office
United States District Court
  for the Eastern District of California
501 I Street
Sacramento, CA  95814

      RE:    **Ralph Coleman, et al. v. Pete Wilson, et al.
              No. Civ. S-90-0520 LKK JFM P**

Dear Sir/Madam:

Please find enclosed for filing in the above-referenced matter an original and three copies of Special Master's Report on the Defendants' Compliance with October 26, 2001 and December 20, 2001 Court Orders.

As you will note from the certificate of service, we are enclosing copies of the filing for Judge Karlton, Magistrate Judge Moulds and Haven Gracey, Staff Attorney to Judge Moulds.  In the past, we have sent copies directly to all three of these individuals and sent to you, as well, an original and two copies.  You indicated to us at the time of an earlier filing, that the two copies we normally filed were distributed to the judges, so we have adjusted our practice by sending you the original and relying on you to distribute the copies to Judge Karlton, Judge Moulds and Ms. Gracey.

If you have any questions about this filing or the distribution of its copies, please call.  Thank you for your courtesy.

Sincerely yours,

*J. Michael Keating, Jr.*

J. Michael Keating, Jr.
Special Master

Enclosures

michael/mastering/cvltrctclknotice.doc

BOSTON OFFICE
The Bulfinch Building  47 Thorndike Street  Cambridge, Massachusetts 02141  (617) 494-8070

high on the monitoring agenda when the team returns to CSP/LAC in mid-March for its next regularly scheduled round of review.

     5.    Measures for Providing Programming Space in Hub

Administrative Segregation Units:  The defendants filed timely a description, attached as Exhibit E, of the present and planned capacity of each of the ten CDC institutions to provide programming space for EOP inmates.  Some background is necessary here to understand this issue.  When the program guide for administrative segregation was negotiated in early 1997, there was some heated discussion over the extent and kind of treatment necessary for seriously mentally disordered inmates in administrative segregation units, places that all participants conceded were not conducive to sound mental health.   The insistence of plaintiffs' counsel that MHSDS caseload inmates not be housed in administrative segregation at all was rejected, but the Administrative Segregation Program Guide emphasized the importance of limiting the time served by MHSDS inmates in administrative segregation.  This meant aggressively identifying severely mentally ill inmates who required inpatient care and placing them in one of CDC's own Mental Health Crisis Bed (MHCB) units or one of the Department of Mental Health's (DMH's) inpatient programs for CDC inmates.  In addition, the disposition of disciplinary charges involving MHSDS inmates, particularly Level-IV inmates, was to be expedited and prioritized; Level-IV inmates, not a risk to others and involved in non-violent infractions, were to be referred to Level-IV EOP programs in general population; and inmates with a pending Secure Housing Unit (SHU) sentence were to be placed in a Psychiatric Services Unit (PSU).  The goal was to minimize the length of stay of seriously mentally disordered inmates in administrative segregation.

Given the emphasis on efforts to shorten length of stays, the treatment required to be provided to MHSDS inmates in administrative segregation units was limited. Newcomers to administrative segregation were to receive a mental health screening; inmates on the caseload were to be monitored daily by psych techs during the week; and case management contacts were to be provided weekly. The basic treatment regimen called for increased monitoring, more regular interdisciplinary treatment team (IDTT) meetings and treatment plan reviews, medication management, individual psychotherapy as needed and crisis intervention when necessary.

The plaintiffs were not happy with this result and protested that the exclusion of severely mentally disordered inmates from administrative segregation was the appropriate remedy. Administrative segregation units, however, serve a variety of functions in the prison environment. They provide protective custody to a segment of the population facing real or perceived danger from enemies or predators, a situation endlessly complicated by the importation into prisons of the ethnic and racial gang structure so prevalent in the community. Administrative segregation serves to separate violently competitive gang members from each other and the general population. Primarily, of course, administrative segregation units provide a place for the isolated confinement of inmates charged with serious and violent rule violations, who are seen as a threat to staff or other inmates and for whom there is no alternative or appropriately secure placement during or after their adjudication. In the complexities of modern prisons, mandatory exclusion of MHSDS inmates from administrative segregation is simply too sweeping a remedy.

9

Shortly after adoption of the Administrative Segregation Program Guide, along with all of the other plans, policies and protocols provisionally approved by the court in mid-1997, it became clear that efforts to limit the length of time served by MHSDS inmates in administrative segregation were not always effective. Early monitoring reviews and the department's own studies documented a population of EOP inmates whose quick removal from administrative segregation defied all of the prescriptions of the program guide. Due most often to the referral to local district attorneys of pending criminal charges associated with serious institutional infractions, some EOP inmates remained in administrative segregation for long periods, occasionally well in excess of a year, awaiting the adjudication or clearing of pending cases.

Recognizing the existence of this small but intractably long-lived population and the relative poverty of the treatment regimen provided for them in the Administrative Segregation Program Guide, the defendants themselves proposed some alterations and additions. First, they decided to congregate EOP inmates with lengthy stays in administrative segregation in regional hub facilities that had mainline EOP programs and, hence, more familiarity with the needs of the EOP population and greater resources for meeting those needs than institutions without an EOP program. They agreed also to provide EOP inmates in administrative segregation with the ten hours weekly of structured therapeutic activities already required for EOP inmates in the general population. They also increased psych tech rounds in all administrative segregation units from five days to seven days a week. All of this required additional allocations of clinical staff, which were provided in budgets for fiscal years 2000-2001 and 2001-2002.

10

The actual delivery of these substantial treatment enhancements has been more difficult than anticipated. It turns out, for example, that the requirement for ten hours weekly of structured therapeutic activities is much harder to meet in administrative segregation than the general population. In the latter, inmates have access to job and educational opportunities; recreational resources are much more readily available; and some communal activities occur regularly. The loss of these alternative sources of potential activities makes ten hours of structured therapeutic activities in administrative segregation a much more challenging goal.

In addition, the physical configuration of administrative segregation units is hostile to group activities. Architecturally, the theme in such units is separation and individualization. Privacy, also, is not a prized value; open space that is easily supervised is the goal. Most administrative segregation units, moreover, are often incredibly noisy. Enclosed interview rooms and quiet, isolated group programming space are just not normal parts of the administrative segregation terrain. Finally, custody and security issues preclude the mingling of groups of administrative segregation inmates without the closest possible custody supervision. All of this complicates enormously the provision of meaningful structured therapeutic activities.

The need, then, is for some space within units for private interviews and some arrangement that will permit group sessions without the constant massive presence of custody staff, which is prohibitively expensive, counter-therapeutic and unsustainable. The solution of the moment appears to be what are euphemistically referred to as "holding cells." These are stand-alone mesh metal cages, which allow fairly free dialogue between their inhabitants and outside clinicians. Placed in some proximity to

11