# EXHIBIT AA

4 8 4 5 poly

RECEIVED

JAN 0 5 1999

ROSEN BIEN & ASARO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.

    Plaintiffs,

    vs.               No. CIV S-90-0520 LKK JFM P

PETE WILSON, et al.,

    Defendants.

### SPECIAL MASTER'S RECOMMENDATIONS ON
### ADMINISTRATIVE SEGREGATION, INVOLUNTARY MEDICATIONS
### AND IDENTIFIER CODING

In mid-June, 1998, in response to the master's request for revisions in the existing reporting schedule, the court directed the filing of the master's recommendations on administrative segregation, the use of involuntary medications (the Keyhea process) and the introduction of a computerized code to identify seriously mentally disordered inmates in the California Department of Corrections (CDC) by the end of the calendar year. This report contains those recommendations.

Administrative Segregation

The delivery of mental health care services in administrative segregation has long been recognized as one of the stiffest challenges to the defendants' creation of a constitutional health care delivery system. Nowhere else in corrections is the tension between the mental health needs of seriously mentally disordered inmates and the custodial need to control inmates' behavior so keenly felt. The master's mid-1997 report on the defendants' provisional plans focused on the two issues of the placement of EOP and 3CMS inmates in administrative segregation and the nature of the treatment provided to EOP and 3CMS inmate/patients, especially those who appeared to be decompensating.

administrative law judge hearing the case. The two excuses are often inter-related, for what the clinician usually wants to avoid is doing all of the substantial preparation necessary to justify its use if there is any chance some lay judge may veto its use.

The reluctance to use involuntary medications when clinically indicated appears to be an institutional phenomenon, rather than a characteristic of individual practitioners. Facilities with significant staff shortages and low caseloads tend to be those where resistance to the Keyhea process is highest. Institutions with heavy caseloads and lots of decompensating inmates tend to use the process regularly and readily. The usage is encouraged by the fact that, in the overwhelming majority of cases, once an inmate is started on involuntary medication, he or she consents to it before the formal procedures kick in.

This problem with the utilization of involuntary medication seems to be a declining one, and one that eventually may be eradicated systemically through an effectively functioning quality assurance process. The difficulty, in any event, is unrelated to the defendants' policies on the matter, which are adequate, but is attributable to their as yet imperfect implementation. The master recommends no changes to the defendants' current policies on the use of involuntary medications.

## Mental Health Identifier Code

This issue arose in the context of the plaintiffs' insistence that the defendants develop a computerized system to identify and track inmates with a history of mental illness, but no present symptoms, who are not included in the active mental health caseload at the time of their entry into CDC. The object of the code was to make sure that the mental health history of such inmates was automatically taken into consideration if they subsequently decompensated and misbehaved.

In early 1997, when this issue arose, the defendants were still developing their computerized coding system. That system has now been finalized and implemented department-wide. It is the source for much of the aggregated data on the department's mental health system that is now generated on a regular basis. The fully realized code, however, does not respond to the plaintiffs' concern. While it does identify anyone who has been included in the CDC caseload and then removed, it does not identify someone who received mental health treatment earlier in the community unless the individual is placed on the CDC mental health caseload. See Exhibit E.

The plaintiffs' focus on the identification of inmates with a pre-CDC history of serious mental disorders was related primarily to the impact such information might have on the disciplinary process. Until mid-1998, as we have seen earlier in this report, the defendants did not consider mental health, past or present, in the adjudication of disciplinary infractions, but only in the imposition of a sentence. Under the new policy, if an inmate charged with a rule infraction behaves bizarrely or exhibits possible mental illness, even if not already on the mental health caseload, he or she must be referred for a mental health assessment, during which any past involvement with mental health care presumably would surface. It has already been said that it is too early to assess the impact of this new process on the handling of disciplinary adjudications of seriously mentally disordered inmates, but its successful implementation should speak to the plaintiffs' concerns.

The master will continue to monitor the defendants' success in making this new approach to the handling of rule infractions involving seriously mentally disordered inmates part of institutional practice. In the meantime, the master suggests no changes to the defendants' current identifier code.

# EXHIBIT E

# HEALTH CARE SERVICES DIVISION
## Inmate Mental Health Identifier System IMHIS

RECEIVED
DEC 3 1 1998

## INTRODUCTION

Health Care Services Division (HCSD) in conjunction with the Information Systems Branch (ISB) has developed the Inmate Mental Health Identifier System (IMHIS). The IMHIS is a subset of the Distributed Data Processing System (DDPS). It is designed to identify an inmate's mental health status (Level of Care) and current housing placement during the interim while the statewide Correctional Management Information System (CMIS) is being developed. It is also designed to provide housing/placement availability information for specific treatment settings to the Health Care Services Division's Population Management Unit to assist in the management of designated mental health beds. It uses the Distributed Data Processing System (DDPS) to track the housing/placement of inmates who are diagnosed with a serious mental disorder.

The IMHIS will ensure that inmates who are identified as requiring mental health treatment are moved as expeditiously as possible to appropriate mental health treatment settings.

The objectives of the IMHIS include:
- To identify inmates who have been diagnosed as requiring mental health treatment;
- To identify inmate mental health treatment placement needs;
- To identify those inmates currently in mental health treatment;
- To identify those inmates who require mental health treatment but are not currently housed/placed appropriately;
- To provide reports describing the mental health treatment status of the inmate population.

The IMHIS system will:
- Provide a rapid method for Mental Health Services to identify inmates that require mental health treatment;
- Provide a method for tracking and perform utilization review for the limited Enhanced Outpatient Beds;
- Provide reports that will identify the percentage of inmates who fall within specified mental health treatment categories.

The IMHIS code is a two character code that shall be entered in the Administrative Determinants daily by Mental Health Services staff. Every inmate who has a diagnosis of a serious mental illness shall be assigned a mental health (MH) identifier to identify their treatment and housing/placement situation.

# REPORTS



Reports generated from the IMHIS in DDPS include the following:

- INMATES HOUSED APPROPRIATELY

- INMATES AWAITING TRANSFER

- INMATES BY LEVEL OF CARE

Each report will prompt the user for a series of inputs. Some will be related to the individual report such as selection criteria and sort options. Others will be related to number of copies to print and which printer to route the report.

# MENTAL HEALTH IDENTIFIER

The Inmate Mental Health Identifier System uses two characters in a single field, creating the Mental Health Identifier Code. Below are the codes and their specific designation:

    **A** - Non-patient
    **B** - Outpatient - Correctional Clinical Case Management System (**CCCMS**)
    **C** - Outpatient - Enhanced Outpatient Program (**EOP**)
    **D** - Inpatient - Mental Health Crisis Beds (**MHCB**)
    **E** - Inpatient - **DMH**
    **F** - Non-patient - Removed from CCCMS placement due to misdiagnosis or no longer a
        medical necessity.

In the first space, the character indicates the inmate's treatment need. In the second space, the character indicates the inmate's current housing or placement. For example:

| Treatment Need (Level of Care) | Housing/Placement |
|---|---|
| B (CCCMS) | B (placement in GP within CCCMS) |

Characters that are different:

| Treatment Need (Level of Care) | Housing/Placement |
|---|---|
| C (EOP) | B (CCCMS) |

translates to a MH identifier code of *C,B* which indicates that the inmate has been determined to require an EOP treatment setting and that the inmate is waiting to be placed in an EOP facility.

Characters that are the same or match:

| Treatment Need (Level of Care) | Housing/Placement |
|---|---|
| C (EOP) | C (EOP) |

translates to a MH identifier code of *C,C* which indicates that the inmate is housed in the appropriate housing and/or treatment location that meets his/her treatment needs.



# EXHIBIT BB

Formatted: Font: 8 pt
Formatted: Right
Deleted: 2/24
Formatted: Font: 8 pt

# Coleman Travel Schedule
## ROUND XVII

### February 2006

Revised 3/15/06

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 WASCO – MJ, TR | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 |  |  |  |  |

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

# Coleman Travel Schedule
## ROUND XVII

### March 2006

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | **1** | **2** | **3** | **4** |
| **5** | **6** | **7** | **8** CCWF – MJ, DK | **9** CCWF – MJ, DK | **10** CCWF – MJ, DK | **11** |
| **12** | **13** | **14** | **15** | **16** SQ Revisit – GM, JM, RP | **17** | **18** |
| **19** ASP – MJ, TR | **20** ASP – MJ, TR | **21** ASP – MJ, TR | **22** ASP – MJ, TR / SCC – DK, GM | **23** PVSP – MJ, TR / SCC – DK, GM | **24** PVSP – MJ, TR / SCC – DK, GM | **25** |
| **26** | **27** | **28** | **29** | **30** | **31** | |

Revised 2/15/06

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Deleted: – 2/24
Formatted: Font: 8 pt
Formatted: Right

Deleted: ¶
Deleted: KVSP – MJ, PN, KH, TR¶
Deleted: KVSP – MJ, PN, KH, TR
Deleted: KVSP – MJ, PN, KH, TR
Deleted: KVSP – MJ, PN, KH, TR

Formatted: Font: 8 pt
Formatted: Right
Deleted: 2/24
Formatted: Font: 8 pt

Revised 3/15/06

# Coleman Travel Schedule
## ROUND XVII
### April 2006

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 1 | 2 | 3<br>CCI – MJ, JM, TR | 4<br>CCI – MJ, JM, TR | 5 | 6<br>CRC – PW, KH | 7<br>CRC – PW, KH |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16<br>PBSP* - PN, JM, MW | 17<br>PBSP* - PN, JM, MW<br>NKSP – MJ, TR | 18<br>RJD* - PN, PW, KH, RP<br>NKSP – MJ, TR | 19<br>RJD* - PN, PW, KH, RP<br>NKSP – MJ, TR | 20<br>RJD* - PN, PW, KH, RP | 21<br>RJD* - PN, PW, KH, RP |
| 22 | 23 | 24 | 25 | 26<br>CIW – PW, KH, MW | 27<br>CIW – PW, KH, MW | 28<br>CIW – PW, KH, MW |
| 29 | 30 | | | | | |

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Revised 2/15/06

Formatted: Font: 8 pt
Formatted: Right
Deleted: – 2/24
Formatted: Font: 8 pt

# Coleman Travel Schedule
## ROUND XVII

### May 2006

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  | 1<br>HDSP – GM, PN, DK | 2<br>HDSP – GM, PN, DK<br>LAC – PW, JM, TR, MW | 3<br>HDSP – GM, PN, DK<br>LAC – PW, JM, TR, MW | 4<br>LAC – PW, JM, TR, MW | 5<br>LAC – PW, JM, TR, MW | 6 |
| 7 | 8<br>COR* – MJ, PN, JM, TR | 9<br>COR* – MJ, PN, JM, TR | 10<br>COR* – MJ, PN, JM, TR | 11<br>COR* – MJ, PN, JM, TR | 12 | 13 |
| 14 | 15<br>CIM – PW, JM, MW | 16<br>CIM – PW, JM, MW<br>MCSP – PN, KH, RP | 17<br>CIM – PW, JM, MW<br>MCSP – PN, KH, RP | 18<br>MCSP – PN, KH, RP | 19 | 20 |
| 21 | 22 | 23<br>VSPW – MJ, DK | 24<br>VSPW – MJ, DK | 25<br>VSPW – MJ, DK | 26 | 27 |
| 28 | 29 | 30 | 31<br>CSATF – PN, JM<br>WASCO – MJ, TR |  |  |  |

