# EXHIBIT EE

**FILED**

AUG 1 5 1997

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

          Plaintiffs,        No. CIV S-90-0520 LKK JFM P

      vs.

PETE WILSON, et al.,

          Defendants.      <u>FINDINGS & RECOMMENDATIONS</u>

_____/

       Plaintiffs are state prisoners proceeding through counsel with this class action challenge to the delivery of mental health care to seriously mentally ill inmates confined at most institutions within the California Department of Corrections (CDC). This matter is before the court on plaintiffs' motions to compel payment of disputed fees and costs in the first and second quarters of the remedial phase of this litigation.

HISTORY OF THIS LITIGATION[1]

       This action was commenced as an individual action by plaintiff Ralph Coleman, proceeding pro se, in May 1990. On June 25, 1991, plaintiff lodged with the court a request for

---

[1] The history of this litigation is fully set forth in this court's June 6, 1994 findings and recommendations at 2-5, in the district court's September 13, 1995 order at 2-4, and in this court's January 21, 1997 findings and recommendations concerning plaintiffs' motion for an interim award of attorneys' fees, at 1-3. Those background statements are incorporated by reference herein.

1    substitution of counsel, together with a motion for leave to amend the complaint and for class

2    certification.  On July 10, 1991, the request for substitution of counsel was approved by the court

3    and plaintiffs' present counsel were substituted in as counsel of record.  Thereafter, the motions

4    for leave to amend the complaint and for class certification were granted.[2]

5            Two years of intensive pretrial proceedings followed amendment of the complaint

6    and class certification, culminating in a thirty-nine day court trial conducted between March and

7    June of 1993.  This court issued extensive findings and recommendations in June 1994, finding

8    that the mental health care delivery system maintained by defendants violated the Eighth

9    Amendment rights of class members and recommending a series of remedies for the plaintiff

10   class.  Defendants filed extensive objections to the findings and recommendations, plaintiffs filed

11   a response, and defendants filed a reply brief.

12           On September 13, 1995, the district court issued an eighty-two page order, finding

13   defendants' mental health care delivery system constitutionally inadequate and in need of

14   remediation.  The district court referred the matter back to this court for nomination of a special

15   master.  On November 16, 1995, this court issued findings and recommendations nominating a

16   special master and, separately, recommending a proposed order of reference to the special

17   master.  Defendants objected to the part of the recommended order of reference which directed

18   the special master to work jointly with counsel for plaintiffs and counsel for defendants in

19   development of a remedial plan.

20           On December 11, 1995, the district court issued an order appointing a special

21   master and an order of reference to the special master.  The order of reference referred the matter

22   to the special master for both the development of remedial plans and for monitoring defendants'

23

---

24        [2]  The class represented by counsel consists of "all inmates with serious mental disorders
     who are now or will in the future be confined within the California Department of
25   Corrections (except the San Quentin State Prison, the Northern Reception Center at Vacaville
     and the California Medical Facility-Main at Vacaville)."  (Class Certification Order, filed
26   November 14, 1991, at 4-5.)

2

1    implementation of and compliance with such remedial plans. The district court addressed

2    defendants' objection by specifically noting that this action

> remains an adversarial proceeding where both sides of the
> litigation are represented by counsel. All parties are entitled to the
> advice of counsel as this litigation proceeds. Therefore, while the
> special master will be directed to work with defendants, he will
> also be directed to consult with counsel for all parties as necessary
> in the discharge of his duties.

(Ord. filed December 11, 1995, at 2-3.) In a footnote, the court further noted that both the court

and the remedial process would be "greatly assisted" if the special master consulted with counsel

prior to submission of remedial plans. (Id. at 3 n.1.) The special master was specifically directed

to "consult with counsel for plaintiffs and counsel for defendants as he deems necessary to the

discharge of [the] duty" to develop a remedial plan. (Id. at 3-4.)

        The order of reference also directed the special master to monitor compliance with

court-ordered remedial plans and to file periodic compliance reports. (Id. at 4.) The special

master is required to serve draft compliance reports on counsel for both plaintiffs and defendants,

to afford counsel time to object to the draft report and, if requested to do by counsel, to convene

a hearing to consider written objections tendered by either party. (Id. at 4-5.)

        As set forth above, this action entered the remedial phase on September 13, 1995,

and work under the direction of the special master commenced on December 12, 1995. On June

6, 1997, the special master tendered to this court his report on the development of remedial plans,

together with six volumes of materials focused on the delivery of mental health care to class

members. On June 24, 1997, pursuant to an order of the district court, this action entered the

compliance monitoring phase.

ANALYSIS

I. Background

        On March 19, 1996, pursuant to the stipulation of the parties, the court authorized

a procedure for periodic collection of plaintiffs' attorneys fees and costs incurred during the

3

1  compliance phase of the litigation. (Stipulation and Ord. filed March 19, 1996.) The procedure

2  provides for submission of stipulated payment orders to the court, and for yearly motions to

3  compel payment of disputed fees. The procedure further provides for quarterly motions to

4  compel payment of disputed fees "[i]n the even that an unusually large number of hours or a

5  significant issue is in dispute." (Id. at 3.)

6        On September 30, 1996, plaintiffs filed a motion to compel payment of disputed

7  fees and costs for the first quarter of the compliance phase of this litigation and to set billing rates

8  for calendar year 1996. The motion was brought as a quarterly motion, rather than a yearly

9  motion, in part because of a significant dispute concerning the application of the Prison

10  Litigation Reform Act of 1995 (PLRA) to plaintiffs' claim for attorneys fees in this action. By

11  this motion, plaintiffs seek payment of disputed fees for the period from September 14, 1995

12  through March 31, 1996, as well as the establishment of hourly rates for 1996. By order filed

13  November 13, 1996, plaintiffs were directed to supplement their motion with a request for

14  payment of disputed fees and costs for the second quarter, which runs from April 1, 1996 through

15  June 30, 1996. Plaintiffs filed their supplemental motion on December 5, 1996.

16        In their motions, plaintiffs challenge the application of the PLRA to their claim

17  for fees on several grounds, including constitutional challenges to the statute. On January 17,

18  1997, this court issued a Notice of Claim of Unconstitutionality pursuant to 28 U.S.C. § 2403

19  and Fed. R. Civ. P. 24 together with an order granting the United States of America a period of

20  time in which to intervene in this action. After receiving an extension of time, on March 14,

21  1997, the United States moved to intervene and filed a memorandum of law concerning the

22  constitutionality of the attorneys' fees provisions of the PLRA. This court heard oral argument

23  on the motions on May 15, 1997.

