1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6  1300 I Street, Suite 125
   P.O. Box 944255
7  Sacramento, CA 94244-2550
   Telephone: (916) 327-7872
8  Fax: (916) 324-5205

9  Attorneys for Defendants
   CF1997CS0003

10

**FILED**

JUL 2 1 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

MAINTAIN ON PAPER

SEALED

11

12          IN THE UNITED STATES DISTRICT COURT

13          FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15  **RALPH COLEMAN, et al.,**          CASE NO. CIV S-90-0520 LKK
                                        JFM P
16                      Plaintiffs,     _Filed Under Seal_
                                        **DEFENDANTS' SUBMISSION**
17          v.                          **OF DOCUMENTS IN**
                                        **RESPONSE TO COURT**
18  **ARNOLD SCHWARZENEGGER, et al.,**  **ORDER OF JULY 17, 2006**

19                      Defendants.

20

21          On July 17, 2006, this Court ordered Defendants to provide to the Special Master all

22  documents relevant to the requests of the California Department of Corrections and

23  Rehabilitation (CDCR) for staffing to implement the court-approved provisions of the Revised

24  Program Guides including but not limited to:

25          1. The budget change proposal on staffing for FY 2005-06 submitted by CDCR to the

26          Department of Finance;

27          2. DOF "analytical working papers created by the DOF for any of the budget

28          proposals referenced in the Special Master's report."

DEFENDANTS' SUBMISSION OF DOCUMENTS CT. ORDER

1    In response to this court order, Defendants hereby submit the following Bates-stamped

2    documents:

3    | BATES NUMBER | DOCUMENT TITLE |
| --- | --- |
| 00800 | Issue Proof Listing, entitled, Lawsuit: *Coleman v. Schwarzenegger*, |
|  | Court Order Compliance and Program Guide Implementation. |
| 00803 | Unit Review: Initial Proposal |
|  | [This document is part of the Issue Proof Listing and, due to |
|  | technical limitations of the DOF software, is printed out separately |
|  | due to length.] |
| 00807 | 2006/07 *Coleman* Finance Letter Summary |
| 00808 | Issue Proof Listing, entitled, Comprehensive Health Care |
|  | Recruitment Staff |
| 00809 | Finance Letter, Cover Sheet, Fiscal Year 2006-07, entitled, |
|  | Comprehensive Health Care Recruitment Staff |
| 00810 | Budget Change Proposal, Fiscal Detail, Revision 050831, entitled, |
|  | Comprehensive Health Care Recruitment |
| 00818 | CDCR Comprehensive Health Care Recruitment Staff, Finance |
|  | Letter, Fiscal Year 2006/07, with attachment *Plata* Live Scan |
|  | Project |
| 00831 | Issue Proof Listing, entitled, Pay Enhancement, Corcoran State |
|  | Prison, *Coleman v. Schwarzenegger* |
| 00834 | Issue Proof Listing, entitled, Pay Enhancement, Various Health |
|  | Care Headquarters Positions |
| 00836 | 2006/07 Late Finance Letter, MH Psychiatric Staff Pay |
|  | Enhancements Summary |
| 00838 | 2006/07 Late Finance Letter, Pay Enhancements, Corcoran |
|  | Summary |
| 00839 | 2006/07 Late Finance Letter, Pay Enhancements, Headquarters |
| 00841 | 5/13/05 Letter from DOF re: Amendment to Budget Bill Items |

| | |
|---|---|
| 00858 | May Revision Justification for Base Adjustments, Corcoran State Prison |
| 00859 | Budget Change Proposal, entitled *Coleman* Corcoran State Prison, date 5/04/05, with attached court order, 3/7/05 |
| 00873 | May Revision Justification for Base Adjustments, Corcoran State Prison |
| 00874 | Budget Change Proposal, entitled *Coleman* Corcoran State Prison, date 5/04/05, with attached court order, 3/7/05 |
| 00888 | Finance Letter, Fiscal Year 2005/06, *Coleman* Guidelines to the Mental Health Services Delivery System |
| 00889 | CDCR May Revise Finance Letter, *Coleman* Guidelines to the Mental Health Services Delivery System at Corcoran State Prison, Fiscal Year 2005/06, Attachments A - E |
| 00970 | Finance Letter, Fiscal Year 2005/06, entitled, *Coleman* Guidelines to Mental Health Services Delivery System |
| 00971 | CDCR Spring Finance Letter, Fiscal Year 2005/06, *Coleman* Guidelines to the Mental Health Services Delivery System |
| 01022 | Issue Proof Listing, *Coleman* Guidelines for the Mental Health Services Delivery System, with chart with number of PSN, Classification, Feasible Alternative A, B, Attachment C |
| 01030 | 2000-01 BCP Review, *Coleman v. Wilson*, Mental Health Court Order |
| 10136 | CDCR Draft Finance Letter, 2006/07 Fiscal Year |

Defendants note that the following documents were previously produced to Special Master:

| | |
|---|---|
| 0027-0051 | CDCR Finance Letter, Fiscal Year 2006-07, Mental Health Program, with cover memo, DF-46 Finance Letter Cover Sheet (produced June 16, 2006) |

| | | |
|---|---|---|
| 1 | 0052-0064 | CDCR Finance Letter, Fiscal Year 2006-07, Mental Health |
| 2 | | Program, DF-46 Finance Letter Cover Sheet, with 12 pages of |
| 3 | | supporting documentation |
| 4 | | (produced June 16, 2006) |
| 5 | 0065-00131 | CDCR Finance Letter, Fiscal Year 2006/07, Mental Health |
| 6 | | Program, pages 1-52, with attachments labeled 2, 2A, 15 (two |
| 7 | | pages), 30, and 10-page printout |
| 8 | | (produced June 16, 2006) |
| 9 | 00132-00791 | Attachments 1 through 40 of CDCR Finance Letter, Fiscal Year |
| 10 | | 2006/07, Mental Health Program |
| 11 | | (produced June 16, 2006) |
| 12 | No Bates stamp | Locked Units, [Proposed] Mental Health Staffing Form DF-46 |
| 13 | | Budget Change Proposal, Revision 050831, with accompanying |
| 14 | | documentation |
| 15 | No Bates stamp | Form DF-46 Budget Change Proposal, Revision 050831, with |
| 16 | | accompanying documentation. |
| 17 | No Bates stamp | Final Budget Proposal, *Modifications Necessary to Meet July 26,* |
| 18 | | *1999 Court Order in Coleman v. Davis* |
| 19 | | (produced July 11, 2006) |
| 20 | No Bates stamp | Data on Prevalence Mix Adjustments |
| 21 | | (produced July 11, 2006) |
| 22 | No Bates stamp | Chart, entitled *Summary of Existing Clinical and Custody Staffing* |
| 23 | | *for Ad Seg, SHU, and Condemned Units, As Approved in Budget* |
| 24 | | *Acts Since Fiscal Year 2000-01.* |
| 25 | | (produced July 11, 2006) |

26    Defendants state that a diligent search is underway for additional documents responsive

27  to this request, particularly any email communications. Further, this search will continue as

28  certain employees return from vacation over the next few days. This response may be

1 | supplemented if additional documents responsive to this request are discovered .

2 |     Defendants respectfully produce these documents to Special Master Keating without

3 | waiving any privilege, including the deliberative process privilege, and request that the

4 | documents produced herein be maintained under seal.

5 |     Dated: July 19, 2006

6 |         Respectfully submitted,

7 |         BILL LOCKYER
        Attorney General of the State of California

8 |         JAMES M. HUMES
        Chief Assistant Attorney General

9 |

        FRANCES T. GRUNDER
10 |         Senior Assistant Attorney General

        ROCHELLE C. EAST
11 |         Supervising Deputy Attorney General

12 |

13 |

14 |         LISA A. TILLMAN
        Deputy Attorney General

15 |         Attorneys for Defendants

16 |

17 | 
30142372.wpd

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

DEFENDANTS' SUBMISSION OF DOCUMENTS CT. ORDER

# ISSUE PROOF LISTING

**(Dollars in thousands)**

| 5225 | Corrections and Rehabilitation |
|------|-------------------------------|

| Issue Number | Issue Title | | | | Ref # | Fund | Analyst |
|---|---|---|---|---|---|---|---|
| 377 | Lawsuit: Coleman v. Schwarzenegger, Court Order Compliance and Program | | | | | | Daphne Huang |
| Sort Order | Guide Implementation | | | | Base $:  GF | | OF |

### Codes

| Point in Time | Prob/Sol | Policy Category | Prior Yr Adj | In Budget | Policy/Tech | Trailer Bill | Prop 98 | CH | Decision Status |
|---|---|---|---|---|---|---|---|---|---|
| MR | B | | No | No | T | N | N | SO | Approved |
| Program | Agency | | | | Reportable | Mainframe | Independent/Merge | | Decision Level |
| Public Safety | Corrections and Rehabilitation | | | | Yes | No | Independent | | Gov Senior St |
| Origin | | Field 1 | Field 2 | | Field 3 | | Field 4 | | Lists |
| Department | | | | | | | | | |

### Fiscal Detail

| Fiscal Year | Initial | | | | Recommended | | | |
|---|---|---|---|---|---|---|---|---|
| | PYs | General Fund | Other Funds | GFOne Time | PYs | General Fund | Other Funds | GFOne Time |
| 2005-06 | 0.0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 |
| 2005-06 | | | | | | | | |
| 2006-07 | 507.3 | 52,182 | 0 | 0 | 206.2 | 20,197 | 0 | 0 |
| 2006-07 | | | | | | | | |
| 2007-08 | 507.3 | 52,182 | 0 | 0 | 206.2 | 20,197 | 0 | 0 |

*Shaded figures are non-add.*

### Comments

#### Unit Review
**INITIAL PROPOSAL**
**PROPOSAL:** The California Department of Corrections and Rehabilitation is requesting $8.7 million in 2005-06; and $87.6 million and 631.6 PYs (657.6 positions) in the 2006-07 in response to various pending court orders related to *Coleman v. Schwarzenegger* lawsuit.

**ANALYSIS:**
*PBM/Capitol Office Review*
**PROPOSAL:** The Department is requesting 657.6 positions and $52.2 million General Fund in response to various court orders related to *Coleman v. Schwarzenegger* lawsuit. The primary court requirements addressed in this request are the implementation of the Revised Mental Health Program Guide in all CDCR institutions. In addition, this request includes positions to expand the mental health program headquarters staff and to improve recruitment for psychiatrists.

**DESCRIPTION OF REQUEST:**

Implementation of Revised Mental Health Program Guide
The Mental Health Program Guide describes the policies and procedures that CDCR staff in the institutions must follow to identify and treat inmates with mental health diagnosis. These guidelines recently went through a significant revision process and on March 2, 2006, the court ordered that these guidelines be immediately implemented. CDCR indicates that the most significant workload impact of these guidelines is in occurs in specific custody settings where the guidelines require additional treatment and documentation. Therefore, the department is requesting that:
- 300 positions for Administrative Segregation Units that have inmates in the Correction Clinical Case Management System (CCCMS), 231.5 of these positions would provide direct patient care and 68.5 would provide program management in the field.
- 71.6 positions for Reception Centers, 51.0 of these positions would provide clinical evaluations, assessments, and referrals and 20.6 perform central file review functions.
- 73 positions for weekend staffing of Outpatient Housing Units with mental health patients located in five institutions where there are no mental health crisis beds. This will ensure that the Department is meeting the 7-day coverage requirement for these inmates included in the Revised Program Guide.
- 9 new positions and the upgrade of 10 existing positions to provide additional supervision for Licensed Psychiatric Technicians.
- 56 positions to track compliance with the guidelines and perform quality management functions at each of the 28 prisons that could house inmates with mental health diagnosis. This would provide one Health Program Specialist and one Office Technician per institution.

- ~~Technician per institution.~~
- $779,000 for a contract to run a two-year pilot project to test a new diagnostic tool to identify inmates arriving at Reception Centers with mental health needs.
- $1.2 million for various one-time equipment needs.

Increased Management Staffing for the Mental Health Program

The Department is requesting 100 positions at headquarters to improve management and increase program oversight statewide. A court order issued on March 2, 2006, based on the 15th Round Special Master Monitoring Report requires that the department submit a plan for adequately staffing mental health management at headquarters by May 1,2006. This request is in response to that order and the department indicates that this is also aligned with the current Division of Correctional Health Care Services strategic planning model for management of all major programs. While the Department indicates that they believe this is the minimum staffing level necessary to adequately manage the mental health program, this request is not based on a workload analysis, but is based on an assessment of the organizations functional needs. Therefore, the Department is also requesting one-time funding of $400,000 to conduct a workload study to validate the level of ongoing staffing required for the mental health program in headquarters and the field.

Improved Recruitment and Hiring Processes for the Mental Health Program

The Department indicates that this is necessary to reduce the vacancy rates in psychiatrist positions. A 1999 court order required CDCR to maintain a psychiatrist vacancy rate of no more than 10 percent, including contract positions. In addition, this requirement was recently reiterated in court order issued on March 2, 2006, based on the 15th Round Special Master Monitoring Report which requires the department to submit a plan with strategies to reduce the vacancy rate for psychiatrists by May 1, 2006. Further, recent vacancy rate data indicates that the department is experiencing vacancies of 25-44 percent in the psychiatrist classifications. We note that proposed responses to this court order related to salary enhancements will be addressed during the normal May Revision timeframes. This request includes 15.0 positions in the CDCR Human Resources Office to improve recruitment, testing, and background checks, 33.0 office technician positions at the institutions to facilitate expedited hiring process. This requests also includes funding for an Interagency Agreement with the State Personnel Board to develop and maintain online exams and $3 million to augment existing funding for emergency contracts with registries. In addition, the department indicates that the Live Scan IT project proposed in the request related to Plata will also be used for this proposal.

**COMMENTS:**

Implementation of Revised Mental Health Program Guide
- Although a methodology for Program Guide staffing was developed based on existing standards and some estimate of increased workload, it lacks of objective, comprehensive workload data upon which to base an impartial analysis of the actual workload of the staff proposed to implement the changes.
- There is no data to evaluate the efficiency in service delivery with existing resources.
- There is limited information or analysis of existing base resources available.
- In some cases there was no analysis of different levels of need by institution based on programs, population, staffing, etc. This is especially apparent in the positions requested for quality management at each institution and the supervisory positions requested for each institution in the Administrative Segregation Units.
- We note that while the department has proposed a phased-in hiring plan for these positions, it is still lacking consideration of practical implementation issues, such as where these staff will be located within the institution, and how a significant number of new positions in these classifications can be recruited when existing positions have significant vacancy rates.
- It is unclear if the pilot project to test a new diagnostic tool for Reception Centers has been coordinated with other Departmental efforts related to streamlining the Reception Center intake process.

Increased Management Staffing for the Mental Health Program
- While there may be a need for additional management and leadership for this program, no information has been provided to indicate that this is the appropriate level of staff for this purpose.
- No information was provided to justify the appropriateness of level and classification of many leadership positions requested (i.e. CEA, Facility Captain, etc.)
- There is no workload data to support the level of headquarters staff requested.
- There is limited information on the level of base resources that may be available to perform some of these functions department-wide.
- It is not clear that space will be available to house these staff if they were approved and hired.

Improved Recruitment and Hiring Processes for the Mental Health Program
- While there is a court order specifically requiring the department to improve staff recruitment, the order does not specify a level of resources for this activity. It specifies that a specific level of hiring be achieved. While it is likely that this proposal will assist CDCR to better meet these requirements, we are unable to assess the need for the specific level of resources requested.
- There is no workload justification for the level of staffing requested.
- No information on existing base resources was provided.
- We note that it appears that this proposal is replicating, and in some cases an adjunct to, the proposal related to improving recruitment and hiring for the medical program. While it seems appropriate to utilize similar processes to the extent that they are successful, it is not clear that these proposals have been coordinated on a workload basis.
- It is not clear that it is appropriate to "dedicate" staff for hiring only one type of health care positions when their expertise could be utilized for all types of healthcare staff. In fact, it appears that this may actually be what is proposed if these two hiring proposals were combined. For example, this request includes clerical staff at institutions that appear to be in support of the analytical staff requested for institutions in the Plata proposal.

**RECOMMENDATION:** Based on the comments above, we are unable to support the bulk of this request on an analytical basis. However, we recognize that based on the various court-orders requiring the Department to take make changes in its mental health program and improve recruitment of psychiatrists, therefore, we recommend approval of the following:

Implementation of Revised Mental Health Program Guide
- 71.6 positions for Reception Centers, 51.0 of these positions would provide clinical evaluations, assessments, and referrals and 20.6 perform central file review functions.
- 73 positions for weekend staffing of Outpatient Housing Units with mental health patients located in five institutions where there are no mental health crisis beds. This will ensure that the Department is meeting the 7-day coverage requirement for these inmates included in the Revised Program Guide.
- 9 new positions and the upgrade of 10 existing positions to provide additional supervision for Licensed Psychiatric Technicians.
- 6 Sr. Psychologist Supervisors to provide additional supervison in institutions where there is a high-propensity of mental health inmates in Ad Seg or SHU.
- 9 Health Program Specialist positions to track compliance with the guidelines and perform assist QMAT teams with quality management functions in the institutions.
- $779,000 for a contract to run a two-year pilot project to test a new diagnostic tool to identify inmates arriving at Reception Centers with mental health needs.

We note that we are denying the request related to Ad Seg staffing to meet program guidline requirements because the base level of staffing requested was already provided in fiscal year 2000-01.

Increased Management Staffing for the Mental Health Program
We are supportive of the organizational structure proposed, however, without workload information we cannot assess the level of staffing requested. Therefore, we have identified a lower level of positions in some areas that can be supported, we are recommending full funding of the QMAT functions, and approval of the funds for a workload study as follows:

• 86 positions at headquarters to improve management and increase program oversight statewide (includes QMAT).

• One-time funding of $400,000 to conduct a workload study to validate the level of ongoing staffing required for the mental health program in headquarters and the field.

Improved Recruitment and Hiring Processes for the Mental Health Program
We intend to approve some level of positions for employee recruitment activities pending the receipt of specific data on the number of all heath care classifications vacancy rate by instition. Without this data we recommend a specific level of resources or confirm that the level of resources requested is appropriate.

*Governor's Review*

*Public Comments*

00802

*Unit Review*

**INITIAL PROPOSAL**
**PROPOSAL:** The California Department of Corrections and Rehabilitation is requesting $8.7 million in 2005-06; and $87.6 million and 631.6 PYs (657.6 positions) in the 2006-07 in response to various pending court orders related to *Coleman v. Schwarzenegger* lawsuit.

**ANALYSIS:**

Purpose:
To improve adult mental health program in response to the first and second recommendations stated in the 15th Round Special Master Monitoring and the implementation of the Revised Mental Health Guide, and address other miscellaneous issues related to Mental Health Program staffing and court related responses.

The request can be broken down to five major components as follows:

- The 1st Recommendation in the 15th Round Special Master Monitoring Report requires a plan with strategies to reduce vacancy rate for psychiatrists to no more than 10%. The plan requires a pay differential for psychiatrists. The request includes approx. $5.1 million in CY; and $22.4 million and 48.0 personnel services related positions in BY to implement these changes on March 1, 2006.
- The 2nd Recommendation in the 15th Round Special Master Monitoring Report requires a plan for adequately staffing mental health management headquarters. The request includes approx. $163,328 in CY, and $11.2 million and 100.0 positions in BY to expand mental health headquarters staff on July 1, 2006. This includes R&Rs for headquarters staff in both years.
- The Mental Health Program Guide Revision requires enhanced services and care in CDCR's mental health delivery system, especially for the most critical population such as Administrative Segregation Unit. The request includes approx. $39.1 million and 509.6 positions in BY to implement these changes on July 1, 2006. This does not directly affect DMH-run mental health programs.
- The R&Rs for other mental health classifications proposed in this request includes $3.1 million in CY and $9.4 million in BY. This proposal may be related to a 1999 court order requiring CDCR to keep vacancy rates below 10% for these positions.
- Geographical R&Rs proposed for various mental health classifications in KVSP, NKSP and other central valley prisons, approx. $289,000 in CY and $868,000 in BY. There is a February 15 court order related to some of these institutions and their vacancy rates.

Summary of Request:
CY Request Related to first Recommendation:
- $86,290 ongoing funding for HAM in psychiatrist series.
- $3.9 million ongoing for pay differential psychiatrist series
- $163,328 ongoing for pay differential for headquarters mental health classifications.
CY Request Related to Geographical R&Rs:
- $26,004 ongoing funding for KVSP and NKSP mental health clinicians.
- $263,344 ongoing funding for other mental health classifications in the central valley.
CY Request Related to R&Rs for other mental health classifications
- $3.1 million ongoing funding for HAM in other mental health classifications.
BY Request Related to first Recommendation:
- $258,869 ongoing funding for HAM in psychiatrist series.
- $11.4 million ongoing funding for psychiatrist series pay differentials
- $489,984 ongoing funding for headquarter mental health staff pay differential.
- $3 million for a place holder for emergency contracts
- $600,000 one-time funding for development and $1.1 million ongoing for annual maintenance for 15 online exams.
- 15.0 positions in headquarter and 33.0 positions in the field related to human resources and personnel selection.
- $121,129 one-time funding of 25 modular workstations to accommodate these personnel staff added.
BY Request Related to second Recommendation:
- 4.0 positions for statewide mental health program directorship, including 1.0 CEA and support staff.
- 52.0 positions for Quality Management Assistance Program, including leadership, mental health staff, facility captain, nurse consultant, and support staff.
- Positions to establish or augment existing units in the mental health central office, including Psychiatry Services Branch, Tele-Psychiatry Sections, Project Management Unit, Clinical Operations Branch, Centralized Clinical Case Management Unit, Utilization Management Unit, Clinical Policy and Programs Development and Clinical Evaluation Branch, Psychological Testing and Forensic Evaluation Unit, etc.
- $2.1 million for extraordinary travel and quarterly meetings by central office staff.
- $107,514 for office equipment purchase at the central office, including locking shelf, copiers, fax machines, cell phones, laptops, pagers, vehicle leasing, etc.
- One-time $400,000 for workload study.

BY Request Related to 2006 Revised Program Guide:

- 300.0 positions for ASU CCCMS, including clinical, custody, and support staff.
- 71.6 positions for Mental Health RC Processing, including clinical and custody staff.
- 73.0 positions for MOHU, including clinical and support staff for weekend coverage.
- 9.0 supervising psychiatric technician positions and upgrade 10.0 psychiatric technician positions to senior level.
- 56.0 positions for Program Performance Evaluation and Court Compliance, including program and support staff.
- $748,800 per year for a two-year and $30,000 supplies for a pilot program related to RC Screening and Diagnostic Clarification process.
- One-time $1.1 million for equipment purchase, including treatment cells, laptops, golf carts, copiers, TVs, fax machines, dictation equipment, group therapy material, and shredders.
- Ongoing $50,000 for form printing cost.

BY Request Related to Geographical R&Rs:
- $78,012 ongoing funding for KVSP and NKSP mental health clinicians.
- $790,032 ongoing funding for other mental health classifications in the central valley.

BY Request Related to R&Rs for other mental health classifications:
- $9.4 million ongoing funding for HAM in all other mental health classifications.

Issues & Concerns:
- No workload data to support headquarter staff requested.
- No justification or information on appropriateness of level and classification of many leadership positions requested (i.e. CEA, Facility Captain, etc.)
- Although methodology for Program Guide staffing was developed, but it lacks of objective, meaningful workload data upon which to base an impartial analysis of the actual workload of the staff proposed to implement the changes proposed.
- Lack of confident data to evaluate the efficiency in service delivery by existing resources and justify the level of augmentation requested for the Revised Program Guide.
- Limited information or analysis of existing base resources available.
- No analysis of different levels of need by institution.
- Proposed March 1 implementation of R&Rs is problematic from fiscal and employee comp policy perspectives.
- R&Rs for mental health staff other than psychiatrists were not specifically required in the Report, and we have not able to verify the vacancy rate for these classifications to justify the need for pay differentials.
- It is premature to evaluate what is the appropriate level of R&Rs before DPA's compensation study scheduled to be released at the end of March.
- Solutions to vacancy issues are primary compensation related, without full consideration of other factors such as pipeline issues.
- Lacks consideration of practical implementation issues, such as the ability to hire and house this number of staff by July 1.
- Unable to evaluate proposes IT projects of pilot MCMI-III test administration and Web-based exam due to lack of information on scope of projects, implementation plan, etc. A FSR related to these projects has not been submitted. OTROS recommend disapprove $1.1 million for LiveScan in this request, as it is a duplicate request in the *Plata* Court Order Finance Letter, and recommend approval of laptops for new clinical staff.
- R&Rs and HAM for other mental health positions can be problematic. It affects CDCR's Juvenile Justice Division, DMH and other departments. It does not appear that this proposal was coordinated with DPA or DMH.
- It is not clear that the facility-related needs identified were coordinated with CDCR facility staff.
- Impacts of proposed salary changes on the collective bargaining process.
- State policy of looking at "total compensation" for salary changes would be compromised by moving forward before DPA study without statewide impacts addressed.

## Revised Proposal:

**PROPOSAL:** The Department is requesting 657.6 positions and $52.2 million General Fund in response to various court orders related to *Coleman v. Schwarzenegger* lawsuit. The primary court requirements addressed in this request are the implementation of the Revised Mental Health Program Guide in all CDCR institutions. In addition, this request includes positions to expand the mental health program headquarters staff and to improve recruitment for psychiatrists.

### DESCRIPTION OF REQUEST:

Implementation of Revised Mental Health Program Guide
The Mental Health Program Guide describes the policies and procedures that CDCR staff in the institutions must follow to identify and treat inmates with mental health diagnosis. These guidelines recently went through a significant revision process and on March 2, 2006, the court ordered that these guidelines be immediately implemented. CDCR indicates that the most significant workload impact of these guidelines is in occurs in specific custody settings where the guidelines require additional treatment and documentation. Therefore, the department is requesting:



- 300 positions for Administrative Segregation Units that have inmates in the Correction Clinical Case Management System (CCCMS), 231.5 of these positions would provide direct patient care and 68.5 would provide program management in the field
- 71.6 positions for Reception Centers, 51.0 of these positions would provide clinical evaluations, assessments, and referrals and 20.6 perform central file review functions.
- 73 positions for weekend staffing of Outpatient Housing Units with mental health patients located in five institutions where there are no mental health crisis beds. This will ensure that the Department is meeting the 7-day coverage requirement for these inmates included in the Revised Program Guide.
- 9 new positions and the upgrade of 10 existing positions to provide additional supervision for Licensed Psychiatric Technicians.
- 56 positions to track compliance with the guidelines and perform quality management functions at each of the 28 prisons that could house inmates with mental health diagnosis. This would provide one Health Program Specialist and one Office Technician per institution.
- $779,000 for a contract to run a two-year pilot project to test a new diagnostic tool to identify inmates arriving at Reception Centers with mental health needs.
- $1.2 million for various one-time equipment needs.

Increased Management Staffing for the Mental Health Program
The Department is requesting 100 positions at headquarters to improve management and increase program oversight statewide. A court order issued on March 2, 2006, based on the 15th Round Special Master Monitoring Report requires that the department submit a plan for adequately staffing mental heath management at headquarters by May 1,2006. This request is in response to that order and the department indicates that this is also aligned with the current Division of Correctional Health Care Services strategic planning model for management of all major programs. While the Department indicates that they believe this is the minimum staffing level necessary to adequately manage the mental health program, this request is not based on a workload analysis, but is based on an assessment of the organizations functional needs. Therefore, the Department is also requesting one-time funding of $400,000 to conduct a workload study to validate the level of ongoing staffing required for the mental health program in headquarters and the field.

Improved Recruitment and Hiring Processes for the Mental Health Program
The Department indicates that this is necessary to reduce the vacancy rates in psychiatrist positions. A 1999 court order required CDCR to maintain a psychiatrist vacancy rate of no more that 10 percent, including contract positions. In addition, this requirement was recently reiterated in court order issued on March 2, 2006, based on the 15th Round Special Master Monitoring Report which requires the department to submit a plan with strategies to reduce the vacancy rate for psychiatrists by May 1, 2006. Further, recent vacancy rate data indicates that the department is experiencing vacancies of 25-44 percent in the psychiatrist classifications. We note that proposed responses to this court order related to salary enhancements will be addressed during the normal May Revision timeframes. This request includes 15.0 positions in the CDCR Human Resources Office to improve recruitment, testing, and background checks, 33.0 office technician positions at the institutions to facilitate expedited hiring process. This requests also includes funding for an Interagency Agreement with the State Personnel Board to develop and maintain online exams and $3 million to augment existing funding for emergency contracts with registries. In addition, the department indicates that the Live Scan IT project proposed in the request related to Plata will also be used for this proposal.

COMMENTS:

Implementation of Revised Mental Health Program Guide
- Although a methodology for Program Guide staffing was developed based on existing standards and some estimate of increased workload, it lacks of objective, comprehensive workload data upon which to base an impartial analysis of the actual workload of the staff proposed to implement the changes.
- There is no data to evaluate the efficiency in service delivery with existing resources.
- There is limited information or analysis of existing base resources available.
- In some cases there was no analysis of different levels of need by institution based on programs, population, staffing, etc. This is especially apparent in the positions requested for quality management at each institution and the supervisory positions requested for each institution in the Administrative Segregation Units.
- We note that while the department has proposed a phased-in hiring plan for these positions, it is still lacking consideration of practical implementation issues, such as where these staff will be located within the institution, and how a significant number of new positions in these classifications can be recruited when existing positions have significant vacancy rates.
- It is unclear if the pilot project to test a new diagnostic tool for Reception Centers has been coordinated with other Departmental efforts related to streamlining the Reception Center intake process.

Increased Management Staffing for the Mental Health Program
- While there may be a need for additional management and leadership for this program, no information has been provided to indicate that this is the appropriate level of staff for this purpose.
- No information was provided to justify the appropriateness of level and classification of many leadership positions requested (i.e. CEA, Facility Captain, etc.)
- There is no workload data to support the level of headquarters staff requested.

- There is limited information on the level of base resources that may be available to perform some of these functions department-wide.
- It is not clear that space will be available to house these staff if they were approved and hired.

Improved Recruitment and Hiring Processes for the Mental Health Program
- While there is a court order specifically requiring the department to improve staff recruitment, the order does not specify a level of resources for this activity. It specifies that a specific level of hiring be achieved. While it is likely that this proposal will assist CDCR to better meet these requirements, we are unable to assess the need for the specific level of resources requested.
- There is no workload justification for the level of staffing requested.
- No information on existing base resources was provided.
- We note that it appears that this proposal is replicating, and in some cases an adjunct to, the proposal related to improving recruitment and hiring for the medical program. While it seems appropriate to utilize similar processes to the extent that they are successful, it is not clear that these proposals have been coordinated on a workload basis.
- It is not clear that it is appropriate to "dedicate" staff for hiring only one type of health care positions when their expertise could be utilized for all types of healthcare staff. In fact, it appears that this may actually be what is proposed if these two hiring proposals were combined. For example, this request includes clerical staff at institutions that appear to be in support of the analytical staff requested for institutions in the Plata proposal.

**RECOMMENDATION:** Based on the comments above, we are unable to support this request on an analytical basis. We recognize that based on the various court-orders requiring the Department to take make changes in its mental health program and improve recruitment of psychiatrists, there is a need for additional resources. However, the information provided is not sufficient to recommend a specific level of resources or confirm that the level of resources requested is appropriate.

**6/07 Coleman Finance Letter Summary**

This Finance Letter addresses the minimum necessary Field and Headquarters staffing required for compliance with the March 2, 2006 Coleman Court Orders mandated by the Court Special Master. DCHCS is also requesting a workload study of field and headquarters functions to quantify the Mental Health Program by developing standardized staffing ratios for mental Health Services and a pilot program for reception center screening and supplies. Effective date of positions are BY July 1, 2006 and various dates in 2006/07.

| CLASS TITLE | # OF POS | MAX | PY SALARY | TOTAL BENEFITS | TOTAL OE&E | TOTAL |
|---|---|---|---|---|---|---|
| **Headquarters** | | | | | | |
| CEA | 1 | $ 11,669 | $ 104,622 | $ 33,871 | $ 6,117 | $ 139,379 |
| Sr Psychiatrist, CF -Spec | 6 | $ 11,447 | $ 557,442 | $ 152,383 | $ 26,304 | $ 708,257 |
| R&R, Sr Psychiatrist, CF -Spec | -- | | -- | $ 24,326 | -- | $ 143,126 |
| Warden | 2 | $ 9,049 | $ 209,016 | $ 67,435 | $ 11,623 | $ 277,623 |
| Facility Captain, CI | 5 | $ 7,963 | $ 346,241 | $ 108,848 | $ 50,166 | $ 489,311 |
| Chief Psychologist | 1 | $ 7,509 | $ 80,358 | $ 23,890 | $ 6,117 | $ 106,347 |
| Chief Psychologist | 3 | $ 7,509 | $ 241,074 | $ 71,166 | $ 17,740 | $ 317,926 |
| R&R, Chief Psychologist | -- | | -- | $ 5,897 | -- | $ 34,697 |
| Sr Psychologist, CF -Spec | 10 | $ 6,483 | $ 685,260 | $ 208,651 | $ 58,113 | $ 917,761 |
| Psychologist - Clinical, CF | 1 | $ 5,904 | $ 62,412 | $ 19,686 | $ 6,117 | $ 85,094 |
| Psychologist - Clinical, CF | 3 | $ 5,904 | $ 187,236 | $ 58,550 | $ 17,740 | $ 254,164 |
| R&R, Psychologist - Clincial, CF | -- | | -- | $ 157 | -- | $ 10,957 |
| Staff Services Mgr I | 3 | $ 5,726 | $ 188,496 | $ 66,583 | $ 17,740 | $ 263,394 |
| Nurse Consultant I | 10 | $ 5,562 | $ 613,980 | $ 217,152 | $ 60,821 | $ 861,254 |
| Nurse Consultant I  R&R, | -- | $ 5,562 | | $ 110,435 | -- | $ 494,195 |
| Research Analyst II -Gen | 1 | $ 5,247 | $ 57,378 | $ 20,862 | $ 6,117 | $ 81,488 |
| Assoc Govtl Prog Analyst | 2 | $ 4,997 | $ 109,296 | $ 39,714 | $ 11,623 | $ 155,168 |
| Assoc Health Prog Advisor | 6 | $ 4,997 | $ 327,888 | $ 119,140 | $ 34,867 | $ 465,501 |
| Assoc Health Prog Advisor | 2 | $ 4,997 | $ 81,972 | $ 29,657 | $ 8,563 | $ 116,093 |
| Assoc Health Prog Advisor | 2 | $ 4,997 | $ 54,648 | $ 20,110 | $ 6,117 | $ 78,143 |
| Assoc Health Prog Advisor | 2 | $ 4,997 | $ 27,324 | $ 10,054 | $ 3,060 | $ 39,072 |
| Sr Psychiatric Tech (Safety) | 7 | $ 4,309 | $ 239,931 | $ 81,526 | $ 8,325 | $ 317,785 |
| R&R, Sr Psychiatric Tech (Safety) | -- | | | $ 274 | -- | $ 19,174 |
| Clinical Soc Worker, CF, Safety | 1 | $ 4,139 | $ 44,760 | $ 15,549 | $ 6,117 | $ 64,188 |
| R&R, Clincal Soc Worker, CF, Safe | -- | $ 4,139 | -- | $ 104 | -- | $ 7,304 |
| Exec Secty I | 1 | $ 3,431 | $ 37,518 | $ 15,393 | $ 5,258 | $ 56,293 |
| Secty | 7 | $ 3,051 | $ 233,562 | $ 98,225 | $ 35,228 | $ 355,337 |
| Ofc Techn -Typing | 7 | $ 3,050 | $ 233,520 | $ 98,214 | $ 35,228 | $ 355,286 |
| **Institutions** | | | | | | |
| Staff Psychiatrist, CF | 8 | $ 11,181 | $ 946,032 | $ 260,140 | $ 46,490 | $ 1,205,360 |
| R&R, Staff Psychiatrist, CF | -- | | -- | $ 3,062 | -- | $ 214,262 |
| Sr Psychologist, CF -Suprvr | 6 | $ 6,807 | $ 437,328 | $ 131,324 | $ 34,867 | $ 581,653 |
| R&R, Sr. Psychologist, CF -Suprvr | -- | | -- | $ 626 | -- | $ 43,826 |
| Corr Counselor I | 20.6 | $ 6,526 | $ 1,379,747 | $ 508,936 | $ 56,192 | $ 1,885,179 |
| Psychologist - Clinical, CF | 18 | $ 5,904 | $ 1,123,416 | $ 349,784 | $ 104,601 | $ 1,521,630 |
| R&R, Psychologist - Clincial, CF | -- | | -- | $ 940 | -- | $ 65,740 |
| Psychologist - Clinical, CF | 26 | $ 5,904 | $ 1,217,034 | $ 378,807 | $ 113,166 | $ 1,648,155 |
| R&R, Psychologist - Clinical, CF | -- | | -- | $ 1,018 | -- | $ 71,218 |
| Psychologist - Clinical, CF | 25 | $ 5,904 | $ 780,150 | $ (79,213) | $ 72,793 | $ 819,322 |
| R&R, Psychologist - Clinical, CF | -- | | -- | $ 653 | -- | $ 45,653 |
| Health Prog Spec I | 12 | $ 5,489 | $ 720,360 | $ 256,061 | $ 69,733 | $ 1,010,136 |
| Unit Supvr (Safety) | 9 | $ 5,088 | $ 251,478 | $ 80,689 | $ 23,448 | $ 343,041 |
| Sr Psychiatric Tech (Safety) | 10 | $ 4,309 | $ 452,700 | $ 154,157 | $ 15,819 | $ 600,041 |
| R&R, Sr. Psychiatric Tech (Safety) | -- | | -- | $ 522 | -- | $ 36,522 |
| Psychiatric Techn (Safety) | -10 | $ 3,795 | $ (300,690) | $ (111,494) | $ (4,291) | $ (416,475) |
| R&R, Psychiatric Techn (Safety) | -- | | -- | $ (392) | -- | $ (27,392) |
| Psychiatric Techn (Safety) | 38.7 | $ 3,795 | $ 1,162,668 | $ 431,111 | $ 16,588 | $ 1,610,367 |
| R&R, Psychiatric Techn (Safety) | -- | | -- | $ 1,515 | -- | $ 106,005 |
| Ofc Techn -Typing | 8.3 | $ 3,050 | $ 276,888 | $ 125,459 | $ 51,137 | $ 439,640 |
| RC Screening (Pilot Program 2 Years) | -- | | | -- | $ 748,800 | $ 748,800 |
| RC Screening Supplies (2 Years) | -- | | | -- | $ 30,000 | $ 30,000 |
| Workload Study | -- | | | -- | $ 400,000 | $ 400,000 |
| **TOTAL COST** | 254.6 | | $ 13,171,045 | $ 4,211,557 | $ 2,218,444 | $ 20,197,000 |

*(Dollars in thousands)*

## 5225    Corrections and Rehabilitation

| Issue Number<br>380<br>Sort Order | Issue Title<br>Comprehensive Health Care Recruitment Staff | | Ref # | Fund<br>Base 5: GF | Analyst<br>Daphne Huang<br>OF |
|---|---|---|---|---|---|

### Codes

| Point inTime<br>MR | Prob/Sol<br>B | Policy Category | Prior Yr Adj<br>No | In Budget<br>No | Policy/Tech<br>P | Trailer Bill<br>N | Prop 98<br>N | CH<br>SO | Decision Status<br>Approved |
|---|---|---|---|---|---|---|---|---|---|
| Program<br>Public Safety | | Agency<br>Corrections and Rehabilitation | | | Reportable<br>Yes | Mainframe<br>No | Independent/Merge<br>Independent | | Decision Level<br>Gov Senior St |
| Origin<br>Department | | Field 1 | Field 2 | | Field 3 | | Field 4 | | Lists |

### Fiscal Detail

| Fiscal<br>Year | | Initial | | | | Recommended | | |
|---|---|---|---|---|---|---|---|---|
| | PYs | General Fund | Other Funds | GFOne Time | PYs | General Fund | Other Funds | GFOne Time |
| 2005-06 | 0.0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 |
| 2005-06 | 0.0 | | | | | | | |
| 2006-07 | 0.0 | 0 | 0 | 0 | 70.7 | 6,031 | 0 | 1,009 |
| 2006-07 | 0.0 | | | | | | | |
| 2007-08 | 0.0 | 0 | 0 | 0 | 70.7 | 5,022 | 0 | 0 |
| 2007-08 | 0.0 | | | | | | | |

*Shaded figures are non-add.*

### Comments

*Unit Review*

*PBM/Capitol Office Review*

**RECOMMENDATION:**
Approve the following staff to address recruitment and hiring process for all health care programs and classifications:
• 27 AGPA positions in the field, 2-yr Limited-term
• 33 OT positions in the field, 2-yr Limited-term
• 15 positions of various classification in the Headquarters Human Resources Office (see specifics on classifications as proposed in original Coleman request), 2-yr Limited-term
• 1.5 positions and $797,000 needed to implement the Live Scan Project, should be costed and phased as specified in approved FSR.

*Governor's Review*

*Public Comments*

STATE OF CALIFORNIA
FINANCE LETTER - COVER SHEET
FOR FISCAL YEAR 2006/07
F.. (WORD Version)(REV 3/00)
*report dollars in thousands.*

Department of Finance
915 L Street
Sacramento, CA  95814
IMS Mail Code: A-15

| BCP # | PRIORITY NO. | ORG. CODE **5225** | DEPARTMENT California Department of Corrections and Rehabilitation |
|---|---|---|---|

| PROGRAM 0 5 | ELEMENT 10 40 | COMPONENT 007, 008 | |
|---|---|---|---|

TITLE OF PROPOSED CHANGE
Comprehensive Health Care Recruitment Staff

SUMMARY OF PROPOSED CHANGES
The California Department of Corrections and Rehabilitation (CDCR) is requesting 75 two year limited term positions, 2.0 permanent positions, 0.5 one year limited term position and associated funding of $5,938,000 in Fiscal Year 2006-07 for the Comprehensive Health Care Recruitment Staff proposal.

|  | Current Year | Budget Year |
|---|---|---|
| POS | 0 | 77.5 |
| PYs | 0 | 71.2 |
| $$$ | $0 | $5,938 |

| REQUIRES LEGISLATION | CODE SECTION(S) TO BE AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND MARK IF APPLICABLE |
|---|---|---|
| ☐ YES ☒ NO | | ☐ ONE-TIME COST   ☐ FUTURE SAVINGS<br>☐ FULL-YEAR COSTS  ☐ REVENUE<br>☐ FACILITIES/CAPITAL COSTS |

| PREPARED BY CATHERINE QUINN | DATE 4/13/06 | REVIEWED BY **TRACY JOHNSON** | DATE **4/13/06** |
|---|---|---|---|
| DEPARTMENT DIRECTOR | DATE | AGENCY SECRETARY | DATE |

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?

☐ YES    ☐ NO    ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

FOR INFORMATION TECHNOLOGY REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY STUDY REPORT (FSR)  WAS APPROVED BY DOIT.

PROJECT #       FSR ☐    OR    SPR ☐

DOF ANALYST USE
(ADDITIONAL REVIEW)

ATE OF CALIFORNIA
DGET CHANGE PROPOSAL- FISCAL DETAIL
ATE OPERATIONS
-46 (REV 03/05) Alternative
*eport dollars in thousands*

**REVISION:050831**

Printed:        04/18/06        time:        17:26:30
Date source    :W:\TEMP\FLTR0418.DBF
Report Location:W:\TEMP\FSCLDT~1 RP1
Report Form    :O2DF46Plcy/FnLtrWhle(PY#s)v2_3

| 446002 | | DATE | 04/18/06 | TITLE | COMP HEALTH CARE REC |
|---|---|---|---|---|---|
| RAM ( Consolidated ) | | ELEMENT | | COMPONENT | |

| ONNEL YEARS | PYs CY | PYs BY | | CURRENT YR.($,000) | BUDGET YR.($,000) |
|---|---|---|---|---|---|
| OTAL S & W | | 77.0 | | | $3,425,814 |
| SALARY SAVINGS | | -5.8 | | | -$171,291 |
| ET TOTAL S & W | 0.0 | 71.2 | | $0 | $3,254,523 |
| STAFF BENEFITS | -- | -- | | | $1,383,277 |
| OASDI | | | | | 201,784) |
| HEALTH INSURANCE | | ( whole | ) | ( ) | ( 487,013) |
| RETIREMENT - Industrial | | ( dollars | ) | ( ) | ( 558,045) |
| RETIREMENT - Safety | | ( | ) | ( ) | ( ) |
| RETIREMENT - Peace Officer | | ( | ) | ( ) | ( ) |
| RETIREMENT - Other | | ( | ) | ( ) | ( ) |
| WORKERS' COMPENSATION | | ( | ) | ( ) | ( 136,435) |
| IDL, NDI, UI (incl in W.C.) | | ( | ) | ( ) | |
| OTAL PERSONAL SVCS | | | | | $4,637,800 |

RATING EXPENSES AND EQUIPMENT

| | |
|---|---|
| NERAL EXPENSE | 64,858 |
| NTING | 26,483 |
| MMUNICATIONS | 112,326 |
| ST*GE | 12,677 |
| *ICE | 2,561 |
| AVEL - IN STATE | 50,980 |
| AVEL - OUT OF STATE | 15,533 |
| AINING | 18,273 |
| CILITIES OPERATIONS | |
| ILITIES | 2,260 |
| NSULTING & PROFESSIONAL:Interdepartmental | 6,490 |
| NSULTING & PROFESSIONAL:External | 14,258 |
| BTCONSOLIDATED DATA CENTERS | |
| ealth and Welfare Data Center | ( ) ( ) |
| tephen P. Teale Data Center | ( ) ( ) |
| TA PROCESSING | |
| UIPMENT | 954,164 |
| BT SERVICE | |
| HER ITEMS OF EXPENSE (see Supplemental Info sheets) | 19,337 |
| AL OPERATING EXPENSES and EQUIPMENT | 1,300,200 |

ECIAL ITEMS of EXPENSE

| | | | | |
|---|---|---|---|---|
| TAL STATE OPERATIONS EXPENDITURES | | $ | $ | 5,938,000 |

PAGE III-2a





*ONTINUATION Sheet* **Corr & Rehab Admin**  
*:P# 446002*   **DEPARTMENT** *CORRECTIONS & REHAB*

Printed:   04/18/06   time:   17:26:30  
**FISCAL YEAR**   2006 - 2007

| URCE OF FUNDS | ORG | APPROPRIATION NO. REF | FUND | | |
|---|---|---|---|---|---|
| NERAL FUND | 5225 | 001 | 0001 | $ | $ 5,938,000 |
| ECIAL FUNDS | 5225 | | | $ | $ |
| JERAL FUNDS | 5225 | 001 | 0890 | $ | $ |
| HER FUNDS - Bond | 5225 | 001 | 0001 | $ | $ |
| HER FUNDS - IWF | 5225 | 001 | 0917 | $ | $ |
| HER - Spcl Deposit | 5225 | 001 | 0942 | $ | $ |
| HER (Lease Paymnt) | 5225 | 003 | 0001 | $ | $ |
| HER Lottery Educ | 5225 | 001 | 0831 | $ | $ |
| IMBURSEMENTS | 5225 | 501 | 0995 | $ | $ |
| NERAL FUND, PROP98 | 5225 | 011 | 0001 | $ | $ |
| RR TRNG FUND | 5225 | 001 | 0170 | $ | $ |

| CAL ASSISTANCE URCE OF FUNDS | ORG | APPROPRIATION NO. REF | FUND | $  ( | )  $  ( | ) |
|---|---|---|---|---|---|---|
| NERAL FUND | 5225 | 101 | 0001 | $ | $ | |
| ECIAL FUNDS | 5225 | | | $ | $ | |
| JERAL FUNDS | 5225 | | | $ | $ | |
| HER FUNDS | 5*p875X | | | $ | $ | |
| MBURSEMENTS | 5225 | 601 | 0995 | $ | $ | |

 ///////// *E N D   of   CONSOLIDATED DISPLAY*  //////////////

PAGE III-2b

00811



'NTINUATION Sheet  **Corr & Rehab Admin**

**P# 446002**    **DEPARTMENT** *CORRECTIONS & REHAB*

Printed:    04/18/06    time:    17:26:30

**FISCAL YEAR**    2006 - 2007

| **GRAM** *Corr & Rehab Admin* | | **ELEMENT** | | **COMPONENT** | |
|---|---|---|---|---|---|
| **SONNEL YEARS** | **PYs CY** | **PYs BY** | | **CURRENT YR. $$** | **BUDGET YR. $$** |
| OTAL S & W | | 17.0 | | | $849,438 |
| SALARY SAVINGS | | -1.1 | | | -$42,472 |
| ET TOTAL S & W | 0.0 | 15.9 | | $0 | $806,966 |
| STAFF BENEFITS | -- | -- | | | $305,225 |
| OASDI | | ( | ) | ( ) | ( 50,032) |
| HEALTH INSURANCE | | ( whole | ) | ( ) | ( 97,371) |
| RETIREMENT - Industrial | | ( dollars | ) | ( ) | ( 138,370) |
| RETIREMENT - Safety | | ( | ) | ( ) | ( ) |
| RETIREMENT - Peace Officer | | ( | ) | ( ) | ( ) |
| RETIREMENT - Other | | ( | ) | ( ) | ( ) |
| WORKERS' COMPENSATION | | ( | ) | ( ) | ( 19,452) |
| IDL, NDI, UI (incl in W.C.) | | ( | ) | ( ) | ( ) |

| OTAL PERSONAL SVCS | | | | | $1,112,191 |
|---|---|---|---|---|---|

**RATING EXPENSES AND EQUIPMENT**

| | | |
|---|---|---|
| NERAL EXPENSE | | 27,082 |
| :NG | | 15,858 |
| NICATIONS | | 54,914 |
| STAGE | | 7,511 |
| SURANCE | | 859 |
| AVEL - IN STATE | | 39,123 |
| AVEL - OUT OF STATE | | 15,533 |
| AINING | | 12,755 |
| CILITIES OPERATIONS | | |
| ILITIES | | 2,260 |
| NSULTING & PROFESSIONAL:External | | 14,258 |
| NSOLIDATED DATA CENTERS | | |
| ealth and Welfare Data Center | ( ) | ( ) |
| tephen P. Teale Data Center | ( ) | ( ) |
| TA PROCESSING | | |
| UIPMENT | | 162,019 |
| BT SERVICE | | |
| HER ITEMS OF EXPENSE (see Supplemental Info sheets) | | 1,668 |

| AL OPERATING EXPENSES and EQUIPMENT | | 357,043 |
|---|---|---|

ECIAL ITEMS of EXPENSE

| TAL STATE OPERATIONS EXPENDITURES | | $ | | $ | 1,469,234 |
|---|---|---|---|---|---|

PAGE III-2a



00812

VTINUATION Sheet **Corr & Rehab Admin**
'# 446002        **DEPARTMENT** *CORRECTIONS & REHAB*

Printed:    04/18/06    time:    17:26:30
**FISCAL YEAR**    2006 - 2007



## Corr & Rehab Admin

| JRCE OF FUNDS | APPROPRIATION NO. | | | | | |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| ERAL FUND | 5225 | 001 | 0001 | $ | $ | 1,469,234 |
| CIAL FUNDS | 5225 | | | $ | $ | |
| ERAL FUNDS | 5225 | 001 | 0890 | $ | $ | |
| ER FUNDS - Bond | 5225 | 001 | 0001 | $ | $ | |
| ER FUNDS - IWF | 5225 | 001 | 0917 | $ | $ | |
| ER - Spcl Deposit | 5225 | 001 | 0942 | $ | $ | |
| ER Lease Payment | 5225 | 003 | 0001 | $ | $ | |
| ER Lottery-Educ | 5225 | 001 | 0831 | $ | $ | |
| IBURSEMENTS | 5225 | 501 | 0995 | $ | $ | |
| ERAL FUND, PROP98 | | 5225 | 011 | 0001 | $ | $ | |
| R TRNG FUND | 5225 | 001 | 0170 | $ | $ | |

| CAL ASSISTANCE JRCE OF FUNDS | APPROPRIATION NO. | | | $  (        ) | $  (        ) |
|---|---|---|---|---|---|
| | ORG | REF | FUND | | |
| ERAL FUND | 5225 | 101 | 0001 | $ | $ |
| CIAL FUNDS | 5225 | | | $ | $ |
| ERAL FUNDS | 5225 | | | $ | $ |
| ER FUNOS | 5225 | | | $ | $ |
| ...EMENTS | 5225 | 601 | 0995 | $ | $ |

PAGE III-2b



ONTINUATION Sheet **Corr & Rehab Admin**
:P# *446002*    **DEPARTMENT** *CORRECTIONS & REHAB*    Printed:    04/18/06    time:    17:26:30
**FISCAL YEAR**    2006 - 2007

scal Detail Continued
:TAIL OF PERSONAL SERVICES    *Corr & Rehab Admin*

| osed New | POSITIONS | | | AMOUNT (,000) | |
|---|---|---|---|---|---|
| ASSIFICATION | CY | BY | SALARY/RANGE | CY | BY |
| Services Mgr II - Mgrt | | 1.0 | 5768 - 6361 | | 72,774 |
| Info Systems Analyst -Sp | | 1.5 | 4732 - 5754 | | 94,374 |
| Services Mgr I | | 2.0 | 4746 - 5726 | | 125,664 |
| : Pers Analyst | | 3.0 | 4111 - 4997 | | 163,944 |
| : Govtl Prog Analyst | | 3.0 | 4111 - 4997 | | 163,944 |
| ' Persnl Specialist | | 2.0 | 3418 - 4155 | | 90,876 |
| echn -Typing | | 0.5 | 2510 - 3050 | | 16,680 |
| ielection Tech | | 3.0 | 2130 - 2998 | | 92,304 |
| Asst -Typing | | 1.0 | 2172 - 2641 | | 28,878 |
| TAL SALARIES AND WAGES | | 17.0 | [[[[[[[]]]]] | $ | $    849,438 |

PAGE III-3

'PPLEMENTAL INFORMATION
ase report dollars in thousands.
**ENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.**    SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|
| JIP - | | | |
| ᴾS-In | | ·162,019 | -162,019 |
| ᴾS-Ex | | 3,203 | 97 |
| ᴱ-TIMES (ONE-TIMES incls EQUIP & CONTRACTS) | | 14,258 | 432 |
| L-YR | | 190,097 | -190,097 |
| ᴴR Itms | | 1,668 | -60,068 |

PAGE III-4

\\\\\\\\\\\    **E N D    of    PROGRAM:**    *Corr & Rehab Admin*



00814

**INTINUATION Sheet** *Adult Corr & Rehab Ops*
**P# 446002**   **DEPARTMENT** *CORRECTIONS & REHAB*

Printed:     04/18/06     time:     17:26:30
**FISCAL YEAR**     **2006 - 2007**

| GRAM *Adult Corr & Rehab Ops* | | ELEMENT | COMPONENT | | |
|---|---|---|---|---|---|
| SONNEL YEARS | PYs CY | PYs BY | | CURRENT YR. $$ | BUDGET YR. $$ |
| OTAL S & W | | 60.0 | | | $2,576,376 |
| SALARY SAVINGS | | -4.7 | | | -$128,819 |
| ET TOTAL S & W | 0.0 | 55.3 | | $0 | $2,447,557 |
| STAFF BENEFITS | -- | -- | | | $1,078,052 |
| OASDI | | ( | ) | ( | 151,752) |
| HEALTH INSURANCE | | ( whole | ) | ( | 389,642) |
| RETIREMENT - Industrial | | ( dollars | ) | ( | 419,675) |
| RETIREMENT - Safety | | ( | ) | ( | ) |
| RETIREMENT - Peace Officer | | ( | ) | ( | ) |
| RETIREMENT - Other | | ( | ) | ( | ) |
| WORKERS' COMPENSATION | | ( | ) | ( | 116,983) |
| IDL, NDI, UI (incl in W.C.) | | | | | |
| OTAL PERSONAL SVCS | | | | | $3,525,609 |

RATING EXPENSES AND EQUIPMENT

| | | | | | |
|---|---|---|---|---|---|
| NERAL EXPENSE | | | | | 37,776 |
| NTING | | | | | 10,625 |
| NICATIONS | | | | | 57,412 |
| STAGE | | | | | 5,166 |
| URANCE | | | | | 1,702 |
| VEL - IN STATE | | | | | 11,857 |
| VEL - OUT OF STATE | | | | | |
| INING | | | | | 5,518 |
| CILITIES OPERATIONS | | | | | |
| LITIES | | | | | |
| NSULTING & PROFESSIONAL:Interdepartmental | | | | | 3,287 |
| NSULTING & PROFESSIONAL:External | | | | | |
| NSOLIDATED DATA CENTERS | | | | | |
| ialth and Welfare Data Center | | | ( | ) | ( ) |
| ephen P. Teale Data Center | | | ( | ) | ( ) |
| FA PROCESSING | | | | | |
| IIPMENT | | | | | 792,145 |
| ST SERVICE | | | | | |
| IER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | | | 17,669 |
| L OPERATING EXPENSES and EQUIPMENT | | | | | 943,157 |

CIAL ITEMS of EXPENSE

| | | | |
|---|---|---|---|
| AL STATE OPERATIONS EXPENDITURES | | $ | $     4,468,766 |



PAGE III-2a



00815

## Adult Corr & Rehab Ops

| JRCE OF FUNDS | APPROPRIATION NO. | | | | | | |
|---|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | | |
| :RAL FUND | 5225 | 001 | 0001 | $ | | $ | 4,468,766 |
| :IAL FUNDS | 5225 | | | $ | | $ | |
| :RAL FUNDS | 5225 | 001 | 0890 | $ | | $ | |
| :R FUNDS - Bond | 5225 | 001 | 0001 | $ | | $ | |
| :R FUNDS - IWF | 5225 | 001 | 0917 | $ | | $ | |
| :R - Spcl Deposit | 5225 | 001 | 0942 | $ | | $ | |
| :R Lease Payment | 5225 | 003 | 0001 | $ | | $ | |
| :R Lottery-Educ | 5225 | 001 | 0831 | $ | | $ | |
| :IBURSEMENTS | 5225 | 501 | 0995 | $ | | $ | |
| :RAL FUND, PROP98 | 5225 | 011 | 0001 | $ | | $ | |
| :R TRNG FUND | 5225 | 001 | 0170 | $ | | $ | |

| :AL ASSISTANCE | APPROPRIATION NO. | | | $ ( | ) | $ ( | ) |
|---|---|---|---|---|---|---|---|
| JRCE OF FUNDS | ORG | REF | FUND | | | | |
| :RAL FUND | 5225 | 101 | 0001 | $ | | $ | |
| :IAL FUNDS | 5225 | | | $ | | $ | |
| :RAL FUNDS | 5225 | | | $ | | $ | |
| :R FUNDS | 5225 | | | $ | | $ | |
| :IBURSEMENTS | 5225 | 601 | 0995 | $ | | $ | |

PAGE III-2b



'NTINUATION Sheet **Adult Corr & Rehab Ops**

P# *446002*                    **DEPARTMENT** *CORRECTIONS & REHAB*

Printed:          04/18/06          time:          17:25:30

**FISCAL YEAR**   2006 - 2007



cal Detail Continued

**TAIL OF PERSONAL SERVICES**          **_Adult Corr & Rehab Ops_**

| 'sed New | POSITIONS | | | AMOUNT (,000) | |
|---|---|---|---|---|---|
| **SSIFICATION** | CY | BY | SALARY/RANGE | CY | BY |
| Govtl Prog Analyst | | 27.0 | 4111 - 4997 | | 1,475,496 |
| hn -Typing | | 33.0 | 2510 - 3050 | | 1,100,880 |
| AL SALARIES AND WAGES | | 60.0 | [[[[[[]]]]] | $ | $  2,576,376 |

PAGE III-3

'PLEMENTAL INFORMATION

*se report dollars in thousands.*

NTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.          SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|



## CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
### COMPREHENSIVE HEALTH CARE RECRUITMENT STAFF
### FINANCE LETTER
### FISCAL YEAR 2006/07

### A. **NATURE OF REQUEST**

In order to meet the requirements of all of the healthcare related court orders including Plata and Coleman involving the Division of Correctional Health Care Services (DCHCS), the Department of Corrections and Rehabilitation (CDCR) requests 77.5 positions and general funds in the amount of $5,938,000 in Fiscal Year (FY) 2006/07 (Headquarters: 16.0 PY, Field: 60.0 PY, Live Scan Project: 1.5 PY) for comprehensive health care recruitment staff.

### B. **BACKGROUND/HISTORY**

Since the mid-1990s, the CDCR has received millions of dollars in resources to meet agreed upon settlements in all areas of prison health care services. The majority of these resources were utilized for the delivery of direct patient care. The CDCR cannot continue to support direct patient care services and health care operations without additional support personnel. In fact, many of the direct care staff is being tasked to perform support functions because of the lack of sufficient support resources. It is essential to go forward with this request, as it relates specifically to the Coleman and Plata court orders to support expansion of services that are directly court order driven. Furthermore, this funding would address the shortfall identified in the Division of Correctional Health Care Services related to the increased costs of contract medical services and medical guarding.

The Plata and Coleman court orders mandate the Department to fill specific healthcare vacancies (e.g., Chief Medical Officer, Chief Physician & Surgeon, Registered Nurse, Chief Psychiatrist, and Staff Psychiatrists, etc.) within specific mandated time frames. For example, Plata requires the Department to hire all named classifications within 10 business days of receipt of a candidate's job application or within 10 business days of the candidate applying to take the exam. Additionally, Coleman mandates reducing vacancy rates to no more than 10% within a specific time frame. Furthermore, the orders require classification and pay changes and studies. As such, these orders require significant staff resources to handle all activities involved in the recruitment, selection, and hiring of these classifications in order to meet compliance. The following is a summary of these court order decisions:

- **Coleman (June 25, 1991)** – The United States District Court for the Eastern District of California ultimately found that the state and prison officials had acted with deliberate indifference to the medical needs of inmates with serious mental disorders by ignoring the advice of their own experts regarding the deficiencies that had existed in the correctional system for years. The court found that CDCR DCHCS Mental Health Services Delivery System (MHSDS) was a constitutionally inadequate system that lacked the necessary elements for delivery of adequate mental health care (e.g., screening and identification of mentally ill inmates; prompt access to mental health professionals for



00818

diagnosis and treatment; patient access to necessary and appropriate levels of care as determined by clinicians, including outpatient care; residential care, crisis care, and inpatient care; medical records and an information management system; and a quality assurance system). The court concluded that California's system could not and did not meet the serious medical needs of mentally ill inmates incarcerated in its prisons and, on June 6, 1994, it was recommended that the district court order the appointment of a Special Master and that state and prison officials develop and implement forms, protocols, and plans necessary to remedy constitutional violations.

After 11 years of implementing the court's orders and the mandated services and preparing for implementation of the 2006 MHSDS Revised Program Guide, CDCR and DCHCS have determined that current resources are insufficient to implement the newly mandated 2006 MHSDS Revised Program Guide in a manner consistent with the court's requirements and level of community standards of quality care. Failure to implement the 2006 MHSDS Revised Program Guide will continue the current status of mentally ill inmates going undiscovered, undiagnosed, and untreated, while at the same time being subjected to conditions that aggravate their illnesses. Due to limited resources, those mentally ill inmates, who currently do receive some form of treatment, suffer needless extended and medically harmful delays in access to necessary psychiatric care.

- **Plata (December 1, 2005)** - The United States District Court, Northern District court decision requires CDCR to ensure it implements processes to adequately staff the institutions' healthcare vacancies in a timely and consistent manner. The Court's decision removes the Department's current barriers for the recruitment, hiring, and retention of qualified healthcare staff and mandates specific activities in regards to recruitment, hiring, and retention including pay increases and differential pay for specified medical care classifications. Specifically, the Court Order requires CDCR to complete the full scope of hiring (including background clearances) within 10 business days receipt of a successful exam result or the receipt of an application by the institutions.

## C. STATE LEVEL CONSIDERATIONS

The CDCR is mandated under the Federal constitution to provide adequate health care to all Inmate-patients (IP). "Deliberate indifference to medical needs" has long been held to be a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Several precedent-setting cases have determined that "deliberate indifference" exists when inmates do not have timely access to staffing, facilities, equipment, and procedures to diagnose and treat medical problems. Along with access to care, the two other major tests of a program's adequacy are the continuity and quality of care. This finance letter addresses ensuring the Department's ability to provide continuity and quality care.

CDCR Strategic Plan Goal 2 is to "manage California's inmate and parolee population in a safer, more efficient, and more cost effective manner." Associated with this is Objective 2.4a: "provide prison inmates with standardized health care services and treatment in accordance with the law." The relevant DCHCS initiative and Goal is: (A) Program

00819

Standardization – Medically necessary health care services shall be provided consistently in all institutions. To achieve greater program standardization, DCHCS will design, implement, and maintain:" ...(A2) "standards for the organized delivery of services and for the operation of all programs."

CDCR acknowledges in its legislatively approved Strategic Plan that it is morally and constitutionally obligated to provide health care services to incarcerated offenders. The plan notes that a fundamental level of health care is necessary for incarcerated individuals' successful return and integration into the community and concedes that radical changes are necessary in the Department's health care systems to ensure efficient delivery of quality, cost-effective health care services.

Standardizing the delivery of mental health care is an essential, critical step to managing the inmate and parolee population and providing necessary mental health care in a safe, efficient, and the most cost effective manner possible. By providing the resources required to be compliant with the court orders and mandated policies and procedures essential to provide constitutionally adequate mental health care, CDCR will take an important step toward self-directed management of MHSDS.

## D. FACILITY/CAPITAL OUTLAY CONSIDERATIONS

None requested.

## E. JUSTIFICATION

Comprehensive Health Care Recruitment Staff

**Requested Staffing and Funding Summary:   Human Resources Recruitment and Support Staff (77.5 positions):**
- 27.0 SSA/AGPA field positions, 2-year limited term to support Headquarters staff to support the institutions that have significant vacancy rates for healthcare classifications named in the Plata and Coleman Court Orders.
- 33.0 OT positions, 2-year limited term to provide clerical support functions to the Institution Personnel Offices.
- 15.0 2-year limited term positions of various classification levels in the Headquarters Human Resources Office.  1.0 permanent OT position for Human Resources Office of Peace Officer Selection (OPOS) in support of the Live Scan Project.
- 1.5 positions (1.0 permanent and .5 1-year limited term) needed to implement the Live Scan Project (cost and phased-in as specified in the approved *"Plata Live Scan Project"* Feasibility Study Report [FSR]).

The 27.0 SSA/AGPA, 2-year limited term positions for the field are needed to provide additional resources for the institutions that have significant vacancy rates for health care classifications named in the Plata and Coleman Court Orders.  Vacancy rates are high for

00820

many of the institutions named specifically in the court orders due to a number of factors including location remoteness or excessively high cost of living. Additionally, salary disparity between the state and public/private sector healthcare employers is minimizing the number of qualified candidates interested in working at these institutions.

Currently, Institution Personnel Offices are struggling with very limited resources for managing their day to day duties as a result of the court order hiring mandates, reporting and tracking requirements, and special court report requests. The healthcare court orders have significantly impacted the selection (exams) and hiring processes handled by the Institution Personnel Offices. The Plata and Coleman hiring processes require many tasks to be completed in a significantly shortened time frame (10 day selection and hiring process), thereby, pulling all current resources to focus only on healthcare classification selection and hiring. Institutions are reporting that they are unable to administer critical exams and to hire for other non-healthcare classifications due to the court order mandates. These positions are required to ensure the Department is able to meet compliance with the court orders and also focus on the selection and hiring of other critically needed classifications.

The 33.0 OT 2-year limited term positions are needed to provide clerical support functions to the Institution Personnel Offices. Existing Institution Personnel Office staff is completing many of the clerical related court order functions at the Associate Governmental Program Analyst and Staff Services Manager I level. These functions include report preparation, filing, scheduling interviews, and follow up calls. As a result, the professional and managerial level staff is unable to focus on other complex tasks related to healthcare classification recruitment and hiring because they are spending their time on clerical level tasks. Many of the institutions currently do not have any clerical level support to carry out their day to day clerical activities in addition to handling any court order related clerical activities. Since the professional and managerial levels are completing clerical level functions that are very time consuming, it is diverting their focus from their primary activities and/or from selecting and hiring for other non-healthcare classifications due to the court order mandates. These positions are needed to ensure the Department is in compliance with the court orders and to ensure existing staff are able to focus on the selection and hiring of court order health care classifications.

The 16.0 Headquarters Human Resource Office staff, include 15.0 2-year limited term positions (Office of Personnel Services: 1.0 Associate Personnel Analyst, 1.0 Personnel Selection Technician, 2.0 Senior Personnel Specialist; Office of Workforce Planning: 3.0 AGPA, 2.0 Associate Personnel Analyst, 1.0 Office Assistant, 2.0 Personnel Selection Technician, 2.0 Staff Services Manager I, 1.0 Staff Services Manager II) and 1.0 permanent OT position for the Office of Peace Officer Selection (OPOS) related to programmatic support of the Live Scan Project. The 16 positions for various classification levels are needed at Headquarters, Human Resources (Sacramento). Human Resources is responsible for the recruitment, selection, and hiring of over 500 classifications. These 16 positions would be dedicated to focus on the recruitment, selection (exams), and hiring of the healthcare classifications named in the Plata and Coleman Court Orders. The 16 positions would be allocated between the Office of Personnel Services (OPS) and the Office of Workforce Planning & Selection (OWP&S). As stated above, the 1.0 permanent OT position

00821

will support the Live Scan Project and is part of the Office of Peace Officer Selection (OPOS).

Due to limited resources and the tremendous workload related to the court order hiring mandates, the OWP&S is delaying other critical classification examinations and exam audit activities.    Additionally, the OWP&S is primarily focusing recruitment efforts on the healthcare classifications while trying to maintain some focus on other court orders related to juvenile justice vacancies and classifications. Health Care classification focus has resulted in minimal recruitment and exam efforts for all other classifications.    These positions are needed to ensure the Department is able to meet compliance with the court orders and to ensure existing staff are able to focus on the recruitment, selection, classification and pay activities of court order healthcare classifications as well as all other classifications.

**Requested Staffing and Funding Summary:  Enterprise Information Services (1.5 PY and ongoing OE&E for Live Scan Equipment Maintenance and Support):**
For CDCR's Enterprise Information Services (EIS), a total of 1.5 Staff Information Systems Analysts (SISA) are needed to facilitate implementation and provide ongoing support for the Live Scan electronic fingerprinting system on a departmental basis as follows:

- 1.0 SISA to serve as the CDCR Technical Project Manager on system integration for the duration of the project and then provide ongoing IT support once the project is completed.
- .5 SISA, 1-year limited term to perform project oversight during implementation.

Based on the above information the CDCR is requesting General Fund monies for staffing needs in the amount of $142,742 specific to the Live Scan Project.

The CDCR is also requesting General Fund monies for non-staff costs in the amount of $672,778 [one time costs: $570,000 (Hardware), $53,200 (Telecommunications), and $21,078 (Travel/Training); continuing costs: $22,800 (Telecommunications) and $5,700 (Hardware Lease/Maintenance) to localize systems for the electronic submission of fingerprints and subsequent automated background check and response. A full business case justification is contained within CDCR's FSR entitled "*Plata Live Scan Project*", and the global need is summarized as follows:

- **Live Scan Equipment**
  Applicants for employment by CDCR must be fingerprinted prior to employment so that any criminal history can be determined.   The subject's fingerprints and identifying information are forwarded to the Department of Justice (DOJ), and through DOJ, to the Federal Bureau of Investigation.  Since DOJ requires that fingerprinting submissions be electronic with the current process for fingerprint clearance is to send the candidate to a local Sheriff substation for fingerprinting. Times available for this type of fingerprinting may be limited and the agency typically charges a fee for that service. This is not always convenient for the candidate who must then make a separate appointment outside of the institution environment to be fingerprinted.   This also builds a time delay into the

00822

process.  Additionally, CDCR is dependent upon the fingerprinting agency to complete the data accurately and submit it promptly to DOJ.

If each institution has onsite Live Scan, it will further assist the Department in meeting the 10 day mandated hiring timeframes outlined in the Court Order.  Additionally, having Live Scan in every institution will eliminate the need for candidates to go to a local sheriff substation for fingerprinting and provide more CDCR control over the process.  This will reduce the security clearance time frame.  (Also, see the attached Plata Live Scan Feasibility Report).

## F. ANALYSIS OF ALL FEASIBLE ALTERNATIVE

Comprehensive Health Care Recruitment and EIS Staff:
1. Approve the 27.0 SSA/AGPA 2-year limited term, 33.0 OT 2-year limited term, 15.0 2-year limited term Headquarters Human Resource Office staff; 1.0 permanent OT position in support of the Live Scan Project and 1.5 EIS positions (1.0 permanent, .5 1-year limited term) and GF monies to implement and provide ongoing support of the Live Scan Project.  Provide staff requested above to assure the appropriate level of staffing in order to meet court ordered mandates as it relates to DCHCS.

   Pro:   These resources are necessary if DCHCS is to meet the service delivery expectations set by the courts in the various lawsuits in which the department is currently involved.

   Con:  Increased impact on the State General Fund.

2. Continue the Status Quo.

   Pro:  No impact on the State General Fund

   Con:  The department will continue to be unable to fully meet the court mandates in the various lawsuits.

## G. TIMETABLE

Implement July 1, 2006.

## H. RECOMMENDATION

Alternative 1

00823

California Department of Corrections and Rehabilitation
*Feasibility Study Report:  Plata Live Scan Project*

# STATE OF CALIFORNIA
# DEPARTMENT OF CORRECTIONS AND REHABILITATION

### FEASIBILITY STUDY REPORT

# PLATA LIVE SCAN PROJECT



SUBMITTED:
February 2006

00824



| 1. | Submittal Date | February 2006 | | | |
|---|---|---|---|---|---|

| | | FSR | SPR | PSP Only | Other: |
|---|---|---|---|---|---|
| 2. | Type of Document | X | | | |
| | Project Number | | | | |

| | | | Estimated Project Dates | |
|---|---|---|---|---|
| | | | Start | End |
| 3. | Project Title | Plata Live Scan | | |
| | Project Acronym | | 7/1/2006 | 6/30/2007 |

| 4. | Submitting Department | Department of Corrections and Rehabilitation (CDCR) |
|---|---|---|
| 5. | Reporting Agency | |

| 6. | Project Objectives |
|---|---|

Implement applicant Live Scan electronic fingerprinting systems in 38 CDCR's Adult Operations Personnel Offices to provide on site fingerprinting services for prospective employees that CDCR wishes to hire. By placing a Live Scan system at each adult institution, regional parole offices, and at headquarters, prospective employees will no longer be sent to other locations offering fingerprinting services. This, along with procedural changes, will facilitate the 10 day hiring process required by the Plata Court Order.

| 8. | Major Milestones | Estimated Complete Date |
|---|---|---|
| | Staff hired | 10/30/2006 |
| | Equipment procured | 10/30/2006 |
| | Sites installed and trained | 06/30/2007 |
| | Completed Post Implementation Evaluation Report (PIER) | 12/31/2008 |
| | | |
| | **Key Deliverables** | |
| | | |
| | Staff on board | 10/30/2006 |
| | Live Scans and routers available for scheduled delivery to sites | 10/30/2006 |
| | All Live Scan systems installed and operational | 06/30/2007 |
| | Approved PIER | 12/31/2008 |
| | | |

| 7. | Proposed Solution |
|---|---|

This project installs Live Scan fingerprinting systems CDCR's Adult Operations Personnel Offices (1 in each of the 33 institutions, the 4 Regional Parole Offices, and 1 in Headquarters Personnel). Key strokes and errors will be reduced with pre-filled "default" data fields (possible only with CDCR owned equipment). Processing time will be additionally reduced with daily rather than weekly responses by OPOS to the hiring authorities.

028300

| Executive Contacts | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | First Name | Last Name | Area Code | Phone # | Ext. | Area Code | Fax # | E-mail |
| **Agency Secretary** | Jeanne | Woodford (A) | 916 | 323-6001 | | 916 | 442-2637 | Jeanne.Woodford@cdcr.ca.gov |
| **Budget Officer** | Deborah | Jones-Brown | 916 | 323-0218 | | 916 | 324-1619 | Deborah.Jones-Brown@cdcr.ca.gov |
| **CIO** | Jeff | Baldo | 916 | 358-2203 | | 916 | 358-2322 | Jeff.Baldo@cdcr.ca.gov |
| **Project Sponsor** | Nancy | Bither | 916 | 445-5454 | | 916 | 445-9776 | Nancy.Bither@cdcr.ca.gov |

| Direct Contacts | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | First Name | Last Name | Area Code | Phone # | Ext. | Area Code | Fax # | E-mail |
| **Doc. prepared by** | Susy | Cooper | 916 | 358-2358 | | 916 | 358-2619 | Susy.Cooper@cdcr.ca.gov |
| **Primary contact** | Susy | Cooper | 916 | 358-2358 | | 916 | 358-2619 | Susy.Cooper@cdcr.ca.gov |
| **Project Manager** | Susy | Cooper (A) | 916 | 358-2358 | | 916 | 358-2619 | Susy.Cooper@cdcr.ca.gov |



| 1. | What is the date of your current Operational Recovery Plan (ORP)? | | Date | April 2004 | | Project # | | |
|---|---|---|---|---|---|---|---|---|
| 2. | What Is the date of your current Agency Information Management Strategy (AIMS)? | | Date | August 2005 | | Doc. Type | FSR | |
| 3. | For the proposed project, provide the page reference in your current AIMS and/or strategic business plan. | | Doc. | CalTIPS | | | | |
| | | | Page # | IT Goal #3, Objective 3-2 | | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 4. | Is the project reportable to control agencies? | | X | |
| | If YES, CHECK all that apply: | | | |
| X | a) The project involves a budget action. | | | |
| | b) A new system development or acquisition that is specifically required by legislative mandate or is subject to special legislative review as specified in budget control language or other legislation. | | | |
| | c) The project involves the acquisition of microcomputer commodities and the agency does not have an approved Workgroup Computing Policy. | | | |
| X | d) The estimated total development and acquisition cost exceeds the departmental cost threshold. | | | |
| | e) The project meets a condition previously imposed by the Department of Finance. | | | |

Budget Augmentation
Required?

| | No | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Yes | X | If YES, indicate fiscal year(s) and associated amount: | | | | | | | |
| | | | FY | 2006/07 | FY | 2007/08 | FY | 2008/09 | FY | | FY | |
| | | | | $797,356 | | $168,552 | | $197,052 | | | | |

## PROJECT COSTS

| | Fiscal Year | 2006/2007 | 2007/2008 | 2008/2009 | | | TOTAL |
|---|---|---|---|---|---|---|---|
| 1. | Fiscal Year | 2006/2007 | 2007/2008 | 2008/2009 | | | TOTAL |
| 2. | One-Time Cost | $ 828,509 | $ 0 | $ 0 | | | $ 828,509 |
| 3. | Continuing Costs | $ 61,721 | $ 254,299 | $ 282,799 | | | $ 598,519 |
| 4. | TOTAL PROJECT BUDGET | $ 890,230 | $ 254,299 | $ 282,799 | | | $ 1,427,328 |

## SOURCES OF FUNDING

| 5. | General Fund | $ 797,356 | $ 168,552 | $ 197,052 | | | $ 1,162,960 |
|---|---|---|---|---|---|---|---|
| 6. | Redirection | $ 92,874 | $ 85,747 | $ 85,747 | | | $ 264,368 |
| 7. | Reimbursements | $ | $ | $ | | | $ |
| 8. | Federal Funds | $ | $ | $ | | | $ |
| 9. | Special Funds | $ | $ | $ | | | $ |
| 10. | Grant Funds | $ | $ | $ | | | $ |
| 11. | Other Funds | $ | $ | $ | | | $ |
| 12. | PROJECT BUDGET | $ 890,230 | $ 254,299 | $ 282,799 | | | $ 1,427,328 |

## PROJECT FINANCIAL BENEFITS

| 13. | Cost Savings/Avoidances | $ 0 | $ 0 | $ 0 | $ 0 | $ | $ 0 |
|---|---|---|---|---|---|---|---|
| 14. | Revenue Increase | $ | $ | $ | $ | $ | $ |

Note: The totals in Item 4 and Item 12 must have the same cost estimate.

| Vendor Cost for FSR Development (If applicable) | $ | | Project # | |
|---|---|---|---|---|
| Vendor Name | | | Doc. Type | FSR |

## VENDOR PROJECT BUDGET

| | Fiscal Year | 2006/2007 | 2007/2008 | 2008/2009 | 2009/2010 | | TOTAL |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | Primary Vendor Budget | $ 570,000 | $ 0 | $ | $ | $ | $ 570,000 |
| 3. | Independent Oversight Budget | $ 0 | $ 0 | $ | $ | $ | $ 0 |
| 4. | IV&V Budget | $ 0 | $ 0 | $ | $ | $ | $ 0 |
| 5. | Other Budget | $ 0 | $ 0 | $ | $ | $ | $ 0 |
| 6. | TOTAL VENDOR BUDGET | $ 570,000 | $ 0 | $ | $ | $ | $ 570,000 |

------------------------------------------------(Applies to SPR only)------------------------------------------------

## PRIMARY VENDOR HISTORY SPECIFIC TO THIS PROJECT

| 7. | Primary Vendor | |
|---|---|---|
| 8. | Contract Start Date | |
| 9. | Contract End Date (projected) | |
| 10. | Amount | $ |

## PRIMARY VENDOR CONTACTS

| | Vendor | First Name | Last Name | Area Code | Phone # | Ext. | Area Code | Fax # | E-mail |
|---|---|---|---|---|---|---|---|---|---|
| 11. | | | | | | | | | |
| 12. | | | | | | | | | |
| 13. | | | | | | | | | |

629003

## RISK ASSESSMENT

| | Yes | No |
|---|---|---|
| Has a Risk Management Plan been developed for this project? | X | |

### General Comment(s)

On December 1, 2005, the United States District Court, Northern District, issued a decision in the class action lawsuit Marciano Plata, et al., v. Arnold Schwarzenegger, et. al. The Court's decision is meant to ensure that CDCR implements processes to adequately staff the institutions' healthcare vacancies in a timely and consistent manner.

The Plata Court Order addressed one aspect of this by requiring that the hiring of specific healthcare classifications to be shorted to 10 days. This project places Live scan fingerprinting systems at 38 hiring sites to assist in this effort. The convenience of on-site fingerprinting (versus traveling to another location for fingerprint services), added software assistance (possible on CDCR-owned systems) to reduce errors, increased staffing (1 PY) to provide daily updates, plus utilizing CDCR's own staff provides more control and the ability to effectively cut the time needed to obtain fingerprint clearances.

*(Dollars in thousands)*

## 5225    Corrections and Rehabilitation

| Issue Number 384 Sort Order | Issue Title Pay Enhancements: Corcoran State Prison, Coleman v. Schwarzenegger | | | | | | Ref # | Fund | Analyst Sarah Mangum | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Base $: GF | | OF | |

### Codes

| Point inTime MR | Prob/Sol A | Policy Category Misc | | Prior Yr Adj No | In Budget No | Policy/Tech P | Trailer Bill N | Prop 98 N | CH SO | Decision Status Approved |
|---|---|---|---|---|---|---|---|---|---|---|
| Program Public Safety | | Agency Corrections and Rehabilitation | | | | Reportable Yes | Mainframe No | Independent/Merge Independent | | Decision Level Gov Senior St |
| Origin | | Field 1 | | Field 2 | | Field 3 | | Field 4 | | Lists |

### Fiscal Detail

| Fiscal Year | Initial | | | | Recommended | | | |
|---|---|---|---|---|---|---|---|---|
| | PYs | General Fund | Other Funds | GFOne Time | PYs | General Fund | Other Funds | GFOne Time |
| 2005-06 | 0.0 | 76 | 0 | 0 | 0.0 | 76 | 0 | 0 |
| 2006-07 | 0.0 | 915 | 0 | 0 | 0.0 | 915 | 0 | 0 |
| 2007-08 | 0.0 | 915 | 0 | 0 | 0.0 | 915 | 0 | 0 |

*Shaded figures are non-add.*

### Comments

*Unit Review*

*PBM/Capitol Office Review*

The Department is requesting $1.5 million General Fund, of which $115,000 would be needed in the current year to provide pay enhancements for all mental health staff working at Corcoran State Prison (COR) effective June 1, 2006. This request is in response to a court order issued on February 15, 2006 in the *Coleman v. Schwarzenegger* case that required the Department to reduce its vacancy rate among all categories of mental health personnel to ten percent or less at COR by May 15th. The order specified that if the Department did not meet this requirement then this would result in a court order directing the following pay enhancements:

- All psychiatrists, both staff and supervisory, and all psych techs be paid the same R & R enhancement per pay period as their peers in Pelican Bay State Prison are currently paid.
- All case managers and case manager supervisors be paid a further R & R enhancement of $850 per pay period over and above their recently increased enhancements.
- All recreational technicians receive a further enhancement of $500 per pay period over and above their recently established enhancement.

It is our understanding that the Department does not expect to meet the court's requirement by May 15th, therefore they are requesting funding to meet this anticipated order effective June 1, 2006.

**RECOMMENDATION:**
Given the specificity of the court order in this instance, we recommend approval of the request pending receipt of the actual court order. We recommend that the current year portion of this request be funded from 9840.

*Governor's Review*

*Public Comments*

00831

# ISSUE PROOF LISTING
### (Dollars in thousands)

## 5225      Corrections and Rehabilitation

| Issue Number | Issue Title | | | | | | Ref # | Fund | Analyst |
|---|---|---|---|---|---|---|---|---|---|
| 382 | Pay Enhancements: Psychiatrists, Coleman v. Schwarzenegger | | | | | | | | Sarah Mangum |
| Sort Order | | | | | | | Base $: | GF | OF |

### Codes

| Point in Time | Prob/Sol | Policy Category | | Prior Yr Adj | In Budget | Policy/Tech | Trailer Bill | Prop 98 | CH | Decision Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MR | A | Misc | | No | No | P | N | N | SO | Approved |
| Program | | Agency | | | | Reportable | Mainframe | Independent/Merge | | Decision Level |
| Public Safety | | Corrections and Rehabilitation | | | | Yes | No | Independent | | Gov Senior St |
| Origin | | Field 1 | | Field 2 | | Field 3 | | Field 4 | | Lists |
| | | | | | | | | | | Senstive Approved |

### Fiscal Detail

| Fiscal Year | Initial | | | | Recommended | | | |
|---|---|---|---|---|---|---|---|---|
| | PYs | General Fund | Other Funds | GFOne Time | PYs | General Fund | Other Funds | GFOne Time |
| 2005-06 | 0.0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 |
| 2005-06 | 0.0 | | | | | | | |
| 2006-07 | 0.0 | 14,948 | 0 | 0 | 0.0 | 12,727 | 0 | 0 |
| 2006-07 | | | | | | | | |
| 2007-08 | 0.0 | 14,948 | 0 | 0 | 0.0 | 12,727 | 0 | 0 |
| 2007-08 | | | | | | | | |

*Shaded figures are non-add.*

### Comments

*Unit Review*

*PBM/Capitol Office Review*

The Department is requesting $14.9 million General Fund to provide pay enhancements for Psychiatrist positions in CDCR institutions. This request is in response to issued raised in the *Coleman v. Schwarzenegger* case related to the number of psychiatrist vacancies in CDCR institutions. On March 2, 2006, the court ordered the Department to submit a plan to reduce the rate of vacancies to no more than 10 percent. This plan is due to the court on May 1, 2006 and it is our understanding that the pay enhancements requested in this proposal are a critical component of this plan. These pay enhancements including the following:

• $1.7 million to fund Hiring Above Minimum (HAM) salaries for psychiatrist classifications. This represents an increase in initial pay ranging from $498/month to $1,014/month depending on the specific classification.
• $13.3 million to fund new Recruitment and Retention pay differentials for psychiatrist classifications. This represents an increase in pay ranging from $3,000/month to $4,000/month depending on the specific classification. Current mid-range salaries for these classifications range from $10,190-11,195/month. This would result in pay increases of approximately 29-36%.

We note the following about this proposal:
• The department has a vacancy rate in psychiatrist positions of approximately 32%.
• This request includes funding for similar classifications in the Division of Juvenile Justice, which is not subject to the same court order.
• Under the December court-order in the *Plata v. Schwarzenegger* case, CDCR nurses and physicians received HAMs and pay differentials equivalent to approximately an 18% raise. This proposal would almost double that increase for similar medical classifications.
• The level of pay enhancements requested is not based on the pending DPA salary survey, but is based on information from CDCR and a salary survey that was done last year by CPS. DPA has not evaluated the appropriateness of the level of pay enhancements in this request pending the completion of the study.
• The labor contract that applies to the bargaining unit for psychiatrists is expiring this year and is up for renegotiation.
• If a policy decision were made to provide similar increases to other state agencies with the same classifications, this would result in an additional $15.3 million General Fund.

**RECOMMENDATION:**
Given the court requirement to reduce vacancy rates in these positions, and the timeframe for responding to the court, it may be

necessary to provide some type of pay enhancement for psychiatrist positions. However, without the completed DPA salary study we are unable to assess the appropriate level of pay. Therefore, we have identified the following options:

1. Deny the request and direct the Department to respond to the court that pay increases for the psychiatrist positions are being addressed through collective bargaining during the next several months. It is possible that this alternative would result in a court order that requires specific pay enhancements for these positions prior to the completion of collective bargaining.

2. Approve the request as an interim measure until collective bargaining is completed. This alternative could result in setting this level of pay enhancement as a floor for any collective bargaining proposals regardless of the outcome of the DPA study.

3. Approve the HAMs as a measure to improve initial recruitment of psychiatrist positions but defer the issue of R&R Pay Differentials to the collective bargaining process. This alternative could also result in a court order that requires specific pay enhancements for these positions prior to completion of collective bargaining.

4. Approve the HAMs and a pay differential equivalent to approximately 10% of the top-step base salary and direct the department to address any additional pay increases through the collective barganing process consistent with the DPA study. This option would provide psychiatrists with a pay increase roughly equivalent to the increases provided to physicians under the Plata court order and would demonstrate to the court that the issue of salaries is being addressed. This same increase would be applied to Psychiatrist classifications in the Division of Juvenile Justice and for DMH staff who work in CDCR institions.

We recommend option 4. The cost of this option is not yet finalized, however we expect it to be approximately $5-7 million.

**UPDATED RECOMMENDATION**
• Approved HAMs

• Approved establishment of new class that meets court requirements with a base salary increase of 10%.

• Approved retention bonus for new hires from outside of state service of $5,000 after 6 months and another $5,000 after 24 months.

• Approved longevity pay structure that will provide pay differntials equivalent to the following:

> After 2 years - 5% of base salary
> After 4 years - 5% of base salary
> After 6 years - 2 ½ % of base salary
> After 8 years - 2 ½ % of base salary
> After 10 years - 2 ½ % of base salary

*Governor's Review*

*Public Comments*

*(Dollars in thousands)*

## 5225   Corrections and Rehabilitation

| Issue Number | Issue Title | | | | | | Ref # | Fund | Analyst |
|---|---|---|---|---|---|---|---|---|---|
| 385 | Pay Enhancements: Various Health Care Headquarters Positions | | | | | | | | Sarah Mangum |
| Sort Order | | | | | | | Base $: | GF | OF |

### Codes

| Point in Time | Prob/Sol | Policy Category | | Prior Yr Adj | In Budget | Policy/Tech | Trailer Bill | Prop 98 | CH | Decision Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MR | A | Misc | | No | No | P | N | N | SO | Approved |
| Program | | Agency | | | | Reportable | Mainframe | Independent/Merge | | Decision Level |
| Public Safety | | Corrections and Rehabilitation | | | | Yes | No | Independent | | Gov Senior St |
| Origin | | | Field 1 | Field 2 | | Field 3 | | Field 4 | | Lists |
| | | | | | | | | | | Sensitive Approved |

### Fiscal Detail

| Fiscal Year | | Initial | | | | Recommended | | | |
|---|---|---|---|---|---|---|---|---|---|
| | PYs | General Fund | Other Funds | GFOne Time | PYs | General Fund | Other Funds | GFOne Time |
| 2005-06 | 0.0 | 29 | 0 | 0 | 0.0 | 29 | 0 | 0 |
| 2005-06 | 0.0 | | | | | | | | |
| 2006-07 | 0.0 | 585 | 0 | 0 | 0.0 | 1,364 | 0 | 0 |
| 2006-07 | 0.0 | | | | | | | | |
| 2007-08 | 0.0 | 585 | 0 | 0 | 0.0 | 1,364 | 0 | 0 |
| 2007-08 | 0.0 | | | | | | | | |

*Shaded figures are non-add.*

### Comments

**Unit Review**

**PBM/Capitol Office Review**

The Department is requesting $585,000 General Fund to provide pay enhancements for specific health care staff working at headquarters. This request includes the following:

- $168,000 for recruitment and retention differentials for 6 positions that provide clinical oversight for the Mental Health Program. The differentials requested range from $824/month to $3,384/month depending on the classification.
- $227,000 for recruitment and retention differentials for 7 positions that provide clinical oversight for the Dental Program. The differentials requested range from $500/month to $4,428/month depending on the classification.
- $190,000 for increased pay for 4 CEA positions responsible for statewide nursing issues. The pay increases range from $3,075/month to $3,908/month depending on the level.

It is our understanding that the portion of this request related to the Mental Health Program positions is in response to an order in the *Coleman v. Schwarzenegger* case that requires the Department to submit a plan to expand the DCHSCS central office mental health staff and address the issue of compensation for headquarters staff and provide a scale of pay that assures that clinicians (including psychiatrists, psychologists, psych social workers, psych techs and RNS), policy and program developers and supervisors (including health program specialists and analysts) and correctional counselors, with responsibility for planning, developing, monitoring and evaluating system-wide programming and policy receive a level of salary higher than that of comparable institutional clinicians, including whatever R & R differential pay such institutional clinicians may be entitled to. This plan is due to the court on May 1, 2006. It is our understanding that this proposal is critical to meeting the salary portion of this request. The expansion of the level of headquarters staffing has already been approved as a Finance Letter.

It is our understanding that the requests for pay enhancements for the Dental Program and CEAs are not directly tied to any court order. We note that for both of these areas the department indicates that for all of these positions a salary survey is currently underway, however the results of this survey are not yet available.

We note that with the exception of the Mental Health Program positions, it is our understanding that these requested pay differentials have not been reviewed or submitted to DPA for approval.

**RECOMMENDATION:**

Given the specific court orders related to the Mental Health positions and the statewide nursing positions, we recommend approval

00834

Given the specific court orders related to the Mental Health positions and the statewide nursing positions, we recommend approval of $358,000 associated with these positions. We do not recommend approval of the other requested increases as they appear to be premature pending the outcome of a salary survey.

UPDATED RECOMMENDATION:
Provide 3% pay differential for headquarters staff based on highest pay of similar classifications in the field, excluding Pelican Bay and Corcoran. Include recent court order in Madrid related to nursing supervisor and other statewide nursing classifications.

*Governor's Review*

*Public Comments*

## 2006/07 Late Finance Letter -
## MH Psychiatric Staff Pay Enhancements Summary

This Finance Letter addresses the minimum necessary pay enhancements for Psychiatric staff working in Adult Institutions, Paroles and Juvenile Justice required for compliance with the March 2, 2006 Coleman Court Orders mandated by the Court Special Master. Effective date of positions are BY July 1,2006 and various dates in 2006/07.

| CLASS TITLE | MAX | DIFFERENTIAL | TOTAL BENEFITS | TOTAL |
|---|---|---|---|---|
| **Adult Institutions-Field** | | | | |
| **Existing Filled Positions** | | | | |
| Chief Psychiatrist, CF | 11,692 | 70,530 | 14,442 | 84,972 |
| Chief Psychiatrist, CF | 11,692 | 154,334 | 31,602 | 185,936 |
| Sr Psychiatrist, CF -Suprvr | 11,447 | 40,252 | 8,242 | 48,494 |
| Sr Psychiatrist, CF -Suprvr | 11,447 | 82,418 | 16,876 | 99,294 |
| Staff Psychiatrist,CF | 11,181 | 1,013,037 | 207,430 | 1,220,467 |
| Staff Psychiatrist,CF | 11,181 | 2,270,229 | 464,852 | 2,735,081 |
| **Existing Vacant Positions** | | | | |
| Chief Psychiatrist, CF | 11,692 | 119,988 | 24,569 | 144,557 |
| Sr Psychiatrist, CF -Suprvr | 11,447 | 207,264 | 42,439 | 249,703 |
| Staff Psychiatrist,CF | 11,181 | 2,282,275 | 467,319 | 2,749,594 |
| **5000 BONUS-Existing Vacant Positions** | | | | |
| 1x - Six months bonus, Chief Psychiatrist, CF | 11,692 | 4,500 | 65 | 4,565 |
| 1x - Six month bonus, Sr. Psychiatrist, CF -Sup | 11,447 | 9,000 | 131 | 9,131 |
| 1x - Six month bonus, Staff Psychiatrist, CF | 11,181 | 83,096 | 1,205 | 84,301 |
| **5000 BONUS-Proposed New Positions** | | | | |
| 1x -Six month bonus, Chief Psychiatrist, CF | 11,692 | 1,125 | 16 | 1,141 |
| 1x -Six month bonus, Sr. Psychiatrist, CF-Spec | 11,447 | 1,125 | 16 | 1,141 |
| 1x - Six month bonus, Sr. Psychiatrist, CF -Sup | 11,447 | 25,875 | 375 | 26,250 |
| 1x - Six months bonus, Staff Psychiatrist, CF | 11,181 | 36,000 | 522 | 36,522 |
| **Proposed New Positions** | | | | |
| Chief Psychiatrist, CF | 11,692 | 22,971 | 4,703 | 27,674 |
| Sr Psychiatrist, CF -Spec | 11,447 | 27,224 | 5,575 | 32,799 |
| Sr Psychiatrist, CF -Suprvr | 11,447 | 685,501 | 140,363 | 825,864 |
| Staff Psychiatrist,CF | 11,181 | 302,055 | 61,849 | 363,904 |
| Staff Psychiatrist,CF | 11,181 | 586,585 | 120,109 | 706,694 |
| **Paroles** | | | | |
| **Existing Filled Positions** | | | | |
| Chief Psychiatrist, CF | 11,692 | 56,197 | 11,507 | 67,704 |
| Staff Psychiatrist,CF | 11,181 | 1,037,711 | 212,482 | 1,250,193 |
| **Existing Vacant** | | | | |
| Staff Psychiatrist,CF | 11,181 | 12,654 | 2,591 | 15,245 |
| **Proposed New Positions** | | | | |
| Staff Psychiatrist,CF | 11,181 | 4,898 | 1,003 | 5,901 |
| 1x - Six month bonus, Staff Psychiatrist, CF | | 2,587 | 38 | 2,625 |
| **Juvenile Justice** | | | | |
| **Exiting Filled Positions** | | | | |
| Chief Psychiatrist, CF HQ-Juv Hlth | 11,692 | 114,638 | 23,473 | 138,111 |
| **Field-Juv Unalloc** | | | | |
| Staff Psychiatrist,CF | 11,181 | 104,153 | 21,326 | 125,479 |
| Staff Psychiatrist,CF | 11,181 | 107,555 | 22,023 | 129,578 |
| **Existing Vacant Positions** | | | | |
| Staff Psychiatrist,CF | 11,181 | 235,365 | 48,194 | 283,559 |
| 1x - Six month bonus, Staff Psychiatrist, CF | | 9,463 | 137 | 9,600 |

C:\Documents and Settings\ismangu\Local Settings\Temporary Internet Files\OLK14E\MH cost analysis - DOF.xls

00836

## 2006/07 Late Finance Letter -
## MH Psychiatric Staff Pay Enhancements Summary

| YA-JJ | | | | |
|---|---|---|---|---|
| **Proposed New Positions** | | | | |
| Sr Psychiatrist, CF -Suprvr | 11,447 | 195,090 | 39,948 | 235,038 |
| Sr Psychiatrist, CF -Spec | 11,447 | 136,400 | 27,928 | 164,328 |
| Staff Psychiatrist,CF | 11,181 | 484,387 | 99,183 | 583,570 |
| 1x - Six month bonus, Sr Psychiatrist, CF -Suprvr | 11,447 | 9,500 | 140 | 9,640 |
| 1x - Six month bonus, Sr Psychiatrist, CF -Spec | 11,447 | 10,000 | 149 | 10,149 |
| 1x - Six month bonus, Staff Psychiatrist, CF | 11,181 | 17,400 | 250 | 17,650 |
| HQ-JuvHlth | | | | |
| Sr Psychologist, CF -Spec | 6,483 | 33,929 | 6,947 | 40,876 |
| TOTAL COST | | 10,597,311 | 2,130,019 | 12,727,330 |

C:\Documents and Settings\fismangu\Local Settings\Temporary Internet Files\OLK14E\MH cost analysis - DOF.xls

00837

**2006/07 Late Finance Letter**
## Pay Enhancements - Corcoran Summary

This Finance Letter addresses the minimum necessary pay enhancements for Psychiatric staff working at Corcoran State Prison. Since Corcoran has not established a vacancy rate of 10% or less, DPA provided Recruitment and Retension enhancements in accordance with the March 9, 2006 Coleman Court Orders mandated by the Court Special Master. Effective date of positions are BY July 1,2006 and various dates in 2006/07.

| CLASS TITLE | MAX | DIFFERENTIAL | TOTAL BENEFITS | TOTAL |
|---|---|---|---|---|
| Corcoran | | | | |
| 1X R&R, Chief Psychiatrist, CF | $11,692 | $ 13,800 | $ 200 | $ 14,000 |
| 1X R&R Sr Psychiatrist-Supv, CF | $11,447 | $ 15,000 | $ 218 | $ 15,218 |
| 1X R&R, Staff Psychiatrist, CF | $11,181 | $ 77,216 | $ 1,124 | $ 78,340 |
| 1X R&R Chief Psychologist | $ 7,509 | $ 10,200 | $ 148 | $ 10,348 |
| 1X R&R Sr Psychologist-Supv, CF | $ 6,807 | $ 30,600 | $ 444 | $ 31,044 |
| 1X R&R Psychologist-Clinical, CF | $ 5,904 | $ 399,942 | $ 5,471 | $405,413 |
| 1X R&R Supv Psych Social Worker I, CF | $ 4,558 | $ 28,458 | $ 413 | $ 28,871 |
| 1X R&R Psychiatric Social Worker, CF | $ 4,139 | $ 146,880 | $ 2,130 | $149,010 |
| 1X R&R Psychiatric Tech (Safety) | $ 3,795 | $ 131,717 | $ 1,917 | $133,634 |
| 1X R&R Recr Therapist | $ 3,599 | $ 48,420 | $ 702 | $ 49,122 |
| TOTAL COST | | $ 902,233 | $ 12,767 | $915,000 |

**Pay Enhancements - Headquaters**

This Finance letter addresses the differential pay requirements for Headquarters positions identified in the March 2, 2006 Coleman Court Orders mandated by the Court Special Master.  Effective date of positions are BY July 1,2006 and various dates in 2006/07, with the exception of Pelican Bay State Prison.

| CLASS TITLE | MAX | DIFFERENTIAL | TOTAL BENEFITS | TOTAL |
|---|---|---|---|---|
| **HEALTHCARE CENTRAL OFFICE** | | | | |
| **10% HAM FOR 4 CLASSIFICATIONS** | | | | |
| R&R Sr Psychiatrist-Supv, CF | $ 11,447 | $ 25,905 | $ 5,304 | $ 31,209 |
| R&R Sr Psychiatrist-Spec, CF | $ 11,447 | $ 142,276 | $ 29,136 | $ 171,412 |
| R&R, Staff Psychiatrist, CF | $ 11,181 | $ 85,142 | $ 17,436 | $ 102,578 |
| **3% SHIFT DIFFERENTIAL** | | | | |
| R&R, CEA | $ 11,669 | $ 76,469 | $ 1,104 | $ 77,573 |
| R&R, CEA | $ 11,669 | $ 38,234 | $ 552 | $ 38,786 |
| R&R Sr Psychiatrist-Supv, CF | $ 11,447 | $ 36,932 | $ 540 | $ 37,472 |
| R&R Sr Psychiatrist-Supv, CF | $ 11,447 | $ 36,932 | $ 540 | $ 37,472 |
| R&R Sr Psychiatrist-Spec, CF | $ 11,447 | $ 183,099 | $ 2,652 | $ 185,751 |
| R&R, Staff Psychiatrist, CF | $ 11,181 | $ 120,061 | $ 1,740 | $ 121,801 |
| R&R Chief Psychologist | $ 7,509 | $ 35,105 | $ 504 | $ 35,609 |
| R&R Chief Psychologist | $ 7,509 | $ 140,396 | $ 2,040 | $ 142,436 |
| R&R Sr Psychologist-Supv, CF | $ 6,807 | $ 86,588 | $ 1,260 | $ 87,848 |
| R&R Sr Psychologist-Spec, CF | $ 6,483 | $ 24,986 | $ 360 | $ 25,346 |
| R&R Sr Psychologist-Spec, CF | $ 6,483 | $ 83,276 | $ 1,212 | $ 84,488 |
| R&R Sr Psychiatric Tech, CF (Safety) | $ 4,309 | $ 10,837 | $ 156 | $ 10,993 |
| R&R Clinical Social Worker, CF (Safety) | $ 4,139 | $ 16,183 | $ 240 | $ 16,423 |
| **$5,000 RECRUITMENT BONUS** | | | | |
| R&R, CEA STATEWIDE DIRECTOR OF NURSING | $ 11,669 | $ 38,886 | $ 7,962 | $ 46,848 |
| R&R, CEA REGIONAL DIRECTOR OF NURSING | $ 11,669 | $ 60,478 | $ 12,384 | $ 72,862 |
| R&R Sr Psychiatrist-Supv, CF | $ 11,447 | $ 1,125 | $ 16 | $ 1,141 |
| R&R Sr Psychiatrist-Spec, CF | $ 11,447 | $ 6,750 | $ 98 | $ 6,848 |
| **PBSP** | | | | |
| R&R NURSE PRACTITIONER PELICAN BAY | $ 7,412 | $ 29,016 | $ 421 | $ 29,437 |
| **TOTAL COST** | | $ 1,278,676 | $ 85,657 | $ 1,364,333 |

6/07 Coleman PILS Finance Letter Summary

The Program Infrastructure Litigation Finance Letter (PILS) included some additional Coleman resources.

| CLASS TITLE | # OF POS | MAX SALARY | PY SALARY | TOTAL BENEFITS | TOTAL O/E | TOTAL O/A |
|---|---|---|---|---|---|---|
| RN | 3 | $ 4,609 | $ 189,414 | $ 63,843 | $ 1,069 | $ 88,723 |
| Psych Tech | 3 | $ 2,887 | $ 120,276 | $ 46,005 | $ 5,453 | $ 62,475 |
| TOTAL COST | 6.0 | | $ 309,690 | $ 109,848 | $ 6,522 | $ 151,198 |

**DEPARTMENT OF**
**FINANCE**
OFFICE OF THE DIRECTOR

ARNOLD SCHWARZENEGGER, GOVERNOR

STATE CAPITOL ■ ROOM 1145 ■ SACRAMENTO CA ■ 95814-4998 ■ WWW.DOF.CA.GOV

MAY 1 3 2005

Honorable Wesley Chesbro, Chair
Senate Budget and Fiscal Review Committee

Attention: Mr. Danny Alvarez, Staff Director (2)

Honorable John Laird, Chair
Assembly Budget Committee

Attention: Mr. Christopher W. Woods, Chief Consultant (2)

**Amendment to Budget Bill Items 5240-001-0001, 5240-001-0917, 5240-003-0001, and Reimbursements, Support, California Department of Corrections**

It is requested that Item 5240-001-0001 be increased by $167,971,000 and amended to reflect an increase in Reimbursements of $79,000, and Item 5240-001-0917 be increased by $570,000, as follows:

**Inmate/Parole Population Adjustment**—A net increase of $86,067,000 is proposed to reflect revisions in the projected growth of inmate and parole populations. This increase is composed of an increase of $85,418,000 General Fund, an increase of $570,000 from the Inmate Welfare Fund, and an increase of $79,000 in Reimbursements.

Adjusted for recent population trends, the May Revision reflects an estimated institutional Average Daily Population (ADP) of 165,249 inmates in fiscal year 2005-06. This is 2,494 more than projected in the 2005-06 Governor's Budget.

The projected parolee ADP is 110,335. This is an increase of 13,733 from the number projected in the 2005-06 Governor's Budget.

The key reasons for the increase in institutional ADP, is an increase in new admissions from court and parole violators returned with new terms, and a restoration of the Parole Accountability Program related population adjustments, that we reflected in the Governor's Budget. The parole population is expected to increase due to new admissions to prison, a decrease in the length of stay in prison, and a similar restoration of the Parole Accountability Programs.

-2-

MAY 1 3 2005

**Critical California Institution for Men Staffing and Facility Needs**—An increase of $5,818,000 General Fund to increase staff, improve staff and inmate safety, and address critical physical plant deficiencies. Additionally, through the Department's Capital Outlay budget, $1,653,000 General Fund is proposed to fund construction projects necessary to address critical safety issues. This is consistent with the audit findings from the Board of Corrections and the Office of the Inspector General.

**Energy Efficiency Projects, Base Reduction**—Decrease of $1,372,000 General Fund related to estimated energy savings for two energy projects.

**Inmate and Parolee Program Enhancement Funding**—An increase of $15.0 million General Fund to allow the Department to expand or improve existing programs, or invest in new programs for inmates and parolees. The expenditures of these funds, is contingent on the Department submitting a plan to the Legislature regarding the use of the funds (see Attachment A for proposed provisional language).

**Unallocated Reduction**—An increase of $51,152,000 General Fund to reflect a partial restoration of the Unallocated Reduction that was proposed as part of the 2005-06 Governor's Budget. The revised reduction represents a net decrease of $44,142,000 General Fund to the Department's budget.

**Implementation of Improvements in the Dental Program**—An increase of $17,320,000 General Fund to implement improvements in the dental program as an effort to prevent a dental class action lawsuit.

***Coleman* Court Order: Mental Health Pay Differentials**—An increase of $1,120,000 General Fund to fund the recruitment and retention pay differentials for mental health positions at 12 institutions to comply with a court order issued in the *Coleman* lawsuit on March 7, 2005. In addition, an increase of $733,000 General Fund is proposed for the Department of Mental Health (DMH) to address the impact of the court order on positions at DMH facilities.

***Coleman* Court Order: Implementation of Revised Guidelines for the Mental Health Services Delivery System**—An increase of $4,115,000 General Fund to implement the revised guidelines for the Mental Health Service Delivery System in the Administrative Segregation Unit and Security Housing Unit at California State Prison Corcoran to comply with a court order issued in the *Coleman* lawsuit on March 7, 2005.

**Reduction of *Plata* Settlement Costs**—Decrease of $10.6 million General Fund to reflect changes based on updated information on decreased staffing needs and contracting costs in the *Plata* settlement costs that were included in the 2005-06 Governor's Budget.

-3-

MAY 1 3 2005

It is requested that Item 5240-003-0001 be increased by $23,458,000 and Reimbursements be decreased by $551,000, as follows:

- An increase of $29,478,000 General Fund and a decrease of $6,341,000 Reimbursements, associated with Lease Revenue Bond debt service adjustments that were set aside in the January 10 Budget, related to Control Section 4.30.

- A reduction of $6,020,000 General Fund and an increase of $5,790,000 Reimbursements due to an updated debt service payment schedule for a lease revenue funded project.

The effect of my requested action is reflected on the attachment.

If you have any questions or need additional information regarding this matter, please call Zlatko Theodorovic or Sarah Mangum, Principal Program Budget Analysts, at (916) 445-8913.

TOM CAMPBELL
Director
By:

STEPHEN W. KESSLER
Chief Deputy Director

Attachment

cc:    Honorable Carole Migden, Chair, Senate Appropriations Committee
          Attention: Mr. Bob Franzoia, Staff Director
       Honorable Dennis Hollingsworth, Vice Chair, Senate Budget and Fiscal Review
          Committee
          Attention: Mr. Jeff Bell, Staff Director
       Honorable Judy Chu, Chair, Assembly Appropriations Committee
          Attention: Mr. Geoff Long, Chief Consultant
       Honorable Rick Keene, Vice Chair, Assembly Budget Committee
          Attention: Mr. Peter Schaafsma, Staff Director
       Honorable Gloria Romero, Chair, Senate Budget and Fiscal Review Subcommittee No. 5
       Honorable Rudy Bermúdez, Chair, Assembly Budget Subcommittee No. 4
       Ms. Elizabeth Hill, Legislative Analyst (4)
       Ms. Diane Cummins, Senate President pro Tempore's Office
       Mr. Craig Cornett, Assembly Speaker's Office (2)
       Mr. David Harper, Deputy Chief of Staff, Assembly Republican Leader's Office
       Mr. Robert A. Horel, Chief, Fiscal Programs, Youth and Adult Correctional Agency
       Ms. Jeanne Woodford, Director, Department of Corrections
       Mr. David Lewis, Deputy Director (A), Financial Services Division, Department of
          Corrections
       Mr. James Dong, Budget Officer, Department of Corrections

icc:    TAMMINEN, COSTIGAN, TILTON, JERUE, THEODOROVIC, MANGUM, MARTONE,
        BRADY, HUANG, C/F, SUSPENSE, FILE

00843

-4-                                    MAY 1 3 2005

**Attachment A**

Provision X.     Of the amount appropriated in Schedule (3), $15,000,000 shall only be
available for expenditure upon submission of a plan, to the Legislature,
for the expenditure of these funds on inmate and parolee programs. The
plan shall detail what programs will be implemented or expanded, and the
basis for the programs selected.

```
CBS313R                     DEPARTMENT OF FINANCE              PAGE: 1
UNIT DATABASE               2005-06    CHANGE BOOK             DATE: 05/06/05
( BUFF  )                   WORKSHEET - Finance Letters        TIME: 15:27:56
```

```
DEPT:   CA Department of Corrections            **************************
        STATE OPERATIONS                        5240-001-0001  05.05      G
                                                ***ORG-REF-FUND YOA YOB**

                                                ISSUE: 101    P98: N
  ITEM TITLE:                                                 P98 ISSUE:
  001 Budget Act appropriation


                                                DATE SIGNED:  MAY 1 3 2005

  ISSUE: 101    Population Adjustment
```

| ---DETAIL CHANGES--- | POS/PY | TYPE/LANG | | |
|---|---|---|---|---|
| | | | | * |
| | | | | * |
| Proposed New Positions: | | | | * |
| Various | 962.5 | R | 55,285,000 | * |
| Temporary Help | | T | 21,000 | * |
| Overtime | | O | 242,000 | * |
| Staff Benefits | | | 17,517,000 | * |
| Salary Savings | -27.5 | S | -1,432,000 | * |
| Operating Expenses and Equipment | | | 14,434,000 | * |
| TOTAL FINANCE LETTER CHANGES | 935.0 | | 86,067,000 | * |
| TOTAL DETAIL CHANGES | 935.0 | | 86,067,000 | |

```
   ---SCHEDULE CHANGES---

 21.00.000.000 Institution Program                  52,236,000  *

 22.00.000.000 Health Care Services Program         13,037,000  *

 24.00.000.000 Inmate Education                        544,000  *

 31.00.000.000 Community Correctional Program       20,250,000  *

 41.01.000.000 Administration                         -62,000  *

 41.02.000.000 Distributed Administration             62,000  *

 00.00.900.000 Reimbursements                         -79,000  *

 00.00.901.917 Amt Payable from Inmate Welfare Fund  -570,000  *
               (Item 5240-001-0917)

 NET IMPACT TO 5240-001-0001                         85,418,000  *

      TOTAL NET IMPACT TO 5240-001-0001              85,418,000


      ---IMPACT TO SUBSIDIARIES---

 5240-501-0995  R                                        79,000  *

 5240-001-0917  N                                       570,000  *


 TOTAL FINANCE LETTER CHANGES                           649,000  *

      TOTAL NET IMPACT TO SUBSIDIARIES                  649,000
```

```
* DEPT OF FINANCE LETTER

 USE=F1 YOB=2005 ITEM=524000100010505
ISSUE= 101
ISSUE-STATUS=L
MULTI-DOF=
```

```
CBS313R                      DEPARTMENT OF FINANCE            PAGE: 2
UNIT DATABASE          2005-06    CHANGE BOOK               DATE: 05/06/05
( BUFF  )              WORKSHEET - Finance Letters          TIME: 15:27:56


  DEPT:   CA Department of Corrections            **************************
          STATE OPERATIONS                        5240-001-0001  05 05      G
                                                  ***ORG-REF-FUND YOA YOB**

                                                  ISSUE: 101   P98:
  ITEM TITLE:                                                  P98 ISSUE:
  001 Budget Act appropriation


                                                  DATE SIGNED:  MAY 1 3 2005

     ISSUE: 101    Population Adjustment
```

```
---------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER        AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS      962.5          55,285,000 |SEN CONSULTANT: ASM
PART YR ADJ PY          0.0                   0 |DOF ANALYST:    Jim Martone
TEMP HELP PY            0.0              21,000 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME               0.0             242,000 |
SALARY SAVINGS PY     -27.5          -1,432,000 |RUN DATE:   05/06/05 15:27:56
-TOTAL-               935.0          54,116,000 |UPDT TIME:  05/06/05 15:27:00
---------------------------------------------------------------------------
```

```
* DEPT OF FINANCE LETTER

  USE=F1 YOB=2005 ITEM=524000100010505
   SUE= 101
ISSUE-STATUS=L
MULTI-DOF=
```

```
CBS313R                      DEPARTMENT OF FINANCE              PAGE: 1
UNIT DATABASE                2005-06    CHANGE BOOK             DATE: 05/06/05
( BUFF )                     WORKSHEET - Finance Letters        TIME: 15:28:34
```

```
DEPT:   CA Department of Corrections           *************************
        STATE OPERATIONS                       5240-001-0001  05 05       G
                                               ***ORG-REF-FUND YOA YOB**

                                               ISSUE: 105   P98: N
ITEM TITLE:                                                  P98 ISSUE:
001 Budget Act appropriation


                                          DATE SIGNED:  MAY 1 3 2005


ISSUE: 105    Staff Safety:  Critical CIM Staffing and
              Facility Improvements.


   ---DETAIL CHANGES---                 POS/PY    TYPE/LANG
                                                                        *
Augmentation for additional staffing                                    *
and facility improvements at the                                        *
California Institution for Men.                                         *
                                                                        *
Institution Program                                                     *
                                                                        *
Proposed New Positions:                                                 *
Corr Sgt                                  1.0     R          66,000     *
Corr Officer                             41.4     R       2,160,000     *
Office Technician - Typing                4.0     R         134,000     *
Pay Differentials                                 R          21,000     *
Premium Holiday Pay                               R          34,000     *
Salary Savings                           -0.2     S          -7,000     *
Staff Benefits                                             969,000     *
Operating Expenses and Equipment                         2,441,000     *

TOTAL FINANCE LETTER CHANGES             46.2            5,818,000     *

   TOTAL DETAIL CHANGES                  46.2            5,818,000


   ---SCHEDULE CHANGES---

21.00.000.000 Institution Program                        5,818,000     *


NET IMPACT TO 5240-001-0001                              5,818,000     *

   TOTAL NET IMPACT TO 5240-001-0001                     5,818,000
```

```
--------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER       AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS      46.4            2,415,000 |SEN CONSULTANT: ASM
PART YR ADJ PY         0.0                    0 |DOF ANALYST:    Jim Martone
TEMP HELP PY           0.0                    0 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME               0.0                    0 |
SALARY SAVINGS PY     -0.2               -7,000 |RUN DATE:   05/06/05 15:28:34
-TOTAL-               46.2            2,408,000 |UPDT TIME:  05/06/05 15:28:13
--------------------------------------------------------------------------
```

```
* DEPT OF FINANCE LETTER

 USE=F1 YOB=2005 ITEM=524000100010505
 ISSUE= 105
ISSUE-STATUS=L
MULTI-DOF=
```

```
CBS313R                     DEPARTMENT OF FINANCE                    PAGE: 1
UNIT DATABASE               2005-06   CHANGE BOOK                    DATE: 05/05/05
( BUFF )                    WORKSHEET - Finance Letters              TIME: 12:26:55


  DEPT:   CA Department of Corrections              *************************
          STATE OPERATIONS                         5240-001-0001   05 05      G
                                                   ***ORG-REF-FUND YOA YOB**

                                                   ISSUE: 106   P98: N
  ITEM TITLE:                                                    P98 ISSUE:
  001 Budget Act appropriation


                                                   DATE SIGNED:   MAY 1 3 2005


  ISSUE: 106     Energy Efficiency Projects - Base
                 Reduction


    ---DETAIL CHANGES---                   POS/PY   TYPE/LANG

                                                                                 *
  A reduction for estimated energy savings                                       *
  for two energy projects.                                                       *
                                                                                 *
  Institution Program                                                            *
                                                                                 *
  Operating Expenses and Equipment                            -1,372,000         *

  TOTAL FINANCE LETTER CHANGES            0.0                  -1,372,000         *

     TOTAL DETAIL CHANGES                 0.0                  -1,372,000


    ---SCHEDULE CHANGES---

  21.00.000.000 Institution Program                           -1,372,000    *

  NET IMPACT TO 5240-001-0001                                 -1,372,000    *

     TOTAL NET IMPACT TO 5240-001-0001                        -1,372,000


-----------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER         AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS          0.0                  0 |SEN CONSULTANT: ASM
PART YR ADJ PY            0.0                  0 |DOF ANALYST:    Jim Martone
TEMP HELP PY             0.0                   0 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                 0.0                   0 |
SALARY SAVINGS PY        0.0                   0 |RUN DATE:    05/05/05 12:26:55
-TOTAL-                  0.0                   0 |UPDT TIME:   05/04/05 15:20:59
-----------------------------------------------------------------------------
```

* DEPT OF FINANCE LETTER

 USE=F1 YOB=2005 DOF=230 ORG=5240

ISSUE-STATUS=L

```
CBS313R                          DEPARTMENT OF FINANCE                    PAGE: 1
UNIT DATABASE               2005-06      CHANGE BOOK                      DATE: 05/06/05
( BUFF  )                   WORKSHEET - Finance Letters                   TIME: 15:38:16


 DEPT:    CA Department of Corrections                    **************************
          STATE OPERATIONS                                5240-001-0001  05 05       G
                                                          ***ORG-REF-FUND YOB**

                                                          ISSUE: 147    P98: N
                                                                        P98 ISSUE:
 ITEM TITLE:
 001 Budget Act appropriation


                                                          DATE SIGNED:  MAY 1 3 2005


 ISSUE: 147     Inmate and Parolee Program Enhancement
                Funding


   ---DETAIL CHANGES---                         POS/PY   TYPE/LANG
                                                                                      *
 Additional funding for enhanced inmate                                               *
 and parolee programs.  Add provisional                                               *
 language that requires the Department to                                             *
 submit a plan to the Legislature that                                                *
 details what programs will be                                                        *
 implemented or expanded and the basis                                                *
 for the programs selected, prior to the                                              *
 expenditure of these funds.                                                          *
                                                                                      *
 While these funds are being scheduled                                                *
 in the Education Program, upon                                                       *
 completion of the required plan,                                                     *
 the expenditures by program may be                                                   *
 revised.                                                                             *
                                                                                      *
 This funding shall increase to                                                       *
 $30 million in 2006-07.                                                              *
                                                                                      *
 Operating Expenses and Equipment                                      15,000,000  *

 TOTAL FINANCE LETTER CHANGES                      0.0                  15,000,000  *

    TOTAL DETAIL CHANGES                           0.0                  15,000,000

    ---SCHEDULE CHANGES---

 24.00.000.000 Inmate Education                                        15,000,000  *


 NET IMPACT TO 5240-001-0001                                           15,000,000  *

    TOTAL NET IMPACT TO 5240-001-0001                        Y         15,000,000
```

```
----------------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER      AMOUNT  |ASM CONSULTANT: SJK
REG/ON-GOING POS         0.0               0   |SEN CONSULTANT: ASM
PART YR ADJ PY           0.0               0   |DOF ANALYST:    Jim Martone
TEMP HELP PY             0.0               0   |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                                  0   |
SALARY SAVINGS PY        0.0               0   |RUN DATE:   05/06/05 15:38:16
-TOTAL-                  0.0               0   |UPDT TIME:  05/06/05 15:35:30
----------------------------------------------------------------------------------
```

```
* DEPT OF FINANCE LETTER

HOUSE=F1 YOB=2005 ITEM=524000100010505
 ISUE= 147
 ISUE-STATUS=L
 MULTI-DOF=
```

```
CBS313R                  DEPARTMENT OF FINANCE           PAGE: 1
UNIT DATABASE            2005-06    CHANGE BOOK          DATE: 05/06/05
( BUFF )                WORKSHEET - Finance Letters      TIME: 15:29:41


DEPT:   CA Department of Corrections            *************************
        STATE OPERATIONS                        5240-001-0001  05 05     G
                                                ***ORG-REF-FUND YOA YOB**

                                                ISSUE: 148   P98: N
ITEM TITLE:                                                  P98 ISSUE:
001 Budget Act appropriation


                                             DATE SIGNED:   MAY 1 3 2005


ISSUE: 148    Revised Unallocated Reduction


  ---DETAIL CHANGES---                   POS/PY    TYPE/LANG

                                                                      *
Adjustment to reflect a revision to the                               *
proposed unallocated reduction in the                                 *
2005 Governor's Budget.                                               *
Unallocated reduction                                   95,294,000    *
                                                                      *
Community Correctional Program                                        *
Authorized Positions:                                                 *
Parole Agent II - Spec              -13.0       R       -1,045,000    *
Premium Holiday Pay                             R           -5,000    *
Salary Savings                        0.7       S           52,000    *
Staff Benefits                                            -354,000    *
Operating Expenses and Equipment                       -42,790,000    *

TOTAL FINANCE LETTER CHANGES        -12.3               51,152,000    *

   TOTAL DETAIL CHANGES             -12.3               51,152,000


  ---SCHEDULE CHANGES---

31.00.000.000 Community Correctional Program           -44,142,000    *

97.20.001.000 Unallocated Reduction                     95,294,000    *


NET IMPACT TO 5240-001-0001                             51,152,000    *

   TOTAL NET IMPACT TO 5240-001-0001                    51,152,000


-------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER      AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS      -13.0        -1,050,000 |SEN CONSULTANT: ASM
PART YR ADJ PY          0.0                 0 |DOF ANALYST:    Jim Martone
TEMP HELP PY            0.0                 0 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                0.0                 0 |
SALARY SAVINGS PY       0.7            52,000 |RUN DATE:   05/06/05 15:29:41
-TOTAL-               -12.3          -998,000 |UPDT TIME:  05/06/05 15:29:20
-------------------------------------------------------------------------



* DEPT OF FINANCE LETTER

  USE=F1 YOB=2005 ITEM=524000100010505
  _SUE= 148
ISSUE-STATUS=L
MULTI-DOF=
```

```
CBS313R                    DEPARTMENT OF FINANCE              PAGE: 1
UNIT DATABASE              2005-06    CHANGE BOOK             DATE: 05/05/05
( BUFF  )                 WORKSHEET - Finance Letters        TIME: 12:26:55


DEPT:   CA Department of Corrections              **************************
        STATE OPERATIONS                          5240-001-0001  05 05      G
                                                  ***ORG-REF-FUND YOA YOB**

                                                  ISSUE: 194   P98: N
ITEM TITLE:                                                    P98 ISSUE:
001 Budget Act appropriation


                                                  DATE SIGNED:   MAY  3 2005


ISSUE: 194     Implementation of Improvements in
               Dental Program


   ---DETAIL CHANGES---                POS/PY   TYPE/LANG
                                                                          *
                                                                          *
Augmentation to implement improvements                                    *
in CDC's Dental Program as an effort to                                   *
prevent a dental class action lawsuit.                                    *
                                                                          *
Proposed New Positions:                                                   *
Dentist, CF                             2.0     R            201,000      *
Health Prog Spec I                      2.0     R            120,000      *
Office Technician - Typing             26.0     R            867,000      *
Dental Assistant, CF                   33.5     R          1,046,000      *
Salary Savings                         -3.9     S           -112,000      *
Staff Benefits                                                864,000      *
Operating Expenses and Equipment                          14,334,000      *
                                                                          *
                                                                          *
                                                                          *

 TOTAL FINANCE LETTER CHANGES          59.6               17,320,000      *

    TOTAL DETAIL CHANGES               59.6               17,320,000

   ---SCHEDULE CHANGES---

21.00.000.000 Institution Program                            500,000      *

22.00.000.000 Health Care Services Program                16,820,000      *


NET IMPACT TO 5240-001-0001                               17,320,000      *

    TOTAL NET IMPACT TO 5240-001-0001                     17,320,000


------------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER      AMOUNT  |ASM CONSULTANT: SJK
REG/ON-GOING POS         63.5        2,234,000 |SEN CONSULTANT: ASM
PART YR ADJ PY            0.0                0  |DOF ANALYST:    Jim Martone
TEMP HELP PY             0.0                0  |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                 0.0                0  |
SALARY SAVINGS PY        -3.9        -112,000  |RUN DATE:   05/05/05 12:26:55
-TOTAL-                  59.6       2,122,000  |UPDT TIME:  05/05/05 08:53:13
------------------------------------------------------------------------------


* DEPT OF FINANCE LETTER

  USE=F1 YOB=2005 DOF=230 ORG=5240

ISSUE-STATUS=L
```

```
CBS313R                        DEPARTMENT OF FINANCE                    PAGE: 1
UNIT DATABASE              2005-06    CHANGE BOOK                        DATE: 05/06/05
( BUFF  )                 WORKSHEET - Finance Letters                   TIME: 15:30:20


DEPT:   CA Department of Corrections                    ************************
        STATE OPERATIONS                                5240-001-0001  05 05     G
                                                        ***ORG-REF-FUND YOA YOB**

                                                        ISSUE: 197   P98: N
ITEM TITLE:                                                          P98 ISSUE:
001 Budget Act appropriation


                                                       DATE SIGNED:   MAR  3 2005


ISSUE: 197    Coleman Court Order: Mental Health Pay
              Differential


   ---DETAIL CHANGES---                       POS/PY   TYPE/LANG

                                                                                  *
Augmentation for the recruitment and                                              *
retention pay differentials for mental                                            *
health positions at 12 institutions to                                            *
address a court order in the Coleman                                              *
lawsuit issued on March 7, 2005.                                                  *
                                                                                  *
Authorized Positions                              R              916,000  *
Staff Benefits                                                   204,000  *

TOTAL FINANCE LETTER CHANGES             0.0                   1,120,000  *

   TOTAL DETAIL CHANGES                  0.0                   1,120,000


   ---SCHEDULE CHANGES---

22.00.000.000 Health Care Services Program                    1,120,000  *


NET IMPACT TO 5240-001-0001                                   1,120,000  *

   TOTAL NET IMPACT TO 5240-001-0001                          1,120,000


-------------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER        AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS           0.0          916,000 |SEN CONSULTANT: ASM
PART YR ADJ PY             0.0                0 |DOF ANALYST:    Jim Martone
TEMP HELP PY               0.0                0 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                   0.0                0 |
SALARY SAVINGS PY          0.0                0 |RUN DATE:   05/06/05 15:30:20
-TOTAL-                    0.0          916,000 |UPDT TIME:  05/06/05 15:29:55
-------------------------------------------------------------------------------
```

* DEPT OF FINANCE LETTER

```
 USE=F1 YOB=2005 ITEM=524000100010505
 ,SUE= 197
ISSUE-STATUS=L
MULTI-DOF=
```

```
CBS313R                    DEPARTMENT OF FINANCE              PAGE: 1
UNIT DATABASE           2005-06    CHANGE BOOK               DATE: 05/06/05
( BUFF )                WORKSHEET - Finance Letters          TIME: 15:31:23


DEPT:   CA Department of Corrections          *************************
        STATE OPERATIONS                      5240-001-0001  05 05      G
                                              ***ORG-REF-FUND YOA YOB**

                                              ISSUE: 195   P98: N
ITEM TITLE:                                                P98 ISSUE:
001 Budget Act appropriation
```

DATE SIGNED:  MAY 1 3 2005

ISSUE: 195    Coleman Guidelines for the Mental Health
              Service Delivery System

| ---DETAIL CHANGES--- | POS/PY | TYPE/LANG | |
|---|---|---|---|
| | | | * |
| Augmentation to implement the revised | | | * |
| Guidelines for the mental health | | | * |
| service delivery system in the | | | * |
| Administrative Segregation Unit and | | | * |
| Security Housing Unit at CSP Corcoran | | | * |
| to address the March 7, 2005 | | | * |
| Coleman court order. | | | * |
| | | | * |
| Proposed New Positions: | | | * |
| Staff Psychiatrist, CF | 5.3 | R | 627,000 * |
| Registered Nurse, CF | 3.1 | R | 196,000 * |
| Psychologist - Clinical, CF | 12.2 | R | 761,000 * |
| Supvng Psychiatric Soc Worker | 1.8 | R | 90,000 * |
| Psychiatric Social Worker, CF | 4.4 | R | 197,000 * |
| Sr Psychiatric Tech (Safety) | 4.0 | R | 172,000 * |
| Psychiatric Technician (Safety) | 12.9 | R | 492,000 * |
| Recreational Therapist | 4.1 | R | 160,000 * |
| Office Services Suprvr II - Gen | 0.5 | R | 18,000 * |
| Office Technician - Typing | 1.2 | R | 40,000 * |
| Medical Transcriber | 1.0 | R | 32,000 * |
| Office Assistant - Typing | 0.8 | R | 23,000 * |
| Various Pay Differentials | | R | 288,000 * |
| Salary Savings | -1.8 | S | -106,000 * |
| Staff Benefits | | | 955,000 * |
| Operating Expenses and Equipment | | | 170,000 * |
| TOTAL FINANCE LETTER CHANGES | 49.5 | | 4,115,000 * |
| TOTAL DETAIL CHANGES | 49.5 | | 4,115,000 |

```
   ---SCHEDULE CHANGES---

22.00.000.000 Health Care Services Program          4,105,000 *

24.00.000.000 Inmate Education                         10,000 *


NET IMPACT TO 5240-001-0001                         4,115,000 *

   TOTAL NET IMPACT TO 5240-001-0001                4,115,000
```

```
* DEPT OF FINANCE LETTER

 USE=F1 YOB=2005 ITEM=524000100010505
 .SUE= 195
ISSUE-STATUS=L
MULTI-DOF=
```

```
CBS313R                        DEPARTMENT OF FINANCE          PAGE: 2
UNIT DATABASE                  2005-06    CHANGE BOOK         DATE: 05/06/05
( BUFF  )                      WORKSHEET - Finance Letters    TIME: 15:31:23
```

```
DEPT:   CA Department of Corrections              *************************
        STATE OPERATIONS                          5240-001-0001  05 05      G
                                                  ***ORG-REF-FUND YOA YOB**
```

```
                                                  ISSUE: 195   P98:
ITEM TITLE:                                                    P98 ISSUE:
001 Budget Act appropriation
```

```
                                                            MAY 1 3 2005
                                           DATE SIGNED:
```

```
ISSUE: 195   Coleman Guidelines for the Mental Health
             Service Delivery System
```

```
---------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER        AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS        51.3          3,096,000 |SEN CONSULTANT: ASM
PART YR ADJ PY           0.0                  0 |DOF ANALYST:    Jim Martone
TEMP HELP PY             0.0                  0 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                 0.0                  0 |
SALARY SAVINGS PY       -1.8           -106,000 |RUN DATE:   05/06/05 15:31:23
-TOTAL-                 49.5          2,990,000 |UPDT TIME:  05/06/05 15:30:32
---------------------------------------------------------------------------
```

```
* DEPT OF FINANCE LETTER

 ?USE=F1 YOB=2005 ITEM=524000100010505
  ;SUE= 195
 ISSUE-STATUS=L
 MULTI-DOF=
```

00854

```
CBS313R                    DEPARTMENT OF FINANCE                    PAGE: 1
UNIT DATABASE              2005-06    CHANGE BOOK                    DATE: 05/05/05
( BUFF  )                 WORKSHEET - Finance Letters               TIME: 12:26:55
```

```
DEPT:   CA Department of Corrections              ************************
        STATE OPERATIONS                          5240-001-0001  05 05      G
                                                  ***ORG-REF-FUND YOA YOB**

                                                  ISSUE: 196   P98: N
ITEM TITLE:                                                     P98 ISSUE:
001 Budget Act appropriation


                                                               MAY   3 2005
                                          DATE SIGNED:

ISSUE: 196    Reduction of Plata settlement costs


   ---DETAIL CHANGES---                      POS/PY   TYPE/LANG
                                                                           *
Reduction in Plata settlement costs to                                     *
reflect changes based on updated                                           *
information on decreased staffing needs                                    *
and contracting costs.                                                     *
                                                                           *
Proposed New Positions:                                                    *
Staff Counsel                                 -2.0     R          -135,000 *
Facility Captain, CI                          -6.0     R          -549,000 *
Salary Savings                                 0.4     S            34,000 *
Staff Benefits                                                    -223,000 *
Operating Expenses and Equipment                               -9,727,000 *

TOTAL FINANCE LETTER CHANGES                  -7.6            -10,600,000 *

   TOTAL DETAIL CHANGES                       -7.6            -10,600,000

   ---SCHEDULE CHANGES---

22.00.000.000 Health Care Services Program                   -10,600,000 *

41.01.000.000 Administration                                    -186,000 *

41.02.000.000 Distributed Administration                         186,000 *


NET IMPACT TO 5240-001-0001                                  -10,600,000 *

   TOTAL NET IMPACT TO 5240-001-0001                         -10,600,000
```

```
------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER     AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS        -8.0       -684,000 |SEN CONSULTANT: ASM
PART YR ADJ PY           0.0              0 |DOF ANALYST:    Jim Martone
TEMP HELP PY             0.0              0 |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                 0.0              0 |
SALARY SAVINGS PY        0.4         34,000 |RUN DATE:    05/05/05 12:26:55
-TOTAL-                 -7.6       -650,000 |UPDT TIME:   05/05/05 08:35:26
------------------------------------------------------------------------
```

```
* DEPT OF FINANCE LETTER

 USE=F1 YOB=2005 DOF=230 ORG=5240

ISSUE-STATUS=L
```

00855

```
CBS313R                    DEPARTMENT OF FINANCE              PAGE: 1
UNIT DATABASE              2005-06    CHANGE BOOK             DATE: 05/05/05
( BUFF )                  WORKSHEET - Finance Letters        TIME: 12:26:55
```

```
DEPT:    CA Department of Corrections           **************************
         STATE OPERATIONS                       5240-003-0001  05 05      G
                                                ***ORG-REF-FUND YOA YOB**

                                                ISSUE: 101    P98: N
ITEM TITLE:                                                   P98 ISSUE:
003 Budget Act appropriation


                                            DATE SIGNED:   MAY 1 3 2005

ISSUE: 101      Lease Revenue Adjustment (allocation
                consistent with C.S. 4.30)


  ---DETAIL CHANGES---                     POS/PY    TYPE/LANG

                                                                          *
Special Items of Expense                                  23,137,000      *
                                                                          *
Adjust lease revenue expenditures to                                      *
reflect C.S. 4.30 adjustment made in the                                  *
fall.                                                                      *
                                                                          *
(base rental increase $26,732,000,                                        *
fee increase $23,000, insurance decrease                                  *
$3,610,000, reimbursement decrease                                        *
$6,341,000)                                                               *

TOTAL FINANCE LETTER CHANGES                 0.0          23,137,000      *

   TOTAL DETAIL CHANGES                      0.0          23,137,000


   ---SCHEDULE CHANGES---

00.00.500.002 Base Rental and Fees                       26,763,000      *

00.00.500.012 Insurance                                  -3,626,000      *

00.00.900.000 Reimbursements                              6,341,000      *


NET IMPACT TO 5240-003-0001                              29,478,000      *

   TOTAL NET IMPACT TO 5240-003-0001                     29,478,000


   ---IMPACT TO SUBSIDIARIES---

5240-503-0995  R                                         -6,341,000      *


TOTAL FINANCE LETTER CHANGES                             -6,341,000      *

   TOTAL NET IMPACT TO SUBSIDIARIES                      -6,341,000
```

```
----------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER      AMOUNT |ASM CONSULTANT: SJK
REG/ON-GOING POS            0.0           0  |SEN CONSULTANT: ASM
PART YR ADJ PY              0.0           0  |DOF ANALYST:    Jim Martone
TEMP HELP PY                0.0           0  |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                    0.0           0  |
SALARY SAVINGS PY           0.0           0  |RUN DATE:   05/05/05 12:26:55
-TOTAL-                     0.0           0  |UPDT TIME:  05/05/05 08:31:16
----------------------------------------------------------------------
```

* DEPT OF FINANCE LETTER

HOUSE=F1 YOB=2005 DOF=230 ORG=5240

ISSUE-STATUS=L

```
CBS313R                        DEPARTMENT OF FINANCE                    PAGE: 1
UNIT DATABASE            2005-06     CHANGE BOOK                        DATE: 05/05/05
( BUFF )                 WORKSHEET - Finance Letters                   TIME: 12:26:55


DEPT:    CA Department of Corrections                   *************************
         STATE OPERATIONS                               5240-003-0001  05 05     G
                                                        ***ORG-REF-FUND YOA YOB**

                                                        ISSUE: 102   P98: N
ITEM TITLE:                                                          P98 ISSUE:
003 Budget Act appropriation


                                                        DATE SIGNED:   MAY 1 3 2005

ISSUE: 102    May Revise: Adjust Lease Revenue Payment


    ---DETAIL CHANGES---                        POS/PY    TYPE/LANG

                                                                                    *
    Special Items of Expense                                        -230,000     *
                                                                                    *
    Adjust expenditure to reflect updated                                         *
    debt service payment schedule:                                                *
    (reduce base rental payment $5,000,                                           *
    reduce fees $225,000, increase                                                *
    reimbursement $5,790,000)                                                     *

    TOTAL FINANCE LETTER CHANGES                   0.0                -230,000     *

        TOTAL DETAIL CHANGES                       0.0                -230,000

    ---SCHEDULE CHANGES---

    00.00.500.002 Base Rental and Fees                                -230,000     *

    00.00.900.000 Reimbursements                                    -5,790,000     *


    NET IMPACT TO 5240-003-0001                                     -6,020,000     *

        TOTAL NET IMPACT TO 5240-003-0001                           -6,020,000

    ---IMPACT TO SUBSIDIARIES---

    5240-503-0995  R                                                 5,790,000     *


    TOTAL FINANCE LETTER CHANGES                                     5,790,000     *

        TOTAL NET IMPACT TO SUBSIDIARIES                             5,790,000


--------------------------------------------------------------------------------
POSITION CHANGES FOR ISSUE NUMBER           AMOUNT  |ASM CONSULTANT: SJK
REG/ON-GOING POS          0.0                    0  |SEN CONSULTANT: ASM
PART YR ADJ PY            0.0                    0  |DOF ANALYST:    Jim Martone
TEMP HELP PY              0.0                    0  |LAO DIRECTOR:   G. JOLIVETTE
OVERTIME                  0.0                    0  |
SALARY SAVINGS PY         0.0                    0  |RUN DATE:   05/05/05 12:26:55
-TOTAL-                   0.0                    0  |UPDT TIME:  05/05/05 08:31:54
--------------------------------------------------------------------------------
```

* DEPT OF FINANCE LETTER

HOUSE=F1 YOB=2005 DOF=230 ORG=5240

ISSUE-STATUS=L

# May Revision
# Justification for Base Adjustments

**Department Name: Department of Corrections**
**Adjustment Title:** *Coleman* **Court Order –** *Coleman* **Guidelines at Corcoran State Prison**

Consistent with Government Code 13308.05 the Department of Finance has approved a base adjustment budget for the Department of Corrections (CDC). The following is information on the base adjustment for the *Coleman* Guidelines at California State Prison – Corcoran (CSP-Cor).

**Description of Adjustment**

This represents an augmentation of $4,115,000 and 51.3 mental health positions in 2005-06 as a base adjustment to establish sufficient staff at CSP-Cor to provide the mental health services required to implement the revised program guides for the Mental Health Services Delivery System (MHSDS) caseload inmates in the administrative segregation unit (ASU) and the Security Housing Unit (SHU), effective July 1, 2005.

A *Coleman* court order issued on March 7, 2005, specifically requires CDC to establish sufficient staff at CSP-Cor to provide the mental health services required in the revised program guides for MHSDS caseload inmates in the ASU and the SHU. The court order also requires that funding for these augmentations be included in the Fiscal Year 2005-06 budget.

The 1997 MHSDS Program Guide has been reviewed over the past seven years. The CDC field experts and court appointed experts have now agreed upon the draft of a newly revised MHSDS Program Guides and CDC will be submitting them to the court for approval within the next several months. The draft of this new MHSDS Program Guides also addresses the Clark and Armstrong issues by including language and communications requirements during clinical contacts.

In summary, to implement the revised Guidelines at CSP-Cor, the CDC requests the following resources:

- A total of 51.3 mental health related positions (49.5 PYs) at CSP-Cor.
- A total of $170,387 for various operating expenses and equipment.

**How the Adjustment Is Calculated**

The justification for their staffing and resources needs are based on a resource analysis methodology, which is a statewide survey that CDC conducted to estimate the additional workload and staff/patient ratio needed in each institution. The result is then translated to the resource needs at CSP-Cor.

Please see the attached workload charts for more information on how the position and dollar increases were calculated.

**STATE OF CALIFORNIA**
**BUDGET CHANGE PROPOSAL- FISCAL DETAIL**
**STATE OPERATIONS**
**DF-46 (REV 06/97) Alternative**
*Please report dollars in thousands*

Printed: 05/04/05 time: 08:17:35
Data source :W:\TEMP\FLT05038.DBF
Report Location:W:\TEMP\FSCLWHOL.RP1
Report Form :02DF46-Plcy/FnLtr-whole(PY#s)

| BCP # | 5356CA | | DATE | 05/04/05 | | TITLE | COLEMAN-CORCORAN STA | |
|-------|--------|---|------|----------|---|-------|---------------------|---|
| PROGRAM | ( Consolidated ) | | ELEMENT | | | COMPONENT | | |

| PERSONNEL YEARS | | PYs CY | PYs BY | | | | CURRENT YR.($,000) | | BUDGET YR.($,000) |
|-----------------|---|--------|--------|---|---|---|-------------------|---|--------------------|
| TOTAL S & W | | | 51.3 | | | | | | $3,095,616 |
| SALARY SAVINGS | | | -1.8 | | | | | | -$106,013 |
| NET TOTAL S & W | | 0.0 | 49.5 | | | | $0 | | $2,989,603 |
| STAFF BENEFITS | | -- | -- | | | | | | $955,010 |
| OASDI | | | ( | | ) | ( | ) | ( | 6,681) |
| HEALTH INSURANCE | | | ( whole | | ) | ( | ) | ( | 276,720) |
| RETIREMENT - Industrial | | | ( dollars | | ) | ( | ) | ( | 17,658) |
| RETIREMENT - Safety | | | ( | | ) | ( | ) | ( | 542,184) |
| RETIREMENT - Peace Officer | | | ( | | ) | ( | ) | ( | ) |
| RETIREMENT - Other | | | ( | | ) | ( | ) | ( | ) |
| WORKERS' COMPENSATION | | | ( | | ) | ( | ) | ( | 111,767) |
| IDL, NDI, UI (incl in W.C.) | | | ( | | ) | ( | ) | | __ |

| TOTAL PERSONAL SVCS | | | | | | | | | $3,944,613 |
|---------------------|---|---|---|---|---|---|---|---|---|

**OPERATING EXPENSES AND EQUIPMENT**

| | | | | | | | | | |
|--|--|--|--|--|--|--|--|--|--|
| GENERAL EXPENSE | | | | | | | | | 11,667 |
| PRINTING | | | | | | | | | 794 |
| COMMUNICATIONS | | | | | | | | | 51 |
| POSTAGE | | | | | | | | | |
| INSURANCE | | | | | | | | | |
| TRAVEL - IN STATE | | | | | | | | | 9,971 |
| TRAVEL - OUT OF STATE | | | | | | | | | |
| TRAINING | | | | | | | | | 4,365 |
| FACILITIES OPERATIONS | | | | | | | | | |
| UTILITIES | | | | | | | | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | | | | | | | | |
| CONSULTING & PROFESSIONAL:External | | | | | | | | | |
| CONSOLIDATED DATA CENTERS | | | | | | | | | |
| Health and Welfare Data Center | | | | | | ( | ) | ( | ) |
| Stephen P. Teale Data Center | | | | | | ( | ) | ( | ) |
| DATA PROCESSING | | | | | | | | | |
| EQUIPMENT | | | | | | | | | 142,764 |
| DEBT SERVICE | | | | | | | | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | | | | | | | 775 |

| TOTAL OPERATING EXPENSES and EQUIPMENT | | | | | | | | | 170,387 |
|----------------------------------------|---|---|---|---|---|---|---|---|---|

SPECIAL ITEMS of EXPENSE

| TOTAL STATE OPERATIONS EXPENDITURES | | | | | | $ | | $ | 4,115,000 |
|-------------------------------------|---|---|---|---|---|---|---|---|---|

PAGE III-2a

00859

**CONTINUATION Sheet**
**BCP# 5358CA**

*HEALTH CARE SERVICES PRG*
**DEPARTMENT**  *CORRECTIONS*

Printed:        05/04/05        time:    08:17:35
**FISCAL YEAR**   2005 - 002006

| SOURCE OF FUNDS | APPROPRIATION NO. | | | | | |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 5240 | 001 | 0001 | $ | $ | 4,115,000 |
| SPECIAL FUNDS | 5240 | | | $ | $ | |
| FEDERAL FUNDS | 5240 | 001 | 0890 | $ | $ | |
| OTHER FUNDS - Bond | 5240 | 001 | 0001 | $ | $ | |
| OTHER FUNDS - IWF | 5240 | 001 | 0917 | $ | $ | |
| OTHER - Spcl Deposit | 5240 | 001 | 0942 | $ | $ | |
| OTHER Lease Payment | 5240 | 003 | 0001 | $ | $ | |
| OTHER - Lease Reimb | 5240 | 003 | 0995 | $ | $ | |
| REIMBURSEMENTS | 5240 | 501 | 0995 | $ | $ | |

| LOCAL ASSISTANCE SOURCE OF FUNDS | APPROPRIATION NO. | | | $ ( | ) | $ ( | ) |
|---|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | | |
| GENERAL FUND | 5240 | 101 | 0001 | $ | | $ | |
| SPECIAL FUNDS | 5240 | | | $ | | $ | |
| FEDERAL FUNDS | 5240 | | | $ | | $ | |
| OTHER FUNDS | 5240 | | | $ | | $ | |
| REIMBURSEMENTS | 5240 | 601 | 0995 | $ | | $ | |

//////////////////  E N D  of  CONSOLIDATED DISPLAY  //////////////////

00860

**CONTINUATION Sheet**  *HEALTH CARE SERVICES PRG*  Printed: 05/04/05  time: 08:17:35
**BCP# 5358CA**  **DEPARTMENT**  *CORRECTIONS*  **FISCAL YEAR**  2005 - 002006

| PROGRAM *HEALTH CARE SERVICES PRG* | | ELEMENT | COMPONENT | | |
|---|---|---|---|---|---|
| **PERSONNEL YEARS** | **PYs CY** | **PYs BY** | **CURRENT YR. $$** | | **BUDGET YR. $$** |
| TOTAL S & W | | 51.3 | | | $3,085,776 |
| SALARY SAVINGS | | -1.8 | | | -$106,013 |
| NET TOTAL S & W | 0.0 | 49.5 | | $0 | $2,979,763 |
| STAFF BENEFITS | -- | -- | | | $954,867 |
| OASDI | | ( | ) | ) | ( 6,681) |
| HEALTH INSURANCE | | ( whole | ) | ) | ( 276,577) |
| RETIREMENT - Industrial | | ( dollars | ) | ) | ( 17,658) |
| RETIREMENT - Safety | | ( | ) | ) | ( 542,184) |
| RETIREMENT - Peace Officer | | ( | ) | ) | ( ) |
| RETIREMENT - Other | | ( | ) | ) | ( ) |
| WORKERS' COMPENSATION | | ( | ) | ) | ( 111,767) |
| IDL, NDI, UI (incl in W.C.) | | | | | |
| **TOTAL PERSONAL SVCS** | | | | | $3,934,630 |

**OPERATING EXPENSES AND EQUIPMENT**

| | | | | |
|---|---|---|---|---|
| GENERAL EXPENSE | | | | 11,667 |
| PRINTING | | | | 794 |
| OMMUNICATIONS | | | | 51 |
| POSTAGE | | | | |
| INSURANCE | | | | |
| TRAVEL - IN STATE | | | | 9,971 |
| TRAVEL - OUT OF STATE | | | | |
| TRAINING | | | | 4,365 |
| FACILITIES OPERATIONS | | | | |
| UTILITIES | | | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | | | |
| CONSULTING & PROFESSIONAL:External | | | | |
| CONSOLIDATED DATA CENTERS | | | | |
| Health and Welfare Data Center | | ( ) | ( ) | |
| Stephen P. Teale Data Center | | ( ) | ( ) | |
| DATA PROCESSING | | | | |
| EQUIPMENT | | | | 142,764 |
| DEBT SERVICE | | | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | | 775 |

| TOTAL OPERATING EXPENSES and EQUIPMENT | | | 170,387 |
|---|---|---|---|

**SPECIAL ITEMS of EXPENSE**

| TOTAL STATE OPERATIONS EXPENDITURES | | | $ | | $ | 4,105,017 |
|---|---|---|---|---|---|---|

PAGE III-2a

00861

HEALTH CARE SERVICES PRG

| SOURCE OF FUNDS | APPROPRIATION NO. | | | | | | |
|---|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | | |
| GENERAL FUND | 5240 | 001 | 0001 | $ | | $ | 4,105,017 |
| SPECIAL FUNDS | 5240 | | | $ | | $ | |
| FEDERAL FUNDS | 5240 | 001 | 0890 | $ | | $ | |
| OTHER FUNDS - Bond | 5240 | 001 | 0001 | $ | | $ | |
| OTHER FUNDS - IWF | 5240 | 001 | 0917 | $ | | $ | |
| OTHER - Spcl Deposit | 5240 | 001 | 0942 | $ | | $ | |
| OTHER Lease Payment | 5240 | 003 | 0001 | $ | | $ | |
| OTHER - Lease Reimb | 5240 | 003 | 0995 | $ | | $ | |
| REIMBURSEMENTS | 5240 | 501 | 0995 | $ | | $ | |

| LOCAL ASSISTANCE SOURCE OF FUNDS | APPROPRIATION NO. | | | $ { | } | $ { | } |
|---|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | | |
| GENERAL FUND | 5240 | 101 | 0001 | $ | | $ | |
| SPECIAL FUNDS | 5240 | | | $ | | $ | |
| FEDERAL FUNDS | 5240 | | | $ | | $ | |
| OTHER FUNDS | 5240 | | | $ | | $ | |
| REIMBURSEMENTS | 5240 | 601 | 0995 | $ | | $ | |

PAGE III-2b

**CONTINUATION Sheet**    **HEALTH CARE SERVICES PRG**    Printed:   05/04/05    time:   08:17:35

**BCP# 5358CA**    **DEPARTMENT**   **CORRECTIONS**    **FISCAL YEAR**   2005 - 002006

Fiscal Detail Continued
**DETAIL OF PERSONAL SERVICES**    **HEALTH CARE SERVICES PRG**

| Proposed New | POSITIONS | | | AMOUNT (,000) | |
|---|---|---|---|---|---|
| **CLASSIFICATION** | **CY** | **BY** | **SALARY/RANGE** | **CY** | **BY** |
| Staff Psychiatrist,CF | | 5.3 | 8528 - 11181 | | 626,746 |
| Registered Nurse,CF | | 3.1 | 4609 - 5914 | | 195,728 |
| Psychologist - Clinical, CF | | 12.2 | 4498 - 5904 | | 761,426 |
| Supvng Psychiatric Soc Worker | | 1.8 | 3750 - 4558 | | 89,726 |
| Psychiatric Soc Worker, CF | | 4.4 | 3321 - 4139 | | 196,944 |
| Sr Psychiatric Tech (Safety) | | 4.0 | 3080 - 4101 | | 172,344 |
| Psychiatric Techn (Safety) | | 12.9 | 2748 - 3612 | | 492,264 |
| Recr Therapist | | 4.1 | 2891 - 3599 | | 159,654 |
| Ofc Services Suprvr II -Gen | | 0.5 | 2759 - 3355 | | 18,342 |
| Ofc Techn -Typing | | 1.2 | 2510 - 3050 | | 40,032 |
| Medical Transcriber | | 1.0 | 2419 - 2941 | | 32,160 |
| Office Asst -Typing | | 0.8 | 2130 - 2641 | | 22,901 |
| Pay Differentials | - | - | | | 276,439 |
| Premium Holiday Pay | - | - | | | 1,070 |
| **TOTAL SALARIES AND WAGES** | | 51.3 | [[[[[[[]]]]] | $ | $ 3,085,776 |

PAGE III-3

*
*

SUPPLEMENTAL INFORMATION
*Please report dollars in thousands.*
IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.    SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|
| EQUIP - | | 142,764 | -142,764 |
| C&PS-In | | | |
| C&PS-Ex | | | |
| ONE-TIMES (ONE-TIMES incls EQUIP & CONTRACTS) | | 142,764 | -142,764 |
| FULL-YR | | | |
| OTHR Itms | | 775 | |

PAGE III-4

\\\\\\\\\\\\\\\ **E N D of PROGRAM:**    **HEALTH CARE SERVICES PRG**

**CONTINUATION Sheet**   *EDUCATION PRG*   Printed:   05/04/05   time:   08:17:35
**BCP# 5358CA**   **DEPARTMENT**   *CORRECTIONS*   **FISCAL YEAR**   2005 - 002006

| PROGRAM *EDUCATION PRG* | | ELEMENT | COMPONENT | | |
|---|---|---|---|---|---|
| **PERSONNEL YEARS** | **PYs CY** | **PYs BY** | **CURRENT YR. $$** | | **BUDGET YR. $$** |
| **TOTAL S & W** SALARY SAVINGS | | | | | $9,840 |
| **NET TOTAL S & W** | 0.0 | 0.0 | | $0 | $9,840 |
| STAFF BENEFITS | -- | -- | | | $143 |
| OASDI | | { | } | { | } |
| HEALTH INSURANCE | | { whole | } | { | 143) |
| RETIREMENT - Industrial | | { dollars | } | { | ) |
| RETIREMENT - Safety | | { | } | { | ) |
| RETIREMENT - Peace Officer | | { | } | { | ) |
| RETIREMENT - Other | | { | } | { | ) |
| WORKERS' COMPENSATION | | { | } | { | ) |
| IDL, NDI, UI (incl in W.C.) | | | | | |
| **TOTAL PERSONAL SVCS** | | | | | $9,983 |

**OPERATING EXPENSES AND EQUIPMENT**

| | | | |
|---|---|---|---|
| GENERAL EXPENSE | | | |
| PRINTING | | | |
| OMMUNICATIONS | | | |
| POSTAGE | | | |
| INSURANCE | | | |
| TRAVEL - IN STATE | | | |
| TRAVEL - OUT OF STATE | | | |
| TRAINING | | | |
| FACILITIES OPERATIONS | | | |
| UTILITIES | | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | | |
| CONSULTING & PROFESSIONAL:External | | | |
| CONSOLIDATED DATA CENTERS | | | |
| Health and Welfare Data Center | ( | ) | ( ) |
| Stephen P. Teale Data Center | ( | ) | ( ) |
| DATA PROCESSING | | | |
| EQUIPMENT | | | |
| DEBT SERVICE | | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | |

**TOTAL OPERATING EXPENSES and EQUIPMENT**

SPECIAL ITEMS of EXPENSE

| **TOTAL STATE OPERATIONS EXPENDITURES** | \| $ | \| $ | 9,983 |
|---|---|---|---|

PAGE III-2a

EDUCATION PRG

| SOURCE OF FUNDS | APPROPRIATION NO. | | | | | |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 5240 | 001 | 0001 | $ | $ | 9,983 |
| SPECIAL FUNDS | 5240 | | | $ | $ | |
| FEDERAL FUNDS | 5240 | 001 | 0890 | $ | $ | |
| OTHER FUNDS - Bond | 5240 | 001 | 0001 | $ | $ | |
| OTHER FUNDS - IWF | 5240 | 001 | 0917 | $ | $ | |
| OTHER - Spcl Deposit | 5240 | 001 | 0942 | $ | $ | |
| OTHER Lease Payment | 5240 | 003 | 0001 | $ | $ | |
| OTHER - Lease Reimb | 5240 | 003 | 0995 | $ | $ | |
| REIMBURSEMENTS | 5240 | 501 | 0995 | $ | $ | |

| LOCAL ASSISTANCE SOURCE OF FUNDS | APPROPRIATION NO. | | | $ { | } | $ { | } |
|---|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | | |
| GENERAL FUND | 5240 | 101 | 0001 | $ | | $ | |
| SPECIAL FUNDS | 5240 | | | $ | | $ | |
| FEDERAL FUNDS | 5240 | | | $ | | $ | |
| OTHER FUNDS | 5240 | | | $ | | $ | |
| REIMBURSEMENTS | 5240 | 601 | 0995 | $ | | $ | |

PAGE III-2b

**CONTINUATION Sheet**
BCP# *5358CA*

*EDUCATION PRG*
**DEPARTMENT** *CORRECTIONS*

Printed:      05/04/05      time:      08:17:35
**FISCAL YEAR**   2005 - 002006

Fiscal Detail Continued
**DETAIL OF PERSONAL SERVICES**      *EDUCATION PRG*

*Proposed New*

| CLASSIFICATION | POSITIONS | | | | AMOUNT (,000) | |
|---|---|---|---|---|---|---|
| | CY | BY | SALARY/RANGE | CY | | BY |
| Pay Differentials | - | - | | | | 9,840 |
| TOTAL SALARIES AND WAGES | | | [[[[[[[]]]] | $ | | $    9,840 |

PAGE III-3

\*
\*
\*

**SUPPLEMENTAL INFORMATION**
*Please report dollars in thousands.*
**IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.**      SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|
| EQUIP - | | | |
| C&PS-In | | | |
| C&PS-Ex | | | |
| ONE-TIMES (ONE-TIMES incls EQUIP & CONTRACTS) | | | |
| FULL-YR | | | |
| OTHR Itms | | | |

PAGE III-4

\\\\\\\\\\\\\\\\   E N D   of   PROGRAM:      *EDUCATION PRG*

Coleman Guidelines for Corcoran State Prison
Base Adjustment
Fiscal Year 2005/06

| Mission SHU-C3MS | staffed cap 450 | | | |
|---|---|---|---|---|
| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
| Lic. Psych Tech | 2.43 to program | 2.43 | 0 | 2.43 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |
| Psychiatrist | 1 to 100 | 4.5 | 1 | 3.5 |
| Psychologist | 1 to 50* | 6 | 3 | 3 |
| Psych Soc Wrkr | 1 to 50* | 3 | 0 | 3 |

| Mission ASU | staffed cap 450 | | | |
|---|---|---|---|---|
| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
| Psych Soc Wrkr | 0.5 to program | 0.5 | 0 | 0.5 |

| Mission ASU-C3MS | staffed cap 100 | | | |
|---|---|---|---|---|
| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
| Psychiatrist | 1 to 100 | 1 | 0.5 | 0.5 |
| Psychologist | 1 to 40* | 1.5 | 0 | 1.5 |
| Psych Soc Wrkr | 1 to 40* | 1 | 1 | 0 |
| Lic. Psych Tech | 1.62 to 100 | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to 54 | 1.77 | 0 | 1.77 |

| Mission ASU-EOP | staffed cap 63 | | | |
|---|---|---|---|---|
| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
| Psychiatrist | 1 to 45 | 1.5 | 0.5 | 1 |
| Registerd Nurse | 1.62 to program | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |

| Mission MHCB | staffed cap 23 | | | |
|---|---|---|---|---|
| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
| Psychiatrist | 1 to 10 | 2.33 | 2 | 0.3 |
| Psychologist | 0.62 by 3 staff | 1.86 | 0 | 1.86 |

| Mission MDO/BPT/Zcases | | | | |
|---|---|---|---|---|
| Classification | Staff:patient report | staff via ratio | less current staff | required additional staff |
| Psychologist | 1 to 150 | 0.56 | 0 | 0.56 |

| Mission RVRs | | | | |
|---|---|---|---|---|
| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
| Psychologist | 1 to 300 | 0.79 | 0 | 0.79 |

5/12/2005
Version 2.0



Coleman Guidelines for Corcoran State Prison
Base Adjustment
Fiscal Year 2005/06

**Mission**
**Relief Factors**

| Classification | Staff:relief factor | staff via ratio | less current relief | required additional staff |
|---|---|---|---|---|
| Lic Psych Tech | 1 to 0.62 | 13.64 | 0.8 | 12.84 |
| Psychologist | 1 to 0.15 | 4.5 | 0 | 4.5 |
| Psych Soc Wrkr | 1 to 0.15 | 0.9 | 0 | 0.9 |

**Mission**
**Nursing**

| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
|---|---|---|---|---|
| Registered Nurse | 1 to 800 | 1.5 | 0 | 1.5 |

**Mission**
**Supervision**

| Classification | Supv to staff | supv via ratio | less current supv | required additional supv |
|---|---|---|---|---|
| Sr. Psych Soc Wrke | 1 to 10 | 1.79 | 0 | 1.79 |
| Lic Psych Tech | | -4 | 0 | -4 |
| Sr. Lic Psych Tech | 1 to 10 | 4 | 0 | 4 |

**Mission**
**Clerical/Med Rec**

| Classification | Staff:EOP/C3MS | staff via ratio | less current supv | required additional staff |
|---|---|---|---|---|
| Office Tech | 1.0 to 300/800 | 1.22 | 0 | 1.22 |
| Office Asst (L.T.) | 0.5 to 300/800 | 0.75 | 0 | 0.75 |
| Med Transcriber | 1 to MHCB Prog. | 1 | 0 | 1 |
| OSS II | 1:10 | 0.5 | 0 | 0.5 |

| Overall additions | P Y s |
|---|---|
| Psychiatrist | 5.3 |
| Psychologist | 12.21 |
| Psych Soc Wrkr | 4.4 |
| Registerd Nurse | 3.12 |
| Lic. Psych Tech | 12.89 |
| Rec Therapist | 4.07 |
| Sr. PSW | 1.79 |
| Sr. LPT | 4.0 |
| OSS II | 0.5 |
| Office Tech | 1.22 |
| Office Asst | 0.75 |
| Med Transcriber | 1.0 |
| **Mental Health** | |
| **Staffing Total** | **51.25** |

5/12/2005
Version 2.0

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11          Plaintiffs,            No. CIV S-90-0520 LKK JFM P

12       vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14
            Defendants.            ORDER
15   _____/

16          On February 11, 2005, the special master filed a fourteenth monitoring report.

17   The report contains several recommendations for specific action by defendants. Neither party

18   has filed objections to the report or its recommendations. Good cause appearing, the special

19   master's recommendations will be the order of the court.

20          In accordance with the above, IT IS HEREBY ORDERED that:

21          1. Within thirty days from the date of this order defendants shall submit to the

22   special master a plan for the provision of a meaningful schedule of differential pay, known in the

23   California Department of Corrections (CDC) as R&R, for psychiatrists in High Desert State

24   Prison. Salinas Valley State Prison, and Valley State Prison for Women, and for psychiatrists,

25   case managers, recreational therapists and psych techs in California State Prison/Corcoran. Said

26   plan shall include a differential pay scale for clinical supervisors, as well as staff clinicians. Said

1

1  plan shall also anticipate and address the potentially adverse impact of an enhanced R&R

2  schedule in the above-listed facilities on adjacent institutions, including Correctional Training

3  Facility, Central California Women's Facility, and California Substance Abuse Treatment

4  Facility, as well as competition for mental health personnel inevitably associated with the

5  Department of Mental Health's (DMH) opening of its Coalinga facility in 2005 and CDC's

6  opening of its Delano II institution. The plan shall include a timeline that permits the inclusion

7  of the enhanced pay scales in the Governor's rewritten FY 2005-2006 budget proposal in May

8  2005.

9         2. Within thirty days thereafter, the special master shall report to the court on the

10  adequacy of the plan described in paragraph 1, supra.

11        3. Within thirty days from the date of this order defendants shall submit to the

12  special master a breakdown of headquarters staffing for mental health within the Health Care

13  Services Division in Sacramento (HCSD), identifying all staff, whether full or part-time,

14  including institutional clinicians detailed temporarily to headquarters and retired annuitants and

15  their principal areas of responsibility.

16        4. Within sixty days from the date of this order, defendants shall develop and

17  implement a department-wide monthly summary of referrals and transfers to all DMH programs

18  for each institution. The institutional summaries shall record and track the fact and dates of

19  referral to each specific DMH program; acceptance or rejection (with reasons) by DMH: the

20  status and outcome of any appeal; the issuance of a bed number by the DMH program; teletype

21  authorizations or endorsements for transfer by CDC classification staff representative; and the

22  actual transfer. The institutional summaries shall include all pending transfers, as well as all

23  transfers actually referred, rejected or completed during the preceding month. Each institution

24  shall submit to the HCSD its monthly summary within fifteen days of the end of the month, and

25  CDC shall submit to the special master a copy of each institutional summary within thirty days of

26  the end of the month.

2

00870

1    5. Within sixty days from the date of this order, defendants shall contract for the

2 promised "cultural assessment" of California State Prison/Corcoran (CSP/Corcoran). The study

3 shall be completed within ninety days after it is initiated.

4    6. Defendants shall forthwith complete and file with the special master its final

5 fact-finding report on allegations of staff misconduct at CSP/Corcoran and a final version of said

6 institution's Use of Force Handbook.

7    7. Within thirty days from the end of each month, defendants shall provide to the

8 special master a copy of incident reports at CSP/Corcoran involving the use of force against

9 Mental Health Services Delivery System (MHSDS) caseload inmates, as well as a copy of said

10 institution's Institution Head Use of Force Review Form with a notation on the disposition for

11 each incident reviewed during the preceding month.

12    8. Defendants shall include in the FY 2005-2006 budget a request for sufficient

13 clinical staff at CSP/Corcoran to provide the mental health services required in the revised

14 program guides for MHSDS caseload inmates in the administrative segregation unit and the SHU

15 at said institution.

16    9. Within thirty days, defendants shall take all steps necessary to ensure that

17 adequate staffing and programming space is provided in the hub units at CSP/Corcoran, San

18 Quentin, and R.J.Donovan for the Enhanced Outpatient population housed in each facility.

19    10. Defendants shall report in writing on their progress in meeting the

20 requirements of paragraph 9 of this order to the special master every two weeks until such time

21 as the services required by outstanding orders of this court are provided in each unit on a regular

22 basis. These reports shall include the daily population of the units, as well as data on clinical and

23 custody staffing the scheduled structured therapeutic activities offered each inmate in the unit

24 /////

25 /////

26 /////

                   3

1  during the preceding two weeks, with reasons for the cancellation of any scheduled activities, and

2  any deficiencies in the availability of programming space.

3  DATED: March 7, 2005.

4

5

6                                    /s/Lawrence K. Karlton
                                     LAWRENCE K. KARLTON
7                                    SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT

8  :fourteenth.mr

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

4



# May Revision
# Justification for Base Adjustments

**Department Name: Department of Corrections**
**Adjustment Title: *Coleman* Court Order – *Coleman* Guidelines at Corcoran State Prison**

Consistent with Government Code 13308.05 the Department of Finance has approved a base adjustment budget for the Department of Corrections (CDC). The following is information on the base adjustment for the *Coleman* Guidelines at California State Prison – Corcoran (CSP-Cor).

## Description of Adjustment

This represents an augmentation of $4,115,000 and 51.3 mental health positions in 2005-06 as a base adjustment to establish sufficient staff at CSP-Cor to provide the mental health services required to implement the revised program guides for the Mental Health Services Delivery System (MHSDS) caseload inmates in the administrative segregation unit (ASU) and the Security Housing Unit (SHU), effective July 1, 2005.

A *Coleman* court order issued on March 7, 2005, specifically requires CDC to establish sufficient staff at CSP-Cor to provide the mental health services required in the revised program guides for MHSDS caseload inmates in the ASU and the SHU. The court order also requires that funding for these augmentations be included in the Fiscal Year 2005-06 budget.

The 1997 MHSDS Program Guide has been reviewed over the past seven years. The CDC field experts and court appointed experts have now agreed upon the draft of a newly revised MHSDS Program Guides and CDC will be submitting them to the court for approval within the next several months. The draft of this new MHSDS Program Guides also addresses the Clark and Armstrong issues by including language and communications requirements during clinical contacts.

In summary, to implement the revised Guidelines at CSP-Cor, the CDC requests the following resources:

- A total of 51.3 mental health related positions (49.5 PYs) at CSP-Cor.
- A total of $170,387 for various operating expenses and equipment.

## How the Adjustment Is Calculated

The justification for their staffing and resources needs are based on a resource analysis methodology, which is a statewide survey that CDC conducted to estimate the additional workload and staff/patient ratio needed in each institution. The result is then translated to the resource needs at CSP-Cor.

Please see the attached workload charts for more information on how the position and dollar increases were calculated.

STATE OF CALIFORNIA
**BUDGET CHANGE PROPOSAL· FISCAL DETAIL**
**STATE OPERATIONS**
DF-46 (REV 06/97) Alternative
*Please report dollars in thousands*

Printed:      05/04/05      time:      08:17:35
Data source   :W:\TEMP\FLT05038.DBF
Report Location:W:\TEMP\FSCLWHOL.RP1
Report Form    :02DF46-Plcy/FnLtr-whole(PY#s)

| BCP # | 5358CA | DATE | 05/04/05 | TITLE | COLEMAN-CORCORAN STA |
|-------|--------|------|----------|-------|----------------------|

| PROGRAM | ( Consolidated ) | ELEMENT | | COMPONENT | |
|---------|------------------|---------|--|-----------|--|

| PERSONNEL YEARS | PYs CY | PYs BY | | | CURRENT YR.($,000) | BUDGET YR.($,000) |
|---|---|---|---|---|---|---|
| TOTAL S & W | | 51.3 | | | | $3,095,616 |
|   SALARY SAVINGS | | -1.8 | | | | -$106,013 |
| NET TOTAL S & W | 0.0 | 49.5 | | | $0 | $2,989,603 |
| STAFF BENEFITS | -- | -- | | | | $955,010 |
|   OASDI | | ( | | ) | ( | ) ( | 6,681) |
|   HEALTH INSURANCE | | ( whole | ) | ( | ) ( | 276,720) |
|   RETIREMENT - Industrial | | ( dollars | ) | ( | ) ( | 17,658) |
|   RETIREMENT - Safety | | ( | ) | ( | ) ( | 542,184) |
|   RETIREMENT - Peace Officer | | ( | ) | ( | ) ( | ) |
|   RETIREMENT - Other | | ( | ) | ( | ) ( | ) |
|   WORKERS' COMPENSATION | | ( | ) | ( | ) ( | 111,767) |
|   IDL, NDI, UI (incl in W.C.) | | | | | | |

| | |
|---|---|
| **TOTAL PERSONAL SVCS** | **$3,944,613** |

**OPERATING EXPENSES AND EQUIPMENT**

| | | | | | |
|---|---|---|---|---|---|
| GENERAL EXPENSE | | | | | 11,667 |
| PRINTING | | | | | 794 |
| COMMUNICATIONS | | | | | 51 |
| POSTAGE | | | | | |
| INSURANCE | | | | | |
| TRAVEL - IN STATE | | | | | 9,971 |
| TRAVEL - OUT OF STATE | | | | | |
| TRAINING | | | | | 4,365 |
| FACILITIES OPERATIONS | | | | | |
| UTILITIES | | | | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | | | | |
| CONSULTING & PROFESSIONAL:External | | | | | |
| CONSOLIDATED DATA CENTERS | | | | | |
|   Health and Welfare Data Center | ( | ) | ( | ) | |
|   Stephen P. Teale Data Center | ( | ) | ( | ) | |
| DATA PROCESSING | | | | | |
| EQUIPMENT | | | | | 142,764 |
| DEBT SERVICE | | | | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | | | 775 |

| | |
|---|---|
| **TOTAL OPERATING EXPENSES and EQUIPMENT** | **170,387** |

SPECIAL ITEMS of EXPENSE

| | | | |
|---|---|---|---|
| **TOTAL STATE OPERATIONS EXPENDITURES** | \| $ | \| $ | 4,115,000 |

PAGE III-2a

**CONTINUATION Sheet**          *HEALTH CARE SERVICES PRG*          Printed:        05/04/05        time:        08:17:35

**BCP# *5358CA***          **DEPARTMENT**    *CORRECTIONS*          **FISCAL YEAR**    2005 - 002006

| SOURCE OF FUNDS | APPROPRIATION NO. | | | | |
|---|---|---|---|---|---|
| | ORG | REF | FUND | | |
| GENERAL FUND | 5240 | 001 | 0001 | $ | $    4,115,000 |
| SPECIAL FUNDS | 5240 | | | $ | $ |
| FEDERAL FUNDS | 5240 | 001 | 0890 | $ | $ |
| OTHER FUNDS - Bond | 5240 | 001 | 0001 | $ | $ |
| OTHER FUNDS - IWF | 5240 | 001 | 0917 | $ | $ |
| OTHER - Spcl Deposit | 5240 | 001 | 0942 | $ | $ |
| OTHER Lease Payment | 5240 | 003 | 0001 | $ | $ |
| OTHER - Lease Reimb | 5240 | 003 | 0995 | $ | $ |
| REIMBURSEMENTS | 5240 | 501 | 0995 | $ | $ |

| LOCAL ASSISTANCE<br>SOURCE OF FUNDS | APPROPRIATION NO. | | | $  ( | ) | $  ( | ) |
|---|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | | |
| GENERAL FUND | 5240 | 101 | 0001 | $ | | $ | |
| SPECIAL FUNDS | 5240 | | | $ | | $ | |
| FEDERAL FUNDS | 5240 | | | $ | | $ | |
| OTHER FUNOS | 5240 | | | $ | | $ | |
| REIMBURSEMENTS | 5240 | 601 | 0995 | $ | | $ | |

/////////////////  E N D  of  CONSOLIDATED DISPLAY  /////////////////

PAGE III-2b

**CONTINUATION Sheet**          **HEALTH CARE SERVICES PRG**      Printed:      05/04/05      time:      08:17:35
**BCP# 5358CA**                **DEPARTMENT** *CORRECTIONS*        **FISCAL YEAR**    2005 - 002006

| PROGRAM *HEALTH CARE SERVICES PRG* | | **ELEMENT** | **COMPONENT** | |
|---|---|---|---|---|
| **PERSONNEL YEARS** | **PYs CY** | **PYs BY** | **CURRENT YR. $$** | **BUDGET YR. $$** |
| TOTAL S & W | . | 51.3 | | $3,085,776 |
| SALARY SAVINGS | | -1.8 | | -$106,013 |
| NET TOTAL S & W | 0.0 | 49.5 | $0 | $2,979,763 |
| STAFF BENEFITS | -- | -- | | $954,867 |
| OASDI | | ( | ) ( ) | ( 6,681) |
| HEALTH INSURANCE | | ( whole | ) ( ) | ( 276,577) |
| RETIREMENT - Industrial | | ( dollars | ) ( ) | ( 17,658) |
| RETIREMENT - Safety | | ( | ) ( ) | ( 542,184) |
| RETIREMENT - Peace Officer | | ( | ) ( ) | ( ) |
| RETIREMENT - Other | | ( | ) ( ) | ( ) |
| WORKERS' COMPENSATION | | ( | ) ( ) | ( 111,767) |
| IDL, NDI, UI (incl in W.C.) | | | | . -- |
| **TOTAL PERSONAL SVCS** | | | | **$3,934,630** |

**OPERATING EXPENSES AND EQUIPMENT**

| | | |
|---|---|---|
| GENERAL EXPENSE | | 11,667 |
| PRINTING | | 794 |
| COMMUNICATIONS | | 51 |
| OSTAGE | | |
| INSURANCE | | |
| TRAVEL - IN STATE | | 9,971 |
| TRAVEL - OUT OF STATE | | |
| TRAINING | | 4,365 |
| FACILITIES OPERATIONS | | |
| UTILITIES | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | |
| CONSULTING & PROFESSIONAL:External | | |
| CONSOLIDATED DATA CENTERS | | |
|   Health and Welfare Data Center | ( ) | ( ) |
|   Stephen P. Teale Data Center | ( ) | ( ) |
| DATA PROCESSING | | |
| EQUIPMENT | | 142,764 |
| DEBT SERVICE | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | 775 |

| **TOTAL OPERATING EXPENSES and EQUIPMENT** | | **170,387** |
|---|---|---|

SPECIAL ITEMS of EXPENSE

| **TOTAL STATE OPERATIONS EXPENDITURES** | \| $ | \| $ 4,105,017 |
|---|---|---|

PAGE III-2a

**CONTINUATION Sheet**
**BCP# 5358CA**

*HEALTH CARE SERVICES PRG*
**DEPARTMENT** *CORRECTIONS*

Printed:   05/04/05   time:   08:17:35
**FISCAL YEAR**   2005 - 002006

HEALTH CARE SERVICES PRG

| SOURCE OF FUNDS | ORG | APPROPRIATION NO. REF | FUND | | | |
|---|---|---|---|---|---|---|
| GENERAL FUND | 5240 | 001 | 0001 | $ | $ | 4,105,017 |
| SPECIAL FUNDS | 5240 | | | $ | $ | |
| FEDERAL FUNDS | 5240 | 001 | 0890 | $ | $ | |
| OTHER FUNDS - Bond | 5240 | 001 | 0001 | $ | $ | |
| OTHER FUNDS - IWF | 5240 | 001 | 0917 | $ | $ | |
| OTHER - Spcl Deposit | 5240 | 001 | 0942 | $ | $ | |
| OTHER Lease Payment | 5240 | 003 | 0001 | $ | $ | |
| OTHER - Lease Reimb | 5240 | 003 | 0995 | $ | $ | |
| REIMBURSEMENTS | 5240 | 501 | 0995 | $ | $ | |

| LOCAL ASSISTANCE SOURCE OF FUNDS | ORG | APPROPRIATION NO. REF | FUND | $ ( | ) | $ ( | ) |
|---|---|---|---|---|---|---|---|
| GENERAL FUND | 5240 | 101 | 0001 | $ | | $ | |
| SPECIAL FUNDS | 5240 | | | $ | | $ | |
| FEDERAL FUNDS | 5240 | | | $ | | $ | |
| OTHER FUNDS | 5240 | | | $ | | $ | |
| REIMBURSEMENTS | 5240 | 601 | 0995 | $ | | $ | |

PAGE III-2b

Fiscal Detail Continued
**DETAIL OF PERSONAL SERVICES**    _HEALTH CARE SERVICES PRG_

| Proposed New | POSITIONS | | | AMOUNT (,000) | |
|---|---|---|---|---|---|
| **CLASSIFICATION** | **CY** | **BY** | **SALARY/RANGE** | **CY** | **BY** |
| Staff Psychiatrist,CF | | 5.3 | 8528 - 11181 | | 626,746 |
| Registered Nurse,CF | | 3.1 | 4609 - 5914 | | 195,728 |
| Psychologist - Clinical, CF | | 12.2 | 4498 - 5904 | | 761,426 |
| Supvng Psychiatric Soc Worker | | 1.8 | 3750 - 4558 | | 89,726 |
| Psychiatric Soc Worker, CF | | 4.4 | 3321 - 4139 | | 196,944 |
| Sr Psychiatric Tech (Safety) | | 4.0 | 3080 - 4101 | | 172,344 |
| Psychiatric Techn (Safety) | | 12.9 | 2748 - 3612 | | 492,264 |
| Recr Therapist | | 4.1 | 2891 - 3599 | | 159,654 |
| Ofc Services Suprvr II -Gen | | 0.5 | 2759 - 3355 | | 18,342 |
| Ofc Techn -Typing | | 1.2 | 2510 - 3050 | | 40,032 |
| Medical Transcriber | | 1.0 | 2419 - 2941 | | 32,160 |
| Office Asst -Typing | | 0.8 | 2130 - 2641 | | 22,901 |
| Pay Differentials | - | - | | | 276,439 |
| Premium Holiday Pay | - | - | | | 1,070 |
| **TOTAL SALARIES AND WAGES** | | 51.3 | [[[[[[]]]]] | $ | $    3,085,776 |

PAGE III-3

\*
\*
\*

**SUPPLEMENTAL INFORMATION**
_Please report dollars in thousands._
**IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.**    SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|
| EQUIP - | | 142,764 | -142,764 |
| C&PS-In | | | |
| C&PS-Ex | | | |
| ONE-TIMES (ONE-TIMES incls EQUIP & CONTRACTS) | | 142,764 | -142,764 |
| FULL-YR | | | |
| OTHR Itms | | 775 | |

PAGE III-4

\\\\\\\\\\\\\\\\\    **E N D   of   PROGRAM:**    _HEALTH CARE SERVICES PRG_

**CONTINUATION Sheet**  **EDUCATION PRG**                                     Printed:        05/04/05      time:        08:17:35
**BCP# 5358CA**          **DEPARTMENT**  *CORRECTIONS*          **FISCAL YEAR**      2005 - 002006

| PROGRAM *EDUCATION PRG* | | ELEMENT | | COMPONENT | | |
|---|---|---|---|---|---|---|

| PERSONNEL YEARS | PYs CY | PYs BY | | CURRENT YR. \$\$ | BUDGET YR. \$\$ |
|---|---|---|---|---|---|
| TOTAL S & W SALARY SAVINGS | | | | | \$9,840 |
| NET TOTAL S & W | 0.0 | 0.0 | | \$0 | \$9,840 |
| STAFF BENEFITS | -- | -- | | | \$143 |
| OASDI | | { | } { | } { | ) |
| HEALTH INSURANCE | | { whole | } { | } { | 143) |
| RETIREMENT - Industrial | | { dollars | } { | } { | ) |
| RETIREMENT - Safety | | { | } { | } { | ) |
| RETIREMENT - Peace Officer | | { | } { | } { | ) |
| RETIREMENT - Other | | { | } { | } { | ) |
| WORKERS' COMPENSATION | | { | } { | } { | ) |
| IDL, NDI, UI (incl in W.C.) | | { | } { | } { | ) |

| TOTAL PERSONAL SVCS | | | | | \$9,983 |
|---|---|---|---|---|---|

**OPERATING EXPENSES AND EQUIPMENT**

GENERAL EXPENSE
PRINTING
COMMUNICATIONS
POSTAGE
INSURANCE
TRAVEL - IN STATE
TRAVEL - OUT OF STATE
TRAINING
FACILITIES OPERATIONS
UTILITIES
CONSULTING & PROFESSIONAL:Interdepartmental
CONSULTING & PROFESSIONAL:External
CONSOLIDATED DATA CENTERS
  Health and Welfare Data Center        (    )    (    )
  Stephen P. Teale Data Center       (    )    (    )
DATA PROCESSING
EQUIPMENT
DEBT SERVICE
OTHER ITEMS OF EXPENSE (see Supplemental Info sheets)

| TOTAL OPERATING EXPENSES and EQUIPMENT | | | | | |
|---|---|---|---|---|---|

SPECIAL ITEMS of EXPENSE

| TOTAL STATE OPERATIONS EXPENDITURES | | | \$ | \$ | 9,983 |
|---|---|---|---|---|---|

PAGE III-2a

**CONTINUATION Sheet**
**BCP# 5358CA**

*EDUCATION PRG*
**DEPARTMENT** *CORRECTIONS*

Printed:    05/04/05    time:    08:17:35
**FISCAL YEAR** 2005 - 002006

EDUCATION PRG

| SOURCE OF FUNDS | APPROPRIATION NO. | | | | | |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 5240 | 001 | 0001 | $ | $ | 9,983 |
| SPECIAL FUNDS | 5240 | | | $ | $ | |
| FEDERAL FUNDS | 5240 | 001 | 0890 | $ | $ | |
| OTHER FUNDS - Bond | 5240 | 001 | 0001 | $ | $ | |
| OTHER FUNDS - IWF | 5240 | 001 | 0917 | $ | $ | |
| OTHER - Spcl Deposit | 5240 | 001 | 0942 | $ | $ | |
| OTHER Lease Payment | 5240 | 003 | 0001 | $ | $ | |
| OTHER - Lease Reimb | 5240 | 003 | 0995 | $ | $ | |
| REIMBURSEMENTS | 5240 | 501 | 0995 | $ | $ | |

| LOCAL ASSISTANCE SOURCE OF FUNDS | APPROPRIATION NO. | | | $ ( | ) | $ ( ) |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 5240 | 101 | 0001 | $ | $ | |
| SPECIAL FUNDS | 5240 | | | $ | $ | |
| FEDERAL FUNDS | 5240 | | | $ | $ | |
| OTHER FUNDS | 5240 | | | $ | $ | |
| REIMBURSEMENTS | 5240 | 601 | 0995 | $ | $ | |

PAGE III-2b

00880

**CONTINUATION Sheet**   *EDUCATION PRG*
**BCP# 5358CA**   **DEPARTMENT**   *CORRECTIONS*

Printed:  05/04/05   time:  08:17:35
**FISCAL YEAR**   2005 - 002006

Fiscal Detail Continued
**DETAIL OF PERSONAL SERVICES**   *EDUCATION PRG*

| *Proposed New* | POSITIONS | | | AMOUNT (,000) | |
|---|---|---|---|---|---|
| **CLASSIFICATION** | **CY** | **BY** | **SALARY/RANGE** | **CY** | **BY** |
| Pay Differentials | - | - | | | |
| **TOTAL SALARIES AND WAGES** | | | [[[[[[[]]]]]] | $ | $ 9,840 |
| | | | | | 9,840 |

PAGE III-3

\*
\*
\*

**SUPPLEMENTAL INFORMATION**
*Please report dollars in thousands.*
**IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.**   SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|
| EQUIP - | | | |
| C&PS-In | | | |
| C&PS-Ex | | | |
| ONE-TIMES (ONE-TIMES incls EQUIP & CONTRACTS) | | | |
| FULL-YR | | | |
| OTHR Itms | | | |

PAGE III-4

\\\\\\\\\\\\\\   **E N D   of   PROGRAM:**   *EDUCATION PRG*

*Coleman* Guidelines for Corcoran State Prison
Base Adjustment
Fiscal Year 2005/06

| Mission SHU-C3MS | staffed cap 450 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Lic. Psych Tech | 2.43 to program | 2.43 | 0 | 2.43 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |
| Psychiatrist | 1 to 100 | 4.5 | 1 | 3.5 |
| Psychologist | 1 to 50* | 6 | 3 | 3 |
| Psych Soc Wrkr | 1 to 50* | 3 | 0 | 3 |

| Mission ASU | staffed cap 450 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psych Soc Wrkr | 0.5 to program | 0.5 | 0 | 0.5 |

| Mission ASU-C3MS | staffed cap 100 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 100 | 1 | 0.5 | 0.5 |
| Psychologist | 1 to 40* | 1.5 | 0 | 1.5 |
| Psych Soc Wrkr | 1 to 40* | 1 | 1 | 0 |
| Lic. Psych Tech | 1.62 to 100 | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to 54 | 1.77 | 0 | 1.77 |

| Mission ASU-EOP | staffed cap 63 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 45 | 1.5 | 0.5 | 1 |
| Registerd Nurse | 1.62 to program | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |

| Mission MHCB | staffed cap 23 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 10 | 2.33 | 2 | 0.3 |
| Psychologist | 0.62 by 3 staff | 1.86 | 0 | 1.86 |

| Mission MDO/BPT/Zcases | | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient report** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychologist | 1 to 150 | 0.56 | 0 | 0.56 |

| Mission RVRs | | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychologist | 1 to 300 | 0.79 | 0 | 0.79 |

5/12/2005
Version 2.0

00882

*Coleman* Guidelines for Corcoran State Prison
Base Adjustment
Fiscal Year 2005/06

**Mission**
**Relief Factors**

| Classification | Staff:relief factor | staff via ratio | less current relief | required additional staff |
|---|---|---|---|---|
| Lic Psych Tech | 1 to 0.62 | 13.64 | 0.8 | 12.84 |
| Psychologist | 1 to 0.15 | 4.5 | 0 | 4.5 |
| Psych Soc Wrkr | 1 to 0.15 | 0.9 | 0 | 0.9 |

**Mission**
**Nursing**

| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
|---|---|---|---|---|
| Registered Nurse | 1 to 800 | 1.5 | 0 | 1.5 |

**Mission**
**Supervision**

| Classification | Supv to staff | supv via ratio | less current supv | required additional supv |
|---|---|---|---|---|
| Sr. Psych Soc Wrke | 1 to 10 | 1.79 | 0 | 1.79 |
| Lic Psych Tech | | -4 | 0 | -4 |
| Sr. Lic Psych Tech | 1 to 10 | 4 | 0 | 4 |

**Mission**
**Clerical/Med Rec**

| Classification | Staff:EOP/C3MS | staff via ratio | less current supv | required additional staff |
|---|---|---|---|---|
| Office Tech | 1.0 to 300/800 | 1.22 | 0 | 1.22 |
| Office Asst (L.T.) | 0.5 to 300/800 | 0.75 | 0 | 0.75 |
| Med Transcriber | 1 to MHCB Prog. | 1 | 0 | 1 |
| OSS II | 1:10 | 0.5 | 0 | 0.5 |

| Overall additions | P Y s |
|---|---|
| Psychiatrist | 5.3 |
| Psychologist | 12.21 |
| Psych Soc Wrkr | 4.4 |
| Registerd Nurse | 3.12 |
| Lic. Psych Tech | 12.89 |
| Rec Therapist | 4.07 |
| Sr. PSW | 1.79 |
| Sr. LPT | 4.0 |
| OSS II | 0.5 |
| Office Tech | 1.22 |
| Office Asst | 0.75 |
| Med Transcriber | 1.0 |

| Mental Health Staffing Total | 51.25 |
|---|---|

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11           Plaintiffs,              No. CIV S-90-0520 LKK JFM P

12        vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14
             Defendants.              ORDER
15   _____/

16          On February 11, 2005, the special master filed a fourteenth monitoring report.

17   The report contains several recommendations for specific action by defendants. Neither party

18   has filed objections to the report or its recommendations. Good cause appearing, the special

19   master's recommendations will be the order of the court.

20          In accordance with the above, IT IS HEREBY ORDERED that:

21          1. Within thirty days from the date of this order defendants shall submit to the

22   special master a plan for the provision of a meaningful schedule of differential pay, known in the

23   California Department of Corrections (CDC) as R&R, for psychiatrists in High Desert State

24   Prison. Salinas Valley State Prison, and Valley State Prison for Women, and for psychiatrists,

25   case managers, recreational therapists and psych techs in California State Prison/Corcoran. Said

26   plan shall include a differential pay scale for clinical supervisors, as well as staff clinicians. Said

                                               1

1   plan shall also anticipate and address the potentially adverse impact of an enhanced R&R

2   schedule in the above-listed facilities on adjacent institutions, including Correctional Training

3   Facility, Central California Women's Facility, and California Substance Abuse Treatment

4   Facility, as well as competition for mental health personnel inevitably associated with the

5   Department of Mental Health's (DMH) opening of its Coalinga facility in 2005 and CDC's

6   opening of its Delano II institution. The plan shall include a timeline that permits the inclusion

7   of the enhanced pay scales in the Governor's rewritten FY 2005-2006 budget proposal in May

8   2005.

9          2. Within thirty days thereafter, the special master shall report to the court on the

10   adequacy of the plan described in paragraph 1, supra.

11          3. Within thirty days from the date of this order defendants shall submit to the

12   special master a breakdown of headquarters staffing for mental health within the Health Care

13   Services Division in Sacramento (HCSD), identifying all staff, whether full or part-time,

14   including institutional clinicians detailed temporarily to headquarters and retired annuitants and

15   their principal areas of responsibility.

16          4. Within sixty days from the date of this order, defendants shall develop and

17   implement a department-wide monthly summary of referrals and transfers to all DMH programs

18   for each institution. The institutional summaries shall record and track the fact and dates of

19   referral to each specific DMH program; acceptance or rejection (with reasons) by DMH: the

20   status and outcome of any appeal; the issuance of a bed number by the DMH program; teletype

21   authorizations or endorsements for transfer by CDC classification staff representative; and the

22   actual transfer. The institutional summaries shall include all pending transfers, as well as all

23   transfers actually referred, rejected or completed during the preceding month. Each institution

24   shall submit to the HCSD its monthly summary within fifteen days of the end of the month, and

25   CDC shall submit to the special master a copy of each institutional summary within thirty days of

26   the end of the month.

2

1        5. Within sixty days from the date of this order, defendants shall contract for the

2    promised "cultural assessment" of California State Prison/Corcoran (CSP/Corcoran). The study

3    shall be completed within ninety days after it is initiated.

4        6. Defendants shall forthwith complete and file with the special master its final

5    fact-finding report on allegations of staff misconduct at CSP/Corcoran and a final version of said

6    institution's Use of Force Handbook.

7        7. Within thirty days from the end of each month, defendants shall provide to the

8    special master a copy of incident reports at CSP/Corcoran involving the use of force against

9    Mental Health Services Delivery System (MHSDS) caseload inmates, as well as a copy of said

10   institution's Institution Head Use of Force Review Form with a notation on the disposition for

11   each incident reviewed during the preceding month.

12       8. Defendants shall include in the FY 2005-2006 budget a request for sufficient

13   clinical staff at CSP/Corcoran to provide the mental health services required in the revised

14   program guides for MHSDS caseload inmates in the administrative segregation unit and the SHU

15   at said institution.

16       9. Within thirty days, defendants shall take all steps necessary to ensure that

17   adequate staffing and programming space is provided in the hub units at CSP/Corcoran, San

18   Quentin, and R.J.Donovan for the Enhanced Outpatient population housed in each facility.

19       10. Defendants shall report in writing on their progress in meeting the

20   requirements of paragraph 9 of this order to the special master every two weeks until such time

21   as the services required by outstanding orders of this court are provided in each unit on a regular

22   basis. These reports shall include the daily population of the units, as well as data on clinical and

23   custody staffing the scheduled structured therapeutic activities offered each inmate in the unit

24   /////

25   /////

26   /////

3

1   during the preceding two weeks, with reasons for the cancellation of any scheduled activities, and

2   any deficiencies in the availability of programming space.

3   DATED: March 7, 2005.

4

5

6                                        /s/Lawrence K. Karlton
                                         LAWRENCE K. KARLTON
7                                        SENIOR JUDGE
                                         UNITED STATES DISTRICT COURT
8   'fourteenth.mr

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

4

**STATE OF CALIFORNIA**
**FINANCE LETTER - COVER SHEET**
**FOR FISCAL YEAR** 2005/06
**DF-46 (WORD Version)(REV 3/00)**
*Please report dollars in thousands.*

Department of Finance
915 L Street
Sacramento, CA 95814
IMS Mail Code: A-15

| .P #<br>HCSD | PRIORITY NO. | ORG. CODE<br>5240 | DEPARTMENT<br>Corrections |
|---|---|---|---|
| PROGRAM<br>22 | ELEMENT<br>.30 | COMPONENT | |

**TITLE OF PROPOSED CHANGE**
COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM

**SUMMARY OF PROPOSED CHANGES –**

The California Department of Corrections (CDC) is requesting 51.3 positions (49.5 PY's ) and $4,115,000 in associated funding in FY 2005/06 to implement the Mental health services delivery system (MHSDS) program guidelines. Implementing these guidelines will provide cost effective mental health services that optimize the level of functioning of seriously mentally disordered inmates and parolees.

|  | Current Year | Budget Year |
|---|---|---|
| POS | 0.0 | 51.3 |
| PYs | 0.0 | 49.5 |
| $$ | $0 | $4,115 |

| REQUIRES LEGISLATION<br><br>☐ YES<br>☒ NO | CODE SECTION (S) TO BE<br>AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND MARK IF<br>APPLICABLE<br>☐ ONE-TIME COST        ☐ FUTURE<br>                                       SAVINGS<br>☐ FULL-YEAR COSTS      ☐ REVENUE<br><br>☐ FACILITIES/CAPITAL COSTS | |
|---|---|---|---|
| PREPARED BY<br>DR. SHAMA CHAIKEN<br>(916) 445-4508 | DATE<br>4/1/05 | REVIEWED BY<br>MARY KOSTIEW<br>(916) 650-6728 | DATE<br>4/1/05 |
| DEPARTMENT DIRECTOR | DATE | AGENCY SECRETARY | DATE<br>5-11-5 |

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?

☐ YES☒ NO     ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND
DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

FOR INFORMATION TECHNOLOGY REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY
STUDY REPORT (FSR) WAS APPROVED BY DOIT.

| DATE | PROJECT # | FSR ☐ | OR | SPR ☐ |
|---|---|---|---|---|

**DOF ANALYST USE**
**(ADDITIONAL REVIEW)**

CAPITAL OUTLAY ☐     TIRU ☐     FSCU ☐     OSAE ☐     CALSTARS ☐

**CALIFORNIA DEPARTMENT OF CORRECTIONS**
**MAY REVISE FINANCE LETTER**
**COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY**
**SYSTEM**
**AT CORCORAN STATE PRISON**
**FISCAL YEAR 2005/2006**

## A. Nature of Request

This Finance Letter is requesting $4.1 million for 51.25 Mental Health positions and associated costs for new Mental Health Services Delivery System (MHSDS) guidelines to be implemented at California State Prison, Corcoran (COR) on July 1, 2005.

Mental Health Treatment is provided in the California Department of Corrections (CDC) through the MHSDS. The intent of the MHSDS is to advance the Department's mission to protect the public by providing timely, cost-effective mental health services that optimize the level of individual functioning of seriously mentally disordered inmates and parolees in the least restrictive environment.

The court case *Coleman v. Schwarzenegger ET. Al.*, was filed contending that the CDC was violating Eighth and Fourteenth Amendments of the United States Constitution by providing inadequate mental health care to inmates throughout the prison system. In 1997, CDC issued a preliminary version of MHSDS Program Guides, which established preliminary policies and procedures to provide constitutionally adequate mental health services at all CDC institutions. Other court cases including *Clark* and *Armstrong*, require that CDC staff provide reasonable accommodation to inmates with disabilities, and ensure equally effective communication with disabled inmates during contacts of any kind within the MHSDS.

Since 1997, details of the MHSDS Program Guides have been negotiated with all parties in the *Coleman* case in order to develop a final version of the MHSDS Program Guides. Implementing these policy and procedural changes is an integral part of the strategy to exit the *Coleman* case and to reduce costs related to this litigation. In addition, one of the goals and objectives of the CDC is to take responsibility and accountability for the rehabilitation of offenders and provide training, counseling, and support services.

When the resource analysis process for this BCP was initiated in July 2004, final approval of the MHSDS Program Guides were anticipated to be completed by January 2005. The Special Master's Draft Report on Revised Program Guides (Attachment H) states, "The purpose of this report is to begin the movement toward final approval of the revised program guides." However, the *Coleman* parties have not completed negotiation regarding a few components of the MHSDS Program Guides. A subsequent BCP will be submitted to address resources needed to implement the revised MHSDS Program Guides at all institutions, once the document receives final court approval. Information regarding resources that will be requested in a future BCP are included in this document.

00889


A March 7, 2005 court order from Judge Karlton (Attachment G) requires the State of California to "include in the Fiscal Year (FY) 2005-2006 budget a request for sufficient clinical staff at COR to provide the mental health services required in the revised program guides for MHSDS caseload inmates in the Administrative Segregation Unit (ASU) and the Security Housing Unit (SHU) at said institution." In order to implement the revised MHSDS Program Guides at COR according to the court order, the CDC Health Care Services Division (HCSD) and Institutions Division have identified required resources. The staff ratios determined to be required in the COR ASU and SHU were established in the context of job duties completed in these units as well as job duties related to other mandated requirements that impact workload for staff in the ASU and SHU. The ratios required for COR ASU and SHU staffing would increase significantly without allocation of concurrent resources for other related duties. HCSD and Institutions Division are therefore requesting the following positions (see Alternative D - staffing summary - Attachment C):

**FY 2005-06 Request:**

1.  **0.5 Permanent Positions for the ASU, New Stand Alone Building (Non-MHSDS) Population**
    This Finance Letter requests 0.5 Psychiatric Social Workers, as permanent positions to provide follow up evaluations on positive mental health screenings of inmates in the ASU population.

2.  **5.39 Permanent Positions for the ASU Correctional Clinical Case Management Services (CCCMS) Population**
    This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the CCCMS population in the ASU: 0.5 Staff Psychiatrist, 1.5 Clinical Psychologists, 1.62 Psychiatric Technicians, and 1.77 Recreational Therapists.

3.  **13.08 Permanent Positions for the SHU CCCMS and Group Therapy**
    This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the SHU: 3.0 Clinical Psychologists, 3.0 Psychiatric Social Workers, 3.5 Staff Psychiatrists, 1.15 Recreational Therapists, and 2.43 Psychiatric Technicians.

4.  **3.77 Permanent Positions for ASU Enhanced Outpatient Program (EOP) Hubs**
    This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the ASU Hubs population: 1.62 Registered Nurses, 1.15 Recreational Therapists, and 1.0 Staff Psychiatrists

5.  **2.16 Permanent Positions for the Mental Health Crisis Bed (MHCB) Population**



This Finance Letter requests the following permanent positions as a result of previously unfunded and new required duties in the MHCB population: 1.86 Clinical Psychologists, and 0.3 Staff Psychiatrists.

6.    **0.79 Permanent Positions for the Mental Health Participation in the Rules Violation Process**
       This Finance Letter requests 0.79 Clinical Psychologist permanent positions as a result of the changes in the Program Guides requiring Mental Health case managers to participate in the Rules Violation process.

7.    **14.24 Permanent Positions for Relief Factor**
       This Finance Letter is requesting 8.84 Psychiatric Technicians in order to establish a 0.62 relief factor for the Psychiatric Technician classification, to perform their duties on a 7 day per week basis. In addition, this Finance Letter requests a relief factor of 4.5 Clinical Psychologists and 0.9 Psychiatric Social Workers.

8.    **0.56 Positions for Forensic Evaluation**
       This Finance Letter requests 0.56 Clinical Psychologists to perform Mentally Disordered Offender, Board of Prison Term, Z Case, and Departmental Review Board evaluations.

9.    **3.47 Positions for Clerical Assistance**
       This Finance Letter requests 1.22 Office Technicians (OT), 1.0 Medical Transcribers, 0.5 Office Staff Supervisor II and 0.75 Office Assistants (Limited Term) with clerical support in the Mental Health Program throughout CDC.

10.   **5.79 Permanent Positions for Institution Level Supervision and for 4.0 Senior Psychiatric Technicians**
       This Finance Letter requests 1.79 Supervising Psychiatric Social Workers, and 4.0 Senior Psychiatric Technician permanent positions to provide the Institutions with supervisory staff.

11.   **1.5 Permanent Positions for Mental Health Nursing**
       This Finance Letter requests 1.5 Registered Nurses permanent positions to perform Mental Health nursing duties.

**B. Background History**

<u>The MHSDS Program Guides</u>

The CDC is mandated under the Federal constitution to provide adequate medical and mental health care to all inmates who need it. "Deliberate indifference" to mental health needs has long been held to be a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The CDC has been challenged in two court cases, *Plata*

*and Coleman*, which alleged that the CDC had insufficient staffing levels and inadequate policies and procedures to provide necessary mental health and medical care to inmates.

The CDC has responded to this litigation by developing a comprehensive and fiscally prudent approach to health care for inmates. Implementation of the MHSDS began in FY 1994–1995. In 1997, CDC implemented the MHSDS Program Guides, which provide an initial set of standardized policies and procedures for mental health treatment at each institution.

The Inmate Medical Services Program (IMSP) Policies and Procedures were developed in 2001 to standardize medical treatment at each institution. The IMSP Policies and Procedures contain guidelines for Quality Management, which have been implemented across all medical and mental health programs.

The 1997 MHSDS Program Guides have been reviewed and revised over the past seven years through ongoing negotiation between all parties involved in the *Coleman* court case. CDC field experts and court appointed experts have worked to agree upon the new set of policies and procedures contained in the revised MHSDS Program Guides, which meet constitutional requirements for adequate mental health care. The revised MHSDS Program Guides will be incorporated as Volume 12, of the IMSP Policies and Procedures.

The purpose of implementing the revised MHSDS Program Guides is to meet court ordered requirements to provide constitutionally adequate mental health treatment to inmates. Implementation of the MHSDS Program Guides, as well as the IMSP Policies and Procedures regarding Mental Health Quality Management, will result in the reduction of costs associated with the *Coleman* case. The MHSDS Program Guides also address issues raised in the *Clark* and *Armstrong* cases against CDC. The Program Guides include requirements for language translation and for clinicians to ensure that disabled inmates receive appropriate accommodation and equally effective communication during clinical contacts.

Although the final version of the revised MHSDS Program Guides has not been court-approved, the March 7, 2005 court order requires that "Defendants shall include in the FY 2005-2006 budget a request for sufficient clinical staff at COR to provide the mental health services required in the ASU and the SHU at said institution."

Summary of the 1997 MHSDS Program Guides

The 1997 MHSDS Program Guides established a set of policies and procedures for providing a continuum of mental health services for inmates. Inmates who require mental health treatment are currently identified through reception center screening, staff referral, and inmate self-referral. The MHSDS is designed to provide mental health treatment to inmates who have serious mental illnesses that impact their ability to function. Mental health services are currently provided in the least restrictive environment consistent with the safety and security needs of both the inmate-patient and

00892

the institution. The MHSDS provides inmate-patients with mental health treatment ranging from crisis intervention to inpatient care. Each inmate-patient treated in the MHSDS receives an individualized mental health treatment plan, and is placed at a Level of Care (LOC) appropriate to his or her identified mental health needs. Three levels of care are offered within CDC institutions and two levels of care are offered through contract with the Department of Mental Health (DMH). The levels of care, in order from lowest level of services to highest level, provided within CDC are:

- CCCMS: Provides individual Case Manager contact at least once every 90 days and medication management by a psychiatrist at least once every 90 day. These patients are housed with other inmates who are not receiving MHSDS treatment services.

- EOP: Provides weekly contacts with a primary clinician, medication management by a psychiatrist as clinically appropriate (interpreted consistently as once every 30 days), and structured therapeutic activities 10 hours per week. Inmate-patients treated at EOP level of care are placed into housing units separated from the non-MHSDS inmate population, as soon as bed space is available.

- MHCB: Provides evaluation and treatment for inmate-patients who require the availability of 24 hour, 7 day per week mental health services to prevent danger to themselves or others, or who have mental conditions which cause grave disability (an inability to use food, clothing, or shelter in appropriate ways), or inability to function at a lower level of care.

- Inmates requiring inpatient mental health care for more than 10 days are currently referred to the DMH. In the 1997 Program Guides, this was achieved through referral to a few CDC institutions, which then completed the DMH referral process, or recommended that the patient return to the CDC institution.

In addition to the LOC designation, each inmate-patient is placed into an institution determined by a classification score calculated to differentiate inmates by safety and security needs. Within institutions, inmates may be placed into the general population or they may be housed temporarily in an ASU when their placement in general population is likely to pose a threat to the safety and security of the institution. Inmate-patients, who, because of gang membership, rules violation, or other means, pose a threat to the safety and security of the institution, may be placed in a SHU for a specified or indeterminate sentence. In ASU and SHU housing, inmate patients are handcuffed and escorted by custody staff whenever they leave their housing cell. MHSDS treatment services for these inmate patients are provided in confidential interview booths and group rooms with treatment cells. These spaces are designed to provide a safe and secure environment for inmate-patients and for staff. Custody placement into general population, ASU or SHU housing is determined independently of MHSDS designation. Two institutions have Psychiatric Services Units (PSU) designed to treat inmate-patients at EOP level of care in a SHU setting. MHSDS levels of care are offered at all custody levels, but not all combinations of LOC and custody placement are offered at each institution.

00893

Length of stay in each program is determined by the inmate-patient's progress in mental health treatment. Inmates receiving CCCMS LOC who are prescribed no psychotropic medication and are free from symptoms for one year may be removed from the MHSDS. Other inmate-patients may receive CCCMS LOC mental health services throughout their incarceration.

Inmate-patients placed at EOP LOC generally receive treatment in this program for at least six months, and may require continued EOP LOC treatment throughout their incarceration.

Summary of Revisions to the MHSDS Program Guides

Many of the revisions in the MHSDS Program Guides policies and procedures do not require additional resources. Of the revisions that do require resources, some have already been implemented through separate BCP. These requirements include:

- The MHCB level of care is now provided in a Correctional Treatment Center (CTC) licensed in accordance with Title XXII (Division 5, Chapter 12, Article 4, Section 79739, Mental Health Treatment Program) regulations.

- Two levels of care (Inpatient Acute Care, and Inpatient Intermediate Care) are provided through contract with the DMH.

- Inmate-patients who require services to treat a condition that does not warrant admission to a licensed mental health facility, or who require close observation and evaluation of a mental health condition, may be placed for up to 72 hours in an Outpatient Housing Unit (OHU). The OHU is not a licensed CTC, but has nursing staff on-site 24 hours per day.

- Inmates placed in ASU are screened within 72 hours to determine whether they have experienced the onset or exacerbation of mental health symptoms.

- All inmates in CDC custody are screened by psychologists for developmental disabilities. If determined to need reasonable accommodation, they are offered assistance in functioning as defined by an individualized assistance plan.

- The Mental Health Tracking System is a database, required to be used at all institutions to track mental health appointments and services rendered.

Since 1997, CDC has implemented, at all institutions, some of the policies and procedures in the MHSDS Program Guides, and requirements of other state and federal laws, without requesting any additional resources. These required implementations have included:

- Mental health assessments are conducted to give clinical input into the disciplinary process when an inmate who shows signs of possible mental illness, or who is in an EOP, MHCB, or DMH program receives a CDC For 115 - Rules Violation Report.

- Suicide Prevention Policies and Procedures – Suicide Prevention is required from all staff. Beginning in 1999, when an inmate-patient is discharged from a MHCB (and had been admitted due to potential suicide risk), the inmate patient is placed on a 5-day clinical follow-up and custody wellness check procedure. Suicide Prevention Training is required annually and is taught jointly by trained mental health and custody staff. When a suicide occurs, the suicide reporting and review process requires development and implementation of a corrective action plan.

- Developmentally disabled or cognitively impaired inmates may be designated as requiring housing in mental health treatment programs, even without past or current mental health symptoms. (A description of the Developmental Disability Program is beyond the scope of this BCP, but inmates-patients with these disabilities impact the time required to complete mental health duties).

- Mental health staff are required to use interpreters and interpreter services to achieve effective communication with inmates who do not speak English, or a language that the staff member has proficiency in speaking.

- Mental health staff have been directed to document methods used to achieve equally effective communication with all disabled inmate-patients.

- Mental health staff at all institutions have been trained and directed to complete referrals to DMH for all inmate-patients who may require a higher level of care, are not (at minimum) stable and programming at EOP level of care, have been in a MHCB for more than 10 days, or have more than three admissions to MHCB in a six month period.

- A Coordinated Clinical Assessment Team, including mental health and custody staff from involved institutions, HCSD, and the DMH, conducts regularly scheduled (generally twice a week) phone conferences to resolve issues related to DMH referral, placement, and transfer.

- The Quality Management System requires mental health staff participation in Quality Improvement Teams, Suicide Prevention and Response Focused Improvement Teams, Mental Health Subcommittees, and Quality Management Committees.

- The MHCB licensing requirements require weekend coverage by mental health clinicians, which was not funded as part of the MHCB licensing budget.

- Mental health staff conducts assessments for the Board of Prison Terms (BPT), Penal Code 2962 (Mentally Disordered Offender (MDO) Act), and Penal Code

00895

1203.03 (Z Cases), and WIC 7301 (Transfer from DMH to CDC) as required by law.

The revised MHSDS Program Guides contain policies and procedures which, when implemented, will reduce required resources at the institutions. These include the following:

- The reception center and CCCMS assessment process was required within 5 days in the 1997 version, and will now be required within 10 days. The timeframe for completion of the treatment plan increased from 7 to 14 days.

- Inmates treated at EOP level of care may be scheduled for less than 10 hours per week of structured therapeutic activity, if clinically indicated.

- Clinicians treating EOP level of care patients are required to complete a monthly summary progress note, instead of documenting each contact with a patient.

- Inmate-patients may be clinically discharged from CCCMS if they have been in continuous remission and are functioning adequately in the mainline without treatment (including psychotropic medication) for six (6) months. This timeline is reduced from the 1997 version of one (1) year.

- Transfers from one CCCMS level of care program to another institution no longer require direct contact between the clinical case managers. This was not feasible and was not current practice, and CDC negotiated to remove the requirement from the revised Program Guides.

- The Transitional Case Management Program was designed to facilitate transfer of patients from EOP and MHCB levels of care to parole. This has relieved some responsibility of the mental health staff at the institutions to communicate individually with parole officers and the parole outpatient clinic when an inmate-patient paroles.

Requirements of the MHSDS Program Guides, which require new resources in order to implement are detailed in the "Justification" section of this proposal.


## C. State Level Considerations

Standardizing the delivery of mental health care is consistent with the CDC Strategic Plan and HCSD Goals and Initiatives to manage the inmate and parolee population in a safe, efficient, and cost effective manner that is in compliance with the law. By providing appropriate resources to comply with policies and procedures developed to provide constitutionally adequate mental health care, CDC will take an important step toward self-directed management of the IMSP. CDC currently spends approximately $3,000,000 per year to pay the *Coleman* plaintiffs' attorneys and Special Master fees. This figure does not

include the CDC staff time required to respond to *Coleman* related inquiries, audits, hearings, and mandates. The most responsible fiscal strategy is to meet requirements for the provision of constitutionally adequate mental health services in order to facilitate a final settlement of the *Coleman* case. To continue current operations and fail to adequately implement the revised standards will leave the State open to further litigation and expenses associated with further court action.

This finance letter does not request resources to meet revised MHSDS Program Guides requirements at all institutions, but creates a model for provision of these services in ASU and SHU at COR, as required by court order.

## D. Facility/Capital Outlay Considerations

Implementation of the Revised MHSDS Program Guides is likely to have capital outlay impact at each institution. Additional office and treatment space may be needed in order to provide workspace and mental health treatment areas. A site-by-site evaluation of required facility and capital outlay would need to be conducted in conjunction with the IMSP implementation. Any Capital Outlay options must be juxtaposed with the outcomes of the Statewide Mental Health Study, which may provide treatment facilities specifically designed for patients who require EOP level of care. After assessment, a capital outlay BCP may be written to address these needs.

Because staffing, office space, workload and treatment space are intertwined concepts, funding for a workload and space survey is requested in this finance letter.

## E. Justification

### Methodology of the Revised MHSDS Resource Analysis

The Revised MHSDS Program Guides were reviewed by HCSD staff in order to list all changes since the 1997 Program Guides. Changes that institutions had been directed to implement were included, and resources allocated were noted. The list of changes was sent to one clinical and one custody contact at each institution. Each institution then completed an independent resource analysis in order to determine resources necessary to successfully implement the changes. The independent resource analyses were collected by HCSD and compiled into a common database. The data was analyzed by senior mental health staff with experience working at several institutions. Changes in the revised MHSDS Program Guides, which most institutions identified as requiring additional resources, are included below. A few unique needs at specific institutions were reviewed in the context of special missions.

Staffing appropriate for each mental health program level of care and custody setting (General Population (GP), ASU, or SHU) was determined by ratio to the number of inmates in the program. Supervisory staffing was determined by ratio to the number of staff requiring supervision. The ratios determined adequate via the resource analysis were then analyzed to

determine any ways to improve efficiency and cost-effectiveness through the provision of equipment, clerical support, or use of alternate classifications.

## Outcome of the Revised MHSDS Resource Analysis

Changes to the Interdisciplinary Treatment Team (IDTT) Process:
The following describe changes to the IDTT Process for all MHSDS Programs. Recommendations for resource allocation are located under headings for the level of care (EOP, CCCMS, or MHCB) and custody level (GP, ASU, or SHU) and refer to resources required for "Changes in IDTT requirements."

The Revised MHSDS Program Guides specify that, for all inmate-patients in the MHSDS, the treatment plan must be formulated and approved during the IDTT meeting. The treatment plan must include measurable goals, and progress toward these goals must be discussed in the IDTT. This process adds approximately 10 minutes to the IDTT for each patient who attends.

The composition of the IDTT, in the Revised MHSDS Program Guides, indicates that the assigned clinical case manager or primary clinician, the assigned psychiatrist, and the assigned correctional counselor must be present. In the PSU, the assigned Correctional Counselor II (CC II) and the Facility Captain must attend all IDTTs. This is a change in requirement and current practice from the 1997 Program Guides, which required a mental health clinician and a psychiatrist, but not the assigned clinician/psychiatrist to attend the IDTT. The IDTT documentation in the revised Program Guides must include the printed names and initials or signatures of all staff present. Estimates indicate that these requirements will double the amount of time each clinician spends in IDTT each week.

The initial IDTT must be held prior to the initial Institution Classification Committee (ICC), and the annual IDTT must be held before the annual ICC. The requirements for intake assessment for CCCMS LOC inmate-patients have increased from a short (2 page) evaluation form to a full intake evaluation (8 pages). This change in the evaluation process will increase intake assessment time approximately 30 minutes per CCCMS inmate-patient.

When an inmate-patient does not attend the IDTT, the Clinical Case Manager (CCM) is responsible for documenting the reason in a progress note. If the inmate-patient refused to attend, the CCM is responsible for documenting the reason for the refusal. If the CCM does not know the reason, this will require a discussion with the patient at cell front, or a discussion with custody staff to determine why the patient did not attend. This is likely to increase the IDTT related time for each clinician an average of one hour per IDTT.

The 1997 MHSDS Program Guides stated that patients treated at EOP Level of Care are required to receive ten hours per week of structured therapeutic activity. The Revised Program Guides state that a patient may be offered less than ten hours of structured therapeutic activity when the IDTT determines that ten hours per week is clinically contraindicated. This change reflects current practice. The Revised Program Guides require that a patient scheduled for less than ten hours per week of structured therapeutic activity

00898

must be reviewed by the IDTT every 30 days instead of every 90 days. This reflects an increase in workload for all members of the IDTT. Approximately 15 percent of inmates in EOP level of care programs are scheduled for less than 10 hours of structured therapeutic activity per week. These 15 percent of patients will have to be reviewed by the IDTT three times as often as previously, driving a significant increase in IDTT time.

The Revised MHSDS Program Guides state that CCCMS inmate-patients in SHU attend IDTT quarterly for the purpose of treatment plan update. This is an increase from the prior requirement for annual treatment plan review. The CCCMS SHU Clinicians will therefore spend four times the amount of time they previously spent in IDTT meetings.

<u>GP CCCMS Level of Care – New Requirements</u>

CCM Duties:

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
|---|---|---|
| Two -page summary Intake Evaluation completed within 5 days. | Eight page Intake Evaluation including C-file review, violence risk assessment, suicide risk assessment, social and family history, psychiatric history, request records from past treatment. Completed within 10 days. | 1.5 hours per intake assessment. This will have the largest impact on Reception Center (RC) Clinicians (see RC Section). Average intakes of inmates new to CCCMS vary. Approximate 2 per week = 3 hours per week |
| CCM Completes Basic Treatment Plan in 7 days | The responsibility of overall treatment planning within the CCCMS program rests with an IDTT. The CCM documents specific recommendations regarding work, education and substance abuse counseling. The treatment plan must include measurable goals and be completed within 14 days. | Increases documentation time by approximately 15 minutes per inmate-patient. IDTT Time by at least 10 minutes per inmate-patient. = 25 minutes x 5 per week = 2 hours per week |
| Reduced IDTT Requirements | Increased IDTT Requirements. **Assigned** CCM required to attend. (Summarized in separate section above) | Doubles IDTT Time per week from approximately 4 hours to approximately 8 hours = Additional 4 hours per week |
| No requirement | Inmates who refuse to attend IDTT. The CCM documents the reason for the refusal on the progress | Requires follow-up cell front with inmate-patients who refuse = Additional 1 hour per week. |

|  |  |  |
|---|---|---|
|  | note. |  |
| No requirement. However, group therapy is provided for a small percentage of CCCMS inmates in some institutions. | Group Therapy must be offered to inmates when clinically appropriate. Group therapy notes must be recorded in a monthly summary and include the inmates attendance, behavior in the group, and the progress toward achieving treatment goals. | Although group therapy may be offered by Licensed Psychiatric Technicians (LPT), the expertise of a psychologist or social worker may be required for some group topics. In addition, CCMs will inevitably cover group therapy when an LPT is not available. Additional 3 hours per week. |
| No requirement | When a CCCMS IDTT recommends transfer to an EOP, the CCM completes a Mental Health Evaluation (see above for time frame). | Additional 1 hour per week. |
| No requirement for 5-day follow-up when an inmate-patient is released from OHU. | Increased responsibility for tracking inmate-patients placed in OHU and released with requirement for 5-day follow up. | Additional 15 minutes per day = 1.5 hours per week. |
| No requirement | Suicide Risk Assessments are required at minimum –<br>• Every time an inmate has an initial face-to-face evaluation for suicidal ideation, gestures, threats, or attempts, by a clinician trained to complete the SRAC.<br><br>• By the referring clinician prior to placement of an inmate-patient into an OHU for continued suicide risk assessment or into a MHCB for suicidal ideation, threats, or attempt.<br><br>• After hours, on weekends and holidays, when the referring clinician has not completed an SRAC, by | Unpredictable additional workload – Time study not completed |

00900

| | | |
|---|---|---|
| | the clinician providing coverage, by the next day, for those inmate-patients placed into an OHU or MHCB. | |
| | • By the associated IDTT and/or clinician for all inmate-patients placed into an OHU, for mental health reasons, or MHCB, for any reason, upon decision to release or discharge. | |
| | • Subsequent to release from an OHU placement that was for the purpose of continued suicide risk assessment, or a MHCB placement for the reason of suicidal ideation, threats, or attempts, at a minimum of every ninety (90) days for a twelve month period, by a mental health clinician. | |
| | • Within seventy-two (72) hours of return from a DMH facility, or within 24 hours if clinically indicated based on new arrival screening. | |
| | • Any time the medical and mental health screening of a new arrival to an institution indicates a current or significant history, over the past year, of suicide risk factors, ideation, threats, or attempts. | |
| | | **TOTAL INCREASE IN WORK TIME = AT LEAST 15.5 HOURS PER** |

Version 3.5
5/11/2005

00901



| | | WEEK, LESS 5 HOURS PER WEEK GROUP THERAPY ASSIGNED TO LPTs BELOW |
| --- | --- | --- |
| | | |

No additional CCMs are requested at this time to implement the increased requirements listed above for CCCMS GP. Staff requested in sections below will reduce clinical case manager responsibilities for group therapy, BPT reports, Rules Violation Report Assessments, and clerical duties in order to offset the increased caseload related duties.

Psychiatry Duties: Increased IDTT Time. The *Coleman* court case Special Master has expressed concern about the high caseloads of psychiatrists in CCCMS level of care.

The current ratio = 1 Psychiatrist: 210 CCCMS inmates (based on CCCMS GP and ASU staffed capacity). At this time, no additional psychiatrists are requested. The plan below includes a work-study to determine whether current and increased duties can be completed by allocated staff. The plan below allocates additional staff to provide group therapy as required by the revised MHSDS Program Guides in CCCMS level of care. The addition of this service is expected to reduce the need for emergency referrals to psychiatrists, as the patients with the highest need for service with have additional clinical contact in the group therapy setting.

LPT and Recreational Therapist (RT) duties:
Group Therapy when clinically indicated/ Monthly Group Therapy Notes/ Increased IDTT Time

Currently none allocated to GP CCCMS LOC. A future BCP will include:

Additional 1. 62 LPT: 800 CCCMS Inmates = (based on CCCMS GP and ASU population) = 45.8 PY - 25.0 requested below for CCCMS ASU = 20.8 PY additional for CCCMS GP

Additional 1.15 RT: 1600 CCCMS Inmates = (based on CCCMS GP and ASU population) = 16.25 PY additional

*At this time, no additional staff is requested for COR General Population CCCMS because this population is not included in the current court order.*

EOP General Population Level of Care

CCM Duties: Reduction of duties - Revision allows reduced individual therapy contact from 1/week to every-other week with group therapy contact by primary clinician on weeks that individual therapy contact does not occur.

| 1997 Requirement | Current Requirement | Estimate of Additional |
| --- | --- | --- |

00902

|  |  | **Time Required** |
|---|---|---|
| Individual Therapy contact required weekly | Individual therapy contact may be every other week if clinically appropriate, with group therapy contact by the primary clinician on weeks between individual contact. Group therapy notes must be recorded in a monthly summary and include the inmates attendance, behavior in the group, and the progress toward achieving treatment goals. | For approximately 20 percent of the EOP population. Group therapy time replaces individual therapy time. Detailed monthly notes are required for group therapy. This new requirement is more difficult to track and schedule. Increases OT responsibility. Overall increases CCM Duties = 2 hours per week. |
| Documentation of each clinical contact required. | Clinical staff shall document the progress of an inmate-patient at least monthly on an IDTT Progress Note. The progress note shall include: record of attendance at treatment activities, description of participation in treatment activities, progress in resolving identified problems and symptoms, current mental status. | Requires monthly summary note instead of documentation of each weekly contact. Documentation is more frequent if significant changes occur in the inmate-patient's level of functioning. Field experts report that the time to complete the monthly summary note is the same as completing weekly notes. Some clinicians will continue to complete progress notes for each contact and will have the added responsibility of this monthly summary. No overall change in CCM duties. |
| Quarterly review requirements. Annual review not different from quarterly reviews. | Additional quarterly review requirements. The quarterly review in the revised Program Guides focuses on interventions implemented since the last team review; assessment of willingness and ability to participate in the program, and | More rigorous quarterly review process. Likely to add 10 minutes per inmate to each IDTT for quarterly review and 15 minutes for annual review. See total changes in IDTT process below. |

00903

| | description of attempts to improve participation; recommendations for modifications of treatment plan including problems, medications, and interventions. Discharge planning section includes specific follow-up recommendations and perceived impediments to discharge. An annual review is required for each inmate-patient with a full case summary and recommendations for continued placement or transfer to a different level of care. | |
|---|---|---|
| Patients receive 10 hours per week structured therapeutic activity | A patient may be offered less than ten hours of structured therapeutic activity when the IDTT determines that ten hours per week is clinically contraindicated. This change reflects current practice. The Revised Program Guides require that a patient scheduled for less than ten hours per week of structured therapeutic activity must be reviewed by the IDTT every 30 days instead of every 90 days. This reflects an increase in workload for all members of the IDTT. | Approximately 15 percent of inmates in EOP level of care programs are scheduled for less than 10 hours of structured therapeutic activity per week. These 15 percent of patients will have to be reviewed by the IDTT three times as often as previously, driving a significant increase in IDTT time. Adds approximately 2 hours per week IDTT Time. |
| No requirement for 5-day follow-up when an inmate-patient is released from OHU. | Increased responsibility for tracking inmate-patients placed in OHU and released with requirement for 5-day follow up. | Average additional 30 minutes per day = 2.5 hours per week. |
| No Specific Requirement. DMH Referrals centralized | EOP clinicians are often responsible for completing | Each DMH referral is estimated to take 6 hours to |

| to one institution. | referrals to DMH. | complete. Average 1 hour per week increase in workload. |
| No Requirement | Suicide Risk Assessment as defined in CCCMS Case Manager duties table above. | Unpredictable workload – Time studies not completed. |
| | | **TOTAL INCREASE IN WORK TIME = AT LEAST 7.5 HOURS PER WEEK** |

No additional clinical case managers are requested at this time to implement the increased requirements listed above for EOP GP. The work and space study requested below will provide data to guide determination of whether new duties can be adequately completed by existing staff.

LPT Duties:
New requirements include Group therapy/ Monthly Group Therapy Treatment Notes/ 5-day follow up for OHU discharge on weekends.

***At this time, no additional staff is requested for COR General Population EOP because this population is not included in the current court order.***

ASU – Stand Alone

Screening/ Daily rounds – LPTs have been previously allocated, but Case Managers to complete follow-up full evaluations for screenings were never funded.

A future BCP will request a ratio of 0.5 CCM per each institution that has an ASU Stand-Alone (10 institutions) = Psychiatric Social Worker 5.0 PY additional

*Current Request Additional 0.5 Psychiatric Social Worker for COR Stand Alone ASU*

ASU – CCCMS

In addition to GP EOP Duties CCCMS ASU new duties include:

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
| --- | --- | --- |
| Requires a CCM to be present at Institutional Classification Committee meetings. | The **assigned** case manager (or psychiatrist) shall attend all ICC meetings. Mental health assessments are required for input into ICC, including the inmate-patient's current participation in treatment, | These assessments are a large increase in responsibility for ASU CCCMS Clinicians. Estimate 8 hours per week increase in duties for CCMs and also to have impact on psychiatrists working in |

| | medication compliance, suitability of single celling or double celling, risk assessment of self-injurious or assaultive behavior, status of Activities of Daily Living, ability to understand Due Process proceedings, likelihood of decompensation if retained in ASU, recommendations for alternative placement and any other custodial and clinical issues that have impact on inmate-patients' mental health treatment | ASU. |
|---|---|---|
| ASU CCCMS Treatment Plans with requirements the same as to GP CCCMS Treatment Plan requirements. | Requirement to include in the treatment plan the inmate-patient's security concerns and status. | Responsibility for regularly tracking and updating treatment plans with security concerns and status. Estimate 2 hours per week increase in duties. |
| A 31- item screening for ASU inmates was added with LPT resources since 1997 | No resources added for CCCMS Clinicians to conduct follow up for emergency, urgent, and routine referrals from screenings. | Approximately 2 hours per week increase in duties for CCMs and Psychiatrists. |
| | | TOTAL INCREASE IN WORK TIME = 15.5 HOURS PER WEEK for GP CCCMS LOC PLUS ADDITIONAL 12 HOURS FOR ASU SPECIFIC DUTIES:<br><br>**TOTAL INCREASE IN WORK TIME = 27.5 HOURS / WEEK** |

Staffing in ASU and SHU has been a consistent concern of the *Coleman* case Special Master. From 1999 – 2003, the completed suicides in ASU/SHU account for 46 percent of all suicides in the CDC inmate population.

There is no currently established ratio for ASU CCCMS CCMs. These duties were never staffed separately from the CCCMS GP Population. The current ratio is therefore

00906

approximately the same as GP CCCMS = 1 CCM: 90 inmates. However, institutions have been free to redirect staff as deemed necessary to cover the ASU CCCMS mission.

A future BCP will request a ratio of 1 CCM: 40 CCCMS inmates at all institutions.

*Current Request Psychologist, CF 1.5 PY additional for COR ASU CCCMS*

Psychiatry Duties: Increased IDTT/ ICC Time/ Response to screenings
The current ratio = 1 Psychiatrist: 125 CCCMS inmates

A future BCP will request a ratio of 1 Psychiatrist: 100 CCCMS inmates at all institutions

*Current Request Psychiatrist, CF 0.5 PY additional for COR ASU CCCMS*

LPT and RT duties include Group Therapy when clinically indicated/ Monthly Group Therapy Notes/Increased IDTT Time

Currently no LPTs or RTs are allocated to ASU CCCMS for these duties. LPTs are allocated for screening, rounds, and medication.

A future BCP will request a ratio of 1.62 LPT: 100 ASU CCCMS inmates and 1.15 RT: 54 ASU CCCMS inmates.

*Current Request LPT 1.62 additional for COR ASU CCCMS*
*Current Request RT 1.77 additional for COR ASU CCCMS*

Custody Escorts ASU and SHU

Custody Escorts – ASU and SHU Individual and Group Therapy –

A future BCP will request a total ratio of 1 (1.18 PY's) escort officer: 60 CCCMS ASU/SHU inmates in all institutions.

IDTT Includes Assigned Correctional Counselor I (CC I):

The total workload identified by HCSD for increased IDTT time of 10 minutes per case as well as 15 percent of the population being seen every 30 days instead of 90 equates to 1.0 CC I for every 1,228 CCCMS ASU inmates (based upon an average work year of 1,776 hours). These positions should not be included the current ratio but rather should be exempt from the current CC I ratio and will fluctuate based upon the population.

A future BCP will request Total Ratio 1 CC I: 160 CCCMS ASU Inmates in all institutions

SHU - CCCMS



In addition to GP EOP Duties CCCMS ASU new duties include:

| 1997 Requirement | Current Requirement | Estimate of Additional Time Required |
|---|---|---|
| Requires a CCM to be present at Institutional Classification Committee meetings. | Mental health assessments are required for input into ICC, including medication compliance, suitability of single celling or double celling, risk assessment of self-injurious or assaultive behavior, status of Activities of Daily Living, ability to understand Due Process proceedings, likelihood of decompensation if retained in SHU, and recommendations for alternative placement. | These assessments are an increase in responsibility for SHU CCCMS Clinicians. Estimate additional 4 hours per week. |
| | | TOTAL INCREASE IN WORK TIME = 15.5 HOURS PER WEEK for GP CCCMS LOC PLUS ADDITIONAL 4 HOURS FOR SHU SPECIFIC DUTIES: **TOTAL INCREASE IN WORK TIME = 19.5 HOURS / WEEK** |

In 1998 for SHU institutions, 1.0 CCM was added for each 300 SHU inmates (not tied to CCCMS ratios). The current ratio is 1 CCM to approximately 100 CCCMS inmates.

A future BCP will request a total ratio of 1 CCM: 50 CCCMS SHU inmates

*Current Request for COR SHU CCCMS includes*
*Psychologist, CF 3.0 PY additional*
*Psychiatric Social Worker, CF 3.0 PY additional*

Psychiatrist new duties – Increased participation in IDTT and ICC

A future BCP will request a total ratio of 1 Psychiatrist: 100 CCCMS SHU Inmates

*Current Request for COR SHU CCCMS includes*
*Psychiatrist, CF 3.5*

00908

SHU LPT New Duties
Weekly Rounds required for CCCMS Inmates. Bi-Weekly Rounds required for Non-MHSDS Inmates

A future BCP will request an additional 1.62 LPT per Institution with CCCMS SHU Program (CCI, COR, VSPW)

*Current Request for COR SHU CCCMS includes*
*LPT 1.62 PY for rounds*

Group Therapy for SHU CCCMS/ Monthly Group Therapy Documentation:

A future BCP will request an additional .81 LPT per Institution with CCCMS SHU Program

*Current Request for COR SHU CCCMS includes*
*LPT .81 PY for group therapy and documentation*

*(Total combined request for LPT COR SHU CCCMS = 2.43 PY)*

A future BCP will request an additional 1.15 RT per Institution with CCCMS SHU Program

*Current Request for COR SHU CCCMS includes*
*RT 1.15 PY for group therapy and documentation*

Custody Escort for SHU CCCMS Individual and Group Therapy
See ASU Correctional Officer above.

Office Technician
See Clerical Section Below

ASU EOP Programs and HUBS

The current ratio for ASU EOP is 1 CCM to 9 EOP ASU EOP Inmate-patients. This ratio is sufficient to meet new MHSDS Program Guides requirements.

The new Clinician requirements for EOP level of care in ASU can be absorbed by current ASU EOP clinician staffing, if additional Registered Nurse (RN) and RT staff is allocated to provide 10 hours per week of group therapy.

A future BCP will request a ratio of 1.62 RN: per institution with ASU EOP program (10 institutions)

*Current Request for COR ASU EOP includes*

*RN 1.62 PY*

A future BCP will request a ratio of 1.15 RT: per institution with ASU EOP program (10 institutions)

*Current Request for COR ASU EOP includes*
*RT 1.15 PY*

The Psychiatrist requirements in the revised MHSDS Program Guides for EOP level of care increase IDTT time. This time is additionally increased by the more rapid placement and removal rate in ASU EOP.

A future BCP will request a psychiatrist ratio in ASU EOP of 1.0 Psychiatrist: 45 ASU EOP inmates. Institutions with more than 45 ASU EOP patients will require an additional allocation of 0.5 PY.

*Current Request for COR ASU EOP includes*
*Psychiatrist 1.0 PY*

PSU
Increased requirements can be absorbed by current PSU clinician staffing if relief LPT and RT positions are provided so clinicians do not get redirected to cover group therapy when LPTs are absent. See Nursing Section below.

RC – New Requirements
The bulk of the Intake Assessment requirements and Treatment Planning requirements described in the CCCMS GP section will be the responsibility of RC staff. The revised Program Guides require that EOP level of care patients be seen weekly until transfer (but does not require the 10 hours of weekly structured therapeutic activities). According the resource analysis data collected, for RC related duties, the caseloads should be reduced by 50 percent from the current staffing allocated. The current RC duties were never staffed separately from the CCCMS level of care duties, and the ratio below takes this into account along with the revised Program Guides duties.

A future BCP will request a ratio of 1 CCM: 45 MHSDS RC Inmates and a ratio of 1 Psychiatrist: 180 MHSDS RC Inmates

*COR has no RC, therefore no resources are requested at this time.*

RN new duties in RC
RC Screenings completed under the supervision of an RN

A future BCP will request 0.82 (0.5 plus relief) RN per RC = 9.02 PY additional to be allocated among the 11 institutions with RC mission.

*COR has no RC, therefore no resources are requested at this time.*

00910

CC I new duties in RC - Counselors are required to review any mental health records in Central File and provide information in IDTT process.

A future BCP will request .25 CC I position for 500 intakes/week

*COR has no RC, therefore no resources are requested at this time.*

## MHCB

Psychologist Duties: MHCB were never staffed for 7 day per week clinician coverage as required by Title XXII. The revised Program Guides have increased requirements for discharge communication, and patients are often referred to DMH from MHCB. Each DMH referral is estimated to take 6 hours to complete. MHCB IDTT Time will also increase due to increased treatment planning requirements.

A future BCP will request change of all Psychologist, CF positions allocated to MHCB from 1.0 to 1.62 (to include relief factor).

*Current request for COR MHCB*
*Psychologist, CF 1.86 PY*

Psychiatrist Duties: Psychiatrists will also be affected by increased IDTT time for treatment planning.

The requirement that will most affect psychiatrists is the new requirement in the revised MHSDS Program Guides that the Discharge Report be written and transmitted before a patient discharges. In order to complete this fast turn-around time, the psychiatrist to patient ratio in MHCB must be increased.

A future BCP will request a total ratio of 1 Psychiatrist: 10 MHCB

*Current request for COR MHCB*
*Psychiatrist, CF 0.3 PY*

The revised Program Guides require a CC I assigned to MHCB attend the IDTT.

A future BCP will request a total ratio of .25 CC I: 12 MHCBs

The revised MHCB require a supervisor to review all MHCB Discharge Plans and to ensure implementation of the Discharge Plans. See Institution Level Supervision section below.

In order to provide therapeutic activities required in Title XXII, some of these activities need to be scheduled on 3rd watch. A custody supervisor is required for this to occur.

A future BCP will request an additional 1.0 Custody Sergeant per MHCB program

Resources required include a Transcription Service or additional Medical Transcription Staff for discharge reports (See Clerical Section).

---

Rules Violation Report (RVR) – CDC Form 115X - Mental Health Evaluations
Inmates in the MHSDS or any inmate showing signs of possible mental illness may require a CDC 115-X RVR: Mental Health Assessment when they are charged with a disciplinary action. Time studies indicate that an initial assessment requires an average of 2.5 hours, and Mental Health Assessments conducted on repeat offenders take an average of 1.5 hours. At California State Prison-Sacramento (housing approximately 350 EOP level of care inmates) from April 2004 – November 2004, the average number of required Mental Health Assessments per month was 82. These RVR Assessments required an average of 162 hours per month to complete. RVR Assessments for CCCMS level of care inmate-patients are completed only when there is a referral indicating that the inmate demonstrated signs that mental illness may have impacted his/her behavior. RVR Assessments for CCCMS level of care inmate-patients may be absorbed by the clinical case manager staffing as requested for CCCMS level of care.

A future BCP will request an additional 1.0 Psychologist, CF: 300 EOP Level of Care Inmates (based on current GP, ASU and PSU combined EOP population)

*Current request for COR RVR Assessments*
*Psychologist .79 PY*

Nursing Duties – New Requirements – Not Program Specific
The revised MHSDS Program Guides require that Health Care Services Request Forms (Staff referrals and Inmate self-referrals) be processed and triaged 7 (seven) days per week. In institutions with mental health programs, the increased amount of referrals requires additional nursing staff to evaluate the urgency of the need and to access appropriate care. The referral process is currently not standardized across institutions, and this will be an entirely new workload assigned to RN staff. In the stipulated agreement for the *Plata* court case, RNs in some institutions are using this process for medical referrals, however, the additional mental health referrals require staff as requested below.

RNs are also responsible, in some cases, for drawing blood and coordinating laboratory analyses and communication of the results to the physician. This has been an area of non-compliance in the *Coleman* corrective action plans. Additional RNs requested below will also be sufficient to complete these duties:

A future BCP will request an additional 1. 62 RN: 800 MHSDS Inmates

*Current request for RN duties at COR*
*RN 1.5 PY*

Relief Factor – LPT

Mental Health Rounds are required in the New Stand-Alone ASU 7 days per week, but the LPT position allocated was only staffed as a 1.0 position. All LPT duties require full relief. In all Mental Health Programs, it is not cost effective to utilize mental health clinicians to cover group therapy and other triage and rounds duties when LPTs are not available. The above assumption that new CCM Duties can be absorbed by current staffing in CCCMS GP and EOP, and the CCM staffing ratios for ASU and SHU, assume that the LPT current 1.0 positions will be augmented to 1.62 positions. Failure to convert these positions would require a recalculation of CCM ratios. The 1.0 LPT positions will be augmented to 1.62 only in institutions with more than 10 LPTs.

A future BCP will request to augment existing LPT 1.0 positions at institutions with more than 10 LPTs to 1. 62.

*Current Request to augment LPT positions at COR*
*LPT 12.84 positions*

A separate BCP seeks an augmentation to the nursing classifications by an additional 0.08 PY per position for Training and an increase to Sick Leave allocations, including LPT. In the event that this BCP is approved, all new LPT positions identified by this finance letter will require the same augmentation of 0.08 PY per position. These calculations are as follows:

The descriptions of new LPT duties in the sections that are divided by program above, request additional LPTs = 69.3 PY. These positions were requested with relief allocation at 1.62 PY. The number of 1.0 LPTs requested is calculated: 69.3 PY/1.62 = 42.8 PY.

If the separate BCP were accepted, an additional 0.08 (as described above) would be added to each LPT position. 42.8 x .08 = 3.42 PY additional. + 3.42 = PY additional.

Telepsychiatry appointments were never staffed with LPTs required to complete appointments. *This staffing need can be resolved by above augmented positions.*

Increased Group Therapy Requirements/ Poor compliance with current requirements. *This staffing need will be resolved by above augmented positions.*

The revised MHSDS Program Guides require that policies and procedures be implemented to all medications to be administered after 7:00 p.m. when clinically appropriate (i.e., sedating medications). This requirement, in addition to the increase in the numbers of medications distributed in the CCCMS Population require nursing staff in addition to those regularly allocated for medication administration. *This staffing need will be resolved by above augmented positions.*

00913

The revised MHSDS Program Guides require that a Health Care Staff witness be present in RC when new medications are ordered.
*This staffing need will be resolved by above augmented positions.*

Relief Factor – CCMs
When staffing was allocated in order to implement the 1997 Program Guides, all Psychologist and Psychiatric Social Worker positions were established as 1.0 PY. The staffing did not adequately account for coverage of sick and vacation time. With increased CCM duties required by the revised Program Guides, it will not be feasible for allocated staff to cover required mental health services and IDTTs when a CCM is unexpectedly absent or is on vacation.

A future BCP will request to augment the 1.0 CCM positions to 1.15 only in institutions with more than 10 CCMs.

*Current request to augment CCM positions at COR*
*Psychologist, CF 4.5 PY*
*Psychiatric Social Worker, CF 0.9 PY*

OHU – 7 day per week coverage
The revised MHSDS Program Guides require 7-day per week coverage in OHU. Additional weekend clinical staffing is requested in institutions that have a significant OHU population and no MHCB (where weekend staffing is requested above. These five (5) institutions are Avenal State Prison, California Correctional Institution, California Men's Colony – East (CMC-E), North Kern State Prison, and California State Prison - San Quentin.

A future BCP will request .62 Psychologist, CF Positions at the above 5 institutions = 3.10 PY

Mentally Disordered Offenders (MDO)/Board of Prison Terms (BPT)/Z Cases (PC 1203.03), Departmental Review Board (DRB) Placements from DMH (WIC 7301), Other legally required reports

4300 Lifer evaluations need to be conducted per year in CDC. A full time psychologist is able to complete approximately 150 evaluations per year. Currently, contract psychologists are used to complete some evaluations, and mental health staff are redirected from providing other court-ordered treatment in order to conduct these evaluations. In order to complete these evaluations without negatively impacting other treatment required by the revised MHSDS Program Guides, additional positions are required. It is estimated that approximately half of the evaluations can be conducted using existing staff.

Version 3.5
5/11/2005

Page 26 of 42

00914

A future BCP will request an additional Psychologist, CF per 300 evaluations per year

*Current request for COR MDO/BPT evaluations*
*Psychologist .56 PY*

Clerical Needs

When the Mental Health Tracking System was implemented, one Office Technician (OT) was allocated at each institution. For some institutions, this was sufficient. However, in order to complete required duties, additional OT support staff must be allocated considering the ratio of MHSDS inmates at each institution. These OTs are responsible for entering appointment and contact data, and generating the reports required to demonstrate compliance with court mandates. They are often responsible for tracking movement, new arrivals, scheduling group therapy, coordinating communications regarding 5-day (post MHCB) suicide follow-up, participating in QITs, completing staff meeting minutes, and providing administrative and clerical support to clinicians and supervisors. The revised MHSDS Program Guides now require tracking patients discharged from OHU with 5-day suicide follow up, increased group therapy scheduling in CCCMS, increased IDTT scheduling and tracking in EOP level of care, and tracking inmates who require translators an/or reasonable accommodation for disabilities.

A future BCP will request .5 Additional OT: 300 EOP level of care or 800 CCCMS level of care inmates.

*Current Request at COR*
*OT 0.75 PY*

In the revised MHSDS Program Guides, new requirements for MHCB require logs to be kept with specific data regarding patients admitted to the MHCB, and those evaluated, but not admitted. The revised MHSDS Program Guides also require the discharge report to be written, transcribed, and signed, prior to the patient leaving the MHCB. Without appropriate OT and transcription staff, CDC will not be able to comply with MHCB admission transfer timelines (Patients will be retained in needed beds pending transcription of a discharge report). These transcription duties will either require full time availability of medical transcription staff, or hiring contract medical transcribers. *This OT staffing need will be resolved by above requested positions.*

A future BCP will request additional 1.0 Medical Transcriber, or equivalent funding for contract medical transcription service where recruitment and retention is not feasible – A future BCP will request one additional Medical Transcriber per institution with a MHCB.

*Current request for COR medical transcriptions*
*Medical Transcriber 1.0 PY*

Supervision of these additional clerical staff is required at a ratio of 1: 10.
Request additional Office Services Supervisor II (OSS II) Positions = 6.0 PY additional

*Current request for COR Clerical Supervision*
*OSS II*

Pharmacy
Pharmacy needs are included in a separate BCP.

Medical Records
A Medical Records study is included in a separate BCP. Medical records duties that will increase related to the revised MHSDS Programs Guide include tracking and filing of requests for outside medical records, filing additional group therapy monthly notes and weekly rounds notes, as well as increased filing of quarterly review documentation and IDTT notes. At this time, 2-year limited term positions are requested for these additional duties until the results of the Medical Records study can be used to determine databased staffing levels.

A future BCP will request .5 Office Assistant per 300 EOP or 800 CCCMS.

*Current Request for COR Medical Records*
*Office Assistant 0.75 PY- 2 year limited term*

Institution Level Supervision
The revised MHSDS Program Guides require that a supervisor review all MHCB discharge treatment plans to audit implementation. This requires accessing Unit Health Records and reviewing care provided.

A future BCP will request an additional .25 Sr. Psychologist, Supervisor: 300 EOP Inmates or 800 CCCMS Inmates to review MHCB discharge treatment plans.

Supervision of clinical staff:
Supervisors are responsible for overall work quality, participation in the quality management system, chart audits, performance evaluations, and ensuring that the new requirements for treatment planning and local operating procedures are implemented. In institutions with a significant mental health mission, first line supervisors are responsible for functional supervision of the operation of a mental health program, which may include psychologists, psychiatrists, licensed psychiatric technicians and nurses. At smaller institutions, the mental health supervisor is responsible for all mental health operations at the facility. For this reason, mental health managers recommend that first line supervisors remain responsible for **direct** supervision of a maximum of 10 clinicians.

A future BCP will request a total ratio of 1.0 Sr. Psychologist or 1.0 Sr. Psychiatric Social Worker: 10.0 Clinicians

Although currently, LCSWs are generally supervised by Sr. Psychologists, it is fiscally prudent, and clinically appropriate to allocate Supervising Psychiatric Social Worker (SPSW) positions for these additional supervisory needs. SPSW's may serve as

00916

functional program supervisors for mental health clinicians of any classification. Direct/clinical supervision may be provided by Supervising Psychologists and Psychiatrists for duties related to the clinician's scope of practice that cannot be assigned to a SPSW.

*Current request for Supervision of CCM at COR*
*Senior Psychiatric Social Worker 1.79 PY*

Supervision of nursing staff:
Experienced supervisors recommend that first line supervisors be responsible for direct supervision of no more than seven (7) mental health nursing staff.

Currently, 246.96 LPTs are supervised by 26.7 Supervising Registered Nurse I (SRN I) staff members and two (2) Sr. LPTs. This finance letter requests an additional 69.3 LPTs plus 153.74 PY allocated for relief over a two year period. The total number of LPTs will be 470. The total number of Supervisors required for a 1 Supervisor: 10 LPT ratio at institutions with more than 10 LPTs = 33.

33 recommended supervisors – 2 (current Sr. LPT supervisors) = 31 Supervisors
The Sr. LPT classification has not been regularly used to supervise LPTs, but is recommended to ensure appropriate supervision relative to scope of practice (i.e., group therapy duties).

A future BCP will request a total ratio of 1.0 Sr. LPT: 10.0 LPT (at institutions with more than 10 LPTs).

*This finance letter requests upgrading of 4.0 LPTs to Sr. LPT positions in FY 2005-2006. Net positions requested = 0*

Additional SRNI positions are required to supervise requested RN positions. Currently, 164.91 RNs are allocated to mental health programs. 26.7 SRN I's supervise the RN staff. 106.05 are requested in this finance letter. A total of 270.96 RNs will require a total of 27 SRN I Supervisors.

*Currently allocated SRN I positions at COR are sufficient to meet this need.*

### RC Screening and Diagnostic Clarification

The Millon Clinical Multiaxial Inventory – III (MCMI-III) test can be administered in approximately 30 minutes, either individually or in a group setting. Research indicates that this test is a valid and reliable diagnostic tool to assist in to objectively triaging patients for immediate mental health needs, determining mental health diagnosis, as well as predicting future need for mental health intervention. This test may also be used to predict reaction to authority, escape risk, sexual predation/victimization, disposition to malinger, response to crowding/isolation, suicidal tendencies, and amenability to treatment (See Attachment D: Retlzaff, P., Stoner, J., and Kleinsasser, The Use of the

MCMI-III in the Screening and Triage of Offenders, *International Journal of Offender Therapy and Comparative Criminology, 46, 3, 319-332).*

The use of this test, along with a standard computer generated report of results, is proposed for use at RC, for all newly arriving inmates who have a positive mental health screening indicator (approximately 20,000 inmates per year). A more rigorous interpretation/analysis of results is proposed for use with current inmate-patients at EOP level of care, when diagnostic clarification is needed (approximately 3,000 per year). See Attachment E for sample report.

**The use of this instrument is expected to reduce overall mental health program cost.** Data generated from the standard use of the MCMI-III at reception centers will be used to determine appropriate mental health level of care, thereby reducing inappropriate placements into mental health programs. Use of the MCMI-III at EOP level of care will significantly reduce the use of costly DMH beds for diagnostic clarification.

A future BCP will request $443,967 in FY 2006-2007 and $402,500 ongoing annual funding for implementation of a valid and reliable test to predict mental health needs of inmates arriving in RC and to aid diagnostic clarification in EOP level of care (See Attachment F). In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

Workload Study
Because the designs of ASU and SHU differ in CDC institutions, the space for group therapy required by the revised MHSDS Program Guides required further assessment. In addition, the workload for mental health staff is likely to be affected by revised requirements offset by the allocation of staff requested in this and future budget change proposals.

A future one time funding totaling $500,000 (subtract $15,152 in current request) will be requested for a contractor to conduct a workload and treatment space survey statewide including:
- Treatment space availability in each institution that provides CCCMS level of care in ASU/SHU. Final recommendations regarding provision of group therapy is ASU/SHU with the most efficient use of staff time.
- Mental health workload and staffing survey to determine ways efficiency of staff time can be improved. Collection of workload data to determine any additional positions required for full implementation of the MHSDS program guides.

*Current Request is for $15,152 for a workload and space study at COR.*

Performance Evaluation and Court Case Compliance
The Quality Management System is required, by the *Coleman* and *Plata* court cases, in order to provide adequate performance management and to ensure compliance with mental health policies and procedures. Quality Management requirements specific to mental health involve identification of problems in delivery of mental health services,

00918

establishment of Quality Improvement Teams, tracking progress of Quality Improvement Teams, conducting Suicide Prevention Focused Improvement Team meetings (including development and implementation of corrective action plans when a suicide occurs), conducting Mental Health Subcommittee meetings, and facilitating an overall data-based approach to bed utilization. All meetings require documentation, which is sent to other Quality Management Committees at the institution and at headquarters. Although an analyst has been designated at some institutions for the purpose of health care quality management, a dedicated Health Program Specialist I (HPS I) for mental health quality management is required to ensure that these important duties are completed as required. This position will also be responsible for oversight of tracking reasonable accommodation offered to MHSDS inmates who are part of the class action *Armstrong* court case. Each HPS I require clerical support in order to complete duties associated with taking meeting minutes, copying, tracking, filing, and communications.

A future BCP will request 1.0 dedicated HPS I at each institution with a significant mental health mission and 1.0 Mental Health Quality Management dedicated OT at each institution with a significant mental health mission.

<u>HCSD – Coordination, Supervision, and Policy Implementation</u>

MHSDS Program Guides Implementation and Suicide Prevention Coordination:
The revised MHSDS Program Guides contain policies and procedures, which continue to require resource analysis, resource allocation, training and implementation, review and revision.

HCSD Suicide Review duties as described below, will be assigned to Quality Management Oversite Sr. Psychologist, Specialists. Integration of Quality Improvement Plans into systemwide suicide prevention policies, procedures, and training, requires a separate personnel function, which will be assigned to the Senior Psychologist, Supervisor requested below. These duties require a full time Senior Psychologist, Specialist, to synthesize requirements of the *Coleman* court case and other policies and laws that affect the Program Guides.

A future BCP will request an additional 1.0 Sr. Psychologist, Specialist for HCSD.

<u>HCSD Quality Management Over-site</u>

Overview of HCSD Mental Health Manager Responsibilities:

**The Chief of Mental Health (Currently Chief Psychiatrist) Duties**
The Chief of Mental Health/ Chief Psychiatrist at HCSD maintains overall responsibility for:

- Supervision of Psychiatrists hired to provide services by tele-psychiatry
- Representation of the Department on issues regarding the MDO Act/ Penal Code (PC) 2962

- Review and approval of MDO (PC 2962) reports
- Consultation and communication with professional organizations, public officials, department staff, and community groups regarding all phases of CDC mental health programs
- Liaison with the mental health profession and allied groups, provider organizations, and other public and private agencies
- Mental health policy and standards development
- Mental health program strategic planning
- Mental health bed utilization
- Patient access to care
- Mental health services performance evaluation and quality management
- Suicide prevention and response program
- Review of suicides and corrective action
- Substance abuse treatment programs
- Mental health staff recruitment
- Mental health training for all CDC staff
- Resource (staff and equipment) allocation
- Compliance with laws and court mandates related to mental health
- Compliance with laws and court mandates related to developmental disabilities
- Compliance with and development of memoranda of understanding with other agencies (i.e., DMH)
- Supervision of the transfer of inmates to the DMH pursuant to appropriate Penal Code sections
- Coordinated Clinical Assessment Team/ Case Conference (Provide case review and clinical guidance regarding difficult patient cases)
- Coordination with Parole Services
- Coordination with Institutions Division/ Custody Related Issues
- Coordination with Inmate Medical Services
- Coordination of the HCSD forensic assessment unit
- Development and implementation of mental health policy
- Coordination of Long term planning
- Supervision of mental health staff working at HCSD
- Participation in Union Negotiations
- Presentation to professional groups, lay groups, and legislative committees

### E. Chief Psychologist Duties

The Chief Psychologist at HCSD serves as backup for all duties of the Chief of Mental Health, and may be assigned duties related to any of the above tasks (except supervision of psychiatrists and approval of PC 2962 reports). The Chief Psychologist is additionally responsible for coordination of psychology internship programs in CDC institutions.

In order to fully implement HCSD's Quality Management mission, it is necessary to assign additional Senior Psychologists (Specialists and Supervisors) to provide oversight of *Coleman* compliance in the institutions. *Coleman* court mandates require coordinated over-site of the implementation of and compliance with mental health policies and

procedures, and CDC has not been successful in meeting these court mandates. The *Plata* court case also requires headquarters staff to facilitate implementation of medical policies and procedures. The staff structure suggested below is based on the new Inmate Medical Services Quality Management Assistance Teams. Providing this increased level of assistance to the CDC institutions in monitoring compliance with mental health policies and procedures is the only way to become compliant with *Coleman* court mandates.

In addition to general Quality Management requirements, specific requirements are included in the revised MHSDS Program Guides regarding Suicide Death Review:

- When a suicide occurs, within two (2) business days of receipt of the death review folder, the HCSD Suicide Prevention and Response Focused Improvement Team (SPR FIT) Coordinator shall appoint a Mental Health Suicide Reviewer (MHSR) from a pool of qualified mental health staff at HCSD, or regionally from an institution other than where the suicide occurred.

- Within one week, seven (7) calendar days, of being appointed, the MHSR shall begin reviewing the suicide case for compliance with the CDC SPR FIT policies and procedures. The MHSR shall also review all related documentation including the Unit Health Record; Central File; Inmate Death Reports, CDC 7229 A and B; Crime/Incident Report, CDC 837 A and B; and any other appropriate documentation. The MHSR shall have access to the inmate's cell, visiting log, recorded telephone conversations, and other information as required. The institution's SPR FIT Coordinator may assist the MHSR in his or her efforts. The assistance may include making available the Unit Health Record, the Central File, and any other appropriate information as well as arranging interviews if required. The MHSR may conduct interviews with clinical staff, custody staff, and inmates. However, should there be any indication an employee misconduct investigation may be warranted, the MHSR shall immediately consult with the HCSD SPR FIT Coordinator, who shall provide guidance in proceeding with the review. Generally, the MHSR shall discontinue interviews with any employees who may be associated with or implicated in the employee misconduct investigation, but shall continue with all other aspects of the suicide review process.

- In cases where there are concerns with clinical care, the case shall be referred to the local Clinical Performance Enhancement and Review Subcommittee (CPER).

- Within thirty (30) calendar days of the inmate suicide, the MHSR shall complete a preliminary Suicide Report containing the following information: inmate name, CDC number, age, date and time of discovery, time of death, institution, housing, mental health level of care (if applicable), method, cause of death, findings of coroner (if available), brief summary and preliminary findings including recommendations for quality improvement. The report shall also indicate whether further investigation/inquiry is recommended (if one has not already been initiated). This report shall be immediately forwarded to the HCSD SPR FIT Coordinator who will then schedule discussion of the report at the HCSD Emergency Response and Death

Review (ERDR) Subcommittee. The MHSR will present the case to the ERDR Subcommittee.

- The HCSD ERDR Subcommittee is the body that reviews the documentation and reports submitted by the institution and MHSR, determines compliance with the statewide SPR FIT policies and procedures, reviews the quality improvement (a.k.a. corrective action) plans (QIP), and continues its review, in collaboration with the HCSD MHP Subcommittee, until the QIPs are completed and the cases are closed.

- Within forty-five (45) days from the date of death, the HCSD ERDR Subcommittee shall complete its review of the preliminary suicide report; review the QIP on the preliminary suicide report, and forward the report to the MHSR for completion of the Suicide Report and the accompanying Executive Summary.

When warranted, the MHSR shall recommend a quality improvement (a.k.a. corrective action) plan (QIP), based on the findings from the review of the case, which shall address and make recommendations to improve identified problems with clinical care and compliance with policy and procedure. The QIP shall address problems identified, recommended actions, due dates for recommended actions, and supporting documents required from the institution.

The HCSD ERDR Subcommittee shall review the QIP and may take the following actions:

- Ensure consistency with policy and procedure
- Recommend remedial action, documentation, and monitoring
- Refer for further action in accordance with DOM Chapter 3, Article 14, Employee Misconduct Investigations/Inquiries, when appropriate
- Report to the appropriate professional licensing board for investigation, when appropriate

When approved by the HCSD ERDR Subcommittee, the Suicide Report shall be signed by the Deputy Director, HCSD, or designee.

The Suicide Report by the MHSR shall incorporate the QIP approved by the HCSD ERDR Subcommittee. The HCSD SPR FIT Coordinator shall include with this report the Inmate Death Reports CDC 7229 A and B, Crime/Incident Report CDC 837 A and B, Movement History and Offense History, and the Executive Summary serving as the cover page to complete the Final Suicide Report. The report shall then be forwarded to the Director, CDC, or designee, with copies to: Secretary, Youth and Adult Correctional Agency; Deputy Directors Institutions Division and HCSD; Regional Administrator, HCSD and Institutions Division; Legal Affairs Division; and to the reporting institution's: Warden; Health Care Manager/Chief Medical Officer (HCM/CMO); Mental Health Program Manager, Chief/Senior Psychiatrist and Chief/Senior Psychologist; and, other appropriate interested and legally designated persons within 60 days of date of death.

00922

The Warden and HCM/CMO are responsible for ensuring the implementation of the QIP within the specified time frame, which is not greater than sixty (60) days of receipt of the finalized Executive Summary of the Suicide Report with signature approval from the Deputy Director, HCSD (120 days following the date of death).

The QIP shall be monitored by the Warden, HCM/CMO, Mental Health Program Manager, Chief Psychiatrist, Chief Psychologist, and SPR FIT Coordinator at the institution of occurrence. HCSD may require ongoing documentation of compliance.

The Local SPR FIT Coordinator shall prepare a follow up report of implementation addressing action taken on the recommendations of the QIP. All appropriate supporting documentation confirming that these actions have been taken shall be attached to this report. See table below for list of suggested supporting documentation. The Warden and HCM/CMO, or institution Mental Health Program Manager shall sign this report. The institution shall retain a copy of the report and forward the original to the HCSD ERDR for review. The report is due within thirty (30) days following the implementation of the QIP (90 days following receipt of the Executive Suicide Report). Additional follow up monitoring shall occur as necessary as dictated in the QIP.

**Action, Documentation, & Monitoring for Suicide Quality Improvement Plans**

| ACTION | DOCUMENTATION/MONITORING |
|---|---|
| Training | Copy of training agenda and sign-in sheet |
| Required appointments with clinicians are held | List of appointments from Mental Health Tracking System |
| Changes in operating procedure | Copy of procedure or memos |
| Develop Quality Improvement Team | Copy of recommendations or change in procedures |
| Missing medication due to transfer to a different housing unit | Ongoing monitoring of Medication Administration Records in the Unit Health Record (UHR) Provide sample audit |
| Proper Documentation | Provide plan to audit UHR and a sample audit |
| Five Day Follow-up of suicidal inmates released from MHCB | Audit of documentation in UHR; provide a sample audit |
| Rounds and evaluations done in ASU by psychiatric technicians | Audit UHR, CDC 114 Isolation log and CDC 114-A, Daily Log; provide sample audit |
| Inmates on Keyhea are identified | Review UHR |
| Conduct suicide risk assessment | Review UHR |
| Statewide policy issues | Review new policy |
| Investigation of individual practitioners | Provide status or completion date of investigation |



| Audit of records per specified length of time to be sure that quality improvement is being consistently followed | Periodic reports of audit findings to HCSD SPR FIT and HCSD MHP |

The HCSD ERDR Subcommittee shall continue to review all open suicide cases until the QIP is approved and each case is closed. The QIP shall be incorporated into the final Suicide Report. All decisions made by the HCSD SPR FIT regarding compliance and quality improvement shall be documented in the final Suicide Report.

The Follow-Up Report on implementation of the QIP shall be reviewed by the HCSD SPR FIT Coordinator, and distributed according to legal mandates.

If, during the suicide review process, other death related information arrives, such as CDC Form 837 C, CDC Form 7229 C, or Coroner's report, the DNC will locate the death review folder and place these documents inside. The DNC shall update the routing sheet and notify the SPR FIT Coordinator of the new information. Upon completion of the suicide review, the death review folder containing the Suicide Report and other related information shall be returned to the DNC for final data entry. The DNC shall ensure that all documentation is complete and then return the folder for final storage in a designated locked cabinet at HCSD.

The HCSD SPR FIT Coordinator appointed to oversee suicide-related activities shall coordinate analysis and review of each suicide, and compile and forward annual suicide statistics to: Secretary, Youth and Adult Correctional Agency; Director, CDC; Deputy Director, HCSD; Assistant Deputy Director, HCSD; Chief of Clinical Policies and Programs, HCSD; Institution Wardens; Institution HCM/CMOs; and, other appropriate senior HCSD staff.

Duties of Requested Staff

The staff requested below will complete the above suicide prevention and review duties, field questions and provide guidance to the field, identify and analyze problem areas in program compliance, conduct quality management assistance visits, and review Mental Health Tracking System reports from each institution, providing analysis and recommendations to the Mental Health Subcommittee and to HCSD management staff.

At present, three such positions exist at HCSD to oversee 32 institutions. We are requesting three (3) additional positions so that the Sr. Psychologists may be assigned to a ratio of one psychologist for approximately each five (5) institutions. In addition, in accordance with the structure of the Inmate Medical Services Quality Management Assistant Teams, one HPS I and one OT are requested for each of three CDC regions.

**Senior Psychologist, Specialist Duties**

The Senior Psychologists are currently assigned responsibility for monitoring mental health quality at assigned institutions. Time estimates, based on a time study by current staff, for assignment to five institutions are listed below:

**Quality Management/Performance Review/Court case compliance**
- Maintaining a quality improvement plan for each institution (3 hours/week)
- Monitoring progress toward meeting *Coleman* court corrective action plans for each institution (10 hours/week)
- Attendance at *Coleman* Exit Conferences (30 minutes/week)
- Responding to Plaintiff letters regarding concern about specific inmates (1 hour/week)
- Generating Mental Health Tracking System reports to provide data-based evidence of quality improvement (5 hours/ week)
- Presenting information related to Quality Management at weekly Mental Health Subcommittee meetings (3 hours/week)
- Generating solutions to areas of non-compliance/Participation in development of policies and local operating procedures ( 5 hours/week)
- Site visits to institutions/Assistance in meeting court mandates (Variable 1-2 days per week)

Suicide Review (Variable/ Average 8 hours per week)
- Review suicides (requires site visits)
- Generate corrective action plans related to suicides
- Follow-up on corrective action plans
- Provide information for a data-base related to suicides
- Analyze data related to suicides
- Generate yearly and multi-year reports summarizing data analysis
- Coordinate suicide prevention (including monthly teleconference, focused improvement teams, court recommendations, etc.).

**Total Time required for monitoring five (5) institutions, on average, exceeds 40 hours per week.**

One Senior Psychologist, Specialist is assigned half-time to coordinate mental health training of COs, including revision of training to include new policy.

In addition, Senior Psychologist, Specialists may be assigned projects related to many of the responsibilities of the Chief Psychiatrist.

00925

**HPS I Duties**:

Each HPS I will be responsible for 10 institutions:

- Receipt, tracking, compiling and data base management for Quality Management data from each institution (10 hours/week)
- Communication related to Coordinated Clinical Assessment Team and DMH Referrals (2 hours/week)
- Maintain Suicide Data Base (2 hours/week)
- Follow up related to documentation of corrective action plan compliance (2 hours/week)
- Liaison with *Coleman* parties (3 hours/week)
- Attend and record *Coleman* Exit Conferences (2 hours/week)
- Document and track response to *Coleman* plaintiff concerns regarding specific inmates (2 hours/week)
- Mental Health Program Support – Response to questions from institutions regarding policies, procedures, contact information (2 hours/week)
- HCSD Mental Health Subcommittee (3 hours/week)
- Monitoring ASU Rounds compliance (2 hours/week)
- Fieldwork to assist troubled institutions (8 hours/week)

In addition, each HPS I may be assigned permanent duties, long term projects, or short-term projects including:

- Institution Staffing prevalence mix (32 hours/month + 24 hours quarterly)
- Population Projection (15 hours quarterly)
- Monthly report to *Coleman* Monitors regarding staffing (16 hours/month)
- Special Projects related to Chief of Mental Health duties (Variable)

**OT Duties per 10 institutions**

Staff meeting agenda and minutes (4 hours/week)
Quality Management meeting agendas and minutes (6 hours/week)
Memorandum preparation/editing (4 hours/ week)
Memorandum tracking (4 hours/ week)
Data entry (4 hours/ week)
Mail processing (in and out) (4 hours/ week)
Copying (4 hours/ week)
Filing (4 hours/ week)
Faxing (3 hours/ week)
Phone management/Communications (6 hours/ week)
Updating institution contact lists (1 hour/ week)
Travel plan preparation (2 hours/ week)
Submission of accounting documentation (2 hours/ week)
Hiring/ Interview support (2 hours/ week)

00926

A future BCP will request a total ratio of
1.0 Sr. Psychologist Specialists: 5 Institutions (subtract 3.0 current positions) = 3.0 PY
1.0 HPS I: Region = 3.0 PY
1.0 OT: Region = 3.0 PY

Three (3) Sr. Psychiatrists will each be assigned approximately 10 institutions to provide oversight of Mental Health Forensic Field Consultation Services including court required BPT Reports and MDO Reports.

A future BCP will request 3.0 Sr. Psychiatrist, Specialist = 3.0 PY

Equipment and Supplies
A one-time cost for supplies is required to implement the revised MHSDS Program Guides at COR. A future BCP will request equipment for all institutions (see chart on page 4).

## F. Analysis of All Feasible Alternatives

**Alternative A:** Implement the revised MHSDS Program Guides at all institutions beginning July 2005 (see Alternative A staffing summary – Attachment A):

a.  Establish 526.0 permanent field positions and 21.2 limited term field positions in FY 2005-06 and 296.1 permanent field positions in FY 2006-07
b.  Establish 13.0 permanent central office staff positions
c.  One time funding totaling $728,862 for equipment (computers, copiers, shredders, fax machines, dictation equipment, golf carts and televisions).
d.  On going funding totaling $50,000 for printing and distribution of new forms.
e.  One time funding totaling $56,000 for group therapy materials and equipment.
f.  One time funding totaling $307,872 for inmate treatment cells.
g.  One time funding totaling $500,000 (allocated July 2005) for a contractor to conduct a workload and treatment space survey including:
    i.  Treatment space availability in each institution that provides CCCMS level of care in ASU/SHU. Final recommendations regarding provision of group therapy is ASU/SHU with the most efficient use of staff time.
    ii. Mental health workload and staffing survey to determine ways efficiency of staff time can be improved. Collection of workload data to justify positions for group therapy in ASU/SHU and any additional positions required to fully implement the MHSDS program guides.
h.  One time funding totaling $443,967, and ongoing funding totaling $402,500 for use of the MCMI-III psychological testing and diagnostic clarification system. In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

00927

**Pros**: This alternative would provide compliance with policies and procedures contained in the revised MHSDS program guides, which were negotiated with all parties in the *Coleman v. Schwarzenegger* court case. This is the most likely alternative to lead to final exit of the *Coleman* case and reduction of legal costs associated with this case within the next two years. This alternative is consistent with the mission of Youth and Adult Corrections Agency "to take responsibility and accountability for the rehabilitation of offenders" and to "provide training, counseling, and support" services.

**Cons**: This alternative requires significant resource allocation during two fiscal years to fund positions and equipment to implement the revised MHSDS Program Guides. The MHSDS Program Guides have not received final court approval, and requirements may change.

**Alternative B:** Implement the revised MHSDS Program Guides in the following three phases:

Phase One and Two - Allocate *50%* of positions requested for implementation in 2005/2006 and 2006/2007 (100% of headquarters and limited term staff) in order to reduce cost and provide partial compliance with revised mental health policies and procedures (see Alternative B staffing summary – Attachment B):

a. Establish 256.65 permanent field positions, 13.0 permanent Central Office Staff positions, and 21.2 limited term field positions for a total of 290.85 positions in FY 2005-06 and 261.0 in FY 2006-07.
b. In FY 2005-06 one time funding totaling $728,862 for equipment (computers, shredder, fax machine, dictation equipment, golf carts).
c. Starting in FY 2005-06, on going funding totaling $50,000 for printing and distribution of new forms.
d. In FY 2005-06, one time funding totaling $56,000 for group therapy materials and equipment.
e. In FY 2005-06, one time funding totaling $307,872 for inmate treatment cells.
f. In FY 2005-06, one time funding totaling $500,000 (allocated July 2005) for a contractor to conduct a workload and treatment space survey including:
   i. Treatment space availability in each institution that provides CCCMS level of care in ASU/SHU. Final recommendations regarding provision of group therapy is ASU/SHU with the most efficient use of staff time.
   ii. Mental health workload and staffing survey to determine ways efficiency of staff time can be improved. Collection of workload data to justify positions for group therapy in ASU/SHU and any additional positions required to fully implement the MHSDS program guides.
8) In FY 2005-06, one time funding totaling $443,967, and ongoing funding totaling $402,500 for use of the MCMI-III psychological testing and diagnostic clarification system. In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

00928

Phase Three –Allocate resources as indicated by the above requested space survey and staffing survey.

**Pros:** This alternative would provide partial compliance with policies and procedures contained in the revised MHSDS Program Guides. The requested study would provide specific information regarding space needs for implementing group therapy in CCCMS ASU and SHU, and recommendations regarding improving staff efficiency. This alternative reduces the resources used for MHSDS Program Guide implementation in 2005-2006 and 2006-2007. Fiscal impact is spread over additional years.

**Cons:** This alternative would need to be negotiated with all parties in the *Coleman* court case. The court may not approve the delay in implementation of group therapy in CCCMS and SHU, and may issue a Court Order to implement all policies and procedures in the revised MHSDS program guides. If this alternative is approved by the courts, this strategy is likely to lead to exit from the *Coleman* court case in five (5) years, rather than two (2). Costs associated with litigation in this case do not contribute to the YACA mission. The outcome of the space and staffing survey is likely to recommend allocation of additional staff which would need to be requested in future BCPs.

**Alternative C:** Implement requirements of the revised MHSDS Program Guides without requested resources

**Pros:** Requires no funding

**Cons:** Failure to implement the revised MHSDS Program Guides with requested resources will lead to increased litigation costs and is likely to lead to a Court Order which may be more costly than the current proposal. Failure to provide constitutionally adequate mental health treatment may harm inmates and is a violation of inmate's rights under the Eighth and Fourteenth Amendments of the United States Constitution prohibiting cruel and unusual punishment. This alternative is not consistent with the Youth and Adult Corrections Agency mission.

**Alternative D:** Implement requirements of the revised MHSDS Program Guides in ASU and SHU at COR as requested above beginning July 2005.

a.    Establish 51.25 permanent positions for the Mental Health program at COR.
b.    Resources totaling $18,425 for equipment to support the Mental Health Program at COR.
c.    Resources totaling $15,152 for a workload and space survey.

*As stated earlier, this Finance Letter should have also included the following Custody component, which will be requested in a future BCP:*

Pros: Meets requirement of current March 7, 2005 court order from Judge Karlton (Attachment G) which requires the State of California to "include in the FY 2005-2006 budget a request for sufficient clinical staff at COR to provide the mental health services

required in the revised program guides for MHSDS caseload inmates in the administrative segregation unit and the SHU at said institution.." This alternative allocates appropriate resources in order to implement the revised MHSDS Program Guides at COR. Provides a model for future implementation of revised MHSDS Program Guides once the document receives final court approval.

Cons: Failure to implement the revised MHSDS Program Guides at all institutions in FY 2005-2006 may lead to increased litigation costs and/or a Court Order, which may be more costly than the current proposal.

## G. Timetable
Resource augmentations are requested for implementation effective July1, 2005

## H. Recommendation
The Youth and Adult Corrections Agency mission "to take responsibility and accountability for the rehabilitation of offenders" and to "provide training, counseling, and support" services is consistent with the revisions in the MHSDS Program Guides. Based on the current recommendations from Legal Affairs Division, the best strategy to exit the *Coleman v. Schwarzenegger* court case is to fully implement the revised MHSDS Program Guides. However, due to the fact that the MHSDS Program Guides have not received final court approval, it is therefore recommended that Alternative D be implemented by July 2005.

California Department of Corrections
Health Care Services Division
Mental Health Program Guide Finance Letter Fiscal Year 2005/06

| Staffing Request Summary | 2005/06 Staffing | 2006/07 Staffing |
|---|---|---|
| **CCCMS GP** | | |
| Psychiatric Technician | 20.8 | |
| Recreation Therapists | 16.3 | |
| | | |
| **GP EOP** | | |
| Psychiatric Technician | 12.2 | |
| | | |
| **AdSeg EOP (Stand Alone)** | | |
| Psychiatric Social Worker | 5.0 | |
| | | |
| **AdSeg CCCMS** | | |
| Psychologist | 25.8 | |
| Psychiatric Social Worker | 12.9 | |
| Staff Psychiatrist | | 15.5 |
| Psychiatric Technician | 25.0 | |
| Recreational Therapist | | 32.9 |
| Correctional Officer for ASU & SHU (Individual Therapy) | 12.7 | |
| Correctional Officer for ASU & SHU (Group Therapy) | 10.3 | 11.8 |
| Correctional Counselor I | 9.7 | |
| | | |
| **Security Housing Unit (SHU)** | | |
| Psychologist | 7.0 | |
| Psychiatric Social Worker | 4.0 | |
| Staff Psychiatrist | 5.5 | |
| Psychiatric Technician | 4.9 | |
| | | |
| **Group Therapy SHU** | | |
| Psychiatric Technician | 2.4 | |
| Recreation Therapist | 4.6 | |
| | | |
| **AdSeg EOP Hubs** | | |
| Registered Nurse | 16.2 | |
| Recreational Therapist | 11.5 | |
| Staff Psychiatrist | 2.5 | |
| | | |
| **Reception Center** | | |
| Psychologist | 32.6 | |
| Psychiatric Social Worker | 16.3 | |
| Staff Psychiatrist | 2.3 | |
| Registered Nurse | 9.0 | |
| Correctional Counselor I | 9.1 | |
| | | |
| **Mental Health Crisis Beds** | | |
| Psychologist | 15.5 | |
| Staff Psychiatrist | 3.1 | |
| Correctional Counselor I | 3.5 | |
| Correctional Sergeant | 5.0 | 9.0 |
| | | |
| **Rules Violation Report** | | |
| Psychologist | 12.4 | |

### Nursing

| | | |
|---|---|---|
| Registered Nurse | | 57.4 |

### Relief

| | | |
|---|---|---|
| Psychiatric Technicians | 76.9 | 76.9 |
| Psychologist | | 58.2 |
| Psychiatric Social Worker | | 21.1 |

### OHU

| | | |
|---|---|---|
| Psychologist (OHU 7 day per week coverage) | 3.1 | |

### MDO/BPT/Z Cases/DRB Placements

| | | |
|---|---|---|
| Psychologist | 14.4 | |

### Clerical

| | | |
|---|---|---|
| OT  Clerical Needs | 21.2 | |
| Medical Transcriber | 17.0 | |
| OSS II | 6.0 | |
| Office Assistant - Limited Term (Medical Records) | 21.2 | |

### Institution Level Supervision

| | | |
|---|---|---|
| Sr. Psychologist, Supervisor | 5.3 | 5.3 |
| Sr. Psychiatric Social Worker | 8.0 | 8.0 |
| Psychiatric Technician | -31.0 | |
| Sr. Psychiatric Technician | 31.0 | |

### Performance Evaluation and Court Compliance

| | | |
|---|---|---|
| HPS I | 28.0 | |
| OT | 28.0 | |

### HCSD

| | | |
|---|---|---|
| Sr. Psychologist Specialist (Program Guide Implementation & Suicide Prevention) | 1.0 | |
| Sr. Psychologist Specialist (Institution Oversight) | 3.0 | |
| Health Program Specialist I (1 per region) | 3.0 | |
| OT (1 per region) | 3.0 | |
| Sr. Psychiatrist, Specialist | 3.0 | |
| **Total Request** | **560.2** | **296.1** |

Feasible Alternative "B"
California Department of Corrections
Health Care Services Division
Mental Health Program Guide Finance Letter Fiscal Year 2005/06

| Staffing Request Summary | 2005/06Staffing | 2006/07 Staffing | 2007/08 Staffing |
|---|---|---|---|
| **CCCMS GP** | | | |
| Psychiatric Technician | 10.4 | 10.4 | |
| Recreation Therapists | 8.2 | 8.2 | |
| | | | |
| **GP EOP** | | | |
| Psychiatric Technician | 6.1 | 6.1 | |
| | | | |
| **AdSeg EOP (Stand Alone)** | | | |
| Psychiatric Social Worker | 2.5 | 2.5 | |
| | | | |
| **AdSeg CCCMS** | | | |
| Psychologist | 12.9 | 12.9 | |
| Psychiatric Social Worker | 6.5 | 6.5 | |
| Staff Psychiatrist | | | 15.5 |
| Psychiatric Technician | 12.5 | 12.5 | |
| Recreational Therapist | | | 32.9 |
| Correctional Officer for ASU & SHU (Individual Therapy) | 6.4 | 6.4 | |
| Correctional Officer for ASU & SHU (Group Therapy) | 5.2 | 5.2 | 11.8 |
| Correctional Counselor I | 4.9 | 4.9 | |
| | | | |
| **Security Housing Unit (SHU)** | | | |
| Psychologist | 3.5 | 3.5 | |
| Psychiatric Social Worker | 2.0 | 2.0 | |
| Staff Psychiatrist | 2.8 | 2.8 | |
| Psychiatric Technician | 2.5 | 2.5 | |
| | | | |
| **Group Therapy SHU** | | | |
| Psychiatric Technician | 1.2 | 1.2 | |
| Recreation Therapist | 2.3 | 2.3 | |
| | | | |
| **AdSeg EOP Hubs** | | | |
| Registered Nurse | 8.1 | 8.1 | |
| Recreational Therapist | 5.8 | 5.8 | |
| Staff Psychiatrist | 1.3 | 1.3 | |
| | | | |
| **Reception Center** | | | |
| Psychologist | 16.3 | 16.3 | |
| Psychiatric Social Worker | 8.2 | 8.2 | |
| Staff Psychiatrist | 1.2 | 1.2 | |
| Registered Nurse | 4.5 | 4.5 | |
| Correctional Counselor I | 4.6 | 4.6 | |
| | | | |
| **Mental Health Crisis Beds** | | | |
| Psychologist | 7.8 | 7.8 | |
| Staff Psychiatrist | 1.6 | 1.6 | |
| Correctional Counselor I | 1.8 | 1.8 | |
| Correctional Sergeant | 3.0 | 2.0 | 9.0 |

*Rules Violation Report*

| | | | |
|---|---|---|---|
| Psychologist | 6.2 | 6.2 | |

*Nursing*

| | | | |
|---|---|---|---|
| Registered Nurse | | | 57.4 |

*Relief*

| | | | |
|---|---|---|---|
| Psychiatric Technicians | 38.5 | 38.5 | 76.9 |
| Psychologist | | | 58.2 |
| Psychiatric Social Worker | | | 21.1 |

*OHU*

| | | | |
|---|---|---|---|
| Psychologist (OHU 7 day per week coverage) | 3.1 | | |

*MDO/BPT/Z Cases/DRB Placements*

| | | | |
|---|---|---|---|
| Psychologist | 7.2 | 7.2 | |

*Clerical*

| | | | |
|---|---|---|---|
| OT  Clerical Needs | 10.6 | 10.6 | |
| Medical Transcriber | 8.5 | 8.5 | |
| OSS II | 3.0 | 3.0 | |
| Office Assistant - Limited Term (Medical Records) | 21.2 | | |

*Institution Level Supervision*

| | | | |
|---|---|---|---|
| Sr. Psychologist, Supervisor | 2.7 | 2.7 | 5.3 |
| Sr. Psychiatric Social Worker | 4.0 | 4.0 | 8.0 |
| Psychiatric Technician | -16.0 | -15.0 | |
| Sr. Psychiatric Technician | 16.0 | 15.0 | |

*Performance Evaluation and Court Compliance*

| | | | |
|---|---|---|---|
| HPS I | 14.0 | 14.0 | |
| OT | 14.0 | 14.0 | |

*HCSD*

| | | | |
|---|---|---|---|
| Sr. Psychologist Specialist (Program Guide Implementation & Suicide Prevention) | 1.0 | | |
| Sr. Psychologist Specialist (Institution Oversight) | 3.0 | | |
| Health Program Specialist I (1 per region) | 3.0 | | |
| OT (1 per region) | 3.0 | | |
| Sr. Psychiatrist, Specialist | 3.0 | | |
| **Total Request** | **299.3** | **261.0** | **296.1** |

Mental Health Program Guidelines Finance Letter    Attachment C
Fiscal Year 2005/06
Feasible Alternative D

| Mission SHU-C3MS | staffed cap 450 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Lic. Psych Tech | 2.43 to program | 2.43 | 0 | 2.43 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |
| Psychiatrist | 1 to 100 | 4.5 | 1 | 3.5 |
| Psychologist | 1 to 50* | 6 | 3 | 3 |
| Psych Soc Wrkr | 1 to 50* | 3 | 0 | 3 |

| Mission ASU | staffed cap 450 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psych Soc Wrkr | 0.5 to program | 0.5 | 0 | 0.5 |

| Mission ASU-C3MS | staffed cap 100 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 100 | 1 | 0.5 | 0.5 |
| Psychologist | 1 to 40* | 1.5 | 0 | 1.5 |
| Psych Soc Wrkr | 1 to 40* | 1 | 1 | 0 |
| Lic. Psych Tech | 1.62 to 100 | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to 54 | 1.77 | 0 | 1.77 |

| Mission ASU-EOP | staffed cap 63 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 45 | 1.5 | 0.5 | 1 |
| Registerd Nurse | 1.62 to program | 1.62 | 0 | 1.62 |
| Rec Therapist | 1.15 to program | 1.15 | 0 | 1.15 |

| Mission MHCB | staffed cap 23 | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychiatrist | 1 to 10 | 2.33 | 2 | 0.3 |
| Psychologist | 0.62 by 3 staff | 1.86 | 0 | 1.86 |

| Mission MDO/BPT/Zcases | | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient report** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychologist | 1 to 150 | 0.56 | 0 | 0.56 |

| Mission RVRs | | | | |
|---|---|---|---|---|
| **Classification** | **Staff:patient ratio** | **staff via ratio** | **less current staff** | **required additional staff** |
| Psychologist | 1 to 300 | 0.79 | 0 | 0.79 |

5/3/2005
Version 2.0

00935

Fiscal Year 2005/06
Feasible Alternative D

**Mission**
**Relief Factors**

| Classification | Staff:relief factor | staff via ratio | less current relief | required additional staff |
|---|---|---|---|---|
| Lic Psych Tech | 1 to 0.62 | 13.64 | 0.8 | 12.84 |
| Psychologist | 1 to 0.15 | 4.5 | 0 | 4.5 |
| Psych Soc Wrkr | 1 to 0.15 | 0.9 | 0 | 0.9 |

**Mission**
**Nursing**

| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
|---|---|---|---|---|
| Registered Nurse | 1 to 800 | 1.5 | 0 | 1.5 |

**Mission**
**Supervision**

| Classification | Supv to staff | supv via ratio | less current supv | required additional supv |
|---|---|---|---|---|
| Sr. Psych Soc Wrke | 1 to 10 | 1.79 | 0 | 1.79 |
| Lic Psych Tech | | -4 | 0 | -4 |
| Sr. Lic Psych Tech | 1 to 10 | 4 | 0 | 4 |

**Mission**
**Clerical/Med Rec**

| Classification | Staff:EOP/C3MS | staff via ratio | less current supv | required additional staff |
|---|---|---|---|---|
| Office Tech | 1.0 to 300/800 | 1.22 | 0 | 1.22 |
| Office Asst (L.T.) | 0.5 to 300/800 | 0.75 | 0 | 0.75 |
| Med Transcriber | 1 to MHCB Prog. | 1 | 0 | 1 |
| OSS II | 1:10 | 0.5 | 0 | 0.5 |

**Mission**
**Custody**

| Classification | Staff:patient ratio | staff via ratio | less current staff | required additional staff |
|---|---|---|---|---|
| Correctional Officer | 1.0:60, 550 Pop. | 10.82 | 0 | 10.82 |
| Corr. Sgt. | 1.0 to MHCB Prog. | 1 | 0 | 1.0 |
| CC I (MHCB) | 0.25:12 | 0.5 | 0 | 0.5 |
| CC I (ASU 3CMS) | 1:160 I/M | 0.63 | 0 | 0.63 |

**Overall additions** P Y s

| | |
|---|---|
| Psychiatrist | 5.3 |
| Psychologist | 12.21 |
| Psych Soc Wrkr | 4.4 |
| Registerd Nurse | 3.12 |
| Lic. Psych Tech | 12.89 |
| Rec Therapist | 4.07 |
| Sr. PSW | 1.79 |
| Sr. LPT | 4.0 |
| OSS II | 0.5 |
| Office Tech | 1.22 |
| Office Asst | 0.75 |
| Med Transcriber | 1.0 |
| Correctional Officer | 10.82 |
| Corr. Sgt. | 1.0 |
| CC I | 1.13 |

5/3/2005
Version 2.0

Mental Health Program Guidelines Finance Letter
Fiscal Year 2005/06
Feasible Alternative D

**Mental Health**
**Staffing Total**      **51.25**
**Custody Total**
**Staffing**         **13.0**
**Total Staffing**     **64.2**

Mental Health Staffing Difference from Costing

# Attachment

# D

00938

# The Use of the MCMI-III™
# in the Screening and Triage of Offenders

By
Paul Retzlaff
John Stoner
Dennis Kleinsasser

Published in the
*International Journal of Offender Therapy and Comparative Criminology*
Volume 46, Issue 3, pp. 319-332
Copyright Sage Publications, Inc.
Reprinted by Permission of Sage Publications, Inc.

**Summary:**
The MCMI-III (Millon Multiaxial Inventory-III) test is well-suited for use in Corrections settings say Paul Retzlaff, PhD, John Stoner, PhD, and Dennis Kleinsasser, PhD. These researchers used the MCMI-III to test more than 10,000 offenders in the Colorado Department of Corrections. Scales scores were compared to intake judgement and outcomes such as mental health, substance abuse, and violence variables. Several scales were found to predict mental health variables such as subsequent diagnosis, medication prescription, and therapy time. The MCMI-III test does a good job modeling the expert judgements of the intake workers. The drug and alcohol judgements had very high odd ratios. One of the findings that may prove most useful to the correctional psychologist is the MCMI-III's ability to predict future institutional behavior. For example, risk ratios such as the sevenfold increase in future medication use for those scoring high on the Major Depression scale. This data can help to better manage mental health intervention and resources.

PYV
F43AR
433-COR
09/02

# The Use of the MCMI-III in the
# Screening and Triage of Offenders

Paul Retzlaff
John Stoner
Dennis Kleinsasser

*Abstract: The Millon Clinical Multiaxial Inventory–III (MCMI-III) is well suited for use in corrections settings. Although the MCMI-III's scales correlate with the Diagnostic and Statistical Manual of Mental Disorders–Fourth Edition (DSM-IV) personality disorders (frequently found in correctional settings), the publisher offers a corrections-specific interpretive package. To further elucidate the usefulness of the MCMI-III with offenders and assess its efficacy, the authors administered the test to more than 10,000 inmates of the Colorado Department of Corrections. Scale scores were compared to intake judgment and outcome variables across mental health, substance abuse, and violence variables. A number of scales were found to predict several mental health variables such as subsequent diagnosis, medication prescription, and therapy time. Substance abuse scale elevations corresponded to subsequent intake recommendations. Although more modest, the aggressive personality disorder scales and several of the neurotic scales correlated with future institutional violence. The authors discuss the relevance of these findings to screening, triage, and correctional assessment.*

The assessment of personality disorders is of particular interest in correctional settings. Although Axis I disorders are more readily observable and traditionally assessed, the diagnosis of Axis II disorders often requires specific assessment. Character pathology contributes to institutional acting out and, in the case of elevated psychopathy levels, the most severe behavioral problems (Gacono, 2000; Gacono, Meloy, Sheppard, Speth, & Roske, 1995; Gacono, Meloy, Speth, & Roske, 1997; Millon, Simonsen, Birket-Smith, & Davis, 1998; Young, Justice, Erdberg, & Gacono, 2000). Screening with the MCMI-III can aid in the formulation of strategies for managing and containing characterologically disturbed offenders. Although the management of disruptive behavior is of primary concern within a correctional setting, it is equally important to thoroughly screen for Axis I syndromes that will necessitate mental health management.

The MCMI-III is specifically designed to assess personality disorders. The personality disorder scales are closely related to the *Diagnostic and Statistical Manual (DSM)* criteria (Millon, 1986) and can provide support for the clinician's diagnostic impressions as well as formal *DSM* diagnosis. The MCMI-III's clinical syndrome scales are composites of broader categories such as the anxiety dis-

NOTE: Copies of this report are available from the author at Department of Psychology, University of Northern Colorado, Greeley, CO 80639; e-mail: pretzlaff@aol.com; telephone: (970) 351-2212.

International Journal of Offender Therapy and Comparative Criminology, 46(3), 2002  319-332
© 2002 Sage Publications

00941

orders and can suggest other areas for treatments (i.e., psychiatric evaluation and medication review). In addition to correctional assessment (this article), questions related to the forensic use of the MCMI-III (McCann & Dyer, 1996) and treatment planning (Hyer et al., 1994; Retzlaff, 1995) have been previously addressed.

Whereas there is MCMI literature on specific types of offenders (e.g., sex offenders; Chantry & Craig, 1994), there is surprisingly little literature on the use of the Millon instruments in correctional assessment (screening, treatment planning, and so forth). The most interesting work to date studied the relationship between MCMI-III scales and disciplinary actions against inmates (Kelln, Dozols, & McKenzie, 1998). The authors found that inmates with high scores on Schizoid, Narcissistic, Antisocial, Sadistic, Negativistic, Borderline, Alcohol Abuse, and Thought Disorder were more likely to commit misconduct ($p < .05$). Conversely, high scores on the Compulsive scale tended to mitigate against misconduct. Whereas the "typical" criminal personality traits of Narcissistic, Antisocial, and Sadistic being associated with misconduct was not unexpected, the less intuitive dimensions of Schizoid Personality Disorder and Thought Disorder were. Perhaps, the combination of character pathology with peculiar and disordered thinking resulted in the acting out by these inmates (a finding that would be consistent with Megargee's MMPI offender typologies).

The introduction to this series sets the stage for the use of testing in correctional assessment. Psychological tests are simply one part of the overall assessment procedure that also includes gathering data from Monahan and Steadman's (1994) historical, contextual, clinical, and dispositional domains (see Gacono, 2002 [this issue]; also Gacono & Bodholdt, in press). Correctional psychology practice allows for both group and individual assessment and recommendations tailored to the specific needs of the individual. In this article, we provide data useful in the mass screening of inmates. We provide concurrent and predictive validity of the MCMI-III in the areas of mental health, substance abuse, and violence. We present an "industrial clinical" approach that allows for screening of many Axis I and Axis II variables. In our own clinical work, we assess and utilize psychological testing with all inmates. The psychological test data is combined with intake history to produce a composite score that is then used to triage inmates for comprehensive mental health evaluations.

## METHOD

### PARTICIPANTS

The participants in this study were 10,637 consecutive admissions to the Colorado Department of Corrections (DOC). The sample was mostly male with 9.5% females. Ethnic/racial demographics included 46% Caucasian, 30% Hispanic, and 21% African American. This distribution is consistent with the overall makeup of the Colorado DOC population.

## PROCEDURE

All participants were evaluated upon entry into a centralized diagnostic and classification center in Denver, Colorado. Each inmate completed a number of intake tests including the MCMI-III. In addition, intake workers rated the inmates on a number of administrative and clinical variables, such as need for mental health intervention, drug and alcohol treatment, and assault management. Subsequently, mental health contact and disciplinary actions that occur during an inmate's incarceration are recorded in DOC computers. Most outcomes in this report represent a mean outcome period of 20 months ($SD = 10$ months).

Protocols viewed as "invalid" were eliminated from the data set ($n = 1,169$). Relatively few profiles were identified as invalid. Profiles are generally considered to be invalid if the Disclosure scale is greater than or equal to 85 (overreporting symptoms), or less than or equal to 35 (symptom underreporting) (Retzlaff, Sheehan, & Fiel, 1991), or if any of the three reading "validity" items are endorsed (indicating a high probability that the subject could not or did not read the test items). Answering any of the three validity items was associated with low academic or intellectual functioning. The Disclosure cut score of 85 and above was confirmed but the low Disclosure cut score was better modeled at a $BR$ score of 20 or below. As such, these criteria were used to identify and eliminate invalid profiles. A total of 1169 (11%) were therefore eliminated from the initial sample of 10,637, leaving 9,468 participants.

## INSTRUMENTATION

### MCMI-III

The MCMI-III allows for rapid assessment in a short period of time (about 30 minutes). The test can be administered individually or in groups. A corrections-specific scoring and interpretive program (Millon, 1998) and forensic guidelines (Choca & Van Denburg, 1997; Craig, 1993) provide for a smooth transition to inmate populations. The 175-item, true-false format is easily tolerated by inmates and is finished quickly. The items have face validity and are not aversive. Reading level is always an issue, but as evidenced by the number of subjects with invalid profiles, this is less of a concern than one would think. The test can be scored by hand, but this is discouraged because the procedure is very long and complex. The test is best scored with the National Computer Systems software. Scanners are a necessity when scoring large numbers of MCMI-IIIs. An additional benefit of the NCS software is that it allows the data to be easily exported for statistical analysis and further research.

The MCMI-III (Millon, 1997) includes four validity and modifying indices including an item reading screen (Validity), Disclosure, Desirability, and Debasement. Its 11 Clinical Personality Disorder scales include Schizoid, Avoidant, Depressive, Dependent, Histrionic, Narcissistic, Antisocial, Sadistic, Compul-

00943

tive, Negativistic (Passive-Aggressive), and Self-Defeating. There are three scales of Severe Personality Disorders including Schizotypal, Borderline, and Paranoid. The Basic Clinical Syndrome scales include Anxiety, Somatoform, Bipolar: Manic, Dysthymia, Alcohol Dependence, Drug Dependence, and Post-Traumatic Stress Disorder. Finally, the three Severe Clinical Syndromes include Thought Disorder, Major Depression, and Delusional Disorder.

Base Rate scores are calculated for each scale. These scores are unique to Millon tests. The metric represents a mapping of the Base Rate numbers to underlying diagnostic criteria (Gibertini, Brandenburg, & Retzlaff, 1986). In essence, scores from 0 to 74 suggest no pathology of that type. Scores from 75 to 84 reflect that pathology at a "trait" or "features" level. Finally, scores of 85 or greater suggest that that pathology is primary and most likely of a diagnostic level of severity. It should be noted, however, that it would not be considered sound clinical practice to diagnose an inmate based on the MCMI-III alone. Indeed, MCMI-III scale scores should be used as a guide for further interviewing and information gathering. In practice, the MCMI-III scores become the beginning point of a clinical hypothesis, not an end. Psychological testing augments and adds to diagnostic formulation but in isolation is not equivalent to diagnosis (Gacono, Loving, & Bodholdt, 2001).

## INTAKE RATINGS

### Mental Health Rating

At the time of intake, inmates are rated on a number of variables as part of the "programming" process. The mental health of the inmate is important to assess as it mandates future mental health evaluation and treatment. Variables that impact this rating include current psychotropic medication, odd mannerisms and appearance, history of self-injury, mental health treatment, mental health hospitalizations, and successful use of "not guilty by reason of insanity" plea. The specific ratings include a 1 reflecting *further assessment is not indicated* through 3 reflecting *need for referral for further mental health assessment in subsequent facility* through 5 meaning *immediate referral at intake facility.*

### Substance Abuse Rating

The Colorado State Legislature mandated a common substance abuse assessment for all criminal justice agencies. The chosen common instruments are administered at the time of intake and are independent of the MCMI-III. Variables taken into account include use, tolerance and withdrawal, social impairment, treatment history, and prior drug and alcohol arrests. A 1 on the 5-point scale represents a *minor* problem, 3 indicates a *moderate* problem, and 5 indicates a *severe* problem.

*Assaultiveness Rating*

Ratings of 3 and above require either a felony conviction involving actual or attempted serious physical injury or at least three misdemeanor incidents of assaultive behavior. A 1 represents *no apparent need for mental health treatment* or referral to anger management training. A 2 represents *low need for mental health treatment for assaultiveness*. Ratings of 3 through 5 represent levels of actual prior assaultiveness and need for intervention.

## DATA ANALYSIS

The MCMI-III scores presented here are dichotomized at the 75 and above point. This approach is used for initial frequency analysis as well as the odds ratio analyses. The intake ratings are dichotomized at the 3 and above point for the mental health and violence ratings but at the 4 and above point for substance abuse. Outcome data are dichotomized in manners specific to the type of data and explained in the results section.

The inferential statistic used to compare the MCMI-III scores to both the intake and outcome data are an epidemiological procedure referred to as *odds ratios*. Odds ratios analyze a $2 \times 2$ contingency table; hence, the dichotomization of all data. Odds ratios are the relative risk of some outcome between those scoring high on the MCMI-III versus those scoring low. For example, a 2.9 for a scale would indicate that those scoring high on the scale are 2.9 times more likely of having some outcome than those who scored low on the scale. Odds ratios are viewed as significant if their 95% confidence interval does not include the value 1. A value of 1 would suggest the risk for the two groups was identical.

## RESULTS

Table 1 shows the percentage of inmates who scored greater than or equal to 75 on the MCMI-III scales. MCMI-III scale scores suggest a remarkable degree and diversity of psychopathology in this sample. This sample reveals character pathology and traits such as narcissism (21%), antisocial (29%), sadistic (20%), avoidant (25%), depressive (18%), and negativistic (21%) personality disorders, as well as a large number of inmates (38%) with elevations on the Anxiety scale. For at least some of the inmates, this elevation is consistent with the distress associated with initial incarceration.

However, it should be noted that these MCMI-III findings perhaps underreport the true number of personality disorders in this sample. For example, the frequency of antisocial personality disorder (ASPD), as identified by the MCMI-III, was only 29%. Yet the base rates for ASPD in a typical correctional setting have been consistently reported at between 50% and 75% (Hare, 1991). In this context, the MCMI-III scale frequencies should probably be considered as a rough propor-

*International Journal of Offender Therapy and Comparative Criminology*

**TABLE 1**

**PERCENTAGE OF INMATES GREATER THAN OR EQUAL TO 75 FOR THE MILLON CLINICAL MULTIAXIAL INVENTORY–III (MCMI-III) SCALES**

| Scale | | Percentage |
|---|---|---|
| 1 | Schizoid | 12 |
| 2A | Avoidant | 25 |
| 2B | Depressive | 18 |
| 3 | Dependent | 15 |
| 4 | Histrionic | 13 |
| 5 | Narcissistic | 21 |
| 6A | Antisocial | 29 |
| 6B | Sadistic | 20 |
| 7 | Compulsive | 6 |
| 8A | Negativistic | 21 |
| 8B | Self-defeating | 12 |
| S | Schizotypal | 3 |
| C | Borderline | 7 |
| P | Paranoid | 7 |
| A | Anxiety | 38 |
| H | Somatoform | 1 |
| N | Mania | 3 |
| D | Dysthymia | 15 |
| B | Alcohol | 27 |
| T | Drug | 18 |
| R | PTSD | 6 |
| SS | Thought Disorder | 1 |
| CC | Major Depression | 3 |
| PP | Delusional | 2 |

tion of the individual personality disorders relative to each other, rather than an actual frequency for the individual disorders.

*Mental Health*

Table 2 (Mental Health Intervention) provides the odds ratios for all MCMI-III scales at the 75 cut score level for four variables associated with mental health prediction and outcome. The first column, entitled Intake Judgment, represents the judgment of the intake worker as to whether each inmate had mental health problems and needed mental health intervention. This rating is a 1 to 5 with 3 or more indicative of significant concern. About 15% of inmates had ratings of 3 or more. This ratio is also consistent with the number of inmates in the overall system who are identified as having major mental health problems.

00946

The second column, Outcome: Dx, presents the odds ratios for whether each inmate subsequently went to mental health for any reason and received a *DSM* diagnosis (15%). The third column, Outcome: Meds, represents the odds ratios for whether each inmate was subsequently placed on psychotropic medications (23%). The final variable, Outcome: 15+ Minutes, represents those inmates who were more consistent users of contact time with mental health and were seen by mental health for an average of 15 or more minutes per month (21%) according to the computer. Fifteen minutes per month is not considered the actual amount of therapy time. The actual amount of time is far higher. The undercount relates to the clinicians' aversion to the "bean counting" of therapy. They simply do not record their contact time as they should. Whereas Outcome: Dx was collected at a mean point in time 20-months posttesting, the information on use of psychotropic medications and clinical contact time was collected at a mean time since testing of 27 months with a standard deviation of 10 months. This partially explains why the magnitude of those two variables is higher than the percentage diagnosed.

As noted in Table 2, Scale 5 (Narcissism) has consistently and statistically lower risks of mental health need on both intake and later outcomes. Schizotypal, Borderline, Somatoform, PTSD, Thought Disorder, and Major Depression were associated with higher risk (in the 4 to 9 range). Whereas their profile was technically invalid, those inmates with scores greater than or equal to 85 on the Disclosure scale were also at relatively high risk of mental health disturbance. These risk ratios may be used to drive empirically sound predictions as to inmates being lower than, equal to, and above average risk for mental health problems. This information may then be combined with other history to document the need for full, follow-up mental health evaluation.

It is important to note that two of these variables are contaminated and confounded by the use of the MCMI-III in the process of making the Intake Judgment and less directly by the Intake Judgment driving inmates to be seen by mental health. Variously over time, some of the clinical syndrome scales were used to increase the 1 to 5 mental health intake code. This was generally on the order of some inmates getting 1 additional point toward 13 raw points then converted to the 1 to 5 scale. It is improbable that this order of impact caused more than a very few inmates to be increased by a full 1 point on the 1 to 5 scale. It is even more unlikely that the MCMI drove many inmates from the 1-2 level to the 3-5 level as the data is analyzed here. In order to control to some degree this confound, we did not use simple referral to mental health as an outcome but only inmates receiving a *DSM* diagnosis are counted as positive outcomes. Of interest also, many of the scales that were never used in the process have significant odds ratios. Neither Outcome: Meds nor Outcome: 15+ Minutes are confounded.

*Substance Abuse*

Table 3 shows the data regarding the need for drug and alcohol treatment. Here there are two measures. The first is the intake worker's judgment of need. The sec-

**TABLE 2**
NEED FOR MENTAL HEALTH INTERVENTION

| Scale | | Intake Judgment | Outcome: Dx | Outcome: Meds | Outcome: 15+ Minutes |
|---|---|---|---|---|---|
| 1 | Schizoid | 2.8* | 2.5* | 2.1* | 1.7* |
| 2A | Avoidant | 2.4* | 2.1* | 1.7* | 1.5* |
| 2B | Depressive | 3.5* | 3.2* | 2.5* | 2.2* |
| 3 | Dependent | 2.7* | 2.2* | 2.0* | 2.0* |
| 4 | Histrionic | 0.8* | 0.9 | 1.0 | 1.1 |
| 5 | Narcissistic | 0.7* | 0.7* | 0.7* | 0.9 |
| 6A | Antisocial | 1.5* | 1.5* | 1.4* | 1.4* |
| 6B | Sadistic | 1.6* | 1.5* | 1.5* | 1.4* |
| 7 | Compulsive | 0.8 | 0.8 | 1.0 | 1.0 |
| 8A | Negativistic | 2.1* | 1.8* | 1.6* | 1.6* |
| 8B | Self-defeating | 2.6* | 2.4* | 2.0* | 2.0* |
| S | Schizotypal | 4.2* | 3.5* | 2.5* | 2.3* |
| C | Borderline | 5.3* | 4.4* | 3.3* | 2.9* |
| P | Paranoid | 2.0* | 1.8* | 1.5* | 1.5* |
| A | Anxiety | 2.9* | 2.6* | 2.2* | 1.9* |
| H | Somatoform | 8.1* | 5.4* | 6.9* | 3.0* |
| N | Mania | 3.1* | 2.5* | 2.2* | 2.1* |
| D | Dysthymia | 3.7* | 2.9* | 2.6* | 2.0* |
| B | Alcohol | 1.4* | 1.5* | 1.3* | 1.2* |
| T | Drug | 1.6* | 1.7* | 1.6* | 1.4* |
| R | PTSD | 5.2* | 4.2* | 3.7* | 2.9* |
| SS | Thought Disorder | 7.0* | 6.1* | 5.7* | 4.1* |
| CC | Major Depression | 9.5* | 7.9* | 7.4* | 4.5* |
| PP | Delusional | 3.0* | 2.6* | 2.1* | 2.1* |
| X | Disclosure > 84 | 4.7* | 4.5* | 3.3* | 3.0* |
| % high on variable | | 15 | 15 | 23 | 21 |

NOTE: * = significant at .05.

ond is whether the inmate was subsequently charged with a drug offense while incarcerated. The intake judgment here is the 1 to 5 rating dichotomized between 1 to 3 and 4 to 5. The greater than or equal to 4 cut score is used because there is a very high incidence of substance abuse in incarcerated felons and more than 70% of inmates receive a score of greater than or equal to 3. Greater than or equal to a cut score of 4 represents 34% of inmates.

Table 3 presents the odds ratios for risk of high intake rating and subsequent drug offense charge. Elevated Scale 7 (Compulsive) scores are associated with particularly low intake ratings. Scales B (Alcohol Abuse) and T (Drug Abuse) are predictive of high intake judgments with odds ratios of 6.2 and 11.3, respectively.

00948

**TABLE 3**
**NEED FOR DRUG AND ALCOHOL TREATMENT**

| Scale | | Intake Judgment | Outcome: Drugs |
|---|---|---|---|
| 1 | Schizoid | 1.6* | 0.9 |
| 2 A | Avoidant | 1.5* | 0.8* |
| 2 B | Depressive | 2.0* | 0.9 |
| 3 | Dependent | 1.8* | 0.9 |
| 4 | Histrionic | 0.9* | 1.2* |
| 5 | Narcissistic | 0.8* | 1.3* |
| 6 A | Antisocial | 4.2* | 1.2* |
| 6 B | Sadistic | 3.0* | 1.3* |
| 7 | Compulsive | 0.3* | 1.1 |
| 8A | Negativistic | 1.9* | 1.0 |
| 8B | Self-defeating | 2.0* | 1.0 |
| S | Schizotypal | 1.5* | 0.7 |
| C | Borderline | 2.4* | 1.3 |
| P | Paranoid | 1.0 | 0.9 |
| A | Anxiety | 1.8* | 1.0 |
| H | Somatoform | 1.4 | 0.6 |
| N | Mania | 1.8* | 1.1 |
| D | Dysthymia | 2.2* | 0.9 |
| B | Alcohol | 6.2* | 1.1 |
| T | Drug | 11.3* | 1.3* |
| R | PTSD | 1.8* | 0.6* |
| SS | Thought Disorder | 1.7* | 0.4 |
| CC | Major Depression | 1.6* | 0.6 |
| PP | Delusional | 0.9 | 0.8 |
| % high on variable | | 34 | 7 |

NOTE: * = significant at .05.

For example, an inmate who scores above 75 on Drug Abuse is far more likely to obtain an intake rating of 4 or greater. Of the personality disorder scales, 6A (Antisocial) and 6B (Sadistic) have the highest odds ratios against intake ratings and subsequent drug offense. Scale T (Drug Dependence) is the best predictor of subsequent drug offenses. Inmates who score 75 or higher on the Drug Dependence scale are 30% more likely to be charged with a drug offense than those scoring below 75. It is important to note that while the odds ratios for the drug offense charge are statistically significant ($p < .05$), they are quite modest as they reflect not only the predilection to abuse drugs but also the reduced opportunity for drug use within the institutional setting. These data lend support for the use of the MCMI-III substance abuse scales as a screening tool for inmates needing further substance abuse assessment.

**TABLE 4**
**NEED FOR ANGER MANAGEMENT**

| Scale | | Intake Judgment | Outcome: Assault | Outcome: Fighting |
|---|---|---|---|---|
| 1 | Schizoid | 1.2* | 1.7* | 1.3* |
| 2A | Avoidant | 1.1 | 1.3* | 1.4* |
| 2B | Depressive | 1.1* | 1.4* | 1.3* |
| 3 | Dependent | 1.0 | 1.2 | 1.0 |
| 4 | Histrionic | 0.6* | 0.8 | 0.8 |
| 5 | Narcissistic | 1.1 | 1.9* | 1.4* |
| 6A | Antisocial | 1.1* | 1.7* | 1.4* |
| 6B | Sadistic | 1.2* | 1.8* | 1.5* |
| 7 | Compulsive | 0.8* | 0.4* | 0.6* |
| 8A | Negativistic | 1.3* | 1.8* | 1.2* |
| 8B | Self-defeating | 0.9 | 1.2 | 0.9 |
| S | Schizotypal | 1.2* | 1.6* | 0.9 |
| C | Borderline | 1.2* | 1.6* | 1.4 |
| P | Paranoid | 1.3* | 1.9* | 1.3 |
| A | Anxiety | 1.1* | 1.4* | 1.3* |
| H | Somatoform | 1.0 | 0.9 | 0.3 |
| N | Mania | 0.8 | 1.2 | 1.3 |
| D | Dysthymia | 1.3* | 1.5* | 1.0 |
| B | Alcohol | 1.4* | 1.4* | 1.0 |
| T | Drug | 0.8* | 1.1 | 1.1 |
| R | PTSD | 1.3* | 1.1 | 1.6* |
| SS | Thought Disorder | 1.2 | 1.3 | 0.8 |
| CC | Major Depression | 1.1 | 1.0 | 0.8 |
| PP | Delusional | 1.4* | 2.8* | 1.8* |
| % high on variable | | 36 | 4 | 6 |

NOTE: * = significant at .05.

### Assaultiveness

Table 4 shows the odds ratios for the MCMI-III scales against the dichotomized (1-2 vs. 3-5) Intake Judgment of assaultiveness risk. In addition, the Outcome: Assault column represents subsequent charges of assault while incarcerated. Similarly, Outcome: Fighting represents subsequent charges of fighting later in the system.

For the intake variable, 4 (Histrionic), 7 (Compulsive), and T (Drug Dependence) have significantly low odds ratios pointing to a reduced risk of violence. Scales 8A (Antisocial), P (Paranoid), D (Dysthymia), B (Alcohol Dependence), R (PTSD), and PP (Delusional) are significant and the highest with odds ratios of

1.3 or greater. Several of these are remarkably consistent with scale descriptions and common clinical belief about these psychopathologies. Table 4 also provides the odds ratios for whether the inmates were subsequently charged with assault or fighting. Scale 7 (Compulsive) has significantly low odds ratios for both outcome variables. In contrast, Schizoid, Narcissistic, Antisocial, Sadistic, Negativistic, Paranoid, and Delusional Disorder Scales (1, 5, 6A, 6B, 8A, P, and PP) have significantly high ratios and at least one at 1.7 or higher. This suggests that not only are the typical "criminal" personality traits resulting in violence but also the more neurotic and suspicious.

## DISCUSSION

The MCMI-III appears to perform quite well in corrections settings. It appears to elucidate key psychopathology, to correlate well with expert judgments, and to predict future behavior and outcomes. There is a dramatic diversity of psychopathology in this group of inmates. Particularly interesting are the disorders traditionally not seen in correctional samples (e.g., avoidant and dependent). It is likely that this is the result of increasing incarceration rates for sex offenders and drug offenders.

The MCMI-III does a good job of modeling the expert judgments of the intake-workers. As such, it can be viewed as an adjunct to traditional intake programming. The high odds ratios (5.0s and above) for the mental health judgments for the Borderline, PTSD, and Major Depression scales are highly consistent with a priori expectations. The relationships with drug and alcohol judgments are very high with odds ratios of 6.2 and 11.3. Finally, although more modest, the concurrent validity with assaultiveness and the need for anger management is consistent with clinical expectations. The utility of this information lies again in the serial nature of a mass inmate screening program. The information from the test can and should be added to the prior history of the inmate to determine if further mental health assessment is needed.

Probably most useful to the clinician is the MCMI-III's ability to predict future institutional behavior. Noteworthy are risk ratios such as the sevenfold increase in future medication use for those scoring high on Major Depression. These data should be used to triage inmates as well as better manage mental health intervention and resources (read: "medication costs"). The very high odds ratios provide excellent support for the use of the MCMI-III at intake. This information at screening allows for the triage of the inmate to mental health sooner than later. Inmates who are going to manifest serious mental illness need to be further assessed and monitored by mental health quickly to avoid behavioral problems in a new facility.

Future drug use in prison is undoubtedly a constrained variable given the limited availability of drugs in the facilities. It is interesting to note, however, that the

00951

MCMI-III modestly predicts not only who is at increased risk for this behavior but also who is at a reduced risk. This information combined with history and substance abuse workup would allow the inmate to more quickly be identified as a candidate for substance abuse treatment.

Finally, violence in facilities is an obvious concern. The MCMI-III does a good job of indicating who is at an increased risk. Perhaps most interesting is not the antisocial and sadistic inmates who would be expected to engage in violent behavior but the atypical inmates with high scores on the Schizoid, Avoidant, Depressive, and Delusional Disorder. This points to the fact that there are probably many reasons for violence within a prison, and it is likely that personality is differentially driving violence. For example, overcrowding may cause a schizoid to act out violently, whereas an inmate with a Delusional Disorder may become assaultive if his delusion is entered by a fellow inmate. Here, it must be noted that the relative risk ratios are more modest than in the case of the mental health risk ratios. As such, it is more important than ever to remind the reader that tests alone should not be used to predict violence but that tests should only be used in conjunction with history, interview, and other assessment procedures.

In Colorado, we are implementing the data associated with mental health outcomes. Specifically, we are recommending that scores of 75 or higher on any one of seven scales would cause the mental health need code to go immediately to a 3. This would be indicative of a need for further mental health evaluation. That rating could go higher based upon the other mental health variables. The seven scales we would use include Schizotypal, Borderline, Somatoform, PTSD, Thought Disorder, Major Depression, and Disclosure.

By way of case example, we tracked a newly admitted inmate who was convicted of vehicular homicide. His scores on the MCMI-III included an 87 on Schizotypal and an 89 on Borderline. The intake worker noted "odd" behavior in the initial interview as well as a history of prior psychiatric hospitalization. The MCMI-III and intake variables resulted in a mental health risk rating of 4. This rating indicated that he needed to be seen upon transfer to his facility. Per mental health practice, he was seen within 1 week of transfer. Mental health evaluation by a psychologist at that time indicated not only personality disturbance but also a major affective disorder. He was ultimately seen in ongoing psychotherapy.

In addition to using the MCMI-III for mental health triage purposes, we also make available to correctional staff a brief personality description based on the MCMI-III. This is included in the file hold on the unit. It is hoped that this will allow staff to better understand the individual inmates and differentiate interaction. For example, if an inmate had a high point score on the Schizoid scale and that score was at or above 75, the following would be printed:

The personality test profile suggests that this INTROVERTED inmate tries to do his or her own time. (S)He does not show much emotion and is a loner by choice. This is not usually a sign of a problem, it is just his or her personality. (S)He is most likely to do what you want if you make SIMPLE requests, one at a time.

00952

In summary, corrections is increasingly in need of tests that are easy to administer and score. The MCMI-III focuses on the personality disorders, is consistent with *DSM-IV*, and has a corrections-specific package. The data we have presented here indicates that the MCMI-III can predict concurrent and future variables across mental health, substance abuse, and violence. The MCMI-III is a test of psychopathology and is best at predicting mental health types of variables. It is more limited in the prediction of focal behaviors such as substance abuse and violence. Regardless of the domain of prediction, it is at its best when used as an adjunct to individualized assessment techniques such as a clinical interview. As such, we have suggested here the use of the test as a part of a serial triage procedure. It is recommended that clinicians in corrections environments use the MCMI-III and the data here to aid in their very difficult duties.

## REFERENCES

Chantry, K. & Craig, R. J. (1994). Psychological screening of sexually violent offenders with the MCMI. *Journal of Clinical Psychology, 50,* 430-435.

Choca, J., & Van Denburg, E. (1997). *Interpretative guide to the Millon clinical multiaxial inventory* (2nd ed.). Washington, DC: American Psychological Association.

Craig, R. J. (1993). *Psychological screening with the MCMI-II.* Odessa, FL: Psychological Assessment Resources.

Gacono, C. (2000). *The clinical and forensic assessment of psychopathy: A practitioner's guide.* Mahwah: NJ: Lawrence Erlbaum.

Gacono, C., & Bodholdt, R. (in press). The role of the Psychopathy Checklist-Revised (PCL-R) in violence and risk assessment. *Journal of Threat Assessment.*

Gacono, C., Loving, J., & Bodholdt, R. (2001). The Rorschach and psychopathy: Toward a more accurate understanding of the research findings. *Journal of Personality Assessment, 77*(1), 16-38.

Gacono, C., Meloy, J. R., Sheppard, K., Speth, E., & Roske, A.. (1995). A clinical investigation of malingering and psychopathy in hospitalized insanity acquittees. *Bulletin of the American Academy of Psychiatry and the Law, 23,* 1-11.

Gacono, C., Meloy, J. R., Speth, E., & Roske, A. (1997). Above the law: Escapes from a maximum security forensic hospital and psychopathy. *Bulletin of the American Academy of Psychiatry and the Law, 25,* 547-550.

Gilberthel, M., Brandenburg, N., & Retzlaff, P. (1986). The operating characteristics of the Millon Clinical Multiaxial Inventory. *Journal of Personality Assessment, 50,* 554-567.

Hare, R. (1991). *The Hare Psychopathy Checklist-Revised.* Toronto, Canada: Multi-Health Systems.

Hyer, L. and Associates (1994). *Trauma victim: Theoretical issues and practical suggestions.* Muncie, IN: Accelerated Development.

Kelln, B.R.C., Dozois, D.J.A., and McKenzie, I.E. (1998). An MCMI-III discriminant function analysis of incarcerated felons. *Criminal Justice and Behavior, 25,* 177-189.

McCann, J., & Dyer, F. (1996). *Forensic assessment with Millon Inventories.* New York: Guilford.

Millon, T. (1986). Personality prototypes and their diagnostic criteria. In T. Millon & G. Klerman (Eds.), *Contemporary directions in psychopathology: Toward DSM-IV.* (pp. 639-669). New York: Guilford.

Millon, T. (1997). *The Millon Clinical Multiaxial Inventory-III manual* (2nd ed.). *Minneapolis, MN: National Computer Systems.*

Millon, T. (1996). *MCMI-III Corrections Report User's Guide.* Minneapolis, MN: National Computer Systems.

332                          *International Journal of Offender Therapy and Comparative Criminology*

Millon, T., Simonsen, E., Birket-Smith, M., & Davis, R. (1998). *Psychopathy*. New York: Guilford.

Monahan, J. & Steadman, H. (1994). Toward a rejuvenation of risk assessment research. In J. Monahan and H. Steadman (Eds.), *Violence and mental disorder: Developments in risk assessment* (pp. 1-17). Chicago: University of Chicago Press.

Retzlaff, P. (Ed.). (1995). *Tactical psychotherapy of the personality disorders: An MCMI-III based approach*. Needham Heights, MA : Allyn & Bacon.

Retzlaff, P., Sheehan, E., & Fiel, A. (1991). MCMI-II report style and bias: Profile and validity scales analysis. *Journal of Personality Assessment, 56,* 466-477.

Young, M., Justice, J., Erdberg, E., & Gacono, C. (2000). The incarcerated psychopath in psychiatric treatment: Management or treatment? In C. Gacono (Ed.), *The clinical and forensic assessment of psychopathy: A practitioner's guide* (pp. 313-332). Mahwah, NJ: Lawrence Erlbaum.

Paul Retzlaff, Ph.D.
Professor
Department of Psychology
University of Northern Colorado
Greeley, Colorado 80639
USA

John Stenac, Ph.D.
Psychologist
Colorado Department of Corrections
CSP, P.O. Box 777
Canon City, Colorado 81215
USA

Dennis Kleinsasser, Ph.D.
Chief of Clinical Services
Colorado Department of Corrections
DOC, 2862 S. Circle Drive
Colorado Springs, Colorado 80906
USA

00954

# Attachment

# E

Corrections Report—Revised

# MCMI-III™

## Millon™ Clinical Multiaxial Inventory-III

### Corrections Report - Revised

Theodore Millon, PhD

ID Number: ___

Score: ___

Age 35

White

First Marriage

Correctional Offender

7/03/2003

Copyright © 1994, 1996, 2003 DICANDRIEN, INC. All rights reserved.
Published and distributed exclusively by NCS Pearson, Inc., Minneapolis, MN 55440.

"Millon" and "MCMI-III" are trademarks of DICANDRIEN, INC.
"DSM-IV" is a registered trademark of the American Psychiatric Association.

[3.0 / 6.07 / 1.8]

F43CSR

00956

MCMI-III™ Corrections Report - Revised                          Sample One ID: 1
Page 2                                      Date of Administration: 7/83/2003

## CLINICAL SUMMARY

MCMI-III reports were normed on offenders who were in the early phases of psychological screening or assessment to predict how well they would adjust to prison. Respondents who do not fit this normative correctional population or who took the MCMI-III test for other clinical purposes may receive distorted reports.

Note that the MCMI-III report cannot, by itself, be considered definitive. It should be evaluated in conjunction with additional clinical and biographical information. This correctional report should be evaluated by a mental health clinician who is trained in the use of psychological tests. The report should not be shown to offenders or their relatives.

**Interpretive Considerations**
The offender is a 35-year-old married white male with 12 years of education. He is currently being seen as a correctional offender, and he reports that he has recently experienced problems that involve antisocial behavior and marriage or family. These self-reported difficulties, which have occurred in the last three to twelve months, are likely to take the form of an Axis I disorder.

**Profile Severity**
On the basis of MCMI-III test data, it may be inferred that the offender is experiencing a severe mental disorder; further professional observation and inpatient care may be appropriate. The text of the following interpretive report may need to be modulated upward given this probable level of severity. Empirical research indicates that this offender is likely to require mental health services.

**Possible DSM-IV® Diagnoses**
He appears to fit the following Axis II classifications best: Schizoid Personality Disorder, with Dependent Personality Traits, Avoidant Personality Traits, and Depressive Personality Features.

Axis I clinical syndromes are suggested by the client's MCMI-III profile in the areas of Major Depression (recurrent, severe, without psychotic features) and Generalized Anxiety Disorder.

**If Treatment Services are Recommended**
This offender may have developed a pattern of relating to others in a retiring, listless, and dejected manner. A poor reporter of his personal history and increasingly withdrawn from his problems, he may be difficult to engage in therapeutic intervention. Enlisting the aid of family members and focusing on short-term cognitive techniques may be useful in modulating compliance and achieving a measure of progress.

00957

MCMI-III™ Corrections Report - Revised
Page 3

Sample One ID: 1
Date of Administration: 7/03/2003

## MILLON CLINICAL MULTIAXIAL INVENTORY - III
### CONFIDENTIAL INFORMATION FOR PROFESSIONAL USE ONLY

**Valid Profile**

PERSONALITY CODE:  1 ** 3 2A * 2B + 7 5 8B 4 " 6A 6B 6A ' ' // - ** - ° //
SYNDROME CODE:  - ** A D ° // - ** CC ° //
DEMOGRAPHIC:  1/C/M/35/W/F/12/AN/MA/----/O4/----/

| CATEGORY | | SCORE | | PROFILE OF BR SCORES | | | | | DIAGNOSTIC SCALES |
|---|---|---|---|---|---|---|---|---|---|
| | | RAW | BR | 0 | 60 | 75 | 85 | 115 | |
| MODIFYING INDICES | X | 83 | 53 | | | | | | DISCLOSURE |
| | Y | 12 | 85 | | | | | | DESIRABILITY |
| | Z | 14 | 80 | | | | | | DEBASEMENT |
| CLINICAL PERSONALITY PATTERNS | 1 | 15 | 60 | | | | | | SCHIZOID |
| | 2A | 7 | 76 | | | | | | AVOIDANT |
| | 2B | 7 | 73 | | | | | | DEPRESSIVE |
| | 3 | 12 | 62 | | | | | | DEPENDENT |
| | 4 | 9 | 36 | | | | | | HISTRIONIC |
| | 5 | 9 | 43 | | | | | | NARCISSISTIC |
| | 6A | 8 | 6 | | | | | | ANTISOCIAL |
| | 6B | 2 | 17 | | | | | | SADISTIC |
| | 7 | 20 | 58 | | | | | | COMPULSIVE |
| | 8A | 3 | 22 | | | | | | NEGATIVISTIC |
| | 8B | 2 | 36 | | | | | | MASOCHISTIC |
| SEVERE PERSONALITY PATHOLOGY | S | 1 | 19 | | | | | | SCHIZOTYPAL |
| | C | 8 | 53 | | | | | | BORDERLINE |
| | P | 5 | 60 | | | | | | PARANOID |
| CLINICAL SYNDROMES | A | 7 | 61 | | | | | | ANXIETY |
| | H | 10 | 72 | | | | | | SOMATOFORM |
| | N | 6 | 6 | | | | | | BIPOLAR: MANIC |
| | D | 13 | 62 | | | | | | DYSTHYMIA |
| | B | 3 | 46 | | | | | | ALCOHOL DEPENDENCE |
| | T | 0 | 0 | | | | | | DRUG DEPENDENCE |
| | R | 11 | 72 | | | | | | POST-TRAUMATIC STRESS |
| SEVERE CLINICAL SYNDROMES | SS | 8 | 46 | | | | | | THOUGHT DISORDER |
| | CC | 16 | 79 | | | | | | MAJOR DEPRESSION |
| | PP | 1 | 25 | | | | | | DELUSIONAL DISORDER |

Note. Base rate transformations for the Clinical Personality Patterns scales are based on a sample of male correctional offenders.

00958

## CORRECTIONAL SUMMARY

The following classifications are based on prediction models developed as part of a research project involving over 10,000 offenders who completed the MCMI-III test at intake. The MCMI-III Corrections Report User's Guide summarizes this research and the validity evidence supporting these classifications. These research-based classifications are intended to assist with key programming and placement decisions made at intake.

| This inmate's probable need for: | Is classified as: |
|---|---|
| Mental Health Intervention | High |
| Substance Abuse Treatment | Low |
| Anger Management Services | Low |

The statements below are relevant to offenders who have been adjudicated and recently confined to prison. These judgments are based primarily on clinical and theoretical hypotheses that derive from scores and profiles obtained on the MCMI-III test.

**Reaction to Authority**
This offender is apt to be socially isolated, anxious, and dependent. He is not inclined to be troublesome, and is rather quiet, submissive, generally ineffectual, and withdrawn.

**Escape Risk**
Even if opportunities arise, this offender is not likely to engage in escape behavior.

**Disposition to Malinger**
This offender's characteristic withdrawal and worrisomeness may resemble malingering but actually represents a pattern of ineffectuality that is not consciously intended.

**Response to Crowding/Isolation**
Placement of this offender in a "safe" living unit would be wise, in part to reduce discomfiting social pressures and in part to decrease the likelihood of his being preyed upon and humiliated.

**Amenability to Treatment/Rehabilitation**
It may be necessary to prevent this prisoner from withdrawing into self-imposed isolation. Educational rehabilitation may be advisable to compensate for a limited school or work background. The program should be sufficient to ensure at least a modicum of marketable post-release skills. His receptivity to such efforts, however, may prove to be slow and arduous.

**Suicidal Tendencies**
As indicated above, the research-based, multi-scale MCMI-III prediction model classifies this offender as having a high probable need for mental health intervention. In addition, his item responses indicate that he has recently thought about committing suicide.

## RESPONSE TENDENCIES

The BR scores reported for this individual have been modified to account for the psychic tension and dejection indicated by the elevations on Scale A (Anxiety) and Scale D (Dysthymia).

## AXIS II: PERSONALITY PATTERNS

The following paragraphs refer to those enduring and pervasive personality traits that underlie this man's emotional, cognitive, and interpersonal difficulties. Rather than focus on the largely transitory symptoms that make up Axis I clinical syndromes, this section concentrates on his more habitual and maladaptive methods of relating, behaving, thinking, and feeling.

MCMI-III profiles such as this man's signify tendencies to be introversive, emotionally impoverished, and expressively either impassive or depressed. Preferring to remain in the background, he may lack social initiative and display little stimulus-seeking behavior. Notable also are cognitive deficits and unclear thinking about interpersonal matters. Anger and discontent rarely surface. More typically, he will appear sad or disengaged emotionally. Reluctant to accept help from others, he is likely to sacrifice his own interests, try not to be a burden to others, and act in a compliant and placating manner. His easy fatigability and slow personal tempo may be compounded by a general weakness in expressiveness and spontaneity. Although he is prone to assume a peripheral role in social and family relationships, he may also have a need to gain some measure of support from significant others. These conflicting attitudes stem in part from his feelings of low self-esteem and his deficiencies in autonomous and competent behavior. Quick to self-blame, he is inclined to belittle himself and to possess a self-image of being a weak and ineffectual person.

Daily life for this offender may be experienced as uneventful, with extended periods of passive solitude interspersed with feelings of sadness and emptiness. He is likely to have endorsed items such as "Few things in life give me pleasure." He tries to be indifferent to his social surroundings, is minimally introspective, and is sufficiently withdrawn as to miss the subtleties of emotional life, and he exhibits few affectionate or erotic needs. His thought processes tend to be unfocused and tangential, particularly in regard to interpersonal matters. As a result, his social communications are often strained and self-conscious. His hesitation to express affection may stem from an inability to experience enthusiasm or pleasure. Moreover, for extended periods, he may exhibit a pervasive dysthymic mood that is punctuated occasionally by unanchored and ill-defined anxiety.

This man prefers to follow a simple, repetitive, and dependent life pattern. He actively avoids self-assertion, appears spiritless and cheerless, abdicates autonomous responsibilities, and may be indifferent to conventional social implications. Disengaged from and uninterested in most of the rewards of human affairs, he often appears apathetic, if not depressed and morose. Although lacking in drive, he is also fearful of rebuff. Therefore, he restricts his social and emotional involvements, which consequently perpetuates his pattern of social isolation and sadness.

## AXIS I: CLINICAL SYNDROMES

The features and dynamics of the following Axis I clinical syndromes appear worthy of description and analysis. They may arise in response to external precipitants but are likely to reflect and accentuate several of the more enduring and pervasive aspects of this man's basic personality makeup.

Preoccupation with matters of personal adequacy and chronic feelings of worthlessness and guilt appear to predominate in the major depression evident in the clinical picture of this socially awkward and introverted man. Timid, shy, and apprehensive, he is especially sensitive to public humiliation and rejection. Worthy of note is his tolerance of daily unhappiness and emptiness, a willingness to accept his feelings of worthlessness and guilt. Plagued with self-doubts and thoughts of death, he may be notably saddened by the view that he is both socially unattractive and physically inferior. Fearful of expressing his discontent to others who might thereby reject or humiliate him, he deals with his frustration by turning it inward, becoming introspectively depressed. This offender's score on MCMI-III Scale CC (Major Depression) is 78. Empirical research has shown that offenders scoring 75 or higher on Scale CC at intake are very much more likely to require prison-provided mental health services compared to offenders scoring below 75. This research is described in the MCMI-III Corrections Report User's Guide.

This man may be experiencing an anxiety disorder, noted by symptoms such as fatigue, insomnia, muscular tension, distracted thinking, and a general dysphoric mood. Basically shy and socially uncomfortable, he may be plagued by self-doubt. Especially hypersensitive to public humiliation or reproval, he may lack sufficient self-esteem to respond to such events by expressing the anger and resentment he might feel. His anxiety not only may be one of his general states—an omnipresent level of discomfort, especially with others—but also may be intensified by fear that his restrained anger may spew forth against persons he does not provoke. This offender's score on MCMI-III Scale A (Anxiety) is 82. Empirical research has shown that offenders scoring 75 or higher on Scale A at intake are more likely to require prison-provided mental health services compared to offenders scoring below 75. This research is described in the MCMI-III Corrections Report User's Guide.

## NOTEWORTHY RESPONSES

He answered the following statements in the direction noted in parentheses. These items suggest specific problem areas that the clinician may wish to investigate.

**Health Preoccupation**
1. Omitted Item (True)
4. Omitted Item (True)
55. Omitted Item (True)
74. Omitted Item (True)
130. Omitted Item (True)
149. Omitted Item (True)

> **Special Note on Noteworthy Responses:**
> The actual test items are included in this section of the report, but have been removed in this sample to protect the integrity of the test.

**Interpersonal Alienation**
10. Omitted Item (True)
27. Omitted Item (True)
92. Omitted Item (True)
105. Omitted Item (True)
167. Omitted Item (True)

**Emotional Dyscontrol**
34. Omitted Item (True)

**Self-Destructive Potential**
44. Omitted Item (True)
142. Omitted Item (True)
171. Omitted Item (True)

**Childhood Abuse**
No items endorsed.

**Eating Disorder**
No items endorsed.

> **Special Note on Noteworthy Responses:**
> The actual test items are included in this section of the report, but have been removed in this sample to protect the integrity of the test.

## POSSIBLE DSM-IV® MULTIAXIAL DIAGNOSES

The following diagnostic assignments should be considered judgments of personality and clinical prototypes that correspond conceptually to formal diagnostic categories. The diagnostic criteria and items used in the MCMI-III test differ somewhat from those in the *DSM-IV*, but there are sufficient parallels in the MCMI-III items to recommend consideration of the following assignments. It should be noted that several *DSM-IV* Axis I syndromes are not assessed in the MCMI-III test. Definitive diagnoses must draw on biographical, observational, and interview data in addition to self-report inventories such as the MCMI-III test.

**Axis I: Clinical Syndromes**
The major complaints and behavior of the offender parallel the following Axis I diagnoses, listed in order of their clinical significance and salience.

296.33 Major Depression (recurrent, severe, without psychotic features)
300.02 Generalized Anxiety Disorder

**Axis II: Personality Disorders**
Deeply ingrained and pervasive patterns of maladaptive functioning underlie Axis I clinical syndromal pictures. The following personality prototype correspond to the most probable *DSM-IV* diagnoses (Disorders, Traits, Features) that characterize this offender.

Personality configuration composed of the following:

> 301.20 Schizoid Personality Disorder
> with Dependent Personality Traits
> Avoidant Personality Traits
> and Depressive Personality Features

**Course:** The major personality features described previously reflect long-term or chronic traits that are likely to have persisted for several years prior to the present assessment. The clinical syndromes described previously tend to be relatively transient, waxing and waning in their prominence and intensity depending on the presence of environmental stress.

**Axis IV: Psychosocial and Environmental Problems**
In completing the MCMI-III test, this individual identified the following problems that may be complicating or exacerbating his present emotional state. They are listed in order of importance as indicated by the individual. This information should be viewed as a guide for further investigation by the clinician.

> AntiSocial Behavior; Marriage or Family Problems

## TREATMENT GUIDE

If additional clinical data are supportive of the MCMI-III's hypotheses, it is likely that this offender's difficulties can be managed with either brief or extended therapeutic methods. The following guide to treatment planning is oriented toward issues and techniques of a short-term character, focusing on matters that might call for immediate attention, followed by time-limited procedures designed to reduce the likelihood of repeated relapses.

As a first step, it would appear advisable to implement methods to ameliorate this offender's current state of clinical anxiety, depressive hopelessness, somatic or stress difficulties, as well as pathological personality functioning by the rapid implementation of supportive psychotherapeutic measures. With appropriate consultation, targeted psychopharmacologic modifications may also be useful at this initial stage.

Once this offender's more pressing or acute difficulties are adequately stabilized, attention should be directed toward goals that would aid in preventing a recurrence of problems, focusing on circumscribed issues and employing delimited methods such as those discussed in the following paragraphs.

A major thrust of brief therapy for this offender should be to enhance his social interest and competence. Although he should not be pushed beyond tolerable limits, careful and well-reasoned cognitive methods (e.g., Beck, Meichenbaum) may foster the development of more accurate and focused styles of thinking. In addition to working toward the extinction of false beliefs about himself and the attitudes of others toward him, the therapist should be alert to spheres of life in which the offender possesses positive emotional inclinations and should encourage the offender, through interpersonal methods and behavior skill development techniques, to undertake activities consonant with these tendencies.

Although the success of short-term methods may justify an optimistic outlook, the offender's initial receptivity may create the misleading perception that further advances and progress will be rapid. Care should be taken to prevent early treatment success from precipitating a resurfacing of his established ambivalence between wanting social acceptance and fearing that he is placing himself in a vulnerable position. Enabling him to forgo his long-standing expectations of disappointment may require "booster" sessions following initial, short-term success. Support should be provided to ease his fears, particularly his feeling that his efforts may not be sustainable and will inevitably result in social disapproval again.

With appropriate consultation, psychopharmacologic treatment may be considered. Trial periods with a number of agents may be explored to determine whether any effectively increase his energy and affectivity. Such agents should be used with caution, however, because they may activate feelings that the offender is ill-equipped to handle. As noted, attempts to cognitively reorient his problematic attitudes may be useful in motivating interpersonal sensitivity and confidence. Likewise, short-term techniques of behavioral modification may be valuable in strengthening the offender's social skills. Group and family methods may be useful in encouraging and facilitating his acquisition of constructive social attitudes. In these benign settings, he may begin to alter his social image and develop both the motivation and the skills for a more effective interpersonal style. Preceding or combining short-term programs with individual treatment sessions may aid in forestalling untoward recurrences of the discomfort currently experienced by the offender.

Focused treatment efforts for this introversive and passive man are best directed toward countering his withdrawal tendencies. Minimally introspective and evincing diminished affect and energy, he must be prevented, through circumscribed therapies, from becoming increasingly isolated from others, be they discomforting or benign. Energy should be invested to enlarge his social world owing to his tendencies to pursue with diligence only those activities required by his job or by his family obligations. By shrinking his interpersonal milieu, he precludes exposure to new experience. Of course, this is his preference, but such behavior only fosters his isolated and withdrawn existence. To prevent such backsliding and a relapse, the therapist should ensure the continuation of all constructive social activities as well as potential new ones. Otherwise, he may become increasingly lost in asocial and fantasy preoccupations. Excessive social pressure, however, should be avoided because the offender's tolerance and competencies in this area are likely to be limited. Initial brief and focused treatment techniques will aid him in developing more skills in this area.

00964

MCMI-III™ Corrections Report - Revised
Page 10

Sample One ID: 1
Date of Administration: 7/03/2003

## ITEM RESPONSES

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1: 1 | 2: 1 | 3: 2 | 4: 1 | 5: 2 | 6: 2 | 7: 2 | 8: 2 | 9: 2 | 10: 1 |
| 11: 2 | 12: 2 | 13: 2 | 14: 2 | 15: 2 | 16: 1 | 17: 2 | 18: 2 | 19: 2 | 20: 2 |
| 21: 2 | 22: 2 | 23: 1 | 24: 2 | 25: 2 | 26: 1 | 27: 1 | 28: 2 | 29: 1 | 30: 2 |
| 31: 2 | 32: 2 | 33: 2 | 34: 1 | 35: 2 | 36: 2 | 37: 2 | 38: 2 | 39: 2 | 40: 1 |
| 41: 2 | 42: 2 | 43: 2 | 44: 1 | 45: 2 | 46: 2 | 47: 1 | 48: 2 | 49: 2 | 50: 2 |
| 51: 2 | 52: 2 | 53: 2 | 54: 2 | 55: 1 | 56: 1 | 57: 2 | 58: 2 | 59: 1 | 60: 1 |
| 61: 2 | 62: 1 | 63: 2 | 64: 1 | 65: 2 | 66: 2 | 67: 2 | 68: 1 | 69: 2 | 70: 2 |
| 71: 2 | 72: 1 | 73: 2 | 74: 1 | 75: 2 | 76: 2 | 77: 2 | 78: 2 | 79: 2 | 80: 1 |
| 81: 2 | 82: 2 | 83: 2 | 84: 1 | 85: 2 | 86: 1 | 87: 2 | 88: 2 | 89: 2 | 90: 2 |
| 91: 2 | 92: 1 | 93: 2 | 94: 2 | 95: 2 | 96: 2 | 97: 2 | 98: 2 | 99: 2 | 100: 2 |
| 101: 2 | 102: 2 | 103: 2 | 104: 2 | 105: 1 | 106: 2 | 107: 2 | 108: 1 | 109: 1 | 110: 2 |
| 111: 1 | 112: 2 | 113: 2 | 114: 1 | 115: 2 | 116: 2 | 117: 2 | 118: 2 | 119: 2 | 120: 1 |
| 121: 2 | 122: 2 | 123: 1 | 124: 2 | 125: 2 | 126: 2 | 127: 2 | 128: 2 | 129: 2 | 130: 1 |
| 131: 1 | 132: 2 | 133: 1 | 134: 2 | 135: 1 | 136: 2 | 137: 1 | 138: 2 | 139: 2 | 140: 2 |
| 141: 2 | 142: 1 | 143: 2 | 144: 2 | 145: 2 | 146: 2 | 147: 1 | 148: 1 | 149: 1 | 150: 2 |
| 151: 2 | 152: 2 | 153: 2 | 154: 2 | 155: 2 | 156: 2 | 157: 2 | 158: 2 | 159: 2 | 160: 1 |
| 161: 2 | 162: 2 | 163: 2 | 164: 2 | 165: 2 | 166: 2 | 167: 1 | 168: 2 | 169: 2 | 170: 2 |
| 171: 1 | 172: 1 | 173: 2 | 174: 2 | 175: 1 | | | | | |

End of Report

00965

| CODE | FUND | | | | BUDGET YEAR starting 7/1/...?: | 2005 | okay | | | | | Updated: | | 03/17/2005 | | 05CST01d | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Header / Assumptions block:**

- 1 - GENERAL
- 2 - BOND
- 3 - REIMB
- 4 - IWF
- 5 - LOCAL ASSISTANCE
- 6 - FEDERAL
- 7 - ASSET FORFEITURE, SPC'L DEF
- 8 - PETROLEUM VIOLATION ESCRC
- 9 - LEASE PAYMENTS, GF
- 0 - LEASE PAYMENTS, REIMB
- 20 - SPEC'L LEGISLATION Funding

FILE ?: SB5358CA  <<— Filename
ORGANIZATION CODE ?: 5355  CSP- CORCORAN
FISCAL PROCESS CODE ?: 7  FINANCE LETTERS
(Abbrv to 18 Chrs) PURPOSE ?: Coleman-Corcoran Staffing <<— Purpose
NEW BEDS_ Number of INMATES ?:  Design:  O/C:
EFFECTIVE DATES - START ?: Jul-05  STOP?: parm
WHAT'S DRIVING Code ?: 800
Note below, for each fiscal year:— CURRENT Yr  BUDGET Yr
MONTHS REQUIRED? (0.1-12) ?:  12.0
STANDARD OFFICE EQUIP ? ("A"=AUTO) :  =NO std eq  A  =Std eq incld
Type "R" to REVERSE posn E&T&'D before 2001:  =@ MID  =@ MID  <-reset w/ space key
REFERENCE NAME/PHONE ?: QUAN LE/323-3877

Updated: | GSI BU 06 | ☒
Price | ☐
Retire rates | ☒
Hlth premium | ☒
Dental prem. | ☐
Salary Scale | ☒
GSI BU 03 | ☒
GSI BU 17 | ☒

******* ASSUMPTIONS: *******
*** Rates for price — No change
*** Equipment rates — No change
* GSI-06RAFn  CY= 5% + 5%  BY= 5% +5%
* GSI-06Xcluded=  7.5% + 5%  7.5% + 5%
* GSI other&excluded  0.00%  0.00%
*** Pay Differentials **NOT INCLUDED in calculations
*** SISA / MSA  **NOT INCLUDED in calculations
*** RETIREMENT R/ **per CalPERS Circular Ltr 200-160-04(5/24/04)
** SALARY RANGE **as of July 1, 2004 per SCO Tab, adjusted for 7K & HAM
*** SALARY SAVING **for all EXCEPT: C.O.,Sgt,LI,RN,MTA,SupCook I, PsychTechI/C
** Health premium ** 11.4% off 1/05 per BL 04-22  PRICE: 0.0%

| | | FSCL | | | | 05CST01d | 03/17/2005 | COLORS: | CY-DarkGreen | | BY - blue | | | | (test PCA) | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| PCA | RU | ADJ YR | WHY | FND | CLAS_TITLE | CODE | MIN | MAX | RET | # OF POS | AUTH REQ? (Y) | AUTH POS REQUIRED | AUTH POS SALARY | MOS REQ? 1-12 | PY NEED | PY SALARY | SHIFT DIFF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21000 | 201 | B | 800 | 1 | TEMP HELP - SECURITY | 9999 | 3,308 | 5,386 | 3 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | | |
| 22010 | 211 | B | 800 | 1 | TEMP HELP - FEEDING | 9999 | 2,709 | 3,639 | 2 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | | |
| 52050 | 220 | B | 800 | 1 | TEMP HELP - PSYCH | 9999 | 4,498 | 5,904 | 2 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | | |
| 52050 | 216 | B | 800 | 1 | TEMP HELP - FACILITIES OPS | 9999 | 5,060 | 5,060 | 2 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | | |
| 22100 | 229 | B | 800 | 1 | TEMP HELP - RELIGION | 9999 | 3,539 | 4,548 | 1 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | | |
| 24000 | 281 | B | 800 | 1 | TEMP HELP - ADMIN | 9999 | 4,111 | 4,997 | 1 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | | |
| 21000 | 201 | B | 800 | 1 | OVERTIME - SECURITY | 9998 | 3,308 | 5,386 | 3 | | Y | | | 12.0 | | | |
| 22010 | 211 | B | 800 | 1 | OVERTIME - FEEDING | 9998 | 2,709 | 3,639 | 2 | | Y | | | 12.0 | | | |
| 52030 | 213 | B | 800 | 1 | OVERTIME - MEDICAL | 9998 | 4,809 | 5,914 | 2 | | Y | | | 12.0 | | | |
| 52080 | 220 | B | 800 | 1 | OVERTIME - PSYCH | 9998 | 4,498 | 5,904 | 2 | | Y | | | 12.0 | | | |
| 22070 | 222 | B | 800 | 1 | OVERTIME - COUNSELING | 9998 | 4,412 | 8,815 | 3 | | Y | | | 12.0 | | | |
| 22080 | 223 | B | 800 | 1 | OVERTIME - RECORDS | 9998 | 2,632 | 4,155 | 1 | | Y | | | 12.0 | | | |
| 63100 | 231 | B | 800 | 1 | OVERTIME - EDUCATION | 9998 | 3,574 | 5,744 | 2 | | Y | | | 12.0 | | | |
| 24000 | 261 | B | 800 | 1 | OVERTIME - ADMIN | 9998 | 4,111 | 4,997 | 1 | | Y | | | 12.0 | | | |
| 52030 | 213 | B | 800 | 1 | Psychiatric Techn (Safety) | 8253 | 2,748 | 3,612 | 2 | 12.9 | Y | 12.9 | 492,264 | 12.0 | 12.9 | 492,264 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Psych Techn (Safety) | 8253 | | | 2 | 0.0 | N | 0.0 | 0 | 12.0 | 0.0 | 0 | 46,440 |
| 52030 | 213 | B | 800 | 1 | Medical Transcriber | 1177 | 2,419 | 2,941 | 1 | 1.0 | Y | 1.0 | 32,160 | 12.0 | 1.0 | 32,160 | 0 |
| 52030 | 213 | B | 800 | 1 | Office Asst -Typing | 1379 | 2,120 | 2,641 | 1 | 0.8 | Y | 0.8 | 22,901 | 12.0 | 0.8 | 22,901 | 0 |
| 52030 | 213 | B | 800 | 1 | Ofc Techn -Typing | 1139 | 2,510 | 3,050 | 1 | 1.2 | Y | 1.2 | 40,032 | 12.0 | 1.2 | 40,032 | 0 |
| 52030 | 213 | B | 800 | 1 | Ofc Services Suprvr II -Gen | 1150 | 2,759 | 3,355 | 5 | 0.5 | Y | 0.5 | 18,342 | 12.0 | 0.5 | 18,342 | 0 |
| 52030 | 213 | B | 800 | 1 | Psychiatric Soc Worker, CF | 9282 | 3,321 | 4,139 | 2 | 4.4 | Y | 4.4 | 196,944 | 12.0 | 4.4 | 196,944 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Psychiatric Soc Worker, CF | 9282 | | | 2 | 0.0 | N | 0.0 | 0 | 12.0 | 0.0 | 0 | 31,680 |
| 52030 | 213 | B | 800 | 1 | Staff Psychiatrist,CF | 9272 | 8,528 | 11,181 | 2 | 5.3 | Y | 5.3 | 826,746 | 12.0 | 5.3 | 826,746 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R Staff Psychiatrist, CF | 9272 | | | 2 | 0.0 | Y | 0.0 | 0 | 12.0 | 0.0 | 0 | 139,920 |
| 52030 | 213 | B | 800 | 1 | Psychologist - Clinical, CF | 9283 | 4,498 | 5,904 | 2 | 12.2 | Y | 12.2 | 761,428 | 12.0 | 12.2 | 761,428 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Psychologist - Clinical, CF | 9283 | | | 2 | 0.0 | N | 0.0 | 0 | 12.0 | 0.0 | 0 | 43,920 |
| 52030 | 213 | B | 800 | 1 | Recr Therapist | 9286 | 2,891 | 3,559 | 2 | 4.1 | Y | 4.1 | 159,654 | 12.0 | 4.1 | 159,654 | 0 |
| 63100 | 231 | B | 800 | 1 | R&R, Rec Therapist | 9286 | | | 2 | 0.0 | N | 0.0 | 0 | 12.0 | 0.0 | 0 | 9,840 |
| 52030 | 213 | B | 800 | 1 | Registered Nurse,CF | 9275 | 4,609 | 5,914 | 2 | 3.1 | Y | 3.1 | 195,728 | 12.0 | 3.1 | 195,728 | 1,519 |
| 52030 | 213 | B | 800 | 1 | Supvng Psychiatric Soc Worker I, CF | 9291 | 3,750 | 4,558 | 7 | 1.8 | Y | 1.8 | 89,726 | 12.0 | 1.8 | 89,726 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Supvng Psychiatric Soc Worker I, CF | 9291 | | | 7 | 0.0 | N | 0.0 | 0 | 12.0 | 0.0 | 0 | 12,980 |
| 52080 | 220 | B | 800 | 1 | Sr Psychiatric Tech (Safety) | 8252 | 3,080 | 4,101 | 2 | 4.0 | Y | 4.0 | 172,344 | 12.0 | 4.0 | 172,344 | 0 |
| | Unk | B | 800 | 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed, e.g.,one-times="2") | | | | | | Y | | ERR | | | | |
| | Unk | B | 800 | 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed, e.g.,one-times="2") | | | | | | Y | | ERR | | | | |

| TOTAL COST | | | | | | | | | | 51.3 | | 51.3 | 2,808,287 | | 51.3 | 2,808,287 | 286,279 |

| CODE | FUND | | |
|---|---|---|---|
| 1 - | GENERAL | BUDGET YEAR starting 7/1/....?: | 2005 |
| 2 - | BOND | FILE ?: | 5B5358CA |
| 3 - | REIMB | ORGANIZATION CODE ?: | 5358 |
| 4 - | IWF | FISCAL PROCESS CODE ?: | 7 |
| 5 - | LOCAL ASSISTANCE | (Abbrv to 16 Chrs)  PURPOSE ?: | Coleman-Core |
| 8 - | FEDERAL | NEW BEDS_ Number of INMATES ?: | Design: |
| 7 - | ASSET FORFEITURE, SPC'L DEF | EFFECTIVE DATES - START ?: | Jul-05 |
| 8 - | PETROLEUM VIOLATION ESCRC | WHAT'S DRIVING Code ?: | 800 |
| 9 - | LEASE PAYMENTS, GF | Note below, for each fiscal year :——— | CURRENT Yr |
| 0 - | LEASE PAYMENTS, REIMB | MONTHS REQUIRED? (0.1-12) ?: | |
| 20 - | SPEC'L LEGISLATION Funding | STANDARD OFFICE EQUIP ? ("A"=AUTO) : | |
| | | Type "R" to REVERSE posn ESTB'D before 2001: | |
| | | REFERENCE NAME/PHONE ?: | QUAN LE/023-5) |

05CST016                03/17/2005

| PCA | RU | FSCL ADJ YR WHY FND | CLAS_TITLE | CODE | TEMP HELP | OVERTIME | HOLIDAY/ PHYS FIT | SAL SVGS $ | SAL SVGS PY ADJ | HEALTH/ DNTL/VISION | RETIRMNT | WRKR'S COMP | OASDI | MEDICARE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21000 | 201 | B 800 1 | TEMP HELP - SECURITY | 9999 | 0 | | | | | 0 | 0 | 0 | 0 | 0 |
| 22010 | 211 | B 800 1 | TEMP HELP - FEEDING | 9999 | 0 | | | | | 0 | 0 | 0 | 0 | 0 |
| 52080 | 220 | B 800 1 | TEMP HELP - PSYCH | 9999 | 0 | | | | | 0 | 0 | 0 | 0 | 0 |
| 22050 | 216 | B 800 1 | TEMP HELP - FACILITIES OPS | 9999 | 0 | | | | | 0 | 0 | 0 | 0 | 0 |
| 22100 | 229 | B 800 1 | TEMP HELP - RELIGION | 9999 | 0 | | | | | 0 | 0 | 0 | 0 | 0 |
| 24030 | 281 | B 800 1 | TEMP HELP - ADMIN | 9999 | 0 | | | | | 0 | 0 | 0 | 0 | 0 |
| 21000 | 201 | B 800 1 | OVERTIME - SECURITY | 9998 | | 0 | | | | | | | | |
| 22010 | 211 | B 800 1 | OVERTIME - FEEDING | 9998 | | 0 | | | | | | | | |
| 52030 | 213 | B 800 1 | OVERTIME - MEDICAL | 9998 | | 0 | | | | | | | | |
| 52060 | 220 | B 800 1 | OVERTIME - PSYCH | 9998 | | 0 | | | | | | | | |
| 22070 | 222 | B 800 1 | OVERTIME - COUNSELING | 9998 | | 0 | | | | | | | | |
| 22080 | 223 | B 800 1 | OVERTIME - RECORDS | 9998 | | 0 | | | | | | | | |
| 53100 | 231 | B 800 1 | OVERTIME - EDUCATION | 9998 | | 0 | | | | | | | | |
| 24030 | 261 | B 800 1 | OVERTIME - ADMIN | 9998 | | 0 | | | | | | | | |
| 52030 | 213 | B 800 1 | Psychiatric Techn (Safety) | 8253 | 0 | 0 | 0 | 0 | 0.0 | 80,695 | 102,256 | 19,592 | 0 | 7,138 |
| 52030 | 213 | B 800 1 | R&R, Psych Techn (Safety) | 8253 | 0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 | 0 | 673 |
| 52030 | 213 | B 800 1 | Medical Transcriber | 1177 | 0 | 0 | 0 | (1,808) | (0.1) | 4,705 | 5,006 | 1,260 | 1,694 | 443 |
| 52030 | 213 | B 800 1 | Office Asst -Typing | 1379 | 0 | 0 | 0 | (1,145) | 0.0 | 3,784 | 3,565 | 911 | 1,349 | 315 |
| 52030 | 213 | B 800 1 | Ofc Techn -Typing | 1139 | 0 | 0 | 0 | (2,002) | (0.1) | 5,176 | 6,232 | 1,593 | 2,356 | 551 |
| 52030 | 213 | B 800 1 | Ofc Services Supervr II -Gen | 1150 | 0 | 0 | 0 | (917) | 0.0 | 2,353 | 2,855 | 730 | 1,080 | 253 |
| 52030 | 213 | B 800 1 | Psychiatric Soc Worker, CF | 9282 | 0 | 0 | 0 | (9,847) | (0.2) | 19,781 | 38,666 | 7,636 | 0 | 2,713 |
| 52030 | 213 | B 800 1 | R&R, Psychiatric Soc Worker, CF | 8282 | 0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 | 0 | 459 |
| 52030 | 213 | B 800 1 | Staff Psychiatrist,CF | 9272 | 0 | 0 | 0 | (31,337) | (0.3) | 23,525 | 123,684 | 24,944 | 0 | 8,603 |
| 52030 | 213 | B 800 1 | R&R Staff Psychiatrist, CF | 9272 | 0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 | 0 | 2,029 |
| 52030 | 213 | B 800 1 | Psychologist - Clinical, CF | 9283 | 0 | 0 | 0 | (38,071) | (0.8) | 54,576 | 150,263 | 30,305 | 0 | 10,489 |
| 52030 | 213 | B 800 1 | R&R, Psychologist - Clinical, CF | 9283 | 0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 | 0 | 637 |
| 52030 | 213 | B 800 1 | Recr Therapist | 8286 | 0 | 0 | 0 | (7,983) | (0.2) | 18,369 | 31,507 | 8,354 | 0 | 2,199 |
| 83100 | 231 | B 800 1 | R&R, Rec Therapist | 9286 | 0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0 | 0 | 143 |
| 52030 | 213 | B 800 1 | Registered Nurse,CF | 9275 | 0 | 0 | 1,070 | 0 | 0.0 | 14,586 | 41,196 | 7,790 | 0 | 2,676 |
| 52030 | 213 | B 800 1 | Supvng Psychiatric Soc Worker I, CF | 9291 | 0 | 0 | 0 | (4,486) | (0.1) | 7,999 | 17,707 | 3,571 | 0 | 1,236 |
| 52030 | 213 | B 800 1 | R&R, Supvng Psychiatric Soc Worker I, CF | 9291 | 0 | 0 | 0 | 0 | 0.0 | 0 | 2,692 | 0 | 0 | 188 |
| 52080 | 220 | B 800 1 | Sr Psychiatric Tech (Safety) | 8252 | 0 | 0 | 0 | (9,617) | (0.2) | 17,878 | 34,011 | 8,859 | 0 | 2,374 |
| | Unk | B 800 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed, e.g.,one-times="2") | | | | | | | | | | | |
| | Unk | B 800 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed, e.g.,one-times="2") | | | | | | | | | | | |
| | | | TOTAL COST | | 0 | 0 | 1,070 | (106,013) | (1.8) | 233,371 | 559,842 | 111,767 | 6,881 | 43,349 |

| CODE | FUND |
|---|---|
| 1 - | GENERAL |
| 2 - | BOND |
| 3 - | REIMB |
| 4 - | IWF |
| 5 - | LOCAL ASSISTANCE |
| 6 - | FEDERAL |
| 7 - | ASSET FORFEITURE, SPC'L DEF |
| 8 - | PETROLEUM VIOLATION ESCRC |
| 9 - | LEASE PAYMENTS, GF |
| 0 - | LEASE PAYMENTS, REIMB |
| 20 - | SPEC'L LEGISLATION Funding |

BUDGET YEAR starting 7/1/....?: **2005**
FILE ?: **5B5358CA**
ORGANZATION CODE ?: **5355**
FISCAL PROCESS CODE ?: **7**
(Abbrv to 16 Chrs)  PURPOSE ?: **Coleman-Core**
NEW BEDS_ Number of INMATES ?: **Design;**
EFFECTIVE DATES  - START ?: **Jul-05**
WHAT'S DRIVING Code ?: **800**
Note below, for each fiscal year?: **CURRENT Yr**
MONTHS REQUIRED? (0.1-12 ?):
STANDARD OFFICE EQUIP ? ("A"=AUTO):
Type "R" to REVERSE posn ESTB'D before 2001:
REFERENCE NAME/PHONE ?: **QUAN LE/323-**

05CST01d     03/17/2005

| PCA | RU | FSCL ADJ YR | WHY | FND | CLAS_TITLE | CODE | TOTAL BENEFITS | GENERAL EXPENSE | PRNTG | COMM | POSTG | INSUR | TRVL -IN | TRVL -OUT | TRNG | FAC OPS | UTIL | C&PS-INT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21000 | 201 | B | 800 | 1 | TEMP HELP - SECURITY | 9999 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 22010 | 211 | B | 800 | 1 | TEMP HELP - FEEDING | 9999 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 52060 | 220 | B | 800 | 1 | TEMP HELP - PSYCH | 9999 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 22050 | 218 | B | 800 | 1 | TEMP HELP - FACILITIES OPS | 9999 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 22100 | 229 | B | 800 | 1 | TEMP HELP - RELIGION | 9999 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 24030 | 261 | B | 800 | 1 | TEMP HELP - ADMIN | 9999 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 21000 | 201 | B | 800 | 1 | OVERTIME - SECURITY | 9998 | | | | | | | | | | | | |
| 22010 | 211 | B | 800 | 1 | OVERTIME - FEEDING | 9998 | | | | | | | | | | | | |
| 52030 | 213 | B | 800 | 1 | OVERTIME - MEDICAL | 9998 | | | | | | | | | | | | |
| 52060 | 220 | B | 800 | 1 | OVERTIME - PSYCH | 9998 | | | | | | | | | | | | |
| 22070 | 222 | B | 800 | 1 | OVERTIME - COUNSELING | 9998 | | | | | | | | | | | | |
| 22080 | 223 | B | 800 | 1 | OVERTIME - RECORDS | 9998 | | | | | | | | | | | | |
| 63100 | 231 | B | 800 | 1 | OVERTIME - EDUCATION | 9998 | | | | | | | | | | | | |
| 24030 | 261 | B | 800 | 1 | OVERTIME - ADMIN | 9998 | | | | | | | | | | | | |
| 52030 | 213 | B | 800 | 1 | Psychiatric Techn (Safety) | 8253 | 189,683 | 3,005 | 208 | 13 | 0 | 0 | 2,593 | 0 | 1,135 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Psych Techn (Safety) | 8253 | 673 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Medical Transcriber | 1177 | 13,328 | 238 | 16 | 1 | 0 | 0 | 201 | 0 | 88 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Office Asst -Typing | 1379 | 9,904 | 199 | 13 | 1 | 0 | 0 | 151 | 0 | 70 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Ofc Techn -Typing | 1139 | 15,910 | 260 | 18 | 1 | 0 | 0 | 221 | 0 | 97 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Ofc Services Supvr II -Gen | 1150 | 7,271 | 116 | 8 | 1 | 0 | 0 | 101 | 0 | 44 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Psychiatric Soc Worker, CF | 9282 | 69,178 | 991 | 67 | 4 | 0 | 0 | 844 | 0 | 370 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Psychiatric Soc Worker, CF | 9282 | 459 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Staff Psychiatrist,CF | 9272 | 180,766 | 1,180 | 80 | 5 | 0 | 0 | 1,005 | 0 | 440 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R Staff Psychiatrist, CF | 9272 | 2,029 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Psychologist - Clinical, CF | 9283 | 245,635 | 2,736 | 186 | 12 | 0 | 0 | 2,332 | 0 | 1,021 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Psychologist - Clinical. CF | 9283 | 637 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Recr Therapist | 9288 | 58,410 | 920 | 62 | 4 | 0 | 0 | 784 | 0 | 343 | 0 | 0 | 0 |
| 63100 | 231 | B | 800 | 1 | R&R, Rec Therapist | 9288 | 143 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Registered Nurse,CF | 9275 | 65,448 | 732 | 50 | 3 | 0 | 0 | 623 | 0 | 273 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | Supvng Psychiatric Soc Worker I, CF | 9291 | 30,513 | 401 | 27 | 2 | 0 | 0 | 342 | 0 | 150 | 0 | 0 | 0 |
| 52030 | 213 | B | 800 | 1 | R&R, Supvng Psychiatric Soc Worker I, CF | 9291 | 2,860 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 52030 | 220 | B | 800 | 1 | Sr Psychiatric Tech (Safety) | 8252 | 61,123 | 897 | 81 | 4 | 0 | 0 | 764 | 0 | 334 | 0 | 0 | 0 |
| | Unk | B | 800 | 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed. e.g.,one-times="2") | | | | | | | | | | | | | |
| | Unk | B | 800 | 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed. e.g.,one-times="2") | | | | | | | | | | | | | |
| | | | | | TOTAL COST | | 955,010 | 11,567 | 794 | 51 | 0 | 0 | 9,971 | 0 | 4,365 | 0 | 0 | 0 |

| CODE | FUND | |
|---|---|---|
| 1 - | GENERAL | |
| 2 - | BOND | |
| 3 - | REIMB | |
| 4 - | IWF | |
| 5 - | LOCAL ASSISTANCE | |
| 6 - | FEDERAL | |
| 7 - | ASSET FORFEITURE, SPC'L DEF | |
| 8 - | PETROLEUM VIOLATION ESCRC | |
| 9 - | LEASE PAYMENTS, GF | |
| 0 - | LEASE PAYMENTS, REIMB | |
| 20 - | SPEC'L LEGISLATION Funding | |

BUDGET YEAR starting 7/1/....?:  __2005__
FILE ?:  __5B535BCA__
ORGANIZATION CODE ?:  __5358__
FISCAL PROCESS CODE ?:  __7__
(Abbrv to 16 Chrs)   PURPOSE ?: Coleman-Corcc
NEW BEDS_ Number of INMATES ?:  Design:
EFFECTIVE DATES  ·  START ?:  __Jul-05__
WHAT'S DRIVING Code ?:  __800__
Note below, for each fiscal year:———  CURRENT Yr
MONTHS REQUIRED? (0.1-12) ?:  ___
STANDARD OFFICE EQUIP ? ("A"=AUTO) :  ___
Type "R" to REVERSE posn ESTB'D before 2001:  ___
REFERENCE NAME/PHONE ?: QUAN LE/223-

05C5T01d                    03/17/2005

| PCA | RU | FSCL ADJ YR | WHY | FND | CLAS_TITLE | CODE | C&PS_EXT | CONSOL DATA CTR | DATA PROC | EQUIP | OTHER ITEMS | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21000 | 201 | B | 800 | 1 | TEMP HELP - SECURITY | 9999 | | | | | 0 | 0 |
| 22010 | 211 | B | 800 | 1 | TEMP HELP - FEEDING | 9999 | | | | | 0 | 0 |
| 52060 | 220 | B | 800 | 1 | TEMP HELP - PSYCH | 9999 | | | | | 0 | 0 |
| 22050 | 216 | B | 800 | 1 | TEMP HELP - FACILITIES OPS | 9999 | | | | | 0 | 0 |
| 22100 | 229 | B | 800 | 1 | TEMP HELP - RELIGION | 9999 | | | | | 0 | 0 |
| 24030 | 281 | B | 800 | 1 | TEMP HELP - ADMIN | 9999 | | | | | 0 | 0 |
| 21000 | 201 | B | 800 | 1 | OVERTIME - SECURITY | 9998 | | | | | | 0 |
| 22010 | 211 | B | 800 | 1 | OVERTIME - FEEDING | 9998 | | | | | | 0 |
| 52030 | 213 | B | 800 | 1 | OVERTIME - MEDICAL | 9998 | | | | | | 0 |
| 52080 | 220 | B | 800 | 1 | OVERTIME - PSYCH | 9998 | | | | | | 0 |
| 22070 | 222 | B | 800 | 1 | OVERTIME - COUNSELING | 9998 | | | | | | 0 |
| 22080 | 223 | B | 800 | 1 | OVERTIME - RECORDS | 9998 | | | | | | 0 |
| 63100 | 231 | B | 800 | 1 | OVERTIME - EDUCATION | 9998 | | | | | | 0 |
| 24030 | 281 | B | 800 | 1 | OVERTIME - ADMIN | 9998 | | | | | | 0 |
| 52030 | 213 | B | 800 | 1 | Psychiatric Techn (Safety) | 8253 | 0 | 0 | 0 | 0 | 0 | 858,899 |
| 52030 | 213 | B | 800 | 1 | R&R. Psych Techn (Safety) | 8253 | 0 | 0 | 0 | 0 | 0 | 47,113 |
| 52030 | 213 | B | 800 | 1 | Medical Transcriber | 1177 | 0 | 0 | 0 | 4,326 | 0 | 46,748 |
| 52030 | 213 | B | 800 | 1 | Office Asst -Typing | 1379 | 0 | 0 | 0 | 3,461 | 0 | 35,555 |
| 52030 | 213 | B | 800 | 1 | Ofc Techn -Typing | 1139 | 0 | 0 | 0 | 5,192 | 0 | 59,729 |
| 52030 | 213 | B | 800 | 1 | Ofc Services Suprvr II -Gen | 1150 | 0 | 0 | 0 | 2,253 | 0 | 27,221 |
| 52030 | 213 | B | 800 | 1 | Psychiatric Soc Worker, CF | 9282 | 0 | 0 | 0 | 19,830 | 0 | 278,381 |
| 52030 | 213 | B | 800 | 1 | R&R, Psychiatric Soc Worker, CF | 9282 | 0 | 0 | 0 | 0 | 0 | 32,139 |
| 52030 | 213 | B | 800 | 1 | Staff Psychiatrist,CF | 9272 | 0 | 0 | 0 | 27,139 | 0 | 808,044 |
| 52030 | 213 | B | 800 | 1 | R&R Staff Psychiatrist, CF | 9272 | 0 | 0 | 0 | 0 | 0 | 141,949 |
| 52030 | 213 | B | 800 | 1 | Psychologist - Clinical, CF | 9283 | 0 | 0 | 0 | 62,470 | 0 | 1,037,749 |
| 52030 | 213 | B | 800 | 1 | R&R, Psychologist - Clinical, CF | 9283 | 0 | 0 | 0 | 0 | 0 | 44,557 |
| 52030 | 213 | B | 800 | 1 | Rec/ Therapist | 9286 | 0 | 0 | 0 | 4,136 | 0 | 216,330 |
| 63100 | 231 | B | 800 | 1 | R&R, Rec Therapist | 9286 | 0 | 0 | 0 | 0 | 0 | 9,983 |
| 52030 | 213 | B | 800 | 1 | Registered Nurse,CF | 9275 | 0 | 0 | 0 | 704 | 775 | 267,925 |
| 52030 | 213 | B | 800 | 1 | Supvng Psychiatric Soc Worker I, CF | 9291 | 0 | 0 | 0 | 9,217 | 0 | 125,692 |
| 52030 | 216 | B | 800 | 1 | R&R, Supvng Psychiatric Soc Worker I, CF | 9291 | 0 | 0 | 0 | 0 | 0 | 15,640 |
| 52060 | 220 | B | 800 | 1 | Sr Psychiatric Tech (Safety) | 6252 | 0 | 0 | 0 | 4,036 | 0 | 230,946 |
| | Unk | B | 800 | 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed. e.g.,one-times="2") | | | | | | | 0 |
| | Unk | B | 800 | 1 | OTHER: (specify & add ADJUSTMENT CODE, if needed. e.g.,one-times="2") | | | | | | | 0 |
| | | | | | TOTAL COST | | 0 | 0 | 0 | 142,764 | 775 | 4,115,000 |

**STATE OF CALIFORNIA**
**FINANCE LETTER - COVER SHEET**
**FOR FISCAL YEAR** 2005/06
DF-46 (WORD Version)(REV 3/00)
*Please report dollars in thousands.*

Department of Finance
915 L Street
Sacramento, CA 95814
IMS Mail Code: A-15

| CP #<br>CSD | PRIORITY NO. | ORG. CODE<br>5240 | DEPARTMENT<br>Corrections |
|---|---|---|---|
| PROGRAM<br>22 | ELEMENT<br>.20 | COMPONENT | |

TITLE OF PROPOSED CHANGE
COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM

SUMMARY OF PROPOSED CHANGES –

THE CALIFORNIA DEPARTMENT OF CORRECTIONS (CDC) IS REQUESTING 547.5 POSITIONS (527.5 PY'S ) AND $42,269,000 IN ASSOCIATED FUNDING IN FY 2005/06 TO IMPLEMENT THE MENTAL HEALTH SERVICES DELIVERY SYSTEM (MHSDS) PROGRAM GUIDELINES. IMPLEMENTING THESE GUIDELINES WILL PROVIDE COST EFFECTIVE MENTAL HEALTH SERVICES THAT OPTIMIZE THE LEVEL OF FUNCTIONING OF SERIOUSLY MENTALLY DISORDERED INMATES AND PAROLEES.

|  | Current Year | Budget Year |
|---|---|---|
| POS | 0.0 | 547.5 |
| PYs | 0.0 | 527.5 |
| $$ | $0 | $42,269 |

| REQUIRES LEGISLATION<br>☐ YES<br>☒ NO | CODE SECTION (S) TO BE AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND MARK IF APPLICABLE<br>☒ ONE-TIME COST  ☐ FUTURE SAVINGS<br>☐ FULL-YEAR COSTS  ☐ REVENUE<br>☐ FACILITIES/CAPITAL COSTS |
|---|---|---|

| PREPARED BY<br>DR. SHAMA CHAIKEN<br>(916) 445-4508 | DATE<br>4/1/05 | REVIEWED BY<br>MARY KOSTIEW<br>(916) 650-6728 | DATE<br>4/1/05 |
|---|---|---|---|
| DEPARTMENT DIRECTOR | DATE<br>4/4/05 | AGENCY SECRETARY | DATE |

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?

☐ YES ☒ NO    ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

FOR INFORMATION TECHNOLOGY REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY STUDY REPORT (FSR) WAS APPROVED BY DOIT.

| DATE | PROJECT # | FSR ☐ | OR | SPR ☐ |
|---|---|---|---|---|

DOF ANALYST USE
(ADDITIONAL REVIEW)

CAPITAL OUTLAY ☐    TIRU ☐    FSCU ☐    OSAE ☐    CALSTARS ☐

## CALIFORNIA DEPARTMENT OF CORRECTIONS
## SPRING FINANCE LETTER
## HEALTH CARE SERVICES DIVISION
## FISCAL YEAR 2005-06
## COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM

| Resources | FY 2004/05 | FY 2005/06 |
|---|---|---|
| Dollars (Thousands) | $0 | $42,269 |
| Positions | 0 | 547.5 |
| PY's | 0 | 527.5 |

### PURPOSE:
This Finance Letter is requesting $42.3 million in FY 2005/06 for 547.5 positions and associated costs for new Mental Health Services Delivery System (MHSDS) guidelines to be implemented July 1, 2005.

Mental Health Treatment is provided in the California Department of Corrections (CDC) through the Mental Health Services Delivery System (MHSDS). The intent of the MHSDS is to advance the Department's mission to protect the public by providing timely, cost-effective mental health services that optimize the level of individual functioning of seriously mentally disordered inmates and parolees in the least restrictive environment.

The court case *Coleman v. Schwarzenegger et. al.* was filed contending that the CDC was violating Eighth and Fourteenth Amendments of the United States Constitution by providing inadequate mental health care to inmates throughout the prison system. In 1997, the MHSDS was established and created preliminary inmate mental health program guidelines, now those guidelines need to be adjusted as the program encompasses continuing litigation.

### BENEFITS:
Implementing the revised MHSDS Program Guides will meet court ordered requirements to provide constitutionally adequate mental health treatment to inmates. Implementation of the new MHSDS Program Guides, as well as the IMSP Policies and Procedures regarding Mental Health Quality Management, will result in the reduction of costs associated with the *Coleman* case. The MHSDS Program Guides also address issues raised in the *Clark* and *Armstrong* cases against CDC. The Program Guides include requirements for language translation and for clinicians to ensure that disabled inmates receive appropriate accommodation and equally effective communication during clinical contacts.

### Budget Management Branch Staff Comments/Concerns:
Current litigation costs can create a substantial fiscal impact on the Department of Corrections. BMB concurs with the changes. However, the implementation of new program changes should be evaluated at a later date and adjusted accordingly.

Contact Person: Mary Kostiew                    Phone Number: (916) 650-6728

- 1 -

00971

CALIFORNIA DEPARTMENT OF CORRECTIONS
FINANCE LETTER/ MAY REVISE
COLEMAN GUIDELINES TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM
FISCAL YEAR 2005/2006

## A. Nature of Request

This Finance Letter is requesting $42.3 million for 547.5 Positions and associated costs for new Mental Health Services Delivery System (MHSDS) guidelines to be implemented July 1, 2005. The proposal will also require an augmentation for 296.1 additional positions in FY 2006/07.

Mental Health Treatment is provided in the California Department of Corrections (CDC) through the Mental Health Services Delivery System (MHSDS). The intent of the MHSDS is to advance the Department's mission to protect the public by providing timely, cost-effective mental health services that optimize the level of individual functioning of seriously mentally disordered inmates and parolees in the least restrictive environment.

The court case *Coleman v. Schwarzenegger et. al.,* was filed contending that the CDC was violating Eighth and Fourteenth Amendments of the United States Constitution by providing inadequate mental health care to inmates throughout the prison system. In 1997, CDC issued a preliminary version of MHSDS Program Guides, which established preliminary policies and procedures to provide constitutionally adequate mental health services at all CDC institutions. Other court cases including *Clark* and *Armstrong,* require that CDC staff provide reasonable accommodation to inmates with disabilities, and ensure equally effective communication with disabled inmates during contacts of any kind within the MHSDS.

Since 1997, details of the MHSDS Program Guides have been negotiated with all parties in the *Coleman* case in order to develop a final version of the MHSDS Program Guides. Implementing these policy and procedural changes this is an integral part of the strategy to exit the *Coleman* case and to reduce costs related to this litigation. In addition, one of the goals and objectives of the CDC is to take responsibility and accountability for the rehabilitation of offenders and provide training, counseling and support services.

In order to implement the revised MHSDS Program Guides, the CDC Health Care Services Division (HCSD) and Institutions Division are requesting the following positions (see Alternative A staffing summary):

### Fiscal Year 2005/06 Request:

**1.    37.1 Permanent Positions for Group Therapy in the Correctional Clinical Case Management System (CCCMS) General Population**
This Finance Letter requests the following permanent positions as a result of the revised Mental Health Program Guidelines (Program Guides) for the CCCMS

population in the GP: *20.8* Psychiatric Technicians, and *16.3* Recreation Therapists.

**2.    12. 2 Permanent Positions for the Enhanced Outpatient Program (EOP)**
This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the EOP population in the GP: *12.2* Psychiatric Technician

**3.    5.0 Permanent Positions for the Administrative Segregation Unit (ASU), New Stand Alone Building (Non-MHSDS) Population**
This Finance Letter requests *5.0* Psychiatric Social Workers, as permanent positions to provide follow up evaluations on positive mental health screenings of inmates in the ASU population.

**4.    83.7 Permanent Positions for the ASU CCCMS Population**
This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the CCCMS population in the ASU: *25.8* Clinical Psychologists, *12.9* Psychiatric Social Workers, *25.0* Psychiatric Technicians, *10.3* Correctional Officers for ASU and SHU, and *9.7* Correctional Counselor 1

**5.    21.4 Permanent Positions for the Security Housing Units (SHU) CCCMS**
This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the SHU: *7.0* Clinical Psychologists, *4.0* Psychiatric Social Workers, *5.5* Staff Psychiatrists, and *4.9* Psychiatric Technicians.

**6.    7.0 Permanent Positions for Conducting Group Therapy in the SHU**
This Finance Letter requests the following permanent positions as a result of the revised Program Guides for Conducting Group Therapy in the SHU population: *2.4* Psychiatric Technicians, and *4.6* Recreation Therapists.

**7.    30.2 Permanent Positions for ASU EOP Hubs**
This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the ASU Hubs population: *16.2* Registered Nurses, *11.5* Recreational Therapists, and *2.5* Staff Psychiatrists                •

**8.    69.3 Permanent Positions for Mental Health Reception Center (RC) Processing**
This Finance Letter requests the following permanent positions as a result of the revised Program Guides for Mental Health RC processing:    *32.6* Clinical Psychologists, *16.3* Psychiatric Social Workers, *2.3* Staff Psychiatrists, *9.0* Registered Nurses, and *9.1* Correctional Counselor Is.

**9.    27.1 Permanent Positions for the Mental Health Crisis Bed (MHCB) Population**
This Finance Letter requests the following permanent positions as a result of previously unfunded and new required duties in the MHCB population:    *15.5*

Clinical Psychologists, *3.1* Staff Psychiatrists, *3.5* Correctional Counselor Is and *5.0* Sergeants.

**10.    12.4 Permanent Positions for the Mental Health Participation in the Rules Violation Process**
This Finance Letter requests *12.4* Clinical Psychologist permanent positions as a result of the changes in the Program Guides requiring Mental Health case managers to participate in the Rules Violation process.

**11.    76.9 Permanent Positions for Psychiatric Technician**
This Finance Letter is requesting 76.9 Psychiatric Technicians in order to establish a 0.62 relief factor for the Psychiatric Technician classification, to perform their duties on a 7 day per week basis.

**12.    14.4 Positions for Forensic Evaluation**
This Finance Letter requests *14.4* Clinical Psychologists to perform Mentally Disordered Offender, Board of Prison Term, Z Case, and Departmental Review Board evaluations.

**14.    65.4 Positions for Clerical Assistance**
This Finance Letter requests *21.2* Office Technicians (OT), *17.0* Medical Transcribers, *6.0* Office Staff Supervisor II and *21.2* Office Assistants (Limited Term) with clerical support in the Mental Health Program throughout CDC.

**15.    3.1 Permanent Positions for the Outpatient Housing Unit weekend coverage**
This Finance Letter is requesting *3.1* Clinical Psychologists to provide 7 day per week coverage at CDC's Outpatient Housing Units.

**16.    13.34 Permanent Positions with Institution Level Supervision and Upgrading 31.0 Psychiatric Technicians to 31.0 Senior Psychiatric Technicians**
This Finance Letter requests *5.3* Senior Psychologist, Supervisor, *8.04* Supervising Psychiatric Social Workers, and upgrading *31.0* Psychiatric Technicians to *31.0* Senior Psychiatric Technician permanent positions to provide the Institutions with supervisory staff.

**17.    56.0 Permanent Field Positions for Program Performance Evaluation and Coleman Court Case Compliance** This Finance Letter requests *28.0* Health Program Specialist I (HPSI) and *28.0* OT permanent positions to provide support for data analysis and documentation of compliance with court mandates.

**18.    13.0 Permanent Positions for HCSD, Mental Health Staffing**
This Finance Letter requests *1.0* Senior Psychologist Specialist for Program Guide implementation and Suicide Prevention, *3.0* Senior Psychologist Specialist for institution Coleman compliance oversight, *3.0* Health Program Specialist I for programmatic support (1 per region), *3.0* OT for clerical support (1 per region),

00974



*3.0* Senior Psychiatrist, Specialists, also for Mental Health and Forensic Program Oversight (1 per region).

## 19. Reception Center Screening and Diagnostic Clarification

This finance letter requests $443,967 in fiscal year 2005/2006 and $402,500 ongoing annual funding for implementation of a valid and reliable test to predict mental health needs of inmates arriving in Reception Center and to aid diagnostic clarification in EOP level of care. In addition, this system will require one time funding totaling $718,694 for information technology infrastructure.

## 20. Workload Study

$500,000 is requested to determine whether current clinical case manager and psychiatrist staffing in CCCMS and EOP level of care is sufficient to absorb additional duties after allocating staff requested in this Finance Letter.

## 21. Additional Resources

The table below displays this Finance Letter's request for additional resources:

| Item | Quantity | Unit Cost | One-Time Cost |
|---|---|---|---|
| Treatment Cell | 288 | $1,069 | $307,872 |
| Photocopier | 28 | $9,000 | $252,000 |
| Laptops | 159 | $1,400 | $222,600 |
| Shredder | 32 | $2,500 | $80,000 |
| Fax Machine | 28 | $250 | $7,000 |
| Dictation Equipment | 17 | $370 | $6,290 |
| Golf Carts | 14 | $10,500 | $147,000 |
| Television | 28 | $499 | $13,972 |
| Group Therapy Materials | 28,000 | $2 | $56,000 |
| Printing (Forms) | | | $50,000 |
| **Grand Total** | | | **$1,142,734** |

**Fiscal Year 2006/07**

## 1. 60.2 Permanent Positions for the ASU CCCMS Population

This Finance Letter requests the following permanent positions as a result of the revised Program Guides for the CCCMS population in the ASU: *15.5* Staff Psychiatrist, *32.9* Recreational Therapists, and *11.8* Correctional Officers.

## 2. 9.0 Permanent Positions for the MHCB Population

This Finance Letter requests *9.0* Sergeants as a result of previously unfounded and new required duties in the MHCB population.

**3.    57.4 Permanent Positions for New Nursing Duties**

This Finance Letters requesting *57.4* Registered Nurse positions to perform mental health referral triage duties.

**4.    156.2 Permanent Positions for Psychiatric Technician and Clinical Case Manager Relief Factor**

This Finance Letter is requesting *76.9* Psychiatric Technicians in order to establish a 0.62 relief factor for the Psychiatric Technician classification, to perform their duties on a 7 day per week basis. CDC is also requesting *58.2* Psychologists and *21.1* Psychiatric Social Workers in order to establish a 0.15 relief factor for Clinical Case Manager Positions.

**5.    13.3 Permanent Positions with Institution Level Supervision**

This Finance Letter requests *5.3* Senior Psychologists, Supervisor, and *8.04* Supervising Psychiatric Social Workers

### B. Background History

#### The MHSDS Program Guides

The CDC is mandated under the Federal constitution to provide adequate medical and mental health care to all inmates who need it. "Deliberate indifference" to mental health needs has long been held to be a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The CDC has been challenged in two court cases, *Plata and Coleman*, which alleged that the CDC had insufficient staffing levels and inadequate policies and procedures to provide necessary mental health and medical care to inmates.

The CDC has responded to this litigation by developing a comprehensive and fiscally prudent approach to health care for inmates. Implementation of the Mental Health Services Delivery System (MHSDS) began in fiscal year (FY) 1994 – 1995. In 1997, CDC implemented the Mental Health Services Delivery System Program Guides, which provide an initial set of standardized policies and procedures for mental health treatment at each institution.

The Inmate Medical Services Program (IMSP) Policies and Procedures were developed in 2001 to standardize medical treatment at each institution. The IMSP Policies and Procedures contain guidelines for Quality Management, which have been implemented across all medical and mental health programs.

The 1997 MHSDS Program Guides have been reviewed and revised over the past seven years through ongoing negotiation between all parties involved in the Coleman court case. CDC field experts and court appointed experts have worked to agree upon the new set of policies and procedures contained in the revised MHSDS Program Guides, which meet constitutional requirements for adequate mental health care. The revised MHSDS Program Guides will be incorporated as Volume 12, of the IMSP Policies and Procedures.

00976

The purpose of implementing the revised MHSDS Program Guides is to meet court ordered requirements to provide constitutionally adequate mental health treatment to inmates. Implementation of the MHSDS Program Guides, as well as the IMSP Policies and Procedures regarding Mental Health Quality Management, will result in the reduction of costs associated with the *Coleman* case. The MHSDS Program Guides also address issues raised in the *Clark* and *Armstrong* cases against CDC. The Program Guides include requirements for language translation and for clinicians to ensure that disabled inmates receive appropriate accommodation and equally effective communication during clinical contacts.

## Summary of the 1997 MHSDS Program Guides

The 1997 MHSDS Program Guides established a set of policies and procedures for providing a continuum of mental health services for inmates. Inmates who require mental health treatment are currently identified through reception center screening, staff referral, and inmate self-referral. The MHSDS is designed to provide mental health treatment to inmates who have serious mental illnesses that impact their ability to function. Mental health services are currently provided in the least restrictive environment consistent with the safety and security needs of both the inmate-patient and the institution. The MHSDS provides inmate-patients with mental health treatment ranging from crisis intervention to inpatient care. Each inmate-patient treated in the MHSDS receives an individualized mental health treatment plan, and is placed at a Level of Care (LOC) appropriate to his or her identified mental health needs. Three levels of care are offered within CDC institutions and two levels of care are offered through contract with the Department of Mental Health (DMH). The levels of care, in order from lowest level of services to highest level, provided within CDC are:

- Correctional Clinical Case Management Services (CCCMS): Provides individual Case Manager contact at least once every 90 days and medication management by a psychiatrist at least once every 90 day. These patients are housed with other inmates who are not receiving MHSDS treatment services.

- Enhanced Outpatient Program (EOP): Provides weekly contacts with a primary clinician, medication management by a psychiatrist as clinically appropriate (interpreted consistently as once every 30 days), and structured therapeutic activities 10 hours per week. Inmate-patients treated at EOP level of care are placed into housing units separated from the non-MHSDS inmate population, as soon as bed space is available.

- Mental Health Crisis Beds (MHCB): Provides evaluation and treatment for inmate-patients who require the availability of 24 hour, 7 day per week mental health services to prevent danger to themselves or others, or who have mental conditions which cause grave disability (an inability to use food, clothing, or shelter in appropriate ways), or inability to function at a lower level of care.