1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-7872
8    Fax: (916) 324-5205

9  Attorneys for Defendants
   CF1997CS0003
10

11              IN THE UNITED STATES DISTRICT COURT
12
               FOR THE EASTERN DISTRICT OF CALIFORNIA
13

14

15  **RALPH COLEMAN, et al.,**                     CASE NO. CIV S-90-0520 LKK
                                                    JFM P
16                                 Plaintiffs,
                                                    **DEFENDANTS' OPPOSITION**
17          v.                                      **TO PLAINTIFFS' MOTION**
                                                    **TO CONDUCT DISCOVERY**
18                                                  **AND RECEIVE TOUR**
                                                    **BINDERS**
19  **ARNOLD SCHWARZENEGGER, et al.,**
                                                    Hearing:    August 17, 2006
20                                 Defendants.      Time:       11:00 a.m.
                                                    Courtroom:  25
21                                                  Judge: The Honorable John F.
                                                           Moulds
22

23                                  **I.**

24                           **INTRODUCTION**

25          Judgment was rendered in this case in 1995. This Court found Defendants' mental

26  health services delivery system for care to its inmates violated the Eighth Amendment, and

27  further found Defendants required the assistance of a Special Master to engage in effective

28  development of a constitutionally-adequate system. The Order of Reference specifically stated

DEF. RESPONSE TO PLF. REQ. DISCOVERY

1  that "the main work of the special master in developing a remedial plan will be with the

2  defendants to this litigation," with the caveat that the Special Master to "consult with counsel for

3  all parties as necessary in the discharge of his duties."  (Ex. 1, Order of Reference, 2:17-18; 2:25-

4  3:3  n.1.)  The implicit aim was to secure a consensus on any remedial plan presented to this

5  Court.

6          In the ensuing ten years, Defendants' compliance efforts were largely developed in

7  conjunction with Special Master Keating and Plaintiffs' counsel.  More recently, Defendants

8  developed an integral element of a constitutionally adequate mental health care system, the

9  Revised Program Guide, after three years of negotiations with Special Master Keating's experts

10  and Plaintiffs' counsel.   Upon Defendants' submission this cornerstone compliance project to

11  this Court for approval and despite the years of consensus-building on the appropriate statement

12  of the standards of care in this document,  Plaintiffs now sought formal discovery of disputed

13  portions of the Revised Program Guide.   Likewise, upon Defendants' submission of another

14  cornerstone compliance project, a long term bed plan with a bed forecast by approved expert

15  John Misener of Navigant (formerly Tucker Allan), Plaintiffs sought formal discovery of its

16  underpinnings.

17          No evidentiary hearing on either matter has been scheduled.  No formal post-judgment

18  discovery has been permitted under the Order of Reference or any other order of this Court.

19  Discovery of these compliance projects will delay their implementation, with the result of less-

20  than-adequate care and beds for mentally ill inmates.  Defendants respectfully request this Court

21  find Plaintiffs do not have a right to discovery in this compliance - not termination - phase of the

22  case.  Indeed, the request to conduct discovery is premature and will likely prejudice Defendants'

23  efforts to build a constitutionally-compliant mental health services delivery system.

24  //

25  //

26  //

27  //

28  //

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

1                                        II.

2                        PROCEDURAL BACKGROUND

3    A.  INFORMAL DISCOVERY IN THE PAST TEN YEARS OF COMPLIANCE

4        EFFORTS.

5            In the ensuing ten years since judgment was entered, discovery in the formal sense of

6    depositions, requests for production, and site inspections was not conducted by Plaintiffs in this

7    matter.  However, under the guidance of Special Master Keating, the compliance efforts of

8    Defendants in this matter have been increasingly transparent.  At both Special Master Keating's

9    personal behest as well as by certain court orders, Plaintiffs have obtained informal and

10   voluminous discovery of CDCR's mental health services delivery system in many forms over the

11   past ten years.

