<u>**COLEMAN v. SCHWARZENEGGER**</u>
**CASE NO. CIV S-90-0520 LKK JFM P**


**EXHIBIT 8**


**IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO CONDUCT DISCOVERY AND RECEIVE
TOUR BINDERS**

SANFORD JAY ROSEN
MICHAEL W. BIEN
ANDREA G. ASARO **
ERNEST GALVAN

HOLLY BALDWIN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
LORI RIFKIN ***
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN ****

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

April 18, 2006

**VIA FACSIMILE AND U.S. MAIL**

Lisa A. Tillman
Deputy Attorney General
1300 I Street, Suite 125
PO Box 944244-2550
Sacramento, CA 95814

Tel:  (916) 327-7872
Fax:  (916) 324-5205

Michael Stone
CDC Legal Affairs Division
PO Box 942883
Sacramento, CA 94283-0001

Tel:  (916) 324-1421
Fax:  (916) 327-5306

      Re:  Coleman v. Schwarzenegger
            Our File No. 489-3

Dear Lisa and Michael:

    As you know, one of the issues on the agenda for April 26, 2006 before Judge Karlton is a status conference concerning a schedule and procedures for litigation of the remaining issues in dispute concerning the Program Guides. We are also scheduled to have a telephone conference concerning these issues on Wednesday, April 19, at 1:00 p.m.

    We appreciate defendants' apparent willingness to reexamine some of these issues and we, as always, remain willing to settle rather than litigate these disputes. On the other hand, we have been negotiating for several years and we are now subject to a Court order to either resolve the remaining issues or allow the Court to decide them. We are addressing issues here, therefore, that we remain hopeful will be resolved through

*      MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
**     OF COUNSEL
***    MEMBER OF THE CONNECTICUT AND NEW YORK BAR
****   MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

Case 2:90-cv-00520-KJM-SCR   Document 1925-8   Filed 07/28/06   Page 3 of 7

Lisa Tillman, et al.
April 18, 2006
Page 2

negotiation (classification, suicide precautions, etc.) or through defendants' further study of issues (overall staffing ratios).

You are aware of the issues that are in dispute concerning the Program Guides. I will not repeat them here or attempt to summarize them. (See February 17, 2006 Plaintiffs' Objections to Special Master's Report and Recommendations on Defendants' Revised Program Guide.)

Because many of the remaining issues are overlapping, depositions, tours and document requests should, to the extent possible, proceed in unison rather than issue by issue. That is, if we are going to have plaintiffs' experts tour Corcoran, they should try to cover all issues and not have to go back to Corcoran several times. In some cases, however, it may be appropriate and efficient to break out and/or postpone certain issues even if it may result, for example, in a second tour of Corcoran for a limited purpose.

With cooperation by defendants, plaintiffs can complete their necessary discovery in a six to nine month time frame. (This assumes reasonable cooperation from defendants in scheduling tours and inspections, producing documents and information, etc.). It may also be possible to reduce the scope of discovery by stipulating to certain factual issues, and/or agreeing that certain prisons are representative of conditions and policies at other similar prisons and programs.

## SHU'S AND AD SEG'S

A major focus of our remaining disputes concern the housing of class members in SHU and administrative segregation units. In connection with these issues, plaintiffs' discovery will include the following:

- Tours and inspections of Corcoran, Pelican Bay, CCI and VSPW Secured Housing Units by plaintiffs' counsel and retained expert witnesses. These tours should include tour of the SHU units, cells, offices, MHCB/hospital/OHU/infirmary/ZZ cells, informal interviews of custodial and clinical staff concerning Program Guides and local Operating Procedures and policies, review of a sample of medical and central files, private interviews with class members (some cell front and some in private rooms), observation of psych tech rounds, case manager rounds and appointments, medication rounds, other programming, ICC and Treatment Team and 115 hearings, etc.

- In advance of and in connection with the tours and inspections, we will need defendants to provide various documents and information similar to that provided to the Special Master in connection with Coleman tours, such as lists of inmates residing in the SHU with length of stay and MHDS status, incident reports (relating to use of force issues), referrals to higher levels of care, clinical staffing information, 114 logs, logs and records for

Case 2:90-cv-00520-KJM-SCR    Document 1925-8    Filed 07/28/06    Page 4 of 7

Lisa Tillman, et al.
April 18, 2006
Page 3

- psych tech rounds, policies and procedures, internal memoranda, etc. We will use the lists, for example, to sample inmates for more detailed interviews and file reviews.

- In addition to the SHU units at these four prisons, we will also tour and inspect all ad seg units, including, but not limited to, new ad segs, regular ad segs, ad seg EOP hubs, overflow ad seg units. Same stuff as above for the SHU's will be required. Ad seg lists would also require more detailed length of stay information, reasons for ad seg detention, etc.

- In addition to the four prisons with SHU's, we would propose several tours of other prisons to focus on ad segs. SAC, which has the other PSU, would be necessary, as would a sample of other prisons. We would suggest LAC, SVSP, RJD, CIM, DVI, CMC, CMF, Folsom, SQ, Avenal, Wasco, Solano and MCSP.

- We would also devise appropriate discovery to evaluate the RVR process, focusing on these institutions as samples. This would involve requesting a list of 115's, devising a sample, observing some hearings, interviewing custodial and clinical staff.

