BILL LOCKYER
Attorney General of the State of California
JAMES M. HUMES
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205

Attorneys for Defendants
CF1997CS0003

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | NO. CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **DECLARATION OF LISA TILLMAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONDUCT DISCOVERY AND RECEIVE TOUR BINDERS** |
| v. | |
| **ARNOLD SCHWARZENEGGER, et al.,** | Hearing:     August 17, 2006 |
| Defendants. | Time:        11:00 a.m. |
| | Courtroom:  25 |
| | Judge:       The Honorable John F. Moulds |

I, Lisa Tillman, declare:

1.    I am an attorney licensed to practice before all the courts of the State of California and am admitted to practice before the United States District Courts for the Northern, Eastern and Southern Districts of California. I am the deputy attorney general assigned to represent the Defendants in this matter.

DEC. TILLMAN IN OPPOSITION TO MOTION FOR DISCOVERY
1

2.    I have personal knowledge of the facts stated in this declaration and could testify to them.

3.    Plaintiffs have obtained voluminous information about the Defendants' mental health services delivery system in a number of informal ways.

4.    Plaintiffs have obtained information equal to that available by deposition by way of periodic informal meetings and teleconferences with policy makers on discrete policy issues. Special Master Keating has scheduled at least twice a year an "All Parties" or "Policy Meeting".

5.    Special Master Keating has sought input from Plaintiffs' counsels on the agenda items for these at least meetings.  The meetings are well attended by Defendants' policy makers, usually including the Director of Mental Health, Chief Psychiatrist, Chief Psychologist, Chief Counsel of CDCR, and, more recently, representatives from the Governor's Office and the Department of Mental Health.   At those meetings, Defendants are usually requested and usually agree to provide information or to revise certain policies and procedures.   Meetings and teleconferences have also been held to hone policies on cardiopulmonary resuscitation and videomonitoring of suicidal patients.

6.    Plaintiffs have received detailed and voluminous document production by Defendants' yearly, monthly, biweekly, weekly and, sometimes, contemporaneous production of a wide range of documents containing statistical information on staff and patient census as well as patient transfers and referrals, internal staff investigations, corrective actions plans, incident reports, rules violation reports, construction reports, licensing reports, financial reports, and policy information.

7.    In addition, at the close of every monitoring tour, Special Master Keating provides to the Court and counsel a draft monitoring report describing the status and sufficiency of each facility's mental health services delivery system for that particular round of the tour in qualitative and quantitative terms.

8.    Plaintiffs' counsel have the opportunity to assert objections to the factual findings and legal recommendations made in each report.

9.   Some fifteen monitoring reports have been provided by Special Master Keating.

10.   Lastly, Special Master Keating has produced an annual report on suicides completed within CDCR, with an appendix of the case studies containing detailed information on each involved patient.

11.   The Program Guide has been revised, from its 1997 rendition to a 2006 rendition, is not the product of a sole author.  It is the product of a committee of authors: members of the Special Master's team, the Plaintiffs' counsels, Defendants' counsel and high-level representatives of CDCR from custody and mental health care backgrounds. The special master and his team, composed of psychiatric, psychological, and public policy experts, participated in the meetings and teleconferences, reviewed the track-change revisions proffered by Defendants, and offered their own exemplars and models from their individual practices.    Plaintiffs' counsel did the same, often bringing forth exemplars and models gathered from other states, from national associations, and from their own experts.  Defendants provided track change versions of agreed-upon changes as the Program Guide slowly but surely developed into its now-final form.

12.   After three years of meetings, emails, and teleconferences, the Revised Program Guide now effectively provides a  set of policies addressing every aspect of mental health care for inmates.

13.   Dialogue that may begin under the auspices of a meeting on the Program Guide often continues in the form of non-Program Guide meetings and teleconferences.  The issue of cardiopulmonary resuscitation by correctional officers was initially discussed at Program Guide meetings and yet ultimately changed and honed in a set of teleconferences held apart from any Program Guide meeting.  Likewise, certain policy changes sought by Plaintiffs in particular areas of the Program Guide, such as the institution of one-to-one monitoring of inmate-patients at risk for suicide and the ability of EOP inmates to earn positive credits for participating in their clinical programs, have resulted in policy changes in the custody areas of CDCR.

