ERIC WILLIAMS

CALIFORNIA MEDICAL FACILITY
P.O. Box 2000
VACAVille, CALifornia 95696-2000

Re: ILLEgAL PsychoLogicAL Torture of A inmate.

**FILED**

ColemAN V. SchwArzeneggER, Et, AL
CASE#: CIV S-90-0520-LKK-JFM-P

AUG - 4 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

HonorAble LAWrence K. KArlton, U.S. District Judge

I Am A inmate incArcerAted within CALiforniA DepArtment
of correctioNS And RehABilitAtioN. I Am Also classifred AS
E.O.P., As Such I Am A Member of The ColemAN V. SchwArzeneggER
CLASS ACTION civiL Suit.

for The PAST 2 yeArs, correctionAL officers HAve Been
PsychoLogicAlly Torturing Me continuously, And The psychoLogicAL Torture
HAS followed Me To 5 Different prisons within This 2 yeAr period.
Because This pyschoLogicAl Torture HAS followed Me To 5 Different
Prisons, This is in fAct EvideNce, That This psychoLogicAL Torture
That I Am Being TArgeted for, is orchestrAted And orgAnizeb By A
Senior officer AT C.D.C.R. HeAdQuArters, who is TrAcking my movement
from prison To prison, And is INstructing officers on How To Apply
PsychoLogicAL Torture TeAchniQues on Me.

It first StArted when I WAS At R.J. DonovAN CorrectionAL
fAcility, Around April of 2004. This is when officers put A "Dress"
on Me. The ReASoN why I use The Term 'Dress" is BecAuse This is
How I HeArd Another officer Describe The psychoLogicAL Torture
That I WAS Being TArgeted for. The PsychoLogicAL Torture TeAchniQues
That officers would Administer on Me Are, They first StArt
SpreAding fAlse Rumors SAying That I perform orAL Sex on men.
officers would Then constAntly sexuAlly HArAss me, with Body
LAnguAge And HAnd SignALs ThAt SimulAte orAL Sex.

1

Case 2:00-cv-00520-RMB-TLB Document 1835 Filed 06/04/08 Page 2 of 57

Officers noise, like walking by my door and hitting my with there flashlight to keep me jittery, another psychological torture teachnique that the officers would use on me, is that they would stand by my door when I was sleeping, they would then listen to my inhale and exhale breathing pattern, when they hear that my breathing is at the top of a inhale, the officer would hit the door hard with their flashlight to awake me. Officer's have been administering this psychological torture teachnique on me, very methodically and strategically, as a result your Honor, I now have a irregular heartbeat and very high blood pressure.

At R.J. Donovan I then became concerned about my safety. I then attempted to address thease issue's by submitting several b02 appeals and writing a letter to the chief deputy warden. (see Ex. "A")

However, Judge Karlton during the interviews of the b02 appeals, senior hearing officers, would cover up the psychological torture by either ignoring my allegations, or place me under duress to get me to withdraw the appeal, I then attempted to seek help from the mental health staff, at this point your Honor, I was placed in central infirmary for crisis bed treatment. When I would tell the mental health staff, what the correctional officers were doing to me, there was always a officer listening in, the officer would then intimidate the mental health staff, and strongly suggest that any issue's, that I was complaining about, was a product of my previously diagnosed mental illness. The mental health doctor then told me that he can't get involved in any issue's that I have with correctional officers, and all he could do is prescribe more psychotropic medications, I then replied that I don't need more psychotropic medications, I just need for the correctional officers, to stop targeting me for intentional premeditated psychological torture. I was then discharged from the central infirmary and released back to the general population, in which the psychological torture continued. I then noticed that officers were strategically assigning inmates to my cell, that would help the officers, in administering the psychological

2

Torture Teachniques on me. I then informed my mental Health clinician, Dr. Sexton, when we would Have 1 on 1's, where there we no officers Listening in, I Told Him About The psychological Torture, Dr. Sexton Then STArted To observe me more And inquire about the mistreatment that I was Receiving.

Dr. Sexton Then wrote A 128-B chrono, saying that I should be single celled. However, your Honor the psychological Torture continued And it became clear that Dr. Sexton Did Not Have the power to stop correctional officers from psychologically Torturing me, I was Then placed in Administrative Segregation At R.J.D., Then in August of 2004 I was Transferred To California Men's Colony State Prison, (C.M.C. East)

At This point, Judge Karlton I was Sure That The psychological Torture would stop, because I was going to A New prison, where no one knew me, To the contrary, your Honor The psychological Torture followed me to C.M.C. EAST, In fact officers At C.M.C. EAST were useing The Same psychological Torture Teachniques on me, ━━━ In which The officers At R.J. Donovan Also used. It Then became clear to me, based on The Sequence of Events, That The psychological Torture was being orchestrated And controlled by a Senior officer At C.D.C.R. Headquarters.

Your Honor, while At C.M.C. EAST, I Again Attempted To seek Help from Mental Health Staff. I was Then placed in L.O.U. when I Appeared in front of I.D.T.T., I Advised Mental Health Staff That officers were psychologically Torturing me, Mental Health Staff Then Responded By saying That They can't get involved in Any Issue's That I Have with correctional officers, And That All They could Do is Send me on A Temporary Transfer To Another Institution, for Crisis Bed Treatment.

I was Then Sent To CSP/LAC And Admitted into there central infirmary, for Mental Health Crisis Bed Treatment.

3

me, to CSP/LAC and continued while I was in the Central infirmary. I then appeared in front of I.D.T.T. at CSP/LAC, I advised the mental Health staff that correctional officers were psychologically torturing me, and the Torture was following me from Prison to Prison. The mental Health doctors at CSP/LAC, also advised me that they can't get involved in any issues that I have with correctional officers, and that all they can do is prescribe more psychotropic medication.

I stayed at CSP/LAC for about 2 weeks, this was around the middle of September of 2004, I was then Discharged and sent back to C.M.C. East, and Readmitted into L.D.U. I again appeared in front of I.D.T.T. and again informed mental Health staff, that correctional officers were continuing to psychologically torture me, mental Health staff then responded by saying that they can only send me on another temporary transfer, to a Different institution, for more crisis bed Treatment.

At this point, your Honor I was sent to substance Abuse Treatment facility, (SAtF") and admitted into there Central infirmary for crisis bed Treatment. The psychological Torture continued to follow me to SAtF". I appeared in front of I.D.T.T. at SAtF", I advised the mental Health staff, that correctional officers were psychologically Torturing me, and the Torture was following me from Prison to Prison.

Judge Karlton, one particular psychologist by the name of Dr. Malue, appeared to be concerned, he told me that he was gonna try to help me, and keep me at SAtF" so I could get some rest. However, a few days later I appeared again in front of I.D.T.T. at SAtF", and Dr. Malue was not present, I then inquired about Dr. Malue and was told that, He unexpectedly Had to Take some Time off. At this point, it appeared to me that because Dr. Malue was willing to Help me, senior officers possibly Persuaded Dr. Malue to Take some Time off, During my Temporary stay at SAtF".

4

The end of September of 2004 Threw The begining of October of 2004, I was Then Discharged from Sati.f. And Sent Back To C.M.C. EAST. Again I was Re.Admitted into L.O.U. , And I again Appeared in front of I.O.T,T, And Again I informed Mental Health STAFF That The psychoLogical Torture was Continuing To follow me.

The mental Healt STAFF At C.M.C. EAST/ Again informed me That They can't get invoveD in Any ISSues That I Have with Correctional officers, And That They would Send me To A Department of mental Health Program.

Your Honor, I was Then Transferred To California medical facility, And Admitted into The Department of Mental Health Acute psychiatric Program, The psychological Torture Again followed me. I Then Appeared in front of I.O.T.T. , And I Advised The Department of mental Health Doctors, That correctional officers within C.O.C.R. were psychologically Torture, And Strategically And methodically Tracking my movements from PRison To PRison/To Administer psychological Torture Teachniques On me.

The Department of mental Health STAFF Appeared to Be concerned, And The Doctor said That He would Keep me in The Program So I could get some Rest, While I was Admitted into The D.M.H. Program , I noticed That Correctional officers present's was Limited, But The C.O.C.R. STAFF That was Assigned To The Houseing Unit, were Medical Teachnical ASSiStants, (MiT,A.'s). The MiT.A's Continued To Administer The psychological Torture Teachnique's On me, Even while I was Admitted into The D.M.H. Program.

At This point your Honor, It Became clear That The Department of mental Health STAFF Did not Have The Power To STOP C.O.C.R. STAFF, from psychologically Torturing me. The Doctor The Discharged me And Sent me Back To C.M.C. EAST, I Arrived Back At C.M.C. EAST Around December of 2004. I was Released To The General population At C.M.C. EAST.

Case 2:04-cv-00806-KJM-SCR Document 1935 Filed 09/04/06 Page 6 of 57

My Claim to nv-0082CF... Also Told Her ABout The Psychological Torture, Then ON JANUARY 25th 2005 I WAS PLACED iN AdmiNiSTRative segregation, At C.M.C. EAST for A muTuAL ComBAT with ANother inmate, AS A Result it WAS DeTermined That I WAS gonna Be TRANSferreD BACK TO CALifornia MEDiCAL fACiLity for PermaNeNT HouseiNg. I STAyed iN AdmiNiSTRAtive segregation At C.M.C. EAST UNtiL August 31, 2005, At This PoiNT I WAS TRANSferred BACK TO CALiforniA MEDiCAL fACiLity.

