PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
KEITH WATTLEY Bar No.: 203366
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
THOMAS NOLAN Bar No.: 169692
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION RE: 1) POST-JUDGMENT DISCOVERY AND 2) PRODUCTION OF COPIES OF TOUR BINDERS AND DOCUMENTS**<br><br>**HEARING**<br><br>Date:　　August 17, 2006<br>Time:　　11:00 a.m.<br>Location:　Courtroom 25<br><br>The Honorable John F. Moulds |

**TABLE OF ABBREVIATIONS**

ASU      Administrative Segregation Unit

CDCR      California Department of Corrections and Rehabilitation.

SHU      Security Housing Unit. This is a segregated high-security housing unit where inmates including mentally ill inmates can be housed for indeterminate periods of time in locked down conditions for either in-prison offenses, gang status, or because of safety concerns. There are male SHU units at Pelican Bay State Prison (from which all inmates with serious psychiatric conditions are excluded), Corcoran State Prison, and California Correctional Institute. There is a SHU for women at Valley State Prison for Women.

# TABLE OF CONTENTS

TABLE OF ABBREVIATIONS..................................................................................................i

TABLE OF CONTENTS ...........................................................................................................ii

TABLE OF AUTHORITIES .....................................................................................................iii

INTRODUCTION AND STATEMENT OF FACTS..................................................................1

ARGUMENT ..............................................................................................................................3

I. PLAINTIFFS ARE ENTITLED TO REASONABLE FORMAL DISCOVERY IN ORDER TO FAIRLY PRESENT THEIR CASE CONCERNING THE REMAINING DISPUTED PROGRAM GUIDE ISSUES ...................................................3

    A. Plaintiffs' Legal Arguments As To Plaintiffs' Entitlement To Post-Judgment Discovery Are Uncontested..................................................................4

    B. Plaintiffs' Current Access To Critical Information Regarding Disputed Areas of Program Guide Revisions Is Severely Limited .........................................6

    C. Plaintiffs' Request For Discovery Concerning Disputed Areas Of Program Guide Revisions Is Appropriate And Should Be Granted Because the Benefits In this Case Far Outweighs Any Burden On Defendants..........................7

        1. The disputed Program Guide issues involve complex factual situations that require formal discovery so that expert testimony can be presented with an appropriate foundation .........................................7

        2. Defendants' objections to the scope of discovery are misplaced in this threshold consideration of whether plaintiffs are entitled to any discovery whatsoever ...................................................................................9

    D. Defendants' Suggestion That Plaintiffs' Are Delaying The Remedy For Plaintiff Class Members Through Their Request For Discovery Is Disingenuous And Ignores Defendants' Current Obligations Under Court Order To Immediately Implement The Undisputed Portions Of The Revised Program Guide ........................................................................................11

II. PLAINTIFFS SHOULD BE PROVIDED WITH COPIES OF THE TOUR BINDERS AND MONITORING DOCUMENTS PROVIDED TO THE SPECIAL MASTER ................................................................................................................11

    A. Plaintiffs' Legal Arguments As To Plaintiffs' Entitlement To Copies Of Tour Binders And Monitoring Documents Are Uncontested...............................11

    B. The Benefit Of Producing These Documents To Plaintiffs Far Outweighs Any Alleged Burden On Defendants. ...................................................................13

CONCLUSION ..........................................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

American-Arab Anti-Discrimination Committee v. Reno,
    70 F.3d 1045 (9th Cir. 1995).................................................................................. 12

Blankenship v. Hearst Corporation,
    519 F.2d 418 (9th Cir. 1975).................................................................................... 5

Hogan v. Robinson,
    Eastern Dist. Case No. CV-F-03-6408 AWI LJO,
    2006 WL 1049979 (E.D. Cal. April 20, 2006)......................................................... 5

Lynn v. Regents of the University of California,
    656 F.2d 1337 (9th Cir. 1981)................................................................................ 12

Martin v. Reynolds Metals Corp.,
    297 F.2d 49 (9th Cir. 1961)...................................................................................... 5

## FEDERAL RULES

Federal Rule of Civil Procedure 26............................................................................... *passim*

