1  LAW OFFICE
   DONALD SPECTER Bar No.: 83925
2  STEVEN FAMA Bar No.: 99641
   KEITH WATTLEY Bar No.: 203366
3  General Delivery
   San Quentin, California  94964
4  Telephone: (415) 457-9144

5  ROSEN, BIEN & ASARO, LLP
   MICHAEL W. BIEN Bar No.: 096891
6  JANE E. KAHN Bar No.: 112239
   THOMAS NOLAN Bar No.: 169692
7  155 Montgomery Street, 8th Floor
   San Francisco, California  94104
8  Telephone: (415) 433-6830

9  THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
10 CLAUDIA CENTER Bar No.: 158255
   LEWIS BOSSING Bar No.: 227402
11 600 Harrison Street, Suite 120
   San Francisco, CA  94107
12 Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

13

Attorneys for Plaintiffs

14

UNITED STATES DISTRICT COURT

15

EASTERN DISTRICT OF CALIFORNIA

16

17 RALPH COLEMAN,

18      Plaintiffs,

19 vs.

20 ARNOLD SCHWARZENEGGER, et al.,

21      Defendants

22

23

24

25

26

27

28

No.:  Civ S 90-0520 LKK-JFM

**DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' MOTION RE: 1) POST-JUDGMENT DISCOVERY AND 2) PRODUCTION OF COPIES OF TOUR BINDERS AND DOCUMENTS**

**HEARING**

Date:      August 17, 2006
Time:      11:00 a.m.
Location:  Courtroom 25
           The Honorable John F. Moulds

MWB Dec ISO Plfs' Reply on Discovery tn 8-7-06,mwb rvsd 489-3.DOC

1        MICHAEL W. BIEN DECLARES:

2        1.      I am a member of the Bar of this Court and of the firm, Rosen, Bien & Asaro,

3    one of the attorneys for the plaintiff class in this litigation.  I have personal knowledge of the

4    matters stated herein and if called as a witness I could and would competently so testify.  I

5    make this declaration in support of Plaintiffs' Reply In Support of Motion Re: 1) Post-

6    Judgment Discovery and 2) Production of Copies of Tour Binders and Documents.

7                Defendants' Recent Failure to Provide Critical, Highly Relevant Budget

8        Documents to the Special Master or Plaintiffs Belies Their Assertion of Transparency

9        2.      In their July 28, 2006 Opposition to Plaintiffs' Motion to Conduct Discovery and

10    Receive Tour Binders ("Defendants' Opposition"), defendants take the position that discovery

11    is not necessary in this matter because of informal discovery that has taken place as part of the

12    monitoring process and because of the atmosphere of  "transparency and consensus building"

13    in the litigation.  Defendants' Opposition at 5:17-18.  Although there have been many areas

14    where informal agreements have been reached between the parties that have obviated the need

15    for more formal litigation, I take issue with the assertion that the current atmosphere is one of

16    transparency.

17        3.      The lack of transparency on defendants' part is evidenced most recently by

18    defendants' actions concerning the critical issue of staffing and budget requests to implement

19    the Revised Program Guide.  On March 3, 2006, the District Court ordered defendants to

20    "immediately" implement the Revised Program Guides (except for disputed provisions that

21    would have cut back on existing care in Administrative Segregation and Security Housing

22    Units).  On May 14, 2006, the parties and Special Master Keating were participating in a

23    conference call regarding the disputed Program Guide issues in an effort to narrow the

24    remaining disputes.  During the call, plaintiffs asked defendants to confirm that they had

25    obtained the staffing necessary to comply with the Court's March 3, 2006 Order to implement

26    the Revised Program Guide.  In response, Dr. Fishback, the CDCR's Chief Psychiatrist,

27    indicated that the CDCR had in fact sought additional staffing in order to implement the

28    Revised Program Guide, but that defendants' staffing request had been rejected by the

Department of Finance.  This admission came well after the relevant request was denied.  After this admission, both plaintiffs' counsel and the Special Master requested copies of the rejected budget request.  Defendants neither objected nor complied with the request for several weeks.

