# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

No. CIV S-90-0520 LKK JFM P

ORDER TO SHOW CAUSE
IN RE: CONTEMPT

    By order filed May 25, 2006, the Special Master was directed to report to the court within seven days on the status and sufficiency of defendants' budget requests for staffing augmentation necessary to implement the court-approved provisions of the January 2006 Revised Program Guide. Thereafter, the Special Master informed the court that defendants were asserting the deliberative process privilege for budget change proposals relevant to preparation of said report and that they sought to submit the documents under seal. By order filed May 30, 2006, the court set a schedule for defendants to formally raise the privilege and plaintiffs to respond thereto. The deadline for submission of the Special Master's report was vacated, to be reset by subsequent court order.

    The parties timely complied with the schedule set forth in the May 30, 2006 order. By order filed June 12, 2006, the court determined the material at issue was not privileged and

directed it be forwarded to the Special Master and counsel for the plaintiffs not later than close of business on June 14, 2006. The deadline for the filing of the Special Master's report was reset to June 21, 2006.

On June 14, 2006, defendants made an oral motion for a stay of the June 12, 2006 order. After a telephonic hearing, the court denied the motion for stay and directed defendants to produce the required material to the Special Master under seal not later than close of business on June 14, 2006. In the same order, the court directed that the Special Master to file his report under seal on June 21, 2006. Finally, the order provided that, absent a stay of the June 12, 2006 order by the United States Court of Appeals for the Ninth Circuit, the court would, by June 21, 2006, order the material and the Special Master's report produced to plaintiffs.

The deadline for submission of the material under seal to the Special Master has passed and defendants have not complied with the court's order.[1] Good cause appearing, IT IS HEREBY ORDERED that on June 27, 2006 at 1:30 p.m. in Courtroom No. 4, James A. Tilton, Acting Secretary of the California Department of Corrections and Rehabilitation, shall show cause in person why he should not be held in contempt of court.

DATED: June 15, 2006.

*/s/ Lawrence K. Karlton*

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[1] On June 14, 2006, defendants filed in this court a notice of appeal from the June 12, 2006 and June 14, 2006 orders. There is no evidence they have obtained a stay of either order.

2

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,

vs.                         No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

## SPECIAL MASTER'S SUPPLEMENTAL REPORT ON THE STATUS AND SUFFICIENCY OF THE DEFENDANTS' BUDGET REQUESTS FOR STAFFING TO IMPLEMENT THE REVISED PROGRAM GUIDE

On June 21, 2006, in response to the Court's June 19, 2006 Order, the Special Master filed a report under seal entitled *Special Master's Report on the Status and Sufficiency of the Defendants' Budget Requests for Staffing to Implement the Revised Program Guide*. On that same date, the Court directed the parties to respond to the Special Master's staffing recommendation within 15 days and address whether the California Department of Finance should be added as a named defendant in the case and the Special Master's report and attached exhibits should be unsealed. After the granting of an extension of the filing deadline, the plaintiffs and defendants submitted responsive pleadings on July 10 and 11, 2006, respectively.

Because the defendants' response cited documents not shared with the Special Master, the Court on July 17, 2006 directed the defendants to submit to the Special Master within two days all documents relevant to the requests of the California

Department of Corrections and Rehabilitation[1] for staffing to implement the court-approved provisions of the Revised Program Guide. After the granting of a limited extension, the defendants provided the Special Master with some 1300 pages of additional documents by July 21, all supposedly related to the request in the FY2006/07 budget submitted to the Legislature by the Governor for staffing to implement the revised Program Guide.

The defendants' response to the Special Master's initial report attempted to correct some aspects of the earlier assessment and added details about some other aspects. In the end, it provided sufficient additional information to permit the development of a better recommendation for the funding of mental health staffing to implement the revised Program Guide.

