ERIC WILLIAMS
CALIFORNIA MEDICAL FACILITY
P.O. BOX 2000
VACAVILLE, CALIFORNIA 95696-2000

**FILED**

SEP 1 4 2006

Re: CONTINUOUS PSYCHOLOGICAL TORTURE of A INMATE

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

COLEMAN V. SCHWARZENEGGER, Et, AL
CASE#: CIV S-90-D520-LKK-JFM-P

## Honorable LAWRENCE K. KARLTON, U.S. District Judge

I AM A INMATE, INCARCERATED WITHIN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION. I AM ALSO, CLASSIFIED AS E.O.P.) AS SUCH I AM A MEMBER OF THE COLEMAN V. SCHWARZENEGGER CLASS ACTION CIVIL SUIT.

Your Honor, ON July 30th, 2006 I SENT YOU A LETTER, DESCRIBING IN DETAIL OF HOW I AM BEING TARGETED FOR PSYCHOLOGICAL TORTURE, AND HOW I AM BEING STRATEGICALLY TRACKED, BY C.D.C.R. OFFICIALS FROM PRISON TO PRISON, FOR THE SOLE PURPOSE OF ADMINISTERING PSYCHOLOGICAL TORTURE TEACHNIQUE'S ON ME. (SEE EX. "A" COPY OF LETTER DATED July 30th, 2006)

Judge KARLTON, The PSYCHOLOGICAL TORTURE IS CONTINUING AND GETTING WORSE. CORRECTIONAL OFFICERS ARE TAKING ON A ATTITUDE, AS THINKING THAT THEY CAN INFLICT AS MUCH PREMEDITATED CRUEL AND UNUSUAL PUNISHMENT UPON ME, AS THEY WANT AND NO ONE CAN STOP THEM. ONE PARTICULAR OFFICER, THAT HAS BEEN PARTICIPATING IN PSYCHOLOGICALLY TORTURING ME, HAS TOLD ME THAT THERE GOAL IS TO MAKE ME BRAIN DEAD, BUT IF THEY CAN'T MAKE ME BRAIN DEAD, THEY ARE GOING TO JUST MURDER ME.

I AM FEARFUL FOR MY LIFE YOUR HONOR, I ONLY RESPECTFULLY ASK THAT YOU ALLOW THE ATTORNEYS THAT REPRESENT THE MENTAL HEALTH INMATES, IN THE COLEMAN CLASS ACTION CIVIL SUIT, ROSEN, BIEN AND ASARO, TO INVESTIGATE MY SITUATION, BY INTERVIEWING THE

1

Witness's under Oath, and I'm positive that the witness's Testimony will corroborate the facts that I have set forth in the Letter, dated July 30th, 2006.

Your Honor, This is a very dangerous situation that I am in, And The magnitude of This psychological Torture is on such a wide scale That it's begining to overwhelm me, The officers are working in concert to inflict premeditated cruel and unusual Punishment upon me, in violation of my 8th Amendment Right To The U.S. Constitution.

Also, Because I am The only inmate being Targeted for This Psychological Torture, I Am Being Denied Equal Protection of The Law, in Violation of my 14th Amendment Right To The U.S. Constitution.

Judge Karlton, Can you Please stop The correctional officers from Singling me out for premeditated Psychological Torture. Thank you Very much for your Valuable Time, your Honor.

I Pray That This Honorable Court, intervene in This situation.

I Declare under The Penalty of Perjury That The foregoing is True and correct. I Am over The Age of 18, And I Am competent To Testify, And I will Testify if called To Do So.

Date: 9-4-06

Eric Williams

# Witness List

1) Dr. Morris - Psychologist - At California Medical Facility
2) Dr. Tucci - Psychologist - At California Medical Facility
3) Dr. Lawrence - Psychologist - At California Medical Facility
4) Dr. Gregg - Psychologist - At California Medical Facility
5) Dr. Robinson - Psychologist - At California Men's Colony State Prison
6) Dr. Hodale - Psychologist - At California Men's Colony State Prison
7) Dr. Switze - Psychologist - At California Men's Colony State Prison
8) Dr. Malue - Psychologist - At Substance Abuse Treatment Facility
9) Dr. Sexton - Psychologist - At R.J. Donovan Correctional Facility
10) Dr. Whdweg - Psychologist - At R.J. Donovan Correctional Facility
11) Dr. Kate - Psychologist - At California Men's Colony State Prison.

Ex. "A"

CALIFORNIA MEDICAL FACILITY
P.O. Box 2000
VACAVille, CALifornia 95696-2000

Re: ILLegAL PsychoLogicAL Torture of a inmate.

COLEMAN V. SchwarzeNegger, Et, AL
CASE#: CIV S-90-0520-LKK-JFM-P

## HONORABLe LAWRENCE K. KARLTON, U.S. District Judge

I AM A iNMAte incarcesated within CALiforNiA DepArtment of corrections ANd RettABilitAtion. I Am AlSo classifred AS E.O.P., AS Such I AM A MemBer of The ColemAN V. SchwarzeNegger CLASS ACTION CiVIL Suit.

for The PAST 2 yeArS, CorrectioNAL officers Have Been PsychologicAlly Torturing Me CONTiNuouSly, ANd The PsychoLogicAl TortuRe HAS followed me To 5 Diffesent prisoNS within This 2 yeAr feriod. BecAuse This pyschologicAl Tortuse HAS followed me To 5 DifferenT prisoNs, This is iN fAct EviDence, That This PsychoLogicAl Torture That I Am Being TArGeted for, is orchestrated ANd orGANized By A Senior officer AT C.O.C.R. HeAdQuArters, who iS TrAcking my movemeNT from prison To prison, ANd is INSTructing officers oN How To Apply PsycholLogicAl Torture TeachwiQues ON me.

It first StArted when I WAS At R.J. DONOVAN Correctional facility, Around April of 2004. This is wheN offecers put A "oress" on me. The ReasoN why I use The Term "Oress" is BecAuse This is How I HeArd ANother officer describe The psychoLogicAl Torture That I WAS Being TArgeted for. The PsychoLogicAl Torture TeachwiQues That officers would Administer oN me Are, They first STArt spreading false Rumors SAying That I Perform orAL sex oN men. officer's would Then CONSTAntly SexuAlly HArAss me, with Body LANguage ANd HANd SigvalS That SimulAte orAL Sex.

1.

. Officers Do A Multitude Of Things, Such Of Hit Make Too Much Noise, Like Walking By My Door And Hitting My with There Flashlight To Keep me Jittery, Another Psychological Torture Teachnique That The Officers Would Use On me, is That They Would Stand By My Door when I was Sleeping, They Would Then Listen To My inHale And ExHale Breathing Pattern, When They Hear That My Breathing is At The Top of A inHale, The Officer Would Hit The Door Hard with Their flashlight To Awake me. Officer's Have Been Administering This Psychological Torture Teachnique On me, very methodically And Strategically, As A Result your Honor, I Now Have A Irregular HeartBeat And very High Blood Pressure.

At R.J. Donovan I Then Became Concerned About my Safety. I Then Attempted To Address Thease Issue's By Submitting Several 602 Appeals And writing A Letter To The chief Deputy warden. (See Ex. "A")

However, Judge Karlton During The InTerviews of The 602 Appeals Senior Hearing officers, would cover up The psychological Torture By either ignoring my Allegations, or Place me ~~under~~ under Duress To get me To withDraw The Appeal, I Then Attempted To Seek Help from The mental Health Staff, At This point your Honor, I was Placed in Central infirmary, for crisis Bed Treatment. when I would Tell The mental Health Staff, what The Correctional officers were Doing To Me, There was Always A officer Listening in, The officer would Then inTimidate The mental Health Staff, And Strongly Suggest That Any Issue's, That I was Complaining About, was A product of my Previously Diagnosed mental illness. The mental Health Doctor Then Told me That He can't get involved in Any Issue's That I Have with Correctional officers, And All He could Do is prescribe more psychotropic medications, I Then Replied That I Don't Need more psychotropic medications, I Just need for The correctional officers, To Stop Targeting me for intentional premeditated psychological Torture. I was Then Discharged from The central infirmary And Released Back To The General population, in which The psychological Torture continued

I Then Noticed That officers were Strategically Assigning inmates To my cell, That would Help The officers, in Administering The psychological

2

Torture Teachniques on Me. I Then informed my Mental Health clinician, Dr. Sexton, when we would have 1 on 1's, where there we no officers Listening in, I Told Him About The Psychological Torture. Dr. Sexton Then Started To Observe me more And inquire About The Mistreatment That I was Receiving.

Dr. Sexton Then wrote a 128-B chrono, saying That I should be single celled. However, your Honor The Psychological Torture continued And it became clear That Dr. Sexton Did Not Have The power To stop correctional officers from psychologically Torturing me, I was Then placed in Administrative Segregation At R.J.D., Then in August of 2004 I was Transferred To California Men's Colony State Prison. (C.M.C. East)

At This point, Judge Karlton I was Sure That The Psychological Torture would stop, Because I was going To A new prison, where No one knew me, To The Contrary, your Honor The psychological Torture followed me To C.M.C. East, In fact officers At C.M.C. East were useing The same psychological Torture Teachniques on me, ~~~~~ In which The officers At R.J. Donovan Also used. It Then became clear To me, Based on The Sequence of Events, That The psychological Torture was being orchestrated And controlled by A Senior officer At C.D.C.R. Headquarters.

Your Honor, while At C.M.C. East, I again Attempted To seek Help from Mental Health Staff. I was Then placed in L.O.U. When I Appeared in front of I.D.T.T., I Advised Mental Health Staff That officers were psychologically Torturing me. Mental Health Staff Then Responded by saying That They can't get involved in Any Issue's That I Have with correctional officers, And That All They could do is send me on A Temporary Transfer To Another Institution, for crisis Bed Treatment.

I was Then sent To CSP/LAC And Admitted into There central infirmary, for Mental Health Crisis Bed Treatment.

3

. Your Honor, The Psychological Torture Again followed me, To CSP/LAC And continued while I was in The central infirmary. I Then Appeared in front of I.D.T.T. At CSP/LAC, I Advised The Mental Health Staff That correctional officers were psycho- Logically Torturing me, And The Torture was following me from prison to prison. The Mental Health Doctors At CSP/LAC, Also Advised me That They can't get involved in Any Issue's That I Have with correctional officers, And That All They can Do is prescribe more Psychotropic Medication.

