# Exhibit A

# J. Michael Keating, Jr.
## Office of the Special Master
*Coleman v. Schwarzenegger*

2351 Sussex Drive
Fernandina Beach, FL 32034
(904) 491-7157
Fax: (904) 491-7158
E-mail: jmichaelkeatingjr@yahoo.com

VIA E-MAIL AND U.S. MAIL

November 1, 2006

Bruce M. Slavin, General Counsel
Office of Legal Affairs
Office of the Secretary
P.O. Box 942883
Sacramento, CA 94283

Judi Lemos, Esq.
Staff Counsel, Legal Affairs Division
California Department of Corrections
P.O. Box 942883
Sacramento, CA 94283

Re: Coleman et al. v. Schwarzenegger et al.,
No. CIV S-90-0520 LKK JFM P

Counselors:

My experts and I have received and reviewed the documentation on the screening process the defendants propose to use in screening inmates who have volunteered to be moved to prison facilities in other states to relieve overcrowding in CDCR. I also received Bruce Slavin's October 12, 2006 letter on the then still developing transfer plans.

Both of these documents indicated that CDCR intended to exclude from transfer anyone included in the Mental Health Services Delivery System, at least during the first phase of the transfers. Mr. Slavin's letter indicated, however, that, as the process evolved, the defendants would be willing to work with my experts to develop screening criteria for caseload inmates who might be able to transfer safely and receive appropriate treatment in another state.

Plaintiffs' counsel, meanwhile, express their legitimate concern that the exclusion of MHSDS inmates from the projected transfers will violate the Americans with Disabilities

Counselors
November 1, 2006
Page 2

Act of 1990, a concern that echoes issues raised in the recently filed Hecker suit, which seeks, among other remedies, the reversal of current CDCR policies excluding MHSDS inmates from some CDCR programs and housing based on their inclusion in the mental health caseload. That case is currently pending before Judge Karlton.

The imminent transfer of CDCR inmates to privately operated prisons in Arizona, Oklahoma and Indiana, which I understand is projected to begin in early November, precludes any meaningful opportunity to assess the standards, resources and capabilities for the provision of mental health care of the institutions earmarked to receive the first transferees. Moreover, the defendants have not yet provided for review the draft version(s) of contracts spelling out the terms of CDCR's engagement with the private providers, particularly any provisions related to the evaluation and handling of CDCR inmates transferred to contracted prisons, who subsequently develop serious mental disorders.

Meanwhile, my experts' critique of the screening process focused largely on whether, and which, former participants in the MHSDS might be considered for transfer. The experts unanimously agreed that transfers of former MHSDS inmates should be based on a case-by-case evaluation conducted by a mental health clinician that involves both a thorough record review and a personal interview. An inmate's suicidal history was viewed as a critical component of any such evaluation; recent and/or serious attempted suicides ought to preclude transfer. Incidental suicidal ideation or minor gestures committed long ago would not necessarily constitute a bar. Generally, only former 3CMS inmates should be considered for transfer; there should be a presumption against the transfer of former participants in EOP, PSU, MHCB and inpatient DMH programs. Inmates from such programs with a diagnosis of a severe and persistent mental illness, with any of the Axis I disorders enumerated in the Program Guide list or a prior Keyhea order, should not be considered for transfer in the absence of overwhelming countervailing clinical evidence. Finally, any decision to transfer ultimately depends on the adequacy of mental health services at the receiving institution.

The screening process described in the draft document pays too little attention to mental health screening, presumably on the presumption that inmates on the MHSDS caseload will not be transferred during this Phase I placement process. Once a screening is conducted, including both a UHR review and a face-to-face assessment by the R&R RN, anyone determined to raise mental health issues should be referred for a face-to-face evaluation by a mental health clinician (psychiatrist, psychologist or a psychological social worker) rather than, or in addition to, the PCP.

Counselors
November 1, 2006
Page 3

My experts and I remain ready to cooperate with the defendants in the development of criteria for the possible transfer of MHSDS caseload inmates out of state as the program unfolds. An additional concern is how best to determine the actual state of mental health services in the institutions designated for the receipt of CDCR inmates. In the meantime, I would appreciate the prompt provision of draft or final contracts regulating relations with the institutional vendors who will be receiving CDCR inmates.

Sincerely yours,

/s/ J. Michael Keating, Jr.
<u>Coleman</u> Special Master

cc.   Matthew A. Lopes, Esq.
      Michael Bien, Esq.
      Donald Specter, Esq.
      Lisa Tillman, Esq.
      Michael Stone, Esq.
      Peter Farber-Szekrenyi, DR., P.H., Director, Division of Correctional Health Care
         Services
      Doug McKeever, Program Director, Mental Health Services, DCHCS
      Robert Sillen, <u>Plata</u> Receiver
      John Hagar, Chief of Staff to the <u>Plata</u> Receiver

# Exhibit B

STATE OF CALIFORNIA                                                                                   Arnold Schwarzenegger, *Governor*

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
Office of Legal Affairs
P.O. Box 942883
Sacramento, CA 94283
(916) 445-0495
(916) 327-5306 (Fax)



**RECEIVED**

NOV 0 1 2006

Rosen Bien & Asaro

October 31, 2006

Mr. Michael Bien
Rosen Bien & Asaro LLP
155 Montgomery Street, 8th Floor
San Francisco, CA  94104

      Re:  Concerns over mental health treatment in out of state facilities

Dear Michael:

