# Exhibit 1

### J. Michael Keating, Jr.
Office of the Special Master
*Coleman v. Schwarzenegger*

2351 Sussex Drive
Fernandina Beach, FL 32034
(904) 491-7157
Fax: (904) 491-7158
E-mail: jmichaelkeatingjr@yahoo.com

VIA E-MAIL AND U.S. MAIL

November 1, 2006

Bruce M. Slavin, General Counsel
Office of Legal Affairs
Office of the Secretary
P.O. Box 942883
Sacramento, CA 94283

Judi Lemos, Esq.
Staff Counsel, Legal Affairs Division
California Department of Corrections
P.O. Box 942883
Sacramento, CA 94283

    Re:    **Coleman et al. v. Schwarzenegger et al.,
No. CIV S-90-0520 LKK JFM P**

Counselors:

My experts and I have received and reviewed the documentation on the screening process the defendants propose to use in screening inmates who have volunteered to be moved to prison facilities in other states to relieve overcrowding in CDCR. I also received Bruce Slavin's October 12, 2006 letter on the then still developing transfer plans.

Both of these documents indicated that CDCR intended to exclude from transfer anyone included in the Mental Health Services Delivery System, at least during the first phase of the transfers. Mr. Slavin's letter indicated, however, that, as the process evolved, the defendants would be willing to work with my experts to develop screening criteria for caseload inmates who might be able to transfer safely and receive appropriate treatment in another state.

Plaintiffs' counsel, meanwhile, express their legitimate concern that the exclusion of MHSDS inmates from the projected transfers will violate the Americans with Disabilities

Counselors
November 1, 2006
Page 2

Act of 1990, a concern that echoes issues raised in the recently filed <u>Hecker</u> suit, which seeks, among other remedies, the reversal of current CDCR policies excluding MHSDS inmates from some CDCR programs and housing based on their inclusion in the mental health caseload. That case is currently pending before Judge Karlton.

The imminent transfer of CDCR inmates to privately operated prisons in Arizona, Oklahoma and Indiana, which I understand is projected to begin in early November, precludes any meaningful opportunity to assess the standards, resources and capabilities for the provision of mental health care of the institutions earmarked to receive the first transferees. Moreover, the defendants have not yet provided for review the draft version(s) of contracts spelling out the terms of CDCR's engagement with the private providers, particularly any provisions related to the evaluation and handling of CDCR inmates transferred to contracted prisons, who subsequently develop serious mental disorders.

Meanwhile, my experts' critique of the screening process focused largely on whether, and which, <u>former</u> participants in the MHSDS might be considered for transfer. The experts unanimously agreed that transfers of former MHSDS inmates should be based on a case-by-case evaluation conducted by a mental health clinician that involves both a thorough record review and a personal interview. An inmate's suicidal history was viewed as a critical component of any such evaluation; recent and/or serious attempted suicides ought to preclude transfer. Incidental suicidal ideation or minor gestures committed long ago would not necessarily constitute a bar. Generally, only former 3CMS inmates should be considered for transfer; there should be a presumption against the transfer of former participants in EOP, PSU, MHCB and inpatient DMH programs. Inmates from such programs with a diagnosis of a severe and persistent mental illness, with any of the Axis I disorders enumerated in the Program Guide list or a prior Keyhea order, should not be considered for transfer in the absence of overwhelming countervailing clinical evidence. Finally, any decision to transfer ultimately depends on the adequacy of mental health services at the receiving institution.

The screening process described in the draft document pays too little attention to mental health screening, presumably on the presumption that inmates on the MHSDS caseload will not be transferred during this Phase I placement process. Once a screening is conducted, including both a UHR review and a face-to-face assessment by the R&R RN, anyone determined to raise mental health issues should be referred for a face-to-face evaluation by a mental health clinician (psychiatrist, psychologist or a psychological social worker) rather than, or in addition to, the PCP.

Counselors
November 1, 2006
Page 3


My experts and I remain ready to cooperate with the defendants in the development of criteria for the possible transfer of MHSDS caseload inmates out of state as the program unfolds. An additional concern is how best to determine the actual state of mental health services in the institutions designated for the receipt of CDCR inmates. In the meantime, I would appreciate the prompt provision of draft or final contracts regulating relations with the institutional vendors who will be receiving CDCR inmates.


Sincerely yours,



/s/ J. Michael Keating, Jr.
<u>Coleman</u> Special Master


cc.     Matthew A. Lopes, Esq.
        Michael Bien, Esq.
        Donald Specter, Esq.
        Lisa Tillman, Esq.
        Michael Stone, Esq.
        Peter Farber-Szekrenyi, DR., P.H., Director, Division of Correctional Health Care
          Services
        Doug McKeever, Program Director, Mental Health Services, DCHCS
        Robert Sillen, <u>Plata</u> Receiver
        John Hagar, Chief of Staff to the <u>Plata</u> Receiver