# EXHIBIT D

1  | Claudia Center, State Bar No. 158255
2  | Lewis Bossing, State Bar No. 227492
   | THE LEGAL AID SOCIETY OF SAN FRANCISCO
3  | -EMPLOYMENT LAW CENTER
   | 600 Harrison St., Suite 120
4  | San Francisco, CA  94107
   | Telephone:  (415) 864-8848
   | Facsimile:  (415) 864-8199
5  |
6  | Michael W. Bien, State Bar No. 96891
   | Amy Whelan, State Bar No. 215675
7  | ROSEN BIEN & ASARO, LLP
   | 155 Montgomery Street, 8th Floor
8  | San Francisco, CA  94104
   | Telephone:  (415) 433-6830
9  | Facsimile:  (415) 433-7104

10 | Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

12 | ROBERT HECKER, CHRISTOPHER                )  Case No. 2:05-cv-02441-LKK-JFM
13 | LEE JENKINS, PETER TAYLOR, YING           )
   | WATT, ASKIA ASHANTI, RONALD               )
14 | AULD, JOHN MUELLER, DANIEL                 )  SECOND AMENDED CLASS ACTION
   | HUNLEY, JOSEPH COX, EDDIE                  )  COMPLAINT FOR DECLARATORY AND
15 | THOMAS, BRIAN K. STAFFORD,                 )  INJUNCTIVE RELIEF
   | MICHAEL LOVELACE, BOBBY                    )
16 | DANIELS, QUINTON GRAY, JOHN                )
   | WESLEY WILLIAMS, SAMUEL                    )  [Civil Rights – Disability
17 | D'ANGELO, JR., and JON SCHOOLEY,           )  Discrimination]
   |                                            )
18 |       Plaintiffs, on behalf of themselves  )
   |       and all others similarly situated,   )
19 |                                            )
   |       v.                                   )
20 |                                            )
   | CALIFORNIA DEPARTMENT OF                   )
21 | CORRECTIONS AND                            )
   | REHABILITATION, ARNOLD                     )
22 | SCHWARZENEGGER, Governor of the            )
   | State of California, in his official capacity, )
23 | JAMES E. TILTON, Secretary (Acting) of     )
   | the California Department of Corrections    )
24 | and Rehabilitation, in his official capacity, )
   | JEANNE S. WOODFORD, Undersecretary         )
25 | of the California Department of Corrections )
   | and Rehabilitation, in her official capacity, )
26 | JOHN DOVEY, Director, Division of          )
   | Adult Institutions, in his official capacity, )
27 | DR. PETER FARBER-SZEKRENYI,                )
   | Director, Division of Correctional Health   )
   | Care Services, in his official capacity,    )
28 |

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1  MARTIN VEAL, Warden (Acting) of the  )
   California Medical Facility, in his official  )
2  capacity, BENJAMIN CURRY, Warden  )
   (Acting) of the Correctional Training  )
   Facility, in his official capacity, ROBERT  )
3  J. HERNANDEZ, Warden of the Richard J.  )
   Donovan Correctional Facility, in his  )
4  official capacity, R.K. WONG, Warden of  )
   the California State Prison – Los Angeles  )
5  County, in his official capacity, MICHAEL  )
   E. POULOS, Warden of the California  )
6  Institution for Men, in his official capacity,  )
   JOHN MARSHALL, Warden of the  )
7  California Men's Colony, in his official  )
   capacity, ANTHONY MALFI, Warden of  )
8  the California State Prison – Sacramento, in  )
   his official capacity, and KATHY  )
9  MENDOZA-POWERS, Warden of the  )
   Avenal State Prison, in her official  )
10 capacity,  )

11     Defendants.  )

12

13     Plaintiffs ROBERT HECKER, CHRISTOPHER LEE JENKINS, PETER

14 TAYLOR, YING WATT, ASKIA ASHANTI, RONALD AULD, JOHN MUELLER,

15 DANIEL HUNLEY, JOSEPH COX, EDDIE THOMAS, BRIAN K. STAFFORD,

16 MICHAEL LOVELACE, BOBBY DANIELS, QUINTON GRAY, JOHN WESLEY

17 WILLIAMS, SAMUEL D'ANGELO, JR., and JON SCHOOLEY allege as follows:

18                          **INTRODUCTION**

19     1.  This is an action for relief from Defendants' violation of Plaintiffs' civil rights

20 under the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and

21 California Government Code section 11135.

22     2.  Plaintiff ROBERT HECKER ("HECKER") is an individual with a psychiatric

23 disability, and an inmate incarcerated at the California Medical Facility ("CMF").

24     3.  Plaintiff CHRISTOPHER LEE JENKINS ("JENKINS") is an individual with a

25 psychiatric disability, and an inmate incarcerated at the Correctional Training Facility

26 ("CTF").  Plaintiff JENKINS was formerly incarcerated at CMF and at the California

27 Men's Colony ("CMC").

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

4.  Plaintiff PETER TAYLOR ("TAYLOR") is an individual with a psychiatric disability, and an inmate incarcerated at CMF.

5.  Plaintiff YING WATT ("WATT") is an individual with a psychiatric disability, and an inmate incarcerated at CMF.

6.  Plaintiff ASKIA ASHANTI ("ASHANTI"), a/k/a Lorenzo Cunningham, is an individual with a psychiatric disability, and an inmate incarcerated at CMF.

7.  Plaintiff RONALD AULD ("AULD") is an individual with a psychiatric disability, and an inmate incarcerated at CMF.

8.  Plaintiff JOHN MUELLER ("MUELLER") is an individual with a psychiatric disability, and an inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD").

9.  Plaintiff DANIEL HUNLEY ("HUNLEY") is an individual with a psychiatric disability, and an inmate incarcerated at the California State Prison – Los Angeles County ("LAC").

10.  Plaintiff JOSEPH COX ("COX") is an individual with a psychiatric disability, and an inmate incarcerated at the California Institute for Men ("CIM").  Plaintiff COX was formerly incarcerated at the Sierra Conservation Center ("SCC").

11.  Plaintiff EDDIE THOMAS ("THOMAS") is an individual with a psychiatric disability, and an inmate incarcerated at RJD.

12.  Plaintiff BRIAN K. STAFFORD ("STAFFORD") is an individual with a psychiatric disability, and an inmate incarcerated at RJD.

13.  Plaintiff MICHAEL LOVELACE ("LOVELACE") is an individual with a psychiatric disability, and an inmate incarcerated at LAC.

14.  Plaintiff BOBBY DANIELS ("DANIELS") is an individual with a psychiatric disability, and an inmate incarcerated at LAC.

15.  Plaintiff QUINTON GRAY ("GRAY") is an individual with a psychiatric disability, and an inmate incarcerated at CMC.

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:90-cv-00520-KJM-SCR    Document 2033-2    Filed 11/09/06    Page 5 of 43

Case 2:05-cv-02441-LKK-JFM    Document 35    Filed 10/20/2006    Page 4 of 42

1    16. Plaintiff JOHN WESLEY WILLIAMS ("WILLIAMS") is an individual with a

2  psychiatric disability, and an inmate incarcerated at the California State Prison –

3  Sacramento ("SAC").

4    17. Plaintiff SAMUEL D'ANGELO, JR. ("D'ANGELO") is an individual with a

5  psychiatric disability. Plaintiff D'ANGELO was formerly incarcerated at CMC and at

6  RJD.

7    18. Plaintiff JON SCHOOLEY ("SCHOOLEY") is an individual with a psychiatric

8  disability, and an inmate incarcerated at the Avenal State Prison ("ASP"). Plaintiff

9  SCHOOLEY was formerly incarcerated at CMF and at CMC.

10    19. The Defendants CALIFORNIA DEPARTMENT OF CORRECTIONS AND

11  REHABILITATION ("CDCR"), GOVERNOR ARNOLD SCHWARZENEGGER

12  ("SCHWARZENEGGER"), RODERICK Q. HICKMAN ("HICKMAN"), JEANNE S.

13  WOODFORD ("WOODFORD"), JOHN DOVEY ("DOVEY"), PETER FARBER-

14  SZEKRENYI ("FARBER-SZEKRENYI"), MARTIN VEAL ("VEAL"), BENJAMIN

15  CURRY ("CURRY"), ROBERT J. HERNANDEZ ("HERNANDEZ"), R.K. WONG

16  ("WONG"), MICHAEL E. POULOS ("POULOS"), JOHN MARSHALL

17  ("MARSHALL"), ANTHONY MALFI ("MALFI"), and KATHY MENDOZA-

18  POWERS ("MENDOZA-POWERS"), and each of them, have denied Plaintiffs access to

19  basic CDCR programs, services, and activities on the basis of their disabilities.

20    20. Plaintiffs seek declaratory and injunctive relief, and reasonable attorneys' fees

21  and costs, for defendants' violations of their rights.

22                    **JURISDICTION AND VENUE**

23    21. This Court has jurisdiction over the subject matter and the parties pursuant to 28

24  U.S.C. §§ 1331, 2201, and 2202. Plaintiffs bring this suit under Title II of the

25  Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, and Section 504

26  of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.

27    22. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. §

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  1391(b), because events giving rise to Plaintiffs' claims occurred in this District.

2  **PARTIES**

3  23. Plaintiff HECKER is a person with a disability within the meaning of all
4  applicable statutes, and is a qualified person with a disability within the meaning of Title
5  II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff HECKER is a
6  resident of California, and an inmate incarcerated at CMF.

7  24. Plaintiff JENKINS is a person with a disability within the meaning of all
8  applicable statutes, and is a qualified person with a disability within the meaning of Title
9  II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff JENKINS is a
10 resident of California, and an inmate incarcerated at CTF. Plaintiff JENKINS was
11 formerly incarcerated at CMF and CMC.

12 25. Plaintiff TAYLOR is a person with a disability within the meaning of all
13 applicable statutes, and is a qualified person with a disability within the meaning of Title
14 II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff TAYLOR is a
15 resident of California, and an inmate incarcerated at CMF.

16 26. Plaintiff WATT is a person with a disability within the meaning of all applicable
17 statutes, and is a qualified person with a disability within the meaning of Title II of the
18 ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff WATT is a resident of
19 California, and an inmate incarcerated at CMF.

20 27. Plaintiff ASHANTI is a person with a disability within the meaning of all
21 applicable statutes, and is a qualified person with a disability within the meaning of Title
22 II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff ASHANTI is
23 a resident of California, and an inmate incarcerated at CMF.

