# EXHIBIT A

ORIGINAL
FILE

PRISON LAW OFFICE
DONALD SPECTER #83925
STEVEN FAMA #99641
ALISON HARDY #135966
BRITTANY GLIDDEN #224658
General Delivery
San Quentin, CA 94964
Telephone: (415) 457-9144
Facsimile: (415) 457-9151

PILLSBURY WINTHROP
SHAWN HANSON #109321
CAROLINE MITCHELL #143124
50 Fremont Street
San Francisco, CA 94105
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Attorneys for Plaintiffs

BINGHAM McCUTCHEN
WARREN E. GEORGE #53588
Three Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

BINGHAM McCUTCHEN
JOHN MORRISEY #122194
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

05 NOV 13  PM
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

Plaintiffs

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

No. C01-1351 TEH

NOTICE OF MOTION AND
MOTION TO CONVENE A THREE
JUDGE PANEL TO
LIMIT PRISON POPULATION

Hearing
Date:    TBD
Time:    TBD
Dept:    Courtroom 12, 19th Floor
Judge:   Hon. Thelton E. Henderson

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1. The Overcrowding Crisis Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2. Overcrowded Conditions Result in Unconstitutional Medical Care . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    THE PLRA'S REQUIREMENTS FOR CONVENING A
    THREE JUDGE PANEL ARE SATISFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.        Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        B.        This Court Has Previously Entered an Order For
                    Lesser Intrusive Relief That Has Failed to Remedy the
                    Deprivation of a Federal Right . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        C.        The Defendants Have Had A Reasonable Amount of
                    Time to Comply With the Court's Orders . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.          i

# TABLE OF AUTHORITIES

## CASES

Alberti v. Sheriff of Harris County, Texas, 406 F. Supp. 649 (S.D. Tex. 1975) ............. 13

Benjamin v. Malcolm, 564 F. Supp. 668 (S.D.N.Y. 1983) ............................................... 13

Carty v. Farrelly, 957 F. Supp. 727 (D.V.I. 1997) .......................................................... 13

Essex County Jail Inmates v. Amato, 726 F. Supp. 539 (D.N.J. 1989) ........................... 13

Grubbs v. Bradley, 552 F. Supp. 1052 (M.D. Tenn, 1982) ....................................... 13, 14

Harris v. Angelina County, Tex., 31 F.3d 331 (5th Cir. 1994) ........................................ 12

Inmates of Allegheny County Jail v. Wecht, 565 F. Supp. 1278 (W.D. Pa. 1983) .......... 13

Inmates of Occoquan v. Barry, 717 F. Supp. 854 (D.D.C. 1989) ................................... 15

Inmates of Occoquan v. Barry, No. 86-2128 JLG ........................................................... 15

Palmigiano v. Garrahy, 443 F. Supp. 956 (D.R.I. 1977) ................................................ 17

Palmigiano v. Garrahy, 639 F. Supp. 244 (D.R.I. 1986) .......................................... 12, 19

Roberts v. County of Mahoning, No. 4:03-cv-02329 DDD ............................................. 15

Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982) ............................................................... 13

Vazquez v. Carver, 729 F. Supp. 1063 (E.D. Pa. 1989) ................................................. 13

Wellman v. Faulkner, 715 F.2d 269 (7th Cir. 1983) ....................................................... 12

## STATUTES

28 U.S.C. § 2284 ........................................................................................................ 14,19

18 U.S.C. § 3626(a) ................................................................................................. 3, 14, 15

18 U.S.C. § 3626(g) ......................................................................................................... 14

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger,* 01-1351 T.E.H.                        ii

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, on a date to be determined by this Court, in the

3  Courtroom of the Honorable Thelton E. Henderson, located at 450 Golden Gate Ave.,

4  Courtroom 12, 19th Floor, Plaintiffs Marciano Plata, *et al.*, will and hereby do move the

5  Court for an Order to Convene a Three Judge Panel to Limit the Prison Population in this

6  action.

7      Parallel motions to convene three judge panels are being filed this week in

8  *Coleman v. Schwarzenegger*, No. Civ S-90-0520 LKK-JFM and *Armstrong v.*

9  *Schwarzenegger*, No. C 94-2307 CW.

10      This motion is based on this Notice of Motion and Memorandum of Points and

11  Authorities, filed and served herewith, and the Declaration of Brittany Glidden, filed and

12  served herewith in support of this motion, the Court files in this action, and such other

13  materials and arguments as may be presented before or at the hearing.

14                          **INTRODUCTION**

15      On October 4, 2006, Governor Schwarzenegger proclaimed a State of Emergency

16  due to the severe overcrowding in California's prisons. (Governor's Proclamation of

17  October 4, 2006, at 1, Ex. A to Declaration of Brittany Glidden in Support of Plaintiffs'

18  Motion to Convene a Three Judge Panel to Limit Prison Population (Glidden Decl.)).

19  The Governor declared that, "the current severe overcrowding in 29 CDCR prisons has

20  caused substantial risk to the health and safety of . . . the inmates housed in them. . . ."

21  (*Id.*) Large numbers of prisoners are put in "increased, substantial risk for transmission

22  of infectious illnesses." (*Id.*) Overcrowding causes "extreme peril" because the prison

23  population "exceeds the capabilities of the services, personnel, equipment, and facilities .

24

25

26

27  Plaintiffs' Motion and Notice of
    Motion to Convene a Three Judge
    Panel to Limit Prison Population

28  *Plata v. Schwarzenegger*, 01-1351 T.E.H.            2

1    . . ."[1]  (*Id.* at 8.)

2    This Court's Receiver agrees. "It will not be possible to raise access to, and

3    quality of, medical care to constitutional levels with overpopulation at its current levels."

4    (*See* July 24, 2006 Letter from Sillen to Governor Schwarzenegger at 1, Ex. C to Glidden

5    Decl.); *see also* "July 2006 Inmate Population, Rehabilitation, and Housing Management

6    Plan," James E. Tilton, at 1 ("Housing Management Plan"), Ex. D to Glidden Decl.)

7    (citing overcrowding as a "major contributor" to conditions that led to receivership)).

8    Plaintiffs agree with the Receiver and particularly with the Governor when he

9    states that the "overcrowding crisis gets worse with each passing day, creating an

10   emergency in the California prison system" and that "immediate action is necessary to

11   prevent death and harm caused by California's severe overcrowding." (Gov. Declaration,

12   Ex. A to Glidden Decl., at 6, 8.)   Plaintiffs also agree with the Governor's suggestion that

13   this Court's intervention is necessary to alleviate this emergency.  (R.T. from Oct. 5, 2006

14   Hearing, *Madrid v. Tilton*, C 90-3084 THE, at 32:25-33:1, Ex. E to Glidden Decl.).

15   Plaintiffs therefore move for this Court to convene a three-judge panel as required under

16   18 U.S.C. § 3626(a)(3) to consider whether a population cap is necessary to remedy the

17   continuous Eighth Amendment violation in this matter.

18   **PROCEDURAL HISTORY**

19   This case was filed five years ago.  Following the filing, the State admitted that the

20   medical care being provided was so inadequate that it violated the Eighth Amendment

21   protections against cruel and unusual punishment.  (*See Stipulation for Injunctive Relief*,

22   June 13, 2002, at 2-3.)  In June 2002, the parties signed a stipulated injunction to improve

23

24   ────────────────

25   [1] Photographs posted by the CDCR on its own website provide vivid and
     disturbing evidence of the Governor's statements, showing inmates triple-bunked and

26   packed into every available space.  (See CDCR photographs, Ex. B to Glidden Decl.)

27   Plaintiffs' Motion and Notice of
     Motion to Convene a Three Judge
     Panel to Limit Prison Population

28   *Plata v. Schwarzenegger*, 01-1351 T.E.H.               3

1  the medical care system in the California Department of Corrections and Rehabilitation

2  (CDCR). (*Id.*)

3  　　　Despite this order, and the undisputed efforts of both plaintiffs and defendants, the

4  medical care system remained in a state of crisis. This Court issued more narrowly

5  tailored directives, which covered areas such as physician evaluations, nursing

6  supervision, and central quality control. (*See Stipulated Order Re Quality of Patient Care*

7  *and Staffing*, September 17, 2004.) In addition, the Court met monthly with the parties

8  for over a year to try and expedite the improvement of the medical care system. (*Findings*

9  *of Fact and Conclusions of Law Re Appointment of Receiver*, Oct. 3, 2005, at 38-39

10  ("*Findings of Fact*"), Ex. F to Glidden Decl.) During these meetings, the Court

11  encouraged defendants to propose actions that would allow them to solve the problems

12  with medical care, including suggesting specific Court orders. (*Id.*)

13  　　　These actions proved inadequate to improve the medical care system. On May 5,

14  2005, this Court issued an Order to Show Cause regarding why civil contempt should not

15  issue and there should not be an appointment of a temporary receiver. (*Order to Show*

16  *Cause Re Civil Contempt and Appointment of Interim Receiver*, May 5, 2005.) The Order

17  stated that the "prison medical delivery system is in such a blatant state of crisis" and that

18  "defendants have publicly conceded their inability to find and implement their own

19  solutions that will meet constitutional standards." (*Id.* at 1.)

20  　　　Commencing on May 31, 2005, this Court held a five-day evidentiary hearing

21  regarding the status of medical care in CDCR. On June 30, 2006, the Court ruled from

22  the bench that the appointment of a Receiver was necessary in order to raise medical care

23  to a constitutionally adequate level. The Court issued a detailed written order stating that

24  a Receiver would be appointed on October 3, 2005. (*Findings of Fact*, Ex. F to Glidden

25  Decl.)

26

27  Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge

28  Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.　　　　　　4

1    Following an extensive On February 14, 2006, this Court appointed Robert Sillen

2   as the Federal Receiver in this case, who commenced working in his position on April 17,

3   2006. (*Order Appointing Receiver*, Feb. 14, 2006, at 1.)

### STATEMENT OF FACTS

**1. The Overcrowding Crisis Generally**

6    In the past 25 years, the California correctional system has grown in size by more

7   than 500%. (*Findings of Fact*, at 4, Ex. F to Glidden Decl.) CDCR now is the custodian

8   for more than 170,000 individuals, making it the largest state correctional system in the

9   country. (Gov. Proclamation, Ex. A to Glidden Decl. at 1.) During this time the number

10   of institutions nearly tripled–from twelve to thirty-three. (*Findings of Fact*, Ex. F at 4.)

