1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 327-7872
8   Fax: (916) 324-5205
    Email: Lisa.Tillman@doj.ca.gov
9
   Attorneys for Defendants
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14

15  RALPH COLEMAN, et al.,                2:90-CV-00520 LKK JFM P

16                         Plaintiffs,    **DEFENDANTS' OPPOSITION
                                          TO *HECKER* PLAINTIFFS'
17       v.                               MOTION FOR PERMISSIVE
                                          INTERVENTION AND
18                                        MODIFICATION OF
                                          PROTECTIVE ORDER**
19  ARNOLD SCHWARZENEGGER, et al.,
                                          Hearing:    December 14, 2006
20                         Defendants.    Time:       11:00 a.m.
                                          Courtroom:  25
21                                        Judge:      The Honorable John
                                                      F. Moulds
22

23                           **I.**

24                    **INTRODUCTION**

25       In 1995, this Court found Defendants' failure to provide a class of inmates with serious

26  mental disorders constitutionally adequate mental health care violated the Eighth Amendment,

27  and so granted injunctive relief.  In the ensuing years, Defendants have worked with a special

28  master and his team of experts to build a proper mental health services delivery system.  This

work has culminated in this Court's approval of a set of policies and procedures, known as the Revised Program Guide, for constitutionally adequate mental health care. When Plaintiffs disputed certain portions of the Revised Program Guide, this Court denied, without prejudice, their motion to conduct post-judgment discovery on those disputed issues. In the wake of that denial, Plaintiffs' counsel has pursued a second class action, entitled *Hecker v. Schwarzenegger*, to re-litigate those disputed areas of mental health care already pending, if not addressed, in *Coleman v. Schwarznegger*. Before even obtaining class certification or a finalized complaint, Plaintiffs' counsel in *Hecker* now seeks to bootstrap some ten years of informal and formal production of documents by *Coleman* Defendants into the nascent and duplicative *Hecker* case. The *Hecker* plaintiffs' motion for permissive intervention and for modification of the protective order must be denied as improper.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.  In the *Coleman* Action, Discovery Ended in 1995 with the Entry of Judgment and Appointment of a Special Master.**

In 1990, the *Coleman* Plaintiffs filed this class action under 42 U.S.C. Section 1983 alleging that the mental health care services provided by Defendant California Department of Corrections and Rehabilitation (CDCR) were so inadequate that the class members' rights under the Eighth and Fourteenth Amendments of the United States Constitution were violated. Plaintiffs initially asserted, but ultimately dismissed with prejudice, a claim under the Rehabilitation Act. The certified class consisted of those inmates "with serious mental disorders" confined within CDCR. *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (1995).

During the litigation of this case, the parties entered into a stipulated protective order to ensure the free-flow of discoverable information to Plaintiffs' counsel concerning class members' access to the mental health services  delivery system without sacrificing the inmates' right to have their mental illness and treatment remain confidential. (Plf. Ex. A, Stipulated Protective Order, 7/29/92.) Paragraph 6 of the 1992 stipulated protective order specifically prohibits counsel from using any produced materials to develop or prepare "any another

1    litigation."  (*Id.* at ¶ 6.)

2        On July 28, 1995, this Court granted proposed intervenor Troy Davey's motion for

3    permissive intervention for limited modification of the protective order.  Intervenor Troy Davey

4    specifically sought psychological autopsies of prisoners who committed suicide at CDCR

5    facilities, the deposition of Dr. Louis Beermann, the deposition of Dr. Gritter, and Plaintiffs'

6    Response to Defendants' Objections to the Magistrate Judge's Findings and Recommendations.

7    (Plf. Ex. J, Order, Davey Motion, 2:17-21.)  This Court ruled the Intervenor's request was

8    "reasonably tailored to information relevant to the claims raised in his action."  (*Id.* at 2:22-23.)

9        In 1995, discovery and trial of the *Coleman* action ended with the Court affirming the

10   Magistrate's Findings and Recommendations and granting injunctive relief.  A special master, J.

11   Michael Keating, Jr., was appointed to "monitor compliance with the court-ordered injunctive

12   relief."  *Coleman*, 912 F. Supp. at 1324.   The Order of Reference specifically vested the special

13   master with complete and unfettered access to the records maintained by CDCR and the

14   unfettered ability to interview employees of CDCR.  (Def. Ex. 1, Order of Reference, 5:18-6:2.)

