BILL LOCKYER
Attorney General of the State of California
JAMES M. HUMES
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 327-7872
 Fax:  (916) 324-5205
 Email:  Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                  Plaintiffs,<br><br>     v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                 Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONVENE A THREE-JUDGE PANEL TO LIMIT THE PRISON POPULATION**<br><br>Hearing:      December 11, 2006<br>Time:         10:00 a.m.<br>Courtroom:  Four<br>Judge:       The Honorable<br>                  Lawrence K. Karlton |

## I.

## INTRODUCTION

Plaintiffs filed a complaint in 1992 for failure to provide constitutionally-adequate mental health services to a class of inmates with serious mental disorders.  In 1995, this Court granted Plaintiffs' sought injunctive relief and directed Defendants, with oversight provided by a special master, to establish a constitutionally adequate mental health services delivery system.

OPPO. MOTION THREE-JUDGE PANEL

1    In the following ten years, this Court has issued orders addressing the key elements of a mental

2    health services system: adequate clinical staff, appropriate procedures and policies for mental

3    health care, available licensed and unlicensed beds for care, and an information management

4    system.  In those ten years, there has been no order directed to the overall population of

5    Defendant California Department of Corrections and Rehabilitation (CDCR).

6         Plaintiffs now request a three-judge panel be convened to address the very issue that

7    was not addressed by their complaint or by this Court's own orders:  the population of the state

8    prison system.  Defendants have already acknowledged the issue of the prison population and

9    undertaken steps to address it.  Under the Prison Litigation Reform Act (PLRA), Plaintiffs'

10   requested relief must be predicated upon a prior court order aimed at the population issue and

11   Defendants' failure with the passage of a reasonable amount of time, to satisfy that court order.

12   Plaintiffs did not seek in their complaint and this Court has never issued an order addressing the

13   overall population of CDCR.  Without such a predicate order, this motion is improper and

14   requests improperly intrusive relief.  Defendants respectfully request this Court deny the motion.

15                                              **II.**

16                          **FACTUAL AND PROCEDURAL BACKGROUND**

17        In 1990, the *Coleman* plaintiffs filed this class action under 42 U.S.C. Section 1983

18   alleging that the mental health care services provided by CDCR were so inadequate that the class

19   members' rights under the Eighth and Fourteenth Amendments of the United States Constitution

20   were violated.  Plaintiffs initially asserted, but ultimately dismissed, a claim under the

21   Rehabilitation Act.  The certified class consisted of those inmates "with serious mental

22   disorders" confined within CDCR. *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (1995).

23   Plaintiffs sought declaratory and injunctive relief.

24        In 1995, this Court affirmed the Magistrate''s Findings and Recommendations and

25   granted injunctive relief in the form of directing the development and implementation of

26   remedial plans and appointing a special master to monitor compliance with the injunctive relief.

27   *Coleman v. Wilson*, 912 F.Supp. 1282 (1995).

28        This Court has issued a variety of orders to ensure the development of a

OPPO. MOTION THREE-JUDGE PANEL

1  constitutionally-adequate mental health services delivery system.  None of those orders directed

2  Defendants to address the inmate population of the entire CDCR system.  (Dec. Tillman, ¶¶ 3,

3  4.) Rather, the Court's orders have been tailored to meet the relief requested by the *Coleman*

4  class: an adequate mental health services delivery system.  (*Id.*)  The court orders have

5  consistently focused on the development of the integral components of a constitutionally-

6  adequate mental health care system: sufficient and qualified mental health care staff, appropriate

7  policies and procedures for mental health care, accurate record and data management, and

8  sufficient licensed and unlicensed beds for mental health patients.  *Coleman*, 912 F.Supp. at

9  1298 n. 10 (1995), citing *Balla v. Idaho State Board of Corrections*, 595 F.Supp. 1558, 1577 (D.

10 Idaho 1984); Dec. Tillman at ¶¶ 3 - 5.

11         In the past year, Defendants have received court orders on the cornerstones of a

12 constitutionally-adequate system and have submitted or are submitting, in timely fashion,

13 responsive plans, including:

14         **a.  Appropriate Mental Health Care Policies and Procedures.**

15         Just ten months ago, this Court approved the Revised Program Guide and directed

16 immediate implementation of its statement of policies and procedures for mental health care.

