THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227492
600 Harrison St., Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

ROSEN BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 96891
AMY WHELAN Bar No.: 215675
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

Attorneys for Plaintiffs-Intervenors

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RALPH COLEMAN,<br><br>       Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>       Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PERMISSIVE INTERVENTION AND FOR MODIFICATION OF PROTECTIVE ORDER**<br><br>**HEARING**<br><br>Date: December 14, 2006<br>Time: 11:00 a.m.<br>Place: Courtroom 25, 8th Floor<br><br>The Honorable John F. Moulds |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

INTRODUCTION ....................................................................................................................... 1

    I.    HECKER IS NOT AN ATTEMPT TO CIRCUMVENT DECISIONS OR RELITIGATE ISSUES RESOLVED IN COLEMAN AND, MORE IMPORTANTLY, DEFENDANTS' ARGUMENT TO THIS EFFECT IS IRRELEVANT TO THIS MOTION ................................................................. 1

    II.    INFORMATION PRODUCED UNDER THE COLEMAN PROTECTIVE ORDER IS RELEVANT TO, AND DISCOVERABLE IN, HECKER ................................................................................................ 3

    III.    THE HECKER PLAINTIFFS SEEK ONLY THE TYPE OF LIMITED INTERVENTION PREVIOUSLY GRANTED IN THIS CASE ......................... 4

    IV.    THE REQUESTED MODIFICATION IS DIRECTED AT REDUCING, RATHER THAN FOSTERING, NEW AND WASTEFUL REQUESTS FOR PREVIOUSLY PRODUCED MATERIAL .................................................. 6

CONCLUSION ............................................................................................................................ 8

# INTRODUCTION

Plaintiffs in *Hecker et al. v. Schwarzenegger et al.*, Case No. 2:05-cv-02441-LKK-JFM (E.D. Cal.) (the "*Hecker* Plaintiffs") seek to intervene in this case for the limited purpose of modifying the Protective Order entered on July 29, 1992. Plaintiffs-intervenors filed their motion in an effort to streamline the discovery process in this new discrimination action, and to eliminate costly and wasteful duplication of effort in both matters.

Defendants Arnold Schwarzenegger, *et al.*, first sought to indefinitely delay the resolution of this motion, while actively pursuing their own discovery efforts. Having been ordered by the Court to produce a substantive response, they now mischaracterize both the *Hecker* litigation and the motion to intervene. Because The *Hecker* Plaintiffs seek access to materials *already in Plaintiffs' counsel's possession*, there is no burden or prejudice to defendants and the motion for permissive intervention should be granted. Defendants' arguments that this motion is an end-run around the recent *Coleman* discovery order and their proffered doomsday scenario that defendants will be required to produce huge volumes of documents are misleading to this Court. As described more fully below, the *Coleman* court did not prohibit Plaintiffs from seeking discovery, but rather postponed a ruling on discovery until plaintiffs indicated that a particular issue is appropriate for litigation and served specific discovery requests. Moreover, Plaintiffs are seeking in this motion to use documents *already* in their possession and not, as Defendants claim, to impose a burden on Defendants to produce thousands of previously produced documents after locating them in the deep and dark crevices of CDCR basements.

# ARGUMENT

**I. HECKER IS NOT AN ATTEMPT TO CIRCUMVENT DECISIONS OR RELITIGATE ISSUES RESOLVED IN COLEMAN AND, MORE IMPORTANTLY, DEFENDANTS' ARGUMENT TO THIS EFFECT IS IRRELEVANT TO THIS MOTION**

Throughout their Opposition, Defendants claim that the motion for permissive intervention and the *Hecker* action itself are efforts to relitigate issues decided in *Coleman*. This argument, which is before this Court in Defendants' motion to dismiss, has absolutely no

bearing on this motion.[1]  The only relevant issue for this Court in this motion is whether Plaintiffs have met their burden under Fed. R. Civ. P. 24(b) to intervene in this case.  That decision "hinges on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings."  *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003)(citations omitted).

