IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

RALPH COLEMAN, et al.,

Plaintiffs,

Vs. CASE NO. CIV. S-90-0520 LKK

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

_______________________________/

FILED

DEC 13 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ________________
DEPUTY CLERK

---oOo---

REPORTER'S TRANSCRIPT

MONDAY, DECEMBER 11TH, 2006

RE: PLAINTIFF'S MOTION TO CONVENE A THREE JUDGE PANEL

---oOo---

Reported by: CATHERINE E.F. BODENE, CSR. No. 6926

APPEARANCES

---o0o---

FOR THE PLAINTIFF:

ROSEN, BIEN & GALVAN, LLP
315 MONTGOMERY STREET, TENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94104

BY: MICHAEL BIEN,
ATTORNEY AT LAW

PRISON LAW OFFICE
General Delivery
SAN QUENTIN, CALIFORNIA 94964

BY: DONALD SPECTER - DIRECTOR

FOR THE DEFENDANTS:

STATE OF CALIFORNIA, DEPT. OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
1300 I STREET
SACRAMENTO, CALIFORNIA 95814

BY: LISA TILLMAN,
DEPUTY ATTORNEY GENERAL
AND
VAN KAMBERIAN,
DEPUTY ATTORNEY GENERAL

---o0o---

SACRAMENTO, CALIFORNIA

MONDAY, DECEMBER 11TH, 2006 - 10:45 AM

---o0o---

THE CLERK: Please, remain seated.

Court is in session.

Calling Civil Matter 90-520, Coleman, et al., versus Schwarzenegger, et al.

THE COURT: Counsel, approach the podium, state your appearance for the record, those who are arguing remain at the podium.

MR. BIEN: Michael Bien and Don Specter for plaintiffs.

MR. SPECTER: Good morning, Your Honor.

MS. TILLMAN: Lisa Tillman and Van Kamberian on behalf of the defendants.

THE COURT: I want to tell you my view about where we are and what we're doing, and then give you an opportunity to tell me why I got it wrong.

This is -- what is suggested by the plaintiffs is a very big step. It changes the nature and character of the order that we have had.

Whether plaintiffs can prove that overcrowding relates to, in some significant way, the deficiencies in the provision of mental health services or not is not -- I don't have to decide, the three judge court will decide. I'll have

to decide when I'm part of that court. That's preliminary to today.

Nonetheless, people have to be serious. They have to stop and think about what happens if there is a three judge court and that court goes ahead and orders a cap. This is a state prison system that is -- I mean, the consequences are just very serious.

That's number one.

Number two, I have been very unhappy about the pace of attempting to solve a serious constitutional problem. Nonetheless, I would be less than candid if I didn't say, and particularly Miss Tillman since you've come on board - and you can go back and tell your bosses - that I see what appears to me to be a significant change in the attitude of your clients.

Up until now -- up until about a year, year-and-a-half ago, I was frustrated with the plaintiffs. I said, you know, what's happening is the defendants have invited them into this endless chain of negotiation and nothing ever gets done, or relatively speaking, very little gets done.

In the last year-and-a-half I have, in my view, seen what appears to me to be an effort on the part of the defendants to make a difference. And that has got to be respected and encouraged, to which the plaintiffs say, "Come

on, judge, it is ten years. Give me a break. How patient are we supposed to be?"

That's not a bad argument, Miss Tillman.

The net effect of all of this is where I am at this moment, which is I'm prepared to be talked to about where I am, but I think I'm pretty firm about where I am.

Where I am at the moment is I want to find out whether the plaintiffs -- whether the defendants change of heart is serious or just talk.

My inclination right now is not to grant the motion, but not deny it, to continue the motion for six months, at which point we will see -- I've issued some orders which have real dates on them. Now, some of those dates are '08 and '11, but at least we see what progress is being made.

I can't emphasize to both parties the Court's view that the Court is not going to spend forever running the prison system -- running the mental health facility. The problem is that what the plaintiffs want the Court to do is run the prison system, and that's too serious to be done lightly.

Some day I want to be able to say to the defendants, "This is your problem. We've got minimum standards of constitutional --" You know, maybe it will never happen. Sometimes I feel like -- I was about to use a very bad word. How do you say this without saying it, in the wind? Spitting

in the wind. You can say spitting in the wind. But I see what I think is progress, that I want to encourage, that I want the State to take responsibility for, and ultimately we can say that this is your problem.

We're not there. We're not there by a long shot, and I recognize that. I suspect that the plaintiffs will not have a very difficult time, if we ever get to the three judge court, in demonstrating -- This is a speech. You guys don't get -- it's supposed to be you guys talking and me listening, but it is really important for you to understand where the Court is, I think, before you start talking.

I don't think the plaintiffs will have that hard a time, Miss Tillman, I'll be candid with you, in demonstrating that overcrowding is at least a significant factor, if hardly the only factor, in the failure of the State to do what's required by the Constitution.

Maybe I'm wrong. Maybe it will turn out that it is everything else, but I think that's probably so.

On the other hand, it's not clear to me that it is in anybody's interest for the Court to find that within the next two or three months while the State has been making what appears to me to be real efforts to make a difference.

Okay. I'm going stop talking now.

Plaintiffs.

MR. BIEN: Your Honor, I guess we do not perceive in

terms of what is happening day-to-day in the prisons that the additional orders issued by the Court this year, which are significant and important, are going to be effective given the overcrowding. And I think the lack of opposition to this motion by defendants is a statement by them that they agree.

