# Exhibit S

EXHIBIT S

Valley State Prison for Women (VSPW)

January 11, 2006

1. Inmate A

Inmate A was well known to the monitor's expert. She had recently returned from CCWF and burned her arm. The inmate had just been placed in a rubberized safety cell in the OHU on suicide watch at the time of the monitor's visit. The cell only had a hole in the floor for a bathroom; it was cold in the cell and the inmate only had a blanket to wear. Inmate A, however, felt secure in the safety cell and oblivious to the conditions therein. She complained during her interview that "CCWF wouldn't send her to PSI-I." The inmate's chart indicated that she had missed her medications the previous evening. She was seen by a psychiatrist on 1/11/06, the day of the monitoring visit, and prescribed Vistaril and Haldol concentrate for four hours later at 5 p.m. of the same day; there was no stat order. The MTA, who was interviewed by the monitor, agreed that the inmate had been moved too many times within the OHU and the institution for the pharmacy to catch up with her.

Assessment:

1. This inmate was appropriately placed on suicide watch.

2. Inmate A experienced medication discontinuity. The inmate was fragile and had a history of extreme violence when she was off her medications for only a day or two. Had the psychiatrist known the inmate or reviewed her recent medication history, a stat order might well have been written.

3. The inmate was confirmed in a safety cell under harsh conditions. She had no clothing and no mattress.

2.   Inmate B

Inmate B had just been placed in the OHU on suicide watch at the time of the expert's visit. She had an extremely flat affect and a prominent thought disorder. She was grossly delusional with extremely tangential thinking. She did not know what medications she was taking, but believed that she had not received any on the day of the monitoring visit. According to her chart, Inmate B had been seen by a psychiatrist only an hour before her interview with monitor's expert. The psychiatrist prescribed Geodon, and Ativan as a stat dose. A review of the inmate's MAR revealed that this order was picked up, but not given. During discussions with the monitor's expert, the nurse indicated that she would go to the pharmacy to pick up the medication. The medication was administered to the inmate soon thereafter.

Nothing in the inmate's chart or her clinical presentation suggested that she posed any suicidal risk.

W

Assessment:

1.  Inmate B, a decompensating psychotic patient, was inappropriately placed on suicide watch without any clinical suggestion that she was suicidal.

2.  The inmate's medication was not administered stat as prescribed.

Inmate C

Inmate C was admitted to a safety cell in the OHU on 1/6/06 and discharged on 1/11/06. She was interviewed by one of the monitor's expert after being transferred to the SHU. The inmate appeared quite mentally ill at the time of the interview. She was extremely unhappy with the conditions in the OHU safety cell.

Discussions with clinical staff indicated that Inmate C had been transferred on Friday, 1/6/06 from the EOP program at CIW with a SHU term. She was, however, so psychotic at the time that she was immediately admitted that evening to an OHU safety cell on one-to-one suicide watch. According to her chart, the inmate was admitted with a diagnosis of Schizo-affective disorder, bipolar type. Her admitting medication consisted of an order for Seroquel 300 mg.bid, crushed, with a return psychiatric visit in one week. The admitting psychiatrist also wrote orders "Haldol 5 mg IM or PO Q.4h; Ativan 2 mg PO or IM q4h; and Benadryl 50 mg. According to departmental guidelines, inmates may be medicated without consent if their level of agitation is deemed to be severe by nursing staff and they are capable of self-harm.

The admitting psychiatrist further wrote orders for a safety gown, blanket and meals on a paper tray with no utensils. Inmate C did not receive a suicide gown as ordered by the psychiatrist while in the safety cell. According to nursing staff, there was a chronic problem with laundry services at VSPW and, as a result, there were no suicide gowns available.

Psychiatric progress notes dated 1/9/06 indicated that the inmate continued to refuse medications. A review of the inmate's MAR revealed that she had not received the involuntary medications ordered by the admitting doctor. The inmate began taking her Seroquel on 1/10/06.

A review of the progress notes written by the case manager on 1/10/06 revealed that the inmate was "still disoriented, and delusional, thoughts very disorganized, affect blunted." The case manager considered a room change at that time to a regular mental health cell. On the next day, however, the same case manager thought the inmate's thinking was better and recommended discharging her to the SHU. The psychiatrist had also considered transferring the inmate to a regular OHU cell, but instead discharged her to the SHU on 1/11/06. At the time of her discharge, the inmate had only been taking her medications for one day. There were no suicide risk assessments conducted for this inmate at any time.

W

Assessment:

1. Inmate C was inappropriately placed on suicide watch under harsh conditions without any evidence of a suicide risk

2. This inmate should have been transferred to a MHCB unit within 24 hours of admission. Failing that, she should have been place in a regular OHU cell.

3. The involuntary medication order by the psychiatrist was grossly inappropriate.

4. It was also inappropriate to order a "RV in one week" for an acutely mentally ill inmate in an acute care setting.

5. This inmate was prematurely discharged from the OHU after she had been on medications for only one day.

4.    Inmate D

This inmate's chart was reviewed by the monitor's expert. Inmate D's MH-4 from August 2005 revealed a strong history of childhood sexual abuse. She had been diagnosed with Mood Disorder NOS and Impulse Control Disorder. Her treatment plan focused appropriately on anger and depression, with orders for weekly case management visits and group psychotherapy, which she never received. The inmate had a recent history of self-mutilation and had been sent to the MHCB unit several times.
Assessment:

> This inmate received an adequate assessment, including diagnosis, and an adequate treatment plan.

2.    The inmate's treatment plan did not change when her clinical condition worsened.

3.    The inmate never received the services called for in her treatment plan. Inmate E

Inmate E received a MH-4 on 2/25/05. She had a history of physical abuse and severe maternal neglect; she also had been sexually abused by her mother's boyfriend. The inmate was diagnosed in her February 2005 treatment plan with Post-Traumatic Stress Disorder; she displayed chronic symptoms of Post-Traumatic Stress Disorder, including nightmares and flashbacks.

