PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>  Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>  Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' RESPONSE TO THE SPECIAL MASTER'S SIXTEENTH MONITORING REPORT AND REQUEST FOR ADDITIONAL ORDER** |

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| APP | Acute Psychiatric Program. The Acute Psychiatric Program at the California Medical Facility is a licensed 150-bed acute care program operated by the Department of Mental Health. The program is richly staffed and offers 24-hour nursing care. Inmates who are sent to this program are frequently suicidal and these inmates typically spend 45-60 days in the program. |
| ASH | Atascadero State Hospital. A state mental hospital located in Atascadero, California that is operated by the Department of Mental Health. ASH provides intermediate inpatient care (also sometimes called ICF care) to CDCR inmate-patients with lower custody levels. |
| CCCMS | Correctional Clinical Case Management System. CCCMS is the name for the largest CDCR mental health program, which currently houses 27,700 inmates with mental illness who live in general population housing units alongside non-mentally ill inmates. CCCMS inmates are generally given medication management, and a meeting with their case manager at least every 90 days. A few also participate in groups. The Program Guide requires that CCCMS inmates housed in administrative segregation be provided with enhanced mental health services, including a weekly case manager contact and daily psych tech rounding. |
| CDCR | California Department of Corrections and Rehabilitation. |
| CIM | California Institute for Men. CIM is a prison in Chino, California. CIM provides mental health care to more than 1400 mentally ill inmates housed in the reception center and on the mainline, including a large EOP reception center population. CIM also has 18 licensed mental health crisis beds. |
| CIW | California Institute for Women. CIW is a prison in Corona, California. CIW provides mental health care to more than 550 mentally ill inmates housed in the reception center, EOP and on the mainline CCCMS. CIW also has 10 licensed mental health crisis beds. |
| CMC | California Men's Colony. CMC is a prison in San Luis Obispo. CMC houses more than 1500 EOP and CCCMS inmates. CMC operates a crisis bed unit within its Locked Observation Unit. |
| CMF | California Medical Facility at Vacaville. CMF provides mental health care for more than 1000 mentally ill inmates at both the EOP and CCCMS levels of care. |
| CSH | Coalinga State Hospital. |
| CTF | California Training Facility. CTF is a prison located adjacent to Salinas Valley State Prison. CTF provides mental health care for more than 800 mentally ill inmates housed in mainline and administrative segregation units. |
| DMH | California Department of Mental Health. |

| | | |
|---|---|---|
| EOP | | Enhanced Outpatient Program. EOP programs are sheltered treatment programs for seriously mentally ill inmates who require a higher and more intensive level of mental health care. There are more than 4,100 EOP patients currently housed within CDCR. Because these inmates are unable to function in a general population setting, they live in segregated housing units. The Program Guide mandates 10 hours each week of therapy or other "structured therapeutic activities" for EOP inmates. For EOP inmates housed in administrative segregation they are also provided with a weekly case manager contact and daily psych tech rounding. |
| ICF | | Intermediate Care Facility. ICF programs are "intermediate" inpatient care programs. These programs are operated by the state Department of Mental Health. There are currently ICF programs at Salinas Valley State Prison, the California Medical Facility, Atascadero State Hospital, and Coalinga State Hospital. Inmates in these programs have frequent clinical contact, 24-hour nursing care and intensive therapy and treatment each week. Inmates generally spend 6-12 months in these programs. |
| MHCB | | Mental Health Crisis Beds. MHCB units are licensed inpatient units inside many California prisons where mentally ill inmates who are suicidal or who are experiencing another kind of mental health crisis can be admitted and treated for up to 10 days. |
| PATTON | | Patton State Hospital. Patton is a major forensic mental hospital operated by the California Department of Mental Health. It is located in San Bernardino, California. Female inmates requiring in-patient level of care are transferred to Patton. |
| PVSP | | Pleasant Valley State Prison. A prison located near Coalinga, California. PVSP provides mental health care for more than 1500 inmates. The prison also has 5 licensed mental health crisis beds. |
| R&R | | Recruitment and Retention bonuses offered to clinical staff. |
| RN | | Registered nurse. |
| SOL | | Solano State Prison. A prison located adjacent to California Medical Facility. Solano provides mental health care for more than 1500 inmates. The prison also has 9 licensed mental health crisis beds. |
| SVPP | | Salinas Valley Psychiatric Program. An intermediate care inpatient psychiatric program operated by the Department of Mental Health that is located inside the Salinas Valley State Prison. This program services primarily level IV high security inmates who have a major mental disorder that has diminished their ability to function within the prison environment. |
| SVSP | | Salinas Valley State Prison. A prison located in Salinas, California. SVSP runs mental health programs for more than 1500 inmates at both the EOP and CCCMS levels of care. The prison also has 10 licensed mental health crisis beds. |

# TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ................................................................................................. I

TABLE OF CONTENTS ......................................................................................................... III

INTRODUCTION ....................................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

CONCLUSION ........................................................................................................................... 5

# INTRODUCTION

In response to a recommendation made in the <u>Sixteenth Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols</u> ("Sixteenth Monitoring Report"), Defendants submitted a salary matrix that proposed salary increases for mental health clinicians working for the California Department of Corrections and Rehabilitation ("CDCR"). Sixteenth Monitoring Report, filed 12/14-15/06, at 428-30 and Exhibit T. On December 15, 2006, this Court adopted the recommendation and directed that the proposed pay schedule be adopted and implemented forthwith. 12/15/06 Order at 1:17-22.

Plaintiffs agree that salary increases for mental health clinicians are absolutely essential; however, plaintiffs object to the current proposal insofar as the salary increases do not apply to identically-situated mental health clinicians working for California Department of Mental Health ("DMH") programs. The salary discrepancy creates a substantial risk that the critical shortage of DMH inpatient beds for the plaintiff class will be exacerbated and that this Court's remedial orders will be obstructed. The major pay disparity for identical mental health jobs in the same buildings inside of the same prison gates will surely further delay the opening of scheduled DMH inpatient beds necessary to address the ongoing shortage of this highest level of mental health care. The pay disparity will likely also result in the loss of DMH clinicians in existing programs who will leave their positions to pursue higher-salary work with CDCR such that DMH units will be left understaffed and *Coleman* class members will be deprived of much-needed clinical care.

As this Court recently found, there remains a critical shortage of DMH inpatient psychiatric beds and extraordinary remedies—such as the waiver of state licensing regulations and the addition of the DMH Director, Mr. Mayberg, as a party defendant—have been necessary to move the remedial process forward. *See* 6/28/06 Order (adding Mr. Mayberg as defendant); 5/2/06 Order approving statewide bed plan at 3:22-4:1 (hereinafter "5/2/06 Order") (instructing that "state licensing requirements must temporarily give way to measures necessary to remedy the Eighth Amendment violations that remain unresolved in this action").

1       The failure to include DMH in this major salary increase is yet one more example of the
2  defendant state officials acting with deliberate indifference and reckless disregard to the needs
3  of the plaintiff class.
4       Plaintiffs respectfully request that this Court issue an additional or amended order, in
5  response to the Special Master's recommendation in the Sixteenth Monitoring Report,
6  requiring that the new salary matrix for mental health clinicians be applied to both CDCR and
7  DMH clinicians.

