## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,

      vs.                   No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

## SPECIAL MASTER'S REPORT ON PLAINTIFFS' RESPONSE TO THE SIXTEENTH REPORT ON COMPLIANCE SEEKING SALARY ENHANCEMENTS FOR DEPARTMENT OF MENTAL HEALTH CLINICIANS

The draft version of the Special Master's 16th report on compliance contained a recommendation that the defendants be required to develop within 30 days a plan for the enhancement of compensation paid to California Department of Corrections and Rehabilitation (CDCR) mental health clinicians and clinical supervisors to make their salaries competitive with comparable positions in the private sector and/or comparable categories of CDCR's medical staff. The factual basis for the recommendation was the defendants' eleven-year record of failure in hiring and/or contracting for the services of sufficient clinicians and clinical supervisors to fill the allocated positions identified as necessary for the delivery of constitutionally adequate mental health services pursuant to multiple Coleman court orders. Another impetus for the recommendation was the October 17, 2006 decision of the Plata court to waive state law requirements to enable the Receiver in that case to enhance significantly compensation for CDCR's providers of medical services, a development that raised significant issues of parity of pay between the department's mental health and medical practitioners.

Even as the draft version of the 16th compliance report was being composed, the defendants acknowledged that both the long history of staffing deficiencies and the action of the Plata court made a comparable move in compensation for mental health clinicians necessary and probably inevitable. Within the 30 days allocated for objecting to the draft version of the report and its recommendation for the enhancement of clinicians' pay, the defendants submitted to the Special Master a responsive schedule of increased pay and a request for a one-time judicial waiver of applicable state regulations to implement it. Plaintiffs made no objections to the Special Master's draft report. The revised and final version of the Special Master's 16th compliance report submitted the defendants' proffered schedule to the Court for its endorsement and the requested waiver.

On December 15, 2006, the same day the Special Master filed his report, the Court adopted the recommendation on pay and ordered defendants to implement the proposed pay schedule forthwith. Three days later plaintiffs filed a "response" to the Special Master's report seeking specifically the extension of the ordered pay increases to "identically-situated mental health clinicians" working for DMH programs in CDCR institutions. Citing the potential loss of current DMH clinicians and the agency's diminished ability to recruit clinicians in the future for planned program expansions within CDCR institutions, plaintiffs asked the Court to direct the defendants to provide commensurate salary increases contemporaneously to clinicians in all DMH programs operating within CDCR facilities, namely California Medical Facility and Salinas Valley State Prison.

On January 17, 2007, defendants responded to plaintiffs' concerns over DMH clinicians' salaries with the assurance that commensurate salaries would be provided to DMH clinicians involved in programs in California Medical Facility and Salinas Valley State Prison effective retroactively to January 1, 2007. The summary for the Governor's FY 2007-08 budget added the information that $3.9 million from the 2006-07 General Fund and $5.5 million from the 2007-08 General Fund would be earmarked to "increase the salaries of the same classifications of staff working in DMH psychiatric programs operating within Salinas Valley State Prison and the California Medical Facility at Vacaville." Governor's Budget Summary 2007-08, Health and Human Services, p. 165.

The defendants' filing of December 17, 2006, contained a somewhat confusing exhibit, a copy of which is attached to this report, that seemed to obscure the assertion that commensurate salaries would be allocated for DMH personnel in CDCR institutions. Defendants' subsequent clarifications indicated that DMH clinicians employed in programs operating in California Medical Facility and Salinas Valley State Prison will be receiving the salaries listed on the left side of the exhibit. Other DMH employees working in programs for CDCR inmates in DMH facilities, including Atascadero State Hospital, Coalinga State Hospital, Metropolitan State Hospital, Napa State Hospital and Patton State Hospital, will be receiving the salaries listed on the right side of the exhibit.

This development, in effect, moots that part of plaintiffs' request pertaining to salary increases for DMH clinicians involved in programs providing mental

health services to CDCR caseload inmates in California Medical Facility and Salinas Valley State Prison.

Plaintiffs also sought an order requiring the defendants to explain to the Court within 60 days why salaries for DMH clinicians at Atascadero State Hospital, Coalinga State Hospital and Patton State Hospital should not also be made commensurate with the new CDCR clinical salary schedule, or, in the alternative, asking the Court to direct defendants to provide commensurate salary increases to clinicians in those three DMH facilities. It is unclear why plaintiffs did not include in their request Napa State Hospital and Metropolitan State Hospital, both of which have small programs, up to just ten inmates between them, for CDCR inmates. Defendants objected to this request of plaintiffs on the grounds that it was overbroad and sought to set salaries of clinicians in DMH institutions who provided no mental health services to CDCR inmates and, therefore, violated the Prison Litigation Reform Act's mandate for crafting "narrowly drawn" injunctive relief. 18 USC Section 3626(a)(1)(A).

Preliminary indications suggest that the pay raises advertised for CDCR clinicians, even before they have been formally established, may, indeed, result in defections of DMH clinicians for positions in CDCR. Certainly, the pay differentials set forth in Exhibit A to this report, prepared by defendants to demonstrate the pay differences, explain why such defections might occur. Already, for the first time in the history of Coleman, Atascadero State Hospital has turned away referred and accepted CDCR inmates because of a lack of adequate staff to treat them. Defendants' explanation for this unusual occurrence, provided in a January 23, 2006 letter of the DMH Deputy Director for Long Term Care Services and included in this report as Exhibit B, did not

4

attribute the staffing shortage directly to the pay issue. Meanwhile, recent media reports have been suggesting that pay issues are causing numerous departures of DMH clinicians for the anticipated better pay in CDCR.

None of this provides nearly enough of a factual basis on which to make any further recommendations relative to the need for additional salary enhancements for DMH clinicians. The differences between the long-term situation with mental health programs in CDCR and the recent developments in DMH are substantial. In Coleman, mental health services were found to be egregiously unconstitutional in 1995, and at no time since then have the defendants been able to attract and retain sufficient permanent clinical staff to provide the judicially mandated remedial mental health services agreed to as essential by the parties a decade ago in mid-1997. In addition, the mental health caseload in CDCR, including over 31,000 inmates, simply dwarfs DMH's caseload, and must be treated in an exponentially more difficult environment. The pay raises mandated for medical clinicians in CDCR by the Plata receiver, moreover, were of the same magnitude as the differences set out in Exhibit A to this report. Without some corresponding response, it was anticipated logically that the disparity would have a profound effect on the recruitment and morale of CDCR's mental health staff. Finally, the schedule of pay increases for mental health clinicians adopted by the Court in Coleman was prepared by the defendants themselves.

All of this suggests that at least that portion of plaintiffs' request seeking an order that defendants assess and develop a plan to meet the issues created by the disparity in pay for DMH clinicians providing mentally health services to CDCR inmates in CDCR institutions and those providing services to CDCR inmates in all other DMH

institutions has merits. The defendants should be directed to submit to the Court the product of such an assessment and a corresponding plan within 60 days of adoption of the recommended order.

Finally, as agreed to by the defendants, they ought to be required to submit monthly reports to the Special Master on staffing and staffing vacancies in all DMH hospitals with programs providing mental health services to CDCR inmates until such time as the pay differential issue has been addressed.

Respectfully submitted,

J. Michael Keating, Jr.
Special Master

January 30, 2007