EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Senior Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 327-7872
  Facsimile: (916) 324-5205
  Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| RALPH COLEMAN, et al., | 2:90-cv-00520 LKK JFM P |
|---|---|
| Plaintiffs, | **DEFENDANTS' RESPONSE TO SPECIAL MASTER KEATING'S REPORT ON LONG-RANGE BED PLAN OF DECEMBER 2006** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |

I.

**INTRODUCTION**

Defendants hereby respond to Special Master Keating's report and recommendations on their long-range bed plan. Defendants respectfully request this Court find the submitted plan meets the forecasted need for mental health care beds and so approve the plan. The recommendation for a court hearing should be disregarded as premature. Defendants request the recommendation be revised to state Defendants' commitment to providing a detailed statement of resources and timeframes within 90 days of this brief, with 90-day progress reports on the bed plan thereafter. Defendants respectfully request these proposed revisions to the Special Master's

recommendations become an order of the Court.

## II.

## BACKGROUND

On October 20, 2006, this Court ordered Defendants to file a final long-range plan for the provision of acute and intermediate inpatient beds, as well as a plan for the provision of enhanced outpatient program (EOP) beds, for all seriously mentally ill male and female inmates within the California Department of Corrections and Rehabilitation (CDCR) who have been clinically determined to be in need of those levels of care. The Court directed that the consolidated plans should meet or exceed the program population projections contained in the approved Navigant study and should include a process for regular updates of bed-need projections and ongoing planning for new mental health beds based on subsequently revised projections. Further, the plan should also address the feasibility of a design-build approach for the construction projects specified in the consolidated plan and should coordinate the use of such an approach with any related design-build efforts in the *Plata* case. Last, the order stated that the consolidated plan should include a timetable, budget planning and resource allocations to meet the projected populations in June 30, 2011.

On December 19, 2006, Defendants submitted their final long-range plan. The key components of the plan were expressly stated:

1. Consolidate mental health care for male inmate-patients in five prisons identified as Consolidated Care Centers - California State Prison, Sacramento, Richard J. Donovan, California State Prison, Los Angeles County, California Institution for Men and California Men's Colony - while maintaining mental health programs at Salinas Valley State Prison and California Medical Facility.

2. Expand mental health beds for female inmate-patients at California Institution for Women.

3. Continue mental health bed expansion projects currently underway, where appropriate.

//

4. Return mental health beds within state hospitals to Department of Mental Health (DMH) use, with CDCR assuming responsibility for the provision of acute and intermediate care beds and services for CDCR inmate-patients.

Special Master Keating's February 7, 2007 report criticized the bed plan as a mere 'concept paper.' The report stated the plan lacked sufficient information for the Court's approval of the significant proposed changes to the infrastructure of mental health services, such as (1) CDCR's assumption of responsibility for all inpatient mental health from DMH and (2) the consolidation of all intensive mental health programs, with the exception of 72 mental health crisis beds, in eight CDCR institutions. Further, the report noted the plan did not identify and request resources for planning, design, construction and staffing of the indicated mental health beds. Special Master Keating made the following recommendations:

1. Defendants should be directed to complete and place inmates into the 50-bed mental health crisis bed units at California Medical Facility and California Mens' Colony as soon as possible; and complete the scheduled construction of permanent treatment and office space at Mule Creek State Prison or provide adequate temporary treatment and office space there to accommodate existing and newly opened mental health programs until replacement programs have been completed and occupied elsewhere in CDCR.

2. The Court should schedule a hearing within 30 days at which Defendants should be required to demonstrate the reasonableness and feasibility of their proposals to assume responsibility for the provision of inpatient mental health services in place of DMH and to reorganize and consolidate their delivery of existing mental health services.

//
//
//
//
//
//
//

III.

LEGAL STATEMENT

### A. DEFENDANTS CANNOT MEET AND SO OBJECT TO THE FIRST RECOMMENDATION'S REQUIREMENT TO EXPEDITE MHCB CONSTRUCTION.

Defendants object to Special Master Keating's first recommendation requiring the construction of a 50-bed mental health crisis bed unit at California Medical Facility and at California Mens' Colony as soon as possible. The 50-bed mental health crisis bed unit at California Medical Facility is already fully funded and under construction. (Dec. Sifuentes, ¶ 18.) The mental health crisis beds at California Men's Colony have not been authorized or funded yet by the Legislature. (*Id.*) Those beds are proposed in the Governor's Budget released in January 2007. (*Id.*) Defendants therefore object on the basis that they cannot commit to constructing the 50-bed mental health crisis bed units at these facilities on the stated timetable.

