EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205
 Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EMERGENCY RELIEF REGARDING DEFENDANTS' DENIAL OF ACCESS TO INPATIENT PSYCHIATRIC BEDS IN DMH STATE HOSPITALS**<br><br>Hearing: April 23, 2007<br>Time:　　10:00 a.m.<br>Courtroom: 4<br>Judge: The Honorable Lawrence K. Karlton |

## I.

## INTRODUCTION

Plaintiffs request this Court enter orders to relieve the "denial of access" of inmate-patients of California Department of Corrections and Rehabilitation (CDCR) to mental health care services provided by the Department of Mental Health (DMH). Defendants state here, and

DEF. RESPONSE TO PLF. MOT. EMERGENCY RELIEF

1

have stated elsewhere, there has been no denial of access to such services. To the extent Plaintiffs' motion seeks a court-mandated enhancement of DMH clinician salaries, Defendants presentation of an enhanced salary package for DMH clinicians to the Legislature on May 29, 2007 moots this motion. Likewise, Plaintiffs' request for an order to open of the D-5 unit at Salinas Valley State Prison (SVSP) by June 2007 should be denied because Defendants already opened D-5 and provided inmate-patients with yard access. Plaintiffs' request for an accelerated opening of Coalinga State Hospital and the opening of 256 contracted beds at Atascadero State Hospital within 30 days will not serve to provide additional and appropriate beds for *Coleman* class members and so should be rejected. Defendants request this Court recognize their steps to comply with the *Coleman* mandate to develop a constitutionally adequate mental health services delivery system and deny this motion.

## II.

## STATEMENT OF ISSUES AND RESPONSES

### A. Synopsis of Plaintiffs' Request for Emergency Relief.

The overarching assumption in Plaintiffs' request for relief is that the enhancement of DMH clinician salaries will enable the utilization of all DMH beds by CDCR inmate-patients. Plaintiffs' items of relief, while formatted as four items, actually seek seven items of interwoven relief:

1. Defendants shall take all necessary steps, including but not limited to appropriate salary increases in full parity with CDCR, to retain and hire adequate clinical and custody staffing levels.

2. Defendants shall take all necessary steps...to safely open every one of the 256 contracted ASH beds to *Coleman* class members within 30 days of the order. ASH shall not limit or restrict admissions to those 256 CDCR beds without leave of Court.

3. Defendants shall take all necessary steps, including but not limited to salary increases in full parity with CDCR, to retain and hire adequate clinical and custody staff at all other DMH hospitals that house CDCR patients.

4. DMH shall not limit access or restrict admissions to CDCR beds without leave of Court.

5. Defendants shall take all necessary steps to fully open the D-5 unit at Salinas Valley State Prison (SVSP) by June 2007.

6. Defendants shall also ensure that all patients housed in D-5 and D-6 have access to a minimum of 20 hours a week of clinical treatment and programming in addition to appropriate yard time on the grassy yard within 10 days. The SVSP warden shall supply sufficient custody officers to the control rooms of D-5 and D-6 for escorts and for yard supervision to assure compliance with this order and shall assure that any CDCR obstacles to compliance with this provision are removed.

7. Defendants shall take all necessary steps, including salary increases in full parity with CDCR, to accelerate the opening of all beds at Coalinga State Hospital for patient admission in order to reach full licensed capacity by July 1, 2009.

**B. Synopsis of Defendants' Response to Plaintiffs' Requested Relief.**

As more fully stated below, Defendants have taken necessary action to enhance the pay of DMH clinicians employed at CDCR locations and employed at DMH locations. Defendants will monitor the impact of that enhancement in pay on the availability of sufficient staff to end the restricted admission policy at Atascadero State Hospital, the only DMH facility providing care to CDCR inmates that has a restricted admission policy. The operation of other DMH facilities providing care to CDCR inmates, such as Salinas Valley Psychiatric Program and Vacaville Psychiatric Program, has not been subject to restricted admissions. Indeed, the Salinas Valley Psychiatric Program (SVPP) opened the Delta-5, C-pod unit on April 2, 2007, thus increasing CDCR inmate-patient admissions to its intermediate care program. A yard compatible with mandated programming hours became available to SVPP patients on April 3, 2007. While Defendants acknowledge that Coalinga State Hospital has not fully activated due to staffing issues, Defendants respectfully state that Coalinga State Hospital is a designated facility for the treatment of sexually violent predators and other civilly committed offenders. The activation of Coalinga State Hospital will thus not relieve the bed needs of high-custody, intermediate care CDCR inmate-patients.

