EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205
 Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DECLARATION OF CYNTHIA A. RADAVSKY IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EMERGENCY RELIEF REGARDING DEFENDANTS' DENIAL OF ACCESS TO INPATIENT PSYCHIATRIC BEDS IN DMH STATE HOSPITALS**<br><br>Hearing: April 23, 2007<br>Time:　　10:00 a.m.<br>Courtroom: 4<br>Judge: The Honorable Lawrence K. Karlton |

I, Cynthia A. Radavsky, declare:

1. I am employed in the position of Deputy Director of Long-Term Care Services with the Department of Mental Health of the Health and Human Services Agency. I have been employed by the Department of Mental Health since October 1995 and have held the following

positions: Program Director at Napa State Hospital from 1995 to 1998, Assistant Deputy Director of Long Term Care Services from 1998 to 2006, and Deputy Director of Long Term Care Services from 2006 to present.

2. I have personal knowledge of the facts stated in this declaration and if called to testify upon those facts would do so competently.

3. In my position with DMH, I am familiar with the missions, policies, staffing, and operations of each of the state hospitals. I am responsible for overseeing the inpatient care provided to CDCR inmate-patients at Atascadero State Hospital (ASH) and at Coalinga State Hospital. I am also familiar with the missions, policies, staffing and operations of DMH programs within California Department of Correction and Rehabilitation (CDCR) facilities, such as Vacaville Psychiatric Program at California Medical Facility, Vacaville and Salinas Valley Psychiatric Program at Salinas Valley State Prison.

4. I have worked with a multi-agency task force in preparing and developing Defendants' December 2006 Amended Long-Range Mental Health Plan. I also participated in the development of Defendants' Interim Mental Health Bed Plan, Defendants Long-Range Mental Health Bed Plan of October 2006, and the ASH/CMF swap plan.

5. I have also worked with representatives from the United States Department of Justice in formulating and implementing the mandates of a consent decree arising from the Civil Rights of Institutionalized Persons Act (commonly known as the CRIPA consent decree). The CRIPA consent decree addresses the complete range of services, programs, and operations of DMH, including staffing ratios for inpatient care and the model of inpatient care.

***Because the Mission of Coalinga State Hospital Is to Treat Sexually Violent Predators, Any Acceleration of Its Opening Will Not Enable Additional Inpatient Care Beds for CDCR Inmates.***

6. I participated in the development of Coalinga State Hospital as a venue for the treatment of sexually violent predators. Before the funding and construction of Coalinga State Hospital, DMH made a commitment to the Legislature and to the local community that Coalinga State Hospital would serve the sexually violent predator population.

7. I reviewed the reports filed with this Court on the feasibility of converting a portion of the beds at Coalinga State Hospital for the care of Level IV, intermediate care patients from the California Department of Corrections and Rehabilitation (CDCR). Those reports properly expressed that Coalinga State Hospital's mission was reflected in its design for low custody offenders. The sexually violent predators as a class have a lower rate of aggression within the institutional setting than other forensic patients because their usual predatory target is unavailable.

8. Coalinga State Hospital was approved for funding and construction, for a forecasted population requiring 1,500 beds, on the basis of Penal Code statutes then in existence.

9. In September 2005, Coalinga State Hospital was activated.

10. DMH representatives have consistently stated that Coalinga State Hospital must be activated in a manner to ensure the safe and effective operation of its beds. A new hospital should not be immediately filled to capacity because the usual operational issues will be more difficult to detect and resolve at 100% bed capacity. I acknowledge, however, that Coalinga State Hospital's activation schedule has been delayed by staffing challenges.

11. At this time, DMH has budgeted funds and staff to reach approximately 50% of the bed capacity at Coalinga State Hospital by June 30, 2007.

12. DMH anticipates transferring approximately 150 DMH/ASH patients, categorized as sexually violent predators, to Coalinga State Hospital by June 2007. As Coalinga's bed activation continues, those sexually violent predators referred for treatment will be placed at Coalinga State Hospital. The remaining 75 sexually violent predators at ASH will transfer to Coalinga after July 1, 2007.

