1  PRISON LAW OFFICE                    BINGHAM, McCUTCHEN, LLP
   DONALD SPECTER Bar No.: 83925        WARREN E. GEORGE Bar No.: 53588
2  STEVEN FAMA Bar No.: 99641           Three Embarcadero Center
   E. IVAN TRUJILLO Bar No.: 228790     San Francisco, California  94111
3  General Delivery                     Telephone: (415) 393-2000
   San Quentin, California  94964
4  Telephone: (415) 457-9144

5  ROSEN, BIEN & GALVAN, LLP            HELLER, EHRMAN, WHITE &
   MICHAEL W. BIEN Bar No.: 096891      McAULIFFE
6  JANE E. KAHN Bar No.: 112239         RICHARD L. GOFF Bar No.: 36377
   AMY WHELAN Bar No.: 215675           701 Fifth Avenue
7  LORI RIFKIN Bar No.: 244081          Seattle, Washington  98104
   SARAH M. LAUBACH Bar No.: 240526     Telephone: (206) 447-0900
8  315 Montgomery Street, 10th Floor
   San Francisco, California  94104
9  Telephone: (415) 433-6830

10 THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
11 CLAUDIA CENTER Bar No.: 158255
   LEWIS BOSSING Bar No.: 227402
12 600 Harrison Street, Suite 120
   San Francisco, CA  94107
13 Telephone:  (415) 864-8848

14

15 Attorneys for Plaintiffs

16              UNITED STATES DISTRICT COURT

17             EASTERN DISTRICT OF CALIFORNIA

18

19 RALPH COLEMAN,                     ) No.: Civ S 90-0520 LKK-JFM
                                      )
20      Plaintiffs,                   ) **REPLY DECLARATION OF JANE E.**
                                      ) **KAHN IN SUPPORT OF PLAINTIFFS'**
21 vs.                                ) **MOTION FOR EMERGENCY RELIEF**
                                      ) **REGARDING DEFENDANTS' DENIAL**
22 ARNOLD SCHWARZENEGGER, et al.,     ) **OF ACCESS TO INPATIENT**
                                      ) **PSYCHIATRIC BEDS IN DMH STATE**
23      Defendants                    ) **HOSPITALS**
   _____)

24

25

26

27

28

1    I, Jane E. Kahn, do hereby declare as follows:

2        1.      I am an attorney admitted to practice law in California and an associate in the

3    law firm Rosen, Bien & Galvan, one of the counsel of record for plaintiff class in this case.  I

4    have personal knowledge of the matters set forth herein and if called as a witness I could

5    competently so testify.  I make this declaration in support of Plaintiffs' Reply In Support of

6    Motion for Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric

7    Beds in DMH's State Hospitals.

8    **MARCH 29, 2007 BUDGET CHANGE PROPOSAL AND FINANCE LETTER**

9        2.      Attached hereto as **Exhibit A** is a true and correct copy of the Department of

10   Mental Health's (DMH) March 29, 2007 Budget Change Proposal ("BCP") Regarding

11   Coleman-Related Salary Increases.  Although this document was originally an attachment to

12   one of the cover letters submitted with Defendants' April 2, 2007 filing, Defendants did not

13   file this BCP with the Court.  At our request, Defendants provided my office and the Special

14   Master with a copy.  The BCP requests funding to augment salaries only *for filled or*

15   *incumbent* mental health classification positions within DMH.  **Exhibit A** at p.1.  The BCP

16   does not request salary increases for existing vacant positions, despite the fact that: "[c]urrent

17   vacancy rates for psychologist and psychiatrist classifications at some DMH facilities exceed

18   30 and 50 percent, respectively, which does not allow for meeting state and federally required

19   staffing ratios."  *Id* at p. 3.  These extraordinary vacancy rates have resulted in increased

20   caseloads which the BCP noted "affects the quality of patient care and the safety of hospital

21   operations."  *Id* at p. 2.  The DMH augmentation request also will not raise DMH salaries to

22   match CDCR salaries but rather will only bring DMH salaries to within 5 to 18 percent lower

23   than CDCR salaries for comparable positions.  *Id*.  The critical need to fill these vacant staff

24   positions, which has been identified as the barrier to Atascadero State Hospital lifting its

25   admissions restrictions and to Coalinga State Hospital opening beds, is not addressed by the

26   augmentation proposed in the March 29, 2007 BCP.

27       3.      Attached hereto as **Exhibit B** is the Department of Personnel Administration

28   ("DPA") Finance Letter Regarding Recruitment for Health & Mental Health Professionals

1  which was submitted to the legislature on March 29, 2007.  Although this document was

2  originally an attachment to one of the cover letters submitted with Defendants' April 2, 2007

3  filing, Defendants did not file this Finance Letter with the Court.  At our request, Defendants

4  provided my office and the Special Master with a copy.  In the Finance Letter, DPA requests

5  $2 million dollars for two Budget years to hire a recruiter who will be tasked with recruiting

6  and hiring qualified mental health staff, primarily outside the United States, for four state

7  agencies, one of which is DMH.  The goal of this contract is to "reduce the overall vacancy

8  rate for healthcare professionals by at least 3 percent" in the first year and "by at least 4

9  percent" in the second year.  **Exhibit B** at p. I-9.  The current DMH vacancies, however, are

10  much higher:  "Atascadero State Hospital has a 70 percent psychiatrist vacancy rate" and

11  "[o]verall, DMH is currently experiencing a 30 – 70 percent vacancy rate for all healthcare

12  positions."  **Exhibit B** at p. I-6.  I am unaware of any other plans or proposals by defendants to

13  offer comparable pay raises for vacant staff positions which they must fill.

14              **DMH STAFFING VANCANCY RATES CONTINUE TO RISE**

15          4.      Defendants assert that plaintiffs' request for emergency relief should be denied

16  because their plan will stem the exodus of staff from DMH to CDCR facilities.  Def.

17  Opposition at p. 4.  Between February and March 2007, however, the vacancy rates in many

18  clinical positions within DMH continued to increase.  DMH issues a monthly report on its

19  staffing vacancies for all of its facilities.  Attached hereto as **Exhibit C** is a true and correct

20  copy of Defendants' "Monthly Staffing and Staffing Vacancies Report for all DMH State

21  Hospitals, Vacaville Psychiatric Program and Salinas Valley Psychiatric Program," dated April

22  5, 2007.  This Report reflects DMH staffing vacancies for March 2007.  It lists a DMH-wide

23  vacancy rate of 81 percent for the positions of Senior Psychiatrist, Correctional Facility

24  (Supervisor) and Senior Psychologist, Correctional Facility (Supervisor).  It also reports that

25  70 percent of the Senior Psychologist (Health Facility) (Specialist) positions are vacant in

26  DMH state hospitals system-wide.  On the institutional level, the report states, for example,

27  that 76 percent of Staff Psychiatrist (Safety) positions at ASH are vacant.  At Coalinga, 94% of

28  the Staff Psychiatrist (Safety) positions are vacant.

5.     I directed a paralegal to make the following chart.  I instructed her to create the chart using information from several different documents, all of which have been or are attached as Exhibits to my declaration as referenced in the column footnotes.  I have reviewed the chart and supervised the paralegal when she created it.  The chart  gives examples of the disparity that will remain between mental health staff in CDCR versus DMH positions even if the funding request for incumbent positions goes forward (and also shows the staff vacancy rates from the December 2006, January 2007 and February 2007 data):

| Position | Monthly DMH Salary Max[1] | Monthly CDCR Salary Max[2] | % Difference In CDCR Salary Above DMH | DMH Total Vacancy Of Position As Of 1/1/07[3] | DMH Total Vacancy Of Position As Of 2/15/07[4] | DMH Total Vacancy Of Position As Of 3/30/07[5] |
|---|---|---|---|---|---|---|
| 1)  Senior Psychiatrist (Sup) | $22,182 | A) $22,745 B) $23,291 | A) 2.5% B) 5% | 76% | 81% | 81% (8 filled out of 42.9 budgeted) |
| 2)  Senior Psychiatrist (Spec) | $21,641 | A) $22,083 B) $22,723 | A) 2% B) 5% | 88% | 88% | 91% (2 filled out of 23 budgeted) |
| 3)  Staff Psychiatrist (Saf) | $20, 610 | A) $21,031 B) $21,641 | A) 2% B) 5% | 40% | 43% | 44% (166 filled out of 296.8 budgeted) |
| 4)  Chief Psychologist (CF) | $9,669 | $11,410 | 18% | Not listed | Not listed | Not listed |

[1] This data is included in a 3/22/07 email from Dean Percy to staff at Napa State Hospital regarding "DMH Coleman Salary Parity, Effective 4/1/07."  A true and correct copy of this email is attached hereto as **Exhibit D.**

[2] This data is included in a 2/7/07 memorandum from CDCR Secretary Tilton regarding "Mental Health Salary Increases."  A true and correct copy of this memorandum is attached hereto as **Exhibit E.**

[3] This data is provided in Exhibit G to my 3/23/07 Kahn Declaration in support of this motion.

[4] This data is provided in Exhibit G to my 3/23/07 Kahn Declaration in support of this motion.

[5] This data is included in **Exhibit C** to this declaration.

REPLY DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF REGARDING DEFENDANTS' DENIAL OF ACCESS TO INPATIENT PSYCHIATRIC BEDS IN DMH STATE HOSPITALS, NO.: CIV S 90-0520 LKK-JFM

| Position | Monthly DMH Salary Max[1] | Monthly CDCR Salary Max[2] | % Difference In CDCR Salary Above DMH | DMH Total Vacancy Of Position As Of 1/1/07[3] | DMH Total Vacancy Of Position As Of 2/15/07[4] | DMH Total Vacancy Of Position As Of 3/30/07[5] |
|---|---|---|---|---|---|---|
| 5) **Senior Psychologist CF (Sup)** | $8,857 | $9,300 | 5% | 81% | 77% | 81% (10 filled out of 53.3 budgeted) |
| 6) **Senior Psychologist (Spec)** | $8,636 | $9,068 | 5% | 87% | 87% | 70% |
| 7) **Psychologist - Clinical** | $7,319 | A) $7,125 (non-licensed) B) $8,636 | A) CDCR rate is lower B) 18% | 13% | 21% | 18% |
| 8) **Clinical Social Worker (H/CF) - Saf** | $5,928 | A) $6,525 B) $6,995 | A) 10% B) 18% | 22% | 23% | 27% (280.1 filled out of 383.1 budgeted) |
| 9) **Psychiatric Technician (Saf)** | $4,267 | A) $4,697 B) $4,855 C) $5,035 | A) 10% B) 13.7% C) 18% | 15% | 18% | 15% (1903.2 filled out of 2233.1 budgeted) |
| 10) **Rehabilitation (Recreation) Therapist** | $5,219 | $6,158 | 18% | Art: 32% Dance: 26% Music: 31% Occupational: 11% Recreation: 37% Avg.: 27.4% | Art: 40% Dance: 18% Music: 29% Occupational: 0 Recreation: 39% Avg.: 25.2% | Art: 34% Dance: 24% Music: 24% Occupational: 11% Recreation: 39% Avg.: 26.4% |

## SENATE AND FISCAL REVIEW SUBCOMMITTEE HEARING: 3/12/07

6.      Attached hereto as **Exhibit F** is a true and correct copy of a Certified Transcript of the Public Hearing before the Senate and Fiscal Review Subcommittee No. 3, on March 12, 2007. **Exhibit F** includes the transcript through page 50, which marks the end of discussion on Agenda item C: "Issues for Discussion—State Hospitals." This committee was chaired by Senator Elaine K. Alquist and included Senators Alex Padilla and Dave Cogdill. Dr. Stephen Mayberg, Director of DMH, Ms. Cindy Radavsky, DMH's Deputy Director of Long-term Care Services, and Mike Borunda, Acting Deputy Director of Systems of Care for DMH appeared

before the committee.  Ms. Radavsky testified in response to questions from the senators about the staffing vacancies in the DMH facilities, the impact of the vacancies on patient care and staff safety, and about DMH's plan to address staffing vacancies.

7.      In response to questions from Senator Alquist about staffing vacancies, Ms. Radavsky testified:  "we are required to provide services to three hundred and fifty-six CDCR patients within the state hospitals.  How that's impacting is the fact that right now because of the vacancies, we cannot accept those patients.  We've notified the *Coleman* Court Master that we now have a triage, a system for bringing folks in, and our priority on the triage is the patients that literally would go from the streets and impact public safety."  **Exhibit F**, at p. 8:4-11.  Ms. Radavsky told the committee that CDCR patients accepted to DMH but currently waitlisted "stay in corrections and the mental health system there until we can bring them in…Right now we have a hundred people on the waiting list…I've not been able to bring them into the state hospital."  **Exhibit F** at p. 8:14-23.

8.      The Committee also questioned Ms. Radavsky about the serious staffing shortages at DMH.  Senator Alquist asked:  "I guess what I'm asking is what is your plan?"  **Exhibit F** at p. 9:20-21.  In response, Ms. Radavsky said, "we have a plan due to the *Coleman* Court on April 6[th], and that includes looking at the analysis for the salary adjustments."  **Exhibit F** at p. 9:23-25.  Later in the hearing, Ms. Radavsky testified that the lower DMH salaries and difficult working conditions (which included an increase in the violence rate within the hospitals by about 36% in the past year or so) have contributed to the significant staffing vacancies.  **Exhibit F** at pp. 16:2-3, 18-21.  Finally, Ms. Radavsky testified about the discrepancy between DMH salaries within the hospitals and DMH salaries within the facilities located in the prisons (SVPP and CMF):

> Sen. Cogdill:  You know why the receiver decided not to require an increase in these
> salaries, or was this beyond his purview or could he have done that and chose not to?
> Ms. Radavsky:  Well, in this particular case, it's a special master.  I have to keep
> them straight because there's two cases.  Essentially no, sir, I have no idea why the
> state hospitals were not addressed.

1    Sen. Cogdill:  As far as you know, he had the authority to do it or whoever.  They

2    just chose not to?

3    Ms. Radavsky:  That's my understanding.  Yes sir.

4  **Exhibit F** at p. 43:14-23.

5         9.       In response to questioning from Senator Cogdill during the March 12, 2007

6  hearing, Cindy Radavsky, Deputy Director of Long-Term Care Services for DMH, testified

7  about the changing population in DMH hospitals and the increase in violence over the past two

8  years.  Mike Borunda, Acting Deputy with Systems of Care at DMH, testified that it was his

9  belief that at this time, clinical staff working in CDCR were both paid more and worked in a

10  safer environment than DMH clinicians working in the state hospitals.  **Exhibit F** at pp. 15:15-

11  17:23.

