ANDREW H. BAKER, SBN 104197
SHEILA K. SEXTON, SBN 197608
BEESON, TAYER & BODINE, PC
1404 Franklin Street, 5th Floor
Oakland, CA 94612
Telephone: (510) 625-9700
Facsimile: (510) 625-8275

Email: abaker@beesontayer.com

Attorneys for Amicus, AFSCME Local 2620

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RALPH COLEMAN,<br><br>                     Plaintiffs,<br><br>     v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                     Defendants. | Case No. CIV S 90-0520 LKK-JFM<br><br>DECLARATION OF MARK DUARTE IN SUPPORT OF PLAINTIFF'S MOTION FOR EMERGENCY RELIEF REGARDING DEFENDANTS' DENIAL OF ACCESS TO INPATIENT PSYCHIATRIC BEDS IN DMH'S STATE HOSPITALS<br><br>Hearing date: April 23, 2007<br>Time:           10:00 a.m.<br>Courtroom:   4<br>Judge           Honorable Lawrence K. Karlton |

I, Mark Duarte, LCSW declare under penalty of perjury:

1.  I am employed by Anka Behavioral Health, Inc., ("ANKA") a non-profit tax-exempt organization headquarted in Concord, California.

2.  ANKA is contracted by the California Department of Mental Health to provide a Regional Conditional Release Services known as the Central California Conditional Release Program. All counties have "conditional release programs" as required under the California Penal Code, section 1600, *et seq*., and, also under that statute the State of California must designate a "Community Program Director" having oversight of the counties' conditional release programs and the community impact thereof.

Decl. of Mark Duarte ISO Plaintffs' Mo. For Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals
Case No. CIV S 90-0520 LKK-JFM
60324.doc

1

3. Every conditional release program is required to have a community program director. Through its contracts with various counties, arising from the county's statutory obligation, ANKA must designate a "community program director". I am the designated community program director for Fresno, Madera, Kings, and Tulare counties, and have been a Community Program Director for the past twenty years.

4. As the Community Program Director I provide reports and recommendations to Superior Courts and Board of Parole Hearings for placement of individuals taking part in the conditional release programs or otherwise requiring treatment in secure facilities such as State Hospitals. Such individuals include persons covered under Penal Code section 1026 -- not guilty by reason of insanity, section 1370 -- incompetent to stand trial, section 2962 -- mentally disordered offender parolee, section 2970 - mentally disordered offender civil commitment, and Welfare & Institution Code section 6316 -- mentally disordered sex offender.

5. In other words, where an individual requires mental health treatment and resuscitation as a condition of their release from the penal system, or for example under section 1026 or section 1370, I am responsible for making placement recommendations to Superior Court Judges and Board of Prison Terms to DMH hospitals, as well as oversight and monitoring through liaison visits to the hospitals, consultation with hospital treatment teams, and supervision of forensic case work duties.

6. In that respect I deal directly with superior court Judges where placement in a secure mental health facility is an element to the adjudication of criminal matters.

7. Since January 1986, Conditional Release Programs were legislated to "provide enhanced protection to the community through treatment and supervision" of mentally ill patients who are processed through the penal system.

8. I am essentially the outpatient supervisor for all clients committed in the counties for which I am responsible. I am responsible for the daily operations of the department, and make sure the contract is in compliance with requirements of the state department of mental health. I both oversee my staff and am also responsible for a case load of clients, clinical

Decl. of Mark Duarte ISO Plaintffs' Mo. For Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals
Case No. CIV S 90-0520 LKK-JFM
60324.doc

2

1  supervision through individual and group therapy, forensic casework which includes announced
2  and unannounced home visits, random toxicology screening, collateral contacts and written
3  reports and testimony to the Superior Courts and Board of Parole Hearings.

4      9.     I am in consultation with the staff of DMH on an almost daily basis.

5      10.     I must and do provide a report to the Courts on quarterly basis pertaining to the
6  status of each client, and the progress being made, if any, by each client pursuant to Penal Code
7  section 1605(d).  I am also responsible for visiting my clients assigned to a secure treatment
8  facility a minimum of twice a year.

9      11.     Currently I have 175 clients receiving treatments in DMH hospitals, and I track
10  their progress through liaison visits.

11      12.     As indicated above, I am also responsible for placing individuals in state
12  hospitals.  In that respect I act as a liaison between the courts and DMH.

13      13.     Specifically, the state mental health hospitals I deal with are Atascadero State
14  Hospital, Patton State Hospital, Napa State Hospital, and Metropolitan State Hospital.

15      14.     In other words, my role is to process individuals for whom the Superior Courts
16  require mental health treatment, to track their progress and determine when such individuals
17  may be released from the hospitals such that they do not pose a danger to the community.

18      15.     I have found that over the course of last year, is has become increasingly difficult
19  to find placement for individuals requiring mental health treatment at DMH hospitals. For
20  example, in the beginning of 2006, an inmate who was adjudicated as requiring mental health
21  treatment would typically wait three weeks (from the date they are adjudicated to the date they
22  are placed in a mental health institution).

