```
 1            IN THE UNITED STATES DISTRICT COURT         FILED
 2            FOR THE EASTERN DISTRICT OF CALIFORNIA   APR 26 2007
 3                        ---oOo---                CLERK, U.S. DISTRICT COURT
                                                   EASTERN DISTRICT OF CALIFORNIA
                                                   BY_____
 4       BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE
 5
 6  RALPH COLEMAN, et al.,
 7        Plaintiffs,
 8  Vs.                          CASE NO. CIV. S-90-0520 LKK
 9  ARNOLD SCHWARZENEGGER,
    et al.,
10
11        Defendants.
12  _____/
13
14
15
16                        ---oOo---
17
18                  REPORTER'S TRANSCRIPT
19                MONDAY, APRIL 23RD, 2007
20       RE:  PLAINTIFF'S MOTION FOR EMERGENCY RELIEF
21
22                        ---oOo---
23
24
25  Reported by:              CATHERINE E.F. BODENE,
                              CSR. No. 6926
```

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

```
 1                        APPEARANCES
 2                         ---o0o---
 3
 4   FOR THE PLAINTIFF:
 5        ROSEN, BIEN & GALVAN, LLP
          315 MONTGOMERY STREET, TENTH FLOOR
 6        SAN FRANCISCO, CALIFORNIA  94104
 7        BY:  MICHAEL BIEN, ATTORNEY AT LAW
          BY:  AMY WHELAN, ATTORNEY AT LAW
 8        BY:  JANE KAHN, ATTORNEY AT LAW
 9
10
11
12   FOR AMICUS BRIEF, LOCAL 2620:
13        BEESON, TAYER & BODINE
          1404 FRANKLIN STREET, FIFTH FLOOR
14        OAKLAND, CALIFORNIA  94612
15        BY:  SHEILA K. SEXTON, ATTORNEY AT LAW
16
17
18   FOR THE DEFENDANTS:
19        STATE OF CALIFORNIA, DEPT. OF JUSTICE
          OFFICE OF THE ATTORNEY GENERAL
20        1300 I STREET
          SACRAMENTO, CALIFORNIA  95814
21
          BY:  LISA TILLMAN,
22             DEPUTY ATTORNEY GENERAL
               AND
23             MISHA D. IGRA,
               DEPUTY ATTORNEY GENERAL
24
25                         ---o0o---
```

```
                                                                    1
 1                    SACRAMENTO, CALIFORNIA
 2                    MONDAY, APRIL 23RD, 2007
 3                   (On the record at 11:00 AM.)
 4                           ---o0o---
 5         THE CLERK:  Calling Civil Case S-90-0520, Coleman
 6   versus Schwarzenegger, et al.
 7         THE COURT:  Counsel, approach the podium.  State your
 8   appearance for the record.  Those arguing, remain at the
 9   podium.
10         MS. TILLMAN:  Good morning, Your Honor.  Lisa Tillman
11   on behalf of defendants.
12         MS. WHELAN:  Amy Whelan on behalf of plaintiffs.
13         THE COURT:  Are you arguing, Ms. Whelan?
14         MS. WHELAN:  Yes, I am.
15         MR. BIEN:  Michael Bien on behalf of plaintiffs.
16         THE COURT:  Are you arguing, Mr. Bien?
17         MR. BIEN:  I'm back-up.
18         THE COURT:  Sit down.
19         MS. IGRA:  Misha Igra on behalf of defendants.  I
20   will not be arguing.
21         THE COURT:  You may retire.
22         MS. SEXTON:  Good morning, Your Honor.  Sheila Sexton
23   from Beeson, Tayer and Bodine, on behalf of the Amicus Brief,
24   Local 2620.
25         MS. KAHN:  Jane Kahn on behalf of plaintiffs.
```

