IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFONIA

RALPH COLEMAN

Plaintiffs,

Vs.   No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

## SPECIAL MASTER'S SUPPLEMENTAL REPORT ON THE STATUS OF THE SWAP OF ACUTE INPATIENT BEDS BETWEEN THE CALIFORNIA MEDICAL FACILITY AND ATASCADERO STATE HOSPITAL AND DELAYS IN TRANSFERS TO MENTAL HEALTH CRISIS BEDS

In response to a shortage of mental health crisis beds (MHCBs) for California Department of Corrections (CDCR) inmates in need of a crisis level of mental health care, defendants proposed a "swap" of acute inpatient beds between California Medical Facility (CMF) and Atascadero State Hospital (ASH). The objective of the plan was to create 75 additional MHCBs for CDCR inmates.

The swap called for the exchange of 25 acute inpatient beds in CMF for 25 acute inpatient beds that were created nearly two years earlier at ASH to provide MHCBs primarily for mental health caseload inmates in California Men's Colony (CMC) and California Institution for Men (CIM). CMC and CIM did not, however, transfer enough inmates in need of MHCB care to ASH to fill the 25 available beds, largely because ASH was not sufficiently secure to house most of the inmates eligible for transfer. As a result, nearly half of the beds allocated for the transfers to ASH remained persistently vacant. In addition, although the flow toward CMF was fuller than that toward ASH, it was still not

1

enough to fill the available beds in that facility, especially since the lengths of stay in MHCB units are generally shorter than those in acute inpatient program.

The defendants' proposed swap was based on the theory that the acute inpatient program at CMF could identify, in its present and anticipated caseload population, up to 25 seriously mentally ill inmates who could meet the custody criteria for placement in ASH. The transfer to ASH of 25 such inmates would free up 25 comparable beds in the acute inpatient program at CMF where Level III and Level IV inmates in need of MHCBs could be housed routinely.

Originally, the swap meant that the 130 beds comprising the acute inpatient Department of Mental Health (DMH) program at CMF would now include 105 acute inpatient beds and 25 MHCBs (20 acute beds were set aside earlier by CMF as MHCBs). Meanwhile, ASH would lose its 25 acute inpatient beds designated as MHCBs and gain 25 acute inpatient beds. The swap envisioned no diminution in the number of overall acute inpatient beds operated by DMH for CDCR, just a redistribution of these 50 beds for more efficient use.

In an October 2006 order, the Court directed the special master to monitor the swap of acute inpatient beds between CMF and DMH ASH. In early December 2006 the defendants obtained permission to utilize greater flexibility in filling empty beds in the acute inpatient program designated as MHCBs pursuant to the swap. This flexibility seemed to provide some initial benefit. However, the swap did not help alleviate defendants' inadequate stock of MHCBs as was anticipated.

On January 22, 2007, the special master filed a supplemental report on the status of the swap of acute inpatient beds between CMF and ASH and delays in transfers to MHCBs. On March 9, 2007 the Court adopted the report in full and ordered the special

2

master to report again on the status of defendant's measures to relieve the MHCB shortage and make appropriate recommendations.

Later that month, defendants asked the special master for permission to separate the S-1 and S-2 units at CMF, using S-1 only for acute inpatient care and S-2 only for MHCB care. In a letter dated April 6, 2007, attached hereto as Exhibit 1, defendants formalized their request by outlining the differences between acute and MHCB levels of care. In their letter, defendants stated that by restoring S-1 to an acute inpatient care unit, there will be 30 more acute inpatient beds for CDCR inmates, although 25 fewer MHCBs will be available. Defendants state that the acute care program at CMF will make every reasonable effort to appropriately discharge MHCB patients at the earliest possible time to the appropriate level of care, and not detain them any longer than necessary in a MHCB.

The special master accepts defendants' proposal in part. Conversion of S-1 back to an acute inpatient care unit is acceptable as long as those patients in S-2 who are in need of acute care may be transferred to S-1 or to another acute inpatient care unit. The special master rejects that part of defendants' plan which would cause a net loss of MHCBs. The special master recommends that simultaneously the 25 beds at ASH be returned to use as MHCBs. The special master finds that the swap measure failed and recommends that the Court order the swap reversed.

Respectfully submitted,

/s/

_____

J. Michael Keating, Jr.
Special Master

May 1, 2007

3