**EXHIBIT 1**



# CALIFORNIA DEPARTMENT OF Mental Health

1600 9th Street, Sacramento, CA 95814
(916) 654-2413

April 6, 2007

J. Michael Keating, Jr.
Office of Special Master
2351 Sussex Lane
Fernandina Beach, FL 32034

via: Lisa Tillman
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

RE: SPECIAL MASTER KEATING REQUEST FOR INFORMATION

Pursuant to Lisa Tillman's communication of April 4, 2007 the following information is intended to provide Mr. Keating with information relative to the differences between the goals for patients admitted to Mental Health Crisis Beds (MHCB) and Acute Psychiatric Program (APP) as well as assurances that the Vacaville Psychiatric Program (VPP) will make every reasonable effort to appropriately discharge MHCB patients at the earliest possible time and to the appropriate level of care.

The basic differences and similarities between the MHCB and APP goals are outlined below:

## COMPARISON OF MHCB AND ACUTE LEVEL OF CARE TREATMENT

| MHCB | ACUTE |
|---|---|
| Goal: To provide services for conditions which require an inpatient setting to ameliorate mental health symptoms in the least restrictive environment with a length of stay of 10 days. An inmate-patient admitted to the mental health crisis bed for mental health treatment may be described as having acute symptoms of a serious mental disorder of suffering from a significant or life threatening disability. | Overall Goal: To fully remit, or significantly reduce the symptoms of a presenting psychiatric illness, while providing education and guidance in developing basic coping skills. The primary goal of the APP is to identify and provide a successful transition to the most appropriate level of care for the patient, i.e. Intermediate Care (CMF or Salinas Valley), the Day Treatment Program at CMF, Atascadero State Hospital, the CDCR Enhanced Outpatient Program (EOP), Correctional Clinical Case Management System (CCCMS), general mainline population, or parole. A particular emphasis is placed on diagnosis and evaluation, including thorough psychiatric and internal medicine examinations, psychological and neuropsychological testing, nursing assessment, social history evaluation and rehabilitation therapy evaluation. Diagnosis and evaluation is an on-going process that continues throughout the patient's hospitalization. Length of stay is anticipated to be 30-45 days. |

J. Michael Keating
April 6, 2007
Page 2

| | |
|---|---|
| Intake Assessments:<br>• Nursing Evaluation<br>   ○ Interview and give orientation<br>   ○ Assess and take Vital Signs<br>   ○ Notify physician of admission status including any admission problems<br>   ○ Assemble Chart<br>   ○ Initiate the Patient Care Plan<br>   ○ Note and implement any admission orders, such as laboratory, x-rays, medications, etc. | Intake Assessments:<br>• Nursing Evaluation<br>   ○ Interview and give orientation<br>   ○ Assess and take Vital Signs<br>   ○ Notify physician of admission status including any admission problems<br>   ○ Assemble Chart<br>   ○ Initiate the Patient Care Plan<br>   ○ Note and implement any admission orders, such as laboratory, x-rays, medications, etc. |
| Physical Examination within 24 hours of admission | Physical Examination and completion of history and physical within 24 hours of admission |
| Initial Treatment Plan formulated within 24 hours by physician | Brief Mental Status exam and preliminary treatment plan note on admission |
| Individualized Treatment Plan within 72 hours of admission by IDTT | Full Psychiatric Evaluation by physician within 24 hours |
| Case review and Treatment Plan update as necessary but at least every 7 days | Individualized Treatment Plan within 72 hours of admission by IDTT |
| Assess, monitor and document patient status daily by either a psychiatrist or psychologist | Assess, monitor and document patient status each shift by RN and MTAs |
| Review of release of discharge plans – referral to DMH or EOP for continuity of care | Admission note with psychological assessment by psychologist within 10 days of admission |
| Medication evaluation and management | Medication evaluation and management |
| Brief intensive therapy (individual) | Initiate and complete Keyhea (involuntary medication) process if appropriate |
| Rehabilitation services (indoor, outdoor recreation) | Social History Evaluation by clinical social worker within 10 days of admission |
| Additional rehabilitation therapies available if patient is in MHCB over 10 days | Assessment and evaluation by rehabilitation therapy within 10 days of admission |
| Initiate Keyhea process (involuntary medications) if appropriate | Comprehensive Dietary Assessment within 30 days of admission |
| Restraint and Seclusion with continual observation during restraint and seclusion | Referral to dental services within 90 days of admission |
| | Referral to optometry services as needed |
| | Referral for psychological testing as needed |

