## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.

    Plaintiffs,

    vs.                        No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

## SPECIAL MASTER'S SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON  DEFENDANTS' PLAN TO PREVENT SUICIDES IN ADMINISTRATIVE SEGREGATION

On May 9, 2006, the special master filed his Report on Suicides Completed in the California Department of Corrections in Calendar Year 2004 which stated that in 2004, 69.2 percent of all California Department of Corrections and Rehabilitation (CDCR) suicides occurred in administrative segregation, a substantial increase from the previous year.  In the report, the special master recommended to the Court that defendants be required to develop a plan to reduce the escalating number of suicides in administrative segregation.  The Court adopted the special master's recommendation on June 7, 2006 and ordered defendants to develop a plan to address the rising rate of suicide in the administrative segregation units of the CDCR institutions.

On October 2, 2006, defendants submitted a plan to address suicide trends in administrative segregation.  On October 31, 2006, plaintiffs objected to defendants' plan, and on December 1, 2006, defendants responded to plaintiffs' objections to the

1

submitted plan and simultaneously amended it. On December 18, 2006 the special master reported on defendants' plan and recommended that the Court approve the plan, as amended. The plaintiffs then responded on December 21, 2006 to the special master's report, and defendants again amended their plan and sought three specific additions to the plan with respect to the use of 30-minute welfare checks, reduction in lengths of stay and funding of small management yards.

In an order dated February 12, 2007, the Court approved defendants' October 2, 2006 plan to address suicide trends in administrative segregation, as amended. This approval was subject to the further report and recommendations of the special master regarding the status of defendants' compliance with the plan. The order also acknowledged the three specific additions to the plan contained in plaintiffs' objections to defendants' amended plan and called for the special master and his experts to pay particular attention to these issues during monthly discussions. The order required the special master to "meet with defendants' and plaintiffs' counsel monthly in person or by teleconference to follow up, refine, and monitor implementation of each element of the plan." In accordance with the order, the special master, his experts and counsel for plaintiffs and defendants conferred via conference calls on March 30, 2007, April 20, 2007 and May 8, 2007.

This report is filed pursuant to the Court's February 12, 2007 order that, "within ninety days from the date of this order, the special master shall report back to the Court on the status of defendants' compliance with the plan and shall make further recommendations as may be necessary."

The special master's communication with his experts, defendants and plaintiffs has focused on the following issues.

Small Management Yards:

In the overall plan defendants stated that they would develop a specific plan to fund and/or construct 921 small management yards in fiscal year 2006/2007. This effort would leave a confessed shortfall of 441 yards. Since that time, defendants have reported to the special master that a total of 1,480 small management yards are needed to meet Title 15 requirements for out-of-cell time. Of these, 719 are completed. Defendants have reported that 86 additional yards are currently under construction and another 107 have been designed with construction funds allocated. Recently, defendants requested design funding for 179 additional yards. They plan to request construction funds for these yards in the 2008/2009 budget year. However, funding has not been requested for the remaining yards required. During the May teleconference, defendants reported that the required balance of small management yards will not be completed until 2012. It appears that the reliance on inmate day labor may be a major obstacle to more rapid completion of the yards and if so, that is an issue that needs to be addressed.

Defendants and the special master's experts have reported that some institutions are utilizing the existing small management yards for recreation on third watch, thereby expanding their availability to more administrative segregation inmates. Defendants need to examine better availability of their existing yards everywhere and coordinate the provision of staff to maximize yard usage.

The special master is concerned that although defendants have made progress in this area, there is still a significant shortfall of small management yards which

3

will not be remedied for at least five years. That is simply too late. Because of the swelling population, the need may be even greater in the future.

<u>Intake Status and 30 Minute Welfare Checks:</u>

Data collected by defendants and the special master's experts on suicide confirmed that a high percentage of suicides occur within the first 72 hours of an inmate's confinement in administrative segregation, and at a much higher rate than among those who are single-celled rather than double-celled. The experts recommended that the intake period for each new arrival should last from two to three weeks. The defendants' plan called for a 72-hour intake period. It also dispensed with requirements of intake cells for newly arrived inmates who are placed in double cells.

The experts have recommended that defendants adopt the American Correctional Association's standard for welfare checks in an administrative segregation unit, which requires that inmates in such units "be personally observed by a correctional officer at least every thirty minutes at an irregular schedule." The experts have also recommended that correctional officers actually observe that an inmate is alive (e.g. breathing), as part of the 30-minute welfare check. In defendants' amended plan they agreed to provide, by July 1, 2007, 30-minute welfare checks of all newly arriving inmates in an administrative segregation unit during the first three weeks of their stays in the unit. While not fully responsive to the experts' recommendation or the American Correctional Association Standard, the concession does address partially the recommendation for more intensive observation of arriving inmates during the first three weeks of their stays in administrative segregation.

