Arthur R. Chenen (State Bar No. 47576)
Robert M. Dato (State Bar No. 110408)
THEODORA ORINGHER MILLER & RICHMAN PC
2029 Century Park East, Sixth Floor
Los Angeles, California 90067-2907
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Attorneys for Amicus Curiae
PSYCHOLOGY SHIELD

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ARNOLD SCHWARZENEGGER et. al.,<br><br>                    Defendants. | Case No. Civ S 90-0520 LKK-JFM<br>Hon. Lawrence K. Karlton<br>Courtroom 4<br><br>**AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF REGARDING ACCESS TO DMH BEDS; DECLARATION OF WILLIAM SAFARJAN, PH.D; EXHIBITS**<br><br>Date:   May 21, 2007<br>Time:   10:00 a.m. |

## 1.    Introduction.

To improve patient care and address the crippling shortage of psychiatrists that limits the availability of beds, Psychology Shield requests that this Court consider expanding the use of psychologists within state mental health facilities.   Specifically, DMH should require state hospitals to allow psychologists to practice within their full scope of licensure free from supervision by psychiatrists. Existing California law mandates that the State may not discriminate between psychologists and psychiatrists in health services that both are authorized by law to perform.  DMH has not enforced this law.  Enforcement of the law would allow psychologists to take over many of the duties

THEODORA ORINGHER MILLER & RICHMAN PC

1 currently performed only by psychiatrists.  As there are more psychologists than
2 psychiatrists currently working in state hospitals, and many more psychologists than
3 psychiatrists licensed in California, focusing on increasing the role of psychologists
4 will ultimately decrease staffing shortages, improve patient care, and allow hospitals to
5 begin opening beds to patients.

6      As explained in the accompanying application to file this brief, Psychology
7 Shield is a not for profit public benefit corporation, the primary purpose of which is to
8 improve the quality and cost effectiveness of mental health services provided to patients
9 at facilities operated by the State of California.  In this brief, Psychology Shield will
10 demonstrate that allowing qualified psychologists to practice independently to the full
11 extent of their licensure could help the court expand prisoner access to mental health
12 resources.

13     **2.**     **The California Legislature Has Authorized Independent Practice by**
14               **Psychologists in State Facilities.**

15      California Health and Safety Code section 1316.5 ("§1316.5"), originally
16 adopted in 1978, provides that state hospitals may not discriminate when granting
17 clinical privileges on the basis of "whether a staff member holds an M.D. ... or a
18 doctoral degree in psychology."  It further provides that medical staff status for
19 psychologists includes the "right to ... practice full clinical privileges ... within the
20 scope of their ... licensure."  California Business and Professions Code section 2903
21 defines the practice of psychology to include "diagnosis, prevention, treatment, and
22 amelioration of psychological problems and emotional and mental disorders of
23 individuals and groups."

24      In *CAPP v. Rank* (1990) 51 Cal.3d 1 (*CAPP*), the California Supreme Court
25 invalidated California regulations that required psychiatrists to supervise the diagnosis
26 and treatment of all mental patients in state hospitals, holding that the regulations
27 violated Health and Safety Code section 1316.5.  *CAPP* concluded that under
28 California law, a hospital that admits clinical psychologists to its staff may permit such

*THEODORA ORINGHER MILLER & RICHMAN PC*

1  psychologists to "take primary responsibility for the admission, diagnosis, treatment
2  and discharge of their patients." 51 Cal.3d at 21.[1]

3         In a separate action, the Office of the California Attorney General recently
4  cited to this decision, explaining that:

5       "The Supreme Court declared that clinical psychologists may provide
        psychological services within the legal scope of their licensure without physician
6       supervision and without discriminatory restrictions."[2]

7         Despite the Supreme Court decision and the clear language of §1316.5,
8  discriminatory regulations and treatment of psychologists continued in state facilities.
9  The Legislature responded in 1996 (AB 3141) and again in 1998 (AB 947) with
10 amendments to §1316.5, each time strengthening the anti-discrimination provisions and
11 mandating rules and medical staff by-laws that provide for full clinical privileges for
12 psychologists within the scope of their licensure in all state owned and operated health
13 facilities.  Nevertheless, state mental health facilities currently prohibit psychologists

14 _____

15     [1] CAPP also rejected three arguments that DMH may raise as reasons why it
16 cannot ameliorate the current crisis by giving psychologists greater responsibility as
17 allowed by California law: (1) whether psychologists have the legal authority to serve
   as the attending clinician in health facilities is an "unresolved" issue; (2) because many
18 DMH's patients receive medication, psychologists cannot be "attending clinicians;" and
19 (3) Federal law restricts to physicians the responsibility to direct the treatment and care
   of Medicare and Medicaid patients.  51 Cal.3d at 20-22 and n. 14.

20     [2] Defendants' Memorandum of Points and Authorities in Opposition to First
21 Amended Petition for Writ of Mandate in *Union of American Physicians and Dentists*
22 *v. Gausewitz (Gausewitz),* Sacramento Superior Court Case No. 05CS00655.
   *Gausewitz* arose because in 2005, DMH's parent agency, the California Department of
23 Health Services ("DHS") finally issued regulations to implement *CAPP v. Rank.*  Two
24 organized psychiatry groups filed suit to block implementation of the regulations,
   alleging primarily that DHS improperly issued the regulations via an expedited "Rule
25 100" procedure, instead of going through ordinary notice and comment
26 rulemaking.  The trial court agreed that the procedure for issuing the regulations was
   improper and blocked the regulations.  Fifteen months later, however, DMH still has
27 not reissued the regulations to implement *CAPP v. Rank.*

28

THEODORA ORINGHER MILLER & RICHMAN PC

1 from independently performing many services that they are legally authorized to
2 perform.

**3.    Psychologists Can Furnish Many Existing Duties that Are Currently**
**Limited to or Supervised by Psychiatrists.**

As explained in the Declaration of William Safarjan, Ph.D. ("Safarjan Declaration"), there are many duties that are either limited to being furnished by psychiatrists or may be furnished by psychologists only with supervision by psychiatrists. Many of these duties fall within the scope of practice of a psychologists, meaning that psychologists are legally permitted in California to perform the services independently and without physician supervision. These duties include, but are not limited to, formulating the diagnosis of record, revising of the diagnosis as needed, writing orders for admission, transfer, discharge, restraint and seclusion, suicide precautions, and providing clinical leadership of the Interdisciplinary Treatment team. (Safarjan Declaration, p. 2.) Psychologists are currently prohibited from performing these duties in state mental health facilities. (Safarjan Declaration, p. 1.) Granting these clinical privileges to psychologists would allow them to assume primary responsibility for patients, leaving psychiatrists responsible for mediation management, which psychologists are currently not permitted to do. (Safarjan Declaration, p. 2.)

**4.    Due to the Existing Shortage of Psychiatrists in California, Allowing**
**Psychologists to Assume Primary Responsibility for Patients and**
**Increasing Efforts to Recruit Psychologists, Would Expand Prisoner**
**Access to Mental Health Resources and Improve Patient Care.**

DMH officials have repeatedly justified the closure of existing beds by saying they do not have enough psychiatrists to staff them. At page 14 of Plaintiffs' Memorandum of Points and Authorities in Support of the Motion for Emergency Relief, Dr. Mel Hunter, Executive Director of Atascadero State Hospital ("ASH"), appears to base the "crises staffing mode" at ASH on staffing ratios that include only psychiatrists, not psychologists, as clinicians with primary responsibility for the patient.

*THEODORA ORINGHER MILLER & RICHMAN PC*

1    Similarly, in her January 23, 2007 letter to the Office of the Special Master,
2    Cynthia Radavsky, Deputy Director of DMH, advised the office of the Special Master
3    that ASH is limiting admissions due to staff shortages. Ms. Radavsky spoke only of the
4    shortage of *psychiatrists* as justification for the closure of otherwise available beds.

5    The fact is there has been, and will continue to be, a shortage of psychiatrists in
6    California. As explained in the Safarjan Declaration, and as reported in Psychiatric
7    News, the Center for Health Professions at the University of California at San
8    Francisco found that the demand for services of psychiatrists and mental health
9    professionals is likely to increase by 30 percent in the coming decade while the supply
10   of psychiatrists and most other mental health professionals – *except* psychologists – is
11   likely to fall "woefully" short. (Safarjan Declaration, p. 2.) Thus, recruitment of more
12   psychiatrists is not a realistic short term or long term solution to the problems identified
13   by this Court.

