NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
DANIEL H. WILLICK (SBN 58643)
JOHN T. KENNEDY (SBN 137738)
PAUL A. HEMESATH (SBN 220467)
445 S. Figueroa Street, 31st Floor
Los Angeles, California 90071-1602
Telephone: (213) 612-7800
Facsimile: (213) 612-7801

Attorneys for Amicus Curiae
California Psychiatric Association

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. <br><br><br> CALIFORNIA PSYCHIATRIC ASSOCIATION, <br><br> Applicant for Intervention. | 2:90-cv-00520 LKK JFM P <br><br> **AMICUS CURIAE BRIEF OF CALIFORNIA PSYCHIATRIC ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF AND IN RESPONSE TO AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD** <br><br> Date: May 21, 2007 <br> Time: 10:00 a.m. <br> Courtroom: 4 <br> Judge: The Honorable Lawrence K. Karlton |

341872_1.DOC

## I. INTRODUCTION.

The California Psychiatric Association ("CPA") submits this amicus curiae brief in support of plaintiffs' Motion For Emergency Relief Regarding Defendants' Denial Of Access To Inpatient Psychiatric Beds In DMH State Hospitals ("Plaintiffs' Emergency Motion") and in response to the Amicus Curiae Brief of Psychology Shield.

The evidence presented to the Court by plaintiffs establishes a severe shortage of mental health staff at DMH hospitals treating CDCR prisoners. This shortage has created a severe threat to proper care. Indeed. the declarations recently filed in this matter by three psychologists employed at DMH hospitals shows 50% or more of psychologist positions at three DMH hospitals are vacant. (See Documents 2125, 2126 and 2127 herein, true copies of which are attached hereto as Exhibits 1, 2 and 3 respectively). There are similar shortages for other mental health clinicians, including psychiatrists. The care for members of the plaintiff class is in jeopardy and emergency action is necessary. However, the emergency response suggested by the Psychology Shield amicus curiae brief is ill considered, not properly before the Court and, if adopted, would endanger patients.

## II. PLAINTIFFS' REQUEST FOR EMERGENCY RELIEF IS APPROPRIATE.

There is overwhelming evidence presented by plaintiffs establishing that DMH hospitals treating members of the plaintiff class are in dire circumstances due to mental health clinician vacancy rates of 50% or more. For example, a declaration filed herein by Dr. William Safarjan on January 31, 2007 as Document 2125 (a true copy of which is attached hereto as Exhibit 1) shows a 56% vacancy rate for psychologists at Atascadero State Hospital resulting in limitations on admissions and safety concerns. A declaration by Malvern Holland, filed herein as Document 2126 on January 31, 2007 and a true copy of which is attached hereto as Exhibit 2, establishes that the new DMH hospital at Coalinga is empty and has a vacancy rate of at least 50% for psychologists. Finally, a declaration by Paul Guest filed herein as Document 2127 on January 31, 2007 and a true copy of which is attached hereto as Exhibit 3, shows a vacancy rate at Patton State Hospital of over 40% for psychologists and increasing.

Care for members of the plaintiff class is suffering as a result of these and other circumstances. CPA believes the Court should give serious consideration to remedies, such as:

341872_1.DOC

    A. Providing full salary parity with CDCR salaries for DMH mental health clinicians since existing pay differentials are draining DMH clinicians to CDCR employment;

    B. Authorizing expedited hiring procedures for DMH positions; and

    C. Pursuing a robust campaign to recruit clinicians from outside of California.

This brief is neither the time nor the place to seek to discuss the details of what is required. The Court has experts advising the Special Master who are available to address such issues. However, CPA is concerned by the ill-informed efforts of Psychology Shield to have the Court adopt its solution to such issues at the May 21, 2007 hearing. Hence, CPA feels that it is necessary to respond concisely to the points made by Psychology Shield's amicus curiae brief.

## III. RESPONSE TO PSYCHOLOGY SHIELD AMICUS CURIAE BRIEF.

### A. Introduction.

CPA agrees with Psychology Shield's support of plaintiffs. Otherwise, CPA believes the requests of Psychology Shield should not be considered or should be rejected for each of the independent reasons stated below.

### B. Psychology Shield's Amicus Brief Improperly Requests Affirmative Relief Not Sought By Any Party to This Lawsuit.

Less than a week before the pending hearing on plaintiffs' motion for emergency relief Psychology Shield has submitted an amicus brief which seeks affirmative relief. Since Psychology Shield is <u>not</u> a party to this lawsuit it has no standing to seek affirmative relief. Indeed, such a request for affirmative relief by a party on less than one week's notice should be summarily denied.

