ANNE M. GIESE (SBN No. 143934)
ROCCO R. PATERNOSTER (SBN No. 198058)
SEIU Local 1000
1808 14th Street, Bldg. 1
P.O. Box 160005
Sacramento, CA 95816-0005

Telephone:  (916) 554-1279
Facsimile:  (916) 554-1272

Attorneys for Amicus, SEIU LOCAL 1000

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., | CASE NO. CIV S 90-0520 LKK-JFM |
| Plaintiffs, | *AMICUS CURIAE* BRIEF OF SERVICE EMPLOYEES INTERNATIONAL, LOCAL 1000 IN SUPPORT OF PLAINTIFF'S MOTION FOR EMERGENCY RELIEF REGARDING DEFENDANTS' DENIAL OF ACCESS TO INPATIENT PSYCHIATRIC BEDS IN DMH'S STATE HOSPITALS. |
| vs. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |
| | DATE: May 21, 2007<br>TIME: 10:00 a.m.<br>COURTROOM: 4<br>JUDGE: Honorable Lawrence K. Karlton |

## I.

## INTRODUCTION

Service Employees International Union, Local 1000 ("SEIU") submits this *amicus curiae* brief in support of Plaintiff's motion for emergency relief regarding Defendants' denial of access to impatient psychiatric beds in Department of Mental Health's ("DMH") state hospitals. SEIU prays this Court take all steps necessary to rectify the increasingly inadequate and unsafe conditions to which patients at DMH facilities are subjected. Patient safety cannot improve unless the exodus of DMH staff to higher salaried positions at Department of Corrections and Rehabilitation is

1   Civ S 90-0520 LKK-JFM
*AMICUS CURIAE* BRIEF OF SERVICE EMPLOYEES INTERNATIONAL, LOCAL 1000
IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY RELIEF

rectified by prompt and immediate action. Patient safety and stemming the exodus of health care professionals can only be accomplished through achieving equity in pay between CDCR level of care professionals and DMH level of care professionals.

## II.

## PLAINTIFF'S REQUEST FOR EMERGENCY RELIEF IS APPROPRIATE

The evidence submitted to this Court by the parties illustrates the critical staffing shortage at DMH facilities providing treatment to CDCR inmates. DMH staffing shortages and the negative effect on patient care has been exacerbated and made exponentially worse due to the disparity in pay between staff providing services to CDCR inmates at CDCR facilities and those providing services to CDCR inmates at DMH. The disparity in pay and the resulting exodus of clinicians and other staff from DMH to CDCR has a devastating effect on patient care at DMH, as well as on SEIU members working in DMH facilities. These effects include untenable staff workloads, disproportionate overtime compensation due to staff shortages and failure to recruit and retain competent staff. These effects endanger mentally ill prisoners in DMH facilities and render adequate patient care an impossibility.

As a result of the staff shortages, *Coleman* class members are unable to receive adequate care, and the emergency relief requested by Plaintiffs is appropriate. In addition, the various attempts by the state to resolve this longstanding issue, including its current plan to address staffing vacancies within DMH, have not been in good faith, lack merit and show their unwillingness and reticence to fully resolve the issues before the Court. For these reasons, SEIU prays that this Court bring DMH staff salaries into parity with those at CDCR.

## III.

## STAFF SALARY PARITY BETWEEN CDCR AND DMH IS NECESSARY
## TO ADDRESS STAFFING VACANCIES AND IMPROVE PATIENT CARE IN DMH

A.  **This Court Should Order Salary Increases Due to Defendant's Failure to Negotiate Salary in Good Faith**

On March 21, 2007 California Governor Arnold Schwarzennegger addressed the exodus of employees from DMH by ordering $43 million in pay raises over a two year period. On March 22,

2007, Melvin Hunter, J.D., M.P.A. Executive Director of Atascadero State Hospital issued a memorandum informing DMH employees of the Governor's plan to raise salaries at DMH. Hunter stated that the effective date of the increase would be April 1, 2007 and that the increases for Medical Director and Senior Psychologist would be 5% less than the *Coleman* maximum and other *Coleman* related classifications would have a maximum salary rate of 18% less than the *Coleman* maximum.

On March 28, 2007, at the Union's request, the Union met with the California Department of Personnel Administration ("DPA") to discuss pay equity for DMH classifications. DPA provided the Union information titled, "Proposed *Plata* Equity at 18% less" for DMH and discussed fifteen DMH classifications to be affected. The parties agreed to re-schedule another meeting on April 17, 2007 to continue discussions on addressing salary equity increases for Union represented job classifications at DMH. However, on April 16, 2007 DPA unilaterally cancelled the planned meeting. DPA and the Union have again rescheduled a meeting to discuss salary equity increases for Union represented job classifications at DMH. That meeting is to take place on May 31, 2007. (*See*, Declaration of Cliff Tillman ("Tillman Decl."), p. 1, ln. 25-p. 2, ln. 6.) However, on May 16, 2007, SEIU was informed that the State's negotiator that DPA is backing off prior salary equity discussions and will not discuss specific numbers or proposals at the May 31, 2007 meeting. (Tillman Decl., p. 2, ln.7-13.)

