Andrew J. Kahn, SBN 129776
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415-597-7200
Fax:          415-597-7201
Email:       ajk@dcbsf.com

Attorneys for *Amicus* Union of American Physicians and Dentists

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.<br><br>            Plaintiffs,<br><br>     vs.<br><br>ARNOLD SCHWARZENEGGER, et al.<br><br>            Defendants. | CASE NO. CIV S 90-0520 LKK-JFM<br><br>***AMICUS CURIAE* BRIEF OF UAPD IN SUPPORT OF PLAINTIFFS' MOTION AND IN OPPOSITION TO REQUESTS OF PSYCHOLOGY SHIELD**<br><br>Date: May 21, 2007<br>Time: 10am<br>Ctrm.: 4 |

### I. PLAINTIFFS' REQUESTS FOR PAY PARITY AND RECRUITMENT EFFORTS SHOULD BE GRANTED

*Amicus* Union of American Physicians and Dentists (UAPD) supports Plaintiffs' Motion. Increasing DMH salaries to the new CDCR levels is absolutely necessary to retain and recruit at DMH. This Court now has jurisdiction over DMH as an entity, and this Court's jurisdiction is not limited to particular DMH facilities, even if those do not currently serve prisoners. See, e.g., Triton Container Intern. Ltd. v. Di Gregorio Navegacao LTDA, 440 F.3d 1137, 1138 (9th Cir. 2006)("a federal district court with jurisdiction over particular parties has the power to enjoin them from proceeding with a foreign action to litigate the same issues")(citing Seattle Totems Hockey Club, Inc. v. NHL, 652 F.2d 852, 855 (9th Cir.1981).

1    Physician desertion of DMH for much-superior salaries elsewhere has both direct
2 and indirect impacts on the care provided CDCR inmates. At three facilities DMH
3 provides inpatient mental health treatment to CDCR inmates: Atascadero, Coalinga and
4 Patton. These CDCR inmates are provided mental health treatment pursuant to Penal
5 Code §2684, and are commonly referred to as the 2684 patients. While these three
6 facilities treat patients other than 2684 patients, the treatment these facilities can provide
7 2684 patients is directly related to the clinician staffing levels at these facilities. At all
8 three facilities the entire mental health clinician staff is qualified to treat 2684 patients
9 and can be called upon at any time to provide treatment to a 2684 patient. At Patton, the
10 staff regularly assigned to treat 2684 patients simultaneously treats other patients as well.

   Metropolitan currently does not serve CDCR inmates directly, but it does so
<u>indirectly</u>, because if the staffing level there shrinks beyond its current depressed level,
this facility will soon be unable to provide treatment to ordinary DMH patients and then
will have to transfer them to DMH facilities now serving CDCR inmates. The mere
process of such transfers will burden an already-overburdened staff, let alone the task of
caring for the transferred patients. Thus DMH's failure at <u>any</u> of its facilities to match
CDCR salaries will injure CDCR inmates covered by this Court's orders.

## II. PSYCHOLOGY SHIELD'S ATTEMPT TO SIDETRACK THIS CASE WITH ITS TURF WAR SHOULD BE REJECTED

   Psychology Shield's effort to inject the issue of the practice scope of psychologists versus psychiatrists should be rejected by this Court as premature, procedurally improper, and not in patients' best interests.

   It is premature because much of the staffing problem used by Shield as a pretext for its request is likely to be solved by the other measures requested by Plaintiffs. <u>See</u> Groh Declaration filed herewith as to the impact of higher salaries on recruiting.

   Shield's request is procedurally improper because an amicus is not normally permitted to seek a different sort of injunctive relief (on a different theory) than the

parties to the case. Formal intervention as a party is required instead. <u>See, e.g.</u>, <u>Swan v. Peterson</u>, 6 F.3d 1373, 1383 (C.A.9 1993) ("Generally, we do not consider on appeal an issue raised only by an amicus. [citing cases and adhering to general rule]." This general rule is especially proper to apply here given that the relief requested would adversely impact UAPD's members yet has been requested without direct notice to UAPD on exceptionally-short notice. UAPD only discovered the evening of May 16th that such a request was filed, but the hearing is May 21st.

Changes in professional practice cannot be made under state law without consultation with the affected practitioners. State and federal law requires that medical staffs be self-governing with respect to the professional work performed in the facility. Bus & Prof. Code section 2282; 42 CFR 482.12. The Dills Act like other collective bargaining laws gives these union-represented psychologists and psychiatrists the right to bargain over workload decisions and the impact of assignment decisions before such decisions are implemented. <u>See, e.g.</u>, <u>Fire Fighters Union v. City of Vallejo</u> (1974) 12 Cal.3d 608, 619-620, 526 P.2d 971; <u>Los Angeles County Employees Assn. v. County of Los Angeles</u> (1973) 33 Cal.App.3d 1, 5-8.

Bargaining over the proposed changes has not been attempted here, and therefore bargaining itself cannot be viewed as any obstacle to providing quality care to prisoners.

Unilateral judicial imposition of such changes would only worsen morale in the Department, and thus worsen the recruitment and retention situation.

Finally, but most importantly, the goal of all involved here should be to have these patients cared for by the most-skilled professionals as possible. It simply cannot be disputed that many (probably the vast majority) of these patients require medication and have medical conditions. Assigning evaluations exclusively to psychologists initially as Shield proposes would mean in many cases that psychiatrists would have to re-do evaluations in order to prescribe medicine. Talk therapies are difficult to accomplish in this institutional setting. Medications have proven of late increasingly effective in treating psychological conditions.

UAPD obviously has not been given sufficient time to present here all of the legal and practical problems with Shield's requests, so no judicial action should be taken on those requests without affording UAPD such opportunity.

### III. CONCLUSION

This Court is entitled to ignore amicus Shield's requests for a different form of injunctive relief based upon different theories than Plaintiffs raised. This Court should do so. Shield can instead pursue these claims at a later date (and without violating the basic principles of providing reasonable notice and opportunity to respond).

Dated: May  18 , 2007          Respectfully submitted,

DAVIS, COWELL & BOWE, LLP


By:    s/s Andrew J. Kahn            _
Attorneys for *Amicus* Union of American Physicians and Dentists

595 Market Street, Suite 1400
San Francisco, CA  94105
Tel:  415-597-7200; Fax:  415-597-7201
Email:  ajk@dcbsf.com