1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11               Plaintiffs,            No. CIV S-90-0520 LKK JFM P

12        vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,

14

15               Defendants.            ORDER
     _____/

16               Plaintiffs are a class of state prisoners with serious mental disorders proceeding

17   through counsel in the remedial phase of this class action lawsuit.[1]  On March 23, 2007, plaintiffs

18   filed a motion for emergency relief regarding access for class members to inpatient psychiatric

19   beds in state hospitals run by the California Department of Mental Health (DMH) for class

20   members in need of such care.[2]  The motion came on for hearing initially on April 23, 2007.

21   _____

22        [1]  By order filed September 13, 1995, this court found defendants in violation of the
     Eighth Amendment with respect to the provision of constitutionally adequate mental health care
23   to inmates incarcerated in the California Department of Corrections, now know as the California
     Department of Corrections and Rehabilitation (CDCR).  On December 11, 1995, this court
24   appointed J. Michael Keating, Jr. as special master to oversee the development of remedies for
     the systemic constitutional violation and to monitor implementation of court-approved remedies.
25   The action has been in the remedial phase for almost twelve years.

26        [2]  On 6/28/06, the director of the Department of Mental Health (DMH), in his official
     capacity, was joined as a defendant in this case.

1

Following said hearing, the matter was continued to May 21, 2007.  (Order filed April 25, 2007, at 2.)  In the same order, defendants were ordered to file, on or before May 16, 2007, a plan for addressing the staffing vacancies that affect class members in this action and an evaluation of the efficacy of the plan.  (Id. at 3.)

Defendants timely filed a response to the April 25, 2007 order.  Thereafter, the matter came on for further hearing on May 21, 2007.  Amy Whelan, Esq. appeared and argued the matter as counsel for plaintiffs.  Lisa Tillman, Deputy Attorney General, appeared and argued the matter as counsel for defendants.

By the instant motion, plaintiffs seek a series of orders from this court designed to remedy the significant deficiencies in access to inpatient hospital beds for class members.  There are three levels of inpatient care provided to class members.  Mental health crisis beds (MCHBs) are designed to provide, generally within CDCR prisons, short-term[3] acute care for inmates with "acute symptoms of a serious mental disorder or suffering from significant or life threatening disability."  (Brewer Letter, at 1.)  Acute psychiatric inpatient beds (APPs) are designed to "fully remit or significantly reduce the symptoms of a presenting psychiatric illness" with an anticipated length of stay of 30-45 days.  (Id.)  Finally,  intermediate care facilities (ICFs) are intended for inmates whose mental illness requires longer inpatient hospitalization.  The record before this court shows that defendants do not have enough acute psychiatric beds to meet the needs of class members[4], and that severe staffing shortages at Atascadero State Hospital (ASH) are rendering

---

[3]  MHCBs are intended for stays of ten days or less.  (Letter dated April 6, 2007 from Victor F. Brewer, Executive Director, California Department of Mental Health, to J. Michael Keating, Jr., Special Master (Brewer Letter), attached as Exhibit 1 to Special Master's May 1, 2007 Supplemental Report and as Exhibit D to Supplemental Declaration of Jane E. Kahn, filed May 18, 2007 (Supplemental Kahn Declaration), at 1.)

[4]  The Navigant Study completed in June 2006 and approved by this court on October 20, 2006 projected a need for 203 acute psychiatric inpatient beds for this year.  (Special Master's Supplemental Report on the Status and Sufficiency of Defendants' Interim and Long Term Plans for the Provision of Acute and Intermediate Inpatient Beds and Mental Health Crisis Beds, filed September 11, 2006, at 7 (Special Master's September 11, 2006 Report); see also Ex. A thereto, at 10.)

