PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>  Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>  Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**DECLARATION OF LORI RIFKIN IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CONVENE A THREE JUDGE PANEL TO LIMIT THE PRISON POPULATION**<br><br>Hearing Date: June 4, 2007<br>Time: 11:00 a.m.<br>Location: Courtroom 4<br>Judge: Hon. Lawrence K. Karlton |

I, Lori Rifkin, hereby declare:

1. I am a member of the Bar of this Court and an associate of the firm Rosen, Bien & Galvan, LLP, one of the counsel of record for the plaintiff class (hereinafter "Plaintiffs"). I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify. I submit this declaration in support of Plaintiffs' Supplemental Brief in Support of Motion to Convene a Three-Judge Panel to Limit the Prison Population.

### Returns to Custody of Mentally Ill Parolees

2. For approximately the last year, I have been one of the attorneys involved in monitoring and enforcement of remedial orders on behalf of the plaintiff class in *Valdivia v. Schwarzenegger*, No. Civ. S-94-0671 LKK/GGH (E.D Cal.), a class action lawsuit concerning due process in parole revocation proceedings, brought on behalf of a class of all California parolees both in and out of prison or jail custody.

3. As part of monitoring activities on behalf of *Valdivia* class members, I have participated in ongoing meetings and correspondence with CDCR officials and counsel regarding their policies and procedures; reviewed documents produced by Defendants; and interviewed and corresponded with *Valdivia* class members, many of whom are mentally ill. I have also conducted periodic monitoring tours of CDCR institutions in order to monitor compliance with remedial orders in *Valdivia*.

4. Over the past year, I have participated in an ongoing negotiation process with defendants and the Special Master teams in both *Valdivia* and *Coleman* regarding "psychiatric return," which is the process defendants have used to return parolees with severe mental illness to prison for set periods of 12 months, ineligible for work time credits. These revocations were based on defendants' parole regulations requiring a parole agent to report to the BPH when a parolee has engaged in "conduct indicating that the parolee's mental condition has deteriorated such that the parolee is likely to engage in future criminal behavior." (Cal. Code Reg., Title 15, Section 2616(a)(14)).

5. Based on information plaintiffs' counsel gathered from our clients as well as through the monitoring process, on June 15, 2006, plaintiffs issued a notice of violation of the

1  *Valdivia* Permanent Injunction to defendants, stating that the psychiatric return process
2  presents serious due process concerns.  These concerns included both procedural problems in
3  the revocation process and the use of psychiatric returns given the undisputed lack of adequate
4  mental health care in the CDCR prison system.  Plaintiffs raised concerns about the use of the
5  official psychiatric return process, and about returns to custody of seriously mentally ill
6  parolees based on technical or minor violations resulting primarily from unmet mental heath
7  needs.  By issuing this notice of violation, plaintiffs initiated a still-unresolved mediation and
8  negotiation process with defendants regarding revocations of parolees with serious mental
9  illness.  Plaintiffs, defendants, and the Special Master team in *Valdivia* have met and
10 corresponded numerous times from June 2006 to present regarding this issue.

11        6.     Presently, the only mental health treatment defendants provide to parolees is
12 through the parole outpatient clinics (POC).  Defendants provided plaintiffs' counsel with
13 copies of two Budget Change Proposals (BCPs) prepared by CDCR Division of Adult Parole
14 Operations requesting funds to provide enhanced mental health services to parolees.  Attached
15 hereto as **Exhibit A** is a true and correct copy of the CDCR Division of Adult Parole
16 Operations Mental Health Services Continuum Program Budget Change Proposal Fiscal Year
17 2007-2008.  Attached hereto as **Exhibit B** is a true and correct copy of the CDCR Division of
18 Adult Parole Operations Parole Outpatient Clinics Budget Change Proposal Fiscal Year
19 2007/08.  Both of these BCPs acknowledge that severely mentally ill parolees return to prison
20 or jail at a higher rate than that of any other offender group.  Exhibit A states on page 1 that
21 more than 6,000 mentally ill parolees are return to custody each year for technical or other
22 violations of parole that result from unmet mental health needs.  Although these BCPs offered
23 evidence that provision of enhanced mental health treatment services to parolees would
24 increase public safety, decrease recidivism rates, and requested funds for these enhancements,
25 we were informed by defendants that neither was approved.

26        7.     During these negotiations, defendants terminated the official practice of
27 psychiatric revocations, admitting that the individuals the State returned to custody through
28 this practice were being held illegally. However, defendants refused to discuss their practice of

returning to custody thousands of seriously mentally ill parolees based on violations resulting primarily from unmet mental health need.

8. Defendants terminated the official practice of psychiatric returns in January 2007. As a result, defendants agreed to return to parole 31 inmates currently being held in CDCR custody on psychiatric returns, and to find them placements in the community at the appropriate level of mental health care. Based on information provided by defendants to our office, 7 of these 31 parolees were placed at Atascadero State Hospital as Mentally Disordered Offenders. The remaining 24 were released to parole, and of those 24, I have determined that at least six were returned to prison *within one month*, based on information provided by defendants and by information from CDCR's inmate locator as of May 3, 2007 obtained by staff at my office. One of these individuals was returned to custody within hours of his release on a charge of assault of the parole officer who met him at the prison.

9. Based on correspondence I have reviewed from class members, as well as information gathered from the *Valdivia* monitoring process, it is my understanding that defendants continue to return large numbers of parolees with serious mental illness to custody based on violations resulting from unmet mental health need. For example, I recently reviewed revocation documents that were provided on May 18, 2007 to plaintiffs' counsel by defendants as part of the *Valdivia* monitoring process. These documents show that on May 2, 2007, a parolee documented to be at the CCCMS level of care was returned to custody for a period of five months, ineligible for worktime credit, based on a finding that he violated the condition of parole requiring him to attend POC. These documents also show that the parolee missed his POC appointment because he was at a V.A. Hospital attempting to be admitted into their mental health program.

10. California has created a process in which thousands of mentally ill inmates/parolees generally follow a cyclical course of failure within the corrections system. As this group cycles in and out of custody, they generally large serve stretches of time in CDCR reception centers while going through the revocation process or once they have received revocation terms, because they are serving terms are less than one year. A recent

CDCR study looked at snapshot of the EOP population in reception centers on June 21, 2006 and found that a "backlog of approximately 500 individuals at RC's awaiting placement into Enhanced Outpatient Program (EOP) beds has accumulated as existing mainline programs have reached maximum capacity." *See* Declaration of Ernest Galvan In Support Of Plaintiff' Supplemental Brief In Support of Motion for Three Judge Panel to Limit Prison Population, filed herewith, Ex. V at 1.  Of the 530 EOP inmates identified, 60 percent had been in the reception center for excessive periods of time under Coleman Program Guide standards.  *Id.* at 2.  200 of these EOP inmates were parole violators returned to custody on technical violations, which defendants admitted were "likely related to their mental illness" *Id.* at 3.

11. Defendants have recognized that mentally ill parolees need specialized care, treatment, and supervision and without it, are more likely to be returned to custody.  *See* Ex. A and Ex. B.  Yet defendants have consistently refused to provide the kinds of services and treatment known to break this cycle.

**Population Reduction and Control Recommendations of Experts and Commissions**

12. For more than 17 years, bi-partisan commissions and other experts have provided written recommendations regarding population reduction strategies for California prisons. These recommendations have often been similar in nature, and have commonly included the establishment of a sentencing commission, parole reform, and implementation of alternatives to incarceration for parole violators.  Many of these recommendations are reflected in reports by:

- Little Hoover Commission, which issued reports dated January 1998; November 2003; February 2005, and January 2007.  A true and correct copy of the Little Hoover Commission's January 2007 Report, "Solving California's Correction Crisis:  Time is Running Out" is attached hereto as **Exhibit C**.   Appendix D to this Report shows a chart summarizing prior recommendations of other commissions.
- SEIU Local 1000, representing 14,000 employees of the CDCR, issued a report in March 2007 titled "CDCR Reforms for Safer Communities."  Attached hereto as **Exhibit D** are the Executive Summary, Recommendations, and Appendices of this

Report.

- National Council on Crime and Delinquency, Task Force on California Prison Overcrowding. A true and correct copy of Task Force's August 2006 Report, "Responding to California's Prison Crisis" is attached hereto as **Exhibit E**.
- Corrections Independent Review Panel. This Panel was appointed by Governor Schwarzenegger and chaired by former Governor Deukmejian. A copy of the chapter "Inmate/Parolee Population Management" from its June 2004 Report, "Reforming Corrections" is attached as Exhibit D to Galvan Decl., filed herewith.
- Blue Ribbon Commission on Inmate Population Management. In January 1990, the Blue Ribbon Commission issued its "Final Report."

13. Attached hereto as **Exhibit F** is a true and correct copy of the transcript of Governor Schwarzenegger's State of the State Address, delivered on January 9, 2007 and available on the Officer of the Governor website at http://gov.ca.gov/index.php?/press-release/5089. I downloaded this transcript on May 3, 2007.

14. On February 15, 2007, Judge Henderson directed the Receiver to report to the Court within 90 days his best assessment of the manner, and extent to which, overcrowding is interfering with his ability to successfully remedy the constitutional violations at issue. Judge Henderson also directed the State to report to the Court within 90 days regarding the specific, concrete measures the State has taken, is taking, or is planning to take, that is expected to reduce the number of inmates in state prisons by March 1, 2008 and March 1, 2009. Attached hereto as **Exhibit G** is a true and correct copy of Judge Henderson's February 15, 2007 Order in *Plata v. Schwarzenegger,* N.D.Ca. No. C01-1351 TEH.

15. On May 15, 2007, the Receiver responded to Judge Henderson's February 15, 2007 Order. Attached hereto as **Exhibit H** is a true and correct copy of the Receiver's Report Re Overcrowding and the Appendix of Exhibits In Support Of Receiver's Report Re Overcrowding. Consecutive page numbers 001-476 were added to this Exhibit by staff at my office in order to assist the Court.

16. Attached hereto as **Exhibit I** is a true and correct copy of Defendants' Report In

Response To The Court's February 15, 2007 Order, filed on May 16, 2007 in *Plata v. Schwarzenegger,* N.D.Ca. No. C01-1351 TEH.  Attached hereto as **Exhibit J** is a true and correct copy of the Declaration of Scott Kernan In Support Of Defendants' Report In Response To The Court's February 15, 2007 Order, filed on May 16, 2007 in *Plata v. Schwarzenegger,* N.D.Ca. No. C01-1351 TEH.  Attached hereto as **Exhibit K** is a true and correct copy of the Declaration of Joanne Petersilia In Support Of Defendants' Report In Response To The Court's February 15, 2007 Order, filed on May 16, 2007 in *Plata v. Schwarzenegger,* N.D.Ca. No. C01-1351 TEH.  Defendants filed a similar response on May 21, 2007 in Armstrong v. Schwarzenegger, N.D. Ca. No. C94-2307 CW.

17. The Legislative Analyst's Office (LAO) is a nonpartisan office which provides fiscal and policy information and advice to the Legislature.  Attached hereto as **Exhibit L** is a true and correct copy of  the April 12, 2007 Agenda for the Senate Budget and Fiscal Review Committee Subcommittee No. 4.  This Agenda contains extensive comments by the LAO about proposed prison reforms and CDCR activities.  Attached hereto as **Exhibit M** is a true and correct copy of the May 9, 2007 Agenda for the Senate Budget and Fiscal Review Committee Subcommittee No. 4.  This Agenda also contains comments by the LAO.  Attached hereto as **Exhibit N** is a true and correct copy of the May 15, 2007 LAO Report titled "Overview of the 2007-08 May Revision."

18. Attached hereto  as **Exhibit O** is a true and correct copy of the excerpted pages from Governor Schwarzenegger's 2007 California Five-Year Infrastructure Plan regarding the CDCR.

19. Attached hereto as **Exhibit P** is a true and correct copy of Order No. R5-2006-0130 of the California Regional Water Quality Control Board Central Valley Region.  This Order is titled  "Cease and Desist Order Requiring California Department of Corrections and Rehabilitation Mule Creek State Prison Wastewater Treatment Plant Amador County To Cease And Desist From Discharging Contrary To Requirements."

20. Attached hereto as **Exhibit Q** is a true and correct copy of the Declaration of Scott M. Kernan In Opposition To Petition For Writ Of Mandate, Injunction And Declaratory

1 Relief, filed January 22, 2007 in *California Correctional Peace Officers' Association v.*
2 *Schwarzenegger,* CA Superior Court, County of Sacramento, Case No. 06CS01568.

3      21.    Attached hereto as **Exhibit R** is a true and correct copy of a CDCR population
4 report that I downloaded from the CDCR website on Wednesday, May 23, 2007. It provides
5 population data as of midnight on May 16, 2007.

6      22.    Attached hereto as **Exhibit S** is a true and correct copy of a parole population
7 report that I downloaded from the CDCR website on Wednesday, May 23, 2007. It provides
8 population data as of midnight on May 16, 2007.

9      23.    Attached hereto as **Exhibit T** is a true and correct copy of a report issued by
10 National Council on Crime and Delinquency in April 2007 titled "Effect of Early Release from
11 Prison on Public Safety: A Review of the Literature."

12      24.    Attached hereto as **Exhibit U** is a true and correct copy of a document titled
13 "Comprehensive Prison Reform: Reforming Parole" that was downloaded by my staff from
14 the Office of the Governor website.

15      25.    On July 20, 2006, James Tilton, acting Secretary of the CDCR gave legislative
16 testimony to the Assembly's Select Committee on Prison Overcrowding and Construction.
17 Attached hereto as **Exhibit V** is at true and correct copy of the text of the July 20 Legislative
18 Testimony by CDCR Secretary Tilton that I downloaded from the CDCR website on May 8,
19 2007.

20      26.    Attached hereto as **Exhibit W** is a true and correct copy of an excerpt from the
21 May 2006 report titled "Understanding California Corrections" by Joanne Petersilia, Professor
22 of Criminology, Law and Society at the University of California, Irvine. In July 2005, she
23 became the Director of the University of California, Irvine's Center for Evidence-Based
24 Corrections, a research and policy center funded by the CDCR.

25      27.    Attached hereto as **Exhibit X** is a true and correct copy of the text of the October
26 26, 2006 Presentation by State Senator Jackie Speier to the Little Hoover Commission. On
27 page 3, Senator Speier quotes remarks made by Judge Steve White, former Inspector General,
28 at a 2004 Senate hearing on prisons.

28. Attached hereto as **Exhibit Y** is a true and correct copy of a letter dated August 17, 2006 from five Region III Clinicians to Governor Schwarzenegger regarding the CDCR's April 27, 2006 closure of the Parole Outpatient Clinic in Los Angeles, CA. This letter was provided to the Little Hoover Commission in preparation for its January 2007 report. Attached hereto as **Exhibit Z** is a true and correct copy of a letter dated December 22, 2006 from the Committee to Continue a Centralized Parole Outpatient Clinic (CCCPOC) to Michael Alpert, Chair, Little Hoover Commission regarding the need for professional mental health staff in Sacramento to represent Parole Outpatient Clinicians. CCCPOC discusses the closure of the central POC clinic in Region III, which had been open for about 50 years.

29. Attached hereto as **Exhibit AA** is a true and correct copy of a letter dated February 7, 2007 from Dennis Yates, Mayor, Chino, CA to Governor Schwarzenegger regarding the Mayor's concern about proposed prison facility expansion of California Institute for Men (CIM) in the Chino community.

30. Attached hereto as **Exhibit BB** is a true and correct copy of a Press Release dated February 16, 2006 titled "Corrections Official Speaks Out on Importance of Governor's Strategic Growth Plan" that I downloaded from the CDCR website on February 6, 2007. Jeanne Woodford, Undersecretary for the Department of Corrections and Rehabilitation, is quoted as stating "It is not enough to just build capacity, but we must be smart about how we plan."

31. Attached hereto as **Exhibit CC** is a true and correct copy of a June 2006 report issued by the California State Sheriffs'' Association titled "Do the Crime, Do the Time? Maybe Not, In California."

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 24th day of May 2007 at San Francisco, California.

*/s/ Lori Rifkin*
Lori Rifkin