PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California  94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone:  (415) 864-8848

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

    Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.:  Civ S 90-0520 LKK-JFM

**DECLARATION OF HOLLY BALDWIN IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CONVENE A THREE-JUDGE PANEL TO LIMIT THE PRISON POPULATION**

Hearing Date:   June 4, 2007
Time:               11:00 a.m.
Location:         Courtroom 4
Judge:           Hon. Lawrence K. Karlton

1     I, HOLLY M. BALDWIN, HEREBY DECLARE:

2     1.    I am a member of the Bar of this Court and an associate of the firm Rosen, Bien

3 & Galvan, LLP, one of the counsel of record for the plaintiffs in this action. I have personal

4 knowledge of the matters set forth herein and if called as a witness I could and would

5 competently so testify. I submit this declaration in support of Plaintiffs' Supplemental Brief in

6 Support of Motion to Convene a Three-Judge Panel to Limit the Prison Population.

7     2.    For approximately the last three years, I have been one of the attorneys involved

8 in monitoring and enforcement of remedial orders on behalf of the plaintiff class in *Armstrong*

9 *v. Schwarzenegger*, No. C 94-2307 CW (N.D. Cal.), a class-action lawsuit concerning

10 disability discrimination against California state prisoners and parolees with impairments in

11 vision, hearing, mobility, learning, and kidney function, and prisoners and parolees with

12 developmental disabilities undergoing parole proceedings. For the same time period, I have

13 been one of the attorneys involved in monitoring and enforcement of remedial orders in

14 *Valdivia v. Schwarzenegger*, No. Civ. S-94-0671 LKK/GGH (E.D Cal.), a class action lawsuit

15 concerning due process in parole revocation proceedings, brought on behalf of a class of all

16 California parolees both in and out of prison or jail custody.

17     3.    As part of monitoring activities on behalf of *Armstrong* and *Valdivia* class

18 members, I have participated in ongoing meetings and correspondence with CDCR officials

19 and counsel regarding their policies and procedures; reviewed documents produced by

20 Defendants; and interviewed and corresponded with *Armstrong* and *Valdivia* class members,

21 many of whom are mentally ill. I have also conducted periodic monitoring tours of CDCR

22 institutions, county jails, parole offices, and programs offered to parolees under contract with

23 CDCR, in order to monitor compliance with remedial orders in *Armstrong* and *Valdivia*.

24     4.    Attached hereto as **Exhibit A** is a true and correct copy of a two-page program

25 description for the Parole Planning and Placement (PPP) program. Attached hereto as **Exhibit**

26 **B** is a true and correct copy of a one-page program description for the Transitional Case

27 Management Program for the Mentally Ill (TCMP-MI). Our office received these documents

28

1    from Defendants' counsel at a meeting on March 15, 2006. Both the PPP and TCMP-MI

2    programs are described as delivering pre-release planning services for CDCR inmates.

### Parole Planning and Placement (PPP) Program

4         5.     On September 19, 2006, I participated in a meeting with CDCR officials and

5    counsel to discuss the services provided by the PPP. It is my understanding that PPP is

6    designed to operate in the following manner to provide pre-release risk and needs assessments

7    for paroling inmates. Each CDCR prison has at least one Parole Agent II (PAII) and one

8    Parole Services Associate (PSA), a clerical non-sworn employee of the Division of Adult

9    Parole Operations (DAPO). The PPP program also employs District Social Workers (DSW)

10    via contracts with Kern County and the University of San Diego, and these DSWs are located

11    in some parole offices. For those inmates who receive services from the PPP, a pre-release

12    assessment is performed by a PSA in the prison, using a risk and needs assessment tool called

13    the COMPAS (Correctional Offender Management Profiling for Alternative Sanctions)

14    database, with information obtained from a C-file (central file) review and an interview with

15    the inmate. The PSA does not review the inmate's medical file. The assessment is reviewed

16    by a PAII, and referrals to community resources and parole programs are made by either a

17    DSW or by a PSA based on the assessment. Shortly before release, the inmate has an exit

18    interview with a PSA or PAII to discuss the plan.

19         6.     The PPP is designed to provide services to three categories of inmates: (1)

20    inmates who are being released to parole for the first time; (2) parole violators who are

21    concurrently serving parole revocation terms and new criminal terms (PVWNTs, Parole

22    Violators With New Terms); and (3) parole violators (PVRTCs, Parole Violators Returned to

23    Custody) who are serving revocation sentences of at least six months (terms of 6 to 12 months

24    Ineligible for work credits, or 12 months Eligible for work credits) and who have more than six

25    months remaining on their parole term. The average parole revocation term served is four

26    months for male parole violators and 3.8 months for female parole violators. *See* CDCR

27    Spring 2007 Adult Population Projections 2007-2012, Galvan Decl., Exh. W at 17. Thus, a

28

1    large segment of the parole violator population, those serving shorter revocation terms, does

2    not receive PPP pre-release planning services.

3        7.    Defendants informed me in September 2006 that not all of the inmates eligible

4    for PPP were actually receiving pre-release assessments. Defendants were unable to provide

5    Plaintiffs' counsel with actual numbers of inmates currently served. The program description

6    our office received in March 2006 noted that as of the time the document was prepared, only

7    31% of eligible inmates had been assessed. Exhibit A at 2. Information presented to the Little

8    Hoover Commission also indicates that implementation of the COMPAS assessments by PPP

9    has been slow. "[A]t a roundtable meeting the Commission held in November 2006 on parole

10   reform, a parole agent told the Commission that she and her colleagues had not seen any data

11   from parolee risk assessments." Little Hoover Commission Report, "Solving California's

12   Corrections Crisis: Time Is Running Out," January 25, 2007, Rifkin Decl., Exh. C at 7. My

13   observations and those of other attorneys from our office on parole office monitoring tours

14   indicate that parole agents' receipt of COMPAS assessments for incoming parolees has been

15   inconsistent, and that the assessments do not always contain complete data when they are

16   received by the agents.

17       8.    The PPP does not provide services to any inmates who are designated to receive

18   mental health services at the EOP level of care. Defendants advised me at our September 2006

19   meeting that inmates designated at the CCCMS level of mental health care are now included in

20   the PPP program. However, because the file review performed by the PSA does not include a

21   medical file review, it is not clear how the assessment addresses risks and needs related to

22   mental health for CCCMS inmates.

23       9.    The PPP does not provide services to CDCR inmates who are housed in

24   Department of Mental Health (DMH) facilities (the sickest mentally ill inmates), or to CDCR

25   inmates who are housed in county jails (a population including a large number of parole

26   violators), as the parole staff who work for the PPP program are housed only in the 33 CDCR

27   prisons.

28

DECLARATION OF HOLLY BALDWIN IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CONVENE A
THREE-JUDGE PANEL TO LIMIT THE PRISON POPULATION, NO.: CIV S 90-0520 LKK-JFM

1        10.    Defendants informed me in September 2006 that the pre-release planning

2  provided by the PPP program does *not* include assistance with benefits planning or

3  applications. I have been informed by *Armstrong* monitors who have interviewed PPP staff in

4  prisons that the staff confirm that they do not prepare benefits applications.

5        11.    Attached hereto as **Exhibit C** is a true and correct copy of an excerpt from the

6  Written Testimony of CDCR Secretary James Tilton to the Little Hoover Commission in

7  October 2006. In his testimony, Mr. Tilton stated that "PPP Program staff work with the

8  District Social Workers (DSW) to assist eligible inmates in applying for benefits for which

9  they are entitled to upon release." Exhibit C at 111. Neither I nor the attorneys with whom I

10  work in monitoring parole planning have succeeded in finding either a staff person who has

11  prepared a benefits application or a prisoner or parolee for whom a benefits application was

12  prepared by PPP program staff.

13        12.    Mr. Tilton's testimony also states that "effective January 2007," the department

14  will implement a "new program" to facilitate applications for SSI, VA benefits and Medi-Cal

15  for certain prisoners, including those with physical disabilities, developmental disabilities and

16  mental illness, within "240 days" of release. Exhibit C at 114. But, this program has not

17  actually been implemented. Attached hereto as **Exhibit D** is a true and correct copy of a

18  response from Defendants' counsel in the *Coleman* case, received in lieu of a planned April 20,

19  2007 all-parties meeting, regarding the status of the pre-release planning efforts required by

20  court order in *Coleman*, and described in Mr. Tilton's October 2006 testimony. The response

21  states that:

22      Pre-Parole Benefits:
        • The Department has begun implementation of a new program that will utilize
23          contracted social workers (benefits workers) within the prisons to apply for and
24          secure federal and state benefit entitlements prior to an inmate's return to the
          community. Benefits that will be applied for are; Social Security benefits, State
25          sponsored Medi-Cal, and Veteran's Affairs benefits.
26        • The target population is inmates within 210 days to parole that are medically,
          mentally or developmentally disabled, enduring a long-term illness, or have
27          reached the age of 62 years or older (55 if a disabled widow/widower).

28

DECLARATION OF HOLLY BALDWIN IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CONVENE A
THREE-JUDGE PANEL TO LIMIT THE PRISON POPULATION, NO.: CIV S 90-0520 LKK-JFM

- This also includes inmates designated as members of the Coleman, Plata, Armstrong, and Clark class action lawsuits will be screened for potential eligibility.

**Note:** Due to delays and uncertainty of finalizing a contract with expected contractor, Division of Adult Parole Operations (DAPO) is now working with other potential partners. This has caused a delay to the targeted January/February, 2007 implementation, and is now not expected to be implemented for several months (hopefully by the end of summer 2007).

Exhibit D at VAL2007 100241. Moreover, because the target population for these benefits services is described as inmates "within 210 days to parole," the majority of parole violators serving shorter terms will not be eligible, even if the services eventually become available.

### Transitional Case Management Program for Mentally Ill (TCMP)
### and Parole Outpatient Clinic (POC)

13. It is my understanding that social workers employed by contract with the TCMP-MI program provide pre-release assessments for some paroling inmates on the mental health caseload. It is not clear whether inmates classified at the CCCMS level of care currently receive pre-release services from TCMP-MI. The PPP program description states that "inmates receiving pre-release services through the Mental Health Services Continuum Program" are excluded from the PPP. *See* Exhibit A at 1. The TCMP-MI program description states that it includes both EOP and CCCMS inmates. *See* Exhibit B. When I met with Defendants regarding the PPP program, they advised me that the PPP program eligibility had been expanded to include CCCMS inmates. We have not received any updated policy documents. It is unclear whether this means CCCMS inmates are no longer receiving services from TCMP-MI.

14. The program description states that TCMP-MI workers assist EOP inmates with benefits applications. *See* Exhibit B; Exhibit D at VAL2007 100240. But, I am informed and believe, based on conversations with attorneys monitoring *Coleman* compliance, that TCMP-MI has *not* actually been providing benefits assistance to EOP inmates.

15. I am informed and believe that the TCMP-MI does not provide services to inmates housed in Reception Centers, which would include many parole violators.

16.     TCMP-MI does not provide any pre-release services to CDCR inmates housed at DMH facilities, where many of the sickest class members are housed. *See* Exhibit D at VAL2007 100241-100242. I have interviewed clinicians at Parole Outpatient Clinics (POCs) during parole office monitoring tours conducted in the *Armstrong* and *Valdivia* cases, and they have confirmed that there are no TCMP-MI workers at DMH facilities.

17.     I am informed and believe, based on my interviews with POC clinicians and my review of other monitors' tour reports, that the information provided by TCMP-MI workers to POC clinicians about their incoming patients varies widely by institution and is often incomplete. In addition, POC clinicians have reported that they have no access to the notes from treating clinicians in the institutions, which does not benefit the parolee's continuity of care. POC clinicians have also reported that their own treatment notes are not transmitted back to the institution if the parolee is returned to custody.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct. This declaration was executed on May 24, 2007 in San Francisco, California.


_____/s/ Holly M. Baldwin_____
Holly M. Baldwin

**EXHIBIT A**

RECEIVED

MAR 1 5 2006

ROSEN BIEN & ASARO

**Program Name:**
Parole Planning and Placement (PPP)

**Goal/Purpose:**
The purpose of the PPP program is to obtain and utilize pertinent information about offenders in order to develop and implement effective and specific reentry plans that maximize a parolee's opportunity to successfully reintegrate into the community. The PPP program provides proactive involvement within institutional settings, in establishing and solidifying parole planning for inmates prior to their release into the community.

**Synopsis of Program:**
The PPP Program is currently operational at all California State Prisons. The PPP program staff completes assessments on all inmates, except those with the following exclusionary criteria; (1) inmates pending deportation with an active United States Immigration hold, (2) civil narcotic addicts, (3) inmates receiving pre-release services through the Mental Health Services Continuum Program, and (4) inmates participating in the Transitional Case Management Program (TCMP) for HIV/AIDS

The PPP Program consists of 33 Parole Agent (PA) II Specialists and 43 Parole Service Associates (PSA) with at least one PAII and one PSA assigned to and physically located in each prison. The PPP staff review the inmate's Central File and conduct a face-to-face interview with the inmate to gather pertinent information related to his/her needs and/or barriers that may exist upon release. The information is then forwarded to one of the contracted District Social Workers (DSW).

The PPP program secured contracts with Kern County and the University of San Diego for 24 DSWs, which are located in 24 parole districts and responsible for facilitating the re-entry plans developed for inmates pending release. The DSWs establish a linkage to community resources and services to assist in stabilizing newly released parolees, or parolees whose community programming is in jeopardy. The DSWs develop a network of local community resources, programs, governmental services, educational opportunities, and treatment programs for parolee referrals and program placements. It is incumbent upon the DSW to maximize the use of existing Division of Adult Parole Operations (DAPO) parolee programs and link newly released parolees to other appropriate community resources.

Currently, PPP provides assessments of first time offenders and parole violators returning to custody with a new prison term. Effective January 1, 2006, the program was expanded to include inmates that have returned to custody for a parole violation only. The DAPO is in the process of hiring the expansion staff, and anticipate assessments of eligible parole violators to begin in March 2006.

In addition, DAPO has secured the Correctional Offender Management Profiling for Alternative Sanctions (COMPAS) database, a risk and needs assessment tool that will be used to provide an evidence-based approach to the planning for release. The COMPAS database is a scientific tool that is being developed by the Northpointe Institute for Public Management. It is currently used in various states by prisons, county probation, and jails. The COMPAS database will replace the current Parolee Automated Tracking System (PATS), effective March 2006. Unlike PATS, COMPAS will be accessible to all DAPO field staff. As a result, in addition to the PPP staff, DAPO field staff will need to be trained on the use of COMPAS in February 2006.

**Current Year Funding:**
Fiscal year funding 2005/06 is $12,149,691.

The FY 2005/06 $2,524,000 expansion provides for an additional 80 PSAs and seven PAIIs. This will allow the unit to perform 3,784 assessments per 22-day work month to include parolees returning to custody on parole violations. The expansion also includes additional management positions and support staff to meet the needs of the program's expansion. However, the expansion resources do not include the needed augmentation to the District Social Worker contracts or automation support resources.

**Program Statistics:**
The PPP is established at 33 prisons and 24 Parole District Offices. This year there were 19,935 inmates eligible for PPP assessment. PPP Staff interviewed 6,037 inmates. To date, 31% of the eligible inmates have been assessed. The numbers identified (19,935) includes those inmates who were eligible in December 2005; however, their assessments are not due to be completed until approximately March 1, 2006.

In comparing FY 2004/05 to FY 2005/06, although the percentage served remains in the low thirty percentile, it should be noted that the monthly average of eligible inmates increased by almost 800 per month, while the completion percentage remained the same.

**Budget Year 2006/07 information:**
Fiscal year funding for 2006/07 is $14,858,943.

Effective March 1, 2006 the program expands to all inmates releasing from an institution by also providing parole planning to inmates that have returned to custody for a parole violation only.

**Notes:**
- The PPP was known in Fiscal Years 2003/04 and 2004/05 as the *Pre-Release Program*.
- Although, staff for the PPP program was hired in June/July of 2004, PATS was not developed for PPP until September 2004.
- During the time period of July 1, 2005, to November 15, 2005, PPP staff entered case information into both PATS and COMPAS, in order for Northpointe to establish a "norm" for the COMPAS database.

**EXHIBIT B**

**Name of Program:**
Transitional Case Management Program for the Mentally Ill

**Goal/Purpose:**
The goal of the TCMP-MI is to provide pre-release needs assessments for all identified and designated Enhanced Outpatient Program (EOP) and Correctional Clinical Case Management System (CCCMS) inmates classified by the institution's Mental Health Delivery System.

Synopsis of Program: TCMP-MI social workers provide pre-release assessments at 90 and 30 day intervals prior to release for all EOP and CCCMS inmates. In addition, TCMP-MI is responsible for initiating benefits eligibility (SSI, etc.) to its EOP clients. All information gathered through the pre-release needs assessment is entered into the statewide automated database and used by the Parole Outpatient Clinic (POC) in order to facilitate post-release care. Areas of concern addressed during the needs assessment include but are not limited to the clients' drug and alcohol history, educational background, employment history, and basic needs once they parole (i.e., housing, employment, etc.). Future growth or program reductions of TCMP-MI are determined by increased/decreased population ratios. No plans are in effect to expand the program outside of future population increases/decreases.

**Current Year Funding:** $ 5,271,816

**Program Statistics:**
Currently TCMP-MI consists of 61 contracted staff statewide and provides service coverage to 33 institutions within the state. During FY 2004/05, approximately 17,500 inmates were provided with pre-release assessments. In FY 2005/06, TCMP-MI is projected to provide pre-release assessments to approximately 17,500 inmates.

**Budget Year 2006/2007 Information:**
The TCMP-MI funding is predicated on future increased/decreased EOP/CCCMS population ratios. FY 2006/07 is expected to remain consistent with current year funding as no major increases or decreases in the mentally ill inmate population are projected. In addition, there are no plans to expand TCMP-MI to date and current resources designated for the program have been maximized.

**Notes:** N/A

**EXHIBIT C**

California Department of Corrections and Rehabilitation



Written Testimony
to
Little Hoover Commission

# CORRECTIONAL SYSTEM REFORM

October 2006

- Interest Determination Exploration Assessment System (IDEAS), a vocational interest inventory, is being purchased through the Non-Competitive Bid (NCB) process. The tentative date for the purchase and distribution of the IDEAS is April 2007.

- Development of the Individualized, Comprehensive Life Plan (ICLP) is underway. The ICLP will be administered to inmate educational students at intake. Currently under review by Reception center teachers, it is anticipated that the review and approval process will be completed by June 2007. ICLP will be aligned to the computerized risk assessment in COMPAS.

*Parole:*

The Parole Planning and Placement (PPP) Program (previously known as Pre-Parole Planning) was revised in January 2006 to better serve the needs of offenders. Such modifications included expanding the target population to include parole violators who have received a revocation period of six months or more and have more than six months remaining on their parole period and the implementation of a research-based assessment tool (COMPAS). Utilization of the new assessment tool began in March of 2006.

COMPAS is a statistically-based risk assessment tool specifically designed to assess key risk and needs factors in adult correctional populations, and to afford decision-support for justice professionals when placing offenders into the community by providing a valid measurement and succinct organization of the relevant risk/need dimensions. COMPAS differs from other risk and needs systems by addressing separate risk prediction systems for violence, recidivism, failure to appear and community failure. Rather than using one global risk score, it uses separate risk equations for each of these dimensions of risk.

DAPO purchased the Correctional Offender Management Profiling for Alternative Sanctions (COMPAS), risk assessment tool from Northpointe, Inc. The system, implemented in March of 2006, provides tools for assessing the needs of individuals and the degrees and type of parole supervision that may be required. In fact, research conducted by Northpointe, Inc. indicates the COMPAS assessment tool will enhance parole supervision by providing a best-practices approach to the risk and needs assessment on the California parolee population. A further goal of COMPAS is to help design case-management support systems for offenders in community placements.

In addition to the risk and needs assessment, the COMPAS tool produces a Resource Report/Case Plan (Offender Version). The Case Plan is provided to the inmate prior to their release from custody. Each inmate assessed is given an exit interview within two weeks of their release to the community. This serves to provide the inmate with the most current information available prior to release, and to afford the inmate an opportunity to address any issues that may have arisen since the initial PPP face-to-face interview. Additionally, all parole field staff will have the ability to view and print a copy of the COMPAS reports via their desktop computer. Field staff access to this information ensures that the inmates risk and needs assessment is available for the assigned Agent of Record to discuss and review with the inmate/parolee during their initial interview at their assigned parole unit. Between March and August 2006, there have been 16,916 inmates assessed utilizing the COMPAS risk/needs assessment tool. CDCR is confident that the use of the research-based COMPAS tool will be an effective instrument in enhancing supervision, and providing parolees the necessary tools for a successful reintegration back into the community.

**Parole Planning and Placement**
CDCR recognizes the importance of preparing inmates for their pending release while still incarcerated. Inmates often have many needs to be addressed, and proactive planning is an essential component to successful reintegration. Originally, the PPP Program (previously known as Pre-Parole Planning) was responsible for assessing inmates who were first-time releases or

Parole Violators with a New Term (PVWNT), and who were within approximately 240 days of their Earliest Possible Release Date (EPRD). In July of 2005, as a result of an extensive evaluation by the Department, several aspects of the PPP Program were modified to better assess the risks and needs of the inmate/parolee population and to better meet the changing needs of the Parole Division. Effective January 1, 2006, the target population of the PPP Program was expanded to include parole violators who received a revocation period of six months or more, and had more than six months remaining on their parole period once released from revocation. Eventually it is anticipated that the second phase of the expansion will incorporate all eligible Parole Violators-Returned to Custody. In August 2006, the PPP Program began conducting a risk of violence assessment on all inmates who had previously been excluded from the PPP Program.

On June 16, 2006, Governor Arnold Schwarzenegger signed Executive Order S-09-06, which directed the CDCR to conduct pre-release assessments on all sexual offenders housed in California institutions in order to determine if the offender is classified as a High Risk Sex Offender. As a result of the Governor's Executive Order, PPP Program staff have incorporated the Static-99 assessment tool into the assessment process. The Static-99 is a brief actuarial instrument designed to estimate the probability of sexual and violent recidivism among adult males who have already been convicted of as least one sexual offense against a child or non-consenting adult. To date, 6,773 "Static-99" assessments have been completed.

PPP Program staff continue to develop community, county, and State resources for inmates paroling to the community. PPP Program staff work with the District Social Workers (DSW) to assist eligible inmates in applying for benefits for which they are entitled to upon release. There have been 4,418 inmates referred to DSW by PPP Program staff since the implementation of COMPAS in March of 2006.

**Community-Based Programs**

*Residential Multi-Service Centers (RMSCs)* –

RMSCs were established as part of the Preventing Parolee Crime Program (PPCP) as mandated by Penal Code (PC) Section 3068. The RMSC offers a variety of services to eligible male and female parolees including housing, substance abuse counseling, literacy training, job preparation, anger management classes and counseling. Parolees may request placement in a RMSC or staff may refer parolees exhibiting delinquent behavior, though not rising to the level where public safety is jeopardized, for program consideration. The positive impact the RMSCs have on recidivism is noted in an evaluation of the PPCP prepared by the California State University, San Marcos (CSUSM), dated December 2003. Research shows parolees who completed the RMSC Program recidivated at a rate of 15.5 percent, in a twelve-month period, compared to a rate of 54.7 percent for non-PPCP participants.

The DAPO has ten existing contracts for 397 beds in seven counties and it is expanding that number this fiscal year. An Invitation for Bid (IFB) for an additional 542 RMSC beds was released in August 2006, and it is anticipated that services resulting from this process will commence in November 2006. Additionally, as part of the CDCR's Female Reform Master Plan, a gender-responsive Female RMSC will be developed, with a Request for Proposals (RFP) to be released in September 2006. The RFP proposes three 25-bed sites.

*Computerized Literacy Learning Centers (CLLCs)*–

CLLCs were established in fiscal year 1991/92 as part of the PPCP, as mandated by PC Section 3068. CLLCs offer computer-assisted instructional programs designed to increase the literacy skills of parolees, resulting in increased employability and parolee success. The Contra Costa County Office of Education (CCCOE) administers the training, under contract with the CDCR, and is operating the program at 21 locations throughout the state. Parolee participation in the CLLC may be voluntary or staff can place parolees into the CLLC to address their literacy needs, thus

*Parolee Service Centers* (PSCs)–

The Department currently manages 15 PSC contracts with various providers for 685 beds statewide. Of the total beds, 41 are dedicated to female parolees. Placement into a PSC is not the result of a sanction, but rather a pro-active approach to address an eligible parolee's transition back into the community. The PSC targets paroled offenders with no available resources, homeless parolees, or those seeking to make a positive change. Parolees exhibiting delinquent behavior, though not rising to the level where public safety is jeopardized, also are part of the target population of the PSC. Residential placement, employment services, counseling, substance abuse prevention, life skills training, literacy training and stress management skills are offered. This approach to addressing homeless and destitute parolees appears to have a positive impact on recidivism. San Diego State University will study the effectiveness of the PSC through an ongoing research contract with the CDCR. In September 2006, DAPO released an IFB to increase the total number of beds to 1,035. PSC was implemented April 12, 2005 and there have been 6,791 individuals served to date.

*Pre-Parole Process for Securing Benefits and Community-Based Care –*

Effective January 2007, CDCR will implement a new program that will facilitate application for benefits such as Social Security Income, Veteran's Benefits and Medi-Cal for those inmates who are medically, mentally or developmentally disabled, are enduring long-term illnesses, or have reached the age of 65 or older. This target population, comprised of approximately 17,000 inmates, will be screened when within 240 days of release by contracted social workers who will facilitate the inmates' applications for federal and state benefits. The social workers will also help facilitate a continuity of care for inmates in need of medical services, mental health services, skilled nursing, hospice, dialysis and other urgent health-related issues that must be addressed prior to release. The CDCR is in the process of developing Memorandums of Understanding with the Social Security Administration, Department of Health Services and Veteran's Affairs on a formal pre-release application and benefit determination process. Once the necessary resources are in place, the CDCR will be able to supply the providers with proof of eligibility for the respective benefits. This expedited process should alleviate unnecessary delay in receiving warranted benefits. Research completed by ABT Associates Inc., via a federal Department of Justice grant, indicates similar programs in New York, Texas and the City of Philadelphia have shown a positive impact on the smooth transition of the offender back into the community, thus reducing crime and recidivism.

*Mental Health Services Continuum Program (MHSCP), Parole Outpatient and Mentally Ill Parolees –*

The CDCR has begun the implementation of the MHSCP expansion. This expansion of the Parole Outpatient Clinic (POC) will increase the clinical services provided to approximately 17,000 mentally ill parolees who have been identified while still in prison as high risk for criminal behavior due to their mental illness. It is anticipated the expansion will be accomplished in January 2007. The expansion will require approximately 60 additional POC staff to be hired. The expansion is driven by a research-based study, completed on behalf of the CDCR by the University of California, Los Angeles' (UCLA) Integrated Substance Abuse Programs, and to be made available in November 2006, which reveals a strong positive correlation between an increase in the number of POC sessions and a reduction in the likelihood the parolee will be returned to prison. Research also reveals that enhancing retention in the MHSCP would further reduce recidivism outcomes. Approximately 17,000 of the annual paroling population receive services under this program.

114

ATTACHMENT A

## RECIDIVISIM REDUCTION STRATEGIES
### Funding Plan
### FISCAL YEAR 2006/07

| | | |
|---|---|---|
| 17. Mandatory Special Conditions of Parole (Substance Abuse Continuing Care-Aftercare) | This project pilots the imposition of a special condition of parole to require aftercare participation by Substance Abuse Program (SAP) graduates, thereby increasing their success on parole. Motivational interviewing will be used to mitigate expected initial increase in revocations. This proposal improves existing substance abuse treatment programming. Aftercare is voluntary in most CDCR substance abuse programs. Program evaluation research consistently demonstrates that correctional substance abuse treatment is most effective when in-prison treatment is followed by aftercare on parole. It is critical to maximize aftercare participation, in order to improve the return on the public's investment in these programs. This program will test whether a positive benefit is obtained by mandating aftercare participation. This concept increases numbers served and enhances the existing continuum. | $ 2.80 |
| 18. Substance Abuse Expansion (Expansion of SAPs in Overcrowded SAP Institutions) | The number of SAP beds will be increased in three SAP units that have significant overcrowding due to population pressures. The programs are designed to maintain a therapeutic community environment in a dedicated housing unit. When non-SAP inmates are overcrowded into SAP housing units, it creates a major disruption in the treatment environment. This proposal increases treatment slots and provides services to additional inmates. It does not duplicate existing services. The program will take steps to ensure only those in need of substance abuse treatment are placed into units. This increases the numbers served by 600 inmates per year. Since aftercare is available to participants, it enhances the existing continuum of care. | $ 1.60 |
| 19. Carpenter Pre-Apprenticeship Program | This program, located at Folsom State Prison and operated by the Prison Industry Authority (PIA), provides participating inmates with carpenter training on modular construction and a connection to the Carpenter's Union upon release. Inmates will obtain a pre-apprenticeship certification through Carpenter's Union Local 46(CUL46). PIA will be incorporating the carpenter's curriculum in this program under the direction of PIA. In turn, CLU46 will admit these paroled inmates to Local 46 Carpenter's Apprenticeship Programs, which allows entrance into the CUL46 at one step above "entry level". | $ .324 |
| 20. Pre-Parole Planning (Process for Securing Federal and State Benefit Entitlements and Community Based Continuity of Care) | This program provides for Social Workers to assist inmates in applying for Federal and State benefits prior to release, finds medical and mental health placements and services for parolees prior to their release. This provides a continuum when coupled with the in-prison Mental Health Services Delivery System. | $ 2.80 |

125

**EXHIBIT D**

Enclosure II

**INFORMATION REQUESTED, APRIL 20, 2007, COLEMAN POLICY MEETING AGENDA ITEMS**

| Department of Mental Health (DMH) and California Department of Corrections and Rehabilitation (CDCR) Waitlist Data*: | | |
|---|---|---|
| **Level of Care** | **Wait List Census** | **Comments** |
| *Salinas Valley Psychiatric Program (SVPP):* | | |
| ICF | 50 | Problems with suspension of Secured Housing Unit (SHU) terms has caused the delay of 4 patients into SVPP. |
| *Atascadero State Hospital (ASH):* | | |
| ICF | 0 | No waiting list. The 7 patients currently on the data base have been transferred to other locations. Admissions are restricted. |
| *Coalinga State Hospital (CSH):* | | |
| ICF | 0 | No waiting list. |
| *Patton State Hospital (PSH):* | | |
| ICF | 0 | No waiting list. |
| **CDCR** | | |
| Mental Health Crisis Beds (MHCBs) | 15 | |
| *DMH Data as of May 1, 2007, and is for *Coleman* beds only. CDCR data as of May 2, 2007. | | |

- **In Fill Projects, including assessment of Coleman infrastructure at In-Fill institutions:**

  Assembly Bill (AB) 900 was passed by the Legislature on April 26, 2007, and was signed by the Governor. Discussion regarding the In Fill Projects is now occurring.

- **Pre-release planning programs:**

  The Transitional Case Management Program for the Mentally Ill (TCMP-MI):
  - Provides pre-parole assessments and bridges the information to the Parole Outpatient Clinics (POC) via the Parole Automated Tracking System.
  - TCMP-MI social workers also provide the inmate with a POC appointment, and advocate for POC in an attempt to get the inmate to attend the scheduled appointment upon parole.
  - TCMP-MI social workers complete Social Security Supplemental Security Income (SSI) applications for Enhanced Outpatient Program (EOP) designated inmates prior to parole.

Date: March 8, 2007

Page 4 of 6

VAL2007 100240

Enclosure II

## INFORMATION REQUESTED, APRIL 20, 2007, COLEMAN POLICY MEETING AGENDA ITEMS

The Transitional Case Management Program for Human Immunodeficiency Virus and Acquired Immune Deficiency Syndrome (TCMP-HIV):

- Program services available to mentally ill inmates that are HIV/AIDS.
- Assists this population in obtaining local HIV/AIDS related support services to ensure a smooth transition to parole and provide some incentives to HIV infected parolees to remain in the community rather than return to prison to receive the specialized and expensive care required for their illness. The services most used by TCMP-HIV participants are support groups, emergency housing, entitlement programs, hospice care, residential substance abuse, placement, transportation assistance, employment assistance, and HIV peer education.
- This requires inmate's voluntary participation.

Pre-Parole Benefits:

- The Department has begun implementation of a new program that will utilize contracted social workers (benefits workers) within the prisons to apply for and secure federal and state benefit entitlements prior to an inmate's return to the community. Benefits that will be applied for are; Social Security benefits, State sponsored Medi-Cal, and Veteran's Affairs benefits.
- The target population is inmates within 210 days to parole that are medically, mentally or developmentally disabled, enduring a long-term illness, or have reached the age of 62 years or older (55 if a disabled widow/widower).
- This also includes inmates designated as members of the Coleman, Plata, Armstrong, and Clark class action lawsuits will be screened for potential eligibility.

**Note:** Due to delays and uncertainty of finalizing a contract with expected contractor, Division of Adult Parole Operations (DAPO) is now working with other potential partners. This has caused a delay to the targeted January/February, 2007 implementation, and is now not expected to be implemented for several months (hopefully by the end of summer 2007).

### Pre-Parole/Transitional Services
### For Inmates in Department of Mental Health (DMH) Programming

Currently the DAPO - TCMP-MI does not ducat or go to inmates that are in DMH beds, as it is not in the scope of services for which they are contracted to provide.

Additionally, no definite plan is in place to have the upcoming benefits workers provide pre-parole services to DMH inmate-patients.

VAL2007 100241

Enclosure II

**INFORMATION REQUESTED, APRIL 20, 2007, COLEMAN POLICY
MEETING AGENDA ITEMS**

DAPO is not closed to serving this population if resources were made available, contract staff is available, and the agreement between CDCR and DMH includes processes for the pre-parole services.

Also, DAPO is willing to discuss the possibility of DMH providing transitional services in their discharge planning, and would be open to developing a process with them from which necessary information sharing could occur.

DMH facilities outside of CDCR grounds are not currently included in planning for pre-parole services.

Date: March 8, 2007                                          Page 6 of 6