# EXHIBIT 6

Memorandum To: John Hagar, Chief of Staff

Re:  McFarland Community Correctional Facility

This report summarizes the unannounced on-site inspection of the McFarland Community Correctional Facility ("MCCF")conducted May 16,2007  by Jackie Clark RN, Director of Nursing Operations, Dr. Kent Imia Medical Consultant Office of the Receiver, and Karen Rea, RN, Central Region Director of Nurses.

> Description: MCCF is a minimum security private prison operated by the Global Expertise in Outsourcing ("GEO") Corporation. MCCF is located at 120 Taylor Ave. McFarland, California. It is one of three private prison facilities located together in McFarland. The other two facilities are Golden State and Central Valley. Between the three facilities there were a total of 1292 inmates on the day of our visit.  GEO currently operates under a Ten year contract with the California Department of Correction and Rehabilitations (CDCR).   According to MCCF staff, the facility has a capacity of 210 inmates.  On the day of our visit there were 198 inmates at MCCF and the facility was pending intake of 8 new arrivals.

**Access to Care:**

Process of Care: routine medical care is provided by one FTE Nurse Practitioner (NP) who is onsite from 8:00- 4:30 M-F with weekend and holidays off.  Registered Nurses ("RN") are scheduled to work from 4:00- 8:00 pm M-F and from 8:00- 8:00 on Saturdays, Sundays and Holidays. From 8:00 pm until 8:00 am there is no onsite medical coverage.  The GEO staff informed us if there is a problem they can contact the nurse via telephone. After hours urgent and emergent cases are telephone triaged by the GEO correctional staff to the nurse on call, who may or may not come into the facility to see the patient before deciding on a disposition. The GEO staff has not been provided any training or policies as to what medical complaints should generate a call to the nurse on call. There is no system that track the number of calls made after hour to the nurse on call. The GEO chief of Security did state they return 1-2 inmates per month to North Kern State Prison ("NKSP") for medical complaints.

Clinical cases beyond the clinical capability of the NP can be referred to NKSP for further evaluation by a physician. Inmates with dental or mental health problems are also referred NKSP for evaluation.  According to GEO staff these transfers (medical and

return) to NKSP occurs once per week, and they average 8-10 patients with the majority of the cases being dental. There was no log that would indicate the reason why the patients were being sent to NKSP and no log that would indicate the treatment or disposition of the patient.

There is currently no physician back up for the NP on site. According to NP Jovet, a Dr. Odeluya was available for telephone back up only but has terminated his relationship with the facility as of two weeks ago. She called him perhaps "once every three months" to discuss very abnormal lab values. With the lack of on site physician supervision for the nurse practitioner, and given the level of NP Jovet clinical skills, there is a potential mismanagement of inmate's medical issues or delay in diagnosis of medical conditions.

NP Jovet maintains a log of "chronic condition" patients, which includes a handful of hypertensive, a few asthmatics and 10 or more patients with chronic liver function abnormalities. No diabetics are housed at MCCF.

**Interviews:**

We interviewed 6 inmates chosen at random, NP Jovet, the GEO chief of security, and the CDCR Captain in charge of the all three facilities, as well as random GEO correctional staff.

The inmates were generally satisfied with their care, and knew how to access care. They reported being seen within one working day of presenting a ducat. None had chronic medical problems and all of their medical complaints were minor ("spider bite", minor trauma, etc.) One inmate reported that a fellow inmate, with severe abdominal pain, had experienced a prolonged delay in transfer from McFarland to NKSP sometime in the second week of April of 2007.

**Case Reviews:**

We reviewed two charts of patients from the "Chronic condition" log, and asked for the transfer information on the patient who had experienced the delay in transfer for abdominal pain. There was no documentation that logged the treatment and disposition of the patient.

Gonzales, M: V-078923. Staff believe that this man to be the referenced patient with severe abdominal pain. He had presented about 1 AM on April 11, 2007. NKSP transportation was "asked for" at 2:00a.m., but by 8:00 a.m. the response team had not yet arrived. At that time, a covering NP and the facility GEO Captain arrived at the

facility, called NKSP again, and arranged for emergency transport. No one was sure what had become of Mr. Gonzales, but the NP thought he might have had acute appendicitis. He did not return to McFarland and no medical records on this patient were available.

Jackson, J.: V-93855. This 30 year old man has a "history of asthma." He was seen for acute shortness of breath and wheezing, had a peak flow of 200 and was treated by the NP with steroid MDI (QVAR) and albuterol inhalers. According to her, he "did well'. A chart note one month after the episode noted he was doing much better. The chart, however, was incomplete. The initial intake questionnaire was not filled out (the NP noted that was the responsibility of the R and R facility, not McFarland), the treatment of the initial episode did not include nebulizer treatment, and follow-up was not timely.

Garcia E.: F02582. This 40 year old patient with "hypertension", seen twice by the NKSP physician. The last visit in the record was 1/07/07, at which time the pt had a BP of 182.90, and was switched from dyazide to atenolol. He had not been seen since the visit on 1/07/07. The NP admitted that he seemed to have "slipped through the cracks" and that she would see him again "tomorrow."

We also reviewed an appeal from an inmate who complained of recurrent shortness of breath, and asked to be seen by a physician. The request was not allowed. When NP Jovet was asked about this case, she said "he didn't want to see me", but had no explanation was provided concerning why she subsequently wrote an order for ASA Bid times 30 days, and why he was not ducated and transferred for the MD backup at NKSP.

**Conclusions:**

1. Routine non-emergency medical care at McFarland appears to be adequate during regular hours Monday through Friday on day shift only. The "pm" and "night" shift clinical staffing, however, is not adequate. There are no on-site clinical staff to identify and respond to emergency medical issues from 8:00 p.m. to 8:00 a.m. seven days a week.

2. The inmate population is basically young and healthy (there were no diabetics or other chronically ill patients, for example, in the population).

3. The clinical competence of the NP Jovet requires additional review. During our site visit, for example, she was unable to explain the process of access to care. It was also reported to her that there was currently a case of confirmed chicken pox of which she was unaware (Dorm D was on a 28 day restricted movement due to the confirmed case).

This is the second case of Vermicelli Zoster (chicken pox) at McFarland in the past 5 months. There has also been three different out breaks of Norivirus that NP Jovet failed to identify and treat in a timely manner. The Public health Nurse III in Headquarters has spent many hours directing and guiding NP Jovet in managing these patients.

4. There is no physician backup or oversight for the NP. This factor and the clinical competency issues of the NP has resulted in the mismanagement of inmates medical problems.

5. Record keeping by the GEO staff is incomplete. There is no tracking system in place to track and following chronic patients. There is no tracking system in place that tracks the inmates being sent out for medical (routine or emergent).

6. The arrangement with NKSP for emergency transfer of patients after hours is not adequate. There have been unnecessary and dangerous delays concerning the transfer of inmates who required urgent medical care.

**Recommendations:**

1. Develop, implement, and monitor a McFarland/NKSP corrective action plan for emergency transfers.

2. Develop, implement, and monitor a corrective action plan which requires GEO staff to maintain an adequate log of all patients' transfers, including reason for transfer. Develop, implement, and monitor a corrective action plan which requires GEO and CDCR staff to review and document the review of any transfers that did not go well.

3. Verify the credentials of NP Jovet. Conducting a professional practice review of NP Jovet. Develop, implement, and monitor a corrective action plan which requires credentialing and professional practice reviews of all Community Correctional Facility clinical staff.

4. Establish a quality management system to review the clinical care at McFarland.

5. Instruct CDCR to fund and establish 24/7 on-site clinical coverage for the McFarland CTF campus within 30 days.

6. Develop, implement, and monitor a corrective action plan which requires GEO to establish written policies as to when the clinical staff is to be notified or an inmate's medical complaint.

It should be noted that these additional remedial programs may warrant establishing a new CTF monitoring unit within the medical organization which reports to the Receiver.