PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR AN EXTENSION OF TIME TO REPORT ABOUT THE PROVISION OF ENHANCED OUTPATIENT PROGRAMS IN ADMINISTRATIVE SEGREGATION UNITS** |

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| ASU | Administrative Segregation Unit. |
| DA | District Attorney. |
| CDCR | California Department of Corrections and Rehabilitation. |
| EOP | Enhanced Outpatient Program.  EOP programs are sheltered treatment programs that house severely mentally ill inmates.  There are currently approximately 4,100 EOP inmates.  Because these inmates are unable to function in a general population setting, they live in segregated housing units.  They are given 10 hours each week of therapy or other "structured therapeutic activities."  EOP inmates meet weekly with their case managers. |
| ICC | Institution Classification Committee.  A committee that reviews inmates' custody and mental health factors in making housing decisions, including the removal of inmates from ASU housing due to mental health decompensation and need for alternative housing. |

On June 7, 2007, defendants filed an ex parte motion seeking a 45-day extension of time to comply with this Court's March 9, 2007 and June 1, 2007 orders regarding the provision of Enhanced Outpatient Programs (EOPs) in administrative segregation units (ASUs). Defendants note in their request that they have a draft of their plan and that they have met with the Special Master's experts twice, on May 3 and 14th, 2007. Docket 2264 at 3 (Def. Ex Parte Motion, filed 6/7/07); Docket 2264-2 at ¶¶ 6-7 (McKeever Decl.). The defendants request additional time in order to review policy changes "suggested by the March and June court orders" and cite to the "number of projects and plans presently being handled by the CDCR staff responding to these court orders," as the reasons for the requested additional time. *Id.* Defendants do not provide the draft report which they state they have completed. *Id.*

As set forth more fully below, plaintiffs oppose this extension of time due to the extreme importance of this issue and the urgent need for defendants' response. The Court should not grant longer than a two-week extension for this report.

**I.    Defendants Have Known About Problems Providing Enhanced Outpatient Programs In Administrative Segregation Units For Nearly A Year And Have Failed To Diligently Address Those Problems**

The March 9 and June 1, 2007 orders contain obligations that defendants have known about for many months. The March 9 order states:

> Defendants shall work with the special master's experts to review the provision of Enhanced Outpatient Programs (EOPs) in administrative segregation units. The review process shall conduct an audit of the EOP administrative segregation population and examine more effective ways for reducing the lengths of stay of EOP inmates in administrative segregation; alternative methods for the delivery of mental health treatment, including the use of a different mix of clinical and paraclinical professionals; the use of different housing and/or service models for particular categories of EOP administrative segregation inmates; and any other strategy or approach likely to better serve the treatment needs of EOP administrative segregation inmates. The study shall result in a brief report, prepared within ninety days from the date of this order, which shall be shared with parties, counsel and the court.

3/9/07 Order at 2-3 (Docket 2158).[1] The June 1, 2007 order added a clarification about the contents of the report, stating that it must include:

> (a) [defendants'] plan for modification of the present requirement that allows ICC reviews for inmates in administrative segregation. Defendants should consider conducting ICC reviews every 45 days for those inmates awaiting disposition of referrals to local district attorneys and possibly for all mental health caseload inmates who have been held in administrative segregation over 90 days. Defendants should also consider transferring inmates in administrative segregation to more appropriate placements pending processing of their DA referrals; and (b) a breakdown of the numbers of administrative segregation inmates currently awaiting transfer to the sensitive needs yards.

6/1/07 Order at 4-5 (Docket 2255).

While these orders were issued relatively recently, defendants have known about them for many months. The Special Master's 17A monitoring report, which originally contained these orders, was issued in draft form six months ago, on December 4, 2006. *See* Declaration of Jane E. Kahn In Support of Plaintiffs' Opposition to Defendants' Ex Parte Motion for An Extension of Time To Report About the Provision of Enhanced Outpatient Programs In Administrative Segregation Units ("Kahn Decl.") at ¶ 5. Defendants did not object to that report and the final version was filed with the Court on February 14, 2007. *See* Docket 2140. Even before the Special Master issued his draft report back in December, however, defendants were aware of the urgent EOP administrative segregation issues from exit phone calls following the tours at various facilities.[2] *See* Kahn Decl. ¶¶ 4-5 (detailing exit phone conferences with defendants in May and July of 2006, nearly a year before this Court's order was issued, about poor mental health care for EOP patients in administrative segregation units).

---

[1] Although the Order was signed on March 9, 2007, it was not filed until March 12, 2007.

[2] The portions of the Order requiring defendants to conduct frequent classification committee reviews of inmates housed in ASUs and to consider alternative placements for those inmates is also not new; it tracks relevant sections of the *Coleman* Program Guide. Kahn Decl. ¶ 9.

## II. The Special Master Set A Reasonable Deadline For This Report, Which Addresses Serious, Ongoing Issues That Endanger the *Coleman* Class

The importance of this issue, the provision of Enhanced Outpatient Programs to inmates housed in administrative segregation, cannot be understated and, in fact, is directly related to defendants' overall plan to address suicides in administrative segregation units. Kahn Decl. ¶ 7 (detailing the October 2006 administrative segregation suicide plan and the subsequent monthly meetings during which defendants were repeatedly asked to provide data required by the March 9th and June 1, 2007 orders at issue in this motion). Moreover, the court-ordered, joint expert panel, which met during the summer of 2006 regarding suicide prevention in administrative segregation units, identified both the housing of non-disciplinary inmates in ASUs and lengthy stays of inmates in ASUs as contributing factors to the high suicide rates within the CDCR. *Id.*

In the past several months, the Special Master has intentionally kept his recommendations for proposed orders to a bare minimum. He explained the reason for this approach in his 17A Status Report: "With so many roiling issues of overcrowding, prisoners being transferred out of state, seemingly interminable changes in the CDCR's leadership, organization and missions, implementation of the new Program Guide, and judicial assumption of control over medical care, this does not seem the appropriate moment to pile more orders on the barely discernable plate of the defendants." Docket 2140-3 at p. 132. In other words, the Special Master was well aware of the numerous issues on defendants' plate and focused his efforts on three issues that "needed to be kept on the defendants' radar screen," one of which was the provision of EOP care to inmates housed in administrative segregation. *Id.* The Special Master explained that rather than "present the draft recommendations in the form of a court order, [he] sought instead a simple commitment from the defendants to address each issue within the next 60 days and generate an appropriately responsive plan for remedying each shortcoming within a reasonable time frame." *Id.* As to this issue in particular (the provision of EOP care in ASUs):

> [D]efendants expressed a willingness to work with the monitor's experts to explore possible alternative means for delivering EOP

-3-

|   |   |
|---|---|
| 1 | treatment more effectively in administrative segregations. Ideas specifically mentioned included an audit of the EOP administrative segregation population to identify any categories of inmates with possibly discrete housing or treatment needs; a review of alternative staffing models and service models for different categories of EOP inmates; and another review of physical plant needs. |

Docket 2140-3 at 135.

In seeking the report at issue here, the Special Master set reasonable deadlines that were specifically contemplated within the context of this active litigation. Rather than comply, defendants dragged their feet. They knew about the substance of the order months ago, including that they would be asked to prepare a report. Defendants must be held to the timeframes contemplated by the Special Master and must comply with the Court's carefully considered orders.

## CONCLUSION

For all of the reasons stated above, plaintiffs respectfully oppose defendants' motion for a 45-day extension to comply with this Court's March 9 and June 1, 2007 orders regarding the provision of Enhanced Outpatient Programs in administrative segregation units. Plaintiffs urge this Court to allow a maximum two-week extension for this report.

Dated: June 11, 2007            Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP


By: */s/ Amy Whelan*
    AMY WHELAN
    Attorney for the Plaintiffs