PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

    Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants

No.: Civ S 90-0520 LKK-JFM

**DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR AN EXTENSION OF TIME TO REPORT ABOUT THE PROVISION OF ENHANCED OUTPATIENT PROGRAMS IN ADMINISTRATIVE SEGREGATION UNITS**

I, Jane E. Kahn, do hereby declare under penalty of perjury as follows:

1. I am an attorney admitted to practice law in California and an associate in the law firm Rosen, Bien & Galvan, one of the counsel of record for plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify. I make this declaration in support of Plaintiffs' Opposition to Defendants' Ex Parte Motion for An Extension of Time to Report About the Provision of Enhanced Outpatient Programs in Administrative Segregation Units.

### DEFENDANTS HAVE FAILED TO ACT WITH DUE DILIGENCE TO ADDRESS SIGNIFICANT PROBLEMS WITHIN THE EOP ADMINISTRATIVE SEGREGATION UNITS

2. Defendants request an additional 45 days to complete their plan to improve EOP care in the administrative segregation units, noting that they have "commenced their work on this plan." Docket 2264, Def. Ex Parte Motion, filed 6/7/07 at 3. Defendants note that two meetings have been held with the Special Master's experts and a draft of their plan has been completed. *Id.* The defendants request additional time in order to review policy changes "suggested by the March and June court orders" and cite to the "number of projects and plans presently being handled by the CDCR staff responding to these court orders," as the reasons for the requested additional time. *Id.* Defendants do not provide the draft report which they state they have completed. *Id.*

3. This Court's March 9, 2007 Order, from which defendants now seek relief, adopted the Special Master's recommendation regarding the EOP administrative segregation units contained in the Seventeenth Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols, Part A, filed on February 14, 2007 ("17A") [Docket 2140]. This recommendation was first provided to the parties in the draft version of 17A on December 4, 2006. As noted by the Special Master: "[t]he second recommendation included in the draft version of the report sought a clear commitment from the defendants to look again at the provision of the EOP level of care in hub administrative segregation units. The impetus for the recommendation was the report's

finding, *once again*, that the delivery of EOP care in the administrative segregation environment remained beyond the capability of most institutions due to constraints of mental health and custody staffing, programming space and scheduling." Docket 2140 at 134 (emphasis added). The Special Master noted that *"defendants, moreover, have been under court orders to improve programming space in administrative segregation hub units since early 2002." Id* at 135 (emphasis added). Defendants did not object to the recommendation in the Draft 17A Report. 3/9/07 Order, Docket 2158.[1]

4.   Defendants were notified of the deficits concerning the EOP administrative segregation programs, which formed the basis of the 17A recommendation, even earlier than the Draft 17A Report because the Draft 17A institutions were reviewed on tours between March and July 2006. I have attended numerous monitoring tours during my work on the *Coleman* case and have observed that at the conclusion of a tour, the Court experts give an Exit conference for the Warden, Health Care Manager, Chief Psychiatrist and/or Chief Psychologist, line staff (clinical and custody), CDCR Headquarters staff, defense counsel (representatives from the Attorney General's Office and CDCR Staff Counsel) and plaintiffs' counsel. During this Exit conference the various program areas are critiqued by the Court experts, including the EOP administrative segregation program. The purpose of the Exit conference is to provide the institutional staff and CDCR Headquarters and defense counsel with critical feedback on problematic program areas; this early feedback is given so that remedial efforts can be implemented as needed and not delayed until the official court report is written and filed.

5.   The Prison Law Office and Rosen, Bien & Galvan cover all of the Exit conferences for the institutions reviewed during monitoring visits by the *Coleman* experts. During the Exit conferences, I tape the phone calls and take notes. I participated in the Exit conferences for four of the institutions reported in 17A: Salinas Valley State Prison (June 6,

---

[1] This Court signed this order on March 9, 2007, but it was not filed until March 12, 2007.

-2-
DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR AN EXTENSION OF TIME TO REPORT ABOUT THE PROVISION OF ENHANCED OUTPATIENT PROGRAMS IN ADMINISTRATIVE SEGREGATION UNITS, NO.: CIV S 90-0520 LKK-JFM

2006), CSP-Lancaster (May 5, 2006), California Medical Facility (July 28, 2006), and CSP-Sacramento (July 20, 2006). I have reviewed my notes from those Exit conferences and they contain information regarding problems with the provision of mental health care to EOP patients in the administrative segregation units at those prisons. Although plaintiffs' counsel are not permitted to use information from these Exit conferences in any legal briefing because they are considered "preliminary" comments, my notes from the Exit conferences at these prisons reflect the same problems identified in the draft and final 17A Report, including the failure to provide adequate mental health care for EOP patients in hub administrative segregation units. This information in the Exit conferences was provided to defendants almost six months before the draft 17A report was completed in December 2006 for comments/objections by the parties.

**DEFENDANTS DO NOT HAVE NEW OBLIGATIONS IMPOSED BY THE JUNE 1, 2007 ORDER NECESSITATING AN EXTENSION OF TIME TO RESPOND**

6. On June 1, 2007, the Court ordered defendants to include in their report on EOP administrative segregation additional information that has been previously been requested as part of the monitoring of Defendants' Plan to Address Suicide Trends in Administrative Segregation Units, filed October 2, 2006 [Docket 1990]. The information sought in the June 1, 2007 Order has either been requested repeatedly from defendants or is well within their ability to respond in a timely manner.

7. Defendants' Plan to Address Suicide Trends in ASUs included, as one factor for reducing suicides, the reduction in lengthy stays in the administrative segregation units. *See* Docket 1990 at 9. Various administrative procedures for reviewing lengths of stay of inmates in ASUs were listed in this section of the Plan, including ICC reviews of inmates in the ASUs, but determining the numbers of inmates and the nature of their placements in the ASUs remain difficult, if not impossible over time. For example, on February 12, 2007, the Court approved defendants' October 2, 2006 Plan, but required the Special Master to meet with the parties monthly to follow up, refine and monitor implementation of the plan. 2/12/07 Order, Docket 2139. I participated in each of the monthly meetings and during each monthly meeting,

-3-
DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR AN EXTENSION OF TIME TO REPORT ABOUT THE PROVISION OF ENHANCED OUTPATIENT PROGRAMS IN ADMINISTRATIVE SEGREGATION UNITS, NO.: CIV S 90-0520 LKK-JFM

defendants were asked to provide adequate data regarding their ASU population, which they were unable to provide despite repeated requests over many months. The "breakdown of the numbers of administrative segregation inmates currently awaiting transfer to the sensitive needs yards," as well their lengths of stay in the administrative segregation yards were never provided. 6/1/07 Order at 6.b, Docket 2255. The June 1, 2007 Order also requires that defendants provide the data that they were requested to provide repeatedly during the Court mandated reviews and which is critical in order to assess defendants' ability to implement their Plan to Address Suicide Trends (which by necessity includes appropriate bed planning that will permit defendants to move non-disciplinary inmates out of ASUs to the "right beds.")[2] It will also permit the Special Master to review the adequacy of the classification processes that are supposed to move inmates rapidly out of these units. Both the housing of non-disciplinary inmates in ASUs and lengthy stays of inmates in ASUs were identified by the expert panel as contributing factors to the high suicide rates within CDCR. *See* Docket 1990 at 4, 6.

       8.     Defendants have also been ordered to include in the EOP ASU report a plan for modifying the present regulation that permits ICC reviews of inmates in ASUs every 90 days. 6/1/07 Order ¶6.a, Docket 2255. Previously, inmates in ASUs were reviewed by ICC every 30 days. Two years ago and without permission of the *Coleman* Court, defendants modified these regulations to permit reviews every 90 to 180 days. Section 3335 of the California Code of Regulations (CCR), Title 15 (amended in 2005 to permit inmates placed in segregated housing to have their cases reviewed every 90 to 180 days, depending on the reason for the placement, rather than the previously mandated 30 day review). The Special Master has recommended that defendants consider conducting these reviews every 45 days for inmates awaiting district attorney referrals and for all mental health inmates who have been in ASUs

---

[2] Defendants have proposed as part of their In-Fill Plan to build an additional 2,200 plus Super-Max ASU beds. It is unclear as of yet how these types of beds will help move non-disciplinary inmates currently housed in ASUs to the "right" beds.

more than 90 days. Docket 2210 at 11.[3] The Court adopted this recommendation. 6/1/07 Order, ¶6.a, Docket 2255. The 17A recommendation regarding EOP ASUs also requires that defendants "examine more effective ways for reducing the lengths of stay of EOP inmates in administrative segregation." Docket 2140 at 137. In fact, the Special Master prefaced this recommendation by stating: "That report was to examine…more effective ways for reducing lengths of stay of EOP inmates in administrative segregation." Docket 2210 at 11. Thus, the June 1, 2007 Order adds direction to the review required by the March 9, 2007 Order, but does not add any new responsibilities.

9. The June 1, 2007 Order also directs defendants to include in their report on EOP ASUs that they will consider transferring inmates in ASU to more appropriate placements pending processing of their district attorney referrals. This consideration is similar to the requirement found in the Revised Program Guide Sections for ASU and Security Housing Units ("SHU"). When a mental health inmate has a committee review, his or her mental health clinician must consider whether the inmate should have an alternative placement because of decompensation caused by lengthy stays in the locked-down conditions. Docket 1753, Revised Program Guide: 12-7-2 ("[m]ental health assessments and input into the classification decision-making process during ICC, including…likelihood of decompensation if retained in ASU, recommendations for alternative placement.") and 12-8-4 ("[c]onduct Mental Health assessments to provide input into ICC proceedings concerning…likelihood of decompensation if retained in SHU, and recommendations for alternative placement."). The June 1, 2007 Order redirects defendants to implement these provisions within a specific context – EOP ASU

---

[3] Defendants proposed the regulatory change to the ICC review as an "emergency regulation" which provided for reviews as infrequently as every 180 days. The proposed Regulation Number 05/05, amending Title 15, Section 3335, permitted the review of inmates in segregated housing every 90 to 180 days, rather than the previously mandated every 30 days. Plaintiffs filed formal objections to this proposed emergency regulation on August 30, 2005, and provided testimony; however, the new timeframes were implemented. During the meeting with the expert suicide panel in July 2006, the experts were quite surprised by the infrequency of the committee review process for inmates placed in ASUs, which necessarily results in longer stays.

patients with lengthy stays due to pending district attorney referrals. Revising the use of this section in the context of lengthy district attorney referrals of EOP ASU patients should create few, if any, problems for defendants in their response to the June 1, 2007 Order. These reviews are neither burdensome nor do they require significant resources; rather, they require defendants to seriously consider the impact of custodial decisions (e.g. district attorney referrals) on the mental health of their EOP patients.

10.   Finally, it is worth noting that since June 2006, defendants have requested nine (9) extensions to respond to this Court's Orders, including two related to this Court's Order requiring defendants to develop a plan to address suicides in their ASUs. *See*, Docket 1960, filed 8/18/06 and Docket 2044, filed 11/15/06. At a time when the number of orders has been specifically limited to only those necessary because of the many critical issues faced by defendants, their inability to respond to even these limited orders is quite disturbing. Their delays have significant repercussions; lives are at stake and suffering results from defendants' failure to act in a timely and responsible manner to the serious problems documented in the Special Master's 17A Report.

I declare under penalty of perjury under the laws of California and the United States, that the foregoing is true and correct, and that this declaration is executed in San Francisco, California on June 11, 2007.

_____
Jane E. Kahn