PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS'** *EX PARTE* **MOTION FOR AN EXTENSION OF TIME TO COMPLY WITH THE APRIL 17, 2007 COURT ORDER, ¶ 3, (REQUIRING A REPORT REGARDING THE CONSOLIDATED CARE CENTER AND DMH PORTIONS OF DEFENDANTS' DECEMBER BED PLAN)** |

The Special Master, in a report issued on February 7, 2007, recognized the urgent need for defendants to clarify important missing information about plans for Consolidated Care Centers ("CCCs") and CDCR's proposed takeover of DMH functions, first set forth in defendants' December Bed Plan: "The Court should schedule a hearing *within 30 days* at which defendants should be required to demonstrate the reasonableness and feasibility of their proposals to assume responsibility for the provision of inpatient mental health services in place of DMH and reorganize and consolidate their delivery of existing mental health services." Docket 2133 at 20 (emphasis added). On March 27, 2007,[1] this Court generously granted defendants' request for time to file an additional report addressing the holes in their December Bed Plan. Nevertheless, it ordered defendants to file, "a detailed report on how CDCR's assumption of responsibility for services presently provided to class members by DMH will be accomplished and, if further study suggests such assumption of responsibility is not feasible, what alternative(s) will be pursued." Docket 2173 at 2.[2] On April 17, 2007, this Court revised that order by requiring defendants, by June 15, 2007, to "file a supplemental report which addresses two issues: CDCR's relationship with DMH and CDCR's consolidation plan." Docket 2200 at 2.[3]

---

[1] The March 27, 2007 Order also required defendants to "complete and occupy the 50-bed mental health crisis bed units at California Medical Facility and California Men's Colony as soon as possible." Docket 2173 at 2. Although defendants have moved forward with the California Medical Facility project, they have not moved forward with the California Men's Colony unit. Plaintiffs are waiting for additional information about this project, but may seek to compel compliance with this Order soon.

[2] The March 27th Order did not address defendants' plan to build "Consolidated Care Centers" ("CCCs").

[3] This Court issued the April 17th Order in response to a recommendation by the Special Master, which stated:

> In their late February response to the special master's February 2, 2007 status report to the Court on the revised December bed plan, which identified concerns raised by the vagueness of the consolidation proposal, defendants conceded the lack of detailed planning for the reorganization by offering to submit a supplemental report with "a detailed analysis of key components" of consolidation within 90 days. The defendants should be directed to submit expanded planning information on both issues, consolidation and CDCR's relationship with DMH, simultaneously on June 15, 2007.

(continued . . .)

On June 13, 2007, defendants filed an *ex parte* motion seeking a 60-day extension of time to comply with the April 17, 2007 Order. The primary reason for defendants' request is that they need input from the Governor's "Facilities Construction Strike Team," which is charged with implementing Assembly Bill 900 ("AB 900"). As set forth more fully below, plaintiffs oppose this extension of time due to the extreme importance of this issue and the urgent need for defendants' response. Defendants have repeatedly delayed and derailed their bed plans and mental health construction projects over the past few years. Even court-ordered and legislatively approved projects have been stopped in their tracks. On June 30, 2006, rather than complying with an order for an amended bed plan, defendants asked for more time because Navigant had discovered errors. The December 2006 Bed Plan resulted in further delay. It abandoned projects, dropped time frames, raised new blockbuster issues (CDCR replacing DMH in running inpatient hospitals) and again failed to even plan to address the unmet need in a timely manner. In the meantime, critical court-ordered projects have languished or been abandoned. The Governor's recent creation of a "Facilities Construction Strike Team" (hereinafter "Strike Team") is not grounds for seeking yet another delay. Nor is the passage of AB 900. Plaintiffs urge this Court to deny defendants' *ex parte* request. If any extension is granted at all, it should not exceed two weeks.

**Delayed Bed Plans**

As this Court is well aware, defendants have been unable for many years to provide anywhere near the number of inpatient (acute and intermediate facility beds), mental health crisis beds (MHCBs) and Enhanced Outpatient Program (EOP) beds necessary for the *Coleman* class and will continue to be unable to do so into the foreseeable future. Throughout 2006, defendants filed numerous short-range, interim and long-range bed plans to address these severe shortages. After making some progress toward an adequate plan, defendants abruptly changed course in December of 2006, filing a vague and undeveloped "plan" for long-range

---

Docket 2186 at 10-11.

beds that was radically different from all other plans in two major ways. First, it sought to create "Consolidated Care Centers" throughout the CDCR, which would be prisons that clustered *Coleman* class members. Second, CDCR proposed, for the first time in the history of this case, to assume control of the highest level of *Coleman* beds, intermediate care facility and acute care beds, and to also remove all CDCR patients from DMH hospitals.

Plaintiffs objected to the December Bed Plan on January 16, 2007. *See* Docket 2111-2112. Although defendants have been treating the December Bed Plan as approved by this Court and have even reported to the Legislature and members of the Strike Team that AB 900 will implement that plan, the December Bed Plan is nothing but a "concept paper" that remains disputed between the parties and *unapproved* by this Court. *See* Declaration of Deborah Hysen In Support of Defendants' Supplemental Brief In Opposition to Plaintiffs' Motion for Referral to a Three-Judge Panel, Docket 2238 at ¶ 14 (Ms. Hysen, who is the lead member of the Facilities Construction Strike Team stated, "I am familiar with Defendants' amended long-term bed plan, filed with this Court on December 19, 2006, and its aim of meeting the forecasted *Coleman* population of 2011. *I understand AB 900 includes that amended long-term plan and provides the necessary funding for that plan.*")(emphasis added); *see also* Special Master's Report & Recommendation Regarding the December Bed Plan, Docket 2133 at p. 14 ("the [December Bed Plan] is even less than a plan for a future plan; it is, more accurately, a concept paper.").

**The December Bed Plan Cannot Be Approved And Badly Needed Construction Projects Cannot Move Forward Without the Report At Issue In This Motion**

The most important fact for this Court to keep in mind regarding this *ex parte* motion is that the December Bed Plan remains *unapproved.* This means that AB 900 is *on hold* until this Court rules on the December Bed Plan. Thus, the premise of defendants request for an extension, that they need more time "in order to lay the groundwork provided by AB 900 and the Facilities Strike Team and so [sic] ensure effective development and administration of the submitted mental health bed plan," is all wrong. Docket 2276 at 3. The CCC concept is not approved by this Court. Indeed, the very reason for the Special Master's recommendation and

-3-
PLAINTIFFS' OPP TO DEFS' EX PARTE MOTION FOR EXTENSION OF TIME TO COMPLY WITH AD SEG EOP ORDER, NO.: CIV S 90-0520 LKK-JFM

the Court's subsequent order requiring key information about the CCC concept was the fact that the December Bed Plan was a mere "concept paper" that failed to provide "enough information to justify the Court's approval of the two major proposed underlying changes, namely, CDCR's assumption of responsibility for all inpatient mental health from DMH and the consolidation of all intensive mental health programs…" Docket 2133 at 18. Until this Court rules on the December Bed Plan, badly needed construction projects are in limbo; yet the Court cannot so rule without the plan at issue here.

As plaintiffs pointed out in their January 16, 2007 opposition to the December Bed Plan, there are serious problems with the CCC concept. *See generally* Docket 2111-2112. Plaintiffs wrote:

> Unless and until defendants can demonstrate that any speculative new project will be constructed, licensed, staffed and operational at a date certain that is equal to or earlier than the completion date for the already approved projects, the Court must require defendants to press ahead and accelerate the already approved projects. Lives are at stake and additional delay, which is what defendants are proposing, is unacceptable. Moreover, because the December Bed Plan is contingent upon major projects to be undertaken by the *Plata* Receiver that have not yet occurred, been funded or approved, it places a critical part of the *Coleman* remedial process beyond the control of this Court. Defendants acknowledge that "the Receiver [has] not developed a formal proposal for construction of these new health care beds," and that additional information regarding the Receiver's plans is not expected until April 2007 at the earliest. December Plan at 5. Unlike the previously approved projects, the Consolidated Care Centers are only "concepts" in the very early stage of development; as defendants acknowledged, and they cannot represent to the Court that any of the CCC projects could be built, staffed and operational by June 30, 2011.

Docket 2111 at 3-4; Docket 2112 at ¶¶ 4-5. Defendants admitted in the December Plan that, unlike the *Coleman* court-ordered projects that they sought to abandon in the bed plan, the CCC's, are unplanned, unfunded, unsited and have no timetable for construction or completion. *See, e.g.,* December Plan at 20 (listing target completion dates for the CCC's as "to be determined"). Now, six months later, the CCCs are just as tenuous and unformed. In fact, at a *Coleman* policy meeting on June 12, 2007, six months after submission of the December Bed Plan, defendants admitted yet again that there still is no schedule for building

the CCCs and that there is not even a plan to come up with that schedule. Bien Decl. ¶ 2. Moreover, the Receiver is no further along in his process and has not made any commitment to include mental health bed construction within his jurisdiction. Bien Decl. ¶ 4.

Plaintiffs and this Court cannot wait until mid-August for this essential report which is holding up desperately needed construction of mental health beds. Lives are at stake and neither the December Bed Plan nor AB 900 can move forward until defendants are able to demonstrate that the CCCs are feasible, can be built on an expedited schedule and will provide the necessary beds for the *Coleman* class. Accordingly, if any extension is granted at all, it should not exceed two weeks.

**The Great Importance Of These Issues Requires That The Strike Team Work On This Court's Schedule And Not The Other Way Around**

Defendants just represented to the Court in their overcrowding filings that they are complying with the *Coleman* Court orders and are on schedule to remedy the constitutional violations without the need for a population cap. The Strike Teams were represented as the means to bring the prison system more rapidly into compliance with *Coleman* court orders, not as one more excuse for delay. The importance of these delayed issues mandates that the Strike Team work on the *Coleman* Court's schedule and not the other way around.

Nor can defendants rely on the passage of Assembly Bill 900 (AB 900) to warrant additional time for this report. That law lacks any detail whatsoever as to where mental health beds might be constructed, how they will be staffed, how they will be licensed, and even when they will be completed. *See* Docket 2257, Ex. A at ¶ 7[4] ("the state's 'plan' to reduce overcrowding is not a plan, as that term is normally understood. It is deficient in that there are no detailed supporting documents, data analysis or timetables that show how the CDCR can

---

[4] Declaration of James Austin In Support of Plaintiffs' Supplemental Reply Brief, which is attached to the Second Declaration of Lori Rifkin In Support of Plaintiffs' Corrected Supplemental Brief In Support of Motion to Convene A Three Judge Panel To Limit the Prison Population. Mr. Austin has over 30 years experience in correctional planning and research and is a member of the CDCR's Expert Panel on Adult Offender Recidivism Reduction Programs. In this capacity, he was a key author of the Panel's recommendations on reducing the CDCR prison population. Docket 2257, Ex. A at ¶¶ 2, 5.

1   meet the massive and unprecedented construction timelines set forth in Defendants' Response.
2   As such, it is not a plan but a series of goals that have no factual basis."). In other words, AB
3   900 depends on the report in question here. Right now, there is no mental health bed
4   construction plan for AB 900 to fund. The April 17, 2007 Order mandated detail that
5   defendants should have provided when they filed their December Bed Plan with the Court.
6   The Special Master thought that detail should be provided within 30 days, but this Court
7   granted defendants 90 days. Defendants should now be held to task for that badly needed
8   report.

**Defendants Have Not Shown The Relevance Of The Strike Team To The DMH Portion Of The April Order And Should Be Ordered To Produce That Report By June 20, 2007, At The Latest**

Defendants have not explained how the Strike Team's input could possibly affect the report regarding the CDCR's assumption of control of DMH-run inpatient beds. There is no mention of this connection in the underlying *ex parte* motion or the supporting declarations. Ms. Hysen, the chair of the Strike Team, does not even refer to the DMH portion of the order in her declaration. Again, this Court cannot rule on the December Bed Plan, including defendants' radical proposal to assume control of DMH-run beds, until it has this report. Defendants' reason for the delay is unsupported and should be rejected by this Court.

There is no question that this report is essential to the Court's analysis of the December Bed Plan. As plaintiffs pointed out in their January 16, 2007 objection to that plan, the Governor and the CDCR defendants, who have been unable to build, license, operate and hire staff for their *existing* system of Enhanced Outpatient Programs (EOPs) and mental health crisis beds (MHCBs), provided no detail or explanation in the December Bed Plan as to how they will now become responsible for the management, licensing, hiring, operation and supervision of *all* present and future *inpatient* mental health programs in CDCR prisons. Defendants made a radical proposal for CDCR to assume control over inpatient beds for the very first time in the history of this case. Those beds are reserved for the most acutely ill members of the *Coleman* class, yet the CDCR defendants have failed to provide constitutionally adequate care to class members with far less severe mental health problems.

As plaintiffs pointed out in January, the prospect of removing DMH from the *Coleman* remedy has potentially devastating consequences for the *Coleman* class:

> One of the most drastic and disturbing elements of defendants' December Plan is the CDCR's proposal to cease all ties with the Department of Mental Health (DMH). *See* December Plan at 16-17. This is a two-pronged proposal involving both the removal of CDCR inmates from DMH hospitals, such as ASH, Patton and Coalinga, and the removal of DMH management and oversight from the acute and ICF programs currently located and under construction within CDCR institutions. Both of these transitions would require changes in the Revised Program Guide, as well as significant addition of management resources, planning and supervisory capacity on the part of the CDCR which is not discussed, budgeted or even addressed in the present plan. For instance, the plan fails to address if and how existing DMH clinical and administrative staff will be transitioned into the new CDCR programs, what staffing ratios will be used, how the CDCR will obtain funding for those programs, what licensing and accreditation requirements will be met and even whether the programs will provide the same level of care currently provided by the DMH.
>
> DMH has played an integral role in providing inpatient mental health care services to CDCR inmates for decades and is an express part of the remedy in the *Gates* and *Coleman* cases. DMH currently operates inpatient programs that at any given time treat nearly eight hundred (800) *Coleman* class members. December Plan at 16. The DMH beds are the highest level of care for the most acutely ill patients and are the most richly staffed and complex programs available to *Coleman* class members with life-threatening illnesses. It is not reasonable to assume that CDCR could build, supervise, manage and operate these high level mental health programs on its own. Neither the December Plan (which provides no budget, details or information) nor CDCR's track record of failing to provide adequate care to seriously mentally ill class member provides a basis for the Court to approve this Plan. Each one of the transition points identified above (plans for staff transitions, staffing ratios, additional funding, licensing and level of care issues) is by itself daunting, but the combination of all of them is nothing short of overwhelming. It is not at all clear that the CDCR, a department that is currently under a Governor-proclaimed state of emergency for overcrowding, under a Receivership for medical care, that has been unable to hire headquarters staff [5] (in violation of this Court's 8/1/06 Order, Docket 1929), and that has

---

[5] Defendants admitted during the *Coleman* Policy Meeting on December 6, 2006, that they had only been able to fill 3 or 4 of the 86 central office staff positions ordered by this Court and that even if they were able to hire more staff members, they did not have the office space for them. Docket 2112 at ¶ 3. During a policy meeting on June 12, 2007, defendants confirmed again that the vast majority of the headquarter positions remain vacant and that they have only been able to fill a few more positions in recent months, most of which are clerical staff. Bien Decl. ¶ 3.

> severe custodial, clinical and medical staffing shortages at all levels, can competently assume control of the DMH programs.

Docket 2111 at 8-9.

The report at issue in this *ex parte* motion is essential to the Court's ability to address these concerns and plaintiffs simply cannot wait two more months for this information.

## CONCLUSION

For all of the reasons stated above, plaintiffs respectfully oppose defendants' motion for a 60-day extension to comply with the April 17, 2007 Order. If any extension is granted regarding the June 15, 2007 deadline, it should not exceed two weeks. This report is holding up the long-range bed plan and desperately needed construction projects are on hold.

Dated: June 14, 2007

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Amy Whelan*
    AMY WHELAN
    Attorney for the Plaintiffs