| | |
|---|---|
| PRISON LAW OFFICE | ROSEN, BIEN & GALVAN, LLP |
| DONALD SPECTER #83925 | MICHAEL W. BIEN #09891 |
| STEVEN FAMA #99641 | JANE KAHN #112239 |
| ALISON HARDY #135966 | 315 Montgomery Street, 10th Floor |
| SARA NORMAN #189536 | San Francisco, CA 94104 |
| BRITTANY GLIDDEN #224658 | Attorneys for *Coleman* Plaintiff Class |
| General Delivery | |
| San Quentin, CA 94964 | |
| Telephone: (415) 457-9144 | |
| Facsimile: (415) 457-9151 | |

Attorneys for *Plata*, *Coleman*, and *Perez* Plaintiff Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al., <br>     Plaintiffs <br>   v. <br> ARNOLD SCHWARZENEGGER, et al., <br>     Defendants. | No. C01-1351 TEH (N.D. Cal.) |
| RALPH COLEMAN, et al., <br>     Plaintiffs <br>   v. <br> ARNOLD SCHWARZENEGGER, et al., <br>     Defendants. | No. CIV S-90-0520 LKK JFM P (E.D. Cal.) |
| CARLOS PEREZ, et al., <br>     Plaintiffs <br>   v. <br> JAMES TILTON, et al., <br>     Defendants. | No. C 05-05241 JSW (N.D. Cal.) <br><br> **PLAINTIFFS' RESPONSE TO REQUEST FOR APPROVAL OF COORDINATION AGREEMENTS** |

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW

1

**INTRODUCTION**

On May 29, 2007, the respective Courts for the three above-captioned cases ordered the parties to respond to the request for court approval of six coordination proposals affecting all three cases. Plaintiffs have reviewed the six proposals and discussed them with the *Plata* Receiver's Chief of Staff, the *Coleman* Special Master and the *Perez* Court experts.

Of the "agreements" submitted for review, two are position statements, four are general statements of intent to permit the Receiver to manage state functions that affect all of the cases. In general, plaintiffs do not oppose the concept of consolidating certain functions under the management of the Receiver. However, these statements of intent leave open too many questions to warrant approval by the Courts at this time. Plaintiffs submit that the Courts should direct the Receiver, in consultation with the Special Master, the Court experts and the parties, to propose a plan for accomplishing specific objectives, and a plan for reporting on his progress in meeting those objectives. Upon approval of the plans, the Courts should permit the Receiver to exercise authority over dental and mental health aspects of the pharmacy, credentialing/privileging, contracting and information technology operations that are described in the agreements.[1]

**I.   Approval of the Four "Agreements" Should be Conditioned Upon the Submission of Specific Implementation Plans and Reporting Requirements**

It is undisputed that the medical, mental health, and dental care delivery systems are all suffering from the inability of the CDCR to perform certain essential management functions. It is also undisputed that each of these delivery systems relies in large part on

---

1. These agreements also may have some impact on the remedial process in *Armstrong v. Schwarzenegger*, C-94-2307 CW (N.D. Cal.), particularly the agreement on Information Technology. Plaintiffs suggest that that Court participate in this process in the future.

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW

2

the same or similar functions. For these reasons, Plaintiffs believe that these common operations should be consolidated under the management of one entity and do not disagree that the Receiver, who has the most authority, stands the best chance of providing the most effective and timely remedy.

Nevertheless, the one-page agreements at issue in pharmacy, information technology, credentialing/privileging and contracting are very general and promise nothing except the consolidation of authority under the Receivership with limited input by the *Coleman* Special Master and the *Perez* Court Experts. With authority comes responsibility and the Courts should insist on knowing how that authority is going to be exercised and how progress is going to be tracked before approving these agreements. In addition, the Court should review the Receiver's progress in these areas in one year to determine whether the arrangement is productive.

The only realistic method of judging whether the goal of more timely relief is likely to be realized is to insist on a clear blueprint for change. The plans should describe the specific actions the Receiver intends to take to make these areas functional and the time that each step is expected to take. In addition, the plan should be accompanied by numeric goals, where appropriate, so that progress can be measured. The relevant data should be distributed to the Special Master, the *Perez* experts and the parties at regular intervals.

The requirements of a plan and regular reports are consistent with the elements of the existing Receivership. In his Order Appointing Receiver, Judge Henderson required that the Receiver submit a "proposed time line for all actions and a set of metrics by which to evaluate the Receiver's progress and success." Order Appointing Receiver, *Plata v. Schwarzenegger*, February 14, 2006, at 2-3; Docket No. 473.

Not only is a concrete plan essential to effective relief, but it also ensures

1  accountability and transparency.  The Receiver's powers in *Plata* are extremely broad,
2  allowing him to command tremendous resources and make sweeping changes.  Granting
3  him the authority to effect remedies in *Coleman* and *Perez* will increase those powers
4  considerably.  This responsibility is premised on the obligation of public officials to
5  report on the use of public resources.  Any entity with such tremendous power must be
6  subject to carefully drafted measures to ensure that it is accountable for its actions.
7  Transparency is likewise essential in order to produce quantifiable data to demonstrate
8  progress towards stated goals, to ensure that public resources are allocated responsibly,
9  and to ensure that all stakeholders (including class members, medical care workers and
10 taxpayers) have accurate information to make well-informed decisions.

11         It is all the more crucial that any orders issued in *Coleman* and *Perez* allowing the
12 Receiver authority in their remedial processes include such requirements because the
13 Receiver's past actions demonstrate an unwillingness to operate in this manner.  The
14 Receiver's Plan, submitted on May 10, 2007, lacks both specificity and accountability.[2]
15 It contains no actual time lines or metrics, in direct violation of the *Plata* Court's order
16 and the basic principles for effective planning.  *Plata* Docket No. 473.  Similarly, the
17 Receiver's periodic reports in *Plata* contain little data and do not allow the reader a fair
18 opportunity to make independent judgments about the Receiver's progress.  In light of
19 this past experience, the agreements should not be approved until receipt of an adequate
20 plan in *Coleman* and *Perez*.  *Plata* Docket Nos. 524, 547, 581, 618.

---

[2]. A hearing on the adequacy of the Receiver's plan in *Plata* is scheduled for August 9, 2007, before Judge Henderson.

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW                 4

**II. Any Expansion of the Receiver's Authority into Areas under the Jurisdiction of the *Coleman* and *Perez* Courts must Be Explicitly Subject to the Remedial Orders in Those Cases.**

The *Coleman* and *Perez* Courts should allow the Receiver to assume remedial functions in those cases only pursuant to written orders confirming that he comes under their remedial authority for his performance of those functions. It would make no sense – indeed, it would constitute an abdication of the Courts' responsibilities – for either Court to relinquish its jurisdiction over a remedy simply because the Receiver, and not the CDCR, is responsible for carrying it out. It remains each Court's overriding concern to ensure that the remedies are accomplished and the rights of the plaintiff class are vindicated.

This is not a theoretical concern. The Receiver has moved in *Plata* for an order that would substantially limit the rights of counsel for plaintiffs to obtain and receive information about prison medical care conditions.[3] The justification for the motion rests in large part on the Receiver's belief that his appointment obviates the need for any monitoring by plaintiffs' counsel. *Plata* Docket No. 655.

Accordingly, any agreement regarding the Receiver's expansion of authority into the mental health and dental areas must specify that in *Coleman* and *Perez* the Special Master, the court experts and the parties retain their respective Court-ordered authority to monitor, provide substantive input, and make recommendations to the Court regarding the Receiver's performance of functions that are part of the remedies in those cases. The Receiver must report regularly to the *Perez* and *Coleman* Courts concerning any area where he is assuming responsibility.

---

3. That motion will also be heard by Judge Henderson on August 9, 2007.

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW

5

### III. The Special Master May Apply to the Court for a Waiver of State Law, If Appropriate, With Respect to the Hospital at CIM

The Hospital at CIM is licensed to provide both medical and mental health services to male prisoners. Plaintiffs understand that the Receiver believes that the hospital at CIM is not an appropriate place to provide medical care to patients requiring acute medical care. The Special Master has also found that mental health care in the CIM hospital is inadequate and does not meet standards for an acute care facility. The Receiver also believes that the CIM hospital cannot meet state licensing standards for a GACH (General Acute Care Hospital) because of its physical deficiencies and that it would be a waste of time and resources to rehabilitate the facility. The *Coleman* Special Master, however, contends that it is essential that the CIM hospital remain open to patients needing Mental Health Crisis Bed (MHCB) level of care as there exists a severe shortage of that level of care in CDCR's mental health care delivery system. The Special Master and the Receiver have agreed that the CIM hospital should be converted to a 40-45 bed MHCB unit and abandon its use as a medical care unit. The Receiver has agreed to staff the MHCB unit with appropriate level of nurses.

Plaintiffs agree that the CIM hospital as currently staffed and operated is not appropriate for medical or mental health care. They also agree with the Special Master that under the circumstances it must remain open, and, in fact, be expanded, for use of patients requiring a mental health crisis bed level of care until appropriate replacement facilities can be designed, built, staffed and licensed for male CDCR patients. A plan to make necessary renovations for sanitation, safety, and treatment space must be developed and implemented and appropriate custody and clinical staffing levels must be determined in accord with the *Coleman* Program Guides.

The "agreement" states that the Special Master will explore whether a Correctional Treatment Center license is necessary to operate a Mental Health Crisis Bed and, if so,

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW

6

1  seek an emergency order from the *Coleman* Court to allow for the operation of the crisis
2  beds at CIM without a license.  The agreement also raises the possibility of retaining the
3  GACH license for the facility.  Plaintiffs prefer that the CIM facility be brought to
4  applicable licensing standards to the extent possible, and that any waivers of licensing
5  standards be limited and short-term.  Health care licensing standards serve an important
6  function and are designed to maximize the safety of patients, staff and the public.  Waiver
7  of these standards should only be considered when absolutely necessary to further the goal
8  of achieving compliance with constitutional standards of care in a state of emergency.
9  When licensing standards are waived or modified, they must be replaced by appropriate
10 alternative standards.  If the Special Master recommends a waiver of state licensing
11 standards for CIM's hospital/MHCB, plaintiffs' counsel reserves their right to respond to
12 any such recommendation.
13         Plaintiffs submit that there is nothing inherently inconsistent between the state's
14 licensing laws and the Eighth Amendment's prohibition against cruel and unusual
15 punishment.  In other words, the state is required by law to meet both standards.  If in the
16 peculiar circumstances present here the licensing laws would actually work to the
17 detriment of the plaintiff class, plaintiffs would not oppose a temporary suspension of
18 certain requirements.  However, any suspension of a licensing requirement should be
19 accompanied by plan to ensure that the state will provide adequate mental health care to
20 these patients and a plan to bring the facility into compliance with state licensing
21 requirements or, failing that, to transfer the patients to a licensed facility as soon as
22 possible.[4/]

---

   4. Plaintiffs have no objection to the last agreement on hiring, which provides that the Receiver will be responsible for hiring medical personnel only, but the *Plata* Support Division staff will consult with the *Coleman* Special Master and the *Perez* court experts.

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW                    7

**CONCLUSION**

For the reasons set forth above, Plaintiffs recommend the following:

(1) The Courts should issue the following order with respect to the three operations that the Receiver would exclusively control: the Receiver shall submit to the Special Master, the Court experts and the parties his plan for remedying the pharmacy, contracting and credentialing/privileging operations of the CDC in *Coleman* and *Perez*. The plan must include specific actions to be taken, timelines for those actions, metrics against which progress will be measured and a description of the data to be disseminated to interested persons at regular intervals. After considering comments from the Special Master, the Court experts and the parties, the Receiver shall submit his plan for approval to the Courts. If, after considering the views of the Special Master, the Court experts and the parties, the Courts are satisfied that the plan is satisfactory, the Courts shall approve the plans and the respective agreements, provided that the *Coleman* and *Perez* Courts shall maintain jurisdiction over the respective remedial processes, and the existing rights of the parties in *Perez* and *Coleman* to monitor compliance shall remain intact. The Courts shall determine whether the Receiver should continue to control these operations one year after the plans and agreements are approved.

(2) The Courts should approve the agreement on hiring.

(3) The Courts should approve the agreement on the CIM-GACH and the *Coleman* Special Master's request to explore whether a license is necessary to use the GACH at CIM as a Correctional Treatment Center for patients in Mental Health Crisis Beds and, if appropriate, to make recommendations to the *Coleman* Court for a waiver of state licensing requirements. Such a recommendation shall be accompanied by alternative

Pltffs' Response to Coordination Agreements,
*Plata v. Schwarzenegger*, 01-1351 TEH.
*Coleman v. Schwarzenegger,* S-90-0520, LKK
*Perez v. Tilton*, C-05-05241, JSW

8

1  standards that will ensure that the class members will have access to constitutionally
2  appropriate care.
3       Dated: June 15, 2007            Respectfully submitted,
4
5                                       _____/s/_____
                                        Donald Specter
6                                       Alison Hardy
                                        Sara Norman
7                                       Attorneys for Plaintiffs