HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
CHARLES ANTONEN – State Bar No. 221207
Deputy Attorney General
SAMANTHA TAMA – State Bar No. 240280
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone:   (415) 703-5708
Facsimile: (415) 703-5843
samantha.tama@doj.ca.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al., | No. C01-1351 TEH |
| Plaintiffs, | No. CIV S-90-0520 LKK JFM |
| v. | CLASS ACTION |
| ARNOLD SCHWARZENEGGER, et al., | **DEFENDANTS' RESPONSE TO RECEIVER'S SUPPLEMENTAL REPORT RE OVERCROWDING** |
| Defendants. | |
| RALPH COLEMAN, et al., | Date:    June 27, 2007<br>Time:    10:30 a.m.<br>Ctrm:    1<br>Judges:  Hon. Thelton E. Henderson<br>         Hon. Lawrence K. Karlton |
| Plaintiffs, | |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |

# INTRODUCTION

Previously, the *Plata* Receiver and the State filed respective reports on overcrowding with the *Plata* Court. In those reports both the Receiver and the State confirmed that the prison population is not the primary cause of inadequate prison medical care. They also confirmed that a prisoner release order -- what Plaintiffs ultimately seek with this motion to convene a three-judge panel -- would not fix prison medical care. There is an insufficient nexus to population. For these reasons, and because Plaintiffs have not met the requirements of the Prison Litigation Reform Act (PLRA), Plaintiffs' motion to convene a three-judge panel must be denied.

## THE RECEIVER'S SUPPLEMENTAL REPORT REGARDING OVERCROWDING DOES NOT JUSTIFY AN ORDER CONVENING A THREE-JUDGE PANEL, AND DOES NOT ACCURATELY REFLECT CERTAIN FACTS.

The Receiver's supplemental report regarding overcrowding, like his original report, does not request a prisoner release order. Nor does it suggest that the Court should convene a three-judge panel. Instead, the supplemental report expressed concerns about CDCR mission changes, yard flips and expansion of Community Correctional Facilities. These concerns involve CDCR administrative issues, such as the alleged failure to communicate adequately with the Receiver before making mission changes. These administrative concerns do not support a referral to a three-judge panel.

1. **The "Mission Change" at California Rehabilitation Center Norco to an All-Male Level III Prison.**

The supplemental report, and the Declaration of John Hagar in support of the Receiver's supplemental report, indicates that "serious problems . . . arise when the CDCR institutes 'mission changes' and 'yard flips' without considering the impact on the delivery of health care." (Hagar Decl., 1:27-28.)

Defendants respectfully dispute the Receiver's assertion that they do not consider the impact on health care when they complete mission changes and yard flips. In fact, CDCR balances many important, and sometimes conflicting, factors when deciding to implement mission changes and yard flips. (Kernan Decl. Supp. Defs.' Resp. to Receiver's Supp. Report re

-1-

Overcrowding (Kernan Decl.), ¶ 2.) But the Receiver's ultimate point is that he must receive information about planned mission changes and yard flips because they have the potential to impact the delivery of medical care. This is an administrative and communication concern, and CDCR agrees that the Receiver should be informed. In fact, the plan to convert CRC has been public since at least the Legislative Special Session in August 2006. At the time of the Special Session, CDCR contemplated CRC's conversion and provided documents to the Receiver's Office relating to the proposal. (*Id.*) Moreover, CDCR conducts weekly population management meetings that are attended by the Receiver's staff. These weekly population management meetings noted, and began planning, the CRC conversion as early as February 7, 2007. (*Id.*)

The supplemental report, and Mr. Hagar's supporting declaration, also opines that the "infill beds" that will be constructed pursuant to Assembly Bill 900 (AB 900) "may not in fact lead to any decrease in CDCR 'ugly beds.'" (Hagar Decl., 2:4-6.) This simply is not the case. AB 900 mandates the reduction of these beds as infill beds are constructed. (Kernan Declaration in Support of Defendants' Report in Response to the Court's Feb. 15, 2007 Order, 8:3-5.) Similarly, the supplemental report is inaccurate in its estimate that 600 female inmates will be removed from CRC, since 300 of the CRC inmates were reduced through attrition (including parole and/or transfer to another facility). (Kernan Decl., ¶ 3.)

In conclusion, Defendants have recognized, and continue to recognize, the value and necessity of working collaboratively with the Receiver's Office. Consequently, Defendants have and will continue to work with the Receiver's Office when considering whether to implement a mission change or yard flip like the one that is occurring at CRC.

**2.    Conversion of the Sierra Conservation Center Level III Facility to a Level III Sensitive Needs Yard.**

The Receiver's supplemental report states that the conversion of SCC "will require the movement of more than one thousand inmates from SCC and the arrival of more than one thousand inmates into SCC" and will be an extreme burden on CDCR's health care delivery system. (Receiver's Supplemental Report re Overcrowding at 7:8-11.) Although the conversion will involve significant movement of inmates over time, CDCR will take steps to reduce the

-2-
DEFS.' RESP. TO RECEIVER'S SUPP. REPORT RE OVERCROWDING
(CASE NOS. C-01-1351 TEH; CIV S-90-0520 LKK JFM)                                                1326218.4

impact on medical care and other programs. (Kernan Decl., ¶ 4.)

The supplemental report also exaggerates the extent of overcrowding at SCC by relying on an uncertain definition of "capacity." The indicated design capacity at SCC is 500 single-celled inmates. (*Id.* ¶ 5.) Although SCC currently houses 1,192 inmates, those cells – like those at all California prisons – are built with double bunks and can comfortably house 1,000 inmates. Thus, it is misleading to state that the capacity is at 238% when the cells merely contain two beds, each occupied by an inmate. (*Id.*)

### 3. Problems with the Delivery of Medical Care in Community Correctional Facilities.

The supplemental report indicates that the Receiver's Office conducted an unannounced inspection of the McFarland Community Correctional Facility and "found serious problems." (Receiver's Supplemental Report re Overcrowding at 7:20.) The supplemental report also notes, correctly, that a cornerstone of AB 900 is the expanded use of current and yet-to-be-constructed Community Correctional Facilities (CCFs). Defendants share the Receiver's concern that inmates assigned to CCFs receive appropriate treatment. In order to ensure this, CCFs are only occupied by inmates who, as determined by medical staff, do not require significant medical attention. (Kernan Decl., ¶ 6.) Moreover, the CDCR is committed to work with the Receiver's Office, like it has with respect to the transit of inmates to out-of-state facilities, to address any medical concerns relating to CCFs. (*Id.*)

### CONCLUSION

All of the concerns expressed by the Receiver involve administrative issues that can be addressed through coordination and communication. Neither the Receiver's Report Re Overcrowding, nor the Receiver's Supplement Report Re Overcrowding, suggests that the Court should convene a three-judge panel or that a prisoner release order should be issued. In fact, it is undisputed that a prisoner release order will not fix the prison medical system. Rather, because inadequate medical care is primarily caused by managerial and administrative deficiencies, the Court should permit the State and the Receiver to implement their comprehensive plans to reform the system. Further, because Plaintiffs cannot, and have not, demonstrated a nexus between the

- 3 -

relief sought under the PLRA and the federal right at issue – constitutionally adequate medical care – Plaintiffs' motion to convene a three-judge panel must be denied.

DATED: June 18, 2007

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP

By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants

DATED: June 18, 2007

EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Samantha D. Tama
SAMANTHA TAMA
Deputy Attorney General
Attorneys for Defendants

DATED: June 18, 2007

EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Rochelle C. East
ROCHELLE C. EAST
Deputy Attorney General
Attorneys for Defendants