**EXHIBIT A**

**TITLE PAGES; i-xvi**

# California Department of Corrections and Rehabiliation

# Expert Panel on Adult Offender and Recidivism Reduction Programming

# Report to the California State Legislature





A Roadmap for Effective Offender Programming in California



## California Department of Corrections and Rehabilitation Expert Panel on Adult Offender Reentry and Recidivism Reduction Programs

Report to the California State Legislature: A Roadmap for Effective Offender Programming in California

Copyright © 2007
by California Department of Corrections and Rehabilitation

All rights reserved. Permission is granted to reproduce this report for non-commercial purposes.

This project was funded under Provision 18 of the California Budget Act for Fiscal Year 2006/2007. California State University, Long Beach, University College and Extension Services was contracted to provide project management, logistical support, and report compilation services for this project.

*Points of view, recommendations, or findings stated in this document represent the consensus of the entire Expert Panel and do not necessarily represent the views of individual Expert Panel Members, nor do they represent the official positions or policies of the California Department of Corrections and Rehabilitation.*

June 30, 2007
Sacramento, California

*Report design by Paul Edward.*

*Cover image: "Prison Corridor" Copyright © 2007 Paul Edward. All rights reserved.*

# Contents

**Members of the Expert Panel-ii**

**Sub-Committees of the Expert Panel-iii**

**Expert Panel and Sub-Committee Meeting Dates and Locations-iii**

**Project Support Team-iv**

**Program Review Support-v**

**Executive Summary-vii**

**Introduction-1**

**Part I—The Roadmap-9**
Factors External to the Programming Environment          9
Clearing the Road for Rehabilitation 14
Factors Internal to the Programming Environment 19
Summary of Findings and Recommendations          50
Making it Work in California  51

**Part II—The Program Reviews-55**
Where California Now Stands          55
Identifying Recidivism Reduction Programs 57
Methodology for Surveying Inventory Programs          59
Evaluating Recidivism Reduction Programs 59
CPAP Assessments Details          64
CPAP Program Reviews Conclusion  71

**Part III—Next Steps and Conclusion-73**

**Appendix A—Reports Previously Published Reports on California's Correctional Crisis-77**

**Appendix B—Full-Sized California Logic Model-81**

**Appendix C—Recommendations for Incorporating Evidence-Based Practices in the CDCR-83**

**Appendix D—Resources for Implementing Recommendations in the CDCR-85**

**Appendix E—Estimating the Impacts of Our Recommendations-87**

**Appendix F—Expanded Space and Safety Recommendations-101**

**Appendix G—CDCR Female Offender Reform-105**

**Appendix H—Arizona Department of Corrections Fast Track Program-109**

**Appendix I—The Important Role of the Community in the Correctional Process-113**

**Appendix J—Implementation Requirements-117**

**Appendix K—Implementation Timeline-123**

**Appendix L—Detailed CDCR Adult Offender Profile Information and Tables-127**

**Appendix M—Detailed CDCR Adult Offender Programs and Activities Tables -147**

**Appendix N—Detailed CDCR Program Review Information-165**

**References-191**

*CDCR EXPERT PANEL ON ADULT OFFENDER REENTRY AND RECIDIVISM REDUCTION PROGRAMS*

# Members of the Expert Panel

**Marisela Montes**, Chair. Marisela is the Chief Deputy Secretary for Adult Programs with the California Department of Corrections and Rehabilitation.

**Joan Petersilia**, Ph.D., Co-Chair. Joan is a Professor of Criminology, Law & Society at University of California Irvine (UCI) and is also the Director of the UCI Center for Evidence-Based Corrections.

**James Austin**, Ph.D., is the President of the JFA Institute.

**Jeffrey Beard**, Ph.D., is the Secretary of Corrections for the Pennsylvania Department of Corrections.

**Barbara Bloom**, Ph.D., is an Associate Professor in the Department of Criminology and Criminal Justice at Sonoma State University and the Co-Director of the Center for Gender and Justice.

**Mark Carey** is the President of the American Probation and Parole Association and the President of The Carey Group, Inc., a practitioner based consulting firm on effective correctional practices.

**Elyse Clawson**, is the Executive Director of the Crime and Justice Institute and a consultant.

**James H. Gomez**. Jim is the CEO of the California Association of Health Facilities, which represents over 1200 facilities in the skilled nursing and ICF/MR field. He also was Chief Operating Officer of the California Public Employees' Retirement System for 6 years and prior to that was Director of Corrections in California from 1991-1996.

**Kermit Humphries** is a Correctional Program Specialist with the National Institute of Corrections (NIC) in Washington, DC.

**Steven J. Ickes**, is a Deputy Director of the Arizona Department of Corrections.

**Michael Jacobson**, Ph.D., is Director of the Vera Institute of Justice, and a professor at the John Jay College of Criminal Justice.

**Barry Krisberg**, Ph.D., is the President of the National Council on Crime and Delinquency and a lecturer in the Department of Legal Studies at UC Berkeley.

**Joseph Lehman** is retired after having served as the Secretary of Department of Corrections in the states of Washington, Maine, and Pennsylvania.

**Mimi Silbert**, Ph. D. is the Co-Founder and President of The Delancey Street Foundation, one of the nation's leading self-help residential education centers.

**Faye S. Taxman**, Ph.D. is a Professor in the Administration of Justice Program at George Mason University and Director of the Center for Advancing Correctional Excellence (ACE!).

**Reginald Wilkinson**, Ed.D. is a retired director of the Ohio Department of Rehabilitation and Correction and Chair of the National Institute of Corrections Advisory Board.

## Sub-Committees of the Expert Panel

### Program Review Sub-Committee
Joan Petersilia, Ph.D., Chair
Barry Krisberg, Ph.D.
Reginald Wilkinson, Ed.D.

### Model Program Sub-Committee
Joe Lehman, Chair
James Austin, Ph.D.
Jeffrey Beard, Ph.D.
Barbara Bloom, Ph.D.
Mark Carey
Elyse Clawson
James H. Gomez
Kermit Humphries
Steven J. Ickes
Michael Jacobson, Ph.D.
Mimi Silbert, Ph. D.
Faye S. Taxman, Ph.D.

## Expert Panel and Sub-Committee Meeting Dates and Locations

### Expert Panel Meetings
December 14-15, 2006
Delancey Street Foundation
San Francisco, California

February 1-2, 2007
Long Beach, California

April 25-27, 2007
Sacramento, California

### Program Review Sub-Committee Meetings
February 1, 2007
Long Beach, California

March 29, 2007
Santa Monica, California

April 16, 2007
Santa Monica, California

### Model Program Sub-Committee Meetings
January 15, 2007
Sacramento, California

January 25-26, 2007
Chester, Pennsylvania

March 14, 2007
Washington, DC



*CDCR EXPERT PANEL ON ADULT OFFENDER REENTRY AND RECIDIVISM REDUCTION PROGRAMS*

# Project Support Team

**Paul Edward**, MA. Paul is the Special Projects Director for California State University Long Beach (CSULB), University College and Extension Services and served as the Project Manager, Meeting Facilitator, and Executive Editor of this Report.

**Robert Ambroselli**. Robert is an Associate Director of the Division of Adult Parole Operations for the California Department of Corrections and Rehabilitation (CDCR).

**Armand Burruel**. Armand is the Acting Director of the Division of Reentry and Recidivism Reduction for the CDCR.

**Steve Chapman**, Ph.D. Steve is the Assistant Secretary, Office of Research for the CDCR.

**Bubpha Chen**, MA. Bubpha is a retired Research Program Specialist III for the CDCR.

**Jesse Jannetta**, M.P.P. Jesse is a Research Specialist at the UCI Center for Evidence-Based Corrections.

**Lance Larson**, MA. Lance is the Special Projects Coordinator for CSULB, University College and Extension Services and served as the Assistant Project Manager.

**Jeff Lin**, Ph.D. Jeff is a Postdoctoral Scholar at the UCI Center for Evidence-Based Corrections.

**Regina Quiambao**. Regina is the Director of Corporate Education for CSULB, University College and Extension Services.

**Susan Turner**, Ph.D. Susan is a Professor of Criminology, Law & Society at UCI and the Associate Director of the UCI Center for Evidence-Based Corrections.

**Christine Waltmire**. Christine is the Program Area Secretary for CSULB, University College and Extension Services and coordinated all of the logistical arrangements for the project.

**Heather Yates**. Heather is a Program Assistant with the Pennsylvania Department of Corrections. Heather was responsible for helping to create the California Logic Model and associated appendices.

**Phil Goodman**, doctoral student, UCI Center for Evidence-Based Corrections.
**Randy Myers**, doctoral student, UCI Center for Evidence-Based Corrections.
**Jason Peckenpaugh**, law student, Stanford Law School.
**Lori Sexton**, doctoral student, UCI Center for Evidence-Based Corrections.
**Rita Shah**, doctoral student, UCI Center for Evidence-Based Corrections.
**Sarah Smith**, doctoral student, UCI Center for Evidence-Based Corrections.
**Nicholas Tuosto**, law student, Stanford Law School.
**Alyssa Whitby**, doctoral student, UCI Center for Evidence-Based Corrections.

# Program Review Support

The Expert Panel would like to thank these individuals for their invaluable assistance in completing the
Recidivism Reduction Program Inventory and the CPAP Assessments:

### CDCR Personnel:

Paula Agostini, Randy Ayers, Nikki Baumrind, Janette Berringer, Janet Blaylock, Linda Bollinger, Laura
Bowman, Dennis Butcher, Jim Bruce, Rob Churchill, Robin Dartis, David DeLuz, Jennifer Dubendorf, Victoria Eberle, Martha Esmael, Rex Gregory, Chris Haws, Karen Heintschel, Richard Krupp, Nancy Lasarte, Tina Leonard, Allan Loucks, Dale Manners, Roberto Mata, Liz Najari, Ame Nakamura, Joe Ossmann, Goldie Parino, Chuck Pattillo, Tom Posey, Art Quinton, Tom Rietz, Dave Robinson, Frank Russell, Del Sayles-Owen,Ken Skolnik, Emily Smith, Evie Smith, Murdock Smith, Wendy Still, Robert Storms, Gary Sutherland, Linda Thompson, Jennifer Valdez

### Program Providers:

Kathy Acquistapace, Sheryl Albrecht, Delita Alvarado, Paul Billeci, Dale Benner, Wendy Broughton, Vivian Brown, Mary Lou Browning, Bari Caine-Lomberto, Mike d'Agostin, Jesse Delval, Harvey Edeliant, Vitka Eisen, Elijah Ellis, Beth Forth, Chris Grella, Dwight James, Richard Jimenez, Deanna Kivett, Angela Knox, Daniel Lane, Jean LeFlore, Christopher Leibforth, Barry Lindstrom, Ernie Logan, Dave Martin, Robin McGrath, Debbie McMillan, Kevin Mizner, Matt Moore, Annie Negrete, Garnett Newcombe, Anita Paredes, Rodney Quinn, Vicki Redding, J. Manny Rivera, Amanda Ruiz, Denise Sassoon, Ana Sepulveda, Sharon Snaer-Hill, Judy Stallings, Laura Strachan, Shannon Swain, Mary Lou Vachet, Tommy Vaughn, Brenda Wiewel, Sam Williams

# Executive Summary

Research shows that correctional programs reduce recidivism by changing offender behavior. However, research also shows that to achieve positive outcomes, correctional agencies must provide rehabilitation programs to the appropriate participants in a manner consistent with evidence-based programming design. California has been offering rehabilitation programs to its adult offenders for over 50 years; yet California's adult offender recidivism rate is one of the highest in the nation. Clearly something is wrong. Either something is preventing the programs from achieving their intended effects or something is wrong with the programs themselves.

The Panel believes that both explanations are true. First, a combination of various factors has caused these programs to be less effective than they should be in reducing criminal behavior. These factors, which must be resolved *before* California can have any hope of achieving rehabilitation programming success, include dangerous overcrowding (that makes prisons unsafe and reduces space to run programs) and lack of incentives for offenders to participate in rehabilitation programming. Second, the California Department of Corrections and Rehabilitation (CDCR) does not offer enough quality rehabilitation programs to its adult offenders, and it currently assigns offenders to programming in a way that all but ensures that offenders will NOT get to the programs they really need.

## The Panel

The CDCR created the Expert Panel on Adult Offender Reentry and Recidivism Reduction Programs (the Panel) in response to authorization language placed in the Budget Act of 2006-2007. The Legislature directed the CDCR to contract with correctional program experts to complete an evaluation of California's adult prison and parole programs designed to reduce recidivism. Additionally, the CDCR tasked the Panel to provide it with recommendations for improving the programming in California's prison and parole system. This Panel of nationally recognized experts in the field of corrections includes experienced correctional agency administrators and leading academic researchers.

## The Roadmap

This *Report to the California State Legislature: A Roadmap for Effective Offender Programming in California* provides an assessment of the state of correctional programming in California's adult prison and parole systems. This report also includes recommendations intended to guide California in creating a model rehabilitation programming *system*. The word *system* is emphasized to underscore the fact that the external environment plays an important role in determining the outcomes of rehabilitation programs. In other words, the activities that occur in the cellblocks, institutional common areas, parole offices, and communities either diminish or enhance the changes offenders make as a result of their rehabilitation programs.

The essential test for each of the Panel's recommendations is: *Is it evidence-based?* In the Panel's view, "evidence" comes from research and experience. The Panel presents recommendations based on research that represents a broad range of disciplines including rehabilitation, education, corrections administration, psychology, and organizational development. On the experience side, the Panel's recommendations include proposals that within the profession are regarded as best and promising practices and are being used by corrections agencies in other states that have faced situations and challenges similar to California's.

*CDCR EXPERT PANEL ON ADULT OFFENDER REENTRY AND RECIDIVISM REDUCTION PROGRAMS*

The target audience of this report is a mixture of policy-makers in the legislative and executive branches of California government, as well as practitioners within and outside the CDCR. California's leaders will enhance the value of this report to the extent that they share it with the citizens of California, who are the true stakeholders for what happens in CDCR prisons and parole offices.

## External Factors Preventing Programming Success

Beginning in 1976, with the passage of California's Determinate Sentencing Act (DSL), the state began a thirty-year cycle of increasingly stringent "tough on crime" laws. In fact, during this time frame, Californians enacted 80 sentencing laws (Little Hoover Commission, 2007). These laws, like California's "Three Strikes and You're Out" ballot initiative (Proposition 184), resulted in more and more people being sentenced to state prison terms for longer periods of time. In 2005, the California Department of Corrections (CDC) changed its mission to include rehabilitation and was renamed the California Department of Corrections and Rehabilitation (CDCR). But, by that time California's external legal environment had created two significant barriers to the CDCR's internal rehabilitation efforts:

• California's prisons are dangerously overcrowded.
• California treats offenders who complete rehabilitation programs the same way it treats those who do not.

Dangerous Overcrowding

At the time of this report, the CDCR was housing 172,385 prisoners in facilities designed to hold 100,000. More than 18,000 inmates were housed in space designed for programming and other prisoner activities. The other side of the overcrowding coin is that when wardens implement security lockdowns, they usually shut down all programming in the affected areas. Not only is this disruptive to programming but, the Panel believes the number and duration of lockdowns in California prisons is excessive. (The Panel provides specific space and safety recommendations in Appendix F.) In parole offices, space is limited for programming. In some cases this requires the CDCR to offer programming in off-site facilities that are less accessible to parolees and are often crowded themselves.

---

**Recommendation 1—Reduce overcrowding in its prison facilities and parole offices.**

---

The Panel recommends that California take the necessary measures to reduce overcrowding in its correctional facilities. Doing so will not solve California's recidivism problems, but it will give its adult offenders the ability to access much-needed rehabilitation programming, which is a "pre-condition" to success.

Lack of Incentives to Complete Programs

The Panel believes that California's correctional culture is oriented more towards control and punishment, than rehabilitation. This has resulted in offenders receiving few incentives to participate in rehabilitation programming. While the Panel agrees that control and safety within prison are essential, it also recognizes that the CDCR needs to balance its custody and rehabilitation missions. Additionally, California needs to reflect this balance in its allocation of correctional resources.

*Figure A: California Annual Costs to Incarcerate a Prisoner*



- Security (45%)
- Prisoner Health Care (21%)
- Operations (14%)
- Administration (8%)
- Prisoner Support (6%)
- Employment/Training (5%)
- Miscellaneous (1%)

Source: California Legislative Analyst's Office, January 31, 2007

Figure A shows the current imbalance in the CDCR's resource allocations. According to the latest data from the California Legislative Analyst's Office (2007), of the $43,287 that California spends on each prisoner per year, 45% ($19,561) is spent on "Security" concerns, while only 5% ($2,053) is spent on programming ("Employment/Training").

The Panel believes that it is critical for California to institute a system of positive reinforcement of offender behavior that supports rehabilitation. One of the best ways to shape behavior is to provide positive rewards for people when they engage in positive activities. Other states like Pennsylvania, Washington, and Ohio have used such reinforcement systems to encourage positive behavior of offenders in their correctional systems. However, the Panel found that the CDCR does not have a system of incentives that rewards program completion for all of its programs. Thus the gains that prisoners make in their rehabilitative programming are diluted by a correctional environment that treats offenders who participate in these programs virtually the same as those who do not.

> **Recommendation 2—Enact legislation to expand its system of positive reinforcements for offenders who successfully complete their rehabilitation program requirements, comply with institutional rules in prison, and fulfill their parole obligations in the community.**

The Panel recommends that the California enact the necessary legislation to expand its system of positive reinforcements for program participation and good behavior for its offenders in its prison and parole systems. AB 900, which was enacted in May 2007, directed the CDCR to develop incentives for offenders who complete academic and vocational education programs. The Panel believes that further legislation should be enacted that provides incentives for completing any of the evidence-based rehabilitation programs that the CDCR offers to its adult offenders.

Additionally, the Panel recommends that the CDCR implement those positive reinforcements that do not require legislation. For example: expanded visitation privileges, locating prisoners in prisons closer to their homes, providing long distance phone calls, and issuing vouchers for the prison canteens.

CDCR EXPERT PANEL ON ADULT OFFENDER REENTRY AND RECIDIVISM REDUCTION PROGRAMS

## Factors Internal to the Programming Environment

The Panel's initial review of the CDCR's adult offender program offerings, using the California Program Assessment Process (CPAP) found that while there was some good news: a few programs in a few areas were operating well; overall, California has some work to do to improve the state of rehabilitation programming in the CDCR. Table A identifies the CPAP rating elements and notes how each of the 11 rated programs performed.

*Table A: Summary of CPAP Assessments on 11 Rated Recidivism Reduction Programs*

| | Institutions Programs | | | | | Parole/Community Programs | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | FFP | IYO | Reentry Education | SAP-SATF | TCMP-MHSCP | DRC | FOTEP | ICDTP | PEP | RMSC | STAR |
| Assesses risk and targets high-risk | ◇ | ◇ | ◇ | ∞ | | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ |
| Assesses criminogenic needs and delivers services accordingly | ● | ◇ | ◇ | ● | ● | ● | ◇ | ● | ◇ | ◇ | ● |
| Theoretical model clearly articulated | ● | ● | ◇ | ● | ● | ● | ● | ● | ● | ◇ | ● |
| Has program manual and/or curriculum | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Uses cognitive-behavioral or social learning methods | ● | ◇ | ◇ | ● | ● | ● | ● | ● | ◇ | ● | ● |
| Enhances intrinsic motivation | ● | ◇ | ◇ | ● | ◇ | ● | ● | ● | ◇ | ◇ | ● |
| Continuities with other programs and community support networks | ● | ● | ● | ● | ● | ● | ● | ● | ∞ | ● | ∞ |
| Program dosage varies by risk level | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ |
| Responsive to learning style, motivation and culture of offenders | ● | ● | ● | ● | ● | ● | ● | ● | ◇ | ● | ● |
| Uses positive reinforcement | ● | ◇ | ● | ● | ◇ | ● | ● | ● | ◇ | ● | ● |
| Staff has undergraduate degrees | ◇ | ◇ | ● | ◇ | ● | ● | ● | ● | ◇ | ● | ● |
| Staff has experience working with offenders | ● | ● | ● | ● | ? | ● | ● | ● | ● | ● | ● |
| Staff recruitment and retention strategy | ● | ● | ● | ● | ● | ● | ◇ | ● | ● | ● | ● |
| New staff training | ● | ● | ● | ● | ● | ● | ● | ● | ◇ | ● | ● |
| Program director qualifications | ◇ | ◇ | ● | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ |
| Program data collected and analyzed | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Rigor of evaluation studies | ◇ | ◇ | ◇ | ◇ | ● | ● | ◇ | ◇ | ◇ | ◇ | ◇ |
| Best practices and/or expert panel recommends | ◇ | ◇ | ● | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ |
| Evaluation study appeared in peer-reviewed publication | ◇ | ◇ | ◇ | ◇ | ◇ | ● | ◇ | ◇ | ◇ | ◇ | ◇ |
| Extent and consistency of evaluation results | ◇ | ◇ | ◇ | ◇ | ◇ | ◇ | ● | ◇ | ◇ | ◇ | ◇ |

Legend: ● Meets criteria  ∞ Partially meets criteria  ◇ Does not meet criteria  ? No data provided

**FFP**: Family Foundations Program; **IYO**: Incarcerated Youth Offenders; **SAP-SATF**: Substance Abuse Program at California Substance Abuse Treatment Facility-Yard F; **TCMP-MHSCP**: Transitional Case Management Program-Mental Health Services Continuum; **DRC**: Day Reporting Center; **FOTEP**: Female Offender Treatment and Employment Program; **ICDTP**: In-Custody Drug Treatment Program; **PEP**: Parolee Employment Program; **RMSC**: Residential Multi-Service Center; **STAR**: Substance Abuse Treatment and Recovery

While the Panel is reluctant to generalize from the sample of programs it reviewed:

- the Panel found that most of the 11 programs that it reviewed contained program design elements that were in line with "what works" research for effective adult offender rehabilitation programming, and
- the Panel found that the CDCR does not match offender needs to program objectives when assigning offenders to programming.

The Panel believes that the CDCR needs to complete its program assessments and concurs with its decision to commission further research in this area.

## The Need for Objective Assessments

Assessing offender risk levels and needs is a crucial component of effective programming. Doing so allows correctional agencies to assign offenders to the programs that will most likely benefit them. But the CDCR often assigns offenders to programming on a first-come, first-served, basis. This practice virtually ensures that offenders are not getting the rehabilitation programming that they need.

> **Recommendation 3—Select and utilize a risk assessment tool to assess offender risk to reoffend.**

The CDCR has been using an objective risk assessment tool with its parole population for the past two years and has recently initiated use of the same tool with its prison population. The Panel recommends that the CDCR fully utilize this tool, or a similar tool to assess risk to reoffend levels of its adult offenders.

> **Recommendation 4—Determine offender rehabilitation programming based on the results of assessment tools that identify and measure criminogenic and other needs.**

The Panel recommends that the CDCR adopt and utilize a needs assessment tool that would allow the CDCR to identify which offenders should be provided with rehabilitative treatment programming and which offenders should be placed in programming designed to improve their life skills and provide them with personal growth opportunities. The Panel further recommends that the CDCR develop a risk-needs matrix to assign offenders to programming based on their risk to reoffend levels and their assessed needs.

- For high and moderate risk to reoffend level prisoners and parolees, the CDCR should assess their criminogenic needs and assign them to the appropriate rehabilitation *treatment* programs and services.

- For low risk to reoffend prisoners and parolees, the CDCR should assess their basic skills (e.g., interpersonal, academic, and educational) and assign them to the appropriate programming.

---

### Seven Criminogenic Needs Areas

Research has demonstrated that varied combinations of these seven criminogenic needs (dynamic risk factors) drive criminal behavior in male offenders:

1. Educational-vocational-financial deficits and achievement skills
2. Anti-social attitudes and beliefs
3. Anti-social and pro-criminal associates and isolation for pro-social others
4. Temperament and impulsiveness (weak self-control) factors
5. Familial-marital-dysfunctional relationship (lack of nurturance-caring and-or monitoring-supervision)
6. Alcohol and other drug disorders
7. Deviant sexual preferences and arousal patterns

The concept of criminogenic needs means that research shows that the offender population has a higher prevalence of these behaviors than does the general population. Therefore, the presence of these needs in a person may very well indicate a tendency toward criminal activity. The key to understanding the importance of these criminogenic needs is the fact that they represent a constellation of characteristics or circumstances. The mission, of course, is to divert the offender from adverse behaviors and to replace them with healthy alternatives.

---

### Recommendation 5—Create and monitor a behavior management plan for each offender.

The Panel recommends that the CDCR create a behavior management (or case) plan for each of its adult offenders in prison and on parole. The CDCR should actively monitor these plans to keep track of the progress that offenders are making toward achieving their rehabilitation programming objectives. Behavior management plans are critical tools to ensure that offenders are assigned to the appropriate programs based on the relative strengths of their criminogenic needs.

---

### Recommendation 6—Select and deliver in prison and in the community a core set of programs that covers the six major offender programming areas— (a) Academic, Vocational, and Financial; (b) Alcohol and other Drugs; (c) Aggression, Hostility, Anger, and Violence; (d) Criminal Thinking, Behaviors, and Associations; (e) Family, Marital, and Relationships; and (f) Sex Offending.

The Panel recommends that the CDCR select and deliver a core set of evidence-based rehabilitation programs that covers the six major offender programming areas. The effectiveness of rehabilitation services depends on the quality, quantity, and content of the programs.

*Table B: CDCR Nominated Recidivism Reduction Programs and the Six Major Programming Areas*

| Six Major Offender Program Areas | # of CDCR Recidivism Reduction Programs |
|---|---|
| Academic, Vocational, and Financial | 17 |
| Alcohol and Other Drugs | 12 |
| Aggression, Hostility, Anger, and Violence | 2 |
| Criminal Thinking, Behaviors, and Associations | 2 |
| Family, Marital, and Relationships | 3 |
| Sex Offending | 0 |

Table B shows that the CDCR currently offers a fair number of programs in the first two major programming areas, but offers relatively few programs in the last four, including no sex offending rehabilitation programs. The Panel feels that the CDCR needs to round out its program offerings and develop at least one evidence-based program for each of the program areas based on the assessed criminogenic needs of its prison and parole populations. Additionally, each of the programs offered should be standardized so that the content is consistent among prison facilities, parole offices, and community-based providers.

> **Recommendation 7—Develop systems and procedures to collect and utilize programming process and outcome measures.**

The CDCR needs to develop information systems and operations procedures to ensure that it collects rehabilitation programming outcome data from each program it offers and each offender it assigns to programming. This information will allow the CDCR to determine (a) the effectiveness of the programs on participants, (b) why and how the programs are producing the results they are obtaining, and (c) how to improve the programs.

> **Recommendation 8—Continue to develop and strengthen its formal partnerships with community stakeholders.**

The Panel recommends that the CDCR establish interagency steering committees at both the statewide and community levels to ensure the appropriate coordination of transition services for its adult offenders moving from prisons to their communities. For offenders to sustain the treatment gains they have achieved through their participation in CDCR programming, they require the assistance of their family members, friends, social service agencies, criminal justice professionals, and a host of other community stakeholders. This assistance also means including family members and other important support members in the offenders' actual programming.

*CDCR EXPERT PANEL ON ADULT OFFENDER REENTRY AND RECIDIVISM REDUCTION PROGRAMS*

---

**Recommendation 9—Modify programs and services delivered in the community (parole supervision and community based programs and services) to ensure that those services: (a) target the criminogenic needs areas of high and moderate risk offenders; (b) assist all returning offenders maintain their sobriety, locate housing, and obtain employment; and (c) identify and reduce the risk factors within specific neighborhoods and communities.**

---

The Panel recommends that the CDCR require all of its programs and services that are delivered in the community, including parole supervision, to capitalize on activities that will keep offenders from re-offending. Again, this is achieved by reducing their criminogenic and other needs by helping offenders avoid alcohol and other drugs, find suitable housing, and secure meaningful work. Additionally, the CDCR should assign its parole agents on a geographical basis and train them to identify and mitigate the risk factors related to the safety of places and victims within the community.

---

**Recommendation 10: Develop the community as a protective factor against continuing involvement in the criminal justice system for offenders reentering the community on parole and-or in other correctional statuses (e.g., probation, diversion, etc.).**

---

The Panel recommends that California develop a system of informal social controls in its communities that influence offenders' critical thinking, positive relationships, and healthy behaviors to reduce the likelihood that offenders will return to a life of crime.

---

**Recommendation 11—Develop structured guidelines to respond to technical parole violations based on risk to re-offend level of the offender and the seriousness of the violation.**

---

The Panel recommends that the CDCR develop and implement structured sanctions—based on the offenders' risk to reoffend and the seriousness of the violations—for offenders who violate parole conditions and incentives for offenders who do not.

## Expected Positive Outcomes

The Panel believes that if California implements all of its recommendations, the state may significantly reduce the large number of parolees who are currently violating their parole conditions and being returned to prison. Further, by expanding its incentive system, the state will encourage prisoners and parolees to participate in and complete programs. This could lower California's projected prison population with no major increase to the parole population.

In this report, the Panel recommends strategies that would reduce the number of prison beds that California needs by 42,000 to 48,000 beds. The result would mean an annual savings of between $848 and $996 million. New investments in prison and community programming should cost between $628 and $652 million a year. A significant portion of these costs, or $340 million a year, which the CDCR now spends on programs, could ultimately be used to offset these new expenditures. In total, all of these new strategies combined could save California between $561 and $684 million a year. See Appendix E for

details concerning the Panel's estimates.

The Panel also believes that if California were to implement its recommendations, the state would establish an accountable and credible correctional system. The Panel believes that doing so could minimize the impact of the Federal judiciary in California's correctional operations.

## Action Plan

The Panel provides a summary of the initial steps that California and the CDCR need to take to begin moving toward practices that will reduce recidivism. The Panel provides more details and expands upon its recommendations in Part I of this report. In Appendix K, the Panel provides the plan for implementing all of its recommendations over a two-year time period.

### Pre-Conditions

- Resolve overcrowding—space and safety issues (see Part I and Appendices A and F for details).
- Expand incentives. Some states pay prisoners a nominal wage for program participation. Others tie sentence reductions to such involvement. California should adopt both of these practices to provide incentives to offenders for program participation and completion.

### Programming Environment Improvements

- Adopt a risk to reoffend assessment tool. While implementing the COMPAS assessment tool in prison and using it on parole, begin piloting a static risk assessment tool using the data already collected on offenders when they enter the CDCR. (See Appendix D for examples.)
- Adopt a criminogenic needs assessment tool. Consider adopting an instrument such as the CSS-M to measure criminal thinking/associates, the HIQ to determine anger management needs, and the static 99 to identify sex offender needs. Also look at the TCU or ASI for determining substance abuse needs. (See Appendix D for examples.)
- Begin evaluating all new admissions using the adopted risk assessment tool.
- Assess offenders whose scores indicate moderate or high risk to reoffend levels using the selected criminogenic need instruments to determine specific program needs.
- Assess offenders whose scores indicate low risk to reoffend levels using work and life skills assessments to determine specific program needs.
- Develop an assessment matrix to determine program assignment based upon offender scores on the selected risk and need instruments.
- Develop policies and procedures to implement a behavior management plan for each offender.
- Assign offenders to programming based on the combination of their risks and needs.
- Develop policies that evaluate and assess the outcomes of every program delivered.

*CDCR EXPERT PANEL ON ADULT OFFENDER REENTRY AND RECIDIVISM REDUCTION PROGRAMS*

Programming Improvements

- Academic, Vocational and Financial. The CDCR has both academic and vocational programs which have been shown to reduce recidivism. The main need in this area is additional programming as need outweighs program availability. For a financial or money management program the CDCR should consider adopting the Federal Deposit Insurance Commission's MONEY SMART. There is no cost for this program.
- Substance Abuse. The CDCR offers a significant amount of substance abuse treatment. However, this still is not enough to address the offender need in this area. The CDCR should develop additional capacity focusing on outpatient and intensive outpatient programs instead of more therapeutic communities at in time. These programs will provide treatment for those with less serious substance abuse problems at a lower cost. It will also allow for appropriate treatment based upon assessed need.
- Aggression, Hostility, Anger, and Violence. The CDCR should review the CALM program, which is in six institutions. If the CDCR is satisfied with the quality and outcomes of the program, it should implement it in all of its prisons and community based facilities. Appendix D provides additional programs to consider.
- Criminal Thinking, Behavior, and Associations. The CDCR currently only offers one (1) community-based program that addresses this area. The CDCR should adopt the National Institute of Corrections' (NIC) "Thinking for a Change" program for its prison and parole populations. There is no cost for the program and NIC also provides complimentary staff training.
- Sex Offending. The CDCR currently offers no programming for this group of offenders. The CDCR must develop programming in this area.

## Conclusion

The Panel believes that this *Report to the California State Legislature: A Roadmap for Effective Offender Programming in California,* provides guidance to improve California's adult prisoner and parolee rehabilitation programming and to reduce its recidivism rate. The public deserves and the offenders need the opportunity to receive the rehabilitation programming and services necessary to help them never go back to prison again.

In this report the Panel advocates a system of identifying needed rehabilitative programming, implementing those programs, and measuring the fidelity of their implementation and outcomes in relation to their effectiveness. The Panel believes that California will realize two important benefits from a public policy perspective: (a) the CDCR will be more transparent and accountable for a mission that is more in line with the public's expectations, and (b) a significantly larger number of the several hundreds of thousands of prisoners who enter California prisons will return to their communities more prepared to be law abiding citizens.