PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California  94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>      Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>      Defendants | No.:  Civ S 90-0520 LKK-JFM<br><br>**DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' REPLY REGARDING RELATION OF EXPERT PANEL REPORT TO PLAINTIFFS' MOTION TO CONVENE A THREE-JUDGE PANEL** |

I, Michael W. Bien, declare:

1. I am a member of the Bar of this Court and a partner in the law firm Rosen, Bien & Galvan, LLP, one of the counsel of record for the plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify. I make this declaration in support of Plaintiffs' Reply Regarding Relation Of Expert Panel Report To Plaintiffs' Motion To Convene A Three-Judge Panel.

2. Attached hereto as **Exhibit A** is a true and correct copy of a letter from Senator Don Perata to Governor Arnold Schwarzenegger dated July 11, 2007, which was downloaded by a member of my staff from Senator Perata's website (http://dist09.casen.govoffice.com/index.asp?Type=B_PR&SEC={D27AA7A3-C83D-49B9-969F-81F2B831EE24}&DE={49A3E177-9B53-469F-8B2E-A983D1EAF90B}) on July 17, 2007. Senator Perata expressed his confusion about the Governor's "strike teams":

> [Y]ou issued a press release on May 11 creating two "Strike Teams," one for facilities and one for rehabilitation. It is unclear if these new strike teams are permanent or time limited and how they are expected to interact with existing CDCR employees who are charged with carrying out these very tasks. The press release read that the program strike team would "fundamentally reform California's prison rehabilitation programs." If this is the case, what is the role of the Chief Deputy Secretary for Adult Programs? Furthermore, just last week a CDCR expert panel released the study: A Roadmap for Effective Programming in California. How does this panel's work fit into the newly appointed Strike Team?

3. On Thursday, June 28, 2007, my associate, Jane Kahn, and I had various meetings in Sacramento with a member of the legislative staff and with *Coleman* Special Master Keating and Deputy Special Master Lopes. We were informed in both of these meetings that the people we were speaking with had been told that the "Strike Teams" were of limited duration and would end within six months.

4. Between January 1 and July 1, 2007, defendants have reported 21 completed suicides and four additional deaths of MHSDS inmate-patients that are currently under investigation as possible suicides. Unlike previous years where a significant percentage of the suicides included inmates not on the mental health caseload, all but seven of the 25 possible

-1-
DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' REPLY REGARDING RELATION OF EXPERT PANEL REPORT TO PLAINTIFFS' MOTION TO CONVENE A THREE-JUDGE PANEL, NO.: CIV S 90-0520 LKK-JFM

suicides in 2007 were inmates on the mental health caseload or referred for mental health treatment. The projected 2007 suicide rate based on 21 confirmed suicides in the six-month period from January through July 1, 2007 is 24 per 100,000 inmates.[1] Assuming that the four additional deaths of MHSDS patients that are currently under investigation are determined to be suicides, the projected 2007 suicide rate based on 25 suicides for the six-month period from January through July 1, 2007 is 29 per 100,000 inmates.[2] The U.S. Department of Justice reported in August 2005 in the Bureau of Justice Statistics Special Report on Suicide and Homicide Rates in State Prisons and Local Jails that the national average for state prison suicide rate was 14 per 100,000 inmates.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration is executed this 18th day of July 2007 in San Francisco, California.

*/s/ Michael W. Bien*
Michael W. Bien

---

[1] Based on the 21 confirmed suicides in CDCR in the first six months of 2007, the projected 2007 suicide rate per 100,000 inmates is 24.3 (calculated by multiplying the number of suicides in the first six months by two, meaning that the projected number for one year would be 42 suicides, then multiplying 42 by 100,000, and dividing by average total male and female population for the first six months, which is 172,607.5. Average population is calculated by averaging the total CDCR inmate population as of December 31, 2006 of 172,298 and the total population as of June 30, 2007 of 172,917).

[2] Based on the 25 possible suicides in CDCR in the first six months of 2007, the suicide rate per 100,000 inmates for the first six months of 2007 is 29.0 (calculated by multiplying the number of suicides in the first six months by two, meaning the projected number for one year would be 50 suicides, then multiplying 50 by 100,000, and dividing by average total male and female population for the first six months, which is 172,607.5. Average population is calculated by averaging the total CDCR inmate population as of December 31, 2006 of 172,298 and the total population as of June 30, 2007 of 172,917).

# EXHIBIT A



**Senator Don Perata**
CALIFORNIA STATE SENATE

Home
News Room
Legislation
Biography
District
Newsletters
Photo Gallery
Calendar
Contact Me
Violence Prevention Initiative
Health Care
Vote Us Out

SEARCH

[ ] GO
● Full Site
○ This Section

Search Tips

**Perata to Governor: Corrections Needs Your Help**
Wednesday, July 11, 2007

FOR IMMEDIATE RELEASE:          Contact: Alicia Trost
(916)651-4188

(SACRAMENTO) – The California Department of Corrections and Rehabilitation is structurally flawed, missing key leadership appointments and failing to meet basic objectives, such as establishing a clear chain of command and responding to direct court orders, Senate President pro Tem Don Perata (D-Oakland) said Wednesday in a letter to the Governor.

Perata sent the letter after the Senate Rules Committee confirmed James Tilton as secretary of the department. The committee held two long hearings delving into the many problems faced by the prison system and its managers before taking the vote.

"I believe your CDCR appointees are generally competent and responsible, but the structure in which they work is seriously flawed," Perata wrote. "You are to be commended for moving in a direction that promotes public safety through rehabilitation. However, after months of confirmations hearings, the existing structure remains confusing at best."

Of particular concern, the letter said, is the Division of Juvenile Justice.

"Two key positions have never been appointed and filled with a permanent employee since the 2005 corrections re-organization: the DJJ chief of programs and the DJJ chief of parole," the letter said. "The Farrell lawsuit required the department to fix almost every aspect of DJJ. Your administration's commitment to these plans remains unclear as many court ordered deadlines are routinely missed."

The stakes are high for the state as it works to alleviate prison overcrowding, improve rehabilitation programs and reduce recidivism, Perata said.

"The violence, gangs and lack of educational and vocational programming in prisons translate into murder, fear and poverty at home," the letter said. "Protecting the public is one of the chief responsibilities of government, and if California cannot effectively manage its prisons, it is endangering the safety of every one of its residents."

The entire letter is below.


July 11, 2007

Honorable Arnold Schwarzenegger
Governor of California
State Capitol Building
Sacramento, CA 95814

Re: California Department of Corrections and Rehabilitation confirmations

Dear Governor Schwarzenegger:

Since January 1, 2007 the Senate has approved 27 of your appointments to positions in

the California Department of Corrections and Rehabilitation (CDCR). Today, the Senate Rules Committee heard its last four CDCR appointees for 2007 and voted to support James Tilton as Secretary of the Department and Kingston "Bud" Prunty as its Undersecretary. I believe your CDCR appointees are generally competent and responsible, but the structure in which they work is seriously flawed.

This unusually high number of confirmations is the result of the Governor's reorganization of CDCR, Chapter 10, Statutes of 2005, which went into effect in July 2005. At your request, the structure of the department changed fundamentally. These changes seem to have only exacerbated many of the department's problems as evidenced by the testimony before the Rules Committee.

The department's already high workload is now even greater with the recent passage of your comprehensive prison package, AB 900, which is a mix of bonds for constructing prison beds and funding for new prison programs.

You are to be commended for moving in a direction that promotes public safety through rehabilitation. However, after months of confirmations hearings, the existing structure remains confusing at best. If the public is to support your efforts toward rehabilitation, we need more clarity from you about how we will get there. I am particularly concerned about the following areas:

**Lines of Communication and Decision-Making Authority**

The structure of the department prohibits effective lines of communication and confuses clear lines of decision-making authority. Currently, the organizational chart includes a Chief Deputy Secretary of Adult Programs and a Chief Deputy Secretary of Adult Operations. Even after exhaustive conversations in both the Rules and Budget Committees, it is unclear how these two positions interact. For example, who is responsible for replicating successful programs from one prison to another, deciding which inmates should participate in specific programs and balancing custody demands with programs?

It is unclear exactly who is in charge of in-prison programs: the warden, the school principal at that prison, or someone else. If the individual responsible for programs and the warden disagree, who makes the ultimate decision?

I understand that you are considering creating a third Undersecretary position to be in charge of Adult Programs. Will this help clarify lines of decision-making authority or create more silos?

These are basic questions that must be clarified if the department is to ever actually incorporate rehabilitation into its mission and not just its name.

**AB 900 Implementation**

In April, the Legislature passed AB 900. As you know, the law provides bonds for the construction of 53,000 state, local, medical, and re-entry beds. The construction will occur in two phases with the second phase only beginning after certain benchmarks are met. The law is very clear: in order to receive any of the phase 2 funding the department must meet all 13 benchmarks.

16,000 of the new beds are "in-fill" beds at existing facilities. Their purpose is to replace the "bad beds" in gymnasiums, dayrooms and classrooms. In order to enhance the safety of staff and inmates, it is imperative that these beds are constructed expeditiously. Also, there must be thoughtful consideration as to the location of these new beds. New beds should not exacerbate existing wastewater problems nor occur at locations with significant vacancy rates.

Local governments also play a major role in AB 900's implementation. In order to receive bond money to build local jails, they will apply for grants from the Corrections Standard Authority. One of the factors that CSA will consider when awarding these grants is the help that the locals provide in siting the re-entry

facilities. CSA will also give preference to counties that assist the state in siting mental health facilities and that provide innovative substance abuse and mental health programs.

Yet, when CSA testified before Budget Subcommittee 4, there seemed to be some confusion about this, which gives me great concern. And, in an April 12 hearing in Senate Budget Subcommittee 4, CDCR disclosed that local governments will have authority to select who will be housed at the reentry facilities. While this may help in encouraging these projects in local communities, it seems to abrogate decisions about the level of custody and programming. This lack of clarity will likely result in a barrier to getting these facilities up and running.

**Strike Teams**

Before the passage of AB 900, it was suggested that you consider a "strike force" of individuals from other departments, retired annuitants, and professionals outside of government to assist CDCR in getting out of its crisis and getting work done. The suggestion was not to replace or supplant employees of the department.

Instead, you issued a press release on May 11 creating two "Strike Teams," one for facilities and one for rehabilitation. It is unclear if these new strike teams are permanent or time limited and how they are expected to interact with existing CDCR employees who are charged with carrying out these very tasks. The press release read that the program strike team would "fundamentally reform California's prison rehabilitation programs." If this is the case, what is the role of the Chief Deputy Secretary for Adult Programs? Furthermore, just last week a CDCR expert panel released the study: *A Roadmap for Effective Programming in California*. How does this panel's work fit into the newly appointed Strike Team?

**Division of Juvenile Justice**

The juvenile population under CDCR is much smaller than the adult side, but equally as important. I was concerned when the reorganization occurred that DJJ issues would be ignored and this appears to have happened. Two key positions have never been appointed and filled with a permanent employee since the 2005 corrections re-organization: the DJJ chief of programs and the DJJ chief of parole.

The Farrell lawsuit required the department to fix almost every aspect of DJJ. Your administration's commitment to these plans remains unclear as many court ordered deadlines are routinely missed. Some are over a year delayed.

Finally, several years ago, the department was sued over violating the due process rights of adult parolees. A few weeks ago, the Executive Director of the Board of Parole Hearings described how the Valdivia lawsuit fixed many of those issues. But, those same violations still occur on the juvenile side. Not surprisingly, there is now a lawsuit.

If we do not want DJJ to play the role of preparing youth for a lifetime of CDCR, more attention must be paid to this division.

**Staff Vacancies**

There are approximately 4,000 vacancies for correctional officers, teachers and medical and mental health providers. Given the current vacancies, it is hard to believe the department can maintain existing programs much less operate expanded population and program without an aggressive recruitment and training plan. A plan for recruitment and retention of department employees must be implemented.

I remind you that addressing some of these vacancies is a benchmark for the second phase of construction in AB 900. If a significant number of these positions are not filled, the department will not receive funding for the second phase of construction.

**Parole and Recidivism Reduction**

The recidivism rates in California are dismal. This is due at least in part to the lack of programming in prisons and lack of opportunities for individuals who are released from California prisons. The legislature has given you tools in AB 900 to address some of these issues. I hope that you will, but again, it is not clear how this dramatic improvement will occur.

The problem is further exacerbated by the lack of intermediate sanctions, especially for individuals whose offenses are drug, alcohol or mental health related. We simply must do a better job of keeping people from returning to prison, where they add to overcrowding and often do not get the help they need.

**Board of Parole Hearings**

The Board of Parole Hearings also has significant troubles. One third of lifer hearings are still routinely postponed. This creates significant extra costs and seriously inconveniences victims, family members and attorneys. A reason regularly cited for postponements is that the files are not up to date. I do not understand why the Board of Parole Hearings cannot review a file prior to the day of the hearing in order to postpone a hearing if necessary.

The psychological evaluation issue remains unanswered. Without exception, I have asked every appointee associated with the Board of Parole "how old is too old" for a psychological evaluation. I've yet to receive a clear answer, and the recent responses are at odds with what the experts assisting you have recommended.

The potential parole of an individual with a life term has become highly politicized. Certain organizations track and publish the number of parole dates individual board members grant. This places an enormous amount of pressure on board members, leaving concern for their freedom to reach an independent decision.

**Labor Contract**

Your administration and the California Correctional Peace Officers Association have been negotiating a new contract for over a year. In May, the administration asked the Public Employment Relations Board (PERB) to order you into mediation. PERB responded by declaring an initial impasse and directing the parties to mediation. I understand that those discussions are currently underway.

Without labor peace, all of the work we do to improve the success rates in the department will be for naught. I encourage you to engage in this process in earnest and to resolve this issue as quickly as possible.

We all have a vested interest in this department. Parolees come back to our districts and the families of inmates live there. The success or failure of this department directly impacts the quality of life for our constituents.

Homicide rates in my own district are soaring. One theory is that the culture of prisons is being exported onto the streets. The violence, gangs and lack of educational and vocational programming in prisons translate into murder, fear and poverty at home.

Without a doubt, the task of overhauling California's prison system, alleviating inmate overcrowding and improving rehabilitation efforts is a tremendous challenge. As I have outlined in this letter, there are still huge fundamental problems the administration must tackle if the California Department of Corrections and Rehabilitation is to live up to its name and mission.

Protecting the public is one of the chief responsibilities of government, and if California cannot effectively manage its prisons, it is endangering the safety of every one of its residents. I trust you understand the gravity of the situation and will move quickly to address these issues.

Sincerely,

Don Perata

**Privacy Policy** | **Accessibility Statement**

Home | News Room | Legislation | Biography | District | Newsletters | Photo Gallery | Calendar | Contact Me | Violence Prevention Initiative | Health Care | Vote Us Out

powered by Avenet.net