Ronald Yank, No. 041200
Gregg McLean Adam, No. 203436
Jennifer S. Stoughton, No. 238309
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:   415.989.5900
Facsimile:   415.989.0932
Email:       gadam@cbmlaw.com
             jstoughton@cbmlaw.com

Benjamin C. Sybesma, No. 103380
Christine Albertine, No. 141033
**CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION LEGAL DEPARTMENT**
755 Riverpoint Drive, Suite 200
West Sacramento, California 95605-1634
Telephone:   916.372.6060
Facsimile:   916.372.9805
Email:       ben.sybesma@ccpoa.org
             christine.albertine@ccpoa.org

Attorneys for Proposed Intervenors
California Correctional Peace Officers' Association

IN THE UNITED STATES DISTRICT COURTS
FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| MARCIANO PLATA, *et al.*, <br> Plaintiffs, <br> v. <br> ARNOLD SCHWARZENEGGER, *et al.*, <br> Defendants. | No. Civ C 01-1351 TEH (N.D. Cal.) *and* <br> No. Civ S 90-0520 LKK-JFM (E.D. Cal.) <br><br> **THREE-JUDGE COURT** |
| RALPH COLEMAN, *et al.*, <br> Plaintiffs, <br> v. <br> ARNOLD SCHWARZENEGGER, *et al.*, <br> Defendants. | **MOTION TO INTERVENE BY CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; INTERVENTION PLEADING** |

CBM-SF\SF371082.1

1 **TABLE OF CONTENTS**

2 **Page**

3 **MOTION TO INTERVENE** ................................................................................................1

4 **SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**.........................................1

5 I   INTRODUCTION ....................................................................................................1

6 II  STATEMENT OF FACTS: CCPOA'S INTEREST............................................................2

7     A.   Several CCPOA members have already contracted a serious infectious disease as a result of overcrowding, and all are at unreasonable risk ...............3

8     B.   Overcrowding (combined with staffing shortages) has made excessive mandatory-overtime the norm, and its destructive impact is widespread .........4

9

10    C.   CDCR employees must either numb themselves to the conditions they are witnessing, or allow the situation to consume them..........................................5

11 III WHY THE COURT SHOULD GRANT INTERVENTION ......................................................5

12    A.   CCPOA Has a Right to Intervene Under Rule 24(a)...........................................5

13       1.   This Motion is timely ................................................................................6

14       2.   CCPOA has a significant interest relating to the subject of this proceeding................................................................................................6

15

16       3.   CCPOA is so situated that without intervention, the Court's disposition may impair or impede CCPOA's ability to protect its members' interest ...................................................................................8

17

18       4.   CCPOA's interest is not adequately represented by the existing parties .......................................................................................................8

19

20    B.   Even If This Court Were To Deny Intervention As of Right, It Should Grant Permissive Intervention Under Rule 24(b)(2) ..................................... 10

21       1.   CCPOA's claim shares a common question of law or fact with the main action............................................................................................. 11

22

23       2.   The court has an independent basis for jurisdiction ............................. 11

24       3.   CCPOA's interests are not adequately represented by existing parties ..................................................................................................... 11

25       4.   CCPOA "will significantly contribute to the full development of the underlying factual issues …"................................................................ 12

26

27       5.   Permitting intervention would serve judicial economy and would not cause undue delay or prejudice ...................................................... 12

28 IV  CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arakaki v. Cayetano*,
   131 F.3d 1297 (9th Cir. 1997) ............................................................................... 8

*Benavidez v. Eu*,
   34 F.3d 825 (9th Cir. 1994) ................................................................................. 11

*Berman v. Herrick*,
   30 F.R.D. 9 (E.D.Pa. 1962) ................................................................................. 11

*Blake v. Pallan*,
   554 F.2d 947 (9th Cir.1977) .................................................................................. 8

*DeShaney v. Winnebago County*
   *Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) .............................................................................................. 7

*Doe v. Schwarzenegger*,
   2007 WL 163252 (E.D.Cal., 2007) ..................................................... 5, 6, 8, 9, 10

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ............................................................................ 6, 10

*In re Cochise College Park, Inc.*,
   703 F.2d 1339 (9th Cir. 1983) ............................................................................. 11

*Portland Audubon Society v. Hodel*,
   866 F.2d 302 (9th Cir. 1989) ................................................................................. 5

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) ................................................................................. 9

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) ...................................................................... 5, 8, 10

*Securities and Exchange Com'n v. U.S. Realty & Imp. Co.*,
   310 U.S. 434 (1940) .............................................................................................. 2

*Southwest Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ................................................................................. 3

*Spangler [v. Pasadena City Bd. of Ed.]*,
   552 F.2d [1326,] (9th Cir. 1977) ......................................................................... 11

*United States v. Stringfellow*,
   783 F.2d 821 (9th Cir. 1986) ................................................................................. 6

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir.1989) .......................................................................... 10, 11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Wood v. Ostrander*,
　879 F.2d 583 (9th Cir. 1989)..................................................................................... 7

**Statutes**

18 U.S.C. § 3626(a)(3)(B).............................................................................................. 8, 11

18 U.S.C. § 3626(a)(3)(E)(i) ......................................................................................... 9, 12

28 U.S.C. § 1331.................................................................................................................11

42 U.S.C. § 1983............................................................................................................. 6, 7

Federal Rule of Civil Procedure
　Rule 24......................................................................................................................... 1, 6
　Rule 24(a)........................................................................................................................13
　Rule 24(b)(2)....................................................................................................... 10, 12, 13
　Rule 24 (a)(2) ............................................................................................................. 10, 5

Government Code
　Sections 3512 *et seq.* ........................................................................................................1
　Sections 3525 *et seq* ........................................................................................................1

**Other Authorities**

Fifth Amendment
　United States Constitution ................................................................................................6

Fourteenth Amendment
　United States Constitution ................................................................................................6

## MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, the California Correctional Peace Officers' Association ("CCPOA") hereby moves to intervene in this Three-Judge Court proceeding. This Motion is based on the interests of its members in the matters that are the subject of the litigation, which no existing party can adequately represent. CCPOA members' interests in their own health and safety as well as their daily working conditions, may be profoundly affected by the disposition of this proceeding, and CCPOA cannot adequately protect those interests as a non-party.

This Motion to Intervene is based on all pleadings and files in the two actions consolidated for this proceeding, the supporting Points and Authorities, the accompanying Intervention Pleading, and such other and further briefing or argument as the Court may ultimately permit. CCPOA does not notice a hearing because this Court's order dated August 17, 2007 stated that, absent further order, the Court would consider such motions "without further briefing or oral argument." (In the event the Court were inclined to deny the Motion, CCPOA respectfully requests a hearing.)

## SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

CCPOA is the exclusive representative, pursuant to the Ralph C. Dills Act (California Government Code §§ 3512 *et seq.*), of approximately 28,000 correctional officers, youth correctional officers, correctional counselors and parole agents in State Bargaining Unit 6 ("Unit 6"). CCPOA is also a recognized supervisor representative for approximately 2,400 supervisors of Unit 6 personnel under the Excluded Employees Bill of Rights Act (California Government Code §§ 3525 *et seq.*).

Every person that CCPOA represents has direct and substantial adverse experience, every day and night that he or she is on the job, as a result of the severely overcrowded prison conditions that led to the establishment of this Three-Judge Court.

Accordingly, CCPOA has an interest in this litigation because the relief under consideration by this Court – a cap on the State's prison population – would directly affect working conditions for all CCPOA members.

## II

### STATEMENT OF FACTS: CCPOA'S INTEREST

This brief will not recount the ignoble history of California's prison overcrowding crisis, and Defendants' failure to improve medical and mental-health systems within California prisons to a constitutional standard. These are well established in the *Coleman* and *Plata* Orders granting Plaintiffs' motions to convene this Court, as well as in CCPOA's previous amicus pleadings, and reports by *Plata* Receiver Robert Sillen. All of these documents further establish that the situation is worsening rather than improving, and that none of the State's recent efforts, including AB 900, "will have any appreciable impact on the severely overcrowded prisons in California for at least two years, if then." Order in *Coleman v. Schwarzenegger*, filed July 23, 2007, at 13:5-10.

Rather, this brief focuses on the impact of these dire circumstances on CCPOA members, to explain their interests in obtaining the only realistic start toward relief from those conditions: a cap on inmate population. CCPOA's interests are similar, but not identical, to Plaintiffs' interests. Even under "normal" conditions, California correctional custody work is of course inherently dangerous. However, when massive overcrowding is factored in, the risks inherent in the profession are amplified to levels that may fairly be called inhumane.

CCPOA seeks party status to argue for an inmate population cap because severe prison overcrowding has already harmed many CCPOA members, and creates excessively dangerous conditions for a majority of its members. CCPOA seeks to create a safer working environment for the employees it represents.[1] The following summarizes

---

[1] The Supreme Court has explained that Rule 24(b)(2) dispenses with any requirement that an applicant for permissive intervention have a "direct personal or pecuniary interest" in the subject of the litigation. *Securities and Exchange Com'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434 (1940).

the allegations made in CCPOA's accompanying pleading; the Court accepts all non-conclusory assertions as true when considering this Motion. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

### A. Several CCPOA members have already contracted a serious infectious disease as a result of overcrowding, and all are at unreasonable risk

The Governor acknowledged in his October 2006 Proclamation (filed as an exhibit to the briefing by several parties and amici on Plaintiffs' motions in both *Plata* and *Coleman* actions to convene this Three-Judge Court) that prison overcrowding creates an increased risk of the spread of communicable diseases. This is hardly surprising: with twice as many inmates packed into the State's prisons than they were designed to hold, the risk for transmission of infectious illnesses rises substantially, and with it the danger to CCPOA members.

Statewide, prisons are in fact experiencing outbreaks of potentially deadly Methicillin-Resistant Staphylococcus Aureus ("MRSA") among staff and inmates. At Folsom Prison in particular, there have been approximately ten confirmed cases of correctional officers who contracted the infection – most probably from inmates. The CDCR has never been willing to disclose which inmates are infected with MRSA, despite the necessity for its employees to be in constant contact with those inmates. As *Plata* Receiver Robert Sillen has put it: "When you look at the situation environmentally, medically, any other way in the prisons, I mean, I'm amazed there isn't more MRSA going around."[2]

MRSA is spread by skin contact with an infected person, or by contact with objects used by the infected person – two things that correctional officers and other Unit 6 members experience daily as part of their custodial duties. Yet Defendants have failed to take relatively straightforward precautions to protect against the spread of MRSA among employees. For example, they have not implemented the practices recommended by the

---

[2] *See* Phu and Furillo, Folson Prison Staph Illness Up, Union Says, *Sacramento Bee*, Aug. 29. 2007, p. B-1.

Centers for Disease Control and Prevention or the Federal Bureau of Prisons. Both of these organizations provide universal-precaution standards specifically aimed at protecting employees against the spread of MRSA; the guidelines set forth personal hygiene and isolation standards for inmates who have been infected with MRSA, as well as for the sanitization of linens and common areas to ensure the containment of any MRSA infection. But Defendants routinely permit inmates with MRSA to shower in common areas and allow inmates to launder their bed linens in cell toilets with only standard prison soap – all the while refusing to tell CDCR employees which inmates are infected.

**B.  Overcrowding (combined with staffing shortages) has made excessive mandatory-overtime the norm, and its destructive impact is widespread**

CCPOA members are subject to mandatory overtime – meaning that they must stay on the job beyond an already-lengthy shift whenever prison administrators so direct. Defendants have permitted the overcrowding to continue for so long, and severe staffing shortages are so persistent, that correctional officers must routinely work excessively long shifts, often with little or no prior notice. It is typical for CDCR to order mandatory overtime of up to *eight extra hours a day* for correctional officers up to ten times per month.

CCPOA can scarcely overstate the physical and mental impact of this insidious practice on its members. Many correctional officers work, in effect, "two days per day" several times a week, multiple times per month. This profoundly disrupts the essential processes of daily well-being – eating and sleeping – with the attendant decline in physical health and mental alertness, as well as severe disruption to family lives. And all of this, while the officers are responsible for the custody of violent felons who lack most rehabilitation, recreation, medical and mental health care programs because there are simply far too many of them for the available prison space and staff.

### C. CDCR employees must either numb themselves to the conditions they are witnessing, or allow the situation to consume them

In addition to the physical price that CCPOA members are paying for the overcrowding crisis, CCPOA has a significant interest here, going to the very essence of correctional work. That is, correctional staff are either going to be dehumanized by witnessing the current conditions, or they will continue to appreciate the scope of the harm to both prisoners and staff, but suffer from their inability to change that environment. Each alternative is a direct and profound harm to CCPOA members, and an impediment to genuine improvement in California's prison crisis.

While a population cap will not fix any of these problems by itself, no other single measure will either. And as the July 23, 2007 Orders in *Plata* and *Coleman* explained, no other attempted remedy has made any dent in this situation, nor is any measure likely to do so any time soon. CCPOA thus seeks party status to pursue the remedy being considered here, alongside the Plaintiff classes.

## III

### WHY THE COURT SHOULD GRANT INTERVENTION

#### A. CCPOA Has a Right to Intervene Under Rule 24(a)

Judge Karlton reviewed the law controlling intervention as-of-right in *Doe v. Schwarzenegger*, 2007 WL 163252 (E.D.Cal., January 18, 2007). "Rule 24 (a)(2) directs the district court to grant intervention" where the following conditions are met:

> (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

*Id*. at *1 (quoting *Portland Audubon Society v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989)). "This test has also been referred to as the *Sagebrush Rebellion* criteria. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983)." *Doe v. Schwarzenegger*, 2007 WL 163252, *2.

"Rule 24 is broadly construed in favor of applicants for intervention." *Id*. at *1, quoting *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986). "The test should be applied with an eye on practical considerations." *Doe v. Schwarzenegger*, 2007 WL 163252, *1 (citing *Stringfellow*, itself citing Fed.R.Civ.P. 24(a)(2) advisory note ("[I]f an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene ....").

### 1. This Motion is timely

The Court's order filed August 17, 2007, at page 3, set September 14 as the deadline for motions to intervene here. CCPOA files this Motion on that date.

### 2. CCPOA has a significant interest relating to the subject of this proceeding

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claim." (*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." (*Id*. at 410.)

Taking the second factor first: Plaintiffs seek a cap on the inmate population in California prisons as a remedy for persistent violations of their civil rights. The resolution of that claim certainly "will affect" CCPOA, in that reduction in the prison population will achieve at least some progress in addressing the harms described in section II above.

The interest of CCPOA members is to be free of the extraordinary daily risks and actual physical and mental harms described in section II. CCPOA asserts that Defendants have violated this substantive due-process right, cognizable under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Federal courts have recognized that individuals can assert a substantive due process right to protection by their state employer from harm inflicted by third-parties, when state officials act to increase the danger that ultimately results in that harm. Defendants' actions

in permitting prison populations to reach double their design capacity for years on end have affirmatively created an immediate and significant hazard to Correctional Officers and other employees in Bargaining Unit 6.

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989), the Supreme Court held that, as general matter, a State's failure to protect an individual from third-party harm, even in the face of known danger, "does not constitute a violation of the Due Process Clause." However, despite this general rule, the *DeShaney* Court recognized that in "certain limited circumstances[,] the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id*. at 198. Although *DeShaney* itself did not so hold, one of these circumstances arguably arises when "the State [was] aware of the dangers that [the claimant] faced" and "played [a] part in their creation" or did something to "render [the claimant] more vulnerable … ." *Id*. at 201.

Since *DeShaney*, nearly all Circuit Courts of Appeal, including the Ninth Circuit, *have* relied upon this passage to hold that constitutional liability may exist under 42 U.S.C. § 1983 where the State affirmatively creates a danger to an individual or creates a situation that renders an individual more vulnerable to danger. *See*, *e.g.*, *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (adopting the state-created danger theory in the context of a § 1983 claim brought against police officers by the passenger in an impounded vehicle who was raped after officers allegedly abandoned her on the side of the road).

By its Motion to Intervene, CCPOA seeks party status to demonstrate a substantive due-process violation under this theory, requesting the same remedy sought by Plaintiffs. It seeks an opportunity to show that, although presented with countless opportunities to improve the egregious statewide conditions of overcrowding that endanger all CCPOA members and have already harmed many, Defendants have instead demonstrated indifference to the liberty interests of Correctional Officers that rises to a conscience-shocking level.

CBM-SF\SF371082.1                                                -7-

**MOTION TO INTERVENE BY CCPOA; MPA IN SUPPORT THEREOF; AND INTERVENTION PLEADING**

### 3. CCPOA is so situated that without intervention, the Court's disposition may impair or impede CCPOA's ability to protect its members' interest

CCPOA need only show that "the disposition of the action *may* impair or impede [its] ability to protect that interest." *Arakaki v. Cayetano*, 131 F.3d 1297, 1083 (9th Cir. 1997), emphasis added. This criterion is met for two simple reasons. First, no other forum except this Three-Judge Court can grant a prisoner release order. *See* 18 U.S.C. § 3626(a)(3)(B). Second, no other measure undertaken by Defendants has even slightly improved, or is likely to improve within a reasonable time, the severe and persistent overcrowding at the root of both Plaintiffs and CCPOA members' harm. *See* the July 23, 2007 Orders in *Plata* and *Coleman*.

CCPOA members cannot obtain anything approaching adequate relief anywhere but in this extraordinary proceeding. Thus, a disposition here without intervention by CCPOA may well impair or impede CCPOA members' interest.

### 4. CCPOA's interest is not adequately represented by the existing parties

The gravity of the situation in the State's prisons has produced a confluence of interests between CCPOA and the Plaintiff prisoners that is both ironic and deeply necessary. But that does not mean Plaintiffs can adequately represent CCPOA's interests. Again turning to *Doe v. Schwarzenegger*, 2007 WL 163252, *3: "In determining the adequacy of existing representation, the court must consider three factors." These are:

> "(1) Are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is the present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit."

*Id*. (quoting *Blake v. Pallan*, 554 F.2d 947, 954-955 (9th Cir.1977)).

Of course the proposed intervenor bears the burden of demonstrating inadequate representation by the existing parties (*Sagebrush Rebellion*, 713 F.2d at 528), but "[o]rdinarily, this burden is minimal." *Doe v. Schwarzenegger*, 2007 WL 163252, *3,

citing *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006).[3]  The short answers to these questions, which CCPOA trusts the Court will find fairly intuitive, are as follows:

*(1) **In large part, yes, but not in total.***  Plaintiffs are advocating a remedy for loss of their constitutional rights.  CCPOA seeks to establish the link between drastic overpopulation in the prisons and physical and mental harm to its own members as well as to the Plaintiff classes.  Thus, the interests are similar, but not identical, and it is far from certain that the Prison Law Office will make the same legal arguments that CCPOA would.

*(2) **Very likely "capable" in the strict sense – but not "willing,"*** in that it would be inappropriate even to ask the Prison Law Office to articulate the perspective of correctional officers as zealously as it will the Plaintiffs' own perspective.

*(3)  **CCPOA would add to this proceeding a necessary element that it is uniquely suited to present:***  direct evidence of the day-to-day impact that the crushing overpopulation has on the welfare of both prisoners and correctional officers.  No one else can put this experience in the context of all the years it has continued, or explain first-hand the cause-and-effect relationship essential to issuance of the remedy being sought.  *See* 18 U.S.C. § 3626(a)(3)(E)(i).

Accordingly, the existing parties do not adequately represent CCPOA's interest.[4]

---

[3] In *Doe v. Schwarzenegger*, Judge Karlton determined that the proposed intervenor had failed to rebut the "presumption of adequate representation [that] arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee."  2007 WL 163252, *3.  No such presumption applies here.

[4] The Ninth Circuit has not yet ruled on whether a proposed intervenor must satisfy the case or controversy requirement of Article III.  *See Doe v. Schwarzenegger* (2007 WL 163252, *2), citing *Prete*, 438 F.3d at 955 n. 8.  This Court need not resolve that question because the ongoing disputes between CCPOA and the Defendants with respect to the prison over-population crisis and all of its attendant impacts on CDCR employees are well-documented.  The State now routinely ignores bargaining obligations under its Memorandum of Understanding with CCPOA, and even ignores adverse arbitration awards unless CCPOA gets a state court to confirm them.  Indeed, the expired-but-continuing MOU has little prospect of persisting even on paper, as current negotiations for a new MOU are disintegrating:  the State employer has announced its intention to declare impasse and impose its "last, best and final offer."

All four of the *Sagebrush Rebellion* criteria are thus satisfied here. Moreover, the "practical considerations" commended to this Court by Ninth Circuit law surely include this: *correctional officers* have at least as significant a role to play in this proceeding as district attorneys and legislators, whose intervention the Three-Judge Court has already granted. While those intervenors had a statutory basis in the United States Code for intervention as of right, and correctional officers do not, Rule 24(a)(2) supplies a co-equal basis for intervention as of right: the protectable-interest basis CCPOA has demonstrated. It would be eminently sensible to recognize that the men and women who live with severe overcrowding in California prisons every day should have the same status in this proceeding as the lawmakers and prosecutors.

CCPOA members will be "substantially affected in a practical sense by the determination made in [this] action," and thus "should, as a general rule, be entitled to intervene ...." Advisory Note to Fed.R.Civ.P. 24(a)(2). CCPOA has a right to intervene to protect its members' interests, and respectfully requests an order to that effect.

### B. Even If This Court Were To Deny Intervention As of Right, It Should Grant Permissive Intervention Under Rule 24(b)(2)

As Judge Karlton explained in *Doe v. Schwarzenegger*, 2007 WL 163252 (E.D.Cal., January 18, 2007), Rule 24(b)(2) permits intervention "when an applicant's claim … shares a common question of law or fact with the main action." *Id.* at *2. "Applicants seeking permissive intervention under Rule 24(b)(2) must also demonstrate that the court has an independent basis for jurisdiction over its claims or defenses." *Id.* (citing *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998)).

The Court in *Doe v. Schwarzenegger* continued (at *2, some citation material omitted): "If the above threshold conditions … are met, the court should also evaluate 'whether the movant's "interests are adequately represented by existing parties,"' *see Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir.1989). The court may also consider whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the

legal questions presented.  *See Spangler* [*v. Pasadena City Bd. of Ed.*], 552 F.2d [1326,] 1329 (9th Cir. 1977).  Finally, consideration of 'judicial economy' is also relevant in deciding a motion for permissive intervention. *See Venegas*, 867 F.2d at 531."

### 1. CCPOA's claim shares a common question of law or fact with the main action

This requirement can be satisfied in many ways, including situations, like this one, in which the applicant's claim is based on the same course of conduct by the defendant and seeks the same relief as the main action.  *See In re Cochise College Park, Inc.*, 703 F.2d 1339, 1346 (9th Cir. 1983) (affirming grant of permissive intervention to class alleging that bankruptcy trustee did not have title to payments made on certain notes, since main action presented claim by another class seeking determination of trustee's right to use similar funds).  That the rights of the applicant and the existing plaintiff derived from different sources did not diminish the commonality of law and fact questions.  *Cf. id*; *see also Berman v. Herrick*, 30 F.R.D. 9, 10-11 (E.D.Pa. 1962).

This proceeding concerns whether a prisoner release order is an appropriate remedy, and in that connection, whether overcrowding is a direct cause of the violations of the rights at issue.  Viewed in that light, the similarities between the Plaintiffs' claims and CCPOA's claim outweigh their areas of divergence.

### 2. The court has an independent basis for jurisdiction

CCPOA seeks the same relief as Plaintiffs:  a prisoner release order.  Thus, this Court has jurisdiction over CCPOA's claim to the same extent that it does over Plaintiffs' claims.  That jurisdiction is conferred by 18 U.S.C. § 3626(a)(3)(B).

Where the complaint in intervention asserts claims arising under federal law, there is independent subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.  *See Benavidez v. Eu*, 34 F.3d 825, 831 (9th Cir. 1994).

### 3. CCPOA's interests are not adequately represented by existing parties

This is so for the reasons stated in sub-section A-4 above.

CBM-SF\SF371082.1 -11-

**MOTION TO INTERVENE BY CCPOA; MPA IN SUPPORT THEREOF; AND INTERVENTION PLEADING**

### 4. CCPOA "will significantly contribute to the full development of the underlying factual issues …"

As noted previously, CCPOA is uniquely suited to contribute to development of the evidentiary record, because its members observe and experience every day the impact that the crushing overpopulation has on the welfare of both prisoners and correctional officers. No one else can put this experience in the context of all the years it has continued, or explain first-hand the cause-and-effect relationship essential to issuance of the remedy being sought. *See* 18 U.S.C. § 3626(a)(3)(E)(i).

### 5. Permitting intervention would serve judicial economy and would not cause undue delay or prejudice

Permitting CCPOA to intervene in this proceeding would not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). CCPOA respectfully submits that participation in this proceeding by correctional officers is *essential* to a fully developed record and a fair and just result. Requiring its members to participate as witnesses when their own interests are not directly represented is neither fair nor efficient.

Moreover, there is no aspect of CCPOA's claim that will make this proceeding any more complex or lengthy. Indeed, granting CCPOA party status will subject it to the Court's jurisdiction and streamline the presentation of evidence.

For all of the foregoing reasons, the Court should grant permissive intervention if for any reason it does not conclude CCPOA has a right to intervene here.

\\
\\
\\
\\
\\
\\
\\
\\

CBM-SF\SF371082.1 -12-

## IV

## CONCLUSION

Pursuant to Rule 24(a), CCPOA has the right to intervene in this proceeding. But failing recognition of such a right, the Court should nonetheless permit CCPOA to intervene under Rule 24(b)(2).

Dated: September 14, 2007

CARROLL, BURDICK & McDONOUGH LLP


By  */s/ Gregg McLean Adam*
Ronald Yank
Gregg McLean Adam
Jennifer S. Stoughton
Attorneys for Proposed Intervenor California Correctional Peace Officers' Association

CBM-SF\SF371082.1                     -13-

MOTION TO INTERVENE BY CCPOA; MPA IN SUPPORT THEREOF; AND INTERVENTION PLEADING