Ronald Yank, No. 041200
Gregg McLean Adam, No. 203436
Jennifer S. Stoughton, No. 238309
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:    415.989.5900
Facsimile:    415.989.0932
Email:        gadam@cbmlaw.com
              jstoughton@cbmlaw.com

Benjamin C. Sybesma, No. 103380
Christine Albertine, No. 141033
**CALIFORNIA CORRECTIONAL PEACE OFFICERS'
ASSOCIATION LEGAL DEPARTMENT**
755 Riverpoint Drive, Suite 200
West Sacramento, California 95605-1634
Telephone:    916.372.6060
Facsimile:    916.372.9805
Email:        ben.sybesma@ccpoa.org
              christine.albertine@ccpoa.org

Attorneys for Proposed Intervenors
California Correctional Peace Officers' Association

IN THE UNITED STATES DISTRICT COURTS

FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| MARCIANO PLATA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>Defendants. | No. Civ C 01-1351 TEH (N.D. Cal.) *and*<br><br>No. Civ S 90-0520 LKK-JFM (E.D. Cal.)<br><br>**THREE-JUDGE COURT** |
| RALPH COLEMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>Defendants. | **INTERVENTION PLEADING BY CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION** |

CBM-SF\SF372531.1

**INTERVENTION PLEADING BY CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION**

## PROPOSED INTERVENOR

Proposed Intervenor California Correctional Peace Officers' Association ("CCPOA") alleges as follows:

1. CCPOA is the exclusive recognized employee organization representing approximately 30,000 state employees in State Bargaining Unit Six.

2. CCPOA submits this Intervention Pleading in compliance with Federal Rule of Civil Procedure 24(c).

## JURISDICTION AND VENUE

3. CCPOA's allegations in this Intervention Pleading arise out of the same transaction or occurrence that is the subject matter of the claims at issue in this action. This Court has jurisdiction over the claims in this action as well as CCPOA's defenses pursuant to 28 U.S.C., section 1331.

4. Venue is proper in this district pursuant to 28 U.S.C., sections 1331.

## GENERAL ALLEGATIONS

5. CCPOA has an interest in this litigation because its approximately 28,000 members guard the state prisons at the heart of this Three-Judge Court proceeding. The severely overcrowded prison conditions that led to the establishment of this Three-Judge Court directly and profoundly affect every CCPOA member while he or she is on the job. Likewise, the relief under consideration by this Court – a cap on the State's prison population – would directly affect working conditions for all CCPOA members.

6. In compliance with Federal Rule of Civil Procedure 24(c), CCPOA pleads the following claim for which it seeks intervention.

## CLAIM IN INTERVENTION

7. The Northern and Eastern District Courts of California have already determined that a violation of inmates' rights under the U.S. Constitution exists throughout the California state prison system.

8. Those District courts have also previously entered multiple orders for less intrusive relief that have failed to cure the deprivation of constitutional rights, which the Plaintiffs here seek to remedy through a cap on inmate population and prisoner release order. Defendants have had a reasonable amount of time to comply with those previous court orders. See 18 U.S.C. 3626(a)(3)(A).

9. In support of a prisoner release order, CCPOA would present clear and convincing evidence that crowding is the primary cause of that violation, and that no other relief will remedy the violation. See 18 U.S.C. 3626(a)(3)(E).

10. In addition, CCPOA seeks party status to argue for an inmate population cap because severe prison overcrowding has already harmed many CCPOA members, and creates excessively dangerous conditions for a majority of its members. CCPOA seeks to create a safer working environment for the employees it represents.

11. CCPOA members have a substantive due-process right, cognizable under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, to be free of the extraordinary daily risks and actual physical and mental harms described below. By their actions to date as described in the July 23, 2007 orders in *Plata* and *Coleman*, Defendants have affirmatively created a danger to CCPOA members and/or created a situation rendering them more vulnerable to danger.

**Several CCPOA Members Have Already Contracted a Serious Infectious Disease As A Result Of Overcrowding, And All Are At Unreasonable Risk**

12. The Governor acknowledged in his October 2006 Proclamation (filed as an exhibit to the briefing by several parties and amici on Plaintiffs' motions in both *Plata* and *Coleman* actions to convene this Three-Judge Court) that prison overcrowding creates an increased risk of the spread of communicable diseases. This is hardly surprising: with twice as many inmates packed into the State's prisons than they were designed to hold, the risk for transmission of infectious illnesses rises substantially, and with it the danger to CCPOA members.

13. Statewide, prisons are in fact experiencing outbreaks of potentially deadly Methicillin-Resistant Staphylococcus Aureus ("MRSA") among staff and inmates. At Folsom Prison in particular, there have been approximately ten confirmed cases of correctional officers contracted the infection – most probably from inmates.

14. The CDCR has never been willing to disclose which inmates are infected with MRSA, despite the necessity for its employees to be in constant contact with those inmates.

15. MRSA is spread by skin contact with an infected person, or by contact with objects used by the infected person – two things that correctional officers and other Unit 6 members experience daily as part of their custodial duties.

16. Yet Defendants have failed to take relatively straightforward precautions to protect against the spread of MRSA among employees. For example, they have not implemented the practices recommended by the Centers for Disease Control and Prevention or the Federal Bureau of Prisons.

17. Both of these organizations provide universal-precaution standards specifically aimed at protecting employees against the spread of MRSA; the guidelines set forth personal hygiene and isolation standards for inmates who have been infected with MRSA, as well as for the sanitization of linens and common areas to ensure the containment of any MRSA infection. But Defendants routinely permit inmates with MRSA to shower in common areas and allow inmates to launder their bed linens in cell toilets with only standard prison soap – all the while refusing to tell CDCR employees which inmates are infected.

**Overcrowding (Combined With Staffing Shortages)
Has Made Excessive Mandatory-Overtime The Norm,
And Its Destructive Impact Is Widespread**

18. CCPOA members are subject to mandatory overtime – meaning that they must stay on the job beyond an already-lengthy shift whenever prison administrators so direct. Defendants have permitted the overcrowding to continue for so long, and severe

staffing shortages are so persistent, that correctional officers must routinely work excessively long shifts, often with little or no prior notice. It is typical for CDCR to order mandatory overtime of up to eight extra hours a day for correctional officers, on as many as ten occasions per month.

19. CCPOA can scarcely overstate the physical and mental impact of this insidious practice on its members. Many correctional officers work, in effect, "two days per day" several times a week. This profoundly disrupts the essential processes of daily well-being – eating and sleeping – with the attendant decline in physical health and mental alertness, as well as severe disruption to family lives. And all of this, while the officers are responsible for the custody of violent felons who lack most rehabilitation, recreation, medical and mental health care programs because there are simply far too many of them for the available prison space and staff.

**CDCR Employees Must Either Numb Themselves to the Conditions They Are Witnessing, Or Allow The Situation to Consume Them**

20. In addition to the physical price that CCPOA members are paying for the overcrowding crisis, CCPOA has a significant interest here, going to the very essence of correctional work. That is, correctional staff are either going to be dehumanized by witnessing the current conditions, or they will continue to appreciate the scope of the harm to both prisoners and staff, but suffer from their inability to change that environment. Each alternative is a direct and profound harm to CCPOA members, and an impediment to genuine improvement in California's prison crisis.

21. While a population cap will not fix any of these problems by itself, no other single measure will either. And as the July 23, 2007 Orders in *Plata* and *Coleman* explained, no other attempted remedy has made any dent in this situation, nor is any measure likely to do so any time soon.

CBM-SF\SF372531.1                                    -4-
INTERVENTION PLEADING BY CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION

**PRAYER FOR RELIEF**

WHEREFORE, the California Correctional Peace Officers' Association respectfully requests that the Three-Judge Court:

A. Grant its Motion to Intervene,

B. Establish a cap on the population of California prisons, and issue a prisoner release order, and

C. Grant such other and further relief as it deems just and proper.

Dated: September 14, 2007

CARROLL, BURDICK & McDONOUGH LLP

By  */s/ Gregg McLean Adam*
Ronald Yank
Gregg McLean Adam
Jennifer S. Stoughton
Attorneys for Proposed Intervenor California Correctional Peace Officers' Association

CBM-SF\SF372531.1               -5-

**INTERVENTION PLEADING BY CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION**