ORIGINAL



**FILED**

SEP 1 3 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1   UNITED STATES DISTRICT COURT

2   EASTERN DISTRICT OF CALIFORNIA

3   --o0o--

4   RALPH COLEMAN, et al.,              )   Case No. 2:90-cv-00520-LKK-JFM
                                        )
5                     Plaintiffs,       )
                                        )   Sacramento, California
6        vs.                            )   Wednesday, September 5, 2007
                                        )   11:25 A.M.
7   SCHWARZENEGGER, et al.,             )
                                        )   Hearing re: plaintiff's
8                     Defendants.       )   motion to compel attorney's
    _____        )   fees.

9

10              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JOHN F. MOULDS
           UNITED STATES MAGISTRATE JUDGE

11

    APPEARANCES:

12

    For Plaintiffs:              ERNEST GALVAN
13                               AMY WHELAN
                                 Rosen, Bien & Galvan, LLP
14                               315 Montgomery Street
                                 10th Floor
15                               San Francisco, CA   94104
                                 (415) 433-6830

16

    For Defendants:             MISHA D. IGRA
17                              LISA A. TILLMAN
                                Attorney General's Office
18                              1300 I Street, Suite 125
                                Sacramento, CA   95814
19                              (916) 327-7872

20  Court Recorder:             (UNMONITORED)
                                U.S. District Court
21                              501 I Street, Suite 4-200
                                Sacramento, CA   95814
22                              (916) 930-4193

23  Transcription Service:      Petrilla Reporting &
                                  Transcription
24                              5002 - 61st Street
                                Sacramento, CA   95820
25                              (916) 455-3887

    Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

1

1    SACRAMENTO, CALIFORNIA, WED., SEPTEMBER 5, 2007, 11:25 A.M.

2

3         THE CLERK:  Calling Civil Case 90-520-LKK, Coleman v.

4    Schwarzenegger.  This is on for plaintiff's motion to compel

5    attorney's fees.

6         THE COURT:  It's tempting to say, you're back.

7         Will counsel state their appearance please?

8         MS. WHELAN:  Good morning, Your Honor.  This is Amy

9    Whelan for the plaintiff class.

10        MR. GALVAN:  Good morning, Your Honor.  Ernest Galvan

11   for the plaintiff class.

12        MS. IGRA:  Misha Igra for defendants.

13        MS. TILLMAN:  Good morning, Your Honor.  Lisa Tillman

14   on behalf of defendants.  Ms. Igra will be handling this

15   motion.

16        THE COURT:  Does that mean you've gotten some help

17   since the last time you were here?

18        MS. TILLMAN:  Thank goodness.

19        THE COURT:  The -- did plaintiffs wish to be heard?

20        MS. WHELAN:  Yes, Your Honor.  This is a yearly

21   motion to compel regarding disputed fees from the third and

22   fourth quarters of 2006.  There are three major categories:

23   our work on the overcrowding motion; on the out of state

24   transfer, the initial transfer of 80 prisoners out of state to

25   a facility in Tennessee; and work on a discovery motion that

1   was filed toward the end of 200 -- or the mid-part of 2006.

2           We believe that pursuant to the periodic fees order

3   and existing case law on these issues that all categories of

4   work qualify for compensation.  So we are seeking a threshold

5   ruling from the Court that we're entitled to reasonable fees

6   and costs for these three categories, and that we will have 30

7   days to meet and confer with the defendants about the amounts

8   to be awarded.

9           The periodic fees order determines that fees and

10  costs are compensable when they were -- when the work was

11  useful and necessary to ensure compliance with the underlying

12  orders in the case, and all three categories were -- fit that

13  legal standard.

14          The overcrowding motion in particular includes work

15  enforcing compliance with virtually every aspect of the

16  underlying 1995 Coleman order, including staffing issues,

17  screening issues, suicide precaution issues, the administration

18  of drugs and also just generally treatment program issues in

19  the prison system.

20          An initial order granting the empanelment of that

21  three-judge panel came out two days before we filed -- two days

22  before defendants filed their opposition to this motion.

23          With respect to the out of state transfer motion for

24  a temporary restraining order, this pertains to work done in

25  November of 2006 when we were given notice on, I believe it was

3

1    November 1st or 2nd.  But the first shipment of 80 prisoners

2    would be transferred to Tennessee within 48 hours, and we had a

3    series of telephone calls with defendant's counsel about that

4    transfer, and learned that there were various problems,

5    including that the program guides had not yet been sent to the

6    institution, that mental health staffing had not been

7    determined, that the various screening of prisoners hadn't

8    occurred, and so we filed that motion before this Court.

9        And the discovery motion, which is the third

10    category, related to underlying disputes in this case regarding

11    the revised program guide, and that motion was brought before

12    this Court, I believe in July of 2006 in response to

13    defendant's position that no discovery at all would be

14    permitted at this stage in the proceedings, and that discovery

15    was prohibited at the -- in the remedial phase of the case.

16        THE COURT:  Thank you, counsel.

17        MS. IGRA:  Your Honor, by way of background,

18    defendants agreed by stipulation to pay, and have paid $378,000

19    plus interest for plaintiff's third quarter 2006 fees, and

20    defendants agreed to pay, and they have paid $413,000 plus

21    interest for plaintiff's fourth quarter 2006 fees.

22        And recently there was an order on August 15th for an

23    additional $381,000 in fees.  Now defendants have agreed to pay

24    all of these amounts by stipulation, over $1.1 million because

25    defendants understand that the work that plaintiff's counsel

4

1   does historically has had merit and value to the plaintiff's

2   class.  But these three motions are exceptions.

3         There was a motion seeking to obtain tour binders and

4   reopen broad discovery more than a decade after the conclusion

5   of trial.  Now, the Court denied the request for tour binders.

6   The Court denied the request to reopen discovery.  This was

7   without prejudice to plaintiffs bringing another motion, more

8   narrowly tailored to seek specific discovery, but nevertheless,

9   the motion they seek fees for was denied.

10        And with regard to out-of-state transfers, plaintiffs

11  got a temporary restraining order and an injunction to stop the

12  transfer of the inmates out of state.  Well, that was also

13  denied, and inmates were transferred out of state, and they

14  continue to be transferred to this day.  We currently have over

15  800 out of state, and thousands more will be transferred.

16        And third was the motion to convene a three-judge

17  court, and defendants have pointed out that this was purely

18  procedural  It didn't afford any relief to the represented

19  class and in fact, in plaintiffs filing with the Ninth Circuit,

20  they make that admission.  On pages 21 to 22 they state, the

21  orders that issue here are purely procedural and did not issue

22  any relief.  In fact, under the PLRA, the District Courts are

23  statutorily forbidden from issuing any prisoner release order

24  as single judges.  In keeping with the PLRA's strict

25  requirements, these orders do no more than set the stage for

1 | further proceedings.

2 | I've brought an extra copy of the appellee's brief
3 | for the Court if you'd like to have that for your records.  It
4 | was filed after we filed our response, and therefore, I
5 | couldn't request judicial notice of this document, but the
6 | admission is contained there.

7 | The Court has before it a purely legal argument.  The
8 | stipulation and order for periodic fees from March 1996 says
9 | the standard of review to be applied to disputed billing items
10 | will be whether the services were useful and necessary to
11 | ensure compliance with the decision and order dated September
12 | 13th, 1995.  Not useful and necessary generally, but useful and
13 | necessary to ensure compliance with the decision and order from
14 | 1995.

15 | And that periodic fee order was issued in March of
16 | 1996, and in April of 1996, the PLRA, the Prison Litigation
17 | Reform Act, was adopted, and both parties agreed that
18 | plaintiff's counsel is subject to the PLRA, and you can't pick
19 | and choose the sections that you like.  The PLRA governs
20 | attorney's fee awards in this case.

21 | Now, the PLRA instructs that quote, fees shall not be
22 | awarded unless it's shown that one, the fees were directly and
23 | reasonably incurred in proving a violation of prisoner's rights
24 | protected by a statute pursuant to which fees may be awarded
25 | under 42 USC 1988.  That's one.

6

1          Second, the amount of the fee must be proportionately

2    related to the relief that the Court has ordered, and third,

3    and it can be either two or three, the fees were directly and

4    reasonably incurred in enforcing the relief ordered for that

5    constitutional violation.

6          Now, in this case, attorney's fees relative to an

7    unsuccessful discovery motion, and an unsuccessful application

8    for a temporary restraining order and a purely procedural

9    motion to have a matter referred to a three-judge panel to cap

10   the prison population do not meet the threshold showing under

11   the PLRA.

12         The Court may allow reasonable attorney's fees as

13   costs -- as part of the costs to the prevailing party under

14   Section 1988, and this is a stumbling block.  It didn't prevail

15   on the discovery or injunction motions, and the Court only has

16   discretion to award a fee which is reasonable in relation to

17   the relief they obtained.

18         Seeking a hearing before a three-judge panel, two out

19   of the three motions were denied.  The motion for a three-judge

20   panel was procedural, and case law that I cited in my brief

21   provides that purely procedural motions, while they may

22   ultimately affect the merits of the case, they do not on their

23   own satisfy the requirement that you be the prevailing party

24   for purposes of fees under Section 1988.

25         The PLRA expressly says that fees shall not be

7

1   awarded unless there has been -- they have been incurred to
2   prove a constitutional violation, which none of these motions
3   have done, and that it be pursuant to a statute which permits
4   fees under Section 1988, and 1988 in turn says, you have to be
5   the prevailing party.

6        So we have also fully briefed the issues of
7   plaintiffs filing the same motion for a three-judge panel in
8   three different actions, and yet even though it's on behalf of
9   three different classes of their clients, they're billing it
10  only to the Coleman defendants.

11       We also discussed the impropriety of billing Coleman
12  for reviewing documents from the Plata (phonetic), and we also
13  briefed that what plaintiff's counsel may charge someone else
14  in another action, not arising under the PLRA, is not relevant
15  here.

16       What is relevant is under the PLRA which governs
17  this -- any attorney's fee award in this action, have
18  plaintiffs met the statutory threshold and if so, then only
19  reasonable fees proportionate to the relief they obtained may
20  be granted.  But if not, the threshold has not been met, then
21  the PLRA prevents the Court, prohibits the Court from awarding
22  any fees.

23       Now, it's defendant's position that plaintiffs have
24  not satisfied the minimum requirements under the PLRA, and for
25  that reason, plaintiff's motion should be denied.

1          THE COURT:  Anything further for plaintiffs?

2          MS. WHELAN:  Yes, Your Honor.  A couple of direct

3    responses to what defendants have argued.  Fist, the legal

4    standard that they are citing is completely wrong for this

5    injunctive relief monitoring period case.  It is not a

6    prevailing party status that determines whether or not fees and

7    costs are compensable.  And all of the cases that they cite on

8    that point have to do with an initial determination of whether

9    or not somebody won a case and should be awarded fees and

10   costs.

11         Here, we have a periodic fees order that establishes

12   the standard.  You do not every time plaintiff's counsel works

13   on a matter determine, were you the prevailing party on that

14   discrete matter.  That would be unwieldy in a case like this

15   where we've been now litigating for -- or in the enforcement

16   period for more than a decade.  So that is just -- it's the

17   premise of that is just wrong for this case.

18         It's -- although wrong to say that the standard is

19   whether or not you win a motion, the standard, which has been

20   expanded on by case law is whether or not it was -- it's

21   basically a reasonableness standard.  It's whether or not it

22   was reasonable at the time plaintiff's attorney did the work to

23   litigate a particular issue.

24         So in some ways the ultimate success of it does not

25   determine the threshold issue that we are asking the Court to

1   determine here, which is are we entitled to fees, and then at
2   that point, we'll determine, you know, what fees are reasonable
3   in light of this work.

4        Also, you know, we have never disputed that the PLRA
5   applies to this case.  In fact, our fees and costs are limited
6   by the PLRA.  But the dispute that -- the arguments that
7   defendants make about the standard under the PLRA have been
8   directly rejected by the Webb case in the Ninth Circuit, and in
9   fact, defendants in that matter make the exact same argument
10  that defendants here are making, and it was exactly rejected
11  by the Court.

12        And defendants cite one of the Webb cases in their
13  briefs, but not the one that is directly on point to this
14  argument, which basically -- in the Webb case it established
15  that you don't go through a prevailing party analysis all over
16  again, and that's the real determination, and they cited to
17  Congress' intent in passing the PLRA in their reasoning for
18  this point, but they say that basically a plaintiff is entitled
19  to fees incurred in enforcing a judgment entered upon proof
20  that plaintiff's rights have been violated.

21        So this idea that we have to prove a constitutional
22  violation every time we seek reasonable fees and costs, it was
23  directly rejected by the Webb case.

24        Finally, and you know, this is one of, I find, the
25  most offensive parts of their brief, which is an accusation

1 | that we somehow double billed in this case, or that we included
2 | work that is not compensable, and that is just they do not cite
3 | one shred of evidence to support that all of the fees and costs
4 | in the overcrowding motions were allocated to those distinct
5 | cases.

6 | They cite no evidence whatsoever that the Coleman
7 | defendants are bearing the burden or costs of overcrowding work
8 | done in other cases.  And in fact, plaintiffs concede that we
9 | shared work between our office and particularly the prison law
10 | office, which made our fees and costs more reasonable, not less
11 | so, because some of the legal research, for instance, that was
12 | done on the overcrowding motions was shared between the cases,
13 | and not done, you know, three times.  It was done once.

14 | So, that argument is particularly egregiously wrong,
15 | and unsupported by any evidence.

16 | MS. IGRA:  If I may be heard, Your Honor?

17 | THE COURT:  Plaintiffs will have an opportunity to
18 | close.  I'll hear you briefly, but that does --

19 | MS. IGRA:  Thank you, Your Honor.

20 | THE COURT:  All right.

21 | MS. IGRA:  Your Honor, with regard to post-judgment
22 | monitoring, the cases I cite do directly address post-judgment
23 | monitoring and post-judgment services.  Only disputed fees and
24 | costs are described in the periodic fee order as a procedure,
25 | how we shall work out what will be paid, and won't be paid.

1    Most of the attorney's fees and costs, as I started out telling

2    you, have been paid in full because defendants don't dispute

3    those costs.  However, these motions are exceptions.

4          With regard to the Webb cases, they state in their

5    brief the fees must be quote, directly and reasonably incurred

6    in enforcing the relief ordered for the violation.  In this

7    case, hence, the decision and order must be directly and

8    reasonably incurred in enforcing the relief ordered for the

9    violation.

10         Here, it's a decision and order which did not address

11   discovery, did not address out of state transfers, or

12   overcrowding.  So those motions were not directly and

13   reasonably incurred in enforcing the relief in Coleman.

14         With regard to evidence of billing, we have submitted

15   and they are under seal, the bills from plaintiff's counsel.  I

16   invite the Court to look over them.  They aren't copious, about

17   250 pages, and the evidence --

18         THE COURT:  Counsel, I have to tell you, in this

19   case, 250 pages isn't copious.

20         MS. IGRA:  Your Honor, I understand.  However, the

21   evidence is in the bills themselves.  Your Honor, and since

22   plaintiff's counsel raised the purposes of the PLRA, in the

23   Madrid v. Gomez case, the Ninth Circuit said that the purpose

24   of the PLRA was not only to curtail frivolous prisoner suits,

25   but to minimize the costs borne by taxpayers associated with

1   these suits.   These are costs that the taxpayers should not be
2   made to bear, especially where plaintiffs have brought motions
3   that have been unsuccessful.

4             Thank you, Your Honor.

5             THE COURT:  Anything further, counsel?

6             MS. WHELAN:  Just very quickly.  I mean, we dispute
7   it and I think we brief it well enough in our papers, and I
8   won't restate it here, the idea that we weren't successful, and
9   again, that is not quite the legal standard, but I think that
10  we talk about the history of these -- of this work in detail,
11  and the Court has enough information to analyze that.

12            I just want to address one other thing, which is that
13  I think defendants are implying somehow that there was some
14  sort of excessive billing by -- she's saying that we've already
15  paid X amount and the purpose of the PLRA is that taxpayers
16  shouldn't bear the burden of costs.

17            And certainly, that's true, but I think in this case
18  where the judge recently -- Judge Karlton recently issued an
19  order stating that defendants have not at any moment in the
20  decade since the 1995 order was entered, provided
21  constitutionally adequate mental health care.

22            It's irrelevant what defendants have already paid, or
23  have paid in the past.  The question here before this Court is
24  what work has been done that's reasonably compensable and that
25  is the only thing before this Court.  And if other fees and

1    costs were paid, that's because it was reasonable -- that also
2    was reasonably done on behalf of the plaintiff class.

3              THE COURT:  All right.  At the outset, I do want to
4    note two matter which came up in argument today.  One is an
5    argument I often hear in discovery matters, but it's usually in
6    a slightly different form.

7              I usually find parties defending a discovery motion
8    that come in and tell the Court how many thousands of pages
9    they have provided in response to the efforts of discovery that
10   have been made by the side now moving to compel even further
11   documents.  And I think in many ways that's analogous to the
12   argument that the state has already paid lots of money for this
13   case.  There's no doubt about that, but that's not the issue
14   before the Court today.

15             The other is -- I think this may be the first time
16   I've heard the word "frivolous" in connection with the Coleman
17   case, and that bothers me greatly.  The -- I will mention that
18   I think the defense in this case took a major jump in quality
19   with the arrival of counsel, and we appreciate your appearance
20   here, because until that time -- this case was filed in 1990.
21   That means it's 17 years old right now.  Next year it will be
22   able to vote, and in three years, it will be able to drink, and
23   it will need it.

24             The -- during that period of time, particularly the
25   early days, when I spent three months hearing this case, and

14

1   making findings and recommendations to the District Court, what

2   I had to do, among other things, as it turned out, was wade

3   through an enormous frivolous defense.  I have not seen that

4   behavior replicated in recent years, and I hope that's not just

5   because I'm not at the District Court level, and haven't been

6   party to those arguments.

7           But if -- frivolous is a pretty nasty word to use

8   about the behavior of counsel, and I'm concerned to start

9   hearing it when talking about the behavior of plaintiff's

10  counsel in making this motion.

11          (Coughing)  Excuse me.  I seem to be losing my voice.

12          I'll send you a written order of course.  The -- I

13  understand that counsel have agreed that they'll work it out if

14  I give you the rough idea of where the Court's going on this,

15  on the legal standards.  We'll see whether that works.  I hope

16  it does.

17          The three -- the motion for fees with regard to the

18  motion for a three-judge panel will be granted.  The motion for

19  a temporary restraining order with regard to the transfer of

20  inmates out of state, while not granted, appears to have

21  resulted in the institution of significant protections for the

22  class in Coleman, and those will be granted.

23          The request for fees concerning the discovery motion

24  for the tour binder will be denied.  I'm telling you roughly

25  where the opinion is going so that I can save you whatever time

1    is possible to be saved in connection with this, and I'll get

2    you a written order as soon as I can, and hopefully before I

3    leave for France, which will be on the 14th of September.

4              Thank you.

5              MS. IGRA:  Thank you, Your Honor.

6              MS. WHELAN:  Thank you, Your Honor.

7              MS. TILLMAN:  Thank you, Your Honor.

8              MR. GALVAN:  Thank you, Your Honor.

9         (Whereupon the hearing in the above-entitled matter was

10   adjourned at 11:51 a.m.)

11                         --o0o--

12                        CERTIFICATE

13        I certify that the foregoing is a correct transcript from

14   the electronic sound recording of the proceedings in the above-

15   entitled matter.

16

17   _Patricia A. Petrilla_                    September 10, 2007

18   Patricia A. Petrilla, Transcriber

19   AAERT CERT*D-113

20

21

22

23

24

25