1    PRISON LAW OFFICE
      DONALD SPECTER, Bar No. 83925
2    STEVEN FAMA, Bar No. 99641
      E. IVAN TRUJILLO, Bar No. 228790
3    General Delivery
      San Quentin, California  94964
4    Telephone: (415) 457-9144

      BINGHAM, McCUTCHEN, LLP
      WARREN E. GEORGE, Bar No. 53588
      Three Embarcadero Center
      San Francisco, California  94111
      Telephone: (415) 393-2000

5    ROSEN, BIEN & GALVAN, LLP
      MICHAEL W. BIEN, Bar No. 096891
6    JANE E. KAHN, Bar No. 112239
      AMY WHELAN, Bar No. 215675
7    LORI RIFKIN, Bar No. 244081
      SARAH M. LAUBACH, Bar No. 240526
8    315 Montgomery Street, 10th Floor
      San Francisco, California  94104
9    Telephone: (415) 433-6830

      HELLER, EHRMAN, WHITE &
      McAULIFFE
      RICHARD L. GOFF, Bar No. 36377
      701 Fifth Avenue
      Seattle, Washington  98104
      Telephone: (206) 447-0900

10   THE LEGAL AID SOCIETY –
      EMPLOYMENT LAW CENTER
11   CLAUDIA CENTER, Bar No. 158255
      LEWIS BOSSING, Bar No. 227402
12   600 Harrison Street, Suite 120
      San Francisco, CA  94107
13   Telephone:  (415) 864-8848

14

15   Attorneys for Plaintiffs

16                UNITED STATES DISTRICT COURT

17               EASTERN DISTRICT OF CALIFORNIA

18

19   RALPH COLEMAN,

20          Plaintiffs,

21   vs.

22   ARNOLD SCHWARZENEGGER, et al.,

23          Defendants

24

25

26

27

28

No.:  Civ S 90-0520 LKK-JFM

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE MOULD'S FINDINGS AND RECOMMENDATIONS REGARDING DISPUTED ATTORNEYS' FEES AND COSTS FROM 2006**

**INTRODUCTION**

On September 28, 2007, defendants filed objections to Magistrate Judge Mould's September 11, 2007 Findings and Recommendations (F&R) regarding disputed attorneys' fees and costs from 2006.[1]  Those objections rely on erroneous assertions that plaintiffs have to prove a new constitutional violation every time they seek reasonable fees and costs and that plaintiffs' work on the overcrowding motion is unrelated to the underlying *Coleman* decision.

**I.     Defendants Misstate the Legal Standard Regarding Plaintiffs' Entitlement to Reasonable Attorneys' Fees and Costs for Post-Judgment Monitoring**

Defendants argue that plaintiffs' counsel must prove a constitutional violation every time they seek reasonable attorneys' fees and costs in this matter.  Not only is that position unworkable from a practical standpoint, it is not the law.  In a case that defendants failed to cite in their opposition brief to the Magistrate Judge and that directly contradicts this legal argument, the Ninth Circuit held that compensation for post-judgment attorneys' fees and costs is compensable when the "fees were directly incurred in enforcing court ordered relief instituted to correct violations of [plaintiffs'] constitutional rights."  *Webb v. Ada County*, 285 F.3d 829, 833 (9th Cir. 2002), *cert. denied,* 537 U.S. 948 (2002).  Indeed, the Court in the *Webb* case rejected the exact argument that defendants make in this motion—that fees are only compensable if plaintiffs prove a new constitutional violation.  *Id.* at 834-835 (holding that plaintiffs need not prove an actual violation of the Constitution to be compensated for post-judgment work and that such an interpretation "of the PLRA would render the language of subsection (B)(ii) superfluous.").  Instead, the fees must be "directly and reasonably incurred in *enforcing* the *relief ordered* for the violation."  *Id.* at 834 (emphasis in original) (citing 42 U.S.C. § 1997(e)(d)(1)(B)(ii)).  The Court's rationale for reaffirming this standard was squarely based on Congressional intent in passing the PLRA:

---

[1] Defendants failed to timely file their objections to the Magistrate's F&R, but filed a motion seeking an extension of time on September 21, 2007.  To date, this Court has not granted that extension.

> If a postjudgment fee request could only be granted if the attorney's services were directly linked to a discrete constitutional violation, fees incurred "in enforcing the relief" that the court had ordered because of demonstrated previous constitutional violations, could not be awarded. To the contrary, when subsections (A) and (B) [of 42 U.S.C. § 1997e(d)(1)] are read together, it is apparent that Congress intended that a plaintiff is entitled to fees incurred in enforcing a judgment entered upon proof that the plaintiff's constitutional rights *had been* violated.

*Webb*, 285 F.3d at 834 (emphasis added).

Defendants also contend that plaintiffs' work on the motion to convene a three-judge panel does "not arise from the 1995 Decision and Order in this case…" Docket 2438 at p. 3. Defendants do not provide any analysis of the underlying decision when making this assertion and do not state anywhere in their briefing why they believe the motion to convene a three-judge panel is unrelated to the 1995 Decision and Order.[2] The overcrowding motion is directly related to the original September 13, 1995 decision because it deals with the exact same aspects of a constitutionally adequate mental healthcare system set forth in that order. *See e.g.,* Docket 2325 at pp. 5-8; Docket 2378 at pp. 5-6, 10-11. This Court relied on the nexus between overcrowding and the September 13, 1995 order when it granted referral to a Three-Judge panel: "[T]he overcrowding crisis in the CDCR is preventing the delivery of constitutionally

---

[2] The September 13, 1995 *Coleman* Order set forth six general aspects of prison mental health systems that Courts evaluate to determine constitutionally adequate mental healthcare:

> In the context of this lawsuit, the objective component turns on whether the mental health care delivery system operated by defendants is so deficient that it deprives seriously mentally ill inmates of access to adequate mental health care. To analyze that question, the courts have focused on the presence or absence of six basic, essentially common sense, components of a minimally adequate prison mental health care delivery system. [Citations omitted]…**The six components are: (1) a systematic program for screening and evaluating inmates to identify those in need of mental health care; (2) a treatment program that involves more than segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number of trained mental health professionals; (4) maintenance of accurate, complete and confidential mental health treatment records; (5) administration of psychotropic medication only with appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and supervise inmates at risk for suicide. [citations omitted].**

*Coleman v. Wilson,* 912 F. Supp. 1282, 1298 and fn.10 (E.D. Cal. 1995) (emphasis added).

adequate mental health care to the plaintiff class and, therefore, that some form of limitation on the inmate population must be considered."  Docket 2320 at 13 (Order granting referral to the Three-Judge Panel).  The Three-Judge court is now poised to address the same six aspects of a constitutionally adequate mental healthcare system set forth, more than a decade ago, in this Court's September 13, 2005 Order.

## II.    Defendants' Refusal to Pay Reasonable Fees and Costs until Plaintiffs are Deemed "Prevailing Parties" Contradicts Controlling Law

Defendants state in their objection to the F&R that while they do not object to meeting and conferring about the disputed overcrowding fees and costs, "[d]efendants object to tendering payment in connection with the three-judge panel motion until Plaintiffs are successful on the merits."  Docket 2438 at p. 4.  This is another way of saying that defendants object to paying reasonable fees and costs until plaintiffs are deemed the prevailing party on this motion.  Once again, defendants cite inapposite cases in support of this argument, including *Dannenberg v. Valadez*, 338 F.3d 1070 (9th Cir. 2003) and *Hanrahan v. Hampton*, 446 U.S. 754 (1980).  Both of these cases involved parties seeking fees in the first instance and not, as is true here, in the enforcement stage of the litigation.  The plaintiffs in *Hanrahan* sought fees for a successful appeal of a directed verdict.  The Supreme Court held that a fee award was not permitted because the plaintiffs had not yet prevailed on the merits of any of their claims.  *See Hanrahan*, 446 U.S. at 758-759.  Here, by contrast, the plaintiff class prevailed on the merits at trial and secured injunctive relief that includes ongoing monitoring and enforcement.  The three-judge panel motion is part of the necessary enforcement of the remedy.  The necessity of such post-judgment activity has more than been confirmed by the order granting referral to the three-judge panel, with its findings that overcrowding is preventing the delivery of constitutionally adequate care.

The *Coleman* plaintiff class was deemed the "prevailing party" more than a decade ago.  The appropriate standard for attorneys' fees and costs at this post-judgment stage of the litigation is whether the fees were "directly and reasonably incurred in *enforcing* the *relief ordered* for the violation."  *Webb,* 285 F.3d at 833.

**III.    Defendants' Refused to Pay Reasonable Attorneys' Fees and Costs Regarding the Overcrowding Motion and Continue To Do So in Their Objection to the F&R**

Defendants object to the Magistrate Judge's finding in the F&R that "defendants took the position that no fees would be paid…"  Docket 2438 at p. 4.  Several lines later, however, defendants state once again that they will not pay reasonable fees and costs for the overcrowding motion:  "Defendants object to tendering payment in connection with the three-judge panel motion until Plaintiffs are successful on the merits."  Docket 2438 at p. 4.  Accordingly, the Court should reject defendants' objection to this factual finding.[3]

### CONCLUSION

Plaintiffs do not have to prove a new constitutional violation when seeking fees and cost in the post-judgment monitoring phase.  Moreover, plaintiffs' work on the overcrowding motion was directly and reasonably incurred enforcing the underlying orders in this case and is fully compensable.  The Court should reject defendants' arguments to the contrary and adopt Magistrate Judge Mould's F&R.

Dated:  October 2, 2007                    Respectfully submitted,

                                         /s/ Amy Whelan
                                         Amy Whelan
                                         Rosen, Bien & Galvan
                                         Attorneys for Plaintiffs

---

[3] It is also irrelevant what plaintiffs' counsel in the *Armstrong v. Schwarzenegger* lawsuit opted to do with respect to the overcrowding fees and costs in that case.  Because defendants misrepresent the *Armstrong* stipulation for the second time, however, plaintiffs feel compelled to correct the record once again.  Defendants represent to this Court that plaintiffs' counsel agreed in *Armstrong* to stay the overcrowding issue until after "the court ruled."  Docket 2438 at p. 3.  In fact, the *Armstrong* stipulation delays the overcrowding fees and costs from 2006 only until "calendar year 2007."  *See* Docket 2356-7.  Moreover, plaintiffs' counsel reserved the overcrowding time in *Armstrong* because there was significantly less in dispute and because it was the only category of work contested by defendants (unlike in this litigation).  Docket 2379 at ¶ 5.  Plaintiffs are not obligated to make the same agreement here and defendants' arguments to this effect are absurd.  Plaintiffs have repeatedly tried to resolve the disputes about the overcrowding fees and costs and defendants have rejected all such offers.