1  JONES & MAYER
   Martin J. Mayer (SBN 73890)
2  Michael R. Capizzi (SBN 35864)
   Kimberly Hall Barlow (SBN 149902)
3  Ivy M. Tsai (SBN 223168)
   3777 North Harbor Boulevard
4  Fullerton, California 92835
   (714) 446-1400; Fax (714) 446-1448
5  e-mail: mjm@jones-mayer.com
   e-mail: mrc@jones-mayer.com
6  e-mail: khb@jones-mayer.com
   e-mail: imt@jones-mayer.com
7
   Attorneys for Sheriff, Probation, Police Chief,
8  and Corrections Intervenor-Defendants

9  STEVEN S. KAUFHOLD (SBN 157195)
   CHAD A. STEGEMAN (SBN 225745)
10 AKIN GUMP STRAUSS HAUER & FELD LLP
   580 California, 15th Floor
11 San Francisco, CA 94104-1036
   (415) 765-9500; Fax (415) 765-9501
12 e-mail: skaufhold@akingump.com
   e-mail: cstegeman@akingump.com
13
   Attorneys for Republican Assembly and Senate Intervenors
14
   ROD PACHECO (SBN 112432)
15 WILLIAM C. HUGHES (SBN 155992)
   District Attorneys
16 County of Riverside
   4075 Main Street, First Floor
17 Riverside, CA 92501
   (951) 955-6620; Fax (951) 955-0190
18 e-mail: rodpacheco@co.riverside.ca.us
   e-mail: chughes@rivcoda.org
19
   Attorney for District Attorney Intervenors

20          IN THE UNITED STATES DISTRICT COURTS

21       FOR THE EASTERN DISTRICT OF CALIFORNIA

22      AND THE NORTHERN DISTRICT OF CALIFORNIA

23  UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

24    PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

25

26 | RALPH COLEMAN, et al.,              | Case No: CIV S-90-0520 LKK JFM P

27 |          Plaintiffs,                | **THREE-JUDGE COURT**

28 |     vs.

-1-

| | |
|---|---|
| 1  ARNOLD SCHWARZENEGGER, et al.,<br><br>2<br><br>3       Defendants.<br><br>4<br><br>5<br><br>6<br><br>7 | [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)]<br><br>**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION/ CLARIFICATION** |
| 8  MARCIANO PLATA, et al.,<br><br>9       Plaintiffs,<br><br>10      vs.<br><br>11  ARNOLD SCHWARZENEGGER, et al.,<br><br>12<br><br>13       Defendants. | Case No.:  C01-1351 TEH<br><br>**THREE-JUDGE COURT** |

14       TO THE COURTS, TO ALL PARTIES AND TO THEIR RESPECTIVE

15  COUNSELS OF RECORD:

16       The Sheriff, Probation, Police Chief, and Corrections Intervenors; Republican

17  Senator and Assembly Intervenors; and District Attorney Intervenors, (hereinafter

18  referred to as the "Intervenors") hereby jointly and severally submit their Motion to

19  Reconsider/Clarify the Order for Bifurcation of Proceedings entered by this Court on

20  October 10, 2007 (the "Order").  Specifically, these Intervenors request that the Court

21  allow Intervenors to participate fully in the litigation of both phases and, specifically, to

22  permit Intervenors to introduce evidence relating to Title 18 of the United States Codes,

23  Section 3626(a)(3)(E)(ii), to wit, whether, "no other relief [other than a prisoner release

24  order] will remedy the violation of the Federal right." 18 U.S.C. §3626(a)(3)(E)(ii)

25  (hereinafter referred to as "Section 3626(a)(3)(E)(ii)").

26       Accordingly, these Intervenors request that the Court reconsider or clarify its

27  Order with respect to Section 3626(a)(3)(E)(ii) to provide r: (1) that the Intervenors be

28  able to fully participate in all aspects of the litigation; and, if the Court maintains a

1   bifurcated trial (2) that Phase I of the bifurcated proceedings include only the issue of

2   whether crowding is the primary cause of the violation of the Federal right under Section

3   3626(a)(3)(E)(i), and that the remainder of the issues in this proceeding be resolved in

4   Phase II.  Bifurcation in this manner should permit Intervenors to fully participate in both

5   Phases of the litigation and ensure that they can both introduce evidence on issues

6   uniquely within their experience and that they can fully test Plaintiffs' evidence on the

7   threshold issues in this case.  Further, Intervenors request that the Court modify the order

8   to permit Intervenors to conduct discovery on issues relevant to the relationship between

9   overcrowding and the deprivations Plaintiffs assert, the remedy Plaintiffs seek,

10  alternatives to a release order, impacts and scope of a release order without waiting for

11  completion of Phase I.

12      Intervenors bring this motion pursuant to the Court's plenary power to review and

13  revise its interlocutory orders in the interests of justice. *See John Simmons Co. v. Grier*

14  *Bros. Co.*, 258 U.S. 82, 90-91, 42 S.Ct. 196, 199 (1922).  In accordance with the Order,

15  this Motion has not been set for hearing. *See* Order, p. 7, fn 7.

16      This Motion is based on the Motion and the Memorandum of Points and

17  Authorities attached hereto in support thereof, any notice of motion that may be filed in

18  support thereof, other documents, pleadings, and orders on file with the Court, and any

19  subsequent evidence or argument that may be submitted regarding the Motion in the

20  future.

21                                      Respectfully submitted,

22  DATED:    October 23, 2007          JONES & MAYER

23

24                                      By:  _____/s/_____
                                             Kimberly Hall Barlow
25                                           Ivy M. Tsai
                                             Attorneys for Sheriff, Probation,
26                                           Police Chief, and Corrections
                                             Intervenor- Defendants
27

28

1  DATED:  October 23, 2007       AKIN GUMP STRAUSS HAUER & FELD

2

3                                 By:_____/s/_____

                                      Steven S. Kaufhold

4                                      Chad A. Stegeman

                                      Attorneys for Republican Senator and

5                                      Assembly Intervenors

6  DATED:  October 23, 2007       COUNTY OF RIVERSIDE

7

8                                 By:_____/s/_____

                                      Rod Pacheco

9                                      William C. Hughes

                                      Attorney for District Attorney Intervenors

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................5

I.    INTRODUCTION ........................................................................5

II.   THE COURT'S AUTHORITY TO ENTERTAIN A MOTION TO
      RECONSIDER AN INTERLOCUTORY ORDER IS PLENARY ...............7

III.  THE COURT SHOULD NOT EXCLUDE THE INTERVENORS
      FROM ANY PART OF THE BIFURCATED PROCEEDINGS
      BECAUSE THE INTERVENORS HAVE A STATUTORY RIGHT
      TO PARTICIPATE IN ANY PROCEEDINGS "RELATING TO"
      A PRISONER RELEASE ORDER ............................................................8

      A.    No Statutory Basis Exists for Excluding Intervenors
            from Any Phase of the Proceedings or Discovery. ............................8

      B.    Neither the Hearing nor Discovery should be Bifurcated
            to Avoid Prejudice to the Intervenors. ...............................................11

IV.   IF THE COURT IS RESOLUTE REGARDING BIFURCATION,
      THE MANNER OF BIFURCATION SHOULD BE ALTERED
      TO AVOID PREJUDICING INTERVENORS' RIGHTS ...........................14

      A.    District Attorney Intervenor Alternative through SB 618 ............... 17

      B.    Additional Legislative Alternatives to a Prison Release Order ........19

      C.    Sheriffs' Alternatives to Prison Release Order .................................20

      D.    Probation Alternatives to Prison Release Order ...............................21

V.    CONCLUSION .........................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

Brown v. Demco, Inc., 792 F.2d 478 .................................................................. 10, 13

Golden Gate Audobon Social, Inc. v. U.S. Army Corps of Engineers, 732 F.Supp.
    1014 ............................................................................................................... 7

Guenther v. C.I.R., 939 F.2d 758 ..................................................................... 14

International Union of Mine, Mill & Smelter Workers v. Eagle-Picher Mining &
    Smelting Co., 325 U.S. 335, 65 S.Ct. 1166 .................................................. 10, 13

John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196 ............................ 3, 7

Linder Steel Erection Co., Inc., v. Wedemeyer, Cernik, Corrubia, Inc., 585
    F.Supp. 1530 ................................................................................................. 14

Marshall v. Jerrico, Inc., 446 U.S. 238, 100 S.Ct. 1610, [64 L.Ed.2d 182] ...................... 16

Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180 .................................................... 10

Ross v. Bernhard, 396 U.S. 531 .................................................................... 10, 13

Ruiz v. Estelle, 161 F.3d 814 ........................................................................ 10

Saxion v. Titan-C-Manufacturing, Inc., 86 F.3d 553 .......................................... 14

Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, [30 L.Ed.2d 686] ......... 16

United States v. California Mobile Home Park Mgt. Co., 107 F.3d 1374 .................. 10, 13

United States v. Thompson, 827 F.2d 1254 ...................................................... 14

## DOCKETED CASES

Bowers v. City of Philadelphia, No. 06-CV-3229, 2006 WL 2601604 (E.D. Pa.
    Sept. 8, 2006)(slip copy)(attached as Exhibit A) .......................................... 8, 9

## PRISON LITIGATION REFORM ACT

18 U.S.C. § 3626(3)(F) ................................................................................ 10

18 U.S.C. § 3626(a) .................................................................................... 7

18 U.S.C. § 3626(a)(1) ................................................................................................... 7, 22

18 U.S.C. § 3626(a)(3) ...................................................................................................... 5

18 U.S.C. § 3626(a)(3)(E)(i) ......................................................................................... 3, 6

18 U.S.C. § 3626(a)(3)(E)(ii) ........................................................................ 2, 6, 7, 15, 22

18 U.S.C. § 3626(a)(3)(F) ............................................................................................ 2, 8, 9

18 U.S.C. § 3626(g)(4) ................................................................................................... 13

## LEGISLATIVE HISTORY

Pub. L. 104-134, § 802, 1996 H.R. 3019 (April 26, 1996) ............................................... 10

Pub. L. 105-119, § 123(a)(1)(B)(ii)(I), 111 Stat. 2470 (Nov. 26, 1997) ............................ 1

Pub. L. 105-119, § 123(a)(1)(B)(ii)(I), 111 Stat. 2470 (Nov. 26, 1997) ......................... 10

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 24 ............................................................................................................................ 9, 13

Rule 60 ................................................................................................................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### INTRODUCTION

The Defendant Intervenors have a statutory right to participate in all proceedings relating to the issuance of a prisoner release order, whether the Court bifurcates the issues to be addressed or otherwise endeavors to streamline the proceedings. The bifurcation and exclusion of statutory intervenors runs contrary to Congress' intention that each predicate relating to the issuance of this extraordinary remedy be met and carefully considered with the participation of the people most affected by the Court's decision. Furthermore, the manner in which the Court has bifurcated the proceedings does not effectuate the Court's goal of efficiently moving this case forward. The issues and evidence overlap substantially and will result in extending overall proceedings should the Court reach Phase II.

On October 10, 2007, the Three-Judge Court issued an order bifurcating these proceedings and setting deadlines for Phase I, in which the Court will determine whether "(i) crowding is the primary cause of the violation of a Federal right" and "(ii) no other relief will remedy the violation of the Federal right" as required under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(3) ("PLRA"). The Order further provided that the Court will not conduct Phase II unless the Court determines that these conditions are met. In Phase II, the Court will determine whether a prisoner release order will be imposed, and the nature and terms of any such order in light of public safety and other concerns. The order limits the participation of the statutory intervenors[1] to Phase II, stating that the statutory intervenors only have an interest in Phase II, and also, to the extent that the statutory intervenors may have any interest in Phase I issues, such interest

---

[1] These statutory intervenors are identified in the Court's Order as five California counties; thirty-one Republican members of the California Assembly; thirteen Republican state senators; the County of Sonoma, its Sheriff/Coroner, District Attorney, and Chief Probation Officer (Sonoma County Intervenors); district attorneys from twenty California counties; and, collectively, sixty-seven sheriffs, county probation officers, city chief of corrections, and city police chiefs. Order at 2-3.

-5-

1    is adequately represented by the Defendants.

2    The Sheriff, Probation, Police Chief, and Corrections Intervenors; Republican

3    Senator and Assembly Intervenors; and District Attorney Intervenors, (collectively, the

4    "Intervenors") respectfully request that the Court reconsider and/or clarify its orders

5    regarding participation of these Intervenors and the manner of bifurcation of these

6    proceedings. The PLRA provides intervenors with the right to participate in any

7    proceedings related to the issuance of a prisoner release order, and intervenors enjoy full

8    party status following intervention under Rule 24 of the Federal Rules of Civil Procedure.

9    The Order of the Court essentially precludes any participation by the Intervenors in two

10    critical threshold issues related to such an order. Additionally, bifurcation of the

11    proceedings as presently ordered by the Court and limiting Intervenors to participation in

12    Phase II may lead to either inappropriate exclusion of relevant evidence or duplication of

13    evidence in separate phases. Precluding Intervenors from obtaining any discovery during

14    Phase I could lead to delay in Phase II if Plaintiffs somehow meet their burden of proof in

15    Phase I.    Thus, the interests of fairness and expediency support re-combining the issues

16    into one hearing for purposes of discovery and trial.

17    If the Court continues to see bifurcation as appropriate, the Intervenors request

18    that the Court reconsider how to bifurcate the issues. Intervenors believe they should not

19    only be able to offer evidence regarding the first prong of Section 3626(a)(3)(E), as to

20    whether prison overcrowding is the primary cause of the violation of a Federal right, but

21    to participate fully in the adversarial process to test the Plaintiffs' evidence on this issue.

22    18 U.S.C. § 3626(a)(3)(E)(i).  This issue could be bifurcated and heard in Phase I with

23    only a slightly longer discovery period – and perhaps a few more days of testimony, but

24    nonetheless at a much more rapid pace than would be permitted if all issues are tried

25    together.

26    Of course, Phase II would then include the issues which Intervenors primarily seek

27    to address relating to relief and remedies, which themselves have three components: (1)

28    whether other relief (other than a prisoner release order) will remedy the constitutional

1   violation (18 U.S.C. § 3626(a)(3)(E)(ii)); (2) what impacts a prisoner release order would

2   have on public safety (18 U.S.C. § 3626(a)(1)); and (3) what the scope of a prisoner

3   release order should be (18 U.S.C. § 3626(a)).  Because the Order precludes Intervenors

4   from presenting evidence on the first of these three issues, and excludes Intervenors from

5   discovery until after Phase I is completed, they request that the Court reconsider or

6   clarify the Order, as set forth below.  Due to the short time frame which the Court has

7   established for discovery, preparation and hearing of Phase I, Defendant Intervenors

8   respectfully request that the Court expedite consideration of this Motion for

9   Reconsideration and/or Clarification so that Intervenors' rights to participate fully in the

10  action, conduct discovery and prepare for trial are not prejudiced.

11                                                II.

12              THE COURT'S AUTHORITY TO ENTERTAIN A MOTION TO

13              RECONSIDER AN INTERLOCUTORY ORDER IS PLENARY

14          Intervenors bring their Motion to Reconsider and/or Clarify the Order pursuant to

15  this Court's plenary power to modify interlocutory orders in the interest of justice.  "It is

16  beyond question that courts have complete discretion to modify interim orders at any

17  time before final judgment for any appropriate reason." *Golden Gate Audobon Soc., Inc.*

18  *v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1023 (N.D.Cal.,1989).  The

19  requirements of Federal Rule of Civil Procedure 60 (which apply only to final orders) do

20  not limit or control the Courts' powers; the right to modify orders flows from the inherent

21  powers of the Court. *See John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82,  90-91 , 42

22  S. Ct. 196, 199 (1922).  "[i]f an interlocutory decree be involved, a rehearing may be

23  sought at any time before final decree, provided due diligence be employed and a

24  revision be otherwise consonant with equity." *Id.*

25          As the Order bifurcating proceedings in this case is an interlocutory order,

26  Intervenors submit that this Court has the authority to entertain this Motion to address the

27  legal and equitable claims Intervenors make, as set forth below.

28  ///

                                             -7-

III.

## THE COURT SHOULD NOT EXCLUDE THE INTERVENORS FROM ANY PART OF THE BIFURCATED PROCEEDINGS BECAUSE THE INTERVENORS HAVE A STATUTORY RIGHT TO PARTICIPATE IN ANY PROCEEDINGS "RELATING TO" A PRISONER RELEASE ORDER

**A. No Statutory Basis Exists for Excluding Intervenors from Any Phase of the Proceedings or Discovery**

The language of the Prison Litigation Reform Act ("PLRA") unambiguously allows the Intervenors to participate in all aspects of these proceedings. Specifically, it provides:

> Any State or local official including a legislator or unit of government whose jurisdiction or function includes the appropriation of funds for the construction, operation, or maintenance of prison facilities, or the prosecution or custody of persons who may be released from, or not admitted to, a prison as a result of a prisoner release order shall have standing to oppose the imposition or continuation in effect of such relief and to seek termination of such relief, <u>and shall have the right to intervene in any proceeding relating to such relief.</u>

18 U.S.C. § 3626(a)(3)(F) (emphasis added).

The plain language of the PLRA states that intervenors have a right to intervene "in any proceeding" relating to the issuance of a prisoner release order. "[T]he phrase 'any proceeding relating to' is expansive in nature." *Bowers v. City of Philadelphia*, No. 06-CV-3229, 2006 WL 2601604 at *7 (E.D. Pa. Sept. 8, 2006)(slip copy)(attached as Exhibit A).

In *Bowers*, the issue before the district court was whether the right to intervene under the PLRA became operative even before the court took any action that could be construed as a prisoner release order. The district attorney moved to intervene in the action in which plaintiffs, pre-trial detainees, sought various kinds of relief relating to

-8-

1  alleged severe overcrowding and constitutional violations.  The court concluded that the

2  legislative history of the PLRA and rules of statutory interpretation gave the district

3  attorney the right to intervene in the action even at such an early stage because plaintiffs'

4  allegations, if proven, would have a bearing on and could lead to the certification of a

5  three-judge court to provide relief in the form of a prisoner release order. *Id.*

6       The *Bowers* court noted that it was the intention of Congress to have this

7  subsection of the PLRA broadly interpreted and applied by the courts. *Id.* at *6.  This

8  legislative intent, along with the ordinary meaning of the phrase "relating to," led the

9  court to conclude that "proceedings relating to prisoner release orders include

10 proceedings that have bearing on or have some association with that form of relief." *Id.*

11 at *7.

12      *Bowers* dealt with a situation in which a three-judge court had not even been

13 convened for the purpose of determining whether a prisoner release order should be

14 issued, and yet, the court concluded that the district attorney had the right to participate in

15 the action before the district court, pursuant to 18 U.S.C. § 3626(a)(3)(F).  Here, it is

16 indisputable that the issues to be determined in Phase I have a bearing on whether this

17 Court ultimately decides to issue a prisoner release order.  This Court will determine in

18 Phase I whether the two conditions required for the issuance of a prisoner release order

19 under the PLRA have been met.  While, as the Court noted in its order, it has the

20 authority to place "appropriate conditions or restrictions responsive . . . to the

21 requirements of efficient conduct of the proceedings" on intervenors pursuant to Rule 24

22 of the Federal Rules of Civil Procedure, bifurcation is not appropriate here because the

23 PLRA gives statutory intervenors the right to participate in *any* proceedings relating to

24 the issuance of a prisoner release order.  Therefore, the Court may not bifurcate the issues

25 in the proceedings before it in a manner that prevents the statutory intervenors from fully

26 participating in every aspect of them.

27      Additionally, following intervention under Federal Rule of Civil Procedure 24, an

28 intervenor has full party status, including the right to engage in discovery, to participate

-9-

1  at trial, and to appeal the judgment.  *See Ross v. Bernhard,* 396 U.S. 531, 542 n.15

2  (1970); *International Union of Mine, Mill & Smelter Workers v. Eagle-Picher Mining &*

3  *Smelting Co.,* 325 U.S. 335, 338, 65 S. Ct. 1166, 1167-68 (1945); *United States v.*

4  *California Mobile Home Park Mgt. Co.,* 107 F.3d 1374, 1378 (9th Cir. 1997).  An

5  intervenor is generally treated as "an original party and has equal standing with the

6  original parties." *Brown v. Demco, Inc.,* 792 F.2d 478, 480 (5th Cir. 1986).  Conversely,

7  the intervenor may also be bound by an adverse judgment, i.e., res judicata and collateral

8  estoppel apply both ways.[2]  *See Martin v. Wilks,* 490 U.S. 755, 761-62, 109 S. Ct. 2180

9  (1989).  Just as it would be improper to bar a party from any part of the proceedings, it is

10  improper to exclude the Intervenors from full participation in Phase I.[3]

11        The Court did not notify any of the Intervenors or original parties in advance of

12  the hearing of September 24, 2007 that they should be prepared to address the propriety

13  of exclusion from any portion of the proceedings of any of the Intervenors.   Counsel for

14

15  [2] During the hearing on September 24, 2007, Judges Karlton and Reinhardt *both* mentioned that due to the intervention, the Intervenors had subjected themselves to orders
16  of the Court. *See,* Transcript, Sept. 24, 2007, at 41, 47 (hereafter "Transcript").
[3] The Republican Senator and Assembly Intervenors ("Legislator Intervenors") urge the
17  Court to reconsider the Phase I exclusion of the Legislator Intervenors in particular, in light of the clear language of the PLRA and congressional intent behind it. The legislative
18  history of the PLRA demonstrates a conscious decision by Congress to enable legislators in particular to participate fully in any hearings related to prison release orders. See Pub.
19  L. 104-134, § 802, 1996 H.R. 3019 (April 26, 1996) (granting intervention to state officials whose function includes appropriation of funds for construction of prison
20  facilities). Congress's intent to provide for legislative participation is highlighted in its November 26, 1997 amendment. See Pub. L. 105-119, § 123(a)(1)(B)(ii)(I), 111 Stat.
21  2470 (Nov. 26, 1997) (granting intervention to officials, and adding language to specify that any legislator whose function included appropriation of funds is entitled to
22  intervene). See also *Ruiz v. Estelle,* 161 F.3d 814 (5th Cir. 1998) (overturning a previous decision excluding two individual legislators from intervention, in light of Congress's
23  amendment to the PLRA, which added the language "including a legislator," to 18 U.S.C § 3626(3)(F). In *Ruiz,* the Fifth Circuit recognized that the 1997 amendment of the
24  PLRA conveyed Congress's unambiguous intent to permit individual legislators to intervene in proceedings related to prison release orders. *Ruiz* , 161 F.3d 814, 820-21;
25  see also Pub. L. 105-119, § 123(a)(1)(B)(ii)(I), 111 Stat. 2470 (Nov. 26, 1997) (adding the language, "including a legislator" to the original text of section 3626(3)(F) of the
26  PLRA, "Any state or local official [including a legislator] or unit of government...shall have the right to intervene in any proceeding relating to [a prison release order]").
27  Congress understood the importance of legislative participation in fashioning a prisoner release order and specifically amended the PLRA to correct a misinterpretation resulting
28  in the exclusion of legislators from the process. The Legislator Intervenors request the Court act in accordance with Congress' objectives.

-10-
MOTION FOR RECONSIDERATION/CLARIFICATION

1  the various statutory intervenors made arguments as to why they should be able to

2  participate in the proposed first phase (Transcript at 26-31, 72-73, 113).  But Counsel did

3  not address – and were not given an opportunity to address – any proposed wholesale

4  exclusion of Intervenors from the issues contemplated to be heard in Phase I by the

5  Court's order.   Nor did Intervenors reasonably expect that the Court would entirely

6  foreclose their participation on the critical questions at the threshold of this matter

7  regarding the cause of any constitutional violations and the alternatives to a release order.

8          Furthermore, the conclusion the Court reaches on the statutory intervenors' right

9  to participate in proceedings relating to a prisoner release order does not appear to be

10  consistent with the Plaintiffs' interpretation of law or actual intent in this case.  At one

11  point during the hearing on September 24, 2007, Plaintiffs' counsel disclosed that if the

12  Plaintiffs prevailed in the proposed first phase, that the Plaintiffs would seek some type

13  of preliminary injunctive relief pending the outcome of the second phase of the trial.

14  Transcript at 82-83.  Thus, because it is anticipated by Plaintiffs – and the Court has not

15  disputed the possibility – that injunctive relief could be sought or granted between the

16  two phases, the statutory intervenors must be granted their right to participate in the

17  entire action, and especially in the determination of whether or not other relief will

18  remedy the violation of the federal right.

19  **B.  Neither the Hearing nor Discovery should be Bifurcated to Avoid Prejudice to**

20      **the Intervenors**

21          The Intervenors continue to believe that bifurcation has the potential of resulting

22  in either improper exclusion of evidence or unnecessary repetition of evidence or both.

23  Even Judge Karlton at the hearing on September 24th recognized the intertwined nature of

24  the issues, saying:  "It seems to me that these questions are so -- with all due respect to

25  Mr. Specter -- are so intimately intertwined that it would be very difficult to develop a

26  discovery order which segregated the questions that could be asked in Part 1 and Part 2."

27  Transcript at 59.  The same thing is true for the hearing itself. How is the State to offer

28  evidence of unique County or City programs that may be available as alternatives to a

1  release order? Why should the Intervenors be precluded from cross-examining Plaintiffs'

2  witnesses regarding the alleged cause of the constitutional deprivations? Surely the

3  Intervenors who provide some of the very medical and mental health care services in

4  question at the local level will have available to them critical evidence and information

5  about the availability of such services to prisoners who might be subject to release. Even

6  if Intervenors can provide evidence on these issues to the State, there is no way for the

7  Intervenors to ensure that the evidence gets presented to the Court in Phase I. Some of

8  the alternative programs evidence might also be essential on the issue of local impacts. If

9  the same evidence is relevant to both issues, it ought to be introduced once, at the right

10  time, and not twice or not at all. Moreover, sitting at Counsel table without being able to

11  participate is mere observation, a role that could be accomplished without intervention.

12      With respect to discovery, it was disclosed at the September 24, 2007, hearing that

13  Plaintiffs were already seeking discovery from some of the statutory intervenors.[4]

14  Transcript at 55-57, 115. When counsel for one of the statutory intervenors sought a

15  statement of Plaintiffs' requested relief, Judge Karlton responded that such could be

16  determined by serving discovery on Plaintiffs. Transcript at 70-71. However, in the

17  Court's most-recent order, it has prohibited the statutory intervenors from participating in

18  discovery until some unknown time after the first phase of the trial is completed. Order

19  at 5. This inability to obtain timely, relevant discovery will prevent the statutory

20  intervenors from properly preparing their evidence. The bifurcation set forth by the

21  Court in its Order does not properly address the issues and valid needs identified by the

22  Court, and clearly prejudices the statutory intervenors in their need to marshal their

23  evidence in order to eventually present their case to this Court.

24      The Court's Order seems to suggest that the second phase of the trial is the only

25  aspect of the proceeding "relating to a prisoner release order," thereby not only excluding

26  intervenors from Phase I, but preventing them from conducting discovery until Phase I

27

28  [4] The day after this hearing, the Court issued an order allowing the previously propounded discovery to proceed.

1  has concluded.    The PLRA broadly defines a "prisoner release order" to include orders

2  that *explicitly* direct the release or nonadmission of prisoners as well as those that can

3  *indirectly* lead to prison population limits or releases.  *See*, 18 U.S.C. § 3626(g)(4)

4  (defining a "prisoner release order" to include "any order, temporary restraining order or

5  preliminary injunction that has the purpose or effect of reducing or limiting the prison

6  population, or that directs the release from or nonadmission of prisoners to a prison).

7  There can be little question that the threshold issues to be addressed under the PLRA

8  relate to a prisoner release order. *See Ruiz v. Estelle*, 161 F.3d 814, 821-22 (5th Cir.

9  1998).  If the issues are necessary part of the prisoner release order proceedings, then

10  discovery on those issues should not be foreclosed to any party.

11        The Court has suggested that allowing the statutory intervenors to participate in

12  the first phase as it is presently constituted "would cause undue delay and render the

13  proceedings unmanageable." Order at 5.  Yet, as noted in Section III A above, following

14  intervention under Federal Rule of Civil Procedure 24, an intervenor has full party status,

15  including the right to engage in discovery, to participate at trial, and to appeal the

16  judgment. *See  Ross v. Bernhard,* 396 U.S. at 542 n.15; *International Union of Mine,*

17  *Mill & Smelter Workers v. Eagle-Picher Mining & Smelting Co.,* 325 U.S. at 338, 65 S.

18  Ct. at 1167-68; *United States v. California Mobile Home Park Mgt. Co.*, 107 F.3d at

19  1378.  Under the terms of the current Order, Intervenors will be precluded from

20  conducting discovery or offering evidence regarding alternatives, and yet will be bound

21  by the Courts' determination of that issue.  This does not treat the Intervenors  as "an

22  original party" with "equal standing with the original parties." *Brown v. Demco, Inc.*,

23  792 F.2d at 480.    That the statutorily authorized intervention might become somewhat

24  challenging to manage seems to be implicit in the statutory scheme.  But using case

25  management rules to deprive Intervenors of the very rights the statute was designed to

26  provide makes mandatory intervention something of a Pyrrhic victory.

27        In addition to the foregoing, this Court seems to unfairly criticize the statutory

28  intervenors for objecting to ongoing ex parte communications between the Court and

-13-

1  parties. Order at 5 n.4. Yet, ex parte communications should only be tolerated in the

2  face of "compelling justification." *See Guenther v. C.I.R.,* 939 F.2d 758, 760-61 (9th Cir.

3  1991); *United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987). At no time

4  did the Court express that "compelling justification" existed for such communications;

5  Judge Karlton merely said such procedures would be "helpful in expediting proceedings

6  and removing procedural obstacles[.]" Transcript at 10. The same could be said of all ex

7  parte communications, to the detriment of the absent parties' rights.   Again, the

8  occasional delay inherent when a public entity is party to complex litigation of this nature

9  surely cannot serve as justification for exclusion of those very public entities or their

10  public officials from their important statutory role in litigating proposed prisoner release

11  orders.

12                                      IV.

13  IF THE COURT IS RESOLUTE REGARDING BIFURCATION, THE MANNER OF

14          BIFURCATION SHOULD BE ALTERED TO AVOID PREJUDICING

15                          INTERVENORS' RIGHTS

16          In order to protect the rights of the parties, the Court should, at a minimum,

17  reconsider the manner in which it is bifurcating the trial. Just as with the issue of

18  exclusion, the Court did not notify any of the Intervenors or original parties in advance of

19  the hearing of September 24, 2007 that they should be prepared to address the propriety a

20  bifurcation of the proceedings, or if appropriate, the manner of bifurcation. The Court

21  raised the issue of bifurcation for the first time at the September 24 hearing (Transcript at

22  43, 58). Both plaintiffs and at least one intervenor argued that the case should not be

23  bifurcated because the issues are intertwined (Transcript at 104, 111-112). The

24  Intervenors recognize that this Court has broad discretion to order bifurcation of the

25  issues in this case. *See Saxion v. Titan-C-Manufacturing, Inc.,* 86 F.3d 553, 556-57 (6th

26  Cir. 1996); *Linder Steel Erection Co., Inc., v. Wedemeyer, Cernik, Corrubia, Inc.,* 585 F.

27  Supp. 1530, 1534 (D.C. Md. 1984). However, the bifurcation contemplated by the Court

28  will deprive the statutory intervenors of their right to be fully involved in "proceedings

-14-

1    relating to a prisoner release order," and most importantly on the issue of whether relief

2    other than a prisoner release order will remedy the violation of the federal right. 18

3    U.S.C. § 3626(a)(3)(E)(ii).

4         If the Court maintains that bifurcation will streamline the proceedings, it should

5    reconsider its order and restrict the issue to be decided in Phase I of the trial to a

6    consideration solely of whether crowding is the primary cause of the violation of a

7    federal right.[5] 18 U.S.C. § 3626(a)(3)(E)(i). As noted above, Intervenors believe they

8    have an important role to play even as to that issue, and bifurcation in this manner would

9    not appreciably delay the proceedings.

10        Under this proposed bifurcation structure, Intervenors would be full participants in

11   Phase II, which would include both the determination of whether alternative forms of

12   relief are available, and the public safety and implementation concerns currently in Phase

13   II. All Intervenors have a demonstrated interest in participating in the determination of

14   alternative forms of relief. 18 U.S.C. § 3626(a)(3)(E)(ii). At the hearing on September

15   24, 2007, counsel for the District Attorney Intervenors asserted his position that impact

16   evidence of the type uniquely available to the District Attorneys was relevant to issues to

17   be decided at both phases of such a proposed bifurcated proceeding. *See,* Transcript at

18   26-27, 72-73. Counsel for the Sheriff, Police Chief, Probation and Correctional

19   Intervenors similarly asserted that her clients could provide numerous *alternatives* to a

20   prisoner release order. *See,* Transcript at 28-30, 113. Significantly, counsel for the

21   Legislator Intervenors also asserted that his clients could provide evidence regarding the

22   intent and implementation of AB 900, and other evidence relating to *alternatives* to a

23   prisoner release order. *See,* Transcript at 30-31.

24        The evidence that intervenors seek to present is clearly relevant to whether

25   alternative forms of relief would be adequate to address the rights violation. Though the

26

27   [5] Although a wholesale exclusion of Intervenors from this issue does not appear
     warranted by the statute or case law, the primary concern of Defendant Intervenors is that
28   the Court permit them to offer their expertise as the question of whether alternative relief
     would remedy the rights violations.

1  Court has asserted that to the extent the statutory intervenors have any interest in Phase I

2  issues, such interest is adequately represented by the Defendants, the expedited nature of

3  the trial will likely preclude Defendants from doing so. Order at 3. At the hearing on

4  September 24, the Plaintiffs sought *five* days to present their evidence, and the original

5  Defendants sought *twelve* days to properly present their evidence. *See*, Transcript at 104,

6  110. Considering the Court has now limited the first phase of the trial to a total of *three*

7  days, it would be unreasonable to expect the original Defendants to share their limited

8  time with the statutory intervenors; some of whom who have made their own multi-day

9  time estimates.[6] *See*, Transcript at 113. Moreover, since the Plaintiffs have never

10 clarified the relief they seek in this proceeding, the original Defendants' confusion over

11 how to present their case will further decrease the likelihood that the Defendants will

12 have excess time during which to present the statutory intervenors' evidence. Transcript,

13 at 93-94, 97-99. Accordingly, the interests of the statutory intervenors will not be

14 adequately protected by the original Defendants, because they cannot do so within this

15 Court's truncated time limits. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538

16 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972) (intervenor need only show that

17 representation *may be* inadequate, not that it *is* inadequate).

18      As the Court noted in its October 10, 2007 Order, Rule 42 of the Federal Rules of

19 Civil Procedure allows the Court to separate claims or bifurcate issues "in furtherance of

20 convenience or to avoid prejudice, or when separate trials will be conducive to expedition

21 and economy." Order, Oct. 10, 2007, at 4. Nonetheless, this Court may not adopt

22 procedures that tend to significantly favor one party over the other. *See Marshall v.*

23 *Jerrico, Inc.*, 446 U.S. 238, 242-43, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1990).

24      The Court's ordered bifurcation, in its present form, will prejudice the statutory

25

26 [6]  It should be safe to assume that little, if any, of Defendants' time estimate related to
    presentation of evidence on local impacts of a prisoner release order, since that evidence
27 is uniquely within the knowledge and experience of the local officials who have
    intervened here. Thus, Defendants' evidence on the issues of overcrowding as the cause
28 of a constitutional violation, and the State's alternatives to a prison release order will
    obviously be severely truncated.

1  intervenors in numerous ways, including preventing the Intervenors from presenting

2  timely evidence relevant to whether other relief will remedy the violation of the federal

3  right, and preventing the Intervenors from seeking discovery from the plaintiffs until

4  sometime after Phase I is concluded (while at the same time being subject to discovery

5  requests by the plaintiffs)[7].

6       Statutory intervenors desire to present not only impact evidence, but also evidence

7  of alternatives to a prisoner release order. Transcript at 26-31, 72-73, 113. For example,

8  statutory intervenors are uniquely able to address the intent and effect of Senate Bill 618,

9  which is being implemented in San Diego County. This is clearly an alternative to a

10  prisoner release order, and is therefore relevant to the issues to be decided in the current

11  first phase. Each of the Intervenor groups bringing this Motion feel they have important

12  evidence to offer on the critical issue of alternatives to a release order – i.e., whether

13  other remedies exist which will remedy the federal violations. A few of those

14  alternatives are summarized here:

15  **A. District Attorney Intervenor Alternative through SB 618**

16       In 2005, San Diego County District Attorney Bonnie Dumanis recognized that

17  California's high recidivism rate was causing not just public safety risks to the residents

18  of California, but a significant economic burden to our taxpayers. In an effort to stem

19  this unacceptable rate of recidivism, District Attorney Dumanis and the San Diego

20  Community Roundtable researched proven, successful prison rehabilitation and re-entry

21  programs throughout the country. As a result, DA Dumanis wrote and Senator Jackie

22  Speier sponsored Senate Bill 618, which authorizes counties to develop comprehensive

23  multi-agency plans to prepare non-violent offenders for re-entry into their communities

24

25  [7] The Order precludes the Intervenor Defendants from conducting any discovery during
Phase I, presumably including any effort to ascertain what specific relief Plaintiffs seek.

26  Plaintiffs, however, are entitled to conduct full discovery during Phase I, presumably
including propounding discovery to Defendant Intervenors – at least such discovery is not

27  prohibited in the Order. Order at 5, ll. 16-17. Thus, Intervenor Defendants are
potentially simultaneously required to provide to Plaintiffs evidence regarding release

28  alternatives while being foreclosed from preparing and presenting their cases on this issue
entirely.

1   upon their release on parole. On October 5, 2006, the bill was signed into law.

2           With the assistance and support of numerous community organizations and law

3   enforcement, the first participants were enrolled in this multi-agency re-entry program in

4   February of 2007. In SB 618, the rehabilitation process starts from the plea of guilty with

5   a stipulated prison sentence. Upon entry of the plea and voluntary agreement to

6   participate in the program, participants are screened for mental and dental health by the

7   Sheriff's Department. The Probation Department conducts vocational, literacy and

8   substance abuse assessments. A Classification Counselor from California Department of

9   Corrections and Rehabilitation (CDCR) begins the classification process, including

10   meeting with the participant while still in local custody and assigning a CDCR number,

11   to minimize the time spent in the Reception Center. Together with the Prison Case

12   Manager, Probation Officer, and Community Case Manager, and CDCR Classification

13   Officer, the participant develops a life plan based upon the assessments. At the time of

14   sentencing, the participant signs a contract agreeing to comply with the conditions of the

15   program, and is sentenced to complete their prison sentence at one of two local

16   correctional facilities.

17           While in prison, the participant works with his or her dedicated Prison Case

18   Manager to ensure compliance with the life plan, including participating in new

19   vocational programming, substance abuse treatment, education and prison industry. Six

20   months before release on parole, the participant's Community Case Manager begins

21   working with the participant to arrange treatment, housing, vocational training, education,

22   employment, parenting classes, obtaining a driver's license or visitation rights, and even

23   tattoo removal. The Community Case Manager will meet the participant at the door of

24   the prison upon release on parole, and for the next eighteen months will work with the

25   parolee and Parole Agent to ensure the participant's successful re-entry into San Diego.

26   The services will be provided even after discharge from parole.

27           To date, there are 141 participants enrolled in the program. Each week, six new

28   participants are added. There are consistently more applicants for the program than

1  spaces available. San Diego County's first participants will be released from prison in

2  November, and the Community Case Managers have already begun working with them.

3  Some of San Diego County's participants have already obtained G.E.D.'s and are

4  enrolling in correspondence school to obtain college degrees, and the majority of the

5  participants are enrolled in substance abuse treatment. The two prisons involved in the

6  program have started implementing new Vocational Programming that will be available

7  to SB 618 participants, as well as other inmates, including Welding, Cabling and

8  Cosmetology.

9        The success of the program will be measured and evaluated for three years by an

10  independent research agency. In San Diego, the ultimate goal is to have 1,500 inmates

11  participating in the SB 618 program at any one time. The San Diego model can be

12  replicated in counties throughout California. By assisting participants throughout their

13  time in prison and for eighteen months after release, the rate of recidivism and the

14  concomitant prison population and the costs of victimization and incarceration will be

15  decreased.

16        **B. Additional Legislative Alternatives to a Prison Release Order**

17        In addition to AB 618, the Legislator Intervenors are uniquely capable of

18  providing evidence to the Court regarding the intent, status, and effect of Assembly Bill

19  900, which is being implemented throughout California to address issues of prison

20  overcrowding. AB 900 authorized the issuance of $7.4 billion in lease revenue bonds to

21  support the construction of 53,000 new beds at existing prisons, re-entry center beds,

22  health care facilities, and local jail beds. AB 900 passed both houses with bipartisan

23  support, and was signed into law on May 3, 2007. As members of the body responsible

24  for appropriating funds and drafting legislation concerning prison construction, remedial

25  programs, and parole and sentencing reform, the Legislator Intervenors are particularly

26  well-suited to participate in Phase I proceedings on alternative relief.

27        The interests of the Legislator Intervenors in this regard are not represented by

28  Defendants, because the Legislators, unlike Defendants, are equipped to address the

-19-

1   challenges of implementing AB 900 from within the State Assembly and Senate. The

2   Receiver's Sixth Quarterly Report highlights the difficulties of aligning the goals of AB

3   900 with the goals of this Court. In particular, the Receiver mentions the "ever

4   thickening bureaucratic web" that hinders efforts to "effectuate change within the context

5   of State law." Receiver's Sixth Quarterly Report, Doc. 866, Sept. 25, 2007. The

6   Receiver's frustration with the challenge of effectuating change in State law makes it

7   clear that the Legislator Intervenors should be participating in every way possible, in

8   providing insight regarding AB 900 and how its components offer viable alternatives to a

9   prisoner release order, as well as the numerous other remedial programs under the

10  supervision of the Receiver.

11          In addition to AB900, Legislator Intervenors have policymaking and budgetary

12  roles in the parole and sentencing reform Plaintiffs seek to effectuate, as well as other

13  remedial programs.

14          **C. Sheriffs' Alternatives to Prison Release Order**

15          The Sheriff Intervenors are also uniquely capable of presenting as an alternative to

16  a prison release order, information about new and innovative community re-entry

17  programs. The creation of secure re-entry facilities in local communities where inmates

18  will return upon release is a key component of AB 900. These facilities are designed to

19  improve public safety by reducing recidivism. AB 900 will provide for 16,000 new beds

20  in community-based re-entry centers, each of which will house between 50-500 inmates

21  for their last 12-24 months in custody. These facilities will provide intensive

22  rehabilitation, and offer every offender job training, mental health and substance abuse

23  counseling, housing placement, educational assistance, and other services in the critical

24  few months just prior to their release.

25          Nearly a dozen Sheriff Intervenors have already signed cooperative agreements

26  with CDCR to discuss and implement the building of re-entry facilities in their counties.

27  The majority of these have identified the location and size of these re-entry facilities, and

28  how many beds each can hold (the range being from 240 to 500, with half of the planned

1   re-entry facilities being able to accommodate 500 beds). Multiple re-entry facilities are

2   being considered in those counties that have the ability to accommodate them. At least

3   one Sheriff Intervenor has confirmed that he is on the fast-track with CDCR and is

4   already in the environmental phase of developing a re-entry facility. A number of other

5   Sheriff Intervenors are in discussions with CDCR to build re-entry facilities, with many

6   more anticipated to follow.

7   **D. Probation Alternatives to Prison Release Order**

8   As noted at the September 24, 2007 hearing, the Chief Probation Officers also

9   have significant evidence to introduce regarding alternatives. The Chief Probation

10  Officers of California are presently working on – and are about to publish – a plan to

11  provide enhanced probation services for 18 to 25 year olds. In California approximately

12  30% of the existing 300,000 probationers are age 18-25. Targeting 18-25 year old

13  offenders for enhanced probation services, similar to past efforts with juvenile offenders,

14  can result in a significant reduction in recidivism in this group, contributing to a

15  significant and long-term decline in prison population. 18 to 25 year olds lack the

16  maturity and life experience of other, older probationers. Though legally adults, their

17  brains are still developing, and they generally have greater intensity of emotion, less

18  impulse control and engage in higher levels of risk taking behavior as a result.

19  Additionally, young adult offenders face many of the same barriers as their juvenile

20  counterparts and yet often do not have the same level of support in their efforts to

21  complete their grant of probation successfully.

22  Because of their young age these probationers have not had the opportunity to

23  commit crimes for decades or in most cases to establish a lengthy alcohol and drug use

24  history. Although some may have a prior juvenile record, by and large they do not have

25  as extensive a criminal history as their older adult counterparts, simply because they are

26  younger. This may result in an easier transition to pro-social behavior with the

27  appropriate skill building and support since there has been less time for the negative

28  behaviors to become ingrained. Similarly, these individuals often have a shorter drug use

-21-

1    history.  A greater number of these offenders may be diagnosed with substance abuse as

2    opposed to chemical dependency, and therefore they may be more responsive to

3    (developmentally appropriate) treatment.  Additionally, younger adults have had less time

4    to suppress pre-existing trauma, and may be more amenable to counseling to resolve

5    these issues.

6         The first step in implementing programs targeted at this vulnerable group has

7    already occurred.  The plan has been prepared and is about to be published.  Counties will

8    be able to start programs designed after this model.  While it may take new or shifted

9    resources to fully implement, the promise of this alternative is obvious and huge.  The

10   benefits of reducing the re-offense rate in this group clearly outweigh any combination of

11   releasing prisoners or imposing population caps.

12        The statutory intervenors recognize the Court's discretion in bifurcating the

13   proceedings based on due consideration for judicial economy.  The statutory intervenors

14   do not fully oppose bifurcation with the issue to be considered in the first phase limited to

15   whether crowding is the primary cause of the violation of the federal right.  18 U.S.C. §

16   3626(a)(3)(E)(i).  However, as the parties asserted at the September 24, 2007, hearing,

17   and as set forth above, the second phase issues regarding the scope or description of any

18   eventual prisoner release order are simply too intertwined with the second prong to be

19   addressed in the first phase (*see* Transcript at 104, 111-112) -- whether no other relief

20   will remedy the violation of the federal right.  18 U.S.C. § 3626(a)(3)(E)(ii).

21        The Court should reconsider its Order and, if bifurcation is to occur, limit the first

22   phase of the trial to consideration *solely* of whether crowding is the primary cause of the

23   violation of the federal right.  This simple change suggested by the statutory intervenors

24   would in no way prejudice the parties, would not require any discovery or trial dates to be

25   extended, and would permit the statutory intervenors their right to fully participate in all

26   proceedings relating to a prisoner release order.  *See* 18 U.S.C. § 3626(a)(1).  The "right"

27   of intervention is lost if the intervenors are precluded from fully participating in

28

1  proceedings that will ultimately affect their rights and ability to oppose or defend against

2  as-yet undefined relief sought by the plaintiffs.

3                                             V.

4                                      CONCLUSION

5        For all the foregoing reasons, the Sheriff, Probation, Police Chief, and Corrections

6  Intervenors; Republican Assembly and Senate Intervenors; and District Attorney

7  Intervenors respectfully request that the Three-Judge Court reconsider the exclusion of

8  the Intervenors in Phase I of the bifurcated proceedings, and alter the bifurcation to

9  consider in Phase I only the issue of whether prison crowding is the cause of the alleged

10 constitutional violations.  Furthermore, the Intervenors request reconsideration to the

11 extent the Court precludes the Intervenors from engaging in discovery during Phase I in

12 order to prevent delay, or, in the alternative, to clarify its order of October 10, 2007.

13                              Respectfully submitted,

14 DATED:    October 23, 2007       JONES & MAYER

16                              By: _____/s/_____
17                                  Kimberly Hall Barlow
                                    Ivy M. Tsai
18                                  Attorneys for Sheriff, Probation,
                                    Police Chief, and Corrections
19                                  Intervenor- Defendants

20 DATED:  October 23, 2007         AKIN GUMP STRAUSS HAUER & FELD

22                              By:_____/s/_____
                                    Steven S. Kaufhold
23                                  Chad A. Stegeman
                                    Attorneys for Republican Senator and
                                    Assembly Intervenors

24
25 DATED:  October 23, 2007         COUNTY OF RIVERSIDE

27                              By:_____/s/_____
                                    Rod Pacheco
28                                  William C. Hughes
                                    Attorney for District Attorney Intervenors

                              -23-

**PROOF OF SERVICE**
**(§ 1013a, 2015.5 C.C.P.)**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the aforesaid county; I am over the age of eighteen years and not a party to the within entitled action; my business address is: 3777 N. Harbor Boulevard, Fullerton, California 92835.

On **October 23, 2007**, I served the within **NOTICE OF MOTION AND MOTION FOR RECONSIDERATION/CLARIFICATION**, on the interested parties in said action by placing [X] a true and correct copy or [ ] the delivered by one or more of the means set forth below:

Honorable Thelton E. Henderson
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

Honorable Stephen Reinhardt
United States Courthouse
312 North Spring Street, Suite 1747
Los Angeles, CA 90012

Honorable Lawrence K. Karlton
Robert T. Matsui United States Courthouse
501 I Street
Sacramento, CA 95814

[ ]    [*Via Mail*]   By depositing said envelope with postage thereon fully prepaid in the United States mail at La Habra, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Fullerton, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit of mailing in affidavit.

[ ]    [*Personal Delivery*]   I cause the above referenced document(s) to be delivered to the addressee set forth above.

[X]    [*Overnight Courier*]   I caused the above referenced document(s) to be delivered to an overnight delivery service, for delivery to the addressees.

[X]    [*Federal*]   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **October 23, 2007**, at Fullerton, California.

_____
RITA J. ALGER