# EXHIBIT A

Sept. 24 Hearing Transcript

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE
THE HONORABLE THELTON E. HENDERSON
THE HONORABLE LAWRENCE KARLTON
THE HONORABLE STEPHEN REINHARDT

| | |
|---|---|
| MARCIANO PLATA, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. C 01-1351 TEH |
| ) | |
| SCHWARZENEGGER, ET AL., ) | |
| ) | |
| Defendants. ) | |
| RALPH COLEMAN, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. CIV S90-0520 LKK JFM P |
| ) | |
| SCHWARZENEGGER, ET AL., ) | |
| ) | |
| Defendants. ) | |

San Francisco, California
Monday, September 24, 2007
TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:          Prison Law Office
                         General Delivery
                         San Quentin, CA  94964-0001
                    BY:  DONALD SPECTER, ESQ.
                         STEVEN FAMA, ESQ.
                         ALISON HARDY, ATTORNEY
                         and
                         Rosen, Bien & Galvan
                         315 Montgomery Street
                         Tenth Floor
                         San Francisco, California  94104
                    BY:  MICHAEL BIEN, ESQ.
                         JANE KAHN, ATTORNEY
                         LORI RIFKIN, ATTORNEY
(Appearances continued, next page)

Appearances, Continued:

Page 1

Sept. 24 Hearing Transcript

20  matter between themselves instead of a court settling it, this
21  is probably that case.
22          Thanks. Oh, any questions?
23          JUDGE HENDERSON: No. Thank you, Mr. Yank.
24          Okay, the Intervenors. And remember the way we are
25  approaching this. Right now we want to know what a reasonable

                                                            70

1   discovery cutoff date would be and what deadlines we should set
2   in relation to expert disclosures and discovery.
3           MR. HUGHES: Yes, Your Honor. Again, it is Charles
4   Hughes, Riverside County DA's office, on behalf of the DA
5   Intervenors.
6           We do come to this litigation new, or newly, within
7   the last few weeks. So we are not in the same procedural
8   position that either the Plaintiffs or the defense are. We do
9   not have the full benefit of the history of this litigation, and
10  having participated in it.
11          But first and foremost, before we can adequately begin
12  to marshal our own experts, as Judge Karlton pointed out, we
13  need to know what's being requested, without a prayer for
14  relief, without some information from the Plaintiffs that this
15  is what we are seeking, we, on behalf of the District Attorney
16  Intervenors, will be shooting blindly, so to speak, thinking up
17  every possible order that the Plaintiffs might seek.
18          JUDGE KARLTON: But the rules provide that you can ask
19  the other side interrogatories, asking what their position is,
20  and what it is that they seek. You know -- this is not -- this
21  is not an abstract question, this is simply, there is a simple
22  way of dealing with that --
23          MR. HUGHES: Yes, I understand.

Sept. 24 Hearing Transcript

6   actually hold 175,000, or something.

7   But those are just working numbers because we are
8   going to find, if we find it, that some number in between that
9   is the number that tips the scale and causes the mental-health
10  concerns, make them inadequate because of overcrowding. And
11  that, that's a number we have got to know, through some process,
12  before we can develop plans to reach that number.

13  MR. BIEN: First, I think that one of the things I
14  wanted to raise is that Special Master Keating and the Receiver,
15  Mr. Sillen, are in these prisons and are evaluating them,
16  looking at their staffing, looking at the -- looking at the
17  programs, making recommendations. And I think they have
18  something very important to offer in this proceeding.

19  And I think one of the things that this Court should
20  consider is how best they can contribute to this analysis.

21  For example, we know that the Receiver, right now, is
22  engaged in an effort in coordination with the Coleman team, to
23  look at certain prisons and evaluate treatment-space staffing on
24  an emergency basis, what can you do on in the next year to help
25  some things out. That same kind of analysis could be used to

81

1   assist the Court in determining what the proper number is.

2   But, Your Honor, I guess one of the things I would
3   say, in any kind of remedy like this, you can, say, start out
4   with X, let's say we say, you know, the design capacity. I just
5   looked today, before I came to court, at how the prison
6   population was doing. We are at 200 percent, 200 percent design
7   capacity. There are prisons that were over 250 percent. There
8   are programs in prisons listed on the website, that are
9   over 300 percent. There is one over 500 percent, which I'm
10  hoping was a mistake.

Page 69

Sept. 24 Hearing Transcript

11    But if we said to the Defendants, "We don't know what
12 to do," they say "How about bring it back to halfway in between
13 and then see, are you able to deliver constitutional care?"
14    I don't think you have to come up with the ultimate
15 number now, and I don't think there is an expert in the world
16 that can tell you, if you get to this number in six months, it
17 is going to be perfect.  I think it's something where you order
18 the Defendants to begin a process of limiting the population,
19 and --
20    JUDGE REINHARDT:  Well, it could be a ratio of that
21 number.
22    MR. BIEN:  It could be a ratio based on the ratio of
23 clinical staff to patients, but there is also a treatment-space
24 problem.
25    JUDGE KARLTON:  Mr. Bien, this is different than the

82

1 Coleman case.  In the Coleman case, we say to the State, "Come
2 up with a plan."
3    They come up with a plan, you voice your objections,
4 the special master meets with the both of you and works out a
5 plan.  There's no special master yet, or maybe ever, in this
6 case.  And, the working out has never been -- I mean, I must
7 say, both you and Ms. Tillman have been reasonable people, but
8 this is a much more complex issue, it isn't -- it does not sound
9 to me like an issue which can be resolved by good faith, people
10 sitting down.
11    I agree with Mr. Yank, we certainly ought to try;
12 somebody ought to think about how to make that happen.
13    But, the point that Judge Reinhardt was making --
14 excuse me -- was we could have a process that never ends, with

Page 70

Sept. 24 Hearing Transcript

15  the State proposing things, your objecting to it, and we will
16  never get anywhere.
17      MR. BIEN:  One of the things we are going to suggest
18  is that -- is that if you get to the point of ordering a finding
19  that it is overcrowded, and that there is no other alternative,
20  that there be some preliminary relief ordered.  Say, okay, start
21  the process.  You must begin to reduce the population, and then
22  while you are reducing the population, you know, you make a
23  suggestion about how far you have to go.
24      Again, I think they need to be motivated.  We're not
25  going to -- you know, this is a serious remedy, and we can't

83

1  just pick a number and say, "You must bring it down to that
2  number."
3      I think it's going to have to be -- they can't snap
4  their fingers and bring the population down.  We are not
5  suggesting, we have never suggested that there be a massive
6  release.  That's not the remedy that we are proposing.  It's
7  never been the remedy.
8      We are proposing it be a process by which the
9  population can be managed in a safe and effective way.  It's
10 never going to be, you know, in 30 days, reduce the population
11 by a large number.  It's going to be begin a process to reduce
12 the population.
13      We believe that our discovery of Defendants, we have
14 asked them what measures they have planned, to reduce the
15 population.  They have expert panels that have been working with
16 them on these very questions.  They have a series of proposals
17 that are ready, willing, and able to be implemented, if they had
18 the will to do it.  They do not have the will to do it.
19      We are hoping that, if this Court makes the decision

Page 71

Sept. 24 Hearing Transcript

20  that crowding is the primary cause, and there is no other remedy
21  necessary, that the will will be there, and that they will make
22  their own choices and the population will begin to be brought
23  under control.
24         But I think we are leaping ahead, to say that we need
25  to suggest the exact number today. We have proven up papers,

84

1   what Governor Deukmeijian suggested, we have put in what various
2   other experts -- other expert blue ribbon panels have suggested.
3   These are all State panels and commissions that have looked at
4   these issues.
5         There are lots of ideas out there, and we will have
6   our experts, we will offer suggestions, but I think the first
7   hump we have to get over is that, is that there is a -- a
8   need --
9         JUDGE REINHARDT: When you say you have -- there are
10  these suggestions by State committees or commissions, studies,
11  have you suggested that any of these would be satisfactory to
12  the State? Which ones would resolve your concerns at the
13  moment?
14        MR. BIEN: Have I -- have I taken a position that one
15  of them is adequate or --
16        JUDGE REINHARDT: One or all or a combination would
17  resolve the problem, at least for the immediate term?
18        MR. BIEN: I have not, not said that a particular one
19  would solve the problem. But I think that I --
20        JUDGE REINHARDT: Well, you said that they have these
21  suggestions and they're not doing anything. Would you be able
22  to say to them, "Here are these proposals by these commissions,
23  this would be something that would -- we could try and see if it

Page 72

Sept. 24 Hearing Transcript

6  MR. MELLO: The answer is yes, and we would say a
7  November or December date for another conference.
8       And then the last thing, I know it wasn't supposed to
9  be -- is the discovery order going to address the issue of the
10 prematurely propounded?
11      JUDGE HENDERSON: Uh-huh.
12      JUDGE KARLTON: What makes you think it is premature?
13      MR. MELLO: Because there was an order from the Court
14 that indicated we were going to be discussing discovery, and it
15 was propounded before there was a ruling whether we would
16 actually have discovery.
17      MS. BARLOW: I have nothing else.
18      JUDGE HENDERSON: Okay. Thank you very much. This
19 has been helpful and exhausting.
20      Court is adjourned.
21              (Proceedings concluded at 4:35 p.m.)
22
23
24
25

CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in Case No. C 01-1351, Plata, et al. v. Schwarzenegger, et al., and S90-0520, Coleman, et al. v. Schwarzenegger, et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a true record

Sept. 24 Hearing Transcript
of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

---

Belle Ball, CSR 8785, RMR, CRR

Tuesday, October 2, 2007

=