PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants | No.: Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' NOTICE OF DEFENDANTS' NON-COMPLIANCE WITH JUNE 1, 2007 ORDER [DOCKET 2255] AND REQUEST FOR FURTHER REMEDIAL RELIEF** |

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| ASU | Administrative Segregation Unit |
| CCCMS | Correctional Clinical Case Management System. CCCMS is the name for the largest CDCR mental health program, which currently houses 28,000 prisoners with mental illness who live in general population housing units alongside non-mentally ill prisoners. CCCMS prisoners are generally given medication management and a meeting with their case manager at least every 90 days. A few also participate in groups. CCCMS prisoners housed in administrative segregation units are provided with weekly case manager contacts and daily psych tech rounds. CCCMS prisoners housed in security housing units are provided with monthly case manager contacts and psych tech rounds once a week. |
| CDCR | California Department of Corrections and Rehabilitation. |
| DOF | Department of Finance. |
| EOP | Enhanced Outpatient Program. EOP programs are sheltered treatment programs that house severely mentally ill inmates. There are currently approximately 4,100 EOP inmates. Because these inmates are unable to function in a general population setting, they live in segregated housing units. They are given 10 hours each week of therapy or other "structured therapeutic activities." EOP inmates meet weekly with their case managers in either a one-on-one session or in a group setting. |
| PSU | Psychiatric Services Unit. There are psychiatric treatment programs providing Enhanced Outpatient Program level of care to inmates with a Security Housing Unit term. There are currently PSUs located at Pelican Bay State Prison, CSP-Sacramento and Valley State Prison for Women. |
| PWB | California State Public Works Board |
| SM | *Coleman* Special Master |
| SMY | Small Management Yard. These are prefabricated fence enclosures or cages, with locks and doors. Prisoners housed in segregated housing units are provided yard in these cages. |
| SHU | Security Housing Unit. This is a segregated high-security housing unit for inmates who have committed serious infractions while in prison or who have been "validated" by the CDCR as belonging to a gang. There are male SHU units at Pelican Bay State Prison (from which all inmates with serious psychiatric conditions are excluded), Corcoran State Prison, and California Correctional Institute. There is a SHU for women at Valley State Prison for Women. |

### I. INTRODUCTION

Defendants have filed a Plan to provide small management yards for prisoners in segregation that is in open and direct violation of this Court's Orders. Not only will defendants' plan deprive several thousand prisoners in segregated units with access to yard, but it fails to even consider interim measures for modest relief for these harsh conditions recommended by the Special Master. As a result, isolation and seclusion of these men and women will continue and suffering and even suicide will result.

On May 9, 2006, the Special Master filed his Report on Suicides Completed in the California Department of Corrections in Calendar Year 2004 [Docket 1806], which included a recommendation to the Court that defendants be required to develop a plan to address the escalating rate of suicides in administrative segregation. Docket 1806 at 12-13. The Court adopted the Special Master's recommendation in its June 7, 2006 Order and ordered that "defendants shall develop a plan for dealing with the escalating percentage of suicides occurring in administrative segregation units…The plan shall include, as appropriate, a budget and implementation schedule for any policy and procedure changes, staffing or budget augmentation, and if necessary, include a mechanism for obtaining mid-year funding on or before September 30, 2006." Docket 1830 at ¶¶1,2.

Defendants submitted their suicide plan on October 2, 2006. Docket 1990. In their Plan, they noted that a "recent review reflects the Department's total Small Management Yard need at 1,342 yards, with 921 being constructed and/or funded as of Fiscal Year 2006/2007. This leaves 441 Small Management Yards that need to be funded and constructed in future years." Docket 1990 at 9. In the Special Master's Supplemental Report and Recommendations on Defendants' Plan to Prevent Suicides in Administrative Segregation ("SM Supplemental Report") [Docket 2210] filed 5/14/07, he noted that since the time that defendants filed their Suicide Report, they had reported to the Special Master an increased shortfall of small management yards for a "total of 1,480 small management yards" needed to meet Title 15 requirements for out-of-cell time. Docket 2210 at 3. The Special Master noted that "*there is still a significant shortfall of small management yards which will not be remedied*

*for at least five years. That is simply too late. Because of the swelling population, the need may be even greater in the future.*" Docket 2210 at 3-4. In his Supplemental Report, the Special Master recommended:

> Within 90 days defendants shall be required to submit a plan that will satisfy their need for sufficient small management yards to meet Title 15 exercise requirements for inmates in administrative segregation. This plan should call for funding and completion of construction of the remaining yards by the end of fiscal year 2008/2009. The plan should also include provisions for better utilization of the existing small management yards and coordination with available staff to maximize yard usage. Docket 2210 at 10.

On May 29, 2007, defendants' filed objections to the SM Supplemental Report. Defendants' Responses and Objections to the Special Master Keating's Supplemental Report on Defendants' Plan to Prevent Suicides in Administrative Segregation. [Docket 2250]. Defendants objected to the Special Master's recommended timeline for completion of the project as well as to the number of small management yards required to be built. Docket 2250 at 2-3. In the Court's June 1, 2007 Order, defendants' objections were considered and rejected. Docket 2255 at 3. With respect to defendants' objection to the finding that the use of inmate day labor might delay the completion of the small management yards, the Court denied their objection without prejudice and noted that defendants may present additional information and evidence to the Special Master concerning the use of inmate labor in the construction of small management yards and the Special Master may tender additional findings to the Court. *Id.* With respect to defendants' objection to the timeframe for completion of the small management yards, the Court found:

> "At present, defendants have only 719 of the 1,480 small management yards required to give necessary out of cell exercise time to inmates in administrative segregation. (Report, at 3). Eighty-six additional yards are under construction, and defendants are presently seeking legislative authority to fund 179 additional yards in fiscal year 2007/08. (Defendants' Response, at 3.) If that funding is approved, defendants then planned to seek funding for an additional 179 yards for fiscal year 2008/09. (*Id*.) They do not plan to complete building all the necessary yards until 2012. (Report, at 3.) As the special master found, 2012 is simply too late." Defendants' objection will be overruled." Docket 2255 at 2-3.

Defendants did not appeal the court's June 1, 2007 Order.

On the eve that their revised plan was due – September 1, 2007 – defendants filed an *ex parte* motion seeking a 45-day extension of time to comply with this Court's order to submit a plan to build sufficient small management yards to comply with Title 15 exercise requirements in administrative segregation units by the end of fiscal year 2008/2009. [Docket 2393] In their request for an extension, defendants set forth a plan to construct 262 additional small management yards, **not** the number of small management yards ordered by this Court. Docket 2393 at 2; Declaration of Deborah Hysen in Support of Defendants' Ex Parte Request for Extension of Time re: Small Management Yards, ¶5,6. Plaintiffs filed an opposition to defendants' *ex parte* request for an extension of time because defendants were not only seeking an extension of time for filing their plan, but a substantial modification in the substantive requirement of this Court's Order to build sufficient small management yards to provide exercise for prisoners. [Docket 2395]. On September 14, 2007, this Court granted the extension but rejected defendants' attempt to modify the Order by reducing the number of small management yards to be constructed:

> "In the June 1, 2007 order, this court adopted the finding of the special master that defendants need a total of 1,480 small exercise yards in administrative segregation and that, at present, they only have 719 such yards…Absent clear evidence to the contrary, the court presumes and anticipates that defendants intend to comply in full with the June 1, 2007 order and to submit planning for all 496 small exercise yards for which planning is still required. On that basis, and good cause appearing, defendants' request for an extension of time will be granted…Defendants are granted forty-five days from the date of this order in which to submit a plan for sufficient small exercise yards as required by this court's June 1, 2007 order. [Docket 2418 at 1-2].

## II. DEFENDANTS PLAN FAILS TO COMPLY WITH THE COURT'S CLEAR MANDATE REGARDING SMALL MANAGEMENT YARDS

### A. Defendants' Plan Fails To Address The Required Number Of Yards

On October 29, 2007, Defendants filed their Response to Court Order re Small Management Yard ("Def's Plan") [Docket 2492], which fails to comply with this Court's

-3-

Orders in several respects. First, defendants refuse to build the full number of small management yards required by the Court. Second, defendants claim that they cannot comply with the Court's timeline for completion of the small management yards. (On October 30, 2007, defendants filed a Further Response to Court Order re Small Management Yards [Docket 2496], which provided a legible version of the same spreadsheet in hard copy, that was included in the October 29, 2007 filing. No other additional information was provided in the later filing.) No declarations or other evidence support defendants' plan or the representations made in the plan or the legal pleading through which it was filed with the Court. Defendants' Plan must be rejected and appropriate remedial orders entered to ensure compliance with these critical Orders necessary to reduce pain, suffering and suicide of prisoners housed in these units without access to yard. In addition, this Court must secure fundamental compliance with the Rule of Law. Defendants must obey the lawful orders of this Court.

Defendants' Plan fails to comply with the clear requirements of the Court's June 1, 2007 Order. In fact, Defendants' Plan is in direct and open violation of this Court's clear orders to obtain funding to design and build 761 small management yards by the end of Fiscal Year 2008/2009. Instead, defendants are proceeding as if the Court had granted defendants' objection to the Special Master's recommendations and/or granted defendants' later improper attempt to modify the substantive requirements of the Order by the *ex parte* motion for an extension. Defendants and their attorneys know, however, that the Court clearly rejected these objections in two written orders over the past five months. No appeals were taken and there is simply no excuse for noncompliance.

First, in direct violation of the Court's finding that the construction of an additional 761 small management yards were required to reduce the risk of suicide, defendants boldly assert that this number "extends beyond the Court order for administrative inmates" and they will not construct 318 of these small management yards. Docket 2492-2 at 4. Defendants have waived any right to challenge this finding adopted by this Court in its June 1, 2007 Order, and reaffirmed in the Court's September 14, 2007 Order.

Furthermore, defendants provide no evidence to support their contention that these 318 small management yards are unnecessary or "beyond the Court's jurisdiction." *Id.* Defendants allege in their Plan that the "extra" 318 small management yards would be used by prisoners housed in the high security, locked Psychiatric Services Units (all EOP patients with SHU terms), Security Housing Units (where CCCMS are housed) and the condemned housing units (where both EOP and CCCMS prisoners are housed). Defendants do not assert that the prisoners in these units receive adequate yard or that their needs for yard have been or will be addressed through some alternative plans. These prisoners, many of whom are on the mental health caseload, are housed in segregated, high security housing where their needs for basic out of cell time are equally critical. It is quite alarming that defendants' latest tactic is to remove from their Plan (and obligations) the small management yards that they contend will serve this vulnerable population housed in these segregated units.

B.     **Defendants' Plan Violates The Court's Timelines**

Defendants' Plan also fails to comply with the timeframe set forth in the Court's Order, requiring that defendants complete all construction of the small management yards by the end of Fiscal Year 2008/2009. Docket 2492-2 at 4-5. In their objections to the SM Supplemental Report, defendants objected to the timeframe, however the Court overruled this objection in its June 1, 2007 Order. Defendants did not appeal this Order.

Defendants have filed a Plan, however, that openly violates this aspect of the Court's Order, extending the time for construction beyond the deadline set in the Order. The Plan openly states that defendants will not complete construction of the smaller number of required small management yards until January 2010. Docket 2492-2 at 6. Defendants, without a declaration supporting these assertions, set forth the following excuses for their inability to comply with the court-ordered timeline:

- "There is no viable mechanism for funding the SMY project in the current budget year.

- Government Code Section 13332.11 (attached) prohibits the expenditure of capital outlay funds on projects until the Department of Finance and State PWB have approved

-5-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RESPONSE TO COURT ORDER RE: SMALL MANAGEMENT YARDS AND REQUEST FOR FURTHER REMEDIAL ORDER NO.: CIV S 90-0520 LKK-JFM

preliminary plans for the project.

- Penal Code section (PC) 7003 (attached) establishes a 45-day period for the Joint Legislative Budget Committee's review and approval of preliminary plans.

- Public Contract Code procurement regulations for equipment and fabrication materials require anything over $50,000 to be formally bid. It takes 9 weeks to bid, advertise and award contract.

-Procurement of fabricated enclosures is approximately 23 weeks (includes bid, advertisement and award) before the first enclosure is complete.

-Procurement of long lead equipment including steel toilets and locks takes approximately 33 weeks (includes bid, advertisement and award time)." [Docket 2492 at 4-5.]

Defendants' excuses for not complying with the court-ordered deadline have a familiar ring. Similar reasons have been provided for their inability to expedite crisis beds, inpatient beds, and other critical programs affecting mental health patients. However, in this circumstance, the parties began discussing the urgent need to provide prisoners in segregated housing with their mandated out-of-cell time in the summer of 2006 after this Court ordered the parties to meet with the Special Master, his experts, the parties, and plaintiffs' expert, Lindsay Hayes, to develop a Suicide Plan to address the escalating rate of suicides in segregation. 6/7/06 Order [Docket 1830, ¶3]. In 2006, during the meeting, defendants first identified their shortfall of more than 1342 small management yards system-wide. Defendants' Suicide Plan, filed 10/2/06 at 8-9. [Docket 1990]. The failure to obtain the necessary budgetary funds is inexcusable, where defendants have identified the need to provide out-of cell time as an essential component of their Suicide Plan and where prisoners housed in administrative segregation units system-wide are routinely locked in their cells 23 hours a day or more. *Id.*

### C. Defendants' Interim Plan To Provide More Access To Small Management Yards Is Inadequate And Should Be Rejected By The Court.

This Court ordered defendants to include as part of their Plan "provisions for better utilization of the existing small management yards and coordination with available staff to maximize yard usage."  6/1/07 Order at ¶4.

In response to the Court's order, defendants reported that the Division of Adult Institutions did an assessment of the small management yards.  [Docket 2929-2 at 5]. According to the assessment, defendants found that: "*staff assigned to escort and supervise inmates in the SMYs are typically assigned during Second Watch hours.  The institutions do not have sufficient escort and security staff to expand the Administrative Segregation Unit Yard Program beyond the hours currently offered.*"  *Id.*  Defendants explored no other options for developing interim measures for providing additional access to the existing small management yards which CDCR currently has system-wide until the new small management yards come on line in the next two years.  This is unacceptable.  Plaintiffs seek an additional order requiring that defendants develop and file with the Court an interim plan to address the shortage of small management yards, including but not limited to, the provision of additional staffing resources for yard during other watches, including 3rd Watch.

### III.   CONCLUSION

Defendants are not in compliance with this Court's June 1, 2007 Order requiring that defendants submit a plan that will satisfy their need for sufficient small management yards to meet Title 15 exercise requirements for prisoners in administrative segregation.  6/1/07 order ¶¶2-4.  The Order adopted the Special Master's May 14, 2007 Report and Recommendations, including the number of required small management yards (1,480) and the timeline for completion of the yards (2008/2009).  This was a thoughtful order issued after consideration of defendants' objections.  Defendants did not file an appeal from this Order.  However, in their Plan, filed on October 29, 2007, defendants blatantly ignored the mandates of this Court's Order and redefined the parameters.  Defendants' open non-compliance is unacceptable and must be addressed.  Defendants' "excuses" for their inability to comply with a timeframe,

which they first challenged, and have been clearly ordered to follow, are familiar. Finally, defendants' unwillingness to seriously consider interim measures to provide some out-of-cell time to the thousands of men and women who are locked down 23 or 24 hours a day until the required small management yards are constructed is alarming.

For all of the reasons stated above, plaintiffs respectfully request that this Court issue the following orders:

1. Defendants shall be required to complete construction of the remaining 761 small management yards identified in the Special Master's Supplemental Report and Recommendations filed May 14, 2007 by 2008/2009. To the extent that any laws or regulations may need to be waived in order to ensure the timely construction of these small management yards, defendants are instructed to return to the Court with an application for such waivers.

2. Defendants' Interim Plan to address the shortage of small management yards is rejected as inadequate. Within 30 days of this Order, Defendants shall develop and file with the Court an interim plan to address the shortage of small management yards, including but not limited to, the provision of additional staffing resources for yard during other watches, including 3rd Watch.

3. Defendants shall file a revised Plan, within 30 days, for completion of the 761 small management yards by the end of fiscal year 2008/2009. This Plan shall be supported by sworn declarations of CDCR and DOF officials. Defendants shall provide regular reports to the Court, supported by sworn declarations, concerning their ongoing compliance with the revised Plan.

Dated: November 13, 2007            Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

*/s/ Jane E. Kahn*
By: Jane E. Kahn