PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No.: Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** |
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> vs. <br> Defendants | No. C01-1351 TEH <br><br> **DECLARATION OF LORI RIFKIN IN SUPPORT OF PLAINTIFFS' STATEMENT REGARDING DISCOVERY DISPUTE** |

-1-
DECLARATION OF LORI RIFKIN IN SUPPORT OF PLAINTIFFS' STATEMENT REGARDING DISCOVERY DISPUTE, NOS.: CIV S 90-0520
LKK-JFM P, C01-1351 TEH

I, Lori Rifkin, declare:

1. I am a member of the Bar of this Court and an associate in the law firm Rosen, Bien & Galvan, LLP, one of the counsel of record for the *Coleman* Plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify. I make this declaration in support of Plaintiffs' Statement Regarding Discovery Dispute.

2. On August 17, 2007, the Court issued an order referring all discovery disputes arising in these proceedings to Magistrate Judge Moulds in the Eastern District of California. 8/17/07 Order at 4:3-5. Plaintiffs served their first discovery on Defendants on September 5, 2007, consisting of Plaintiffs' First Requests for Production of Documents to Defendants (hereinafter "first set" of discovery requests), a true and correct copy of which is attached hereto as **Exhibit A**.

3. Both Plaintiffs and Defendants have subsequently propounded additional discovery requests. Defendants served *Coleman* and *Plata* Plaintiffs separately with interrogatories and requests for production that were received on October 4 and October 5, 2007, respectively. Defendants also propounded additional interrogatories and requests for production to individual *Plata* named Plaintiffs that were received on October 23. *Coleman* Plaintiffs and *Plata* Plaintiffs separately served Defendants with interrogatories and requests for production on October 17, 2007 (hereinafter collectively "second set" of discovery requests). True and correct copies of the *Coleman* and *Plata* Plaintiffs' requests for production served on October 17, 2007 are attached hereto as **Exhibit B**. A true and correct copy of the *Coleman* Plaintiffs' Interrogatories to Defendant Tilton served on October 17, 2007 is attached hereto as **Exhibit C**.

4. On November 2, 2007 the parties filed a joint Stipulation Regarding Defendants' Rolling Production ("Stipulation"). A true and correct copy of this Stipulation is attached hereto as **Exhibit D**.

5. One of the key provisions of the Stipulation is the specific provision that this rolling production schedule "encompasses Defendants' responses to Plaintiffs' Requests for

Production, Set One and Two." Stip. at 3:2-3. Without this provision, Plaintiffs would not have agreed to a rolling production schedule that does not end until November 30, 2007.

6. Prior to the filing of the stipulation, on October 30, 2007, Defendants disclosed to Plaintiffs the names of the eighty custodians from whom Defendants gathered electronic documents. Defendants have since slightly revised that list to include 81 names. Attached hereto as **Exhibit E** is a true and correct copy of the final version of the list Defendants provided.

7. Between the start of Defendants' rolling production on November 1, 2007, and November 16, 2007, Plaintiffs and Defendants met and conferred numerous times through telephone conferences and emails regarding multiple discovery issues, narrowing the scope on some, and identifying a number to bring before this Court for resolution. Based on information Defendants have provided since the adoption of the stipulation, Plaintiffs have a number of serious concerns about the adequacy and responsiveness of Defendants' production of documents. On November 9, 2007, the parties contacted the Court to request that a hearing be scheduled regarding Plaintiffs' objections to the adequacy of Defendants' document production.

8. This hearing was originally scheduled for a telephonic hearing on November 15, 2007. On November 14, 2007, the parties spoke with the Court's clerk to discuss the status of the disputed issues. As a result of that call, the hearing was postponed by the Court until November 19, 2007 so that the parties could meet and confer further in order to clarify the issues to bring before the Court.

9. Also as a result of the November 14, 2007 call with the Court's clerk, the parties agreed to include briefing about the need for a hearing on two additional matters in their statements for the November 19, 2007 hearing. These additional issues are 1) Plaintiffs' objections to Defendants' overbroad application of privileges including primarily the deliberative process privilege; and 2) Defendants' responses to Plaintiffs' second set of discovery requests.

10. On November 16, 2007, the parties participated in additional telephone

1  conferences with the Court's clerk and identified the specific issues to brief.  Between these
2  telephone conferences, the parties also met and conferred in an attempt to define and narrow
3  the scope of the issues for the November 19, 2007 hearing.  They made limited progress on a
4  number of issues, but were unable to resolve any of them completely.  The parties reported the
5  results of this meet and confer to the Court's clerk and clarified that three issues concerning the
6  adequacy of Defendants' production of documents are ripe for resolution:  1) whether
7  Defendants' search terms are adequate; 2) whether Defendants are obligated to collect
8  information from any additional custodians in order to adequately respond to Plaintiffs'
9  October 17, 2007 discovery requests; and 3) Defendants' obligations to provide additional
10 information regarding their flushing and/or loss of seven custodians' hard drives.

<u>Inadequate Search Terms Utilized By Defendants</u>

12      11.     In contrast to the "approximately 37,500 feet or 7.1 miles tall" stacks of
13 documents Defendants cited in the October 22, 2007 joint discovery statement (10/22/07 at
14 15), on November 5, 2007, Defendants estimated that they would be reviewing only 27,000
15 electronic documents and 140,000 pages of paper documents in response to both sets of
16 Plaintiffs' discovery requests.  Attached hereto as **Exhibit F** are true and correct copies of the
17 emails sent by Defendants' counsel Charles Antonen on November 5, 2007 providing these
18 estimates.

19      12.     Plaintiffs consulted with retained electronic discovery experts as to the
20 reasonableness of the numbers of documents cited by Defendants to be reviewed, compared
21 with the amount of data Defendants claimed to have collected.  Based on this consultation,
22 Plaintiffs determined that the number of documents Defendants would have been expected to
23 identify as potentially responsive based on the volume of data gathered was much larger than
24 what Defendants actually identified.

25      13.     On November 8, 2007, Plaintiffs contacted Defendants multiple times to request
26 an urgent meet and confer regarding the manner in which Defendants had narrowed down the
27 alleged three-plus terabytes of electronic data to 27,000 electronic documents, and identified
28 the 140,000 pages of paper documents.  Plaintiffs' counsel asked Defendants to identify the

process they identify documents, and requested a telephone conference between Plaintiffs' counsel and electronic discovery consultants, and Defendants' counsel and electronic discovery consultants. In response, on November 9, 2007, Defendants emailed Plaintiffs stating that they "d[o] not believe there is a disconnect" between the amount of data Defendants have collected versus the amount of data to be reviewed. Defendants further stated that they were willing to meet and confer on Tuesday, November 13, 2007 regarding this issue.

14. Plaintiffs' counsel informed Defendants that they would request that a hearing be scheduled regarding the adequacy of Defendants' identification of responsive documents because of the urgency of addressing this issue in light of the ongoing rolling production schedule. After a joint telephone conference on November 9, 2007 with the Court's clerk, Plaintiffs and Defendants agreed to meet and confer on Tuesday, November 13, 2007 and address any undisputed issues in briefing and a hearing on Thursday, November 15, 2007.

15. Through a series of emails and telephone conferences during the week of November 12, 2007, Plaintiffs sought information from Defendants' counsel about the manner in which Defendants gathered electronic data from custodians, and the method Defendants used to search that data for documents that would be responsive to Plaintiffs' first and second sets of discovery requests. Plaintiffs requested that Defendants provide the specific "search terms" that were used to narrow the data to responsive documents.

16. On Tuesday, November 13, 2007, Plaintiffs and Defendants met and conferred via telephone conference about Defendants' e-discovery process and the method used by Defendants to pare their total collected electronic data down to the 27,000 potentially responsive documents estimated in Defendants' November 5, 2007 email. The parties' counsel and electronic discovery consultants participated in this telephone conference. Although Defendants' consultant was able to provide some information, a different consultant who did not participate on the call was needed to answer many of Plaintiffs' questions. The parties agreed that Plaintiffs would provide Defendants with a written list of additional questions and that Defendants would answer them. An email containing the list of questions was sent to Defendants' counsel the same day. A copy of that email is attached as Exhibit A to the

Declaration of James Long In Support Of Plaintiffs' Motion to Compel Information Regarding Defendants' Data and Document Collections.

17. During the November 13, 2007 meet and confer, Defendants' counsel stated that they did utilize key word searches in order to identify responsive documents, but would not provide Plaintiffs with the list of searches, claiming attorney work product privilege.

18. On the afternoon of Wednesday, November 14, 2007, Defendants provided the list of search terms utilized to identify documents they would review from the universe of data they collected. Attached hereto as **Exhibit G** is a true and correct copy of the list of search terms sent by Defendants to Plaintiffs via email on November 14, 2007.

19. On the afternoon of November 15, 2007, Plaintiffs' and Defendants' counsel and Plaintiffs' and Defendants' e-discovery consultants, conducted a telephonic meet and confer. Defendant's consultant, Paul French addressed the questions sent by Plaintiffs' counsel on November 13, 2007. At the end of the phone call, Plaintiffs' counsel requested a number of items arising out of the information provided, including the index of user data culled from the original three terabytes of data, a list of the DT Search terms that were executed against the index, the hits log showing how many documents resulted from each of the searches run, and the CDCR document retention policy. Defendants' counsel agreed to consider providing this information but has not provided it to date.

20. Plaintiffs' and Defendants' counsel met and conferred following the teleconference. Defendants have stated that they consider Plaintiffs' second set of requests for production covered by their search list and that they will not run additional search terms. Defendants in this case have failed to engage in a collaborative process with Plaintiffs to identify documents responsive to Plaintiffs' requests for production.

<u>Defendants' Failure to Add Additional Custodians Responsive to Plaintiffs' October 17, 2007 Discovery Requests</u>

21. The stipulation required Defendants to disclose to Plaintiffs no later than Friday, November 9, 2007 the names of additional custodians, if any, from whom Defendants will gather electronic documents in response to Plaintiffs' second set of requests for production.

1  Stip. at 2:12-16. Defendants did not provide this information on November 9, 2007, and on
2  November 13, 2007, Plaintiffs requested the list of additional custodians, and the opportunity
3  to meet and confer regarding this list. On November 14, 2007, during a telephone conference
4  with the Court's clerk, Defendants stated that they did not disclose a list because they did not
5  identify a single additional custodian from whom they would seek to gather documents in
6  response to Plaintiffs' second requests. Defendants have not identified even a single individual
7  beyond headquarters staff from whom they will attempt to gather responsive documents.

8       22. Defendants' current list of custodians from whom they have gathered electronic
9  data contains 81 individuals, all of whom are employed by Defendants in the headquarters of
10  Defendant agencies CDCR, DOF, DMH, and the Governor's office (GOV). This list does not
11  contain a single warden or any other individual who is not headquarters staff. Defendants have
12  stated that they do not intend to add a single custodian to this list who is not headquarters staff.

13       23. Until Friday, November 16, 2007, Defendants took the position that they need
14  not and would not add any additional individuals to their list of custodians from whom to
15  gather information responsive to these requests. Defendants' primary argument during the
16  meet and confer sessions regarding this point is that it would be too burdensome to conduct
17  searches of institution-specific staff. During a telephonic meet and confer Friday afternoon,
18  Defendants' counsel agreed to ask for responsive documents from five additional headquarters
19  staff who are directly involved in the provision of mental health care.

20       24. It is Plaintiffs' understanding that Defendants have generally failed to request
21  paper documents as well as electronic documents from any institution-specific individuals.
22  Defendants continue to maintain that they will not seek additional responsive electronic
23  documents from any institution-specific staff, including wardens, associate wardens, and senior
24  mental health officers at prisons such as chief psychiatrist and chief psychologist. Defendants
25  have made one exception to this refusal: On Friday, November 16, 2007, Defendants' counsel
26  committed to contacting each institution to determine if the institution has a copy of the
27  *Coleman* 20th Monitoring Round Tour Binder produced for the Special Master. If the
28  institution has a copy, Defendants' counsel has agreed to produce responsive documents from

each institution's binder.

25. Plaintiffs believe that CDCR tracks the number of inmates in "bad beds" because Plaintiffs' counsel received this information on some of the expert tours recently conducted at ten CDCR prisons.

26. Attached hereto as **Exhibit H** is a true and correct copy of a memorandum from the Warden of Ironwood State Prison dated May 25, 2007 that was filed with the *Coleman* Court on September 14, 2007 as an exhibit by an individual seeking to intervene in the three-judge court proceedings.

27. Attached hereto as **Exhibit I** is a redacted copy of a letter dated August 24, 2007 from the Chief Deputy Warden at California Correctional Institution to the mother of a *Coleman* class member. Plaintiffs' counsel very recently received this letter from the class member. It has been redacted to protect the confidential identifying information of the class member pursuant to the protective order in the *Coleman* case. Plaintiffs' counsel will provide an unredacted copy of this letter separately to the Court and Defendants' counsel at their request.

<u>Flushing and/or Loss of the Hard Drives of Seven CDCR Custodians</u>

28. In an October 30, 2007 email, Defendants informed Plaintiffs that the hard drives of seven custodians from their list of 81 "were either flushed or could not be located." Attached hereto as **Exhibit J** is a true and correct copy of the email sent by Defendants' counsel Charles Antonen. The custodians are: Bud Prunty, John Dovey, Darc Keller, Peter Farber-Szekrenyi, Richard Kirkland, Brigid Hanson, and Teresa Schwartz.

29. These individuals held high-level positions during the pendency of this litigation and had significant involvement in the management of mental and medical health systems and/or overcrowding issues in the prison system. For example, Bud Prunty is the former CDCR Undersecretary of Operations, Dr. Farber-Szekrenyi is the former CDCR Director of Correctional Health Care Services, and Teresa Schwartz is a former Acting Director of Adult Institutions.

30. Although Defendants have refused thus far to disclose when these employees left

CDCR, Plaintiffs believe that at least six of the identified custodians were still employed by CDCR when Plaintiffs initiated the overcrowding litigation in November 2006. For example, a true and correct copy of an article by Andy Furillo entitled "Top Prison Health Official Forced to Resign" that appeared in the Sacramento Bee on March 5, 2007, and that staff at my office downloaded on March 6, 2007, is attached hereto as **Exhibit K**. It states that Peter Farber-Szekrenyi resigned on March 5, 2007 and that Darc Keller resigned on February 23, 2007. The Declaration of Theresa Schwartz In Support Of Defendants' Statement of Compliance ¶ 1, filed Aug. 3, 2007, *Coleman* Docket 2346-2, states that Schwartz was Acting Deputy Director of the Division of Adult Institutions for the CDCR on August 2, 2007. Attached hereto as **Exhibit L** is a true and correct copy of a May 4, 2007 letter from Brigid Hanson to Special Master Keating that identifies Hanson as the Director of the Division of Correctional Health Care Services of CDCR.

31. The parties' November 2, 2007 stipulation required Defendants to provide Plaintiffs with "a written explanation regarding [Defendants'] efforts to obtain data from the hard drives of" the individuals in question by November 7, 2007. Stip. at 3:16-18. Since Defendants' October 30, 2007 email, Plaintiffs have repeatedly requested more detail regarding Defendants' flushing and/or loss of these hard drives, including descriptions of the efforts made to locate these hard drives, how they were "scrubbed" or "flushed," and any written policies regarding this procedure.

32. On the evening of November 7, 2007, Defendants sent Plaintiffs an email stating that "[i]t is CDCR's policy and practice to flush and recirculate an individual's hard drive upon separation from State service," and indicating that, "with the exception of Bud Prunty, the [custodians] were not CDCR employees or transferred to a different position prior to Plaintiffs serving any discovery in this matter." Attached hereto as **Exhibit M** is a true and correct copy of the November 7, 2007 email from Defendants' counsel Charles Antonen.

33. In the same email, Defendants reported that they located Mr. Prunty's hard drive, but it had been reassigned to the individual, Dave Runnels, who replaced Mr. Prunty as CDCR Undersecretary of Operations. Defendants asserted that "Defendants captured [Mr. Prunty's]

information when [they] imaged [the current employee's] hard drive."

34. In order to further understand what happened to these individuals' hard drives, Plaintiffs have requested specific information regarding Defendants' efforts as to the seven flushed hard drives, as well as general information regarding Defendants' policies and procedures relating to data and document retention policies and procedures. On November 14, 2007, Plaintiffs' counsel sent Defendants an email requesting the following information in the form of sworn declaration(s) and/or authenticated documents:

> (1) the identity of all person or persons who ordered or authorized the hard drive flushing; (2) the exact dates when the hard drives were flushed; (3) by whom the hard drives were flushed; (4) what the flushing entailed; (5) what steps were taken to locate the hard drives; (6) a copy of CDCR's policy on inventorying and storing hard drives of former employees; (7) the CDCR's hard drive inventory log; (8) a copy of CDCR's data/computer/document retention policy, including CDCR's policy on flushing hard drives, as requested by our e-consultants in yesterday's email; (9) the date each of the individuals listed below left the employ of CDCR; (10) a sworn statement explaining all defendants' current practices and efforts to preserve data and/or documents potentially relevant to litigation, including this litigation; and (11) what efforts were taken to recover data that may have been lost when Mr. Prunty's hard drive was flushed for use by Mr. Runnels. If you contest that information was gathered from the exchange server, we need to know the time period for which you pulled data from the exchange server, how often the data is backed up and any other information requested by our forensic computer specialists related to this topic (per the email we sent you last night).

A true and correct copy of Plaintiffs' November 14, 2007 email is attached hereto as **Exhibit N**.

35. To date, Defendants have not provided any of this information, although Defendants' counsel represented on November 15, 2007, that they would attempt to locate CDCR written policies regarding the flushing of hard drives. Plaintiffs have also requested copies of any "litigation hold" memoranda that were sent by Defendants' counsel to Defendant agencies directing them to preserve information.

<u>Status of Dispute Regarding Defendants' Assertions of Privilege</u>

36. In support of these assertions of privilege, which are primarily claims of deliberative process privilege, Defendants have submitted two sets of declarations from high-

level officers at the agency Defendants.

37. On November 5, 2007, after receiving the first set of these declarations, Plaintiffs requested that the parties meet and confer to discuss concerns regarding Defendants' response to Plaintiffs' first request for production. The issues Plaintiffs' counsel raised included Defendants' blanket objections to production of information based on various privileges.

38. On November 6, 2007, Plaintiffs' and Defendants' counsel met and conferred. During the meet and confer, Plaintiffs' counsel raised concerns about the overly broad application of the deliberative process privilege, including identifying weaknesses of the declarations purporting to invoke the privilege. Defendants' counsel indicated that they were not currently planning to supplement the declarations and suggested that a discussion of the privilege was premature because no privilege logs had been produced. The parties agreed to an additional meet and confer session.

39. On November 7, 2007, Plaintiffs' and Defendants' counsel held a follow-up meet and confer to address outstanding issues from the previous conversation. Plaintiffs again raised their objection that Defendants were invoking the deliberative process privilege in an unreasonable and overly broad manner, citing Defendants' response to Plaintiffs' Request for Production Number 1. Defendants' counsel told Plaintiffs' counsel that they were uncertain if the documents identified in their response were actually being withheld on the basis of the privilege and asked that Plaintiffs wait to see the first privilege log, due in two days. Plaintiffs' counsel agreed to do so, but stated that Plaintiffs' would move quickly to challenge the application of the privilege thereafter if necessary. Defendants' counsel agreed with that approach.

40. To date, Defendants have produced two privilege logs, corresponding with their November 1 and November 9 productions. Defendants produced a total of approximately 31,500 pages of documents to Plaintiffs on these two dates. Defendants' privilege log shows

that for the same productions, Defendants have withheld almost 39,000 pages, or more than half of the total pages reviewed.[1] The privilege logs produced by Defendants total 369 pages and reference thousands documents withheld for a corresponding actual production of 3,257 documents.

41. After the first log was produced on November 9, 2007, showing that one-third of Defendants' responsive pages for the November 1 production had been withheld pursuant to claims of privilege, Plaintiffs requested an urgent meet and confer with Defendants about this issue. In response to a request from Defendants, Plaintiffs sent an email outlining Plaintiffs' objections to the assertions of privilege and provided 20 examples from the 64-page log where the privilege either clearly did not apply or insufficient information was provided to sustain the privilege. A true and correct copy of that email is attached hereto as **Exhibit O**. Defendants responded with a suggestion that Plaintiffs and Defendants wait to meet and confer about privilege issues until December 5, 2007 after document production is completed pursuant to the rolling production schedule. Defendants did agree to conduct a meet and confer on November 16, 2007 limited to the issue of insufficient information in the first privilege log.

42. On Friday, November 16, 2007, Plaintiffs' and Defendants' counsel met and conferred regarding Defendants' assertion of the deliberative process privilege. Defendants indicated that they would revise the November 9 privilege log to address some of the issues identified by Plaintiffs in their email and stated that any hearing in advance of that revision was premature. Defendants stated that they could provide a revised version of the log by November 27, 2007 at the earliest. Defendants also suggested waiting until all of the privilege logs were complete on December 7, 2007 before meeting and conferring further or seeking a hearing. Plaintiffs indicated that Defendants' proposal was unacceptable and advised Defendants of their intent to seek a hearing regarding the application and scope of the

---

[1] In the interest of efficiency, Plaintiffs do not attach these privilege logs here because the Stipulation, as per the request of the Court, obligates Defendants to file the logs with the Court concurrently with production to Plaintiffs for in camera review. Stip. at 2:24-27.

1 privileges asserted by Defendants, as separate from objections to the form of the log, as soon as
2 possible.  Plaintiffs also reminded Defendants that they had first raised their concerns with
3 Defendants' overly broad application of the deliberative process privilege on November 5,
4 2007 and that the privilege had been discussed in several meet and confer sessions in the time
5 since.   Plaintiffs and Defendants agreed that issues concerning the scope and application of the
6 deliberative process privilege are urgent, and should be heard by the Court.

7    43. On November 13, 2007, Plaintiffs received Defendants' responses and objections
8 to Plaintiffs' second set of discovery requests, served October 17, 2007.  Attached hereto as
9 **Exhibit P** is a true and correct copy of Defendants' Response to Plaintiff Coleman's First
10 Request for Production of Documents.  Attached hereto as **Exhibit Q** is a true and correct copy
11 of Defendant Tilton's Response to Ralph Coleman's Interrogatories.

13   I declare under penalty of perjury that the foregoing is true and correct, and that this
14 declaration is executed this 18th day of November 2007 in San Francisco, California.

16            */s/ Lori Rifkin*
            Lori Rifkin

DECLARATION OF LORI RIFKIN IN SUPPORT OF PLAINTIFFS' STATEMENT REGARDING DISCOVERY DISPUTE, NOS.:  CIV S 90-0520 LKK-JFM P, C01-1351 TEH