# EXHIBIT Q

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-7872
8    Fax: (916) 324-5205
     Email: Lisa.Tillman@doj.ca.gov
9

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179775
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541- 9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

RECEIVED

NOV 1 3 2007

Rosen, Bien & Galvan

10  Attorneys for Defendants

11         IN THE UNITED STATES DISTRICT COURT

12       FOR THE EASTERN DISTRICT OF CALIFORNIA

13      AND THE NORTHERN DISTRICT OF CALIFORNIA

14  UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

15      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

16

| | |
|---|---|
| 17  **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM P |
| 18                    Plaintiffs, | **THREE JUDGE COURT** |
| 19          v. | |
| 20  **ARNOLD SCHWARZENEGGER, et al.,** | |
| 21                    Defendants. | |
| 22  **MARCIANO PLATA, et al.,** | No. C 01-1351 TEH |
| 23                    Plaintiffs, | **THREE JUDGE COURT** |
| 24          v. | **DEFENDANT TILTON'S** |
| 25  **ARNOLD SCHWARZENEGGER, et al.,** | **RESPONSE TO RALPH COLEMAN'S** |
| 26                    Defendants. | **INTERROGATORIES** |

27  Propounding Party: Ralph Coleman

28  Responding Party:  Defendant Tilton

Tilton Response to Coleman Interrogatories, Set One

1 | Set No.:                    One

2 | **DEFINITIONS**

3 | In construing these discovery responses, the following definitions shall apply:

4 | 1.    "PLAINTIFFS" shall mean class representatives Ralph Coleman, et al., the named

5 | plaintiffs in the action *Coleman v. Schwarzenegger,* Case No. 90-0520 LKK JFM (E.D. Cal.)

6 | (*Coleman*).

7 | 2.    "DEFENDANT" shall mean James Tilton, a named defendant in the case of

8 | *Coleman v. Schwarzenegger*.

9 | 3.    "DEFENDANTS" shall mean each of the named defendants in the case of

10 | *Coleman v. Schwarzenegger*, including James Tilton in his official capacity on behalf of the

11 | California Department of Corrections and Rehabilitation (CDCR), Stephen Mayberg in his

12 | official capacity on behalf of the Department of Mental Health (DMH), Michael Genest in his

13 | official capacity on behalf of the Department of Finance (DOF), and the Governor.

14 | 4.    "PROCEEDING" shall mean the three-judge panel proceeding convened under 28

15 | U.S.C. Section 2284 in the cases of *Coleman* and *Plata*.

16 | **OVERALL OBJECTIONS TO INTERROGATORIES**

17 | 1.    DEFENDANT objects to Plaintiffs' definition of a California Department of

18 | Corrections and Rehabilitation (CDCR) prison and a "prison" to include those housing units

19 | within Department of Mental Health (DMH) facilities that house CDCR prisoners.

20 | (Interrogatories, p. 2.)  That definition mischaracterizes the role of DMH as a provider of housing

21 | for incarcerated inmates.  DMH's true role is defined by California Penal Code section 2684 as a

22 | provider of inpatient mental health treatment to CDCR inmate-patients.  Further, that definition

23 | erroneously assumes the Governor's Emergency Proclamation of October 4, 2006 addressed

24 | DMH as a provider of housing for incarcerated inmates.  DEFENDANT will interpret the terms

25 | "CDCR prison" and "prison" for the purposes of this request to mean those prisons within the

26 | jurisdiction of the California Department of Corrections and Rehabilitation, pursuant to

27 | California Penal Code section 5054.

28 | 2.    DEFENDANT objects that the discovery seeks INFORMATION that is neither

1  relevant to PLAINTIFFS' claims in this PROCEEDING nor reasonably calculated to lead to the

2  discovery of admissible evidence.  PLAINTIFFS have refused to identify what if any claims they

3  will be asserting in the PROCEEDING.  Consequently, DEFENDANT objects that the discovery

4  requires DEFENDANT to speculate what claims may or may not be asserted by PLAINTIFFS.

5       3.     DEFENDANT objects that the requests are seek information equally available to

6  PLAINTIFFS, and that the requests are overbroad and unduly burdensome.  In accordance with

7  the *Coleman* and *Plata* remedial orders, PLAINTIFFS receive monthly document productions

8  and other discovery from DEFENDANT and the Receiver appointed in *Plata*.

9       4.     DEFENDANT states that PLAINTIFFS are already in possession of

10  DEFENDANTS' filed plans for the provision of mental health care beds, for the recruitment and

11  retention of staffing for those mental health beds, and for the implementation of appropriate

12  mental health care in those beds. DEFENDANT asserts the deliberative process privilege to all

13  information sought or contained in drafts of those *Coleman* plans, all drafts of any budget

14  proposals to fund those plans, and inter- and intra-Defendant emails concerning those plans.

15       5.     Given the shortened time for DEFENDANT'S responses to these interrogatories,

16  DEFENDANT hereby reserves the right to supplement these responses at a later date.

17       6.     To the extent any request seeks information from documents prepared, created, or

18  generated by the Office of the Inspector General, DEFENDANTS object to the discovery of such

19  information on the basis of the official information privilege and on the basis of the right to

20  privacy in medical, mental health, and personnel matters.  Non-privileged reports of the Office of

21  the Inspector General are available on its public web site.

22  **RESPONSES AND OBJECTIONS TO INTERROGATORIES**

23  <u>INTERROGATORY NO. 1:</u>

24       Do you contend that some cause other than overcrowding is the primary cause of your

25  ongoing violations of Plaintiffs' right to constitutionally adequate mental health care as set forth

26  in the court-approved Revised Program Guide?

27  RESPONSE TO INTERROGATORY NO. 1:

28       DEFENDANT objects that this request seeks information protected from disclosure by

1  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

2  critical analysis privilege, and official information privilege. Further, the interrogatory is

3  impermissibly vague and overbroad by failing to properly define the word overcrowding in terms

4  of any indicated population or number. Lastly, the interrogatory assumes facts not in evidence

5  and is vague as to any ongoing violations of Plaintiffs' right to constitutionally adequate mental

6  health care.

7       Subject to and without waiving the foregoing objections, DEFENDANT responds as

8  follows: The size of the overall CDCR inmate population was not and is not the primary cause of

9  any violation of Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health

10  care system.

11  INTERROGATORY NO. 2:

12       If your response to interrogatory number 1 is affirmative, identify what you contend to be

13  the primary cause of your violation of Plaintiffs' rights to constitutionally adequate mental health

14  care as set forth in the court-approved Revised Program Guide and state all facts and identify all

15  documents and witness in support of your contention.

16  RESPONSE TO INTERROGATORY NO. 2:

17       DEFENDANT objects that this request seeks information protected from disclosure by

18  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

19  critical analysis privilege, and official information privilege. Further, the interrogatory is

20  impermissibly vague and overbroad by failing to properly define the word overcrowding in terms

21  of any indicated population or number. The interrogatory is also impermissibly vague and

22  overbroad because the measure of Defendants' achievement of a constitutionally adequate mental

23  health care system is unresolved and in dispute. Lastly, the interrogatory assumes facts not in

24  evidence and is vague as to any ongoing violations of Plaintiffs' right to constitutionally adequate

25  mental health care.

26       Subject to and without waiving the foregoing objections, DEFENDANT responds as

27  follows: The size of the overall CDCR population is not the primary cause of any violation of

28  Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care system.

Tilton Response to Coleman Interrogatories, Set One

1  Multiple causes are at play, including and not limited to staff recruitment and retention

2  difficulties (for administrative staff, clinical staff, and correctional officers for the mental health

3  services delivery system), the paucity of a viable information technology system ( for record

4  keeping, medication management, and recruitment and retention of staff within the mental health

5  services delivery system), the nascent implementation of pay parity plans for mental health

6  clinicians within CDCR and DMH, problems in matching high care/high custody inmates with

7  appropriate mental health care beds, and the nascent development of appropriate forecasts of

8  mental health population.

9         DEFENDANT directs Plaintiff to the following documents and witnesses in support of

10  this statement:

11  1.       Monitoring Reports: Special Master Keating's monitoring reports for each round of tours

12  Witnesses on this matter include the Special Master and his appointed Deputy Special Master

13  and monitors.

14  2.       Bed Plans:

15         a.  Defendants' filed bed plans of 2006 and 2007 addressing each level of care and type of

16  bed, including and not limited to the Supplemental Bed Plan Report of August 2007 and its

17  attached projections of the mental health population prepared by Navigant consulting group

18  (witnesses include Doug McKeever, Robin Dezember, John Misener, Michael Barks).

19         b.  Special Master Keating's reports on Defendants' submitted bed plans, particularly

20  those concerning submitted bed plans of 2006 and 2007.

21         c.  The *Coleman* court orders on Defendants' filed bed plans, including and not limited to

22  the October 18, 2007 order approving Defendants' August 2007 mental health bed plan, the

23  October 20, 2006 order approving the program population projections of Navigant and directing

24  CDCR to contract with Navigant for such projections through 2009, as well as the transcripts of

25  the April 2006 evidentiary hearing before Judge Karlton.

26  Witnesses on this matter include Doug McKeever, Robin Dezember, John Misener, Michael

27  Barks.

28  3.       Population:

1      a.     Special Master Keating's report of May 31, 2007 in response to the *Coleman*

2 court's request for information on the population issue. Witnesses on this matter include the

3 Special Master and his appointed Deputy Special Master and monitors.

4      b.     Defendants' filed briefs on the population, including and not limited to

5 Defendants' December 2006 brief in response to Plaintiffs' motion to convene a three-judge

6 panel, Defendants' May 2007 supplemental brief in response to Plaintiffs' motion to convene a

7 three-judge panel, with supporting declarations. Witnesses on this matter include Kathy Jett of

8 CDCR, Deborah Hysen of CDCR, Doug McKeever of CDCR, Margaret McAloon of CDCR,

9 Joan Petersilia of the Office of the Governor, and Scott Kernan of CDCR.

10  4.     Staffing:

11      a.     Defendants' submitted plans to address the retention and recruitment of mental

12 health clinicians, correctional officers, and administrators. Witnesses on this matter include

13 Cindy Radavsky of DMH, Doug McKeever of CDCR, and Nancy Bither of CDCR.

14      b.     Defendants' response to the June 2006 order to obtain funding for mental health

15 staffing necessary to implement the Revised Program Guide. Witnesses on this matter include

16 Doug McKeever of CDCR and Andrew Swanson of CDCR.

17      b.     The *Coleman* court orders concerning Defendants' filed retention and recruitment

18 plans, including and not limited to the December 15, 2006 order approving the pay scales for

19 CDCR clinicians and the June 28, 2007 order approving the pay scales for DMH mental health

20 clinicians.

21  5.     Mental Health Care Policies and Procedures:

22      a.     Defendants' Revised Program Guide, its implementing and training memos, and

23 any associated memorandum of understanding between DMH and CDCR. Witnesses include

24 Shama Chaiken of CDCR, Doug McKeever of CDCR, Cindy Radavsky of DMH.

25      b.     Defendants' filed stipulation for the evaluation of psychiatrists and the August 11,

26 2006 order approving that evaluation process. Witnesses include Andrew Swanson of CDCR.

27      c.     Defendants' filed plan to provide Enhanced Outpatient Program care to Reception

28 Center inmates in need of such care. Witnesses include Margaret McAloon of CDCR, Andrew

1  Swanson of CDCR, Shama Chaiken of CDCR,  and Doug McKeever of CDCR.

2      d.      Special Master Keating's reports on the Revised Program Guide and the *Coleman*

3  court March 2006 order approving the Revised Program Guide.

4  6.    Suicide Prevention:

5      a.    Special Master Keating's annual reports on suicides, including and not limited to

6  the Report on Suicides Committed in California Department of Corrections and Rehabilitation in

7  Calendar Year 2005 and Special Master Keating's Psychiatric Experts' Review of Completed

8  Suicides in the California Department of Corrections and Rehabilitation in Calendar Years 1999

9  through 2004.  The witnesses on this matter include Dr. Helen Steenman of CDCR, Dr. Robert

10 Canning of CDCR, and Dr. Ray Patterson, a court-appointed expert.

11      b.      Defendants' submitted plans and briefs on the plans to reduce suicide events,

12 including the July 2005 plan to address the hazard of large-mesh vents, the October 2006 plan to

13 reduce suicide trends in administrative segregation units, the December 2006 brief responding to

14 Plaintiffs' objections to the October 2006 plan to reduce suicide trends in administrative

15 segregation units (with declarations of George Sifuentes and Scott Kernan, and attached

16 exhibits), the court-approved  stipulation requiring the use of one-to-one monitoring of inmates at

17 risk for suicide.

18 The witnesses on these matters include are not limited to: George Sifuentes, Dean Borg, Deborah

19 Hysen, Doug McKeever, Scott Kernan, Shama Chaiken.

20      c.  Defendants' memoranda to the field concerning measures to reduce suicide events,

21 including the use of appliances within administrative segregation units, thirty-minute welfare

22 checks, and prescreening placement of inmates endorsed for administrative segregation units,

23 the use of one-to-one monitoring of inmates at risk for suicide, the development of intake cells

24 within administrative segregation units.  The witnesses on these matters include and are not

25 limited to: George Sifuentes, Dean Borg, Deborah Hysen, Doug McKeever, Scott Kernan, Shama

26 Chaiken.

27 7.    Coordination:

28      a.    The minutes and orders from the *Coleman/Plata/Perez* courts concerning the

Tilton Response to Coleman Interrogatories, Set One

1   coordination of certain remedial efforts, including and not limited the June 28, 2007 order

2   regarding the Receiver's roles and responsibilities, particularly concerning (1) the contracting

3   functions for mental health care programs; (2) the information technology program; and (3)

4   pharmacy operations.

5        b.    The Receiver's reports and plans concerning his work on the coordination efforts,

6   detailed in the June 28, 2007 order, including any report filed on November 15, 2007, any

7   documents concerning the role of Maxor as the provider of pharmacy services, and any

8   documents concerning the development of a systemwide information technology system.  The

9   witnesses on these matters include Robert Sillen, John Hummel and any other Receiver's staff

10  assigned to those coordination efforts.

11  INTERROGATORY NO. 3:

12       Identify all barriers to providing constitutionally adequate mental health care.

13  RESPONSE TO INTERROGATORY NO. 3:

14       DEFENDANT objects that this request seeks information protected from disclosure by

15  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

16  critical analysis privilege, and official information privilege.  Further, the interrogatory is

17  impermissibly vague and overbroad because the measure of Defendants' achievement of a

18  constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

19  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

20  Plaintiffs' right to constitutionally adequate mental health care.

21       Subject to and without waiving the foregoing objections, DEFENDANT responds as

22  follows:  The size of the overall CDCR population is not the primary cause of any violation of

23  Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care system.

24  Defendant contends that multiple causes are at play, including and not limited to staff recruitment

25  and retention difficulties (for administrative staff, clinical staff, and correctional officers), the

26  paucity of a viable information technology system (essential for record keeping, medication

27  management, and recruitment and retention of staff), the nascent implementation of pay parity

28  plans for clinicians, problems in matching high care/high custody inmates with appropriate

Tilton Response to Coleman Interrogatories, Set One

1 | mental health care beds.

2 | INTERROGATORY NO. 4:

3 |   Identify the date constitutionally adequate mental health care can be provided without any

4 | reduction in prisoners.

5 | RESPONSE TO INTERROGATORY NO. 4:

6 |   DEFENDANT objects that this request seeks information protected from disclosure by

7 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

8 | critical analysis privilege, and official information privilege.  Further, the interrogatory is

9 | impermissibly vague and overbroad by failing to properly define the word prisoners in terms of

10 | any indicated population or number.  Further, the interrogatory is impermissibly vague and

11 | overbroad because the measure of Defendants' achievement of a of a constitutionally adequate

12 | mental health care system is unresolved and in dispute.  Lastly, the interrogatory assumes facts

13 | not in evidence and is vague as to any ongoing violations of Plaintiffs' right to constitutionally

14 | adequate mental health care.

15 |   Subject to and without waiving the foregoing objections, DEFENDANT responds as

16 | follows:  Because the size of the overall CDCR population is not the primary cause of any

17 | violation of Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care

18 | system,  the reduction of prisoners is not a factor in the time frame for providing such care.

19 | DEFENDANT further states that constitutionally adequate mental health care is already being

20 | provided in certain institutions, such as Pelican Bay State Prison.  DEFENDANT has increased

21 | beds at the following settings to enable compliance: California Medical Facility, Vacaville (30

22 | additional intermediate care beds within set timeframe); Salinas Valley State Prison (112

23 | additional intermediate care beds within set timeframe); California State Prison, Sacramento

24 | increased available beds for Enhanced Outpatient Program population by 192 (July 2006 by 96

25 | and October 2006 by 96); Mule Creek State Prison (Sensitive Needs Yard for Enhanced

26 | Outpatient Program for Level III increased by 180 in January 2007 and for Level IV increased by

27 | 115 in January 2007.)

28 |   In addition, the recently-approved August 2007 mental health care bed plan will enhance

Tilton Response to Coleman Interrogatories, Set One

1   systemwide compliance by enabling the activation of the necessary consolidated care center beds

2   to provide mental health care in an appropriate setting no later than 2012.  DEFENDANT is

3   confident that ongoing recruitment and retention efforts, as well as coordination with the

4   Receiver on multiple issues (including and not limited to pharmacy/medication management,

5   licensure, credentialing, information technology) will enable systemwide compliance.

6   INTERROGATORY NO. 5:

7        Identify the steps to take to obtain constitutionally adequate mental health care by that

8   stated date without any reduction in prisoners.

9   RESPONSE TO INTERROGATORY NO. 5:

10        DEFENDANT objects that this request seeks information protected from disclosure by

11   the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

12   critical analysis privilege, and official information privilege.  Further, the interrogatory is

13   impermissibly vague and overbroad by failing to properly define the word prisoners in terms of

14   any indicated population or number.  Further, the interrogatory is impermissibly vague and

15   overbroad because the measure of Defendants' achievement of a constitutionally adequate mental

16   health care system is unresolved and in dispute.  Lastly, the interrogatory assumes facts not in

17   evidence and is vague as to any ongoing violations of Plaintiffs' right to constitutionally adequate

18   mental health care.

19        Subject to and without waiving the foregoing objections, DEFENDANT responds as

20   follows:  Because the size of the overall CDCR population is not the primary cause of any

21   violation of Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care

22   system, the reduction of prisoners is not a factor in the time frame for providing such care.

23   DEFENDANT states that plans are underway to (1) construct the necessary mental health care

24   beds for *Coleman* class members (see August 2007 bed plan filed with the *Coleman* court), (2)

25   enable recruitment and retention of administrative and clinical staff (see DMH and CDCR

26   recruitment plans filed with the *Coleman* court).  Further, the Receiver has undertaken

27   responsibility for ensuring a viable information technology system, with a recordkeeping and

28   medication management functions, as well as a viable pharmacy system. Lastly, DEFENDANT

Tilton Response to Coleman Interrogatories, Set One

1    continues to implement out-of-state transfers of inmates and early parole discharge of certain

2    parolees.

3    INTERROGATORY NO. 6:

4        Do you contend that the Court could enter an order or orders that will provide effective

5    relief for the ongoing violations of Plaintiffs' rights to a constitutionally adequate mental health

6    care as set forth in the court-approved Revised Program Guide without the issuance of a prisoner

7    release order?

8    RESPONSE TO INTERROGATORY NO. 6:

9        DEFENDANT objects that this request seeks information protected from disclosure by

10   the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

11   critical analysis privilege, and official information privilege.  Further, the interrogatory is

12   impermissibly vague and overbroad because the measure of Defendants' achievement of a of a

13   constitutionally adequate mental health care system is unresolved and in dispute.  Lastly, the

14   interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

15   Plaintiffs' right to constitutionally adequate mental health care.

16       DEFENDANT contends that overcrowding is not the primary cause of any violation of

17   Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care system and

18   therefore the reduction of prisoners is not a factor in the time frame for providing such care.

19   DEFENDANT states that constitutionally adequate mental health care is already being provided

20   in certain institutions, such as Pelican Bay State Prison.  DEFENDANT respectfully notes that

21   the *Coleman* Court has already entered orders to enable the provision of constitutionally

22   compliant care, including and not limited to the order denying Plaintiffs' request for a temporary

23   restraining order to bar out-of-state transfers, the order approving the Revised Program Guide,

24   the order approving the CDCR clinician pay schedule, the order approving the DMH clinician

25   pay parity schedule, the order approving the August 2007 mental health bed plan, and the

26   *Plata/Coleman* courts' approval of certain coordination agreements making the Receiver

27   responsible for addressing certain health care issues, such as medication management,

28   credentialing of clinicians, pharmacy, and information technology.  These court orders have and

Tilton Response to Coleman Interrogatories, Set One

1  will enhance systemwide compliance by enabling the staffing and activation of the necessary

2  beds to provide mental health care in an appropriate setting.

3  <u>INTERROGATORY NO. 7:</u>

4      If your response to interrogatory number six is affirmative, please identify each such

5  order/remedy that the court should issue in lieu of a prisoner release order.

6  RESPONSE TO INTERROGATORY NO. 7:

7      DEFENDANT objects that this request seeks information protected from disclosure by

8  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

9  critical analysis privilege, and official information privilege.  Further, the interrogatory is

10  impermissibly vague and overbroad because the measure of Defendants' achievement of a of a

11  constitutionally adequate mental health care system is unresolved and in dispute.  Lastly, the

12  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

13  Plaintiffs' right to constitutionally adequate mental health care.

14      Subject to and without waiving the foregoing objections, DEFENDANT responds as

15  follows: Such orders have already been provided in the course of the Coleman case and in the

16  course of coordinated proceedings before the *Coleman* and *Plata* courts, as identified in the

17  responses to interrogatory numbers 2 and 6.

18  <u>INTERROGATORY NO. 8:</u>

19      For each order/remedy identified in your response to interrogatory number seven, please

20  state the date by which you contend that the ongoing constitutional violations will be remedied

21  by your compliance with the order.

22  RESPONSE TO INTERROGATORY NO. 8:

23      DEFENDANT objects that this request seeks information protected from disclosure by

24  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

25  critical analysis privilege, and official information privilege.  Further, the interrogatory is

26  impermissibly vague and overbroad because the measure of Defendants' achievement of a of a

27  constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

28  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

Tilton Response to Coleman Interrogatories, Set One

1 | Plaintiffs' right to constitutionally adequate mental health care.

2 |     Subject to and without waiving the foregoing objections, DEFENDANT responds as

3 | follows: DEFENDANT'S continued compliance with the orders identified in response to

4 | interrogatory numbers 2 and 6 have resulted in a constitutionally adequate mental health care

5 | system at certain institutions (such as Pelican Bay State Prison) and in certain areas of care and

6 | will do so systemwide. DEFENDANT notes Special Master Keating's May 2006 report to the

7 | court on population issues found approximately 60% of those in need of mental health services

8 | were receiving mental health care services. Because the parties have not agreed on a measure for

9 | determining constitutional compliance on a systemwide basis, DEFENDANT states that this

10 | interrogatory is fatally vague and thus no particular timeframe for systemwide compliance can be

11 | provided at this time.

12 | INTERROGATORY NO. 9:

13 |     For each order identified in your response to interrogatory number seven, identify any

14 | known obstacles and barriers to your compliance with the order by the date identified in

15 | interrogatory number eight.

16 | RESPONSE TO INTERROGATORY NO. 9:

17 |     DEFENDANT objects that this request seeks information protected from disclosure by

18 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

19 | critical analysis privilege, and official information privilege. Further, the interrogatory is

20 | impermissibly vague and overbroad because the measure of DEFENDANT'S achievement of a

21 | of a constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

22 | interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

23 | Plaintiffs' right to constitutionally adequate mental health care.

24 |     Subject to and without waiving the foregoing objections, DEFENDANT responds as

25 | follows: DEFENDANTS are in compliance with the orders identified in response to interrogatory

26 | number 6 and their continued implementation of those court orders will result in a

27 | constitutionally adequate mental health care system systemwide. DEFENDANT notes Special

28 | Master Keating's May 2006 report to the *Coleman* court on population issues found some 60% of

1    those in need of mental health services were receiving mental health care services. Because the

2    parties have not agreed on a measure for determining constitutional compliance on a systemwide

3    basis, Defendant states that interrogatory number 8 is fatally vague.

4    INTERROGATORY NO. 10:

5         Identify each action, program, policy or procedure that you have adopted or undertaken

6    since October 2006 that you contend will limit or reduce the number of prisoners housed in

7    CDCR prisons.

8    RESPONSE TO INTERROGATORY NO. 10:

9         DEFENDANT objects that this request seeks information protected from disclosure by

10   the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

11   critical analysis privilege, and official information privilege.

12        Subject to and without waiving the foregoing objections, DEFENDANT responds as

13   follows: Defendant identifies those programs, policies and procedures described in Defendants'

14   Supplemental Response to Plaintiffs' Motion for the Convening of a Three-Judge Panel, and in

15   the supporting declarations of Joan Petersilia, Scott Kernan and Kathy Jett, filed May 24, 2007

16   with the *Coleman* court.

17   INTERROGATORY NO. 11:

18        For each action, program, policy or procedure identified in your response to interrogatory

19   number 10, state the time frame for implementation, the size of the anticipated population

20   reduction, and the date by which the population reduction will be effected.

21   RESPONSE TO INTERROGATORY NO. 11:

22        DEFENDANT objects that this request seeks information protected from disclosure by

23   the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

24   critical analysis privilege, and official information privilege.

25        Subject to and without waiving the foregoing objections, DEFENDANT responds as

26   follows: The time frames for implementation, the size of the anticipated population reduction

27   and the date by which population reduction would occur were described in Defendants'

28   Supplemental Response to Plaintiffs' Motion for the Convening of a Three-Judge Panel, and in

1  the supporting declarations of Joan Petersilia, Scott Kernan and Kathy Jett, filed May 24, 2007

2  with the *Coleman* court.

3  INTERROGATORY NO. 12:

4      Identify each and every population model relied upon for your answer to interrogatory

5  number 11 by its source, including but not limited to author, entity, and publication.

6  RESPONSE TO INTERROGATORY NO. 12:

7      DEFENDANT objects that this request seeks information protected from disclosure by

8  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

9  critical analysis privilege, and official information privilege.

10     Subject to and without waiving the foregoing objections, DEFENDANT responds as

11 follows: Such model(s) are identified in the declarations of Joan Petersilia and Kathy Jett.

12 INTERROGATORY NO. 13:

13     Identify each action, program, policy or procedure that you have adopted since October

14 2006 that you contend will limit or reduce the number of *Coleman* class members housed in

15 CDCR prisons.

16 RESPONSE TO INTERROGATORY NO. 13:

17     DEFENDANT objects that this request seeks information protected from disclosure by

18 the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

19 critical analysis privilege, and official information privilege.

20     Subject to and without waiving the foregoing objections, DEFENDANT responds as

21 follows:  DEFENDANT has approved, in concept, the proposed policy to transfer certain

22 *Coleman* class members to out-of-state facilities upon proof of their eligibility under criteria

23 approved by the *Coleman* court for such transfer. Further, Defendant has, as part of the *Valdivia*

24 v. *Schwarzenegger* case, provided for In Custody Drug Treatment Program beds in each region

25 of the State, which includes 20 beds per region for parolees with dual diagnoses of mental illness

26 and substance abuse, as part of remedial sanctions in lieu of revocation and return to custody.

27 INTERROGATORY NO. 14:

28     For each such action, program, policy or procedure identified in our response to

Tilton Response to Coleman Interrogatories, Set One

1   interrogatory number 13, state the timeframe for implementation, the size of the anticipated

2   population reduction, and the date by which the population reduction will be effected.

3   RESPONSE TO INTERROGATORY NO. 14:

4       DEFENDANT objects that this request seeks information protected from disclosure by

5   the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

6   critical analysis privilege, and official information privilege.

7       Subject to and without waiving the foregoing objections, DEFENDANT responds as

8   follows: Defendant states that it is presently developing and deliberating over the criteria for

9   determining a *Coleman* class member's eligibility for out-of-state transfer and so cannot state

10  with any certainty at this time the potential number of impacted inmates nor the time line for

11  implementation and impact on the mental health population. Further, Defendant has, as part of

12  the *Valdivia* case, provided for In Custody Drug Treatment Program beds in each region of the

13  State, which includes 20 beds per region for parolees with dual diagnoses of mental illness and

14  substance abuse, as part of remedial sanctions in lieu of revocation and return to custody.  The

15  timeframes for these In Custody Drug Treatment Program beds were provided to Plaintiffs and,

16  at this time, the anticipated effect on the mental health population has not been determined with

17  certainty.

18  INTERROGATORY NO. 15:

19      Identify each and every population model relied upon for your answer to interrogatory 14

20  by its source, including but not limited to author, entity, and publication.

21  RESPONSE TO INTERROGATORY NO. 15:

22      DEFENDANT objects that this request seeks information protected from disclosure by

23  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

24  critical analysis privilege, and official information privilege.

25      Subject to and without waiving the foregoing objections, DEFENDANT responds as

26  follows:  No such models were relied upon for the policies or programs indicated in response to

27  interrogatory 14.

28  //

Tilton Response to Coleman Interrogatories, Set One

1    INTERROGATORY NO. 16:

2         Identify the number of prisoners housed in each CDCR prison on October 17, 2007, by

3    housing unit, security level (I-IV), MHSDS membership (CCCMS or EOP), and other

4    administrative placement factors and categories (SNY, administrative segregation, OHU, CTC,

5    MHCB, reception, Security Housing Unit (SHU), Department of Mental Health (DMH).

6    RESPONSE TO INTERROGATORY NO. 16:

7         DEFENDANT objects that this request seeks information protected from disclosure by

8    the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

9    critical analysis privilege, and official information privilege.

10         Subject to and without waiving the foregoing objections, DEFENDANT responds as

11   follows: The CDCR database printout provides for the number of prisoners housed in each

12   CDCR prison on October 17, 2007 (see Exhibit A).

13   INTERROGATORY NO. 17:

14         For each CDCR prison, identify the number of prisoners housed in non-traditional

15   (defined as beds in gyms, dayrooms, or other locations not intended to house inmates and

16   including those beds referred to as "bad beds" and triple bunks) and the location of such housing

17   as of October 17, 2007.

18   RESPONSES TO INTERROGATORY NO. 17:

19         Objections: DEFENDANT objects that this request seeks information protected from

20   disclosure by the attorney-client privilege, attorney work product privilege, deliberative process

21   privilege, self-critical analysis privilege, and official information privilege.

22         Subject to and without waiving the foregoing objections, DEFENDANT responds as

23   follows: The CDCR database does not contain such data.

24   INTERROGATORY NO. 18:

25         For each such non-traditional housing location, identify the number of prisoners in the

26   mental health services delivery system (EOP, CCCMS) and security level (I-IV) as well as other

27   administrative placement factors (SNY, administrative segregation, CTC, MHCB, OHU,

28   reception center, security housing unit (SHU) or Department of Mental Health program as of

Tilton Response to Coleman Interrogatories, Set One

1  October 17, 2007.

2  RESPONSE TO INTERROGATORY NO. 18

3      DEFENDANT objects that this request seeks information protected from disclosure by

4  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

5  critical analysis privilege, and official information privilege.

6      Subject to and without waiving the foregoing objections, DEFENDANT responds as

7  follows: The CDCR database does not provide such data.

8  INTERROGATORY NO. 19:

9      Describe any restrictions you place on the housing of *Coleman* class members in non-

10  traditional housing beds identified in response to interrogatory seventeen.

11  RESPONSE TO INTERROGATORY NO. 19:

12      DEFENDANT objects that this request seeks information protected from disclosure by

13  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

14  critical analysis privilege, and official information privilege.

15      Subject to and without waiving the foregoing objections, DEFENDANT responds as

16  follows:  The housing of *Coleman* class members is determined in accord with the standards

17  stated in the published decision of *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (1995) and the

18  Revised Program Guide, with those *Coleman* class members receiving Enhanced Outpatient

19  Program Care, Psychiatric Services Unit, and DMH-based inpatient care housed separately from

20  general population of CDCR inmates.

21  INTERROGATORY NO. 20:

22      For each CDCR prison housing unit that houses or has housed *Coleman* class members in

23  the past five years, identify the original stated capacity for housing *Coleman* class members, and

24  any adjustments you have made to the stated capacity, including the size and date of the

25  adjustment.

26  RESPONSE TO INTERROGATORY NO. 20:

27      DEFENDANT objects that this request seeks information protected from disclosure by

28  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

Tilton Response to Coleman Interrogatories, Set One

18

1  critical analysis privilege, and official information privilege.  Further, the interrogatory is

2  impermissibly vague and overbroad by failing to properly define certain phrases, such as

3  'housing unit' and 'stated capacity'.  Indeed, certain prisons were built before the commencement

4  of and/or rendering of judgment in the *Coleman* lawsuit and so the phrase 'original stated

5  capacity' for housing *Coleman* inmates is vague, ambiguous and so essentially inapplicable to

6  those prisons.  Lastly, the interrogatory is overbroad in terms of time and so unduly burdensome.

7   This information may already have been produced to Plaintiffs in the course of (a) inspection

8  tours undertaken prior to trial, (b) the monitoring tours provided since the inception of the

9  remedial process and continuing to date, (c) the CDCR Health Care Services Division's monthly

10  reports to the Special Master, (d) the staffing, construction and funding reports provided at semi-

11  annual meetings with the Special Master and Plaintiffs (known as All Parties and/or Policy

12  Meetings).

13       Subject to and without waiving the foregoing objections, DEFENDANT responds as

14  follows:  DEFENDANT does not maintain such data by housing unit.

15  INTERROGATORY NO. 21:

16       For each housing unit identified in response to interrogatory 20, identify any changes in

17  the number of staff, treatment space, office space, or other resources related to adjustments in

18  capacity, including, when applicable, the dates those changes were allocated, funded and filled.

19  RESPONSES TO INTERROGATORY NO. 21:

20       DEFENDANT objects that this request seeks information protected from disclosure by

21  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

22  critical analysis privilege, and official information privilege.  Further, the interrogatory is

23  impermissibly vague and overbroad by failing to properly define certain phrases, such as

24  'resources related to adjustments in capacity', 'housing unit' and 'stated capacity'.  Lastly, the

25  interrogatory is overbroad in terms of time and so unduly burdensome.

26       Subject to and without waiving the foregoing objections, DEFENDANT responds as

27  follows:  DEFENDANT does not have such data by housing unit. This information may already

28  have been produced to Plaintiffs in the course of (a) inspection tours undertaken prior to trial, (b)

Tilton Response to Coleman Interrogatories, Set One

19

1  the monitoring tours provided since the inception of the remedial process and continuing to date,

2  (c) the CDCR Health Care Services Division's monthly reports to the Special Master, (d) the

3  staffing, construction and funding reports provided at semi-annual meetings with the Special

4  Master and Plaintiffs (known as All Parties and/or Policy Meetings), (e) the Governor's Budget

5  and the May Revise, (f) the Department of Finance budgetary documents released in the *Coleman*

6  case to Plaintiffs pursuant to the August 2006 court order.

7  INTERROGATORY NO. 22:

8      Identify any and all housing units by prison, including reception centers, and housing type

9  (for example, dorm or cell housing) where EOP inmates are currently housed with general

10  population inmates.

11  RESPONSE TO INTERROGATORY NO. 22:

12      DEFENDANT objects that this request seeks information protected from disclosure by

13  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

14  critical analysis privilege, and official information privilege.

15      Subject to and without waiving the foregoing objections, DEFENDANT responds as

16  follows:  EOP inmates are not assigned to two-man cells with any general population inmate and

17  are not assigned to any yard shared with general population inmates.

18  INTERROGATORY NO. 23:

19      State the number of EOP and CCCMS plaintiffs in each reception center who have

20  remained in the reception center beyond the transfer timelines stated in the Revised Program

21  Guide (60 days for EOP and 90 days for CCCMS) since March 2006.

22  RESPONSE TO INTERROGATORY NO. 23:

23      DEFENDANT objects that this request seeks information protected from disclosure by

24  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

25  critical analysis privilege, and official information privilege.

26      Subject to and without waiving the foregoing objections, DEFENDANT responds as

27  follows: The CDCR database does not have that information.

28  //

Tilton Response to Coleman Interrogatories, Set One

1  INTERROGATORY NO. 24:

2       Identify and all lockdowns or partial lockdowns, including dates and duration, that

3  affected housing units housing *Coleman* class members at CDCR prisons since March 3, 2006.

4  RESPONSE TO INTERROGATORY NO. 24:

5       DEFENDANT objects that this request seeks information protected from disclosure by

6  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

7  critical analysis privilege, and official information privilege.  Further, the interrogatory is vague

8  as to the terms 'lockdown' and 'partial lockdown'.

9       Subject to and without waiving the foregoing objections, DEFENDANT responds as

10  follows:  DEFENDANT does not maintain such data.

11       Dated:  November 9, 2007

12                  Respectfully submitted,

13                  EDMUND G. BROWN JR.
                Attorney General of the State of California

14                  DAVID S. CHANEY
15                  Chief Assistant Attorney General

16                  FRANCES T. GRUNDER
                Senior Assistant Attorney General

17                  ROCHELLE C. EAST
                Supervising Deputy Attorney General

18

19

20                  LISA A. TILLMAN
21                  Deputy Attorney General
                Attorneys for Defendants

22

23  TiltonResponseRog1.11.8.wpd
    CF1997CS0003

24

25

26

27

28

**VERIFICATION**

I, JAMES TILTON, declare:

I am the Secretary of the California Department of Corrections and Rehabilitation and in that official capacity am a party in the pending action entitled *Coleman v. Schwarzenegger*. I have read the foregoing responses to the First Set of Interrogatories propounded by Plaintiff Ralph Coleman, and state upon my information and belief that they are true and correct.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this ___9___ day of November, 2007.


_____
JAMES TILTON

Tilton Response to Coleman Interrogatories, Set One

22

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Coleman v. Schwarzenegger, et al.*; *Plata v. Schwarzenegger, et al.*
Nos.:  **01-1351 & 90-0520**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 07, 2007**, I served the attached : **DEFENDANT TILTON'S RESPONSE TO RALPH COLEMAN'S  INTERROGATORIES** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Sacramento, California  94244, addressed as follows:

| | |
|---|---|
| Claudia Center<br>The Legal Aid Society<br>Employment law Center<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107 | Richard Goff<br>Heller, Ehrman White & McAuliffe<br>701 Fifth Avenue<br>Seattle, WA  98104 |
| Warren E. George<br>Bingham McCutchen<br>3 Embarcadero Ctr., Fl. 24<br>San Francisco, CA  94111 | Martin H. Dodd<br>Futterman & Dupree<br>160 Sansome Street, 17th Street<br>San Francisco, CA  94109 |
| Ronald Yank<br>Carroll, Burdick & McDonough, LLP<br>44 Montgomery Street, Suite 400<br>San Francisco, CA  94104 | Ann Miller Ravel<br>Office of the County Counsel<br>County of Santa Clara<br>70 West Hedding, East Wing, 9th Floor<br>San Jose, CA  95110 |
| Jared Goldman<br>California Prison Healthcare Receivership<br>1731 Technology Dr., Suite 700<br>San Jose, CA  95110 | Steven s. Kaufhold<br>Akin Gump Straus Hauer & Feld LLP<br>580 California Street, 15th Floor<br>San Francisco, CA  94102 |

| Rod Pacheco<br>Chuck Hughes<br>Office of the District Attorney<br>County of Riverside<br>4075 Main Street, First Floor<br>Riverside, CA 92501 | Steven Woodside<br>Office of the County Counsel<br>575 Administration Dr., Room 105A<br>Santa Rosa, CA 95403 |
| --- | --- |
| Donald Specter<br>Prison Law Office<br>2173 'E' Francisco Blvd., Suite M<br>San Rafael, CA 94901 | Michael Bien<br>Rosen, Bien and Galvan<br>315 Montgomery Street, 10th Floor<br>San Francisco, CA 94104 |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 07, 2007**, at Sacramento, California.

|  |  |
| --- | --- |
| S. Burke<br>Declarant | *S. Burke*<br>Signature |