PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California  94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone:  (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>            Plaintiffs,<br><br>      vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>            Defendants. | No.: Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA ,et al.,<br><br>            Plaintiffs,<br><br>      vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>      vs.            Defendants. | No. C01-1351 TEH<br><br>**PLAINTIFFS' STATEMENT REGARDING DISCOVERY DISPUTE**<br><br>Date:        November 19, 2007<br>Time:        1:30 p.m.<br>Place:       Courtroom 26<br>Judge:       Hon. John F. Moulds,<br>                  Magistrate Judge |

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS' STATEMENT REGARDING THE NATURE OF THE CASE AND DISCOVERY DISPUTES.................................................................. 1

II.   PLAINTIFFS' STATEMENT REGARDING DETAILS OF THE MEET AND CONFER ............................................................................................ 3

III.  DISPUTES REGARDING THE ADEQUACY OF DEFENDANTS' PRODUCTION ...................................................................................... 4

    A.   Defendants' Search For Documents Responsive To Plaintiffs' Requests for Production Has Been Inadequate And Unreasonable ...................................... 4

        1.   The Limited Number Of Potentially Responsive Documents Identified By Defendants To Be Reviewed Raises Substantial Questions About The Meaningfulness of Their Electronic Data Search .................................................................................... 4

        2.   The Search Terms Applied By Defendants Are Prohibitively Restrictive And Will Exclude Responsive Documents ............................... 6

        3.   Defendants Have Not Searched For Documents Responding To Plaintiffs' Second Set of Requests For Production ..................................... 8

        4.   Defendants Should Be Ordered To Allow Plaintiffs To Run Their Own Searches On Defendants' Document Index, To Produce Documents Accordingly, And To Create And Produce A List Of Search Terms Responsive to Plaintiffs' Second Set Of Requests For Production ................................................................................ 9

    B.   In Order To Meaningfully Respond To Plaintiffs' Second Set Of Discovery Requests, Defendants Must Gather Documents From Additional Individuals ................................................................................ 10

        1.   Defendants Should Be Ordered To Gather Responsive Documents From Additional Headquarters And Institution-Specific Staff ................. 10

    C.   Defendants Should Be Required To Provide Additional Information Concerning Potential Spoliation Of Evidence From Custodians' Hard Drives ................................................................................................ 16

        1.   Defendants Have Not Adequately Explained What Happened To Former Employees' Hard Drives ....................................................... 16

        2.   Defendants Should Be Ordered To Produce Information Relevant To Further Proceedings On This Issue ............................................... 19

IV.   ADDITIONAL DISCOVERY DISPUTES WHICH PLAINTIFFS REQUEST BE HEARD AS SOON AS POSSIBLE BY THIS COURT .......................... 20

A.    The Urgent Need For A Hearing Concerning Plaintiffs' Objections To Defendants' Overbroad Assertions Of Privilege And The Scope Of The Application Of The Deliberative Process Privilege In This Case.........................20

B.    Dispute Regarding Defendants' Responses To Plaintiffs' Second Set Of Discovery Requests .................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Cache La Poudre Feeds, LLC v. Land O Lakes, Inc.*,
    244 F.R.D. 614 (D. Colo. 2007) .................................................................. 19

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
    2007 WL 1848665 (N.D. Cal. June 26, 2007) ........................................... 19

*Gray v. Faulkner*,
    148 F.R.D. 220 (N.D. Ind. 1992) ............................................................... 13

*Hill v. Eddie Bauer*,
    242 F.R.D. 556 (C.D. Cal., 2007) .............................................................. 13

*Holmes v. Teer*,
    2006 WL 1550201, (E.D. Cal. May 31, 2006) .......................................... 13

*Holmgren v. State Farm Mut. Auto Ins. Co.*,
    976 F.2d 573 (9th Cir. 1992) ....................................................................... 8

*In re CV Therapeutics, Inc. Securities Litig.*,
    2006 WL 2458720 (N.D. Cal. Aug. 22, 2006) .......................................... 10

*In re Seroquel Products Liability Litigation*,
    --- F.R.D. ---, 2007 WL 2412946 (M.D. Fla 2007) .................................... 5

*Jacobs v. Scribner*,
    2007 WL 1994235 (E.D. Cal. July 5, 2007) .............................................. 18

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ..................................................................... 18

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
    115 F.R.D. 543 (N.D. Cal. 1987) ............................................................... 18

*Peskoff v. Faber*,
    240 F.R.D. 26 (D.D.C. 2007) ....................................................................... 9

*Qualcomm Inc. v. Broadcom Corp.*,
    2007 WL 935617 (S.D. Cal. Mar. 13, 2007) ............................................. 10

*Quinby v. WestLB AG*,
    --- F.R.D. ----, 2006 WL 2597900 (S.D.N.Y. Sept. 5, 2006) ................... 18

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
    -- F. Supp. 2d --, 2007 WL 2982241 (C.D. Cal. Aug 3, 2007) ................ 19

*Treppel v. Biovail Corp.*,
    233 F.R.D. 363 (S.D.N.Y. 2006) .............................................................. 5, 7

*United States ex rel. Englund  v. Los Angeles County*,
    235 F.R.D. 675 (E.D. Cal. 2006) ............................................................. 8, 9

*Williams v. Bates*,
    2007 WL 1630875 (N.D. Ga. June 4, 2007) .................................................. 10

*Woodburn Construction Co. v. Encon Pacific, LLC*,
    2007 WL 1287845 (W.D. Wash. 2007) ........................................................ 5

## **STATUTES**

18 U.S.C. § 3626(a)(3) ....................................................................................... 1

28 U.S.C. § 2284 ................................................................................................. 1

## **OTHER AUTHORITIES**

Charles Alan Wright et al., 8A Federal Practice and Procedure § 2211 (2d ed. 2007) ............... 8

## **RULES**

Fed. R. Civ. P. 37 ................................................................................ 9, 15

Fed. R. Civ. P. 34 ................................................................................ 13, 15

## I.  PLAINTIFFS' STATEMENT REGARDING THE NATURE OF THE CASE AND DISCOVERY DISPUTES

Plaintiffs are classes of state prisoners with serious medical needs (*Plata v. Schwarzenegger*) and serious mental illness (*Coleman v. Schwarzenegger*) (hereinafter "Plaintiffs").  On November 13, 2006, the Plaintiff classes separately filed motions in the Northern and Eastern Districts of California to convene a three-judge court to limit the prison population in the CDCR, pursuant to 28 U.S.C. § 2284 and 18 U.S.C. § 3626(a)(3).  On July 23, 2007, citing Defendants' failure to remedy their violations of the Plaintiff classes' constitutional rights to adequate medical and mental health care, respectively, the *Plata* and *Coleman* Courts separately granted Plaintiffs' motions and on July 26, 2007, the Chief Judge of the Ninth Circuit appointed a single three-judge court to consider Plaintiffs' requests in both cases for a prisoner release order, pursuant to 18 U.S.C. § 3626(a)(3).  The two cases were consolidated for the limited purpose of proceedings before the three-judge court.  7/31/07 Order at 2:5-12.

On August 17, 2007, the Court issued an order referring all discovery disputes arising in these proceedings to Magistrate Judge Moulds in the Eastern District of California.  8/17/07 Order at 4:3-5.  Plaintiffs served their first discovery on Defendants on September 5, 2007, consisting of Plaintiffs' First Requests for Production of Documents to Defendants (hereinafter "first set" of discovery requests), attached hereto as Exhibit A to Declaration of Lori Rifkin In Support Of Joint Statement Regarding Discovery Dispute ("Rifkin Decl.").  Pursuant to an order from the Court on September 25, 2007, Defendants' responses to this discovery request were due October 25, 2007.  9/25/07 Order at 1:27-2:1.

Both Plaintiffs and Defendants have subsequently propounded additional discovery requests.  Defendants served *Coleman* and *Plata* Plaintiffs separately with interrogatories and requests for production that were received on October 4 and October 5, 2007, respectively.  Defendants also propounded additional interrogatories and requests for production to individual *Plata* named Plaintiffs that were received on October 23, 2007.  Rifkin Decl. ¶ 3.  *Coleman* Plaintiffs and *Plata* Plaintiffs separately served Defendants with interrogatories and

requests for production on October 17, 2007 (hereinafter collectively "second set" of discovery requests).  Rifkin Decl. ¶ 3.

On October 25, 2007, this Court heard arguments regarding various discovery disputes, including the schedule for Defendants' discovery responses and production of documents.  On October 30, 2007, the Court ordered that "by November 1, 2007, defendants will be required to produce for inspection and copying all documents responsive to plaintiffs' request for production of documents unless before that date the parties reach an agreement for some other schedule for production."  10/30/07 Order at 5:7-10.

On November 2, 2007 the parties filed a Joint Stipulation Regarding Defendants' Rolling Production ("Stipulation"), attached hereto as Exh. D to Rifkin Decl.  Prior to the filing of the stipulation, Defendants disclosed to Plaintiffs the names of the eighty custodians from whom Defendants gathered electronic documents.  Rifkin Decl. ¶ 16.  In the stipulation, Defendants agreed to a weekly rolling production schedule for paper and electronic documents, to begin November 1 and end on November 30, 2007.  Each production is to consist of scanned responsive paper documents from all Defendants (CDCR, DMH, DOF, and GOV), and electronic documents in an agreed-upon format from Defendant custodians in groups designated by Plaintiffs according to priority.  The stipulation specifically provides that this rolling production schedule "encompasses Defendants' responses to Plaintiffs' Requests for Production, Set One and Two."[1]  Stip. at 3:2-3.

The stipulation also provided that "Defendants agree to disclose to Plaintiffs no later than Friday, November 9, 2007 the names of additional custodians, if any, that Defendants will gather electronic documents from in responding to Plaintiffs' Request for Production, Set Two. The parties agree to meet and confer about any requests by Plaintiffs to gather documents from additional custodians."  Stip. at 2:14-18.

---

[1] "Set One and Two" refer to Plaintiffs' September 5 and October 17 discovery requests, respectively.

1  In addition, the stipulation provides that "on or before November 5, 2007, Defendants

2  will provide Plaintiffs with an approximation of the number of electronic and paper documents,

3  by Department, that Defendants will be reviewing for relevance and privilege and a proposed

4  schedule for production of paper documents," Stip. at 3:7-10, and that "on or before November

5  7, 2007, Defendants will provide a written explanation regarding their efforts to obtain data

6  from the hard drives of certain former CDCR employees." *Id.* at 3:16-18.

7  Finally, the stipulation states that "the parties agree to meet and confer on an expedited

8  basis to resolve any discovery disputes, and to seek expedited hearings on motions to compel

9  when necessary." Stip. at 5:9-11.

10  **II.   PLAINTIFFS' STATEMENT REGARDING DETAILS OF THE MEET AND**
11         **CONFER**

12  Between the start of Defendants' rolling production on November 1, 2007, and

13  November 16, 2007, Plaintiffs and Defendants met and conferred numerous times through

14  telephone conferences and emails regarding multiple discovery issues, narrowing the scope on

15  some, and identifying a number to bring before this Court for resolution. Rifkin Decl ¶ 7.

16  Based on information Defendants have provided since the adoption of the stipulation, Plaintiffs

17  have a number of serious concerns about the adequacy and responsiveness of Defendants'

18  production of documents. On November 9, 2007, the parties contacted the Court to request

19  that a hearing be scheduled regarding Plaintiffs' objections to the adequacy of Defendants'

20  document production. *Id.*

21  This hearing was originally scheduled for November 15, 2007, but was postponed by

22  the Court until November 19, 2007 so that the parties could meet and confer further in order to

23  clarify the issues to bring before the Court. Rifkin Decl. ¶ 8. On November 16, 2007, the

24  parties participated in additional telephone conferences with the Court's clerk and identified

25  the specific issues to brief. Rifkin Decl. ¶ 10. First, Plaintiffs object to Defendants' use of

26  unreasonable search terms in identifying responsive documents from the electronic data they

27  have gathered. Second, Defendants have refused to gather information from additional

28  custodians beyond headquarters in Sacramento in response to Plaintiffs' second set of

discovery. Third, Defendants have identified seven high-level individuals from their headquarters for whom they were unable to collect electronic information from hard drives because the hard drives were purportedly "flushed" or lost when these individuals left their positions at Defendant agency headquarters.

Plaintiffs have also raised objections concerning two additional urgent discovery issues, and request that they be heard by the Court in an expedited manner. First, Plaintiffs object to Defendants' overbroad application of privileges, including primarily the deliberative process privilege. Second, Plaintiffs object to Defendants' responses to Plaintiffs' second set of discovery requests. Per the direction of the Court, Plaintiffs will brief the necessity for a hearing on those issues at the end of this statement. Rifkin Decl. ¶ 9.

## III.   DISPUTES REGARDING THE ADEQUACY OF DEFENDANTS' PRODUCTION

### A.   Defendants' Search For Documents Responsive To Plaintiffs' Requests for Production Has Been Inadequate And Unreasonable

#### 1.   The Limited Number Of Potentially Responsive Documents Identified By Defendants To Be Reviewed Raises Substantial Questions About The Meaningfulness of Their Electronic Data Search

The Stipulation required Defendants to notify Plaintiffs on November 5, 2007 as to the number of documents Defendants estimate that they will be reviewing for relevance and privilege in response to Plaintiffs' Requests for Production. Stip. at 3:7-10. In response, Defendants estimated that they would be reviewing only 27,000 electronic documents and 140,000 pages of paper documents in response to both sets of Plaintiffs' discovery requests. Rifkin Decl. ¶ 11, Exh. F.

Plaintiffs consulted with retained electronic discovery experts as to the reasonableness of the numbers of documents cited by Defendants to be reviewed, compared with the amount of data Defendants claimed to have collected. Based on this consultation, Plaintiffs determined that the number of documents Defendants would have been expected to identify as potentially responsive based on the volume of data gathered was much larger than what Defendants actually identified. Rifkin Decl. ¶ 12; Declaration of James Long In Support of Plaintiffs' Statement Regarding Discovery Dispute ("Long Decl.") ¶ 3.

1    Plaintiffs, Defendants, and both parties' electronic discovery consultants met and

2    conferred via telephone conference regarding this issue on November 13 and 15, 2007.  Long

3    Decl. ¶¶ 4-8.  On November 14, 2007, Defendants provided a list of the search terms they

4    utilized to identify documents they would review from the universe of data they collected.

5    Rifkin Decl. ¶ 18, Exh. G.  Based on the information provided during these calls and the list of

6    search terms,  it is apparent that Defendants have failed to conduct meaningful, adequate, or

7    reasonable searches in response to Plaintiffs' document requests.

8    The process of producing electronic data begins by gathering data from hard drives,

9    network servers, and other sources.  Upon completion of this collection of data, an "index" is

10    created. The index is analogous to a card catalog or book index for the data Defendants have

11    collected from these custodians.  Rather than containing actual documents, it is a collection of

12    words or terms created by an electronic indexing program that correspond to the words or

13    terms in the documents collected.  Searches are then run against this index and any matches, or

14    "hits," indicate documents that may be responsive to that search.  This is the process

15    Defendants used to identify the documents they are reviewing for possible production.  Long

16    Decl. ¶ 7.

17    In many electronic discovery cases, the responding party is required to share

18    information about the ways in which they are identifying potentially responsive data with the

19    propounding party.  This is particularly true of the list of terms used to search the index.  *See,*

20    *e.g.*, *Woodburn Construction Co. v. Encon Pacific, LLC*, 2007 WL 1287845, *1 (W.D. Wash.

21    Apr. 30, 2007) (electronic discovery consultants working together, use of agreed upon search

22    terms); *In re Seroquel Prods. Liability Litig.*, --- F.R.D. ---, 2007 WL 2412946, at *16 (M.D.

23    Fla. Aug. 21, 2007); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (requiring

24    responding party to provide requesting party with "a detailed explanation of the search

25    protocol it implements").

26    In this case, Defendants produced their list of search terms and answers to Plaintiffs'

27    questions about the method used to gather electronic data only after numerous requests, and

28    after two electronic productions were substantially completed.  Plaintiffs have also requested,

but have not yet received, Defendants' index, list of search terms in the format actually applied, and the "hit list" showing the results of their search against the index.  We are now already halfway through the rolling production schedule, and resolution of this issue is extremely urgent.

As a result of the information provided on the November 15, 2007 call and the list of search terms Defendants produced to Plaintiffs on November 14, 2007, it is clear that Defendants are not conducting reasonable or adequate searches to respond to either set of Plaintiffs' discovery requests.  Plaintiffs have identified two very serious problems that undermine the integrity of the entire production process.

**2.    The Search Terms Applied By Defendants Are Prohibitively Restrictive And Will Exclude Responsive Documents**

First, Defendants' search terms are clearly inadequate to respond to any of Plaintiffs' requests for production.  Defendants did not produce the list of search terms that they used in the actual "DT Search" format they applied,[2] but the list that Defendants did produce demonstrates a clear violation of their duty to conduct reasonable searches in response to requests for production.  The search terms used by Defendants cannot seriously be considered to be calculated to produce meaningful results.

Essentially, all Defendants have done is taken the *exact words* Plaintiffs used in the requests for production and link them together to form searches.  *Compare* Rifkin Decl. Exhs. A, B, and G.  Electronic searches look only for the words requested, and only in the combinations that the search directs.  This means that a search for "bad bed" would miss documents referring to "emergency bed," "overcrowding bed," "ugly bed," or to beds in dayrooms, gymnasiums, and classrooms that are not explicitly referred to as "bad beds."  A search for "infrastructure capacity projects" would not necessarily identify documents discussing the need for more water, sewage, or toilet resources.

---

[2] Plaintiffs' consultants have requested the list in this format, but to date have not received it.  Long Decl. ¶ 6.  The "DT Search" list would allow Plaintiffs' electronic discovery consultants to better analyze the usefulness of the search terms that were applied.

1    Many of Plaintiffs' requests in the first set of requests for production ask about projects

2    authorized by AB 900.  Rifkin Decl. Exh. A.  In constructing their searches, Defendants have

3    taken this so literally that, for the most part, the only documents that will be identified are

4    documents with the words "AB 900" actually in them.  Rifkin Decl. Exh. G.  As such, a

5    document discussing the construction of re-entry beds that are part of the plan described in AB

6    900, but that does not refer to the authorizing law, will not be "hit" on the search.  At the same

7    time, Defendants did not even include a search for "AB 900" or "Assembly Bill 900."  Rifkin

8    Decl. Exh. G.

9        For example, Plaintiffs' First Requests for Production of Documents to Defendants

10    includes:

11
12              **Request No. 1:**  "Any and all DOCUMENTS created during the
              RELEVANT TIME PERIOD that REFER or RELATE TO the
13              implementation of AB 900, INCLUDING but not limited to the
              PRISONS' capacity for traffic, sewage, water, power and other
14              infrastructure, the presence of valley fever at or in the vicinity of the
              PRISONS, and staffing levels at PRISONS."
15

16    Rifkin Decl. Exh. A at 10.  Defendants' allegedly responsive search terms include queries such

17    as "AB or 'Assembly Bill' /2 900 and implement~ and sewage" and "AB or 'Assembly Bill' /2

18    900 and fever /2 valley /5 mitigation."  Rifkin Decl. Exh. G.  There are no searches for "valley

19    fever" or "sewage" or even "sewage capacity" or even "AB 900 and sewage."  *Id.*  Rather, the

20    searches have additional qualifying terms like "implement" or "mitigation."  *Id.*

21        Request No. 34 provides an additional example.

22
23              **Request No. 34**:  Any and all DOCUMENTS created during the
              RELEVANT TIME PERIOD that REFER or RELATE TO any
24              consideration of the effects of any changes in parole policies on the
              PRISON population.
25

26    Rifkin Decl. Exh. A at 5.  The only search term on Defendants' list that appears to respond to

27    this request is "Parole /5 reform /5 polic~ and prison /5 population."  Rifkin Decl. Exh. G.

28    This means that the document must contain *all* of these words in close sequence.  A document

1    analyzing the effect of stopping the practice of returning parolees to prison for technical

2    violations would not be caught by this search if it did not specifically include the word

3    "parole" in the five words preceding the word "reform."

4          This Court has previously held, with respect to requests for admission, that "[a] party

5    may not avoid responding based on technicalities . . . . When the purpose and significance of a

6    request are reasonably clear, courts do not permit denials based on an overly-technical reading

7    of the request."  *United States ex rel. Englund v. L. A. County*, 235 F.R.D. 675, 684 (E.D. Cal.

8    2006) (citing *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 580 (9th Cir. 1992)

9    ("Epistemological doubts speak highly of (party's) philosophical sophistication, but poorly of

10   its respect for Rule 36(a)." (alteration in original))).  The instant case is analogous.  Defendants

11   seek to take only the exact terms Plaintiffs used in requests for production, even in cases when

12   Plaintiffs have explicitly defined the terms using additional or alternative words in the

13   "Definitions" section of the request.  For example, in Plaintiffs' requests for production using

14   the word "timetable," Defendants replicated only the word "timetable" in their search terms.

15   Rifkin Decl. Exh. G.  However, Plaintiffs specifically defined "timetable" as "any

16   DOCUMENT setting forth a calendar, schedule, chart, table, or any other information that

17   RELATES to the timing for completing any or all phase(s) of the subject matter of the

18   request."  Rifkin Decl. Exh. A at 5.  Defendants' maximally strict search terms are

19   unreasonable.  *See generally* Charles Alan Wright et al., 8A Federal Practice and Procedure §

20   2211 (2d. ed. 2007) ("[R]equests for production should not be read or interpreted in an

21   artificially restrictive or hypertechnical manner to avoid disclosure of information fairly

22   covered by the discovery requests, and to do so is subject to appropriate sanctions under

23   subdivision (a) [of Rule 37]." (quoting Rule 37 Advisory Committee Notes)).

24                    **3.    Defendants Have Not Searched For Documents Responding To
                            Plaintiffs' Second Set of Requests For Production**

25

26          Second, Defendants' search terms evidence no consideration of Plaintiffs' second set of

27   discovery requests whatsoever. This violates Defendants' obligation under the Stipulation to

28   produce responses to both sets concurrently during their rolling production.  Stip. at 3:2-3.

-8-

1    Without the concurrent production provision, Plaintiffs would not have agreed to a rolling

2    production schedule that does not end until November 30, when production in response to the

3    first set was due October 25, and the Court ordered that it be completed by November 1.

4    Rifkin Decl. ¶ 5; 10/30/07 Order at 5:6-10. Yet, it cannot be seriously disputed that

5    Defendants' list of search terms is unresponsive to Plaintiffs' second set of requests. For

6    example, although multiple requests in the *Coleman* Plaintiffs' October 17, 2007 requests for

7    production refer to documents "produced for, in conjunction with, or by COMPSTAT," during

8    the relevant time period, the term "COMPSTAT" never appears on Defendants' list of search

9    terms. Rifkin Decl. Exhs. B, G. Many of Plaintiffs' second set of requests for production also

10   request information specific to the *Coleman* class, delivery of mental health services, and

11   implementation of the Revised Program Guide, but again, zero relevant words are included in

12   Defendants' list of search terms. *Id.* Defendants have stated that they consider Plaintiffs'

13   second set of requests for production covered by their search list and that they will not run

14   additional search terms. Rifkin Decl. ¶ 20.

15              **4.    Defendants Should Be Ordered To Allow Plaintiffs To Run Their
                        Own Searches On Defendants' Document Index, To Produce
16                      Documents Accordingly, And To Create And Produce A List Of
                        Search Terms Responsive to Plaintiffs' Second Set Of Requests For
17                      Production**

18              While Plaintiffs do not contend that Defendants must use an endless variety of

19   synonyms, Defendants are obligated to formulate searches that are reasonably calculated to

20   produce meaningful results, rather than searches so restrictive that they will clearly exclude a

21   large amount of responsive information. *See, e.g.*, *United States ex rel. Englund*, 235 F.R.D. at

22   680 ("Generally, if the information sought is contained in the responding party's files and

23   records, he or she is under a duty to search the records to provide the answers."); *Peskoff v.*

24   *Faber***,** 240 F.R.D. 26, 31 (D.D.C. 2007) ("[I]t cannot be argued that a party should ever be

25   relieved of its obligation to produce accessible data merely because it may take time and effort

26   to find what is necessary.").

27              Plaintiffs therefore ask the Court to order Defendants to immediately provide Plaintiffs

28   with a working and accurate "index" of data collected from the approximately eighty

custodians.  This will not provide Plaintiffs with any actual documents, but only the equivalent

to the index in the back of a book.  Defendants should also be ordered to immediately produce

the "hit list" that was generated from their search terms to Plaintiffs so that Plaintiffs can better

assess the meaningfulness of the search that Defendants performed.  Plaintiffs will then use

this information and the index to construct meaningful search terms by testing iterations of

searches against the index to see how many "hits" are produced.  Plaintiffs will provide a final

list of search terms to Defendants and Defendants should be ordered to run this search against

their index and supplement their production of documents accordingly.  Similar solutions have

been employed by other courts in this circuit in cases where the adequacy of the responding

party's searches is challenged.  *See, e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 2007 WL

935617, at *4-5 (S.D. Cal. Mar. 13, 2007) (finding that dueling interpretations of what

constitutes reasonable search terms stalled discovery process, and granting Broadcom

immediate access to Qualcom's database); *In re CV Therapeutics, Inc. Securities Litig.*, 2006

WL 2458720, at *2 (N.D. Cal. Aug. 22, 2006) (ordering application of propounding party's

search terms and refusing to limit documents to which search terms would be applied); *see also*

*Williams v. Taser Int'l, Inc.*, 2007 WL 1630875, at *5-7 (N.D. Ga. June 4, 2007) (ordering

specific set of search terms for production of responsive documents).

        Plaintiffs also request that the Court order Defendants to create and produce an

additional list of search terms in "DT Search" format to Plaintiffs that are responsive to

Plaintiffs' October 17, 2007 Requests for Production.  Defendants should produce relevant

documents resulting from application of these search terms to Plaintiffs by November 30,

2007, the close of the rolling production schedule.

        **B.    In Order To Meaningfully Respond To Plaintiffs' Second Set Of Discovery
                Requests, Defendants Must Gather Documents From Additional Individuals**

                **1.    Defendants Should Be Ordered To Gather Responsive Documents
                        From Additional Headquarters And Institution-Specific Staff**

        The Stipulation required Defendants to disclose to Plaintiffs no later than Friday,

November 9, 2007 the names of additional custodians, if any, from whom Defendants will

1    gather electronic documents in response to Plaintiffs' second set of requests for production.

2    Stip. at 2:12-16.  Defendants did not provide this information on November 9, 2007, and on

3    November 13, 2007 Plaintiffs' requested the list of additional custodians as well as the

4    opportunity to meet and confer regarding this list.  Rifkin Decl ¶ 21.  On November 14, 2007,

5    during a telephone conference with the Court's clerk, Defendants stated that they did not

6    disclose a list because they did not identify a single additional custodian from whom they

7    would seek to gather documents in response to Plaintiffs' second requests.  *Id.*

8            Defendants' current list of custodians from whom they have gathered electronic data

9    contains 81 individuals, all of whom are (or were) employed by Defendants in the headquarters

10   of Defendant agencies CDCR, DOF, DMH, and the Governor's office (GOV).  Rifkin Decl.

11   Exh. E.   This list does not contain a single warden or any other individual who works in any of

12   the 33 California prisons at issue in this case.  Defendants have stated that they do not intend to

13   add a single custodian to this list who is not headquarters staff.[3]  Rifkin Decl. ¶ 22.

14           Plaintiffs' second set of discovery requests include *Coleman* Plaintiffs' request for

15   production of documents to Defendants Schwarzenegger, Tilton, Genest and Mayberg.  Rifkin

16   Decl. Exh. B.  In contrast to Plaintiffs' first set of requests, which focused largely on

17   Defendants' efforts to relieve the overcrowding crisis through AB 900, parole reform, and

18   other measures, the *Coleman* Plaintiffs' requests were directed at the treatment and

19   programming provided to *Coleman* class members at CDCR prisons, and the ways in which

20   the overcrowding crisis is preventing delivery of constitutional mental health treatment.

21   Examples of these requests include:

22

23           **Request for Production No. 2**:  ALL DOCUMENTS and
             COMMUNICATIONS that REFER or RELATE to limitations or
24           modifications of mental health programming, services or treatment from

25   _____

26   [3] Until Friday, November 16, 2007, Defendants took the position that they need not and would not add
     any additional individuals to their list of custodians from whom to gather information responsive to
27   these requests.  During a telephonic meet and confer Friday afternoon, however, Defendants' counsel
     agreed to ask for responsive documents from five additional headquarters staff who are directly
28   involved in the provision of mental health care.  Rifkin Decl. ¶ 23.

Revised Program Guide standards at any CDCR PRISON or housing unit for any reason during the RELEVANT TIME PERIOD.

**Request for Production No. 3**: ALL DOCUMENTS and COMMUNICATIONS that REFER or RELATE to limitations or modifications of vocational or educational programming in any CDCR PRISON or housing unit for any reason during the RELEVANT TIME PERIOD.

**Request for Production No. 22**: ALL DOCUMENTS and COMMUNICATIONS that REFER or RELATE to the use of alternative sites to licensed mental health crisis beds for prisoners in need of crisis beds or suicide precautions, including but not limited to outpatient housing units ("OHUs"), mental health outpatient housing units ("MHOHUs"), and holding cells, during the RELEVANT TIME PERIOD.

**Request for Production No. 23:**  ALL DOCUMENTS and COMMUNICATIONS that REFER or RELATE to the use of or referral to mental health crisis beds for inmates not previously identified on the MHSDS caseload during the RELEVANT TIME PERIOD.

**Request for Production No. 26**: All DOCUMENTS and COMMUNICATIONS that REFER or RELATE to the implementation of Court-ordered mental health care programs in Reception Centers during the RELEVANT TIME PERIOD.

Rifkin Decl. Exh. B.  Defendants continue to maintain that they will not gather additional responsive documents in any form, paper or electronic, from any institution-specific staff, including wardens, associate wardens, and senior mental health officers at prisons, such as chief psychiatrist and chief psychologist.[4]  Rifkin Decl. ¶ 24.

---

[4] Defendants have made one exception to this refusal:  On Friday, November 16, Defendants' counsel committed to contacting each institution to determine if the institution has a copy of the *Coleman* 20th Monitoring Round Tour Binder produced for the Special Master.  If the institution has a copy, Defendants' counsel has agreed to produce responsive documents from each institution's binder. Rifkin Decl. ¶ 24.

1    This refusal constitutes a blatant violation of Defendants' duty to conduct a reasonable

2    search for responsive documents.  *See, e.g.*, *Holmes v. Teer*, 2006 WL 1550201, * 2 (E.D. Cal.

3    May 31, 2006) (citing Federal Rule of Civil Procedure 34 and declaring that "[i]nsofar as

4    documents are within Defendant's possession, custody or control, he must determine whether

5    they exist and produce them.").  Defendants' primary argument during the meet and confer

6    sessions regarding this point is that it would be too burdensome to conduct searches of

7    institution-specific staff.  Rifkin Decl. ¶ 23.  Yet it is only institution-specific staff who will

8    have documents responsive to many of these requests.  In this circumstance, and in light of the

9    fact that this case involves the basic needs of the more than 170,000 prisoners currently

10   warehoused in these institutions, tens of thousands of whom are stuffed into so-called "ugly

11   beds," Defendants must conduct these searches.  "[A] party responding to a Rule 34 production

12   request . . . 'is under an affirmative duty to seek that information reasonably available to [it]

13   from [its] employees, agents, or others subject to [its] control.'"  *Hill v. Eddie Bauer*, 242

14   F.R.D. 556, 560 (C.D. Cal. 2007) (alterations in original) (quoting *Gray v. Faulkner*, 148

15   F.R.D. 220, 223 (N.D. Ind. 1992)).  Defendants are currently working to build yet more prisons

16   in California; they cannot shirk their legal obligations in discovery with an excuse that it is too

17   onerous for them to reasonably investigate those that already exist.

18        Defendants also took the position during the meet and confers that any relevant

19   information held by wardens and other institution-specific staff would be garnered by

20   searching the computers of headquarters staff.  In fact, Defendants' responses to Plaintiffs'

21   interrogatories attest to the fact that information presumably available on an institutional level

22   is not necessarily available at the headquarters level.  For example, *Coleman* Plaintiffs'

23   Interrogatory No. 17 to Defendant Tilton asked: "For each CDCR PRISON, identify the

24   number of PRISONERS housed in NON-TRADITIONAL housing (defined as beds in gyms,

25   dayrooms, or other locations not intended to house inmates and including those beds referred

26   to as 'bad beds' and triple bunks) and the location of such housing as of October 17, 2007."

27   Rifkin Decl. Exh. C at 6.  Defendants responded that "[t]he CDCR database does not contain

28   such data."  Rifkin Decl. ¶ 43, Exh. Q at 17.  The answer to this interrogatory makes clear that

-13-

1  documents responsive to Plaintiffs' requests for production about, for example, the placement

2  of *Coleman* class members in "non-traditional beds" would not necessarily be found at the

3  headquarters level.  On an institutional level, however, CDCR appears to track the number of

4  inmates in these "bad beds" because Plaintiffs' counsel received this information on some of

5  the expert tours recently conducted at ten CDCR prisons.  Rifkin Decl. ¶ 25.

6       Defendants' own documents also establish why searches at the institutional level are

7  necessary.  A memorandum[5] dated May 25, 2007 from the Warden of Ironwood State Prison to

8  the staff and inmates of Ironwood State Prison states:

9
10       As many of you are aware due to overcrowding within the California
     Department of Corrections and Rehabilitation and the increase of

11       incarcerated felons. [sic]  The Department is currently out of beds.  As a
     result of this overcrowding, Ironwood State Prison has been mandated to

12       activate 540 additional Emergency Beds on Facility 'B', 'C' and

13       'D'…Unfortunately, Ironwood is also one of the 33 Adult Institutions
     that is faced with a shortage of staff which further complicates a lot of

14       issues as related to running 'normal program'…[W]e are implementing a
     new 'Rolling Modified' program, which will dictate if we are short on

15       staff by a certain number, what programs will be conducted and which

16       will be modified.

17  Rifkin Decl. ¶ 26, Exh. H.  This type of document is directly responsive to *Coleman* Plaintiffs'

18  requests for production numbers 2 and 3 above (documents relating to limitations or

19  modifications of mental health programming, services or treatment from Revised Program

20  Guide standards at any prison or housing unit, and documents relating to limitations or

21  modifications of vocational or educational programming in any prison or housing unit), yet

22  Defendants' current search of only headquarters custodians would not produce it.

23       Another example of a document that would presumably be produced at an institutional

24  level is the response of the Chief Deputy Warden at California Correctional Institution (CCI) to

25  a letter from the mother of a *Coleman* class member requesting information about why her

26  _____

27  [5] This document was filed in this case by an individual unsuccessfully seeking to intervene in the
proceedings before the three-judge court.  *Coleman* Docket No. 2430.

28

son's transfer out of the administrative segregation unit at CCI to an EOP SNY program at

Mule Creek State Prison had been delayed.  Rifkin Decl. ¶ 27, Exh. I.  The Chief Deputy

Warden wrote:

> Your son was initially endorsed to Mule Creek State Prison, on January
> 17, 2007, and then re-endorsed on May 21, 2007.  Your son must remain
> in Administrative Segregation pending the transfer due to his case factors
> [SNY]. Your sons' [sic] transfer has been delayed due to inmate
> population pressures.  CCI staff is monitoring your son's case and will
> continue efforts to expedite the transfer.  Please be aware there are other
> inmates who have been endorsed prior to your son and are still awaiting
> transfer.

This kind of document is directly responsive to *Coleman* Plaintiffs' request for production

number 35:  "ALL DOCUMENTS and COMMUNICATIONS created, exchanged, or made

from January 1, 2005 to present that REFER or RELATE to YOUR ability to timely place

*COLEMAN* CLASS MEMBERS in MHSDS beds at each level of care (CCCMS, EOP,

MHCB, DMH), including delays in referral, endorsement and transfer."  Rifkin Decl. Exh. B at

10.

Defendants' attempts to circumvent their duty to gather documents that are reasonably

available to them should not be tolerated.  Defendants' indication that they have not yet

requested paper or electronic documents from staff at institutions regarding any of Plaintiffs'

discovery requests violates both their Rule 34 and 37 obligations and their agreement under the

stipulation to concurrently produce documents responsive to both sets of discovery according

to the rolling production schedule.

Plaintiffs request that the Court issue an order directing Defendants to submit a list of

additional custodians that is appropriately responsive to Plaintiffs' discovery requests,

including but not limited to the wardens at the 33 prisons and any other relevant staff, at the

headquarters, institution, and regional levels, by close of business Tuesday, November 20,

2007.  Relevant staff may include associate and deputy wardens as well as supervisory mental

health staff at the institutions.  All gathering of data, both paper and electronic, and production

of documents to Plaintiffs from these additional custodians must be completed by November

30, 2007, the last production date for the rolling production schedule per the Stipulation.  In addition, if any method of gathering this data that Defendants employ involves searching for particular words or phrases, Defendants should create this search list in collaboration with Plaintiffs' counsel.

### C.  Defendants Should Be Required To Provide Additional Information Concerning Potential Spoliation Of Evidence From Custodians' Hard Drives

#### 1.  Defendants Have Not Adequately Explained What Happened To Former Employees' Hard Drives

In an October 30, 2007 email, Defendants informed Plaintiffs that the hard drives of seven custodians from their list of 81 "were either flushed or could not be located."  Rifkin Decl. ¶ 28, Exh. J.  The custodians are:  Bud Prunty, John Dovey, Darc Keller, Peter Farber-Szekrenyi, Richard Kirkland, Brigid Hanson, and Teresa Schwartz.  *Id.*  These individuals held high-level positions during the pendency of this litigation and had significant involvement in the management of mental and medical health systems and/or overcrowding issues in the prison system.  Rifkin Decl. ¶ 29.  For example, Bud Prunty is the former CDCR Undersecretary of Operations, Dr. Farber-Szekrenyi is the former CDCR Director of Correctional Health Care Services, and Teresa Schwartz is a former Acting Director of Adult Institutions.  *Id.*

The parties' November 2, 2007 stipulation required Defendants to provide Plaintiffs with "a written explanation regarding [Defendants'] efforts to obtain data from the hard drives of" the individuals in question by November 7, 2007.  Stip. at 3:16-18.  Since Defendants' October 30, 2007 email, Plaintiffs have repeatedly requested more detail regarding Defendants' flushing and/or loss of these hard drives, including descriptions of the efforts made to locate these hard drives, how they were "scrubbed" or "flushed," and any written policies regarding this procedure.  Rifkin Decl. ¶ 31.

On the evening of November 7, 2007, Defendants sent Plaintiffs an email stating that "[i]t is CDCR's policy and practice to flush and recirculate an individual's hard drive upon separation from State service," and indicating that, "with the exception of Bud Prunty,

1   the [custodians] were not CDCR employees or transferred to a different position prior to

2   Plaintiffs serving any discovery in this matter."  Rifkin Decl. Exh. M.  Additionally,

3   Defendants summarily stated, without any detailed explanation, that "Defendants have made

4   reasonable efforts to locate the above listed hard drives,"[6] without providing any additional

5   information.  *Id.*  Defendants did indicate, however, that "exchange server data (i.e. emails)

6   exists for the above listed custodians." *Id.*

7          Defendants' cursory November 7, 2007 statement falls far short of their obligation

8   under the November 2, 2007 stipulation and raises serious concerns about the destruction of

9   evidence that cannot be resolved without additional information.  The custodians Defendants

10  have identified were high-level CDCR employees extremely likely to have responsive

11  documents and information pertinent to this litigation.  Indicative of their relevance to these

12  discovery requests is their place on the narrow list of 34 individuals in CDCR that the parties

13  selected as most responsive to Plaintiffs' requests for production.

14         Moreover, although Defendants have refused to disclose when these employees left

15  CDCR, Plaintiffs believe that at least six of the seven identified custodians were still employed

16  by CDCR when Plaintiffs initiated the overcrowding litigation in November 2006.  Rifkin

17  Decl. ¶ 30 , Exhs. K, L.  Additionally, the *Coleman* and *Plata* cases have been in ongoing

18  litigation for many years.

19         In order to further understand what happened to these individuals' hard drives, Plaintiffs

20  have requested specific information regarding Defendants' efforts as to the seven flushed or

21  missing hard drives, as well as general information regarding Defendants' policies and

22  procedures relating to data and document retention policies and procedures.  Rifkin Decl. ¶ 34,

23  Exh. N (listing the specific information Plaintiffs have requested that Defendants provide in the

24  form of sworn declaration(s) and/or authenticated documents).  To date, Defendants have not

25

26  [6] Defendants reported that they located Mr. Prunty's hard drive, but it had been reassigned to the
    individual, Dave Runnels, who replaced Mr. Prunty as CDCR Undersecretary of Operations.
27  Defendants asserted that "Defendants captured [Mr. Prunty's] information when [they] imaged [the
    current employee's] hard drive." Rifkin Decl. Exh. M.
28

1  provided any of this information, although Defendants' counsel represented on November 15,

2  2007, that they would attempt to locate CDCR written policies regarding the flushing of hard

3  drives.  Rifkin Decl. ¶ 35.  Plaintiffs have also requested copies of any "litigation hold"

4  memoranda that were sent by Defendants' counsel to Defendant agencies directing them to

5  preserve information.  Rifkin Decl. ¶ 35.

6          There is no question that Defendants were obligated to preserve any evidence from the

7  seven individuals at issue.  Every litigant is "under a duty to preserve what it knows, or

8  reasonably should know, is relevant in the action, is reasonably calculated to lead to the

9  discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or

10  is the subject of a pending discovery request."  *Nat'l Ass'n of Radiation Survivors v. Turnage*,

11  115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (internal quotation marks omitted).

12         The duty to preserve potentially relevant evidence attaches not at the point when

13  discovery is served, but rather at the point when Defendants first became aware of a potential

14  claim.  *See Jacobs v. Scribner*, 2007 WL 1994235, *1 (E.D. Cal. July 5, 2007) ("[A]s soon as a

15  potential claim is identified, a litigant is under a duty to preserve evidence which it knows or

16  reasonably should know is relevant to the action." (internal quotation marks omitted)); *see also*

17  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence

18  qualifies as willful spoliation if the party has some notice that the documents were *potentially*

19  relevant to the litigation before they were destroyed." (internal quotation marks omitted)).

20  Beyond the fact that litigation has been ongoing for years in *Coleman* and *Plata*, Plaintiffs'

21  motion for a prisoner release order on November 13, 2006 unmistakably gave rise to a duty to

22  preserve evidence from these custodians – all high-ranking CDCR staff likely to have

23  potentially relevant evidence.  *Cf. Quinby v. WestLB AG*, --- F.R.D. ----, 2006 WL 2597900, *9

24  (S.D.N.Y. Sept. 5, 2006) ("The scope of the duty extends to the key players in a litigation, *i.e.,*

25  individuals likely to have discoverable information that the disclosing party may use to support

26  its claims or defenses." (internal quotation marks omitted)).

27         Defendants' representation that the hard drives were lost or flushed pursuant to CDCR's

28  regular policy is not a safe harbor.  District courts have awarded sanctions where parties

1  continued their routine practice of erasing former employees' hard drives after the obligation to

2  preserve evidence arose.  *See, e.g.*, *Cache La Poudre Feeds, LLC v. Land O Lakes, Inc.*, 244

3  F.R.D. 614, 629 (D. Colo. 2007) (issuing spoliation sanctions where "counsel was aware that

4  an accessible source of information (i.e., computer hard drives used by departed employees)

5  was being eliminated as a routine practice"); *cf. Tenet Healthsystem Desert, Inc. v. Fortis Ins.*

6  *Co., Inc.*, -- F. Supp. 2d --, 2007 WL 2982241, *12 (C.D. Cal. Aug. 3, 2007) ("The destruction

7  of the evidence need not be in 'bad faith' to warrant the imposition of sanctions.").  Moreover,

8  "[i]n the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence

9  goes to the merits of the case, and further, that such evidence was adverse to the party that

10  destroyed it."  *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2007 WL 1848665, *3

11  (N.D. Cal. June 26, 2007); *see also Leon*, 464 F.3d at 959 ("[B]ecause 'the relevance of . . .

12  [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a

13  party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'"

14  (second and third alterations in original)).

### 2.    Defendants Should Be Ordered To Produce Information Relevant To Further Proceedings On This Issue

17          The evidence that appears to have been lost or destroyed by Defendants is likely to have

18  contained information and admissions key to the central considerations of this case, namely

19  that overcrowding is the primary cause of Defendants' ongoing constitutional violations of

20  class members' rights to adequate medical and mental health care; and that no relief other than

21  a prisoner release order will remedy these violations.  Defendants have not yet fully explained

22  the spoliation of this evidence or the reasonableness of their actions with respect to it.  If

23  Defendants cannot either recover this data or explain why the exchange server information is

24  sufficient, Plaintiffs may need additional depositions of those individuals, additional

25  information from other custodians, or may even need to seek some form of sanctions.

26          Plaintiffs therefore request an order requiring Defendants to fully explain what

27  happened, including what staff instructed the flushing of computers, who looked for the

28  missing data and/or hard drives, and what alternative information has been captured and for

what time period.  Defendants should also be ordered to provide all relevant written agency policies regarding data/computer/document retention.  To the extent that Defendants may be able to recover information from these flushed hard drives, the Court should order Defendants to take all such necessary actions.

## IV.  ADDITIONAL DISCOVERY DISPUTES WHICH PLAINTIFFS REQUEST BE HEARD AS SOON AS POSSIBLE BY THIS COURT

### A.  The Urgent Need For A Hearing Concerning Plaintiffs' Objections To Defendants' Overbroad Assertions Of Privilege And The Scope Of The Application Of The Deliberative Process Privilege In This Case

To date, Defendants have produced two privilege logs, corresponding with their November 1 and November 9, 2007 productions.  Rifkin Decl. ¶ 40.  Defendants produced a total of approximately 31,500 pages of documents to Plaintiffs on these two dates.  Rifkin Decl. ¶ 40.  Defendants' privilege log reports that for the same productions, Defendants have withheld almost 39,000 pages, or more than half of the total pages reviewed.[7]  The privilege logs produced by Defendants total 369 pages and reference thousands documents withheld for a corresponding actual production of 3,257 documents.  Rifkin Decl. ¶ 40.

In support of these assertions of privilege, which are primarily claims of deliberative process privilege, Defendants submitted two sets of declarations from high-level officers.  Rifkin Decl. ¶ 36.  On November 5, 2007, after receiving the first set of these declarations, Plaintiffs requested to meet and confer with Defendants regarding, among other topics, these global assertions of privilege.  Rifkin Decl. ¶ 36.  At that time, Defendants requested that Plaintiffs wait for the production of the first privilege log, and agreed that both parties would move on an expedited basis to address this important issue when that log was produced.  Rifkin Decl. ¶¶ 37-39.  After the first log was produced on November 9, 2007, showing that one-third of Defendants' responsive pages for the November 1 production had been withheld pursuant to

---

[7] In the interest of efficiency, Plaintiffs do not attach these privilege logs here because the Stipulation, as per the request of the Court, obligates Defendants to file the logs with the Court concurrently with production to Plaintiffs for in camera review.  Stip. at 2:24-27.

1  claims of privilege, Plaintiffs requested an urgent meet and confer on November 13, 2007 with

2  Defendants about this issue.  Rifkin Decl. ¶ 41.  In response to a request from Defendants,

3  Plaintiffs sent a subsequent email later on November 13 outlining Plaintiffs' objections to the

4  assertions of privilege and provided 20 examples from the 64-page log where the privilege

5  either clearly did not apply or insufficient information was provided to sustain the privilege.

6  Rifkin Decl. Exh. O.  Defendants responded the following day with a suggestion that Plaintiffs

7  and Defendants wait to meet and confer about privilege issues until December 5, after

8  document production is completed pursuant to the rolling production schedule.  Rifkin Decl. ¶

9  41.

10         Defendants subsequently agreed to conduct a meet and confer on November 16, limited

11 to the issue of insufficient information in the first privilege log.  *Id.*  During this meet and

12 confer, Defendants stated that they would update their privilege logs with more complete

13 information, but that they have no intention of even narrowing the privilege log to eliminate

14 documents that are clearly not privileged, such as final plans of agencies or letters submitted by

15 agencies to the *Coleman* Special Master or members of the Legislature.[8]  Rifkin Decl. ¶ 42.

16         During this meet and confer, the parties discussed Plaintiffs' two-part global objections

17 to Defendants' assertion of deliberative process privilege on behalf of this extensive list of

18 documents.  *Id.*  First, Plaintiffs object to Defendants' far too broad application of this privilege

19 and Defendants' refusal to conduct a more thorough review of their privilege log to narrow the

20 number of documents properly at issue.  Second, Plaintiffs also contend that even for many of

21 the documents that may properly fall within the scope of the deliberative process privilege, this

22 qualified privilege is overcome in the instant case because the PLRA criteria that the three-

23 judge court must evaluate place the deliberative process of these agencies directly at issue.

24 Furthermore, the Court's interest and the public interest in accurate fact-finding as to whether a

25

26 _____

27 [8] Examples of these are found in Defendants' first privilege log, produced November 9, at p.10
   (Priv001027-001030), p.19 (Priv001331-001352), and p.32 (Priv002790-002791, Priv002804-
28 002805).

1  statewide prisoner release order should be issued far outweigh the government's interest in

2  non-disclosure.

3          Plaintiffs and Defendants agreed that issues concerning the scope and application of the

4  deliberative process privilege are urgent, and should be heard by the Court.  Rifkin Decl. ¶ 42.

5  Plaintiffs ask the Court to schedule a hearing before the Thanksgiving holiday on November

6  22, 2007, if possible, or as soon thereafter as the Court deems appropriate, in light of the close

7  of the rolling production schedule on November 30, 2007 and the final discovery cut-off of

8  December 20, 2007.  On November 23, 2007, Defendants will produce their fourth set of

9  documents, and presumably, another hefty privilege log for the November 16 production.  It is

10  wasteful of Plaintiffs' and this Court's time to review a 300-page privilege log with clear errors

11  in the application of the privilege.  Plaintiffs suggest that an efficient approach would be for

12  this Court to decide the global privilege issues to the extent possible and immediately set some

13  ground rules for the assertion of privilege.

14      **B.      Dispute Regarding Defendants' Responses To Plaintiffs' Second Set Of
                Discovery Requests**

15

16          On November 13, 2007, Plaintiffs received Defendants' responses and objections to

17  Plaintiffs' second set of discovery requests, served October 17, 2007.  Rifkin Decl. ¶ 43.

18  Plaintiffs raise a number of issues concerning these responses, including:

19          1.    If Defendants do not include search terms relevant to Plaintiffs' October 17, 2007

20              requests for production in their search of electronic data, their responses are not

21              meaningful, adequate or reasonable.

22          2.    If Defendants do not expand their search for responsive documents to institution-

23              specific staff and other relevant headquarters staff, their responses are not

24              meaningful, adequate, or reasonable.

25          3.    The declarations filed with Defendants' responses indicate that Defendants will

26              be asserting similar privileges in a similarly overbroad manner to all documents

27              identified in response to these requests.

28

4.   Responses to the *Coleman* Plaintiffs' requests for production included the
identification of categories of documents allegedly already produced or
accessible to Plaintiffs that have not in fact been regularly produced, such as
monthly reports and monitoring tour binders.  Defendants stated in response to
some requests that no documents additional to regular *Coleman* production
would be produced, disregarding Plaintiffs' requests for documents such as drafts
and e-mail communications.

The first two issues are before the Court today as they relate to Plaintiffs' requests for
production.  For the second issue, Plaintiffs also object to Defendants' failure to consult
institution-specific staff in their responses to Plaintiffs' interrogatories.  Plaintiffs request that
the Court address the third issue in the expedited hearing regarding Defendants' assertions of
privilege.  Plaintiffs request that the Court set the fourth issue for an expedited hearing date as
well.

Dated:  November 19, 2007                              Respectfully submitted,


                                                       */s/ Lori Rifkin*_____
                                                       Lori Rifkin
                                                       Rosen, Bien & Galvan
                                                       Attorneys for Coleman Plaintiffs
                                                       And On behalf of Plata Plaintiffs