EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, SBN 126424
CHARLES J. ANTONEN, State Bar No. 221207
SAMANTHA TAMA - State Bar No. 240280
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5443
Fax: (415) 703-5843
Email: Charles.Antonen@doj.ca.gov

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
Email: pmello@hansonbridgett.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

**RALPH COLEMAN, et al.,**

Plaintiffs,

**v.**

**ARNOLD SCHWARZENEGGER, et al.,**

Defendants.

2:90-cv-00520 LKK JFM

**THREE-JUDGE COURT**

**MARCIANO PLATA, et al.,**

Plaintiffs,

**v.**

**ARNOLD SCHWARZENEGGER, et al.,**

Defendants.

C-01-1351 TEH

**THREE-JUDGE COURT**

**DEFENDANTS' STATEMENT REGARDING DISCOVERY DISPUTES**

On November 16, 2007, the parties, with the assistance of the Haven Gracey, agreed that three discovery topics would be the subject of this hearing: (1) the adequacy of Defendants' search terms; (2) the adequacy of the Defendants' custodian list; and (3) Plaintiffs' request for additional information regarding the recycling of hard drives for certain former California Department of Corrections and Rehabilitation (CDCR) employees. (Antonen Decl. ¶ 2.) With respect to Plaintiffs' concerns about the adequacy of Defendants' search terms, the parties further agreed that Plaintiffs would be raising only four issues: (1) DT search terms; (2) the hit list of the searches already run by Defendants; (3) the index of user data collected by Defendants; and (4) additional searches to be run by Defendants. (Antonen Decl. ¶ 2.) Additionally, the parties agreed to briefly discuss the necessity of a hearing on Plaintiffs' concerns with Defendants' privilege log. (Antonen Decl. ¶ 2.)

Due to the expedited briefing schedule in this matter, Defendants will be submitting this brief simultaneously with Plaintiffs moving papers. Consequently, Defendants will not have had the opportunity to review and respond to Plaintiffs' arguments. Therefore, to the extent Plaintiffs' moving papers deviate from the topics and issues detailed above, Defendants object to the inclusion of any of these additional topics and issues at the hearing and Defendants request the opportunity to properly brief the matter before it is heard by the Court.

## I. PLAINTIFFS' CONCERNS REGARDING THE ADEQUACY OF THE SEARCH TERMS UTILIZED BY DEFENDANTS.

### A. During the Multiple Meet and Confer Discussions Plaintiffs Failed to Identify Their Concerns.

Over the last week the parties have met and conferred on multiple occasions regarding the search terms utilized by Defendants. As a demonstration of good faith, Defendants provided Plaintiffs with a copy of the search terms utilized by Defendants. (Antonen Decl. ¶ 3.) Additionally, at Plaintiffs' counsel's request, Defendants made their e-discovery consultant available for two lengthy teleconferences with Plaintiffs' counsel and Plaintiffs' e-discovery consultant. (Antonen Decl. ¶ 3; French Decl. ¶ 2.) Despite these efforts, the parties have been unable to resolve Plaintiffs' concerns regarding the adequacy of Defendants' search terms.

Defendants have repeatedly requested Plaintiffs identify with specificity exactly what is deficient about Defendants' search terms. (Antonen Decl. ¶ 4.) Besides stating that the alleged deficiencies are patently obvious, Plaintiffs have identified only two specific alleged deficiencies with Defendants' search terms. (Antonen Decl. ¶ 4.) Additionally, Defendants have invited Plaintiffs to propose additional search terms. (Antonen Decl. ¶ 4.) Plaintiffs, however, have not provided any additional search terms despite Defendants' invitation. (Antonen Decl. ¶ 4.)

**B. The Court Should Order Plaintiffs to Specify in Writing Any Concerns Regarding Defendants' Search Terms and to Provide Defendants' a Written Proposal Regarding Any Additional Search Terms.**

Rather than work with Defendants to create an agreeable set of search terms and to test these new search terms against the quality of the documents produced, Plaintiffs instead request the Court order Defendants to provide additional information and at some point run search terms created by Plaintiffs. There are five fundamental problems with Plaintiffs' requests.

First, Plaintiffs have failed to identify with specificity in what way Defendants' document production is deficient. It is Plaintiffs' burden to prove that Defendants' document production is deficient. Plaintiffs have not alleged that Defendants' document production omits categories of documents or is otherwise deficient. Defendants believe that the search terms utilized are more than sufficient. In fact, Plaintiffs have only proposed two alternative search terms (*i.e.* running a search for AB 900 by itself and a search for non-traditional beds, as an alternative to bad beds). Defendants are willing to meet and confer with Plaintiffs regarding these alternative searches terms. Consequently, as an alternative to this hearing, Defendants request Plaintiffs put all their concerns about Defendants' search terms in writing and Plaintiffs submit to Defendants a written proposal of alternative search terms by the close of business on Tuesday, November 20, 2007.

Second, Defendants do not understand why Plaintiffs need the requested information to formulate search terms. As Defendants' e-discovery consultant Paul French testifies, Plaintiffs' requests are highly unusual and this is the first case he is aware of where a party required this information in order to formulate search terms. (French Decl. ¶ 2.) Making Plaintiffs' request more unusual is the fact that the discovery at issue was crafted by Plaintiffs. Therefore,

presumably Plaintiffs are capable of formulating search terms that would capture documents responsive to these discovery requests. As Mr. French explains, the requested documents will not identify any new information responsive to Plaintiffs' requests but will only provide terms that were searched for and found in each document provided to Defendants for review. (French Decl. ¶ 2.) Consequently, requiring Defendants to turn over the requested information, which Plaintiffs will then have to review, would appear to only delay any additional production by Defendants.

Third, Plaintiffs' request for Defendants' index of user data is unprecedented and unwarranted. As explained by Mr. French, the index sought by Plaintiffs contains the actual contents of every file extracted in this matter. (French Decl. ¶ 3.) Therefore, providing Plaintiff with this index is the same as exchanging all the un-searched, un-reviewed source data and would give Plaintiffs the ability to extract any file without the benefit of a privilege and responsiveness review by Defendants. (French Decl. ¶ 3.) Moreover, other indexes related to user-type data contain significant information, such as sensitive file names, email subjects, and attachment lists. (French Decl. ¶ 3.) Therefore, Defendants oppose providing Plaintiffs with an index of Defendants' user data.

Fourth, while Defendants do not oppose providing Plaintiffs with the DT search terms and hit lists, Defendants cannot immediately provide these documents to the Plaintiffs in light of the aggressive rolling production schedule requested by Plaintiffs. (Antonen Decl. ¶ 5.) Defendants are currently processing and reviewing tens of thousands of documents that may be potentially responsive to Plaintiffs' discovery requests. On a typical day, between forty and sixty people are devoted to processing and reviewing these documents. (Antonen Decl. ¶ 5.) As explained by Paul French, Bridge City Legal is currently processing data relating to the final rolling production milestone. (French Decl. ¶ 4.) Providing the data requested by Plaintiffs will take time and disrupt the current production schedule. (French Decl. ¶ 4.) Therefore, to the extent the Court orders Defendants to produce any additional documents resulting from additional searches requested by Plaintiffs, the rolling production schedule must be extended by at least two weeks. (Antonen Decl. ¶ 5; French Decl. ¶ 4.)

Fifth, Plaintiffs have not specified with any particularity what and how many additional searches need to be run. Plaintiffs are presumably requesting the Court order Defendants to run any search terms requested by Plaintiffs. As indicated above, Defendants have agreed to meet and confer with Plaintiffs regarding the use of additional search terms. (Antonen Decl. ¶ 6.) As Defendants have repeatedly stated in the previous meet and confer sessions, Defendants are willing to run additional search terms, provided these additional search terms are reasonable and the rolling production schedule is extended to provide for this additional production. Plaintiffs have not indicated their willingness to abide by these conditions. (Antonen Decl. ¶ 6.) Moreover, to the extent Defendants are required to conduct additional searches, Plaintiffs should bear all costs relating to these additional searches.

Since Plaintiffs have not fully engaged in the spirit of meet and confer, Defendants believe that Plaintiffs concerns about the adequacy of Defendants' search terms are not sufficiently defined for this Court to issue any of the relief requested by Plaintiffs and that additional meaningful meet and confer is required to flesh out Plaintiffs' exact concerns. Defendants respectfully request that the Court direct Plaintiffs to specify in writing their concerns about Defendants' search terms and to submit to Defendants a written proposal of alternative search terms by Tuesday, November 20, 2007.

## II. PLAINTIFFS' CONCERN REGARDING ADDITIONAL CUSTODIANS.

### A. The Parties' Meet and Confer Regarding Additional Custodians Has Been More Productive and Defendants' Commitments Have Resolved Plaintiffs' Concerns About the Scope of Custodians.

Plaintiffs' second issue relates to whether Defendants' designation of certain custodians is inadequate. On November 14, 2007, Plaintiffs first notified Defendants that they believed Defendants custodian list was inadequate. (Antonen Decl. ¶ 7.) Defendants have repeatedly requested Plaintiffs (1) identify what exactly is deficient about Defendants' custodian list and (2) provide the names of individuals Plaintiffs would like added to this list. (Antonen Decl. ¶ 8.) After several multiple meet and confer sessions, Plaintiffs responded that "[a]dditional individuals from whom defendants are identifying responsive documents should include, but are

not necessarily limited to: additional headquarters staff, wardens of the 33 CDCR prisons, associate wardens, the senior medical and mental health officers at the prisons, including when applicable chief medical officer, healthcare manager, chief physician & surgeon, director of nursing, mental health program manager, chief psychiatrist, and chief psychologist." (Antonen Decl. ¶ 9.)

Defendants immediately informed Plaintiffs that imaging, processing, and reviewing the contents of the hard drives and emails of the potentially hundreds of additional individuals requested by Plaintiffs was physically impossible. (Antonen Decl. ¶ 10.) Additionally, Defendants expressed concern that a large percentage of the categories of individuals specified by Plaintiffs report to the Receiver, not Defendants. Therefore, Defendants urged Plaintiffs to contact the Office of the Receiver to coordinate any discovery relating to these individuals. (Antonen Decl. ¶ 10.)

Defendants continued to meet and confer with Plaintiffs in an effort to refine and resolve Plaintiffs' concerns about additional custodians. While Plaintiffs initially restated their demand for the categories of individuals above, Plaintiffs subsequently identified five individuals (*i.e.* Dr. Chama Chaiken, Peg McAloon, Andrew Swanson, Helen Steenman, and Robert Canning) from whom they were interested in obtaining documents. (Antonen Decl. ¶ 11.) Defendants informed Plaintiffs that they had already gathered documents from most of these individuals and Defendants agreed to contact the remaining individuals to ascertain whether they possessed any responsive documents. (Antonen Decl. ¶ 11.) Additionally, in an email sent on the afternoon of November 16, 2007, Plaintiffs for the first time requested the tour binders from the 20th Round of touring in *Coleman*. Defendants agreed to determine whether the binders requested by Plaintiffs could be located and whether these binders contained responsive, non-privileged documents. (Antonen Decl. ¶ 12.) During the evening of November 16, 2007, Defendants informed Plaintiffs' counsel that the electronically-maintained Corrective Action Plans, which often accompany the tour binders sent by various CDCR institutions to the *Coleman* Special Master, were obtained and were being reviewed for production. (Antonen Decl. ¶ 12.)

In sum, Defendants believe Plaintiffs' concerns about custodians have been resolved. While Plaintiffs have not indicated whether these efforts are sufficient to alleviate their concerns, Defendants believe that the matters brought to their attention have been resolved. Additionally, to the extent Plaintiffs still seek discovery from CDCR medical staff, Plaintiffs should contact the Office of the Receiver to coordinate these discovery efforts. Therefore, Defendants are unsure what, if any, concerns Plaintiffs may have and/or what additional relief Plaintiffs will request from this Court.

## III. PLAINTIFFS' CONCERNS REGARDING THE RECYLING OF THE HARDDRIVES OF CERTAIN FORMER CDCR EMPLOYEES.

Defendants understand that Plaintiffs will request the Court order Defendants to produce certain information regarding the recycling of the hard drives of certain CDCR employees. Defendants have agreed to provide Plaintiffs with the departure dates of the following former CDCR employees: Bud Prunty, John Dovey, Darc Keller, Peter Farber-Szekrenyi, Richard Kirkland, Brigid Hanson, and Teresa Schwartz. (Antonen Decl. ¶ 13.) Additionally, to the extent it exists, Defendants are willing to provide to Plaintiffs CDCR's written policy regarding the recycling of hard drives of employees who separate from state service or who are transferred to a different position. (Antonen Decl. ¶ 13.)

In light of the aggressive rolling production schedule, Defendants are unable to comply with the remainder of Plaintiffs' requests for information. Additionally, Defendants believe that such efforts are unnecessary as Defendants have made reasonable efforts to locate the hard drives for these custodians and, with the exception of Mr. Prunty, these individuals separated from state service or where transferred to different positions before Plaintiffs served any discovery requests in this proceeding. (Antonen Decl. ¶ 13.)

Additionally, Plaintiffs misunderstand what occurred with regards to Mr. Prunty's computer. Contrary to Plaintiffs' belief Mr. Prunty's computer was neither flushed nor recycled. (Antonen Decl. ¶ 14.) Instead Mr. Prunty's computer was preserved and utilized by his successor Mr. Runnels. Defendants imaged Mr. Runnels' computer. Therefore, Plaintiffs are likely to find emails/documents authored by Mr. Prunty but for which Mr. Runnels is designated as the

custodian. (Antonen Decl. ¶ 14.) Consequently, while this situation might be slightly confusing, there is no spoliation of evidence.

**IV. NECESSITY FOR A HEARING REGARDING PLAINTIFFS' CONCERNS ABOUT DEFENDANTS' PRIVILEGE LOG.**

Defendants believe that issues about the scope and application of the deliberative process privilege are of great importance and should be accorded full and fair process, including full briefing. Defendants believe Plaintiffs should file their opening papers first, with at least 2 court days for Defendants to prepare and file opposing papers, to enable Defendants to respond to the specific issues and law raised in Plaintiffs' opening papers. In light of the upcoming holiday, Defendants believe a hearing on Plaintiffs' privilege log concerns should take place no earlier than November 30, 2007.

Dated: November 19, 2007

EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Charles J. Antonen
CHARLES J. ANTONEN
Deputy Attorney General
Attorneys for Defendants