PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
ALISON HARDY Bar No.: 135966
VIBEKE NORGAARD Bar No.: 209499
E. IVAN TRUJILLO Bar No.: 228790
RACHEL FARBIARZ Bar No.: 237896
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No.: Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** |
| MARCIANO PLATA ,et al., <br><br> Plaintiffs, <br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> vs. <br> Defendants | No. C01-1351 TEH <br><br> **THREE-JUDGE COURT** <br><br> **JOINT STATEMENT REGARDING DISPUTE OF DISCOVERY** |

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
|  | A. Plaintiffs' Introduction | 1 |
|  | B. Defendants' Introduction | 4 |
| II. | STATEMENT OF FACTS |  |
|  | A. Plaintiffs' Statement of Facts | 4 |
|  | B. Defendants Statement of Facts. | 5 |
| III. | ARGUMENT | 9 |
|  | A. Plaintiffs Argument | 9 |
|  | 1. The Discovery Seeks Information Which is Not Relevant to These Proceedings. | 10 |
|  | 2. Even If the Information Sought Were Relevant, the Burden and Expense This Discovery Imposes on Plaintiffs Outweigh Any Relevance | 13 |
|  | 3. Defendants' Discovery on Named Plaintiffs Is Unreasonably Cumulative and Duplicative | 15 |
|  | B. Defendants' Argument | 16 |
|  | 1. The Named Plaintiffs Are Obligated To Respond To Discovery. | 16 |
|  | 2. The Requested Discovery Is Relevant To Plaintiffs' Request For A Prisoner Release Order. | 17 |
|  | 3. A Claimed Concern About "Retaliation" Does Not Justify Excusing The Named Plaintiffs From Their Legal Obligation To Respond To Discovery. | 18 |
| IV. | CONCLUSION | 18 |
|  | A. Plaintiffs' Conclusion | 18 |
|  | B. Defendants' Conclusion | 18 |

## TABLE OF AUTHORITIES

Page

**Cases**

*Ameristar Jet Charter Inc. v. Signal Composites, Inc.*
244 F.3d 189, 192-93 (1st Cir. 2001)                    15

*Baratta v. Homeland Housewares*
242 F.R.D. 641, 642 (S.D. Fla., 2007)                   13

*Graebner v. James River Corp.*
130 F.R.D. 440, 441 (N.D.Cal. 1989)                     9

*In re Folding Carton Antitrust Litigation*
83 F.R.D. 260 (N.D. Ill. 1979)                          16

*In re Lucent Technologies, Inc.*
2002 WL 32818345 (D.N.J.)                               12

*LaDuke v. Nelson*
762 F.2d 1318, 1322, n.3 (9th Cir. 1989)                11

*McDowell v. Calderon*
197 F.3d 1253, 1256 (9th Cir. 1999)                     9

*Navel Orange Administrative Committee v. Exeter Orange Company, Inc.*
722 F.2d 449, 454 (9th Cir. 1983)                       10

*Plata v. Schwarzenegger* and an injunction in *Coleman v. Wilson*
912 F.Supp. 1282, 1324 (E.D. Cal. 1995)             2, 4, 11, 12

*Smith v. Dowson*
158 F.R.D. 138, 140  (D. Minn. 1994)                    10

*Sosna v. Iowa*
419 U.S. 393, 399-401 (1975)                            11

*United States Parole Commission v. Geraghty*
445 U.S. 388, 397-98 (1980)                             11

**Statutes**
Federal Rule of Civil Procedure
    § 30(a)(2)                                                    5, 6

18 United States Code
    § 3626                                                        17


**Court Rules**
Federal Rules of Civil Procedures
    Rule 23(a)(3)                                   17
    Rule 26(b)(1)                                   17
    Rule 26(b)(2)(c)                               3
    26(c)                                         9, 10, 16
    Rule 26(b)(2)(C)                           9, 13
    Rule 26(b)(i)                                     10
    Rule 30(a)(2)                                   6

**Other Authorities**
9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 2463 (2d Ed. 1995)                         15

## I.   INTRODUCTION

### A. Plaintiffs' Introduction

Plaintiffs in *Plata v. Schwarzenegger* and *Coleman v. Schwarzenegger* (combined, "Plaintiffs"), by their attorneys the Prison Law Office and Rosen, Bien and Galvan respectfully move for an order prohibiting Defendants from taking depositions of and propounding discovery on the individual class members who have previously been named as the class representatives prior to the entry of class-wide injunctions applicable equally to each and every class member.

Defendants' Notices of Deposition served on Named Plaintiffs Plata, Rhoades, Decasas, Stoderd and Coleman (the "Deposition Notices") and twenty sets of discovery – ten sets of requests for production of documents and ten sets of interrogatories (the "Written Discovery") (combined, "the Discovery") – are improper for the following reasons:

1) <u>Relevance</u>:  The individual circumstances and contentions of named plaintiffs are not relevant to these proceedings.  The issues before the three judge panel in Phase 1 are limited to whether: 1) crowding is the primary cause of the violation of the classes' Federal right to medical and mental health care; and, 2) no other relief will remedy the violation of the Federal right.  *See* Order Bifurcating Proceedings and Setting Deadlines for Phase I, October 10, 2007 and October 30, 2007 Order issued by this court.  Medical care access available to a handful of class prisoners – specifically some of the named plaintiffs – is not relevant to whether overcrowding causes medical and mental health care to be constitutionally inadequate system-wide.  Similarly, the class members' individual opinions as to whether other relief will remedy the violations are irrelevant.

Moreover, the Courts have already entered a stipulated injunction in *Plata v. Schwarzenegger* and an injunction in *Coleman v. Wilson*, 912 F.Supp. 1282, 1324 (E.D. Cal. 1995).  Those injunctions are expressly in favor of every member of the plaintiff classes, each of which is comprised of tens of thousands of inmates. See Hardy Decl., Ex. B at para. 35, and *Coleman v. Wilson,*  912 F.Supp. at 1324.  Because the injunctions apply to the entire class – each and every class member equally – the individual circumstances of the named plaintiffs are

1  no longer relevant to these proceedings.  The purpose of discovery at this stage of the
2  proceedings is thus not to re-litigate pre-judgment issues, such as standing to bring suit or
3  whether a constitutional violation occurred.   Proof of relevant legal and factual issues will be
4  based on classwide circumstances.

5        Because the discovery propounded against a handful of named class members is not
6  relevant, Defendants lack justification for the substantial burden and expense it places on
7  Plaintiffs.  Fed. Rule Civ. Proc. Rule 26(b)(2)(c).

8        2)   Unnecessary Burden:  Furthermore, the discovery sought is very burdensome to
9  Plaintiffs and their counsel, particularly when considered in light of the three-judge panel's
10  very accelerated pre-trial discovery and briefing schedule and the extremely marginal
11  relevance, if any, of the discovery.  Taking depositions in prison, reviewing the medical and
12  central file records and responding to the expansive interrogatories and requests for production
13  will unreasonably burden Plaintiffs without a corresponding benefit to Defendants.  Moreover,
14  the class representatives will be placed at risk of harm and possible retaliation from other
15  prisoners, custody staff and medical staff if forced to attend depositions.

16        3)   Cumulative and Duplicative: Additionally, the information requested is likely to
17  be duplicative and repetitious of discovery Defendants can readily obtain from other sources.
18  Defendants control and maintain a plethora of evidence related to the status of care these
19  patients are receiving, including, conditions of confinement, medical records, and statements
20  from health care providers.  Defendants have obtained Plaintiffs' expert reports and have
21  prepared and submitted reports from their own experts.

22        Plaintiffs respectfully move for a protective order to prevent requests for production,
23  interrogatories, and depositions of Plata and Coleman class representatives because the burden
24  and expense of preparing named plaintiffs for depositions, and responding to the written
25  discovery propounded greatly outweighs any benefit to Defendants at this stage of the
26  proceedings.

27  ////

28  ////

### B. Defendants' Introduction

Defendants in Plata v. Schwarzenegger and Coleman v. Schwarzenegger (together "Defendants") move for an order compelling class representatives in Plata and Coleman (1) to appear for their properly noticed depostions and (2) to fully and completely respond to interrogatories and document requests. Defendants' motion to compel must be granted (and plaintiffs' motion for a protective order must be denied) because the discovery sought is relevant to plaintiffs' request for a prisoner release order and, specifically, the phase I issue before the three-judge court. Moreover, any purported burden on the class representatives, or plaintiffs' counsel, in responding the discovery at issue is minimal when compared to the prejudice to Defendants if plaintiffs are excused from responding to written discovery and appearing for their depositions. Finally, any claimed concern about "retaliation," does not justify excusing the named Plaintiffs from responding to the discovery at issue in this matter.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Statement of Facts

On October 23, 2007 Defendant Michael Genest ("Defendants") propounded twenty sets of written discovery requests -- ten sets of Requests for Production of Documents, and ten sets of Interrogatories -- on the individuals who were named as *Plata* class representatives when the lawsuit was commenced. The Interrogatories and Requests are the same for all named plaintiffs. Declaration of Alison Hardy In Support of Plaintiffs' Position in the Joint Statement ("Hardy Decl.") at 1. One sample of each is attached to the Hardy Declaration as Ex. A.

Plaintiffs objected to the Written Discovery on November 13, 2007, on the grounds that, *inter alia,* defendants seek information not relevant to this litigation nor reasonably calculated to lead to admissible evidence. *See e.g.,* Plaintiff Ray Stoderd's Response to Defendant Michael Genest's First Set of Interrogatories, attached to the Hardy Decl. as Ex. A.

On November, 7, 2007 Plaintiffs stipulated, while preserving potential objections, to permitting depositions of incarcerated persons generally so as to relieve Defendants of the necessity of court intervention, as otherwise required by Federal Rule of Civil Procedure

-4-

30(a)(2).  Hardy Decl. at 2.  Defendants served a notice of deposition on four of the ten Plata original class representatives on November 7, 2007, and an amended notice of deposition on November 14, 2007 on Mr. DeCasas, who is now out on parole, currently residing in southern California.  *Id.*  On November 17, 2007 *Coleman* Plaintiffs received a notice of deposition of Ralph Coleman.

On November 15, 16, 19, and 20, 2007 Plaintiffs and Defendants met and conferred. Hardy Decl. at 3.  Plaintiffs notified Defendants of their view that the requested discovery and depositions imposed a substantial burden on Plaintiffs who would have to coordinate almost an entire week of depositions, obtain and review medical files, and respond to a large number of interrogatories and requests for production for discovery which has virtually no value to defendants.  *Id.*  In some cases, the requests for information covered a period extending back to 2001, well before the parties settled this action.  Additionally, Defendants had requested written discovery for a named plaintiff who is deceased, and two named plaintiffs who were discharged from parole in 2005.

Defendants notified Plaintiffs that the discovery they seek from the named plaintiffs is relevant because each named class member "can presumably testify regarding the medical care and treatment that they receive(d), and the impact, if any, of crowding upon that care and treatment."  *Id.*  Defendants agreed to limit their interrogatories no. 3, 11, 12 and 13  to the period from May 2005 to the present.  *Id.*  They also agreed to withdraw the discovery served on the named plaintiff who died and for the two who have discharged parole.  The depositions of Mr. Decasas and Mr. Coleman are now scheduled for December 5, 2007, Mr. Rhoades and Mr. Stoderd for December 7, 2007, and Mr. Plata for December 13, 2007.

**B. Defendants Statement of Facts.**

Both Plata and Coleman Plaintiffs' counsel were first made aware of Defendants' intent to depose the Plaintiff class representatives during a meet and confer telephone conversation between the parties on October 15, 2007.  (Declaration of S. Tama in Support of the Parties' Joint Statement re Discovery Disputes (Decl. Tama) ¶ 2.)  Just eight days later, on October 23, 2007, Defendants' counsel personally served Plaintiffs' counsel with Defendant Genest's first

1  set of interrogatories and requests for production of documents. (Decl. Tama ¶ 3.) These

2  discovery requests were directed at the ten named Plata Plaintiff class representatives. (Id.)

3  Plaintiffs' counsel requested that Defendants permit Plaintiffs' counsel to either (1) sign the

4  verifications without obtaining their clients' signatures and not be subject to deposition by

5  Defendants, or (2) return verifications from Plaintiffs after their discovery responses are due.

6  (Id. at ¶ 5.)  In the spirit of cooperation, Defendants agreed to grant Plaintiffs a two week

7  extension to provide Defendants with the necessary verifications. (Id., Ex. B.)

8        Following up on Defendants' stated intent to depose the Plaintiff class representatives,

9  on October 30, 2007, Defendants' counsel emailed Plaintiffs' counsel in both Plata and

10  Coleman a proposed joint stipulation granting Defendants leave under Federal Rule of Civil

11  Procedure 30(a)(2) to take the Plaintiff class representatives' depositions. (Id. at ¶ 4.)

12  Plaintiffs' counsel requested that language be added into the proposed joint stipulation that

13  reserved the rights of Plaintiffs to object to any particular deposition notice. (Id. at ¶ 6.)

14  Defendants incorporated Plaintiffs' counsel request and the parties jointly filed a stipulation

15  granting Defendants leave under Rule 30(a)(2) on November 7, 2007. (Id. at ¶ 7.)  This

16  stipulation was adopted by the Court on November 8, 2007. (Id., Ex. E.)

17        After obtaining Plaintiffs' counsel's consent to the joint stipulation, Defendants noticed

18  the depositions of only four Plata Plaintiff class representatives on November 7, 2007: Paul

19  Decasas, Ray Stoderd, Leslie Rhoades, and Marcial Plata (a.k.a. Marciano Plata). (Decl. Tama

20  ¶ 8.)  One week later, on Wednesday, November 14, 2007, Plaintiffs' counsel informed

21  Defendants' counsel that in order to prepare for their clients' depositions, Plaintiffs' counsel

22  required copies of the class representatives' medical files by Monday, November 19, 2007.

23  (Id. at ¶ 9.)  Plaintiffs' counsel also requested that Defendants agree to reschedule the

24  depositions that were scheduled to occur on November 27, 2007. (Id.)  Endeavoring to

25  cooperate with Plaintiffs' counsel, Defendants agreed to permit Plaintiffs to arrange to send a

26  copy service to the relevant institutions to copy the Plaintiff class representatives' medical

27  files, despite the fact that these files are equally available to Plaintiffs at all times. (Id. at ¶ 10.)

28

1  Defendants also agreed to work with Plaintiffs to reschedule several of the depositions to a

2  time more convenient for Plaintiffs' counsel. (Id.)

3      Defendants did not receive a meet and confer letter from Plaintiffs' counsel regarding

4  Defendants' discovery requests on Plaintiff class representatives until Friday, November 16,

5  2007 – over three weeks after Defendants first served Defendants Genest's first set of

6  interrogatories and requests for production of documents, and over one week after Defendants

7  first noticed the depositions of four Plata class representatives. (See id. at ¶ 11.) In this

8  November 16, 2007 meet and confer letter, counsel for Plaintiffs, Alison Hardy, stated that she

9  wished to "discuss the specific relevance of a deposition of Mr. DeCasas as related to Phase I

10  issues . . . (and) why you seek discovery, including requests for production, interrogatories,

11  and/or depositions of all other Plata class representatives." (Decl. Tama, Ex. I.)

12      Defendants responded to Ms. Hardy's letter the following Monday, November 19,

13  2007, and agreed to withdraw the written discovery propounded on two class representatives

14  who had paroled in 2005. Although these Plaintiffs remained class representatives despite

15  their paroled status, and although Defendants explained that they believed that these class

16  representatives still have relevant information regarding their medical care while incarcerated,

17  in a good faith attempt to resolve discovery issues, Defendants agreed to withdraw those

18  requests. Defendants did not, however, agree to withdraw the written discovery and deposition

19  notices that were served on the other class representatives. (Decl. Tama ¶ 13.)

20      Specifically with regard to the discovery served on Mr. Decasas, Defendants explained

21  that he was paroled only very recently and is thus in the position to provide relevant testimony

22  regarding the medical care and treatment that he received while in custody, and the impact, if

23  any, of overcrowding upon that care and treatment. Because these topics are very clearly

24  relevant to Phase I issues, Defendants denied Ms. Hardy's request that Defendants withdraw

25  written discovery and depositions on certain named Plata class representatives. Defendants

26  also agreed to move the date of Mr. Decasas' deposition to a date proposed by Plaintiffs'

27  counsel. (Id.)

28

1  Also on Monday, November 19, 2007, Defendants continued to work with Plaintiffs'

2  counsel to accommodate their request that that they receive their clients' medical files in

3  advance of their scheduled depositions. This involved a great deal of coordination between the

4  Attorney General's Office and the various institutions where Plaintiffs are housed and/or where

5  their files are located. (Id. at ¶ 14.) It was not until the evening of November 19, 2007, that

6  Plaintiffs' counsel called Coleman Defendants' counsel, Lisa Tillman, to inform her that

7  Plaintiffs wanted to call Magistrate Moulds' clerk, Ms. Haven Gracey, at that moment to seek a

8  protective order regarding all Plaintiff class member depositions. (Id. at ¶ 15.) This was the

9  first time that Defendants were made aware that Plaintiffs would seek to prevent the class

10  member depositions, and this was prior to any meet and confer efforts between the parties on

11  this specific topic. Ms. Tillman requested that the parties meet and confer the following

12  morning so that the attorneys who had been arranging and coordinating the depositions with

13  Plaintiffs' counsel were able to participate in the telephone conversation. (Id.)

14  It was not until the following morning, on November 20, 2007, that Plaintiffs first

15  informed Defendants' counsel that their protective order would also include all written

16  discovery that Defendants propounded on the Plaintiff class representatives, despite the fact

17  that Defendants served Plaintiffs with the written discovery requests nearly one month prior,

18  on October 23, 2007, and that Plaintiffs had already responded to Defendants' discovery

19  requests. (Id. at ¶ 16.) Plaintiffs had many opportunities to alert Defendants to the fact that

20  they may seek a protective order given the numerous meet and confer conversations between

21  the parties since this proceeding began. But Plaintiffs chose to wait until one week after they

22  served Defendants with their responses to Defendant Genest's written discovery requests and

23  one month before the close of discovery to raise these issues.

24  Defendants' first attempt to meet and confer with Plaintiffs regarding their wholly

25  inadequate responses to Defendant Genest's first set of interrogatories served on the Plaintiff

26  class representatives occurred the morning of November 20, 2007, prior to the telephonic meet

27  and confer discussion between the parties later that morning on the subject of a possible

28  protective order. (Id. at ¶ 17.) Counsel for Plata Defendants, Paul Mello, sent Plaintiffs'

1  counsel an email outlining all deficiencies in Plaintiffs' responses to Defendants'

2  interrogatories, including the fact that not a single interrogatory contained a substantive

3  response, and not one document was produced. (Id., Exs. L, M, N.) Defendants even agreed

4  to limit the responsive time period in two of Defendants' interrogatories in a good faith attempt

5  at meeting and conferring. (Id.) However, an hour later during the parties' telephonic meet

6  and confer discussion regarding the class member depositions, Plaintiffs informed Defendants

7  that they would include written discovery in their motion for a protective order. (Id.)

8  **III.    ARGUMENT**

9  **A. Plaintiffs Argument:**

10  Federal Rule of Civil Procedure 26(c) provides that, upon a motion filed by a party

11  from whom discovery is sought, and for good cause, the court "may make any order which

12  justice requires to protect a party from annoyance, embarrassment, oppression or undue burden

13  or expense, including …that the…discovery not be had." Fed. R. Civ. Proc. 26(c).  Discovery

14  methods otherwise permitted under these rules *shall* be limited by the court if it determines

15  that: the discovery sought is *unreasonably cumulative or duplicative*, or is *obtainable from*

16  *some other source that is more convenient, less burdensome, or less expensive*; the party

17  seeking discovery has had *ample opportunity* by discovery in the action to obtain the

18  information sought; or the *burden or expense of the proposed discovery outweighs its likely*

19  *benefit,* taking into account the needs of the case, the amount in controversy, the parties'

20  resources, the importance of the issues at stake in the litigation, *and the importance of the*

21  *proposed discovery in resolving the issues*. Fed. Rule Civ. Proc. 26(b)(2)(C).  Courts have

22  broad discretion to grant protective orders. *McDowell v. Calderon*, 197 F.3d 1253, 1256 (9th

23  Cir. 1999); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 369 (9th Cir. 1982);

24  *Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D.Cal. 1989).

25  This discovery should not go forward, as it seeks information which is not relevant to

26  these proceedings, it imposes an undue burden, and is duplicative and cumulative of

27  information already in Defendants' possession or that can more readily be obtained through

28  other means.

### 1.  The Discovery Seeks Information Which is Not Relevant to These Proceedings.

The Federal Rules of Civil Procedure impose a limit on discovery to permit exploration only of information that is reasonably likely to lead to the discovery of admissible evidence. Fed. R. Civ. P 26(b)(i).  Where discovery sought relates to matters that are irrelevant and immaterial, a protective order barring such discovery is particularly appropriate.  *Navel Orange Administrative Committee v. Exeter Orange Company, Inc.,* 722 F.2d 449, 454 (9th Cir. 1983) (protective order granted where party seeks discovery on issues that do not constitute defenses).  See also, *Smith v. Dowson,* 158 F.R.D. 138, 140  (D. Minn. 1994) ("a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement for Rule 26(c)").

In order to manage this action, which involves 141 intervenors as well as multiple plaintiffs and defendants, the panel bifurcated these proceedings, limiting the issues in Phase 1 to whether: 1) crowding is the primary cause of the violation of the classes' Federal right to medical and mental health care; and, 2) no other relief will remedy the violation of the Federal right.  *See* Order Bifurcating Proceedings and Setting Deadlines for Phase I, October 10, 2007 and October 30, 2007 Order issued by this court.   Discovery is appropriate on these two issues, and these two issues only.

However, Defendants' discovery seeks information that is not relevant to these narrow issues. For example, the Defendants' interrogatories ask each named plaintiff:

> **INTERROGATORY NO.1:**
> Describe your medical condition.
>
> **INTERROGATORY NO.2:**
> Does Plaintiff contend that he is not receiving adequate medical care for his serious medical condition?
> . . . .
> **INTERROGATORY NO.5:**
> If the answer to interrogatory no.2 is "yes," does Plaintiff contend that overcrowding is the primary cause of Plaintiff's ability to receive adequate medical care?

**INTERROGATORY NO.6:**
    If the answer to interrogatory no.5 above is "yes," identify each and every violation of Plaintiff's right to receive adequate medical care by Defendants for which the primary cause of the violation is the size of the CDCR population.
        . . . .
**INTERROGATORY NO.8:**
    Does Plaintiff contend that no other relief, other than a prisoner release order, will remedy Plaintiff's failure to receive adequate medical care?
        . . . .
**INTERROGATORY NO.11:**
    Has Plaintiff submitted any 602/inmate appeals regarding the provision of medical care from 2001 to the date of this interrogatory?

**INTERROGATORY NO.12:**
    If the answer to interrogatory no.11 above is "yes," identify each and every 602/inmate appeal that Plaintiff submitted regarding the provision of medical care from 2001 to the date of this interrogatory.

The discovery thus asks individual plaintiffs to describe their medical condition, whether they have received adequate care for that condition and if not whether crowding is the primary cause of the failure to provide adequate care. The individual named plaintiffs' answers to these questions cannot materially advance the defense to the motion to impose a population cap on the prison system.

    First, whether or not the named plaintiffs continue to suffer harm from the constitutional violations after a class has been certified does not affect the appropriateness of granting relief to the plaintiff classes. *See Sosna v. Iowa*, 419 U.S. 393, 399-401 (1975) (the individual status of named plaintiffs is no longer relevant after the class has been certified even where the named plaintiff's claim was moot); *LaDuke v. Nelson*, 762 F.2d 1318, 1322, n.3 (9th Cir. 1989) (same); *United States Parole Commission v. Geraghty*, 445 U.S. 388, 397-98 (1980) (an action brought on behalf of a class does not become moot upon expiration of the named plaintiffs' substantive claim, even where class certification was denied). As the Ninth Circuit explained in *LaDuke,* once a final injunction is entered in favor of the entire class – and even earlier, after the class is certified – "the class acquires an independent legal status, for which

1  the representative acts in a role analogous to the private attorney general." *LaDuke,* 762 F.2d

2  at 1322, n.3 (internal citations and quotations omitted).

3         The Court has already entered injunctions in these actions, and the injunctions apply to

4  every member of the plaintiff classes comprising tens of thousands of inmates. See Hardy

5  Decl, Ex. B at para. 35, and *Coleman v. Wilson,* 912 F.Supp. at 1324. Upon entry of the

6  injunctions which expressly favor each member of the class equally, the circumstances of the

7  named class representatives ceased to have any particular relevance as each class member now

8  equally benefits from the injunction. Proof of relevant legal and factual issues will be based on

9  classwide circumstances.

10        Indeed, in a case where Defendants similarly sought discovery on all named plaintiffs,

11  one District Court held that the individual behavior of the named plaintiffs was not probative

12  of classwide questions, because "[c]onclusions drawn from the experience of this handful of

13  named parties cannot be extrapolated to represent the experience of a class of hundreds of

14  thousands of individuals of which the putative class is comprised." *In re Lucent Technologies,*

15  *Inc.,* 2002 WL 32818345 (D.N.J.). The contentions of a handful of class members that happen

16  to have been named as class representatives, out of a pool of 172,000 prisoners, are no longer

17  relevant. And since Plaintiffs do not plan to use the named plaintiffs' testimony at trial,

18  Defendants have no reason for their testimony as part of their defense.

19        Second, since it is undisputed that medical and mental health care provided to plaintiff

20  classes is unconstitutional (*see Plata* Findings of Fact and Conclusion of Law re Appointment

21  of Receiver, October 3, 2005 and *Coleman v. Wilson,* 912 F.Supp. at 1324), the individual

22  plaintiffs' answers to the discovery propounded by Defendants do not matter. Even if

23  Defendants were to prove through this discovery that none of the individual plaintiffs have

24  recently received inadequate care, and therefore that crowding did not affect their particular

25  situation, the defense would not be in a better position because the care provided to the classes

26  is inadequate. Indeed, Plaintiffs have never contended that every single prisoner in the plaintiff

27  classes receives inadequate care.

28

1    Indeed, perhaps for this reason, in the years since the class-wide injunctions were

2    entered, through all of the numerous proceedings to enforce the class members' rights under

3    the injunctions, including the appointment of a receiver to effectively take over the entire

4    medical health care system in California's prisons, it has never even been suggested that

5    depositions or discovery of the particular class members named as class plaintiffs could have

6    any further relevance.  Since the entry of the injunctions, this action has involved only class-

7    wide issues of enforcement, and depositions and discovery from this particular small group of

8    named class members sheds no light on any issue being litigated in these proceedings.  The

9    depositions and written discovery on these particular individual named plaintiffs will not

10   provide relevant information.

### 2.  Even If the Information Sought Were Relevant, the Burden and Expense This Discovery Imposes on Plaintiffs Outweigh Any Relevance

13   Any likely benefit to be derived from deposing named plaintiffs and obtaining

14   discovery regarding their individual contentions and circumstances is outweighed by the

15   burden and expense that will be incurred.   Fed. Rule Civ. P. Rule 26(b)(2)(c); see also *Baratta*

16   *v. Homeland Housewares*, 242 F.R.D. 641, 642 (S.D. Fla., 2007) ("When evaluating whether a

17   movant has satisfied his burden of establishing 'good cause' for a protective order preventing a

18   deposition, a court should balance the non-moving party's interest in obtaining discovery and

19   preparing for trial against the moving party's proffer of harm that would result from the

20   deposition.").

21   Here, post-injunction, the balancing test clearly favors Plaintiffs' position.  The burden

22   imposed by requiring responses to seven sets of interrogatories, seven sets of requests for

23   production of documents, and four depositions of incarcerated people and one of a parolee,

24   sharply outweighs the very limited interests the Defendants have in acquiring information on a

25   handful of individual class members whose experiences in recent years may or may not be

26   representative of the experiences of the tens of thousands of class members.

27   The taking of depositions in the correctional setting involves a unique and significant

28   effort of coordination between parties and institutional staff.  The burden and expense includes:

-13-

1  ensuring that the patients' medical concerns are addressed during the deposition; arranging for

2  the escort of the prisoner to the deposition room; assurance by staff that safety and security is

3  not compromised by the presence of visitors at the institution; corresponding with class

4  members using the prison mail system which sometimes involves significant delay in the

5  receipt and return of correspondence; travel to the institution for review of medical and central

6  files; and travel throughout the state to meet in advance with each deponent at the institutions

7  in which they reside. Hardy Decl. at 6.

8       Further, taking the depositions could subject the class representatives to retaliation by

9  other inmates and staff, including verbal and/or physical threats. Indeed, Plaintiffs' attorneys

10  have already received reports of harassment of at least one named plaintiff because of his

11  participation in this case. Hardy Decl. at 7. Taking these individuals out of their daily routine

12  to attend an all day deposition will draw unwanted attention to them and thus increase the

13  possibility of further violence and  hostility on the individual being deposed. And all this for

14  evidence that is not relevant to these proceedings.

15       Answering and verifying written discovery, in the prison setting, on seven sets of

16  written discovery requests are also uniquely labor intensive on plaintiffs and their attorneys.

17  The coordination required to copy and review medical and central files (which are under

18  defendants' control) can be extremely difficult. Files are sometimes unavailable or are being

19  utilized by clinical and correctional staff. Hardy Decl. at 8. Plaintiffs will have to expend a

20  significant amount of precious time and resources reviewing years of medical and central files

21  about care these patients have received and the outcome of perhaps dozens of 602s

22  administrative appeals the patient has filed. *Id.* Prisoner legal mail is processed in accordance

23  with the normal institutional mail procedures, which often can result in significant delays. *Id.*

24  Plaintiffs' attorneys therefore may need to travel to institutions in order to obtain documents,

25  meet with clients to ensure that they understand the nature of the discovery requests to which

26  they are responding and to obtain verifications. *Id.* Unlike practice in the non-correctional

27  setting, plaintiffs do not have the ability to send documents to or converse with clients at will,

28  for example, over the telephone, email or fax. *Id.*

1  As set forth above, the discovery sought is not relevant to this stage of the proceedings.

2  As such, the benefit of the information to Defendants is greatly outweighed by the burden

3  required to respond to it.

### 3. Defendants' Discovery on Named Plaintiffs Is Unreasonably Cumulative and Duplicative.

6  Rule 26(c) provides that discovery shall be limited by this court where the discovery

7  sought is unreasonably cumulative or duplicative, or is obtainable from some other source that

8  is more convenient, less burdensome, or less expensive. The Court should balance the need for

9  the information against the burden imposed on the party asked to produce it, and this decision

10  involves consideration of whether the information is available from any other source. 9A

11  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d Ed. 1995);

12  *Ameristar Jet Charter Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192-93 (1st Cir. 2001) (in

13  determining whether production poses an undue burden, the court should consider the burden

14  placed on the producing party and whether the information can be obtained from more

15  convenient sources).

16  Discovery on named plaintiffs is unreasonably cumulative and duplicative: Defendants

17  have unfettered access to information regarding the medical histories, quality of care, and

18  prison conditions of named plaintiffs as they do of any class member residing in their facilities.

19  Defendants maintain and control information regarding every aspect of every class

20  representative's access to care, medical history, and conditions of confinement. They maintain

21  overcrowding reports. Defendants also have other far more convenient avenues and ample

22  opportunity to obtain information that would be relevant to this stage of the proceedings such

23  as by conducting expert tours.

24  ////

25  ////

26  ////

27  ////

28  ////

JOINT STATEMENT REGARDING DISPUTE OF DISCOVERY,
NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

**B. Defendants' Argument**

**1. The Named Plaintiffs Are Obligated To Respond To Discovery.**

The named Plaintiffs are the representatives of the class of inmates whose rights are being prosecuted in this action, and their job is to participate in the action on behalf of the absent class members. As such, "[n]amed Plaintiffs are always parties subject to discovery, while absent class members are not subject to discovery except under special circumstances." (*In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260 (N.D. Ill. 1979).) Special Master Stephen J. Pollak for the U.S. District Court for the District of Columbia relied on this rule to order all 25 named Plaintiffs in *In re Vitamin Antitrust Litigation* to respond to discovery requests, reasoning:

> Each of these 25 plaintiffs had a choice to be named as a party or to be one of the unnamed members of the class. Each affirmatively chose to be a named plaintiff with such rights and obligations as that status entails. One of the obligations is to respond as a party to discovery as provided by *Fed. R. Civ. P. 26* and *34*. Whatever limitations the Court's Case Management Order may impose respecting the management of discovery, it does not eliminate all the rights these plaintiffs have as named parties, and none of those seeking to be excused from responding to discovery has asked to be dismissed as a named party or offered to give up the rights possessed by such parties.

(2000 U.S. Dist. LEXIS 20962.)

Here, Defendants have propounded interrogatories, document requests, and a deposition notice to each of *the named Plaintiffs*, *not* to absent class members. Responding to discovery is an obligation each of the named Plaintiffs took on when they chose to become and to continue as a class representative. There should be no question that the individual named Plaintiffs must respond to discovery, including submitting to a deposition.

////

////

////

### 2. The Requested Discovery Is Relevant To Plaintiffs' Request For A Prisoner Release Order.

Defendants are entitled to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." (FRCP Rule 26(b)(1).) Here, Plaintiffs claim that the Stipulated Injunction entered on June 13, 2002, and the appointment of a Receiver since February 14, 2006 to oversee delivery of medical care in California's prisons are not adequate to solve the problem of unconstitutional medical care. Plaintiffs now seek new and additional relief in the form of a "prisoner release order", which requires them to prove two things: (1) that crowding is the primary cause of the unconstitutional delivery of medical care; and (2) no relief other than a prisoner release order will remedy the unconstitutional delivery of medical care. (18 U.S.C. § 3626.)

Defendants seek written discovery from the named individual Plaintiffs that is directly relevant to these two issues, asking for information about Plaintiffs' need for medical care, the quality of services Plaintiffs have received since May 2005, and whether Plaintiffs contend that overcrowding is "the primary cause" of the inadequacies, if any, in care Plaintiffs have received and that a prisoner release order is the only remedy.

Plaintiffs have no legitimate reason for refusing to respond to discovery Defendants' written discovery requests, particularly as modified in Defendants' good faith meet and confer efforts. As class representatives, the named Plaintiffs' claims are purportedly "typical" of those of the unnamed class members. (FRCP Rule 23(a)(3).) The named Plaintiffs are also first-hand witnesses to the conditions of which they complain. Defendant Genest's written requests are straight-forward and appropriately focused on the issues presented by Plaintiffs' new request for relief. Defendant Genest is entitled to verified substantive responses to his interrogatories and related document requests.

////

////

### 3. A Claimed Concern About "Retaliation" Does Not Justify Excusing The Named Plaintiffs From Their Legal Obligation To Respond To Discovery.

Plaintiffs' claimed concern about "retaliation" if the named Plaintiffs respond to discovery is a pretext at best. The fact that the named Plaintiffs have been prosecuting a lawsuit against the CDCR and are now seeking a "prisoner release" order is a matter of public record, as are the identities of the named Plaintiffs. By complying with their legal obligation to respond to discovery, the named Plaintiffs expose themselves to no more risk than by bringing suit in the first place. Further, the CCPOA has joined in the request for a prisoner release order, so its members presumably support the named Plaintiffs' efforts to obtain a prisoner release order. Last, any arguable concern about "retaliation" can be addressed by the parties agreeing not to disclose the named Plaintiffs' written discovery responses and deposition transcripts to prison staff. Defendants are willing to so stipulate.

## IV. CONCLUSION

### A. Plaintiffs' Conclusion

Defendants' Written Discovery and Deposition Notices served on named plaintiffs in Plata and Coleman are not reasonably likely to lead to the discovery of admissible evidence. A protective order is necessary to prevent the unnecessary burden responding to this discovery will impose on plaintiffs.

### B. Defendants' Conclusion

In light of Plaintiffs' obligation to respond to discovery and participate in the prosecution of this action, especially when viewed against the tremendous disadvantage to Defendants should they not be permitted to seek discovery from the named Plaintiffs in this matter, Defendants respectfully request that this Court require Plaintiffs to respond with substantive answers to Defendants' discovery requests directed at the Plaintiff class representatives, and further require the class representatives to attend and cooperate in their depositions. Defendants specifically request that this Court order Plaintiffs to respond with substantive supplemental answers to Defendant Genest's first set of interrogatories and

1  requests for production of documents no later than Thursday, November 29, 2007, such that

2  Defendants are able to review Plaintiffs' responses and produced documents at least one week

3  before the class representative depositions which are scheduled to commence on December 6,

4  2007.

5  Dated:  November 26, 2007                    Respectfully submitted,

6

7

8                                                        /s/ Vibeke Martin
                                                     Vibeke Norgaard Martin
                                                     Prison Law Office
9                                                    Attorneys for Plaintiffs

10

11  Dated:  November 26, 2007                    Respectfully submitted,

12

13

14                                                        /s/  Amy Whelan
                                                     Amy Whelan
15                                                   Rosen, Bien & Galvan
                                                     Attorneys for Plaintiffs
16

17

18
    Dated:  November 26, 2007                    Respectfully submitted,
19

20

21                                                        /s/ Samantha Tama
                                                     Samantha D. Tama
22                                                   Deputy Attorney General
                                                     Attorneys for Defendants
23

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

### Coleman v. Schwarzenegger - Case No 2:90-cv-00520 LKK JFM P

### Plata v. Schwarzenegger - Case No. C01-1351 TEH

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 26, 2007**, I served the attached

### JOINT STATEMENT REGARDING DISPUTE DISCOVERY

### DECLARATION OF SAMANTHA TAMA IN SUPPORT OF THE PARTIES' JOINT STATEMENT REGARDING DISCOVERY DISPUTES

### DECLARATION OF ALISON HARDY IN SUPPORT OF PLAINTIFFS' POSITION IN THE JOINT STATEMENT

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**John Hagar**
**Law Office of John Hagar**
**PMB 314**
**1819 Polk Street**
**San Francisco, CA 94109**
(For Special Master)

**Robert Sillen**
**California Prison Receivership**
**1731 Technology Drive, Suite 700**
**San Jose, CA 95110**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 26, 2007**, at San Francisco, California.

| J. Palomino | | |
| --- | --- | --- |
| Declarant | | Signature |

1