PRISON LAW OFFICE
DONALD SPECTER #83925
STEVEN FAMA #99641
ALISON HARDY #135966
General Delivery
San Quentin, CA 94064
Telephone: (415) 457-9144
Facsimile: (415) 457-9151

BINGHAM McCUTCHEN
WARREN E. GEORGE #53588
Three Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

Plaintiffs

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

No. C01-1351 TEH

**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE RE CONSTRUCTION AGREEMENT**

I.

**THE AGREEMENT SHOULD BE MODIFIED TO REQUIRE THAT THE RECEIVER LICENSE THE MEDICAL BEDS PURSUANT TO STATE LAW**

State law prohibits any department of the state from establishing and operating a "health facility" without first obtaining a license. Cal. Health and Safety Code, § 1253(a). A "health facility" is defined as any place that is operated for the diagnoses, care,

No. C-01-1351
Pltffs' Response To OSC Re
Construction Agreement

prevention and treatment of human illness [...] to which persons are admitted for a 24-hour stay or longer and includes general acute care hospitals, skilled nursing facilities, and correctional treatment centers. Cal. Health and Safety Code, § 1250. In addition, a current state court order enjoins the CDCR from providing inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services in any unlicensed "health facility," [...] and in any "outpatient housing unit," as that term is defined in Cal. Code of Regulations Title 22, § 79555. (*Budd v. Cambra*, San Francisco Sup. Ct., No. 319578, Order Granting Plaintiffs Motion for Summary Judgement and Permanent Injunction and Entering Judgement, August 2, 2002, at 1, attached hereto as Exhibit A.)[1]

The Receiver proposes to construct 5,000 medical beds and 5,000 mental health beds. The mental health beds will be licensed according to state law, but most of the medical beds will not. No reason is given for the decision not to obtain a license for the medical beds, no other standards are provided and there is no explanation of why medical beds are being treated differently than mental health beds. Plaintiffs object to the agreement to the extent that it would authorize the Receiver to build any medical beds without conforming to state licensing requirements and court orders enforcing those requirements.

Plaintiffs see no purpose in side-stepping state licensing laws in the construction, operation and management of these proposed facilities. State licensing laws, which

---

[1] A license is not necessary to operate an Outpatient Housing Unit (OHU) which is defined as a housing unit [...] established to retain inmates who require special housing for security or protection. Typically, these are inmates whose health condition would not normally warrant admission to a licensed heath care facility and for whom housing in the general population may place them at personal or security risk. (California Code of Regulations Title 22, section 7955.) OHU residents may only receive outpatient health services and assistance with the activities of daily living without requiring a license. (Id.) There is no suggestion in the agreement that medical beds will be for outpatient services.

No. C-01-1351
Pltffs' Response To OSC Re
Construction Agreement                    2

mandate specific staffing, facility, equipment and policies, are designed for the protection of prisoner patients and staff. Moreover, the goal of the Receivership is to return these facilities back to the state. However, they will not be usable by the state without a license. It would be a gross waste of resources to spend hundreds of millions of dollars on a facility that will not be built and operated in a manner consistent with state law. Presumably, this is why the mental health beds (which will always be operated by the state) will be licensed.

The Receiver may seek a waiver of state law in an effort to open these facilities without obtaining the required state licenses. 18 U.S.C. § 3626(a)(1)(B). However, any waiver must be sought through a properly noticed motion in this court, providing the parties an adequate opportunity to respond. A state law waiver cannot be granted simply in response to the Receiver's proposed construction agreement. As such, Plaintiffs oppose what appears in this case to be an effort by the Receiver to avoid state licensing requirements for thousands of proposed medical beds.

## II.

**APPROVAL OF THE AGREEMENT SHOULD BE CONDITIONED UPON PLAINTIFFS' MEANINGFUL PARTICIPATION IN THE CONSTRUCTION PROCESSES**

While the coordination process to date has been at least somewhat inclusive of court representatives in each case – an important first step – the coordination process does not provide for any input from Plaintiffs whatsoever. In other words, while the Defendants actively participate in the construction planning efforts, Plaintiffs are left to piece together what progress may have been made months after the fact. Indeed, Plaintiffs are the only stakeholders absent from the table during these important coordination discussions and decisions. The Receiver's proposed construction projects at

No. C-01-1351
Pltffs' Response To OSC Re
Construction Agreement                    3

Avenal State Prison and the California Training Facility at Soledad demonstrates this problem. *See* Docket Nos. 941 and 942. Although the plans for Avenal were finalized on *August 28, 2007*, plaintiffs did not receive them until they were provided to plaintiffs by prison officials while they were conducting discovery at the prison at the end of October. Although the wardens, the chief medical officers, and high ranking CDCR officials apparently participated in the process (see Dkt. Nos. 941 at 5; 942 at 5), Plaintiffs were completely excluded and had no opportunity to review it. In other words, the only party excluded from this process was the one for whose benefit the entire project was undertaken.

Avenal and Soledad are but two of 33 prisons to be surveyed for interim construction projects. The Receiver expects the planning process to take an additional two years to complete. *See* Docket No. 929 at 27. These interim projects are critical to any effort to provide minimally adequate care to the *Plata* class. As the licensing issue discussed above makes clear, the Construction Agreement does not provide the necessary process to assure that Plaintiffs and the Court are fully informed about the scope and details of the interim projects to assure that the needs of the class are fairly and adequately addressed.

Accordingly, the Courts should not approve the coordinated Construction Agreement unless Plaintiffs' counsel are permitted to meaningfully participate in the process. Plaintiffs suggest that the Court direct Mr. Babcock to work with the parties to ensure an efficient and meaningful process.

No. C-01-1351
Pltffs' Response To OSC Re
Construction Agreement         4

## CONCLUSION

For the reasons stated above, the Court should not approve the Coordinated Construction Agreement unless it is modified to require licensing of medical beds and the Court should direct the Receiver and the parties to work with Mr. Babcock on the construction planning process.

Dated: November 26, 2007

Respectfully submitted,

/s/
Donald Specter
Attorney for Plaintiffs

No. C-01-1351
Pltffs' Response To OSC Re
Construction Agreement                              5

# EXHIBIT A

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

FILED
San Francisco County Superior Court
NOV 1 5 2002
GORDON PARK-LI, Clerk
Deputy Clerk

DIANE BUDD, M.D., and WILLIAM-ZAKEE McGILL, M.D., as individuals and taxpayers,

Plaintiffs,

v.

STEVEN CAMBRA, JR., in his official capacity as Acting Director, California Department of Corrections, SUSANN J. STEINBERG, M.D., in her official capacity as Deputy Director, California Department of Corrections Health Care Services Division; and DOES 1 through 50 inclusive,

Defendants.

Case No. 319578

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND ENTERING JUDGMENT

Hearing
Date:   August 2, 2002
Time:   9:30 a.m.
Dept.:  302

HONORABLE A. JAMES ROBERTSON II

Action Filed: March 13, 2001
Trial Date: None

Pursuant to this Court's order granting plaintiffs' motion for summary judgment, the Court hereby finds that defendants are not in compliance with licensing requirements for health care facilities providing inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services, in violation of Health and Safety Code sections 1253.

Therefore, IT IS HEREBY ORDERED that:

1. Except as specifically stated in this order, defendants, their agents, employees and successors in interest are enjoined from providing inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services in any unlicensed "health facility," as that term is defined in section 1250 of the Health and Safety Code, and in any "outpatient housing unit," as that term is defined in Code of Regulations Title 22, section 79555, a definition adopted by defendants and which is hereby deemed to apply to them. However, to facilitate safe transfer of prisoners, defendants may provide inpatient health

1

services to that portion of the inmate population who do not require a general acute care level of basic services in an outpatient housing unit for up to, but no more than, twenty-four (24) hours after the doctor, psychiatrist, or psychologist refers the inmate for transfer to a facility permitted to provide inpatient health services. When inpatient health services are first provided, medical staff shall promptly inform custody staff of the need to transfer the prisoner to a licensed facility capable of providing the necessary level of care.

2. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Centers located at California State Prison-Sacramento and Pelican Bay State Prison until October 31, 2002.

3. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at California State Prison-Los Angeles County until November 30, 2002.

4. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at Richard J. Donovan Correctional Facility until January 29, 2003, provided that throughout that time defendants transfer any prisoner requiring inpatient health services to a licensed community health care facility whenever the Correctional Treatment Center at Richard J. Donovan Correctional Facility cannot provide substantially equivalent care to that provided at a licensed inpatient health care facility. Any such transfer shall take place within twenty-four (24) hours after the doctor, psychiatrist, or psychologist refers the inmate for transfer to a facility permitted to provide inpatient health services. When inpatient health services are

2

Budd v. Cambra, Case No. 319578
ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND ENTERING JUDGMENT

first provided, medical staff shall promptly inform custody staff of the need to transfer the prisoner to a licensed facility capable of providing the necessary level of care.

5. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at Centinela State Prison until April 30, 2003.

6. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at Mule Creek State Prison until June 30, 2003.

7. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at North Kern State Prison until July 31, 2003.

8. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at California Institute for Women until November 30, 2003.

9. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at California State Prison-Solano until June 30, 2004, provided that throughout that time defendants transfer any prisoner requiring inpatient health services to a licensed community health care facility whenever the Correctional Treatment Center at California State Prison-Solano cannot provide substantially equivalent care to that provided at a licensed inpatient health care facility. Any such transfer shall take place within twenty-four (24) hours after the doctor, psychiatrist, or psychologist refers the inmate for transfer to a facility permitted to provide impatient health services. When inpatient health services are first provided,

3

*Budd v. Cambra*, Case No. 319578
ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND ENTERING JUDGMENT

medical staff shall promptly inform custody staff of the need to transfer the prisoner to a licensed facility capable of providing the necessary level of care.

10. Defendants may provide inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services at the Correctional Treatment Center located at Ironwood State Prison until 210 days after completion of construction of the Correctional Treatment Center. Within 30 days of the award of the bid for construction for this Correctional Treatment Center, defendants shall confer with plaintiffs and together determine, and notify the Court of, a specific date for compliance.

11. Either party may move the Court to modify this order. However, neither party may move for modification without first meeting and conferring with the opposing party in a good faith effort to informally resolve any dispute. Both parties reserve the right to object to any proposed modification.

12. The Court shall retain jurisdiction to enforce the terms of this Order.

13. By this Court's September 27, 2002, order pursuant to Code of Civil Procedure 533, this injunction is modified to require defendants to maintain appropriate staffing levels while providing inpatient health services at all Correctional Treatment Centers subject to this order.

The Court hereby ENTERS judgment in this action in favor of plaintiffs.

IT IS SO ORDERED.

Dated: November 14, 2002

Honorable A. James Robertson II
Judge of the Superior Court

4

*Budd v. Cambra*, Case No. 319578
ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND ENTERING JUDGMENT