1  PRISON LAW OFFICE
   DONALD SPECTER Bar No.: 83925
2  STEVEN FAMA Bar No.: 99641
   E. IVAN TRUJILLO Bar No.: 228790
3  General Delivery
   San Quentin, California  94964
   Telephone: (415) 457-9144
4
   ROSEN, BIEN & GALVAN, LLP
5  MICHAEL W. BIEN Bar No.: 096891
   JANE E. KAHN Bar No.: 112239
6  AMY WHELAN Bar No.: 215675
   LORI RIFKIN Bar No.: 244081
7  SARAH M. LAUBACH Bar No.: 240526
   315 Montgomery Street, 10th Floor
8  San Francisco, California  94104
   Telephone: (415) 433-6830
9
   THE LEGAL AID SOCIETY –
10 EMPLOYMENT LAW CENTER
   CLAUDIA CENTER Bar No.: 158255
11 LEWIS BOSSING Bar No.: 227402
   600 Harrison Street, Suite 120
12 San Francisco, CA  94107
   Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | ) No.: Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | ) **THREE-JUDGE COURT** |
| vs. | ) |
| ARNOLD SCHWARZENEGGER, et al., | ) |
| Defendants. | ) |
| MARCIANO PLATA ,et al., | ) No. C01-1351 TEH |
| Plaintiffs, | ) **PLAINTIFFS' MEMORANDUM IN** |
| vs. | ) **SUPPORT OF MOTION TO COMPEL** |
|  | ) **PRODUCTION OF DOCUMENTS** |
| ARNOLD SCHWARZENEGGER, et al., | ) |
| vs. | ) Date:        December 6, 2007 |
| Defendants. | ) Time:        2:00 p.m. |
|  | ) Place:       Courtroom 26 |
|  | ) Judge:       Hon. John F. Moulds, |
|  |    Magistrate Judge |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL POSTURE ................................................................................ 6

       A.    The Parties Have Completed Meeting And Conferring Regarding The
             Issues Of Privilege ................................................................................... 6

       B.    The Court Has Already Ordered The Documents To Be Submitted For In
             Camera Review And The Issues Of Privilege Are Ripe For Resolution ............... 8

III.   ARGUMENT ..................................................................................................... 10

       A.    Defendants' Assertions Of Privilege Are Facially Inadequate ........................... 10

             1.    Defendants Have Frivolously Asserted Privilege For A Large
                   Number Of Documents And Failed To Act Reasonably To Correct
                   These Errors ................................................................................. 10

             2.    Defendants Have Failed To Meet Their Burden Under The Federal
                   Rules To Adequately Identify Documents And Establish A
                   Sufficient Basis For Asserting Privilege ............................................ 11

       B.    Defendants Have Failed To Establish That The Deliberative Process
             Privilege Applies Or Justifies Withholding The Documents ............................. 13

             1.    Defendants Assert Deliberative Process Privilege For Categories
                   Of Documents Outside The Scope Of The Privilege ............................. 16

       C.    Even If The Deliberative Process Standard Is Satisfied For Some Of The
             Documents, The Documents Should Be Produced In This Case Because
             Defendants Have Put Their Deliberative Processes At Issue And Because
             Plaintiffs' Need For The Documents Overrides The Government Interest ............. 18

             1.    Defendants Have Put Their Deliberative Processes At Issue In This
                   Case And The Documents They Have Withheld Are Highly
                   Relevant To These Processes ........................................................... 18

             2.    Even If The Documents Were To Satisfy The Deliberative And
                   Predecisional Requirements, Plaintiffs' Need For The Materials
                   Greatly Outweighs The Government's Minimal Interest In Non-
                   Disclosure ................................................................................... 21

       D.    Defendants Have Failed To Establish That The Other Privileges They
             Asserted Apply Or Justify The Withholding Of Documents .............................. 23

             1.    Defendants Have Failed To Establish That The Attorney-Client
                   Privilege Applies Or Justifies The Withholding Of Documents ............... 23

             2.    Defendants Have Failed To Establish That The Attorney Work
                   Product Privilege Applies Or Justifies The Withholding Of
                   Documents ................................................................................... 25

3.    Defendants Have Failed To Establish That The Official Information Privilege Applies Or Justifies The Withholding Of Documents ...................................................................... 26

4.    Defendants Have Failed To Establish That Protections Based On Privacy Rights Apply Or Justify The Withholding Of Documents ........... 28

E.    Defendants' Overbroad Privilege Claims Are Abusive Of The Discovery Process, Impermissibly Shift Defendants' Burden To Assert Privilege To Plaintiffs And The Court, And Should Be Held To Constitute A Waiver Of Privilege .......................................................................... 30

1.    Defendants Have Unreasonably And Impermissibly Used Overbroad Assertions Of Privilege To Withhold And Delay Responsive Documents From Production ............................... 32

2.    Given Defendants' Abuse Of The Process And The Short Timeframe Of These Proceedings, This Court Should Order Defendants To Immediately Produce All Documents In The Privilege Logs .......................................................................... 33

IV.    CONCLUSION ...................................................................... 35

-ii-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents, Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Woodford*,
2007 WL 309945 (E.D. Cal. Jan. 30, 2007) ............................................................ 13, 15

*Assembly of State of Cal. v. United States Dept. of Commerce*,
968 F.2d 916 (9th Cir. 1992) ........................................................................................ 14

*Barclaysamerican Corp. v. Kane*,
746 F.2d 653 (10th Cir. 1984) ..................................................................................... 30

*Barta v. City & County of Honolulu*,
169 F.R.D. 132 (D. Hi. 1996) ...................................................................................... 28

*Bhan v. NME Hosps.*,
929 F.2d 1404 (9th Cir. 1991) ..................................................................................... 34

*Binion v. Dept. of Justice*,
695 F.2d 1189 (9th Cir. 1983) ..................................................................................... 27

*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for Dist. of Mont.*,
408 F.3d 1142 (9th Cir. 2005) ..................................................................................... 33

*Chism v. County of San Bernadino*,
159 F.R.D. 531 (C.D. Cal. 1994) ...................................................................... 26, 27, 28

*Clarke v. Am. Commerce Nat'l Bank*,
974 F.2d 127129 (9th Cir. 1992) ................................................................................. 23

*Coastal Corp. v. Duncan*,
86 F.R.D. 514 (D. Del. 1980) ...................................................................................... 13

*Coastal States Gas Corp. v. Dept. of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ..................................................................................... 17

*Coleman v. Schwarzenegger*,
No. CIV S-90-0520 LKK-JFM ................................................................................. 3, 18

*EPA v. Mink*,
410 U.S. 73 (1973) ....................................................................................................... 17

*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*,
136 F.R.D. 179 (E.D. Cal. 1991) ........................................................................... 31, 33

*Fisher v. United States*,
425 U.S. 391 (1976) ..................................................................................................... 23

*Fru-Con Constr. Corp. v. Sacramento Municipal Utility Distr.*,
2006 WL 2255538 (E.D. Cal. Aug. 7, 2006) ............................................................... 24

*FTC v. Warner Commc'ns, Inc.*,
742 F.2d 1156 (9th Cir. 1984) ........................................................................... 5, 20, 21

-iii-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents,
Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001)..................................................................... 23

*Greenpeace v. Nat'l Marine Fisheries Serv.,*
    198 F.R.D. 540 (W.D. Wash. 2000)............................................................ 27

*Griffith v. Davis,*
    161 F.R.D. 687 (C.D. Cal. 1995) ................................................................ 25

*Hampton v. City of San Diego,*
    147 F.R.D. 227 (S.D. Cal. 1993).................................................................. 26

*Henry v. Sneiders,*
    490 F.2d 315 (9th Cir. 1974)....................................................................... 34

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir.1997) ..................................................................... 14

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,*
    145 F.3d 1422 (D.C. Cir. 1998) .................................................................. 18

*In re Uranium Antitrust Litig.,*
    552 F. Supp. 517 (N.D. Ill. 1982) ......................................................... 11, 31

*Kelly v. City of San Jose,*
    114 F.R.D. 653 (N.D. Cal. 1987) ............................................................... 26

*Kintera, Inc. v. Convio, Inc.,*
    219 F.R.D. 503 (S.D. Cal. 2003)................................................................. 25

*L.H. v. Schwarzenegger,*
    2007 WL 2009807 (E.D. Cal. July 6, 2007) ..................................... 15, 20, 21

*Long v. I.R.S.,*
    742 F.2d 1173 (9th Cir. 1984)..................................................................... 17

*Miller v. Pancucci,*
    141 F.R.D. 292 (C.D. Cal. 1992) .......................................................... 26, 27

*N. Pacifica, LLC v. City of Pacifica,*
    274 F. Supp. 2d 1118 (N.D. Cal. 2003) ........................................... 14, 15, 22

*Nat'l Wildlife Federation v. United States Forest Serv.,*
    861 F.2d 1114 (9th Cir. 1988)..................................................................... 14

*NLRB v. Sears Roebuck & Co.,*
    421 U.S. 132 (1975) .............................................................................. 14, 22

*Premium Serv. Corp. v. Sperry & Hutchinson Co.,*
    511 F.2d 225 (9th Cir. 1975)....................................................................... 28

*Ragge v. MCA/Universal Studios,*
    165 F.R.D. 601 (C.D. Cal. 1995) .......................................................... 28, 29

*Resolution Trust Corp. v. Diamond*,
    773 F. Supp. 597 (S.D.N.Y. 1991) .......................................................... 13

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ............................................................... 28

*Unigard Security Ins. Co. v. Lakewood Eng. & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ................................................................. 34

*United States v. Abrahams*,
    905 F.2d 1276 (9th Cir. 1990) ............................................................... 23

*United States v. Chen*,
    99 F.3d 14951501 (9th Cir. 1996) ........................................................ 24

*United States v. Constr. Prods. Res., Inc.*,
    73 F.3d 464 (2d Cir. 1996) .................................................................... 11

*United States v. Grace*,
    455 F. Supp. 2d 1140 (D. Mont. 2006) ................................................. 24

*United States v. Gray*,
    876 F.2d 1411 (9th Cir. 1989) ......................................................... 13, 30

*United States v. Jose*,
    131 F.3d 1325 (9th Cir. 1997) ............................................................... 23

*United States v. O'Neill*,
    619 F.2d 222 (3d Cir. 1980) .................................................................. 10

*United States v. Phoenix Union High School*,
    681 F.2d 1235 (9th Cir. 1982) ............................................................... 21

*United States v. Reynolds*,
    345 U.S. 1 (1953) ................................................................................. 13

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ..................................................... 12, 21

*von Bulow by Auersperg v. von Bulow*,
    811 F.2d 136144 (2d Cir. 1987) ........................................................... 30

**<u>STATUTES</u>**

18 U.S.C. § 3626 ......................................................................................... 1

**<u>RULES</u>**

Federal Rule of Civil Procedure 26(a)5 ........................................................ 3

Federal Rule of Civil Procedure 26(a)(5)(A) ............................................... 11

Federal Rule of Civil Procedure 26(b)(3) ............................................. 25, 29

Federal Rule of Civil Procedure 26(b)(5) .................................................... 28

-v-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents,
Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

1

## I.   INTRODUCTION

2

3        On October 4, 2006, Governor Schwarzenegger declared that "a State of Emergency

4  exists within the State of California's prison system."  Declaration of Lori Rifkin In Support Of

5  Plaintiffs' Motion to Compel ¶ 2, Exh. A.  The Governor warned:  "[C]onditions of extreme

6  peril to the safety of persons and property exist in the 29 CDCR prisons identified [in the

7  proclamation], due to severe overcrowding, and that the magnitude of circumstances exceeds

8  the capabilities of the services, personnel, equipment, and facilities of any geographical area in

9  this state."  *Id.*  More than one year later, on November 9, 2007, in response to the

10 interrogatory, "Do you contend that the state of emergency in the California prison system that

11 you declared, pursuant to your October 4, 2006 overcrowding proclamation, is now over?" the

12 Governor answered:  "No, the Governor has not terminated the Emergency Proclamation, and

13 his administration continues to aggressively use the emergency authority to address

14 overcrowding in ways that are less intrusive than a prisoner release order."  Rifkin Decl. ¶ 3,

15 Exh. B at 4:8-11.  At present, the overcrowding crisis continues unabated.  Also continuing

16 unabated are intolerable violations of the constitutional rights of prisoners throughout the state

17 to adequate medical and mental health care.  Human beings with serious medical illness and

18 serious mental illness  in the 33 prisons in California continue to be warehoused and placed in

19 grave danger without access to the minimal level of treatment required by the Constitution.

20       On July 23, 2007, two federal district courts separately granted plaintiffs' motions in

21 *Coleman v. Schwarzenegger* and *Plata v. Schwarzenegger* to convene a Three-Judge Panel to

22 limit the prison population.  These motions were made, pursuant to 18 U.S.C. § 3626, on

23 behalf of classes of inmates with serious medical and mental illness whose constitutional rights

24 to adequate care were being—and continue to be—egregiously violated, despite years of court

25 orders directed at remedying these violations.  *See* 7/23/07 Orders.  Plaintiffs contend that the

26 overcrowding crisis described in detail by the Governor in his Prison Overcrowding State of

27 Emergency Proclamation is presently the primary cause of defendants' failure to deliver

28 constitutionally adequate medical and mental health care.  Plaintiffs have moved for a prisoner

release order, arguing that without a reduction in the prison population, defendants will be unable to remedy their violations of plaintiffs' constitutional rights. The proceedings in both cases have been consolidated before a single Three-Judge Panel. The PLRA requires that this Court enter a prisoner release order only if it finds by clear and convincing evidence that i) crowding is the primary cause of the violation of the constitutional rights of the *Coleman* and *Plata* classes to adequate health care; and ii) no other relief will remedy the violation of these rights.

In briefing before the district courts, and in their answers to plaintiffs' discovery requests, defendants have thus far contended that the size of the overall CDCR inmate population is not the primary cause of these violations, and that there are "[m]ultiple causes at play." In response to *Coleman* plaintiffs' interrogatories, defendants have identified some of these causes as defendants' administrative and systemic failures to recruit and retain staff, employ a viable information technology system, pay staff adequately, plan for and provide mental health beds at appropriate treatment and custody levels, and appropriately forecast the mental health population. Rifkin Decl. ¶ 3, Exh. C at 5:1-8; *see also* Defs.' Suppl. Brief in Opp. to Pls.' Motion for Referral to Three-Judge Panel ("Defs.' Suppl. Brief"), *Coleman* Docket No. 2238 at 18:2-4 ("Plaintiffs cannot meet their burden because the evidence establishes that the problems with the mental health care system are primarily administrative problems."). Defendants have argued in these proceedings that they are currently engaged in efforts that will provide relief for the constitutional violations such as the implementation of appropriate mental health care policies and procedures, recruitment of qualified clinicians, and planning for and construction of appropriate medical and mental health beds. Defs.' Suppl. Brief at 4-8. Defendants also contend, as illustrated by the Governor's response quoted above, that they are currently implementing policies that address overcrowding, and therefore, a prisoner release order should not be issued. In previous briefing, defendants have identified these efforts to address overcrowding as the AB 900 prison construction plan, out of state transfers, and administrative parole changes. Defs.' Suppl. Brief at 10-19.

-2-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents, Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

The parties in these cases are currently engaged in an expedited discovery process. Plaintiffs and defendants have served multiple discovery requests.  In their responses to plaintiffs' requests for production, out of the documents defendants have themselves identified as responsive, defendants have withheld more pages of documents—approximately 50,000— than they have produced.   Defendants have withheld these documents based on their assertions of multiple privileges, including primarily the deliberative process privilege.  These documents are listed in more than 800 pages of privilege logs that, by plaintiffs' estimation, refer to more than 10,000 documents.  For a substantial percentage of these documents, defendants have failed to meet their Rule 26(a)(5) obligations to describe the documents in sufficient detail to enable plaintiffs to assess the privilege.  Another large number of documents identified in these voluminous privilege logs plainly fall outside the privileges which defendants have asserted.[1]  Almost all of the remaining documents, almost all withheld pursuant to assertions of deliberative process privilege, concern the very subjects that defendants themselves have put at issue in these proceedings.  As described above, defendants contend that their past administrative and systemic failures, rather than overcrowding, are the primary causes of their violations of plaintiffs' rights.  Defendants also contend that their present and future administrative efforts constitute "other relief" such that a prisoner release order is unwarranted.  These contentions are the linchpins of defendants' arguments in this case: defendants have already admitted—and the district courts have found—that there is an overcrowding crisis in California's prisons, and that defendants are currently unable to provide constitutional levels of medical and mental health care to the prisoners warehoused in these prisons.

---

[1] Defendants assert privilege with such largesse that they extend the attorney-client and deliberative process privileges to defendants' communications to and from the *Coleman* Special Master and the *Plata* Receiver, court orders, and emails from plaintiffs' counsel.  Examples of these are found in Defendants' first privilege log, produced November 9, at p.10 (Priv001027-001030), p.19 (Priv001331-001352), and p.32 (Priv002790-002791, Priv002804-002805).

1    Thus, defendants are seeking to withhold the documents most directly relevant to their

2    arguments concerning the two PLRA prerequisites for the issuance of a prisoner release order.

3    Whether defendants are capable of formulating, funding, and implementing plans that result in

4    1) the provision of medical and mental health care, and 2) the implementation of remedies for

5    overcrowding, are central considerations of this case because defendants have raised these

6    issues as their defenses.  In the first instance, defendants have essentially claimed that they

7    have not been competent, but that they will be in the future; and in the second instance,

8    defendants have claimed that they are now competently implementing remedial plans and

9    overcrowding remedies.  These functions are at the heart of the role of the government

10   agencies who are defendants in this case:  plaintiffs and the Court must be able to assess

11   defendants' contention that overcrowding is not the primary cause of the State's failure to

12   provide constitutional health care.  Documents such as "Public Safety and Offender

13   Rehabilitation Services Act of 2007 Implementation of [sic] Barriers"[2] and "Pre-decisional

14   draft Assessment of the Capacity of the Office of Facilities Management of the California

15   Department of Corrections & Rehabilitation to Meet the Requirements of AB 900"[3] are clearly

16   relevant to plaintiffs' and the Court's ability to assess whether defendants offers of "remedy"

17   are meaningful.

18   The urgency of the issues to be resolved in this matter cannot be overstated.  The Three-

19   Judge Court recognized the gravity and urgency of these proceedings in its October 10, 2007

20   Order setting an accelerated schedule for Phase I of this matter, with a discovery cut-off date of

21   December 20, 2007 and a trial date of February 6, 2008.  10/10/07 Order at 5-6.  However,

22   defendants have stalled and abused the discovery process at every turn.  Rifkin Decl. ¶ 5. They

23   have already withheld more than 10,000 documents totaling approximately 50,000 pages as

24   privileged, and have not fulfilled their obligations to meaningfully assert these privileges on a

25

26   _____

27   [2] This document is listed as Priv021005-021018 on page 139 of defendants' 11/16/2007 privilege log.

28   [3] This document is listed as Priv021948-021953 on page 41 of defendants' 11/21/2007 privilege log.

document-by-document basis. They have largely ignored, until forced by order of this Court, entire sets of requests for production by plaintiffs. Rifkin Decl. ¶ 5. For almost a month, they ignored the clear order of this Court to submit documents for which they asserted privilege to the Court for *in camera* review, and when the Court renewed its order, they again failed to comply for another week. 11/27/07 Orders; Rifkin Decl. ¶ 5. Defendants have refused plaintiffs' requests to update their lengthy privilege logs to eliminate frivolous assertions of privilege and to provide sufficient information to narrow the privilege dispute before this Court. Rifkin Decl. ¶ 16.

Given the breadth of documents for which defendants are asserting privilege, and the defendants' failure to adequately provide a sufficient basis for many of these assertions, it is impossible for plaintiffs to meaningfully assess the application of privilege on a document-by-document basis. However, it is clear that for many of the categories of documents in the privilege log, defendants do not meet their burden for asserting privilege, either because they have failed to provide adequate information or because privilege clearly does not apply. Defendants have applied the deliberative process privilege in an overbroad manner, and the Court should order production of documents that fall outside the scope of this privilege. Moreover, should the Court find that there are documents for which the deliberative process privilege might apply, this qualified privilege is overcome because the government's deliberative process is squarely at issue in this case, and because the need for the materials and accurate fact-finding by the Court considering a prisoner release order "override the government's interest in non-disclosure." *See FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Finally, because of defendants' plainly overbroad and abusive assertions of privilege, and the extremely short timeframe of these proceedings, plaintiffs request that this Court deem defendants to have waived these privilege, and order defendants to immediately produce all documents to plaintiffs.

## II.    PROCEDURAL POSTURE

### A.    The Parties Have Completed Meeting And Conferring Regarding The Issues Of Privilege

Plaintiffs served their first discovery requests on defendants on September 5, 2007. Rifkin Decl. ¶ 6.  Pursuant to an order by the Three-Judge Court, defendants' responses were due on October 25, 2007.  *Id.*  Plaintiffs served a second set of discovery requests on defendants on October 17, 2007.  *Id.*  On October 25, 2007, defendants responded to plaintiffs discovery requests, although they did not produce any documents at that time.  *Id.*  In these responses, defendants objected to plaintiffs' requests by asserting a variety of privileges, and served declarations of several agency officials in regarding the assertion of these privileges. Rifkin Decl. ¶ 7.  On November 5, 2007, after receiving the first set of these declarations, plaintiffs requested to meet and confer with defendants regarding, among other topics, these global assertions of privilege.  Rifkin Decl. ¶ 8.  At that time, defendants requested that plaintiffs wait for the production of the first privilege log, and agreed that both parties would move on an expedited basis to address this important issue when that log was produced.  Rifkin Decl. ¶10.  After the first log was produced on November 9, 2007, showing that one-third of defendants' responsive pages for the November 1 production had been withheld pursuant to claims of privilege, plaintiffs requested an urgent meet and confer on November 13, 2007 with defendants about this issue.  Rifkin Decl. ¶ 11.  In response to a request from defendants, plaintiffs sent a subsequent email later on November 13 outlining Plaintiffs' objections to the assertions of privilege and provided 20 examples from the 64-page log where the privilege either clearly did not apply or insufficient information was provided to sustain the privilege. Rifkin Decl. ¶ 11, Exh. N.  Defendants responded the following day with a suggestion that plaintiffs and defendants wait to meet and confer about privilege issues until December 5, after document production is completed pursuant to the rolling production schedule.  Rifkin Decl. ¶ 11.

Defendants subsequently agreed to conduct a meet and confer on November 16, limited to the issue of insufficient information in the first privilege log.  Rifkin Decl. ¶ 11.  During this

-6-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents, Nos.:  Civ S 90-0520 LKK-JFM, C01-1351 TEH

1  meet and confer, defendants stated that they would update their privilege logs with more

2  complete information, but that they have no intention of even narrowing the privilege log to

3  eliminate documents that are clearly not privileged, such as final plans of agencies or letters

4  submitted by agencies to the *Coleman* Special Master or members of the Legislature. Rifkin

5  Decl. ¶ 12 .  On November 19, defendants informed plaintiffs that they would review and

6  update the logs.  That agreement is memorialized in the Declaration of Lisa Tillman In Support

7  of Defendants' Motion for Reconsideration, or, In the Alternative, Motion for a Stay of Order

8  to Produce Disk, filed November 20, 2007 on page 2, ¶ 5.  However, despite defendants'

9  agreements to revise the privilege logs in a timely fashion, defendants have failed to do so.

10  Furthermore, defendants indicated on November 27 in a conversation with plaintiffs' counsel

11  that they will not be revising the privilege logs already produced.  Moreover, defendants'

12  counsel acknowledged that there are documents identified in the log for which assertions of

13  privilege are plainly erroneous, but informed plaintiffs' counsel that defendants consider it

14  plaintiffs' burden to alert defendants as to these documents, rather than defendants' burden to

15  affirmatively assert privilege only for documents which they believe in good faith to be

16  privileged.  Rifkin Decl. ¶ 16.

17  　　　To date, defendants have produced three privilege logs to plaintiffs, corresponding with

18  their November 1, 9, and 16 productions.  These privilege logs themselves total more than 800

19  pages, and correspond to approximately 50,000 pages of withheld documents, or, by plaintiffs'

20  estimation, more than 10,000 documents.  Rifkin Decl. ¶ 20.  Defendants are expected to

21  produce two additional privilege logs, corresponding to their November 23 and 30 document

22  productions.  *Id.*  Placing defendants' privilege logs in context reveals that defendants are

23  actually withholding on the basis of privilege claims more than half of the total pages they

24  review.  For example, defendants produced a total of approximately 31,500 pages of

25  documents to plaintiffs in their first two productions, and their privilege log reports that for the

26  same productions, defendants withheld almost 39,000 pages.  Rifkin Decl. ¶ 20.

27

28

**B.** **The Court Has Already Ordered The Documents To Be Submitted For In Camera Review And The Issues Of Privilege Are Ripe For Resolution**

During a November 1, 2007 telephone conference, this Court expressed concern that it would receive a huge volume of documents related to privilege issues on November 30, 2007, which is the last date for production of documents set forth in the parties joint stipulation. 11/27/07 Order at 4-14; Rifkin Decl. ¶ 18. To avoid this, the Court directed defendants to submit to the court a copy of all documents for which defendants asserted a privilege at the same time they served the corresponding privilege log on plaintiffs. 11/20/07 Order at 3:1-4. This Court subsequently found that "[i]t is clear to the court that the defendants knew they had been directed by the court to submit for *in camera* review documents withheld on the basis of privilege. It is also clear to the court that defendants knew that such documents were to be submitted to the court at the time each privilege log was served." 11/27/07 Order at 3:1-4. Defendants, however, failed to comply with the Court's Order and the Joint Stipulation and did not submit any documents for which they asserted a privilege by the time of the November 19, 2007 discovery hearing.

As the Court anticipated, plaintiffs raised objections to defendants' extremely broad assertions of privilege and asked the court to set an expedited hearing on this issue during the November 19 hearing. Because defendants had failed to submit the documents withheld, the Court, both orally at the November 19 hearing and in a written order on November 20, ordered defendants to submit all documents thus far claimed as privileged by the close of business on November 20, 2007, and set a December 6 hearing date for the privilege dispute so that the court would have sufficient time to review the documents at issue. 11/20/07 Order at 3:1-12. The court further clarified that any future documents for which any party asserts a privilege shall be submitted under seal within twenty-four hours of service of a privilege log. *Id.*

Instead of complying with the Court's oral and written orders to submit all documents claimed as privilege by the close of business on November 20, 2007, defendants filed a motion for reconsideration or, in the alternative, motion for a five-day stay, of the Magistrate Judge's order. In response to defendants' motion, the court held an expedited telephonic hearing on

1  this matter on November 21, 2007.  During this hearing, the Magistrate Judge denied

2  defendants' motions.  11/27/07 Order at 22-24.  Rather than comply with the court's multiple

3  orders to submit the documents, defendants then filed a motion for reconsideration by the

4  Three-Judge Court.  Defendants also served plaintiffs with their third privilege log on

5  November 21, 2007, after the Magistrate Judge denied their motion for reconsideration, but did

6  not  submit the corresponding documents with the court for *in camera* review.

7       The Three-Judge Panel affirmed this Court's decision to order submission of the

8  documents withheld pursuant to privilege claims on November 27, 2007, finding that "[h]aving

9  the documents in advance will allow Judge Moulds to make a more informed decision on any

10  disputes he must ultimately decide."  11/27/07 Order at 4:2-4.  The Three-Judge Panel ordered

11  defendants to submit the documents by 5:00 PM on November 28, 2007.  *Id.*

12       It is plaintiffs' understanding that defendants complied with the Three-Judge Court's

13  order to submit the documents for *in camera* review.  Rifkin Decl. ¶ 19.  Based on the Court's

14  statements during a telephone conference on November 29, 2007, the Court has begun *in*

15  *camera* review of those documents.  Rifkin Decl. ¶ 19.  Accordingly, plaintiffs' motion to

16  compel the production of documents withheld as privileged by defendants is ripe for

17  consideration, and plaintiffs respectfully request that the Court order defendants to produce the

18  documents in the privilege logs for which defendants have inadequately asserted privilege, the

19  asserted privileges do not apply, or the privileges, if applicable, are overcome by the great need

20  for the documents in this case.

21

22

23

24

25

26

27

28

## III.    ARGUMENT

### A.    Defendants' Assertions Of Privilege Are Facially Inadequate

#### 1.    Defendants Have Frivolously Asserted Privilege For A Large Number Of Documents And Failed To Act Reasonably To Correct These Errors

Defendants' three privilege logs[4] to date are fraught with plainly frivolous assertions of privilege that demonstrate that defendants have claimed them indiscriminately.  *See United States v. O'Neill*, 619 F.2d 222, 227 (3d Cir. 1980) ("The indiscriminate claim of privilege may in itself be sufficient reason to deny it").  Examples include communications between heads of defendant agencies and the *Plata* Receiver (e.g., Priv001302-001304, Log 1, p. 19; Priv009574-009576, Log 2, p. 65; Priv009853-009857, Log 2, p. 71), the *Coleman* Special Master (e.g., Priv001331-001352, Log 1, p. 19; Priv023247-023250; Log 3, p. 127) and members of the Legislature (e.g., Priv020794-020795, Log 2, p. 128; Priv020800-020801, Log 2, p. 129), claimed under the deliberative process privilege and/or attorney-client privilege; emails claimed as attorney-client privileged for which none of the individuals listed in the author, recipient, or custodian fields appear to be attorneys (Priv000944-000945, Log 1, p. 5; Priv001534-001535, Log 1, p. 21; Priv 003261, Log 1., p. 55; ); orders from the *Plata* and *Coleman* Courts claimed as attorney-client privileged (e.g., Priv009683-009695, Log 2, p. 66); briefs and declarations filed by plaintiffs' counsel in *Coleman* and *Plata* as attorney-client privileged (e.g., E00002101, e-Log 2, p. 2); agendas for senate subcommittees and legislation claimed as deliberative process privilege (e.g., Priv010554-010558, Log 2, p. 73; Priv021453-021502, Log 3, p. 32); and communications to individuals outside defendant agencies claimed as deliberative process privilege (e.g., Priv022505, Log 3, p. 59)  Defendants also repeatedly separately list attachments to allegedly "privileged" documents in their privilege logs without

---

[4] Defendants have thus far produced three sets of privilege logs.  The first, produced November 9, consists of a single log ("Log 1") corresponds to paper documents produced to plaintiffs on November 1.  The second set, produced November 16, consists of a log for paper documents produced on November 9 ("Log 2"), and a log for electronic documents produced on November 9 ("e-Log 2").  The third set, produced November 21, consists of a log for paper documents produced on November 16 ("Log 3"), and a log for electronic documents produced on November 16 ("e-Log 3").

1    independently asserting a privilege for these attachments.  For example, multiple documents

2    appearing on e-Log 2 at page 25 are listed as attorney-client privileged but do not identify

3    author or recipients, and are described as "attached to privileged documents."

4            Although defendants have stated that they will amend their privilege logs during

5    multiple meet and confer sessions and in a Declaration submitted to this Court, plaintiffs have

6    not received any updated privilege logs.  Rifkin Decl. ¶ 22.   Defendants have failed to produce

7    updated logs despite the hearing date set for this dispute, and despite plaintiffs' repeated

8    requests that they correct the logs so that the dispute in front of this Court could be narrowed to

9    the most probative issues.

10           As a result, defendants have unreasonably imposed upon plaintiffs—and this Court—

11   the significant burden of wading through 800 pages of logs made dense with frivolous

12   assertions of privilege.

13           **2.    Defendants Have Failed To Meet Their Burden Under The Federal
                     Rules To Adequately Identify Documents And Establish A Sufficient
14                   Basis For Asserting Privilege**

15           Federal Rule of Civil Procedure 26(a)(5)(A) requires that when a party withholds

16   information otherwise discoverable by claiming that it is privileged, "the party shall make the

17   claim expressly and shall describe the nature of the documents, communications, or things not

18   produced or disclosed in a manner that, without revealing information itself privileged or

19   protected, will enable other parties to assess the applicability of the privilege or information."

20           Where privilege logs are clearly deficient under Rule 26(a)(5)(A), a court may reject the

21   claims of privilege.  *United States v. Constr. Prods. Res., Inc.*, 73 F.3d 464, 473-74 (2d Cir.

22   1996).  In *Construction Products Research*, the court noted that the privilege log "contain[ed] a

23   cursory description of each document, the date, author, recipient, and 'comments.' Further,

24   under a heading entitled 'Basis of Claim,' each of the documents listed is alleged to be an

25   'Attorney-Client Communication.'"  *Id.*  There, the court found that these "general allegations

26   of privilege" did not provide sufficient bases for asserting the privileges, and rejected the

27   privilege claims.  *Id.*  Courts have also found that "cryptic statement[s]" as to the content of

28

documents is not sufficient to meet a party's burden for asserting privilege.  *See In re Uranium Antitrust Litigation*, 552 F. Supp. 517, 517 (N.D. Ill. 1982).

At best, defendants' entries in their 800 page logs have a custodian, source, author, recipient, document type, document title, and name the privilege claimed.  However, the percentage of the more than 10,000 entries in their privilege logs for which all of those fields are provided may not even approach fifty percent.  The only fields entered for one hundred percent of the documents are the "custodian" and "privilege" fields.  An overwhelming number of entries in the logs do not provide the author, recipient, and/or date of the document.  Many additional entries have completely meaningless statements in the "title" or "summary" field.[5] For example, page 97 of Log 2 contains multiple entries (Priv014716-014727) for which no author, recipient, or date is listed and the title of the document is "Handwritten notes."  Page one of e-Log 2 contains multiple entries lacking author, recipient, and date where the summary field simply reads "Pre-decisional draft legislative reports."  For many of the entries that do have slightly more descriptive titles or summaries, defendants still do not provide sufficient information for plaintiffs to assess the basis for privilege or the relevancy of the document to the issues in the case.  For example, opening e-Log 2 to a random page (page 61), a sampling of the insufficient entries read "Pre-decision report on Conference Action; Email thread attaching CDCR Big 5 spreadsheet; Email attaching Decision Making Matrix; Email discussing and attaching letters; Email thread discussing and attaching DOF decisions; Pre-decisional report on FPCM; Email attaching week ahead report; Email thread discussing and attaching template for progress report."   These logs are plainly insufficient for asserting privilege according to Rule 26 and the case law.

This evidence suggests that defendants have not conducted a thorough review of the documents for which they have affirmatively asserted privilege.  Moreover, in order to assert the deliberative process and official information privileges, defendants are required to establish

---

[5] The logs for paper documents have a "title" field and the logs for electronic documents have a "summary" field.

that the documents are being withheld as a result of personal consideration by the head of the responsible department or agency. *See United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998); *Allen v. Woodford*, 2007 WL 309945, at *5 (E.D. Cal. Jan. 30, 2007); *see also Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 603 (S.D.N.Y. 1991) (collecting cases observing this rule). The purpose of this requirement is to "deter governmental units from too freely claiming a privilege that is not to be lightly invoked." *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 517 (D. Del. 1980); *see also Rozet*, 183 F.R.D. at 665 (holding that deliberative process privilege may be invoked only by the "head of the department after actual personal consideration . . . to insure that the privilege remains a narrow privilege which is not indiscriminately invoked"); *United States v. Reynolds*, 345 U.S. 1, 8 n.20 (1953) ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced." (internal quotation marks omitted)).

The declarations defendants submitted regarding privileged documents do not evidence personal consideration by the declarants of the documents withheld. For example, the Declaration of Doug McKeever regarding privileged documents states "I have reviewed Plaintiffs' Requests for Production propounded in [*Coleman* and *Plata*]. I am familiar with the documents generated by this agency which may be responsive to Plaintiffs' requests. Certain items within those categories of documents are privileged." Rifkin Decl. ¶ 7, Exh. G at 2:17-21. Mr. McKeever continues by attesting to general procedures of CDCR. He never states that he has personally reviewed the documents being withheld. The same general and insufficient statements are repeated by each of defendants' declarants.

**B.    Defendants Have Failed To Establish That The Deliberative Process Privilege Applies Or Justifies Withholding The Documents**

"The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (internal quotation marks omitted). Defendants claim that more than 50,000

-13-

responsive pages can be withheld, largely pursuant to the deliberative process privilege. Defendants utterly fail to carry their burden to establish why this stringent privilege justifies the withholding of these documents.

The deliberative process privilege is a narrow, conditional federal common law privilege that protects materials created by governmental departments or agencies during the decision-making process. *Nat'l Wildlife Federation v. United States Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). The purpose of the privilege is to protect the quality of agency decisions by shielding internal discussions from public scrutiny which might discourage the free-flow of ideas and frank discussion of legal or policy matters. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150 (1975).

The deliberative process privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal quotation marks omitted). To qualify for the deliberative process privilege, the materials in question must be predecisional in nature and must also be part of the agency's deliberative process. *Assembly of State of Cal. v. United States Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (as amended). "A 'predecisional' document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (internal quotation marks and citations omitted).

A document is "deliberative" if the "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (alteration in original) (internal quotation marks omitted). "The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual . . . ." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir.1997) (per curiam). Additionally, assertion of the deliberative process privileges requires:

-14-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents,
Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

-a formal claim of privilege by the "head of the department" having control over the requested information;

-assertion of the privilege based on actual personal consideration by that official; and

-a detailed specification of the information for which the privilege is claimed, with an explanation of why it properly falls within the scope of the privilege.

*Allen*, 2007 WL 309945 at *4; *see also L.H. v. Schwarzenegger*, 2007 WL 2009807, at *2 (E.D. Cal. July 6, 2007); *Rozet*, 183 F.R.D. at 665 (noting that the deliberative process privilege may be invoked only "by the head of the department . . . after actual personal consideration" of the allegedly privileged information).

Even if established, the privilege is qualified and can be overcome: "A litigant may obtain deliberative materials . . . if his or her need for the materials . . . and the need for accurate fact-finding override the government's interest in non-disclosure." *N. Pacifica*, 274 F. Supp. 2d at 1122 (alterations and internal quotation marks omitted).

Defendants' claim of deliberative process privilege fails for a multitude of reasons. As discussed in the previous section, there is no evidence that the documents defendants have withheld were actually personally considered by the agency representatives who submitted declarations regarding the privileges asserted. Each declarant merely asserts that he or she is "familiar with the documents generated by the [agency] which may be responsive to Plaintiffs' requests. Certain items within those categories of documents are privileged." *See, e.g.,* Rifkin Decl. ¶ 7, Exh. E at 2:12-14.

The declarations further provide only generalized information about the internal process of the respective departments, completely missing the requirement that the privilege must be claimed in a specific, precise and certain manner. *L.H.*, 2007 WL 2009807 at *2; *see* Rifkin Decl. ¶ 7, Exhs. D-M. Defendants' declarations provide no particularized reasons for asserting the deliberative process privilege with respect to any of the documents in the logs. The logs themselves also completely fail in this regard. As explained already, many of the "titles" or "summaries" are wholly deficient to even ascertain what the subject matter of the document is. The only nod at all to the requirement that reasons for asserting the privilege must be provided is that, for some proportion of the documents, defendants have simply inserted the phrase "pre

decisional" in the title.  In the more blatant examples of carelessness, this insertion makes no sense at all.  For example, document Priv001490-Priv014911 at page 101 of Log 2, reads "H/W pre-decisional decision."  Another example is the title "Exhibit R Pre-decision internal memorandum regarding a meeting scheduled for March 26, 2007" (Priv009811, Log 2, p. 71), where the author is listed as John Hagar of the Receiver's office.

Even where the title of the document indicates that it may have been part of a discussion, it is clear that many of these discussions are not necessarily tied to or antecedent to the decision-making process.  For example, on page one of e-Log 2, defendants list two documents titled "Pre-decisional email discussing allocation of AB 900 funds."  The dates for these documents are September 26 and 28, 2007, four months after AB 900 was passed by the legislature and funds were allocated.  Another example appears on page 3 of e-Log 2, which lists "Email thread discussing and attaching pre-decisional draft letter discussing Valley Fever and its potential impact on Assembly Bill 900 implementation" (E00000149-151).  Again, this is not pre-decisional to an agency decision in the narrow sense of the privilege.  Defendants establish no basis for showing that these emails were pre-decisional, nor deliberative.  Similarly, on the same page, defendants list multiple documents titled "Pre-decisional draft legislative reports."  Rather, they concern post-enactment implementation of AB 900, not the deliberation about AB 900.  It cannot be the case that what has been consistently construed as a "narrow" privilege automatically applies to all documents or communications between agency employees that discuss issues overseen by the agency.

**1.      Defendants Assert Deliberative Process Privilege For Categories Of Documents Outside The Scope Of The Privilege**

Even beyond the fact that defendants do not meet their burden of providing a particularized reason for asserting the deliberative process privilege for each document, there are multiple categories of documents defendants claim under this privilege to which the privilege would not apply even if defendants had attempted to provide meaningful bases for the assertions.  These include reports, spreadsheets, and schedules that appear to encapsulate factual information; final budget change proposals or finance statements; letters to outside

1    agencies or individuals; documents for which no privilege is independently asserted but are

2    described as having been attached to allegedly privileged documents; and documents

3    discussing AB 900 that are dated after the Legislature enacted the bill that do not identify a

4    subsequent agency decision the documents would or could be considered "pre-decisional."  It

5    is not reasonable to assert that these documents would pass the test that "the document is so

6    candid or personal in nature that public disclosure is likely in the future to stifle honest and

7    frank communication within the agency." *Coastal States Gas Corp. v. Dept. of Energy*, 617

8    F.2d 854, 866 (D.C. Cir. 1980).  Examples of documents in these categories are found listed on

9    pages 46 and 47 of Log 2, where many of the documents merely read "Project Cost Summary"

10   or "SVSP ICF Mental Health Beds" with no authors, recipients, or dates listed.  Page 73 of the

11   same Log shows multiple entries for "Budget Change Proposal" with no author, recipient, or

12   date listed.  Page 80 of the same Log shows "Estimated Construction Schedule for Infill Bed

13   Plan Jan 2007" (Priv013243-013244).  The Supreme Court has clearly established that the

14   privilege only applies to the "opinion" or "recommendatory" portions of non-final documents,

15   and not to factual information contained in the document.  *EPA v. Mink*, 410 U.S. 73, 87-88

16   (1973) (explaining that "compiled factual material or purely factual material contained in

17   deliberative memoranda and severable from its context would generally be available for

18   discovery" notwithstanding the assertion of privilege), *superseded by statute in nonrelevant

19   part as recognized in Long v. I.R.S.*, 742 F.2d 1173 (9th Cir.1984).  Examples of the

20   documents listed in defendants' privilege logs that fall clearly outside the scope of the

21   deliberative process privilege are far too many to exhaust in this brief, but the examples

22   provided throughout plaintiffs' memorandum provide ample evidence that defendants have not

23   satisfied their burden to assert this privilege in good faith, and the Court should wholesale

24   reject the assertion of this privilege.

25

26

27

28

**C.    Even If The Deliberative Process Standard Is Satisfied For Some Of The Documents, The Documents Should Be Produced In This Case Because Defendants Have Put Their Deliberative Processes At Issue And Because Plaintiffs' Need For The Documents Overrides The Government Interest**

**1.    Defendants Have Put Their Deliberative Processes At Issue In This Case And The Documents They Have Withheld Are Highly Relevant To These Processes**

"The [deliberative process] privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). "If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield." *Id.* Here, defendants maintain that their decision-making and administrative capabilities (or incapabilities) are both the cause of the violations, and that they will plan and implement adequate remedies so that a prisoner release order is not warranted. Without access to the documents reflecting the State's decision-making, the Three-Judge Court cannot meaningfully address the State's argument that its failures in this area are the real primary cause of the violations rather than the population pressures resulting from overcrowding. Nor can the Three-Judge Court fairly evaluate defendants' remedial plan, without considering defendants' internal discussion and analysis of the adequacy of those plans

In June 2006, the *Coleman* Court Ordered defendants to produce budget change proposals and draft budget change proposals to plaintiffs, despite defendants' claim of deliberative process and official information privileges. The dispute arose because defendants maintained that they had obtained the staffing necessary to comply with the Court's March 3, 2006 Order to implement the Revised Program Guide, but there were indications that the State's request to the Legislature was inconsistent with and greatly reduced from the CDCR's original request for staffing that it had determined was necessary to comply with the Court's order. This information was relevant to the determination of whether defendants were capable of complying with the Court's order: "Put directly, the court requires the BCPs in part to determine whether the state's deliberative process is frustrating the ability of the state to

-18-

Plaintiffs' Memorandum In Support Of Motion To Compel Production Of Documents, Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

comply with the courts orders." *See Coleman v. Schwarzenegger,* No. CIV S-90-0520 LKK-JFM, June 14, 2006 Order, Doc. No. 1840.  The Ninth Circuit rejected defendants' challenge to the Court's order.

The issues in the current proceedings raise the stakes even higher:  They concern the State's ability to provide *both* constitutionally adequate medical and mental health care to the 174,000 individuals currently incarcerated in California prisons.  Defendants have maintained that their own administrative failings, rather than systemic overcrowding, are the cause of the violations; and yet defendants simultaneously maintain that the State's ability to implement bed plans, staffing recruitment, prison construction, and rehabilitation programs, among others, will provide sufficient and timely relief such that a prisoner release order is unnecessary.  By wielding the shield of deliberative process privilege, defendants are attempting to withhold what appear to be crucially relevant documents about the validity of their defense.  These documents—if in fact, they do actually contain pre-decisional deliberative material—are highly likely to shed light on the reliability and meaningfulness of defendants' plans, defendants' ability to actually fund and implement these plans, and what timeframes are accurate for expected implementation and relief.  For example, defendants have withheld documents such as "Public Safety and Offender Rehabilitation Services Act of 2007 Implementation of Barriers" (listed on page 139 of Log 2); "Pre-decisional draft Assessment of the Capacity of the Office of Facilities Management of the California Department of Corrections & Rehabilitation to Meet the Requirements of AB 900" and "Potential Barriers to Pre-decisional draft Potential Barriers to Implementation of AB 900 [sic]" (listed on page 41 of Log 3); "Email discussing and attaching memo to Hickman and briefing document discussing population pressures" and "Pre-decisional memo discussing modification to correctional operation due to compelling operational necessity" (listed on page 19 of e-Log 2); "Email attaching timeline on CDCR activities for prison reform" (listed on page 21 of e-Log 2); "Email attaching reports on prison overcrowding, parole and sentencing" (listed on page 23 of e-Log 2); "Email thread discussing revisions to infill bed assessments" and "Pre-decisional memo discussing AB 900 activities and notification to staff" (listed on page 55 of e-Log 2);

1    "Report providing pre-decisional discussion of Mental Health Bed Plan," "Report providing

2    pre-decisional analysis of enhanced outpatient program treatment improvement plan" and

3    "Agenda providing pre-decisional analysis of facility planning, construction and management"

4    (listed on page 133 of e-Log 2); and "California Department of Corrections and Rehabilitation

5    Action Plan; Day Treatment Programming and Crisis Management for Mentally Ill Parolees

6    June 7, 2007" (listed on page 9 of Log 3).  All of these documents are directly relevant to the

7    defenses defendants have raised thus far in the case, and would likely be used by plaintiffs in

8    their case-in-chief and to impeach.  Rifkin Decl. ¶ 21.

9            Additionally, defendants have consistently withheld draft and final budget change

10    proposals and finance statements throughout their productions, as listed in all of the privilege

11    logs.  For government agencies, the allocation of funds appears to be the most crucial factor

12    determinative of what actions are actually taken by the government, and whether those actions

13    will be effective (because effectiveness generally requires appropriate financing).  As the Court

14    found in the case of similar assertions of privilege over budget change proposals by these same

15    California agencies in *L.H. v. Schwarzenegger*, 2007 WL 20009807 (E.D. Cal. July 6, 2007),

16    these documents "contain in-depth analysis of the need for budget adjustment, and analyze the

17    costs and burdens associated with" providing various resources within certain amounts of time.

18    *Id.* at *7.  As the *Coleman* Court concluded in June of 2006, budget change proposals and

19    finance documents are highly probative for plaintiffs' and the Court's ability to assess the

20    meaningfulness of defendants' decisions and actions.  In this case, where the California Office

21    of the Attorney General's deputy attorney generals assigned as lead counsel for the State on the

22    various health care related class action lawsuits have collectively issued an opinion that AB

23    900—the State's "number one" solution to overcrowding—is improperly funded, the financial

24    documents defendants have withheld must be produced.  *See* Report of the Receiver, filed

25    11/15/07, *Plata* Document No. 930, at 3-4.

26

27

28

### 2.    Even If The Documents Were To Satisfy The Deliberative And Predecisional Requirements, Plaintiffs' Need For The Materials Greatly Outweighs The Government's Minimal Interest In Non-Disclosure

Even if this Court were to decide that the deliberative process privilege might apply to some limited number of documents in the log, "[t]he deliberative process privilege is a qualified one." *FTC*, 742 F.2d at 1161. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.*; *see also Rozet*, 183 F.R.D. 662 at 665 (holding that "[privilege] may be overcome by a strong showing of need on the part of the party seeking discovery"). "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *FTC*, 742 F.2d at 1161. The court should also consider "(5) the interest of the litigant, and society, in accurate judicial fact finding; and (6) the seriousness of the litigation and the issues involved." *L.H.*, 2007 WL 2009807 at * 2 (citations omitted).

These factors demonstrate that plaintiffs' need for the documents far exceeds any interest defendants may have in withholding the responsive documents. For example, "the interest of the litigant, and ultimately society, in accurate judicial fact finding, and the seriousness of the litigation and the issues involved," are factors that weigh heavily in favor of disclosure. *See id.* at * 8 (citations omitted). "[W]hen the issues involved are alleged violations of federally-protected civil rights, courts have consistently found that this need is heightened and the privilege is outweighed." *Id.* (citing *United States v. Phoenix Union High School*, 681 F.2d 1235 (9th Cir. 1982), and other cases).

The issues in this case are the most serious possible: indeed, they are matters of life and death, as inmates are daily denied the minimal level of medical and mental health treatment required by the Constitution. Society has a common interest in enforcing these rights and in

ensuring accurate judicial fact-finding in a case of such sweeping political and humanitarian consequence.  Accordingly, this factor weighs in favor of disclosure of the documents.

Moreover, the withheld documents are highly relevant; indeed, they go to the heart of plaintiffs' claim, and defendants' defenses, as to whether overcrowding is the primary cause of the constitutional violations.  Even the privilege log's cursory descriptions of withheld documents reveal the compelling relevance of these documents.  As outlined in the previous section, these documents address defendants' obstacles to implementing AB 900, defendants' plans to remedy the constitutional violations, and the central question of causation of the constitutional violations.  Moreover, these documents are not available from any other source.

The government's role in this litigation is significant, a factor that also weighs in favor of disclosure.  Not only is the government the defendant in this case, but the decision-making process itself is at issue in the case. *See N. Pacifica*, 274 F. Supp. 2d at 1124.  As discussed, defendants have put their decision-making at issue in this case by raising it as a defense, and they cannot now be allowed to withhold evidence of that process.

The next factor examines the extent to which government discussions would be impeded by the disclosure of these documents.  The ultimate purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151.  There is no evidence that agency decisions would be hindered by the disclosure of these documents.  Many of the documents have been circulated to other branches of government, third parties, the Special Master, and other outside sources.  The risk to the government of embarrassment is not enough to outweigh the interest of the class members whose rights are being gravely violated, the interest in the Court in accurate fact-finding, and the interest of the public in ensuring that these significant public policy matters are considered with all relevant information at hand.

In sum, these factors all weigh heavily in favor of disclosure.  Plaintiffs respectfully request that this Court hold the deliberative process privilege inapplicable or, in the alternative, find that plaintiffs' need for the documents far outweighs defendants' interest in withholding them.

**D.     Defendants Have Failed To Establish That The Other Privileges They Asserted Apply Or Justify The Withholding Of Documents**

Defendants fall woefully short of adequately asserting the additional privileges they have claimed.  Defendants should be ordered to immediately produce all documents for which they have not met their burden to establish that the various privileges apply and justify withholding documents in this case.

**1.     Defendants Have Failed To Establish That The Attorney-Client Privilege Applies Or Justifies The Withholding Of Documents**

Defendants assert the attorney-client privilege as justification for withholding a subsidiary group of documents listed in their privilege logs.  For most of these documents, defendants failed to establish that these were confidential communications between client and attorney.  Rather, defendants erroneously asserted privilege over non-confidential communications among third-parties and non-attorneys.

"Federal common law recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, *provided such communications were intended to be confidential*."  *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) (emphasis added).  "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney."  *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

At a minimum, in order to assert the privilege, the communication must be between a client and an attorney.  Defendants have failed to meet even this most fundamental requirement.  They assert the privilege over documents where no attorney is listed as either a sender or recipient, and over documents where the sender or recipient is a third party such as the Special Master or a private contractor.  *See* Log 1 at Priv000944-945, p. 5; Log 1 at Priv 000939-000940, p. 5; Log 2 at Priv004511-004512, p. 19; Log 2, Priv0004901-0004915, p. 24.  In other privilege log entries, defendants assert the privilege over a document for which there is no sender or recipient listed, and the custodian is not an attorney.  This scant information cannot possibly justify withholding of documents.  See Log 1 at Priv003261 Priv003261, p. 55

-23-

Even where the communications were between an attorney and a client, defendants have failed to satisfy their burden to prove that these were communications intended to be and in fact kept confidential between an attorney and client for the purpose of obtaining legal advice. *See Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990), *overruled in nonrelevant part by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997). Most of these documents are sent by non-attorney CDCR employees to other non-attorney CDCR employees, *with a "cc" to an attorney*. These communications are not protected by the privilege, as this Court has already noted: "Including an attorney on the distribution list [or] Cc'ing numerous people . . . one of whom happens to be an attorney . . . does not amount to attorney client communication." *Fru-Con Constr. Corp. v. Sacramento Municipal Utility Distr.*, 2006 WL 2255538, at * 1 (E.D. Cal. Aug. 7, 2006) (internal quotation marks omitted) (applying California privilege law but noting the federal standard is the same). Defendants are required to establish that each document consisted of a confidential communication *between* an attorney and a client. If an attorney is merely a "cc" recipient on an e-mail, and not the recipient of "full and frank disclosure" from her client, then the privilege is not properly invoked.

As for the few remaining items for which attorney-client privilege is asserted, it appears that based on the "author" and "recipient" fields that these may possibly be confidential communications between CDCR and their counsel, and thus possibly privileged. However, even for these documents, which could be theoretically privileged, defendants failed to carry their burden to demonstrate the privilege. "The requirement that the communication have the purpose of providing or obtaining legal advice is the heart of the privilege. What matters is the specific nature of the communication and not the broader context within which the communication occurs. . . . [I]t is not enough for the [party] to say that it 'assumes' communications directed from its employees to agency attorneys are for the purpose of requesting legal advice. 'That a person is a lawyer does not ipso facto, make all communications with that person privileged.'" *United States v. Grace*, 455 F. Supp. 2d 1140, 1145 (D. Mont. 2006) (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)).

For most documents withheld pursuant to allegations of attorney-client privilege, defendants have provided absolutely no information to meet the burden of showing that the communications were made for the purpose of providing or requesting legal advice. The document descriptions are patently inadequate, and give only a cursory summary or two-to-three word title. From this description, it is impossible for plaintiffs or the Court to assess whether these documents truly contain legal advice or otherwise meet the privilege's stringent requirements. Accordingly, the Court should not permit defendants to withhold any documents on the basis of attorney-client privilege.

### 2. Defendants Have Failed To Establish That The Attorney Work Product Privilege Applies Or Justifies The Withholding Of Documents

"The work-product doctrine is a qualified immunity which protects from discovery documents and tangible things prepared by a party or that party's representative in anticipation of litigation." *Kintera, Inc. v. Convio, Inc*., 219 F.R.D. 503, 507 (S.D. Cal. 2003) (citing Fed. R. Civ. P. 26(b)(3)). As the party claiming the work-product privilege, defendants bear the burden of establishing that documents claimed as work product were, indeed, prepared in anticipation of litigation. *See id.* Defendants have not met their burden.

Notably, very few of the documents identified as work-product were authored by an attorney. In addition, there has been no showing that the documents were prepared in anticipation of litigation. When considering whether a given document was prepared in anticipation of litigation, "the court should consider whether the documents would not have been generated but for the pendency or imminence of litigation." *Id.* (internal quotation marks omitted). For example, attorney work product protection is asserted over a document described, in its entirety, as "Cover sheet for Week Ahead," for which no sender or recipient is provided, and for which therefore there is no basis for assessing what work product might possibly be contained in a cover sheet that is not send or received by an attorney. See E00000280-E00000282, elog 1, p. 6. Defendants also appear at times to characterize their publicly-filed pleadings and briefs as privileged work product. See, e.g., E00001998-

-25-

E00002001, elog 1, p. 33 (a pleading sent from the Attorney General's office to the Northern District of California).

Defendants' documents discussing budget change proposals, out-of-state transfers, AB 900 implementation, and the other various topics represented in the privilege logs were prepared in defendants' normal course of business. Defendants were aware of the overcrowding crisis as early as October 2006, as demonstrated by the Governor's Proclamation, and these documents reflect defendants' attempts to remedy this crisis, *not* defendants' litigation technique. "[B]ut for the pendancy or imminence of litigation," *id.*, these documents would still have been created, as they were routine documents created in the course of defendants' management of CDCR's population crisis. *See Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) ("The work product doctrine does not protect materials assembled in the ordinary course of business."). While these documents might have been prepared *with an awareness* that defendants were violating plaintiffs' constitutional rights, the documents were not created to aid in any pending litigation. They are not subject to protection as work-product.

### 3. Defendants Have Failed To Establish That The Official Information Privilege Applies Or Justifies The Withholding Of Documents

Because "privileges operate in derogation of the truth-finding process" and because the law requires them to be "narrowly construed," strict requirements are placed on a party claiming the official information privilege. *Chism v. County of San Bernadino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994). These exacting guidelines are:

> A party seeking to claim the official information privilege must submit, at the time it files its response to a request for production, a declaration, under oath, from the head of the department having control over the matter, which declaration:
>
> (1)    affirms that its department has collected the material in question and kept it confidential;
>
> (2)    affirms that the declarant official has personally reviewed the material;
>
> (3)    specifically identifies what government interest or privacy interest would be threatened by disclosure;
>
> (4)    describes how disclosure, even if made subject to a protective order, would create a substantial risk of harm, and

(5)    projects how much harm would be done by disclosure.

*Id.*; *see also Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 311 (C.D. Cal. 1992); *Kelly v. City of San Jose*, 114 F.R.D. 653, 669-70 (N.D. Cal. 1987).

Defendants have failed to establish the vast majority of these exacting requirements.[6] Primarily, as with the deliberative process privilege, defendants have failed to establish that any official has ever personally reviewed the hundreds of documents defendants are withholding on the basis of the official information privilege.  Moreover, defendants make no serious attempt to comply with the third, fourth and fifth requirements.  Defendants' declarations all vaguely assert that disclosure "may chill" future discourse, self-evaluation and critical analysis and warn that making the documents public "may deter discussion and development of theories and ideas of benefit to the public."  *See, e.g.*, Rifkin Decl. ¶ 7, Exhs. D-M.  These allegations are unspecific, hypothetical, and conclusory.  Similar kinds of conclusory opinions have been specifically rejected in other cases, primarily because they fail to show any actual harm that would result from disclosure.  *See, e.g.*, *Chism*, 159 F.R.D. at 534-35 (holding that "a general assertion that a[n] . . . internal investigatory system would be harmed by disclosure of the documents is insufficient" and requiring resisting party to "specifically describe how disclosure of the requested documents in the particular case in question would be harmful"); *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 545 (W.D. Wash. 2000) ("Without indicating any specific, policy-oriented communication nor proffering any cogent reason for protecting it, the bare assertion that internal agency discussions will be 'chilled' is nothing but a legal platitude asserted in the abstract.").

---

[6] While some of defendants' declarations do claim the documents in question were kept confidential, the logs belie this claim, as defendants cannot identify an single author or recipient for numerous documents withheld on official information grounds.  *See, e.g.*, E00007526- E00007531, e-Log 2 page 22.

Defendants' failure to meet their initial burden with respect to this privilege waives protection of the documents. *Chism*, 159 F.R.D. at 533-36 ("If the party opposing production fails to meet its threshold requirement of establishing cause to apply the privilege, the privilege will be overruled and full disclosure will be ordered."); *Miller*, 141 F.R.D. at 301 (finding that "should the threshold requirements not appear in the papers, the privilege assertion will be overruled in its entirety and complete disclosure will be ordered").

Finally, even if the Court concludes defendants have met their initial burden to invoke the official information privilege, the qualified privilege should not be applied in this case.[7] In determining whether to permit documents to be withheld pursuant to the official information privilege, courts utilize a balancing test, similar to deliberative process privilege test, that is "pre-weighted in favor of disclosure." *Chism*, 159 F.R.D. at 533. Moreover, "any doubts about [the privilege's] applicability are to be resolved in favor of disclosure." *Id.* As discussed in the deliberative process conext, disclosure of the documents withheld on official privilege grounds is clearly warranted here.

### 4. Defendants Have Failed To Establish That Protections Based On Privacy Rights Apply Or Justify The Withholding Of Documents

Defendants have asserted privacy rights as a basis for withholding a number of documents. Withholding on this basis is improper. First, there is no legal support for withholding documents on privacy grounds in this case. Whereas Rule 26(b) exempts privileged documents from discovery, "the right to privacy is not a recognized privilege." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 n.3 (C.D. Cal. 1995). While federal courts have on occasion considered third party privacy interests in deciding discovery matters, they have done so only in non-analogous circumstances. *See, e.g.*, *Premium Serv. Corp. v.*

---

[7] In any case, Defendants should be required to disclose any factual information contained in documents withheld under this privilege. *See Binion v. Dept. of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983). In another illustration of Defendants' overreaching, their logs are replete with examples of factual information that has been improperly withheld. *See. e.g.*, E00007529, e-Log 2 page 22; E00004422, e-Log 1, page 51; E00004424, e-Log 1, page 51; E00004435, e-Log 1, page 51. Additionally, Defendants should be required to turn over non-privileged documents withheld merely because they are attached to purportedly privileged documents. *See, e.g.*, E00015836- E00015837, e-Log 2 page 46.

1  *Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (income tax returns); *Sega Enters.*

2  *Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1992) (trade secrets); *Ragge*, 165 F.R.D.

3  at 604 (employee personnel files); *Barta v. City & County of Honolulu*, 169 F.R.D. 132, 136

4  (D. Hi. 1996) (sexual conduct).

5        Moreover, even if there might be a basis for withholding documents on privacy

6  grounds, defendants' privilege logs are inadequate under Rule 26(b)(5) because they force

7  plaintiffs to guess whose privacy interests are purportedly implicated by the withheld

8  documents.  Indeed, defendants have made no attempt to identify in the logs which privacy

9  interests are supposedly at stake or to which third parties those interests belong.  For example,

10  documents E00007614, E00007615, E00007616, located in e-Log 2 at page 24, are

11  characterized as emails describing Phase I infill beds and a DAI bed proposal.  It is not by any

12  means apparent how disclosure of these documents could possibly infringe on privacy interests

13  or even whose interests those might be.  The logs are replete with examples of similar

14  overreaching.  *See, e.g.*, E00001115-E00001116, e-Log 1, page 15; E00004711, e-Log 1, page

15  57.

16        Additionally, even for the few documents identified in the logs where plaintiffs might

17  possibly be able to guess the link to privacy interests, any privacy concerns are obviated by the

18  protective orders governing this case or are otherwise easily remedied.  For example,

19  defendants have withheld documents discussing their efforts to mitigate the spread of Valley

20  Fever.  *E.g.*, E00003032, e-Log 2 at page 15.  To the extent these documents identify by name

21  the inmates suffering from the disease, their identifies are already protected from disclosure by

22  the parties' protective order agreements.  *See* Coleman Docket 2109.  In other instances,

23  defendants have chosen to withhold emails *and the non-privileged documents attached to those*

24  *emails* even where the private information could easily be redacted and the documents

25

26

27

28

1  produced.[8]  *See, e.g.*, E00015821- E00015823, e-Log 2 at page 42 (withholding an email

2  because it contains a private cell phone number, and also withholding non-privileged

3  documents attached to that "privileged email"); E00001786- E00001790, e-Log 1, page 29

4  (same).

5      Finally, privacy interests are not absolute and disclosure is warranted here.  *See Ragge*,

6  165 F.R.D. at 604 n.3 (recognizing that privacy rights are not absolute bar to discovery and

7  permitting disclosure of sensitive information).  As discussed in the Introduction and Section C

8  of this brief, plaintiffs' need is great for information concerning defendants' efforts to deal

9  with the overcrowding emergency.  By contrast, defendants have failed to identify any

10  legitimate privacy interest that might weigh against disclosure. As is typical of their privilege

11  assertions in this case, defendants' withholding of documents on privacy grounds is overbroad,

12  lacks legal support, and ignores their obligations under Rule 26(b)(5).  Plaintiffs therefore ask

13  this Court to order defendants to produce all documents withheld on privacy grounds.

14
15      **E.    Defendants' Overbroad Privilege Claims Are Abusive Of The Discovery Process, Impermissibly Shift Defendants' Burden To Assert Privilege To Plaintiffs And The Court, And Should Be Held To Constitute A Waiver Of Privilege**
16

17      Defendants have asserted privilege over more than 10,000 documents, totaling 50,000

18  pages—with three document privilege logs not yet produced—and have refused to review and

19  update these privilege logs, even to correct obvious errors.  The effect of defendants'

20  indiscriminate siphoning of documents into their privilege logs is that the burden has been

21  shifted to plaintiffs—and this Court—to wade through 800 pages of privilege logs to conduct

22  the review that should have been done by defendants' counsel.  This burden-shifting is

23  impermissible and contravenes well-established law that the party claiming the privilege bears

24  the burden of affirmatively establishing the essential elements of the privilege.  *See, e.g.,*

25

26  _____
27  [8] Defendants' practice of withholding non-privileged documents attached to purportedly privileged emails, of course also violates the rule that each individual document withheld must itself be privileged.

28

1    *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) ("The party asserting an

2    evidentiary privilege has the burden to demonstrate that the privilege applies to the information

3    in question." (internal quotation marks omitted)); *von Bulow by Auersperg v. von Bulow*, 811

4    F.2d 136, 144 (2d Cir. 1987) ("It is axiomatic that the burden is on a party claiming the

5    protection of a privilege to establish those facts that are the essential elements of the privileged

6    relationship." (internal quotation marks omitted)); *Barclaysamerican Corp. v. Kane*, 746 F.2d

7    653, 655 (10th Cir. 1984) (noting burden is on party asserting privilege).

8         To justify this burden-shifting, defendants' counsel have repeatedly suggested to

9    plaintiffs that they do not have time to perform this review because they are reviewing

10   documents for production according to the parties' stipulated rolling production schedule.

11   Defendants' circular logic is unconvincing because presumably the bulk of this review time is

12   currently spent reviewing for privilege the documents identified by electronic searches as

13   responsive; yet, they argue that they do not have time to review for privilege accurately.

14   Assertion of privilege is an affirmative action: in order for a document to appear in the

15   privilege log, defendants had to affirmatively include it. The suggestion that a party should be

16   excused from meeting the well-established requirements for asserting privilege because it is

17   time-consuming to do so has been repeatedly rejected by courts. *See, e.g.*, *Eureka Fin. Corp.*

18   *v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 183 (E.D. Cal. 1991) ("Although it may

19   be time-consuming to specifically assert . . . . privilege in a document intensive litigation, the

20   courts nevertheless clearly require such specific identification. Because privileges impede full

21   and free discovery of the truth, the assertion of a privilege . . . is strictly construed. If the

22   privilege is worth protecting, a litigant must be prepared to expend some time to justify the

23   assertion of the privilege" (internal citations omitted)).

24        Indeed, facing a similarly lofty stack of documents for which privilege was asserted and

25   disputed, a district court in Illinois rejected the suggestion that a party's attorney did not have

26   time to conduct meaningful review:

27        As we read [Gulf's] argument, it is appropriate for the court --- or
          as Gulf suggests, a magistrate --- to wade through the equivalent of
28        100 novels to determine the validity of the parties' blanket claims

1

2

3

4

> of privilege, but it would be inappropriate for "senior attorneys" . . . to be called upon to review the documents. We do not know who has concluded that these documents are privileged. Perhaps some unknown paralegal. Perhaps a computer program. So a judge or a magistrate should review the determination made by the faceless person. We shall not do so. The burden is upon the person who asserts the privilege to show that the document falls within the privilege.

5

6

7

*In re Uranium Antitrust Litig.*, 552 F. Supp. 517, 517 (N.D. Ill. 1982). The court's remedy in that case was to order production of all documents withheld under the claims of privilege.[9]  *Id.* at 518. Plaintiffs urge this Court to impose the same remedy here.

8

9

> **1.      Defendants Have Unreasonably And Impermissibly Used Overbroad Assertions Of Privilege To Withhold And Delay Responsive Documents From Production**

10

11

12

13

14

15

16

17

18

Defendants have used these unreasonable claims of privilege to delay the production of thousands of responsive documents to plaintiffs until the close of discovery. Defendants' responses to plaintiffs' first discovery requests were due October 25, 2007, almost two months after plaintiffs' served these requests. Defendants informed plaintiffs prior to that date that they would not be producing a single document until after November 1, 2007. As a result of proceedings before this Court, defendants were ordered to produce documents on November 1, 2007, and the parties entered into a stipulation for a rolling production schedule throughout the month of November according to which defendants would produce all documents responsive to both sets of plaintiffs' discovery requests by November 30, 2007.

19

20

21

22

It is now November 30, 2007. Defendants have made thousands of plainly erroneous and/or insufficient assertions of privilege that they have refused to correct, despite attempts by plaintiffs to induce them to do so. Defendants continue to withhold these documents from production. Moreover, defendants obstructed the discovery process further by failing to submit

23

24

25

26

27

28

---

[9] Additionally, the Court cautioned that any motion for reconsideration would be considered "only in respect to documents which are described with particularity in the motion, accompanied by a particularized assertion of the privilege, and also accompanied by the personal certification of the lawyer who will appear as lead counsel for the party at the trial of this case that he or she has personally inspected the document in question and asserts the privilege or immunity based upon a reasonable comprehension of the contents of the document, the underlying principles of law applicable to the privilege or immunity and in good faith." *In re Uranium Antitrust Litigation*, 552 F.Supp. 517, 518 (N.D. Ill. 1982)

1  to the Court documents withheld as privileged for almost a month, despite clear court orders to

2  do so, frustrating the Court's opportunity to review these documents.

3          The premise of a privilege log is that it identifies documents which are responsive to

4  requests for production and, but for the assertion of privilege, would be produced.

5  Presumptively all of the documents listed in defendants' 800 pages of privilege logs are

6  responsive.  The purposeful and unreasonable withholding of responsive documents constitutes

7  a significant abuse of the discovery process.

8              **2.    Given Defendants' Abuse Of The Process And The Short Timeframe Of These Proceedings, This Court Should Order Defendants To**

9              **Immediately Produce All Documents In The Privilege Logs**

10          In considering insufficient and overbroad assertions of privilege, the Ninth Circuit has

11  quoted the Rule 26(f) advisory committee's note that "[e]xcessive discovery and evasion or

12  resistance to reasonable discovery requests pose significant problems. . . . The purpose of

13  discovery is to provide a mechanism for making relevant information available to the litigants .

14  . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools as

15  tactical weapons rather than to expose the facts and illuminate the issues[.]"  *Burlington N. &*

16  *Santa Fe Ry. Co. v. United States Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148-49 (9th

17  Cir. 2005) (third alteration in original).  The *Burlington* court held that courts should apply "a

18  holistic reasonableness analysis, intended to forestall needless waste of time and resources, as

19  well as tactical manipulation of the rules and the discovery process."  *Id.*  at 1149.  Courts have

20  also considered the shortened timeframe for discovery and the case proceedings, as well as

21  fairness to the parties in considering whether to find a waiver and order production of the

22  documents.  *See, e.g.*, *Eureka*, 136 F.R.D. at 184-85 (holding that a party's failure to properly

23  assert the privilege, failure to attempt to timely rectify its errors in asserting privilege, and

24  stonewalling during the discovery process effected a waiver by implication).  Unfortunately,

25  defendants' overbroad assertions of privilege and unreasonable refusal to narrow these

26  assertions have already resulted in the inefficient use of this Court's and plaintiffs' resources.

27  The most efficient, and most just, solution given this late point in the discovery process, is to

28  order defendants to produce all of the documents identified in their logs—which are

1  presumptively responsive because defendants included them in their log of documents that

2  would have been produced if not for the privilege.[10]

3      Moreover, even if the Court determines that an order to produce documents is more

4  appropriately characterized as a discovery sanction than the result of a wavier of privilege by

5  defendants, sanctions of this type are warranted in the instant case.  Defendants have engaged

6  in willfully obstructionist behaviors, from producing and refusing to narrow grossly overbroad

7  privilege logs to acting in violation of orders from this Court to submit documents for *in

8  camera* review for which they asserted privileges.

9      Defendants were on notice since the November 1, 2007 telephonic hearing that they

10  were ordered to submit documents for which they assert a privilege with the Magistrate Court

11  for *in camera* review.  *See Bhan v. NME Hosps.*, 929 F.2d 1404, 1415 (9th Cir. 1991)

12  ("Discovery sanctions may be imposed for failure to comply with an oral order."); *Henry v.*

13  *Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) (holding Rule 37 sanctions may be imposed on a

14  party for disobedience to a court's request in oral proceedings, so long as those proceedings

15  give the party unequivocal notice that a court has asked that certain documents be produced).

16      Defendants' purposeful delay in submitting privileged documents shows little regard for

17  the Three-Judge Court's clear direction in its October 10, 2007 scheduling order that

18  proceedings in this urgent case be pursued in an expedited manner.  Defendants' actions also

19  threatened to compromise this Court's ability to conduct discovery proceedings in this urgent

20  case in an expedited fashion.  Defendants' obstructionist actions should not be tolerated, and

21  are sanctionable, pursuant either to Rule 37 or as an exercise of the court's inherent powers "to

22  achieve the orderly and expeditious disposition of cases."  *See Unigard Security Ins. Co. v.*

23  *Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal quotation marks

24

25  [10] Any allegations defendants may make that an order for immediate production of all of the
    documents in the privilege log will result in the disclosure of documents that are legitimately protected

26  by privileges such as attorney-client privilege are sufficiently addressed by the Non-Wavier and
    Confidentiality Agreement ("Clawback" Agreement) executed by the parties.  This agreement provides

27  that inadvertent disclosure of documents which are subject to legitimate claims for protection does not
    waive the privilege.  Rifkin Decl. ¶ 23, Exh.O.

28

omitted); *see also Bhan*, 490 F.2d at 318.   Appropriate sanctions for defendants' abuse of the discovery process could include a finding that Defendants' privilege claims with respect to these documents are deemed waived, monetary sanctions, or other sanctions the court may deem appropriate in this case.  *See* Rule 37(b)(2).

## IV.    CONCLUSION

Defendants have abused the discovery process.  They have made grossly overbroad assertions of privilege that include documents for which these assertions are clearly frivolous. They have not met their burden of establishing the elements of privileges asserted for each document withheld.  Even those documents that may arguably fall within the scope of the qualified privileges should be disclosed as fundamentally linked to issues that defendants have put at the heart of this case.

For these reasons, plaintiffs request that the Court order immediate production of all documents for which defendants have not met their burden for asserting privilege, either because they have failed to provide adequate information or because privilege clearly does not apply.  Plaintiffs further request that the Court find that the qualified deliberative process  and other privileges are overcome because the government's decision-making is squarely at issue in this case, and because the need for the materials and accurate fact-finding by the Court considering a prisoner release order override the government's interest in non-disclosure.  In the alternative, plaintiffs request that the Court deem defendants' abuse of the discovery process a wavier of privilege, and order immediate production of all of the withheld documents.

Dated:  November 30, 2007                            Respectfully submitted,

                                                     */s/ Lori Rifkin*
                                                     Lori Rifkin
                                                     Rosen, Bien & Galvan
                                                     Attorneys for Coleman Plaintiffs
                                                     And On behalf of Plata Plaintiffs