# EXHIBIT A



**Office of the Governor**    ARNOLD SCHWARZENEGGER
THE PEOPLE'S GOVERNOR

# PROCLAMATION

10/04/2006

## Prison Overcrowding State of Emergency Proclamation

PROCLAMATION
by the
Governor of the State of California

**WHEREAS,** the California Department of Corrections and Rehabilitation (CDCR) is required by California law to house inmates committed to state prison; and

**WHEREAS,** various trends and factors, including population increases, parole policies, sentencing laws, and recidivism rates have created circumstances in which the CDCR is now required to house a record number of inmates in the CDCR prison system, making the CDCR prison system the largest state correctional system in the United States, with a total inmate population currently at an all-time high of more than 170,000 inmates; and

**WHEREAS,** due to the record number of inmates currently housed in prison in California, all 33 CDCR prisons are now at or above maximum operational capacity, and 29 of the prisons are so overcrowded that the CDCR is required to house more than 15,000 inmates in conditions that pose substantial safety risks, namely, prison areas never designed or intended for inmate housing, including, but not limited to, common areas such as prison gymnasiums, dayrooms, and program rooms, with approximately 1,500 inmates sleeping in triple-bunks; and

**WHEREAS,** the current severe overcrowding in 29 CDCR prisons has caused substantial risk to the health and safety of the men and women who work inside these prisons and the inmates housed in them, because:

With so many inmates housed in large common areas, there is an increased, substantial risk of violence, and greater difficulty controlling large inmate populations.

With large numbers of inmates housed together in triple-bunks, there is an increased, substantial risk for transmission of infectious illnesses.

The triple-bunks and tight quarters create line-of-sight problems for correctional officers by blocking views, creating an increased, substantial security risk.

**WHEREAS,** the current severe overcrowding in these 29 prisons has also overwhelmed the electrical systems and/or wastewater/sewer systems, because those systems are now often required to operate at or above the maximum intended capacity, resulting in an increased, substantial risk to the health and safety of CDCR staff, inmates, and the public, because:

Overloading the prison electrical systems has resulted in power failures and blackouts within the prisons, creating increased security threats. It has also damaged fuses and transformers.

Overloading the prison sewage and wastewater systems has resulted in the discharge of waste beyond treatment capacity, resulting in thousands of gallons of sewage spills and environmental contamination.

And when the prisons "overdischarge" waste, bacteria can contaminate the drinking water supply, putting the public's health at an increased, substantial risk.

**WHEREAS,** overloading the prison sewage and water systems has resulted in increased, substantial risk of damage to state and privately owned property and has resulted in multiple fines, penalties and/or notices of violations to the CDCR related to wastewater/sewer system overloading such as groundwater contamination and environmental pollution; and

**WHEREAS,** overcrowding causes harm to people and property, leads to inmate unrest and misconduct, reduces or eliminates programs, and increases recidivism as shown within this state and in others; and

**WHEREAS,** in addition to all of the above, in the 29 prisons with severe overcrowding, the following circumstances exist:

Avenal State Prison has an operational housing capacity of 5,768 inmates, but it currently houses 7,422 inmates, with 1,654 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 64 incidents of assault/battery by inmates — 31 of them against CDCR staff — along with 15 riots/melees, and 27 weapon confiscations.

The California Correctional Center has an operational housing capacity of 5,724 inmates, but it currently houses 6,174 inmates, with 450 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 128 incidents of assault/battery by inmates — 16 of them against CDCR staff — along with 34 riots/melees, and 21 weapon confiscations.

The California Correctional Institution has an operational housing capacity of 4,931, but it currently houses 5,702 inmates, with 771 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 125 incidents of assault/battery by inmates — 79 of them against CDCR staff — along with 5 riots/melees, and 57 weapon confiscations.

Centinela State Prison has an operational housing capacity of 4,368, but it currently houses 4,956 inmates, with 588 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 141

incidents of assault/battery by inmates — 30 of them against CDCR staff — along with 10 riots/melees, and 151 weapon confiscations.

The California Institution for Men has an operational housing capacity of 5,372, but it currently houses 6,615 inmates, with 1,243 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 170 incidents of assault/battery by inmates — 57 of them against CDCR staff — along with 21 riots/melees, and 47 weapon confiscations.

The California Institution for Women has an operational housing capacity of 2,228, but it currently houses 2,624 inmates, with 396 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 65 incidents of assault/battery by inmates — 26 of them against CDCR staff — and 6 weapon confiscations.

The California Men's Colony has an operational housing capacity of 6,294, but it currently houses 6,574 inmates, with 280 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 151 incidents of assault/battery by inmates — 33 of them against CDCR staff — along with 11 riots/melees, and 29 weapon confiscations.

The California State Prison at Corcoran has an operational housing capacity of 4,954, but it currently houses 5,317 inmates, with 363 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 147 incidents of assault/battery by inmates — 58 of them against CDCR staff — along with 5 riots/melees, and 111 weapon confiscations.

The California Rehabilitation Center has an operational housing capacity of 4,660, but it currently houses 4,856 inmates, with 196 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 65 incidents of assault/battery by inmates — 28 of them against CDCR staff — 9 riots/melees, and 34 weapon confiscations.

The Correctional Training Facility has an operational housing capacity of 6,157, but it currently houses 7,027 inmates, with 870 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 85 incidents of assault/battery by inmates — 26 of them against CDCR staff — along with 9 riots/melees, and 27 weapon confiscations.

Chuckawalla Valley State Prison has an operational housing capacity of 3,443, but it currently houses 4,292 inmates, with 849 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 50 incidents of assault/battery by inmates — 11 of them against CDCR staff — along with 5 riots/melees, and 21 weapon confiscations.

Deuel Vocational Institution has an operational housing capacity of 3,115, but it currently houses 3,911 inmates, with 796 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 114 incidents of assault/battery by inmates — 54 of them against CDCR staff — along with 7 riots/melees, and 37 weapon confiscations.

High Desert State Prison has an operational housing capacity of 4,346, but it currently houses 4,706 inmates, with 360 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 351

incidents of assault/battery by inmates — 44 of them against CDCR staff — along with 6 riots/melees, and 289 weapon confiscations.

Ironwood State Prison has an operational housing capacity of 4,185, but it currently houses 4,665 inmates, with 480 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 96 incidents of assault/battery by inmates — 19 of them against CDCR staff — along with 14 riots/melees, and 52 weapon confiscations.

Kern Valley State Prison has an operational housing capacity of 4,566, but it currently houses 4,686 inmates, with 120 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 146 incidents of assault/battery by inmates — 60 of them against CDCR staff — along with 10 riots/melees, and 46 weapon confiscations.

TheCalifornia State Prison at Los Angeles has an operational housing capacity of 4,230, but it currently houses 4,698 inmates, with 468 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 211 incidents of assault/battery by inmates — 123 of them against CDCR staff — along with 4 riots/melees, and 101 weapon confiscations.

Mule Creek State Prison has an operational housing capacity of 3,197, but it currently houses 3,929 inmates, with 732 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 65 incidents of assault/battery by inmates — 35 of them against CDCR staff — along with 1 riot/melee, and 28 weapon confiscations.

North Kern State Prison has an operational housing capacity of 5,189, but it currently houses 5,365 inmates, with 176 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 135 incidents of assault/battery by inmates — 43 of them against CDCR staff — along with 16 riots/melees, and 70 weapon confiscations.

Pelican Bay State Prison has an operational housing capacity of 3,444, but it currently houses 3,604 inmates, with 160 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 256 incidents of assault/battery by inmates — 88 of them against CDCR staff — along with 9 riots/melees, and 106 weapon confiscations.

Pleasant Valley State Prison has an operational housing capacity of 4,368, but it currently houses 5,112 inmates, with 744 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 205 incidents of assault/battery by inmates — 59 of them against CDCR staff — along with 12 riots/melees, and 26 weapon confiscations.

The Richard J. Donovan Correctional Facility has an operational housing capacity of 4,120, but it currently houses 4,720 inmates, with 600 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 244 incidents of assault/battery by inmates — 118 of them against CDCR staff — along with 11 riots/melees, and 96 weapon confiscations.

The California State Prison at Sacramento has an operational housing capacity of 2,973, but it currently

houses 3,213 inmates, with 240 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 264 incidents of assault/battery by inmates — 159 of them against CDCR staff — along with 5 riots/melees, and 118 weapon confiscations.

The California Substance Abuse Treatment Facility and State Prison at Corcoran has an operational housing capacity of 6,360, but it currently houses 7,593 inmates, with 1,233 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 120 incidents of assault/battery by inmates — 53 of them against CDCR staff — along with 20 riots/melees, and 124 weapon confiscations.

The Sierra Conservation Center has an operational housing capacity of 5,657, but it currently houses 6,107 inmates, with 450 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 61 incidents of assault/battery by inmates — 18 of them against CDCR staff — along with 19 riots/melees, and 50 weapon confiscations.

The California State Prison at Solano has an operational housing capacity of 5,070, but it currently houses 5,858 inmates, with 788 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 60 incidents of assault/battery by inmates — 26 of them against CDCR staff — along with 4 riots/melees, and 114 weapon confiscations.

San Quentin State Prison has an operational housing capacity of 4,933, but it currently houses 5,183 inmates, with 287 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 262 incidents of assault/battery by inmates — 123 of them against CDCR staff — along with 15 riots/melees, and 118 weapon confiscations.

Salinas Valley State Prison has an operational housing capacity of 4,200, but it currently houses 4,680 inmates, with 480 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 181 incidents of assault/battery by inmates — 82 of them against CDCR staff — along with 7 riots/melees, and 91 weapon confiscations.

Valley State Prison for Women has an operational housing capacity of 3,902, but it currently houses 3,958 inmates, with 56 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 125 incidents of assault/battery by inmates — 75 of them against CDCR staff — and 15 weapon confiscations.

Wasco State Prison has an operational housing capacity of 5,838, but it currently houses 6,098 inmates, with 260 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 226 incidents of assault/battery by inmates — 97 of them against CDCR staff — along with 32 riots/melees, and 82 weapon confiscations.

**WHEREAS,** some of these 29 severely overcrowded prisons may even be housing more inmates, because the inmate population continually fluctuates among the CDCR prisons; and

**WHEREAS,** in addition to the 1,671 incidents of violence perpetrated in these 29 severely overcrowded prisons by inmates against CDCR staff last year, and the 2,642 incidents of violence perpetrated in these prisons on inmates by other inmates in the last year, the suicide rate in these 29 prisons is approaching an average of one per

week; and

**WHEREAS,** the federal court in the *Coleman* case found mental-health care in CDCR prisons to be below federal constitutional standards due in part to the lack of appropriate beds and space; and

**WHEREAS,** the use of common areas for inmate housing has severely modified or eliminated certain inmate programs in the 29 prisons with severe overcrowding; and

**WHEREAS,** the severe overcrowding has also substantially limited or restricted inmate movement, causing significantly reduced inmate attendance in academic, vocational, and rehabilitation programs; and

**WHEREAS,** overcrowded prisons in other states have experienced some of the deadliest prison riots in American history, including:

In 1971, the nation's deadliest prison riot occurred in Attica, New York, resulting in the death of 43 people. On the day of this riot, the prison — which was built for 1600 — housed approximately 2,300 inmates.

In 1981, a riot occurred in the New Mexico State Penitentiary. More than 30 inmates were killed, more than 100 people were injured, and 12 officers were taken hostage, some of whom were beaten, sexually assaulted, and/or raped. On the day of this riot, the prison — which was built for 900 — housed approximately 1,136 inmates.

In 1993, a riot occurred in Lucasville, Ohio. One officer was murdered, four officers were seriously injured, and nine inmates were killed. On the day of this riot, the prison — which was built for 1600 — housed approximately 2,300 inmates.

**WHEREAS,** I believe immediate action is necessary to prevent death and harm caused by California's severe prison overcrowding; and

**WHEREAS,** because of the housing shortage in CDCR prisons, the CDCR has current contracts with four California counties to house 2,352 additional state inmates in local adult jails, but this creates the following overcrowding problem in the county jails:

According to a report by the California State Sheriffs' Association in June 2006, adult jails recently averaged a daily population of approximately 80,000 inmates. On a typical day, the county jails lacked space for more than 4,900 inmates across the state.

Based on the same report, 20 of California's 58 counties have court-imposed population caps resulting from litigation brought by or on behalf of inmates in crowded jails and another 12 counties have self-imposed caps.

Most of California's jail population consists of felony inmates, but when county jails are full, someone in custody must be released before a new inmate can be admitted.

The 2006 Sheriffs' Association report states that last year, 233,388 individuals statewide avoided incarceration or were released early into local communities because of the lack of jail space.

**WHEREAS,** overcrowding conditions are projected to get even worse in the coming year, to the point that the CDCR expects to run out of all common area space to house prisoners in mid-2007, and will be unable to receive any new inmates; and

**WHEREAS,** in January 2006, I proposed $6 billion in the Strategic Growth Plan to help manage inmate population at all levels of government by increasing the number of available local jail beds and providing for two new prisons and space for 83,000 prisoners to address California's current and future incarceration needs; and

**WHEREAS,** the California Legislature failed to act upon this proposal; and

**WHEREAS,** in March 2006, a proposal was submitted as part of my 2006-07 budget to enable the CDCR to contract for a total of 8,500 beds in community correctional facilities within the state; and

**WHEREAS,** the California Legislature denied this proposal; and

**WHEREAS,** on June 26, 2006, I issued a proclamation calling the Legislature into special session because I believed urgent action was needed to address this severe problem in California's prisons, and I wanted to give the Legislature a further opportunity to address this crisis; and

**WHEREAS,** the CDCR submitted detailed proposals to the Legislature to address the immediate and longer-term needs of the prison system in an effort resolve the overcrowding crisis; and

**WHEREAS,** the California Legislature failed to adopt the proposals submitted by the CDCR, and also failed to adopt any proposals of its own; and

**WHEREAS,** in response, my office directed the CDCR to conduct a survey of certain inmates in California's general population to determine how many might voluntarily transfer to out-of-state correctional facilities; and

**WHEREAS,** the CDCR reports that more than 19,000 inmates expressed interest in voluntarily transferring to a correctional facility outside of California; and

**WHEREAS,** the overcrowding crisis gets worse with each passing day, creating an emergency in the California prison system.

**NOW, THEREFORE, I, ARNOLD SCHWARZENEGGER,** Governor of the State of California, in light of the aforementioned, find that conditions of extreme peril to the safety of persons and property exist in the 29 CDCR prisons identified above, due to severe overcrowding, and that the magnitude of the circumstances exceeds the capabilities of the services, personnel, equipment, and facilities of any geographical area in this state. Additionally, the counties within the state are harmed by this situation, as the inability to appropriately house inmates directly impacts local jail capacity and the early release of felons. This crisis spans the eastern, western, northern, and southern parts of the state and compromises the public's safety, and I find that local authority is inadequate to cope with the emergency. Accordingly, under the authority of the California Emergency Services Act, set forth at Title 2, Division 1, Chapter 7 of the California Government Code, commencing with section 8550, I hereby proclaim that a State of Emergency exists within the State of California's prison system.

Pursuant to this proclamation:

I. The CDCR shall, consistent with state law and as deemed appropriate by the CDCR Secretary for the sole purpose of immediately mitigating the severe overcrowding in these 29 prisons and the resulting impacts within California, immediately contract for out-of-state correctional facilities to effectuate voluntary transfers of California prison inmates to facilities outside of this state for incarceration consisting of constitutionally adequate housing, care, and programming.

II. The CDCR Secretary shall, after exhausting all possibilities for voluntary transfers of inmates, and in compliance with the Interstate Corrections Compact and the Western Interstate Corrections Compact, and as he deems necessary and appropriate to mitigate this emergency, effectuate involuntary transfers of California prison inmates, based on criteria set forth below, to institutions in other states and those of the federal government for incarceration consisting of constitutionally adequate housing, care, and programming. In such instance, because strict compliance with California Penal Code sections 11191 and 2911 would prevent, hinder, or delay the mitigation of the severe overcrowding in these prisons, applicable provisions of these statutes are suspended to the extent necessary to enable the CDCR to transfer adult inmates, sentenced under California law, to institutions in other states and those of the federal government without consent. This suspension is limited to the scope and duration of this emergency.

A.    The CDCR Secretary shall prioritize for involuntary transfer the inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to immediate deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.

2. Inmates who are paroling outside of California.

3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.

4. Inmates who have family or supportive ties in a transfer state.

5. Other inmates as deemed appropriate by the CDCR Secretary.

B.    No person under commitment to the Division of Juvenile Justice may be considered for such transfer.

III.   The CDCR Secretary shall, before selecting any inmate for transfer who has individual medical and/or mental-health needs, consult with the court-appointed Receiver of the CDCR medical system and/or the court-assigned Special Master in the *Coleman* mental-health case, depending on the healthcare needs of the inmate, to determine whether a transfer would be appropriate.

IV.   The CDCR Secretary shall, before effectuating any inmate transfer, carefully and thoroughly evaluate all appropriate factors, including, but not limited to, the cost-effectiveness of any such transfer and whether an inmate selected for transfer has any pending appeals or hearings that may be impacted by such transfer.

V.   The CDCR shall, as deemed appropriate by the CDCR Secretary, contract for facility space, inmate transportation, inmate screening, the services of qualified personnel, and/or for the supplies, materials, equipment, and other services needed to immediately mitigate the severe overcrowding and the resulting impacts within California. Because strict compliance with the provisions of the Government Code and the Public Contract Code applicable to state contracts would prevent, hinder, or delay the mitigation of the severe overcrowding in these prisons, applicable provisions of these statutes, including, but not limited to, advertising and competitive bidding requirements, are suspended to the extent necessary to enable the CDCR to enter into such contracts as expeditiously as possible. This suspension is limited to the scope and duration of this emergency.

**I FURTHER DIRECT** that as soon as hereafter possible, this proclamation be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this proclamation.



**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 4th day of October 2006.

ARNOLD SCHWARZENEGGER

Governor of California

**ATTEST:**

BRUCE McPHERSON

Secretary of State

**EXHIBIT B**

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DAVID S. CHANEY
    Chief Assistant Attorney General
3   FRANCES T. GRUNDER
    Senior Assistant Attorney General
4   ROCHELLE C. EAST
    Supervising Deputy Attorney General
5   LISA A. TILLMAN, State Bar No. 126424
    Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-7872
8    Fax: (916) 324-5205
     Email: Lisa.Tillman@doj.ca.gov

10  Attorneys for Defendants

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179775
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541- 9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

RECEIVED

NOV 1 3 2007

Rosen, Bien & Galvan

13              IN THE UNITED STATES DISTRICT COURT
14          FOR THE EASTERN DISTRICT OF CALIFORNIA
            AND THE NORTHERN DISTRICT OF CALIFORNIA
        UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
15       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

17

18  **RALPH COLEMAN, et al.,**                  2:90-cv-00520 LKK JFM P

19                              Plaintiffs,
                                              **THREE-JUDGE COURT**
        v.
20

21  **ARNOLD SCHWARZENEGGER, et al.,**

22                              Defendants.

23  **MARCIANO PLATA,**                        No. C01-1351

24                              Plaintiffs,
                                              **THREE JUDGE COURT**
25      v.

26  **ARNOLD SCHWARZENEGGER,**                 **DEFENDANT GOVERNOR
                                              SCHWARZENEGGER'S
27                              Defendants.    RESPONSES TO PLAINTIFF
                                              COLEMAN'S FIRST SET OF
28  //                                        INTERROGATORIES**

1    Propounding Party: Ralph Coleman

2    Responding Party: Defendant Governor Arnold Schwarzenegger

3    Set No.:        One

4                          **DEFINITIONS**

5       In construing these discovery responses, the following definitions shall apply:

6       1.     "PLAINTIFFS" shall mean class representatives Ralph Coleman, et al., the named

7    plaintiffs in the action *Coleman v. Schwarzenegger,* Case No. 90-0520 LKK JFM (E.D. Cal.)

8    (*Coleman*).

9       2.     "DEFENDANT" shall mean Governor Arnold Schwarzenegger, a named defendant in

10    the case of *Coleman* v. *Schwarzenegger*.

11       3.     "DEFENDANTS" shall mean each of the named defendants in the case of *Coleman* v.

12    *Schwarzenegger*, including James Tilton in his official capacity on behalf of the California

13    Department of Corrections and Rehabilitation (CDCR), Stephen Mayberg in his official capacity

14    on behalf of the Department of Mental Health (DMH), Michael Genest in his official capacity on

15    behalf of the Department of Finance (DOF), and the Governor.

16       4.     "PROCEEDING" shall mean the three-judge panel proceeding convened under 28

17    U.S.C. Section 2284 in the cases of *Coleman* and *Plata*.

18            **OVERALL OBJECTIONS TO INTERROGATORIES**

19       1.     DEFENDANT objects to Plaintiffs' definition of a California Department of

20    Corrections and Rehabilitation (CDCR) prison and a "prison" to include those housing units

21    within Department of Mental Health (DMH) facilities that house CDCR prisoners.

22    (Interrogatories, p. 2.) That definition mischaracterizes the role of DMH as a provider of housing

23    for incarcerated inmates. DMH's true role is defined by California Penal Code section 2684 as a

24    provider of inpatient mental health treatment to CDCR inmate-patients. Further, that definition

25    erroneously assumes the Governor's Emergency Proclamation of October 4, 2006 addressed

26    DMH as a provider of housing for incarcerated inmates. DEFENDANT will interpret the terms

27    "CDCR prison" and "prison" for the purposes of this request to mean those prisons within the

28    jurisdiction of the California Department of Corrections and Rehabilitation, pursuant to

1  California Penal Code section 5054.

2       2.    DEFENDANT objects that the discovery seeks INFORMATION that is neither

3  relevant PLAINTIFFS' claims in this PROCEEDING nor reasonably calculated to lead to the

4  discovery of admissible evidence.  PLAINTIFFS have refused to identify what if any claims they

5  will be asserting in the PROCEEDING.  Consequently, DEFENDANT objects that the discovery

6  requires DEFENDANT to speculate what claims may or may not be asserted by PLAINTIFFS.

7       3.    DEFENDANT objects that the requests are seek information equally available to

8  PLAINTIFFS, and that the requests are overbroad and unduly burdensome.  In accordance with

9  the *Coleman* and *Plata* remedial orders, PLAINTIFFS receive a monthly document productions

10  and other discovery from DEFENDANT and the Receiver appointed in *Plata*.

11       4.    DEFENDANT states that PLAINTIFFS are already in possession of DEFENDANTS'

12  filed plans for the provision of mental health care beds, for the recruitment and retention of

13  staffing for those mental health beds, and for the implementation of appropriate mental health

14  care in those beds. DEFENDANT asserts the deliberative process privilege to all information

15  sought or contained in drafts of those *Coleman* plans, all drafts of any budget proposals to fund

16  those plans, and inter- and intra-Defendant emails concerning those plans.

17       5.    Given the shortened time for DEFENDANT'S responses to these interrogatories,

18  DEFENDANT hereby reserves the right to supplement these responses at a later date.

19       6.    To the extent any request seeks information from documents prepared, created, or

20  generated by the Office of the Inspector General, DEFENDANTS object to the discovery of such

21  information on the basis of the official information privilege and on the basis of the right to

22  privacy in medical, mental health, and personnel matters.  Non-privileged reports of the Office of

23  the Inspector General are available on its public web site.

24            **RESPONSES AND OBJECTIONS TO INTERROGATORIES**

25  INTERROGATORY NO. 1:

26       Do you contend that the state of emergency in the California prison system that you

27  declared, pursuant to your October 4, 2006 overcrowding proclamation, is now over?

28  //

Governor's Responses to Coleman Interrogatories, Set One

3

1  RESPONSE TO INTERROGATORY NO. 1:

2        DEFENDANT objects that this request seeks information protected from disclosure by

3  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

4  critical analysis privilege, and official information privilege. DEFENDANT objects that this

5  interrogatory seeks information concerning the overall population of CDCR and so exceeds

6  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

7  disordered inmates and exceeds the jurisdiction of the *Coleman* case.

8        Subject to and without waiving the foregoing objections, DEFENDANT responds as

9  follows: No, the Governor has not terminated the Emergency Proclamation, and his

10  administration continues to aggressively use the emergency authority to address overcrowding in

11  ways that are less intrusive than a prisoner release order.

12  INTERROGATORY NO. 2:

13        If your response to interrogatory number one is affirmative, state all facts and identify all

14  documents and witnesses in support of your contention.

15  RESPONSE TO INTERROGATORY NO. 2:

16        Not applicable. See the objections and response to interrogatory number 1.

17  INTERROGATORY NO. 3:

18        Do you contend that the substantial risk to the health and safety of staff and inmates in

19  CDCR prisons caused by severe overcrowding in CDCR prisons that you cited in your

20  overcrowding proclamation has been alleviated?

21  RESPONSE TO INTERROGATORY NO. 3:

22        DEFENDANT objects that this request seeks information protected from disclosure by

23  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

24  critical analysis privilege, and official information privilege. DEFENDANT objects that this

25  interrogatory seeks information concerning the overall population of CDCR and so exceeds

26  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

27  disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

28  is vague in the use of the word 'alleviated', as this word is subject to different meanings and is

1 | not defined in the interrogatories.

2 |      Subject to and without waiving the foregoing objections, DEFENDANT responds as

3 | follows: The Governor has not terminated the Emergency Proclamation, and his

4 | administration continues to aggressively use the emergency authority to address overcrowding in

5 | ways that are less intrusive than a prisoner release order.

6 | <u>INTERROGATORY NO. 4:</u>

7 |      If your response to interrogatory number three is affirmative, state all facts and identify all

8 | documents and witnesses in support of your contention.

9 | RESPONSE TO INTERROGATORY NO. 4:

10 |      Not applicable. See the objections and response to interrogatory number 3.

11 | <u>INTERROGATORY NO. 5:</u>

12 |      Do you contend that the substantial risk of violence in CDCR prisons caused by severe

13 | overcrowding in CDCR prisons that you cited in your overcrowding proclamation has been

14 | alleviated?

15 | RESPONSE TO INTERROGATORY NO. 5:

16 |      DEFENDANT objects that this request seeks information protected from disclosure by

17 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

18 | critical analysis privilege, and official information privilege. DEFENDANT objects that this

19 | interrogatory seeks information concerning the overall population of CDCR and so exceeds

20 | Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

21 | disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

22 | is vague in the use of the word 'alleviated', as this word is subject to different meanings and is

23 | not defined in the interrogatories.

24 |      Subject to and without waiving the foregoing objections, DEFENDANT responds as

25 | follows: The Governor has not terminated the Emergency Proclamation, and his

26 | administration continues to aggressively use the emergency authority to address overcrowding in

27 | ways that are less intrusive than a prisoner release order.

28 | //

Governor's Responses to Coleman Interrogatories, Set One

1  INTERROGATORY NO. 6:

2      If your response to interrogatory number five is affirmative, state all facts and identify all

3  documents and witnesses in support of your contention.

4  RESPONSE TO INTERROGATORY NO. 6:

5      Not applicable.  See the objections and response to interrogatory number 5.

6  INTERROGATORY NO. 7:

7      Do you contend that the substantial risk of transmission of infectious diseases in CDCR

8  prisons caused by severe overcrowding in CDCR prisons that you cited in your overcrowding

9  proclamation has been alleviated?

10  RESPONSE TO INTERROGATORY NO. 7:

11      DEFENDANT objects that this request seeks information protected from disclosure by

12  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

13  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

14  interrogatory seeks information concerning the overall population of CDCR and so exceeds

15  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

16  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

17  is vague in the use of the word 'alleviated' as this word is subject to different meanings and is

18  not defined in the interrogatories.

19      Subject to and without waiving the foregoing objections, DEFENDANT responds as

20  follows:  The Governor has not terminated the Emergency Proclamation, and his

21  administration continues to aggressively use the emergency authority to address overcrowding in

22  ways that are less intrusive than a prisoner release order.

23  INTERROGATORY NO. 8:

24      If your response to interrogatory number seven is affirmative, state all facts and identify

25  all documents and witnesses in support of your contention.

26  RESPONSE TO INTERROGATORY NO. 8:

27      Not applicable.  See the objections and response to interrogatory number 7.

28  //

Governor's Responses to Coleman Interrogatories, Set One

INTERROGATORY NO. 9:

Do you contend that the substantial security risk in CDCR prisons caused by severe overcrowding in CDCR prisons that you cited in your overcrowding proclamation has been alleviated?

RESPONSE TO INTERROGATORY NO. 9:

DEFENDANT objects that this request seeks information protected from disclosure by the attorney-client privilege, attorney work product privilege, deliberative process privilege, self critical analysis privilege, and official information privilege. DEFENDANT objects that this interrogatory seeks information concerning the overall population of CDCR and so exceeds Plaintiff Coleman's standing as a representative of the certified class of seriously mentally disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory is vague in the use of the word 'alleviated' as this word is subject to different meanings and is not defined in the interrogatories.

Subject to and without waiving the foregoing objections, DEFENDANT responds as follows: The Governor has not terminated the Emergency Proclamation, and his administration continues to aggressively use the emergency authority to address overcrowding in ways that are less intrusive than a prisoner release order.

INTERROGATORY NO. 10:

If your response to interrogatory number nine is affirmative, state all facts and identify all documents and witnesses in support of your contention.

RESPONSE TO INTERROGATORY NO. 10:

Not applicable. See the objections and response to interrogatory number 9.

INTERROGATORY NO. 11:

Do you contend that the burdens on infrastructure (electrical systems and/or wastewater/sewer systems) caused by severe overcrowding in CDCR prisons that you cited in your overcrowding proclamation has been alleviated?

RESPONSE TO INTERROGATORY NO. 11:

DEFENDANT objects that this request seeks information protected from disclosure by

1  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

2  critical analysis privilege, and official information privilege. DEFENDANT objects that this

3  interrogatory seeks information concerning the overall population of CDCR and so exceeds

4  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

5  disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

6  is vague in the use of the word 'alleviated' as this word is subject to different meanings and is

7  not defined in the interrogatories.

8        Subject to and without waiving the foregoing objections, DEFENDANT responds as

9  follows: The Governor has not terminated the Emergency Proclamation, and his

10  administration continues to aggressively use the emergency authority to address overcrowding in

11  ways that are less intrusive than a prisoner release order.

12  INTERROGATORY NO. 12:

13        If your response to interrogatory number eleven is affirmative, state all facts and identify

14  all documents and witnesses in support of your contention.

15  RESPONSE TO INTERROGATORY NO. 12:

16        Not applicable. See the objections and response to interrogatory number 11.

17  INTERROGATORY NO. 13:

18        Do you contend that the effects of overcrowding that you described in your overcrowding

19  proclamation as harm to people and property, inmate unrest and misconduct, reduc[tion] or

20  eliminat[ion] of programs, and increase[d] recidivism have been alleviated?

21  RESPONSE TO INTERROGATORY NO. 13:

22        DEFENDANT objects that this request seeks information protected from disclosure by

23  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

24  critical analysis privilege, and official information privilege. DEFENDANT objects that this

25  interrogatory seeks information concerning the overall population of CDCR and so exceeds

26  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

27  disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

28  is vague in the use of the word 'alleviated' as this word is subject to different meanings and is

1 | not defined in the interrogatories.

2 |      Subject to and without waiving the foregoing objections, DEFENDANT responds as

3 | follows: The Governor has not terminated the Emergency Proclamation, and his

4 | administration continues to aggressively use the emergency authority to address overcrowding in

5 | ways that are less intrusive than a prisoner release order.

6 | <u>INTERROGATORY NO. 14:</u>

7 |      If your response to interrogatory number thirteen is affirmative, state all facts and identify

8 | all documents and witnesses in support of your contention.

9 | RESPONSE TO INTERROGATORY NO. 14:

10 |      Not applicable. See the objections and response to interrogatory number 13.

11 | <u>INTERROGATORY NO. 15:</u>

12 |      Do you contend that the severe overcrowding at any of the 29 CDCR prisons that you

13 | cited in your overcrowding proclamation has been alleviated?

14 | RESPONSE TO INTERROGATORY NO.15:

15 |      DEFENDANT objects that this request seeks information protected from disclosure by

16 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

17 | critical analysis privilege, and official information privilege. DEFENDANT objects that this

18 | interrogatory seeks information concerning the overall population of CDCR and so exceeds

19 | Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

20 | disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

21 | is vague in the use of the word 'alleviated' is subject to different meanings and is not defined in

22 | the interrogatories.

23 |      Subject to and without waiving the foregoing objections, DEFENDANT responds as

24 | follows: The Governor has not terminated the Emergency Proclamation, and his

25 | administration continues to aggressively use the emergency authority to address overcrowding in

26 | ways that are less intrusive than a prisoner release order.

27 | <u>INTERROGATORY NO. 16:</u>

28 |      If your response to interrogatory number fifteen is affirmative, for each prison at which

Governor's Responses to Coleman Interrogatories, Set One

1  you contend that severe overcrowding has been alleviated, state all facts and identify all

2  documents and witnesses in support of your contention.

3  RESPONSE TO INTERROGATORY NO. 16:

4      Not applicable.  See the objections and response to interrogatory number 15.

5  INTERROGATORY NO. 17:

6      Do you contend that the use of non-traditional beds for inmate housing that you cited in

7  your overcrowding proclamation has been reduced or eliminated in any CDCR prison?

8  RESPONSE TO INTERROGATORY NO. 17:

9      DEFENDANT objects that this request seeks information protected from disclosure by

10  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

11  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

12  interrogatory seeks information concerning the overall population of CDCR and so exceeds

13  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

14  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, DEFENDANT

15  objects to this interrogatory as compound and as phrased in the disjunctive.

16      Subject to and without waiving the foregoing objections, DEFENDANT responds as

17  follows:  The Governor has not terminated the Emergency Proclamation, and his

18  administration continues to aggressively use the emergency authority to address overcrowding in

19  ways that are less intrusive than a prisoner release order.  For example, more than a thousand

20  inmates have been moved to out-of-state prisons since October 2006, and thousands more will be

21  transferred.  These out-of-state transfers have already resulted in the removal of hundreds of non-

22  traditional beds, and the plan is to remove thousands of non-traditional beds as further efforts to

23  address overcrowding are implemented.

24  INTERROGATORY NO. 18:

25      If your response to interrogatory number seventeen is affirmative, identify each CDCR

26  prison in which the use of non-traditional beds for inmate housing has been reduced or

27  eliminated, the specific location(s) in the prison where the use of non-traditional beds has been

28  reduced or eliminated.

1  RESPONSE TO INTERROGATORY NO. 18:

2      DEFENDANT objects to this interrogatory as compound and as phrased in the

3  conjunctive.

4      Subject to and without waiving the foregoing objections, DEFENDANT responds as

5  follows:  Not applicable. See the objections and response to interrogatory number 17.

6  INTERROGATORY NO. 19:

7      Do you contend that the severe overcrowding is no longer causing reduction in inmate

8  participation in academic, vocational, and rehabilitation programs that you described in your

9  overcrowding proclamation?

10  RESPONSE TO INTERROGATORY NO. 19:

11      DEFENDANT objects that this request seeks information protected from disclosure by

12  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

13  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

14  interrogatory seeks information concerning the overall population of CDCR and so exceeds

15  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

16  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, DEFENDANT

17  objects to this interrogatory as compound and as phrased in the disjunctive.

18      Subject to and without waiving the foregoing objections, DEFENDANT responds as

19  follows: No, the Governor has not terminated the Emergency Proclamation, and his

20  administration continues to aggressively use the emergency authority to address overcrowding in

21  ways that are less intrusive than a prisoner release order.

22  INTERROGATORY NO. 20:

23      If your response to interrogatory number nineteen is affirmative, state all facts and

24  identify all documents and witnesses in support of your contention.

25  RESPONSE TO INTERROGATORY NO. 20:

26      Not applicable. See the objections and response to interrogatory number 19.

27  INTERROGATORY NO. 21:

28      Do you contend that the deficiency of appropriate beds and space for the *Coleman* class

1    members that you cited in your overcrowding proclamation has been remedied or reduced?

2    RESPONSE TO INTERROGATORY NO. 21:

3        DEFENDANT objects that this request seeks information protected from disclosure by

4    the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

5    critical analysis privilege, and official information privilege. DEFENDANT objects that this

6    interrogatory seeks information concerning the overall population of CDCR and so exceeds

7    Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

8    disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, DEFENDANT

9    objects to this interrogatory as compound and as phrased in the conjunctive.

10        Subject to and without waiving the foregoing objections, DEFENDANT responds as

11    follows: The Governor has not terminated the Emergency Proclamation, and his

12    administration continues to aggressively use the emergency authority to address overcrowding in

13    ways that are less intrusive than a prisoner release order. Indeed, in the past few months,

14    Coleman class members have been provided a significant increase in mental health beds to

15    enable appropriate care in the following institutions: California Medical Facility, Vacaville

16    increased intermediate care beds by 30, with additional 50 mental health crisis care beds to

17    activate in 2008; Salinas Valley State Prison activated 112 additional intermediate care beds;

18    California State Prison, Sacramento activated 192 more Enhanced Outpatient Program beds;

19    Mule Creek State Prison provided an additional 295 beds to meet the needs of Level III and

20    Level IV inmates requiring Sensitive Needs Yard placement within the Enhanced Outpatient

21    Program. In the next few months, the Administration will provide additional treatment space at

22    Mule Creek State Prison, and will prepare a plan for additional bed and treatment space at

23    California Medical Facility, Vacaville for mental health care patients.

24        The issues cited in the Emergency Proclamation will be alleviated upon further

25    implementation of the reforms and plans stated in (a) DEFENDANT'S filed briefs in opposition

26    to Plaintiffs' motion to convene a three-judge panel in the *Coleman* and *Plata* cases, (b)

27    DEFENDANT'S plans filed with the *Coleman* court to provide mental health beds (the Mental

28    Health Bed Plan of August 2007), to enhance recruitment of mental health clinicians (filed

1 | October 1, 2007), to increase the pay of mental health clinicians within the California
2 | Department of Corrections and Rehabilitation and the Department of Mental Health (filed June
3 | 28, 2007), and to increase small management yards (filed October 29, 2007). In addition,
4 | DEFENDANT awaits the Receiver's Plan of Action, due on November 15, 2007. With the
5 | *Coleman* court's approval of DEFENDANT'S plan to create consolidated care centers for
6 | mental health care patients, the Administration will move forward on those plans to develop
7 | appropriate mental health beds for the present and forecasted *Coleman* population.
8 | INTERROGATORY NO. 22:
9 | If your response to interrogatory number twenty-one is affirmative, state all facts and
10 | identify all documents and witnesses in support of your contention.
11 | RESPONSE TO INTERROGATORY NO. 22:
12 | DEFENDANT objects that this request seeks information protected from disclosure by
13 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self
14 | critical analysis privilege, and official information privilege. DEFENDANT objects that this
15 | interrogatory seeks information concerning the overall population of CDCR and so exceeds
16 | Plaintiff Coleman's standing as a representative of the certified class of seriously mentally
17 | disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, DEFENDANT
18 | objects that this interrogatory seeks information equally available to Plaintiffs.
19 | Subject to and without waiving the foregoing objections, DEFENDANT responds as
20 | follows: Plaintiffs have already been provided with the non-privileged documents that are
21 | responsive to this request. Those documents have been filed with the *Coleman* court by
22 | DEFENDANT in the course of the *Coleman* case and include: Defendant's August 2007 mental
23 | health bed, Defendant's response to Special Master Keating's report on the August 2007 bed
24 | plan. In addition, DEFENDANT has provided status reports on the construction, staffing and
25 | licensure of mental health beds at the regularly scheduled meetings with the Special Master and
26 | Plaintiffs, known as Policy Meetings.
27 | The witnesses to this contention include and are not limited to: Doug McKeever of
28 | CDCR, Cindy Radavsky of DMH, Deborah Hysen of CDCR.

Governor's Responses to Coleman Interrogatories, Set One

1  INTERROGATORY NO. 23:

2      What is the current projected time period when you or CDCR expect to run out of all

3  common area space to house prisoners, previously described by you in your overcrowding

4  proclamation as mid-2007?

5  RESPONSE TO INTERROGATORY NO. 23:

6      DEFENDANT objects that this request seeks information protected from disclosure by

7  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

8  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

9  interrogatory seeks information concerning the overall population of CDCR and so exceeds

10  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

11  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, DEFENDANT

12  objects that this interrogatory is argumentative and assumes facts not in evidence.

13      Subject to and without waiving the foregoing objections, DEFENDANT responds as

14  follows: The Administration's less intrusive efforts to address overcrowding are having a

15  positive effect.  CDCR is currently reducing the number of non-traditional beds.

16  INTERROGATORY NO. 24:

17      Do you contend that the magnitude of the circumstances due to severe overcrowding that

18  you stated in your overcrowding proclamation to exceed the capabilities of services, personnel,

19  equipment, and facilities of any geographical area in California, have been reduced or alleviated?

20  RESPONSE TO INTERROGATORY NO. 24:

21      DEFENDANT objects that this request seeks information protected from disclosure by

22  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

23  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

24  interrogatory seeks information concerning the overall population of CDCR and so exceeds

25  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

26  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

27  is vague in the use of the word 'alleviated', as this word is subject to different meanings and is

28  not defined in the interrogatories.

1    Subject to and without waiving the foregoing objections, DEFENDANT responds as

2  follows: The Governor has not terminated the Emergency Proclamation, and his administration

3  continues to aggressively use the emergency authority to address overcrowding in ways that are

4  less intrusive than a prisoner release order.

5  INTERROGATORY NO. 25:

6    If your response to interrogatory number twenty-four is affirmative, state all facts and

7  identify all documents and witnesses in support of your contention.

8  RESPONSE TO INTERROGATORY NO. 25:

9    Not applicable. See the objections and response to interrogatory number 24.

10    Dated: November 9, 2007

11                        Respectfully submitted,

12                        EDMUND G. BROWN JR.
                          Attorney General of the State of California

13                        DAVID S. CHANEY
                          Chief Assistant Attorney General

14
                          FRANCES T. GRUNDER
15                        Senior Assistant Attorney General

16                        ROCHELLE C. EAST
                          Supervising Deputy Attorney General

17

18

19                        LISA A. TILLMAN
                          Deputy Attorney General
20                        Attorneys for Defendants

21
   response.gov.colemanrogs1.wpd
22   CF1997CS0003

23

24

25

26

27

28

## VERIFICATION

I, ROBERT GORE, declare:

I am the Acting Chief Deputy Cabinet Secretary for the California Governor's Office. Prior to serving in this role, I was the Deputy Cabinet Secretary. In these roles, I am actively involved with, and review, budgets and corrections issues for the Office of the Governor, a defendant in his official capacity in this pending action entitled *Coleman v. Schwarzenegger*. I have read the foregoing responses to the First Request for Production propounded by Plaintiff Ralph Coleman, and the foregoing responses to the First Set of Interrogatories propounded by Plaintiff Ralph Coleman, and state upon my information and belief that they are true and correct.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this ____9th____ day of November, 2007.

ROBERT GORE

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Coleman v. Schwarzenegger, et al.*; *Plata v. Schwarzenegger, et al.*
Nos.:    **01-1351 & 90-0520**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 07, 2007**, I served the attached : **DEFENDANT GOVERNOR SCHWAREZENEGGER'S RESPONSES TO PLAINTIFF COLEMAN'S FIRST SET OF INTERROGATORIES** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Sacramento, California 94244, addressed as follows:

| | |
|---|---|
| Claudia Center<br>The Legal Aid Society<br>Employment law Center<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107 | Richard Goff<br>Heller, Ehrman White & McAuliffe<br>701 Fifth Avenue<br>Seattle, WA 98104 |
| Warren E. George<br>Bingham McCutchen<br>3 Embarcadero Ctr., Fl. 24<br>San Francisco, CA 94111 | Martin H. Dodd<br>Futterman & Dupree<br>160 Sansome Street, 17th Street<br>San Francisco, CA 94109 |
| Ronald Yank<br>Carroll, Burdick & McDonough, LLP<br>44 Montgomery Street, Suite 400<br>San Francisco, CA 94104 | Ann Miller Ravel<br>Office of the County Counsel<br>County of Santa Clara<br>70 West Hedding, East Wing, 9th Floor<br>San Jose, CA 95110 |
| Jared Goldman<br>California Prison Healthcare Receivership<br>1731 Technology Dr., Suite 700<br>San Jose, CA 95110 | Steven s. Kaufhold<br>Akin Gump Straus Hauer & Feld LLP<br>580 California Street, 15th Floor<br>San Francisco, CA 94102 |

| Rod Pacheco<br>Chuck Hughes<br>Office of the District Attorney<br>County of Riverside<br>4075 Main Street, First Floor<br>Riverside, CA 92501 | Steven Woodside<br>Office of the County Counsel<br>575 Administration Dr., Room 105A<br>Santa Rosa, CA 95403 |
|---|---|
| Donald Specter<br>Prison Law Office<br>2173 'E' Francisco Blvd., Suite M<br>San Rafael, CA 94901 | Michael Bien<br>Rosen, Bien and Galvan<br>315 Montgomery Street, 10th Floor<br>San Francisco, CA 94104 |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 07, 2007**, at Sacramento, California.

S. Burke
Declarant

*S. Burke*
Signature

# EXHIBIT C

1  EDMUND G. BROWN JR.
Attorney General of the State of California
2  DAVID S. CHANEY
Chief Assistant Attorney General
3  FRANCES T. GRUNDER
Senior Assistant Attorney General
4  ROCHELLE C. EAST
Supervising Deputy Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
6    1300 I Street, Suite 125
P.O. Box 944255
7  Sacramento, CA 94244-2550
Telephone: (916) 327-7872
8  Fax: (916) 324-5205
Email: Lisa.Tillman@doj.ca.gov
9

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179775
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777–3200
Facsimile: (415) 541- 9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

RECEIVED

NOV 1 3 2007

Rosen, Bien & Galvan

10  Attorneys for Defendants

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE EASTERN DISTRICT OF CALIFORNIA

13         AND THE NORTHERN DISTRICT OF CALIFORNIA

14   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

15      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

16

| | |
|---|---|
| 17  **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM P |
| 18                                    Plaintiffs, | **THREE JUDGE COURT** |
| 19              v. | |
| 20  **ARNOLD SCHWARZENEGGER, et al.,** | |
| 21                                    Defendants. | |
| 22  **MARCIANO PLATA, et al.,** | No. C 01-1351 TEH |
| 23                                    Plaintiffs, | **THREE JUDGE COURT** |
| 24              v. | **DEFENDANT TILTON'S** |
| 25  **ARNOLD SCHWARZENEGGER, et al.,** | **RESPONSE TO RALPH** |
| 26                                    Defendants. | **COLEMAN'S** |
| | **INTERROGATORIES** |

27  Propounding Party: Ralph Coleman

28  Responding Party:  Defendant Tilton

Tilton Response to Coleman Interrogatories, Set One

1

1  Set No.:                    One

2                          **DEFINITIONS**

3      In construing these discovery responses, the following definitions shall apply:

4      1.      "PLAINTIFFS" shall mean class representatives Ralph Coleman, et al., the named

5  plaintiffs in the action *Coleman v. Schwarzenegger,* Case No. 90-0520 LKK JFM (E.D. Cal.)

6  (*Coleman*).

7      2.      "DEFENDANT" shall mean James Tilton, a named defendant in the case of

8  *Coleman* v. *Schwarzenegger.*

9      3.      "DEFENDANTS" shall mean each of the named defendants in the case of

10  *Coleman* v. *Schwarzenegger,* including James Tilton in his official capacity on behalf of the

11  California Department of Corrections and Rehabilitation (CDCR), Stephen Mayberg in his

12  official capacity on behalf of the Department of Mental Health (DMH), Michael Genest in his

13  official capacity on behalf of the Department of Finance (DOF), and the Governor.

14      4.      "PROCEEDING" shall mean the three-judge panel proceeding convened under 28

15  U.S.C. Section 2284 in the cases of *Coleman* and *Plata.*

16                   **OVERALL OBJECTIONS TO INTERROGATORIES**

17      1.      DEFENDANT objects to Plaintiffs' definition of a California Department of

18  Corrections and Rehabilitation (CDCR) prison and a "prison" to include those housing units

19  within Department of Mental Health (DMH) facilities that house CDCR prisoners.

20  (Interrogatories, p. 2.)  That definition mischaracterizes the role of DMH as a provider of housing

21  for incarcerated inmates.  DMH's true role is defined by California Penal Code section 2684 as a

22  provider of inpatient mental health treatment to CDCR inmate-patients.  Further, that definition

23  erroneously assumes the Governor's Emergency Proclamation of October 4, 2006 addressed

24  DMH as a provider of housing for incarcerated inmates.  DEFENDANT will interpret the terms

25  "CDCR prison" and "prison" for the purposes of this request to mean those prisons within the

26  jurisdiction of the California Department of Corrections and Rehabilitation, pursuant to

27  California Penal Code section 5054.

28      2.      DEFENDANT objects that the discovery seeks INFORMATION that is neither

1  relevant to PLAINTIFFS' claims in this PROCEEDING nor reasonably calculated to lead to the

2  discovery of admissible evidence. PLAINTIFFS have refused to identify what if any claims they

3  will be asserting in the PROCEEDING. Consequently, DEFENDANT objects that the discovery

4  requires DEFENDANT to speculate what claims may or may not be asserted by PLAINTIFFS.

5      3.    DEFENDANT objects that the requests are seek information equally available to

6  PLAINTIFFS, and that the requests are overbroad and unduly burdensome. In accordance with

7  the *Coleman* and *Plata* remedial orders, PLAINTIFFS receive monthly document productions

8  and other discovery from DEFENDANT and the Receiver appointed in *Plata*.

9      4.    DEFENDANT states that PLAINTIFFS are already in possession of

10  DEFENDANTS' filed plans for the provision of mental health care beds, for the recruitment and

11  retention of staffing for those mental health beds, and for the implementation of appropriate

12  mental health care in those beds. DEFENDANT asserts the deliberative process privilege to all

13  information sought or contained in drafts of those *Coleman* plans, all drafts of any budget

14  proposals to fund those plans, and inter- and intra-Defendant emails concerning those plans.

15      5.    Given the shortened time for DEFENDANT'S responses to these interrogatories,

16  DEFENDANT hereby reserves the right to supplement these responses at a later date.

17      6.    To the extent any request seeks information from documents prepared, created, or

18  generated by the Office of the Inspector General, DEFENDANTS object to the discovery of such

19  information on the basis of the official information privilege and on the basis of the right to

20  privacy in medical, mental health, and personnel matters. Non-privileged reports of the Office of

21  the Inspector General are available on its public web site.

22          **RESPONSES AND OBJECTIONS TO INTERROGATORIES**

23  <u>INTERROGATORY NO. 1:</u>

24      Do you contend that some cause other than overcrowding is the primary cause of your

25  ongoing violations of Plaintiffs' right to constitutionally adequate mental health care as set forth

26  in the court-approved Revised Program Guide?

27  RESPONSE TO INTERROGATORY NO. 1:

28      DEFENDANT objects that this request seeks information protected from disclosure by

Tilton Response to Coleman Interrogatories, Set One

3

1  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

2  critical analysis privilege, and official information privilege. Further, the interrogatory is

3  impermissibly vague and overbroad by failing to properly define the word overcrowding in terms

4  of any indicated population or number. Lastly, the interrogatory assumes facts not in evidence

5  and is vague as to any ongoing violations of Plaintiffs' right to constitutionally adequate mental

6  health care.

7      Subject to and without waiving the foregoing objections, DEFENDANT responds as

8  follows: The size of the overall CDCR inmate population was not and is not the primary cause of

9  any violation of Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health

10  care system.

11  INTERROGATORY NO. 2:

12      If your response to interrogatory number 1 is affirmative, identify what you contend to be

13  the primary cause of your violation of Plaintiffs' rights to constitutionally adequate mental health

14  care as set forth in the court-approved Revised Program Guide and state all facts and identify all

15  documents and witness in support of your contention.

16  RESPONSE TO INTERROGATORY NO. 2:

17      DEFENDANT objects that this request seeks information protected from disclosure by

18  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

19  critical analysis privilege, and official information privilege. Further, the interrogatory is

20  impermissibly vague and overbroad by failing to properly define the word overcrowding in terms

21  of any indicated population or number. The interrogatory is also impermissibly vague and

22  overbroad because the measure of Defendants' achievement of a constitutionally adequate mental

23  health care system is unresolved and in dispute. Lastly, the interrogatory assumes facts not in

24  evidence and is vague as to any ongoing violations of Plaintiffs' right to constitutionally adequate

25  mental health care.

26      Subject to and without waiving the foregoing objections, DEFENDANT responds as

27  follows: The size of the overall CDCR population is not the primary cause of any violation of

28  Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care system.

Tilton Response to Coleman Interrogatories, Set One

1  Multiple causes are at play, including and not limited to staff recruitment and retention

2  difficulties (for administrative staff, clinical staff, and correctional officers for the mental health

3  services delivery system), the paucity of a viable information technology system ( for record

4  keeping, medication management, and recruitment and retention of staff within the mental health

5  services delivery system), the nascent implementation of pay parity plans for mental health

6  clinicians within CDCR and DMH, problems in matching high care/high custody inmates with

7  appropriate mental health care beds, and the nascent development of appropriate forecasts of

8  mental health population.

9          DEFENDANT directs Plaintiff to the following documents and witnesses in support of

10  this statement:

11  1.      Monitoring Reports: Special Master Keating's monitoring reports for each round of tours

12  Witnesses on this matter include the Special Master and his appointed Deputy Special Master

13  and monitors.

14  2.      Bed Plans:

15          a. Defendants' filed bed plans of 2006 and 2007 addressing each level of care and type of

16  bed, including and not limited to the Supplemental Bed Plan Report of August 2007 and its

17  attached projections of the mental health population prepared by Navigant consulting group

18  (witnesses include Doug McKeever, Robin Dezember, John Misener, Michael Barks).

19          b. Special Master Keating's reports on Defendants' submitted bed plans, particularly

20  those concerning submitted bed plans of 2006 and 2007.

21          c. The *Coleman* court orders on Defendants' filed bed plans, including and not limited to

22  the October 18, 2007 order approving Defendants' August 2007 mental health bed plan, the

23  October 20, 2006 order approving the program population projections of Navigant and directing

24  CDCR to contract with Navigant for such projections through 2009, as well as the transcripts of

25  the April 2006 evidentiary hearing before Judge Karlton.

26  Witnesses on this matter include Doug McKeever, Robin Dezember, John Misener, Michael

27  Barks.

28  3.      Population:

Tilton Response to Coleman Interrogatories, Set One

1   a. Special Master Keating's report of May 31, 2007 in response to the *Coleman*

2 court's request for information on the population issue. Witnesses on this matter include the

3 Special Master and his appointed Deputy Special Master and monitors.

4   b. Defendants' filed briefs on the population, including and not limited to

5 Defendants' December 2006 brief in response to Plaintiffs' motion to convene a three-judge

6 panel, Defendants' May 2007 supplemental brief in response to Plaintiffs' motion to convene a

7 three-judge panel, with supporting declarations. Witnesses on this matter include Kathy Jett of

8 CDCR, Deborah Hysen of CDCR, Doug McKeever of CDCR, Margaret McAloon of CDCR,

9 Joan Petersilia of the Office of the Governor, and Scott Kernan of CDCR.

10 4. Staffing:

11   a. Defendants' submitted plans to address the retention and recruitment of mental

12 health clinicians, correctional officers, and administrators. Witnesses on this matter include

13 Cindy Radavsky of DMH, Doug McKeever of CDCR, and Nancy Bither of CDCR.

14   b. Defendants' response to the June 2006 order to obtain funding for mental health

15 staffing necessary to implement the Revised Program Guide. Witnesses on this matter include

16 Doug McKeever of CDCR and Andrew Swanson of CDCR.

17   b. The *Coleman* court orders concerning Defendants' filed retention and recruitment

18 plans, including and not limited to the December 15, 2006 order approving the pay scales for

19 CDCR clinicians and the June 28, 2007 order approving the pay scales for DMH mental health

20 clinicians.

21 5. Mental Health Care Policies and Procedures:

22   a. Defendants' Revised Program Guide, its implementing and training memos, and

23 any associated memorandum of understanding between DMH and CDCR. Witnesses include

24 Shama Chaiken of CDCR, Doug McKeever of CDCR, Cindy Radavsky of DMH.

25   b. Defendants' filed stipulation for the evaluation of psychiatrists and the August 11,

26 2006 order approving that evaluation process. Witnesses include Andrew Swanson of CDCR.

27   c. Defendants' filed plan to provide Enhanced Outpatient Program care to Reception

28 Center inmates in need of such care. Witnesses include Margaret McAloon of CDCR, Andrew

Tilton Response to Coleman Interrogatories, Set One

1  Swanson of CDCR, Shama Chaiken of CDCR, and Doug McKeever of CDCR.

2      d.      Special Master Keating's reports on the Revised Program Guide and the *Coleman*

3  court March 2006 order approving the Revised Program Guide.

4  6.    Suicide Prevention:

5      a.      Special Master Keating's annual reports on suicides, including and not limited to

6  the Report on Suicides Committed in California Department of Corrections and Rehabilitation in

7  Calendar Year 2005 and Special Master Keating's Psychiatric Experts' Review of Completed

8  Suicides in the California Department of Corrections and Rehabilitation in Calendar Years 1999

9  through 2004. The witnesses on this matter include Dr. Helen Steenman of CDCR, Dr. Robert

10  Canning of CDCR, and Dr. Ray Patterson, a court-appointed expert.

11      b.      Defendants' submitted plans and briefs on the plans to reduce suicide events,

12  including the July 2005 plan to address the hazard of large-mesh vents, the October 2006 plan to

13  reduce suicide trends in administrative segregation units, the December 2006 brief responding to

14  Plaintiffs' objections to the October 2006 plan to reduce suicide trends in administrative

15  segregation units (with declarations of George Sifuentes and Scott Kernan, and attached

16  exhibits), the court-approved stipulation requiring the use of one-to-one monitoring of inmates at

17  risk for suicide.

18  The witnesses on these matters include are not limited to: George Sifuentes, Dean Borg, Deborah

19  Hysen, Doug McKeever, Scott Kernan, Shama Chaiken.

20      c.  Defendants' memoranda to the field concerning measures to reduce suicide events,

21  including the use of appliances within administrative segregation units, thirty-minute welfare

22  checks, and prescreening placement of inmates endorsed for administrative segregation units,

23  the use of one-to-one monitoring of inmates at risk for suicide, the development of intake cells

24  within administrative segregation units. The witnesses on these matters include and are not

25  limited to: George Sifuentes, Dean Borg, Deborah Hysen, Doug McKeever, Scott Kernan, Shama

26  Chaiken.

27  7.    Coordination:

28      a.      The minutes and orders from the *Coleman/Plata/Perez* courts concerning the

Tilton Response to Coleman Interrogatories, Set One

1    coordination of certain remedial efforts, including and not limited the June 28, 2007 order

2    regarding the Receiver's roles and responsibilities, particularly concerning (1) the contracting

3    functions for mental health care programs; (2) the information technology program; and (3)

4    pharmacy operations.

5         b.     The Receiver's reports and plans concerning his work on the coordination efforts,

6    detailed in the June 28, 2007 order, including any report filed on November 15, 2007, any

7    documents concerning the role of Maxor as the provider of pharmacy services, and any

8    documents concerning the development of a systemwide information technology system.  The

9    witnesses on these matters include Robert Sillen, John Hummel and any other Receiver's staff

10    assigned to those coordination efforts.

11    <u>INTERROGATORY NO. 3:</u>

12         Identify all barriers to providing constitutionally adequate mental health care.

13    RESPONSE TO INTERROGATORY NO. 3:

14         DEFENDANT objects that this request seeks information protected from disclosure by

15    the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

16    critical analysis privilege, and official information privilege.  Further, the interrogatory is

17    impermissibly vague and overbroad because the measure of Defendants' achievement of a

18    constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

19    interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

20    Plaintiffs' right to constitutionally adequate mental health care.

21         Subject to and without waiving the foregoing objections, DEFENDANT responds as

22    follows:  The size of the overall CDCR population is not the primary cause of any violation of

23    Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care system.

24    Defendant contends that multiple causes are at play, including and not limited to staff recruitment

25    and retention difficulties (for administrative staff, clinical staff, and correctional officers), the

26    paucity of a viable information technology system (essential for record keeping, medication

27    management, and recruitment and retention of staff), the nascent implementation of pay parity

28    plans for clinicians, problems in matching high care/high custody inmates with appropriate

Tilton Response to Coleman Interrogatories, Set One

1    mental health care beds.

2    INTERROGATORY NO. 4:

3         Identify the date constitutionally adequate mental health care can be provided without any

4    reduction in prisoners.

5    RESPONSE TO INTERROGATORY NO. 4:

6         DEFENDANT objects that this request seeks information protected from disclosure by

7    the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

8    critical analysis privilege, and official information privilege.  Further, the interrogatory is

9    impermissibly vague and overbroad by failing to properly define the word prisoners in terms of

10   any indicated population or number.  Further, the interrogatory is impermissibly vague and

11   overbroad because the measure of Defendants' achievement of a of a constitutionally adequate

12   mental health care system is unresolved and in dispute.  Lastly, the interrogatory assumes facts

13   not in evidence and is vague as to any ongoing violations of Plaintiffs' right to constitutionally

14   adequate mental health care.

15        Subject to and without waiving the foregoing objections, DEFENDANT responds as

16   follows:  Because the size of the overall CDCR population is not the primary cause of any

17   violation of Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care

18   system,  the reduction of prisoners is not a factor in the time frame for providing such care.

19   DEFENDANT further states that constitutionally adequate mental health care is already being

20   provided in certain institutions, such as Pelican Bay State Prison.  DEFENDANT has increased

21   beds at the following settings to enable compliance: California Medical Facility, Vacaville (30

22   additional intermediate care beds within set timeframe); Salinas Valley State Prison (112

23   additional intermediate care beds within set timeframe); California State Prison, Sacramento

24   increased available beds for Enhanced Outpatient Program population by 192 (July 2006 by 96

25   and October 2006 by 96); Mule Creek State Prison (Sensitive Needs Yard for Enhanced

26   Outpatient Program for Level III increased by 180 in January 2007 and for Level IV increased by

27   115 in January 2007.)

28        In addition, the recently-approved August 2007 mental health care bed plan will enhance

Tilton Response to Coleman Interrogatories, Set One

9

1  systemwide compliance by enabling the activation of the necessary consolidated care center beds

2  to provide mental health care in an appropriate setting no later than 2012. DEFENDANT is

3  confident that ongoing recruitment and retention efforts, as well as coordination with the

4  Receiver on multiple issues (including and not limited to pharmacy/medication management,

5  licensure, credentialing, information technology) will enable systemwide compliance.

6  INTERROGATORY NO. 5:

7       Identify the steps to take to obtain constitutionally adequate mental health care by that

8  stated date without any reduction in prisoners.

9  RESPONSE TO INTERROGATORY NO. 5:

10      DEFENDANT objects that this request seeks information protected from disclosure by

11  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

12  critical analysis privilege, and official information privilege. Further, the interrogatory is

13  impermissibly vague and overbroad by failing to properly define the word prisoners in terms of

14  any indicated population or number. Further, the interrogatory is impermissibly vague and

15  overbroad because the measure of Defendants' achievement of a constitutionally adequate mental

16  health care system is unresolved and in dispute. Lastly, the interrogatory assumes facts not in

17  evidence and is vague as to any ongoing violations of Plaintiffs' right to constitutionally adequate

18  mental health care.

19      Subject to and without waiving the foregoing objections, DEFENDANT responds as

20  follows: Because the size of the overall CDCR population is not the primary cause of any

21  violation of Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care

22  system, the reduction of prisoners is not a factor in the time frame for providing such care.

23  DEFENDANT states that plans are underway to (1) construct the necessary mental health care

24  beds for *Coleman* class members (see August 2007 bed plan filed with the *Coleman* court), (2)

25  enable recruitment and retention of administrative and clinical staff (see DMH and CDCR

26  recruitment plans filed with the *Coleman* court). Further, the Receiver has undertaken

27  responsibility for ensuring a viable information technology system, with a recordkeeping and

28  medication management functions, as well as a viable pharmacy system. Lastly, DEFENDANT

1  continues to implement out-of-state transfers of inmates and early parole discharge of certain

2  parolees.

3  <u>INTERROGATORY NO. 6:</u>

4      Do you contend that the Court could enter an order or orders that will provide effective

5  relief for the ongoing violations of Plaintiffs' rights to a constitutionally adequate mental health

6  care as set forth in the court-approved Revised Program Guide without the issuance of a prisoner

7  release order?

8  RESPONSE TO INTERROGATORY NO. 6:

9      DEFENDANT objects that this request seeks information protected from disclosure by

10  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

11  critical analysis privilege, and official information privilege. Further, the interrogatory is

12  impermissibly vague and overbroad because the measure of Defendants' achievement of a of a

13  constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

14  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

15  Plaintiffs' right to constitutionally adequate mental health care.

16      DEFENDANT contends that overcrowding is not the primary cause of any violation of

17  Plaintiffs' Eighth Amendment right to a constitutionally adequate mental health care system and

18  therefore the reduction of prisoners is not a factor in the time frame for providing such care.

19  DEFENDANT states that constitutionally adequate mental health care is already being provided

20  in certain institutions, such as Pelican Bay State Prison. DEFENDANT respectfully notes that

21  the *Coleman* Court has already entered orders to enable the provision of constitutionally

22  compliant care, including and not limited to the order denying Plaintiffs' request for a temporary

23  restraining order to bar out-of-state transfers, the order approving the Revised Program Guide,

24  the order approving the CDCR clinician pay schedule, the order approving the DMH clinician

25  pay parity schedule, the order approving the August 2007 mental health bed plan, and the

26  *Plata/Coleman* courts' approval of certain coordination agreements making the Receiver

27  responsible for addressing certain health care issues, such as medication management,

28  credentialing of clinicians, pharmacy, and information technology. These court orders have and

Tilton Response to Coleman Interrogatories, Set One

1  will enhance systemwide compliance by enabling the staffing and activation of the necessary

2  beds to provide mental health care in an appropriate setting.

3  INTERROGATORY NO. 7:

4      If your response to interrogatory number six is affirmative, please identify each such

5  order/remedy that the court should issue in lieu of a prisoner release order.

6  RESPONSE TO INTERROGATORY NO. 7:

7      DEFENDANT objects that this request seeks information protected from disclosure by

8  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

9  critical analysis privilege, and official information privilege. Further, the interrogatory is

10  impermissibly vague and overbroad because the measure of Defendants' achievement of a of a

11  constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

12  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

13  Plaintiffs' right to constitutionally adequate mental health care.

14      Subject to and without waiving the foregoing objections, DEFENDANT responds as

15  follows: Such orders have already been provided in the course of the Coleman case and in the

16  course of coordinated proceedings before the *Coleman* and *Plata* courts, as identified in the

17  responses to interrogatory numbers 2 and 6.

18  INTERROGATORY NO. 8:

19      For each order/remedy identified in your response to interrogatory number seven, please

20  state the date by which you contend that the ongoing constitutional violations will be remedied

21  by your compliance with the order.

22  RESPONSE TO INTERROGATORY NO. 8:

23      DEFENDANT objects that this request seeks information protected from disclosure by

24  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

25  critical analysis privilege, and official information privilege. Further, the interrogatory is

26  impermissibly vague and overbroad because the measure of Defendants' achievement of a of a

27  constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

28  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

1  Plaintiffs' right to constitutionally adequate mental health care.

2       Subject to and without waiving the foregoing objections, DEFENDANT responds as

3  follows: DEFENDANT'S continued compliance with the orders identified in response to

4  interrogatory numbers 2 and 6 have resulted in a constitutionally adequate mental health care

5  system at certain institutions (such as Pelican Bay State Prison) and in certain areas of care and

6  will do so systemwide.  DEFENDANT notes Special Master Keating's May 2006 report to the

7  court on population issues found approximately 60% of those in need of mental health services

8  were receiving mental health care services.  Because the parties have not agreed on a measure for

9  determining constitutional compliance on a systemwide basis, DEFENDANT states that this

10  interrogatory is fatally vague and thus no particular timeframe for systemwide compliance can be

11  provided at this time.

12  INTERROGATORY NO. 9:

13       For each order identified in your response to interrogatory number seven, identify any

14  known obstacles and barriers to your compliance with the order by the date identified in

15  interrogatory number eight.

16  RESPONSE TO INTERROGATORY NO. 9:

17       DEFENDANT objects that this request seeks information protected from disclosure by

18  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

19  critical analysis privilege, and official information privilege.  Further, the interrogatory is

20  impermissibly vague and overbroad because the measure of DEFENDANT'S achievement of a

21  of a constitutionally adequate mental health care system is unresolved and in dispute. Lastly, the

22  interrogatory assumes facts not in evidence and is vague as to any ongoing violations of

23  Plaintiffs' right to constitutionally adequate mental health care.

24       Subject to and without waiving the foregoing objections, DEFENDANT responds as

25  follows: DEFENDANTS are in compliance with the orders identified in response to interrogatory

26  number 6 and their continued implementation of those court orders will result in a

27  constitutionally adequate mental health care system systemwide.  DEFENDANT notes Special

28  Master Keating's May 2006 report to the *Coleman* court on population issues found some 60% of

1  those in need of mental health services were receiving mental health care services. Because the

2  parties have not agreed on a measure for determining constitutional compliance on a systemwide

3  basis, Defendant states that interrogatory number 8 is fatally vague.

4  INTERROGATORY NO. 10:

5      Identify each action, program, policy or procedure that you have adopted or undertaken

6  since October 2006 that you contend will limit or reduce the number of prisoners housed in

7  CDCR prisons.

8  RESPONSE TO INTERROGATORY NO. 10:

9      DEFENDANT objects that this request seeks information protected from disclosure by

10  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

11  critical analysis privilege, and official information privilege.

12      Subject to and without waiving the foregoing objections, DEFENDANT responds as

13  follows: Defendant identifies those programs, policies and procedures described in Defendants'

14  Supplemental Response to Plaintiffs' Motion for the Convening of a Three-Judge Panel, and in

15  the supporting declarations of Joan Petersilia, Scott Kernan and Kathy Jett, filed May 24, 2007

16  with the *Coleman* court.

17  INTERROGATORY NO. 11:

18      For each action, program, policy or procedure identified in your response to interrogatory

19  number 10, state the time frame for implementation, the size of the anticipated population

20  reduction, and the date by which the population reduction will be effected.

21  RESPONSE TO INTERROGATORY NO. 11:

22      DEFENDANT objects that this request seeks information protected from disclosure by

23  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

24  critical analysis privilege, and official information privilege.

25      Subject to and without waiving the foregoing objections, DEFENDANT responds as

26  follows: The time frames for implementation, the size of the anticipated population reduction

27  and the date by which population reduction would occur were described in Defendants'

28  Supplemental Response to Plaintiffs' Motion for the Convening of a Three-Judge Panel, and in

Tilton Response to Coleman Interrogatories, Set One

1  the supporting declarations of Joan Petersilia, Scott Kernan and Kathy Jett, filed May 24, 2007

2  with the *Coleman* court.

3  INTERROGATORY NO. 12:

4      Identify each and every population model relied upon for your answer to interrogatory

5  number 11 by its source, including but not limited to author, entity, and publication.

6  RESPONSE TO INTERROGATORY NO. 12:

7      DEFENDANT objects that this request seeks information protected from disclosure by

8  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

9  critical analysis privilege, and official information privilege.

10     Subject to and without waiving the foregoing objections, DEFENDANT responds as

11 follows: Such model(s) are identified in the declarations of Joan Petersilia and Kathy Jett.

12 INTERROGATORY NO. 13:

13     Identify each action, program, policy or procedure that you have adopted since October

14 2006 that you contend will limit or reduce the number of *Coleman* class members housed in

15 CDCR prisons.

16 RESPONSE TO INTERROGATORY NO. 13:

17     DEFENDANT objects that this request seeks information protected from disclosure by

18 the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

19 critical analysis privilege, and official information privilege.

20     Subject to and without waiving the foregoing objections, DEFENDANT responds as

21 follows:  DEFENDANT has approved, in concept, the proposed policy to transfer certain

22 *Coleman* class members to out-of-state facilities upon proof of their eligibility under criteria

23 approved by the *Coleman* court for such transfer. Further, Defendant has, as part of the *Valdivia*

24 v. *Schwarzenegger* case, provided for In Custody Drug Treatment Program beds in each region

25 of the State, which includes 20 beds per region for parolees with dual diagnoses of mental illness

26 and substance abuse, as part of remedial sanctions in lieu of revocation and return to custody.

27 INTERROGATORY NO. 14:

28     For each such action, program, policy or procedure identified in our response to

Tilton Response to Coleman Interrogatories, Set One

1  interrogatory number 13, state the timeframe for implementation, the size of the anticipated

2  population reduction, and the date by which the population reduction will be effected.

3  RESPONSE TO INTERROGATORY NO. 14:

4       DEFENDANT objects that this request seeks information protected from disclosure by

5  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

6  critical analysis privilege, and official information privilege.

7       Subject to and without waiving the foregoing objections, DEFENDANT responds as

8  follows: Defendant states that it is presently developing and deliberating over the criteria for

9  determining a *Coleman* class member's eligibility for out-of-state transfer and so cannot state

10  with any certainty at this time the potential number of impacted inmates nor the time line for

11  implementation and impact on the mental health population. Further, Defendant has, as part of

12  the *Valdivia* case, provided for In Custody Drug Treatment Program beds in each region of the

13  State, which includes 20 beds per region for parolees with dual diagnoses of mental illness and

14  substance abuse, as part of remedial sanctions in lieu of revocation and return to custody.  The

15  timeframes for these In Custody Drug Treatment Program beds were provided to Plaintiffs and,

16  at this time, the anticipated effect on the mental health population has not been determined with

17  certainty.

18  <u>INTERROGATORY NO. 15:</u>

19       Identify each and every population model relied upon for your answer to interrogatory 14

20  by its source, including but not limited to author, entity, and publication.

21  RESPONSE TO INTERROGATORY NO. 15:

22       DEFENDANT objects that this request seeks information protected from disclosure by

23  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

24  critical analysis privilege, and official information privilege.

25       Subject to and without waiving the foregoing objections, DEFENDANT responds as

26  follows:  No such models were relied upon for the policies or programs indicated in response to

27  interrogatory 14.

28  //

Tilton Response to Coleman Interrogatories, Set One

1  INTERROGATORY NO. 16:

2      Identify the number of prisoners housed in each CDCR prison on October 17, 2007, by

3  housing unit, security level (I-IV), MHSDS membership (CCCMS or EOP), and other

4  administrative placement factors and categories (SNY, administrative segregation, OHU, CTC,

5  MHCB, reception, Security Housing Unit (SHU), Department of Mental Health (DMH).

6  RESPONSE TO INTERROGATORY NO. 16:

7      DEFENDANT objects that this request seeks information protected from disclosure by

8  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

9  critical analysis privilege, and official information privilege.

10      Subject to and without waiving the foregoing objections, DEFENDANT responds as

11  follows: The CDCR database printout provides for the number of prisoners housed in each

12  CDCR prison on October 17, 2007 (see Exhibit A).

13  INTERROGATORY NO.  17:

14      For each CDCR prison, identify the number of prisoners housed in non-traditional

15  (defined as beds in gyms, dayrooms, or other locations not intended to house inmates and

16  including those beds referred to as "bad beds" and triple bunks) and the location of such housing

17  as of October 17, 2007.

18  RESPONSES TO INTERROGATORY NO. 17:

19      Objections: DEFENDANT objects that this request seeks information protected from

20  disclosure by the attorney-client privilege, attorney work product privilege, deliberative process

21  privilege, self-critical analysis privilege, and official information privilege.

22      Subject to and without waiving the foregoing objections, DEFENDANT responds as

23  follows: The CDCR database does not contain such data.

24  INTERROGATORY NO. 18:

25      For each such non-traditional housing location, identify the number of prisoners in the

26  mental health services delivery system (EOP, CCCMS) and security level (I-IV) as well as other

27  administrative placement factors (SNY, administrative segregation, CTC, MHCB, OHU,

28  reception center, security housing unit (SHU) or Department of Mental Health program as of

1  October 17, 2007.

2  RESPONSE TO INTERROGATORY NO. 18

3      DEFENDANT objects that this request seeks information protected from disclosure by

4  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

5  critical analysis privilege, and official information privilege.

6      Subject to and without waiving the foregoing objections, DEFENDANT responds as

7  follows: The CDCR database does not provide such data.

8  INTERROGATORY NO. 19:

9      Describe any restrictions you place on the housing of *Coleman* class members in non-

10  traditional housing beds identified in response to interrogatory seventeen.

11  RESPONSE TO INTERROGATORY NO. 19:

12      DEFENDANT objects that this request seeks information protected from disclosure by

13  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

14  critical analysis privilege, and official information privilege.

15      Subject to and without waiving the foregoing objections, DEFENDANT responds as

16  follows:  The housing of *Coleman* class members is determined in accord with the standards

17  stated in the published decision of *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (1995) and the

18  Revised Program Guide, with those *Coleman* class members receiving Enhanced Outpatient

19  Program Care, Psychiatric Services Unit, and DMH-based inpatient care housed separately from

20  general population of CDCR inmates.

21  INTERROGATORY NO. 20:

22      For each CDCR prison housing unit that houses or has housed *Coleman* class members in

23  the past five years, identify the original stated capacity for housing *Coleman* class members, and

24  any adjustments you have made to the stated capacity, including the size and date of the

25  adjustment.

26  RESPONSE TO INTERROGATORY NO. 20:

27      DEFENDANT objects that this request seeks information protected from disclosure by

28  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

1 | critical analysis privilege, and official information privilege. Further, the interrogatory is

2 | impermissibly vague and overbroad by failing to properly define certain phrases, such as

3 | 'housing unit' and 'stated capacity'. Indeed, certain prisons were built before the commencement

4 | of and/or rendering of judgment in the *Coleman* lawsuit and so the phrase 'original stated

5 | capacity' for housing *Coleman* inmates is vague, ambiguous and so essentially inapplicable to

6 | those prisons. Lastly, the interrogatory is overbroad in terms of time and so unduly burdensome.

7 | This information may already have been produced to Plaintiffs in the course of (a) inspection

8 | tours undertaken prior to trial, (b) the monitoring tours provided since the inception of the

9 | remedial process and continuing to date, (c) the CDCR Health Care Services Division's monthly

10 | reports to the Special Master, (d) the staffing, construction and funding reports provided at semi-

11 | annual meetings with the Special Master and Plaintiffs (known as All Parties and/or Policy

12 | Meetings).

13 |     Subject to and without waiving the foregoing objections, DEFENDANT responds as

14 | follows: DEFENDANT does not maintain such data by housing unit.

15 | INTERROGATORY NO. 21:

16 |     For each housing unit identified in response to interrogatory 20, identify any changes in

17 | the number of staff, treatment space, office space, or other resources related to adjustments in

18 | capacity, including, when applicable, the dates those changes were allocated, funded and filled.

19 | RESPONSES TO INTERROGATORY NO. 21:

20 |     DEFENDANT objects that this request seeks information protected from disclosure by

21 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

22 | critical analysis privilege, and official information privilege. Further, the interrogatory is

23 | impermissibly vague and overbroad by failing to properly define certain phrases, such as

24 | 'resources related to adjustments in capacity', 'housing unit' and 'stated capacity'. Lastly, the

25 | interrogatory is overbroad in terms of time and so unduly burdensome.

26 |     Subject to and without waiving the foregoing objections, DEFENDANT responds as

27 | follows: DEFENDANT does not have such data by housing unit. This information may already

28 | have been produced to Plaintiffs in the course of (a) inspection tours undertaken prior to trial, (b)

Tilton Response to Coleman Interrogatories, Set One

1  the monitoring tours provided since the inception of the remedial process and continuing to date,

2  (c) the CDCR Health Care Services Division's monthly reports to the Special Master, (d) the

3  staffing, construction and funding reports provided at semi-annual meetings with the Special

4  Master and Plaintiffs (known as All Parties and/or Policy Meetings), (e) the Governor's Budget

5  and the May Revise, (f) the Department of Finance budgetary documents released in the *Coleman*

6  case to Plaintiffs pursuant to the August 2006 court order.

7  INTERROGATORY NO. 22:

8      Identify any and all housing units by prison, including reception centers, and housing type

9  (for example, dorm or cell housing) where EOP inmates are currently housed with general

10  population inmates.

11  RESPONSE TO INTERROGATORY NO. 22:

12      DEFENDANT objects that this request seeks information protected from disclosure by

13  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

14  critical analysis privilege, and official information privilege.

15      Subject to and without waiving the foregoing objections, DEFENDANT responds as

16  follows:  EOP inmates are not assigned to two-man cells with any general population inmate and

17  are not assigned to any yard shared with general population inmates.

18  INTERROGATORY NO. 23:

19      State the number of EOP and CCCMS plaintiffs in each reception center who have

20  remained in the reception center beyond the transfer timelines stated in the Revised Program

21  Guide (60 days for EOP and 90 days for CCCMS) since March 2006.

22  RESPONSE TO INTERROGATORY NO. 23:

23      DEFENDANT objects that this request seeks information protected from disclosure by

24  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

25  critical analysis privilege, and official information privilege.

26      Subject to and without waiving the foregoing objections, DEFENDANT responds as

27  follows: The CDCR database does not have that information.

28  //

Tilton Response to Coleman Interrogatories, Set One

1  INTERROGATORY NO. 24:

2      Identify and all lockdowns or partial lockdowns, including dates and duration, that

3  affected housing units housing *Coleman* class members at CDCR prisons since March 3, 2006.

4  RESPONSE TO INTERROGATORY NO. 24:

5      DEFENDANT objects that this request seeks information protected from disclosure by

6  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self-

7  critical analysis privilege, and official information privilege. Further, the interrogatory is vague

8  as to the terms 'lockdown' and 'partial lockdown'.

9      Subject to and without waiving the foregoing objections, DEFENDANT responds as

10  follows: DEFENDANT does not maintain such data.

11      Dated: November 9, 2007

12                  Respectfully submitted,

13                  EDMUND G. BROWN JR.
                Attorney General of the State of California

14                  DAVID S. CHANEY
15                  Chief Assistant Attorney General

16                  FRANCES T. GRUNDER
                Senior Assistant Attorney General

17                  ROCHELLE C. EAST
                Supervising Deputy Attorney General

18

19

20                  LISA A. TILLMAN
21                  Deputy Attorney General
                Attorneys for Defendants

22

23  TiltonResponseRog1.11.8.wpd
    CF1997CS0003

24

25

26

27

28

Tilton Response to Coleman Interrogatories, Set One

**VERIFICATION**

I, JAMES TILTON, declare:

I am the Secretary of the California Department of Corrections and Rehabilitation and in that official capacity am a party in the pending action entitled *Coleman v. Schwarzenegger*. I have read the foregoing responses to the First Set of Interrogatories propounded by Plaintiff Ralph Coleman, and state upon my information and belief that they are true and correct.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this ___9___ day of November, 2007.

JAMES TILTON

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Coleman v. Schwarzenegger, et al.*; *Plata v. Schwarzenegger, et al.*
Nos.:   **01-1351 & 90-0520**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 07, 2007**, I served the attached : **DEFENDANT TILTON'S RESPONSE TO RALPH COLEMAN'S INTERROGATORIES** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Sacramento, California 94244, addressed as follows:

| | |
|---|---|
| Claudia Center<br>The Legal Aid Society<br>Employment law Center<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107 | Richard Goff<br>Heller, Ehrman White & McAuliffe<br>701 Fifth Avenue<br>Seattle, WA 98104 |
| Warren E. George<br>Bingham McCutchen<br>3 Embarcadero Ctr., Fl. 24<br>San Francisco, CA 94111 | Martin H. Dodd<br>Futterman & Dupree<br>160 Sansome Street, 17th Street<br>San Francisco, CA 94109 |
| Ronald Yank<br>Carroll, Burdick & McDonough, LLP<br>44 Montgomery Street, Suite 400<br>San Francisco, CA 94104 | Ann Miller Ravel<br>Office of the County Counsel<br>County of Santa Clara<br>70 West Hedding, East Wing, 9th Floor<br>San Jose, CA 95110 |
| Jared Goldman<br>California Prison Healthcare Receivership<br>1731 Technology Dr., Suite 700<br>San Jose, CA 95110 | Steven s. Kaufhold<br>Akin Gump Straus Hauer & Feld LLP<br>580 California Street, 15th Floor<br>San Francisco, CA 94102 |

| | |
|---|---|
| Rod Pacheco<br>Chuck Hughes<br>Office of the District Attorney<br>County of Riverside<br>4075 Main Street, First Floor<br>Riverside, CA 92501 | Steven Woodside<br>Office of the County Counsel<br>575 Administration Dr., Room 105A<br>Santa Rosa, CA 95403 |
| Donald Specter<br>Prison Law Office<br>2173 'E' Francisco Blvd., Suite M<br>San Rafael, CA 94901 | Michael Bien<br>Rosen, Bien and Galvan<br>315 Montgomery Street, 10th Floor<br>San Francisco, CA 94104 |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 07, 2007**, at Sacramento, California.

_____          _____
    S. Burke                            _S. Burke_
    Declarant                          Signature