EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN, SBN 126424
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
Telephone: (916) 327-7872
Facsimile: (916) 324-5205
Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                              Plaintiffs,<br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                              Defendants. | 90-0520 LKK JFM<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF NONCOMPLIANCE RE: SMALL MANAGEMENT YARD PLAN** |

## I.

## INTRODUCTION

This Court's Special Master and experts have worked with the Defendants in creating means to reduce suicide trends in administrative segregation units. The Defendants' submitted plan to reduce such trends included the introduction of television and other entertainment devices into administrative segregation units, welfare checks on inmates at regular intervals, intake cells to enable better evaluation of inmates new to administrative segregation, and auditing of the lengths of inmates' stays in administrative segregation for non-disciplinary reasons. While

addressing the inmates' environment within administrative segregation units, Defendants have also addressed the inmates' need for 'out-of-cell' time or time outside of the administrative segregation cells by submitting a plan to develop additional small management yards. Plaintiffs' notice of non-compliance challenges the small management yard plan as inadequate. In response to this Court's order, Defendants respectfully submit a fuller explanation of their plan to meet the Title 15 requirements for providing out-of-cell time to inmates housed in administrative segregation units and request this Court approve the plan. (1)

## II.
## CHRONOLOGY

In response to a Court order to reduce suicide trends in administrative segregation units, Defendants stated the need for 1,342 small management yards to serve inmates housed in administrative segregation units. (Def. Suicide Reduction Plan, 10/2/06.)

On December 18, 2006, the Special Master issued a report and recommendations on Defendants' plan to prevent suicides in administrative segregation. That report stated, "Defendants admit that the number of available small management yards is insufficient, but report a plan to construct and/or fund 921 such yards in fiscal year 2006/2007. Even this effort, however, will leave a confessed shortfall of 441 small management yards, which will require future funding and construction, the details for which are not contained in the Defendants' plan." (Special Master's Report, 12/18/06, p. 9.)

On May 14, 2007, the Special Master issued a Supplemental Report and Recommendations on Defendants' plan to prevent suicides in administrative segregation units (Supplemental Report). The Supplemental Report noted Defendants' own statement that 1,480

---

1 Defendants understand the term administrative segregation unit to refer to those housing units originally designed to house inmates placed in administrative segregation, as opposed to housing or "overflow" areas containing those inmates who await transfer to such an administrative segregation unit upon bed availability.

Defs.' Response Noncompliance Re: Small Mgt. Yards    2    *Coleman v. Schwarzenegger*, Case No. 90-0520

small management yards were needed to meet the Title 15 requirements for out-of-cell time. (Supp. Rpt., 5/14/07, p. 3)

On June 1, 2007, this Court adopted the Supplemental Report's findings and recommendations and ordered Defendants to submit a plan for sufficient small management yards to meet Title 15 exercise requirements for administrative segregation inmates, with funding and completion of yards by the end of fiscal year 2008/2009. (Order, 6/1/07.) Defendants sought and received an extension of time for submitting the plan.

On October 29, 2007, Defendants submitted a plan for small management yards. The plan stated that the 1,480 yards statewide originally identified by CDCR included yards for Psychiatric Services Units (PSU), Security Housing Units (SHU) and Grade B condemned inmates, and thus extended "beyond the court order for administrative segregation inmates only." (Def. Small Mgmt Yard Plan, 10/29/07, p. 4 of 21.)

Plaintiffs challenged Defendants' small management yard plan, contending in relevant part:

1. Defendants decreased the number of small management yards to be built by 318;

2. Defendants' plan violated the mandated timelines for funding and construction;

3. Defendants' interim plan to provide better access to existing small management yards was inadequate.

On November 19, 2007, this Court issued an order directing Defendants to each of the issues raised by Plaintiffs' notice of noncompliance. (Order, 11/19/07.) Further, this Court ordered Defendants to explain why Defendants' October 2007 plan did not indicate 1,480 small management yards would be built for administrative segregation inmates, but instead indicated the 1,480 number was overinclusive by addressing yards for Psychiatric Services Units (PSUs),

Security Housing Units (SHUs) and Grade B condemned units.

## III.

## LEGAL STATEMENT

**A. One Small Management Yard for Every Five Administrative Segregation Cells Provides the Total Number of Necessary Small Management Yards.**

Since the inception of the small management yards in the 1990s, the number of needed small management yards has been one small management yard must be provided for every five administrative segregation cells. (Decl. Hysen, ¶ 8.)

**B. While Defendants' Five-Year Plan Requests Funding for Small Management Yards to Serve PSU, SHU and Grade B, Defendants' Submitted Plan Properly Applied the Ratio Only to Administrative Segregation Units.**

Defendants have dual projects underway to address small management yards. (Decl. Hysen, ¶ 12.) Defendants' October 2007 plan focuses upon the small management needs of inmates within administrative segregation units. (*Id.*) As that small management plan has developed, Defendants have undertaken the tracking of, and anticipate requesting statewide future funding for, small management yards needed by the CDCR population, including those within PSU, SHU and Grade B units, in the Department's five-year infrastructure plan. (*Id.*)

Defendants' recognize that there has been confusion about the formulation of the number of small management yards reported responsive to the June 2006 Court order. Defendants initially reported to the Court that approximately 1,480 small management yards were required. (Decl. Hysen, ¶ 4.) Upon further analysis, Defendants realized that 1,480 number included SHU, PSU and Grade B yards. (*Id.* at ¶ 7.) Defendants then endeavored to interpret the term administrative segregation unit in a manner consistent with the Court's own reports and orders. (*Id.* at ¶ 10.) Defendants noted that the Special Master's report on suicides in calendar year 2004 described suicides in various housing areas, but emphasized in its recommendations the need to address the rate of suicides within only administrative segregation units. (*Id.*)

Defs.' Response Noncompliance Re: Small Mgt. Yards    4    *Coleman v. Schwarzenegger,* Case No. 90-0520

Correspondingly, Defendants' submitted plans to address suicide trends in administrative segregation units described vent retrofitting and intake cell modifications only in administrative segregation units, and did not include SHU, PSU, and Grade B units. (*Id.*) Because administrative segregation units were consistently identified as requiring specific suicide reduction measures, including small management yards, Defendants removed SHU, PSU and Grade B cells from the formulation of the number of necessary small management yards to respond to this Court's order. (*Id.* at ¶ 11.)

However, that removal was not in disregard of the critical need for SHU, PSU and Grade B yards. (Decl. Hysen, ¶ 12.) Rather, Defendants shifted this balance of needed small management yards into the Department's five-year infrastructure plan for Governor's Budget consideration. (*Id.*) In sum, the out-of-cell needs of inmates within other housing areas is included in the Department's five-year infrastructure plan. (*Id.*)

### C. The Final Number of Necessary Small Management Yards Meets the Needs of Inmates within Administrative Segregation Units.

Defendants remain committed to building the number of small management yards needed to meet the Title 15 out-of-cell requirements for inmates within administrative segregation units. (Decl. Hysen, ¶ 13.) In order to comply with this Court's June 1, 2007 order, Defendants will need to design and construct 476 yards, as stated in the October 29, 2007 plan. (*Id.*) To elucidate the formulation of this number of needed small management yards for administrative segregation units, Defendants offer the following updated information:

- 1,162 small management yards are needed for administrative segregation units;
- 578 small management yards to serve the administrative segregation unit population have been constructed to date;
- 149 small management yards to serve the administrative segregation unit population are under design;
- 108 small management yards to serve the administrative segregation unit population

are under construction;

- 327 small management yards to serve the administrative segregation unit population are in need of future design and construction funding;

- 5 small management yards at Corcoran State Prison exist in excess of the 5:1 ratio.

(Decl. Hysen, ¶ 13.)

### D. Defendants' Plan Must Comply with Established Processes for Funding.

Plaintiffs' assertion that the submitted plan fails to meet the funding and construction time-frames stated in the Court's order overlooks a salient point: Defendants must follow processes mandated by state law for obtaining funds for such large capital outlay projects. (Decl. Hysen, ¶ 14.) A Capital Outlay Budget Change Proposal (COBCP) must be submitted for review and approval of the Administration. (*Id.*) Upon such approval, the COBCP is then submitted to the Legislature requesting the funds be appropriated in the 2008-09 Budget Act. (*Id.*) There are no funds or authority presently available to design or construct these projects in the current budget year. (*Id.* at ¶ 15.) Because there is no authority for the small management yard project in the current budget year, a COBCP must be submitted for funding in the next fiscal year. (*Id.*) The timing of the authority for the project will determine its completion date. (*Id.*)

The October 29, 2007 plan and schedule to design and construct 476 small management yards, with a completion date of January 2010, assume a timely July 2008 budget enactment and adherence to applicable statutory funding and construction requirements. (Decl. Hysen, ¶ 16.)

### E. Interim Measures to Enable Additional Access to Yards Have Been and Continue to Be Explored.

Plaintiffs may not be aware of the number of alternative, interim measures reviewed by Defendants to enable increased access to small management yards

A concept that some institutions have adopted is to incorporate small management yard usage on the third (evening) watch. (Decl. Moss, ¶ 5.) This concept can require the installation of lights and, more significantly, the employment of sufficient correctional officers to staff the

small management yard. (*Id.*) Defendants have already reported to the Court on the shortage of correctional officers. (*Id.*) The third watch is further hampered because its staffing package generally does not have include the necessary number of correctional officers to escort and supervise inmates and provide armed observation of the administrative segregation yards. (*Id.*)

Defendants note that the overall shortage of correctional officers has been reduced in the past six months and are hopeful it will continue to be reduced as more matriculate through the academy. (Decl. Moss at ¶ 6.) Defendants are now able, with that reduction in the shortage of correctional officers, to analyze the current correctional officer vacancies to determine the necessity and feasibility of providing additional correctional officer positions to enable greater small management yard usage within administrative segregation units. (*Id.*)

Further, the CDCR Division of Adult Institutions is exploring the availability of sensitive needs yard housing for that portion of administrative segregation inmates who are endorsed and awaiting transfer to a sensitive needs yard. (Decl. Moss, ¶ 7.) The Division of Adult Institutions will ascertain which institutions have available sensitive needs housing within their established caps and so can receive those inmates, including CCCMS inmates, within administrative segregation housing who are endorsed for those beds. (*Id.*)

In thirty days, Defendants will report to the Court on the outcome of their review of available sensitive need yards for CCCMS inmates within administrative segregation units and their review of submitting a request for additional staffing allocations to enable third watch small management yard usage by inmates within administrative segregation housing.

## CONCLUSION

Defendants respectfully request this Court to approve their submitted plan to create small management yards to serve inmates within administrative segregation units. Because Plaintiffs' challenge to the plan is based upon a misunderstanding of the number of required

//
//
//

1 | yards to meet the needs of such inmates, Plaintiffs' notice of non-compliance must be rejected
2 | and the submitted plan approved.

3 | Dated: December 3, 2007

EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Lisa Tillman
LISA TILLMAN
Deputy Attorney General
Attorneys for Defendants