EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
SAMANTHA TAMA – State Bar No. 240280
Deputy Attorney General
CHARLES ANTONEN – State Bar No. 221207
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile:  (415) 703-5843
rochelle.east@doj.ca.gov
lisa.tillman@doj.ca.gov
samantha.tama@doj.ca.gov

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No.  2:90-CV-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

- 1 -

1

# **TABLE OF CONTENTS**

2
**Page**

3 I.    INTRODUCTION AND STATEMENT OF FACTS ........................................................ 1

4 II.    ARGUMENT ................................................................................................................ 4

5      A.    Plaintiffs' Identification of Only A Small Fraction Of Specific Documents
            That They Claim Were Inappropriately Privileged Does Not Justify
            Compelling Production Of The Entire Privileged Collection ................................. 4

6      B.    Defendants' Privilege Logs and Supporting Declarations Are Sufficient
7            And Comply With Statutory Requirements; Plaintiffs' Identification Of
            But A Few Oversights Does Not Eviscerate Applicable Privileges ....................... 5

8            1.    Defendants' Privilege Logs are Sufficient ................................................. 5

9            2.    Defendants' Declarations are Sufficient .................................................... 6

10     C.    Neither The Attorney-Client Privilege, Nor The Attorney Work Product
            Doctrine Have Been Waived and The Sanctity Of This Confidential
            Information Must Be Maintained ........................................................................... 8

11           1.    Attorney Client Privilege ........................................................................... 8

12           2.    Attorney Work Product ............................................................................... 9

13           3.    That Some Documents Identified As Protected By The Attorney-
                  Client Or Work Product Privileges Do Not Appear To Plaintiffs
14                Clearly To Be Privileged Does Not Mean That No Documents Are
                  Privileged ................................................................................................ 10

15     D.    The Deliberative Process Privilege Applies To The Documents Withheld
16           And Plaintiffs Cannot Make A Showing That The Necessity For The
            Documents Outweighs The Government's Interest In Maintaining The
            Confidentiality Of Their Deliberative Process ..................................................... 11

17           1.    The Documents Sought By Plaintiffs Are Protected By The
18                Deliberative Process Privilege ................................................................. 11

19           2.    Plaintiffs Cannot Make The Necessary Showing Required For
                  Disclosure of The Documents Covered By The Privilege ....................... 13

20           3.    Plaintiffs' Argument That Defendants Have Waived The
                  Deliberative Process Privilege Is Without Merit ..................................... 14

21     E.    Defendants Properly Asserted Other Privileges And Minor Errors In A
            Small Portion Of Documents Do Not Justify Waiver Of All Privileges ............... 15

22           1.    The Official Information Privilege Applies To The Documents
23                Defendants Identified ............................................................................. 15

24           2.    Defendants Are Justified In Withholding Documents That Invade
                  Third Parties' Privacy Rights .................................................................. 15

25     F.    Plaintiffs Have Not Demonstrated That Their Small Sampling Of
            Documents Identified On Defendants' Privilege Logs Justifies Waiver Of
26           Privilege ............................................................................................................... 16

27 III.   CONCLUSION ........................................................................................................... 16

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Amoco Production Co., v. Schlesinger, et al.*,
5
   No. 78-463, 1979 U.S. Dist. LEXIS 12103 (Dist. Decl. 1979) ................................................ 8

*Andrew Corp. v. Beverly Manufacturing Co.*,
6
   415 F.Supp.2d 919 ........................................................................................................................ 9

7
*Assembly of State of Cal. v. United States Dep't of Commerce*,
   (9th Cir. 1992) 968 F.2d 916....................................................................................................... 16

8
*Bourne v. Town of Madison*,
   05-CV-365-JD, 2007 U.S. Dist. LEXIS 23945 at * 9 (Dist. N.H., March 2007) ....................... 5

9
*Bowne v. Ambase Corp.*,
10
   150 F.R.D. 465 (S.D.N.Y. 1993) ................................................................................................. 6

*Casad v. United States Dep't. of Health and Human Services*,
11
   301 F.3d 1247 (10th Cir. 2002)................................................................................................... 11

12
*Centifaniti v. Nix*,
   865 F.2d 1422 (3rd Cir. 1989) ................................................................................................... 12

13
*Clarke v. American Commerce Nat'l Bank*,
   (9th Cir. 1992) 974 F.2d 127........................................................................................................ 8

14
*Duplan Corp. v. Moulinage et Retor derie de Chavanoz*,
15
   (4th Cir. 1974) 509 F.2d 730...................................................................................................... 10

*E.P.A. v. Mink*,
16
   410 U.S. 73 (1974) ..................................................................................................................... 12

17
*Federal Trade Commission v. Warner Communications, Inc.*,
   742 F.2d 1156 (9th Cir. 1984)............................................................................................... 12, 13

18
*Golden Trade S.r.L. v. Lee Apparel Co.*,
19
   1992 U.S. Dist. LEXIS 17739, *11, (S.D.N.Y. Nov. 20, 1992) ................................................. 6

*Hawkins v. Stables*,
20
   148 F.3d 379 ................................................................................................................................ 9

*Hickman v. Taylor*,
21
   (1947) 329 U.S. 495 ................................................................................................................. 9, 10

22
*Hunt v. Blackburn*,
   128 U.S. 464 (1888) ..................................................................................................................... 9

23
*In re Franklin National Bank*,
   478 F. Supp. 577 (E.D. N.Y. 1979)........................................................................................... 11

24
*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*,
25
   145 F.3d 1422 (D.C. Cir. 1998) ................................................................................................. 14

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,
26
   434 F.Supp.2d 810 ....................................................................................................................... 9

27
*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................................................... 11, 12

28

- ii -

## TABLE OF AUTHORITIES
### (continued)

Page

*Pacific Gas & Electric Co. v. U.S.*,
  No. 04-74C, 2006 U.S. Claims LEXIS 63, at \**19-20 (Fed. Clms. March 2006) ..................... 6

*Texas v. Lee*,
  889 F.2d 59 (5th Cir. 1989)......................................................................................... 12

*Trammel v. United States*,
  445 U.S. 40 (1980) ........................................................................................................ 9

*Tulip Computers International v. Dell Computer Corp.*,
  No. 00-981-RRM, 2002 U.S. Dist. LEXIS 19288 (Dist. Del. 2002) ................. 4, 10, 13, 15, 16

*United States v. Aldman*,
  (2nd Cir. 1995) 68 F.3d 1495 ......................................................................................... 9

*United States v. Constr. Prods. Res., Inc.*,
  73 F.3d 464 (2d. Cir. 1996)............................................................................................. 6

*Upjohn Co. v. United States*,
  449 U.S. 383 ................................................................................................................. 8

*Vaughan v. Celanese Americas Corporation*,
  No. 3:06 CV104-W, 2006 U.S. Dist. LEXIS 89888 (W.D. N. Car., 2006) .................... 5, 10, 15

*Xcel Energy, Inc. v. U.S.*,
  237 F.R.D. 416 ............................................................................................................. 16

**Rules**

Federal Rule of Civil Procedure § 26....................................................................... 5, 8, 9

Federal Rule of Evidence § 501 ................................................................................... 11

Federal Rule of Evidence § 509 ................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION AND STATEMENT OF FACTS

The root of the present discovery dispute is the parties' failure to agree upon a joint discovery plan.  Defendants initially proposed the parties enter into such a plan.  Plaintiffs dismissed this proposal.  Instead, Plaintiffs demanded that Defendants essentially conduct two years' worth of discovery in approximately two months.  This task was impossible and, unfortunately, this dispute inevitable.

On July 23, 2007, the Courts in *Plata v. Schwarzenegger* and *Coleman v. Schwarzenegger* simultaneously granted Plaintiffs' motions to convene a three-judge panel to determine whether to enter a prisoner release order.  On July 31, 2007, the three-judge panel requested the parties submit statements addressing, among other things, "whether a period of discovery is appropriate or necessary and, if so, the scheduling thereof . . . ."  (Order 3:3-4.)  On August 29, 2007, the three-judge court set an initial hearing on September 24, 2007 and ordered the parties to be prepared to discuss "scheduling and other procedural issues at that time."  (Order Setting Initial Hearing 1:28.)

Prior to the September 24 hearing, Plaintiffs propounded on Defendants thirty-eight requests for production.  (Antonen Decl. ¶ 2.)  Prior to the September 24, 2007 hearing, Defendants met and conferred with Plaintiffs regarding the propriety of this discovery.  (Antonen Decl. ¶ 2.)  Defendants informed Plaintiffs that this discovery was premature and therefore improper.  Moreover, due to the potentially short time frames and large number of intervenors involved in this proceeding, Defendants requested Plaintiffs withdraw this discovery pending all parties entering into a joint discovery plan.  (Antonen Decl. ¶ 2.)  Plaintiffs declined Defendants' proposal.  (Antonen Decl. ¶ 2.)

At the September 24, 2007 hearing, Defendants apprised the three-judge panel that Plaintiffs had propounded discovery on Defendants even though the three-judge panel had not opened discovery in this matter.  To avoid time-consuming discovery battles, Defendants requested the three-judge panel order the parties to agree on a joint discovery plan prior to propounding any discovery.  (Antonen Decl. ¶ 2.)  Taking these matters under submission, the

- 1 -

1    three-judge panel on September 25, 2007, issued an order stating that discovery was now open

2    and that written responses to any previously propounded discovery were due thirty days from the

3    date of the order.  (9/25/07 Order.)

4         Before discovery was opened by the three-judge panel, Defendants began the process of

5    assembling electronic and paper documents.  This process began in advance of Plaintiffs serving

6    their second requests for production in both *Coleman* and *Plata*.  On October 17, 2007, Plaintiffs

7    served an additional thirty-nine requests for production on Defendants.  (Antonen Decl. ¶ 4.)

8    Additionally, Plaintiffs served sixty-three interrogatories on Defendants and to date have noticed

9    the depositions of twelve percipient witnesses.  (Antonen Decl. ¶ 4.)

10        In response to Plaintiffs' requests for production, Defendants have reviewed to date

11   approximately 50,000 electronic and paper documents in less than 60 days.  (Antonen Decl. ¶ 5.)

12   Moreover, Defendants have to date produced approximately 70,000 pages of electronic and paper

13   documents to Plaintiffs.  (Antonen Decl. ¶ 5.)  In order to make this production happen,

14   Defendants' e-discovery vendor, Bridge City Legal, has billed approximately 1,500 hours to this

15   project.  (French Decl. ¶ 2.)  Moreover, over one hundred attorneys and paralegals from the

16   California Attorney General's Office, California Department of Corrections and Rehabilitation,

17   and Hanson Bridgett have devoted approximately 5,000 hours reviewing and privileging

18   documents in this matter.  (Antonen Decl. ¶ 5.)  Unfortunately, due to the exceedingly short

19   discovery period in these proceedings and the voluminous amount of documents needing to be

20   reviewed, Defendants have been unable to re-review and re-evaluate documents.  (Antonen Decl.

21   ¶ 5.)

22        On November 6, 2007, the parties met and conferred regarding Plaintiffs' concerns about

23   how Defendants would be privileging documents.  (Antonen Decl. ¶ 7.)  During this meet and

24   confer, the parties failed to agree about the contours of the deliberative process privilege.

25   Plaintiffs, however, agreed to review the privilege log Defendants would produce on November

26   9, 2007 and would provide Defendants with a detailed list of concerns about this privilege log.

27   (Antonen Decl. ¶ 7.)  During this meet and confer, Plaintiffs agreed not to challenge documents

28   withheld by Defendants on the basis of official information privilege due to security concerns (*i.e.*

- 2 -

1    transport schedules, architectural renderings, blueprints, etc.)  (Antonen Decl. ¶ 7.)

2           On November 13, 2007, Plaintiffs again contacted Defendants regarding various concerns

3    about Defendants' privilege log.  (Antonen Decl. ¶ 8.)  Plaintiffs initially posed various

4    generalized concerns about Defendants' privilege log.  Defendants advised Plaintiffs that they

5    needed specific examples of any concerns in order for the meet and confer to be meaningful.

6    Plaintiffs provided twenty examples of concerning entries on Defendants' privilege log.

7    (Antonen Decl. ¶ 8.)  On November 14, 2007, the parties met and conferred regarding these

8    twenty entries.  At this meet and confer Defendants agreed to modify the format of the privilege

9    log to address some of Plaintiffs' concerns and agreed to revise the November 9, 2007 privilege

10   log when time permitted.  (Antonen Decl. ¶ 9.)

11          Since November 13, 2007, the parties have continued to meet and confer regarding

12   Plaintiffs' privilege log concerns.  (Antonen Decl. ¶ 10.)  During these meet and confers,

13   Defendants have requested Plaintiffs provide specific examples regarding any allegedly

14   inappropriately privileged documents.  Except for the twenty documents listed above, Plaintiffs

15   have refused to provide any further examples during these meet and confers.  The parties met and

16   conferred again on December 3 and continued to do so on December 4, in an attempt to resolve

17   any remaining issues regarding Defendants' privilege log.  (Antonen Decl. ¶ 10.)

18          While identifying several new allegedly problematic entries, Plaintiffs' motion to compel

19   essentially recites the same documents that have already been the subject of discussion between

20   the parties.  This time, however, Plaintiffs argue that the problems they have identified with

21   respect to those few documents justifies an order compelling production of all documents on

22   Defendants' privilege log.  The law does not support that for which Plaintiffs reach, particularly

23   given the magnitude of the production, Defendants' good faith efforts to provide all responsive,

24   non-privileged documents, and Plaintiffs' failure to identify any other documents specifically.

25   General, unsupported assertions that Defendants have been unreasonable are not only untrue, but

26   insufficient to meet Plaintiffs' burden on their motion to compel.

27

28

1

## II.    ARGUMENT

2

**A.    Plaintiffs' Identification of Only A Small Fraction Of Specific Documents That They Claim Were Inappropriately Privileged Does Not Justify Compelling Production Of The Entire Privileged Collection.**

3

4      Plaintiffs argue that the privilege logs are "fraught" with improper assertions of privilege

5   but identify only fifteen examples.  Defendants and Plaintiffs have already met and conferred or

6   will meet and confer about those particular examples.  (Antonen Decl. 10.)  Despite Defendants'

7   numerous requests to Plaintiffs to specifically identify the deficiencies in Defendants' privilege

8   logs, Plaintiffs repeatedly refer to the same fifteen examples and now claim that those few

9   examples (which amount less than 1% of the privileged documents) excuse them from identifying

10   other documents specifically in their motion to compel.

11      Plaintiffs also argue that the descriptions of some of the documents identified on

12   Defendants' privilege log did not include enough information to justify being withheld.  Again,

13   despite many requests, Plaintiffs have refused to identify more than a handful of documents that

14   they contend are problematic, and now assert that the handful they have identified justifies

15   compelling production of all the documents.  This disregards that Defendants and Plaintiffs

16   continue to meet and confer in an effort to rectify Plaintiffs' concerns, and that Defendants, in

17   good faith, continue to seek more information from Plaintiffs about the alleged deficiencies.

18      Plaintiffs' failure to identify the problematic documents with specificity and their

19   argument that they need not do so in order to obtain an order compelling production of all the

20   documents that are privileged is not supported by law.  In *Tulip Computers International v. Dell*

21   *Computer Corp.*, No. 00-981-RRM, 2002 U.S. Dist. LEXIS 19288 (Dist. Del. 2002), defendant

22   Dell Corp., made a similar argument as Plaintiffs here.  Specifically, Dell argued that the

23   plaintiff's privilege log was deficient because it inadequately identified authors and recipients,

24   and provided inadequate descriptions of communications.  *Id*. at **14, 15.  Because of these

25   perceived shortcomings, Dell argued that it was entitled to production of all documents on the

26   plaintiff's privilege log.  Id. at 105.  In its unequivocal rejection of this approach, the Court made

27   clear that the proper remedy was not "the draconian approach demanded by Dell, that is, the

28   wholesale denial of all privilege and production of all listed documents."  *Id*. at **20.  Instead, the

- 4 -

1    "standard for testing the adequacy of the privilege log is whether, *as to each document*, it sets

2    forth facts that, if credited, would suffice to establish each element of the privilege or immunity

3    that is claimed."  *Vaughan v. Celanese Americas Corporation*, No. 3:06 CV104-W, 2006 U.S.

4    Dist. LEXIS 89888 (W.D. N. Car., 2006) *at \*8* (emphasis added).

5           Here, Defendants have worked around the clock to produce more than 70,000 pages of

6    documents, and to identify the privileged documents in compliance with the law.  (Antonen Decl.

7    ¶ 5.)  Defendants continue to work to resolve the issues with the privilege log, and they provided

8    declarations that justify the application of the privilege to the documents withheld.  (Antonen

9    Decl. ¶ 10.)  That a small percentage of documents from Defendants' privilege log may have been

10   identified with less specificity than is ideal is understandable, and in no way justifies an order

11   compelling production of everything on the log.

12   **B.    Defendants' Privilege Logs and Supporting Declarations Are Sufficient And Comply
            With Statutory Requirements; Plaintiffs' Identification Of But A Few Oversights**

13   **Does Not Eviscerate Applicable Privileges.**

14          **1.    Defendants' Privilege Logs are Sufficient.**

15          Plaintiffs mistakenly argue that Defendants have failed to properly identify documents to

16   establish a basis for the claimed privileges.  Once again, Plaintiffs err in their overly-narrow

17   application of the law.  Specifically, Plaintiffs fail to recognize that when dealing with large

18   volumes of documents, the law provides for a more liberal standard in the identification of

19   documents being claimed as privilege pursuant to Federal Rule 26(b)(5):

20          The rule does not attempt to define for each case what information must be
            provided when a party asserts a claim of privilege or work product protection.
21          Details concerning time, persons, general subject matter, etc., may be appropriate
            if only a few items are withheld, but may be unduly burdensome when voluminous
22          documents are claimed to be privileged or protected, particularly if the items can
            be described by categories.
23

24   Fed. R. Civ. P. 26(b)(5), 1993 Advisory Committee Note; *see also Bourne v. Town of Madison*,

25   05-CV-365-JD, 2007 U.S. Dist. LEXIS 23945 at \* 9 (Dist. N.H., March 2007); *Vaughan v.*

26   *Celanese Americas Corp.*, 2006 U.S. Dist. LEXIS 89888 at \*9.

27          It is clear that "particularly in cases involving large quantities of disputed documents, the

28   court has broad discretion as to how to proceed."  *Golden Trade S.r.L. v. Lee Apparel Co.*, 1992

- 5 -

1  U.S. Dist. LEXIS 17739, *11, (S.D.N.Y. Nov. 20, 1992).  For example, courts have found as

2  sufficient privilege logs that simply identify the documents, the individuals who were parties to

3  the communications and some level of detail to permit a judgment as to whether the document is

4  at least potentially protected from disclosure.  *United States v. Constr. Prods. Res., Inc.*, 73 F.3d

5  464, 473-474 (2d. Cir. 1996); *Bowne v. Ambase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993).

6  Other required information, such as the relationship between the individuals listed in the log and

7  the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the

8  document to individuals not normally within the privileged relationship, is then typically supplied

9  by affidavit or deposition testimony.  *U.S. Constr. Prods.*, 73 F.2d at 473-474; *Bowne,* 150 F.R.D.

10  at 474.

11       In this case, Plaintiffs recognized the difficulties posed by the large volume documents

12  being reviewed and privileged by Defendants.  Specifically, in the rolling production stipulation,

13  the parties agreed that Defendants' privilege logs would only include source/author and

14  recipient(s) if this information was "readily available."  (Stip. re Defs.' Rolling Prod. 3:25-26.)

15  This provision was specifically negotiated by Defendants because depending on the type of

16  document it was difficult, if not impossible, for Defendants to determine who were the author

17  and/or recipient(s).  (Antonen Decl. ¶ 6.)  As an alternative, Defendants offered to provide

18  Plaintiffs with the source from where the document was collected.   Plaintiffs agreed that this

19  information would be sufficient.  (Antonen Decl. ¶ 6.)  Therefore, Plaintiffs contention that

20  Defendants' privilege logs are inadequate is without merit.

21       **2.     Defendants' Declarations are Sufficient.**

22       To be sufficient, the declarations supporting the privilege logs must establish the

23  following criteria:  The declaration (1) must be authored by the head of the agency, or his/her

24  properly delegated authority; (2) must state with particularity what information is subject to the

25  privilege; and (3) must supply the court with the reasons or bases for maintaining the

26  confidentiality of the requested documents.  *Pacific Gas & Electric Co. v. U.S.*, No. 04-74C, 2006

27  U.S. Claims LEXIS 63, at **19-20 (Fed. Clms. March 2006)   Here, Defendants have provided

28  the necessary evidentiary support for the privilege logs in the form of declarations by Robert

1    Gore, Doug McKeever, Vincent Brown, Cynthia Radavsky and Scott Kernan. (Antonen Decl.

2    Ex. C.) In each of these declarations, the declarants state that they are the heads of their

3    respective agencies and identify the categories of documents generated or maintained by their

4    agency that could be responsive to Plaintiffs' requests. As but one example on this point, Doug

5    McKeever's declaration states the following:

6         8. I have provided documents in the possession of CDCR to counsel for
          Defendants in response to Plaintiffs' Requests for Production of Documents.
7         These documents include draft bed plans, mental health population projections
          prepared by a litigation consultant, associated e-mails, documents developed to
8         activate creative brainstorming, internal debate and analysis, official information
          which is not made available to the public, and communications with CDCR's
9         attorneys regarding proposed courses of action as well as pending and anticipated
          litigation. Such documents include recommendations, proposals, analysis, legal
10        comments, and other documents which reflect the personal opinion of the
          individual writers rather than the policy of CDCR. (Antonen Decl. Ex. C.)
11

12        Addressing the second requirement, each of the declarants go on to articulate the

13   categories of documents that are confidential or subject to a privilege, state the basis for the

14   claimed privileges, and state that they are familiar with and provided these documents to counsel

15   for Defendants. Again providing just one of many examples, Cynthia Radavsky's declaration

16   states:

17        7. In my capacity as Deputy Director of Long Term Care Services for DMH, I am
          familiar with this agency's analysis, regulations, policies, practices, and
18        procedures concerning its involvement with prisons of California Department of
          Corrections and Rehabilitation. In addition, I am familiar with, and an
19        instrumental participant in, development of such analysis, policies and procedures.
          I am also familiar with the process associated with the derivation of the budget and
20        the development of draft budget change proposals for internal review and revision
          and for ultimate submission to the Office of the Governor for final approval.
21
          8. Policy, planning and procedural documents are drafted, revised, discussed,
22        debated and redrafted before finalization. Although the final product will be
          produced, DMH maintains as privileged those drafts or other documents reflecting
23        internal analysis, deliberation and discussion prior to adoption of the final product.
          Such documents include patient planning committee notes, draft budget change
24        proposals, legal opinions prepared by in-house counsel for DMH staff, legal
          memoranda prepared relative to ongoing litigation (such as this case and the
25        CRIPA case), position papers and draft cost summaries. (Antonen Decl. Ex. C.)

26        Finally, the declarants each articulate the necessity and bases for maintaining the

27   confidentiality of the documents sought. As a final example, the declaration of Robert Gore

28   states:

- 7 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)                    1389295.1

9. Many potentially responsive documents reflect complex calculations, judgments, projections, the application of existing laws and regulations, and the assessment of possible solutions and recommendations. As such, these documents are pre-decisional, deliberative, and should be shielded from discovery because disclosure of the documents may chill future discourse, self-evaluation and critical analysis. Furthermore, if individuals fear that deliberative materials will be made public, it may deter discussion and development of theories and ideas of benefit to the public. (Antonen Decl. Ex. C.)

Moreover, the declarants also state that the remainder of the responsive documents have been produced to Plaintiffs. Indeed, the declarants even identify in some instances the precise documents produced. (*See* Antonen Decl. Ex. C, Kernan Decl. ¶ 7).

Notwithstanding this detailed testimonial evidence, Plaintiffs attack these declarations on the sole basis that the declarants do not attest to having personally reviewed each and every document. (Pls.' Mot. 13:15-23). Plaintiffs' criticisms in this regard are misguided – such a document-by-document review is not required in cases such as this, where there are large volumes of documents being addressed. *Amoco Production Co., v. U.S. Dept. of Energy*, No. 78-463, 1979 U.S. Dist. LEXIS 12103 (D. Decl. May 29, 1979) at *16, note 16. Together, the privilege logs and declarations supply the necessary information for Plaintiffs to evaluate the claims of privilege asserted here. Defendants have complied with the requirements of Federal Rule of Civil Procedure 26(b)(5).

**C.    Neither The Attorney-Client Privilege, Nor The Attorney Work Product Doctrine Have Been Waived and The Sanctity Of This Confidential Information Must Be Maintained.**

**1.    Attorney Client Privilege.**

The attorney-client privilege protects confidential communications between a client and an attorney from disclosure. *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). This privilege is the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Id.* The U.S. Supreme Court explained that the privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its

- 8 -

1    practice, which assistance can only be safely and readily availed of when free from the

2    consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

3    The privilege recognizes that sound legal advice or advocacy serves public ends and that such

4    advice or advocacy depends upon the lawyer's being fully informed by the client. *Trammel v.*

5    *United States*, 445 U.S. 40, 51 (1980).  Because of its significance to the jurisprudence system,

6    this privilege has been described as "sacrosanct" and courts are encouraged to safeguard the

7    privacy it affords its holders. *Andrew Corp. v. Beverly Manufacturing Co.*, 415 F. Supp. 2d 919,

8    926 (N.D. Ill. 2006).

9        The attorney-client privilege protects interests and relationships which are regarded as of

10    sufficient social importance to justify some sacrifice of availability of evidence relevant to the

11    administration of justice. *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d

12    810, 812 (E.D. Cal. 2006).  When the privilege applies "it affords confidential communications

13    between lawyer and client complete protection from disclosure." *Hawkins v. Stables*, 148 F.3d

14    379, 382 (4th Cir. 1998).

15        **2.    Attorney Work Product.**

16        In a similar vein, the work product doctrine protects materials that reveal an attorney's

17    thoughts, impressions, strategy, intended lines of proof, evaluation of strengths and weaknesses,

18    and inferences drawn from interviews and communications.  Fed. R. Civ. P. 26(b)(3).  The

19    doctrine is designed to preserve the privacy of attorneys' thought processes, and to prevent the

20    parties from "borrowing the wits of their adversaries."  This work product protection applies to all

21    documents and tangible things prepared in anticipation of litigation or for trial. Fed. R. Civ. P.

22    26(b)(3).  The work-product protection however is not limited to materials prepared by an

23    attorney. *United States v. Aldman*, 68 F.3d 1495, 1501-1502 (2nd Cir. 1995).  To the contrary, it

24    extends to materials prepared by the party or by any representative of the party. *Id.*

25        In *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), the U.S. Supreme Court explained the

26    significance and necessity of the doctrine as follows:

27            Proper preparation of a client's case demands that [the attorney] assemble
            information, sift what he considers to be the relevant from the irrelevant facts,
28            prepare his legal theories and plan his strategy without undue and needless

- 9 -

interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways -- aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

So important is this doctrine to the attorneys ability to represent his/her clients that some courts have held: "[N]o showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories." *Duplan Corp. v. Moulinage et Retor derie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974).

### 3. That Some Documents Identified As Protected By The Attorney-Client Or Work Product Privileges Do Not Appear To Plaintiffs Clearly To Be Privileged Does Not Mean That No Documents Are Privileged.

Plaintiffs point to fewer than 10 out of over 10,000 documents that Defendants asserted were protected by the attorney-client or work product privilege and argue that because those documents do not clearly appear to be privileged, the privilege should not apply to any documents. Plaintiffs are incorrect.

In the first place, the vast majority of the documents identified as attorney-client privileged communications or attorney work product were properly identified as such. Second, there is no support for Plaintiffs' claim that a few poorly described documents eviscerates the attorney-client or work product privilege as to all documents. In fact, the law is the opposite. *Tulip Computers*, 210 F.R.D. at 106; *Vaughan*, 2006 U.S. Dist. LEXIS 89888 at *8. Finally, given the enormous volume of documents Defendants identified, combed through, and categorized in an extremely tight timeframe, that some documents were identified less than perfectly can be expected and should be excused. Finally, Defendants are trying to obtain from Plaintiffs the specific documents about which they seek more information and will provide that information in good faith. (Antonen Decl. ¶ 6.) There is simply no basis to find a waiver of the

- 10 -

1    attorney-client or work product privilege as to all documents.

2    **D.    The Deliberative Process Privilege Applies To The Documents Withheld And Plaintiffs Cannot Make A Showing That The Necessity For The Documents**

3    **Outweighs The Government's Interest In Maintaining The Confidentiality Of Their Deliberative Process.**

4

5    **1.    The Documents Sought By Plaintiffs Are Protected By The Deliberative Process Privilege**

6    The deliberative process privilege is a matter of federal common law.  Fed. R. Evid.

7    § 501, 1101(c) (Rule 501 applies "at all stages of all actions, cases, and proceedings.")  Also

8    known as the "executive," "governmental," "official information," or "intragovernmental

9    opinion" privilege, the deliberative process privilege was previously codified in proposed Federal

10   Rule of Evidence § 509.  Although Rule 501 was adopted instead of Rule 509, the proposed Rule

11   509 "remains a useful guide and standard."  *In re Franklin National Bank*, 478 F. Supp. 577, 580

12   (E.D. N.Y. 1979).  Proposed Rule 509(b) provided that the "government has a privilege to refuse

13   to give evidence upon a showing of reasonable likelihood of danger that the evidence will

14   disclose official information as defined in this rule."

15   Subsection (a)(2) defines intragovernmental opinions as subject to the privilege:

16   Information within the custody or control of a department or agency of the government, the disclosure of which is shown to be contrary to the public interest

17   and which consists of . . . intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policy-making

18   functions.

19   The deliberative process privilege applies to the process for formulating government

20   decisions as well as government policies.  The deliberative process privilege "permits the

21   government to withhold documents that reflect advisory opinions, recommendations and

22   deliberations comprising a part of a process by which government decisions and policies are

23   'formulated'."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  The privilege has been

24   applied to a variety of governmental decisions, including the decision to deny funding monies.

25   *See Casad v. United States Dep't. of Health and Human Services*, 301 F.3d 1247 (10th Cir.

26   2002).  Indeed, the privilege applies to communications between all branches of government as

27   well as to communications between outside consultants and government agencies.  *Centifaniti v.*

28   *Nix*, 865 F.2d 1422, 1432 (3rd Cir. 1989) (letter from disciplinary board to supreme court

- 11 -

1  regarding regulation of attorneys); *Texas v. Lee*, 889 F.2d 59, 61 (5th Cir. 1989) (documents

2  containing recommendations of temporary consultants protected).  The privilege serves to ensure

3  the quality of agency decisions, by promoting frank and independent discussion among those

4  responsible for governmental decision-making.  *Sears*, 421 U.S. at 150.

5        In accord with its purpose, the deliberative process privilege applies to those documents

6  that are "pre-decisional" or generated before the adoption of the agency's policy or decision.

7  *Federal Trade Commission v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.

8  1984).  Even if pre-decisional in time of preparation, documents that are purely factual summaries

9  are not protected by the deliberative process privilege.  *E.P.A. v. Mink*, 410 U.S. 73, 87-88

10  (1974).  Thus, purely factual material contained in deliberative memoranda and severable from its

11  context is subject to disclosure.  *Id.*

12        Plaintiffs' brief particularly emphasizes that the deliberative process privilege does not

13  apply to documents relating to the implementation of AB 900, which are dated after the

14  enactment of AB 900.  Plaintiffs misunderstand the role of AB 900 and Defendants' current

15  implementation efforts.  As explained by Deborah Hysen and Kathryn Jett, AB 900 is a funding

16  mechanism for CDCR to fundamentally alter its practices and methodologies for the

17  incarceration, development, treatment, and parole of its inmates.  (Hysen Decl.  2; Jett Decl.  2.)

18  AB 900, however, does not determine which particular programs and projects are approved for

19  funding.  Instead, CDCR first develops the program or project, which is then vetted through the

20  Department of Finance and the Governor's Office for approval.  (Hysen Decl.  3; Jett Decl.  3.)

21  Once approved, the programs or projects are then presented to the California Legislature for

22  approval and funding under the process prescribed by AB 900.  (Hysen Decl.  3; Jett Decl.  3.)

23  Consequently, contrary to Plaintiffs' counsel's contention, decisions regarding the

24  implementation of AB 900 are still ongoing.

25        Moreover, in the process necessary to make these decisions, CDCR creates documents,

26  such as reports, spreadsheets, and schedules.  (Hysen Decl.  2; Jett Decl.  2.)  These documents

27  are circulated within CDCR, the Department of Finance, and the Governor's Office.

28  Consequently, these documents reflect current discussions regarding the implementation of AB

- 12 -

1   900, which may differ from the ultimate decision reached by Defendants.  (Hysen Decl.  2; Jett

2   Decl.  2.)  Consequently, these types of pre-decisional documents fall squarely within the type of

3   documents that can be withheld on the basis of deliberative process.

4          Again, Plaintiffs argue that their giving a few examples of documents that they contend

5   were not privileged justifies the Court's "wholesale" rejection of the deliberative process

6   privilege.  There is no basis for this claim.  Documents that are subject to the deliberative process

7   privilege are privileged for good reason.  Plaintiffs cannot obtain a waiver of the entire collection

8   of privileged documents without any showing that such a waiver is warranted as to each

9   document.  *See Tulip Computers International*, 210 F.R.D. at 106.

10         **2.      Plaintiffs Cannot Make The Necessary Showing Required For Disclosure of
                   The Documents Covered By The Privilege**
11

12         Even if Plaintiffs could demonstrate some need for the materials, they have not

13   demonstrated the "strong showing" of need that is required in order to override the Government's

14   interest in protecting its deliberative processes.  Four factors must be considered in determining

15   whether to override the privilege: (1) the relevance of the evidence; (2) the availability of other

16   evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would

17   hinder frank and independent discussion regarding contemplated policies and decisions.  *Warner*

18   *Communications*, 742 F.2d at 1161.

19         Here, there is no basis for finding that the Plaintiffs' purported need outweighs

20   Defendants' interest in protecting its deliberative processes. While the withheld documents are

21   relevant and the government plays a central role in this proceeding, there are alternative methods

22   for Plaintiffs to obtain this information.  Specifically, Plaintiffs can obtain the withheld

23   information by deposing percipient witnesses regarding the implementation of AB 900.  Plaintiffs

24   in fact have to date noticed the depositions of twelve individuals.  One of these depositions is the

25   person most knowledgeable regarding the "current status and future plans for any actions or

26   projects that are in any way related to, funded by, or implemented pursuant to any portion of

27   Chapter 7, Statutes of 2007 (AB 900) including the details of any current or planned prison

28   construction."  (Antonen Decl. Ex. D.)

- 13 -

1    Additionally, the production of the withheld documents will hinder Defendants' ability to

2    hold frank discussions regarding the implementation of AB 900.  As explained by Robert Gore,

3    Douglas McKeever, Cynthia Radavsky, Vince Brown, and Scott Kernan, the withheld documents

4    should be shielded from discovery because disclosure of the documents may chill future

5    discourse, self-evaluation and critical analysis.  (Antonen Decl. Ex. C.)  Furthermore, if

6    individuals fear that deliberative materials will be made public, it may deter discussion and

7    development of theories and ideas of benefit to the public.  (Antonen Decl. Ex. C.)  Consequently,

8    Plaintiffs have failed to make the requisite "strong showing" necessary to override the

9    deliberative process privilege.

10         **3.    Plaintiffs' Argument That Defendants Have Waived The Deliberative Process**
             **Privilege Is Without Merit.**
11

12    Plaintiffs argue that Defendants have put their deliberative processes at issue by asserting

13    that administrative problems such as systemic failures to recruit, retain, and pay staff, or failures

14    to plan for and provide mental health beds at appropriate levels, are the causes of any violation of

15    Plaintiffs' right to a constitutionally adequate medical and mental health care system.  They argue

16    that they must have access to the documents that reflect the State's decision-making in order for

17    the three-judge panel to evaluate the defense and Defendants' remedial plan meaningfully.

18    Not so.  That Defendants have asserted that administrative problems rather than the size of

19    the prison population are the causes of any violation does not vitiate the deliberative process

20    privilege as to each and every document that may have dealt with those administrative problems.

21    Indeed, the very case authority relied on by Plaintiffs proves otherwise.  To be certain, the court

22    in *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145

23    F.3d 1422 (D.C. Cir. 1998), made clear that it is only when the claims at issue turn on the

24    Government's intent, that the deliberative process privilege is not properly asserted.  *Id.* at 1424.

25    Stated differently, a waiver of the privilege only applies when the *deliberations (or intent) of the*

26    administration, and not simply the quality of the administration itself, are placed in issue.  In this

27    regard, the court stated:

28    If the plaintiff's cause of action is directed at the government's intent, however, it

- 14 -

makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. The Supreme Court struggled in *Crawford-El and Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur. *Id.* at 1424.

Moreover, Plaintiffs' own argument provides further evidence that the Court did not intend for Defendants' assertions or conduct to constitute a waiver of the privilege. In this regard, Plaintiffs note that the Court in *Coleman* ordered the production of budget change proposals and drafts of the budget change proposals. Notably, Defendants then, just as now, maintained the deliberative process privilege with regard to the documents sought. The Court's ruling is therefore noteworthy in that it ordered only a narrow production by Defendants, and specifically refrained from sanctioning a wholesale waiver of all documents subject to the deliberative process privilege.

Additionally, Plaintiffs' asserted need for the withheld documents is not well taken. In this proceeding, Defendants have endeavored to consistently produce documents reflecting final decisions by Defendants. Contrary to Plaintiffs' assertions, Defendants have produced approved budget change proposals and finance letters from CDCR. Moreover, a vast majority of these documents are either public documents or Defendants have already provided such documents to Plaintiffs in the context of the *Coleman* and *Plata* litigation. Therefore, Plaintiffs have more than adequate documents in order to evaluate Defendants' defenses in this matter.

**E.      Defendants Properly Asserted Other Privileges And Minor Errors In A Small Portion Of Documents Do Not Justify Waiver Of All Privileges**

**1.      The Official Information Privilege Applies To The Documents Defendants Identified**

Without citing to a single allegedly problematic document, Plaintiffs contend that Defendants failed to meet their burden to establish the official information privilege properly and therefore waived this privilege. Such a broad waiver is not supported by law. *Tulip Computers*, 210 F.R.D. at 106; *Vaughan*, 2006 U.S. Dist. LEXIS 89888 at *8. Moreover, Plaintiffs' argument

- 15 -

1   contradicts Plaintiffs' agreement not to challenge Defendants withholding of documents raising

2   security concerns on the basis of official information privilege.  (Antonen Decl. ¶ 7.)  Therefore,

3   Plaintiffs' request for the Court to categorically waive the official information privilege should be

4   denied.

5      **2.**  **Defendants Are Justified In Withholding Documents That Invade Third**
       **Parties' Privacy Rights.**

6

7     Defendants are willing to meet and confer with Plaintiffs regarding the specific documents

8   listed by Plaintiffs as being erroneously withheld on the basis of privacy.  Defendants believe that

9   some of the identified entries may have been mislabeled or are otherwise subject to other

10   privileges.  Defendants note, however, that Plaintiffs' request that Defendants produce redacted

11   portions of emails is contrary the native production requested by Plaintiffs, will create logistical

12   difficulties, and is contrary to industry practice.  (French Decl. ¶ 3.)

13   **F.**  **Plaintiffs Have Not Demonstrated That Their Small Sampling Of Documents**
   **Identified On Defendants' Privilege Logs Justifies Waiver Of Privilege.**

14

15     As already explained, Plaintiffs have not made any showing that justifies compelling

16   production of every document on Defendants' privilege log.  Defendants have acted in good faith,

17   have produced over 70,000 pages of documents, and continue to meet and confer over alleged

18   deficiencies in Defendants' privilege logs.  Plaintiffs have not shown that the privileges asserted

19   have been without basis as to the whole, and the cases they cite in support of their request for an

20   order compelling production of all documents do not support their argument.  In Plaintiffs' cited

21   cases, there were only a handful of documents at issue.  No case supports waiver of the privilege

22   as to thousands of privileged documents simply because of a few problematic ones.  Given the

23   accelerated timeframe and the volume of the material involved, it is inevitable that there will be

24   some errors.  Nevertheless, the law protects privileged documents from discovery, and there is no

25   basis for the order that Plaintiffs seek.  *Tulip Computers International*, 210 F.R.D. at 106;

26   *Vaughan*, 2006 U.S. Dist. LEXIS 89888 at *8.

27     As the court in *Assembly of State of Cal. v. United States Dep't of Commerce*, 968 F.2d

28   916, 920 (9th Cir. 1992) noted, when such a large volume of documents are at issue, the court

1   should give counsel for the Government the benefit of the doubt that the documents identified in

2   the privilege log are intra-agency and are "both predecisional and deliberative."  When plaintiffs

3   challenge those representations, the parties must meet and confer to canvass each of the

4   documents at issue to assure that each properly falls within a privilege.  *Id.*; *see also Xcel Energy,*

5   *Inc. v. U.S.*, 237 F.R.D. 416, 420 (D. Minn 2006).  Here, Plaintiffs do nothing more than point to

6   the same handful of documents over and over, and refuse to identify specifically any other

7   problematic documents.  Based on this record, Plaintiffs cannot justify compelling the production

8   of all documents on Defendants' privilege log.

9                                  **III.    CONCLUSION**

10          Defendants respectfully request that the Court deny the relief requested by Plaintiffs.

11

12   DATED:  December 4, 2007                          EDMUND G. BROWN JR.
                                                       Attorney General of the State of California

13

14                                          By:_____/s/ Charles J. Antonen_____

15                                                  CHARLES ANTONEN
                                                    Deputy Attorney General
16                                                  Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28