IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

RALPH COLEMAN, et al.,

    Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

NO. CIV S-90-0520 LKK JFM P

**THREE-JUDGE COURT**

MARCIANO PLATA, et al.,

    Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

NO. C01-1351 TEH

**THREE-JUDGE COURT**

ORDER

This matter came on for hearing on December 6, 2007 on plaintiffs' motion to compel production of documents that have been withheld by defendants on various asserted claims of privilege, including deliberative process, attorney-client, attorney work product, official information[1], and privacy. Lori Rifkin, Esq. and Sara Norman, Esq. appeared as counsel for

---

[1] Defendants separately assert an official information privilege as to some documents, in conjunction with other privileges or standing alone. See, e.g., PRIV022241-PRIV02227; PRIV022486; PRIV022487-PRIV022488; PRIV022505-PRIV022525. In their opposition to the instant motion, defendants state that the deliberative process privilege is "[a]lso known as the 'executive,' 'governmental,' 'official information,' or 'intragovernmental opinion' privilege." Defendants' Opposition to Plaintiffs' Motion to Compel, filed December 4, 2007, at 11. It is unclear from defendants' briefing on this motion whether they contend that the official information privilege as asserted in these proceedings differs from the deliberative

plaintiffs. Charles Antonen, Deputy Attorney General, and Lisa Tillman, Deputy Attorney General, appeared as counsel for defendants. After hearing, this court announced its oral ruling on the record. The ruling and the reasons therefor are set forth herein.

## BACKGROUND

On September 5, 2007, plaintiffs served their first request for production of documents in these proceedings.[2] On September 24, 2007, the three-judge court held an initial hearing in the proceedings during which it heard from the parties and the intervenors regarding, <u>inter alia</u>, scheduling issues. On September 25, 2007, noting that a question had arisen at the hearing "as to whether discovery has been opened in these proceedings and whether discovery served prior to the initial hearing is premature," the three-judge court issued an order clarifying that discovery was open and setting a deadline of thirty days for service of responses to any discovery requests served prior to the initial hearing. Order filed September 25, 2007. On October 10, 2007, the three-judge court issued an order bifurcating

---

process privilege. However, review of defendants' privilege logs suggests they view the two as distinct.

[2] That request contains thirty-eight separate requests for production of documents, including requests for documents related to: the implementation of Assembly Bill 900 (AB 900); any projected change in California's prison population; the California Department of Corrections and Rehabilitation's (CDCR) choice of prison sites for construction of additional prison beds, buildings to treat or house inmates, and reentry program facilities under various sections of AB 900, including site surveys and Environmental Impact Reports, communications from or to local community groups and/or government officials, timetables for the construction of such beds and progress in meeting the timetables; timetables for transfers of inmates out of state under AB 900; the CDCR's ability or inability to hire and/or retain medical and mental health staff, including analyses of the effect of AB 900 on medical and mental health staffing levels; studies or analyses of the effect of AB 900 on medical and mental health care at the prisons; any measures defendants have considered to reduce prison populations other than the measures in AB 900; contingency plans, other than population reducing measures, defendants have considered initiating when prisons reach their maximum capacity; defendants' determination of the maximum capacity of any prison or the entire prison system; timetables for obtaining funding to implement AB 900 and defendants' progress therewith; any consideration of placing limits on the prison population; any consideration of the effects of sentencing reform, a sentencing commission, and changes in parole policies on the prison population; specific matters referenced in the Declaration of Scott Kernan filed in opposition to plaintiffs' motion to convene a three judge panel; and changes or clarifications of parole discharge policies and parole revocation policies. <u>See</u> Ex. F to Declaration of Michael W. Bien in Support of Joint Statement Regarding Discovery Dispute, filed October 22, 2007.

2

1  the proceedings and setting deadlines for the first phase.  Pursuant to that order, discovery is
2  to be completed by December 20, 2007.  Order filed October 10, 2007, at 4-5.

3        On October 22, 2007, the parties filed a joint statement regarding discovery disputes
4  that had arisen, including a dispute over the timing of production of documents responsive to
5  plaintiffs' September 5, 2007 document production request.  In the joint statement,
6  defendants indicated that they had "gathered information from over eighty custodians,
7  amounting to over three terabytes of data from individual work stations and over forty
8  gigabytes from the exchange servers at the California Governor's Office, California
9  Department of Corrections and Rehabilitation, California Department of Finance, and
10 California Department of Mental Health."  Joint Statement Regarding Discovery Dispute,
11 filed October 22, 2007, at 14-15.  Defendants further represented that a physical printout of
12 all these materials would require "approximately 45,000 boxes of copy paper, which if
13 stacked on top of each other would be approximately 37,500 feet or 7.1 miles tall."  Id. at 15.
14 Defendants contended that production of responsive, non-privileged documents by October
15 25, 2007 would be "impossible" and they sought permission to produce documents in
16 accordance with a rolling production schedule to be provided on November 2, 2007.  Id.
17 They also requested that the Court "not deem any privileges waived due to this rolling
18 production."  Id.

19       On October 25, 2007, defendants served responses to plaintiffs' first document
20 production request.  Therein, defendants interposed several general objections, and they
21 asserted various privileges and interposed objections to each of the specific requests.  See
22 Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents,
23 filed October 26, 2007.  Notwithstanding the objections, defendants agreed that they would
24 produce all responsive, non-privileged documents to plaintiffs on a rolling production
25 schedule.  See id.

26       On November 1, 2007, this court conducted a teleconference with the parties
27 concerning a schedule for rolling production of documents responsive to plaintiffs' document
28

3

requests. During the conference, it became apparent that there were going to be a large number of documents at issue on claims of privilege. This court therefore requested that defendants submit to this court for in camera review a copy of all documents for which defendants claimed a privilege on the day each privilege log was served. Defendants acknowledged this request and agreed to it; the request was set forth in the stipulation regarding rolling production which was signed by the parties and filed on November 2, 2007.

In the November 2, 2007 stipulation, the parties agreed to a schedule for production of responsive, non-privileged documents as well as privilege logs.[3] Pursuant to that stipulation, defendants agreed that they would, <u>inter alia</u>, produce paper documents on November 1, 2007, and additional responsive non-privileged paper and electronic documents on November 9, 2007, November 16, 2007, November 23, 2007, and November 30, 2007. Stipulation Regarding Rolling Production, filed November 2, 2007, at 3-4. In addition, defendants agreed that on November 9, 2007, November 16, 2007, November 23, 2007, November 30, 2007, and December 7, 2007, they would produce privilege logs for the documents withheld from each preceding week's production. <u>Id</u>.

Despite their agreement to do so, defendants did not produce any of the privilege logs or documents cited therein to this court for in camera review on either November 9, 2007 or November 16, 2007, when they served privilege logs on plaintiffs. On November 19, 2007, this court heard argument on additional discovery disputes between the parties. At that hearing this court noted that it had received no documents for which a privilege had been claimed. Defendants acknowledged they had not complied with their agreement to submit documents for in camera review contemporaneously with service of each privilege log. They

---

[3] The November 2, 2007 stipulation specifically provides that the production schedule set forth therein "encompasses Defendants' responses to Plaintiffs' Requests for Production, Set One and Two." Responses to plaintiff's second set of requests for production were due on November 9, 2007. <u>See</u> Order filed October 30, 2007, at 7. While it is clear that the privilege logs at issue on this motion include documents relevant to plaintiffs' first request for production of documents, it is not clear whether they also include documents relevant to plaintiffs' second request for production of documents. In either event, neither party has, in connection with the instant motion, challenged the relevance of the documents for which defendants have raised claims of privilege.

4

were therefore ordered to produce the documents by close of business on November 20, 2007. This court also set a briefing schedule and hearing for any unresolved disputes over claims of privilege. The instant motion was filed pursuant to that schedule.

Instead of complying with this court's November 19, 2007 ruling to produce documents for in camera review, defendants sought reconsideration and/or a stay thereof, first by this court and then by the three judge panel. Both requests for reconsideration and/or for stay were denied. Defendants finally submitted the privilege logs produced on November 9, 2007, November 16, 2007, and November 23, 2007, to this court on November 28, 2007 at 5:00 p.m.[4] On the same day, defendants submitted all or most[5] of the documents covered by those privilege logs to this court for in camera review.

## PLAINTIFFS' MOTION

Plaintiffs advance several grounds in support of their motion. They contend that defendants' privilege logs are filled with obviously erroneous assertions of privilege and that defendants have failed to correct these errors. In addition, plaintiffs contend that defendants have failed to meet their burden under Fed. R. Civ. P. 26(a)(5)(A) to adequately identify the documents and establish a sufficient basis for the asserted privileges. Plaintiffs make three separate arguments with respect to the deliberative process privilege: that defendants have

---

[4] On November 30, 2007, defendants served a fourth privilege log on plaintiffs and the court and submitted additional documents for in camera review. The instant motion was also filed on November 30, 2007, prior to review by plaintiffs' counsel of the November 30, 2007 privilege log. The court's ruling on the instant motion does not, therefore, include documents covered in the November 30, 2007 privilege log.

[5] Defendants produced for in camera review thousands of documents on a DVD and a secure internet electronic database, accompanied by the five privilege logs served on November 9, 2007, November 16, 2007, and November 23, 2007. Three privilege logs, totaling 574 pages, identify thousands of scanned paper documents for which a privilege has been asserted. Two privilege logs, totaling 621 pages, identify thousands of electronic documents for which a privilege has been asserted. The first privilege log, produced on November 9, 2007, is sixty-three pages long and contains approximately 3500 pages of documents for which one or more claims of privilege are raised. Although the numbering of the documents in the logs is not completely sequential, it is apparent that defendants have, in the five logs served by November 23, 2007, claimed privileges for over 50,000 pages of documents. While the court has determined that the vast majority of documents set forth in the privilege logs are on the DVD or in the database, it has found at least three pages, identified as DOF006698, DOF006699, and CDCR000096 in the November 9, 2007 paper privilege log, that are not readily identifiable on the DVD.

5

failed make the showing necessary to establish application of the deliberative process privilege and that defendants have asserted this privilege for documents outside its scope, that defendants have placed their deliberative processes at issue and the withheld documents are "highly relevant" to these processes, and that plaintiffs' need for the materials outweighs defendants' interest in non-disclosure.  In addition, plaintiffs contend that defendants have failed to establish any of the other asserted privileges.  Finally, plaintiffs contend that defendants have abused the discovery process with their overbroad assertions of privilege and therefore should be deemed to have waived all privileges.

     In their written opposition, defendants argue that plaintiffs have identified only fifteen examples of alleged improper assertions of privilege and only a very small number of documents inadequately described in the privilege log.[6]  Defendants contend that plaintiffs have failed to identify problems with sufficient specificity and on a large enough scale to justify their request for production of all of the documents in dispute.  Defendants contend that their privilege logs and the declarations in support of the assertions of privilege are sufficient and that, in the context of the voluminous production required by plaintiffs' requests, some "oversights" in the privilege logs do not "eviscerate applicable privileges." Defendants also contend they have not waived the attorney-client privilege, the attorney work product privilege, or the official information privilege; that the documents they have identified as protected by the deliberative process privilege are in fact so protected, that plaintiffs have not shown their need for the documents outweighs the government's interest in the confidentiality of its deliberative processes, and that they have not waived the deliberative process privilege. Defendants also indicate their willingness to meet and confer further with respect to the documents withheld on the basis of privacy rights.

/////

/////

---

[6] During oral argument defendants, apparently conceding the validity of plaintiffs' contentions with respect to specific documents, represented that most of those documents would be produced to plaintiffs on Friday, December 7, 2007 with a production of documents scheduled for that day.

6

ANALYSIS

I. General Principles

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . " Fed. R. Civ. P. 26(b)(1).  Defendants' claims of privilege in these proceedings are governed by principles of federal common law.  See Fed. R. Evid. 501; see also Kerr v. United States District Court for the Northern District of California, 511 F.2d 192, 197 (9th Cir. 1975).

It is well-established that the federal "policy favoring open discovery requires that privileges must be 'strictly construed.'" Dowling v. American Hawaii Cruises, Inc., 971 F.2d 423, 425 (9th Cir. 1992) (quoting University of Pennsylvania. v. EEOC, 493 U.S. 182, 189 (1990)).  The United States Supreme Court has made it clear that an evidentiary privilege is not applied "unless it 'promotes sufficiently important interests to outweigh the need for probative evidence. . . .'" University of Pennsylvania, 493 U.S. at 198 (quoting Trammel v. United States, 445 U.S. 40, 51 (1980).  "Inasmuch as '[t]estimonial exclusionary rules and privileges contravene the fundamental principles that "the public . . . has a right to every man's evidence,"' id. at 50 [internal citation omitted], any such privilege must 'be strictly construed.'  445 U.S. at 50." University of Pennsylvania, id.

Rule 26(a)(5)(A) of the Federal Rules of Civil Procedure provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(a)(5)(A).  The specific "nature" of the notice required by Rule 26(b)(5) "is explicitly left indeterminate." Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005).  "'The rule does not attempt to define

for each case what information must be provided when a party asserts a claim of privilege or work product protection.'" Id. at 1147-48 (quoting Rule 26(b)(5) advisory committee's note (1993 Amendments). However, it is clear that "the 'party must . . . provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.'" Id. at 1148 (quoting Rule 26(b)(5) advisory committee note (1993 Amendments).

In Burlington Northern, the United States Court of Appeals for the Ninth Circuit set forth several factors that a court is to consider in determining whether a particular assertion of privilege satisfies the requirements of Rule 26(a)(5)(A):

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard. These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. They should not be applied as a mechanistic determination of whether the information is provided in a particular format. Finally, the application of these factors shall be subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders.

Id. at 1149.

Defendants have the burden of proving application of each of the asserted privileges. See In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992) (attorney client privilege); Cobell v. Norton, 213 F.R.D. 1, 4 (D.D.C. 2003) (deliberative process privilege); Chism v. County of San Bernardino, 159 F.R.D. 531, 532 (C.D.Cal. 1994) (official information privilege); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C.Cir. 1980) (attorney work product). In camera inspection of documents by this court

8

1  "'is not a substitute for the government's burden of proof.'"  Maricopa Audubon Society v.
2  U.S. Forest Service, 108 F.3d 1089, 1093 n.2 (9th Cir. 1997)(quoting Church of Scientology
3  of California v. U.S. Department of the Army, 611 F.2d 738, 743 (9th Cir. 1979)).  "In cases
4  involving requests for hundreds of documents, no trial court can reasonably be expected to
5  wade through a mass of exhibits in camera."  Church of Scientology, at 743.

II.  Facial Adequacy of Privilege Logs

7       Plaintiffs' first contention is that defendants' privilege logs are "fraught with plainly
8  frivolous assertions of privilege that demonstrate that defendants have claimed them
9  indiscriminately."  Plaintiffs' Memorandum in Support of Motion to Compel Production of
10 Documents, filed November 30, 2007, at 10.  Plaintiffs also contend that the logs do not
11 adequately establish a basis for assertion of the various privileges.  In this regard, they note
12 that many of the log entries identify only the custodian of the document and the asserted
13 privilege, many entries doe not include the author, recipient or date of the document, and that
14 many of the descriptions of the documents are insufficient to provide any information from
15 which they might glean the basis for the asserted privilege(s).  With respect to the
16 deliberative process privilege, plaintiffs also contend that the declarations provided by
17 defendants do not establish that the documents are being withheld as a result of personal
18 consideration by the relevant agency head.

19      Defendants' response to this aspect of plaintiffs' motion is that plaintiffs have only
20 identified a tiny number of deficient log entries in the vast universe of documents for which
21 defendants have asserted a privilege and that the small number of errors identified by
22 plaintiffs does not justify wholesale evisceration of the asserted privileges.  Moreover,
23 defendants contend that the adequacy of their privilege logs must be evaluated in light of the
24 large quantities of documents they have reviewed and the short time frame in which the
25 review has been accomplished.  Defendants also contend their declarations are sufficient.

26      As noted above, the court must consider several factors in weighing whether the
27 privilege logs provided by defendants satisfy the notice requirements of Fed. R. Civ. P.
28

26(b)(5). As a general rule, an adequate privilege log contains information sufficient to establish the elements of the asserted privilege. See, e.g., Dole v. Milonas, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989); see also In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing Dole). Here, defendants' privilege logs are replete with entries for which the author of the document is "not readily available," the recipients are "not readily available," the document's date is unknown, and it is described in conclusory fashion as "pre-decisional." See, e.g., Privilege Log dated November 16, 2007, passim. Simply put, these entries do not provide notice sufficient to support the asserted privilege(s). Moreover, it is no answer that plaintiffs have failed to provide defendants with a list of all the deficient log entries. The deficient entries are obvious and they are numerous. Defendants' privilege logs are not "presumptively sufficient" notice of the asserted privileges. Cf. Burlington Northern, at 1149.

Defendants rely heavily on the context in which this dispute has arisen to defend the inadequacies in their assertions of privilege. There is no dispute that the magnitude of documents at issue is enormous. See Joint Statement Regarding Discovery Dispute, filed October 22, 2007, supra, at 14-15. Nor is there any dispute that, given the volume, the time constraints under which defendants have been working are short.[7] Even given the magnitude of documents that have been reviewed and the relatively short time in which that has been accomplished, however, as will be discussed more fully below, it is obvious to this court that defendants have failed to meet their burden of establishing the privileges asserted in these proceedings. Neither the press of time nor the volume of documents explain this failure satisfactorily.

This court turns now to each asserted privilege.

---

[7] It has been three months since defendants were served with plaintiffs' first request for production of documents. Defendants initially took the position that the request was premature. As a result of the three judge panel's September 25, 2007 order, defendants had the request in their possession for approximately fifty days before responses were due. In addition, plaintiffs thereafter stipulated to a rolling production schedule that provided an additional thirty-five days, through November 30, 2007, for complete production of responsive documents.

II. <u>Deliberative Process Privilege</u>

The privilege logs show that defendants have asserted the deliberative process privilege for the vast majority of documents in dispute. The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" <u>Department of Interior v. Klamath Water Users Protective Association</u>, 532 U.S. 1, 8 (2001) (quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S.132, 150 (1975)).[8] It "was developed to promote frank and independent discussion among those responsible for making governmental decisions, <u>Environmental Protection Agency v. Mink</u>, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973), and also to protect against premature disclosure of proposed agency policies or decisions." <u>F.T.C. v. Warner Communications Inc.</u>, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing <u>Coastal States</u>, 617 F.2d at 866); <u>see also</u> <u>NLRB</u>, 421 U.S. at 150-51.

To qualify for the privilege a document must be both "predecisional" and "deliberative." <u>Id</u>.

> "A 'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. A predecisional document is a part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

<u>Carter v. U.S. Department of Commerce</u>, 307 F.3d 1084, 1089 (9th Cir. 2002) (quoting <u>Assembly of State of California v. U.S. Department of Commerce</u>, 968 F.2d 916, 920 (9th Cir. 1992) (internal citations omitted)). A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision." <u>Assembly</u>, 968 F.2d at 920 (citations

---

[8] The case law addressing this privilege has generally been in the context of actions brought under the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552. The rationale of the FOIA cases, however, is equally applicable where the government asserts the privilege to protect documents from disclosure during civil discovery. <u>See</u> <u>NLRB</u>, 421 U.S. at 148-50.

11

omitted). A predecisional document is a part of the "deliberative process" if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id.

The agency asserting the privilege bears the burden of justifying it. EPA v. Mink, 410 U.S. at 93. The burden may be met through detailed affidavits which establish in a nonconclusory and logical fashion the decision-making deliberative process to which the documents pertain and the role played by the document. Wiener v. F.B.I., 943 F.2d 972 (9th Cir. 1991); Bay Area Lawyers Alliance for Nuclear Arms Control v. Department of State, 818 F.Supp. 1291 (N.D. Cal. 1992).

The deliberative process privilege is not absolute. Even where properly asserted, the privilege may be overcome on a showing that a litigant's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." F.T.C. v. Warner, 742 F.2d at 1161 (citations omitted). In making this determination, the court considers, inter alia, "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Id. (citations omitted).

On October 26, 2007, defendants filed four declarations with their responses to plaintiffs' September 5, 2007 document production request, one each from an official with the California Department of Finance and the California Department of Mental Health and two from officials with the California Department of Corrections and Rehabilitation (CDCR). Declaration of Doug McKeever Regarding Privileged Documents, filed October 26, 2007 (McKeever Declaration); Declaration of Cynthia A. Radavsky Regarding Privileged Documents, filed October 26, 2007 (Radavsky Declaration); Declaration of Scott Kernan Regarding Privileged Documents, filed October 26, 2007 (Kernan Declaration); Declaration of Vincent P. Brown Regarding Privileged Documents, filed October 26, 2007 (Brown Declaration). In addition, on December 5, 2007, defendants filed two additional declarations

of officials with the CDCR. Declaration of Kathryn Jett in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Production of Documents, filed December 5, 2007 (Jett Declaration); Declaration of Deborah Hysen, filed December 5, 2007 (Hysen Declaration). None of the declarations meet the legal requirements for establishing the deliberative process privilege.

In all four of the declarations filed on October 26, 2007, the declarants make similar averments concerning their general familiarity " with the documents generated" by their respective agencies "which may be responsive to Plaintiffs' requests," that "[c]ertain items within those categories of documents are privileged," that "[p]olicy, planning and procedural" documents in their respective agencies "are drafted, revised, discussed, debated and redrafted before finalization," that "many documents provided to counsel for Defendants are pre-decisional and bear on the formulation or exercise of . . . [the agency's] . . . judgment," and that disclosure of "many potentially responsive documents" "may chill future discourse, collaboration, self-evaluation and critical analysis." McKeever Declaration, at ¶¶ 4, 5, 9, 10; Radavsky Declaration, at ¶¶ 5, 8, 11, 12; Kernan Declaration, at ¶¶ 4, 7, 11, 12; Brown Declaration, at ¶¶ 4, 6, 9, 10.

None of the declarants avers that they have personally reviewed the documents for which their agency has asserted a deliberative process privilege in these proceedings. At the hearing, counsel for defendants acknowledged that no such review occurred. None of the declarants ties any of the statements in their declarations to particular documents for which the deliberative process privilege has been claimed. Moreover, there is no proof that defendants have preserved the confidentiality of the specific documents for which a claim of privilege has been made. Simply put, defendants have not met their burden of establishing that the deliberative process privilege applies to the documents for which it has been asserted.

In addition, it is evident from the record before this court that the manner in which these proceedings are being defended involves presentation of material which will constitute

a waiver of the deliberative process privilege.  The Governor has responded to interrogatories from plaintiffs that his administration "continues to aggressively use the [October 4, 2006 overcrowding] Emergency Proclamation to address overcrowding in ways that are less intrusive than a prisoner release order." Ex. B to Declaration of Lori Rifkin in Support of Plaintiffs' Motion to Compel Production of Documents, filed November 30, 2007.  Moreover, there is ample evidence in the record that the provisions of Assembly Bill 900 (AB 900) will play a substantial part in defendants' defense in these proceedings, a fact acknowledged by defendants at the September 24, 2007 hearing before the three-judge court, when defendants stated that they "would certainly like the opportunity to fully present to the court how AB 900 is rolling out and how it will roll out in the near future, so you have a better understanding -- everybody at the table has a better understanding of what it can and can't do." Transcript of Proceedings, September 24, 2007, at 100.

For the foregoing reasons, the claims of deliberative process privilege in the privilege logs produced on November 9, 2007, November 16, 2007, and November 23, 2007 have not been established.

III.  <u>Attorney-Client Privilege</u>

The attorney client privilege protects what a client tells a lawyer. The privilege encourages full disclosure between lawyer and client, so that the lawyer may give informed legal advice. <u>Clarke v. American Commerce Nat. Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992).  Traditionally, eight elements are essential to the privilege: "(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to the purpose, (4) made in confidence (5) by the client, (6) are at his [or her] instance permanently protected, (7) from disclosure by him [or her] self or by the legal advisor, (8) unless the protection be waived." <u>Admiral Ins. v. U.S. Dist. Court for Dist. of Ariz.</u>, 881 F.2d 1486, 1492 (9th Cir. 1989).

An adequate privilege log for a claim of attorney client privilege "should identify:  (a) the attorney and client involved; (b) the nature of the document (i.e., letter, memorandum); (c) all persons or entities shown on the document to have received or sent the document; (d) all persons or

entities known . . . to have been furnished the document or informed of its substance; and (e) the date the document was generated, prepared or dated." <u>Dole</u>, at 888 n.3, 890.

Defendants have not established essential elements of the attorney client privilege. In particular, it is not evident who the client is or that the confidentiality of the information has been maintained.

Defendants have not established the applicability of the attorney client privilege to the documents for which it is claimed in the privilege logs produced on November 9, 2007, November 16, 2007, and November 23, 2007.

IV.   <u>Attorney Work Product</u>

"The work product doctrine was first articulated by the Supreme Court in <u>Hackman v. Taylor</u>, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Fed.R.Civ.P.Rule 26(b)(3), which substantially codifies the <u>Hickman</u> decision, provides in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.' <u>Admiral Ins. Co. v. United States District Court</u>, 881 F.2d 1486, 1494 (9th Cir.1989). Like the discovery process that it limits, the work product doctrine encourages efficient development of facts and issues." <u>Holmgren v. State Farm Mutual Auto Insurance Co.</u>, 976 F.2d 573, 576 (9th Cir. 1992) (quoting Fed. R. Civ. P. 26(b)(1)).

Defendants have not established that the materials for which they claim work product protection are in fact entitled to that protection. The materials will be produced.

15

V. <u>Official Information</u>

> A party seeking to claim the official information privilege must submit, at the time it files its response to a request for production, a declaration, under oath, from the head of the department having control over the matter, which declaration:
>
> (1) affirms that its department has collected the material in question and kept it confidential;
>
> (2) affirms that the declarant official has personally reviewed the material;
>
> (3) specifically identifies what government interest or privacy interest would be threatened by disclosure;
>
> (4) describes how disclosure, even if made subject to a protective order, would create a substantial risk of harm, and
>
> (5) projects how much harm would be done by disclosure.

<u>Chism v. County of San Bernardino</u>, 159 F.R.D. 531, 533 (C.D.Cal. 1994).

As with the deliberative process privilege, <u>supra</u>, defendants have not met their burden of establishing that the official information privilege applies to the documents for which it has been asserted. Defendants will therefore be required to produce these documents to counsel for plaintiffs. However, Scott Kernan, the Chief Deputy Secretary of Adult Operations for CDCR, has included some information in his declaration concerning security concerns implicated by plaintiffs' request for information related to timetables on out of state transfers and documents reflecting "architectural specifications, renderings, blueprints, infrastructure layout, building footprints, points of access and construction design details." Kernan Declaration, at ¶¶ 5, 6. Accordingly, all documents in these two categories for which an official information privilege has been claimed shall be produced subject to the following protective order. Neither plaintiffs' counsel nor any employee of any law firm representing plaintiffs in these proceedings shall disclose or otherwise refer to any information contained in said documents to any person outside of said law firms nor shall such information be made part of the record in these proceedings without further order of this court or the three-judge court.

VI. <u>Privacy</u>

Finally, defendants' privilege logs contain numerous assertions of privacy rights. Although many of the assertions are ill-defined in the logs, some log entries and this court's in camera review of the documents suggest that the assertions are based on the presence of personal identification information in the documents. Good cause appearing, the documents for which a claim of privacy rights has been raised shall be released to plaintiffs' counsel subject to the following protective order. Neither plaintiffs' counsel nor any employee of any law firm representing plaintiffs in these proceedings shall disclose or otherwise refer to any names or any other identifying personal information, including but not limited to social security numbers, federal identification numbers, inmate identification numbers, telephone numbers, or e:mail addresses contained in the documents for which claim of privacy has been raised in these proceedings to any person outside of said law firms nor shall such information be made part of the record in these proceedings without further order of this court or the three-judge court.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiffs' November 30, 2007 motion to compel is granted;

2. On or before 12:00 p.m. on December 7, 2007, defendants shall produce to counsel for plaintiffs all documents which have been withheld on grounds of privilege set forth in privilege logs produced on November 9, 2007, November 16, 2007, and November 23, 2007.

3. All documents concerning timetables on out of state transfers or reflecting "architectural specifications, renderings, blueprints, infrastructure layout, building footprints, points of access and construction design details" for which an official information privilege has been claimed shall be produced subject to the following protective order. Neither plaintiffs' counsel nor any employee of any law firm representing plaintiffs in these proceedings shall disclose or otherwise refer to any information contained in said documents to any person outside of said law firms nor shall such information be made part of the record in these proceedings without further order of this court or the three-judge court.

4. All documents produced for which a claim of privacy rights has been made shall be subject to the following protective order. Neither plaintiffs' counsel nor any employee of any law firm representing plaintiffs in these proceedings shall disclose or otherwise refer to any names or any other identifying personal information, including but not limited to social security numbers, federal identification numbers, inmate identification numbers, telephone numbers, or e:mail addresses contained in the documents for which claim of privacy has been raised in these proceedings to any person outside of said law firms nor shall such information be made part of the record in these proceedings without further order of this court or the three-judge court.

5. Defendants' request for a five-day stay this order is denied.

Dated: December 6, 2007.

UNITED STATES MAGISTRATE JUDGE