| | |
|---|---|
| EDMUND G. BROWN JR.<br>Attorney General of the State of California<br>DAVID S. CHANEY<br>Chief Assistant Attorney General<br>FRANCES T. GRUNDER<br>Senior Assistant Attorney General<br>ROCHELLE C. EAST<br>Supervising Deputy Attorney General<br>LISA A. TILLMAN – State Bar No. 126424<br>Deputy Attorney General<br>SAMANTHA TAMA – State Bar No. 240280<br>Deputy Attorney General<br>CHARLES ANTONEN – State Bar No. 221207<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004<br>Telephone: (415) 703-5708<br>Facsimile: (415) 703-5843<br>rochelle.east@doj.ca.gov<br>lisa.tillman@doj.ca.gov<br>samantha.tama@doj.ca.gov | HANSON BRIDGETT MARCUS<br>VLAHOS & RUDY, LLP<br>JERROLD C. SCHAEFER - 39374<br>PAUL B. MELLO - 179755<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br>Telephone: (415) 777-3200<br>Facsimile: (415) 541-9366<br>jschaefer@hansonbridgett.com<br>pmello@hansonbridgett.com |

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>       Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>       Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' REQUEST FOR RECONSIDERATION BY THE THREE-JUDGE PANEL OF THE MAGISTRATE JUDGE'S ORDER OR, ALTERNATIVELY, REQUEST FOR STAY OF ORDER (E.D. L.R. 72-303)** |

## I.    INTRODUCTION

This motion for reconsideration is necessary to set aside Magistrate Judge Moulds' December 6, 2007 Order compelling Defendants to produce all privileged documents (the Order), including documents protected by the attorney-client privilege, attorney work-product privilege, the deliberative process privilege and the official information privilege. This Order, which is clearly erroneous and contrary to the law, ultimately requires Defendants to produce thousands of privileged documents based solely on Plaintiffs' perceived irregularities with the identity of some documents on Defendants' privilege log. Such a wholesale, sweeping waiver of these privileges flies in the face of established case authority, undermines the sanctity of these privileges, and threatens the appearance of judicial impartiality.

On July 23, 2007, the Courts in *Plata v. Schwarzenegger* and *Coleman v. Schwarzenegger* simultaneously granted Plaintiffs' motions to convene a three-judge panel to determine whether to enter a prisoner release order. The three-judge court set an initial hearing on September 24, 2007 and ordered the parties to be prepared to discuss "scheduling and other procedural issues at that time." (Order Setting Initial Hearing, 1:28.)

Before the September 24, 2007 hearing, Plaintiffs propounded thirty-eight requests for production. (Declaration of Charles Antonen in support of Opp'n to Mot. Compel Prod. Filed Dec. 5, 2007 (Antonen Decl.) ¶2 .) And before the September 24 hearing, Defendants met and conferred with Plaintiffs, informing Plaintiffs that the discovery was premature and therefore improper. (Antonen Decl. ¶2 .) Moreover, due to the potentially short time frames and large number of intervenors involved in this proceeding, Defendants requested Plaintiffs withdraw this discovery pending all parties entering into a joint discovery plan. (Antonen Decl. ¶2 .) Plaintiffs declined Defendants' proposal. (Antonen Decl. ¶ 2.) Defendants have always maintained that the discovery was initially propounded well before discovery was ever opened, and as a way for Plaintiffs to exert pressure on Defendants to accede to various demands.

At the September 24, 2007 hearing, Defendants apprised the three-judge panel that Plaintiffs had propounded discovery even though the three-judge panel had not opened discovery

in this matter. To avoid time-consuming discovery battles, Defendants requested the three-judge panel order the parties to agree on a joint discovery plan prior to propounding any discovery. (Antonen Decl. ¶2 .) Taking these matters under submission, the three-judge panel on September 25, 2007, issued an order stating that discovery was now open and that written responses to any previously propounded discovery were due thirty days from the date of the order. (9/25/07 Order.)

Realizing that Plaintiffs would propound the broadest possible discovery, and that responding to electronic discovery requests is extremely difficult given the sheer volume of data, Defendants began the process of assembling electronic and paper documents before discovery was opened by the panel. This process began before Plaintiffs served their second requests for production in both *Coleman* and *Plata*. On October 17, 2007, Plaintiffs served an additional thirty-nine requests for production on Defendants. (Antonen Decl. ¶4.) Additionally, Plaintiffs served sixty-three interrogatories on Defendants and to date have noticed the fourteen depositions.

In response to Plaintiffs' requests for production, Defendants have reviewed to date approximately 50,000 electronic and paper documents in less than 60 days. (Antonen Decl. ¶5.) Moreover, Defendants have to date produced approximately 70,000 pages in electronic and paper form to Plaintiffs. (Antonen Decl. ¶5.) In order to make this production happen, Defendants' e-discovery vendor, Bridge City Legal, has billed approximately 1,500 hours to this project. (French Decl. ¶2.) Moreover, over one hundred attorneys and paralegals from the California Attorney General's Office, California Department of Corrections and Rehabilitation, and Hanson Bridgett have devoted approximately 5,000 hours reviewing and privileging documents in this matter. (Antonen Decl. ¶5.) Predictably, due to the exceedingly short discovery period and the voluminous amount of documents needing to be reviewed, Defendants have been unable to re-review and re-evaluate documents. (Antonen Decl. ¶5.)

On November 6, 2007, the parties met and conferred regarding Plaintiffs' concerns about how Defendants would be privileging documents. (Antonen Decl. ¶7.) During this meet and confer, the parties failed to agree about the contours of the deliberative process privilege.

Plaintiffs, however, agreed to review the privilege log Defendants would produce on November 9, 2007 and would provide Defendants with a detailed list of concerns about this privilege log. (Antonen Decl. ¶7.) During this meet-and-confer, Plaintiffs agreed not to challenge documents withheld by Defendants on the basis of official information privilege due to security concerns (*i.e.* transport schedules, architectural renderings, blueprints, etc.) (Antonen Decl. ¶7.)

On November 13, 2007, Plaintiffs again contacted Defendants regarding various concerns about Defendants' privilege log. (Antonen Decl. ¶8.) Plaintiffs initially posed various generalized concerns about Defendants' privilege log. Defendants advised Plaintiffs that they needed specific examples of any concerns in order for the meet and confer to be meaningful. Plaintiffs provided twenty examples of concerning entries on Defendants' privilege log. (Antonen Decl. ¶8.) On November 14, 2007, the parties met and conferred regarding these twenty entries. At this meet and confer, Defendants agreed to modify the format of the privilege log to address some of Plaintiffs' concerns and agreed to revise the November 9, 2007 privilege log when time permitted. (Antonen Decl. ¶9.)

Since November 13, 2007, the parties have continued to meet and confer regarding Plaintiffs' privilege log concerns. (Antonen Decl. ¶10.) During these meet and confers, Defendants have repeatedly requested Plaintiffs provide specific examples regarding any allegedly inappropriately privileged documents, and Defendants have repeatedly agreed to address any concerns. Except for the twenty documents listed above, Plaintiffs have refused to provide any further examples during these meet and confers. On November 19, 2007, Magistrate Moulds ordered Defendants to submit all privileged documents to him for an *in camera* review.[1] Defendants requested and were denied reconsideration by this panel, and they therefore submitted all privileged documents to the magistrate, with a request that should he order any of them released, that he give Defendants the opportunity to appeal that decision. The parties met and conferred again on December 3 and 4, in an attempt to resolve any remaining issues regarding

---

[1] Although Defendants acknowledge that the rolling production stipulation dated November 1, 2007, states that Magistrate Moulds requested an *in camera* copy of privileged documents, the parameters of this request were not clear, nor was there a transcript or a written order upon which to request clarification or appeal. During that hearing, Defendants orally opposed such a production.

- 4 -

1  Defendants' privilege log. (Antonen Decl. ¶10.)

2  Relying on these same scant few documents, Magistrate Judge Moulds has now issued an
3  Order compelling production of all documents on Defendants' privilege logs. However, the law
4  does not support such an indiscriminate ruling, particularly given the magnitude of the
5  production, the short production deadlines, Defendants' good faith efforts to provide all
6  responsive, non-privileged documents, and Plaintiffs' failure to specifically identify any other
7  documents.

8  ## II.    LEGAL ARGUMENT

9  **A.    Standard of Review**

10  A magistrate judge's pretrial ruling of a discovery matter is reviewable by the three-judge
11  panel upon the request of a party filed within 10 days after service of the Order. Fed. R. Civ. P.
12  72(a) The magistrate judge's order must be modified or set aside with respect to any part of the
13  order shown to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Such is the case
14  here.

15  **B.    Defendants' Privilege Logs and Supporting Declarations Are Sufficient and Comply with Statutory Requirements.**

16
17  Plaintiffs' motion, and ultimately Magistrate Judge Moulds' Order, are based in part on
18  the contention that Defendants' privilege logs improperly identified privileged documents. To
19  this end, Plaintiffs argued that the descriptions of some of the documents identified on
20  Defendants' privilege logs did not include enough information to justify being withheld. To the
21  contrary, Defendants' privilege logs and supporting declarations fully comply with Federal Rule
22  26(b)(5).

23  1.    <u>Defendants' Privilege Logs Are Sufficient.</u>

24  The crux of the legal error in the contested Order is the misapplication of the standards for
25  asserting privilege in cases where a large volume of documents are involved. When dealing with
26  large volumes of documents, the law clearly provides for a liberal standard in the identification of
27  documents being claimed as privilege:

28  > The rule does not attempt to define for each case what information
    > must be provided when a party asserts a claim of privilege or work

- 5 -
DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1

> product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

Fed. R. Civ. P. 26(b)(5), 1993 Advisory Committee Note; *see also Bourne v. Town of Madison*, 05-CV-365-JD, 2007 U.S. Dist. LEXIS 23945 at * 9 (Dist. N.H., March 2007); *Vaughan v. Celanese Americas Corp.*, 2006 U.S. Dist. LEXIS 89888 at *9.

Privilege logs are sufficient if they identify the documents, the individuals who were parties to the communications and some level of detail to permit a judgment as to whether the document is at least potentially protected from disclosure. *U.S. v. Constr. Prods. Res., Inc.*, 73 F.3d 464, 473-74 (2d. Cir. 1996); *Bowne v. Ambase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993). Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. *U.S. Constr. Prods*. at 473-74; *Bowne* at 474. Some courts have even held that where creation of a document-by-document privilege log would be unduly burdensome, a description by category may suffice. *In re Imperial Corp. of America* (SD CA 1997) 174 F.R.D. 475, 478- 479.

Moreover, Plaintiffs recognized, and the parties specifically met and conferred about, the difficulties posed by the large volume documents being reviewed and privileged by Defendants. Specifically, in the rolling production stipulation, the parties agreed that Defendants' privilege logs would only include source/author and recipient(s) if this information was "readily available." (Stip. re Defs.' Rolling Prod. 3:25-26.) This provision was specifically negotiated by Defendants because depending on the type of document it was difficult, if not impossible, for Defendants to determine who were the author and/or recipient(s). (Antonen Decl. ¶6.) As an alternative, Defendants offered to provide Plaintiffs with the source from which the document was collected. Plaintiffs agreed that this information would be sufficient. (Antonen Decl. ¶6.) Given the clear state of the law and the context of this discovery dispute, an order compelling the production of

- 6 -
DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1

documents on the grounds that Defendants' privilege logs are inadequate is without merit.

### 2. Defendants' Declarations Are Sufficient.

To be sufficient, the declarations supporting the privilege logs must establish the following criteria: The declaration (1) must be authored by the head of the agency, or his/her properly delegated authority; (2) must state with particularity what information is subject to the privilege; and (3) must supply the court with the reasons or bases for maintaining the confidentiality of the requested documents. *Pacific Gas & Electric Co. v. U.S.*, No. 04-74C, 2006 U.S. Claims LEXIS 63, at **19-20 (Fed. Clms. March 2006)  Here, Defendants have provided the necessary evidentiary support for the privilege logs in the form of declarations by Robert Gore, Doug McKeever, Vincent Brown, Cynthia Radavsky and Scott Kernan. (Antonen Decl. Ex. C.)   In each of these declarations, the declarants state that they are the heads of their respective agencies and identify the categories of documents generated or maintained by their agency that could be responsive to Plaintiffs' requests.  As but one example on this point, Doug McKeever's declaration states the following:

> 8. I have provided documents in the possession of CDCR to counsel for Defendants in response to Plaintiffs' Requests for Production of Documents.  These documents include draft bed plans, mental health population projections prepared by a litigation consultant, associated e-mails, documents developed to activate creative brainstorming, internal debate and analysis, official information which is not made available to the public, and communications with CDCR's attorneys regarding proposed courses of action as well as pending and anticipated litigation.  Such documents include recommendations, proposals, analysis, legal comments, and other documents which reflect the personal opinion of the individual writers rather than the policy of CDCR.
> (Antonen Decl.  Ex. C.)

Addressing the second requirement, each of the declarants goes on to articulate the categories of documents that are confidential or subject to a privilege, stating the basis for the claimed privileges, and stating that they are familiar with and provided these documents to counsel for Defendants.  Again providing just one of many examples, Cynthia Radavsky's declaration states:

> 7. In my capacity as Deputy Director of Long Term Care Services for DMH, I am familiar with this agency's analysis, regulations,

- 7 -
DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1

> policies, practices, and procedures concerning its involvement with prisons of California Department of Corrections and Rehabilitation. In addition, I am familiar with, and an instrumental participant in, development of such analysis, policies and procedures. I am also familiar with the process associated with the derivation of the budget and the development of draft budget change proposals for internal review and revision and for ultimate submission to the Office of the Governor for final approval.
>
> 8. Policy, planning and procedural documents are drafted, revised, discussed, debated and redrafted before finalization. Although the final product will be produced, DMH maintains as privileged those drafts or other documents reflecting internal analysis, deliberation and discussion prior to adoption of the final product. Such documents include patient planning committee notes, draft budget change proposals, legal opinions prepared by in-house counsel for DMH staff, legal memoranda prepared relative to ongoing litigation (such as this case and the CRIPA case), position papers and draft cost summaries. (Antonen Decl. Ex. C.)

Finally, the declarants each articulate the necessity and bases for maintaining the confidentiality of the documents sought. As a final example, the declaration of Robert Gore states:

> 9. Many potentially responsive documents reflect complex calculations, judgments, projections, the application of existing laws and regulations, and the assessment of possible solutions and recommendations. As such, these documents are pre-decisional, deliberative, and should be shielded from discovery because disclosure of the documents may chill future discourse, self-evaluation and critical analysis. Furthermore, if individuals fear that deliberative materials will be made public, it may deter discussion and development of theories and ideas of benefit to the public. (Antonen Decl. Ex. C.)

Moreover, the declarants also state that the remaining responsive documents have been produced to Plaintiffs. Indeed, the declarants even identify in some instances the precise documents being produced. (*See*, Antonen Decl. Ex. C, Kernan Dec., ¶ 7)

Notwithstanding this detailed testimonial evidence, Magistrate Judge Moulds's order finds these declarations insufficient because the declarants do not attest to having personally reviewed each and every document. (Order, 13:17-20). This reasoning cannot support an order to compel production of the privileged documents because such a document-by-document review is not required in cases such as this, where there are large volumes of documents being addressed. *Amoco Production Co., v. Schlesinger, et al.*, No. 78-463, 1979 U.S. Dist. LEXIS 12103 (Dist.

- 8 -

Decl. 1979) at *16, note 16. Together, the privilege logs and declarations supply the necessary information for Plaintiffs to evaluate the claims of privilege asserted here. Defendants have complied with the requirements of Federal Rule of Civil Procedure 26(b)(5) and Magistrate Judge Moulds' ruling to the contrary is clearly erroneous.

### 3. Plaintiffs' Claim that a Small Fraction of Specific Documents Were Inappropriately Privileged Does Not Justify Compelling Production of the Entire Privileged Collection

As additional grounds for this contested Order, Plaintiffs argued that Defendants' privilege logs are "fraught" with improper assertions of privilege. However, Plaintiffs identify only fifteen examples. Moreover, Defendants and Plaintiffs have already met and conferred about those particular examples, and Defendants have agreed to modify the format of those entries to address Plaintiffs' concerns. (Antonen Decl. ¶10.) Despite Defendants' numerous requests to Plaintiffs before the hearing to specifically identify the deficiencies in Defendants' privilege logs, Plaintiffs failed to do so. For purposes of their motion, Plaintiffs relied upon these same fifteen examples (amounting to less than 1% of the privileged documents). As a result, Magistrate Judge Moulds's Order compelling production of over 10,000 privileged documents is erroneously based on the same few identified irregularities.

This contested Order compelling production of all the documents that are privileged is not supported by law. In *Tulip Computers International v. Dell Computer Corp.*, No. 00-981-RRM, 2002 U.S. Dist. LEXIS 19288 (Dist. Del. 2002), defendant Dell argued for the same relief mistakenly ordered here. Specifically, Dell argued that the plaintiff's privilege log was deficient because it inadequately identified authors and recipients, and provided inadequate descriptions of communications. *Id*. at **14, 15. Because of these perceived shortcomings, Dell argued that it was entitled to production of all documents on the plaintiff's privilege log. *Id*. at 105. However, in its unequivocal rejection of this approach, that court made clear that the proper remedy was not "the draconian approach demanded by Dell, that is, the wholesale denial of all privilege and production of all listed documents." *Id*. at **20. Instead, the "standard for testing the adequacy of the privilege log is whether, *as to each document*, it sets forth facts that, if credited, would

- 9 -

suffice to establish each element of the privilege or immunity that is claimed." *Vaughan v. Celanese Americas Corporation*, No. 3:06 CV104-W, 2006 U.S. Dist. LEXIS 89888 (W.D. N. Car., 2006) *at *8* (emphasis added).

Here, Defendants have worked around the clock to produce more than 70,000 pages of documents, and to identify the privileged documents in compliance with the law. (Antonen Decl. ¶5.) Defendants continued to work to resolve the issues with the log up until the hearing on Plaintiffs' motion, and they provided declarations that justify the application of the privilege to the documents withheld. (Antonen Decl. ¶10.) That a small percentage of documents from Defendants' privilege log may have been identified with less specificity than is ideal is understandable, and in no way justifies an order compelling production of everything on the log.

**C.   Magistrate Judge Moulds's Order--Essentially Finding a Waiver of the Attorney-Client Privilege and the Attorney Work-Product Doctrine--Is Contrary to Law and Public Policy.**

   1.   <u>Attorney-Client Privilege</u>

The attorney-client privilege protects confidential communications between a client and an attorney from disclosure. *Clarke v. American Commerce Nat'l Bank*, (9th Cir. 1992) 974 F.2d 127, 129. This privilege is the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Id*. The U.S. Supreme Court explained that the privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Trammel v. United States*, 445 U.S. 40, 51 (1980). Because of its significance to the jurisprudence system, this privilege has been described as "sacrosanct" and courts are encouraged to safeguard the

- 10 -

privacy it affords its holders. *Andrew Corp. v. Beverly Manufacturing Co.*, 415 F. Supp. 2d 919, 926.

The attorney-client privilege protects interests and relationships which are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice. *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812. When the privilege applies, "it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables*, 148 F.3d 379, 382.

2. Attorney Work-Product

In a similar vein, the work product doctrine protects materials that reveal an attorney's thoughts, impressions, strategy, intended lines of proof, evaluation of strengths and weaknesses and inferences drawn from interviews and communications. Fed. R. Civ. P. 26(b)(3). The doctrine is designed to preserve the privacy of attorneys' thought processes, and to prevent the parties from "borrowing the wits of their adversaries." This work-product protection applies to all documents and tangible things prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3). The work-product protection however is not limited to materials prepared by an attorney. *U.S. v. Aldman*, (2nd Cir. 1995) 68 F.3d 1495, 1501-02. To the contrary, it extends to materials prepared by the party or by any representative of the party. *Id*.

In *Hickman v. Taylor*, (1947) 329 U.S. 495, 511, the U.S. Supreme Court explained the significance and necessity of the doctrine as follows:

> Proper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways -- aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing.

> And the interests of the clients and the cause of justice would be poorly served. *Hickman v. Taylor*, (1947) 329 U.S. 495, 511.

So important is this doctrine to the attorney's ability to represent clients that some courts have held: "[N]o showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories." *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, (4th Cir. 1974) 509 F.2d 730, 734.

### 3. That Some Documents Identified as Protected by the Attorney-Client or Work Product Privileges Do Not Appear Privileged Cannot Justify an Order Compelling Production of the Remaining Privileged Documents

Here, Plaintiffs made the same argument with respect to attorney-client communications and attorney work-product that they did with respect to documents that fall under the deliberative process privilege. They relied on fewer than 10 out of over 10,000 documents that Defendants asserted were protected by the attorney-client or work-product privilege and argued that because those documents do not clearly appear to be privileged, the privilege should not apply to any documents. Without further analysis in his order, Magistrate Judge Moulds erroneously relied on this argument.

In the first place, the vast majority of the documents identified as attorney-client privileged communications or attorney work-product were properly identified as such. Second, there is no support for a ruling that a few poorly described documents eviscerates the attorney-client or work-product privilege as to all documents. In fact, the law is the opposite. *Tulip Computers*, 210 F.R.D. 100, 106; *Vaughan v. Celanese Americas Corporation*, 2006 U.S. Dist. LEXIS 89888 at *8. Moreover, given the enormous volume of documents Defendants identified, combed through and categorized in an extremely tight timeframe, that some documents were identified less than perfectly can be expected and should be excused. Finally, Defendants repeatedly tried to obtain from Plaintiffs the specific documents about which they sought more information and were willing to provide that information in good faith. (Antonen Decl. ¶6.) There is simply no basis to find a waiver of the attorney-client or work-product privilege as to all documents.

**D.  The Documents Ordered to Be Produced Are Protected by the Deliberative Process Privilege and Plaintiffs Failed to Show that the Necessity for the Documents Outweighs the Government's Interest in Maintaining Their Confidentiality.**

    1.  <u>The Documents Sought by Plaintiffs Are Protected by the Deliberative Process Privilege.</u>

The deliberative process privilege is a matter of federal common law.  Fed. R. Evid. § 501, 1101(c) (Rule 501 applies "at all stages of all actions, cases, and proceedings.")  Also known as the "executive," "governmental," "official information," or "intragovernmental opinion" privilege, the deliberative process privilege was previously codified in proposed Federal Rule of Evidence § 509.  Although Rule 501 was adopted instead of Rule 509, the proposed Rule 509 "remains a useful guide and standard." *In re Franklin National Bank*, 478 F. Supp. 577, 580 (E.D. N.Y. 1979).  Proposed Rule 509(b) provided that the "government has a privilege to refuse to give evidence upon a showing of reasonable likelihood of danger that the evidence will disclose official information as defined in this rule."

    Subsection (a)(2) defines intragovernmental opinions as subject to the privilege:

> Information within the custody or control of a department or agency of the government, the disclosure of which is shown to be contrary to the public interest and which consists of . . . intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policy-making functions.

The deliberative process privilege applies to the process for formulating government decisions as well as government policies.  The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising a part of a process by which government decisions and policies are 'formulated'." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  The privilege has been applied to a variety of governmental decisions, including the decision to deny funding monies.  *See Casad v. United States Dep't. of Health and Human Services*, 301 F.3d 1247 (10th Cir. 2002).  Indeed, the privilege applies to communications between all branches of government as well as to communications between outside consultants and government agencies. *Centifaniti v. Nix*, 865 F.2d 1422, 1432 (3rd Cir. 1989) (letter from disciplinary board to supreme court regarding regulation of attorneys); *Texas v. Lee*, 889 F.2d 59, 61 (5th Cir. 1989) (documents

- 13 -

1  containing recommendations of temporary consultants protected). The privilege serves to ensure
2  the quality of agency decisions, by promoting frank and independent discussion among those
3  responsible for governmental decision-making. *Sears*, 421 U.S. at 150.
4      Consistent with its purpose, the deliberative process privilege applies to those documents
5  that are "pre-decisional" or generated before the adoption of the agency's policy or decision.
6  *Federal Trade Commission v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.
7  1984). Even if pre-decisional at time of preparation, documents that are purely factual summaries
8  are not protected by the deliberative process privilege. *E.P.A. v. Mink*, 410 U.S. 73, 87-88
9  (1974). Thus, purely factual material contained in deliberative memoranda and severable from its
10 context is subject to disclosure. *Id*.
11     Plaintiffs' brief particularly emphasizes that the deliberative process privilege does not
12 apply to documents relating to the implementation of AB 900, which are dated after the
13 enactment of AB 900. Plaintiffs misunderstand the role of AB 900 and Defendants' current
14 implementation efforts. As explained by Deborah Hysen and Kathryn Jett, AB 900 is a funding
15 mechanism for CDCR to fundamentally alter its practices and methodologies for the
16 incarceration, development, treatment, and parole of its inmates. (Hysen Decl. ¶2; Jett Decl. ¶2.)
17 AB 900, however, does not determine which particular programs and projects are approved for
18 funding. Instead, CDCR first develops the program or project, which is then vetted through the
19 Department of Finance and the Governor's Office for approval. (Hysen Decl. ¶3; Jett Decl. ¶3.)
20 Once approved, the projects are then presented to the California Legislature for approval and
21 funding under the process prescribed by AB 900. (Hysen Decl. ¶3; Jett Decl. ¶3.) Consequently,
22 contrary to Plaintiffs' counsel's contention, decisions regarding the implementation of AB 900
23 are still ongoing.
24     Moreover, in the process necessary to make these decisions, CDCR creates documents,
25 such as reports, spreadsheets, and schedules. (Hysen Decl. ¶2; Jett Decl. ¶2.) These documents
26 are circulated within CDCR, the Department of Finance, and the Governor's Office.
27 Consequently, these documents reflect current discussions regarding the implementation of AB
28 900, which may differ from the ultimate decision reached by Defendants. (Hysen Decl. ¶2; Jett

- 14 -

Decl. ¶2.) As a result, these pre-decisional documents fall squarely within the type of documents that can be withheld on the basis of deliberative process.

Again, Plaintiffs' articulation of a few examples of documents that they contend were not privileged does not justify the Court's wholesale rejection of the deliberative process privilege. The Order also states that it is clear to the court that that Defendants will have to waive the deliberative process privilege in their defense of this matter, despite Defendants' assurances that they do not intend to rely upon privileged documents at the evidentiary hearing. Nevertheless, Magistrate Moulds assumes that the privilege will be waived, and relies upon this to support release of privileged documents at this time. (Order, 13:26-14:15.) An order compelling production of the entire collection of privileged documents without any showing that such a waiver is warranted as to each document constitutes legal error and must be set aside. *See Tulip Computers International*, 210 F.R.D. 100, 106.

2. <u>Balancing Plaintiffs' Professed Need for the Documents Against Defendants' Interest in Maintaining Their Confidentiality Does Not Support the Order Disclosing These Privileged Documents.</u>

Even assuming *arguendo* that Plaintiffs demonstrated a need for the materials, there was not the "strong showing" required in order to override the Government's interest in protecting its deliberative processes. Four factors must be considered in determining whether to override the privilege: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Warner Communications*, 742 F.2d at 1161.

Here, there is no basis for finding that the Plaintiffs' need outweighs Defendants' interest in protecting its deliberative processes. While the withheld documents are potentially relevant and the government plays a central role in this proceeding, there are alternative methods for Plaintiffs to obtain this information and the production of the withheld documents will hinder Defendants' ability to hold frank discussions regarding the implementation of AB 900. Specifically, Plaintiffs can obtain the withheld information by deposing percipient witnesses

- 15 -

1  regarding the implementation of AB 900.  Plaintiffs in fact have to date noticed the depositions of
2  fourteen individuals.  One of these depositions is the person most knowledgeable regarding the
3  "current status and future plans for any actions or projects that are in any way related to, funded
4  by, or implemented pursuant to any portion of Chapter 7, Statutes of 2007 (AB 900) including the
5  details of any current or planned prison construction."  (Antonen Decl. Ex. D.)

6  Additionally, the production of the withheld documents will hinder Defendants' ability to
7  hold frank discussions regarding the implementation of AB 900.  As explained by Robert Gore,
8  Douglas McKeever, Cynthia Radavsky, Vince Brown, and Scott Kernan, the withheld documents
9  should be shielded from discovery because disclosure of the documents may chill future
10 discourse, self-evaluation and critical analysis.  (Antonen Decl. Ex. C.)  Furthermore, if
11 individuals fear that deliberative materials will be made public, it may deter discussion and
12 development of theories and ideas of benefit to the public.  (Antonen Decl. Ex. C.)  Consequently,
13 Plaintiffs have failed to make the requisite "strong showing" necessary to override the
14 deliberative process privilege.

15  3.  <u>Defendants Have not Waived the Deliberative Process Privilege</u>.

16
17  Plaintiffs argue that Defendants have put their deliberative processes at issue by asserting
18  that administrative problems such as systemic failures to recruit, retain and pay staff, or failures to
19  plan for and provide mental health beds at appropriate levels, are the causes of any violation of
20  Plaintiffs' right to a constitutionally adequate mental health care system.  They argue that they
21  must have access to the documents that reflect the State's decision-making in order for the three-
22  judge panel to evaluate the defense and Defendants' remedial plan meaningfully.

23  But Defendants' assertion that administrative problems rather than the size of the
24  population are the causes of any violation does not vitiate the deliberative process privilege as to
25  each and every document that may have dealt with those administrative problems.  Indeed, the
26  very case authority relied on by Plaintiffs proves otherwise.  To be certain, the court in *In re*
27  *Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422
28  (D.C. Cir. 1998), made clear that it is only when the claims at issue turn on the Government's

- 16 -

DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1

1   intent, that the deliberative process privilege is not properly asserted. *Id*. at 1424. Stated

2   differently, a waiver of the privilege only applies when the *deliberations* (or intent) of the

3   administration, and not simply the quality of the administration itself, are placed in issue. In this

4   regard, the court in *In re Supboena* stated:

> If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. The Supreme Court struggled in *Crawford-El and Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur. *Id*. at 1424.

11   Additionally, Plaintiffs' asserted need for the withheld documents is not well taken. In

12   this proceeding, Defendants have endeavored to consistently produce documents reflecting final

13   decisions of the respective client agencies. Contrary to Plaintiffs' assertions, Defendants have

14   produced approved budget change proposals and finance letters from CDCR. Moreover, a vast

15   majority of these documents are either public documents or Defendants have already provided

16   such documents to Plaintiffs in the context of the *Coleman* and *Plata* litigation. Therefore,

17   Plaintiffs have more than adequate documents in order to evaluate Defendants' defenses and there

18   is no waiver by Defendants.

**E.   Defendants Properly Asserted Other Privileges and Minor Errors in a Small Portion of Documents Do Not Justify Waiver of all Privileges.**

Without a single allegedly problematic document as evidence, Magistrate Judge Moulds somehow found that Defendants failed to meet their burden to establish the official information privilege properly and therefore waived this privilege. Such a broad waiver is not supported by law. *Tulip Computers*, 210 F.R.D. 100, 106; *Vaughan v. Celanese Americas Corporation*, 2006 U.S. Dist. LEXIS 89888 at *8. Moreover, Plaintiffs' argument in this regard contradicts Plaintiffs' agreement not to challenge Defendants' withholding of documents raising security concerns on the basis of official information privilege. (Antonen Decl. ¶7.) Therefore, the categorical waiver of the official information privilege must be set aside.

- 17 -

DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1

**F.     Plaintiffs Have Not Demonstrated that Their Small Sampling of Documents Identified on the Privilege Logs Justifies Waiver of Privilege.**

As already explained, Plaintiffs have not made any showing that justifies compelling production of every document on Defendants' privilege log. Defendants have acted in good faith, have produced over 70,000 documents, and met and conferred numerous times regarding the alleged deficiencies. Plaintiffs have not shown that the privileges asserted have been without basis as to the whole, and the cases they cite in support of their request for an order compelling production of all documents do not support their argument. In Plaintiffs' cited cases, there were only a handful of documents at issue. No case supports waiver of the privilege as to tens of thousands of privileged documents simply because of a few problematic ones. Given the accelerated timeframe and the volume of the material involved, it is inevitable that there will be some errors. Indeed, Magistrate Moulds's order implicitly acknowledges that Defendants have made a Herculean effort to comply with nearly impossible discovery demands, with few errors. In footnote 5 on page 5 of his order, the Court states that Defendants produced thousands of documents *in camera* on a DVD and in an electronic database, and that while the Court determined that the vast majority of documents were on the DVD or in the database, "it found at least three pages that are not readily identifiable on the DVD." (Order, 5:22-28.) Nevertheless, the law protects privileged documents from discovery, and there is no basis for this Order. *Tulip Computers International*, 210 F.R.D. at 106; *Vaughan v. Celanese Americas Corporation*, 2006 U.S. Dist. LEXIS 89888 at *8.

As the courts in *Assembly of State of Cal. v. United States Dep't of Commerce*, (9th Cir. 1992) 968 F.2d 916, 920 noted, when such a large volume of documents are at issue, the court must rely on the representations of counsel for the Government, that the documents identified in the privilege log are intra-agency, and are "both predecisional and deliberative." When plaintiffs challenge those representations, the parties must meet and confer to canvass each of the documents at issue to assure that each properly falls within a privilege. *Id.*; *See also, Xcel Energy, Inc. v. U.S.*, 237 F.R.D. 416, 420. Here, Plaintiffs do nothing more than point to the same handful of documents over and over, and refuse to identify specifically any other

- 18 -

DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1

problematic documents. An Order compelling all the documents on Defendants' privilege logs in this context is improper.

**G.     Defendants Request a Stay of the Order Compelling Production.**

Defendants also request that the three-judge panel stay the execution of the Order. This Order has allowed Defendants less than 24 hours to respond and produce documents that Defendants maintain are privileged. Disclosure of the documents would destroy the privileges in the context of any further document review and cause irreparable harm to Defendants and their ability to present their defense in this matter.

### III.     CONCLUSION

Since the beginning of this discovery process, Defendants have been given nearly impossible deadlines within which to produce mountains of documents and information. Despite these difficulties, and against the backdrop of Plaintiffs' continuous requests that the court waive Defendants' privileges, Defendants have produced discovery on time and have repeatedly shown their willingness to correct the inevitable errors that occur when such a vast undertaking is performed within such a short timeframe. Now, with the slightest legal support, the court has ordered the draconian remedy of compelling production of all privileged documents without giving Defendants even one working day to request reconsideration of that order.

Defendants respectfully request that this Three-Judge Court reconsider and set aside Magistrate Judge Moulds's December 6, 2007 Order compelling production of Defendants' privileged documents, and stay this Order compelling production of privileged documents pending reconsideration of this issue.

| | | |
|---|---|---|
| 1 | DATED: December 7, 2007 | EDMUND G. BROWN JR.<br>Attorney General of the State of California |
| 2 | | |
| 3 | | |
| 4 | | By:    */s/ **Rochelle C. East***<br>ROCHELLE C. EAST<br>Supervising Deputy Attorney General |
| 5 | | Attorneys for Defendants |

- 20 -

DEFENDANTS' REQUEST FOR RECONSIDERATION
(CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1390961.1