PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No.: Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** |

No.: Civ S 90-0520 LKK-JFM P

**THREE-JUDGE COURT**

MARCIANO PLATA ,et al.,

Plaintiffs,
vs.

ARNOLD SCHWARZENEGGER, et al.,

vs.

Defendants

)
)
)
)
)
)
)
)

No. C01-1351 TEH

**THREE-JUDGE COURT**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR STAY AND REQUEST FOR SANCTIONS**

# **TABLE OF CONTENTS**

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .............................................................................................................. 8

    I.    Defendants Fail to Satisfy The Legal Standard for Reconsideration ..................... 8

    II.   Defendants' Motion For Reconsideration Should Be Denied and the Court Should Order Immediate Production of the Withheld Documents ...................... 10

        A.    The Magistrate Judge Did Not Err In Finding Defendants' Privilege Logs Facially Inadequate ....................................................... 10

        B.    The Magistrate Judge Did Not Err in Finding That Defendants Failed to Adequately Assert The Deliberative Process Privilege ............. 13

        C.    The Magistrate Judge Did Not Err in Concluding That Defendants Have Put Their Deliberative Processes At Issue In This Case ................. 17

            1.    The Documents Defendants Are Withholding As Privileged Are Directly Relevant To The Administrative Processes And Decision-Making They Have Raised As Their Defenses In This Case ..................................................................................... 18

            2.    Plaintiffs' Need For The Materials At Issue Also Greatly Outweighs The Government's Minimal Interest In Non-Disclosure ....................................................................... 21

        D.    The Magistrate Judge Did Not Err In Concluding That Defendants Failed to Meet Their Burden to Establish That Attorney-Client Privilege, Attorney Work Product Privilege, Official Information Privilege, or Privacy Rights Justify Withholding Documents In This Case ................................................................................. 22

    III.   Defendants' Inflammatory Attacks On The Magistrate Judge's Impartiality and Ruling Are Unwarranted ........................................... 25

    IV.   Defendants' Continuing Violations of the Court's Orders Regarding Submission of Documents Are Obstructionist and Should Not Be Tolerated ................................................................................. 26

CONCLUSION ....................................................................................................... 30

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR STAY AND REQUEST FOR SANCTIONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ainsworth v. Vasquez,*
   759 F.Supp. 1467 (E.D. Cal.1991) ............................................................. 8

*Allen v. Woodford,*
   2007 WL 309945 (E.D. Cal. Jan. 30, 2007) ............................................. 13

*Amoco Production Co. V. Schlesinger, et al.,*
   1979 U.S. Dist. LEXIS 12103 (Dist. Del. May 29, 1979)......................... 15

*Barclaysamerican Corp. v. Kane,*
   746 F.2d 653 (10th Cir. 1984) ................................................................ 10

*Bourne v. Town of Madison,*
   2007 WL 951552 (D.N.H. March 27, 2007) ................................. 10, 11, 12

*Brown v. Wesley's Quaker Maid, Inc.,*
   771 F.2d 952 (6th Cir. 1985) .................................................................... 8

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ................................................................................ 30

*Champagne v. Whitman,*
   2006 WL 2522381 (E.D. Cal. Aug. 28, 2006) ........................................... 8

*Church of Scientology v. U.S. Dept. of the Army,*
   611 F.2d 738 (9th Cir. 1979) ................................................................. 26

*Coastal Corp. v. Duncan,*
   86 F.R.D. 514 (D. Del. 1980) ................................................................ 14

*Coastal States Gas Corp. v. Dept. of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) ............................................................... 16

*Coleman v. Schwarzenegger,*
   No. CIV S-90-0520 LKK-JFM ......................................................... 18, 24

*EPA v. Mink,*
   410 U.S. 73 (1973) ................................................................................ 16

*Fisher v. United States,*
   425 U.S. 391 (1976)............................................................................... 24

*Fru-Con Constr. Corp. v. Sacramento Municipal Utility Distr.,*
   2006 WL 2255538 (E.D. Cal. Aug. 7, 2006)....................................... 22, 24

*FTC v. Warner Commc'ns, Inc.,*
   742 F.2d 1156 (9th Cir. 1984) ............................................................... 21

*Henry v. Sneiders,*
    490 F.2d 315 (9th Cir. 1974) ...................................................................... 30

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,*
    145 F.3d 1422 (D.C. Cir. 1998) ................................................................. 18

*In re Uranium Antitrust Litig.,*
    552 F.Supp. 517 (N.D. Ill. 1982) ........................................................ 13, 26

*L.H. v. Schwarzenegger,*
    2007 WL 20009807 (E.D. Cal. July 6, 2007) ...................................... 20, 21

*Long v. I.R.S.,*
    742 F.2d 1173 (9th Cir.1984) ..................................................................... 16

*Maness v. Meyers,*
    419 U.S. 449 (1975) ................................................................................... 27

*Nat'l Wildlife Fed'n v. United States Forest Serv.,*
    861 F.2d 1114 (9th Cir. 1988) ................................................................... 13

*NLRB v. Sears Roebuck & Co.,*
    421 U.S. 132 (1975) ............................................................................ 13, 22

*N. Pacifica, LLC v. City of Pacifica,*
    274 F. Supp. 2d 1118 (N.D. Cal. 2003) .................................................... 22

*Pham v. Hartford Fire Ins. Co.,*
    193 F.R.D. 659 (D. Colo. 2000) ................................................................ 11

*Pierson v. U.S.,*
    428 F.Supp. 384 (D. Del. 1977) .......................................................... 15, 16

*Resolution Trust Corp. v. Diamond,*
    773 F.Supp. 597 (S.D.N.Y. 1991) ....................................................... 13, 14

*Tulip Computers International v. Dell Computer Corp.,*
    210 F.R.D. 100 (D. Del. 2002) ..................................................................... 9

*Unigard Security Ins. Co. v. Lakewood Eng. & Mfg. Corp.,*
    982 F.2d 363 (9th Cir. 1992) ..................................................................... 29

*United States v. Abrahams,*
    905 F.2d 1276 (9th Cir. 1990) ................................................................... 24

*United States v. Armstrong,*
    781 F.2d 700 (9th Cir.1986) ...................................................................... 27

*United States v. Gray,*
    876 F.2d 1411 (9th Cir. 1989) ..................................................................... 9

*United States v. Jose,*
    131 F.3d 1325 (9th Cir. 1997) ................................................................... 24

iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR STAY AND REQUEST FOR SANCTIONS, NOS.:
CIV S 90-0520 LKK-JFM, C01-1351 TEH

*United States v. Mine Workers,*
  330 U.S. 258 (1947)......................................................................................... 27

*United States v. Phoenix Union High School,*
  681 F.2d 1235 (9th Cir. 1982) ........................................................................ 21

*United States v. Reynolds,*
  345 U.S. 1 (1953) ............................................................................................ 14

*United States v. Rozet,*
  183 F.R.D. 662 (N.D. Cal. 1998)........................................................... 13, 14, 21

*United States v. United States Gypsum Co.,*
  333 U.S. 364 (1948)........................................................................................... 8

*Vaughan v. Celaneseamericas Corp.,*
  2006 WL 3592538 (W.D.N.C. Dec. 11, 2006).............................................. 11

*von Bulow by Auersperg v. von Bulow,*
  811 F.2d 136 (2d Cir. 1987) .............................................................................. 9

*Weeks v. Bayer,*
  246 F.3d 1231 (9th Cir.2001) ............................................................................ 8

## STATUTES

18 U.S.C. § 3626 .................................................................................................... 3, 21

28 U.S.C. § 636(b)(1)(A) ............................................................................................ 8

## RULES

E.D. Local Rule 72-303(f)............................................................................................ 8

Federal Rule of Civil Procedure 26(a)(5)...................................................................... 4

Federal Rule of Civil Procedure 26(b)(5) ......................................................... 10, 11, 12

Federal Rule of Civil Procedure 37(b)(2) ......................................................... 20, 27, 30

Federal Rule of Civil Procedure 72(a) ..................................................... 7, 8, 13, 15

1    Defendants, the Governor of the State of California and other state officials sworn to

2  uphold and enforce the law, represented by the Attorney General of the State Of California, are

3  in open defiance of the lawful orders of this Court.  They are wrongfully withholding critical

4  evidence from plaintiffs' counsel—and ultimately from this Court—necessary for the trial of

5  this matter scheduled to commence in less than eight weeks.   The rule of law and this Court's

6  lawful orders must be followed by everyone, even the Governor and the Attorney General.

7  This Court must not tolerate this effort to keep from public disclosure the truth about the

8  critical issues of public safety and public policy and ongoing violations of fundamental

9  constitutional rights that this Court is charged with resolving.  Nor should this Court tolerate

10  open defiance of lawful court orders.  Such conduct must be reprimanded and appropriate

11  sanctions entered.

12    The Magistrate Judge ordered that "[o]n or before 12:00 p.m. on December 7, 2007,

13  defendants shall produce to counsel for plaintiffs all documents which have been withheld on

14  grounds of privilege set forth in privilege logs produced on November 9, 2007, November 16,

15  2007, and November 23, 2007."  12/7/07 Order at 17:17-19.  Defendants are in open and

16  intentional violation of this order.  To date, they have not produced a single document to

17  plaintiffs in response to this order, despite the Magistrate Judge's explicit statement during the

18  December 6, 2007 hearing on this matter that "I would caution you all, I'd assume it's clear to

19  everybody, but the order of this Court is to be followed.  It is not automatically stayed by a

20  filing with the Court which reviews this Court."  12/6/07 Hearing Transcript ("Transcript") at

21  19:23-20:1, attached as Exh. A to Declaration of Lori Rifkin In Opposition to Defendants'

22  Motion for Reconsideration and/or Stay ("12/10/07 Rifkin Decl."); 12/10/07 Rifkin Decl. ¶¶ 2-

23  4.

24    The facts and arguments presented in Defendants' Motion are misleading as to the

25  grounds relied upon by the Magistrate Judge in ordering the production of these documents to

26  plaintiffs, and as to the law regarding defendants' obligations to sufficiently assert and

27  establish the elements for each document for which they claim privilege.  Contrary to

28  Defendants' statements in their Motion, the Magistrate Judge conducted an impressive and

1

substantial *in camera* review of the documents for which defendants asserted privilege, reviewing "between five and ten percent," of the more than 10,000 documents defendants submitted[1]—despite the fact that defendants finally submitted these documents to the Court only one week before the December 6 hearing on privilege issues, after stalling their submission for almost a month in violation of repeated orders from the Magistrate Judge. 12/7/07 Order at 5:4-10.  Based on this review, as well as the obvious inadequacies of defendants' privilege logs and the failure of defendants to meet their burden of establishing the privileges they claim, the Magistrate Judge appropriately rejected each of defendants' claims of privilege and ordered them to immediately produce the documents to plaintiffs.  Defendants' assertions that they should be excused from the legal requirements for establishing privilege based on their own election to frivolously overclaim these privileges for tens of thousands of documents are unsupported by the law and the cases to which they cite.

Defendants' motion should be denied forthwith and defendants should be directed to immediately comply with the Magistrate Judge's order.  Furthermore, defendants' continuing violations of court orders and obstructionist behavior throughout these proceedings constitute sanctionable behavior.

### STATEMENT OF FACTS

On October 4, 2006, Governor Schwarzenegger declared that "a State of Emergency exists within the State of California's prison system."  Declaration of Lori Rifkin In Support Of Plaintiffs' Motion to Compel Production of Documents, filed 11/30/07, *Coleman* Doc. No. 2583 ("11/30/07 Rifkin Decl.") ¶ 2, Exh. A.  The Governor warned:  "[C]onditions of extreme peril to the safety of persons and property exist in the 29 CDCR prisons identified [in the

---

[1] Since plaintiffs' November 30, 2007 motion to compel the production of the documents for which defendants have asserted a privilege, defendants have produced two subsequent sets of privilege logs to plaintiffs that more than double the number of documents they are withholding as allegedly privileged, bringing the total to, by plaintiffs' estimation, more than 25,000 documents.  12/10/07 Rifkin Decl. ¶ 5.  On December 7, 2007, Magistrate Judge Moulds ordered the parties to file a joint statement on or before 12:00 p.m. on December 12, 2007 concerning their respective positions with regard to the claims of privilege in these two subsequent sets of privilege logs.  12/7/07 Order at 2.

2

proclamation], due to severe overcrowding, and that the magnitude of circumstances exceeds the capabilities of the services, personnel, equipment, and facilities of any geographical area in this state." *Id.* More than one year later, on November 9, 2007, in response to the interrogatory, "Do you contend that the state of emergency in the California prison system that you declared, pursuant to your October 4, 2006 overcrowding proclamation, is now over?" the Governor answered: "No, the Governor has not terminated the Emergency Proclamation, and his administration continues to aggressively use the emergency authority to address overcrowding in ways that are less intrusive than a prisoner release order." 11/30/07 Rifkin Decl. ¶ 3, Exh. B at 4:8-11. At present, the overcrowding crisis continues unabated. Also continuing unabated are intolerable violations of the constitutional rights of prisoners throughout the state to adequate medical and mental health care.

On July 23, 2007, two federal district courts separately granted plaintiffs' motions in *Coleman v. Schwarzenegger* and *Plata v. Schwarzenegger* to convene a Three-Judge Panel to limit the prison population. These motions were made, pursuant to 18 U.S.C. § 3626, on behalf of classes of inmates with serious medical and mental illness whose constitutional rights to adequate care were being—and continue to be—egregiously violated, despite years of court orders directed at remedying these violations. *See* 7/23/07 Orders. Plaintiffs contend that the overcrowding crisis described in detail by the Governor in his Prison Overcrowding State of Emergency Proclamation is presently the primary cause of defendants' failure to deliver constitutionally adequate medical and mental health care. Plaintiffs have moved for a prisoner release order, arguing that without a reduction in the prison population, defendants will be unable to remedy their violations of plaintiffs' constitutional rights. The proceedings in both cases have been consolidated before this Court. The PLRA requires that this Court enter a prisoner release order only if it finds by clear and convincing evidence that i) crowding is the primary cause of the violation of the constitutional rights of the *Coleman* and *Plata* classes to adequate health care; and ii) no other relief will remedy the violation of these rights.

In briefing before the district courts, and in their answers to plaintiffs' discovery requests, defendants have thus far contended that the size of the overall CDCR inmate

population is not the primary cause of these violations, and that there are "[m]ultiple causes at play."  In response to *Coleman* plaintiffs' interrogatories, for example, defendants have identified some of these causes as defendants' administrative and systemic failures to recruit and retain staff, employ a viable information technology system, pay staff adequately, plan for and provide mental health beds at appropriate treatment and custody levels, and appropriately forecast the mental health population.  11/30/07 Rifkin Decl. ¶ 3, Exh. C at 5:1-8; *see also* Defs.' Suppl. Brief  in Opp. to Pls.' Motion for Referral to Three-Judge Panel ("Defs.' Suppl. Brief"), *Coleman*  Doc. No. 2238 at 18:2-4 ("Plaintiffs cannot meet their burden because the evidence establishes that the problems with the mental health care system are primarily administrative problems.").  Defendants have argued that they are currently engaged in efforts that will provide relief for the constitutional violations such as the implementation of appropriate mental health care policies and procedures, recruitment of qualified clinicians, and planning for and construction of appropriate medical and mental health beds.  Defs.' Suppl. Brief at 4-8.  Defendants also contend, as illustrated by the Governor's response quoted above, that they are currently implementing policies that address overcrowding, and therefore, a prisoner release order should not be issued.  In previous briefing, defendants have identified these efforts to address overcrowding as the AB 900 prison construction plan, out of state transfers, and administrative parole changes.  Defs.' Suppl. Brief, *Coleman*  Doc. No. 2238, at 10-19.

    The parties in these cases are currently engaged in an expedited discovery process. Plaintiffs and defendants have served multiple discovery requests.  In their responses to plaintiffs' requests for production, out of the documents defendants have themselves identified as responsive, defendants have withheld more documents—approximately 10,000 as of

November 30, 2007[2]—than they have produced.    Defendants have withheld these documents based on their assertions of multiple privileges, including primarily the deliberative process privilege.  These documents are listed in more than 1,000 pages of privilege logs that, by plaintiffs' estimation, refer to more than 10,000 documents.[3] 12/10/07 Rifkin Decl. ¶ 5.

On November 30, 2007, after extensive meet and confers with defendants,[4] plaintiffs moved to compel the production of documents identified in these privilege logs.  *See* Pls.' Notice of Motion and Motion to Compel Production of Documents and Pls.' Memorandum In Support of Motion to Compel Production of Documents ("Pls.' Motion to Compel"), filed 11/30/07, *Coleman* Doc. Nos. 2581-2582.  Plaintiffs contended, and the Magistrate Judge found, that defendants failed to meet their Rule 26(a)(5) obligations to describe the documents in sufficient detail to enable plaintiffs to assess the privilege:  "The deficient entries [in the logs] are obvious and they are numerous…it is obvious to this court that defendants have failed to meet their burden of establishing the privileges asserted in these proceedings."  12/7/07 Order at 10:10-21.  Indeed, plaintiffs noted in their motion to compel that even the scant

---

[2] These numbers refer to the privilege logs and documents in dispute as of plaintiffs' November 30, 2007 motion to compel.  Defendants have now produced more than 2,500 pages of privilege logs corresponding to an estimated more than 25,000 documents.  In comparison, defendants have produced approximately 12,000 documents to plaintiffs.  Plaintiffs estimate that the number of pages withheld to date is now totals more than 150,000.  12/10/07 Rifkin Decl. ¶ 5.

[3] Again, these numbers refer to the privilege logs at issue as of plaintiffs' November 30, 2007 motion to compel.  Those privilege logs were previously filed with this Court as Exhibits B, C, and D to Declaration of Lori Rifkin In Support of Plaintiffs' Opposition to Defendants' Motion for Reconsideration, filed 11/26/07.

[4] In their briefing, defendants blatantly misrepresent the efforts plaintiffs have made to meet and confer about defendants' privilege logs and the documents contained within them.  In addition to conducting numerous telephonic meet and confers, and providing defendants with written examples of deficiencies in their privilege logs, plaintiffs' counsel Sara Norman met and conferred in person with defendants' counsel Paul Mello on December 3 and 4, 2007.  Over the course of these two days, Ms. Norman and Mr. Mello discussed hundreds, if not thousands, of insufficient or plainly erroneous entries in defendants' privilege logs.  12/10/07 Rifkin Decl. ¶ 9.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR STAY AND REQUEST FOR SANCTIONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

1   information provided in the logs reveals that a large number of documents identified plainly

2   fall outside the privileges which defendants have asserted.[5]

3       Specifically regarding defendants' assertion of the deliberative process privilege, the

4   Magistrate Judge found that defendants did not satisfy the procedural requirements for

5   asserting the privilege.  In contrast to providing "detailed affidavits which establish in a

6   nonconclusory and logical fashion the decision-making deliberative process to which the

7   documents pertain and the role played by the document," "[n]one of [defendants'] declarants

8   avers that they have personally reviewed the documents for which their agency has asserted a

9   deliberative process privilege in these proceedings.  None of the declarants ties any of the

10  statements in their declarations to particular documents for which the deliberative process

11  privilege has been claimed."  12/7/07 Order at 12:6-8 and 13:17-21.

12      The Magistrate Judge also concluded that "it is evident from the record before this court

13  that the manner in which these proceedings are being defended involves presentation of

14  material which will constitute a wavier of the deliberative process privilege."  12/7/07 Order at

15  13:26-14:1.  As described above, defendants contend that their past administrative and

16  systemic failures, rather than overcrowding, are the primary causes of their violations of

17  plaintiffs' rights.  Defendants also contend that their present and future administrative efforts

18  constitute "other relief" such that a prisoner release order is unwarranted.  These contentions

19  are the linchpins of defendants' defenses in this case: defendants have already admitted—and

20  the district courts have found—that there is an overcrowding crisis in California's prisons, and

21  that defendants are currently unable to provide constitutional levels of medical and mental

22  health care to the prisoners warehoused in these prisons.  The Magistrate Judge appropriately

23  rejected defendants' attempt to withhold the documents most directly relevant to their

24

25  [5] Defendants assert privilege with such largesse that they extend the attorney-client and
    deliberative process privileges to defendants' communications to and from the *Coleman*
26  Special Master and the *Plata* Receiver, court orders, and emails from plaintiffs' counsel.
    Examples of these are found in Defendants' first privilege log, produced November 9, at p.10
27  (Priv001027-001030), p.19 (Priv001331-001352), and p.32 (Priv002790-002791, Priv002804-
    002805).

28

1  arguments concerning these two PLRA prerequisites for the issuance of a prisoner release

2  order.

3        Plaintiffs and this Court must be able to assess defendants' contention that

4  overcrowding is not the primary cause of the State's failure to provide constitutional health

5  care.  Documents such as "Public Safety and Offender Rehabilitation Services Act of 2007

6  Implementation of [sic] Barriers"[6] and "Pre-decisional draft Assessment of the Capacity of the

7  Office of Facilities Management of the California Department of Corrections & Rehabilitation

8  to Meet the Requirements of AB 900"[7] are clearly relevant to plaintiffs' and the Court's ability

9  to assess whether defendants offers of "remedy" are meaningful.

10       Finally, the Magistrate Judge also rejected defendants' inadequate assertions of

11 attorney-client privilege, attorney work product privilege, official information privilege, and

12 privacy rights as the basis for withholding responsive documents from production.  The Court

13 noted during the December 6, 2007 hearing that "looking at the privilege logs, I can't tell who

14 the client is.  I can't tell who's seen the documents.  I don't know to whom they've been

15 shown, and frankly, I'm substantially disturbed [by] the fact that privilege was claimed for

16 documents filed with this Court, privilege was claimed for a letter from the *Coleman*

17 master…It just appears that every time anybody who might have gone to law school appeared

18 on a copy of a document, perhaps in the 'cc' list, or otherwise, that somebody in [defendants']

19 operation decided to call that an attorney/client privilege document…"  Transcript at 10:8-22.

20 The Court found that defendants similarly failed to meet their burdens for establishing that

21 attorney work product privilege, official information privilege, or privacy rights justify

22 defendants' withholding of responsive documents from plaintiffs.

23

24

25

26 [6] This document is listed as Priv021005-021018 on page 139 of defendants' 11/16/2007
   privilege log.

27 [7] This document is listed as Priv021948-021953 on page 41 of defendants' 11/21/2007
28 privilege log.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR STAY AND REQUEST FOR SANCTIONS, NOS.:
CIV S 90-0520 LKK-JFM, C01-1351 TEH

1    Because the Magistrate Judge's findings and order are supported by the documents

2    before the Court, the requirements of the Federal Rules of Civil Procedure, and the case law

3    regarding assertions of privilege, plaintiffs request that this Court deny defendants' motion for

4    reconsideration or stay and take appropriate measures to enforce the Magistrate Judge's

5    discovery order.

**ARGUMENT**

6

7    **I.    Defendants Fail to Satisfy The Legal Standard for Reconsideration**

8    Federal Rule of Civil Procedure 72(a) provides that non-dispositive pre-trial matters

9    may be decided by a magistrate judge.  The standard for review by the district judge is whether

10   the decision of the magistrate judge was "clearly erroneous" or "contrary to law." *See* 28

11   U.S.C. § 636(b)(1)(A); E.D. Local Rule 72-303(f); *Ainsworth v. Vasquez*, 759 F. Supp. 1467,

12   1469 (E.D. Cal.1991).  Discovery motions are non-dispositive pretrial motions within the

13   scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), and thus subject to the "clearly erroneous or

14   contrary to law" standard of review.  *See Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952,

15   954 (6th Cir. 1985).  A finding is "clearly erroneous" only when the reviewing Court

16   considering the entire evidence is left with the definite and firm conviction that a mistake has

17   been committed.  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Nat'l*

18   *Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988); *Champagne*

19   *v. Whitman,* 2006 WL 2522381, at *1 (E.D. Cal. Aug. 28, 2006) (noting that "[m]otions to

20   reconsider [a magistrate's ruling] are committed to the discretion of the trial court" and that

21   "[t]o succeed [on a motion for reconsideration], a party must set forth facts or law of a strongly

22   convincing nature to induce the court to reverse its prior decision"); *cf. Weeks v. Bayer,* 246

23   F.3d 1231, 1236 (9th Cir.2001) (warning that reconsideration standard presents "high hurdle").

24   Defendants' motion does not meet this high standard.  Defendants misconstrue case law

25   and the reasoning of the Magistrate Judge.  For example, defendants assert that the Magistrate

26   Judge relied on a "scant few documents" in issuing an order compelling production of all

27   documents identified the privilege logs.  Defs.' Motion at 5:2-3.  However, the Court stated on

28   the record during the December 6, 2007 hearing that it had conducted *in camera* review of

8

between five to ten percent of these documents.  Transcript at 11:5-7.  This corresponds to approximately 1,000 documents reviewed by the Court in the week between defendants' significantly late submission of the documents to the Court at 5:00 p.m. on November 28, 2007 and the December 6 hearing.

Defendants repeatedly cite to *Tulip Computers International v. Dell Computer Corp.*, 210 F.R.D. 100 (D. Del. 2002), in support of their argument that the Court's order compelling production of all documents to plaintiffs is not support by law.  In *Tulip Computers International*, the Court ordered the intermediate remedies of a revised privilege log and submission of documents for *in camera* review in response to the party's motion to compel.  In the instant case, however,  the Magistrate Judge had already conducted *in camera* review of the documents withheld as privileged and found that the privileges asserted by defendants did not apply.  The Magistrate Judge also advised defendants prior to the December 6, 2007 hearing in a telephone conference held immediately after defendants' submission of the privilege logs to the Court that, should defendants wish to update or revise the privilege logs before his consideration of the matter, they should do so in advance of the December 6, 2007 hearing. 12/10/07 Rifkin Decl.¶ 6.  Defendants failed to submit revised privilege logs.

Defendants also continue to allege that because they have chosen to assert privilege for tens of thousands of documents, they are somehow relieved of the burden of establishing the elements of these privileges.  Through their indiscriminate siphoning of documents into their privilege logs, defendants have attempted to impermissibly shift their burden to plaintiffs and the Court, requiring plaintiffs and the Court to wade through 1,000 pages of privilege logs to conduct the review that should have been done by defendants' counsel.  This burden-shifting is impermissible and contravenes well-established law that the party claiming the privilege bears the burden of affirmatively establishing the essential elements of the privilege.  *See, e.g., United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) ("The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." (internal quotation marks omitted)); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) ("It is axiomatic that the burden is on a party claiming the

9

protection of a privilege to establish those facts that are the essential elements of the privileged relationship." (internal quotation marks omitted)); *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 655 (10th Cir. 1984) (noting burden is on party asserting privilege).  For these reasons, as well as the legal arguments set forth below, defendants' motion should be denied.

## II.     Defendants' Motion For Reconsideration Should Be Denied and the Court Should Order Immediate Production of the Withheld Documents

### A.     The Magistrate Judge Did Not Err In Finding Defendants' Privilege Logs Facially Inadequate

The Magistrate Judge rejected defendants' privilege logs as insufficient to satisfy the notice requirements of Fed. R. Civ. P. 26(b)(5).  The Court found that "defendants' privilege logs are replete with entries for which the author of the document is 'not readily available,' the recipients are 'not readily available,' the document's date is unknown, and it is described in conclusory fashion as 'pre-decisional.'  Simply put, these entries do not provide notice sufficient to support the asserted privilege(s)…The deficient entries are obvious and they are numerous."  12/7/07 Order at 10:4-10.

Defendants suggest that because this case involves "large volumes of documents," a more liberal standard should be applied to their logs.  In support of this allegation, defendants quote an excerpt from the 1993 Advisory Committee Note to Fed. R. Civ. P. 26(b)(5) and cite to *Bourne v. Town of Madison*, 2007 WL 951552 (D.N.H. March 27, 2007) for the proposition that the provision of detailed privilege logs may be unduly burdensome when voluminous documents are claimed as privileged.  To this end, defendants argue that they are not obligated to include information such as author or recipient when claiming privileges.

Defendants' argument that they are excused from providing information establishing the basic elements of the privileges they claim, such as author and recipient for documents claimed as privileged pursuant to the deliberative process or attorney-client privileges, was rejected by the Magistrate Judge when he found that defendants' failure in this regard was so complete that "[neither the press of time nor the volume of documents explain this failure satisfactorily."  12/7/07 Order at 10:21-22.  Defendants' argument is also contradicted by the cases that the

authorities they cite.  The next sentence of the Advisory Committee Note after the partial

excerpt defendants cite directs that if a party anticipates that compliance with the requirement

for providing information to establish privilege would be an unreasonable burden, that party

should seek relief through a protective order from the court.  Fed. R. Civ. P. 26(b)(5), 1993

Advisory Committee Note.  Defendants in the instant case have never done so.  Moreover,

*Bourne v. Town of Madison* explicitly notes that a party should ask for a protective order early

in the discovery process rather than waiting until the court has already ordered the defendants

to produce documents. 2007 WL 951552 at *2.

The Court in *Bourne* rejected a party's motion to reconsider an order to produce

documents when that party neither requested a protective order early in the discovery process

nor substantiated its privilege claims, even when objecting to a motion to compel.  *Id.* at *2.

Here, as in *Bourne*, defendants have failed to provide adequate or additional information to

buttress their claims of privilege in their opposition to plaintiffs' motion to compel.  In fact,

defendants' opposition did not refer to a single document nor provide any additional

information for the documents in their privilege logs.  Rather, defendants merely recited again

and again that they should not have to provide this information.  The *Bourne* Court also

rejected the use of blanket privilege assertions, finding that a party is required to "provide

sufficient information to enable [the plaintiff or this court] to evaluate the applicability of the

claimed privilege or protection."  *Id.* at *4 (alteration in original)(internal quotation marks

omitted).[8]

---

[8] Another case defendants cite in their brief, *Vaughan v. Celaneseamericas Corp.,* 2006 WL 3592538 (W.D.N.C. Dec. 11, 2006), similarly requires a sufficiently high level of detail in the privilege logs to establish each element of the privilege or immunity that is claimed.  In that case, the court found that the party asserting privilege had asserted it in such detail that "it would be difficult for the Defendants to provide much more detail than has already been given without revealing the privileged information itself."  The court also cited to *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000), for the holding that assertion of attorney-client privilege is inadequate where the party did not identify the lawyers involved in the conversation, the people present during the conversation, or a "description of the nature of the communication sufficient to enable plaintiffs to assess the applicability of the claimed privilege."

11

Moreover, because the party asserting privilege in *Bourne* withheld materials without providing sufficient information as required by Rule 26(b)(5), the court found that the party had waived the privilege, and, "[i]n light of the waste of time and resources caused by the defendants' unjustified discovery tactics," also held the withholding party in contempt. *Id.* at *4-5. Defendants in the instant case have acted in a similarly wasteful and obstructionist manner. Despite numerous and repeated requests for a month by plaintiffs' counsel that defendants correct and narrow the logs so that the dispute in front of the court could be narrowed to the most probative issues, defendants refused to do so. 12/10/07 Rifkin Decl. ¶ 7. Even after defendants acknowledged that there were obvious mistakes and deficiencies in the logs, they did not act to correct or update the logs. 12/10/07 Rifkin Decl. ¶ 7. Furthermore, the Magistrate Judge also advised defendants in a telephone conference held on November 29, 2007, prior to the December 6, 2007 hearing, that should defendants wish to update or revise the privilege logs before his consideration of the matter, they should do so in advance of the December 6, 2007 hearing. 12/10/07 Rifkin Decl. ¶ 6. Defendants again declined to do so. Rather, defendants asserted in their opposition to plaintiffs' motion to compel—as they continue to assert in this motion for reconsideration—that it is the duty of plaintiffs and this Court to wade through their 1,000 pages of logs and conduct the document-by-document review that defendants have abdicated.

Facing a similarly lofty stack of documents for which privilege was asserted and disputed, a district court in Illinois rejected the suggestion that a party's attorney did not have time to conduct meaningful review:

> As we read [Gulf's] argument, it is appropriate for the court --- or as Gulf suggests, a magistrate --- to wade through the equivalent of 100 novels to determine the validity of the parties' blanket claims of privilege, but it would be inappropriate for "senior attorneys" . . . to be called upon to review the documents. We do not know who has concluded that these documents are privileged. Perhaps some unknown paralegal. Perhaps a computer program. So a judge or a magistrate should review the determination made by the faceless person. We shall not do so. The burden is upon the person who asserts the privilege to show that the document falls within the privilege.

1   *In re Uranium Antitrust Litig.*, 552 F.Supp. 517, 517 (N.D. Ill. 1982).  The court's remedy in

2   that case was to order production of all documents withheld under the claims of privilege.[9]  *Id.*

3   at 518.  In the instant case, the Magistrate Judge went out of his way to accommodate

4   defendants' overbroad assertions of privilege far more than the *Uranium Antitrust* Court did:

5   in exceedingly short time, he reviewed approximately 1,000 of defendants' documents and

6   considered each of defendants' assertions of privilege in turn.

**B.    The Magistrate Judge Did Not Err in Finding That Defendants Failed to
Adequately Assert The Deliberative Process Privilege**

9        The deliberative process privilege is a narrow, conditional federal common law

10  privilege that protects materials created by governmental departments or agencies during the

11  decision-making process.  *Nat'l Wildlife Federation v. United States Forest Serv.*, 861 F.2d

12  1114, 1117 (9th Cir. 1988).  The purpose of the privilege is to protect the quality of agency

13  decisions by shielding internal discussions from public scrutiny which might discourage the

14  free-flow of ideas and frank discussion of legal or policy matters.  *NLRB v. Sears Roebuck &*

15  *Co.*, 421 U.S. 132, 150 (1975).

16       In order to assert the deliberative process and official information privileges, defendants

17  are required to establish that the documents are being withheld as a result of personal

18  consideration by the head of the responsible department or agency.  *See United States v. Rozet*,

19  183 F.R.D. 662, 665 (N.D. Cal. 1998); *Allen v. Woodford*, 2007 WL 309945, at *5 (E.D. Cal.

20  Jan. 30, 2007); *see also Resolution Trust Corp. v. Diamond*, 773 F.Supp. 597, 603 (S.D.N.Y.

---

[9] Additionally, the Court cautioned that any motion for reconsideration would be considered
"only in respect to documents which are described with particularity in the motion,
accompanied by a particularized assertion of the privilege, and also accompanied by the
personal certification of the lawyer who will appear as lead counsel for the party at the trial of
this case that he or she has personally inspected the document in question and asserts the
privilege or immunity based upon a reasonable comprehension of the contents of the
document, the underlying principles of law applicable to the privilege or immunity and in good
faith."  *In re Uranium Antitrust Litigation*, 552 F.Supp. 517, 518 (N.D. Ill. 1982).  Plaintiffs
respectfully request that, should this Court decide that defendants be allowed to continue to
assert privilege for some limited number of documents, they be required to make a similar
showing by lead counsel here.

1    1991) (collecting cases observing this rule).  The purpose of this requirement is to "deter

2    governmental units from too freely claiming a privilege that is not to be lightly invoked."

3    *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 517 (D. Del. 1980); *see also Rozet*, 183 F.R.D. at 665

4    (holding that deliberative process privilege may be invoked only by the "head of the

5    department after actual personal consideration . . . to insure that the privilege remains a narrow

6    privilege which is not indiscriminately invoked"); *United States v. Reynolds*, 345 U.S. 1, 8

7    n.20 (1953) ("The essential matter is that the decision to object should be taken by the minister

8    who is the political head of the department, and that he should have seen and considered the

9    contents of the documents and himself have formed the view that on grounds of public interest

10   they ought not to be produced." (internal quotation marks omitted)).

11          On October 26, 2007, defendants filed five declarations with their responses to

12   plaintiffs' September 5, 2007 document production request, one each from an official with the

13   California Department of Finance, the Office of the Governor, and the California Department

14   of Mental Health, and two from officials with the California Department of Corrections and

15   Rehabilitation.  12/7/07 Order at 12:18-22; 11/30/07 Rifkin Decl. ¶ 7.  None of these

16   declarations alleged review of the specific documents withheld, and instead each made only

17   general statements about familiarity with the categories of documents generated by their

18   respective agencies which may be responsive to plaintiffs' requests.  *See* 12/7/07 Order at

19   13:6-16.  During the December 6, 2007 hearing regarding privilege issues, defendants

20   acknowledged that none of the declarants had personally reviewed the documents for which

21   their agency asserted a deliberative process privilege in these proceedings.  *Id.* at 13:17-19.  In

22   fact, defendants' counsel could not confirm that *any* of these officials had conducted personal

23   review for *even one* of the more than ten thousand documents withheld pursuant to assertions

24   of privilege.  Transcript at 6:19-7:25.  Consequently, the Magistrate Judge correctly held that

25   defendants did not meet their burden for establishing that the deliberative process applies.

26   12/7/07 Order at 13:23-25.

27          Defendants cite only a single case in support of their assertion that the Magistrate

28   Judge's ruling on this point was "clearly erroneous or contrary to law," as the standard for

14

reconsideration requires.  Fed. R. Civ. P. 72(a).  Defendants cite a footnote in *Amoco Production Co. v. Schlesinger, et al.*, 1979 U.S. Dist. LEXIS 12103, at *16, FN 16 (Dist. Del. May 29, 1979) to suggest that declarants need not review the documents at issue in order to assert privilege for them "where there are large volumes of documents being addressed." Defs.' Motion at 8.  In *dicta*, the Delaware district court noted that the highest official at an agency does not necessarily have to personally inspect each document for which executive privilege is claimed "so long as he establishes guidelines of sufficient specificity to serve the interest discussed by Judge Schwartz in Pierson as being the basis for the requirement of participation by the agency head." *Amoco,* 1979 U.S. Dist. LEXIS 12103, at *16, note 16. *Pierson v. U.S.*, 428 F.Supp. 384, 395 (D. Del. 1977), the case to which the *Amoco* Court cited, emphasized that it is important to keep in mind "the policy served by the requirement of a formal claim by the agency head" because "the privilege should be invoked with consistency and only after careful consideration"  and"[i]t is of the greatest importance that [executive] privilege be invoked only when policies it seeks to encourage are seriously threatened."  In fact, the *Pierson* Court specifically held that government attorneys may *not* be deputized to assert this privilege:  "To permit any government attorney to assert the privilege would derogate both of these interests [consistency and careful consideration]…the judgement of attorneys engaged in litigation is very likely to be affected by their interest in the outcome of the case." *Id.*

        Defendants' review of documents for privilege in the instant case does not serve the interests outlined by the *Pierson* Court.  Defendants state in their motion that "over one hundred attorneys and paralegals from the California Attorney General's Office, California Department of Corrections and Rehabilitation, and Hanson Bridgett have devoted approximately 5,000 hours reviewing *and privileging documents in this matter*."  Defs.' Motion at 3:20-23 (emphasis added).  Defendants do not offer a shred of evidence showing that the agency declarants, rather than defendants' attorneys and paralegals, have personally reviewed even a single document withheld as privileged here, much less conducted the careful consideration required by *Amoco* and *Pierson*.  Neither have defendants offered any evidence

15

1   of the agency declarants establishing guidelines for this review, much less guidelines of

2   sufficient specificity to serve the interests identified by the *Pierson* Court.

3         Moreover, beyond defendants' failure to meet their burden for asserting the deliberative

4   process privilege for each document, there are multiple categories of documents defendants

5   claim under this privilege to which the privilege would clearly not apply even if defendants

6   had attempted to provide meaningful bases for the assertions.  These include reports,

7   spreadsheets, and schedules that appear to encapsulate factual information; final budget change

8   proposals or finance statements; letters to outside agencies or individuals; documents for which

9   no privilege is independently asserted but are described as having been attached to allegedly

10  privileged documents; and documents discussing AB 900 that are dated after the Legislature

11  enacted the bill that do not identify a subsequent agency decision the documents would or

12  could be considered "pre-decisional."  It is not reasonable to assert that these documents would

13  pass the test that "the document is so candid or personal in nature that public disclosure is

14  likely in the future to stifle honest and frank communication within the agency." *Coastal States*

15  *Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Examples of documents in

16  these categories are found listed on pages 46 and 47 of the November 16, 2007 log, where

17  many of the documents merely read "Project Cost Summary" or "SVSP ICF Mental Health

18  Beds" with no authors, recipients, or dates listed.  Page 73 of the same log shows multiple

19  entries for "Budget Change Proposal" with no author, recipient, or date listed.

20        Page 80 of the November 16, 2007 log shows "Estimated Construction Schedule for

21  Infill Bed Plan Jan 2007" (Priv013243-013244).  The Supreme Court has clearly established

22  that the privilege only applies to the "opinion" or "recommendatory" portions of non-final

23  documents, and not to factual information contained in the document.  *EPA v. Mink*, 410 U.S.

24  73, 87-88 (1973) (explaining that "compiled factual material or purely factual material

25  contained in deliberative memoranda and severable from its context would generally be

26  available for discovery" notwithstanding the assertion of privilege), *superseded by statute in*

27  *nonrelevant part as recognized in Long v. I.R.S.*, 742 F.2d 1173 (9th Cir. 1984).  Examples of

28  the documents listed in defendants' privilege logs that fall clearly outside the scope of the

16

1   deliberative process privilege are far too many to exhaust in this brief, but the examples

2   provided throughout plaintiffs' motion to compel provide ample evidence that defendants did

3   not satisfy their burden to assert this privilege in good faith, and the Court's wholesale

4   rejection of the assertion of this privilege was warranted.

5       **C.    The Magistrate Judge Did Not Err in Concluding That Defendants Have
                Put Their Deliberative Processes At Issue In This Case**

6

7           The Magistrate Judge concluded that the defenses defendants have already raised in

8   these proceedings put their deliberative process at issue in this case and constitute a waiver of

9   the deliberative process privilege.  12/7/07 Order at 13-14.  Defendants disagree, arguing that

10  "[d]efendants' assertion that administrative problems rather than the size of the population are

11  the causes of any violation does not vitiate the deliberative process privilege."  Defs.' Motion

12  at 16.  Defendants dismissively maintain that the deliberations of the administration are not at

13  issue, without any further explanation.  *Id.*  Defendants also assert without basis that plaintiffs

14  have not made a "strong showing" of need for these materials to override the Government's

15  interest in protecting its deliberative processes.  *Id.*

16          As outlined in the Introduction and Statement of Facts, as well as in Plaintiffs' motion

17  to compel, defendants have, in previous briefing and in responses to plaintiffs' interrogatories,

18  argued that they have approved and are currently implementing plans and policies that will

19  remedy the constitutional violations in these cases and address overcrowding.  On the other

20  hand, in the declarations of Deborah Hysen and Kathy Jett in opposition to plaintiffs' motion to

21  compel, defendants now argue that these plans and policies are in pre-decisional and

22  deliberative stages because decisions regarding their implementation are ongoing and the plans

23  have not yet received final approval from all of the agencies to which they are circulated, nor

24  from the Legislature.  These conflicting assertions by defendants are themselves ample

25  evidence of the reasons that the qualified deliberative process privilege is overcome in this

26  case.  Plaintiffs and the Court must have the relevant information for evaluating defendants'

27  assertions that their own administrative processes constitute both the primary cause and

28  sufficient remedy for the current prison crisis.

17

**1.    The Documents Defendants Are Withholding As Privileged Are Directly Relevant To The Administrative Processes And Decision-Making They Have Raised As Their Defenses In This Case**

"The [deliberative process] privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). "If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield." *Id.* Here, defendants maintain that their decision-making and administrative capabilities (or incapabilities) are both the cause of the violations, and that they will plan and implement adequate remedies so that a prisoner release order is not warranted. Without access to the documents reflecting the State's decision-making, this Court cannot meaningfully address the State's argument that its failures in this area are the real primary cause of the violations rather than the population pressures resulting from overcrowding. Nor can this Court fairly evaluate defendants' remedial plan, without considering defendants' internal discussion and analysis of the adequacy of those plans.

In June 2006, the *Coleman* Court Ordered defendants to produce budget change proposals and draft budget change proposals to plaintiffs, despite defendants' claim of deliberative process and official information privileges. The dispute arose because defendants maintained that they had obtained the staffing necessary to comply with the Court's March 3, 2006 Order to implement the Revised Program Guide, but there were indications that the State's request to the Legislature was inconsistent with and greatly reduced from the CDCR's original request for staffing that it had determined was necessary to comply with the Court's order. This information was relevant to the determination of whether defendants were capable of complying with the Court's order: "Put directly, the court requires the BCPs in part to determine whether the state's deliberative process is frustrating the ability of the state to comply with the courts orders." *See Coleman v. Schwarzenegger,* No. CIV S-90-0520 LKK-JFM, June 14, 2006 Order, Doc. No. 1840. The Ninth Circuit rejected defendants' challenge to

1  the Court's order.  6/23/06 Ninth Circuit Order denying emergency motion to stay district

2  court's orders, No. 06-16077.

3         The issues in the current proceedings raise the stakes even higher:  They concern the

4  State's ability to provide *both* constitutionally adequate medical and mental health care to the

5  173,000 individuals currently incarcerated in California prisons.  Defendants have maintained

6  that their own administrative failings, rather than systemic overcrowding, are the cause of the

7  violations; and yet defendants simultaneously maintain that the State's ability to implement

8  bed plans, staffing recruitment, prison construction, and rehabilitation programs, among others,

9  will provide sufficient and timely relief such that a prisoner release order is unnecessary.  By

10  wielding the shield of deliberative process privilege, defendants are attempting to withhold

11  what appear to be crucially relevant documents about the validity of their defense.  These

12  documents—if in fact, they do actually contain pre-decisional deliberative material—are

13  highly likely to shed light on the reliability and meaningfulness of defendants' plans,

14  defendants' ability to actually fund and implement these plans, and what timeframes are

15  accurate for expected implementation and relief.  For example, defendants have withheld

16  documents such as "Public Safety and Offender Rehabilitation Services Act of 2007

17  Implementation of Barriers" (listed on page 139 of 11/16/07 log); "Pre-decisional draft

18  Assessment of the Capacity of the Office of Facilities Management of the California

19  Department of Corrections & Rehabilitation to Meet the Requirements of AB 900" and

20  "Potential Barriers to Pre-decisional draft Potential Barriers to Implementation of AB 900

21  [sic]" (listed on page 41 of 11/21/07 log); "Email discussing and attaching memo to Hickman

22  and briefing document discussing population pressures" and "Pre-decisional memo discussing

23  modification to correctional operation due to compelling operational necessity" (listed on page

24  19 of 11/16/07 electronic log); "Email attaching timeline on CDCR activities for prison

25  reform" (listed on page 21 of 11/16/07 electronic log); "Email attaching reports on prison

26  overcrowding, parole and sentencing" (listed on page 23 of 11/16/07 electronic log); "Email

27  thread discussing revisions to infill bed assessments" and "Pre-decisional memo discussing AB

28  900 activities and notification to staff" (listed on page 55 of 11/16/07 electronic log); "Report

19

providing pre-decisional discussion of Mental Health Bed Plan," "Report providing pre-decisional analysis of enhanced outpatient program treatment improvement plan" and "Agenda providing pre-decisional analysis of facility planning, construction and management" (listed on page 133 of 11/16/07 electronic log); and "California Department of Corrections and Rehabilitation Action Plan; Day Treatment Programming and Crisis Management for Mentally Ill Parolees June 7, 2007" (listed on page 9 of 11/21/07 log).  All of these documents are directly relevant to the defenses defendants have raised thus far in the case, and would likely be used by plaintiffs in their case-in-chief and to impeach.  11/30/07 Rifkin Decl. ¶ 21.

Additionally, defendants have consistently withheld draft and final budget change proposals and finance statements throughout their productions, as listed in all of the privilege logs.  For government agencies, the allocation of funds appears to be the most crucial factor determinative of what actions are actually taken by the government, and whether those actions will be effective (because effectiveness generally requires appropriate financing).  As the Court found in the case of similar assertions of privilege over budget change proposals by these same California agencies in *L.H. v. Schwarzenegger*, 2007 WL 20009807 (E.D. Cal. July 6, 2007), these documents "contain in-depth analysis of the need for budget adjustment, and analyze the costs and burdens associated with" providing various resources within certain amounts of time.  *Id.* at *7.  As the *Coleman* Court concluded in June of 2006, budget change proposals and finance documents are highly probative for plaintiffs' and the Court's ability to assess the meaningfulness of defendants' decisions and actions.  In this case, where the California Office of the Attorney General's deputy attorney generals assigned as lead counsel for the State on the various health care related class action lawsuits have collectively issued an opinion that AB 900—the State's "number one" solution to overcrowding—is improperly funded, the financial documents defendants have withheld must be produced.  *See* Report of the Receiver, filed 11/15/07, *Plata* Doc. No. 930, at 3-4.

The Magistrate Judge recognized the centrality of these types of documents to this case in ruling that the deliberative process privilege is overcome here.

### 2.     Plaintiffs' Need For The Materials At Issue Also Greatly Outweighs The Government's Minimal Interest In Non-Disclosure

In addition to the fact that defendants' deliberative processes are central to considerations in this case, the qualified deliberative process privilege is also overcome by plaintiffs' need for the materials at issue.  "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure."  *Id.*; *see also Rozet*, 183 F.R.D. 662 at 665 (holding that "[privilege] may be overcome by a strong showing of need on the part of the party seeking discovery").  "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  *FTC v. Warner Communications*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The court should also consider "(5) the interest of the litigant, and society, in accurate judicial fact finding; and (6) the seriousness of the litigation and the issues involved."  *L.H.*, 2007 WL 2009807 at * 2 (citations omitted).

These factors demonstrate that plaintiffs' need for the documents far exceeds any interest defendants may have in withholding the responsive documents.  For example, "the interest of the litigant, and ultimately society, in accurate judicial fact finding, and the seriousness of the litigation and the issues involved," are factors that weigh heavily in favor of disclosure.  *See id.* at * 8 (citations omitted).  "[W]hen the issues involved are alleged violations of federally-protected civil rights, courts have consistently found that this need is heightened and the privilege is outweighed."  *Id.* (citing *United States v. Phoenix Union High School*, 681 F.2d 1235 (9th Cir. 1982), and other cases).

The issues in this case are the most serious possible: indeed, they are matters of life and death, as inmates are daily denied the minimal level of medical and mental health treatment required by the Constitution.  Society has a common interest in enforcing these rights and in ensuring accurate judicial fact-finding in a case of such sweeping political and humanitarian consequence.  Accordingly, this factor weighs in favor of disclosure of the documents.

1    Moreover, the withheld documents are highly relevant; indeed, they go to the heart of

2 plaintiffs' claim, and defendants' defenses, as to whether overcrowding is the primary cause of

3 the constitutional violations.  Even the privilege log's cursory descriptions of withheld

4 documents reveal the compelling relevance of these documents.  As outlined in the previous

5 section, these documents address defendants' obstacles to implementing AB 900, defendants'

6 plans to remedy the constitutional violations, and the central question of causation of the

7 constitutional violations.  Moreover, these documents are not available from any other source.

8    The government's role in this litigation is significant, a factor that also weighs in favor

9 of disclosure.  Not only is the government the defendant in this case, but the decision-making

10 process itself is at issue in the case. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d

11 1118, 1124 (N.D. Cal. 2003).  As discussed, defendants have put their decision-making at issue

12 in this case by raising it as a defense, and they cannot now be allowed to withhold evidence of

13 that process.

14    The next factor examines the extent to which government discussions would be

15 impeded by the disclosure of these documents.  The ultimate purpose of the deliberative-

16 process privilege is to "prevent injury to the quality of agency decisions."  *Sears, Roebuck &*

17 *Co.*, 421 U.S. at 151.  There is no evidence that agency decisions would be hindered by the

18 disclosure of these documents.  Many of the documents have been circulated to other branches

19 of government, third parties, the Special Master, and other outside sources.  The risk to the

20 government of embarrassment is not enough to outweigh the interest of the class members

21 whose rights are being gravely violated, the interest in the Court in accurate fact-finding, and

22 the interest of the public in ensuring that these significant public policy matters are considered

23 with all relevant information at hand.  *Fru-Con Const. Corp. v. SMUD*, 2006 WL 225538, *4

24 (E.D. Cal. 2006) (embarrassment is not a justification for privilege assertion).

25    In sum, these factors all weigh heavily in favor of disclosure and support the order of

26 the Magistrate Judge that defendants must produce these documents.

27  **D.    The Magistrate Judge Did Not Err In Concluding That Defendants Failed to
        Meet Their Burden to Establish That Attorney-Client Privilege, Attorney**

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR STAY AND REQUEST FOR SANCTIONS, NOS.:
CIV S 90-0520 LKK-JFM, C01-1351 TEH

**Work Product Privilege, Official Information Privilege, or Privacy Rights Justify Withholding Documents In This Case**

The Magistrate Judge concluded that defendants did not meet their burden for asserting any of the privileges claimed, including the attorney-client privilege, attorney work product privilege, official information privilege, and protections based on privacy rights.  The Magistrate Judge based his ruling on the obvious deficiencies in defendants' logs, as well as his own *in camera* review of a substantial percentage of defendants' documents.  In their motion for reconsideration, defendants have not identified a single entry in their privilege logs nor a single document withheld as privileged that contradicts the Magistrate Judge's findings.[10]

Plaintiffs and the Court have identified a number of fatal deficiencies in defendants' logs with respect to these privileges.  For example, defendants failed to meet even the most fundamental requirement that in order to assert the attorney-client privilege, they must demonstrate that the communication was between a client and an attorney.  They assert the privilege over documents where no attorney is listed as either a sender or recipient, and over documents where the sender or recipient is a third party such as the Special Master or a private contractor.  *See* 11/9/07 log at Priv000944-945, p. 5; 11/9/07 log at Priv 000939-000940, p. 5; 11/16/07 log at Priv004511-004512, p. 19; 11/16/07 log at Priv0004901-0004915, p. 24.  In other privilege log entries, defendants assert the privilege over a document for which there is no sender or recipient listed, and the custodian is not an attorney.  This scant information cannot possibly justify withholding of documents.  See 11/9/07 log at Priv003261 Priv003261, p. 55.

Even where the communications were between an attorney and a client, defendants failed to satisfy their burden to prove that these were communications intended to be and in fact kept confidential between an attorney and client for the purpose of obtaining legal advice.

---

[10] In fact, the record in this case reflects that defendants were well aware of the deficiencies in their logs, but declined to correct them.  *See* Defs.' Motion for Reconsideration, filed 11/20/07 at 4:26-5:6 (discussing deficiencies in defendants' assertions of attorney-client privilege and defendants' unfulfilled promise to address those deficiencies).

1    *See Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Abrahams*, 905 F.2d

2    1276, 1283 (9th Cir. 1990), *overruled in nonrelevant part by United States v. Jose*, 131 F.3d

3    1325 (9th Cir. 1997). Most of these documents are sent by non-attorney CDCR employees to

4    other non-attorney CDCR employees, *with a "cc" to an attorney*. These communications are

5    not protected by the privilege, as this Court has already noted: "Including an attorney on the

6    distribution list [or] Cc'ing numerous people . . . one of whom happens to be an attorney . . .

7    does not amount to attorney client communication." *Fru-Con Constr. Corp. v. Sacramento*

8    *Municipal Utility Distr.*, 2006 WL 2255538, at * 1 (E.D. Cal. Aug. 7, 2006) (internal quotation

9    marks omitted) (applying California privilege law but noting the federal standard is the same).

10   Defendants are required to establish that each document consisted of a confidential

11   communication *between* an attorney and a client. If an attorney is merely a "cc" recipient on

12   an e-mail, and not the recipient of "full and frank disclosure" from her client, then the privilege

13   is not properly invoked.

14          The Magistrate Judge identified all of these deficiencies in his own review of the

15   allegedly privileged documents, stating during the December 6, 2007 hearing: "looking at the

16   privilege logs, I can't tell who the client is. I can't tell who's seen the documents. I don't

17   know to whom they've been shown, and frankly, I'm substantially disturbed [by] the fact that

18   privilege was claimed for documents filed with this Court, privilege was claimed for a letter

19   from the *Coleman* master…It just appears that every time anybody who might have gone to

20   law school appeared on a copy of a document, perhaps in the 'cc' list, or otherwise, that

21   somebody in [defendants'] operation decided to call that an attorney/client privilege

22   document…" Transcript at 10:8-22.

23          Similarly, there is little evidence that most of the documents identified by defendants in

24   their logs as work-product were authored by an attorney. In addition, there has been no

25   showing that the documents were prepared in anticipation of litigation. When considering

26   whether a given document was prepared in anticipation of litigation, "the court should consider

27   whether the documents would not have been generated but for the pendency or imminence of

28   litigation." *Id.* (internal quotation marks omitted). For example, attorney work product

24

protection is asserted over a document described, in its entirety, as "Cover sheet for Week Ahead," for which no sender or recipient is provided, and for which therefore there is no basis for assessing what work product might possibly be contained in a cover sheet that is not send or received by an attorney.  *See* E00000280-E00000282, 11/16/07 electronic log, p. 6.  Defendants also appear at times to characterize their publicly-filed pleadings and briefs as privileged work product.  *See, e.g.*, E00001998-E00002001, 11/16/07 electronic log, p. 33 (a pleading sent from the Attorney General's office to the Northern District of California).

Defendants made no serious attempts to comply with the requirements for asserting the official information privilege or for asserting privacy rights to withhold documents, and the Magistrate Judge rejected these assertions.  However, in recognition that despite defendants' failure to adequately assert these claims, there may be some sensitive information contained in at least some of the documents, the Magistrate Judge ordered that these documents be produced subject to a protective order.  12/7/07 Order at 17:20-18:9.

### III.    Defendants' Inflammatory Attacks On The Magistrate Judge's Impartiality and Ruling Are Unwarranted

In their motion, defendants allege that the Magistrate Judge's order lacked "the slightest legal support" and "flies in the face of established case authority."  Defs' Motion at 19:17 and 2:10.  They question the Court's neutrality, attacking the Magistrate Judge's order as "threaten[ing] the appearance of judicial impartiality."  *Id.* at 2:11.  These inflammatory and disrespectful attacks are inappropriate, unprofessional, and unwarranted here.  As evidenced in Magistrate Judge's December 7, 2007 Order and the transcript of the December 6 hearing, the decision of the Magistrate Judge to order defendants to produce these documents to plaintiffs is firmly grounded in the Federal Rules of Civil Procedure, case law, and the record in this case.

Defendants disingenuously criticize the Magistrate Judge for relying on a "scant few documents," but the facts of this case show that it is only *despite* the obstructionist actions of defendants that the Court was able to review any documents at all.  Defendants violated the Magistrate Judge's orders for almost a month to submit the documents they withheld as privileged to the Court for *in camera* review and when they finally submitted the documents at

the close of business on November 28, 2007, they left the Magistrate Judge barely a week to conduct *in camera* review of more than 10,000 documents, or 50,000 pages. In sampling five to ten percent of the documents for *in camera* review, the Magistrate Judge reviewed thousands of pages.

Moreover, as discussed more fully above, defendants' motion for reconsideration is replete with misrepresentations of legal authority and mischaracterizations of the actions of the parties in this case. That defendants add misplaced allegations of judicial bias to their repertoire is unfortunately unsurprising, but it is unwarranted. Here, the Magistrate Judge spent untold hours reviewing defendants' frivolous assertions of privilege at the eleventh hour, instead of taking the available avenue of ordering wholesale production because of defendants' unreasonable actions in refusing to narrow their privilege logs and meet their burdens to establish the privileges they claimed. *See, e.g., In re Uranium Antitrust Litig.*, 552 F.Supp. 517, 518 (N.D. Ill. 1982); *see also Church of Scientology v. U.S. Dept. of the Army*, 611 F.2d 738, 743 (9th Cir. 1979) ("We cannot stress strongly enough, however, that the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly. In cases involving requests for hundreds of documents, no trial court can reasonably be expected to wade through a mass of exhibits In [sic] camera. We also underscore similar limitations upon In camera inspection at the appellate level.")

## IV.    Defendants' Continuing Violations of the Court's Orders Regarding Submission of Documents Are Obstructionist and Should Not Be Tolerated

On December 7, 2007, in an order filed at 7:26 a.m, the Magistrate Judge ordered defendants to "produce to counsel for plaintiffs all documents which have been withheld on grounds of privilege set forth in privilege logs produced on November 9, 2007, November 16, 2007, and November 23, 2007" on or before 12:00 p.m. on December 7, 2007. The Magistrate Judge had orally ordered the same at the conclusion of a hearing held at 2:00 p.m. on December 6, and also filed a minute order on December 6, 2007 at 3:29 p.m., requiring the same production. Defendants failed to comply with the Court's order to produce the documents before 12:00 p.m. on December 7, and informed plaintiffs' counsel at

1   approximately 2:00 p.m. on December 7, 2007 that defendants would not comply with the

2   Magistrate Judge's lawful order.  12/10/07 Rifkin Decl. ¶ 4.

3         Defendants filed the instant motion for reconsideration or stay of the Magistrate Judge's

4   Order with this Court at 11:41 a.m. on December 7, 2007.  As of 12:00 p.m. on December 7,

5   and to date, no stay has been issued by this Court.  The Magistrate Judge explicitly and

6   unambiguously stated on the record during the December 6, 2007 hearing that defendants'

7   mere filing of a motion for reconsideration and/or stay with this Court would not excuse them

8   from their duty of compliance with the Order to produce the withheld documents to plaintiffs

9   by 12:00 p.m. on December 7, 2007.  Transcript at 19:23-20:1.  Defendants already produced

10  this exact set of documents to this Court for *in camera* review on November 28, 2007 and

11  cannot make any reasonable claim of hardship in preparing the documents for production.

12        The obligation of a party to comply with court orders is well established.  See, e.g.,

13  *United States v. Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 696 (1947) ("[W]e find

14  impressive authority for the proposition that an order issued by a court with jurisdiction over

15  the subject matter and person must be obeyed by the parties until it is reversed by orderly and

16  proper proceedings.")  A party's disagreement with an order, or intention to appeal the order, is

17  not an excuse for noncompliance.  See, e.g., *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct.

18  584, 591 (1975)("We begin with the basic proposition that all orders and judgments of courts

19  must be complied with promptly. If a person to whom a court directs an order believes that

20  order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the

21  order pending appeal. Persons who make private determinations of the law and refuse to obey

22  an order generally risk criminal contempt even if the order is ultimately ruled incorrect.");

23  *United States v. Armstrong*, 781 F.2d 700, 707 (9th Cir.1986)(holding that appellants' desire to

24  appeal a district court order does not relieve them of their obligation to comply with the order

25  because "[a]s the Supreme Court has directed, the proper course of action, unless and until the

26  court's order is invalidated by an appellate court, [is] for appellants to comply. . . .").

27        In this case, Defendants have acted, and continue to act, in clear violation of the

28  Magistrate Judge's rulings.  This is the third instance during these discovery proceedings in

1    which defendants have flagrantly violated a direct order of the Magistrate Judge in a manner

2    that not only violates their legal obligation to comply with court orders, but also causes

3    significant prejudice to plaintiffs in these proceedings.[11]

4         The urgency of the issues to be resolved in this matter cannot be overstated.  This Court

5    recognized the gravity and urgency of these proceedings in its October 10, 2007 Order setting

6    an accelerated schedule for Phase I of this matter, with a discovery cut-off date of December

7    20, 2007 and a trial date of February 6, 2008.  10/10/07 Order at 5-6.  However, defendants

8    have stalled and abused the discovery process at every turn.  12/10/07 Rifkin Decl. ¶ 7. They

9    have withheld more than 25,000 documents totaling approximately 150,000 pages as

10   privileged, and have not fulfilled their obligations to meaningfully assert these privileges on a

11   document-by-document basis.  Defendants refused plaintiffs' requests to update their lengthy

12   privilege logs to eliminate frivolous assertions of privilege and to provide sufficient

13   information to narrow the privilege dispute before this Court. 12/10/07 Rifkin Decl. ¶ 7.  They

14   largely ignored, until forced by order of the Magistrate Judge, entire sets of requests for

15   production by plaintiffs.  12/10/07 Rifkin Decl. ¶ 7.  For almost a month, defendants ignored

16   clear orders to submit documents for which they asserted privilege to the Court for *in camera*

17   review, and when the Magistrate Judge renewed his order, they again failed to comply for

18   another week.  11/27/07 Orders; 12/10/07 Rifkin Decl. ¶ 7.  Only after order by this Court did

19   defendants finally submit these documents to the Magistrate Judge, limiting the Court's time to

20   conduct *in camera* review of these 10,000 documents to one week.  12/10/07 Rifkin Decl. ¶ 7.

21   Defendants have also violated the terms of the parties' Joint Stipulation to produce all

22   documents responsive to plaintiffs' discovery requests by November 30, 2007.  In fact, out of

23   approximately 207,000 electronic pages of discovery produced to plaintiffs by defendants

24

25   ──────────────

26   [11] This Court found on November 27, 2007 that defendants violated Judge Moulds's November
     1, 2007 order and November 19 and 20, 2007 orders to submit to the Court for *in camera*
     review all documents withheld pursuant to assertions of privilege.  Defendants did not submit
27   those documents to the Magistrate Judge until November 28, 2007, after the November 27,
     2007 Order from this Court.

28

(separate from those documents identified in the privilege logs), defendants waited until December 7—one week after the November 30, 2007 deadline—to send nearly 130,000, or more than sixty (60) percent, of those pages to plaintiffs.  Plaintiffs received most of those documents on December 10, 2007, the same week depositions are scheduled to begin.  The documents still have to be processed by plaintiffs' document vendor which, given the huge volume, may take several days.  Defendants unreasonably, and without explanation, delayed their production of these documents to plaintiffs.  12/10/07 Rifkin Decl. ¶ 8.

Defendants' intentional delays in discovery, and in complying with the Magistrate Judge's orders, show little regard for this Court's clear direction in its October 10, 2007 scheduling order that proceedings in this urgent case be pursued in an expedited manner. Defendants' actions threatened the Magistrate Judge's ability to conduct discovery proceedings in an expedited fashion, and have resulted in the inefficient use of judicial resources. Defendants' actions have caused substantial prejudice to plaintiffs because depositions are scheduled to begin during the week of December 10, 2007, and defendants have not complied with the Court's order to produce the documents from the privilege logs to plaintiffs, and have also failed to meet the terms of the parties' Joint Stipulation to produce all non-privileged responsive documents to plaintiffs by November 30, 2007.[12]  Defendants' obstructionist actions should not be tolerated, and are sanctionable, pursuant either to Rule 37 or as an exercise of the court's inherent powers "to achieve the orderly and expeditious disposition of cases."  *See Unigard Security Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (*qu*oting *Chambers v. NASCO, Inc*., 501 U.S. 32, ----, 111 S.Ct. 2123, 2132 (1991)); *see also Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974).   Appropriate sanctions should

---

[12] During the December 6, 2007 hearing, plaintiffs also learned that defendants secretly filed a request for a five day stay of any order the Magistrate Judge might make regarding plaintiffs' motion to compel the production of documents claimed as privileged.  Defendants apparently designated this document to be filed under seal, and have never served a copy on plaintiffs, despite the Magistrate Judge's finding during the hearing that the document should have been served on plaintiffs as well.  Transcript at 2:9-23; 12/10/07 Rifkin Decl. ¶ 10.  This improper motion for a stay was denied by the Magistrate Judge.  12/7/07 Order at 18.

1  include a finding that Defendants' privilege claims with respect to these documents are deemed

2  waived, monetary sanctions, or other sanctions the Court may deem appropriate in this case.

3  *See* Rule 37(b)(2).

## CONCLUSION

5       Plaintiffs request that the Court deny Defendants' Motion for Reconsideration, and take

6  appropriate measures to ensure compliance with the Magistrate Judge's discovery order.

Dated: December 10, 2007                    Respectfully submitted,


                                            */s/ Lori Rifkin*
                                            _____
                                            Lori Rifkin
                                            Rosen, Bien & Galvan
                                            Attorneys for *Coleman* Plaintiffs and on behalf
                                            of *Plata* Plaintiffs