1  PRISON LAW OFFICE
   DONALD SPECTER Bar No.: 83925
2  STEVEN FAMA Bar No.: 99641
   E. IVAN TRUJILLO Bar No.: 228790
3  General Delivery
   San Quentin, California  94964
4  Telephone: (415) 457-9144

5  ROSEN, BIEN & GALVAN, LLP
   MICHAEL W. BIEN Bar No.: 096891
6  JANE E. KAHN Bar No.: 112239
   AMY WHELAN Bar No.: 215675
7  LORI RIFKIN Bar No.: 244081
   SARAH M. LAUBACH Bar No.: 240526
8  315 Montgomery Street, 10th Floor
   San Francisco, California  94104
9  Telephone: (415) 433-6830

10 THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
11 CLAUDIA CENTER Bar No.: 158255
   LEWIS BOSSING Bar No.: 227402
12 600 Harrison Street, Suite 120
   San Francisco, CA  94107
13 Telephone:  (415) 864-8848

14 Attorneys for Plaintiffs

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

15           IN THE UNITED STATES DISTRICT COURTS

16           FOR THE EASTERN DISTRICT OF CALIFORNIA

             AND THE NORTHERN DISTRICT OF CALIFORNIA

17   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

18      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

19 RALPH COLEMAN, et al.,                    )  No.:  Civ S 90-0520 LKK-JFM P
                                             )
20          Plaintiffs,                       )  **THREE-JUDGE COURT**
                                             )
21     vs.                                    )
                                             )
22 ARNOLD SCHWARZENEGGER, et al.,             )
                                             )
23          Defendants                        )
                                             )
24 MARCIANO PLATA ,et al.,                    )  No. C01-1351 TEH
                                             )
25          Plaintiffs,                       )  **DECLARATION OF LORI RIFKIN IN**
        vs.                                   )  **OPPOSITION TO DEFENDANTS'**
26                                            )  **MOTION FOR RECONSIDERATION**
   ARNOLD SCHWARZENEGGER, et al.,             )  **AND/OR STAY AND IN SUPPORT OF**
27                                            )  **REQUEST FOR SANCTIONS**
        vs.                                   )
28          Defendants                        )

I, Lori Rifkin, declare:

1.    I am a member of the Bar of this Court and an associate in the law firm Rosen, Bien & Galvan, LLP, one of the counsel of record for the *Coleman* Plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify.  I make this declaration in support of Plaintiffs' Opposition to Defendants' Motion for Reconsideration and/or Stay and Request for Sanctions.

2.    Attached hereto as **Exhibit A** is a true and correct copy of the court reporter's transcript for the December 6, 2007 hearing regarding plaintiffs' motion to compel production of documents in this case.

3.    Magistrate Judge Moulds ordered that "[o]n or before 12:00 p.m. on December 7, 2007, defendants shall produce to counsel for plaintiffs all documents which have been withheld on grounds of privilege set forth in privilege logs produced on November 9, 2007, November 16, 2007, and November 23, 2007."  12/7/07 Order at 17:17-19.

4.    To date, defendants have not produced a single document to plaintiffs in response to this order.  Defendants' counsel Charles Antonen informed me at approximately 2:00 p.m. on December 7 that defendants would not comply with the Magistrate Judge's order.

5.    As of the filing of plaintiffs' motion to compel on November 30, 2007, defendants had produced three out of a current total of five sets of privilege logs.  Those logs totaled approximately 1,000 pages of logs corresponding to, in plaintiffs' estimation, more than 10,000 documents.  Defendants have now produced two additional privilege logs.  These five sets of logs show that defendants have now produced more than 2,500 pages of privilege logs corresponding to an estimated more than 25,000 documents.  In comparison, defendants have produced only approximately 12,000 documents to plaintiffs.  Plaintiffs estimate that the number of pages withheld to date is now totals more than 150,000.  Defendants have produced approximately 209,000 pages to plaintiffs.

6.    The Magistrate Judge advised defendants prior to the December 6, 2007 hearing in a telephone conference held on November 29, 2007, the day after defendants' submission of the privilege logs to the Court that, should defendants wish to update or revise the privilege

logs before his consideration of the matter, they should do so in advance of the December 6, 2007 hearing. Defendants did not submit revised privilege logs.

7.     Defendants have stalled and abused the discovery process at every turn. They have withheld more than 25,000 documents totaling approximately 150,000 pages as privileged, and have not fulfilled their obligations to meaningfully assert these privileges on a document-by-document basis. Defendants refused plaintiffs' requests to update their lengthy privilege logs to eliminate frivolous assertions of privilege and to provide sufficient information to narrow the privilege dispute before this Court. Even after defendants acknowledged that there were obvious mistakes and deficiencies in the logs, they did not act to correct or update the logs. They largely ignored, until forced by order of the Magistrate Judge, entire sets of requests for production by plaintiffs. For almost a month, defendants ignored clear orders to submit documents for which they asserted privilege to the Court for *in camera* review, and when the Magistrate Judge renewed his order, they again failed to comply for another week. Only after order by this Court did defendants finally submit these documents to the Magistrate Judge, limiting the Court's time to conduct *in camera* review of these 10,000 documents to one week.

8.     Defendants have also violated the terms of the parties' Joint Stipulation to produce all documents responsive to plaintiffs' discovery requests by November 30, 2007. In fact, out of approximately 207,000 electronic pages of discovery produced to plaintiffs by defendants (separate from those documents identified in the privilege logs), defendants waited until December 7—one week after the November 30, 2007 deadline—to send nearly 130,000, or more than sixty (60) percent, of those pages to plaintiffs. Plaintiffs received most of those documents on December 10, 2007, the same week depositions are scheduled to begin. The documents still have to be processed by plaintiffs' document vendor which, given the huge volume, may take several days. Defendants unreasonably, and without explanation, delayed their production of these documents to plaintiffs.

9.     In their briefs, defendants misrepresent the efforts plaintiffs have made to meet and confer about defendants' privilege logs and the documents contained within them. In

addition to conducting numerous telephonic meet and confers, and providing defendants with written examples of deficiencies in their privilege logs, plaintiffs' counsel Sara Norman met and conferred in person with defendants' counsel Paul Mello on December 3 and 4, 2007. Over the course of these two days, Ms. Norman and Mr. Mello discussed hundreds, if not thousands, of insufficient or plainly erroneous entries in defendants' privilege logs.

10.    During the December 6, 2007 hearing, plaintiffs also learned that defendants secretly filed a request for a five day stay of any order the Magistrate Judge might make regarding plaintiffs' motion to compel the production of documents claimed as privileged. Defendants apparently designated this document to be filed under seal, and have never served a copy on plaintiffs, despite the Magistrate Judge's finding during the hearing that the document should have been served on plaintiffs as well.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration is executed this 10th day of December 2007 in San Francisco, California.

_____/s/ Lori Rifkin_____
Lori Rifkin

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

RALPH COLEMAN, et al.,           ) Case No. 2:90-cv-00520-LKK-JFM
                                 )
                    Plaintiffs,  )
                                 ) Sacramento, California
        vs.                      ) Thursday, December 6, 2007
                                 ) 2:15 P.M.
SCHWARZENEGGER, et al.,          )
                                 ) Status conference re:
                    Defendants.  ) privilege logs and plaintiff's
_____  ) motion to compel.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN F. MOULDS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Coleman Plaintiffs:          LORI E. RIFKIN
                                 Rosen, Bien & Galvan, LLP
                                 315 Montgomery Street 10th Floor
                                 San Francisco CA   94105
                                 (415) 433-6830

For Plata Plaintiffs:            SARA NORMAN, Staff Attorney
                                 Prison Law Office
                                 General Delivery
                                 San Quentin, CA   94964
                                 (415) 457-9144

For Coleman Defendants:          LISA A. TILLMAN
                                 Attorney General's Office
                                 1300 I Street, Suite 125
                                 Sacramento, CA   95814
                                 (916) 324-5388

For Plata Defendants:            CHARLES J. ANTONEN
                                 Attorney General's Office
                                 455 Golden Gate Avenue
                                 Suite 11000
                                 San Francisco, CA   94102
                                 (415) 703-5500

11

APPEARANCES (Cont.):

Court Recorder:                    (UNMONITORED)
                                   U.S. District Court
                                   501 I Street, Suite 4-200
                                   Sacramento, CA   95814
                                   (916) 930-4193

Transcription Service:             Petrilla Reporting &
                                      Transcription
                                   5002 - 61st Street
                                   Sacramento, CA   95820
                                   (916) 455-3887

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1

<u>SACRAMENTO, CALIFORNIA, THURSDAY, DECEMBER 6, 2007, 2:15 P.M.</u>

2

3    THE CLERK:  Calling Civil Case 90-520-LKK, Coleman v.

4    Schwarzenegger.  This is on for status conference regarding

5    privilege logs and plaintiff's motion to compel.

6    MS. RIFKIN:  Lori Rifkin for Coleman plaintiffs.

7    MS. NORMAN:  Sara Norman from the Prison Law Office

8    for Plata plaintiffs.

9    MR. ANTONEN:  Charles Antonen for Plata defendants.

10    MS. TILLMAN:  Lisa Tillman for the Coleman

11    defendants, Your Honor.  Good afternoon.

12    THE COURT:  Good afternoon.

13    At the outset, I'd like to make certain that we're

14    all talking about the same set of documents today.  This is in

15    connection with the motion to compel production of a number of

16    documents reserved by the defendants under various claims of

17    privilege and those documents are part of a production which

18    has been subject to an agreed rolling production of documents.

19    The productions that I believe are before the Court

20    today are the ones on November 9th, 13th, and 21st or 23rd, and

21    the privilege logs and other documents served therewith.

22    Since that time, there has been an additional

23    production on November 30th, and I believe there's one more

24    production scheduled for December 7th.

25    Am I describing the universe as counsel understand it

2

1   at this point?

2        MS. RIFKIN:  There is one additional production

3   that's covered, that November 1st and 2nd, the privilege logs

4   were produced November 9th.

5        THE COURT:  But you're speaking of all of the

6   documents produced which were subject to the November 9th

7   production, correct?

8        MS. RIFKIN:  Yes.

9        THE COURT:  Okay.  There was a filing which I

10  received from defendants bearing the date of November 28th,

11  2007 and containing a declaration of Mr. Antonen.  That filing

12  was executed by -- purports to have been executed by you, Mr.

13  Antonen, on November 28th.

14        It says it was to be filed under seal, and it was,

15  among other things, requesting a stay of this Court's -- of any

16  order this Court might make until five days from the date of

17  the decision.

18        Was that served on -- was that served on plaintiffs,

19  even though designated to be filed under seal?

20        MR. ANTONEN:  No, it was not, Your Honor.

21        THE COURT:  I couldn't see any reason in that

22  document why it should not have been served on the plaintiffs

23  as well.

24        MR. ANTONEN:  We can serve it on plaintiffs, Your

25  Honor.  The declaration was requested by the Court, and so as

3

1    to -- with respect to, I believe, the -- providing --

2        THE COURT:  This had to do with the manner in which

3    the production was made, that is electronic, rather than paper.

4        MR. ANTONEN:  Correct.

5        THE COURT:  Do you have a copy of that now that you

6    can provide to plaintiffs?

7        MR. ANTONEN:  I do not, Your Honor.

8        THE COURT:  I believe the ball is in plaintiff's

9    court.  Do plaintiffs wish to be heard?

10       MS. RIFKIN:  Yes, we do, Your Honor.

11       Your Honor, the vast bulk of the documents that are

12   at issue with the privileged documents being withheld

13   are -- have been asserted to be withheld according to the

14   deliberative process, and other qualified privileges.

15       Defendants have not made the threshold showing that

16   they need to make in order to assert and establish these

17   privileges.  There is no meaningful reason by the agency

18   had -- who submitted declarations, which is required by law,

19   and by the very cases defendants cite in their briefing.

20       Defendants' privilege logs are also clearly

21   inadequate.  The numbers of documents in these logs that are

22   missing crucial fields, missing information, is staggering.

23   Defendants have repeatedly refused to narrow these logs, or to

24   update these logs.  In fact, in defendants' briefing, they

25   admit that the privilege logs are inadequate.

4

1      Second, even if the Court were to look beyond the

2   inadequacy of the assertion of privilege by defendants here,

3   defendants have put their decision-making and their

4   deliberative processes squarely at issue in this case.

5      Defendants have primarily raised the defense that

6   their administrative failings, rather than overcrowding are the

7   cause of the constitutional violations.

8      On the other hand, the defendants have also said that

9   their administrative remedies will be enough to remedy these

10  constitutional violations such that the three judge court

11  should not issue a prisoner release order.

12      So on the one hand defendants are saying our

13  incompetency is the reason; on the other hand, we will be a

14  constant.  This puts the decisions made by these agencies, the

15  interplay of these decisions of these agencies, whether these

16  decisions are being financed, or adequately financed squarely

17  at issue in this case.

18      So plaintiffs have made the showing that even were

19  some of these documents to fall under the deliberative process

20  privilege, that privilege should be overcome in this case where

21  deliberation is at issue, where the need is -- couldn't be

22  greater in this case, and the public interest shows that this

23  is needed.

24      Based on those, plaintiffs request that defendants

25  produce all of the documents in these logs.  We've made this

5

1    request, and we have -- we can offer the Court a number of

2    reasons why this production is reasonable in this case.

3    Defendants -- plaintiffs have been asking defendants for more

4    than a month to narrow these logs so we can talk more

5    meaningfully about the issues, but defendants have not.

6         Now we're at a time where we're two weeks before the

7    cutoff for discovery.   Depositions are happening next week.

8    We're asking for production, but what we also have, as we

9    explained in our briefing, is a clawback agreement that we've

10   executed because defendants asked us to.

11        So defendants should turn over all the documents to

12   us, and if there are documents that they wish to identify, that

13   that will be -- fall under the attorney/client privilege, for

14   example, then they have clawback, so they can place those

15   documents at issue rather than the more than 10,000 documents

16   that they have currently placed at issue, and have attempted to

17   shift their burden to establish the privilege to plaintiffs and

18   to this Court.

19        Plaintiffs have repeatedly provided examples of

20   categories of documents asserted throughout these privilege

21   logs that do not fall under privilege, and defendants have not

22   responded to these at all.   We've asked them to provide

23   concrete examples of attorney/client privilege so that if those

24   are valid, and we think that they're valid, that we can take

25   them off the table, but we haven't been able to do so.

6

          So, what we're proposing is the most reasonable
solution given where we are right now, and defendants have a
protection under the solution we're proposing.

          THE COURT:  Thank you, counsel.

          Defendants wish to be heard?

          MR. ANTONEN:  Yes, Your Honor.  Plaintiffs in their
papers point to a handful of documents that within the entire
amount of the document production amounts to less than one
percent.  I have reviewed the specific documents listed by
plaintiffs and we are supplementing our productions this Friday
with several of the documents that plaintiffs' raised concerns.

          Defendants understand that the privilege logs may not
provide the sufficient detail that plaintiffs requested,
however, in the document production of this size defendants
have done the best that we can.  I know plaintiffs have raised
concerns about authors and recipients.  Early on --

          THE COURT:  Well, counsel --

          MR. ANTONEN:  I'm sorry.

          THE COURT:  -- let's start from a different point.
With regard to the deliberative process privilege, my
recollection of the declarations which were filed speak of some
documents, I believe the term used in each of the declarations
is "certain documents" were maintained in a confidential
manner, and therefore the declaration goes on to spell out that
these must be subjected to the deliberative process privilege.

7

1    The term "certain documents" of course, doesn't tell

2  you which documents, and "confidential procedures" doesn't

3  describe what was done to keep the documents confidential.  So

4  I'm approaching this with the apparent consequence of the

5  declaration as being that these do not involve circumstances in

6  which the documents were reviewed by the head of the agency, or

7  the substitute for the head of the agency who made the

8  declaration.

9    Am I correct in that?

10    MR. ANTONEN:  You are correct, Your Honor.  Due to

11  the document production volumes of this size, the heads of the

12  agencies were not able to review each of the documents that

13  we -- that defendants have claimed as deliberative process.

14    THE COURT:  Did they look at any?

15    MR. ANTONEN:  Prior to the -- providing the

16  declarations, we've reviewed -- we met with the heads of the

17  agencies to discuss the categories of documents that were kept

18  in a confidential manner, and discussed the types of documents

19  and the -- that are subject to the deliberative process

20  privilege that defendants would be claiming deliberative

21  process privilege on.

22    In those meetings, I understand documents were

23  reviewed --

24    THE COURT:  You weren't there?

25    MR. ANTONEN:  I was not there, Your Honor.

8

1         THE COURT:  Okay.  I have another concern, I must

2  tell you, the -- earlier in this proceeding, Ms. Tillman

3  explained to the three-judge court that the defendants were

4  going to show why they could take care of what everybody

5  recognizes as a problem.  And I trust nobody here is

6  challenging the fact that the Governor of the State of

7  California declared this to be an emergency, an emergency that

8  needed to be dealt with.

9         But Ms. Tillman was indicating that one of the ways

10  in which this case would be defended was by showing how in the

11  roll-out of AB 900 you -- the defendants were going to be

12  meeting the needs of the prisoners, and the problems with the

13  violations of their constitutional rights, which have been

14  found to happen in both Plata and Coleman.

15         I'm not for a moment disputing her right to attempt

16  to show that in this case, but it would seem to me if I granted

17  the deliberative process privilege you're seeking with all

18  these documents, particularly since I received supplemental

19  declarations showing how important some of these documents were

20  in the roll-out of AB 900, wouldn't I just be tying your hands

21  completely in the defense of this case because you can't defend

22  it along those lines without waiving the -- any deliberative

23  process privilege you might have left.

24         MR. ANTONEN:  Well, the issue as I see it, Your

25  Honor, is that we are amenable to providing plaintiffs with the

9

final decisions that we've reached with respect to AB 900, with respect to the roll-outs.  We have been providing those documents relating to the final decisions reached, and that is how we will be defending this case.

THE COURT:  But that's not the way those, for instance, the Department of Finance documents read.  They indicate -- they announce the position of the Executive Branch, and how in this one situation funds were being withdrawn from a project in order to implement various procedures required by Coleman.

MR. ANTONEN:  I'm not familiar with that particular document, Your Honor.

THE COURT:  Okay.

MR. ANTONEN:  I'm sorry.

THE COURT:  Well, the -- well, maybe I should stop interrupting you and let you go ahead.

MR. ANTONEN:  Again, as I was saying, the defendants are amenable, and have been providing through the aggressive rolling production schedule final documents that defendants have reached regarding AB 900, with respect to the other documents that are subject to plaintiffs' discovery requests.

Plaintiffs -- the drafts, the revisions, the discussion are covered within the deliberative process privilege as the cases cited by defendants show that they're -- in a document production of this size, under this

10

schedule, leniency and flexibility should be employed with
respect to the privilege logs.

And that being said, if there's an issue with
deliberative process, it does not necessarily entail that the
attorney/client privilege, attorney work product privilege,
official information privilege, and privacy rights should be
also waived.

THE COURT: Well, counsel, on the attorney/client
privilege, looking at the privilege logs, I can't tell who the
client is. I can't tell who's seen the documents. I don't
know to whom they've been shown, and frankly, I'm substantially
disturbed the fact that privilege was claimed for documents
filed with this Court, privilege was claimed for a letter from
the Coleman master -- excuse me, mediator -- the Coleman
mediator to the defendants, and I trust Mr. Keating would not
contend that anybody from defendants was his clients for
purposes of that letter.

It just appears that every time anybody who might
have gone to law school appeared on a copy of a document,
perhaps in the "cc" list, or otherwise, that that -- that
somebody in your operation decided to call that an
attorney/client privilege document, plus the fact that the
privilege log doesn't give -- perhaps I'm too simple minded,
but it didn't give me any idea of what I would do to challenge
it if I were in the plaintiffs' position.

11

1    The -- it may well be that I've seen more of these

2    documents than anybody else in this courtroom, with the

3    possible exception of my staff attorney in this matter, Ms.

4    Gracie.

5    But we looked at something between 5 and 10 percent

6    of these documents, and by the time I had finished looking

7    through the selection of documents which had been claimed for

8    an attorney/client privilege, I was quite amazed to find that I

9    hadn't seen a document that looked like a privilege document,

10    and I've always thought of myself -- particularly since I used

11    to defend criminal cases as part of my time in private

12    practice, I had always thought I was relatively sensitive to

13    attorney/client privileged matters, because that goes with that

14    territory.

15    I -- well --

16    MR. ANTONEN:  Your Honor, the issue is, is that there

17    is a very aggressive rolling production schedule.  Defendants

18    have spent over 5,000 hours reviewing and privileging these

19    documents.  How -- if circumstances were different, would

20    different decisions have been made?  Maybe.

21    But unless there's an extension of the hearing date,

22    discovery is continued, there's no good answer for this, and

23    the handful of -- concerning documents that plaintiffs have

24    raised and which defendants have actually agreed to on

25    privilege with respect to that letter of -- respect to the

12

special master, defendants are providing that to plaintiffs
this Friday.  Defendants have been concentrating on providing
plaintiffs with documents.

THE COURT:  Well, they probably got a copy of it, by
the way, years ago, but --

MR. ANTONEN:  I understand, Your Honor, and in most
of these cases, actually, plaintiffs do have most of the
documents.  This is not a new case.  I's been going on since
1990.  So it's not --

THE COURT:  I've been here since that case
started --

MR. ANTONEN:  Right.

THE COURT:  -- let me tell you

MR. ANTONEN:  But again, a few isolated instances
does not warrant the wholesale waiver of defendants'
privileges.  Defendants, again, are willing to revisit the
privilege log issue, however, defendants have been occupied
reviewing and producing documents to plaintiffs.  Now the
production schedule is rolling down, defendants are willing to
revisit this issue again.

If the plaintiffs would like to seek an extension
from the three-judge panel to continue the hearing date so we
can resolve these privilege issues, that may be the most
appropriate course of action to proceed.

THE COURT:  Thank you, counsel.  Anything further for

13

the plaintiffs?

MS. RIFKIN:  Yes, Your Honor.

First I'd like to address the legal requirement for asserting the privilege.  Even before we get to the point of talking about specific documents, there are legal prerequisites to asserting privilege.  What we just heard defendants say is that they cannot guarantee that any of these agencies have reviewed a single document in these logs.

How the case says defendants' right to say that in large document productions this isn't necessary, actually refers to a case by the same court that emphasizes that due to the narrowness of these qualified privileges, and the fact that they withhold things that the government does from the public, they should be exercised with extreme caution.

That case demands that the head of the agency review these documents or give specific instructions for reviewing these documents.  That case also specifically says that government attorneys cannot be deputized to assert this privilege on behalf of the agencies.  It needs to be people from the agency heads that cases.  Pierce it's referred to in the Amoco case defendants cite to.

What we have here per the declarations of defendants are lawyers and, in fact, paralegals deciding which documents to assert the deliberative process privilege, which he case law very specifically states should be asserted with extreme

14

1    caution and in very narrow circumstances.  This clearly has not

2    been done in this case, and this case is one of the utmost

3    public interest.

4         The second requirement, Mr. Antonen refers to the

5    size of the -- the volume of documents withheld here.  So the

6    first point, obviously is that the size of the documents held

7    is within defendants' control.  They have decided to withhold

8    tens of thousands of documents at this point.  If defendants

9    could just claim privilege for a number of documents and then

10   say that says that then they don't have to provide the reasons

11   for this, defendants in every case would choose to claim

12   privilege over large numbers of documents.

13        The second part of this is that the cases that

14   defendants cite state that if defendants feel that due to the

15   volume of the production providing proper assertions of

16   privilege would be unduly burdensome.  The proper approach is

17   to ask for a protective order from this Court.

18        Defendants have not done so here, and in case one

19   of -- one of the cases that they cite talks about defendants

20   coming in too late with this -- with the argument of being

21   unduly burdensome, but it's too late once a motion to compel

22   has been raised.  That's something that defendants have the

23   responsibility to do at the forefront of this, because they are

24   the ones affirmatively deciding to assert privilege in these

25   cases.

15

1    So the legal requirements here, to even talk about

2    negotiating on these documents have not been met.  The

3    privilege logs are insufficient.  There has not been agency

4    review.

5    The -- another point that I'd like to address is not

6    just whether defendants are trying to use these documents to

7    support the defenses that they've raised, but the fact that

8    plaintiffs need these documents in order to address the

9    defenses that defendants have raised.

10    They have made these defenses in answers to

11    interrogatories and in the briefing already before the three-

12    judge panel.  In order to be able to talk about that, in order

13    to be able to examine whether these contentions are true,

14    plaintiffs need these documents, and they're clearly relevant

15    to the case at hand.

16    So it's not just a question of whether defendants

17    will be using these documents, but a question of whether

18    plaintiffs need these documents in order to present an accurate

19    picture in front of the Court.

20    I'd also like to just briefly address the statements

21    that plaintiffs' have most of these documents already, or some

22    of these final budget change proposals have been produced while

23    others have been withheld.

24    One of the legal questions determining whether

25    privilege has been waived is if these types of documents have

16

already been produced to the party in this case.  What I understand defendants to be saying is that may of these documents, or at least categories like them have already been produced to plaintiffs, which legally means that they shouldn't be continuing to assert privilege over these because they've already waived that privilege.

Ultimately what we have here is a case where plaintiffs have given examples to defendants of problematic assertions in their privilege logs.  It is not plaintiffs' burden to establish on a document-by-document basis why they aren't privileged.  It's defendants' burden to establish on a document-by-document basis why they are privileged.

In good faith, plaintiffs gave examples of categories of documents after the first privilege log.  The first privilege log was produced almost a month ago.  It gave 20 categories of examples.  Defendants did not respond to a single category, or even to a single document until two minutes before this hearing.

Plaintiffs have in good faith tried to alert defendants, tried to raise defendants to -- defendants' awareness of the documents that shouldn't be in these logs so we could talk about what's actually at hand in this case and defendants have refused over and over again to narrow these logs.

At this point, again, plaintiffs ask for production of the

17

1    entire document set.  We take issue with defendants' position

2    that there is no good solution here.

3            At this point, we feel that the solution we've asked

4    for, which is to produce all the documents, there's a clawback

5    provision in place for any documents, if there are any, that

6    fall under valid attorney/client privilege.  We have that

7    clawback.  We're offering to have that put into play, but given

8    the short time period, we think that's the reasonable option.

9            We're not going to ask the three-judge panel to

10   extend our hearing on this matter that is urgent, in fact,

11   it's -- based on the Governor's responses in our

12   interrogatories, the crisis, the overcrowding crisis continues

13   unabated.  We have no desire to delay a remedy for the classes

14   of our client who are suffering in these prisons everyday.

15           Defendants have already told us that they do not have

16   time to review the privilege logs, or to go back and review any

17   of these documents.  Given the fact that they've stated that,

18   we're willing to review the documents and we need to do so in

19   order to be able to present the best case for our clients, and

20   the case that's most factually accurate to this Court.

21           THE COURT:  Thank you.  Is the matter submitted?

22       (No audible response.)

23           THE COURT:  All right.  I will send you a written

24   order shortly, but because this requires that everybody move a

25   pace, I'm going to give you an outline of what the written

18

1  order will say so that the parties may begin to prepare for

2  what it is you wish to do next.

3          With regard to the deliberative process privilege,

4  and the official information privilege, which the defendants

5  combined with the deliberative process privilege in their

6  discussions, the claim of privilege is overcome for two equal,

7  and both and equally effective reasons.

8          First, the declarations establishing the claim simply

9  did not meet the legal requirements of a claim of deliberative

10  process.  Nothing was spelled out about the manner in which the

11  documents were held no -- there was no reference to tie the

12  documents to a review by the official making the declaration.

13  In fact, the lack of such contact appears to be conceded.

14          But further, or additionally, and entirely

15  separately, the -- it appears that the manner in which this

16  case is to be defended will inevitably involve material which

17  would constitute a waiver of the -- of any claim of

18  deliberative process.

19          With the -- in connection with the attorney/client

20  privilege, neither the attorney/client privilege nor the work

21  product protection were established by defendants, and those

22  claims will not be allowed for this group of documents.

23          With regard to the claims of privacy, the documents

24  will also be ordered released, but they will be ordered

25  released subject to a protective order and the protective order

1   will be that without further order of this Court, or the three-

2   judge Court, no reference shall be made to any -- to the names

3   of any persons mentioned in the documents for which a claim of

4   privilege has been made, and no personal information, such as

5   social security numbers, addresses, e-mail addresses,

6   contractor's license number, inmate ID numbers or the like will

7   be made by any member of plaintiffs' lawyers' staff to any

8   person, and no such information will be made a matter of this

9   Court's record without prior order of this Court, or the three-

10  judge Court.

11          There was a request for a stay, which was filed in

12  camera.  I'm not going to entertain long argument about that at

13  this time.  It was not served upon the plaintiffs, but I don't

14  think my disposition of that matter will be a matter of major

15  concern to plaintiffs' counsel, and if it is, you can request

16  that I reconsider it, I suppose.

17          But the five day, request for a five-day stay will be

18  denied.  The documents are to be delivered by 12:00 o'clock

19  tomorrow if a request for reconsideration is to be made by the

20  plaintiffs -- excuse me, by the defendants, it shall be made to

21  the three-judge court and not to this Court.  I do not intend

22  to modify the order.

23          And I would caution you all, I'd assume it's clear to

24  everybody, but the order of this Court is to be followed.  It

25  is not automatically stayed by a filing with the Court which

20

reviews this Court.  So if any stay is to be granted, it's to be granted by the three-judge Court and not here.

I think that covers all of that matter, although we had one other matter concerning future scheduling of this case, which we should probably get to.

MR. ANTONEN:  Your Honor, may defendants be heard?  With respect to the protective order that you verbally ordered, without waiving any objections to the verbal order from the Court, defendants request that the protective order apply to all documents and that anything released under this privilege be used for only this case, and this case alone, and again, this is without waiving any objection to the final order from the Court.

But to the extent we would request the protective order apply to every document, yeah, and limit it to only this case.

THE COURT:  Well, the protective order, which I mentioned, and you've had reference to, went into more detail on matters concerning privacy.  The -- that protective order will remain with that class of documents.

If you are asking for an all purpose protective order that these -- the use of these documents be limited to this litigation, the first question is whether you're talking about the there-judge case, or whether you're talking about Coleman, Plata, and the current litigation.

21

1    MR. ANTONEN:  This would only be for the three-judge
2  panel proceeding, Your Honor.

3    THE COURT:  I'm not sure that there's any objection.
4  I'm going to check with plaintiffs.  I can't think of any
5  particular objection to such an order, which is limited to the
6  three cases that are a part of the pleading here, because
7  otherwise, among other things, we're going to meet ourselves
8  coming around the bend, you know it, since there are also
9  proceedings in place implementing both Coleman and Plata.

10    Anyway, your request is that it be limited to this
11  case.

12    MS. TILLMAN:  To the three-judge proceeding.

13    MR. ANTONEN:  To the three-judge proceeding, Your
14  Honor.

15    THE COURT:  Did plaintiffs wish to be heard?

16    MS. RIFKIN:  We do, Your Honor, and we do object.  If
17  defendants wish to propose a protective order, they can propose
18  it to us, we can negotiate it, we can discuss it, it's a little
19  late in the game.

20    I don't think that protective order is really related
21  to the validity of their assertions of privilege.  Nothing else
22  they've produced in this case is subject to such a protective
23  order, it's not clear to me why these documents should either.
24  The arguments have already been made and decided upon as to
25  whether they asserted privilege, and they haven't.

22

THE COURT:  All right.  Your point is a good one.
This matter was scheduled today for the hearings which are
before the Court, and I've decided them, and that's where that
will stand.  If you wish further orders, they're to be made on
motion.

MS. RIFKIN:  Your Honor, may I ask a question to
clarify the order about this case, the privilege -- the
production of privileged documents?

Will your order apply to the productions that are
forthcoming this Friday as well?

THE COURT:  No.

MS. RIFKIN:  Okay.

THE COURT:  No, I haven't seen those.  I can't make a
finding regarding them, counsel.  That's one of the reasons I
clarified the situation at the start.  I would -- I have this
faint hope that perhaps you can all discuss what should happen
with the December 7th production based upon what happened
today, but I have no reason to believe this, so the future is
going to be the same as the past.  Even if I did, it wouldn't
be my place to make that order at this time.

Now, what is it we're talking about with regard to
the matters of scheduling that you were all talking about
yesterday while I was on the plane home from San Antonio?

MS. RIFKIN:  Your Honor, during our last hearing on
November 19th, plaintiffs requested that defendants be ordered

23

1    to run additional searches for documents responsive to

2    plaintiffs' discovery requests and be ordered to produce

3    documents based on those searches.

4        That resulted in an order for plaintiffs to produce a

5    list of alternative search terms to defendants, and to

6    defendants -- and for defendants to run those searches on a

7    test group of individuals and to produce the search results,

8    not the documents, but the search results to this Court and to

9    plaintiffs.

10       That was done.  Plaintiffs have asked defendants to

11   produce the documents based on that search and to run the

12   additional searches on the rest of their custodians.

13   Defendants have refused to do so.  Plaintiffs wish to move to

14   compel the production of those documents and that the

15   additional searches be run.  Defendants have refused.

16       At this point, plaintiffs feel that the issues have

17   been briefed, and want to bring this before the Court as soon

18   as possible, and are prepared -- yesterday we told defendants

19   we were prepared to file a motion to compel yesterday.

20       And after talking to the Court's staff attorney, have

21   delayed in that based upon our discussions today, we're

22   prepared to file a motion to compel immediately, and would like

23   for that to happen as soon as possible.  We don't feel that

24   additional briefly is necessary.  We're prepared to submit it

25   on the papers.

24

1    But in any case, if briefing is necessary, suggest

2 that a joint -- suggest that statements be filed simultaneously

3 on a very short turnaround, because there haven't been -- there

4 haven't really been new developments.

5    THE COURT:  Defendants wish to be heard?

6    MR. ANTONEN:  Yes, Your Honor.  Plaintiffs need to be

7 filing a motion on this.  The motion is not presently before

8 the Court on this issue, briefing is not before the Court on

9 this issue.

10    To the extent -- there's only so much that defendants

11 can do.  To comply with the Court's orders to run additional

12 searches, to -- it reaches a point where it would -- we --

13 physically it's impossible to do anything more.

14    THE COURT:  Am I correct that you have a program

15 concerning duplication of documents which has not been run on

16 these documents?

17    MR. ANTONEN:  Your Honor, it's the technical -- how

18 to explain it was -- is that we ran the searches that

19 plaintiffs requested, we overlaid the documents that were

20 pulled in our original search.  When we pulled the original

21 documents -- when our original search was done, we de-duped a

22 cross-fed data set, and then we compared the overlay with what

23 the plaintiffs' search did.

24    However, we were not able to de-dupe within the

25 22,000 documents that were additional that plaintiffs had

25

1   located, because in order to do that required to extract the

2   text to run another process, and due to the Thanksgiving

3   holiday, due to the document production schedule, defendants

4   were not able to run that test.

5          Defendants are willing to run that to determine how

6   many documents are we actually talking about.  The defendants

7   are happy to provide it by Monday.  That is the earliest that

8   defendants can do it due to the rolling production schedule,

9   and the document production to plaintiffs this Friday.

10         THE COURT:  All right.

11         MR. ANTONEN:  And Your Honor, here is ongoing

12  negotiations on this topic, and so there -- we're not -- and so

13  it seems premature at this point, and that we need to

14  understand where plaintiffs are coming from, which request for

15  production does this relate to, what is the relief that they're

16  seeking?  There's a lot of questions that need to be answered.

17         THE COURT:  Well, the -- I'm not going to hear that

18  motion now without any briefing and also I'm not going to

19  schedule it.  The -- I think by early next week you ought to

20  have an idea concerning two things.  One is how far apart you

21  are with regard to this issue, and the other one is I would

22  hope that plaintiffs will have documents resulting from the

23  orders I'm making today.

24         And I think it's time in this production of documents

25  proceeding for you to look at it and say, what on earth have we

26

got, and see whether you -- in fact, there's anything more you

need.   I'm concerned about how this computer search developed.

A number of documents that frankly deserve a rest

from human eyes, because on your -- you have four very smart

people I'm looking at right here, and using up all of your time

in dealing with documents that have been floating around this

case for a while is not going to help anybody, and we ought

to -- well, it's entirely possible that there's material in

this production that will be of use to plaintiffs in the

presentation of the case, and these orders also, I think, give

defendants full latitude to present whatever case they have at

trial.

And if so, good luck to all of you, if that's not too

bias a hope.  But let's take a look at it an see where we are,

and see whether it's necessary to beat these computers to death

any further.

Now, I'm saying all this based on defense assertions

that they're engaged in a process to determine how many

documents might be affected by this, and the fact that there is

good faith ongoing negotiations between the parties.

I have no idea about -- Mr. Antonen, about your

proposal that people go to the three judges who are handling

the hearing in this case, and ask them for an extension of

time.  But it seemed to me as if they were pretty serious about

those dates when they set them.  I've been conducting these

proceedings as if they are very serious about it, and I believe

they are, although I have not had any independent discussions

with them on that question, and I do not intend to.

But I think we all have to live with the dates we've

got. And certainly, if anybody wants to continue this, this

ain't the Court to make those motions, it's not in my job

description. So, I will be prepared, if necessary, to hear

from you next week about where we go with further discovery in

this case. But I wish you all good luck in seeing whether you

can reach some kind of agreement.

In the meantime, we'll get the written order out to

you as soon as possible, but I trust you have an idea of where

this order is going. Thank you.

(Whereupon the hearing in the above-entitled matter was

adjourned at 3:00 p.m.)

--o0o--

CERTIFICATE

I certify that the foregoing is a correct transcript from

the electronic sound recording of the proceedings in the above-

entitled matter.


_____     December 8, 2007

Patricia A. Petrilla, Transcriber

AAERT CERT*D-113