FUTTERMAN & DUPREE LLP
MARTIN H. DODD (104363)
JAMIE L. DUPREE (158105)
160 Sansome Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
martin@dfdlaw.com
jdupree@dfdlaw.com

*Attorneys for Receiver*
Robert Sillen

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>*Defendants*. | Case No. CIV S-90-0520 LKK JFM P<br>(E.D. Cal.) |
| MARCIANO PLATA, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>*Defendants*. | Case No. C01-1351 THE (N.D. Cal.) |
| CARLOS PEREZ, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JAMES TILTON, et al.,<br><br>*Defendants*. | Case No. C 05-05241 JSW (N.D. Cal.) |

| | |
|---|---|
| JOHN ARMSTRONG, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>*Defendants.* | Case No. C 94-2307 CW (N.D. Cal.) |

**RECEIVER'S RESPONSE TO PARTIES' OBJECTIONS AND RESPONSES TO ORDER TO SHOW CAUSE RE CONSTRUCTION COORDINATION AGREEMENT**

*Plata* Receiver Robert Sillen (the "Receiver") submits this response to the parties' objections to and comments regarding the Construction Coordination Agreement ("CCA") attached to the Courts' Order to Show Cause, dated November 13, 2007. The Receiver requested, and the Courts granted him, the opportunity to respond to a number of factual statements, and to clarify the Receiver's position on several issues discussed, in the parties' responses to the OSC.

**Response To Certain Factual Statements Made By The Parties**

1.  Plaintiffs request that the Receiver be ordered to report to the Courts regarding this coordination agreement just as he is required to do with other coordination agreements. *Plata* Docket #s 974, 975, 976; *Armstrong* Docket # 1252; *Coleman* Docket #2565. The Receiver has always intended to do so. Simultaneously with his quarterly reports concerning the other coordination agreements, the Receiver will report on developments pertaining to the CCA. The next such report is currently scheduled to be filed on or about March 15, 2008.

2.  The Receiver indicated in the CCA that based on the demographic studies undertaken by Abt Associates, it appeared that "the majority of medical beds [to be] constructed will not be licensed." Plaintiffs' counsel has objected, based on the erroneous assumption that the Receiver is "side-stepping licensing laws in the construction, operation and management of these proposed facilities." *Plata* Docket # 973, p. 2. As Plaintiffs themselves acknowledge, not all "medical" beds need be licensed. *See id.* n.1. A significant number of what the Receiver has

referred to as "medical beds" will in fact be specialized housing and sheltered living for *Armstrong* class members, aged prisoners, etc. These beds do not require licensure. The Courts should rest assured that the Receiver will not construct and operate any facility mandated by State law to be licensed without obtaining the requisite licensing. The Receiver has no plans to seek a waiver of State licensing requirements for beds requiring such licensure.

3.  The *Plata* Plaintiffs assert that the Avenal construction plan was "finalized on August 28, 2007" without their input. *Id.*, p. 4. This is not accurate. The proposed plan may have been dated August 28, 2007, but it has not been "finalized." The Avenal plan was submitted for approval on November 15, 2007 as part of the updated Plan of Action ("POA"); the entire plan was attached as an exhibit to the POA. *See Plata* Docket #941. In addition, the Avenal plan was described in general terms in connection with the Receiver's Supplemental Application No. 2 for Order waiving State contracting statutes, etc., filed on November 20, 2007. *Plata* Docket #959. On November 30, 2007, the Court issued an order seeking comments from the parties concerning the Receiver's Avenal-related waiver application. *Plata* Docket #989.

Contrary to their assertion, therefore, plaintiffs will have at least two opportunities to comment upon the Avenal construction plan before it is finalized, approved and implemented. A similar process will be afforded plaintiffs concerning the Correctional Treatment Facility ("CTF") proposal. *See Plata* Docket #942. In addition, plaintiffs can discuss all pending projects with the Receiver and/or his Chief of Staff at the soon to be re-instituted 30-day meetings.

4.  Defendants request that the Courts order that the temporary and permanent construction at existing facilities (Construction Project #2) be ADA compliant. *See Plata* Docket # 977, p. 2 n. 2. While the Receiver did not expressly state that such facilities would be made ADA compliant, all accessibility requirements under state and federal law will be complied with in that construction.

5.  The *Coleman* Plaintiffs level criticism at Construction Project #2, apparently from the mistaken belief that the Receiver has assumed all responsibility for constructing mental health facilities at existing prisons. *See Coleman* Docket # 2565 (*Plata* Docket # 976), pp 3-4.

The Receiver has not assumed responsibility for such construction. The purpose of the CCA is to avoid, to the extent feasible, the potential for unnecessary duplication of effort and conflicts between construction projects for the various remedial plans, but it does not impose a requirement on the Receiver to undertake mental health-related construction at existing prisons. To the contrary, the CCA is explicit that "*when possible*, some of the additional space needs of the CDCR mental health and dental programs" will be "consider[ed]" by the Receiver in connection with the planned construction. Accordingly, the proposed plan for Avenal states that:

> Although the scope of work for the CPR at California's State Prisons does not include providing additional needed clinical or administrative space for the Mental Health and Dental components at the institution, Vanir has nonetheless been requested by the Receivership to coordinate with these departments and document any unplanned or unmet needs and to additionally determine how and if such needs can be integrated into the plans of the Receivership projects. The planning team has incorporated this request into the planning process and those needs that could appropriately be combined with the projects defined by the medical needs assessment have been included and accounted for within this Facility Master Plan.

Docket # 941, at p. 7. *See also* Docket # 942, at p. 9 (concerning CTF).

The Receiver will continue to cooperate with the *Coleman* Special Master and the court representatives in *Perez* and *Armstrong* in an effort to coordinate the planning, design, funding and implementation of construction necessary for the various remedial plans. Where possible the Receiver will endeavor to realize economies and minimize duplication and disruption by including construction for other remedial plans in connection with construction required for *Plata*.

**Clarification of Receiver's Position On Other Issues Raised By The Parties**

1. Defendants requested that CDCR be made the lead agency on the construction projects for purposes of the California Environmental Quality Act ("CEQA") (Cal. Pub. Resources Code, § 21000 *et seq.*). (*Plata* Docket #977, p.2). To address the request, the Receiver's Chief of Staff met with counsel for the Governor and the State officials responsible for the implementation of AB 900-related prison construction. The Receiver and the State agree that it will be important for several reasons to work closely and to coordinate CEQA issues in

connection with such construction. Determinations regarding who will function as lead agency are best made with reference to specific projects in mind, rather than in the abstract. The Receiver and the State will commence work on a Memorandum of Understanding ("MOU") concerning CEQA coordination and will, at the appropriate time, provide the MOU to counsel and the Courts. The Receiver and the State agree that there is no need for the Courts to resolve this issue at this point and that it need not delay approval of the CCA.

2.   The *Coleman* plaintiffs request that the Courts include in any order approving the CCA a requirement that the Receiver state, by a date certain, and with precision, what mental health related facilities he intends to construct, where he intends to construct them, and when they will be constructed. *Coleman* Docket # 2565 (*Plata* Docket # 976), p. 5. Plaintiffs' request is substantially premature and reflects a significant misunderstanding of the construction processes at issue. As indicated above, the Receiver has not assumed responsibility for mental health construction but may, as appropriate, be able to include mental health related construction in projects that he undertakes. Moreover, and in any event, the proposed construction projects are still largely at the concept stage. Siting, compliance with CEQA, permitting, and construction designs and drawings have barely commenced for these projects; no critical path has yet been established. Plaintiffs are entitled to, and will be provided, the information they request but it is not reasonably feasible for the Receiver to provide it at this early point in the process. The Receiver will apprise the Courts in his March 2008 quarterly report and subsequent reports as appropriate as to his best estimate for when he will be positioned to provide the level of detail requested by plaintiffs. The Receiver understands in this regard that earlier State submissions identified specific prison sites where proposed mental health facilities would be constructed, and that if alternative sites prove better suited, this issue must be brought before the *Coleman* Court.

The *Plata* and *Coleman* plaintiffs contend that, because the Receiver has consulted with CDCR personnel regarding the proposed construction projects, plaintiffs' counsel should be included at this point in the process of construction planning, development and design. *Coleman* Docket # 2565 (*Plata* Docket # 976), pp. 5-9; *Plata* Docket # 973, pp. 3-4. The Receiver asks the Courts to reject this request for several reasons.

1   First, as discussed above, plaintiffs' counsel have had, and will continue to have, opportunities to comment upon, object to or opine regarding such projects. They are free to discuss construction plans when they meet with the Receiver to discuss *Plata*-related issues; they receive and are entitled to comment upon the quarterly reports filed by the Receiver, including those that discuss construction-related developments; they have received and reviewed the most recent POA, which provides significant detail about the proposed construction projects; and they have received and have been given the opportunity to respond to the waiver applications the Receiver has submitted in connection with the projects. They are not on the sidelines.

Second, the Receiver has consulted with certain CDCR staff about the construction plans because it is CDCR that operates the prisons. The Receiver is not consulting with litigation counsel for CDCR and the State in connection with the various construction-related processes. There is no reason, therefore, why litigation counsel for plaintiffs should assume a direct role in the discussions and consultation pertaining to construction-related issues.

Third, the purpose of the CCA is to avoid duplication of effort and to realize efficiencies in planning, design and construction across remedial plans, not to subject the *Plata* Receivership to the various demands of plaintiffs' counsel in each of the pending cases before the Courts. The Receiver assumes that the *Coleman* Special Master and court representatives will undertake to ensure that, as construction moves forward, their respective remedial plan requirements are being met for the benefit of the class members in those cases.

Fourth, and related to all of the foregoing, the Receiver's tasks, including the construction of new and improved medical facilities, are complicated enough as it is. If the Receiver must vet each construction-related decision or plan with litigation counsel for the parties – who are not construction specialists – then the Receiver's remedial efforts will slow to a crawl, just as they are picking up steam. There is a risk that the Receiver's plans will suffer "death by a thousand cuts" if the attorneys must be privy to every discussion at each step of the way. Plaintiffs' counsel have, and will continue to have, multiple opportunities to express themselves and surely nothing will be built without input from the parties and the Court. The Receiver submits that it is important that the agreement be approved so that he may proceed with these important projects.

1  Adding yet another layer of participation by counsel does not serve the goal of moving forward
2  expeditiously; rather it threatens only to impede progress. Delaying approval at this juncture will
3  serve no purpose.

4      The Receiver requests that the Courts approve the Construction Coordination Agreement.

6  Dated:  December 17, 2007               FUTTERMAN & DUPREE LLP

                                            By:     /s/ Martin H. Dodd

                                                  Martin H. Dodd
                                                  Attorneys for Receiver Robert Sillen