PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California  94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE &
McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone:  (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | No.:  Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** |
| MARCIANO PLATA ,et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | No. C01-1351 TEH <br><br> **JOINT STATEMENT REGARDING DISCOVERY DISPUTES** <br><br> Date: <br> Time: <br> Place: <br> Judge:     Hon. John F. Moulds, <br> Magistrate Judge |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

    A.    Plaintiffs ....................................................................................................... 1

    B.    Defendants .................................................................................................... 4

II. STATEMENT REGARDING DETAILS OF THE MEET AND CONFER .................... 6

    A.    Plaintiffs ....................................................................................................... 6

    B.    Defendants .................................................................................................... 6

III. LEGAL ARGUMENT ............................................................................................ 10

    A.    Plaintiffs ..................................................................................................... 10

            1.    Defendants Have Failed to Establish That the Deliberative Process Privilege Applies or Justifies the Withholding of Documents in This Case ................................................................................ 10

                a.    The Deliberative Process Privilege Is a Narrow Conditional Privilege That May Be Overcome ................................................. 11

                b.    Defendants Have Failed To Meet Their Burden Of Establishing That Many Of The Documents For Which The Deliberative Process Privilege Has Been Asserted Are, In Fact, Predecisional And Deliberative ............................................. 13

                c.    Even If The Documents Satisfied The Deliberative And Predecisional Requirements, The Deliberative Process Privilege Is Overcome In This Case Because Defendants Have Put Their Deliberative Processes At Issue And Because Plaintiffs' Need For The Documents Overrides The Government's Interest ................................................................. 16

                    (1)    Defendants Have Put Their Deliberative Processes At Issue In This Case And The Documents They Have Withheld Are Highly Relevant To These Proceedings ....... 16

                    (2)    This Court Has Already Recognized that the Deliberative Process Privilege Is Overcome For Defendants' Budget Change Proposals and Financial Documents Because of their particular relevance to defendants' claims to be able to comply with Court orders ................................................................................... 21

                    (3)    Even If The Documents Were To Satisfy The Deliberative And Predecisional Requirements, Plaintiffs' Need For The Materials Greatly Outweighs The Government's Minimal Interest In Non-Disclosure ................................................................. 22

|   |   |   |   |   |   |
|---|---|---|---|---|---|
|   |   | 2. | Defendants Have Failed To Establish That The Attorney-Client or Attorney Work Product Privileges Apply to A Subset of Documents Withheld That Were Not Authored By An Attorney, Do not appear from the document description to be communications seeking legal advice, and for which the attorneys appear as "CC" recipients on a group list ....................24 |
|   | B. | Defendants....................................................................................................27 |
|   |   | 1. | Defendants' Revised Final Privilege Logs and Supporting Declarations Are Sufficient and Comply with Statutory Requirements. ....................................................................27 |
|   |   |   | a. | Defendants' Privilege Logs Are More Than Sufficient..................27 |
|   |   |   | b. | Defendants' Revised Declarations Are More Than Sufficient.....................................................28 |
|   |   | 2. | Plaintiffs' Motion to Compel Documents Protected by The Attorney-Client Privilege and the Attorney Work-Product Doctrine Is Contrary to Law and Well-Established Public Policy .........................29 |
|   |   |   | a. | The Attorney Client Privilege....................................29 |
|   |   |   | b. | The Attorney Work-Product Doctrine. ...........................30 |
|   |   | 3. | Defendants Are Still Evaluating Whether the Documents Identified by Plaintiffs at 12:17 a.m., 12:34 a.m., 11:42 a.m. and 12:32 p.m. on February 25, 2008 Are Properly Privileged............................31 |
|   |   | 4. | Plaintiffs Have Not Identified Documents with Specificity, and Have Not Shown that the Necessity for the Documents Outweighs the Government's Interest in Maintaining Their Confidentiality. ............31 |
|   |   |   | a. | While Difficult to Determine in a Vacuum, it Appears that the Documents Sought by Plaintiffs Are Protected by the Deliberative Process Privilege. ...........................31 |
|   |   |   | b. | Balancing of Plaintiffs' Professed Need for the Documents Against Defendants' Interest in Maintaining Their Confidentiality Does Not Support Disclosing Generic Categories of Privileged Documents. ..............................34 |
|   |   |   | c. | Defendants Have Not Waived the Deliberative Process Privilege. ....................................................34 |
| IV. | CONCLUSION ....................................................................................36 |
|   | A. | Plaintiffs ....................................................................................36 |
|   | B. | Defendants..................................................................................37 |

-ii-

**TABLE OF AUTHORITIES**

Page

**CASES**

*Allen v. Woodford,*
  2007 WL 309945 (E.D. Cal. Jan. 30, 2007) ............................................... 12

*Andrew Corp. v. Beverly Manufacturing Co.,*
  415 F. Supp. 2d 919 (N.D. Ill. 2006) ........................................ 29

*Assembly of State of Cal. v. United States Dep't of Commerce,*
  968 F.2d 916 (9th Cir. 1992) ........................................ 11

*Bourne v. Town of Madison,*
  05-CV-365-JD, 2007 U.S. Dist. LEXIS 23945 (Dist. N.H., March 2007) ................... 27

*Bowne v. Ambase Corp.,*
  150 F.R.D. 465 (S.D.N.Y. 1993) ........................................ 28

*Casad v. U. S. Dep't. of Health and Human Services,*
  301 F.3d 1247 (10th Cir. 2002) ........................................ 32

*Centifaniti v. Nix,*
  865 F.2d 1422 (3rd Cir. 1989) ........................................ 32

*Clarke v. Am. Commerce Nat'l Bank,*
  974 F.2d 127 (9th Cir. 1992) ........................................ 25, 29

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ........................................ 16

*Coleman v. Schwarzenegger,*
  No. CIV S-90-0520 LKK-JHM ........................................ passim

*Duplan Corp. v. Moulinage et Retor derie de Chavanoz,*
  509 F.2d 730 (4th Cir. 1974) ........................................ 31

*EPA v. Mink,*
  410 U.S. 73 (1973) ........................................ 15, 32

*Fisher v. United States,*
  425 U.S. 391 (1976) ........................................ 25

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.,*
  2006 WL 2255538 (E.D. Cal. Aug. 7, 2006) ........................................ 25

*FTC v. Warner Commc'ns Inc.,*
  742 F.2d 1156 (9th Cir. 1984) ........................................ passim

*Gomez v. Vernon,*
  255 F.3d 1118 (9th Cir. 2001) ........................................ 25

*Hickman v. Taylor,*
  329 U.S. 495 (1947) ........................................ 30

*Hunt v. Blackburn,*
        128 U.S. 464 (1888) ................................................................. 29

*In re Franklin National Bank,*
        478 F. Supp. 577 (E.D. N.Y. 1979)......................................... 31

*In re Sealed Case,*
        121 F.3d 729 (D.C. Cir. 1997) ................................................. 12

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,*
        145 F.3d 1422 (D.C. Cir. 1998) .................................. 13, 20, 34

*Kintera, Inc. v. Convio, Inc.,*
        219 F.R.D. 503 (S.D. Cal. 2003)............................................. 26

*L.H. v. Schwarzenegger,*
        2007 WL 2009807 (E.D. Cal. July 6, 2007) ..................... 12, 13, 22

*Long v. I.R.S.,*
        742 F.2d 1173 (9th Cir. 1984)................................................. 15

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,*
        434 F. Supp. 2d 810 (E.D. Cal. 2006)..................................... 29

*N. Pacifica, LLC v. City of Pacifica,*
        274 F. Supp. 2d 1118 (N.D. Cal. 2003) ........................ 11, 13, 23

*Nat'l Wildlife Fed'n v. United States Forest Serv.,*
        861 F.2d 1114 (9th Cir. 1988).................................................. 11

*NLRB v. Sears, Roebuck & Co.,*
        421 U.S. 132 (1975) ................................................... 11, 23, 32

*Pacific Gas & Electric Co. v. U.S.,*
        No. 04-74C, 2006 U.S. Claims LEXIS 63, (Fed. Clms. March 2006) .......................... 28

*Texas v. Lee,*
        889 F.2d 59 (5th Cir. 1989)...................................................... 32

*Trammel v. U. S.,*
        445 U.S. 40 (1980) .................................................................. 29

*U. S. v. Aldman,*
        68 F.3d 1495 (2nd Cir. 1995).................................................. 30

*United States v. Abrahams,*
        905 F.2d 1276 (9th Cir. 1990)................................................. 25

*United States v. Constr. Prods. Res., Inc.,*
        73 F.3d 464 (2d. Cir. 1996)..................................................... 28

*United States v. Gray,*
        876 F.2d 1411 (9th Cir. 1989)................................................. 12

-iv-

*United States v. Jose*,
    131 F.3d 1325 (9th Cir. 1997) ........................................................................... 25

*United States v. Phoenix Union High Sch.*,
    681 F.2d 1235 (9th Cir. 1982) ......................................................................... 23

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ..................................................................... 12

*Upjohn Co. v. U. S.*,
    449 U.S. 383 (1981) ........................................................................................... 29

*Vaughan v. Celanese Americas Corp.*,
    2006 U.S. Dist. LEXIS 89888 (W.D.N.C., Dec. 2006) ................................ 27

## **STATUTES**

18 U.S.C. § 3626(a)(3) ................................................................................................. 1

28 U.S.C. § 2284 ........................................................................................................... 1

## **RULES**

Fed. R. Civ. P. 26(b)(3) ....................................................................................... 26, 30

Fed. R. Civ. P. 26(b)(5) ....................................................................................... 27, 29

Fed. R. Evid. § 501, 1101(c) ...................................................................................... 31

Federal Rule of Evidence § 509 ................................................................................ 31

I.    **INTRODUCTION**

A.    **Plaintiffs**

Plaintiffs are classes of state prisoners with serious medical needs (*Plata v. Schwarzenegger*) and serious mental illness (*Coleman v. Schwarzenegger*) (hereinafter "Plaintiffs").  On November 13, 2006, the Plaintiff classes separately filed motions in the Northern and Eastern Districts of California to convene a three-judge court to limit the prison population in the CDCR, pursuant to 28 U.S.C. § 2284 and 18 U.S.C. § 3626(a)(3).  On July 23, 2007, citing Defendants' failure to remedy their violations of the Plaintiff classes' constitutional rights to adequate medical and mental health care, respectively, the *Plata* and *Coleman* Courts separately granted Plaintiffs' motions and referred consideration of a prisoner release order to a three-judge panel.  The Chief Judge of the Ninth Circuit appointed a single three-judge court on July 26, 2007 to consider Plaintiffs' requests in both cases for a prisoner release order, pursuant to 18 U.S.C. § 3626(a)(3).  The two cases were consolidated for the limited purpose of proceedings before the three-judge court. 7/31/07 Order at 2:5-12.

On August 17, 2007, the Three-Judge Court issued an order referring all discovery disputes arising in these proceedings to Magistrate Judge Moulds in the Eastern District of California.  8/17/07 Order at 4:3-5.  The parties engaged in an expedited discovery process during which both plaintiffs and defendants propounded multiple discovery requests.  In connection to requests for production of documents served on defendants by plaintiffs on September 5, 2007 and October 17, 2007, defendants produced a series of privilege logs on a rolling basis concurrent with defendants' production of documents.  These privilege logs corresponded to approximately 50,000 documents that defendants identified as responsive to plaintiffs' document requests, but withheld based on assertions of various privileges.  *See* Defs.' *Ex Parte* Request for an Extension of Time, filed 1/28/08, at 2:26-27.  Pursuant to court orders, defendants also submitted the privilege logs and the documents referenced therein to the Magistrate Judge for *in camera* review.  Plaintiffs objected to the sufficiency of defendants' privilege logs, as well as their assertions of privilege, and the parties met and conferred about these issues throughout November 2007.

On November 30, 2007, plaintiffs moved to compel the production of the documents identified in defendants' first three sets of privilege logs.[1] On December 6, 2007, this Court heard arguments on this motion, and issued an oral ruling and minute order granting plaintiffs' motion to compel and requiring defendants to produce to plaintiffs all documents cited in the privilege logs on or before 12:00 p.m. on December 7, 2007. This Court issued a written order on December 7, 2007, finding that defendants failed to meet their Rule 26(a)(5) obligations to describe the documents in sufficient detail to enable plaintiffs to assess the privilege: "The deficient entries [in the logs] are obvious and they are numerous…[I]t is obvious to this court that defendants have failed to meet their burden of establishing the privileges asserted in these proceedings." 12/7/07 Order at 10:6-17. Specifically, this Court held that defendants failed to meet the legal requirements for establishing the deliberative process privilege and the official information privilege; raised defenses in the proceedings that constituted a waiver of the deliberative process privilege; failed to establish essential elements of the attorney-client privilege and its applicability to the documents for which the attorney-client privilege was claimed; failed to establish that the materials for which they claimed attorney work product protection were entitled to that protection; and failed to offer an adequate basis for withholding documents based on privacy rights. 12/7/07 Order. The Court ordered that certain documents withheld pursuant to assertions of official information privilege and privacy rights be produced subject to a protective order preventing the parties from making those documents part of the record without further order from the court. *Id.* The order also directed the parties to file any motion for reconsideration with the Three-Judge Court.

---

[1] As of November 30, defendants had produced three sets of privilege logs to plaintiffs and these were the basis for plaintiffs' motion to compel. Subsequently, defendants produced additional sets of privilege logs to plaintiffs and the parties filed a joint statement concerning production of the documents identified in those logs. Before this Court addressed the dispute, however, the Three-Judge Court granted defendants 45 days to revise all of their privilege logs and referred the dispute back to the Magistrate Judge. The present dispute concerns these revised privilege logs, which cover all documents for which defendants assert claims of privilege.

On December 7, 2007, defendants filed a motion for reconsideration and/or a stay of the Magistrate Judge's order before the Three-Judge Court. Plaintiffs filed an opposition to defendants' motion on December 10, 2007. *Id.* On December 11, 2007, the Three-Judge Court issued an order staying the Magistrate Judge's December 6, 2007 order and setting a December 13, 2007 status conference regarding defendants' motion. Following the December 13, 2007 status conference, the Three-Judge Court issued an order on December 14, 2007 denying defendants' motion for reconsideration in part, but granting defendants' request for additional time to review and revise their clearly inadequate privilege logs. The Three-Judge Court referred the matter back to this Court for further proceedings in connection with defendants' review and revisions.

On December 19, 2007, following a conference with the parties, this Court issued an order requiring defendants to serve their revised privilege logs on plaintiffs on or before January 28, 2008, together with any documents for which the claim of privilege has been withdrawn. The order also required defendants, on or before January 28, 2008, to file with the court a copy of the revised privilege logs and to submit under seal to the court a copy of all documents described in the revised privilege logs. The Court set a status conference hearing regarding this dispute for January 29, 2008.

On January 28, 2008, defendants filed an *ex parte* motion for an extension of time for production of the revised privilege logs and production of any documents to plaintiffs for which defendants withdrew their previous assertions of privilege. Defendants informed the Court that as of January 28, 2008, they had completed review of 39,000 documents identified on their original logs and determined that 25,000 were not subject to privilege. Defs.' *Ex Parte* Request for an Extension of Time at 3:7-14. Defendants requested additional time to complete their privilege logs for the remaining 14,000 documents for which they continue to assert privilege. *Id.* Furthermore, defendants claimed that they needed to re-review an additional 11,000 documents from the original logs. *Id.* at 3:14-16. After the status conference hearing on January 29, 2008, the Court granted defendants' motion and ordered defendants to produce to plaintiffs on or before February 4, 2008 the approximately 25,000 documents previously

withheld on the basis of privilege.  1/29/08 Order.  The Court ordered defendants to file and serve corrected versions of the unfinished January 28, 2008 logs corresponding to 14,000 documents on or before February 4, 2008.  The Court also granted defendants additional time to re-review the additional 11,000 documents and ordered that on or before February 15, 2008, defendants must produce documents and a privilege log corresponding to those additional 11,000 documents.

Defendants produced approximately 32,594 documents to plaintiffs on February 4, 2008 and produced a corresponding privilege log containing 14,226 entries on that date.  Declaration of Lori Rifkin In Support of Joint Statement Regarding Discovery Dispute ("Rifkin Decl.") ¶ 2.  On February 15, 2008, defendants produced approximately 3,315 additional documents to plaintiffs and produced a privilege log identifying 16,788 documents that defendants have withheld.  *Id.*  According to defendants, the February 15, 2008 log both revised the log produced on February 4, 2008 and reflects defendants' review of the 11,000 additional documents.[2]  *Id.* at ¶ 3.  Defendants variously assert attorney-client privilege, attorney work product, deliberative process privilege, official information, and privacy rights as the bases for withholding these documents.

## B.     Defendants

On December 14, 2007, after a status conference before Judge Henderson on December 13, 2007, the three-judge panel issued an order that, among other things, provided defendants with 45-calendar days to conduct a review and revision of the previously submitted privilege logs.  Thereafter, on January 29, 2008, Magistrate Judge Moulds issued an order granting

---

[2] Plaintiffs understood from this Court's Order that the logs to be produced on February 4, 2008 were intended by the Court to be final corrected versions of the logs initially produced on January 28, 2008, thereby spending many hours reviewing the logs in preparation for meeting and conferring with defendants.  Defendants apparently perceived the February 4, 2008 logs to be merely second drafts, and informed plaintiffs after February 15, 2008 that they had both removed and added entries to the February 4, 2008 logs in the new February 15 logs.  Defendants declined to identify what changes were made to plaintiffs.  Thus, in an effort to utilize the work done by plaintiffs prior to February 15 concerning the February 4 logs, some of plaintiffs' analysis in the attorney-client section relies upon the February 4 logs.  Rifkin Decl. ¶ 3.

defendants' January 28, 2008 request for extension of time.  (Order 3:1.)  As a result, defendants had until February 15, 2008 to "file and serve final privilege logs."  (Order 3:7.) The order also provided that the parties should meet and confer "[o]n or before February 20, 2008 . . . concerning any disputes arising from defendants' revised privilege logs."  (Order 3:12-13.)  Finally, the order required the parties to "file either a joint statement concerning disputes arising from the privilege logs . . . or a joint statement that no disputes remain." (Order 3:14-16.)

Plaintiffs now seek an order from the court compelling defendants to produce (apparently) generic categories of documents listed on their final privilege logs.  Defendants assume that plaintiffs are asking the court to issue an order compelling defendants to produce generic categories of documents listed on their final privilege logs because plaintiffs have, despite repeated requests, refused to provide defendants with a complete list of documents at issue in this dispute.  This delay tactic has prejudiced defendants and has prohibited defendants from adequately defending against plaintiffs' contentions.  This tactic has also prohibited the parties from more completely resolving or possibly completely resolving this discovery dispute, and it will require additional court time on a matter that this court has already been required to spend far too much time on.

As result, defendants request that the court (1) continue the hearing on this motion to compel for a reasonable period of time and (2) order the plaintiffs to provide defendants with a complete list of documents that they seek production of by way of this motion to compel.  If such a list is provided by plaintiffs, additional time will allow defendants to evaluate the documents at issue and determine whether they are willing to produce any of the documents at issue without court intervention – something defendants have agreed to do on many occasions during the meet and confer process.  This will also provide defendants with adequate information in order to defend against plaintiffs' claims.  Alternatively, defendants request that plaintiffs' motion to compel be denied in its entirety because plaintiffs have failed to show that defendants' revised final privilege logs are inadequate.

## II. STATEMENT REGARDING DETAILS OF THE MEET AND CONFER

### A. Plaintiffs

Pursuant to this Court's January 29, 2008 Order, the parties began to meet and confer prior to February 20, 2008 regarding disputes concerning defendants' privilege logs and withholding of documents based on assertions of privilege. Rifkin Decl. ¶ 4. The parties were able to resolve disputes concerning documents for which defendants' asserted protections based only on official information or privacy rights. *Id.* However, disputes remain concerning the documents for which defendants have asserted deliberative process privilege, and a single category of documents for which defendants have asserted attorney-client privilege and/or the attorney work product doctrine.[3] With respect to defendants' assertion of deliberative process privilege, plaintiffs contend that defendants fail to adequately establish the privilege for the documents in question. Even if defendants satisfied their threshold burden of establishing the privilege however, plaintiffs argue that the Court should order production of these documents because they address the exact defenses that defendants have raised in this case. Plaintiffs also object to defendants' assertion of the attorney-client privilege and attorney work product doctrine for a single category of documents: those documents that were not authored by an attorney, do not appear from the information in the "Summary" field to intend to seek legal advice, and for which one or two attorneys appear to be a "cc" on a list of numerous recipients.

### B. Defendants

On February 14, 2008, before receiving defendants' final privilege logs, plaintiffs sent several emails requesting that defendants (1) stipulate to extend the Court's February 20, 2008

---

[3] Defendants' withheld more than 7,500 documents based on claims of attorney-client privilege and/or the attorney work product doctrine. Plaintiffs do not dispute the assertions of privilege for the vast majority of documents defendants have identified in the log as attorney-client privileged and/or subject to the attorney work product doctrine. Rifkin Decl. ¶5. In addition to the limited category in dispute that plaintiffs describe above, plaintiffs have also identified approximately sixty documents withheld pursuant to the attorney-client privilege for which (a) no attorney has been identified as either author or recipient, or (b) outsiders to the attorney-client relationship (such as legislators or academics) are listed as either authors or recipients. Plaintiffs have requested that defendants produce these documents. Rifkin Decl. ¶14.

1  deadline to begin the meet and confer process, and (2) agree to conduct the meet and confer

2  process in person on the afternoon of February 21, 2008 in San Francisco in order to

3  accommodate the schedule of plaintiffs' counsel.  (Declaration of Paul Mello (Mello Decl.), ¶

4  2, Exhs. A, B and C.)  In response, defendants wrote an email to plaintiffs indicating that they

5  did not believe that it was

7  > necessary, or advisable, for Plaintiffs to wait for an in person meeting on
   > February 21 to begin the meet and confer process.  Rather, and in order to
8  > expedite the process, Defendants request that Plaintiffs send Defendants a meet
   > and confer letter identifying those entries on the 2-15-08 logs that they believe
9  > are deficient.   This will allow Defendants to fully consider and evaluate
   > Plaintiffs' contentions.  At that point an in person meet and confer session may
10 > be appropriate.  On the other hand, an in person meet and confer session before
   > Plaintiffs have identified specific entries on the privilege logs, and before
11 > Defendants have considered Plaintiffs contentions, is premature.

13 (Mello, Decl., ¶ 3, Exh. D.)  Defendants, however, did not receive an actual meet and confer

14 letter from plaintiffs until 4:36 p.m. on February 19, 2008.  (Mello, Decl., ¶ 4, Exh. E.)  In

15 truth, the February 19, 2008 meet and confer letter was not very substantive, as it identified

16 less than 50 entries on the revised logs, out of approximately 16,800 entries, that were

17 deficient.  (*Id.*)  And, most of plaintiffs' claims about the deficiency of the revised privilege

18 logs were generic in nature.  (*Id.*)  Notably, however, plaintiffs' February 19, 2008 meet and

19 confer letter conceded that plaintiffs did "not dispute the assertion of the attorney-client and

20 attorney work product privileges for the majority of documents that defendants have identified

21 in the logs as attorney-client privileged." (*Id.*)

22    On February 20, 2008 defendants responded to plaintiffs' February 19, 2008 meet and

23 confer letter and addressed each one of plaintiffs' contentions, both specific and generic.

24 (Mello, Decl., ¶ 5, Exh. F.)  First, defendants responded to plaintiffs' contention that "[i]n the

25 paper logs, almost half of the documents are missing at least one of the "author," "date," and/or

26 "recipient" fields [and in] the electronic logs, approximately thirty percent of the documents

27 are missing the "author," "recipient," and/or "date" fields."  Defendants wrote that:

28

1
2
3
4
5
6
7
8
9
10
11
12
13

> [p]laintiffs' meet and confer letter . . . fails to acknowledge that except on rare occasions, the entries on the privilege logs where either the author, recipient, or date field is missing only arose in instances where defendants claimed that the documents at issue were protected by the official information or privacy privileges. Here, defendants have made a good faith, if not extraordinary, attempt to provide an adequate privilege log, and provided descriptors of the content and persons associated with the documents where possible. However, defendants must note that official information privilege and right to privacy can be asserted by a holder of the privilege without any identification of the creator or recipient of the document. Here, defendants are the holders of those privileges and must assert the privileges, regardless of whether the document emanated from a staff or executive level person, so long as the document was not disclosed to the public. The declarations supporting the assertion of privilege have established the document was internally produced and disseminated. Moreover, while the assertion of the attorney client communication may require a statement of the creator and recipient of the document, no such statement is necessary for these privileges. As such, it is clear that plaintiffs' general objections, when viewed in context, do not constitute valid criticisms of the revised privilege logs.

14
15
16
17

Defendants' February 20, 2008 meet and confer letter also addressed issues raised by plaintiffs with respect to the specific privileges claimed in the logs. It also addressed many of the specific examples (or entries) challenged as deficient in plaintiffs' February 19, 2008 meet and confer letter. (*Id.*)

18
19
20
21
22
23
24
25
26
27

Plaintiffs delayed in responding to defendants' February 20, 2008 meet and confer letter – waiting until 10:25 a.m. on February 22, 2008 to respond. (Mello, Decl., ¶ 6, Exh. G.) In that response plaintiffs declared that the parties were at an "impasse" as to the deliberative process privilege, but then identified 53 documents or entries on logs that were deficient. (*Id.*) Similarly, plaintiffs declared the parties to be at an "impasse" as to the attorney-client/work-product privileges. (*Id.*) Plaintiffs' meet and confer letter, however, identified approximately 42 documents for which plaintiffs claimed "appear relevant to these proceedings and do not appear to be architectural drawings and blueprints" and approximately 67 documents protected by the right to privacy that they claimed should either be produced or redacted and produced. (*Id.*) Finally, despite requesting that defendants produce redacted copies of documents

28

protected by the right to privacy, plaintiffs objected to defendants' decision to redact portions of certain documents in their production.  (*Id.*)

Seven hours after receiving plaintiffs' February 22, 2008 meet and confer letter, at 5:36 p.m., defendants responded to plaintiffs' letter. (Mello, Decl., ¶¶ 7-8, Exh. H.)  In that meet and confer letter defendants disagreed with plaintiffs' assertions that the parties were at an impasse.  Defendants then asked plaintiffs to identify, by way of lists of documents, which entries on the final revised privilege logs plaintiffs believed were deficient.  Defendants requested "plaintiffs identify which documents fall into [these categories] so that they can defend against plaintiffs' claims [and stated that w]ithout such list[s] it is impossible for defendants to appropriately respond to plaintiffs' generic contention[s]."  Defendants asked for such lists by noon Saturday February 23, 2008.  Plaintiffs did not comply with this request. (*Id.*)

In a good faith attempt to resolve this dispute, or to at least better focus it, defendants' February 22, 2008 meet and confer letter also responded, on a document-by-document basis, to the concerns in plaintiffs' February 22, 2008 meet and confer letter.  For example, plaintiffs identified approximately 53 documents for which plaintiffs claimed that "defendants' assertions of deliberative process privilege fail because the documents were authored by or sent to outside recipients."  Defendants agreed to produce approximately 23 of the identified documents and explained why they refused to produce the remaining documents.  Similarly, plaintiffs identified approximately 42 documents listed as protected by the official information privilege that plaintiffs wrote "appear relevant to these proceedings and do not appear to be architectural drawings and blueprints."  Again, defendants agreed to produce approximately 17 of these documents and explained why the remaining documents were privileged.  Finally, plaintiffs identified 67 documents defendants deemed to be protected by the right to privacy.  Plaintiffs asked defendants to either produce the documents in whole or to redact those portions of the documents that were protected from disclosure.  In response, defendants agreed to redact and produce all 67 of the documents identified by plaintiffs.  (*Id.*)

1    Despite being the moving party in this dispute, defendants' good faith efforts to resolve

2    this discovery dispute without intervention of the court, and the obvious unfairness to

3    defendants, plaintiffs did not provide any portion of this joint statement to defendants until

4    10:55 p.m. on Sunday night February 24, 2008.  (Mello, Decl., ¶ 9, Exh. I.)  Because defense

5    counsel had stopped working at approximately 10:30 p.m. that night, defense counsel was not

6    able to print and review plaintiffs' draft of the first two sections of this joint statement until he

7    arrived at his office at approximately 7:15 a.m. on Monday February 25, 2008.  Similarly,

8    plaintiffs did not provide a list of documents in dispute with respect the attorney-client/attorney

9    work product privileges until 12:17 a.m. and 12:34 a.m. on February 25, 2008.  (Mello, Decl.,

10   ¶ 9, Exhs. J, K, L and M.)  Plaintiffs then supplemented these lists of documents at 11:42 a.m.

11   and then again at 12:32 p.m. on February 25, 2008.  (Mello, Decl., ¶ 9, Exh. M.)  Finally, at

12   12:32 p.m. plaintiffs provided defendants with "an unfurnished working draft of plaintiffs'

13   statement regarding this discovery dispute."  However, plaintiffs have never provided

14   defendants with a complete list of the documents in dispute with respect to the deliberative

15   process privilege.  As a result, this statement, while filed jointly is not a "joint statement" as

16   envisioned by the local rules, nor did plaintiffs adequately frame to issues so that defendants

17   could meaningfully defend themselves against plaintiffs' claims.  (*Id.*)

18   **III.    LEGAL ARGUMENT**

19   **A.    Plaintiffs**

20           **1.    Defendants Have Failed to Establish That the Deliberative Process
                Privilege Applies or Justifies the Withholding of Documents in This
21              Case**

22   Defendants are withholding 4,653 documents pursuant to assertions of the deliberative

23   process privilege.[4]  A list of these documents is attached for the Court's reference as Exhibit a

24   to the Rifkin Declaration.  First, defendants have not sufficiently established the deliberative

25   _____

26   [4] This number does not include documents for which defendants asserted the attorney-client and/or
     attorney work produce privilege in addition to the deliberative process privilege.  Plaintiffs challenge
27   defendants' assertion of privilege for those documents only to the extent that an attorney is a "cc" on a
     group list of recipients, as addressed in Section III(B).

28

1  process privilege for many of the documents for which they claim the privilege.  Specifically,

2  plaintiffs object to defendants' conclusory use of the phrase "pre-decisional" as the basis for

3  asserting that a document is covered by the deliberative process privilege, to defendants'

4  assertion of the deliberative process for documents of types that fall outside the scope of the

5  privilege, and to defendants' withholding of documents that they describe as "attachments" to

6  privileged documents without establishing that the privilege applies independently to those

7  documents.  Second, the qualified deliberative process privilege is overcome in this case where

8  almost all of the documents defendants have withheld pursuant to assertions of the deliberative

9  process privilege are directly related to the defenses defendants have raised in this case.

10           **a.     The Deliberative Process Privilege Is a Narrow**
                  **Conditional Privilege That May Be Overcome**

11

12       The deliberative process privilege is a narrow, conditional federal common law

13  privilege that protects materials created by governmental departments or agencies during the

14  decision-making process.  *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114,

15  1117 (9th Cir. 1988).  The purpose of the privilege is "to promote frank and independent

16  discussion among those responsible for making governmental decisions and also to protect

17  against premature disclosure of proposed agency policies or decisions."  *FTC v. Warner*

18  *Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citations omitted); *see also NLRB v.*

19  *Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

20       The deliberative process privilege is "strictly confined within the narrowest possible

21  limits consistent with the logic of its principles."  *N. Pacifica, LLC v. City of Pacifica*, 274 F.

22  Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal quotation marks omitted).  To qualify for the

23  deliberative process privilege, the materials in question must be predecisional in nature and

24  must also be part of the agency's deliberative process.  *Assembly of State of Cal. v. United*

25  *States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (as amended).  "A

26  'predecisional' document is one prepared in order to assist an agency decisionmaker in arriving

27  at his decision, and may include recommendations, draft documents, proposals, suggestions,

28

1  and other subjective documents which reflect the personal opinions of the writer rather than the

2  policy of the agency." *Id.* (internal quotation marks and citations omitted).

3         A predecisional document is part of the deliberative process if the "disclosure of [the]

4  materials would expose an agency's decisionmaking process in such a way as to discourage

5  candid discussion within the agency and thereby undermine the agency's ability to perform its

6  functions." *Id.* (alteration in original) (internal quotation marks omitted). "The deliberative

7  process privilege does not shield documents that simply state or explain a decision the

8  government has already made or protect material that is purely factual . . . ." *In re Sealed*

9  *Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam). "The party asserting an evidentiary

10  privilege has the burden to demonstrate that the privilege applies to the information in

11  question." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (internal quotation

12  marks omitted). Additionally, assertion of the deliberative process privileges requires:

13         -a formal claim of privilege by the "head of the department" having control over the
           requested information;
14         -assertion of the privilege based on actual personal consideration by that official; and
           -a detailed specification of the information for which the privilege is claimed, with an
15         explanation of why it properly falls within the scope of the privilege.

16  *Allen v. Woodford,* 2007 WL 309945 at *4 (E.D. Cal. Jan. 30, 2007); *see also L.H. v.*

17  *Schwarzenegger*, 2007 WL 2009807, at *2 (E.D. Cal. July 6, 2007); *United States v. Rozet*,

18  183 F.R.D. 662, 665 (N.D. Cal. 1998) (noting that the deliberative process privilege may be

19  invoked only "by the head of the department after actual personal consideration" of the

20  allegedly privileged information).

21         Even if established, "[t]he deliberative process privilege is a qualified one." *FTC*, 742

22  F.2d at 1161. "A litigant may obtain deliberative materials if his or her need for the materials

23  and the need for accurate fact-finding override the government's interest in non-disclosure."

24  *Id.*; *see also Rozet*, 183 F.R.D. at 665 (holding that "privilege "may be overcome by a strong

25  showing of need on the part of the party seeking discovery"). First, if the government's

26  deliberative processes are the issue being litigated, the government may not use the

27  deliberative process privilege to avoid scrutiny of its actions and decisions. "The [deliberative

28  process] privilege was fashioned in cases where the governmental decisionmaking process is

1 | collateral to the plaintiff's suit." *In re Subpoena Duces Tecum Served on the Office of the*

2 | *Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). "If the plaintiff's cause of

3 | action is directed at the government's intent, however, it makes no sense to permit the

4 | government to use the privilege as a shield." *Id.* Second, a litigant "may obtain deliberative

5 | materials [or information] if his or her need for the materials [or information] and the need for

6 | accurate fact-finding override the government's interest in non-disclosure." *N. Pacifica*, 274 F.

7 | Supp. 2d at 1122 (alterations in original) (internal quotation marks omitted). "Among the

8 | factors to be considered in making this determination are: 1) the relevance of the evidence; 2)

9 | the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to

10 | which disclosure would hinder frank and independent discussion regarding contemplated

11 | policies and decisions." *FTC*, 742 F.2d at 1161. The court should also consider "(5) the

12 | interest of the litigant, and society, in accurate judicial fact finding; and (6) the seriousness of

13 | the litigation and the issues involved." *L.H.*, 2007 WL 2009807 at * 2 (citations omitted).

14 |
15 |
16 |

          **b.**    **Defendants Have Failed To Meet Their Burden Of Establishing That Many Of The Documents For Which The Deliberative Process Privilege Has Been Asserted Are, In Fact, Predecisional And Deliberative**

17 |         Defendants have failed to establish the elements of the deliberative process privilege for

18 | many of the documents for which they claim the privilege.[5] This Court found in its December

19 | 7, 2007 order that descriptions of documents "in conclusory fashion as 'pre-decisional' were

20 | not sufficient to establish that those documents are covered by the deliberative process

21 |
22 |

---

[5] Plaintiffs recognize that there may be a limited number of documents included in defendants' log that actually satisfy the elements of the deliberative process privilege. However, for the overwhelming majority of documents, defendants either fail to establish that they were actually "pre-decisional" and "deliberative," or they are documents of a type that fall completely outside the scope of the privilege. Plaintiffs provide lists of the entries in defendants' log that correspond to particular arguments wherever possible for the Court's reference. Because defendants have failed to establish the privilege for most of the documents, and the vast majority of the documents relate to the defenses defendants have raised, plaintiffs propose that the Court order production of documents for which defendants have asserted deliberative process privilege, with the opportunity for defendants to request *in camera* review after the Court's ruling of law of those few for which they believe they have adequately established the privilege and that they believe do not relate to their defenses.

privilege."  Defendants have not improved on these conclusory claims in their revised log.
Defendants' continued conclusory use of "pre-decisional" is pervasive throughout the log,
inserted in the descriptions of three-quarters (approximately 3,450) of the entires.  *See* Exhibit
B.  Although defendants' agency declarants now aver that they have personally reviewed all of
the documents being withheld, the only justification for withholding the documents as
privileged appears to be these declarants' generalized descriptions of their internal agency
processes as part of government decision-making and their generalized statements that the
documents being withheld are part of that decision-making.  Such statements do not satisfy the
requirement that the privilege must be claimed in a specific, precise and certain manner.  *See*
*L.H.*, 2007 WL 2009807 at *2.

        For many of the actual entries in the log, it is doubtful whether they were in fact both
"predecisional" and "deliberative" in the legal sense.  Many of these documents appear to be
documents that are presumptively not covered by the deliberative process privilege, such as
reports, graphs or charts, financial statements, and budget change proposals.  For example,
defendants' electronic log contains approximately 300 documents described as graphs or
charts, and approximately 100 documents that are described as financial, and appear to be
reports or lists describing underlying facts, not decision-making deliberations.  A list of these
documents is attached as Exhibit C to the Rifkin Declaration.  Inserting the conclusory phrase
"pre-decisional" or "draft" in the "Summary" field of these logs does not automatically
transform the documents into those covered by the deliberative process privilege.  For
example, E00097787 and E00097791 are documents of the type "Graph/Chart" that are
described as "Pre-decisional chart summarizing facility projects and costs."  E0001160 is a
document of type "Financial" and is described a "Pre-decisional spreadsheet titled Current
Year 00/00/2006-00/00/2007 Bed Per Diem Cost."  E00002934 is a document of the type
"Graph/Chart" that is described as a "Pre-decisional chart detailing county backlogs resulting
from deactivation of all non-traditional beds.  E00017510  is a document of type "Report" that
is described as "Project cost summary for construction project."  All of these documents appear
to contain only or primarily factual information, yet factual reports are not covered by the

-14-

1  deliberative process privilege. *See EPA v. Mink*, 410 U.S. 73, 87-88 (1973) (explaining that

2  "compiled factual material or purely factual material contained in deliberative memoranda and

3  severable from its context would generally be available for discovery" notwithstanding the

4  assertion of privilege), *superseded by statute in nonrelevant part as recognized in Long v.

5  I.R.S.*, 742 F.2d 1173 (9th Cir. 1984).  Moreover, a large number of documents on defendants'

6  log relate to budget change proposals (BCPs) and finance letters, documents this Court has

7  indicated are presumptively not covered by the deliberative process privilege.[6]  *See* Rifkin

8  Decl. ¶ 11, Exh. F.

9        For those documents that do not appear to be strictly factual or finance requests,

10  defendants have not met their burden of establishing that they were actually part of the

11  deliberative process antecedent to the relevant agency decision, as required to trigger

12  protection by the privilege.  For example, defendants describe document E00006644 as "Pre-

13  decisional report pertaining to significant events and occurrences for CDCR".  This description

14  does not clearly implicate a discussion nor forward-looking deliberations relevant to an

15  identifiable decision.  Even where the title of the document indicates that it may have been part

16  of a discussion, it is not clear that these discussions are tied to or antecedent to the decision-

17  making process.  For example, E00001887 is described as "Pre-decisional email thread

18  discussing questions about AB 900" and is dated 6/1/2007.  AB 900 was passed in May 2007.

19  This email is not pre-decisional to an agency decision in the narrow sense of the privilege.  For

20  documents discussing AB 900 that are dated after the Legislature enacted the bill, defendants

21  do not identify a subsequent agency decision for which the documents would or could be

22  considered "pre-decisional."  Other similar examples include E00003401 and E00003402, both

23  titled "Pre-decisional draft of AB 900 Word/Term Definition List" dated 9/24/2007;

---

25  [6] The fact that defendants allege that many of these BCPs or finance letters are "drafts" does not
26  automatically qualify them for protection by the deliberative process privilege.  Defendants have
    indicated that they consider the budget requests sent by an agency to the Department of Finance for
    approval to be "drafts" even though they represent the final determinations by an agency of their
27  budget requests to the Department of Finance or the Governor's Office.  *See* Declaration of David
    Runnels In Support January 28, 2008 Revised Privilege Log, *Coleman* Doc. No. 1076, at 3:12-23.

28

1  E00007259, titled "Email thread discussing AB 900 updates and attaching Week Ahead

2  Report" dated 7/17/2007; E00033810 and E00033811, both titled "Pre-decisional draft of AB

3  900 Concept Paper Template" dated 9/21/2007.  Defendants establish no basis for showing that

4  these emails were either pre-decisional or deliberative.  It is not reasonable to assert that these

5  documents would pass the test that "the document is so candid or personal in nature that public

6  disclosure is likely in the future to stifle honest and frank communication within the agency."

7  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Furthemore,

8  it cannot be the case that what has been consistently construed as a "narrow" privilege

9  automatically applies to all documents or communications between agency employees that

10  discuss issues overseen by the agency.  If that were the case, the deliberative process privilege

11  would hide every government agency document.

12  Finally, defendants assert the deliberative process privilege for 325 documents that are

13  described as attachments to privileged documents.  A list of these documents is attached as

14  Exhibit D_ to the Rifkin Declaration.  Attachments must independently qualify for the

15  privilege, and are not automatically privileged by virtue of being attached to other documents.

16  For example, E00004389-E00004392 are described as "attached to privileged BCP" but do not

17  appear to be covered by the deliberative process privilege and defendants have not provided

18  any independent information as to why they are covered by the privilege.  Defendants have

19  failed to establish that the deliberative process privilege applies to these documents and they

20  should be produced in this litigation.

21          **c.**      **Even If The Documents Satisfied The Deliberative And**

22                  **Predecisional Requirements, The Deliberative Process Privilege Is Overcome In This Case Because Defendants Have Put Their Deliberative Processes At Issue And**

23                  **Because Plaintiffs' Need For The Documents Overrides The Government's Interest**

24

25                  **(1)**      **Defendants Have Put Their Deliberative Processes At Issue In This Case And The Documents They**

26                        **Have Withheld Are Highly Relevant To These Proceedings**

27

28

1    In its December 7, 2007 order regarding privilege disputes, this Court found that "it is

2    evident from the record before this court that the manner in which these proceedings are being

3    defended involves presentation of material which will constitute a waiver of deliberative

4    process privilege.  The Governor has responded to interrogatories from plaintiffs that his

5    administration 'continues to aggressively use the [October 4, 2006 overcrowding] Emergency

6    Proclamation to address overcrowding in ways that are less intrusive than a prisoner release

7    order.'  Moreover, there is ample evidence in the record that the provisions of Assembly Bill

8    900 (AB 900) will play a substantial part in defendants' defense in these proceedings, a fact

9    acknowledged by defendants at the September 24, 2007 hearing before the three-judge court

10   when defendants stated that they 'would certainly like the opportunity to fully present to the

11   court how AB 900 is rolling out and how it will roll out in the near future, so you have a better

12   understanding—everybody at the table has a better understanding of what it can and can't do.'"

13   Order at 13:26-14:12.  (Citation omitted).

14   Indeed, in briefing before the district courts, and in their answers to plaintiffs' discovery

15   requests, defendants have thus far contended that the size of the overall CDCR inmate

16   population is not the primary cause of these violations, and that there are "[m]ultiple causes at

17   play."  In response to *Coleman* plaintiffs' interrogatories, defendants have identified some of

18   these causes as defendants' administrative and systemic failures to recruit and retain staff,

19   employ a viable information technology system, pay staff adequately, plan for and provide

20   mental health beds at appropriate treatment and custody levels, and appropriately forecast the

21   mental health population.  *See* Declaration of Lori Rifkin In Support of Plaintiffs' Motion to

22   Compel, *Coleman* Docket No. 2583, at  ¶ 3, Exh. C at 5:1-8; *see also* Defs.' Suppl. Brief  in

23   Opp. to Pls.' Motion for Referral to Three-Judge Panel ("Defs.' Suppl. Brief"), *Coleman*

24   Docket No. 2238, at 18:2-4 ("Plaintiffs cannot meet their burden because the evidence

25   establishes that the problems with the mental health care system are primarily administrative

26   problems.").  Defendants have argued in these proceedings that they are currently engaged in

27   efforts that will provide relief for the constitutional violations such as the implementation of

28   appropriate mental health care policies and procedures, recruitment of qualified clinicians, and

-17-

1   planning for and construction of appropriate medical and mental health beds.  Defs.' Suppl.

2   Brief at 4-8.  Defendants also contend, as illustrated by the Governor's response quoted above,

3   that they are currently implementing policies that address overcrowding, and therefore, a

4   prisoner release order should not be issued.  In previous briefing, defendants have identified

5   these efforts to address overcrowding as the AB 900 prison construction plan, out of state

6   transfers, and administrative parole changes.  Defs.' Suppl. Brief at 10-19.

7          Indeed, defendants' agency head declarations submitted with their privilege logs on

8   February 15, 2008 explicitly acknowledge that the documents withheld based on the

9   deliberative process privilege fall into categories having to do with the exact defenses

10  defendants have raised in this case.  *See* Declarations of Vincent P. Brown, Robert Gore,

11  Cynthia A. Radavsky, and David Runnels Regarding Privileged Documents Identified On

12  February 15, 2008 Privilege Log, filed 2/15/08.  The agency declarants identify the following

13  categories of documents that have been withheld pursuant to claims of deliberative process

14  privilege:

15          • "Issues pending in the underlying class action cases and Three-Judge Panel

16             proceeding" (Gore, Radavsky, Brown) including defendants' ability to

17             implement court orders concerning, among others, bed plans, out-of-state bed

18             plan, staffing, and facility management organizational structures, as well as

19             issues relating to prison reform;

20          • "Prison reform policy issues" (Runnels, Gore, Brown) including "the

21             Administration's response to the CDCR population issue," "issues related to the

22             Governor's Rehabilitation Strike Team, parole reform options, sentencing

23             commission proposals, AB 900 funding mechanisms and missions, and costs and

24             savings involved in reducing recidivism";

25          • "Budget Issues" (Runnels, Gore, Brown) including individual budget requests

26             and the overall status of the State budget, including proposed mid-year cuts,

27             appropriation language to address court orders issued in the class action cases

28             against CDCR, and proposed language regarding AB 900;

-18-

- "CDCR Week Ahead Reports" (Runnels, Gore) including implementation of court orders issued in class action cases against CDCR, budget measures and mechanisms impacting CDCR, and issues relating to inmate population controls and housing agreements;
- "Analyses of Agency Functions and Responsibilities" (Radavsky) including a draft of the California Health and Human Services Agency Action Plan Update.

In the instant case—in which defendants maintain that their decision-making and administrative capabilities (or incapabilities) are the cause of the underlying Constitutional violations, and that they will plan and implement adequate remedies so that a prisoner release order is not warranted—the categories of documents described by the agency declarants are highly and indisputably relevant.  Without access to the documents reflecting the State's decision-making, the Three-Judge Court cannot meaningfully address the State's argument that its failures in this area are the real primary cause of the violations rather than the population pressures resulting from overcrowding.  Nor can plaintiffs or the Three-Judge Court fairly evaluate defendants' remedial plans without access to defendants' highly probative discussions about the adequacy of those very plans.

Plaintiffs' review of the privilege logs estimates that more than eighty percent of the documents defendants have withheld pursuant to assertions of the deliberative process privilege are facially related to the defenses raised in this case.  Attached as Exhibit E to the Rifkin Declaration is a table showing the number of documents defendants claim to be privileged, but for which defendants' description facially references defendants' defenses in this case.  Plaintiffs estimated these numbers by identifying the terms that are clearly relevant to defendants' defenses and then counting the number of documents described in the "Summary" of each entry as related to those defenses.  Rifkin Decl. ¶ 10, Exh. E.  For example, plaintiffs used the terms, "AB 900," "Reentry," "Rehabilitation," "Strike Team," "Construction," "Capacity," and "Infill."  *Id.*  These terms appear in entries such as E00000179 ("Pre-decisional draft of proposed changes to AB 900"), E00000947 ("Pre-decisional email thread discussing implementation of AB 900"), E00000973 ("Pre-decisional email thread

-19-

discussing AB 900 funding for rehabilitation programs"), E00000920 ("Pre-decisional report titled Short, Medium and Long Term Capacity Alternatives"), E00007429 ("Pre-decisional Significant Issue Report on AB 900 funding), and E00007484 ("Pre-decisional Assessment of the Capacity of the Office of Facilities Management to Meet the Requirements of AB 900"). Approximately 3,853 out of 4,653 documents withheld pursuant to assertions of the deliberative process privilege can be identified as relevant to defendants' defenses by this method alone. *Id.* Still more documents do not contain these terms in their descriptions, but appear to be related to defendants' defenses. For example, E00005152, titled "Pre-decisional Implementation Barriers Report" would not be identified by the keyword search, but is immediately preceded in the log by E00005151, titled "Pre-decision AB 900 Barriers Report," and shares somes of the same bates numbers, indicating it is also about AB 900. Documents E00001307 and E00001308 are titled "Pre-decisional email thread discussing use of wastewater treatment plant for SVSP and Soledad." These are most likely related to defendants' ability to house overflow population at these institutions because of the infrastructure problems this raises. Other documents have descriptions that are so vague that it is impossible to tell what their subject matter is. For example, E00000632 titled "Email discussing and attaching pre-decisional draft reports," E00001361 titled "Image file attached to privileged report," and E00006953 titled "Email attaching documents pertaining to definitions." Ultimately—as defendants' agency declarants state—the documents defendants have withheld pursuant to assertions of the deliberative process privilege are directly relevant to defendants' defenses in this case.[7] As such, defendants should not be permitted to hide the documents from public view. *See, e.g., In re Subpoena Duces Tecum,* 145 F.3d at 1424; *see*

---

[7] In fact, defendants informed plaintiffs during the parties' recent meet and confer on this issue that "defendants can clearly assert the deliberative process privilege for pre-decisional or draft documents or communications relating to potential defenses in the case, like AB 900." Rifkin Decl. ¶ 12, Exh. G (2-20-08 Mello-Rifkin email). Defendants' position blatantly repudiates this Court's December 7, 2007 order holding that defendants cannot withhold documents relevant to the defenses they themselves have put at issue in this case.

Joint Statement Regarding Discovery Disputes,
Nos.: Civ S 90-0520 LKK-JFM, C01-1351 TEH

1    *also Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK-JHM, June 14, 2006 Order, Doc.

2    No. 1840**.**

3

4              **(2)    This Court Has Already Recognized that the
                        Deliberative Process Privilege Is Overcome For
5                       Defendants' Budget Change Proposals and
                        Financial Documents Because of their particular
6                       relevance to defendants' claims to be able to
                        comply with Court orders**

7

8        Approximately 808 documents on defendants' log are or discuss defendants' budget

9    change proposals (BCPs) or finance letters.  *See* Exhibit F to Rifkin Decl.  In addition to this

10   Court's December 7, 2007 order, the *Coleman* Court has previously ordered defendants to

11   produce budget change proposals and draft budget change proposals to plaintiffs, despite

12   defendants' claim of deliberative process and official information privileges.  *See Coleman v.*

13   *Schwarzenegger,* No. CIV S-90-0520 LKK-JFM, June 14, 2006 Order, Doc. No. 1840.  In

14   2006, a dispute arose between the parties because defendants maintained that they had obtained

15   the staffing necessary to comply with the Court's March 3, 2006 Order to implement the

16   Revised Program Guide despite indications that the State's request to the Legislature was

17   inconsistent with and greatly reduced from the CDCR's original request for staffing deemed

18   necessary to comply with the Court's order.  This information was relevant to the

19   determination of whether defendants were capable of complying with the Court's order:  "Put

20   directly, the court requires the BCPs in part to determine whether the state's deliberative

21   process is frustrating the ability of the state to comply with the courts' orders." *See Coleman v.*

22   *Schwarzenegger,* No. CIV S-90-0520 LKK-JFM, June 14, 2006 Order, Doc. No. 1840.  The

23   Ninth Circuit rejected defendants' challenge to that order.

24       The issues in the current proceedings raise the stakes even higher:  They concern the

25   State's ability to provide *both* constitutionally adequate medical and mental health care to the

26   174,000 individuals currently incarcerated in California prisons.  Defendants have maintained

27   that their own administrative failings, rather than systemic overcrowding, are the cause of the

28   violations; and yet defendants simultaneously maintain that the State's ability to implement

-21-

bed plans, staffing recruitment, prison construction, and rehabilitation programs, among others, will provide sufficient and timely relief such that a prisoner release order is unnecessary.  By wielding the shield of deliberative process privilege, defendants are attempting to withhold what appear to be crucially relevant documents about the validity of their defense.  These documents—if in fact, they do actually contain pre-decisional deliberative material—are highly likely to shed light on the reliability and meaningfulness of defendants' plans, defendants' ability to actually fund and implement these plans, and what timeframes are accurate for expected implementation and relief.

Defendants' current privilege logs reveal that they have continued to withhold budget change proposals and finance statements throughout their productions.  For government agencies, the allocation of funds appears to be the most crucial factor to determine what actions the government actually takes and whether those actions will be effective (because effectiveness generally requires appropriate financing).  As the Court found in *L.H. v. Schwarzenegger*, 2007 WL 2009807 (E.D. Cal. July 6, 2007), a case involving similar claims of deliberative process privilege by these same defendants, these documents "contain in-depth analysis of the need for budget adjustment, and analyze the costs and burdens associated with" providing various resources within certain amounts of time.  *Id.* at *7.  As the *Coleman* Court concluded in June of 2006, budget change proposals and finance documents are highly probative of defendants' decisions and actions.  In this case, where the Attorneys General assigned as lead counsel for the State on the various health care related class action lawsuits have collectively issued an opinion that AB 900—the State's "number one" solution to overcrowding—is improperly funded, the financial documents defendants have withheld must be produced.  *See* Report of the Receiver, filed 11/15/07, *Plata* Document No. 930, at 3-4.

> **(3)**     **Even If The Documents Were To Satisfy The Deliberative And Predecisional Requirements, Plaintiffs' Need For The Materials Greatly Outweighs The Government's Minimal Interest In Non-Disclosure**

Plaintiffs' need for the documents far exceeds any interest defendants may have in withholding the responsive documents.  The factors the courts consider in balancing plaintiffs'

-22-

need against the government's interest in non-disclosure tip heavily in favor of the plaintiffs in this case. For example, "the interest of the litigant, and ultimately society, in accurate judicial fact finding, and the seriousness of the litigation and the issues involved" are factors that weigh heavily in favor of disclosure. *See L.H.,* 2007 WL 2009807 at * 8 (citations omitted). "[W]hen the issues involved are alleged violations of federally-protected civil rights, courts have consistently found that this need is heightened and the privilege is outweighed." *Id.* (citing *United States v. Phoenix Union High Sch.*, 681 F.2d 1235 (9th Cir. 1982), and other cases).

The issues in this case are the most serious possible: indeed, they are matters of life and death, as inmates are daily denied the minimal level of medical and mental health treatment required by the Constitution. Society has a common interest in enforcing these rights and in ensuring accurate judicial fact-finding in a case of such sweeping political and humanitarian consequence. Accordingly, this factor weighs in favor of disclosure of the documents.

Moreover, the withheld documents are highly relevant; indeed, they go to the heart of plaintiffs' claim and defendants' defenses, as to whether overcrowding is the primary cause of the constitutional violations. Even the privilege log's cursory descriptions of withheld documents reveal the compelling relevance of these documents. As outlined in the previous section, these documents address defendants' obstacles to implementing AB 900, defendants' plans to remedy the constitutional violations, and the central question of causation of the constitutional violations. Moreover, these documents are not available from any other source.

The government's role in this litigation is central factor that also weighs in favor of disclosure. Not only is the government the defendant in this case, but the decision-making process itself is at issue in the case. *See N. Pacifica*, 274 F. Supp. 2d at 1124. As discussed, defendants have put their decision-making at issue in this case by raising it as a defense, and they cannot now be allowed to withhold evidence of that process.

The Court should also examine the extent to which government discussions would be impeded by the disclosure of these documents. The ultimate purpose of the deliberative-

process privilege is to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151. There is no evidence that agency decisions would be hindered by the disclosure of these documents. Defendants' agency declarants do not allege any harm, speculative or specific, that disclosure of these documents will cause. Any speculative risk to the government of embarrassment is not enough to outweigh the interests of the class members whose rights are being gravely violated, the interest of the Court in accurate fact-finding, and the interest of the public in ensuring that the significant public policy matters involved in this case are considered with all relevant information at hand.

In sum, these factors all weigh heavily in favor of disclosure. Plaintiffs respectfully request that this Court hold the deliberative process privilege inapplicable or, in the alternative, find that plaintiffs' need for the documents far outweighs defendants' interest in withholding them. Plaintiffs request that this Court order defendants to immediately produce to plaintiffs all documents withheld pursuant to assertions of deliberative process privilege. If defendants believe there are any documents in this group for which they have sufficiently established the elements of the privilege, and that do not pertain to the defenses they have raised in this case, they should submit those documents to the Court for further *in camera* review.

> ### 2. Defendants Have Failed To Establish That The Attorney-Client or Attorney Work Product Privileges Apply to A Subset of Documents Withheld That Were Not Authored By An Attorney, Do not appear from the document description to be communications seeking legal advice, and for which the attorneys appear as "CC" recipients on a group list

Defendants have asserted the attorney-client and/or attorney work product privileges as justification for withholding approximately half of the documents listed in their privilege logs. For the vast majority of these documents, plaintiffs do not dispute defendants' claims of privilege.[8] However, plaintiffs continue to object to defendants' use of these privileges to

---

[8] As noted previously, in addition to the limited category of disputed documents claimed as attorney-client privileged and/or protected by the attorney work product doctrine that plaintiffs describe in this section, plaintiffs have also identified approximately sixty documents withheld pursuant to the attorney-client privilege for which (a) no attorney has been identified as either author or recipient, or

(continued . . .)

withhold documents that were not authored by an attorney, do not appear from the document description to be communications seeking legal advice, and for which the attorney(s) appear as "cc" recipients on a group list including a number of non-attorneys. A list of these documents is attached as Exhibit H to the Rifkin Declaration.

"Federal common law recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, *provided such communications were intended to be confidential*." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) (emphasis added). "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

At a minimum, in order to assert the privilege, the communication must be between a client and an attorney. However, even where the communications are between an attorney and a client, defendants must show that these were communications intended to be, and in fact were, kept confidential between an attorney and client for the purpose of obtaining legal advice. *See Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990), *overruled in nonrelevant part by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997). The category of documents that plaintiffs request be disclosed are those sent by non-attorney defendant employees to other non-attorney defendant employees, with a "cc" to an attorney. These communications are not protected by the privilege, as this Court has already noted: "Including an attorney on the distribution list . . . [or] Cc'ing numerous people . . . one of whom happens to be an attorney . . . does not amount to attorney client communication." *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 2255538, at * 1 (E.D. Cal. Aug. 7, 2006) (internal quotation marks omitted) (applying

---

(b) outsiders to the attorney-client relationship (such as legislators or academics) are listed as either authors or recipients. Plaintiffs have requested that defendants produce these documents. A list of these documents is attached as Exhibit I to the Rifkin Declaration. Plaintiffs hope to resolve this dispute without Court intervention, but if defendants do not agree to produce these documents, plaintiffs respectfully request the Court order them to do so. Rifkin Decl. ¶14.

California privilege law but noting the federal standard is the same).  Defendants are required to establish that each document consisted of a confidential communication *between* an attorney and a client.  If an attorney is merely a "cc" recipient on an e-mail, and not the recipient of "full and frank disclosure" from her client, then the privilege is not properly invoked.

Approximately 450 documents that defendants have withheld clearly fit this category. *See* Rifkin Decl. ¶ 13, Exh. M.  For example, E00009599 is a document identified by defendants as a "Draft of report titled What is Reentry?."  It was sent by a non-attorney to fifteen recipients, including the Acting Director for CDCR's Division of Reentry and Recidivism Reduction, the two co-chairs of defendants' AB 900 strike teams, the Chief Deputy Secretary for CDCR Adult Programs, and the Deputy Director of the Corrections Standards Authority.  The fact that two of the recipients are staff counsel in various state agencies does not make this draft report sent to 13 other high-level officials privileged.

Similarly, E00006394 was sent from a non-attorney (George Sifuentes, CDCR's Director of Facilities Management) to two high-level administration officials (Deborah Hysen, the chair of defendants' AB 900 strike team, and Doug McKeever, the Director of CDCR Mental Health Programs) and one deputy attorney general.  The communication is merely a "completed projects list."  From defendants' own description, no legal advice is sought or provided.  E00018859 is a "Draft report detailing 2007 budget highlights," sent by a non-attorney to five recipients, only one of whom is an attorney.  E00000270 and E00000271 are further examples.  These documents were written by Deborah Hysen, the non-attorney chair of defendants' AB 900 strike team, and sent to the following recipients: "Cullen, Vincent; Esmael, Martha (CDCR - Chief of Strategic Management, Office of the Secretary); Hayhoe, Joyce (CDCR - Assistant Secretary, Office of Legislation); Hidalgo, Oscar (Office of Public and Employee Communications); Kessler, Steve; Slavin, Bruce (CDCR - General Counsel)."  They concern, respectively, "Email discussing and attaching proposed definitions for AB 900 terms" and "Draft definitions for AB 900 Terms/Phrases."  Of the six high-level recipients, only one is a lawyer, and the subject is clearly neither seeking nor providing legal advice.

Additionally, the attorney work product doctrine does not save this limited group of documents from disclosure. "The work-product doctrine is a qualified immunity which protects from discovery documents and tangible things prepared by a party or that party's representative in anticipation of litigation." *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003) (citing Fed. R. Civ. P. 26(b)(3)). As the party claiming the work-product privilege, defendants bear the burden of establishing that documents claimed as work product were, indeed, prepared in anticipation of litigation. *See id.* Defendants have not met their burden for the group of documents challenged by plaintiffs. None of these documents were authored by an attorney and there has been no showing that the documents were prepared in anticipation of litigation.

**B.    Defendants**

1.    **Defendants' Revised Final Privilege Logs and Supporting Declarations Are Sufficient and Comply with Statutory Requirements.**

Plaintiffs' motion, much like their earlier motion, is based in part on the contention that Defendants' privilege logs improperly identified privileged documents. To this end, Plaintiffs argued that the descriptions of some of the documents identified on Defendants' privilege logs did not include enough information to justify being withheld. To the contrary, Defendants' privilege logs and supporting declarations fully comply with Federal Rule 26(b)(5).

a.    **Defendants' Privilege Logs Are More Than Sufficient.**

Plaintiffs misapprehend the standards for asserting privilege in cases where a large volume of documents are involved. When dealing with large volumes of documents, the law clearly provides for a liberal standard in the identification of documents being claimed as privilege:

> The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if

1    the items can be described by categories.

2

3    Fed. R. Civ. P. 26 (b)(5), 1993 Advisory Committee Note; see also *Bourne v. Town of*

4    *Madison*, 05-CV-365-JD, 2007 U.S. Dist. LEXIS 23945 at * 9 (Dist. N.H., March 2007);

5    *Vaughan v. Celanese Americas Corp.*, 2006 U.S. Dist. LEXIS 89888 at *9 (W.D.N.C., Dec.

6    2006).

7            Privilege logs are sufficient if they identify the documents, the individuals who were

8    parties to the communications, and some level of detail to permit a judgment as to whether the

9    document is at least potentially protected from disclosure.  *United States v. Constr. Prods.*

10    *Res., Inc.*, 73 F.3d 464, 473-474 (2d. Cir. 1996); *Bowne v. Ambase Corp.*, 150 F.R.D. 465, 474

11    (S.D.N.Y. 1993).

12            Other required information, such as the relationship between the individuals listed in the

13    log and the litigating parties, the maintenance of confidentiality and the reasons for any

14    disclosures of the document to individuals not normally within the privileged relationship, is

15    then typically supplied by affidavit or deposition testimony.  *U.S. Constr. Prods.* at 473-474;

16    *Bowne* at 474.  Some courts have even held that where creation of a document-by-document

17    privilege log would be unduly burdensome, a description by category may suffice.

18            Here, plaintiffs' own examples of these types of deficiencies in the privilege logs belie

19    their contentions.  (Mello, Decl., ¶ 4, Exh. F.)  For this reason alone, this motion to compel

20    must be denied.

21               **b.**    **Defendants' Revised Declarations Are More Than**

22                     **Sufficient.**

23            To be sufficient, the declarations supporting the privilege logs must establish the

24    following criteria:  The declaration (1) must be authored by the head of the agency, or his/her

25    properly delegated authority; (2) must state with particularity what information is subject to the

26    privilege; and (3) must supply the court with the reasons or bases for maintaining the

27    confidentiality of the requested documents. *Pacific Gas & Electric Co. v. U.S.*, No. 04-74C,

28    2006 U.S. Claims LEXIS 63, at **19-20 (Fed. Clms. March 2006).  Here, Defendants have

provided the necessary evidentiary support for the privilege logs in the form of revised declarations by Robert Gore, Vincent Brown, Cindy Radavsky and David Runnels that were filed on January 28, 2008 and February 15, 2008.  In each of these declarations, the declarants state that they have properly been delegated authority, what information is subject to the privilege, and the reasons or bases for maintaining the confidentiality of the requested documents.  Together, the final revised privilege logs and various declarations supply the necessary information for Plaintiffs to evaluate the claims of privilege asserted here.  As such, defendants have complied with the requirements of Federal Rule of Civil Procedure 26(b)(5) and plaintiffs' motion to compel must be denied.

> **2.    Plaintiffs' Motion to Compel Documents Protected by The Attorney-Client Privilege and the Attorney Work-Product Doctrine Is Contrary to Law and Well-Established Public Policy**

> **a.    The Attorney Client Privilege.**

The attorney-client privilege protects confidential communications between a client and an attorney from disclosure.  *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).  This privilege is the oldest of the privileges for confidential communications known to the common law.  *Upjohn Co. v. U. S.*, 449 U.S. 383, 389 (1981).  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  *Id.*  The U.S. Supreme Court explained that the privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."  *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.  *Trammel v. U. S.*, 445 U.S. 40, 51 (1980).  Because of its significance to the jurisprudence system, this privilege has been described as "sacrosanct" and courts are encouraged to safeguard the privacy it affords its holders.  *Andrew Corp. v. Beverly Manufacturing Co.*, 415 F. Supp. 2d 919, 926 (N.D. Ill. 2006).

-29-

1   The attorney-client privilege protects 'interests and relationships which are regarded as

2   of sufficient social importance to justify some sacrifice of availability of evidence relevant to

3   the administration of justice. *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp.

4   2d 810, 812 (E.D. Cal. 2006). When the privilege applies "it affords confidential

5   communications between lawyer and client complete protection from disclosure." *Hawkins v.*

6   *Stables*, 148 F.3d 379, 382 (4th Cir. 1998).

7               **b.       The Attorney Work-Product Doctrine.**

8       In a similar vein, the work product doctrine protects materials that reveal an attorney's

9   thoughts, impressions, strategy, intended lines of proof, evaluation of strengths and weaknesses

10  and inferences drawn from interviews and communications. Fed. R. Civ. P. 26(b)(3). The

11  doctrine is designed to preserve the privacy of attorneys' thought processes, and to prevent the

12  parties from "borrowing the wits of their adversaries." This work product protection applies to

13  all documents and tangible things prepared in anticipation of litigation or for trial. Fed. R. Civ.

14  P. 26(b)(3). The work-product protection however is not limited to materials prepared by an

15  attorney. *U. S. v. Aldman*, 68 F.3d 1495, 1501-1502 (2nd Cir. 1995). To the contrary, it

16  extends to materials prepared by the party or by any representative of the party. *Id.*

17      In *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), the U.S. Supreme Court explained the

18  significance and necessity of the doctrine as follows:

19

20          Proper preparation of a client's case demands that [the attorney]
            assemble information, sift what he considers to be the relevant
21          from the irrelevant facts, prepare his legal theories and plan his
            strategy without undue and needless interference. That is the
22          historical and the necessary way in which lawyers act within the
            framework of our system of jurisprudence to promote justice and to
23          protect their clients' interests. This work is reflected, of course, in
            interviews, statements, memoranda, correspondence, briefs, mental
24          impressions, personal beliefs, and countless other tangible and
            intangible ways -- aptly though roughly termed by the Circuit
25          Court of Appeals in this case as the "work product of the lawyer."
26          Were such materials open to opposing counsel on mere demand,
            much of what is now put down in writing would remain unwritten.
27

28

-30-

> An attorney's thoughts, heretofore inviolate, would not be his own.
> Inefficiency, unfairness and sharp practices would inevitably
> develop in the giving of legal advice and in the preparation of cases
> for trial. The effect on the legal profession would be demoralizing.
> And the interests of the clients and the cause of justice would be
> poorly served. *Id.*

So important is this doctrine to the attorneys ability to represent his/her clients that one court has held: "[N]o showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories." *Duplan Corp. v. Moulinage et Retor derie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974).

### 3. Defendants Are Still Evaluating Whether the Documents Identified by Plaintiffs at 12:17 a.m., 12:34 a.m., 11:42 a.m. and 12:32 p.m. on February 25, 2008 Are Properly Privileged.

As plaintiffs admitted in the meet and confer process, the vast majority of the documents identified as attorney-client privileged communications or attorney work-product were properly identified as such. That said, defendants have not had a sufficient amount of time to determine whether any or all of the 52 documents identified by plaintiffs at 12:17 a.m. and 12:34 a.m. on February 25, 2008, or any of the approximately 68 documents identified by plaintiffs at 11:42 a.m., or any of the approximately 450 documents identified by plaintiffs at 12:32 p.m. on February 25, 2008 were improperly privileged. (Mello Dec. ¶ 9.)

### 4. Plaintiffs Have Not Identified Documents with Specificity, and Have Not Shown that the Necessity for the Documents Outweighs the Government's Interest in Maintaining Their Confidentiality.

#### a. While Difficult to Determine in a Vacuum, it Appears that the Documents Sought by Plaintiffs Are Protected by the Deliberative Process Privilege.

The deliberative process privilege is a matter of federal common law. Fed. R. Evid. § 501, 1101(c) (Rule 501 applies "at all stages of all actions, cases, and proceedings.") Also known as the "executive," "governmental," "official information," or "intragovernmental opinion" privilege, the deliberative process privilege was previously proposed in proposed Federal Rule of Evidence § 509. Although Rule 501 was adopted instead of Rule 509, the

-31-

proposed Rule 509 "remains a useful guide and standard."  In *re Franklin National Bank*, 478

F. Supp. 577, 580 (E.D. N.Y. 1979).  Proposed Rule 509(b) provided that the "government has

a privilege to refuse to give evidence upon a showing of reasonable likelihood of danger that

the evidence will disclose official information as defined in this rule."

Subsection (a)(2) defines intragovernmental opinions as subject to the privilege:

> Information within the custody or control of a department or
> agency of the government, the disclosure of which is shown to be
> contrary to the public interest and which consists of . . .
> intragovernmental opinions or recommendations submitted for
> consideration in the performance of decisional or policy-making
> functions.

The deliberative process privilege applies to the process for formulating government

decisions as well as government policies.  The deliberative process privilege "permits the

government to withhold documents that reflect advisory opinions, recommendations and

deliberations comprising a part of a process by which government decisions and policies are

'formulated'."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  The privilege has

been applied to a variety of governmental decisions, including the decision to deny funding

monies.  See *Casad v. U. S. Dep't. of Health and Human Services*, 301 F.3d 1247 (10th Cir.

2002).  Indeed, the privilege applies to communications between all branches of government

as well as to communications between outside consultants and government agencies.

*Centifaniti v. Nix*, 865 F.2d 1422, 1432 (3rd Cir. 1989) (letter from disciplinary board to

supreme court regarding regulation of attorneys); *Texas v. Lee*, 889 F.2d 59, 61 (5th Cir. 1989)

(documents containing recommendations of temporary consultants protected).  The privilege

serves to ensure the quality of agency decisions, by promoting frank and independent

discussion among those responsible for governmental decision-making.  *Sears*, 421 U.S. at

150.

Consistent with its purpose, the deliberative process privilege applies to those

documents that are "pre-decisional" or generated before the adoption of the agency's policy or

1    decision. *Federal Trade Commission v. Warner Communications, Inc.*, 742 F.2d 1156, 1161

2    (9th Cir. 1984). Even if pre-decisional in time of preparation, documents that are purely

3    factual summaries are not protected by the deliberative process privilege. *E.P.A. v. Mink*, 410

4    U.S. 73, 87-88 (1974). Thus, purely factual material contained in deliberative memoranda and

5    severable from its context is subject to disclosure. *Id.*

6          Plaintiffs argue that certain documents are not pre-decisional and therefore not protected

7    by the deliberative process privilege or merely attachments to privileged emails. For example,

8    plaintiffs appear to argue that the deliberative process privilege does not apply to emails and

9    documents relating to the implementation of AB 900, which are dated after the enactment of

10   AB 900. Plaintiffs misunderstand the role of AB 900 and defendants' current implementation

11   efforts. AB 900, however, is a funding mechanism for CDCR to fundamentally alter its

12   practices and methodologies for the incarceration, development, treatment, and parole of its

13   inmates. AB 900 does not determine which particular programs and projects are approved for

14   funding. Instead, CDCR first develops the program or project, which is then vetted through the

15   Department of Finance and the Governor's Office for approval. Once approved, the projects

16   are then presented to the California Legislature for approval and funding under the process

17   prescribed by AB 900. Consequently, contrary to plaintiffs' counsel's contention, decisions

18   regarding the implementation of AB 900 are still ongoing.

19          Moreover, in the process necessary to make these decisions, CDCR creates documents,

20   such as reports, spreadsheets, and schedules. These documents are circulated within CDCR,

21   the Department of Finance, and the Governor's Office. Consequently, these documents reflect

22   current discussions regarding the implementation of AB 900, which may differ from the

23   ultimate decision reached by defendants. As a result, these types of pre-decisional documents

24   fall squarely within the type of documents that can and should be withheld on the basis of

25   deliberative process.

26

27

28

1

**b.    Balancing of Plaintiffs' Professed Need for the Documents Against Defendants' Interest in Maintaining Their Confidentiality Does Not Support Disclosing Generic Categories of Privileged Documents.**

2

3

4    Even if there was a demonstrated need for the unspecified documents plaintiffs seek,

5    plaintiffs fail to make the sufficiently strong showing that is required to override the

6    government's interest in protecting its deliberative processes.  Four factors must be considered

7    in determining whether to override the privilege: (1) the relevance of the evidence; (2) the

8    availability of other evidence; (3) the government's role in the litigation; and (4) the extent to

9    which disclosure would hinder frank and independent discussion regarding contemplated

10    policies and decisions.  *Warner Communications*, 742 F.2d 1156,  1161 (9th Cir. 1984).

11    Here, there is no basis for finding that the plaintiffs' need outweighs Defendants'

12    interest in protecting its deliberative processes, because plaintiffs have not even identified the

13    contested documents, much less articulated their professed need for them.  Consequently,

14    Plaintiffs have failed to make the requisite "strong showing" necessary to override the

15    deliberative process privilege.

16

**c.    Defendants Have Not Waived the Deliberative Process Privilege.**

17

18    Plaintiffs also appear to argue that defendants have put their deliberative processes at

19    issue by asserting that administrative problems such as systemic failures to recruit, retain and

20    pay staff, or failures to plan for and provide mental health beds at appropriate levels, are the

21    causes of any violation of plaintiffs' right to a constitutionally adequate mental health care

22    system.  They argue that they must have access to the documents that reflect the State's

23    decision-making in order for the Three-Judge Court to evaluate the defense and defendants'

24    remedial plan meaningfully.

25    Not so.  That the defendants asserted that administrative problems rather than the size of

26    the population are the causes of any violation does not vitiate the deliberative process privilege

27    as to each and every document that may have dealt with those administrative problems.

28    Indeed, the very case authority relied on by plaintiffs proves otherwise.  To be certain, the

-34-

court in *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*,
145 F.3d 1422 (D.C. Cir. 1998), made clear that it is only when the claims at issue turn on the
government's intent, that the deliberative process privilege is not properly asserted.  *Id.* at
1424.  Stated differently, a waiver of the privilege only applies when the deliberations (or
intent) of the administration, and not simply the quality of the administration itself, are placed
in issue.  In this regard, the court in *In re Subpoena* stated:

> If the plaintiff's cause of action is directed at the government's
> intent, however, it makes no sense to permit the government to use
> the privilege as a shield. For instance, it seems rather obvious to us
> that the privilege has no place in a Title VII action or in a
> constitutional claim for discrimination.  The Supreme Court
> struggled in Crawford-El and Webster with governmental claims
> that discovery in such a proceeding should be limited, but no one in
> any of these cases ever had the temerity to suggest that the
> privilege applied.  The argument is absent in these cases because if
> either the Constitution or a statute makes the nature of
> governmental officials' deliberations the issue, the privilege is a
> nonsequitur.  *Id*. at 1424.

        Finally, plaintiffs' own argument provides further evidence that the Court did not intend
for defendants' assertions or conduct to constitute a waiver of the privilege.  In this regard,
plaintiffs note that the court in *Coleman* ordered the production of budget change proposals
and drafts of the budget change proposals.  Notably, defendants then, just as now, maintained
the deliberative process privilege with regard to the documents sought.  The Court's ruling is
therefore noteworthy in that it ordered only a narrow production by defendants, and
specifically refrained from sanctioning a wholesale waiver of all documents subject to the
deliberative process privilege.

        Additionally, plaintiffs' asserted need for the withheld documents is not well taken.  In
this proceeding, defendants have endeavored to consistently produce documents reflecting
final decisions of the respective client agencies.  Contrary to plaintiffs' assertions, defendants
have produced approved budget change proposals and finance letters from CDCR.  Moreover,

1  a vast majority of these documents are either public documents or defendants have already

2  provided such documents to plaintiffs in the context of the Coleman and Plata litigation.

3  Therefore, plaintiffs have more than adequate documents in order to evaluate defendants'

4  defenses and there is no waiver by defendants.

5  **IV.    CONCLUSION**

6      **A.    Plaintiffs**

7        Plaintiffs request that the Court order immediate production of all documents for which

8  defendants continue to assert deliberative process privilege. If defendants believe there are any

9  documents in this group for which they have sufficiently established the elements of the

10  privilege in accordance with the rulings of this Court, and that do not pertain to the defenses

11  they have raised in this case, they should submit those documents to the Court for further *in*

12  *camera* review. Plaintiffs also request that the Court order immediate production of the limited

13  group of documents described above for which defendants have insufficiently asserted the

14  attorney-client privilege and/or attorney work product doctrine, and which fall outside of these

15  protections.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**B.      Defendants**

2          For the foregoing reasons, defendants respectfully request that the court (1) continue the

3   hearing on this motion to compel for a reasonable period of time and (2) order the plaintiffs to

4   provide defendants with a complete list of documents that they seek production of by way of

5   this motion to compel.  Alternatively, defendants request that plaintiffs' motion to compel be

6   denied in its entirety because plaintiffs have failed to show that defendants revised final

7   privilege logs are inadequate.

8   Dated:  February 25, 2008                              Respectfully submitted,

9

10                                                         _/s/ Lori Rifkin_
                                                           Lori Rifkin
11                                                         Rosen, Bien & Galvan
                                                           Attorneys for Coleman Plaintiffs
12                                                         And On behalf of Plata Plaintiffs

13  Dated:  February 25, 2008                              Respectfully submitted,

14

15

16                                                         _/s/ Paul B. Mello_
                                                           Paul B. Mello
17                                                         Hansen Bridgett
                                                           Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

Joint Statement Regarding Discovery Disputes,
Nos.:  Civ S 90-0520 LKK-JFM, C01-1351 TEH