1 | PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
2 | STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
3 | General Delivery
San Quentin, California 94964
4 | Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

5 | ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
6 | JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
7 | LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
8 | 315 Montgomery Street, 10th Floor
San Francisco, California 94104
9 | Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

10 | THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
11 | CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
12 | 600 Harrison Street, Suite 120
San Francisco, CA 94107
13 | Telephone: (415) 864-8848

14 | Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No.: Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    vs.<br><br>    Defendants. | No. C01-1351 TEH<br><br>**JOINT LIST OF DISPUTED DOCUMENTS**<br><br>Date:    March 12, 2008<br>Time:    11:00 a.m.<br>Place:    Courtroom 26<br>Judge:    Hon. John F. Moulds,<br>           Magistrate Judge |

Pursuant to the Order of February 26, 2008, the parties hereby provide the Court with "a list of all documents as to which claims of privilege remain in dispute together with, as appropriate, any supplemental briefing relevant to any remaining disputes."

**PLAINTIFFS' POSITION**

1. Deliberative Process Privilege

Plaintiffs contest all of defendants' assertions of deliberative process privilege for the reasons set forth in the Joint Statement Regarding Discovery Disputes of February 25, 2008 (Joint Statement).

2. Attorney Client Privilege

There are three categories of contested documents for which defendants continue to claim attorney-client privilege.[1]

(a) No attorney listed as author or recipient

On February 25, 2008, plaintiffs provided defendants with a list of 25 documents for which no attorney was listed as author or recipient on the February 15 privilege log and requested that these documents be produced. *See* Exhibit I to Declaration of Lori Rifkin, February 25, 2008 (Docket 2692). Defendants did not respond until 4:08 p.m. on March 6 and 2:13 p.m. on March 7. Declaration of Sara Norman in Support of Joint List of Disputed Documents (Norman Decl.), Exhibits A and B. In those responses, defendants agreed to produce seven of these documents, stated that two had been produced already in redacted form, and withdrew attorney-client claim as to one document while maintaining the assertion of deliberative process privilege. After reviewing defendants' responses, plaintiffs agree to withdraw their dispute over defendants' privilege claim as to one of the remaining documents.

Defendants claim that the remaining 14 documents do in fact have attorneys as authors or recipients, despite the fact that no such attorneys were listed in the February 15 log. For example, document E00000613 is listed in both the November 30, 2007, privilege

---

[1] Plaintiffs incorporate by reference the legal support for their position regarding defendants' claims of attorney-client privilege, as set forth in the Joint Statement at 24-27.

1  log and the revised February 15, 2008, privilege log with a single author (Joyce Hayhoe)
2  and a single recipient (Richard Subia), neither of whom is a lawyer. Now, defendants
3  directly contradict both of those logs and claim that the document "is an email
4  communication between Tami Bogert, Andrea Hoch, Louis Mauro, Jim Tilton, Richard
5  Subia, Joyce Hayhoe and Bud Prunty," a list which includes three lawyers. Exhibit A to
6  Norman Decl. Plaintiffs have no confidence that defendants are correct in their present
7  assertion that attorneys were included in the 14 contested communications, and request that
8  the Court order production of these 14 documents, listed in Exhibit C to the Norman
9  Declaration.

10  (b) <u>Outsider to the attorney-client relationship included as author or recipient</u>
11  On February 25, plaintiffs provided defendants with a list of 42 documents, each of
12  which include an outsider to the attorney-client relationship in its February 15 privilege log
13  entry. *See* Exhibit I to Declaration of Lori Rifkin, February 25, 2008 (Docket 2692).
14  Defendants did not respond until 4:08 p.m. on March 6 and 2:13 p.m. on March 7. Norman
15  Decl., Exhibits A and B. In those responses, defendants agreed to produce 29 of these
16  documents. After reviewing defendants' responses, plaintiffs agree to withdraw their
17  dispute over defendants' privilege claim as to three of the remaining documents.

18  Nine of the remaining documents have outsiders to the attorney-client relationship
19  listed as author or recipient in the February 15 log, but defendants now appear to claim that
20  those outsiders were not in fact authors or recipients of the documents. For example,
21  document E00020512 is listed in both the January 28 and February 15 privilege logs as
22  being authored by Senator Michael Machado and Assemblyman Jose Solorio. Now,
23  defendants directly contradict both of those logs and claim that the document "is an
24  attorney-client privileged communication between Deborah Cregger, Stephen Benson, and
25  Jim Martone." Plaintiffs have no confidence that defendants are correct in their present
26  assertion, and request that the Court order production of these nine documents, listed in
27  Exhibit C to the Norman Declaration.
28

In addition, defendants refuse to produce document E00083812 because it "is a communication between Joan Petersilia and Ben Rice." Exhibit A to Norman Decl. Joan Petersilia is a professor at the University of California-Irvine who works as an independent contractor for defendants. The document is described as "Email discussing EP report and Strike Team work." There is no indication that any attorney-client privileged communication took place between this outside consultant and Mr. Rice, a state attorney. Plaintiffs contest this privilege claim, as noted in Exhibit C to the Norman Declaration, and request that the Court order production of this document.

(c) <u>Attorney(s) copied on apparently non-privileged communication</u>

On February 25, plaintiffs provided defendants with a list of 449 documents which appeared to be non-privileged communications to which an attorney (or, occasionally, two attorneys) was copied. *See* Joint Statement at 24-27; Exhibit H to Declaration of Lori Rifkin, February 25, 2008 (Docket 2692). Defendants did not respond until 4:08 p.m. on March 6. Norman Decl., Exhibit A. At that time, defendants agreed to produce 55 of these documents and noted that 15 of these documents should be struck from the log since they have already been produced.

Of the remaining 379 documents, defendants have provided no information that would allow plaintiffs to reassess their position. In the Joint Statement, plaintiffs argued that, based on the limited information defendants provided in their privilege log as to the substance of these communications, these communications do not appear to be privileged pursuant to the attorney-client privilege. Defendants' response is simply to restate the various parties to the communication. In fact, for the vast majority of these 379 documents, defendants' response restates only a few of the parties to the communication, often leaving off 10 or more recipients listed in the February 15 log. *See, e.g.*, E00001146 (defendants' March 6 response leaves off 14 recipients from the February 15 log); E00001147 (same); E00001409 (over 30 recipients left out); E00001702 (18 recipients left out); E00001703 (same). It is not clear from defendants' March 6 email whether they now claim that their revised logs are wrong, or whether they are now omitting those recipients to make it appear

that a smaller group was involved in the communication and thus make it more likely that the attorney played a central role in the communication. It is impossible to meet and confer regarding defendants' response because it was provided at 4:08 p.m. the day before the present statement was due and plaintiffs, although working diligently from the moment they received defendants' response, did not discover the scope of the problem until shortly before the present statement was due.[2] Norman Decl., ¶ 6. Accordingly, plaintiffs contest these 379 documents, which are listed in Exhibit C to the Norman Declaration.

3. Other Privileges

The parties' disputes regarding the other claims of privilege have been resolved.

**DEFENDANTS' POSITION**

I.   **INTRODUCTION**

Following briefing by both sides regarding the status of the parties' ongoing discovery dispute in this matter, this Court instructed the parties to meet and confer in person to attempt to resolve the remaining disputes arising from claims of privilege. To that end, the parties met and conferred in person on March 5, 2008, and discussed the categories of privileged documents that remain in dispute.[3]

In the course of the parties' meet and confer discussions on March 5, 2008, it became apparent that the parties' point of contention centers solely on Defendants' assertion of the attorney-client privilege. Plaintiffs apparently believe that communications between one author and one-to-two recipients (at least one of which is an attorney) are presumptively attorney-client privileged, however, communications with multiple recipients are presumptively not attorney-client privileged, regardless of the presence of one or more attorneys listed as recipients, and regardless of the description of the communication. Plaintiffs further contend that a communication is presumptively not attorney-client

---

[2] At the Court-ordered meet and confer, which took place at defendants' request on March 5, defendants' counsel had no information to provide and not a single response to any documents plaintiffs had contested on February 25. Norman Declaration, ¶ 5.

[3] The Court's February 26, 2008 order for the parties to meet and confer was with regard to all disputes arising from privileges claimed except the deliberative process privilege. The Court deferred resolution of Defendants' assertion of the deliberative process privilege until further order by the Court.

1   privileged if an attorney is "cc'd" on the e-mail, simply by virtue of the fact that the
2   communication was not directed to the attorney as a primary recipient on an email
3   communication.
4       Defendants disagree with Plaintiffs' wholesale and imprecise approach to
5   determining proper application of the attorney-client privilege. Case law does not support
6   Plaintiffs' approach, which ignores the well-established "sacrosanct" nature of this
7   privilege. *Andrew Corp. v. Beverly Manufacturing Co.*, 4145 F. Supp. 2d 919, 926 (N.D.
8   Ill. 2006). Defendants contend that their clients' assertion of the attorney-client privilege
9   must be reviewed on an individual-document basis, and that such a review demonstrates that
10  Defendants properly applied the privilege only in instances in which information was
11  transmitted between Defendants' client and one or more of their attorneys in the expectation
12  of giving or receiving confidential legal advice in furtherance of that relationship.
13      Consistent with Defendants' proposed approach of an individualized assessment of
14  attorney-client privilege documents, Defendants reviewed all 516 documents identified by
15  Plaintiffs' counsel as in dispute. (Declaration of Samantha Tama in Support of Joint
16  Statement Regarding Discovery Dispute (Tama Decl.) ¶ 3.) Upon review, Defendants
17  agreed to produce 91 documents to Plaintiffs. (*Id.* at ¶ 4.) Additionally, Defendants offered
18  further explanation to Plaintiffs' counsel on a document-by-document basis why, of those
19  documents that were disputed by Plaintiffs but not produced by Defendants, assertion of the
20  attorney-client privilege (or some other privilege) was indeed proper. (*Id.*) Defendants sent
21  detailed explanations by e-mail to Plaintiffs' counsel on March 6, 2008 and March 7, 2008.
22  (*Id.* at ¶¶ 6 & 9.) As of 2:30 p.m. on March 7, 2008, Defendants had not received a
23  response from Plaintiffs regarding whether Plaintiffs had reconsidered their position with
24  respect to the remaining disputed privileged documents in light of Defendants' explanations.
25  (*Id.* at ¶ 10.)
26      Because case law supports Defendants' approach for an individualized review of the
27  privileged documents in dispute, and because the attorney-client privilege was indeed
28  properly asserted for the remaining documents in question, Defendants respectfully request

1 that Plaintiffs' motion to compel be denied.

## II. LEGAL ARGUMENT

As Defendants have argued previously, and as this Court is well aware, the attorney-client privilege is the oldest of the privileges protecting confidential communications, and was designed to encourage full and honest communication between attorneys and their clients with the goal of promoting the broader public interest in the observance of law and administration of justice. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Of course, Defendants do not dispute that "the mere relationship of attorney-client does not warrant a presumption of confidentiality." *Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 174. Rather, Defendants agree with Plaintiffs that communications should only be protected from disclosure where the communication is between an attorney and a client for the purpose of obtaining legal advice, and the communication was intended to be, and was in fact, kept confidential. *See* Joint Statement Regarding Discovery Dispute at 25:14-15.

But Defendants do not agree with Plaintiffs' misinterpretation of the law that "[i]f an attorney is merely a 'cc' recipient on an e-mail, and not the recipient of 'full and frank disclosure' from her client, then the privilege is not properly invoked." *Id.* at 26:3-4. The fact that an attorney is a "cc" recipient on an e-mail is not dispositive of the inquiry into whether or not that communication was sent for the purpose of obtaining legal advice. Indeed, the location of an attorney's e-mail address in the correspondence does not conclusively determine whether the communication is privileged. A more substantive review of the document is required before the privilege is either asserted or discounted.

Additionally, and contrary to Plaintiffs' position, the fact that an attorney was one of many recipients to an e-mail does not discount that the communication was in fact attorney-client privileged. So long as the communication remained confidential, it remained privileged. Here, Defendants are large governmental agencies with many decision-makers who must all be consulted by, and who seek advice from, their many attorneys. Simply because multiple Defendant-employees are included on an e-mail seeking legal advice does

1  not negate application of the privilege. Additionally, even correspondence among non-
2  lawyer clients may be protected by the attorney-client privilege so long as that
3  correspondence reflected matters on which the client wished to seek advice from their
4  attorneys. *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1077. "It would
5  undermine the purpose of the attorney-client privilege not to extend protection to [] notes
6  [that] . . . reflect matters about which the client intends to seek legal advice." *Id.*
7       In this context, the documents identified by Plaintiffs' counsel as in dispute are very
8  clearly attorney-client privileged communications. For instance, Plaintiffs identify
9  document E00001575 as a document that was allegedly improperly designated as
10 privileged. But E00001575 is a communication between, among others, Doug McKeever,
11 from the Division of Correctional Health Care within CDCR, Deputy Attorney General Lisa
12 Tillman, and CDCR Staff Counsel Michael Stone in which Mr. McKeever seeks advice
13 from Ms. Tillman and Mr. Stone regarding the implications and timing of the release of a
14 *Coleman* bed plan to the courts. No outsiders were included in the communication, and as
15 such, the communication remains privileged. Plaintiffs also challenge Defendants' assertion
16 of the attorney-client privilege for documents E00002637, E00002638, E00002639,
17 E00002940, E00002641, E00002642, E00002643, E00002644, E00002645, E00002646,
18 E00002647. These documents contain communications among Jim Tilton, Secretary of
19 CDCR, Susan Kennedy, Governor Schwarzenegger's Chief of Staff, Dan Dunmoyer,
20 Governor Schwarzenegger's Deputy Chief of Staff, Andrea Hoch, Legal Affairs Secretary to
21 Governor Schwarzenegger, Louis Mauro, Chief Deputy Legal Affairs Secretary, and Scott
22 Kernan, Chief Deputy Secretary for the Division of Adult Institutions, regarding the legality
23 of a potential policy change with respect to the placement of beds in prisons. Despite the
24 numerous participants to these discussions, the communications were never released to
25 outsiders, and were very clearly intended to seek confidential legal advice. As such, these
26 documents are properly designated attorney-client privileged. Similarly, Plaintiffs
27 challenge documents E00007103, E00007104, E00007105, and E00007106 which contain
28 communications between Deborah Hysen, head of the Facilities Strike Team, Jim Tilton,

1  Robert Gore, Governor Schwarzenegger's Acting Chief Deputy Cabinet Secretary,
2  Benjamin Rice, Deputy Legal Affairs Secretary, and Andrea Hoch. These communications
3  discuss the potential legal impacts involved in building additional CDCR facilities, and
4  what steps CDCR should take to deal with these potential legal issues. These privileged
5  communications, like those discussed above, were clearly aimed at seeking confidential
6  legal advice and were never disclosed to outside parties. Because the attorney-client
7  privilege was designed to protect exactly these types of communications from disclosure,
8  Plaintiffs' motion to compel must be denied. *See Upjohn Co.*, 449 U.S. at 389.

### III. CONCLUSION

For the reasons discussed above and previously articulated in Defendants' contribution to the parties' Joint Statement Regarding Discovery Disputes, filed February 25, 2008, Defendants respectfully request that Plaintiffs' motion to compel be denied.

Dated: March 7, 2008          Respectfully submitted,

*/s/ Sara Norman*
Sara Norman, Prison Law Office
Attorneys for Coleman Plaintiffs
Attorneys for Plata Plaintiffs

Dated: March 7, 2008          Respectfully submitted,

*/s/ Paul B. Mello*
Paul B. Mello
Hansen Bridgett
Attorneys for Defendants