1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN, SBN 126424
   KYLE A. LEWIS, SBN 201041
6  MISHA D. IGRA, SBN 208711
   CHARLES J. ANTONEN, SBN 221207
7  Deputy Attorney General
    455 Golden Gate Avenue, Suite 11000
8   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5708
9   Fax:  (415) 703-5843
    Email: Charles.Antonen@doj.ca.gov
10

11  Attorneys for Defendants

HANSON   BRIDGETT   MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179775
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

12              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF CALIFORNIA
13           AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
          UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
14           PURSUANT TO SECTION 2282, TITLE 28 UNITED STATES CODE

15

16

| | |
|---|---|
| 17  **RALPH COLEMAN, et al.,** | 2:90-cv-0520 LKK JFM |
| 18                              Plaintiffs, | **THREE-JUDGE PANEL** |
| 19       **v.** | |
| 20  **ARNOLD SCHWARZENEGGER, et al.,** | |
| 21                              Defendants. | |
| 22  **MARCIANO PLATA, et al.,** | No.  C01-1351 TEH |
| 23                              Plaintiffs, | **DECLARATION OF LISA A. TILLMAN IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER** |
| 24       **v.** | |
| 25  **ARNOLD SCHWARZENEGGER, et al.,** | **To:  Magistrate Judge Moulds** |
| 26                              Defendants. | |

27

28  ////

Tillman Decl. in Supp. of
Defs.' Mot. Re: Protective Order

*Coleman v. Schwarzenegger,* Case No. 90-0520
*Plata v. Schwarzenegger,* Case No. 01-1351

### DECLARATION OF LISA A. TILLMAN

I, Lisa A. Tillman, declare as follows:

1.    I am an attorney licensed to practice before all the courts of the State of California and am admitted to practice before the United States District Court of the Eastern, Northern, and Southern Districts of California.  I am a deputy attorney general with the Office of the Attorney General, counsel of record for the *Coleman* Defendants.  I submit this declaration in support of Defendants' motion for a protective order.  Unless otherwise indicated, I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify.

2.    The majority of the *Coleman* court orders have required Defendants to submit plans to address mental health care issues within the California Department of Corrections and Rehabilitation (CDCR) and California Department of Mental Health (DMH).  Generally, the *Coleman* court orders have not directed any specific particulars of the mandated plans.  Rather, the *Coleman* court has allowed Defendants to deliberate and submit plans borne from their own expertise in correctional health care and resulting from their own decision-making processes.

3.    Once the decision-making process has been completed and the plans submitted, both the *Coleman* Special Master and Plaintiffs' counsel have been able to and have indeed responded to the plans in written statements to the *Coleman* Court as well as in verbal interchanges at meetings.  At times, such responses have resulted in additional deliberations by Defendants and attendant revisions to the plans.

4.    On a few occasions, the *Coleman* Court has specifically directed Defendants to develop a plan in collaboration with the Special Master and/or Plaintiffs' counsel.  For instance, the *Coleman* court required Defendants to meet with Plaintiffs' counsel, Plaintiffs' counsels' experts, and the Special Master's experts in formulating the plan to address suicide trends in administrative segregation units.  (Coleman Order 6/8/06.)  Defendants did so.  (Coleman Defs.' Plan to Reduce Suicides, p. 1, filed 10/2/06.)  Even with a voice in the formulation in the plan, Plaintiffs' counsel took the opportunity to criticize the final plan in formal filings with the

Tillman Decl. in Supp. of
Defs.' Mot. Re: Protective Order

*Coleman v. Schwarzenegger,* Case No. 90-0520
*Plata v. Schwarzenegger,* Case No. 01-1351

2

1    *Coleman* court. (Coleman Pls.' Obj. to Defs.' Plan, filed 10/31/06; Coleman Pls.' Resp. to

2    Special Master's Report on Defs.' Plan, filed 12/21/06.)

3          5.      In this three-judge panel proceeding, Defendants have released thousands of

4    documents to Plaintiffs' counsel. Some of those documents reflect the deliberations and

5    discussions of Defendants in formulating responses to *Coleman* court orders. Unfortunately, the

6    receipt of such draft documents may and, in one instance, already has stimulated premature

7    discussions with Plaintiffs' counsel about the final response to the *Coleman* court order.

8          6.      On July 28, 2006, the *Coleman* court ordered Defendants to complete a mental

9    health workload study for inclusion in the Fiscal Year 2007-08 budget. The <u>draft</u> mental health

10   workload study was produced to Plaintiffs in the course of discovery in the three-judge panel

11   proceeding. Once informed of the production of the draft document, the *Coleman* Special Master

12   asked for a copy of the draft document. At a meeting with Special Master Lopes and

13   Defendants' counsel on March 11, 2008, Plaintiffs' counsel Michael Bien said he wanted to

14   "have input" on the mental health workload study - even before the finalized document has been

15   approved and submitted to the California Legislature.

16         7.      Plaintiffs' counsel's request for input on the draft mental health workload study is

17   not unusual. Indeed, Plaintiffs' counsel sought input on the six coordination agreements created

18   by the *Plata* Receiver, *Coleman* Special Master, *Perez* Court representatives, and *Armstrong*

19   Court representative. Attached as Exhibit A is a true and correct copy of Plaintiffs' letter to

20   Court Representatives, dated June 8, 2007, with enclosure.

21         I declare under the penalty of perjury under the laws of the State of California that the

22   foregoing is true and correct. Executed in Sacramento, California on March 18, 2008

23

24                                              _____

25                                              LISA A. TILLMAN

26

27

28

Tillman Decl. in Supp. of                    *Coleman v. Schwarzenegger*, Case No. 90-0520
Defs.' Mot. Re: Protective Order             *Plata v. Schwarzenegger*, Case No. 01-1351

# EXHIBIT  A

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ERNEST GALVAN

HOLLY BALDWIN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
SARAH LAUBACH
ANNE MANIA
NURA MAZNAVI
MARIA MORRIS **
THOMAS NOLAN
LORI RIFKIN ***
LOREN STEWART
KENNETH WALCZAK****
AMY WHELAN
SARAH OLSON ZIMMERMAN ****

# ROSEN, BIEN & GALVAN, LLP
ATTORNEYS AT LAW
POST OFFICE BOX 390
SAN FRANCISCO, CALIFORNIA  94104-0390

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rbg@rbg-law.com

June 8, 2007

<u>VIA EMAIL ONLY</u>

J. Michael Keating, Jr.
*Coleman* Special Master

Robert Sillen
*Plata* Receiver

Jay D. Shulman and Joseph Scalzo
*Perez* Court Experts

Edward Swanson
*Armstrong* Court Expert

      Re:    Plaintiffs' Proposed Agenda for June 20, 2007 Coordination Meeting
              <u>Our File No. 489-3</u>

Dear All:

      We are providing a list of proposed agenda items for the coordination meeting that is scheduled for June 20, 2007.  As requested, this is a consolidated list submitted on behalf of plaintiffs' counsel in *Coleman*, *Plata, Perez,* and *Armstrong.*

      The current process established for providing counsel for the parties with information from the coordination meeting is, in our opinion, inadequate, and should be amended. Counsel should be provided with information and documents that result from each monthly coordination meeting more promptly and in a more comprehensive manner.  In addition, there should be a process for counsel to follow up on coordination issues with questions or comments.

      We are preparing the proposed agenda items for the June 20th coordination meeting (which is due from us on June 10th) without the benefit of minutes from the May meeting. As a result, our suggestions are out of date and do not reflect progress you have made on coordination issues or additional issues that have arisen.  Nor are we able to provide

•      MEMBER OF THE CONNECTICUT AND THE CALIFORNIA BAR
••    MEMBER OF THE NEW YORK AND THE CALIFORNIA BAR
•••   MEMBER OF THE CONNECTICUT, NEW YORK AND THE CALIFORNIA BAR
••••  MEMBER OF THE ILLINOIS AND THE CALIFORNIA BAR

J. Michael Keating, Jr.
June 8, 2007
Page 2

information to you relevant to the issues you are discussing as we have not been informed of what is on your agenda. We request consideration of an alternative process that provides information more promptly to counsel, provides a more comprehensive disclosure and provides, in advance of coordination meetings, a copy of the agenda for the meeting.

On May 29, 2007, the Courts (*Coleman*, *Plata* and *Perez*) issued a joint order concerning "agreements" reached in the coordination process. At this time, plaintiffs' counsel has insufficient information about the agreements to respond to the Court by the June 15, 2007 filing date. We assume that the minutes of the May meeting will include some relevant information, but we have not received them. Plaintiffs request an opportunity to meet face-to-face or in a telephone conference with representatives from the *Plata* Receivership, the *Coleman* Special Master, and the *Perez* Court experts prior to June 15th to request further information about the written agreements attached to the May 29, 2007 Order. 5/29/07 Order [Docket 2247].

Thank you very much.

Sincerely,

ROSEN, BIEN & GALVAN, LLP


_____*/s/ Jane E. Kahn*_____
By: Jane E. Kahn



PRISON LAW OFFICE


_____*/s/ Alison Hardy*_____
By: Alison Hardy

JEK:kg
Enclosure
Cc (via email only):  John Hagar
                             Matthew A. Lopes, Jr.
                             *Coleman* Experts
                             Defense Counsel (*Coleman, Perez, Plata, Armstrong*)
                             Plaintiffs' Counsel

## *PLAINTIFFS' PROPOSED AGENDA ITEMS*
### *June 20, 2007 Coordination Meeting*

**A.      May 29, 2007 Order (Case 2:90-cv-00520-LKK-JFM, Docket 2247)**

As to each of the six agreements made by the Receiver in *Plata*, the Special Master in *Coleman* and the Court Representatives in *Perez*, plaintiffs' counsel request additional details about the agreements, as well as a meeting with representatives of the Receiver, the Special Master and the *Perez* experts to discuss the agreements and ask additional questions.

### 1.  Recruiting and Hiring Staff

The May 29, 2007 coordination filing indicates that the Receiver would not take over mental health recruiting and hiring. What support/consultation will the Receiver's staff provide to the *Coleman* Special Master and *Perez* Court experts, as well as defendants' mental health and dental administrators on recruitment and hiring practices?

### 2.  Contracting and Credentialing Staff

At what point will the Receiver notify counsel for the *Perez* and *Coleman* parties of the contracting pilot program's results?

How will the Receiver ensure that contracts are tracked by discipline (medical, mental health and dental) so that counsel for the *Perez* and *Coleman* parties can evaluate the pilot's performance for mental health and dental contracts?

Have the *Coleman* Special Master and the *Perez* Court experts consulted with the defendants' mental health and dental administrators and participated in the development of credentialing and privileging standards for mental health and dental care? Have written documents reflecting these standards been developed?

At what point will the counsel for the *Perez* and *Coleman* parties have the opportunity to review the credentialing and privileging standards?

### 3.  Pharmacy Agreement (Maxor)

Plaintiffs' counsel request an update on the involvement of the *Coleman* and *Perez* Court appointed experts with defendants' mental health and dental administrators in the development of formularies and other medication-related policies and practices.

Of particular concern to *Coleman* counsel are reports during a recent CMF tour that medication distribution procedures (med carts) were disrupting group therapy, individual case manager contacts, as well as access to yard and other programs and activities in the EOP units. Does a process exist for review of the impact of new pharmacy/ medication distribution procedures on clinical care and access to programs and activities?

### 4. Information Technology

What kind of *Coleman* and *Perez* input has been provided concerning mental health and dental clinical data needs? (*e.g. Coleman*: In the locked housing units, the need for access to medical records to conduct suicide risk assessments, pre and post placement suicide screenings, psych tech rounding notes, five-day follow-up charting for mental health clinicians)

Have the *Coleman* experts consulted with defendants' mental health administrators to assist in developing the clinical guidelines for the mental health component of the telemedicine program? How will these resources be coordinated between medical and mental health staff?

Will the Receiver assist in the integration of the Suicide History Tracking System within the MHTS and the new IT system implemented?

*Armstrong* counsel requests that the Receiver agree to integrate his IT system with DECS or provide another method of identifying prisoners with disabilities and ensuring that they receive the necessary accommodations.

### B.    Coordination of Office Space

What coordination efforts are being taken to ensure that appropriate office and treatment space will be available for the increased staffing allocations in mental health, dental and medical? Plaintiffs' counsel requests an update on the *Plata-Coleman-Perez* space survey that we understood is now being undertaken.

### C.    Coordination of Inadequate Licensed Mental Health Crisis Beds System-wide

With the closure of ASH and other DMH hospitals to CDCR patients requiring in-patient care, MHCB beds at DMH-V were transitioned back to acute care beds exacerbating the existing shortage of MHCB beds system-wide.

In addition to the CIM GACH unit agreement, which will temporarily transition that unit into a 40-45 MHCB unit, what other coordination efforts are being undertaken to increase

*PLAINTIFFS' PROPOSED AGENDA ITEMS*
June 20, 2007 Coordination Meeting
Page 3

capacity (build, convert, open, license), or to transfer long-term patients to other more appropriate beds (including community beds) in order to free up additional MHCB beds? Have the *Coleman* Special Master's experts and the Receiver's experts reviewed the physical plant and the staffing in the CIM GACH unit and determined its adequacy to provide MHCB level of care?

**D.   Coordination on Issues Impacting CDCR's Implementation of Court Ordered Plan to Address Suicides within ASUs**

On May 14, 2007, Special Master Keating filed a Supplemental Report and Recommendations on Defendants' Plan to Prevent Suicides in Administrative Segregation. On May 29, 2007, defendants filed their response and objections. Plaintiffs call attention to the following outstanding issues that require cross-case coordination:

**1.   Treatment Space Issues in Administrative Segregation Units ("ASUs"):**

The key obstacle to providing inmates in ASUs with confidential mental health interviews has been the lack of office space. Defendants were ordered on June 1, 2007, to provide a specific assessment of their space needs for providing confidential mental health interviews to the Coleman Court within sixty days. 6/1/07, ¶ 5(e) [Docket 2255]. Will this assessment be coordinated with the Receiver's assessment of space needs?

**2.   Provision of Pre-placement Suicide Prevention Screening By RNs**

Defendants reported that the pre-placement suicide prevention screening was deferred due to the need to coordinate with *Plata*. *Coleman* experts informed plaintiffs on April 20 that they will be working with Defendants and the Receiver's staff on finalizing the pre-placement suicide prevention screening process. What is the result of this coordination process? Were any forms finalized? Will the RN staff who will be conducting this critical screen be directed to review the Suicide History Tracking System Inmate Profile (within the MHTS) for a history of prior and possibly recent, suicide attempts within ASUs?

**3.   Implementation of A State-wide System For Tracking When An Inmate Receives "bad news" (e.g. a new sentence in Court).**

Defendants reported during the March 30 phone conference that this element of the Plan has been stalled due to the need to coordinate with the Receiver. On April 20, defendants explained the "bad news" procedure. Have defendants provided the "bad news" forms

*PLAINTIFFS' PROPOSED AGENDA ITEMS*
June 20, 2007 Coordination Meeting
Page 4

and procedures to the *Coleman* experts and the Receiver, so these procedures can be coordinated?   Has this process been finalized?

## E.       Governance of Health Care

How does the Receiver's Health Care Manager Model for the individual institutions accommodate the need for dental and mental health supervision at the regional and state-wide levels?

## F.       Construction / Medical / Mental Health Bed Planning

What is the status of coordination efforts regarding new construction of necessary inpatient psychiatric beds, mental health crisis beds, and EOP beds, required by *Coleman* Court orders to meet defendants' projected mental health bed needs?  What is the status of Consolidated Care Centers first referred to in *Coleman* in defendants' December 2006 Plan?  Are coordination efforts on task to meet Judge Karlton's June 15, 2007 deadline for defendants in *Coleman* to submit a revised mental health bed plan for all levels of care, including reference to the Consolidated Care Centers?  Will updated 2007 Navigant needs assessment information regarding mental health beds be available to the Receiver in a timeframe that coordinates with the information developed by Abt Associates regarding medical beds?  What is the impact of AB 900 on coordinated medical/mental health bed planning and construction?  What role will the "strike teams" play in the construction process of medical/ mental health beds?

What is the impact of AB 900 on coordinated planning and construction of additional dental clinic space?

## G.       *Armstrong*/Disabilities Tracking/Effective Communication

The January 18th Injunction requires CDCR to develop and implement a system for holding medical staff accountable for violations of *Armstrong* court orders.  The Receiver has agreed to track such concerns but has not agreed to provide any information on his findings to plaintiffs' counsel.  This lack of information prevents plaintiffs from monitoring whether the Receiver's system complies with the Injunction.

The question has arisen, in the context of the Injunction's provisions, whether medical appeals analysts are medical staff under the Receiver's direct authority.  This issue should be determined within the coordination process.

There is also a need for coordination on the issue of whether the Receiver will make the DECS system available as part of the new standalone IT system.

Finally, the plaintiffs' counsel in *Armstrong* and *Plata* request that there be coordination between the Receiver and the *Armstrong* representative to ensure that the Receiver's staff participates in the effective communication training. This coordination and the commitment to participate should be obtained as soon as possible since the effective communication training has already started.

### H.   Correctional Officers

The documented shortage of correctional officers system-wide impacts on the provision of mental health, medical and dental care and access to appropriate disability accommodations. Plaintiffs' counsel request that there be coordination between the cases to address this shortage of correctional officers, which impacts on resolving constitutional violations in all of the class actions.

### I.   Receiver's Plan of Action

In the May 10, 2007 Plan of Action, the Receiver identified a plan to divide prisons into smaller regions of 3-5 prisons, and to redefine the roles and responsibilities of the leadership positions at the regional and institutional levels, including medical leadership. (Plan at 16). Will mental health care or dental care leadership be addressed or included in this process?

Objective F.3 of the Plan of Action referred to the building of 5,000 new medical beds and 5,000 new mental health beds. Then in the "18-24 Month Focus," the plan mentioned the building of only the 5,000 new medical beds. Does that indicate that the 5,000 mental health beds are not slated as a project for the next 18-24 months? How do these beds relate to AB 900 beds?

### J.   CRC Issue

What issues were resolved at the June 6, 2007 meeting regarding the change in the mission of CRC? What steps were taken to resolve possible conflict with the current orders in *Coleman* and *Perez*?

### K.   Death Review Process

Plaintiffs' counsel in *Coleman* request that the *Plata* Receiver and his experts coordinate their review of CDCR deaths/suicides and emergency response procedures with the *Coleman* experts, including a review of the adequacy of the existing CPR Policy implemented by CDCR. Defendants have been ordered by the *Coleman* Court on June 1, 2007, to produce evidence that required CPR refresher training was accomplished by

*PLAINTIFF'S PROPOSED AGENDA ITEMS*
June 20, 2007 Coordination Meeting
Page 6

submitting documentation of the required proof of practice within sixty days of the Order.
6/1/07 Order ¶ 5.f [Docket 2255].