1  PRISON LAW OFFICE
   DONALD SPECTER Bar No. 83925
2  STEVEN FAMA Bar No. 99641
   E. IVAN TRUJILLO Bar No. 228790
3  General Delivery
   San Quentin, California  94964
4  Telephone: (415) 457-9144

5  ROSEN, BIEN & GALVAN, LLP
   MICHAEL W. BIEN Bar No. 096891
6  315 Montgomery Street, 10th Floor
   San Francisco, California  94104
7  Telephone: (415) 433-6830

8

9  THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
   CLAUDIA CENTER Bar No. 158255
10 600 Harrison Street, Suite 120
   San Francisco, CA  94107
11 Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No. 36377
701 Fifth Avenue
Seattle, Washington  98104
Telephone: (206) 447-0900

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
Telephone:  (415) 882-8200

12

13

14 Attorneys for Plaintiffs

15               UNITED STATES DISTRICT COURT

16               EASTERN DISTRICT OF CALIFORNIA

17

18 RALPH COLEMAN,                           )  No.:  Civ S 90-0520 LKK-JFM
                                            )
19        Plaintiffs,                       )  **PLAINTIFFS' REPLY IN SUPPORT OF**
                                            )  **MOTION TO COMPEL DISPUTED**
20 v.                                       )  **ATTORNEYS' FEES AND COSTS FROM**
                                            )  **THE THIRD QUARTER OF 2007**
21 ARNOLD SCHWARZENEGGER, et al.,           )
                                            )  No Hearing Scheduled
22        Defendants                        )
                                            )  The Honorable John F. Moulds
23 _____  )

24

25

26

27

28

**INTRODUCTION**

Plaintiffs did not bring the overcrowding motions by choice.  Plaintiffs brought the overcrowding motions because, as the district court has already ruled, "the overcrowding crisis in the CDCR is preventing the delivery of constitutionally adequate mental health care to the plaintiff class and, therefore, some form of limitation on the inmate population must be considered."  (Order, July 23, 2007, Docket No. 2320 at 13.)  Defendants do not and cannot dispute that work performed to address overcrowding is directly and reasonably incurred to enforce the September 1995 Injunction in this case.  Plaintiffs' motion to compel should be granted.

Defendants base their Opposition (Docket No. 2733) ("Defs' Opp.") on two misconceptions.  First, defendants ask the Court to treat the proceedings before the three-judge panel as separate from the rest of the *Coleman* case.  This is contrary to the well-established law of three-judge panels, as explained in detail below.  Moreover, it is clear that overcrowding continues to impede implementation of the injunction requirements in this case, making it imperative for class counsel to continue work on the overcrowding problem as part of the direct enforcement of the September 1995 Injunction.

Second, defendants assert an improper standard for the awarding of fees and costs for post-judgment monitoring work.  Defendants repeatedly argue for a "prevailing party" standard, when in fact the plaintiff class already prevailed, was awarded injunctive relief, and is entitled to monitoring and enforcement of that relief, which cannot be performed without lawful recovery of fees and costs.  The law does not require the plaintiff class to prove over and over that they are the prevailing parties each time they undertake work to enforce the injunction.  Contrary to defendants' arguments, there is no valid distinction between work performed prior to the Court's granting of plaintiffs' motion to convene a three-judge panel, and work performed thereafter.  All such work was directly and reasonably performed to enforce the relief already ordered when the plaintiff class prevailed.  Equally infirm is defendants' argument that a ruling by this Court on plaintiffs' entitlement would be premature.  This Court is best positioned and presently able to rule that plaintiffs' fees and costs were directly and reasonably incurred in enforcing the relief ordered.

**ARGUMENT**

**I.    This Court Did Not Divest Itself of Jurisdiction By Convening the Three-Judge Panel.**

Defendants repeatedly mischaracterize the three-judge panel convened to consider overcrowding issues in this case as a "different forum." Defs' Opp. at 1:25 ("proceedings in another forum"); 1:27 ("distinct litigation occurring in a different forum"); & 5:17 ("the forum of the Three-Judge Panel;" "that forum's procedure"). In fact, the three-judge panel is a statutory mechanism for determining issues of enforcement of the Court's September 13, 1995 Order, and subsequent orders.

Defendants use the misleading phrase "a different forum" to suggest that the three-judge panel designated to hear overcrowding issues in this case is a court of independent jurisdiction. Without citation to any authority,[1] defendants contend that convening the three-judge panel divested this Court of its jurisdiction to "decide all issues related to the proceeding" Defs' Opp. at 5:4-5, and that the Court should therefore "dismiss this motion for attorney fees for lack of jurisdiction." *Id.* at 5:28.

In fact, this Court retains jurisdiction over all matters related to the enforcement of its orders, including those ordering relief for defendants' constitutional violations. Indeed, at least 21 such orders regarding implementation have been entered *since* the three-judge panel motion was granted. (Docket Nos. 2321, 2341-2345, 2360, 2371, 2386, 2388, 2418, 2450, 2453, 2461, 2490, 2644, 2696, 2697, 2711, 2730, & 2739.) No one could seriously contend that those orders were beyond the Court's jurisdiction; defendants have not argued that they are. Plaintiffs moved to convene the three-judge panel as a necessary step in remedying noncompliance with this Court's orders. The Prison Litigation Reform Act (PLRA) requires that "a prisoner release order shall be entered only by a three-judge court in accordance with section 2284 of title 28," 18 U.S.C. § 3626(a)(3)(B). Section 2284 of Title 28

---

[1] Defendants cite no cases for their jurisdictional arguments – no law for the proposition that "fees incurred in litigating before the panel are strictly a matter for the panel to consider," Defs' Opp. at 5:5-6, and no law for the proposition that "because Plaintiffs are in the forum of the Three-Judge Panel, Plaintiffs must be bound by that forum's procedure for hearing attorney fee requests." *Id.*, at 5:16-18. The only case defendants cite for any purpose in Section A (pages 4-5) of Defendants' Opposition, *Zambrano v. I.N.S.*, 282 F.3d 1145, 1150 (9th Cir. 2002), says nothing about three-judge panels, or the jurisdiction of a district court under analogous circumstances. Defendants cite it only for the uncontroversial proposition that "[a] court must have jurisdiction over the underlying action to award fees." Defs' Opp. at 4:17-18.

1   governs the formation of three-judge panels whenever "required by Act of Congress[.]" 28 U.S.C. §

2   2284(a). Nowhere does the PLRA, or any other statute, provide that formation of such a court divests

3   any other court of jurisdiction.

4           To the contrary, those Courts which have considered the issue have soundly rejected

5   defendants' argument. In *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207 (1970), plaintiffs had filed a

6   federal class action complaint challenging a state statute (the New York Social Services Law) on equal

7   protection grounds. *See id.*, 397 U.S. at 399. The plaintiffs' complaint also included a pendent claim

8   that the same statute was incompatible with a federal law (the Social Security Act of 1935). *Id.* at 399-

9   400. the district court granted a motion to convene a three-judge panel pursuant to 28 U.S.C. § 2284

10  for the purpose of evaluating the pendent claim. *Id.* at 400. This panel eventually dissolved itself,

11  when a change in the statute rendered the pendent claim moot. However, "[o]n the same day as the

12  three-judge court dissolved itself, Judge Weinstein issued a preliminary injunction[.]" *Id.* The

13  Supreme Court held that issuing the injunction was proper, and that convening the three-judge panel

14  did not divest the district court of jurisdiction:

15          Jurisdiction over federal claims, constitutional or otherwise, is vested, exclusively or
        concurrently, in the federal district courts.  Such courts usually sit as single-judge
16      tribunals. While Congress has determined that certain classes of cases shall be heard …
        by a district court composed of three judges, [convening such a panel] does not mean
17      that the court qua court loses all jurisdiction over the complaint that is initially lodged
        with it.  To the contrary, once petitioners filed their complaint … the District Court
18      sitting as a one-man tribunal, was properly seised of jurisdiction over the case … Even
        had the constitutional claim not been declared moot, the most appropriate course may
19      well have been to remand to the single district judge for findings and the determination
        of the statutory claim rather than encumber the district court, at a time when district
20      court calendars are overburdened, by consuming the time of three federal judges in a
        matter that was not required to be determined by a three-judge court.
21
22

23  397 U.S. at 402-403, 90 S.Ct. at 1212-1213 (1970) (citing *Swift & Co. v. Wickham*, 382 U.S. 111, 86

24  S.Ct. 258 (1965)). *See also Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957): "The court of three

25  judges is not a different court from the District Court, but is the District Court composed of two

26  additional judges sitting with the single District Judge[.]"

27          The Ninth Circuit is in agreement. *See Hamilton v. Nakai*, 453 F.2d 152, 161 (9th Cir. 1972)

28  (single district judge has jurisdiction over enforcement, where three-judge panel convened for entry of

1   judgment), *citing Public Service Comm'n v. Brashear Freight Lines, Inc.,* 312 U.S. 621, 625, 61 S.Ct.

2   784 (1941) (assessment of damages and costs should be considered by district court in exercise of its

3   ordinary jurisdiction, did not require the attention of the full three-judge court).

4           Here, as in *Rosado*, *Hamilton*, and *Brashear*, the District Court retains jurisdiction over the

5   enforcement and fees issues raised by plaintiffs.  Here, as in *Rosado*, the Court should reject

6   defendants' efforts to consume the time of three federal judges in a matter that is not required to be

7   determined by them.  The Court should instead issue a ruling upholding its own previous decision on

8   plaintiffs' entitlement to recover fees and costs directly and reasonably incurred in enforcing the relief

9   ordered by this Court.

10          Defendants' misperception of the procedural posture of this case extends to their assertion that

11  "[t]he Three-Judge Panel has vested this Magistrate Judge only with the authority to hear discovery

12  matters arising from the Three-Judge Panel proceeding."  Defs' Opp. at 4:14-15.  Again, the "Three-

13  Judge Panel proceeding" is not a separate lawsuit being litigated in a forum of independent

14  jurisdiction.  It is a necessary extension of the proceedings in this case and before this Court, pursuant

15  to a procedural mechanism which did not divest this Court of jurisdiction.  This Court is thus

16  empowered to resolve fees disputes pursuant to the procedure already established by the parties and

17  this Court.[2]

18

19

20

21  [2] In stark contrast to their current position, defendants have consented to the use of this Court's
    periodic fees process to resolve plaintiffs' claims for fees and costs incurred in opposing defendants'
22  appeal of the orders convening the three-judge panel, and defendants' motion to stay these orders
    (work that is included in the time entries at issue here).  *See* Unopposed Motion to Transfer Attorneys'
23  Fees to District Court, filed Sept. 21, 2007, Case Nos. 07-16361 (*Coleman*) and 07-16383 (*Plata*)
    (citing "orderly billing processes already established in the two cases"); Declaration of Michael W.
24  Bien In Support of Unopposed Motion to Transfer Attorneys' Fees to District Court, at ¶ 2 (defendants
25  agree that these issues are best resolved before the district courts and therefore consent to this request
    to transfer).
26
    Defendants have not withdrawn their consent to the use of this Court's process to resolve these fees,
27  even though plaintiffs expended fees and costs in these two categories during the third quarter of 2007,
    after the purported divestiture of jurisdiction claimed by defendants' opposition.
28

II.   **Plaintiffs Are Prevailing Parties Engaged In Post-Judgment Monitoring, Entitled To Recover All Fees and Costs Directly and Reasonably Incurred In Enforcing the Relief Ordered For Defendants' Constitutional Violations.**

     A.   **Plaintiffs need not re-"prevail" to establish entitlement.**

Defendants' jurisdiction argument rests on the fundamental misconception that the three-judge panel is a new court of independent jurisdiction, rather than "the District Court composed of two additional judges sitting with the single District Judge[.]" *Jacobs*, 250 F.2d at 614. Defendants' citation of an improper standard for recovery of fees and costs is based on a similar misconception.

This is not a new case before a new court, but a district court matter in post-judgment monitoring and subject to a Periodic Fees Order. This Court recently restated the applicable standard of review: "[P]laintiffs are entitled to fees and costs 'directly and reasonably incurred in enforcing the relief ordered for the' constitutional violation found in the district court's September 13, 1995 order." Docket 2397 at 4. Work undertaken by the plaintiffs to enforce compliance with the Court's order is compensable if, "at the time rendered, [it] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest . . ." *Hasbrouk v. Texaco, Inc.,* 879 F.2d 632, 638 (9th Cir. 1989). Plaintiffs' successful motion to convene a three-judge panel arose as a necessary step in the enforcement of this Court's prior orders.

That defendants have misconstrued the posture of the case is evident from their statement that "the Three-Judge Panel will ... benefit from evidence and argument on whether Plaintiffs' incurred fees were ... 'directly and reasonably incurred' in <u>proving the elements necessary for a prisoner release order ...</u>" Defs' Opp. at 8:7-9 (emphasis added). The correct inquiry is whether plaintiffs' incurred fees and costs were directly and reasonably incurred in <u>enforcing the relief ordered for defendants' constitutional violations.</u>

During this crisis, the plaintiff class cannot enforce the September 1995 Injunction without addressing overcrowding. The overcrowding issues are inextricably intertwined with all activities undertaken to enforce compliance with the remedy ordered by the Court for defendants' constitutional violations. *See* Declaration of Jane E. Kahn In Support of Motion to Compel Disputed Attorney's Fees and Costs from the Third Quarter of 2007 ("Kahn Decl."), filed herewith, at ¶¶ 3-4; Declaration of Jane

1  E. Kahn In Support of Motion to Convene a Three-Judge Panel (Docket No. 2039); Supplemental

2  Declaration of Jane E. Kahn In Support of Motion to Convene a Three-Judge Panel (Docket No. 2245).

3      Adherence to the proper standard, and not the *Buckhannon* analysis suggested by defendants,[3]

4  explains the order granting plaintiffs fees and costs for work on the out-of-state transfer issue.  On that

5  issue, as with overcrowding, plaintiffs took action to enforce compliance with this Court's prior orders.

6  The Court granted plaintiffs their requested fees and costs, finding that "the fees and costs incurred by

7  plaintiffs in connection with their motion for temporary restraining order were <u>directly and reasonably</u>

8  <u>incurred in enforcing the relief ordered to remedy the constitutional violation</u> in this case," even though

9  the motion or an order restraining the transfers was denied.  Docket No. 2397, at 7:8-10 (emphasis

10 added).  This is not, as defendants suggest, an analysis that ignores the post-judgment posture of this

11 case and erroneously requires plaintiffs to continually and wastefully relitigate their prevailing party

12 status, a matter that has already been conclusively determined.

13      For similar reasons, defendants' analogy to "an appellate attorney [who] must await completion

14 of the appellate process before seeking fees for the appellate work," Defs' Opp. at 7:9-10, is misplaced

15 and unavailing.  As detailed *supra*, courts have soundly rejected the argument that a three-judge panel

16 convened under the requirements of 28 U.S.C. § 2284 constitutes a separate forum, possessed of

17 independent jurisdiction.

18      *Wolfe v. New Mexico Dept. of Human Services*, 28 F.3d 1056 (10th Cir. 1994), cited by

19 defendants, also fails to support defendants' midstream application of a "prevailing party" standard to

20 this case.  In fact, the court in *Wolfe* rejected the contention that plaintiffs could be barred from

21 recovering fees related to a contempt motion, on the basis that they did not "prevail" on said motion.

22

23 [3] Defendants suggest that the "enhanced mental health safeguards" for out of state transfers Defs' Opp.
   at 8:1, required by the Court's Order of September 11, 2007, constitute the "judicially sanctioned
24 change in the legal relationship of the parties" required by *Buckhannon Bd. and Care Home, Inc. v.
   West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001).
25 While the Court did impose certain requirements on defendants by means of its November 6, 2006
   Order, the basis for the award of fees to plaintiffs could not be clearer: "the fees and costs incurred by
26 plaintiffs in connection with their motion for temporary restraining order were <u>directly and reasonably</u>
27 <u>incurred in enforcing the relief ordered to remedy the constitutional violation</u> in this case" even though
   "the motion was ultimately denied."  Docket No. 2397, at 6:14, 7:8-10 (emphasis added).
28

1    "[T]he fact that plaintiffs ultimately did not prevail in their efforts to secure a contempt order does not

2    divest them of their status as prevailing parties so long as the work done was necessary to the overall

3    effort." 28 F.3d at 1060 (citing *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1982) (finding of contempt

4    not a prerequisite to an award of attorneys' fees for reasonable post-judgment monitoring of a consent

5    decree). The *Wolfe* court proceeded to remand to the district court, for a more detailed finding as to

6    whether plaintiffs' fees were "for necessary services and reasonable" – an approximation of this

7    Circuit's standard prior to the holding in *Madrid*. *See, e.g.,* Docket No. 2397 at 2:9-11.

8         Were defendants to succeed in their efforts to inject a new "prevailing party" standard to the

9    post-judgment phase of this case, parties similarly situated to plaintiffs – *i.e.*, those possessing a

10    finding of constitutional violations, and therefore indisputably entitled to recover their reasonable

11    attorneys' fees and costs – would be forced to re-incur substantial costs, with the possibility of no

12    recovery, when a development such as overcrowding interferes with the provision of a remedy. In

13    other words, adopting defendants' position would reward the losing party for years of noncompliance,

14    and impose an unjustified obstacle to plaintiffs' efforts to enforce this Court's orders.

15
16    **B.      This Court is best positioned, and currently equipped, to rule on plaintiffs'
             entitlement to fees and costs.**

17         Defendants' argument that a ruling on fees at this juncture would be "premature," Defs' Opp. at

18    pages 7-8, rests on the same mistaken standard. The issue is not whether plaintiffs' overcrowding

19    work is "completed," or "successful," *id.*, any more than it is whether plaintiffs "prevailed." The issue

20    is whether plaintiffs' overcrowding work was directly and reasonably incurred in enforcing the relief

21    ordered for defendants' constitutional violations. This Court issued the underlying orders finding

22    constitutional violations, and established the periodic fees process governing post-judgment

23    compliance work. It is thus best suited for to make the appropriate determination.

24         The applicable standard in no way requires the Court to wait for future fees disputes to "ripen"

25    before (re-)settling the entitlement issue. Monitoring fees and costs are reasonably incurred if they are

26
27
28

1    for tasks "which, <u>at the time rendered</u>, would have been undertaken by a reasonable and prudent

2    lawyer to advance or protect his client's interest." *Hasbrouck*, 879 F.2d at 638 (emphasis added).[4]

3         Defendants' suggestion that the doctrine of ripeness prohibits this Court from ruling on

4    plaintiffs' future entitlement to fees for overcrowding work turns the "law of the case" doctrine on its

5    head.[5] This issue is ripe. It has been litigated and determined by the district court. The district court

6    conducted a *de novo* review, and found that the fees and costs incurred by plaintiffs in connection with

7    their motion to convene a three-judge panel were directly and reasonably incurred in enforcing the

8    relief ordered for constitutional violations. Docket 2397 at 6 (quotation omitted); Docket 2451 at 2

9    (findings adopted in full after *de novo* review).

10         In so doing, the Court decided the matters at issue in this motion "explicitly or by necessary

11    implication." *U.S. v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2007) (upholding application of

12    doctrine). Defendants cite this standard (and *Lummi*'s formulation thereof) for the "law of the case

13    doctrine," Defs' Opp. at 6:8-9, but argue that it does not apply because the issue of compensation "for

14    

---

15    [4] Defendants' unsupported contention that a ruling on this issue would risk "inconsistent rulings" or "a
      windfall" for plaintiffs, Defs' Opp. at 5:20-21, is equally nonsensical. For years, two District Courts
16    have decided fees issues for the plaintiff classes in *Coleman v. Schwarzenegger* and *Plata v.
      Schwarzenegger* separately, without the inconsistency defendants suddenly fear, even though the
17    delivery of mental health care and medical care are related services. This Court has already rejected
18    defendants' outrageous and unsupported accusation that filing overcrowding motions in both *Coleman*
      and *Plata* resulted in double-billing. *See* Docket No. 2378 at pages 11-12.

19    
      Defendants tellingly fail to specify what manner of "windfall" might results from plaintiffs' continuing
20    to litigate their fees in the proper forum, pursuant to the process established by this Court, and pursuant
      to the determination of entitlement previously issued. The PLRA rates awarded in this matter fall far
21    short of market rates. *See, e.g.,* Declaration of Amy Whelan in Support of Plaintiffs' Motion to
22    Compel Disputed Attorneys' Fees and Costs from the Third Quarter of 2007 (Docket No. 2709)
      ("Whelan Decl."), at ¶ 8.

23    
      [5] The Court should disregard defendants' argument regarding Article III, sec. 2 of the United States
24    Constitution, which limits federal courts' jurisdiction to current "cases or controversies," as well as
      their reference to *Clinton v. Acauia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996). *See* Defs' Opp. at 6:29-7:3.
25    In *Clinton*, the Court dismissed a breach of contract claim that relied on the theoretical terms of an
      agreement which defendants had until 1997 to perform. These facts have no application to a
26    constitutional case in which the Court has found violations, issued orders to address the constitutional
27    violations, and established a process for awarding periodic fees to plaintiffs for their efforts to monitor
      compliance with those orders.

28

1    these 2007 Fees was not actually considered or decided by this Court in its decision on the 2006

2    Fees[.]" *Id.* at 6:13-14. This is an extremely restricted reading of the doctrine, under which no order

3    of a district court could be read to govern any set of facts arising later in time. Courts have not focused

4    on the specific facts proffered by each decision, but rather held that "when a court decides upon <u>a rule</u>

5    <u>of law</u>, that decision should continue to govern the same issues in subsequent stages in the same case."

6    *Murdoch v. Castro*, 489 F.3d 1063, 1067 (9th Cir. 2007) (citations omitted; emphasis added). "This

7    rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the

8    agitation of settled issues." *Id.* at 1068 (citations omitted).

9           This Court decided upon a rule of law when it held that plaintiffs' work to address

10   overcrowding was directly and reasonably related to the relief ordered for defendants' constitutional

11   violations. There is no basis upon which to disturb that conclusion in light of the fact that the fees and

12   costs at issue here were the necessary next steps to plaintiffs' post-judgment efforts before the three-

13   judge panel.

14          **C.     The disputed fees and costs were reasonably incurred by plaintiffs in**
             **enforcement of this Court's underlying orders.**

15

16          Responsible class counsel must continue to pursue relief for overcrowding to enforce the

17   Court's September 13, 1995 Order. Like the steps taken to convene the three-judge panel, litigation

18   before the panel is not a discretionary choice made by plaintiffs, but a necessary step in monitoring and

19   enforcement. Overcrowding is a persistent and profound obstacle to the relief ordered by this Court.

20   *See* Kahn Decl., at ¶¶ 3-4; Docket Nos. 2039 & 2245. A remedy for overcrowding is just as directly

21   and reasonably required to enforce the September 1995 injunction as it was before the three-judge

22   panel was convened. Kahn Decl., at ¶ 4.

23          During the third quarter of 2007, plaintiffs conducted legal research and briefing to oppose

24   defendants' appeal of the order granting a three-judge panel, legal research and briefing to oppose

25   defendants' motion to stay the underlying proceedings pending appeal, initial work with experts, legal

26   research regarding proceedings before the three-judge panel and relevant legal standards regarding

27   prisoner release orders, legal research regarding intervention, preparation of initial discovery requests,

28   and preparation for the initial status conference before the three-judge panel. *See* Plaintiffs' Motion to

-9-

1    Compel Disputed Attorneys' Fees and Costs from the Third Quarter of 2007 (Docket No. 2708)

2    ("Pltfs' Mot."), at 6:5-19; Whelan Decl., at ¶ 6.  Plaintiffs' counsel spent approximately 200 hours on

3    these tasks, causing them to directly and reasonably incur approximately $35,000 in attorneys' fees at

4    the very highly-discounted rates required by the PLRA. *See* Pltfs' Mot. at 7:1-7; Whelan Decl., at ¶ 6.

5    Plaintiffs also incurred approximately $750 in expenses. *Id.*

6         A reasonable and prudent lawyer would have undertaken all of these tasks to enforce the

7    Court's September 1995 injunction.  Defendants have made no specific claim to the contrary, but

8    advanced only the general, and erroneous, objections detailed above.

9                                       **CONCLUSION**

10        This Court retains jurisdiction over the *Coleman* matter, and is best positioned to enforce its

11   own previous ruling granting plaintiffs' entitlement to fees and costs for their work on overcrowding

12   issues before the three-judge panel.  The Court should reject defendants' assertion that convening such

13   a panel divested the single-judge tribunal of jurisdiction, and grant the prevailing party plaintiffs their

14   disputed attorneys' fees and costs from the third quarter, as fees and costs reasonably incurred at the

15   time they were rendered.  Plaintiffs also restate their requests that the Court order the parties to

16   complete a meet and confer regarding the amounts to be paid within 30 days of the Court's order, and

17   that the Court issue an order reaffirming plaintiffs' entitlement to reasonable attorneys' fees and costs

18   on the overcrowding matter moving forward.

19   Dated:  April 3, 2008                    **ROSEN, BIEN & GALVAN, LLP**

20

21                                            By:  _____

22                                                 Ernest Galvan
                                                  Attorneys for Plaintiffs
23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES AND COSTS
FROM THE THIRD QUARTER OF 2007  NO.: CIV S 90-0520 LKK-JFM