PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
LORI RIFKIN Bar No.: 244081
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
JEFFREY L. BORNSTEIN Bar No. 99358
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

   Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

   Defendants

No.: Civ S 90-0520 LKK-JFM

**DECLARATION OF JANE E. KAHN IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES AND COSTS FROM THE THIRD QUARTER OF 2007**

No Hearing Scheduled

The Honorable John F. Moulds

I, Jane E. Kahn, do hereby declare:

1. I am an attorney admitted to practice law in California and of counsel in the law firm Rosen, Bien & Galvan, one of the counsel of record for plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify. I make this declaration in support of Plaintiffs' Motion to Compel Third Quarter 2007 Fees and Expenses.

2. In my role as class counsel for *Coleman* plaintiffs, I have primary responsibility for reviewing the status of defendants' implementation of the Revised Program Guide and other court-ordered plans and remedies. In this capacity I review all population reports, staffing reports, mental health crisis bed and inpatient bed waiting list reports, suicide reports, and other information regularly provided by defendants to the Special Master and to *Coleman* counsel. In addition, I or another attorney from my office or our co-counsel, Prison Law Office, accompany the Special Master and his monitoring team on tours of at least seven prisons every year. Prior to each of the Special Master's monitoring tours, we draft a monitoring memo highlighting our concerns based on a review of documents provided by defendants, previous reviews by the Special Master, and prisoner correspondence received from the institution to be toured. I have also participated in four institutional tours with the *Coleman* monitors since January 2007, including a tour of the Department of Mental Health facilities where *Coleman* class members requiring inpatient levels of care are treated.

3. In support of Plaintiffs' motion for an order appointing a three-judge panel under 18 U.S.C. § 3626 (a)(3)(A), I provided two declarations describing the direct and extremely harmful impact of overcrowding on implementation of the *Coleman* remedy. These declarations are filed with the Court at Docket Nos. 2039 & 2245.

4. Overcrowding continues to have a harmful impact on the *Coleman* remedy and the *Coleman* class. During a *Coleman* policy meeting held on June 7, 2007 in Sacramento, representatives from the CDCR Division of Health Care Services and the Department of Mental Health reported to the Special Master and his experts, plaintiffs' counsel, the Department of Finance, other CDCR divisions, and representatives from the Governor's

-1-

Office, about the persistent use of waiting lists for in-patient and mental health crisis beds. At that time, staff reported there were 93 prisoners on the intermediate care waitlist, 41 prisoners on the acute care waitlist and 29 prisoners waiting for a mental health crisis bed. Ten months later, at a policy meeting on March 11, 2008, defendants reported even higher numbers of prisoners waiting for these inpatient levels of care, including 99 prisoners on the intermediate care waitlist, 53 prisoners on the acute care waitlist, and 43 prisoners on the mental health crisis beds waitlist. During questioning, it was clarified that these numbers did not include the many prisoners who are currently housed in Outpatient Housing units, or unlicensed infirmaries, for excessive lengths of stay, whom staff simply do not refer to "unavailable" mental health crisis beds. In addition to the backlog of prisoners waiting for inpatient level of care, there are many prisoners requiring enhanced outpatient ("EOP") care who remain in the reception centers because of current EOP bed shortages. At the June 2007 policy meeting it was reported that there were 463 EOP patients housed in the reception centers. More recently, in the January 2008 monthly statistical documents provided by defendants to the Special Master and plaintiffs, defendants list 597 EOP patients housed in the reception centers. Until some relief from overcrowding is ordered, responsible class counsel must continue to litigate the issue.

5.  I declare under penalty of perjury, that the foregoing is true and correct, and that this declaration is executed in San Francisco, California on April 3, 2008.

*Jane E. Kahn*
Jane E. Kahn