Geri Lynn Green, (State Bar No. 127709)
LAW OFFICES OF GERI LYNN GREEN, LC
A Law Corporation
700 Montgomery Street
San Francisco, CA 94111
Telephone: (415) 982-2600
Facsimile: (415) 358-4562
Email: gerigreen@earthlink.com

Attorneys for Plaintiffs
SHERIE LEMIRE individually and as personal representative for the ESTATE OF ROBERT ST. JOVITE, GERARD CHARLES ST. JOVITE and NICOLE ST. JOVITE

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| COLEMAN<br>            Plaintiffs,<br><br>vs.<br><br>SCHWARZENEGGER et al.<br>            Defendants.<br><br><br>SHERIE LEMIRE individually and as personal representative for the ESTATE OF ROBERT ST. JOVITE, GERARD CHARLES ST. JOVITE and NICOLE ST. JOVITE,<br>            Plaintiffs,<br>vs.<br><br>SCHWARZENEGGER et al.;<br><br>            Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br><br>NOTICE OF RELATED CASE<br><br><br><br><br>NO. 2:08-CV-00455-GEB-EFB |

Pursuant to Eastern District Local Rule 83-123 Plaintiffs in *Lemire v. Schwarzenegger, et. al.* Case No. 2:08-CV-00455-GEB-EFB put this Court and the parties on notice that the *Lemire* case may be related to the case of *Coleman v. Schwartzenegger, et al.* Case No. Civ S 90-0520 LKK-JFM, which was heard by the Honorable Judge Lawrence K. Karlton.

The *Lemire* case involves the suicide of Robert St. Jovite, a mentally ill inmate incarcerated at California State Prison, Solano (CSP Solano), a CDCR facility, at the time of his death by suicide on May 10, 2006. CSP-Solano, as a facility of the California

1  Department of Corrections and Rehabilitation (CDCR) was regulated by the Court's orders
2  in *Coleman.* St. Jovite was a protected class member as a mentally ill inmate at a CDCR
3  facility. Consequently, there is a parity of parties in the two cases.
4      Allegations in the *Lemire* case include that the *Lemire* Defendants maintained a
5  policy or de facto unconstitutional informal custom or practice of permitting, ignoring and
6  condoning, deputies, counselors, officers, doctors, mental health and medical personnel to
7  delay in providing adequate mental health and medical assistance for the protection of the
8  health or safety of detainees/inmates; failing to properly observe and treat
9  detainees/inmates, including inadequate: (1) intake screening and evaluation; (2)
10 diagnosis; (3) referral to mental health professionals; (4) treatment plans; (5) administration
11 and delivery of medications; (6) tracking delivery of medications; (7) medical record
12 keeping; (8) staffing; (9) communication between medical, mental health and custodial
13 staff; (10) housing; (11) classification; (12) supervision; (13) access and delivery of
14 mental/medical health care; (14) access and delivery to emergency response care; (15) and
15 failure to supervise, lax supervision, failure to report, investigate, and reprimand deputy
16 and medical care provider wrongful conduct.
17     To address the high rate of suicide in the CDCR, nearly twice the national average, a
18 Special Master appointed by Judge Karlton in the *Coleman* case extensively studied the
19 suicides in the CDCR, and created a report with specific recommendations for necessary
20 changes to CDCR's polices and procedures to lower CDCR's extremely high inmate
21 suicide rate. As a result, the Judge Karlton, adopted the recommendations of the Special
22 Master and issued an Order on June 9, 2005. Among other things this Order mandated:
23 that the *Coleman* defendants (notably CDCR) develop and implement a policy that
24 establishes clearly and unequivocally a requirement for custody staff to provide immediate
25 life support, if trained to do so, until medical staff arrive to initiate or continue life support
26 measures, irrespective of whether the obligation to do so is part of the particular custody
27 staff member's duty statement.
28     The decedent in the *Lemire* case, St. Jovite, was housed in Building 8 at CSP-Solano,

1 a medical building. A medical building would likely be a building where inmates may
2 regularly require emergency medical attention. However, neither the custodial nor medical
3 first responders provided Mr. St. Jovite with emergency medical care notwithstanding the
4 heightened duty that should attach to a medical unit, and despite the fact that the CSP
5 Solano staff, by the terms of the *Coleman* Order, should have been trained in life support
6 and obligated to administer it.

7 The *Lemire* Plaintiffs allege that the *Lemire* Defendants' policy, custom or practice of
8 failing to provide adequate emergency response, including failing to effectively implement
9 a policy by which first responders were trained and required to administer CPR to an
10 inmate in need of such life saving measures, as required by the *Coleman* Court's June 9,
11 2005 order were a cause of the *Lemire* Plaintiffs' damages and injuries.

12 Because the *Lemire* Plaintiffs' case is based on the event of the death of a CDCR
13 inmate by suicide, and *Coleman* focuses on this problem in the aggregate, these cases will
14 focus on many of the same factual and legal issues, including but not limited to how inmate
15 suicides can be prevented, the reaction of CDCR staff upon finding an inmate who has
16 attempted suicide, training and the duty of CDCR staff to administer CPR or take other life
17 saving measures on an inmate who has attempted suicide, and the monitoring of inmate's
18 mental health through the Mental Health Tracking System (or later tracking system).

19 Accordingly, these cases seem to be inextricably related to one another. Notably,
20 Judge Karlton addressed the issue of the *Coleman* defendants' noncompliance in late
21 August 2005 when the *Coleman* plaintiffs filed a notice of noncompliance with the June 9,
22 2005 Order. St. Jovite's death could have been prevented if CSP-Solano staff had
23 administered CPR or other life saving treatment to St. Jovite - as they should have been
24 trained to do, and obligated to do, under the terms of the *Coleman* Order.

25 Assigning *Lemire* to the *Coleman* judge, Judge Karlton, will save significant judicial
26 effort because Judge Karlton is already familiar with the issues surrounding inmate suicides
27 in the CDCR, and he issued the June 9, 2005 Order as well as other orders upon which the
28 *Lemire* Plaintiffs rely. Judge Karlton is uniquely qualified to assess *Lemire* because he has

1  dealt with many of the same issues before in *Coleman,* and understanding of the *Coleman*
2  case will give him a context in which to evaluate *Lemire*.  Additionally, if the *Lemire* case
3  is assigned to any judge other than Judge Karlton, that judge will be forced to expend
4  unnecessary effort learning about the *Coleman* case, which will no doubt be time
5  consuming, but will be crucial to understanding *Lemire*.  Judge Karlton already possesses
6  this knowledge, so assigning *Lemire* to Judge Karlton will prevent the unnecessary
7  expenditure of judicial effort.
8      Because *Lemire* and *Coleman* are related and deal with many of the same issues of
9  fact and law, and because relating the cases and assigning *Lemire* to Judge Karlton will
10 save significant judicial effort, the *Lemire* Plaintiffs request that this Court find that this
11 case and *Coleman* are related and transfer this case to Judge Karlton.
12 Dated: June 20, 2008                    Respectfully submitted,
13                                         LAW OFFICES OF GERI LYNN GREEN, LC
14
15                                         By: /S/ Geri Lynn Green
                                               Geri Lynn Green
                                               Attorneys for Plaintiffs
16
17
18
19
20
21
22
23
24
25
26
27
28

Lemire v. Schwartzenegger, 2:08-CV-00455-GEB-EFB
Notice of Related Case                  -4-

1
2
3
4   Notice of Related Case FINAL for Coleman Filing.wpd
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28