EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Acting Senior Assistant Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7872
 Fax: (916) 324-5205
 Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF REQUIRING ACCESS TO INPATIENT PSYCHIATRIC HOSPITALIZATION**<br><br>Hearing:　July 25, 2008<br>Time:　　8:30 a.m.<br>Courtroom:　Four<br>Judge:　　The Honorable<br>　　　　　Lawrence K. Karlton |

## I.

## INTRODUCTION

By this motion, Plaintiffs' counsel puts before this Court a conflict within its own representation of the *Valdivia* class: the parolee's due process interest in a timely revocation hearing versus the parolee's liberty interest in being free from involuntary placement in a Department of Mental Health (DMH) hospital pending his revocation hearings. Plaintiffs

provide no proposal to resolve this Hobson's choice, nor can they without compromising their representation of at least part of the class.

Defendants submit their mental health care system, developed under the aegis of the *Coleman* court, provides mental health screenings and outpatient services to all parolees, whether revoked or not, and limits inpatient care to revoked parolees, in accord with state law prohibitions against involuntary mental health treatment. To the extent Plaintiffs' counsel cannot agree to the revocation of mentally ill parolees at the earliest due process juncture, then this Court is left to determine the propriety of waiving those parolees' due process rights and civil rights in favor of pre-hearing placement in a state mental health hospital for inpatient services. Defendants respectfully request this Court rule that only revoked parolees may be placed into state mental health facilities or, in the alternative, this Court waive the civil rights of those parolees who, while awaiting their revocation hearings, are found to have serious mental disorders requiring inpatient mental health per *Coleman* criteria in order to enable such care in appropriate DMH-operated programs.

## II.

## PREFATORY STATEMENT OF CASE

A. **Because a Parolees' Inability to Participate in a Revocation Hearing Does Not Per Se Indicate a Serious Mental Disorder, this Motion is Limited to Providing *Valdivia* Parolees with the Same Inpatient Care Provided to *Coleman* Patients with Serious Mental Disorders.**

Plaintiffs' motion uses the generic term "mentally ill" to describe those parolees in need of inpatient mental health care. Under this rubric, Plaintiffs appear to seek both restorative care for those parolees who are unable to meaningfully participate in a revocation hearing and inpatient care for those parolees with *Coleman*-recognized serious mental disorders. The *Coleman*-approved Revised Program Guide provides the diagnostic criteria for determining whether an inmate has a serious mental disorder. (Dec. Chaiken, ¶ 4.) That criteria does not include the inability to meaningfully participate in a revocation or other hearing. (*Id.*) Indeed, *Coleman* clinicians are not required to make such evaluations nor provide such care. (*Id.* ¶ 5.) Because the *Coleman* patients are not entitled to restorative care for participation in hearings,

those *Valdivia* parolees awaiting revocation or undergoing revocation who are unable to meaningfully participate in the revocation hearing are not entitled to restorative care for those competency issues. This motion must therefore be limited to the provision of inpatient intermediate and acute care to *Valdivia* parolees awaiting revocation hearing who have serious mental disorders meeting the *Coleman* Program Guide criteria for admission to inpatient care programs.

B.  **The *Coleman* Revised Program Guide Policies, Combined with the Submitted *Valdivia* Plan, Provides Timely Access to Mental Health Care.**

Plaintiffs' motion fails to acknowledge the *Coleman*-based mental health care services accessed by parolees and inmates alike on a daily basis coincide with the timeframe for revocation hearings. There is no dispute that parolees, like CDCR new commitments, undergo mental health screenings upon their intake at reception centers. (Dec. Chaiken, ¶6.) On the initial day, parolees receive a 'bus screening' for medical and mental health issues. (*Id.*) Within seven calendar days of arrival at the reception center, all new commitments and parole violators shall receive a screening for possible mental health needs. (*Id.*) They are individually interviewed by a psychologist or Psychiatric Social Worker (PSW) using the standardized Mental Health Screening questionnaire. (*Id.*) Those who refuse to participate in the mental health screening interview shall be referred for a psychological evaluation to determine if they have a mental disorder. (*Id.*) Individuals who are unable to participate in the screening interview due to possible acute psychiatric distress are immediately referred for crisis care in a mental health crisis bed, and referred for an emergency psychiatric evaluation. (*Id.*) In sum, a parole violator may be found as early as his initial day and often no later than the seventh day at reception center to meet the criteria for placement in the mental health services delivery system and be placed within an appropriate level of care (Correctional Clinical Case Management Services, Enhanced Outpatient Program Services, and Mental Health Crisis Bed). (*Id.*)[1]  These timeframes

///

---

[1] Under the *Coleman* guidelines, a patient may remain in a mental health crisis bed for ten days. (Dec. Chaiken, ¶ 6.)

Opposition to Mot. Injunctive Relief

3

have all been negotiated and approved within the bounds of the *Coleman* Revised Program Guide. (*Id.*)

The *Valdivia* timelines dictate that a parole violator must be given a probable cause hearing within 13 business days and a revocation hearing within 35 days following imposition of the parole hold. Thus, a parole violator may, if qualified, be receiving *Coleman*-based care in the days before the probable cause hearing. The parole violator can be revoked as early as the probable cause hearing, and so available for referral and placement in a DMH inpatient program, if necessary, within 13 business days of imposition of the hold. (See Ex. A, Def. Plan Provide Due Process and Mental Health Care to Parolees, 6/6/08.) Because of the ongoing scarcity of appropriate inpatient beds, it is doubtful that any earlier revocation of a parole violator would actually result in his immediate placement in an inpatient DMH bed. (Dec. Radavsky, ¶¶ 10-11.) Any expedited or prioritized treatment of parole violators before new commitments or other CDCR inmates would not serve Defendants' ethical and professional interest in providing care on an acuity basis. (*Id.*) Plaintiffs' request for expedited treatment of parole violators should be denied as violative of the established timeframes of the *Coleman* Revised Program Guide and as improper.

### III.

### LEGAL ARGUMENT

**A.   Because Plaintiffs' Request For Injunctive Relief Is Procedurally And Substantively Improper, the Request Must Be Denied.**

  **1.   Plaintiffs Cannot Establish Standing to Seek this Relief.**

The very distinctions in claims and classes that enabled the separate pursuit of these two cases now serve to bar Plaintiffs' claim for injunctive relief for *Valdivia* parolees awaiting revocation hearings ("pend revs"). Simply put, the Plaintiffs cannot demonstrate these *Valdivia* class members seeking relief from the *Coleman* court have the requisite standing.

The *Coleman* certified class consists of those "inmates with serious mental disorders confined within the California Department of Corrections." *Coleman v. Wilson*, 912 F.Supp. 1282, 1285 (E.D. Cal. 1995). Judgment was entered and injunctive relief awarded requiring

Defendants' development of a constitutionally adequate mental health care system to serve the mental health care needs of the certified class.

In contrast, the *Valdivia* class consists of:

a.  California parolees who are at large;

b.  California parolees who are in custody as alleged parole violators and who are awaiting revocation of their state parole;

c. California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

(*Valdivia* Stipulated Order for Injunctive Relief, 3/9/04, ¶ 7.)

Plaintiffs mistakenly assume that a parolee stands in the same legal stead as an inmate. The United State's Court has ruled that a parolee has a liberty interest subject to due process protection. *Morrisey v. Brewer*, 408 U.S. 481 (1972). The *Valdivia* injunction itself provides only for a "hold" over the parolee for 35 days, not an indeterminate period of confinement. (*Valdivia* Stipulated Order for Injunctive Relief, 3/9/04, ¶ 9 (e).) The only overlap between the *Coleman* and *Valdivia* class definitions consists of those parolees falling within subpart (c) of the *Valdivia* class definition: those parolees who have been found both (1) in violation of parole and sentenced to prison custody and (2) to have a serious mental disorder qualifying them for *Coleman*-based care under the Revised Program Guide. Only this subgroup, those parolees who have been revoked and who have a serious mental disorder, are properly members of both the *Coleman* and *Valdivia* classes and thus able to seek relief from both courts.[2] This motion improperly seeks injunctive relief from the *Coleman* court for persons who are not *Coleman* class members. Therefore, the motion must be denied for failing to meet the standing requirement.

//

//

//

---

2. As more fully discussed below, Defendants provide mental health care services within CDCR, ranging from Correctional Clinical Management Services to Mental Health Crisis Beds, to parolees upon their intake in the adult reception centers. (See also the attached Declaration of Shama Chaiken ¶¶ 6-8.)

Opposition to Mot. Injunctive Relief

5

## 2. This Court Has Already Awarded Injunctive Relief Between These Parties, Thus this Request is Barred by Res Judicata.

"Res judicata, or claim preclusion, bars claims that should have been raised and resolved in earlier litigation between the same parties. Generally a claim is barred under this doctrine if the earlier litigation: (1) concerned the same claim as the current action, (2) reached final judgment on the merits, and (3) involved the same parties." *Comm. Telesystems Int'l v. Cal. Pub. Util. Com.*, 96 F.3d 1011, 1017 (9th Cir. 1999); see also *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336 n.16 (2005).

The principle of res judicata applies to class actions. "There is no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984). Indeed, courts have barred claims on res judicata grounds in the context of prisons and class actions. *Tetzlaff v. Swinney*, 678 F.Supp. 812, 813-814 (D. Nev. 1987) (inmate's claims for declaratory and injunctive relief were barred by a prior class action consent decree); *Muhammad v. Warithu-Deen Umar*, 98 F.Supp. 2d 337, 341-42 (W.D.N.Y. 2000) (inmates' claims of denial of free exercise of religious beliefs were barred under res judicata by prior prison class action that resolved issues related to inmates' ability to practice a religion); *Guilford v. City of Philadelphia*, 1995 U.S. Dist. LEXIS 12895 (E.D. Pa. 1995) (staying subsequent claims based on res judicata effect of prior class action).[3]

Plaintiffs contend that this Court must enjoin DMH to retain CDCR patients requiring mental health care within DMH inpatient facilities during their last 35 days of confinement. In other words, Plaintiffs seek an injunction requiring DMH provide *Coleman* patients with pre-release parole planning. Further, Plaintiffs portray all *Valdivia* parolees as subject to this 35-day return policy. In actuality, only those *Valdivia* parolees who have been revoked and given a term of confinement are placed in DMH and so subject to this return policy. (Dec. Radavsky, ¶ 15.) Because the *Coleman* court has already awarded Plaintiffs an injunction requiring the provision of constitutionally adequate mental health care by the *Coleman* Defendants, this request for a

---

3. A copy of this decision is attached as required by Local Rule 5-133(i).

Opposition to Mot. Injunctive Relief

second injunction to require the provision of pre-release planning by DMH for *Coleman* class members is inappropriate. A request for a second injunction between the same parties concerning essentially the same issue -- constitutionally adequate mental care services for a CDCR inmate during a CDCR inmate's confinement term -- is barred by the principle of res judicata.

To the extent this Court is concerned about pre-release parole planning for Coleman class members, Defendants respectfully submit that CDCR has taken responsibility for providing such pre-release parole planning. (See Def. EOP in Reception Plan, filed 12/3/07.) Because DMH does not have the ability to determine a patient's date of discharge from CDCR custody, DMH does not release CDCR patients upon the end of their term of confinement. (Dec. Radavsky, ¶ 15.) Rather, DMH returns CDCR patients back to CDCR within 35 days of their final confinement day to enable their participation in the pre-release planning provided by CDCR to prisoners. (*Id.*) DMH does not have any familiarity with the pre-release planning required for state prisoners. (*Id.*) DMH understands that a return within 35 days of the end of the confinement term is a sufficient time period for such pre-release planning to occur. (*Id.*) Defendants respectfully request that CDCR be permitted to continue to provide *Coleman* class members with pre-release planning and discharge from confinement.

### 3. The Motion for an Injunction Requiring DMH to Retain CDCR Inmates for Prerelease Planning Overlooks the Special Masters' Pending Work and Should Be Dismissed as Premature.

In the alternative, this litigation is premature, sidestepping the ongoing work of the Special Masters in both cases. Plaintiffs' claim that both the *Valdivia* Defendants' submitted plan and the *Coleman* Revised Program Guide should require prerelease parole planning within DMH inpatient mental health facilities should first be heard within the framework of pending negotiations facilitated by both Special Masters. The *Valdivia* Special Master extended the deadline for Defendants' plan to provide due process and mental health care to August 15, 2008, rendering this motion unripe even before it was filed. (Ex. B, SM Riveland letter, 5/28/08.) The *Coleman* Special Master is facilitating negotiations of the 2008 update to the Revised Program Guide. (Dec. Chaiken, ¶ 3.) Even though Plaintiffs have not asserted this issue in the course of

Opposition to Mot. Injunctive Relief

the Program Guide negotiations, any concerns about the practice or policy to return CDCR inmates receiving inpatient care to CDCR for prerelease parole planning should be discussed within the Program Guide framework. Further, to the extent Special Master Lopes issues a report on the *Coleman* Defendants' plan to provide EOP care to class members in reception centers and its provisions for prerelease parole planning, Plaintiffs' claim is premature and should be asserted, if at all, in response to the Special Master's report. (*Coleman* Court Order, 10/3/07; Def. Plan, 12/3/07.) Lastly, the memorandum of understanding containing the provision for DMH inpatient care of CDCR patients is presently under review by Mr. Hagar in the *Plata* matter. (Dec. Radavsky, ¶ 12.) In deference to the Special Masters' separate and joint work to address inpatient mental health care and prerelease parole planning, this motion should be dismissed as premature.

### 4. Even If Injunctive Relief Were Procedurally Available, Plaintiffs Cannot Establish the Prerequisites for that Relief.

Plaintiffs label this motion as seeking injunctive relief, but fail to identify the sought relief as a temporary restraining order or as a preliminary injunction pending further briefing and hearing concerning a permanent injunction. For purposes of this brief, Defendants will assume a preliminary injunction is sought.

#### a. Plaintiffs' Failure to Establish Subject Matter Jurisdiction Precludes this Motion.

Plaintiffs cannot establish that the *Valdivia* Court or the *Coleman* Court has subject matter jurisdiction over the issue of non-revoked parolees' access to DMH inpatient mental heath care. A preliminary injunction must be denied unless the plaintiff adequately establishes a "reasonable probability of ultimate success upon the question of jurisdiction." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana* (5th Cir. 1985) 762 F2d 464, 471; *Savoie v. Merchants Bank* (2nd Cir. 1996) 84 F2d 52, 57. A sought injunction may be denied if it involves matters "wholly outside of the issues in the suit." *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997). The *Valdivia* court's jurisdiction is limited by the four corners of the underlying complaint and consent decree: Plaintiffs' constitutional claim for timely and adequate parole

revocation hearings under the Due Process clause. The *Valdivia* complaint and consent decree did not present any issue of mental health care, but only of parole revocation hearings to parolees. The *Coleman* complaint and judgment, by Plaintiffs' own devising, covered mental health care services for inmates, as is provided to revoked parolees and other persons sentenced to a term of confinement within CDCR. Because neither the *Valdivia* nor the *Coleman* court have subject matter jurisdiction over the issue of mental health care for non-revoked parolees, this motion cannot proceed.

        **b.    Plaintiffs' Failure to Establish In Personam Jurisdiction Precludes this Motion.**

A court may not enjoin persons who have not been served or who have not been named in the case. *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Just as the *Valdivia* complaint failed to assert a claim for inpatient mental health care services for non-revoked parolees, so the *Valdivia* complaint also failed to name any person within DMH or any other state agency as responsible for providing such services. While the *Coleman* court named the Director of DMH as a party, that in personam jurisdiction over the Director in the *Coleman* case cannot be stretched by Plaintiffs to address these new claims for inpatient mental health care services to non-revoked parolees. Because neither the *Valdivia* nor the *Coleman* court have in personam jurisdiction over DMH for the purpose of providing inpatient mental health care to non-revoked parolees, this motion cannot proceed.

        **c.    Plaintiffs Cannot Obtain Mandatory Injunctive Relief in Violation of State and Federal Law.**

Plaintiffs' requested relief, a court mandate requiring DMH to provide inpatient mental health services to non-revoked parolees, is properly classified as a mandatory injunction. Such relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). Moreover, a heightened standard of scrutiny applies to a motion to enjoin governmental action taken in the public interest in accord with a statutory or regulatory scheme. Under that heightened standard, the moving party must establish *both* irreparable injury and a

Opposition to Mot. Injunctive Relief

9

probability of success of the merits. *NAACP, Inc. v. Town of East Haven,* 70 F.3d 219, 223 (2nd Cir. 1995) (*emph. added*). Judicial restraint is particularly appropriate in responding to "the complex and intractable problems of prison administration." *Goff v. Harper,* 60 F.3d 518, 519 (8th Cir. 1995).

Although the motion may appear to enjoin a governmental agency, DMH, from failing to properly care for parolees, that appearance is deceiving. DMH is properly serving the public interest and the parolees' liberty interest in accepting only those parolees for inpatient care who have been revoked. The courts have long recognized that a parolee has a liberty interest, even while on a parole hold. *Morrisey v. Brewer,* 408 U.S. 481 (1972). That liberty interest is extinguished only by a timely and adequate revocation hearing. The "parole hold" provided by the *Valdivia* injunction comports with this constitutional maxim by permitting the confinement of a parolee for up to 35 days pending his revocation hearing. We anticipate Plaintiffs will assert any hold beyond 35 days is arguably in violation of the injunction and the parolee's liberty right. Therefore, Defendants must question their ability to take a parolee on only a "parole hold" and subject that parolee to the stigmatizing consequences of involuntary placement and treatment in a state mental health hospital. *Doe v. Gallinot,* 657 F.2d 1017 (9th Cir. 1982).

Generally, CDCR inmates are transferred for inpatient care under the statutory mechanism of California Penal Code section 2684. That code section expressly applies to "inmates" who have a far more minimal liberty interest in release from state prison than a parolee on a parole hold. Any lack of consent to this transfer to a state hospital is addressed by a pre-transfer *Vitek* hearing. *Vitek v. Jones,* 445 U.S. 480 (1979). Absent the revocation of parole, the State cannot use section 2684 nor the parole hold of the *Valdivia* injunction as the basis for literally holding the parolee for mental health care within or beyond the 35 days permitted for the revocation hearing. This extant liberty interest of the parolee awaiting revocation means that state statutory prohibitions against involuntary placement in a state mental health hospital apply, including the Lanterman-Petris-Short Act. Cal. Welf. & Inst. Code § 5000 et seq. DMH thus serves the public and the parolee interest in the civil right against involuntary mental health treatment by requiring the parolee's revocation before inpatient placement.

Because Plaintiffs' sought injunction to mandate parolees' placement in DMH inpatient services would violate the Lanterman-Petris -Short Act, Plaintiffs cannot establish the probability of success on the merits. "Absent a waiver by the state, a federal court has no power to order a state officer exercising delegated authority to comply with duties imposed by state law." *Grand River Enterprises Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701-702 (8th Cir. 2006). Plaintiffs' motion must be denied to avoid an unenforceable result.

Further, to the extent Plaintiffs seek to enjoin DMH to provide inpatient services to those parolees with less than 35-day terms of confinement, their request falls afoul of an established consent decree. Defendants notified Plaintiffs over two years ago that DMH had entered into a consent decree with the federal government to implement a recovery-based model of care at its hospitals, in compliance with the Civil Rights of Institutionalized Persons Act (CRIPA). (Def. Filed CRIPA Consent Decree, 5/9/06.) Those hospitals covered by the CRIPA consent decree are, to date, Atascadero State Hospital, Metropolitan State Hospital, Napa State Hospital, and Patton State Hospital. (Dec. Radavsky, ¶ 6.)

DMH is not able to provide mandated services to a patient with a confinement term of less than 35 days at CRIPA-covered state mental health hospitals. (Dec. Radavsky, ¶8.) The recovery-based model of care involves a 35-day diagnostic and evaluative period at the start of a patient's stay for intermediate (not acute) care. (*Id.* ¶ 7.) A patient staying 35 days or less will not receive the full benefits of DMH care nor will DMH fully comply with the mandates of the CRIPA consent decree. (*Id.* ¶ 8.) In essence, Plaintiffs improperly stand as interlopers in the CRIPA consent decree, seeking to enjoin the implementation of part of another federal court's order. *Span-Eng Assocs. v.Weidner*, 771 F.2d 464, 467 (10th Cir. 1985). Plaintiffs cannot show a probability of success on the merits when the sought relief will intrude upon the interests of federal comity. Therefore, Plaintiffs' motion to enable parolees with less than 35 days of confinement to access CRIPA-covered DMH hospital must be denied.

d. **Plaintiffs Cannot Demonstrate the Balance of Hardships Warrants the Sought Relief.**

In determining Plaintiffs' request, this Court must "balance the competing claims of

Opposition to Mot. Injunctive Relief

11

injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Campbell Alaska*, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402 (1987)   The Plaintiffs request access to inpatient mental health services for those parolees who have yet to be revoked. Without the sought injunctive relief, those parolees awaiting revocation hearings will continue to receive mental health care with CDCR and, once revoked, will receive inpatient care within a DMH facility. The practical effect of providing the sought injunctive relief however is not necessarily increased access to DMH care. The timeframes for care and for revocation hearings sufficiently coincide such that parolees awaiting revocation and who need DMH inpatient care will likely not benefit from this sought injunctive relief, especially in light of the scarcity of inpatient beds. The legal effect of providing the injunctive relief, while left unstated by Plaintiffs, is significant. The injunction can only occur upon a waiver of Plaintiffs' right to refuse mental health care under the Lanterman-Petris-Short Act and, if the care is for an indeterminate period of time, possibly their right to a timely revocation hearing.  Defendants respectfully submit that the balance of these competing interests compels a denial of Plaintiffs' motion for injunctive relief.

**B.   In The Alternative, this Court Should Waive Plaintiffs' Rights To Permit the Placement Of 'Pend Rev' Parolees Into SVPP and VPP Inpatient Beds.**

The resolution of Plaintiffs' stated need for inpatient services for parolees awaiting revocation involves a compromise. Plaintiffs' entitlement to timely due process hearings and to freedom from involuntary mental health treatment in a state mental health hospital is undisputed. If Plaintiffs however desire placement in a state mental health hospital before any revocation decision issues, then Plaintiffs must waive their right to a timely revocation hearing or their rights under the Lanterman-Petris-Short Act. To the extent Plaintiffs' counsel is not able to provide such waivers, then this Court may do so. Once such waivers are made, then Defendants will be able to place those parolees awaiting revocation hearings who need inpatient mental health services into the two DMH facilities not subject to the CRIPA consent decree: Vacaville Psychiatric Program (VPP) and Salinas Valley Psychiatric Program (SVPP).

//

## IV.

## CONCLUSION

Defendants respectfully request Plaintiffs' motion for injunctive relief to enable the placement of those parolees awaiting revocation hearings into state mental health hospitals be denied. The motion fails to establish the procedural and substantive prerequisites for relief. Should Plaintiffs desire such placement, then Plaintiffs must waive or ask the Court to order waiver of the Lanterman-Petris-Short Act prohibition against involuntary mental health treatment in state mental health hospitals, as well as waiver of timely revocation hearings.

Dated: July 8, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

ROCHELLE C. EAST
Acting Senior Assistant Attorney General

*/s/ Lisa Tillman*

LISA A. TILLMAN
Deputy Attorney General
Attorneys for Defendants

10447198.wpd
CF1997CS0003

Opposition to Mot. Injunctive Relief