2:90-cv-00520 LKK JFM P

**DEFENDANTS' OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF
REQUIRING ACCESS TO INPATIENT PSYCHIATRIC
HOSPITALIZATION**

Ex. A, Defendants' Plan Provide Due Process
and  Mental Health Care to Parolees, 6/6/08.

## Lisa Tillman - Revised Valdivia Plan to Provide Care

| | |
|---|---|
| **From:** | Lisa Tillman |
| **To:** | mlopes@pld-law.com |
| **Date:** | 6/6/2008 2:42 PM |
| **Subject:** | Revised Valdivia Plan to Provide Care |
| **CC:** | ashannonpsychmd@mindspring.com; awhelan@rbg-law.com; burnshill@gmail.com; DocKC99@aol.com ; DoctorKoson@aol.com ; dspecter@prisonlaw.com ; Fdovale@pld-law.com; gasquetflat@msn.com; hammujones@comcast.net; harconwil@aol.com; HD@Dlugacz.com; HowNani@aol.com; itrujillo@prisonlaw.com.; Jeffrey.metzner@uchsc.edu ; jkahn@rbg-law.com ; jronmetz@yahoo.com; kwalsh@pld-law.com; lbuffardi@pld-law.com; lrifkin@rbg-law.com; mbien@rbg-law.com ; Melissa G. Warren; mperrien@aol.com ; mspencer@pld-law.com; paul_nicoll@msn.com ; rpattersonmd@earthlink.net ; slaubach@rbg-law.com; yje@verizon.net |
| **Attachments:** | 6.6.08pl.pdf |

June 6, 2008

Re: *Valdivia Plan*

Dear Special Master Lopes

Please find enclosed the revised *Valdivia* plan to provide mental health care to parolees. I understand the Deputy Attorneys General assigned to the *Valdivia* case will relay the plan to Special Master Riveland under separate cover.

Sincerely,

Lisa Tillman
Deputy Attorney General
Office of the Attorney General

>>> <lisa.tillman@doj.ca.gov> 6/6/2008 2:26 PM >>>

--------------------------------------------------------------

Please open the attached document.
This document was sent to you using an HP Digital Sender.

| | |
|---|---|
| Sent by: | <lisa.tillman@doj.ca.gov> |
| Number of pages: | 20 |
| Document type: | B/W Document |
| Attachment File Format: | Adobe PDF |

To view this document you need to use the Adobe Acrobat Reader.
For more information on the HP Digital Sender, Adobe Circulate,
or a free copy of the Acrobat reader please visit:

http://www.digitalsender.hp.com/reader-en

**COMPREHENSIVE PLAN ADDRESSING THE NEEDS OF PAROLEES IN THE
REVOCATION PROCESS WHO ARE MENTALLY INCOMPETENT AND/OR
HAVE SERIOUS MENTAL DISORDERS REQUIRING MENTAL HEALTH
CARE UNDER THE REVISED PROGRAM GUIDE**

I.       **Preamble**

The California Department of Corrections and Rehabilitation (CDCR) understands that
there are parolees in custody and awaiting revocation who may appear incompetent for
purposes of their revocation proceedings and/or may qualify for mental health treatment
under the Revised Program Guide policies. This plan addresses the due process and
mental health needs of such parolees.[1]

   **A. Mental Health Treatment Before Transport to CDCR or County Jail**

Whenever a parole agent places a parolee in his custody and finds the parolee may pose a
danger to himself or others, the parole agent must directly take the parole to the nearest
community hospital for immediate psychiatric evaluation under California Welfare &
Institutions Code section 5150.

   **B. Mental Health Treatment Within CDCR Under the Revised Program Guide
       Standards.**

Prior to revocation and during the revocation process, CDCR staff will consider, where
appropriate and resources are available, mental health treatment for parolees who are in
custody and awaiting revocation.

Mental health treatment within CDCR may be provided so long as the parolee is eligible
under Revised Program Guide standards, regardless of whether the parolee appears
incompetent for their parole revocation hearing. These parolees may be placed in accord
with the Revised Program Guide standards in the CDCR mental health services delivery
system for the following levels of care: Coordinated Clinical Case Management Services
(CCCMS), the Enhanced Outpatient Program (EOP), Mental Health Crisis Bed (MHCB)
or Psychiatric Services Unit (PSU).

CDCR clinicians may refer only revoked parolees with a minimum 35-day term of
confinement to the California Department of Mental Health (DMH) for inpatient care in
accord with the Revised Program Guide standards.

//

//

---

[1] For purposes of this plan only, the term "parolee" shall refer to a person under a *Valdivia* parole hold and
undergoing the process to determine whether his/her parole will be revoked.

6/6/08                                  1

**C. Available Dispositions for Parolees Who Appear Incompetent for Their Revocation Hearing.**

The deputy commissioner hearing a probable cause and/or revocation matter must determine, on a case-by-case basis, each individual parolee's apparent competency for the hearing. The status of a parolee within or outside of the CDCR mental health services delivery system will not determine any judgment on his competency for a revocation hearing.

Where the deputy commissioner determines the parolee appears incompetent, then the parolee must be referred to CalPAP for an evaluation.

Once a parolee has been determined incompetent under applicable processes, then the deputy commissioner may issue any of the following dispositions on the parolee's case:
(1) dismissal or credit for time served, with or without a special condition for placement in treatment;
(2) placement in a remedial sanction program (where an appropriate placement is available to address those mental health needs that have qualified the parolee for CDCR mental health services under the Revised Program Guide); or
(3) continued placement in custody.

## II.    Applicable Standard for Competency

The standard that will dictate the determination of a parolee's mental health competency is as follows: "A parolee is mentally incompetent for purposes of participating in his or her revocation hearing if, as a result of a mental disorder, he or she is unable to understand the nature of the proceedings taken against him or her or to assist counsel in the conduct of a defense in a rational manner."

This standard must be applied on a case-by-case basis. A parolee's past or present receipt of mental health services is not determinative of competency. A parolee's developmental disability is not a factor in determining mental health competency under this standard.

## III.    Parole Hold

The parole hold is placed per current policy and procedure.

**A. For Parolees in Custody at a County Jail with Criminal Charges Pending:**

If these parolees are identified as being in need of a mental health assessment and/or treatment, then the BRR will advise appropriate county jail staff of the parolee's need for a mental health assessment and/or treatment. BRR must make this contact with appropriate county jail staff within one business day, if possible, of the CDCR Notice Agent's completion of the NOR.

6/6/08                                        2

**B. For All Parolees Arriving at a CDCR Reception Center:**

Upon arrival at a CDCR Reception Center (RC), parolees will continue to be screened by medical staff at the bus screening per Revised Program Guide standards. If this medical screening reveals the need for immediate psychiatric treatment, the parolee will be referred to CDCR Mental Health for evaluation and appropriate treatment. CDCR will indicate the urgent nature of such a referral on the referral form. All incoming inmates are subsequently screened by mental health clinicians regardless of the outcome of the bus screening, and referred under Revised Program Guide standards for any necessary evaluation by CDCR Mental Health.

**IV.  Probable Cause Determination (PCD)**

Probable Cause Determination/case conference occurs per current policy and procedure. The PCD will occur no later than two calendar days from placement of the parole hold (if time expires on a weekend/holiday, the No Later Than (NLT) date is the next business day).

**V.  Notice of Rights/Charges (NOR)**

   **A.      Timeframe**

The parolee will be served with his or her NOR no later than **three** business days following placement of the parole hold.

   **B.      Documentation of Apparent Mental Health Issues in BPT Forms**

   **1.      During parole and/or while completing the 1502 revocation documents**, the Agent of Record (AOR) may document any mental health issues demonstrated by the parolee. The documentation should be within the parolee's field file and may be flagged by the AOR and/or Unit Supervisor. Specifically, the parolee's mental health issues should be indicated in the body of the Charge Report (1502B) and/or in the Unit Supervisor's comments/recommendations.

   **2.      During the service of the NOR**, the Notice Agent should determine if the parolee appears to have difficulty understanding his or her rights and/or charges due to mental health issues. If the Notice Agent determines the parolee has difficulty understanding their rights and/or charges due to mental health issues, then the Notice Agent shall complete on the Notice and Request for Assistance at a Parole Proceeding, BPT 1073.

            The Notice Agent who identifies a parolee with apparent mental health issues during service of the NOR shall:

    **a.**      *For inmates/parolees housed in a county jail*:

1. Document the apparent mental health issues by checking the box "Appears to have difficulty understanding" on the BPT 1073 in Section III, Initial Service of Rights and writing in the "comments" section *"MH concern—notified BRR on XX/XX/XX* (date)," and
2. Notify the BRR. A voice mail containing such information will not be a sufficient form of notification. The notification must be sent to an appropriate person within BRR, with receipt acknowledged.

    **b.**      *For inmates/parolees housed in a CDCR institution*:

1. Document the apparent mental health issues by checking the box "Appears to have difficulty understanding" on the BPT 1073 in Section III, Initial Service of Rights and writing in the "comments" section *"MH concern—notified MH staff on XX/XX/XX* (date)," and
2. Provide a copy of the completed BPT 1073 form to the watch commander or designees of the parolee's CDCR housing unit for purposes of obtaining a referral for mental health assessment and/or treatment.

**C.    Documentation of Apparent Communication and Mental Health Issues in DECS**

If the parolee appears to have difficulty understanding information imparted verbally or in writing by the parole agent or appears to have mental health issues impeding his ability to understand such information, then the parole agent shall document that apparent difficulty in the Disability and Effective Communication System (DECS) within one business day.

**D.    Return of NOR**

The completed NOR packet will be promptly returned to the respective field unit.

**VI.    Responding to Parolees' Apparent Mental Health Assessment and/or Treatment Needs During Parole Hold and Awaiting Revocation.**

    **A.  For Parolees in Custody at a County Jail and with No Local Criminal Charges Pending**

If these parolees have been identified as being in need of a mental health assessment and/or treatment, then Board Revocation Representative (BRR) will facilitate the transfer of the parole transfer to a CDCR RC within one business day, if possible, of the CDCR Notice Agent's completion of the Notice of Rights/Charges (NOR). These parolees

requiring such mental health assessment and/or treatment will be placed on the top of the transfer list in order to enable their expedited transfer to a CDCR RC.

### B. For Parolees in Custody at a County Jail with Criminal Charges Pending

If these parolees are identified as being in need of a mental health assessment and/or treatment, then the BRR will advise appropriate county jail staff of the parolee's need for a mental health assessment and/or treatment. BRR must make this contact within one business day, if possible, of the CDCR Notice Agent's completion of the NOR.

### C. Contact Information and Training

All Notice Agents will be provided with a list of:

- County jail Mental Health liaisons, and
- BRRs who will be responsible for contacting county jail health staff. (BRR lists will be updated, when changes are made, by the CCIIs and sent to CalPAP Headquarters in Sacramento).

The Supervising Notice Agent will be responsible for ensuring staff under his or her supervision receives adequate training and necessary contact information, and complies with this portion of the process.

## VII.   Return to Custody Assessment (RTCA)

### A.   Timeframe

The RTCA will be completed no later than 10 business days from placement of the parole hold.

### B.   Standard

The Deputy Commissioner (DC) will make an RTCA based on the standard practices stated in the Deputy Commissioner Manual, Resource Documents and California Code of Regulations, Title 15, division 2.

### C.   Mental Incompetence and the RTCA

### 1.   DC Placement Decision

If at the RTCA the DC is presented with appropriate evidence (such as official records from DAPO, from RSTS, from another acceptable source) that indicates the parolee is mentally incompetent, the DC will consider whether placement in a remedial sanctions program is appropriate.

6/6/08                                          5

If the parolee is receiving care within the CDCR mental health care services delivery system at the time of the RTCA, *and* has documented mental competency concerns, then the DC may place the parolee in a remedial sanctions program if an appropriate placement is available to address any mental health needs that have qualified the parolee for care under the CDCR mental health care services delivery system (per the Revised Program Guide).

If placement in a remedial sanctions program is *not* appropriate, the DC will note on the BPT 1104 that an evaluation to determine if the parolee is incompetent may be necessary. The final determination for the need for the evaluation will be made at either the Probable Cause Hearing (PCH) or RH.

## VIII. Attorney's Notification to DRU of Parolee's Apparent Mental Incompetency

### A. Competency Issues Impeding Attorney-Client Consultation

The parolee's apparent lack of mental competency can be presented by a California Parole Advocacy Program (CalPAP) attorney or any other attorney consulting with the parolee during the attorney-consultation step of the revocation process.

The parolee's attorney may contact CDCR Decentralized Revocation Unit (DRU) staff if the attorney finds, while interviewing a parolee who is pending revocation that the parolee has difficulty communicating with the attorney due to apparent mental incompetency. The parolee's attorney will contact DRU staff immediately following the initial attorney/client interview to request DRU staff identify the parolee as possibly lacking mental competence for purposes of the PCH.

DRU staff will make an entry into DECS, noting that the parolee's attorney has expressed the parolee may have mental health issues impeding his attorney-client communications.

### B. Referrals for Evaluation/Treatment of Mental Health Issues

### 1. Parolee's Self-Referral for Mental Health Evaluation/Treatment

At any time before or after revocation, a parolee may self-refer to CDCR Mental Health for mental health evaluation and/or treatment under the Revised Program Guide.

### 2. Attorney Request to LitCo for Referral for Mental Health Evaluation or Treatment

At any time before or after revocation, a California Parole Advocacy Program (CalPAP) attorney or any other attorney consulting with the parolee may file a written request for the referral of a parolee with an observed or admitted mental health issue. The parolee's expression of the intent to harm himself or others constitutes a significant mental health issue warranting such a request.

The written request shall be submitted (via email and/or facsimile) to the facility's litigation coordinator for immediate relay to the health care manager.

### E.     Availability of the Parolee for Attorney Consultation Meeting(s) Before Revocation Hearing.

#### 1.     Written and Timely Request

Attorneys seeking to meet with parolees must comply with the procedures stated in the California Code of Regulations, Title 15, section 3178.

#### 2.     Meetings with Parolees Receiving Mental Health Care

**a.     *Clinical Determination:*** If a parolee is being treated within the CDCR mental health services delivery system, particularly at the MHCB or CTC level, the acuity of the parolee's mental health condition may preclude attorney-client meetings.

CDCR mental health clinicians may determine that the parolee's mental health status renders him unable to participate in the sought attorney client meeting. The litigation coordinator will so advise the attorney by telephone prior to the requested interview date.

The attorney will defer to the judgment of the clinical staff. If the parolee remains unable to participate in an attorney client meeting for more than sequential 20 days and the attorney has not had a reasonable opportunity to meet the parolee-client, then the attorney may schedule an appointment to enter the institution to check on the status of his or her client, if possible.

**b.     *Postpone Hearing:*** The revocation proceedings will be postponed, *sua sponte* or upon motion of counsel, upon finding the attorney has not been able to meet with the parolee due to the parolee's mental health status. The hearing may not be continued beyond 20 days upon such a finding. Any additional continuances must be based upon new findings.

## IX.     Probable Cause Hearing (PCH) Within 13 Days of the Parole Hold

### A.     First Step:  Determine Whether the Parolee May Be Mentally Incompetent

The Deputy Commissioner (DC) at the PCH may determine that the parolee may be mentally incompetent. The determination must be made upon appropriate evidence, such as official records from DAPO, official records from RSTS, the DC's own observations of the parolee, notations on the BPT 1104, and any determination of competency made in any pending criminal action against the parolee.

The DC must inquire, on the record, if the parolee's attorney agrees or disagrees with the DC's determination that the parolee may lack mental competency. In the event that the DC determines an evaluation is necessary and the CalPAP attorney disagrees, the DC will contact an Associate Chief Deputy Commissioner (ACDC). The ACDC will then be responsible for contacting the listed vendors to obtain the competency evaluation.

The evaluation must be accomplished, if possible, within 30 days and certainly no later than 60 days after the date of the DC's order.

**B.    Second Step: If the Parolee May Be Mentally Incompetent, Determine Whether the Charges Should Be Dismissed.**

**Proceed with the Hearing**: When the DC determines a parolee may be mentally incompetent, the DC must proceed with the hearing for the purpose of determining whether probable cause supports the charges. A finding that probable cause exists will enable continued custody over the parolee in order to obtain a competency evaluation and then hold a hearing on an appropriate disposition of the charges.

**Standard for Return to Custody of Apparently Incompetent Parolee**: The DC will view the evidence if the light most favorable to the parolee in applying the probable cause standard for return to custody.

**i.    If probable cause is found**, the DC will assess a return-to-custody period (not to exceed the RTCA date), and so place the parolee in a revoked status.[2] The DC will also order a competency evaluation to be accomplished within 30 days and order that a Revocation Hearing be scheduled within **30** days of the DC's receipt of the evaluation. A courtesy copy of the evaluation will be provided to the parolee's counsel.

**ii.    If probable cause is not found and all charges are dismissed**, the DC will order the parole hold removed. If parolee has been receiving mental health services under the Revised Program Guide while awaiting the probable cause hearings, then the Board of Parole Hearings (BPH) will notify the AOR of the parolee's mental health service needs to ensure the best method, based on existing DAPO policies, to assist the parolee in ensuring his or her successful integration into the community.

**iii.    If some but not all charges are dismissed**, an adjustment in the RTCA will be made if appropriate. The DC will document on the BPT 1103 PCH the assessed time (RTCA) and state that the dispositional phase of the revocation process is delayed in order to obtain a competency evaluation for the hearing.

---

[2] Once placed in this revoked status, the parolee who is eligible for inpatient DMH care may be referred for such under the Revised Program Guide standards so long as he has a minimum 35-day confinement term.

### C.  Third Step: Obtain Evaluation and Schedule Dispositional Hearing

#### 1.  Ordering the Evaluation:

The evaluation must be accomplished, if possible, within 30 days and certainly no later than 60 days after the date of the DC's order.

CalPAP will be given a copy of the DC's decision and be responsible for ensuring the timely completion of the evaluation.

The DC will notify DRU staff of the order for an evaluation.  BPH staff will update DECS upon receipt of this order.

#### 2.  Canceling the Ordered Evaluation:

A DC-ordered competency evaluation may be cancelled upon a finding that information, not previously presented or heard by the DC, shows the parolee is competent for purposes of a hearing.

**Timeframe**: The competency evaluation must be scheduled and completed within 30 days of the DC order for the evaluation.   Any request to cancel the ordered evaluation must be submitted with the DRU no later than five business days before the scheduled date and time of the evaluation.

**Procedure**: If before the DC-ordered competency evaluation the parolee's attorney discovers information, not previously presented or heard by the DC, showing the parolee's competence for purposes of a hearing, the parolee's may send a written request to the DRU stating the new information and requesting withdrawal or modification of the order for an evaluation.  DRU staff will forward the request to the ACDC or designee in which the hearing was held for review and decision.

**Findings**: If the ACDC or designee determine the submitted newly-discovered information warrants a finding of competence, then the ACDC or designee shall issue an order making that finding, the factual basis for the finding, and directing cancellation of the evaluation.

If the ACDC or designee determines the submitted newly-discovered information does not warrant a finding of competence, then the ACDC or designee shall issue an order denying the request.

### D.  Fourth Step: The Probable Cause Hearing After the Competency Evaluation.

A parolee who has undergone a competency evaluation may choose to have a PCH or a RH after the evaluation report has been received.  The PCH or RH shall be held within 30 days after receipt of the completed competency evaluation.

1. **Scheduling of PCH or RH Following Receipt of Evaluations**

Once the evaluation report is completed, the hearing must be scheduled within 30 days of receipt.

   a.     **CalPAP Staff**: CalPAP staff will contact the DRU within two business days of receipt of the competency evaluation report is received. CalPAP must facsimile the competency evaluation to the DRU within two business days of receipt for inclusion in the revocation packet.

   b.     **DRU Staff:**
      i.     **Calendaring**: Upon receipt of the competency evaluation, DRU staff will place the parolee on the next available PCH or RH calendar. The parolee's counsel will inform DRU staff of which calendar – PCH or RH – for the hearing. DRU staff must calendar the parolee's hearing so the hearing occurs within 30 days of receipt of the competency evaluation. DRU staff will notify the attorney of record (CalPAP or privately-retained attorney) of the date and time of the hearing.

      ii.     **RSTS Update**: DRU staff will update the RSTS "comments" to reflect receipt of the evaluation.  Update the PCH NLT date and the RH NLT date to reflect the 60-day timeframe from ordering the evaluation report to commencing the second hearing (e.g. 30 days to obtain evaluation and 30 days to commence the second hearing.)

      iii.     **File and Send Copies**: DRU staff will place the evaluation in the revocation file and facsimile a copy of the evaluation to AOR and, if the parolee is not represented by CalPAP attorney, to the parolee's attorney of record.

2.     **The RH or PCH Hearing Procedure**

   a.  **Where a Previous PCH Occurred and RH Selected**: If a parolee selects a RH to occur after completion of the competency evaluation ordered at a previous PCH, the fact-finding phase of the hearing will be conducted under the established RH protocols.

   b.  **Where a Previous PCH Occurred and PCH Selected**:  If at parolee selects a PCH to occur after completion of the competency evaluation ordered at the PCH, then the PCH disposition phase will resume. The DC will consider the results of the competency evaluation in deciding whether or not to revoke, reinstate on parole, or recommend placement in a remedial sanctions program.

3.    **The RH or PCH Disposition Following Receipt of Competency Evaluation.**

The DC must consider the competency evaluation in the dispositional phase of the hearing, particularly in determining whether or not to terminate the revocation, reinstate on parole, or recommend other remedial sanctions. The DC will not be bound by the RTCA offer in making this disposition. If the DC imposes custody time in excess of the RTCA, the DC will state the factual basis for the imposed time.

4.    **Mitigation of the Charged Violation.**

A charged violation may be mitigated by admissible evidence of the parolee's mental condition at the time of the charged violation. The competency evaluation report will not serve as evidence of the parolee's mental health condition for purposes of mitigation of the charged violation.

If the DC under these circumstances is assessing time that exceeds the RTCA, the DC will clearly justify the higher assessment.

X.    **Revocation Hearing (RH) Within 35 Days of the Parole Hold**

A revocation hearing need only occur within 35 calendar days if a parolee has not previously been revoked at the PCH for the revocation offense(s).

A.    **First Step: Determine Whether the Parolee May Be Mentally Incompetent**

A competency issue may be addressed by the Deputy Commissioner (DC) at the RH if there has been so prior competency determination at the PCH.

The determination must be made upon appropriate evidence, such as official records from DAPO, official records from RSTS, the DC's own observations of the parolee, notations on the BPT 1104, and any determination of competency made in any pending criminal action against the parolee.

The DC must inquire, on the record, if the parolee's attorney agrees or disagrees with the DC's determination that the parolee may lack mental competency. In the event that the DC determines an evaluation is necessary and the CalPAP attorney disagrees, the DC will contact an Associate Chief Deputy Commissioner (ACDC). The ACDC will then be responsible for contacting the listed vendors to obtain the competency evaluation.

The evaluation must be accomplished, if possible, within 30 days and certainly no later than 60 days after the date of the DC's order.

**B.    Second Step: If the Parolee May Be Mentally Incompetent, DC Shall Complete Fact-Finding Phase of RH.**

**Proceed with the Hearing**: When the DC determines a parolee may be mentally incompetent, the DC must proceed with the fact-finding phase of the RH for the purpose of determining whether good cause supports the revocation of parole.

**Standard for Revocation of Apparently Incompetent Parolee:** The DC will view the evidence if the light most favorable to the parolee in applying the good cause standard for revocation.

**i.    If good cause is found,** the DC will document the findings and conclusions in RSTS, and so place the parolee in a revoked status.[3]

**ii.    If good cause is not found and all charges are dismissed,** the DC will order the parole hold be released.

**iii.    If some but not all charges are dismissed,** the DC will document the findings and conclusions in RSTS.

**C.    Third Step: Obtain Evaluation and Schedule Dispositional Hearing**

**1.    Ordering the Evaluation:**

The evaluation must be accomplished, if possible, within 30 days and certainly no later than 60 days after the date of the DC's order.

CalPAP will be given a copy of the DC's decision and be responsible for ensuring the timely completion of the evaluation.

The DC will notify DRU staff of the order for an evaluation.  BPH staff will update DECS upon receipt of this order.

**2.    Canceling the Ordered Evaluation:**

A DC-ordered competency evaluation may be cancelled upon a finding that information, not previously presented or heard by the DC, shows the parolee is competent for purposes of a hearing.

**Timeframe**: The competency evaluation must be scheduled and completed within 30 days of the DC order for the evaluation.  Any request to cancel the ordered evaluation must be submitted with the DRU no later than five business days before the scheduled date and time of the evaluation.

---

[3] Once placed in this revoked status, the parolee who is eligible for inpatient DMH care may be referred for such under the Revised Program Guide standards so long as the parolee has a minimum 35-day confinement term.

**Procedure:** If before the DC-ordered competency evaluation the parolee's attorney discovers information, not previously presented or heard by the DC, showing the parolee's competence for purposes of a hearing, the parolee's may send a written request to the DRU stating the new information and requesting withdrawal or modification of the order for an evaluation. DRU staff will forward the request to the ACDC or designee in which the hearing was held for review and decision.

**Findings:** If the ACDC or designee determine the submitted newly-discovered information warrants a finding of competence, then the ACDC or designee shall issue an order making that finding, the factual basis for the finding, and directing cancellation of the evaluation.

If the ACDC or designee determines the submitted newly-discovered information does not warrant a finding of competence, then the ACDC or designee shall issue an order denying the request.

### D. Fourth Step: The Disposition Phase of the Revocation Hearing Upon Completion of the Competency Evaluation.

The RH shall be held within 30 days after receipt of the completed competency evaluation.

#### 1.    Scheduling of RH Following Receipt of Evaluations

Once the evaluation report is completed, the hearing must be scheduled within 30 days of receip

a.    **CalPAP Staff**: CalPAP staff will contact the DRU within two business days of receipt of the competency evaluation report is received. CalPAP must facsimile the competency evaluation to the DRU within two business days of receipt for inclusion in the revocation packet.

b.    **DRU Staff:**

i.    **Calendaring**: Upon receipt of the competency evaluation, DRU staff will place the parolee on the next available RH calendar. DRU staff must calendar the parolee's hearing so the hearing occurs within 30 days of receipt of the competency evaluation. DRU staff will notify the attorney of record (CalPAP or privately-retained attorney) of the date and time of the hearing.

ii.    **RSTS Update**: DRU staff will update the RSTS "comments" to reflect receipt of the evaluation. Update the RH NLT date to reflect the 60-day timeframe from ordering the evaluation report to commencing the second hearing (e.g. 30 days to obtain evaluation and 30 days to commence the second hearing.)

iii.    **File and Send Copies**: DRU staff will place the evaluation in the revocation file and facsimile a copy of the evaluation to AOR and, if the parolee is not represented by CalPAP attorney, to the parolee's attorney of record.

2.    **The RH Disposition Phase Procedure**

a.    **No Rehearing of Fact-Finding Phase**

The RH fact-finding phase has already occurred. Following receipt of the competency evaluation ordered at the previous RH, the dispositional phase of the RH commences. During this dispositional phase, the DC shall summarize the results of the previously-held fact-finding phase on the hearing tape and shall not otherwise rehear that phase.

b.    **Competency Evaluation Considered in Disposition**

The competency evaluation is to be considered in the dispositional phase of the hearing. BPH shall consider the results of the evaluation in deciding whether or not to revoke, reinstate on parole, or recommend other remedial sanctions.

c.    **Mitigation of the Charged Violation.**

A charged violation may be mitigated by admissible evidence of the parolee's mental condition at the time of the charged violation. The competency evaluation report will not serve as evidence of the parolee's mental health condition for purposes of mitigation of the charged violation.

XI.    **Motion for Post-Competency Revocation Hearing**

Once a parolee has been revoked at the PCH or RH, the revocation process ends. A new revocation hearing may be obtained if a parolee becomes competent.

A.    **Making the Motion for an New Hearing**

1.    **Timeframe:** A request for a post-competency revocation hearing may be made at any time during the parolee's stated term of confinement within CDCR for violation of his parole. Should the stated term of confinement be extended due to additional violations or convictions, this request will be limited to the initial and not extended term.

2.    **Procedure:** If the parolee or the parolee's attorney discovers information, not previously presented or heard by the DC, showing the parolee's competence for purposes of a revocation hearing, the parolee or the parolee's attorney may send a written request to the DRU stating the new information and requesting order for an evaluation. DRU staff will forward the request to the ACDC or designee in which the hearing was held for review and decision.

**B.     Determination as to Whether the Parolee May Be Mentally Incompetent**

The DC at the New Hearing may determine that the parolee may be mentally incompetent. The determination must be made upon appropriate evidence, such as official records from DAPO, official records from RSTS, the DC's own observations of the parolee, notations on the BPT 1104, and any determination of competency made in any pending criminal action against the parolee.

The DC must inquire, on the record, if the parolee's attorney agrees or disagrees with the DC's determination that the parolee may lack mental competency. In the event that the DC determines an evaluation is necessary and the CalPAP attorney disagrees, the DC will contact an Associate Chief Deputy Commissioner (ACDC). The ACDC will then be responsible for contacting the listed vendors to obtain the competency evaluation.

The evaluation must be accomplished, if possible, within 30 days and certainly no later than 60 days after the date of the DC's order.

**C.     Procedure at New Hearing if Parolee is Not Mentally Incompetent:**

**1.     Reliance on Prior Decisions:** At the new hearing, the DC may rely entirely on BPH 1103 PCH and RH decisions.

**2.     Witness Attendance:** In the normal course of business, the DC shall not require the attendance of any witness who testified at the prior hearing unless the parolee's attorney wishes to cross-examine that witness and has made an offer of proof for recalling that witness. The offer of proof must be made upon a good faith basis.

The timeframe used for submitting witness lists and approving the witness lists for revocation hearings applies to these proceedings.

**D.     Procedure at New Hearing if Parolee is Mentally Incompetent:**

If the Deputy Commissioner and/or the parolee's attorney determine that the parolee may lack mental competency, that parolee will be given a second competency evaluation. Should the second competency evaluation state that the parolee is incompetent, that parolee will not be provided with a new hearing.

//

//

//

XII.   **Mental Health Treatment in CDCR**

    A.    **For Parolees Awaiting Revocation**

        1.    **Access to Mental Health Care**

Prior to revocation and during the revocation process, CDCR staff will consider, where appropriate and resources are available, mental health treatment for parolees who are in within a CDCR institution and awaiting revocation. (See above discussion in section....regarding expedited transfer of those parolees with mental health treatment and/or assessment needs from county jail to reception center.)

Mental health treatment within CDCR may be provided so long as the parolee is eligible under Revised Program Guide standards, regardless of whether the parolee appears incompetent for their parole revocation hearing. These parolees may be placed in accord with the Revised Program Guide standards in the CDCR mental health services delivery system for the following levels of care: Coordinated Clinical Case Management Services (CCCMS), the Enhanced Outpatient Program (EOP), Mental Health Crisis Bed (MHCB) or Psychiatric Services Unit (PSU).

Parolees who are awaiting revocation are not eligible for referral to the California Department of Mental Health (DMH) for inpatient care in accord with the Revised Program Guide standards.

Once placed in revoked status, the parolee who is eligible for inpatient DMH care under Revised Program Guide standards may be referred for such care so long as he or she has a minimum 35-day confinement term.

        2.    **Transfer to an Institution with Available Mental Health Beds**

Should a parolee be eligible for EOP services, those services may be provided within a Reception Center while the parolee awaits transfer to a mainline institution with available EOP beds.

A parolee may be transferred to a mainline institution for CCCMS, EOP, MHCB, or PSU care while awaiting his or her PCH or RH. However, the parolee must be returned to an institution located within 50 miles of the place of alleged parole violation.

        3.    **Referral for Mental Health Evaluation/Treatment**

            i.    **Parolee's Self-Referral for Mental Health E Evaluation/Treatment**

At any time before or after revocation, a parolee may self-refer to CDCR Mental Health for mental health evaluation and/or treatment under the Revised Program Guide.

### ii. Attorney Request to LitCo for Referral for Mental Health Evaluation or Treatment

At any time before or after revocation, a California Parole Advocacy Program (CalPAP) attorney or any other attorney consulting with the parolee may file a written request for the referral of a parolee with an observed or admitted mental health issue. The parolee's expression of the intent to harm himself or others constitutes a significant mental health issue warranting such a request.

The written request shall be submitted (via email and/or facsimile) to the facility's litigation coordinator for immediate relay to the health care manager.

### B. For Parolees Who Have Been Revoked

CDCR staff will consider, where appropriate and resources are available, mental health treatment for revoked parolees who are within a CDCR institution in the same fashion and under the same standards applicable to inmates within a CDCR institution. awaiting revocation.

Mental health treatment within CDCR may be provided so long as the parolee is eligible under Revised Program Guide standards, regardless of whether the parolee appeared incompetent for their parole revocation hearing. These parolees may be placed in accord with the Revised Program Guide standards in the CDCR mental health services delivery system for the following levels of care: Coordinated Clinical Case Management Services (CCCMS), the Enhanced Outpatient Program (EOP), Mental Health Crisis Bed (MHCB) or Psychiatric Services Unit (PSU).

A revoked parolee is eligible for referral to the California Department of Mental Health (DMH) for inpatient care in accord with the Revised Program Guide standards. Once placed in revoked status, the parolee who is eligible for inpatient DMH care under Revised Program Guide standards may be referred for such care so long as he or she has a minimum 35-day confinement term.

## XIV. Remedial Sanctions

Remedial sanctions will be considered throughout the revocation process for all parolees who meet the criteria for an alternate program. Mentally ill parolees are not excluded from participation in remedial-sanctions programs based solely on their mental illness. Recommended existing DAPO resources include, but are not limited to, Parole Outpatient Clinics, dual-diagnosis beds in In-Custody Drug Treatment Programs, Residential Multi-Service Centers, Parole Service Centers, and Day Reporting Centers.

## COMPREHENSIVE TRAINING PLAN

DCs will be provided with training designed for the layperson, which will assist them in making a determination whether to suspend proceedings and request treatment and/or order an evaluation to determine whether the parolee is able to meaningfully participate in the parole-revocation process. In determining whether or not a competency evaluation should be pursued, the DC should inquire of the parolee and his or her counsel about the parolee's:

- level of unmanageable behavior,
- quality of his or her ability to relate to the attorney,
- ability to assist in planning a legal strategy or defense,
- understanding of the charges,
- understanding of the range and nature of possible penalties,
- ability to appraise likely outcomes,
- capacity to convey to his or her attorney pertinent facts about the offense/violation,
- capacity to testify in his or her own defense if need be, and
- demonstration of self-serving as opposed to self-defeating actions.

BPH, DAPO, Case Records, contract clinicians, CalPAP, and Mental Health staff will be trained regarding this new process.

Case Records will train its staff using an instructional memorandum and follow-up conference call with pertinent staff involved in this process.

The Division of Adult Institutions will train its staff using an instructional memorandum and follow-up conference call (if needed) with pertinent staff involved in this process.

## DAPO Training

### *Training for Field Unit Notice Agents (FUNAs)/Decentralized Revocation Unit Notice Agents (DRUNAs)/Supervising Notice Agents (SNAs)*

DAPO will utilize its existing budget to fund the training of FUNAs, DRUNAs, and SNAs. Providing the policy is finalized, during the month of May 2008, DAPO will conduct one training session at each Regional Headquarters for its respective FUNA/DRUNA/SNA staff. DAPO will also conduct one makeup session in each region for those who miss the May training.

DAPO anticipates that training can be accomplished by June 1, 2008, provided the policy memorandum is available prior to May 1, 2008. (If the memorandum is not available until after May 1, 2008, it may be necessary to reschedule training for a later date.)

Training will consist of:

**Instructors—Parole Outpatient Clinic (POC) Staff**

1. Signs/Symptoms of Mental Illness—Using the departmental-approved training module, POC staff will provide training (**60 minutes**).

**Instructors—DAPO HQ's Americans with Disabilities Act (ADA)/Revocation Unit Staff**

1. Mentally Ill Policies and Procedures Overview (**30 minutes**). Will distribute copies of policy memorandum. Review and allow for question/answer period.
2. DECS refresher training (**30 minutes**). Training will consist of a PowerPoint presentation to ensure staff is familiar with navigating various aspects of DECS, proper entry of data, and a question/answer period to allow staff opportunity to address problems/concerns and introduce new electronic worksheet to be used by field staff.

**Instructors—Supervising Notice Agent, Primary; DAPO HQ ADA/Revocation Unit Staff, Secondary**

1. Roles and Responsibilities of FUNAs/DRUNAs (**30 minutes**).

*Training for DAPO Field Staff*

DAPO field staff will be provided training at the unit level via memorandum. This includes but is not limited to: parole agents, unit support staff, and POC staff.

An instructional e-mail will be sent to all DAPO field staff notifying them of the policy and availability of the document on DAPO's Policy Memorandum Web site. The e-mail will direct Unit Supervisors to ensure field staff is familiar with the policy by providing informal training, individually or in a group setting, no later than June 1, 2008, or within 30 days of the issuance of the policy memorandum, whichever is later.

**BPH Training**

In April 2008, DCs, Correctional Counselor (CC) Is & IIs, and Office Service Manager (OSM) Is will be receiving training.

Included in the DC training, scheduled to begin April 2008, will be training designed for the layperson, which will assist them in determining whether to suspend proceedings and request an evaluation to determine whether the parolee is able to meaningfully participate in the parole-revocation process.

Before May 31, 2008, BPH's Policy and Procedures (P&Ps) will be mailed to the ACDCs, OSM Is, and CC IIs. Before May 31, 2008, by conference call, the ACDCs, OSM Is, and CC IIs will be trained in the new process.
Before May 31, 2008, BPH's P&Ps will be mailed to all DCs, BRRs, and DRU staff. ACDCs and CCIIs will, by conference call, review and answer questions regarding the new P&Ps.

## FINANCING FOR COMPETENCY EVALUATIONS

Financing is available for the present contract (ending June 30, 2008). The anticipated costs of the evaluations can be absorbed in the present funding. The funding for the next contract beginning July 1, 2008 (four-year duration), will be available when the contract is finalized and an amendment is submitted for the additional funding for the competency evaluations.

No additional funding is required to train BPH staff.

CalPAP is able to absorb the training costs associated with this process in its current contract with the state.

BPH has training dollars that it can use for training BPH staff on this new process. No additional funding is required to train BPH staff.

## STATEWIDE IMPLEMENTATION

The new process, if all negotiations have concluded or there is agreement pending conclusion of negotiation and finalization, will be implemented June 15, 2008.

//

//