# LOCAL RULE 5-133 (i)

STEVEN GUILFORD, CHRISTOPHER REED, ANTHONY WASHINGTON,TONY TOMONEY, CARMINE
HORVATH, THOMAS DAVIS, ANTHONY COCCI, STEVEN McCLAIN,SHAHID MATEEN, GEORGE
GILLARD, GENNARO RAUSO, CHARLES SWEET, DERRICK TAYLOR,GREGORY WHITLEY, and JAMES
WILLS on behalf of themselves and all otherssimilarly situated v. CITY OF PHILADELPHIA, J. PATRICK
GALLAGHER FormerCommissioner of Philadelphia Prisons THOMAS COSTELLO; Acting Commissioner
ofPhiladelphia Prisons, WARDEN HARRY MOORE, and JOHN DOES 1-5
CIVIL ACTION NO. 94-5560

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OFPENNSYLVANIA

1995 U.S. Dist. LEXIS 12897

August 30, 1995, Decided
August 31, 1995, FILED; September 1, 1995, ENTERED

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiffs, prisoners and pretrial detainees, filed an action against defendants, a city and
prison officials, alleging that defendants violated their *Eighth* and *Fourteenth Amendment* rights by failing to take
numerous actions that would prevent inmate-on-inmate violence. Defendants filed a motion to dismiss, or, in the
alternative, to stay all proceedings.

OVERVIEW: Plaintiffs alleged that each of them has been the victim of at least one assault by other inmates during a
specified time period. Plaintiffs alleged that defendants knew of the likelihood of violence, but were deliberately
indifferent to plaintiffs' peril. Plaintiffs filed the action as related to a prior action. Defendants alleged that the injunctive
claims were barred by claim preclusion as a result of the prior action, and that the court should decline to duplicate the
prior action and a parallel action, and abstain. In the prior and parallel actions, defendants entered into consent decrees
providing for relief of overcrowding through short- and long-term planning. The court held that the consent decrees in
the prior action were final judgments on the merits for purposes of claim preclusion. The court found that the same
issues and many of the same actual defendants were involved as were in the prior action. The theories were identical,
and the material facts warranting equitable relief had been or could have been raised in the prior action.

OUTCOME: The court granted the motion in the alternative.

CORE TERMS: consent decree, inmate, prison, claim preclusion, violence, injunctive relief, prison system, inmate-on-
inmate, class members, final judgment, class action, overcrowding, planning process, abstention, decree, classification,
cause of action, operational, long-term, classwide, planning, training, assault, correctional, injunctive, subjected, issue
preclusion, settlement agreements, duplicative, preclusive

LexisNexis(R) Headnotes

Civil Procedure: Joinder of Claims & Remedies: General Overview
[HN1] Under former Local Rule of Civil Procedure 3 (now 40.1) (E.D. Pa.)., civil cases are deemed related when a case
filed relates to property included in another suit, or involves the same issue of fact or grows out of the same transaction
as another suit, or involves the validity or infringement of a patent involved in another suit.

Civil Procedure: Judgments: Preclusion & Effect of Judgments: Res Judicata
[HN2] Claim preclusion, also referred to as res judicata, prohibits relitigating a claim when there already has been a
final judgment on the merits on the same claim between the same parties or their privies. The related doctrine of issue
preclusion prohibits relitigation of issues actually litigated in a prior action. Unlike issue preclusion, claim preclusion
applies to claims that were or could have been raised in the prior litigation. Under claim preclusion, a judgment in a

class action is binding on class members in subsequent litigation if the class adequately represented the member's interests.

Civil Procedure: Judgments: Entry of Judgments: Consent Decrees
Civil Procedure: Judgments: Preclusion & Effect of Judgments: Res Judicata
[HN3] A consent decree is a final judgment and is subject to the rules generally applicable to other judgments and decrees. It is not a defense to claim preclusion that the prior judgment was entered as a consent decree. A consent decree is generally treated as a final judgment on the merits and accorded res judicata effect. Such an order entered upon a consent decree represents a judicial act and is generally held to bar a party or its privies from subsequently relitigating the issues settled by the decree.

Civil Procedure: Judgments: Entry of Judgments: Consent Decrees
Civil Procedure: Judgments: Entry of Judgments: Enforcement & Execution: General Overview
[HN4] A district court always has jurisdiction to enforce its judgments, including consent judgments, if its original jurisdiction was proper.

Civil Procedure: Judgments: Preclusion & Effect of Judgments: Estoppel: Judicial Estoppel
[HN5] The doctrine of judicial estoppel only prohibits a litigant from asserting inconsistent positions when the court has accepted the prior position; the doctrine does not disturb the right to plead inconsistent claims under *Federal Rule of Civil Procedure 8(e)(2)*.

Civil Procedure: Judgments: Preclusion & Effect of Judgments: Res Judicata
[HN6] In deciding what constitutes identity of causes of action, there is no hard and fast test, but factors to be considered are: (1) whether the acts complained of and the demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

Civil Procedure: Judgments: Preclusion & Effect of Judgments: Res Judicata
[HN7] A court is not free to take a narrow view of claim preclusion but is required to take a broad view of what constitutes identity of causes of action and apply claim preclusion to require that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.

Civil Procedure: Class Actions: Class Members: General Overview
Civil Procedure: Judgments: Preclusion & Effect of Judgments: Res Judicata
[HN8] Under elementary principles of prior adjudication a judgment in a class action is binding on class members in any subsequent litigation. Under this rule, claims for individual relief may proceed but classwide claims are precluded.

Civil Procedure: Class Actions: Class Members: General Overview
Civil Procedure: Class Actions: Prerequisites: Adequacy of Representation
[HN9] To hold a class action judgment preclusive, due process requires the court to find that the class adequately represented the member's interests. Adequacy of representation is measured by: (1) the absence of conflict among the class members, and (2) assurance of vigorous prosecution.

Civil Procedure: Judgments: Preclusion & Effect of Judgments: Res Judicata
[HN10] Even if the formal requisites of claim preclusion are met, where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive.

Civil Procedure: Class Actions: Certification
Civil Procedure: Class Actions: Class Members: General Overview
Civil Procedure: Class Actions: Judicial Discretion
[HN11] Under *Fed. R. Civ. P. 23*, the court may create subclasses, limit the class scope or invite interventions to bolster or substitute for class representation. The entry of appearance in *Rule 23(b)(1)* and *(b)(2)* class actions, while *Rule 23* does not provide for it expressly, may be appropriate, though subject to the discretion of the court.

Civil Procedure: Federal & State Interrelationships: General Overview

[HN12] A federal court should avoid duplicative litigation.

Civil Procedure: Federal & State Interrelationships: General Overview
[HN13] As between federal district courts the general principle is to avoid duplicative litigation. In an appropriate case, therefore, a district court may properly consider the conservation of judicial resources and comprehensive disposition of litigation, and attempt to avoid duplicating proceedings already pending in a federal district court. It is important, however, that only truly duplicative proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate.

COUNSEL: [*1] For STEVEN GUILFORD, CHRISTOPHER REED, ANTHONY WASHINGTON, PLAINTIFFS: DAVID RUDOVSKY, KAIRYS & RUDOVSKY, PHILA, PA.

For CITY OF PHILADELPHIA, J. PATRICK GALLAGHER, Former Commissioner of Philadelphia Prisons, THOMAS COSTELLO, Acting Commissioner of Philadelphia Prisons, HARRY MOORE, WARDEN, DEFENDANTS: LEK DOMNI, ASSISTANT CITY SOLICITOR, PHILA, PA. JAMES B. JORDAN, CITY OF PHILA LAW DEPT., PHILA, PA. ANDREW K. FLETCHER, HANGLEY, ARONCHICK, SEGAL AND PUDLIN, PHILA, PA. DAVID J. WOLFSOHN, HANGLEY ARONCHICK SEGAL & PUDLIN, PHILADELPHIA, PA.

For TONY TOMONEY, CARMINE HORVATH, THOMAS DAVIS, ANTHONY COCCI, STEVEN MCCLAIN, SHAHID MATEEN, GEORGE GILLARD, GENNARO RAUSO, CHARLES SWEET, DERRICK TAYLOR, GREGORY WHITLEY, JAMES WILLS, on the behalf of themselves and of all others similarly situated, PLAINTIFFS: DAVID RUDOVSKY, KAIRYS & RUDOVSKY, PHILA, PA.

JUDGES: NORMA L. SHAPIRO, J.

OPINION BY: NORMA L. SHAPIRO

OPINION

MEMORANDUM and ORDER

NORMA L. SHAPIRO, J.

August 30, 1995

Plaintiffs, prisoners and pretrial detainees in the Philadelphia Prison System, allege that defendants, the City of Philadelphia and its officials who operate the prisons, have violated their *Eighth* and *Fourteenth[*2] Amendment* rights by failing to take numerous actions that would prevent inmate-on-inmate violence. Defendants filed a Motion to Dismiss Plaintiffs' Claims for Injunctive Relief or, in the Alternative, to Stay all

Proceedings in the Case. The motion will be granted in the alternative.

I. BACKGROUND

In their amended complaint n1 plaintiffs allege each of them has been the victim of at least one assault by other inmates during the time period from December, 1992 to December, 1994. These alleged assaults, consisting of severe beatings or stabbings, resulted in serious injuries. Plaintiffs claim that 434 serious assaults occurred in 1992, 554 in 1993 and 405 through the first six months of 1994. Plaintiffs allege that the defendants knew of the likelihood of violence, but were deliberately indifferent to the plaintiffs' peril. Plaintiffs specifically allege the following eight ways in which the defendants' deliberate indifference was manifested:

(a) severe overcrowding of prison facilities, (b) understaffing of correctional officers and improper deployment of these officers, (c) improper classification and placement of inmates, (d) failure to separate inmates from those[*3] who pose a threat to their health and safety, (e) failure to properly segregate known assaultive inmates, (f) failure to train, supervise and discipline officers who do not provide protection to inmates, (g) failure to provide sufficient services and other programs to inmates in the prisons, and (h) failure to properly secure the prison facilities.

See First Amended Complaint at P 51. Plaintiffs allege in summary that "the Philadelphia Prisons have become institutions of sheer terror for inmates" as a result of defendants' deliberate indifference. Id. at P 53.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -
- -

n1 The amended complaint differs from the original complaint only by adding individual plaintiffs. The parties stipulated that the defendants' motion to dismiss or stay shall be considered a responsive pleading to the amended complaint.

- - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -
- - - -

This cause of action has been filed as a *Fed. R. Civ. P. 23(b)(2)* class action on behalf of "all individuals who have been subjected or will in the future be subjected to the unconstitutional policies and[*4] practices of the City of Philadelphia  that deprive plaintiffs of their right to adequate protection from deadly and other physical assaults by other inmates at the Philadelphia Prisons." Id. at P 6. However, no class has been certified and no motion for certification has been filed. Plaintiffs seek damages and injunctive relief on their own behalf and injunctive relief on behalf of the class.

Plaintiffs filed this action as related to Harris v.  City of Philadelphia , 82-1847 (E.D. Pa.).  [HN1] Under former Local Rule of Civil Procedure 3 (now 40.1) (E.D. Pa.)., "civil cases are deemed related when a case filed relates to property included in another suit, or involves the same issue of fact or grows out of the same transaction as another suit, or involves the validity or infringement of a patent involved in another suit." Following a hearing, this court decided the actions are related so   Guilford remains assigned to the judge in Harris.

The defendants have moved to dismiss or stay the claims for injunctive relief. They concede the claims for damages may proceed but allege: (1) the injunctive claims are barred by claim preclusion as a result of Harris v. City  of Philadelphia [*5] , No. 82-1847 (E.D. Pa.) and Jackson v. Hendrick, No. 71-2437 (Pa.Ct. of Common Pleas); (2) even if the claims are not barred, the court should decline to duplicate the Harris case; and (3) the court should abstain because of Jackson.

II. Claim Preclusion

[HN2] Claim preclusion, also referred to as res judicata, prohibits relitigating a claim when there already has been a final judgment on the merits on the same claim between the same parties or their privies. See *EEOC v. U.S. Steel Corp., 921 F.2d 489 (3d Cir. 1990).* The related doctrine of issue preclusion prohibits relitigation of issues actually litigated in a prior action. See *In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992).* Unlike issue preclusion, claim preclusion applies to claims that were or could have been raised in the prior litigation. See *id. at 1093.* Under claim preclusion, a judgment in a class action is binding on class members in subsequent litigation if the class adequately represented the member's interests. See *Cooper v. Federal Reserve*

*Bank, 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794 (1984); Hansberry v. Lee, 311 U.S. 32, 42-43, 85 L. Ed. 22, 61 S. Ct. 115 (1940); EEOC, 921 F.2d at 494; Wetzel v. Liberty Mutual Insurance Co[*6] ., 508 F.2d 239, 249 (3d Cir. 1975),* cert. denied, *421 U.S. 1011 (1975); Kalodner v. Board of Educ., 558 F. Supp. 1124 (E.D. Pa. 1983).*

A. Harris

1. Background

In 1982, inmates of Philadelphia's Holmesburg Prison filed a class action against the  City of Philadelphia  and individual city officials responsible for administering the prison. In an amended complaint, the plaintiffs asserted claims for deprivation of their *Eighth* and *Fourteenth Amendment* rights. Among the deprivations, plaintiffs alleged that "As a direct and proximate result of the overcrowding alleged in paragraph 56, plaintiffs have been subjected to physical and psychological injury from violent attacks, sexual assaults, and threats of physical violence by other inmates." Second Amended Complaint at P 59.

In 1986, the plaintiff class and defendants signed a Settlement Agreement ("the 1986 consent decree") in which the plaintiffs yielded their claims for damages in exchange for the construction of a 440-bed detention facility in downtown Philadelphia by December 31, 1990 and a maximum allowable population (MAP) for the then-existing facilities of the Philadelphia Prison System; if the population exceeded[*7] the MAP for an extended period, the agreement required the release and nonadmission of certain inmates unless charged with or convicted of certain violent crimes. The class of plaintiffs was expanded and certified under *Fed. R. Civ. P. 23(b)(2)* to encompass "all persons who are, or who have been, inmates of the Philadelphia Prison System, and all persons who shall be inmates of the Philadelphia Prison System in the future during such time as this Court retains jurisdiction of this matter." Order of December 31, 1986 at 4. The court approved the agreement and entered an order consistent with its terms.

When it became apparent that the 440-bed facility would not be completed, the parties negotiated a Stipulation and Agreement ("the 1991 consent decree") supplementing the 1986 Settlement Agreement. The 1991 consent decree strengthened the short-term provisions for relieving overcrowding, i.e., the release and nonadmissions procedures, and added a long-term planning process that recently was summarized by the Court of Appeals:

With respect to the long-term solution, Paragraphs 11-15 of the 1991 Consent Decree oblige the City to implement the Prison planning Process and the Mayor [*8]to appoint a Criminal Justice Project Coordinator responsible for carrying out the activities specified in the Prison planning Process. The Prison Planning Process addresses not only the physical plant of the Philadelphia prison system but also the operational aspects of running the prison system. It includes population projections, a population management plan, promulgation of physical and operational standards, a capital projects management plan, an operational management plan, and a management information service plan.

*Harris v. City of Philadelphia , 47 F.3d 1311, 1316 (3d Cir. 1995).*

Implementation of the long-term provisions have resulted in the construction of the 2,000-bed Curran-Frumhold Correctional Facility, now admitting inmates and expected to be fully operational by December, 1995. The City also is near completion of the Criminal Justice Center, a modern criminal courthouse that will expedite the trial of criminal cases. Laurel Hall has been replaced with the Alternative and Special Detention Central Unit. By October the City expects to have fully implemented long-term alternatives to the release and admissions provisions of the consent decrees. These developments[*9] have taken place as part of a long-term rational planning process involving sophisticated projections of the prison system's needed capacity, services and programs.

Concurrently with Harris, the Philadelphia County Court of Common Pleas administers a consent decree in a somewhat parallel action, Jackson v. Hendrick, No. 71-2437. In 1972, the Jackson court held that conditions in the Philadelphia prisons violate the *Eighth Amendment's* prohibition against cruel and unusual punishment. See Jackson v. Hendrick, No. 71-2437 (Pa.Ct. Common Pleas, Apr. 7, 1972), aff'd, *309 A.2d 187 (1973)*, modified on other grounds, *321 A.2d 603 (Pa. 1974).* The parties thereafter entered consent decrees setting a MAP and governing conditions in the prisons. The Third Circuit Court of Appeals ruled that Jackson did not preclude Harris and did not require federal court abstention. See *Harris v. Pernsley, 755 F.2d 338 (3d Cir. 1985).* The consent decrees coordinate responsibilities in the two causes of action so that where there is overlap, the obligations are consistent. See *Harris v. Reeves, 761 F. Supp. 382, 393 (E.D. Pa. 1991).*

2. Final Judgment

The consent decree[*10] in Harris is a final judgment. See *Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367,*

*391, 378 (1992)* (" [HN3] a consent decree is a final judgment" and is "subject to the rules generally applicable to other judgments and decrees."). It is not a defense to claim preclusion that the prior judgment was entered as a consent decree: "A consent decree is generally treated as a final judgment on the merits and accorded res judicata effect." *United States v. Athlone Industries, 746 F.2d 977, 983 n.5 (3d Cir. 1984);* see also *In re Graham, 973 F.2d 1089 (3d Cir. 1992)* (assuming consent decree has res judicata effect); *American Equipment Corp. v. Wikomi Mfg. Co., 630 F.2d 544 (7th Cir. 1980)* ("Such an order entered upon a consent decree represents a judicial act and is generally held to bar a party or its privies from subsequently relitigating the issues settled by the decree").

Paragraph 10 of the 1991 consent decree states: "By entering into this Stipulation and Agreement, none of the parties makes any admission respecting the merits of any claim or defense in this litigation, except as to those matters expressly stated in the preceding paragraphs of this Stipulation." Order [*11] of March 11, 1991 Addendum at P 10. n2 Paragraph 10 does not state that the consent decree shall not operate as a final judgment on the merits but only that the parties do not admit anything regarding the merits. This paragraph explicitly states what is implicit in most consent decrees: the defendants agree to undertake certain obligations without admitting their liability in exchange for plaintiffs' foregoing the right to a trial. The fact that the City did not admit to constitutional violations in the consent decrees does not lessen the finality of the decrees.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 The preceding paragraphs state that: the population of the PPS continuously has exceeded the MAP; the 440-bed facility cannot be constructed by the December 31, 1990 deadline; long-term planning is needed prior to new prison construction; alleviation of "existing conditions of acute overcrowding" cannot await new construction or renovation; the plaintiffs desire to preserve their right to seek monetary damages notwithstanding the consent decree; and the tasks required by the Stipulation and Agreement are to be performed with all possible dispatch.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*12] It also is not significant to finality of the judgment that paragraph 33 of the 1991 consent decree states that the court shall retain jurisdiction "to enforce the provisions" of the decree. [HN4] A district court always has jurisdiction to enforce its judgments, including consent judgments, if its original jurisdiction was proper. See, e.g., *Beckett v. Air Line Pilots Ass'n, 301 U.S. App. D.C. 380, 995 F.2d 280, 286 (D.C. Cir. 1993)* (referring to "the well-established principle that a trial court retains jurisdiction to enforce consent decrees and settlement agreements"). The consent decrees operate as final judgments on the merits for purposes of claim preclusion.

Plaintiffs understandably countered that defendants are judicially estopped in this action by their prior argument in Harris that the consent decrees are not final judgments. In response to plaintiffs' argument in Harris that section 20409 of the 1994 Crime Bill, see *18 U.S.C. § 3626*, violates separation of powers by reopening a final court judgment, the defendants argued:

There can be no question that Harris is a "pending case," not a case which terminated prior to the Crime Bill's enactment. Paragraph 33 of[*13] the 1991 Consent Decree expressly provides that the "Court retains jurisdiction of the parties and the cause of action to enforce the provisions of this Stipulation and Agreement." Moreover, a review of the docket in this case reveals that on almost a daily basis, this Court continues to actively enforce, as well as modify, the Decrees.

Harris Reply Memorandum in support of Motion to Vacate at 18. But [HN5] the doctrine of judicial estoppel only prohibits a litigant from asserting inconsistent positions when the court has accepted the prior position; the doctrine does not disturb the right to plead inconsistent claims under *Federal Rule of Civil Procedure 8(e)(2)*. See *Teledyne Industries v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)*, cited in *Fleck v. KDI Sylvan Pools, 981 F.2d 107, 121 (3d Cir. 1992)*, cert. denied, *123 L. Ed. 2d 267 (1993)*; *Resolution Trust Corp. v. Farmer, 823 F. Supp. 302 (E.D. Pa. 1993)*. Defendants are not judicially estopped by their prior argument that Guilford and Harris are not related actions under the Local Rules of Civil Procedure because the court rejected their position that the actions are unrelated.

In an opinion[*14] filed today in Harris the court declines to address the effect of section 20409 of the Crime Bill. Should it become necessary to address section 20409, the court will consider at that time whether the defendants are judicially estopped, in light of the court's acceptance of their position in Guilford , from arguing that the Harris consent decrees are final judgments on the merits regarding claim preclusion.

Plaintiffs argue that the policies and procedures in Harris addressing the specific issue raised in their complaint -- inmate-on-inmate violence -- have not yet been approved by the court. They cite *In re Graham, 973 F.2d 1089 (3d Cir. 1992)*, for the proposition that a consent decree operates as final only if the decree finally adjudicates the claim at issue and if the parties intended for the decree to have preclusive effect. But Graham held that claim preclusion does not apply to bankruptcy proceedings to discharge a debt because of the unique circumstances of bankruptcy cases; the portion of Graham cited by plaintiffs addresses issue preclusion not claim preclusion. Graham's narrow reading of issues decided in a consent decree has nothing to do[*15] with whether claim preclusion applies. If claim preclusion applies, unlike issue preclusion, it will bar any issues that could have been raised in the prior action.

### 3. Same Cause of Action

[HN6] In deciding what constitutes identity of causes of action, there is no hard and fast test, but factors to be considered are: (1) whether the acts complained of and the demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same. *United States v. Athlone Industries, 746 F.2d 977, 984 (3d Cir. 1984)*. Each of these factors points toward the conclusion that the Guilford claims have been presented in Harris.

### a) Whether the Acts Complained of and the Demand for Relief are the Same

The Harris plaintiffs specifically complained of inmate-on-inmate violence: "As a direct and proximate result of the overcrowding alleged in paragraph 56, plaintiffs have been subjected to physical and psychological injury from violent attacks, [*16] sexual assaults, and threats of physical violence by other inmates." Harris Second Amended Complaint at 12-13.

Plaintiffs in Guilford allege the defendants have failed to prevent inmate-on-inmate violence by their deliberate

indifference to eight areas of prison administration. First, they allege severe overcrowding of prison facilities; overcrowding is the major focus of the Harris action. The Harris plaintiffs specifically alleged overcrowding in their second amended complaint, and both consent decrees seek to alleviate overcrowding through enforcement of a MAP, release, nonadmissions and long-term planning provisions.

Second, third and fourth, the Guilford plaintiffs allege that improper classification and placement of inmates, failure to properly segregate known assaultive inmates and failure to separate inmates from those who pose a threat to their safety lead to inmate-on-inmate violence. In the 1991 Harris consent decree, the defendants agreed to "conduct expeditiously the orderly prison planning process" set forth in an Appendix to the decree. See Harris 1991 Consent Decree at 3. The Prison Planning Process requires the defendants to:

Design[*17] a comprehensive inmate classification plan. Elements of the plan shall include proper classification categories and the custodial, service, and housing needs of inmates in each category. This plan shall include procedures for periodic classification review and reclassification of inmates when warranted. . . .

Develop a housing unit assignment plan that assures that persons shall be housed, within seventy-two (72) hours after admission into the Philadelphia Prison System and thereafter, in accordance with the provisions of the inmate classification plan. . . .

Develop physical and operational standards for the operation of their facilities. Defendants shall then apply these standards when making the evaluations and construction plans . . . . Such standards shall comply with constitutional standards and requirements for the incarceration of sentenced prisoners and pretrial detainees, where applicable, and shall comply with correctional industry standards.

Id. App. A at 3-5. In October, 1992, the court approved a classification plan presented by the Harris defendants.

Fifth, the Guilford plaintiffs allege the defendants fail to provide sufficient services[*18] and other programs to inmates in the prisons; this claim is also addressed in Harris. The Prison Planning Process is a comprehensive process designed to make all aspects of prison operation comply with constitutional mandates. Among the specific requirements, defendants are required to "develop drug, alcohol and mental health treatment facilities" with sufficient beds for inmates who are required to participate in such programs as a condition of release. Id. App. A at 4.

Sixth and Seventh, the Guilford plaintiffs allege the defendants: understaff the prison system with correctional officers and improperly deploy officers; and fail to train, supervise and discipline officers when then fail to protect inmates. The Prison Planning Process in Harris requires the defendants to develop an Operational Management Plan addressing "the management structures, staffing . . . and training necessary to open and operate the required facilities" and to "develop a training plan, including a schedule for all staff, to operate current and proposed facilities . . . ." Id. App. A at 8-9.

Eighth and finally, the Guilford plaintiffs allege defendants fail properly to secure the prisons. [*19] The physical and operational standards discussed supra and the training and management requirements in Harris address this claim.

Beehler v. Jeffes, 664 F. Supp. 931 (M.D. Pa. 1986), cited by plaintiffs, is distinguishable because all of the claims in Guilford have been addressed in Harris. In Beehler, the court held that a consent decree in a prior action alleging unconstitutional prison conditions precluded some but not all of the claims in a subsequent class action lawsuit. The first suit alleged unconstitutional: denial of items necessary for personal hygiene, placement in segregation, transfer, censorship of mail, restriction on available reading material, lack of adequate law libraries, failure to supply proper diet and provide religious-necessitated foods, inadequate clothing, the use of strip searches, cell searches, limitations on visitors and inadequacy of prison personnel. The court held that allegations in the second action by members of the class in the first action, of physical safety hazards, lack of privacy and use of unreliable urine tests were not precluded but that allegations of inadequate medical treatment and legal facilities were. Some[*20] new claims were presented in Beehler, but Guilford presents only claims that were previously addressed in Harris or could have been.

This action resembles Tetzlaff v. Swinney, 678 F. Supp. 812 (D. Nev. 1987), more than Beehler. Tetzlaff precluded an inmate's claim for injunctive relief from excessive confinement without recreation and inadequate access to legal materials, issues explicitly dealt with by a prior class action consent decree.

Plaintiffs acknowledge that some of their claims were raised in Harris, but contend these claims were not raised in connection with the specific issue of inmate-on-inmate violence: "claims regarding lack of separation of violent inmates, proper training and discipline of correctional officers, security of the facilities and lack of programs for inmates as causative factors of inmate violence were not

raised in Harris." Plaintiffs' Memo at 8 (emphasis added). [HN7] The court is not free to take such a narrow view of claim preclusion but is required to take a "broad view of what constitutes identity of causes of action" and apply claim preclusion to require "that a plaintiff present in one suit all the claims for relief[*21] that he may have arising out of the same transaction or occurrence." *United States v. Athlone Industries, 746 F.2d 977, 984 (3d Cir. 1984)* (quotation omitted).

(b) Whether the Theory of Recovery is the Same

The theories of recovery in Guilford and Harris are identical. Both actions allege the unconstitutional conditions of confinement in the Philadelphia Prison System deprive inmates of their *Eighth* and *Fourteenth Amendment* rights.

(c) Whether the Witnesses and Documents Necessary at Trial are the Same

The witnesses who could testify to classwide equitable remedies for inmate-on-inmate violence are familiar faces to this court from the Harris case. After ten years of monitoring and enforcing the Harris consent decrees, this court has become familiar with officials of the Philadelphia Prison System and experts in the field of prison planning who would likely be called by both sides. Many documents regarding prison construction, prison planning, training of officers, and other reforms that would address inmate-on-inmate violence have already been produced in Harris.

(d) Whether the Material Facts Alleged are the Same

The material facts alleged in Guilford [*22] that would warrant equitable relief have been raised or could have been raised in Harris. If greater security measures, training, classification procedures or better prison construction are necessary to relieve inmate-on-inmate violence, they should be provided by the Prison Planning Process in Harris. To the extent plaintiffs contend relief is inadequately provided in Harris, they may seek such relief as intervening plaintiffs in Harris.

4. Same Parties

The plaintiff class in Harris consists of "all persons who are, or who have been, inmates of the Philadelphia Prison System, and all persons who shall be inmates of the Philadelphia Prison System in the future during such time as this Court retains jurisdiction of this matter." Order of December 31, 1986 at 4. The Guilford plaintiffs concede the classes in Guilford and Harris "overlap;" every member of any putative class in Guilford is a member of the Harris class.

Plaintiffs nonetheless contend that the Harris Court of Appeals decision holding that Jackson does not preclude Harris because of differences in the plaintiff classes, applies to this situation. The Court of Appeals[*23] stated:

There is no identity of causes of action between the plaintiffs in the 1971 lawsuit and this one. No member of the present class even had a cause of action, either for injunctive relief or for damages, growing out of the conditions in Holmesburg in 1971, for no such class member was subjected to those conditions. A Pennsylvania judgment is not conclusive on matters which by reason of the nature of the case could not have been adjudicated. E.g., *Folmar v. Elliot Coal Mining Co., 441 Pa. 592, 272 A.2d 910 (1971)*; *Salay v. Braun, 427 Pa. 480, 235 A.2d 368 (1967)*; *Maslo Mfg. Corp. v. Proctor Elec. Co., 376 Pa. 553, 103 A.2d 743*, cert. denied, *348 U.S. 822, 99 L. Ed. 648, 75 S. Ct. 36 (1954)*. Indeed it could not have been anticipated in 1971 that the class members now before us would ever arrive in Holmesburg. Moreover there was no time at which notice could have been given to them so as to afford current class members an opportunity to assert the claims now claimed by the Philadelphia defendants to be barred. See *Greenfield v. Villager Indus., 483 F.2d 824, 832 (3d Cir. 1973)*; *Restatement (Second) of Judgments S 42(1)(a)* (1981). No steps were taken in the Common Pleas Court action to impose on any party in that[*24] action the responsibility for discharging fiduciary obligations to unknown potential future inmates. Thus there is no identity of persons or parties between the present class members and the named plaintiffs in the Common Pleas Court action. The Philadelphia defendants have not referred us to any Pennsylvania case suggesting that the Courts of the Commonwealth would apply claim preclusion, on the basis of a 1971 lawsuit, against non-parties, who could not have been notified of its pendency, so as to bar claims for injunctive relief and damages for events occurring over ten years later.

*Harris v. Pernsley, 755 F.2d 338, 342-43 (3d Cir. 1985).*

Harris required application of Pennsylvania claim preclusion law because Jackson was decided by state courts but Guilford requires application of federal claim preclusion law. Federal law is clear with regard to the preclusive effect of a class action: "There is of course no dispute that [HN8] under elementary principles of prior adjudication a judgment in a class action is binding on class members in any subsequent litigation." *Cooper v. Federal Reserve Bank, 467 U.S. 867, 874, 81 L. Ed. 2d 718, 104 S. Ct. 2794 (1984)*; see *EEOC v. U.S. Steel Corp., 921[*25] F.2d 489, 494 (3d Cir. 1990)* ("the judgment in an action brought by an adequate class

representative binds the class members."); *Kalodner v. Board of Educ., 558 F. Supp. 1124 (E.D. Pa. 1983).* Under this rule, claims for individual relief may proceed but classwide claims are precluded. See *Cooper, 467 U.S. at 880* ("the judgment is not, however, dispositive of the individual claims"). The members of the putative class in Guilford are all members of the Harris class.

### 5. Adequacy of Representation - Due Process

[HN9] To hold a class action judgment preclusive, due process requires the court to find that the class adequately represented the member's interests. See *Cooper v. Federal Reserve Bank, 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794 (1984); Hansberry v. Lee, 311 U.S. 32, 42-43, 85 L. Ed. 22, 61 S. Ct. 115 (1940); EEOC, 921 F.2d at 494; Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 249 (3d Cir. 1975),* cert. denied, *421 U.S. 1011, 44 L. Ed. 2d 679, 95 S. Ct. 2415 (1975); Kalodner v. Board of Educ., 558 F. Supp. 1124 (E.D. Pa. 1983).*

Adequacy of representation is measured by: (1) the absence of conflict among the class members, and (2) assurance of vigorous prosecution. See *Sosna v. Iowa, 419 U.S. 393, 403, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975);* 1 Newberg[*26] on Class Actions § 3.22.

There is no conflict among the class members. The Harris plaintiffs, as prisoners of the very institutions where the Guilford plaintiffs allege inmate-on-inmate violence creates a climate of "sheer terror," certainly have an interest in reducing such violence and do not have interests adverse to the Guilford plaintiffs.

There also is no doubt that the Harris plaintiffs have adequately represented the class. This factor is often measured by the effectiveness of the named plaintiffs' counsel. See 1 Newberg at § 3.24. The Harris plaintiffs have been expertly represented by outstanding members of the Philadelphia bar. At all stages of the Harris litigation, plaintiffs' counsel have vigorously pressed every issue on behalf of their clients. The successive named plaintiffs have also actively, vigorously and sometimes independently argued for the interests of the class members.

### 6. Intervening Changes

[HN10] Even if the formal requisites of claim preclusion are met, "where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive." *Commissioner v. Sunnen, 333 U.S. [*27] 591, 600, 92 L. Ed. 898, 68 S. Ct. 715 (1948).* Plaintiffs argue that recently there has been a significant increase in inmate-on-inmate violence

in the Philadelphia prisons. But the Philadelphia prisons have been dangerous throughout the Jackson and Harris actions; Harris addresses this issue. If there have been substantial changes, it may be presented in a motion to modify the judgment in Harris . See *Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 391, 378, 116 L. Ed. 2d 867, 112 S. Ct. 748 (1992).* With the court's continuing enforcement of the consent decrees, it is not inappropriate to accord preclusive effect to Harris.

Harris precludes classwide injunctive claims in Guilford . This does not mean that the Guilford plaintiffs are without recourse. Even if the Harris representation is adequate, it may be appropriate to send notice to others to come in as additional class representatives. 2 Newberg § 7.24. [HN11] "Under *Rule 23*, the court may create subclasses, limit the class scope . . . [or] invite interventions to bolster or substitute for class representation." 1 Newberg § 3.42. The Guilford plaintiffs may seek leave to enter an appearance through their own counsel and file appropriate motions[*28] in Harris. See 3 Newberg § 16.13 ("The entry of appearance in *Rule 23(b)(1)* and *(b)(2)* class actions, while *Rule 23* does not provide for it expressly, may be appropriate, though subject to the discretion of the court.").

### B. Jackson

The City argues that Jackson also precludes Guilford . This argument was directly rejected in *Harris v. Pernsley, 755 F.2d 338, 342-43 (3d Cir. 1985)* and may not be addressed further.

### III. Deferring Consideration in Light of Harris

[HN12] A federal court should avoid duplicative litigation. See *Remington Rand Corp. v. Business Systems, 830 F.2d 1274 (3d Cir. 1987); Complaint of Bankers Trust Co. v. Chatterjee, 636 F.2d 37 (1980).* In Bankers Trust, the court reversed a district court's decision to defer consideration of a tort suit related to an admiralty suit before another judge in the same district. The admiralty suit sought to reopen an allegedly fraudulent settlement agreement and the tort suit sought malpractice damages against the lawyers who had participated in the alleged fraud. The Court of Appeals stated that deference is sometimes appropriate to prevent duplicative litigation:

We are guided in[*29] our consideration of this issue by the Supreme Court's recognition that " [HN13] as between federal district courts . . . the general principle is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States, 424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976) .* In an appropriate

case, therefore, a district court may properly consider the "conservation of judicial resources and comprehensive disposition of litigation," see *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952)*, quoted in *Colorado River Water Conservation District, 424 U.S. at 817*, and attempt to avoid duplicating proceedings already pending in a federal district court. It is important, however, that only truly duplicative proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate.

*Bankers Trust, 636 F.2d at 40.* After examining the two causes of action, the court held that differences between the parties, the requested relief, the legal theories, the evidence and the type of trial (jury or bench), precluded deference.

In Remington, the plaintiff prevailed in a trade secret action against a foreign company and the district[*30] court imposed a constructive trust over defendant's assets because the plaintiff could not obtain injunctive relief against non-party foreign banks holding fiduciary title to some of defendant's assets. The plaintiff, having filed another action, appealed the denial of injunctive relief against the foreign banks in the original action. The Court of Appeals upheld the district court's order without reaching the merits, because there was another action pending.

The doctrine of those cases where there was no final judgment is similar to claim preclusion. The same factors are analyzed to determine the similarity of actions. If claim preclusion did not apply, this court in the exercise of its discretion would decline to duplicate Harris by separately entertaining the classwide claims for injunctive relief in Guilford .

IV. Abstention

The defendants make the same abstention argument based on Jackson, that was made in Harris. The Court of Appeals' decision in *Harris v. Pernsley, 755 F.2d 338 (3d Cir. 1985)*, rejected this argument. The defendants contend that there are two differences between abstention law in 1985 and the present that require a different outcome.

[*31] First, they argue that abstention based on *Younger v. Harris, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971)*, is no longer limited to state criminal prosecutions and civil proceedings by the state in aid of its criminal law. This is immaterial because Younger abstention only applies where the federal plaintiff seeks to enjoin state proceedings. See *Marks v. Stinson, 19 F.3d 873, 882 (3d Cir. 1994)*. The Guilford plaintiffs do

not seek to enjoin the Jackson court. Parallel proceedings are not prohibited by Younger. See id.

Second, the City argues that section 20409 of the 1994 Crime Bill, *18 U.S.C. § 3626*, has the same effect as the McCarren Amendment, in which Congress consented to suit against the United States in state courts when the U.S. was asserting claims for water rights under state law. In *Colorado River Water Conservation District v. United States, 424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976)*, the Court held that deference to parallel state proceedings was appropriate in light of the McCarren Amendment. Section 20409 of the Crime Bill, reprinted in the court's opinion released today in Harris, does not consent to suit against the United States in state court and does not require abstention. [*32]

The holding in Harris v. Pernsley that Jackson does not require federal court abstention must be followed.

V. Relief

It remains for the court to decide which of the alternative forms of requested relief to grant. Defendants requested dismissal of plaintiffs' injunctive claims or, in the alternative, a stay of all proceedings in the action. In an opinion filed today in Harris, the court grants the Harris defendants a hearing on the defendants' motions under *Federal Rule of Civil Procedure 60(b)*. Provisions of the Harris consent decrees could be altered or stayed in the future; therefore, the court will stay, rather than dismiss, the injunctive claims in Guilford for classwide relief. Plaintiffs' claims for damages and/or injunctive relief specific to the individual claims of the named plaintiffs will not be stayed. See *Garris v. Gianetti, No. 92-2204, Order of October 12, 1994 (E.D. Pa.)* (limiting claims of Philadelphia prisoners to damages claims and injunctive claims specific to the individual named plaintiffs), modified by *Garris v. Gianetti, 160 F.R.D. 61 (E.D. Pa. 1995)* (denying class certification and limiting claims to damages claims). [*33] An appropriate order follows.

ORDER

AND NOW, this 30th day of August, 1995, upon consideration of defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief or, in the Alternative, to Stay all Proceedings in the Case, plaintiffs' Memorandum of Law in Response to the motion, and defendants' Reply, it is ORDERED that:

1. Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief or, in the Alternative, to Stay all Proceedings in the Case is GRANTED IN PART. Plaintiffs' claims for classwide injunctive relief shall be

STAYED but not dismissed. Plaintiffs' individual claims for damages are neither stayed nor dismissed.

2. Defendants shall file an answer on or before September 28, 1995; a *Federal Rule of Civil Procedure*

*16* status conference will be held on October 13, 1995 at 9:30 am in Courtroom 10A. All discovery, other than self-executing discovery under the Civil Justice Expense and Delay Reduction Plan, is stayed prior thereto.

Norma L Shapiro, J.