# ATTACHMENT

# DECLARATION OF SHAMA CHAIKEN

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Acting Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Acting Senior Assistant Attorney General
5  LISA A. TILLMAN, State Bar No. 126424
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 327-7872
8   Fax: (916) 324-5205
    Email: Lisa.Tillman@doj.ca.gov
9
   Attorneys for Defendants
10

11
12                 IN THE UNITED STATES DISTRICT COURT
13                FOR THE EASTERN DISTRICT OF CALIFORNIA

14
15 | RALPH COLEMAN, et al.,                    | 2:90-cv-00520 LKK JFM P
16 |                         Plaintiffs,        | DECLARATION OF SHAMA
17 |    v.                                      | CHAIKEN IN SUPPORT OF
   |                                            | DEFENDANTS' OPPOSITION
   | ARNOLD SCHWARZENEGGER, et al.,             | TO PLAINTIFFS' MOTION
18 |                                            | FOR INJUNCTIVE RELIEF
   |                         Defendants.        |
19 |                                            | Hearing:   July 25, 2008
   |                                            | Time:      10:00 a.m.
20 |                                            | Courtroom: Courtroom 4
   |                                            | Judge:     The Honorable
21 |                                            |            Lawrence K. Karlton

22    I, Shama Chaiken, declare:

23    1.    I am employed by the California Department of Corrections and Rehabilitation

24 (CDCR). I am the Chief Psychologist for Headquarters Policy and Program Development. I am

25 licensed by the State of California as a psychologist.

26    2.    I have personal knowledge of the facts stated in this declaration and could testify to

27 those facts competently.

28    3.    For the past two years, I have been responsible for finalizing the set of mental health

Dec. Chaiken, Oppo. Injunctive Relief

1

care policies and procedures known as the Mental Health Services Delivery (MHSDS) Program Guide. The MHSDS Program Guide addresses the care of patients from the time of their entry into a CDCR adult prison reception center. The MHSDS Program Guide was approved by this Court in March 2006. I am now responsible for preparing the 2008 update to the MHSDS Program Guide. I attend ongoing negotiations with Plaintiffs' counsel and Special Master Lopes on this annual update.

4. I understand the generic term "mentally ill" is used by some attorneys to describe those parolees in need of inpatient mental health care. That term is sometimes used by attorneys to refer to those parolees who are unable to meaningfully participate in a revocation hearing and sometimes used to refer to those patients with *Coleman*-recognized serious mental disorders. The *Coleman*-approved MHSDS Program Guide provides the diagnostic criteria for determining whether an inmate has a serious mental disorder. That criteria does not include the inability to meaningfully participate in a revocation or other hearing.

5. Indeed, *Coleman* clinicians are not required to evaluate patients for their competency to participate in a hearing nor to provide care directed toward enabling such care.

6. The MHSDS Program Guide requires that individuals newly committed to CDCR adult prisons, including parolees, undergo mental health screenings upon their intake at reception centers. On the initial day, the policy requires that parolees receive a 'bus screening' for medical and mental health issues. The policy further requires that within seven calendar days of arrival at the reception center, all new commitments and parole violators shall receive a screening for possible mental health needs. The screening procedure includes individual interviews by a psychologist or Psychiatric Social Worker (PSW) using the standardized Mental Health Screening questionnaire. Those who refuse to participate in the mental health screening interview are required to be referred for a psychological evaluation to determine if they have a mental disorder. Individuals who are unable to participate in the screening interview due to possible acute psychiatric distress are immediately referred for an emergency psychiatric evaluation and may be admitted to an inpatient Mental Health Crisis Bed. Under the *Coleman* guidelines, a patient may remain in a mental health crisis bed for ten days.

Dec. Chaiken, Oppo. Injunctive Relief

2

7. In sum, a parole violator may be found, as early as his initial day and often no later than the seventh day at reception center, to meet the criteria for placement in the mental health services delivery system and be placed in one of three available levels of care, as appropriate (Correctional Clinical Case Management Services, Enhanced Outpatient Program, or Mental Health Crisis Bed). The timeframes for identification of mental health needs and the timelines for transfer have all been negotiated with parties in the Coleman case and approved within the bounds of the MHSDS Revised Program Guide.

8. I am familiar with the Defendants' plan to provide due process hearings and mental health care to *Valdivia* parolees, submitted on June 9, 2008. Under this plan, a parole violator must be given a probable cause hearing within 13 business days and a revocation hearing within 35 days following imposition of the parole hold.

9. Thus, a parole violator may, if qualified, be receiving *Coleman*-based care (in a Mental Health Crisis Bed or other level of care) within CDCR in the days before the good cause hearing. The parole violator can be revoked as early as the probable cause hearing, and so available for referral and placement in a DMH inpatient program, if necessary, within 13 business days of placement of the hold.

10. Any expedited or universally prioritized treatment of parole violators before new commitments or other CDCR inmate-patients would not serve Defendants' ethical and professional interest in providing care on an acuity basis.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Sacramento, California on July 8, 2008

By: *Shama Chaiken*
Shama Chaiken

decchaiken.inj.wpd

Dec. Chaiken, Oppo. Injunctive Relief

3