# ATTACHMENT

# DECLARATION OF CYNTHIA A. RADAVSKY

EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Acting Senior Assistant Attorney General
ROCHELLE C. EAST
Acting Senior Assistant Attorney General
LISA A. TILLMAN, State Bar No. 126424
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 327-7872
  Fax: (916) 324-5205
  Email: Lisa.Tillman@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                    Plaintiffs,<br><br><br>    v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>                    Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DECLARATION OF CYNTHIA A. RADAVSKY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**<br><br>Hearing:  July 25, 2008<br>Time:      10:00 a.m.<br>Courtroom: Courtroom 4<br>Judge:    The Honorable<br>           Lawrence K. Karlton |

    I, Cynthia A. Radavsky, declare:

    1. I am employed in the position of Deputy Director of Long-Term Care Services with the Department of Mental Health (DMH) of the Health and Human Services Agency. I have been employed by the Department of Mental Health since October 1995 and have held the following positions: Program Director at Napa State Hospital from 1995 to 1998, Assistant Deputy Director of Long Term Care Services from 1998 to 2006, and Deputy Director of Long Term Care Services from 2006 to present.

Dec. Radavsky, Oppo. Injunctive Relief

1    2. I have personal knowledge of the facts stated in this declaration and if called to testify

2    upon those facts would do so competently.

3    3. In my position with DMH, I am familiar with the missions, policies, staffing, and

4    operations of each of the state hospitals. I am responsible for overseeing the inpatient care

5    provided to CDCR inmate-patients at Atascadero State Hospital, Coalinga State Hospital, and

6    Patton State Hospital. I am also familiar with the missions, policies, staffing and operations of

7    DMH programs within California Department of Correction and Rehabilitation (CDCR)

8    facilities, such as Vacaville Psychiatric Program at California Medical Facility and Salinas

9    Valley Psychiatric Program at Salinas Valley State Prison.

10    4. I am responsible for ensuring DMH provides appropriate responses to and complies with

11    those *Coleman* court orders applicable to DMH. I worked with a multi-agency task force in

12    preparing and developing Defendants' August 2007 mental health bed plan. I also participated in

13    the development of Defendants' Interim Mental Health Bed Plan, Defendants Long-Range

14    Mental Health Bed Plan of October 2006, and Amended Long-Range Mental Health Plan of

15    December 2006. I have also worked with CDCR health care staff and the *Coleman* Special

16    Master's staff on the implementation and development of those portions of the *Coleman* Revised

17    Program Guide regarding the referral and transfer of CDCR inmates, under Penal Code 2684, to

18    DMH for inpatient mental health care. Each of these referenced documents have been filed with

19    the *Coleman* court and provided to counsel.

20    5. I oversee the preparation and implementation of the operating interagency agreements

21    and memoranda of understanding between DMH and CDCR to provide acute and intermediate

22    care inpatient beds to CDCR inmates. Those interagency documents and memoranda of

23    understanding have been submitted to Special Master Lopes and Plaintiffs' counsel for review. I

24    oversee DMH's implementation of those interagency agreements. I am apprized of the status of

25    referrals, transfers, care and discharge of CDCR patients within acute and intermediate programs

26    operated by DMH. I review and approve the monthly reports provided to the *Coleman* Special

27    Master on the staffing and census of the inpatient programs providing care to CDCR inmates.

28    6. I am also responsible for DMH's responses to other litigation matters, ranging from

Dec. Radavsky, Oppo. Injunctive Relief

2

1    habeas petitions filed by patients to the action brought by the United States Department of Justice

2    against DMH under the Civil Rights of Institutionalized Persons Act (known as the CRIPA case).

3    I am familiar with the CRIPA consent decree between DMH and the federal Department of

4    Justice, filed with this Court on May 9, 2006, and its implementation at state mental health

5    hospitals.  Those hospitals covered by the CRIPA consent decree are, to date, Atascadero State

6    Hospital, Metropolitan State Hospital, Napa State Hospital, and Patton State Hospital.  I have

7    participated in the federal Department of Justice's periodic tours of state mental health hospitals

8    to monitor compliance with the CRIPA consent decree.  I am actively involved in the

9    development and implementation of treatment and staffing policies, procedures and operations to

10    ensure compliance with that consent decree.

11        7. Because the CRIPA consent decree mandates a recovery model of care, DMH has

12    created an interdisciplinary team approach to the diagnosis and treatment of each patient.  Under

13    this recovery model of care, the initial 35-day period of the patient's stay for intermediate care

14    involves intensive diagnostic testing, observation, and evaluation to enable the development of

15    an accurate diagnosis and treatment plan.

16        8. If the patient is unable to stay within DMH beyond this initial 35-day period, the patient

17    will not have the opportunity to fully benefit from the inpatient treatment plan.  Further, the

18    treatment modalities and plans mandated under the CRIPA consent decree will not be met by

19    such as short stay,  and so DMH will not be in compliance with the consent decree.

20        9. DMH provides acute and intermediate care to CDCR inmates with certain serious mental

21    disorders.  The diagnostic criteria applied for referral and admission of a CDCR inmate to DMH

22    are stated in the Revised Program Guide and the memorandum of understanding.  These

23    diagnostic criteria do not include any determination of the patient's competency to participate in

24    a judicial hearing. While DMH does provide care to those persons adjudged incompetent by a

25    local superior court under Penal Code 1370, DMH's limited resources does not permit it to

26    provide such restorative, competency care to CDCR inmates referred under Penal Code section

27    2684 for acute and intermediate mental health care.  Rather, the acute and intermediate care

28    services address stabilizing the patient's mental health condition, and are not directed towards

Dec. Radavsky, Oppo. Injunctive Relief

3

1    enabling the patient's competency for hearing.

2        10. I am familiar with the number of acute and intermediate beds provided to CDCR by

3    DMH as well as the number of CDCR referrals for those beds. At any one time, there are wait

4    lists of CDCR inmates referred for and awaiting placement in certain acute and intermediate care

5    beds. These wait lists are particularly significant for those inmates whose known behaviors (such

6    as attempted escapes, assaults on staff or other inmates) preclude their placement in low-security

7    DMH hospitals. Such inmates are placed on wait lists for care at high-security facilities with

8    inpatient programs operated by DMH, such as Salinas Valley State Prison (Salinas Valley

9    Psychiatric Program) and California Medical Facility, Vacaville (Vacaville Psychiatric Program).

10        11. I believe the best utilization of these inpatient beds involves those patients who can stay

11    beyond the initial 35-day diagnostic and evaluation period. I also believe the best utilization of

12    these inpatient beds occurs upon an acuity-based determination of patient admission, with no

13    regard for the patient's status as a parole violator or new commitment.

14        12. Prior to the June 30, 2008 expiration of the DMH-CDCR memorandum of

15    understanding for the provision of acute care to CDCR inmates, DMH and CDCR updated the

16    memorandum of understanding for implementation in the ensuing fiscal year. The updated

17    memorandum of understanding specifically expressed provide inpatient mental health care, under

18    the *Coleman* Revised Program Guide protocols, to those parolees who have been revoked from

19    parole and who have a minimum 35-day term of confinement. In response to Mr. Hagar's

20    request, implementation of the updated memorandum of understanding will be stayed pending

21    review by the Receiver's staff within the next 90 days.

22        13. I met with Special Master Riveland, Special Master Lopes, and Plaintiffs' counsel to

23    discuss the issue of providing inpatient mental health care at DMH facilities to those parolees

24    awaiting revocation hearings.

25        14. As stated in the May 8, 2008 correspondence to Special Master Riveland, DMH is

26    willing to continue to provide inpatient mental health care, under the *Coleman* Revised Program

27    Guide protocols, to those parolees who have been revoked from parole and who have a minimum

28    35-day term of confinement. This same statement was expressed in the *Valdivia* plan submitted

Dec. Radavsky, Oppo. Injunctive Relief

4

1   on June 10, 2008 to Special Master Riveland and Plaintiffs' counsel

2       15.  Because DMH does not have the ability to determine a patient's date of discharge from

3   CDCR custody, DMH does not release CDCR patients upon the end of their term of

4   confinement.  Rather, DMH returns CDCR patients back to CDCR within 35 days of their final

5   confinement day to enable their participation in the pre-release planning provided by CDCR to

6   prisoners.  DMH does not have any familiarity with the pre-release planning required for state

7   prisoners.  DMH understands that a return within 35 days of the end of the confinement term is a

8   sufficient time period for such pre-release planning to occur.

9       16.  I understand Defendants are amenable to this Court finding parolees pending revocation

10  may be provided with DMH intermediate and/or acute care at Vacaville Psychiatric Program and

11  Salinas Valley Psychiatric Program, with a waiver of the Lanterman-Petris-Short Act and a

12  waiver of a timely revocation hearing.  Should this Court enter an order for such care, then pre-

13  release planning of these patients at SVPP and VPP could occur within their last 35 days of care.

14      I declare under penalty of perjury the foregoing is true and correct.

15      Executed on _____ 2008, in Sacramento, California

16

17                      CYNTHIA A. RADAVSKY
                        Deputy Director, Long-Term Care Services
18                      Department of Mental Health

19

20  10446248.wpd

21  CF1997CS0003

22

23

24

25

26

27

28

Dec. Radavsky, Oppo. Injunctive Relief

5