EXHIBIT A

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | |
|      Plaintiffs, | No. CIV S-90-0520 LKK JFM P |
|    vs. | **THREE-JUDGE COURT** |
| ARNOLD SCHWARZENEGGER, et al., | |
|      Defendants. | |
| _____/ | |
| MARCIANO PLATA, et al., | |
|      Plaintiffs, | No. C01-1351 TEH |
|    vs. | **THREE-JUDGE COURT** |
| ARNOLD SCHWARZENEGGER, et al., | |
|      Defendants. | ORDER |
| _____/ | |

By order filed July 26, 2007, the Honorable Mary M. Schroeder, Chief Judge of

the United States Court of Appeals for the Ninth Circuit, designated and appointed the

Honorable Stephen Reinhardt, United States Circuit Judge for the Ninth Circuit to sit with the

1

1    Honorable Lawrence K. Karlton, United States District Judge for the Eastern District of

2    California, and the Honorable Thelton E. Henderson, United States District Judge for the

3    Northern District of California, as a three-judge district court pursuant to 28 U.S.C. § 2284 and

4    18 U.S.C. § 3626(a)(3).

5             In accordance with that order, the above-captioned actions are consolidated for

6    the limited purpose of proceedings before the three-judge court.  The three-judge court shall sit

7    as a combined court of the Eastern and Northern Districts of California.  All documents related

8    to proceedings before the three-judge court, and only documents related to proceedings before

9    the three-judge court, shall bear the heading and captions as set forth on page one of this order.

10   All other documents to be filed in either the Coleman case or the Plata case which are unrelated

11   to proceedings before the three-judge court shall bear the heading and caption of the individual

12   case only and shall be filed only in the appropriate case.

13            All documents related to proceedings before the three-judge court shall be filed in

14   both the Coleman case and the Plata case.  In addition, a hard copy of all documents so filed

15   shall be sent by overnight mail to the chambers of each judge assigned to the three-judge court at

16   the following addresses:

17            Honorable Stephen Reinhardt
              United States Courthouse
18            312 North Spring Street, Suite 1747
              Los Angeles, CA 90012
19
              Honorable Lawrence K. Karlton
20            Robert T. Matsui United States Courthouse
              501 I Street
21            Sacramento, CA 95814

22            Honorable Thelton E. Henderson
              United States District Court
23            450 Golden Gate Avenue
              San Francisco, CA 94102
24

25            Within fifteen calendar days from the date of this order, the parties shall file and

26   serve status reports setting forth their respective views on what proceedings are appropriate to

2

1    the resolution of the issues before the three-judge court. In addition to any other matters, the

2    parties shall address:

3              1. Whether a period of discovery is appropriate or necessary and, if so, the

4    scheduling thereof;

5              2. Anticipated motions and the scheduling thereof;

6              3. The need for an evidentiary hearing and the scheduling thereof;

7              4. The feasibility of settlement discussions, including but not limited to reference

8    of this matter to a court-appointed mediator; and

9              5. Any other matters that may add to the just and expeditious disposition of this

10   matter.

11             The status reports will be reviewed by the undersigned and it is anticipated that

12   this matter will be set for a hearing regarding the conduct of future proceedings shortly

13   thereafter.

14             **IT IS SO ORDERED.**

15   DATED:  07/31/07

16

17                                   THELTON E. HENDERSON
                                     UNITED STATES DISTRICT JUDGE
18                                   NORTHERN DISTRICT OF CALIFORNIA

19   DATED:  07/31/07

20

21                                   LAWRENCE K. KARLTON
                                     SENIOR JUDGE
22                                   UNITED STATES DISTRICT COURT
                                     EASTERN DISTRICT OF CALIFORNIA
23   DATED:  07/31/07

24

25                                          /s/
                                     STEPHEN REINHARDT
26                                   UNITED STATES CIRCUIT JUDGE

                                          3

EXHIBIT B

PRISON LAW OFFICE
DONALD SPECTER Bar No.: 83925
STEVEN FAMA Bar No.: 99641
E. IVAN TRUJILLO Bar No.: 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE Bar No.: 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN Bar No.: 096891
JANE E. KAHN Bar No.: 112239
AMY WHELAN Bar No.: 215675
LORI RIFKIN Bar No.: 244081
SARAH M. LAUBACH Bar No.: 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF Bar No.: 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER Bar No.: 158255
LEWIS BOSSING Bar No.: 227402
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | No.: Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |
| MARCIANO PLATA ,et al., | No. C01-1351 TEH |
| Plaintiffs, | **JOINT STATEMENT REGARDING** |
| vs. | **DISCOVERY DISPUTE** |
| ARNOLD SCHWARZENEGGER, et al., | Date: October 25, 2007[1] |
| vs. | Time: 11:00 a.m. |
| Defendants. | Place: Courtroom 26 |
| | Judge: Hon. John F. Moulds, Magistrate Judge |

---

[1] The Court requested that the parties estimate how long they will need for oral argument. If the parties are unable to resolve any issues before the hearing, they believe they will require approximately forty (40) minutes to present arguments.

# **TABLE OF CONTENTS**

**Page**

I.  JOINT STATEMENT REGARDING THE NATURE OF THE CASE AND
    DISCOVERY DISPUTES..................................................................... 1

II.  JOINT STATEMENT REGARDING DETAILS OF THE MEET AND CONFER.................. 3

III.  DISPUTE REGARDING PLAINTIFFS' EXPERT TOURS ...................................... 4

    A.  PLAINTIFFS' POSITION ........................................................... 4

        1.  Plaintiffs' Expert Tours Will Be Rendered Meaningless If Experts and
            Counsel Are Not Permitted to Speak With CDCR Employees During
            The Tours.................................................................. 4

    B.  DEFENDANTS' POSITION ........................................................ 7

        1.  Federal Rule of Civil Procedure 34 Inspections Do Not Permit Plaintiffs
            to Interview CDCR Employees:  Interviews Must be Properly Noticed as
            Depositions. ............................................................. 7

IV.  DISPUTE REGARDING DEFENDANTS' EXPERT TOURS ................................. 10

    A.  PLAINTIFFS' POSITION ......................................................... 10

        1.  Plaintiffs' Counsel Should Be Permitted to Accompany Defendants'
            Experts on Prison Tours ............................................... 10

    B.  DEFENDANTS' POSITION ...................................................... 14

        1.  There Is No Basis For Permitting Plaintiffs' Counsel To Attend Touring
            By Defendants' Experts, When, And If, Such Touring Occurs. ........... 14

V.  DISPUTES REGARDING THE DISCOVERY REQUESTS SERVED BY PLAINTIFF
    ON SEPTEMBER 5, 2007 .............................................................. 14

    A.  DEFENDANTS' POSITION ...................................................... 14

        1.  A Rolling Production is Necessary to Ensure Documents are Produced in
            an Expedient and Efficient Manner................................... 14

    B.  PLAINTIFFS' POSITION ......................................................... 16

        1.  As to Discovery Requests That Are Already Pending, This Court Should
            Order Defendants To Produce Responsive Documents as Soon as
            Possible, But In No Event Later Than November 1, 2007.  The Court
            Should Also Order Defendants to Establish Concrete Deadlines for
            Production Based on a Prioritization of Clearly Defined Topic Areas. ...... 16

        2.  The Scheduling Order Set Forth by the Three-Judge Court Will be
            Seriously Compromised If Defendants Are Not Ordered to Produce
            Responsive Documents On an Expedited Schedule............................ 17

VI.   DISPUTE REGARDING EXPEDITED DISCOVERY RESPONSES MOVING
      FORWARD ..................................................................................................... 19

      A.   PLAINTIFFS' POSITION .......................................................................... 19

      B.   DEFENDANTS' POSITION ........................................................................ 20

           1.   Plaintiffs' Request to Expedite Defendants' Discovery Responses is
                Unwarranted and Harassing. ............................................................. 20

VII.  DISPUTE RELATED TO DEFENDANTS' PROPOSED CLAWBACK PROVISION ........... 20

      A.   DEFENDANTS' POSITION ........................................................................ 20

           1.   Due to the Volume and Expedited Nature of Discovery, Plaintiffs Must
                Agree to a Confidentiality/Claw Back Provision. ............................... 20

      B.   PLAINTIFFS' POSITION .......................................................................... 21

VIII. DISPUTE RELATED TO CHARACTERIZATION OF CERTAIN DISCOVERY AS
      RELEVANT TO PHASE II RATHER THAN PHASE I ............................................ 21

      A.   DEFENDANTS' POSITION ........................................................................ 21

           1.   Defendants' Discovery Requests Relate to the Second Prong of Phase I,
                Not Phase II. ...................................................................................... 21

      B.   PLAINTIFFS' POSITION .......................................................................... 23

           1.   Defendants Misunderstand the Distinction Between Phase I and Phase II
                of the Litigation. ............................................................................... 23

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4    *Baker v. General Motors Corp.,*
        86 F.3d 811 (8th Cir. 1996) ................................................................................. 18

5

     *Belcher v. Bassett Furniture Industries, Inc.,*
6        588 F.2d 904 (4th Cir. 1978) ............................................................................ 9, 10

7    *Congoleum Indus., Inc. v. Armstrong Cork Co.,*
        319 F. Supp. 714 (E.D. Pa. 1970) ........................................................................ 11

8
     *In re Napster, Inc. Copyright Litig.,*
9        462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................ 19

10   *In re Newman,*
        782 F.2d 971 (Fed. Cir. 1986) .............................................................................. 11

11
     *In re Orthopedic Bone Screw Prods. Liability Litig.,*
12       1998 WL 372404 (E.D. Pa. May 29, 1998) ......................................................... 18

13   *Kubota v. Shibuya,*
        999 F.2d 517 (Fed. Cir. 1993) .............................................................................. 11

14
     *Lizotte v. N.Y.C. Health & Hosp. Corp.,*
15       1990 WL 267421 (S.D.N.Y. Mar. 13, 1990) .......................................................... 7

16   *Martin v. Reynolds Metals Corp.,*
        297 F.2d 49 (9th Cir. 1961) .................................................................................... 5

17
     *Morales v. Turman,*
18       59 F.R.D. 157 (E.D. Tex. 1972) ..................................................................... 6, 7, 10

19   *N.Y. State Ass'n for Retarded Children Inc. v. Carey,*
        706 F.2d 956 (2d Cir. 1983) ................................................................................... 7

20
     *Nat'l Dairy Prods. Corp. v. L. D. Schreiber & Co., Inc.,*
21       61 F.R.D. 581 (E.D. Wis. 1973) ........................................................................... 11

22   *S.E.C. v. Graystone Nash, Inc.,*
        25 F.3d 187 (3d Cir. 1994) ................................................................................... 12

23
     *Semitool, Inc., v. Tokyo Electron Am., Inc.,*
24       208 F.R.D. 273 (N.D. Cal. 2002) ......................................................................... 19

25   *United States ex rel. Englund v. L.A. County,*
        235 F.R.D. 675 (E.D. Cal. 2006) ............................................................................ 6

26
     *United States v. Bodwell,*
27       66 F.3d 1000 (9th Cir. 1995) ............................................................................... 12

28

*United States v. Talao,*
    222 F.3d 1133 (9th Cir. 2000) ................................................................. 13

*United States v. Virkutis,*
    1986 WL 11614 (N.D. Ill. Oct. 14, 1986) ....................................... 12, 14

*Wagoner v. Barger,*
    463 F.2d 1377 (C.C.P.A. 1972) ................................................................. 11

*Wirtz v. Rosenthal,*
    388 F.2d 290 (9th Cir. 1962) ................................................................. 19

## STATUTES

18 U.S.C. § 3626(a)(3) ................................................................................ 1

18 U.S.C. §§ 3626(a)(3)(E)(i) and (ii) ................................................... 2, 3, 23

28 U.S.C. § 2284 ......................................................................................... 1

Fed. R. Civ. P. 1 ..................................................................................... 6, 11

Fed. R. Civ. P. 33(b)(3), 34(b), 36(a) ......................................................... 18

Fed. R. Civ. P. 34(a) ................................................................................. 5

## OTHER AUTHORITIES

8A Charles Alan Wright et al.,
    Federal Practice & Procedure
    § 2206 (2007) ......................................................................................... 5

I.    **JOINT STATEMENT REGARDING THE NATURE OF THE CASE AND DISCOVERY DISPUTES**

Plaintiffs are classes of state prisoners with serious medical needs (*Plata v. Schwarzenegger*) and serious mental illness (*Coleman v. Schwarzenegger*) (hereinafter "Plaintiffs"). On November 13, 2006, the Plaintiff classes separately filed motions in the Northern and Eastern Districts of California to convene a three-judge court to limit the prison population in the CDCR, pursuant to 28 U.S.C. § 2284 and 18 U.S.C. § 3626(a)(3). On July 23, 2007, the *Plata* and *Coleman* Courts separately granted Plaintiffs' motions and on July 26, 2007, the Chief Judge of the Ninth Circuit appointed a single three-judge court to consider Plaintiffs' requests in both cases for a prisoner release order, pursuant to 18 U.S.C. § 3626(a)(3). The two cases were consolidated for the limited purpose of proceedings before the three-judge court. 7/31/07 Order at 2:5-12, attached hereto as Exhibit A to Declaration of Michael W. Bien In Support Of Joint Statement Regarding Discovery Dispute ("Bien Decl.").

In its July 31, 2007 Order, the three-judge court ("the Court") ordered the parties to file and serve status reports regarding proceedings before the three-judge court no later than August 15, 2007. 7/31/07 Order at 2-3, attached hereto as Exh. A to Bien Decl. The Court ordered the parties to address a number of questions, including "[w]hether a period of discovery is appropriate or necessary and, if so, the scheduling thereof." *Id.* at 2:25-3:10. The parties filed status conference reports on August 15, 2007. Defendants stated that "Plaintiffs have indicated that they intend to propound written discovery on Defendants and that they anticipate noticing depositions. Plaintiffs have also indicated that they will be disclosing experts and deposing any experts retained by Defendants, and that they would like their experts to tour several CDCR facilities." Defs.' Status Report at 3:24-28, attached hereto as Exh. B to Bien Decl. Defendants noted that they "may propound written discovery on Plaintiffs, may depose several percipient witnesses, and will, following review of their reports, depose Plaintiffs' experts." *Id.* at 4:1-2. Plaintiffs also indicated their intent to take discovery. Pls.' Status Conference Statement at 2:1-11, attached hereto as Exh. C to Bien Decl.

On August 17, 2007, the Court issued an order referring all discovery disputes arising in these proceedings to Magistrate Judge Moulds in the Eastern District of California, and on August 29, 2007, the Court set its initial hearing for September 24, 2007. 8/17/07 Order at 4:3-5 and 8/29/07 Order at

-1-

1    1:25, attached hereto as Exhs. D and E to Bien Decl.  Plaintiffs served their first discovery on

2    Defendants on September 5, 2007, consisting of Plaintiffs' First Requests for Production of Documents

3    to Defendants, attached hereto as Exh. F to Bien Decl.  At the September 24, 2007 hearing, Defendants

4    argued that discovery was not yet open and Plaintiffs' discovery was premature.  Transcript at 115:8-

5    16 attached hereto as Exh. G.  On September 25, 2007, the Court issued an order "to clarify that

6    discovery is open" and ordered that written responses to any previously propounded discovery were

7    due thirty days from the date of the order.  9/25/07 Order at 1:27-2:1, attached hereto as Ex. H to Bien

8    Decl.

9          Both Plaintiffs and Defendants have subsequently propounded additional discovery requests.

10   Defendants served *Coleman* and *Plata* Plaintiffs separately with interrogatories and requests for

11   production that were received on October 4 and October 5, 2007, respectively.  Bien Decl. ¶10.

12   *Coleman* Plaintiffs and *Plata* Plaintiffs separately served Defendants with interrogatories and requests

13   for production on October 17, 2007.  Bien Decl. ¶10.

14         On October 10, 2007, the three-judge court issued an order bifurcating the proceedings before it

15   into two Phases and setting deadlines for Phase I.  10/10/07 Order, attached hereto as Exh. I to Bien

16   Decl.  The order provides for the following schedule:

17         1.   The parties shall disclose their experts and serve expert reports on or before November
                9, 2007;
18         2.   The discovery cut-off for Phase I is December 20, 2007;
           3.   Plaintiffs, CCPOA, and Defendants shall file a joint pretrial statement on or before
19              December 20, 2007;
           4.   The Pretrial conference will be held on January 16, 2008; and
20         5.   The Court trial of Phase I will commence on February 6, 2008, and is anticipated to last
                three days.
21

22   *Id.* at 5:17-6:19.  The order also defines the two Phases of the proceedings before the Court: "In Phase

23   I, the court will determine whether the plaintiffs have established the prerequisites to considering

24   issuance of a prisoner release order that are set forth in 18 U.S.C. §§ 3626(a)(3)(E)(i) and (ii)."  *Id.* at

25   4:8-10.  "The conditions that must be satisfied in Phase I prior to conducting Phase II—proceedings

26   relating to a prisoner release order—are that, '(i) crowding is the primary cause of the violation of a

27   Federal right' [in these cases, the Eighth Amendment rights to adequate medical and mental health

28   care] and '(ii) no other relief [other than a prisoner release order] will remedy the violation of the

1  Federal right.'" *Id.* at 3:11-14 (second alteration in original) (quoting 18 U.S.C. §§ 3626(a)(3)(E)(i),

2  (ii)). The Court limited the participants in Phase I to the plaintiff classes, CCPOA,[2] and the

3  defendants. *Id.* at 4:16-5:15.

4  ## II.    JOINT STATEMENT REGARDING DETAILS OF THE MEET AND CONFER

5  During the week of October 15, 2007, Plaintiffs and Defendants met and conferred via

6  teleconference on October 15 and October 17, as well as exchanging various other communications via

7  email and telephone calls between individual counsel concerning numerous discovery issues, coming

8  to agreement on some, and identifying a number to bring before this Court for resolution. Bien Decl.

9  ¶12.

10  In a phone conference on October 17, 2007, the parties agreed that the remaining discovery

11  disputes would need to be resolved by Magistrate Judge Moulds. Bien Decl. ¶13. Due to the

12  extremely compressed schedule in the case and the fact that some of the outstanding issues related to

13  the prison tours, set to commence in just over a week, the parties agreed to ask Magistrate Judge

14  Moulds for an expedited hearing. Bien Decl. ¶13. On October 18, 2007, the parties filed a stipulated

15  request to shorten the time for hearing the discovery motion from the normal twenty-one (21) days to

16  seven (7). Bien Decl. ¶13. On October 19, 2007 Magistrate Judge Moulds granted the parties' request

17  that the motion be heard on October 25, 2007, with the joint statement to be filed October 22, 2007.

18  Bien Decl. ¶13.

19  The following six disputed issues remain contested by the parties: (1) whether Plaintiffs'

20  experts may speak with CDCR employees during Plaintiffs' prison tours; (2) whether Plaintiffs'

21  counsel can attend Defendants' expert prison tours; (3) the parameters of Defendants' "rolling

22  production" proposal; (4) Plaintiffs' request to shorten the parties' time for discovery responses

23

24  [2]    CCPOA was granted intervention as a matter of right on September 19, 2007. The Court held
that the CCPOA may participate in Phase I because it would be directly affected by orders preliminary

25  to the consideration of prisoner release orders, specifically, Phase I orders involving the internal
operation of the prison system, including hiring and assignment of prison personnel, medical and

26  otherwise, and because CCPOA is uniquely situated to present evidence relevant to the issues before
the court in Phase I. 10/10/07 Order at 5 n.5, attached hereto as Exh. I to Bien Decl. There are also

27  numerous statutory intervenors participating in the litigation, whose direct participation as parties has
been limited to Phase II. *Id.* at 5:1-15.

28

1 | moving forward; (5) whether the parties' will agree to Defendants' proposed clawback provision; and

2 | (6) whether certain disputed discovery requests are relevant to Phase I or Phase II of the litigation.

3 | ### III.    DISPUTE REGARDING PLAINTIFFS' EXPERT TOURS

4 | ### A.    **PLAINTIFFS' POSITION**

5 | #### 1.    **Plaintiffs' Expert Tours Will Be Rendered Meaningless If Experts and Counsel Are Not Permitted to Speak With CDCR Employees During The Tours**

6 |

7 | On October 2, 2007, before the three-judge court issued its scheduling order, Plaintiffs served

8 | their First Request for Inspection to Defendants. Prior to that date, Plaintiffs informally conferred with

9 | Defendants' counsel regarding a process to arrange for a limited number of expert tours. Bien Decl.

10 | ¶15. After the issuance of the October 10, 2007 Scheduling Order, which set the November 9, 2007

11 | deadline for production of expert reports, scheduling for the tours accelerated. Through the subsequent

12 | meet and confer sessions during the week of October 15, 2007, Plaintiffs and Defendants negotiated

13 | dates, locations, and times for Plaintiffs' expert tours, and Plaintiffs served Defendants with a Second

14 | Request for Inspection and an Amended Second Request for Inspection on October 19, 2007 that

15 | reflected the updates in these agreed-upon dates, locations, and times. Bien Decl. ¶15.   At Defendants'

16 | request, *Plaintiffs agreed to conduct all of their expert tours during the week of October 29, 2007.* Bien

17 | Decl. ¶15.

18 | However, on Thursday, October 18, 2007, after both telephonic meet and confer sessions had

19 | been conducted and weeks after Plaintiffs had served their original Request for Inspection, Defendants

20 | informed Plaintiffs for the first time that they will not permit Plaintiffs' counsel or their experts to talk

21 | to any of "their people" during the tours.[3] Bien Decl. ¶16. Defendants raised this objection in a

22 | telephone call with one of Plaintiffs' counsel, and when asked to clarify their position in a subsequent

23 | telephone call, Defendants referred to "the plain language of Rule 34." Bien Decl. ¶16. Plaintiffs

24 |

25 | [3]    Plaintiffs' instructions in the First Request For Inspection specified that the experts would need to confer with medical, mental health, and custody staff during the tours: "During the inspections,

26 | plaintiffs' counsel and plaintiffs' expert will confer with the CDCR staff at the prison, including but not limited to the correctional staff, administrative staff and medical staff, regarding access of the

27 | *Plata* class members to medical care and of the *Coleman* class members to mental health care." Pls.' First Request For Inspection at 3:6-9, attached hereto as Exh. J to Bien Decl.

28 |

1   noted that Defendants have previously permitted Plaintiffs' experts to confer with CDCR employees in

2   the informal manner described in the Request, which does not require anyone to swear to any

3   statement under oath, and provides for the presence of all counsel.[4]  Bien Decl. ¶¶16, 21-22.  Plaintiffs

4   also sent Defendants an email on October 19, 2007 outlining Plaintiffs' legal arguments that Rule 34

5   does not support Defendants' objections, and requested a response by the close of business.  Bien

6   Decl., Exh. L.  Defendants have not responded, nor have they set forth their objection in writing.

7        Defendants' position flies in the face of the purpose and scope of Rule 34, which "authorizes

8   the broadest sweep of access, inspection, examination, testing, copying, and photographing of

9   documents or objects in the possession or control of another party."[5]  8A Charles Alan Wright et al.,

10  Federal Practice & Procedure § 2206 (2007).  The Ninth Circuit has specifically stated that "Rule

11  34. . .is to be liberally construed" and concluded consequently that "[t]he word 'inspection' has a

12  broader meaning then just looking." *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 57 (9th Cir. 1961)

13  (crediting dictionary definition of "'inspect' as 'to examine carefully or critically, investigate and test

14  officially, as to inspect food' and . . . 'inspection' as 'especially, a critical investigation or scrutiny'").

15       A practical reading of the language of Rule 34 in the context of this case illustrates why

16  Defendants' position is incorrect.  Rule 34(a) specifically authorizes entry into the prisons "for the

17  purpose of inspection . . . [of] the property or any designated object or *operation thereon*."  Fed. R.

18  Civ. P. 34(a) (*emphasis added*).  One of the key questions before the three-judge court is how the

19  prisons actually operate.  Among the many issues that the Plaintiffs' experts will review during the

20

---

21  [4]      Plaintiffs define "confer with" as follows:  "to interview, formally or informally, CDCR
22  personnel with whom plaintiffs' experts and plaintiffs' counsel meet and/or encounter during the
    course of the inspection."  Pls.' Amended Second Request for Inspection at 2:21-23, attached hereto as
23  Exh. K to Bien Decl.  Plaintiffs also specify that if a conference occurs in a private setting,
    Defendants' counsel and the Receiver's representative will be present.  *Id.* at 3:24-28.
24
25  [5]      Defendants' position also directly conflicts with that of the Receiver, who has agreed that
    Plaintiffs' experts may speak freely with medical staff during the prison tours so long as the Receivers'
26  representative is present.  Bien Decl. ¶18._  Great inequities will occur if Plaintiffs counsel are
    permitted to reasonably question medical staff (who are under the jurisdiction of the Receiver), but are
27  prohibited from speaking at all to mental health staff (who are under the jurisdiction of CDCR).
    Plaintiff Intervenor CCPOA has also indicated that it does not object to Plaintiffs' experts speaking
28  with its members during the tour.  Adam Decl. ¶ 2.

1  prison tours is how custody, medical and mental health staff respond to medical and mental health

2  emergencies in housing units, on exercise yards, etc. Bien Decl. ¶¶19-22. In order to determine what

3  procedures are actually followed, the experts can either observe the facilities over days, and perhaps

4  weeks, to document various emergencies, or they can briefly question the staff that regularly responds

5  to these emergencies. For example, deposing the nurse responsible for implementing suicide watch

6  procedures in a conference room will take hours compared with having her answer a few short

7  questions in the mental health unit where she works, while she physically points to the cells where

8  suicide watch is performed, the equipment used and the logs where her work is recorded. Bien Decl.

9  ¶¶19-20.

10  In order to obtain the same information necessary for the experts to form their opinions and

11  prepare their reports, numerous depositions would be necessary for each prison, long periods of

12  observation would be necessary on each unit, as Plaintiffs and their experts attempted to locate basic

13  information readily available to Defendants. Bien Decl. ¶¶19-20. There is insufficient time for

14  Plaintiffs' counsel and their experts to go through this needless exercise. Bien Decl. ¶¶19-20. Clearly,

15  Defendants' proposal is an incredibly inefficient waste of time and resources that undermines the

16  Federal Rules of Civil Procedure's fundamental goal of "secur[ing] the just, speedy, and inexpensive

17  determination of every action." Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 1 advisory committee's note

18  (recognizing "the affirmative duty of the court to exercise the authority conferred by these rules to

19  ensure that civil litigation is resolved not only fairly, but also without undue cost or delay"); *United*

20  *States ex rel. Englund v. L.A. County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) (explaining that "the goal

21  of the Rules [is] full and efficient discovery, not evasion and word play").

22  Moreover, Defendants' attempt to restrict Plaintiffs' experts' ability to speak with CDCR

23  employees is not supported by the law. Indeed, in a highly analogous case, a district court concluded

24  that the type of access Defendants seek to restrict here falls squarely within Rule 34's ambit. In

25  *Morales v. Turman*, 59 F.R.D. 157 (E.D. Tex. 1972), Plaintiffs alleged systemic constitutional

26  violations in Texas's juvenile detention facilities. Recognizing there, as here, that "[w]hen important

27  civil rights are in issue in complex litigation of widespread concern, a court must make every effort to

28  enhance the fact-finding process available to counsel for both sides," *id.* at 159, the *Morales* court

1   found that Rule 34 authorized Plaintiffs' experts to not only speak informally with juvenile inmates

2   and staff on an unrestricted basis, but to actually live in two detention centers for a period of thirty

3   days in order to observe and document all aspects of the center's operations "for the purpose of

4   determining the quality of life under the[] particular conditions of confinement," *id.* at 158-60.

5   Moreover, in other cases similar to the one at bar, courts have repeatedly held that such communication

6   is proper even outside the presence of Defendants' attorneys. *See, e.g., N.Y. State Ass'n for Retarded*

7   *Children Inc. v. Carey*, 706 F.2d 956, 960-61 (2d Cir. 1983) (upholding district court order permitting

8   Plaintiffs' counsel and experts to interview institutional Defendants' employees during tours while

9   defense counsel was not present); *Lizotte v. N.Y.C. Health & Hosps. Corp.*, 1990 WL 267421, *5

10  (S.D.N.Y. Mar. 13, 1990) (holding that "plaintiffs' counsel and expert may communicate with any

11  staff member of the HHC psychiatric emergency rooms if that employee is willing or desires to talk to

12  them," and that defense counsel need not be present for such interviews).

13         As the *Morales* court recognized, in cases raising serious constitutional questions of great

14  public concern, "[t]he trial court's discretion must be guided by considerations of policy and of

15  necessity, propriety and expediency in the particular case at hand." 59 F.R.D. at 159 (internal

16  quotation marks omitted). Given the caselaw supporting broad access to institutional employees in

17  similar cases, Plaintiffs' modest request that their experts be permitted short, informal conversations

18  with CDCR employees in the presence of Defendants' attorneys during the prison tours is the most

19  expeditious method of ensuring that the expert reports are comprehensive and is amply supported by

20  the caselaw.

21                    **B.      DEFENDANTS' POSITION**

22                         **1.      Federal Rule of Civil Procedure 34 Inspections Do Not Permit
                                     Plaintiffs to Interview CDCR Employees: Interviews Must be**

23                                 **Properly Noticed as Depositions.**

24         On October 2, 2007, Defendants were served with Plaintiffs' First Request for Inspection in

25  which Plaintiffs noticed expert tours to occur at California Institute for Men at Chino (Chino), Avenal

26  State Prison (Avenal), Valley State Prison for Women (Valley), and San Quentin State Prison (San

27  Quentin). These tours were scheduled to occur on October 29-31, 2007. In an effort to accommodate

28

1   Plaintiffs' request in under thirty days' notice, Defendants began working with Plaintiffs to obtain gate

2   clearances for Plaintiffs' experts and attorneys who would be attending the tours.

3          On October 12, 2007, Defendants were informed via email by Plaintiffs' counsel, Alison

4   Hardy, that they were adding a fifth prison to their expert touring request: High Desert State Prison

5   (High Desert). Although Defendants initially objected to this request, following a meet and confer

6   with Plaintiffs' counsel, Defendants agreed that Plaintiffs could tour High Desert so long as all expert

7   touring occurred the week of October 29, 2007.

8          In the course of an additional meet and confer conversation on October 18, 2007, Defense

9   counsel iterated to Plaintiffs' counsel that Plaintiffs' counsel and Plaintiffs' experts would not be

10  permitted to speak with any staff during these tours, including medical personnel, inmates, and high

11  ranking CDCR personnel such as Wardens and Chief Deputy Wardens.

12         The following day, on October 19, 2007, Plaintiffs served Defendants with Plaintiffs' Amended

13  Second Request for Inspection (Amended Request) in which Plaintiffs added an additional six prisons

14  to their initial expert touring request. Contrary to Plaintiffs' assertion above that the Amended Request

15  reflected agreed-upon dates, locations, and times, Defendants were unaware of the six additional

16  institutions that were added to Plaintiffs' Amended Request.

17         Plaintiffs' Amended Request also included in the instructions that "plaintiffs' experts request

18  an interview with the prison's Warden, Associate Warden for Health Care[,] and the prison's highest

19  ranking medical and mental health officers . . . ." (Pls.' Am. Second Req. for Inspection (Am. Req.) at

20  3:7-9.) Plaintiffs requested that these interviews occur "preferably at the beginning of the inspection"

21  and advised that they will take approximately thirty to sixty minutes. (Am. Req. at 3:11-12.) In

22  addition to these formal hour-long interviews, Plaintiffs also request that they be permitted to casually

23  "confer with the CDCR staff at the prison, including but not limited to the correctional staff,

24  administrative staff, and medical and mental health staff," and that they will also confer with class

25  members. Plaintiffs defined "confer with" to mean "interview, formally or informally." (Am. Req. at

26  2:21.) Because a request for inspection under Federal Rule of Civil Procedure 34 does not properly

27  confer upon the inspecting party the right to interview anyone with whom they come in contact,

28  whether formally or informally, Plaintiffs may not confer with CDCR personnel.

1    Unlike the currently ongoing remedial tours at various institutions for the *Plata* and *Coleman*

2  cases, inspections in this proceeding are of an entirely different character. The Federal Rules of Civil

3  Procedure govern the inspections sought by Plaintiffs in this proceeding, whereas the remedial tours

4  were created by stipulation reached by both parties in both cases. Thus, Plaintiffs' comparison of their

5  instant inspection request to previous informal tours is irrelevant and incongruent.

6    Federal Rule of Civil Procedure 34 permits "entry upon designated land or other property in the

7  possession or control of the party upon whom the request is served for the purpose of *inspection* and

8  *measuring, surveying, photographing, testing*, or *sampling* the property or any designated object or

9  operation thereon, within the scope of Rule 26(b)." (emphasis added). Nowhere in the rule is there

10  mention of interviewing or conversing with anyone present on the designated land. Only Rule 30 of

11  the Federal Rules of Civil Procedure permits a party to take the testimony of another person. One-

12  sided questioning by plaintiffs' counsel and their experts may not properly occur during a Rule 34

13  inspection because "the safeguards of true depositions will be absent." *Belcher v. Bassett Furniture*

14  *Industries, Inc.*, 588 F.2d 904, 909 (4th Cir. 1978).

15    Similar to this instant proceeding, in *Belcher*, the plaintiff's expert requested the right to "roam

16  through the plants, stop when he chooses, and to make such inquiries as he deems appropriate of any

17  supervisors or employees in the plant." *Id.* at 906. The Fourth Circuit held plaintiff's request

18  improper, noting that "any opinions gathered by the expert through such one-sided questioning . . .

19  would consist in large part of unsubstantiated hearsay." *Id.* at 909. Despite the fact that counsel for

20  defendant would be present, the Court nonetheless determined that there were insufficient safeguards

21  present and that the requirements of the Federal Rules for deposing witnesses could not "be so easily

22  circumvented." *Id.* at 910. The Court further noted that "although the Federal Rules do not prescribe

23  an order of preference for discovery techniques, one method cannot arbitrarily be demanded over

24  another simply because it is less burdensome to the moving party." *Id.* at 910. And while Plaintiffs

25  believe that depositions would be a "needless exercise," the Court in *Belcher* cautioned against

26  disregarding the safeguards of a deposition in favor of an option less burdensome to the moving party.

27  *See id.*

28

-9-

1    Further, the *Belcher* Court acknowledged the decision in *Morales v. Turman*, 59 F.R.D. 157

2  (E.D. Tex. 1972), which Plaintiffs rely upon, but noted that *Morales* involved a "unique order" and

3  that *Morales* provided "no basis for a similar order here." *Belcher*, 588 F.2d at 910. *Morales* is

4  therefore not applicable to the instant proceeding.

5    Additionally, the entire proceeding before the three-judge panel is in regard to prison

6  overcrowding – not, as Plaintiffs assert, on "how the prisons actually operate." The three-judge court

7  was empaneled to determine whether overcrowding is the primary cause of the Plaintiff class

8  members' inability to receive adequate medical and mental health care, and that no other relief aside

9  from a prisoner release order will remedy those constitutional violations. The daily operations of ten

10 randomly selected institutions has no bearing on the impact of overcrowding to the provision of

11 medical and mental health care. Further, Plaintiffs are acutely aware of "how the prisons actually

12 operate" as they engage in ongoing tours at all CDCR institutions on a regular basis as part of

13 stipulated injunctions reached in both class actions.

14    Lastly, while Plaintiffs assert above that Defendants have not set forth their objections to

15 Plaintiffs' Amended Request in writing, Plaintiffs fail to note that Defendants were not afforded the

16 full thirty days' notice to do so, as is provided by Federal Rule of Civil Procedure 34. Defendants

17 intend to file objections to Plaintiffs' Amended Request in the next couple of days, however, as

18 Plaintiffs scheduled the inspections to occur with less than thirty days' notice, Defendants' objections

19 to Plaintiffs' Amended Request are not due until November 19, 2007.

20    **IV.    DISPUTE REGARDING DEFENDANTS' EXPERT TOURS**

21    **A.    PLAINTIFFS' POSITION**

22        **1.    Plaintiffs' Counsel Should Be Permitted to Accompany Defendants'
                   Experts on Prison Tours**

23

24    On October 15, 2007, during the first telephonic meet and confer, Plaintiffs' counsel requested

25 to be present during Defendants' expert tours, if any. Bien Decl. ¶23. Defendants indicated that they

26 would consider this request, and have subsequently denied it. Bien Decl. ¶23. Plaintiffs therefore

27 request an order mandating that Defendants provide notice of their experts' tours and permit Plaintiffs'

28

-10-

1  counsel to observe those tours.  Such an order will promote efficiency and fairness, and will ensure

2  that Plaintiffs' clients—a particularly vulnerable group—are protected.  Bien Decl. ¶24.

3         Primarily, permitting Plaintiffs' counsel to observe the tours will save the parties time and

4  money, and will reduce the amount of time needed to establish the basic facts about each expert's tour

5  at their deposition and during trial.  Bien Decl. ¶ 20.  This is particularly important given the tight

6  deadlines established by the Court.  If Plaintiffs' counsel can observe, for instance, which units the

7  expert enters, whether and to what extent she talks with prison staff or examines log books, how long

8  she spends at each prison and in each unit, it helps to establish a common factual baseline.  Bien Decl.

9  ¶20.  Attendance by both counsel at expert examinations will reduce the likelihood of factual disputes

10  about what did and did not happen on a tour, thereby allowing the parties (and this Court) to focus on

11  substantive issues such as the experts' opinion and the strengths and weaknesses of his or her

12  methodologies.  Bien Decl. ¶20.  In that manner, it furthers the Rules' essential goal of "secur[ing] the

13  just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.

14         For precisely these reasons, the practice of permitting both sides to observe an expert

15  examination or investigation is not uncommon.  *See, e.g.*, *In re Newman*, 782 F.2d 971, 974 (Fed. Cir.

16  1986) ("Rule 34 discovery is a common procedure, as is *inter partes* testing in general, arising in

17  actions where there is a need to conduct inspections and tests for evidentiary purposes.  Such tests

18  routinely are made in the presence of the opposing party, and the test data are routinely provided to all

19  parties."); *Wagoner v. Barger*, 463 F.2d 1377, 1382 (C.C.P.A. 1972) (recognizing that "the results of

20  tests made by one party . . . without notice to, and in the absence of, the other party . . . [are] for that

21  reason alone entitled to little or no weight"); *superseded on other grounds as recognized by Kubota v.*

22  *Shibuya*, 999 F.2d 517, 522 (Fed. Cir. 1993); *Congoleum Indus., Inc. v. Armstrong Cork Co.*, 319 F.

23  Supp. 714, 716 (E.D. Pa. 1970) (discussing "the established doctrine that evidence of experiments

24  conducted by an interested party, in the absence of his adversary, is always received with suspicion and

25  given only negligible probative value"); *see also Nat'l Dairy Prods. Corp. v. L. D. Schreiber & Co.,*

26  *Inc.*, 61 F.R.D. 581, 583 (E.D. Wis. 1973) (ordering that counsel and expert from each side be present

27  at both parties' expert inspections and tests to ensure that "the data presented as evidence is accurate

28  and, to the extent that there may be differences in the results of any tests which are performed on those

1    devices which are inspected, it will permit those differences to be minimized if possible and explained

2    to the court if necessary"); *United States v. Virkutis*, 1986 WL 11614, *3 (N.D. Ill. Oct. 14, 1986)

3    (permitting government expert to inspect documents produced by non-party only if defendant's

4    counsel was present to ensure documents were not damaged during testing).

5         Moreover, permitting Plaintiffs' counsel to attend the defense experts' tours is required by

6    doctrines of fairness and efficiency. Plaintiffs have always permitted Defendants' counsel to observe

7    their expert tours and have no plan to suddenly change that policy two decades into this litigation.

8    Bien Decl. ¶¶24. To preclude Plaintiffs' counsel from observing Defendants' expert tours therefore

9    violates basic notions of equity and reciprocity.[6]

10        The problems inherent in Defendants' position are also exacerbated by the fact that Plaintiffs'

11   clients are particularly vulnerable classes. Plaintiffs are prisoners. The risk is high that they will feel

12   compelled or required to speak with Defendants' experts due to the fact that Defendants control every

13   aspect of their lives. If counsel is not present, Plaintiffs' clients may inadvertently waive their Fifth

14   Amendment rights or otherwise make statements against their interests without understanding the

15   consequences. *See S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994) ("The privilege

16   against self-incrimination may be raised in civil as well as in criminal proceedings and applies not only

17   at trial, but during the discovery process as well."); *see also United States v. Bodwell*, 66 F.3d 1000,

18   1001 (9th Cir. 1995) ("The Fifth Amendment can be asserted in any proceeding, civil or criminal,

19   administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which

20   the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence

21   that might be so used." (internal quotation marks omitted)). Plaintiffs are also prisoners with severe

22   medical or mental illness who may have an even greater problem understanding who the experts are or

23

24   [6]    Indeed, Defendants are already at a distinct advantage with respect to the expert witnesses in
25   this case. Due to security measures in place at Defendants' prison facilities, Plaintiffs are obligated to
     notify Defendants of the names of their experts weeks before the November 9, 2007 deadline for such
26   disclosures so that Plaintiffs' experts can be cleared to tour the facilities. Bien Decl. ¶23. Despite the
     fact that Plaintiffs are required to disclose the identities of their experts in advance of the prison tours,
27   Defendants have indicated they will not tell Plaintiffs the names of their experts until the November 9,
     2007 deadline. Bien Decl. ¶23.

28

1    why they are touring. In *Coleman*, for instance, the Special Master's experts have toured the prisons

2    for more than a decade as neutral clinicians or experts trying to fix systemic problems. There is a

3    substantial likelihood that Plaintiffs will mistake the defense experts' purpose without any protection

4    from counsel.[7]

5         For these reasons, the *Coleman/Plata* Plaintiffs and Plaintiff Intervenor CCPOA request that

6    the Court issue an order allowing their counsel to attend defense expert tours. If the Court will not

7    issue such an order, Plaintiffs and Plaintiff Intervenor CCPOA request an order prohibiting Defendants

8    from speaking with any prisoner class members during the tours, and requiring a detailed accounting of

9    every place that defense experts tour as well as a list of every CCPOA member questioned during the

10   tours. *See* Cal. R. of Prof. Conduct 2-100 (prohibiting *ex parte* communications with persons

11   represented by counsel); *United States v. Talao*, 222 F.3d 1133, 1138-39 (9th Cir. 2000) (discussing

12   venerable rule in legal ethics prohibiting *ex parte* contacts with represented parties" within the context

13   of California law).[8]

14

15

16   _____

17   [7]     Plaintiff Intervenor CCPOA also objects to Defendants' secret tours. *See* Declaration of Gregg
     McClean Adam in Support of Joint Statement Regarding Discovery Disputes, ("Adam Decl.")
18   ¶3. CCPOA's counsel request to be present during defense experts' tours in order to observe
     defendants' interactions with its members, which consist of all rank and file employees in State
19   Bargaining Unit 6 (correctional officers, correctional counselors and parole agents) and some
     supervisors of Unit 6 employees (i.e., sergeants and lieutenants). CCPOA also believes that its
20   presence on the tours will actually facilitate and maximize communications with custody officers and
     other CCPOA members. Because questioning by the employer can be intimidating for individual
21   employees, representation is often mandated in such interactions (*see, e.g.*, Public Safety Officers'
     Procedural Bill of Rights Act (Government Code section 3300 et seq.) and replicates protections in
22   expired Unit 6 Memorandum of Understanding.) Permitting CCPOA's counsel to observe Defendants'
     experts tours is the best way to ensure its members' interests are protected and to forestall future issues
23   related to any communications that occur during the tours. Adam Decl. ¶4-5

24        Furthermore, Defendants experts should not be able to meet with CCPOA-represented
     employees without CCPOA counsel being present. These employees are interveners and have party
25   status for Phase I of this litigation. In the same way defendants in a hypothetical civil case should not
     be able to question a plaintiff class member, nor should defendants be able to interview CCPOA-
26   represented employees.

     [8]     Plaintiffs note that this request is not inconsistent with the relief requested in Part III.A of this
27   joint statement. Plaintiffs do not object to the attendance of Defendants' counsel on Plaintiffs' experts'
     prison tours. Bien Decl. ¶24.

28

### B.    DEFENDANTS' POSITION

#### 1.    There Is No Basis For Permitting Plaintiffs' Counsel To Attend Touring By Defendants' Experts, When, And If, Such Touring Occurs.

Plaintiffs (and Intervenor CCPOA) ask this Court to order Defendants (1) to provide notice of their experts' tours and (2) to permit Plaintiffs' counsel to observe those tours. Plaintiffs contend that notice and attendance by their counsel will promote efficiency and fairness, and will ensure that Plaintiffs' clients are protected. Despite a lengthy "analysis" of the notice and attendance issues, Plaintiffs are unable to cite any case that supports their request. No case cited by Plaintiffs stands for the proposition that Defendants must give notice to Plaintiffs before their experts inspect any of their own facilities. Nor do Plaintiffs cite a case that provides that Plaintiffs' counsel should be permitted to attend Defendants' experts' inspections (when and if they occur). Instead, Plaintiffs cite patent cases where, unlike here, there was a concern that evidence might be destroyed by plaintiffs' expert (see e.g., *In re Newman*, 782 F.2d 971, (Fed. Cir. 1986)) or to ensure that documents of a non-party are not damaged during inspection (*United States v. Virkutis*, 1986 WL 11614, *3 (N.D. Ill. Oct. 14, 1986)). Consequently, Plaintiffs' request to attend any tours conducted by Defendants' experts should be denied.

### V.    DISPUTES REGARDING THE DISCOVERY REQUESTS SERVED BY PLAINTIFF ON SEPTEMBER 5, 2007

#### A.    DEFENDANTS' POSITION

##### 1.    A Rolling Production is Necessary to Ensure Documents are Produced in an Expedient and Efficient Manner.

On September 5, 2007, Plaintiffs served on Defendants thirty-eight requests for production. Pursuant to the Three-Judge Panel's September 25, 2007 order opening discovery in this matter, Defendants' responses to these requests are due on October 25, 2007. Defendants have retained Bridge City Legal to gather the e-discovery portion of Defendants' responses. To date, Bridge City Legal has spent over 500 hours gathering e-discovery data. Specifically, Bridge City Legal has gathered information from over eighty custodians, amounting to over three terabytes of data from individual work stations and over forty gigabytes from the exchange servers at the California

-14-

1  Governor's Office, California Department of Corrections and Rehabilitation, California Department of

2  Finance, and California Department of Mental Health. To put these figures in context, in order to

3  physically print out this data Defendants would need approximately 45,000 boxes of copy paper, which

4  if stacked on top of each other would be approximately 37,500 feet or 7.1 miles tall. Typically, to

5  gather this amount of data would take over two months. Bridge City Legal has been able to collect and

6  begin processing this information within two weeks. Once this information is processed, Defendants

7  will be able to review the gathered documents for relevance to Plaintiffs' discovery requests and assert

8  any necessary privileges. In addition to gathering this e-discovery data, Defendants are gathering

9  paper documents from the California Governor's Office, California Department of Corrections and

10  Rehabilitation, California Department of Finance, and California Department of Mental Health.

11         Due to the breadth of Plaintiffs' discovery requests, it is impossible for Defendants to produce

12  all responsive, non-privileged documents on October 25. Defendants have informed Plaintiffs of this

13  fact and requested Plaintiffs agree to a rolling production. Defendants have offered, to the extent

14  possible, to expedite the review of individuals with documents responsive to certain discovery requests

15  designated by Plaintiffs. Additionally, to expedite the review of documents, Defendants have

16  requested Plaintiffs agree to eliminate documents gathered from in-house attorneys from review.

17  Plaintiffs have not agreed to either of these expediting mechanisms. Instead, Plaintiffs have requested

18  Defendants provide a firm rolling production schedule before Plaintiffs will agree to permit

19  Defendants to conduct a rolling production. At this time it is not possible for Defendants to create

20  such a schedule because Bridge City Legal is still extracting and indexing the gathered data.

21  Defendants anticipate that they will be able to provide a roll-out schedule to Plaintiffs on or before

22  November 2, 2007. Consequently, Defendants request the Court permit Defendants to proceed with a

23  rolling production in accordance with a schedule that will be released on or before November 2, 2007.

24  Additionally, Defendants request the Court not deem any privileges waived due to this rolling

25  production.

26  / / /

27  / / /

28  / / /

1    **B.    PLAINTIFFS' POSITION**

2    **1.    As to Discovery Requests That Are Already Pending, This Court
        Should Order Defendants To Produce Responsive Documents as
3        Soon as Possible, But In No Event Later Than November 1, 2007.
        The Court Should Also Order Defendants to Establish Concrete
4        Deadlines for Production Based on a Prioritization of Clearly
        Defined Topic Areas.**

5

6          During the series of meet and confers by telephone and through email communications,

7    Defendants requested an open-ended extension of time to comply with Plaintiffs' First Request for

8    Production of Documents. Bien Decl. ¶25. Defendants stated that they are currently "processing"

9    electronic documents in order to respond, but that Defendants do not anticipate producing any

10   documents to Plaintiffs by the October 25, 2007 deadline set by the Court.[9] Bien Decl. ¶25. Instead,

11   Defendants proposed that Plaintiffs agree to a "rolling production" of documents. Bien Decl. ¶25. The

12   "rolling production" proposal, however, does not include any schedule or dates certain for production

13   of documents, or a description of how the already-late documents would be prioritized for earlier and

14   later productions. Bien Decl. ¶25. Instead, Defendants have stated that by November 1, 2007, they

15   will provide Plaintiffs with a *schedule* for the production that was due October 25, 2007.[10] Bien Decl.

16   ¶25. But even this modest concession is apparently illusory. In the parties' most recent meet and

17

18

---

19   [9]      Prior to filing status conference reports on August 15, counsel for Plaintiffs and Defendants
20   met and conferred, and agreed that discovery was necessary and open, and discussed expected requests
     from both parties. Bien Decl. ¶3. Plaintiffs served Defendants with the First Request on September 5,
21   2007. Defendants made no objection to this discovery until the final minutes of the September 24,
     2007 scheduling hearing, when they claimed, without basis, that they were not aware discovery was
22   open. Bien Decl. ¶8. The next day, the Court issued an order "to clarify that discovery is open" and
     set the due date thirty days from the date of the order, or October 25, 2007. As of October 25, 2007,
23   Defendants will have had Plaintiffs' Request for approximately forty-eight days, almost three weeks in
     excess of the length of time permitted for response under Federal Rule of Civil Procedure 34. As of
24   the date this statement was filed, Defendants have not produced a single document in response to
     Plaintiffs' First Request for Production of Documents, and have informed Plaintiffs' counsel that they
25   do not expect to produce even a single document Plaintiffs by November 1, 2007. Bien Decl. ¶9.

26   [10]     If Defendants fail to provide even objections to the requests by October 25, 2007, all such
     objections should be deemed waived by this Court. *See Richmark Corp. v. Timber Falling*
27   *Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to
     discovery requests within the time required constitutes a waiver of any objection.").

28

1   confer session, held the morning this joint statement was filed, Defendants backtracked and stated they

2   would "*probably*" be able to provide a fixed schedule by November 1, 2007.  Bien Decl. ¶26.

3            Defendants also informed Plaintiffs that they have already imaged eighty or more individuals'

4   computers, prompting Plaintiffs to inquire whether productions could be prioritized according to

5   individual, or "custodian."  Bien Decl. ¶27.  After investigation, Defendants confirmed that it is

6   possible to prioritize document searches by custodian, and agreed that Plaintiffs can provide a list of

7   high-priority custodians.  Bien Decl. ¶27.  Plaintiffs, however, have pointed out that they do not have

8   enough information to reasonably determine which custodians would have the most relevant

9   documents, and requested that Defendants provide a list of the custodians whose computers were

10  imaged so that Plaintiffs could then prioritize that list.  Bien Decl. ¶27.  Defendants have categorically

11  refused this request.  Bien Decl. ¶27.  Plaintiffs also suggested that Defendants perform a search using

12  keywords to identify which custodians would have "hits," or relevant documents for the main subjects

13  of the documents requests, so that the parties could agree upon a priority for searching and producing

14  documents according to relevance.  Bien Decl. ¶27.  Defendants also refused this request.  Bien Decl.

15  ¶27.

16              **2.      The Scheduling Order Set Forth by the Three-Judge Court Will be
                          Seriously Compromised If Defendants Are Not Ordered to Produce**
17                        **Responsive Documents On an Expedited Schedule.**

18           The Court has recognized the extreme urgency of the overcrowding crisis and set an aggressive

19  pretrial schedule with shortened deadlines.  Plaintiffs will not be able to make use of the information

20  unless Defendants are ordered to produce documents in a timely manner.  Even if Defendants produce

21  all responsive documents by the October 25, 2007 deadline, for instance, Plaintiffs would have only

22  fifteen (15) days to fully digest the documents and ensure their inclusion in expert reports.[11]  At

23  Defendants' request, Plaintiffs have agreed to conduct all prison tours with their experts during the

24  week of October 29th.  Bien Decl. ¶15.  Expert reports are then due on November 9, 2007.  Under

25

26  _____

    [11]     Plaintiffs will have an even shorter amount of time to digest responsive documents if, for
27  instance, the parties are forced to bring other discovery disputes before this Court, such as disputes
    regarding privilege or work product.
28

1   Defendants' current proposal, there is no guarantee that Plaintiffs will receive, much less have time to

2   review, a single document before their experts are able to tour the prison facilities, form their opinions,

3   and write their reports. Accordingly, permitting a delay in Defendants' production of documents

4   responsive to the First Request would seriously harm Plaintiffs' interests. *Cf. Baker v. General Motors*

5   *Corp.*, 86 F.3d 811, 817 (8th Cir. 1996) (finding late production of documents "prevented the plaintiffs

6   from researching them completely, essentially depriving them of the information which they were due"

7   and finding resulting prejudice warranted imposition of Rule 37 sanctions), *rev'd on other grounds by*

8   522 U.S. 222 (1998); *In re Orthopedic Bone Screw Prods. Liability Litig.*, 1998 WL 372404, *1-2

9   (E.D. Pa. May 29, 1998) (commenting on "the prejudicial effect of . . . late production" of documents

10  and authorizing supplemental depositions as a remedy).

11          In light of the urgency of these issues (as reflected in the Court's extraordinarily expedited

12  scheduling order), Defendants should be ordered to produce the responsive documents by November 1,

13  2007 or, in the alternative, produce a detailed plan for production that includes concrete deadlines and

14  prioritization by topic area. Plaintiffs further request an order specifying that any proposed production

15  plan include an initial production of the list of custodians and a requirement that the parties meet to

16  prioritize which custodians' documents are to be produced first. Defendants have already had more

17  time to consider the First Request than the Federal Rules typically allow, and their continued delays

18  impose a severe hardship on Plaintiffs' ability to prepare their experts and factual case for trial.[12]

19  Plaintiffs also request an order from this Court permitting them to supplement their expert reports after

20  November 9, 2007 to account for later-produced documents, and to permit Plaintiffs to take

21  depositions after the close of discovery on December 20, 2007, to the extent that Defendants' delayed

22  production of documents prejudices Plaintiffs' ability to take depositions and prepare for trial.

---

[12]    Moreover, Defendants' claim that they have acted diligently to attempt to comply with the October 25, 2007 deadline is belied by their bad faith discovery delays in another pending Eastern District of California case between these parties, *L.H. v. Schwarzenneger*, No. 2:06-CV-02042-LKK-GGH. *See* Morris Decl. ¶¶ 1-17 and Exh. A.

## VI.   DISPUTE REGARDING EXPEDITED DISCOVERY RESPONSES MOVING FORWARD

### A.   **PLAINTIFFS' POSITION**

Plaintiffs request a court order requiring both parties to respond to discovery on an expedited basis due to the extremely short time permitted by the scheduling order in this case. Specifically, Plaintiffs ask the Court to reduce the time normally allotted for responses to discovery under Federal Rules of Civil Procedure 33(b)(3), 34(b), and 36(a) from thirty (30) to fifteen (15) days. In addition to the provisions in the Rules explicitly recognizing the Court's authority to alter the thirty-day response time as it sees fit (*see* Fed. R. Civ. P. 33(b)(3), 34(b), 36(a)), precedent supports expediting discovery where there is good cause and it is reasonable to do so. *See Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (reviewing expedited discovery motion for reasonableness and good cause, which is found where need to shorten time outweighs prejudice to other party); *see also Wirtz v. Rosenthal,* 388 F.2d 290, 291 (9th Cir. 1967) (applying good cause standard); *cf. In re Napster, Inc. Copyright Litig.,* 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (recognizing courts' "inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (internal quotation marks omitted)).

There can be no question that good cause exists to expedite discovery in this case, and that ordering both parties to respond in fifteen rather than thirty days is reasonable given the circumstances.[13]   Discovery disputes in this case need to resolved as quickly as possible given the tight deadlines imposed by the scheduling order and the extremely short time to prepare for trial. Both parties—and to some extent the Court—implicitly acknowledged the need to expedite proceedings by agreeing to hear even this motion on an expedited schedule. Stringing out the process of alerting the

---

[13]   The parties should also continue to provide their legal positions to each other as soon as possible in an effort to expedite these issues. For example, on October 13, Plaintiffs apprised Defendants of their objections to certain discovery items that were served on October 2 and 4, 2007 on the grounds that the requested information is relevant only to Phase II of this proceeding, not the current phase. Bien Decl. ¶29. Plaintiffs were under no obligation to inform Defendants of these objections until early November 2007. *See* Fed. R. Civ. P. 33, 34. Plaintiffs responded early in a good faith effort to fast-track the discovery process and to maximize the opportunity that disputes could be resolved quickly and without court intervention.

1    opposing party of a possible issue or objection serves no purpose and raises the distinct possibility that

2    a party may be unable to receive meaningful relief from the Court within the discovery period.  For

3    this reason, Plaintiffs request an order requiring Defendants to respond by Friday, November 9, 2007

4    (rather than Friday, November 16, 2007) to the discovery requests served by Plaintiff on October 17,

5    2007.  As to all future discovery served on Plaintiffs and Defendants, Plaintiffs ask that the Court

6    shorten the thirty-day time period permitted by the Rules to fifteen days.

### B.    DEFENDANTS' POSITION

#### 1.    Plaintiffs' Request to Expedite Defendants' Discovery Responses is Unwarranted and Harassing.

10    Defendants oppose Plaintiffs' request and note that Plaintiffs do not propose to shorten their

11   own response time to the discovery propounded by Defendants, which is due November 2 and 5, 2007.

12   The Federal Rules of Civil Procedure permit Defendants thirty days to respond to Plaintiffs' discovery

13   requests.  Defendants will be severely prejudiced by Plaintiffs request.  To date, Plaintiffs have

14   propounded three sets of requests for production and four sets of interrogatories on Defendants.  In

15   responding to these discovery requests, Defendants have engaged in extensive e-discovery, which is

16   more fully described below.  Additionally, Plaintiffs have requested site inspections at ten locations

17   during the week of October 29, 2007.  In light of these commitments, it is physically impossible for

18   Defendants to further expedite responding Plaintiffs' discovery requests.  Defendants are responding to

19   Plaintiffs' discovery as fast as possible.  Consequently, in light of severe prejudice that Defendants will

20   suffer and Plaintiffs' failure to cite a compelling reason, Defendants respectfully request Plaintiffs'

21   request be denied.

### VII.    DISPUTE RELATED TO DEFENDANTS' PROPOSED CLAWBACK PROVISION

### A.    DEFENDANTS' POSITION

#### 1.    Due to the Volume and Expedited Nature of Discovery, Plaintiffs Must Agree to a Confidentiality/Claw Back Provision.

27    A confidentiality/claw back agreement is a standard part of e-discovery to protect against the

28   inadvertent production of privileged documents.  Due to the large volume and expedited nature of

-20-

1  discovery in this matter, Defendants requested Plaintiffs enter into a confidentiality/claw back

2  agreement.  Plaintiffs agreed to a confidentiality and claw back agreement on Wednesday, October 17,

3  2007.  Defendants circulated a draft agreement on Thursday, October 18, 2007.  (*See* **Appendix 2**).

4  Plaintiffs have not provided comments or signed this draft confidentiality/claw back agreement.  To

5  the extent Plaintiffs have not entered into a confidentiality/claw back agreement with Defendants by

6  October 25, 2007, Defendants request this agreement be ordered by the Court prior to Defendants

7  producing any documents to Plaintiffs.

8  　　　　　　　　　　　**B.**　　　**PLAINTIFFS' POSITION**

9  　　　　　Plaintiffs contend that there is no clawback provision dispute for the Court to resolve.

10  Defendants requested a clawback provision permitting them to retract accidentally produced

11  documents that are protected by the attorney-client or attorney work product privilege.  Bien Decl. ¶30.

12  Plaintiffs agreed to a provision of that nature.  Bien Decl. ¶31.  Defendants proposed a version of the

13  clawback provision via email on the evening of Thursday, October 18, 2007, and Plaintiffs are

14  currently in the process of reviewing it.  Bien Decl. ¶32.  Plaintiffs are not retracting their statement

15  that they agree to a clawback provision.  They are simply evaluating Defendants proposed wording to

16  ensure it is not overinclusive.  There is no dispute for the Court to settle.

17  **VIII.  DISPUTE RELATED TO CHARACTERIZATION OF CERTAIN DISCOVERY
　　　　AS RELEVANT TO PHASE II RATHER THAN PHASE I**

18  　　　　　　　　　**A.**　　　**DEFENDANTS' POSITION**

19  　　　　　　　　　　　　　　**1.**　　　**Defendants' Discovery Requests Relate to the Second Prong of Phase
　　　　　　　　　　　　　　　　I, Not Phase II.**

20

21  　　　　　Plaintiffs have informed Defendants on October 17, 2007, that they will not be responding to

22  the following discovery:

23  　　　　　　　　Defendant Arnold Schwarzenegger's First Set of Interrogatories to
　　　　　　　　*Coleman* Plaintiffs: No. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14;

24  　　　　　　　　Defendant Arnold Schwarzenegger's First Request for Production of
　　　　　　　　Documents to *Coleman* Plaintiffs No. 7;

25  　　　　　　　　Defendant Arnold Schwarzenegger's First Set of Interrogatories to *Plata*
　　　　　　　　Plaintiffs No. 2, 3, 8, 9, 11, 12, 13, 14; and

26  　　　　　　　　Defendant Arnold Schwarzenegger's RFPs for *Plata* Plaintiffs No. 1, 3,
　　　　　　　　4, 5.

27

28  *See* **Appendix 1**.

　　　　　　　　　　　　　　　　　　-21-

1    Plaintiffs claim that the above-referenced discovery pertains to Phase II issues and that the

2    October 7, 2007 order of the Three-Judge Panel stays all discovery of Phase II issues, unless Plaintiffs

3    prevail on their Phase I claims. Plaintiffs, however, too broadly construe what constitutes a Phase II

4    issue. Specifically, the Three-Judge Panel ruled that Phase I of the proceedings involve Plaintiffs

5    proving that "(i) crowding is the primary cause of the violation of the Federal right and (ii) no other

6    relief [other than a prison release order] will remedy the violation of the Federal right." (Order

7    Bifurcating Proceedings and Setting Deadlines for Phase I (Bifurcation Order) 3:13-14.) The Court

8    defined Phase II of the proceedings as "relating to a prisoner release order and [would] consider the

9    effects of such an order on public safety, as well as whether such an order is narrowly drawn, extends

10   no further than necessary, and is the least intrusive means necessary to correct the violation of the

11   Federal right." (Bifurcation Order 4:12-15.)

12       The above-listed discovery by Defendants relates to the second prong of Phase I, and not Phase

13   II. Plaintiffs have the burden of proving "no other relief [other than a prison release order] will remedy

14   the violation of the Federal right." (Bifurcation Order 3:13-14.) Simply put, Defendants seek to know

15   what Plaintiffs believe as to (i) the impact of the present population on care and (ii) what they can and

16   should do on a proactive and voluntary basis - absent a court order requiring any particular conduct - to

17   address the alleged overcrowding of the state prisons and the resulting impact on medical and mental

18   health care systems. Mr. Bien's statement at the initial hearing before the Three-Judge Panel that he

19   was seeking a plan of compliance from the *Coleman* defendants, and Judge Karlton denying

20   Defendants' request that Plaintiffs clarify their demand by stating that Defendants' request was a

21   proper subject of discovery, further emphasizes the need for this line of discovery requests.

22   (Transcript, p. 81-83.)

23       Defendants' interrogatories seek the underlying bases for the assertion the population is the

24   cause of the violation as well as test the assertion that "no other relief" is available. For instance, if

25   Plaintiffs believe a voluntary reduction in the overall population or in any specific population within

26   CDCR will address the condition of the mental health care system, then Defendants wish to understand

27   the basis of the contention in terms of the number of inmates to be reduced, the types of inmates

28   subject to such voluntary reduction and the care of any inmates released under a voluntary reduction

-22-

1  (as sought in *Coleman* Interrogatories No. 3-14). If Plaintiffs believe a certain number of inmates

2  causes the unconstitutional noncompliance, then Defendants need to know that number (as sought in

3  *Coleman* Interrogatory No. 5). If Plaintiffs believe the parole of mentally ill inmates with supportive

4  mental health care provided from community resources would enable a reduction of population, then

5  Defendants must be aware of that contention and its basis (as sought in *Coleman* Interrogatory No. 6

6  and *Coleman* Request for Production No. 7).

7  Moreover, as directed by Judge Karlton, Defendants' interrogatories ask Plaintiffs to clarify

8  exactly the type of relief which they are seeking. Defendants cannot form a defense to the second

9  prong of the Phase I inquiry, namely that no other relief other than a prisoner release order will

10  remedy the constitutional violation, if Defendants do not know what type of prisoner release order

11  Plaintiffs seek. Defendants cannot raise alternatives to Plaintiffs' ambiguous prisoner release order

12  request without knowing what they should be raising alternatives to.

13  Finally, Plaintiffs have propounded the following discovery to Defendants, which would appear

14  to fall under Plaintiffs' conception of Phase II: Plaintiffs' Requests For Production, Set One, No. 27,

15  28, 31, 32, and 33. Consequently, Plaintiffs are impermissibly taking conflicting positions.

16  Defendants request the Court order Plaintiffs to respond to the above-listed discovery.

17      **B.    PLAINTIFFS' POSITION**

18          **1.    Defendants Misunderstand the Distinction Between Phase I and
                    Phase II of the Litigation.**

19

20  The Three-Judge Court issued an order bifurcating this case into Phase I and Phase II on

21  October 10, 2007. After receiving that order, Plaintiffs reviewed the discovery requests served by

22  Defendants on *Coleman* and *Plata* Plaintiffs, and notified Defendants that Plaintiffs objected to a

23  number of requests on the basis that they concerned Phase II rather than Phase I. On October 15, 2007,

24  the parties met and conferred about this issue and Plaintiffs agreed to provide Defendants with a

25  complete list of the requests relating to Phase II. Plaintiffs provided that final list to Defendants on

26  October 17, 2007. A list of those requests to which Plaintiffs object based upon bifurcation of the

27  proceedings is set forth in **Appendix 1** to this Joint Statement.

28

1    On October 18, 2007, Defendants sent an email asking whether Plaintiffs believed five of their

2    initial requests for production were Phase I or Phase II-related. The five requests that Defendants

3    asked about are listed in **Appendix 1** to this Joint Statement. Plaintiffs responded on October 19,

4    2007, that the requests relate to Phase I and therefore should be answered. Defendants' disagree and

5    believe that the five requests target Phase II issues.

6    Phase I requires that the Court determine whether i) crowding is the primary cause of the

7    violation of plaintiffs' constitutional rights to adequate medical and mental health care, and ii) no

8    relief, other than a prisoner release order, will remedy these violations. 10/10/07 Order at 4:8-10; 18

9    U.S.C. §§ 3626(a)(3)(E)(i) and (ii). If the Court finds that these two conditions are met, the Court will

10   move onto Phase II issues, including "whether a prisoner release order will be imposed, and the nature

11   and terms of any such order in light of public safety and other concerns." 10/10/07 Order at 3:9-11.

12   Defendants' contentions as to Phase I versus Phase II discovery reflect a fundamental

13   misunderstanding of the considerations of this case, and wrongly attempt to shift the burden of

14   providing relief in this case from Defendants to Plaintiffs. Answers to interrogatories or discovery

15   requests as to what Plaintiffs believe the specific plans or scope for a prisoner release order should

16   encompass are not relevant to the Phase I questions articulated by the Court. Plaintiffs are not

17   obligated to present Defendants with a plan for the universe of actions they should have taken or

18   should take in order to address overcrowding and remedy their own constitutional violations.[14] The

19   details of what a prisoner release order might look like have been specifically postponed by the Court

20   to Phase II proceedings. Defendants, however, *are*, obligated to provide information relevant to any

21   "other relief" they believe could remedy their underlying constitutional violations, especially if they

22   intend to present evidence to the Court during Phase I that "other relief" is available. "Other relief" is

23   relief other than a Court-ordered prisoner release order, and includes any measures that Defendants

24

25

26   [14]    Plaintiffs have, however, offered to engage in settlement talks with defendants about possible
27   actions defendants might voluntarily take to address the violations caused by overcrowding in the
     prisons. Defendants have not pursued settlement discussions. Bien Decl. ¶11.
28

1   have taken or considered to address overcrowding and remedy the constitutional violations, without

2   being ordered by a Court to do so.

3          The requests for production that Plaintiffs have propounded to Defendants are relevant to Phase

4   I determinations.  Throughout the course of this litigation, Defendants have maintained that a Court

5   order is unnecessary and that they are taking steps to accommodate the prison population in ways that,

6   they allege, will provide a remedy for the Plaintiff classes.  If Plaintiffs satisfy the Court that crowding

7   is the primary cause of the violations (the first Phase I criterion), then considerations of what actions

8   Defendants are taking (or have decided not to take) to address crowding, other than being ordered by

9   the Court to do so, are relevant to Phase I.  If Defendants maintain that Court orders are unnecessary

10  because other relief is possible, then discovery requests and evidence about any measures Defendants

11  have considered taking when prisons reach maximum capacity are directly relevant to the Phase I issue

12  of "other relief."

13         On the other hand, information from Plaintiffs regarding a prisoner release order and what it

14  might entail is clearly relevant only to Phase II of the litigation.  The same is true as to Plaintiffs'

15  opinions about specific orders that would constitute prisoner release orders.  Those questions are

16  irrelevant to the Phase I considerations dealing with overcrowding as the primary cause of violations

17  and whether other relief, besides a prisoner release order, would be possible.  Plaintiffs' beliefs as to

18  the number of inmates who would need to be released in order to remedy the constitutional violations,

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1 | how that release might be effectuated, or what would happen if a prisoner release order were issued, do

2 | not relate to Phase 1 questions.

3

4 | Dated: October 22, 2007                    Respectfully submitted,

5

6 |                                            /s/ Amy Whelan
                                               Amy Whelan
                                               Rosen, Bien & Galvan
7 |                                            Attorneys for Coleman Plaintiffs
                                               And On behalf of Plata Plaintiffs
8

9

10 | Dated: October 22, 2007
                                               Charles Antonen
11 |                                           Deputy Attorney General
                                               United States Attorney General
12 |                                           Attorneys for Defendants

13

14

15 | Dated: October 22, 2007
                                               Gregg MacClean Adam
16 |                                           Carroll, Burdick & McDonough, LLP
                                               Attorneys for California Correctional Peace
17 |                                           Officers' Association (CCPOA)
                                               Intervenors

18

19

20

21

22

23

24

25

26

27

28

-26-

1  how that release might be effectuated, or what would happen if a prisoner release order were issued, do

2  not relate to Phase I questions.

3

Dated: October 22, 2007                         Respectfully submitted,

4

5

6                                            /s/ Amy Whelan
                                          Amy Whelan

7                                          Rosen, Bien & Galvan
                                          Attorneys for Coleman Plaintiffs
                                          And On behalf of Plata Plaintiffs

8

9

10  Dated: October 22, 2007

11                                          Charles Antonen
                                          Deputy Attorney General
                                          United States Attorney General

12                                          Attorneys for Defendants

13

14  Dated: October 22, 2007

15                                          Gregg McClean Adam
                                          Carroll, Burdick & McDonough, LLP

16                                          Attorneys for California Correctional Peace
                                          Officers' Association (CCPOA)

17                                          Intervenors

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX 1

## DEFENDANTS' DISCOVERY REQUESTS

### Defendant Schwarzenegger's First Set of Interrogatories to Plaintiffs (*Coleman*)

#### INTERROGATORY NO. 3:

If the response to interrogatory number 1 is affirmative, by what amount must the *Coleman* mental health caseload be reduced by the PRISONER RELEASE ORDER to remediate that failure?

#### INTERROGATORY NO. 4:

Do you contend that the PRISONER RELEASE ORDER must reduce the number of inmates in the different categories of the *Coleman* mental health caseload (such as the Enhanced Outpatient Program, coordinated clinical case management system, inpatient care patient) to achieve constitutionally adequate mental health care?

#### INTERROGATORY NO. 5:

If your response to the previous interrogatory is affirmative, identify the reduction for each category of the *Coleman* mental health caseload and by level of custody to achieve constitutionally adequate mental health care.

#### INTERROGATORY NO. 6:

State each and every policy and procedure Defendants should adopt to achieve the amount of the reduction in the *Coleman* mental health caseload necessary to remediate Defendants' failure to provide constitutionally adequate mental health care according to the Revised Program Guide standards.

#### INTERROGATORY NO. 7:

State the time frame for the implementation of each and every policy that Defendants should adopt to achieve the reduction in the *Coleman* mental health caseload necessary to remediate Defendants' failure to provide constitutionally adequate mental health care according to the Revised Program Guide standards.

#### INTERROGATORY NO. 8:

If those policies and procedures identified in response to interrogatory number 7 are based upon any prison or population models, please identify each and every model by its source, including but not limited to entity, publication, and author.

#### INTERROGATORY NO. 9:

Do Plaintiffs contend that a PRISONER RELEASE ORDER reducing only non-*Coleman* caseload population will enable Defendants to meet constitutionally adequate standards for mental health care according to the court-approved Revised Program Guide?

#### INTERROGATORY NO. 10:

If your response to interrogatory number 9 is in the affirmative, please state the amount of that population reduction.

### INTERROGATORY NO. 11:

For the population reduction stated in response to interrogatory number 10, please identify the numbers of inmates that you contend must be released by level of custody and gender.

### INTERROGATORY NO. 12:

State each and every policy and procedure Defendants should adopt to achieve the reduction in only non-*Coleman* caseload population stated in response to interrogatory number 10.

### INTERROGATORY NO. 13:

State the time frame for the implementation of each and every policy that Defendants should adopt to achieve the reduction in only non-*Coleman* caseload population necessary to remediate Defendants' failure to provide constitutionally adequate mental health care according to the Revised Program Guide standards.

### INTERROGATORY NO. 14:

If those policies and procedures identified in response to interrogatory number 12 are based upon any prison or population models, please identify each and every model by its source, including but not limited to entity, publication, and author.

**Defendant Schwarzenegger's First Request for Production of Documents (*Coleman*)**

### REQUEST FOR PRODUCTION NO. 7:

Please produce each and every document related to Plaintiffs' contention that constitutionally adequate mental health care services can be provided to those inmates subject to a PRISONER RELEASE ORDER upon their release.

**Defendant Schwarzenegger's First Set of Interrogatories to Plaintiffs (*Plata*)**

### INTERROGATORY NO. 2:

If PLAINTIFFS' response to interrogatory number 1 is affirmative, describe with specificity the PRISONER RELEASE ORDER that PLAINTIFFS seek in this matter.

### INTERROGATORY NO. 3:

Identify all DOCUMENTS that describe the PRISONER RELEASE ORDER that PLAINTIFFS seek in this matter.

### INTERROGATORY NO. 8:

If PLAINTIFFS' response to interrogatory number 7 is affirmative, state with specificity the amount of that population reduction.

INTERROGATORY NO. 9:
    Identify all DOCUMENTS that describe or explain the reduction identified in response to interrogatory number 8.

INTERROGATORY NO. 11:
    If PLAINTIFFS' response to interrogatory number 10 is affirmative, state with specificity the amount of that population reduction.

INTERROGATORY NO. 12:
    Identify all DOCUMENTS that describe or explain the reduction identified in response to interrogatory number 11.

INTERROGATORY NO. 13:
    State each and every policy that you contend DEFENDANTS must adopt to achieve the population reduction set forth in response to interrogatory numbers 8 and 11.

INTERROGATORY NO. 14:
    Identify all DOCUMENTS that describe or explain the policies identified in response to interrogatory number 13.


**Defendant Schwarzenneger's First Request for Production of Documents (*Plata*)**

REQUEST FOR PRODUCTION NO. 1:
    Any and all DOCUMENTS that YOU identified in response to interrogatory no. 3 of Defendant Arnold Schwarzenegger's First Set of Interrogatories to Plaintiffs.

REQUEST FOR PRODUCTION NO. 3:
    Any and all DOCUMENTS that YOU identified in response to interrogatory no. 9 of Defendant Arnold Schwarzenegger's First Set of Interrogatories to Plaintiffs.

REQUEST FOR PRODUCTION NO. 4:
    Any and all DOCUMENTS that YOU identified in response to interrogatory no. 12 of Defendant Arnold Schwarzenegger's First Set of Interrogatories to Plaintiffs.

REQUEST FOR PRODUCTION NO. 5:
    Any and all DOCUMENTS that YOU identified in response to interrogatory no. 14 of Defendant Arnold Schwarzenegger's First Set of Interrogatories to Plaintiffs.

## PLAINTIFFS' DISCOVERY REQUESTS

### Plaintiffs' First Request for Production of Documents to Defendant Schwarzenegger (*Plata*)

### REQUEST FOR PRODUCTION NO. 27:

Any and all DOCUMENTS created during the RELEVANT TIME PERIOD that REFER or RELATE TO any measure(s) that YOU have initiated or considered in order to reduce prison populations, other than the measures set forth in AB900.

### REQUEST FOR PRODUCTION NO. 28:

Any and all DOCUMENTS created during the RELEVANT TIME PERIOD, that RELATE TO any contingency plans, other than population reducing measures, that YOU have considered initiating when, in YOUR estimation, the PRISONS reach their MAXIMUM CAPACITY.

### REQUEST FOR PRODUCTION NO. 31:

Any and all DOCUMENTS created during the RELEVANT TIME PERIOD that REFER or RELATE TO any consideration of placing limitations on the Prison population.

### REQUEST FOR PRODUCTION NO. 32:

Any and all DOCUMENTS created during the RELEVANT TIME PERIOD that REFER or RELATE TO any consideration of the effects of sentencing reform on the PRISON population.

### REQUEST FOR PRODUCTION NO. 33:

Any and all DOCUMENTS created during the RELEVANT TIME PERIOD that REFER or RELATE TO any consideration of the effects of sentencing commission on the PRISON population.

# APPENDIX 2

## NON-WAIVER AND CONFIDENTIALITY AGREEMENT ("Agreement")

WHEREAS, the parties have agreed to produce all documents deemed discoverable under the Federal Rules of Civil Procedure, including Electronically Stored Information ("ESI"), that are responsive to each other's discovery requests and not privileged or otherwise exempted from discovery under the Federal Rules of Evidence, Federal Rules of Civil Procedure or other applicable source of law;

WHEREAS, some of the ESI and other documents produced in this matter may contain attorney-client privileged communications or other information protected as "privileged" under the Federal Rules of Evidence ("Privileged Material") and not subject to discovery under the Federal Rules of Civil Procedure or the Federal Rules of Evidence ("Privileged Material");

WHEREAS, some of the produced ESI and other documents in this matter may contain protected attorney work-product material prepared or compiled in anticipation of litigation and not subject to discovery under the Federal Rules of Civil Procedure or the Federal Rules of Evidence ("Work-Product Material");

WHEREAS, the parties acknowledge that, despite each party's best efforts to conduct a thorough pre-production review of all ESI and other documents, some Work Product Material and Privileged Material ("Protected Material") may be inadvertently disclosed to the other party during the course of this litigation;

WHEREAS, the volume of potentially discoverable ESI may substantially increase the total volume of documents that will be produced by the parties, thereby exacerbating the risk of inadvertent disclosure of Protected Material;

WHEREAS, in the course of this litigation, the parties may —either inadvertently or knowingly— produce information that is of a confidential, private, personal, trade secret, or proprietary nature ("Sensitive Material");

WHEREAS, the undersigned parties desire to establish a mechanism to avoid waiver of privilege or any other applicable protective evidentiary doctrine as a result of the inadvertent disclosure of Protected Material; and (b) keep disclosed Protected Material and Sensitive Material confidential to the maximum extent possible;

IT IS HEREBY STIPULATED AND AGREED by the parties that the following clauses of this Agreement shall govern the disclosure of Protected Material and Sensitive Material in this action.

I.    NON-WAIVER OF PRIVILEGE OR OTHER PROTECTIVE DOCTRINE BY INADVERTENT DISCLOSURE

1.    The inadvertent disclosure of any document which is subject to a legitimate claim that the document should have been withheld from disclosure as Protected Material shall NOT waive any privilege or other applicable protective doctrine for that document or for the subject matter of the inadvertently disclosed document if the producing party, upon becoming aware of the disclosure, promptly requests its return and takes reasonable precautions to avoid such inadvertent disclosure.

2.    Except in the event that the requesting party disputes the claim, any documents which the producing party deems to contain inadvertently disclosed Protected Material shall be, upon written request, promptly returned to the producing party or destroyed at the producing party's option. This includes all copies, electronic or otherwise, of any such documents. In the event that the producing party requests destruction, the requesting party shall provide written certification of compliance within thirty (30) days of such written request. In the event that the requesting party disputes the producing party's claim as to the protected nature of the inadvertently disclosed material, a single set of copies may be sequestered and retained by and under the control of requesting party for the sole purpose of seeking court determination of the issue pursuant to Federal Rule of Civil Procedure 26(b)(5)(B).

3.    Any such Protected Material inadvertently disclosed by the producing party to the requesting party pursuant to this Agreement, shall be and remain the property of the producing property.

4.    To the extent there may be inconsistency between the aforementioned stipulations in this Agreement and Federal Rule of Civil Procedure 26(b)(5) and the accompanying Committee Note, Rule 26(b)(5)(B) and the Committee Note shall control.

II.    CONFIDENTIAL TREATMENT OF SENSITIVE MATERIAL

5.    Any Protected Material or Sensitive Material disclosed in this litigation is to be considered confidential and proprietary to the producing party and the requesting party shall hold the same in confidence and shall not use any disclosed Protected Material or Sensitive Material other than for the purposes of this litigation. To that end, the parties shall limit the disclosure of all Protected Material and Sensitive Material only to those persons with a need to know the information for purposes of supporting their position in this litigation. Moreover, Protected Material and Sensitive Material will not be disclosed, published or otherwise revealed to any other party in this litigation except with the specific prior written authorization of the producing party.

6.    If Protected Material or Sensitive Material is disclosed through inadvertence or otherwise to any person not authorized under this Agreement, the party causing such disclosure shall inform the person receiving the Protected Material or Sensitive Material that the information is covered by this Agreement, make its best efforts to retrieve the Protected Material or Sensitive Material, and promptly inform the producing party of the disclosure.

7.    The requesting party shall have no confidentiality obligations with respect to any information which:

a.    is already known to the requesting party without restriction;

b.    is or becomes publicly known otherwise than by the requesting party's breach of this Agreement;

c.    is received by the requesting party without restriction from a third-party who is not under an obligation of confidentiality;

d.    is independently developed by the requesting party;

e.    is approved for release by written authorization of the producing party; or

f.    is disclosed by the requesting party pursuant to judicial action, provided that producing party is notified at the time such action is initiated.

8.    Any Protected Material or Sensitive Material disclosed by the producing party to the requesting party pursuant to this Agreement shall be and remain the property of the producing property.

## III.    GENERAL PROVISIONS

9.    Except for the outstanding protective orders in *Coleman v. Schwarzenegger, et al.,* Case No. CIV S-90-0520 LKK JFM and *Plata v. Schwarzenegger, et al.,* Case No. C 01-CV-1351 TEH, this Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof.

10.    This Agreement shall be binding on the parties hereto when signed regardless of whether or when the court enters its Agreement thereon.

11.    Nothing herein shall prevent any party from applying to the court for a modification of this Agreement should the moving party believe the Agreement, as originally agreed upon, is hampering its efforts to prepare for trial; or from applying to the court for further or additional protective Agreements; or from an

Agreement between the parties to any modification of this Agreement, subject to the approval of the court.

12. This Agreement shall survive the final termination of this case regarding any retained documents or contents thereof.

13. The effective date of this Agreement shall be October 18, 2007.


Dated: _____       Dated: _____

EDMUND G. BROWN JR.                   HANSON BRIDGETT MARCUS
Attorney General of the State of California   VLAHOS & RUDY, LLP


_____       _____
Charles J. Antonen, State Bar No. 221207   Paul B. Mello, State Bar No. 179755
455 Golden Gate Avenue, Ste. 11000    425 Market Street, 26th Floor
San Francisco, CA 94102               San Francisco, CA 94105
415-703-5443                          415-777-3200


Dated: _____       Dated: _____

PRISON LAW OFFICE                     ROSEN, BIEN & GALVAN, LLP


_____       _____
Donald Specter, State Bar No. 83925   Michael W. Bien, State Bar No. 96891
2173 East Francisco Blvd., Ste. M     315 Montgomery St., 10th Floor
San Rafael, CA 94901                  San Francisco, CA 94104
415-457-9144                          415-433-6830

EXHIBIT C

1    IN THE UNITED STATES DISTRICT COURTS

2    FOR THE EASTERN DISTRICT OF CALIFORNIA

3    AND THE NORTHERN DISTRICT OF CALIFORNIA

4    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

5    PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

6

7    RALPH COLEMAN, et al.,

8                     Plaintiffs,

9         v.                                      NO. CIV S-90-0520 LKK JFM P

10   ARNOLD SCHWARZENEGGER,                       **THREE-JUDGE COURT**

11   et al.,

12                    Defendants.

13   MARCIANO PLATA, et al.,

14                    Plaintiffs,

15        v.                                       NO. C01-1351 TEH

16   ARNOLD SCHWARZENEGGER,                        **THREE-JUDGE COURT**

17   et al.,                                       ORDER

18                    Defendants.

19

20           This matter came on for hearing on October 25, 2007 on various discovery

21   disputes.  Amy Whelan, Esq. and Lisa Ells, Esq., appeared as counsel for plaintiffs.  Ronald

22   Yank, Esq. appeared as counsel for intervenor California Correctional Peace Officers

23   Association (CCPOA).  Charles Antonen, Deputy Attorney General, and Misha Igra, Deputy

24   Attorney General, appeared as counsel for defendants.  Martin H. Dodd, Esq., participated by

25   telephone conference as counsel for the Receiver in Plata.[1]

26   _____

27        [1]  Mr. Dodd participated for the limited purpose of representing the Receiver's
     position that a representative of the Receiver must be present at any prison inspection during
28   which medical records are reviewed or medical staff are interviewed.  No party had any
     dispute with the Receiver's position.  Mr. Dodd represented that representatives are available

1    Early in the period set aside for discussion of the disputes discussed below, the

2   parties discussed their possible need for a discovery referee due to the complex nature of the

3   discovery and the relatively short time frame allotted for that discovery. Because such an

4   appointment risks consuming additional time and complicating discovery the court will not

5   attempt such an appointment at this time. As occurred in the disputes dealt with below, the

6   court will remain available for resolution of discovery disputes upon reasonable notice to

7   chambers.

8    The first dispute arises in connection with site inspections of ten prisons to be

9   conducted by plaintiffs' experts during the week of October 29, 2007. Plaintiffs' request for

10  site inspections pursuant to Fed. R. Civ. P. 34 includes a request that plaintiffs' experts be

11  given "an interview with the prison's Warden, Associate Warden for Health Care and the

12  prison's highest ranking medical and mental health officers" and notice that plaintiffs'

13  experts may "confer with" prison staff and class members concerning access to medical and

14  mental health care and "as to issues of housing, programming, exercise and activities for

15  class members." (Ex. K to Declaration of Michael W. Bien in Support of Joint Statement

16  Regarding Discovery Dispute, filed October 22, 2007, at 3.) On October 18, 2007, counsel

17  for defendants informed plaintiffs that the experts would not be permitted to speak with any

18  staff or inmates during such inspections, (Joint Statement, at 8), giving rise to the instant

19  dispute.

20   Plaintiffs contend that Rule 34 specifically authorizes inspection of

21  "operations" on property, that the Rule should be broadly construed, and that the interests of

22  judicial economy and efficiency will be best served if experts are allowed to confer with

23  prison staff during site inspections. Defendants contend that Rule 34 does not give the

24  experts a right to confer with or to interview, "anyone with whom they come in contact"

25  /////

26  _____

27  for all inspections scheduled as Plata inspections in whole or in part. He agreed to continue
    to seek members of the Receiver's staff to be present on the inspections scheduled as

28  Coleman inspections and to work with plaintiffs' counsel concerning any problems that may
    remain with representation by the Receiver at such inspections.

2

1  during a site inspection, and that "only Rule 30 of the Federal Rules of Civil Procedure

2  permits a party to take the testimony of another person." (Id. at 8-9.)

3          Rule 34 of the Federal Rules of Civil Procedure provides in relevant part that

4  > [a]ny party may serve on any other party a request . . . (2) to
   permit entry upon designated land or other property in the
5  possession or control of the party upon whom the request is
   served for the purpose of inspection and measuring, surveying,
6  photographing, testing, or sampling the property or any
   designated object or operation thereon.

7

8  Fed. R. Civ. P. 34(a).. "Rule 34, like the other rules relating to discovery, is to be liberally

9  construed." Martin v. Reynolds Metals Corp., 297 F.2d 49, 56 (9th Cir. 1961).  The

10  proceedings before the three-judge court are directed to the impact of overcrowding on the

11  delivery of constitutionally adequate medical and mental health care to inmates in

12  California's prisons.  In the context of these proceedings, questions by experts directed to

13  prison employees and to class members concerning those matters identified in plaintiffs'

14  inspection requests are properly included as part of an inspection of "any operation" on the

15  prison facilities to be inspected.

16          At the hearing, it appeared that the gravamen of this dispute turns on whether

17  defendants should be required to make the Wardens, Associate Wardens for Health Care, and

18  the prisons highest ranking medical and mental health officers available for initial interviews

19  with the experts at the start of each site inspection.  Defendants will not be required to take

20  extraordinary steps to ensure that each of these officials are present for interviews with

21  plaintiffs' experts at the start of each scheduled site inspection.  However, if these officials

22  are, in the ordinary course of business, present at their respective prison facilities during an

23  expert inspection and reasonably available to meet with plaintiffs' experts at some point

24  during a scheduled site inspection, such meetings shall be permitted.

25          The second dispute arises from plaintiffs' request that defendants be required to

26  provide notice to both plaintiffs and the CCPOA of any site inspections conducted by

27  /////

28

1    defense experts, and that their counsel be present during any such inspections.[2]  Plaintiffs

2    contend that such an order will "promote efficiency and fairness" by, inter alia, helping to

3    "establish a common factual baseline" of what took place during the inspections, as well as

4    ensuring protection for their clients.  (Joint Statement, at 11.)  The CCPOA intervenors also

5    request to be present during such inspections "in order to observe defendants' interactions

6    with its members."  (Id. at 13 n.7.)  Defendants' opposition is grounded solely in plaintiffs'

7    alleged inability to cite to any caselaw in support of their request.  Defendants do not cite to

8    any authority that precludes the requested order.

9         The court anticipates that the presence of all counsel on all expert inspections

10   will create the "common factual baseline" described by plaintiffs concerning the events of

11   each inspection, thereby reducing the number of preliminary questions that must be explored

12   in depositions and/or at the trial of this matter.  In addition, given the likelihood that

13   defendants' experts will want to talk with members of the plaintiff class and with members of

14   the CCPOA, the presence of counsel minimizes potential conflicts arising from these

15   communications.  For these reasons, plaintiffs' request will be granted.  Defendants will be

16   directed to provide plaintiffs and the CCPOA with reasonable notice of any scheduled site

17   inspection by a defense expert, and counsel for plaintiffs and the CCPOA will be permitted

18   to attend and observe any such inspection.[3]

19        The third dispute arises from a request for production of documents served by

20   plaintiffs on September 5, 2007.  Pursuant to an order of the three-judge court filed

21   September 25, 2007, responses to that production request were due October 25, 2007.

22   Defendants contend that the request is too broad to permit complete production by October

23   25, 2007, and they propose rolling production on a schedule to be announced on or before

24   /////

---

25        [2]  It is not clear from the record whether any inspections are planned for defense
26   experts.

27        [3]  Nothing in this order is intended to bar defendants from proffering as expert
     witnesses prison employees whose testimony is based, in whole or in part, on observations
28   made in the ordinary course and scope of their employment.

1   November 2, 2007. Defendants also seek an order "not deeming any privileges waived due
2   to this rolling production." (Joint Statement, at 15.)

3           Plaintiffs oppose defendants' request primarily on the ground that defendants
4   have failed to provide any concrete deadlines for production or information by which
5   plaintiffs could participate in prioritizing the production.

6           After review of all of the relevant documents and consideration of the
7   arguments of counsel, the court announced to the parties in open court that by November 1,
8   2007, defendants will be required to produce for inspection and copying all documents
9   responsive to plaintiffs' request for production of documents unless before that date the
10  parties reach an agreement for some other schedule for production. The date for a response
11  to plaintiffs' September 5, 2007 request for production of documents remains October 25,
12  2007 consistent with the September 25, 2007 order of the three-judge court. A copy of
13  defendants' response to the discovery request shall be filed with the court when served on the
14  parties.

15          The fourth dispute concerns plaintiffs' request to shorten time for responses to
16  certain discovery requests that have already been served and, prospectively, to any additional
17  discovery requests that may be served during the time set for discovery in Phase I of these
18  proceedings.[4] Plaintiffs' counsel has filed a list identifying all discovery requests
19  outstanding as of the date of the hearing. Good cause appearing, responses to discovery
20  already served will be due on the schedule set forth in this order. Responses to discovery
21  served from October 25, 2007 forward shall be due twenty-one days after service.

22          The final dispute[5] concerns plaintiffs' objections to certain interrogatories and
23  requests for production of documents propounded by defendants.[6] Plaintiffs object to these

24
25          [4] In accordance with the October 10, 2007 order of the three-judge panel, discovery
    closes on December 20, 2007.

26          [5] There are six disputes identified in the Joint Statement. The parties represented at
    the hearing that they have resolved the dispute concerning the claw back provision.
27
28          [6] The specific discovery requests are set forth in Appendix 1 of the Joint Discovery
    Statement.

5

1    requests on the ground that they fall within the scope of Phase II of the litigation as that has

2    been defined by the October 10, 2007 order of the three-judge court.  Defendants contend

3    that the requests are relevant to the second question at issue in Phase I.[7]  Phase I of this action

4    focuses on "whether the plaintiffs have established the prerequisites to considering issuance

5    of a prisoner release order" as set forth in 18 U.S.C.§§ 3626(a)(3)(E)(I) and (ii), i.e., whether

6    plaintiffs have shown that "'(I) crowding is the primary cause of the violation of a Federal

7    right' and '(ii) no other relief [other than a prisoner release order] will remedy the violation

8    of the Federal right.' 18 U.S.C. § 3626(a)(3)(E)(I), (ii)."  Order filed October 10, 2007, at

9    3,4.  The October 10, 2007 order provides that the court will proceed to determine in Phase II

10   whether a prisoner release order should be issued, and "[o]nly if the court decides, in 'Phase

11   I', that these two conditions have been satisfied, will we conduct proceedings, in 'Phase II'".

12   Id. at 3.  The order further provides that "[o]nly if plaintiffs prevail in Phase I will discovery

13   be permitted regarding Phase II, and a trial conducted on that phase."  Id. at 7.

14          After careful review of the court's October 10, 2007 order and the discovery

15   requests to which plaintiffs have objected, and good cause appearing, plaintiffs' objections to

16   said requests will be sustained.

17          In accordance with the above, IT IS HEREBY ORDERED that:

18          1.  Plaintiffs' experts shall be permitted to confer with prison staff and

19   members of the plaintiff classes during their site inspections.  Plaintiffs' experts shall also be

20   permitted to interview Wardens, Associate Wardens for Health Care and/or the highest

21   ranking medical and mental health care officers at prison facilities if these officials are, in the

22   ordinary course of business, present at their respective prison facility during an expert

23   inspection and reasonably available to meet with plaintiffs' experts during a scheduled site

24   inspection.

25   /////

26

27   [7] Defendants also contend that plaintiffs have propounded discovery requests which "appear to fall under Plaintiffs' conception of Phase II." (Joint Discovery Statement, at 23.) This contention is irrelevant.  Plaintiffs have not by propounding these requests waived their

28   right to object to discovery propounded by defendants.

1   2. Defendants shall provide reasonable notice to plaintiffs and to CCPOA of

2 any prison site inspection by any defense expert and counsel for plaintiffs and for CCPOA

3 shall be permitted to attend any such site inspection.

4   3. On or before November 1, 2007, defendants shall produce for inspection

5 and copying all documents responsive to plaintiffs' September 5, 2007 request for production

6 of documents unless before that date the parties reach an agreement for some other schedule

7 for production. The date for a response to plaintiffs' September 5, 2007 request for

8 production of documents remains October 25, 2007. A copy of defendants' response to the

9 discovery request shall be filed with the court when served on the parties.

10   4. Responses to all outstanding discovery requests served on October 17, 2007

11 shall be due on or before November 9, 2007.

12   5. Responses to all outstanding discovery requests served on October 23, 2007

13 shall be due on or before November 15, 2007.

14   6. Responses to any discovery requests served on or after October 25, 2007

15 shall be due twenty-one days from the date of service.

16   7. Plaintiffs' objection to the discovery requests set forth in the first three

17 pages of Appendix A of the Joint Statement filed October 22, 2007 is sustained.

18 DATED: October 30, 2007.

19

20          _____

21         UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

EXHIBIT D

1    UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3    AND THE EASTERN DISTRICT OF CALIFORNIA

4    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

5    PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

6

7    RALPH COLEMAN, et al.,                    No.  2:90-cv-00520 LKK JFM P

         Plaintiffs,                          **THREE-JUDGE COURT**
8
         v.
9
     ARNOLD SCHWARZENEGGER, et al.,
10
         Defendants.
11

12   MARCIANO PLATA, et al.,                   No. C01-1351 TEH

13       Plaintiffs,                           **THREE-JUDGE COURT**

14   v.                                        **DEFENDANTS', PLAINTIFFS', AND
                                               INTERVENORS' JOINT STATUS
15   ARNOLD SCHWARZENEGGER, et al.,            CONFERENCE STATEMENT**

16       Defendants.                           **To:  Three-Judge Court**

17

18   I.     INTRODUCTION

19          By order of this Three-Judge Court, entered May 30, 2008, the Defendants,

20   Intervenors, and Plaintiffs were all instructed to meet and confer regarding proposed new

21   discovery deadlines, proposed pretrial dates, and estimated length of trial.  The parties

22   and Intervenors were similarly instructed to file a joint status conference statement

23   advising this Court of the same.  Accordingly, Defendants, Plaintiffs, and the Intervenors

24   met and conferred telephonically on June 5, 2008, and now submit the following

25   proposed deadlines regarding discovery, pretrial dates, and estimated length of trial.

26   / / / /

27   / / / /

28   / / / /

- 1 -

## II.    DEFENDANTS' PROPOSAL

### A.    Defendants' Proposed Discovery and Pretrial Deadlines.

| | |
|---|---|
| August 15, 2008 | Last day to complete written discovery and non-expert depositions. |
| August 15, 2008 | Expert disclosures and reports due. |
| August 22, 2008 | Last day to disclose rebuttal experts. |
| September 5, 2008 | Last day to complete expert discovery. |
| September 24, 2008 | Last day to file dispositive motions (see explanation below). |
| October 1, 2008 | Last day to file oppositions to dispositive motions. |
| October 8, 2008 | Last day to file replies in support of dispositive motions. |
| November 15, 2008 | Hearing on dispositive motions. |
| November 3, 2008 | Last day to file motions *in limine*, pre-trial briefs, and joint pre-trial statements. |
| November 10, 2008 | Pre-trial conference and hearing on motions *in limine*. |
| November 17, 2008 | Trial |

This Three-Judge Court's May 30, 2008 Order additionally informed the parties that if they propose a dispositive motion schedule, they must advise this Court why such a schedule is necessary.  (May 30, 2008 Order at ¶ 3.)  Defendants contend that a dispositive motion is both appropriate and necessary because Plaintiffs' experts testified (1) that overcrowding is not the primary cause of Defendants' inability to provide constitutionally adequate medical and mental health care to Plaintiffs, and (2) that a prisoner release order is not the only means of providing constitutionally adequate medical and mental health care to Plaintiffs.  As such, there are no factual disputes as to these required elements and a dispositive motion by Defendants should be granted.

### B.    Estimated Length of Trial.

Defendants estimate that they will require 4 days to defend both *Plata* and *Coleman* at trial.

### C.    Disclosure of Trial Witnesses.

Plaintiffs and Intervenors request that this Three-Judge Court require all parties to

- 2 -

1     disclose the names of all trial witnesses to "target discovery."  Defendants are willing to

2     disclose their trial witnesses, as Plaintiffs and Intervenors request, with the provision that

3     all parties are limited to deposing only those witnesses listed as potential trial witnesses.

4     No party to this proceeding should be permitted to depose a non-testifying trial witness.

5     In the absence of such a limitation, there can be no guarantee that the parties will truly

6     "target" their discovery and depositions and disclosure of trial witnesses would be

7     meaningless.

8          **D.**      **Site Inspections and Time to Respond to Discovery.**

9          Defendants contend that to the extent any party seeks to conduct additional site

10     inspections of CDCR facilities, this Court should enter a protective order prohibiting such

11     inspections.  No further site inspections are necessary as all inspections were previously

12     completed as to Phase I issues, and any inspection with regard to Phase II issues would

13     be irrelevant.  Additionally, given the compressed schedule within which to complete

14     discovery, file and respond to dispositive motions, and prepare for trial, inspections of

15     CDCR facilities around the State would constitute a waste of the parties' time and

16     resources.

17          Defendants further request that to the extent the provisions of the Court's October

18     30, 2007 order regarding discovery now apply to the consolidated proceedings and the

19     participation of the Defendant-Intervenors, Defendants respectfully request that all

20     parties be permitted the full 30 days contemplated by the Federal Rules of Civil

21     Procedure within which to respond to discovery.

22     **III.**      **PLAINTIFFS' AND PLAINTIFF-INTERVENOR CCPOA'S PROPOSAL**

23          On June 2, 2008, this Court ordered the parties to meet and confer regarding

24     proposed new discovery deadlines, proposed pre-trial dates to accompany the

25     November trial date and an estimated length of trial.  *Coleman* Docket 2808 at 2.  The

26     parties had a telephone conference on Thursday, June 5, 2008 to discuss these issues.

27          Plaintiffs and CCPOA respectfully submit this Status Conference Statement to

28     provide proposed deadlines and to outline issues that plaintiffs' attorneys and CCPOA

1    are prepared to discuss at the June 27, 2008 Status Conference.

2        **A.**    **Length of Trial**

3        Plaintiffs estimate four full days to present their evidence at trial.  Intervenor

4    CCPOA estimates one to two days for its case.

5        **B.**    **Plaintiffs and CCPOA's Proposed Discovery and Pre-Trial Deadlines**

6        Plaintiffs propose the following discovery and pre-trial dates:

7

| | |
|---|---|
| 6/30/08 | Discovery Opens (pursuant to Three-Judge Order) |
| 8/1/08 | Last day to disclose list of trial witnesses |
| 8/15/08 | Last day to disclose names and CV's of testifying experts |
| 9/8/08 | Deadline for exchanging Expert Reports |
| 9/22/08 | Deadline for Disclosure of Rebuttal Experts and Reports |
| 9/26/08 | Close of Discovery (regular) |
| 10/13/08 | Close of Discovery (expert) |
| 10/27/08 | Deadline for Joint Pre-Trial Statement and MILs (including affidavits of testifying percipient witnesses) |
| 11/3/08 | Oppositions to MILs (no replies permitted) |
| 11/10/08 | Pre-trial Conference and hearing re MILs |
| 11/17/08 | FIRST DAY OF TRIAL |

15        Plaintiffs believe this schedule is aggressive but reasonable for all parties.  With

16    respect to defendants and the defendant-intervenors' proposed discovery deadlines in

17    particular, they are too short.  Defendants' deadlines would effectively nullify further

18    discovery because they would not permit enough time for responses, let alone disputes

19    over responses.  This is particularly true in light of defendants' request to be relieved

20    from the current order imposing a 21 day deadline for all written discovery responses.

21    *Coleman* Docket 2495 at 7.

22        **C.**    **Plaintiffs and the Intervenors Request an Earlier Deadline to Disclose**

23                     **Trial Witnesses**

24        Counsel for plaintiffs and the intervenors agree that an earlier deadline to disclose

25    trial witnesses would help the parties to target depositions and other discovery.  For that

26    reason, plaintiffs and the intervenors request that the Court order the parties to identify

27    trial witnesses earlier in the process to permit focused depositions.  Plaintiffs and

28    CCPOA recommend August 1, 2008 as the deadline for that exchange.

- 4 -

1         Plaintiffs and CCPOA do not agree with defendants that depositions of non-trial

2    witnesses should be barred by this Three-Judge Court.  Such an order would permit

3    defendants, who possess virtually all of the discoverable information, to prevent plaintiffs

4    from deposing parties and critical witnesses who have substantial knowledge about key

5    matters at issue in this litigation by not designating them as trial witnesses.  As the Court

6    knows from the underlying litigation, defendants and their agents often have the most

7    direct knowledge about the conditions and the consequences thereof.  There is no doubt

8    that having a list of trial witnesses will allow the parties to focus their discovery, but a

9    limit on depositions only to those identified trial witnesses would not provide the Court

10    with a full picture of the conditions.

**D.**     **Plaintiffs and CCPOA Request that the Three-Judge Court Include the Same Procedures for Direct Testimony of Percipient and Expert Witnesses as Provided in the Original Scheduling Order**

13         The Three-Judge Court's prior scheduling order, which was issued on October 10,

14    2007, mandated that direct testimony of expert witnesses will be by expert reports and

15    no more than thirty minutes of live testimony, and that direct testimony of percipient

16    witnesses would be through affidavit and no more than 15 minutes of direct testimony.

17    *See Coleman* Docket 2456 at 6.  Plaintiffs respectfully request that the new scheduling

18    order contain these same provisions.  In addition, plaintiffs request that the affidavits of

19    percipient witnesses be exchanged as part of the parties' pre-trial statement.

**E.**     **Time to Respond to Written Discovery and Additional Prison Inspections**

22         Magistrate Judge Moulds' October 30, 2007 Order requires that "responses to any

23    discovery requests served on or after October 25, 2007 shall be due twenty-one days

24    from the date of service."  *See Coleman* Docket 2495 at 7.  That Order also states:

25    "Defendants shall provide reasonable notice to plaintiffs and to CCPOA of any prison site

26    inspection by any defense expert and counsel for plaintiffs and CCPOA shall be

27    permitted to attend any such site inspection."  *Id.*  Plaintiffs oppose any attempt by

28    defendants or the intervenors to be relieved from this Order.

- 5 -

1    Since this case involves overcrowding in the prisons, inspections of those

2    conditions by plaintiffs and their medical and correctional experts is critical to the fact-

3    finding process.  In the fall of last year, both plaintiffs and defendants conducted such

4    inspections.  Defendants' position now is that further inspections are "irrelevant."

5    Plaintiffs believe that their previous inspections are adequate, provided that defendants

6    are not permitted to introduce evidence of conditions occurring after the last inspection

7    or argue that plaintiffs' evidence does not reflect current conditions.

8         **F.    Defendants' Request for a Dispositive Motion Schedule**

9    Plaintiffs are not aware of any testimony by their experts that overcrowding is not

10   the primary cause of defendants' inability to provide constitutionally adequate medical

11   and mental healthcare or that relief other than a prisoner release order will remedy the

12   constitutional violations.  In light of the significant dispute between the parties about

13   these issues, plaintiffs suggest a preliminary order from the Court requiring defendants

14   to provide more detail as to which experts made these statements, when they were

15   made, and what the statements were.  In the absence of a *prima facie* showing that

16   there is not a significant dispute about the facts, the Court should not entertain a

17   summary judgment motion.

18   **IV.    DEFENDANT-INTERVENORS' PROPOSAL**

19   The Legislator, Law Enforcement, County, Sonoma County, and District Attorney

20   Defendant-Intervenors propose the following schedule:

21        June 30, 2008              Discovery reopens

22        August 15, 2008            Last day to complete written discovery and non-expert

23   depositions.

24        August 15, 2008            Expert disclosures due.

25        August 22, 2008            Last day to disclose rebuttal experts.

26        September 5, 2008          Last day to complete expert discovery.

27        September 17, 2008         Last day to file dispositive motions.

28        September 29, 2008         Last day to file oppositions to dispositive motions.

- 6 -

| | | |
|---|---|---|
| 1 | October 8, 2008 | Last day to file replies in support of dispositive motions. |
| 2 | October 15, 2008 | Hearing on dispositive motions. |
| 3 | October 20 , 2008 | Last day to file motions *in limine* and pre-trial briefs, serve |
| 4 | trial declarations of percipient witnesses. | |
| 5 | October 27, 2008 | Pre-Trial conference and hearings on motions *in limine*. |
| 6 | November 17, 2008 | Trial -- 15 days. |

7  / / / /

8  / / / /

9  / / / /

10  / / / /

11  / / / /

12  / / / /

13  / / / /

14  / / / /

15  / / / /

16  / / / /

17  / / / /

18  / / / /

19  / / / /

20  / / / /

21  / / / /

22  / / / /

23  / / / /

24  / / / /

25  / / / /

26  / / / /

27  / / / /

28  / / / /

- 7 -

1    DATED:  June 9, 2008                    HANSON BRIDGETT LLP

2

3                                            By:___/s/ Paul B. Mello_____
                                                PAUL B. MELLO
4                                               Attorneys for Defendants Arnold
                                                Schwarzenegger, et al.
5
     DATED:  June 9, 2008                    EDMUND G. BROWN JR.
6                                            Attorney General of the State of California

7

8                                            By:___/s/ Rochelle C. East_____
                                                ROCHELLE C. EAST
9                                               Attorneys for Defendants Arnold
                                                Schwarzenegger, et al.
10
     DATED:  June 9, 2008                    AKIN GUMP STRAUSS HAUER & FELD
11

12

13                                           By:___/s/ Chad A. Stegeman_____
                                                CHAD A. STEGEMAN
14                                              Attorney for Republican Assembly and Senator
                                                Defendant-Intervenors
15   DATED:  June 9, 2008                    JONES & MAYER

16

17                                           By:___/s/ Kimberly Hall Barlow_____
                                                KIMBERLY HALL BARLOW
18                                              Attorney for Sheriff, Probation, Police Chief, and
                                                Corrections Defendant-Intervenors
19
20   DATED:  June 9, 2008                    OFFICE OF THE DISTRICT ATTORNEY
                                             COUNTY OF RIVERSIDE
21

22
                                             By:___/s/ William E. Mitchell_____
23                                              WILLIAM E. MITCHELL
                                                Attorneys for District Attorney Defendant-
24                                              Intervenors

25

26

27

28
                                        - 8 -
     DEFS.', PLS.', AND INTERVENORS' JOINT STATUS CONFERENCE STATEMENT
     CASE NOS. CIV S-90-0520 LKK JFM & C 01-1351 TEH                          1484849.1

1    DATED:  June 9, 2008              COUNTY OF SANTA CLARA

2

3                                      By: ___/s/ Theresa Fuentes_____
                                       THERESA FUENTES
4                                      Attorney for County Intervenors

5    DATED:  June 9, 2008              SONOMA COUNTY

6

7                                      By: ___/s/ Richard M. Flores_____
                                       RICHARD M. FLORES
8                                      Chief Deputy County Counsel
                                       Attorney for Sonoma County Intervenors
9
     DATED:  June 9, 2008              PRISON LAW OFFICE
10

11

12                                     By: ___/s/ Sara Norman_____
                                       SARA NORMAN
13                                     Attorney for *Plata* Plaintiffs

14   DATED:  June 9, 2008              ROSEN, BIEN & GALVAN, LLP

15

16                                     By: ___/s/ Amy Whelan_____
                                       AMY WHELAN
17                                     Attorney for *Coleman* Plaintiffs

18   DATED:  June 9, 2008              CARROLL, BURDICK & MCDONOUGH LLP

19

20                                     By: ___/s/ Natalie Leonard_____
                                       NATALIE LEONARD
21                                     Attorney for California Correctional Peace
                                       Officers' Association Legal Department
22                                     Intervenors

23

24

25

26

27

28
                                      - 9 -

1      I, Paul B. Mello, am the ECF user whose ID and password are being used to file

2   the Defendants', Plaintiffs', and Intervenors' Joint Status Conference Statement.  In

3   compliance with General Order 45 X.B., I hereby attest that Rochelle East, William

4   Mitchell, Chad Stegeman, Sara Norman, Amy Whelan, Natalie Leonard, Kimberly Hall

5   Barlow, Theresa Fuentes, and Richard Flores have concurred in this filing.

6   DATED:  June 9, 2008                    HANSON BRIDGETT LLP

7

8                                     By:   /s/ Paul B. Mello
                                        PAUL B. MELLO
9                                       Attorneys for Defendants Arnold
                                        Schwarzenegger, et al.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.', PLS.', AND INTERVENORS' JOINT STATUS CONFERENCE STATEMENT
CASE NOS. CIV S-90-0520 LKK JFM & C 01-1351 TEH                    1484849.1