# EXHIBIT E

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

|  |  |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>ORDER FOR PRETRIAL PREPARATION |

The Court has carefully considered the pretrial dates and issues discussed by the parties and intervenors in their June 9, 2008 written statement and at the June 27, 2008 status conference. With good cause appearing, the Court orders as follows:

1. **Dispositive motion schedule:**

   a.      In their June 9, 2008 statement, Defendants contended that a dispositive motion schedule would be appropriate based on testimony by Plaintiffs' experts that overcrowding was not the primary cause of the constitutional violations at issue and that a prisoner release order was not the only means of remedying the constitutional violations. At the June 27, 2008 status conference, Defendants further represented that they could file a

Case 3:01-cv-01351-TEH   Document 1294-7   Filed 07/02/2008   Page 2 of 5

1  statement detailing such testimony in short order.  Accordingly, on or before **July 10, 2008,**

2  Defendants shall file with the Court a list of the specific testimony by Plaintiffs' experts that

3  Defendants contend eliminates any issue of material disputed facts in these proceedings.  No

4  responses to Defendants' filing shall be required nor accepted unless otherwise ordered by

5  this Court.  The Court will review Defendants' filing to determine whether a summary

6  judgment schedule would be appropriate and will issue an appropriate scheduling order as

7  necessary.

8         b.     Defendants and Defendant-Intervenors represented to the Court at the

9  June 27, 2008 status conference that they may seek to file a motion to dissolve the

10  proceedings before this Court based on changed circumstances.  Any such motions shall be

11  filed within fourteen calendar days after the close of the current state legislative session, or

12  by **September 8, 2008,** whichever is later.  Oppositions to such motions shall be filed no

13  later than twenty-one calendar days after the motion is filed, and replies shall be filed no later

14  than twenty-eight calendar days after the motion is filed.  No oral argument will be heard

15  unless otherwise ordered by the Court.

16      2.    **Discovery:**

17         a.    As ordered at the June 27, 2008 status conference, the magistrate

18  judge's October 30, 2007 order requiring discovery responses within twenty-one calendar

19  days of service shall remain in full effect.

20         b.    On or before **August 1, 2008,** the parties and intervenors shall disclose

21  lists of all non-expert witnesses whom they intend to call to testify at trial.[1]  Absent a

22  showing of very good cause, depositions of non-testifying witnesses shall be prohibited, as

23  will trial testimony by any witnesses who are not timely disclosed.  Motions to depose a non-

24  testifying witness shall be brought before the magistrate judge.  Motions to allow a non-

25  disclosed witness to testify at trial shall be brought before this Court.

26

27  _____

28      [1]These disclosures need not include witnesses who may only be called for impeachment or rebuttal.

1    c.  Expert disclosures shall be made, and expert reports exchanged, on or

2 before **August 15, 2008.**

3    d.  Rebuttal expert disclosures shall be made, and rebuttal expert reports

4 exchanged, on or before **August 27, 2008.**

5    e.  Additional site inspections of prison facilities may be conducted through

6 and including **August 30, 2008.**  No evidence of changed prison conditions after August 30,

7 2008, shall be admitted at trial.  This prohibition does not include evidence of legislative

8 changes that may occur after August 30, 2008.

9    f.  Non-expert discovery shall be completed on or before **September 8,**

10 **2008.**

11    g.  Expert discovery shall be completed on or before **October 6, 2008.**

12   3.  **Motions in limine:**  Any motions in limine shall be filed on or before

13 **October 20, 2008.**  Oppositions shall be filed on or before **October 30, 2008.**  No oral

14 argument will be heard unless otherwise ordered by the Court.

15   4.  **Other pretrial filings:**  On or before **October 30, 2008,** the parties and

16 intervenors shall file a joint pretrial conference statement, all expert reports, and all trial

17 declarations of percipient witnesses.

18   5.  **Pretrial conference:**  The Court will conduct a pretrial conference on

19 **Monday, November 10, 2008, at 1:30 PM,** in Courtroom Number 12 of the United States

20 District Court for the Northern District of California, located at 450 Golden Gate Avenue,

21 San Francisco, California.  Pursuant to 28 U.S.C. § 2284(b)(3), Judge Henderson may

22 conduct the pretrial conference individually, although Judges Reinhardt and Karlton may also

23 choose to participate.

24   6.  **Trial:**

25    a.  As ordered at the June 27, 2008 status conference, the Court's

26 October 10, 2007 order regarding direct testimony shall remain in effect.  Thus, "[d]irect

27 testimony from all percipient witnesses will be presented by affidavit and no more than

28 fifteen minutes of live testimony, followed by cross-examination.  Direct testimony from

1  expert witnesses will be presented through their expert reports and no more than thirty

2  minutes of live testimony, followed by cross-examination." Oct. 10, 2007 Order at 6.  As the

3  Court explained at the status conference, its allowing time to present live testimony on direct

4  is not intended to encourage the parties or intervenors to do so.

5         b.     Trial will begin on **November 18, 2008, at 1:30 PM.**  Trial shall run on

6  Tuesdays from 1:30 PM to 4:00 PM, and on Wednesdays through Fridays from 9:15 AM to

7  4:00 PM.[2]  There will be no trial on Mondays, or on November 25 through November 28.

8  Trial shall be held in the Ceremonial Courtroom for the United States District Court for the

9  Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

10  California.

11         c.     Whether trial should be bifurcated remains under submission.  Trial will

12  not be bifurcated unless otherwise ordered by the Court.

13         d.     Intervenors are reminded of this Court's February 8, 2008 order that

14  "[a]t trial, one attorney may question each witness on behalf of all intervenors.  The same

15  attorney need not question all witnesses.  Intervenors will, however, present their evidence

16  and question other parties' witnesses through not more than a total of three different

17  attorneys throughout the trial."  Feb. 8, 2008 Order at 2.

18

19  **IT IS SO ORDERED.**

20

21  Dated:   07/02/08                      /s/

                                     STEPHEN REINHARDT

22                                       UNITED STATES CIRCUIT JUDGE

                                     NINTH CIRCUIT COURT OF APPEALS

23

24

25

26

---

27      [2]The Court may revisit the daily trial schedule as the trial date nears.  It will provide

28  the parties and intervenors with as much notice as possible if there are any scheduling changes.

1

2

3    Dated:  07/02/08

LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

4

5

6

7    Dated:  07/02/08

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
SARA NORMAN, Bar No. 189536
ALISON HARDY, Bar No. 135966
REBEKAH EVENSON, Bar No. 207825
E. IVAN TRUJILLO, Bar No. 228790
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | ) No. Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | ) **THREE-JUDGE COURT** |
| vs. | ) **PLAINTIFFS' THIRD REQUEST FOR** |
| ARNOLD SCHWARZENEGGER, et al., | ) **INSPECTION** |
| Defendants | ) |
| MARCIANO PLATA ,et al., | ) No. C01-1351 TEH |
| Plaintiffs, | ) **THREE-JUDGE COURT** |
| vs. | ) |
| ARNOLD SCHWARZENEGGER, et al., | ) |
| Defendants | ) |

1  **PROPOUNDING PARTIES:**    Plaintiffs Marciano Plata

2  **RESPONDING PARTIES:**    Defendants Schwarzenegger, et al.

3  **SET NUMBER:**    Three

4  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

5         PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34,

6  Plaintiffs Marciano Plata et al. submit the following Third Request for Inspection to

7  Defendants Arnold Schwarzenegger, et al. (combined, the "Defendants") for plaintiffs and

8  plaintiffs' experts to inspect North Kern State Prison, California Substance Abuse and

9  Treatment Facility, Pleasant Valley State Prison, California State Prison at Solano, and High

10  Desert State Prison.

11                              **DEFINITIONS**

12         Unless otherwise indicated, the following definitions and terms shall apply to these

13  Requests for Inspection:

14         1.      The term "all" means any and all.

15         2.      The term "any" means each and every.

16         3.      The term "CDCR" refers to the California Department of Corrections and

17  Rehabilitation, its agents, employees and anyone acting on its behalf.

18         4.      The term "confer with" means to interview, formally or informally, CDCR

19  personnel with whom plaintiffs' experts and plaintiffs' counsel meet and/or encounter during

20  the course of the inspection.

21         5.      The term "class member" means any prisoner who is a member of the plaintiff

22  class under *Plata v. Schwarzenegger* and/or *Coleman v. Schwarzenegger*.

23         6.      The term "inspect" means to physically walk through and observe CDCR prison

24  facilities, including, but not limited to, all areas in which California state prisoners sleep, eat,

25  bathe, exercise, and receive medical attention, and areas in which such prisoners are received

26  at the prison and/or processed for release from the prison.  The term further means to review

27  any records, including, but not limited to, logbooks relating to class members' movement

28

1   within the prison and to off-site medical care providers and/or relating to class members'

2   access to medical or mental health care.

3                                    **INSTRUCTIONS**

4          1.    At each of the prisons to be INSPECTED, plaintiffs' experts request an interview

5   with the prison's Warden, Associate Warden for Health Care and the prison's highest ranking

6   medical and mental health officers, including, when applicable, the Chief Medical Officer,

7   Chief Physician & Surgeon and Director of Nursing, preferably at the beginning of the

8   inspection. Plaintiffs' counsel anticipate that the initial interview will take approximately 30-60

9   minutes.

10         2.    At the beginning of each inspection, plaintiffs also request a list of all CLASS

11  MEMBERS from that prison that were, during the previous three months, treated as in-patients

12  and discharged from an off-site hospital or were treated at an off-site hospital Emergency

13  Room.  For each CLASS MEMBER, please list the reason for the hospitalization or

14  Emergency Room visit.  Plaintiffs' expert will review the unit health records for some of the

15  CLASS MEMBERS listed.

16         3.    During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts will

17  CONFER WITH the CDCR staff at the prison, including but not limited to the correctional

18  staff, administrative staff, and medical staff, regarding access of the *Plata* CLASS MEMBERS

19  to medical care, and as to issues of housing, programming, exercise and activities for class

20  members as they relate to medical care.

21         4. During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts may CONFER

22  WITH CLASS MEMBERS at the prison regarding their access to medical care, and as to

23  issues of housing, programming, exercise and activities for class members as they relate to

24  medical care.

25         5. If, during the INSPECTION, the plaintiffs' experts conclude that they require a

26  private setting to CONFER WITH certain CDCR staff or CLASS MEMBER(S), defendants

27  will provide an area where plaintiffs' experts can CONFER WITH the staff member or CLASS

28

[219945-1]

1  MEMBER(S), in the presence of only plaintiffs' and defendants' counsel, and the Receiver's

2  representative, if any.

3      6.      Plaintiffs' experts will not review CLASS MEMBERS' central files. Plaintiffs'

4  experts will review some CLASS MEMBERS' unit health records, including, but not limited

5  to unit health records from the list described in Instruction No. 2, above.

6      7.      As part of the INSPECTIONS, plaintiffs may request to conduct confidential

7  interviews with five to ten CLASS MEMBERS and review their unit health records. If so,

8  plaintiffs' counsel will notify defendants at least three days prior to each INSPECTION, and

9  provide the names and CDCR numbers of each CLASS MEMBER at that time. These CLASS

10  MEMBER interviews will be conducted only by plaintiffs' counsel and plaintiffs' experts.

11                          **REQUESTS FOR INSPECTION**

12      1.      On July 14, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel

13  and plaintiffs' experts request to INSPECT North Kern State Prison.

14      2.      On July 15, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel

15  and plaintiffs' experts request to INSPECT California Substance Abuse Treatment Facility.

16      3.      On July 16, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel

17  and plaintiffs' experts request to INSPECT Pleasant Valley State Prison.

18      4.      On July 17, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel

19  and plaintiffs' experts request to INSPECT California State Prison at Solano.

20      5.      On July 18, 2008 from 10:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel

21  and plaintiffs' experts request to INSPECT High Desert State Prison.

22

23  Dated:  June 30, 2008                    Respectfully submitted,

24

25

26                                  _____/s/_____
                                    Alison Hardy
27                                  Prison Law Office
                                    Attorneys for Plaintiffs
28

# EXHIBIT G

16TH STREET, SUITE 1600
17TH FLOOR
SAN FRANCISCO, CA 94104

FAX 415-399-3838

415-399-3841
martin@dfdlaw.com



**FUTTERMAN**

**& DUPREE LLP**

ATTORNEYS AT LAW

July 8, 2008

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Donald Specter
Steve Fama
Alison Hardy
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710-1916

    Re: *Plaintiffs' Third Request For Inspection in Three-Judge Court Proceeding*

Dear Counsel:

   Yesterday, July 7, I received by facsimile transmission a copy of Plaintiffs' Third Request for Inspection ("Inspection Request"), which had not previously been served on the Receiver. The Inspection Request purports to schedule inspections in *Plata* at the following prisons on the following dates: North Kern State Prison (July 14); SATF (July 15); Pleasant Valley (July 16); CSP-Solano (July 17); High Desert (July 18). Among other things, the Inspection Request indicates that plaintiffs' experts will "interview . . . the prison's highest ranking medical and mental health officers, including, when applicable, the Chief Medical Officer, Chief Physician & Surgeon and Director of Nursing; "will confer with . . . medical staff" and will seek to review unit health records for some unspecified number of unidentified patient inmates.

   I have had the opportunity to review the Inspection Request with the Receiver and his senior staff. The Receiver is unable to accommodate the Inspection Request for any and all of the following reasons.

1. The three-judge Court has issued two orders which make it unmistakably clear that testimonial discovery from the Receiver and his staff will not be permitted in this matter. Plata Docket ## 988, 1226. The purportedly informal "interviews" with the senior medical staff at each prison is effectively an end run on the prohibition against testimonial discovery. As a result, the Receiver does not intend to subject his senior staff to such discovery.

Donald Specter et al.
July 8, 2008
Page 2

2. On a number of occasions we have informed your office that if you desire information from the Receiver or his staff, including medical staff, then it is necessary that you first meet and confer with me to determine whether, and to what extent, the Receiver can accommodate the request for information. The Receiver is not a party to the three-judge Court proceeding and discovery served on the defendants is not effective to require the Receiver or his staff, including medical personnel, to provide the requested information or otherwise to respond to the discovery.

3. I first received the Inspection Request yesterday, barely a week before the inspections are scheduled to begin.[1] The proposed "interviews" of senior medical staff, conferences with other medical staff on an ad hoc basis, and demands that staff locate and retrieve medical records for an unspecified number of inmates will interfere with the important work in which local medical staff are engaged on a daily basis. In addition to the ongoing delivery of care, the Receiver has commenced several initiatives to improve care at the local level, which initiatives are themselves making extraordinary demands on prison medical personnel. It will be unduly disruptive to conduct the proposed inspections, with their attendant demands on local medical staff, particularly on such short notice. Local medical staff cannot be expected to drop everything else that they are doing to comply with such improper discovery requests.

4. Finally, it is by no means clear what the purpose of these inspections is or why it is necessary to involve local medical staff. Several months ago, your office conducted quite a few (also hastily arranged) inspections by your experts. The Receiver cooperated at that time, despite the fact that the inspections were intrusive, disruptive and required sending Receiver's representatives to prisons throughout the state, and sometimes more than one prison in one day. The Receiver and his staff cannot be expected to continue to accommodate these burdensome inspections in the face of the many other competing, and significantly more critical, demands they must address each day.

In view of the foregoing, the Receiver is unable to assist you with the proposed inspections and we will instruct local medical staff that they are neither authorized nor expected to cooperate with or participate in such inspections. Finally, you are not

---

[1] Alison Hardy called yesterday to discuss this Inspection Request and acknowledged that the failure to serve the Receiver was "a fairly significant screw up" (or words to that effect). While we appreciate the recognition that the failure to provide adequate notice was unjustifiable, it does nothing to relieve the extreme, and we believe, unnecessary burden on the local medical staff.

Donald Specter et al.
July 8, 2008
Page 3

authorized to interview, question, confer with or make any demand upon local medical staff without prior approval from the Receiver.  Please call with any questions.

Very truly yours,

Martin H. Dodd

cc: (All via e-mail)
    J. Clark Kelso
    John Hagar
    Jared Goldman
    Linda Buzzini
    Terry Hill
    Paul Mello
    Rochelle East

EXHIBIT H



FILED

FEB 4 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

JUN 1 3 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

AUG 1 9 2002

By L. TOWRE



1  BILL LOCKYER, Attorney General
   of the State of California
2  PETER J. SIGGINS,
   Chief Deputy Attorney General
3  ROBERT R. ANDERSON
   Chief Assistant Attorney General
4  PAUL D. GIFFORD
   Senior Assistant Attorney General
5  JOHN M. APPELBAUM, SBN 149643
   Supervising Deputy Attorney General
6     1300 I Street, Suite 125
      P.O. Box 944255
7     Sacramento, CA 94244-2550
      Telephone: (916) 445-2389
8     Fax: (916) 324-5205

9  Attorneys for Defendants Davis, Gage, Presley,
   Alameida, and Pickett
10 CA2001CS0001

11

12                 UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14

15 ·MARCIANO PLATA, et al.,                    No. C-01-1351 TEH

16                              Plaintiffs,     STIPULATION FOR
                                               INJUNCTIVE RELIEF
17        v.

18 GRAY DAVIS, et al.

19                              Defendants.

20                          INTRODUCTION

21        1. The parties enter into this stipulation to address issues pertaining to

22 medical care services provided by the California Department of Corrections (CDC). The

23 plaintiffs are California state prisoners who have serious medical needs. The defendants

24 include the Governor, Director of Finance, Youth and Adult Correctional Agency·

25 Secretary, Director of Corrections, and Deputy Director, Health Care Services Division,

26 and are sued in their official and individual capacities as state officials responsible for the

27 operation of the CDC and its health care delivery system.

28        2. This action was filed by plaintiffs on April 5, 2001, and an amended

1

1  complaint was filed on August 20, 2001. The action alleges that plaintiffs are not
2  receiving constitutionally adequate medical care as required by the Eighth Amendment to
3  the U.S. Constitution and that defendants are not complying with the Americans with
4  Disabilities Act (ADA) and § 504 of the Rehabilitation Act.

5        3. The parties have conducted informal negotiations since July 1999, in an
6  effort to resolve plaintiffs' demand that medical services be improved. Those
7  negotiations have been undertaken at arm's length and in good faith between plaintiffs'
8  counsel and high ranking state officials and their counsel. The parties have reached
9  agreement on procedures that the parties will follow in this case for resolving disputes
10  concerning the constitutional adequacy of medical services. The parties freely,
11  voluntarily, and knowingly with the advice of counsel enter into this Stipulation for that
12  purpose.

13        WHEREAS, a dispute exists between the parties as to the extent to which
14  CDC's provision of inmate-medical care meets constitutionally-mandated minimum
15  standards;

16        WHEREAS, this dispute arose over the course of the last fifteen years, and
17  culminated in plaintiffs filing this statewide-medical class action;

18        WHEREAS, the Governor of the State of California over the past three
19  years has allocated substantial new resources to improve the medical system and is
20  committed to continuing the improvements to meet applicable standards;

21        WHEREAS, this stipulation is intended to be narrowly drawn to meet those
22  applicable standards.

23

24  ## A. Terms and Conditions

25        4. The CDC shall implement Health Care Services Division Policies and
26  Procedures (Policies and Procedures), to be filed with the Court on February 15, 2002.
27  Defendants shall make all reasonable efforts to secure the funding necessary to implement
28  the Policies and Procedures. The Policies and Procedures are designed to meet or exceed

2

1  the minimum level of care necessary to fulfill the defendants' obligation to plaintiffs

2  under the Eighth Amendment of the United States Constitution.  It is the intent of this

3  Stipulation to require defendants to provide only the minimum level of medical care

4  required under the Eighth Amendment.  Nothing in this stipulation shall be construed to

5  require more of the defendants than is necessary to enforce the Eighth Amendment of the

6  United States Constitution.  Any disputes as to whether defendants' Policies and

7  Procedures and the Audit Instrument will satisfy their obligations under the Eighth

8  Amendment shall be resolved pursuant to the dispute resolution procedures set forth in ¶¶

9  26-28

10       5.   The CDC shall implement the Policies and Procedures at each prison

11  pursuant to the following schedule, which may be rearranged for the purpose of grouping

12  or clustering improvements pursuant to ¶ 24 below:

13

14  Calendar Year[1] 2003:      Northern California Women's Facility, Valley State Prison for
15                             Women, California State Prison - Corcoran; High Desert State
                               Prison, California State Prison - Sacramento, and Salinas
16                             Valley State Prison.[2]

17  Calendar Year 2004:        California Correctional Institution, Mule Creek State Prison,
18                             San Quentin State Prison, Substance Abuse Treatment
                               Facility, and California State Prison - Solano.

19  Calendar Year 2005:        Centinela State Prison, California Institute for Men,
20                             California Men's Colony, California Medical Facility, and
                               North Kern State Prison - II (Delano II).

21  Calendar Year 2006:        California Rehabilitation Center, Deuel Vocational Center,
22                             Folsom State Prison, California State Prison - Los Angeles
                               County, and Pleasant Valley State Prison.

23

24  _____

25       1.  The Calendar Year begins on January 1st and ends on December 31st.

26       2.  If, pursuant to ¶ 8, below, the district court determines that prisoners at the
27  California Institution for Women and the Central California Women's Facility are part of
    the plaintiff class, the Policies and Procedures shall be implemented at these prisons in
28  Calendar Year 2003.

3

| | | |
|---|---|---|
| 1 | Calendar Year 2007: | California Correctional Center, Calipatria State Prison, Chuckawalla Valley State Prison, North Kern State Prison, and Richard J. Donovan Correctional Facility. |
| 2 | | |
| 3 | Calendar Year 2008: | Avenal State Prison, Correctional Training Facility, Ironwood State Prison, Sierra Conservation Center, and California State Prison - Wasco. |
| 4 | | |

Prior to Calendar Year 2003, CDC shall initiate appropriate hiring procedures to hire medical staff for employment beginning January 1ˢᵗ.

6.    Beginning January 1, 2003 defendants shall implement the following practices or procedures at each institution:

    a.    Registered Nurses shall staff the emergency clinics 24 hours per day every day.

    b.    Inter-institution transfers shall occur pursuant to the protocol established in the Policies and Procedures.

    c.    Treatment protocols set forth in the Policies and Procedures will be implemented at all institutions subject to the availability of additional resources.

    d.    A priority ducat system consistent with CDC regulations shall be instituted.

    e.    Outpatient special diets will be available for patients with liver and kidney end-stage organ failure.

7. The parties understand and agree that the 602/inmate-grievance procedure is an integral part of the provision of essential medical care and is integrated into the Policies and Procedures. Accordingly, the parties agree that, in the first instance, all complaints regarding medical care to an individual inmate, except those requiring urgent medical care, shall be submitted to defendants after utilizing the inmate grievance procedure. If after the appeal has reached the third director's level of review and all administrative relief has been exhausted, or the CDC has not responded to the inmate's appeal within 30 days at the Director's level of review and plaintiffs contend that the grievance process has failed to adequately address the problem, plaintiffs may bring the

4

1   medical care concern to the attention of defense counsel, who shall respond in writing

2   within 30 days. Plaintiffs' counsel may also contact the Chief Medical Officers at the

3   institutions to inquire about the care furnished to particular inmates on a monthly basis.

4   Defendants' counsel shall be notified about such contacts.

5          8. The parties agree that this action shall be maintained as a class action

6   pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and that the class

7   consists of all prisoners in the custody of the CDC with serious medical needs, except

8   those incarcerated at Pelican Bay State Prison. The parties disagree about whether

9   prisoners incarcerated at the California Institution for Women (CIW) and the Central

10  California Women's Facility (CCWF), previously litigated in a class action entitled

11  *Shumate v. Wilson* (E.D. Cal.) CIV S-95-0619 WBS JFM P, should be members of the

12  class. To resolve this dispute defendants shall move within sixty days after this

13  Stipulation is approved by the Court for an order determining whether prisoners at CCWF

14  and CIW should be excluded from the class on the sole ground that they are not similarly

15  situated to plaintiffs because of the previously litigated class action entitled. The motion

16  will not otherwise alter the burden of proof under Rule 23 or create a presumption

17  concerning their inclusion.

18

19      **B. Access to Information**

20          9. Subject to the limitations set forth in this Stipulation, plaintiffs' counsel

21  and the experts shall have reasonable access to the institutions, staff, inmates and

22  documents necessary to properly evaluate the adequacy of the medical care delivery

23  system and the proposed remedies therefor, including the Policies and Procedures and the

24  Audit Instrument, the schedule and other items required by this Stipulation. The parties

25  shall cooperate so that plaintiffs' counsel and the experts have reasonable access to

26  information reasonably necessary to perform their responsibilities required by this

27  Stipulation without unduly burdening defendants.

28

5

1         **10.** Plaintiffs' counsel and defendants shall negotiate a discovery plan for

2 informal discovery that shall provide to plaintiffs' counsel information from the

3 Department of Corrections' headquarters and from individual institutions about the

4 medical services available to members of the plaintiffs' class, the adequacy of any

5 remedial measures proposed or undertaken by defendants, and defendants' compliance

6 with this Stipulation. Periodic monthly meetings will be scheduled between defendants'

7 and plaintiffs' counsel to discuss stipulation implementation and access to information.

8         **11.** The discovery plan shall include, but not be limited to, access to the

9 following documents and other material subject to a protective order agreed to by the

10 parties:

11         **a.** The complete medical files of members of the plaintiff class as

12 reasonably necessary;

13         **b.** Internal reviews and audits of the medical services provided to

14 members of the plaintiffs' class, including QMAT and 602 survey;

15         **c.** Non-privileged documents that relate to the amount budgeted for

16 providing medical care to prisoners. No documents reflecting the budget for any

17 particular upcoming budget year shall be discoverable until after the release of the

18 Governor's Budget. This is not intended to prohibit the production of policy and

19 planning documents.

20         **d.** Documents maintained at individual institutions and memoranda

21 transmitted to CDC headquarters from individual institutions that are reasonably relevant

22 to assessing defendants' compliance, including but not limited to;

23                 (1) All audits of medical care,

24                 (2) Emergency Response Drill Reports,

25                 (3) Summary of Emergency Responses,

26                 (4) Medical Staff Vacancy Reports,

27                 (5) Medical Staff Training Statistics,

28                 (6) Inter-institution Transfer Log for medical transfers,

1               (7)  Key indicator reports as are available,

2               (8)  Medical related inmate appeals (602's) and responses, and

3               (9)  Medical Log Books

4        e.  Plaintiffs shall not have access to personnel files.

5        f.  The parties have been unable to agree on whether plaintiffs must be

6             provided with the minutes of continuous quality improvement

7             meetings, including attachments, and death reviews, utilization

8             management data logs, and other peer review documents.  The

9             parties agree the Court will decide this issue.

10        g.  Plaintiffs' counsel shall be given access to CDC training related to

11             implementation of this Stipulation for the first year that any such

12             training is offered on any medical topic.

13      **12.**  Plaintiffs' counsel and their medical consultants shall have the

14  opportunity to conduct no more than one tour at an institution per calendar quarter, with a

15  maximum of 40 tours in total for all institutions each calendar year.  Tours shall be

16  scheduled in a manner consistent with the requirements of this Stipulation and generally

17  in accordance with the priorities established by the schedule promulgated pursuant to ¶ 5.

18  Plaintiffs' counsel may resume tours based upon a finding of substantial noncompliance

19  pursuant to ¶ 15 .

20      **13.**  Tours by plaintiffs' counsel shall include reasonable access to housing

21  units and all facilities where medical services are provided.  Defendants shall make

22  reasonable efforts to make available for interview departmental, custodial, clinical and

23  program staff that have direct or indirect responsibility for providing medical services to

24  class members.  Defendants shall direct institution staff to reasonably cooperate with

25  plaintiffs' counsel and the experts in obtaining the necessary information.  Plaintiffs'

26  counsel shall be able to have reasonable brief discussions with inmates during the tours

27  and shall be able to provide business cards with their name and address for distribution to

28  specified individual inmates.  Defendants will also continuously post notices informing

7

1    all inmates at each institution that complaints regarding the provision of medical care may

2    be sent to counsel for the plaintiff class in this case. Defendants also shall provide

3    plaintiffs' counsel reasonable access to confidential interviews with inmates before or

4    after the tours, during regular business hours without regard to regular visiting hours and

5    days. Upon a request by plaintiffs' counsel at least two weeks prior to the tour,

6    defendants shall make available for inspection and/or copying the medical files of

7    specified inmates. If the need arises within one week prior to the tour, plaintiffs counsel

8    may designate additional medical files for inspection and/or copying.

9         **14.** If any party fails to make himself or herself, an employee, or an agent

10   reasonably available for interview and the parties agree, the other party may depose the

11   party, the employee, or agent who has not been made available. If the parties are unable

12   to agree, the court may order such deposition of the party, employee, or agent if such

13   deposition is reasonably necessary to the conduct of the litigation.

14        **15.** Plaintiffs' counsel and their medical consultants will cease tours at an

15   institution after a particular institution has been found to be in substantial compliance as

16   set forth in ¶ 22, below. Tours may resume at a particular institution if the experts find,

17   or in the event a party disagrees with the experts, the Court finds there has not been

18   substantial compliance on the part of defendants, provided that such tours shall be limited

19   to the issue or components not found to be in substantial compliance. Non-compliance

20   may be corrected by substantial compliance with the existing Policies and Procedures or

21   by modifying the Policies, Procedures and Audit Instrument pursuant to ¶ 24 and

22   complying with the Policies and Procedures as modified. Any disputes about whether an

23   institution is in substantial compliance shall be resolved pursuant to the procedures set

24   forth in ¶¶ 26-28, below.

25

26      **C. Independent Court Experts**

27        **16.** The parties agree to jointly request that the Court appoint experts

28   pursuant to Federal Rules of Evidence, Rule 706 to advise the Court on the adequacy and

8

1  implementation of defendants' Policies and Procedures and any other matter that
2  appropriately may be the subject of the experts' testimony. The parties shall propose to
3  the Court that the experts' duties specified in Exhibit A shall be provided to the experts
4  pursuant to Rule 706(a). The experts shall be entitled to reasonable compensation in an
5  amount approved by the Court and the costs for each expert shall be borne by defendants.

6       **17.** The parties agree that the Court should appoint Joe Goldenson, M.D.,
7  Michael Puisis and Maddie LaMarre as Rule 706 experts. In the event that any of these
8  experts can no longer serve, the parties shall attempt to agree on a replacement(s) within
9  30 days. In the event the parties cannot agree, they shall nominate experts in accordance
10  with Rule 706 of the Federal Rules of Evidence. The parties understand and agree that
11  the court may appoint a mutually agreeable fourth expert in the future. In the event that
12  the parties are unable to agree on a fourth expert, the court may appoint a fourth expert in
13  accordance with Rule 706 of the Federal Rules of Evidence.

14       **18.** With reasonable notice and subject to the limitations set forth in this
15  Stipulation, the Court experts shall have reasonable access to all parts of any institution,
16  all relevant documents, all individuals (including unprivileged interviews with staff or
17  inmates), medical meetings, proceedings and programs to the extent that such access is
18  reasonably needed to fulfill his or her obligations. If both parties agree, the court experts
19  may hire additional personnel, at defendants' expense, to assist them in performing their
20  duties. If both parties cannot agree, the court may authorize the hiring of additional
21  personnel, at defendants' expense, upon a showing by the court experts that such
22  additional personnel are reasonably necessary to the performance of their duties.

23

24  **D. Compliance**

25       **19.** Defendants shall audit each prison's compliance with the Policies and
26  Procedures consistent with the schedule set forth in ¶ 5, above.

27       **20.** Compliance with the Policies and Procedures shall be audited by using
28  an Audit Instrument which will be filed on February 15, 2002. This Audit Instrument

9

1    will be developed by the CDC in consultation with the independent court experts and

2    plaintiffs' counsel. The parties recognize that this instrument has not been tested and may

3    need to be modified to properly reflect the degree of actual compliance. No later than

4    January 15, 2004, the parties and the independent court experts shall meet and confer

5    about the need to modify the audit instrument. If all parties agree, the instrument shall be

6    modified. Any dispute about the need for modification shall be resolved pursuant to

7    paragraph 18 of the Stipulation for Injunctive Relief.

8         **21.**    The audit shall be conducted as follows:

9              a.    No less than 180 Unit Health Records will be reviewed.

10             b.    The records shall be selected at random, but the selection shall

11                   be stratified so that each category in the audit instrument is

12                   adequately represented.

13             c.    If defendants disagree with the appropriateness of an expert's

14                   answer to any question(s) in the audit instrument relating to the

15                   quality of medical care, the question(s) shall be reviewed by

16                   both expert physicians and shall only count against compliance

17                   if both experts agree.

18        **22.** A prison is in substantial compliance when all of the following

19    conditions are satisfied:

20             a.    The prison receives a score of 85% or higher on an audit

21                   conducted by the Court experts of the implementation of the

22                   Policies and Procedures using the Audit Instrument identified in

23                   ¶ 20. No score less than 85% shall be considered to satisfy this

24                   requirement, except that the experts shall have the discretion to

25                   find a prison providing adequate medical care in compliance if

26                   it achieves a score of no less than 75%. The score shall be

27                   calculated by averaging all of the indicators in the audit

28                   instrument.

10

b.   In determining substantial compliance, the experts will have to ascertain whether medical assessments or treatment plans provided to inmates comply with the Policies and Procedures. The medical assessment or treatment plan provided to the inmate shall be deemed adequate and appropriate under these policies and procedures only under any one of the following conditions:

(1)   The assessment or treatment plan is consistent with guidelines specifically adopted in the policies and procedures; or

(2)   The practitioner documents in the medical notes that he/she is deviating from adopted policies and procedures and that such deviation is consistent with the community standard; or

(3)   Where no treatment guidelines are specifically adopted in these policies and procedures, the assessment or plan is consistent with the community standard.[3]

In those instances in which a court expert finds that an assessment or treatment plan does not comply with community standards, defendants may request that the question(s) be reviewed by both expert physicians and shall only count against compliance if both experts agree.

c.   The prison is conducting minimally adequate death reviews and quality management proceedings.

---

3. As it is used here and throughout the policies and procedures, the phrase "community standard" means the standard of care imposed under the laws of the State of California upon health care providers licensed to practice in California.

11

1                d.     The prison generally has tracking, scheduling and medication

2                     administration systems adequately in place.

3                e.     At least two experts have not concluded that there is a pattern

4                     or practice that is likely to result in serious problems and those

5                     problems are not being adequately addressed.

6        **23.** Defendants shall notify plaintiffs and the court experts in writing when

7 they believe an institution has achieved substantial compliance. Within 60 days of such

8 notification, the experts shall conduct an audit to determine substantial compliance. If the

9 experts find substantial compliance, the experts shall return a year later, or as soon

10 thereafter as possible, to determine whether the institution has maintained substantial

11 compliance.

12

13      **E. Modification**

14        **24.** Defendants may modify the Policies and Procedures, and the Audit

15 Instrument at any time, provided that as modified the Policies and Procedures and the

16 Audit Instrument will meet or exceed the minimum level of care necessary to fulfill

17 defendants' obligation to plaintiffs under the Eighth Amendment of the United States

18 Constitution. Defendants will provide plaintiffs' attorneys with a copy of the original

19 Policies and Procedures or the Audit Instrument, the modified version and a strikeout

20 version with the changes at least 30 days prior to implementation. In an emergency or

21 when such delay will adversely affect the provision of medical care, notice will be

22 provided as soon as possible, but no later than the date the policy is implemented. If the

23 plaintiffs determine that the modifications conflict with any of the provisions of this

24 Stipulation, they shall cooperate with the defendants to reconcile the conflict. Any

25 disputes about whether the modifications will satisfy defendants' obligations under the

26 Eighth Amendment shall be resolved pursuant to the dispute resolution procedures set

27 forth in ¶¶ 26-28.

28

                            12

1           **25.** Plaintiffs also may seek to modify the Policies and Procedures and the

2 Audit Instrument at any time to secure the minimum level of medical care necessary to

3 fulfill the defendants' obligation to plaintiffs under the Eighth Amendment of the United

4 States Constitution. Plaintiffs must submit the proposed modification to defendants. Any

5 disputes as to whether defendants' Policies and Procedures, and the Audit Instrument

6 must be modified to satisfy their obligations under the Eighth Amendment shall be

7 resolved pursuant to the dispute resolution provisions set forth in ¶¶ 26-28.

8

9      **F. Dispute Resolution**

10           **26.** If plaintiffs contend that the Policies, Procedures and Audit Instrument,

11 as written or as modified, or any component thereof will not provide for the minimum

12 level of medical care necessary to fulfill the defendants' obligations to plaintiffs under the

13 Eighth Amendment of the United States Constitution, plaintiffs shall provide defendants

14 with a brief description of the perceived deficiencies and a request that the parties enter

15 into negotiations to resolve the question as to whether defendants' Policies, Procedures

16 and Audit Instrument satisfies the minimum requirements of the Eighth Amendment.

17 Upon receipt of plaintiffs' request for negotiations, any party may inform the Court's

18 experts of the area of disagreement and request that the experts evaluate the issue and

19 prepare a report.

20           **27.** At the option of any party, the parties shall conduct negotiations on any

21 issue in dispute. Such negotiations may include the Court's experts, and a person

22 satisfactory to the parties may at the election of either party, mediate any unresolved

23 issues. If the parties cannot agree on a mediator, the administrator of a private dispute

24 resolution service, such as JAMS will choose a mediator. Defendants shall pay the cost

25 of any private mediator. The substance of the mediation and any statements made by a

26 party, an employee of a party, or an agent of a party are confidential and not admissible in

27 any subsequent proceeding. The Experts' report(s) shall be admissible as evidence at the

28 request of any party in any judicial proceeding in this case.

13

1        **28.** If the process set forth in the preceding paragraph fails to resolve the

2  issue of whether defendants' Policies and Procedures and Audit Instrument, either as

3  written or as modified, provides for a level of medical care sufficient to meet the

4  minimum requirements of the Eighth Amendment of the United States Constitution,

5  either party shall have the option of seeking relief from the Court.  If the court determines

6  that defendants' Policies and Procedures and the Audit Instrument either as written or as

7  modified, does not provide a level of medical care sufficient to meet the minimum

8  requirements of the Eighth Amendment of the United States Constitution, the Court may

9  grant relief as authorized under the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. §

10  3626(a), which provides, in pertinent part:  "The court shall not grant or approve any

11  prospective relief unless the court finds that such relief is narrowly drawn, extends no

12  further than necessary to correct the violation of the Federal right, and is the least

13  intrusive means necessary to correct the violation of the Federal right."

14

15      **G.  Enforcement**

16        **29.** The Court shall find that this Stipulation satisfies the requirements of

17  18 U.S.C. § 3626(a)(1)(A) and shall retain jurisdiction to enforce its terms.  The Court

18  shall have the power to enforce the Stipulation through specific performance and all other

19  remedies permitted by law.  Neither the fact of this stipulation nor any statements

20  contained herein may be used in any other case or administrative proceeding, except

21  defendants, CDC, or employees thereof reserve the right to use this Stipulation and the

22  language herein to assert issue preclusion and res judicata in other litigation seeking class

23  or systemic relief.  When these legal defenses are raised, defendants will send copies of

24  such complaints to plaintiffs' counsel at the Prison Law Office.

25        **30.** If plaintiffs believe that defendants are not complying with some or all

26  of the Stipulation, or any of the acts required by the Policies and Procedures produced

27  pursuant to Stipulation, they shall notify defendants of the perceived problems.

28  Defendants shall investigate the allegations and respond within 30 calendar days.  If

14

1   plaintiffs are not satisfied with defendants' response, the parties shall conduct negotiations

2   to resolve the issue. The negotiations may include the Court's experts, and a person

3   satisfactory to the parties may at the election of either party, mediate any unresolved

4   issues. If the parties cannot agree on a mediator, the administrator of a private dispute

5   resolution service, such as JAMS, will choose a mediator. Defendants shall pay the cost

6   of any private mediator. The substance of the mediation and any statements made by a

7   party, an employee of a party, or an agent of a party shall be confidential and not

8   admissible in any subsequent proceeding. The Experts' report(s) shall be admissible as

9   evidence at the request of either party in any judicial proceeding in this case. If the

10  parties are unable to resolve the issue by negotiation or mediation, the court shall

11  determine whether defendants are substantially complying with some or all of the

12  Stipulation, or any of the acts required by the Policies and Procedures.

13

14      **H. Termination**

15          **31.** Notwithstanding the Prison Litigation Reform Act or any other law,

16  defendants may move to vacate this Stipulation and dismiss the case on the ground that

17  each institution subject to this stipulation has been found to be in substantial compliance

18  under ¶¶ 22-23. Non-compliance may be corrected by compliance with the existing

19  Policies and Procedures or by modifying the Policies and Procedures pursuant to ¶ 24 and

20  complying with the Policies and Procedures as modified. The parties shall attempt to

21  negotiate any disputes about defendants' compliance pursuant to ¶¶ 26-28, and either

22  party may invoke the enforcement process set forth in ¶ 29-30. The final determination

23  of such a dispute shall rest with the Court.

24

25      **I. Attorneys Fees and Costs**

26          **32.** Plaintiffs may apply for reasonable attorney's fees to which they are

27  entitled. Defendants shall pay plaintiffs for 90% of the work performed in connection

28  with this Stipulation at hourly rates set forth under the PLRA, 42 USC § 1997e(d).

                                    15

1  Defendants shall pay plaintiffs for 10% of the work performed in connection with this

2  Stipulation at hourly rates set forth under the ADA and §504 of the Rehabilitation Act.

3

4  ## J. Construction of Stipulation.

5      33. This Stipulation reflects the entire agreement of the parties and

6  supersedes any prior written or oral agreements between them.   No extrinsic evidence

7  whatsoever may be introduced in any judicial proceeding to provide the meaning or

8  construction of this Stipulation. Any modification to the terms of this Stipulation must be

9  in writing and be signed by a representative of the Department of Corrections and

10  attorneys for the plaintiffs to be effective or enforceable.

11      34. This Stipulation shall be governed by and be construed according to

12  California law. The parties waive any common law or statutory rule of construction that

13  ambiguity should be construed against the drafter of this Stipulation, and agree that the

14  language in all parts of this Stipulation shall in all cases be construed as a whole,

15  according to its fair meaning.

16      35. This Stipulation shall be valid and binding upon, and faithfully kept,

17  observed, performed and be enforceable by and against the parties, their successors and

18  assigns and the plaintiff class.

19      36. The obligations governed by this Stipulation are severable. If for any

20  reason a part of this Stipulation is determined to be invalid or unenforceable, such a

21  determination shall not affect the remainder.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

16

37. The waiver by one party of any provision or breach of this Stipulation shall not be deemed a waiver of any other provision or breach of this Stipulation.

**IT IS SO STIPULATED AND AGREED.**

Dated: 1-25-02

DONALD SPECTER
Attorney for plaintiffs

Dated: 1-2-02

ROBERT PRESLEY
Secretary for the Youth and Adult
Correctional Agency

Dated: 1/2/02

EDWARD S. ALAMEIDA, JR.
Director, California Department
of Corrections

Dated: 1·2·02

PETER J. SIGGINS
Chief Deputy Attorney General
Attorney for Defendants Davis and Gage

17

C-01-1351 TEH

Dated: ___1·2·02___

BILL LOCKYER, Attorney General
of the State of California
PETER J. SIGGINS, Chief
Deputy Attorney General
ROBERT R. ANDERSON, Chief
Assistant Attorney General
PAUL D. GIFFORD, Senior
Assistant Attorney General

PETER J. SIGGINS
Chief Deputy Attorney General

Attorneys for Defendants Davis, Gage,
Presley, Alameida, and Pickett

THE COURT SO FINDS AND IT IS SO ORDERED.

Dated: ___6/13/02___

THELTON E. HENDERSON
United States District Judge

18

Stipulation For Injunctive Relief

C-01-1351 TEH

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **MARCIANO PLATA, et al. v. GRAY DAVIS, et al.**

No.:    **USDC-Northern District, C-01-1351 TEH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **June 21, 2002**, I served the attached **ORDER APPROVING STIPULATION FOR INJUNCTIVE RELIEF FILED JUNE 13, 2002** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, P.O. Box 944255, Sacramento, California 94244-2550, addressed as follows:

**DONALD SPECTER**
**STEVEN FAMA**
**Prison Law Office**
**General Delivery**
**San Quentin, CA 94964-0001**

**WARREN E. GEORGE**
**McCutchen, Doyle, Brown & Enersen**
**Three Embarcadero Center**
**San Francisco, CA 94111-4066**

**CAROLINE MITCHELL**
**Pillsbury Winthrop**
**50 Fremont Street**
**San Francisco, CA 94105**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **June 21, 2002**, at Sacramento, California.

| C. Bain | |
| --- | --- |
| Declarant | Signature |