1  FUTTERMAN & DUPREE LLP
   MARTIN H. DODD (104363)
2  JAMIE L. DUPREE (158105)
   160 Sansome Street, 17th Floor
3  San Francisco, California 94104
   Telephone: (415) 399-3840
4  Facsimile:  (415) 399-3838
   martin@dfdlaw.com
5  jdupree@dfdlaw.com

6  *Attorneys for Receiver*
   J. Clark Kelso
7

8           UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  UNITED STATE DISTRICT COURT COMPOSED OF THREE JUDGES

12   PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

13

| | |
|---|---|
| 14  RALPH COLEMAN, et al., | Case No. CIV S-90-0520 LKK JFM P |
| 15        *Plaintiffs,* | **THREE JUDGE COURT** |
| 16        v. | |
| 17  ARNOLD SCHWARZENEGGER, et al., | |
| 18        *Defendants.* | |
| 19  MARCIANO PLATA, et al., | Case No. C01-1351 TEH |
| 20        *Plaintiffs,* | **THREE JUDGE COURT** |
| 21        v. | **DECLARATION OF MARTIN H. DODD IN SUPPORT OF RECEIVER'S STATEMENT REGARDING DISCOVERY DISPUTE** |
| 22  ARNOLD SCHWARZENEGGER, et al., | |
| 23        *Defendants.* | |
| 24 | Date:      July 10, 2008<br>Time:      11:00 a.m.<br>Courtroom:  12 |
| 25 | |

26     I, Martin H. Dodd, declare as follows:

27     1.  I am an attorney licensed to practice before all the courts of the State of California and

28     before this Court and am a partner in the law firm of Futterman & Dupree LLP, attorneys

                                        1

1    for Receiver J. Clark Kelso.

2    2.   Attached hereto as Exhibit A is a true and correct copy of the February 14, 2006 Order

3         Appointing Receiver in Plata.

4    3.   Attached hereto as Exhibit B is a true and correct copy of the three-judge Court order,

5         dated November 29, 2007.

6    4.   Attached hereto as Exhibit C is a true and correct copy of the three-judge Court order,

7         dated June 5, 2008.

8    5.   On July 7, 2008, I received by facsimile transmission a copy of Plaintiffs' Third Request

9         for Inspection ("Third Inspection Request") in *Plata*. The Third Inspection Request had

10        not previously been served on the Receiver. The Third Inspection Request purports to

11        schedule inspections in *Plata* at the following prisons on the following dates: North Kern

12        State Prison (July 14); SATF (July 15); Pleasant Valley (July 16); CSP-Solano (July 17);

13        High Desert (July 18).

14   6.   Also on July 7, 2008, I received a telephone call from plaintiffs' counsel, Alison Hardy,

15        in which I objected to the Third Inspection Request. During that telephone call, she

16        acknowledged that it was "a fairly significant screw up," that the Receiver had not been

17        previously served with the Third Inspection Request.

18   7.   On July 8, 2008, I sent plaintiffs' counsel a letter objecting to the Third Inspection

19        Request on various grounds. A true and correct copy of my July 8 letter is attached

20        hereto as Exhibit D.

21   8.   On July 9, 2008, I was served with a Fourth Inspection Request in *Plata*. A true and

22        correct copy of the Fourth Inspection Request in Plata is attached hereto as Exhibit E.

23        Previously, I had been served with a Fourth Inspection Request in Coleman. A true and

24        correct copy of the Fourth Inspection Request in Coleman is attached hereto as Exhibit F.

25        On July 9, 2008, I sent plaintiffs' counsel a letter objecting to the Fourth Inspection

26        Requests in *Plata* and *Coleman*. A true and correct copy of my July 9 letter is attached

27        hereto as Exhibit G.

28   9.   I received Plaintiffs' Statement Regarding Discovery Dispute in which it is asserted that

2

1   the Receiver did not object to a Third Inspection Request, purportedly served in *Coleman*

2   on July 2, 2008. The Receiver was *not* served with that request and therefore has had no

3   opportunity to review it.

4   10. The Receiver has cooperated with the parties when they have required information

5   pertinent to discovery. Thus, the Receiver cooperated in the last round of plaintiffs'

6   expert tours of the prisons in the Fall of 2007. Indeed, those inspections involved more

7   than a dozen facilities throughout the State and required the Receiver, on extremely short

8   notice, to direct his representatives to attend such inspections, sometimes including visits

9   to more than one prison in a single day.

10   11. In addition, the Receiver also cooperates with plaintiffs when their counsel inspect

11   prisons pursuant to compliance monitoring in *Plata*. They are entitled to, and do, inspect

12   multiple prisons throughout each year and those inspections sometimes take a full two

13   days and require staff to produce voluminous information on individual inmates and their

14   care, as well as lengthy discussions with staff pertaining to a myriad of medical care

15   related issues. I am informed and believe, that in addition to the inspections proposed in

16   the Inspection Requests that plaintiffs will tour Pleasant Valley State Prison on July 15

17   and July 16 pursuant to the *Plata* monitoring tours that plaintiffs are entitled to, and do,

18   take. Contrary to plaintiffs' representation in their Statement Regarding Discovery

19   Dispute, they know that the Receiver has repeatedly taken the position that the tours

20   conducted by plaintiffs are burdensome on prison medical staff and extremely disruptive.

21   Adding discovery tours to an already overburdened staff is unreasonable and unnecessary.

22   I declare under penalty of perjury under the laws of the State of California that the foregoing is

23   true and correct.

24   Dated:  July 9, 2008                               _____/s/  Martin H. Dodd_____
                                                                    Martin H. Dodd

25

26

27

28

FUTTERMAN &
DUPREE LLP

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies as follows:

I am an employee of the law firm of Futterman & Dupree LLP, 160 Sansome Street, 17th Floor, San Francisco, CA 94104. I am over the age of 18 and not a party to the within action.

I am readily familiar with the business practice of Futterman & Dupree, LLP for the collection and processing of correspondence.

On July 9, 2008, I served a copy of the following document(s):

**DECLARATION OF MARTIN H. DODD IN SUPPORT OF RECEIVER'S STATEMENT REGARDING DISCOVERY DISPUTE**

by placing true copies thereof enclosed in sealed envelopes, for collection and service pursuant to the ordinary business practice of this office in the manner and/or manners described below to each of the parties herein and addressed as follows:

___ BY FACSIMILE: I caused said document(s) to be transmitted to the telephone number(s) of the addressee(s) designated.

_X_ BY MAIL: I caused such envelope(s) to be deposited in the mail at my business address, addressed to the addressee(s) designated below. I am readily familiar with Futterman & Dupree's practice for collection and processing of correspondence and pleadings for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business.

| | |
|---|---|
| Andrea Lynn Hoch<br>Benjamin T. Rice<br>Legal Affairs Secretary<br>Office of the Governor<br>Capitol Building<br>Sacramento, CA 95814 | Robin Dezember, Director (A)<br>Division of Correctional<br>Health Care Services<br>CDCR<br>P.O. Box 942883<br>Sacramento, CA 94283-0001 |
| Molly Arnold<br>Chief Counsel, Dept. of Finance<br>State Capitol, Room 1145<br>Sacramento, CA 95814 | Matthew J. Lopes<br>Pannone, Lopes & Devereaux, LLC<br>317 Iron Horse Way, Suite 301<br>Providence, RI 02908 |
| Warren C. (Curt) Stracener<br>Paul M. Starkey<br>Dana Brown<br>Labor Relations Counsel<br>Depart. of Personnel Admin. Legal Division<br>1515 "S" St., North Building, Ste. 400<br>Sacramento, CA 95814-7243 | Donald Currier<br>Alberto Roldan<br>Bruce Slavin<br>Legal Counsel<br>CDCR, Legal Division<br>P.O. Box 942883<br>Sacramento, CA 94283-0001 |
| Laurie Giberson<br>Staff Counsel<br>Department of General Services<br>707 Third St., 7th Fl., Ste. 7-330<br>West Sacramento, CA 95605 | David Shaw<br>Inspector General<br>Office of the Inspector General<br>P.O. Box 348780<br>Sacramento, CA 95834-8780 |

1    Donna Neville                               Peter Mixon

Donna Neville  
Senior Staff Counsel  
Bureau of State Audits  
555 Capitol Mall, Suite 300  
Sacramento, CA 95814

Peter Mixon  
Chief Counsel  
California Public Employees Retirement System  
400 Q Street, Lincoln Plaza  
Sacramento, CA 95814

Al Groh  
Executive Director  
UAPD  
1330 Broadway Blvd., Ste. 730  
Oakland, CA 94612

Yvonne Walker  
Vice President for Bargaining  
SEIU Local 1000  
1108 "O" Street  
Sacramento, CA 95814

Pam Manwiller  
Director of State Programs  
AFSME  
555 Capitol Mall, Suite 1225  
Sacramento, CA 95814

Richard Tatum  
CSSO State President  
CSSO  
1461 Ullrey Avenue  
Escalon, CA 95320

Tim Behrens  
President  
Association of California State Supervisors  
1108 "O" Street  
Sacramento, CA 95814

Elise Rose  
Counsel  
State Personnel Board  
801 Capitol Mall  
Sacramento, CA 95814

Professor Jay D. Shulman, DMD, MA, MSPH  
9647 Hilldale Drive  
Dallas, TX 75231

Joseph D. Schalzo, DDS, CCHP  
3785 N. 156th Lane  
Goodyear, AZ 85395

Stuart Drown  
Executive Director  
Little Hoover Commission  
925 L Street, Suite 805  
Sacramento, CA 95814

John Chiang  
Richard J. Chivaro  
State Controller  
300 Capitol Mall, Suite 518  
Sacramento, CA 95814

     I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury, under the laws of the united State of America, that the above is true and correct.

     Executed on July 9, 2008 at San Francisco, California.

_Lori Dotson_ (signature)

Lori Dotson

# EXHIBIT A

1

2

3

4

5

*FILED*

*FEB 1 4 2006*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

6

7          IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11    MARCIANO PLATA, et al.,                    NO. C01-1351 TEH

12                        Plaintiffs,             CLASS ACTION

13              v.                                ORDER APPOINTING
                                                  RECEIVER
14
      ARNOLD SCHWARZENEGGER,
15    et al.,

16                        Defendants.

17

18

19

20          On October 3, 2005, this Court issued its written Findings of Fact and Conclusions of

21    Law in support of its June 30, 2005 decision to establish a Receivership to take control of the

22    delivery of medical services to California state prisoners confined by the California

23    Department of Corrections and Rehabilitation ("CDCR").[1]  In its written ruling, the Court

24    explained that it was undertaking a national search to find a Receiver with the leadership

25    ability, experience, and vision to take on the monumental and critical task of bringing the

26    _____

27

28          [1]  As the October 3, 2005 ruling notes, Pelican Bay State Prison is exempted from this
      action and instead falls under this Court's jurisdiction in the separate case of *Madrid v.*
      *Woodford*, C90-3094 TEH.

*United States District Court*
*For the Northern District of California*

1  level of medical care provided to California's 166,000 inmates up to federal constitutional

2  standards. Having undergone a thorough and successful search process, the Court HEREBY

3  APPOINTS Mr. Robert Sillen to serve as the Receiver in this case, at the pleasure of the

4  Court, effective Monday, April 17, 2006. A copy of the Receiver's curriculum vitae is

5  attached to this Order.

6      In furtherance of the Receivership, the Court sets forth the Receiver's duties and

7  powers as follows:

8

9  I. DUTIES OF THE RECEIVER

10      A. Executive Management

11      The Receiver shall provide leadership and executive management of the California

12  prison medical health care delivery system with the goals of restructuring day-to-day

13  operations and developing, implementing, and validating a new, sustainable system that

14  provides constitutionally adequate medical care to all class members as soon as practicable.

15  To this end, the Receiver shall have the duty to control, oversee, supervise, and direct all

16  administrative, personnel, financial, accounting, contractual, legal, and other operational

17  functions of the medical delivery component of the CDCR.

18

19      B. Plan of Action

20      The Receiver shall, within 180 - 210 calendar days of the effective date of

21  appointment, develop a detailed Plan of Action designed to effectuate the restructuring and

22  development of a constitutionally adequate medical health care delivery system. This Plan

23  shall include recommendations to the Court of which provisions of the (1) June 13, 2002

24  Stipulation for Injunctive Relief, and (2) September 17, 2004 Stipulated Order re Quality of

25  Patient Care and Staffing Order and Injunction (and/or policies or procedures required

26  thereby), should be carried forward and which, if any, should be modified or discontinued

27  due to changed circumstances. The Plan of Action shall also include a proposed time line for

28

United States District Court
For the Northern District of California

2

1  all actions and a set of metrics by which to evaluate the Receiver's progress and success.

2  The Receiver shall update and/or modify this Plan as necessary throughout the Receivership.

3      Pending development of the Plan of Action, the Receiver shall undertake immediate

4  and/or short term measures designed to improve medical care and begin the process of

5  restructuring and development of a constitutionally adequate medical health care delivery

6  system.

7

8      C.  Budgeting and Accounting

9      The Receiver shall determine the annual CDCR medical health care budgets

10  consistent with his duties and implement an accounting system that meets professional

11  standards.  The Receiver shall develop a system for periodically reporting on the status of the

12  CDCR's medical health care budget and shall establish relations with the California Office of

13  Inspector General to ensure the transparency and accountability of budget operations.

14

15      D.  Reporting

16      The Receiver shall provide the Court with bimonthly progress reports.  These reports

17  shall address: (a) all tasks and metrics contained in the Plan and subsequent reports, with

18  degree of completion and date of anticipated completion for each task and metric,

19  (b) particular problems being faced by the Receiver, including any specific obstacles

20  presented by institutions or individuals, (c) particular successes achieved by the Receiver,

21  (d) an accounting of expenditures for the relevant period, and (e) all other matters deemed

22  appropriate for judicial review.

23      The Receiver shall meet with the Court on a bimonthly basis shortly following the

24  issuance of each report and shall remain in contact with the Court throughout the

25  Receivership on an informal, as needed, basis.

26

27

28

United States District Court
For the Northern District of California

3

## II. POWERS AND AUTHORITY OF THE RECEIVER

The Receiver shall have all powers necessary to fulfill the above duties under this Order, including, but not limited to:

### A. General Powers

The Receiver shall exercise all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison medical health care system. The Secretary's exercise of the above powers is suspended for the duration of the Receivership; it is expected, however, that the Secretary shall work closely with the Receiver to facilitate the accomplishment of his duties under this Order.

### B. Personnel

The Receiver shall have the power to hire, fire, suspend, supervise, promote, transfer, discipline, and take all other personnel actions regarding CDCR employees or contract employees who perform services related to the delivery of medical health care to class members. The Receiver shall have the power to establish personnel policies and to create, abolish, or transfer positions related to the delivery of medical health care to class members. The Receiver also shall be empowered to negotiate new contracts and to renegotiate existing contracts, including contracts with labor unions, in the event that such action is necessary for the Receiver to fulfill his duties under this Order.

### C. Property

The Receiver shall have the power to acquire, dispose of, modernize, repair, and lease property, equipment, and other tangible goods as necessary to carry out his duties under this Order, including but not limited to information technology and tele-medicine technology.

4

D. <u>Governing State Laws, Regulations, and Contracts</u>

The Receiver shall make all reasonable efforts to exercise his powers, as described in this Order, in a manner consistent with California state laws, regulations, and contracts, including labor contracts. In the event, however, that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system, or otherwise clearly preventing the Receiver from carrying out his duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment. Upon receipt of any such request, the Court shall determine the appropriate procedures for addressing such request on a case-by-case basis.

E. <u>Access</u>

The Receiver shall have unlimited access to all records and files (paper or electronic) maintained by the CDCR, including but not limited to all institutional, personnel, financial, and prisoner records, as deemed necessary by the Receiver to carry out his duties under this Order.

The Receiver shall have unlimited access to all CDCR facilities, as deemed necessary by the Receiver, to carry out his duties under this Order. Ordinarily, the Receiver shall attempt to provide reasonable notice when scheduling such visits, but this shall not preclude the Receiver from making unannounced visits to facilities or offices as the Receiver deems necessary to carry out his duties under this Order.

The Receiver shall have unlimited access to prisoners and to line and managerial staff, including the authority to conduct confidential interviews with staff and prisoners.

United States District Court
For the Northern District of California

5

F.  Immunity and Indemnification

The Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court.

Additionally, Defendants shall indemnify the Receiver and members of his staff to the same extent as Defendants are obligated to indemnify the Secretary of the CDCR.

III.  OFFICE OF THE RECEIVER

A.  The Receiver shall be paid a reasonable compensation for his services in an amount to be approved by this Court.

B.  The Receiver shall establish an Office of the Receiver in a location to be determined in consultation with the Court, with staffing necessary to fully carry out his duties as set forth in this Order.  Upon approval from the Court, the Receiver shall set reasonable compensation and terms of service for each member of his staff, (including employees and/or consultants) and shall be authorized to enter into contracts with the employees or consultants of the Office.

C.  Because time is of the essence, and in order to begin operations immediately, Defendants shall, within 30 days of the date of this Order, establish an initial operating fund with the Court in the amount of $750,000.  The Receiver shall submit monthly requests for payment from this fund to the Court.  Further funds for the Office of the Receiver shall be deposited to the Receiver's Office Fund Account set forth in paragraph F below.

D.  Throughout the Receivership, the Receiver shall submit to the Court a monthly accounting of all receipts and expenditures of the Office of the Receiver and shall arrange for an independent financial audit of the Receiver's Office Fund Account on an annual basis.

E.  Within 45 calendar days from the date of effective appointment, the Receiver shall establish an interest-bearing account, with respect to which he shall be the signatory and fiduciary.  This account shall be designated as the Receiver's Office Fund Account and shall be maintained solely for the reasonable and necessary expenses associated with the operation

United States District Court
For the Northern District of California

6

of the Office of the Receiver, including but not limited to salaries, consulting fees, and the costs of supplies, equipment, office space, transportation,[2] and the like. The Receiver shall arrange with Defendants a system for regularly replenishing the Receiver's Office Fund Account.

F. Within 75 calendar days of the date of effective appointment, the Receiver shall establish a budget for the Office of the Receiver's first year of operation. The Receiver shall also establish a budget for the Office of Receiver for each subsequent year of operation, with each such budget due 90 days in advance of each budget year.

IV. COSTS

All costs incurred in the implementation of the policies, plans, and decisions of the Receiver relating to the fulfillment of his duties under this Order shall be borne by Defendants. Defendants shall also bear all costs of establishing and maintaining the Office of Receiver, including the compensation of the Receiver and his staff.

V. LENGTH OF RECEIVERSHIP

The Receivership shall remain in place no longer than the conditions which justify it make necessary, and shall cease as soon as the Court is satisfied, and so finds in consultation with the Receiver, that Defendants have the will, capacity, and leadership to maintain a system of providing constitutionally adequate medical health care services to class members. The Court expects that as the Receivership progresses, the Receiver will attempt to engage Defendants in assuming responsibility over portions of the system that are within

---

[2]When engaged in travel, the Receiver and his staff shall use their best efforts to contain direct expenses in a cost-effective fashion. For example, when engaged in necessary travel, the Receiver and his staff shall, when possible, utilize advanced-purchase economy airfares and reasonably priced accommodations.

7

1    Defendants' demonstrated ability to perform, so that the ultimate transfer of power back to

2    the State will be transitional.

3          Prior to the cessation of the Receivership, the Receiver shall develop a Plan for Post-

4    Receivership Governance of the system, which shall include consideration of its structure,

5    funding, and governmental responsibility for its long-term operation. The Receiver shall

6    present this plan to the Court for approval and adoption as an order.

7

8    VI. COOPERATION

9          A. All Defendants, and all agents, or persons within the employ, of any Defendant in

10   this action (including contract employees), and all persons in concert and participation with

11   them, and all counsel in this action, shall *fully* cooperate with the Receiver in the discharge of

12   his duties under this Order, and shall promptly respond to all inquiries and requests related to

13   compliance with the Court's orders in this case. Any such person who interferes with the

14   Receiver's access, as set forth in section II.E., or otherwise thwarts or delays the Receiver's

15   performance of his duties under this Order, shall be subject to contempt proceedings before

16   this Court.

17         B. Counsel for Defendants shall ensure that the following state agencies are given

18   prompt notice of the substance of this paragraph: the Department of Personnel

19   Administration, the Department of Finance, the Department of General Services, the State

20   Personnel Board, and any other state agencies that Defendants deem should be notified.

21   Defendants shall notify the Court in writing of their compliance with this paragraph within

22   30 days of the date of this Order.

23         C.  The Secretary of the CDCR shall ensure that all of the CDCR's employees and

24   agents (including contract employees) are given prompt notice of the substance of this

25   paragraph.  Defendants shall notify the Court in writing of their compliance with this

26   paragraph within 30 days of the date of this Order.

27

28

United States District Court
For the Northern District of California

8

VII.  ADVISORY BOARD

The Court, in consultation with the Receiver, shall appoint an Advisory Board of no more than five members to assist and advise the Court and the Receiver with respect to achieving the goals of the Receivership.

VIII.  MODIFICATION

Given that this Receivership is unprecedented in scope and dimension, this Court finds that flexibility will be an important element in ensuring its effectiveness.  Accordingly, this Order may be modified as necessary from time to time to assure the success of this Receivership and the eventual return of the operation of the CDCR's medical health care delivery system to the State of California.

**IT IS SO ORDERED.**

Dated: February 14, 2006

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE

9

**ROBERT SILLEN**

---

## EDUCATIONAL BACKGROUND

1965    University of Denver, Denver, Colorado:  Bachelor of Arts Degree

1972    Graduate School, Yale University:  Masters of Public Health Degree

## CAREER EXPERIENCE

| | |
|---|---|
| 1993 - Present | Executive Director<br>Santa Clara Valley Health & Hospital System<br>San Jose, CA |
| 1979 - 1993 | Executive Director, Hospital & Clinics<br>Santa Clara Valley Medical Center<br>San Jose, CA |
| 1976 - 1979 | Associate Director, Hospital & Clinics<br>University Hospital<br>University of California Medical Center<br>San Diego, CA |
| 1972 - 1976 | Assistant Director<br>University Hospital<br>University of California Medical Center<br>San Diego, CA |
| 1968 - 1970 | Assistant Administrator<br>City Hospital Center at Elmhurst<br>Elmhurst, NY |
| 1967 - 1968 | Director of Community and Professional Relations<br>United States Public Health Service<br>New York, NY |
| 1965 - 1967 | Director of Clinics<br>United States Public Health Service<br>New York, NY |

## DETAILS OF CAREER EXPERIENCE

### Executive Director, Santa Clara Valley Health & Hospital System (SCVHHS)

In June, 1993, the Board of Supervisors created a full service, integrated County health care system consisting of the Santa Clara Valley Medical Center, Department of Public Health, Department of Mental Health, Department of Custody Health Services and the Department of Alcohol & Drug Services. The Santa Clara Valley Health & Hospital System is responsible for a full continuum of preventive intervention and treatment services throughout the County, both directly under County auspices and through contracts with the private sector. The system is comprised of over 6,200 employees and has an annual operating budget of nearly $1.4 billion.

The Executive Director is responsible for all aspects of the system's operations, long range planning, private/public partnerships, community relations, capital development and information systems. The development of a cost effective, fully integrated system is essential for the successful conversion to a full-service managed care delivery system in a highly competitive environment. In addition, the Executive Director was responsible for designing and implementing a County-wide Medi-Cal Managed Care program (Local Initiative) in June, 1996 as well as the Children's Health Initiative and Healthy Kids program in January, 2000.

### Executive Director, Santa Clara Valley Medical Center (SCVMC)

Directed, administered, and coordinated all activities of the hospital and its affiliated clinics; responsibilities included: planning and establishing major current and long range objectives, goals, and policies; maintaining good employee and medical staff relations; maintaining financial solvency of the institution; organizing the functions of the Medical Center and clinics through appropriate departmentalization and delegation of duties; exercising day-to-day responsibility for the internal operations of the hospital; and directly coordinating all external activities and relations affecting the hospital and clinics.

The Santa Clara Valley Medical Center is a 500-bed regional medical center with an operating budget of over $800 million and 4,500 full-time equivalent employees. Services range from community based primary care satellite clinics to tertiary regional services such as: Regional Burn, Spinal Cord Injury, and Head Trauma; Neonatal Intensive Care; Poison Control Center; Trauma Center; Life Flight Helicopter; and Custody (Jail) Health Services.

### Associate Director, University Hospital, University of California Medical Center, San Diego

Administrative and budgetary responsibility for the following professional services: Anesthesia, Medicine, Neurology, Surgery. Responsibility included approval and control of operating and capital budgets, program planning and implementation and identification and solution of operational problems. Relate directly to Chairpersons and Division Chief of above indicated departments.

Responsible for operation of hospital planning office, including overall administrative responsibility for short- and long-range planning. Responsibilities included formulation of planning methodology, acquisition of capital resources, and coordination of all hospital construction, renovation, and space allocation.

Responsible for the activities of the Assistant Director, Hospital and Clinics, for a variety of professional services and non-professional departments including: Cardiac Catheterization Laboratory, Gastroenterology, Material Handling, Medicine, Neurology, Pathology, Pharmacy, Physical and Occupational Therapy, Radiology, Respiratory Therapy, Surgery.

Assistant Administrator, City Hospital at Elmhurst

Assisted the Administrator of this 1,000-bed teaching hospital in the general administration of a variety of professional and non-professional services, including: Anesthesia, Hematology, Inhalation Therapy, Pathology, Radiology, Social Services, Medical Records, and Medical Library. Directly responsible for administration of internship and residency training programs, and administration of Medicare compliance program.


## ACADEMIC APPOINTMENTS

Assistant Clinical Professor, Department of Community Medicine,
University of California, San Diego

Clinical Lecturer, Department of Community Medicine,
University of California, San Diego


## PROFESSIONAL ASSOCIATIONS AND MEMBERSHIPS

Children & Families First Commission of Santa Clara County, Commissioner: 2000 – Present
California Association of Public Hospitals & Health Systems, Board of Directors, Current Member;
    Current and Past Chairman: 2003, 1984, 1985, 1989
National Association of Public Hospitals & Health Systems, Current Member; Past Chairman: 1987
Emergency Housing Consortium, Board of Directors, Member: 1998-2001
American Cancer Society, Board of Directors, Member: 2000, 2001
California Association of Hospitals and Health Systems, Board of Trustees
California Association of Hospitals and Health Systems, Chairperson, CAHHS Committee on
    Finance, 1990
California Association of Hospitals and Health Systems, Marketplace Task Force, 1989; Blue
    Ribbon Committee, 1990
American Hospital Association
American Hospital Association, Governing Council, Section for Metropolitan Hospitals
Hospital Council of Northern California, Board of Directors
California Hospital Association County Hospital Committee
Hospital Conference of Santa Clara County: President, 1986
Hospital Council of Northern California, Planning Committee
Hospital Council of Northern California, Finance Committee
National Association of Counties, Health and Education Steering Committee; Subcommittee, Health
    Care Cost Containment; Subcommittee, Long Term Care

**ROBERT SILLEN**

---

## Major Accomplishments

### Planned, financed and implemented major capital expansion of Medical Center:

- $50 million patient care tower, including new and expanded Comprehensive Emergency Room; Adult Medical, Surgical and Coronary Care Intensive Care Units, Regional Burn Center, post-partum maternity; clinical lab expansion; 40 bed telemetered Transitional Care Unit; Newborn Nursery; roof-top heliport.

- $12 million ambulatory care/physician office building (Valley Health Center). This practice facility provides a highly competitive practice site enabling our faculty to expand our base of privately insured patients. 42,000 square foot facility includes: decentralized registration/waiting, patient care modules including exam rooms, consult rooms and offices; pharmacy; laboratory; radiology services; medical records. This facility is the locus of our prepaid health plan (Valley Health Plan) for County and other public employees.

- $5 million physician/administrative complex that houses our faculty practice plan, physician offices and administrative support offices.

- Psychiatric Facility Expansion - As part of the same bond issue that financed the West Wing patient tower we have built a new 54 bed acute psychiatric facility ($8 million) and purchased a free-standing, distinct part psychiatric SNF ($4 million).

- Creation of a Magnetic Resonance Imaging Center through a joint venture.

- A Campus Development Plan has been funded and initiated which will culminate in the completion of the following projects during the next three years: Additional Patient Care Tower; 1,500 car parking structure(s); Ambulatory Care Facility; Alzheimers Treatment and Day Care Center; Long Term Care facility; new power plant and laundry; Administrative support and physician office building. The Campus Development effort will cost over $500 million.

- $250 million Patient Care Tower (completed in 1999).

- $250 million Specialty Inpatient Center (to be completed in 2008).

- Four Community Based Primary Care Centers ($200 million).

**Program Development:**

- Designation as Level I Trauma Center

- Occupational and Industrial Medicine Program. Developed a program for and consummated contracts with union health and welfare funds and corporate entities in Silicon Valley as well as governmental agencies and school districts.

- Valley Health Plan (VHP). Designed and implemented a prepaid health plan for County employees. This plan, licensed by the State Department of Corporations, is intended to compete with private HMO's, PPO's, IPA's and indemnity plans offered to over 13,000 County employees thus increasing our private insurance base and reducing County subsidy to the Medical Center. Since its inception, VHP has grown from 0 to 2,600 enrollees.

- Developed a Marketing and Public Relations Division that successfully maintained and enhanced our patient referral base, created community support and understanding and enhanced our image throughout the County and State.

- Created a free-standing 501(c)(3) fundraising foundation (SCVMC Foundation). The Foundation, the sole purpose of which is to raise funds and create community support for SCVMC was created in 1988. During its first year it raised over $1 million for the Medical Center. The Foundation Board is comprised of wealthy Silicon Valley corporate leaders and civic "movers and shakers." Major support has been garnered from wealthy individuals, other local foundations, corporations (IBM, Cypress Semiconductors, Applied Materials, Hewlett-Packard, Syntex to name a few). This is a unique effort for a county medical center and we are now providing consultative services to other public hospitals that want to emulate our success.

- Service Excellence. Successfully designed and implemented a Medical Center-wide program which has significantly enhanced intra-and-interdepartmental functioning and communications, increased employee morale, aided recruitment and retention, positively impacted operating efficiency, enhanced our patient and community relations and maintained and enhanced our patient base.

- Financial Performance. Despite the adverse sponsorship mix of SCVMC's patient population (60% Medi-Cal, 20% unsponsored, 5% private insurance, 15% Medicare) our financial performance has been exemplary. The County General Fund subsidy has never exceeded 10% of our total operating budget during my 16 year tenure at SCVMC. This is unique for a California county hospital, especially the third largest in the State. Our financial and clinical successes are closely related and have created an environment of full community and political support vital to our overall success.

- Operational Re-engineering. Implemented a full-scale work re-engineering project; the goal of which was to reduce operating expenses by $60 million over three years. This program is unique within County government in California and has the full support of the Board of Supervisors and County unions.

# EXHIBIT B

1

2          IN THE UNITED STATES DISTRICT COURTS

3          FOR THE EASTERN DISTRICT OF CALIFORNIA

4          AND THE NORTHERN DISTRICT OF CALIFORNIA

5   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

6      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

7

8  RALPH COLEMAN, et al.,

9                   Plaintiffs,

10          v.                              NO. CIV S-90-0520 LKK JFM P

11  ARNOLD SCHWARZENEGGER,                  **THREE-JUDGE COURT**
    et al.,
12
                    Defendants.
13

14  MARCIANO PLATA, et al.,                 NO. C01-1351 TEH

15                   Plaintiffs,            **THREE-JUDGE COURT**

16          v.                              PROTECTIVE ORDER RE:
                                            DEPOSITION OF THE
17  ARNOLD SCHWARZENEGGER,                  CALIFORNIA PRISON HEALTH
    et al.,                                 CARE RECEIVERSHIP
18                                          CORPORATION
                    Defendants.
19

20

21          The Court is in receipt of a notice of deposition of the California Prison Health Care

22  Receivership Corporation ("Receiver"), served by Defendant Arnold Schwarzenegger on

23  November 21, 2007, which notices the deposition of the person most knowledgeable at the

24  Receiver's office on a variety of topics, to commence on December 17, 2007.  The scope of

25  this notice of deposition is extremely broad and covers all of the Receiver's reports in *Plata*

26  *v. Schwarzenegger*, as well as topics as expansive as "[t]he causes of the problems and

27  deficiencies in the delivery of medical care to inmates at CDCR's adult institutions."  Notice

28  of Dep. Sch. A at 1.  Schwarzenegger also asks the Receiver to produce a broad range of

1 documents, including "[a]ny and all DOCUMENTS authored or prepared by [the Receiver's
2 office] that refer, relate to, or describe the level of medical services provided inmates housed
3 in CDCR's adult institutions from April 2006 to the present." *Id.* at 3. For the reasons
4 discussed below, this Court now enters a protective order barring the noticed deposition from
5 proceeding.

6       Under Federal Rule of Civil Procedure 26(c), and in the inherent discretion of a court
7 to manage its own discovery, a court may sua sponte enter a protective order for good cause
8 shown. *E.g., Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 558 n.4 (D.N.J.
9 1994); *McCoy v. Southwest Airlines, Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002). A
10 protective order may include an order that "discovery not be had." Fed. R. Civ. P. 26(c)(1).

11       In this case, although neither the Receiver nor any party has formally objected to the
12 noticed deposition, the Court finds good cause to bar the deposition based on immunity. The
13 Receiver was "imbued with the power and authority to act in the name of the Court as the
14 Court's officer." *Plata v. Schwarzenegger*, Case No. C01-1351 TEH, 2005 WL 2932253, at
15 *33 (N.D. Cal. Oct. 3, 2005). Thus, like court-appointed special masters, the Receiver
16 "assumed the duties and obligations of a judicial officer" when appointed, *In re Gilbert*, 276
17 U.S. 6, 9 (1928), and acts as a "surrogate[]" of the court, *Cordoza v. Pac. States Steel Corp.*,
18 320 F.3d 989, 995 (9th Cir. 2003) (quoting *Louisiana v. Mississippi*, 466 U.S. 921, 921
19 (1984)). Accordingly, just as quasi-judicial immunity applies to special masters appointed
20 under Federal Rule of Civil Procedure 53, *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d
21 1452, 1454-55 (9th Cir. 1993), this Court concludes that the Receiver is also protected by
22 quasi-judicial immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)
23 (explaining that "[w]hen judicial immunity is extended to officials other than judges, it is
24 because their judgments are functionally comparable to those of judges – that is, because
25 they, too, exercise a discretionary judgment as a part of their function" (citation, internal
26 quotations, and alterations omitted)). Not only does this conclusion follow from the case
27 law, but it also follows from the *Plata* court's order that the Receiver and his staff "shall
28 have the status of officers and agents of this Court, and as such shall be vested with the same

1  immunities as vest with this Court." *Plata v. Schwarzenegger*, Case No. C01-1351 TEH,

2  Feb. 14, 2006 Order Appointing Receiver.

3      This Court therefore agrees with the result in *Gary W. v. Louisiana*, 861 F.2d 1366

4  (5th Cir. 1988), in which the court squarely held that a special master may not be deposed

5  regarding his or her findings. A hearing was scheduled before a magistrate judge in that case

6  regarding the suitability of the special master's recommendations. *Id.* at 1367.

7      Dr. Lyles [the special master] began the preparation of a report
8      on incidents of abuse and neglect to be submitted to the
       magistrate at the hearing on the recommendations she had made
9      as special master. Seeking to discover the substance of this
       report, the state noticed Dr. Lyles' deposition and issued a
10     subpoena and a subpoena duces tecum to her. The [plaintiff]
       classmembers moved to quash. The magistrate quashed the
11     subpoenas because of Dr. Lyles' special relationship with the
       court. The district court affirmed that ruling. Dr. Lyles
12     completed her report and, as ordered by the magistrate,
       distributed copies to the parties before the scheduled hearing.
13     Following the hearing the magistrate ordered implementation of
       Dr. Lyles' formal recommendations. The state appeals the ruling
14     on the motion to quash.

15  *Id.* at 1368. The appellate court affirmed the quashing of the subpoena, explaining that,

16  "Dr. Lyles was performing a quasi-judicial function when, as special master, she submitted

17  her formal recommendation. An examination of her mental processes in making that

18  recommendation would have been inappropriate and the magistrate and district court

19  correctly prevented such." *Id.* at 1369 (citation omitted).

20      Likewise, in this case, the Receiver has filed numerous reports, as detailed by

21  Schwarzenegger in Schedule A of his notice of deposition listing subjects within the scope of

22  the desired testimony. These reports speak for themselves, and any testimony about the

23  reports, as well as testimony about or the production of underlying documents considered by

24  the Receiver in his preparation of the reports, would impermissibly intrude on the Receiver's

25  mental processes. *See, e.g., United States v. Roebuck*, 271 F. Supp. 2d 712 (D.V.I. 2003)

26  (explaining that "[t]he overwhelming authority concludes that a judge may not be compelled

27  to testify concerning the mental processes used in formulating official judgments or the

28  reasons that motivated him in the performance of his official duties").

1      Accordingly, with good cause appearing, the Court hereby enters a protective order

2    under Federal Rule of Civil Procedure 26(c) barring the deposition of the California Prison

3    Health Care Receivership Corporation from proceeding.

4

5    **IT IS SO ORDERED.**

6

7    Dated:   11/29/07                              /s/
                                        STEPHEN REINHARDT
8                                       UNITED STATES CIRCUIT JUDGE
                                        NINTH CIRCUIT COURT OF APPEALS
9

10

11   Dated:   11/29/07
                                        LAWRENCE K. KARLTON
12                                      SENIOR UNITED STATES DISTRICT JUDGE
                                        EASTERN DISTRICT OF CALIFORNIA
13

14

15   Dated:   11/29/07
                                        THELTON E. HENDERSON
16                                      SENIOR UNITED STATES DISTRICT JUDGE
                                        NORTHERN DISTRICT OF CALIFORNIA
17

18

19

20

21

22

23

24

25

26

27

28

                                        4

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ARNOLD SCHWARZENEGGER,<br>et al.,<br><br>                    Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ARNOLD SCHWARZENEGGER,<br>et al.,<br><br>                    Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>ORDER RE: ROLE OF<br>RECEIVER AND SPECIAL<br>MASTER REGARDING PRISON<br>POPULATION ADVISORY<br>GROUP |

At the status conference conducted in the above-captioned proceedings on May 30, 2008, there was a discussion concerning the membership of an advisory group that will perform a detailed analysis of the operational capacity of each California prison facility in an effort to arrive at an agreement on a prison population cap. *See also* Confidential Status Report, filed June 2, 2008, at 8-9.

A question arose concerning what role, if any, the *Plata* Receiver and the *Coleman* Special Master might have in connection with that advisory group. As the Court noted in its November 29, 2007 order, both the *Plata* Receiver and the *Coleman* Special Master have assumed duties and obligations of a judicial officer and are acting as surrogates of the *Plata*

1 | and *Coleman* courts, respectively. *See* Nov. 29, 2008 Order at 2. For that reason, it would
2 | not be appropriate for either the *Plata* Receiver or the *Coleman* Special Master, or any of
3 | their staff members, to serve on the advisory group. By this order, both the Receiver and the
4 | Special Master will be authorized to provide, in their discretion, on an informal basis such
5 | information as the advisory group may seek from them that may be helpful to the goals of
6 | said group. Nothing in this order shall be construed to permit any member of the advisory
7 | group to request preparation of written reports by the Receiver or the Special Master or any
8 | of their staff members, or to permit any party to these proceedings to request formal
9 | testimony from the Receiver or the Special Master or any of their staff members at any stage
10 | of these proceedings.

11 |

12 | **IT IS SO ORDERED.**

13 |

14 | Dated: 06/05/08

/s/
STEPHEN REINHARDT
UNITED STATES CIRCUIT JUDGE
NINTH CIRCUIT COURT OF APPEALS

18 | Dated: 06/05/08

LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

22 | Dated: 06/05/08

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

2

# EXHIBIT D

FUTTERMAN

& DUPREE LLP

ATTORNEYS AT LAW

July 8, 2008

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Donald Specter
Steve Fama
Alison Hardy
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710-1916

      Re:    *Plaintiffs' Third Request For Inspection in Three-Judge Court Proceeding*

Dear Counsel:

      Yesterday, July 7, I received by facsimile transmission a copy of Plaintiffs' Third Request for Inspection ("Inspection Request"), which had not previously been served on the Receiver. The Inspection Request purports to schedule inspections in *Plata* at the following prisons on the following dates: North Kern State Prison (July 14); SATF (July 15); Pleasant Valley (July 16); CSP-Solano (July 17); High Desert (July 18). Among other things, the Inspection Request indicates that plaintiffs' experts will "interview . . . the prison's highest ranking medical and mental health officers, including, when applicable, the Chief Medical Officer, Chief Physician & Surgeon and Director of Nursing; "will confer with . . . medical staff" and will seek to review unit health records for some unspecified number of unidentified patient inmates.

      I have had the opportunity to review the Inspection Request with the Receiver and his senior staff. The Receiver is unable to accommodate the Inspection Request for any and all of the following reasons.

    1.   The three-judge Court has issued two orders which make it unmistakably clear that testimonial discovery from the Receiver and his staff will not be permitted in this matter. Plata Docket ## 988, 1226. The purportedly informal "interviews" with the senior medical staff at each prison is effectively an end run on the prohibition against testimonial discovery. As a result, the Receiver does not intend to subject his senior staff to such discovery.

Donald Specter et al.
July 8, 2008
Page 2

2.  On a number of occasions we have informed your office that if you desire information from the Receiver or his staff, including medical staff, then it is necessary that you first meet and confer with me to determine whether, and to what extent, the Receiver can accommodate the request for information. The Receiver is not a party to the three-judge Court proceeding and discovery served on the defendants is not effective to require the Receiver or his staff, including medical personnel, to provide the requested information or otherwise to respond to the discovery.

3.  I first received the Inspection Request yesterday, barely a week before the inspections are scheduled to begin.[1] The proposed "interviews" of senior medical staff, conferences with other medical staff on an ad hoc basis, and demands that staff locate and retrieve medical records for an unspecified number of inmates will interfere with the important work in which local medical staff are engaged on a daily basis. In addition to the ongoing delivery of care, the Receiver has commenced several initiatives to improve care at the local level, which initiatives are themselves making extraordinary demands on prison medical personnel. It will be unduly disruptive to conduct the proposed inspections, with their attendant demands on local medical staff, particularly on such short notice. Local medical staff cannot be expected to drop everything else that they are doing to comply with such improper discovery requests.

4.  Finally, it is by no means clear what the purpose of these inspections is or why it is necessary to involve local medical staff. Several months ago, your office conducted quite a few (also hastily arranged) inspections by your experts. The Receiver cooperated at that time, despite the fact that the inspections were intrusive, disruptive and required sending Receiver's representatives to prisons throughout the state, and sometimes more than one prison in one day. The Receiver and his staff cannot be expected to continue to accommodate these burdensome inspections in the face of the many other competing, and significantly more critical, demands they must address each day.

In view of the foregoing, the Receiver is unable to assist you with the proposed inspections and we will instruct local medical staff that they are neither authorized nor expected to cooperate with or participate in such inspections. Finally, you are not

---

[1] Alison Hardy called yesterday to discuss this Inspection Request and acknowledged that the failure to serve the Receiver was "a fairly significant screw up" (or words to that effect). While we appreciate the recognition that the failure to provide adequate notice was unjustifiable, it does nothing to relieve the extreme, and we believe, unnecessary burden on the local medical staff.

Donald Specter et al.
July 8, 2008
Page 3

authorized to interview, question, confer with or make any demand upon local medical staff without prior approval from the Receiver.  Please call with any questions.

Very truly yours,

Martin H. Dodd

cc: (All via e-mail)
    J. Clark Kelso
    John Hagar
    Jared Goldman
    Linda Buzzini
    Terry Hill
    Paul Mello
    Rochelle East

# EXHIBIT E

1   PRISON LAW OFFICE                          ROSEN, BIEN & GALVAN, LLP
    DONALD SPECTER, Bar No. 83925              MICHAEL W. BIEN, Bar No. 96891
2   STEVEN FAMA, Bar No. 99641                 JANE E. KAHN, Bar No. 112239
    SARA NORMAN, Bar No. 189536                AMY WHELAN, Bar No. 215675
3   ALISON HARDY, Bar No. 135966               LORI RIFKIN, Bar No. 244081
    REBEKAH EVENSON, Bar No. 207825            LISA ELLS, Bar No. 243657
4   E. IVAN TRUJILLO, Bar No. 228790           315 Montgomery Street, 10th Floor
    1917 Fifth Street                          San Francisco, California  94104
5   Berkeley, CA  94710                        Telephone: (415) 433-6830
    Telephone:  (510) 280-2621
6
    KIRKPATRICK & LOCKHART PRESTON             BINGHAM, McCUTCHEN, LLP
7   GATES ELLIS LLP                            WARREN E. GEORGE, Bar No. 53588
    JEFFREY L. BORNSTEIN, Bar No. 99358        Three Embarcadero Center
8   EDWARD P. SANGSTER, Bar No. 121041         San Francisco, California  94111
    RAYMOND E. LOUGHREY, Bar No. 194363        Telephone: (415) 393-2000
9   55 Second Street, Suite 1700
    San Francisco, CA  94105-3493
10  Telephone:  (415) 882-8200

11  THE LEGAL AID SOCIETY –
    EMPLOYMENT LAW CENTER
12  CLAUDIA CENTER, Bar No. 158255
    600 Harrison Street, Suite 120
13  San Francisco, CA  94107
    Telephone:  (415) 864-8848
14
    Attorneys for Plaintiffs
15
                  IN THE UNITED STATES DISTRICT COURTS
16
              FOR THE EASTERN DISTRICT OF CALIFORNIA
17
              AND THE NORTHERN DISTRICT OF CALIFORNIA
18
    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
    PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE
19
    RALPH COLEMAN, et al.,              ) No.  Civ S 90-0520 LKK-JFM P
20                                      )
             Plaintiffs,                ) **THREE-JUDGE COURT**
21                                      )
        vs.                             ) **PLATA PLAINTIFFS' FOURTH REQUEST**
22                                      ) **FOR INSPECTION**
    ARNOLD SCHWARZENEGGER, et al.,      )
23                                      )
             Defendants                 )
24  _____)
    MARCIANO PLATA ,et al.,             ) No. C01-1351 TEH
25                                      )
             Plaintiffs,                ) **THREE-JUDGE COURT**
26      vs.                             )
                                        )
27  ARNOLD SCHWARZENEGGER, et al.,      )
                                        )
28           Defendants                 )
    _____)

219946-1]

**PROPOUNDING PARTIES:**     Plaintiffs Marciano Plata

**RESPONDING PARTIES:**     Defendants Schwarzenegger, et al.

**SET NUMBER:**     Four

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Marciano Plata et al. submit the following Fourth Request for Inspection to Defendants Arnold Schwarzenegger, et al. (combined, the "Defendants") for plaintiffs and plaintiffs' experts to inspect the Correctional Training Facility (CTF), Corcoran State Prison and California State Prison, Los Angeles County (Lancaster).

### DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to these Requests for Inspection:

1.     The term "all" means any and all.

2.     The term "any" means each and every.

3.     The term "CDCR" refers to the California Department of Corrections and Rehabilitation, its agents, employees and anyone acting on its behalf.

4.     The term "confer with" means to interview, formally or informally, CDCR personnel with whom plaintiffs' experts and plaintiffs' counsel meet and/or encounter during the course of the inspection.

5.     The term "class member" means any prisoner who is a member of the plaintiff class under *Plata v. Schwarzenegger* and/or *Coleman v. Schwarzenegger*.

6.     The term "inspect" means to physically walk through and observe CDCR prison facilities, including, but not limited to, all areas in which California state prisoners sleep, eat, bathe, exercise, and receive medical attention, and areas in which such prisoners are received at the prison and/or processed for release from the prison. The term further means to review any records, including, but not limited to, logbooks relating to class members' movement

219045-1]

1 | within the prison and to off-site medical care providers and/or relating to class members'
2 | access to medical or mental health care.

### INSTRUCTIONS

4 |     1.    At each of the prisons to be INSPECTED, plaintiffs' experts request an interview
5 | with the prison's Warden, Associate Warden for Health Care and the prison's highest ranking
6 | medical and mental health officers, including, when applicable, the Chief Medical Officer,
7 | Chief Physician & Surgeon and Director of Nursing, preferably at the beginning of the
8 | inspection. Plaintiffs' counsel anticipate that the initial interview will take approximately 30-60
9 | minutes.

10 |     2.    At the beginning of each inspection, plaintiffs also request a list of all CLASS
11 | MEMBERS from that prison that were, during the previous three months, treated as in-patients
12 | and discharged from an off-site hospital or were treated at an off-site hospital Emergency
13 | Room. For each CLASS MEMBER, please list the reason for the hospitalization or
14 | Emergency Room visit.

15 |     3.    During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts will
16 | CONFER WITH the CDCR staff at the prison, including but not limited to the correctional
17 | staff, administrative staff, and medical staff, regarding access of the *Plata* CLASS MEMBERS
18 | to medical care, and as to issues of housing, programming, exercise and activities for class
19 | members as they relate to medical care.

20 |     4. During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts may CONFER
21 | WITH CLASS MEMBERS at the prison regarding their access to medical care, and as to
22 | issues of housing, programming, exercise and activities for class members as they relate to
23 | medical care.

24 |     5. If, during the INSPECTION, the plaintiffs' experts conclude that they require a
25 | private setting to CONFER WITH certain CDCR staff or CLASS MEMBER(S), defendants
26 | will provide an area where plaintiffs' experts can CONFER WITH the staff member or CLASS
27 | MEMBER(S), in the presence of only plaintiffs' and defendants' counsel, and the Receiver's
28 | representative, if any.

!19945-1]

6.     Plaintiffs' experts will not review CLASS MEMBERS' central files.

7.     As part of the INSPECTIONS, plaintiffs may request to conduct confidential interviews with five to ten CLASS MEMBERS. If so, plaintiffs' counsel will notify defendants at least three days prior to each INSPECTION, and provide the names and CDCR numbers of each CLASS MEMBER at that time. These CLASS MEMBER interviews will be conducted only by plaintiffs' counsel and plaintiffs' experts.

## REQUESTS FOR INSPECTION

1.     On July 23, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT the Correctional Training Facility (CTF).

2.     On July 24, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT Corcoran State Prison.

3.     On August 5, 2008 from 8:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT California State Prison, Los Angeles County (Lancaster).

Dated: July 9, 2008                          Respectfully submitted,

                                             Rebekah Evenson
                                             Prison Law Office
                                             Attorneys for Plaintiffs

219945-1]

**DECLARATION OF SERVICE BY MAIL**

Case Name: Plata et al., Plaintiffs v. Schwarzenegger et al., Defendants.
    United States District Court
    Northern District of California          No. C-01-1351 T.E.H.

I am employed in the County of Berkeley, California. I am over the age of 18 years and not a party to the within entitled cause: my business address is Prison Law Office, 1917 Fifth Street, Berkeley, CA 94710

On July 9, 2008, I served the attached:

**PLATA PLAINTIFFS' FOURTH SET OF REQUESTS FOR INSPECTION**

in said cause, placing, or causing to be placed, a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at Berkeley, California, addressed as follows:

STEVEN A. KAUFHOLD
Akin Gump Straus Hauer & Feld LLP
580 California St., 15th Floor
San Francisco, CA 94104-1036

PAUL MELLO
Hanson Bridgett Marcus Vlahos & Rudy, LLP
333 Market Street, 21st Floor
San Francisco, CA 94105

GREGG MACCLEAN ADAM
NATALIE LEONARD
Carroll, Burdick , McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, 94104

ROCHELL EAST
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

ANN MILLER RAVEL
Office of the County Counsel
County of Santa Clara
70 West Hedding, East Wing 9th Fl.
San Jose, CA 94110

MARTIN J. MAYER
Kimberly Hall Barlow
Jones & Mayer
3777 North Harbor Blvd.
Fullerton, CA 92835

STEVEN WOODSIDE
Office of the County Counsel
County of Sonoma
575 Admin. Dr., Rm 105A
Santa Rosa, CA 95403

LISA TILLMAN
Deputy Attorney General
Office of the Attorney General
PO Box 944255
Sacramento, CA 94244-2550

WILLIAM E. MITCHELL
Office of the Attorney General
County of Riverside
4075 Main Street, First Floor
Riverside, CA 92501

MARTIN H. DODD
JAMIE L. DUPREE
Futterman & Dupree
160 Sansome Street, 17th Floor
San Francisco, CA 94104

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Berkeley, California on July 9, 2008.

Ashley Fewell

!19946-1]

# EXHIBIT F

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
E. IVAN TRUJILLO, Bar No. 228790
SARA NORMAN, Bar No. 189536
ALISON HARDY, Bar No. 135966
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA  94710
Telephone:  (510) 280-2621

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
Telephone:  (415) 882-8200

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone: (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | No.  Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | **PLAINTIFFS' FOURTH REQUEST FOR INSPECTION** |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants | |
| MARCIANO PLATA ,et al., | No. C01-1351 TEH |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants | |

1  **PROPOUNDING PARTY:**        PLAINTIFFS RALPH COLEMAN et al.

2  **RESPONDING PARTIES:**       Defendants Schwarzenegger, et al.

3  **SET NUMBER:**               FOURTH

4  ### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

5  ### DEFINITIONS

6  Unless otherwise indicated, the following definitions and terms shall apply to these

7  Requests for Inspection:

8      1.    The term "all" means any and all.

9      2.    The term "any" means each and every.

10      3.    The term "CDCR" refers to the California Department of Corrections and

11  Rehabilitation, its agents, employees and anyone acting on its behalf.

12      4.    The term "DMH" refers to the Department of Mental Health, its agents,

13  employees and anyone acting on its behalf.

14      5.    The term "confer with" means to interview, formally or informally, CDCR

15  and/or DMH personnel with whom plaintiffs' experts and plaintiffs' counsel meet and/or

16  encounter during the course of the inspection.

17      6.    The term "class member" means any prisoner who is a member of the plaintiff

18  class under *Plata v. Schwarzenegger* and/or *Coleman v. Schwarzenegger*.

19      7.    The term "inspect" means to physically walk through and observe CDCR prison

20  facilities and any DMH units within these prison facilities, including, but not limited to, all

21  areas in which California state prisoners sleep, eat, bathe, exercise, and receive medical and

22  mental health attention, and areas in which such prisoners are received at the prison and/or

23  processed for release from the prison. The term further means to review any records,

24  including, but not limited to, logbooks and waiting list data relating to class members'

25  movement within the prison and to off-site medical care and mental health care providers

26  and/or relating to class members' access to medical or mental health care.

27

28

[220878-1]

**INSTRUCTIONS**

1.  At each of the prisons to be INSPECTED, plaintiffs' experts request an interview with the prison's Warden, Associate Warden for Health Care, and the prison's highest ranking medical and mental health officers, including, when applicable, the Chief Medical Officer, Chief Psychiatrist and/or Chief Psychologist, and Director of Nursing, preferably at the beginning of the inspection. Plaintiffs' counsel anticipates that the initial interview will take approximately 30-60 minutes.

2.  At the beginning of each inspection, plaintiffs request census data for the mental health delivery system population, by category, for the prison on the day of the tour. Plaintiffs also request a list of any prisoners from that prison that were, during the previous three months, placed in a mental health crisis bed ("MHCB"), an outpatient housing unit ("OHU"), any overflow crisis bed units, and/or were referred for transfer to a DMH program. Plaintiffs also request a list of ALL *Coleman* CLASS MEMBERS from that prison that are currently classified as Enhanced Outpatient ("EOP") and are waiting for transfer to an EOP program.

3.  During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts will CONFER WITH the CDCR and DMH staff at the prison, including but not limited to the correctional staff, administrative staff, and medical and mental health staff, regarding access of the *Plata* CLASS MEMBERS to medical care and of the *Coleman* CLASS MEMBERS to mental health care, and as to issues of housing, programming, exercise and activities for class members as they relate to mental health and medical issues.

4.  During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts may CONFER WITH CLASS MEMBERS at the prison regarding their access to medical care and to mental health care, and as to issues of housing, programming, exercise and activities for CLASS MEMBERS as they relate to medical and mental health issues.

5.  If, during the INSPECTION, the plaintiffs' experts conclude that they require a private setting to CONFER WITH certain CDCR staff or CLASS MEMBER(S), defendants will provide an area where plaintiffs' experts can CONFER WITH the staff member or CLASS

1  MEMBER(S), in the presence of only plaintiffs counsels', defendants' counsel, and the

2  Receiver's representative.

3      6.      Plaintiffs' experts will not review CLASS MEMBERS' central files. Plaintiffs'

4  experts may review some CLASS MEMBERS' unit health records.

5      7.      As part of the INSPECTIONS, plaintiffs may request to conduct confidential

6  interviews with five to ten CLASS MEMBERS and review their unit health records. If so,

7  plaintiffs' counsel will notify defendants at least three days prior to each INSPECTION, and

8  provide the names and CDCR numbers of each CLASS MEMBER at that time. These CLASS

9  MEMBER interviews will be conducted only by plaintiffs' counsel and plaintiffs' experts.

10                          **REQUESTS FOR INSPECTION**

11  **SITE 1:** On July 21, 2008 from 9:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

12  plaintiffs' experts request to INSPECT California Substance Abuse Treatment Facility.

13  **SITE 2:** On July 22, 2008 from 9:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

14  plaintiffs' experts request to INSPECT California Correctional Institute.

15  **SITE 3:** On July 29, 2008 from 9 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

16  plaintiffs' experts request to INSPECT Salinas Valley State Prison.

17  **SITE 4:** On July 31, 2008 from 10:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

18  plaintiffs' experts request to INSPECT California Medical Facility.

19  **SITE 5:** On July 31, 2008 from 9:00 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

20  plaintiffs' experts request to INSPECT North Kern State Prison.

21  **SITE 6:** On August 1, 2008 from 9 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

22  plaintiffs' experts request to INSPECT Mule Creek State Prison.

23  //

24  //

25  //

26  //

27  //

28  //

[220878-1]

1  **SITE 7**:  On August 1, 2008 from 9 a.m. to approximately 6:00 p.m., plaintiffs' counsel and

2  plaintiffs' experts request to INSPECT Wasco State Prison.

3

4  Dated:  July 2, 2008                                    Respectfully submitted,

5                                                          ROSEN, BIEN & GALVAN, LLP

6                                                          By: _Jane E. Kahn_____

7                                                          Jane E. Kahn

8                                                          Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FOURTH REQUEST FOR INSPECTION, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[220878-1]

**PROOF OF SERVICE**

I, Kathleen Johnson-Silk, declare that I am a resident of the State of California, am over the age of eighteen years and am not a party to the within action. I am employed with Rosen, Bien & Galvan LLP, whose address is 315 Montgomery Street, Tenth Floor, San Francisco, California 94104. On July 2, 2008, I served the following document:

**PLAINTIFFS' FOURTH REQUEST FOR INSPECTION**

I served the documents on the persons listed below, as follows:

| | |
|---|---|
| [ ] | **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons listed below and providing them to a professional messenger service for service. (A declaration by the messenger is attached hereto as a separate document.) |
| [ X ] | **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons listed below and placed the envelope or package for collection and mailing in accordance with our ordinary business practices. I am readily familiar with my firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California. |
| [ ] | **By overnight delivery.** I enclosed the documents in a sealed envelope or package provided by Federal Express and addressed it to the persons listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier and I arranged to pay for all fees for delivery. |
| [ ] | **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below from Rosen Bien & Galvan's facsimile transmission telephone number, (415) 433-7104. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached. |
| [ ] | **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addressed listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

1  **All documents were sent to the following persons:**

2   Lisa A. Tillman                          Rochelle East
    Deputy Attorney General                  Office of the Attorney General
3   P.O. Box 944255                          455 Golden Gate, Suite 11000
    Sacramento, CA 94244-2550                San Francisco, CA 94102-7004
4

5   Lead Counsel for County Intervenors      Paul B. Mello, Esq.
    Ann Miller Ravel                         Hanson & Bridgett LLP
6   Theresa Fuentes                          425 Market Street, 26th Floor
    Office of the County Counsel             San Francisco, CA  94105
7   70 West Hedding, East Wing, 9th Floor
    San Jose, CA 95110
8
    California Correctional Peace Officers'   Republican Assembly and Senate Intervenors
9   Association (CCPOA) Intervenors           Steven S. Kaufhold
    Natalie Leonard                           Akin, Gump Strauss Hauer & Feld, LLP
10  Gregg MacClean Adam                       580 California Street, 15th Floor
    Carroll, Burdick & McDonough, LLP         San Francisco, CA 94104
11  44 Montgomery Street, Suite 400
    San Francisco, CA 94104
12
    District Attorney Intervenors             County of Sonoma Intervenors
13  William E. Mitchell                       Anne L. Keck, Deputy County Counsel
    Assistant District Attorney               Steven Woodside
14  Riverside County District Attorney's      575 Administration Drive, Room 105A
    Office                                    Santa Rosa, CA 95403
15  4075 Main Street, First Floor
    Riverside, CA 92501
16
    California Sheriff, Probation, Police     Futterman & Dupree, LLP
17  Chief and Corrections Intervenors         Martin H. Dodd
    Jones & Mayer LLP                         Jamie L. Dupree
18  Martin J. Mayer                           160 Sansome Street, 17th Floor
    Michael R. Capizzi                        San Francisco, CA 94104
19  Kimberly Hall Barlow
    Elizabeth R. Feffer
20  3777 North Harbor Boulevard
    Fullerton, CA 92835
21

22      I declare under penalty of perjury under the laws of the State of California that the

23  foregoing is true and correct, and that this Proof of Service was executed on this 2nd day of July,

24  2008, at San Francisco, California.

25                                            _____
                                              Kathleen Johnson-Silk
26

27

28

# EXHIBIT G

160 SANSOME STREET   PHONE 415-399-3840   WRITER'S DIRECT DIAL
17TH FLOOR   FAX 415-399-3842   415-399-3840
SAN FRANCISCO, CA 94104   martin@dfdlaw.com

Case 2:90-cv-00520-KJM-SCR   Document 2871   Filed 07/09/08   Page 48 of 49

FUTTERMAN

& DUPREE LLP

ATTORNEYS AT LAW

July 9, 2008
**VIA U.S. MAIL AND ELECTRONIC MAIL**

Donald Specter
Steve Fama
Alison Hardy
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710-1916

      Re:   *Plaintiffs' Fourth Requests For Inspection in Three-Judge Court
              Proceeding*

Dear Counsel:

      We are in receipt of Plaintiffs' Fourth Request for Inspection in connection with the
*Coleman* case and a Fourth Request for Inspection in *Plata* served this morning. Like the Third
Request for Inspection, which was the subject of my July 8, 2008 letter to you, the Fourth
Requests each call for prison inspections that will entail, in part, proposed interviews with the
highest ranking medical officer at each prison including, when applicable, the Chief Medical
Officer, Chief Physician and Surgeon or Director of Nursing and conferences with "medical
staff." Although the Fourth Requests provide the Receiver with more notice of the proposed
inspections than did the Third Request, we otherwise have the objections and concerns with
regard to the Fourth Requests that we expressed in our July 8 letter.

      Accordingly, we stress again that neither you nor your experts are authorized to
interview, question, confer with or make any demand upon the Chief Medical Officer, Chief
Physician and Surgeon, Director of Nursing or any other local medical staff as part of any prison
inspection without prior approval from the Receiver. Please call with any questions.

                        Very truly yours,

                        Martin H. Dodd

cc: (All via e-mail)
    J. Clark Kelso

Donald Specter et al.
July 9, 2008
Page 2

John Hagar
Jared Goldman
Linda Buzzini
Terry Hill
Paul Mello
Rochelle East