1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST - 183792
   Acting Senior Assistant Attorney General
4  KYLE A. LEWIS - 201041
   Deputy Attorney General
5  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
6  Telephone: (415) 703-5677
   Facsimile:  (415) 703-5843
7  rochelle.east@doj.ca.gov
   kyle.lewis@doj.ca.gov
8
   Attorneys for Defendants
9

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12          AND THE EASTERN DISTRICT OF CALIFORNIA

13    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

14       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

15

16  RALPH COLEMAN, et al.,

17              Plaintiffs,

18        v.

19  ARNOLD SCHWARZENEGGER, et al.,

20              Defendants.

No.  2:90-cv-00520 LKK JFM P

**THREE-JUDGE COURT**

21  MARCIANO PLATA, et al.,

22              Plaintiffs,

23        v.

24  ARNOLD SCHWARZENEGGER, et al.,

25              Defendants

26

No. C01-1351 TEH

**THREE-JUDGE COURT**

***PLATA* DEFENDANTS' STATEMENT IN RESPONSE TO THREE-JUDGE COURT'S JULY 2, 2008 ORDER REQUIRING DEFENDANTS' SHOWING TO FILE MOTION FOR SUMMARY JUDGMENT**

27

28

- 1 -

*PLATA* DEFS.' STMT. RE SHOWING TO FILE MOT. FOR SUMM. J.
CASE NOS. C 01-1351 TEH; 2:90-CV-00520 LKK JFM

1551585.1

# I.    INTRODUCTION

*Plata* Plaintiffs' own correctional healthcare expert testified at his deposition that overcrowding alone is not the primary cause of the constitutionally inadequate delivery of medical care, and that instead many factors contribute to Defendants' inability to provide constitutionally adequate medical care.  Plaintiffs' correctional healthcare expert further testified that a prisoner release order will not beget the constitutional delivery of medical care, but rather many changes must be implemented before constitutionally adequate medical care is accessible by Plaintiffs.  The glaring admissions of Plaintiffs' correctional healthcare expert undeniably contradict Plaintiffs' contention that overcrowding is the primary cause of the unconstitutional delivery of medical care, and that a prisoner release order is the only relief that will correct the violation of Plaintiffs' Eighth Amendment rights.  Because the expert's admissions contradict Plaintiffs' counsels' iterations that a prisoner release order is necessary to remedy the unconstitutional delivery of medical care, a summary judgment motion is not only properly brought to prevent the needless release of thousands of incarcerated felons, but is also timely and appropriate to stave off any further expense of the State's and the Court's limited resources.

## A.    Procedural Background

This Court ordered, on July 2, 2008, that Defendants must file a "list of the specific testimony by Plaintiffs' experts that Defendants contend eliminates any issue of material disputed facts in these proceedings." (July 2, 2008 Order at 2:2-3.)  Upon review of Defendants' showing, this Court will determine whether Defendants will be permitted to file a summary-judgment motion.  (*Id.* at 2:5-7.)  This required showing by this Court is in response to Plaintiffs' request that Defendants should identify with specificity the testimony that Defendants intend to rely upon in support of their anticipated motion for summary judgment.  Plaintiffs represented to this Court that their experts' testimony supported their position, and that they were unaware of any testimony by their experts to the contrary.

- 2 -

1      Plaintiffs' counsel's representations, however, do not comport with their experts'

2   testimony.  Indeed, as is demonstrated below, Plaintiffs' sole correctional healthcare

3   expert, Dr. Ronald Shansky, admitted during his deposition at numerous times that

4   overcrowding is not the primary cause of the unconstitutional delivery of medical care,

5   and that a prisoner release order is not the only available remedy to cure the violation of

6   Plaintiffs' Eighth Amendment rights.

7      Accordingly, Defendants now submit this brief in response to the Court's request

8   and in support of Defendants' contention that no disputed issue of material fact exists in

9   these proceedings.  Defendants present below merely a handful of admissions from the

10   Plaintiffs' correctional healthcare expert in support of Defendants' contention that a

11   summary-judgment motion is proper.  The evidence cited below is by no means an

12   exhaustive list of the evidence that Defendants intend to rely upon in support of their

13   anticipated motion for summary judgment.  Defendants, however, object to this Court's

14   requirement that Defendants first file a pleading outlining the basis for their summary

15   judgment motion as such a requirement is prejudicial, unsupported by law, and entirely

16   unnecessary given that the information forming the basis for Defendants' *prima facie*

17   showing is equally available to Plaintiffs' counsel.

18                          **II.    ARGUMENT**

19   **A.    *Plata* Plaintiffs' Own Expert's Testimony Runs Contrary to Plaintiffs'
          Assertion that Overcrowding is the Primary Cause of Plaintiffs' Failure to
20         Receive Constitutionally Adequate Medical Care and that a Prisoner Release
          Order is the Only Means to Provide Constitutionally Adequate Medical Care.**
21

22      The *Plata* Plaintiffs retained three experts in these proceedings: Dr. Ronald

23   Shansky, Doyle Wayne Scott, and Jeanne Woodford.  Dr. Shansky is Plaintiffs' sole

24   correctional healthcare expert.  Mr. Scott's expertise is limited to custodial issues, and he

25   is not qualified as an expert to discuss the delivery of medical or mental health care.

26   Similarly, Ms. Woodford has had experience solely with custody and programming, and

27   is not an expert in correctional medical or mental health care.

28      Plaintiffs' correctional healthcare expert, Dr. Shansky, made a number of

- 3 -

1   admissions indicating his belief that overcrowding is not the primary cause of

2   Defendants' inability to provide constitutionally adequate medical care, and that a

3   prisoner release order is not the only means to provide constitutionally adequate medical

4   care.  A handful of these admissions are highlighted below, and clearly indicate the

5   absence of a material issue of fact.

6   • A decrease in the prisoner population of up to 40,000 inmates by itself

7       would not result in a constitutionally adequate medical care delivery

8       system.  (Shansky Depo., 61:14-24.)

9   • Simply reducing the prison population all by itself will not cure the problems

10      with specialty medical care.  (Shansky Depo., 132:6-9.)

11  • It is possible for the Receiver and CDCR to ultimately provide

12      constitutionally adequate medical care to 172,000 plus inmates.  (Shansky

13      Depo, 144:3-12.)

14  • A prisoner reduction will only impact the volume of the use of a paper-

15      based medical scheduling system, not solve the problems caused by such

16      a system.  (Shansky Depo., 139:24-140:9.)

17  • The Receiver's November 15, 2007 Plan of Action did not state that

18      overcrowding would prohibit the Receiver and CDCR from developing a

19      constitutionally adequate medical care delivery system.  (Shansky Depo.,

20      54:20-24.)

21  • There are multiple, interrelated components of a constitutionally adequate

22      correctional healthcare system.  (Shansky Depo., 7:24-25.)

23  • It is very difficult to rank these interrelated components in terms of

24      importance and very hard to single out a most important component.

25      (Shansky Depo., 12:17-13:7.)

26  • A reduction in the prison population would not resolve the problems caused

27      by CDCR's storage of unit health records for returning prisoners at a

28      southern regional facility.  (Shansky Depo., 135:17-136:12.)

- 4 -

*PLATA* DEFS.' STMT. RE SHOWING TO FILE MOT. FOR SUMM. J.
CASE NOS. C 01-1351 TEH; 2:90-CV-00520 LKK JFM

1551585.1

1    • A reduction in the prisoner population will not result in an effective

2        computer network, which is essential to providing adequate medical care.

3        (Shansky Depo., 134:18-135:8.)

4    • One of the most important factors to remedy CDCR's failed medical care

5        delivery system is changing the culture.  (Shansky Depo., 143:18-21.)

6    • An historical lack of leadership, planning, and vision by the State's highest

7        officials during a period of exponential growth of the prison population are

8        extremely important causes of the inadequate delivery of medical care in

9        California's prisons.  (Shansky Depo., 62:2-63:24.)

10   • Operating a constitutionally adequate medical system in California also

11       requires, among other things, providing oversight to clinical personnel as

12       well as overhauling dysfunctional business and financial systems.

13       (Shansky Depo., 87:17-88:1.)

14   • The problem with the delivery of constitutionally adequate medical care in

15       CDCR facilities is a polycentric problem.  (Shansky Depo., 88:2-24.)

16   • The Receiver's November 15, 2007 Plan of Action addresses many of the

17       important issues impacting medical care in California's prison that are

18       potentially within the Receiver's purview.  (Shansky Depo., 64:13-65:1.)

19       These excerpts undeniably indicate Dr. Shansky's belief that overcrowding is not

20   the primary cause of the unconstitutional delivery of medical care.  To the contrary, Dr.

21   Shansky admits that a prisoner release order alone will not remedy the deficiencies

22   within CDCR's medical delivery system.  Dr. Shansky cites multiple failings in CDCR's

23   medical delivery system, and even goes so far as to admit that it is a "polycentric

24   problem."  Overcrowding cannot possibly be the "primary cause" of a "polycentric

25   problem."  Given Plaintiffs' own expert's admissions that a prisoner release order will not

26   remedy the unconstitutional delivery of medical care, Plaintiffs will be unable to carry

27   their burden at trial, and certainly not by the clear and convincing evidence standard

28   articulated by 18 U.S.C. § 3626(E).

*PLATA* DEFS.' STMT. RE SHOWING TO FILE MOT. FOR SUMM. J.
CASE NOS. C 01-1351 TEH; 2:90-cv-00520 LKK JFM                          1551585.1

1    Additionally, though Dr. Shansky's expert report supports Plaintiffs' position in this

2    proceeding, Plaintiffs will be unable to rely on his expert report as it was drafted by

3    Plaintiffs' counsel and is thus unreliable, presents a biased perspective, and contradicts

4    Dr. Shansky's honest deposition testimony provided under oath.  Dr. Shansky admitted

5    during his deposition that he did not prepare the first draft of his report.  (Shansky Depo.,

6    51:9-11.)  Dr. Shansky further admitted that Plaintiffs' counsel prepared the draft of his

7    report, which he later reviewed and revised in a de minimis fashion in collaboration with

8    Plaintiffs' counsel.  Expert opinion evidence is only admissible where it can be proven

9    that such evidence is reliable.  Fed. R. Evid. 702.  Factors indicating reliability include

10    "whether the experts are proposing to testify about matters growing naturally and directly

11    out of research they have conducted independent of the litigation, *or whether they have*

12    *developed their opinions expressly for purposes of testifying.*"  *Daubert v. Merrell Dow*

13    *Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1995)(emphasis added).  Given the

14    tainted nature of Dr. Shansky's expert report, it is unreliable and inadmissible.  Therefore

15    the only untainted evidence of Dr. Shansky's opinion is that of his deposition, which

16    unequivocally indicates his belief that overcrowding is not the primary cause of

17    Defendants' inability to provide constitutionally adequate medical care.

18    Further, Plaintiffs' expert evidence relating to correctional healthcare issues is

19    limited solely to Dr. Shansky's deposition.  Mr. Scott, Plaintiffs' custodial expert, is not

20    qualified to opine on issues related to the delivery of medical care.  Mr. Scott does not

21    have a degree in the medical or mental health fields or any other advanced degree.

22    (Scott Depo., 9:17-25.)  He has never been a clinician that provided medical or mental

23    health care.  (Scott Depo., 10:1-6.)  Mr. Scott rose through the ranks as a correctional

24    officer to later become the Executive Director of the Texas Department of Criminal

25    Justice.  (Scott Depo., 10:7-9; 10:23-13:6.)  While Mr. Scott was Executive Director in

26    Texas, a physician oversaw all of the medical and mental health services.  (Scott Depo.,

27    19:23-20:15.)  He has no experience analyzing staffing ratios as it relates to medical or

28    mental health clinicians, or the quality of care provided by medical or mental health

1 clinicians. (Scott Depo., 27:7-10; 32:17-22.) Tellingly, Mr. Scott testified that he is not

2 qualified to opine on what the overall goals of a constitutionally adequate medical care

3 system are. (Scott Depo., 102:17-103:9.) Mr. Scott further admitted that he did not look

4 at the healthcare provided by CDCR clinicians in any way "whatsoever" or the quality of

5 the clinicians' care. (Scott Depo., 107:21-24.)

6        Ms. Woodford is similarly unqualified to provide expert testimony on correctional

7 healthcare issues. Ms. Woodford does not have any degrees in medical or mental

8 health, nor does she possess any experience in providing medical or mental health care,

9 including in a correctional setting. (Woodford Depo., 8:25-9:2; 12:3-5.) She has only

10 worked in "various custodial and management positions." (Woodford Report, p. 1, ¶ 1.)

11 When Ms. Woodford was Director of the Department of Corrections, there were Chief

12 Medical Officers at each of the prisons and a head of healthcare services in Sacramento.

13 (Woodford Depo., 23:6-26:11.) Ms. Woodford admitted during her deposition that she is

14 not able to identify the "components or necessary parts of a constitutionally adequate

15 medical or mental health system" in "technical terms." (Woodford Depo., 32:9-34:2.) At

16 the time of Ms. Woodford's deposition, she had not reviewed any of the Receiver's

17 reports or Plans of Action, nor had she visited any prisons in California since she

18 resigned from her position as Undersecretary in July 2006. (Woodford Depo., 54:19-24;

19 57:4-8; 56:17-25.) Ms. Woodford does not know the current status of the delivery of

20 medical care in California's prisons. (Woodford Depo., 59:24-60:3.)

21        Plaintiffs only expert evidence relating to the provision of healthcare is strictly

22 limited to Dr. Shansky's deposition. Both Mr. Scott and Ms. Woodford are unqualified to

23 provide testimony as to issues related to the delivery of medical care and Dr. Shansky's

24 "expert report" is unreliable and biased as it was drafted by Plaintiffs' counsel. Thus,

25 based on Dr. Shansky's deposition, no material fact remains in dispute, and Defendants

26 must therefore be permitted to file a summary-judgment motion as is contemplated by

27 Federal Rule of Civil Procedure 56(b), and that motion must be granted.

28 / / /

*PLATA* DEFS.' STMT. RE SHOWING TO FILE MOT. FOR SUMM. J.
CASE NOS. C 01-1351 TEH; 2:90-CV-00520 LKK JFM                    1551585.1

1    **B.    The Receiver's Reports and Plan of Action Do Not Indicate that
2           Overcrowding is the Primary Cause of the Unconstitutional Delivery of
       Medical Care.**

3          In addition to Dr. Shansky's testimony that the unconstitutional delivery of medical

4    care is a "polycentric problem," and that overcrowding is not the primary cause, the

5    Receiver too has filed numerous reports indicating that many factors combine to create a

6    constitutionally inadequate healthcare system, the least of which is overcrowding.  The

7    Receiver's most recent plan of action outlined the many necessary steps that must be

8    taken to provide constitutionally adequate medical care to inmates.  The plan of action

9    did not cite to the release of inmates as a necessary step to the provision of a

10   constitutional-level of medical care.  Given the unique position of the Receiver and the

11   Receiver's office and staff as the sole entity charged with bringing CDCR's medical care

12   up to constitutional standards, it should remain undisputed, in light of his plan of action,

13   that overcrowding is not the primary cause of CDCR's inability to provide constitutionally

14   adequate medical care.  The Receiver's plan of action thus demonstrates that no

15   material issue of disputed fact exists, and that a prisoner release order is therefore

16   inappropriate and unnecessary.

17   **C.    This Court's Requirement that Defendants Make a *Prima Facie* Showing
           Before Being Permitted to File a Dispositive Motion is Prejudicial,
18         Unsupported by Law, and Unnecessary.**

19         Rule 56 of the Federal Rules of Civil Procedure do not contemplate a requirement

20   that a party seeking to file a summary-judgment motion must first notify the opposing

21   party and the court of the basis for that motion.  Rather, Rule 56 states that "a party

22   against whom relief is sought may move *at any time* . . . for summary judgment on all or

23   part of the claim."  This Court's requirement that Defendants must first make a *prima*

24   *facie* showing that Defendants should be permitted to file a motion for summary

25   judgment is inappropriate and prejudicial to Defendants.  This requirement has caused

26   Defendants to preview their evidence for Plaintiffs, and further permits Plaintiffs

27   additional time within which to attempt to reconstruct their experts' testimony and

28   opinions.

- 8 -

*PLATA* DEFS.' STMT. RE SHOWING TO FILE MOT. FOR SUMM. J.
CASE NOS. C 01-1351 TEH; 2:90-CV-00520 LKK JFM

1551585.1

1    Moreover, it should not be Defendants' responsibility, contrary to Plaintiffs'

2  assertion in the joint status conference statement, to alert Plaintiffs to their own expert's

3  testimony and the deficiencies in their case.  Plaintiffs were informed that Defendants

4  intended to rely upon Plaintiffs' experts' deposition testimony in support of their

5  anticipated motion for summary judgment.  Clearly the deposition transcripts of Plaintiffs'

6  experts are equally available to Plaintiffs, and Defendants should not have to provide a

7  line-by-line accounting of Plaintiffs' own expert's testimony that is damaging to Plaintiffs'

8  case.  The propriety of a summary-judgment motion should be determined after thorough

9  review of the motion in its entirety, and should not be based on "a list of specific

10  testimony" as was required by this Court by way of this brief.  (July 2, 2008 Order at 2:2.)

11  / / /

12  / / /

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PLATA* DEFS.' STMT. RE SHOWING TO FILE MOT. FOR SUMM. J.
CASE NOS. C 01-1351 TEH; 2:90-CV-00520 LKK JFM

1551585.1

### III.    CONCLUSION

As Dr. Shansky's deposition testimony indicates above, even Plaintiff's own correctional healthcare expert does not believe that overcrowding is the primary cause of the constitutional violation, nor that a prisoner release order will remedy that violation. No other expert evidence exists to support Plaintiffs' counsel's contentions in these proceedings.  Additionally, the Receiver's reports and plan of action indicate that crowding is not the primary cause of the deficiencies in CDCR's medical care system, and rather, that many factors -- least of all, crowding -- must be addressed before constitutionally adequate medical care may be provided.  Thus, as no material issue of fact remains in dispute, Defendants must be permitted to file a summary-judgment motion, and that motion must be granted.  Indeed, Defendants propose that the dispositive motion schedule be advanced forward to permit this Three-Judge Court sufficient time to review Defendants' summary-judgment motion before trial commences.

DATED:  July 10, 2008                                HANSON BRIDGETT LLP

                                                     By:____/s/ Paul Mello_____
                                                     PAUL MELLO
                                                     Attorneys for Defendants Arnold
                                                     Schwarzenegger, et al.

DATED:  July 10, 2008                                EDMUND G. BROWN JR.

                                                     By:____/s/ Rochelle East_____
                                                     ROCHELLE EAST
                                                     Acting Senior Assistant Attorney General
                                                     Attorneys for Defendants Arnold
                                                     Schwarzenegger, et al.

- 10 -