EXHIBIT F

Avenal State Prison (ASP)
May 23, 2007 -- May 25, 2007
August 7, 2007

1.    Inmate A

This 45 year old inmate was at an EOP level of care and serving his fifth CDCR term. He arrived at ASP in February 2007. Progress notes in early February 2007 indicated that he was assessed as not requiring mental health services and had no history of treatment for mental illness, with the exception of hospitalization for heroin detoxification or treatment of heroin overdose. He was placed into administrative segregation on 3/1/07 for "threatening staff" (it appeared that he was retained there as a result of safety concerns pending an investigation). In a 3/14/07 interview, he was diagnosed with "mood disorder with psychotic features." He was placed into a crisis bed on 3/23/07 after reporting that he "felt depressed and hopeless" due to legal problems. He was subsequently transported to the MHCB at High Desert State Prison and was discharged (approximately 3/30/07) with a diagnosis of "adjustment disorder" with a notation that he was "med seeking." After returning to ASP, he was seen by a psychiatrist on 4/6/07 when he indicated that he was, in fact, fearful of being on the yard. He denied any suicidal intent at that time. The inmate apparently was housed in the OHU at ASP until approximately 4/10/07 after he was returned from HDSP. He was seen for four of five days of required follow-up from 4/10/07 through 4/14/07. Psychiatric technician rounds were inconsistently documented. The inmate was seen by a case manager on an approximately weekly basis through April 2007. Progress notes were adequate and legible.

The record included a treatment plan that was dated 4/11/07. The plan was apparently developed by an interdisciplinary team that included a psychologist, psychiatrist and a "mental health escort" (correctional officer). He was noted to be "disheveled" and "depressed" and was diagnosed as evidencing "mood disorder with psychotic features". The treatment plan did not include target behaviors and included only a list of the services that the inmate was to receive (and not the specific activities that the inmate would be involved in).

Assessment:

This inmate had essentially no history of mental illness prior to the present incarceration (although there was a substantial drug use history and history of hospitalization for overdose). Although there was some information to suggest that this inmate had likely exaggerated symptoms, it appeared that the IDTT acted conservatively in recommending EOP placement. This was likely a correct choice at that point in time as it would facilitate additional evaluation. There was a lapse in the documentation of five-day follow-up after MHCB discharge. Daily psych tech rounds were not consistently documented in administrative segregation.

2.    Inmate B

This 47 year old inmate was designated as requiring an EOP level of care. He had a substantial history of violent behavior that had often been directed toward women. His commitment offense involved a minimally provoked and near-fatal stabbing of his sister.

He had evidenced a tendency to escalate quickly and to direct anger at proximate female staff. There were three treatment plans in the medical record from 2/7/07 to the time of the site visit. The treatment plan completed on 4/12/07 was developed by an interdisciplinary team which included a psychologist, escort officer and an individual whose signature was illegible. The inmate was diagnosed as having "Bipolar II with psychotic features." There was a list of "problems" which were consistent with the diagnosis. "Interventions" included a list of services which were to be provided, (e.g. "case manager," "IDTT," and "psychiatry services").

Notes indicated that he was placed into administrative segregation on 4/5/07 after becoming angry during ICC and later "charging a staff member's door" in an attempt to assault the staff person.

He was seen by a psychiatrist on 4/12/07 and seen by a case manager on 4/5/07, 4/12/07, 4/18/07, 4/25/07, 5/16/07, 5/2/07, 5/9/07 and 5/23/07. While case manager notes were not expansive, they provided basic necessary information. It appeared that he was compliant with medication. There was documentation of psychiatric technician rounds since approximately mid-April 2007.

Assessment:

This inmate had a history of impulsive, violent behavior and had additionally been seen as "paranoid" and evidencing "Bipolar II with psychotic features." It appeared that he had been compliant with medication but he remained "paranoid" and "ruminative." The treatment team did not contain the necessary participants. The inmate appeared to be at an appropriate level of care and will likely require aggressive medication management.

3.     Inmate C

Plaintiffs' attorneys referred this inmate on the basis of his claims that he had not received medication on a consistent basis and because he had been in a "lockdown" situation for some time.

This 25 year old inmate was placed at 3CMS level of care. There was an "undated" letter in the file from the inmate's mother in which she maintained that her son had previously been diagnosed with Bipolar Disorder and that it was "not fair" that he was being held accountable for his behavior because, as a result of his mental illness, he "was not accountable" for his actions. She further stated that he had "never received" the medications that he had been prescribed prior to his incarceration.

A note on 8/29/06 indicated that the inmate was in administrative segregation and that he had received "several" 115s in the general population. A recommendation was made at that time for placement on a level III SNY. He was diagnosed with a depressive disorder; however, a note on 11/2/06 indicated that he "did not want to take psychiatric medication." There were several subsequent psychiatric progress notes that indicated that he continued to refuse medication treatment.

He apparently left administrative segregation and then returned on 11/28/06 following an incident of "mutual combat." Placement was apparently a result of safety concern as he had enemies on both SNY yards at ASP (as noted on 11/30/06). On 11/30/06, he was described as "argumentative" when he was informed that his SNY status was "rescinded" and that he was being considered for indeterminate SHU on the basis of being a "program failure."

On 12/18/06, while in administrative segregation, he complained of mood swings and requested referral to a psychiatrist and "a prescription for Zyprexia." A note on 12/26/06 indicated "delusional content" in his speech and that he reported that a bag of cookies and a cup on his bed were to "appease "Lucifer" (who, he claimed, was in his cell).

By 1/4/07, notes from clinical contact no longer indicated delusional content or mood disturbance. On 1/18/07, he was still awaiting adjudication of his 115s (received in November 2006), and he remained in administrative segregation "pending completion of the disciplinary process." On 1/31/07, the 115 had been heard, yet he remained in ASU.

Records of psychiatric technician rounds were found beginning with the week of 12/3/06 (earlier documentation sheets in the record were mostly blank).

A case manager's note on 3/6/07 indicated that the inmate was "stable." When seen by his case manager on 3/20/07, the inmate reported that he was "very upset" and that he "did not want to be on the yard because it was dirty." He was diagnosed with Mood Disorder at that time.

He was seen by a psychiatrist on 3/21/07, 3/27/07 and 4/6/07. He was diagnosed on 3/27/07 as "Bipolar." Notes indicated that the inmate had admitted buying Wellbutrin from another inmate and was found in possession of Lithium that was not prescribed for him.

Case manager note on 4/23/07 indicated that he was "doing well" and that he had a parole date of 11/7/07.

Assessment:

This inmate was prescribed a number of different medications over the past several months. He was seen often by the psychiatrists who were responsive to the inmate's requests regarding medication. The inmate had chosen not to take prescribed medications at times. Notes in the health care record documented occasions during which the inmate had admitted taking medications that were not prescribed for him. Concerns regarding DOT and medication administration at the institution were raised by these incidents. A review of the available MAR sheets found "blanks" in several areas; this provided additional support regarding medication administration concerns.

There was no evidence to suggest that this inmate had received inadequate psychiatric care.  More recent entries in the record appeared to document that the inmate was assessed as "stable."  It appeared that he was at an appropriate level of care.

EXHIBIT G

Wasco State Prison (WSP)
May 2, 2007 – May 4, 2007

1.    Inmate A

This RC-EOP inmate was placed into the RC-EOP on 1/10/07.  At that point, he was clinically stable according to the treating psychiatrist, with minimal auditory hallucinations, normal mood and good grooming.  He was being treated for Psychotic Disorder NOS.  On 1/10/07, an IDTT met and created a treatment plan utilizing the new form (form 7388).  It was unclear if the inmate received a mental status evaluation at the time of the treatment plan.  Underlying problems included poor grooming, continuing auditory hallucinations and social isolation.  The treatment plan did not indicate what groups were scheduled for him or when they would begin.  One week after the IDTT, he was seen several times for psychiatric follow-up.  At the time he was taking Wellbutrin 100 mg b.i.d., Risperdal 1 mg b.i.d., Cogentin 1 mg b.i.d. and Depakote 500 mg b.i.d.  In addition, he received Zoloft 200 mg every am.  A Valproic acid level obtained during October 2006 was 69 (normal range 50-120).

The inmate's psychiatric diagnosis was changed in the latter part of January 2007 to Schizoaffective Disorder, mixed; he was assessed with a GAF of 50.  He was also reportedly mildly depressed.  In early February 2007 he was apparently involved in group therapy.  The only group note in the record was on 2/1/07 and indicated that he had watched an anger management video in the group room.  One month later, another psychiatrist (the third in six weeks) changed his diagnosis back to Psychotic Disorder NOS.  At that time, he was reportedly doing well on medications.  In mid-March 2007, LPTs began to note weekly attendance at group therapy and included a weekly summary of their daily rounds of every inmate.  His clinical picture remained more or less the same thereafter.

Assessment:

There was clinically appropriate mental health care for this stable, but symptomatic inmate.  Medication management by psychiatry was also clinically adequate.  The treatment plan was inadequate, (e.g. no interview mentioned), and progress notes indicated that he was involved in group therapy; however, the notes did not provide detail regarding the type of group or his group involvement.  Diagnostic clarification was also indicated, including consideration of the extent of possible co-morbid cognitive limitations.

2.    Inmate B

A review of this inmate's UHR revealed that there was an admission to the CTC during 2006, and this admission information was present in the UHR.  There were however there no recent progress notes or other information regarding his recent mental health treatment.

Assessment:

The medical record did not include necessary current documentation regarding mental health treatment during 2007.

3.      Inmate C

This RC-EOP inmate was housed in D-yard (not the site of the RC-EOP program). He had arrived in September 2006 on no psychotropic medications, and his screening was negative for mental health concerns. During the latter part of September 2006, he was referred to the POD by a medical doctor because he was confused, extraordinarily fearful, and was possibly hallucinating. He was placed in the MHCB for five days. He was discharged, but he was re-admitted the following day for a seven day stay. His final MHCB admission was on 10/31/07; this hospitalization lasted for three days. Prior to that last admission, he was placed into the EOP and assessed with a GAF of 30. His EOP chrono was renewed on 4/14/07; at that time, he was assessed with a GAF of 45.

He was admitted to the new RC-EOP on 1/12/07. Psychiatric notes reflected that he was asymptomatic and stable on psychotropic medications without side effects. An IDTT met on that same day to formulate his initial treatment plan (using the new treatment plan form 7388). The inmate reportedly refused to participate in groups but was nonetheless scheduled for anger management, self-esteem group, and recreational therapy designed to improve his social and coping skills. He was diagnosed with Schizophrenia, paranoid type, and his GAF was assessed at 45. He was single celled. His medications included Haldol 1 mg b.i.d, Cogentin 1 mg b.i.d., Seroquel 300 mg at p.m. and Inderal 20 mg b.i.d. One of the January MARs located in the UHR ended on 1/13/07, and there were several blanks for Haldol. There were two additional January 2007 MARs. The MARs reflected that many of the morning doses were not administered as the MARs were blank for those dosages.

Progress notes revealed that his level of functioning had fluctuated markedly, even prior to entering the EOP. In February 2007, his GAF was assessed in the 30s. Psychiatrists responded to periods of clinical deterioration by increasing his medications appropriately. For example, at the end of February 2007 his Haldol dosage was 15 mg at HS. By March 2007, he was involved in group therapy and was stabilizing. His medication compliance and ADLs improved. In mid-April 2007, his clinical condition continued to be stable despite some side effects from his medications, including blurred vision. Overall, he did well, and his general mental health had been well maintained.

Assessment:

The treatment plan was adequate. The group documentation, with some exceptions, was very unclear. Overall there was clinically appropriate mental health care for an unstable inmate whose mental status and functioning fluctuated. Despite mention of a new, upcoming parole date, there was no evidence of discharge planning. MAR documentation was poor.

4.      Inmate D

This EOP inmate (both RC and administrative segregation) arrived on 12/11/06, and his screening on 12/13/07 was positive for mental health concerns. He did not receive any mental health treatment until 1/30/07, when he was seen by a psychiatrist on an emergency basis. He had received no MH-7 during that interval and had one (undocumented) emergency case manager visit on 12/21/06. On 1/27/07 he was seen again on an emergency basis by a psychiatrist who described his mood as "labile", with a thought disorder ("... speaks in tongues"), poor ADLs, delusions and hallucinations. The psychiatric diagnosis at that time was Psychotic Disorder NOS, and he was upgraded to EOP level of care. Medications were prescribed on that same morning, with a plan to follow up in five days. Those medications included Seroquel 150 mg b.i.d., Geodon 10 mg b.i.d. and Zydis 5 mg *stat* po or IM. Later that day, at 12:50 p.m., the order for Zydis *stat* was repeated without an IM order. At 6:50 p.m. on the same day, the psychiatrist, by telephone, ordered Haldol 5 mg IM stat, Cogentin 2mg IM stat and Ativan 2mg IM prn for agitation. That order was noted by nursing staff at 7:00 p.m. and there was no psychiatric note indicating that there was a face to face evaluation. On 1/29/07, the inmate complained to his case manager about the forced medication on 1/27/07. The inmate was not on a Keyhea order at the time, and since there was no MAR for January, the administration of involuntary medication was undocumented. For reasons that were unclear from the medical record, the psychiatric evaluation and follow-up review of 1/30/07 occurred in administrative segregation. MARs for February 2007 and March 2007 were grossly incomplete and appeared to be filled out with incomprehensible numerical codes that were a substitute for nursing staff's initials.

The inmate deteriorated even further until he was seen again on an emergency basis and was placed in the CTC on 2/2/07. He was released on 2/4/07 and was returned to administrative segregation where he had an incident with his cellmate whom he called "crazy". He was agitated with head banging and yelling. He broke a window, and he received a 115 and was placed back in administrative segregation. The next progress note indicated that the inmate was on D-yard on 2/16/07, where he was seen by psychiatry and was described as paranoid. On 2/22/07, he was seen again by psychiatry after refusing medication. The inmate refused to talk with the psychiatrist. The psychiatrist suggested possible diagnosis of Schizoaffective Disorder at that time.

The MARs for February 2007 and March 2007 indicated that the inmate was not taking his medications, and several referrals for medication noncompliance were submitted. By the end of March 2007, psychotropic medications were discontinued. On 3/20/07 the first group note was present, and the documentation was significantly deficient. The inmate remained unstable and irrational according to subsequent progress notes. The inmate history between 3/2/07 and 4/8/07 revealed only seven contacts, two of which were on an emergency basis.

Assessment:

The overall mental health care provided to this inmate was poor and clinically inadequate. There was very poor access to treatment services in the RC-EOP, or at the

very least, extremely poor transition from the administrative segregation EOP to the RC-EOP. Documentation of care was deficient in the UHR. There was no treatment plan in the RC-EOP, except for an initial treatment plan in administrative segregation which was clinically inadequate.

It appeared that an involuntary medication order was obtained by telephone without subsequent face to face clinical evaluation. MARs had inadequate documentation, and there was no MAR for a critical period during January 2007. This inmate was not admitted to the MHCB when it was clinically appropriate, and he was discharged prior to stabilization. The mental health care provided in the administrative segregation EOP was also deficient, including the lack of documentation of daily PT rounds.

5.    Inmate E

This RC-EOP inmate arrived on 1/22/07, and his bus screen was positive for mental health issues. On 2/6/07, his mental health screen was positive and he was referred for an MH-7. This evaluation did not occur until 3/20/07, when he received a thorough clinical evaluation and was referred to the EOP. He was placed at the EOP level of care on that date. Prior to this evaluation, his only mental health contact was several psychiatric visits.

It appeared that he was referred on 2/13/07 to a psychiatrist who prescribed the following medications: Seroquel 200 mg every a.m., 600 mg at HS, Wellbutrin 150 mg b.i.d., Benadryl 100 mg at HS, and Haldol 5 mg at HS. This medication regimen was the same one that was prescribed one year prior at this institution. The inmate was described as selectively mute, with very poor grooming and a low GAF. Psychiatric assessment on 2/13/07 revealed similarly that the inmate exhibited muteness, depressed mood, blunted affect and psychomotor retardation. On 3/1/07, another psychiatrist considered a diagnosis of Schizophrenia and adjusted his Haldol dosage. He was reportedly experiencing auditory hallucinations at that time.

The last psychiatric contact prior to placement in the EOP occurred on 3/18/07 when Buspar 15 mg b.i.d. and Effexor 37.5 mg b.i.d. were added, and Wellbutrin was discontinued. He was then provided with a diagnosis of Psychotic Disorder, NOS. Although he was seen by at least two psychiatrists, he had not been referred to the MHCB or EOP.

The inmate was seen for evaluation and a second MH-7 on 3/20/07. His symptoms remained as previously described. The inmate was finally referred to the RC-EOP. Between 3/20/07 and 5/2/07, he received one group and an IDTT meeting on 4/3/07 for his first treatment plan. He had one psychiatric contact at that time and was not again seen by a case manager. His treatment plan of 4/3/07 indicated that he was paranoid and had some anger issues as well has decreased self-esteem. Recommended treatment interventions were generic (e.g. he saw a case manager, had psychiatric contacts, etc. and "offered group"). During the last month, documentation of care included only "group

participation" or refusals to attend an anger management group. Documentation by the recreation therapist was sparse.

Assessment:

There were inadequate treatment services for this seriously mentally ill inmate who was slowly, if at all, improving. Documentation in the medical record was very poor. There was a generalized failure by clinicians to refer to a higher level of care, as was clearly indicated. The mental health screening and referral to RC-EOP was markedly delayed. The treatment plan was generic and not clinically individualized.

6.    Inmate F

This RC-EOP inmate arrived on 12/6/06 and was positive on the bus screen for mental health concerns. The bus screen did not indicate whether mental health referral was requested. The mental health screen was positive on 12/07/06, and he was referred for an MH-7 as well as psychiatric evaluation. His psychiatric condition necessitated his placement in the MHCB on 12/8/06. He was subsequently released from the MHCB and sent to administrative segregation on 12/14/06. There, he was placed at the EOP level of care on 12/20/06 and received a treatment plan that was clinically relevant. He was followed on a weekly basis by the case manager and was also seen twice by the psychiatrist. He was released from administrative segregation on 1/10/07, and he was immediately placed in the RC-EOP. On the same day, he received his first IDTT meeting and treatment plan. He was subsequently placed into group therapy.

The inmate was prescribed Geodon 80 mg b.i.d. He was compliant with that medication, but he refused to take any other medications. On 1/26/07, the case manager referred him to a psychiatrist who saw him two days later. He was reportedly very paranoid with markedly delusional thinking and auditory hallucinations. He became increasingly withdrawn and anxious with resulting cell-front clinical contacts. His delusional beliefs continued. His personal grooming was good and custody regarded him as somewhat moody and cell-bound. He was verbally aggressive at times.

Towards the end of March 2007, the inmate finally agreed to a medication change to Risperdal 3 mg b.i.d. and Cogentin 1 mg b.i.d. His MAR for March 2007 was confusing. Geodon was discontinued and Risperdal was started on 3/21/07; however, it was unclear whether the Risperdal had actually ever been administered. Geodon apparently continued until the end of March 2007. Subsequent LPT notes and psychiatric notes indicated that the inmate had never signed consent for treatment with Risperdal and continued to desire treatment with Geodon. In any event, the inmate continued to be cell-bound and symptomatic, but stable. He went to only one group initially and received at least one case manager and/or psychiatric contact per week. He was often seen either at cell front or in the dayroom and was described during mid-April 2007 as "happily" secluded. He received a 90-day follow-up with the IDTT and a treatment plan update that was clinically relevant.

Assessment:

There was good access to mental health services in the MHCB, RC-EOP and AS-EOPs and clinically appropriate mental health treatment in administrative segregation EOP. The treatment plan was clinically relevant. The clinical justification for the issues related to group attendance for this inmate were well documented. The change in clinical presentation from attending groups to refusing to leave his cell, however, should have precipitated a treatment plan update prior to the 90-day review. Overall, there was adequate care by psychiatry and mental health clinicians for a difficult and treatment resistant inmate. Psychiatric orders were accompanied by a progress note and rationale. While Risperdal was ordered in March 2007, it was never given nor was a refusal documented. Administrative segregation EOP treatment and treatment planning was clinically adequate.

7.    Inmate G

This RC-EOP inmate arrived on 12/21/06 and his bus screen was positive for mental health concerns. He did not receive his mental health screening until 1/9/07, and it was positive for mental health issues and resulted in a referral for further evaluation. He received his MH-7 on 1/18/07 which provided a diagnosis of Mood Disorder NOS, R/O depression, and Psychotic Disorder NOS. He was treated with Seroquel 300 mg at p.m., Remeron 30 mg at p.m., and Trazodone 100 mg every a.m. He was placed at the EOP level of care, and was assessed with a GAF of 44. He was first seen by psychiatry on 1/4/07 when the above mentioned medications were prescribed. His first case manager contact in the EOP also occurred on 1/4/07, and he was seen weekly thereafter by a case manager. The psychiatrist saw the inmate again on the day of the MH-7, and then again on 3/7/07. He discontinued the Seroquel and Remeron because of side effects and prescribed Wellbutrin 100 mg b.i.d. and Depakote 250 mg b.i.d. One month later, he prescribed Effexor 75 mg b.i.d., increased Depakote to 250 mg in the morning and 500 mg at night. Trazodone 100 mg HS was continued. Progress notes subsequently included some group therapy documentation that was cursory. No IDTT meeting or treatment plan occurred until 4/24/07. At that time the IDTT met but a treatment plan was not formulated. Progress notes indicated that he was generally "clean and appropriate" and attended his groups regularly. Comparison between the UHR and the inmate history profile indicated that not all groups were documented. The inmate received at least one case manager and/or psychiatric contact per week.

Assessment:

The mental health screening and resulting clinical assessment were delayed. Access to RC-EOP services was timely. There was no initial IDTT meeting or treatment planning. The inmate history profile indicated that the first IDTT occurred three months later. Documentation of care by case managers and LPTs, especially group therapy, was insufficient and of poor quality. The appropriate laboratory testing for treatment with Depakote did not occur. Psychiatric medication management was otherwise appropriate, and the inmate had resulting stability and adequate functioning at the facility.

8.    Inmate H

This inmate's care was reviewed as a result of multiple CTC placements. Records indicated a total of approximately 13 CTC placements since 5/22/05. Although the inpatient records did not match the existing MHTS records with regard to the dates of inpatient placement and removal from CTC, it appeared that the inmate had been in the CTC through most of the period from 2/20/07 through 3/18/07.

This 45 year old inmate appeared to have been consistently receiving EOP level of care since at least June 2005 (per the existing MHTS records). It appeared that he paroled in approximately September 2006 and re-entered prison in January 2007. Since re-entering prison, he had been seen multiple times each month (sometimes on a near daily basis). For example, there were 28 appointments listed for this inmate in February 2007 and 47 in March 2007.

It appeared that this inmate was prescribed Risperdal, Wellbutrin, Quetiapine, Trileptal and Sertraline at the time of the monitoring tour.

The inmate's record included conflicting information with regard to the length of his current sentence (with some records indicating that he had a "long sentence," is in for a "third strike," while other information suggested that he was to be released in October 2007).

The 3/18/07 admission note indicated that he was admitted following a complaint of being "suicidal" and "homicidal." A suicide risk assessment on 3/17/07 noted that he was "very disorganized," and that he had a "long" sentence secondary to a third strike. He was diagnosed with Schizoaffective Disorder and Polysubstance Dependence on 3/19/07. Progress notes from the inpatient records indicated that that the inmate displayed "depressive affect," expressed suicidal ideation, reported hearing voices and was characterized as an "ineffective" individual.

Progress notes from the treatment team on 2/26/06, 3/1/07 and again on 3/19/07, did not include an indication that the team considered referral to ICF or to acute care. The composition of the team was as per existing Program Guide requirements. The inpatient record from 3/1/07 through 3/8/07 also did not have any evidence that the case manager considered placement into ICF or acute care. On 3/12/07, a LCSW note indicated that the inmate was "not a candidate for DMH at this time" but there was no explanation or elaboration of this impression. There was no indication that this assessment arose from an IDTT discussion of the treatment plan.

Assessment:

This inmate was admitted to MHCB on at least 13 occasions over the past two years including several occasions within the past several months. The notes appeared to be in general agreement regarding the diagnosis of Schizoaffective Depressive Disorder, flat affect and claims of suicidal ideation. Within the records, there was not a clear reference

to a plan to address the inmate's frequent MHCB placements. IDTT notes did not indicate that the inmate's case had been considered for possible placement into a higher level of care. The team should act to expedite this inmate's placement into an EOP or (especially if the EOP placement would be delayed) refer the inmate to intermediate care. If the team was of the opinion that this elevation in care was not indicated, documentation of a team discussion and recommendation to this effect was necessary.

9.      Inmate I

This 26 year old EOP inmate apparently arrived at WSP RC on approximately 1/22/07. He was diagnosed with Schizoaffective Disorder – provisional by history. He was placed into the RC administrative segregation on 2/9/07 from the MHCB as a result of safety and security issues.

The medical record included a treatment plan, dated 3/14/07, that cited "anger issues" and "low self image" as problems; however, neither psychosis symptom control nor medication management were included as problems. A treatment plan form included documentation that the IDTT included the psychologist, psychiatric technician and MSW. It was not clear that the psychiatrist participated in this meeting.

Information from the MHTS indicated that the inmate was placed into the MHCB on 1/24/07 (no release date was recorded), 2/5/07 and 2/6/07 and 3/2/07 to 3/6/07. Inpatient records within the health care record indicated that he received MHCB care at Kern Valley State Prison from 1/26/07 through 1/30/07. There were no other records of inpatient hospitalizations located within his health care record.

The initial MHCB placement at WSP occurred approximately two days after the inmate's arrival at the institution and was secondary to "suicidal behavior" (a self-inflicted laceration to the arm). The inmate was apparently sent to the MHCB at KVSP, where he remained for four days and was discharged with a diagnosis of Schizoaffective Disorder, NOS.

He was seen on 1/23/07 by a case manager who diagnosed intermittent Explosive Disorder and noted that the inmate acted in a "paranoid" manner, reported feeling depressed, admitted to difficulties sleeping and reported attempted self-mutilation.

A case manager note written on 2/06/07 indicated that the inmate was placed into administrative segregation after he began punching the wall and window; he was then pepper sprayed.

The initial administrative segregation IDTT occurred on 2/14/07.

A case manager note on 2/14/07 indicated that the inmate "does meet criteria for referral to intermediate care" but was not referred "due to monitoring for decompensation." On that same day a note from the same clinician listed coping skills, relaxation techniques and anger management as interventions.

The inmate was seen on 1/31/07 by a psychiatrist who diagnosed Mood Disorder NOS. At his next psychiatric evaluation on 2/14/07 he was diagnosed with Schizoaffective Disorder. The psychiatrist's report on 2/14/07 appeared to indicate that the inmate was stable but depressed.

There was a blank psychiatrist note in the record (e.g. only the pre-printed form with no checks or other information), on 2/20/07 (not signed), and again on 2/22/07.

He was seen for crisis follow up on 2/1/07, 2/2/07, 2/3/07 and 2/4/07.

There was an ICC summary on 2/16/07 and an IDTT apparently occurred on 4/3/07 (although there was no documentation of the attendees at this meeting). The record included weekly notes from psychiatric technicians, and notes regarding his group attendance.

The inmate was seen by a case manager on 2/6/07, 2/14/07 and 4/3/07. The case manager's notes were very minimal and did not provide significant relevant clinical information. There were no records in the chart to indicate that the inmate was seen consistently by the case manager during this period. Review of the MHTS data appeared to indicate that most of this inmate's clinical contact occurred within the context of CTC rounds or five-day follow-up and that, since 1/1/07, he was seen for regular case manager contact on 3/15/07 and 3/20/07. While it appeared that he was seen by social workers or psychologists at least once per week, these visits were conducted by several different clinicians and were for purposes of CTC follow-up.

The inmate was seen by a psychiatrist on 1/31/07, 2/14/07, 3/10/07, 3/11/07, 3/13/07, 3/31/07 and 4/6/07.

Assessment:

Despite several inpatient placements for suicidal ideation, the record included no clear evidence that the inmate was considered for transfer to a higher level of care by the IDTT. There was documentation that the IDTT occurred, but there was little discussion of what the IDTT considered. It appeared that this inmate was not consistently seen by a case manager on a weekly basis.

10.    Inmate J

This 29 year old inmate's case was reviewed due to multiple MHCB admissions. He was apparently evaluated at Atascadero State Hospital in 2006 (while serving an initial CDCR sentence). Records from this evaluation indicated a history of childhood hyperactivity, an apparent suicide attempt as an adolescent, multiple suicide attempts and self-inflicted injury both within and outside of the CDCR, and multiple crisis bed admissions while incarcerated. Records from the MHTS indicated that this inmate was placed into MHCB from 1/24/07 to 1/25/07, 1/30/07 to 2/1/07, 2/1/07 to 2/7/07, 2/8/07 to 2/14/07, 2/25/07 to

2/28/07, 3/2/07 to 3/9/07 and 3/31/07 to 4/2/07. All hospitalizations were apparently due to suicidal ideation.

The inmate was processed through WSP's RC in late January 2007. The intake evaluation noted the history of suicide attempts and provided a diagnosis of Schizophrenia, paranoid type. He was placed at the EOP level of care on 1/24/07.

An initial admission to the CTC occurred on 1/24/07 when the inmate was described as "hopeless, depressed, and tearful." He reported that he engaged in self-injurious behavior for pain relief.

On 2/2/07, he was noted to be in his "3rd CTC admission." He was again described as suicidal and fearful of peers. He was diagnosed with Psychotic Disorder, NOS.

A progress note dated 4/2/07 documented the inmate's eighth CTC admission due to auditory hallucination that told him to harm himself. He was diagnosed with Schizoaffective Disorder at that time.

There was little mental health information within this individual's medical record with the exception of the inpatient records.

Assessment:

This inmate's record contained little information documenting case manager contacts, treatment plans or required evaluations. There was no evidence that this inmate had been considered for referral to a higher level of care.

11.    Inmate K

This 30 year old inmate was receiving 3CMS level of care and was housed in the general population at WSP. He was housed in the WSP RC July 2006 through August 2006. The diagnoses provided included the following: "Rule Out Psychosis NOS" and "Rule out mood disorder NOS."

A treatment plan on 10/4/06 included documentation that the necessary participants were involved in the IDTT and participated in the development of the plan. The plan included a list of problems and symptoms that were consistent with the diagnoses along with an appropriate list of interventions.

Review of chart entries from December 2006 to the time of the visit revealed that the inmate was seen at appropriate intervals. The progress notes were clinically relevant. The inmate was seen by psychiatry staff at approximately monthly intervals.

Assessment:

The documentation of case manager visits and the treatment planning for this inmate were clinically relevant. Psychiatric medication management was appropriate, and the inmate was seen consistently by the psychiatrist. The inmate appeared to be at the appropriate level of care, and he reported that he was doing well.

12.    Inmate L

This 24 year old inmate was receiving 3CMS level of care and was housed in the general population at WSP. He was violated from parole for failure to register as a sex offender. Records indicated a history of three to four suicide attempts, the last one in June 2006 via a drug overdose, as well as a history of mental health treatment since childhood.

There was a treatment plan in the record dated 2/14/07. The participation by the IDTT was documented on the 7388 (treatment plan form). He was diagnosed with Depressive Disorder, NOS. There was an adequate problem list that was consistent with his diagnosis. "Interventions" were not listed but the "goals" were appropriate

Progress notes in the medical record (since November 2006) suggested that he was seen by psychiatry for medication management and was seen at least once for case management follow up.

There was a chrono in this inmate's chart from the Transitional Case Management Program which indicated "appointment not available" (apparently referencing pre-release planning prior to his last parole).

Assessment:

The inmate was seen as per Program Guide intervals. Progress notes written by the case manager were clinically appropriate. The treatment plan was generally adequate, although the interventions that were recommended were not well described.

13.    Inmate M

Information from this inmate's medical record indicated that he was admitted to the CTC on 12/8/06 and was reportedly psychotic. A treatment plan was developed by the IDTT on 12/11/07 (and documented on an MH-2). He was diagnosed with Schizophrenia, undifferentiated type. Photographs of the inmate, apparently taken on 12/28/06, showed him standing naked in a very disorganized cell with a washcloth over his penis. Notes from an RVR assessment at that time indicated that he had broken a cell window and was observed talking to the mirror, smiling and laughing inappropriately. The cell was described as disorganized and malodorous, and the inmate had foul body odor. He was diagnosed with Schizophrenia, paranoid type. The plan described at that time was to "[F]ollow up weekly with case manager."

The inmate was admitted to the MHCB on 1/12/07, discharged from MHCB on 1/17/07. This admission followed an apparently "unprovoked" assault in which he used his fist to

strike another inmate on the face and head.  Progress notes indicated that the inmate was experiencing "increasing paranoia."

Assessment:

It would appear that this inmate was reportedly actively psychotic in early December 2006 and likely met the criterion for "gravely disabled" by late December 2006.  He remained in this condition at least through 1/17/07. It appeared that the IDTT failed to act in an appropriately aggressive fashion to stabilize this individual through medication management and/or referral to a higher level of care.

14.    Inmate N

This 29 year old 3CMS inmate was housed in the administrative segregation unit at WSP. There was a history of hospitalization on at least four occasions prior to arrival at WSP; the inmate reported that all of these hospitalizations were due to depression. He was screened in the WSP RC on 1/23/07; he arrived there on 1/11/07.  The full mental health evaluation was delayed as it did not occur until 4/10/07.

There was a treatment plan dated 3/28/07 which was completed with the participation of the IDTT (a team which consisted of the psychiatrist, psychologist, psych tech and additional psychologist, but no CCI). The listed problems appeared consistent with the diagnosis, and interventions also appeared appropriate.

The inmate was seen by a psychiatrist on 3/22/07 and again on 3/28/07.  He was seen by a case manager on 3/29/07, 4/5/07, 4/12/07 and 4/25/07.  Psych tech rounds were documented.  A suicide risk assessment was completed on 3/30/07.

Assessment:

This inmate's initial processing through the RC appeared to have been delayed as he arrived on 1/11/07, but he was not screened until 1/23/07.  He was not seen by the IDTT until 3/28/07.  Given this inmate's history of suicide attempts, this was especially problematic.  Since that time, he was seen by a psychiatrist, a case manager and by psychiatric technicians within the time frames that outlined in the Program Guides.  He appeared to be placed at the appropriate level of care.  It was not clear from the medical records why this inmate was housed in administrative segregation.

15.    Inmate O

This 39 year old inmate was placed at the 3CMS level of care and was housed within WSP's administrative segregation unit.  He apparently entered the reception center on January 31, 2007 and was screened on 2/8/07.  The screen was negative.  He was seen on 2/21/07 by a psychiatrist, apparently in response to a self-referral.  The inmate claimed a history of "anger issues," and was diagnosed with "adjustment disorder NOS."  He was prescribed Trazodone which he subsequently declined to take; this medication was

discontinued on 3/21/07. His medical record included documentation that he was seen on rounds by psych techs.

He was seen on 3/15/07 by psychologists who reported that he appeared to be "stable." There was a suicide risk assessment on 3/19/07 that found him at "low risk." He was subsequently seen by a case manager on 3/21/07, 3/29/07 (at cell front as a result of "time constraints"), 4/5/07, 4/12/07, 4/16/07 and 4/23/07.

There was what appeared to be a "temporary" treatment plan in the record. It was included within the progress notes and was not on the standard treatment plan form. A treatment plan (form 7388) by the full treatment team occurred on 3/21/07. The plan included interventions that were consistent with the diagnosis. The diagnosis included on this form was "schizoaffective disorder by history."

Assessment:

This inmate was seen on a weekly basis by a case manager, and he was seen routinely for rounds by a psych tech. The inmate was followed consistently by a psychiatrist for medication management; although he declined medications, his medications were ordered, monitored and discontinued in a timely fashion. The IDTT composition was appropriate. The existing treatment plan was adequately formulated.

EXHIBIT H
Kern Valley State Prison (KVSP)
June 5, 2007 – June 7, 2007

1.    Inmate A

This 3CMS inmate was housed in general population. He was diagnosed with Major Depressive Disorder. He was treated with Celexa 20 mg/day and Benadryl 50 mg/day. This inmate's medical record was reviewed at the request of the plaintiffs' attorneys regarding the care that he had received.

This inmate was transferred from CSP/Corcoran to KVSP in December 2005. A chrono dated 4/21/06 indicated that he was placed into the 3CMS program. Progress notes indicated that he was followed consistently by the psychiatrist while housed in general population. However, there was no documentation of CCM contacts until 3/26/07. This was the only documentation of CCM contact at KVSP. There was no documentation of any IDTT meetings.

Assessment:

There was no documentation of quarterly CCM contacts, IDTT meetings or evidence of treatment planning. There was documentation of consistent psychiatric contacts.

2.    Inmate B

The plaintiffs' attorneys requested that the monitors review this inmate's treatment plan and level of care because the inmate had reported that he was not receiving psychiatric care and was being abused by his cellmate.

This inmate had been seen clinically by the psychiatric staff as well as clinicians. An MHCB treatment plan was located in the medical record, although treatment plans for other treatment areas were not present. This inmate had not been seen by the IDTT while housed on the yard and had no treatment plan that was relevant to his current housing assignment. He was receiving 3CMS level of care (per placement chrono dated 5/7/07). Custody staff reported that he was single-celled. He was prescribed Prozac 40 mg/day and Seroquel 800 mg/day on 4/11/07. On 5/29/07, he met with the psychiatrist who discontinued his medications. The psychiatrist's note indicated that inmate had not been taking medication and reported that he was feeling "fine."

The inmate arrived at KVSP on 11/29/06. He was identified as being transgendered and indicated that he was taking female hormones. The bus screen at the time indicated that he was removed from 3CMS in August 2006. However, it appeared from subsequent documentation that the screen was incorrect and that the inmate remained 3CMS upon arrival. There was no initial evaluation or treatment plan completed while the inmate remained in the yard. As a result of confusion regarding the inmate's MHSDS status, a LPT completed a post-placement screen on him on 3/20/07. This noted that a referral was indicated. A review of the LPT referral log indicated that no referral had ever been made.

The inmate was admitted to the MHCB on 3/22/07 and discharged on 3/26/07. His diagnosis was Obsessive Compulsive Disorder at admission and discharge. This admission was as a "result of increased stress and suicidal ideation." The inmate was readmitted on 5/4/07 and discharged on 5/7/07. (Authorization for release of information was signed by the inmate on 4/5/07, but it did not indicate who was to receive the information or what information was to be received.) The provisional diagnosis at the time of admission and discharge was Mood Disorder NOS with a secondary diagnosis of Gender Identity Disorder. There was no record that the inmate had had an IDTT or updated treatment plan other than while in the CTC, and those treatment plans were minimal at best. The contact history indicated that the inmate was also seen on 5/14/07 by a case manager for the five-day follow-up from MHCB discharge and on 4/11/07 by the psychiatrist due to a staff referral. Other than those contacts, he had only been seen in CTC.

Assessment:

There was a lack of documentation of required clinical contact other than during MHCB admission and follow-up after discharge. Treatment planning and consistent IDTT meetings were also absent, except during MHCB admission. There were also problems noted regarding appropriate and timely response to mental health referral.

3.     Inmate C

This inmate was admitted to an OHU at his sending institution, DVI, on 5/23/07. The record indicated that he was very depressed, was poorly groomed, that he appeared paranoid and exhibited many psychotic symptoms. He had been released from Metropolitan State Hospital (MSH) on 3/29/07 after more than one year there as a 1370, Incompetent to Stand Trial. Based on a review of the MSH records he appeared to remain very symptomatic at discharge, but had reportedly improved enough to be determined to be competent and returned to court. This inmate had been on Haldol and Prozac at the county jail, but he refused Haldol at the OHU. The staff noted that he appeared gravely disabled, but no reference to initiating a Keyhea order was noted. This inmate arrived at the KVSP MHCB on 5/24/07 and refused all medications, including those for his physical health. His admission provisional diagnoses were Psychotic Disorder, NOS and Mood Disorder, NOS. His discharge diagnoses from MSH were, Schizophrenia, undifferentiated type, Alcohol Dependence, Cocaine Dependence and Antisocial Personality Disorder. The inmate's History and Physical was completed within 24 hours. The IDTT did not occur until 5/29/07, had insufficient staffing (no CCI) and contained a minimal plan.

The inmate refused recreational therapy on 5/31/07 and staff reported that he rarely left his room for therapeutic activities. He signed a consent form to take Haldol and Cogentin and began taking 5 mg Haldol twice daily and 1mg Cogentin twice daily. A review of the inpatient MAR indicated that he also had prescriptions for 20 mg Geodon to be given

intra-muscularly every 12 hours as needed for extreme agitation and 100 mg Vistaril to be taken by mouth every 12 hours as needed for anxiety and agitation.

The staff reported that the inmate appeared to respond to internal stimuli, was very paranoid, had pronounced negative symptoms of psychosis and would not engage with the treatment team; despite these symptoms, he was not referred to DMH. The inmate did attend an IDTT held on 5/31/07. The staff indicated on the IDTT progress note that this was a sign of improvement and that consequently a referral to DMH was not warranted. Despite this, he continued to be minimally responsive to treatment interventions and exhibited delusional thinking and thought disorder. He remained in the MHCB at the time of the visit; the staff indicated that he was held there to allow for improvement prior to return to DVI.

Assessment:

The initial IDTT meeting was untimely. There was not documentation of custody presence at the meeting. Treatment planning was generic and not treatment individualized. In light of this inmate's history of acute psychotic symptoms, psychiatric inpatient treatment and his level of functioning, referral to DMH for intermediate care appeared to be indicated. He had not been referred at the time of the visit. The clinical director of the MHCB was contacted, and this case was reviewed with him. It was recommended that this inmate be considered for referral to DMH-ICF.

4.    Inmate D

This inmate was admitted to MHCB on 2/1/07 and discharged on 2/21/07 with a discharge diagnosis of Bipolar I Disorder, most recent episode manic, severe with psychotic features. His Axis II diagnosis was Antisocial Personality Disorder. He was admitted due to suicidal ideation; he also reportedly had delusional thinking and disorganized speech at the time of admission. He was discharged to EOP level of care with the following medications: Geodon 80 mg twice daily, Seroquel 800 mg at night, and Eskalith 450 mg twice daily. This inmate reportedly refused Lithium and signed a refusal for Depakote during his MHCB stay.

A SRA was completed on 2/1/07. The treatment plan was not completed until 2/7/07, and there were no documentation of custody presence at the meeting. The treatment plan was generic.

This inmate was placed in restraints on 2/12/07 at 1755 hours due to banging his head and arms on walls and windows with observable injuries. He was initially placed in the safety cell, but continued to engage in self-injurious behavior and was ultimately placed in restraints. The inmate remained in restraints until 2/13/07 at 700 hours. There was no documentation that all extremities were released for range of motion checks nor that fluids were offered and opportunities to void were offered as required. There was also no

documentation specifying release criteria nor that release criteria were assessed as required by policy.

Assessment:

The MHCB treatment plan was delayed, and there were no documentation of custody presence at the meeting. The treatment plan was generic and not individualized. Although the duration of restraint use was not problematic, there was inadequate documentation of restraint use and necessary clinical monitoring.


5.    Inmate E

This inmate was admitted to the MHCB on 1/18/07 and was discharged on 1/24/07 with a diagnosis of Psychotic Disorder NOS and Antisocial Personality Disorder. He was prescribed the following medications: Prozac 20 mg/day, 40 mg Geodon 80 mg/day and Benadryl 100 mg at bedtime. The admission history and physical examination occurred within 24 hours. An evaluation and SRA were completed by the CTC social worker on the date of admission. However, the treatment plan was not completed in a timely manner, having been completed on 1/22/07. The IDTT that occurred on 1/22/07 did not have a CCI present.

This inmate was placed in restraints on 1/20/07 at 1345 because of agitation and smearing of feces in his cell. The inmate also refused to return the food tray. There was also a note by the psychiatrist, indicating that a Keyhea order would be pursued; however, it would not be pursued if the inmate accepted medications for the following 72 hours. It appeared that the inmate was compliant with medications. There was no documentation specifying release criteria. He remained in restraints for 22.8 hours. Documentation did not support that full range of motion checks of all extremities, fluid and voiding offers, and an assessment of release criteria occurred as required by policy.

Assessment:

The MHCB treatment plan was not completed in a timely manner. The IDTT that occurred on 1/22/07 did not have a CCI present. Restraint use was not well documented, including documentation of full range of motion checks and release criteria.


6.    Inmate F

This inmate was admitted to the MHCB on 5/11/07 and discharged on 5/17/07. He was diagnosed with Schizoaffective Disorder. He was discharged on the following medications: Geodon 160 mg/day, Benadryl 100 mg at bedtime, and Depakote 1250 mg/day. This inmate was admitted due to suicidal ideation, paranoia, anorexia and inability to care for himself. There was no SRA completed at the time of admission and

no evaluation or treatment plan could be located within the file. It appeared that no IDTT occurred during the inmate's stay, however, this may be a medical records filing issue.

This inmate was placed in restraints on 5/12/07 at 1200 hours. The inmate was described as refusing medications and food and appeared to be dehydrated. He was described by the staff as oppositional, hostile, irrational, delusional and agitated with pacing throughout the night and morning. It was not clear from the specific five-point restraint notes that the behavior justified the use of restraints. The psychologist's order for restraints cited "danger to self and gravely disabled" as the reasons for restraints. A nursing progress note later on 5/12/07 indicated that the inmate was cooperative, taking medication and denied suicidal ideation yet was not released from restraints. According to the restraint log, this inmate was released from restraints on 5/13/07 after 21.6 hours in restraints; however, the medical record did not verify this information.

There was no documentation that all extremities were released for range of motion checks nor that fluids were offered and opportunities to void were offered as required.

Assessment:

There was no SRA completed at the time of admission and no evaluation or treatment plan was located within the medical record. Documentation was also lacking regarding IDTT meetings occurred during the inmate's MHCB stay. There was inadequate documentation regarding the use of restraints. The criterion for placement into and removal from restraints was deficient. A nursing progress note on 5/12/07 indicated that the inmate was cooperative, taking medication and denied suicidal ideation, yet he was not released from restraints. There was no documentation that all extremities were released for range of motion checks, or that fluids and opportunities to void were offered as required.

7.    Inmate G

This inmate was admitted to the MHCB on 2/16/07 and discharged on 3/5/07 (LOS 17 days). His diagnosis on discharge was Schizophrenia, paranoid type and Antisocial Personality Disorder. A SRA was completed on 2/17/07 and an MH1 Add-a-Page was completed but was not dated. The treatment plan was not completed timely, but was eventually completed on 2/20/07. There was no CCI present for the IDTT and the treatment plan was of poor quality and contained minimal treatment information. There was a note in the chart that indicated the inmate would be released on 3/4/07 to Atascadero State Hospital as a Mentally Disordered Offender.

The inmate had multiple documented medication refusals while in the MHCB. On 2/26/07 he was started on the following involuntary medication: Geodon 160 mg/day with a 20 mg intramuscular injection as back-up when the inmate refused medication by mouth. At 0930 hours on that date, this inmate was described by the psychologist as very psychotic, vey delusional, refusing to interact, and as having an angry affect. Later that day, at 1455 hours, this inmate was placed in restraints; although the log indicated that he

was placed into restraints at 1535 hours. There was no note documenting the need for restraints, and there was no physician's order placing the inmate in restraints. There was a nursing note at 1537 hours indicating that the inmate was placed in restraints "as ordered." At 2000 hours there was an order discontinuing restraints, resulting in total time in restraints of five hours and five minutes. There was no documentation of release criteria nor was there any documentation that range of motion tests occurred, that fluids and voiding opportunities were offered, or that release criteria were assessed as required by policy.

Assessment:

The treatment plan was not completed timely, and the IDTT meeting did not include the necessary participants. The treatment plan was of poor quality and not clinically relevant. Documentation of restraint use was deficient. There was no note documenting the reason for restraint use, and there was no physician's order placing the inmate into restraints. There was also no documentation of release criteria, nor was there any documentation that range of motion tests occurred and that fluids and voiding opportunities were offered.


8.    Inmate H

This inmate was admitted to the MHCB on 2/21/07 and was discharged on 3/21/07. He was diagnosed with Schizoaffective Disorder, bipolar type, and Antisocial Personality Disorder. His history and physical assessment (H&P) was done in accordance with guidelines on 2/22/07. This inmate had documentation of multiple medication refusals, and it was unclear if he was discharged on psychotropic medications. The mental health assessment could not be located in the file. The SRA and treatment plan were not completed until 3/12/07, which was not in accordance with the Program Guide. The treatment plan was minimal and there was not full representation at the IDTT (i.e., no custody presence including CCI).

This inmate was placed into restraints on 2/25/07 at 1048 hours. He was removed from restraints at 15:20 hours for a total of four hours and 32 minutes spent in restraints. Restraints were ordered by the psychologist after the inmate kicked and "head-butted" officers. No release criteria nor treatment plan were specified in the order for restraints nor in the restraint progress note. Documentation failed to support that nursing staff were conducting range of motion exercises, offering fluids and voiding opportunities, or assessing the inmate for release as required by policy.

Assessment:

The mental health assessment was not located in the UHR. The treatment plan and SRA were not completed timely, and the IDTT meeting did not include the necessary participants. The treatment plan was of poor quality and not clinically relevant. Documentation of restraint use was deficient. There was no documentation of release

criteria, nor was there any documentation that range of motion tests occurred and that fluids and voiding opportunities were offered.

9.    Inmate I

This inmate was admitted to the MHCB on 5/2/07 and was discharged on 5/11/07 with a diagnosis of Major Depressive Disorder with psychotic features, recurrent, severe. He was returned to housing with the following medications: Seroquel 800 mg/day and Wellbutrin 300 mg/day. The H&P was not completed within 24 hours, occurring on 5/4/07. There was a SRA and evaluation (CDCR form 7386) completed on the day of admission and his initial treatment plan was completed timely (5/3/07). However, no custody staff, (including CCI), were present for this inmate's IDTT meeting.

On 5/4/07 this inmate was placed in a safety cell initially due to agitation, including hitting his head and hands against the walls of his cell. He continued to engage in this behavior in the safety cell, and documentation showed that injuries to his hand were visible. The inmate was then placed into restraints at 1515 hours. No release criteria or treatment plan were specified in the restraint order or restraint progress note. During one nursing assessment, the inmate's hand was noted to have been swollen; however, there was no documentation that he received care for his injuries or that restraints were modified, if necessary, because of the injury. In addition, nursing documentation did not support that fluids or voiding opportunities were offered, range of motion exercises were done, or that release criteria were assessed as required by policy. This inmate was released from restraints at 1900 hours on 5/4/07 for a total of 3.75 hours in restraints.

Assessment:

The treatment plan and SRA were completed timely, but the IDTT meeting did not include the necessary participants. Documentation of restraint use was deficient. There was no documentation of release criteria, treatment planning, or documentation that range of motion tests occurred and that fluids and voiding opportunities were offered. Furthermore, there was no documentation that the inmate's hand injury was appropriately treated or that restraints were adjusted accordingly.

10.    Inmate J

This inmate was admitted to the MHCB on 1/14/07 and was discharged on 1/23/07 with diagnoses of Major Depressive Disorder, NOS and Personality Disorder, NOS. His discharge medications could not be determined from the record. He was initially placed in the MHCB due to suicidal ideation. This inmate was evaluated the day of his admission, and his H&P was not located in the record. The inmate was seen in IDTT meeting timely on 1/15/07, but there was inadequate staffing as only the psychologist and psychiatrist were reportedly present. The treatment plan was also inadequate.

On 1/17/07, this inmate was placed in restraints at 1945 hours. According to the record, the inmate struggled with officers during an escort, attempting to pull away from the escort, and was taken to the ground by custody staff. During this incident, the inmate threatened to kill the staff. There were no release criteria or adequate treatment planning noted in the restraint order or progress note. Nursing documentation did not document that the nursing staff offered fluids and voiding opportunities, conducted range of motion exercises or assessed release criteria as required by policy. The inmate was released from restraints at 1300 hours on 1/18/07 for a total of 17.3 hours spent in restraints. Based on the information available in the medical record, it was unclear if the use of force and subsequent restraint of this inmate was necessary. There was no documentation that the staff used any sort of therapeutic intervention or effective communication to de-escalate the situation when the inmate first began to pull away from his escorting officers.

Assessment:

The inmate was seen in IDTT timely, but the necessary participants were not present at the IDTT. The treatment plan was not clinically individualized. Nursing documentation did not document that the nursing staff offered fluids and voiding opportunities, conducted range of motion exercises or assessed release criteria as required by policy.

Based on the information available in the medical record, it was unclear if the use of force and subsequent restraint of this inmate was warranted. There was no documentation that the staff utilized any sort of therapeutic intervention or effective communication to de-escalate the situation when the inmate first began to pull away from his escorting officers.

11.    Inmate K

This inmate was admitted to the MHCB on 2/9/07 and was discharged on 2/21/07 with the diagnoses of Schizoaffective Disorder, bipolar type and Antisocial Personality Disorder. A SRA was completed on 2/10/07 and a Mental Health Evaluation (CDCR form 7389) was completed on 2/12/07. The treatment plan and IDTT were late and did not occur until 2/20/07 and both were inadequate in terms of staffing and quality of treatment planning. In addition, the discharge documentation was unclear regarding medications, although it appeared that this inmate was on a Keyhea order and had been prescribed Seroquel 600 mg at bedtime.

On 2/10/07 at 1130 hours this inmate was placed in restraints after he refused to stop hitting his head against the walls. He was released at 1550 hours that day for a total of four hours and 20 minutes in restraints. All restraint documentation was inadequate. The restraint order and progress note did not specify release criteria or an adequate treatment plan. Nursing documentation did not note that physical checks, range of motion exercises, and offers of fluid were occurring as required by policy.

Assessment:

The treatment plan and IDTT meeting were not completed timely, and the IDTT meeting did not include the necessary participants. Documentation of restraint use was deficient. There was no documentation of the rationale for placement into restraints, release criteria, treatment planning, or documentation that range of motion tests occurred and that fluids and voiding opportunities were offered.

12.    Inmate L

This 33 year old inmate was housed in administrative segregation. He was evaluated in a "Report for Mental Health Screening Following Incident of Indecent Exposure or Masturbation-Without Exposure" dated 4/11/07. He was treated at the 3CMS level of care at the time of the evaluation, but was subsequently determined to require EOP level of care as a result of the evaluation. He was determined not to meet criteria for Exhibitionism. The diagnoses provided were Mood Disorder, NOS and Personality Disorder, NOS with antisocial, narcissistic and borderline traits. The rationale for the change in level of care was not explicitly stated in the evaluation. It appeared that this change occurred due to "relatively recent but frequent MHCB admissions" for self-reported depression and suicidal thoughts. He was prescribed Quetiapine 800 mg daily, Buspirone 40 mg daily and Wellbutrin. The treating psychiatrist indicated that the inmate's diagnosis was Schizoaffective Disorder, bipolar type. No rationale or historical longitudinal course information was provided. There was no treatment plan in the file and there were no individual contacts from a mental health case manager or counselor. There were no RT notes.

There was insufficient documentation with which to assess the appropriateness of EOP level of care, and review of the medical record indicated that he had not received increased clinical contacts or group therapy. The appropriateness of his diagnoses was questionable, as the inmate was incarcerated for multiple years without mental health problems or psychotropic medications prescribed. Medications were started in July 2006.

Assessment:

There was no treatment plan located in the medical record, and there were no individual contacts from a case manager. There was insufficient documentation to assess the appropriateness of EOP level of care, and review of the medical record indicated that he had not received increased clinical contacts or group therapy. The appropriateness of his diagnoses was also questionable.

13.    Inmate M

This 48 year old EOP inmate was housed in administrative segregation and was awaiting transfer to an EOP. He was diagnosed with Schizoaffective Disorder, and he was prescribed Zyprexa and Zoloft. He was seen at least monthly by the psychiatrist and

every two weeks by his case manager. There was no documentation of RT interventions in the UHR. He had been in the MHCB from 12/21/06 to 12/26/06; 1/6/07 to 1/20/07; 4/5/07 to 4/9/07 and 5/9/07 to 5/14/07 while awaiting transfer to an institution that could provide an EOP level of care.

Assessment:

This inmate required an EOP level of care. The delay in referral to an EOP negatively impacted his condition and was clinically unacceptable.

14.    Inmate N

This inmate was housed in administrative segregation awaiting transfer to an EOP institution. He reported that he was changed from EOP level of care to 3CMS just prior to transfer to KVSP, but was recommended to EOP again following a Keyhea hearing last year. He was diagnosed with Mood Disorder, NOS. He was prescribed Lithium, Buspar and Benadryl, but was recently also prescribed Remeron and Geodon. He stated that he required Cylert, Klonopin and Sinequan. The inmate refused to speak with his case manager because she had not assisted in obtaining a single cell for him. There was no treatment plan in the file or documentation supporting a return to EOP level of care. There was also no clinical evidence during the interview to support an EOP level of care.

Assessment:

Documentation of the rationale for changes in levels of care was insufficient. The medical record also did not document treatment planning.

15. Inmate O

This EOP inmate was housed in administrative segregation awaiting transfer to an EOP. The case manager confirmed that the inmate had been complaining about being unable to speak. She said that the medical staff had found no cause for his condition, nor had they found any reason for him to require the use of a cane. The officer in the unit brought the inmate to and from the interview cage in a wheelchair. The inmate handed the case reviewer a piece of paper on which he had written that he needed a cane and that he couldn't speak because his throat "knotted up a lot" causing him to be unable to talk. He acknowledged that he received his medications as indicated and saw his case manager regularly. It was clear that he comprehended what was said to him and he responded appropriately either in writing or with head nods and hand gestures.

Assessment:

This inmate required an EOP level of care and medical assessment (if not already completed or in process). He was not in any acute distress or discomfort but required a higher level of mental health care than was being provided at KVSP.

16.   Inmate P

This 28 year old inmate had a diagnosis of Bipolar Disorder with a history of MHCB and EOP level of care. He was housed in administrative segregation awaiting transfer to an EOP institution. His case manager saw him approximately every two weeks, and the psychiatrist saw him every 90 days. He was prescribed Geodon 160 mg daily, Seroquel 600 mg daily, Prozac 40 mg daily and Benadryl 200 mg at bedtime. There was no documentation in the UHR about RT interventions. The last treatment plan in the UHR was dated 9/4/03.

Virtually every inmate interviewed in B-1 stated that this inmate had been physically abused by correctional staff in April of this year while he was on a suicide watch in his cell; at that time, the CTC was reportedly full. The UHR revealed injuries sustained in an "altercation with custody" consisting of a black eye, contusion and partial thickness laceration of the eyelid. The inmate reported only that "officers take advantage of us and come into our cells." He complained of verbal abuse. He appeared somewhat preoccupied and had difficulty focusing his attention. His thought processes were mildly disjointed.

Assessment:

This inmate required an EOP level of care as soon as possible. He was not receiving appropriate or adequate mental health services at KVSP. Although he did not complain specifically of the physical abuse reported by other inmates, he may have been fearful of retaliation. Additional investigation into physical abuse allegations was recommended.

17.   Inmate Q

This 52 year old inmate was housed in administrative segregation. He had a history of Bipolar Disorder and 3CMS placement at the time of screening at KVSP on 9/20/06. He was admitted to the MHCB from 5/8/07 to 5/15/07 and was discharged with recommendation for EOP placement. (The MH chrono for EOP was not in the UHR, but MHTS clearly documented EOP level of care.) Since discharged from the MHCB, he had not been seen by his case manager except for the five-day follow-up. The last psychiatrist appointment was on 5/29/07. There was no documentation that he had been seen at all in June 2007 with the exception of daily administrative segregation psych tech rounds.

Assessment:

This inmate required transfer to a higher level of care. He was recommended for the EOP transfer following MHCB admission, but in spite of that, he was not being seen at the required frequency while waiting for transfer.

18.   Inmate R

This 53 year old inmate was being treated for Mood Disorder, NOS with Zoloft, Geodon and Buspar. He was housed in administrative segregation and was recommended for EOP transfer, although the last chrono in his UHR was dated 4/13/06 and indicated 3CMS level of care. He had been housed in the MHCB from 2/12/07 to 2/16/07 and from 5/13/07 to 5/18/07, but five-day follow-up documentation from the most recent stay was not in the UHR. There was no treatment plan in the file from KVSP.

Assessment:

The mental health staff at KVSP had determined that this inmate required EOP transfer. He had not received an appropriate mental care while awaiting transfer.

19.    Inmate S

This 27 year old inmate had been referred for EOP level of care, but was changed to 3CMS on 6/5/07 based on assessment by a case manager that he had "improved and stabilized at a higher level of care." He had not been seen by a psychiatrist for five months prior to the decision to change his level of care, but was seen at intervals of one to four weeks by his case manager.

Assessment:

There was not adequate documentation regarding the rationale for changes in level of care. He was also not seen with the frequency that was clinically required after referral to EOP.

20.    Inmate T

This 26 year old inmate arrived at KVSP on 4/13/07; he had been in the 3CMS program, but he had previously been in the EOP. He had been seen only twice since his arrival at KVSP by case managers. There was no psychiatric assessment to date. The MHTS data indicated that he was still in the EOP, but he did not receive any additional services beyond monthly CM visits.

Assessment:

This inmate was not seen at the required frequency while awaiting transfer to an EOP, nor had he received any other enhanced services.

21.    Inmate U

This inmate arrived at KVSP on 5/29/07 from CIM. The mental health chrono indicated that he had been receiving EOP level of care since 11/16/06. He had a long-standing history of Schizophrenia for which he received past mental health treatment. He was seen daily by psych techs on rounds, but had not yet been seen by psychiatry or any case manager. There were no recreational therapist notes or nursing assessments. The reason

for his transfer to KVSP, given his EOP status was not clear. Although he arrived only a few days prior to the site visit, there was no evidence that any mental health staff (other than psych techs) had reviewed this case. Medications ordered at CIM continued, but MARs were present only through April 2007. When mental health staff was asked to check on whether he had been seen by a case manager and RT, they reported that there had been a case manager contact and recreational therapist session that they were not yet filed in the UHR.

Assessment:

This inmate should not have been transferred to KVSP, and he should be immediately transferred to an EOP program.

22.    Inmate V

This inmate reported that he had been in administrative segregation for approximately one year. The inmate was in the 3CMS program. This inmate was diagnosed with Mood Disorder NOS. He expressed two areas of concern. He reported that he was not receiving the appropriate amount of yard; he stated that only received three hours of yard every 15 days. He was also concerned that there was no electricity in the cells of B-1, and inmates were not permitted access to their own televisions and other electronic devices. This inmate was also concerned regarding the lack of mental health programming available for 3CMS inmates.

Psych techs made daily rounds, and there were no reported problems regarding medication delivery to the unit. The inmate reported seeing the psychiatrist every four to five months. He was assigned a case manager, but was unaware of who this person was. The most recent psychiatrist appointment occurred on 2/26/07. Case manager notes were dated 11/28/06, 2/8/07, 2/26/07, 3/5/07 and 4/8/07. Chronos dated 11/15/06 stated that this inmate would be removed from the caseload on 5/7/07 due to his psychiatric stability without treatment with psychotropic medications. However, he was clearly still on the 3CMS caseload, and Wellbutrin was resumed on 2/26/07. Based upon an interview during the site visit, there were no obvious signs or symptoms of depression.

Assessment:

The inmate appeared to be at the appropriate level of care; however, he had clearly not been receiving mental health services as specified by the Program Guide. He was not seen at required intervals by a psychiatrist and the last treatment plan was January 2006.

23.    Inmate W

This inmate was housed in administrative segregation and was receiving 3CMS level of care. He was seen in an interview booth in housing unit B-1. He reported problems with not receiving an appropriate amount of outdoor recreation and concerns about not having access to television in spite of recent departmental directives. He raised concerns about

correctional staff not knowing how to deal with mentally ill inmates and reported that some correctional officers had beaten Inmate P inside his cell while on suicide watch. He said that he took psychotropic medications, and was seen by the psychiatrist every four or five months. He received no other mental health contact except from the psych techs who rounded daily in administrative segregation. He appeared to be psychiatrically stable and functioning well. He was classified at an appropriate level of mental health care although he was not receiving services as outlined in the Program Guide.

Assessment:

The inmate appeared to be at the appropriate level of care; however, he had not been receiving mental health services as specified by the Program Guide. He was not seen at required intervals by a psychiatrist.

24.    Inmate X

This inmate was interviewed in administrative segregation. He reported that he had been in administrative segregation at KVSP for approximately two months. He was in the 3CMS program, and he had been treated with psychotropic medications. He had not been seen by a psychiatrist for approximately four months; however, there was no evidence of medication discontinuity. He had not seen a case manager. He functioned well and appeared psychiatrically stable. He appeared to be classified at an appropriate level of mental health care although he was not receiving services as outlined in the Program Guide.

Assessment:

The inmate appeared to be at the appropriate level of care; however, he had not been receiving mental health services as specified by the Program Guide. He was not seen at required intervals by a psychiatrist.

25.    Inmate Y

This inmate was housed in administrative segregation and was in the 3CMS program. The UHR review indicated that all psychotropic medication was discontinued on 8/2/06 pursuant to the inmate's request. He had been treated with antidepressant medication for diagnoses that included Major Depression, recurrent, mild, Mood Disorder, NOS and Bipolar Disorder. He had not seen a psychiatrist for several months. The most recent case manager notes were dated 2/21/07, 4/3/07 and 4/18/07. In all of them, he appeared to be stable off medications.

Assessment:

The medical record did not provide documentation to clarify why this inmate remained in the 3CMS program and had not been removed from the MHSDS caseload.

26.    Inmate Z

This inmate was housed in administrative segregation and was in the 3CMS program. He requested to be seen in order to report that he had witnessed the beating of Inmate P by correctional officers. He reported that mental health staff was afraid to report on the abuses perpetrated by security staff on inmates. This inmate reported that he was 3CMS but had not received any counseling. He stopped taking medications a year ago after discussion with his psychiatrist. He said that psych techs rounded daily in administrative segregation, and he reported that mental health access was adequate. The inmate was articulate and appeared psychiatrically stable.

Assessment:
It was not clear why this inmate remained at the 3CMS level of care as he had not been receiving any mental health services and had not been receiving any for some time.

27.    Inmate AA

The UHR and mental health treatment plans for this inmate were reviewed at the request of plaintiffs' counsel to evaluate the appropriateness of his level of care (3CMS). The plaintiffs' letter indicated that the inmate had been "suffering due to a sexual assault by an MTA" and that he experienced suicidal ideation.

This inmate was a 30 year old man with a history of mental health treatment for diagnoses of mild Depression and Adjustment Disorder with depression. The last treatment plan in his file was dated 3/1/05 and was written while he was housed at CSP/Corcoran. The inmate was prescribed antidepressant medication, but he stopped taking it in May 2005 and requested that he be removed from the mental health caseload. He was eventually discharged from the mental health caseload in January 2006.

In early 2007, he was transferred to KVSP. In February 2007, he reported having felt "a little depressed" when he first arrived at KVSP, but his symptoms improved. Several weeks later, there was documentation that he was sent to the MHCB due to suicidal ideation. The assessment indicated the inmate reported having been "abused by staff in the past." There was no indication of when, where or who allegedly abused him, nor was the type of abuse described. (There were no other references to reports of staff abuse anywhere in the file – neither in the mental health section nor in the medical section. There were also no medical complaints or physical examinations supporting a report of abuse.) Paxil was prescribed for him, however, he requested Wellbutrin instead. The medication was changed to Wellbutrin; Vistaril and Seroquel were also added.

Assessment:

The level of care (3CMS) was appropriate. The only intervention provided at KVSP was medication management. The inmate would benefit from counseling. The treatment plan had not been updated for more than two years. Medications were prescribed without

adequate documentation of the rationale for using certain medications or dosage adjustments.

EXHIBIT I

North Kern State Prison (NKSP)
April 17, 2007 – April 19, 2007

1.    Inmate A

This 44 year old inmate was referred by plaintiffs' attorneys as a result of existing concerns regarding this inmate's mental health, his report of limited access to yard and his complaints regarding being housed in an area that was not entirely a MHSDS unit. The inmate was at an EOP level of care and was awaiting transfer from the Reception Center. Records indicated at least eight previous suicide attempts. An evaluation on 1/24/06 resulted in a diagnosis of Psychotic Disorder, NOS. There was a history of state hospital placement.

A treatment plan dated 1/20/06 had very little useful information. An updated plan completed on 4/5/07 was misfiled and included a list of four groups (including recreational therapy, anger management, symptom management, and medication education) which were to occur once per week. Additionally, there was an adequate description of problems and target behaviors. Notes indicated that he was attending a coping skills group approximately weekly beginning in early January 2007. He attended an anger management group in March 2007 and attended a medication education group on 3/26/07 and 4/9/07. He also attended a substance abuse group on 3/20/07.

A review of this inmate's record since January 2007 indicated that he had been seen by a psychiatric technician for rounds on a daily basis (documented in the record). Recorded observations appeared to indicate that the inmate had maintained appropriate hygiene and had been described as having "normal" mood and affect. There was evidence that he had been seen on a weekly basis by a case manager.

Within the earlier entries in this record, the inmate frequently complained that he was not receiving EOP level of care. Occasional notes indicated that, at times, he became angry and abusive toward staff.

Although the clinical notes in this record often included the use of check sheets, additional information included on these records contributed to making the note useful and reasonably comprehensive. There were occasional difficulties with the legibility of some notes.

Assessment:

Overall, it appeared that the number of groups available to this inmate was increasing. From all indications he was psychiatrically stable. There was an adequate plan in place for this inmate, and it appeared that it was being implemented.

This inmate was at an appropriate level of care, and he required transfer to an EOP.

2.    Inmate B

This 32 year old inmate was referred by plaintiffs' attorneys who expressed concern regarding the inmate's presentation during a meeting with the inmate. The inmate claimed to have stopped weekly contact with his case manager secondary to a "conflict."

It appeared that he was initially evaluated at NKSP and had been at 3CMS level of care for well over one year. He had been housed in administrative segregation for nearly a year. A review of his records from 1/3/07 indicated that he had contact with a case manager on a near-weekly basis. He was additionally seen by a psychiatric technician for daily rounds. Case manager and psych tech contacts were documented in the record.

Notes from the psychiatric technician appeared to indicate that the inmate's grooming was adequate, and that his mood and affect were within normal limits. Case manager notes through January indicated that he presented as stable with normal mood and denied suicidal concerns. Most weekly contacts appeared to have occurred in a confidential setting. Notes from February 2007 indicated that the inmate had requested a change in medication to address anxiety. He expressed concerns regarding pending legal issues. These concerns were reflected on a near-weekly basis in notes from weekly contacts through March 2007 and April 2007. He refused release from the Reception Center for SNY processing on 3/27/07. Conflicts were discussed with third watch custody on 3/30/07.

Clinical notes included periodic references to the inmate's refusal of meals secondary to his claims that he was a vegetarian, and the fact that a vegetarian diet was not available to him.

There was a treatment plan in the inmate's record which indicated that he was diagnosed with Schizoaffective Disorder. There was an adequate list of problems with associated target symptoms. The plan included weekly group therapy, but the occurrence of group therapy had not been documented within the record.

The inmate's last IDTT was on 2/21/07 (and was documented in the record). Attendance by a psychiatrist, psychologist, CCII and psychiatric technicians was documented. The treatment plan was updated during that meeting.

The inmate was placed into the MHCB on 4/16/07 as a result of "stressing" because the District Attorney had picked up a recent charge of "battery," (an in-prison offense), which could result in a "third strike."

Assessment:

This inmate appeared to have a history of expressing concerns regarding his housing and had recently refused a move from the Reception Center to a SNY yard. He had made requests for removal of tattoos (likely indicating that he had fears of being recognized for his gang affiliation). He had recently learned that he might be prosecuted for an offense that could result in a "third strike." He should be considered as being at risk for possible self-injury as a result of the existing fears and a pending change in the length of his

sentence. He had been seen as required by clinicians, and these contacts were adequately documented. The IDTT had considered and revised the treatment plan. The IDTT included the required professional staff.

3.    Inmate C

This 66 year old inmate's medical record was reviewed as a result of multiple MHCB admissions. He had been at an EOP level of care since at least 2/16/07.

It appeared that the inmate had been referred for MHCB admissions on at least three occasions. Additional placements in holding cells for crisis care may have occurred, but these placements were not included in this number. On 12/26/06 the inmate was diagnosed with Schizoaffective Disorder, bipolar type. He had a history of self-inflicted burns.

Referral for crisis care occurred on 12/26/06 after the inmate reported having thoughts of self-harm. He was admitted to a holding cell with custody supervision. Of concern were notes that reflected that on 12/26/06, the inmate was complaining of being "cold" and "shivering" (he was dressed in boxer shorts and a t-shirt) several hours after his initial placement into the holding cell. It appeared that he may have remained within the holding cell with periodic nursing supervision for several days. An IDTT meeting was documented on 12/31/06. The record included adequate documentation from nursing staff during the holding cell placement. The notes from this placement were filed within the progress notes section of the record rather than in the back with the inpatient records (thus, tracking this inmate's history of crisis care was quite difficult). There were notes from the psychiatrist and psychologist during the stay. It did not appear that the holding cell placement was captured in the MHCB log that reflected inmates with multiple MHCB placements. Five-day follow-up to this crisis placement was documented within the record.

The inmate was again placed into crisis care in mid January 2007. A MHCB IDTT met on 1/22/07 and was attended by all required staff. Another IDTT occurred on 2/7/07 after the inmate's placement into a holding cell. This time only psychiatry and psychology were represented at the meeting. Five-day follow-up was consistently documented for this inmate following MHCB placement.

Notes indicated that the inmate was scheduled for group on 3/8/07 and 3/15/07, but both groups were cancelled secondary to custody issues. He refused group on 3/22/07 and attended group on 3/30/07.

There were notes documenting that he was being seen during psych tech rounds.

Assessment:

This inmate had a history of multiple placements into crisis care during the past few months. The process, which involved placing inmates into holding cells when no MHCB

bed space was available, was of concern for several reasons. On at least one occasion, placement into the holding cell required several hours during which the inmate remained in another B yard holding cell while dressed in shorts and a t-shirt and complaining of being cold. The system which involved placing notes regarding crisis care within the chronologically filed progress notes made it difficult to track the inmate's history of crisis care. In this case, the data base which was referenced for tracking the number of times that an inmate had been in crisis care reflected three placements (12/5/06 to 12/13/06, 1/10/07 to 1/22/07 and 1/25/07). References to records within the chart indicated that he was additionally in holding cells for crisis care on 12/26/06 (five days), 2/6/07 (one day) and 4/3/07 (six days).

The records reflected that the inmate was seen by IDTTs upon being released from holding cells. It appeared that he was seen at near weekly intervals by his case manager and was seen for rounds by a psychiatric technician. Notes were generally informative and adequate.