1  PRISON LAW OFFICE
   DONALD SPECTER, Bar No. 83925
2  STEVEN FAMA, Bar No. 99641
   ALISON HARDY, Bar No. 135966
3  SARA NORMAN, Bar No. 189536
   REBEKAH EVENSON, Bar No. 207825
4  E. IVAN TRUJILLO, Bar No. 228790
   1917 Fifth Street
5  Berkeley, CA 94710
   Telephone: (510) 280-2621
6
   KIRKPATRICK & LOCKHART PRESTON
7  GATES ELLIS LLP
   JEFFREY L. BORNSTEIN, Bar No. 99358
8  EDWARD P. SANGSTER, Bar No. 121041
   RAYMOND E. LOUGHREY, Bar No. 194363
9  55 Second Street, Suite 1700
   San Francisco, CA 94105-3493
10 Telephone: (415) 882-8200

11 THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
12 CLAUDIA CENTER, Bar No. 158255
   600 Harrison Street, Suite 120
13 San Francisco, CA 94107
   Telephone: (415) 864-8848
14
   Attorneys for Plaintiffs
15

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | No. Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | **JOINT STATEMENT REGARDING DISCOVERY DISPUTE ABOUT DEPOSITIONS** |
| ARNOLD SCHWARZENEGGER, et al., | Date: August 7, 2008 |
| Defendants | Place: Courtroom 26 |
| | Judge: Hon. John F. Moulds, Magistrate Judge |
| MARCIANO PLATA, et al., | |
| Plaintiffs, | No. C01-1351 TEH |
| vs. | **THREE-JUDGE COURT** |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................... iii

JOINT STATEMENT .............................................................................................. 1

    I. Procedural Background ...................................................................................... 1

    II. The Parties Have Met and Conferred About the Discovery Dispute ...................... 2

PLAINTIFFS' CONTENTIONS -- OPENING STATEMENT ..................................... 2

    I. Introduction ....................................................................................................... 2

    II. Argument .......................................................................................................... 3

        A. Courts regularly permit depositions of high-ranking officials where,
           as here, the officials have unique personal knowledge of matters at issue
           in the case ................................................................................................... 4

        B. Governor Schwarzenegger has unique personal knowledge of matters
           critical to plaintiffs' cause of action and defendants' defenses............................. 6

        C. Robert Gore has unique personal knowledge of matters critical to plaintiffs'
           cause of action and defendants' defenses ........................................................ 9

        D. Susan Kennedy has unique personal knowledge of matters critical to
           plaintiffs' cause of action and defendants' defenses .......................................... 10

    III. Conclusion...................................................................................................... 11

DEFENDANTS' CONTENTIONS ........................................................................... 12

    I. Introduction....................................................................................................... 12

    II. Argument ......................................................................................................... 13

        A. The Governor, Ms. Kennedy, and Mr. Gore are High-Ranking
           Governmental Officials and are Therefore Generally Immune from
           Being Deposed About Their Official Actions..................................................... 14

        B. Plaintiffs Cannot Establish that the Only Exception to These Officials'
           Deposition Immunity Applies and Justifies the Deposition of the
           Governor, Ms. Kennedy, and Mr. Gore ............................................................ 15

           1. To the Extent Plaintiffs Seek to Depose the Governor, Ms. Kennedy,
               and Mr. Gore About Relevant Subjects About Which They Have
               Direct, Personal Factual Knowledge, That Information is Available
               Through Other Sources ............................................................................. 17

2. Several of Plaintiffs' Proposed Deposition Topics Are Not Relevant to the Issues in This Proceeding............................................... 20

III. Conclusion.......................................................................................... 21

PLAINTIFFS' REPLY STATEMENT............................................................. 21

I. Introduction............................................................................................ 21

II. Argument ............................................................................................... 21

A. Interrogatories are not an adequate substitute for a deposition ............ 23

B. No other witnesses have the relevant information sought..................... 26

C. Defendants' relevance objections are meritless ................................... 28

III. Conclusion............................................................................................. 28

JOINT STATEMENT REGARDING DISCOVERY DISPUTE ABOUT DEPOSITIONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

# TABLE OF AUTHORITIES

## CASES

American Broadcasting Co. v. United States Information Agency, 599 F. Supp. 765
(D.D.C. 1984) ................................................................................................ 4, 17

Atlanta Journal and Constitution v. City of Atlanta, 175 F.R.D. 347 (N.D. Ga. 1997) ............... 5

Bagley v. Blagojevich, 486 F. Supp. 2d 786 (C.D. Ill., 2007) ............................................. 4, 16

Blankenship v. Hearst Corp., 519 F.2d 418 (9th Cir. 1975) ............................................... 3

Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007) ................................................ passim

Church of Scientology of Boston v. I.R.S., 138 F.R.D. 9
(D. Mass 1990) ........................................................................................... 4, 15, 16

Culp v. Devlin, 78 F.R.D. 136 (E.D. Pa. 1978) ............................................................... 5

In re: David A. Kessler, 100 F.3d 1015 (D.C. Cir. 1996) ............................................... 5, 15

Deukmajian v. Super. Court, 143 Cal. App. 3d 632 (Cal. App. 1983) ................................. 14

Green v. Baca, 226 F.R.D. 624 (C.D.Cal. 2005) ....................................................... passim

Hadnot v. Amos, 291 F. Supp. 309 (M.D. Ala. 1968) ..................................................... 5

Harmston v. City and County of San Francisco, 2007 U.S. Dist. LEXIS 87144 (N.D.
Cal. Nov. 6, 2007) .................................................................................... passim

Kyle Eng. v. Kleppe, 600 F.2d 226 (9th Cir. 1979) .................................................... passim

Lederman v. Giuliani, No. 98-CV-2024, 2002 WL. 31357810 (S.D.N.Y. Oct. 17,
2002) ......................................................................................................... 5

Nagle v. Super. Court, 28 Cal. App. 4th 1465 (1994) ............................................... 13, 15

Northwestern University v. City of Evanston, 2001 WL. 743756 (N.D. Ill. 2001) ................... 5

In re Office of Inspector General, 933 F.2d 276 (5th Cir. 1991) ...................................... 13

Pension Benefit Guaranty Corp. v. LTV Steel, 119 F.R.D. 339 (S.D.N.Y. 1988) .... 5, 14, 17, 26

Prisma Zona Exploratoria De Puerto Rico, Inc. v. Calderon, 154 F. Supp. 2d 245
(D. P.R. 2001) ......................................................................................... 5, 16

RTC v. Drumond, 137 F.R.D. 634 (S.D.N.Y. 1991) ................................................... 5, 15

Richlin v. Sigman Design West, Ltd., 88 F.R.D. 634 (C.D.Cal. 1980) .............................. 5, 15

Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575 (D.C. Cir. 1985) ........... 13, 14

Sweeney v. Bond, 669 F.2d 542 (8th Cir. 1982) ................................................... 14, 16, 26

Trunk v. City of San Diego, 2007 U.S. Dist. LEXIS 24093
(S.D. Cal. April 2, 2007) ................................................................................ passim

In re United States, 197 F.3d 310 (8th Cir. 1999) ........................................... 14, 17

In re United States, 985 F.2d 510 (11th Cir. 1993) ..................................... 13, 15, 26

United States v. Lee, 274 F.3d 485 (8th Cir. 2001) ........................................... 17

Virgo Corp. v. Paiewonsky, 39 F.R.D. 9 (D.V.I. 1966) ..................................... 5, 16

Warzon v. Drew, 155 F.R.D. 183 (E.D. Wis. 1994) ........................................ 14, 16

Westly v. Super. Court, 125 Cal. App. 4th 907 (Cal. App. 2004) ........... 12, 13, 15, 18

## STATUTES

18 U.S.C. §3626(a)(2) .................................................................................... 1, 2, 8

18 U.S.C. § 3626(a)(3)(A)(i)-(ii) ...................................................................... 20

18 U.S.C. §§3626(a)(3)(E)(i) and (ii) ............................................................... 1

## MISCELLANEOUS

4 J. Moore, Federal Practice ¶ 26.69 ............................................................... 3

Rutter,Cal Prac.Fed. Civ. Pro Before Trial,
Ch. 11(IV)-B, §11662 ................................................................................. 24

## RULES

Federal Rules of Civil Procedure, Rule 26(a) .................................................... 3

Federal Rules of Civil Procedure, Rule 26(e)(1)(A) ........................................... 3

## JOINT STATEMENT

### I. Procedural Background

The central allegations in these proceedings are that California's prisons are overcrowded and that the overcrowding is the primary cause of violations of prisoners' constitutional rights to adequate medical and mental health care. Plaintiffs seek a court order requiring the State to reduce its prison population. Under the Prison Litigation Reform Act (PLRA), in order to obtain a "prisoner release order," plaintiffs need to demonstrate to a specially-constituted Three-Judge Panel that "crowding is the primary cause of the violation of a Federal Right" (here, the rights to medical and mental health care), and that "no other relief will remedy the violation of the Federal Right." 18 U.S.C. §§3626(a)(3)(E)(i) and (ii). The PLRA also requires any Three-Judge Panel hearing such a motion to consider whether a "prisoner release order" would have an "adverse impact on public safety." 18 U.S.C. §3626(a)(2).

In its July 2, 2008 Order the Court imposed a September 8, 2008 discovery cutoff. On July 10, 2008, Plaintiffs noticed the depositions of a number of their trial witnesses, including Governor Schwarzenegger, Robert Gore and Susan Kennedy.[1] Evenson Decl., Exh. A. Plaintiffs noticed the Governor's deposition for the Governor's office, and the other depositions for plaintiffs' counsel's offices. *Id.* Plaintiffs' counsel indicated flexibility in re-scheduling the depositions if necessary, and asked defense counsel to propose alternative dates. Evenson Decl., ¶4, Exh. B. Defendants wrote a letter objecting to the three depositions and informed plaintiffs that they would not produce the witnesses absent a court order. Evenson Decl., ¶5, Exh. C.

---

[1] Plaintiffs initially noticed these depositions for dates at the end of September, but once the Three-Judge Panel issued its order setting a September 8 discovery cutoff, plaintiffs re-noticed the depositions for dates within the discovery period. Evenson Decl., ¶3.

## II. The Parties Have Met and Conferred About the Discovery Dispute

The parties have met and conferred about this discovery dispute as required by Local Rule 37-251(b). Plaintiffs' counsel sent a letter to defense counsel regarding the subject of the dispute on July 10, 2008, and defense counsel responded by letter on July 14, 2008. Evenson Decl., ¶¶4-5, Exhs. B-C. Counsel for plaintiffs and defendants then conferred by telephone on July 17, 2008 and again on July 21, 2008 in a good faith effort to resolve the dispute at issue in this motion. Evenson Decl., ¶¶6-7. Through the meet and confer process, the parties were able to narrow the dispute from four depositions to three. Evenson Decl., ¶7. However, the parties have been unable to reach agreement with respect to the three depositions at issue in this motion. *Id.*

## PLAINTIFFS' CONTENTIONS -- OPENING STATEMENT

## I. Introduction

The Coleman and Plata Plaintiffs jointly seek a court order allowing them to depose Governor Arnold Schwarzenegger, Robert Gore and Susan Kennedy, each of whom is a trial witness with unique personal knowledge of the events in this case. Defendants have objected to the depositions on the grounds that it is improper to depose high-level officials. But courts routinely allow parties to depose governors and other high-level governmental officials where, as here, the officials were involved in making the decisions at issue in the case or have unique personal knowledge of matters at issue in the case. *See, e.g., Green v. Baca*, 226 F.R.D. 624, 648 (C.D.Cal. 2005).

The Three-Judge Panel's July 2, 2008 Order for Pretrial Preparation (Coleman Docket No. 2859) provides for depositions of non-experts who are identified as trial witnesses, and other individuals for "very good cause." (July 2, 2008 Order at 2). As we demonstrate below, the Governor, Robert Gore (the Governor's Cabinet Secretary), and Susan Kennedy (the Governor's chief of staff) each have unique personal knowledge of matters essential to plaintiffs' case in chief and defendants' defenses, which falls into three general categories:

First, plaintiffs claim that overcrowding in California prisons causes violations of prisoners' constitutional rights to health and mental health care. The Governor and Ms.

1  Kennedy were instrumental in promulgating and implementing the Governor's October 4, 2006

2  state of emergency proclamation, which states, among other things, that California's prisons are

3  drastically overcrowded and overcrowding causes a "substantial risk to the health" of prisoners

4  and the general public.  Evenson Decl., Exh. D.  The emergency proclamation remains in

5  effect, and the Governor's staff remains involved in implementing its provisions for out-of-

6  state transfers.  *See, e.g.,* Evenson Decl., ¶16, Exh. L.  Second, defendants apparently claim as

7  a defense in this case that AB 900, a measure passed by the Legislature and signed by the

8  Governor in 2007, will alleviate the overcrowding problem by funding construction of new

9  prison beds.  The Governor, Mr. Gore, and Ms. Kennedy were instrumental in pushing AB 900

10  through the Legislature, and remain personally involved in implementing AB 900.   Evenson

11  Decl., ¶¶ 10-19, Exhs. F-P.  Third, defendants maintain in this action that releasing prisoners

12  would have an adverse effect on public safety, but in January 2008 the Governor personally

13  proposed a budget that would result in the release of more than 22,000 prisoners.  Evenson

14  Decl., ¶ 20, Exh. Q.

15      Because the Governor, Mr. Gore, and Ms. Kennedy played central roles in identifying

16  and attempting to address the overcrowding crisis, matters at the core of plaintiffs' case in chief

17  and defendants' defenses, there is "very good cause" to allow plaintiffs to take their

18  depositions.

19  **II. Argument**

20      Plaintiffs should be permitted to depose Governor Schwarzenegger, Robert Gore and

21  Susan Kennedy because each is a trial witness with unique personal knowledge of matters

22  critical to plaintiffs' cause of action and defendants' defenses.[2]  Pursuant to Ninth Circuit law,

23  plaintiffs are presumptively entitled to depose trial witnesses, especially party defendants with

24  direct knowledge of facts relevant to plaintiffs' claims.  *See Blankenship v. Hearst Corp.*, 519

25  

─────────────────

26      [2]  In addition to being plaintiffs' trial witnesses, the Governor, Mr. Gore and Ms.
Kennedy were also identified in the Legislative Intervenors' Initial Disclosures as witnesses

27  with discoverable information about "past and present efforts by the State to address medical
and mental healthcare needs in the prisons."  Evenson Decl., Exh. S at 2.

28

F.2d 418, 429 (9th Cir. 1975) (quoting 4 J. Moore, *Federal Practice* ¶ 26.69 at pp. 26-494 - 26-495 (2d ed. 1974)) ("a strong showing is required before a party will be denied entirely the right to take a deposition"). "Depositions are the most efficient means of discovery [since] the exigencies of time are paramount. . . . Depositions are also more reliable, as they are taken under oath, and the deponents' responses are relatively spontaneous." *American Broadcasting Co. v. United States Information Agency,* 599 F. Supp. 765, 769 (D.D.C. 1984) (allowing deposition of head of federal agency).

### A. Courts regularly permit depositions of high-ranking officials where, as here, the officials have unique personal knowledge of matters at issue in the case

Defendants' sole objection to the depositions of the Governor, Mr. Gore, and Ms. Kennedy is that they are high-ranking officials.[3] But this alone is not grounds for precluding their depositions. While high-ranking public officials are not normally subject to depositions in matters about which they have no personal knowledge, a well-established exception exists for depositions of "'top officials who have direct personal factual information pertaining to material issues ... [and] where the information to be gained ... is not available through any other source.'" *Green v. Baca,* 226 F.R.D. 624, 648 (C.D.Cal. 2005) (permitting plaintiff to depose the Los Angeles Sheriff) (*quoting Church of Scientology of Boston v. I.R.S.,* 138 F.R.D. 9, 12 (D.Mass.1990)).

Thus, courts have regularly permitted depositions of governors who were personally involved in, or approved, the governmental policies or practices that gave rise to the litigation. *See, e.g., Bagley v. Blagojevich,* 486 F.Supp.2d 786, 789 (C.D. Ill., 2007) (allowing deposition

---

[3] During the meet and confer process, counsel for defendants first stated that they objected to the depositions because *defendants* did not intend to designate the Governor, Mr. Gore, or Susan Kennedy as trial witnesses. Evenson Decl., ¶5, Exh. C. After plaintiffs explained that *plaintiffs* intend to designate the deponents as trial witnesses, defense counsel stated that their only objection was that it is improper to depose a governor or cabinet-level advisors. Evenson Decl., ¶¶6-7. Defense counsel specifically stated that their objection is not based upon the deliberative process privilege (*Id.* ¶7), and accordingly plaintiffs do not brief that issue here.

Plaintiffs question whether Robert Gore and Susan Kennedy even qualify as "high ranking public officials" warranting any special protection from deposition. But even assuming that they do, they should be compelled to testify for the reasons set forth herein.

of Governor of Illinois where Governor was either ultimate decisionmaker or involved in making the challenged decision); *Prisma Zona Exploratoria De Puerto Rico, Inc. v. Calderon*, 154 F. Supp.2d 245 (D. P.R. 2001) (permitting deposition of Governor of Puerto Rico who approved challenged actions); *Hadnot v. Amos*, 291 F. Supp. 309 (M.D. Ala. 1968) (allowing deposition of Governor of Alabama); *Virgo Corp. v. Paiewonsky,* 39 F.R.D. 9 (D.V.I. 1966) (allowing deposition of Governor of Virgin Islands because he was ultimate decisionmaker with respect to challenged policy).

Courts have also permitted the depositions of other governmental officials found to be "high-ranking" officials where those officials had some involvement in the challenged governmental action. *See, e.g., In re: David A. Kessler*, 100 F.3d 1015 (D.C. Cir. 1996) (permitting deposition of Commissioner of the Food and Drug Administration where plaintiffs alleged the deponent played a key role in formulating a challenged policy); *RTC v. Drumond*, 137 F.R.D. 634, 644-45 (S.D.N.Y. 1991) (allowing deposition of the head of a federal agency "to determine reasons for the decisionmaker's choice -- and by extension, the factors taken into account by the decisionmaker -- in the absence of 'formal administrative findings.'") (quotation omitted); *Green v. Baca*, 226 F.R.D. 226 F.R.D. at 648 (permitting plaintiff to depose the Los Angeles Sheriff because Sheriff is "final policymaker for the County in setting and implementing" challenged policies); *Atlanta Journal and Constitution v. City of Atlanta*, 175 F.R.D. 347, 348 (N.D. Ga. 1997) (permitting deposition of mayor where one of mayor's aides "was responsible for ushering the [challenged] ordinance."); *Northwestern Univ. v. City of Evanston,* 2001 WL 743756 (N.D. Ill. 2001) (permitting deposition of mayor who vetoed challenged ordinance and city manager who was involved in drafting a memorandum regarding the challenged ordinance); *Culp v. Devlin*, 78 F.R.D. 136, 140-41 (E.D. Pa. 1978) (allowing deposition of mayor and chief of police); *Pension Benefit Guaranty Corp. v. LTV Steel*, 119 F.R.D. 339, 342 (S.D.N.Y. 1988) (allowing deposition of agency head because, inter alia, case "raises novel and complex legal issues of first impression whose resolution will have a substantial impact" on statutory interpretation and numerous individuals); *see also Lederman v.*

1  *Giuliani,* No. 98-CV-2024, 2002 WL 31357810, at *1 (S.D.N.Y. Oct. 17, 2002) (noting that

2  mayor Giuliani's deposition was to go forward).

3      As we demonstrate below, Governor Schwarzenegger, Mr. Gore and Ms. Kennedy have

4  all been directly and personally involved in the matters at issue in this case, and this Court

5  should order them to appear for their depositions.

**B. Governor Schwarzenegger has unique personal knowledge of matters critical to plaintiffs' cause of action and defendants' defenses**

7      Governor  Schwarzenegger is not just the State official ultimately responsible for the

8  administration of California's overcrowded prisons, he and his top aides have also been

9  personally and actively involved in the State's attempts to address prison overcrowding.[4]

10     Governor Schwarzenegger has personally made public statements about key elements of

11  plaintiff's case in chief.  For example, in his emergency proclamation, the Governor admitted

12  that overcrowding causes a health crisis, which implies that overcrowding must be solved

13  before those crisis conditions can be remedied.  (Evenson Decl., Exh. D) (California's prisons

14  "are so overcrowded that the CDCR is required to house more than 15,000 inmates in

15  conditions that pose substantial safety risks," overcrowding "has caused substantial risk to the

16  health and safety of the men and women who work inside these prisons and the inmates housed

17  in them," overcrowding has resulted in "overloading" of local electrical systems, sewerage

18  systems, and wastewater systems, which results in "an increased, substantial risk of harm to the

---

22  [4] While the documents produced thus far demonstrate the central role played by the
Governor, Mr. Gore, and Ms. Kennedy, defendants have continued to refuse to produce many
23  documents in the custody of the Governor's office.  Indeed, although this Court and the Three-
Judge Panel have repeatedly ordered defendants to produce additional documents that
24  defendants incorrectly withheld as privileged (*See* Magistrate Judge Orders at Coleman Docket
Nos. 2753 and 2805, Three-Judge Panel Orders at Coleman Docket Nos. 2825 and 2862),
25  defendants have refused to produce the documents, instead filing a notice of appeal from those
orders.  Coleman Docket Nos. 2879, 2891.  Accordingly, plaintiffs have still not received a full
26  set of documents from the Governor's office.

27      Plaintiffs are prejudiced in their ability to bring this motion, and to show the personal
involvement of the Governor, Mr. Gore, and Ms. Kennedy in the overcrowding issue, by a lack
of those documents.

1 | health and safety of CDCR staff, inmates and the public," and overcrowding has resulted in
2 | increased violence and creates the risk of deadly prison riots.)

3 |  The statements in the proclamation are important evidence about central elements of
4 | plaintiffs case: that overcrowding causes a health crisis, and that overcrowding must be solved
5 | before the health crisis can be remedied. Plaintiffs are entitled to know the basis of the
6 | Governor's findings and the alternatives considered. Plaintiffs are unable to obtain this
7 | information from any other source.

8 |  The Governor was not just acting as a figurehead when he issued the emergency
9 | proclamation; he continued to be personally involved in meetings and strategy sessions to
10 | identify and address overcrowding problems. *See, e.g.,* Evenson Decl., Exh. E (Governor
11 | acknowledged overcrowding problem, acknowledged engaging in meetings with key players
12 | regarding resolving the problem, stated that "if we don't clean up the mess, the federal courts
13 | will do it for us.")

14 |  The Governor also possesses information relevant to defendants' defenses. For
15 | example, defendants apparently contend that a prisoner relief order is not necessary because
16 | they can just build more prison beds. But the Governor was personally involved in the passage
17 | of AB 900, a statute that was supposed to fund construction of new prison beds and solve the
18 | overcrowding crisis. *See, e.g.,* Evenson Decl., Exh. G (letter from Governor lauding Senate
19 | Republican leader's "leadership in prison reform" and applauding passage of AB 900).
20 | Immediately after signing AB 900, the Governor appointed his Cabinet Secretary Robert Gore
21 | as the manager of the Governor's "Strike Team" to implement AB 900. Evenson Dec., Exh. J
22 | at GOVPRIV001412. Mr. Gore has recounted numerous roadblocks to implementing AB 900.
23 | Evenson Dec., Exh. K.

24 |  Even after passage of AB 900 and the creation of the "Strike Team," the Governor has
25 | remained involved in the effort to implement the statute and reduce overcrowding. Less than
26 | two months ago the Governor personally sent a letter to several legislative leaders detailing
27 | progress in implementing AB 900, but emphasizing that further legislation "must be dealt with
28 | quickly by the Governor and the Legislature. We cannot delay, and if this isn't done *by* us, it

1   will be done *for* us by the federal courts." Evenson Decl., Exh. F (emphasis in original).  The

2   Governor is the only one with personal knowledge about what additional measures he was

3   referring to in his letter, what steps he believes are necessary to fix AB 900, how such

4   measures would impact overcrowding, and whether he, as the ultimate decisionmaker,

5   continues to adhere to defendants' position that AB 900 alone will resolve the overcrowding

6   crisis.

7       Moreover, the Governor previously charged that the Legislature has repeatedly failed to

8   act on the Governor's proposals to solve the overcrowding crisis.  Evenson Decl., Exh. D at 7-

9   8.  Plaintiffs are entitled to question the Governor, Mr. Gore, and Ms. Kennedy about his

10  newest proposed legislative fix, which would require quick legislative action if it were to be a

11  viable alternative to a court order.  Again, plaintiffs are unable to obtain this information from

12  any other source.

13      Defendants also appear to contend that prison conditions have improved since the

14  issuance of the emergency proclamation.  *See, e.g.,* Evenson Decl., ¶ 27.  But the emergency

15  proclamation is still in effect, meaning that the Governor maintains that the emergency

16  conditions persist.  Plaintiffs are entitled to question the Governor, Mr. Gore, and Ms. Kennedy

17  about the factual basis for keeping the proclamation in effect while at the same time

18  contending (in this litigation) that the conditions have improved.

19      The Governor also has information relevant to the question whether any "prisoner

20  release order" that the Court might enter would have an "adverse impact on public safety."  18

21  U.S.C. §§ 3626(a)(2).  Defendants contend that reducing the prison population *would* have an

22  adverse impact on public safety, but the Governor not only agreed to consider releasing

23  prisoners early (Evenson Decl., Exh. E at E-CDCR_017809), he also submitted a proposed

24  budget to the California Legislature that, among other things, contemplated reducing

25  California's prison population by more than 22,000 inmates.  Evenson Decl., Exh. Q at 178.

26  Although the Governor has subsequently backed away from this proposal, plaintiffs are still

27  entitled to enquire about the specifics of the population reduction plan.  Having offered the

28

plan in the first place, the Governor has unique personal information about how the State could reduce the prison population.

In short, the Governor has "direct personal factual information pertaining to material issues" that is unavailable through another source (*Green,* 226 F.R.D. at 648), and plaintiffs are entitled to depose the Governor about factual matters at issue in this case as well as about what measures defendants have considered undertaking to address overcrowding.

### C. Robert Gore has unique personal knowledge of matters critical to plaintiffs' cause of action and defendants' defenses

Mr. Gore (the Governor's deputy cabinet secretary) has also played an essential role in addressing the overcrowding crisis, and he personally possesses information that cannot be obtained from any other source.

As manager of the Governor's Strike team on AB 900, Mr. Gore has been centrally-involved in the AB 900 implementation process, and in monitoring overcrowding, and has personally lead a number of meetings with top CDCR officials and consultants on the subject. Evenson Decl., Exhs. H-P.  Indeed, Mr. Gore is in charge of matters identified as being of "[h]air on fire" importance, including "parole policy emergency regulations, recruiting staff, marketing RFPs, staffing Facilities, out-of state transfers" and "reducing lockdowns and movements."  Evenson Decl., Exh. J at GOVPRIV001412.  Plaintiffs are entitled to question Mr. Gore about his progress in implementing AB 900, and whether he has accomplished those "hair on fire" duties assigned to him.

Mr. Gore produced documents showing he kept Ms. Kennedy updated about the AB 900 Strike Team, including by providing detailed updates about the Strike Team's progress in implementing AB 900 as well as the various "roadblocks" hindering full implementation of the statute. Evenson Decl., Exh. K.  Plaintiffs intend to ask both Mr. Gore and Ms. Kennedy about the Strike Team's progress, the "roadblocks" it has encountered, and its progress in alleviating the overcrowding crisis.

Mr. Gore has also produced correspondence indicating he is involved in an effort to pass AB 900 "clean up" legislation.  Evenson Decl., ¶18, Exhs. O-P.  He has stated that he

1  hopes that the Legislature will enact "[p]arole reform" as well as "most of the IRP

2  [Independent Review Panel] and Expert Panel recommendations, including staff training,

3  program participation incentives, enhanced good time credits, expanded risk assessments and

4  treatment plans, and *more reforms.*"  Evenson Decl., Exh. P at E PRIV 171287 (emphasis

5  added).  Mr. Gore entreated former republican Governor George Deukmejian to use his

6  political clout to convince members of the Republican caucus to go along with the

7  administration's legislative agenda.  *Id.*  Plaintiffs are entitled to ask Mr. Gore about the

8  specific reforms he proposes to remedy the overcrowding crisis, what provisions in AB need to

9  be "cleaned up" and whether AB 900, as it is, will resolve the overcrowding crisis.

10      Additionally, Mr. Gore has stated that "[e]nhanced parole tools . . . are the most

11  immediate way to reduce overcrowding and improve public safety."  Evenson Decl., Exh.I; *see*

12  *also Id.,*  Exh. P.  Plaintiffs are entitled to ask Mr. Gore about the factual basis for his

13  assertions that "enhanced parole tools" will reduce overcrowding, and about how they will

14  "improve public safety," as these are two key elements in the case.

15      **D. Susan Kennedy has unique personal knowledge of matters critical to plaintiffs'**
       **cause of action and defendants' defenses**

16      Susan Kennedy is the Governor's chief of staff, and is integrally involved in nearly

17  everything the Governor does, including the Governor's efforts to address the overcrowding

18  crisis.  Ms. Kennedy has repeatedly described California's prisons as a "powder keg," stating at

19  one point that the prisons are part of "a system that is so broken it's a powder keg," and at

20  another point that "We have now hit a wall on programming based on overcrowding.  We are

21  now sitting on a powder keg over here."  Evenson Decl., Exh. T at 1, 3.  Ms. Kennedy also

22  admitted that even if the State builds more than 40,000 new prison beds by 2021, 1) "[w]e'll

23  always be over the design capacity [of the prisons];" and 2) additional funds would be

24  necessary to fund space for medical treatment and rehabilitation programs.  *Id.* at 2.  She also

25  acknowledged – in 2006 – that a central element of AB 900 (construction of reentry facilities

26  in local communities) was "never going to be an easy sell."  *Id.* at 3.

27

28

1    In addition to tracking Mr. Gore's work and the progress of AB 900 implementation (see

2    *supra*), Ms. Kennedy also inserted herself into the implementation process, at one point

3    admonishing the AB 900 Strike Team that it must bring about "radical change" to the prison

4    system and that "failure is not an option."  Evenson Decl., Exh. H.

5        It is also apparent that Ms. Kennedy was involved in the Governor's emergency

6    proclamation and the Governor's budget bill.  Plaintiffs are prejudiced in their ability to

7    demonstrate Ms. Kennedy's involvement in these and other areas in the case because the

8    Governor's office has yet to produce most of the documents listed on defendants' privilege log

9    which pertain to Ms. Kennedy.  Nonetheless, defendants' privilege logs on their face

10   demonstrate Ms. Kennedy's involvement.  Ms. Kennedy sent, received, and archived dozens of

11   letters and memoranda about overcrowding.  Evenson Dec., ¶21, Exh. R.  For example,

12   according to the privilege logs, Ms. Kennedy engaged in correspondence with top officials in

13   the Schwarzenegger administration and CDCR regarding overcrowding conditions, progress of

14   the AB 900 Strike Teams, the Governor's budget proposal, prison reform, parole reform

15   options, sentencing reform, AB 900 "clean up" legislation, community reentry facilities, prison

16   construction, and other matters.  Evenson Dec., ¶21, Exh. R.  Plaintiffs have yet to receive the

17   relevant documents, and therefore cannot provide further detail about the contents of the

18   documents in support of this motion.  But the notations in the log itself show that Ms. Kennedy

19   is deeply involved in the Governor's efforts to address the overcrowding crisis, and her

20   involvement has given her "direct personal factual information pertaining to material issues"

21   that "is not available through any other source.'" *Green*, 226 F.R.D. at 648.

22   **III. Conclusion**

23       For the foregoing reasons, Governor Arnold Schwarzenegger, Robert Gore and Susan

24   Kennedy should be compelled to appear for depositions as noticed by Plaintiffs.  In the event

25   the deponents are not available on the dates listed on the deposition notice, defendants should

26   be required to provide plaintiffs with proposed alternative dates within five calendar days of

27   the Court's order.

28

1

**DEFENDANTS' CONTENTIONS**

2   **I.   Introduction**

3          Defendants do not dispute Plaintiffs' right to take five of the eight depositions they have

4   noticed.  But Plaintiffs' attempt to depose the Governor, his Chief of Staff, Susan Kennedy, and

5   his Senior Deputy Cabinet Secretary, Robert Gore runs afoul of federal and California

6   precedent regarding the depositions of high governmental officials.  Such officials enjoy a

7   form of limited immunity from depositions in both federal and California courts.  *E.g., Bogan*

8   *v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Westly v. Super. Court*, 125 Cal. App. 4th

9   907, 910 (Cal. App. 2004).  To qualify for the sole exception to this immunity, Plaintiffs bear

10  the heavy burden of demonstrating not only that these Defendants have "direct, personal,

11  factual information" on relevant issues, but also that Plaintiffs cannot get that information via

12  other discovery mechanisms or by serving discovery on other persons.  *E.g., Harmston v. City*

13  *and County of San Francisco*, 2007 U.S. Dist. LEXIS 87144, *4-5 (N.D. Cal. Nov. 6, 2007)

14  (Illston, J.).

15          To meet this burden, Plaintiffs largely rely on repeated claims that the Governor, Ms.

16  Kennedy or Mr. Gore were "involved" in promulgating or implementing administration

17  policies designed to reduce prison population, that they discussed, made public statements

18  about, or attended meetings about such policies, or that they have "unique" information.  These

19  assertions are woefully insufficient.  Much of the information Plaintiffs seek is simply not

20  relevant to the factual issues in this case.  Moreover, Plaintiffs have not demonstrated that the

21  information they seek is not available from other sources.  In fact, as Defendants demonstrate

22  below, all of the relevant information Plaintiffs seek to gain by these depositions is available

23  through alternative sources.  Indeed, Plaintiffs have already obtained a substantial amount of

24  information on these topics through prior discovery.

25          Additionally, by order of the Three-Judge Court on July 2, 2008, depositions of non-

26  testifying witnesses were prohibited absent a showing of "very good cause."  Neither Plaintiffs'

27  initial disclosures nor their supplement to their initial disclosures listed Governor

28  Schwarzenegger, Ms. Kennedy, or Mr. Gore as individuals likely to have discoverable

-12-

1  information. (Declaration of Paul Mello in Support of Joint Statement Regarding Discovery

2  Dispute (Decl. Mello), Exs. A & B.)  However, following the Court's July 2, 2008 order

3  barring the deposition of non-testifying witnesses, Plaintiffs suddenly informed Defendants in

4  the course of meet and confer efforts of Plaintiffs' intent to list the Governor, Ms. Kennedy,

5  and Mr. Gore as testifying witnesses. (Decl. Mello, ¶ 4.)  This convenient alteration to

6  Plaintiffs' trial witnesses is merely a technique to evade the Court's July 2, 2008 order requiring

7  the very good cause showing.

8      This situation does not justify an exception from the general rule against deposing

9  Governors and cabinet officers, nor should Plaintiffs be excused from this Court's "very good

10  cause" showing requirement, which Plaintiffs are unable to demonstrate.  Accordingly, this

11  court should deny Plaintiffs' request to compel these depositions, and should instead vacate

12  Plaintiffs' notice of deposition as to the Governor, Ms. Kennedy, and Mr. Gore.

13  **II.    Argument**

14      As Plaintiffs acknowledge, high public officials are by default not subject to deposition

15  for their official actions.  *E.g., Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In*

16  *re United States*, 985 F.2d 510, 512 (11th Cir. 1993); *In re Office of Inspector General*, 933

17  F.2d 276, 278 (5th Cir. 1991); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575,

18  586 (D.C. Cir. 1985); *Green v. Baca*, 226 F.R.D. 624, 649 (C.D. Cal. 2005); *Harmston v. City*

19  *and County of San Francisco*, 2007 U.S. Dist. LEXIS 87144, *4-5 (N.D. Cal. Nov. 6, 2007)

20  (Illston, J.); *see also Kyle Eng. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("[H]eads of

21  government agencies are not normally subject to deposition.").  This is so even when the

22  official sought to be deposed is a named defendant in the case.  *See, e.g., Kyle*, 600 F.2d at 231.

23  Courts reason that they should not allow "the constant interference of the discovery process" to

24  disrupt the work of high government officials.  *Green*, 226 F.R.D. at 648.  California State

25  Courts have also uniformly adopted this rule.  *E.g., Westly v. Super. Court*, 125 Cal. App. 4th

26  907, 910 (Cal. App. 2004) (refusing to permit depositions of state Attorney General and

27  Controller); *Nagle v. Super. Court*, 28 Cal. App. 4th 1465, 1467-68 (1994) (granting protective

28  order prohibiting depositions of Director of Employment Development Department and former

Director of Department of Health Services, and noting that "the heads of agencies and other top governmental executives are normally not subject to depositions"). As a result, state Governors and cabinet officers enjoy limited immunity from depositions in both state and federal courts. *E.g.*, *Simplex*, 766 F.2d at 586 ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."); *Warzon v. Drew*, 155 F.R.D. 183, 186 (E.D. Wis. 1994) (refusing to permit depositions of Governor of Wisconsin and Secretary of Wisconsin Department of Administration).

Although a limited exception to this immunity exists, Plaintiffs cannot establish the elements of that exception here. To the extent that Plaintiffs seek to ask the Governor, Ms. Kennedy, and Mr. Gore about topics relevant to this proceeding, the information they seek is available through "less burdensome sources." *See Trunk v. City of San Diego*, 2007 U.S.Dist. LEXIS 24093, * 21 (S.D. Cal. April 2, 2007). In fact, Plaintiffs already have much of the information. Thus, the court must prohibit Plaintiffs from taking these depositions.

## A.    The Governor, Ms. Kennedy, and Mr. Gore are High-Ranking Governmental Officials and are Therefore Generally Immune from Being Deposed About Their Official Actions.

The Governor of a state is clearly entitled to claim limited deposition immunity. See *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982); *see also Deukmajian v. Super. Court*, 143 Cal. App. 3d 632, 634 (Cal. App. 1983) (Governor of California not required to give trial testimony regarding his policies related to prison population). So too are cabinet officers, at both the federal and state levels. *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (rev'd on other grounds by *United States v. Lee*, 274 F.3d 485, 491 (8th Cir. 2001)) (federal Attorney General and Deputy Attorney General are high governmental officials); *Simplex*, 766 F.2d at 586; *Warzon v. Drew*, 155 F.R.D. at 186; *Pension Benefit Guaranty Corp. v. LTV Steel Corp.*, 119 F.R.D. 339, 343 n.1 (S.D.N.Y. 1988) (refusing to allow deposition of Secretary of Labor). Ms. Kennedy, as the Governor's Chief of Staff, and Mr. Gore, as his Senior Deputy Cabinet

Secretary, both sit on the Governor's cabinet and are accordingly, like the Governor himself, entitled to be left to perform their duties without interference from Plaintiffs' depositions.[5]

**B.    Plaintiffs Cannot Establish that the Only Exception to These Officials' Deposition Immunity Applies and Justifies the Deposition of the Governor, Ms. Kennedy, and Mr. Gore.**

Litigants may only take a high public official's deposition when that official has relevant, direct, personal, factual information that is unavailable through any other source. E.g., *Bogan*, 489 F.3d at 423; *Green*, 226 F.R.D. at 648; *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass 1990); *Harmston*, 2007 U.S. Dist. LEXIS 87144, *4-5. State courts in California also recognize this exception to high officials' deposition immunity. *See, e.g.*, *Westly*, 125 Cal. App. 4th at 910; *Nagle*, 28 Cal. App. 4th at 1467-68.

Plaintiffs concede that they must show that this exception applies here in order to take these depositions. *Supra*, 3:20-22. They fail to acknowledge, however, the crucial fact that "any other source" for the purposes of this exception includes not only other persons, but also interrogatories, requests for admission, and other written discovery propounded on the official sought to be deposed. *E.g.*, *Kyle*, 600 F.2d at 231 (interrogatories a valid substitute for deposition of agency head); *Harmston*, 2007 U.S. Dist. LEXIS 87144, *7-8 (interrogatories and requests for admission a valid substitute for deposition of mayor); *Trunk*, 2007 U.S.Dist. LEXIS 24093, * 21 ("written discovery" may validly substitute for deposition of mayor). "Any other source" also encompasses the depositions of other, lower-ranking officials. *In re United States*, 985 F.2d at 512 (refusing to allow deposition of FDA Commissioner;

---

[5] Cases Plaintiffs cite in which courts allowed depositions of mayors or lower federal governmental officials are inapposite. As several of the courts in cases cited by Plaintiffs noted, the policy justifications for exempting lower-level officials from depositions are less than for senior executives or cabinet-level officers. *See In re: Kessler*, 100 F.3d 1015, 1017-1018 (D.C. Cir. 1995) (noting that FDA Commissioner was "at least three levels down from the Secretary of HHS"); *Green*, 226 F.R.D. at 649 n. 50 (distinguishing case involving sheriff from cases involving "high ranking state and federal executive officers"); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 645 (S.D.N.Y. 1991) (noting that head of RTC "is not the Secretary of Labor" and that the RTC was "unlike the Department of Labor, which is a large cabinet-level executive department with many functions").

1  department heads within FDA had the information sought and their depositions sufficed);

2  *Sweeney*, 669 F.2d at 546 (refusing to allow deposition of Governor of Missouri because

3  information might be available from other officials).  Thus, where the seeker can get the

4  information through any other discovery, whether propounded on the official or on others, the

5  exception does not apply. *See Bogan*, 489 F.3d at 423 ("[D]iscovery is permitted only where it

6  is shown that other persons cannot provide the necessary information.").

7  Moreover, the party seeking the deposition bears the burden of showing that he or she

8  cannot obtain the information elsewhere. *Church of Scientology*, 138 F.R.D. at 12 (granting

9  protective order because Plaintiff "ha[d] not satisfactorily demonstrated that the information

10  sought cannot be gained through an alternative source."); *Trunk*, 2007 U.S. Dist. LEXIS 24093

11  at * 21 (refusing to allow deposition when "Plaintiff ha[d] not demonstrated" that the

12  information is not otherwise available).  Some courts have also required a showing that the

13  deposition testimony is "essential" to the seeking party's case.  *See Sweeney*, 669 F.2d. at 546 ;

14  *Warzon*, 155 F.R.D. 185.

15  To obtain these depositions, Plaintiffs must therefore not only show that the Governor,

16  Ms. Kennedy, and Mr. Gore have the information they seek but also that they cannot get that

17  information from other persons or through other discovery mechanisms.[6]  They cannot do so,

18  for reasons explained below.

19

20  _____

[6]  Although courts have in a few cases allowed depositions of governors, the governors in those

21  cases, unlike here, personally made a single, specific decision or took a specific action that was
alleged to be contrary to law or was alleged to have directly violated the plaintiff's rights.

22  *Bagley v. Blagojevich*, 486 F. Supp. 2d 786 (C.D. Ill. 2007) (Governor line-item vetoed
funding for Ps' job classification and later took personal credit for decision); *Prisma Zona*

23  *Exploratoria de Puerto Rico, Inc. v. Calderon*, 154 F. Supp. 2d 245 (D.P.R. 2001) (governor
refused to disburse specific funds earmarked for plaintiff); *Virgo Corp. v. Paiewonsky*, 39

24  F.R.D. 9, (D.V.I. 1966) (governor imposed "watch quota" challenged by plaintiff; whether to
impose such quotas was "solely within the discretion of the Governor").  Thus, the plaintiffs in

25  those cases could reasonably argue that the Governor was the only source for the information
about that decision.  Here, in contrast, Plaintiffs do not allege that the Governor or Ms.

26  Kennedy or Mr. Gore were personally responsible for any single action that violated their
rights.  Rather, they allege that the condition of the system as a whole violates their rights.  As

27  a result, as described below, numerous other officials are also involved in and have knowledge
of the actions and conditions Plaintiffs seek to question these officials about.

28

1.   <u>To the Extent Plaintiffs Seek to Depose the Governor, Ms. Kennedy, and Mr.</u>
<u>Gore About Relevant Subjects About Which They Have Direct, Personal Factual</u>
<u>Knowledge, That Information is Available Through Other Sources.</u>

In their portion of this joint statement, Plaintiffs repeatedly insist that these depositions are "critical" to Plaintiffs' case because the Governor, Ms. Kennedy, and Mr. Gore have "unique" knowledge on a variety of topics. This is simply untrue. Plaintiffs can obtain the information they seek by deposing other officials or by propounding written discovery on those officials or on the Governor. Defendants do not oppose the depositions of lower-ranked officials, and in fact have cooperated with Plaintiffs in scheduling such depositions. (Decl. Mello, Ex. E.) Nor do Defendants seek to prevent Plaintiffs from propounding proper written discovery on any Defendant. Moreover, Plaintiffs already possess significant information on several of Plaintiffs' purported deposition topics.

Lower-ranking state officials have greater personal knowledge of the Plaintiffs' purported deposition topics than do the Governor, Ms. Kennedy and Mr. Gore. The Governor's decisions regarding his Emergency Proclamation and AB900 were based on factual information supplied by his subordinates. The same is true for Ms. Kennedy and Mr. Gore. Plaintiffs should therefore be required to seek written discovery from the Governor or depose these lower-ranking officials in lieu of deposing the Governor, Ms. Kennedy and Mr. Gore. *See Pension Benefit Guaranty Corp.*, 119 F.R.D. at 343 n.1. (refusing to allow deposition of Secretary of Labor when party seeking deposition did not show that the Secretary had information available to him that did not originate with his subordinates).

Plaintiffs cite authority from the District of Columbia for the proposition that depositions are the most efficient means of discovery and are more reliable because they are taken under oath. (*Supra*, at 4:3-7). This citation is irrelevant, both because the individual involved in that case was not a cabinet level official, and because the court found that he was the "sole person" with the information sought. *American Broadcasting Co.*, 599 F. Supp. at 769. As described above, courts have routinely stated that depositions of high-level officials are only permitted if the information cannot be obtained through any other source. *E.g., In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (rev'd on other grounds by *United States v.*

1   *Lee*, 274 F.3d 485, 491 (8th Cir. 2001)); *Westly v. Super. Ct.*, 125 Cal. App. 4th 907, 911 (Cal.

2   App. 2004); *see also, e.g., Kyle Eng. Co.*, 600 F.2d 226, 231 (9th Cir. 1979); *Green v. Baca*,

3   226 F.R.D. 624, 648 (C.D. Cal. 2005); *Harmston v. City and County of San Francisco*, 2007

4   U.S. Dist. LEXIS 87144, *7-8 (N.D. Cal. Nov. 6, 2007).  Neither the Governor, Ms. Kennedy,

5   nor Mr. Gore are the "sole person" responsible for any of the state's population reduction

6   policy initiatives.  Furthermore, as described below, Plaintiffs may obtain sworn statements

7   regarding the topics at issue from other sources, such as interrogatories or depositions of other

8   officials.

9       More specifically, to the extent Plaintiffs seek information about the population

10  reduction proposal in the Governor's 2008-2009 proposed budget, this information is available

11  from Defendant Cate or other CDCR officials.  Plaintiffs' conclusory assertion that the

12  Governor has unique personal information on this subject because he "offered the plan"

13  borders on the absurd.  Plaintiffs cannot reasonably contend that the Governor develops his

14  budgets entirely by himself based on facts of which only he is aware.  Plaintiffs may also ask

15  Secretary Cate or other CDCR officials what additional measures Defendants believe may

16  reduce the prison population, and how such measures may impact overcrowding.  And in fact

17  Plaintiffs have noticed the depositions of both Secretary Cate and CDCR's Chief Deputy

18  Secretary of Adult Operations, Scott Kernan.  Both Secretary Cate Mr. Kernan are

19  knowledgeable about these topics and are more familiar with specific facts about them than the

20  Governor, Ms. Kennedy, or Mr. Gore.  Furthermore, Defendants do not contest Plaintiffs'

21  notice of Secretary Cate or Mr. Kernan's depositions, are answering the three sets of

22  interrogatories the *Plata* and *Coleman* Plaintiffs have propounded on Secretary Cate, and will

23  answer any other written discovery properly propounded on him.  (Decl. Mello, Exs. F, G, &

24  H.)

25      Similarly, Plaintiffs seek information about AB900 implementation and the progress of

26  the AB900 Strike Team.  They may obtain this information from several other Defendants they

27  plan to depose, including Ms. Jett, Ms. Petersilia, Mr. Kernan, and Ms. Hysen.  Ms. Jett, Ms.

28  Hysen, and Secretary Cate may also be knowledgeable about possible AB900 cleanup

1  legislation. Again, these officials are at least as familiar, and probably more familiar, with

2  specific facts on these topics as the Governor, Ms. Kennedy, and Mr. Gore.

3       Plaintiffs may also obtain much of the information they seek by propounding additional

4  written discovery on the Governor and the other named Defendants. Plaintiffs may propound

5  interrogatories to ask about the progress of the AB900 strike team, AB900 clean-up legislation,

6  enhanced parole tools, overcrowding, or the factual basis for keeping the Governor's

7  Emergency Proclamation in effect.

8       In fact, Plaintiffs have already propounded interrogatories on some of these topics. For

9  example, *Coleman* Plaintiffs have already propounded twenty-five interrogatories about the

10  Emergency Proclamation on the Governor. (Decl. Mello, Ex. I.) These interrogatories asked

11  the Governor about the current status of each of the various problems identified in the

12  Proclamation, and requested all facts and identification of documents supporting the answers.

13  (*Id.*) Similarly, *Coleman* Plaintiffs recently asked Secretary Cate a number of interrogatories

14  about public safety concerns, and five interrogatories about changed conditions in the state

15  corrections system. (*Id.* at Exs. F & G.) *Plata* Plaintiffs too propounded interrogatories on

16  Secretary Cate inquiring into changed prison conditions. (*Id.* at Ex. H.) To the extent

17  Plaintiffs seek to ask the Governor, Ms. Kennedy, and Mr. Gore the same questions, the

18  depositions would be duplicative. If Plaintiffs seek updated or different information on these

19  topics, they may issue more written discovery.

20       Defendants have also produced over 500,000 pages of documents to date on a variety of

21  topics from a number of different custodians at various levels of state government. Ironically,

22  Plaintiffs have attached a number of these documents as exhibits to this joint statement,

23  purportedly to demonstrate that they must depose the Governor, Ms. Kennedy and Mr. Gore to

24  obtain certain information. But the documents actually demonstrate that Plaintiffs can obtain

25  substantial information on these topics via document production requests, and further, that they

26  already have such information. For example, Plaintiffs claim that they must question Mr. Gore

27  and Ms. Kennedy in order to obtain information about the progress of AB900 implementation.

28  *Supra*, 9:18-20; 11:1-2. Yet Plaintiffs have noticed the deposition of Deborah Hysen, Chief

1  Deputy Secretary of Adult Operations at CDCR, whose duties include, among others,

2  overseeing AB900 construction and implementation.  Mr. Kernan and Secretary Cate are

3  similarly knowledgeable regarding the progress of AB900 implementation, and have also been

4  served with deposition notices.  Exhibits L through P to Ms. Evenson's declaration similarly

5  contain detailed information about AB900 implementation and cleanup.  These documents

6  belie Plaintiffs' claim that they are unable to obtain the information through "any other source."

7  *See Trunk*, 2007 U.S. Dist. LEXIS 24093, *21-22 ("Plaintiff's exhibits in support of his request

8  to Compel demonstrate that he has a significant amount of source material available to him …

9  Accordingly, the information Plaintiff seeks through deposition will be unnecessarily

10 duplicative.")

11

12       2.     Several of Plaintiffs' Proposed Deposition Topics Are Not Relevant to the Issues in This Proceeding.

13       Plaintiffs apparently intend to ask the Governor, Ms. Kennedy and Mr. Gore about their

14 political roles in developing and recommending various proposals and their personal beliefs

15 regarding the prospects for the success of these proposals.  *E.g., supra,* 10:9 (proposing to ask

16 Mr. Gore "whether AB900, as it is, will resolve the overcrowding crisis").  They contend that

17 this information justifies the depositions.  *Supra,* 3:15-16 (arguing that Plaintiffs should be

18 permitted to take the depositions "[b]ecause the Governor, Mr. Gore, and Ms. Kennedy played

19 central roles in identifying and attempting to address the overcrowding crisis").  That argument

20 must fail.

21       The Three-Judge Court must decide de novo whether Plaintiffs can prove, by clear and

22 convincing evidence, that crowding is the primary cause of a violation of Plaintiffs' rights and

23 that no other relief will remedy the violation.  18 U.S.C. § 3626(a)(3)(A)(i)-(ii).  Facts

24 surrounding proposed or actual programs, as well as expert opinions, may assist the court in

25 deciding these issues.  But the Governor, Ms. Kennedy and Mr. Gore are non-expert parties.

26 How they developed their proposals and their subjective and personal beliefs about these

27 proposals' prospects for success, have no bearing on the court's decision.  Any questioning that

28

1  does not directly relate to specific facts regarding specific programs or proposals is therefore

2  irrelevant.

3       Thus, for instance, these Defendants' political "involve[ment]" in AB900 passage and

4  implementation does not matter to Plaintiffs' case.  Nor do the details of Mr. Gore's political

5  participation in the AB900 strike team, nor the Governor's personal beliefs about whether

6  AB900 will achieve its goals.  What matters instead are the actual facts surrounding AB900

7  implementation.  Because the exception to high officials' deposition immunity requires that the

8  information sought be "material," Plaintiffs cannot invoke the exception based on proposed

9  questioning about these Defendants' political roles or personal beliefs.

10  **III.    Conclusion**

11       Litigants are not entitled to depose high-ranking state officials unless they can show that

12  those officials have direct, personal, factual information unavailable elsewhere.  Plaintiffs

13  cannot meet that standard here, because any relevant information they seek is available through

14  depositions of lower-ranking officials, written discovery, and documents already produced.

15  Additionally, Plaintiffs may not attempt to circumvent the Court's July 2, 2008 order requiring

16  a showing of "very good cause" by suddenly listing the Governor, Ms. Kennedy, and Mr. Gore

17  as witnesses, when Plaintiffs have never identified these individuals in the course of their

18  initial disclosures or in their supplemental initial disclosures as individuals likely to have

19  discoverable information.  This court should therefore deny Plaintiffs' request to compel these

20  depositions and vacate Plaintiffs' notice of deposition as to the Governor, Ms. Kennedy, and

21  Mr. Gore.

22  **PLAINTIFFS' REPLY STATEMENT**

23  **I. Introduction**

24       Defendants concede that it is appropriate to take the deposition of a governor or other

25  high level official where the official has personal knowledge of relevant information that is

26  unavailable through another source.  *Supra* at 15.  Specifically, defendants concede that it was

27  appropriate to depose a governor under the following circumstances:  1) the governor "line-

28  item vetoed funding for [plaintiff's] job classification and later took personal credit for the

1  decision," 2) the "governor refused to disburse specific funds earmarked for plaintiff"; and 3)

2  the "governor imposed 'watch quota' challenged by plaintiff" where the decision "whether to

3  impose such quotas was 'solely within the discretion of the Governor.'" *See supra* at 16, n.6

4  (citations omitted).  Those factual scenarios are all analogous to the case at hand; here, the

5  Governor is the ultimate decisionmaker about prison policy, and he, Mr. Gore and Ms.

6  Kennedy have personally taken specific acts – and made public statements – showing that they

7  have personal knowledge of matters critical to plaintiffs' case and defendants' defenses.

8      For example, the Governor submitted a budget proposal that contemplates releasing

9  more than 22,000 prisoners, while at the same time the Governor is claiming in this case that

10 releasing prisoners would adversely affect public safety; the Governor's public and private

11 statements that AB 900 is in need of "clean up" legislation contradicts his litigation position

12 that AB 900 is a panacea for the overcrowding problem; and the Governor's continued

13 effectuation of the emergency proclamation contradicts his apparent litigation position that

14 conditions are improving and the prison conditions do not pose an immediate risk to inmate

15 health.  Similarly, the evidence demonstrates that Mr. Gore and Ms. Kennedy have been

16 intimately involved in the details of certain of the Governor's efforts to address overcrowding.

17 *Supra* at 9-11.  Indeed, just last week Mr. Gore submitted a declaration stating that "the Office

18 of the Governor has actively addressed prison litigation and reform issues," that he is "familiar

19 with AB 900 and other prison reform efforts *launched by the Administration*," and that he and

20 Ms. Kennedy have both produced documents "providing detailed analyses of issues and events

21 currently pending and anticipated at CDCR."  Evenson Decl, Exh. U at ¶¶5, 12(a) (emphasis

22 added).

23     Under circumstances like these, courts regularly approve the deposition of governors

24 and other high level officials, and there is very good cause to take the deposition of the

25

26

27

28

1   Governor, Ms. Kennedy and Mr.Gore. [7]

2        Defendants do not contest that the Governor, Mr. Gore and Ms. Kennedy have personal

3   knowledge of matters critical to the case, but they contend that plaintiffs should be restricted to

4   inquiring into these matters via interrogatories, or by deposing CDCR officials who don't even

5   work in the Governor's office.  For the reasons set forth below, those arguments should be

6   rejected.

7   **II. Argument**

8       **A. Interrogatories are not an adequate substitute for a deposition**

9        Defendants' main contention is that there is no need to depose Governor

10   Schwarzenegger, Mr. Gore, or Ms. Kennedy because plaintiffs can get all the information they

11   need from interrogatory responses.  But the courts have long recognized that interrogatories are

12   no substitute for depositions.  That is because "[a]t a deposition the examining party has great

13   flexibility and can frame his questions on the basis of answers to previous questions.

14   Moreover, the party being examined does not have the opportunity to study the questions in

15   advance and to consult with his attorney before answering, as he does if interrogatories are

16   used. Attempts at evasion, which might be met by a persistent oral examination, cannot be

17   easily dealt with by interrogatories."  *Richlin v. Sigma Design West, Ltd.*, 88 F.R.D. 634,

18   637 (C.D.Cal. 1980).  In comparison, "[t]he flexibility and the potency of oral depositions is in

19   _____

20   [7]    Defendants contend that plaintiffs need to show "very good cause" for taking the
21   depositions because the Governor, Mr. Gore and Ms. Kennedy are not really trial witnesses.
    As we explain, plaintiffs have amply demonstrated such "very good cause." But it is not
necessary to do so.  Plaintiffs intend to designate each of the deponents as trial witnesses,
22   obviating the "very good cause" standard.

23       Defendants complain that plaintiffs did not previously identify the Governor, Mr. Gore
or Ms. Kennedy on their Rule 26(a) disclosures.  But this is a red herring.  Plaintiffs' initial
24   disclosures referred to all defendants as potential witnesses.  Mello Decl., Exh. A.  The
Legislative Intervenors' initial disclosures specifically listed Governor Schwarzenegger, Susan
25   Kennedy and Robert Gore as potential witnesses.  Evenson Decl., Exh.S.  Accordingly,
plaintiffs have assumed that the Governor, Ms. Kennedy and Mr. Gore would be witnesses in
26   this case, and, indeed, plaintiffs expect to present testimony from them in their case in chief.
Evenson Decl, ¶2.  Under Rule 26(e)(1)(A), there was no need for plaintiffs to supplement
27   their disclosures with information about witnesses who had otherwise "been made known to
the other parties during the discovery process or in writing."

28

large part lacking in written interrogatories. It is for these reasons that depositions are, in federal court at least, by far the most widely used of the discovery devices." *Id.* See also *Rutter*, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Ch. 11(IV)-B, §11:1662 ("Answers to interrogatories are normally prepared by or with the assistance of opposing counsel, who usually read the questions narrowly and provide as little information as possible. There is little likelihood of unguarded responses; nor any chance for follow-up questioning.")

Defendants' own interrogatory responses illustrate this point. In response to direct questions about the factual underpinnings for their contentions in this case, defendants provide vague, evasive, lawyerly-worded answers that lack substance or detail. *See, e.g.,* Evenson Decl., Exh. V (in response to numerous different questions regarding the impact on public safety of a prisoner release order, prisoner "diversion" programs, parole reforms, the Governor's proposal to release 22,159 inmates, and others, CDCR Secretary Matthew Cate recites nearly identical, vague answers: "there remains the possibility of a prisoner engaging in criminal activity under such a program.") For plaintiffs to serve more interrogatories, and accept more vague, evasive responses, is no replacement for sitting in the same room with the defendant and asking direct questions and follow-up questions.

Moreover, the type of inquiry that plaintiffs need to make – inquiring into contradictions between the Governors' out-of-court actions and his litigation position, or delving into the meaning of Ms. Kennedy's statements that the prisons are a "powder keg" -- are not well-suited to interrogatory. These are matters that will require answers from the parties (not the lawyers) and will almost certainly require follow-up questions.

Defendants cite *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) and *Trunk v. San Diego*, 2007 WL 1110715 (S.D. Cal. 2007) to support their contention that interrogatories are an appropriate substitute for a deposition of an official with personal knowledge of relevant facts. But neither case stands for this point.

In *Kyle Engineering,* the court noted in passing that it was not "unreasonable" for a district court to order an agency head to answer interrogatories in lieu of a deposition, but nothing in the opinion analyzes the question or even indicates whether the official had any

1  personal knowledge of the issues in the case (i.e. whether he even qualified as a deponent).

2  *Kyle Engineering*, 600 F.2d at 231.

3       In *Trunk*, a plaintiff brought an Establishment Clause challenge to a city's transfer of a

4  monument to the federal government, and needed to demonstrate that the legislature had an

5  illicit purpose in effectuating the transfer.  The plaintiff sought to depose the city mayor to

6  determine *his* motive for supporting the transfer.  But the court found that the mayor's

7  subjective motive was irrelevant and the mayor's deposition was therefore inappropriate.  *Id.* at

8  *5-6.  The only relevant information was the official legislative history, and the court found

9  that the plaintiff could obtain the relevant legislative history documents through written

10  discovery.  *Id.* at *7.  The case does not support the contention that interrogatories are an

11  appropriate substitute for the deposition of a witness with *relevant* information.

12       Nor does *Harmston v. City and County of San Francisco*, 2007 U.S. Dist. LEXIS

13  87144, *4-5 (N.D. Cal. Nov. 6, 2007) hold, as defendants assert, that "interrogatories and

14  requests for admission a valid substitute for deposition of mayor."  *Supra* at _ .  In *Harmston*,

15  the evidence showed that the mayor did not have any personal knowledge of the facts at issue;

16  the public official who was knowledgeable (the chief of police) had already been deposed.

17  *Harmston* at *2-3.  And the court noted in passing that the plaintiffs hadn't served any

18  interrogatories on the mayor seeking to find out if he had relevant information.  *Id.*  That is a

19  far cry from holding that interrogatories are "a valid substitute" for a deposition of a

20  knowledgeable official.

21       In the case at hand, plaintiffs have pursued document requests and interrogatories aimed

22  at learning as much background information as possible about the various defendants' actions.

23  The written discovery has laid the groundwork, but at this stage, plaintiffs need to take

24  depositions to discover matters that are within the personal knowledge of the Governor, Mr.

25  Gore and Ms. Kennedy.  That information cannot be learned by asking more interrogatories or

26  gathering more documents.

27

28

**B. No other witnesses have the relevant information sought**

Defendants also contend that "lower-ranking" officials would have the information sought from the Governor, Mr. Gore and Ms. Kennedy. But defendants do not identify a single member of the Governor's staff who has the same knowledge as the Governor, Mr. Gore and Ms. Kennedy about the salient matters and who would be available for deposition. Nor are plaintiffs aware of anyone with such knowledge.

The cases defendants cite stand for the proposition that it is appropriate to depose a lower-ranking official *if that person has the same relevant knowledge* as the high-level decisionmaker. In *Pension Benefit Guaranty Corp. v. LTV Steel Corp.*, 119 F.R.D. 339, 343 (S.D.N.Y 1988), the court allowed a party to take the deposition of one high ranking official, the executive director of the Pension Benefit Guarantee Corporation (PBGC), who had relevant personal knowledge of the facts, but not the Secretary of Labor because the party failed to make "any showing" that the Secretary had any information that was not generated by the PBGC. And in *In re United States*, 985 F.2d 510 (11th Cir. 1993), the court refused to allow a defendant to depose FDA Commissioner Kessler about his selective prosecution defense because Dr. Kessler was not even Commissioner at the time of the events at issue, and in any event the court identified other individuals who would have knowledge of the precise questions the defendant sought to ask. In *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir., 1982), the plaintiffs apparently sought to depose the governor (though the opinion does not say why) and the court found nothing more than that the plaintiffs had failed to demonstrate the requisite need for the depositions and the district court "did not abuse its discretion in requiring plaintiffs to show specific need for the information."[8]

---

[8] In *Bogan v. Boston*, 489 F.3d 417, 424 (1st Cir. 2007), cited by defendants, the court specifically found that the plaintiff should have deposed a mayor's top aides about what the mayor knew, after which a deposition of the mayor might be appropriate. In the case at hand, defendants seek to prevent plaintiffs from even deposing the Governor's aides (Ms. Kennedy and Mr. Gore), and there will be no time for further depositions because the discovery cutoff is September 8, 2008.

1    None of these cases support the defendants' position that it is appropriate to substitute

2 someone who does *not* have personal knowledge for a public official who does.  Defendants

3 claim that CDCR secretary Matt Cate is an appropriate stand-in, but they fail to note that Mr.

4 Cate became CDCR secretary on May 16, 2008 (see CDCR website,

5 http://www.cdcr.ca.gov/About_CDCR/cate.html (site last visited 7/30/08), nearly two years

6 after the Governor issued his 2006 emergency proclamation, more than one year after AB 900

7 was signed into law, and several months after the Governor submitted his January 2008

8 proposed budget.  Mr. Cate was not privy to the factual bases for any of those decisions, nor to

9 what alternatives the Governor considered.  Indeed, Mr. Cate's litigation position is directly

10 contrary to Mr. Gore's and the Governor's.  *Compare* Evenson Decl, Exh. I (Gore states that

11 "[e]nhanced parole tools . . . are the most immediate way to reduce overcrowding and improve

12 public safety") and *Id.* Exh. Q (Governor's proposal to reduce prison population by 22,159

13 inmates) *with Id.*, Exh. V (Cate asserts that parole reform and Governor's budget proposal

14 would have an adverse impact on public safety).

15    Nor will Scott Kernan, Kathy Jett, Deborah Hysen or Joan Petersilia be appropriate

16 substitutes for the Governor, Mr. Gore or Ms. Kennedy.  None of those individuals worked in

17 the Governor's office.  Accordingly, those individuals cannot identify the factual underpinnings

18 for the Governor's actions or the factors he considered in declaring a state of emergency,

19 meeting with key decisionmakers about drafting or passing AB 900, or proposing the January

20 2008 budget.  Indeed, Dr. Petersilia is merely a consultant to the state, and an identified expert

21 witness for the defense in this case.  Evenson Dec., ¶26.  She is certainly not a stand-in for the

22 Governor.

23    The Governor, Mr. Gore and Ms. Kennedy are the only individuals who possess the

24 relevant information plaintiffs seek.  Plaintiffs have identified specific positions that the

25 Governor, Mr. Gore and Ms. Kennedy have taken that are directly relevant to the elements of

26 the case.  No-one else can explain the contradictions between the Governor's out-of-court

27 statements and his litigation position; no-one else can identify the alternative programs that the

28

1  governor considered appropriate means to reducing the prison population; no-one else can

2  explain the Governor's proposal for fixing AB 900.

3        Plaintiffs need to inquire into the circumstances of the underlying facts, decisions, and

4  apparent contradictions in order to effectively present their case.

5        **C. Defendants' relevance objections are meritless**

6        Defendants contend that some (but not all) of the questions plaintiffs propose to ask are

7  not relevant on the grounds that the Three-Judge Court, not the Governor, will decide the

8  ultimate questions whether overcrowding is the primary cause of a constitutional violation,

9  whether AB 900 will remedy the violation, and whether releasing prisoners would adversely

10  affect public safety.  While this is obviously true, it is not a reason to preclude plaintiffs from

11  inquiring about those matters.  The Governor is a defendant in this action, and any concessions

12  he makes as to the factual disputes in the case are admissible evidence.  Moreover, the factors

13  that the Governor considered in making his assessments and decisions are also relevant; for

14  example, it is relevant whether he considered the impact on public safety of his proposal to

15  release 22,000 prisoners, and if so, what facts or analyses he considered.

16        Plaintiffs will be prejudiced in their ability to present their case if they cannot inquire

17  into such basic factual matters.

18  **III.  Conclusion**

19        For the reasons set forth herein, plaintiffs respectfully request that the court order

20  Governor Schwarzenegger, Robert Gore and Susan Kennedy to appear for their depositions as

21  noticed, or, if those dates are inconvenient, to propose alternative dates within five calendar

22  days of the Court's order.

1    Respectfully submitted,

2    Dated:  August 1, 2008                          PRISON LAW OFFICE

3

4                                                    By:   /s/ *Rebekah Evenson*
                                                          Rebekah Evenson
5

6                                                    Rebekah Evenson
                                                     PRISON LAW OFFICE
7                                                    1917 Fifth Street
                                                     Berkeley, CA  94710
8                                                    Telephone:  (510) 280-2621

9                                                    *Attorneys for Plaintiffs*

10                                                       HANSON BRIDGETT LLP

11

12                                                   By:   /s/ Paul Mello
                                                        JERROLD SCHAEFER
13                                                      PAUL MELLO
                                                        Attorneys for Defendant Arnold
14                                                      Schwarzenegger, et al.

15                                                   (as authorized on August 1, 2008)

16                                                   *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28