EXHIBIT A

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
ALISON HARDY, Bar No. 135966
SARA NORMAN, Bar No. 189536
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | No. Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | **PLAINTIFFS' NOTICE OF DEPOSITION AND REVISED NOTICE OF DEPOSITION OF DEFENDANT WITNESSES** |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants | |
| MARCIANO PLATA, et al., | No. C01-1351 TEH |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants | |

3945-1]

TO EACH PARTY AND EACH ATTORNEY OF RECORD:

YOU ARE HEREBY NOTIFIED THAT THE DEPOSITION OF the following persons will be taken on the dates, and at the times and locations, listed below:

| Witness | Date | Time | Location |
|---|---|---|---|
| Victor Brewer | August 4, 2008 | 9:30 a.m. | Rosen, Bien & Galvan 315 Montgomery St., 10th Fl San Francisco, CA 94104 |
| Scott Kernan | August 27, 2008 | 9:30 a.m. | Prison Law Office 1917 Fifth Street Berkeley, CA 94710-1916 |
| Matthew Cate | August 29, 2008 | 9:30 a.m. | Prison Law Office 1917 Fifth Street Berkeley, CA 94710-1916 |
| Susan Kennedy | September 2, 2008 | 9:30 a.m. | Prison Law Office 1917 Fifth Street Berkeley, CA 94710-1916 |
| Governor Arnold Schwarzenegger | September 3, 2008 | 9:30 a.m. | Office of the Governor State Capitol Building, Sacramento, California |
| Robert Gore | September 4, 2008 | 9:30 a.m. | Prison Law Office 1917 Fifth Street Berkeley, CA 94710-1916 |
| Kathy Jett | August 28, 2008 | 9:30 a.m. | Prison Law Office 1917 Fifth Street Berkeley, CA 94710-1916 |
| Deborah Hysen | August 29, 2008 | 9:30 a.m. | Prison Law Office 1917 Fifth Street Berkeley, CA 94710-1916 |

The deponents are parties to this action. These depositions will be recorded by stenographic means and may be videotaped.

Dated: July 10, 2008

Respectfully submitted,

*Rebekah Evenson*

Rebekah Evenson
Prison Law Office
Attorneys for Plaintiffs

**DECLARATION OF SERVICE BY MAIL**

Case Name:  Plata et al., Plaintiffs v. Schwarzenegger et al., Defendants.
United States District Court
Northern District of California          No. C-01-1351 T.E.H.

I am employed in the County of Berkeley, California. I am over the age of 18 years and not a party to the within entitled cause: my business address is Prison Law Office, 1917 Fifth Street, Berkeley, CA 94710

On July 10, 2008, I served the attached:

**PLATA PLAINTIFFS' NOTICE OF DEPOSITION AND REVISED NOTICE OF DEPOSITION OF DEFENDANT WITNESSES**

in said cause, placing, or causing to be placed, a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at Berkeley, California, addressed as follows:

STEVEN A. KAUFHOLD
Akin Gump Straus Hauer & Feld LLP
580 California St., 15th Floor
San Francisco, CA 94104-1036

PAUL MELLO
Hanson Bridgett Marcus Vlahos & Rudy, LLP
333 Market Street, 21st Floor
San Francisco. CA 94105

GREGG MACCLEAN ADAM
NATALIE LEONARD
Carroll, Burdick , McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, 94104

ROCHELL EAST
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

ANN MILLER RAVEL
Office of the County Counsel
County of Santa Clara
70 West Hedding, East Wing 9th Fl.
San Jose, CA 94110

MARTIN J. MAYER
Kimberly Hall Barlow
Jones & Mayer
3777 North Harbor Blvd.
Fullerton, CA 92835

STEVEN WOODSIDE
Office of the County Counsel
County of Sonoma
575 Admin. Dr., Rm 105A
Santa Rosa, CA 95403

LISA TILLMAN
Deputy Attorney General
Office of the Attorney General
PO Box 944255
Sacramento, CA 94244-2550

WILLIAM E. MITCHELL
Office of the Attorney General
County of Riverside
4075 Main Street, First Floor
Riverside, CA 92501

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Berkeley, California on July 10, 2008.

Ashley Fewell

# EXHIBIT B



General Delivery, San Quentin  CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

Donald Specter

*Staff Attorneys:*
Susan Christian
Rebekah Evenson
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Kelly Knapp
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

July 10, 2008

<u>VIA EMAIL AND U.S. MAIL</u>
Paul Mello, Hanson Bridgett
425 Market Street, 26th Floor
San Francisco CA  94105
(Attorney for *Plata* defendants)

Rochelle East, DAG
455 Golden Gate Ave., Ste 11000
San Francisco, CA 94102-7004
(Attorney for *Plata* and *Coleman* defendants)

Lisa Tillman, DAG
P.O. Box 944255
Sacramento, CA 94244-9555
(Attorney for *Coleman* defendants)

Steven S. Kaufhold and Chad Stegeman
Akin, Gump, Strauss Hauer & Feld, LLP
580 California Street, 15th Floor
San Francisco, CA  94104-1036
(Attorneys for Republican Intervenors)

Steven M. Woodside, County Counsel
Anne L. Keck, Deputy County Counsel
575 Administration Drive, Room 105A
Santa Rosa, CA  95403-2815
(Attorneys for Sonoma County Intervenor)

Martin J. Mayer and Kimberly Hall Barlow
Jones & Mayer
3777 North Harbor Boulevard
Fullerton, CA  92835
(Attorneys for California Sheriff, Probation,
Police Chief and Corrections Intervenors)

Rod Pacheco, District Attorney
County of Riverside
4075 Main Street, First Floor
Riverside, CA  92501
(Attorneys for District Attorney Intervenors)

Ann Miller Ravel and Theresa Fuentes
Office of the County Counsel
70 West Hedding, East Wing, 9th Floor
San Jose, CA  95110-1770
(Attorneys for County Intervenors)

Natalie Leonard and Gregg MacClean Adam
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA  94104
(Attorneys for CCPOA Intervenors)

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

Dear Counsel:

I am writing to schedule depositions that the *Plata* and *Coleman* plaintiffs have noticed or are noticing today. All of the individuals are persons for whom we have "very good cause" to take depositions, and most will also be designated as trial witnesses for Plaintiffs.

In light of the short timeframe in which all parties must complete outstanding discovery, we need to move quickly to schedule the remaining depositions and, if there are any disputes, to obtain resolution from the Magistrate Judge as soon as possible. Following is a proposed list of depositions, dates and locations.

| DEPONENT | DATE | LOCATION |
|---|---|---|
| State Defendants | | |
| Victor Brewer | August 4, 2008 | Rosen Bien & Galvan |
| Scott Kernan | August 27, 2008 | Prison Law Office |
| Matthew Cate | August 29, 2008 | Prison Law Office |
| Susan Kennedy | September 2, 2008 | Prison Law Office |
| Governor Arnold Schwarzenegger | September 3, 2008 | Governor's office |
| Robert Gore | September 4, 2008 | Prison Law Office |
| Kathy Jett | August 28, 2008 | Prison Law Office |
| Deborah Hysen | August 29, 2008 | Prison Law Office |
| | | |
| Intervenors | | |
| Dave Cogdill | July 16, 2008 | Phillips (Sacramento) |
| Dick Ackerman | July 18, 2008 | Phillips (Sacramento) |
| Michael M. Villines | July 25, 2008 | Phillips (Sacramento) |
| Todd Spitzer | July 29, 2008 | Phillips (Sacramento) |
| Jerry Powers | July 31, 2008 | K&L Gates (San Francisco) |
| Sonoma 30(b)(6) designee | August 4, 2008 | K&L Gates (San Francisco) |
| Lee Baca | August 5, 2008 | K&L Gates (Los Angeles) |
| William B. Kolender | August 7, 2008 | K&L Gates (Irvine) |
| Loren Buddress | August 11, 2008 | K&L Gates (San Francisco) |
| | | |
| Non-party witnesses | | |
| Joan Petersilia | July 31, 2008 | Prison Law Office |

(Plaintiffs reserve the right to notice depositions of any additional individuals designated as trial witnesses or experts by the parties.)

In light of the impending discovery cutoff, we request that you let us know by the end of the day on Monday, July 14, 2008 whether the proposed deposition dates are agreeable to you, or whether you intend to suggest alternative dates. Also, please inform us by the end of the day on Monday, July 14, 2008 whether you intend to object to the taking of any of these depositions.

We expect that we will be able to work cooperatively with you to schedule all of the proposed depositions. However, in light of recent difficulties we have encountered in informally resolving discovery matters, and the short timeframes for completing discovery, we need a firm deadline to settle the desposition schedule. Accordingly, if we do not hear from you by the end of the day on Monday, July 14, 2008, we will have no choice but to assume that you object to all of the proposed depositions, and we will file a motion to compel before the Magistrate Judge. I hope that such a motion will be unnecessary.

Sincerely,

Rebekah Evenson

cc: Michael Bien, Rosen, Bien & Galvan

EXHIBIT C

**HansonBridgett**

SAMANTHA D. TAMA
ATTORNEY
DIRECT DIAL 415 995 5020
DIRECT FAX 415 995 3547
E-MAIL stama@hansonbridgett.com

July 14, 2008

VIA ELECTRONIC MAIL AND U.S. MAIL

Rebekah Evenson
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710-1916

Re:    Plaintiffs' Deposition Notices
       *Plata v. Schwarzenegger*, U.S. District Court, Northern District of California, Case No.
       01-1351 TEH;
       *Coleman v. Schwarzenegger*, U.S. District Court, Eastern District of California, Case
       No. 2:90-cv-0520 LKK

Dear Ms. Evenson:

I write this letter in response to your letter dated July 10, 2008 with regard to scheduling depositions in both *Plata* and *Coleman*. As a preliminary matter, Defendants take no position with respect to the Intervenors' depositions.

With regard to the depositions of Scott Kernan, Matthew Cate, Kathy Jett, and Deborah Hysen, Defendants were not provided with sufficient time to confirm these deponents' availability for the dates their depositions were noticed.[1] Indeed, Defendants were not consulted before Plaintiffs unilaterally scheduled the dates for the above individuals' depositions. However, Defendants are willing to work with Plaintiffs to find mutually agreeable dates and locations for these depositions, and will contact you when we obtain these deponents' availability.

Susan Kennedy, Victor Brewer, Governor Arnold Schwarzenegger, and Robert Gore, however, have not been identified as testifying witnesses by Plaintiffs or Defendants. Nor do Defendants intend to call these individuals to testify at trial. Defendants therefore assume that Plaintiffs will either withdraw the deposition notices for these individuals, or will appropriately file a motion to depose a non-testifying witness with Magistrate Judge Moulds demonstrating "very good cause" in compliance with the Three Judge Court's July 2, 2008 order. Defendants will oppose the depositions of these non-testifying witnesses In the absence of an order from Magistrate Judge Moulds.

---

[1] Defendants received Plaintiffs' letter noticing various depositions on Thursday, July 10, 2008 at 4:35 p.m., and Plaintiffs requested a response no later than Monday, July 14, 2008.

**Hanson Bridgett LLP**
425 Market Street, 26th Floor, San Francisco, CA  94105   hansonbridgett.com

1555942.1

Rebekah Evenson
July 14, 2008
Page 2


Defendants will send you a separate communication regarding your deposition notice of Dr. Joan Petersilia.

Sincerely,

Samantha D. Tama

cc (via electronic mail):

      Paul Mello
      Rochelle East
      Kyle Lewis
      Lisa Tillman
      Steven Kaufhold
      Chad Stegeman
      Theresa Wang
      William Mitchell
      Natalie Leonard
      Theresa Fuentes
      Anne Keck
      Kimberly Hall Barlow
      Martin Mayer

# EXHIBIT D

Case 2:90-cv-00520-KJM-SCR     Document 2907-1     Filed 08/01/08     Page 13 of 42



Office of the Governor    ARNOLD SCHWARZENEGGER
                          THE PEOPLE'S GOVERNOR

# PROCLAMATION

10/04/2006

## Prison Overcrowding State of Emergency Proclamation

PROCLAMATION
by the
Governor of the State of California

      **WHEREAS,** the California Department of Corrections and Rehabilitation (CDCR) is required by California law to house inmates committed to state prison; and

      **WHEREAS,** various trends and factors, including population increases, parole policies, sentencing laws, and recidivism rates have created circumstances in which the CDCR is now required to house a record number of inmates in the CDCR prison system, making the CDCR prison system the largest state correctional system in the United States, with a total inmate population currently at an all-time high of more than 170,000 inmates; and

      **WHEREAS,** due to the record number of inmates currently housed in prison in California, all 33 CDCR prisons are now at or above maximum operational capacity, and 29 of the prisons are so overcrowded that the CDCR is required to house more than 15,000 inmates in conditions that pose substantial safety risks, namely, prison areas never designed or intended for inmate housing, including, but not limited to, common areas such as prison gymnasiums, dayrooms, and program rooms, with approximately 1,500 inmates sleeping in triple-bunks; and

      **WHEREAS,** the current severe overcrowding in 29 CDCR prisons has caused substantial risk to the health and safety of the men and women who work inside these prisons and the inmates housed in them, because:

      With so many inmates housed in large common areas, there is an increased, substantial risk of violence, and greater difficulty controlling large inmate populations.

      With large numbers of inmates housed together in triple-bunks, there is an increased, substantial risk for transmission of infectious illnesses.

      The triple-bunks and tight quarters create line-of-sight problems for correctional officers by blocking views,

creating an increased, substantial security risk.

**WHEREAS,** the current severe overcrowding in these 29 prisons has also overwhelmed the electrical systems and/or wastewater/sewer systems, because those systems are now often required to operate at or above the maximum intended capacity, resulting in an increased, substantial risk to the health and safety of CDCR staff, inmates, and the public, because:

Overloading the prison electrical systems has resulted in power failures and blackouts within the prisons, creating increased security threats. It has also damaged fuses and transformers.

Overloading the prison sewage and wastewater systems has resulted in the discharge of waste beyond treatment capacity, resulting in thousands of gallons of sewage spills and environmental contamination.

And when the prisons "overdischarge" waste, bacteria can contaminate the drinking water supply, putting the public's health at an increased, substantial risk.

**WHEREAS,** overloading the prison sewage and water systems has resulted in increased, substantial risk of damage to state and privately owned property and has resulted in multiple fines, penalties and/or notices of violations to the CDCR related to wastewater/sewer system overloading such as groundwater contamination and environmental pollution; and

**WHEREAS,** overcrowding causes harm to people and property, leads to inmate unrest and misconduct, reduces or eliminates programs, and increases recidivism as shown within this state and in others; and

**WHEREAS,** in addition to all of the above, in the 29 prisons with severe overcrowding, the following circumstances exist:

Avenal State Prison has an operational housing capacity of 5,768 inmates, but it currently houses 7,422 inmates, with 1,654 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 64 incidents of assault/battery by inmates — 31 of them against CDCR staff — along with 15 riots/melees, and 27 weapon confiscations.

The California Correctional Center has an operational housing capacity of 5,724 inmates, but it currently houses 6,174 inmates, with 450 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 128 incidents of assault/battery by inmates — 16 of them against CDCR staff — along with 34 riots/melees, and 21 weapon confiscations.

The California Correctional Institution has an operational housing capacity of 4,931, but it currently houses 5,702 inmates, with 771 inmates housed in areas designed for other purposes. At the same time, in the last year, there

were 125 incidents of assault/battery by inmates — 79 of them against CDCR staff — along with 5 riots/melees, and 57 weapon confiscations.

Centinela State Prison has an operational housing capacity of 4,368, but it currently houses 4,956 inmates, with 588 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 141 incidents of assault/battery by inmates — 30 of them against CDCR staff — along with 10 riots/melees, and 151 weapon confiscations.

The California Institution for Men has an operational housing capacity of 5,372, but it currently houses 6,615 inmates, with 1,243 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 170 incidents of assault/battery by inmates — 57 of them against CDCR staff — along with 21 riots/melees, and 47 weapon confiscations.

The California Institution for Women has an operational housing capacity of 2,228, but it currently houses 2,624 inmates, with 396 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 65 incidents of assault/battery by inmates — 26 of them against CDCR staff — and 6 weapon confiscations.

The California Men's Colony has an operational housing capacity of 6,294, but it currently houses 6,574 inmates, with 280 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 151 incidents of assault/battery by inmates — 33 of them against CDCR staff — along with 11 riots/melees, and 29 weapon confiscations.

The California State Prison at Corcoran has an operational housing capacity of 4,954, but it currently houses 5,317 inmates, with 363 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 147 incidents of assault/battery by inmates — 58 of them against CDCR staff — along with 5 riots/melees, and 111 weapon confiscations.

The California Rehabilitation Center has an operational housing capacity of 4,660, but it currently houses 4,856 inmates, with 196 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 65 incidents of assault/battery by inmates — 28 of them against CDCR staff — 9 riots/melees, and 34 weapon confiscations.

The Correctional Training Facility has an operational housing capacity of 6,157, but it currently houses 7,027 inmates, with 870 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 85 incidents of assault/battery by inmates — 26 of them against CDCR staff — along with 9 riots/melees, and 27 weapon confiscations.

Chuckawalla Valley State Prison has an operational housing capacity of 3,443, but it currently houses 4,292 inmates, with 849 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 50 incidents of assault/battery by inmates — 11 of them against CDCR staff — along with 5 riots/melees, and 21 weapon confiscations.

Deuel Vocational Institution has an operational housing capacity of 3,115, but it houses 3,911 inmates, with 796 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 114 incidents of assault/battery by inmates — 54 of them against CDCR staff — along with 7 riots/melees, and 37 weapon confiscations.

High Desert State Prison has an operational housing capacity of 4,346, but it currently houses 4,706 inmates, with 360 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 351 incidents of assault/battery by inmates — 44 of them against CDCR staff — along with 6 riots/melees, and 289 weapon confiscations.

Ironwood State Prison has an operational housing capacity of 4,185, but it currently houses 4,665 inmates, with 480 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 96 incidents of assault/battery by inmates — 19 of them against CDCR staff — along with 14 riots/melees, and 52 weapon confiscations.

Kern Valley State Prison has an operational housing capacity of 4,566, but it currently houses 4,686 inmates, with 120 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 146 incidents of assault/battery by inmates — 60 of them against CDCR staff — along with 10 riots/melees, and 46 weapon confiscations.

TheCalifornia State Prison at Los Angeles has an operational housing capacity of 4,230, but it currently houses 4,698 inmates, with 468 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 211 incidents of assault/battery by inmates — 123 of them against CDCR staff — along with 4 riots/melees, and 101 weapon confiscations.

Mule Creek State Prison has an operational housing capacity of 3,197, but it currently houses 3,929 inmates, with 732 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 65 incidents of assault/battery by inmates — 35 of them against CDCR staff — along with 1 riot/melee, and 28 weapon confiscations.

North Kern State Prison has an operational housing capacity of 5,189, but it currently houses 5,365 inmates, with 176 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 135 incidents of assault/battery by inmates — 43 of them against CDCR staff — along with 16 riots/melees, and 70 weapon confiscations.

Pelican Bay State Prison has an operational housing capacity of 3,444, but it currently houses 3,604 inmates, with 160 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 256 incidents of assault/battery by inmates — 88 of them against CDCR staff — along with 9 riots/melees, and 106 weapon confiscations.

Pleasant Valley State Prison has an operational housing capacity of 4,368, but it currently houses 5,112 inmates, with 744 inmates housed in areas designed for other purposes. At the same time, in the last year, there were

205 incidents of assault/battery by inmates — 59 of them against CDCR staff — along with 12 riots/melees, and 26 weapon confiscations.

The Richard J. Donovan Correctional Facility has an operational housing capacity of 4,120, but it currently houses 4,720 inmates, with 600 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 244 incidents of assault/battery by inmates — 118 of them against CDCR staff — along with 11 riots/melees, and 96 weapon confiscations.

The California State Prison at Sacramento has an operational housing capacity of 2,973, but it currently houses 3,213 inmates, with 240 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 264 incidents of assault/battery by inmates — 159 of them against CDCR staff — along with 5 riots/melees, and 118 weapon confiscations.

The California Substance Abuse Treatment Facility and State Prison at Corcoran has an operational housing capacity of 6,360, but it currently houses 7,593 inmates, with 1,233 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 120 incidents of assault/battery by inmates — 53 of them against CDCR staff — along with 20 riots/melees, and 124 weapon confiscations.

The Sierra Conservation Center has an operational housing capacity of 5,657, but it currently houses 6,107 inmates, with 450 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 61 incidents of assault/battery by inmates — 18 of them against CDCR staff — along with 19 riots/melees, and 50 weapon confiscations.

The California State Prison at Solano has an operational housing capacity of 5,070, but it currently houses 5,858 inmates, with 788 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 60 incidents of assault/battery by inmates — 26 of them against CDCR staff — along with 4 riots/melees, and 114 weapon confiscations.

San Quentin State Prison has an operational housing capacity of 4,933, but it currently houses 5,183 inmates, with 287 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 262 incidents of assault/battery by inmates — 123 of them against CDCR staff — along with 15 riots/melees, and 118 weapon confiscations.

Salinas Valley State Prison has an operational housing capacity of 4,200, but it currently houses 4,680 inmates, with 480 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 181 incidents of assault/battery by inmates — 82 of them against CDCR staff — along with 7 riots/melees, and 91 weapon confiscations.

Valley State Prison for Women has an operational housing capacity of 3,902, but it currently houses 3,958 inmates, with 56 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 125 incidents of assault/battery by inmates — 75 of them against CDCR staff — and 15 weapon confiscations.

Wasco State Prison has an operational housing capacity of 5,838, but it currently houses 6,098 inmates, with 260 inmates housed in areas designed for other purposes. At the same time, in the last year, there were 226 incidents of assault/battery by inmates — 97 of them against CDCR staff — along with 32 riots/melees, and 82 weapon confiscations.

**WHEREAS,** some of these 29 severely overcrowded prisons may even be housing more inmates, because the inmate population continually fluctuates among the CDCR prisons; and

**WHEREAS,** in addition to the 1,671 incidents of violence perpetrated in these 29 severely overcrowded prisons by inmates against CDCR staff last year, and the 2,642 incidents of violence perpetrated in these prisons on inmates by other inmates in the last year, the suicide rate in these 29 prisons is approaching an average of one per week; and

**WHEREAS,** the federal court in the *Coleman* case found mental-health care in CDCR prisons to be below federal constitutional standards due in part to the lack of appropriate beds and space; and

**WHEREAS,** the use of common areas for inmate housing has severely modified or eliminated certain inmate programs in the 29 prisons with severe overcrowding; and

**WHEREAS,** the severe overcrowding has also substantially limited or restricted inmate movement, causing significantly reduced inmate attendance in academic, vocational, and rehabilitation programs; and

**WHEREAS,** overcrowded prisons in other states have experienced some of the deadliest prison riots in American history, including:

In 1971, the nation's deadliest prison riot occurred in Attica, New York, resulting in the death of 43 people. On the day of this riot, the prison — which was built for 1600 — housed approximately 2,300 inmates.

In 1981, a riot occurred in the New Mexico State Penitentiary. More than 30 inmates were killed, more than 100 people were injured, and 12 officers were taken hostage, some of whom were beaten, sexually assaulted, and/or raped. On the day of this riot, the prison — which was built for 900 — housed approximately 1,136 inmates.

In 1993, a riot occurred in Lucasville, Ohio. One officer was murdered, four officers were seriously injured, and nine inmates were killed. On the day of this riot, the prison — which was built for 1600 — housed approximately 2,300 inmates.

**WHEREAS,** I believe immediate action is necessary to prevent death and harm caused by California's severe prison overcrowding; and

**WHEREAS,** because of the housing shortage in CDCR prisons, the CDCR has current contracts with four California counties to house 2,352 additional state inmates in local adult jails, but this creates the following overcrowding problem in the county jails:

According to a report by the California State Sheriffs' Association in June 2006, adult jails recently averaged a daily population of approximately 80,000 inmates. On a typical day, the county jails lacked space for more than 4,900 inmates across the state.

Based on the same report, 20 of California's 58 counties have court-imposed population caps resulting from litigation brought by or on behalf of inmates in crowded jails and another 12 counties have self-imposed caps.

Most of California's jail population consists of felony inmates, but when county jails are full, someone in custody must be released before a new inmate can be admitted.

The 2006 Sheriffs' Association report states that last year, 233,388 individuals statewide avoided incarceration or were released early into local communities because of the lack of jail space.

**WHEREAS,** overcrowding conditions are projected to get even worse in the coming year, to the point that the CDCR expects to run out of all common area space to house prisoners in mid-2007, and will be unable to receive any new inmates; and

**WHEREAS,** in January 2006, I proposed $6 billion in the Strategic Growth Plan to help manage inmate population at all levels of government by increasing the number of available local jail beds and providing for two new prisons and space for 83,000 prisoners to address California's current and future incarceration needs; and

**WHEREAS,** the California Legislature failed to act upon this proposal; and

**WHEREAS,** in March 2006, a proposal was submitted as part of my 2006-07 budget to enable the CDCR to contract for a total of 8,500 beds in community correctional facilities within the state; and

**WHEREAS,** the California Legislature denied this proposal; and

**WHEREAS,** on June 26, 2006, I issued a proclamation calling the Legislature into special session because I believed urgent action was needed to address this severe problem in California's prisons, and I wanted to give the Legislature a further opportunity to address this crisis; and

**WHEREAS,** the CDCR submitted detailed proposals to the Legislature to address the immediate and longer-term needs of the prison system in an effort resolve the overcrowding crisis; and

**WHEREAS,** the California Legislature failed to adopt the proposals submitted by the CDCR, and also failed to adopt any proposals of its own; and

**WHEREAS,** in response, my office directed the CDCR to conduct a survey of certain inmates in California's general population to determine how many might voluntarily transfer to out-of-state correctional facilities; and

**WHEREAS,** the CDCR reports that more than 19,000 inmates expressed interest in voluntarily transferring to a correctional facility outside of California; and

**WHEREAS,** the overcrowding crisis gets worse with each passing day, creating an emergency in the California prison system.

**NOW, THEREFORE, I, ARNOLD SCHWARZENEGGER,** Governor of the State of California, in light of the aforementioned, find that conditions of extreme peril to the safety of persons and property exist in the 29 CDCR prisons identified above, due to severe overcrowding, and that the magnitude of the circumstances exceeds the capabilities of the services, personnel, equipment, and facilities of any geographical area in this state. Additionally, the counties within the state are harmed by this situation, as the inability to appropriately house inmates directly impacts local jail capacity and the early release of felons. This crisis spans the eastern, western, northern, and southern parts of the state and compromises the public's safety, and I find that local authority is inadequate to cope with the emergency. Accordingly, under the authority of the California Emergency Services Act, set forth at Title 2, Division 1, Chapter 7 of the California Government Code, commencing with section 8550, I hereby proclaim that a State of Emergency exists within the State of California's prison system.

Pursuant to this proclamation:

I.   The CDCR shall, consistent with state law and as deemed appropriate by the CDCR Secretary for the sole purpose of immediately mitigating the severe overcrowding in these 29 prisons and the resulting impacts within California, immediately contract for out-of-state correctional facilities to effectuate voluntary transfers of California prison inmates to facilities outside of this state for incarceration consisting of constitutionally adequate housing, care, and programming.

II.   The CDCR Secretary shall, after exhausting all possibilities for voluntary transfers of inmates, and in compliance with the Interstate Corrections Compact and the Western Interstate Corrections Compact, and as he deems necessary and appropriate to mitigate this emergency, effectuate involuntary transfers of California prison inmates, based on criteria set forth below, to institutions in other states and those of the federal government for incarceration consisting of constitutionally adequate housing, care, and programming. In such instance, because strict compliance with California Penal Code sections 11191 and 2911 would prevent, hinder, or delay the mitigation of the severe overcrowding in these prisons, applicable provisions of these statutes are suspended to the extent necessary to

enable the CDCR to transfer adult inmates, sentenced under California law, to institutions in other states and those of the federal government without consent. This suspension is limited to the scope and duration of this emergency.

A.      The CDCR Secretary shall prioritize for involuntary transfer the inmates who meet the following criteria:

1.   Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to immediate deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.

2.   Inmates who are paroling outside of California.

3.   Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.

4.   Inmates who have family or supportive ties in a transfer state.

5.   Other inmates as deemed appropriate by the CDCR Secretary.

B.      No person under commitment to the Division of Juvenile Justice may be considered for such transfer.

III.    The CDCR Secretary shall, before selecting any inmate for transfer who has individual medical and/or mental-health needs, consult with the court-appointed Receiver of the CDCR medical system and/or the court-assigned Special Master in the *Coleman* mental-health case, depending on the healthcare needs of the inmate, to determine whether a transfer would be appropriate.

IV.    The CDCR Secretary shall, before effectuating any inmate transfer, carefully and thoroughly evaluate all appropriate factors, including, but not limited to, the cost-effectiveness of any such transfer and whether an inmate selected for transfer has any pending appeals or hearings that may be impacted by such transfer.

V.    The CDCR shall, as deemed appropriate by the CDCR Secretary, contract for facility space, inmate transportation, inmate screening, the services of qualified personnel, and/or for the supplies, materials, equipment, and other services needed to immediately mitigate the severe overcrowding and the resulting impacts within California. Because strict compliance with the provisions of the Government Code and the Public Contract Code applicable to state contracts would prevent, hinder, or delay the mitigation of the severe overcrowding in these prisons, applicable provisions of these statutes, including, but not limited to, advertising and competitive bidding requirements, are suspended to the extent necessary to enable the CDCR to enter into such contracts as expeditiously as possible. This suspension is limited to the scope and duration of this emergency.

**I FURTHER DIRECT** that as soon as hereafter possible, this proclamation be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this proclamation.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 4th day of October 2006.



ARNOLD SCHWARZENEGGER

Governor of California

**ATTEST:**

BRUCE McPHERSON

Secretary of State

EXHIBIT E

**From:** Bonnie8888@aol.com
**Sent:** Friday, February 23, 2007 10:39:03 AM
**To:** Najera, Elizabeth; jeff.adachi@sfgov.org; chuck.alexander@ccpoa.org; rabarpro@pacbell.net; Lucy.Armendariz@sen.ca.gov; ashbyconsultinggroup@yahoo.com; dauclair@mhsinc.org; Bach, Margot; Blaylock, Janet; bloom@sonoma.edu; Bracy, Jean; wbroughton@mhsinc.org; Brown, Cynthia; MBuell@bop.gov; Susan@anewwayoflife.org; KimC@TimeForChange.us; Cates, Sid; echarles@mhsinc.org; Chen, Bubpha; Conneally-Salazar, Catherine; lindalca@sbcglobal.net; Davison, Dawn; Dillon, Shannon; Dobson-Davis, Velda; admin@crossroadswomen.org; pdouglas@gtemail.net; veisen@waldenhouse.org; families@filo7.org; Feryance, Mary H; lgarcia_2020@yahoo.com; Cgeiger007@aol.com; Grannis, Nola; rigreenb@lanset.com; phaire@mhsinc.org; Hall, Guillermina; Harman, Dalinda; Harpe, Shideler; Harrington, Robin; Hatter, Robin; Hayhoe, Joyce; Hubbard, Suzan; sjabro@earthlink.net; Jackson, Sharon; Johnson, Karen; ccip@earthlink.net; Johnston, Riccardo; Keller, Darc; Koshell, Merrie; Laduke, Tifani D.; LLAMBE@cpinc.org; leslie.levitas@sfgov.org; jlewen@earthlink.net; Bonnie8888@aol.com; Long, Jacqueline; nancy.lyons@lhc.ca.gov; Malone, Sara; WTMPhD@aol.com; micdotcom@yahoo.com; McCune, Margie; dmcdermott@cacatholic.org; Nunez, Ruben; Kenneth.orduna@asm.ca.gov; MOShea@co.sanmateo.ca.us; Ossmann, Joseph; SOstermann@phoenixhouse.org; barbarao@csufresno.edu; judyp@womensfoundca.org; price@waldenhouse.org; josefina.ramirez@asm.ca.gov; sasca-pm@mhsinc.org; Robinson, David L; anne@clarkeronce.com; rosalinda.rosalez@sen.ca.gov; Nettie.Sabelhaus@sen.ca.gov; marlene@cywd.org; Sayles-Owen, Del; Shilay, Chris; Smalley, Janine; Monica.Smith@asm.ca.gov; rsmith@waldenhouse.org; Stephens, Regina; Still, Wendy; Heidi@prisonerswithchildren.org; Temple, Vicky; Virga, Tim; lwanner@cacatholic.org; Warner, Bernard; mwiberg@women.ca.gov; Dzobel@bop.gov; azometa@medasf.org; Fortner, Bart; Christine.Archibald@asm.ca.gov; bmcgovern@women.ca.gov; cgumacal@women.ca.gov; tspira@ucsc.edu; Patrick, Deborah; Lattimore, Mary; aspmrs@yahoo.com; carole.d'elia@lhc.ca.gov; susanf@womensfoundca.org; gnewby@friendsoutside.org; mraeder@swlaw.edu; Barnes, Dodie; Tfarmon@aol.com
**Subject:** Governor to consider early inmate release

**SFGate**.com

# Governor to consider early inmate release

## Giving nonviolent convicts a break could ease crowding, stave off judges

Mark Martin, Chronicle Sacramento Bureau

Friday, February 23, 2007

 

**(02-23) 04:00 PST Sacramento** -- Gov. Arnold Schwarzenegger said Thursday he would consider releasing some inmates before they complete their sentences to alleviate prison overcrowding, marking a significant shift in position by the governor as he faces mounting pressure from federal judges to address the state's jam-packed prisons.

Schwarzenegger said at a news conference that he was open to discussing early release for some inmates without violent histories as a way to create space in prisons and to head off potential federal court intervention.

Schwarzenegger, who has proposed spending nearly $11 billion to add prison space to accommodate more inmates,

E_CDCR_017808

faces a summer deadline from three federal judges who are considering imposing a population limit on the system. He made his comments a week after U.S. District Court Judge Thelton Henderson scheduled a hearing for June to consider a limit and seemed to indicate he wanted fewer people behind bars.

In his order, Henderson asked the administration to tell him within 90 days how it would reduce the inmate population by next year -- a question that suggests the judge will not accept proposals to build more prisons as an answer to overcrowding.

"The judge seems to be saying it's not possible for the state to build its way out of the problem," said Steve Fama, an attorney for the Prison Law Office, which is seeking the population limit on behalf of inmates with medical problems, mental health problems and disabilities.

Two other federal judges, Lawrence Karlton and Claudia Wilken, also have scheduled hearings for this summer to consider population limits, and Karlton promised in December that he would begin procedures to implement a limit if the state didn't improve prison conditions this year.

Schwarzenegger said Henderson's order, issued last week, was a factor in his decision to put all options on the table. A court-imposed cap could potentially lead to early releases anyway; the governor said, "If we don't clean up the mess, the federal courts will do it for us."

Asked by a reporter if he would consider releasing some inmates early, Schwarzenegger said, "We have to look at all the different possibilities on how to free up some beds."

Schwarzenegger, who met behind closed doors with legislative leaders for about an hour Thursday morning to discuss prison issues, has previously said he would oppose any effort to reduce sentences of inmates.

But the political feasibility of releasing some inmates early remained a major question mark.

Schwarzenegger's aides released a comment from the governor late in the day trying to clarify his remarks, suggesting there had been a discussion with lawmakers about "the potential release of the old, feeble and sick who pose no threat to the public" but that the governor didn't favor releasing anyone early -- he is only open to discussing it. Neither Assembly Speaker Fabian Núñez, D-Los Angeles, nor Senate President Pro Tem Don Perata, D-Oakland, would comment on the early release possibility.

Assembly Republican Leader Michael Villines, R-Clovis (Fresno County), issued a statement saying, "We will not support releasing those who have committed crimes until they have served their time."

The nonpartisan Legislative Analyst's Office recommended in 2003 and 2004 releasing some elderly inmates early, noting that a federal study found that only 3 percent of ex-convicts over the age of 55 committed a new crime once let out of prison, compared with a 45 percent recidivism rate among 18- to 49-year-olds.

The state currently has more than 9,000 inmates 55 and older.

And the state's prison guards union, known for promoting tough-on-crime issues, issued a proposal last month to help solve the overcrowding crisis that included releasing some nonviolent inmates 30 days early.

The state houses more than 86,000 inmates for nonviolent crimes, including more than 36,000 for drug crimes, although it is unclear how many of those inmates have past violent crimes on their records.

With 171,000 inmates living in prison space built for 100,000, Schwarzenegger and legislative leaders have pledged to reach consensus on prison reforms this year.

The governor has proposed adding space at existing prisons and building 45,000 new county jail beds and new re-entry facilities in urban areas. Schwarzenegger also has suggested creating a commission to study changes to sentencing and parole policies, and he is proposing in his budget plan to eliminate parole for some felons and lessen the length of parole for others. The parole changes would probably reduce the prison population because it would mean fewer parolees returning to prison for violating conditions of their parole.

But with the governor's only short-term solution to overcrowding facing a legal challenge -- he is appealing a Superior Court judge's ruling against a plan to ship inmates to prisons in other states -- reducing the prison population by early releases might be the only way to appease the judges this year.

"By the governor's own admission, the prisons are dangerously overcrowded right now," said Michael Bien, a San Francisco attorney working with the Prison Law Office on the population cap requests. "Building new buildings, which will

take years, won't do."

*E-mail the writer at markmartin@sfchronicle.com.*

http://sfgate.com/cgi-bin/article.cgi?f=/chronicle/archive/2007/02/23/MNGD7O9UNN1.DTL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
AOL now offers free email to everyone. Find out more about what's free from AOL at http://www.aol.com.

E_CDCR_017810

EXHIBIT F



GOVERNOR ARNOLD SCHWARZENEGGER

June 17, 2008

The Honorable Don Perata
President pro Tempore
California State Senate
State Capitol
Room 205
Sacramento, California 95814

The Honorable Karen Bass
Speaker
California State Assembly
State Capitol
Room 219
Sacramento, California 95814

The Honorable Dave Cogdill
Republican Leader
California State Senate
State Capitol
Room 305
Sacramento, California 95814

The Honorable Mike Villines
Republican Leader
California State Assembly
State Capitol
Room 3104
Sacramento, California 95814

Dear Senator Perata, Senator Cogdill, Speaker Bass and Mr. Villines,

Public safety is the most important role of government. As such, it remains one of my top priorities, and I know it is also one of yours.

A little more than a year ago, we enacted Assembly Bill 900, historic bipartisan prison reform legislation designed to address our long-term prison needs through a combined approach of construction and rehabilitation.

Our work is underway, but it is not done, and now is the time for us to work together and coordinate AB 900 prison construction, the Receiver's construction plan to deliver federal court-mandated inmate health care and operational reforms that fit into the reality of our budget situation.

We need to address these issues in a comprehensive and integrated manner that preserves and strengthens our reforms and acknowledges our main goal of protecting public safety. AB 900 represents a cultural change in how we build and operate our correctional institutions and how we prepare inmates to come back to our communities.

The Honorable Don Perata
The Honorable Dave Cogdill
The Honorable Karen Bass
The Honorable Mike Villines
June 17, 2008
Page two

Our historic reforms depend on quickly building new space to increase capacity, enhance staff and inmate safety, provide program space and deliver healthcare to meet at least constitutionally minimum standards. Protecting public safety and addressing our fiscal reality requires that we reduce the recidivism rate and the constant churning of the prison population.

Changes to AB 900 to expedite prison construction and to enact the Receiver's plan for construction, parole reforms and other strategies for better managing correctional resources must be dealt with quickly by the Governor and the Legislature. We cannot delay, and if this isn't done *by* us, it will be done *for* us by the federal courts. We must work immediately to address this important issue and find common ground as we did in our original collaboration.

Since the enactment of AB 900, the California Department of Corrections and Rehabilitation (CDCR) has built a strong foundation, with significant accomplishments including:

- Taking down more than 5,000 nontraditional beds in places like gyms, dayrooms and classrooms – reducing overcrowding and making room for rehabilitative programs, such as the reopening of 13 gyms for learning and recreation. The number of inmates in nontraditional beds has decreased from a high of 19,618 in August 2007 to 14,733. As of May 28, 4,056 inmates were housed in out-of-state correctional facilities, further reducing overcrowding.

- Placing 7,109 parolees in community treatment beds, an increase of 42 percent in about 18 months.

- Discharging 37.2 percent of parolees at the 13th month pursuant to Penal Code 3001, up from 32.3 percent in 2006.

- A total of 6,700 infill beds are in planning and Environmental Impact Report stages and are scheduled to break ground in 2009. The first re-entry center is slated to open in mid-2009.

- "Operation Changing Tides" launched in April to quickly change the prison custody culture from "warehousing" to active participation in policing and rehabilitation. This program identifies gang members and separates them, which helps make rehabilitation programming possible.

The Honorable Don Perata
The Honorable Dave Cogdill
The Honorable Karen Bass
The Honorable Mike Villines
June 17, 2008
Page three


CDCR Secretary Matt Cate is new on the job, but, as you know, has a formidable record of reform and integrity as our Inspector General, as well as Chairman of the California Rehabilitation Oversight Board created in AB 900.  He will be the administration's point person as we work to build additional capacity and accelerate our reforms in a manner that promotes public safety in our communities.

California is a leader in many areas, and we can be a leader again in our efforts to manage our prison population, provide proper health and mental health services, reduce recidivism – saving future budget costs – and increase public safety for the people of this great state.  I ask that you join me in this effort.

Sincerely,

Arnold Schwarzenegger

/la

EXHIBIT G



GOVERNOR ARNOLD SCHWARZENEGGER

April 26, 2007

The Honorable Dick Ackerman
Senate Republican Leader
State Capitol
Room 305
Sacramento, California 95814

Dear Senator Ackerman,

Thank you for your continued leadership on prison reform and for the work you have accomplished with respect to the need to add capacity to our local jails. Without your efforts, California would be facing certain early release of felons ordered by the federal court.

In order to address some of the concerns raised by your Caucus, I will be immediately exploring all options, including issuing an Executive Order, introducing subsequent legislation or directing the Secretary of the Department of Corrections and Rehabilitation to do the following:

- Evaluate all alternative construction methods for construction of reentry facilities and infill capacity within the prisons;
- Looking at any options for housing inmates in existing facilities within the state that are not being utilized before inmates are transferred out of state;
- Developing cost containments for proposed construction;
- Evaluating regulatory impediments to construction and whether waiver of regulations benefit the state; and
- Addressing local mitigation issues for communities that are impacted by current prison facilities.

Passage of AB 900, along with addressing the issues outlined above, will ensure that the state can continue to protect public safety. Again, thank you for your efforts.

Sincerely,

Arnold Schwarzenegger

/ck

GOVPRIV001869

EXHIBIT H

**Robert Gore**

| | |
|---|---|
| From: | Robert Gore |
| Sent: | Friday, May 11, 2007 11:16 AM |
| To: | Barbara Bloom (bloom@sonoma.edu); Ben Martin (ben.martin@dgs.ca.gov); Carl Larson (carl.larson@cdcr.ca.gov); Cherry Short (cshort@usc.edu); Deborah Hysen (Dhysen2 @msn.com); Debra Thompsen (debrathompsen@dpa.ca.gov); Eric Csizmar; Frank Russell (frank.russell@cdcr.ca.gov); Jerue, Todd; Jim Varney (jim_varney@dot.ca.gov); Joan Petersilia (petersilia@stevet.net); Joe Lehman (jlehman@cabrini.us); Jose Millan (jmillan@cccco.edu); Julie Chapman (juliechapman@dpa.ca.gov); Kathy Jett (kathy.jett@cdcr.ca.gov); Kevin Carruth; Kevin Walker (Kevin.Walker4@cdcr.ca.gov); 'Matt Powers (mpowers@PRIDEIndustries.com)'; Nancy Messina (nmessina@ucla.edu); Paul Abril (Paul.Abril@cdcr.ca.gov); Robert Gore; Scott Harris (cscott.harrisjr@cdcr.ca.gov) |
| Subject: | Governor's CDCR Strike Teams |
| | |
| Importance: | High |

Good morning,

The Governor's Office today released the media announcement below. <u>You are welcome to listen in to the roll-out teleconference, as noted on the announcement, if you receive this e-mail in time.</u> Kathy, Joan and I will be on the call.

Congratulations. Now our work begins.
Governor Schwarzenegger and Chief of Staff Susan Kennedy both look to the Strike Team to bring about "radical change" at CDCR and advise us that "failure is not an option." Quotes from Susan.

A word of explanation: Please pardon the delay in my responses to you following our first energizing teleconference. So that you understand my operating context, the 2007-08 State Budget closes at 5p today, and there are HHS and CDCR pages to be approved. Also, I am preparing various documents for three CDCR federal court filings due Monday and participating in healthcare reform drafting sessions. Your patience is appreciated.

I will distribute to you by Tuesday the items listed below:
1. Roster
2. AB 900 analysis
3. Agenda for Wednesday meeting
4. Basic operating mission statement
5. Travel guidelines

A few technical items:
- Kathy Jett and Deborah Hysen today assume management leadership of the Rehabilitation and Facilities Strike Teams, respectively.
- Our space in the basement of the Governor's Office of Planning & Research will be ready on Monday. The office is a picturesque two-story structure at 10th and N streets, diagonally across from the Capitol.
- For our Wednesday meeting, we will have prepared basic assessments of CDCR rehab programs and improvement recommendations from the Expert Panel, and of the construction management capability and steps taken to implement AB900.
- We will have a few more experts joining us.
- For those private sector participants, Julie Chapman from the Department of Personnel Administration will be in touch to execute Special Consultant contracts for a 9-month term. Travel costs will be reimbursed by CDCR. In both cases, we have specific people assigned in the necessary state agencies to work with the Strike Force.

For your reference, my background includes service as CDCR public affairs director during the last prison-building era, Caltrans Deputy, Governor's Press Secretary (Deukmejian), VP Government Affairs at CH2M Hill (international construction engineers) and most recently co-founding a public affairs subsidiary of the California Hospital Assn. I've also been a writer for the Los Angeles Times in the distant past.

Thanks again. Glad to help and answer questions, beginning Monday.
;-)

Robert J. Gore
Deputy Cabinet Secretary

1

GOVPRIV001921

EXHIBIT I

| From: | Robert Gore |
|---|---|
| Sent: | Tuesday, July 10, 2007 5:59 PM |
| To: | Prunty, Kingston "Bud"; Hoffman, Thomas; Monday, John; 'Jett, Kathy'; 'Joan Petersilia'; Benjamin Rice |
| Cc: | Dan Dunmoyer; Andrea Hoch; Tilton, Jim |
| Subject: | Parole Toolkit |

Enhanced parole tools, as recommended by both the California Independent Review Panel and Expert Panel, are the most immediate way to reduce overcrowding and improve public safety.

GO will be convening a session to develop these tools in the very near future. **Please respond to this email with your three recommendations by 5p Wednesday** – to frontload the meeting, I will circulate a compilation to all participants.

A few thoughts (and responsible parties) in general priority:

- Refine deployment of existing revocation regulations; ie, PC3001 and SB1453. (Hoffman, Petersilia)
- Develop a risk/revocation matrix in two phases – one, asap; two, 12/31/07. (Petersilia, Hoffman)
- Create intermediate sanctions. (Petersilia, all)
- Activate 2,000 new community substance abuse treatment beds with new funding parameters and expedited contracts. (Jett)
- Expand BPH Deputy Commissioner-run regional "Drug Courts." Ensure deputy commissioner vacancies are filled asap; train deputies in diversion. (Jett, Monday, Hoffman, Prunty)
- Improve parole agent street practices; advance training for agents in the matrix, sanctions and working with offenders and their families and friends. (Hoffman, Jett)
- Place and empower substance abuse counselors in reception centers to make referrals of appropriate PVs to drug programs. (Prunty, Jett)
- Adopt revised and new regulations that support the above. (Hoffman, Monday, Jett, Petersilia)
- Feel free to add to this list.

Thanks!

Robert J. Gore
Deputy Cabinet Secretary
Office of Governor Arnold Schwarzenegger
State Capitol
Sacramento, CA 95814
916.445.6131

*CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.*

GOVPRIV001091

# EXHIBIT J

# AB 900
# The Public Safety & Offender Rehabilitation Services Act of 2007

## *Points & Authorities*
May 13, 2007

## FACILITIES

CPC 15819.40: Construction in 2 phases; infill, reentry, medical and jail beds
Revenue bonds (financial analysis to arrive under separate cover) totaling $7.1B + 25%
local match for jail beds.
Authorizes 16,000 infill beds (at existing prisons), 16,000 reentry beds (at least half
required in urban mini-prisons of 500 beds), 8,000 medical beds and a minimum of 4,000
jail beds. Also authorizes sufficient support and program space.
Prison beds in two phases. Phase 1: 12,000 infill, 6,000 reentry, 6,000 medical,.
Includes 7,484 beds at: Pleasant Valley, Pelican Bay, Lancaster, Calipatria,
Centinela, Salinas Valley, Kern Valley, Wasco, North Kern and Mule Creek.
After site assessments are complete, plans can begin on 4,516 infill beds.
Phase 2: 4,000 infill, 2,000 med and 10,000 reentry.  Phase 2 cannot begin until the panel
reports all conditions met, see below, 7021.

6271:  Reentry beds in urban locations
Authorizes 6,000 reentry beds in facilities of up to 500 beds to house inmates within one
year of release.  Built "to the extent possible" in urban locations. Only in cities or
counties that request.
6271.1:  10,000 reentry beds, same conditions.

15820.906a: Planning
CSA and State Fire Marshal approve jail plans and sites, which must be county owned or
have sufficient ownership interest to satisfy the PWB.
7000:
Shall prepare master plans including preliminary plan, facility operating costs estimates,
staffing, healthcare services and programming.

## REHABILITATION

2054.2: Inmate participation incentives
CDCR shall determine and implement a system of incentives to increase inmate
participation in, and completion of, academic and vocational education...including, but
not limited to, a high school diploma or GED, or a particular vocational job skill.

2062:  Plan for rehab staff hiring, contracts, CCC staff training
CDCR shall develop and implement a plan to obtain additional rehab and treatment
services for inmates and parolees, including: plans to fill vacant staff treatment and
custody positions, plans to obtain local government and vendor services in prison, plans
to enter into CCC agreements to accelerate training and education of treatment personnel.

GOVPRIV001409

Gate C

**2713.2:** <u>Gate money study</u>
CDCR shall examine and report to the Legislature on "gate money" hindering parolees, also should transportation costs be paid to reach parole location?  Submit findings to Legislature by Jan. 15, 2008

**2694:** <u>Add 4,000 inmates to substance abuse treatment</u>
ST  Expand prison substance abuse treatment programs to at least 4,000 additional inmates.

**3020:** <u>Inmate intake assessments required</u>
COMPAS  CDCR shall conduct assessments of all inmates including but not limited to history of substance abuse, medical and mental health, education, family background, criminal activity and social functioning.

**3073:** <u>Day treatment and crisis care services for parolees</u>
CDCR authorized to <u>obtain day treatment and to contract for crisis care services</u>, for
C  <u>parolees with mental health problems</u>.  VALDIVIA

**3105:** <u>Inmate Treatment and Prison-to-Employment Plan by April 1</u>
CDCR shall develop an <u>Inmate Treatment and Prison-to-Employment Plan</u>, which should
ST  recommend changes to the Governor and Legislature regarding inmate education, treatment and rehab programs to determine if the programs provide sufficient skills to inmates.  Report due on status of plan Oct. 1 and plan due April 1, 2008.

**6272:** <u>Reentry program tailored to PVs and inmates; assessment required; continuity of</u>
ST  <u>services between prison and parole</u>
Reentry program facilities shall program tailored services to PVs and inmates, including risk and need assessments, case management, wrap-around services that provide a continuity of services between prison and parole.

**6273:** <u>Reentry local partnerships required</u>
C  CDCR for each reentry facility shall development a partnership with local government and law enforcement and community service providers.

**MANAGEMENT**

**2061:** <u>Plan to address management deficiencies</u>
ST  CDCR shall develop and implement by Jan. 15, 2008, a plan to address management deficiencies. At a minimum: filling vacancies, improving accountability, standardizing processes and improving communication with headquarters and between HQ, institutions and parole and between institutions and parole.
Develop and implement a more comprehensive plan for management of inmate and parolee populations.

**OVERSIGHT**

GOVPRIV001410

6140:  C-ROB Established
Establishes California Rehab Oversight Board (C-ROB) at OIG and authorizes C-ROB
oversight of mental health, substance abuse, education and employment programs.
Requires periodic recommendations and reports to the Legislature.

7021:  3-Member Panel must find 13 conditions complete for Phase 2 construction
The State Auditor, OIG and a Judicial Council appointee must find the conditions below
have been met to proceed with Phase 2 construction:
1.  4,000 infill beds under construction
2.  first 4,000 infill beds provided rehab services
3.  2,000 reentry beds under construction
4.  at least 2,000 substance abuse treatment slots established, with community aftercare
5.  Prison drug treatment slots average at least 75% participation over previous 6 months
6.  RC assessment operational for 6 months
7.  Completed Inmate Treatment and Prison-to-Employment Plan
8.  At least 300 parolees served in day treatment or crisis centers
9.  C-ROB operational for one year
10.  75% CDCR management slots filled for 6 months
11.  Full-time inmate participation in academic and vocational programs increased 10%
from April 1
12.  Develop and implemented a plan to obtain additional rehab services, as outlined in
2062 and vacancy rate for rehab positions is no greater than vacancy rate for all state
positions
13.  Reviewed parole procedures

11191:  Out-of-state transfers
Authorizes out-of-state transfers; analysis under separate cover.

13602:  CO academy
Authorizes Southern California CO academy.

13602.1a:  $300M supplemental appropriations for infrastructure; $50M for rehab
Appropriates $300M for capital outlay to renovate or improve or expand infrastructure at
existing prisons, including land purchases, environmental work, A&E, design, plans and
construction.
b:  Appropriates $50M for rehab of inmates and parolees, for staffing, contracts and other
services for academic, vocational, substance abuse treatment and mental health.

## Governor's CDCR Strike Teams
**Strategic Mission Statement:**
*Bringing the 3 Rs to CDCR – Rehab, Rebuild, Reform*
The Strike Teams are proven experts in substance abuse treatment, education,
construction and corrections working together in an innovative, nimble joint venture with
CDCR to ensure the Department and its partners have the tools to implement AB 900 –
putting a fully functional "R" in CDC, building 53,000 beds and program space, and

GOVPRIV001411

reforming an accountable management with accountability, improved processes and communication.

**Operations:**
1. The Strike Teams are a "skunk works" – flexible, creative and designed to produce as fast as possible sustained tasks and programs for CDCR senior executives to implement to achieve AB 900. The Teams will remain a flat organization, with minimum hierarchy.
2. Some members will be full-time, others part-time and still others consulted only when appropriate. Members are designated by the Governor's Cabinet Office; the Strike Team Chairs may call on volunteer testimony.
3. Governance: While final authority rests with the Governor's Cabinet Office, the Strike Teams are directed by a Management Group, consisting of the Chairs (Jett & Hysen), Senior Consultant (Petersilia) and Manager (Gore). The Management Group may consult with the Legal Advisor (TBD), HR Advisor (Chapman) and Finance Advisors (Finn & Jerue). The Management Group and Advisors shall also make periodic management improvement recommendations, as required by AB 900. Each Strike Team, Rehabilitation and Facilities, is led by its respective Chair, Jett and Hysen.
4. Strike Team Manangement Group will provide weekly guidance briefings to CDCR Secretary, as well as monthly performance review briefings and documents and an exit report of accomplishments and short-term goals at 9 months.
5. Work space is provided in the Governor's Office of Planning & Research. This is the Operations Center, under the direction of the Manager. Staff shall include a CA
6. Travel shall be approved in advance by Strike Teams Manager (Gore) or Chairs (Jett & Hysen). It shall be ground or air, at the most inexpensive means. Meetings shall be scheduled to keep overnight stays to a minimum; in no case shall more than the state rate be paid for hotels and meals.
7. Start date: May 11, 2007, the Governor's announcement.

## Agenda

1. AB 900 clean-up bill – thoughts on possible follow-up legislation. Lead: *Eric Csizmar, Deputy Legislative Secretary*
2. Hair-on-fire tasks – immediate assignments, such as parole policy emergency regulations, recruiting staff, marketing RFPs, staffing Facilities, out-of-state transfers, reducing lockdowns and movements….. Lead: *Robert J. Gore, Deputy Cabinet Secretary & Strike Forces Manager*
3. Facilities – assessment of current CDCR capability. Lead: *Doug Button, Deputy Director, DGS*. Identify issues and actions. Set next meeting. Lead: *Deborah Hysen, Chair*
4. Rehabilitation – briefing on Expert Panel recommendations. Lead: *Joan Petersilia, Senior Consultant*. Identify issues and actions. Set next meeting. Lead: *Kathy Jett, Chair*

GOVPRIV001412

5. Staffing – Additional Strike Team members.  Initial needs for the Operations Center, ie CAO, writer, administrative law lawyer, CDCR liaisons et al.  Lead: *Chairs*

GOVPRIV001413