EXHIBIT U

| | |
|---|---|
| 1 | EDMUND G. BROWN JR.<br>Attorney General of the State of California |
| 2 | DAVID S. CHANEY<br>Chief Assistant Attorney General |
| 3 | ROCHELLE C. EAST - 183792<br>Acting Senior Assistant Attorney General |
| 4 | LISA A. TILLMAN - 126424<br>Deputy Attorney General |
| 5 | KYLE A. LEWIS - 201041<br>Deputy Attorney General |
| 6 | 455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 |
| 7 | Telephone: (415) 703-5677<br>Facsimile: (415) 703-5843 |
| 8 | rochelle.east@doj.ca.gov<br>kyle.lewis@doj.ca.gov |
| 9 | lisa.tillman@doj.ca.gov |

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

RECEIVED

JUL 2 5 2008

Rosen, Bien & Galva

10    Attorneys for Defendants

11              UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13            AND THE EASTERN DISTRICT OF CALIFORNIA

14    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

15      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　Defendants. | No.  2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF ROBERT GORE IN SUPPORT OF PRIVILEGE LOG OF JULY 24, 2008** |

- 1 -

1    I, Robert Gore, declare:

2        1.    I am the Senior Deputy Cabinet Secretary for the California Governor's

3    Office. From September 1, 2007, until January 15, 2008, I served as Acting Chief

4    Deputy Cabinet Secretary for the California Governor's Office.

5        2.    I am familiar with the following matters and if called as a witness, I could

6    and would testify competently to them.

7        3.    I have reviewed Plaintiffs' requests for production of documents

8    propounded upon Governor Arnold Schwarzenegger and other named Defendants in

9    this Three-Judge Court proceeding. I have also reviewed responses to that discovery.

10       4.    In my capacity as Senior Deputy Cabinet Secretary for the California

11   Governor's Office, I am familiar with the Office of the Governor's responsibilities within

12   State government. The Office of the Governor is the center of decision-making for fiscal

13   and policy issues involving individual state agencies, the overall State budge, and the

14   concerns of the Legislature, the courts, and the citizens of California.

15       5.    I am familiar with the issues presented to the Office of the Governor for

16   discussion and resolution. Because the Office of the Governor has actively addressed

17   prison litigation and reform issues, I am familiar with AB 900 and other prison reform

18   efforts launched by the Administration, as well as the prison issues presented in the

19   class action lawsuits pending against the California Department of Corrections and

20   Rehabilitation and other state entities, including this Three-Judge Court proceeding as

21   well as *Coleman v. Schwarzenegger*, USDC Eastern District, Case No. 90-0520; *Plata v.*

22   *Schwarzenegger*, USDC Northern District, Case No. 01-1351; *Armstrong v.*

23   *Schwarzenegger*, USDC Northern District, Case No. CV-94-2307; *Madrid v. Gomez*,

24   USDC Northern District, Case No. C 90-3094; and *Perez v. Tilton*, USDC Northern

25   District, Case No. C-05-5241.

26       6.    The Office of the Governor also participates in deliberations with executive-

27   level staff of involved state agencies, often its codefendants, concerning responses to

28   orders issued in the Three-Judge Court proceeding and in the class action suits on

- 2 -

1    behalf of prisoners, such as *Coleman, Plata, Perez, Madrid,* and *Armstrong.* The

2    involved state agencies include, among others, the Department of Finance, CDCR, and

3    the Department of Mental Health. I have participated in communications concerning the

4    interpretation of and proposed responses to multiple sets of court orders addressing

5    overarching correctional issues of staff retention and recruitment, information

6    technology, facilities construction and management, and fiscal resources. Because

7    often identical issues arise in different class action suits, these documents often reveal

8    discussions about an issue in more than one pending class action. These materials are

9    maintained as privileged and confidential by the Office of the Governor.

10        7.    I am also familiar with the Office of the Governor's work with the

11    Legislature on prison litigation and reform issues. Further, I receive and relay

12    communications regarding various legislative proposals to support prison construction,

13    staffing, population, and rehabilitation concerns. These materials are maintained as

14    privileged and confidential by the Office of the Governor.

15        8.    Moreover, the Office of the Governor determines the State's budget. With

16    the assistance of the Department of Finance, the Office of the Governor determines the

17    fiscal resources of individual state agencies and the funding needs stated in budget

18    change proposals. The Office of the Governor prepares and receives reports discussing

19    the ongoing costs of litigation involving State agencies and the present and potential

20    resource needs arising from those matters. The Office of the Governor receives emails,

21    fiscal summaries and reports from the Department of Finance concerning budget items.

22    The Office of the Governor also prepares draft letters responding to budget inquiries

23    from state agencies, Legislative members, and other interested persons. I have

24    routinely reviewed, if not prepared, proposed responses to budget requests and

25    inquiries, and circulated those proposed responses to other executive level staff within

26    the Office of the Governor and the Department of Finance for discussion. These

27    materials are maintained as privileged and confidential by the Office of the Governor.

28        9.    The Office of the Governor routinely receives the Department of Finance's

- 3 -

DECL. GORE SUPP. PRIV. LOG
CASE NOS. 01-1351; S:90-0520

1567383.1

1  analyses of constitutional and statutory spending mandates. These analyses may be

2  part of draft responses to budget change proposals, proposed responses to court orders,

3  and draft letters to state agencies and Legislative members and their staff. I have

4  routinely reviewed such analyses of constitutional and statutory mandates for fiscal

5  resources and circulated those analyses to other executive level staff within the Office of

6  the Governor for review and discussion. These materials are maintained as privileged

7  and confidential by the Office of the Governor.

8      10.    Those privileged and non-privileged documents in the possession of the

9  Office of the Governor that are responsive to Plaintiffs' requests for production of

10  documents propounded upon Governor Arnold Schwarzenegger and other named

11  Defendants in this Three-Judge Court proceeding have been located and continue to be

12  searched for by Defendants. Moreover, responsive documents have been provided to

13  Defendants' counsel, and additional responsive documents will be provided if any are

14  located.

15      11.    I understand Defendants' counsel has reviewed the privileged and non-

16  privileged documents provided by the Office of the Governor in response to these

17  requests for production. I have been provided access to copies of documents from the

18  Office of the Governor that have been marked as protected by the deliberative process

19  privilege in the privilege log of July 24, 2008.

20      12.    In reviewing documents marked as protected under the deliberative

21  process privilege, I found the following categories of information revealed in those

22  documents:

23      (a) Briefings: This category involves documents found to be responsive but

24  deemed privileged, and identified in the privilege log as documents produced by Susan

25  Kennedy, Andrea Hoch, Robert Gore, Chris Kahn, Chris Ryan, and/or Ben Rice. This

26  category consists of documents providing detailed analyses of issues and events

27  currently pending and anticipated at CDCR and other state agencies. This category

28  consists of documents discussing the significance, analysis and implementation of

- 4 -

1   policies and proposed policies, budget measures and proposed budget measures, and

2   other information used in pre-decisional analysis of matters affecting the operation and

3   funding of CDCR and other state agencies.  The documents include, among other

4   things, internal Governor's Briefings and internal briefings prepared in preparation for

5   legislative hearings.  I have personal knowledge of these documents.  These documents

6   are deliberative because they include frank discussion, recommendation on

7   deliberations, on a pre-decision basis, regarding governmental decisions and policies.

8          The persons who sent and/or received these documents were executive-level

9   staff of the Office of the Governor, members of the Governor's Cabinet, executive-level

10  staff at CDCR, executive-level staff at the Department of Mental Health, and/or

11  executive-level and senior management level staff of the Department of Finance

12  responsible for CDCR and DMH budget planning and fiscal oversight or coordination of

13  responses to the various class action court orders.

14         These documents often were in the form of email communications, draft talking

15  point memos, notes, and executive summaries and briefings.

16         These documents specifically pertain to the Office of the Governor's discussions

17  and deliberations concerning the legislative, policy and financial means of resolving the

18  issues in the *Coleman, Plata, Armstrong, Madrid*, and *Perez* class actions as well as the

19  Three-Judge Court proceeding.  These documents show the Office of the Governor's

20  internal deliberations of matters within the realm of government decision-making.

21         (b) Prison Reform Policy Issues: This category involves documents found to be

22  responsive but deemed privileged, and identified in the privilege log as documents

23  produced by Susan Kennedy, Andrea Hoch, Robert Gore, Chris Kahn, Chris Ryan,

24  and/or Ben Rice.  This category consists of documents discussing the Administration's

25  response to the CDCR population and other operational issues.  These documents

26  discuss, among other things, proposed reform measures, and legal opinions concerning

27  certain facets of proposed prison reform strategies.  In addition, the draft reports and

28  deliberations of the Governor's Facilities Strike Team and Rehabilitation Strike Team are

- 5 -

DECL. GORE SUPP. PRIV. LOG
CASE NOS. 01-1351; S:90-0520

1567383.1

1    discussed. I have personal knowledge of these documents. These documents are

2    deliberative because they include frank discussion, recommendation and deliberations,

3    on a pre-decisional basis, regarding governmental decisions and policies.

4         The persons who send and/or received these documents were executive-level

5    staff of the Office of the Governor, members of the Governors' Cabinet, executive-level

6    staff of CDCR, executive-level staff of the Department of Mental Health and/or executive-

7    level and senior management level staff of the Department of Finance responsible for

8    CDCR and DMH budget planning and fiscal oversight or coordination of responses to the

9    various class action orders.

10        These documents often were in the form of email communications, draft talking

11   point memos, notes, and executive summaries and briefings.

12        These documents specifically pertain to the Office of the Governor's discussions

13   and deliberations concerning the legislative, policy and financial means of resolving the

14   issues in the *Coleman. Plata, Armstrong, Madrid*, and *Perez* class actions as well as the

15   Three-Judge Court proceeding. These documents show the Office of the Governor's

16   internal deliberations of matters within the realm of government decision-making.

17        (c) Budget Issues: This category involves documents found to be responsive but

18   deemed privileged, and identified in the privilege log as documents produced by Susan

19   Kennedy, Andrea Hoch, Robert Gore, Chris Kahn, Chris Ryan, and/or Ben Rice. This

20   category consists of documents discussing individual budget requests and the overall

21   status of the State budget, including proposed mid-year cuts, appropriation language to

22   address court orders issued in the class action cases against CDCR, proposed language

23   regarding AB 900, draft agendas and discussion points with legislative leaders regarding

24   pending or proposed legislation impacting CDCR. The documents include, among other

25   things, non-final BCPs, non-final COBCPs, draft finance letters, and proposed budget

26   proposals by CDCR and other state agencies. I have personal knowledge of these

27   documents. These documents are deliberative because they include frank discussion,

28   recommendation and deliberations, on a pre-decisional basis, regarding governmental

- 6 -

1  decisions and policies.

2      The persons who sent and/or received these documents were executive-level

3  staff of the Office of the Governor, members of the Governor's Cabinet, executive-level

4  staff of CDCR, executive-level staff of the Department of Mental Health and/or executive-

5  level and senior management level staff of the Department of Finance responsible for

6  CDCR and DMH budget planning and fiscal oversight or coordination of responses to the

7  various class action court orders.

8      These documents often were in the form of email communications, draft talking

9  point memos, notes, and executive summaries and briefings.

10      These documents specifically pertain to the Office of the Governor's discussions

11  and deliberations concerning the legislative, policy and financial means of resolving the

12  issues in the *Coleman, Plata, Armstrong, Madrid,* and *Perez* class actions as well as the

13  Three-Judge Court proceeding. These documents show the Office of the Governor's

14  internal deliberations of matters within the realm of government decision-making.

15      I declare under penalty of perjury that the foregoing is true and correct. Executed

16  on July 24, 2008, in Sacramento, California.

17

18  Robert Gore

19

20

21

22

23

24

25

26

27

28

DECL. GORE SUPP. PRIV. LOG
CASE NOS. 01-1351; S:90-0520

1567383.1

# EXHIBIT V

EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
ROCHELLE C. EAST
Supervising Deputy Attorney General
LISA A. TILLMAN – 126424
Deputy Attorney General
CHARLES ANTONEN – 221207
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5443
Facsimile: (415) 703-5843
rochelle.east@doj.ca.gov
lisa.tillman@doj.ca.gov
charles.antonen@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
S. ANNE JOHNSON - 197415
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No.  2:90-CV-00520 LKK JFM P<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANT CATE'S RESPONSES TO PLAINTIFF COLEMAN'S FIRST SET OF INTERROGATORIES** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. C-01-1351 TEH<br><br>**THREE-JUDGE COURT** |

- 1 -

PROPOUNDING PARTY: PLAINTIFFS RALPH COLEMAN, et al.

RESPONDING PARTY:    DEFENDANT CATE

SET NO.:                    ONE

## DEFINITIONS

In construing these discovery responses, the following definitions shall apply:

1.    "PLAINTIFFS" shall mean class representatives Ralph Coleman, et al., the named plaintiffs in the action *Coleman v. Schwarzenegger,* Case No. 90-0520 LKK JFM (E.D. Cal.) (*Coleman*).

2.    "DEFENDANT" shall mean Matthew Cate, a named defendant in the case of *Coleman* v. *Schwarzenegger.*

3.    "DEFENDANTS" shall mean each of the named defendants in the case of *Coleman* v. *Schwarzenegger,* including Matthew Cate in his official capacity on behalf of the California Department of Corrections and Rehabilitation (CDCR), Stephen Mayberg in his official capacity on behalf of the Department of Mental Health (DMH), Michael Genest in his official capacity on behalf of the Department of Finance (DOF), and the Governor.

4.    "PROCEEDING" shall mean the three-judge panel proceeding convened under 28 U.S.C. Section 2284 in the cases of *Coleman* and *Plata.*

## OVERALL OBJECTIONS TO INTERROGATORIES

1.    DEFENDANT objects to Plaintiffs' definition of a California Department of Corrections and Rehabilitation (CDCR) prison and a "prison" to include those housing units within Department of Mental Health (DMH) facilities that house CDCR prisoners. That definition mischaracterizes the role of DMH as a provider of housing for incarcerated inmates.  DMH's true role is defined by California Penal Code section 2684

- 2 -

as a provider of inpatient mental health treatment to CDCR inmate-patients. Further, that definition erroneously assumes the Governor's Emergency Proclamation of October 4, 2006 addressed DMH as a provider of housing for incarcerated inmates. DEFENDANT will interpret the terms "CDCR prison" and "prison" for the purposes of this request to mean those prisons within the jurisdiction of the California Department of Corrections and Rehabilitation, pursuant to California Penal Code section 5054. Further, DEFENDANTS object to Plaintiffs' definition of a CDCR prison to include "any planned redesigns of, construction to, or renovations of such facilities, and any new such facilities contemplated by AB 900" as an inaccurate statement of the scope of AB 900, vague, and calling for speculation.

2.     DEFENDANT objects that the discovery seeks INFORMATION that is neither relevant to PLAINTIFFS' claims in this PROCEEDING nor reasonably calculated to lead to the discovery of admissible evidence. PLAINTIFFS have refused to identify what if any claims they will be asserting in the PROCEEDING. Consequently, DEFENDANT objects that the discovery requires DEFENDANT to speculate what claims may or may not be asserted by PLAINTIFFS.

3.     DEFENDANT objects that the requests seek information equally available to PLAINTIFFS, and that the requests are overbroad and unduly burdensome. In accordance with the *Coleman* and *Plata* remedial orders, PLAINTIFFS receive monthly document productions and other discovery from DEFENDANT and the Receiver appointed in *Plata*.

4.     DEFENDANT states that PLAINTIFFS are already in possession of DEFENDANTS' filed plans for the provision of mental health care beds, for the recruitment and retention of staffing for those mental health beds, and for the

- 3 -

1556987.2

1  implementation of appropriate mental health care in those beds. DEFENDANT asserts

2  the deliberative process privilege to all information sought or contained in drafts of those

3  *Coleman* plans, all drafts of any budget proposals to fund those plans, and inter- and

4  intra-Defendant emails concerning those plans.

5

6       5.       Given the shortened time for DEFENDANT'S responses to these requests,

7  DEFENDANT hereby reserves the right to supplement these responses at a later date,

8  including after the issuance and/or receipt of expert reports and witness declarations in

9  this matter.

10      6.       To the extent any request seeks information from documents prepared,

11  created, or generated by the Office of the Inspector General, DEFENDANT objects to

12  the discovery of such information on the basis of the official information privilege and on

13  the basis of the right to privacy in medical, mental health, and personnel matters.  Non-

14  privileged reports of the Office of the Inspector General are available on its public web

15  site.

16

17             **RESPONSES AND OBJECTIONS TO INTERROGATORIES**

18  **INTERROGATORY NO. 1:**

19      Do YOU contend that imposition of a PRISONER RELEASE ORDER by the Court

20  will have an adverse effect on public safety?

21  **RESPONSE TO INTERROGATORY NO. 1:**

22

23      Defendant objects to this interrogatory as vague, as imposing an improper

24  hypothetical, and as calling for speculation.

25      Without waiving these objections, Defendant states that the court has not issued a

26  prisoner release order, and this interrogatory improperly asks Defendant to speculate on

27  what "will" happen if such an unknown and unwritten order were to issue at some

28

- 4 -

unknown point in the future.  Although Defendant cannot speculate, it is Defendant's position that a court-mandated release of prisoners from state prisons, even if it included some unknown pre-release screening and post-release safeguards, could have a serious adverse effect on public safety.

**INTERROGATORY NO. 2:**

If YOUR response to interrogatory number one is affirmative, IDENTIFY what YOU contend to be the adverse effect(s) on public safety of any PRISONER RELEASE ORDER, and state all facts and IDENTIFY all DOCUMENTS and witnesses in support of YOUR contention.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this interrogatory as vague, as imposing an improper hypothetical, and as calling for speculation.  Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that the court has not issued a prisoner release order, and this interrogatory improperly asks Defendant to identify all facts and witnesses in support of speculation as to what "will" happen if such an unknown and unwritten order were to issue at some unknown point in the future. Although Defendant cannot speculate, it is Defendant's position that a court-mandated release of prisoners from state prisons, even if it included some unknown pre-release screening and post-release safeguards, could have a serious adverse effect on public safety, because there would still be a risk that released prisoners would engage in criminal activity once released.  Although Defendant cannot speculate, Defendant states

- 5 -

the witnesses in support of this statement are Kathy Jett and Joan Petersilia. The

documents in support of this statement are the Governor's Rehabilitation Strike Team

Report and the published writings of Joan Petersilia.

**INTERROGATORY NO. 3:**

Do YOU contend that a PRISONER RELEASE ORDER cannot be narrowly

drawn so as to have no adverse impact on public safety?

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this interrogatory as vague, as imposing an improper

hypothetical, and as calling for speculation. Defendant further objects to this

interrogatory to the extent it seeks information protected from disclosure by the attorney

client privilege, attorney work product privilege, deliberative process privilege, self-critical

analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that the court has not issued a

prisoner release order, and this interrogatory improperly asks Defendant to speculate as

to the impact of an unknown and unwritten order at some unknown point in the future.

Although Defendant cannot speculate, it is Defendant's position that a court-mandated

release of prisoners from state prisons, even if it included some unknown pre-release

screening and post-release safeguards, could have a serious adverse effect on public

safety, because there would still be a risk that released prisoners would engage in

criminal activity once released.

To the extent Plaintiffs' refer to a hypothetical prisoner release order crafted under

applicable law that would not require the release of prisoners currently incarcerated in a

California state prison, and would not require the diversion of any person committed to a

California state prison in the future, then such an order might or might not negatively

- 6 -

1  impact public safety.

2  **INTERROGATORY NO. 4:**

3      If YOUR response to interrogatory number three is affirmative, state all facts and

4  IDENTIFY all DOCUMENTS and witnesses in support of YOUR contention.

5

6  **RESPONSE TO INTERROGATORY NO. 4:**

7      Defendant objects to this interrogatory as vague, as imposing an improper

8  hypothetical, and as calling for speculation.  Defendant further objects to this

9  interrogatory to the extent it seeks information protected from disclosure by the attorney

10 client privilege, attorney work product privilege, deliberative process privilege, self-critical

11 analysis privilege, and official information privilege.

12     Without waiving these objections, Defendant states that the court has not issued a

13 prisoner release order, and this interrogatory improperly asks Defendant to speculate as

14

15 to the impact of an unknown and unwritten order at some unknown point in the future.

16 Although Defendant cannot speculate, it is Defendant's position that a court-mandated

17 release of prisoners from state prisons, even if it included some unknown pre-release

18 screening and post-release safeguards, could have a serious adverse effect on public

19

20 safety, because there would still be a risk that released prisoners would engage in

21 criminal activity once released.  Defendant states the witnesses in support of this

22 statement are Kathy Jett and Joan Petersilia.  The documents in support of this

23 statement are the Governor's Rehabilitation Strike Team Report and the published

24 writings of Joan Petersilia.

25 **INTERROGATORY NO. 5:**

26     Do YOU contend that implementation of programs that divert individuals who are

27 convicted of a probation-eligible offense and have less than 12 months to serve in state

28

- 7 -

1  prison at the time of sentencing and into local programs rather than into state prison

2  facilities will have an adverse effect on public safety?

3  **RESPONSE TO INTERROGATORY NO. 5:**

4       Defendant objects to this interrogatory as vague, as imposing an improper

5  hypothetical, and as calling for speculation.  Defendant further objects to this

6  interrogatory to the extent it seeks information protected from disclosure by the attorney

7  client privilege, attorney work product privilege, deliberative process privilege, self-critical

8  analysis privilege, and official information privilege.

9

10       Without waiving these objections, Defendant states that the court has not issued a

11  prisoner release order, and this interrogatory improperly asks Defendant to speculate as

12  to the impact of an unknown and unwritten order at some unknown point in the future.

13  Although Defendant cannot speculate, Defendant states that such diversion programs

14  may have an adverse effect on public safety because, even if accompanied by an

15

16  unknown set of assessments and criteria for determining an inmate's fitness for

17  diversion, there remains the possibility of a diverted convict engaging in criminal activity

18  once released.

19  **INTERROGATORY NO. 6:**

20

21       If YOUR response to interrogatory number 5 is affirmative, IDENTIFY what YOU

22  contend to be the adverse effect(s) on public safety of the implementation of such

23  programs, and state all facts and IDENTIFY all DOCUMENTS and witnesses in support

24  of YOUR contention.

25  **RESPONSE TO INTERROGATORY NO. 6:**

26       Defendant objects to this interrogatory as vague, as imposing an improper

27  hypothetical, and as calling for speculation.  Defendant further objects to this

28

- 8 -

1  interrogatory to the extent it seeks information protected from disclosure by the attorney

2  client privilege, attorney work product privilege, deliberative process privilege, self-critical

3  analysis privilege, and official information privilege.

4
        Without waiving these objections, Defendant states that the court has not issued a
5
   prisoner release order, and this interrogatory improperly asks Defendant to speculate as
6
7  to the impact of an unknown and unwritten order at some unknown point in the future.

8  Although Defendant cannot speculate, Defendant states that such diversion programs

9  may have an adverse effect on public safety because, even if accompanied by an

10 unknown set of assessments and criteria for determining an inmate's fitness for

11 diversion, there remains the possibility of a diverted convict engaging in criminal activity

12 once released.  The witnesses in support of this statement are Kathy Jett and Joan

13
   Petersilia.  The documents in support of this statement are the Governor's Rehabilitation
14
15 Strike Team Report and the published writings of Joan Petersilia.

16 **INTERROGATORY NO. 7:**

17      Do YOU contend that implementation of programs that divert individuals who are

18 on probation and commit a new probation-eligible offense that could subject them to

19 revocation into local programs rather than into state prison facilities will have an adverse

20 effect on public safety?
21
22 **RESPONSE TO INTERROGATORY NO. 7:**

23      Defendant objects to this interrogatory as vague, as imposing an improper

24 hypothetical, and as calling for speculation.  Defendant further objects to this

25 interrogatory to the extent it seeks information protected from disclosure by the attorney

26 client privilege, attorney work product privilege, deliberative process privilege, self-critical

27 analysis privilege, and official information privilege.

28
                                        - 9 -
   DEFENDANT CATE'S RESPONSES TO COLEMAN PLAINTIFFS'
   INTERROGATORIES, SET ONE                                              1556987.2

1    Without waiving these objections, Defendant states that the court has not issued a

2    prisoner release order, and this interrogatory improperly asks Defendant to speculate as

3    to the impact of an unknown and unwritten order at some unknown point in the future.

4    Although Defendant cannot speculate, Defendant states that such diversion programs

5    may have an adverse effect on public safety because, even if accompanied by an

6    unknown set of assessments and criteria for determining an inmate's fitness for

7    diversion, there remains the possibility of a diverted convict engaging in criminal activity

8    

9    once released.

10    **INTERROGATORY NO. 8:**

11    If YOUR response to interrogatory number seven is affirmative, IDENTIFY what

12    YOU contend to be the adverse effect(s) on public safety of the implementation of such

13    programs, and state all facts and IDENTIFY all DOCUMENTS and witnesses in support

14    of YOUR contention.

15    

16    **RESPONSE TO INTERROGATORY NO. 8:**

17    Defendant objects to this interrogatory as vague, as imposing an improper

18    hypothetical, and as calling for speculation.  Defendant further objects to this

19    interrogatory to the extent it seeks information protected from disclosure by the attorney

20    client privilege, attorney work product privilege, deliberative process privilege, self-critical

21    analysis privilege, and official information privilege.

22    

23    Without waiving these objections, Defendant states that the court has not issued a

24    prisoner release order, and this interrogatory improperly asks Defendant to speculate as

25    to the impact of an unknown and unwritten order at some unknown point in the future.

26    Although Defendant cannot speculate, Defendant states that such diversion programs

27    may have an adverse effect on public safety because, even if accompanied by an

28    

- 10 -

DEFENDANT CATE'S RESPONSES TO COLEMAN PLAINTIFFS'
INTERROGATORIES, SET ONE

1556987.2

unknown set of assessments and criteria for determining an inmate's fitness for diversion, there remains the possibility of a diverted convict engaging in criminal activity once released.  The witnesses in support of this statement are Kathy Jett and Joan Petersilia.  The documents in support of this statement are the Governor's Rehabilitation Strike Team Report and the published writings of Joan Petersilia.

**INTERROGATORY NO. 9:**

Do YOU contend that implementation of a program by which parole agents are directed to use a range of sanctions other than return to CDCR PRISON for parole violators based on the use of a validated risk assessment tool will have an adverse effect on public safety?

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant objects to this interrogatory as vague, as imposing an improper hypothetical, and as calling for speculation.  Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that the court has not issued a prisoner release order, and this interrogatory improperly asks Defendant to speculate as to the impact of an unknown and unwritten order at some unknown point in the future. Although Defendant cannot speculate, Defendant states that such parole sanction programs may have an adverse effect on public safety because there remains the possibility of a prisoner engaging in criminal activity under such a program.  Further, given the State's deficit, funding these resources is problematic.

//

DEFENDANT CATE'S RESPONSES TO COLEMAN PLAINTIFFS'
INTERROGATORIES, SET ONE

1556987.2

**INTERROGATORY NO. 10:**

If YOUR response to interrogatory number nine is affirmative, IDENTIFY what YOU contend to be the adverse effect(s) on public safety of the implementation of such alternative sanctions, and state all facts and IDENTIFY all DOCUMENTS and witnesses in support of YOUR contention.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to this interrogatory as vague, as imposing an improper hypothetical, and as calling for speculation. Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that the court has not issued a prisoner release order, and this interrogatory improperly asks Defendant to speculate as to the impact of an unknown and unwritten order at some unknown point in the future. Although Defendant cannot speculate, Defendant states that such parole sanction programs may have an adverse effect on public safety because there remains the possibility of a prisoner engaging in criminal activity under such a program. The witnesses in support of this statement are Kathy Jett and Joan Petersilia. The documents in support of this statement are the Governor's Rehabilitation Strike Team Report and the published writings of Joan Petersilia.

**INTERROGATORY NO. 11:**

Do YOU contend that amending the current credit earning system for inmates in CDCR PRISONS to the system outlined by the CDCR Expert Panel on Adult Offender Reentry and Receidivsm Reduction Programs in its June 29, 2007 "Report to the

- 12 -

California Legislature:  A Roadmap for Effective Offender Programming in California" at Appendix E, pages 92-94 would have an adverse effect on public safety?

**RESPONSE TO INTERROGATORY NO. 11:**

Defendant objects to this interrogatory as vague, as imposing an improper hypothetical, and as calling for speculation.  Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that the court has not issued a prisoner release order, and this interrogatory improperly asks Defendant to speculate as to the impact of an unknown and unwritten order at some unknown point in the future. Although Defendant cannot speculate, Defendant states that a credit earning program may have an adverse effect on public safety because there remains the possibility of a prisoner engaging in criminal activity under such a program.

**INTERROGATORY NO. 12:**

If YOUR response to interrogatory number eleven is affirmative, IDENTIFY what YOU contend to be the adverse effect(s) on public safety of such an amendment to the current credit earning system, and all state all facts and IDENTIFY all DOCUMENTS and witnesses in support of YOUR contention.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendant objects to this interrogatory as vague, as imposing an improper hypothetical, and as calling for speculation.  Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical

- 13 -

analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that the court has not issued a prisoner release order, and this interrogatory improperly asks Defendant to speculate as to the impact of an unknown and unwritten order at some unknown point in the future. Although Defendant cannot speculate, Defendant states that a credit earning program may have an adverse effect on public safety because there remains the possibility of a prisoner engaging in criminal activity under such a program. The witnesses in support of this statement are Kathy Jett and Joan Petersilia. The documents in support of this statement are the Governor's Rehabilitation Strike Team Report and the published writings of Joan Petersilia.

## INTERROGATORY NO. 13:

Do YOU contend that the proposal to release 22,159 inmates contained in the Governor's January 10, 2008-2009 budget proposal, if implemented, would have an adverse effect on public safety?

## RESPONSE TO INTERROGATORY NO. 13:

Defendant objects to this interrogatory as argumentative and misleading, as vague, as imposing an improper hypothetical, and as calling for speculation. Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that this was merely a proposal introduced in the Governor's January 2008 proposed budget and it was not included in the Governor's May Revise 2008 budget proposal. It was not adopted and it has not been implemented. Defendant cannot speculate on what "would" have

- 14 -

happened if the proposal were adopted by the Legislature and implemented.  Although

Defendant cannot speculate, it is Defendant's position that a mandated release of

prisoners from state prisons could have an adverse effect on public safety, because

there would still be a risk that released prisoners would engage in criminal activity once

released.

## INTERROGATORY NO. 14:

If YOUR response to interrogatory number thirteen is affirmative, IDENTIFY what

YOU contend to be the adverse effect(s) on public safety of the implementation of the

Governor's proposal, and state all facts and IDENTIFY all DOCUMENTS and witnesses

in support of YOUR contention.

## RESPONSE TO INTERROGATORY NO. 14:

Defendant objects to this interrogatory as argumentative and misleading, as

vague, as imposing an improper hypothetical, and as calling for speculation.  Defendant

further objects to this interrogatory to the extent it seeks information protected from

disclosure by the attorney client privilege, attorney work product privilege, deliberative

process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, Defendant states that this was merely a

proposal introduced in the Governor's January 2008 proposed budget and it was not

included in the Governor's May Revise 2008 budget proposal.  It was not adopted and it

has not been implemented.  Defendant cannot speculate on what "would" have

happened if the proposal were adopted by the Legislature and implemented.  Although

Defendant cannot speculate, it is Defendant's position that a mandated release of

prisoners from state prisons could have an adverse effect on public safety, because

there would still be a risk that released prisoners would engage in criminal activity once

- 15 -

released.  The witnesses in support of this statement are Kathy Jett and Joan Petersilia. The documents in support of this statement are the Governor's Rehabilitation Strike Team Report and the published writings of Joan Petersilia.

**INTERROGATORY NO. 15:**

If YOUR response to interrogatory number thirteen is **other** than affirmative, state all facts and IDENTIFY all DOCUMENTS and witnesses in support of YOUR contention.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant objects to this interrogatory as argumentative and misleading, as vague, as imposing an improper hypothetical, and as calling for speculation.  Defendant further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege.

Without waiving these objections, it is Defendant's position that a mandated release of prisoners from state prisons could have an adverse effect on public safety, because there would still be a risk that released prisoners would engage in criminal activity once released.  Accordingly, this interrogatory is inapplicable.

**INTERROGATORY NO. 16:**

IDENTIFY the number of prisoners housed in each CDCR PRISON on July 1, 2008, by housing unit, security level (I-IV), MHSDS membership (CCCMS, EOP, or "medical necessity"), and other administrative placement factors and categories (SNY, administrative segregation, OHU, CTC, MHCB, reception, Security Housing Unit (SHU), Psychiatric Services Unit (PSU), Department of Mental Health (DMH)).

**RESPONSE TO INTERROGATORY NO. 16:**

Defendant objects that this interrogatory seeks information protected from

- 16 -

1  disclosure by the attorney client privilege, attorney work product privilege, deliberative

2  process privilege, self-critical analysis privilege, and official information privilege.  Such

3  information is already provided to Plaintiffs through the Defendants' monthly statistical

4
   reports to the *Coleman* Special Master and through *Coleman* monitoring tours and exit
5
   teleconferences.  Further, this interrogatory is improperly duplicative of Plaintiffs'
6
7  previous discovery.  (See Defendant Tilton's Response to Plaintiff Coleman's

8  Interrogatories, Set One, Interrogatory Number 16.)

9       Without waiving said objections, Defendant states that such data will be provided.

10 **INTERROGATORY NO. 17:**

11      For each CDCR PRISON, IDENTIFY the number of prisoners housed in NON-
12
   TRADITIONAL HOUSING and the location of such housing as of July 1, 2008.
13
14 **RESPONSE TO INTERROGATORY NO. 17:**

15      Defendant objects that this interrogatory seeks information protected from

16 disclosure by the attorney client privilege, attorney work product privilege, deliberative

17 process privilege, self-critical analysis privilege, and official information privilege.  Such

18 information is already provided to Plaintiffs through the Defendants' monthly statistical
19
   reports to the *Coleman* Special Master and through *Coleman* monitoring tours and exit
20
   teleconferences.  Further, this interrogatory is improperly duplicative of Plaintiffs'
21
22 previous discovery.  (See Defendant Tilton's Response to Plaintiff Coleman's

23 Interrogatories, Set One, Interrogatory Number 17.)

24      Without waiving said objections, Defendant states that such data is provided as

25 an attachment to this response.

26 //

27 //

28

DEFENDANT CATE'S RESPONSES TO COLEMAN PLAINTIFFS'
INTERROGATORIES, SET ONE                                        1556987.2

**INTERROGATORY NO. 18:**

For each such NON-TRADITIONAL HOUSING location, IDENTIFY the number of prisoners in the MHSDS (EOP, CCCMS, or "medical necessity") and security level (I-IV), as well as other administrative placement factors (SNY administrative segregation, CTC, MHCB, OHU, Reception Center, Security Housing Unit (SHU), Psychiatric Services Unit (PSU), or Department of Mental Health program (DMH)), as of July 1, 2008.

**RESPONSE TO INTERROGATORY NO. 18:**

Defendant objects that this interrogatory seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative process privilege, self-critical analysis privilege, and official information privilege. Such information is already provided to Plaintiffs through the Defendants' monthly statistical reports to the *Coleman* Special Master and through *Coleman* monitoring tours and exit teleconferences. Further, this interrogatory is improperly duplicative of Plaintiffs' previous discovery. (See Defendant Tilton's Response to Plaintiff Coleman's Interrogatories, Set One, Interrogatory Number 18.)

Without waiving said objections, Defendant states such data is provided as an attachment to this response.

**INTERROGATORY NO. 19:**

IDENTIFY the number of CDCR prisoners housed outside of their classification level (classification overrides) as of July 1, 2008, including the reasons for any such overrides or out-of-level placements.

**RESPONSE TO INTERROGATORY NO. 19:**

Defendants object that this interrogatory seeks information protected from disclosure by the attorney client privilege, attorney work product privilege, deliberative

- 18 -

1   process privilege, self-critical analysis privilege, and official information privilege.

2       Without waiving said objections, Defendant states that such data is provided as

3   an attachment to this response.

4   **INTERROGATORY NO. 20:**

5

6       IDENTIFY the number of vacancies in custodial staff positions in the

7   DEPARTMENT including each CDCR PRISON as of July 1, 2008.

8   **RESPONSE TO INTERROGATORY NO. 20:**

9       Defendants object that this interrogatory seeks information protected from

10  disclosure by the attorney client privilege, attorney work product privilege, deliberative

11  process privilege, self-critical analysis privilege, and official information privilege.

12      Without waiving said objections, Defendant states that such data is provided as

13  an attachment to this response.  The existence of a vacant custodial position does not

14  necessarily equate to a posted position being unfilled.

15

16      Dated: July 25, 2008
                         Respectfully submitted,

17

18                      EDMUND G. BROWN JR.
                        Attorney General of the State of California

19                      DAVID S. CHANEY
                        Chief Assistant Attorney General

20                      FRANCES T. GRUNDER
                        Senior Assistant Attorney General

21                      ROCHELLE C. EAST
                        Acting Senior Assistant Attorney General

22

23

24

25                      LISA A. TILLMAN
                        Deputy Attorney General

26                      Attorneys for Defendants

27

28

DEFENDANT CATE'S RESPONSES TO COLEMAN PLAINTIFFS'
INTERROGATORIES, SET ONE                                          1556987.2

## VERIFICATION

I, MATTHEW CATE, declare:

I am the Secretary of the California Department of Corrections and Rehabilitation and in that official capacity am a party in the pending action entitled *Coleman v. Schwarzenegger*. I have read the foregoing Responses to the First Set of Interrogatories propounded by Plaintiff Ralph Coleman, and state upon my information and belief that they are true and correct.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this 25th day of July 2008.

_____
MATTHEW CATE

30506934.wpd
SF2007200670