*Group Tour

| KH | Kerry Hughes | PN | Paul Nicol |
|---|---|---|---|
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: – 2/24
Formatted: Font: 8 pt

Revised 2/15/06

# Coleman Travel Schedule
## ROUND XVII

### June 2006

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | 1<br>CSATF – PN, JM<br>WASCO – MJ, TR | 2<br>CSATF – PN, JM<br>WASCO – MJ, TR | 3 |
| 4 | 5<br>SVSP – MJ, PN, JM, MW | 6<br>SVSP – MJ, PN, JM, MW | 7<br>SVSP – MJ, PN, JM, MW | 8<br>SVSP – MJ, PN, JM, MW | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 221 | 22 | 23 | 24 |
| 25 | 26<br>SOL – PN, KH, MW | 27<br>SOL – PN, KH, MW | 28<br>SOL – PN, KH, MW | 29<br>DVI – DK, GM | 30<br>DVI – DK, GM | |

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: - 2/24
Formatted: Font: 8 pt

# Coleman Travel Schedule
## ROUND XVII

### July 2006

Revised 3/15/06

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 CMC – MJ, JM | 7 CMC – MJ, JM | 8 |
| 9 | 10 SQ – GM, JM, RP KVSP – MJ, PN, KH, TR | 11 SQ – GM, JM, RP KVSP – MJ, PN, KH, TR | 12 SQ – GM, JM, RP KVSP – MJ, PN, KH, TR | 13 | 14 | 15 |
| 16 | 17 | 18 SAC – PN, KH, JM | 19 SAC – PN, KH, JM | 20 SAC – PN, KH, JM | 21 | 22 |
| 23 | 24 | 25 | 26 CMF– MJ, PN, RP, MW | 27 CMF– MJ, PN, RP, MW | 28 CMF– MJ, PN, RP, MW | 29 |
| 30 | 31 | | | | | |

*Group Tour

| | | | | |
|---|---|---|---|---|
| KH | Kerry Hughes | | PN | Paul Nicoll |
| MJ | Mohamedu Jones | | RP | Ray Patterson |
| DK | Dennis Koson | | TR | Ted Ruggles |
| ML | Matty Lopes | | MW | Melissa Warren |
| JM | Jeff Metzner | | PW | Patricia Williams |
| GM | Ginny Morrison | | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: – 2/24
Formatted: Font: 8 pt

Revised 2/15/06

# Coleman Travel Schedule
## ROUND XVII

**August 2006**

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

**\*Group Tour**

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: ~ 2/24
Formatted: Font: 8 pt

# Coleman Travel Schedule
### ROUND XVII

**September 2006**

Revised 3/15/06

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

**Group Tour**

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: ~ 2/24
Formatted: Font: 8 pt

# *Coleman Travel Schedule*
## ROUND XVII

### October 2006

Revised 2/15/06

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: – 2/24
Formatted: Font: 8 pt

# Coleman Travel Schedule
## ROUND XVII

### November 2006

Revised 2/15/06

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |  |  |

\*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Mathy Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Formatted: Font: 8 pt
Formatted: Right
Deleted: – 2/24
Formatted: Font: 8 pt
Revised 2/15/06

# Coleman Travel Schedule
## ROUND XVII

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

Revised 2/15/06

Formatted: Font: 8 pt
Formatted: Right
Deleted: – 2/24
Formatted: Font: 8 pt

# 284749_v2

# Coleman Travel Schedule
## ROUND XVII

**\*Group Tour**

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

# Coleman Travel Schedule
## ROUND XVII

### July 2006

Revised – 6/26/06

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | | **1** |
| **2** | **3** | **4** | **5** | **6** CMC – MJ, JM | **7** CMC – MJ, JM | **8** |
| **9** | **10** KVSP – MJ, PN, KH, TR | **11** SQ – GM, JM, RP / KVSP – MJ, PN, KH, TR | **12** SQ – GM, JM, RP / KVSP – MJ, PN, KH, TR | **13** SQ – GM, JM, RP / KVSP – MJ, PN, KH, TR | **14** SVSP – MJ, PN, JM, MW - Revisit | **15** |
| **16** | **17** SAC – PN, KH, JM | **18** SAC – PN, KH, JM | **19** SAC – PN, KH, JM | **20** SAC – PN, KH, JM | **21** | **22** |
| **23** | **24** | **25** CMF – MJ, PN, RP, MW | **26** CMF – MJ, PN, RP, MW | **27** CMF – MJ, PN, RP, MW | **28** CMF – MJ, PN, RP, MW | **29** |
| **30** | **31** | | | | | |

Deleted: SQ – GM, JM, RP
Formatted: Left

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamedu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

# Coleman Travel Schedule
## ROUND XVII

### August 2006

Revised — 6/26/06

| | | | | | | 5 |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| | | CIM – PW, JM, MW - Revisit | | | | |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

*Group Tour

| | | | |
|---|---|---|---|
| KH | Kerry Hughes | PN | Paul Nicoll |
| MJ | Mohamadu Jones | RP | Ray Patterson |
| DK | Dennis Koson | TR | Ted Ruggles |
| ML | Matty Lopes | MW | Melissa Warren |
| JM | Jeff Metzner | PW | Patricia Williams |
| GM | Ginny Morrison | | |

# EXHIBIT CC

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

*DIVISION OF CORRECTIONAL HEALTH CARE SERVICES*
P. O. Box 942883
Sacramento, CA  94283-0001



**RECEIVED**

MAY 2 6 2006

**Rosen Bien & Asaro**

May 23, 2006

J. Michael Keating, Jr.                          via:    Lisa Tillman
Office of the Special Master                              Deputy Attorney General
2351 Sussex Lane                                         Department of Justice
Fernandina Beach, FL  32034                              1300 I Street, Suite 125
                                                         P. O. Box 944255
                                                         Sacramento, CA  94244-2550

**RE: INFORMATION REQUESTED, RESPONSE TO JANUARY 19, 1999, COURT ORDER REGARDING STAFF VACANCIES**

Dear Mr. Keating:

Enclosed are the monthly reports for February 2006, reflective of January 2006 data, and responsive to the January 19, 1999, court order regarding staff vacancies, including changes agreed to at the August 7, 2003, All Parties meeting.

1.  Mental Health Services Delivery System (MHSDS) Staffing Allocation and Vacancy History.
2.  MHSDS Hiring Activity Report.  This report shows allocated staff and vacancy rate information for the most recent period available.
3.  Health Care Placement Unit (HCPU) Information Report, Summary and Administrative Segregation Greater than 60 Days.
4.  Mental Health Contract Services and Telemedicine Monthly Report for all disciplines.
5.  California Department of Corrections and Rehabilitation (CDCR) Reception Center (RC) Monthly Report.
6.  Monthly Summary of Mental Health Crisis Bed use by Institution.
7.  Referrals for Transfer to the Department of Mental Health.
8.  Atascadero State Hospital (ASH) Discharges.
9.  Weekly Enhanced Outpatient Program (EOP)/Outpatient Psychiatric Program.
10. The DMH Monthly Report of CDCR Patients in DMH Hospitals – Summary and Penal Code 2684.
11. Suicide Report.
12. Statistics on Contracted Registered Nurse (RN).
13. RC Processing for MHSDS Inmate Patients.
14. Medical Technical Assistant (MTA) Vacancy Report.
15. Allocated Case Manager positions and vacancies for the EOP Administrative Segregation Hub institutions.
16. EOP inmates waiting for transfer to a Psychiatric Services Unit (PSU).

# EXHIBIT DD

SANFORD JAY ROSEN *
MICHAEL W. BIEN •
ANDREA G. ASARO **
ERNEST GALVAN

HOLLY BALDWIN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN ***

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA  94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

( COPY JK

February 8, 2006

Lisa A. Tillman
Deputy Attorney General
1300 I Street
P.O. Box 944255
Sacramento, CA 94244-2550

Michael Stone
CDCR
Legal Affairs Division
P.O. Box 942883
Sacramento, CA 94283

Re:    Coleman v. Schwarzenegger
       Policy Meeting Commitments - January 21, 2006 Meeting
       Our File No. 489-3

Dear Lisa and Michael:

Plaintiffs write regarding the documents, which we agreed to provide during the Policy Meeting on January 21, 2006.  Below is a description of the enclosed documents:

**A.     602 appeals filed by Coleman class members regarding the lack of yard or programming due to over-crowding, lack of custody staffing and/or State of Emergency.**

1.     Director's Level Appeal, Case No. 0502228, November 7, 2005, involving an inmate housed in the CCI SHU, attached at Exhibit A.  This inmate appealed the denial of ten hours of yard a week, alleging that he was only provided with five hours of yard a week. In the decision, the reviewer noted that "due to the great number of walk-alone inmates, there is insufficient time to provide the required exercise time each week." In the Second Level Decision, the reviewer noted that this imbalance was created because of a mission change in the Facility IVB yard, which resulted in more Security Housing units being added, without the provision of more Individual Exercise Modules.  Second Level, Ex. A.  The Director's Level Decision denied the inmate's appeal, concluding that: "Additional exercise yard time will be provided once the number of walk-alone inmates

MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
F COUNSEL
MBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

Lisa A. Tillman
February 8, 2006
Page 2

is within the limits of yard availability". *Id.* In this appeal, the inmate's denial of the required ten hours of yard time was justified because of SHU over-crowding and insufficient planning by the institution.

    2.    <u>Director's Level Appeal Decision, Case No. 0501919, October 31, 2005</u>, involving an inmate housed at Salinas Valley State Prison in Facility "A" SNY yard, attached as Exhibit B. This inmate appealed the denial of adequate yard, dayroom, and showers due to the insufficient staff. At the Second Level, the reviewer noted that "[c]urrently SVSP is under a State of Emergency due to staffing shortages. Frequently the facilities have to modify the recreation activity and programs to facilitate safety and security." Second Level Decision, Ex. B. At the Director's Level, the inmate's appeal was denied, with the reviewer noting that: "No one could deny that staffing shortages is less than ideal situation. Nevertheless, the institution is not in violation of policy while under the State of Emergency." *Id.*

    3.    <u>First Level Response, CSQ-6-05-02918, December 18, 2005</u>, involving an inmate housed at San Quentin in the Adjustment Center, attached as Exhibit C. This inmate filed a 602 appeal regarding the denial of a minimum of ten hours of yard per week. In his appeal the inmate had requested that mental health staff assist him in obtaining this outdoor exercise because of its negative impact on his mental health. In denying his appeal, the reviewer acknowledged the requirement for yard, but noted that "[u]nfortunately, due to institutional staffing levels, it has become necessary to close the exercise yards in the Adjustment Center in an effort to avoid operating at unsafe staffing levels." *Id.* The inmate has appealed this denial to the Second Level.

    4.    <u>602 appeal filed November 26, 2005</u>, involving an inmate housed at Solano State Prison in administrative segregation overflow (Building 9), attached as Exhibit D. This inmate, who has been housed in this unit for more than four months, filed the appeal because he has only been provided with approximately two hours of yard each week because of the insufficient number of walk-alone cages and staffing provided for the additional administrative segregation inmates housed in the facility. We have not received Solano's response to the appeal.

    The responses in these appeals raise serious concerns for plaintiffs' counsel about how CDCR is managing the staffing shortages and overpopulation within the institutions. Has the CDCR declared a "State of Emergency" either system-wide or for specific institutions? Furthermore, if a "State of Emergency" has been declared, has CDCR provided direction to the local institutions about how and which inmate programs to curtail?

    As *Coleman* counsel, we are particularly concerned over the impact of these decisions on class members housed in administrative segregation and security housing units where staffing shortages and over-population impacts most severely on their day-to-day experience. Mentally ill inmates are locked in these units with minimal mental

Lisa A. Tillman
February 8, 2006
Page 3

health services, little property including no televisions or radios, and limited recreational activities. The decision to further limit the activities provided to these inmates is without justification regardless of the staffing shortages or other mismanagement asserted above in these administrative appeals. Plaintiffs' counsel are quite disturbed that in the midst of this "crisis" with no clear plan to address the population expansion and the staffing shortages, the CDCR remains committed to cutting mental health services to inmates housed in the locked units within the CDCR. We urge reconsideration of this ill-advised, dangerous policy decision.

**B.    CSP-Sacramento HUB data compared to Monthly DCHCS data for SAC HUB**

During the CSP-Sacramento 16th Round Monitoring tour, plaintiffs' counsel reviewed documents in the monitoring binders. Within the materials was a document listing the administrative segregation EOP daily population for September 1, 2004 through November 11, 2005. A/S EOP Daily Population, attached as Exhibit E. In addition, during the tour, Dr. Karen Kelly reported that the Hub population had been over census for many months. I was surprised to hear this because I review the monthly DCHCS data on HUB populations and did not recall SAC's Hub population data listed as over census.

When I returned to my office after the monitoring tour, I pulled the monthly DCHCS reports for two months, May 2005 and September 2005, to compare the HUB data reported by the institution with that reported by DCHCS. The results were quite different. For example, the May 2005 DCHCS report lists the average daily census in the SAC Hub as **41.40** patients. Ad Seg EOP Hub Information, May 2005, attached as Exhibit E. The CSP-Sacramento data provided during the monitoring tour reported **52, 63, 65, 67** and **72** patients for each of the weeks in May 2005. *Id.* Likewise, for September 2005, the DCHCS data reports lists the SAC average daily census as **52.90** patients, while the data provided by CSP-Sacramento during the monitoring tour reported **62, 60, 63, 66** Hub patients for each of the weeks in September 2005. *Id.*

This type of discrepancy is quite concerning to plaintiffs' counsel who rely on the monthly data for a picture of the mental health programs and staffing needs within the CDCR. What is the explanation?

**C.    SVPP Discharges for Custody Reasons for Vic Brewer**

Through a separate letter to Vic Brewer, plaintiffs will be providing information regarding inmate-patients who were discharged from SVPP for behavior despite their continuing need for ICF level of care. We will send you and the Special Master a copy of the letter.

Lisa A. Tillman
February 8, 2006
Page 4

     Please feel free to contact us with any questions regarding the materials that we have provided.

                             Sincerely,

                             ROSEN, BIEN & ASARO, LLP

                             By: Jane E. Kahn

JEK:pj

cc:    J. Michael Keating, Jr.
       Matthew A. Lopes, Jr.
       Coleman Co-counsel

Enclosures- 602 Appeals; Hub Data for CSP-Sacramento.

EXHIBIT

A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:    NOV 0 7 2005

In re:    Gibson, P-73991
California Correctional Institution
P.O. Box 1031
Tehachapi, CA 93581

IAB Case No.: 0502228         Local Log No.: CCI 05-1934

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner K. J. Allen. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT:    It is the appellant's position that departmental regulations require that inmates housed in the Administrative Segregation Unit will be given the opportunity for at least ten hours of out of cell exercise each week. He states that the "4B" Security Housing Unit (SHU) inmates at the California Correctional Institution (CCI) are only offered about five hours per week. The appellant requests that he be given an opportunity for a minimum of ten hours per week of out of cell exercise.

II    SECOND LEVEL'S DECISION:    The institution states that yard access for inmates in the SHU is limited by local institution/facility security needs. Due to a great number of walk-alone inmates, there is insufficient time to provide the required exercise time every week. No staff misconduct contributes to this condition. All efforts are made to get all inmates yard access until a new program can be placed on line to assist the shortage. The appeal was denied at the Second Level of Review in that it is currently impossible to guarantee that each inmate will be offered ten hours of yard access each week.

III    DIRECTOR'S LEVEL DECISION:    Appeal is denied.

A.    FINDINGS:    All submitted documentation and supporting arguments of the parties have been considered. The documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the Second Level response.

The tremendous number of inmates on walk-alone status temporarily limits the number of hours of physical exercise available to inmates in the SHU. Such condition is warranted to protect inmates from other inmates. Safety and security remain the highest priorities in this high security unit. Additional exercise time will be provided once the number of walk-alone inmates is within the limits of yard availability.

The appellant is correct that departmental regulations require inmates housed in special housing to receive the opportunity for ten hours of out of cell exercise each week. However, the regulation also states that inmates assigned to special purpose segregation housing will be permitted exercise outside their rooms or cells unless security and safety considerations preclude such activity. Based on the security need at the CCI SHU, relief is unavailable at the Director's Level of Review. The Inmate Appeals Branch, through the Zone Examiner will continue to monitor this situation and the institution's new program designed to alleviate the security problem.

B.    BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3001, 3270, 3271, 3343, 3391

C.    ORDER:    No changes or modifications are required by the institution.

GIBSON, P-73991
CASE NO. 0502228
PAGE 2


This decision exhausts the administrative remedy available to the appellant within CDCR.


N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CCI
       Appeals Coordinator, CCI

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category
1. CCI-05                              1. **1934**    Program
2.                                     2.             Yard Scheduling

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME GIBSON Christopher    NUMBER P-73991    ASSIGNMENT UNASSIGNED/SHU INMATE    UNIT/ROOM NUMBER 4B-6A-203

A. Describe Problem: ACCORDING TO THE CA. CODE OF REGULATIONS TITLE 15 INMATES IN SEGREGATION WILL BE GIVEN THE OPPORTUNITY FOR AT LEAST 10 HOURS OF OUT OF CELL EXCERCISE PER WEEK. 4B-SHU INMATES ARE LUCKY TO GET 1/2 THAT ON A GOOD WEEK.

If you need more space, attach one additional sheet.

B. Action Requested: THAT 4B-SHU INMATES BE GIVEN AN OPPURTUNITY FOR A MINIMUM OF 10 HOURS PER WEEK OF OUT OF CELL EXCERCISE. THANK YOU

Inmate/Parolee Signature: Christopher M. Gibson P-73991    Date Submitted: 06-27-05

C. INFORMAL LEVEL (Date Received: 7-3-04 )

Staff Response: GRANTED - YOU WILL GET A MINIMUM OF 10 HOURS PER WEEK OF out of cell Exercise Time.

Staff Signature: T-EL    Date Returned to Inmate: 7-3-05

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED... I DO NOT GET 10 HOURS A WEEK A SIMPLE CHECK OF THE BUILDINGS "YARD" RECORDS WILL SUBSTANTIATE I DO NOT RECIEVE THE OPPURTUNITY FOR 10 HOURS PER WEEK.

Signature: Christopher M. Gibson P-73991    Date Submitted: 8-5-05

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim.    CDC Appeal Number:

# CALIFORNIA CORRECTIONAL INSTITUTION
## FIRST LEVEL APPEAL RESPONSE

05-1934 *pw*

**DATE:**                    JULY 20, 2005

**NAME / NUMBER:**           Gibson, P-73991    4B-6A-203C

**APPEAL LOG NUMBER:**       CCI-0-05-01934

**INTERVIEWED BY:**          Sergeant W.D. Branham

**APPEAL DECISION:**         DENIED

**APPEAL ISSUE:**            YARD PROGRAM

Appellant claims he is not receiving the minimum allotted yard time.

Appellant requests he be afforded the minimum of "out-of-cell" exercise time.

**APPEAL RESPONSE:** All relevant documents and information have been carefully reviewed and considered. A thorough review has been conducted into the allegations of the Appellant. Correctional Sergeant W. Hollinger conducted the fact-finding inquiry into this appeal.

Per California Code of Regulation Title 15 Section 3343 (h) Exercise States: Inmates assigned to special purpose segregation housing will be permitted a minimum of one hour per day, five days a week of exercise outside their rooms or cells unless security and safety considerations preclude this. When segregation housing units are equipped with their own recreation yard, the yard periods may substitute for other out of cell exercise periods, providing the opportunity for use of the yard is available at least three days a week for a total of not less than 10 hours a week.

Due to the fact that there is limited hours of yard access during the day, and the fact that inmates placed on Walk Alone status are normally considered to have safety and security needs, the time needed to provide out of cell activity 3 days a week or 1 hour, 5 days a week, can not be obtained. Therefore, due to the safety and security considerations of the Walk Alone status inmates, yard activities are restricted.

Staff have made every attempt to utilize this yard time in a fair manner

Staff is currently doing everything possible to ensure appellant is allowed out of cell activities as much as possible consistent with available yard slots. Based on the aforementioned, the appellant's request for a more yard sessions is **DENIED**.

If dissatisfied with this appeal, you may appeal to the Second Level by following the instructions on the back of this appeal form.

05 JUL 27 AM 7:43

CCI - TEHACHAPI
APPEALS OFFICE

05-1934

Gibson, P-73991
CCI-0-05-01934
First level appeal

_____          7-20-5
W. D. Branham                     Date
Second Watch
Ad-Seg Sergeant
Unit IVB


_____          7/21/05
T. Meadors                        Date
Facility Captain
Unit IVB

CCI - TEHACHAPI
APPEALS OFFICE
05 JUL 27 AM 7:43

## CALIFORNIA CORRECTIONAL INSTITUTION
## SECOND LEVEL APPEAL RESPONSE

| | |
|---|---|
| **DATE:** | August 11, 2005 |
| **NAME/CDC NUMBER:** | Gibson P-73991 |
| **APPEAL LOG NUMBER:** | CCI-05-01934 |
| **INTERVIEWED BY:** | N/A *(Interviewed at First level)* |
| **APPEAL DECISION:** | **PARTIALLY GRANTED** |
| **APPEAL ISSUE:** | *PROGRAM* |

Appellant alleges he is not receiving his mandated 10 hours of yard access per week.

Appellant requests that he receive his minimum of 10 hours of yard every week.

**APPEAL RESPONSE:**    All relevant documents and information have been carefully reviewed and considered. A thorough review has been conducted into the allegations of the appellant

In the month of June, appellant did in fact not receive his allotted 10 hours of yard, due to a variety of reasons; one being mandatory training that occurred sporadically throughout the month resulting in yard closures on several of the days in question. The Individual Exercise Modules are set up so that each building, until recently, was assigned 12 modules. On an average week, all inmates in each affected building were given the opportunity to attend three yard sessions a week for an average of 10.5 hours. The mission of the Facility IVB yard has changed in that more Security Housing units are being added. Based on this immediate need for these additional security-housing units, the IEM's are now being shared amongst these building. The modules have now been reduced to eight modules per building with the in house concrete yards being utilized additionally, two days a week. This added inmate exercise load will and has resulted in the inmates in these buildings having less than their mandated amount of yard time offered on a weekly basis. This shortage is only a temporary inconvenience. Staff are currently working on a program that will afford inmates their mandated yard access.

Title 15, Section 3343 (h), does state that inmates housed in these special segregated housing units be offered a minimum of yard three times a week, for at least 10 hours a week, unless safety and security considerations preclude this. Based on the special needs of appellant and other inmates housed in these types of units, safety and security is of the utmost importance. Staff are utilizing all available yard time in an attempt to get all inmates yard access until this new program can be placed on line.

This appeal is **DENIED** in that it is impossible to guarantee that each inmate be offered the above stated yard access every week.

If dissatisfied, appellant may request a Third Level Review by following the instructions on the back of the attached appeal form.

| | |
|---|---|
| M. D. STAINER    8/15/05 | C. A. ROUSTON |
| Associate Warden (A) | Chief Deputy Warden (A) |
| Units IVA/IVB | Units IVA/IVB |

CHRISTOPHER M. GIBSON P-73991
CALIFORNIA CORRECTIONAL INSTITUTION
001-3N0-4B-64-202 LOW
P.O. BOX #1906
TEHACHAPI, CA, 93581-5006

"Legal Mail"

PB METER
7134264

BNI 1.085

U.S. POSTAGE

ATTN: JANE KAHN

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CA.

94104+4105-55 C013

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **OCT 3 1 2005**

In re: Samuelson, H-51427
Salinas Valley State Prison
P.O. Box 1020
Soledad, CA 93960-1020

IAB Case No.: 0501909          Local Log No.: SVSP 05-01771

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Burleson. All submitted documentation and supporting arguments of the parties have been considered.

I   APPELLANT'S ARGUMENT:  It is the appellant's position that Facility "A" Sensitive Needs Yard at Salinas Valley State Prison (SVSP) is being punished for other yard problems. He states that the amount of exercise, shower, and dayroom activities is insufficient. The appellant requests that staffing problems be eliminated, and provides suggested courses of action.

II   SECOND LEVEL'S DECISION:  The reviewer found that the SVSP is presently under a State of Emergency due to staffing shortages. As a result, it has been necessary to implement a Redirection of Staff, and Facility Program Rotation. Every effort is being made to provide the inmate population with the maximum amount of program possible, while maintaining the safety and security of the institution. Inmates housed in Facility "A" are afforded recreation yard every other day according to the tier rotation, in accordance with Operational Procedure #11. The only deviation from this procedure is when there is not a sufficient amount of staffing to safely operate facility programs.

III  DIRECTOR'S LEVEL DECISION:  Appeal is denied.

A.   FINDINGS:  The requirement of safety and security must take precedence over other considerations in the operation of programs and activities of the institution. The documentation and arguments presented are persuasive that the institution has taken necessary actions to provide for the safety and security considerations while providing access for recreational activities for all inmates. No one could deny that the staffing shortages is a less than ideal situation. Nevertheless, the institution is not in violation of policy while under the State of Emergency.

B.   BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3044, 3220, 3270, 3383

C.   ORDER:  No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

*T. Surges*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, SVSP
Appeals Coordinator, SVSP

TUCKER AW CA FACILITY

Case 2:90-cv-00520-KJM-SCR   Document 1836-3   Filed 07/13/06   Page 39 of 62

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region ___ Log No. ___ Category ___
1. SVSPA-05-01771   2. CA1

Ayrs

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

Living Unc1-

NAME SAMUELSON Harold   NUMBER H-51427   ASSIGNMENT NO JOB   UNIT/ROOM NUMBER A-5-229

A. Describe Problem: I SPOKE WITH SGT MOHICA IN THE BEGINNING OF FEB TO WITHDRAW A "GROUP APPEAL 602" ON LACK OF EXERCISE AND SHOWER/DAYROOM ACTIVITIES. HE GAVE HIS PROMISE TO MAKE SURE THE PRISONERS AT SALINAS VALLEY STATE PRISON A-FACILITY, WOULD RECEIVE YARD AND DAYROOM/SHOWERS, SO AS NOT TO PUNISH THE INMATES FOR OTHER YARD PROBLEMS AND LACK OF STAFF AT SALINAS VALLEY STATE PRISON. SGT MOHICA'S PROMISE WAS BREACHED. NOW THE CCPOA UNION AND CDC ADMINISTRATION ARE IN COLLUSION TO DISREGARD AND VIOLATE THE 8TH AND 14TH AMENDMENTS, PROHIBITING

If you need more space, attach one additional sheet. CRUEL AND UNUSUAL PUNISHMENT. EXTENDED LOCKDOWNS ARE CRUEL AND UNUSUAL

B. Action Requested: TO HAVE THE LACK OF STAFF PROBLEM ELIMINATED, BY EITHER CONSOLIDATING ALL SENSITIVE NEEDS FACILITIES INTO ONE PRISON, OR TWO OR THREE, OR WHATEVER IT TAKES. OR TO CLOSE DOWN THE PRISONS THAT ARE UNDERSTAFFED AND TRANSFER THE PRISONERS, THUS REDUCING STAFFING INADEQUACIES

Inmate/Parolee Signature: Harold Lee Samuelson   CCCMS   Date Submitted: 2/28/05

C. INFORMAL LEVEL (Date Received: ___

Staff Response: RET'D MAR 18 2005   REC'D MAR 01 2005

BYPASS

Inmate Appeal Branch AUG 15 2005 RECEIVED

Staff Signature: ___   Date Returned to Inmate: ___

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I SPOKE WITH C/O NOLAN TODAY 3/18/05 WHILE SHE WAS IN A-5-UNIT. SHE SAID SGT MOHICA DOESN'T HAVE THE AUTHORITY TO GRANT SNY A PROGRAM AS HE STATED 2/8/05 IN THE INCLUDED 602   RECD JUL 07 2005

Signature: ___   CCCMS   RECEIVED MAR 22 2005   Date Submitted: 3-18-05
Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim   CDC Appeal Number:

DELIVERED APR 12 2005   RECD APR 18 2005   DUPLICATE   Inf C/tr/ 1/25/05

California Department of Corrections

Salinas Valley State Prison

# APPEAL – FIRST LEVEL REVIEW



**DATE:** 6/07/05

**NAME & CDC NUMBER:** Samuelson (H-57427)

**APPEAL LOG NUMBER:** SVSP-A-05-01771

**APPEAL DECISION:** Denied

**APPEAL ISSUE:** Program Modified (Living Conditions)

**SUMMARY OF APPEAL:** Appellant request to have the lack of staff problem eliminated by either consolidating all Sensitive Needs Facilities into one prison, or two or three or what ever it takes. The appellant further suggest that CDC close down the prisons that are under staffed and transfer the prisoners, thus reducing staffing inadequacies.

**SUMMARY OF INVESTIGATION:** On 6/7/05 Inmate Samuelson was interviewed concerning this appeal. Inmate Samuelson stated he could not understand why Salinas Valley State Prison could not establish a normal program. Inmate Samuelson was informed that due to the severe staffing shortage at Salinas Valley State Prison, it was necessary to implement a Redirection of Staff, and Facility Program Rotation. Inmate Samuelson was further informed that the implementation of such program was to maintain safety and security of the institution, and to make every effort to provide as much program on all facilities on a rotation basis.

**APPEAL RESPONSE:** After reviewing your appeal at the First Level of Review. All submitted documentation and supporting arguments have been considered. Additionally, a thorough examination has been conducted regarding the claim presented by you and evaluated in accordance with Salinas Valley State Prison's Operational Procedures, the California Code of Regulations, and the Departmental Operations Manual. Your appeal is being denied, although every effort is being made to provide the inmate population with the maximum amount of program possible, while keeping in mind the safety and security of all staff and inmates.


R. Mojica
Facility A Sgt.
Salinas Valley State Prison

A. Tucker
Correctional Administrator, Complex I
Salinas Valley State Prison

State of California                                                    Department of Corrections & Rehabilitation

# Memorandum

**Date:**    July 20, 2005

**To:**      Inmate Samuelson, H-51427
             Salinas Valley State Prison

**Subject:**  **SECOND LEVEL APPEAL RESPONSE LOG NUMBER-SVSP-A-05-01771.**

<u>ISSUE:</u>

Appellant alleges that inmates on Facility A Sensitive Needs Yard are not getting enough exercise time or shower and dayroom activities due to lack of staff.

Appellant requests on appeal that the staffing problem be eliminated.

<u>INTERVIEWED BY</u>: R. Mojica, Correctional Sergeant

<u>REGULATIONS</u>: The rules governing this issue are:

    CCR 3270.  General Policy.
    CCR 3383.  State of Emergency.
    Salinas Valley State Prison (SVSP) Operational Procedure (OP) 11.
    Complex I Inmate Program

<u>SUMMARY OF INVESTIGATION:</u>

The First Level of Review (FLR) was completed on 06-07-2005. T. Krenke, Correctional Lieutenant was assigned to investigate this appeal at the Second Level of Review. All submitted documentation and supporting arguments have been considered. Additionally, a thorough examination has been conducted regarding the claim presented, and evaluated in accordance with SVSP OP; the California Code of Regulations (CCR); and the Departmental Operations Manual (DOM). The assigned staff member reviewed this appeal, the FLR, and the issues contained therein.

Currently SVSP is under a State of Emergency due to staffing shortages. Frequently the facilities have to modify recreation activity and programs to facilitate safety and security. Safety and security is paramount and will always be put first and foremost when determining the amount of inmate programs that will be afforded during critical times when staffing is minimal. Inmates housed in Facility A are afforded recreation yard every other day according to the tier rotation in accordance with SVSP Operational Procedure #11. The only deviation from this Procedure is when there is not a sufficient amount of staffing to safely operate facility programs.

SAMUELSON, H-51427
CASE NO. SVSP-A-05-01771
PAGE 2 of 2

Facility A is in compliance with the CCR Title 15 and SVSP Operational
Procedure 11. Facility A will continue to provide inmate activities pursuant to OP
#11 so long as it is safe for staff and inmates.

<u>DECISION:</u> The appeal is Denied

The appellant is advised that this issue may be submitted for a Director's Level
of Review if desired.


L. E. SCRIBNER
Chief Deputy Warden
Salinas Valley State Prison

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

DEPARTMENT OF CORRECTIONS

| ☐ ...LEY STATE PRISON | EFFECTIVE DATE OF PLAN<br>**August 4, 2005** | PRECIPITATING INCIDENT LOG NUMBER<br>SVP-FC8-05-07-0458 |
|---|---|---|

| ☐ ...RMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| | ☐ INITIAL | ☒ UPDATE | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

**AREA AFFECTED**
- ☒ INSTITUTION
- ☒ FACILITY: A, B, C # N (exclude EOP)
- ☐ HOUSING UNIT: _____
- ☐ VOCATION: _____
- ☐ EDUCATION: _____
- ☐ OTHER: _____

**INMATES AFFECTED**
- ☒ ALL LEVEL IV INMATES
- ☐ BLACK
- ☐ WHITE    Total Affected: 4018 Inmates
- ☐ HISPANIC
- ☐ OTHER
- ☐ _____

**REASON**
- ☐ BATTERY
- ☐ DEATH
- ☐ RIOT / DISTURBANCE
- ☐ GROUPING
- ☒ OTHER: Attempted Murder of Peace Officers

**MOVEMENT**
- ☐ NORMAL
- ☒ ESCORT ALL MOVEMENT IN RESTRAINTS, EXCEPT EOP INMATES
- ☒ UNCLOTHED BODY SEARCH PRIOR TO ESCORT
- ☐ CONTROLLED MOVEMENT
- ☒ OTHER: WANDED PRIOR TO ESCORT

**WORKERS**
- ☒ CRITICAL WORKERS ONLY per Correctional Administrator Approval (Dairy workers approved)
- ☐ CULINARY
- ☐ CLERKS
- ☐ VOCATION/EDUCATION
- ☐ CANTEEN
- ☐ CLOTHING ROOM
- ☐ RESTRICTED WORK PROGRAM
- ☐ PORTERS
- ☒ NO WHITE INMATE WORKERS

**DAYROOM**
- ☐ NORMAL
- ☒ NO DAYROOM ACTIVITIES IV YARDS
- ☐ MODIFIED: _____

**RECREATION**
- ☐ NORMAL
- ☒ NO REC. ACTIVITIES IV YARDS.
- ☐ MODIFIED: _____

**FEEDING**
- ☐ NORMAL
- ☒ CELL FEEDING
- ☐ CONTROLLED FEEDING IN DINING ROOM
  - ☐ HOUSING UNIT/DORM AT A TIME
  - ☐ DORM POD AT A TIME
  - ☐ TIER AT A TIME
  - ☐ HOUSING UNIT SECTION AT A TIME
- ☐ SACK MEAL BREAKFAST
- ☒ SACK MEAL LUNCH
- ☐ SACK MEAL DINNER

**SHOWERS**
- ☐ NORMAL
- ☒ ESCORTED IN RESTRAINTS, EXCEPT EOP
- ☐ ONE INMATE PER SHOWER – OWN TIER
- ☒ CELL PARTNERS TOGETHER – OWN TIER
- ☐ DORM SHOWERING BY GROUP
- ☐ CRITICAL WORKERS ONLY
- ☐ NO SHOWERS

**CANTEEN**
- ☐ NORMAL
- ☒ NO CANTEEN
- ☐ MODIFIED: _____

**PACKAGES**
- ☐ NORMAL
- ☒ NO PACKAGES
- ☐ MODIFIED: _____

**DUCATS**
- ☐ ALL DUCATS HONORED
- ☐ MEDICAL DUCATS ONLY
- ☐ CLASSIFICATION DUCATS
- ☒ PRIORITY DUCATS ONLY

**MEDICAL**
- ☐ NORMAL MEDICAL PROGRAM
- ☒ PRIORITY DUCATS ONLY
- ☒ MTA CONDUCT ROUNDS IN UNITS
- ☐ INMATES ESCORTED TO SICK CALL
- ☐ EMERGENCY MEDICAL ONLY
- ☐ OTHER: _____

**PHONE CALLS**
- ☐ NORMAL
- ☒ NO PHONE CALLS
- ☐ MODIFIED: _____

**VISITING**
- ☐ NORMAL VISITING
- ☐ NON-CONTACT ONLY
- ☐ NO VISITING
- ☒ OTHER: Facility E normal visiting. EOP, CTC Inpatient, DMH, and Facility B Normal Visiting, escorted in restraints.

**LEGAL LIBRARY**
- ☐ NORMAL
- ☒ APPROVED COURT DEADLINES PAGING

**RELIGIOUS SERVICES**
- ☐ NORMAL
- ☐ NO RELIGIOUS SERVICES
- ☒ MODIFIED: I/Ms allowed to worship in cells.

**REMARKS:** Due to a serious assault on Peace Officers on July 14, 2005, Facilities A (including A Gym), B, C, and D are retained on Lockdown pending threat assessment. Any Level IV inmate to be removed from a cell must submit to an unclothed body search and be placed in handcuffs prior to exiting the cell. In addition, the inmate must be wanded prior to escort. Facility 'B' is Normal Program. Facility 'A' Gym – off bunk status. CTC in patient and DMH on Normal Program. Facility E EOP, CTC Inpatient, DMH, and Facility B, Normal Visiting escorted to and from visiting in restraints.

| PREPARED BY:<br>M.P. Moore, Custody Captain | DATE<br>8/04/05 | NAME / SIGNATURE (WARDEN)<br>M. S. EVANS, WARDEN (A) | DATE<br>B-4-05 |
|---|---|---|---|

SEARCHS COMPLETED FOR WEAPONS IN ALL UNITS 9/1/05
INTERVIEWS COMPLETED 9/4/05 IN ALL BUILDINGS
SO WHY ARE WE STILL LOCKED DOWN ON A-FACILITY, AS OF 9/10/05 ??
THERE IS NO PENALOGICAL ... FOR THIS ENTIRE LOCKDOWN. JUST HARRASSMENT

California Department of Corrections                                    Salinas Valley State Prison

# M E M O R A N D U M                    RECEIVED

RECEIVED

APR 20 2005
FACILITY "A" CAPTAIN

Date: 4-18

APR 2 0 2005

To: CA1

ASSOC. WARDEN
COMPLEX 1

**SUBJECT:** Appeal Log No. _____, Inmate Simuelson

The attached appeal is being returned to your unit for correction as noted below. *Please* correct and return to the Appeals Office. **Thank you.**

☐ California Code of Regulations, Section 3084.5(f) indicates a personal interview shall be conducted with the inmate at the First Level of review. The response does not indicate that a personal interview conducted.

☐ The response indicates an investigation of the issue(s) was conducted. However, there is no reference as to who was interviewed, the results of the investigation, or references used to support the decision.

☐ The response indicates the appeal was granted or partially granted. However, the response does not explain what was actually granted or how the grant was fulfilled.

☐ The response does not address the issue(s) raised by the inmate.

☐ When an appeal is granted, the reviewer is responsible for ensuring that the granted action is fulfilled. The response should speak to how the granted action was fulfilled.

☐ Staff Complaints require that the charge be stated and include an investigation of the charge. Direct reference by name to persons interviewed and an explanation of how the conclusion was reached is necessary.

☐ Staff have indicated that the inmate withdrew the appeal. However, the inmate must write on the appeal that he "withdraws the appeal" and include his signature. This appeal is missing the inmate's statement and signature. Please obtain the inmate's signature and statement.

☒ The appellant claims that there was coercion to withdraw the appeal, that he did not fail to cooperate, or that the appeal was withdrawn because the issues were incorrectly thought to have been resolved, and wishes to continue the appeal. Please investigate and take appropriate action deemed necessary.

☐ Other_____

Sgt Mojica

**S. GOMEZ**
Appeals Coordinator

4/27/05 per conversation w/ Vaiq
return to Appeals for Level assign
next

A. Rodi___

# INMATE/PAROLEE APPEALS SCREENING FORM

INMATE: _Samuelson_   CDC #: _H51427_   CDC HOUSING: _A5-229_

[ ] **2nd Notice** _____   [ ] **3rd Notice** _____   [ ] **4th Notice** _____

### YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S)

[ ] 1. The action or decision being appealed is not within the jurisdiction of the department or this institution.

[ ] 2. You have submitted a duplicate appeal on the same issue. Check one:
   [ ] Your first appeal was screened out on _____ for _____ Appeal # ___  **REC'D JUL 0 7 2005**
   [ ] Your first appeal is currently under review at the _____ level. Appeal # _____
   [ ] Your first appeal has been completed at the _____ level. Appeal # _____

[ ] 3. You are appealing an action:
   [ ] not yet taken  [ ] which has been completed  [ ] Other: _____  [ ] already Granted
   [ ] not taken by CDC  [ ] sought under sentencing court  [ ] under BPT

[ ] 4. You have not adequately completed the Inmate/Parolee form or attached the proper documents.
   **Please attach the following items or explain why they are not available and send what you have:**

| | | | |
|---|---|---|---|
| [ ] | CDC 115/115A Hearing Officer's Results | [ ] | CDC 128C Medical Chrono |
| [ ] | CDC 115 with IE/DA information | [ ] | CDC 1819 Denied Publications |
| [ ] | Supplemental Reports to CDC 115 | [ ] | Board of Control Claim/Release |
| [ ] | CDC 128G UCC/ICC/ICC-ASU/CSR | [ ] CDC 128 A  [ ] CDC 128 B | |
| [ ] | CDC 1030 Confidential Disclosure | [ ] | Property Inventory Receipt |
| [ ] | CDC 114D Lockup Order | [ ] | CDC 143 Property Transfer Receipt |
| [ ] | CDC 839/840 Class/Reclass Score Sheet | [ ] | Cell Search Slip |
| [ ] | CDC 7219 Medical Report | [ ] | Receipts |
| [ ] | CDC 7362 Health Care Request | [ ] | Qtr. Pkg. Inventory Slip |
| [ ] | Lab Results Sheet | [ ] | Failed to Complete Section _____ |
| [ ] | Trust Account Statement | [ ] | Sign & Date Section _____ |
| [ ] | Emergency Not Warranted-CCR 3084.7 | [ ] | Other: SEE COMMENTS BELOW |

[ ] 5. The appeal exceeds 15 days working days time limit, and the inmate has failed too offer a credible explanation as to why he could/did not submit appeal within the time limit, CCR 3084.2(c), 3084.3(c)(6), & 3084.5(c)(effect. Nov. 96)

[X] 6. This appeal is [X]unclear  [ ]contains more than 1 additional page  [ ]contains more than 1 issue
   [ ]unreadable-rewrite in Blue/Black ink – this is a legal document & pencil does not copy well

[ ] 7. ABUSE WARNING[ ] you may submit only 1 appeal per seven (7) day period. [ ] Profanity/Obscene language.

[ ] 8. You may not submit an appeal on behalf of another inmate.

[ ] 9. Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

### PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602 (IF APPLICABLE)

Comments: _SEE ATTACHED EXHIBIT FOR ACTUAL PROGRAM AVAILABLE ON A-FACILITY. PACKAGES THAT WERE SENT TO ME ARE NOW BEING DELAYED DUE TO THIS 602. NO REPRISALS ARE SUPPOSED TO BE TAKEN. YET YOU KEEP PASSING THIS 602 UP, AND HARASSING ME (CCCMS CO-PATIENT)_

S. Gomez, CCII (A)   Date: _6/28/05_
Appeals Coordinator

This screening action may not be appealed unless you allege the above reason is inaccurate. In such a case, please return this form to the Appeals Coordinator with the necessary information. CCR Title 15, Section 3084.6 (c )

## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

SCREENING FORM

DATE: _____

CDC #: B 51421    CDC HOUSING: A5 229

2nd _____ 3rd _____ 4th _____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

[ ] The action or decision being appealed is not within the jurisdiction of the department or this institution.

[ ] You have submitted a duplicate appeal on the same issue. Check one:

    [ ] Your first appeal was screened out on _____ for _____ Appeal # _____

    [X] Your first appeal is currently under review at the _____ level. Appeal # W_____

    [ ] Your first appeal has been completed at the _____ W4 _____ level. Appeal # _____

[ ] You are appealing an action:

    [ ] not yet taken      [ ] which has been completed      [ ] Other: _____

[ ] You have not adequately completed the Inmate/Parolee form or attached the proper documents.

Please attach the following items or explain why they are not available and send what you have:

| | | | |
|---|---|---|---|
| [ ] | CDC 115/Hearing Officer's Results | [ ] | CDC 128C Medical Chrono |
| [ ] | CDC 115 with IE/DA information | [ ] | CDC 1819 Denied Publications |
| [ ] | Supplemental Reports to CDC 115 | [ ] | Board of Control Claim/Release |
| [ ] | CDC 128G UCC/ ICC / ICC-ASU/CSR | [ ] | CDC 128 A  [ ]  CDC 128 B |
| [ ] | CDC 1030 Confidential Disclosure | [ ] | Property Inventory Receipt |
| [ ] | CDC 114D Lockup Order | [ ] | CDC 143 Property Transfer Receipt |
| [ ] | CDC 128G Ad/Seg ICC | [ ] | Cell Search Slip |
| [ ] | CDC 128G CSR Endorsement Chrono | [ ] | Receipts |
| [ ] | CDC 839/840 Class/Reclass Score Sheet | [ ] | Qtr. Pkg. Inventory Slip |
| [ ] | CDC 7219 Medical Report | [ ] | Failed to Complete Section _____ |
| [ ] | CDC 7362 Health Care Request | [ ] | Sign & Date Section |
| [ ] | Lab Results Sheet | [ ] | Emergency Not Warranted-CCR 3084.7 |
| [ ] | Trust Account Statement | [ ] | Other: SEE COMMENTS BELOW |

[ ] The appeal exceeds 15 days working days time limit, and the inmate has failed too offer a credible explanation as to why he could/did not submit appeal within the time limit, CCR 3084.2(c), 3084.3(c)(6), & 3084.5(c)(eff. Nov. 96)

[ ] This appeal is [ ] unclear   [ ] contains more than 1 additional page   [ ] contains more than 1 issue

[ ] unreadable-rewrite in ink – this is a legal document & pencil/red ink do not copy well

ABUSE WARNING [ ] you may submit only 1 appeal per seven (7) day period. ( ) Profanity/Obscene language.

You may not submit an appeal on behalf of another inmate.

[ ] Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

## PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602 (IF APPLICABLE)

Comments: _SEE BACK, 602 YOU ARE SPEAKING OF WAS WITHDRAWN, DUE TO SGT MOTTICA'S WORD WE WOULD PROGRAM WITHOUT HARRASSMENT AND OTHER YARDS (MAINLINE GENERAL POPULATION) PROBLEMS AFFECTING SNY BY DISCRIMINATING US WITH THEM. YONOCAN SAYS "HE CAN'T DO THAT"!_

_____nez.

Appeals Coordinator (A)    Date: 3/2/05

RECEIVED MAR 2 2 2005

If action may not be appealed unless you allege the above reason is inaccurate. In such a case, please return this form to the Appeals Coordinator with necessary information

## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

RECD APR 1 8 2005





# CDC-602 INMATE APPEAL RESPONSE

## FIRST LEVEL RESPONSE

| | |
|---|---|
| DATE: | December 18, 2005 |
| INMATE NAME: | SCULLY |
| INMATE CDC#: | C-46081 |
| CDC-602-LOG#: | CSQ-6-05-02918 |
| DATE INTERVIEWED: | December 18, 2005 |
| APPEAL DECISION: | DENIED |

## APPEAL ISSUE:

You state that the Adjustment Center Counselor and custody staff are violating your right to the minimum amount of outdoor exercise yard. You further state that Mental Health must enforce your right to yard.

In your appeal you request that the Mental Health staff enforce your right to the minimum outdoor exercise required for mental well being.

## APPEAL RESPONSE:

Your appeal is Denied. Recreational Yard in the Adjustment Center is governed by the Thompson Consent Decree. The Thompson Consent Decree specifically states that inmates housed within a unit, which also houses non-condemned inmates, must be provided a minimum of yard three (3) days per week, with a total of three (3) hours, for inmates assigned to walk alone yards.

On December 18, 2005, I conducted an interview with you and explained the required minimum yard (Out of Cell Activity) as indicated in Thompson. I also noted that during periods when the unit is fully staffed, the minimum requirements are exceeded on a consistent basis.

Unfortunately, due to institutional staffing levels, it has become necessary to close the exercise yards in the Adjustment Center in an effort to avoid operating at unsafe staffing levels. Immediately following the institutions ability to operate with adequate staff, the yard program is returned to normal.

Based on the above information, your appeal is DENIED at the FIRST LEVEL.


**D. L. DORSEY**
**Correctional Lieutenant**
**Adjustment Center**

12/18/05
Date

Noted
_Drany_
12/20/05

## DECLARATION OF SERVICE BY U.S. MAIL

Re: Inmate Appeal Form and Attachments One and Two

I, Margot Garey, declare that I am over 18 years of age, and not a party to the within cause. On January 5, 2006, I served true copies of the attached:

**Inmate Appeal Form and Attachments One and Two,**

on each of the following, by placing the attached in envelopes addressed (respectively) as follows:

Appeals Coordinator
Decanay or Jeppeson
San Quentin State Prison
San Quentin, CA 94964

Chief Medical Officer
Mental Health Department
San Quentin State Prison
San Quentin, CA 94964

The Honorable Thelton Henderson
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

The envelope was sealed and deposited in the United States Mail at San Francisco, California, on January 6, 2006, with the postage paid.

I declare under penalty that the foregoing is true and correct and that this declaration was signed on January 6, 2006, at San Francisco, California.

_____
DECLARANT

INMATE/PAROLEE
APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No    2918    Category    9

1. _____    1. _____
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME Robert Scully    NUMBER C-46081    ASSIGNMENT S.Q.S.P    UNIT/ROOM NUMBER 3·AC-10

A. Describe Problem: SYCHOLOGIST FRIEDNAN, A MEMBER OF THE PRISON MENTAL HEALTH STAFF IS DENYING ME BASIC HUMAN RIGHTS TO OUTDOOR EXERCISE FOR MENTAL WELLBEING BY REFUSING TO DO ANYTHING TO FORCE PRISON OFFICIALS TO STOP DEPRIVING ME OF THE MINIMUM AMOUNT OF OUTDOOR EXERCISE REQUIRED BY LAW; THAT IS, 1 HOUR PER DAY NO LESS THAN 5 DAYS PER WEEK, OR 3 DAYS PER WEEK FOR NO LESS THAN A TOTAL OF TEN HOURS. FRIEDNAN KNOWS THAT I [FOR THE PAST 8 MONTHS] WAS ALLOWED ONLY

If you need more space, attach one additional sheet. 2½ HOURS 1 DAY PER WEEK OF OUTDOOR EXERCISE AND OFTEN NOT EVEN THAT, AND AS A DIRECT

B. Action Requested: THAT SYCHOLOGIST FRIEDNAN AND    CONTINUED ON ATTACHMENT 1 THE MENTAL HEALTH STAFF WORKING AT THE PRISON ENFORCE MY RIGHT TO THE MINIMUM OUTDOOR EXERCISE REQUIRED FOR MENTAL WELLBEING BY SPAIN, SUPRA. AND REPORT THE DEPRIVATION OF IT TO THE SPAIN COURT. I.E, (9TH. CIR)

Inmate/Parolee Signature: Robert Scully    Date Submitted: 10/2/05

C. INFORMAL LEVEL (Date Received: 10/27/05

Staff Response: The Mental Health Staff does not decide your yard time. Please Refer to the ICC or to your Correctional Counselor, OR to the Custody staff to resolve your yard issue. Thank you.

Staff Signature: On Van Valkenburg    Date Returned to Inmate: 10/27/05

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED: THE A.C. COUNSELOR(S) AND CUSTODY "STAFF" ARE VIOLATING MY RIGHT TO THE MINIMUM AMOUNT OF OUT- DOOR EXERCISE AND REFUSE TO PROVIDE ME SAID MIN- IMUM. NOW MENTAL HEALTH "STAFF" MUST ENFORCE MY SAID RIGHT AS ITS VIOLATION IS DESTROYING MY MENTAL HEALTH!

Signature: Robert Scully    Date Submitted: 11/10/05

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

NOV 1 6 REC'D

First Level ☐ Granted ☐ P. Granted ☑ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **NOV 1 6 2005**    Due Date **JAN 0 2 2006**

Interviewed by: _SEE ATTACHED_ _____

_____

_____

_____

_____

_____

Staff Signature: _____    Title: CORRECTIONAL LIEUTENANT    Date Completed: 12/9/05

Division Head Approved

Signature: _____    Title: AW II    Returned

Date to Inmate: 12/14/05

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

MY MENTAL AND PHYSICAL HEALTH CONTINUES TO BE
DESTROYED BY THE MEDICAL AND CUSTODY OFFICERS/STAFF
BY THE REFUSAL TO RECOGNIZE THEIR RESPONSIBILITY AND
DUTY MORALLY, ETHICALLY AND BY LAW TO ENFORCE AND PROVIDE MY
RIGHT TO BASIC HEALTH CARE IN THE FORM OF THE MINIMUM (CONTINUED

Signature: _____    Date Submitted: _____    ON ATTACH-MENT 2)

Second Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____    Due Date: _____

☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)    Date: _____

# ATTACHMENT 1

RESULT OF BEING DEPRIVED SAID MINIMUM OUTDOOR EXERCISE MY MENTAL WELLBEING IS ~~XXX~~ SUFFERRING CRUEL AND UNUSUAL TREATMENT. <u>AND THAT SAID DEPRIVATION AND SUFFERRING IS NOW CONTINUING</u>. ↓ FRIEDMAN KNOWS ALL THIS. BECAUSE HE TOURS THE ADJUSTMENT CENTER EVERYDAY AND I TELL HIM THIS EVERYDAY AND I TELL HIM EXACTLY WHAT THE LAW IS REQUIRING OUTDOOR EXERCISE FOR SAID MINIMUM AND THAT THE LAW SAYS THE SAID MINIMUM IS FOR MENTAL WELLBEING AND THAT THE DEPRIVATION OF SAID MINIMUM INFLICTS CRUEL AND UNUSUAL PUNISHMENT. <u>SPAIN V. PROCUNIER</u> (9th. cir.) 600 F.2d 189., WHICH IS SPECIFIC TO THE ADJUSTMENT CENTER. THE MENTAL HEALTH STAFF HAVE A DUTY TO ENFORCE MY RIGHT TO SAID MINIMUM OUTDOOR EXERCISE FOR MENTAL WELLBEING

# ATTACHMENT 2 PAGE 1

AMOUNT OF OUTDOOR EXERCISE ESTABLISHED BY
SPAIN V. PROCUNIER, SUPRA, ~~███████████~~    "REGULAR
OUTDOOR EXERCISE IS EXTREMELY IMPORTANT TO THE
PSYCHOLOGICAL AND PHYSICAL WELL BEING OF INMATES."
SPAIN V. PROCUNIER 600 F.2d 189 AT 199 (1979 9th CIR)
EMPHASIS ADDED AND NUMEROUS CITATIONS OMITTED. THE
SPAIN COURT IN DISCUSSING THE LOWER COURT'S RULING
STATED "THE COURT FOUND 'THAT THE DENIAL OF FRESH
AIR AND REGULAR OUTDOOR EXERCISE AND RECREATION
CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT' 408 F.
SUPP. AT 547, AND ORDERED DEFENDANTS TO ACCORD
PLAINTIFFS THE RIGHT OF OUTDOOR EXERCISE ONE
HOUR PER DAY, FIVE DAYS A WEEK UNLESS INCLEMENT
WEATHER, UNUSUAL CIRCUMSTANCES, OR DISCIPLINARY
NEEDS MADE THAT IMPOSSIBLE." SUPRA, 600 F.2d
189 AT 199. (EMPHASIS ADDED) THE SPAIN COURT FURTHER STATED "THE
STATE ARGUES THAT OUTDOOR EXERCISE WAS WITHHELD TO
PROTECT PRISON STAFF AND OTHER INMATES FROM VIOLENT
ATTACKS FROM THE PLAINTIFFS, AND TO PROTECT PLAINTIFFS
FROM ATTACK BY OTHER INMATES. THE STATE ALSO CITES
THE OBJECTIVE OF REDUCING THE RISK OF ESCAPE...
THESE CONCERNS ... DO NOT EXPLAIN WHY OTHER
EXERCISE ARRANGEMENT WERE NOT MADE. THE
COST OR INCONVENIENCE OF PROVIDING ADEQUATE
FACILITIES IS NOT A DEFENCE TO THE IMPOSITION
OF A CRUEL PUNISHMENT. ~~████~~ CONFINEMENT TO
THE AC WAS NOT A~~N~~ A TEMPORARY ASSIGNMENT FOR
THESE PRISONERS, AND THE STATE HAS FAILED TO GIVE

1

ATTACHMENT 2 PAGE 2

AN ADEQUATE JUSTIFICATION FOR FAILING TO PROVIDE
RESOURCES FOR OUTDOOR EXERCISE..." SPAIN V.
PROCUNIER 600 F.2d 189 AT 200. EMPHASIS
ADDED. THE CUSTODY "STAFFING LEVELS" IS A
COST AND INCONVENIENCE DEFENSE, (SEE
LT. DORSEY'S RESPONSE TO THIS 602 AT FIRST
FORMAL LEVEL ÷ ATTACHED) PROHIBITED BY THE
SPAIN COURT, TO DENY ME MY "RIGHT" UNDER THE
8TH. AMENDMENT OF THE U.S. CONSTITUTION TO RECEIVE
AN OPPORTUNITY FOR OUTDOOR EXERCISE AT LEAST FIVE
DAYS A WEEK FOR ONE HOUR EACH DAY AS A LONG TERM
A C PRISONER. MOREOVER, DORSEY'S RESPONSE STATE-
MENT (IMPLYING) THAT I AM ENTITLED TO ONLY 3 DAYS PER WEEK
FOR ONLY ONE HOUR PER DAY OF OUTDOOR EXERCISES IS
A BLATANT MISREPRESENT OF THE THOMAS CONSENT
DECREE. THE 3 DAYS FOR ONE HOUR EACH DAY IS
"SPECIFICALLY" PROVIDED TO "GRADE A" WALK ALONE
INMATES" ONLY, WHO MUST ALSO BE PROVIDE AS
MUCH TIER TIME AS POSSIBLE IN ADDITION TO
THE 3 DAYS ONE HOUR EACH DAY OF OUTDOOR EX-
ERCISE. SEE THOMPSON V. ENOMOTO NO. 79-1630-
SAW CONSENT DECREE AT PAGE 4, LINES 23-30.
THIS PROVISION DOES NOT APPLY TO PRISONERS
HOUSED IN A C (GRADE B WALK ALONE OR OTHERWISE)
BECAUSE IT WOULD VIOLATE SPAIN, SUPRA, AND
WHAT SAID THOMPSON DECREE "SPECIFICALLY"
STATES, WHICH IS " OUTDOOR EXERCISE AT LEAST 3
DAYS PER WEEK," AND "THE

2.

ATTACHMENT 2 PAGE 3

MINIMUM WEEKLY YARD EXERCISE PERIODS: GRADE B
YARD: 9 HOURS". SEE SAID THOMPSON DECREE AT
PAGE 8. LINES 23-24. AND LINE 31. AND PAGE
9. LINE 2. IN ANY EVENT (I'M NEVER GIVEN THIS EXERCISE AND) I AM NOT BEING GIVEN
AN OPPORTUNITY FOR OUTDOOR EXERCISE IN THE
MINIMUM AMOUNT REQUIRED BY LAW FOR "PSYCHO-
LOGICAL AND PHYSICAL WELL BEING" AS ESTABLISHED
BY THE (COURT IN) SPAIN V. PROCUNIER 600 F.2d 189. DURING
THE MONTH OF DECEMBER 2005 BEGINNING WITH
THE DATE LT. DORSEY HEARD THIS APPEAL/602 ON
DEC. 18, 2005 TO DEC.1 2005. THAT IS FROM 12/1/05
THROUGH TO 12/18/05, I WAS PROVIDED AN OPPORTUNITY
FOR OUTDOOR EXERCISE ON 12/3/05. THAT IS
IT! ONE DAY FOR ABOUT 3 HOURS.
I WAS NOT GIVEN A REASON WHY I WAS GIVE YARD
ONLY ONCE DURING THESE 18 DAYS EXCEPT "A
SHORTAGE OF STAFF," AND ON 12/12/05 BECAUSE OF
THE EXECUTION INMATE WILLIAMS. DURING THE
MONTH OF NOVEMBER 2005 I WAS PROVIDED AN
OPPORTUNITY FOR OUTDOOR EXERCISE ON 11/20/05. FOR ABOUT 2 HOURS.
AND ON 11/26/05 FOR ABOUT 2 HOURS. AND ON 11/21/05 FOR ABOUT
2 HOURS. AND ON 11/19/05 FOR ABOUT 2 HOURS. AND ON
11/9/05 FOR ABOUT 2 HOURS. THAT'S IT. 5 DAYS OF YARD
DURING NOV. 2005 FOR A TOTAL OF ABOUT TEN HOURS
FOR THE ENTIRE MONTH. THE REASON GIVEN FOR
DENYING ME YARD/OUTDOOR EXERCISE WAS "SHORTAGE OF
STAFF. AND (FOR THE SAME REASON) GOING BACKWARDS ALL THE WAY TO APRIL
2005, I HAVE BEEN GIVEN AN OPPORTUNITY FOR

3

ATTACHMENT 2 PAGE 4

1. OUTDOOR EXERCISE ONE DAY PER WEEK FOR ABOUT 2½
2. HOURS TOTAL PER WEEK ON AVERAGE. DURING MANY
3. OF THE PAST 36 OR SO WEEKS I WAS NOT ALLOWED ANY
4. OUTDOOR EXERCISE AT ALL. DURING ONLY 4 OR 5 OF SAID
5. 36 WEEKS WAS I ALLOWED YARD 3 DAYS PER WEEK. AND
6. I HAVE NEVER BEEN ALLOWED YARD MORE THAN 3 DAYS
7. PER WEEK AS LONG AS I'VE BEEN IN THE A C, WHICH
8. IS CONTINUOUSLY SINCE 1997. THE MEDICAL
9. STAFF KNOW THAT MY PSYCHOLOGICAL AND PHYSICAL
10. HEALTH IS SUFFERING CRUEL PUNISHMENT FROM
11. SAID DEPRIVATION OF THE "MINIMUM AMOUNT" OF
12. OUTDOOR EXERCISE ESTABLISHED IN SPAIN, SUPRA,
13. FOR A C PRISONERS. AND THE THE MEDICAL
14. STAFF AND CUSTODY STAFF KNOW THAT
15. SAID ESTABLISHED MINIMUM OF OUTDOOR
16. EXERCISE IS FOR MENTAL AND PHYSICAL
17. HEALTH CARE TREATMENT. BUT, THEY
18. CONSPIRE WITH EACH OTHER TO
19. DENY ME THIS CRITICAL HEALTH CARE
20. TREATMENT, AND EVEN DENY THAT IT IS
21. WHAT THE SPAIN COURT FOUND IT TO BE: "REGULAR
22. OUTDOOR EXERCISE IS EXTREMELY IMPORTANT TO THE
23. PSYCHOLOGICAL AND PHYSICAL WELL BEING OF
24. INMATES." THE CONDITIONS IN THE A C ARE
25. NOW AS BAD AS THEY HAVE EVER BEEN. THE
26. "YARD LIST" "DOCUMENTS" OF THE PAST 9 MONTHS PROVE
27. THAT THE DEPRIVATIONS OF OUTDOOR EXERCISE STATED
28. HEREIN ARE TRUE AND CORRECT. PRODUCE SAID "YARD LISTS"

4.

# INMATE / PAROLEE
# APPEAL FORM

Location: Institution/Parole Region _____ Log No. _____ Cat. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME: Orozco ✓    NUMBER: V-26151    ASSIGNMENT: Unassigned    UNIT/ROOM NUMBER: 10-221L

**A. Describe Problem:** I have been housed here in Solano Prison Administrative Segregation (Ad-Seg) for over four (4) months, and, by the laws of due process protections claires of the California Constitution and also those of the Federal Constitution, both Eight and Fourteenth Amendments, that State Prison Officials, are to provide a prisoner housed in Ad-Seg

— continued on supplementary page —

If you need more space, attach one additional sheet.

**B. Action Requested:** That segregated "wait a tone" prisoners be allowed their ten hours of outside exercise yard time, and; that Solanos Prison officials stop housing segregated prisoners in building nine until they build another Ad-Seg exercise yard.

Inmate/Parolee Signature: Valdo C. Orozco    Date Submitted: Nov 26, 2005

**C. INFORMAL LEVEL (Date Received:** _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

WITH A MINIMUM AMOUNT OF TEN HOURS A WEEK OF OUTSIDE (OF CELL) EXERCISE YARD TIME... IN WHICH A SEGREGATION PRISONER IS ENTITLED BY THESE LAWS. WHEN IS BASIC HUMAN NEED IS NOT MET THEN THIS CONDITION OF CONFINEMENT VIOLATES THE PRISONER CONSTITUTIONAL RIGHTS WHICH BANS CRUEL AND UNUSUAL PUNISHMENT.

SOLANO'S Ad. Seg. STATUS FOR OUTSIDE EXERCISE YARD TIME IS DIVIDED INTO TWO KINDS OF CATEGORY'S: ONE IS FOR RACE GROUP (e.g. BLACK'S, WHITE'S, NORTHERN HISPANICS, SOUTHERN HISPANICS, AND A MIX RACE GROUP OF UNAFFILATION) AND THE OTHER CATEGORY IS FOR A WAKE-A-LONE OR TWO CELLMATES WHOM ARE BOTH ON WAKE-A-LON - EX-PRISON GANG MEMBERS ETC., ETC.).

THE RACE GROUP CATEGORY ARE PROVIDED THE OPPORTUNITY FOR USE OF THE YARD TIME, THREE TIMES A WEEK, FOR A TOTAL OF OVER TEN HOUR AT LEAST EACH WEEK. PRISONERS, AS MYSELF WHOM ARE UNDER THE CATEGORY OF WAKE-A-LONE ARE "ONLY" GIVEN TWO HOURS OF OUTSIDE EXERCISE YARD TIME "ONCE" A WEEK, IF?

So, "ON BEHALF OF MYSELF AND ANY OTHER SEGREGATED PRISONER, WHOM IS HOUSED IN SOLANO'S Ad. Seg. UNITS AND WHOSE RIGHTS TO OUTSIDE EXERCISE YARD TIME IS BEING "DEPRIVED" BECAUSE OF THE WAKE-A-LONE STATUS. I SUBMIT THIS 602 GRIEVANCE...."

SOLANO STATE PRISON WAS ORIGINALLY BUILD WITH ONLY ONE Ad... Seg. UNIT FOR IT'S FOUR PRISON YARD (LEVELS ONE, TWO AND THREE PRISONERS) BUILDING TEN IS THE Ad. Seg. BUILDING WHICH HAS A FENCED OUTSIDE EXERCISE YARD DIVIDED INTO TWO YARDS BY FENCE ALSO, WITH ONE GUN-TOWER ON TOP OF THE BUILDING OVERLOOKING THE EXERCISE YARD.

FOR SOME YEARS NOW, PRISON OFFICIALS HAVE BEEN USING ANOTHER BUILDING, BUILDING NINE AS AN OVERFLOW (FULLTIME) TO HOUSE 200 MORE SEGREGATED PRISONERS. BUT, BUILDING NINE DOES NOT HA IT'S OWN OUTSIDE EXERCISE YARD FOR IT'S FULLTIME OVERFLOW SEGR -ATED PRISONERS, THEREFORE USING BUILDING TEN EXERCISE YARD... WHICH IS THE CAUSE OF DENYING SEGREGATED PRISONER (WAKE-A-LONE) THEIR FULL TEN HOURS OF EXERCISE YARD TIME.

SOLANO'S PRISON OFFICIALS ARE FULLY AWARE OF VIOLATING WAKE-A-LONE SEGREGATED PRISONERS YARD TIME... AND HAVE FAIL ND/or REFUSED TO CORRECT THE VIOLATIONS OF THESE CONSTITUT- -IONAL PRISONER'S RIGHTS...THEREFORE, SHOULD NOT BE ALLOWED TO HOUSE Ad. Seg. PRISONERS IN BUILDING NINE.

CC: S. CERVANTES
APPEALS COORDINATOR
Ad.S.P. - SOLANO
VACAVILLE, CA.

CC: NOOR DAWOOD
LITIGATION ASSISTANT
% PRISON LAW OFFICE
GENERAL DELIVERY
SAN QUENTIN, CA.

CC: O.Y. CRAWFOR
C.D.W.(s)
C.S.P.-SOLAN
VACAVILLE, CA

CC: JANE KA
" ATTORNY
155 MONTROW
8th Floor
SAN FRANCISC

# A/S EOP DAILY POPULATION
## 9/1/2004 THRU 11/11/2005

| DATE* | CENSUS/CM | DATE | CENSUS/CM | DATE | CENSUS/CM |
|---|---|---|---|---|---|
| 9/6/2004 | 38 | 3/28/2005 | 53/5=10.6 | 10/17/2005 | **64 |
| 9/13/2004 | 38 | 4/4/2005 | **53 | 10/24/2005 | 64 |
| 9/20/2004 | 38 | 4/11/2005 | **51 | 10/31/2005 | **65/5.5=11.8 |
| 9/27/2004 | 39/5=7.8 | 4/18/2005 | NDA | 11/7/2005 | **67 |
| 10/4/2004 | 35 | 4/25/2005 | **44/5=8.8 | | |
| 10/11/2004 | 35 | 5/2/2005 | 52 | | |
| 10/18/2004 | 36 | 5/9/2005 | 63 | | |
| 10/25/2004 | 37/5=7.4 | 5/16/2005 | ***65 | | |
| 11/1/2004 | 39 | 5/23/2005 | ***67 | | |
| 11/8/2004 | 38 | 5/30/2005 | **72/5=14.4 | | |
| 11/15/2004 | 38 | 6/6/2005 | ***71 | | |
| 11/22/2004 | 35 | 6/13/2005 | ***66 | | |
| 11/29/2004 | 38/5=7.6 | 6/20/2005 | 60 | | |
| 12/6/2004 | 38 | 6/27/2005 | **62/5=12.4 | | |
| 12/13/2004 | 41 | 7/4/2005 | **61 | | |
| 12/20/2004 | 41 | 7/11/2005 | **58 | | |
| 12/27/2004 | 45/5=9 | 7/18/2005 | **58 | | |
| 1/3/2005 | **45 | 7/25/2005 | **58/5=11.6 | | |
| 1/10/2005 | 38 | 8/1/2005 | **59 | | |
| 1/17/2005 | 45 | 8/8/2005 | **63 | | |
| 1/24/2005 | 43 | 8/15/2005 | **66 | | |
| 1/31/2005 | **48/5=9.6 | 8/22/2005 | **69 | | |
| 2/7/2005 | 51 | 8/29/2005 | **65/5=13 | | |
| 2/14/2005 | 51 | 9/5/2005 | **62 | | |
| 2/21/2005 | 51 | 9/12/2005 | **60 | | |
| 2/28/2005 | 56/5=11.2 | 9/19/2005 | 63 | | |
| 3/7/2005 | * 53 | 9/26/2005 | 66/5=13.2 | | |
| 3/14/2005 | 50 | 10/3/2005 | 64 | | |
| 3/21/2005 | **55 | 10/10/2005 | **64 | | |

- *Avg of two surrounding weeks
- ** Avg of OT calendar data for the week
- *** Avg of K. Kelly data for the week
- NDA = No data available

# Ad Seg EOP Hub Information

## MAY 2005

| Hub Institution | Average Daily Census | Current Staffed Capacity | Case Manager Allocation | Case Managers Vacant | Contract Hours Used |
|---|---|---|---|---|---|
| CMC | 34.50 | 54.00 | 6.00 | 2.0 | 93.00 |
| CMF | 67.00 | 58.00 | 6.50 | 2.0 | 313.75 |
| COR | 42.20 | 63.00 | 7.00 | 0.0 | 0.00 |
| LAC | 47.90 | 45.00 | 5.00 | 2.0 | 596.00 |
| MCSP | 18.40 | 36.00 | 4.00 | 0.0 | 0.00 |
| RJD | 51.60 | 63.00 | 7.00 | 0.0 | 0.00 |
| SAC | 41.40 | 49.00 | 5.50 | 1.0 | 0.00 |
| SQ | 31.00 | 36.00 | 4.00 | 0.0 | 0.00 |
| SVSP | 26.60 | 45.00 | 5.00 | 2.5 | 70.62 |
| VSPW | 5.10 | 9.00 | 1.00 | 1.0 | 22.00 |
| Total | 365.70 | 458.00 | 51.00 | 10.50 | 1095.37 |

# AD SEG EOP HUB INFORMATION

### SEPTEMBER 2005

| Hub Institution | Average Daily Census | Current Staffed Capacity | Case Manager Allocation | Case Managers Vacant | Contract Hours Used |
|---|---|---|---|---|---|
| CMC | 38.10 | 54.00 | 2.00 | 2.0 | 76.00 |
| CMF | 66.60 | 58.00 | 3.00 | 3.0 | 300.25 |
| COR | 45.50 | 54.00 | 2.00 | 2.0 | 168.00 |
| LAC | 53.30 | 54.00 | 4.00 | 4.0 | 510.00 |
| MCSP | 41.40 | 36.00 | 4.00 | 4.0 | 396.75 |
| RJD | 51.50 | 63.00 | 0.00 | 0.0 | 0.00 |
| SAC | 52.90 | 49.00 | 0.00 | 0.0 | 317.25 |
| SQ | 4.90 | 36.00 | 0.00 | 0.0 | 0.00 |
| SVSP | 46.7 | 45.00 | 0.00 | 0.0 | 0.00 |
| VSPW | 4.60 | 9.00 | 1.00 | 1.0 | 0.00 |
| TOTAL | 405.50 | 458.00 | 16.00 | 16.00 | 1768.25 |