24        By the motion to compel payment of disputed fees for the first quarter, plaintiffs

25  seek payment in the amount of $150,159.76 in fees and costs at billing rates from $165.00-

26  $400.00 per hour for attorneys, $110.00-$125.00 for law students, $90.00-110.00 per hour for

4

1  paralegals, and $55.00 per hour for word processing. These are apparently the hourly rates

2  which plaintiffs seek to establish for calendar year 1996. By the motion to compel payment of

3  disputed fees and costs for the second quarter, plaintiffs seek payment in the amount of

4  $188,953.24 at comparable billing rates.

5  II. Application of the PLRA to Plaintiffs' Motions

6        The PLRA was enacted on April 26, 1996. The PLRA contains amendments to

7  the Civil Rights of Institutionalized Persons Act at 42 U.S.C. § 1997e which limit the recovery of

8  attorneys' fees in prisoner civil rights litigation. Defendants contend that the new statute applies

9  to this action and limits plaintiffs' entitlement to fees on the instant motions.

10       Both this court and the district court have already found that the attorneys' fees

11  provisions of the PLRA would have an impermissible retroactive effect if applied to limit fees

12  for services rendered in this action prior to the effective date of the act. (Ord. filed February 21,

13  1997, adopting Findings and Recommendations filed January 21, 1997.) That is the law of the

14  case and plaintiffs are entitled to compensation at pre-PLRA reasonable rates for services

15  rendered through April 26, 1997.

16       The court turns to the application of the PLRA in this action to services rendered

17  after the effective date of the statute.[3]

18

19       [3] At least two circuits have held that the PLRA attorneys fees provisions do not apply to
20  services rendered prior to the effective date of the statute. See Cooper v. Casey, 97 F.3d 914,
    921 (7th Cir. 1996); see also Jensen v. Clarke, 94 F.3d 1191, 1201-03 (8th Cir. 1996). One
21  circuit has held that the PLRA applies to attorneys fees motions filed after the effective date of
    the statute, regardless of the date the services were performed. Alexander S. v. Boyd, 113 F.3d
22  1473 (4th Cir. 1997). Two district courts have published opinions holding that the PLRA
    attorneys' fees provision would have an impermissible retroactive effect if applied to cases filed
23  prior to the effective date of the statute and have thus held that the provisions do not apply to
    such cases, even if services are rendered after the effective date of the act. Blissett v. Casey,
24  1997 WL 359826 (N.D.N.Y. June 20, 1997); Hadix v. Johnson, 965 F.Supp. 996 (W.D.Mich.
    1997). In addition, plaintiffs have submitted several unpublished opinions in accord. Madrid v.
25  Gomez, No. C90-3094 THE (N.D.Cal., June 13, 1997); Dye v. Jackson, No. 95-70065
    (E.D.Mich. May 22, 1997); Tragale v. Scheel, No. CV-93-672 DWH (D.Nev. May 21, 1997);
    Chappell v. Gomez, No C-93-4421 FMS (N.D.Cal. 1996); Perrier v. City of Albuquerque, Civ.
26  95-943 RLP\WWD (D.N.M. 1996), and the district judge assigned to this case has so held in

5

1        "[T]he presumption against retroactive legislation is deeply rooted in our

2  jurisprudence, and embodies a legal doctrine centuries older than our Republic." Landgraf v.

3  USI Film Products, 511 U.S. 244, 265 (1994). The presumption is grounded in notions of

4  fundamental fairness which "dictate that individuals should have an opportunity to know what

5  the law is and to conform their conduct accordingly; settled expectations should not be lightly

6  disrupted." Id. A statute is impermissibly retroactive when it "impair[s] rights a party possessed

7  when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with

8  respect to transactions already completed." Id. at 280. Put another way, if a statutory provision

9  "attaches new legal consequences to events completed before its enactment" it is impermissibly

10  retroactive. Id. at 270. "[F]amiliar considerations of fair notice, reasonable reliance, and settled

11  expectations offer sound guidance" in assessing whether a new statutory provision would operate

12  retroactively. Id.

13        In Landgraf, the United States Supreme Court "established a three-stage analytical

14  process for assessing the potential retroactive application of a statute." Jeffries, 114 F.3d at

15  1494. First, the court, using "ordinary tools of statutory interpretation," assesses "whether

16  Congress has prescribed the statute's proper reach." Id. (citing Landgraf, 511 U.S. at 280); see

17  also Lindh v. Murphy, 117 S.Ct. 2059, 2062 (1997). If the court cannot ascertain congressional

18  intent through general principles of statutory construction, the second inquiry is "whether the

19  new statute would have retroactive effect." Jeffries, 114 F.3d at 1494. If it would, the third

20  prong of the Landgraf analysis requires application of the traditional presumption against

21  retroactivity unless there is clear evidence that Congress intended the new statute to apply

22  retroactively. Id.

23  /////

24  _____

25  another case pending in this court. Gates v. Gomez, No. CIV S-87-1636 LKK JFM P. One
district court has published an opinion to the contrary. Hadix v. Johnson, 947 F.Supp. 1113
26  (E.D.Mich. 1996).

1    Section 803 of the PLRA, which amends the Civil Rights of Institutionalized

2 Persons Act (CRIPA), 42 U.S.C. § 1997 et seq., provides in relevant part:

3    (d) ATTORNEY'S FEES. - (1) In any action brought by a
prisoner who is confined to any jail, prison, or other correctional
4    facility, in which attorney's fees are authorized under section 2 of
the Revised Statutes of the United States (42 U.S.C. 1988), such
5    fees shall not be awarded, except to the extent that -

6    (A)  the fee was directly and reasonably incurred in proving an
actual violation of the plaintiff's rights protected by a statute
7    pursuant to which a fee may be awarded under section 2 of the
Revised Statutes; and
8
(B) (i)  the amount of the fee is proportionately related to the court
9    ordered relief for the violation; or

10    (ii)  the fee was directly and reasonably incurred in enforcing the
relief ordered for the violation.
11
. . . .
12
(3)  No award of attorney's fees in an action described in paragraph
13    (1) shall be based on an hourly rate greater than 150 percent of the
hourly rate established under section 3006A of title 18, United
14    States Code, for payment of court-appointed counsel.

15 Pub.L. No. 104-134, 110 Stat. 1321, Section 803(d), amending Section 7 of CRIPA (42 U.S.C.

16 § 1997e).  There is nothing in the plain language of this section which describes its reach.

17    Examination of the structure of the PLRA as a whole, however, provides evidence

18 that Congress did not intend the attorneys' fees provisions to apply to pending cases.

19 Specifically, section 802 of the PLRA, which amends section 3626 of Title 28 of the United

20 States Code and governs availability of prospective relief and the role of special masters in

21 prison conditions cases, expressly provides that it "shall apply with respect to all prospective

22 relief whether such relief was originally granted or approved before, on, or after the date of the

23 enactment of [the PLRA]." Pub.L. No. 104-134, 110 Stat. 1321, Section 802(b).  There is no

24 comparable provision in Section 803 of the PLRA.  The express provision for retroactive

25 application in one section of the statute and its omission from the section at bar is evidence that

26 Congress did not intend the attorneys' fees provision to apply retroactively.  See Jensen v.

7

1  Clarke, 94 F.3d at 1203; Blissett v. Casey, 1997 WL359826, 6; see also Lindh v. Murphy, 117

2  S.Ct. at 2064-65 (express retroactivity provision in Chapter 154 of the Antiterrorism and

3  Effective Death Penalty Act of 1996 (Act) and absence of comparable provision in Chapter 153

4  of the Act evidences Congressional intent that Chapter 153 not be applied to pending cases);

5  accord Jeffries, 114 F.3d at 1495.[4]

6          For the foregoing reasons, general principles of statutory construction suggest that

7  the attorneys' fees provision of the PLRA should not apply to cases filed prior to enactment of

8  the statute.  While this conclusion ordinarily ends the inquiry, see Jeffries, 114 F.3d at 1497,

9  because of the presence of circuit authority to the contrary, it is prudent to examine the second

10  prong of the Landgraf analysis.  See Jeffries, id.  Accordingly, the court now examines whether

11  application of the fee limitations contained in the PLRA to services rendered by plaintiffs'

12

---

13  [4] Plaintiffs also argue that the legislative history of the PLRA supports the conclusion
that Congress did not intend the attorneys' fees provisions to apply retroactively because a prior
version of the PLRA (then called Stop Turning Out Prisoners Act) included the attorneys' fees

14  provisions in a section containing amendments to 18 U.S.C. § 3626, which section included an
express retroactivity provision.  Plaintiffs contend that the fact that the attorneys' fees provisions

15  were removed from this section and placed in a section of the PLRA which does not include
provision for retroactive application is further evidence that Congress did not intend the

16  attorneys' fees provisions to apply retroactively.  See, e.g., United States v. $814,254.76 in
United States Currency, 51 F.3d 207, 212 (9th Cir. 1995) (explicit deletion of retroactivity

17  provision is "strong evidence that Congress intended only prospective application.").
     The previous House of Representatives' version of amendments to 18 U.S.C. § 3626

18  contained six subsections, styled, respectively, "Requirements for Relief," "Termination of
Relief," Procedure for Motions Affective Prospective Relief," "Standing," "Special Masters" and

19  "Attorney's Fees."  (H.R. Rep. 104-21.)  The retroactivity provision provided for application of
the amendments contained there "to all relief (as defined in such section) whether such relief was

20  originally granted or approved before, on, or after the date of the enactment of this Act."  (Id.)
Relief was defined as "all relief in any form which may be granted or approved by the court, and

21  includes consent decrees and settlement agreements."  (Id.)  Arguably, of course, attorneys' fees
could have meant "relief" within the meaning of that section; given the structure of the entire

22  section, however, that is not self-evident.  Cf. Coleman v. Wilson, 933 F.Supp. 954, 956 (E.D.
Cal. 1996) (special master is not "relief" within meaning of PLRA).

23      The attorneys' fees provisions would only have come within the ambit of that
retroactivity provision if attorneys' fees are properly characterized as "relief."  It is true that the

24  attorneys' fees provision was subsequently removed from the amendments to 18 U.S.C. § 3626
and placed in a section which does not contain any retroactivity provision, so that may be some

25  further evidence of Congressional intent not to apply the attorneys' fees provisions retroactively.
It does not, however, in this court's view, constitute an express deletion of a retroactivity

26  provision plainly applicable to the attorneys' fees amendments.

8

1  counsel in this action after the effective date of the PLRA would have an impermissible

2  retroactive effect.

3           For purposes of retroactivity analysis, the proper focus is on whether a new

4  statutory enactment disrupts settled expectations by imposing "new duties with respect to

5  transactions already completed"or by attaching "new legal consequences to events completed

6  before its enactment." Landgraf, 511 U.S. at 270, 280.  Defining the relevant events or

7  transactions is therefore central to the analysis.

8           Mere reference to the actual dates of services provided by counsel defines the

9  question too narrowly. See Blissett, 1997 WL 359826, 8.  The attorneys in the case at bar

10  undertook representation of the plaintiff class in 1991, five years before enactment of the PLRA.

11  At that time, neither plaintiffs nor their attorneys had any notice of the possibility that statutory

12  amendments might impact their entitlement to attorneys' fees under 42 U.S.C. § 1988.  Their

13  entitlement to fees for the substantial success achieved in this litigation was effectively

14  determined on September 13, 1995, when the district court issued its decision on the merits of

15  plaintiffs' claims.[5]  Moreover, the district court's order on the merits, issued September 13, 1995,

16  and its order outlining the duties of the special master, issued December 11, 1995, imposed on

17  plaintiffs' counsel continuing obligations to their clients and to the court throughout the remedial

18  phase of this litigation.  For purposes of determining the retroactive effective of the PLRA, these

19  dates constitute the relevant "transactions" or "conduct."  On the date counsel undertook this

20  case, the date of the court's decision on the merits, and the date counsel's role in the remedial

21  process was ordered, the plaintiff class and their counsel had settled expectations that the

22  representation would continue for the duration of this litigation and that counsel would be

23  compensated in accordance with existing provisions of 42 U.S.C. § 1988.  Disruption of those

24  expectations would violate notions of fundamental fairness.

25  ———————————

26  [5] This is true even though the actual entitlement to fees was not determined until a
subsequent court decision on plaintiffs' motion for an interim award of attorneys' fees.

1     Moreover, ethical rules prohibit plaintiffs' counsel from withdrawing their

2   representation of the plaintiff class if to do so would be materially adverse to the interests of the

3   class. See Rule 3-700 of the Rules of Professional Conduct of the State Bar of California;

4   Haines v. Liggett Group, Inc., 814 F.Supp. 414 (D.N.J. 1993). It is beyond cavil that withdrawal

5   of counsel at this stage would be significantly adverse both to their clients and to the court;

6   obtaining substitute representation would, in this court's experience, be extraordinarily difficult

7   and obtaining substitute representation of the caliber of plaintiffs' present counsel virtually

8   impossible. Even if counsel could be found, the substitution of counsel in a case this voluminous

9   would require an extraordinary duplication of effort and cause significant expense and delay. In

10  exercise of its supervisory duties this court simply could not recommend such a substitution and

11  it appears unlikely that the district court would allow it. Application of the PLRA would thus

12  require plaintiffs' counsel to continue representation at hourly rates substantially below what

13  they reasonably expected would be available when they undertook representation of the plaintiff

14  class. Again, notions of fundamental fairness preclude this court from requiring plaintiffs'

15  counsel, who have performed well, to continue to provide service while receiving compensation

16  substantially below their normal market rates.

17     For the foregoing reasons, application of the attorneys' fees provisions to the

18  instant action would have an impermissible retroactive effect.[6] Since the only available evidence

19

20     [6] The court has considered the opinion of the United States Court of Appeals for the
    Fourth Circuit in Alexander S. v. Boyd. That court construed Landgraf as holding that attorneys'
21  fees statutes are properly characterized as governing secondary, rather than primary, conduct and
    that they do not therefore "give rise to concerns about retroactivity." Alexander S., 113 F.3d at
22  1387. The discussion in Landgraf centered on an earlier opinion of the United States Supreme
    Court in Bradley v. Richmond School Bd., 416 U.S. 696 (1969), wherein the Court had held that
23  a statute which authorized the award of attorneys' fees to prevailing parties in school
    desegregation cases was available to prevailing plaintiffs whose case was on appeal when the
24  statute was enacted. The Landgraf Court's view was that the facts in Bradley did not implicate
    retroactivity concerns because the district court in Bradley had exercised its already existing
25  equitable power to award the plaintiffs attorneys' fees in that case. Landgraf, 511 U.S. at 277.
    As both the Landgraf and Bradley Courts noted, "[i]n light of the prior availability of a fee
26  award, and the likelihood that fees would be assessed under pre-existing theories, we concluded

1   of Congressional intent suggests that Congress did not intend the statute to apply to pending

2   cases, see discussion supra, it is plain there is no clearly expressed Congressional mandate to

3   apply the attorneys' fees provisions retroactively.  Accordingly, this court will recommend that

4   defendants' contention that the PLRA limits the attorneys fees which may be awarded in this

5   action be rejected.[7]

6   III.  Reasonableness of Plaintiffs' Fees[8]

7          Calculation of reasonable attorneys' fees under § 1988 begins with computation of

8   the "'lodestar' figure, which is the number of hours reasonably expended multiplied by a

9   reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); McGrath v. County of

10  Nevada, 67 F.3d 248, 252 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir.

11  1993).  The fee applicant has the initial burden of documenting appropriate hours expended and

12  submitting evidence supporting the hours.  Gates, 987 F.2d at 1397.  The fee applicant should

13  exclude from a fee request "'hours that are excessive, redundant, or otherwise unnecessary.'" Id.,

14  quoting Hensley, 461 U.S. at 433-34.  After the applicant has gone forward, the burden shifts to

15  the party opposing the fee request to submit evidence "challenging the accuracy and

16  reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted

17  affidavits." Gates, 987 F.2d at 1397-98 (citations omitted).

18         In reviewing the application, "[t]he district court should exclude hours that were

19  not "'reasonably expended.'" McGrath, 67 F.3d at 252 (quoting Hensley, 461 U.S. at 434).  The

20

21  that the new fee statute simply 'did not impose an additional or unforeseeable obligation' upon
    the school board." Landgraf, 511 U.S. at 278 (quoting Bradley, 416 U.S. at 721).  In contrast, for

22  the reasons set forth supra, the significant reductions in attorneys' fee rates imposed by the
    PLRA, if applied herein, plainly implicate all of the fairness concerns absent from the facts of

23  Bradley.

24         [7] In light of this recommendation, this court will not address the serious constitutional
    question raised by plaintiffs in these motions.

25

26         [8] There is no dispute that plaintiffs are prevailing parties within the meaning of 42 U.S.C.
    § 1988 and have thus satisfied the threshold requirement for eligibility for fees.

                                               11

1  court should also take into account factors from <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67,

2  69-70 (9th Cir. 1975), <u>cert. denied</u>, 425 U.S. 951 (1976) that are relevant to the case at bar.

3  <u>McGrath</u>, 67 F.3d at 252.  The <u>Kerr</u> factors include

> (1) the time and labor required; (2) the novelty and difficulty of the
> issues involved; (3) the skill required to perform the legal services
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations imposed by the client or
> the circumstances; (8) the amount involved and the results
> obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12)
> awards in similar cases.

10  <u>Kerr</u>, 526 F.2d at 70.

11       There is a "strong presumption that the lodestar represents the reasonable fee."

12  <u>Gates</u>, 987 F.2d at 1397 (citations omitted).  However, calculation of the lodestar "does not end

13  the inquiry." <u>Hensley</u>, 461 U.S. at 434.  "[I]n rare cases, a district court may make upward or

14  downward adjustments to the presumptively reasonable lodestar on the basis of those factors set

15  out in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975), <u>cert. denied</u>, 425 U.S. 951

16  (1976), that have not been deemed subsumed in the lodestar calculation." <u>Gates</u>, 987 F.2d at

17  1402; <u>see also</u> <u>McGrath</u>, 67 F.3d at 252.

18       The court is required to "provide a concise but clear explanation of its reasons for

19  the fee award." <u>Hensley</u>, 461 U.S. at 437.  In an appropriate circumstance, the court may use

20  percentage cuts to reduce either the hours spent or the final lodestar.  <u>Gates</u>, 987 F.2d at 1399-

21  1400.  However, the court must adequately articulate reasons for choosing a particular

22  percentage.  <u>Id.</u> at 1399.

23      A.  <u>Hours Spent</u>

24       Defendants raise two objections to the number of hours claimed by plaintiffs'

25  counsel on their motions for first and second quarter fees.  First, they contend that several of the

26  hours claimed on the first quarter motion should be deleted because the billing entries are vague,

12

1  inadequate, and lack billing judgment.[9]  Second, defendants contend that plaintiffs waived their

2  right to hours claimed in the second quarter by the law firm of Heller, Ehrman, White &

3  McAuliffe for work on plaintiffs' motion for an interim award of attorneys' fees because they

4  failed to include these hours, which were actually spent in the first quarter, in their first quarter

5  demand pursuant to the procedures set forth in the March 19, 1996 stipulation and order

6  regarding the periodic collection of attorneys fees.

7         In reply, plaintiffs contend that defendants have waived objection to the first

8  quarter hours because they failed to raise these objections in accordance with the provisions of

9  the March 19, 1996 stipulation and order.  Plaintiffs further contend that defendants suffered no

10  prejudice from plaintiffs failure to submit the time spent on the interim fees motion because

11  defendants have taken the position that plaintiffs are not entitled to compensation under the

12  PLRA for time spent on fees work, and because the stipulation does not require plaintiffs to

13  claim time spent on fees work as part of the periodic collection process.

14         The first quarter hours objected to by defendants was all spent by plaintiffs on

15  attorneys fees work (so-called "fees-on-fees work), (see Exhibit F to Declaration of Virginia I.

16  Papan, filed October 31, 1996), as was the 120 hours claimed by Heller Ehrman in the second

17  quarter for first quarter work.  Plaintiffs take the position that they aren't required to submit these

18  hours under the procedures set forth in the March 19, 1996 stipulation and order and that

19  defendants suffered no prejudice from the failure to timely claim the 120 hours because of their

20  blanket objection to payment for fees-on-fees work pending resolution of the application of the

21  PLRA to this litigation, but they also take the position that defendants waived any specific

22  /////

23

24         [9] In their brief, defendants state that the challenged time totals 55.3 hours.  However, the
   number of hours identified as vague in the exhibit which supports defendants' objection totals

25  49.9.  Six of the hours were spent by Michelle A. Downes on word processing services, which
   the court will not include in the lodestar.  See footnote 22, infra.  The court will therefore deduct

26  43.9 hours from the time claimed by attorneys and paralegals.

13

1  objections to time spent on this work by not interposing it when plaintiffs claimed the hours.

2  Plaintiffs cannot have it both ways.

3  The March 19, 1996 stipulation and order specifically covers only time spent by

4  plaintiffs' counsel on compliance monitoring. Thus, the procedures set forth therein did not

5  require counsel to submit to defendants any hours spent on fees work. In addition, defendants

6  interposed a blanket objection to time claimed for fees work on PLRA grounds. Nothing in the

7  stipulation provides that defendants waive their rights to raise other objections to time claimed

8  for fees work in the context of a motion by plaintiffs to compel payment of such fees.[10]

9  For the reasons set forth above, the court finds that plaintiffs did not waive their

10  right to seek compensation for hours spent on fees-on-fees work, nor did defendants waive their

11  right to raise specific objections to the claimed hours, because of alleged non-compliance with

12  the procedures set forth in the March 19, 1996 stipulation and order. In the interests of efficiency

13  and judicial economy, the court will recommend that the procedures set forth in the March 19,

14  1996 stipulation and order be amended to include any time spent by plaintiffs' counsel on fees

15  work and that the parties be directed to meet and confer concerning the 163.9 hours disputed by

16  defendants on plaintiffs' first and second quarter motions.[11] In all other respects, the court finds

17  the hours claimed by plaintiffs' counsel on their first and second quarter motions to be

18  /////

19  /////

20

21  [10] This court does not mean to suggest that either party may undermine the meet and
    confer process contemplated by the stipulation, either by failing to claim all quarterly time in one

22  request, or by failing to interpose all proper objections to time claimed. Rather, the court finds
    that fees work was (1) outside the scope of the March 19, 1996 stipulation and (2) subject to a

23  blanket objection by defendants pending resolution of the PLRA issue by the court, and that
    neither party should therefore be denied an opportunity at this juncture either to make a full claim

24  for hours spent on fees work, or to interpose specific objections to hours so claimed.

25  [11] The parties need not meet and confer concerning time spent on word processing
    services, see footnote 9, supra, because this court recommends that such time not be included in

26  the lodestar. See footnote 22, infra.

1   undisputed by defendants and reasonable and compensable.[12]   Accordingly, the court will

2   recommend compensation for the following number of hours:[13]

3           For the law firm of Rosen, Bien & Asaro:

4           Attorneys:                First Quarter        Second Quarter

5           Sanford J. Rosen          17.20 hours[14]          43.10 hours
            Michael Bien:             76.40 hours[15]          41.70 hours
6           Tony Paikeday             44.00 hours[16]         131.40 hours
            Tom Nolan                139.60 hours[17]         167.40 hours
7           A. Marie Villafana        60.00 hours             84.60 hours
            Donna Petrine              0.00 hours              1.20 hours
8           Hilary Fox                51.30 hours              0.00 hours
                   Totals:           388.50 hours            469.40 hours
9

10          Law Student                0.00 hours             16.70 hours

11          Paralegals               631.80 hours[18]        374.95 hours

12   /////

13   /////

14   /////

15   _____

16       [12] On this motion, plaintiffs seek only the following: compensation for time spent on the
     interim fees motion, compensation for the difference between PLRA rates and their normal
17   billing rates for hours defendants have not disputed in the meet and confer process, and time
     spent on fees work during the monitoring phase.  Plaintiffs have deferred presentation of a claim
18   for hours disputed by defendants on non-PLRA grounds.  (See Declaration of Michael W. Bien,
     filed September 30, 1996, and Exhibit A thereto.)

19       [13] The total claimed hours for the first quarter are drawn from the claimed hours in Charts
     Two and Six and the undisputed hours claimed in Chart Three, all in Exhibit A to the Declaration
20   of Michael Bien filed September 30, 1996.  The total claimed hours for the second quarter are
     drawn from the claimed hours in Charts Two and Six and the undisputed hours claimed in Chart
21   Three, all in Exhibit A to the Declaration of Michael W. Bien filed December 5, 1996.

22       [14] 19.2 hours claimed - 2 hours objected to.

23       [15] 85.4 hours claimed - 9.3 hours objected to.

24       [16] 47 hours claimed - 3 hours objected to.

25       [17] 153.1 hours claimed - 13.5 hours objected to.

26       [18] 647.9 hours claimed - 16.1 hours objected to.

For the Prison Law Office:

| | | |
|---|---|---|
| Donald Specter | 45.96 hours | 37.79 hours |
| Alison Hardy | 60.13 hours | 29.16 hours |
| Eve Shapiro | 0.00 hours | 37.30 hours |
| Totals: | 106.09 hours | 104.25 hours |
| Paralegals | 20.90 hours | 34.00 hours |

For the law firm of McCutchen, Doyle, Brown & Enersen:

Attorneys:

| | | |
|---|---|---|
| Warren E. George | 28.70 hours | 30.60 hours |
| C.L. Reid | 21.50 hours | .20 hours |
| J.R. Reese | 0.00 hours | 7.70 hours |
| Totals: | 50.20 hours | 44.10 hours |
| Law Student | 0.00 hours | 5.60 hours[19] |
| Paralegals: | 4.10 hours | 0.00 hours |

For the law firm of Heller, Ehrman, White & McAuliffe:

Attorneys:

| | | |
|---|---|---|
| Richard Goff | 31.70 hours | 55.10 hours[20] |
| Paralegals: | 1.25 hours | 110.50 hours[21] |

Thus, the court will recommend compensation for 576.49 hours of attorney time in the first quarter and 672.85 hours of attorney time in the second quarter; 22.3 hours of legal intern time in the second quarter; and 658.05 hours of paralegal time in the first quarter and

---

[19] Plaintiffs have not submitted a resume for A. D. Springer. The court infers from the hourly rate claimed for these services and the nature of the services performed that this individual was a law student working as a legal intern with the McCutchen firm. In connection with this motion, the court has issued two separate orders directing plaintiffs to supplement the record with the resumes of individuals for whose services compensation is sought. Plaintiffs are cautioned that failure to provide all necessary evidence in support of future motions may result in the denial of fees for services claimed.

[20] 91.35 hours claimed - 36.25 hours objected to.

[21] 194.25 hours claimed - 83.75 hours objected to.

1    519.45 hours of paralegal time in the second quarter.[22]  This represents the total number of hours

2    claimed by plaintiff which are undisputed on any ground other than the application of the PLRA

3    to this action.  In view of the lack of dispute between the parties concerning the reasonableness

4    of the hours claimed, and in view of the scope and complexity of the instant litigation, the hours

5    claimed are both reasonable and compensable.

6                        B.  Attorneys' Rates

7                        Plaintiffs seeks attorneys fees at rates ranging from $165.00 to $400.00 per hour

8    for attorneys, $110.00 to $125.00 per hour for legal interns, and $70.00 to $110.00 per hour for

9    paralegals.[23]  Defendants object to the requested rates and contend that competent representation

10   can be obtained for $90.00 to $175.00 per hour for associate attorneys, $150.00 to $250.00 per

11   hour for experienced attorneys, and $50.00 to $75.00 per hour for paralegals.[24]

12                       For the reasons set forth in this court's findings and recommendations on

13   plaintiffs' motion for an interim award of attorneys' fees, the court will recommend an award of

14   hourly rates based on those presently awarded in the Gates[25] litigation, which rates were set in

15   1994 and were used in 1995 and 1996.  (See Findings and Recommendations, filed January 21,

16   1997, at 17-19.)  The court will further recommend that those billing rates be the billing rates for

17   1996 in this action.  As with the motion for interim fees, in calculating the rates for each

18   _____

19        [22]  The law firm of Rosen, Bien and Asaro has also claimed time for word processing
     services, and defendants have not objected.  However, on the motion for interim fees, this court
20   recommended that such services be excluded from the lodestar calculation, and the district court
     adopted that recommendation.  Accordingly, the court will not include that time in the lodestar
21   calculation on this motion.

22        [23]  Plaintiffs also request rates of $55 per hour for word processors.  For the reasons set
     forth supra, the court views this time as non-compensable.  The court will not, therefore, make
23   any findings concerning the requested rates.

24        [24]  In this regard, defendants renew their objection raised to the rates requested on
     plaintiffs' motion for an interim award of fees and rely on the evidence tendered in connection
25   with that motion.

26        [25]  Gates v. Gomez, No. CIV S-87-1636 LKK JFM P.

                                        17

1  attorney, the court has started at the top end of the scale in the <u>Gates</u> litigation, where the most

2  experienced lawyer is receiving $335.00 per hour for merits work and $220.00 per hour for

3  fees-on-fees work[26], and has applied a sliding scale based on the number of years experience of

4  each attorney for whom fees are sought in this action.[27]  Accordingly, the recommended hourly

5  rates are as follows:

6  For the law firm of  Rosen, Bien & Asaro:

7

| Attorneys: | Requested Rate | Recommended Rate | |
|---|---|---|---|
| | | Merits | Fees on Fees |
| Sanford J. Rosen (1962) | $400.00 | $335.00 | $220.00 |
| Michael Bien (1980) | $300.00 | $285.00 | $195.00 |
| Tony Paikeday (1992) | $175.00 | $145.00 | $105.00 |
| Tom Nolan (1993) | $165.00 | $135.00 | $105.00 |
| A. Marie Villafana (1993) | $165.00 | $135.00 | $105.00 |
| Donna Petrine (1991) | $185.00 | $165.00 | $125.00 |
| Hilary Fox (1991) | $185.00 | $165.00 | $125.00 |
| Legal Intern | $125.00 | $100.00 | $ 85.00 |
| Paralegals | $75.00-$110.00 | $ 80.00 | $ 75.00 |

For the Prison Law Office:

| Donald Specter (1978) | $305.00 | $290.00 | $195.00 |
|---|---|---|---|
| Alison Hardy (1988) | $210.00 | $195.00 | $160.00 |
| Eve Shapiro (1992) | $170.00 | $145.00 | $105.00 |
| Paralegals | $90.00 | $ 80.00 | $ 75.00 |

For the law firm of McCutchen, Doyle, Brown & Enersen:

Attorneys:

| Warren E. George (1971) | $310.00 | $300.00 | $220.00 |
|---|---|---|---|
| C.L. Reid (1991) | $195.00 | $165.00 | $125.00 |
| J.R. Reese (1962) | $330.00 | $330.00 | $220.00 |
| Legal Intern | $110.00 | $100.00 | $ 85.00 |

---

[26]  The rationale applied in the <u>Gates</u> case for applying Sacramento rates for fees-on-fees work is equally applicable to the instant action.

[27]  The year each attorney graduated from law school is indicated in parentheses after their name.

| | | | |
|---|---|---|---|
| Paralegals: | $ 80.00 | $ 80.00 | $ 75.00 |

For the law firm of Heller, Ehrman, White & McAuliffe:

Attorneys:

| | | | |
|---|---|---|---|
| Richard Goff (1963) | $310.00 | $310.00 | $220.00 |
| Paralegals | $70.00-$95.00 | $ 80.00 | $ 75.00 |

C.  The Lodestar

In accordance with the foregoing analysis, this court finds the lodestar, reasonable fees times reasonable hours, to be as follows:

A.  For first quarter monitoring work:

For the law firm of  Rosen, Bien & Asaro:

Attorneys:

| | |
|---|---|
| Michael Bien: 69.4 hours at $285.00 per hour | $ 19,779.00 |
| A. Marie Villafana: 60.00 hours at $135.00 per hour | $  8,100.00 |
| Hilary Fox: 51.3 hours at $165.00 per hour | $  8,464.50 |
| Paralegals: 120.3 hours at $80.00 per hour | $  9,624.00 |
| Total: | $ 45,967.50 |

For the Prison Law Office:

| | |
|---|---|
| Donald Specter: 42.36 hours at $290.00 per hour | $ 12,284.40 |
| Alison Hardy: 60.13 hours at $195.00 per hour | $ 11,725.35 |
| Paralegals: 3.5 hours at $80.00 per hour | $    280.00 |
| Total: | $ 24,289.75 |

/////

19

For the law firm of McCutchen, Doyle, Brown & Enersen:

Attorneys:

| | | |
|---|---|---|
| Warren E. George: 28.70 hours at $300.00 per hour | $ | 8,610.00 |
| C.L. Reid: 21.5 hours at $165.00 per hour | $ | 3,547.50 |
| Paralegals: 4.10 hours at $80.00 per hour | $ | 328.00 |
| Total: | $ | 12,485.50 |

For the law firm of Heller, Ehrman, White & McAuliffe:

Attorneys:

| | | |
|---|---|---|
| Richard Goff: 31.70 hours at $310.00 per hour | $ | 9,827.00 |
| Paralegals: 1.25 hours at $80.00 per hour | $ | 100.00 |
| Total: | $ | 9,927.00 |
| Subtotal (all firms): | $ | 92,669.75 |

B. For first quarter fees work (including work on interim fees motion):

For the law firm of Rosen, Bien & Asaro:

Attorneys:

| | | |
|---|---|---|
| Sanford J. Rosen: 17.2 hours at $220.00 per hour | $ | 3,784.00 |
| Michael Bien: 7.0 hours at $195.00 per hour | $ | 1,365.00 |
| Tony Paikeday: 44.0 hours at $105.00 per hour | $ | 4,620.00 |
| Tom Nolan: 139.6 hours at $105.00 per hour | $ | 14,658.00 |
| Paralegals: 511.5 hours at $75.00 per hour | $ | 38,362.50 |
| Total: | $ | 62,789.50 |

| | |
|---|---|
| 1 | For the Prison Law Office: |
| 2 | Donald Specter: 3.60 hours at |
| | $195.00 per hour | $ 702.00 |
| 3 | |
| 4 | Paralegals: 17.4 hours at |
| | $75.00 per hour | $ 1,305.00 |

|  |  |
|---|---|
| Total: | $ 2,007.00 |
| Subtotal (all firms): | $ 64,796.50 |
| Total: | $157,466.25 |
| | - $54,547.13[28] |
| **TOTAL LODESTAR (First Quarter)** | $102,919.12 |

C. For second quarter monitoring work:

For the law firm of Rosen, Bien & Asaro:

Attorneys:

| | |
|---|---|
| Michael Bien: 23.2 hours at $285.00 per hour | $ 6,612.00 |
| A. Marie Villafana: 47.7 hours at $135.00 per hour | $ 6,439.50 |
| Paralegals: 104.55 hours at $80.00 per hour | $ 8,364.00 |
| Total: | $ 21,415.50 |

For the Prison Law Office:

| | |
|---|---|
| Donald Specter: 34.79 hours at $290.00 per hour | $ 10,089.10 |
| Alison Hardy: 29.16 hours at $195.00 per hour | $ 5,686.20 |
| Eve Shapiro: 37.30 hours at $145.00 per hour | $ 5,408.50 |
| Total: | $ 21,183.80 |

[28] This amount is the undisputed lodestar at PLRA rates and has been paid by defendants. See Chart Four to Exhibit A to Declaration of Michael Bien filed September 30, 1996.

21

For the law firm of McCutchen, Doyle, Brown & Enersen:

Attorneys:

| | |
|---|---|
| Warren E. George:  30.60 hours at $300.00 per hour | $  9,180.00 |
| C.L. Reid:  .20 hours at $165.00 per hour | $        33.00 |
| J.R. Reese:  7.70 hours at $335.00 per hour | $  2,579.50 |
| Legal Intern:  5.60 hours at $100.00 per hour | $      560.00 |
| Total: | $ 12,352.50 |

For the law firm of Heller, Ehrman, White & McAuliffe:

Attorneys:

| | |
|---|---|
| Richard Goff: 14 hours at $310.00 per hour | $  4,340.00 |
| Total: | $  4,340.00 |
| Subtotal (all firms): | $ 59,291.30 |

D. Second Quarter Fees Work

For the law firm of Rosen, Bien & Asaro:

Attorneys:

| | |
|---|---|
| Sanford J. Rosen:  43.1 hours at $220.00 per hour | $  9,482.00 |
| Michael Bien: 18.5 hours at $195.00 per hour | $  3,607.50 |
| Tony Paikeday: 131.4 hours at $105.00 per hour | $ 13,797.00 |
| Tom Nolan:  167.4 hours at $105.00 per hour | $ 17,577.00 |
| A. Marie Villafana: 36.9 hours at $105.00 per hour | $ 38,745.00 |

| | | |
|---|---|---|
| Donna Petrine: 1.2 hours at $125.00 per hour | $ | 150.00 |
| Legal Intern: 16.7 hours at $85.00 per hour | $ | 1,419.50 |
| Paralegals: 270.4 hours at $75.00 per hour | $ | 20,280.00 |
| Total: | $ | 84,778.00 |

For the Prison Law Office:

| | | |
|---|---|---|
| Donald Specter: 3.0 hours at $195.00 per hour | $ | 585.00 |
| Paralegals: 34.0 hours at $75.00 per hour | $ | 2,550.00 |
| Total: | $ | 3,135.00 |

For the law firm of Heller, Ehrman, White & McAuliffe:

Attorneys:

| | | |
|---|---|---|
| Richard Goff: 41.1 hours at $220.00 per hour | $ | 9,042.00 |
| Paralegals: 110.50 hours at $75.00 per hour | $ | 8,287.50 |
| | $ | 17,329.50 |
| Subtotal (all firms): | $ | 105,242.50 |
| Total: | $ | 164,533.80 |
| | -$ | 37,047.63[29] |
| TOTAL LODESTAR (Second Quarter) | $ | 127,486.17 |

D.  Costs

Plaintiffs seek costs in the amount of $1,343.79 for the first quarter and $5,087.07

for the second quarter.  These costs represent costs incurred in connection with fees-on-fees

---

[29]  This is the undisputed amount at PLRA rates and has already been paid by defendants.
See Chart One in Exhibit A to Declaration of Michael Bien filed December 5, 1996.

1  work, which defendants have refused to pay, asserting the PLRA.  Defendants interpose no other

2  objections to these costs.  Accordingly, plaintiffs should be awarded the claimed costs.

3    In accordance with the above, IT IS HEREBY RECOMMENDED that:

4    1.  Plaintiffs' motion to compel payment of disputed attorneys' fees and costs for

5  the first quarter be granted;

6    2.  Plaintiffs be awarded reasonable attorneys' fees in the amount of one hundred

7  two thousand nine hundred nineteen dollars and twelve cents ($102,919.12) and reasonable costs

8  in the amount of one thousand three hundred forty-three dollars and seventy-nine cents

9  ($1,343.79), for a total award of one hundred four thousand two hundred sixty-two dollars and

10  ninety-one cents ($104,262.91) for the first quarter;

11    3.  Plaintiffs' motion to compel payment of disputed attorneys' fees and costs for

12  the second quarter be granted;

13    4.  Plaintiffs be awarded reasonable attorneys' fees in the amount of one hundred

14  twenty-seven thousand four hundred eighty-six dollars and seventeen cents ($127,486.17) and

15  reasonable costs in the amount of five thousand eighty-seven dollars and seven cents ($5,087.07),

16  for a total award of one hundred thirty-two thousand five hundred seventy-three dollars and

17  twenty-four cents ($132,573.24) for the second quarter;

18    5.  The procedures set forth in the stipulation and order filed March 19, 1996

19  governing the periodic collection of attorneys' fees be modified to include time claimed by

20  plaintiffs for fees-on-fees work; and

21    6.  The billing rates set forth in these findings and recommendations be

22  established as plaintiffs' billing rates for the calendar year 1996.

23    These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within ten days after service of the objections.  The parties are advised

3  that failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED:  August 15, 1997.

6

7

                              UNITED STATES MAGISTRATE JUDGE

8  JFM:hg:cw
   coleman.1&2
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

07/12/2006 WED 14:33  FAX 4431162                                    ☒014/034

kdc

United States District Court
for the
Eastern District of California
August 15, 1997

\* \* CERTIFICATE OF SERVICE \* \*

2:96-cv-01151

Braggs

v.

Ukkerd

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  August 15, 1997, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Deon C Braggs                                      SJ/LKK
C-24858
FSP-1
Folsom State Prison
P O Box 290066                               CF/ JFm
Represa, CA  95671-0066

Kathleen Elizabeth Gnekow
Attorney General's Office of the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Jack L. Wagner, Clerk

BY:  _KCarlos_____
Deputy Clerk

**FILED**

SEP 30 1997

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

         Plaintiffs,              No. CIV S-90-0520 LKK JFM P

      vs.

PETE WILSON, et al.,

         Defendants.           <u>ORDER</u>

_____/

        Plaintiffs are a class of state prisoners proceeding through counsel with this civil rights action under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

        On August 15, 1997, the magistrate judge filed findings and recommendations herein which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within ten days. After an extension of time, defendants have filed objections to the findings and recommendations, and plaintiffs have filed a response to defendants' objections.

        In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this court has conducted a de novo review of this case. Having carefully reviewed the entire

/////

887

1

1  file, the court finds the findings and recommendations to be supported by the record and by

2  proper analysis.

3      Accordingly, IT IS HEREBY ORDERED that:

4      1.  The findings and recommendations filed August 15, 1997, are adopted in full;

5      2.  Plaintiffs' motion to compel payment of disputed attorneys' fees and costs for

6  the first quarter is granted;

7      3.  Plaintiffs are awarded reasonable attorneys' fees in the amount of one hundred

8  two thousand nine hundred nineteen dollars and twelve cents ($102,919.12) and reasonable costs

9  in the amount of one thousand three hundred forty-three dollars and seventy-nine cents

10  ($1,343.79), for a total award of one hundred four thousand two hundred sixty-two dollars and

11  ninety-one cents ($104,262.91) for the first quarter;

12      4.  Plaintiffs' motion to compel payment of disputed attorneys' fees and costs for

13  the second quarter is granted;

14      5.  Plaintiffs are awarded reasonable attorneys' fees in the amount of one hundred

15  twenty-seven thousand four hundred eighty-six dollars and seventeen cents ($127,486.17) and

16  reasonable costs in the amount of five thousand eighty-seven dollars and seven cents ($5,087.07),

17  for a total award of one hundred thirty-two thousand five hundred seventy-three dollars and

18  twenty-four cents ($132,573.24) for the second quarter;

19      6.  The procedures set forth in the stipulation and order filed March 19, 1996

20  governing the periodic collection of attorneys' fees are modified to include time claimed by

21  plaintiffs for fees-on-fees work; and

22  /////

23  /////

24  /////

25  /////

26  /////

2

1        7.  The billing rates set forth in the August 15, 1997 findings and

2  recommendations are established as plaintiffs' billing rates for the calendar year 1996.

3  DATED:  September 26, 1997.

4

5                                          LAWRENCE K. KARLTON

6                                          CHIEF JUDGE EMERITUS

7                                          UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ndd

United States District Court
for the
Eastern District of California
September 30, 1997

\* \* CERTIFICATE OF SERVICE \* \*

2:90-cv-00520

Coleman

v.

Reagan

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  September 30, 1997, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.

Donald Specter                          SJ/LKK
Prison Law Office
General Delivery                        CF/JFM
San Quentin, CA  94964

Michael W Bien
Rosen Bien and Asaro
155 Montgomery Street
Eighth Floor
San Francisco, CA  94104

Bruce Michael Slavin
Attorney General's Office of the State of California
50 Fremont Street
Suite 300
San Francisco, CA  94105-2239

J Michael Keating Jr
Christopher H Little & Associates
50 S Main St
Providence, RI  02903

Edmund F Brennan
United States Attorney
555 Capitol Mall
Suite 1550
Sacramento, CA  95814


Jack L. Wagner, Clerk

BY: _____
Deputy Clerk