12           Under the rubric of 'monitoring tours', Plaintiffs have obtained site inspections of each

13   and every facility every year, often more than once a year, in this case.  The monitoring tours are

14   scheduled by Special Master Keating each year, with the scheduling done with input from

15   Plaintiffs' counsels on those institutions of particular concern as well as those time periods when

16   Plaintiffs' counsels are unavailable.  The monitoring tours provide all involved with the ability to

17   view the sufficiency of mental health services at a particular institution.  At the request of Deputy

18   Special Master Lopes, a tour binder containing 'snapshot in time' statistical information -

19   population census by level of care as well as by housing area as of the tour date, corrective action

20   plans responsive to issues raised on previous tours, staff census by specialty as of that date,

21   contract clinicians census as of that date, staff vacancy rate as of that date, number of referrals to

22   different types of beds (intermediate care, mental health crisis outpatient housing) - is provided

23   directly by the institution to the tour members at the outset of the tour.  (See, Ex. 2, Table of

24   Contents, CSP Sacramento Tour Binder; Dec. Michael Stone, ¶ 4.)[1/]  The tour binders have

25   _____

26          1.  Given the volume of personal information about inmates and staff contained in such
     binders, Defendants do not file any tour binder with this Court at this time.  A table of contents is
27   provided from the California State Prison, Sacramento tour binder for July 2006.  (Ex. 2.)  If this
     Court so desires, Defendants will produce a copy of the two-volume tour binder prepared by
28   California State Prison, Sacramento and the one-volume tour binder prepared by California State

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

                                        3

1  historically been prepared without any review by inside or outside counsel.  (Dec. Michael Stone,

2  ¶ 5.)  They are often prepared on the eve of the tour from available patient and staff databases.

3  (*Id.* at ¶ 6.)

4           The Special Master determines those tours that will be "attorney tours" involving both

5  attorneys and his experts and those tours that will be "non-attorney tours" involving just his

6  experts.    (Dec. Michael Stone, ¶ 7.)   At an attorney tour,  Plaintiffs have in-person visits with

7  inmate-patients and may well speak to CDCR staff at those facilities and is provided with the

8  same tour binder provided to the Special Master's team.  (*Id.* at ¶ 8.)   At a non-attorney tour,

9  Plaintiffs counsel is not invited to the tour and is not provided the binder provided to the Special

10 Master's team.   (*Id.* at ¶ 9.)  Both non-attorney and attorney tours end with a teleconference

11 involving the Special Master's experts, CDCR staff from the institution (such as the warden

12 and/or chief medical officer), and counsel for Plaintiffs and Defendants at which statistical

13 information (such as patient census and staff resources) as well as preliminary findings on the

14 sufficiency of the mental health care is discussed.  (*Id.* at ¶ 10.)

15          Plaintiffs have obtained information equal to that available by deposition by way of

16 periodic informal meetings and teleconferences with policy makers on discrete policy issues.

17 Again, Special Master Keating has scheduled at least twice a year an "All Parties" or "Policy

18 Meeting".  (Dec. Tillman at ¶ 4.)  He has sought input from Plaintiffs' counsels on the agenda

19 items for these at least meetings.  (*Id.* at ¶ 5.) The meetings are well attended by Defendants'

20 policy makers, usually including the Director of Mental Health, Chief Psychiatrist, Chief

21 Psychologist, Chief Counsel of CDCR, and, more recently, representatives from the Governor's

22 Office and the Department of Mental Health.  (*Id.* at ¶ 5.)  At those meetings, Defendants are

23 usually requested and usually agree to provide information or to revise certain policies and

24 procedures.  (*Id.* at ¶ 5.)   Meetings and teleconferences have also been held to hone policies on

25 cardiopulmonary resuscitation and videomonitoring of suicidal patients.  (*Id.* at ¶ 5 .)

26          Plaintiffs have received detailed and voluminous document production by Defendants'

27 yearly, monthly, biweekly, weekly and, sometimes, contemporaneous production of a wide range

28

Prison, Corcoran.

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

1  of documents containing statistical information on staff and patient census as well as patient
2  transfers and referrals, internal staff investigations, corrective actions plans, incident reports,
3  rules violation reports, construction reports, licensing reports, financial reports, and policy
4  information.  (Dec. Tillman, ¶ 6; see Ex. 3, Monthly Report; Ex. 4, Biweekly Report on EOP
5  Population, Ex. 9, Cyclical Report Calendar.)  In addition, at the close of every monitoring tour,
6  Special Master Keating provides to the Court and counsel a draft monitoring report describing
7  the status and sufficiency of each facility's mental health services delivery system for that
8  particular round of the tour in qualitative and quantitative terms.  (Dec. Tillman, ¶ 7.)  Plaintiffs'
9  counsel have the opportunity to assert objections to the factual findings and legal
10 recommendations made in each report.  (*Id.* at ¶ 8.)  Some fifteen monitoring reports have been
11 provided by Special Master Keating.  (*Id.* at ¶ 9.)  Lastly, Special Master Keating has produced
12 an annual report on suicides completed within CDCR, with an appendix of the case studies
13 containing detailed information on each involved patient.  (*Id.* at ¶ 10.)

14         **B.    THE PROGRAM GUIDE WAS REVISED BY THE JOINT EFFORTS AND**
15                **ONGOING DIALOGUE BETWEEN THE SPECIAL MASTER'S TEAM,**
16                **DEFENDANTS KEY POLICY MAKERS, AND PLAINTIFFS' COUNSEL.**

17         The revision of the Program Guide itself illustrates the transparency and consensus-
18 building atmosphere of the *Coleman* compliance efforts.  The Program Guide has been revised,
19 from its 1997 rendition to a 2006 rendition, is not the product of a sole author.  It is the product
20 of a committee of authors. (Dec. Tillman, at ¶11.)  While usually a horrific means of producing
21 even just one policy, this committee managed over the course of three years of meetings, emails,
22 and teleconferences to effectively produce a complete set of policies addressing every aspect of
23 mental health care for inmates.  (*Id.*, at ¶ 12.)  The committee was, in political terms, a
24 "bipartisan" effort of the Special Master's team, the Plaintiffs' counsels, Defendants' counsel and
25 high-level representatives of CDCR from custody and mental health care backgrounds. (*Id.* at
26 ¶ 11.)  The special master and his team, composed of psychiatric, psychological, and public
27 policy experts, participated in the meetings and teleconferences, reviewed the track-change
28 revisions proffered by Defendants, and offered their own exemplars and models from their

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

1    individual practices. (*Id.* at ¶ 11.)  Plaintiffs' counsel did the same, often bringing forth

2    exemplars and models gathered from other states, from national associations, and from their own

3    experts.  (*Id.*) Defendants provided track change versions of agreed-upon changes as the

4    Program Guide slowly but surely developed into its now-final form.  (*Id.*)

5          Dialogue that may begin under the auspices of a meeting on the Program Guide often

6    continues in the form of non-Program Guide meetings and teleconferences.  (Dec. Tillman, ¶ 13.)

7    The issue of cardiopulmonary resuscitation by correctional officers was initially discussed at

8    Program Guide meetings and yet ultimately changed and honed in a set of teleconferences held

9    apart from any Program Guide meeting. (*Id.*)  Likewise, certain policy changes sought by

10   Plaintiffs in particular areas of the Program Guide, such as the institution of one-to-one

11   monitoring of inmate-patients at risk for suicide and the ability of EOP inmates to earn positive

12   credits for participating in their clinical programs, have resulted in policy changes in the custody

13   areas of CDCR.  (*Id.*)

14         In a report filed by Special Master Keating in February 2006, outstanding issues in the

15   Revised Program Guide were stated.  (Ex. 5, Keating Report, 2/3/06.)   Defendants responded to

16   the report by agreeing to abide by the opinions of the Special Master's experts on the outstanding

17   Program Guide issues.  (Ex. 6, Defendants' Response, 2/14/06.)  Plaintiffs, however, disputed

18   some of the experts' opinions and indicated a desire to litigate those issues.  (Ex. 7, Plaintiff

19   Response, 2/17/06.)

20         In February 2006, this Court approved the Revised Program Guide, with the exception

21   of certain outstanding legal issues.  Fortunately, the dialogue to remedy those outstanding issues

22   continues.  Even as of this morning of July 28, 2006, Chief Psychologist Shama Chaiken spoke

23   directly to Special Master Keating's experts and Plaintiffs' counsels about the outstanding issue

24   concerning the applicable standards for the application of restraints on inmates, by the end of the

25   teleconference, drafted language acceptable to all involved.   (Dec. Tillman, ¶ 14.)

26   //

27   //

28   //

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

C.   **IMPLEMENTATION OF DEFENDANTS' BED PLANS WILL BE DELAYED BY DEPOSITIONS AND OTHER FORMS OF DISCOVERY.**

In order to provide constitutionally-adequate mental health care, there must be beds in to house the patients needing the care.  The forecasting of the bed need is essential to planning any construction of mental health care beds.  CDCR retained John Misener of Navigant (formerly Tucker Alan) in 2000 to prepare the forecasting methodology and in 2006 to validate bed population forecasts made by CDCR staff using that methodology.

In May 2, 2006, Judge Karlton ordered Defendants to submit a plan for the interim provision of intermediate inpatient beds and mental health crisis beds.  On the same date, Judge Karlton approved Defendants long term plan for the provision of acute and intermediate inpatient care and mental health crisis beds, subject to modification to  based on current population projections.   On June 15 and June 30, 2006, Defendants filed plans in response to these court orders.  Plaintiffs filed objections to the plans.  As to the amended long term plan, Plaintiffs requested this Court order:

> Defendants and Navigant to produce to Special Master Keating and to Plaintiffs' counsel, within 20 days, all documents referring or relating to either Defendants' April 17, 2006 Bed Plan or Defendants' June 30, 2006 Amended Bed Plan.  Defendants and Navigant are to provide "full and unfettered" access by Special Master Keating and Plaintiffs' counsel to all persons who participated in preparing the bed plans, including attendance at a deposition or hearing conducted by Special Master Keating in the matter.  The Special Master shall report to the Court his findings concerning the "questions raised by the timing and presentation of the April 17 and June 30, 2006 Bed Plans, the State Budgetary Process and the role of Navigant, by September 30, 2006.

Since that filing, two teleconferences have been held with Special Master Keating, Plaintiffs' counsel and Navigant to discuss the population and bed need forecast.  (Dec. Tillman, ¶ 15.)  Plaintiffs' counsel now requests an in-person meeting with John Misener of Navigant.  (*Id.* at ¶ 16.)  Although architects and engineers are being interviewed to implement the long-term bed plan's construction of hundreds of mental health care beds by 2011, implementation

1     will be delayed so long as court approval hinges upon depositions and other forms of discovery

2     by Plaintiffs' counsel. (*Id.* at ¶ 17.)

3 <div align="center">**III.**</div>

4 <div align="center">**LEGAL ARGUMENT**</div>

5 **A.    AS PROGRAM GUIDE LITIGATION INVOLVES LEGAL ISSUES, NO FACT-**

6         **BASED DISCOVERY IS NECESSARY.**

7        The Federal Rules of Civil Procedure address the right to conduct discovery before a

8     trial or before an evidentiary hearing on a termination motion. Fed R. Civ. Proc. 26, 56 (f)).

9     The trial in this matter has occurred. There is no scheduled evidentiary hearing on any matter.

10    Defendants have not filed a motion to terminate the court's jurisdiction over any portion of this

11    case. Therefore, Plaintiffs cannot contend that they have a right to conduct discovery as

12    preparation for any trial or termination proceeding.

13        Further, Plaintiffs' counsel's discussion of the Orders of Reference in other class action

14    suits pending against the CDCR should be disregarded as inapposite. Each case has its own

15    unique features, including the needs of the plaintiff class, the Special Master and the Court, that

16    may result in an Order of Reference that fits only that case. There is simply no 'one size fits all'

17    Order of Reference.

18        To the extent Plaintiffs assert that an evidentiary hearing is in the offing on certain

19    Revised Program Guide issues, then they must indicate to the Court and counsel those issues that

20    will be litigated and the discovery needs of each issue. As of yet, they have not done so in any

21    status conference report filed with the Court. In a letter of April 18, 2006, Plaintiffs provided a

22    five-page listing of discovery items, including tours of facilities by their experts, depositions of

23    CDCR officials, experts, and staff, document production. (Ex. 8, 4/18/06 Letter.) Those

24    discovery items were listed under the following general categories: Secured Housing Units and

25    Administrative Segregation units, Psychiatric Services Units, Administrative Segregation-

26    Enhanced Outpatient Units, Transfer to Higher Levels of Care, Classification Issues,

27    Psychiatrist Qualifications, Suicide Prevention Issues, Staffing Ratios. The indicated discovery

28    easily exceeds the usual limits on depositions and document production. Fed. R. Civ. Proc. 26,

DEF. RESPONSE TO PLF. REQ. DISCOVERY

1  subd. (b), (c).

2      Simply put, the ten years of disclosure in the form of monitoring tours and document

3  production as well as the three years spent building a consensus on Revised Program Guide

4  issues and Defendants' own willingness to abide the opinions of Special Master Keating's

5  experts will be mooted by at least a  year if not more of discovery by Plaintiffs.  The Revised

6  Program Guide issues, to the extent they must be litigated, are issues regarding the proper

7  standard for the delivery of mental health services in a correctional environment.  Plaintiffs

8  simply disagree with the standards set by Special Master Keating's experts.  Litigation of those

9  legal issues does not require the broad-ranging discovery sought by Plaintiffs, but simply the

10  setting of expert depositions and a hearing, if necessary.

11      Plaintiffs' request for untrammelled discovery should be seen as an attempt to litigate

12  factual issues that are no longer pending in this case.  This Court has already determined that the

13  then-extant mental health services delivery system violated the Eighth Amendment.  This Court

14  accepted Plaintiffs' voluntary dismissal of the Rehabilitation Act claim.   Any outstanding issues

15  allegedly concerning disparate accommodation of mentally ill inmates should be litigated within

16  the confines of pending cases.  (*See, Hecker v. California Department of Corrections and*

17  *Rehabilitation*, E.D. Case No. S-05-2441, *Klemaske v.California Department of Corrections and*

18  *Rehabilitation*, E.D. Case No. S-04-1750, *Wilson v. Woodford*, E.D. Cal. Case No. S-05-0876.)

19  After ten years of tours and document production, Plaintiffs have sufficient information to

20  properly represent their clients in any proceeding on the legal issues surrounding the standard of

21  care for the delivery of mental health services.  There is no need for discovery of any factual

22  issues at this time.

23  **B.    THE INFORMATION CONTAINED IN THE TOUR BINDERS IS ALREADY**

24      **PRODUCED TO PLAINTIFFS AND, IF PRODUCED AT EVERY TOUR, WILL BE**

25      **UNDULY BURDENSOME TO DEFENDANTS' COUNSEL.**

26      Plaintiffs request Defendants to produce the tour binders associated with the non-

27  attorney tours, in essence turning the tour binder into a litigation document.  The tour binders

28  have limited value.  They operate as a limited "floor" of information for the tour.  While they

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

may provide basic information about inmate population and staff vacancies, the information is available and produced in other documents by Defendants, such as the monthly statistical report. (Dec. Stone, ¶ 11.) By converting the tour binder into a formal document for production to Plaintiffs, Defendants' counsel will be required to assure the adequacy and accuracy of the document before it is produced. (*Id.* at ¶¶11, 12.) Given the sheer volume of statistical information and the number of institutions producing tour binders, the production of this document at the start of each and every tour to Plaintiffs counsel will be unduly burdensome to Defendants. (*Id.* at ¶ 12.) Defendants respectfully request this Court deny Plaintiffs' motion to obtain copies of every tour binder.

## C. FURTHER MEETINGS AND/OR DEPOSITIONS OF NAVIGANT STAFF WILL DELAY IMPLEMENTATION OF THE BED PLAN.

The long-term bed plan contemplates the construction of new beds by 2011. To meet that targeted date, architects and engineers and construction firms must be hired within the next few weeks. Interviews are now being conducted. At the same time, Defendants have produced John Misener on two occasions for teleconferences with Plaintiffs' counsel and Special Master Keating to discuss his bed need forecasts. (Dec. Tillman, ¶¶ 15, 16.) Despite these discussions, Plaintiffs have yet to indicate acceptance of the bed need forecasts or, more generally, the bed plans. (*Id.*) If Plaintiffs continue to seek additional meetings with John Misener of Navigant, particularly an in-person meeting or deposition, the implementation of those bed plans will be delayed. (*Id.* at ¶ 17.) Defendants respectfully request this Court find any further meeting or any deposition of John Misener unnecessary in light of his two teleconferences with Special Master Keating and Plaintiffs' counsel.

//

//

//

//

//

//

1  **CONCLUSION**

2          Defendants respectfully request this Court deny Plaintiffs' motion to conduct discovery

3  and to obtain non-attorney tour binders.  Further, Defendants request this Court find any further

4  meetings with John Misener or other personnel of Navigant concerning the bed need forecast

5  unnecessary.  Defendants assert their steps to create a constitutionally-compliant mental health

6  care system with a sound set of clinical policies and an available set of beds will be delayed  by

7  Plaintiffs' unnecessary requests for discovery.  For these reasons, Plaintiffs' motion should be

8  denied.

9          Dated: July 28, 2006

10                          Respectfully submitted,

11                          BILL LOCKYER
                            Attorney General of the State of California

12                          JAMES M. HUMES
                            Chief Assistant Attorney General

13                          FRANCES T. GRUNDER
                            Senior Assistant Attorney General

14

15                          ROCHELLE C. EAST
                            Supervising Deputy Attorney General

16

17

18                          LISA A. TILLMAN
                            Deputy Attorney General

19                          Attorneys for Defendants

20

21
   responsetodiscoveryrequest.wpd

22

23

24

25

26

27

28

DEF.  RESPONSE TO PLF. REQ. DISCOVERY

## DECLARATION OF SERVICE BY OVERNIGHT COURIER AND U.S. MAIL

Case Name:    **Ralph Coleman, et al. v. Arnold Schwarzenegger, et al.**

Court:    **U.S. District Court, Eastern District of California**

Case No.:    **2:90-CV-0520-LKK-JFM-P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, Post Office Box 944255, Sacramento, CA 94244-2550.

On  July 28, 2006 , I served the attached **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONDUCT DISCOVERY AND RECEIVE TOUR BINDERS** by placing a true copy thereof enclosed in a sealed envelope with the **Golden State Overnight**, addressed as follows:

**MICHAEL BIEN**
**Rosen, Bien & Asaro**
**155 Montgomery Street, 8th Floor**
**San Francisco, CA  94104**
*via Golden State Overnight*

**STEVE FAMA**
**Prison Law Office**
**2173 "E" Francisco Boulevard, Suite M**
**San Rafael, CA  94901**
*via Golden State Overnight*

**CLAUDIA CENTER**
**The Legal Aid Society -**
**Employment Law Center**
**600 Harrison Street, Suite 120**
**San Francisco, CA  94107**
*via Golden State Overnight*

**PETE COCKCROFT, H-86887**
**California State Prison, Sacramento**
**FA2-205**
**Post Office Box 290066**
**Represa, CA  95671-0066**
*via U.S. Mail*

**KIMBERLY S. DAVENPORT**
**California Medical Association**
**221 Main Street**
**San Francisco, CA  94105**
*via U.S. Mail*

**STEPHEN W. MAYBERG**
**California Department of Mental Health**
**1600 Ninth Street, Room 151**
**Sacramento, CA  95814**
*via U.S. Mail*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 21, 2006, at Sacramento, California.

| M. McIntosh | */ s / M. McIntosh* |
|:---:|:---:|
| Declarant | Signature |

30146534.wpd