- For each prison, plaintiffs would propose taking no more than 2-4 depositions of custodial and clinical leadership.

- We would also take 2-4 depositions of headquarters staff. In addition, we would require headquarters to produce documents and information on a state-wide basis including internal memoranda, etc.

## PSU AND AD SEG EOP HUBS

We are also challenging the related issues of the use of cages for treatment in PSU's and Ad Seg EOP Hubs.

- At PBSP, we would also tour the PSU and pilot ad seg program, observing programming, treatment, speaking with clinical and custody staff and informally interviewing patients and reviewing medical and central files.

- At any ad seg EOP Hub programs, we would due the same, observing programming, treatment, speaking with clinical and custody staff and informally interviewing patients and reviewing medical and central files.

- We will also tour the PSU program at SAC.

## TRANSFER TO HIGHER LEVELS OF CARE

Another major remaining area of conflict concerns delays in transfers to higher levels of care. This includes reception center delays and failures to provide timely and appropriate access to care at all levels, including but not limited to MHCB's, EOP's and/or DMH programs. These issues also include the numerous remaining disputes over transfer time lines. In addition, these issues include the use of OHU's, ZZ cells, ad seg units and other locations for housing class members who require a higher level of care (MHCB, EOP, DMH). These issues also include DMH admissions criteria, etc.

- Tours and inspections for these issues could probably be accomplished in conjunction with the ad seg/SHU discovery outlined above (that is, additional prisons need not be toured and inspected).

- We would require tours and inspections of DMH facilities, DMH headquarters staff, interviews with DMH clinical staff on tours, depositions of DMH leadership in headquarters and at relevant programs: ASH, Coalinga, SVPP, CMF, Patton. DMH would also be served with document requests.

- CDCR Headquarters staff interviews, document requests and depositions concerning these issues would be extensive: policies and planning, management of wait lists for all levels of care, negotiations for resources, etc.

- Depositions of clinical staff concerning obstacles to higher levels of care caused by DMH practice, policies and procedures, including but not limited to admission procedures, forms, exclusionary criteria, MOU. Depositions of clinical staff concerning custodial obstacles to access to higher levels of care including lock downs, lack of custody staff for escorts, classification and transportation delays, unreasonable security restrictions, etc.

## CLASSIFICATION ISSUES

These issues include four points added in reception, four point annual reduction for successful EOP participation, discrimination in work and educational programs and failure to accommodate class members in access to programs and activities.

- Depositions and document production of UCLA researchers and CDCR officials concerning revised classification system including purported foundation, data and justification for discriminatory four points in reception. We will serve document discovery requiring UCLA and CDCR to produce the computer database, records, other underlying data and studies, paper records and procedures and practices documents regarding the creation and collection of data used (*e.g.*, procedure, practice and

Lisa Tillman, et al.
April 18, 2006
Page 5

- guidance documents regarding the screening of inmates at reception for mental illness at the time of the creation and collection of the data used).

- Depositions and document requests of CDCR officials concerning the impact of the revised classification system on class members and their housing and access to programming and services, justifications for decisions such as exclusion of EOP's from work and educational programs, decisions to restrict EOP and CCCMS programs from Level I and II institutions, and to allow blanket exclusions of class members from a variety of CDCR programs and activities.

- We will also seek discovery from individual prisons (depositions and documents) concerning local policies and procedures excluding class members and discriminating against class members.

## PSYCHIATRIST QUALIFICATIONS

The remaining dispute concerns defendants' delay and failure to replace the existing "psychiatrists" with qualified psychiatrists.

- Depositions and discovery of CDCR clinical leadership concerning existing staff, qualifications, supervision, training, peer review, credentialing, etc.

- Depositions and record reviews of MD's without appropriate qualifications, including training, qualifications, supervision and responsibilities.

## SUICIDE PREVENTION ISSUES

The remaining disputes concern defendants' inadequate suicide precautions procedures and tracking former case load and suicide attempt history for non case load.

- Depositions and document discovery concerning defendants' various computer tracking systems and their capabilities, costs to add missing info, internal memoranda re: same.

- Depositions of CDCR clinical staff in headquarters and in various prisons concerning their opinions and experience with the existing standards and screening system and its clinical appropriateness.

## STAFFING RATIOS

We do not accept any of defendants' proposed staffing ratios. This issue includes not only inadequate staffing for reception, ad seg EOP Hubs, SHU's, ad segs, but also the basic staffing for EOP programs and CCCMS programs. Based on defendants' willingness to follow Mr. Keating's suggestions and enhance staffing for reception centers and ad seg units (including ad seg EOP hubs),

Case 2:90-cv-00520-KJM-SCR    Document 1925-8    Filed 07/28/06    Page 7 of 7

Lisa Tillman, et al.
April 18, 2006
Page 6

plaintiffs would consider deferring litigation over inadequate staffing pending defendants' work load study. We would defer only based on defendants' agreement to commit to a time frame for the work load study for inclusion of any enhancements in next year's budget (2006-7).

Litigation of staffing ratios would require extensive additional discovery beyond the scope of what is described above. Plaintiffs would seek additional findings form the Special Master concerning these issues in an effort to limit the need for full-scale litigation.

We look forward to further discussion of these issues with you on Wednesday at 1:00 p.m.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Michael W. Bien

MWB:ts
cc:  Keating
     Lopes
     Co-counsel