14.   Even as of this morning of July 28, 2006, Chief Psychologist Shama Chaiken spoke directly to Special Master Keating's experts and Plaintiffs' counsels about the outstanding

1    issue concerning the applicable standards for the application of restraints on inmates, by the end

2    of the teleconference, drafted language acceptable to all involved.

3            15.   Since the filing of Defendants' bed plans,  two teleconferences have been held

4    with Special Master Keating, Plaintiffs' counsel and Navigant to discuss the population and bed

5    need forecast.

6            16.   Despite these informal meetings, Plaintiffs' counsel now requests an in-person

7    meeting with John Misener of Navigant.  Plaintiffs' counsel has yet to accept the submitted bed

8    need forecast or plan.

9            17.   Although architects and engineers are being interviewed to implement the long-

10   term bed plan's construction of hundreds of mental health care beds by 2011, implementation

11   will be delayed so long as court approval hinges upon depositions and other forms of discovery

12   by Plaintiffs' counsel.

13           18.   Attached herein are as Exhibit 9 is a Cyclical Report Calendar prepared by my

14   office.

15           19.   Attached are true and correct copies of the following documents marked as

16   exhibits:

17           Exhibit 2: Table of Contents, CSP Sacramento tour binder, July 2006

18           Exhibit 3: Monthly Report Table of Contents

19           Exhibit 4, Biweekly Report on EOP Population

20           Exhibit 5, Keating Report

21           Exhibit 6, Defendants' Response, 2/14/06

22           Exhibit 7, Plaintiff Response, 2/17/06

23           Exhibit 8, Plaintiff Letter, 4/18/06

24           I declare under the penalty of perjury that the foregoing is true and correct.

25

26           Dated:                        Signed:  _/ s / Lisa Tillman_____
                                                    Lisa Tillman

27   CF1997CS0003

28   30146476.wpd

DEC. TILLMAN IN OPPOSITION TO MOTION FOR DISCOVERY

## DECLARATION OF SERVICE BY OVERNIGHT COURIER AND U.S. MAIL

Case Name:     **Ralph Coleman, et al. v. Arnold Schwarzenegger, et al.**

Court:         **U.S. District Court, Eastern District of California**

Case No.:      **2:90-CV-0520-LKK-JFM-P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, Post Office Box 944255, Sacramento, CA 94244-2550.

On July 28, 2006, I served the attached **DECLARATION OF LISA TILLMAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONDUCT DISCOVERY AND RECEIVE TOUR BINDERS** by placing a true copy thereof enclosed in a sealed envelope with the **Golden State Overnight**, addressed as follows:

**MICHAEL BIEN**
**Rosen, Bien & Asaro**
**155 Montgomery Street, 8th Floor**
**San Francisco, CA  94104**
*via Golden State Overnight*

**STEVE FAMA**
**Prison Law Office**
**2173 "E" Francisco Boulevard, Suite M**
**San Rafael, CA  94901**
*via Golden State Overnight*

**CLAUDIA CENTER**
**The Legal Aid Society -**
**Employment Law Center**
**600 Harrison Street, Suite 120**
**San Francisco, CA  94107**
*via Golden State Overnight*

**PETE COCKCROFT, H-86887**
**California State Prison, Sacramento**
**FA2-205**
**Post Office Box 290066**
**Represa, CA  95671-0066**
*via U.S. Mail*

**KIMBERLY S. DAVENPORT**
**California Medical Association**
**221 Main Street**
**San Francisco, CA  94105**
*via U.S. Mail*

**STEPHEN W. MAYBERG**
**California Department of Mental Health**
**1600 Ninth Street, Room 151**
**Sacramento, CA  95814**
*via U.S. Mail*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 21, 2006, at Sacramento, California.

| | |
|---|---|
| M. McIntosh | */ s / M. McIntosh* |
| Declarant | Signature |

30146535.wpd