Judge KACLTON, This is The PACT THAT SCAres me, while At CALiforNiA MEDiCAL fACiLity, I WAS given A physiCAL EXAMiNAtion, Around NovemBer of 2005, The DOCTOrs Then Advised me That I WAS iN Good physiCAL CoNDitioN, Then Around The LAST week of DecemBer of 2005 I mysteriously Became severely iLL. I WAS Then SeNT TO A OutsiDe MEDiCAL CeNter, KNowN AS VACAVALly CommuNity HospitAL. The DOCTOrs AT VACAVAlly CommuNity HospitAL Then CoNDucted A series of TEST oN me, TO See WHAT WAS CAuseiNg my iLlNeSS. The Doctor Then Advised me That I HAD CONTrACTed A RAre BACteriA iNfectioN, KNowN AS "FusoBAterium VAgium". I Then ASked The MEDiCAL Doctor, How CouLD I've CoNTrACTed This RAre BACteriA iNfectioN. The Doctor Then SAid That, This BACteriA iNfectioN is SO RARe, THAT A PersoN wouLD HAd, HAve TO Travel out of The CouNTry TO CoNTrACT "FusoBATerium VARium". The Doctor Then SAid, HAve You TrAveLed out of The CouNTry ReceNTLy. I Then ReplieD That I've BeeN iNCArcerAted for The PAST 8 yeArs. At This poiNT The ~~*******~~ MEDiCAL DOCTOr weNT SileNT And looked At The CorrectioNAL Officer, That WAS MoNitoriNg The CoNversation. I Then STAyed iN VACAVAlly CommuNity HospitAL ReceiviNg TreAtment from 12-25-05 TO 1-3-06, my MEDiCAL DoCTors were Dr. BArtHAm And Dr. Meogi. (See Ex: "B")

Your HoNor, Because I Am AwAre That Officers withiN C.D.C.R. HAS BeeN psychologically TortueiNg me for A SuBstANtiAL PerioD of Time, I Truly BeLieve ThEAT Whoever The SeNior officer is At C.D.C.R. HeADQuArters That is OrcheStrAtiNg The psychologicAL Torture, That Officers Are AdmiNisteriNg oN me, That PersoN is The CAuse of me CoNTrACTiNg

6

I WAS Discharged from VACAVALLY Community HOSPITAL AND
SENT BACK TO CALIFORNIA MEDICAL FACILITY, At which I WAS Re-ADMitted
INTO The PRISON HOSPITAL for Continued TreATMent. It Should AlSO Be
NOTED, THAT while I WAS Severly ill, The psychological Torture continued,
ThreWOUT The Period when I WAS iN The HOSPITAL. I WAS Released
To The GeneRAL PoPULATION AT CALifoRnia MeDiCAL fACiLity Around
1-14-06. Then ON 2-25-06 I WAS Placed iN AdmiNISTRAtive
SegReSpATioN At CALiforNia MeDiAL fACiLity.

While iN AdmiNISTRAtive SegRegAtioN, YoUR HoNor, I Then Attempted
To seek Help from RoseN, Bien, AND ASARO, Because I Knew They
were The AttorNeyS, THAT were RepReSenting The MenTAL HeALth inmATes
iN The ColeMAN civil Suit, I Then wrote A Letter AND Sent it
To RoseN, Bien and ASARO) iN June of 2006. I Received A ReSPonse
from RoseN, Bien AND ASARO, ANd I WAS AdviSed ThAT They would
TRY To Have SomeoNe Review MY SitUAtioN. (See Ex. "C")

YoUR HoNor, Then ON 7-21-06 A RepReSentAtive from RoseN,
Bien AND ASARO's Office cAme To Visit Me, ON A AttorNey Visit.
The RepReSentAtive's NAMe WAS "NAtHAN". I Then TolD NAtHAN
ThAT correctioNAL officers were PSYchologically Torturing, And could
He Help Me. NAtHAN'S ReSPonse WAS ThAT, There's Nothing He cAN
DO, AND ThAT They cAN only ADDRESS ISSUe's ThAT Affect The
entire CLASS MemBers, I Then Attempted To exPLAIN To NAtHAN
ThAT I'm The only E.O.P. CLASS memBer ThAT is Be STRAtegically
AND MethODICALLY TARGeTed for PSYchologicAL Torture. NAtHAN AgAIN
STATED ThAT, There's Nothing He cAN Do.

JUDge KARLtoN, At This PoiNt I'm Confused, Tired And
frUSTRATed. I DoN't KNow whAT To Do. CorrectioNAL officers
within C.D.C.R., Are CoNtinuing To PSYchologically Torture Me. I
feel ThAT MY Life is iN, imminent DANgeR. I'm Begging for
The Mercy of This HonorABle CoURT, To PleAse inTervene

7

Psychologically Torturing, Me. I only Seek protection for my Life And for the Psychological Torture To Stop, I Am Not Delusional This is A Real Situation That I Am Bring To Your Attention.

Also, Your Honor During This entire Time That This psychological Torture Has Been going on, I've Been Documenting Employee Witness's Name) from The 5 Different Prisons That I Have Been To During This period. (See Ex. "D")

These witness will in fact corroborate The psychological Torture That I Have Described in This Letter, Along with The Notes That Have Been Documented in my mental Health File, As Such The witness's Testimony will Demonstrate A Pattern of How This psychological Torture is following me from prison To prison, And will Reflect That I Am Being Subjected To premeditated Cruel And unusual punishment, in Violation of my 8th Amendment Right To The U.S. Constitution.

It Should Also Be noted Your Honor, That Because I was At C.M.C EAST for A Substantial period of Time, And I've Been At C.M.F. for A Substantial period of Time, As A Result of Correctional officers Blantly Administering The psychological Torture Teachniques On me) Virtually All Staff At C.M.C EAST And C.M.F. Are Aware That Correctional officers, Are psychologically Torturing me, But No one will Help me Because Correctional Officers Are Always Bullying, intimidating And placeing employees under Duress, So That They won't get involved.

Also, Judge Karlton I would Like To inform The Court That Correctional Officers Within C.D.C.R., Will Do Anything To cover up This psychological Torture, As Such Correctional officers Has The propensity To engage in witness Tampering, As A means To Cover up This On going premeditated 8th Amendment Violation. If I may make A Suggestion, Your Honor, To Assure That The integrity of Any investigation is upheld, I Think That A

Effective Remedy is to Have All The Witness's interviewed under Oath And for The Court TO Protect Me And The Witness's from Retaliation, During Any Investigation. Your Honor, can You Please Allow Rosen, Bien And Asaro To Conduct A investigation By Interviewing The Employee Witness's And Review My Mental Health File.

My Status Right Now, your Honor is That The Psychological Torture is continued, I'm in Administrative Segregation AT California Medical Facility, waiting TO Be Transferred To Another Prison. I would Like To Thank You, Your Honor for Taking Time out to Read This Letter. I Pray That This Honorable Court will Intervene And Stop correctional officers within The California Department of corrections And Rehabilitation, from Psychologically Torturing Me, in Violation of My 8th Amendment Right To The U.S. Constitution.

I Declare under The Penalty of Perjury That The Above is True And correct. I Am over The Age of 18. I Am Competant TO Testify, And will Testify if called TO DO So.

Date: 7-30-06

Eric Williams# H-98792

9

Ex. "A"

ERIC WILLIAMS #H-98792
Case 2:90-cv-00520-KJM-SCR 1-Document 1935   Filed 08/04/06   Page 11 of 57
480 alta road
San diego,california 92179

e: Conspiracy.


ttn: ·

I'm writing you this letter to bring to your attention,a situation That i think should be
onitered. I'm Housed on facility "1". I've been at this institution since august of 2003.
've been on facility "1" About 6 months. I was just recently discharged from the Enhancd out-
atient program.

The situation that i want to bring to your attention,Is there appear to be some type of
onspiracy against me On facility "1". From correctional staff.

The staff that I think are Involved are,Captain sandlin,Lt.Steel,Lt.Zinzer,Sgt.kuladrovic
;t.Mitchell,C/O Dominguez,C/O Releas, and C/O Larson. There are other officers in-
olved,however I'm still in the process of discovering there names.

This is the situation,Whenever i Go to the yard,thease named officers,Watch's me extensively
id whisper amongst each other. My program consist of going to the yard and exerciseing,and
nen sitting on a bench.

I Know what you are thinking,this Inmate is paranoid and crazy. to the contrary,that is
ot the case. I Would Not waste your time and Mines by writing this letter.

Since I've been on facility "1",I've seen situations where Sgt.Walls and Sgt.Kulodrovic
long with correctional officers,attack inmates,And the inmates End up in Adminstrative
egregation, With rule violations report For assault On staff. I do not want to be In that Kind
f situation,i would never attack staff,Nor would I threaten any bodily Injury to staff.

I'm Writing this letter because this is the only way,That i can defend myself,When it comes
wn to A inmates word,against Staff.

Although I've named supervisor staff , I do Not think that they will be directly Involved In
My Incident. The scenerio that i perceive is that, Supervisor staff will Instruct corretional
fficers to engage or provoke some sort of confrontation,And the supervisor staff will back up the
fficers on paper work.

Once again i emPhasize that i am not paranoid,This is A reality. I Only ask that you Look
ito this situation and come and talk to me. If this situation goes Uninvestigated i will be forced
} forward this letter to the Warden,The director of correction,and the Inspectors generals
ffice. Soon thereafter i will declare a Hunger strike.

Also,It should be Noted that i've been disciplinary free since 1999,To the best of my knowledge
Have No desire to violate any C.D.C. rules,and I never posess contraband. I Only hope that thease
inspiring C.D.C. Officers do not intend to Plant contraband On me or in my cell.

Thank you very Much for your time............It is greatly appreciated,as i await your
esponse.

Dated: 4-15-04

"RESPECTFULLY SUBMITTED"

ERIC WILLIAMS #H-98792

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF CORRECTIONS
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 Alta Road
San Diego, CA 92179**



April 23, 2004

Mr. Eric Williams
H-98792
F1-05-146U

Dear Mr. Williams:

This is in response to your letter received April 19, 2004, regarding your issues of inappropriate staff conduct.

Mr. Williams, our primary mission is to provide public safety through the safe and humane incarceration of convicted felons. This is a responsibility that is taken very seriously. Therefore, any time someone in our custody makes an allegation of improper behavior by an employee of the Department of Corrections, it is taken very seriously and given due consideration. The protection of the rights of the individual is the binding tie that holds the fabric of our society together, and the rights of all parties involved in this matter must be preserved. Therefore, before we will be able to proceed with any action in this matter, I must inform you that you must adhere to the proper administrative remedy guidelines. Those guidelines are established in the Inmate/Parolee Appeals process. All of the necessary information that you will need to process your complaint may be found in the California Code of Regulations, Title 15, Section 3084.1.

I appreciate your correspondence regarding this issue. If you feel that you have been treated in an inappropriate manner, I welcome your participation in the system that has been established to address these matters. Once we have received your appeal form, we will process it in a timely and proper manner.

If you have any further questions, please contact the Facility 1 Correctional Lieutenant, via institutional mail.

Sincerely,

D. M. BARNES
Chief Deputy Warden (A)

I declare under the penalty of perjury that the foregoing is true
and correct.

1) On 6-14-04 I observed I/M Williams /H-98792 walk Up to C/O Wilson and ask
   Him for A cell search receipt.

2) At this Point for no reason at all C/O Wilson begun useing profanity and obscene
   language at I/M Williams, I/M Williams then responded by saying {F}You and
   Walked away.

3) C/O Wilson then responded by balling up his fist and saying to I/M williams
   we can go right here. C/O wilson then begun useing profanity somemore. when
   C/O wilson seen that I/M Williams was not going to engage him in A Physical
   Altercation, C/O Wilson then said to I/M Williams ,I thought so,You homosexual.

   EXECUTED THIS 15th day of june,2004.

   Demetrue Ausler

   D.Ausler /J86468

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category
1. _____    1. _____    _____
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILLIAMS | H-98792 | UNASSIGNED | 1-5-146 up |

A. Describe Problem: On 4-15-04,i was makeing an attempt to go to the law library.

I asked an inmate to ask C/o yang,if he could let me out to go to the law Li-

Brary. C/O yang just looked at my cell and smiled. I Then just stood at my

Door and attempted to wait patiently. I then sent another inmate to C/O yang

However,Again yang just looked at my door and smiled. while standing at the

Door about 10 minutes past, C/O yang then opened my door.  At this point I

Wanted to inquire,why was c/o yang delaying my access to the law library. I

Then walked over to C/o yang and asked him what the hell (see attached page0

If you need more space, attach one additional sheet.

B. Action Requested: I would like for C/O yang to formally apologize to me and
admit,in front of the inmates in which he made this false accusation that

The comment was in fact false. Also,C/O yang needs to be advised thart thease

comments and behaivor are not compatiable with the department of corrections.

Inmate/Parolee Signature: _____    Date Submitted: 4.19.04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

**First Level**   ☐ Granted   ☐ P. Granted   ☐ Denied   ☒ Other _Withdrawn_

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _4/23/04_   Due Date: _5/14/04_

Interviewed by: _ON 5-4-04, I INMATE WILLIAMS WAS INVOLVED WITH A INTERVIEW WITH SGT. MITCHELL, AND C/O YANG, REGARDING THE 602, THE AGREEMENT THAT WE HAVE REACHED, WAS FOR ME TO WITHDRAWEL THIS APPEAL. THIS IS MY INDEPENDENT DECISION, MADE ON MY FREE WILL._

_Eric Williams # H99792_

Staff Signature: _____   Title: _____   Date Completed: _____
Division Head Approved: _____   Returned: _5/4/04_
Signature: _____   Title: _____   Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____   Date Submitted: _____

**Second Level**   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____   Due Date: _____
☐ See Attached Letter

Signature: _____   Date Completed: _____

Warden/Superintendent Signature: _____   Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

**ADDITION TO PROBLEM DESCRIPTION:**
Is going on. I then advised yang that if you continue to delay my access to the
law library,I"m going to write you up.

· As i attempted to walk threw the sally ¿ort,C/O Yang made a Homosexual
Comment to me. Yang's exact words were,"Why are you mad,You go in there and suck
A'dⅇᔇ,you should be happy.' At this point I Immediately turn·d around an. walke
Tow·ᔇ·  ᔇ/

Up to yang, And asked him what did you say. C/O yang did not repeat the derogatory comment,In-

Stead he responded by saying,what are you talking about. It should be noted that Ther were

several inmates standing around and heard yang make the derogatory comment.(see EX."A"Affidavits)
    It appears that C/O Yang is attempting to paint a negative picture of me by makeing false
cusations,In A attempt to put a homosexual label or Jacket On me. This type of behaivor and com-
nts by a C.D.C. officer cannot be tolerated,and needs to be addressed aggressively.

    C/O yang's actions clearly violates C.D.C. rule In the title 15,Subchapter 5,article 2
ction 3391 (a),which says,"Employee's will be alert and courteous with there dealings with
mates.......Employees Shall not use indecent,abusive,profane or other wise Improper language
ile on duty."

    C/O Yang's actions also·violates C.D.C. Rule in the title 15,Chapter 1,article 1,3004(b)
ich says,"Employee's will not openly display disrespect or contempt for others,In A manner in-
nded to,or reasonably likely to  Disrupt orderly operations,Or Incite or provoke violence.

    C/O Yangs actions are also,Inconsistent and incompatiable with california department of
rrections. which also,violates C,D,C. rule in the title 15,Subchapter 5,article 2,sec.3413(a)(A)(2)
ich says,"No employee with the department of corrections will engage In  any other employment or
tivity,Inconsistent or incompatiable with the department of correction.......Conduct deemed to
ll within suchcatorgories include,but is not limited to,The following,ConTains defematry,In-
ntionally false,Intentionally inaccirate,abusive,Obscene,pornographic,Profane,sexuallyorientated
 harassing"

E-59474

AFFIDAVIT OF, QuiÑONES William

I, QuiÑONES WilliAM E-59474 ,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.

1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
Going to write your b****** a*** up. I then heard C/O Yang respond by saying,"You Go In
There,You suck A D****,you should be happy,Why are you mad." I/M Williams then Walked Up to
C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
Accusation.

INterviewd 0855

I did not witness the officer near I did not hear any thing Derogatory state any thing

F7-5-150

EXECUTED THIS 16TH DAY of april,2004

Quinones William E-59474

AFFIDAVIT OF, _Michael C. Brown_

I, _Michael Brown_ _____,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.

1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
   I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
   Going to write your, b▓▓▓▓▓ up. I then heard C/O Yang respond by saying,"You Go  In
   There,You suck A D▓▓,you should be happy,Why are you mad." I/M Williams then Walked Up to
   C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
   Accusation.

$FK 5 - 146 L$

Intervened
o 450

EXECUTED THIS 16TH DAY of april,2004

_Michael Brown_  C-49693

6/4

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region          Log No.          Category

1. ___RAW___          1. _QY-770_          #1

2. _____          2. _____

You may appeal any policy, action or decision which has a significant adverse effect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILLIAMS | H-98792 | Unassigned | 2-240 1-2-200 |

A. Describe Problem: __On 5-25-04 at around 2:15 P.M. I was sitting in front of building 1, Playing__
Chess with another inmate. At this point C/O Goodbar walked up and stood next to us. C/O
Goodbar then put One leg On the bench. I then asked C/O Goodbar, can he move back, He is too
Close. C/O Goodbar responded by saying "F" You you homosexual. At this time I was shocked at
This false derogatory statement that C/O Goodbar made. I then replied "F" You. C/O Goodbar
Made this statement in front of I/M Jacobs #K-56280. (see attachment "1") C/O Goodbar
actions are a direct violation of C.D.C. rules in the title 15, Subchapter 5, article 2
section 3391 (a), Which says, Employees shall be alert, (see attached page)

If you need more space, attach one additional sheet.

B. Action Requested: __C/O Goodbar should be administratively reprimanded,__ Because by putting    this fals
__Information Out in the genral population, He is creating a situation that could have a__
Adverse effect upon me. C/O Goodbar also, needs to seek more training to ensure that he does
Not make this type of mistake again. Also his supervision of inmates should be restricted.

Inmate/Parolee Signature: _____          Date Submitted: _5-25-04_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and
submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

| First Level | ☐ Granted | ☐ P. Granted | ☐ Denied | ☐ Other _____ |

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved: Returned
Signature: _____ Date Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____ Date Submitted: _____

| Second Level | ☐ Granted | ☐ P. Granted | ☒ Denied | ☐ Other |

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 4/14/01   Due Date: 7/27/04
☒ See Attached Letter

Signature: B. EARLY, AW   Date Completed: 6/23/04
Warden/Superintendent Signature: D. M. BARNES, CDW (A)   Date Returned to Inmate: 6-28-04

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

## ADDITION TO PROBLEM DESCRIPTION:

and courteous with there dealings with inmates............Employees shall not use indecent busive,profane or other wise Improper language while on duty."

C/O Goodbar actions also violates C.D.C. rule in the title 15,Chapter 1,article1,sectin 004(b)Which says,"employees will not openly display disrespect or contempt for others in a maner intended to or reasonably likely to  disrupt oderly operations ,or to incite or provoke iolence.

C/O Goodbar actions are Inconsistent with the california department of corrections. it appear: 'hat C/O Goodbar made this false  statement in front of inmates to paint a Palse Picture of me as 'eing a homosexual. This Is false and C/O Goodbar Knows this is false. But for some reason,He 'ant the genral population to label me as A Homosexual. This is a direct violation of california lepartment of corrections rules in the title 15,subchapter 5,article 2,section 3413,(a)which :ays,"No employee with the depaRTMENT OF CORRECTIONS  will engage in any other employment or activities Inconsistent or incompatiable with the department of corrections.........conduct leemed  to fall within such catogories include but is not limited to  the followinf,contains )efamatory intentionally false,Intentionally inaccirate,abusive,profane,sexually orientated )r harassing.

Also it should be noted that I sent a letter to the chief deputy warden,Adviseing 1er of the strange activity that staff on facility 1, was directing towards me( See attachment 2)

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

1) On 5-25-04 I was sitting on a bench In front of buildind 2,on facility 1, watching I/M
Williams play chess with another inmate. At this Point C/O Goodbar walked Up and
Watched the game. C/O Goodbar then attempted to put One leg on the bench And Move closer
At this point, I/M Williams advise C/O Goodbar that he was to close,can he Please Move
back, C/O Goodbar then responded by sayinf "F" you,you homosexual. I/M Williams #H-98792
Then responded by saying f" You . At this Point C/o Goodbar started useing Numerous
abusive words towards I/M williams #h_98792.

EXECUTEC THIS @¢    26 day of may,2004

JACOBS #K-56280

**Date:**                  June 16, 2004

**NAME:**                  WILLIAMS, E.

**CDC#**                   H-98792

**APPEAL #:**              04-770              **SECOND LEVEL OF REVIEW**

**APPEAL DECISION:**       DENIED

**APPEAL ISSUE:**          You are alleging that on May 25, 2004, while playing chess in front of Housing Unit 1, Correctional Officer (C/O) Goodbar placed his foot on the bench you were sitting on. You state that you asked C/O Goodbar if he could move back because he was tooclose and that he responded by saying, "F... you, you homosexual."   You are requesting that C/O Goodbar be reprimanded, be trained, and be restricted from supervising Inmates.

**APPEAL RESPONSE:**       In reaching a decision on this issue, a thorough review of your appeal has been conducted. The attached supporting documents, applicable sections of the California Code of Regulations, Title 15, the Department Operations Manual, and your Central File have been reviewed. Additionally, on June 16, 2004, Correctional Lieutenant G. Hernandez interviewed you regarding your appeal issues.

During your interview, you did not have any other pertinent information to add in regard to your appeal. Additionally, on June 16, 2004, Lieutenant Hernandez interviewed your witness, Inmate JACOBS, K-56280, who stated the exchange of words that occurred between C/O Goodbar and yourself took place in front of Housing Unit 2.

In reviewing your appeal and attached documentation, it was noted that there were discrepancies between your statements and your witness' written/verbal statements.   These discrepancies have taken credibility away from your allegations and your witness' statements. You have not submitted sufficient evidence to support your allegations against C/O Goodbar. Your allegations are unfounded and without merit.

Based on the aforementioned, your CDC-602 Appeal is **DENIED** at the Second Level of Review.

D.M. BARNES
Chief Deputy Warden (A)

Ex. "B"

| DATE | TIME | NOTES |
|---|---|---|
| | | |

2/24/05  9:00    — pt was afebrile an
— was seen at 10:25 — has no complaint
• pt came to ER. again with
complaints of chills and feeling
febrile.
— pt now complains of evo pain
saying has been there past 5 days,
on a upp fever a chill
• pt denied vomiting / abd pain /
diaulroea.
— pt denied urinary complaints.
— pt denied cough / cp.

V/S- BP- 87/59   PR- 113/m    7°· 103.9°
mouth - & soves /          eye - & jaundice
chest - clear to auscultation
cvs - RRR s, ns, heard, no (ms)
abd - RUβ - tenderness,
      & guarding, & palp. organ

Ext. no edema.

lab   2/2/or  WBC- 8·9   N 77%  60%
      2/23/05  WBC 16.1   S- 74%  Band 10%
      2/24/05  WBC- 20.6   S- 6 N.   Band 31%

A > R/o acute chlebcephti

plan - 0·9 N S% 500cc boln then 100cc/h
      - Ancef 2 gm IV Q 24hrs.

→ zyglend 650 y B ID PR

   f feve.

to be admitted to GOPH.
VVH -
Report given to ER
physician               Fail.
    Dr. Devinney.

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Williams, Eric

H 98792.

3/30/1970.

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** Williams, Cori   **CDC #:** H98792   **Housing:** M3/3U
**Diagnosis:** R/o acute chstecyph   **Date:** 12/24/0   **Time:** 5:30.

**REASON FOR TRANSFER:**

☐ No available hospital beds    ☒ Case requires specialist care

☐ No monitors/other equipment    ☐ Established transfer criteria

☐ Other: _____

**CONTACTS:**

☒ HOSPITAL to which pt going  VVH.    ☐ Direct admit ☒ Through the ER

☒ DOCTOR accepting pt  Dr. Devinny    Time: 5:37

☒ ER DOCTOR if going via ER  Dr Devinny    Time: 5:37

☐ CMO/MOD for CMF approval _____    Time: _____

☐ WATCH COMMANDER custody _____    Time: _____

☐ AMBULANCE Watch Com. calls _____    Time: _____

☐ PERSON sent to amb. door _____    Time: _____

**TRANSFER CODES**

☐ 1  Routine (i.e., cat scan)

☒ 2  Urgent (i.e., stabalized MI)

☐ 3  Emergency (Red light/siren)

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

**MEDICAL CONSIDERATIONS**

☐ Patient stabalized for transport   ☐ ECG   ☐ Cardiac Monitor

☐ Oxygen ___ l/min   ☐ Nasal cannula   ☐ Mask   ☐ ET tube

☒ IV O.9 N/S.   Total given prior to current IV hanging: _____

☐ Cath   ☐ NG tube   ☐ C-collar   ☐ Splinting   ☐ Back brd

**PAPERWORK DONE**

☒ Copies sent:  ☒ Labs  ☐ ECG  ☐ X-rays  ☒ Chart essentials

☒ Copy of summary Progress Note by ER-MD sent to receiving MD

☐ CMO/Custody Approval form completed & signed

☐ UC Davis form if going there    ☐ Copy of this form with records

**SIGNATURE**

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_____ Physician    _____ Date

GDT:8-21-91

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** Williams, Eric   **CDC #:** H98792 **Housing:** M313

**Diagnosis:** PUO pain Heuer humpster **Date:** 12/25/0 **Time:** _____

CT PUO man - not clearly identified
**REASON FOR TRANSFER:**

- [ ] No available hospital beds
- [✓] Case requires specialist care
- [ ] No monitors/other equipment
- [ ] Established transfer criteria
- [ ] Other: _____

## CONTACTS:

- [✓] HOSPITAL to which pt going _Vacavalley_   [ ] Direct admit  [✓] Through the ER
- [✓] DOCTOR accepting pt   Dr POPE   **Time:** 3:50
- [✓] ER DOCTOR if going via ER Dr POPE   **Time:** 3:r
- [ ] CMO/MOD for CMF approval _____   **Time:** _____
- [ ] WATCH COMMANDER custody _____   **Time:** _____
- [ ] AMBULANCE Watch Com. calls _____   **Time:** _____
- [ ] PERSON sent to amb. door _____   **Time:** _____

## TRANSFER CODES

- [ ] 1 Routine (i.e., cat scan)
- [✓] 2 Urgent (i.e., stabalized MI)
- [ ] 3 Emergency (Red light/siren)

Stark ca

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

## MEDICAL CONSIDERATIONS

- [ ] Patient stabalized for transport  [ ] ECG  [ ] Cardiac Monitor
- [ ] Oxygen ___ l/min  [ ] Nasal cannula  [ ] Mask  [ ] ET tube
- [ ] IV ___  Total given prior to current IV hanging: ___
- [ ] Cath  [ ] NG tube  [ ] C-collar  [ ] Splinting  [ ] Back brd

## PAPERWORK DONE

- [ ] Copies sent:  [ ] Labs  [ ] ECG  [ ] X-rays  [ ] Chart essentials
- [ ] Copy of summary Progress Note by ER-MD sent to receiving MD
- [ ] CMO/Custory Approval form completed & signed
- [ ] UC Davis form if going there  [ ] Copy of this form with records

## SIGNATURE

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_Kule_   12/25/0
Physician   Date

GDT-8-21-91

Ex. "C"

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO **
ERNEST GALVAN

HOLLY BALDWIN
GAY C GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
LORI RIFKIN ***
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN ****

**ROSEN, BIEN & ASARO, LLP**
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

June 22, 2006

CONFIDENTIAL - LEGAL MAIL
Eric Williams, H-98792
California Medical Facility
PO Box 2000
Vacaville, CA 95696

> Re:  *Coleman v. Schwarzenegger*
> Our File No. 489-3

Dear Mr. Williams:

I am writing in response to your letters our office received on June 7, 2006 and June 15, 2006. In the letter we received on June 15th, you mention that you would like to be interviewed during the next monitoring visit at your institution. Coleman monitors will be at California Medical Facility July 26, 2006 through July 28, 2006, we will try to have them review your situation.

In your letter we received on June 7th, you ask if we can represent you in a possible individual lawsuit. We regret that we cannot take further action at this time to directly address the concerns raised in that letter. Please refer to the Frequently Asked Questions (FAQ) handout that we previously sent you, since a wide range of mental health related topics are covered in that packet. Although we have corresponded with you in the past, you are receiving this letter because, under the *Coleman* lawsuit, we cannot directly assist with the specific issues you raised in your letters.

I have enclosed the documents you included with your letters, we have made a copy of them for our files. I have also enclosed a self-address stamped envelope for your convenience. I wish you the best of luck, and please take care.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By:  Sofia Millham

SM:pj
Encl: ORIG

Estic Williams # H-94592
CALIFORNIA MEDICAL FACILITY
P.O. Box 2000
VACAVille, CA. 95696-2000

Re: Department of corrections And Rehabilitations illegal conspiracy of
Psychological Torture.

Attn: Counselor,

I Am A inmate, incarcerated within The Department of corrections
And Rehabilitation. For The past 2 years I've Been The Target of A
covert conspiracy, That is orchestrated By Senior officers At C.D.C.R.
HeadQuarters.

Senior officers At C.D.C.R. HeadQuarters, Have put A "Dress"
On me. The Reason That I use The Term, "Dress" is Because This
is How Other officers Described The psychological Torture That
I Am Being Targeted for.

NOW, Let me explain To you what it means To put A, "Dress"
On A inmate from my own personal Experience. It first Started when I
was At R.J. Donovan Correctional facility, Around April of 2004.
Officers At R.J. Donovan Suddenly Start Spreading false Rumors
About me, Saying That I perform oral Sex on men. Officers would
Then Constantly sexually Harass me with Body Language And Hand
Signals That Simulate oral Sex. Officers would Also Send other
inmates To constantly sexually Harass me with Hand Signals And
Body Language That Simulate oral Sex. Officers would Also
intentionally Subject me To excessive Noise, To Keep me on Edge.

What I've Realized is That Someone is Directing The officers
To constantly Administer All Theare Psychological Torture Techniques
On me, All The Time, During The Coarse Of The officers Shift. It Then
Became clear To me That, The officers Goal was To constantly Keep
me under pressure, By continuously Administering The psychological
Torture Teachniques On me, And Simontaneously to Try, to Convince
Everyone That comes into Contact with me, That I perform oral
Sex on men.

1

I they Thought That if I Just knew what The Officers were Doing To me, They would Eventually Just Stop. However, I Soon Realized How Serious The Situation was, when The officers Did Not Stop, And The psychological Torture continued with more Intensity And Frequency.

I soon became concerned About my Safety, Because officers were Targeting me for, This psychological Torture. I Then Attempted To Address The Issue, By writing A Letter to The chief Deputy Warden, And Also filing 602 Appeals forms pertaining To Each individual incident. I Also Had witness's sign Affidavits To Substantiate The Issue's That I was Asserting in The 602 Appeal form (See Ex. "A")

Upon investigating my Appeals, The officers would simply Deny The issue in The 602 Appeal. Also, The witness's That signed Affidavits were intimidated TO The Point where They Recant There statements, in which They Previously signed under Oath. At This point I grew frustrated Because I could Not Receive Any Help, Threw The 602 Appeals Process. In fact, During The 602 Appeals Process it Appeared That senior officers, were Looking for Reasons To cover up And Discredit my claim, Rather Then Acknowledge The Truth in my claims.

At This point, while At R.J.D., The psychological Torture Began To overwhelm me. I Then Attempted To Seek Help from The mental Health Department, Because I was E.O.P. I Then Told my clinician Dr. Sexton, About The psychological Torture, Dr. Sexton Appeared To Be Concerned And was willing to Help me. Dr. Sexton Then Said, That first I Should Be Single celled. He Then wrote A 128-B chrono Recommending That I Be single celled. It Should Also Be Noted That Dr. Sexton was A Newly Acquired psychologist with The Mental Health Staff At R.J.D. I Soon Realized That Dr. Sexton Had Limited Power To Help me, And Correctional Officers would Just Disregard Dr. Sextons Authority And continue To Administer The psychological Torture Teachniques on me, Then One Day I was Told That Dr. Sexton Had Resigned from working with C.D.C.R.

I was Then Admitted into central infirmary At R.J.D., for Crisis Bed Treatment. I Advised The psychiatrist And psychologist That I was Being Targeted for psychological Torture, By Correctional Officers. During This conversation with mental Health Staff,

Case 2:90-cv-00520-KJM-SCR   Document 1935   Filed 08/04/06   Page 32 of 57

I NOTICED THAT A NURSE WAS LISTENING IN, AND THEN THE OFFICER WOULD MAKE COMMENTS TO TRY TO MAKE IT APPEAR THAT THE PSYCHOLOGICAL TORTURE, WHICH I WAS COMPLAINING ABOUT WAS A PRODUCT OF MY PREVIOUS DIAGNOSED MENTAL ILLNESS. I THEN NOTICED THAT THE OFFICER WAS RELENTLESS WITH THIS ASSERTION, AS IF TO TRY TO CONVINCE OR PERSUADE THE MENTAL HEALTH DOCTOR TO ADOPT HIS THEORY.

DURING MY ENTIRE STAY IN CRISIS BED AT R.J.D., THE OFFICERS WOULD STRATEGICALLY LISTEN IN, ON MY CONVERSATIONS WITH MENTAL HEALTH STAFF, AND CONTINUALLY MAKE COMMENTS TO TRY, TO MAKE IT APPEAR THAT THE PSYCHOLOGICAL TORTURE WAS A PRODUCT OF MY PREVIOUS DIAGNOSED MENTAL ILLNESS. SOON, THEREAFTER THE MENTAL HEALTH DOCTOR SAID THAT ALL HE CAN DO IS PRESCRIBE MORE PSYCHOTROPIC MEDICATION, AND THAT HE CAN'T GET INVOLVED IN ANY ISSUES THAT I HAVE WITH CORRECTIONAL OFFICERS. I WAS THEN DISCHARGED FROM CENTRAL INFIRMARY AND RETURNED BACK TO THE GENERAL POPULATION, AS IT BECAME CLEAR TO ME THAT THE OFFICERS WERE COVERING UP THE PSYCHOLOGICAL TORTURE.

OFFICERS, THEN TRIED TO ASSIGNED A INMATE TO MY CELL THAT WOULD HELP THEM ADMINISTER THE PSYCHOLOGICAL TORTURE TEACHNIQUES ON ME. I THEN REFUSED A CELLMATE, AND WAS PLACED IN ADMINISTRATIVE SEGREGATION AND GIVEN A C.D.C. 115, LATER THE 115 WAS DISMISSED BECAUSE OF THE PREVIOUS 128-B THAT DR. SEXTON WROTE.

THEN IN AUGUST OF 2004, I WAS TRANSFERRED TO CALIFORNIA MEN'S COLONY STATE PRISON AS A E.O.P. HUB AD-SEG OVERFLOW. AT THIS POINT I WAS SURE THAT THE PSYCHOLOGICAL TORTURE WOULD STOP, BECAUSE I WAS GOING TO A NEW PRISON, WHERE NO ONE KNEW ME, BUT I WAS WRONG, THE PSYCHOLOGICAL TORTURE FOLLOWED ME FROM R.J.D. TO C.M.C. EAST. IN FACT IT WAS WORST AT C.M.C. EAST THEN AT R.J.D.

I WAS PUZZLED AND WONDERED HOW COULD THIS PSYCHOLOGICAL TORTURE FOLLOW ME FROM ONE PRISON TO ANOTHER. I THEN REALIZED THAT OFFICERS AT C.M.C. EAST WAS USEING THE SAME PSYCHOLOGICAL TORTURE TEACHNIQUES ON ME, THAT THE OFFICERS USED AT R.J.D.

I THEN CONCLUDED THAT SOMEONE IS STRATEGICALLY ADVISING THE OFFICERS AT THEASE TWO DIFFERENT PRISON TO, ADMINISTER THE SAME PSYCHOLOGICAL TORTURE TEACHNIQUES ON ME, AND THAT PERSON IS ORCHESTRATING THIS CONSPIRACY FROM C.D.C.R. HEADQUARTERS,

2

Because of the fact that the psychologial torture followed me from R.J.D. to C.M.C. east, Again I Attempted to seek help from the mental Health staff, while at C.M.C. EAST, Around september of 2004 I was Admitted into a wing, know as O.H.U. I then told the mental Health Doctors About the psychological torture that the officers were targeting me for. During my conversations with mental Health staff, A sst. forker was Always present, sgt. forker would then Assert to mental Health Doctors, that the psychological torture that I was complaining about, was a product of my previous Diagnosed mental illness. I then Realized that this is the same Lie, that the officer at R.J.D. was Asserting to mental Health staff. It then became clear to me that this whole conspiracy was Designed to target my mental state of mind, while at the same time useing my previously Diagnosed mental illness to cover up the psychological torture that I complained About, by Exaggerating the severity of my previously Diagnosed mental illness

At this point while in O.H.U. At C.M.C. EAST, the mental Health Doctor said that He was going to send me on a special Transfer to Another institution, for crisis Bed Treatment, Around the End of september of 2004, I was Transfered to CSP/LAC for crisis bed Treatment. The psychological torture Again followed me to CSP/LAC. But Because officers Had Limited Access to me in crisis Bed, the main psychological torture teachni que that they would use on me, was the Noise tactic. They would walk by my Door periodically And Hit the Door with there Baton, to startle me And keep me on Edge.

I then Advised mental Health Doctors About the psychological torture, And How it followed me from prison to prison, But Before the mental Health Doctor could Respond, the correctional counselor intervened And said, "mental Health Doctors can not intervene or get involved in Any Issue's that I Have with officers, All that the Doctors can Do is prescribe medications. I immediately concluded that the correctional counselor was there to cover up the conspiracy to psychologically Torture me. The mental Health Doctor then Responded by saying that, All He can Do is prescribe more psychotropic medication And Discharge me.

4

Case 2:90-cv-00520-RJM-SCR Document 1835 p Filed 08/04/06 Page 34 of 57

I was then in a isolation crisis bed and sent back to C.M.C. East. Upon Arrival I was Re-Admitted into O.H.U. I again Appeared in front of Mental Health Staff, I advised the Doctors That The psychological Torture followed me to CSP/LAC crisis bed. I Then Added That, can you please tell The Officers to stop with The Psychological torture. The Doctor Then said That All He can do is send me on, Another Transfer To A Different institution for more crisis Bed Treatment.

I was Then Transferred to Substance Abuse Treatment facility, (SAT."F") And Admitted into There central infirmary for crisis Bed Treatment. Again The Psychological Torture continued to follow me To SAT."F." I Appeared in front of Mental Health Staff At SAT."F"; I Advised Them That officers were continually Psychologically Torture me, And it was following me from Prison to Prison,

At SAT."F" There was A Mental Health Doctor, By The name of Dr. Malue, when This Doctor Heard my story, He Appeared To want to Help me. Dr. Malue said That He was going to keep me At SAT."F" for Observation, And so I could get some Rest. Then Later on when I Appeared infront of The Mental Health Doctors At SAT."F" I Noticed That Dr. Malue was not present. I Then inquired About Him, I was Told That He unexpectedly Had To Take some Time off. At This point I knew, This was Part of The cover up, And Because This Doctor was willing to help me, The Officers possibly Advised Him To Take some Time off. It Should Also Be Noted That while At SAT."F", I Asked The Mental Health Doctors, if They could send me To Atascadero State Hospital. The Reason I was Seeking To go to Atascadero State Hospital, is Because I knew That The Department of Mental Health controlled That Program, And I figured That I could Tell The D.M.H. Doctors, About The Psychological Torture, And C.D.C.R. Doctors would Not Be Around To manipulate or persuade, The Doctors That The psychological Torture was A Product of my previous Diagnosed Mental illness.

The Doctor At SAT."F" Then said That They can Not send me To Atascadero State Hospital, Because SAT."F" was Not given Enough Beds At, Atascadero.

5

he, And Send me BACK to C.M.C.EAST, I WAS Then Transferred BAck to C.M.C. EAST, The Psychological torture continued. I WAS AGAIN Admitted into O.H.U. I AGAIN Advised The mental Health Doctors, That The Psychological Torture is continuing to follow me. I Then ASKed The mental Health Doctors At C.M.C.EAST, if They could Send me TO ATASCADero State HoSpital To Receive mental Health Treatment.

Dr. KAte SAid That She will Send me TO A DepArtment of mental Health program, Located At CALIforNiA medical fAcility. I WAS Then Transferred To CALIforNiA medical facility, And Admitted into The DepArtment of mental Health AcuTe PsychiAtric prugcam. I AgAiN Appeared in front of mental Health StAff, And informed Them That C.D.C.R. officers were psychologically Torturing me, And The Torture would follow me from prison to prison. The D.M.H. DocTor SAid That He would Help me, By Keeping me into The ProgrAm SO I could get Some Rest.

While At C.M.F. Admitted into The D.M.H. Program, I NoTiced That RARely Appeared in The Houseing Wing That I WAS in. I WAS OptimisTic That The Psychological Torture would STop, BecAuSe of The Limited PResence of CorrecTioNAl officers. However, The C.D.C.R. STAff That WAS ASSigned To The Wing, were medical Teachnicial ASSISTANTS, (M.T.A.'s). The M.T.A.'s Then ConTiNued The psychological TorTure, By useing The SAme PSychoLogicAL TorTure TeachniQues, That The officers At R.J.D., C.M.C.EAST, CSP/LAC, And SAT."F" used on me. At This Point I WAS ConvinceD That This CoNSpirAcy WAS in FACT, OrchestrAted By Senior officers AT C.D.C.R. HeAdQuArters, BecAuse The SAme PSychoLogicAL TorTure TeachniQues WAS Being used on me At 5 Different INStiTuTioNS, which DemoNSTrATes A PAttern.

After, A Period of Time At C.M.F. Admitted iNTo The D.M.H. ProgrAm, I ReAlized ThAt I could NoT geT AwAy from The PsychologicAL TorTure. I WAS Then DischArged And ReTurned BACK TO C.M.C.EAST. Upon ArrivAL At C.M.C. EAST, The PSychologicAL TorTure conTiNued. I Then BecAme confuSed, And Did NoT KNow who I could Seek Help from. my clinicAN AT C.M.C.EAST WAS Dr. RobiNSoN.

EAST, WAS BETWEEN SEPTEMBER 2004 THREW DECEMBER OF 2004.

I WAS THEN RELEASED TO THE GENERAL POPULATION AT C.M.C EAST. SOON THEREAFTER, I WAS PLACED IN ADMINISTRATIVE SEGREGATION FOR A MUTUAL COMBAT. WHILE IN AD.SEG I TOLD THE I.C.C. COMITTEE THAT THE INMATE THAT I HAD A MUTUAL COMBAT WITH, SHOULD BE CONSIDERED MY ENEMY, AND THAT I SHOULD BE TRANSFERRED, THE COMMITTE THEN DESIGNATED FOR ME TO BE TRANSFERRED BACK TO C.M.F., FOR PERMANENT HOUSING. WHILE IN AD.SEG AT C.M.C. EAST, MY CLINICIAN WAS DR. HOODALE, I TOLD HER ABOUT THE PSYCHOLOGICAL TORTURE.

IT SHOULD ALSO, BE NOTED THAT BECAUSE I WAS AT C.M.C.EAST FOR A SUBSTANTIAL PERIOD OF TIME. VIRTUALLY ALL OFFICERS, STAFF AND INMATES BECAME AWARE OF THE FACT THAT OFFICERS WERE PSYCHOLOGICALLY TORTURING ME. I THEN ACQUIRED A SUBSTANTIAL NUMBER OF NAMMES OF WITNESS'S THAT HAVE KNOWLEDGE OF THE FACT THAT OFFICERS, WERE PSYCHOLOGICALLY TORTURING ME, AND SUCH KNOWLEDGE WOULD CORROBORATE MY VERSION OF THIS CONSPIRACY. HOWEVER, I WOULD LIKE TO EMPHASIZE THAT ALL INVESTIGATIONS PERTAINING TO THIS PSYCHOLOGICAL TORTURE, THAT HAVE BEEN CONDUCTED BY C.D.C.R., WILL BE AND HAVE BEEN COVERED UP BY ASSERTING THAT THE PSYCHOLOGICAL TORTURE THAT, I COMPLAIN ABOUT IS A PRODUCT OF MY PREVIOUS DIAGNOSED MENTAL ILLNESS, BY EXAGGERATING THE SEVERITY OF MY PREVIOUS DIAGNOSED MENTAL ILLNESS. CORRECTIONAL OFFICERS HAVE BEEN CONTINUOUSLY INTIMIDATING MENTAL HEALTH STAFF, TO THE POINT WHERE MENTAL HEALTH STAFF WOULD IGNORE THE PSYCHOLOGICAL TORTURE, THAT I'M BEING TARGETED FOR.

I WAS THEN TRANSFERRED BACK TO C.M.F. FOR PERMANENT HOUSEING, ON 9-1-05. UPON ARRIVAL AT C.M.F. THE PSYCHOLOGICAL TORTURE CONTINUED. AT THIS POINT, I GAVE UP ON SEEKING HELP FROM THE MENTAL HEALTH DEPARTMENT, AND THOUGHT THAT IF I JUST BE QUIET THE OFFICERS WOULD JUST LEAVE ME ALONE, EVENTUALLY. I ALSO JUST CONTINUED TO DOCUMENT POTENTIAL WITNESS'S NAMES, AT C.M.F.

I WOULD ALSO LIKE TO MENTION THAT, DURING THIS TIME FRAME IN WHICH THE OFFICERS HAVE BEEN TARGETING ME FOR PSYCHOLOGICAL TORTURE, I MYSTERIOUSLY BECAME MEDICALLY ILL ON TWO SEPERATE OCCAISIONS, ONCE WHEN I WAS IN AD-SEG AT C.M.C. EAST IN MARCH OF 2005, AND ALSO WHILE I WAS IN THE GENERAL POPULATION HERE AT C.M.F. IN DECEMBER OF 2005.

The Second Time I Got Sick was when I became
suspicions, Because in October of 2005 I was given a physical
examination by a doctor here at C.M.F.. The doctor then reviewed all of
my medical test, and told me that I was in good health. Then all
of a sudden in December of 2005 I suddenly and mysteriously
became extreamly ill. I was sent to the emergency room here at
C.M.F. on 4 seperate occaisions, over a four day period. On the last
occasion I was sent to the emergency room, the doctor determined that
I should be sent to Vacavally hospital emergency room, which is outside
of C.M.F., I was then rushed to Vacavalley hospital by ambulance,
I had a tempature of around 100.3 and my blood pressure was 90/10
and dropping.

I was extreamly ill, and while I was laying in the bed
in the emergency room, a officer was assigned to watch me. This
officer continued to administer the psychological tortuare teachniques
on me, at the outside hospital. At this point I thought to myself that
this whole conspiracy to psychologically torture, could be the cause
of me getting suddenly and mysteriously sick. I then thought that the
officers probably poisoned me.

C/o J. Guidi then said to me, "Williams I don't want to stay at
the hospital with you on Xmas Eve, so I'm going to tell the doctor to
discharge you and send you back to C.M.F.. Soon thereafter, the doctor
at Vacavalley told me that he is going to discharge me and send me back
to C.M.F..

It should also be noted that prior to me, being taken to Vacavaly
hospital, it was pre-arranged for me to be admitted into Vacavally
hospital, threw the emergency room. (See Ex." B")

Because C/o J. Guidi request, I was taken back to C.M.F. upon
arrival, the doctor at C.M.F. asked me, why am I back, you were supposed
to be admitted into Vacavalley hospital, I then advised the doctor that
C/o J. Guidi advised me, that because it was Xmas Eve, he did not want
to be at the hospital with me, and as a result he was advising the
doctor at Vacavalley hospital to discharge me. At this point
the doctor at C.M.F. advised the watch commander that I needed
to go back to Vacavally hospital.

4.

I was Then Transported Back To VACAVILLE By Different escorting officers. At This Point I was Admitted into the Hospital. (See Ex. "C")

The Doctors At VACAVILLE Hospital was Very Concered To & find out what was causeing My illness, And As A Result They Ran Numerous Test on me. Later on The Doctors Diagnosed me As Having Contracted A Very Rare Bacteria Infection That caused A, Abcess To form on My Liver. The Doctor Then informed me That This Bacteria infection was so Rare, That A Person would Have, Had To Traveled Outside of The Country To Contract This Type of Bacteria infection. The Doctor Then Asked me, Did I Travel outside of The Country Recently. I Then Responded By Saying, "no I've Been incarcerated for The Past 9 years. At This Point The Officer That was Present, gave The Doctor A intimidating Stare, And The conversation Ended. The name of The Bacteria infection which I mysteriouly Contracted, Here At C.M.F., was FusoBacterian Vacium. I Stayed At VACAVILLE Hospital Receiving Treatment, from 12-25-05 To 1-3-06. My Doctors At VACAVILLE Hospital were, Dr. DeVinney The Emergency Room Doctor who Discharged me on 12-24-05. Later After I was Admitted into The Hospital, My Treating physicians were, Dr. Johnson, Dr. Dassah, Dr. Meogi, Dr. Taylor And Dr. Pacham.

I was Discharged on 1-3-06 And Sent Back To C.M.F., upon my Arrival At C.M.F., I was ReAdmitted into The prison Hospital To continue Treatment. The psychological Torture continued Even while I was in The Hospital. I was Discharged from The prison Hospital on 1-18-06, And Released Back To The General population.

As I Think Back, on The coarse of Events, And The fact That Officers Are Targeting me for Psychological Torture, I'm inclined To Believe That whoever The Senior officer is At C.D.C.R. Headquarters, That is orchestrating This Conspiracy, That person is cause for me Contracting That Rare Bacteria infection. At This Point I'm fearful of My Life, I Think one Day Officers will Murder me, And cover it up with false Documents. I Sincerly Think That A investigation will Reveal That C.D.C.R. Officers Are Conspiring Against me, By Targeting me for psychological Torture, That Has Taken place over 2 years, And occurred At 5 Different institutions, As Such This Means That I Am Not Safe, no where within C.D.C.R.

9

CAN You Please Help me CONDUCT A INVESTIGATION, TO UNCOVER this conspiracy. This conspiracy HAS Been TAKen PLACE for Too Long, Officers Are BLANTLY TARGeTING Me.

Also, I Am CLASSified AS E.O.P., I've Been iNCARCerATed for 6 YeArs Now. I Previously corresponded with RoSen, Bien And ASATO when I WAS At CSP/LAC iN, 2000 AND 2001. I'm AWAre of Your Work You DO for MenTAl Health iNmATes, AS Such I Know How VALuABLe Your Time is, And I wouldn't DAre wASte YourTime for A SiTuATioN ThAT Does NOT WArrAnt Your iNTerVenTion. However, I Think That This conspiracy That I'm Being TArgeTed for, Does WArrAnTS Your iNTerVenTion. I Am Being DisCriminAted And conspired AgAiNsT, Due To my menTAL HandicAP, for PsychoLogicAL TorTure.

I Also, give my consent for You To Share This information with The coleman Special mASTer, And The office of The inspector GenerAL. CAN you Please Help me, I Don't Know whAT Else To Do, ... ThAnk You Very much for Your Time, AS I AwAiT for Your Response,

"Respectfully SuBmitted"

DATE: 6-9-06

Eric WilliAMS

10

ERIC WILLIAMS #H-98792
Case 2:90-cv-00520-KJM-SCR 1-5 Document 1935 Filed 08/04/06 Page 40 of 57
480 alta road
San diego,california 92179

e: Conspiracy.


ttn:·

I'm writing you this letter to bring to your attention,a situation That i think should be
onitered. I'm Housed on facility "1". I've been at this institution since august of 2003.
've been on facility "1" About 6 months. I was just recently discharged from the Enhancd out-
atient program.

The situation that i want to bring to your attention,Is there appear to be some type of
onspiracy against me On facility "1". From correctional staff.

The staff that I think are Involved are,Captain sandlin,Lt.Steel,Lt.Zinzer,Sgt.kuladrovic
gt.Mitchell,C/O Dominguez,C/O Releas, and C/O Larson. There are other officers in-
olved,however I'm still in the process of discovering there names.

This is the situation,Whenever i Go to the yard,thease named officers,Watch's me extensively
id whisper amongst each other. My program consist of going to the yard and exerciseing,and
en sitting on a bench.

I Know what you are thinking,this Inmate is paranoid and crazy. to the contrary,that is
ot the case. I Would Not waste your time and Mines by writing this letter.

Since I've been on facility "1",I've seen situations where Sgt.Walls and Sgt.Kulodrovic
long with correctional officers,attack inmates,And the inmates End up in Adminstrative
egregation, With rule violations report For assault On staff. I do not want to be In that Kind
f situation,i would never attack staff,Nor would I threaten any bodily Injury to staff.

I'm Writing this letter because this is the only way,That i can defend myself,When it comes
own to A inmates word,against Staff.

Although I've named supervisor staff , I do Not think that they will be directly Involved In
NY Incident. The scenerio that i perceive is that, Supervisor staff will Instruct corretional
fficers to engage or provoke some sort of confrontation,And the supervisor staff will back up the
fficers on paper work.

Once again i emPhasize that i am not paranoid,This is A reality. I Only ask that you Look
ito this situation and come and talk to me. If this situation goes Uninvestigated i will be forced
} forward this letter to the Warden,The director of correction,and the Inspectors generals
ffice. Soon thereafter i will declare a Hunger strike.

Also,It should be Noted that i've been disciplinary free since 1999,To the best of my knowledge
Have No desire to violate any C.D.C. rules,and I never posess contraband. I Only hope that thease
unspiring C,D.C. Officers do not intend to Plant contraband On me or in my cell.

Thank you very Much for your time............It is greatly appreciated,as i await your
:sponse.


Dated: 4-23-04
4-15-04

"RESPECTFULLY SUBMITTED"

_signature_
ERIC WILLIAMS #H-98792

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                                        ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF CORRECTIONS**
**RICHARD J. DONOVAN CORRECTIONAL FACILITY**
**480 Alta Road**
**San Diego, CA 92179**



April 23, 2004

Mr. Eric Williams
H-98792
F1-05-146U

Dear Mr. Williams:

This is in response to your letter received April 19, 2004, regarding your issues of inappropriate staff conduct.

Mr. Williams, our primary mission is to provide public safety through the safe and humane incarceration of convicted felons. This is a responsibility that is taken very seriously. Therefore, any time someone in our custody makes an allegation of improper behavior by an employee of the Department of Corrections, it is taken very seriously and given due consideration. The protection of the rights of the individual is the binding tie that holds the fabric of our society together, and the rights of all parties involved in this matter must be preserved. Therefore, before we will be able to proceed with any action in this matter, I must inform you that you must adhere to the proper administrative remedy guidelines. Those guidelines are established in the Inmate/Parolee Appeals process. All of the necessary information that you will need to process your complaint may be found in the California Code of Regulations, Title 15, Section 3084.1.

I appreciate your correspondence regarding this issue. If you feel that you have been treated in an inappropriate manner, I welcome your participation in the system that has been established to address these matters. Once we have received your appeal form, we will process it in a timely and proper manner.

If you have any further questions, please contact the Facility 1 Correctional Lieutenant, via institutional mail.

Sincerely,

D. M. BARNES
Chief Deputy Warden (A)

I declare under the penalty of perjury that the foregoing is true
and correct.

1) On 6-14-04 I observed I/M Williams /H-98792 walk Up to C/O Wilson and ask
   Him for A cell search receipt.

2) At this Point for no reason at all C/O Wilson begun useing profanity and obscene
   language at I/M Williams, I/M Williams then responded by saying F*You and
   Walked away.

3) C/O Wilson then responded by balling up his fist and saying to I/M williams
   we can go right here. C/O wilson then begun useing profanity somemore. when
   C/O wilson seen that I/M Williams was not going to engage him in A Physical
   Altercation, C/O Wilson then said to I/M Williams ,I thought so,You homosexual.

   EXECUTED THIS  15th day of june,2004.

                                              Demetrice Ausler

                                              D.Ausler /J86468

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region   Log No.   Category

1. ___   1. ___   ___

2. ___   2. ___

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILLIAMS | H-98792 | UNASSIGNED | 1-5-146 up |

A. Describe Problem: On 4-15-04,i was makeing an attempt to go to the law library.
I asked an inmate to ask C/o yang,if he could let me out to go to the law Li-
Brary. C/O yang just looked at my cell and smiled. I Then just stood at my
Door and attempted to wait patiently. I then sent another inmate to C/O yang
However,Again yang just looked at my door and smiled. while standing at the
Door about 10 minutes past, C/O yang then opened my door. At this point I
Wanted to inquire,why was c/o yang delaying my access to the law library. I
Then walked over to C/o yang and asked him what the hell (see attached page0

If you need more space, attach one additional sheet.

B. Action Requested: I would like for C/O yang to formally apologize to me and
admit,in front of the inmates in which he made this false accusation that
The comment was in fact false. Also,C/O yang needs to be advised thart thease
comments and behaivor are not compatiable with the department of corrections.

Inmate/Parolee Signature: ___   Date Submitted: 4.19.04

C. INFORMAL LEVEL (Date Received: ___ )

Staff Response: ___

Staff Signature: ___   Date Returned to Inmate: ___

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: ___   Date Submitted: ___
Note: Property/Funds appeals must be accompanied by a completed   CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

First Level        ☐ Granted        ☐ P. Granted        ☐ Denied        ☒ Other *Withdrawn*

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 4/23/04        Due Date: 5/14/04

Interviewed by: *ON 5-4-04, I INMATE WILLIAMS WAS INVOLVED WITH A INTERVIEW WITH SGT. MITCHELL, AND CO YANG, REGARDING THE 602, THE AGREEMENT THAT WE HAVE REACHED, WAS FOR ME TO WITHDRAWL THIS APPEAL, THIS IS MY INDEPENDENT DECISION, MADE ON MY FREE WILL,*

Staff Signature: _____        Title: _____        Date Completed: _____
Division Head Approved: _____                          Returned: _____
Signature: _____        Title: _____        Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: _____        Date Submitted: _____

Second Level        ☐ Granted        ☐ P. Granted        ☐ Denied        ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____        Due Date: _____
☐ See Attached Letter

Signature: _____        Date Completed: _____

Warden/Superintendent Signature: _____        Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____        Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted        ☐ P. Granted        ☐ Denied        ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)        Date: _____

**ADDITION TO PROBLEM DESCRIPTION:**
Is going on. I then advised yang that if you continue to delay my access to the
law library, I"m going to write you up.

    As i attempted to walk threw the sally port, C/O Yang made a Homosexual
Comment to me. Yang's exact words were, "Why are you mad, You go in there and suck
A ⚫⚫⚫, you should he happy.' At this point I Immediately turned around an, walke
Tow⚫⚫⚫ :/

Up to yang, And asked him what did you say. C/O yang did not repeat the derogatory comment, In-

Stead he responded by saying, what are you talking about. It should be noted that Ther were

several inmates standing around and heard yang make the derogatory comment.(see EX."A"Affidavits)
    It appears that C/O Yang is attempting to paint a negative picture of me by makeing false
cusations, In A attempt to put a homosexual label or Jacket On me. This type of behaivor and com-
nts by a C.D.C. officer cannot be tolerated, and needs to be addressed aggressively.
    C/O yang's actions clearly violates C.D.C. rule In the title 15, Subchapter 5, article 2
ction 3391 (a), which says, "Employee's will be alert and courteous with there dealings with
mates.......Employees Shall not use indecent, abusive, profane or other wise Improper language
ile on duty."
    C/O Yang's actions also violates C.D.C. Rule in the title 15, Chapter 1, article 1, 3004(b)
ich  says, "Employee's will not openly display disrespect or contempt for others, In A manner in-
nded to, or reasonably likely to Disrupt orderly operations, Or Incite or provoke violence.
    C/O Yangs actions are also, Inconsistent and incompatiable with california department of
rrections. which also, violates C.D.C. rule in the title 15, Subchapter 5, article 2, sec.3413(a)(A)(2)
ich says, "No employee with the department of corrections will engage In  any other employment or
tivity, Inconsistent or incompatiable with the department of correction.......Conduct deemed to
ll within suchcatorgories include, but is not limited to, The following, ConTains defematry, In-
ntionally false, Intentionally inaccirate, abusive, Obscene, pornographic, Profane, sexuallyorientated
 harassing"

AFFIDAVIT OF, QuiNONES William

I, QUiNONES William E-59474 ,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.


1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
   I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
   Going to write your b♦♦♦♦ ♦♦♦ up. I then heard C/O Yang respond by saying,"You Go In
   There,You suck A D♦♦♦,you should be happy,Why are you mad." I/M Williams then Walked Up to
   C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
   Accusation.


INTERVIEWED C856
I DID DID NOT ♦♦♦♦♦ WITH that the officer
hear any state DEROGATORY

F1-5-150.


EXECUTED THIS 16TH DAY of april,2004


Quisones William E-59474

AFFIDAVIT OF, *Michael L. Brown*

I, *Michael Brown*                                    ,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.

1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
   I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
   Going to write your, b̶u̶t̶ ̶ a̶s̶s̶ up. I then heard C/O Yang respond by saying,"You Go  In
   There,You suck A D̶i̶c̶k̶,you should be happy,Why are you mad." I/M Williams then Walked Up to
   C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
   Accusation.

FP 5-146L

Interviewed
D 450

EXECUTED THIS 16TH DAY of april,2004

*Michael Brown  C-49693*

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. _RVI_    1. _04-770_    _41_

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| WILLIAMS | H-98792 | Unassigned | 2-240 |

A. Describe Problem: __On 5-25-04 at around 2:15 P.M. I was sitting in front of building 1, Playing__ Chess with another inmate. At this point C/O Goodbar walked up and stood next to us. C/O Goodbar then put One leg On the bench. I then asked C/O Goodbar, can he move back, He is too Close. C/O Goodbar responded by saying "F" You you homosexual. At this time I was shocked at This false derogatory statement that C/O Goodbar made. I then replied, "F" You. C/O Goodbar Made this statement in front of I/M Jacobs #K-56280. (see attachment "1") C/O Goodbar actions are a direct violation of C.D.C. rules in the title 15, Subchapter 5, article 2 section 3391 (a), Which says, Employees shall be alert, (see attached page)

If you need more space, attach one additional sheet.

B. Action Requested: __C/O Goodbar should be administratively reprimanded, Because by putting this fals__ Information Out in the genral population, He is creating a situation that could have a Adverse effect upon me. C/O Goodbar also, needs to seek more training to ensure that he does Not make this type of mistake again. Also his supervision of inmates should be restricted.

Inmate/Parolee Signature: _Eric Wh_____    Date Submitted: _5-25-04_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number:

**First Level**    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved: Returned
Signature: _____ Date: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review and submit to Institution or Parole Region Appeals Coordinator within 15 days of
receipt of response.

_____

_____

_____

Signature: _____ Date Submitted: _____

**Second Level**    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other ____ 4/14/01 ____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: ____ Due Date: ____ 7/27/04

☒ See Attached Letter

Signature: _____ Date Completed: 6/23/04
   B. EARLY, AW
Warden/Superintendent Signature: D. M. BARNES, CDW (A)    Date Returned to Inmate: 6-28-04

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of
response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
                                                     P.O. Box 942883
                                                     Sacramento, CA 94283-0001
                                                     Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)                                                                    Date: _____

## ADDITION TO PROBLEM DESCRIPTION:

and courteous with there dealings with inmates...........Employees shall not use indecent
busive,profane or other wise Improper language while on duty."

C/O Goodbar actions also violates C.D.C. rule in the title 15,Chapter 1,articlel,sectin
004(b)Which says,"employees will not openly display disrespect or contempt for others in a man-
er intended to or reasonably likely to disrupt oderly operations ,or to incite or provoke
iolence.

C/O Goodbar actions are Inconsistent with the california department of corrections. it appear:
hat C/O Goodbar made this false  statement in front of inmates to paint a False Picture of me as
ieing a homosexual. This Is false and C/O Goodbar Knows this is false. But for some reason,He
rant the genral population to label me as A Homosexual. This is a direct violation of california
lepartment of corrections rules in the title 15,subchapter 5,article 2,section 3413,(a)which
:ays,"No employee with the depaRTMENT OF CORRECTIONS will engage in any other employment or
activities Inconsistent or incompatiable with the department of corrections........conduct
leemed  to fall within such catogories include but is not limited to  the followinf,contains
)efamatory intentionally false,Intentionally inaccirate,abusive,profane,sexually orientated
)r harassing.

Also it should be noted that I sent a letter to the chief deputy warden,Adviseing
ier of the strange activity that staff on facility 1, was directing towards me( See attachment 2)

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

1) On 5-25-04 I was sitting on a bench In front of buildind 2,on facility 1, watching I/M
Williams play chess with another inmate. At this Point C/O Goodbar walked Up and
Watched the game. C/O Goodbar then attempted to put One leg on the bench And Move closer
At this point, I/M Williams advise C/O Goodbar that he was to close,can he Please Move
back, C/O Goodbar then responded by sayinf "F" you,you homosexual. I/M Williams #H-98792
Then responded by saying f" You . At this Point C/o Goodbar started useing Numerous
abusive words towards I/M williams #h_98792.


EXECUTEC THIS @¢   26 day of may,2004


JACOBS #K-56280

**Date:**              June 16, 2004

**NAME:**              WILLIAMS, E.

**CDC#**               H-98792

**APPEAL #:**          04-770          **SECOND LEVEL OF REVIEW**

**APPEAL DECISION:**   DENIED

**APPEAL ISSUE:**          You are alleging that on May 25, 2004, while playing chess in front of Housing Unit 1, Correctional Officer (C/O) Goodbar placed his foot on the bench you were sitting on. You state that you asked C/O Goodbar if he could move back because he was too close and that he responded by saying, "F... you, you homosexual." You are requesting that C/O Goodbar be reprimanded, be trained, and be restricted from supervising Inmates.

**APPEAL RESPONSE:**      In reaching a decision on this issue, a thorough review of your appeal has been conducted. The attached supporting documents, applicable sections of the California Code of Regulations, Title 15, the Department Operations Manual, and your Central File have been reviewed. Additionally, on June 16, 2004, Correctional Lieutenant G. Hernandez interviewed you regarding your appeal issues.

During your interview, you did not have any other pertinent information to add in regard to your appeal. Additionally, on June 16, 2004, Lieutenant Hernandez interviewed your witness, Inmate JACOBS, K-56280, who stated the exchange of words that occurred between C/O Goodbar and yourself took place in front of Housing Unit 2.

In reviewing your appeal and attached documentation, it was noted that there were discrepancies between your statements and your witness' written/verbal statements. These discrepancies have taken credibility away from your allegations and your witness' statements. You have not submitted sufficient evidence to support your allegations against C/O Goodbar. Your allegations are unfounded and without merit.

Based on the aforementioned, your CDC-602 Appeal is **DENIED** at the Second Level of Review.

D.M. BARNES
Chief Deputy Warden (A)

| DATE | TIME | NOTES |
|---|---|---|
| 12/24/05 | 9:00 | pt. pt was afebrile on - was seen at 10:25 - has no complaint |
| | | » pt came to ER again with complaints of chills and feeling febrile. |
| | | - pt now complains of RUQ pain saying has been there for last 5 days, on & off fever & chills |
| | | » pt denied vomiting / abd pain / diarrhoea. |
| | | - pt denied urinary complaints. |
| | | - pt denied cough / CP. |
| | | V/S - BP - 87/59 PR - 113/m T° - 103.9°F |
| | | mouth - ø sores / eye - ø jaundice |
| | | chest - clear to auscultation |
| | | cvs - RRR S1 ^ S2 heard, no (m) |
| | | abd - RUQ tenderness. ø guarding, ø palp. organ |
| | | Ext - no edema. |
| | | lab 12/20/05 WBC - 8.9 N 77% L 30% |
| | | 12/23/05 WBC 16.1 S - 74% Band 10% |
| | | 12/24/05 WBC - 20.6 S - 61% Band 31% |
| | | A » R/O acute cholecystitis |
| | | plan - 0.9 NS% 500cc bolus then 100cc/hr |
| | | - Ancef 2gm IV Q 24hr. |
| | | → Tylenol 650 mg BID PRN for fever. |
| | | To be admitted to [illegible] VVH - |
| | | Report given to ER physician Hall. |
| | | Dr. Devinney |

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Williams, Eric

H 98792.

3/30/1970.

CDC 7403 (04/03) EMERGENCY CARE FLOW SHEET Page 2

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** _Williams, Cory_   CDC #: _H98792_ Housing: _M313U_
Diagnosis: _R/o acute cholecystitis_ Date: _12/24/0_ Time: _5:30_

**REASON FOR TRANSFER:**

☐ No available hospital beds              ☒ Case requires specialist care

☐ No monitors/other equipment         ☐ Established transfer criteria

☐ Other: _____

**CONTACTS:**

☒ HOSPITAL to which pt going _VVH_              ☐ Direct admit  ☒ Through the ER

☒ DOCTOR accepting pt _Dr. Devinny_           Time: _5:37_

☒ ER DOCTOR if going via ER _Dr Devinny_   Time: _5:37_

☐ CMO/MOD for CMF approval  _____   Time: _____

☐ WATCH COMMANDER custody  _____   Time: _____

☐ AMBULANCE Watch Com. calls  _____   Time: _____

☐ PERSON sent to amb. door  _____   Time: _____

**TRANSFER CODES**

☐ 1  Routine (i.e., cat scan)

☒ 2  Urgent (i.e., stabalized MI)

☐ 3  Emergency (Red light/siren)

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

**MEDICAL CONSIDERATIONS**

☐ Patient stabalized for transport   ☐ ECG   ☐ Cardiac Monitor

☐ Oxygen _____ 1/min   ☐ Nasal cannula   ☐ Mask   ☐ ET tube

☒ IV _0.9 N/S._   Total given prior to current IV hanging: _____

☐ Cath   ☐ NG tube   ☐ C-collar   ☐ Splinting   ☐ Back brd

**PAPERWORK DONE**

☒ Copies sent:  ☒ Labs   ☐ ECG   ☐ X-rays   ☒ Chart essentials

☒ Copy of summary Progress Note by ER-MD sent to receiving MD

☐ CMO/Custory Approval form completed & signed

☐ UC Davis form if going there   ☐ Copy of this form with records

**SIGNATURE**

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_____
Physician

Date

GDT:8-21-91

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** Williams Eric   **CDC #:** H98792 **Housing:** M313

**Diagnosis:** R/O pan Hernia hemster **Date:** 12|25|06 **Time:** _____

**REASON FOR TRANSFER:** R/O man - not clearly identified

- [ ] No available hospital beds   [✓] Case requires specialist care
- [ ] No monitors/other equipment   [ ] Established transfer criteria
- [ ] Other: _____

## CONTACTS:

- [✓] HOSPITAL to which pt going _Vaccuvalley_   [ ] Direct admit  [✓] Through the ER
- [✓] DOCTOR accepting pt  Dr POPE   Time: 3:50
- [✓] ER DOCTOR if going via ER  Dr POPE   Time: 3:rd
- [ ] CMO/MOD for CMF approval _____   Time: _____
- [ ] WATCH COMMANDER custody _____   Time: _____
- [ ] AMBULANCE Watch Com. calls _____   Time: _____
- [ ] PERSON sent to amb. door _____   Time: _____

## TRANSFER CODES

- [ ] 1  Routine (i.e., cat scan)
- [✓] 2  Urgent (i.e., stabalized MI)
- [ ] 3  Emergency (Red light/siren)

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

Stable ca

## MEDICAL CONSIDERATIONS

- [ ] Patient stabalized for transport   [ ] ECG   [ ] Cardiac Monitor
- [ ] Oxygen ____ l/min   [ ] Nasal cannula   [ ] Mask   [ ] ET tube
- [ ] IV ____   Total given prior to current IV hanging: ____
- [ ] Cath  [ ] NG tube  [ ] C-collar  [ ] Splinting  [ ] Back brd

## PAPERWORK DONE

- [ ] Copies sent:  [ ] Labs  [ ] ECG  [ ] X-rays  [ ] Chart essentials
- [ ] Copy of summary Progress Note by ER-MD sent to receiving MD
- [ ] CMO/Custory Approval form completed & signed
- [ ] UC Davis form if going there   [ ] Copy of this form with records

## SIGNATURE

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_____ Physician   12|25|06 Date

GDT:8-21-91

Exh "O"

# WitNESS LiST

1) Dr. Morris - Psychologist - At California Medical Facility
2) Dr. Tucci - Psychologist - At California Medical Facility
3) Dr. Lawrence - Psychologist - At California Medical Facility
4) Dr. Gregg - Psychologist - At California Medical Facility
5) Dr. Robinson - Psychologist - At California Men's Colony State Prison
6) Dr. Hodale - Psychologist - At California Men's Colony State Prison
7) Dr. Switze - Psychologist - At California Men's Colony State Prison
8) Dr. Malue - Psychologist - At Substance Abuse Treatment Facility
9) Dr. Sexton - Psychologist - At R.J. Donovan Correctional Facility
10) Dr. Whdweg - Psychologist - At R.J. Donovan Correctional Facility
11) Dr. Kate - Psychologist - At California Men's Colony State Prison.