# INTRODUCTION AND STATEMENT OF FACTS

This motion addresses two narrow issues: (1) whether or not plaintiffs are entitled to *any* discovery in order to prepare a legal challenge to the sufficiency of several key disputed elements of defendants' Revised Program Guide, and; (2) whether plaintiffs are entitled to receive copies of tour binders and other documents routinely provided by defendants to the Special Master on monitoring tours.  6/12/06 Stipulation and Order at 2 (Setting hearing on the "two disputed discovery issues identified in the parties' discovery statements: (1) Plaintiffs' right to discovery in the program guide dispute process; and (2) Plaintiffs' right to the tour binders and other documents provided the Special master on prison monitoring tours."). Defendants' Opposition to Plaintiffs' Motion to Conduct Discovery and Receive Tour Binders, filed July 28, 2006 (hereafter "Defendants' Opposition"), sets forth arguments consisting mainly of points irrelevant to the limited issues before this Court.

As to the first issue, defendants continue to assert that plaintiffs are entitled to absolutely no discovery on disputed Program Guide issues.  Defendants cite no cases in support of their extreme position, nor do they discuss or distinguish a single case or legal argument raised by plaintiffs.  Instead, defendants proffer broad objections to the presumed burdensome scope of plaintiffs' yet to be served discovery requests.  These objections are not appropriate for this threshold motion, but, rather, can be raised in relation to subsequent considerations of specific discovery requests under Federal Rule of Civil Procedure 26.

As to the second issue, the tour binders, defendants claim that plaintiffs already receive enough information through other, informal, procedures, so they need not provide copies of the tour binders, and that it would be burdensome for defendants' counsel to do a thorough review of the tour binders before production.  Defendants admit, however, that the tour binders are now routinely produced to the Special Master, and, for seven tours a year, to plaintiffs' counsel, without any attorney review. Defendants fail to even address plaintiffs' argument that a court order, the *Gates-Coleman* Stipulation and Order, requires that copies of all documents produced to the Special Master be produced to plaintiffs, as do basic due process concerns and

the nature of the adversarial process. *See* Declaration of Jane E. Kahn In Support of Plaintiffs' Notice of Motion and Motion Re: 1) Post-judgment Discovery and 2) Production of Copies of Tour Binders and Documents, filed 7/13/06, (hereafter "Kahn Decl."), ¶ 26, Ex. V (12/24/98 Stipulation).

Although defendants claim that the "informal discovery" procedures of the past ten years have yielded an atmosphere of "transparency and consensus-building" and satisfy any need for formal discovery (Defs.' Opp at 3:3-11, 5:17-18), defendants' stubborn opposition to *any* discovery by plaintiffs and refusal to produce information routinely shared with the Special Master belie this characterization. Furthermore, although at times defendants choose to respond to plaintiffs' requests for information in a cooperative manner, there are many times when defendants' actions are anything but transparent as they either ignore plaintiffs' requests altogether or actively impede the release of information.[1] As plaintiffs stated in their moving papers, plaintiffs' experts have had *no* access to California prisons in this case since 1992, fourteen years ago. Memorandum of Points and Authorities In Support of Plaintiffs' Motion Re: 1) Post-Judgment Discovery and 2) Production of Copies of Tour Binders and Documents, filed 7/13/06 (hereafter "Pls.' Mem."), at 14: 27-28. With a limited number of disputed Program Guide issues remaining, and those issues pertaining in part to programs, procedures, or policies that did not even exist at the time of trial, it is common sense—amplified by undisputed legal analysis—that plaintiffs must be allowed reasonable discovery in order to have a fair opportunity to present evidence before the Court on these issues of grave concern to the plaintiff class.

Once again, it is critical to emphasize that plaintiffs are requesting an order only on the threshold issue of the right to discovery regarding areas of dispute in the Revised Program

---

[1] A recent example is defendants' decision to resist disclosing key budget documents relevant to defendants' staffing requests for clinical positions necessary to implement the Revised Program Guide as ordered by the district court on March 2, 2006. *See* Declaration of Michael W. Bien In Support of Plaintiffs' Reply In Support of Motion To Conduct Discovery and Receive Tour Binders ("Bien Decl."), ¶¶ 2-8, Exs. A, B.

Guide. If the Court grants plaintiffs' motion and finds that plaintiffs do have a right to conduct discovery in connection with particular disputes concerning the Revised Program Guide, defendants will still have the right to raise any and all objections to particular discovery requests.

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO REASONABLE FORMAL DISCOVERY IN ORDER TO FAIRLY PRESENT THEIR CASE CONCERNING THE REMAINING DISPUTED PROGRAM GUIDE ISSUES

Defendants acknowledge that, since trial, plaintiffs have not had the opportunity to conduct any "discovery in the formal sense of depositions, requests for production, and site inspections." Defs.' Opp. at 3:5-7. Defendants continue by stating, "However, under the guidance of Special Master Keating, the compliance efforts of Defendants in this matter have been increasingly transparent. At both Special Master Keating's personal behest as well as by certain court orders, Plaintiffs have obtained informal and voluminous discovery of CDCR's mental health services delivery system in many forms over the past ten years." Defs.' Opp. at 3:7-11. Defendants repeat this assertion over and over as the basic mantra of their Opposition. However, defendants' production of information to plaintiffs in response to Court orders or express directions from the Special Master is not synonymous with voluntary transparency and consensus-building. Rather, defendants' production of information has often been the result of repeated unanswered requests for information by plaintiffs followed by plaintiffs' requests to the Special Master and the Court for intervention.[2]  *See* Bien Decl. ¶ 9. While plaintiffs acknowledge and appreciate the voluntary sharing of information by defendants when it has

---

[2] Defendants cite the recent dispute over defendants' failure to require correctional officers to provide CPR to inmates discovered following suicide attempts as an example of the efficacy of current discovery procedures. Defs.' Opp. at 6. However, plaintiffs had to file a formal notice of non-compliance with the District Court in order to secure the remedy in that dispute, and the remedy involved further orders from the Court that required each CDCR warden to provide the equivalent of formal discovery responses in signed declarations of compliance. *See* Bien Decl. ¶ 9. This example actually underscores the importance of sworn testimony of the type that is produced by formal discovery.

occurred, plaintiffs object to the gross overstatement that defendants have made their compliance efforts transparent to plaintiffs. Defs.' Opp at 3: 8 and 5:17.

Moreover, the mere fact that some information has been shared through informal process neither precludes nor eliminates the need for formal discovery by plaintiffs. While the parties have arrived at consensus for many aspects of the Revised Program Guide and these portions have been approved by the Court (Order filed 3/03/06), issues of vital importance remain in dispute, including, for example, care for EOP class members in Administrative Segregation Units (ASUs) and Security Housing Units (SHUs) and defendants' tracking system for monitoring former mental health caseload inmates and inmates with suicide attempt history. *See* Kahn Decl. ¶ 4. If these disputes cannot be resolved, they must now be litigated. Plaintiffs' counsel requires formal discovery in order to present relevant evidence to the Court and fulfill its obligations to the plaintiff class. The District Court plainly anticipated that litigation of these issues would take place when it outlined a process for resolution of disputed Program Guide issues in its May 24, 2006 Order that includes formal objections, designations of expert witnesses, depositions of the experts, and an evidentiary hearing. Kahn Decl., ¶ 17, Ex. F (5/25/06 Order). Contrary to defendants' assertion that "Plaintiffs have sufficient information to properly represent their clients" (Defs.' Opp at 9:19-20),—a remarkable conclusion for defendants to draw on plaintiff counsel's behalf in light of defendants' admission that plaintiffs have not had the opportunity to conduct any formal discovery since trial over ten years ago—some formal discovery is needed so that plaintiffs may present admissible and credible evidence to the Court regarding the disputed Program Guide issues.

**A. Plaintiffs' Legal Arguments As To Plaintiffs' Entitlement To Post-Judgment Discovery Are Uncontested**

Defendants' Opposition does not discuss nor distinguish any of the case law cited in Plaintiffs' Memorandum. Rather, defendants note only that there is no motion to terminate presently before the Court and no evidentiary hearing scheduled. Defs.' Opp. at 8: 9-12. Plaintiffs cited a variety of cases for the proposition that post-judgment discovery is routinely available, including, but not limited to, cases in which a motion to terminate by defendants was

before the court.  Pls.' Mem. at 11-12.  Because defendants do not discuss these cases or plaintiffs' argument that post-judgment discovery is routinely available, presumably defendants concede the legal argument.

As plaintiffs explained in their moving papers, in the Ninth Circuit, it is defendants' heavy burden to show why discovery should be denied.  Pls.' Mem. at 14: 3-9; *see Blankenship v. Hearst Corporation*, 519 F.2d 418, 429 (9th Cir. 1975); *Hogan v. Robinson*, Eastern District Case No. CV-F-03-6408 AWI LJO, 2006 WL 1049979 (E.D. Cal. April 20, 2006).  Defendants have not even attempted to meet that burden here.  Defendants argue only that, because plaintiffs already receive information outside formal discovery procedures, plaintiffs are not entitled to any formal discovery whatsoever.  This is not the way discovery works.  Informal exchanges of information do not preclude formal discovery, just as information shared in settlement negotiations does not preclude formal discovery if a settlement is not reached.

One of the fundamental purposes of the Federal Rules of Civil Procedure, and of discovery, is "to take the sporting element out of litigation, partly by affording each party full access to evidence in the control of his opponent."  *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961).  As plaintiffs explained in their moving papers, and defendants do not dispute, Federal Rule of Civil Procedure 26(b) provides that "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Pls.' Mem. at 11.  Because plaintiffs and defendants will be litigating several disputed Program Guide issues, plaintiffs need access to evidence, and particularly access to the prisons for plaintiffs' experts.  Both defendants and the Special Master's team already have this access, and, due to the nature of the correctional system, defendants are able to exercise absolute control (barring orders from the Court) over access to prisons and to information about their correctional system.  Rather than depending upon stale monthly reports and piecemeal information provided through informal document production defendants themselves often label as unreliable,[3] plaintiffs must

---

[3] For example, the monthly report table of contents dated July 3, 2006 that defendants offer in support of their opposition, Tillman Decl. ¶ 19, Ex. 3, is incomplete because defendants

(continued . . .)

be able to gather evidence through formal discovery procedures. *See* Kahn Decl. at ¶ 11.

**B. Plaintiffs' Current Access To Critical Information Regarding Disputed Areas Of Program Guide Revisions Is Severely Limited**

Defendants present a potentially misleading picture to the Court of plaintiffs' current access to information relevant to the disputed areas of the Program Guide revisions. Defendants state:

> Under the rubric of 'monitoring tours', Plaintiffs have obtained site inspections of each and every facility every year, often more than once a year, in this case.…The monitoring tours provide all involved with the ability to view the sufficiency of mental health services at a particular institution.

Defs.' Opp. at 3:12-17. The truth is that plaintiffs' counsel is invited on only *seven* monitoring tours per year, and thus, obviously, does not see each of the 33 prisons every year. Kahn Decl. ¶ 8. In addition, plaintiffs' participation at these tours is limited to one attorney. Bien Decl. ¶ 11. Plaintiffs' experts may not attend, nor do plaintiffs participate in setting the agenda for these tours. *Id.* The vast majority of monitoring tours conducted by the Special Master do not include plaintiffs' counsel, and do not provide plaintiffs with "the ability to view the sufficiency of mental health services at a particular institution." *Id*. Although plaintiffs are included on the teleconference, or "exit" involving the Special Master's team, CDCR staff, and counsel that takes place after each tour, the information communicated on this call is informal and preliminary, and plaintiffs have been cautioned that they are not to introduce it as evidence before the Court. *Id.* Plaintiffs do not have access to the wealth of detailed information contained in the tour binders as outlined in pages 5-10 of the Kahn Declaration submitted with plaintiffs' moving papers. As stated in that Declaration, this information is not available from any other source accessible to plaintiffs, and this information is heavily relied upon by the Special Master in reaching his conclusions in his monitoring reports. Kahn Decl. ¶ 11.

---

(continued from previous page)

themselves determined that some of the required information was inaccurate and unreliable: "Due to data integrity issues, Enclosures 7,8, and 10, for the period of September 2005-May 2006 will be provided as a supplemental report."

Defendants failed to respond to any of plaintiffs' arguments regarding the different roles of plaintiffs' counsel and the Special Master, apparently conflating the two, and consequently failed to address these important differences between monitoring by the Special Master and discovery by plaintiffs.

### C. Plaintiffs' Request For Discovery Concerning Disputed Areas of Program Guide Revisions Is Appropriate and Should Be Granted Because the Benefits In this Case Far Outweighs Any Burden on Defendants

#### 1. The disputed Program Guide issues involve complex factual situations and require formal discovery so that expert testimony can be presented with an appropriate foundation

The disputed portions of the Revised Program Guide involve issues such as the appropriate standard of care and conditions of confinement for severely mentally ill inmates in administrative segregation units. Kahn Decl. ¶ 4. These are complex determinations involving factual analysis, legal standards, and specific contextual considerations of the capabilities of the California prison system as well as individual institutions. Plaintiffs, defendants, and the Special Master in this case have each retained experts to make findings and recommendations pertaining to issues such as appropriate policies and procedures, standards of care for various levels of mentally ill and suicidal inmates, current and potential harm to class members, and appropriateness of conditions of confinement. Bien Decl. ¶ 10. Many of these opinions and recommendations relate to clinical conditions, and must be based on clinical findings. Plaintiffs' experts have not had access to California prisons in this case since 1992. Kahn Decl. ¶ 4. Plaintiffs' experts require in-person access to correctional institutions in order to properly investigate and make findings and observations that are the basis for their professional opinions and recommendations. Bien Decl. ¶ 10.

Plaintiffs seek discovery to litigate several extremely important issues. *See* Bien Decl. ¶¶ 10, 12, 13. For example, plaintiffs object to defendants' plan, set forth in the Revised Program Guide, to significantly *reduce* care for class-members in Administrative Segregation Units and Security Housing Units. Bien Decl. ¶ 10. As this Court is well aware from the trial of this matter, these locked units are extremely dangerous places for mentally ill inmates. *See*

June 6, 1994 Findings and Recommendations at 52 ("[P]lacing mentally ill inmates in segregated housing exacerbates the underlying mental illness, induces psychosis, and increases the risk of suicide.") These units continue to be very dangerous. The Special Master recently found:

> The presently soaring rate of suicides in administrative segregation units alone is an index of the need for increased mental health monitoring and treatment of inmates, a need the Department of Corrections and Rehabilitation is seeking frantically to meet now. Inmates placed by the State of California in overcrowded and understaffed administrative segregation units are killing themselves in unprecedented numbers….

Special Master's July 27, 2006 Supplemental Report on the Status and Sufficiency of the Defendants' Budget Requests for Staffing to Implement the Revised Program Guide at 12-13. In the upcoming litigation over the Revised Program Guide section on Administrative Segregation, plaintiffs will challenge the decision to reduce the frequency of case manager contacts by half—from once per week to once *every other* week. Bien Decl. ¶ 10. Plaintiffs' position against the proposed reduction in care in ASUs and SHUs will be heavily founded on fact-based opinions of clinical experts regarding the level and type of mental health care necessary to address the mental health needs of inmates in these severe, isolating units, and necessary to reduce the soaring rates of suicides in the CDCR's administrative segregation units. *Id.* This evidence is absolutely critical to plaintiffs' ability to present their legal and factual challenge to the sufficiency of the proposed Program Guide on behalf of plaintiff class members. *Id.* It is self-evident that these experts will have to tour these units in order to lay an appropriate foundation for their testimony concerning the units. *Id*.

This example also illustrates defendants' error in asserting that the Program Guide litigation will involve purely legal issues. *See* Defs.' Opp. at 8. The administrative segregation issues are mixed questions of fact and law, with the legal determination as to constitutional adequacy turning on clinical opinions and factual questions relating to the psychological harm caused by inadequate treatment. These issues—and the other pending Revised Program Guide disputes—are heavily fact-based and require discovery.

While the information currently provided to plaintiffs informally is useful, it is not the

1  same as the formal evidence gathering process envisioned by the Federal Rules of Civil
2  Procedure—a process that, unlike the informal procedures currently used in the case, is
3  designed to yield admissible evidence.  Plaintiffs are seeking to present expert testimony and
4  corollary evidence about a discreet set of Program Guide issues in dispute.  In order to do this,
5  plaintiffs' experts need to conduct tours of the prison programs at issue and have access to
6  members of the plaintiff class and prison staff.  During any such discovery proceedings,
7  defendants will be able to access all of the ordinary protections provided by the discovery
8  process and Federal Rules of Civil Procedure against overly burdensome, intrusive discovery,
9  and against undue delay.

**2. Defendants' objections to the scope of discovery are misplaced in this threshold consideration of whether plaintiffs are entitled to any discovery whatsoever**

12  Although defendants raise the specter of "untrammeled discovery" (Defs.' Opp at 9:11),
13  arguments concerning the scope of discovery are not appropriate at this stage, when the issue
14  before the Court is the threshold question of whether plaintiffs are entitled to *any* discovery.
15  Following a determination that plaintiffs are entitled to reasonable discovery, plaintiffs
16  anticipate a normal discovery process in which, when the parties reach an impasse on a
17  Revised Program Guide issue, plaintiffs will make a discovery request on that specific issue in
18  the form of a proposed discovery plan.  The parties will then meet and confer about the plan,
19  and if they are unable to reach agreement, the parties will submit the discovery dispute to the
20  Magistrate Judge for resolution.  *See* Proposed Order Granting Post-Judgment Discovery By
21  Plaintiffs and Ordering Production of Copies of Tour Binders and Documents to Plaintiffs,
22  filed herewith.  During this process, defendants will be able to make objections and seek to
23  limit the scope of discovery in accordance with the Federal Rules of Civil Procedure.
24  Furthermore, while defendants point with alarm to plaintiffs' initial discovery plan concerning
25  Program Guide issues, they fail to acknowledge plaintiffs' subsequent offers to negotiate
26  narrower discovery.  *See, e.g.,* Kahn Decl., ¶ 6, Ex. S (Email from Bien to Tillman of
27  5/9/2006).  Any attempt to reach a reasonable discovery plan accommodation was rebuffed by
28  defendants as they chose to take the extreme position that plaintiffs are entitled to absolutely

1  no discovery whatsoever.  *See, e.g.*, Kahn Decl., ¶ 6, Ex. C; Defs.' Discovery Conf. Statement,
2  filed 6/02/06.

3        Defendants also ignore the possibility raised by plaintiffs that formal discovery might
4  avoid litigation on some of the disputed issues.  As plaintiffs noted in their memorandum,
5  significant programs, policies, and procedures now employed by defendants and objected to by
6  plaintiffs did not exist at the time of trial.  Pls.' Mem. at 15:1-2; Kahn Decl. ¶ 4 (describing
7  examples of EOP Administrative Segregation Units and Computerized Tracking of Former
8  Caseload and Suicide History).  If plaintiffs' experts are allowed to observe these programs
9  and evaluate them, it is possible that the concerns of plaintiffs may be alleviated and the parties
10  may be able to reach consensus on some issues without further litigation.  This would actually
11  speed defendants' ability to implement these portions of the Revised Program Guide, rather
12  than cause delay.

13        Finally, plaintiffs note that defendants' repeated use of plaintiffs' request for discovery
14  from defendants' bed study expert, Navigant, as an example of the alleged burdens plaintiffs
15  seek to impose through discovery is entirely irrelevant to the motion before the Court on
16  discovery relating to disputed areas of the Revised Program Guide.  *See* Defs.' Opp at 2:13-23,
17  7:13-8:2, 10:10-22.  The bed study relates to an important portion of the remedy in this case
18  that the Court has already ordered defendants to implement, and that defendants themselves
19  have delayed for many years through their own neglect and incompetence.  *See* Fifteenth
20  Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally
21  Approved Plants, Policies and Protocols, filed 1/23/06, at 385 ("The defendants' paucity of
22  resources for the provision of intermediate inpatient care to Level IV inmates is not a new
23  development.  In 1998, CDCR committed to conduct an assessment to determine the extent of
24  the suspected need, but took seven years to complete the assessment.").  The Declaration of
25  Michael Bien submitted herewith outlines the history of this issue, and describes why
26  plaintiffs, as one part of a requested order from Judge Karlton, requested discovery in this
27  narrow area.  Bien Decl. ¶ 14.  At this time, the issue of discovery of Navigant is squarely
28  before the district court and has not been referred to the Magistrate Judge.

10
PLAINTIFFS' REPLY IN SUPPORT OF MOTION RE: 1) POST-JUDGMENT DISCOVERY AND 2) PRODUCTION OF COPIES OF TOUR
BINDERS AND DOCUMENTS, NO.:  CIV S 90-0520 LKK-JFM

1    In short, defendants have failed to meet their high burden of showing that all discovery
2 on disputed Program Guide issues should be prohibited. The Court should find that plaintiffs
3 are entitled to discovery.

**D. Defendants' Suggestion That Plaintiffs' Are Delaying The Remedy For Plaintiff Class Members Through Their Request For Discovery Is Disingenuous And Ignores Defendants' Current Obligations Under Court Order To Immediately Implement The Undisputed Portions Of The Revised Program Guide**

While on the one hand, defendants argue that ten years into the remedial phase of this case, plaintiffs' "request to conduct discovery is premature," on the other hand, they assert that plaintiffs' discovery requests "will delay" implementation of the remedy. Defs.' Opp. At 2:19, 2:22. Defendants' suggestion that discovery by plaintiffs will hurt class members by delaying implementation of a remedy is misleading and inaccurately assesses the current posture of the remedy. First, defendants are already subject to a court order directing them to *immediately* implement the undisputed portions of the Revised Program Guide. 3/03/06 Order. Any delay on the part of defendants to meet this obligation is a direct violation of the order. Second, as already explained, several of the remaining disputed issues concern defendants' proposed *reductions* in care. Plaintiffs are fighting these reductions and any delay due to discovery will not harm class members, but, rather, continue the status quo. Discovery on these disputed issues is necessary and should be granted by the Court.

**II.   PLAINTIFFS SHOULD BE PROVIDED WITH COPIES OF THE TOUR BINDERS AND MONITORING DOCUMENTS PROVIDED TO THE SPECIAL MASTER**

**A. Plaintiffs' Legal Arguments As To Plaintiffs' Entitlement to Copies of Tour Binders and Monitoring Documents are Uncontested**

In response to the issue of production of copies of tour binders to plaintiffs, defendants again do not address any of plaintiffs' legal arguments, failing to cite a single case or discuss any cases cited by plaintiffs. Rather, in a few sentences, defendants simply assert that the tour binders "have limited value" and the information in the binders is "available and produced in other documents by Defendants." Defs.' Opp. at 9-10. In Jane Kahn's Declaration, plaintiffs

1  offer more than seven pages of detailed explanation as to the unique and substantial value of
2  the tour reports to plaintiffs, the absence of that information in any other documents made
3  available to plaintiffs, and the inadequacy and unreliability of the monthly reports upon which
4  defendants hinge their entire objection to plaintiffs' discovery request.  Kahn Decl. ¶¶ 7-11.
5  Defendants do not refute nor address any of these statements in Kahn's Declaration beyond
6  general assertions in their memorandum and unsubstantiated declarations by their counsel that
7  plaintiffs already receive large amounts of information.  *See* Defs.' Opp. at 3: 8-11, 4-5;
8  Declaration of Michael Stone In Support Of Defendants' Opposition to Plaintiffs' Motion to
9  Conduct Discovery and Receive Tour Binders, filed 7/28/06 (hereafter "Stone Decl."), ¶ 11;
10 Declaration of Lisa Tillman In Support Of Defendants' Opposition to Plaintiffs' Motion to
11 Conduct Discovery and Receive Tour Binders, filed 7/28/06 (hereafter "Tillman Decl."), ¶¶ 4,
12 6.

13        Plaintiffs demonstrated that the nature of the adversarial process and basic due process
14 principles require production of copies of the tour binders to plaintiffs.  Pls.' Mem. at 17-18.
15 Defendants apparently cede this point.  The presumption in favor of disclosure and access to
16 information by all parties operates here in favor of production of these documents to plaintiffs.
17 As noted in plaintiffs' moving papers, this presumption is particularly strong where the
18 information at issue is used by the fact finder to make factual determinations or to evaluate
19 evidence, and non-disclosure violates the due process rights of the plaintiff class.  Pls.' Mem.
20 at 17; *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir.
21 1995);   *Lynn v. Regents of the University of California*, 656 F.2d 1337, 1346 (9th Cir. 1981).

22        Plaintiffs also explained that the terms of the *Gates-Coleman* Stipulation and Order
23 (Kahn Decl. ¶ 26, Ex. V) (requiring that plaintiffs' counsel be provided with copies of any
24 documents provided to the Special Master by defendants) apply to the tour binders and
25 accompanying monitoring documents.  Pls.' Mem. at 18-20.  In their opposition, defendants do
26 not dispute this point, and fail to include any explanation of how their refusal to produce these
27 copies to plaintiffs' counsel can be squared with defendants' obligations under this court order.
28

### B. The Benefit Of Producing These Documents To Plaintiffs Far Outweighs Any Alleged Burden On Defendants.

Although defendants do assert that it would be unduly burdensome to provide plaintiffs with copies of the tour binders, defendants do not engage in the type of totality of the circumstances analysis outlined in Federal Rule of Civil Procedure 26(b)(2)(iii) (*see* Pls.' Mem. at 19). Rather, they merely assert that the production of these documents will be unduly burdensome to defendants because defendants' counsel will have to review them. Defs.' Opp. at 10. It is telling, however, that these tour binders and monitoring documents are now produced by defendants to the Special Master and his experts without any review by defendants' counsel. Stone Decl. ¶ 5. Defendants admit that this is their practice despite the fact that these documents are heavily relied upon by the Special Master when he makes his findings of fact and recommendations to the Court in his monitoring reports. Kahn Decl. ¶ 11. Moreover, for the seven tours per year plaintiffs' counsel now attends, these tour binders and monitoring documents are produced to plaintiffs, again without any review by defendants' counsel. *See* Stone Decl. ¶¶ 5-11.

That defendants would allegedly choose to change their practices and begin to review the monitoring documents if copies of the remaining tour binders were produced to plaintiffs does not create an undue burden for defendants nor outweigh the grave and legitimate interests of the plaintiff class in accessing these documents. Moreover, in light of the fact that defendants' counsel does not now choose to review the tour binders and monitoring documents despite the fact that the Special Master uses them to make findings and recommendations to the Court, and also does not choose to review the tour binders and documents already produced to plaintiffs under current procedures, defendants' predictions of excessive burden are disingenuous. *See* Stone Decl. ¶¶ 5-6, 12.

Finally, plaintiffs emphasize that their request for copies of the tour binders and accompanying documents requires no additional information gathering by defendants, and no preparation of new documents. Plaintiffs seek only a copy of what defendants already routinely provide to the Special Master.

# CONCLUSION

Based on the foregoing, the plaintiffs request that the Court issue the following orders:

1. Plaintiffs are entitled to reasonable post-judgment discovery on the disputed Revised Program Guide issues.

2. The discovery process for these issues will be as follows:

   a. In the event that the parties reach an impasse on a Revised Program Guide issue, plaintiffs will prepare a proposed discovery plan.

   b. If defendants do not agree to plaintiffs' proposed discovery plan, the parties will meet and confer within 21 days concerning the proposed discovery plan.

   c. If the parties are unable to reach agreement, the parties will submit the discovery dispute to the Magistrate Judge for resolution.

3. Defendants must produce copies to plaintiffs of all tour binders and other documents provided to the Special Master and/or his experts in connection with monitoring tours, beginning with the 17th Round of monitoring. Copies of documents produced to the Special Master should be produced to plaintiffs' counsel no later than 14 days after they are provided to the Special Master.

Dated: August 9, 2006                           Respectfully submitted,

                                                */s/ Michael W. Bien*

                                                Michael W. Bien
                                                Rosen, Bien & Asaro
                                                Attorneys for Plaintiffs