4.    On May 25, 2006, following a status conference concerning implementation of the Revised Program Guide, the District Court ordered the Special Master to "report to the court on the status and sufficiency of defendants' budget requests for staffing augmentation necessary to implement the court-approved provisions of the January 2006 Revised Program Guide."  5/25/06 Order at ¶ 5.  Thereafter, the Special Master again requested that defendants produce the Budget Change Proposal forwarded by the CDCR to the Department of Finance.  The information was deemed necessary by him to respond to the issues raised in the Court's May 25, 2006 Order.  Defendants then openly refused to provide the relevant Budget Change Proposal documents to the Special Master, and the District Court issued a further order on May 30, 2006, requiring defendants to provide the documents or to formally assert the deliberative process privilege on or before June 2, 2006.

5.    On June 2, 2006, defendants filed a memorandum of points and authorities and two declarations formally asserting the deliberative process privilege, but offering to provide the relevant materials to the Special Master only, under seal.  On June 9, 2006, plaintiffs filed a Memorandum in Opposition to Defendants' Formal Assertion of the Deliberative Process Privilege.  On June 12, 2006, Judge Karlton issued an Order denying defendants' assertion of the privilege and directing that defendants forward the material at issue to the Special Master and counsel for plaintiffs no later than close of business on June 14, 2006.  On June 14, 2006, however, defendants announced their intention to appeal the June 12, 2006 discovery Order and requested a stay of the Order from the District Court.  A telephonic hearing was held on defendants' request for a stay before the District Court on the same day.  During the telephonic hearing, defendants indicated that they had changed their position and that they were no longer willing to provide the relevant budget document to the Special Master even under seal.  On June 15, 2006, the District Court issued an Order to Show Cause in Re Contempt which directed Acting CDCR Secretary James A. Tilton to appear before the Court on June 27, 2006

2

1    to show cause in person why he should not be held in contempt for failing to provide the

2    relevant document to the Special Master.  Attached hereto as Exhibit A is a true and correct

3    copy of the District Court's June 15, 2006 Order to Show Cause Re Contempt.

4         6.    Subsequently, defendants filed for a stay in the Ninth Circuit.  The Ninth Circuit

5    rejected the motion for a stay on June 20, 2006.  (On July 26, 2006, the Ninth Circuit

6    dismissed the appeal in response to defendants' motion for voluntary dismissal.)

7         7.    Defendants finally provided the relevant documents to the Special Master, and

8    the Court ordered that these documents be provided to plaintiffs.  After reviewing the

9    documents, the Special Master issued a report to the Court, under seal, on June 21, 2006.  On

10   the same day, the District Court ordered the parties to file briefs in support of or in opposition

11   to the Recommendation in the June 21, 2006 report within 15 days.  On July 10 and 11, 2006,

12   the parties filed said briefs.  The briefs also addressed whether the Department of Finance

13   should be added as a party and whether the relevant documents should be unsealed.

14   Defendants' Opposition to Special Master Keating's recommendation stated that the Special

15   Master's recommendation was flawed because he did not consider certain documents that had

16   not been provided to him by defendants.  See Defendants' July 11, 2006 Opposition to Special

17   Master's Recommendation.  In response, the District Court found that defendants had not

18   provided the Special Master with "all information relevant to the requests actually made by

19   defendants and the disposition of those requests in connection with submission of the budget to

20   the Legislature,"  and  required defendants to produce all such documents to the Special Master

21   and plaintiffs within two days. 7/17/06 Order at 2:12-14.

22        8.    The Special Master, after reviewing the additional documents, filed a

23   supplemental report on July 28, 2006 recommending that "the defendants be required to

24   prepare and present to the special session of the Legislature, scheduled to occur in August,

25   2006, a budget proposal for the allocation of no less than the 530.65 permanent and 21.2

26   limited term positions recommended by the Department of Finance's Unit Review in 2005,

27   together with an allocation of sufficient funding to execute and complete a workload study in

28   time to include its findings and recommendations in the FY2007/08 budget."  7/28/06 Special

1  Master's Report at 15.  Attached hereto as Exhibit B is a true and correct copy of the Special

2  Master's July 28, 2006 Supplemental Report.  The Special Master's recommendation was

3  subsequently adopted by the District Court in an Order dated August 1, 2006, which also

4  unsealed all of the budget documents that defendants had sought to keep secret.  This process

5  was not at all "transparent."

6       9.      As an example of the efficacy of current informal "discovery" procedures,

7  defendants' Opposition also cites the recent dispute over defendants' failure to require

8  correctional officers to provide CPR to inmates discovered following suicide attempts.  Defs.'

9  Opp. at 6.  However, the example actually underscores the useful role of more formal

10  discovery procedures.  On June 10, 2005, in response to a recommendation in the Special

11  Master's Annual Report on Suicides in the CDCR covering suicides in the calendar year 2004,

12  the District Court ordered defendants within 60 days to "develop and implement a policy that

13  establishes clearly and unequivocally a requirement for custody staff to provide immediate life

14  support, if trained to do so, until medical staff arrive to initiate or continue life support

15  measures, irrespective of whether the obligation to do so is part of the particular custody staff

16  member's duty statement."  6/10/05 Order at ¶ 2.  After this deadline had passed on August 10,

17  2005, defendants provided plaintiffs and the Special Master with a memorandum that allegedly

18  had been sent out to the field to implement the new CPR policy.  However, defendants later

19  admitted that the memo implementing the new policy was never sent to the field, and plaintiffs

20  filed a notice of defendants' non-compliance in the District Court on August 26, 2005.  In

21  response to this notice, the parties eventually established a closely supervised process of

22  implementation of the new CPR policy.  As part of this process, individual wardens were

23  required to sign declarations stating when they had implemented the new CPR policy, how

24  many of their staff had been trained in the new policy, how many staff remained to be trained,

25  and to document implementation of various other components of the new policy.  In effect, the

26  wardens were providing sworn discovery responses documenting their compliance.  This

27  formal process was critical in ensuring that the new CPR policy was timely and effectively

28

4
DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND
RECOMMENDATIONS ON DEFENDANTS' REVISED PROGRAM GUIDE  NO.:  CIV S 90-0520 LKK-JFM

1    implemented.  Thus, the CPR example actually underscores the utility and importance of

2    sworn testimony of the type that is produced by formal discovery.

3        10.    Plaintiffs, defendants, and the Special Master in this case have all retained

4    experts to make findings and recommendations pertaining to issues such as appropriate policies

5    and procedures, standards of care for various levels of mentally ill and suicidal inmates, current

6    and potential harm to class members, and appropriateness of conditions of confinement.  Many

7    of these opinions and recommendations relate to clinical conditions, and must be based on

8    clinical findings.  Plaintiffs' experts have not had access to California prisons in this case since

9    1992.  Plaintiffs' experts require in-person access to correctional institutions in order to make

10   observations and findings that will be the basis for their professional opinions and

11   recommendations.  For example, plaintiffs have objected to defendants' plan, set forth in the

12   Revised Program Guide, to significantly *reduce* care for class members in Administrative

13   Segregation Units (ASUs) and Security Housing Units (SHUs).  Plaintiffs' position on care in

14   Administrative Segregation and Security Housing Units will be heavily based on fact-based

15   opinions of clinical experts regarding the level and type of mental health care necessary to

16   address the mental health needs of inmates in these severe, isolating units, and necessary to

17   reduce the soaring rates of suicides in the CDCR's ASUs.  It is self-evident that these experts

18   will have to tour these units in order to lay an appropriate foundation for their testimony

19   concerning the units.  These experts will also require other discovery, including (1) tours of the

20   ASUs, and (2) records of which class members are housed in ASUs and how long they have

21   been housed there, (3) access to mentally ill class-members in ASUs, (4) and other discovery

22   regarding CDCR policies and procedures.  This evidence is absolutely critical to plaintiffs'

23   ability to present their legal and factual challenge to the sufficiency of the Revised Program

24   Guide standard.  In my opinion, without the ability to present this kind of evidence to the

25   Court, plaintiffs' counsel will be extremely prejudiced in our efforts represent the interests of

26   plaintiff class members.

27        11.    Plaintiffs participate in seven institutional tours annually.  Plaintiffs do not set

28   the agenda for these tours and are often not permitted to ask questions during the tours.

Plaintiffs are only permitted to have one attorney on the tours, and plaintiffs' request to have our experts attend has been denied.  The Special Master has made clear that plaintiffs' counsel's role on these tours is extremely limited:  to observe the monitoring process.  Except for these seven tours, the remaining monitoring tours conducted by the Special Master each year – the vast majority of the tours – do not include plaintiffs, and do not provide plaintiffs with "the ability to view the sufficiency of mental health services at a particular institution."  There are 33 CDCR institutions and most are visited twice a year.  Although plaintiffs are included on the teleconference, or "exit" involving the Special Master's team, CDCR staff, and counsel that takes place after each tour, the information communicated on this call is informal and preliminary, and plaintiffs have been cautioned that they are not to introduce it as evidence before the Court.

12.      Plaintiffs also require discovery on the issue of suicide prevention.  Plaintiffs' legal argument that defendants must implement a system for tracking suicide history will rely upon expert testimony concerning defendants' existing suicide prevention policies and procedures and concerning the CDCR's high suicide rate.  Such testimony will of necessity require focused discovery concerning existing suicide prevention and suicide history tracking systems as well as discovery concerning existing computer systems that could be used to track this information.

13.      The disputed classification procedures similarly require discovery.  In this area, plaintiffs challenge defendants' existing practice of adding four points to the classification scores of mentally ill inmates in reception centers based on defendants' faulty and discriminatory belief that individuals with mental illness are more dangerous than people who are not mentally ill, even if the individuals are receiving treatment.  This policy results in the placement of mentally ill inmates in higher security, more dangerous institutions where mental health treatment is more difficult to access.  Challenging the policy will require that plaintiffs take limited depositions from the expert hired by defendants to design the objectionable classification system, as well as access to his underlying data so that plaintiffs' expert can challenge its underlying assumptions and conclusions.

1          14.      The Navigant bed study relates to an important portion of the remedy in this case

2     that defendants themselves have delayed for many years through their own neglect and

3     incompetence.  After many orders on the issue and several flawed bed studies of the unmet

4     need for acute and intermediate inpatient beds, the defendants finally completed an acceptable

5     bed study (with assistance from the Special Master's staff) in March 2005.  The March 30,

6     2005 study found that the CDCR had an unmet need for 512 additional inpatient beds.

7     Defendants were required to include a plan to address this unmet need as part of their March

8     30, 2005 Report, and did so.  However, defendants' plan was deemed unacceptable by the

9     Special Master, the Court and plaintiffs, and defendants submitted a second plan to meet the

10    unmet need on August 15, 2005.  The second plan to expand capacity for Acute and

11    Intermediate inpatient care provided by the Department of Mental Health on August 15, 2005

12    was also deeply flawed and was again rejected by the Special Master and plaintiffs.  Finally, on

13    March 17, 2006, defendants submitted a comprehensive third plan for expanding inpatient

14    beds, as well as a plan to address a severe and dangerous shortage of Mental Health Crisis

15    Beds that was identified for the first time in the Spring of 2005.  In response to this third plan,

16    the District Court on May 2, 2006 Ordered defendants to spend $600 million in the next five

17    years building inpatient beds.  Following the issuance of this Order, in late June 2006,

18    defendants came forward with a new, vastly lower projection of bed need for acute and

19    intermediate care based on newly acquired projections by their expert, John Misener of

20    Navigant.  The new Misener Bed Study projected significantly lower need for several key

21    categories of inpatient care, and defendants have asked the District Court to allow them to

22    withdraw and revise their bed plan that the Court ordered implemented on May 2, 2006.

23    Plaintiffs objected to defendants' request on various grounds.  Plaintiffs also requested an order

24    requiring defendants to produce documents and witnesses to justify their remarkable assertion

25    that the projections and plans they presented under oath to the Court in April were flawed and

26    erroneous and must be revised and reduced.  Plaintiffs seek not to delay the remedy, but to

27    preserve the $600 million bed expansion project that defendants developed and the District

28    Court and the Legislature approved.  It is defendants who have repeatedly delayed the

1    construction of the needed new beds, and it is defendants who are seeking to delay the project

2    once again.

3          I declare, under penalty of perjury, that the foregoing is true and correct and that this

4    declaration is executed in San Francisco, California on August 9, 2006.

5

6                                                        */s/ Michael W. Bien*

7                                                        Michael W. Bien
                                                        Rosen, Bien & Asaro
8                                                        Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND
RECOMMENDATIONS ON DEFENDANTS' REVISED PROGRAM GUIDE  NO.:  CIV S 90-0520 LKK-JFM