The defendants' response began with the assertion that the *California Department of Corrections May Revise Letter: Coleman Guidelines to the Mental Health Services Delivery System at Corcoran, Fiscal Year 2005/2006*, dated June 8, 2005, a copy of which was included as Exhibit B in the Special Master's initial report, was not actually presented to the Department of Finance for review and analysis during the FY2005/06 budget cycle. That June 8, 2005 version of the May Revise Letter sought an allocation of 822.1 permanent mental health staff field positions and 21.2 limited field positions to implement the revised Program Guide. The defendants' response indicated that, instead of this June 8, 2005 proposal, a different and reduced request for 496.2 positions for implementation of the Program Guide and 51.3 positions for mental health staff positions at California State Prison, Corcoran was submitted by the Department of

---

[1] The old California Department of Corrections became the Department of Corrections and Rehabilitation in 2005. It will be referred to as the Department of Corrections and Rehabilitation throughout this report.

2

Corrections and Rehabilitation. The defendants' response did not contain a copy of this reduced version of the Department of Corrections and Rehabilitation's FY2005/06 budget request.

In the *Declaration of Todd Jerue in Support of Defendants' Response to the Special Master's Report on Defendants' Budget Requests for Staffing to Implement the Revised Program Guides* (hereafter referred to as the *Jerue Declaration)*, the declarant also disclosed that the Governor's FY2005/06 budget proposal did not include the request for 496.2 positions to implement the revised Program Guide "because CDCR's proposal did not contain sufficient substantiation to support a budget proposal to the Legislature, absent a court order." The declarant cited his general experience in working on budget proposals to the Legislature from the Governor, which suggested that "when a proposal is not independently supported by analysis and data, and a court has not yet issued an order for the performance of a particular activity, the Legislature will usually defer funding the activity until it is ordered by the court." Lastly, the declarant noted that the "notification sent to the Legislature included an alert that a subsequent request for budget authority would be submitted to address resources needed to implement the revised Program Guide at all institutions, once the Program Guide received final court approval." *Jerue Declaration*, p. 5. The defendants' response provided no documentation supporting this reported analysis of the Department of Corrections and Rehabilitation's reduced request for 496.2 positions.

Troubled by the defendants' failure to provide a copy of the Department of Corrections and Rehabilitation's actual FY2005/06 budget request for staffing to implement the revised Program Guide or any documentation on the Department of

3

Finance's review of the final version, the Court on July 17, 2006 directed the defendants to provide the Special Master with the missing budget proposal and any analytical working papers pertaining to the absent actual request.

A copy of the Department of Correction and Rehabilitation's request for 496.2 positions to implement revisions to the Program Guide, dated April 1, 2005, which corresponds to the document described in the *Jerue Declaration,* is included as Exhibit A in this report. The date is puzzling because it precedes by two months the larger request for 882.1 positions to implement the revised Program Guide included in Exhibit B in the Special Master's original report, which was dated June 8, 2005. The earlier and more limited April 1, 2005 request for the 496.2 positions to implement the revised Program Guide system-wide was supplemented by a specific request for 51.3 positions to implement the revisions in California State Prison, Corcoran, resulting in the total request for 547.5 positions reflected in the title-page of Exhibit A.

What one notices when comparing the April and June versions of the request is their similarity. The narrative descriptions are approximately the same length, and the details of the justification are the same, with some slight variations. More remarkably, the last three pages of both requests are identical. Both include alternatives calling for the allocation of 822.1 positions to implement the revised Program Guide and conclude with identical timetables and recommendations.

The principle difference between the two requests occurs in the first few pages of each, specifically in the details provided in each under the section entitled, Fiscal Year 2005/2006 Request, which begins on page 1 of the April 1, 2005 request (Exhibit A to this supplemental report) and on page 2 of the June 8, 2005 request (Exhibit

4

B in the initial report). The initial breakdown of the request in the April request, which the *Jerue Declaration* identifies as the proposal actually considered by the Department of Finance, indicates that the proposal seeks 547.54 positions in FY2005/05 and 291.1 new positions in FY2006/07 to implement the Program Guide revisions. The total sought, then, is 838.64 positions. At the end of the same budget request, however, the request is described as seeking 526.0 permanent field positions and 21.2 limited term filed positions in FY20005/05 and 296.1 permanent field positions in FY2006/07, which adds up to a total of 822.1 permanent positions and 21.1 limited term positions, the same number sought in the June 8, 2005 version of the budget request. The only reference to 547.5 positions in Exhibit A appears on the cover sheet.

In the Fiscal Year 2005/2006 Request section on the opening page of the June 8, 2005 budget request, which the defendants claim was not presented to the Department of Finance for review, the specific Fiscal Year 2005/2006 Request included only 51.25 positions for implementing the revised Program Guide in California State Prison, Corcoran. Apart from the different listings in the Fiscal Year 2005/2006 Request sections, both proposals go on to propose the allocation of 822.1 permanent and 21.2 limited term positions to implement the revised Program Guide throughout the Department of Corrections and Rehabilitation.

Declarant Jerue's confusion about what was actually requested by the Department of Corrections and Rehabilitation in its FY2005/06 budget proposal was not shared by the Department of Finance's budget analysts who reviewed the request. Exhibit B to this report, entitled, *Issue Proof Listing*, contains a three-page narrative summary of the Department of Finance's review of the Department of Corrections and

5

Rehabilitation's FY2005/06 request for 822.1 permanent positions and 21.2 limited term positions to implement the revised Program Guide. Exhibit B documents review of the request by the Department of Finance's Unit Review and the PBM (Program Budget Manager)/Capitol Office. The Unit Review contains a description and analysis of the proposal and a recommendation; the PBM/Capitol Office Review contains a more general review and a recommendation. Exhibit B is undated, but a notation at the bottom of each page of the exhibit contains the date and time "7/17/2006 4:49:17 PM," apparently reflecting the date the pages were extracted from a computer file for submission to the Court.

The Unit Review clearly delineates the nature of the request it is considering, namely, a request for 526.0 permanent field positions, 21.2 limited term field positions and 13.0 permanent headquarter positions in FY2005-06 and 296.1 permanent field positions in FY2006/07, to implement the revisions to the Program Guide, together with, among other associated requests, a one-time allocation of $500,000 for workload study and treatment space survey contracts. The only concern about this request noted by the Unit Review was that the methodology for the resource analysis provided in the proposal "seems to be subjective" and lacks "a tool to test and validate its accuracy." Exhibit B, at p. 2. Both of these shortcomings could be addressed by the proposed workload study.

In its recommendation, the Unit Review noted that implementation of the Program Guide revisions system-wide in the Department of Corrections was open for policy consideration, presumably because the Court had already ordered their implementation in the secure units of California State Prison, Corcoran but had not

approved the still pending overall revisions to the Program Guide. If the "Administration" were to determine that providing funding for CDC's statewide implementation of the revised Program Guide was a priority, the Unit Review recommended the adoption of a two-year rollout plan that would phase in 256.65 permanent field positions, 13.0 permanent headquarters positions and 21.1 limited term field positions in FY2005-06 and 261 additional field positions in FY2006-07. This represented an allocation of 539.65 positions over the two-year rollout. The Unit Review also recommended approving the requested one-time allocation of $500,000 for the workload study and treatment space contracts, noting that if the workload study were to confirm the need for additional resources, the Department of Corrections and Rehabilitation could request additional funding.

The PBM (Program Budget Manager)/Capitol Office Review begins by describing the pending Department of Corrections and Rehabilitation's request as one for 547.5 positions to implement the Program Guide revisions, a description that reflects the cover page to Exhibit A. Later, however, the review describes the Department of Corrections and Rehabilitation's proposal for staff to implement the revised Program Guide in the same terms as does the Unit Review, i.e., as a request for 822.1 permanent and 21.2 limited term positions over a two-year period. Noted as concerns was the failure of the Department of Corrections and Rehabilitation to involve the Department of Finance in the plan or the timing of the submittal of the revised Program Guide and a lack of clarity about whether the Governor's legal staff have approved of the changes. The fact that the defendants subsequently stipulated agreement with the Program Guide revisions entered by the Court on March 3, 2006 seems to moot the latter concern.

7

Finally, the PBM/Capitol Office Review observed that the Department of Corrections and Rehabilitation's resources analysis was "conducted by CDC institutions." While there had been no opportunity to analyze fully and validate the appropriateness of the methodology employed, the PBM/Capitol Office expressed concern that the proposal "may overstate the need." Exhibit B, at p. 3. The Unit Review recommendation seemed to respond to just that question, suggesting approval of 539.65 during the two-year roll-out simultaneously with the conduct of an independent workload study.

The final recommendation of the Department of Finance in Exhibit B approved only the request for staffing necessary to implement the revised Program Guide in the locked units at California State Prison, Corcoran, coupled with a deferment until Fall of consideration of the rest of the staff needed to implement the revised Program Guide and a recommendation that the Department of Corrections and Rehabilitation "prioritize the implementation of the Guidelines in ASU and SHU in the remaining correctional facilities before implementing the Guidelines in the general population." The recommendation also noted the possibility that a court order would be entered requiring implementation of the revised Program Guide during FY2005-06. Exhibit B, at p. 4. In choosing not to seek the requested funds for staffing to implement the revised Program Guide, the Department of Finance also elected not to seek the $500,000 requested to fund workload study and treatment space contracts. In the absence of a court order, the Department of Finance chose not to respond to a single aspect of the thoughtful, careful recommendation of the Unit Review.

Informed by these documents, a review of the *Jerue Declaration* filed with the defendants' response to the Special Master's initial report raises troubling issues. The

8

declarant's statement in paragraph 10 of his declaration that a Department of Corrections and Rehabilitation budget proposal for 822.1 positions to implement the revised Program Guide was not presented to DOF for review and analysis during the FY2005/06 budget process was incorrect, notwithstanding the misleading title page of Exhibit A. The declarant's assertion in paragraph 11 that any reduced request was not included in the Governor's budget proposal because it lacked sufficient substantiation, absent a court order, is also contradicted by Exhibit B, which makes it clear that the lack of a court order was the dispositive factor.

More disturbing still, when the budget cycle for 2006/07 began to crank up, it was as though the 2005/06 process had never occurred at all. The Department of Finance seems to lack a memory for its past analyses and recommendations. Assuming that the admonition "to prioritize implementation of the Guidelines in ASU and SHU" was somehow communicated to the Department of Corrections and Rehabilitation, the department's FY2006/07 request for staffing to implement the revised Program Guide focused primarily on administrative segregation and segregated housing units. The number of positions requested was reduced to mirror the Department of Finance's recommendations in the preceding budget process. The department's request in FY2006/07, provided in Exhibit C in the Special Master's initial report, sought 509.56 positions to implement the revised Program Guide, 299.98 of them (58.9 percent) of them targeted for administrative segregation units. Included were requests for 71.6 positions for reception centers and 72.98 positions for mental health outpatient units, both service areas under enormous strain due to overcrowding problems. The last 65 positions were requested for a miscellany of shifts and expansion among psych tech supervisors and

9

quality management personnel. Given the Department of Finance's failure to approve a request for a workload study in the preceding budget cycle, the Department of Corrections and Rehabilitation did not seek a workload study in its 2006/07 request for staffing to implement the revised Program Guide, although it did request a smaller allocation for a workload study in its request for enhanced headquarters staffing. The Department of Corrections and Rehabilitation was responsive to all of the applicable signals received from the Department of Finance in the FY2005/06 budget process.

Exhibit C to this report provides the *Issue Proof Listing* for the Department of Finance's review of the Department of Corrections and Rehabilitation's Coleman-related FY2006/07 budget requests. Like Exhibit B, it provides a summary of the Unit Review, which is extremely sparse, and a more fulsome summary of the PBM (Program Budget Manager)/Capitol Office Review. It, too, is undated but has at the bottom of each page a date of and time "7/17/2006 5:01:31 PM."

The PBM/Capitol Review provides a description of the budget request, comments and recommendations. In the comment section, the lack of objective workload data on which to base an analysis, the absence of data to evaluate efficiency in service delivery with existing resources and limited information or analysis of existing base resources are all noted as concerns. The Department of Corrections and Rehabilitation might have been in a position to respond to these criticisms if its proposal for the funding of an independent workload study had been adopted by the Department of Finance in the FY2005/06 budget. Otherwise, it is difficult to know how the Department of Corrections and Rehabilitation could possibly have assembled the objective workload data once again noted to be essential. Actually, the Department of Corrections and Rehabilitation tried to

10

meet this anticipated objection by gathering and providing data on mental health staffing ratios in other correctional departments around the country.

The PBM/Capitol Office review concluded with a recommendation approving the allocation of 71.6 positions for receptions centers, 73.0 positions for the weekend staffing of Outpatient Housing Units and a potpourri of 34 new or upgraded supervisory and quality management positions, a total of 168.6 new positions and ten upgrades, in response to the Department of Corrections and Rehabilitation's request for 509.56 positions to implement the revised Program Guide.

Lastly, the PBM/Capitol Office review noted that the reviewers were "denying the request related to Ad Seg staffing to meet program guideline requirements because the base level of staffing requested was already provided in fiscal year 2000-01." Exhibit C, at p.3. Herein lies the red herring relied on in the *Jerue Declaration* to discredit the Department of Corrections and Rehabilitation's request for staffing in administrative segregation to implement the revised Program Guide and postpone any further consideration of the staffing needed to implement the revised Program Guide until, at the soonest, the next budget cycle.

Exhibit 2 in the *Jerue Declaration* is a chart prepared by the Department of Corrections and Rehabilitation in support of its request for staffing to implement the Program Guide revisions in administrative segregation. The chart, when combined with Exhibit 3 in the *Jerue Declaration*, which provides a FY2000/01 budget proposal submitted to the Legislature allocating 285.4 positions to implement the Court's July 26, 1999 Order requiring the defendants to provide mental health services to inmates in administrative segregation, reportedly "caused DOF to recommend the Governor's

11

inclusion of CDCR's proposed workload study in the Governor's proposed budget to the Legislature." *Jerue Declaration*, paragraph 27.

The Department of Corrections and Rehabilitation's chart is seriously flawed in both conception and execution and accomplishes nothing but confusing the nature of the Department of Correction's request, but it is hardly the only basis for divining and assessing the true nature of the department's request. The *Jerue Declaration*, in paragraph 26, argues that the chart proves that the Department of Corrections and Rehabilitation had already received and misused allocated staffing resources possibly sufficient to implement the revised Program Guide in administrative segregation and talks about seeking, and failing to elicit, an explanation of the chart's inference that the request amounted to from the Department of Corrections and Rehabilitation, but there is no evidence of such a request in the mountain of documents and e-mail messages submitted to the Special Master in the last few days.

If the Department of Finance needed some independent corroboration that the resources allocated for the provision of mental health services in FY2000/01 are in place and are currently inadequate to meet the mental health needs of seriously mentally disordered inmates in the Department of Corrections and Rehabilitation, it could have read the thousands of pages of uncontested monitoring reports compiled in the Coleman case over the past decade. Indeed, each request for funding from the Department of Corrections and Rehabilitation included accurate and telling summaries of those reports.

The presently soaring rate of suicides in administrative segregation units alone is an index of the need for increased mental health monitoring and treatment of inmates, a need the Department of Corrections and Rehabilitation is seeking frantically to

12

meet now. Inmates placed by the State of California in overcrowded and understaffed administrative segregation units are killing themselves in unprecedented numbers, while the Department of Finance parses charts to impede the Department of Corrections and Rehabilitation's efforts to procure staffing to address the problem. California citizens are entitled to safeguards for expenditures by their State government; prison inmates are entitled to the basic protection and services embraced in the Constitutional ban against cruel and unusual punishment.

The Department of Finance now has its court order. On March 3, 2006, in advance of completion of the budget cycle for FY2006/07, the Court ordered the defendants to implement the revised Program Guide "immediately." As explained in the Special Master's initial report, the order for immediate implementation of the revised Program Guide was based on the fact that negotiations for the bulk of the revisions were completed in July 2004, and the Department of Corrections and Rehabilitation had early undertaken steps to expedite the accepted changes, including a field survey to determine what additional staff and equipment would be necessary to comply with the new requirements. Out of that survey emerged the request for 822.1 permanent and 21.2 limited term positions submitted in FY2005/06 and the substantial internal workload analyses supporting the request. Uniquely in the history of the Coleman, the defendants were actually on the cusp of anticipating a substantial court order on their own initiative.

So far, the defendants have sought and received authorization for the following positions to implement the revised Program Guide: 51.25 positions for the locked units at California State Prison, Corcoran; 71.6 positions for reception centers; 72.98 positions for outpatient housing units; and, arguably, 13.0 headquarters positions

13

(via the unrelated request for enhanced central office in the FY2006/07 budget), a total of 208.83 of the originally requested 822.1 permanent and 21.2 limited term positions. The defendants need to be reminded that the Department of Corrections and Rehabilitation is the State's expert on corrections. The observation of the PBM (Program Budget Manager)/Capitol reviewers in 2005 that the Department of Corrections and Rehabilitation's request for 822.2 permanent and 21.2 limited term positions to implement the revised Program Guide "may overstate the need," was not based on any correctional expertise nor is it supported by any evidence provided to the Special Master. Exhibit B, at p. 3. That gratuitous observation, moreover, was accompanied by a decision to postpone consideration of the request for some six months and a lamentable rejection of the request for an independent workload study. So much for the Department of Corrections and Rehabilitation's efforts to anticipate court orders based on currently obvious needs.

On the other hand, apart from the final outcome, the Department of Finance's handling of the FY2005/06 budget request remains something of a high-water mark in this matter. While the basis for the Unit Review's reduction of the requested 822.1 permanent and 21.2 limited term positions to 530.65 permanent and 21.2 limited term positions was neither described nor produced, the fact that it was accompanied by approval of funding for a workload study ameliorated the reduction. The resulting workload study could have served to better inform the Department of Finance's response to the Department of Corrections and Rehabilitation's FY2006/07 budget request for any additional staffing needed to implement the revised Program Guide.

Now, of course, the defendants have forfeited that reasonable approach. They are presently out of compliance with the March 3, 2006 Order and have no prospect of providing more than 25 percent of the Department of Corrections and Rehabilitation's estimate of staff needed to implement the revisions until, at best, sometime after July, 2007.

It is, therefore, the recommendation of the Special Master that the defendants be required to prepare and present to the special session of the Legislature, scheduled to occur in August, 2006, a budget proposal for the allocation of no less than the 530.65 permanent and 21.2 limited term positions recommended by the Department of Finance's Unit Review in 2005, together with an allocation of sufficient funding to execute and complete a workload study in time to include its findings and recommendations in the FY20007/08 budget. The 530.65 permanent positions should be in addition to the 208 permanent positions already allocated to implement the revised Program Guide.

The unsealing of documents in this matter and any decision to add the Department of Finance as a named party in <u>Coleman</u> are legal questions, the resolution of which is left to the Court. Substantively, the performance of the Department of Finance in the handling of funding for the mental health staffing needed to implement the revised Program Guide is a compelling argument for their inclusion as a named defendant.

> Respectfully submitted,
>
> /s/ J. Michael Keating
> Special Master

July 27, 2006

15