I Stayed At CSP/LAC for About 2 weeks, This was Around The middle of September of 2004, I was Then Discharged And Sent Back To C.M.C.EAST, And Re.Admitted into L.O.U. I Again Appeared in front of I.D.T.T., And Again informed Mental Health Staff, That correctional officers were continuing to psychologically Torture me, Mental Health Staff Then Responded By Saying That, They can only Send me on Another Temporary Transfer, To A Different Institution, for More crisis Bed Treatment.

At This Point, your Honor I was Sent To Substance Abuse Treatment facility, (Sat.f") And Admitted into There central infirmary for crisis Bed Treatment. The psychological Torture continued To follow me To Sat.f". I Appeared in front of I.D.T.T. At Sat.f", I Advised The Mental Health Staff, That correctional officers were psychologically Torturing me, And The Torture was following me from prison to prison.

Judge Karlton, One particular psychologist By The name of Dr. Malue, Appeared To be concerned, He Told Me That He was gonna Try To Help me, And keep me At Sat.f" So I could get some Rest. However, A few Days Later I Appeared Again in front of I.D.T.T. At Sat."F", And Dr.Malue was Not present, I Then inquired About Dr.Malue And was Told That, He unexpectedly Had To Take Some Time off. At This point, it Appeared To me That because Dr.Malue was willing To Help me, Senior officers possibly Persuaded Dr.Malue To Take Some Time off, During my Temporary Stay At Sat."F".

. The Approximate Dates That I was At Sat. F" was About
The end of September of 2004 Threw The Begining of October
Of 2004, I was Then Discharged from Sat.if" And Sent Back
To C.M.C. EAST. Again I was Re-Admitted into L.O.U., And
I Again Appeared in front of I.D.T.T, And Again I informed
Mental Health Staff That The Psychological Torture was Continuing
To follow Me,

The Mental HeAlt STAFF At C.M.C. EAST/Again informed Me
That They can't get involved in Any Issues That I Have with
Correctional Officers, And That They would Send Me To A Department
Of Mental Health Program,

Your Honor, I was Then Transferred To California Medical Facility, And
Admitted into The Department of Mental Health Acute Psychiatric Program,
The Psychological Torture Again followed Me, I Then Appeared in
front of I.D.T.T., And I Advised The Department of Mental
Health Doctors, That Correctional officers within C.D.C.R. were
Psychologically Torture, And Strategically And Methodically Tracking
My Movements from Prison To Prison/To Administer Psychological
Torture Teachniques On Me.

The Department of Mental Health Staff Appeared to Be
Concerned, And The Doctor Said That He would Keep Me in The
Program So I Could get Some Rest, While I was Admitted into
The D.M.H. Program, I Noticed That Correctional officers present's
was Linited, But The C.D.C.R, Staff That was Assigned To
The Housing Unit, were Medical Teachnical Assistants, (M.T.A.'s).
The M.T.A's Continued To Administer The Psychological Torture
Teachnique's On Me, Even while I was Admitted into The D.M.H.
Program.

At This Point Your Honor, it Became Clear That The Department
Of Mental Health Staff Did Not Have The Power To Stop C.D.C.R,
Staff, from Psychologically Torturing Me. The Doctor The Dischasg
Me And Sent Me Back To C.M.C. EAST. I Arrived Back At
C.M.C. EAST Around December of 2004. I was Released to
The General Population At C.M.C. EAST.

. My Christian name is Robinson. I told Her about the psychological torture, Then on January 25th 2005 I was placed in Administrative Segregation, At CMC EAST for a mutual combat with Another inmate, AS A Result it was determined that I was gonna be Transferred Back to California Medical facility for permanent Housing. I stayed in Administrative Segregation At CMC EAST until August 3, 2005, At This Point I was Transferred BACK To California Medical facility.

Judge Karlton, This is The fact That scares me, while At California medical facility, I was given A physical Examination, Around November of 2005. The Doctors Then Advised me That I was in Good Physical condition. Then Around The LAST week of December of 2005 I mysteriously Became severely ill. I was Then sent to a outside Medical center, Known As Vacaville community Hospital. The Doctors AT Vacaville community Hospital Then conducted A series of Test on me, To see what was causing my illness. The Doctor Then Advised me That I HAd contracted A Rare Bacteria infection, Known AS "Fuso Bacterium Varium". I Then Asked The Medical Doctor, How Could I've contracted This RARe BACTeriA infection. The Doctor Then said That, This BACteriA infection is SO RARe, That A Person would HAd HAVE To Travel out of The Country To contract "Fuso BATerium VARium". The Doctor Then said, HAVE You Traveled out of The Country Recently, I Then Replied That I've Been incarcerated for The PAST 8 Years, At This Point The ~~medical~~ Medical Doctor went silent And looked At The correctional Officer, That was Monitoring The conversation. I Then stayed in Vacaville community Hospital Receiving Treatment from 12-25-05 To 1-3-06, my Medical Doctors were Dr. Partham And Dr. Meogi. (See Ex." B")

Your Honor, Because I Am Aware That Officers within C.D.C.R. HAS Been psychologically Torturing me for a Substantial period of Time, I Truly Believe That Whoever The Senior officer is At C.D.C.R. Headquarters That is orchestrating The psychological Torture, That Officers Are Administering on me, That Person is The cause of me contracting

6

I was Discharged from Vacaville Community Hospital and sent back to California Medical Facility, at which I was Re-Admitted into The Prison Hospital for Continued Treatment. It should Also Be Noted, That while I was severly ill, The psychological Torture continued, Throvout The Period when I was in The Hospital. I was Released To The General Population At California Medical Facility Around 1-14-06, Then on 2-25-06 I was placed in Administrative Segregation At California Medical Facility.

While in Administrative Segregation, your Honor, I Then attempted To seek Help from Rosen, Bien, And ASARO, Because I knew They were The Attorneys, That were Representing The Mental Health inmates in The Coleman Civil Suit, I Then wrote A Letter And Sent it To Rosen, Bien And ASARO, in June of 2006. I Received A Response from Rosen, Bien And ASARO, And I was Advised That They would Try To Have Someone Review My Situation. (See Ex. "C")

Your Honor, Then On 7-21-06 A Representative from Rosen, Bien And ASARO's office Came To Visit Me, On A Attorney Visit. The Representative's Name was "Nathan". I Then Told Nathan That Correctional Officers were psychologically Torturing, And Could He Help me. Nathan's Response was That, There's Nothing He Can Do, And That They Can Only Address Issue's That Affect The entire class Members, I Then Attempted To explain To Nathan That I'm The Only E.O.P. class member That is Be Strategically And Methodically Targeted for psychological Torture, Nathan Again Stated That, There's Nothing He Can Do.

Judge Karlton, At This Point I'm Confused, Tired And frustrated. I Don't Know what To Do. Correctional officers within C.D.C.R., Are Continuing To psychologically Torture Me. I feel That My Life is in, imminent Danger. I'm Begging for The Mercy of This Honorable Court, To Please intervene

7

Case 2:90-cv-00620-KJM-SCR Document 1970 Filed 09/13/06 Page 12 of 61

. And STOP Correctional Officers from
psychologically Torturing, Me. I Only Seek Protection for My Life
And for The psychological Torture To Stop, I Am NOT Delusional
This is A Real Situation That I am Bring To Your Attention.

Also, Your Honor During This entire Time That This psychological
Torture Has Been going on, I've Been Documenting Employee
Witness's Name, from The 5 Different Prisons That I Have Been
To During This period. (See Ex."O")

Thease witness will in fact Corroborate The psychological
Torture That I Have Described in This Letter, Along with The
Notes That Have Been Documented in my mental Health File, As
Such The witness's Testimony will Demonstrate A pattern of How
This psychological Torture is following me from prison To prison,
And will Reflect That I Am Being Subjected To premeditated
cruel And Unusual punishment, in violation of my 8th Amendment
Right To The U.S. Constitution.

It Should Also Be noted Your Honor, That Because I
was At C.M.C. EAST for A Substantial period of Time, And I've Been
At C.M.f. for A Substantial period of Time, As A Result of Cor-
rectional Officers Blantly Administering The psychological Torture
Teachniques On Me / Virtually All Staff AT CMCC EAST And CMf.
Are Aware That Correctional officers, Are psychologically Torturing
me, But No One will Help Me Because Correctional Officers Are
Always Bullyins, Intimidating And placeins employees under Duress,
So That They won't get involved.

Also, Judge Karlton I would Like To inform The Court That
Correctional Officers Within C.O.C.R., will Do Anything To Cover up
This psychological Torture, As Such Correctional Officers Has
The propensity To engage in witness Tampering, As A means To
Cover up This on going premeditated 8th Amendment violation.
If I may make A Suggestion, Your Honor, To Assure That The
integrity of any investigation is upheld, I Think That A

8

Effective Remedy is to Have All Three witnesss's interviewed under Oath and for the Court to protect me and the witnesss from Retaliation, During any Investigation. Your Honor, can you please allow Rosen, Bien and Asaro to conduct a investigation by Interviewing the Employee witnesss's and Review my Mental Health file.

My Status Right Now, your Honor is that The psychological Torture is continuen, I'm in Administrative Segregation AT California Medical Facility, waiting to be Transferred to Another ~~prison~~. Prison. I would like to Thank you, your Honor for Taking Time out to Read This Letter. I pray That This Honorable Court will intervene and Stop Correctional officers within the California Department of Corrections and Rehabilitation from psychologically Torturing me, in Violation of my 8th Amendment Right to The U.S. Constitution.

I Declare under The penalty of perjury That The Above is True And Correct. I am over The age of 18. I am competant to Testify, And will Testify if called to do so.

Date: 7-30-06

Eric Williams# H-98792

Ex. "A"

ERIC WILLIAMS #H-98792
Case 2:90-cv-00520-KJM-SCR   1-5   Document 1970   Filed 09/14/06   Page 15 of 61
480 alta road
San diego,california 92179

e: Conspiracy.


ttn:·

I'm writing you this letter to bring to your attention,a situation That i think should be
onitered. I'm Housed on facility "1". I've been at this institution since august of 2003.
"ve been on facility "1" About 6 months. I was just recently discharged from the Enhancd out-
atient program.

The situation that i want to bring to your attention,Is there appear to be some type of
onspiracy against me On facility "1". From correctional staff.

The staff that I think are Involved are,Captain sandlin,Lt.Steel,Lt.Zinzer,Sgt.kuladrovic
gt.Mitchell,C/O Dominguez,C/O Releas, and C/O Larson. There are other officers in-
olved,however I'm still in the process of discovering there names.

This is the situation,Whenever i Go to the yard,thease named officers,Watch's me extensively
ad whisper amongst each other. My program consist of going to the yard and exerciseing,and
aen sitting on a bench.

I Know what you are thinking,this Inmate is paranoid and crazy. to the contrary,that is
ot the case. I Would Not waste your time and Mines by writing this letter.

Since I've been on facility "1",I've seen situations where Sgt.Walls and Sgt.Kulodrovic
long with correctional officers,attack inmates,And the inmates End up in Adminstrative
egregation, With rule violations report For assault On staff. I do not want to be In that Kind
f situation,i would never attack staff,Nor would I threaten any bodily Injury to staff.

 I'm Writing this letter because this is the only way,That i can defend myself,When it comes
wn to A inmates word,against Staff.

Altbough I've named supervisor staff , I do Not think that they will be directly Involved In
My Incident. The scenerio that i perceive is that, Supervisor staff will Instruct corretional
fficers to engage or provoke some sort of confrontation,And the supervisor staff will back up the
fficers on paper work.

Once again i emPhasize that i am not paranoid,This is A reality. I Only ask that you Look
ito this situation and come and talk to me. If this situation goes Uninvestigated i will be forced
) forward this letter to the Warden,The director of correction,and the Inspectors generals
ffice. Soon thereafter i will declare a Hunger strike.

Also,It should be Noted that i've been disciplinary free since 1999,To the best of my knowledge
Have No desire to violate any C.D.C. rules,and I never posess contraband. I Only hope that thease
mspiring C,D.C. Officers do not intend to Plant contraband On me or in my cell.

Thank you very Much for your time............It is greatly appreciated,as i await your
sponse.

Dated: 4-15-04

"RESPECTFULLY SUBMITTED"

ERIC WILLIAMS #H-98792

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                          ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF CORRECTIONS**
**RICHARD J. DONOVAN CORRECTIONAL FACILITY**
**480 Alta Road**
**San Diego, CA 92179**



April 23, 2004

Mr. Eric Williams
H-98792
F1-05-146U

Dear Mr. Williams:

This is in response to your letter received April 19, 2004, regarding your issues of inappropriate staff conduct.

Mr. Williams, our primary mission is to provide public safety through the safe and humane incarceration of convicted felons. This is a responsibility that is taken very seriously. Therefore, any time someone in our custody makes an allegation of improper behavior by an employee of the Department of Corrections, it is taken very seriously and given due consideration. The protection of the rights of the individual is the binding tie that holds the fabric of our society together, and the rights of all parties involved in this matter must be preserved. Therefore, before we will be able to proceed with any action in this matter, I must inform you that you must adhere to the proper administrative remedy guidelines. Those guidelines are established in the Inmate/Parolee Appeals process. All of the necessary information that you will need to process your complaint may be found in the California Code of Regulations, Title 15, Section 3084.1.

I appreciate your correspondence regarding this issue. If you feel that you have been treated in an inappropriate manner, I welcome your participation in the system that has been established to address these matters. Once we have received your appeal form, we will process it in a timely and proper manner.

If you have any further questions, please contact the Facility 1 Correctional Lieutenant, via institutional mail.

Sincerely,

D. M. BARNES
Chief Deputy Warden (A)

I declare under the penalty of perjury that the foregoing is true and correct.

1) On 6-14-04 I observed I/M Williams /H-98792 walk Up to C/O Wilson and ask Him for A cell search receipt.

2) At this Point for no reason at all C/O Wilson begun useing profanity and obscene language at I/M Williams,I/M Williams then responded by saying ‡F‡You and Walked away.

3) C/O Wilson then responded by balling up his fist and saying fo I/M williams we can go right here. C/O wilson then begun useing profanity somemore. when C/O wilson seen that I/M Williams was not going to engage him in A Physical Altercation, C/O Wilson then said to I/M Williams ,I thought so,You homosexual.

EXECUTED THIS 15th day of june,2004.


D.Ausler  /J86468

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. _KVD_    1. _04-575_    _Se_

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| WILLIAMS | H-98792 | UNASSIGNED | 1-5-146 up |

A. Describe Problem: On 4-15-04,i was makeing an attempt to go to the law library.

I asked an inmate to ask C/o yang,if he could let me out to go to the law Li-

Brary. C/o yang just looked at my cell and smiled. I Then just stood at my

Door and attempted to wait patiently. I then sent another inmate to C/O yang

However,Again yang just looked at my door and smiled. while standing at the

Door about 10 minutes past, C/o yang then opened my door.   At this point I

Wanted to inquire,why was c/o yang delaying my access to the law library. I

Then walked over to C/o yang and asked him what the hell (see attached page0

If you need more space, attach one additional sheet.

B. Action Requested: I would like for C/O yang to formally apologize to me and
admit,in front of the inmates in which he made this false accusation that

The comment was in fact false. Also,C/O yang needs to be advised thart thease

comments and behaivor are not compatiable with the department of corrections.

Inmate/Parolee Signature: _E.C. William_    Date Submitted: _4.19.04_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

First Level ☐ Granted ☐ P. Granted ☐ Denied ☒ Other _Withdrawn_

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _4/23/04_ Due Date: _5/14/04_

Interviewed by: _ON 5-4-04 , I INMATE WILLIAMS WAS iNVolVed WiTh A iNTErvieW WiTh SGT. MiTChell, ANd C/O YoNG, RegARdiNG The 602, The AGreemeNT ThAT We HAVe ReAChed, WAS foR Me To WithDRAWel ThiS AppeAL, ThiS iS my iNdePeNdeNT DeciSioN, MAde oN my fRee will._

_Greg WilloN_ _# H99792_

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:

Signature: _____ Title: _____ Returned Date to Inmate: _5/14/04_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____

☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

**ADDITION TO PROBLEM DESCRIPTION:**
Is going on. I then advised yang that if you continue to delay my access to the law library,I"m going to write you up.

As i attempted to walk threw the sally port,C/O Yang made a Homosexual Comment to me. Yang's exact words were,"Why are you mad,You go in there and suck A`dime,you should be happy.' At this point I Immediately turned around an; walke Tow· ·  ·   :/

Up to yang, And asked him what did you say. C/O yang did not repeat the derogatory comment,In-

Stead he responded by saying,what are you talking about. It should be noted that Ther were

several inmates standing around and heard yang make the derogatory comment.(see EX."A"Affidavits)

It appears that C/O Yang is attempting to paint a negative picture of me by makeing false cusations,In A attempt to put a homosexual label or Jacket On me. This type of behaivor and comonts by a C.D.C. officer cannot be tolerated,and needs to be addressed aggressively.

C/O yang's actions clearly violates C.D.C. rule In the title 15,Subchapter 5,article 2 ction 3391 (a),which says,"Employee's will be alert and courteous with there dealings with mates.......Employees Shall not use indecent,abusive,profane or other wise Improper language ile on duty."

C/O Yang's actions also violates C.D.C. Rule in the title 15,Chapter 1,article 1,3004(b) ich says,"Employee's will not openly display disrespect or contempt for others,In A manner in- nded to,or reasonably likely to  Disrupt orderly operations,Or Incite or provoke violence.

C/O Yangs actions are also,Inconsistent and incompatiable with california department of rrections. which also,violates C.D.C. rule in the title 15,Subchapter 5,article 2,sec.3413(a)(A)(2) ich says,"No employee with the department of corrections will engage In  any other employment or tivity,Inconsistent or incompatiable with the department of correction.......Conduct deemed to ll within suchcatorgories include,but is not limited to,The following,ConTains defematry,In- ntionally false,Intentionally inaccirate,abusive,Obscene,pornographic,Profane,sexuallyorientated harassing"

E-59474

AFFIDAVIT OF, QUINONES William

I, QUIÑONES WILLIAM E-59474 , Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.


1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
   I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
   Going to write your b████ ab██ up. I then heard C/O Yang respond by saying,"You Go In
   There,You suck A D████,you should be happy,Why are you mad." I/M Williams then Walked Up to
   C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
   Accusation.

INTErviewed 0856 I DID NOT wInE nor hear that the officer state any think Derogatory

F1-5-150

EXECUTED THIS 18TH DAY of april,2004


Quiñones William E-59474

AFFIDAVIT OF, _Michael L. Brown_

I, _Michael Brown_ _____,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.

1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
Going to write your, button able up. I then heard C/O Yang respond by saying,"You Go  In
There,You suck A Dime,you should be happy,Why are you mad." I/M Williams then Walked Up to
C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
Accusation.

FK 5-146L

INTERVIEWED
o 650

EXECUTED THIS 16TH DAY of april,2004

_Michael Brown_ C-49633

6/4

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. RJW | 1. 04-710 | 441 |
| 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse effect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILLIAMS | H-98792 | Unassigned | 1-240 |

A. Describe Problem: On 5-25-04 at around 2:15 P.M. I was sitting in front of building 1, Playing Chess with another inmate. At this point C/O Goodbar walked up and stood next to us. C/O Goodbar then put One leg On the bench. I then asked C/O Goodbar, can he move back, He is too Close. C/O Goodbar responded by saying "F" You you homosexual. At this time I was shocked at This false derogatory statement that C/O Goodbar made. I then replied, "F" You. C/O Goodbar Made this statement in front of I/M Jacobs #K-56280. (see attachment "1") C/O Goodbar actions are a direct violation of C.D.C. rules in the title 15, Subchapter 5, article 2 section 3391 (a). Which says, Employees shall be alert, (see attached page)

If you need more space, attach one additional sheet.

B. Action Requested: C/O Goodbar should be administratively reprimanded, Because by putting this fals Information Out in the genral population, He is creating a situation that could have a Adverse effect upon me. C/O Goodbar also, needs to seek more training to ensure that he does Not make this type of mistake again. Also his supervision of inmates should be restricted.

Inmate/Parolee Signature: _____    Date Submitted: 5-25-04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

**First Level**    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____    Title: _____    Date Completed: _____
Division Head Approved:                                                              Returned
Signature: _____    Date    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

**Second Level**    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 4/14/01    Due Date: 7/27/04
☒ See Attached Letter

Signature: _____    Date Completed: 6/23/04
B. EARLY, AW

Warden/Superintendent Signature: D. M. BARNES, CDW (A)    Date Returned to Inmate: 6-28-04

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

## ADDITION TO PROBLEM DESCRIPTION:

and courteous with there dealings with inmates............Employees shall not use indecent busive,profane or other wise Improper language while on duty."

C/O Goodbar actions also violates C.D.C. rule in the title 15,Chapter 1,articlel,sectin 004(b)Which says,"employees will not openly display disrespect or contempt for others in a maner intended to or reasonably likely to disrupt oderly operations ,or to incite or provoke iolence.

C/O Goodbar actions are Inconsistent with the california department of corrections. it appear hat C/O Goodbar made this false statement in front of inmates to paint a False Picture of me as eing a homosexual. This Is false and C/O Goodbar Knows this is false. But for some reason,He rant the genral population to label me as A Homosexual. This is a direct violation of california lepartment of corrections rules in the title 15,subchapter 5,article 2,section 3413,(a)which says,"No employee with the depaRTMENT OF CORRECTIONS will engage in any other employment or activities Inconsistent or incompatiable with the department of corrections.........conduct leemed to fall within such catogories include but is not limited to the followinf,contains lefamatory intentionally false,Intentionally inaccirate,abusive,profane,sexually orientated )r harassing.

Also it should be noted that I sent a letter to the chief deputy warden,Adviseing ier of the strange activity that staff on facility 1, was directing towards me( See attachment 2)

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

1) On 5-25-04 I was sitting on a bench In front of buildind 2,on facility 1, watching I/M Williams play chess with another inmate. At this Point C/O Goodbar walked Up and Watched the game. C/O Goodbar then attempted to put One leg on the bench And Move closer At this point, I/M Williams advise C/O Goodbar that he was to close,can he Please Move back, C/O Goodbar then responded by sayinf "F" you,you homosexual. I/M Williams #H-98792 Then responded by saying f" You . At this Point C/o Goodbar started useing Numerous abusive words towards I/M williams #h_98792.

EXECUTEC THIS @t   26 day of may,2004

JACOBS #K-56280

**Date:**              June 16, 2004

**NAME:**              WILLIAMS, E.

**CDC#**               H-98792

**APPEAL #:**          04-770              **SECOND LEVEL OF REVIEW**

**APPEAL DECISION:**   DENIED

**APPEAL ISSUE:**      You are alleging that on May 25, 2004, while playing chess in front of Housing Unit 1, Correctional Officer (C/O) Goodbar placed his foot on the bench you were sitting on. You state that you asked C/O Goodbar if he could move back because he was tooclose and that he responded by saying, "F... you, you homosexual." You are requesting that C/O Goodbar be reprimanded, be trained, and be restricted from supervising Inmates.

**APPEAL RESPONSE:**   In reaching a decision on this issue, a thorough review of your appeal has been conducted. The attached supporting documents, applicable sections of the California Code of Regulations, Title 15, the Department Operations Manual, and your Central File have been reviewed. Additionally, on June 16, 2004, Correctional Lieutenant G. Hernandez interviewed you regarding your appeal issues.

During your interview, you did not have any other pertinent information to add in regard to your appeal. Additionally, on June 16, 2004, Lieutenant Hernandez interviewed your witness, Inmate JACOBS, K-56280, who stated the exchange of words that occurred between C/O Goodbar and yourself took place in front of Housing Unit 2.

In reviewing your appeal and attached documentation, it was noted that there were discrepancies between your statements and your witness' written/verbal statements. These discrepancies have taken credibility away from your allegations and your witness' statements. You have not submitted sufficient evidence to support your allegations against C/O Goodbar. Your allegations are unfounded and without merit.

Based on the aforementioned, your CDC-602 Appeal is **DENIED** at the Second Level of Review.

D.M. BARNES
Chief Deputy Warden (A)

Ex. "B"

| DATE | TIME | NOTES |
|------|------|-------|
| | | |

3/24/70  9:00    pt was afebrile an
- wa seen at 10:25 - has no complaint
* pt came to ER again with
complaints of chills and feeling
febrile.
- pt now complains of evo pain,
saying has been there for last 5 days,
and an fever & chills
* pt denied vomiting / abd pain/
diarrhea.
- pt denied urinary complaints.
- pt denied cough / cp

v/s- BP- 87/59   PR- 113/m   T°- 103.7°
mouth - & sores /   eye - & jaundice
chest - clear to auscultation
cvs - RRR s ∩s, heard, no (m̄s)
abd - RUQ - tenderness,
& guarding, & palp. organ

Ext. - no edema.

lab.  4/20or- WBC- 8.9   N 77%   b 80%
   4/23/05  WBC 16.1   S-74%   Band 10%
   4/24/05  WBC- 20.6   S- 6%.  Band 31%

A → R/o acute cholecystitis

plan - 0.9 NS% 500cc folu the 100ce/h
- Ancef 2gm IV Q 2 ehr.

→ zylend 650 → BID PRn
   fever.

To be admitted to dorm.
   VVH -
Report given to ER
physician           Harl.
   Q. Devinney

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Williams, Eric
H 98792.
3/38/1970.

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** _Williams, Gric_  CDC #: _H98792_ Housing: _M3/3U_

Diagnosis: _R/o acute cholecystol_ Date: _12/24/0_ Time: _5:30_

**REASON FOR TRANSFER:**

☐ No available hospital beds     ☒ Case requires specialist care

☐ No monitors/other equipment    ☐ Established transfer criteria

☐ Other: _____

**CONTACTS:**

☒ HOSPITAL to which pt going _VVH_    ☐ Direct admit ☒ Through the ER

☒ DOCTOR accepting pt _Dr. Devinny_    Time: _5:37_

☒ ER DOCTOR if going via ER _Dr Devinny_   Time: _5:32_

☐ CMO/MOD for CMF approval _____ Time: _____

☐ WATCH COMMANDER custody _____ Time: _____

☐ AMBULANCE Watch Com. calls _____ Time: _____

☐ PERSON sent to amb. door _____ Time: _____

**TRANSFER CODES**

☐ 1 Routine (i.e., cat scan)

☒ 2 Urgent (i.e., stabalized MI)

☐ 3 Emergency (Red light/siren)

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

**MEDICAL CONSIDERATIONS**

☐ Patient stabalized for transport   ☐ ECG   ☐ Cardiac Monitor

☐ Oxygen _____ l/min   ☐ Nasal cannula   ☐ Mask   ☐ ET tube

☒ IV _D-9 N/S_   Total given prior to current IV hanging: _____

☐ Cath   ☐ NG tube   ☐ C-collar   ☐ Splinting   ☐ Back brd

**PAPERWORK DONE**

☒ Copies sent: ☒ Labs   ☐ ECG   ☐ X-rays   ☒ Chart essentials

☒ Copy of summary Progress Note by ER-MD sent to receiving MD

☐ CMO/Custory Approval form completed & signed

☐ UC Davis form if going there   ☐ Copy of this form with records

**SIGNATURE**

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_____
Physician          Date

GDT:8-21-91

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** Williams Eric    CDC #: HQ8792 Housing: M3|3

Diagnosis: R/O pain /fever /hemoptysis  Date: 12|25|06 Time: _____

**REASON FOR TRANSFER:** CT R/O man - not clearly identified

☐ No available hospital beds    ☑ Case requires specialist care

☐ No monitors/other equipment    ☐ Established transfer criteria

☐ Other: _____

## CONTACTS:

☐ HOSPITAL to which pt going Vaccavalley    ☐ Direct admit  ☑ Through the ER

☒ DOCTOR accepting pt  Dr POPE    Time: 3:50

☑ ER DOCTOR if going via ER  Dr POPE    Time: 3:10 p.

☐ CMO/MOD for CMF approval _____    Time: _____

☐ WATCH COMMANDER custody _____    Time: _____

☐ AMBULANCE Watch Com. calls _____    Time: _____

☐ PERSON sent to amb. door _____    Time: _____

## TRANSFER CODES

☐ 1  Routine (i.e., cat scan)

Stark co  ☒ 2  Urgent (i.e., stabalized MI)

☐ 3  Emergency (Red light/siren)

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

## MEDICAL CONSIDERATIONS

☐ Patient stabalized for transport    ☐ ECG    ☐ Cardiac Monitor

☐ Oxygen _____ l/min    ☐ Nasal cannula    ☐ Mask    ☐ ET tube

☐ IV _____    Total given prior to current IV hanging: _____

☐ Cath    ☐ NG tube    ☐ C-collar    ☐ Splinting    ☐ Back brd

## PAPERWORK DONE

☐ Copies sent:  ☐ Labs    ☐ ECG    ☐ X-rays    ☐ Chart essentials

☐ Copy of summary Progress Note by ER-MD sent to receiving MD

☐ CMO/Custory Approval form completed & signed

☐ UC Davis form if going there    ☐ Copy of this form with records

## SIGNATURE

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_____    12/25/06
Physician    Date

EX. "C"

SANFORD JAY ROSEN
MICHAEL W. BIEN
ANDREA G. ASARO **
ERNEST GALVAN

HOLLY BALDWIN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
LORI RIFKIN ***
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN ****

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

E-MAIL
rba@rbalaw.com

June 22, 2006

CONFIDENTIAL - LEGAL MAIL
Eric Williams, H-98792
California Medical Facility
PO Box 2000
Vacaville, CA  95696

> Re:   *Coleman v. Schwarzenegger*
> Our File No. 489-3

Dear Mr. Williams:

I am writing in response to your letters our office received on June 7, 2006 and June 15, 2006. In the letter we received on June 15th, you mention that you would like to be interviewed during the next monitoring visit at your institution. Coleman monitors will be at California Medical Facility July 26, 2006 through July 28, 2006, we will try to have them review your situation.

In your letter we received on June 7th, you ask if we can represent you in a possible individual lawsuit. We regret that we cannot take further action at this time to directly address the concerns raised in that letter. Please refer to the Frequently Asked Questions (FAQ) handout that we previously sent you, since a wide range of mental health related topics are covered in that packet. Although we have corresponded with you in the past, you are receiving this letter because, under the *Coleman* lawsuit, we cannot directly assist with the specific issues you raised in your letters.

I have enclosed the documents you included with your letters, we have made a copy of them for our files. I have also enclosed a self-address stamped envelope for your convenience. I wish you the best of luck, and please take care.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Sofia Millham

SM:pj
Encl: ORIG

*   MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
**  OF COUNSEL
*** MEMBER OF THE CONNECTICUT AND NEW YORK BAR
**** MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

Estell Williams # H-95792

CALIFORNIA MEDICAL FACILITY

P.O. Box 2000

VACAville, CA. 95696-2000

Re: Department of corrections and Rehabilitations illegal conspiracy of Psychological Torture.

Attn: Counselor,

I Am A inmate, incarcerated within The Department of corrections And Rehabilitation. for The past 2 years I've Been The Target of A covert conspiracy, That is orchestrated By Senior Officers At C.D.C.R. HeadQuarters.

Senior officers At C.D.C.R. HeadQuarters, Have put A " Dress " On me. The Reason That I use The Term," Dress " is Because This is How other officers Described The psychological Torture That I Am Being Targeted for.

NOW, Let me explain To you what it means To put A ", Dress " On A inmate from my own personal Experience. It first Started when I was At R.J. Donovan correctional facility, Around April of 2004. Officers At R.J. Donovan Suddenly Start Spreading false Rumors About me, saying That I perform oral Sex on men. Officers would Then constantly sexually Harass me with Body Language And Hand Signals That simulate oral Sex. officers would Also Send other inmates To constantly sexually Harass me with Hand Signals And Body Language That simulate oral Sex. officers would Also intentionally Subject me To excessive Noise, To Keep me on Edge.

What I've Realized is That Someone is Directing The officers To constantly Administer All These Psychological Torture Teachniques On me, All The Time, During The coarse of the officers Shift. It Then Became clear To me That, The officers Goal was To constantly Keep me under pressure, By continuously Administering The Psychological Torture Teachniques On me, And simontaneously To Try, to Convince Everyone That Comes into Contact with me, That I perform oral Sex on men.

1

I Those through that SCR Document 1970-3 Filed 09/06/06 Page 35 of 61 that The officers were doing to me, They would eventually just stop. However, I soon realized how serious the situation was, when the officers did not stop, and The psychological torture continued with more intensity and frequency.

I soon became concerned about my safety, because officers were targeting me for, This psychological torture. I then attempted to address the issue, by writing a letter to the Chief Deputy Warden, and also filing 602 appeals forms pertaining to each individual incident, I also had witness's sign affidavits to substantiate The issue's That I was asserting in The 602 appeal form (see Ex."A")

Upon investigating my appeals, The officers would simply deny The issue in The 602 appeal. Also, The witness's That signed affidavits were intimidated to the point where they recant there statements, in which they previously signed under oath, At This point I grew frustrated because I could not receive any help, threw The 602 appeals process. In fact, during The 602 appeals process it appeared That senior officers, were looking for reasons to cover up and discredit my claim, rather then acknowledge The Truth in my claims.

At This point, while at R.J.D., The psychologically torture begun to overwhelm me. I Then attempted To seek help from The mental Health Department, because I was E.O.P. I Then Told my clinician Dr. Sexton, about the psychological torture, Dr. Sexton appeared To be concerned and was willing to help me. Dr. Sexton Then said, That first I should be single celled. He Then wrote a 128-B chrono. Recommending That I be single celled. It Should also be noted That Dr. Sexton was a newly acquired psychologist with The Mental Health Staff at R.J.D. I soon realized That Dr.Sexton had limited power to help me, and correctional officers would just disregard Dr.Sextons authority and continue To administer The psychological torture techniques on me, Then one day I was told That Dr. Sexton had resigned from working with C.D.C.R.

I was Then admitted into central infirmary at R.J.D., for crisis bed treatment. I advised The psychiatrist and psychologist That I was being Targeted for psychological torture, by correctional officers. During This conversation with mental Health staff,

2

I noticed that a second tier officer would be listening in, and then the officer would make comments to try to make it appear that the psychological torture, which I was complaining about, was a product of my previous diagnosed mental illness. I then noticed that the officer was relentless with this assertion, as if to try to convince or persuade the mental health doctor to adopt his theory.

During my entire stay in crisis bed at R.J.D., the officers would strategically listen in, on my conversations with mental health staff, and continually make comments to try to make it appear that the psychological torture was a product of my previous diagnosed mental illness. Soon, thereafter the mental health doctor said that all he can do is prescribe more psychotropic medication, and that he can't get involved in any issues that I have with correctional officers. I was then discharged from central infirmary and returned back to the general population, as it became clear to me that the officers were covering up the psychological torture.

Officers, then tried to assigned a inmate to my cell that would help them administer the psychological torture teachniques on me. I then refused a cellmate, and was placed in administrative segregation and given a C.D.C. 115, later the 115 was dismissed because of the previous 128-B that Dr. Sexton wrote.

Then in August of 2004, I was transferred to California Men's Colony State Prison as a E.O.P. Hub Ad-Seg overflow. At this point I was sure that the psychological torture would stop, because I was going to a new prison, where no one knew me, but I was wrong, the psychological torture followed me from R.J.D. to C.M.C. EAST. In fact it was worst at C.M.C. EAST then at R.J.D.

I was puzzled and wondered how could this psychological torture follow me from one prison to another. I then realized that officers at C.M.C. EAST was useing the same psychological torture teachniques on me, that the officers used at R.J.D.

I then concluded that someone is strategically advising the officers at thease two different prison to, administer the same psychological torture teachniques on me, and that person is orchestrating this conspiracy from C.D.C.R. Head Quarters,

Case 2:10-cv-00520-RWM-SORM Document 197 Filed 09/24/06 Page 37 of 61

Because of those fact, that there psycholog torture followed me from R.J.D. TO C.M.C. EAST. Again I attempted to seek help from the mental health staff, while at C.M.C East, around September of 2004 I was admitted into a wing, know as O.H.U. I then told the mental health doctors about the psychological torture that the officers were targeting me for. During my conversations with mental health staff, a Sgt. Forker was always present, Sgt. Forker would then assert to mental health doctors, that the psychological torture that I was complaining about, was a product of my previous diagnosed mental illness. I then realized that this is the same lie, that the officer at R.J.D. was asserting to mental health staff. It then became clear to me that this whole conspiracy was designed to target my mental state of mind, while at the same time useing my previously diagnosed mental illness to cover up the psychological torture that I complained about, by exaggerating the severity of my previously diagnosed mental illnes.

At this point while in O.H.U, at C.M.C. EAST, the mental health doctor said that he was going to send me on a special transfer to another institution, for crisis bed treatment, Around the end of September of 2004, I was transferred to CSP/LAC for crisis bed treatment. The psychological torture again followed me to CSP/LAC. But because officers had limited access to me in crisis bed, the main psychological torture teachniQue that they would use on me, was the noise tactic. They would walk by my door periodically and hit the door with there baton, to startle me and keep me on edge.

I then advised mental health doctors about the psychological torture, and how it followed me from prison to prison. But before the mental health doctor could respond, the correctional counselor intervened and said," Mental health doctors can not intervene or get involved in any issue's that I have with officers, all that the doctors can do is prescribe medications. I immeidately concluded that the correctional counselor was there to cover up the conspiracy to psychologically torture me. The mental health doctor then responded by saying that, all he can do is prescribe more psychotropic medication and discharge me.

4

Case 2:90-cv-00520-RJM-SCR Document 1078-? Filed 09/14/06 Page 38 of 61

. I WAS Then Discharged From crisis Bed And Sent BACK to C.M.C EAST, upon Arrival I WAS Re-Admitted into O.H.U. I Again Appeared in front of mental Health Staff, I Advised The Doctors That The psychological Torture followed me to CSP/LAC crisis Bed. I Then Added That, CAN you please Tell The officers to stop With The psychological torture. The Doctor Then Said That All He CAN Do is Send me on; Another Transfer TO A Different institution for more crisis Bed Treatment.

I WAS Then Transferred to SubStance ABuse Treatment facility, (SAT."F") And Admitted into There central infirmary for crisis Bed Treatment, Again The psychological Torture continued to follow me To SAT."F." I Appeared in front of mental Health Staff At SAT."F"; I Advised Them That officers were Continually Psychologically Torture me, And it WAS following me from PRison to Prison,

At SAT."F" There WAS A Mental Health Doctor, By The NAme of Dr. MALue, When This Doctor Heard my Story, He Appeared To want to Help me. Dr. MALue Said That He WAS going to Keep me At SAT."F" for observation, And so I could get some Rest. Then Later on When I Appeared infront of The MeNtAL Health Doctors At SAT."F" I Noticed That Dr. MALue WAS NOT present. I Then inQuired About Him, I WAS Told That He unexpectedly HAd TO TAke some Time off, At This point I Knew, This WAS PArt of The cover up, And Because This Doctor WAS willing to help me, The officers possibly Advised Him To TAke Some Time off. It Should Also Be Noted That While At SAT."F", I Asked The mental Health Doctors, if They Could Send me To Atascadero State Hospital. The Reason I WAS Seeking To go to Atascadero State Hospital, is Because I Knew That The Department of mental Health Controlled That program, And I figured That I could Tell The D.M.H. Doctors, About The psychological Torture, And C.D.C.R. Doctors Would NOT Be Around To manipulate or persuade, The Doctors That The psychological Torture WAS A product of my previous Diagnosed mental illness,

The Doctor At SAT."F" Then Said That They CAN NOT Send me To Atascadero State Hospital, Because SAT."F" WAS NOT given Enough Beds At, Atascadero.

5

. The Doctor at C.M.C.F. Then Said That I.A.O. Were Going To Discharge he ,And Send me BACK to C.M.C.EAST. I WAS Then Transferred BAck to C.M.C. EAST, The Psychological torture continued. I WAS AGAiN Admitted into O.H.U. I AGAiN Advised The Mental HeAlth Doctors, That The Psychological Torture is continuing to follow me. I Then Asked The mental Health Doctors At C.M.C.EAST, if They could Send me TO AtASCADero State Hospital To Receive mental Health Treatment.

Dr.KAte Said That She will Send me To A Department of MENTAL Health Program ,Located At CALiforNiA medical fAcility. I WAS Then Transferred To CALiforNiA medical facility, And Admitted into The Department of mental HeAlth Acute PsychiAtric program. I AGAiN Appeared in front of Mental HeAlth StAff, And informed Them That C.D.C.R, officers were psychologically Torturing me ,And The Tortur would follow me from prison to prison. The D.M.H. DoctoR SAid That He Would Help me ,By Keeping me into The Program SO I could get Some Rest.

while At C.M.F. ,ADmitted into The D.M.H. Program ,I NoTiced That RARely Appeared in The Houseing wing That I WAS in. I WAS optimistic That The psychological Torture would StOP, BecAuse of The Limited PResence of correctional officers. However, The C.D.C.R, STAFF That WAS Assigned To The wing ,were medicAl TeAchniciAl ASSiSTANTS ,(M.T.A.'S). The M.T.A.'S Then coNTinued The psychological Torture ,By useing The SAme PsychologicAl TorTure TeAchniques ,That The officers At R.J.D., C.M.C.EAST, C.S.P/LAC, And SAT.F" used on me. At This Point I WAS coNvinced That This CONSPIRACY WAS iN FACT, orchestrated by Senior officers AT C.D.C.R, HeAdQuarters, BecAuse The SAme psychologicAl TorTure TeAchniQues WAS Being used on me At 5 Different INSTiTuTioNS ,which DemonSTrATes A PAtterN.

After, A PeRiod of Time At C.M.F., ,Admitted into The D.M.H. Program, I RealiZed That I could NOT get AwAy from The psychological TorTure. I WAS Then DischaRged And RetuRned BAck TO C.M.C.EAST. Upon ArrivAl At C.M.C.EAST, The PSychologicAl TorTure continued. I Then BecAme confused ,And Did NOT KNOW who I could Seek Help from. my clinician At C.M.C.EAST WAS Dr. RobiNSON.

6

EAST, WAS BETWEEN SEPTEMBER 2004 THREW DECEMBER OF 2004.

I WAS THEN RELEASED TO THE GENERAL POPULATION AT C.M.C. EAST. SOON THEREAFTER, I WAS PLACED IN ADMINISTRATIVE SEGREGATION FOR A MUTUAL COMBAT. WHILE IN AD-SEG I TOLD THE I.C.C. COMITTEE THAT THE INMATE THAT I HAD A MUTUAL COMBAT WITH, SHOULD BE CONSIDERED MY ENEMY, AND THAT I SHOULD BE TRANSFERRED. THE COMMITTE THEN DESIGNATED FOR ME TO BE TRANSFERRED BACK TO C.M.F., FOR PERMANENT HOUSING. WHILE IN AD-SEG AT C.M.C. EAST, MY CLINICIAN WAS DR. HOOALE, I TOLD HER ABOUT THE PSYCHOLOGICAL TORTURE.

IT SHOULD ALSO, BE NOTED THAT BECAUSE I WAS AT CM.C. EAST FOR A SUBSTANTIAL PERIOD OF TIME, VIRTUALLY ALL OFFICERS, STAFF AND INMATES BECAME AWARE OF THE FACT THAT OFFICERS WERE PSYCHOLOGICALLY TORTURING ME. I THEN ACQUIRED A SUBSTANTIAL NUMBER OF NAMES OF WITNESS'S THAT HAVE KNOWLEDGE OF THE FACT THAT OFFICERS, WERE PSYCHOLOGICALLY TORTURING ME, AND SUCH KNOWLEDGE WOULD CORROBORATE MY VERSION OF THIS CONSPIRACY. HOWEVER, I WOULD LIKE TO EMPHASIZE THAT ALL INVESTIGATIONS PERTAINING TO THIS PSYCHOLOGICAL TORTURE, THAT HAVE BEEN CONDUCTED BY C.D.C.R., WILL BE AND HAVE BEEN COVERED UP BY ASSERTING THAT THE PSYCHOLOGICAL TORTURE THAT, I COMPLAIN ABOUT IS A PRODUCT OF MY PREVIOUS DIAGNOSED MENTAL ILLNESS, BY EXAGGERATING THE SEVERITY OF MY PREVIOUS DIAGNOSED MENTAL ILLNESS. CORRECTIONAL OFFICERS HAVE BEEN CONTINUOUSLY INTIMIDATING MENTAL HEALTH STAFF, TO THE POINT WHERE MENTAL HEALTH STAFF WOULD IGNORE THE PSYCHOLOGICAL TORTURE, THAT I'M BEING TARGETED FOR.

I WAS THEN TRANSFERRED BACK TO C.M.F. FOR PERMANENT HOUSEING, ON 9-1-05. UPON ARRIVAL AT C.M.F. THE PSYCHOLOGICAL TORTURE CONTINUED. AT THIS POINT, I GAVE UP ON SEEKING HELP FROM THE MENTAL HEALTH DEPARTMENT, AND THOUGHT THAT IF I JUST BE QUIET THE OFFICERS WOULD JUST LEAVE ME ALONE, EVENTUALLY. I ALSO JUST CONTINUED TO DOCUMENT POTENTIAL WITNESS'S NAMES, AT C.M.F.

I WOULD ALSO LIKE TO MENTION THAT, DURING THIS TIME FRAME IN WHICH THE OFFICERS HAVE BEEN TARGETING ME FOR PSYCHOLOGICAL TORTURE, I MYSTERIOUSLY BECAME MEDICALLY ILL ON TWO SEPERATE OCCAISIONS, ONCE WHEN I WAS IN AD-SEG AT C.M.C. EAST IN MARCH OF 2005, AND ALSO WHILE I WAS IN THE GENERAL POPULATION HERE AT C.M.F. IN DECEMBER OF 2005.

Case 2:90-cv-00520-KJM-SCR   Document 1970   Filed 09/04/06   Page 41 of 61

. The Second Time, I got sick, is what File caused me to become suspicions, Because in October of 2005 I was given a physical examination by a Doctor here at C.M.f.. The Doctor Then Reviewed all of my medical Test, And Told me That I was in good Health. Then all of a Sudden in December of 2005 I suddenly and mysteriously became extreamly ill. I was sent To The Emergency Room here at C.M.f. on 4 seperate occaisions, over a four day period. On the last occasion I was sent To The Emergency Room, The Doctor Determined That I should be sent To Vacavally Hospital Emergency Room, which is outside of C.M.f.. I was Then rushed to Vacavalley Hospital by Ambulance, I had a Temperature of Around 100.3 And my blood pressure was 90/70 And Dropping.

I was extreamly ill, And while I was Laying in The bed in The Emergency Room, A officer was assigned to watch me. This officer continued to administer The psychological Torture Teachniques on me, At The outside Hospital. At This point I Thought To myself That This whole conspiracy to psychologically Torture, could be The cause of me getting suddenly and mysteriously Sick. I Then Thought That The officers probably poisoned me.

C/O J. Guidi Then said to me, "williams I don't want to Stay at The Hospital with you on Xmas Eve, So I'm going to Tell The Doctor To Discharge you And Send you back to C.M.f.. Soon Thereafter, The Doctor at Vacavalley, Told me That He is going to Discharge me and Send me back to C.M.f..

It should also be noted That prior to me, being Taken to Vacavally Hospital, It was pre-arranged for me To be admitted into Vacavally Hospital, Threw The Emergency Room. (See Ex." B")

Because %J. Guidi Request, I was Taken back To C.M.f. upon Arrival, The Doctor at C.M.f. Asked me, why am I Back, you were supposed To be admitted into Vacavalley Hospital. I Then advised The Doctor That %J.Guidi advised me That Because it was Xmas Eve, He did not want To be at The Hospital with me, And As A Result He was advising The Doctor at Vacavalley Hospital To Discharge me. At This point The Doctor at C.M.f. advised The watch commander That I needed To go back To Vacavally Hospital,

, I was then Transported Back to Vacavally by 2 Different Escorting Officers. At This Point I was Admitted into the Hospital. (See Ex. "C")

The Doctors At Vacavally Hospital was Very Concerned To & Find out what was causeing my illness, And As A Result They Ran Numerous Test on me. Later on The Doctors Diagnosed me As Having Contracted A Very Rare Bacteria Infection That caused A, Abcess To form on my Liver. The Doctor Then informed me That This Bacteria infection was So Rare, That A Person Would Have, Had To Traveled outside of The Country To Contract This Type of Bacteria infection. The Doctor Then Asked me, Did I Travel outside of The Country Recently. I Then Responded By saying, No I've Been incarcerated for The Past 8 years. At This Point The officer That was Present, gave The Doctor A intimidating Stare, And The conversation Ended. The name of The Bacteria infection which I mysteriously contracted, Here At C.M.F., was fusoBacterian Vacium. I Stayed At Vacavally Hospital Receiving Treatment, from 12-25-05 to 1-3-06. my Doctors At Vacavally Hospital were, Dr. Devinney The Emergency Room Doctor who Discharged me on 12-24-05. Later After I was Admitted into The Hospital, my Treating Physicians were, Dr. Johnson, Dr. Dassah, Dr. Meogi, Dr. Taylor And Dr. Pacham.

I was Discharged on 1-3-06 And Sent Back To C.M.F., upon my Arrival At C.M.F., I was Readmitted into The Prison Hospital To continue Treatment. The psychological Torture continued Even while I was in The Hospital. I was Discharged from The Prison Hospital on 1-18-06, And Released Back To The General Population.

As I Think Back, on The Coarse of Events, And The fact That Officers Are Targeting me for Psychological Torture, I'm inclined To Believe That whoever The Senior officer is At C.D.C.R. Headquarters That is orchestrating This conspiracy, That person is cause for me Contracting That Rare Bacteria infection. At This Point I'm fearful of my Life, I Think one Day officers will Murder me, And Cover it up with false Documents. I sincerely Think That A investigation will Reveal That C.D.C.R. Officers Are conspiring Against me, By Targeting me for psychological Torture, That Has Taken Place over 2 years, And occurred At 5 Different institutions, As such This Means That I Am Not safe, no where within C.D.C.R.

9

. CAN You Please Help me Conduct A Investigation To Uncover this conspiracy. This conspiracy HAS Been Taken place for Too Long, officers Are Blantly Targeting me.

Also, I Am classified AS E.O.P. , I've Been incarcerated for 6 years now. I previously corresponded with RoSen, Bien And ASATO when I WAS At CSP/LAC in, 2000 And 2001. I'm Aware of Your work you Do for mental Health inmates, AS such I Know How VALUABLE your Time is, And I wouldn't DAre waste your Time for A Situation That Does NOT WArrant your intervention. However, I Think ~~that~~ This Conspiracy That I'm Being Targeted for, Does WArrants Your intervention. I Am Being Discriminated And conspired AgAinst, Due To my mental Handicap, for psychological Torture.

I Also , give my Consent for you To Share This information with The coleman special master, And The office of The inspector General.

CAN You Please Help me, I Don't Know What Else To Do, . . . Thank you Very much for your Time, AS I Await for your Response.

"Respectfully Submitted"

Date: 6-9-06

Eric Williams

10

ERIC WILLIAMS #H-98792
Case 2:90-cv-00520-KJM-SCR 1-5dument 1970    Filed 09/14/06    Page 44 of 61
480 alta road
San diego,california 92179

ə: Conspiracy.

ttn:·

   I'm writing you this letter to bring to your attention,a situation That i think should be
onitered. I'm Housed on facility "1". I've been at this institution since august of 2003.
've been on facility "1" About 6 months. I was just recently discharged from the Enhancd out-
atient program.
   The situation that i want to bring to your attention,Is there appear to be some type of
onspiracy against me On facility "1". From correctional staff.
   The staff that I think are Involved are,Captain sandlin,Lt.Steel,Lt.Zinzer,Sgt.kuladrovic
gt.Mitchell,C/O Dominguez,C/O Releas, and C/O Larson. There are other officers in-
olved,however I'm still in the process of discovering there names.
   This is the situation,Whenever i Go to the yard,thease named officers,Watch's me extensively
id whisper amongst each other. My program consist of going to the yard and exerciseing,and
ien sitting on a bench.
   I Know what you are thinking,this Inmate is paranoid and crazy. to the contrary,that is
ot the case. I Would Not waste your time and Mines by writing this letter.
   Since I've been on facility "1",I've seen situations where Sgt.Walls and Sgt.Kulodrovic
long with correctional officers,attack inmates,And the inmates End up in Adminstrative
egregation, With rule violations report For assault On staff. I do not want to be In that Kind
E situation,i would never attack:staff,Nor would I threaten any bodily Injury to staff.
   I'm Writing this letter because this is the only way,That i can defend myself,When it comes
wn to A inmates word,against Staff.
   Although I've named supervisor staff ,.I do Not think that they will be directly Involved In
Ny Incident. The scenerio that i perceive is that, Supervisor staff will Instruct corretional
fficers to engage or provoke some sort of confrontation,And the supervisor staff will back up the
fficers on paper work.
   Once again i emPhasize that i am not paranoid,This is A reality. I Only ask that you Look
ito this situation and come and talk to me. If this situation goes Uninvestigated i will be forced
} forward this letter to the Warden,The director of correction,and the Inspectors generals
fice. Soon thereafter i will declare a Hunger strike.
   Also,It should be Noted that i've been disciplinary free since 1999,To the best of my knowledge
Have No desire to violate any C.D.C. rules,and I never posess contraband. I Only hope that thease
mspiring C,D.C. Officers do not intend to Plant contraband On me or in my cell.
   Thank you very Much for your time............It is greatly appreciated,as i await your
sponse.

Dated:
4-15-04

"RESPECTFULLY SUBMITTED"

ERIC WILLIAMS #H-98792

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF CORRECTIONS**
**RICHARD J. DONOVAN CORRECTIONAL FACILITY**
**480 Alta Road**
**San Diego, CA 92179**



April 23, 2004

Mr. Eric Williams
H-98792
F1-05-146U

Dear Mr. Williams:

This is in response to your letter received April 19, 2004, regarding your issues of inappropriate staff conduct.

Mr. Williams, our primary mission is to provide public safety through the safe and humane incarceration of convicted felons. This is a responsibility that is taken very seriously. Therefore, any time someone in our custody makes an allegation of improper behavior by an employee of the Department of Corrections, it is taken very seriously and given due consideration. The protection of the rights of the individual is the binding tie that holds the fabric of our society together, and the rights of all parties involved in this matter must be preserved. Therefore, before we will be able to proceed with any action in this matter, I must inform you that you must adhere to the proper administrative remedy guidelines. Those guidelines are established in the Inmate/Parolee Appeals process. All of the necessary information that you will need to process your complaint may be found in the California Code of Regulations, Title 15, Section 3084.1.

I appreciate your correspondence regarding this issue. If you feel that you have been treated in an inappropriate manner, I welcome your participation in the system that has been established to address these matters. Once we have received your appeal form, we will process it in a timely and proper manner.

If you have any further questions, please contact the Facility 1 Correctional Lieutenant, via institutional mail.

Sincerely,

D. M. BARNES
Chief Deputy Warden (A)

I declare under the penalty of perjury that the foregoing is true and correct.

1) On 6-14-04 I observed I/M Williams /H-98792 walk Up to C/O Wilson and ask Him for A cell search receipt.

2) At this Point for no reason at all C/O Wilson begun useing profanity and obscene language at I/M Williams, I/M Williams then responded by saying F*You and Walked away.

3) C/O Wilson then responded by balling up his fist and saying to I/M williams we can go right here. C/O wilson then begun useing profanity somemore. when C/O wilson seen that I/M Williams was not going to engage him in A Physical Altercation, C/O Wilson then said to I/M Williams ,I thought so,You homosexual.

EXECUTED THIS  15th day of june,2004.

Demetrie Ausler

D.Ausler /J86468

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. _____

2. _____

Log No.

1. _____

2. _____

Category

_____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| WILLIAMS | H-98792 | UNASSIGNED | 1-5-146 up |

A. Describe Problem: On 4-15-04,i was makeing an attempt to go to the law library.

I asked an inmate to ask C/o yang, if he could let me out to go to the law Li-

Brary. C/O yang just looked at my cell and smiled. I Then just stood at my

Door and attempted to wait patiently. I then sent another inmate to C/O yang

However, Again yang just looked at my door and smiled. while standing at the

Door about 10 minutes past, C/O yang then opened my door. At this point I

Wanted to inquire, why was c/o yang delaying my access to the law library. I

Then walked over to C/o yang and asked him what the hell (see attached page0.

If you need more space, attach one additional sheet.

B. Action Requested: I would like for C/O yang to formally apologize to me and
admit, in front of the inmates in which he made this false accusation that

The comment was in fact false. Also, C/O yang needs to be advised thart thease

comments and behaivor are not compatiable with the department of corrections.

Inmate/Parolee Signature: D.C. Williams                                    Date Submitted: 4.19.04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____                                    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____                                    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☒ Other _Withdrawn_

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _4/23/04_    Due Date: _5/14/04_

Interviewed by: _ON 5-4-04, I INMATE WILLIAMS WAS INVOLVED WITH A INTERVIEW WITH Sgt. Mitchell, AND C/o YONG, Regarding The 602, The Agreement That We HAVE Reached, WAS FOR ME TO Withdrawel This Appeal, This IS my INDEPENDENT DECISION, MADE ON my FREE WILL._

_Craig Williams #H98792_

Staff Signature: _____    Title: _____    Date Completed: _____
Division Head Approved: _____                              Returned _____
Signature: _____    Title: _____    Date to Inmate: _4/14/04_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____
_____
_____
_____

Signature: _____    Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____    Due Date: _____
☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____
_____
_____
_____
_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter
                                                    Date: _____
CDC 602 (12/87)

**ADDITION TO PROBLEM DESCRIPTION:**

Is going on. I then advised yang that if you continue to delay my access to the law library,I"m going to write you up.

As i attempted to walk threw the sally port,C/O Yang made a Homosexual Comment to me. Yang's exact words were,"Why are you mad,You go in there and suck A dik,you should be happy.' At this point I Immediately turn.d around and walke Tow. ./

Up to yang, And asked him what did you say. C/O yang did not repeat the derogatory comment,In-

Stead he responded by saying,what are you talking about. It should be noted that Ther were

several inmates standing around and heard yang make the derogatory comment.(see EX."A"Affidavits)

It appears that C/O Yang is attempting to paint a negative picture of me by makeing falsd cusations,In A attempt to put a homosexual label or Jacket On me. This type of behaivor and comnts by a C.D.C. officer cannot be tolerated,and needs to be addressed aggressively.

C/O yang's actions clearly violates C.D.C. rule In the title 15,Subchapter 5,article 2 ction 3391 (a),which says,"Employee's will be alert and courteous with there dealings with mates.......Employees Shall not use indecent,abusive,profane or other wise Improper language ile on duty."

C/O Yang's actions also violates C.D.C. Rule in the title 15,Chapter 1,article 1,3004(b) ich says,"Employee's will not openly display disrespect or contempt for others,In A manner in-nded to,or reasonably likely to Disrupt orderly operations,Or Incite or provoke violence.

C/O Yangs actions are also,Inconsistent and incompatiable with california department of rrections. which also,violates C.D.C. rule in the title 15,Subchapter 5,article 2,sec.3413(a)(A)(2 ich says,"No employee with the department of corrections will engage In any other employment or tivity,Inconsistent or incompatiable with the department of correction.......Conduct deemed to 11 within suchcatorgories include,but is not limited to,The following,ConTains defematry,In-ntionally false,Intentionally inaccirate,abusive,Obscene,pornographic,Profane,sexuallyorientated harassing"

AFFIDAVIT OF, QuiNONES William

I, QuiÑONES William E-59474 ,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.

1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
Going to write your bi**** a** up. I then heard C/O Yang respond by saying,"You Go In
There,You suck A D****,you should be happy,Why are you mad." I/M Williams then Walked Up to
C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
Accusation.

INTerview 0856
I DID Not witness/hear that the officer state any thing Derogatory

F1-S-150.

EXECUTED THIS 16TH DAY of april,2004

Quinones William E-59474

AFFIDAVIT OF, _Michael Brown_

I, _Michael Brown_ ,Declare under the penalty of perjury
That the foregoing is true and correct. I am Over the age Of 18,and I'm comopetent totestify.

1) On 4-15-04 I observed i/M williams Engage in a verbal confrontation with C/O Yang. I Heard
   I/M Williams tell C/O yang,That if you keep delaying my access to the law library,I'm
   Going to write your bitch ass up. I then heard C/O Yang respond by saying,"You Go  In
   There,You suck A' Dick,you should be happy,Why are you mad." I/M Williams then Walked Up to
   C/O Yang and sked him what did you say. C/O Yang did not repeat this False Derogatory
   Accusation.

$F + 5 - 146L$

Interrogatori 850

EXECUTED THIS 16TH DAY of april,2004

_Michael Brown_  C-49693

STATE OF CALIFORNIA

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. KVI | 1. 04-770 | 44 |
| 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILLIAMS | H-98792 | Unassigned | 2 - 240 |

A. Describe Problem: On 5-25-04 at around 2:15 P.M. I was sitting in front of building 1, Playing Chess with another inmate. At this point C/O Goodbar walked up and stood next to us. C/O Goodbar then put One leg On the bench. I then asked C/O Goodbar, can he move back. He is too Close. C/O Goodbar responded by saying "F" You you homosexual. At this time I was shocked at This false derogatory statement that C/O Goodbar made. I then replied, "F" You. C/O Goodbar Made this statement in front of I/M Jacobs #K-56280. (see attachment "1") C/O Goodbar actions are a direct violation of C.D.C. rules in the title 15, Subchapter 5, article 2 section 3391 (a). Which says, Employees shall be alert, (see attached page)

If you need more space, attach one additional sheet.

B. Action Requested: C/O Goodbar should be administratively reprimanded, Because by putting this fals Information Out in the genral population, He is creating a situation that could have a Adverse effect upon me. C/O Goodbar also, needs to seek more training to ensure that he does Not make this type of mistake again. Also his supervision of inmates should be restricted.

Inmate/Parolee Signature: _____  Date Submitted: 5-25-04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____   Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed   CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

**First Level**    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved: _____ Returned

Signature: _____ Date: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____ Date Submitted: _____

**Second Level**    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other  6/14/01

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: 7/27/04

☒ See Attached Letter

Signature: _B. EARLY, AW_                                    Date Completed: 6/23/04

Warden/Superintendent Signature: _D. M. BARNES, CDW (A)_    Date Returned to Inmate: 6-28-04

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

## ADDITION TO PROBLEM DESCRIPTION:

and courteous with there dealings with inmates............Employees shall not use indecent busive,profane or other wise Improper language while on duty."

C/O Goodbar actions also violates C.D.C. rule in the title 15,Chapter 1,articlel,sectin 004(b)Which says,"employees will not openly display disrespect or contempt for others in a man- er intended to or reasonably likely to disrupt oderly operations ,or to incite or provoke iolence.

C/O Goodbar actions are Inconsistent with the california department of corrections. it appear hat C/O Goodbar made this false statement in front of inmates to paint a False Picture of me as eing a homosexual. This Is false and C/O Goodbar Knows this is false. But for some reason,He ant the genral population to label me as A Homosexual. This is a direct violation of california lepartment of corrections rules in the title 15,subchapter 5,article 2,section 3413,(a)which ays,"No employee with the depaRTMENT OF CORRECTIONS will engage in any other employment or activities Inconsistent or incompatiable with the department of corrections.........conduct leemed to fall within such catogories include but is not limited to the followinf,contains efamatory intentionally false,Intentionally inaccirate,abusive,profane,sexually orientated r harassing.

Also it should be noted that I sent a letter to the chief deputy warden,Adviseing er of the strange activity that staff on facility 1, was directing towards me( See attachment 2)

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

1) On 5-25-04 I was sitting on a bench In front of buildind 2,on facility 1, watching I/M
Williams play chess with another inmate. At this Point C/O Goodbar walked Up and
Watched the game. C/O Goodbar then attempted to put One leg on the bench And Move closer
At this point, I/M Williams advise C/O Goodbar that he was to close,can he Please Move
back, C/O Goodbar then responded by sayinf "F" you,you homosexual. I/M Williams #H-98792
Then responded by saying f" You . At this Point C/o Goodbar started useing Numerous
abusive words towards I/M williams #h_98792.

EXECUTEC THIS @¢   26 day of may,2004

JACOBS #K-56280

**Date:**          June 16, 2004

**NAME:**          WILLIAMS, E.

**CDC#**           H-98792

**APPEAL #:**      04-770          **SECOND LEVEL OF REVIEW**

**APPEAL DECISION:**    DENIED

**APPEAL ISSUE:**    You are alleging that on May 25, 2004, while playing chess in front of Housing Unit 1, Correctional Officer (C/O) Goodbar placed his foot on the bench you were sitting on. You state that you asked C/O Goodbar if he could move back because he was too close and that he responded by saying, "F... you, you homosexual." You are requesting that C/O Goodbar be reprimanded, be trained, and be restricted from supervising Inmates.

**APPEAL RESPONSE:**    In reaching a decision on this issue, a thorough review of your appeal has been conducted. The attached supporting documents, applicable sections of the California Code of Regulations, Title 15, the Department Operations Manual, and your Central File have been reviewed. Additionally, on June 16, 2004, Correctional Lieutenant G. Hernandez interviewed you regarding your appeal issues.

During your interview, you did not have any other pertinent information to add in regard to your appeal. Additionally, on June 16, 2004, Lieutenant Hernandez interviewed your witness, Inmate JACOBS, K-56280, who stated the exchange of words that occurred between C/O Goodbar and yourself took place in front of Housing Unit 2.

In reviewing your appeal and attached documentation, it was noted that there were discrepancies between your statements and your witness' written/verbal statements. These discrepancies have taken credibility away from your allegations and your witness' statements. You have not submitted sufficient evidence to support your allegations against C/O Goodbar. Your allegations are unfounded and without merit.

Based on the aforementioned, your CDC-602 Appeal is **DENIED** at the Second Level of Review.

D.M. BARNES
Chief Deputy Warden (A)

| DATE | TIME | NOTES |
|---|---|---|

3/24/05 9:00 pm. Pt was afebrile on
- was seen at 10:25 - has no complaint
• pt came to ER again with
complaints of chills and feeling
febrile.
- pt now complains of RUO pain,
saying has been there for last 3 days,
on & off fever & chills.
• pt denied vomiting / abd pain /
diarrhea.
- pt denied urinary complaints.
• pt denied cough / CP.

V/S - BP - 87/59    PR - 113/m    T° - 103.9°F
mouth - & sores /         eye - & jaundice
chest - clear to auscultation
cvs - RRR s ^s₂ head, no (m)
abd - RUQ. tenderness.
& guarding. & palp. organ

Ext. no edema.

lab   3/22/05: WBC - 8.9   N 77%  50%
3/23/05  WBC 16.1   S-74%  Band 10%
3/24/05  WBC - 20.6  S- 61%  Band 31%

A > R/o acute cholecystitis

plan - 0.9 NS% 500 cc bolus then 100cc/hr
- Ancef 2 gm IV Q24 hr.

→ Zofran 650 g BID PR for
fever.

To be admitted to DOM.
VVH -

Report given to ER
physician             Hall.
Dr. Devinney

CDC 7403 (04/03) EMERGENCY CARE FLOW SHEET          Page 2

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Williams, Eric

H 98792.

3/30/1970.

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** Williams, Gri   CDC #: H98792   Housing: M313U.
Diagnosis: R/o acute cholecystitis   Date: 12/24/0   Time: 5:30.

**REASON FOR TRANSFER:**

☐ No available hospital beds    ☒ Case requires specialist care

☐ No monitors/other equipment    ☐ Established transfer criteria

☐ Other: _____

**CONTACTS:**

☒ HOSPITAL to which pt going  VVH.    ☐ Direct admit  ☒ Through the ER

☒ DOCTOR accepting pt  Dr. Devinny    Time: 5:37

☒ ER DOCTOR if going via ER  Dr Devinny    Time: 5:37

☐ CMO/MOD for CMF approval _____    Time: _____

☐ WATCH COMMANDER custody _____    Time: _____

☐ AMBULANCE Watch Com. calls _____    Time: _____

☐ PERSON sent to amb. door _____    Time: _____

**TRANSFER CODES**

☐ 1  Routine (i.e., cat scan)    **Examples of Code 3 Emergencies:**
☒ 2  Urgent (i.e., stabalized MI)    Closed head bleeds
☐ 3  Emergency (Red light/siren)    Stab wound with internal bleeding
                                      Dissecting aneurysm
                                      MD determined as life threatening

**MEDICAL CONSIDERATIONS**

☐ Patient stabalized for transport    ☐ ECG    ☐ Cardiac Monitor
☐ Oxygen _____ l/min    ☐ Nasal cannula    ☐ Mask    ☐ ET tube
☒ IV D-g NS.    Total given prior to current IV hanging: _____
☐ Cath    ☐ NG tube    ☐ C-collar    ☐ Splinting    ☐ Back brd

**PAPERWORK DONE**

☒ Copies sent:  ☒ Labs    ☐ ECG    ☐ X-rays    ☒ Chart essentials

☒ Copy of summary Progress Note by ER-MD sent to receiving MD

☐ CMO/Custody Approval form completed & signed

☐ UC Davis form if going there    ☐ Copy of this form with records

**SIGNATURE**

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_____
Physician                Date

GDT-3-21-91

# PATIENT TRANSFER CHECK LIST

**PATIENT NAME:** Williams, Eric   **CDC #:** H98792 **Housing:** M313

**Diagnosis:** R/O fx / fever / humpster **Date:** 12.25.05 **Time:** _____

**REASON FOR TRANSFER:** CT R/O man.-not clearly identified

☐ No available hospital beds    ☑ Case requires specialist care

☐ No monitors/other equipment    ☐ Established transfer criteria

☐ Other: _____

## CONTACTS:

       ☑ HOSPITAL to which pt going _Vacavalley_    ☐ Direct admit   ☑ Through the ER

☑ DOCTOR accepting pt   Dr POPE    **Time:** 3:50

☑ ER DOCTOR if going via ER   Dr POPE    **Time:** 3:10 p.

☐ CMO/MOD for CMF approval _____    **Time:** _____

☐ WATCH COMMANDER custody _____    **Time:** _____

☐ AMBULANCE Watch Com. calls _____    **Time:** _____

☐ PERSON sent to amb. door _____    **Time:** _____

## TRANSFER CODES

     ☐ 1   Routine (i.e., cat scan)

State ca—  ☑ 2   Urgent (i.e., stabilized MI)

     ☐ 3   Emergency (Red light/siren)

**Examples of Code 3 Emergencies:**
Closed head bleeds
Stab wound with internal bleeding
Dissecting aneurysm
MD determined as life threatening

## MEDICAL CONSIDERATIONS

☐ Patient stabalized for transport   ☐ ECG   ☐ Cardiac Monitor

☐ Oxygen _____ l/min   ☐ Nasal cannula   ☐ Mask   ☐ ET tube

☐ IV _____    Total given prior to current IV hanging: _____

☐ Cath   ☐ NG tube   ☐ C-collar   ☐ Splinting   ☐ Back brd

## PAPERWORK DONE

☐ Copies sent: ☐ Labs ☐ ECG ☐ X-rays ☐ Chart essentials

☐ Copy of summary Progress Note by ER-MD sent to receiving MD

☐ CMO/Custody Approval form completed & signed

☐ UC Davis form if going there   ☐ Copy of this form with records

## SIGNATURE

I have reviewed this patient, and certify the patient ready for an appropriate transfer.

_Rule_      12/25/05

_____    _____
Physician        Date

GDT-3-21-91

Ex. "O"

# Witness List

1) Dr. Morris - Psychologist - At California Medical Facility
2) Dr. Tucci - Psychologist - At California Medical Facility
3) Dr. Lawrence - Psychologist - At California Medical Facility
4) Dr. Gregg - Psychologist - At California Medical Facility
5) Dr. Robinson - Psychologist - At California Men's Colony State Prison
6) Dr. Hodale - Psychologist - At California Men's Colony State Prison
7) Dr. Switze - Psychologist - At California Men's Colony State Prison
8) Dr. Malue - Psychologist - At R.J. Donovan Correctional Facility
9) Dr. Sexton - Psychologist - At R.J. Donovan Correctional Facility
10) Dr. Windweg - Psychologist - At California Men's Colony State Prison.
11) Dr. Kate - Psychologist - At California Men's Colony State Prison.