Deputy Attorney General Lisa Tillman forwarded to us your concerns about the contracts between the California Department of Corrections and Rehabilitation ("Department") and the two private prison vendors, GEO and Correctional Corporation of America (CCA), with whom the Department has contracts to house inmates in out-of-state facilities.  Thank you for notifying us of your concerns.  However, the Department believes that the contracts as currently written are adequate to ensure that constitutionally adequate mental health care is provided to any inmate who may be transferred to a private facility operated under these contracts.  Although the case of *Coleman v. Schwarzenegger* is not explicitly mentioned, both vendors have contractually agreed to provide constitutionally adequate mental health care when necessary to inmates consistent with the standards set by court orders.  Specifically, section 4.03 in both contracts states, in part, as follows:

> "The CONTRACTOR shall provide essential health services, including medical, dental and mental health services, while meeting the applicable standards and levels of quality established by the ACA, NCCHC, and CCR Title 15. *In addition, the CONTRACTOR shall provide services consistent with all applicable Federal, state, and local laws and regulations governing the delivery of offender health services and any applicable Court orders, including, but not limited to* orders issued in the case of Plata v. Schwarzenegger, and establish the necessary quality controls to ensure all policies and procedures are designed and implemented in a manner to promote orderly and efficient delivery and management of health care services to CDCR Offenders." (emphasis added).

Elsewhere is Section 4.03 of both contracts is the following specific requirements for mental health care of inmates transferred to private prisons:

> "**Mental Health Screening, Examination and Treatment** – The CONTRACTOR shall have written policies and procedures to assure mental health screenings, evaluations, and treatment is rendered consistent with CDCR and ACA standards.

Mr. Michael Bien
Mental health treatment in out of state facilities
October 31, 2006
Page 2

> The CDCR records sent to the facility will be reviewed for mental health history and to identify current mental health care needs. Any patient having demonstrated mental health needs shall be identified to CDCR, and CDCR shall have the right to request return of that offender to CDCR custody." (no emphasis added).

The Department, GEO, and CCA are aware of the necessity of providing constitutionally adequate mental health care to inmates transferred to private prisons outside of California. The Department believes the above contractual obligations provide the Department with sufficient ability to ensure that the contractors provide treatment consistent with our standards, which were developed in consultation with *Coleman* Special Master J. Michael Keating Jr. and his experts.

In short, we do not believe it is not necessary to amend these contracts to cite the *Coleman* case, because it is abundantly clear that the contractors are required to meet or exceed the standards established by the court.

If you have any questions, please feel free to contact me at (916) 445-4290.

Sincerely,

JUDI LEMOS
Staff Counsel

cc. Lisa Tillman

Exhibit C

## Michael W. Bien

| | |
|---|---|
| **From:** | Michael W. Bien |
| **Sent:** | Wednesday, November 01, 2006 4:50 PM |
| **To:** | Bruce Slavin; judi.lemos@cdcr.ca.gov; 'Lisa Tillman' |
| **Cc:** | Matthew A. Lopes Jr.; Donald Specter; Lisa Tillman; michael.stone2@cdcr.ca.gov; Peter.farber-szekrenyi@cdcr.ca.gov; doug.mckeever@corr.ca.gov; receiver@cprinc.org; johagar@pacbell.net; 'Dawn Cute'; Coleman Team; MH Discrimination Team; 'Jay.russell@doj.ca.gov' |
| **Subject:** | Out of State Transfers/ Coleman-Hecker/ 489-3 |
| **Importance:** | High |
| **Attachments:** | 103006outofstatetransfers.doc; 489-3, 11-1-06, ltr to MWB fr Dept of Corrections and Rehabilitation re Concerns over mental health treatment in out of state facilities.pdf |

Bruce, Judy and Lisa

Bruce has confirmed today that that the CDCR will begin the process of sending inmates to Out of State Prisons within the next 48 hours (no later than Friday, November 3) and that the first group of inmates (approximately 80 men, now housed at Wasco) will be sent to Tennessee. We assume from information stated in Special Master Keating's letter that the CDCR intends to initiate other transfers to additional states in the next few days and weeks.

We demand that you order that all of the transfers to be stopped immediately. Contrary to the representations in Judy Lemos' letter to me (attached) hereto, Special Master Keating has not approved of the CDCR's screening process for inmates or contract terms with the Out of State Prison providers. In fact, his letter to defendants of today (attached) expressly disapproves of the CDCR screening process, requests the opportunity to examine the contract language and sets forth new and additional requirements for screening of non-MHSDS inmates for suicidality history, for example, and other mental health screening procedures, that are not included in the Department's current process and thus have not been applied to the group of men about to depart for Tennessee. He also makes clear that he has not had the opportunity to send him mental health experts to evaluate the proposed receiving facilities in other states.

We do not object to the CDCR plan to contract with out of state prisons and transfer appropriate prisoners to those prisons. We do strongly object to the CDCR's current screening process, contract language and process (if any) for on site evaluations of the proposed receiving prisons, that has not been approved as safe and appropriate for any prisoners under Plata or Coleman. In addition, we have repeatedly expressed to you that it is unlawful to discriminate against persons with disabilities (including mental health related) by a blanket exclusion of all such persons for eligibility in this CDCR program which (when properly designed and run) has obvious benefits to CDCR inmates who choose to participate. We have included this claim in the recently filed and served Second Amended Complaint in Hecker.

Please consider this notice that unless you confirm that all transfers of prisoners to out of state facilities pursuant to this program have been halted, we will seek a TRO from Judge Karlton in Coleman.

Michael W. Bien
ROSEN, BIEN & ASARO, LLP
155 Montgomery Street, Eighth Floor
San Francisco, CA 94104
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbalaw.com <mailto:mbien@rbalaw.com>

*We are moving and changing our name:*

11/2/2006

Please note that effective Nov. 13, 2006, our firm will change its name and address. The new firm name and address will be:

ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone and fax remain the same.
My email address will change to:
mbien@rbg-law.com
<mailto:mbien@rbg-law.com>

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rba@rbalaw.com <mailto:rba@rbalaw.com>.
IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

11/2/2006