24 28. Plaintiff AULD is a person with a disability within the meaning of all applicable
25 statutes, and is a qualified person with a disability within the meaning of Title II of the
26 ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff AULD is a resident of
27 California, and an inmate incarcerated at CMF.

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    29. Plaintiff MUELLER is a person with a disability within the meaning of all
2    applicable statutes, and is a qualified person with a disability within the meaning of Title
3    II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff MUELLER is
4    a resident of California, and an inmate incarcerated at RJD.

5    30. Plaintiff HUNLEY is a person with a disability within the meaning of all
6    applicable statutes, and is a qualified person with a disability within the meaning of Title
7    II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff HUNLEY is a
8    resident of California, and an inmate incarcerated at LAC.

9    31. Plaintiff COX is a person with a disability within the meaning of all applicable
10   statutes, and is a qualified person with a disability within the meaning of Title II of the
11   ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff COX is a resident of
12   California, and an inmate incarcerated at CIM. Plaintiff COX was formerly incarcerated
13   at SCC.

14   32. Plaintiff THOMAS is a person with a disability within the meaning of all
15   applicable statutes, and is a qualified person with a disability within the meaning of Title
16   II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff THOMAS is
17   a resident of California, and an inmate incarcerated at RJD.

18   33. Plaintiff STAFFORD is a person with a disability within the meaning of all
19   applicable statutes, and is a qualified person with a disability within the meaning of Title
20   II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff STAFFORD
21   is a resident of California, and an inmate incarcerated at RJD.

22   34. Plaintiff LOVELACE is a person with a disability within the meaning of all
23   applicable statutes, and is a qualified person with a disability within the meaning of Title
24   II of the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiff LOVELACE
25   is a resident of California, and an inmate incarcerated at LAC.

26   35. Plaintiff DANIELS is a person with a disability within the meaning of all
27   applicable statutes, and is a qualified person with a disability within the meaning of Title

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    II of the ADA and Section 504 of the Rehabilitation Act of 1973.  Plaintiff DANIELS is

2    a resident of California, and an inmate incarcerated at LAC.

3        36.  Plaintiff GRAY is a person with a disability within the meaning of all applicable

4    statutes, and is a qualified person with a disability within the meaning of Title II of the

5    ADA and Section 504 of the Rehabilitation Act of 1973.  Plaintiff GRAY is a resident of

6    California, and an inmate incarcerated at CMC.

7        37.  Plaintiff WILLIAMS is a person with a disability within the meaning of all

8    applicable statutes, and is a qualified person with a disability within the meaning of Title

9    II of the ADA and Section 504 of the Rehabilitation Act of 1973.  Plaintiff WILLIAMS

10   is a resident of California, and an inmate incarcerated at SAC.

11       38.  Plaintiff D'ANGELO is a person with a disability within the meaning of all

12   applicable statutes, and is a qualified person with a disability within the meaning of Title

13   II of the ADA and Section 504 of the Rehabilitation Act of 1973,  Plaintiff D'ANGELO

14   is a resident of California.  Plaintiff D'ANGELO was formerly incarcerated at CMC and

15   at RJD.

16       39.  Plaintiff SCHOOLEY is a person with a disability within the meaning of all

17   applicable statutes, and is a qualified person with a disability within the meaning of Title

18   II of the ADA and Section 504 of the Rehabilitation Act of 1973.  Plaintiff SCHOOLEY

19   is a resident of California, and an inmate incarcerated at ASP.  Plaintiff SCHOOLEY was

20   formerly incarcerated at CMF and at CMC.

21       40.  Defendant CDCR administers and operates the California prison system,

22   including the facilities identified above, and is legally responsible for ensuring

23   compliance with state and federal disability nondiscrimination laws at all California

24   correctional facilities.  Defendant CDCR is a public entity within the meaning of Title II

25   of the ADA.  Defendant CDCR receives federal financial assistance and is covered by the

26   Rehabilitation Act.

27       41. Defendant SCHWARZENEGGER is the Governor of the State of California,

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1  and oversees all state agencies, including the CDCR. Defendant SCHWARZENEGGER

2  is legally responsible for ensuring compliance with state and federal disability

3  nondiscrimination laws at all state facilities, including state correctional facilities.

4  Defendant SCHWARZENEGGER is legally responsible for the unlawful policies,

5  practices, and procedures challenged herein, and has the authority and legal obligation to

6  eliminate disability discrimination by abolishing these policies, practices, and procedures.

7  Defendant SCHWARZENEGGER is sued in his official capacity.

8      42. Defendant TILTON is the Secretary (Acting) of the CDCR, and is legally

9  responsible for ensuring compliance with state and federal disability nondiscrimination

10  laws at all correctional facilities, including the facilities identified above. Defendant

11  TILTON is legally responsible for the unlawful policies, practices, and procedures

12  challenged herein, and has the authority and legal obligation to eliminate disability

13  discrimination by abolishing these policies, practices, and procedures. Defendant

14  TILTON is sued in his official capacity.

15      43. Defendant WOODFORD is the Undersecretary of the CDCR, and is legally

16  responsible for ensuring compliance with state and federal disability nondiscrimination

17  laws at all correctional facilities, including the facilities identified above. Defendant

18  WOODFORD is responsible for the unlawful policies, practices, and procedures

19  challenged herein, and has the authority and legal obligation to eliminate disability

20  discrimination by abolishing these policies, practices, and procedures. Defendant

21  WOODFORD is sued in her official capacity.

22      44. Defendant DOVEY is the Director of the Division of Adult Institutions, and is

23  legally responsible for ensuring compliance with state and federal disability

24  nondiscrimination laws at all adult correctional facilities, including the facilities

25  identified above. Defendant DOVEY is responsible for the unlawful policies, practices,

26  and procedures challenged herein, and has the authority and legal obligation to eliminate

27  disability discrimination by abolishing these policies, practices, and procedures.

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Defendant DOVEY is sued in his official capacity.

2    45.  Defendant FARBER-SZEKRENYI is the Director of the Division of Correctional

3    Health Care Services, and is legally responsible for ensuring compliance with state and

4    federal disability nondiscrimination laws at all adult correctional facilities, including the

5    facilities identified above.  Defendant FARBER-SZEKRENYI is responsible for the

6    unlawful policies, practices, and procedures challenged herein, and has the authority and

7    legal obligation to eliminate disability discrimination by abolishing these policies,

8    practices, and procedures.  Defendant FARBER-SZEKRENYI is sued in his official

9    capacity.

10    46.  Defendant VEAL is the Warden (Acting) of CMF.  He is responsible for the

11    administration of programs, services, and activities offered to inmates at the CMF, and is

12    in charge of supervision and discipline of all correctional officials and employees at

13    CMF.  Defendant VEAL is sued in his official capacity.

14    47.  Defendant CURRY is the Warden (Acting) of CTF.  He is responsible for the

15    administration of programs, services, and activities offered to inmates at the CTF, and is

16    in charge of supervision and discipline of all correctional officials and employees at CTF.

17    Defendant CURRY is sued in his official capacity.

18    48.  Defendant HERNANDEZ is the Warden of RJD.  He is responsible for the

19    administration of programs, services, and activities offered to inmates at the RJD, and is

20    in charge of supervision and discipline of all correctional officials and employees at RJD.

21    Defendant HERNANDEZ is sued in his official capacity.

22    49.  Defendant WONG is the Warden of LAC.  He is responsible for the

23    administration of programs, services, and activities offered to inmates at the LAC, and is

24    in charge of supervision and discipline of all correctional officials and employees at

25    LAC.  Defendant WONG is sued in his official capacity.

26    50.  Defendant POULOS is the Warden of CIM.  He is responsible for the

27    administration of programs, services, and activities offered to inmates at the CIM, and is

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    in charge of supervision and discipline of all correctional officials and employees at CIM.

2    Defendant POULOS is sued in his official capacity.

3        51. Defendant MARSHALL is the Warden of CMC. He is responsible for the

4    administration of programs, services, and activities offered to inmates at the CMC, and is

5    in charge of supervision and discipline of all correctional officials and employees at

6    CMC. Defendant MARSHALL is sued in his official capacity.

7        52. Defendant MALFI is the Warden of SAC. He is responsible for the

8    administration of programs, services, and activities offered to inmates at the SAC, and is

9    in charge of supervision and discipline of all correctional officials and employees at

10   SAC. Defendant MALFI is sued in his official capacity.

11       53. Defendant MENDOZA-POWERS is the Warden of ASP. She is responsible for

12   the administration of programs, services, and activities offered to inmates at the ASP, and

13   is in charge of supervision and discipline of all correctional officials and employees at

14   ASP. Defendant MENDOZA-POWERS is sued in her official capacity.

15                           **STATEMENT OF FACTS**

16       54. Plaintiff HECKER is an inmate incarcerated at the CMF. He is assigned to a

17   program for inmates with psychiatric disabilities called the Enhanced Outpatient Program

18   ("EOP"), which is a part of the CDCR's Mental Health Service Delivery System

19   ("MHSDS"). Plaintiff HECKER has experienced, and continues to experience, the

20   unlawful actions and inactions alleged herein.

21       55. Plaintiff JENKINS is an inmate incarcerated at the CTF. He was formerly

22   incarcerated at the CMF and the CMC. While he was at the CMF and the CMC, he was

23   assigned to the EOP. He is currently assigned to a program for inmates with psychiatric

24   disabilities called the Correctional Clinical Case Management System ("CCCMS"),

25   which is also part of the MHSDS. Plaintiff JENKINS has experienced, and continues to

26   experience, the unlawful actions and inactions alleged herein.

27       56. Plaintiff TAYLOR is an inmate incarcerated at the CMF. He is assigned to the

28

1    EOP. Plaintiff TAYLOR has experienced, and continues to experience, the unlawful

2    actions and inactions alleged herein.

3        57. Plaintiff WATT is an inmate incarcerated at the CMF. He is assigned to the

4    EOP. Plaintiff WATT has experienced, and continues to experience, the unlawful

5    actions and inactions alleged herein.

6        58. Plaintiff ASHANTI is an inmate incarcerated at the CMF. He is assigned to the

7    EOP. Plaintiff ASHANTI has experienced, and continues to experience, the unlawful

8    actions and inactions alleged herein.

9        59. Plaintiff AULD is an inmate incarcerated at the CMF. He is assigned to the EOP.

10   Plaintiff AULD has experienced, and continues to experience, the unlawful actions and

11   inactions alleged herein.

12       60. Plaintiff MUELLER is an inmate incarcerated at the RJD. He is currently

13   assigned to the EOP. He has also been assigned to the CCCMS. Plaintiff MUELLER

14   has experienced, and continues to experience, the unlawful actions and inactions alleged

15   herein.

16       61. Plaintiff HUNLEY is an inmate incarcerated at the LAC. He is assigned to the

17   CCCMS. Plaintiff HUNLEY has experienced, and continues to experience, the unlawful

18   actions and inactions alleged herein.

19       62. Plaintiff COX is an inmate incarcerated at the CIM. He was formerly

20   incarcerated at the SCC. He is assigned to the CCCMS. Plaintiff COX has experienced,

21   and continues to experience, the unlawful actions and inactions alleged herein.

22       63. Plaintiff THOMAS is an inmate incarcerated at the RJD. He is assigned to the

23   EOP. He has also been assigned to the CCCMS. Plaintiff THOMAS has experienced,

24   and continues to experience, the unlawful actions and inactions alleged herein.

25       64. Plaintiff STAFFORD is an inmate incarcerated at the RJD. He is assigned to the

26   EOP. Plaintiff STAFFORD has experienced, and continues to experience, the unlawful

27   actions and inactions alleged herein.

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1      65. Plaintiff LOVELACE is an inmate incarcerated at the LAC. He is assigned to the

2  CCCMS. Plaintiff LOVELACE has experienced, and continues to experience, the

3  unlawful actions and inactions alleged herein.

4      66. Plaintiff DANIELS is an inmate incarcerated at the LAC. He is assigned to the

5  EOP. Plaintiff DANIELS has experienced, and continues to experience, the unlawful

6  actions and inactions alleged herein.

7      67. Plaintiff GRAY is an inmate incarcerated at the CMC. He is assigned to the

8  EOP. Plaintiff GRAY has experienced, and continues to experience, the unlawful actions

9  and inactions alleged herein.

10      68. Plaintiff WILLIAMS is an inmate incarcerated at the SAC. He is assigned to the

11  EOP. Plaintiff WILLIAMS has experienced, and continues to experience, the unlawful

12  actions and inactions alleged herein.

13      69. Plaintiff D'ANGELO was formerly incarcerated at the CMC and at RJD, where

14  he was assigned to the EOP. Plaintiff D'ANGELO has experienced the unlawful actions

15  and inactions alleged herein.

16      70. Plaintiff SCHOOLEY is an inmate incarcerated at the CMC. He was formerly

17  incarcerated at the CMF and at the CMC. He is currently assigned to the CCCMS. He

18  has also been assigned to the EOP. Plaintiff SCHOOLEY has experienced, and

19  continues to experience, the unlawful actions and inactions alleged herein.

20      71. The Defendants CDCR, SCHWARZENEGGER, HICKMAN, WOODFORD,

21  DOVEY, FARBER-SZEKRENYI, VEAL, CURRY, HERNANDEZ, WONG, POULOS,

22  MARSHALL, MALFI, MENDOZA-POWERS, and each of them, have adopted,

23  implemented, ratified, and/or failed to abolish numerous unnecessary and discriminatory

24  policies, practices, and procedures affecting the inmates participating in the MHSDS,

25  including the EOP and the CCCMS. These systemwide, statewide policies, practices,

26  and procedures bar and function to bar Plaintiffs and other similarly situated MHSDS

27  participants from basic educational, vocational, employment, and recreational programs

28

1    that are provided to other, nondisabled inmates.  For example:

2         (a)    While inmates assigned to the EOP at CMF are required to participate

3    in ten hours of mental health programming such as support groups, the remaining hours

4    of their weeks – 30 to 40 hours each week – are unscheduled and available for

5    participation in the broad range of educational, vocational, employment, and recreational

6    programs available to the non-disabled, non-EOP population.  Nevertheless, by express

7    policy and without lawful basis, inmates in the EOP are deemed to be "booked" from

8    8:00 a.m. to 4:00 p.m. Monday through Friday, and are entirely precluded from

9    participating in any non-EOP prison programs, including vocational, employment, and

10    educational programs, during those times.  *See, e.g.,* December 30, 2002 Memorandum

11    from L.H. Dizmang, M.D., Chief Psychiatrist, California Medical Facility.

12         (b)    Further, it is the express policy of the CTF that "[i]nmates in the Mental

13    Health Services Delivery System (MHSDS) at any level of care" are ineligible for

14    placement to CTF – South, and that "participants in the MHSDS at the levels of EOP or

15    CCCMS or on psychotropic medications" are ineligible for placement to CTF – East

16    Dorm.  As a result, persons with psychiatric disabilities are excluded from the parole

17    programming and work crew opportunities available at CTF – South, and from the Prison

18    Industry Authority (PIA) jobs available at CTF – East Dorm.  *See* Correctional Training

19    Facility Operation Procedure #20 (Feb. 28, 2005).

20         (c)    Further, it is the express policy of the CDCR that current or recent

21    participants in the MHSDS are ineligible for placement in the highly regarded Fire Camp

22    Program.  *See, e.g.,* December 23, 2003 Memorandum from Rosanne Campbell, Deputy

23    Director, Health Care Services Division.  As a result, persons with psychiatric disabilities

24    are unable to earn the additional "good time" work credits that inmates participating in

25    Fire Camp may earn, and cannot gain the valuable work experience others receive

26    through Fire Camp participation.

27         (d)    Further, it is the express policy of the CDCR that *all* inmates with a

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   "diagnosis of mental illness" entering the CDCR system at one of its "reception centers"

2   are automatically given an additional four points as part of their classification score,

3   which determines security level and thus the environment in which they live while in the

4   system. *See* C.C.R. Tit. 15, § 3375.3(a)(5); CDC 839 (Rev. 12/02). As a result, inmates

5   with psychiatric disabilities are often isolated and segregated in high security level units,

6   with significantly reduced opportunities for learning, working, or interacting with others.

7   　　　(e)　　Further, it is the express policy of the CDCR that "heat alert" inmates,

8   who take medications, including psychiatric medications, that make them more

9   susceptible to heat-related illnesses, are required to return to their cells when the

10  temperature reaches or exceeds 90 degrees. *See* CDCR Departmental Operations Manual

11  ("DOM"), supplement 54060.4.3. These inmates are denied access to appropriate

12  recreational or other programming during heat alerts, unlike inmates who do not use such

13  medications, and as such are unnecessarily segregated from other inmates.

14  　　　(f)　　Further, it is the express policy of the CDCR that current participants in

15  the MHSDS are excluded from transfer to an out-of-state facility as part of a California

16  Out-of-State Correctional Facility (COCF) placement, regardless of whether they may be

17  able to transfer safely to another state's facility and receive appropriate treatment there.

18  See October 12, 2006 letter from Bruce M. Slavin, General Counsel, Office of Legal

19  Affairs, CDCR, to J. Michael Keating, Special Master, *Coleman v. Schwarzenegger*, No.

20  Civ. S-90-0520 LKK JFM (E.D. Cal.).

21  　　　(g)　　Additional systemwide, statewide policies, practices, and procedures

22  similarly function to discriminate against inmates with severe psychiatric disabilities;

23  exclude them from programs, services, and activities; retaliate against them; and

24  segregate them unnecessarily.

25  　　72. As a result of the unnecessary and discriminatory systemwide and statewide

26  policies, practices, and procedures challenged herein, and on the basis of disability,

27  Plaintiffs and others similarly situated have been denied equal access to a broad range of

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1   prison programs, services, and activities for which they are qualified, and have been

2   subjected to unlawful segregation. These denials include, but are not limited to, the

3   following:

4        (a)    disability-based denial of access to educational opportunities, including the

5               electronics program, computer classes, the Art in Corrections program,

6               classes offered as part of the Disabled Placement Program ("DPP"), and

7               other educational programs;

8        (b)    disability-based denial of access to employment and vocational

9               opportunities, including facility yard crews, PIA jobs, and Fire Camp;

10       (c)    disability-based denial of access to recreational programs and facilities;

11       (d)    disability-based denial of access to religious programs, including church

12              services and bible study; and

13       (e)    disability-based denial of access to other programs, services, and activities,

14              including the law library, COCF placements, and the Substance Abuse

15              Program ("SAP") and other drug treatment programs.

16       73. These systemwide denials and exclusions are unnecessary, discriminatory, and

17  unlawful. The exclusion of MHSDS inmates from programs and services cause them to

18  lose benefits attendant to work, education, vocational, and recreational activities,

19  including but not limited to time credits, privileges, and wages. Further, the inmates in

20  the MHSDS are excluded and segregated despite the fact that participation in

21  educational, vocational, employment, and recreational programs is therapeutic for

22  persons with serious psychiatric disabilities, and promotes mental health and wellness.

23  By contrast, exclusion and segregation, particularly from educational, vocational, and

24  employment opportunities, undermines mental health, wellness, and rehabilitation. The

25  Defendants' actions and inactions function to aggravate and worsen the mental health

26  status of Plaintiffs and the other, similarly situated MHSDS inmates. These inmates

27  often forego mental health care so that they may participate in beneficial educational,

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    vocational, and other programs.

2    <center>ADMINISTRATIVE EXHAUSTION</center>

3    <center>**Plaintiff HECKER**</center>

4    74. Plaintiff HECKER has satisfied all exhaustion requirements for issues raised in

5    this lawsuit. However, his appeals have been repeatedly screened out by the CMF

6    Appeals Office, in violation of the CDC policies and procedures as set forth in California

7    Code of Regulations, Title 15.

8    75. On December 28, 2004, Plaintiff HECKER filed a timely 1824 appeal

9    challenging the policies, practices, and procedures complained of herein, and requesting

10   that "the Electronics program be made available to me" and seeking "modifications to

11   CDC policies, practices, and procedures to avoid discrimination on the basis of

12   disability[.]" Plaintiff HECKER noted that he was "being forced to choose between an

13   EOP level of care that I require to maintain mental health, and a vocation that would

14   further and enhance improvements in my mental health[.]"

15   76. On December 29, 2004, Plaintiff HECKER's appeal was screened out,

16   purportedly because the "[a]ppeal cannot be understood" and because the "wording is too

17   small."

18   77. On January 3, 2005, Plaintiff HECKER resubmitted a timely 1824 appeal; this

19   time typed so that it could not be rejected as "too small." Plaintiff HECKER sought

20   "access to the Electronics Program" and "[m]odification to CDC policies, practices or

21   procedures to avoid discrimination by denial of access to Electronics Program on the

22   basis of my disability[.]"

23   78. On January 5, 2005, Plaintiff HECKER's appeal was again summarily screened

24   out, purportedly because his appeal was a "duplicate issue." By "duplicate issue," the

25   appeals coordinator was referencing a group appeal filed by Plaintiff JENKINS, on

26   January 29, 2003. The issues complained of by Plaintiff HECKER were ongoing and

27   had not been resolved by Plaintiff JENKINS' appeal. Further, under governing

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    procedures, only Plaintiff JENKINS could appeal the January 2003 group appeal.

2        79.  On August 5, 2005, Plaintiff HECKER filed a timely 1824 appeal challenging the

3    policies, practices and procedures complained of herein, and seeking "[m]eaningful and

4    nondiscriminatory access to all prison programs[,]" "including the Electronics Program,

5    the Arts in Corrections Program, computer classes, and bible study."  In his August 5,

6    2005 appeal, Plaintiff HECKER explicitly noted that he was challenging "an ongoing

7    problem and . . . an ongoing need for the reasonable accommodation and modification

8    requested herein," and that his appeal should not be barred as a "duplicate issue."

9        80.  On August 8, 2005, Plaintiff HECKER's appeal was summarily screened out,

10    purportedly as a "duplicate issue."

11        81.  On August 15, 2005, Plaintiff HECKER sought Second Level review of the

12    screened-out appeal.

13        82.  On August 19, 2005, Plaintiff HECKER's request for Second Level review was

14    denied.

15        83.  On August 23, 2005, Plaintiff HECKER sought Director's Level review of the

16    screened-out appeal from the Inmate Appeals Branch.

17        84.  On October 22, 2005, the Inmate Appeals Branch returned Plaintiff HECKER's

18    documents to him, purportedly because the appeal was "rejected, withdrawn or

19    cancelled."

20        85.  Because Defendants have repeatedly screened out and/or denied Plaintiff

21    HECKER's administrative appeals, the grievance procedure has effectively been

22    rendered unavailable to him.  In fact, Plaintiff HECKER has been repeatedly and

23    "reliably informed by an administrator that no remedies are available" to him.  *See Brown*

24    *v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *Hemphill v. New York*, 380 F.3d 680, 686,

25    688 (2d Cir. 2004).

26        86.  Further, it is the policy of the CDCR not to accept appeals that have been

27    screened out as a "duplicate issue."  Accordingly, Plaintiff HECKER's efforts to appeal

28

Page 17

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    his "screened out" 1824 to the Second Level and to the Third Level (Director's Level)

2    have been unavailing. At no time has the CDCR or its agents attempted to consider,

3    much less resolve, Plaintiff HECKER's complaints. It would be futile for Plaintiff

4    HECKER to attempt to further avail himself of the internal CDCR appeals process.

5                              **Plaintiff JENKINS**

6        87. Plaintiff JENKINS has satisfied all exhaustion requirements, including Director's

7    Level appeals, for issues raised in this lawsuit. His appeals regarding the exclusion of

8    inmates with psychiatric disabilities from work and education programs have been

9    repeatedly denied and/or screened out by CDCR officials.

10       88. On January 29, 2003, while at CMF, Plaintiff JENKINS filed a timely 1824

11   appeal challenging the policies, practices, and procedures complained of herein, stating

12   that "EOP inmates at CMF are being denied equal access to work and educational

13   opportunities available to other inmates at CMF. This denial has taken place solely as a

14   consequence of the fact that these inmates are disabled." The appeal seeks to have "full

15   and equal access to work and educational programs at CMF restored to EOP inmates."

16       89. On March 6, 2003, Plaintiff JENKINS' appeal was denied at the First Level of

17   review.

18       90. On March 19, 2003, Plaintiff JENKINS appealed his issues to the Second Level

19   of review, expressly protesting the CDCR's exclusion of CMF EOP inmates from

20   programs and services including religious services, Arts and Corrections, library,

21   telephone, and work and education programs between the hours of 8:00 a.m. to 4:00 p.m.

22   Monday-Friday.

23       91. On April 10, 2003, Plaintiff JENKINS' appeal was denied at the Second Level of

24   review.

25       92. On April 27, 2003, Plaintiff JENKINS sought a Director's Level review of his

26   1824 appeal, and provided a copy of the Director's Level appeal to the CDCR. Plaintiff

27   JENKINS mailed the original Director's Level appeal form to the CDCR on May 25,

28

1    2003.  On June 3, 2003, the CDCR returned the copy of the appeal to Plaintiff JENKINS,

2    purportedly because "[o]nly the original appeal form is accepted at the Director's Level

3    of Review."

4        93.  On June 16, 2003, the CDCR returned the original form to Plaintiff because "[a]n

5    appellant must submit the appeal within 15 working days of the event or decision being

6    appealed, or of receiving a lower level decision."

7        94.  On October 6, 2004, while at CMC, Plaintiff JENKINS filed a timely 602 appeal

8    regarding the discriminatory denial of access to a work assignment in a clerical position

9    for which he was qualified because of his participation to the EOP program.  According

10   to prison officials, "[b]ased on [Plaintiff] JENKINS' assessment as an EOP inmate, he is

11   incapable of performing the tasks assigned to him in this assignment."  *See* "General

12   Chrono:  Request for Unassignment" (Aug. 16, 2004).

13       95.  On November 26, 2004, Plaintiff JENKINS' appeal was partially granted at the

14   First Level of review, because he was given copies of the paperwork relevant to the

15   denial, but he was not considered for the clerk's position he was seeking.

16       96.  On December 30, 2004, Plaintiff JENKINS requested Second Level review of his

17   appeal.  His appeal was partially granted on February 2, 2005, but he was still not

18   considered for the clerk's position he was seeking.  Instead of being considered for the

19   paid clerical position he sought, he had been assigned to a non-paid position as a yard

20   crew worker.

21       97.  On February 16, 2005, Plaintiff JENKINS requested Director's Level review of

22   his appeal.

23       98.  On May 18, 2005, Plaintiff JENKINS' appeal was denied at the Director's Level.

24   Although the CDCR acknowledged that "the basis for the appellant's removal was

25   inappropriate in that his Mental Health issue should not have been the factor in the

26   removal of the appellant from his clerical position," Plaintiff JENKINS was still not

27   considered for the clerical position in question, nor awarded any pay he could have

28

1    received had he been permitted to work.

2        99.  Now at CTF, Plaintiff JENKINS is continuing to experience exclusion from core

3    vocational and other programs on the basis of his psychiatric disability.  For example, he

4    has been excluded from the parole programming and work crew opportunities available

5    at CTF – South because he is CCCMS.

6        100.  On January 19, 2006, Plaintiff JENKINS filed a timely 1824 appeal (Log No.

7    06-00379) challenging the systemwide policies, practices, and procedures addressed

8    herein, and specifically the CDCR's denial of access to "outside work crews, fire camp,

9    substance abuse program (SATF), etc. . . . because I am CCCMS[.]"

10       101.  Plaintiff JENKINS received a response to this appeal on February 17, 2006.

11   The response indicates that Plaintiff JENKINS' appeal was "partially granted" because

12   his "annual review" would consider whether to transfer him to another facility.

13       102.  Plaintiff JENKINS sought Second Level review of this response in March 2006.

14   In his appeal, Plaintiff JENKINS indicated that "[t]he only reason to accommodate [my]

15   transfer was to place me into an outside work crew as a CCCMS inmate and 'if' this

16   cannot be allowed as an CCCMS inmate I would ask not to be transferred."

17       103.  On April 11, 2006 Plaintiff JENKINS was notified that he had been endorsed

18   for transfer to the California Correctional Institution ("CCI") in Tehachapi, California, as

19   a Level II inmate.  He then filed an emergency 602 appeal dated April 12, 2006 (Log No.

20   06-01164), in which he asked that he not be transferred to CCI Level II because as a

21   Level II he would not be given access to fire camp or outside work crews.  His April 12

22   appeal was rejected as an emergency appeal on April 14, 2006, but was assigned for

23   Second Level review.

24       104.  On April 28, 2006, Plaintiff JENKINS' January 19 appeal was denied at the

25   Second Level because he was endorsed to CCI Level II after his "Annual Review."

26       105.  On May 11, 2006, Plaintiff JENKINS' April 12 appeal was denied at the

27   Second Level because his "history of CCCMS treatment within the last two years is one

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    of the factors that preclude placement in a camp facility."

2    106.  Plaintiff JENKINS sought Director's Level review of his January 19 appeal on

3    May 2006, stating that "[t]he denial of this appeal is denying access to . . . programming

4    to inmates who are CCCMS just because they are CCCMS or mental health disordered

5    inmates." His appeal to the Director's Level was denied on June 13, 2006; the reviewer

6    noted that Plaintiff JENKINS "receives the CCCMS level of care" and "does not qualify

7    for camp placement."

8    107.  In view of the multiple institutional transfers he has experienced, in addition to

9    transfers from the EOP to the CCCMS to general population (GP) and back, as well as

10   the ongoing discrimination currently being experienced at CTF, Plaintiff JENKINS'

11   claims regarding the systemic exclusion of EOP and CCCMS inmates from work and

12   education programs present a live controversy "capable of repetition, yet evading

13   review." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999) (citing *Vitek v.*

14   *Jones*, 445 U.S. 480, 486-87 (1980)).  Indeed, there is a significant probability that

15   Plaintiff JENKINS will be transferred again, and will continue to experience

16   discrimination on the basis of his psychiatric disability in the EOP or in the CCCMS –

17   either at CMF, CMC, or another CDCR institution.

18                           **Plaintiff TAYLOR**

19   108.  Plaintiff TAYLOR has satisfied all exhaustion requirements for issues raised in

20   this lawsuit.  His appeals regarding the exclusion of inmates with psychiatric disabilities

21   from work and education programs have been repeatedly denied and/or inappropriately

22   screened out by CDCR officials.

23   109.  On December 17, 2002, Plaintiff TAYLOR filed a timely 602 group appeal

24   requesting that EOP inmates "not be discriminated against because of EOP mental health

25   disabilities" and seeking to "reverse the [extreme] bias and discrimination toward all

26   EOP inmates with mental illness ... by not allowing ... off wing authorized access during

27   the hours of 8:00 a.m. – 4:00 p.m." This appeal bypassed lower levels and went directly

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    to Second Level review, where it was denied on February 25, 2003.

2         110.  Plaintiff TAYLOR sought Director's Level review of this response.  His

3    Director's Level appeal was denied on May 15, 2003.

4         111.  On March 22, 2005, Plaintiff TAYLOR filed an 1824 appeal challenging his

5    exclusion from the DPP because of his participation in the EOP.  He withdrew this appeal

6    after he was threatened with expulsion from the EOP for not "focusing on [his] mental

7    health."

8         112.  As with Plaintiff JENKINS' appeals, Plaintiff TAYLOR's claims regarding the

9    systemic exclusion of EOP and CCCMS inmates from work and education programs

10   present a live controversy "capable of repetition, yet evading review."  There is a

11   significant probability that Plaintiff TAYLOR and other similarly situated inmates will

12   continue to experience discrimination on the basis of his psychiatric disability in the

13   EOP.  Additionally, the defendant officials' own actions inhibiting Plaintiff TAYLOR's

14   exhaustion of his appeals estop them from arguing his failure to exhaust as a defense.

15   *See Hemphill, supra,* 380 F.3d at 688.

16                          **Plaintiff WATT**

17        113.  Plaintiff WATT has satisfied all exhaustion requirements, including Director's

18   Level appeals, for issues raised in this lawsuit.  His appeal regarding the exclusion of

19   inmates with psychiatric disabilities from work and education programs has been denied

20   by CDCR officials.

21        114.  On December 27, 2005, Plaintiff WATT filed a timely 602 appeal challenging

22   the systemwide policies, practices, and procedures addressed herein, and specifically the

23   CDCR's denial of access to "educational, vocational, employment and recreation

24   opportunities . . . to EOP inmates due to discrimination against their mental health

25   disability."  The appeals requests that EOP inmates be provided equal access to these

26   opportunities, noting that they were provided to EOP inmates at CMF prior to 2002.

27        115.  Plaintiff WATT's appeal bypassed lower levels of review and went directly to

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1   Second Level review, where it was denied on February 9, 2006.  After receiving this

2   decision on February 16, 2006, Plaintiff WATT appealed the denial on March 1, 2006,

3   stating that "[t]he response failed to address my request for equal access to mainline

4   programs and services for [EOP] inmates . . . . I continue to be denied access to programs

5   and services based on my mental health disability and EOP participation."

6       116.  Plaintiff WATT's appeal was denied at the Director's Level on May 30, 2006.

7                                    **Plaintiff ASHANTI**

8       117.  Plaintiff ASHANTI, a/k/a Lorenzo Cunningham, has satisfied all exhaustion

9   requirements, including Director's Level appeals, for issues raised in this lawsuit.  His

10  appeal regarding the exclusion of inmates with psychiatric disabilities from education,

11  work, and vocational programs has been denied by CDCR officials.

12      118.  On April 8, 2006, Plaintiff ASHANTI, then a participant in the EOP at CMF,

13  filed a timely 1824 appeal challenging the CDCR's denial of access to "education, work,

14  and vocational programs . . . due to [his] mental health disability."  Plaintiff ASHANTI

15  asked that he be granted "the opportunity to participate in education, work, and

16  vocational programs that are available to non-EOP inmates."

17      119.  Plaintiff ASHANTI's 1824 appeal was denied on May 1, 2006.  He filed his

18  Second Level appeal on May 9, 2006, asking that the CMF administration "grant (EOP)

19  access to school/work/trade programs per the ADA/Americans With Disability Act

20  law(s)."  The Second Level appeal was denied on May 26, 2006, and was returned to

21  Plaintiff ASHANTI on June 2, 2006.

22      120.  Plaintiff ASHANTI filed his Director's Level appeal seeking access to

23  "school/work/trade programs" on June 7, 2006.  This appeal was denied on July 18,

24  2006.  The appeal decision states that, "[a]t this point the EOP program will not be

25  changed."

26                                   **Plaintiff AULD**

27      121.  Plaintiff AULD has satisfied all exhaustion requirements, including Director's

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    Level appeals, for issues raised in this lawsuit. His appeal regarding the exclusion of

2    inmates with psychiatric disabilities from education and other programs has been denied

3    by CDCR officials.

4        122. On December 30, 2005, Plaintiff AULD filed a timely 1824 appeal requesting

5    access to education programs and/or access to the Disabled Placement Program, but had

6    been informed that "he cannot go to school because he is in EOP."

7        123. Plaintiff AULD's 1824 appeal was screened out on January 4, 2006, and he was

8    told to file a 602 appeal regarding his issues. On January 5, 2006, Plaintiff AULD filed a

9    602 appeal challenging "CDCR regulations, policies and procedures barring access to

10   educational opportunities for inmates with mental disabilities covered under the

11   Americans with Disabilities Act receiving treatment at the Enhanced Outpatient Program,

12   in violation of state and federal nondiscrimination laws at state facilities."

13       124. Plaintiff AULD received notice of the First Level denial of his appeal on

14   February 28, 2006. He filed his Second Level appeal on March 12, 2006; in his appeal,

15   he notes that EOP inmates at CMF have 30 hours available during weekdays to

16   participate in education programs offered to the non-disabled, non-EOP inmate

17   population, but instead are left to "stagnat[e] in cells most of each day Monday through

18   Friday," and are "barred from access to education programs."

19       125. Plaintiff AULD's Second Level appeal was denied on April 6, 2006. On April

20   15, 2006, Plaintiff AULD filed a Director's Level appeal contending that "prison officials

21   have violated his rights under Title II of the ADA by denying him equal access to

22   education programs offered to other, non-EOP inmates at CMF."

23       126. Plaintiff AULD's Director's Level appeal was denied on June 20, 2006.

24                              **Plaintiff MUELLER**

25       127. Plaintiff MUELLER has satisfied all exhaustion requirements, including

26   Director's Level appeals, for issues raised in this lawsuit. His appeal regarding the

27   exclusion of inmates with psychiatric disabilities from work and education programs

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1   have been denied by CDCR officials.  His appeal regarding the automatic addition of

2   four points to his classification score because of his "diagnosis of mental illness" is

3   ongoing and will be completed shortly.

4      128.  Plaintiff MUELLER was assigned to the EOP program on November 16, 2005.

5   On November 23, 2005, he was removed from his position as a Library Clerk in the

6   Central Library at RJD because of his participation in the EOP.  Plaintiff MUELLER

7   filed an 1824 appeal challenging this decision on December 5, 2005.

8      129.  Plaintiff MUELLER's appeal of his removal from his Library Clerk position

9   was denied at the First Level on March 17, 2006.  Plaintiff MUELLER then appealed this

10  response, but his appeal was also denied at the Second Level on April 25, 2006.  The

11  reviewer explained that Plaintiff MUELLER's "current EOP level of care does not allow

12  his placement in the Central Library . . . . The inmate will be eligible to apply for his old

13  position in the Central Library once his level of care is downgraded to CCCMS."

14     130.  On May 5, 2006 Plaintiff MUELLER appealed the Second Level decision,

15  asking that he be returned to his job in the Central Library and that "all programs be

16  unsegregated . . . as God does not reconize [sic] the difference between EOP, & CCCMS,

17  & G.P.'s."  His appeal was denied at the Director's Level on June 13, 2006 because

18  Plaintiff MUELLER "requires the EOP level of care and is not eligible to work in the

19  Central Library while in the EOP."

20     131.  In April 2006, Plaintiff MUELLER also appealed the automatic addition of four

21  extra points to his classification score because of his "diagnosis of mental illness."  He

22  has yet to receive a response to this appeal.

23                              **Plaintiff HUNLEY**

24     132.  Plaintiff HUNLEY has satisfied all exhaustion requirements, including

25  Director's Level appeals, for issues raised in this lawsuit.  His appeals regarding the

26  exclusion of inmates with psychiatric disabilities using heat-sensitive medications, who

27  are required to remain in their cells during "heat alerts," from recreational and other

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  programs have been repeatedly denied and/or inappropriately screened out by CDCR

2  officials.

3      133.  On May 23, 2004, Plaintiff HUNLEY filed a timely 1824 appeal regarding the

4  discriminatory denial of access to recreational programs to inmates who use heat-

5  sensitive medications during "heat alerts."  Plaintiff HUNLEY's appeal states that having

6  "no established alternative program for heat alert inmates . . . is a blatant form of

7  discrimination based on disability," because other inmates are allowed access to

8  recreational programs during heat alerts.

9      134.  Plaintiff HUNLEY's 1824 appeal was denied at the First Level of review on

10  June 15, 2004 because the reviewer determined that he was "not an ADA member," and

11  his 1824 was "not an ADA issue."  The reviewer advised Plaintiff HUNLEY to submit a

12  602 appeal regarding this issue.

13      135.  Plaintiff HUNLEY filed a 602 appeal regarding his segregation and exclusion

14  from recreational programs during heat alerts.  This appeal was denied at the Second

15  Level on August 5, 2004.

16      136.  Plaintiff HUNLEY requested Director's Level review of the Second Level

17  decision.  On March 2, 2005, his appeal of the Second Level decision was denied at the

18  Director's Level, where the reviewer stated that "heat alert policies do not fall under the

19  requirements of the ADA or [the *Armstrong v. Davis* Court Ordered Remedial Plan]."

20                          **Plaintiff COX**

21      137.  Plaintiff COX has satisfied all exhaustion requirements, including Director's

22  Level appeals, for issues raised in this lawsuit.  His appeals regarding the exclusion of

23  inmates with psychiatric disabilities from work and education programs have been

24  repeatedly denied and/or inappropriately screened out by CDCR officials.

25      138.  During 2004 and 2005, Plaintiff COX was assigned to the SCC, which functions

26  as "the [CDCR's] center for training staff and inmates in firefighting techniques" and for

27  work in CDCR Fire Camps.  *See* CDCR, Sierra Conservation Center, *at*

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    http://www.cdcr.ca.gov/Visitors/fac_prison_SCC.html (visited July 25, 2006).  He was

2    transferred to CIM on December 1, 2005.

3        139.  On December 26, 2005 Plaintiff COX filed a timely 1824 appeal challenging his

4    exclusion from fire camp "due to [his] medical problem[s]," including having a

5    psychiatric disability and receiving mental health care through the CCCMS program.

6        140.  Plaintiff COX's appeal was denied at the First Level on January 20, 2006.

7    Plaintiff COX appealed this decision on January 25, 2006, but his appeal was denied at

8    the Second Level on February 6, 2006.  The Second Level Reviewer expressly indicated

9    that Plaintiff COX did not meet "camp criteria due to his . . . on-going mental health

10   monitoring and treatment needs," including his use of psychotropic medications.

11       141.  Plaintiff COX sought Director's Level review of this decision on February 14,

12   2006.  His appeal was denied at the Director's Level on March 21, 2006; the reviewer

13   noted that Plaintiff COX "receives the CCCMS level of care" and that "such type of care

14   is not available in fire camps."

15                              **Plaintiff THOMAS**

16       142.  Plaintiff THOMAS has satisfied all exhaustion requirements for issues raised in

17   this lawsuit.  His appeal regarding the exclusion of inmates with psychiatric disabilities

18   from work and education programs has thus far been denied by CDCR officials.

19       143.  On April 6, 2006 Plaintiff THOMAS filed a timely 1824 appeal stating that he

20   has a mental health disability, that he receives treatment at the "EOP/CCCMS" level of

21   care, and that he has been "excluded from participation in programs and services which

22   are available to non-EOP/CCCMS inmates," including employment and PIA

23   opportunities.  He also challenged as discrimination his "being forced to receive a

24   shortened recreational period and access to Law Library than non-EOP/CCCMS

25   inmates."

26       144.  On May 1, 2006, Plaintiff THOMAS' appeal was denied at the First Level of

27   Review, because "at the EOP level of care, you will not be assigned to a work

28

1   assignment." Plaintiff THOMAS was deemed ineligible for work assignments such as

2   Library Clerk, "until such time your level of care is reduced to CCCMS." The reviewer

3   also noted that the procedure at RJD's Facility One is for EOP inmates to access the law

4   library is to notify their Housing Unit Officer who in turn calls the law library for

5   permission to "ducat" the inmate for the library during their yard hours.

6      145. Plaintiff THOMAS appealed this adverse decision to the Second Level. In his

7   appeal, Plaintiff THOMAS noted that EOP inmates at RJD get far less recreational

8   time—as little as 90 minutes a week—and far less law library time—approximately one-

9   third as much—than do inmates in the general population, who are not required to use

10  their yard time for visits to the law library.

11     146. Plaintiff THOMAS is still awaiting a response from CDCR officials to his

12  Second Level appeal. Plaintiff THOMAS will complete his appeal of these issues

13  through the Director's Level, if necessary, as soon as he receives his response to the

14  Second Level appeal.

15                     **Plaintiff STAFFORD**

16     147. Plaintiff STAFFORD has satisfied all exhaustion requirements, including

17  Director's Level appeals, for issues raised in this lawsuit. His appeals regarding the

18  exclusion of inmates with psychiatric disabilities from educational, recreational, and

19  religious programs have been repeatedly denied by CDCR officials.

20     148. On June 14, 2006, Plaintiff STAFFORD, who is an EOP inmate, filed a timely

21  1824 appeal challenging his exclusion from programs available to non-EOP inmates,

22  including the law library, yard, dayroom, and religious services, "due solely to my

23  psychiatric disability." He requested that access to these programs be provided "to the

24  same extent that these programs are available to non-EOP inmates."

25     149. Plaintiff STAFFORD's 1824 appeal was deemed "partially granted" and

26  returned to him on August 10, 2006. Plaintiff STAFFORD appealed this decision to the

27  Second Level on August 14, 2006.

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    150.  Plaintiff STAFFORD's Second Level appeal was deemed "partially granted" on

2    August 18, 2006.  The appeal decision noted that "EOP inmates currently are not

3    assigned to work/education assignments."  Plaintiff STAFFORD appealed to the

4    Director's Level on August 27, 2006.  This appeal was denied on September 28, 2006.

5                                      **Plaintiff LOVELACE**

6    151.  Plaintiff LOVELACE has satisfied all exhaustion requirements for issues raised

7    in this lawsuit.  His appeals regarding the exclusion of inmates with psychiatric

8    disabilities from work and other programs have been repeatedly denied and/or screened

9    out by CDCR officials.

10   152.  On April 6, 2006 Plaintiff LOVELACE filed a timely 1824 appeal stating that

11   "[s]ince I have been on heat meds, I am excluded from . . . programs available to inmates

12   not on heat meds."  Plaintiff LOVELACE, who identified his level of mental health care

13   as CCCMS, sought "access to work, education, work furlough, PIA, and vocational

14   programs."

15   153.  On May 18, 2006 Plaintiff LOVELACE's appeal was "partially granted" at the

16   First Level of review; although the reviewer noted that "Inmates listed as CCCMS/EOP

17   are not assigned in the PIA, Central Kitchen, Facility Culinary, or the Facility Yard

18   Crew," the appeal was "partially granted" because Plaintiff LOVELACE was placed on

19   the Support Service Waiting List ("SSWL") and "will receive a job when one becomes

20   available."

21   154.  Plaintiff LOVELACE received the First Level decision on his 1824 appeal on

22   May 29, 2006.  He sought Second Level review of this decision on June 14, 2006.

23   155.  Plaintiff LOVELACE is still awaiting a response from CDCR officials to his

24   Second Level appeal.  Plaintiff LOVELACE will complete his appeal of these issues

25   through the Director's Level, if necessary, as soon as he receives his response to the

26   Second Level appeal.

27                                      **Plaintiff DANIELS**

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    156. Plaintiff DANIELS has satisfied all exhaustion requirements, including

2    Director's Level appeals, for issues raised in this lawsuit. His appeal regarding the

3    exclusion of inmates with psychiatric disabilities from work and recreational programs

4    have been repeatedly denied by CDCR officials.

5    157. On January 8, 2006, Plaintiff DANIELS filed a timely 1824 appeal stating that

6    he has a psychiatric disability covered under the ADA, as indicated by his participation in

7    the EOP, and requesting that jobs outside the EOP program unit at LAC be made

8    available to him.

9    158. Plaintiff DANIELS' 1824 appeal was denied at the First Level on January 18,

10    2006. The First Level reviewer's response states that "inmates housed in EOP are not

11    assigned work positions outside of the program." Plaintiff DANIELS was notified of the

12    First Level denial on January 22, 2006.

13    159. Plaintiff DANIELS appealed to the Second Level on February 1, 2006. His

14    Second Level appeal was denied on March 24, 2006.

15    160. Plaintiff DANIELS appealed to the Director's Level on March 29, 2006. In his

16    appeal he reiterates that he is "being barred because of [his] disability."

17    161. Plaintiff DANIELS' Director's Level appeal was denied on July 11, 2006.

18    **Plaintiff GRAY**

19    162. Plaintiff GRAY has satisfied all exhaustion requirements, including Director's

20    Level appeals, for issues raised in this lawsuit. His appeal regarding the exclusion of

21    inmates with psychiatric disabilities from rehabilitation and other programs has been

22    repeatedly denied and/or screened out by CDCR officials.

23    163. On May 15, 2006, Plaintiff GRAY filed a timely 1824 appeal challenging his

24    exclusion from programs and services available to non-EOP inmates, including the

25    Substance Abuse Program (SAP). Stating that "EOP inmates are barred from SAP

26    placement," and citing California Code of Regulations, tit. 5, § 3040.1(c)(6), CDCR

27    officials denied Plaintiff GRAY's appeal at the First Level of Review on June 5, 2006

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    164.  Plaintiff GRAY filed his Second Level appeal on June 6, 2006, contending that

2    he "should be able to have access to rehabilitation groups" to "address [his] issues of

3    drugs and mental illness."  On June 19, 2006, Plaintiff GRAY's appeal was "partially

4    granted."  The Second Level reviewer noted that GRAY was "not eligible for Minimum

5    Support Facility (MSF)/Camp/Community Correctional Facility (CCF)/California

6    Community Re-Entry Center (CCRC)/Restitution Center (RC)/ or SAP due to [his] PSY

7    (EOP) status."  Nevertheless, GRAY's appeal was "partially granted" in that "[y]ou will

8    have access to programs and services available to non-EOP inmates, as long as you can

9    meet the essential functions of the job . . . . You will not be allowed to participate in the

10   SAP."

11   165.  Plaintiff GRAY filed a Director's Level appeal challenging his continuing

12   exclusion from the SAP on June 28, 2006.  This appeal was denied on August 2, 2006.

13   **Plaintiff WILLIAMS**

14   166.  Plaintiff WILLIAMS has satisfied all exhaustion requirements, including

15   Director's Level appeals, for issues raised in this lawsuit.  His appeal regarding the

16   failure of CDCR officials to provide him with accommodations during the appeal process

17   has been repeatedly denied and/or screened out by CDCR officials, and demonstrates that

18   the appeal process itself is a CDCR program or activity that is inaccessible to inmates

19   with psychiatric disabilities.  He has also been retaliated against for attempting to use the

20   appeals process to vindicate his rights.

21   167.  On September 21, 2005, Plaintiff WILLIAMS filed a timely 1824 appeal stating

22   that he did not understand the process for filing appeals, because his "perception of the

23   prisons [sic] rules for filing inmate appeals is incompetent, & this is due to my disability,

24   which the appeals coordinator has discriminated against[.]"  He asked for assistance from

25   CDCR officials "authorized and trained in the area of inmate appeals" so that his appeals

26   could be made compliant with CDCR policies.

27   168.  Plaintiff WILLIAMS' appeal was "partially granted" at the First Level on

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  March 29, 2006. Plaintiff WILLIAMS submitted his Second Level appeal on April 3,

2  2006; the Second Level appeal was denied on May 25, 2006.

3      169. Plaintiff WILLIAMS filed his Director's Level appeal regarding the CDCR's

4  failure to ensure that the appeals process was accessible on May 27, 2006. This appeal

5  was denied on August 22, 2006.

6      170. On October 12, 2005, Plaintiff WILLIAMS filed a timely 602 appeal alleging

7  that SAC officials had decided to reassign him from the EOP to the CCCMS because he

8  "process[es] a lot of paperwork." He alleged that the basis for the reassignment was not

9  related to his mental health treatment, but was instead "retaliation due to [his] being

10  functional enough to relie [sic] & depend on" the CDCR's administrative complaint

11  procedures. He requested that he be free from any reprisals or retaliation based upon his

12  use of the complaint procedure.

13      171. Plaintiff WILLIAMS' appeal was designated as "partially granted," and he

14  received notification of this decision on November 9, 2005. Plaintiff WILLIAMS filed a

15  Second Level appeal of his issue, which was also "partially granted," on January 9, 2006.

16      172. On January 19, 2006, Plaintiff WILLIAMS filed a Director's Level appeal in

17  which he stated that CDCR officials had informed him that his "massive paperwork" was

18  the basis for his reassignment from EOP to CCCMS. His Director's Level appeal was

19  denied on March 27, 2006.

20      173. Plaintiff WILLIAMS also filed a group 602 appeal, dated October 24, 2005, on

21  behalf of approximately 56 other EOP inmates alleging that they faced retaliation,

22  including inappropriate dismissal from the EOP, for making complaints related to mental

23  health care or discrimination. This appeal was deemed "partially granted" at the First

24  Level of review. Plaintiff WILLIAMS appealed this decision to the Second Level; this

25  appeal was denied on February 28, 2006.

26      174. Plaintiff WILLIAMS, who received four additional classification points at entry

27  to the CDCR for having a "diagnosis of mental illness," has also filed a timely 1824

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    appeal challenging this practice, but has yet to receive a response from CDCR officials.

2

3                                   **Plaintiff D'ANGELO**

4        175.  Plaintiff D'ANGELO has satisfied all exhaustion requirements, including

5    Director's Level appeals, for issues raised in this lawsuit.  His appeals regarding the

6    exclusion of inmates with psychiatric disabilities from education and rehabilitation

7    programs have been repeatedly denied and/or screened out by CDCR officials.

8        176.  Plaintiff D'ANGELO was placed in the EOP at CMC on October 4, 2005.  After

9    his assignment to the EOP, he was not permitted to participate in substance abuse

10   rehabilitation programming through the SAP.  On October 18, 2005, he was approved for

11   transfer to an EOP unit at either RJD or CMF.

12       177.  On October 20, 2005 Plaintiff D'ANGELO filed a timely 1824 appeal

13   challenging his exclusion from the SAP and asking that he not be "discriminated

14   [against] because of his diagnosis" of a psychiatric disability.

15       178.  Plaintiff D'ANGELO's 1824 appeal was denied on October 28, 2005.  The

16   reviewer stated that Plaintiff D'ANGELO's complaint was "not an ADA issue, rather, a

17   regular CDCR-602 appeal," and explained that under Title 15 of the California Code of

18   Regulations, EOP inmates were not allowed to participate in a SAP.  The appeal was

19   characterized as "partially granted" because Plaintiff D'ANGELO would receive

20   consideration for SAP "should his Level of Care be elevated from EOP in the future."

21       179.  Plaintiff D'ANGELO sought Second Level review of this decision on

22   November 9, 2005, stating that "the EOP process was used to deny me SAP

23   participation."  This appeal was "partially granted" on November 22, 2005 because,

24   although Plaintiff D'ANGELO "[did] not currently meet the criteria to be placed in a

25   SAP due to your current MHSDS Level of Care (LOC) as an EOP" he would be

26   evaluated for SAP placement "if in the future, your LOC should decrease from EOP."

27       180.  Plaintiff D'ANGELO appealed to the Director's Level in December 2005.

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    alleging that he was "being moved around as punishment . . . to destroy my SAP

2    eligibility." This appeal was denied on January 30, 2006. Afterward, Plaintiff

3    D'ANGELO was transferred to RJD.

4      181. Plaintiff D'ANGELO's repeated requests for assistance with appeals—including

5    sending messages to CDCR officials as attachments to appeals pleading for help with the

6    appeals filing process—clearly indicate that the CDCR appeals process is inaccessible to

7    him. *All* of the CDCR's policies, including its inmate appeals policies, must "address the

8    needs of prisoners . . . who have problems understanding complex information or

9    communicating through the spoken or written word." *Armstrong v. Davis*, 275 F.3d 849,

10    862 (9th Cir. 2001). Because the CDCR's appeals policies do not address Plaintiff

11    D'ANGELO's communication and comprehension needs, or those of similarly situated

12    inmates with psychiatric disabilities, they violate the ADA and the Rehabilitation Act.

13      182. Additionally, although he is currently on parole, Plaintiff D'ANGELO's claims

14    regarding the systemic exclusion of EOP and CCCMS inmates from rehabilitation and

15    other programs present a live controversy "capable of repetition, yet evading review."

16    *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999) (citing *Vitek v. Jones*, 445

17    U.S. 480, 486-87 (1980)). Indeed, there is a significant likelihood that Plaintiff

18    D'ANGELO will return to the CDCR system, and will continue to experience

19    discrimination on the basis of his psychiatric disability in the EOP or in the CCCMS –

20    either at CMC, RJD, or another CDCR institution.

21                       **Plaintiff SCHOOLEY**

22      183. Plaintiff SCHOOLEY has satisfied all exhaustion requirements for issues raised

23    in this lawsuit. His attempts to appeal the automatic addition of four points to his

24    classification score because of his "diagnosis of mental illness" have been thwarted by

25    the actions of CDCR officials in placing Plaintiff SCHOOLEY in an "administrative

26    segregation" unit, involving extremely limited contact with prison officials and other

27    inmates, for extended periods of time, and because of his frequent transfers between

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    different CDCR facilities.

2        184. Plaintiff SCHOOLEY filed a timely 1824 appeal on March 9, 2006 while at

3    CMC. His appeal challenged the CDCR's ongoing policy of automatically adding four

4    points to his classification score "simply because I have a psychiatric disability." After

5    he filed his appeal, he was placed in administrative segregation because he protested a

6    housing assignment to an upper bunk, which was in conflict with the opinion of CDCR

7    medical officials restricting him to a lower bunk because of his physical disability.

8    Although his assignment to administrative segregation was reversed "in the interest of

9    justice" on April 30, 2006, Plaintiff SCHOOLEY was required to remain in

10   administrative segregation pending review of his housing assignment by his

11   "classification committee" in June 2006. In the meantime, on March 27, 2006 CMF

12   officials screened out Plaintiff SCHOOLEY's 1824 appeal on the ground that there was

13   "too great a time lapse" between the addition of four points to his classification score and

14   his March 9 appeal. Plaintiff SCHOOLEY was notified that his appeal had been

15   screened out only after the deadline for him to appeal the decision to the Second Level of

16   review.

17       185. Plaintiff SCHOOLEY was transferred to ASP in June 2006. On June 12, 2006,

18   he filed another timely 602 appeal regarding the ongoing harm he suffers due to the

19   automatic addition of four points to his classification score. He filed an 1824 appeal on

20   the same issue on July 5, 2006. On July 10, 2006, his appeals were returned to him after

21   being "screened out," again because there was "too great a time lapse" between his

22   appeal and the addition of the extra points to his classification score.

23       186. Plaintiff SCHOOLEY continues to suffer ongoing discrimination because of the

24   CDCR's illegal policy of automatically adding four points to the classification score of

25   inmates with a "diagnosis of mental illness," which subjects him to higher security levels

26   and fewer opportunities for work, educational, and other programming. Plaintiff

27   SCHOOLEY's "four-point" claim regarding presents a live controversy "capable of

28

Page 35

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    repetition, yet evading review," whether he is assigned to CMF, CMC, ASP, or another

2    CDCR institution.  Additionally, the defendant officials' own actions inhibiting Plaintiff

3    SCHOOLEY's exhaustion of his appeals estop them from arguing his failure to exhaust

4    as a defense.  *See Hemphill, supra,* 380 F.3d at 688.

5    **Additional Allegations Regarding Administrative Exhaustion**

6        187.  Plaintiffs' appeals have placed the defendant prison officials on notice of the

7    issues raised in this lawsuit, *see Massie v. Early,* No. 1:00CV5248OWW LJO P, 2005

8    WL 2105304, at *3 (E.D. Cal. Aug. 31, 2005), "'afford[ing them] time and opportunity

9    to address [Plaintiffs'] complaints internally.'"  *Woodford v. Ngo,* 126 S. Ct. 2378, 2387

10   (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 525 (2002)).  Prior efforts by other

11   inmates to challenge the MHSDS and EOP policies at issue herein using the internal

12   grievance procedures have similarly placed the defendant prison officials on notice, and

13   have been similarly fruitless.  For example, inmate David W. Wilson, Inmate No. K-

14   66474, has filed 602 appeals in 2004 and 2005 regarding the policies that exclude EOP

15   inmates from prison programs available to non-EOP inmates.  These 602 appeals were

16   repeatedly screened out.  In fact, on March 15, 2005, inmate Wilson received from the

17   appeals office all of his documentation with the notation "REJECTED – DO NOT

18   RESUBMIT."

19       188.  At least two in pro per lawsuits have been filed challenging the policies of the

20   CDCR which exclude EOP inmates from education, vocational, and other programs and

21   activities available to non-EOP inmates.  *See Wilson v. Woodford,* Case No. CIVS-05-

22   0876-LKK-JFM (E.D. Cal.), and *Ashanti v. California Medical Facility State Prison,*

23   Case No. 2:06-cv-01304-DFL-DAD (E.D. Cal.).

24       189.  Further, as Plaintiffs' experiences illustrate, the CDCR's system for processing

25   601 and 1824 appeals works an extreme hardship on inmates with psychiatric disabilities,

26   many of whom require assistance with navigating the myriad procedural rules imposed

27   by the CDCR.  Plaintiffs and other similarly situated inmates with psychiatric disabilities

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1  are left to comply with these filing rules and deadlines without any assistance, regardless

2  of whether their disabilities affect their ability to process information and comply with

3  deadlines.  At other times, they face retaliation for attempting to use the administrative

4  appeals process to vindicate their rights.  As such, the CDCR's administration of its

5  appeals process renders it inaccessible to inmates with psychiatric disabilities, including

6  Plaintiffs.

7      190.  Also, as Plaintiffs' experiences demonstrate, CDCR officials at various

8  institutions across the state regularly "screen out" the 1824 appeals of inmates with

9  psychiatric disabilities as "not an ADA issue."  Plaintiffs and similarly situated inmates

10  with psychiatric disabilities are thus denied access to the relatively streamlined procedure

11  for processing 1824 appeals afforded to inmates with other disabilities.

12      191.  The CDCR and its agents have had repeated and ample notice of the issues

13  raised by this lawsuit, and have had many opportunities over several years to consider

14  these issues through the administrative process.  There can be no dispute that further

15  administrative efforts would be futile, and that judicial consideration is appropriate.

### CLASS ACTION ALLEGATIONS

17      192.  Plaintiffs bring this action on behalf of themselves and on behalf of a class of all

18  those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil

19  Procedure.

20      193.  Plaintiffs seek to represent a class of all present and future California inmates of

21  the CDCR with psychiatric conditions that are disabilities as defined by the ADA and the

22  Rehabilitation Act who are excluded and/or screened out from any prison program,

23  service, or activity on the basis of their assignment to or participation in the MHSDS

24  program, including the EOP and the CCCMS.

25      194.  The class is so numerous that joinder of all members is impractical.  There are

26  thousands of present and future inmates assigned to MHSDS programs throughout

27  California who are subject to the systemwide, statewide policies, practices, and

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   procedures complained of herein.  Moreover, putative class members are not capable of

2   being identified at this time, as the proposed class includes future inmates assigned to the

3   MHSDS, the EOP, and the CCCMS.  The class is constantly in flux, with inmates being

4   paroled and new inmates being incarcerated.

5       195.  Common questions of law and fact predominate, and include whether inmates

6   assigned to the MHSDS are being excluded and/or screened out from any prison

7   program, service, or activity on the basis of disability.

8       196.  The claims of Plaintiffs are typical of the claims of the other putative class

9   members.  Plaintiffs have been unnecessarily excluded from core CDCR educational,

10  vocational, and employment activities and programs on the basis of their assignment to

11  the MHSDS and the EOP or the CCCMS.  This is the same injury that members of the

12  proposed class have suffered, are suffering and, unless this Court grants relief, will

13  continue to suffer.  Plaintiffs are members of the proposed class in that they are current

14  CDCR inmates assigned to the MHSDS who have been subjected to disability-based

15  discrimination.

16      197.  Plaintiffs will fairly and adequately represent and protect the interests of the

17  class.  Plaintiffs intend to prosecute this action rigorously in order to secure remedies for

18  the entire class.  Counsel of record for Plaintiffs are experienced in state and federal civil

19  rights litigation and class actions, including systemic litigation challenging prison

20  conditions and disability discrimination.

21      198.  Defendants have acted or refused to act on grounds generally applicable to the

22  class, thereby making appropriate final declaratory and injunctive relief with respect to

23  the class as a whole under Federal Rule of Civil Procedure 23(b)(2).

24                          **FIRST CAUSE OF ACTION**
                        Disability-Based Discrimination in Violation of
25                      Title II of the Americans with Disabilities Act of 1990
                                Against All Defendants
26
        199.  Plaintiffs incorporate by reference as though fully set forth herein paragraphs 1
27  through 198 of this Complaint.

28

1      200.  Title II of the ADA provides that "no qualified individual with a disability shall,

2  by reason of such disability, be excluded from participation in or be denied the benefits

3  of the services, programs, or activities of a public entity, or be subjected to discrimination

4  by any such entity." 42 U.S.C. § 12132.  By no later than July 26, 1992, public entities

5  were required to complete an evaluation of its services, policies, and practices, and the

6  effects thereof on persons with disabilities, and to make any modifications necessary to

7  ensure that the requirements of Title II are met.  28 C.F.R. § 35.105.

8      201.  In providing any aid, benefit or service, a public entity "may not . . . [d]eny a

9  qualified individual with a disability the opportunity to participate in or benefit from the

10  aid, benefit or service," "[a]fford a qualified individual with a disability an opportunity to

11  participate in or benefit from the aid, benefit, or service that is not equal to that afforded

12  others," "[p]rovide a qualified individual with a disability with an aid, benefit, or service

13  that is not as effective in affording equal opportunity . . . as those provided to others," or

14  "[o]therwise limit a qualified individual with a disability in the enjoyment of any right,

15  privilege, advantage, or opportunity enjoyed by others[.]" 28 C.F.R. § 35.130(b)(1)(i),

16  (ii), (iii), (vi).  A public entity may not "[d]eny a qualified individual with a disability the

17  opportunity to participate as a member of planning or advisory boards." 28 C.F.R. §

18  35.130(b)(1)(vi).

19      202.  Further, "[a] public entity may not . . . utilize criteria or methods of

20  administration . . . [t]hat have the effect of subjecting qualified individuals with

21  disabilities to discrimination on the basis of disability[.]" 28 C.F.R.

22  § 35.130(b)(3)(i).  Nor may a public entity "impose or apply eligibility criteria that screen

23  out or tend to screen out an individual with a disability or any class of individuals with

24  disabilities from fully and equally enjoying any service, program, or activity, unless such

25  criteria can be shown to be necessary[.]" 28 C.F.R.

26  § 35.130(b)(8).  A public entity must "make reasonable modifications in policies,

27  practices, or procedures when the modifications are necessary to avoid discrimination on

28

1    the basis of disability, unless the public entity can demonstrate that making the

2    modifications would fundamentally alter the nature of the service, program, or activity."

3    28 C.F.R. § 35.130(b)(7). Finally, "[a] public entity shall administer services, programs,

4    and activities in the most integrated setting appropriate to the needs of qualified

5    individuals with disabilities." 28 C.F.R. § 35.130(d).

6    203. Defendants have violated the ADA and its regulations by, *inter alia*: (a)

7    denying Plaintiffs and other inmates similarly situated the opportunities and benefits of

8    the programs, services, and activities offered by the Defendants to other, nondisabled

9    inmates; (b) denying Plaintiffs and other inmates similarly situated equal and/or equally

10   effective access to vocational, educational, employment, recreational, and other

11   opportunities on the basis of disability; (c) utilizing systemwide policies and practices

12   that have a disparate impact on, and which screen out or tend to screen out, inmates with

13   psychiatric disabilities, including Plaintiffs; (d) utilizing methods of administration that

14   have the effect of discriminating against inmates with psychiatric disabilities, including

15   Plaintiffs; (e) failing to make reasonable modifications in policies, practices, or

16   procedures when the modifications are necessary to avoid discriminating against inmates

17   with psychiatric disabilities, including Plaintiffs; (f) failing to complete and implement an

18   adequate self-evaluation plan with respect to inmates with psychiatric disabilities; (g)

19   failing to take prompt and equitable steps to remedy their discriminatory conduct; and (h)

20   by otherwise segregating, excluding, and discriminating against inmates with psychiatric

21   disabilities, including Plaintiffs.

22   204. Defendants' unlawful actions were and continue to be intentional, willful,

23   malicious, and/or done with reckless disregard to the right of Plaintiffs and other inmates

24   similarly situated to be free from discrimination based on disability.

25   205. Plaintiffs are entitled to declaratory relief, injunctive relief, and attorneys' fees

26   and costs.

27   **SECOND CAUSE OF ACTION**
     Disability-Based Discrimination in Violation of

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Section 504 of the Rehabilitation Act of 1973
Against All Defendants

1

2      206. Plaintiffs incorporate by reference as though fully set forth herein paragraphs 1

3   through 205 of this Complaint.

4      207. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified

5   individual with a disability . . . shall, solely by reason of her or his disability, be excluded

6   from the participation in, be denied the benefits of, or be subjected to discrimination

7   under any program or activity receiving Federal financial assistance." 29 U.S.C. §

8   794(a). Nearly 30 years ago, recipients of federal financial assistance were required to

9   complete a self-evaluation of their programs and activities, and make necessary changes

10  to ensure that such programs and activities were accessible to and usable by persons with

11  disabilities. *See, e.g.,* 28 C.F.R. § 42.521; 45 C.F.R. § 84.22.

12     208. As detailed herein, the Defendants have violated Section 504 and its regulations

13  by unnecessarily segregating and discriminating against inmates with psychiatric

14  disabilities, including Plaintiffs, and by systemically excluding such inmates from a

15  broad range of basic vocational, educational, employment, recreational, and other

16  programs. The Defendants have also failed to complete and implement an adequate self-

17  evaluation plan with respect to inmates with psychiatric disabilities.

18     209. Defendants' unlawful actions were and continue to be intentional, willful,

19  malicious, and/or done with reckless disregard to the right of Plaintiffs and other inmates

20  similarly situated to be free from discrimination based on disability.

21     210. Plaintiffs are entitled to declaratory relief, injunctive relief, and attorneys' fees

22  and costs.

23              **DECLARATORY RELIEF ALLEGATIONS**

24     211. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 210,

25  as though fully set forth herein.

26     212. A present and actual controversy exists between Plaintiffs and Defendants

27  concerning their rights and respective duties. Plaintiffs contend that the Defendants have

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    violated and continue to violate their rights, and the rights of other inmates similarly

2    situated, under the ADA, Section 504, and Section 11135 of the California Government

3    Code. ·Plaintiffs are informed and believe, and thereon allege, that the Defendants deny

4    these allegations. Declaratory relief is therefore necessary and appropriate.

5       213. Plaintiffs seek a judicial declaration of the rights and duties of the respective

6    parties

7                 **INJUNCTIVE RELIEF ALLEGATIONS**

8       214. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 213,

9    as though fully set forth herein.

10      215. No plain adequate, or complete remedy at law is available to Plaintiffs to redress

11    the wrongs alleged herein.

12      216. If the court does not grant the injunctive relief sought herein, Plaintiffs will be

13    irreparably harmed.

14                   **PRAYER FOR RELIEF**

15       1. For an order enjoining the Defendants from engaging in the unlawful

16    discrimination complained of herein;

17       2. For an order granting such other injunctive relief as may be appropriate;

18       3. For declaratory relief;

19       4. For reasonable attorneys' fees and costs of suit, including expert fees, pursuant

20    to 42 U.S.C. § 12205, 29 U.S.C § 2617(a)(3), Cal. Civ. Code §§ 52(a), 54.3(a), 55, Cal.

21    Civ. Proc. Code § 1021.5, and other laws; and

22       5. For such other and further relief as the Court deems just and proper.

23

24    Dated: October 20, 2006

25

26                 By:    /s/Claudia Center

27                      CLAUDIA CENTER
                      LEWIS BOSSING

28

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**