11   Despite building these prisons, CDCR is dangerously above capacity. The department

12   determined that "the maximum safe and reasonable capacity of the state's male prisoners

13   is 137,764 – 179 percent of design capacity." ("Reforming Corrections," June 2004

14   Report of the Corrections Review Panel, Chapter 7, Inmate/Parolee Population

15   Management, at 3 ("Reforming Corrections"), Ex. G to Glidden Decl.) A group of

16   experienced prison wardens set the maximum capacity even lower, stating that the

17   "operable capacity" for a "safe and secure environment is 111,309 inmates, or 145

18   percent of design capacity." (*Id.* at 4.) CDCR is now nearly 200% beyond its design

19   capacity. (CDCR Population Statistics as of November 1, 2006, Ex. H to Glidden Decl.)

20   Several institutions exceed 240% of design capacity. (*Id.*)

21    As a result, the Governor estimates that at least 15,000 inmates are housed in

22   "conditions that pose substantial safety risks, namely, prison areas never designed or

23   intended for inmate housing, including, but not limited to, common areas such as prison

24   gymnasiums, dayrooms, and program rooms. . ." (Gov. Proclamation, Ex. A to Glidden

25   Decl, at 1.; *see also* CDCR photographs, Ex. B to Glidden Decl.) This level of

26   overcrowding creates a "very dangerous situation" and is "unsafe for staff and inmates

27   Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge

28   Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.                5

1  alike." (June 26, 2006 Speech by Governor Schwarzenegger, available at

2  http://gov.ca.gov/index.php?/special-session/press-release/1076.)

3       Knowledge of the overcrowding problem and its deleterious effects is not new. In

4  2004, the Corrections Independent Review Panel found that, "the overall population of

5  male prisoners exceed a safe maximum, and individual housing units in some prisons are

6  so severely over-crowded as to be at a crisis stage." ("Reforming Corrections," at 4, Ex.

7  G to Glidden Decl.) The Panel found that the solution to the unconstitutional conditions

8  in CDCR was to reduce the population size. (*Id.* at 3 ("The key to reforming the system

9  lies in reducing the numbers.")) Since that recommendation was issued the prisoner

10  population has increased by nearly 10,000 prisoners. (*Compare id.* at 1, *with* CDCR

11  Population Statistics at 1, Ex. G to Glidden Decl.)

12      The rampant overcrowding in CDCR continually worsens as time passes. CDCR

13  analysts predict that the growth will continue, and that by 2011 the institution population

14  will be over 193,000–an increase of more than 20,000 prisoners.[2] (*Spring 2006 Adult*

15  *Population Projections, 2006-2011*, CDCR Population Projections Unit, at 3, 22, Ex. K to

16  Glidden Decl.) Secretary Tilton has said, that by June 2007, CDCR will no longer have

17  room to house felons sentenced to prison by the courts. (Housing Management Plan, Ex.

18  D to Glidden Decl., at 4; *see also* Gov. Proclamation, Ex. A to Glidden Decl., at 7.)

19      Simultaneous to this extreme growth in the prison population, CDCR substantially

20  reduced the number of prison staff, eliminating more than 5,000 workforce positions.

21

22      [2] Further, CDCR predictions have consistently underestimated the growth of the

23  prisoner population. (*See, e.g.,* R.T. for April 26 and 27, 2006 Hearing, *Coleman v. Schwarzenegger*, 90-0520, at 4/26/06 14:23-25-15:1-4, and 4/27/06 63:7-10 (showing

24  inaccurate calculation and Court finding the CDCR "is always a year behind what it

25  needs"), Ex. I to Glidden Decl.; *Fall 2003 Population Projections 2004-2009*, CDCR Population Projections Unit, at 4, Ex. J to Glidden Decl.).

26

27  Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
28  *Plata v. Schwarzenegger*, 01-1351 T.E.H.       6

1  (Reforming Corrections, Ex. G to Glidden Decl., at 4.)  The Independent Review Panel

2  found that, "[s]taffing reductions, overcrowding, and attendant violence have eroded the

3  ability of the prisons to operate effectively for any purpose other than security." (*Id.* at 5.)

4  In October 2005, the Director of Adult Institutions, John Dovey, declared that the

5  overcrowding and staff shortages created "an imminent and substantial threat to the

6  public safety . . . requiring immediate action." ("Memorandum Re: Modification to

7  Correctional Operations Due to Compelling Operational Need," John Dovey, October 25,

8  2006, at 2, Ex. L to Glidden Decl.)  Further, Director Dovey stated that the shortages

9  prevented CDCR for accepting more inmates and complying with court ordered mandates

10 for mental health and medical care. (*Id.* at 1.)

11     This unprecedented overcrowding will be even further aggravated in the next few

12 months because Los Angeles County has terminated its contract with CDCR to house

13 1,300 prisoners. (September 1, 2006 Letter from Dr. Peter Farber-Szekrenyi, at 1, Ex. M

14 to Glidden Decl.)  These individuals are scheduled to be transferred to CDCR facilities

15 within the next few months.  (*Id.*)  The cancellation of the LA county contract will worsen

16 conditions in the CDCR for all inmates since there are no adequate plans to address the

17 crisis or the additional prisoners.  (*Id.* at 1-3.)

18     Defendants cannot safely manage a sudden influx of inmates.  Earlier this year,

19 during an unprecedented and unanticipated surge in population size, CDCR was forced to

20 sleep inmates in holding cells designed for temporary day use and on the yards. (Glidden

21 Decl. ¶ 15.)  There was no documentation that these individuals received necessary

22 services, such as regular bathroom breaks and suicide watch check.  (*Id.*)  In addition,

23 these prisoners were not provided with timely medications, including life-sustaining

24 medications such as blood pressure medications and insulin treatments.  (*Id.*)  There was

25 no medical or mental health screening concerning who was subjected to these conditions.

26 (*Id.*)

27  Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
28  *Plata v. Schwarzenegger*, 01-1351 T.E.H.                7

1   As this Court has stated, "the consequences of system expansion without reform

2   have been shocking." (*Findings of Fact*, Ex. F to Glidden Decl., at 5.)  All parties

3   involved–including the Receiver, CDCR officials, the Office of Inspector General, and

4   plaintiffs–agree that the overcrowding is the direct cause of unconstitutional conditions in

5   CDCR.  (*See Cruel and Unusual Prison Health Care*, Robert Sillen, Sacramento Bee,

6   Oct. 8, 2006, at 4 (stating overcrowding is "at the root" of health care problems in

7   CDCR), Ex. Q to Glidden Decl.; Ex. D at 1, and  to Glidden Decl.; "Accountability Audit,

8   Review of the Audits of the California Department of Corrections and Rehabilitation

9   Adult Operations and Adult Programs, 2000-2004," Office of the Inspector General, vol.

10  1, at ES-1 ("OIG Audit"), Ex. T to Glidden Decl.)

11  Despite agreement on the dangers of overcrowding, CDCR is unable to remedy the

12  current overpopulation problem in the prisons because the state has failed to take any

13  meaningful remedial measures.  On June 26, 2006, Governor Schwarzenegger called a

14  special legislative session to address overcrowding in California prisons.  (June 26, 2006

15  Proclamation by Governor Schwarzenegger, at 1, Ex. N to Glidden Decl.)  At this special

16  session the Governor introduced several pieces of legislation designed in the long run to

17  reduce overcrowding, including a proposal for a new prison and jail facilities, and a

18  proposal to move non-violent women inmates out of the prison system and into

19  community correctional facilities.  (*Id.*)  However, despite knowledge of the severity of

20  the crisis, the legislature failed to provide any relief.  No new legislation was passed as a

21  result of the special session.  (*See* Sept. 1, 2006 Statement by James E. Tilton, at 1 ("I am

22  deeply disheartened by the failure of the Legislature to pass any measures to provide

23  either short-term relief or long-term remedies to alleviate the prison overcrowding

24  crisis."), Ex. O to Glidden Decl.)

25  Following this failed session, the Governor declared a State of Emergency because

26

27  Plaintiffs' Motion and Notice of
    Motion to Convene a Three Judge
    Panel to Limit Prison Population
28  *Plata v. Schwarzenegger*, 01-1351 T.E.H.                    8

1  of the danger to the inmates, staff and public as a result of the overcrowded prisons.[3]

2  (Gov. Proclamation, Ex. A to Glidden Decl., at 1.)  The Governor's Proclamation details

3  the dangers that directly result from overcrowding and include: increased risk of violence

4  in the prisons; increased risk in the transmission of infectious diseases; increased risk to

5  individuals employed by the prisons; overburdened electrical systems; sewage spills and

6  environmental contamination; and contaminated public drinking water.  (*Id.* at 1-2.)

7  **2. Overcrowded Conditions Result in Unconstitutional Medical Care**

8  Inadequate medical care is among the unconstitutional conditions caused by

9  overcrowding.  (Exs. C, Q & T to Glidden Decl.)  It is acknowledged by defendants, the

10  Receiver, the Office of the Inspector General, and plaintiffs, that until there is action to

11  reduce overcrowding, the medical care provided to California inmates will not, and

12  indeed cannot, be raised to a constitutional level.

13  The horrific medical care being rendered in CDCR is undisputed.  In October

14  2005, following an evidentiary hearing on the status of medical care in CDCR, as well as

15  extensive filings submitted by the parties, this Court declared that the "California prison

16  medical care system is broken beyond repair."  (*Findings of Fact*, Ex. F to Glidden Decl.

17  at 1.)  Further, this Court found that, "The harm already done in this case to California's

18  prison inmate population could not be more grave, and the threat of future injury and

19  death is virtually guaranteed in the absence of drastic action.  The Court has given

20  _____

21  [3] The only action the Governor took when declaring a state of emergency was to
    order the transfer of inmates to out-of-state placements.  (Ex. A to Glidden Decl. at 8-9.)
22  That action will not have significant effect on the immediate crisis, as the number of
    prisoners to transfer are few and there are thousands of inmates in the county jail waiting
23  to be transferred into CDCR.  (*Id.* at 7.)  It is likely any available space in CDCR will be
24  filled by transferring inmates from the jails.  Further, CDCR projects that its population
    will increase by over 20,000 inmates in the next five years.  (Ex. K to Glidden Decl., at
25  3.)

26

27  Plaintiffs' Motion and Notice of
    Motion to Convene a Three Judge
    Panel to Limit Prison Population
28  *Plata v. Schwarzenegger*, 01-1351 T.E.H.                    9

1  defendants every reasonable opportunity to bring its prison medical system up to

2  constitutional standards, and it is beyond reasonable dispute that the State has failed."

3  (*Id.*)

4      The Court relied on the uncontested fact that approximately one inmate a week

5  needlessly dies as a result of the deficiencies in the system. (*Id.*) The Court related these

6  problems directly to the size of the CDCR, finding, "Decades of neglecting medical care

7  while vastly expanding the size of the prison system has led to a state of institutional

8  paralysis. The prison system is unable to function effectively and suffers a lack of will

9  with respect to prisoner medical care." (*Id.* at 2.)

10      In determining whether a Receiver should be appointed, the Court stated it could

11  consider improving medical services by "closing some institutions or ordering the release

12  of some prisoners." (*Id.* at 41.) However, at that time, this Court determined that the

13  establishment of a Receivership was less onerous alternative. (*Id.*) This Court ultimately

14  declared that the circumstances, including the grave an immediate threat of danger to

15  plaintiffs, required the appointment of a Receiver. (*Id.* at 49-50.) On February 14, 2006,

16  this Court appointed Robert Sillen as the Federal Receiver in this case. (*Order

17  Appointing Receiver*, Feb. 14, 2006, at 1.) Mr. Sillen began work as the Receiver on

18  April 17, 2006. (*Id.*)

19      The Receiver has confirmed this Court's findings of the unconstitutional care

20  rendered in CDCR. He "concluded that the situation in California's prisons is, perhaps,

21  worse than the descriptions provided in the Findings of Fact and Conclusions of Law."

22  (*Receiver's First Bi-Monthly Report*, July 5, 2006, at 1-2, Ex. P to Glidden Decl.)

23  "Because of this, the remedies envisioned may be more dramatic, far reaching and

24  difficult to achieve than previously envisioned." (*Id.* at 2.) The Receiver determined that

25  "[a]lmost every necessary element of a working medical care system either does not exist,

26  or functions in a state of abject disrepair. . . ." (*Id.* at 3.)

27  Plaintiffs' Motion and Notice of
   Motion to Convene a Three Judge

28  Panel to Limit Prison Population
   *Plata v. Schwarzenegger*, 01-1351 T.E.H.                    10

1    The Receiver calls the current conditions "jaw dropping" (Letter from

2 the Receiver, Vol. 1, Number 4, October 27, 2006, at 1, Ex. S to Glidden Decl.), because

3 they are "degrading, unsanitary, and unsafe." (*Cruel and Unusual Prison Health Care*, at

4 2, Ex. Q to Glidden Decl.) He has stated that, "Needless deaths occur weekly in our

5 prisons, either from lack of access to care, or worse, from access to it." (*Id.*)

6    While the appointment of a Receiver was a necessary remedial action in this case,

7 it alone will not be sufficient to remediate the medical care in CDCR. In a letter to the

8 Governor, Mr. Sillen stated, "It will not be possible to raise access to, and quality of,

9 medical care to constitutional levels with overpopulation at its current levels." (Ex. C to

10 Glidden Decl., at 1; *see also Receiver's First Bi-Monthly Report*, Ex. P to Glidden Decl.,

11 at 3.) Specifically, the Receiver states, "Most California prisons operate at 200% of

12 capacity, with no effective relief in sight. Unless and until the living conditions of some

13 prisons and the overpopulation experienced system-wide is effectively addressed, the

14 Receiver will be impeded in applying systemic and even some ad hoc remedies to the

15 medical care system." (Ex. P to Glidden Decl., at 3.)

16    The Receiver believes medical care cannot be improved without addressing the

17 population size because overcrowding is "the root cause of many of the prison system's

18 ills, including constitutionally inadequate medical care." (*Receiver's Second Bi-Monthly*

19 *Report*, Sept. 19, 2006, at 2, Ex. R to Glidden Decl.; *see also* Ex. S to Glidden Decl., at 1

20 ("it is clear that overcrowding is at the root of many of the difficulties that afflict medical

21 care."), Ex. C to Glidden Decl. at 1 ("the overcrowding and medical crises are integrally

22 related."); Ex. Q to Glidden Decl., at 4.)

23    Acting Secretary of CDCR, James Tilton, has determined the same, stating, "the

24 overcrowding and lack of treatment space to service the additional populations has been a

25 major contributor to court intervention regarding CDCR's health care services delivery."

26 (Ex. D to Glidden Decl. at 1.) His Housing Management Plan also details how the CDCR

27 Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population

28 *Plata v. Schwarzenegger*, 01-1351 T.E.H.          11

facilities are going to continue becoming increasingly overcrowded over the next decade, indicating the problem will only worsen. (*Id.*)

A recent report issued by the Office of the Inspector General found that efforts to provide adequate medical care and other services are not effective because of the degree of overcrowding in CDCR. "[I]t must be recognized that efforts to address problems . . . have been severely hampered by inmate population pressures that have prison straining at nearly twice design capacity, spreading staff resources thin and leaving little facility space available for programming and other purposes." (OIG Audit, Ex. T to Glidden Decl., at ES-1.) Sustainable solutions for improving medical care and other services will require addressing the overcrowding in CDCR. (*Id.*)

The Receiver believes that an "unconscionable degree of suffering and death *is* sure to continue of the system is not dramatically overhauled." (Ex. Q to Glidden Decl., at 2, emphasis in original.) Without action concerning overcrowding raising medical care in CDCR to a constitutional minimum will take more than a decade, if it is even possible at all. (*Id.*) Such delay will result in hundreds of needless deaths.

## ARGUMENT

### THE PLRA'S REQUIREMENTS FOR CONVENING A THREE JUDGE PANEL ARE SATISFIED.

**A.**        **Legal Standard**

Many courts have determined that population limitations are necessary and appropriate when trying to remedy constitutional harms in prisons and jails. *Palmigiano v. Garrahy*, 639 F. Supp. 244, 258 (D.R.I. 1986) (stating population caps are "commonplace" and citing caselaw); *see also Harris v. Angelina County, Tex.*, 31 F.3d 331, 335-37 (5th Cir. 1994) (upholding population cap because of conditions, but also emphasizing deliberate action of defendants, because the county continued to "pick up" inmates even when aware of overcrowding); *Wellman v. Faulkner*, 715 F.2d 269, 274

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.                12

(7th Cir.1983) (upholding order for population reduction, citing inadequate medical care, lack of exercise time, deficient maintenance and food service); *Inmates of Allegheny County Jail v. Wecht*, 565 F. Supp. 1278, 1297 (W.D. Pa. 1983), aff'd in rel. part, 754 F.2d 120 (3d Cir. 1985) (population limits imposed; ordering additional relief based on conditions); *Benjamin v. Malcolm*, 564 F. Supp. 668, 672-676, 688 (S.D.N.Y. 1983) (denying motion to increase population limit where there inadequate safety, unsanitary condition, and extensive time spent by inmates in the cellblock); *Vazquez v. Carver*, 729 F. Supp. 1063, 1069 (E.D. Pa. 1989) (discussing conditions and granting preliminary injunction for population cap); *Essex County Jail Inmates v. Amato*, 726 F. Supp. 539, 541 (D.N.J. 1989) (discussing population cap and imposing fine for defendants non-compliance with cap).

Before a population limitation was imposed, courts generally determined that unconstitutional conditions were caused by overcrowding, and that other remedies would be ineffective unless population size was addressed. *See, e.g., Grubbs v. Bradley*, 552 F. Supp. 1052, 1126 (M.D. Tenn. 1982) (double-celling banned in certain units at Tennessee State Penitentiary; "overcrowding is a primary cause of all the most serious problems. . . . the only effective remedy is to reduce the prison's population . . ." ); *Alberti v. Sheriff of Harris County, Texas*, 406 F. Supp. 649, 659 (S.D. Tex. 1975) (finding overcrowding is the "primary cause" of unconstitutional conditions and imposing population limits); *see also Carty v. Farrelly*, 957 F. Supp. 727, 735 (D.V.I. 1997) (finding "overcrowding causes" unconstitutional conditions and ordering sanctions when population cap was violated); *Inmates of Allegheny County Jail*, 565 F. Supp. at 1297 (upholding district court's population limit where other orders were unsuccessful to remedy unconstitutional conditions). Population limitations were applied both to individual institutions and on entire state systems. *See, e.g., Ruiz v. Estelle*, 679 F.2d 1115, 1148 (5th Cir.) vacated on other grounds by 688 F.2d 266 (5th Cir. 1982) (upholding population cap as an

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.                    13

appropriate remedy considering the harms that existed as a result of the overcrowded conditions in the Texas prisons); *Grubbs*, 552 F. Supp. 1125 (limitation on Tennessee system).

In enacting the Prison Litigation Reform Act of 1995 (PLRA), Congress formalized the procedures to obtain a population limitation in prisons and jails. While much of the PLRA placed restrictions on prisoner litigation, Congress specifically determined that there would be circumstances where judicial intervention would require the release or reduction of a prison population in order to protect the constitutional rights of individuals.  18 U.S.C. § 3626(a)(3).  The PLRA essentially codified the pre-existing law, with the additional requirement that a three-judge panel must approve a population cap, as discussed below.

The PLRA defines a "prisoner release order" as "any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4).

A prisoner release order shall be considered when: (1) a court has previously entered *an* order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and, (2) the defendant has had a reasonable amount of time to comply with the previous court orders. 18 U.S.C. § 3626(a)(3)(A) (emphasis added).  When a court determines that these requirements are satisfied, it can request a three-judge court, in accordance with 18 U.S.C. § 2284, to consider whether a prisoner release order should issue.  28 U.S.C. § 3626(a)(3)(B)-(C).  The PLRA states that a three-judge court shall enter a prisoner release order if the court finds by clear and convincing evidence that–(1) crowding is the primary cause of the violation of a Federal right; and (2) no other relief will remedy the violation of the Federal right.  18 U.S.C. § 3626(a)(3)(E).

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.                    14

1    Such an order has precedent. Earlier this year, a federal district court in Ohio

2   found that "it is unlikely that the plan to maintain constitutional population levels at the

3   jail will be effective without some intervention by this Court in the form of a prisoner

4   release mechanism . . . Defendants have been given an opportunity to correct the problem

5   of jail overcrowding and have been unable to do so without further intervention by this

6   Court." (*Roberts v. County of Mahoning*, No. 4:03-cv-02329-DDD, Court Order at 5,

7   (N.D. Ohio, May 25, 2006), Ex. U to Glidden Decl.) That Court had begin a remedial

8   process a year earlier. This Court noted that subsequent to its previous order there was a

9   "great amount of effort and work" by defendants to "attempt to solve those problems"

10   identified by the Court in its decision, and "progress ha[d] been made toward resolving a

11   number of the findings." (*Id.* at 2.) However, because even after a year, the Court found

12   that "the central issue of population control to prevent future overcrowding remains

13   unsolved," it recognized the need for further intervention by the Court authorized by the

14   PLRA. (*Id.*)

15    Similarly, in 1998, a three-judge panel convened pursuant to 18 U.S.C. §

16   3626(a)(3), and entered an order to limit the inmate population in a District of Columbia

17   case. (*Inmates of Occoquan v. Barry*, No. 86-2128 JLG, Population Consent Order at 1-2

18   (D.D.C. Jan. 20, 1998), Ex. V to Glidden Decl.) There, the District Court held in 1989

19   that defendants were violating the constitutional rights of the plaintiff inmate class and

20   ordered remedial action. 717 F. Supp. 854 (D.D.C. 1989). The Court later appointed a

21   Special Master. (Population Consent Order at 2, Ex. V to Glidden Decl.) Nine years

22   after the initial order, the panel found that the District Court's previous orders had failed

23   to remedy plaintiffs' constitutional rights, and that defendants had a reasonable amount of

24   time to comply with the previous court orders in the case. (*Id.* at 1-2.) The panel also

25   held that because crowding was a primary cause of the violation of the plaintiffs'

26   constitutional rights, and no relief other than that set forth in the Population Consent

27   Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population

28   *Plata v. Schwarzenegger*, 01-1351 T.E.H.                    15

1  Order would remedy the violation, "the factual predicate for imposition of a prisoner

2  release order . . . has been established." (*Id.* at 2.)

3  **B.        This Court Has Previously Entered an Order For Lesser**
4  **Intrusive Relief That Has Failed to Remedy the Deprivation of a**
   **Federal Right.**

5      In the nearly five years since defendants agreed that the medical care being

6  provided was unconstitutional, CDCR has failed to improve care to a minimally adequate

7  level. Despite the numerous orders of this Court, including the appointment of a

8  Receiver, the crisis remains "emergent." (*Receiver's First Bi-Monthly Report*, Ex. P to

9  Glidden Decl. at 6; *see also Stipulation for Injunctive Relief*, June 13, 2002; *Stipulated*

10 *Order Re Quality of Patient Care and Staffing*, September 17, 2004; *Order Appointing*

11 *Receiver*, Feb. 14, 2006.) The Receiver found that the care rendered may be worse than

12 originally believed, and confirmed that there continue to be needless deaths weekly in the

13 prisons, and an innumerable individuals suffering permanent injury and crippling pain.

14 (Ex. Q to Glidden Decl., at 2.) The Receiver states that it may take the better part of a

15 decade to raise medical care to a constitutional level, and then an equal amount of time

16 until it can reliably be turned over to the state. (*Id.*) If such delay occurs, it will cause the

17 deaths of hundreds of more inmate-patients. This suffering continues despite half of

18 decade since the agreement that the conditions are unconstitutional and numerous

19 remedial efforts by this Court.

20     In the Order appointing a Receiver, this Court determined that it had "exhausted all

21 reasonable coercive measures at is disposal." (*Findings of Fact*, Ex. F to Glidden Decl.,

22 at 42.) Further, it found that all of these actions had failed and that despite the measures,

23 people continued "needlessly dying." (*Id.*) The Receiver has already determined that his

24 task–of raising the care in CDCR to a constitutional level–*will not be possible* given the

25 current overcrowding in CDCR. (Ex. C to Glidden Decl., at 1.) He has already

26 concluded that additional building of prisons will also be an insufficient response, as

Plaintiffs' Motion and Notice of
27 Motion to Convene a Three Judge
Panel to Limit Prison Population
28 *Plata v. Schwarzenegger*, 01-1351 T.E.H.                16

filling the health care positions would be a "nearly impossible" task. (*Id.* at 2.)

It is undisputed that the Court has tried lesser intrusive remedies, as required by the PLRA, and these remedies have failed to bring the care being rendered to a constitutional level. While the Receiver was recently appointed, and cannot be said to have "failed," CDCR will not be able to comply with the Stipulated Injunction requirements. Absent action to reduce the number of inmate-patients, the Receiver *will fail* at his task to improve care.

The PLRA requires that the Court has previously entered "an order" for lesser intrusive relief. The law does not require exhaustion of every possible lesser remedial action prior to requesting a population cap. When it is already apparent that a remedial action is inadequate, the law does not require further delay while individuals continue to suffer and die in unconstitutional conditions. *See Palmigiano v. Garrahy*, 443 F. Supp. 956, 973 (D.R.I. 1977) (a "Court would be remiss in its duty were it to wait until an inmate bleeds to death, or suffers a heart attack which defendants are unequipped to diagnose or treat in an emergency, before it acts.").

### C.    The Defendants Have Had A Reasonable Amount of Time to Comply With the Court's Orders.

In its Order appointing a Receiver, this Court detailed the complicated nature of providing for the medical needs of the inmate-patients housed in CDCR, particularly in light of the "extreme state of overcrowding" and the "failures of past administrations to take medical care seriously." (*Finding of Fact*, Ex. F to Glidden Decl., at 37-38.) The Court further detailed the defendants' continuous failure to improve the care being provided to inmate-patients. The Court described this as follows:

> In spite of all of the[] efforts by the Court, defendants have been unwilling or incapable of breaking out of a deeply entrenched bureaucratic mind-set, and have refused or been unable to take the steps necessary to prevent further needless loss of life and suffering in its wards. . . . The mind-set is a classic example of what sociologist Thorstein Veblen terms "trained incapacity." (Citation.) State officials have become so inured to

Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population
*Plata v. Schwarzenegger*, 01-1351 T.E.H.                17

1         erecting barriers to problems that appear to threaten the bureaucracy (or that
         at least appear to require the bureaucracy to bend or flex) that the officials
2         have trained themselves into a condition of becoming incapable of recognizing,
         and acting in response to, true crisis.

3 (*Id.* at 39.)  Accordingly, the Court found not only that defendants had received a

4 reasonable amount of time to comply with the Court's orders, but that *no* amount of given

5 time would be sufficient for them to comply.

6       In addition, the Governor, the Receiver, and the CDCR Secretary all agree that the

7 prisoner population has outstripped the capacity of the facilities, the personnel, and

8 equipment to provide adequate care to the tens of thousands of California prisoners.

9 As the Governor stated in his Proclamation, the conditions have reached a state of

10 emergency, which is unsafe for inmates, staff, and the public at large. (Ex. A to Glidden

11 Decl., at 1.)  There are simply not enough buildings, clinicians, and space to provide the

12 necessary services to the number of individuals currently incarcerated. (*Id.* at 8.)  All

13 parties now admit that these overcrowded conditions are causing the unconstitutional

14 medical care.

15       There is absolutely no reason to believe that any more time will help defendants

16 remedy the ongoing violations.  As stated by the Receiver, in his September 19, 2006

17 Report, "Despite dire warnings from CDCR administrators that California's prisons will

18 be out of space by June 2007, despite the fact that population levels are now in excess of

19 200% of designed capacity, nothing was presented to the Legislature by the

20 Administration that provided for immediate relief for Prison Wardens and Health Care

21 Mangers [*sic*].  Likewise the Legislature itself offered no realistic proposals to deal with

22 the problems faced within California's prisons in a timely and adequate manner."

23 (*Receiver's Second Bi-Monthly Report*, Ex. R to Glidden Decl., at 3.)

24       The individuals housed in California's prisons cannot be forced to wait for months

25 and years, until the Receivership fails before the needed relief–population reduction–is

26

27 Plaintiffs' Motion and Notice of
Motion to Convene a Three Judge
Panel to Limit Prison Population

28 *Plata v. Schwarzenegger*, 01-1351 T.E.H.         18

1   provided to relieve the system. As a district court in Rhode Island found in *Palmigiano v.*

2   *Garrahy*, after nine years of remedial efforts, that a imposing a prison population

3   limitation was necessary:

4       The record shows that for nine years this Court has employed all the
        artifices it could conceive to have the defendants cure the many constitutional
        violations it found. I have been imperious, didactic, and supplicatory; I
5       have cajoled and waited as though for Godot. I have ever been reluctant to
        interfere with the operation of the prison . . . The veritable fortune that has
6       been poured into [the] institution will all be for naught if positive firm steps
        are not immediately invoked. The overcrowding must be confronted before
7       it becomes uncontrollable. A delay under the present conditions can give
        rise to problems of staggering magnitude not the least of which could be
8       serious riots and/or a medical epidemic.

9   639 F. Supp. 244, 258 (D.R.I. 1986).

10      Most simply put, California inmates are currently facing horrific conditions that

11  plainly violate Eighth Amendment standards prohibiting the unnecessary and wanton

12  infliction of pain, and the state government, both executive and legislative, has absolutely

13  no plan for providing a remedy. This must not continue. The Court has tried every

14  available less intrusive remedy and its disposal, and it must now act to safeguard the lives

15  of the more than 170,000 individuals in the CDCR system, by reducing the prison

16  population..

17                              **CONCLUSION**

18      For the foregoing reasons, this motion be granted, and this Court should refer the

19  matter to a three-judge panel, pursuant to 28 U.S.C. § 2284.[4]

20  ///

21

22

23      [4] Motions requesting the same relief are being filed in *Coleman v.*
    *Schwarzenegger*, No. Civ S-90-0520 LKK-JFM and *Armstrong v. Schwarzenegger*, No.
24  C 94-2307 CW. Plaintiffs suggest that the Court consider holding a joint hearing on these
    motions with the other judges, thereby increasing judicial efficiency and minimizing the
25  possibility of inconsistent ruling.

26

27  Plaintiffs' Motion and Notice of
    Motion to Convene a Three Judge
    Panel to Limit Prison Population
28  *Plata v. Schwarzenegger*, 01-1351 T.E.H.                    19

1

2

3    Dated:    November 13, 2006                    Respectfully Submitted,

4                                                  PRISON LAW OFFICE

5

6                                                  By: _Donald Specter_

7

8                                                  Donald H. Specter
                                                   Steven Fama
9                                                  Alison Hardy
                                                   Brittany Glidden
10

11                                                 PRISON LAW OFFICE
                                                   General Delivery
12                                                 San Quentin, CA 94964
                                                   PH: 415.457.9144
13                                                 FAX: 415.457.9151

14

15

16

17

18

19

20

21

22

23

24

25

26

27   Plaintiffs' Motion and Notice of
     Motion to Convene a Three Judge
     Panel to Limit Prison Population
28   *Plata v. Schwarzenegger*, 01-1351 T.E.H.          20

DECLARATION OF SERVICE BY MAIL

Case Name: Plata et al., Plaintiffs v. Schwarzenegger et al., Defendants.
   United States District Court
   Northern District of California   No. C-01-1351 T.E.H.

I am employed in the County of Marin, California. I am over the age of 18 years and not a party to the within entitled cause: my business address is Prison Law Office, General Delivery, San Quentin, California 94964.

On November 13, 2006, I served the attached:

**1. NOTICE OF MOTION AND MOTION TO CONVENE A THREE JUDGE PANEL TO LIMIT PRISON POPULATION**

**2. DECLARATION OF BRITTANY GLIDDEN IN SUPPORT OF PLAINTIFFS' MOTION TO CONVENE A THREE JUDGE PANEL TO LIMIT PRISON POPULATION**

**3. [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO CONVENE THREE JUDGE PANEL TO LIMIT PRISON POPULATION**

**4. PLAINTIFFS' EX PARTE REQUEST TO SPECIALLY SET HEARING ON MOTION TO CONVENE THREE JUDGE PANEL TO LIMIT PRISON POPULATION**

**5. [PROPOSED] ORDER SETTING HEARING DATE**

in said cause, placing, or causing to be placed, a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Rafael, California, addressed as follows:

Jonathan Wolff       Robert Sillen
Deputy Attorney General    1731 Technology Drive
Office of the Attorney General  San Jose, CA 95110
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

John Hagar, Special Master   Paul Mello
Judges Reading Room U.S.D.C.  Hanson Bridgett Marcus Vlahos & Rudy, LLP
450 Golden Gate Avenue. 18th Floor 333 Market Street, 21st Floor
Law Library, CA 94102     San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at San Rafael, California on November 13, 2006.

Ashley Fewell

# EXHIBIT B

PRISON LAW OFFICE
DONALD SPECTER – 83925
SARA NORMAN – 189536
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM McCUTCHEN, LLP
WARREN E. GEORGE – 53588
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
LINDA KILB -- 136101
2212 6th Street
Berkeley, California 94710
Telephone: (510) 644-2555

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone (415) 433-6830

JONES DAY
CAROLINE N. MITCHELL - 143124
555 California Street, 25th Floor
San Francisco, CA 94104
Telephone: (415) 875-5712

LAW OFFICES OF ELAINE B. FEINGOLD
ELAINE B. FEINGOLD – 99226
1524 Scenic Avenue
Berkeley, California 94708
Telephone: (510) 848-8125

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ORIGINAL
FILED

NOV 15 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. C 94-2307 CW |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO CONVENE A THREE JUDGE PANEL TO LIMIT PRISON POPULATION** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |
| | <u>HEARING</u> |
| | Date: December 22, 2006 |
| | Time: 10:00 a.m. |
| | Dept: Courtroom 2, Fourth Floor |
| | Judge: Hon. Claudia Wilken |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................ 1

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

    I.     THE OVERCROWDING CRISIS GENERALLY ......................................... 3

    II.    OVERCROWDING HARMS PRISONERS WITH
          DISABILITIES ............................................................................................. 6

LEGAL ARGUMENT ................................................................................................ 9

    I.     THE PRISON LITIGATION REFORM ACT'S
          REQUIREMENTS FOR CONVENING A THREE JUDGE
          PANEL TO LIMIT THE PRISON POPULATION ARE
          SATISFIED AND THIS COURT SHOULD REFER THIS
          MATTER TO SUCH A PANEL. .................................................................. 9

          A.    Previous Less Intrusive Relief Ordered By This Court
               Has Failed To Remedy The Deprivation Of The Federal
               Rights Of The Plaintiff Class To Safe And Accessible
               Housing And Other Accommodations. ......................................... 12

          B.    Defendants Have Had Reasonable Time To Comply With
               Previous Court Orders And the *Armstrong* Remedial
               Plan. ............................................................................................. 13

    II.    AN ORDER LIMITING THE PRISON POPULATION
          SHOULD BE ENTERED IN THIS CASE BECAUSE
          OVERCROWDING IS THE PRIMARY CAUSE OF THE
          VIOLATIONS OF PLAINTIFFS' FEDERAL RIGHTS TO
          DISABILITY ACCOMMODATIONS, THE VIOLATIONS
          CANNOT BE REMEDIED WITHOUT RELIEF FROM
          OVERCROWDING, AND THIS COURT SHOULD REFER
          THE MATTER TO A THREE-JUDGE PANEL THAT CAN
          ENTER AN ORDER LIMITING THE POPULATION .................................. 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

## Federal Cases

*Benjamin v. Malcolm,*
    564 F.Supp. 668 (S.D.N.Y. 1983) ...................................................................11

*Essex County Jail Inmates v. Amato,*
    726 F. Supp. 539 (D.N.J. 1989) ......................................................................11

*Grubbs v. Bradley,*
    552 F.Supp. 1052 (M.D. Tenn. 1982) ............................................................11

*Harris v. Angelina County, Tex.,*
    31 F.3d 331 (5th Cir. 1994) ...........................................................................10

*Inmates of Allegheny County Jail v. Wecht,*
    565 F.Supp. 1278 (W.D. Pa. 1983),
    *aff'd in rel. part,* 754 F.2d 120 (3d Cir. 1985) ............................................11

*Inmates of Occoquan v. Barry,*
    717 F.Supp. 854 (D.D.C. 1989) .....................................................................10

*Palmigiano v. Garrahy,*
    639 F.Supp. 244 (D.R.I. 1986) .................................................................10, 12

*Ruiz v. Estelle,*
    679 F.2d 1115 (5th Cir. 1982)
    *vacated on other grounds by* 688 F.2d 266 (5th Cir. 1982) ..........................10

*Vazquez v. Carver,*
    729 F. Supp. 1063 (E.D. Pa. 1989) ...............................................................11

*Wellman v. Faulkner,*
    715 F.2d 269 (7th Cir. 1983) .........................................................................10

## Statutes

18 U.S.C. § 2284 (Prison Litigation Reform Act) ..............................................9

18 U.S.C. § 3626(a)(3) (Prison Litigation Reform Act) ...............................passim

18 U.S.C. § 3626(a)(3)(A) (Prison Litigation Reform Act) .................................9

18 U.S.C. § 3626(g)(4) (Prison Litigation Reform Act) .....................................9

28 U.S.C. § 2284 (Prison Litigation Reform Act) ............................................15

29 U.S.C.§ 794 (Rehabilitation Act, Section 504) ..............................................1

42 U.S.C. § 12101, *et seq.* (Americans with Disabilities Act) ..........................1

PLAINTIFFS' NOTICE OF MOTION & MOTION TO
CONVENE THREE JUDGE PANEL TO LIMIT PRISON
POPULATION, Case No. C-94-2307 CW

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on December 22, 2006 at 10:00 a.m., or as soon

3  thereafter as the matter may be heard, in the Courtroom of the Honorable Claudia Wilken,

4  located at 1301 Clay Street, Courtroom 2, Fourth Floor, Plaintiffs John Armstrong, *et al.*,

5  will and hereby do move the Court for an Order to Convene a Three Judge Panel to Limit

6  Prison Population in this action.

7      Plaintiffs are simultaneously filing a separate motion seeking an Enforcement Order

8  remedying Defendants' violations of the Permanent Injunction, the American with

9  Disabilities Act, the Rehabilitation Act and the *Armstrong* Remedial Plan through their

10  continued failure to accommodate and ongoing discriminatory treatment of members of the

11  plaintiff class.  However, due to the extreme overcrowding in California's prisons, specific

12  remedial orders cannot succeed unless and until the prison population is limited.  Parallel

13  motions to convene three judge panels have been filed this week in this Court in *Plata v.*

14  *Schwarzenegger*, No. 01-cv-10351 TEH and in the Eastern District in *Coleman v.*

15  *Schwarzenegger*, No. Civ S 90-0520 LKK-JFM.

16      This motion is based on this Notice of Motion and Memorandum of Points and

17  Authorities and Proposed Order, filed and served herewith, the Declarations of Michael

18  Bien, Sara Norman, Gay Grunfeld, Thomas Nolan, Amy Whelan, Anne Mania, Megan

19  Hagler, and numerous class members, filed and served herewith in support of this motion,

20  the Court files in this action, and such other materials and argument as may be presented

21  before or at the hearing.

22                          **INTRODUCTION**

23      A decade after defendants purported to resolve this litigation and began compliance

24  efforts, serious and systematic discrimination against the plaintiff class persists.  *See* Motion

25  for Enforcement and Further Remedial Others ("Enforcement Motion"), filed herewith.

26      Defendants' efforts to comply with the Americans with Disabilities Act ("ADA"),

27  Section 504 of the Rehabilitation Act, the Permanent Injunction, and the *Armstrong*

28  Remedial Plan are increasingly frustrated by the unprecedented overcrowding crisis in the

-1-    PLAINTIFFS' NOTICE OF MOTION & MOTION TO
       CONVENE THREE JUDGE PANEL TO LIMIT PRISON
       POPULATION, Case No. C-94-2307 CW

California prison system. On October 4, 2006, Governor Schwarzenegger declared that "a State of Emergency exists within the State of California's prison system." Declaration of Michael Bien ("Bien Decl."), ¶ 9 & Exhibit B (Prison Overcrowding State of Emergency Proclamation) (hereinafter "Overcrowding Proclamation"). "[C]onditions of extreme peril to the safety of persons and property exist in the 29 CDCR prisons identified [in the proclamation], due to severe overcrowding, and that the magnitude of the circumstances exceeds the capabilities of the services, personnel, equipment, and facilities of any geographical area in the state." *Id.* The Governor explained that this severe overcrowding "causes harm to people and property, leads to inmate unrest and misconduct, reduces or eliminates programs, and increases recidivism as shown within this state…" *Id.* Photographs posted by the CDCR on its own website provide vivid and disturbing evidence of the Governor's statements, showing inmates triple-bunked and packed into every available space. Bien Decl., ¶ 16 & Exhibit I.

The effects of the overcrowding emergency on the plaintiff class of inmates with disabilities are grave. Inmates with severe mobility impairments lack adequate or accessible cells. They are crammed into triple bunks, risking dangerous falls more likely. They are inappropriately housed in more restrictive placements such as administrative segregation or infirmaries, where they receive little or no programming, have extremely limited property and privileges, and spend most of the day in their cells. Bien Decl., ¶ 20. They languish for months in reception centers, where they receive virtually no programming or are forced to rely on other prisoners for basic toileting needs or risk falling in the inaccessible showers. They are denied specialist visits and adequate medical care. Their disability grievances go unanswered because there is not enough staff to respond. Enforcement Motion at 8-12; 23-24.

Plaintiffs have demonstrated these and other systemic violations of their rights in the Enforcement Motion, and have asked for narrowly tailored remedies to address defendants' ongoing violations of the ADA, Rehabilitation Act, Permanent Injunction, and *Armstrong* Remedial Plan. But the bottom line is this: without relief from the conditions created by

-2-

PLAINTIFFS' NOTICE OF MOTION & MOTION TO
CONVENE THREE JUDGE PANEL TO LIMIT PRISON
POPULATION, Case No. C-94-2307 CW

1  severe overcrowding, there is no real likelihood that defendants will be able to

2  accommodate prisoners with disabilities in the foreseeable future.  The executive and

3  legislative branches of the California government, including the Governor and other

4  defendants in this case, have abdicated their responsibility to provide any realistic plan for

5  addressing the needs of the state's prison population in a reasonable time frame, even in the

6  face of a constant flow of orders from federal Courts.  In a recent hearing in front of Judge

7  Henderson in *Madrid v. Tilton,* another prison class action lawsuit, the attorney representing

8  the Governor stated that "it is [the Governor's] belief that overcrowding affects virtually all

9  of the issues that the Court is concerned about…it is something that affects prisoners

10  throughout the State," and conveyed the Governor's request to "tell Judge Henderson that I

11  can use all the help from him I can get."  Bien Decl., ¶ 25 & Exhibit P (10/5/2006

12  Transcript at 32:21-34:5).  Defendants do indeed need help.

13      The only remedy left to address this crisis is to impose strict limits on the population

14  of prisoners.  Consequently, plaintiffs move for this Court to convene a three-judge panel,

15  as required under 18 U.S.C. § 3626(a)(3), so that an order limiting prison population may be

16  entered, and critical relief may be obtained for the plaintiff class.

17  **STATEMENT OF FACTS**

18  **I.    THE OVERCROWDING CRISIS GENERALLY**

19      The California Department of Corrections and Rehabilitation ("CDCR") prison

20  population is at an all-time high, with the count currently at 173,322 inmates.  Nearly

21  70,000 additional prisoners are projected by defendants for the first six months of 2007.[1]

22  Bien Decl., ¶ 12 & Exhibit F at 1 (population data downloaded from CDCR website).

23  System-wide, the CDCR is now at nearly 200% of its design capacity, with fourteen

24  institutions *above* 200% of design capacity.  *Id.,* ¶ 10.  As a result, more than 15,000

25

26  [1] The unprecedented overcrowding will be even further aggravated in the next few months
because defendants and Los Angeles County are planning to terminate a contract under

27  which 1,300 CDCR prisoners are housed at the Pitchess Detention Center of the Los
Angeles County Jail.  *See* Bien Decl., ¶ 11 & Exhibit E.

28

PLAINTIFFS' NOTICE OF MOTION & MOTION TO
CONVENE THREE JUDGE PANEL TO LIMIT PRISON
POPULATION, Case No. C-94-2307 CW

1  inmates are housed in prison areas "never designed or intended for inmate housing,

2  including, but not limited to, common areas such as prison gymnasiums, dayrooms, and

3  program rooms, with approximately 1,500 inmates sleeping in triple bunks." Overcrowding

4  Proclamation at 1, Bien Decl., Exhibit B. CDCR Secretary Tilton acknowledged that the

5  practice of housing inmates in these beds is not only "nontraditional," but also "unsafe."

6  9/1/2006 Tilton Memorandum at 2, Bien Decl., ¶ 18 & Exhibit J. According to defendants,

7  overcrowding has resulted not only in increased security concerns and severely affected the

8  CDCR's ability to provide work, training, and educational programs to prisoners, but has

9  also "been a major contributor to court intervention regarding CDCR's health care services

10  delivery." Bien Decl., Exhibit J at 1.

11     Yet, in the face of these horrific conditions, the state of California has merely thrown

12  up its hands, failing to adopt any practical proposals aimed at alleviating the overcrowding

13  crisis, even in the special session of the Legislature convened for that very reason. *See*

14  9/1/2006 Tilton Memorandum ("I am deeply disheartened that the special legislative session

15  concluded last night without the passage by the Assembly of any measures to provide either

16  short-term relief or long-term remedies to alleviate the prison overcrowding crisis."), Bien

17  Decl., Exhibit J. The Governor has admitted the California government's inability to

18  address this overcrowding crisis. *See* Overcrowding Proclamation (California Legislature

19  denied multiple proposals by Governor, failed to adopt proposals submitted by CDCR, and

20  failed to adopt any proposals of its own).

21     The number of prisoners is not the only factor in the overcrowding equation:

22  defendants also face severe and chronic shortages in custodial, administrative, and clinical

23  staff. Declaration of Gay Grunfeld ("Grunfeld Decl."), ¶ 58; Bien Decl., ¶ 21 & Exhibit L.

24  Defendants have also been unable or unwilling to maintain contracts with outside specialists

25  and consultants, exacerbating their ability to meet the needs of the *Armstrong* class.

26  Declaration of Amy Whelan ("Whelan Decl."), ¶¶ 32-37.

27     This problem is not new. In 2004, the Corrections Independent Review Panel found

28  that "the overall population of male prisoners exceed a safe maximum, and individual

-4-

1  housing units in some prisons are so severely over-crowded as to be at a crisis stage." Bien

2  Decl., ¶ 14 & Exhibit H at 4 (Deukmejian Report, Inmate/Parolee Population Management).

3  The Deukmejian Report found that the solution to unconstitutional conditions in CDCR was

4  to reduce the population size.  Bien Decl., Exhibit H at 3 ("The key to reforming the system

5  lies in reducing the numbers.").  Since that recommendation in 2004, the CDCR inmate

6  population has increased by fourteen percent, or nearly 20,000 inmates.  (CDCR pop stats).

7  Bien Decl., ¶ 15.

8          The Overcrowding Proclamation details the litany of grave dangers that directly

9  result from overcrowding, including:

10     •    increased, substantial risk of violence;

11     •    increased, substantial risk for transmission of infectious illnesses;

12     •    increased, substantial security risk;

13     •    increased, substantial risk to the health and safety of CDCR staff, inmates, and

14          the public, including blackouts, sewage spills and environmental

15          contamination;

16     •    increased recidivism;

17     •    severe modification or elimination of inmate programs;

18     •    substantial restrictions on inmate movement; and

19     •    increased risk of deadly prison riots.

20  *See* Bien Decl., Exhibit B (Overcrowding Proclamation).  The Governor has also stated,

21  through his counsel, that "it is his belief that overcrowding affects virtually all of the issues

22  that the [*Madrid*] Court is concerned about."  *Id.*, ¶ 25 & Exhibit P (10/6/2006 Transcript at

23  33:23-25).  Both the CDCR Director of Adult Services, John Dovey, and the prison guards'

24  union (CCPOA) have declared that overpopulation creates danger to both inmates and staff,

25  and public safety concerns.  *Id.*, ¶¶ 13, 21 & Exhibits G and L (Dovey and Cox memos).

26

27

28

PLAINTIFFS' NOTICE OF MOTION & MOTION TO
           CONVENE THREE JUDGE PANEL TO LIMIT PRISON
           POPULATION, Case No. C-94-2307 CW

## II.    OVERCROWDING HARMS PRISONERS WITH DISABILITIES

Overcrowding directly impacts CDCR's ability to meet the needs of the plaintiff class. Repeatedly, during monitoring tours, defendants have cited the lack of accessible beds, lack of adequate staff, and lack of adequate funding and resources as justifications for their failure to accommodate prisoners with disabilities. Norman Decl., ¶¶ 7-8; Whelan Decl., ¶¶ 12-16; 32-45; Grunfeld Decl., ¶¶ 43-46, 58; *see also*, Bien Decl., ¶ 19 & Exhibit K at 1 (CDCR Draft Inmate Population, Rehabilitation, and Housing Management Plan, July 2006) ("[T]he CDCR is currently experiencing custodial staff shortages that will be exacerbated by demands placed on staffing based upon the projected increases in population."). These excuses all stem from population growth in the CDCR that is out of control.

Overcrowding affects plaintiffs with disabilities in at least four ways. First, *Armstrong* class members with severe mobility impairments need specialized housing placement such as wheelchair accessible cells. Yet there is a shortage of these cells throughout the system, at designated institutions and in reception centers. Enforcement Motion at 8-12. There is also a shortage of working, safe, accessible showers and toilets for wheelchair users and others with severe mobility impairments. *Id*. Class members are forced to "hop" to the toilet or be lifted on and off of it by other prisoners. *Id.* The more prisoners admitted to CDCR, the more pressure it puts on the scarce resource of accessible facilities. And it becomes harder to honor housing restrictions, such as those requiring low bunks and bottom story placement, when there are simply too few beds to go around. *Id.*

Accommodating the needs of prisoners with disabilities is particularly difficult given the shortages of custody staff. For example, without adequate custody staff for escorts, these prisoners may not be able to be transported to accessible showers located in remote areas of the prison. Norman Decl., ¶¶ 29-33; Hines Decl., ¶ 53. And custody staff may not be readily available for disability grievance interviews or to consider requests for specialized housing placement.

Second, *Armstrong* class members, who by definition suffer from mobility, kidney,

1    hearing, and vision impairments, are the most likely and frequent users of CDCR's non-
2    functional, overwhelmed medical system. As the Governor's own attorney recently
3    recognized, the overcrowding crisis has made it impossible to rectify problems in health
4    care delivery – even after Judge Henderson of this Court appointed a Receiver in *Plata v.*
5    *Schwarzenegger*, the class action regarding medical care in California prisons. The *Plata*
6    Receiver has stated numerous times that the medical care system is in a state of failure, that
7    without alleviating overcrowding it may be impossible to fix, and that the state has proven
8    itself utterly incapable of addressing the overcrowding crisis. *See, e.g.,* Bien Decl., ¶ 23 &
9    Exhibit N, Receiver's Second Bi-Monthly Report at 2-4, Receiver's First Bi-Monthly
10    Report at 2-3 ("Unless and until the living conditions of some prisons and the
11    overpopulation experienced system-wide is effectively addressed, the Receiver will be
12    impeded in applying systemic and even some ad hoc remedies to the medical care system.").

13        This analysis also applies to the problems facing prisoners with disabilities, many of
14    which overlap with or are identical to those of the medical care system. Members of the
15    *Armstrong* class need medical evaluations of their disabilities, accommodations such as
16    hearing aids and canes, and restrictions on their housing – all of which must come from the
17    overworked medical staff. All too often *Armstrong* class members are denied the
18    appropriate housing restrictions and other accommodations they need. Enforcement Memo
19    at 9-11. Such denials occur in part because there are simply no safe beds available or
20    because CDCR's contracts with outside specialists have been cancelled. *Id.; see also*
21    Grunfeld Decl., ¶¶ 43-46.

22        Class members' only recourse at that point is to file a disability grievance. Yet
23    overworked grievance staff, who receive an ever increasing number of grievances from the
24    distressed prison population, are unable to answer the grievances in a timely or effective
25    fashion. *Id.,* ¶¶ 47-59; *see also* Enforcement Motion at 22-24.

26        Third, as the Governor has acknowledged, there were thousands of incidents of
27    violence by prisoners against prisoners at California's prisons over the past year, caused by
28    the overcrowded conditions. The Governor also notes that "overcrowded prisons in other

-7-    PLAINTIFFS' NOTICE OF MOTION & MOTION TO
CONVENE THREE JUDGE PANEL TO LIMIT PRISON
POPULATION, Case No. C-94-2307 CW

1    states have experienced some of the deadliest prison riots in American history, including[]"

2    Attica, New York, in 1971, New Mexico State Penitentiary in 1981, and Lucasville, Ohio,

3    in 1993. Bien Decl, Exhibit B at 3-5 (Overcrowding Proclamation). The Governor's

4    Proclamation describes California's systemic violence in detail, listing each of the 29 most

5    severely overcrowded institutions and how many "incidents of assault/battery by inmates[,]

6    ... riots/melees, and ... weapon confiscations" occurred at each. *Id*. The majority of the

7    institutions designated to house prisoners with severe disabilities that impact their

8    placement are included in the list of the 29 most crowded and therefore most violent

9    institutions. *Id.*; *see also* Norman Decl., ¶ 4 (listing designated institutions). Yet *Armstrong*

10   class members are the most vulnerable prisoners in the system. Many cannot see or hear.

11   Many have trouble walking. All too often, they must rely on other prisoners for assistance

12   with transportation around the prison, reading basic forms, toileting, and showering. This

13   epidemic of violence makes the plaintiff class even less safe than usual.

14        Finally, the only remedy the State has adopted to address overcrowding – the transfer

15   of at most 5,000 prisoners to out of state prisons – is being denied to much of the *Armstrong*

16   class. Bien Decl., Ex. B at 8-9 (Overcrowding Proclamation); Bien Decl., ¶ 32 & Exhibit

17   W. Because of their disabilities, these prisoners are forced to remain behind in unbearable,

18   crowded conditions, with no possibility of transfer. They thus bear the brunt of

19   overcrowding more than the prison population at large.

20        Plaintiffs have patiently monitored CDCR institutions for years, seeking to cajole

21   defendants to provide accommodations to prisoners with disabilities. But defendants have

22   repeatedly shown their inability or unwillingness to meet these needs. Thus, plaintiffs are

23   required to seek further remedial orders from this Court. *See* Enforcement Motion at 8-24.

24   At the same time, however, unless this Court promptly intervenes to control the CDCR

25   population, plaintiffs' proposed remedies will fail, and defendants' treatment of prisoners

26   with disabilities will likely revert to the horrific conditions prevailing in 1996. Such

27   backsliding would be tragic for the plaintiff class. It must not be permitted.

28

1

### LEGAL ARGUMENT

2    **I.      THE PRISON LITIGATION REFORM ACT'S REQUIREMENTS FOR**

3    **CONVENING A THREE JUDGE PANEL TO LIMIT THE PRISON**
**POPULATION ARE SATISFIED AND THIS COURT SHOULD REFER THIS**

4    **MATTER TO SUCH A PANEL.**

5            The Prison Litigation Reform Act (PLRA) specifically contemplates circumstances

6    requiring judicial intervention in the form of a "prisoner release order," whereby a three-

7    judge panel orders a limitation on the prison population in order to protect the federal rights

8    of prisoners.  18 U.S.C. § 3626(a)(3).  The PLRA defines a "prisoner release order" as "any

9    order, including a temporary restraining order or preliminary injunctive relief, that has the

10    purpose or effect of reducing or limiting the prison population, or that directs the release

11    from or nonadmission of prisoners to a prison."  18 U.S.C. § 3626(g)(4).  A prisoner release

12    order is appropriate for consideration when:  (1) a court has previously entered an order for

13    less intrusive relief that has failed to remedy the deprivation of the federal right sought to be

14    remedied through the prisoner release order; and (2) the defendant has had a reasonable

15    amount of time to comply with the previous court orders.  18 U.S.C. § 3626(a)(3)(A).

16            When a court determines that these requirements are satisfied, it can order that the

17    matter be referred to a three-judge court, in accordance with 18 U.S.C. § 2284, for

18    consideration of whether an order limiting the prison population should be entered.  18

19    U.S.C. § 3626(a)(3).

20            Such an order has precedent.  Earlier this year, a federal district court in Ohio found

21    that "it is unlikely that the plan to maintain constitutional population levels at the jail will be

22    effective without some intervention by this Court in the form of a prisoner release

23    mechanism … Defendants have been given an opportunity to correct the problem of jail

24    overcrowding and have been unable to do so without further intervention by this Court."

25    Bien Decl., ¶ 26 & Exhibit Q at 5 (5/25/2006 Order, *Roberts v. County of Mahoning*,

26    D.Ohio, Case No. 4:03-cv-02329-DDD).  That Court had begun a remedial process a year

27    earlier.  The Court noted that subsequent to its previous order, there was a "great amount of

28    effort and work" by defendants to "attempt to solve those problems" identified by the Court

-9-

1  in its decision, and "progress ha[d] been made toward resolving a number of the findings."

2  *Id.* However, because the Court found that "the central issue of population control to

3  prevent future overcrowding remains unsolved" approximately one year later, it recognized

4  the need for the further intervention by the Court authorized by the PLRA. *Id.*

5      Similarly, in 1998, a three-judge panel convened pursuant to 18 U.S.C. § 3626(a)(3)

6  entered a Population Consent Order in a District of Columbia case, *Inmates of Occoquan v.*

7  *Barry*, No. 86-2128(JLG).  *See* Bien Decl., ¶ 27 & Exhibit R (Population Consent Order).

8  There, the District Court had held in 1989 that defendants were violating the constitutional

9  rights of the plaintiff inmate class, and a Special Master had been appointed.  *See Inmates of*

10  *Occoquan v. Barry*, 717 F.Supp. 854 (D.D.C. 1989).  Nine years later, a three-judge panel

11  found that the District Court's previous orders had failed to remedy plaintiffs' constitutional

12  rights, and that defendants had had a reasonable amount of time to comply with the previous

13  court orders.  Bien Decl., Ex. R (Population Consent Order at 1-2).  The panel also held that

14  because crowding was a primary cause of the violation of the plaintiffs' federal

15  constitutional rights, and no relief other than that set forth in the Population Consent Order

16  would remedy the violation, "the factual predicate for imposition of a prisoner release

17  order…has been established." *Id* at 2.

18      Prior to the passage of the PLRA, many courts found population caps necessary in

19  order to achieve constitutional conditions within prisons and jails.  *See, e.g., Harris v.*

20  *Angelina County, Tex.*, 31 F.3d 331, 335-38 (5th Cir. 1994) (upholding population cap

21  because of conditions, but also emphasizing deliberate action of defendants, because the

22  county continued to "pick up" inmates even when aware of overcrowding); *Wellman v.*

23  *Faulkner*, 715 F.2d 269, 274 (7th Cir. 1983) (upholding order for population reduction,

24  citing inadequate medical care, lack of exercise time, deficient maintenance and food

25  service); *Ruiz v. Estelle*, 679 F.2d 1115, 1148 (5th Cir. 1982) *vacated on other grounds by*

26  688 F.2d 266 (5th Cir. 1982) (upholding population cap as an appropriate remedy

27  considering the harms that existed as a result of the overcrowded conditions in the Texas

28  prisons); *Palmigiano v. Garrahy*, 639 F.Supp. 244, 258 (D.R.I. 1986) (stating population

1    caps are "commonplace" and citing caselaw); *Vazquez v. Carver*, 729 F. Supp. 1063, 1069

2    (E.D. Pa. 1989) (enforcing population cap); *Essex County Jail Inmates v. Amato*, 726 F.

3    Supp. 539, 541 (D.N.J. 1989) (discussing necessity of population cap and imposing a fine

4    for defendants' non-compliance with cap); *Benjamin v. Malcolm*, 564 F.Supp. 668, 685

5    (S.D.N.Y. 1983) (denying motion to increase population limit where there are inadequate

6    safety, unsanitary conditions, and extensive time spent by inmates in the cellblock); *Inmates*

7    *of Allegheny County Jail v. Wecht*, 565 F.Supp. 1278 (W.D. Pa. 1983), *aff'd in rel. part*, 754

8    F.2d 120 (3d Cir. 1985) (population limits imposed; ordering additional relief based on

9    conditions); *Grubbs v. Bradley*, 552 F.Supp. 1052, 1126 (M.D. Tenn. 1982) (double-celling

10   banned in certain units at Tennessee State Penitentiary: "overcrowding is a primary source

11   of all the most serious problems. . . . the only effective remedy is to reduce the prison's

12   population . . ." ).

13           Although the PLRA now creates additional requirements for the issuance of a

14   prisoner release order, it plainly anticipates that there will be times when overcrowded

15   conditions block the remedy of violations of federal rights, and that judicial intervention

16   will be necessary to alleviate those overcrowded conditions and protect the federal rights of

17   prisoners.  The State of California is now at one of these junctures.  As exhaustively

18   documented in the Enforcement Motion, the plaintiff class of prisoners with disabilities are

19   not receiving accessible housing, other needed accommodations, or an effective disability

20   grievance system.  Enforcement Motion at 8-13; 23-24.  Despite this Court's 1996 landmark

21   decision applying the ADA and Rehabilitation Act to defendants, an enforcement order in

22   2002, and seven years of intensive monitoring, plaintiffs' fundamental rights continued to

23   be denied.  Plaintiffs need immediate relief and have no other recourse than to request that

24   this Court invoke the remedy provided in the PLRA, which begins with an order of referral

25   to a three-judge panel.

26

27

28

PLAINTIFFS' NOTICE OF MOTION & MOTION TO
                      CONVENE THREE JUDGE PANEL TO LIMIT PRISON
                      POPULATION, Case No. C-94-2307 CW

**A.    Previous Less Intrusive Relief Ordered By This Court Has Failed To Remedy The Deprivation Of The Federal Rights Of The Plaintiff Class To Safe And Accessible Housing And Other Accommodations.**

The Court is familiar with the lengthy history of this case. *See also* Enforcement Motion at 2-4. From the Stipulation and Order and published opinion in 1996, to the Remedial Plan in 2001, to the Housing Order in 2002, defendants have struggled with compliance. Some progress has been made through the monitoring process, but it has been slow in coming and inadequate. Bien Decl., ¶ 6; Norman Decl., ¶ 7. And while further remedial orders are necessary to fix extensive problems identified in the Enforcement Motion, these orders will not succeed unless this Court acts to limit the CDCR population.

Put differently, the work by the parties and the Court over the past ten years is wholly inadequate in the face of the state of emergency resulting from the out-of-control overcrowding and abysmal conditions throughout the CDCR system. As a district court in Rhode Island found in *Palmigiano v. Garrahy*, 639 F.Supp. 244, 258 (D.R.I. 1986), when it imposed prison population limitations nine years after its initial finding of constitutional violations:

> The record shows that for nine years this court has employed all the artifices it could conceive to have the defendants cure the many constitutional violations it found. I have been imperious, didactic, and supplicatory; I have cajoled and waited as though for Godot. I have ever been reluctant to interfere with the operation of the prison…The veritable fortune that has been poured into [the] institution will all be for naught if positive firm steps are not immediately invoked. The overcrowding must be confronted before it becomes uncontrollable. A delay under the present conditions can give rise to problems of staggering magnitude not the least of which could be serious riots and/or a medical epidemic.

Simply put, California prisoners are currently facing horrific conditions that plainly violate the ADA, Rehabilitation Act, Permanent Injunction, and the *Armstrong* Remedial Plan. The state government has no plan for providing any remedy to prisoners with disabilities. This must not continue. This Court has tried less intrusive remedies – to no avail – and must act now to safeguard the rights of the thousands of prisoners with disabilities confined in CDCR's overburdened system.

**B.      Defendants Have Had Reasonable Time To Comply With Previous Court Orders And the *Armstrong* Remedial Plan.**

Defendants have had more than a reasonable time to comply with previous court orders and the Remedial Plan in this case.  The Court issued its decision in this case in 1996, ten years ago.  Since that time, defendants have repeatedly demonstrated that they are unable to cure their violations of rights of the plaintiff class to safe and accessible housing and other accommodations.  Enforcement Motion at 8-24.

Moreover, there is absolutely no reason to believe that more time will help defendants remedy their ongoing violations.  As the *Plata* Receiver stated in his September 19, 2006 Report, "Despite dire warnings from CDCR administrators that California's prisons will be out of space by June 2007, despite the fact that population levels are now in excess of 200% of designed capacity, nothing was presented to the Legislature by the Administration that provided for immediate relief for Prison Wardens and Health Care Man[a]gers.  Likewise, the Legislature itself offered no realistic proposals to deal with the problems faced within California's prisons in a timely and adequate manner."  Bien Decl., Exhibit N at 3:1-6 (Receiver's Second Bi-Monthly Report).  Although the Governor has ordered the immediate transfer of a few thousand prisoners to out-of-state placements, this action will ultimately do little to alleviate the overcrowded conditions in the system.  There are currently thousands of individuals in county jails throughout the state waiting to be sent to CDCR to fill the places of inmates transferred out-of-state.[2]  Bien Decl., ¶ 12 & Exhibit F.  In any event, these transfers have been categorically denied to many *Armstrong* class members.  Bien Decl., ¶ 32 & Exhibit W.

For California prisoners, time is up:  they are incarcerated now, in conditions so dire

_____

[2]  In fact, the largest county jail, Los Angeles, has recently cancelled its contract with CDCR to house 1300 inmates and will return that population to CDCR in the next few months.  Dr. Peter Farber-Szekrenyi has stated to Special Master Keating in the *Coleman* case and Receiver Sillen in the *Plata* case that the cancellation of the Los Angeles County contract will substantially worsen conditions in the CDCR for all prisoners and that he has no adequate plans to address the crisis.  September 1, 2006 Memorandum to Keating and Sillen, Bien Decl., Exhibit E.

PLAINTIFFS' NOTICE OF MOTION & MOTION TO CONVENE THREE JUDGE PANEL TO LIMIT PRISON POPULATION, Case No. C-94-2307 CW

1   that the Governor has declared a state of emergency.  For the thousands of prisoners with

2   disabilities, these conditions have even more grave:  suffering the consequences of

3   inaccessible housing and toilets, unsafe sleeping arrangements, and dangerous showers,

4   with little hope that their disability grievances will be answered in a timely and effective

5   manner.

6   **II.    AN ORDER LIMITING THE PRISON POPULATION SHOULD BE
         ENTERED IN THIS CASE BECAUSE OVERCROWDING IS THE
7        PRIMARY CAUSE OF THE VIOLATIONS OF PLAINTIFFS' FEDERAL
         RIGHTS TO DISABILITY ACCOMMODATIONS, THE VIOLATIONS
8        CANNOT BE REMEDIED WITHOUT RELIEF FROM OVERCROWDING,
         AND THIS COURT SHOULD REFER THE MATTER TO A THREE-JUDGE
9        PANEL THAT CAN ENTER AN ORDER LIMITING THE POPULATION.**

10  The PLRA, in relevant part, states:

11      A party seeking a prisoner release order in Federal court shall file *with any
        request for such relief*, a request for a three-judge court and materials
12      sufficient to demonstrate that the requirements of subparagraph (A) have been
        met.

13

14  18 U.S.C. § 3626(a)(3)(C)(emphasis added).  Thus, although a prisoner release order may

15  not be entered until the three-judge panel has been convened, the statute requires that

16  plaintiffs make the request for such relief in their motion before the District Court.  The

17  *Armstrong* plaintiff class requests relief in the form of a limitation on prison population

18  because the overcrowding emergency in California's prisons prevents the plaintiff class

19  from receiving safe, accessible housing, adequate disability accommodations, and an

20  effective and timely disability grievance system.  No other relief will fully remedy the

21  violations of plaintiffs' federal rights under the ADA and § 504.

22      As described above, the current overcrowding crisis prevents full implementation of

23  this Court's prior orders and defendants' own Remedial Plan.  Because of the ever-growing

24  population of CDCR, there is inadequate housing for prisoners with disabilities, and

25  insufficient clinical, custody, and other staff to provide the services and disability

26  grievances mandated by the Remedial Plan.  Defendants have repeatedly acknowledged that

27  there are no actions they can take to provide an immediate, or even short-term, remedy for

28  the violation of plaintiffs' rights, in light of the severe overcrowding crisis.

-14-    PLAINTIFFS' NOTICE OF MOTION & MOTION TO
CONVENE THREE JUDGE PANEL TO LIMIT PRISON
POPULATION, Case No. C-94-2307 CW

1   Given CDCR's own prediction that its population will continue to grow at escalating

2   rates, with 70,000 additional prisoners expected in the next six months, and the state's

3   admitted inability to effectively address the crisis, there is no conceivable remedy without

4   intervention by the Court in the form of a limitation on prison population. Plaintiffs have

5   demonstrated that the requirements for convening a three-judge panel have been met, and

6   that the three-judge panel is likely to find by clear and convincing evidence that a limit on

7   prison population should be entered in this case.

8                                   **CONCLUSION**

9       For the foregoing reasons, the motion should be granted, and this Court should

10  convene a  three-judge panel to limit California's prison population, pursuant to 28 U.S.C. §

11  2284 and 18 U.S.C. § 3626(a)(3).[1]

12  Dated: November 15, 2006                          Respectfully submitted,

13                                                    ROSEN, BIEN & GALVAN, LLP

14

15                                                    By:

16                                                    Michael W. Bien
                                                      Gay C. Grunfeld
17                                                    Attorneys for Plaintiffs

18                                                    PRISON LAW OFFICES

19

20                                                    By:

21                                                    Donald Specter
                                                      Sara Norman
22                                                    Attorneys for Plaintiffs

23

24

25

26

27  [1]  Plaintiffs respectfully request that the Court consider the appropriateness of a joint
    hearing with the other federal courts considering this issue in *Plata* and *Coleman*. See
28  Order Setting June 8, 2006 Hearing in *Plata* and *Coleman*. Bien Decl., Exhibit U.