15   The special master's duty is to work closely with CDCR in creating a constitutionally compliant

16   mental health services delivery system.  (*Id.* at 2:10-21.)  The Order of Reference does not

17   provide Plaintiffs with any right of discovery.  (*Id.*)

18   **B.  The Same Plaintiffs Filed Other Class Action Suits Against Defendant CDCR.**

19       Side-by-side with the litigation of the *Coleman* case, the same Plaintiffs' counsel filed a

20   class action suit concerning the rights of physically disabled inmates, entitled *Armstrong v.*

21   *Wilson*, USDC N.D. Cal. Case No. C94-2307, against Defendants CDCR and the Governor in

22   1994.  Two years later, the same Plaintiffs' counsel filed  a class action suit concerning the rights

23   of developmentally disabled inmates, entitled *Clark v. California*, USDC N.D. Cal. Case No.

24   C96-146, against Defendant CDCR and the Governor.

25       In 1998, the stipulated protective order in this matter was modified, by stipulation, to

26   incorporate actions of *Armstrong* and *Clark*.  Plaintiffs' and Defendants' counsel in the

27   *Armstrong*, *Clark* and *Coleman* cases were the same. The classes of inmates were distinct, with

28   nominal overlap when individual inmates presented with dual diagnosis (e.g., developmental

1 disability and a serious mental disorder).

2 **C.   In *Coleman*, Post-Judgment Production of Persons and Documents Has Occurred In**

3 **Response to the Special Master's Request as No Court Order Permits Plaintiffs Any**

4 **Discovery.**

5      In the ensuing ten years since entry of judgment in this case, Defendant CDCR has

6 provided Special Master Keating with information about the mental health condition of inmates

7 within the 30,000 member class of mentally ill inmates, as well as the condition of the mental

8 health services delivery system at each of its 33 institutions.  The information has been in the

9 form of both (1) court-ordered production of statistical information on biweekly, monthly, semi-

10 annual and yearly bases and (2) voluntary, often informal, production of information sought at

11 various institutional tours, meetings with counsel and the special master, or teleconferences

12 about specific inmate-patients, specific programs within the mental health services delivery

13 system at certain institutions (e.g., rounding of administrative segregation inmate-patients,

14 educational opportunities for inmate-patients through the Bridge Program), and issue-specific

15 information (such as the classification of inmate-patients within the mental health services

16 delivery system). (Ex. 2, Cyclical Reports; Dec. Tillman, ¶ 5.)  The information has been

17 transmitted in different ways: email and letters sent to Special Master Keating with a courtesy

18 copy to Plaintiffs' counsel, declarations attached to pleadings, testimony presented at hearings,

19 documents provided before, during or and after the special master's tours of an institution. (Dec.

20 Tillman, ¶¶ 4-8.)

21      On June 13, 2006, the *Coleman* parties appeared before the Honorable Lawrence Karlton

22 to discuss litigation of Revised Program Guide issues.  In certain case management conference

23 statements, Plaintiffs identified certain disputed areas of the Revised Program Guide, including

24 compliance with the Americans with Disabilities Act in the provision of classification points to

25 inmate- patients and in the provision of vocational and educational opportunities to inmate-

26 patients.  (Ex.3, Plf. Status Conference Statement, 5/19/06, 3:20-23, 6:26-7:4, 5/19/2006.)  Judge

27 Karlton entered an order stating that Plaintiffs could assert challenges to disputed areas of the

28 Revised Program Guide by filing a formal objection raising the issue and designating an expert

1  on the matter.  (Order, 5/24/06, 2:10-17.)

2          On July 13, 2006, Plaintiffs filed a formal motion seeking the right to conduct post-

3  judgment discovery and the right to obtain tour binders presented at non-attorney monitoring

4  tours.  (Plf. Ex. E.)  There was no discovery plan nor any discovery parameters, such as time

5  frame or issues, indicated in the motion.  Defendants' responded that the request for post-

6  judgment was overbroad and the request for tour binders was overly burdensome.  (Def. Oppo

7  Request Post-Judgment, 8:18-21, 9:8-22 and 10:5-9.)  This Court denied both requests in the

8  Plaintiffs' motion for post-judgment discovery.  (Order, 9/29/06, 3:24-26, 4:1-7.)

9  **D.  The *Hecker* Case is Subject to a Motion to Dismiss for Stating Claims Already**

10  **Presented in *Coleman*.**

11          The *Hecker* complaint was filed on December 1, 2005. The *Hecker* plaintiffs alleged that

12  the vocational and educational opportunities as implemented under *Coleman* and the *Coleman*

13  guidelines violate the Americans with Disabilities Act and the Rehabilitation Act.

14          On December 2, 2005, the *Hecker* plaintiffs filed a notice of related case pursuant to

15  Eastern District Civil Rule 83-123,  with the cases of *Coleman, Klemaske v. CDCR, et al.*,

16  (E.D. Cal. Case No. CIV S-04-1750 FCD KJM P), and *Wilson v. Woodford, et al.*, (E.D. Cal.

17  Case No. S-05-0876 LKK GGH P).  The *Coleman* Defendants objected to the notice, contending

18  the *Hecker* complaint relied upon the Americans with Disabilities Act, which made the case

19  unrelated to the Eighth Amendment-based *Coleman* action.  (Def.  Response to Notice Related

20  Case, 2:9-14, 3:20-23, 4:1-6.)  On May 2, 2006, this Court ruled that *Hecker* and *Coleman* were

21  related. (Order, 5/2/06.)  The Order cautioned that relating the cases merely had the result that

22  the actions are assigned to the same judge and magistrate judge; no consolidation of the actions

23  was effected.  (*Id.*, 2:23-26.)

24          On October 20, 2006, the *Hecker* plaintiffs filed a second amended complaint expanding

25  the claims to include a broad range of issues from assessment of four points to classification

26  scores, implementation of the heat risk plan, access to fire camp, prison industries, and

27  participation in the substance abuse program.  The complaint is  allegedly brought on behalf of

28  participants in the mental health services delivery system at eight facilities.

OPPO. TO MOT. INTERVENE, MODIFY PROTECTIVE ORDER

1    The Second Amended Complaint is now subject to a motion to dismiss, set for hearing

2    on January 11, 2006.  The motion to dismiss challenges the named plaintiffs' standing to bring

3    the action, particularly on the basis of failure to exhaust administrative remedies.  Further, the

4    motion asserts the *Hecker* complaint fails to state a cognizable claim because it replicates many

5    of the same claims in the pending *Coleman* case.  Defendants have also filed a motion to strike

6    the class allegations in the complaint.  Plaintiffs' counsel has not yet sought nor obtained class

7    certification.

8    **E.  A Mirror Image of the Instant Motion Has Been Filed in the *Armstrong* Case.**

9    On November 9, 2006, the *Hecker* plaintiffs filed this motion for permissive intervention

10   and for modification of the protective order.  The motion does not limit the documents to be

11   produced to the *Hecker* plaintiffs.  The motion does not indicate whether there will be any

12   separation or "wall" to ensure any confidentiality in the records obtained from the certified class

13   members of *Coleman* from the non-certified class members of *Hecker*.  While the motion speaks

14   of obtaining *Coleman* "discovery", no formal discovery rights have been provided to the

15   *Coleman* plaintiffs.

16   On November 7, 2006, a parallel motion for permissive intervention and for modification

17   of the protective order was filed in the *Armstrong* case by the "*Hecker/Coleman*" plaintiffs.  (Ex.

18   4, *Armstrong* Motion for Permissive Intervention.)  In the *Armstrong* motion, the

19   *Hecker/Coleman* plaintiffs seek permission to intervene in *Armstrong* order to obtain *Armstrong*

20   records for use in the *Hecker* and *Coleman* cases.  (*Id.*)  The motion does not limit the documents

21   to be produced to the non-certified *Hecker* plaintiff class or to the certified *Coleman* class.

22                                          **III.**

23                                   **LEGAL STANDARD**

24   The *Hecker* plaintiffs seek intervention not as a matter of right, but as a matter of this

25   court's discretion.  Rule 24 (b)(2) of the Federal Rules of Civil Procedure permits intervention in

26   an action "when an applicant's claim or defense and the main action have a question of law or

27   fact in common."  Even if as a matter of law a common question or law or fact exists, the district

28   court must exercise its discretion and consider whether the intervention will "unduly delay or

1   prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24 (b); *Stallwarth*

2   *v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). Permissive intervention is "not intended to

3   allow the creation of whole new lawsuits by the intervenors." *Deus v. Allstate Ins. Co*, 15 F.3d

4   506, 525 (5th Cir. 1994).

5       The *Hecker* plaintiffs' request for modification of the *Coleman* protective order must be

6   predicated upon a demonstration of the relevance of the protected discovery to the *Hecker*

7   proceedings and its general discoverability. Fed. R. Civ. P. 26; *Foltz v. State Farm Mut. Ins.*

8   *Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). "Requiring a showing of relevance prevents collateral

9   litigants from gaining access to discovery materials merely to subvert limitations on discovery in

10  another proceeding." *Id.*, citing *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1298 (7th Cir.

11  1980).

12                                         **IV.**

13                              **LEGAL ARGUMENT**

14  **A.    The Hecker Plaintiffs' Motion to Intervene in a Class Action in Which They Are**

15         **Already Class Members Must be Denied or, in the Alternative, Stayed Pending**

16         **Resolution of the Motion to Dismiss in *Hecker*.**

17         **1. The Standard for Permissive Intervention for Modification of a Protective Order**

18            **Is Not Applicable to Duplicative Class Actions.**

19       Rule 24 assumes the obvious in regulating permissive intervention:  the party seeking to

20  intervene is not presently a party to the case. The *Hecker* plaintiffs, by their own assertion, are a

21  subset of the *Coleman* plaintiffs and therefore a party to the *Coleman* case. (Plf. Memo Ps &As,

22  2:10-14.) Their chosen strategy of litigating their *Coleman* claims and concerns in the *Hecker*

23  action and then intervening in *Coleman* to modify its protective order must be viewed with

24  disfavor. As much as the *Hecker* plaintiffs may be frustrated with the orders in the *Coleman*

25  case, those *Coleman* orders have res judicata effect. *Owens v. Kaiser Foundation Health Plan*,

26  *Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). The *Coleman* court retains jurisdiction over the

27  Defendants' compliance with its ordered injunctive relief. Any attempt to undo the work and

28  established processes of the *Coleman* case, particularly by relitigation under a different name at a

OPPO. TO MOT. INTERVENE, MODIFY PROTECTIVE ORDER

1    different time, must be rejected.

2         Plaintiffs rest their request for permissive intervention upon a single case, *Beckman*

3    *Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992). Granted, the *Beckman* decision may

4    be read as finding that Rule 24 permits post-judgment intervention to enable modification of a

5    protective order and thus release of previously-sealed documents. However, that finding is

6    premised upon a factual context that is not presented in the instant motion:

7    **(a) Procedural Posture of the Cases**: The *Beckman* decision addressed intervention into a post-

8    settlement, dismissed action concerning a common issue, coverage under an insurance policy.

9    This motion addresses intervention into a case that has not been dismissed. The *Coleman*

10   defendants are engaged in active compliance with the injunctive relief ordered by this Court

11   pursuant to liability determined under Eighth Amendment standards for all components of

12   mental health care. While the *Hecker* and *Coleman* cases may derive from a shared set of facts,

13   the cases are brought under different legal theories: the *Hecker* plaintiffs' claims are under the

14   Americans with Disabilities Act and Rehabilitation Act, the *Coleman* plaintiffs obtained relief

15   under the Eighth Amendment.

16   **(b) Volume of Documents:** At stake in the *Beckman* case was, thanks to the plaintiffs' self-

17   imposed limitation, the release of a discrete set of documents, six deposition transcripts

18   concerning the administration of an insurance policy. Similarly, at stake in the intervention of

19   Troy Davies was a set of documents specifically enumerated by the intervenor in his motion. In

20   contrast, the *Coleman* plaintiffs have not provided a limited and specific statement of sought

21   documents. Thus, at stake in this matter are some ten years of documents produced to the special

22   master, the Court, and counsel. (Dec. Tillman, ¶¶ 3-8.)The volume of documents can only be

23   described in terms of filled boxes placed on floor-to-ceiling shelves in a large storage room.

24   (*Id.* at ¶ 9.)

25   **(c) Intervenors' Status:** The *Beckman* intervenors did not seek to become, and were not,

26   parties to the prior action. In contrast, the *Hecker* plaintiffs describe their class as, at the very

27   least, a subset of the *Coleman* case. (Plf. Memo Ps & As, 2: 10-14.)

28   **(d) Sought Relief:** The *Beckman* intervenors did not seek any court ruling on any of the same or

OPPO. TO MOT. INTERVENE, MODIFY PROTECTIVE ORDER

1   additional claims in the prior action.  The *Hecker* plaintiffs-intevenors seek a court ruling on the

2   same claims stated in the instant action.

3   (e) **Specific Harm to Plaintiffs in Prior Action**: The plaintiffs in the prior *Beckman* action

4   expressly did not object to the intervention request.  The *Coleman* plaintiffs are represented by

5   the same counsel representing the *Hecker* intervenors.  Without a complete identity and

6   certification of the class asserted in *Hecker* with the class in *Coleman*, any objection by the

7   *Coleman* plaintiffs to this request on the basis of privacy concerns must be asserted by another

8   holder of the privilege, Defendants.

9   **(f)  Specific Harm to Defendants in Prior and Present Action:** The *Beckman* defendants

10  failed to specifically articulate prejudice or harm from modification of the protective order and

11  so gave the court no rationale to deny the request to intervene.  The *Coleman* defendants as well

12  as the Hecker defendants hereby provide this Court with a specific statement of the prejudice

13  that will result from any granting of this motion.

14      The context of the motion to intervene in the *Beckman* case is perfectly suited to the

15  equitable spirit of Rule 24.  The *Beckman* non-party's motion to intervene for a discrete and

16  defined modification of a protective order was a straightforward request for limited relief from

17  an order in a dismissed action. The opposite is true of the instant motion.  The *Hecker* plaintiffs,

18  who also term themselves *Coleman* plaintiffs, present an overbroad request for relief from an

19  order in the very same pending action in which they assert status as class members.  This

20  bootstrapping of compliance-oriented document production from the pending *Coleman* action

21  into the nascent *Hecker* action, involving an asserted subset of the *Coleman* class, falls outside

22  the permissive intervention addressed by the *Beckman* court and well outside the spirit of equity.

23  **B.  The Proposed Modification of the Protective Order Is Overbroad and Not Relevant to**

24  **the Claims in the *Hecker* Case.**

25      Rule 24 (b) expressly requires the court to consider whether the intervention will "unduly

26  delay or prejudice the adjudication of the rights of the original parties." The *Coleman* defendants

27  produced a range of documents to Special Master Keating, with the great majority of those

28  documents having no relevance to the *Hecker* claim of failure to provide vocational and

OPPO. TO MOT. INTERVENE, MODIFY PROTECTIVE ORDER

educational opportunities to mentally ill inmates.  The production of documents in a typical month includes statistical data on clinical staffing resources, statistical data on census within categories of mental health care at certain institutions, efforts to recruit clinical staff, and reports on suicides.  (Dec. Tillman, ¶ 5; Exh. 2, Cyclical Reports Calendar.)  The requested modification of the protective order contains no parameters in terms of timeframe, subject matter or claim or defense, with the result of a complete re-opening of determined issues in *Coleman*.

Because the requested modification is not sufficiently tailored to the *Hecker* claims, the requested modification of the protective order should be denied under Rule 26 (c).  The *Hecker* plaintiffs have not established their claims or nor obtained class certification.  They are therefore unable to establish the relevancy of this request for a modification of the protective order in *Coleman* to yield all the documents produced to the Special Master over the past decade to them.

**C.  The *Hecker* Plaintiffs' Request Includes *Coleman* Defendants DOF and DMH, Making the Request Overbroad and Unduly Prejudicial.**

At the time of trial and judgment, the *Coleman* defendants consisted of the Governor and high-level employees of California Department of Corrections and Rehabilitation (formerly California Department of Corrections) named in their official capacities.  In the past year, Stephen Mayberg of the Department of Mental Health (DMH) and Michael Genest of the Department of Finance (DOF) have been joined in their official capacities. (Order, 6/27/06; 7/28/06. )  Notably, the joinder of Director Genest occurred in the midst of production - *for in-camera review* - of over 1,000 pages of privileged budget documents concerning the staffing of clinical positions for implementation of the Revised Program Guide. (See Def. Submission, 7/19/06.) The joinder of Director Mayberg occurred in the midst of hearings concerning submitted bed plans and the provision of  intermediate care and acute care beds.  (Order, 5/2/06.) Neither of these agencies have any relationship to the *Hecker* plaintiffs or to the *Hecker* claims concerning deprivation of vocational and educational opportunities to *Hecker* plaintiffs.

The *Hecker* case is brought against only CDCR and the Governor, yet the *Hecker* plaintiffs do not limit their request to document production from only CDCR and the Governor. Rather, the *Hecker* plaintiffs appear to want any and all documents produced in the *Coleman*

1  case, even those pertinent to DMH and DOF.  Any request for documents from non-parties must

2  be made in accord with federal rules of procedure.  To the extent the request for modification of

3  the protective order includes documents from DMH and DOF, the request must be denied as

4  improper, overbroad and unfairly prejudicial.

5  **D. The Production of *Coleman* Documents to the *Hecker* Plaintiffs Is Unduly Prejudicial.**

6         **1.  The *Coleman* Compliance Efforts Will Be Subject to a Second Round of**

7            **Litigation.**

8        Defendants are in the midst of meeting cornerstone court orders to complete the

9  development of a constitutionally adequate mental health services delivery system.  *Coleman v.*

10  *Wilson*, 912 F. Supp. 1282, 1298 n. 10 (1995).  The necessary set of policies and procedures for

11  the care of mentally ill inmates has been approved by this Court.  (Order, 3/3/06.)  Training on

12  the Revised Program Guide has commenced.  (Dec. Tillman, ¶ 12.)  The necessary number of

13  beds, with forecast mechanisms, are being put in place for the care of *Coleman* class members.

14  (Def. Submission, 6/30/06 re: Long Term Bed Plan; Def. Submission, 7/5/06 re: Interim Bed

15  Plan; Order, 9/11/06.)  Defendants are earnestly developing strategies to ensure adequate staffing

16  to provide care and to manage the care given. (See Order, 3/3/06, Psychiatrist Vacancies,

17  Headquarters Staff; Order 3/9/06, Pay Differential; Stipulation and Order, 8/11/06, Psychiatrist

18  Qualifications.)  The sought production of these ten years of documents will enable Plaintiffs to

19  forum shop their *Coleman*-based concerns, thus undermining the compliance efforts of the

20  *Coleman* defendants and the adjudication of those concerns by the *Coleman* court.  Subjecting

21  the *Coleman* defendants to a second battery of document production and possibly court orders

22  stemming from those documents is unduly burdensome and will only work to the prejudice of

23  the *Coleman* defendants.  (Dec. Tillman, ¶¶ 9, 10, 13, 14.)

24  **2.  Given the Age of the *Coleman* Case, the Sought Production Is Overbroad**

25      **and Unduly Burdensome to the *Coleman* Defendants.**

26        Ten years ago, Defense counsel did not have the benefit of a computer software program

27  to maintain and organize documents generated in any litigation, even in a systemwide class

28  action suit. (Dec. Tillman, ¶ 9.)  Even with the recent adoption of an electronic document

1  management system, the majority of the documents produced in this case are housed on floor-to-

2  ceiling metal shelves in a ten by fifteen square foot room in chronologically-labeled boxes. *(Id.)*

3  Accessing information in these boxes will require physical stamina, an insensitivity to dust, and

4  weeks of attorney time to sort through chronologically filed documents to determine those that

5  are relevant and non–privileged for production. *(Id.)*

6  **E.   The Sought Production of *Coleman* Plaintiffs' Identifying Information to *Hecker***

7  **Plaintiffs Is Premature and Improper.**

8          There is no question that the *Coleman* protective order was intended to and

9  expressly did address preserving the confidentiality of inmate-patients' status as participants in

10  the CDCR mental health services delivery system. (Plf. Ex. A, Stipulated Protective Order,

11  7/29/92, ¶¶ 1, 2.)  An inmate's mental health status is given confidentiality under federal and

12  state laws. *See Jaffe v. Redmond*, 518 U.S. 1, 15 (1996); *See* also 45 C.F.R. § 164.502 et. seq.,

13  (Health Insurance Portability and Accountability Act (HIPA)); Fed. R. Evid. 501; Cal. Evid.

14  Code §990 et. seq.; Cal. Evid. Code § 1010 et. seq.)  The *Hecker* plaintiffs erroneously contend

15  the *Hecker* putative class is one and the same as the *Coleman* class. (See Plf. Memo Ps & As,

16  2:8-12.)  However, while the *Hecker* plaintiffs may believe the classes are the same, no court has

17  actually certified any inmates as composing the class of inmate-patients described in the *Hecker*

18  complaint.  The *Hecker* complaint remains at the pleading stage, with a pending motion to

19  dismiss asserting, in part, the named plaintiffs lack standing.   Further, as no plaintiff class has

20  been certified in *Hecker*, then this Court is unable to bind that plaintiff class to the

21  confidentiality provisions of the *Coleman* protective order. Therefore, this motion for

22  intervention to obtain confidential information under the *Coleman* protective order is improper

23  and premature.

24                                          **CONCLUSION**

25          The motion to intervene to modify the *Coleman* protective order must be denied as

26  improper and prejudicial.  Rule 24 of the Federal Rules of Civil Procedure does not address

27  intervention to modify a protective order by existing class members.  Further, the requested

28  modification of the protective order has no limits in terms of timeframe of documents, nature of

OPPO. TO MOT. INTERVENE, MODIFY PROTECTIVE ORDER

1  documents, or source of documents.  In light of the huge production of documents on a

2  multiplicity of issues and claims over the past decade by CDCR, the Governor and, more

3  recently, Defendants DOF and DMH, the requested modification is overbroad and unduly

4  prejudicial.  The motion to intervene for the purpose of modifying the protective order should be

5  denied.

6           In the alternative, the motion to intervene and modify the protective order should be

7  stayed pending a ruling on the *Hecker* motion to dismiss.  While asserting the  commonality of

8  their plaintiffs and their claims with those in the *Coleman* case, the *Hecker* plaintiffs must

9  acknowledge that no court has passed on the sufficiency of their complaint nor certified their

10 putative class.  Without such approval, the *Hecker* plaintiffs are not entitled to obtain

11 confidential information when they do not have the standing to be bound by the provisions of the

12 *Coleman* protective order.  Until the *Hecker* complaint survives the motion to dismiss and the

13 class is certified, this Court should stay the motion or deny the motion without prejudice,

14 pending  rulings on the motion to dismiss and any class certification motion.

15           Dated: December 1, 2006

16                                   Respectfully submitted,

17                                   BILL LOCKYER
                                     Attorney General of the State of California

18                                   JAMES M. HUMES
19                                   Chief Assistant Attorney General

                                     FRANCES T. GRUNDER
20                                   Senior Assistant Attorney General

21                                   ROCHELLE C. EAST
                                     Supervising Deputy Attorney General

22

23                                   */s/ Lisa A. Tillman*

24

25                                   LISA A. TILLMAN
                                     Deputy Attorney General
                                     Attorneys for Defendants

26

27
   30191658.wpd
28 CF1997CS0003

   OPPO. TO MOT. INTERVENE, MODIFY PROTECTIVE ORDER
                                           13