17 (Order, 3/3/06.)  Training to implement the Revised Program Guide has commenced. (Ex. 2,

18 11/13/06 memorandum; Dec. Tillman, ¶ 6 a.)

19         **b.  Recruitment of Qualified Mental Health Care Clinicians.**

20         Just ten months ago, this Court ordered Defendants to submit a plan for reducing the

21 rate of vacancies among psychiatrists system-wide. (Order, 3/3/06.)  At the same time, this Court

22 directed Defendants to expand the Division of Correctional Health Care Services' central office

23 mental health staff to meet the growth and present size of the CDCR mental health staff and

24 caseload. In the following months, this Court directed Defendants to incorporate and seek

25 funding for mental health staffing necessary to implement the Revised Program Guide (Order,

26 6/21/06) and approved a stipulated process for evaluation of psychiatrists (Order, 8/11/06.)

27 Defendants submitted plans to meet those orders.  (Dec. Tillman, ¶ 6 b.)

28 *//*

OPPO. MOTION THREE-JUDGE PANEL

1

### c. Sufficient Mental Health Care Beds for Mentally Ill Inmates.

2      Just ten months ago, this Court ordered Defendants to submit a set of plans to address

3  the needs of two categories of inmate-patients: the first, those in need of acute and intermediate

4  inpatient beds, and the second, those in need of mental health crisis beds. (Order, 3/3/06.)

5  Shortly later, this Court directed Defendants to submit additional bed plans: a plan for providing

6  mental health care to certain mentally ill inmates in reception centers, a plan for the interim

7  provision of intermediate inpatient and mental health crisis beds and an amended long term plan

8  based on current population projections. (Orders, 5/2/06.)  Further, Defendants were ordered to

9  coordinate their compliance efforts, particularly those involving bed planning, with the Receiver

10  appointed on April 17, 2006 in *Plata v. Schwarzenegger*, USDC N.D. Cal. Case No. C01-1351

11  THE.  (Order, 6/8/06.)

12      Defendants have submitted plans to address the bed needs of mentally ill inmates.

13  (Dec. Tillman, ¶ 6 c.)  Some of the bed plans have already been implemented, such as the

14  activation of additional beds at Salinas Valley State Prison and the swap of acute beds at

15  California Medical Facility and Atascadero State Hospital.  (*Id.*)  Other plans remain to be

16  implemented under self-imposed deadlines, such as additional mental health beds at Mule Creek

17  State Prison and California State Prison, Sacramento.  (*Id.*)

18      Only two months ago, this Court entered additional orders concerning the provision of

19  appropriate beds for mentally ill inmates. On October 20, 2006, Defendants were ordered to

20  contract with Navigant Consultants to conduct annual population reviews and updates of their

21  projections for mental health program populations from 2007 through 2009.  (Order, 10/20/06.)

22  On the same day, Defendants were ordered to file a final long range plan for the provision of

23  acute and intermediate inpatient beds by December 19, 2006, as well as a plan for the provision

24  of enhanced outpatient program by January 2007.  Lastly, the coordination of any 'design and

25  build' construction projects in the *Coleman* case and *Plata* case was the subject of a recent court

26  order.  (Order, 10/20/06.)

27  //

28  //

OPPO. MOTION THREE-JUDGE PANEL

**d.  Appropriate Means of Addressing Suicide Issues Are Underway.**

Defendants were directed to submit a plan for dealing with the escalating percentage of suicides occurring in administrative segregation units.  (Order, 6/8/06.)  A plan, developed in collaboration with the Special Master, Plaintiffs' counsel and their experts, was submitted on October 2, 2006.  (Dec. Tillman, ¶ 6 d.)  Upon receipt of objections to certain aspects of the plan, Defendants agreed to adopt many of Plaintiffs' recommendations.  (Def. Response to Plf. Objections, filed 12/1/06.)  Defendants have already implemented portions of the plan, such as the commencement of thirty-minute welfare checks, and are scheduled to implement other portions of the plan, such as prescreening placement of inmates endorsed for administrative segregation units.  (*Id*.)  Further, Defendants worked with Plaintiffs to reach a stipulation, approved by this Court, requiring the use of one-to-one monitoring of inmates at risk for suicide. (Order, 7/5/06.)

**III.**

**LEGAL STANDARD**

The PLRA "establishes a comprehensive set of standards to govern prospective relief in prison condition cases." *Gilmore v. California*, 220 F.3d 987, 998 (9th Cir. 2000).  It imposes strict limitations on the relief that can be awarded in civil actions with respect to prison conditions.  18 U.S.C. §§ 3626.  The PLRA was enacted, in part, to eliminate the very motion filed by Plaintiffs. As noted in *Gilmore*, "[s]ponsors of the PLRA were especially concerned with courts setting ''population caps'' and ordering release of inmates as a sanction for prison administrators'' failure to comply with the terms of consent decrees designed to eliminate overcrowding." *Gilmore*, 220 F.3d at 999 n.14. "By establishing tough new conditions that a Federal court must meet before issuing a prison cap order, this bill will slam-shut the revolving prison door." *Id.*, citing 141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) (statement of Sen. Dole).

The PLRA states that no prisoner release order may be entered unless two conditions have occurred:

(i) a court has previously entered an order for less intrusive relief that has failed to

1    remedy the deprivation of the Federal right sought to be remedied through the prisoner

2    release order; and

3    (ii) the defendant has had a reasonable amount of time to comply with the previous

4    court orders.

5  18 U.S.C. §§ 3626 (a)(3)(A), (B).

6    Plaintiffs bear the burden of proving that these two conditions have been satisfied. 18

7  U.S.C. §§ 3626(a)(3)(C).  Moreover, only upon Plaintiffs satisfying this burden may this Court

8  request a three-judge panel be convened "to determine whether a prisoner release order should

9  be entered."[1]/18 U.S.C. §§ 3626(a)(3)(D).

10    The explicit statutory language of the PLRA provides the legal standard for

11  determining this motion.  Plaintiffs' motion, however, relies primarily on case law that predates

12  the PLRA. (Plf. Mot. 14:12-16:8.)  In fact, Plaintiffs' motion only cites two unpublished orders

13  that construe the relevant PLRA provision.  These orders, however, are distinguishable and

14  inapplicable.  Plaintiffs' first unpublished order is distinguishable because the underlying case

15  expressly involved "changes in the system [that] could alleviate the overcrowding component of

16  the unconstitutional conditions in the [county] jail." *Roberts v. County of Mahoning*, No. 4:03-

17  CV-02329-DDD, slip op. at 2 (N.D. Ohio May 25, 2006).  Those orders, however, are

18  distinguishable and inapplicable.  In *Roberts*, the parties agreed to an inmate population cap as

19  part of the remedial phase of the case.  That cap was then incorporated into an order.  (*Id.*).

20  When that order and prison cap could not be complied with, that court held that intervention of

21  the court was necessary to impose a prisoner release mechanism.  Accordingly, that court

22  ordered the matter to a three-judge panel to review the prisoner release matter.  But in *Coleman*,

23  the underlying dispute involves compliance with the ADA, not overcrowding.

24    In Plaintiffs' second cited case, *Inmates* of *Occoquan v. Barry*, No. 86-2128 (D.D.C.

25

26    1. The PLRA provides that "a prisoner release order shall be entered only by a three-judge
27  court in acordance with section 2284 of title 28..." 18 U.S.C. § 3626 (a)(3)(B).  To impose a prisoner
    release order this three-judge court must find "by clear and convincing evidence that -(i) crowding
28  is the primary cause of the violation of a Federal rights; and (ii) no other relief will remedy the
    violation of the Federal right."  18 U.S.C. § 3626(a)(3)(E).

1   Jan. 20, 1998), the plaintiffs claimed that prison overcrowding violated the inmates' Eighth

2   Amendment rights.  In contrast, the *Coleman* plaintiffs have not made claims concerning the

3   overall CDCR population.  Further, this unpublished order is inapplicable to the issue currently

4   before this Court since it is a three-judge panel's decision to issue a population cap.  *Id.* at 1.

5   Here, the issue facing the Court is whether to refer this matter to a three-judge panel at all, a

6   decision involving a different standard of law.  Plaintiffs have not met the legal standard stated

7   in the PLRA for referral to a three-judge panel.

8                                    **V.**

9                            **LEGAL ARGUMENT**

10  **Under the  PLRA, the Convening of a Three-Judge Panel to Address Population Issues**

11  **May Only Occur After Less Intrusive Relief Has Been Ordered and Proved Unavailing.**

12          As an initial matter, prison overcrowding is not per se unconstitutional.  *Rhodes v.*

13  *Chapman*, 452 U.S. 337, 347-50 (1981).  Under the PLRA, a prisoner release order[2] is not the

14  least intrusive means, but the last resort for addressing the deprivation of a federal right caused

15  by an overcrowded prison system. The PLRA establishes two criteria for the convening of a

16  three-judge panel to address population issues: (1) issuance of an order directing a "less intrusive

17  means" of addressing the constitutional violation and (2) Defendants' failure to comply with the

18  order in a "reasonable amount of time." 18 U.S.C. §§ 3626 (a)(3)(a)(i), (ii). These criteria have

19  not been met, thus Plaintiffs motion is improper and must be denied.

20          **A.  Plaintiffs' Motion for a Three Judge Panel is Premature Because This Court**

21              **Has Not Issued an Order Addressing Systemwide Overpopulation.**

22          Before any three-judge panel is convened, the trial court itself must find the prison

23  population caused a deprivation of a federal right and order relief. 18 U.S.C. §§3626(a)(3)(A).

24  That relief, under a plain reading of the PLRA, may not include a prisoner release order. 18

25  U.S.C. §§3626(a)(3)(b).  The relief must comply with the same standards of injunctive relief

26  _____

27          2.  The PLRA defines a "prisoner release order" as "any order, including a temporary
    restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or
28  limiting the prison population, or that directs the release from or nonadmission of prisoners to a
    prison."  18 US.C. § 3626(g)(4).

OPPO. MOTION THREE-JUDGE PANEL

1    appropriate for any constitutional violation.  *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 647 (8th

2    Cir. 1996) (ruling that the PLRA "merely codifies existing law and does not change the

3    standards for determining whether to grant an injunction."); *Morales Feliciano v. Calderon*

4    *Serra*, 300 F.Supp. 2d 321, 339-40 (D.P.R. 2004) ("This language mimics long standing

5    requirements for injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.")  The

6    court may only grant relief that is "narrowly drawn, extends no further than necessary to correct

7    the violation of the federal right, and is the least intrusive means necessary to correct the

8    violations of the federal right." 18 U.S.C. §§3626 (a)(1)(A).  Indeed, the federal court's

9    jurisdiction is limited to providing "no more than" the relief necessary to correct the underlying

10   violation. *Hallett v. Morgan*, 296 F.3d 732, 743-44 (9th Cir. 2002).

11          Plaintiffs cannot satisfy this first requirement of the PLRA.  This Court has not entered

12   any order directed to the systemwide overcrowding of CDCR prisons.  The focus of this Court's

13   orders, as well as the Special Master's monitoring reports, has consistently been confined to

14   developing each element of a constitutionally compliant mental health services delivery system

15   for class members.  Because this Court has issued any order mandating Defendants address the

16   overall population trends of CDCR, Plaintiffs motion must be denied.

17          **B. The Court Should Not Refer This Matter to a Three-Judge Panel Because the**

18             **Defendants Have Not Had a Reasonable Amount of Time to Comply with**

19             **Previous Orders.**

20          Assuming arguendo this Court issued a prior order speaking directly to the issue of

21   unconstitutional conditions of confinement from overpopulation, Plaintiffs have not established

22   Defendants have failed to comply with that order in "a reasonable amount of time." 18 U.S.C.

23   §§ 3626(a)(3)(A)(ii).  In the past year, this Court has issued, in rapid-fire fashion, a series of

24   orders addressing the key components of a mental health services delivery system: mental health

25   staffing, bed planning, and mental health policies and procedures for care (known as the Revised

26   Program Guide), suicide prevention.  (Dec. Tillman, ¶¶ 3-5.)  Those orders now fill a three-inch

27   binder.  (*Id.* ¶ 5.)  Defendants have notified the Court and counsel of ongoing work in

28   compliance with those orders and submitted plans, such as training on the Revised Program

OPPO. MOTION THREE-JUDGE PANEL

1   Guide, construction of additional intermediate care beds at Salinas Valley State Prison, the swap

2   of ASH-CMF beds and the securing of Navigant to provide mental health population forecasts.

3   (*Id.*  ¶ 6 a-d.)  Other work remains subject to pending deadlines, including the accelerated

4   provision of enhanced outpatient care to reception center inmate-patient (due January 2007), the

5   revision of the long-term bed plan (due December 19, 2006), and responses to recommendations

6   for systemwide enhancement of pay for mental health clinicians  (due December 7, 2006).

7   (Order, 10/20/06; Dec. Tillman, ¶ 6 b.)  A reasonable time for Defendants' compliance, in terms

8   of implementing submitted plans as well as complying with pending deadlines, has not yet

9   passed.

10          Further, Defendants' bed plans hinge on a coordinated bed planning effort with the

11  recently-appointed receivership in *Plata v. Schwarzenegger*.  The receivership was appointed in

12  April 2006.  The order to coordinate the *Coleman* and *Plata* compliance efforts occurred just in

13  June 2006, with specific coordination of 'design and build' construction efforts ordered in

14  October 2006.  Those coordination efforts are now underway, often with Plaintiffs' counsel in

15  attendance at the coordination meetings.  (Dec. Tillman ¶ 6 c.) While no end date for these

16  efforts was given, clearly a mere six months to encompass and coordinate the bed needs of two

17  systemwide class action suits is insufficient.

18          Defendants do not deny that overcrowding is a serious issue.  In fact, Defendants have

19  taken numerous steps in an effort to remedy this issue, including the Governor's recent

20  declaration of an emergency and CDCR's transfer of inmates to out-of-state institutions.  Yet the

21  recognition of overcrowding does not allow this Court to refer this matter to a three-judge panel

22  to enter a prisoner release order.  Moreover, Defendants' recognition of the population issue, and

23  their efforts to address it, are not an admission that the primary cause of any failure to provide

24  access to programs and services to the *Coleman* class has been or is the number of inmates in

25  CDCR's prisons.  In fact, none of the Court's prior orders identify overcrowding as the primary

26  cause for the deprivation of the federal right at issue in this case.

27  *//*

28  *//*

OPPO. MOTION THREE-JUDGE PANEL

1     **C.  Plaintiffs Lack Standing To Proceed on This Motion.**

2            "Federal courts are presumed to lack jurisdiction, unless the contrary appears

3     affirmatively from the record. Standing is an essential, core component of the case or

4     controversy requirement." *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126

5     (9th Cir. 1996) (quotations and citations omitted).  The *Coleman* class consists of "all inmates

6     with serious mental disorders who are now or who will in the future be confined within the

7     California Department of Corrections..." *Coleman v. Wilson*, 912 F.Supp. 1282 (1995).

8     Plaintiffs' brought suit under the Eighth Amendment and Rehabilitation Act for failure to

9     provide a constitutionally-adequate mental health delivery system. The initial and amended

10    complaint did not seek any relief based upon the overall size of the prison population or even the

11    size of the mental health population. No claim was stated for any conditions of confinement

12    related to population. Because Plaintiffs do not constitute a class of inmates seeking relief from

13    population conditions, Plaintiffs have no standing to seek this relief.

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

1

**V.**

2

**CONCLUSION**

3

Defendants respectfully request this Court deny Plaintiffs' motion to convene a

4

three-

5

judge panel.  Plaintiffs' motion must be denied for failure to establish the prerequisite elements

6

for such relief under the PLRA.

7

Dated:  December 4, 2006

8

Respectfully submitted,

9

BILL LOCKYER
Attorney General of the State of California

10

JAMES M. HUMES
Chief Assistant Attorney General

11

FRANCES T. GRUNDER
Senior Assistant Attorney General

12

ROCHELLE C. EAST
Supervising Deputy Attorney General

13

14

15

*/s/ Lisa A. Tillman*

16

LISA A. TILLMAN
Deputy Attorney General
Attorneys for Defendants

17

18

19

30193733.wpd

20

CF1997CS0003

21

22

23

24

25

26

27

28

OPPO. MOTION THREE-JUDGE PANEL