Nevertheless, because Defendants' argument (that the purpose of this motion is to seek an end-run around prior *Coleman* orders) is so misleading to this Court, it warrants response. While *Hecker* and *Coleman* are both related and similar, they are not the same case.  The *Hecker* litigation seeks relief for mentally ill prisoners for discrimination occurring subsequent to the trial in *Coleman*, under legal theories *never litigated* by the *Coleman* plaintiffs. Defendants acknowledge this in their Opposition:  "While the *Hecker* and *Coleman* cases may derive from a shared set of facts, the cases are brought under different legal theories:  the *Hecker* plaintiffs' claims are under the Americans with Disabilities Act and Rehabilitation Act, [while] the *Coleman* plaintiffs obtained relief under the Eighth Amendment."  Defendants' Opposition to Motion to Intervene, at 8:12-15 ("Def. Opp.").[2]  To date, neither the ADA nor the Rehabilitation Act claims have been litigated in *Coleman*.  *See* Reply Declaration of Michael W. Bien in Support of Motion To Intervene ("Bien Decl."), at ¶ 7.

In their Introduction, Defendants also claim that Plaintiffs filed *Hecker* "[i]n the wake of [the] denial" of a motion for post-judgment discovery in *Coleman*.  Defendants' Opposition to Motion to Intervene ("Def. Opp."), at p. 2:4-5.  In fact, the Order referenced by Defendants was issued by this Court on September 28, 2006, more than nine months after the filing of the *Hecker* complaint.  Bien Decl. ¶ 9.  More importantly, Plaintiffs' current motion has nothing to do with that order.  Judge Moulds denied the discovery motion *without prejudice*, ruling that

---

[1] Defendants' accusation of "forum shop[ping]," at page 11, line 19 of their Opposition, is also preposterous.  Far from forum shopping, *Hecker* Plaintiffs filed their claims as a related case before the same Judge and Magistrate Judge as *Coleman*.

[2] Three paragraphs later, Defendants contradict this acknowledgement, with the erroneous assertion that: "The *Hecker* plaintiffs-intervenors seek a court ruling on the same claims stated in [*Coleman*]." Def. Opp. at 9:1-2.

the issue was not ripe and that "unless or until an objection is filed, there is no factual or legal context in which the court can properly evaluate whether particular discovery is appropriate." Bien Decl. ¶ 9 and Ex. A. In other words, Plaintiffs can serve specific discovery requests in *Coleman* after they file an objection indicating that they are ready to litigate a particular issue that remains in dispute. Given the overcrowding crisis and numerous other pending issues in *Coleman*, Plaintiffs have delayed their right to initiate litigation (and discovery) in that case at this time. In the meantime, the *Hecker* case is in active litigation and Plaintiffs request permission to utilize documents *already in their possession* from the *Coleman* case. An order about future discovery in *Coleman* that may or may not happen (in Plaintiffs' discretion) has nothing to do with the present motion.

## II. INFORMATION PRODUCED UNDER THE COLEMAN PROTECTIVE ORDER IS RELEVANT TO, AND DISCOVERABLE IN, HECKER

Defendants quote *Foltz, supra*, for the uncontroversial proposition that collateral litigants seeking access to protected discovery must make a general showing of discoverability as well as a showing of relevance to the collateral proceeding. Def. Opp. at 7: 5-7. Defendants' citation ignores the fact that Plaintiff-Intervenors have made such a showing and, perhaps more importantly, it obscures the strong presumption *in favor* of discovery by collateral litigants articulated in *Foltz*.

> This court strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation … Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery… Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted.

331 F.3d at 1131-32 (citations omitted); *see also id*. at 1139 (reversing decision to deny intervention, remanding with instructions to make relevance determination regarding collateral litigants).

The *Hecker* Plaintiffs have already made the showing required by *Foltz*. In support of their motion for permissive intervention, the *Hecker* Plaintiffs have outlined the legal and

factual similarities between *Hecker* and *Coleman*. *See* Motion to Intervene, 11/9/06, at 2:19 – 3:14. The *Hecker* Plaintiffs cite the overlapping parties ("[s]ince the *Coleman* class encompasses all CDCR inmates with serious mental disorders, every member of the proposed *Hecker* class is by definition also a member of the *Coleman* class," *id*. at 2:21 - 3:1), the similarity of both Plaintiffs' and Defense counsel, and the numerous shared legal and factual issues. *Id.*; *see also* 11/9/06 Declaration of Michael W. Bien In Support of Motion to Intervene. These similarities are sufficient to justify the sharing of discovery under the standard set forth in Federal Rule of Civil Procedure 24(b). *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir.), *cert. denied*, 506 U.S. 868 (1992).[3]

Moreover, the overlap between the cases is demonstrated by the relevance of *Coleman* materials to the *Hecker* lawsuit. For example, counsel for the *Coleman* plaintiffs regularly receive and review lists of inmates awaiting transfer, lists of referrals and discharges, and reports on inmate placement. *See* 11/9/06 Bien Decl., at ¶ 16. These documents are materials covered by the *Coleman* protective order concerning prisoners with mental illness who are also members of the *Hecker* class. *See id.* at ¶ 18. Defendants have also produced to plaintiffs' counsel in *Coleman* CDCR policies and relevant inmate histories and documents from inmate central and medical files. These documents contain information relevant to claims of discrimination on the basis of mental illness and the prisons' responses to those claims – the heart of the *Hecker* lawsuit. *See id.* at ¶ 19. They are therefore relevant and discoverable in *Hecker*. Defendants offer no reason why plaintiffs' counsel, who are already in possession of these documents, should be denied use of them in the *Hecker* litigation.

### III. THE HECKER PLAINTIFFS SEEK ONLY THE TYPE OF LIMITED INTERVENTION PREVIOUSLY GRANTED IN THIS CASE

As an effort to redress different forms of discrimination against a class of disabled inmates, *Hecker* closely resembles both *Armstrong, et al. v. Schwarzenegger, et al.*, C-94-2307

---

[3] Although Defendants chide the *Hecker* Plaintiffs for resting their argument "upon a single case," they acknowledge *Beckman*'s key holding: that "Rule 24 permits post-judgment intervention to enable modification of a protective order and thus release of previously-sealed documents." Def. Opp. at 8: 4-5.

1   CW (N.D. Cal.), and *Clark, et al. v. California, et al.*, C-96-1486 FMS (N.D. Cal.). The
2   plaintiffs in *Armstrong* and in *Clark*, like the *Hecker* Plaintiffs, were represented by attorneys
3   who were privy to information produced in *Coleman* and clearly discoverable as relevant to
4   their cases. They sought and obtained modification of the *Coleman* protective order under
5   precisely the terms sought in the instant motion. The modification did not occur in order to
6   compel Defendants to produce thousands of previously-obtained documents, but to alleviate
7   the need for duplicative requests as the litigation progressed. Yet Defendants do not argue that
8   the Court acted unwisely or improperly by modifying this protective order for the benefit of
9   the *Armstrong* and *Clark* classes.

10  Indeed, Defendants make no direct effort to distinguish the *Hecker* Plaintiffs from the
11  *Armstrong* and *Clark* plaintiffs. Section II of Defendants' Opposition <u>implies</u> a distinction:
12  "The classes of inmates [in *Armstrong* and *Clark*] were distinct [from the class in *Coleman*],
13  with nominal overlap when individual inmates presented with dual diagnosis (*e.g.*,
14  developmental disability and a serious mental disorder)." Def. Opp. at 3:27-28 & 4:1. This
15  assertion is presumably meant to be contrasted with Defendant's later conclusion that "[t]he
16  *Hecker* plaintiffs, by their own assertion, are a subset of the *Coleman* plaintiffs and therefore a
17  party to the *Coleman* case." *Id.* at 7:20-21.

18  But the fact that the *Hecker*-Intervenors are a subset of the *Coleman* class works *in
19  favor* of granting this motion and is consistent with the *Beckman* standard. The *Armstrong* and
20  *Clark* plaintiffs were not permitted to share *Coleman* discovery because they were dissimilar to
21  the *Coleman* class, but rather because it was likely that they would have overlapping *Coleman*
22  issues. In other words, the more dissimilar the Plaintiffs, the less incentive a Court should have
23  to permit efficient information sharing. Here, the *Hecker-Intervenors* have an even closer
24  relationship to the *Coleman* class and are even more likely to have overlapping *Coleman*
25  issues; indeed, many are *Coleman* class members. By emphasizing the dissimilarities between
26  *Armstrong* and *Coleman* plaintiffs, Defendants turn the *Beckman* standard – which demands a
27  showing of a nexus of law and fact for precisely this sort of intervention – on its head.
28

## IV. THE REQUESTED MODIFICATION IS DIRECTED AT REDUCING, RATHER THAN FOSTERING, NEW AND WASTEFUL REQUESTS FOR PREVIOUSLY PRODUCED MATERIAL

Defendants claim in their Opposition that modification of the *Coleman* protective order will require the review and production of limitless amounts of *Coleman* materials to the named *Hecker* Plaintiffs. To the contrary, the modification is sought for the purpose of eliminating existing inefficiency, and streamlining future discovery.

Attorneys for the *Coleman* Plaintiffs are currently in possession of inmate medical records, inmate C-files, lists of inmates awaiting transfer, lists of referrals and discharges, and reports on inmate placement. *See supra*, Part III; Memorandum of Points and Authorities in Support of Motion to Intervene, 11/9/06, at 6:24-28. A substantial amount of this material is not covered by the protective order in question, which applies only to "documents which identify a patient or inmate other than the named [*Coleman*] plaintiffs."[4] *See* 11/9/06 Declaration of Michael W. Bien at ¶ 3 and Exhibit A. Those files which do contain inmate names frequently provide information directly relevant to violations of their Eighth Amendment and statutory rights – *i.e.*, information discoverable in both *Coleman* and *Hecker*. *Id.* Requiring counsel for *Hecker* or *Coleman* to refrain from using information already in their possession, and asking that an individual attorney somehow ignore information in a single inmate file while acting in her capacity as *Hecker* counsel (but not while acting as *Coleman* counsel), is to encourage needless and wasteful expenditure. *Id.* at ¶¶ 17-19.[5]

Contrary to Defendants' assertion, the *Hecker* Plaintiffs' request for a modification of the protective order will not impose any burden on Defendants to review or produce documents. Defendants' imagined and feared production of a "volume of documents [which]

---

[4] The *Hecker* Plaintiffs do not seek a modification of the protective order entered May 5, 2005 which restricts access to "personal or security or personnel information produced by defendants in response to the March 7, 2005 order" and directing the *Coleman* defendants to file a fact-finding report on allegations of staff misconduct at CSP/Corcoran. *See* Bien Decl. ¶ 14 and Ex. B (Use of Force Protective Order at 3:6-7).

[5] Such fruitless requirements also interfere with counsel's present and future ability to represent their clients. Plaintiffs are actual people who are suffering palpable and daily harm from Defendants' discriminatory policies and procedures.

1  can only be described in terms of filled boxes placed on floor-to-ceiling shelves in a large
2  storage room," Def. Opp. at 8:22-23, simply will not come to pass as a result of adding *Hecker*
3  counsel to the list of parties permitted to review personal or security information produced in
4  *Coleman*.  Defendants' invocation of such a scenario obscures both the stated purpose of the
5  *Hecker* Plaintiffs' motion and the reality that no such catastrophe occurred following the
6  previous *Armstrong* and *Clark* modifications.  It also runs directly contrary to Defendants'
7  statement that "the great majority of [*Coleman*] documents hav[e] no relevance to the *Hecker*
8  claim of failure to provide vocational and educational opportunities to mentally ill inmates."
9  Def. Opp. at 9:27 – 10:1.

10         Defendants do not currently produce nearly as many documents to plaintiffs in
11 *Coleman* as suggested by the Opposition and declaration in support.  Defendants have failed
12 for several consecutive months to produce the monthly "detailed and voluminous documents"
13 containing statistical information and reports.  *See* Bien Decl., ¶ 10.  Defendants are similarly
14 behind in their production of biweekly materials.  *See id*.  While Defendants do produce
15 statements on mental health services and related materials to Special Master Keating in
16 conjunction with monitoring tours, counsel for the *Coleman* plaintiffs do not receive copies of
17 these materials unless present for the tours themselves – a comparatively rare phenomenon.
18 *See* Bien Decl., ¶ 11.  Counsel is permitted to accompany the Special Master on seven (7) tours
19 annually, while the office of the Special Master conducts 66 annual tours.  *See* Bien Decl.,
20 ¶ 12.  The "annual report on suicides" produced by the Special Master is a public document,
21 accessible on the Court's docket by any PACER user.  It is neither in the sole possession of
22 Defendants, nor sought via modification of the protective order.  *See id.*, at ¶ 13  In light of
23 these inaccuracies, counsel's statement that Defendants "have produced to the Special Master,
24 *with courtesy copies to Plaintiff's counsel*, voluminous information over the past ten years
25 concerning the status of inmates within the [CDCR] mental health services delivery system,"
26 Declaration of Lisa Tillman in Support of Def. Opp. at ¶ 3, is particularly misleading.

27         There is likewise no merit to Defendants' claim that modification will result in
28 prejudice to the *Coleman* parties now that the California Departments of Mental Health (DMH)

7
REPLY MEMO ISO MOTION FOR PERMISSIVE INTERVENTION AND FOR MODIF OF PROTECTIVE ORDER, NO. CIV S 90-0520 LKK-JFM

1 and Finance (DOF) have been joined in that action.[6]  Granting the *Hecker* Plaintiffs access to
2 discovery under the terms applicable to the *Coleman* Plaintiffs will not in any way prohibit
3 Defendants from asserting that specific documents are either irrelevant or inadmissible in
4 *Hecker*.  Like the plaintiffs in *Armstrong* and *Clark*, the *Hecker* Plaintiffs will craft focused
5 discovery requests as the need arises, but will also benefit immediately from access to existing
6 materials *already in their possession*.

7 Finally, Defendants cite no support for their assertion that as "another holder of the
8 privilege," they are entitled to assert the privacy claims held by plaintiffs in *Coleman*.  In
9 reality, this case is directly analogous to *Beckman*, in which, as noted by Defendants,
10 "plaintiffs in the prior … action expressly did not object to the intervention request."  Def.
11 Opp. at 9:3-4.

## CONCLUSION

13 *Hecker* is a complementary action, filed to address new violations of distinct and
14 different statutes by Defendants.  Because the *Hecker* litigation bears a sufficient nexus of law
15 and fact to the proceedings in *Coleman*, and because no harm will result to either party,
16 permissive intervention for the purpose of modifying the *Coleman* protective order is proper.
17 Because such a modification would decrease waste and inefficiency as *Hecker* progresses, such
18 a modification should be granted.

Dated:  December 8, 2006            Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By:
    Michael W. Bien
    Attorney for Plaintiffs-Intervenors

---

[6] If granted, this motion does not require the DOF and DMH to search for documents.  Bien Decl. ¶ 15.