I mean, the people trying to make a difference in the mental health field are trying. And I agree there's some good faith there. And we even saw this spring where they suggested how many staff they needed and higher-ups interfered with that.

But to say that the State government is in good faith, I don't think there is any evidence of that. The State government is not taking the steps necessary so that the wardens and the chief psychiatrists and the people running the prison system have a chance to comply with this Court's orders.

And the 16th Report of the Special Master, I'm not sure you've seen it yet, but it's become final because the parties didn't object to it, shows tremendous deterioration in the system and back sliding. And it says that overcrowding is overwhelming the good faith efforts of the people here.

So what we're concerned about --

THE COURT: Miss Tillman, what the plaintiff is saying -- You know, I haven't seen the 16th Report yet, but

I'm willing to bet that's what it says.

I mean, common sense suggests that the State is being overwhelmed by the numbers. I can't fault my state colleagues in sending people to prison. That's their job. I just said to my law clerks: You know, every Tuesday I send people to prison in the federal system. I don't ask whether there is a place for them to go. That's not my problem, that's the federal government's problem.

It's the same situation here. You have a governor who will not campaign against the three strikes despite the fact that the district attorney of the largest county in the state recognizes that it has put an intolerable burden on the system.

And I don't fault the governor. He's got political problems. Everybody knows -- this is in addition to everything else, everybody, except the Receiver, knows this is a political problem in addition to everything else.

I didn't say that.

I did not say that.

You know, six months from now you're going to be standing there, and I'm going to say things are worse, they're not better. And the reason they're worse is because there are more and more people. Then I'm going to issue an order, then the court's going to convene, then we'll let somebody out who is going to kill somebody.

MS. TILLMAN: We don't want any of those scenarios, Your Honor, with all due respect. What we have to remember is the last time we were here was on out-of-state transfers, which was a huge step by the State of California. And I don't think it's been contested as strongly as it has in this case and in other sister cases. But this Court allowed the State to go forward and start doing those out-of-state transfers to relieve the very overcrowding the governor acknowledges.

THE COURT: But you know and I know that moving whatever it is, 2500 or 3000 - what's the number - whatever it is, that they are planning isn't going to be a --

MS. TILLMAN: It's a small step.

THE COURT: It's a small step.

MS. TILLMAN: But it does indicate that at least the defendants are not deliberately indifferent to that issue of overcrowding. Steps are being undertaken to address it.

And when you look at the whole of what the defendants are embarking on, we're looking at bed plans being implemented, EOP care being given in reception centers, enhanced salaries.

THE COURT: You know what? I'm afraid that you are absolutely right, that six months from now you're going to be back here and you're going to say to me, "See, judge, we told you." And you're going to be right, but I'm going to give

them a chance.

MR. SPECTER: Your Honor, can I --

THE COURT: Yes.

MR. SPECTER: -- speak in the words of the governor?

THE COURT: Go ahead, Mr. Specter, if it is going to make you feel better.

MR. SPECTER: It will make me feel better.

THE COURT: All right.

MR. SPECTER: He said in his October proclamation that immediate action is necessary to -- "immediate," that's his word -- to prevent death and harm caused by prison overcrowding. He referenced the Coleman case as meaning that it wasn't -- there wasn't enough space or services.

He says (quote):

"Overcrowding conditions are projected to get even worse."

And he said on June 26th, which is now almost six months ago, that urgent action is needed to address this problem, but it was not forthcoming by the State.

And he says (quote):

"The overcrowding crisis gets worse with each passing day."

THE COURT: Mr. Specter, there isn't a thing that you are saying, there isn't a thing that the governor has said that I don't know.

The question is before we take this very radical step -- I want to tell you, Miss Tillman, I don't want to mislead you. If I am put to it, I will do it. I just want you to understand that. As reluctant as I am, I will do it.

Having said that, I'm going to give the State an opportunity.

Mr. Specter, I can imagine how frustrated you are. If I were standing where you are, I would say, "Will you tell that jerk to stop it."

MR. SPECTER: Well, I would be more respectful than that.

THE COURT: Good for you.

MR. SPECTER: But it would make me feel better if I could finish my thought at least.

THE COURT: You know what, it will make me feel worse.

MR. SPECTER: Okay.

THE COURT: Mr. Clerk, I want a date six months from now.

THE CLERK: June 4th, 2007, Your Honor.

THE COURT: You tell your clients June 4th may be the end of the line, may really be the end of the line.

I understand you guys are frustrated. Please, don't tell me my more.

MR. SPECTER: It is not that, Your Honor. It's the

fact that if you put a June 4th deadline to refer it to the three judge court, then a three judge court has to be impaneled, then we may have to have a trial. We may be standing here a year from now --

THE COURT: I doubt that, but I understand what you're saying.

MR. SPECTER: -- without a ruling. And that's just intolerable in my opinion.

THE COURT: You aren't alone.

That will be the order of the Court.

Thank you, folks.

MS. TILLMAN: Thank you, Your Honor.

(Off the record at 11:00 AM)

---o0o---

REPORTER'S CERTIFICATE

---o0o---

STATE OF CALIFORNIA )
COUNTY OF SACRAMENTO )

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

IN WITNESS WHEREOF, I subscribe this certificate at Sacramento, California on this 11TH day of DECEMBER, 2006.

______________________________

CATHERINE E.F. BODENE,
CSR NO. 6926