The inmate's treatment plan of 6/15/05 indicated she had made some "progress," but the plan still called for one-to-one therapy as well as group therapy. Progress notes from 8/22/05 indicated that the inmate continued to exhibit symptoms of the stress disorder,

adding bereavement and depression. Despite these circumstances, the case manager planned to revisit the inmate in 45 days.

Inmate E experienced six crisis interventions between February and August 2006. On 10/27/06, the inmate was described as "very symptomatic". She had been re-traumatized (beaten) and her seizures were out of control; her depression and nightmares had increased substantially. She was referred to a psychiatrist whom she saw four days later.

The psychiatrist offered a diagnosis of Post-Traumatic Stress Disorder and MDD. Celexa 30 milligrams per day was prescribed.
Assessment:

1. This inmate never received the group or individual therapy called for by her treatment plans.

2. Despite continuing symptoms and multiple mental health crises, the inmate's case manager failed to contact her more often as required by the program guides and the treatment plan.

3. The psychiatrist never revisited the inmate to gauge the effect of her medications and the inmate continued to be symptomatic.

6.   Inmate F

This inmate's MH-4 of 12/04/05 was extremely thin and inadequate. The inmate had a history of sexual abuse and self-mutilation, but no real clinical symptoms. A provisional diagnosis of anxiety disorder NOS was made without an adequate foundation. A previous MH-7 assessment had been entirely negative. Diagnoses of RIO bipolar illness and poly substance dependence were also considered in the MH-4. The treatment plan of the same day repeated the above diagnoses and focused on "self-esteem" as the only problem that needed to be addressed.
Assessment:

1. There was no clinical support for this inmate's mental health diagnosis or for her inclusion in the MHSDS.

2. The inmate's treatment plan was grossly inadequate and bore little relationship to her diagnosis.

7.    Inmate G

Inmate G had an incomplete treatment plan dated 10/25/05. There were diagnoses of Post-Traumatic Stress Disorder and Depression NOS. The treatment plan, however, contained only one stereotypic addendum for the diagnosis of Post-Traumatic Stress

Disorder. The inmate's MH-6 indicated that she had symptoms of anxiety, paranoia and depression. Psychiatric contact was made with the inmate on 10/31/05, and an antidepressant, Zoloft, was prescribed. A return visit for 90 days was ordered.

The first case manager visit following the treatment plan occurred on 1/5/06. At that time, the case manager wrote that the inmate had daily "mental health issues." There was a mental status evaluation and a suicide risk assessment also present in the inmate's chart. No treatment services called for in the inmate's treatment plan were provided. A return visit was scheduled for

W

Assessment:

90 days.

Assessment

1.  This symptomatic inmate's treatment plan was inadequate and not individualized.

2.  The psychiatric and case manager contacts were insufficient for this inmate.

    The treatment services called for in the inmate's treatment plan were not provided.

8.    Inmate H

Inmate H's treatment plan was created on 8/23/05 within the context of an IDTT meeting, which was not attended by a psychiatrist. The inmate's MH -4, completed on 8/17/05 described severe parental sexual abuse and subjective anxiety. The inmate's mental status evaluation was negative. The inmate also had a history of agoraphobia and panic disorder.

Inmate H received a diagnosis of RIO panic disorder with agoraphobia and alcohol dependence. Her treatment plan was grossly inadequate, containing plans for substance abuse that only indicated "monitor progress in SAP." Inmate H arrived at VSPW on Paxil and Trazodone, which were automatically continued for 30 days. A psychiatrist who saw the inmate on 8/17/05 discontinued her Trazodone, increased her Paxil and scheduled a return visit for 90 days. A few days later, Inmate H was removed from an IDTT meeting and referred to a psychiatrist for aggression regarding medication.

On 11/11/05, in the inmate's first case management contact after the treatment plan, the diagnosis was changed to MDD. Her treatment plan was reformulated in the notes to work on social skills, self-control and sleep. Two weeks later, during an unscheduled psychiatric visit, the inmate's diagnosis was changed to depression NOS and panic disorder; her Paxil was continued.

Assessment:

1.  This inmate received a series of inadequate assessments and treatment plans.

2.  The inmate's chart reflected an unresolved diagnostic conflict

3.  The inmate was asymptomatic, except for sleep problems; her actual diagnosis was questionable.

9.    Inmate I

This long-term caseload inmate had been incarcerated at VSPW on seven previous occasions. Her most recent MH-4 was dated 11/3/05, just prior to her UCC hearing. The inmate's last IDTT meeting, which was on 11/8/05, coincided with her last case manager visit. Inmate I's MH-4 resulted in a diagnosis of Depression NOS based on symptoms of anxiety, depression and sleep and weight loss. Her treatment plan contained only a stereotypic plan for depression.
In case manager notes prior to the IDTT and treatment plan, it was evident that the inmate was in weekly group therapy with a student supervised by the inmate's case manager. The inmate

was also receiving one-to-one treatment for depression. The treatment goal was to teach the inmate to identify symptoms of depression and to monitor her sleep patterns. The psychiatric notes of December 2005 indicated that the inmate was on Remeron and was completely asymptomatic.

Assessment:

1. This inmate had received good treatment overall and was doing well on her medications and with group and individual therapy.

2. Inmate I had an inadequate treatment plan that was grossly irrelevant to her actual clinical picture and treatment services.

# Exhibit T

EXHIBIT T

California Department of Corrections and Rehabilitation
Mental Health Classifications Salary Proposal

November 2006

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER GOVERNOR

**OFFICE OF THE SECRETARY**
1515 S Street, 95814
P.O. Box 942883
Sacramento, CA 94283-0001



November 3, 2006

Mr. J. Michael Keating, Jr.                    via:    Lisa Tillman
Special Master                                         Deputy Attorney General
2351 Sussex Drive                                      Department of Justice
Fernandina Beach, FL 32034                             1300 I Street, Suite 125
                                                       P. O. Box 944255
                                                       Sacramento, CA 94244-2550

Dear Mr. Keating:

MENTAL HEALTH CLASSIFICATIONS COMPENSATION

As you requested, enclosed are proposed salary ranges compiled by the
California Department of Corrections and Rehabilitation's (CDCR) suggested salaries for
the stated Mental Health Classifications. The State is prepared to accommodate such
salaries upon direction from the Coleman Court.

While we are hopeful that increasing salaries will assist in our hiring efforts, we are also
mindful that salary alone may not solve the current vacancy-rate problem. As such, in
addition to these proposed salaries, CDCR is exploring other possible recruitment tools,
including but not limited to a residency program, additional federal loan repayment
programs, internships, and the location of mental health treatment programs.

If you should have any questions, please contact me at (916) 323-6001.

Sincerely,

JAMES E. TILTON
Secretary
California Department of Corrections and Rehabilitation

Enclosure

J. Michael Keating, Jr.
Page 2
(Letter to J. Michael Keating, Jr., dated November 3, 2006)


cc: K. W. Prunty, Undersecretary, CDCR
    Bruce Slavin, General Counsel, Office of Legal Affairs, CDCR
    Kathleen Keeshen, Chief Deputy General Counsel, Office of Legal Affairs, CDCR
    Marisela Montes, Chief Deputy Secretary, Adult Programs
    Peter Farber-Szekrenyi, Dr., Director, Division of Correctional Health Care
        Services (DCHCS)
    Doug McKeever, Director (A), Mental Health Program, DCHCS
    Nancy Bither, Deputy Director, Human Resources, CDCR
    Richard Kirkland, Deputy Director, Office of Fiscal Services, CDCR
    Renee Kanan, M.D., MPH, Deputy Director, DCHCS, CDCR
    Yulanda Mynhier, Deputy Director (A), Health Care Administrative Operations
        Branch, DCHCS, CDCR
    Eileen Cubanski, Assistant Secretary, California Health and Human Services
        Agency
    Frank Furtek, Chief Counsel, California Health and Human Services Agency
    Cindy Radavsky, Deputy Director, Long Term Care Services, Department of
        Mental Health (DMH)
    Cynthia Rodriquez, Chief Legal Counsel, Legal Services, DMH
    Daryll Tsujihara, Chief of Classification and Compensation Division, Department
        of Personnel Administration (DPA)
    Margie Imai, Personnel Program Manager, DPA
    Jaci-Marie Thomson, Principal Program Budget Analyst, Department of Finance
    Michael Stone, Staff Counsel, Office of Legal Affairs, CDCR
    Vicki O'Shaughnessy, Staff Services Manager II, Clinical Programs and Policy
        Unit, DCHCS, CDCR

**Mental Health Classifications Salary Proposal November 2006**

| New Classification | Classification/Survey | Salary Max | | | Minimum | Maximum | |
|---|---|---|---|---|---|---|---|
| Chief Psychiatrist Correctional and Rehabilitative Services (C&R)/Safety - 9774 | Current Salary - Maximum (Max) Highest Range (Rg) | $13,311 | A | $3,950 | $20,872 | $24,287 | |
| | | | B | $3,990 | $21,068 | $24,674 | |
| Sr Psychiatrist Supervisor (Sup) C&R/Safety - 9761 | Current Salary - Max Highest Rg | $13,034 | A | $3,950 | $19,713 | $22,745 | |
| | | | B | $3,990 | $20,136 | $22,291 | |
| Sr Psychiatrist Specialist(Spec) C&R/Safety - 9759 | Current Salary - Max Highest Rg | $13,034 | A | $2,400 | $18,607 | $22,060 | |
| | | | B | $2,400 | $19,076 | $22,726 | |
| Staff Psychiatrist (C&R)/Safety - 9758 | Current Salary - Max Highest Rg | $12,731 | A | $3,450 | $18,426 | $21,031 | |
| | | | B | $3,450 | $18,911 | $21,841 | |
| Chief Psychiatrist, Correctional Facility (CF) - 7612 | Current Salary - Max Highest Rg | $12,101 | B | $3,950 | $10,556 | $11,934 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class. However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing RARs. |
| | | | C | $3,990 | $11,071 | $12,101 | |
| Senior Psychiatrist, CF (Sup) - 9271 | Current Salary - Max Highest Rg | $11,848 | A | $3,950 | $9,077 | $11,572 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class. However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing RARs. |
| | | | C | $3,950 | $9,568 | $11,848 | |
| Senior Psychiatrist, CF (Spec) - 9270 | Current Salary - Max Highest Rg | $11,848 | A | $3,400 | $9,521 | $11,572 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class. However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing RARs. |
| | | | C | $2,400 | $9,749 | $11,848 | |
| Staff Psychiatrist, CF - 9277 | Current Salary - Max Highest Rg | $11,572 | A | $3,450 | $8,826 | $10,729 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class. However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing RARs. |
| | | | B | $3,450 | $9,265 | $11,240 | |
| | | | C | $3,450 | $9,521 | $11,572 | |
| Chief Psychologist, CF - 9659 | Current Salary - Max Highest Rg | $7,772 | A | $2,550 | $11,016 | $11,410 | |
| Sr Psychologist, CF (Sup) - 9288 | Current Salary - Max Highest Rg | $7,065 | B | $1,500 | $9,040 | $9,300 | |
| Sr Psychologist, CF (Spec) - 9287 | Current Salary - Max Highest Rg | $6,710 | A | $500 | $8,138 | $9,066 | |
| Psychologist-Clinical, CF - 9283 | Current Salary - Max Highest Rg | $6,171 | A | $1,500 | $6,882 | $7,126 | Range A is proposed for non-licensed clinicians. This range will need to be established. |
| | | | B | | $8,124 | $8,605 | |
| Supervising Psychiatric Social Worker II, CF - 9292 | Current Salary - Max Highest Rg | $5,174 | | $0 | $7,016 | $7,912 | |

Mental Health Classifications Salary Proposal November 2006

| New Classification | Classification/Survey | Salary Max | | | Minimum [2] | Maximum | |
|---|---|---|---|---|---|---|---|
| Supervising Psychiatric Social Worker I, CF - 9399 | Current Salary - Max Highest Rg | $4,718 | | $950 | $6,577 | $7,265 | |
| Clinical Social Worker (Health/CF)-Safety - 9872 | Current Salary - Max highest Rg | $4,284 | A | $1,675 | $5,368 | $6,505 | Range A is proposed for non-licensed clinicians. This range will need to be established |
| | | | B | | $5,775 | $6,995 | |
| Unit Supervisor (Safety) - 8104 | Current Salary - Max highest Rg | $5,006 | | $1,000 | $6,626 | $8,090 | |
| Sr. Psychiatric Technician/Safety - 8252 | Current Salary - Max Highest Rg | $4,309 | A | $1,000 | $6,068 | $6,164 | |
| | | | B | $1,000 | $5,277 | $5,443 | |
| | | | C | $1,000 | $5,512 | $5,715 | |
| Psychiatric Technician/Safety - 8253 | Current Salary - Max highest Rg | $3,795 | A | $1,000 | $4,565 | $4,697 | |
| | | | B | $1,000 | $4,740 | $4,895 | |
| | | | C | $1,000 | $4,915 | $5,095 | |
| Recreation Therapist, CF - 9286 | Current Salary - Max Highest Rg | $3,725 | A | $1,100 | $5,492 | $6,158 | No incumbents in Range F - proposes revising class to delete Range F since no longer needed |
| | | | F | $0 | N/A | N/A | |

[1] Recruitment and Retention (R&R)

**Proposed salaries include the following:**

**A. Recruitment and Retention (R and R) Bonuses:**
A.1  Old Psychiatrist, CF series (Chief Psychiatrist, CF - 7812, Senior Psychiatrist (Sup) - 9271 and (Spec) CF - 9270, and Staff Psychiatrist, CF - 9272) will retain all existing R&Rs. (See above Comments.) All other classes will no longer be eligible for R&Rs (except for Pay Differentials 322 and 324) as proposed salaries include base and all R&Rs.
A.2  Per Court order - eligible classes/positions will continue to receive Pay Differential 322 - 3% Coleman R&R for Headquarters Mental Health Clinicians and Pay Differential 324 - Psychiatric Retention Bonus

**B. Cost-of-Living and Equity Increases:**
B.1  Suggested salaries for all classes include cost-of-living increases effective July 1, 2006.
B.2  Negotiated cost-of-living and equity increases beginning January 2007 are as follows:

  Bargaining Unit 16:
    * Old Psychiatrist series (Chief Psychiatrist, CF - 7812, Senior Psychiatrist (S-p) - 9271 and (Spec) CF- 9270, and Staff Psychiatrist, CF - 9272) top step will receive negotiated 7.5% equity adjustment effective January 1, 2007, and 2.4% cost-of-living increase effective July 1, 2007
    * New Psychiatrist series (Chief Psychiatrist (C&RS) Safety - 9774, Senior Psychiatrist (Sup) - 9751 & (Spec), C&RS (Safety) - 9756, Staff Psychiatrist (C&RS) Safety - 9756) suggested salaries include the negotiated 7.5% equity adjustment to be effective January 1, 2007; however, they will still receive 2.4% cost-of-living increase effective July 1, 2007.

  Bargaining Unit 18:
    * All classes will still receive negotiated 2.5% cost-of-living increase effective July 1, 2007
    Licensed Psychiatric Technicians top step salary will receive negotiated 5% equity increase effective July 1, 2007

  Bargaining Unit 19:
    * Psychologists suggested salaries include the negotiated 5% top step salary increase effective January 1, 2007
    All classes will receive negotiated 2.4% cost-of-living increase effective July 1, 2007.

[2] Minimum Salary = (Proposed Max - Current Max - Current R&R) /2= X; proposed max - X = proposed new minimum
  Exceptions: Clinical Social Worker (9872) Range B minimum adjusted higher, and Supervising Psychiatric Social Worker II, CF - 9292 used a maximum R&R of $950 for the calculation

Note: Salary movement for current incumbents: Eligible employees current salary + total highest R&R + 6%, or 5% above new minimum salary not to exceed the maximum salary, whichever is greater

# Exhibit U

EXHIBIT U

California Department of Corrections Salary Survey
CPS Human Resource Services

March 2005

**SURVEY REPORT**

# California Department of Corrections Salary Survey: Psychiatrist, Psychologist, Psychiatric Social Worker, Psychiatric Technician and Recreation Therapist Classifications



*Human Resource Services*

241 Lathrop Way
Sacramento CA 95815
916.263.3600

March 2007

# TABLE OF CONTENTS

Executive Summary.............................................................................................. 1

Section I: Introduction......................................................................................... 2

Section II: Data Source....................................................................................... 3

  Data Comparison Points ................................................................................... 3

Section III: Salary Data - Psychiatrist Classification........................................... 5

  Table 1: Staff Psychiatrist, Correctional Facility .................................................. 5

Section IV: Salary Data - Psychologist Classification ........................................ 6

  Table 2: Staff Psychologist - Clinical, Correctional Facility.................................... 6

Section V: Salary Data - Psychiatric Social Worker Classification ..................... 7

  Table 3: Psychiatric Social Worker, Correctional Facility ....................................... 7

Section VI: Salary Data - Psychiatric Technician Classification.......................... 8

  Table 4: Psychiatric Technician (Safety) .............................................................. 8

Section VII: Salary Data - Recreation Therapist Classification........................... 9

  Table 5: Recreation Therapist, Correctional Facility............................................... 9

Section VIII: Conclusion....................................................................................... 10

Appendix: ERI Job Descriptions ........................................................................ 11

# *Executive Summary*

CPS Human Resource Services (CPS) was asked to conduct a Salary Survey for the following classifications used by the California Department of Corrections (CDC):

- ❖ Chief Psychiatrist, Correctional Facility
- ❖ Senior Psychiatrist, Correction Facility (Specialist)
- ❖ Senior Psychiatrist, Correctional Facility (Supervisor)
- ❖ Staff Psychiatrist, Correctional Facility
- ❖ Chief Psychologist, Correctional Facility
- ❖ Senior Psychologist, Correction Facility (Specialist)
- ❖ Senior Psychologist, Correctional Facility (Supervisor)
- ❖ Staff Psychologist - Clinical, Correctional Facility
- ❖ Psychiatric Social Worker, Correctional Facility
- ❖ Psychiatric Social Worker, Supervisor I, Correctional Facility
- ❖ Psychiatric Social Worker, Supervisor II, Correctional Facility
- ❖ Psychiatric Technician (Safety)
- ❖ Psychiatric Technician, Supervisor I (Safety)
- ❖ Psychiatric Technician, Supervisor II (Safety)
- ❖ Recreation Therapist, Correctional Facility

Data was gathered in eight regions of California – regions that correspond roughly to the locations of CDC institutions. Data was gathered through the Economic Research Institute (ERI), which summarizes data gathered in multiple salary surveys. ERI does not break down and report data for many of the classification levels listed above. As a result, matches were made to the following CDC classes: Staff Psychiatrist, Correctional Facility; Staff Psychologist, Correctional Facility; Psychiatric Social Worker, Correctional Facility; Psychiatric Technician (Safety); and Recreation Therapist, Correctional Facility.

The data collected through this Salary Survey shows a moderate to substantial lag between the salaries paid to theses CDC classifications and the salaries paid to their counterparts at other employers, with the exception of the Psychiatric Technician class. The range of the statewide salary lag for each CDC classification is displayed below.

| CDC Classification | Range of Salary Lag |
|---|---|
| Staff Psychiatrist, CF | 38.21% – 56.67% |
| Staff Psychologist – Clinical, CF | 20.49% - 33.20% |
| Psychiatric Social Worker, CF | 0.38% - 8.59% |
| Psychiatric Technician (Safety) | No Lag |
| Recreation Therapist, CF | 11.11% - 22.19% |

The following report provides more detailed information about this Salary Survey, and presents the survey data by region and by classification.

# Section I: Introduction

This report presents the results of a Salary Survey conducted on behalf of the California Department of Corrections (CDC) by CPS Human Resource Services (CPS). The Survey involves the following classifications used by CDC:

- Chief Psychiatrist, Correctional Facility
- Senior Psychiatrist, Correction Facility (Specialist)
- Senior Psychiatrist, Correctional Facility (Supervisor)
- Staff Psychiatrist, Correctional Facility
- Chief Psychologist, Correctional Facility
- Senior Psychologist, Correctional Facility (Specialist)
- Senior Psychologist, Correctional Facility (Supervisor)
- Staff Psychologist - Clinical, Correctional Facility
- Psychiatric Social Worker, Correctional Facility
- Psychiatric Social Worker, Supervisor I, Correctional Facility
- Psychiatric Social Worker, Supervisor II, Correctional Facility
- Psychiatric Technician (Safety)
- Psychiatric Technician, Supervisor I (Safety)
- Psychiatric Technician, Supervisor II (Safety)
- Recreation Therapist, Correctional Facility (CF)

Because data for each individual class was not available, the classes Staff Psychiatrist, CF; Staff Psychologist, CF; Psychiatric Social Worker, CF; Psychiatric Technician (Safety); and Recreation Therapist, CF were the subject of this Survey.

Survey data was collected both on a statewide basis, and within eight regions defined by the CDC. The regions generally correspond to the locations of the CDC's penal institutions throughout California. The eight regions are:

- The Central Valley Area
- The Coastal Area
- The Desert Area
- The Los Angeles Basin

- Northern California
- The Sacramento Area
- The San Diego Area
- The San Francisco Bay Area

The results of this Salary Survey are summarized in this report.

# *Section II: Data Source*

Survey data was obtained through the use of the Economic Research Institute (ERI), which is a salary data tracking organization that compiles the results of hundreds of publicly and privately conducted compensation surveys throughout the country. Individual surveys are evaluated for validity and reliability before being entered into the ERI database. ERI provides data in a large array of occupational areas, including Psychiatrists, Psychologists, Social Workers, Psychiatric Technicians, and Recreational Therapists, and allows for job match verification. ERI data represents a broad universe of data sources reflecting a wide spectrum of employment settings for a particular classification. In addition, ERI salary data can be retrieved by geographic area to allow for regional comparisons. As a subscriber to ERI, CPS has found its data to be reliable and relevant in numerous California based compensation surveys. Due to the short timeframe for conduct of this Survey, ERI was the sole source of data, as discussed with CDC.

## Data Comparison Points

Because of the variations in the ways in which individual employers calculate and report salary information, it is important to analyze and determine the appropriate point at which data from differing sources should be compared. In other words, the validity of the survey relies on a comparison of data that represents "apples and apples" rather than "apples and oranges."

For the State of California classes that are the subject of this survey, the monthly maximum of a salary range, that all employees are expected to achieve with time in grade, including compensation resulting from Recruitment and Retention Differentials (R and R) received by all CDC employees in those classes, was selected as the point of comparison. It is important to note that, for some classes, this represents an amount higher than the listed maximum of the salary range because the R and R has not been included in the base salary range even though all CDC employees receive it. It also should be noted that it does not include R and R's that have been approved for positions in some Survey classifications located at specific CDC institutions or geographic regions. These were excluded because they are not part of the compensation received by all CDC employees in the particular classification.

The ERI data presented in comparison to the State of California data below presents compensation data on a percentile basis, up to the 90th percentile. Data is presented by percentile, by region, and by years of experience of incumbents, among other ways. For purposes of comparison to the maximum salary level of the State of California classifications, CPS chose to report both the 75th and 90th percentile data points for the ERI data. This represents the point at which 25% or 10% of the reported salaries, respectively, reflect a higher compensation level. In using the ERI data CPS also selected an incumbent experience level designed to secure salaries paid to experienced, full journey level incumbents, typically a 10 year experience level. We believe this 10 year experience level matches the point at which CDC employees are able to reach the maximum of the selected salary range.

As noted above, ERI does not report classifications at varying levels in a series; therefore, for the purposes of this Survey the following matches were made.

| CDC Classification | ERI Classification |
|---|---|
| Staff Psychiatrist, Correctional Facility | Psychiatrist |
| Staff Psychologist - Clinical, Correctional Facility | Psychologist Clinical |
| Psychiatric Social Worker, Correctional Facility | Social Worker |
| Psychiatric Technician (Safety) | Psychiatric Technician |
| Recreation Therapist, Correctional Facility. | Recreational Therapist |

The class description for each classification that is used by ERI in collecting data can be found in the Appendix.

# *Section III: Salary Data - Psychiatrist Classification*

The following table presents the salary data gathered for the Psychiatrist classification compared to the current State of California/CDC salary. As noted above, the CDC maximum salary includes the Recruitment and Retention Differential that is being paid to all CDC employees in the particular classification. In addition, the ERI data represents both the 75th and 90th percentile salary. ERI's Psychiatrist classification (please see the Appendix for a job description) was matched to CDC's Staff Psychiatrist, CF classification, as depicted below. Care should be taken in interpreting this data, since ERI's salaries for Psychiatrist are derived from all industries and are not limited to salaries at a correctional facility.

## Table 1: Staff Psychiatrist, Correctional Facility

| Region | Department of Corrections Maximum Monthly Salary | ERI 75th Percentile Data | % CDC is above or below ERI all industry data | ERI 90th Percentile Data | % CDC is above or below ERI all industry data |
|--------|--------|--------|--------|--------|--------|
| Central Valley | $13,066 | $17,266 | -32.14% | $19,573 | -49.80% |
| Coastal | $13,066 | $17,575 | -34.51% | $19,924 | -52.49% |
| Desert Area | $13,066 | $17,256 | -32.07% | $19,562 | -49.72% |
| Los Angeles Basin | $13,066 | $18,046 | -38.11% | $20,457 | -56.57% |
| Northern California | $13,066 | $17,002 | -30.12% | $19,274 | -47.51% |
| Sacramento Area | $13,066 | $17,992 | -37.70% | $20,369 | -55.89% |
| San Diego Area | $13,066 | $17,569 | -34.46% | $19,917 | -52.43% |
| San Francisco Bay Area | $13,066 | $19,090 | -46.10% | $21,641 | -65.63% |
| Statewide | $13,066 | $18,058 | -38.21% | $20,471 | -56.67% |

The CDC maximum salary for Staff Psychiatrists, CF represents the maximum salary of Range B of the class as of March 2005, which also represents the point to which all Staff Psychiatrists, CF are expected to progress without further educational advancements. The CDC maximum salary includes a $2,200 per month R and R Differential that is being paid to all positions within the CDC as of March 2005.

# Section IV: Salary Data - Psychologist Classification

The following table presents the salary data gathered for the Psychologist classification compared to the current State of California/CDC salary. As previously noted, the CDC maximum salary includes the Recruitment and Retention Differential that is being paid to all CDC employees in the particular classification. In addition, the ERI data represents both the 75th and 90th percentile salary. ERI's Psychologist classification (please see the Appendix for a job description) was matched to CDC's Staff Psychologist – Clinical, CF classification, as depicted below. Care should be taken in interpreting this data, since ERI's salaries for Psychologist are derived from all industries and are not limited to salaries at a correctional facility.

## Table 2: Staff Psychologist - Clinical, Correctional Facility

| Region | Department of Corrections Maximum Monthly Salary | ERI 75th Percentile Data | % CDC is above or below ERI all industry data | ERI 90th Percentile Data | % CDC is above or below ERI all industry data |
|---|---|---|---|---|---|
| Central Valley | $6,204 | $6,953 | -12.07% | $7,687 | -23.90% |
| Coastal | $6,204 | $7,113 | -14.65% | $7,865 | -26.77% |
| Desert Area | $6,204 | $6,957 | -12.14% | $7,691 | -23.97% |
| Los Angeles Basin | $6,204 | $7,306 | -17.76% | $8,078 | -30.21% |
| Northern California | $6,204 | $6,821 | -9.95% | $7,542 | -21.57% |
| Sacramento Area | $6,204 | $7,304 | -17.73% | $8,075 | -30.16% |
| San Diego Area | $6,204 | $7,223 | -16.42% | $7,985 | -28.71% |
| San Francisco Bay Area | $6,204 | $7,811 | -25.90% | $8,636 | -39.20% |
| | | | | | |
| Statewide | $6,204 | $7,475 | -20.49% | $8,264 | -33.20% |

The CDC maximum salary represents the maximum of the salary range as of March, 2005 which also represents the point to which all Staff Psychologists – Clinical, CF are expected to progress without further educational advancements. The CDC maximum salary includes a $200 per month R and R Differential that is being paid to all positions within the CDC as of March 2005.

# Section V: Salary Data - Psychiatric Social Worker Classification

The following table presents the salary data gathered for the Psychiatric Social Worker classification compared to the current State of California/CDC salary. As previously noted, the CDC maximum salary includes the Recruitment and Retention Differential that is being paid to all CDC employees in the particular classification. Additionally, the ERI data represents both the 75th and 90th percentile salary. ERI's Social Worker classification (please see the Appendix for a job description) was matched to CDC's Psychiatric Social Worker, CF classification, as depicted below. Care should be taken in interpreting this data, since the ERI's does not report Social Workers with a "Psychiatric" denotation nor are the salaries for Social Worker derived solely from correctional facilities, but rather from all industries.

## Table 3: Psychiatric Social Worker, Correctional Facility

| Region | Department of Corrections Maximum Monthly Salary | ERI 75th Percentile Data | % CDC is above or below ERI all industry data | ERI 90th Percentile Data | % CDC is above or below ERI all industry data |
|---|---|---|---|---|---|
| Central Valley | $4,739 | $4,416 | 6.82% | $4,777 | -0.80% |
| Coastal | $4,739 | $4,543 | 4.14% | $4,914 | -3.69% |
| Desert Area | $4,739 | $4,412 | 6.90% | $4,773 | -0.72% |
| Los Angeles Basin | $4,739 | $4,665 | 1.56% | $5,046 | -6.48% |
| Northern California | $4,739 | $4,306 | 9.14% | $4,657 | 1.73% |
| Sacramento Area | $4,739 | $4,689 | 1.06% | $5,072 | -7.03% |
| San Diego Area | $4,739 | $4,560 | 3.78% | $4,932 | -4.07% |
| San Francisco Bay Area | $4,739 | $5,127 | -8.19% | $5,546 | -17.03% |
| Statewide | $4,739 | $4,757 | -0.38% | $5,146 | -8.59% |

The CDC maximum salary represents the maximum of the salary range as of March 2005, which also represents the point to which all Psychiatric Social Workers, CF are expected to progress without further educational advancements. The CDC maximum salary includes a $600 per month R and R Differential that is being paid to all positions within the CDC as of March 2005.

# Section VI: Salary Data - Psychiatric Technician Classification

The following table presents the salary data gathered for the Psychiatric Technician classification compared to the current State of California/CDC salary. As previously noted, the CDC maximum salary includes the Recruitment and Retention Differential that is being paid to all CDC employees in the particular classification. Additionally, the ERI data represents both the 75th and 90th percentile salary. ERI's Psychiatric Technician classification (please see the Appendix for a job description) was matched to CDC's Psychiatric Technician (Safety) classification, as depicted below. Care should be taken in interpreting this data, since ERI's salaries for Psychiatric Technicians are derived from all industries and are not limited to salaries at a correctional facility.

## Table 4: Psychiatric Technician (Safety)

| Region | Department of Corrections Maximum Monthly Salary | ERI 75th Percentile Data | % CDC is above or below ERI all industry data | ERI 90th Percentile Data | % CDC is above or below ERI all industry data |
|---|---|---|---|---|---|
| Central Valley | $3,750 | $2,832 | 24.48% | $3,080 | 17.87% |
| Coastal | $3,750 | $2,911 | 22.37% | $3,166 | 15.57% |
| Desert Area | $3,750 | $2,809 | 25.09% | $3,056 | 18.51% |
| Los Angeles Basin | $3,750 | $2,979 | 20.56% | $3,240 | 13.60% |
| Northern California | $3,750 | $2,517 | 32.88% | $2,738 | 26.99% |
| Sacramento Area | $3,750 | $3,013 | 19.65% | $3,277 | 12.61% |
| San Diego Area | $3,750 | $2,933 | 21.79% | $3,191 | 14.91% |
| San Francisco Bay Area | $3,750 | $3,282 | 12.48% | $3,570 | 4.80% |
| | | | | | |
| Statewide | $3,750 | $3,034 | 19.09% | $3,301 | 11.97% |

The CDC maximum salary represents the maximum salary of Range B of the class as of March 2005, which represents the point to which all Psychiatric Technicians are expected to progress without further educational advancements. The CDC maximum salary includes a $300 per month R and R Differential that is being paid to all positions within the CDC as of March 2005.

# Section VII: Salary Data - Recreation Therapist Classification

The following tables present the salary data gathered for the Recreation Therapist classification compared to the current State of California/CDC salary. As previously noted, the CDC maximum salary includes the Recruitment and Retention Differential that is being paid to all CDC employees in the particular classification. Additionally, the ERI data represents both the 75th and 90th percentile salary. ERI's Recreational Therapist classification (please see the Appendix for a job description) was matched to CDC's Recreation Therapist, CF classification, as depicted below. Care should be taken in interpreting this data, since ERI's salaries for Recreation Therapist are derived from all industries and are not limited to salaries at a correctional facility.

## Table 5: Recreation Therapist, Correctional Facility

| Region | Department of Corrections Maximum Monthly Salary | ERI 75th Percentile Data | % CDC is above or below ERI all industry data | ERI 90th Percentile Data | % CDC is above or below ERI all industry data |
|---|---|---|---|---|---|
| Central Valley | $3,799 | $3,937 | -3.63% | $4,329 | -13.95% |
| Coastal | $3,799 | $4,049 | -6.58% | $4,453 | -17.22% |
| Desert Area | $3,799 | $3,925 | -3.32% | $4,316 | -13.61% |
| Los Angeles Basin | $3,799 | $4,153 | -9.32% | $4,567 | -20.22% |
| Northern California | $3,799 | $3,837 | -1.00% | $4,220 | -11.08% |
| Sacramento Area | $3,799 | $4,183 | -10.11% | $4,601 | -21.11% |
| San Diego Area | $3,799 | $4,075 | -7.27% | $4,481 | -17.95% |
| San Francisco Bay Area | $3,799 | $4,537 | -19.43% | $4,990 | -31.35% |
| | | | | | |
| Statewide | $3,799 | $4,221 | -11.11% | $4,642 | -22.19% |

The CDC maximum salary represents the maximum salary of Range A of the class which represents the point to which all Recreation Therapists, CF are expected to progress without further educational advancements as March 2005. The CDC maximum salary includes a $200 per month R and R Differential that is being paid to all positions within the CDC as of March 2005.

## *Section VIII: Conclusion*

By definition, salary surveys provide a snapshot of salaries and benefits offered at the point in time of the survey. Also by definition, compensation is a dynamic, ever changing component of the employment marketplace. The information presented in this Salary Survey was collected in February 2005, through the use of the Economic Research Institute (ERI), which is updated frequently.

The primary overall conclusion to be drawn from this Compensation Survey is that there is a moderate to substantial lag between the salaries paid to the studied classifications used by the California Department of Corrections and the salaries paid by CDC's market competitors in California, with the exception of the Psychiatric Technician class.

CPS Human Resource Services is available to discuss this Compensation Survey and report at the convenience of the CDC.

# *Appendix: ERI Job Descriptions*

**Below is the ERI job description of the Psychiatrist classification:**

Psychiatrist Overview:

- Diagnoses and treats patients with mental, emotional, and behavioral disorders.

Typical Functions:

- Organizes data concerning patient's family, medical history, and onset of symptoms obtained from patient, relatives, and other sources, such as General Deputy Nurse and Psychiatric Social Worker.
- Examines patient to determine general and physical condition, following standard medical procedures.
- Orders laboratory and other special diagnostic tests and evaluates data obtained.
- Determines nature and extent of mental disorder, and formulates treatment program.
- Treats or directs treatment of patient, utilizing variety of psychotherapeutic methods and medications.

**Below is the ERI job description of the Psychologist classification:**

Psychologist Overview:

- Administers programs of treatment to mentally and emotionally disturbed individual adjustments to life; help medical and surgical patients deal with illnesses or injuries; assist in treating rehabilitation patients; treat individuals with times of personal crisis such as a divorce or death of a loved one.

Typical Functions:

- Interviews patients and studies medical and social case histories.
- Diagnoses or evaluates mental and emotional disorders of individuals, and administers programs of treatment.
- Usual requirement is a doctoral degree in field of specialty.
- Observes patients, and selects, administers, and interprets intelligence, achievement, interest, personality, and other psychological tests to diagnose disorders and formulate plans of treatment.
- Treats psychological disorders to effect improved adjustments utilizing various psychological techniques, such as milieu therapy, psychodrama, play therapy and hypnosis.
- Selects approach to use in individual therapy, such as directive, non-directive, and supportive therapy, and plans frequency, intensity, and duration of therapy.
- May collaborate with PSYCHIATRIST, and other specialists in developing treatment programs for patients.
- May instruct and direct students serving psychological internships in hospitals and clinics.
- May develop experimental designs and conduct research in fields of personality development and adjustment, diagnosis, treatment, and prevention of mental disorders.
- May serve as consultant to industrial, social, educational, welfare, and other agencies on individual cases or in evaluation, planning, and development of mental health programs.
- May specialize in behavior problems and therapy, crime and delinquency, group therapy, individual diagnosis and therapy, mental deficiency, objective tests, projective techniques, or speech pathology.

**Below is the ERI job description of the Social Worker classification:**

Social Worker Overview:

- Develops program content, organizes, and leads activities planned to enhance social development of individual members and accomplishment of group goals.

Typical Functions:

- Interviews individual members to assess social and emotional capabilities and plans group composition in relation to personal and social compatibility of members.
- Requires a four-year college degree from school of social work in addition to social work job experience.
- Selects program appropriate to particular individual or group goals, level of development, needs, capacities, and interests of individual or group members.
- Involves individual or group members in planning and assuming responsibility for activities.
- Helps members through group experience to develop attitudes and social skills for improved family relations and community responsibility.
- Refers members, when necessary, to community center, settlement house, youth serving organization, institution for children or aged, hospital, or penal institution.

**Below is the ERI job description of the Psychiatric Technician classification:**

Psychiatric Technician Overview:

Provides nursing care to mentally ill, emotionally disturbed, or mentally retarded patients in psychiatric hospital or mental health clinic and participates in rehabilitation and treatment programs.

Typical Functions:

Helps patients with their personal hygiene, such as bathing and keeping beds, clothing, and living areas clean.

Administers oral medications and hypodermic injections, following physician's prescriptions and hospital procedures.

Takes and records measures of patient's general physical condition, such as pulse, temperature, and respiration, to provide daily information.

Observes patients to detect behavior patterns and reports observations to medical staff.

Intervenes to restrain violent or potentially violent or suicidal patients by verbal or physical means as required.

Leads prescribed individual or group therapy sessions as part of specific therapeutic procedures.

May complete initial admittance forms for new patients.

May contact patient's relatives by telephone to arrange family conferences.

May issue medications from dispensary and maintain records in accordance with specified procedures.

May be required to hold state license.

**Below is the ERI job description of the Recreation Therapist classification:**

Recreation Therapist Overview:

Plans, organizes, and directs medically approved recreation program for patients in hospitals and other institutions.

Typical Functions:

Directs and organizes such activities as sports, dramatics, games, and arts and crafts to assist patients to develop interpersonal relationships, to socialize effectively, and to develop confidence needed to participate in group activities.

Regulates content of program in accordance with patients' capabilities, needs and interests.

Instructs patients in relaxation techniques, such as deep breathing, concentration, and other activities, to reduce stress and tension.

Instructs patients in calisthenics, stretching and limbering exercises, Counsels and encourages patients to develop leisure activities.

Organizes and coordinates special outings and accompanies patients on outings, such as ball games, sightseeing, or picnics to make patients aware of available recreational resources.

Prepares progress charts and periodic reports for medical staff and other members of treatment team, reflecting patients' reactions and evidence of progress or regression.

May supervise and conduct in-service training of other staff members, review their assessments and program goals, and consult with them on selected cases.

May train groups of volunteers and students in techniques of recreation therapy.

May serve as consultant to employers, educational institutions, and community health programs.

May prepare and submit requisition for needed supplies.