## STATEMENT OF FACTS

CDCR contracts with DMH for its inpatient mental health programs. Revised Program Guide, filed 2/3/06 at 12-1-1: 25-28. The majority of DMH programs that serve CDCR inmates are located within CDCR facilities. Declaration of Jane Kahn in Support of Plaintiffs' Response to the Special Master's Sixteenth Monitoring Report and Request for Additional Order ("Kahn Decl.") at ¶¶ 3-4. Only three DMH programs for CDCR inmates are *not* located inside prison walls. *Id.* at ¶ 3. Most DMH clinicians, in fact, walk every day through the same gates that CDCR clinicians enter. *Id*. The obstacles that CDCR clinicians face in their task of treating inmates in an under-funded and overcrowded prison system, such as inadequate treatment space and challenging high security patients, housed in difficult environments, are also faced by DMH clinicians. Kahn Decl. at ¶ 6. Despite the physical proximity of CDCR and DMH facilities and the similarity of the staff positions, defendants have decided to save money and not apply the proposed salary increases to DMH clinicians. Kahn Decl. at ¶¶ 2, 5. DMH has already reported difficulty in recruiting and retaining clinical staff positions for its programs and must recruit substantial additional staff for the new programs it is scheduled to open in the next few months for CDCR patients. Kahn Decl. at ¶ 7; 5/2/06 Order at 5:3-25 (discussing the severity of the bed shortage and ordering the opening of additional beds at SVSP and CMH).

Experience in this case has already proven the obvious: clinicians in state mental health positions will move between CDCR and DMH for higher salaries. The CDCR salary increase that this Court has ordered to be implemented in the next few months is the most significant in

1  magnitude in the history of this case. It surely will have a greater effect on such movement
2  than prior more insignificant salary bumps.

3  DMH officials have admitted to the need to match clinician salaries with CDCR
4  institutions in the same region. 4/26/06 Hr'g Test. of John Rodriguez at 81:4-82:3 (discussing
5  the difficulty of hiring clinicians at Coalinga State Hospital and testifying as to the policy of
6  matching salaries of Coalinga clinicians with surrounding prisons, and with the salaries of
7  nurses and medical doctors due to the *Plata* salary increases). When one CDCR institution has
8  introduced "Recruitment and Retention" ("R&R") incentives for a certain staff position,
9  clinical staff at other CDCR institutions are known to relocate to the higher-paying institution.
10 *See* Special Master's Report on Defendants' Schedule of Differential Pay for Mental Health
11 Clinicians in Specific California Department of Corrections Institutions, filed May 6, 2005, at
12 3 (discussing "competitive dislocation in the recruitment of psychiatrists in adjacent
13 institutions" in the context of an R&R proposal). The Special Master has also reported about
14 salary-driven defections and competition for staff between DMH and CDCR. In the <u>Fifteenth
15 Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally
16 Approved Plans, Policies and Protocols</u> ("Fifteenth Monitoring Report"), the Special Master
17 reported that "CMF [California Medical Facility at Vacaville] and PVSP [Pleasant Valley State
18 Prison] attributed recent losses of mental health staff to defections to DMH. CMF had to
19 contend with the lure of employment in DMH programs located within CMF itself, that took
20 the form of better pay . . . the new DMH facility at Coalinga, contiguous with PVSP, offered
21 more money . . . " Fifteenth Monitoring Report, filed 1/23/06, at 351. In his Sixteenth
22 Monitoring Report, the Special Master observed that PVSP had lost several mental health staff
23 members to Coalinga State Hospital ("CSH" or "Coalinga") when that facility opened near the
24 state prison. Sixteenth Monitoring Report at 182.

25 Staff turnover undermines the stability of DMH programs and hinders treatment of
26 patients. Defendants have admitted their awareness of the salary disparity and the concomitant
27 risk of a staffing crisis at DMH, but insist that mere monitoring of the situation provides a
28 sufficient safeguard. Kahn Decl. at ¶ 2.

# ARGUMENT

This Court should direct defendants to adopt commensurate pay for DMH clinicians in order to protect the health and well-being of *Coleman* class members who are presently denied timely access to inpatient psychiatric hospitalization. Denying a salary increase to DMH clinicians will essentially "rob Peter to pay Paul" by filling staff vacancies at CDCR programs while increasing vacancies at DMH programs. While clinical care in CDCR mental health programs is likely to improve due to enhanced staffing and reduced vacancies, a good part of the staffing increase is likely to be movement of clinicians from DMH programs that provide critical inpatient psychiatric care for CDCR inmates. Commensurate raises for CDCR and DMH programs are necessary to prevent this inequity and injury to the *Coleman* class.

CDCR and DMH history demonstrates the willingness of clinicians to relocate to other facilities in search of higher salaries. This problem is even more pronounced when the competing programs are located in the same physical facility, as is true of the mental health programs operated side-by-side by DMH and CDCR in two prisons, CMF and SVSP, or in a DMH program built adjacent to a CDCR prison (CSH and PVSP). Kahn Decl. ¶¶ 4-7. In addressing the problem of pay disparity between mental health RNs and medical RNs, the Special Master questioned "Why would any mental health RN in CDCR elect to continue working in the same facility with the same conditions of work for substantially less pay than her or his colleague on the medical staff?" Sixteenth Monitoring Report at 424. We pose essentially the same question today, and ask the Court to consider why DMH clinicians would not defect to substantially higher-paid CDCR positions in the same facility.

This Court has already found that there is a critical shortage of inpatient psychiatric beds and ordered defendants to take extraordinary measures to design, construct, staff and open the necessary beds to address this crisis. *See* 5/2/06 Order at 5:3-25, 3:22-4:1 (instructing defendants to create new inpatients beds at SVSP and Coalinga, and discussing waiver of state licensing requirements). Defendants continue to report, however, that more than 100 men remain on a waiting list for inpatient psychiatric beds as of the first week of December. Kahn Decl. at ¶ 2. While new emergency high security (Level IV) DMH beds are scheduled to open

at SVSP in the next few months, it is highly unlikely that DMH will be able to recruit and retain mental health staff for that program, or maintain the staff at its already existing programs, if DMH is unable to match CDCR salary levels for jobs at the very same prisons. Kahn Decl. at ¶¶ 5-6; 5/2/06 Order.

Defendants' "wait and see" technique will surely result in the denial of urgently-needed care and undermine the stability of DMH programs due to staff turnover. In a system consistently plagued by clinical staff shortages, it is not only imprudent, but reckless and indifferent, to implement a salary proposal that will inevitably exacerbate staffing difficulties for inpatient psychiatric programs that are already inadequate for the population that must be served. Accordingly, we respectfully request that the Court make an additional order, one which requires commensurate clinician pay at the institutions where DMH programs are located inside the physical CDCR structure, and additionally requires DMH to report on the need for additional salary increases for its remaining programs that serve CDCR patients. While defendants are content to sit back and await this inevitable staffing crisis at DMH programs, the Court should not tolerate this delay tactic that will surely harm the plaintiff class.

## CONCLUSION

For all of the reasons set forth above, plaintiffs respectfully request that the Court issue the following orders:

1. Defendants shall provide salary increases, commensurate with the new CDCR clinician salary matrix, for the Department of Mental Health programs located at California Medical Facility and Salinas Valley State Prison, at the same time as those increases are provided to CDCR clinicians.

2. Defendants shall provide within sixty days a report to this Court explaining why DMH clinician salaries at Atascadero State Hospital, Coalinga State Hospital, and Patton State Hospital need not also be made commensurate with the new CDCR clinician salaries, or else shall provide commensurate salary increases at those facilities.

3. DMH shall, beginning on January 20, 2007, for the period ending December 31, 2007, provide to the Special Master and to plaintiffs' counsel a monthly report stating the number of budgeted positions for clinical staff (by clinical position) and the number of those positions that are filled or vacant. If a vacant position is covered by overtime or by contracting with a registry, such information should also be included. This report shall include data from each DMH facility and program that provides mental health care to CDCR inmates.

Dated: December 18, 2006                                    Respectfully submitted,


                                                            */s/ Michael W. Bien*
                                                            Michael W. Bien
                                                            Rosen, Bien & Galvan
                                                            Attorneys for Plaintiffs