### B. DEFENDANTS OBJECT THAT THE SECOND RECOMMENDATION IS PREMATURE AND REQUEST PERMISSION TO FILE A SUPPLEMENTAL PLAN WITH PROGRESS REPORTS.

Defendants respectfully object to the recommendation for a hearing on the long-range bed plan. Defendants state that the mechanisms and resources for implementing the plan are being put into place, as more fully stated below, and will be further stated in a supplemental plan within 30 days. A hearing is unnecessary to enable continued work on this plan.

#### 1. The Financial Resources for the Bed Plan Are Stated in the Governor's Budget.

The Governor's Budget for fiscal year 2007-08 proposes the issuance of $1 billion in lease revenue bonds for the development and construction of mental, dental and medical health facilities, including the consolidated care centers. (Dec. Brown, ¶ 3.) Before any such lease revenue bonds can be issued, legislation authorizing their issuance must be enacted. (*Id.* ¶ 4.) That legislation is being considered by the Legislature as part of the annual budget process. (*Id.*) When, and if, that legislation is enacted, the Defendants will immediately initiate the programming, design and environmental review process. (*Id.*)

//

RESPONSE TO SM REPORT ON DEC 2006 BED PLAN

4

## 2. Defendants Are Engaging in Time-Sensitive Coordination with the *Plata* Receiver.

This Court ordered Defendants to coordinate their bed-planning activities with those of the *Plata* Receiver. (Orders, 6/8/06, 10/20/06.) In September 2006, Defendant CDCR evaluated whether state-owned land at specified prison locations was available to enable the development of additional health care facilities and whether any significant impediments to such development existed at these sites. The five sites proposed for consolidated care centers - California Institute for Men, California Men's Colony, California State Prison, Los Angeles, Richard J. Donovan State Prison, and California State Prison, Sacramento - were part of this evaluation. Defendants reported this preliminary information to the *Plata* Receiver in September 2006. (Ex. A, Deft. Letter to Receiver, dated 9/06.) Defendants are working with the Receiver, and will continue to do so unless otherwise ordered by this Court, on the following foundational items to ensure a coordinated and timely bed project:

### a. Space Estimates

The *Plata* Receiver has retained an independent entity, ABT, to prepare a report on the amount of treatment, bed, and office space required to deliver constitutionally adequate medical care within the state prison system. (Dec. Sifuentes, ¶ 5.) The ABT report is due in April 2007. Until the ABT report is presented, Defendants will not have an accurate statement of the size of the envisioned consolidated care centers and, thus, the financial and staffing resources needed to activate these centers. (*Id.*) Defendants respectfully request this Court permit Defendants sufficient time to review the ABT report and work with the Receiver on the space requirements for the consolidated care centers. In the alternative, Defendants respectfully request the opportunity to submit a detailed statement of the space needs for the delivery of mental health services, with any generalized statement of total space needs subject to the pending ABT report.

### b. Environmental Impact Review

If funding is available by or on July 1, 2007, the environmental review and space programming activities would begin for the consolidated care centers and for the new housing and treatment space at Salinas Valley State Prison on July 1, 2007. (Dec. Sifuentes, ¶ 6.)

Defendants will negotiate a scope of work with environmental consultants to begin the environmental review, necessitated by federal law, for these projects. (*Id.* ¶ 7.) The process of performing the environmental review can take as long as one year, depending upon project complexity and size, and may be subject to litigation by persons outside this lawsuit. (*Id.*)

A clear project description, including total number of beds and a proposed staffing profile for the mental health and the medical beds, is necessary before the environmental review can begin. (Dec. Sifuentes ¶ 8.) The total number of beds and a draft staffing profile have been prepared for the proposed mental health beds. (*Id.*) If the *Plata* Receiver identifies the number and acuity of medical beds by site and provides a staffing profile for the medical beds by site before July 2007, then the environmental review can begin in July 2007 on the combined mental health/medical project. (*Id.* ¶ 9.)

If the *Plata* Receiver does not provide this predicate information for environmental review studies - the number and type of medical beds by site and the staffing profile for the medical beds by site - by July 2007, then Defendants must begin environmental review for mental health-only care centers within the perimeters of the identified locations. (Dec. Sifuentes, ¶ 10.) Environmental review is dependent upon site-specific public notices and mandated comment periods. (*Id.*) Any change in the space indicated in the public notices may require a re-noticing of the review and re-commencement of the comment period, with a resulting delay in construction. (*Id.*) Rather than begin environmental review of a mental-health-only center and then restart the review upon receipt of the space requirements for medical beds, Defendants will, if faced with delayed information about medical bed space needs, commence environmental review for mental health care centers within the perimeters of the identified locations. (*Id.*) Defendants will state which locations have sufficient space for a medical care center outside the perimeter of the identified location and which have sufficient space for a medical care center to be constructed contiguous to the mental health care center or otherwise within the perimeter. (*Id.*)

      **c.**    **Space Programming**

The first step in designing the mental health projects is to hire an architectural firm to

perform programming. (Dec. Sifuentes, ¶ 11.) As a preliminary step, Defendants must identify the types of activities that will be performed in the building, which activities require adjacent locations, and the amount of square footage required for each activity. (*Id.*) That information is then relayed to the architectural firm responsible for 'programming' or designing the building necessary for such tasks. (*Id.*) Programming is expected to require a maximum of six months to complete. (*Id.*) Should the space needs of both medical and mental health beds be available in July 2007, then programming will encompass both activities. (*Id.* ¶ 12.)

### d. Construction Method

In the past, Defendants have abided by state statute and used the design-bid-build method for construction of correctional facilities. Under the design-bid-build method, Defendants must follow three separate steps: (1) design the project; (2) bid the construction contract and award it to the lowest "responsible" bidder; and, (3) oversee the construction. Cal. Gov't Code § 4526, Cal. Pub. Cont. Code §§ 10120, 10180. In contrast, design-build is a construction procurement process in which both the design and construction of a project are procured from a single entity. Cal. Gov't Code § 13332.19 (a)(1). Design-build of state buildings is subject to Legislative authorization. Cal. Gov't Code § 14461(b).

Defendants have not been given design-build authority by the California Legislature. Because the Receiver intends to use the design-build method, Defendants must either seek design-build authority by way of a legislative bill or seek a court order to provide such authority. At this time, Defendants are committed to submitting a request for design-build authority with the funding package introduced to the Legislature. (Dec. Sifuentes, ¶ 16.) If the Legislature chooses to fund the plan and not to authorize the design-build method, then Defendants may file a noticed motion with this Court requesting an order abrogating those state statutes requiring traditional design-bid-build protocols and those state constitutional provisions requiring Legislative approval of design-build authority. (*Id.*)

The sought design-build authority will address some, but not all, of the projects indicated in Defendants' bed plans of June 2006 and December 2006. (Dec. Sifuentes, ¶ 17.) Design-build authority will not expedite anticipated construction timeframes for certain projects and so

will not be sought for these projects:

- California State Prison, Sacramento - Treatment and office space for the enhanced outpatient program;
- California State Prison, Los Angeles County - Construction of 150 enhanced outpatient program beds, with accompanying treatment and office space.
- California Medical Facility, Vacaville (CMF) - Construction of 64-bed intermediate care facility;
- California Institution for Women (CIW) - Construction of 45-bed facility containing acute, intermediate care and mental health crisis beds.[1]

Defendants will seek design-build authority for the remaining projects in the December plan, primarily the five consolidated care centers.[2] (Dec. Sifuentes, ¶¶ 17, 18.)

### 3. The Supplemental Plan Will Discuss Details of Key Components of the Plan.

Defendants commit to providing this Court with a supplemental plan within 90 days of this brief. That supplemental plan will provide a detailed analysis of key components of the plan, including the following:

#### a. Staffing Resources

Defendants will submit an analysis of the staffing resources necessary for the successful implementation of the Mental Health Bed Plan. At this time, Defendants anticipate CDCR Facilities Management, CDCR Division of Correctional Health Care Services and the Department of Mental Health (DMH) will submit plans for increased personnel resources.

Funding to hire staff resources for Defendant California Department of Corrections and Rehabilitation (CDCR) Office of Facilities Management to manage and support the construction of new mental health bed projects has traditionally been included in the construction budget for mental health bed projects. (Dec. Sifuentes, ¶ 13.) The acute and intermediate care facility bed

---

1. Defendants filed an ex parte motion on February 20, 2007 requesting this Court approve the re-scoping of the CIW and CMF projects to enable the projects to proceed.

2. As stated in Defendants' December 2006 plan, the 50-bed mental health crisis bed at CMC will be part of the consolidated care center at CMC and so is subject to the Legislature's approval. (Dec. Sifuentes, ¶ 18.)

RESPONSE TO SM REPORT ON DEC 2006 BED PLAN

1 projects authorized in the 2006/07 State Budget contained funding for the staffing needed to manage the construction of those projects. (*Id.* ¶ 14.) The project budgets and funding requests submitted to the Legislature for the December 2006 Mental Health Long-Term Bed Plan projects will request the staff needed to manage and support the construction of those projects. (*Id.* ¶ 13.) To the extent that design-build construction is used, Defendants state that they do not presently have staff with the unique expertise to manage design-build construction. (*Id.* ¶ 14.) Defendants' funding request will elucidate this need for personnel trained in managing large-scale design-build construction. (*Id.*)

At this time, Defendants anticipate CDCR Division of Correctional Health Care Services will need personnel resources, ranging from administrators to support staff, for accounting, licensing (for intermediate care, correctional treatment center, acute care and mental health crisis beds), budget, contracts, personnel, administrative, and support functions. (Dec. McKeever, ¶¶ 3, 5.) Defendants will seek office space to house these employees in a single location. (*Id.*, ¶ 5.) No later than two years before the anticipated activation date of the consolidated care centers, CDCR Division of Correctional Health Care Services will require additional resources for the transition of licensed care services from DMH to CDCR. (*Id.*, ¶ 6.)

Defendants recognize the need to hire clinical, administrative, support, and correctional employees to staff the consolidated care centers in advance of the anticipated activation dates to ensure an appropriate transition of care from DMH. (Dec. McKeever, ¶ 7.) CDCR will explore the creation of new classifications to better reflect and implement the therapeutic milieu provided by the DMH care environment. (*Id.* ¶ 8.)

Defendants anticipate DMH will require additional licensing, clinical, and correctional employees to provide the necessary support for the development and activation of the consolidated care centers. Those additional resources will be stated in a progress report to this Court.

//
//
//

RESPONSE TO SM REPORT ON DEC 2006 BED PLAN

9

### 3. CDCR's Assumption of DMH Inpatient Services to CDCR Inmates Will Be Subject to a Transition Plan.

The bed plan envisions CDCR and DMH each returning to its respective statutory missions and populations at the end - not at the start - of implementation of the plan. (Dec. McKeever, ¶ 9.) The transition from DMH inpatient services to CDCR's own provision of those services will occur in a manner to enable mentorship of CDCR staff, modeling of mental health services, and the uninterrupted flow of those services. (*Id.* ¶¶ 11, 12.) Defendants' supplemental plan will discuss different strategies for such mentorship. (*Id.*)

Defendants anticipate the mentorship will occur within the context of CDCR's contract relationship with DMH for inpatient mental health services at core facilities: Salinas Valley Psychiatric Program at Salinas Valley State Prison and the Vacaville Psychiatric Program at California Medical Facility, Vacaville. (Dec. McKeever, ¶ 12.) These core facilities have long provided CDCR's inpatient mental health population with mental health services within a therapeutic milieu. (*Id.*) CDCR will collaborate with DMH and, if permitted, Special Master Keating's expert staff, to ensure the maintenance and modeling of the therapeutic milieu of these core facilities during the activation of new consolidated care centers in other locations. (*Id.* ¶ 13.)

//
//
//
//
//
//
//
//
//
//
//

## III.

## CONCLUSION

Defendants respectfully object to the Special Master's recommendation for a hearing on the bed plan. Defendants seek approval of the submitted plan forthwith, with a specific finding that the plan satisfies the order requiring Defendants meet the forecasted need for mental health care beds. Defendants respectfully request a court order permitting the submission of a supplemental report in 90 days and requiring progress reports on the bed plan to Special Master Keating every 90 days.

Dated: February 27, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Senior Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

ROCHELLE C. EAST
Supervising Deputy Attorney General


*/s/ Lisa A. Tillman*

LISA A. TILLMAN
Deputy Attorney General
Attorneys for Defendants

30222998.wpd
CF1997CS0003

RESPONSE TO SM REPORT ON DEC 2006 BED PLAN