//

## III.

## LEGAL ARGUMENT

### A. This Motion Is Moot Because Defendants Have Addressed the Issue of Pay Parity Between CDCR and DMH Clinicians.

This Court already ordered Defendants to "assess and develop a plan to meet the issues created by the disparity in pay for DMH clinicians providing mental health services to CDCR inmates in CDCR institutions and those providing services to CDCR inmates in all other DMH institutions." (Order, 3/12/06.) Rather than await Defendants' April 9, 2007 response to the order, Plaintiffs filed this motion for emergency orders requiring increased salaries, with Defendants' response to the motion due on April 9, 2007.

Aside from being premature, the motion lacks sufficient foundation. Plaintiffs' request for emergency relief circles again and again upon the difference in salaries between CDCR and DMH clinicians, contending in syllogistic fashion that the disparate salaries have resulted in staff shortages at DMH facilities which have resulted in suicides at DMH facilities and the triaging of admissions to DMH facilities. While Defendants could address this simplistic argument on the merits, Defendants reserve the right to do so and simply reiterate the statement made in their April 2, 2007 filing: on March 29, 2007 Defendants sought necessary funding to enable increased salaries for DMH clinicians employed at DMH facilities as well as increased recruitment efforts.[1] (Def. Filing, 4/2/07, Exhs. A, B.) Defendants hereby request this Court deny Plaintiffs' request for a court order directing Defendants seek increased salaries for DMH clinicians as moot.

### B. The Accelerated Activation of Coalinga State Hospital Will Not Meet the Need for Inpatient Beds for CDCR Inmate-Patients.

Plaintiffs are mistaken in viewing Coalinga State Hospital as a safety valve for the inpatient bed needs of CDCR inmate-patient or of other types of DMH patients. Coalinga State Hospital

---

1. Defendants respectfully request that the Court find the submitted statement of April 2, 2007 satisfies this Court's order of February 7, 2007. Should this Court finds additional information is necessary, Defendants will respond to this Court's need for such information within a week.

was funded, designed, and constructed to treat sexually violent predators.[2] (Decl. Radavsky, ¶¶ 6, 8.) Since the enactment of Jessica's Law in November 2006, Defendants have received over 3,600 referrals for possible admission to Coalinga State Hospital. (*Id.* at ¶ 13.) Each of those referred patients will have to be evaluated before placement into the 1500-bed Coalinga State Hospital.[3] (*Id.*)

The activation of Coalinga State Hospital is underway. The hospital first opened to patients in September 2005, with the number of admissions limited in order to ensure safe operation of the new organization. (Decl. Radavsky, ¶¶9, 10.) More recently, staffing issues have challenged the timely activation of the hospital. (*Id.* at ¶ 10.) At this time, Defendants have budgeted funds and staff to reach approximately 50% of the bed capacity at Coalinga State Hospital by June 30, 2007. (*Id.* at ¶ 11.) Defendants anticipate transferring approximately 150 sexually violent predators from ASH to Coalinga State Hospital by June 2007. (*Id.* at ¶ 12.) The remaining 75 sexually violent predators at ASH will transfer to Coalinga after July 1, 2007. (*Id.*) As Coalinga's bed activation continues, those sexually violent predators adjudicated for treatment will be placed at Coalinga State Hospital as well as direct admissions from the court. (*Id.*)

Coalinga State Hospital is not designated for the care of *Coleman* class members and will not directly impact the availability of beds for *Coleman* class members. Granted, in compliance with this Court's order, Defendants placed 50 CDCR inmates into Coalinga State Hospital in 2006. (Order, 5/2/06; Decl. Radavsky, ¶ 14.) However, Defendants have not indicated that Coalinga State Hospital will be used for the forecasted population of CDCR inmates requiring

---

2. Welfare and Institutions Code section 6600.05 is the statutory basis for the creation of a "permanent facility for the housing and treatment of persons committed" as sexually violent predators. This section was amended in 2001 to delete a sentence that stated, "In no event shall any persons other than those placed pursuant to this article be housed or treated at a facility established pursuant to this subdivision unless expressly authorized by the Legislature." (Stats. 2001, c. 171 (A.B.430).)

3. To the extent Plaintiffs assert inpatient beds at Coalinga State Hospital are readily available to high custody CDCR inmates, Defendants reiterate the costs and timeframes for conversion stated in their filed feasibility reports. (See Defendants' Report on the Feasibility of Converting Coalinga State Hospital, filed 11/1/06, Amended Report, filed 12/4/06.)

mental health care services. (Def. Amended Long-Range Mental Health Plan, December 2006.) With the transfer of 150 or so patients from ASH to Coalinga State Hospital this June 2007, those vacated beds at ASH will not be open for use by any patients. (Decl. Radavsky, ¶ 17.) That unit of beds will be closed and staff redirected in order to assist in compliance with staffing ratios and the requirements of the consent decree. (*Id.*) Therefore, the activation of Coalinga State Hospital will not impact the availability of beds for CDCR inmate-patients referred for inpatient services at ASH. (*Id.*) Plaintiffs' request for an order to accelerate its complete activation to July 2009 falls outside this Court's jurisdiction and so must be denied.

### C. Defendants Will Monitor the Need for Continued Restrictions on ASH Admissions.

Plaintiffs request the immediate opening of 256 ASH beds for use by CDCR inmates in need of inpatient services. This broad request does not acknowledge that not all CDCR inmates in need of inpatient care, particularly those with demonstrated risks of predatory behavior, staff assault, and/or escape, can be placed into the low-security inpatient beds at ASH. (Decl. Radavsky, ¶ 18.) Even when narrowed to seek relief for those CDCR inmate-patients who can be safely placed in an ASH bed, Plaintiffs' request is still ill-informed. There has been no "closure" of ASH to CDCR patients. (*Id.* at ¶ 15; Exh. A, Letter of 1/23/07 to Special Master Keating.) The restricted admission policy placed on ASH permitted the admission of CDCR patients on a daily triage basis (*Id.*) Nor is this restricted admission policy removable simply upon an enhancement in pay. (*Id.* at ¶ 19.) Defendants cannot end the restricted admission policy until sufficient staff are available to provide the very care Plaintiffs' class requires. (*Id.*) The severity of this staffing crisis is illuminated by DMH's inability to use beds vacated by sexually violent predators, and DMH's need to close those vacated beds to get closer to meeting staffing ratios. (*Id.* at ¶ 17.) Defendants request this Court permit them to obtain compliance with necessary staffing ratios before ending any restricted admission policy at ASH.

### D. Defendants Have Activated Yard Access and Additional Beds at Salinas Valley Psychiatric Program.

In step-by-step fashion, Defendants have activated the D-5 inpatient beds and provided

DEF. RESPONSE TO PLF. MOT. EMERGENCY RELIEF
6

yard access to inmate-patients at SVPP. On February 22, 2007, SVPP staff informed Deputy Special Master Lopes that no yard time had been provided to the intermediate care patients within SVPP in D yard and the matter was subject to negotiations with impacted unions. (Dec. Radavsky, ¶¶ 20, 21.) On March 8, 2007, Defendants informed Plaintiffs that Salinas Valley Psychiatric Program, D-6, would provide yard access within the concrete enclosures on that day. (*Id.* at ¶ 22.) Defendants acknowledged that, due to the time involved in moving small groups of inmate-patients through secure areas and into the concrete yard, the use of the concrete yard impeded the availability of therapeutic programming. (*Id.* at ¶ 23.) Defendants then made the larger, grassy yard available to the DMH inmate-patients as of April 3, 2007, with no resulting loss of therapeutic hours. (*Id.* at ¶ 24.) Defendants are now providing the DMH inmate-patients at SVPP the necessary yard and therapeutic programming hours. (*Id.*)

Plaintiffs appear unaware of the expeditious activation schedule for the D-5 unit at Salinas Valley Psychiatric Program. The D-5 beds have and will continue to be activated as follows:

a. The C-pod was activated on April 2, 2007, with the admission of four patients by the end of that week. DMH plans to have four patients admitted each week to this C-pod, with the goal of completed admissions by April 23, 2007.

b. The B-pod will activate during the week of May 21, 2007, with the goal of completed admissions by June 11, 2007.

c. The A-pod will activate during the week of July 2, 2007, with the goal of completed admissions by July 30, 2007.

(Decl. Radavsky, at ¶ 25.)

Defendants' own actions to activate the D-5 beds and to enable yard access at SVPP obviate any need for the emergency measures sought by Plaintiffs. The motion should be denied as moot.

//

//

## IV.

## CONCLUSION

Defendants respectfully request this Court deny Plaintiffs' motion for emergency relief regarding access to DMH inpatient services as moot. Defendants have taken proactive steps to address the pay parity issue between CDCR and DMH clinicians. The success of the enhanced pay package for DMH clinicians must first be monitored and evaluated before the entry of any additional orders on the pay parity issue or any orders requiring the opening of DMH beds. Defendants request this Court deny Plaintiffs' requested acceleration of the opening of Coalinga State Hospital because no additional inpatient beds for *Coleman* class members will result from the acceleration. Defendants have already acted to activate the D-5 beds and provided yard access at Salinas Valley Psychiatric Program. Because Defendants' proactive steps have mooted Plaintiffs' motion, Defendants respectfully request this Court deny the motion.

Dated: April 9, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

ROCHELLE C. EAST
Supervising Deputy Attorney General

*/s/ Lisa A. Tillman*

LISA A. TILLMAN
Deputy Attorney General
Attorneys for Defendants

30246245.wpd
CF1997CS0003

DEF. RESPONSE TO PLF. MOT. EMERGENCY RELIEF