13. Since the enactment of Jessica's Law in November 2006, DMH has received over 3,600 referrals for screening that could result in placement in Coalinga State Hospital. Each of those referred patients will have to be evaluated and adjudicated before placement into the 1500-bed Coalinga State Hospital.

14. Defendants' submitted bed plans do not identify Coalinga State Hospital as a site for the forecasted population of CDCR inmates requiring mental health care services. While 50

DEC. RADAVSKY OPPO. MOT. EMERGENCY RELIEF

CDCR inmates were placed at Coalinga in accord with this Court's May 2, 2006 order, DMH has no plan to place any additional CDCR inmate-patients at Coalinga State Hospital.

15. On or about January 18, 2007, DMH placed Atascadero State Hospital (ASH) on restricted admission status. As detailed in a January 23, 2007 letter to Special Master Keating, the restricted admission status was necessitated by the lack of a sufficient number of clinical professionals to meet the staffing ratios set by professional standards and by the CRIPA consent decree. The restricted admission policy did not close the facility to admissions, but enabled the facility to perform a daily assessment of its ability to admit patients on a prioritized basis. Attached as Exhibit A is a true and correct copy of the January 23, 2007 letter sent to Special Master Keating concerning the restricted admission policy at ASH.

16. DMH cannot end the restricted admission policy at ASH until sufficient staff are available to properly provide inpatient care in accord with the standards of the CRIPA consent decree as well as the community.

17. Even with the transfer of approximately 150 ASH patients classified as sexually violent predators to Coalinga State Hospital in June 2007, no additional beds will be available at ASH. Indeed, the transfer of those 117 patients alone will not end the restricted admissions policy. Rather, the ASH beds left by those patients will not be filled, but closed to enable the redirection of staff and so assist in compliance with staffing ratios and the requirements of the consent decree.

18. Plaintiffs request the immediate opening of 256 ASH beds for use by CDCR inmates in need of inpatient services. This broad request does not acknowledge the established exclusionary criteria for admission into ASH as stated in the memorandum of understanding between CDCR and DMH. Namely, those high-custody CDCR inmates with demonstrated risks of predatory behavior, staff assault, and/or escape, cannot be placed into the low-security inpatient beds at ASH.

19. The restricted admission policy is not removable simply upon an enhancement in pay. Defendants cannot end the restricted admission policy until sufficient staff are available to provide the very care Plaintiffs' class requires.

***DMH Has Already Activated D-5 Beds and Yard Access at Salinas Valley Psychiatric Program.***

20. Since the Special Master's tour of DMH facilities in February 2007, DMH has worked closely with CDCR staff to ensure the activation of D-5 beds and access to yard at Salinas Valley Psychiatric Program (SVPP).

21. On February 22, 2007, SVPP staff informed Deputy Special Master Lopes that no yard time had been provided to the intermediate care patients within SVPP in D yard and the matter was subject to negotiations with impacted unions.

22. On March 8, 2007, Salinas Valley Psychiatric Program, D-6, began providing yard access within the concrete enclosures.

23. Due to the time involved in the moving small groups of inmate-patients through secure areas and into the concrete yard, the use of the concrete yard impeded the patients' therapeutic programming time.

24. The larger, grassy yard available to the DMH inmate-patients as of April 3, 2007, with no resulting loss of therapeutic hours. Defendants are now providing the DMH inmate-patients at SVPP the necessary yard and therapeutic programming hours.

25. The D-5 beds have and, depending upon availability of staff, will continue to be activated as follows:

   a. The C-pod was activated on April 2, 2007, with the admission of three patients by the end of that week. DMH plans to have four patients admitted each week to this C-pod, with the goal of completed admissions by April 23, 2007.

   b. The B-pod will activate during the week of May 21, 2007, with the goal of completed admissions by June 11, 2007.

   c. The A-pod will activate during the week of July 2, 2007, with the goal of completed admissions by July 30, 2007.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: April 6, 2007   By: /s/ Cynthia A. Radavsky

DEC. RADAVSKY OPPO. MOT. EMERGENCY RELIEF