12         **COALINGA STAFFING PROBLEMS HAVE "RIPPLE EFFECTS"**

13         10.      In their Opposition, defendants assert that the accelerated activation of Coalinga

14  State Hospital will have no effect on the ability of DMH to meet the in-patient needs of other

15  patient groups, including CDCR patients, Incompetent to Stand Trial commitments and

16  Mentally Disordered Offenders.  Def. Opposition at p. 4-5.  Before the Senate and Fiscal

17  Review Subcommittee on March 12, 2007, Cindy Radavsky was questioned by Senator

18  Cogdill about this very subject, namely how the opening of beds at Coalinga might affect

19  patient populations at other DMH hospitals.  Ms. Radavsky responded:

20         Well, what we would end up doing is moving the two hundred and fifty
         additional sexually violent predators that are at Atascadero right now over
21         to Coalinga, *which would help reduce the overbedding at the other
         hospitals* because we're significantly overbedding at Patton, and we've had
22         to reduce that at Atascadero.  *We would bring the hundred in off of a
         waiting list for Atascadero*, and we would bring in the thirteen seventies…
23
24  **Exhibit F** at pp. 47:25-48:7 (emphasis added).

25         11.      The Legislative Analyst's Office ("LAO") prepared a budget analysis for DMH

26  for the Fiscal Year 2006-2007.  Attached here to as **Exhibit G** is a true and correct copy of the

27  LAO February 2006 Department of Mental Health (4440) Analysis of the 2006-2007 Budget

28  Bill.  In this analysis, the LAO discussed the stalled activation of Coalinga State Hospital as

1    due "mainly to the difficulty being experienced by the department in recruiting and hiring

2    qualified staff for the new facility." **Exhibit G** at p. 5. DMH indicated that its difficulty hiring

3    and retaining staff was in part the result of increased compensation for medical personnel

4    employed within the prisons ordered in the *Plata* case. At the time of the LAO analysis, in

5    February of 2006, DMH indicated that "it was seeking administration approval to increase pay

6    rates for its clinical staff to help offset the effects of the *Plata* decision." **Exhibit G** at p. 6.

7    This analysis was done nearly a year before the closure of ASH due to staffing shortages. In a

8    section entitled: "Coalinga Staffing Problems Has Ripple Effects," the LAO noted that: "The

9    problems in opening up Coalinga are already having a significant ripple effect throughout the

10   state hospital system." *Id* at p. 6. In the discussion of the ripple effect, LAO mentioned over-

11   crowding at ASH and Patton, the requirements of CDCR to provide in-patient care for its

12   prison inmates, and the over-crowding within the jail system of more than 350 individuals at

13   that time who had been committed to the state hospital system by the courts, but who remained

14   in county jails because of bed shortages in the state hospitals. *Id.*

15          12.     The LAO produced a budget analysis for DMH for the Fiscal Year 2007-2008 on

16   February 21, 2007. Attached hereto as **Exhibit H** is a true and correct copy of the LAO

17   February 21, 2007 Analysis of the Department of Mental Health (4440) 2007-2008 Budget Bill

18   (Health and Social Services). The LAO evaluated the DMH caseload projections for SVPs,

19   and concluded that fewer than 8 percent of people referred to DMH from CDCR for SVP

20   evaluation will require actual placement in DMH beds. **Exhibit H** at p. 5. The LAO also

21   noted that the administration's estimate that it would place 271 new SVPs in 2006-2007 was a

22   "worst-case scenario," and predicted that the numbers were "likely to be substantially lowers."

23   *Id.*

24          **PAY INCREASES FOR EXISTING DMH EMPLOYEES WILL NOT REMEDY
     UNSAFE WORK CONDITIONS AND COMPROMISED CARE WITHIN DMH
25                                   FACILITIES**

26          13.     DMH officials have stated that the existing vacancies within the DMH hospitals

27   have created unsafe working conditions, compromised care within the facilities and resulted in

28   additional staff exodus. For example, during a hearing before the Senate and Fiscal Review

1   Subcommittee on March 12, 2007, Ms. Radavsky testified that the significant staffing

2   vacancies within DMH were the result of the salary disparity with CDCR salaries and the

3   dangerous working conditions (that included a 36% increase in violence over the last year or

4   two that is exacerbated by staffing vacancies).  *See* **Exhibit F** at p. 16:3-22.  See also,

5   paragraph 9 above.

6         14.    Dr. Mayberg, the Director of DMH has expressed similar concerns over the

7   impact of staffing vacancies on patient care.  After Governor Schwarzenegger announced

8   proposed salary increases on March 21, 2007, Dr. Mayberg spoke with the press about his

9   concern over the impact of the staffing vacancies, noting that "[t]he consequences it has for

10  treatment and for staff and patient safety had to be addressed right away."  Attached hereto as

11  **Exhibit I** is a true and correct copy of an article from the San Luis Obispo Tribune, "ASH

12  workers may receive salary boost," March 23, 2007.

13        15.    The security concerns raised by DMH administrators have been echoed by line

14  staff in DMH hospitals.  In a letter dated April 10, 2007 and addressed to this Court by the

15  President of the California Association of Psychiatric Technicians, the President stated, "[t]he

16  Governor's proposed salary increase will not prevent Psychiatric Technicians and Senior

17  Psychiatric Technicians from leaving DMH," stating that the lower salary at DMH (even after

18  the proposed raise) and the worsening security conditions in DMH will cause more psychiatric

19  technicians to leave DMH.  Attached hereto as **Exhibit J** is a true and correct copy of this

20  4/10/07 letter.

21        16.    On March 8, 2007, the California Psychiatric Association sent a letter to the

22  Senate and Assembly budget committee chairs regarding the state hospital staffing crisis.

23  Attached hereto as **Exhibit K** is a true and correct copy of that March 8, 2007 letter.  The letter

24  described unsafe clinical conditions due to existing staffing vacancies that make it "impossible

25  for the few clinicians left to practice to do so in the ways in which they were trained and that

26  would be judged competent, safe and effective."  **Exhibit K** at p. 2.

27

28

**SUICIDES AT DEPARTMENT OF MENTAL HEALTH ("DMH") AND CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") FACILITIES**

17.     In Defendants' Objection and Motion to Strike, they dispute that they have an obligation to report attempted suicides and completed suicides at DMH facilities.  Defendants' Objections and Motion to Strike at p. 2.  Defendants were under an obligation to provide the Deputy Special Master and his experts, and plaintiffs' counsel with an accurate picture of the quality of mental health care and the impact of the significant staffing shortages on the quality of mental health care provided to CDCR patients at the facility.  During the February 21, 2007 tour at ASH attended by the Deputy Special Master, his experts, plaintiffs' counsel and representatives from CDCR, Dr. Hunter stated that he had placed a moratorium on new admissions to the hospital because of staffing vacancies.  At no point during the discussion were we fully informed of the extent to which the safety of staff and patients was compromised by the current staffing vacancies.  The reporting of two suicides and four suicide attempts since January 2007 would have been a significant piece of information for the *Coleman* experts, the Deputy Special Master and plaintiffs' counsel to have considered during the tour of the facility and when discussing staffing and care issues with administrative staff.  The failure to disclose an increase of serious suicide attempts at ASH and a completed suicide, which occurred just days before the visit by a patient recently converted from a 2684 to an MDO, was, to say the least, a serious omission of information that was highly relevant to the *Coleman* Team touring their facility and evaluating its capacity to safely treat and accept additional patients.  During the tour, there were several frank discussions of understaffing, safety concerns, ASH's inability to provide the number of required treatment hours, forced overtime and the like.  In my many years of experience working on the *Coleman* case and touring mental health programs, I have observed that mental health professionals that experience a suicide in their program are interested in investigating the circumstances of the suicide, discussing their feelings around the loss of life, learning from the event and taking measure to address any problems that emerge.  They are also willing to openly discuss the suicide event with the distinguished mental health experts of the *Coleman* Special Master's team.

-9-

18.     On March 8, 2007 I sent an email to defendants' counsel, Lisa Tillman and Michael Stone, informing them that we had received information that a CDCR patient transferred to ASH had committed suicide on February 15, 2007, and a second CDCR patient had attempted suicide on March 2, 2007 and was on life support.  On March 12, 2007, Ms. Tillman emailed a response to me confirming both the February 15, 2007 suicide and the March 2, 2007 suicide attempt.  On March 13, 2007, Ms. Tillman emailed Special Master Keating and plaintiffs' counsel a suicide notification that the CDCR patient at ASH who had attempted suicide on March 2, 2007 had died on March 12, 2007.

19.     In Defendants' Objections and Motion to Strike, defendants complain plaintiffs are improperly reporting certain deaths as suicides.  Def. Object and Motion to Strike at p. 2.  Defendants also complain plaintiffs' designation of certain deaths as suicides are unsupported because I am not a clinician.  Finally, defendants note that they defer to the Special Master and his experts for a determination of which overdose deaths are suicides.  *Id.*  There are sometimes disputes about whether an overdose death is a suicide.  Plaintiffs are not conducting a clinical evaluation when counting these overdose deaths as possible suicides.  While I do not purport to be a mental health clinician, I have developed some expertise in the review of CDCR mental health records concerning suicides over the years.  I also consult with various clinical and suicide experts regarding policies and procedures and individual suicide/deaths where there is a question about the characterization of the death.  Special Master Keating and his experts have not yet published their review of the 2005 and 2006 suicides discussed in my opening declaration.

## CDCR INMATES WAITLISTED FOR DMH ARE DENIED ADEQUATE SERVICES

20.     The Special Master has mandated that defendants provide monthly documents reporting statistics on the census and waiting list for Intermediate Care Facilities ("ICF") and Day Treatment Beds at California Medical Facility and Salinas Valley Psychiatric Program (SVPP) and the D-5 and D-6 units located in Salinas Valley State Prison (SVSP).  The most recent monthly documents that defendants have provided are dated December 1, 2006 and

were provided in January 2007.  Attached hereto as **Exhibit L** is a true and correct copy of the December 1, 2006 Documents reporting on the Census and Wait List for Intermediate Care Facility and Day Treatment Program Beds at CMF/SVPP/SVSP.  According to the December 2006 data, there were 106 inmate-patients on the waiting list for SVPP (Level IV ICF) beds. The wait list data for that program indicates that inmate-patients were housed in the following locations while they waited to be transferred to DMH programs:  7 (Psychiatric Services Unit), 11 (Mental Health Crisis Beds), 26 (EOP administrative segregation unit), 31 (EOP mainline unit) and 30 PC 1370 Incompetent to Stand Trial (housing locations were not indicated for these 30 patients).  **Exhibit L** at p. 2.  Despite numerous requests by plaintiffs' counsel and the Special Master, defendants are not complying with their obligations to provide monthly and other periodic information necessary to monitor compliance with this Court's orders.

21.    Vic Brewer, Executive Director of SVPP and CMF-Vacaville, has informed the Special Master, Deputy Master Lopes and plaintiffs' counsel, that EOP mainline patients typically remain on the waitlist for SVPP (after acceptance) for 150-180 days.  *See* Declaration of Jane Kahn in Support of Plaintiffs' Motion for Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals, ("3/23/07 Kahn Decl.) at ¶¶32, 33.  No other information has been provided to plaintiffs' counsel about lengths of stay on the waiting list for inmate-patients accepted who are housed in PSU, EOP adseg, or MHCB beds.

22.    In the Seventeenth Monitoring Report of the Special Master Regarding Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols, Part A ("17A Report") (Docket No. 2140), the Special Master issued a discouraging review of the EOP programs for both mainline and administrative segregation patients.  Based upon the information gathered during this monitoring round, the Special Master issued a recommendation that defendants be required to work with the Special Master's experts to evaluate their EOP administrative segregation programs and file a report based upon the study within 90 days of the Court's Order.  Docket No. 2140 at p.137.  Defendants have been ordered by the Court to implement this recommendation.  3/12/07 Order ¶ 3. [Docket No.

2158]  In the 17A Report, the Special Master found that four of the institutions with large general population EOP programs – Lancaster, Mule Creek, RJ Donavan and Salinas Valley State Prison – were unable to meet minimum program guide standards for weekly therapeutic activities.  Docket No. 2140 at p. 129. CSP-Sacramento's EOP program lacked adequate treatment space and CMF, with its enormous EOP population, had limited treatment space that was described as "largely unsuitable because ambient outside noise and the poor quality of sound inside the group treatment space substantially inhibited communication among the participants."  *Id*.  In the SVSP EOP and EOP administrative segregation units, the Special Master found that "inmates typically languished for months on SVPP's waiting list."  *Id* at p. 97.  Four EOP patients who had been accepted at SVPP were still at the prison at the time of the monitoring visit waiting to transfer; two had been waiting 95 days; one had been waiting 217 days; and the fourth had been on a waiting list for 314 days.  *Id*.  While these inmates remained housed at SVSP in the EOP units, the care that they received was often inadequate. The experts reviewed an EOP patient referred to SVPP on July 26, 2005, who was accepted two weeks later, but was still on the waiting list at the time of the monitoring visit, which was ten months later.  Docket 2138 (Ex. G to 17A Report, Inmate D) at p. 8.  This patient was diagnosed with Schizophrenia and had been placed by his treatment team on a modified program that provided less than EOP level of care because he was too paranoid to leave his cell or accept any group therapy.  *Id*. at 8.  The *Coleman* experts concluded that this patient required more, not less, treatment during his wait for transfer to SVPP.  *Id*.

23.     The Special Master identified on-going problems with the provision of adequate mental health care to the EOP patients housed in the administrative segregation units at the prisons reviewed in his 17A Report.  Docket No. 2140 at pp. 130-131.  CSP-Lancaster housed 80 EOP patients in a unit which could not handle that number of patients.  These patients were not offered required treatment hours or outside yard, they were housed in filthy cells with dirty lexan obscuring the view into the cells, and "[m]any inmates exhibited symptoms of their serious mental illness."  Id. at p. 37.  The *Coleman* monitors reviewed the care provided to one EOP patient who had been accepted to SVPP but remained on the waiting list.  Docket 2138

1  (Ex. B to 17A Report, Inmate O).  According to the Court monitors, their review of the EOP

2  patient's records indicated "that he experienced episodes in which his eyes were rolled upward

3  and he was minimally responsive."  *Id.*  He was prescribed multiple medications and during his

4  wait for transfer to a bed at SVPP it was noted that he was losing weight.  *Id.*  The monitors

5  noted that "[l]ack of access to intermediate care was a serious problem given the severity of

6  this inmate's illness and his compromised functioning."  *Id*.

7         24.     Defendants have reported that PSU referrals to SVPP are priority referrals.  In

8  the 17A Report, the Special Master reviewed CSP-SAC referrals to SVPP, which include PSU

9  and EOP ASU patients.  Transfers for these patients took between 5 and 170 days.  Docket No.

10  2140 at p. 45.  The monitors noted that 12 referrals were pending transfer at the time of the

11  monitoring visit, with three patients with waits of 208, 210 and 213 days.  *Id.* at p. 46.

12         25.     On March 13, 2007, Vic Brewer reported that 10 out of 15 CDCR patients who

13  had been accepted at ASH, but could not be transferred due to staffing shortages, were

14  transferred to SVPP.  3/23/07 Kahn Decl. at ¶ 33.  These 10 patients would ordinarily have

15  been admitted to the lower security beds at ASH or Coalinga.  Instead, they were transferred to

16  SVPP beds that would ordinarily be occupied by level IV inmate-patients who have been

17  accepted to SVPP and are currently on the waiting list.  These Level IV inmate-patients on the

18  waiting list for SVPP are ineligible for ASH or Coalinga for security reasons.  On March 13,

19  2007, Mr. Brewer reported that there were at least 106 patients waiting for beds at SVPP,

20  including 37 mainline EOP patients.  *Id.*

21         26.     Attached hereto as **Exhibit M** is a true and correct copy of Welfare &

22  Institutions Code Section 6600.05.

23         I declare under penalty of perjury under the laws of California and the United States that

24  the foregoing is true and correct, and that this declaration was executed this 16th day of April,

25  2007, in San Francisco, California.

26

27                                          /s/ Jane Kahn
                                            Jane Kahn
28

REPLY DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF REGARDING
DEFENDANTS' DENIAL OF ACCESS TO INPATIENT PSYCHIATRIC BEDS IN DMH STATE HOSPITALS, NO.:  CIV S 90-0520 LKK-JFM

# EXHIBIT A

STATE OF CALIFORNIA
**BUDGET CHANGE PROPOSAL - COVER SHEET**
FOR FISCAL YEAR      2007-08
DF-46 (WORD Version)(REV 07/06)
*Please report dollars in thousands.*

**Department of Finance**
**915 L Street**
**Sacramento, CA 95814**
**IMS Mail Code: A-15**

| BCP # | PRIORITY NO. | ORG. CODE 4440 | DEPARTMENT Mental Health |
|---|---|---|---|
| PROGRAM 20 – Long Term Care Services | ELEMENT | COMPONENT | |

TITLE OF PROPOSED CHANGE

*Coleman*-Related Salary Increases

SUMMARY OF PROPOSED CHANGES

Requests an augmentation of $29,555,000 ($28,840,000 General Fund and $715,000 County Reimbursements) in the budget year to provide full year funding to bring salaries for filled Department of Mental Health professional and level-of-care classifications closer to parity with California Department of Corrections and Rehabilitation (CDCR) salaries which were increased as a result of the *Coleman* court decision.

| REQUIRES LEGISLATION<br><br>☐ YES<br>☒ NO | CODE SECTION(S) TO BE AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND MARK IF APPLICABLE<br>☐ ONE-TIME COST  ☐ FUTURE SAVINGS<br>☐ FULL-YEAR COSTS ☐ REVENUE<br>☐ FACILITIES/CAPITAL COSTS |
|---|---|---|

| PREPARED BY | DATE 3/29/07 | REVIEWED BY | DATE 3-28-07 |
|---|---|---|---|
| DEPARTMENT DIRECTOR<br>STEPHEN W. MAYBERG, PH.D | DATE 3/29/07 | AGENCY SECRETARY | DATE 3·29·2007 |

DOES THIS BCP CONTAIN INFORMATION TECHNOLOGY (IT) COMPONENTS?    YES ☐   OR   NO ☒
IF YES, DEPARTMENT CHIEF INFORMATION OFFICER SIGNATURE            DATE

FOR IT REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY STUDY REPORT (FSR) WAS APPROVED BY THE DEPARTMENT OF FINANCE.
DATE      PROJECT #              FSR ☐      OR      SPR ☐

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?
☐ YES      ☐ NO          ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

**DEPARTMENT OF FINANCE ANALYST USE**
**(ADDITIONAL REVIEW)**

CAPITAL OUTLAY ☐    OTROS ☐    FSCU ☐    OSAE ☐    CALSTARS ☐

DATE SUBMITTED TO THE LEGISLATURE:                    PPBA: John Doyle 3/29/07

STATE OF CALIFORNIA
BUDGET CHANGE PROPOSAL--FISCAL DETAIL
STATE OPERATIONS:  Fiscal Year 2007-08
DF-46 (WORD/EXCEL)  (REV 07/06)
*Please report dollars in thousands.*

| BCP No.: | DATE:<br>3-29-07 | TITLE OF PROPOSED CHANGE:<br>*Coleman*-Related Salary Increases |
|---|---|---|
| PROGRAM:<br>20 - Long Term Care Services | ELEMENT: | COMPONENT: |

|  | PERSONNEL YEARS | | | DOLLARS | | |
|---|---|---|---|---|---|---|
|  | CY | BY | BY + 1 | CY | BY | BY + 1 |
| TOTAL SALARIES AND WAGES | 0.0 | 0.0 | 0.0 | $0 | $25,356 | $25,356 |
| SALARY SAVINGS | 0.0 | 0.0 | 0.0 | 0 | -$1,268 | -$1,268 |
| NET TOTAL SALARIES AND WAGES | 0.0 | 0.0 | 0.0 | $0 | $24,088 | $24,088 |
| STAFF BENEFITS | | | | 0 | 5,467 | 5,467 |
| TOTAL PERSONAL SERVICES | 0.0 | 0.0 | 0.0 | $0 | $29,555 | $29,555 |
| OPERATING EXPENSES AND EQUIPMENT | | | | | | |
| 201 - GENERAL EXPENSE | | | | | | |
| 241 - PRINTING | | | | | | |
| 251 - COMMUNICATIONS | | | | | | |
| 261 - POSTAGE | | | | | | |
| 271 - INSURANCE | | | | | | |
| 291 - TRAVEL-IN STATE | | | | | | |
| 311 - TRAVEL-OUT OF STATE | | | | | | |
| 331 - TRAINING | | | | | | |
| 341 - FACILITIES OPERATIONS | | | | | | |
| 361 - UTILITIES | | | | | | |
| 382 - CONSULTING & PROFESSIONAL SERVICES: Interdepartmenta | | | | | | |
| 402 - CONSULTING & PROFESSIONAL SERVICES: External | | | | | | |
| 428 - CONSOLIDATED DATA CENTERS: | | | | | | |
|     HEALTH AND HUMAN SERVICES DATA CENTER | | | | | | |
|     STEPHEN P. TEALE DATA CENTER | | | | | | |
| 431 - DATA PROCESSING | | | | | | |
| 451 - EQUIPMENT | | | | | | |
| OTHER ITEMS OF EXPENSE: (Specify below) | | | | | | |
| 502 - Subsistance and Personal Care | | | | | | |
| 503 - Clothing and Personal Supplies | | | | | | |
| 506 - Food Stuffs | | | | | | |
| 512 - Quartering and Housekeeping | | | | | | |
| 513 - Laundry | | | | | | |
| 514 - Miscellaneous Client Services | | | | | | |
| 516 - Chemicals, Drugs and Laboratory Supplies | | | | | | |
| 517 - Educational Supplies | | | | | | |
| 522 - Law Enforcement Materials | | | | | | |
| 524 - Vehicle Operations | | | | | | |
| TOTAL OPERATING EXPENSES AND EQUIPMENT | | | | $0 | $0 | $0 |
| SPECIAL ITEMS OF EXPENSE | | | | | | |
| TOTAL STATE OPERATIONS EXPENDITURES | | | | $0 | $29,555 | $29,555 |

| SOURCE OF FUNDS | APPROPRIATION No. | | | | | |
|---|---|---|---|---|---|---|
|  | ORG | REF | FUND | | | |
| GENERAL FUND | 4440 | 011 | 0001 | $0 | $28,840 | $28,840 |
| GENERAL FUND - OH | 4440 | 011 | 0001 | | | |
| REIMBURSEMENTS-CYA | 4440 | 011 | 0995 | | | |
| REIMBURSEMENTS-LPS-OH | 4440 | 011 | 0995 | | | |
| REIMBURSEMENTS-LPS | 4440 | 011 | 0995 | $0 | $715 | $715 |

Fiscal Detail (Continued)

# LOCAL ASSISTANCE AND DETAIL OF STAFF BENEFITS AND PERSONAL SERVICES

DF-46 (WORD/EXCEL)  (REV 07/06)  Fiscal Year 2007-08

| LOCAL ASSISTANCE | | | | | | |
|---|---|---|---|---|---|---|
| SOURCE OF FUNDS | APPROPRIATION No. | | | | | |
| | ORG | REF | FUND | | | |
| GENERAL FUND | | | | | | |
| SPECIAL FUNDS | | | | | | |
| FEDERAL FUNDS | | | | | | |
| OTHER FUNDS (SPECIFY) | | | | | | |
| REIMBURSEMENTS | | | | | | |

| DETAIL OF SALARIES AND WAGES | | | | | | | |
|---|---|---|---|---|---|---|---|
| CLASSIFICATION | POSITIONS | | | SALARY/RANGE (Whole Dollars) | AMOUNT (Whole Dollars) | | |
| | CY | BY | BY + 1 | | CY | BY | BY + 1 |
| Medical Director | | | | | | 25,356,000 | 25,356,000 |
| Sr Psychiatrist (Sup) | | | | | | | |
| Sr Psychiatrist (Spec) | | | | | | | |
| Staff Psychiatrist | | | | | | | |
| Sr Psychologist (Sup) | | | | | | | |
| Sr Psychologist (Spec) | | | | | | | |
| Psychologist | | | | | | | |
| Clinical Social Worker | | | | | | | |
| Unit Supervisor | | | | | | | |
| Rehab Therapist (Art) | | | | | | | |
| Rehab Therapist (Dance) | | | | | | | |
| Rehab Therapist (Music) | | | | | | | |
| Rehab Therapist (Rec) | | | | | | | |
| Rehab Therapist (Occup) | | | | | | | |
| Sr Psychiatric Techn | | | | | | | |
| Psychiatric Techn | | | | | | | |
| TOTAL SALARIES AND WAGES | 0.0 | 0.0 | 0.0 | | $0 | $25,356,000 | $25,356,000 |

| STAFF BENEFITS DETAIL  (WHOLE DOLLARS) | CY | BY | BY + 1 |
|---|---|---|---|
| 103 - OASDI @ 7.5% | $0 | $0 | $0 |
| 104 - DENTAL @ 1.0% | 0 | 0 | 0 |
| 105 - HEALTH INSURANCE @ 2.0% | 0 | 0 | 0 |
| 106 - RETIREMENT @ 22.696% | 0 | 5,467,058 | 5,467,058 |
| 125 - WORKERS' COMPENSATION @ 3.0% | 0 | 0 | 0 |
| 127 -  INDUSTRIAL DISABILITY LEAVE @ 0.2% | 0 | 0 | 0 |
| 132 - NON-INDUSTRIAL DISABILITY LEAVE @ 0.2% | 0 | 0 | 0 |
| 133 - UNEMPLOYMENT INSURANCE @ 0.4% | 0 | 0 | 0 |
| 134 - OTHER STAFF BENEFITS @ 6.0% | 0 | 0 | 0 |
| 135 - LIFE INSURANCE @ .03% | 0 | 0 | 0 |
| 136 - VISION @ 0.5% | 0 | 0 | 0 |
| 137 - MEDICARE TAXATION @ 0.2% | 0 | 0 | 0 |
| 139 - OTHER | 0 | 0 | 0 |
| TOTAL | $0 | $5,467,058 | $5,467,058 |

| BUDGET CHANGE PROPOSAL – ANALYSIS OF PROBLEM | |
|---|---|
| Date:    3/29/2007 | Page 1 of 5 |

A.    NATURE OF REQUEST

The Department of Mental Health (DMH) is requesting funding to bring salaries for filled professional and level-of-care mental health classifications closer to parity with the California Department of Corrections and Rehabilitation (CDCR) salaries, which were increased as a result of the *Coleman* court decision. DMH is requesting an augmentation of $29,555,000 for 2007-08. This brings DMH salaries for the incumbent staff in *Coleman*-related classes to 5 percent less than CDCR salaries for the following classifications: Staff Psychiatrist (safety), Senior Psychiatrist (spec), Senior Psychiatrist (Sup), Medical Director (SH/DC) (CEA), Senior Psychologist HF (sup), Senior Psychologist CF (sup) and to 18 percent less than CDCR salaries for incumbents in the following staff classifications: Psych Technician (safety), Senior Psych Technician (safety), Unit Supervisor (safety), Psychologist (HF), Chief Psychologist, Rehab Therapist (Rec-safety), Rehab Therapist (Music-safety), Rehab Therapist (Occ-Safety), Rehab Therapist (Art-safety), Rehab Therapist (Dance-Safety), Clinical Social Worker (H/CF)-Safety, Supervising Psych Social Worker I.

Expectations are that the recruitment and retention (R&R) will assist in stopping the exodus of employees from DMH to CDCR. Funding needs for *Coleman*-related vacant positions, population growth at the state hospitals and staffing contracts will be addressed in the May Revision.

B.    BACKGROUND/HISTORY

The Special Master assigned to *Coleman v. Schwarzenegger* recommended, and the federal court has ordered significant salary increases for a number of healthcare classifications within the CDCR to address the severe shortage of mental health care employees within CDCR institutions. By the order of the court, CDCR salary increases will be implemented no later than March 31, 2007, and will be retroactive to January 1, 2007. With unilateral pay increases for CDCR institutions, there has been an almost daily drain of staff employed by the DMH at the state hospitals to CDCR institutions. In response to crisis-level staffing issues, the DMH will redirect current salary savings to fund temporary R&R incentives effective April 1, 2007, and requests implementation of permanent salary increases effective July 1, 2007. It is crucial that *Coleman*-related classifications in all DMH facilities receive financial incentives that bring salaries closer to parity with CDCR salaries, in order to prevent state hospital staff from transferring to CDCR facilities.

C.    STATE LEVEL CONSIDERATIONS

Salary incentives ordered under *Coleman* have created a substantial salary disparity between healthcare classifications at DMH and CDCR that jeopardize the hospitals' ability to accept and treat the mentally ill. DMH is in the midst of a crisis due to high vacancy rates and a constant drain of staff to CDCR institutions. The substantial salary adjustments in *Coleman* do not apply to similar healthcare related classifications within DMH's state hospitals that also serve CDCR inmates and parolees. There has been competing litigation and numerous court orders that precipitated this staffing crisis.

| BUDGET CHANGE PROPOSAL – ANALYSIS OF PROBLEM | |
|---|---|
| Date:    3/29/2007 | Page 2 of 5 |

C.    **STATE LEVEL CONSIDERATIONS (CONTINUED)**

These court cases have impacted DMH, causing a staffing drain for general healthcare clinicians. However, the vacancy rates are exacerbated particularly in *Coleman* because the two departments (DMH and CDCR) are attempting to recruit and retain the same classifications of mental healthcare practitioners. Court orders significantly increasing the salaries of CDCR employees have caused staff to leave DMH for CDCR jobs, leaving an extremely high number of vacancies in the following mental healthcare related classifications.

- Psychiatrist (numerous classifications)
- Psychologist (numerous classifications)
- Psychiatric Technician (PT, Senior Classifications)
- Clinical Social Worker
- Rehabilitation Therapist, State Facilities (All Classifications)

This loss of staff jeopardizes the following:

(1)    DMH's licensure,
(2)    Accreditation of the state hospitals by the Joint Commission on Accreditation of Health Care Organizations (JCAHO),
(3)    DMH's ability to comply with the requirements of a federal Consent Judgment pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA) within the agreed upon time frames,
(4)    DMH's ability to comply with the requirements of a state court order in the Sacramento County, *Osburn* case and
(5)    The health, safety and constitutional rights of state hospital patients.

DMH is obligated by licensing standards, operational necessity, and the recently signed CRIPA Consent Judgment to meet prescribed staffing ratios and service requirements in a number of these classifications. Licensing standards and accreditation by JCAHO do not dictate staffing ratios but they require "sufficient psychiatrists on staff to meet the needs of the patient" as determined by acuity. While under review from CRIPA, it was felt the existing staffing requirements were not sufficient. Therefore, the most stringent of these ratios per federal court order requires each hospital to maintain psychiatrist-patient ratios of 1:15 for Acute level-of-care and 1:25 for ICF level-of-care. Without an adequate number of mental healthcare employees to provide treatment and services, the state hospitals cannot meet the needs of its patients or the staffing ratios required by state and federal law.

Currently, all DMH hospitals are on controlled admissions and two have substantially restricted admissions due to statutory caps on population. Staffing levels as described above, are being monitored by the federal CRIPA Consent Judgment. The practice of increasing a practitioner's caseload, a strategy that was employed by the hospitals in order to accommodate an influx of court-ordered patients, has resulted in staffing ratios that violate federal court orders, and can no longer be sustained. Furthermore, increasing a clinician's caseload affects the quality of patient care and the safety of hospital operations.

C.    **STATE LEVEL CONSIDERATIONS (CONTINUED)**

The CRIPA Court Monitor expects to see improvement in both areas with each tour of the hospitals. The Court Monitor completed baseline tours in 2006 and DMH has three years to comply with the Consent Judgment. Absent some form of salary parity system-wide, DMH staff will continue to transfer from state hospitals to CDCR facilities for the substantive salary increase and other practitioners/clinicians will leave out of concern for their license and liability as their caseloads increase. This exodus will result in the continued increase in vacancy rates in the state hospitals and hamper the ability of the state hospitals to implement the enhancement plan that will bring them into compliance with the Consent Judgment.

D.    **FACILITY/CAPITAL OUTLAY CONSIDERATIONS**

This request has no impact on any facility or capital outlay program within the DMH.

E.    **JUSTIFICATION**

Salary incentives ordered under *Coleman* have created a substantial salary disparity between healthcare classifications at DMH and CDCR that jeopardize the hospitals' ability to accept criminal defendants who are judicially committed, including patients referred from CDCR. The hospitals are already faced with lengthy waiting lists for defendants found incompetent to stand trial (IST), and these waiting lists have resulted in orders from courts across the state requiring DMH to admit patients within seven days, (i.e. *Osburn* case), additionally the Department is at tremendous risk of being in contempt of these court orders.

It is crucial that *Coleman*-related classifications in all DMH facilities receive financial incentives consistent with those granted CDCR, in order to prevent the continued exodus of state hospital psychiatric staff transferring to CDCR facilities. CDCR granted all staff the *Coleman* parity including their Adult Paroles Division. The most significant impact to DMH, as it relates to the *Coleman* order is driven by the fact that the classification focus is in psychiatry and psychology. At the beginning of the fiscal year, prior to negotiated compensation adjustments, a staff psychiatrist for DMH made $11,955 per month ($9,855 mo. salary plus $2,100 mo. R&R). This is a point in time, for a specific salary range in the psychiatrist class. The most recent *Coleman* order provides $21,641 per month as the CDCR staff psychiatrist salary. Given this current incentive to work for CDCR, the outlook is poor for DMH to retain staff. Therefore, bringing DMH salaries closer to parity with CDCR salaries is critical to begin to lessen the current staffing crisis particularly in these two areas of care. The exodus of staff that has already begun will result in the following consequences:

- Significant increases in vacancy rates in health-related classifications. Current vacancy rates for psychologist and psychiatrist classifications at some DMH facilities exceed 30 and 50 percent, respectively, which does not allow for meeting state and federally required staffing ratios.

| BUDGET CHANGE PROPOSAL – ANALYSIS OF PROBLEM | |
|---|---|
| Date:    3/29/2007 | Page 4 of 5 |

E.    JUSTIFICATION (CONTINUED)

- The inability of hospitals to admit court-ordered or CDCR-referred patients to state hospitals and DMH psychiatric programs. DMH recently faced this situation at Atascadero State Hospital (ASH) where admissions are restricted to a "triage" review based upon the number of psychiatrists available.

- The inability of forensic staff to meet the statutory requirements of court reporting for IST patients and not guilty by reason of insanity (NGI) patients resulting in contempt charges and court subpoenas.

- Closure of numerous treatment units within hospitals, with the probable result that adult CDCR-committed patients will be returned to the prisons. There are 356 such patients at the state hospitals. ASH is the first hospital to face forced closures and after an analysis, two units were closed in response to its current staffing crisis.

- Potential court orders releasing high-risk forensic patients, who cannot be accommodated at state facilities, into the community thereby creating a public safety risk.

- The hospitals' inability to comply with the federal CRIPA Consent Judgment with regard to staffing and provision of care. If the hospitals are found in violation of the Consent Judgment, there will be increased federal control of state facilities.

If insufficient staffing renders the hospitals unable to serve patients, as the State is required by law to do, DMH could find itself in the same position as CDCR: subject to intense federal oversight and besieged by court orders. Additionally, DMH will be faced with the need, under emergency authority, to contract for personal services at significant cost to the General Fund. Some hospitals are already faced with this as a solution to maintaining licensure and these contracts are at almost twice the cost of the civil service salaries.

F.    OUTCOMES AND ACCOUNTABILITY

On a monthly basis, the DMH will monitor vacancies and existing contract invoices that reflect the numbers of staff provided at each facility in each classification. The appropriate usage of allocated staff and contract funds, as well as the timely implementation of this proposal will help to ensure implementation and compliance with licensing standards, JCAHO, and the CRIPA Consent Judgment.

G.    ANALYSIS OF ALL FEASIBLE ALTERNATIVES

Alternative #1

Augment the state hospital appropriation by $29,555,000 in 2007-08. This will bring DMH salaries for the affected incumbents in most _Coleman_-related classes to 18 percent less than CDCR salaries and 5 percent less than CDCR salaries for specified psychiatry and psychology classifications.

| BUDGET CHANGE PROPOSAL – ANALYSIS OF PROBLEM | |
|---|---|
| Date:    3/29/2007 | Page 5 of 5 |

G.    **ANALYSIS OF ALL FEASIBLE ALTERNATIVES (CONTINUED)**

Pros:

- This augmentation will bring DMH salaries closer to parity with CDCR.
- This action will assist DMH in complying with JCAHO, licensing standards, and the CRIPA Consent Judgment.

Cons:

- Increased cost to the General Fund.
- First line supervisors may elect to demote for financial incentive to the impacted classes.

**Alternative #2**

**Do nothing**

DMH will continue to have difficulties recruiting and retaining staff due to the significant salary discrepancies between DMH and CDCR.  This will jeopardize the acceptance of patients in need of care and those who have been judicially committed, as well as increasing the department's risk of being found in contempt.

Pros:

- No impact on the General Fund

Cons:

- The department will continue to have recruitment and retention difficulties.
- This will place DMH at risk in maintaining compliance with JCAHO, licensing standards, and implementing the CRIPA Consent Judgment.
- Potential court releases of high-risk forensic patients who cannot be accommodated in state hospitals will pose a threat to public safety.

H.    **TIMETABLE**

Upon approval of this request, funds would be available July 1 2007 to bring DMH salaries for *Coleman*-related classes closer to parity with CDCR salaries.

I.    **RECOMMENDATION**

Adopt Alternative #1

# EXHIBIT B

**STATE OF CALIFORNIA**
**FINANCE LETTER - COVER SHEET**
**FOR FISCAL YEAR**    2007/08
DF-46 (WORD Version)(REV 07/06)
*Please report dollars in thousands.*

**Department of Finance**
**915 L Street**
**Sacramento, CA 95814**
**IMS Mail Code: A-15**

| FL #<br>2 | PRIORITY NO.<br>2 | ORG. CODE<br>8380 | DEPARTMENT<br>PERSONNEL ADMINISTRATION |
|---|---|---|---|
| PROGRAM | ELEMENT | COMPONENT | |

**TITLE OF PROPOSED CHANGE**
Recruitment for Health & Mental Health Professionals

SUMMARY OF PROPOSED CHANGES

The Department of Personnel Administration is requesting $1 million for FY 2007/08 and $1 million for FY 2008/09 to hire a recruitment contractor to locate and develop a pool of prospective healthcare professionals for all departments employing medical related positions.

| REQUIRES<br>LEGISLATION<br><br>☐ YES<br>☒ NO | CODE SECTION(S) TO BE<br>AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND<br>MARK IF APPLICABLE<br>☐ ONE-TIME COST    ☐ FUTURE<br>                              SAVINGS<br>☐ FULL-YEAR COSTS  ☐ REVENUE<br><br>☐ FACILITIES/CAPITAL COSTS |
|---|---|---|

| PREPARED BY | DATE | REVIEWED BY<br>E. Brenneman, Fiscal Officer, DPA | DATE |
|---|---|---|---|
| DEPARTMENT DIRECTOR<br>David Gilb | DATE<br>3/26/07 | AGENCY SECRETARY | DATE |

DOES THIS BCP CONTAIN INFORMATION TECHNOLOGY (IT) COMPONENTS? YES ☐   OR   NO ☒
IF YES, DEPARTMENT CHIEF INFORMATION OFFICER SIGNATURE          DATE

FOR IT REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY STUDY REPORT (FSR) WAS APPROVED BY THE DEPARTMENT OF FINANCE.

DATE        PROJECT #          FSR ☐    OR    SPR ☐

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?

☐ YES    ☐ NO        ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND
                                    DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

**DEPARTMENT OF FINANCE ANALYST USE**
**(ADDITIONAL REVIEW)**

| CAPITAL OUTLAY ☐   OTROS ☐   FSCU ☐   OSAE ☐   CALSTARS ☐ | Original Signed by:<br>Koreen Hansen |
|---|---|
| DATE SUBMITTED TO THE LEGISLATURE:    DELIVERED MAR 2 9 2007 | PPBA: |

PAGE 1-1

**STATE OF CALIFORNIA**
**FINANCE LETTER—FISCAL DETAIL**
**STATE OPERATIONS**
DF-46 (REV 07/06)
*Please report dollars in thousands.*

Department of Finance
915 L Street
Sacramento, CA  95814
IMS Mail Code: A-15

| FL # 2 | DATE 3/27/2007 | TITLE OF PROPOSED CHANGE Recruitment for Health & Mental Health Professionals |
|---|---|---|
| PROGRAM | ELEMENT | COMPONENT |

| | PERSONNEL YEARS | | | | | |
|---|---|---|---|---|---|---|
| | CY | BY | BY + 1 | CY | BY | BY + 1 |
| **TOTAL SALARIES AND WAGES** [1] | | | | $ | $ | $ |
| SALARY SAVINGS | - | | | - | - | - |
| **NET TOTAL SALARIES AND WAGES** | | | | $ | $ | $ |
| STAFF BENEFITS [2] | | | | $ | $ | $ |
| **TOTAL PERSONAL SERVICES** | | | | $ | $ | $ |
| **OPERATING EXPENSES AND EQUIPMENT** [3] | | | | | | |
| GENERAL EXPENSE | | | | | | |
| PRINTING | | | | | | |
| COMMUNICATIONS | | | | | | |
| POSTAGE | | | | | | |
| TRAVEL—IN STATE | | | | | | |
| TRAVEL—OUT OF STATE | | | | | | |
| TRAINING | | | | | | |
| FACILITIES OPERATIONS | | | | | | |
| UTILITIES | | | | | | |
| CONSULTING & PROFESSIONAL SERVICES:  Interdepartmental [3] | | | | | | |
| CONSULTING & PROFESSIONAL SERVICES:  External [3] | | | | | 1,000 | 1,000 |
| DEPT OF TECHNOLOGY SERVICES CONSOLIDATED DATA CENTER | | | | | | |
| DATA PROCESSING | | | | | | |
| EQUIPMENT [3] | | | | | | |
| DEBT SERVICE | | | | | | |
| OTHER ITEMS OF EXPENSE: (specify below) | | | | | | |
| | | | | | | |
| | | | | | | |
| **TOTAL OPERATING EXPENSES AND EQUIPMENT** | | | | $ | $1,000 | $1,000 |
| SPECIAL ITEMS OF EXPENSE [4] | | | | $ | $ | $ |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **TOTAL STATE OPERATIONS EXPENDITURES** | | | | $ | $1,000 | $1,000 |

| SOURCE OF FUNDS | APPROPRIATION NO. | | | | | |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 8380 | 001 | 0001 | | $1,000 | $1,000 |
| SPECIAL FUNDS | | | | $ | $ | $ |
| FEDERAL FUNDS | | | | $ | $ | $ |
| OTHER FUNDS (SPECIFY) | | | | $ | $ | $ |
| REIMBURSEMENTS | | | | $ | $ | $ |

[1] ITEMIZED DETAIL ON PAGE I-3 BY CLASSIFICATION AS IN SALARIES AND WAGES SUPPLEMENT.

[2] PROVIDE DETAIL ON PAGE I-3.

[3] PROVIDE LIST ON PAGE I-4.

[4] SPECIAL ITEMS OF EXPENSE MUST BE TITLED.  PLEASE REFER TO THE UNIFORM CODES MANUAL FOR A LIST OF THE STANDARDIZED
SPECIAL ITEMS OF EXPENSE OBJECT WHICH MAY BE USED.

Fiscal Detail Continued
## LOCAL ASSISTANCE AND DETAIL OF STAFF BENEFITS AND PERSONAL SERVICES

| LOCAL ASSISTANCE | | | | $( ) | $( ) | $( ) |
|---|---|---|---|---|---|---|
| SOURCE OF FUNDS | APPROPRIATION NO. | | | | | |
| | ORG | REF | FUND | | | |
| GENERAL FUND | | | | $ | $ | $ |
| SPECIAL FUNDS | | | | $ | $ | $ |
| FEDERAL FUNDS | | | | $ | $ | $ |
| OTHER FUNDS | | | | $ | $ | $ |
| REIMBURSEMENTS | | | | $ | $ | $ |

| CLASSIFICATION [1] | POSITIONS | | | SALARY/RANGE (WHOLE DOLLARS) | AMOUNT | | |
|---|---|---|---|---|---|---|---|
| | CY | BY | BY + 1 | | CY | BY | BY + 1 |
| | | | | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL SALARIES AND WAGES [2] | | | | ///// | $ | $ | $ |

| STAFF BENEFITS DETAIL | CY | BY (WHOLE DOLLARS) | BY + 1 |
|---|---|---|---|
| OASDI | $ | $ | $ |
| HEALTH INSURANCE | | | |
| RETIREMENT [3] | | | |
| WORKERS' COMPENSATION | | | |
| INDUSTRIAL DISABILITY LEAVE | | | |
| NON-INDUSTRIAL DISABILITY LEAVE | | | |
| UNEMPLOYMENT INSURANCE | | | |
| OTHER | | | |
| TOTAL [2] | $ | $ | $ |
| | | | |

[1] USE STANDARD ABBREVIATIONS PER THE SALARY AND WAGES SUPPLEMENT. USE FOOTNOTES TO REFLECT ANY EFFECTIVE DATE OR LIMITED TERM IF POSITION IS NOT PROPOSED FOR A FULL YEAR.
NOTE: INFORMATION PROVIDED SHOULD APPEAR IN THE SAME FORMAT AS IT WOULD APPEAR ON THE SCHEDULE 2 (CHANGES IN AUTHORIZED POSITIONS).

[2] TOTALS MUST BE ROUNDED TO THE NEAREST THOUSAND DOLLARS BEFORE POSTING TO PAGE I-2.

[3] LIST TYPE OF RETIREMENT, I.E., MISCELLANEOUS, SAFETY, INDUSTRIAL, ETC.

**SUPPLEMENTAL INFORMATION**
*Please report dollars in thousands.*

| DEPARTMENT | FL# | FISCAL YEAR |
|---|---|---|
| Personnel Administration | 2 | 2007/08 |

**IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW. SEE INSTRUCTIONS ON PAGES I-7 AND I-8.**

| | CURRENT YEAR | BUDGET YEAR | BUDGET YEAR + ONE |
|---|---|---|---|
| **PROPOSED EQUIPMENT** | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | $ | $ | $ |
| **PROPOSED CONTRACTS** | | | |
| Recruitment Consultant | | 1,000 | 1,000 |
| | | | |
| | | | |
| TOTAL | $ | $1,000 | $1,000 |
| **ONE-TIME COSTS (LIST BY ITEM)** | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | $ | $ | $ |
| **FUTURE SAVINGS** | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | $ | $ | $ |
| **FULL-YEAR COST ADJUSTMENTS** | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | $ | $ | $ |
| **FACILITIES/CAPITAL COSTS *** | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | $ | $ | $ |

* Indicate one-time or ongoing.

**Department of Personnel Administration**
**Finance Letter FY 2007/08**
**Recruitment for Health & Mental Health Professionals**

**A.    Nature of Request**

The Department of Personnel Administration is requesting $1 million for FY 2007/08 and $1 million for FY 2008/09 to hire a recruitment contractor for a two-year period, to locate and develop a pool of prospective healthcare professionals.

There is a clear need for additional healthcare professionals. Positions stay vacant, while normal and routine recruitment fails to attract healthcare professionals to careers in state service. The recruitment and retention pressures facing the California Health and Human Services (CHHS) departments and California Department of Veterans Affairs (CDVA) have exponentially increased with the recent decisions that have raised the California Department of Corrections and Rehabilitation (CDCR) healthcare professional salaries by an average of 18 percent. These court decisions have drastically changed the landscape of the more traditional recruitment process.

This proposal would place funding for medical personnel recruitment within the Department of Personnel Administration (DPA), with direction and oversight by an Advisory Council comprised of the State Personnel Board and impacted departments. Without additional resources, many state departments will need to limit patient admissions to maintain state- and federally-mandated ratios, and fall even further behind in mandated workload and compliance with performance measures.

The goal of this proposal is to provide a consistent recruitment pool so that all departments gain access to a larger number of healthcare professionals to meet the needs of the state departments providing a variety of health care services to Californians.

**B.    Background/History**

State departments responsible for providing medical care are in crisis with regard to the availability of qualified medical personnel. While this situation has been critical for some time, it has been further exacerbated by recent court decisions resulting in significant salary increases for medical personnel employed in the CDCR. These increases have created a salary gap between CDCR medical personnel and other state departments' medical personnel to a degree that non-CDCR departments are now losing personnel not only to the private sector but increasingly to CDCR. CDCR has a significant number of openings and has been given the funding to recruit and attract prospective employees. Further, with the oversight of the court appointed receivers and the high publicity, other state agencies which provide personnel support have placed CDCR at the top of the priority list.

The Department of Mental Health (DMH) uses healthcare professionals to staff five state mental hospitals and two psychiatric programs. The Department of Developmental Services (DDS) uses healthcare professionals to staff five state developmental centers and two state-owned community facilities. The Department of Health Care Services (DHCS) uses healthcare professionals in licensing and certification, and Medi-Cal, as well as throughout Prevention Services, Primary Care and Family Health, and health information & strategic planning. CDVA uses healthcare professionals to staff three veteran homes. All facilities and program services require specific healthcare professionals to provide the service. In some cases, departments have been required to lower the statutory requirement to an employee who does not require licensing in order to get someone to perform the service. This places the state, the department and the patient/consumer at added risk, simply because the department is unable to locate qualified candidates to consider for hiring.

**C.    State Level Considerations**

The State of California is now at a crisis situation and immediate action is required. Currently, recruitment and outreach functions are being conducted by individual departments and continues to be an uncoordinated effort statewide. Given the seriousness of the situation, a contract with a healthcare professional recruiting firm would be in the best interest of the state. All efforts and objectives of the recruitment contract will be a collaborative effort on the parts of State Personnel Board (SPB) and DPA. SPB provides recruitment and selection services to all state departments and DPA advocates the interests of the State employer.

**D.    Facility/Capital Outlay Considerations**

There are no facility considerations associated with this proposal.

**E.    Justification**

Following is a summary of the needs expressed by the affected departments and the consequences of inaction:

*Department of Developmental Services (DDS)*

Overview of Severity of the Problem: DDS is experiencing increasing difficulty in hiring: nurses, psychiatric technicians, clinical dietitians, pharmacists, physicians, psychiatrists, psychologists, rehabilitation therapists, clinical social workers, medical records personnel, and radiology and lab classifications. If DDS is unable to fill vacancies, DDS can be subject to loss of Medicaid and Medicare certification and federal funding in the hundreds of millions of dollars. Consumers' health and safety could be seriously compromised, and DDS would be vulnerable to federal Department of Justice (DOJ) actions under the Civil Rights of Institutionalized Persons Act (CRIPA). DDS currently has open DOJ investigations at three facilities. Last year, DDS budgeted $9 million in overtime; however, overtime expenditures exceeded $29 million, primarily in nursing classifications. Overall, DDS experiences a 12 percent vacancy rate, with a 23 percent vacancy rate in nurses. (Attachment 1 provides the detail of the vacancies at DDS as of July 1, 2006.)

Nurses: Licensed nurses now comprise less than 50 percent of the workforce at most facilities, where the desirable level is 85 percent. Currently, DDS is meeting legal requirements for minimum licensed staffing levels by paying significant overtime costs. In the Porterville and Sonoma facilities, which are in close proximity to CDCR and DMH facilities, DDS anticipates being forced to close several acute units and to discontinue some services requiring licensed personnel. Acute patients will have to be referred to local hospitals. The problem is further complicated in Porterville, where the local hospital has only 11 acute beds and frequently refuses to accept state patients.

Pharmacists: If all pharmacists who have applied for transfers to CDCR leave DDS, the end result would be a 56 percent vacancy rate for this classification. All DDS facilities are impacted. Porterville is the most heavily affected, as it also lost its Pharmacy Services Manager. It may become necessary to contract out pharmacy operations at Porterville and several other facilities.

Clinical Dieticians and Psychologists: DDS is experiencing significant problems in recruiting and retaining clinical dieticians and psychologists. DDS cites a 30 percent vacancy rate for clinical dieticians and cannot find clinical dietitians willing to contract. There is a 57 percent vacancy rate for clinical psychologists in the safety class. Vacancies for clinical dieticians and psychologists are most acute at Sonoma and Porterville.

*California Department of Veteran's Affairs (CDVA)*

Nurses: The vacancy rate is 40 percent at Barstow and 30 percent at Yountville. In these facilities, nurses are resigning faster than they can be replaced. At Yountville, the loss of one or two nurses will force the closure of a ward or provide less-than-minimum staff ratios. Department-wide, the vacancy rate is 4 – 67 percent. Currently the department spends over $3.3 million in overtime each year.

Without the ability to hire at a minimum of 25 additional licensed staff, the new dementia facility, scheduled to be completed by July 2007, will not open. Further, 3 new hospitals (West Los Angeles, Lancaster and Ventura) will open in the next two years, with staffing needs for 516 new beds. It is imperative that we have the ability to recruit medical professionals to ensure the Homes can open as scheduled. If CDVA is not successful in recruiting for these three new homes, CDVA will only fill the beds that can be supported by the staff levels met. In the event that CDVA cannot fill all of the required positions or those necessary to open all beds, CDVA must develop waiting lists for the veterans. Because the Los Angeles Area has the highest veteran population in California it is anticipated that there will be no difficulty in filling the beds and there will be waiting lists. (Attachment 2 is a summary of the healthcare vacancies at CDVA.)

*Department of Mental Health (DMH)*

With an inability to fill positions, DMH anticipates system-wide reductions in basic living requirement services, including dietary, pharmacy, and treatment in state hospitals. DMH will turn away "Incompetent to Stand Trial" cases, resulting in over crowding in local jails, which are already over capacity, contempt charges, and potential legal sanctions. In addition, the Joint Commission on Accreditation of Healthcare Organizers (JCAHO) could revoke the current accreditation for the state mental hospitals.

DMH signed a Consent Judgment with the United States Department of Justice (USDOJ) for the state hospitals. By entering into this agreement, DMH and the Administration acknowledged that there were changes needed in the treatment services provided by the state hospitals and determined it was advantageous to move forward with change rather than spend time and money litigating the changes. The Legislature and Administration supported this approach by authorizing several hundred additional positions in FY 2006/07. DMH already had vacancies in these classes, and the additional positions compounded the vacancy issues. Failure to fill these positions will jeopardize federally imposed timeframes for compliance with orders from USDOJ. When the Court Monitor determines that there is not sufficient staff to obtain compliance with the Enhancement Plan, he can recommend, or the USDOJ can determine, that the state is not acting in good faith with the Consent Judgment and take DMH to federal court for litigation that could include the appointment of a federal receiver.

Atascadero State Hospital has a 70 percent psychiatrist vacancy rate. Overall, DMH is currently experiencing a 30 – 70 percent vacancy rate for all healthcare positions. (Attachment 3 is a summary of the healthcare vacancies at DMH as of December 31, 2006.) DMH suffers service level impacts when critical healthcare employees go on vacation or participate in mandatory continuing education sessions to maintain the license requirements. DMH spent over $61 million in overtime last year.

*Departments of Health Care Services (DHCS) and Public Health (DPH)*

On July 1, 2006, the California Department of Health Services (DHS) was split into two separate departments: DHCS and DPH. Both departments utilize medical professionals such as Health Facilities Evaluator Nurses, Nurse Evaluators, Nurse Consultants, Public Health Nurses, Medical Consultants, Public Health Medical Officers, Pharmacists, etc. The departments currently

experience an 8 - 31 percent vacancy rate for Nurse Evaluators and Nurse Consultants. Health Facilities Evaluator Nurses currently experience a 19 percent vacancy rate. (Attachment 4 is a summary of the healthcare vacancies as of January 31, 2007.) DHS spent approximately $650,000 for overtime last year.

Although the above mentioned departments list specific areas of need, CDCR is also experiencing difficulty in recruitment of medical personnel. While the Receiver has been given authority and responsibility of recruiting for CDCR, having a large candidate pool from which all departments with medical professionals can draw is ultimately beneficial to the State as the employer.

Previous Recruitment Efforts

Attempts to conduct specific recruitment efforts have had mixed results. Clearly, the more traditional recruitment of posting vacancies and examinations for a specific period of time (per SPB rules) have merely resulted in current state employees transferring from one department to another. More recently, the SPB has worked with CDCR to develop on-line open examinations to help bring non-state employees into the candidate pool. Open and continuous filing examinations, coupled with the salary increases, have proven to be attractive in drawing non-CDCR health professionals away from current positions toward CDCR.

Contracting Efforts

Contracting out for medical professionals, which is frequently the only option when unable to hire staff, invariably costs considerably more than hiring state staff, and state staff become resentful when working next to a contractor making twice the pay for exactly the same job.

DDS: Sonoma contracts for a clinical dietitian at $90,000 per year, when the state civil service base pay is $37,000 – $46,000 per year. Sierra Vista contracts for a Pharmacist at $140,400 per year, when a state employed Pharmacist I, with Recruitment and Retention Bonus and benefits, at Canyon Springs costs only $101,653. Last year, DDS spent $1.1 million on contract staffing.

DHCS:  Currently contracts for pharmacists at a cost of $1.2 million each year.

DMH:  While DMH is unable to determine the specific amount spent on contracted positions, they have identified a number of critical healthcare classifications for which they routinely use contracted resources.

| Classification | Contracted Hourly Rate |
|---|---|
| Pharmacist | $100 - $150 |
| Pharmacist-in-charge | $96 - $221 |
| Pharmacist Supervisor | $99 - $178 |
| Psychologist | $62 |
| Psychiatrist | $147 - $297 |
| Clinical Social Worker | $51- $60 |
| Dietician | $79 |
| Registered Nurse | $53 - $68 |
| Physical Therapist | $30 - $50 |
| Licensed Vocational Nurse | $37 - $53 |

CDVA: Spent $1.96 million in contract costs for healthcare professionals at the three veterans' homes last year.

Proposed Solutions

In order to address this problem across the departments a move from the current practice of each department separately recruiting for health care professionals to a consolidated effort by these agencies in recruiting medical personnel is needed.  Concentrating our efforts and casting a larger net will yield a greater pool of candidates and benefit the state overall.  This effort will be accomplished by contracting with a firm who deals specifically with the recruitment of healthcare professionals.

The contracted recruiter will be responsible for:

- ✓ developing a working knowledge of all California licensing requirements for healthcare professional classifications;
- ✓ developing a working knowledge of each department's draws and benefits;
- ✓ developing a working knowledge of the target audience and the informational needs of each group;
- ✓ identifying individual contacts at high schools, community colleges, four-year colleges and private institutions to promote health careers with the State of California;
- ✓ receiving and distributing information, making appropriate referrals, etc.;
- ✓ attending healthcare conferences, career fairs, etc.
- ✓ partnering with professional associations (CMA, CAN, BVNPT, et al.);
- ✓ surveying healthcare personnel who have expressed interest in state opportunities but either do not apply or decline job offers, to learn more about their decision;
- ✓ working with departments to advertise and recruit for flexible careers and opportunities;
- ✓ completing quarterly reports with annual assessments regarding barriers and opportunities to recruit healthcare personnel;
- ✓ incorporating lessons learned from reports and assessments to refine focus;
- ✓ creating deliverables (DVDs, brochures, etc.) to promote the benefits of working for the State of California;
- ✓ developing a centralized candidate database to allow tracking and access based on skills, locations of availability, desired employment characteristics, special schedule requests, etc.

In addition, the recruitment plan would:

- ✓ focus on mid-career healthcare professionals;
- ✓ focus on high school juniors and seniors;
- ✓ focus on expanded use of Internet-based testing and onsite examinations to generate immediate lists;
- ✓ focus on out-of-state, out-of-country/international recruitment;
- ✓ focus on 4-year colleges, community colleges and private institutions.

Coordinating the recruitment for medical personnel will allow for pooled resources, with greater outreach gaining maximum exposure to appropriate candidates.  As a complement to these efforts, SPB will work with the departments to develop statewide continuous testing for health care classifications.

Departments will establish orientation programs for successful candidates to understand the roles of the departments and make better, more suitable employment decisions.  These programs will have site visits which will allow the candidate to view the working conditions and talk with personnel to determine which department they would most like to work for.  Orientations will be provided for each department with appropriate vacancies and candidates will be offered jobs and make their worksite choice.  The shared recruitment pool will continue until all positions have been filled.

**F.    Outcomes and Accountability**

July 1, 2007, funding will be placed in DPAs consultant line item to fund a contract with a professional healthcare recruiting firm. The contract would be executed by DPA with the concurrence of the Advisory Council.

The contract would include goals for each year:

- ✓ Year 1: develop outreach and recruitment materials and reduce the overall vacancy rate for healthcare professionals by at least 3 percent.
- ✓ Year 2: reduce vacancy rate by at least 4 percent.

During FY 2008/09, an evaluation will be conducted to determine the success of this centralized recruitment program.

**G.    Analysis of All Feasible Alternatives**

Alternative 1:  Approve this request and augment DPA's General Fund appropriation by $1 million in FY 2007/08 and $1 million in FY 2008/09, to hire a recruiter for medical professional classifications. The costs of the contract are significantly lesser than the costs either currently budgeted or expended for overtime by the departments. Successful recruitments of civil servants in these jobs will begin to reduce the need for overtime and contracting out for services.

Alternative 2:  Do not approve this proposal. This will leave the departments with a difficult task of retaining current personnel and recruiting qualified personnel to fill the vacancies caused by the departure of current medical professionals. As the following identifies, departments will be unable to meet court directives and will be unable to provide required customer service. Some facilities may have to contract out pharmacy operations, dietary services and other entire departments to corporate organizations at very significant costs to the State. Additionally:

- ✓ DDS will be forced to close several acute units, discontinue services requiring licensed personnel, and send consumers to local hospitals. Consumers could suffer severe health consequences from lack of critical services and some could die. Several facilities will be at risk of losing their license, certification, and federal funding. DDS could face action from the federal Department of Justice, similar to what DMH is encountering.

- ✓ DPH will face future scrutiny in their inability to respond timely to critical health facility issues. DPH will be penalized by the federal government approximately $7,500 (Home Health Agencies) to $10,000 (Skilled Nursing Facilities) for each survey not conducted. Licensing and Certification currently has a court order which mandates they clear their complaint backlog and initiate onsite investigation of Long Term Care complaints within ten working days. This Order has resulted in missed surveys since October 2006.

- ✓ DHCS will be in jeopardy of failing to meet mandates regarding the approval of pharmacy treatment authorization request (TARs). In accordance with federal and state statute and a court settlement, pharmaceutical TARs must be reviewed and adjudicated within a 24-hour period from receipt. DHCS' inability to adjudicate TARs within these timeframes could result in provider/advocate litigation, a contempt of court finding, and potential monetary penalties. In addition, in the absence of an approved TAR, a pharmacist could dispense a 72-hour fill, then certify that the drug is an "emergency" and submit a claim without a TAR. This could lead to payment for drugs that a DHCS pharmacist might have otherwise determined to not be "medically necessary".

✓ CDVA is anticipating the potential closure of an entire ward or work with a less-than-minimum staff to patient ratio, and the nearly finished dementia facility will not be able to open.

✓ DMH is anticipating a system-wide reduction in basic living requirement services and treatment in state hospitals, and will begin turning away those deemed "Incompetent to Stand Trial", thereby, contributing to the already overcrowded penal system. In addition, compliance with USDOJ federally imposed timeframes will be in jeopardy of not being met, and USDOJ can determine that the State is not acting in good faith and take DMH to federal court for litigation.

**H.    Timetable**

Effective July 1, 2007.

**I.    Recommendation**

Approve Alternative 1. Allocate $1 million each year for two years to hire a recruiter for medical professional classifications. During FY 2008/09, an evaluation will be conducted to determine the success of this centralized recruitment program.

as of July 1, 2006                                                                  Attachment 1

| DDS Vacancies | | | | |
|---|---|---|---|---|
| Classification | Class Code | Filled | Vacant | % Vacant |
| Assistant Coordinator of Nursing Services | 8132 | 25.0 | 2.0 | 7.41% |
| Clinical Dietician | 2167 | 19.0 | 3.0 | 13.64% |
| Clinical Dietician, Safety | 2172 | 2.0 | 0.0 | 0.00% |
| Coordinator of Nursing Services | 8133 | 6.0 | 0.0 | 0.00% |
| Licensed Vocational Nurse | 8286 | 153.5 | 21.0 | 12.03% |
| Licensed Vocational Nurse (Safety) | 8274 | 4.0 | 0.0 | 0.00% |
| Nurse Consultant I | 8197 | 1.0 | 0.0 | 0.00% |
| Nurse Consultant II | 8195 | 1.0 | 0.0 | 0.00% |
| Nurse Consultant III (Supervisor) | 8179 | 0.0 | 1.0 | 100.00% |
| Nurse Instructor | 8154 | 9.0 | 3.0 | 25.00% |
| Nurse Practitioner | 8227 | 7.0 | 4.0 | 36.36% |
| Nurse Practitioner (Safety) | 9700 | 4.0 | 0.0 | 0.00% |
| Health Services Specialist | 8160 | 96.0 | 6.0 | 5.88% |
| Health Services Specialist (Safety) | 9699 | 9.0 | 0.0 | 0.00% |
| Nursing Coordinator | 8156 | 20.0 | 2.0 | 9.09% |
| Nursing Coordinator (Safety) | 8101 | 2.0 | 0.0 | 0.00% |
| Pharmacist I | 7659 | 29.0 | 2.0 | 6.45% |
| Pharmacist II | 7981 | 7.0 | 1.0 | 12.50% |
| Pharmacy Services Manager | 7996 | 5.0 | 3.0 | 37.50% |
| Psychiatric Nursing Education Director | 8155 | 2.0 | 0.0 | 0.00% |
| Public Health Nurse I | 8213 | 1.0 | 1.0 | 50.00% |
| Public Health Nurse I | 8297 | 3.0 | 0.0 | 0.00% |
| Public Health Nurse II | 8210 | 3.0 | 0.0 | 0.00% |
| Registered Nurse | 8165 | 357.5 | 62.3 | 14.84% |
| Registered Nurse (Safety) | 8094 | 7.0 | 1.0 | 12.50% |
| Supervising Registered Nurse | 8161 | 21.0 | 0.0 | 0.00% |
| Psychiatric Technician | 8232 | 1,262.5 | 75.2 | 5.62% |
| Psychiatric Technician (Safety) | 8253 | 156.0 | 12.0 | 7.14% |
| Psychologist | 9833 | 3.0 | 0.0 | 0.00% |
| Psychologist - Clinical (DMH/DDS) | 9878 | 45.0 | 1.6 | 3.43% |
| Psychologist Health Facility - Clinical (Safety) | 9873 | 7.0 | 4.0 | 36.36% |
| Senior Psychiatric Technician | 8231 | 321.0 | 57.0 | 15.08% |
| Senior Psychiatric Technician (Safety) | 8252 | 33.0 | 0.0 | 0.00% |
| Senior Psychologist Health Facility (Specialist) | 9839 | 6.0 | 1.0 | 14.29% |
| Senior Psychologist Health Facility (Supervisor) | 9831 | 1.0 | 0.0 | 0.00% |
| Totals: | | 2,628.5 | 263.1 | 9.10% |

as of January 31, 2007                                                                                          Attachment 2

| CDVA VETERANS HOME VACANCIES | | | | | |
|---|---|---|---|---|---|
| Classification | Class Code | Total | Filled | Vacant | % Vacant |
| A DIR OF DIETETICS | 2155 | 3 | 3 | 0 | 0% |
| A TR CO/VET H+M CT | 9933 | 1 | 1 | 0 | 0% |
| AUDIOLOGIST I | 8273 | 1 | 1 | 0 | 0% |
| CERTIFIED NURS A | 8185 | 373.85 | 297.45 | 76.4 | 20% |
| CH MED OF VET HMMC | 7536 | 3 | 1.75 | 1.25 | 42% |
| CH OF MED VET/H&MC | 7529 | 1 | 1 | 0 | 0% |
| CH RESTOR CR SVS | 8380 | 2 | 2 | 0 | 0% |
| CH/ALCOHOL TR SVS | 9932 | 1 | 1 | 0 | 0% |
| CH/DOMICILIARY SVS | 8214 | 3 | 3 | 0 | 0% |
| CHIEF DENTIST | 7830 | 1 | 1 | 0 | 0% |
| CHIEF PHY & SURG | 7561 | 1 | 0 | 1 | 100% |
| CLIN SOC WORK | 9877 | 16.5 | 12.5 | 4 | 24% |
| CLINCL LAB TECHGST | 7928 | 3 | 3 | 0 | 0% |
| CLINICAL DIETITIAN | 2167 | 8 | 7 | 1 | 13% |
| COORD NUR SVS | 8133 | 1 | 0 | 1 | 100% |
| DENTAL ASSISTANT | 7911 | 2.5 | 2.5 | 0 | 0% |
| DENTAL HYGIENIST | 8128 | 1 | 0 | 1 | 100% |
| DENTAL LAB TECH | 7908 | 2 | 2 | 0 | 0% |
| DENTIST | 7831 | 1.5 | 1.5 | 0 | 0% |
| DIR OF DIETETICS | 2146 | 3 | 3 | 0 | 0% |
| INFECTN CONTROL SP | 8201 | 2 | 2 | 0 | 0% |
| LICENSED VOC NURSE | 8249 | 77.5 | 61.8 | 15.7 | 20% |
| NRSE EVAL II/H S | 8144 | 1 | 1 | 0 | 0% |
| NURS CONSLT PRG RV | 8327 | 1 | 1 | 0 | 0% |
| NURSE INST | 8154 | 5 | 5 | 0 | 0% |
| NURSE PRACTITIONER | 8212 | 2.2 | 2 | 0.2 | 9% |
| OCCUPTNL THERPS | 8288 | 4.3 | 4 | 0.3 | 7% |
| PATHOLOGIST | 7649 | 1 | 1 | 0 | 0% |
| PATHOLOGY ASST | 7875 | 2 | 2 | 0 | 0% |
| PHAR SVS MGR | 7996 | 1 | 1 | 0 | 0% |
| PHARMACIST I | 7982 | 6.5 | 3.75 | 2.75 | 42% |
| PHARMACIST II | 7981 | 3 | 3 | 0 | 0% |
| PHARMACY TECH | 7979 | 8.75 | 8.55 | 0.2 | 2% |
| PHYCHIATRIC SOC WK | 9870 | 1 | 1 | 0 | 0% |
| PHY T&EV SP | 4963 | 2.25 | 1.6 | 0.65 | 29% |
| PHY THERPS I | 8280 | 3 | 1 | 2 | 67% |
| PHY THERPS II | 8277 | 1 | 1 | 0 | 0% |
| PHYSICAL THERAPY A | 8272 | 0 | 0 | 0 | 0% |
| PHYSICIAN & SURGEON | 7551 | 15.5 | 14.3 | 1.2 | 8% |
| PODIATRIST | 7977 | 1 | 1 | 0 | 0% |
| RAD TECH | 7989 | 1.5 | 1.5 | 0 | 0% |
| REGISTERED NURSE | 8185 | 135.9 | 90.9 | 45 | 33% |
| REHAB TH ST F/ART | 8414 | 1.55 | 1.55 | 0 | 0% |
| REHAB TH ST F/MUSI | 8311 | 4.5 | 4.5 | 0 | 0% |
| REHAB TH ST F/REC | 8312 | 5.05 | 4.2 | 0.85 | 17% |
| RESP CR PRACTNER | 8276 | 5 | 2.8 | 2.2 | 44% |
| RESP CR SUP | 8183 | 1 | 1 | 0 | 0% |
| SNF ADMINISTRATOR | 9388 | 1 | 1 | 0 | 0% |
| SPEECH PATHLGT II | 8278 | 1 | 1 | 0 | 0% |
| SPEECH PATHLOGST I | 8279 | 1.75 | 1 | 0.75 | 43% |
| SR CL LAB TECH | 7925 | 1 | 1 | 0 | 0% |
| SR OCCU THERP | 8287 | 1 | 1 | 0 | 0% |
| SR RAD TECH/SP | 7987 | 1 | 1 | 0 | 0% |
| STAFF PSYCH CLN | 9847 | 4 | 2 | 2 | 50% |
| STF PSYCHIATRST | 7618 | 2 | 1 | 1 | 50% |
| SUP CL LAB TECH | 7922 | 1 | 1 | 0 | 0% |
| SUP PSY S WK I | 9867 | 4 | 3 | 1 | 25% |
| SUP REGISTERED NUR | 8161 | 32 | 27 | 5 | 16% |
| SUP REHAB THERPST | 8316 | 2 | 2 | 0 | 0% |
| SUPERVSNG NURSE II | 8129 | 6 | 6 | 0 | 0% |
| SUPERVSNG NURSE III | 8126 | 1 | 1 | 0 | 0% |
| SURGICAL NURSE I | 8135 | 3 | 1 | 2 | 67% |
| TOTALS | | 784.6 | 616.15 | 168.45 | 21% |

es of December 31, 2006

Attachment 3

## DMH Vacancies

| Classification | Total | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| Assistant Coordinator of Nursing Services | 21.0 | 16.0 | 5.0 | 23.8% |
| Assistant Director of Dietetics | 14.0 | 13.0 | 1.0 | 7.1% |
| Audiologist I | 1.0 | 1.0 | - | 0.0% |
| Chief Dentist | 4.0 | 4.0 | - | 0.0% |
| Chief Physician & Surgeon | 4.0 | 4.0 | - | 0.0% |
| Chief, Central Program Services | 4.0 | 3.0 | 1.0 | 25.0% |
| Clinical Dietician (CRIPA Position) | 45.7 | 28.7 | 17.0 | 37.2% |
| Clinical Laboratory Technologist | 13.5 | 11.0 | 2.5 | 18.5% |
| Coordinator of Nursing Services | 5.0 | 5.0 | - | 0.0% |
| Coordinator of Volunteer Services | 4.0 | 4.0 | - | 0.0% |
| Dental Assistant | 14.0 | 12.0 | 2.0 | 14.3% |
| Dentist | 8.0 | 7.0 | 1.0 | 12.5% |
| Dietetic Technician | 8.5 | 6.9 | 1.6 | 18.8% |
| E.E.G. Techician | 4.0 | 2.0 | 2.0 | 50.0% |
| Hospital Worker | 12.0 | 11.0 | 1.0 | 8.3% |
| Health Record Technician (CRIPA Position) | 74.7 | 50.4 | 24.3 | 32.5% |
| Health Services Specialist | 128.0 | 120.0 | 8.0 | 6.3% |
| Institution Artist Facilitator | 3.0 | 3.0 | - | 0.0% |
| Licensed Vocational Nurse | 195.3 | 183.9 | 11.4 | 5.8% |
| Medical Technical Assistant | 316.0 | 188.0 | 128.0 | 40.5% |
| Nurse Instructor | 29.0 | 23.0 | 6.0 | 20.7% |
| Nurse Practitioner | 29.0 | 27.0 | 2.0 | 6.9% |
| Nursing Coordinator | 36.0 | 32.0 | 4.0 | 11.1% |
| Office Technician (CRIPA Position) | 232.3 | 185.5 | 46.9 | 20.2% |
| Pathologist | 1.0 | - | 1.0 | 100.0% |
| Pharmacist I | 74.1 | 42.3 | 31.8 | 42.9% |
| Pharmacist II | 11.0 | 7.0 | 4.0 | 36.4% |
| Pharmacy Services Manager | 5.0 | 5.0 | - | 0.0% |
| Pharmacy Technician | 76.6 | 65.4 | 11.2 | 14.6% |
| Physician & Surgeon | 79.7 | 71.5 | 8.2 | 10.3% |
| Podiatrist | 4.0 | 4.0 | - | 0.0% |
| Pre-licensed Pharmacist | - | - | - | #DIV/0! |
| Pre-licensed Psychiatric Technician | 119.0 | 91.0 | 28.0 | 23.5% |
| Program Assistant | 32.0 | 26.0 | 5.0 | 15.6% |
| Program Consultant (RT, PSW, Psych) | 14.0 | 13.0 | 1.0 | 7.1% |
| Program Director | 34.0 | 27.0 | 7.0 | 20.6% |
| Psychiatric Social Worker (CRIPA Position) | 361.2 | 294.0 | 67.3 | 18.6% |
| Psychiatric Nursing Education Director | 5.0 | 4.0 | 1.0 | 20.0% |
| Psychiatric Technician (CRIPA Position) | 1,924.2 | 1,688.1 | 236.1 | 12.3% |
| Psychiatric Technician Trainee | 86.0 | 86.0 | - | 0.0% |
| Psychiatric Technician Assistant | 462.7 | 455.5 | 7.2 | 1.6% |
| Psychiatric Technician Instructor | 10.0 | 9.0 | 1.0 | 10.0% |
| Psychologist-HF, (Safety) | 231.0 | 212.9 | 18.1 | 7.8% |
| Public Health Nurse II/I | 13.0 | 8.0 | 5.0 | 38.5% |
| Radiologic Technologist | 6.0 | 5.0 | 1.0 | 16.7% |
| Registered Nurse (CRIPA Position) | 1,071.9 | 928.0 | 143.9 | 13.4% |
| Reg. Nurse Pre Registered | 1.0 | 1.0 | - | 0.0% |
| Rehabilitation Therapist (CRIPA Position) | 340.5 | 239.2 | 101.3 | 29.8% |
| Special Investigator (CRIPA Position) | 7.0 | 4.0 | 3.0 | 42.9% |
| Speech Pathologist I | 1.0 | 1.0 | - | 0.0% |
| Sr. Psychiatrist (CRIPA Position) | 23.9 | 11.0 | 12.9 | 54.0% |
| Sr. Psychologist (CRIPA Position) | 58.5 | 17.0 | 41.5 | 70.9% |
| Sr. Psych Tech(Safety) | 289.0 | 280.0 | 9.0 | 3.1% |
| Sr. Radiologic Technologist (Specialist) | 4.0 | 4.0 | - | 0.0% |
| Sr. Voc. Rehab. Counselor/Voc. Rehab. Counselor | 7.0 | 6.0 | 1.0 | 14.3% |
| Staff Psychiatrist | 315.0 | 202.9 | 112.2 | 35.6% |
| Supervising Registered Nurse | 59.0 | 49.0 | 10.0 | 16.9% |
| Teacher/Vocational Instructor (CRIPA Position) | 68.7 | 38.0 | 30.7 | 44.7% |
| Teaching Assistant | 18.0 | 14.0 | 4.0 | 22.2% |
| Unit Supervisor | 117.0 | 105.0 | 12.0 | 10.3% |
| Vocational Services Instructor | 10.0 | 8.0 | 2.0 | 20.0% |
| **Totals** | **7,147.0** | **5,964.2** | **1,182.1** | **16.5%** |

as of January 31, 2007                                                    Attachment 4

| DHCS Vacancies | | | |
|---|---|---|---|
| Classification | Filled | Vacant | % Vacant |
| Health Facilities Evaluator Nurse | 441 | 83 | 19% |
| Medical Consultant I | 48 | 2 | 4% |
| Medical Consultant II | 12 | 2 | 17% |
| Nurse Consultant I | 2 | 0 | 0% |
| Nurse Consultant II | 17.5 | 5.5 | 31% |
| Nurse Consultant III (Specialist) | 53.5 | 7.5 | 14% |
| Nurse Consultant III (Supervisor) | 9 | 1 | 11% |
| Nurse Evaluator II | 386 | 45 | 12% |
| Nurse Evaluator III | 53 | 4 | 8% |
| Pharmaceutical Consultant I | 51 | 5 | 10% |
| Pharmaceutical Consultant II Spec | 37 | 4 | 11% |
| Pharmaceutical Consultant II Sup | 12 | 1 | 8% |
| Pharmaceutical Program Consultant | 7 | 1 | 14% |
| Public Health Medical Administrator I | 13 | 2 | 15% |
| Public Health Medical Administrator II, CEA | 2 | 0 | 0% |
| Public Health Medical Officer II | 8 | 0 | 0% |
| Public Health Medical Officer III | 25 | 3 | 12% |
| Public Health Medical Officer III Epi | 6 | 0 | 0% |
| Public Health Medical Officer III MCH | 1 | 0 | 0% |
| Public Health Nurse I | 9 | 2 | 22% |
| Totals: | 1193 | 168 | 14% |

# EXHIBIT C



CALIFORNIA DEPARTMENT OF
# Mental Health

1600 9th Street, Sacramento, CA 95814
(916) 654-2413

April 5, 2007

J. Michael Keating, Jr.                          via:    Lisa Tillman
Office of Special Master                                 Deputy Attorney General
2351 Sussex Lane                                         1300 I Street, Suite 125
Fernandina Beach, FL 32034                               P.O. Box 944255
                                                         Sacramento, CA 94244-2550

RE:    **MONTHLY STAFFING AND STAFFING VACANCIES REPORT FOR ALL DMH STATE
       HOSPITALS, VACAVILLE PSYCHIATRIC PROGRAM AND SALINAS VALLEY
       PSYCHIATRIC PROGRAM**

In accordance with the February 6, 2007 Court Order on the issue of Pay Parity for the California
Department of Mental Health (DMH) Clinicians, DMH is providing the following information on
Staffing and Staffing Vacancies in all DMH Hospitals, the Vacaville Psychiatric Program at the
California Medical Facility and the Salinas Valley Psychiatric Program at the Salinas Valley State
Prison.

The enclosed report contains the following data for 20 Coleman Related Clinical Positions: Total
amount of budgeted positions, positions filled, currently vacant and the overall percentage of
vacancies for each facility as of March 30, 2007. In addition, this report contains the DMH Coleman
Totals that incorporates all of the data collected from the above-mentioned facilities.

If you need clarification on any aspect of this report, please contact Dr. Char Schultz, Long Term
Care Services Division at (916) 654-2413.

Sincerely,

CYNTHIA A. RADAVSKY
Deputy Director

Enclosures

## DMH STAFFING AND STAFFING VACANCIES REPORT
### COLEMAN TOTALS AS OF MARCH 30, 2007

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 32 | 25 | 7 | 22% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 1 | 0 | 1 | 100% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 42.9 | 8 | 34.9 | 81% |
| Staff Psychiatrist (Safety) | 296.8 | 166 | 130.8 | 44% |
| Senior Psychiatrist (Specialist) | 23 | 2 | 21 | 91% |
| Psychiatric Technician (Safety) | 2233.1 | 1903.2 | 329.9 | 15% |
| Senior Psychiatric Technician (Safety) | 323 | 298 | 25 | 8% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 383.1 | 280.1 | 103.1 | 27% |
| Psychologist (Health Facility-Clinical-Safety) | 255.1 | 210.3 | 44.75 | 18% |
| Senior Psychologist (Health Facility) (Specialist) | 30.5 | 9 | 21.5 | 70% |
| Senior Psychologist, Correctional Facility (Supervisor) | 53.3 | 10 | 43.3 | 81% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 38 | 25.2 | 12.8 | 34% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 12.3 | 9.3 | 3 | 24% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 73.8 | 48.35 | 25.5 | 34% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 9 | 8 | 1 | 11% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 225.2 | 137.2 | 88 | 39% |
| Medical Director, State Hospital/Developmental Center, CEA | 6 | 3 | 3 | 5% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 62 | 52 | 10 | 16% |

ATASCADERO STATE HOSPITAL (ASH)

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 2 | 1 | 1 | 50% |
| Staff Psychiatrist (Safety) | 76 | 18.5 | 57.5 | 76% |
| Senior Psychiatrist (Specialist) | 3 | 2 | 1 | 33% |
| Psychiatric Technician (Safety) | 654.9 | 504.7 | 150.2 | 23% |
| Senior Psychiatric Technician (Safety) | 99 | 83 | 16 | 16% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 86.3 | 49 | 37.3 | 43% |
| Psychologist (Health Facility-Clinical-Safety) | 47.3 | 31.3 | 16 | 34% |
| Senior Psychologist (Health Facility) (Specialist) | 22 | 8 | 14 | 64% |
| Senior Psychologist, Correctional Facility (Supervisor) | 6 | 3 | 3 | 50% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 1 | 1 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 2 | 2 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 14 | 10 | 4 | 29% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 1 | 0 | 1 | 100% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 62.5 | 22.5 | 40 | 64% |
| Medical Director, State Hospital/Developmental Center, CEA | 1 | 0 | 1 | 100% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 0 | 0 | 0 | 0% |

## COALINGA STATE HOSPITAL (CSH)

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0.0 | 0.0 | 0.0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 0.0 | 0.0 | 0.0 | 0% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 0.0 | 0.0 | 0.0 | 0% |
| Staff Psychiatrist (Safety) | 24.10 | 1.50 | 22.60 | 94% |
| Senior Psychiatrist (Specialist) | 16.0 | 0.0 | 16.0 | 100% |
| Psychiatric Technician (Safety) | 219.50 | 124.0 | 95.50 | 44% |
| Senior Psychiatric Technician (Safety) | 31.0 | 29.0 | 2.0 | 6% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 26.10 | 21.0 | 5.10 | 20% |
| Psychologist (Health Facility-Clinical-Safety) | 28.80 | 23.0 | 5.80 | 20% |
| Senior Psychologist (Health Facility) (Specialist) | 6.50 | 1.0 | 5.50 | 85% |
| Senior Psychologist, Correctional Facility (Supervisor) | 5.0 | 5.0 | 0.0 | 0% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 3.0 | 2.0 | 1.0 | 33% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 0.0 | 0.0 | 0.0 | 0% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 1.0 | 1.0 | 0.0 | 0% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 0.0 | 0.0 | 0.0 | 0% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 17.0 | 6.0 | 11.0 | 65% |
| Medical Director, State Hospital/Developmental Center, CEA | 1.0 | 0.0 | 1.0 | 100% |
| Medical Director, State Hospital/Developmental Center | 0.0 | 0.0 | 0.0 | 0% |
| Unit Supervisor | 7 | 4 | 3 | 43% |

## METROPOLITAN STATE HOSPITAL (MSH)

| Classification   as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 9.5 | 6 | 3.5 | 37% |
| Staff Psychiatrist (Safety) | 49 | 39.25 | 9.75 | 20% |
| Senior Psychiatrist (Specialist) | 0 | 0 | 0 | 0% |
| Psychiatric Technician (Safety) | 364.9 | 344.8 | 20.1 | 6% |
| Senior Psychiatric Technician (Safety) | 52 | 45 | 7 | 13% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 50.5 | 37.3 | 13.2 | 26% |
| Psychologist (Health Facility-Clinical-Safety) | 40.3 | 34 | 6.3 | 16% |
| Senior Psychologist (Health Facility) (Specialist) | 2 | 0 | 2 | 100% |
| Senior Psychologist, Correctional Facility (Supervisor) | 8 | 1 | 7 | 88% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 7 | 5 | 2 | 29% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 4.5 | 2.5 | 2 | 44% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 11.3 | 6.1 | 5.2 | 46% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Recreation–Safety) | 34.5 | 28.5 | 6 | 17% |
| Medical Director, State Hospital/Developmental Center, CEA | 1 | 0 | 1 | 100% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 0 | 0 | 0 | 0% |

N.A.P.A. S.T.A.T.E. H.O.S.P.I.T.A.L. (N.S.H.)

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 6 | 1 | 5 | 83% |
| Staff Psychiatrist (Safety) | 64.5 | 40 | 24.5 | 38% |
| Senior Psychiatrist (Specialist) | 4 | 0 | 4 | 100% |
| Psychiatric Technician (Safety) | 256.8 | 251.2 | 5.6 | 2% |
| Senior Psychiatric Technician (Safety) | 56 | 56 | 0 | 0% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 72.1 | 59.5 | 12.6 | 17% |
| Psychologist (Health Facility-Clinical-Safety) | 59.4 | 54.2 | 5.2 | 9% |
| Senior Psychologist (Health Facility) (Specialist) | 0 | 0 | 0 | 0% |
| Senior Psychologist, Correctional Facility (Supervisor) | 6 | 0 | 6 | 100% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 16 | 14.2 | 1.8 | 11% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 2.8 | 2.8 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 16.2 | 12 | 4.2 | 26% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 5 | 5 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 29.4 | 25.3 | 4.1 | 14% |
| Medical Director, State Hospital/Developmental Center, CEA | 1 | 1 | 0 | 0% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 29 | 24 | 5 | 17% |

PATTON STATE HOSPITAL (PSH)

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 25.4 | 0 | 25.4 | 100% |
| Staff Psychiatrist (Safety) | 82.2 | 65.75 | 16.45 | 20% |
| Senior Psychiatrist (Specialist) | 0 | 0 | 0 | 0% |
| Psychiatric Technician (Safety) | 737 | 678.5 | 58.5 | 8% |
| Senior Psychiatric Technician (Safety) | 85 | 85 | 0 | 0% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 110.1 | 90.25 | 19.85 | 18% |
| Psychologist (Health Facility-Clinical-Safety) | 57.25 | 52.8 | 4.45 | 8% |
| Senior Psychologist (Health Facility) (Specialist) | 0 | 0 | 0 | 0% |
| Senior Psychologist, Correctional Facility (Supervisor) | 27.3 | 0 | 27.3 | 100% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 10 | 2 | 8 | 80% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 3 | 2 | 1 | 33% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 24.3 | 14.25 | 10.05 | 41% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 2 | 2 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 57.8 | 39.9 | 17.9 | 31% |
| Medical Director, State Hospital/Developmental Center, CEA | 1 | 1 | 0 | 0% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 26 | 24 | 2 | 8% |

## VACAVILLE PSYCHIATRIC PROGRAM (VPP)

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 26 | 21 | 5 | 19% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 0 | 0 | 0 | 0% |
| Staff Psychiatrist (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Specialist) | 0 | 0 | 0 | 0% |
| Psychiatric Technician (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatric Technician (Safety) | 0 | 0 | 0 | 0% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 25 | 13 | 12 | 48% |
| Psychologist (Health Facility-Clinical-Safety) | 16 | 10 | 6 | 38% |
| Senior Psychologist (Health Facility) (Specialist) | 0 | 0 | 0 | 0% |
| Senior Psychologist, Correctional Facility (Supervisor) | 1 | 1 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 1 | 1 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 7 | 5 | 2 | 29% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 1 | 1 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 13 | 5 | 8 | 62% |
| Medical Director, State Hospital/Developmental Center, CEA | 1 | 1 | 0 | 0% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 0 | 0 | 0 | 0% |

## SALINAS VALLEY PSYCHIATRIC PROGRAM (SVPP)

| Classification as of March 30, 2007 | Budgeted | Filled | Vacant | % Vacant |
|---|---|---|---|---|
| **COLEMAN RELATED POSITIONS** | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 6 | 4 | 2 | 33% |
| Senior Psychiatrist (Specialist), Correctional and Rehab Svs (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatrist (Supervisor), Correctional and Rehab Svs (Safety) | 1 | 0 | 1 | 100% |
| Senior Psychiatrist, Correctional Facility (Supervisor) | 0 | 0 | 0 | 0% |
| Staff Psychiatrist (Safety) | 1 | 1 | 0 | 0% |
| Senior Psychiatrist (Specialist) | 0 | 0 | 0 | 0% |
| Psychiatric Technician (Safety) | 0 | 0 | 0 | 0% |
| Senior Psychiatric Technician (Safety) | 0 | 0 | 0 | 0% |
| Clinical Social Worker (Health/Correctional Facility) – Safety | 13 | 10 | 3 | 23% |
| Psychologist (Health Facility-Clinical-Safety) | 6 | 5 | 1 | 17% |
| Senior Psychologist (Health Facility) (Specialist) | 0 | 0 | 0 | 0% |
| Senior Psychologist, Correctional Facility (Supervisor) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Dance-Safety) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 0 | 0 | 0 | 0% |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 11 | 10 | 1 | 9% |
| Medical Director, State Hospital/Developmental Center, CEA | 0 | 0 | 0 | 0% |
| Medical Director, State Hospital/Developmental Center | 0 | 0 | 0 | 0% |
| Unit Supervisor | 0 | 0 | 0 | 0% |

# EXHIBIT D

>>> Dean Percy 3/22/07 11:08:13 AM >>>
I am pleased to announce salary increases for a number of classifications at NSH effective
4/1/07.  The classification identified reflect those in the Coleman decision for which
salary increases were rendered in CDCR.  The increases for DMH employees were a result of
a system wide issue that needed the immediate and focused attention to address these
classifications.

I have attached a spreadsheet showing current Max salary, new Max salary of the affected
classifications.  Please note that there is still work to be done with DPA to implement
the new Coleman R & Rs.  As information becomes available I will immediately share this
with staff.
Please do not contact Personnel, as this is all the information we have at this time.

The Management Team recognizes the value and contributions of all discipline within DMH
and thank you for your contributions and dedication.

DMH Coleman Salary Parity
⅔ less for Non-Psychiatrist Classifications and 5% less for Psychiatrist Classificatio
Effective 4/1/07

| ClassTitle | Current Salary Max + Differentials | New Adjusted Max + Differentials |
|---|---|---|
| Rehab Therp (Rec) (Saf) | $3,925 | $5,219 |
| Rehab Therp (Art-Saf) | $4,112 | $5,219 |
| Rehab Therp (Dance-Saf) | $4,112 | $5,219 |
| Rehab Therp (Music-Saf) | $3,925 | $5,219 |
| Rehab Therp (Occ-Saf) | $4,304 | $5,219 |
| Clin Soc Wkr (H/CF)-Saf | $5,084 | $5,928 |
| Sup Psy Soc Wkr I | $5,318 | $6,343 |
| Psy Tech (Safety) | $4,190 | $4,267 |
| Sr Psy Tech (Safety) | $4,717 | $4,843 |
| Unit Sup (Safety) | $5,666 | $5,923 |
| Psychologist HF Clin | $6,517 | $7,319 |
| Sr Psychologist CF (Sup) | $7,397 | $8,857 |
| Sr Psychologist HF (Sp) | $7,046 | $8,636 |
| Chf Psychologist, CF | $8,161 | $9,669 |
| Sr Psychiatrist (Spec) | $14,437 | $21,641 |
| Sr Psychiatrist (Sup) | $15,162 | $22,182 |
| Sr Psychiatrist CF (Sup) | $12,737 | $22,182 |
| Staff Psychiatrist (Saf) | $14,540 | $20,610 |
| Med Dir, CEA | $15,617 | $23,690 |
| | | |
| | | |
| | | |

# EXHIBIT E

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date  :    February 7, 2007

To    :    SEE DISTRIBUTION LIST

Subject:    **MENTAL HEALTH SALARY INCREASES**

This memorandum serves to provide advance notice of upcoming salary increases for selected classifications used within the mental health program. On December 15, 2006, the federal court in the *Coleman v. Schwarzenegger* lawsuit ordered the implementation of the salary ranges for the selected mental health classifications as indicated in the attached spreadsheet.

These court ordered salary increases will apply to California Department of Corrections and Rehabilitation employees in the Division of Correctional Health Care Services, Division of Juvenile Justice, and Adult Institutions regardless of institution location. These salaries are inclusive of existing recruitment and retention differentials, both statewide and institution specific, exceptions are footnoted.

It is the Department's intent to ensure that employees in the selected classifications working within the Division of Adult Parole Operations also receive these salary increases. Please ensure that each impacted staff member receives a copy of this memorandum.

I know there are many questions regarding how these salaries impact each individual, and I ask that you be patient as the Department undertakes the implementation process. A follow-up memorandum will be distributed as soon as details are available.

I appreciate your ongoing professional commitment and your patience.

JAMES E. TILTON
Secretary
California Department of Corrections and Rehabilitation

Attachment

* CDC 1617 (3/89)

SEE DISTRIBUTION LIST
Page 2


DISTRIBUTION LIST:


K. W. Prunty, Undersecretary, CDCR
Marisela Montes, Chief Deputy Secretary, Adult Programs
David Runnels, Chief Deputy Secretary, Adult Operations
Bernard Warner, Chief Deputy Secretary, Juvenile Justice
Kathleen Keeshen, Chief Deputy General Counsel
Peter Farber –Szekrenyi, DR. P.H., Director, Division of Correctional Health Care
Services DCHCS
Scott Kernan, Director (A), Division of Adult Institutions (DAI)
Thomas Hoffman, Director,  DAPO
Jay Aguas, Deputy Director, Juvenile Facilities
Sandra Youngen, Director, Juvenile Facilities
Brigid Hanson, Deputy Director, DCHCS
Yulanda Mynhier, Deputy Director (A), DCHCS
Health Care Administrative Operation, DCHCS
Nancy E. Bither, Deputy Director, Human Resources
Doug McKeever, Director (A), Mental Health Program, DCHCS
Dwight Winslow, Statewide Medical Director, DCHCS
Executive Staff
Associate Directors, DAI
Regional Adminaistrators, DCHCS
Regional Parole Administrators (Juvenile and Adult)
Wardens
Superintendents
Chief Medical Officers
Health Care Managers (Juvenile and Adult)
Chiefs of Mental Health
Mental Health Clinical Staff, Juvenile Justice
Mental Health Clinical Staff, DAPO
Andrew Swanson, M.D., DCHCS
Shama Chaiken, Ph.D., DCHCS
Margaret McAloon, Ph.D., DCHCS
Don Salz, DCHCS
Helen Steenman, Ph.D, DCHCS
Deborah Lonergan, Ph.D., DCHCS
Regional Mental Health Directors, DCHCS
Regional Medical Directors, DCHCS
Michael Stone, Office of Legal Affairs (OLA)
Katie Riley, OLA

Court Ordered Mental Health  Salary Ranges

Attachment A

| Classification - Code | Ranges | Monthly Salary Range[1] | | Comments |
|---|---|---|---|---|
| | | Minimum | Maximum | |
| Chief Psychiatrist Correctional and Rehabilitative Services (C&R)/Safety - 9774 | A | $20,672 | $24,267 | |
| | B | $21,068 | $24,874 | |
| Sr. Psychiatrist Supervisor (Sup) C&R/Safety - 9761 | A | $19,713 | $22,745 | |
| | B | $20,136 | $23,261 | |
| Sr. Psychiatrist Specialist (Spec) C&R/Safety - 9759 | A | $18,607 | $22,083 | |
| | B | $18,079 | $22,723 | |
| Staff Psychiatrist (C&R)/Safety - 9758 | A | $18,426 | $21,031 | |
| | B | $18,911 | $21,641 | |
| Chief Psychiatrist, Correctional Facility (CF) - 7612 | B | $10,558 | $11,934 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class.  However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing R&Rs |
| | C | $11,071 | $12,101 | |
| Senior Psychiatrist, CF (Sup) - 9271 | A | $9,077 | $11,572 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class.  However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing R&Rs |
| | C | $9,749 | $11,848 | |
| Senior Psychiatrist, CF (Spec) - 9270 | A | $9,521 | $11,572 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class.  However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing R&Rs |
| | C | $9,749 | $11,848 | |
| Staff Psychiatrist, CF - 9272 | A | $8,826 | $10,729 | Footnote 24 classification - since hires can no longer be made in this class, no salary increase is proposed as there is no need to recruit and retain staff in this class.  However, staff will receive negotiated equity and cost-of-living increases as scheduled. Incumbents will retain existing R&Rs |
| | B | $9,253 | $11,246 | |
| | C | $9,521 | $11,572 | |
| Chief Psychologist, CF - 9859 | | $11,016 | $11,410 | |
| Sr. Psychologist, CF (Sup) - 9288 | | $8,948 | $9,300 | |
| Sr. Psychologist (Spec) - 9287 | | $9,139 | $9,068 | |
| Psychologist-Clinical, CF - 9283 | A | $6,882 | $7,125 | Range A is proposed for non-licensed clinicians. This range will need to be established. |
| | B | $8,124 | $8,636 | |
| Supervising Psychiatric Social Worker II, CF - 9292 | | $7,016 | $7,912 | |
| Supervising Psychiatric Social Worker I, CF - 9291 | | $6,577 | $7,485 | |
| Clinical Social Worker (Health/CF)-Safety - 9872 | A | $5,358 | $5,525 | Range A is proposed for non-licensed clinicians. This range will need to be established. |
| | B | $5,776 | $6,995 | |
| Unit Supervisor (Safety) - 8104 | | $6,628 | $6,989 | |
| Sr. Psychiatric Technician/Safety - 8252 | A | $5,058 | $5,184 | |
| | B | $5,277 | $5,443 | |
| | C | $5,512 | $5,715 | |
| Psychiatric Technician/Safety - 8253 | A | $4,585 | $4,697 | |
| | B | $4,740 | $4,855 | |
| | C | $4,915 | $5,035 | |
| Recreation Therapist, CF - 9286 | A | $5,492 | $6,158 | |
| | F | N/A | N/A | No incumbents in Range F - propose revising class to delete Range F since no longer needed. |

A.  Recruitment and Retention (R and R) Bonuses:

A.1  Old Psychiatrist, CF series (Chief Psychiatrist, CF - 7612, Senior Psychiatrist (Sup) - 9271 and (Spec) CF - 9270, and Staff Psychiatrist, CF - 9272) will retain all existing R&Rs.  (See above Comments.)  All other classes will no longer be eligible for R&Rs (except for Pay Differentials 322 and 324) as proposed salaries include base and all R&Rs.

A.2  Per Court order - eligible classes/positions will continue to receive Pay Differential 322 - 3% Coleman R&R for Headquarters Mental Health Clinicians and Pay Differential 324 - Psychiatrist Retention Bonus.