23      16.     Currently, my clients are waiting 4-6 months, and in some cases even longer
24  before they are placed in a mental health facility.  This fact is reflected in my client files, but is
25  also based on my personal knowledge.  Indeed, I currently have thirty clients in jails waiting for
26  placement to DMH facilities for restoration of competency pursuant to Penal Code section
27  1370.  They have been waiting, on average four months.  This was not the case a year ago.
28

Decl. of Mark Duarte ISO Plaintffs' Mo. For Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals
Case No. CIV S 90-0520 LKK-JFM
60324.doc

3

17. I have also reviewed reports of recommendations that I have made over the years, and have found that in the last nine months, people are backed-up awaiting placement to a degree that has not been known to me in my entire professional experience.

18. In addition, in the past year DMH has made an issue of its waiting list, that is, it has delayed placement based on a client's position on a waiting list. The waiting lists are problematic because it represents a failure by DMH to abide by procedures to triage referrals. For example, individuals on conditional release should have priority admission in hospitals, that protocol was "sacrosanct" until last year, but that directive is no longer functional because of the staffing shortage.

19. The reason for these changes is that DMH simply does not have the necessary staffing to admit the number of patients requiring care. As a result of the depleted staffing levels, DMH hospital have fewer open beds. There simply is not the capacity in terms of personnel to deal with the load of patients.

20. There has not been an increase in the number of referrals I make, that has remained relatively constant. Rather, the hospitals are admitting fewer patients.

21. I have been told by superior court judges, family members who call me, and from clients themselves (calling from jails), asking me for help with placement to DMH hospitals. In response to these request, the Community and Forensic Liaison representatives of hospitals, and other DMH officials, have told me repeatedly of their "census problem" and lack of necessary staff.

22. In the last six months we have received directives from DMH indicating that my staff and I are not to go to hospitals unattended, that DMH does not have the necessary staff to safeguard us, and that patients at DMH hospitals are more violent as a result of the depleted staffing levels.

23. This is because the longer individuals remain in jail -- where they do not have access to treatment and cannot be affirmatively placed on medication -- the worse their mental

Decl. of Mark Duarte ISO Plaintffs' Mo. For Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals
Case No. CIV S 90-0520 LKK-JFM
60324.doc

4

health deteriorates.  This means when they eventually arrive at a treatment facility, they must stay longer and they require more intense care.

24. This also has the effect of making the hospitals less safe.  Untreated patients are a danger, the individuals I deal with -- those processed through the jails -- typically are actively psychotic with violent tendencies as a result of their mental condition.  Such patients, who do not receive treatment, must be placed in situations that require higher staffing levels.

25. Simply, DMH also does not have the staff to adequately take treat the reduced level of patients that are admitted. I am personally aware of instances of staff not responding to requests for help by patients, which failure to respond has resulted in violence and injury.  The clients are sometimes volatile and responses to precursor behavior is less than desired because of the hospitals' lack of trained staff.  (Precursor behavior means the elements of a patient's personality in conjunction with social context that may lead to violent behavior.)

26. Because of the inferior staffing levels within DMH hospitals, those that are placed do not receive adequate treatment.  Rather than providing holistic mental health care, the patients are only medicated.  The hospitals do not have, and cannot retain the staff, required to provide other necessary forms of treatment to get the patients to the point where they can be safely released.

27. This means that fewer patients are ready to be placed in the community.  Because I must evaluate the community impact of an individual's release, I am familiar with the treatment and progress that my clients receive at the four state mental health hospitals mentioned above.  In the past year the treatment provided has deteriorated and is now at a level that, plainly, will not result in successful community placement.

28. I have also found that in the past year that the recidivism rate of my clients is much higher.  The reason for this is that my clients have not received the treatment required to resuscitate them to the level where they could be maintained safely in a community setting.

29. As a result, upon release I have the unenviable task of requiring clients to be placed back in jail, because there are no other options that would be safe for the community. In

Decl. of Mark Duarte ISO Plaintffs' Mo. For Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals
Case No. CIV S 90-0520 LKK-JFM
60324.doc

5

1  the past year I have been required to do this more often.  The reason is that, again because of

2  inadequate staffing my clients are not receiving the appropriate treatment necessary for their

3  condition.  Also, because of the reduction in the capacity of DMH, when a client requires

4  hospital admission for stabilization, medication change, or any other therapeutic reason, they

5  must be placed in jail and await placement because of the lack of capacity at DMH hospitals.

6      30.    Of course, once in jail, the cycle continues and, often, medication is not taken and

7  my clients' psychosis reemerges.

9      I declare under penalty of perjury that the foregoing is true and correct.  Executed this

10  16th day of April, 2007 at Fresno, California.

_____
Mark Duarte, MSW, LCSW 8636

Decl. of Mark Duarte ISO Plaintffs' Mo. For Emergency Relief Regarding Defendants' Denial of Access to Inpatient Psychiatric Beds in DMH's State Hospitals
Case No. CIV S 90-0520 LKK-JFM
60324.doc

6