2

1        THE COURT: I want to tell you what I'm thinking.
2            Obviously, this is a very serious problem. It's part
3    of the overall very serious problem.
4            I am not in charge of the Department of Mental
5    Health. I don't intend to be. And that's the first thing
6    that plaintiffs have to believe. But they don't.
7            I don't have a writ to go everywhere in the state and
8    cure every problem.
9            Thank you goodness I don't because I can't solve the
10   one I got.
11           The other side of that coin, Miss Tillman, is that
12   obviously to the extent that the Department of Mental Health
13   Services CDCR patients, that's a problem that I have.
14           Having said all of that, it's so nice to have lawyers
15   that are sensible, that know what they're doing. I've had a
16   morning in which I wonder what I'm doing up here.
17           Anyhow. That has nothing to do with why we're here.
18           It seems to me, Miss Tillman, that you're right and
19   you're wrong.
20           You are right that seeking to have the Legislature
21   raise the salaries of the persons who treat CDCR patients in
22   light of the other orders that I've issued about your
23   reporting to me with X number of days about all of these
24   things is a step in solving the problem.
25           It is not solving the problem because the Legislature

3

hasn't acted yet. But there's a greater problem. And I will be candid with you. This is not the time and place to talk about it except I worry about it a lot.

June 4th is coming. If what I read in the newspapers is right, I'm going to be faced with a problem that federal judges ought not to be faced with, which is the enormously serious problem of potentially capping the prison population.

There are 2000, I think, vacancies in the CDCR program for mental health.

Is that right?

You're both looking at me staring so maybe I've got the number wrong.

MS. WHELAN: Are you talking about within CDCR institutions?

THE COURT: Yes.

MS. TILLMAN: I haven't heard that number before, Your Honor, so I can't speak to that.

THE COURT: Okay. I don't know where I got it from then.

But there is a significant number. And that significant number will always be there because the State is going to keep sending more and more people to prison.

But there's another problem, and that is is there really enough protoplasm to really go around.

I mean, I don't know how many psychiatrists there are

4

1  in the state. I don't know how many psychologists there are
2  in the state. I don't know how many psychiatric social
3  workers and psych. techs there are in the state.
4        The question is whether there is ever going to be
5  enough. Even if I were to cap -- I'm sorry. This is a
6  different problem, but it is really so intimately related.
7        I don't know what the cap would be that would permit
8  the State to adequately provide mental health care to those
9  people in prison, setting aside the obvious fact that prisons
10 are prisons because people have broken the law and they
11 represent a danger to society and the prison's primary
12 function is acting as a prison.
13       That doesn't mean that you get away with not
14 providing them mental health services. That just illustrates
15 how intractable the problem is.
16       What could plaintiffs want me to do today that would
17 be different than what the plaintiff -- that the defendants
18 have already set in motion?
19       MS. WHELAN: Well, one main thing is that the funding
20 request submitted only applies to filled positions. So we
21 know right now, standing here today, that there are between
22 30 and 70 percent vacancy rates at various clinical positions
23 in DMH.
24       The funding requests submitted in response to this
25 Court's February order does nothing in the way of allowing

5

1  DMH to hire and retain staff in those vacant positions.
2          So even the funding request that was submitted in
3  response to that order, it does nothing to help fill vacant
4  positions.
5          THE COURT:  Miss Tillman.
6          MS. TILLMAN:  I think if you have had a chance to
7  review some of the papers that were submitted by plaintiffs,
8  Your Honor, you'll see that in the Budget Change Proposal --
9          THE COURT:  You mean by defendants?
10         MS. TILLMAN:  As well as plaintiffs.  I'm grateful
11 for the plaintiffs' filing in this regard.  They did provide
12 you with a copy of the Budget Change Proposal.  It talks
13 about requesting an augmentation of the present fiscal year's
14 budget.
15         We are at a very difficult time in the budget cycle
16 right now.  So to address what the Court wanted DMH to
17 address within the time frame of the budget cycle, what
18 essentially DMH asked the Legislature to do is take present
19 salary savings and apply them to those presently employed by
20 DMH, give them the increases so they don't flee their jobs in
21 the coming months while CDCR implements increased salaries.
22         That doesn't mean that DMH will not actively seek --
23         THE COURT:  That doesn't mean that some day somewhere
24 DMH might do what needs to be done.
25         MS. TILLMAN:  I think --

6

1   THE COURT: I'm sorry. I didn't mean to sound like
2   that. But, you know, there's this terrific crisis.
3       MS. TILLMAN: If I might say, Your Honor, page 1 of 5
4   of the Budget Change Proposal says:
5       (Reading):
6       Funding needs for Coleman-related vacant positions,
7       population growth at the state hospitals and staffing
8       contracts will addressed in the May revision.
9       (Reading concluded.)
10      THE COURT: Okay.
11      MS. TILLMAN: So those will be addressed.
12      THE COURT: All right.
13      I must confess, I will tell you that I am very
14  discouraged about whether we will ever, ever solve the
15  problem that we have.
16      I mean, this problem just illustrates how difficult
17  and intractable the overall problem is.
18      Matty, do you need to talk to me before I do what I
19  told you I thought I was going to do anyhow?
20      Haven, anything we need to talk about?
21      I'm going to continue the matter for -- I don't know
22  how long. Tell me how long.
23      MS. WHELAN: Well, Your Honor, can I just say one
24  thing?
25      THE COURT: Sure.

7

1    MS. WHELAN:  I think what you're recognizing here is
2 that this truly is a crisis.  And I think that was recognized
3 in your February 7th order.  And what they came back with, in
4 all due respect, does not address the order.
5    THE COURT:  I know.  I know.
6    MS. WHELAN:  In the meantime, we've wasted two
7 precious months.  So at the very least they offered in their
8 opposition brief to come back within one week with a real
9 plan.  And --
10   THE COURT:  I don't believe it.
11   MS. WHELAN:  Well, I know.  I hope.  Something needs
12 to be done.
13   THE COURT:  Boy, are you right about that.  But the
14 problem is it's not at all clear to me what can be done and
15 whether it will ultimately make any difference.
16      That's true of this motion and the motion to be heard
17 June 4th.
18      I'm very discouraged.  I am very very discouraged.
19      I want to see more than a plan.  I'm going
20 to continue the matter 30 days.
21      Madam Clerk, give me a date.
22      THE CLERK:  May 21st at 10:00 a.m.
23      THE COURT:  I need from you a plan, and I need some
24 evaluation of whether it is realistic and what can be done
25 and can't be done, Miss Tillman.

8

1       You know, I have not felt this way before, but now
2  I'm beginning to wonder whether we can ever make this right.
3       I mean -- You know, it is inappropriate that the
4  federal government is running the mental health program --
5  not the federal government -- the federal court is running
6  the mental health program, much less Plata and what they are
7  doing.  But there is dentists.  There is ADA.
8       It is like the State doesn't pay any attention
9  whatsoever to the reality.  I'm not blaming you,
10 Miss Tillman.  I hope you understand that.
11      I want something concrete when you show up next time.
12      MS. WHELAN:  Your Honor, can I say one more thing?
13      THE COURT:  Yes.
14      MS. WHELAN:  I think we learned during the April
15 hearings last year that there's a very tight time frame with
16 the May revision.
17      And we are really afraid that coming in that late in
18 May is going to blow any chance of getting real funding
19 requests or real relief into that May revision.  So we
20 just -- I understand the position you're in, but we just want
21 to make that --
22      THE COURT:  It's on the record.  You've stated it.
23      That will be the order of the Court.
24      Stand in recess.
25      (Off the record at 11:15 AM.)

```
 1                    REPORTER'S CERTIFICATE

 2                         ---o0o---

 3
    STATE OF CALIFORNIA  )
 4  COUNTY OF SACRAMENTO )

 5

 6
         I certify that the foregoing is a correct transcript
 7
    from the record of proceedings in the above-entitled matter.
 8

 9

10              IN WITNESS WHEREOF, I subscribe this
    certificate at Sacramento, California on this 23RD day of
11  APRIL, 2007.

12

13

14                          _____

15                          CATHERINE E.F. BODENE,
                            CSR NO. 6926
16

17

18

19

20

21

22

23

24

25
```