J. Michael Keating
April 6, 2007
Page 3

|  | |
|---|---|
|  | Complete psychological testing |
|  | Individualized Treatment Plan within 10 days of admission |
|  | Weekly and monthly notes by Clinical Social Workers and Rehabilitation Therapists |
|  | Individual psychotherapy as indicated in Individualized Treatment Plan |
|  | Participation in psycho-educational and/or psychotherapeutic groups (5 days per week) |
|  | Participation in socialization groups (7 days per week) |
|  | Participation in outside yard activities (7 days per week) |
|  | Individualized Treatment Plan updates every 30 days or as needed after admission |
|  | Mini-Treatment Conferences to address problem behaviors or emergent psychiatric or behavioral issues |
|  | Provide Functional Analyses for more in depth assessment of patient psychiatric condition to formulate advanced behavioral plans |
|  | Development and implementation of Interdisciplinary patient behavioral plans |
|  | Develop Interdisciplinary discharge plan (begun at 72 hour IDTT). Refer to Intermediate, Day Treatment, EOP or CCCMS levels of care as appropriate |
|  | Parole planning when indicated which may include coordinating assessment at a County facility if patient remains a danger to self or others or gravely disabled upon parole |
|  | Assessment and/or treatment for competency to stand trial |
|  | Restraint and Seclusion with close and continual observation before and after as determined necessary by the physician |
|  | Suicide watch as determined to be necessary by the physician and IDTT. |
|  | Initiate clozapine trial and monitor progress |
|  | Any other clinical interventions as determined necessary and appropriate by the IDTT |

As one can see the critical area is the goal for admission. The MHCB goal is to stabilize the patient from the current acute state and return the patient to the outpatient setting within 10 days or less.

J. Michael Keating
April 6, 2007
Page 4


By converting S-1 back to an APP unit, the positive aspect is that there will be an additional 30 APP beds for the patients incarcerated within the California Department of Corrections and Rehabilitation (CDCR). Inversely, the negative aspect is that there will be 25 fewer MHCB beds available for CDCR patients. VPP therefore fully agrees to appropriately review the patient's Level Of Care (LOC) and upon discharge refer the patient from the MHCB to the appropriate LOC and not retain the patient in an MHCB for prolonged periods of time. However, if it is determined that the appropriate LOC is to transfer the patient from MHCB to an APP bed, the question arises: is the MHCB patient to take priority over the current patients on the APP wait list? If this is the direction the Special Master elects to take then the negative aspect is that any patient in the MHCB within VPP will take priority over the current wait list which will result in additional days before the non-VPP MHCB patients will be admitted to APP. Further, in the event the patient's recommended LOC is to either an Intermediate Treatment Program (ITP) or Day Treatment Program (DTP) and there is currently a wait list, VPP is faced with the same dilemma, which is to either hold the patient in a MHCB bed or return the patient to the Enhanced Out Patient (EOP) level of care, which is below the LOC required for the patient's well being.

In summary, I will do whatever the Special Master selects. However, the simple fact is that the previous bed plan, approved by the court, demonstrated the need for additional APP and Level IV ICF beds. The current delay in completing the plans that included 350 APP and 128 Level IV ICF beds and initiating the construction is a major factor that drives the current and continued bed shortage. The simple fact is that the bed shortage places both CDCR and VPP in the current operational dilemma.

Sincerely,

*Char Schultz. EDD*

for: VICTOR F. BREWER
Executive Director