The special master's experts and monitors have reported that 30-minute welfare checks are occurring. However, there are questions surrounding consistency and documentation of these checks. The special master's experts have noted that at some institutions correctional officers are pre-filling the logs and/or improperly recording start and end times of the welfare checks.

Intake Cells:

The plan called for the intake cells to be made as suicide-proof as possible and located in an area that allows for increased observation by custody staff. Most notably, the ventilation screens in intake cells needed to be modified. Defendants identified 406 administrative segregation cells for retrofitting, with completion anticipated in July 2008.

Defendants reported that modification of ventilation screens in 66 intake cells in stand-alone administrative segregation was completed by April 1, 2007, as was required by the plan. Modification of ventilation screens in an additional 85 intake cells in non-stand alone administrative segregation is reportedly on schedule, with completion anticipated by July 1, 2007. Defendants also report that they are on schedule with respect to the ventilation screens in an additional 255 cells, which are to be retrofitted by September 1, 2007.

The court-approved plan required that construction of the physical features of the non-stand alone intake cells be completed by July 2008. This construction includes, but is not limited to, replacing doors to increase visibility in the cells and to offer greater protection to staff. Defendants reported to the special master that they are in

the process of assessing their budget for implementation of these measures and do not have available budgetary figures at this time.

Lengths of Stay

Defendants cite delays in the referral of charges to the local district attorneys as the main obstacle to reducing inmates' lengths of stay in administrative segregation. Defendants plan to address these issues directly with local district attorneys. Inmates in administrative segregation should be transferred to more appropriate placements pending processing of their referrals. At the outset of the case, Institutional Classification Committees (ICCs) met every 30 days to review inmate placement issues, but that procedure was recently modified by state regulations to allow ICC reviews to be held every 90 days. Perhaps defendants should consider modifying the regulations to allow ICC reviews every 30 to 45 days.

Defendants' plan cited the opening of a sensitive needs yard for level IV inmates at Mule Creek State Prison (MCSP) in January 2007. Defendants have reported that this sensitive needs yard is operational. Full operation of that yard will provide alternative placements for inmates now held for extended lengths of time in administrative segregation.

Property of Non-Disciplinary Inmates in Administrative Segregation:

In their plan defendants committed to reconsidering their policy on personal property, such as radios or televisions, for some categories of inmates in administrative segregation. Defendants have made progress in this respect and have been responsive to suggestions from the experts. Defendants have instructed all institutions to investigate their abilities to provide electrical connections within cells. On March 13,

6

2007 the special master received memoranda distributed by defendants to all institutions that permit inmates in administrative segregation to possess a television and/or radio (see Exhibit A).

Suicide History Tracking System: Inmate Profile

The defendants' plan called for the development of a suicide history tracking system for the recording of an inmate's suicidal history in the Mental Health Tracking System (MHTS). The purpose of the system was to ensure that inmate suicide histories were available to psych techs for all newly-placed caseload inmates in administrative segregation, including inmates who may have been recently transferred from elsewhere in the CDCR.

The CDCR staff member responsible for implementing the suicide history tracking system was unavailable during each monthly conference call and no meaningful information was provided on this topic. Based on the reports of the special master's experts, it appears that staff needs further training and better access to inmates' suicidal histories at relevant times.

Pre-placement Screening and "Bad News"

The plan specified that a brief mental health screening of each inmate shall be provided for the specific purpose of suicide prevention before placement in an administrative segregation unit. Healthcare personnel will be required to ask inmates a series of questions and, when indicted, refer them for further mental health evaluation. The plan also required medical personnel to screen inmates returning from court to administrative segregation. This screening is designed to identify inmates who received "bad news" while at court and, consequently, may be suicidal.

Nursing staff expressed reservations about these measures. Because nursing is under the supervision of the <u>Plata</u> receiver, defendants delayed their implementation of this aspect of their plan.

In recent weeks, the special master's experts, key members of the receiver's nursing staff, and CDCR personnel have conferred in an effort to reach a satisfactory agreement on the use of pre-placement and "bad news" screening. Draft proposals have been circulated for comment and approval. This matter will be addressed further at the May 15, 2007 <u>Coleman</u>, <u>Perez</u>, and <u>Plata</u> coordination meeting.

<u>Confidential Mental Health Interviews</u>

Defendants' plan reported that mental health staff will be conducting screening interviews in private settings. If additional plant and/or staffing resources are needed for confidential interview space, defendants committed to assessing the need and submitting an appropriate budgetary proposal.

The special master's experts report, and defendants confirm, that some mental health interviews do not take place in confidential settings. Defendants cite lack of space as the primary obstacle to full implementation of this measure. To date, defendants have not conducted their promised assessments of additional resources needed to provide confidential space at each institution.

<u>Emergency Response:</u>

Defendants' plan addressed the failures by staff to initiate aggressive CPR during emergency responses to inmate suicides in administrative segregation. The plan called for the Director of the Division of Adult Institutions to issue a directive to all wardens to provide all assigned administrative segregation unit staff with refresher

training regarding their responsibility to initiate CPR immediately when warranted by an inmate's condition. That training was to have been completed no later than October 31, 2006, with proof of practice submitted to the appropriate associate director.

On October 16, 2006, the Director issued the required memorandum to all wardens, health care managers and associate directors on the delivery of refresher training on life-saving measures consistent with the Department's amended policy on provision of immediate life support. The amended policy had been articulated in an earlier memorandum dated October 21, 2005 that was distributed to all associate directors of the Division of Adult Institutions, regional administrators of the Health Care Services Division, wardens and health care managers. The Director's October 16, 2006 memorandum required that its recipients provide proof of practice to the appropriate Associate Directors no later than the close of business on October 31, 2006, in the form of completed on-the-job sign-in sheets. Reportedly, proof of practice was provided, but no documentation has been provided to confirm their report.

Vigilant attention to the adequacy of emergency response is essential to curbing the rate of inmate deaths by suicide in administrative segregation. The 2005 Suicide Report is currently under preparation for distribution within sixty days. Following that, the 2006 Suicide Report will be distributed and will include a review of emergency response failures. In addition preparation of Six Year Suicide Review is also in progress.

Recommendations

It is still too early to evaluate fully defendants' compliance with the plan to prevent suicides in administrative segregation. Recent events, including the enactment

of Assembly Bill (AB) 900 which was passed by the Legislature on April 26, 2007 and
signed by the Governor, have caused defendants to revise their budgets for design,
renovation, and construction of some projects related to suicide prevention in
administrative segregation.

The special master recommends the following:

1.  Within 90 days defendants should be required to submit a plan that
    will satisfy their need for sufficient small management yards to
    meet Title 15 exercise requirements for inmates in administrative
    segregation. This plan should call for the funding and completion
    of construction of the remaining yards by the end of fiscal year
    2008/2009. The plan should also include provisions for better
    utilization of the existing small management yards and
    coordination with available staff to maximize yard usage.

2.  Within 60 days defendants should be required to accomplish the
    following:

    - develop a plan to require each institution to train
      staff on accurate logging of 30-minute welfare
      checks and to track and self-monitor compliance
      with the performance of these checks;

    - provide budgetary figures for the construction of the
      physical features of the non-stand alone intake cells;

    - submit a report on each institution's capability to
      provide televisions and/or radios to inmates in
      administrative segregation;

    - submit a status report on the implementation of the
      suicide history tracking system and a plan to train
      staff in its use and improve access to suicidal
      history data at all relevant times;

    - provide a specific assessment of their space needs
      for providing confidential mental health interviews;
      and

    - produce evidence that required CPR refresher
      training was accomplished by submitting
      documentation of the required proof of practice.

3.     By order dated March 9, 2007, defendants were directed to report to the Court on enhanced outpatient programs (EOP) in administrative segregation. That report was to examine, among other things, more effective ways for reducing lengths of stay of EOP inmates in administrative segregation. Defendants should be required to include in that report:

- their plan for modification of the present requirement that allows ICC reviews for inmates in administrative segregation. Defendants should consider conducting ICC reviews every 45 days for those inmates awaiting disposition of referrals to local district attorneys and possibly for all mental health caseload inmates who have been held in administrative segregation over 90 days. Defendants should also consider transferring inmates in administrative segregation to more appropriate placements pending processing of their DA referrals; and

- a breakdown of the numbers of administrative segregation inmates currently awaiting transfer to the sensitive needs yards,

Defendants have been making strides with respect to implementation of their plan. The special master will continue to monitor its implementation and efficacy through regularly scheduled policy meetings with the parties. Specifically, the monitors will be looking more closely at the reasons for extended lengths of stay in administrative segregation. The special master will also report on and make recommendations concerning defendants' plan in his semi-annual monitoring reports.

Respectfully submitted,

/s/

_____
J. Michael Keating, Jr.
Special Master

May 14, 2007

11