14   A way has to be found to make more effective use of the few psychiatrists who
15   are available. The best way to do this is to use psychologists to perform those duties
16   that both psychologists and psychiatrists are licensed and qualified to perform.
17   Psychiatrists can then concentrate their energy on medication administration and
18   supervision, the function that psychologists are not now licensed to do.

19   In contrast to the shortages of psychiatrists, there are many more psychologists
20   available in California than there are psychiatrists. Thus, increasing efforts to recruit
21   psychologists are more likely to succeed than are efforts to recruit psychiatrists. To
22   date, the priority has been to offer substantial raises to psychiatrists as a recruitment and
23   retention incentive. Raises for psychologists have been modest compared to those
24   offered to psychiatrists.

25   In addition to making more beds available to members of the Plaintiff class,
26   enforcement of § 1316.5 would allow the State to provide more patient care for the
27   limited funds it has available to solve this problem. State employed psychologists earn
28   far less than psychiatrists. According to a study commissioned by Psychology Shield,

1   the State could save at least $3 million per year if DMH allowed psychologists to serve
2   as attending clinicians for patients and perform tasks psychologists are licensed and
3   qualified to perform, but now are being performed only by higher cost psychiatrists.[3]

4          Finally, greater use of psychologists would improve patient care because they are
5   the professionals most familiar with the treatment model now used by DMH.  Under a
6   Consent Decree that DMH has entered into with the U.S. Department of Justice
7   ("DOJ"), DMH is being required to implement a "recovery model" of treatment.  The
8   recovery model, which was developed by psychologists, focuses on teaching adaptive
9   skills and instilling a sense of hope and purpose in order to achieve lifestyle changes
10  and reduce recidivism.  The recovery model was developed by psychologists and has
11  been shown to be much more effective with persons with severe mental illness than the
12  older medical treatment model that the DOJ is trying to replace. (Safarjan Declaration,
13  p. 3.)

14         In short, it is indisputable that allowing psychologists to assume overall
15  responsibility for patient care and perform tasks now assigned only to psychiatrists in
16  State facilities would make more beds available to the Plaintiff class sooner and would
17  be more cost effective.  Psychiatrists freed from performing tasks that psychologists can
18  legally perform could consult with many more treatment teams than they currently do.
19  The failure of the Defendants to propose this as part of the solution to the current bed
20  shortage is an oversight that this Court can and should correct.

21         **5.    Conclusion**

22  When the California Legislature adopted §1316.5 in 1978, it found that:

23         The interests of the people of this state demand that all appropriate resources,
24         including inpatient facilities, be available to assist in the diagnosis,
           prevention, treatment, and amelioration of psychological problems and
25         emotional and mental disorders. However, a branch of healing arts
26

27         [3] See Exhibit C to the Declaration of William Safarjan, Ph.D.

28

*THEODORA ORINGHER MILLER & RICHMAN PC*

predominantly concerned with such afflictions, psychology, is, under present law, unduly restricted in its access to, and utilization of, health facilities....

Expanding the use of psychologists is critical to solving the crisis facing state mental health facilities in California. Such expansion is authorized by California law, would improve patient care, and would enable facilities to make more efficient use of the small number of psychiatrists currently available. Amicus Curiae Psychology Shield is prepared to assist the Court in any way it can.

DATED: May 15, 2007

THEODORA ORINGHER MILLER & RICHMAN PC

By: _____
Arthur R. Chenen
Robert M. Dato
Attorneys for Amicus Curiae
PSYCHOLOGY SHIELD

*THEODORA ORINGHER MILLER & RICHMAN PC*

# DECLARATION OF WILLIAM SAFARJAN, PH.D.

I, William Safarjan, Ph.D., declare as follows:

1.      I am a clinical psychologist, duly licensed by the State of California.  I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.      I am employed by the California Department of Mental Health ("DMH") as a psychologist at Atascadero State Hospital ("ASH.") I have been employed at ASH since 1984. I am the Chief Financial Officer of Amicus Curia Psychology Shield and have been active over the past twenty years in trying to expand the scope of practice of psychologists in state operated facilities to obtain the long overdue enforcement of California Health & Safety Code §1316.5 ("1316.5."). The DMH has long been reluctant to enforce §1316.5 and has been unwilling to authorize psychologists to assume primary responsibility for the care and treatment of a patients, or otherwise allow psychologists to perform many tasks that they are licensed and competent to perform.     Specifically, DMH does not include psychologists as health practitioners capable of assuming primary responsibility for patients when computing staff to patient ratios at ASH; it only counts psychiatrists.  Based upon my (i) numerous conversations with DMH employed psychologists at other facilities;  and (ii) review of various DMH rules and regulations, including the medical staff bylaws of other DMH facilities, I am informed and believe that no DMH operated facility in California complies with §1316.5 and allows psychologists to assume primary responsibility for the care of a patient.

3.      In my opinion, if §1316.5 were enforced and psychologists allowed to assume overall responsibility for patients in state operated facilities, the quality of care would improve, costs would go down,  and more beds and other resources could be made available to Coleman class members and other patients sooner than would otherwise be possible.

4.      As it now stands, most psychologists employed by DMH spend considerable time performing tasks (such as writing up the treatment plan conference reports) that could be done by other, lesser trained and lower cost health professionals.  On the other hand, many tasks that can be performed legally and competently by psychologists are restricted to

673819.1/21437.1700273193.1/21437.17002

1    psychiatrists through administrative directives and medical staff bylaws. These tasks include,

2    but are not limited to formulating the diagnosis of record, revising of the diagnosis as needed,

3    writing orders for admission, transfer, discharge, restraints and seclusion, suicide precautions,

4    and providing clinical leadership of the Interdisciplinary Treatment team. All of these duties

5    fall within the scope of practice of psychologists, meaning that psychologists are legally

6    permitted in California to perform the services independently and without physician

7    supervision. If these and similar duties were performed entirely or at least in part by

8    psychologists, available psychiatrists would have more time to perform services that only they

9    and psychiatric nurse practitioners can legally provide; that is, medication management. By

10    authorizing psychologists to assume the responsibilities that they are trained and licensed to

11    perform, psychiatrists would be able to serve a greater number of patients directly and also

12    indirectly by supervising nurse practitioners. This could help alleviate the adverse effects that

13    the current shortage of psychiatrists is having on the plaintiffs in this case.

14    　　　　5.    In fact, expanded use of psychologists as contemplated by §1316.5 is the only

15    realistic solution to the problems faced by the plaintiffs in this case because there is a chronic

16    shortage of psychiatrists in California and most experts predict the shortage is only going to

17    get worse. For example, according to a report by the Center for Health Professions at the

18    University of California at San Francisco (published on April 4, 2003 in Vol 38, No. 7 of

19    Psychiatric News, copy attached as Exhibit A) demand for the services of psychiatrists and

20    mental health professionals is likely to increase by thirty (30%) in the coming decade while

21    the supply of psychiatrists and most other mental health professionals, *except* psychologists, is

22    likely to fall "woefully" short. In addition, according to the same report, there has been a

23    decline in the number of medical students choosing psychiatry as a specialty. Therefore,

24    DMH and CDCR are not likely going to be able to recruit and retain enough psychiatrists to

25    solve the problems faced in their facilities no matter how much their salaries are raised.

26    Conversely, there does appear to be enough psychologists in the State to fill the gap, if they

27    were permitted to practice to the full extent of their licensure.

28

*THEODORA ORINGHER MILLER & RICHMAN PC*

673819.1/21437.1700273193.1/21437.17002

THEODORA ORINGHER MILLER & RICHMAN PC

6.    In addition, the base salaries of DMH psychologists are less than one half of those of psychiatrists. In fact, the salary disparity is even greater because many psychiatrists receive substantial additional pay in overtime and retention bonuses. As a result, as the newspaper article attached hereto as Exhibit B shows, several psychiatrists are among the State's highest paid employees. Therefore, enforcement of §1316.5 could not only make more resources promptly available to patients, it would provide more patient care for the same amount of funding.

7.    In 2004, Psychology Shield retained outside consultants to prepare a study of how much money the State could save if §1316.5 were implemented. The study, a copy of that is attached hereto as Exhibit C, estimated that at least $3,000,000.00 per year could be saved in DMH facilities alone.

8.    Finally, in addition to the foregoing, there is yet another reason why now is the time to require implementation of §1316.5. A Consent Decree that DMH has entered into with the U.S. Department of Justice ("DOJ"), requires DMH to implement a recovery model of treatment. Similar attempts are being made in the California Dept. of Corrections and Rehabilitation. The recovery model was developed by psychologists and psychologists are familiar with this model. It has been shown to be much more effective with the severely mentally ill than the older (medical) treatment model that the DOJ is trying to replace.

9.    Moving to a recovery model of treatment while keeping psychiatrists in charge has created problems within DMH because some psychiatrists are reluctant to accept the transformation. Under the recovery model, medication is viewed as frequently necessary but always insufficient to bring about lifestyle changes. Greater emphasis is now being placed on teaching adaptive skills and instilling a sense of hope and purpose. Without significant lifestyle changes, individuals receiving mental health treatment in DMH will continue to recidivate, just as they have in the past. Therefore, utilizing the full range of skills provided by psychologists—including attending—could not only help compensate for the shortages in psychiatry, but also could reduce costs and improve services delivered in the DMH.

673819.1/21437.1700273193.1/21437.17002

1    I declare under penalty of perjury under the laws of the United States of America that

2  the foregoing is true and correct.

3    Executed May 8, 2007, at Atascadero, California.

4

5                                         _____

6                                         William Safarjan, Ph.D.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit    A

Advertisement





*Psychiatric News* April 4, 2003
Volume 38 Number 7
© 2003 American Psychiatric
Association
p. 13

| SERVICES |
| --- |
| ▸ Email this article to a Colleague |
| ▸ Similar articles in this journal |
| ▸ Alert me to new issues of the journal |
| ▸ Download to citation manager |

| GOOGLE SCHOLAR |
| --- |
| ▸ Articles by Moran, M. |
| ▸ Articles citing this Article |
| ▸ Search for Related Content |

| RELATED COLLECTIONS |
| --- |
| ▸ **Related Article** |



Advertisement

**Professional News**

# California Report Predicts Psychiatrist Shortage

**Mark Moran**

**While acknowledging data limitations, a task force of the Center for Health Professions at the University of California at San Francisco says there will be too few psychiatrists—but may be too many psychologists—to meet the needs of the state.**

Demand for the services of psychiatrists and mental health professionals in California is likely to increase by as much as 30 percent in the coming decade, while the supply of psychiatrists and most allied mental health professionals in the state is likely to fall woefully short—except for psychologists.

So concludes a report by the California Workforce Initiative of the University of California at San Francisco Center for the Health Professions.

The

# Psychiatrists in California By the Numbers

A breakdown of California psychiatrists by practice setting shows a slight majority who practice outside of the traditional small private practice.



- Solo/2 physician *48%*
- Non-federal hospital *12%*
- Group *9%*
- Non-hospital public facility *7%*
- HMO *1%*
- Other patient care setting *3%*
- Not classified *20%*

Source: California Workforce Initiative, derived from AMA masterfile, 2000.

report, "The Mental Health Workfo Who's Meeting Californ Needs?," attempt describe the "ecolog of ment health services the state with workfo projecti not only psychia and psychologists, but the entire range of allied mental health professionals.

Tina McRee, M.A., a staff research associate at the center and co-author of the report, said that the shortages will be particularly acute in the area of child and adolescent psychiatry and geriatric psychiatry. "The lack of specially trained professionals to deal with children and the elderly is appalling," McRee told *Psychiatric News.*

She particularly emphasized the acute nature of the shortage of professionals equipped to diagnose and treat conditions in the elderly. "We are heading toward a crisis for the fastest-growing segment of our population," she said.

Beyond a general shortage of professionals for meeting a rising need—a finding that hardly surprises psychiatrists familiar with workforce issues—the lengthy report also documents a dearth of information about many aspects of the mental health workforce in California, a mirror reflection of the national picture.

A principal recommendation of the report is the importance of moving toward a "demand" model of patient care that identifies mental health needs and then determines the number and qualifications of professionals necessary to meet those needs.

The report recommends that the state "develop and maintain valid baseline

Advertisement

occupational data for the state's mental and behavioral health care
workforce. . . .Currently, the only reliable and comprehensive
enumerative and salary data come from government labor surveys, but
these rely on job titles that may not reflect actual numbers of graduate-
trained, certified, or licensed personnel. Collection and coordination of
other data from licensing boards and county and state human resources
departments could produce a baseline more reflective of the actual
workforce and more useful to policymakers, educators, and
administrators."



## Working in the Dark

The dearth of reliable information about the wide variety of mental health
practitioners meant that the center's own methods for projecting a
shortage fell short of scientific.

McRee said the center used general labor-force statistics for professional
categories that were similar to those for which real numbers were
lacking—such as occupational and recreational therapists, psychiatric
technicians and social workers, and others. Historical growth rates in all
of the professional categories were compared with projected population
growth to determine future profession-to-population ratios.

In the meantime, McRee suggested that policymakers attempting to plan
for the future are working in the dark. "In terms of planning for the future,
we need to address the fact there are very few data available to describe
the mental health workforce in California," she said.

## Data on Psychiatry

Of all the mental health professions, it would appear that the clearest
picture emerges for psychiatry. And the picture is one of an aging
profession, largely white and male, predominately working in office-
based settings, and principally located in or around large urban centers.

According to the report, which relied on statistics from the American
Medical Association, there were 4,870 active, direct-care psychiatrists in
the state in 2000. Of these, 75 percent were male, over half were over 55
years old, 65 percent were white, and nearly 88 percent worked primarily
in an office-based setting.

This definition of "active, direct-care psychiatrists" included those
working more than 20 hours per week in regular practice with major

practice activity in direct patient care. Residents, federal physicians, and psychiatrists whose major professional activity was teaching, research or administration were not included in this category. Also, while the report provides some data on the geographic distribution of psychiatrists within California, the practice location of almost half of the psychiatrists was not available.

"In California, doctors begin to cut back on work hours around age 50," McRee told *Psychiatric News.* "If that is the pattern for physicians generally, and over half of the psychiatrists are over 55 years of age, then we are looking at a shortage not just in the number of psychiatrists, but also in the number of hours of service being provided."

The report also emphasizes what it calls a decline in the number of medical students choosing psychiatry as a specialty—a point that was disputed by psychiatrist Fred Sierles, M.D., past chair of the APA Committee on Workforce Issues.

Sierles noted that there has been a steady, though modest, increase in the number of students matching into psychiatry residency programs in recent years *(Psychiatric News.* May 3, 2002).

## National Phenomenon

Others say the shortage of specialists, particularly in geriatric and child and adolescent psychiatry, is reflective of a well-known national phenomenon (see box).

Francis Lu, M.D., a professor of psychiatry at the University of California at San Francisco, hailed the report. "It's a very good strategy to have a more independent organization do this kind of workforce assessment state by state," he said. "Hopefully, this kind of document could be useful in lobbying efforts to sustain psychiatric residencies."

Lu, who is chair of APA's Council on Minority Mental Health and Health Disparities, added that California's large and growing minority population is another area of need.

"One-third of the state is Latino and Spanish speaking," Lu said. "There is a great demand for Latino and Spanish-speaking psychiatrists in the state. Studies have shown gross underutilization of services by the Latinos, at least among the Medicaid population. We are trying to understand the

reasons for this, but we believe one factor is the lack of Spanish-speaking psychiatrists."

### Too Many Psychologists?

Yet despite the projected overall shortage of mental health practitioners, the center predicts that there may actually be too many psychologists in the future.

There were about 11,000 licensed psychologists in California in 2001, more than 30 per 100,000 residents.

And even more than psychiatrists, psychologists are clustered predominantly in the San Francisco Bay area and Los Angeles. Ratios of psychologists to population varied widely, from 0 in Glenn, Sierra, and Alpine counties to 144.2 in Marin County.

Between 1990 and 2001, there was an increase in the number of psychologists practicing in California of nearly 30 percent. And the center cites studies showing that psychologists "may be experiencing competitive pressures on their income and productivity due to the expansion of the psychologist labor force over the past few decades."

The center also cites federal government labor statistics showing that more than 4 out of 10 psychologists in the United States were in independent practice in 2000, but that job growth for psychologists through the year 2008 will be moderate, with almost no growth in independent practice.

"Occupational indicators such as low projected job growth and declining salaries and productivity levels suggest that California may be facing an oversupply of psychologists," the report states.

*The report, "The Mental Health Workforce: Who's Meeting California's Needs?," is posted on the Web at www.futurehealth.ucsf.edu/CWI/mntlbeh.htm.* ■


### Related Article:

**Child, Geriatric Psychiatrists Worry About Workforce**
Psychiatr News 2003 38: 13. [Full Text]

**SERVICES**

▸ Email this article to a Colleague
▸ Similar articles in this Journal
▸ Alert me to new Issues of the journal
▸ Download to citation manager

**GOOGLE SCHOLAR**

▸ Articles by Moran, M.
▸ Articles citing this Article
▸ Search for Related Content

**RELATED COLLECTIONS**

▸ **Related Article**

Get information about faster international access.

Copyright © 2003 American Psychiatric Association. All rights reserved.

Home | Search | Current Issue | Past Issues | Subscribe | All APPI Journals | Help | Contact Us



AMERICAN PSYCHIATRIC PUBLISHING, INC.
WWW.APPI.ORG

AMERICAN PSYCHIATRIC ASSOCIATION
WWW.PSYCH.ORG



1000 WILSON BOULEVARD, SUITE 1825, ARLINGTON, VA 22209-3901 • 800-368-5777 • APPI


**About.:Mental Health**

From Apply Now,
Your Guide to Mental Health.
FREE Newsletter. Sign Up Now!

**Psychiatrist Shortage Looms**

A nationwide survey from LocumTenens.com has found that 25% of psychiatrists responding to a 2005 survey
said they would not choose medicine if they could decide their career paths all over again. This represents an
increase of 20% since 1997.

They conclude that "trends in the psychiatry workforce are leading to access problems." Other problems found
include:

- Psychiatrists are seeing more patients each week and spending less time with each.
- In the current managed care climate, a psychiatrist can earn 57 percent more money from three
  medication management visits than from one outpatient psychotherapy visit with medication evaluation.
- There are fewer practicing psychiatrists
- An aging psychiatry workforce - More than 60 percent of psychiatrists completed their training more than
  21 years ago. Only 32 percent of psychiatrists are under 45.

Read the complete survey results.

Friday January 13, 2006 | comments (0)



# HRSA STATE HEALTH WORKFORCE PROFILES



# California



## MENTAL HEALTH

√ There were 4,667 psychiatrists, 13,390 psychologists and 48,080 social workers in California in 2000.

√ With 14.3 psychiatrists per 100,000 population in 2000, California was above the national ratio of 12.6. California ranked 12th among states in psychiatrists per capita.

√ California had 39.4 psychologists per 100,000 population in 2000, more than the national rate of 36.2 and ranked 16th among states in psychologists per capita.

√ California had 126.7 social workers per 100,000 population in 2000, below the national rate of 159.1. California ranked 36th among states in social workers per capita.

√ The majority of psychologists and social workers in the nation in 2000 were non-Hispanic white, 91% and 72% respectively.

√ Nationally, almost 30% of psychiatrists, nearly 63% of psychologists and over 78% of social workers were female in 2000.

## PSYCHOLOGISTS

### Psychologists & psychiatrists, 2000

|  | California | Region IX | US | Rank |
|---|---|---|---|---|
| Psychiatrists | 4,667 | 5,397 | 34,038 | 2/50 |
| Per 100,000 population | 14.3 | 13.4 | 12.6 | 12/50 |
| Percent female | - | - | 29.6% | - |
|  |  |  |  |  |
| Psychologists | 13,390 | 15,380 | 102,090 | 1/50 |
| Per 100,000 population | 39.4 | 36.3 | 36.2 | 16/50 |
| Percent female | - | - | 62.6% |  |

Source: Bureau of Labor Statistics; American Medical Association; Bureau of the Census.

### Psychologists & psychiatrists per 100,000 population, 2000



Source: Bureau of Labor Statistics; American Medical Association; Bureau of the Census.

70 -- California



Source: Bureau of Labor Statistics; Bureau of the Census.



Source: National Center for Education Statistics.

# Race/ethnicity & gender of psychology doctoral degree recipients & the population, 1999-00

|  | Psychology education program degree recipients | Population |
|---|---|---|
| **Race/ethnicity** | | |
| Non-Hispanic white | 78.7% | 47.9% |
| Black/African American | 4.5% | 6.6% |
| Hispanic/Latino(a) | 7.5% | 32.7% |
| Asian & Pacific Islander | 7.8% | 12.3% |
| American Indian/Alaskan Native | 1.5% | 0.5% |
| Total | 100.0% | 100.0% |
| **Gender** | | |
| Female | 69.4% | 47.9% |
| Male | 30.6% | 52.1% |
| Total | 100.0% | 100% |

Source: National Center for Education Statistics; Bureau of the Census.

72 -- California

## Health professions summary, 2000

| | | Number | Per 100,000 pop. | | | |
|---|---|---|---|---|---|---|
| | | California | California | Region IX | US | CA rank |
| Physicians | | 65,996 | 194.0 | 190.3 | 197.7 | 20/50 |
| Nursing | RNs | 184,329 | 542.0 | 555.2 | 780.2 | 49/50 |
| | Nurse Practitioners | 10,509 | 30.9 | 30.9 | 33.7 | 29/50 |
| | LPNs | 53,040 | 156.0 | 155.4 | 240.8 | 43/50 |
| Dentistry | Dentists | 27,684 | 81.4 | 74.6 | 63.6 | 5/50 |
| | Dental hygienists | 19,880 | 58.5 | 57.8 | 49.9 | 22/50 |
| | Dental assistants | 37,270 | 109.6 | 104.5 | 88.8 | 6/50 |
| Physician assistants | | 3,751 | 11.0 | 11.3 | 14.4 | 36/50 |
| Other non-physician clinicians | | | | | | |
| | Chiropractors | 12,864 | 37.8 | 38.6 | 29.2 | 7/50 |
| | Podiatrists | 1,046 | 3.1 | 3.1 | 3.8 | - |
| | Optometrists | 2,850 | 8.4 | 8.4 | 7.9 | 23/44 |
| | Opticians | 5,050 | 14.8 | 16.3 | 22.9 | 40/49 |
| Pharmacy | Pharmacists | 22,470 | 66.1 | 64.1 | 75.4 | 43/50 |
| | Pharmacy aides & technicians | 26,520 | 78.0 | 77.4 | 88.7 | 34/50 |
| Mental health | Psychologists | 13,390 | 39.4 | 36.3 | 36.2 | 16/50 |
| | Social workers | 43,080 | 126.7 | 130.6 | 159.1 | 36/50 |
| Allied health | | | | | | |
| Therapists | Physical therapists | 10,960 | 32.2 | 33.2 | 42.7 | 44/50 |
| | Physical therapy assistants | 6,570 | 19.3 | 21.3 | 27.6 | 47/50 |
| | Occupational therapists | 6,760 | 19.9 | 19.3 | 26.6 | 40/50 |
| | Occupational therapy assistant | 1,590 | 4.7 | 5.1 | 9.2 | 43/47 |
| | Speech-language pathologists & audiologists | 7,850 | 23.1 | 23.2 | 32.7 | 44/50 |
| | Respiratory therapists | 8,800 | 25.9 | 25.7 | 29.2 | 31/50 |
| Technicians & technologists | | | | | | |
| | Emergency Medical Technician | 13,110 | 38.5 | 40.6 | 58.5 | 44/48 |
| | Radiologic | 15,830 | 46.5 | 52.2 | 61.0 | 45/50 |
| | Clinical laboratory | 29,740 | 87.4 | 89.7 | 103.0 | 41/50 |
| | Medical records | 12,570 | 37.0 | 39.8 | 51.0 | 44/50 |
| Dieticians & nutritionists | | 3,300 | 9.7 | 10.4 | 15.2 | 49/50 |
| Auxiliary health Home health aides | | 33,210 | 97.6 | 109.9 | 198.8 | 46/50 |
| | Nurse aides, orderlies & attendants | 91,620 | 269.4 | 269.5 | 451.2 | 47/50 |

Source: Division for Nursing; Bureau of Labor Statistics; American Medical Association; American Dental Association; American Academy of Physician Assistants; National Council of State Boards of Nursing; Bureau of the Census.
Note: Data are from 2000 except: Pharmacy aides and technicians, 1998.

20 -- California

# Health professions comparison - projected change, 1998 - 2008, & median hourly wage, 2000

| | | Projected pct. change in employment, 1998-2008 | | Median hourly wage, 2000 | |
|---|---|---|---|---|---|
| | | California | US | California | US |
| Physicians | | 49.0% | 23.2% | - | - |
| Nursing | RNs | 28.5% | 22.0% | $26.50 | $21.56 |
| | LPNs | 20.9% | 19.5% | $16.42 | $14.15 |
| Dentistry | Dentists | 20.0% | 8.1% | - | $62.04 |
| | Dental hygienists | 41.0% | 48.2% | $32.75 | $22.06 |
| | Dental assistants | 43.2% | 38.1% | $14.64 | $10.88 |
| Physician assistants | | 68.4% | 46.7% | $34.73 | $29.76 |
| Other non-physician clinicians | | | | | |
| | Chiropractors | 53.3% | 27.1% | $27.13 | $32.23 |
| | Podiatrists | 20.0% | 10.1% | $43.77 | $51.71 |
| | Optometrists | 22.2% | 11.8% | $40.78 | $39.84 |
| | Opticians | 27.6% | 14.1% | $14.58 | $10.94 |
| Pharmacy | Pharmacists | 18.3% | 12.6% | $39.28 | $34.11 |
| | Pharmacy technicians | 47.1% | 11.0% | $13.32 | $9.93 |
| Mental health | Psychologists | 30.7% | 7.9% | $28.00 | $24.60 |
| | Social workers | 37.4% | 32.1% | $18.78 | $17.97 |
| Allied health Therapists | Physical therapists | 34.5% | 70.8% | $30.44 | $26.35 |
| | Physical & corrective therapy assistants | 47.1% | 78.5% | $14.43 | $16.63 |
| | Occupational therapists | 32.1% | 66.1% | $27.46 | $23.77 |
| | Occupational therapy assistants | 47.1% | 68.7% | $15.20 | $16.57 |
| | Speech-language pathologists & audiologists | 54.9% | 50.6% | $26.93 | $22.42 |
| | Respiratory therapists | 58.0% | 45.8% | $20.26 | $18.11 |
| Technicians & technologists | | | | | |
| | Emergency Medical Technicians | 33.3% | 45.1% | $12.85 | $10.80 |
| | Radiologic | 35.9% | 28.9% | $20.99 | $17.31 |
| | Medical & clinical laboratory | 31.2% | 14.9% | $20.36 | $16.36 |
| | Medical records | 73.5% | 50.9% | $13.04 | $10.94 |
| Dieticians & nutritionists | | 31.9% | 18.2% | $22.73 | $18.40 |
| Auxiliary health | Home health aides | 47.4% | 42.5% | $8.82 | $8.23 |
| | Nurse aides, orderlies & attendants | 21.9% | 24.3% | $9.17 | $8.89 |

Source: Bureau of Labor Statistics.

California -- 21

Exhibit    B

**SFGate.com**    Return to regular view

Print This Article

## CALIFORNIA
**Big jump in state's high-paid workers**
**Nearly 2,000 earn more than $132,000 after raises, overtime**
- Todd Wallack, Chronicle Staff Writer
Tuesday, June 21, 2005





The state budget crunch has squeezed funding for everything from art to education.

But it hasn't derailed pay raises for some of California's best-paid government workers.

Close to 2,000 state employees earned more than $132,000 last year, up from 1,021 in calendar year 2002 and 1,194 in 2003, according to data from the state controller's office.

And some employees who were already in that elite salary tier received significant raises since 2002, the last time The Chronicle looked at the list of highest-paid employees. As a group, the state's top 20 best-paid employees earned $6.2 million in 2004, up 9 percent from 2003 and up 20 percent from 2002.

For instance:

-- Mark Anson, chief investment officer for the state's pension fund, earned more than $608,489 last year, an increase of 48 percent since 2002.

-- Tim Alder, a psychiatrist at Patton State Hospital in San Bernardino County, collected $315,202, up 32 percent over two years. Much of his pay was for working extra shifts.

-- Christopher Ailman, chief investment officer for the California teachers' pension fund, earned $312,938, up 24 percent since 2002.

"Whenever you see such significant increases in such a short amount of time, it is a red flag," said Jon Coupal, president of the Howard Jarvis Taxpayers Association, a group that pushes for limits on taxes and government spending. "It would seem to us that the state bears a heavy burden of proof to justify the compensation, which I am not sure they have done."

Moreover, the controller's data actually understate the number of top-paid employees on the state payrolls because it excludes employees of the University of California. The controller provided The Chronicle with a list of the top 2,000 highest-paid state employees for each of the past three years.

But some government officials and outside experts contend the state needs to offer regular raises and six-figure salaries to attract talented and skilled employees for key jobs.

Many of the best-paid workers are doctors, judges, money managers and other professionals who could easily find lucrative work in the private sector. Others earned hefty paychecks by logging heavy overtime in hard-to-fill jobs, working with prisoners or the mentally ill.

"You're going head-to-head with .ne private sector," said Rob Wassmer, a.. economist at Cal State Sacramento, who has done research related to state and local government. "There are some people who are altruistic and will take a (government) job for that reason, but I don't think we can rely on that if we want to find the best people."

And on Wednesday, the Little Hoover Commission, a government oversight agency, issued a report calling on the state to boost the pay for many management jobs to make it easier to attract top talent.

The issue is important locally, not only because area residents pay significant taxes, but because state government is the Bay Area's largest employer. The region had 98,500 state employees as of December.

According to the controller's data, pay for the top 2,000 employees rose 5 percent from 2002 to 2004. Salaries, overtime and other compensation for the state's top-paid workers all increased steadily during the past two years, despite the state's fiscal crisis. The lowest-paid person on the list, a surgeon at Sonoma State Hospital, made $131,454.

Many lower-paid workers received even bigger pay hikes. The average state employee (including part-time workers) earned about $42,400 last year, up 8 percent from 2002, according to data from the state controller's office. (The data exclude people who work for UC or the state Legislature.)

But the raises varied widely. Most state employees received a 5 percent raise last summer, according to Lynelle Jolley, a spokeswoman for the Department of Personnel Administration.

Others earned more. For instance, the California Highway Patrol officers received a 2.7 percent raise in July 2003, another 6.8 percent increase last summer, and 5 percent this year. And correctional officers received a 6.8 percent increase in the summer of 2003, a 5 percent increase last summer, and another 5 percent at the beginning of this year.

The pay hike for prison guards was one of the issues used to help oust Gov. Gray Davis in 2003.

Despite the raises, the overall state payroll grew only modestly over the past two years, because the state shed thousands of jobs during the same period. In 2004, the state paid employees $14.2 billion, up from $13.9 billion in 2002. There were 334,588 people on the payroll in 2004, about 21,000 fewer than 2002 (not counting employees of UC and the Legislature).

More pay raises could be on the horizon. Gov. Arnold Schwarzenegger's administration is in contract talks with unions representing most state employees, ranging from engineers to secretaries.

And on May 23, the California Citizens Compensation Commission voted to increase lawmakers' salaries by 12 percent, starting in December. Under the increase, most lawmakers will earn $110,880 and legislative leaders, such as Senate President Pro Tem Don Perata, will earn $127,512.

Schwarzenegger would have ranked 154th on the list, but the multimillionaire declined his $175,000 annual salary. A spokesman for the governor declined to comment on the pay increases for other employees.

Still, no one ranked higher on the salary list than California Public Employees' Retirement System, the country's largest pension fund. The six best-paid state employees, and seven of the top 10, work for the agency.

Anson, for instance, earned $373,891 in salary, plus a $234,598 bonus. Four other investment officers earned more than $400,000 last year. And two more eclipsed $300,000, including one who left the agency in June.

Exhibit B
Page 26

Most of them have also received raises over the past two years. Anson, for instance, earned nearly $200,000 more in 2004 than he did just two years earlier.

"I don't think those salaries can be justified," Coupal said.

CalPERS spokeswoman Pat Macht disagrees, saying the agency needed to boost its pay to keep pace with salary hikes in the insurance and banking sectors.

In addition, CalPERS had a great year, which swelled the money managers' bonuses. The agency earned a 16.7 percent return on its investments in fiscal year 2004, compared to an average of 15.9 percent for other major public pension funds, according to a report by Wilshire Associates. Like most investors, CalPERS performed worse in 2002 and 2003, but still matched its peers.

And even with the raises, Macht said, the investment managers earn less than their counterparts on Wall Street, some of whom command seven-figure pay packages. And she said the employees save CalPERS millions of dollars a year in administrative expenses by managing much of the state's investments in-house, rather than relying on outside mutual funds.

"Would you rather pay an investment manager $250,000, or pay $3 million to a Wall Street money manager, sitting in his gold-plated office in New York?" Macht asked.

A study commissioned by CalPERS last year showed that Anson earned slightly more than most chief investment officers in the banking and insurance industries, while the agency's senior investment officers earned less. The median salary and bonus for chief investment was $560,000, 8 percent less than what Anson earned last year; the median for senior investment officers was nearly $537,000 -- at least $125,000 more than the CalPERS employees received. CalPERS, however, did not study how their pay compared to others in the public sector.

A spokeswoman with the state teachers' retirement system argued that Ailman, its chief investment manager, is also underpaid.

"We're asking him to beat the (investment) benchmarks, but his salary isn't matching the benchmark of what people paid for doing the same work in the private sector," said Sherry Reser, a spokeswoman for the $125 billion pension fund.

Reser said the pension fund boosted Ailman's pay last summer in recognition of his performance and additional years on the job.

More than half of the state's 2,000 best-paid employees were judges, whose salaries go up automatically along with the pay of other state employees. Superior Court judges earn at least $143,838 annually, up about 8 percent from 2001. Appellate court justices earn more.

There were also more than 600 doctors on the list, including 359 psychiatrists, most of whom work in prisons or mental hospitals.

The state prison system is under a court order to pay psychiatrists significant recruiting and retention bonuses in order to maintain an adequate number in prisons.

Similarly, officials at the Department of Mental Health said they need to pay substantial bonuses to attract qualified doctors. In both prisons and state hospitals, doctors can substantially boost their pay by working extra shifts.

"You start getting up to some big bucks," said John Rodriguez, deputy director of the mental health

agency. "It's a function of their training and the going rate."

Most of the other high-paid employees were spread out among two dozen other agencies, ranging from Forestry and Fire Protection to the California Highway Patrol.

But some major state agencies, like Caltrans, didn't have any employees on the list.

## BREAKDOWN

The issue: The number of state employees who earned more than $132,000 nearly doubled from 2002 to 2004.

The problem: "It would seem to us that the state bears a heavy burden of proof to justify the compensation, which I am not sure they have done," said Jon Coupal, president of the Howard Jarvis Taxpayers Association.

The defense: Some government officials and outside experts contend the state needs to offer regular raises and six-figure salaries to attract talented and skilled employees for key jobs.

-- Online: For a list of the highest paid 2,000 employees (excluding workers at the University of California, California State University and the legislature), go to www.sfgate.com/cgi-bin/news/casalary/employee.

*E-mail Todd Wallack at twallack@sfchronicle.com.*

```
TOP PAY
   Pay for the state's top 2,000 workers (in millions of dollars), not
including employees in the University of California system or the state Legislature.

   2002
   Total pay: $282.1 million
   Salaries: $266.7
   Overtime $5.0
   Other $10.4

   2003
   Total pay: $287.9 million
   Salaries $267.6
   Overtime $9.2
   Other $11.1

   2004
   Total pay: $296.4 million
   Salaries $271.7
   Overtime $11.9
   Other $12.8

   Source: State controller
   The Chronicle
```

Top 20 state salaries

```
   Highest-paid state employees, excluding employees at the University of
California and related teaching hospitals.
```

|  | Total | Change |
|---|---|---|
| Rank/Name / Title | 2004 pay | from 2002 |

| | | |
|---|---|---|
| 1 Mark Anson chief investment officer, CalPERS | $608,489 | 48% |
| 2 Christianna Wood senior investment officer, CalPERS | $412,746 | n/a* |
| 3 Patricia Pinkos senior investment officer, CalPERS | $406,317 | 84% |
| 4 Michael McCook senior investment officer, CalPERS | $402,799 | 35% |
| 5 Curtis Ishii senior investment officer, CalPERS | $401,240 | 56% |
| 6 Leon Shahinian senior investment officer, CalPERS | $319,527 | 114% |
| 7 Tim Alder psychiatrist, Patton State Hospital | $315,202 | 32% |
| 8 Christopher Ailman chief investment officer, CalSTRS | $312,938 | 24% |
| 9 Richard Hayes senior investment officer, CalPERS | $302,596 | 2% |
| 10 Tam Bui doctor and surgeon, San Quentin State Prison | $294,496 | -29% |
| 11 Dianne Oki president, State Compensation Insurance Fund | $271,917 | 142% |
| 12 Gertrudis Agcaoili psychiatrist, Napa State Hospital | $259,126 | 3% |
| 13 Mary Cottrill senior portfolio manager, CalPERS | $255,176 | 39% |
| 14 Bong Doan psychiatrist, Patton State Hospital | $253,178 | 5% |
| 15 Ronald Seeling chief actuary, CalPERS | $240,917 | 7% |
| 16 John Ehnes CEO, CalSTRS | $243,046 | 85% |
| 17 Kevin Winter senior portfolio manager, CalPERS | $249,935 | 62% |
| 18 Shelly James psychiatrist, Solano State Prison | $235,722 | 8% |
| 19 Joseph Ezra psychiatrist, Patton State Hospital | $232,394 | 9% |
| 20 Michael Lisiak psychiatrist, Atascadero State Hospital | $226,060 | 0% |

Source: State controller

**Where the best-paid employees work**

Some agencies accounted for the lion's share of the state's best-paid

workers. These agencies ha͏ͅ more than 10 employees among ͺ . 2,000 top-paid
workers, which excludes workers of the University of California, California
State University and the state Legislature.

| Agency | Employees |
|---|---|
| Judges/elected officials | 1,065 |
| Corrections | 414 |
| Mental health | 255 |
| Developmental services | 51 |
| Forestry, fire protection | 38 |
| CalPERS | 31 |
| California Highway Patrol | 24 |
| Youth Authority | 24 |
| Supreme Court | 17 |
| Judicial Council | 17 |

Page A - 1
URL: http://sfgate.com/cgi-bin/article.cgi?file=/c/a/2005/06/21/MNG56DBUNK1.DTL

©2006 San Francisco Chronicle

SFGate: CA State Employee Salaries                                      Page 1 of 3



Quick Search    

**SFGATE HOME · BUSINESS · SPORTS · ENTERTAINMENT · TRAVEL**       **JOBS · REAL ESTATE · CARS**

# CALIFORNIA STATE EMPLOYEE SALARIES                    San Francisco Chronicle

Highest paid 2,000 employees (excluding workers at the University
of California, California State University and the state Legislature).

- Big jump in state's high-paid workers 6/21/05
- Overtime pay soars for hard-to-fill jobs 6/21/05

Find a name, job title or workplace by keyword:

[ Search ]

☐ Show only employees whose overtime pay
exceeds their salary

**Employee profiles 1 - 50 of 4277**                     Results sorted by:  Total pay

**1 2 3 4 5 6 7 8 9 10 | Next**

Total pay for the 2004 calendar year. Total pay includes salary, overtime and other compensation including bonuses,
educational pay, recruitment incentives and premium pay for working certain shifts.  Source: California State Controller's
Office

| Name | Workplace | Salary | Overtime | Total Pay |
|---|---|---|---|---|
| Mark Anson<br>Chief Investment Officer | CalPERS | $373,891.28 | N/A | $608,489.28 |
| Christianna Wood<br>Senior Investment Officer | CalPERS | $258,931.61 | N/A | $412,745.61 |
| Patricia A. Pinkos<br>Senior Investment Officer | CalPERS | $247,003.90 | N/A | $406,316.90 |
| Michael B. Mc Cook<br>Senior Investment Officer | CalPERS | $245,889.67 | N/A | $402,798.67 |
| Curtis D. Ishii<br>Senior Investment Officer | CalPERS | $251,098.48 | N/A | $401,240.48 |
| Leon G. Shahinian<br>Senior Investment Officer | CalPERS | $199,902.07 | N/A | $319,527.07 |
| Tim L. Alder<br>Staff Psychiatrist (Safety) | Patton State Hospital | $155,654.30 | N/A | $315,201.92 |
| Christopher J. Ailman<br>Chief Investment Officer | State Teachers Retirement System | $243,750.00 | N/A | $312,937.50 |
| Richard J. Hayes<br>Senior Investment Officer | CalPERS | $137,751.81 | N/A | $302,595.81 |
| Tam D. Bui<br>Physician and Surgeon | San Quentin State Prison | $132,854.30 | $161,642.18 | $294,496.48 |
| Dianne C. Oki<br>President | State Comp Insurance Fund | $271,916.67 | N/A | $271,916.67 |
| Gertrudis C. Agcaoili<br>Staff Psychiatrist (Safety) | Napa State Hospital | $188,365.54 | $15,558.48 | $259,126.42 |
| Mary C. Cottrill<br>Senior Portfolio Manager | CalPERS | $170,696.71 | N/A | $255,175.71 |
| Bong Doan<br>Staff Psychiatrist (Safety) | Patton State Hospital | $155,654.30 | N/A | $253,178.03 |
| Ronald L. Seeling<br>Chief Actuary | CalPERS | $195,859.60 | N/A | $249,916.60 |
| John B. Ehnes | State Teachers Retirement System | $195,831.00 | N/A | $243,046.00 |

http://www.sfgate.com/cgi-bin/news/casalary/employee

6/19/2006

| | | | | |
|---|---|---|---|---|
| Chief Executive Officer | | | | |
| Kevin A. Winter | CalPERS | $173,160.03 | N/A | $240,935.03 |
| Senior Portfolio Manager | | | | |
| Shelly James | CA State Prison - Solano | $176,648.20 | N/A | $235,722.00 |
| Staff Psychiatrist | | | | |
| Joseph Ezra | Patton State Hospital | $155,654.30 | N/A | $232,394.39 |
| Staff Psychiatrist (Safety) | | | | |
| Michael H. Lisiak | Atascadero State Hospital | $155,654.30 | N/A | $226,060.25 |
| Staff Psychiatrist (Safety) | | | | |
| Mohamed Amr I. Hafez | Patton State Hospital | $132,854.30 | N/A | $223,990.38 |
| Physician and Surgeon (Safety) | | | | |
| John W. Douglas | Pelican Bay State Prison | $168,179.02 | $52,486.33 | $220,679.66 |
| Staff Psychiatrist | | | | |
| Fred R. Buenrostro Jr | CalPERS | $173,352.12 | N/A | $220,512.12 |
| Executive Officer | | | | |
| Alfonso Fernandez | CalPERS | $148,898.25 | N/A | $218,683.25 |
| Senior Portfolio Manager | | | | |
| Carl A. Guidi | CalPERS | $128,676.25 | N/A | $218,403.25 |
| Portfolio Manager | | | | |
| Real R. Desrochers | State Teachers Retirement System | $179,209.00 | N/A | $217,136.88 |
| Investment Director | | | | |
| Anh C. Nguyen | Frank D Lanterman Hospital | $130,454.30 | N/A | $214,994.67 |
| Physician and Surgeon | | | | |
| Paul D. Fortaleza | Csp - Los Angeles County | $132,854.30 | $82,092.05 | $214,946.35 |
| Physician and Surgeon | | | | |
| Timothy B. Martin | San Quentin State Prison | $132,854.30 | $80,702.69 | $213,556.99 |
| Physician and Surgeon | | | | |
| Nitin B. Kulkarni | Patton State Hospital | $155,654.30 | N/A | $213,527.18 |
| Staff Psychiatrist (Safety) | | | | |
| Ba N. Tran | Frank D Lanterman Hospital | $130,454.30 | N/A | $212,994.85 |
| Physician and Surgeon | | | | |
| Warren T. Trepeta | CalPERS | $126,967.50 | N/A | $212,827.50 |
| Portfolio Manager | | | | |
| Sang V. Chung | Patton State Hospital | $132,854.30 | N/A | $211,613.47 |
| Physician and Surgeon (Safety) | | | | |
| Wadsworth H. Murad | Patton State Hospital | $155,654.30 | N/A | $211,496.75 |
| Staff Psychiatrist (Safety) | | | | |
| Paul H. Kratofil | Patton State Hospital | $155,654.30 | N/A | $209,083.22 |
| Staff Psychiatrist (Safety) | | | | |
| Lawrence V. Harrison | CA Medical Facility | $156,854.30 | N/A | $207,735.90 |
| Staff Psychiatrist | | | | |
| Aubrey Dent | Vacaville Psychiatric Facility | $153,179.02 | N/A | $206,989.19 |
| Staff Psychiatrist (Safety) | | | | |
| Donald R. Walk | Social Services | $121,015.31 | N/A | $206,416.31 |
| Medical Consultant I (Psychiatrist) | | | | |
| Hazem Hashem | CA Medical Facility | $156,854.30 | N/A | $206,346.30 |
| Staff Psychiatrist | | | | |
| Mubashir A. Farooqi | Patton State Hospital | $155,654.30 | N/A | $205,980.12 |
| Staff Psychiatrist (Safety) | | | | |
| Chengxin Yang | Patton State Hospital | $155,654.30 | N/A | $205,788.56 |
| Staff Psychiatrist (Safety) | | | | |
| Francy M. Mateus | Social Services | $121,015.31 | N/A | $205,363.31 |
| Medical Consultant I (Psychiatrist) | | | | |
| Mohsen Shalaby | CA Institution For Men | $132,854.30 | N/A | $204,888.80 |
| Physician and Surgeon | | | | |
| Michael J. Reynolds | CA State Prison - Corcoran | $132,854.30 | N/A | $203,607.20 |
| Physician and Surgeon | | | | |

SFGate: CA State Employee Salaries

| | | | | |
|---|---|---|---|---|
| Christopher W. Sangdahl<br>Staff Psychiatrist (Safety) | Patton State Hospital | $155,654.30 | N/A | $203,030.24 |
| John I. Benson<br>Staff Psychiatrist (Safety) | Patton State Hospital | $155,654.30 | N/A | $201,344.65 |
| Julian Kim<br>Physician and Surgeon | CA State Prison - Corcoran | $132,854.30 | N/A | $200,819.58 |
| Johnny K. Dang<br>Physician and Surgeon | CA State Prison - Corcoran | $132,854.30 | N/A | $200,577.64 |
| Thanit Hasadsri<br>Physician and Surgeon | CA State Prison - Corcoran | $128,775.19 | N/A | $199,460.07 |
| Ronald A. Bortman<br>Staff Psychiatrist | Pelican Bay State Prison | $169,047.17 | $30,247.34 | $199,294.51 |

**Employee profiles 1 - 50 of 4277**          Results sorted by:  Total pay

1 2 3 4 5 6 7 8 9 10  |  **Next**

Back To Top

©2006 San Francisco Chronicle | Privacy Policy | Feedback | RSS Feeds | FAQ | Site Index | Contact

Exhibit    C



**ESTIMATES OF SAVINGS TO THE DEPARTMENT OF MENTAL HEALTH**

**WHEN UTILIZING PSYCHOLOGISTS AS INTENDED**

HFS Consultants
July 2004

| | | MDO | SVP | MDO | | $8,528 - $11,181 per month | $4,498 - $5,904 per month | | |
|---|---|---|---|---|---|---|---|---|---|
| SVP=Sexually Violent Predator | | | | | | | | | |
| MDO=Mentally Disordered Offender | | | | | | | | | |
| Number of Patients on Unit | | 30 | 34 | 45 | | Avg. $5.4 per min | Avg. $2.85 per min | 1291 | 4768 |
| Number of Charts Audited | | 30 | 34 | 41 | | | | | |
| Diagnostic Revisions | 22.5 | 3 | 1 | 0 | 90 | $486 | $257 | | |
| Transfer Orders | 22.5 | 1 | | 4 | 90 | $486 | $257 | | |
| Master Team Conferences | 22.5 | 1 | | 5 | 135 | $729 | $385 | | |
| Initial Team Conferences | 22.5 | | | 3 | 67.5 | $365 | $192 | | |
| 30 day treatment team | 22.5 | | | 1 | 22.5 | $122 | $64 | | |
| 7 day treatment team | 22.5 | 2 | 1 | 1 | 90 | $486 | $257 | | |
| wrist restraints with posy | 22.5 | 2 | 1 | 1 | 67.5 | $365 | $192 | | |
| wrist restraints full bed restraints | 22.5 | 16 | | 8 | 540 | $2,916 | $1,539 | | |
| 90 day team conferences | 22.5 | 5 | 3 | 3 | 180 | $972 | $513 | | |
| discontinuation of medication | 22.5 | | | 1 | 22.5 | $122 | $64 | | |
| follow up notes | 22.5 | | 1 | 2 | 45 | $243 | $128 | | |
| Psychiatric Notes & Orders by Other Covering Psychiatrists | 16 | 3 | | 15 | 765 | $4,131 | $2,180 | | |
| Forensic Reports Dictated | 22.5 | 2 | | 2 | 45 | $243 | $128 | | |
| Admission Psychiatric Evaluations Completed | 22.5 | 5 | | 5 | 112.5 | $608 | $321 | | |
| Total | | | | | | $25,181 | $6,477 | (month total x 12) | (month total x 12) |

Inpatient Populations taken from State Hospitals Fiscal Year Report 2002/2003
Napa=1106, Metropolitan=744, Patton=1645, Atascadero=1291; Total=4786

Salaries from State Controller Department of Personnel Administration Published March 2004
Class Code 7652 Staff Psychiatrist; Class Code 9878 Psychologists Health Facility

Exhibit C
Page 34

THEODORA ORINGHER MILLER & RICHMAN PC

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

3

    I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 535 Anton Boulevard, Ninth Floor, Costa Mesa, California 92626-7109.

4

5

    On Ma y 15, 2007, I served the following document(s) described as **AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF REGARDING ACCESS TO DMH BEDS; DECLARATION OF WILLIAM SAFARJAN, PH.D.; EXHIBITS** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

6

7

8

**SEE ATTACHED LIST**

9

10

**BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) being served.

11

12

13

**BY E-MAIL:** I caused each such document to be transmitted by PDF format/E-mail to the parties and email addresses indicated on the Service List (see attached service list)

14

15

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16

    Executed on May 15, 2007, at Costa Mesa, California.

17

18

                          _____

NAOMI CAMPOS

19

20

21

22

23

24

25

26

27

28

THEODORA ORINGHER MILLER & RICHMAN PC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST
*Coleman v. Schwarzenegger*

### Case No. 90-CV-00520-LKK-JFM

*Counsel for J. Michael Keating, Jr.*
Joseph Michael Keating
Office of the Special Master
2351 Sussex Drive
Fernandina Beach, FL 32034

Tel: (904) 491-7157
Fax: (904) 491-7158
Email: jmichaelkeatingjr@yahoo.com

*Counsel for Matthew A. Lopes, Jr.*
Mathew A. Lopez, Jr.
Pannone Lopez & Devereaux LLC
1800 Financial Plaza
Providence, RI 02903

Tel: (401) 824-5156
Fax: (401) 824-5123
Email: mlopes@pld-law.com

*Counsel for John Hagar*
John Henry Hagar
Law Office of John Hagar
PMB 314
1819 Polk Street
San Francisco CA 94109
Tel: (415) 771-1911
Fax: (415) 552-4067
Email: johagar@pacbell.net

*Counsel for Ralph Coleman, Winifred Williams, David J. Heroux, David McKay, Roy Joseph*
Claudia B. Center
Legal Aid Society
Employment Law Center
600 Harrison St., Ste. 120
San Francisco, CA 94107

Tel: (415) 864-8848
Fax: (415) 864-8199
Email: ccenter@las-elc.org

*THEODORA ORINGHER MILLER & RICHMAN PC*

1  ***Counsel for Ralph Coleman Winifred***
2  ***Williams, David J. Heroux, David McKay,***
   ***Roy Joseph***
3  Donald Specter
   Prison Law Office
4  General Delivery
   San Quentin CA 94964
5
   Tel:  (415) 457-9144
6  Fax:  (415) 457-9151
   Email:  dspecter@prisonlaw.com
7
   ***Counsel for Ralph Coleman, Winifred***
8  ***Williams, David J. Heroux, David McKay,***
   ***Roy Joseph, Robert Hecker***
9  Michael Bien
   Rosen Bien & Galvan LLP
10 315 Montgomery St., 10th Floor
   San Francisco CA 94104
11
   Tel:  (415) 433-6830
12 Fax: (415) 433-7104
   Email:  Mbien@rbg-law.com
13
   ***Counsel for Ralph Coleman, Winifred***
14 ***Williams, David J. Heroux, David McKay,***
   ***Roy Joseph, Lorenzo Arteaga, Amos***
15 ***Gladney, Pete Cockeroft***
   Amy Elizabeth Whelan
16 Rosen Bien & Galvan LLP
   315 Montgomery Street, 10th Floor
17 San Francisco CA 94104
18 Tel:  (415) 433-6830
   Email:  awhelan@rbg-law.com
19
   ***Counsel for Ralph Coleman***
20 Jane E. Kahn
   Rosen Bien & Galvan LLP
21 315 Montgomery Street, 10th Floor
   San Francisco CA 94104
22
   Tel:  (415) 433-6830
23 Fax: (415) 433-7104
   Email:  jkahn@rbg-law.com
24
25
26
27
28

3

1

2     ***Counsel Ralph Coleman***
      Lori Ellen Rifkin
      Rosen Bien & Galvan LLP
3     315 Montgomery St., 10th Floor
      San Francisco CA 94104

4

5     Tel: (415) 433-6830
      Fax: (415) 433-7104
      Email: lrifkin@rbg-law.com

6

7     ***Counsel for Ralph Coleman***
      Thomas Bengt Nolan
      Rosen Bien & Galvan LLP
8     315 Montgomery St., 10th Floor
      San Francisco CA 94104

9

10    Tel: (415) 433-6830
      Fax: (415) 433-7104
      Email:  tnolan@rbg-law.com

11

12    ***Counsel for Robert Hecker***
      Ernest Galvan
      Rosen Bien & Galvan LLP
13    315 Montgomery Street, 10th Floor
      San Francisco CA 94104

14

15    Tel: (415) 433-6830 Ext. 223
      Fax:  (415) 433-7104
      Email:  egalvan@rbg-law.com

16

17    ***Counsel for Jack Regan, John S. Zil, M.D.,***
      ***Nadim Khoury, James Gomez, Joseph***
18    ***Sandoval, Schwarzenegger, et al., Matthew***
      ***A. Lopes, Jr., Stephen W. Mayberg,***
19    ***Michael Genest***
      Lisa Anne Tillman
20    Office of the Attorney General
      1300 I Street, Ste. 125
21    Sacramento, CA 94244-2550

22    Tel: (916) 327-7872
      Fax: (916) 324-5205
23    Email: lisa.tillman@doj.ca.gov

24

25

26

27

28

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Counsel for John S. Zil, M.D., Nadim Khoury, James Gomez, Joseph Sandoval, Schwarzenegger, et al., Stephen W. Mayberg, Michael Genest*
Van Kamberian
Attorney General's Office of
The State of California
1300 I Street, Ste. 125
P.O. Box 944255
Sacramento CA 94244

Tel (916) 324-3892
Fax: (916) 324-5205
Email:  Van.Kamberian@doj.ca.gov

*Counsel for Schwarzenegger, et al.*
Misha D. Igra
California Department of Justice
1300 I Street
Sacramento, CA 95814

Tel (916) 324-5388
Fax: (916) 324-5205
Email:  misha.igra@doj.ca.gov

*Counsel for Schwarzenegger, et al.*
Paul B. Mello
Hanson, Bridgett, Marcus, Vlahos & Rudy
333 Market St., Ste. 2100
San Francisco CA 94105

Tel: (650) 233-4096
Email:  pmello@hansonbridgett.com

*Counsel for California Correctional Peace Officers Association*
Benjamin C. Sybesma
California Correctional Peace Officers Association
Legal Department
755 Riverpoint Drive
West Sacramento, CA 95605-1634

Tel:  (916) 372-6060 Ext. 260
Fax:  (916) 372-9805
Email:  ben.sybesma@ccpoa.org

*THEODORA ORINGHER MILLER & RICHMAN PC*

1

*Counsel for California Correctional Peace*
*Officers Association*
Christine Albertine
California Correctional Peace Officers
Association
Legal Department
755 Riverpoint Drive, Ste. 200
West Sacramento, CA 95605-1626

Tel: (916) 801-9484
Email: christine.albertine@ccpoa.org

*Counsel for California Correctional Peace*
*Officers Association*
Gregg McLean Adam
Carroll Burdick and McDonough
44 Montgomery Street, Ste. 400
San Francisco, CA 94104

Tel: (415) 743-2534
Fax: (415) 989-0932
Email: gadam@cbmlaw.com

*Counsel for California Correctional Peace*
*Officers Association*
Ronald Yank
Carroll Burdick and McDonough
44 Montgomery Street, Ste. 400
San Francisco, CA 94104

Tel: (415) 989-5900
Email: ryank@cbmlaw.com

*Counsel for AFSCME Local 2620*
Andrew H. Baker
Beeson Tayer and Bodine
1404 Franklin Street, 5th Floor
Oakland, CA 94612-2701

Tel: (510) 625-9700
Email: abaker@beesontayer.com