In the interest of an accurate record CPA submits the following points and authorities in response to the contentions of Psychology Shield.

341872_1.DOC

- 2 -

AMICUS BRIEF OF CALIFORNIA PSYCHIATRIC ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF AND IN RESPONSE TO AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD

**C.	The Relief Sought By Psychology Shield Is Contrary To The Law, Is Beyond The Scope Of Licensure Of Psychologists And Would Endanger Patients.**

1. The Relief Sought.

Psychology Shield seeks to have the Court override well established law by authorizing psychologists to act "free from supervision by psychiatrists"[1] (i.e., psychiatric physicians) or other physicians to:[2]

    a.    Diagnose patients;

    b.    Write orders for admission, transfer, discharge, restraint and seclusion, or suicide precautions; and

    c.    Act as the leader of patient treatment teams.

If granted, these requests would endanger patients, many of whom suffer from non-psychiatric medical conditions, by placing their care under the control of psychologists who, although lacking medical training or licensure, would be authorized to act (write orders) without medical supervision. Additionally, at least one-half of the DMH positions for psychologists are vacant and the remedy sought by Psychology Shield does not even address that existing problem.

2. Psychology Shield's Reliance On CAPP v. Rank Is Misplaced.

Psychology Shield's arguments rest on the contention that *California Association of Psychology Providers v. Rank* (1990) 51 Cal.3d 1 ("*CAPP v. Rank*") authorizes psychologists to take primary responsibility for the admission, diagnosis, treatment and discharge of patients without restriction.

> "However, the [CAPP] court also noted that this responsibility 'must, of course, be exercised consistent with all other statutes when they apply in a given circumstance…. (*Id.* at pp. 21-22, fn 14.)" (*Ford v. Norton* (2001) 89 Cal.App.4th 974, 982.)

---

[1] Psychology Shield Amicus Brief, p.1, lines 23-25.
[2] Psychology Shield Amicus Brief, p.4, lines 10-14.

341872_1.DOC

- 3 -

Hence, psychologists must comply with existing law and may not act in ways otherwise prohibited by law.  The authority sought by Psychology Shield for psychologists to act without physician supervision violates existing law which, in many instances, was promulgated <u>after</u> the 1990 decision in *CAPP v. Rank*.  Examples of such laws prohibiting what Psychology Shield seeks follow.

    3. <u>The Relief Psychology Shield Seeks Violates the Law</u>.

      a. <u>Psychology Shield seeks authority to violate State law by authorizing psychologists to place a patient in restraints without a physician's involvement</u>.

California Health & Safety Code § 1180.4, which was enacted in 2003 (Cal. Statutes of 2003, chap. 750) thirteen years after *CAPP v. Rank* was decided, prohibits the use of physical or mechanical restraint on a hospital patient unless there has been an appropriate evaluation of whether the patient suffers from a "medical" condition which would "endanger" the patient "or seriously exacerbate" the patient's "medical condition".  (Cal. Health & Safety Code §1180.4, subd. (d).)  If the proposed restraint is a prone restraint it may not be used on a patient at risk for "positional asphyxiation" from any one of the following medical conditions – "Obesity"; "Pregnancy"; "Cocaine, methamphetamine, or alcohol intoxication"; "Pre-existing heart disease, including, but not limited to, an enlarged heart or other cardiovascular disorders"; and "Respiratory conditions, including emphysema, bronchitis or asthma."  (Cal. Health & Safety Code §1180.4, subd. (e).)  The limited license of a psychologist (Cal. Business & Professions Code §§2900 et seq.) does <u>not</u> authorize him or her to perform any of the medical evaluations required before a patient may be placed in restraint. Nevertheless, Psychology Shield wishes to have this Court authorize psychologists to order the restraint of a hospital patient <u>without</u> any medical evaluation.  *CAPP v.* Rank does not authorize such a result.

341872_1.DOC

- 4 -

**AMICUS BRIEF OF CALIFORNIA PSYCHIATRIC ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF AND IN RESPONSE TO AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD**

    b. <u>Psychology Shield seeks authority to violate State and federal law by authorizing psychologists to admit a patient for an emergency without a medical examination</u>.

  California Health & Safety Code §§1317, subd. (a) and 1317.1, subd. (a) require a screening "by" or "under the supervision of a physician" for emergency admissions to a hospital, including emergency admissions for a psychiatric condition. At a minimum, such a physician directed screening is required upon hospital admission to evaluate all emergency patients for non-psychiatric medical conditions. Federal law (42 U.S.C. § 1395 (a)) also requires that any individual who comes to a hospital emergency department and requests examination or treatment for a medical condition must be provided "an appropriate medical screening examination…to determine whether or not an emergency medical condition…exists." (Also see, 42 C.F.R. § 489.24 (a)(1).) "Psychiatric disturbances" may be emergency medical conditions. (42 C.F.R. § 489.24(b).)

  Notwithstanding the above California and federal law, Psychology Shield seeks to have this Court authorize psychologists to admit a patient to the hospital without the required medical screening examination by or under the supervision of a physician.

    c. <u>Psychology Shield seeks authority to violate State and federal law by authorizing psychologists to transfer and to discharge patients without a physician examination or evaluation</u>.

  California Health & Safety Code § 1262, subd. (a)(2) and California Welfare & Institutions Code §§ 5622, subds. (a)(2), (b), 5768.5, subd. (a)(2), which were enacted in 1997 (Statutes of 1997, chap. 512) seven years <u>after</u> *CAPP v. Rank* was decided, require that a mental health patient being discharged from a hospital must be given a written aftercare plan which identifies the patient's medications, including side effects and dosage schedules. A psychologist is not licensed to prescribe medication (Cal. Business & Professions Code § 2904) and, hence, not authorized to prepare such a required aftercare plan. Also, California Health & Safety Code § 1317.2, subd. (a) prohibits transfer of a person needing emergency psychiatric care unless, among other things, the patient "is examined and evaluated by a physician and surgeon, including, if necessary, consultation, prior to transfer." Federal

341872_1.DOC

- 5 -
**AMICUS BRIEF OF CALIFORNIA PSYCHIATRIC ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF AND IN RESPONSE TO AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD**

1  law (42 U.S.C. § 1395dd(c)(1)(A), 42 C.F.R. § 489.24(e)(1)) has similar requirements and requires that
2  a patient hospitalized for an emergency medical condition, including a psychiatric condition (42 C.F.R.
3  § 489.24(b)), may not be transferred, if the condition is not stabilized, unless a physician certifies in
4  writing that transfer is appropriate or unless the patient or a legally responsible person provides
5  informed consent.

6  Psychology Shield seeks to have this Court violate the laws described above by
7  authorizing psychologists to discharge and to transfer hospital patients without any physician evaluation
8  and without a physician provided medication aftercare plan for discharged patients on medication.

9          d.        <u>Psychology Shield seeks authority to violate federal law which requires</u>
10  <u>that physicians must be involved in the diagnosis and treatment of</u>
11  <u>hospitalized Medicare and Medicaid patients</u>.

12  Certain federal laws regarding the hospital treatment of Medicare and Medicaid
13  (MediCal) patients require that a physician certify the need for inpatient hospital services and the plan of
14  treatment. These laws are relevant since undoubtedly some members of the plaintiff class are covered
15  by Medicare or Medicaid.

16          i.        42 U.S.C. § 1396a(a)(44) requires that a physician must certify that
17  inpatient hospital services for Medicare patients including mental hospital services, "were
18  required…and…such services were furnished under a plan established and periodically reviewed and
19  evaluated by a physician…."

20          ii.        42 C.F.R. § 424.1(b)(1) requires "that a physician establish a plan
21  of treatment…" for Medicare patients.

22          iii.        42 C.F.R. § 424.10(a) requires "that a physician certify the
23  necessity of the services and, in some instances, recertify the continued need for those services."

24          iv.        42 C.F.R. §§ 424.13(a), 424.14(a) state that payment for hospital
25  treatment for a Medicare patient will occur "only if a physician certifies and recertifies" the need for
26  services.

Psychology Shield seeks to have the Court authorize psychologists to violate the above federal laws by permitting hospital treatment of Medicare and Medicaid patients to go forward without any medical evaluation and without any involvement or certifications by physicians.

4. <u>Psychology Shield's Requests To Authorize Psychologists To Control Patient Care Without Physician Supervision Endanger Patients</u>.

Under California law, psychologists are <u>not</u> permitted by their license to:

a. Diagnose or treat a medical illness or condition which is not psychological in nature (Cal. Business & Professions Code § 2903);[3]

b. Prescribe medication (Cal. Business & Professions Code § 2904);[4]

c. Write seclusion and restrain orders in hospitals (Cal. Health & Safety Code §§ 1180.4, subds. (d), (e); or

d. Order or interpret tests which involve piercing of a patient's skin (59 Ops.Cal.Atty.Gen. 112, 115 (1976); Cal. Business & Professions Code § 2903.1).

These limitations in the license of a psychologist flow from the limited education required to be granted such a license. A psychologist requires little education in biologic science and receives no medical training, needs to possess a doctorate degree in psychology or an "equivalent" doctorate and to have at least two years of supervision by a licensed psychologist.[5] A psychologist must also have "two years clinical experience in a multidisciplinary facility" which is not necessarily a

---

[3] Also, see 66 Ops.Cal. Atty. Gen. 302, 308-309, fn. 10 (1983) [The Legislature never "intended the practice of licensed psychology to include the diagnosis and treatment of. . . physical or organic disorders" and only "a physician. . . has the wherewithal. . . to diagnose the problem and to plan a course of treatment accordingly."] Opinions of the California Attorney General, while not binding, are entitled to great weight. (*State of California ex. rel. State Lands Com. v. Superior Court* (1995) 11 Cal.4th 50, 71; *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829.)

[4] 85 Ops.Cal.Atty.Gen. 247, 253 (2002) clearly establishes that this prohibition of psychologist prescribing is proper because psychologists are <u>not</u> trained to prescribe and lack the particular expertise and training in prescribing possessed by psychiatrists.

[5] Cal. Business and Professions Code Section 2914.

341872_1.DOC

- 7 -

hospital.[6] Psychologists are encouraged to take coursework in pharmacology, but are not required to do so.[7] Nevertheless, psychologists may not assume responsibility for medical diagnosis and treatment.[8]

Lacking training in medicine or neurology, it is not surprising that psychologists who authored one study recognize diagnostic shortcomings of psychologists:

> "Doctoral programs in psychology generally do not include training in the recognition of neurological disorders. Thus psychologists would most likely fail to recognize underlying neurological disorders in patients seeking psychotherapeutic treatment." (Sbordone & Rudd, Can Psychologists Recognize Neurological Disorders in Their Patients?, 8 Journal of Clinical and Experimental Neuropsychology 285, 286 (1986).)

The importance of medical training in diagnosing a patient presenting with symptoms of mental illness is dramatically illustrated by an article from the New York Times Magazine (May 29, 2005, pp. 23-24 "•Facial tic•Weight loss•Delusion" by Lisa Sanders, M.D., a true copy of which is attached hereto as Exhibit "4". The article discusses the diagnosis and successful treatment of a 38 year old manic male patient suffering from back pain who was delusional claiming to be a famous singer. the patient said "he rarely drank and he had never used drugs." (*Id.* at p. 23.) The physicians examining the patient "would not be able to make a diagnosis based on . . . history alone. They needed to examine the patient; they needed blood for tests." (*Id.* at p. 24.) Medical knowledge and tests were necessary to diagnose and treat this patient.

> "The man was clearly manic. His energy was frantic; he couldn't eat or sleep. Words poured out of his mouth like water from a high-pressure hose. But what was causing it? Drugs – crack or methamphetamines – were probably the most common cause of such mania, but the patient denied any drug use. Abnormalities in his body chemistry – too much thyroid hormone, too little sodium – can also change the way the brain works. Or was this really a psychiatric disease? Could it be the first manifestation of bipolar disease – the manic phase of manic-depression? He was a little too old for that. Bipolar disease and schizophrenia typically appear in late adolescence or early adulthood and often run in families. Or was it a disease of the brain? Organic brain disease can mimic mental illness but often reveals itself in characteristic findings on physical examination." (*Id.*)

---

[6]    Cal. Health and Safety Code section 1316.5.

[7]    Cal. Business and Professions Code Sections 2914.1, 2914.2, 2914.3.

[8]    See footnote 3, *supra*.

341872_1.DOC

The article graphically illustrates the need for medical training and tests to diagnose and treat patients who present with symptoms of mental illness. Ultimately, a blood test confirmed a diagnosis of Huntington's disease – a hereditary illness. The patient was treated with "antipsychotic drugs, and soon the paranoia and delusions began to subside." (*Id.*) The patient was discharged from the hospital.[9] This case vividly shows the need for medical psychiatric expertise to diagnose and treat patients hospitalized for mental illness using medical techniques, medical tests and drugs, all of which are <u>beyond</u> the license of a clinical psychologist.

In light of these deficiencies in education and training, it is understandable that the law limits the scope of practice of psychologists in diagnosing and treating hospitalized patients suffering from serious mental illness in ways which require denial of the authority Psychology Shield seeks for psychologists.

Nevertheless, Psychology Shield asks the Court to authorize psychologists to act beyond the limits of their licensure. Several examples prove this point.

How can a psychologist who is not licensed to diagnose or treat nonpsychological medical illness, exercise the authority requested by Psychology Shield to diagnose and decide whether to admit or discharge patients from a hospital when well documented scientific research establishes that nonpsychological medical illness which is beyond a psychologist's licensure is often interwoven with apparent psychological illness? Repeated scientific studies establish that:

   i.   Nonpsychological medical illnesses are often associated with mental illness.[10]

---

[9]   Unfortunately after discharge, the patient stopped taking his medications "as if he preferred his delusions to the reality of living with Huntington's disease" and became delusional again. (*Id.*)

[10]   Saari, et al., <u>A 4-Fold of Metabolic Syndrome in Patients With Schizophrenia:  The Northern Finland 1966 Birth Cohort Study</u>, 66 J. Clin. Psychiat. 559 (May, 2005) [Schizophrenia is associated with a shortened life expectancy and increased somatic comorbidity, including cardiovascular disorders]; Salsberry, et al., <u>Use of General Medical Services Among Medicaid Patients With Severe and Persistent Mental Illness</u>. 56 Psych. Services 459 (April, 2005) [Persons with severe mental illness use general medical services at high rates when compared with the populations at large and underuse screening tests for medical illness]; Jones, et al., <u>Prevalence, Severity and Co-occurrence of Chronic Physical Health Problems of Persons With Serious Mental Illness</u>. 55 Psych. Services No. 11 (Nov., 2004) [74% of the study sample of patients with serious mental illness are diagnosed with at least one chronic health problem and 50% are diagnosed with two or more chronic health problems]; Simon, et al., <u>An International Study of the Relation Between Somatic Symptoms and Depression</u>, 341 New Eng. J. of Medicine 1329 (1999); Sternberg, *Testing for Physical Illness in Psychiatric Patients*, 47 J. Clin. Psychiat. 1 (Supp. 1986) [Lists the following as physical causes frequently associated with depression -
341872_1.DOC

**AMICUS BRIEF OF CALIFORNIA PSYCHIATRIC ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF AND IN RESPONSE TO AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD**

     ii. Well over half of the patients with serious mental illness also suffer from nonpsychological illness and such illness is often undiagnosed.[11]

     iii. Nonpsychological medical illnesses often manifest themselves as psychological disease or symptoms and go untreated if not diagnosed.[12]

     iv. Sometimes psychological illness exhibits itself as symptoms of other medical illness.[13]

     v. Sometimes a medication a patient is taking for a nonpsychological medical illness causes or amplifies symptoms of mental illness.[14]

---

hyperthyroidism, hypothyroidism, Addison's disease, Cushing's disease, diabetes, hyperparathyroidism, hypoglycemia, influenza, hepatitis, viral pneumonia, carcinoma of the head and pancreas, Parkinson's disease, cerebral arteriosclerosis, senile dementia, normal pressure hydrocephalus, focal lesions of the nondominant lobe, subarachnoid hemorrhage, postsurgical procedures, and metal intoxications with thallium and mercury]; Adler & Griffith, <u>Concurrent Medical Illness in the Schizophrenic Patient</u>, 4 Schizophr. Res., 91 - 106 (Mar. - Apr. 1991); Koran, Sox, et al., <u>Medical Evaluation of Psychiatric Patients</u>, 46 Arch. Gen. Psychiat, 733 - 740 (1989);A.J. Giannini, et al., Psychiatric, Psychogenic and Somatopsychic Disorders Handbook 35-36 (1978), [Lists 91 different physical illnesses that may present as depression]; Hall, et al., <u>Physical Illness Manifesting as Psychiatric Disease</u>, 37 Arch.Gen.Psychiat. 989, 992 (1980) [Symptoms in schizophrenic patients, such as delusions or hallucinations, may be caused by physical illnesses, including folic acid deficiency, hepatitis, Wilson's disease, hypoglycemia, hyperthyroidism, hypothyroidism, severe anemia, syphilis, cardiac arrhythmia, diabetes mellitus, epilepsy, essential hypertension, Pick's disease, Addison's disease, arsenic poisoning, anemia and malnutrition.]

[11] Jones, et al., *supra*, 55 Psych. Services No. 11 [74% of the study sample of patients with serious mental illness are diagnosed with at least one chronic health problem and 50% are diagnosed with two or more chronic health problems]; Proctor, et al., <u>Comorbid Medical Conditions Among Depressed Elderly Patients Discharged Home After Acute Psychiatric Care</u>, 11 Am. J. Geriatr. Psychiatry 329 (May-June, 2003) [Study of 195 older patients discharged home after hospital treatment for depression finds almost 75% of patients had at least one comorbid medical condition requiring treatment, nearly 50% had two such conditions and 25% had three or more such conditions]; Reeves, et al., <u>Unrecognized Medical Emergencies Admitted To Psychiatric Units</u>, 18 Am. J. Emerg. Med. 390 (July, 2000) [Review of 64 patients with unrecognized nonpsychiatric medical emergencies who were admitted to psychiatric units]; Hall, et al., *supra*, 37 Arch. Gen. Psychiat. 989, 991 [In this study 80% of psychiatric patients suffered from previously undetected physical illnesses requiring medical intervention, and 46% of the patients had unrecognized medical illnesses that caused or exacerbated their psychiatric symptoms]; Koranyi, <u>Morbidity and Rate of Undiagnosed Physical Illness in a Psychiatric Clinic Population</u>, 36 Arch. Gen. Psychiat. 414, 415 (1979) [In a study of 2,090 psychiatric clinic patients, 43% suffered from major medical illnesses, and close to half of these medical illnesses were undiagnosed by the referring sources; 69% of the medical illnesses contributed considerably to the patient's psychiatric condition].

[12] Kaplan & Sadock, Synopsis of Psychiatry, (8th ed. 1998) ch.7 at p. 256 ["Thyroid disease and other endocrinopathies may appear as mood disorder; cancer or infectious disease, as depression; infection and connective tissue diseases, as short-term changes in mental status."]; A.J. Giannini, et al., *supra*, 35-36; Hall, et al., *supra*, 37 Arch. Gen. Psychiat. 989, 991, 992; Hall & Beresford, <u>Psychiatric Manifestations of Physical Illness</u> in 2 Psychiatry, ch.88, pp. 2-4 (R. Michels, et al., eds., rev. ed. 1988).

[13] Goldberg & Bridges, <u>Somatic Presentations of Psychiatric Illness in Primary Care Setting</u>, 32 J. Psychosom, Res. 137 (1988); Bridges & Goldberg, <u>Somatic Presentations of DSM III Psychiatric Disorders in Primary Care</u>, 29 J. Psychosom.Res. 563 (1985).

[14] Bremmer, et al., <u>Functional Brain Imaging Alterations In Acne Patients Treated With Isotretinoin</u>, 162 Am. J. Psych. 983 (May, 2005) [4 month treatment trial with isotretinoin for acne was associated with a decrease in brain function in the brain region implicated in depression and reinforces case reports of depression developing in conjunction with isotretinoin

341872_1.DOC

The nonpsychological medical complexities described above limit the competency of psychologists, since they lack medical training, justify the limitations in their licensure, and establish that the remedies sought by Psychology Shield would endanger patients.

## IV. CONCLUSION.

For the foregoing reasons, CPA respectfully requests that the Court take the emergency action requested by plaintiffs and reject any relief which authorizes psychologists to diagnose or treat members of the plaintiff class without physician supervision.

Dated: May 16, 2007            NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
                                                DANIEL H. WILLICK
                                                JOHN T. KENNEDY
                                                PAUL A. HEMESATH


                                    By:    /s/ Paul A. Hemesath
                                                PAUL A. HEMESATH
                                                Attorneys for Amicus Curiae
                                                California Psychiatric Association

---

treatment and resolving on discontinuation of the medication.]
341872_1.DOC

- 11 -
**AMICUS BRIEF OF CALIFORNIA PSYCHIATRIC ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF AND IN RESPONSE TO AMICUS CURIAE BRIEF OF PSYCHOLOGY SHIELD**