The inability of the *Coleman* defendants to develop an implement solutions let alone even consolidate a unified position on the issues presented by Coleman, including salary equity, necessitates this Court's action to achieve parity between CDCR and DMH salaries. Defendant's Budgeted Staffing Plan to Fill Vacancies contained within their May 15, 2007 Plan To Address Staffing Vacancies states,

> The fiscal request allows DMH to recruit and hire into these vacant positions at the new salary ranges once negotiations are completed and Department of Personnel Administration provides salary range information via pay letters. ( Defendant's Plan, p. 3)

While SEIU is currently involved in negotiations with the State over DMH salaries, due to State paralysis in this process, it is unable to reach any expeditious resolution. The only timely means

SEIU Local 1000
1808 14th Street, Bldg. 1
Sacramento, California 95814-7131
Telephone: (916) 554-1279

and resolution to achieve parity and end the hemorrhaging of staff is action by this Court.

### B. RAISING DMH SALARIES INTO PARITY WITH CDCR WILL ATTRACT QUALIFIED AND COMPETENT APPLICANTS

DMH's ability to hire and retain qualified individuals is dependent primarily, if not entirely, on competitive compensation and salary parity with CDCR. Moreover, the notion of altering California's civil service merit system to avoid salary parity is doomed to failure. Salary parity is the first and most important factor to attract and retain quality qualified staff to DMH. Civil service and merit system principles are founded in the California Constitution, Article VII, section 1, subdivision (b) of the California constitution states:

> In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination.

Those applying for civil service positions must sit for a competitive examination. Applicants are ranked according to their performance on the exam with those with the highest scores ranked accordingly, and only those in the top three ranks may be considered for employment. (California Government Codes section 19057.1; *see also*, *Kidd v. State* 62 Cal. App. 4th 386, 393 (1998).)

The Constitutional merit principle and the established state service system allow for the most competent and qualified applicants to be placed in employment with DMH. Avoiding the merit system or "compressing' the hiring ranks from six (6) to three (3) can only detrimentally effect the quality of services provided to Coleman class members by DMH. This is equally true to the use of registry employees or by way of contracting out state civil service positions. These actions violate the state civil service mandate and have been found to be ineffective, inefficient and unduly costly when put into practice.

The only solution is to increase the applicant pool of qualified and competent applicants for state civil service positions by raising salaries into parity with those at CDCR.

///

///

///

SEIU Local 1000
1808 14th Street, Bldg. 1
Sacramento, California 95814-7131
Telephone: (916) 554-1279

### C. CURRENT JOB MARKETS ARE SUFFICIENT TO FILL DMH VACANCIES

Establishing pay parity with CDCR healthcare professionals will increase the applicant pool and allow the filling of vacancies of level of care employees. For SEIU represented level of care employees at DMH, the aggregate vacancy rate is 20% for Medical Transcriber, Health Records Technician I, Health Records Technician II (Specialist), Pharmacy Technician (DMH, DDS), Pharmacy Technician, Radiologic Technologist (Safety), Senior Radiologic Technologist (Specialist), Registered Nurse (Safety), Surgical Nurse I (DMH, DDS), Nurse Instructor, Public Health Nurse 2, Public Health Nurse I, Licensed Vocational Nurse (Safety), Public Health Nurse I (DMH, DDS), and Nurse Practitioner (Safety). According to the State Controller's Office reports in its "March Vacancy Report," that 335.15 vacancies exist in the 15 foregoing classes at DMH. (Rounds Decl., p. 2, l. 9-15.)

The increased salary costs that would accrue by granting pay parity pale by comparison to the damage caused by allowing the vacancies to continue. For example, if the court ordered raises to the foregoing classes using the rates granted by the Federal Receiver to similar classes at the CDCR, the cost would range between only $7.7 million and $36.1 million dollars per year, depending on the assumptions made about vacancy rates. If all vacancies in DMH were filled (each at the top of the new pay scales created by the receiver at CDCR) the annual salary cost of pay parity would amount to $36.1 million. If none of the vacancies were filled, the annual salary cost would be $7.7 million just to give incumbents in the foregoing classes the pay raises received by their counterparts at CDCR and stem the tide of departures. (Rounds Decl., p. 2, l. 20-25.)

Ample wage data supports the proposition that increased pay at DMH would attract and retain workers. According to the Bureau of Labor Statistics, California has 234,260 Registered Nurses, 14,950 Radiological Technicians, 23,360 Pharmacy Technicians, 56,170 LVNs, 13,490 Health Records Technicians, 96,820 CNAs or workers in CNA-related classes, and 6,690 Medical Transcribers. Thus the California labor market possesses enough workers in the relevant classes to fill the 335.15 vacancies alluded to earlier; however effective recruitment requires these workers to be paid competitive salaries. (Rounds Decl., p. 2, l. 14-15.)

SEIU Local 1000
1808 14th Street, Bldg. 1
Sacramento, California 95814-7131
Telephone: (916) 554-1279

Although SEIU bases this analysis on available date in the level of care classifications it represents. Unfortunately, SEIU is unable to ascertain the position of the Defendants. The Defendants' state budgetary information, the fluid position of DPA, and the overall vagueness of its information submitted to the Court, makes a specific analysis of their proposals impossible. The lack of specificity in Defendant's proposals suggest to SEIU that the only valid remedy to the *Coleman* issues, including salary parity to CDCR, is intervention by this Court through an order achieving salary parity.

## III.

## CONCLUSION

For the reasons stated herein, as well as those set forth in Plaintiff's pleadings in support of its motion for emergency relief regarding Defendant's denial of access to inpatient psychiatric beds in DMH state hospitals and as addressed by other *amicus curiae*, SEIU respectfully urges this Court make DMH level of care staff salaries commensurate with those at CDCR.

DATED: May 18, 2007                                    SEIU Local 1000

By_____
ROCCO R. PATERNOSTER
Attorney for Amicus SEIU Local 1000