1 /////

2 unavailable at least 151 of the 231[5] intermediate care beds that are supposed to be available to

3 CDCR inmates in need of intermediate inpatient care at ASH.[6]  The consequences of an

4 insufficient numbers of intermediate care beds include, but are not limited to, the use of MCHBs

5 and/or acute psychiatric beds for inpatient stays far in excess of that for which those beds were

6 intended.  (See, e.g., Exs. A and B to Supplemental Kahn Declaration.)  As of May 2, 2007,

7 defendants were reporting 56 inmates on the wait list for intermediate care beds, 50 inmates on

8 the wait list for acute psychiatric beds, and 15 inmates on the wait list for the most urgent level of

9 care, the MCHBs.  (Ex. F to Supplemental Kahn Declaration, at pages 3-4 of 6.)[7]

10        Plaintiffs propose a series of remedial measures to address the shortfall in

11 intermediate inpatient care beds, including, inter alia, orders requiring pay parity for DMH

12 clinicians and other DMH staff providing services to CDCR inmates in all DMH-run programs,

13 an order requiring DMH to broaden their recruitment efforts, and an order requiring defendants

14 to accelerate the opening of the final unit at Salinas Valley State Prison.

15

16        [5]  See Special Master's Report and Recommendations on Defendants' December 2006
Mental Health Bed Plan, at 6 (setting forth the number of beds for CDCR inmates presently
17 operated at DMH hospitals).

18        [6]  The staffing shortages at ASH also threaten the number of MCHBs available to class
members.  The special master has recommended that a swap of twenty-five acute inpatient beds
19 at California Medical Facility (CMF) for twenty-five MCHBs at ASH, approved by this court in
October 2006 subject to monitoring by the special master, be reversed.  (Special Master's
20 Supplemental Report, filed May 1, 2007.)  On May 15, 2007, defendants filed a response and
objections to the special master's May 1, 2007 recommendation, in which they state, inter alia,
21 that the recommendation that 25 MCHBs be implemented at ASH will be followed "subject to
the availability of staff."  (Defendants' Responses and Objections to Special Master's Report Re:
22 CMF/ASH Swap Plan, at 2.)  At the May 21, 2007 hearing on plaintiffs' motion for emergency
relief, counsel for defendants reiterated anticipated problems with staffing 25 MCHBs at ASH if
23 the swap is reversed.  The special master's May 1, 2007 recommendation will be addressed by
separate order.
24

25        [7]  These wait list statistics may only tell part of the story, as the Department of Mental
Health reports no inmates on the waiting list for beds at ASH, but also reports that "[t]he 7
patients currently on the data base have been transferred to other locations" and "[a]dmissions are
26 restricted."  (Ex. F to Supplemental Kahn Declaration, at page 4 of 6.)

1  /////

2        On December 15, 2006, the court approved the defendants' plan for salary

3  increases for mental health clinicians employed by CDCR.  (Order, filed December 15, 2006.)

4  On January 17, 2007, defendants represented that the increase in pay would also be given to

5  mental health clinicians employed by DMH who are providing care to CDCR inmates in DMH

6  programs at CDCR prisons.  (Defendants' Response to Plaintiffs' Response to Special Master's

7  Sixteen Monitoring Report and Request for Additional Orders, filed January 17, 2007, at 4 and

8  Ex. A.)  The increase in pay was not, however, afforded to mental health clinicians employed by

9  DMH who are providing care to CDCR inmates in DMH programs at DMH hospitals.

10        It is apparent to this court that steps must be taken immediately to remedy the

11  staffing shortage at ASH, at least insofar as that staffing shortage affects members of the plaintiff

12  class, and to make the full complement of 231 intermediate care beds available to members of

13  the plaintiff class forthwith.[8]  To that end, defendants will be given a period of three weeks to file

14  a plan for pay at parity with the pay scales approved by the court in its December 15, 2006 order

15  for all DMH psychiatrists, psychologists, licensed clinical social workers, and psychiatric

16  technicians providing care to members of the <u>Coleman</u> class at any state run facility, whether

17  such facility is a DMH hospital or a CDCR prison.  At the same time, defendants shall report to

18  the court on the feasibility of other options for forthwith remedying the limitation on admissions

19  to ASH caused by the staffing shortage, including but not limited to contracting with outside

20  psychiatrists and other necessary clinical staff to provide sufficient staffing for the 231

21  intermediate care beds at ASH.  Plaintiffs will be given one week to respond to the plan and

22  report required by this order.

23        At the time the plan for pay parity is filed, defendants shall file a report

24  identifying the job titles and number of staff members required, pursuant to applicable staffing

25  _____

26      [8]  This order will also apply to the 25 MHCBs to be reopened at ASH when the CMF/ASH swap is reversed.

4

1  ratios, to provide care to:  (1)  <u>Coleman</u> patients housed in 25 mental health crisis beds at

2  Atascadero State Hospital; (2)  <u>Coleman</u> patients housed in 231 intermediate care facility beds at

3  Atascadero State Hospital; (3)  <u>Coleman</u> patients housed in 50 intermediate care facility beds at

4  Coalinga State Hospital; (4)  <u>Coleman</u> patients housed in 30 acute and or intermediate care

5  facility beds at Patton State Hospital; (5)  <u>Coleman</u> patients housed in 5 intermediate care facility

6  beds at Napa State Hospital; (6)  <u>Coleman</u> patients housed in 5 intermediate care facility beds at

7  Metropolitan State Hospital; and (7)  Admission units at each state hospital that will accept

8  <u>Coleman</u> patients, if any.

9         Finally, defendants will be directed to file, concurrently with the pay parity plan

10  required by this order, a first monthly report of referrals, pending referrals, rejections, and

11  transfers, of inmates from any level of outpatient mental health care to any level of inpatient

12  mental health care, and from any level of inpatient mental health care to a different level of

13  mental health care.  (<u>See</u> Order filed March 12, 2007, at ¶ 3.)  Said report shall include a

14  complete list of all class members currently waiting for transfer to any level of DMH hospital

15  care.

16         In accordance with the above, IT IS HEREBY ORDERED that:

17         1.  Within three weeks from the date of this order, defendants shall file with the

18  court a plan to provide pay at parity with the pay scales approved by the court in its December

19  15, 2006 order for all DMH psychiatrists, psychologists, licensed clinical social workers, and

20  psychiatric technicians providing care to members of the <u>Coleman</u> class at any state run facility,

21  whether such facility is a DMH hospital or a CDCR prison institution.

22         2.  Within three weeks from the date of this order, defendants shall consider and

23  report to the court on the feasibility of other options for forthwith remedying the limitation on

24  admission of <u>Coleman</u> class members to Atascadero State Hospital caused by the staffing

25  shortage, including but not limited to contracting with outside psychiatrists and other necessary

26  psychiatric staff to provide sufficient staffing for the <u>Coleman</u> beds at Atascadero State Hospital.

/////

3.  Within three weeks from the date of this order, defendants shall file a report identifying the job titles and number of staff members required, pursuant to applicable staffing ratios, to provide care to:

> (1)  Coleman patients housed in 25 mental health crisis beds at Atascadero State Hospital;
> (2)  Coleman patients housed in 231 intermediate care facility beds at Atascadero State Hospital;
> (3)  Coleman patients housed in 50 intermediate care facility beds at Coalinga State Hospital;
> (4)  Coleman patients housed in 30 acute and or intermediate care facility beds at Patton State Hospital;
> (5)  Coleman patients housed in 5 intermediate care facility beds at Napa State Hospital;
> (6)  Coleman patients housed in 5 intermediate care facility beds at Metropolitan State Hospital; and
> (7)  Admission units at each state hospital that will accept Coleman patients, if any.

4.  Within one week thereafter, plaintiffs shall file and serve a response to the plan and the report required by paragraphs 1 and 2 of this order.

5.  Within three weeks from the date of this order, defendants shall file, concurrently with the plan required by the previous paragraph of this order, a first monthly report of referrals, pending referrals, rejections, and transfers, of inmates from any level of outpatient mental health care to any level of inpatient mental health care, and from any level of inpatient mental health care to a different level of mental health care.  Said report shall include a complete list of all class members currently waiting for transfer to any level of DMH hospital care.

DATED: May 23, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT