# EXHIBIT P

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ROCHELLE C. EAST
   Supervising Deputy Attorney General
5  LISA A. TILLMAN – State Bar No. 126424
   Deputy Attorney General
6  SAMANTHA TAMA – State Bar No. 240280
   Deputy Attorney General
7  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
8  Telephone: (415) 703-5708
   Facsimile: (415) 703-5843
9  rochelle.east@doj.ca.gov
   lisa.tillman@doj.ca.gov
10 samantha.tama@doj.ca.gov

11 Attorneys for Defendants

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

**RECEIVED**

NOV 1 4 2007

Rosen, Bien & Galvan

12          UNITED STATES DISTRICT COURT

13      FOR THE EASTERN DISTRICT OF CALIFORNIA

14      AND THE NORTHERN DISTRICT OF CALIFORNIA

15  UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

16   PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

17 RALPH COLEMAN, et al.,

18          Plaintiffs,

19      v.

20 ARNOLD SCHWARZENEGGER, et al.,

21     Defendants.

22 MARCIANO PLATA, et al.,

23          Plaintiffs,

24      v.

25 ARNOLD SCHWARZENEGGER, et al.,

26     Defendants.

27

28

No.  2:90-cv-00520 LKK JFM P

**THREE-JUDGE COURT**

No. C01-1351 THE

**THREE-JUDGE COURT**

**DEFENDANT JAMES E. TILTON'S
RESPONSES TO PLAINTIFF MARCIANO
PLATA'S FIRST SET OF
INTERROGATORIES**

- 1 -

1376652 3

1  PROPOUNDING PARTY:    Plaintiff **MARCIANO PLATA**

2  RESPONDING PARTY:    Defendant **JAMES E. TILTON**

3  SET NUMBER:    **ONE**

4  **DEFINITIONS**

5      In construing these discovery responses, the following definitions shall apply:

6      1.    "PLAINTIFFS" shall mean class representatives Marciano Plata (sic), et. al., the

7  named PLAINTIFFS in the action *Plata v. Schwarzenegger*, Case No. C 01 1351 TEH (N.D.

8  Cal.) (*Plata*).

9      2.    "DEFENDANT" shall mean James Tilton, a named defendant in *Plata*.

10      3.    "DEFENDANTS" shall mean each of the named DEFENDANTS in *Plata*.

11      4.    "PROCEEDING" shall mean the three-judge panel proceeding convened under 28

12  U.S.C. Section 2284 in the cases of *Coleman v. Schwarzenegger*, Case No. 90-0520 LKK JFM

13  (E.D. Cal.) (*Coleman*) and *Plata*.

14  **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

15      1.    DEFENDANTS have not completed their investigation of the facts relating to this

16  case, have not completed their discovery in this action and have not completed their preparation

17  for trial. This case is in an early stage of discovery. As of the date of DEFENDANTS' response,

18  PLAINTIFFS have only identified a fraction of the documents that will be produced to

19  DEFENDANTS, and have not yet provided many, if any, substantive discovery responses.

20  Therefore, these responses, while based on diligent factual exploration, reflect only

21  DEFENDANTS' current state of knowledge, understanding, and belief with regard to the matters

22  about which inquiry has been made. DEFENDANTS reserve the right to supplement these

23  responses with subsequently obtained or discovered information. With regard to each

24  Interrogatory, DEFENDANTS reserve the right, notwithstanding these answers and responses, to

25  employ at trial or in any pretrial proceeding herein information subsequently obtained or

26  discovered, information the materiality of which is not presently ascertained, or information

27  DEFENDANTS do not regard as coming within the scope of the Interrogatories as

28  DEFENDANTS understand them.

- 2 -

2.       These responses are made solely for the purpose of this action.  Each answer is subject to all objections to competence, relevance, materiality, propriety, admissibility, privacy, privilege, and any and all other objections that would require exclusion of any statement contained herein if any such Interrogatories were asked of, or any statement contained herein were made by, a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

3.       Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby.  DEFENDANTS' answers or objections to any interrogatory are not an admission of any fact set forth or assumed by that interrogatory.  In addition, each of DEFENDANTS` answers to an Interrogatory or part of any Interrogatory is not a waiver of part or all of any objection he or it might make to that form of interrogatory, or an admission that such answer or objection constitutes admissible evidence.  DEFENDANTS assert these objections without waiving or intending to waive any objections as to competency, relevancy, materiality or privilege.

4.       DEFENDANTS object to each and every Interrogatory to the extent that PLAINTIFFS are requesting information that is privileged pursuant to the attorney-client privilege, the work-product doctrine, the deliberative process privilege, the right to privacy, or any other applicable privilege or doctrine.  DEFENDANTS object to the Instructions provided by PLAINTIFFS insofar as they specifically call for information protected by the attorney-client privilege and work-product doctrine.

5.       DEFENDANTS object to each and every Interrogatory to the extent that PLAINTIFFS are requesting information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

6.       DEFENDANTS object to the Interrogatories to the extent that they seek information available to PLAINTIFFS through public sources or records, and on the grounds that they subject DEFENDANTS to unreasonable and undue annoyance, oppression, burden and expense.  DEFENDANTS further object to the Interrogatories to the extent that such Interrogatories are unduly burdensome because much or all of the information requested in the

- 3 -

1   Interrogatories is in the possession of PLAINTIFFS, has been filed with the Court, or is otherwise

2   equally or more available to PLAINTIFFS than to DEFENDANTS.

3       7.    DEFENDANTS object that the discovery seeks information outside of

4   DEFENDANTS' control.  To the extent the discovery seeks information known only to the

5   Receiver appointed in *Plata*, PLAINTIFFS should direct said discovery to the Receiver and not

6   DEFENDANTS.

7       8.    DEFENDANTS object to the Interrogatories to the extent that they are vague and

8   ambiguous and do not include adequate definition, specificity, or limiting factors.

9       9.    DEFENDANTS object generally to each Interrogatory to the extent that it seeks

10   information prepared by expert consultants.  DEFENDANTS will disclose their experts and serve

11   the reports of experts on November 9, 2007, as required by the Three-Judge Court's October 10

12   2007 Order Bifurcating Proceedings and Setting Deadlines for Phase. I.  Many of PLAINTIFFS'

13   Interrogatories request information that will be provided in whole or in part by expert testimony.

14       10.    DEFENDANTS object generally to each Interrogatory that involves an opinion or

15   contention that relates to fact or the application of law to fact upon the ground that such

16   Interrogatories are premature and inappropriate until after discovery has been completed.

17   DEFENDANTS moreover object to PLAINTIFFS' contention Interrogatories because they are

18   unduly burdensome, oppressive, and especially inappropriate at this early state in the discovery

19   process.

20       11.    DEFENDANTS object to the Definitions provided by PLAINTIFFS, including the

21   term "PRISONER RELEASE ORDER."  This term is defined by reference to the statutory

22   definition.  The statute has rarely, if ever, been interpreted by the federal courts, and the question

23   of whether a particular order is a "Prisoner Release Order" depends on a range of complex factual

24   and legal elements, including deciding whether an order "has the purpose or effect" of "reducing

25   or limiting population" or "directing the release from or non-admission of prisoners."

26                     **RESPONSES TO INTERROGATORIES**

27       Subject to the foregoing qualifications and general responses and objections, Defendant

28   Tilton objects and responds to PLAINTIFFS' Interrogatories, Set One as follows:

- 4 -

**INTERROGATORY NO. 1:**

Do YOU contend that some cause other than overcrowding is the primary cause of YOUR ongoing violations of PLAINTIFFS' rights to constitutionally adequate medical care?

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the General Objections stated above, which are incorporated herein, DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to the terms "cause," "overcrowding," "primary cause," and "constitutionally adequate medical care" and calls for a legal conclusion. Further, this interrogatory is vague and ambiguous with respect to time. DEFENDANTS additionally object on the grounds that this interrogatory is argumentative and assumes that a single "primary cause" exists and that DEFENDANTS acts constitute multiple and ongoing violations of PLAINTIFFS' rights to constitutionally adequate care. In addition, DEFENDANTS object to this interrogatory to the extent it seeks information covered by the attorney-client privilege or work-product doctrine and seeks expert opinion. Subject to and without waiving the foregoing objections, DEFENDANTS respond as follows:

This interrogatory requires more than just a yes or no answer. DEFENDANTS contend that they are providing constitutionally adequate medical care to most inmates housed in adult institutions operated by CDDR, and that to the extent some inmates are not receiving a constitutional level of medical care, overcrowding is not the primary cause. DEFENDANTS contend that multiple causes other than overcrowding contribute to the unconstitutional delivery of medical care to some inmates in CDCR's adult institutions. But as discovery is ongoing, it is unclear at this stage of the litigation whether one of these other causes is "the primary cause" of unconstitutional medical care or whether multiple causes all contribute to the unconstitutional delivery of medical care to some inmates housed in adult institutions operated by the CDCR, resulting in no "primary cause."

**INTERROGATORY NO. 2:**

If YOUR response to interrogatory number one is affirmative, identify what YOU contend to be the primary cause(s) of the violations of PLAINTIFFS' right to constitutionally adequate

- 5 -

1 medical care, and state all facts and identify all documents and witnesses in support of YOUR

2 contention.

3 **RESPONSE TO INTERROGATORY NO. 2:**

4       In addition to the General Objections stated above, which are incorporated herein,

5 DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

6 the terms "primary cause(s)" and "constitutionally adequate medical care" and calls for a legal

7 conclusion. This interrogatory is also vague and ambiguous with respect to time. DEFENDANTS

8 additionally object on the grounds that this interrogatory is argumentative and assumes that a

9 single "primary cause" exists. In addition, DEFENDANTS object to this interrogatory to the

10 extent it seeks information covered by the attorney-client privilege or work-product doctrine and

11 seeks expert opinion. DEFENDANTS also object on the grounds that this interrogatory is

12 compound. Specifically, this interrogatory asks DEFENDANTS to: (1) identify the potential

13 primary cause, (2) state all facts to support DEFENDANTS' contention, (3) identify all

14 documents to support DEFENDANTS' contention, and (4) identify all witnesses in support of

15 DEFENDANTS' contention. Each of these topics should be propounded through a separate

16 interrogatory to be compliant with Rule 33 of the Federal Rules of Civil Procedure.

17 DEFENDANTS construe this interrogatory as four separate interrogatories which count toward

18 the 25 interrogatory limit. Subject to and without waiving the foregoing objections,

19 DEFENDANTS respond as follows:

20       DEFENDANTS contend that many causes other than overcrowding contribute to the

21 unconstitutional delivery of medical care to inmates in CDCR's adult institutions, to the extent it

22 exists. Many of these other causes, one or more of which may or may not be a principal or

23 primary cause, have been identified by PLAINTIFFS, PLAINTIFFS' counsel, the *Plata* Court's

24 Experts, and the *Plata* Receiver and his staff. These other causes include, but are not limited to,

25 the following:

26 1) Failure of past state executives and legislators to allocate sufficient resources to CDCR, and to

27 medical care specifically, so that CDCR could build a more satisfactory medical care system;

28

                   - 6 -

1   2)  Failure by past senior CDCR management to prioritize medical care within CDCR, and failure

2   to allocate the resources necessary to build a more satisfactory medical system;

3   3)  Interference, both direct and indirect, by non-medical CDCR administrators with medical

4   staff's attempts to provide direct patient care;

5   4)  Interference, both direct and indirect, and both intentional and unintentional, by CDCR

6   custodial staff (which consist of Plaintiff Intervenor CCPOA bargaining unit employees) with

7   medical staff's attempts to provide care, including: a) Correctional staff refusal to bring inmates

8   to medical staff for care; b) Correctional staff failing to make rounds and check for patients; c)

9   Unavailability of CDCR custody staff to bring patients to medical facilities when necessary;

10   5) Lack of a sufficient IT infrastructure to support crucial organizational activities, including: a)

11   Record keeping; b) Management of care; c) Monitoring of care;

12   6) Lack of qualified medical personnel, including: a) Medical administrators; b) Physicians; b)

13   Nurses; c) Other staff;

14   7) Inability to recruit and retain qualified personnel for the positions listed in No. 6, above, due

15   to: a) High salary levels for trained medical personnel in California; b) Insufficient funds to pay

16   these salaries and thus hire and retain competent medical personnel, who instead take better paid

17   jobs elsewhere; c) Inertia within state bureaucracy; d) Difficult working conditions for CDCR

18   medical personnel; e) Various provisions of state law, including portions of the Government

19   Code, the Public Contract Code, and the State Constitution, as well as other state regulations

20   relating to the civil service system that may impede the hiring process;

21   8) Insufficient and/or ineffective monitoring of line medical staff by administrators and more

22   senior staff;

23   9) Lack of effective monitoring systems to identify problems that impede proper patient care,

24   including lack of a thorough and effective death review system;

25   10) Lack of effective remedial systems to rectify insufficient care;

26   11) Negligence of CDCR medical staff in carrying out, or failing to carry out, treatment;

27   12) Failure of administrators to properly discipline staff who fail to provide proper care;

28   13) Lack of an effective peer review system for medical staff;

- 7 -

14) Insufficient intake systems for screening incoming inmates' treatment;

15) Triage systems which sometimes fail to properly identify urgent medical problems and prioritize treatments;

16) Delays in inmates' ability to see physicians quickly;

17) Poor record keeping systems, including: a) Backlog of filing; b) Misfiled or unfiled records; c) Use of temporary records in place of properly organized permanent ones; d) Lack of a proper system for record keeping and filing, which would be a problem even if filing were adequately performed;

18) Deficient physical facilities for inmate medical care, including: a) Insufficient sanitation; b) Lack of basic medical equipment (e.g., examination tables); c) Lack of adequate lighting; d) Lack of proper sanitation facilities (e.g., for hand-washing); e) Lack of proper space for private consultations with patients;

19) Deficient pharmacy operations, including: a) Lack of coordination and centralized administration among facilities; b) Lack of coordination between prison pharmacies when patients requiring prescriptions are transferred between prisons; c) Lack of a system to identify expiring prescriptions for critical medications, resulting in a failure to promptly fill such prescriptions;

20) Lack of a proper system for care of chronically ill patients;

21) Failure to promptly provide specialty services for patients who need them;

22) Lack of a proper system for carrying out needed laboratory and diagnostic tests for patients who need them;

23) Failure to follow up on specialist recommendations;

24) Institutional obstacles, including CDCR's responsibility, as a state employer, to: a) Honor civil service obligations; b) Collectively bargain with CDCR employees; c) Follow procurement, contracting, and budgeting rules which may impede the provision of care;

25) CDCR medical administrators have historically lacked sufficient authority within the system to make needed improvements to the system, causing it to fall into a state of disrepair; and

- 8 -

1    26) Because many of these problems have existed for so long, they are entrenched and difficult to

2    remedy quickly, as the Court has acknowledged. *See* Court's Findings of Fact and Conclusions of

3    Law Re Appointment of Receiver, Oct. 3, 2005, at 47.

4         Documents that support these causes include various Court Orders issued by the *Plata*

5    Court, pleadings filed by DEFENDANTS in *Plata* including but not limited to DEFENDANTS'

6    papers in opposition to PLAINTIFFS' motion to convene the three-judge court overseeing these

7    proceedings, pleadings filed by and post-tour letters prepared by PLAINTIFFS' counsel, reports

8    and testimony provided by the *Plata* Court Experts, and reports, plans, and communications

9    prepared by the *Plata* Receiver and his staff. *See e.g.* Receiver's Sixth Quarterly Report,

10   September 25, 2007; *Plata* Court's Order Re (1) Receiver's May 2007 Preliminary Plan of

11   Action, and Motion for Order Modifying Stipulated Injunction and Orders Entered Herein, and

12   (2) Plaintiff's Motion for Order Directing Receiver to Comply with April 4, 2003 Order, Etc.,

13   Sept. 15, 2007; *Plata* Court's Order Re: Receiver's Motion for Waiver of State Law Re: Receiver

14   Career Executive Assignments, July 3, 2007; PLAINTIFFS' Motion for an Order Directing the

15   Receiver to Comply with the April 4, 2003 Order Re Production and Access to Documents and/or

16   Modifying the Order Appointing Receiver, Memorandum of Points and Authorities in Support

17   Thereof, June 29, 2007; Joint Order by *Plata*, *Coleman* and *Perez* Courts Approving

18   Coordination Agreements Attached to Joint May 29, 2007 Order, June 28, 2007; Receiver's

19   Reply Memorandum in Support of Motion for Waiver of State Law Re Clinical Competency

20   Determinations, June 15, 2007; Receiver's Fifth Quarterly Report, June 20, 2007; Receiver's

21   Supplemental Report Re Overcrowding, June 11, 2007; *Plata* Court's Order Re: Receiver's

22   Master Application for Order Waiving State Contracting Statutes, Regulations and Procedures,

23   and Request for Approval of Substitute Procedures for Bidding and Award of Contracts, June 4,

24   2007; Joan Petersilia, *Understanding California Corrections*, May 29, 2007; Joint Order by

25   *Plata*, *Coleman* and *Perez* Courts Re Coordination Meetings Between *Plata* Receiver, *Coleman*

26   Special Master, and *Perez* Court Representative, May 29, 2007; Receiver's Report Re

27   Overcrowding, May 15, 2007; Receiver's Plan of Action, May 10, 2007; *Coleman* Special

28   Master's Draft Seventeenth Monitoring Report on the Defendant's Compliance with

- 9 -

1    Provisionally Approved Plans Policies or Protocols, May 4, 2007; Receiver's Motion for Waiver

2    of State Law Re Physician Clinical Competency Determinations, April 25, 2007; Receiver's

3    Amended Motion for Waiver of State Law Re Receiver Career Executive Assignments, April 18,

4    2007; Receiver's Motion for Waiver of State Law Re Receiver Career Executive Assignment

5    Positions, April 13, 2007; *Plata* Court's Order Re Receiver's Application for Order Nunc Pro

6    Tunc, March 30, 2007; Receiver's Fourth Bi-Monthly Report, March 20, 2007; Receiver's

7    Application for Order Nunc Pro Tunc Waiving State Contracting Statutes, Regulations and

8    Procedures with Respect to Contract Awarded to Maxtor International Pharmacy Services

9    Corporation and Approving Receiver's Substitute Procedure for Bidding and Award of Such

10   Contract, Feb. 28, 2007; Joint Order by *Plata, Coleman* and *Perez* Courts Re Monthly

11   Coordination Agreements Between Coordination Meetings Between *Plata* Receiver, *Coleman*

12   Special Master, and *Perez* Court Representatives, Jan. 26, 2007; Receiver's Third Bi-Monthly

13   Report, Dec. 5, 2006; PLAINTIFFS' Motion to Convene a Three Judge Panel to Limit Prison

14   Population, Nov. 13, 2006; Receiver's Second Bi-Monthly Report, Sept. 19, 2006; Receiver's

15   First Bi-Monthly Report, July 5, 2006; *Plata* Court's Order for Joint Hearing on June 8, 2006 to

16   Facilitate Coordination between *Plata* and *Coleman* Courts, April 14, 2006; *Plata* Court' Order

17   Re Interim Remedies Relating to Clinical Staffing, Dec. 1, 2005; Correctional Expert's Report Re

18   Clinical Staffing, Nov. 14, 2005; *Plata* Court's Findings of Fact and Conclusions of Law Re

19   Appointment of Receiver, Oct. 3, 2005; *Plata* Court's Order Appointing Court Expert, Oct. 3,

20   2005; Order to Show Cause Re Civil Contempt and Appointment of Interim Receiver, May 10,

21   2005; Stipulated Order Re Quality of Patient Care and Staffing, Sept. 17, 2004; Stipulation for

22   Injunctive Relief, Feb. 4, 2002; PLAINTIFFS' First Amended Complaint, August 20, 2001; and

23   PLAINTIFFS' counsels' post-tour letters in *Plata*.

24          As to witnesses that will testify as to these issues, DEFENDANTS have retained one or

25   more experts who will opine on the causes other than overcrowding for the delivery of

26   unconstitutional medical care. DEFENDANTS' expert witnesses will be disclosed to

27   PLAINTIFFS as required by this three judge proceeding. In addition, PLAINTIFFS,

28

- 10 -

1    PLAINTIFFS' counsel, the *Plata* experts, and the Receiver and his staff, as identified in the

2    documents listed above, are also witnesses who can support DEFENDANTS' contentions.

3    **INTERROGATORY NO. 3:**

4          IDENTIFY all obstacles and barriers preventing YOU from delivering constitutionally

5    adequate medical care.

6    **RESPONSE TO INTERROGATORY NO. 3:**

7          In addition to the General Objections stated above, which are incorporated herein,

8    DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

9    the terms "obstacles," "barriers," and "constitutionally adequate medical care" and calls for a

10   legal conclusion. Further, this interrogatory is vague and ambiguous with respect to time. In

11   addition, DEFENDANTS object to this interrogatory to the extent it seeks information covered by

12   the attorney-client privilege or work-product doctrine and seeks expert opinion. DEFENDANTS

13   additionally object to this interrogatory as it seeks information that is not reasonably available to

14   DEFENDANTS as this interrogatory should be propounded on the Receiver. Subject to and

15   without waiving the foregoing objections, DEFENDANTS respond as follows:

16          *See* DEFENDANTS' response to Interrogatory No. 2 which is incorporated herein. In

17   addition, DEFENDANTS contend that they are providing constitutionally adequate medical care

18   to most inmates housed in adult institutions operated by CDCR. Moreover, DEFENDANTS (and

19   the Receiver) have made great strides in overcoming obstacles and barriers, as evidenced by the

20   reports, motions, communications and plans prepared by the Receiver. These strides are also

21   evidenced by the passage and implementation of AB 900, the Public Safety and Offender

22   Rehabilitation Services Act of 2007, which became State law on May 3, 2007.

23   **INTERROGATORY NO. 4:**

24          By what date do YOU contend that the Receiver can provide constitutionally adequate

25   medical care to PLAINTIFFS without a reduction in the number of prisoners housed in CDCR

26   PRISONS?

27   **RESPONSE TO INTERROGATORY NO. 4:**

28          In addition to the General Objections stated above, which are incorporated herein,

- 11 -

1  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

2  the term "constitutionally adequate medical care" and calls for a legal conclusion.

3  DEFENDANTS additionally object that this interrogatory as it seeks information that is not

4  reasonably available to DEFENDANTS as this interrogatory should be propounded on the

5  Receiver. In addition, DEFENDANTS object to this interrogatory to the extent it seeks

6  information covered by the attorney-client privilege or work-product doctrine. DEFENDANT

7  additionally object to this interrogatory to the extent it seeks early disclosure of DEFENDANTS'

8  experts. DEFENDANTS will disclose experts as required by this three- judge court. Finally,

9  DEFENDANTS object that this interrogatory seeks information directed at phase two issues as

10  bifurcated by this Court. Subject to and without waiving the foregoing objections,

11  DEFENDANTS respond as follows:

12  *See* DEFENDANTS' response to Interrogatory No. 2 which is incorporated herein. In

13  addition, DEFENDANTS contend that they are providing constitutionally adequate medical care

14  to most inmates housed in adult institutions operated by CDCR. Moreover, DEFENDANTS

15  direct PLAINTIFFS to Receiver's Plan of Action that must be filed with the *Plata* Court on or

16  before November 15, 2007.

17  **INTERROGATORY NO. 5:**

18  IDENTIFY all steps necessary for YOU to take to provide constitutionally adequate

19  medical care to PLAINTIFFS without a reduction in number of prisoners housed in CDCR

20  PRISONS by the date YOU specified in YOUR answer to interrogatory number four.

21  **RESPONSE TO INTERROGATORY NO. 5:**

22  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous

23  as to the term "constitutionally adequate medical care" and calls for a legal conclusion.

24  DEFENDANTS additionally object that this interrogatory as it seeks information that is not

25  reasonably available to DEFENDANTS as this interrogatory should be propounded on the

26  Receiver. In addition, DEFENDANTS object to this interrogatory to the extent it seeks

27  information covered by the attorney-client privilege or work-product doctrine. DEFENDANTS

28  additionally object to this interrogatory to the extent it seeks early disclosure of DEFENDANTS'

- 12 -

1    experts. DEFENDANTS will disclose experts as required by this three- judge court. Finally,

2    DEFENDANTS object that this interrogatory seeks information directed at phase two issues as

3    bifurcated by this Court. Subject to and without waiving the foregoing objections,

4    DEFENDANTS respond as follows:

5         *See* DEFENDANTS' response to Interrogatory No. 2 which is incorporated herein. In

6    addition, DEFENDANTS contend that they are providing constitutionally adequate medical care

7    to most inmates housed in adult institutions operated by CDCR. Moreover, DEFENDANTS

8    direct PLAINTIFFS to Receiver's Plan of Action that must be filed with the *Plata* Court on or

9    before November 15, 2007.

10    **INTERROGATORY NO. 6:**

11         Do YOU contend that the Court could enter an order or orders that will provide effective

12    relief for the ongoing violations of PLAINTIFFS' rights to constitutionally adequate medical care

13    without the issuance of a PRISONER RELEASE ORDER?

14    **RESPONSE TO INTERROGATORY NO. 6:**

15         In addition to the General Objections stated above, which are incorporated herein,

16    DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

17    the terms "order," "orders," and "constitutionally adequate medical care" and calls for a legal

18    conclusion. DEFENDANTS additionally object that this request as it seeks information that is not

19    reasonably available to DEFENDANTS as this interrogatory should be propounded on the

20    Receiver. In addition, DEFENDANTS object to this interrogatory to the extent it seeks

21    information covered by the attorney-client privilege or work-product doctrine. DEFENDANTS

22    additionally object to this interrogatory to the extent it seeks early disclosure of DEFENDANTS'

23    experts. DEFENDANTS will disclose experts as required by this three-judge court. Finally,

24    DEFENDANTS object that this interrogatory seeks information directed at phase two issues as

25    bifurcated by this Court. Subject to and without waiving the foregoing objections,

26    DEFENDANTS respond as follows:

27         DEFENDANTS believe that the *Plata* Court has already issued less intrusive orders to a

28    PRISONER RELEASE ORDER, including the Orders appointing the Receiver and granting the

- 13 -

1    Receiver's requests for waivers of State law. DEFENDANTS believe that these orders will

2    eventually, with adequate time, allow the Receiver and CDCR to develop a constitutionally

3    adequate medical care delivery system.

4    **INTERROGATORY NO. 7:**

5        If YOUR response to interrogatory number six is affirmative, please IDENTIFY each

6    such order/remedy that the Court should issue in lieu of a PRISONER RELEASE ORDER.

7    **RESPONSE TO INTERROGATORY NO. 7:**

8        In addition to the General Objections stated above, which are incorporated herein,

9    DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

10   the terms "order" and "remedy." DEFENDANTS additionally object that this interrogatory as it

11   seeks information that is not reasonably available to DEFENDANTS as this interrogatory should

12   be propounded on the Receiver. In addition, DEFENDANTS object to this interrogatory to the

13   extent it seeks information covered by the attorney-client privilege or work-product doctrine.

14   DEFENDANTS additionally object to this interrogatory to the extent it seeks early disclosure of

15   DEFENDANTS' experts. DEFENDANTS will disclose experts as required by this three-judge

16   court. Finally, DEFENDANTS object that this interrogatory seeks information directed at phase

17   two issues as bifurcated by this Court. Subject to and without waiving the foregoing objections,

18   DEFENDANTS respond as follows:

19       As set forth in response to interrogatory number 6, DEFENDANTS believe that the *Plata*

20   Court has already issued less intrusive orders to a PRISONER RELEASE ORDER, including the

21   Orders appointing the Receiver and granting the Receiver's requests for waivers of State law.

22   DEFENDANTS believe that these orders will eventually, with adequate time, allow the Receiver

23   and CDCR to developed a constitutionally adequate medical care delivery system. The

24   PLAINTIFFS should propound this interrogatory on the Receiver to determine whether the

25   Receiver believes additional waivers of State law will be necessary to achieve this goal.

26   / / /

27   / / /

28   / / /

- 14 -

**INTERROGATORY NO. 8:**

For each order/remedy IDENTIFIED in YOUR response to interrogatory number seven, IDENTIFY any known obstacles and barriers in YOUR compliance with the order by the date IDENTIFIED in response to interrogatory number eight.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the General Objections stated above. which are incorporated herein, DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to the terms "obstacles," "barriers," and "compliance." DEFENDANTS additionally object that this request as it seeks information that is not reasonably available to DEFENDANTS as this interrogatory should be propounded on the Receiver. In addition, DEFENDANTS object to this interrogatory to the extent it seeks information covered by the attorney-client privilege or work-product doctrine. DEFENDANTS additionally object to this interrogatory to the extent it seeks early disclosure of DEFENDANTS' experts. DEFENDANTS will disclose experts as required by this three-judge court. Finally, DEFENDANTS object that this interrogatory seeks information directed at phase two issues as bifurcated by this Court. Subject to and without waiving the foregoing objections, DEFENDANTS respond as follows:

As set forth in response to interrogatory numbers 6 and 7. DEFENDANTS believe that the *Plata* Court has already issued less intrusive orders to a PRISONER RELEASE ORDER, including the Orders appointing the Receiver and granting the Receiver's requests for waivers of State law. DEFENDANTS believe that these orders will eventually, with adequate time, allow the Receiver and CDCR to develop a constitutionally adequate medical care delivery system. PLAINTIFFS should propound this interrogatory on the Receiver to determine whether the Receiver believes additional waivers of State law will be necessary to overcome any barriers.

**INTERROGATORY NO. 9:**

For each order IDENTIFIED in YOUR response to interrogatory number seven, IDENTIFY any known obstacles and barriers to YOUR compliance with the order by the date IDENTIFIED in response to interrogatory number eight.

/ / /

- 15 -

1  **RESPONSE TO INTERROGATORY NO. 9:**

2       In addition to the General Objections stated above, which are incorporated herein,

3  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

4  the terms "obstacles" and "barriers." DEFENDANTS additionally object that this request as it

5  seeks information that is not reasonably available to DEFENDANTS as this interrogatory should

6  be propounded on the Receiver. In addition, DEFENDANTS object to this interrogatory to the

7  extent it seeks information covered by the attorney-client privilege or work-product doctrine.

8  DEFENDANTS additionally object to this interrogatory to the extent it seeks early disclosure of

9  DEFENDANTS' experts. DEFENDANTS will disclose experts as required by this three-judge

10  court. Finally, DEFENDANTS object that this interrogatory seeks information directed at phase

11  two issues as bifurcated by this Court. Subject to and without waiving the foregoing objections,

12  DEFENDANTS respond as follows:

13       As set forth in response to interrogatory numbers 6, 7 and 8, DEFENDANTS believe that

14  the *Plata* Court has already issued less intrusive orders to a PRISONER RELEASE ORDER,

15  including the Orders appointing the Receiver and granting the Receiver's requests for waivers of

16  State law. DEFENDANTS believe that these orders will eventually, with adequate time, allow

17  the Receiver and CDCR to develop a constitutionally adequate medical care delivery system. The

18  PLAINTIFFS should propound this interrogatory on the Receiver to determine whether the

19  Receiver believes additional waivers of State law will be necessary to overcome any barriers.

20  **INTERROGATORY NO. 10:**

21       IDENTIFY each action, program, policy or procedure that YOU have adopted since

22  October 2006 that YOU contend will limit or reduce the number of *PLATA* CLASS MEMBERS

23  housed in CDCR PRISONS.

24  **RESPONSE TO INTERROGATORY NO. 10:**

25       In addition to the General Objections stated above, which are incorporated herein,

26  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

27  the terms "action," "program," "policy," "procedure," "limit," and "reduce." In addition,

28  DEFENDANTS object to this interrogatory to the extent it seeks information covered by the

- 16 -

1    attorney-client privilege or work-product doctrine.  Finally, DEFENDANTS object that this

2    interrogatory seeks information directed at phase two issues as bifurcated by this Court.  Subject

3    to and without waiving the foregoing objections, DEFENDANTS respond as follows:

4    The State is working on many fronts to reduce overcrowding in California's Prisons.  The

5    Governor and the Legislature recently approved a historic, bipartisan plan to reduce prison

6    overcrowding, increase rehabilitation programs, and provide more beds for all inmates, including

7    those requiring medical care.  Assembly Bill 900, signed in May 2007, creates a comprehensive

8    plan to immediately relieve overcrowding by providing for additional out-of-state inmate

9    transfers (CDCR anticipates transferring 8,000 inmates by March 2009, to date approximately

10   1,722 inmates have been transferred), as well as the construction of 40,000 prison beds including

11   much-needed medical beds, in addition to approximately 13,000 new jail beds.  AB 900 also

12   provides for new rehabilitation programs and re-entry facilities to ease parolees' transition back

13   into California communities, thereby reducing recidivism, relieving prison overcrowding, and

14   ensuring public safety.  AB 900's comprehensive plan and CDCR's parole reforms effectively

15   address prison overcrowding without encouraging or causing the early release of dangerous

16   criminals.

17        The Governor also established two strike teams -- one for construction and another for

18   rehabilitation -- to expedite the implementation of AB 900's mandates, including construction and

19   the improvement of programs for rehabilitation, substance abuse, education, and job training.

20   These strike teams will report to the Governor's Cabinet to ensure that AB 900's reforms are

21   successful and swift.  CDCR is also immediately implementing administrative parole changes that

22   reward successful rehabilitation, which will further reduce overcrowding.  In short, the Governor

23   is committed not only to prison reform, but to the long-term management efforts that are needed

24   to ensure that the reforms are successful.

25        Phase I of AB 900 provides for 7,484 in-fill beds at existing enumerated prisons, plus an

26   additional 4,516 in-fill beds once site assessments have been done for other facilities, for a total

27   of 12,000 Phase I in-fill beds.  AB 900 specifies that the purpose of the infill beds is to replace the

28   non-traditional beds currently in use.  Phase I also provides for 6,000 re-entry beds and 6,000

- 17 -

1   medical, dental, and mental health beds. The construction of all Phase I beds will total 24,000

2   beds. Phase II of AB 900 provides for an additional 4,000 in-fill beds; 2,000 medical, dental, and

3   mental health beds; and 10,000 re-entry beds. The construction of all Phase II beds will total

4   6,000 beds. However, AB 900 specifies that funds for Phase II construction shall not be released

5   unless specific enumerated progress in construction, rehabilitation programs, management

6   planning, and parole review has been confirmed by a panel consisting of the State Auditor, the

7   Inspector General and an appointee of the Judicial Council of California. AB 900 also provides

8   for construction of approximately 13,000 county jail beds.

9       AB 900 ties prison bed construction to rehabilitation, requiring that each new bed have

10   appropriate programming for inmates, including education, vocational programs, substance abuse

11   treatment programs, employment programs, and pre-release planning. These programs will

12   address overcrowding by reducing the recidivism rate.

13       AB 900 also requires CDCR to develop and implement, by January 15, 2008, a plan to

14   address management deficiencies within the department. Among other things, the plan must

15   address (1) filling vacancies in management positions, (2) improving accountability, (3)

16   standardizing processes to improve management, (4) improving communications within the

17   Department, and (5) developing and implementing more comprehensive plans for management of

18   the prison and parole populations. AB 900 authorizes CDCR to contract with outside

19   management experts to assist in identifying and addressing deficiencies.

20       The management assessment and plan required by AB 900 is not Defendants' only tool

21   for addressing management and administrative concerns. The Governor has already established

22   two expert strike teams – one for facilities and one for rehabilitation –composed of numerous

23   experts from universities, community organizations, and state government to ensure that

24   California's prisons are managed effectively and that bed construction and rehabilitation

25   programs are implemented expeditiously.

26       The Facilities Construction Strike Team will restore CDCR's major project management

27   capability and will work to expedite in-fill, re-entry, medical/dental/mental-health, and jail beds

28   authorized by AB 900. The Facilities Construction Strike Team will (1) consider all available

- 18 -

1  options for housing inmates and improving inmate housing, (2) evaluate alternative construction

2  methods, (3) work to overcome impediments to expedited construction, and (4) work with local

3  communities impacted by prison facilities.

4      At the same time, the Rehabilitation Strike Team will provide expertise on creating and

5  expediting the implementation of rehabilitation programs. Such programs are integral to

6  increasing successful community re-entry and reducing recidivism. The Rehabilitation Strike

7  Team will be responsible for (1) assessing existing CDCR rehabilitation programs and space, (2)

8  designing an integrated rehabilitation services delivery plan for inmates and parolees which

9  includes substance abuse treatment, education, job training, counseling, and life skills, (3)

10  developing a plan for inmate job training, (4) quickly implementing inmate intake and prerelease

11  needs assessment tools, (5) developing incentives for program participation; (6) developing a plan

12  to immediately reduce the number of lockdown days so that inmates can participate in

13  rehabilitative programming; and (7) developing the $50 million in rehabilitation and treatment

14  funds that are authorized by AB 900. The Rehabilitation Strike Team expects to reduce

15  recidivism by 10%, which would eliminate 8,100 prison returns in a single year.

16      The construction of 16,000 in-fill beds will provide additional capacity at existing prisons

17  in a way that ensures proper facilities, support, and services. Creating in-fill beds will not require

18  the construction of new prisons; rather, there will be construction of new facilities at existing

19  prisons. In-fill beds, like the out-of-state transfer of inmates, will eliminate non-traditional beds

20  and provide better care and services for inmates.

21      The Facilities Construction Strike Team will expedite construction. As required by AB

22  900, these beds will be constructed to fully integrate rehabilitative programs into the new

23  facilities. The Facilities Construction Strike Team will work to finish construction as quickly as

24  possible, but at a minimum it is expected that construction of the 12,000 Phase 1 in-fill beds will

25  be completed in 2009. As new in-fill beds are constructed, AB 900 mandates the reduction in a

26  proportionate number of non-traditional beds until non-traditional bed use is entirely eliminated.

27      AB 900 also provides for the creation of 16,000 re-entry beds. The focused of the reentry

28  beds is to provide rehabilitation services and prepare inmates for re-entry into society. These

- 19 -

1   beds will be located in small, secured facilities (500 inmates maximum per facility) operated by

2   CDCR. The facilities will be located close to established communities to better serve their

3   rehabilitative and re-entry mission. The Facilities Construction Strike Team will expedite the

4   construction of 6,000 Phase I re-entry beds.

5       AB 900 states that a total of 8,000 medical/mental health beds will be created. The

6   Facilities Construction Strike Team will expedite construction of these beds to bring them on line

7   as soon as possible. Defendants are coordinating construction of medical and mental health beds

8   coordination with the Receiver.

9       Parole reform strategies will also play a large role in the reduction of prison

10  overcrowding. In tandem with the implementation of AB 900, CDCR has launched a set of parole

11  changes to reward successful rehabilitation. CDCR is actively pursuing strategies to release

12  parolees from their statutory parole periods as soon as is appropriate and anticipates discharging

13  between 2,000 and 4,000 additional parolees from parole in the next twelve months.

14  By discharging more parolees from supervision, CDCR expects to experience a reduction in the

15  number of parolees returned to custody for various parole violations. Further, CDCR

16  implemented a risk and needs assessment tool in each of the 33 institutions: the Correctional

17  Offender Management Profiling for Alternative Sanctions (COMPAS). The predictive validity of

18  COMPAS in terms of its ability to effectively identify key risk and needs factors in the parole

19  population is currently being studied. Additionally, CDCR has undertaken extensive research

20  into the use and effectiveness of a parole-violation decision-making matrix. This tool has been

21  shown to improve organizational decision-making consistency, as well as help to establish a

22  culture of determining sanctions based on policy driven rationale and then tailoring the sanction

23  to the specific risk and needs of the parolee. When supported by evidence-based programs, such

24  as COMPAS, this type of matrix has been proven to play a meaningful role in the overall

25  reduction of recidivism rates among the parolee population. CDCR anticipates that a decision-

26  making matrix will be ready for a pilot deployment by the end of 2007. Once implemented, these

27  tools will result in even more discharges from parole.

28  ///

- 20 -

1376652.3

1  **INTERROGATORY NO. 11:**

2      For each such action, program, policy or procedure IDENTIFIED in YOUR response to

3  interrogatory number thirteen, state the time frame for implementation, the size of the anticipated

4  population reduction, and the date by which the population reduction will be effected.

5  **RESPONSE TO INTERROGATORY NO. 11:**

6      In addition to the General Objections stated above, which are incorporated herein,

7  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

8  the terms "program," "policy," "procedure," and "interrogatory number 13." In addition,

9  DEFENDANTS object to this interrogatory to the extent it seeks information covered by the

10  attorney-client privilege or work-product doctrine. DEFENDANTS additionally object to this

11  interrogatory to the extent it seeks early disclosure of DEFENDANTS' experts. DEFENDANTS

12  will disclose experts as required by this three-judge court. Finally, DEFENDANTS object that

13  this interrogatory seeks information directed at phase two issues as bifurcated by this Court.

14  Subject to and without waiving the foregoing objections, DEFENDANTS respond as follows:

15      *See* DEFENDANTS' response to interrogatory number 10 which is incorporated herein.

16  **INTERROGATORY NO. 12:**

17      IDENTIFY each and every population model relied upon for YOUR answer to

18  interrogatory fourteen and its source, including but not limited to author, entity, and publication.

19  **RESPONSE TO INTERROGATORY NO. 12:**

20      In addition to the General Objections stated above, which are incorporated herein,

21  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

22  the terms "population reduction model" and "interrogatory fourteen." In addition,

23  DEFENDANTS object to this interrogatory to the extent it seeks information covered by the

24  attorney-client privilege or work-product doctrine. DEFENDANTS additionally object to this

25  interrogatory to the extent it seeks early disclosure of DEFENDANTS' experts. DEFENDANTS

26  will disclose experts as required by this three-judge court. Finally, DEFENDANTS object that

27  this interrogatory seeks information directed at phase two issues as bifurcated by this Court.

28  */ / /*

1  **INTERROGATORY NO. 13:**

2      IDENTIFY any and all lockdowns or partial lockdowns, including dates and duration, that

3  affected housing units housing PLATA CLASS MEMBERS at CDCR PRISONS since March 3,

4  2006.

5  **RESPONSE TO INTERROGATORY NO. 13:**

6      In addition to the General Objections stated above, which are incorporated herein,

7  DEFENDANTS object to this interrogatory on the grounds that it is vague and ambiguous as to

8  the terms "lockdowns" and "partial lockdowns'  In addition, DEFENDANTS object to this

9  interrogatory because it is compound and calls for private and/or confidential information.

10  Subject to and without waiving the foregoing objections, DEFENDANTS respond as follows:

11      *See* the business records attached as Exhibit A which identify the lockdowns and partial

12  lockdowns since March 3, 2006.  Exhibit A also contains CDCR policies and procedures that

13  provide that inmates must be taken to medical appointments, and must receive appropriate

14  medical care, when a facility is in a lockdown or partial lockdown.  All of the business records

15  produced in Exhibit A are produced pursuant to the *Plata* Protective Order.

16

17  DATED: November 9, 2007                    HANSON BRIDGETT MARCUS
                                                    VLAHOS & RUDY, LLP
18

19
                                        By:  _____
20
                                              PAUL B. MELLO
21                                            Attorneys for DEFENDANTS

22  DATED:  November 9, 2007                  EDMUND G. BROWN JR.
                                              Attorney General of the State of California
23

24

25                                      By:  _____/s/_____
                                              ROCHELLE C. EAST
26                                            Supervising Deputy Attorney General
                                              Attorneys for DEFENDANTS
27

28
                                    - 22 -

# EXHIBIT Q

1 EDMUND G. BROWN JR.
  Attorney General of the State of California
2 DAVID S. CHANEY
  Chief Assistant Attorney General
3 FRANCES T. GRUNDER
  Senior Assistant Attorney General
4 ROCHELLE C. EAST
  Supervising Deputy Attorney General
5 LISA A. TILLMAN, State Bar No. 126424
  Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-7872
8    Fax: (916) 324-5205
     Email: Lisa.Tillman@doj.ca.gov
9

HANSON BRIDGETT MARCUS
VLAHOS & RUDY, LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179775
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541- 9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com

RECEIVED

NOV 1 3 2007

Rosen, Bien & Galvan

10 Attorneys for Defendants

11

12

13          IN THE UNITED STATES DISTRICT COURT
14       FOR THE EASTERN DISTRICT OF CALIFORNIA
         AND THE NORTHERN DISTRICT OF CALIFORNIA
15  UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
        PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

16

| | |
|---|---|
| 17 **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM P |
| 18                          Plaintiffs, | |
| 19          **v.** | **THREE-JUDGE COURT** |
| 20 | |
| 21 **ARNOLD SCHWARZENEGGER, et al.,** | |
| 22                          Defendants. | |
| 23 **MARCIANO PLATA,** | No. C01-1351 |
| 24                          Plaintiffs, | **THREE JUDGE COURT** |
| 25          **v.** | |
| 26 **ARNOLD SCHWARZENEGGER,** | **DEFENDANT GOVERNOR SCHWARZENEGGER'S RESPONSES TO PLAINTIFF COLEMAN'S FIRST SET OF INTERROGATORIES** |
| 27                          Defendants. | |

28  //

Governor's Responses to Coleman Interrogatories, Set One

1

1 | Propounding Party:  Ralph Coleman

2 | Responding Party:  Defendant Governor Arnold Schwarzenegger

3 | Set No.:          One

**DEFINITIONS**

In construing these discovery responses, the following definitions shall apply:

1.    "PLAINTIFFS" shall mean class representatives Ralph Coleman, et al., the named plaintiffs in the action *Coleman v. Schwarzenegger*, Case No. 90-0520 LKK JFM (E.D. Cal.) (*Coleman*).

2.    "DEFENDANT" shall mean Governor Arnold Schwarzenegger, a named defendant in the case of *Coleman* v. *Schwarzenegger*.

3.    "DEFENDANTS" shall mean each of the named defendants in the case of *Coleman* v. *Schwarzenegger*, including James Tilton in his official capacity on behalf of the California Department of Corrections and Rehabilitation (CDCR), Stephen Mayberg in his official capacity on behalf of the Department of Mental Health (DMH), Michael Genest in his official capacity on behalf of the Department of Finance (DOF), and the Governor.

4.    "PROCEEDING" shall mean the three-judge panel proceeding convened under 28 U.S.C. Section 2284 in the cases of *Coleman* and *Plata*.

**OVERALL OBJECTIONS TO INTERROGATORIES**

1.    DEFENDANT objects to Plaintiffs' definition of a California Department of Corrections and Rehabilitation (CDCR) prison and a "prison" to include those housing units within Department of Mental Health (DMH) facilities that house CDCR prisoners. (Interrogatories, p. 2.)  That definition mischaracterizes the role of DMH as a provider of housing for incarcerated inmates.  DMH's true role is defined by California Penal Code section 2684 as a provider of inpatient mental health treatment to CDCR inmate-patients.  Further, that definition erroneously assumes the Governor's Emergency Proclamation of October 4, 2006 addressed DMH as a provider of housing for incarcerated inmates.  DEFENDANT will interpret the terms "CDCR prison" and "prison" for the purposes of this request to mean those prisons within the jurisdiction of the California Department of Corrections and Rehabilitation, pursuant to

1  California Penal Code section 5054.

2       2.   DEFENDANT objects that the discovery seeks INFORMATION that is neither

3  relevant PLAINTIFFS' claims in this PROCEEDING nor reasonably calculated to lead to the

4  discovery of admissible evidence.  PLAINTIFFS have refused to identify what if any claims they

5  will be asserting in the PROCEEDING.  Consequently, DEFENDANT objects that the discovery

6  requires DEFENDANT to speculate what claims may or may not be asserted by PLAINTIFFS.

7       3.   DEFENDANT objects that the requests are seek information equally available to

8  PLAINTIFFS, and that the requests are overbroad and unduly burdensome.  In accordance with

9  the *Coleman* and *Plata* remedial orders, PLAINTIFFS receive a monthly document productions

10 and other discovery from DEFENDANT and the Receiver appointed in *Plata*.

11      4.   DEFENDANT states that PLAINTIFFS are already in possession of DEFENDANTS'

12 filed plans for the provision of mental health care beds, for the recruitment and retention of

13 staffing for those mental health beds, and for the implementation of appropriate mental health

14 care in those beds. DEFENDANT asserts the deliberative process privilege to all information

15 sought or contained in drafts of those *Coleman* plans, all drafts of any budget proposals to fund

16 those plans, and inter- and intra-Defendant emails concerning those plans.

17      5.   Given the shortened time for DEFENDANT'S responses to these interrogatories,

18 DEFENDANT hereby reserves the right to supplement these responses at a later date.

19      6.   To the extent any request seeks information from documents prepared, created, or

20 generated by the Office of the Inspector General, DEFENDANTS object to the discovery of such

21 information on the basis of the official information privilege and on the basis of the right to

22 privacy in medical, mental health, and personnel matters.  Non-privileged reports of the Office of

23 the Inspector General are available on its public web site.

24      **RESPONSES AND OBJECTIONS TO INTERROGATORIES**

25 INTERROGATORY NO. 1:

26      Do you contend that the state of emergency in the California prison system that you

27 declared, pursuant to your October 4, 2006 overcrowding proclamation, is now over?

28 //

1  RESPONSE TO INTERROGATORY NO. 1:

2       DEFENDANT objects that this request seeks information protected from disclosure by

3  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

4  critical analysis privilege, and official information privilege. DEFENDANT objects that this

5  interrogatory seeks information concerning the overall population of CDCR and so exceeds

6  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

7  disordered inmates and exceeds the jurisdiction of the *Coleman* case.

8       Subject to and without waiving the foregoing objections, DEFENDANT responds as

9  follows: No, the Governor has not terminated the Emergency Proclamation, and his

10 administration continues to aggressively use the emergency authority to address overcrowding in

11 ways that are less intrusive than a prisoner release order.

12 INTERROGATORY NO. 2:

13      If your response to interrogatory number one is affirmative, state all facts and identify all

14 documents and witnesses in support of your contention.

15 RESPONSE TO INTERROGATORY NO. 2:

16      Not applicable. See the objections and response to interrogatory number 1.

17 INTERROGATORY NO. 3:

18      Do you contend that the substantial risk to the health and safety of staff and inmates in

19 CDCR prisons caused by severe overcrowding in CDCR prisons that you cited in your

20 overcrowding proclamation has been alleviated?

21 RESPONSE TO INTERROGATORY NO. 3:

22      DEFENDANT objects that this request seeks information protected from disclosure by

23 the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

24 critical analysis privilege, and official information privilege. DEFENDANT objects that this

25 interrogatory seeks information concerning the overall population of CDCR and so exceeds

26 Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

27 disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

28 is vague in the use of the word 'alleviated', as this word is subject to different meanings and is

1  not defined in the interrogatories.

2        Subject to and without waiving the foregoing objections, DEFENDANT responds as

3  follows: The Governor has not terminated the Emergency Proclamation, and his

4  administration continues to aggressively use the emergency authority to address overcrowding in

5  ways that are less intrusive than a prisoner release order.

6  INTERROGATORY NO. 4:

7        If your response to interrogatory number three is affirmative, state all facts and identify all

8  documents and witnesses in support of your contention.

9  RESPONSE TO INTERROGATORY NO. 4:

10        Not applicable.  See the objections and response to interrogatory number 3.

11  INTERROGATORY NO. 5:

12        Do you contend that the substantial risk of violence in CDCR prisons caused by severe

13  overcrowding in CDCR prisons that you cited in your overcrowding proclamation has been

14  alleviated?

15  RESPONSE TO INTERROGATORY NO. 5:

16        DEFENDANT objects that this request seeks information protected from disclosure by

17  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

18  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

19  interrogatory seeks information concerning the overall population of CDCR and so exceeds

20  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

21  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

22  is vague in the use of the word 'alleviated', as this word is subject to different meanings and is

23  not defined in the interrogatories.

24        Subject to and without waiving the foregoing objections, DEFENDANT responds as

25  follows:  The Governor has not terminated the Emergency Proclamation, and his

26  administration continues to aggressively use the emergency authority to address overcrowding in

27  ways that are less intrusive than a prisoner release order.

28  //

Governor's Responses to Coleman Interrogatories, Set One

INTERROGATORY NO. 6:

If your response to interrogatory number five is affirmative, state all facts and identify all documents and witnesses in support of your contention.

RESPONSE TO INTERROGATORY NO. 6:

Not applicable. See the objections and response to interrogatory number 5.

INTERROGATORY NO. 7:

Do you contend that the substantial risk of transmission of infectious diseases in CDCR prisons caused by severe overcrowding in CDCR prisons that you cited in your overcrowding proclamation has been alleviated?

RESPONSE TO INTERROGATORY NO. 7:

DEFENDANT objects that this request seeks information protected from disclosure by the attorney-client privilege, attorney work product privilege, deliberative process privilege, self critical analysis privilege, and official information privilege. DEFENDANT objects that this interrogatory seeks information concerning the overall population of CDCR and so exceeds Plaintiff Coleman's standing as a representative of the certified class of seriously mentally disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory is vague in the use of the word 'alleviated' as this word is subject to different meanings and is not defined in the interrogatories.

Subject to and without waiving the foregoing objections, DEFENDANT responds as follows: The Governor has not terminated the Emergency Proclamation, and his administration continues to aggressively use the emergency authority to address overcrowding in ways that are less intrusive than a prisoner release order.

INTERROGATORY NO. 8:

If your response to interrogatory number seven is affirmative, state all facts and identify all documents and witnesses in support of your contention.

RESPONSE TO INTERROGATORY NO. 8:

Not applicable. See the objections and response to interrogatory number 7.

//

1  INTERROGATORY NO. 9:

2      Do you contend that the substantial security risk in CDCR prisons caused by severe

3  overcrowding in CDCR prisons that you cited in your overcrowding proclamation has been

4  alleviated?

5  RESPONSE TO INTERROGATORY NO. 9:

6      DEFENDANT objects that this request seeks information protected from disclosure by

7  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

8  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

9  interrogatory seeks information concerning the overall population of CDCR and so exceeds

10  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

11  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

12  is vague in the use of the word 'alleviated' as this word is subject to different meanings and is

13  not defined in the interrogatories.

14      Subject to and without waiving the foregoing objections, DEFENDANT responds as

15  follows: The Governor has not terminated the Emergency Proclamation, and his administration

16  continues to aggressively use the emergency authority to address overcrowding in ways that are

17  less intrusive than a prisoner release order.

18  INTERROGATORY NO. 10:

19      If your response to interrogatory number nine is affirmative, state all facts and identify all

20  documents and witnesses in support of your contention.

21  RESPONSE TO INTERROGATORY NO. 10:

22      Not applicable.  See the objections and response to interrogatory number 9.

23  INTERROGATORY NO. 11:

24      Do you contend that the burdens on infrastructure (electrical systems and/or

25  wastewater/sewer systems) caused by severe overcrowding in CDCR prisons that you cited in

26  your overcrowding proclamation has been alleviated?

27  RESPONSE TO INTERROGATORY NO. 11:

28      DEFENDANT objects that this request seeks information protected from disclosure by

1  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

2  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

3  interrogatory seeks information concerning the overall population of CDCR and so exceeds

4  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

5  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

6  is vague in the use of the word 'alleviated' as this word is subject to different meanings and is

7  not defined in the interrogatories.

8       Subject to and without waiving the foregoing objections, DEFENDANT responds as

9  follows: The Governor has not terminated the Emergency Proclamation, and his

10  administration continues to aggressively use the emergency authority to address overcrowding in

11  ways that are less intrusive than a prisoner release order.

12  INTERROGATORY NO. 12:

13       If your response to interrogatory number eleven is affirmative, state all facts and identify

14  all documents and witnesses in support of your contention.

15  RESPONSE TO INTERROGATORY NO. 12:

16       Not applicable.  See the objections and response to interrogatory number 11.

17  INTERROGATORY NO. 13:

18       Do you contend that the effects of overcrowding that you described in your overcrowding

19  proclamation as harm to people and property, inmate unrest and misconduct, reduc[tion] or

20  eliminat[ion] of programs, and increase[d] recidivism have been alleviated?

21  RESPONSE TO INTERROGATORY NO. 13:

22       DEFENDANT objects that this request seeks information protected from disclosure by

23  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

24  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

25  interrogatory seeks information concerning the overall population of CDCR and so exceeds .

26  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

27  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

28  is vague in the use of the word 'alleviated' as this word is subject to different meanings and is

1 | not defined in the interrogatories.

2 | Subject to and without waiving the foregoing objections, DEFENDANT responds as

3 | follows: The Governor has not terminated the Emergency Proclamation, and his

4 | administration continues to aggressively use the emergency authority to address overcrowding in

5 | ways that are less intrusive than a prisoner release order.

6 | INTERROGATORY NO. 14:

7 | If your response to interrogatory number thirteen is affirmative, state all facts and identify

8 | all documents and witnesses in support of your contention.

9 | RESPONSE TO INTERROGATORY NO. 14:

10 | Not applicable.  See the objections and response to interrogatory number 13.

11 | INTERROGATORY NO. 15:

12 | Do you contend that the severe overcrowding at any of the 29 CDCR prisons that you

13 | cited in your overcrowding proclamation has been alleviated?

14 | RESPONSE TO INTERROGATORY NO.15:

15 | DEFENDANT objects that this request seeks information protected from disclosure by

16 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

17 | critical analysis privilege, and official information privilege.  DEFENDANT objects that this

18 | interrogatory seeks information concerning the overall population of CDCR and so exceeds

19 | Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

20 | disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, the interrogatory

21 | is vague in the use of the word 'alleviated' is subject to different meanings and is not defined in

22 | the interrogatories.

23 | Subject to and without waiving the foregoing objections, DEFENDANT responds as

24 | follows: The Governor has not terminated the Emergency Proclamation, and his

25 | administration continues to aggressively use the emergency authority to address overcrowding in

26 | ways that are less intrusive than a prisoner release order.

27 | INTERROGATORY NO. 16:

28 | If your response to interrogatory number fifteen is affirmative, for each prison at which

Governor's Responses to Coleman Interrogatories, Set One

1  you contend that severe overcrowding has been alleviated, state all facts and identify all

2  documents and witnesses in support of your contention.

3  RESPONSE TO INTERROGATORY NO. 16:

4      Not applicable.  See the objections and response to interrogatory number 15.

5  INTERROGATORY NO. 17:

6      Do you contend that the use of non-traditional beds for inmate housing that you cited in

7  your overcrowding proclamation has been reduced or eliminated in any CDCR prison?

8  RESPONSE TO INTERROGATORY NO. 17:

9      DEFENDANT objects that this request seeks information protected from disclosure by

10  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

11  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

12  interrogatory seeks information concerning the overall population of CDCR and so exceeds

13  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

14  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, DEFENDANT

15  objects to this interrogatory as compound and as phrased in the disjunctive.

16      Subject to and without waiving the foregoing objections, DEFENDANT responds as

17  follows:  The Governor has not terminated the Emergency Proclamation, and his

18  administration continues to aggressively use the emergency authority to address overcrowding in

19  ways that are less intrusive than a prisoner release order.  For example, more than a thousand

20  inmates have been moved to out-of-state prisons since October 2006, and thousands more will be

21  transferred.  These out-of-state transfers have already resulted in the removal of hundreds of non-

22  traditional beds, and the plan is to remove thousands of non-traditional beds as further efforts to

23  address overcrowding are implemented.

24  INTERROGATORY NO. 18:

25      If your response to interrogatory number seventeen is affirmative, identify each CDCR

26  prison in which the use of non-traditional beds for inmate housing has been reduced or

27  eliminated, the specific location(s) in the prison where the use of non-traditional beds has been

28  reduced or eliminated.

1  RESPONSE TO INTERROGATORY NO. 18:

2        DEFENDANT objects to this interrogatory as compound and as phrased in the

3  conjunctive.

4        Subject to and without waiving the foregoing objections, DEFENDANT responds as

5  follows:  Not applicable. See the objections and response to interrogatory number 17.

6  INTERROGATORY NO. 19:

7        Do you contend that the severe overcrowding is no longer causing reduction in inmate

8  participation in academic, vocational, and rehabilitation programs that you described in your

9  overcrowding proclamation?

10  RESPONSE TO INTERROGATORY NO. 19:

11        DEFENDANT objects that this request seeks information protected from disclosure by

12  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

13  critical analysis privilege, and official information privilege.  DEFENDANT objects that this

14  interrogatory seeks information concerning the overall population of CDCR and so exceeds

15  Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

16  disordered inmates and exceeds the jurisdiction of the *Coleman* case.  Further, DEFENDANT

17  objects to this interrogatory as compound and as phrased in the disjunctive.

18        Subject to and without waiving the foregoing objections, DEFENDANT responds as

19  follows: No, the Governor has not terminated the Emergency Proclamation, and his

20  administration continues to aggressively use the emergency authority to address overcrowding in

21  ways that are less intrusive than a prisoner release order.

22  INTERROGATORY NO. 20:

23        If your response to interrogatory number nineteen is affirmative, state all facts and

24  identify all documents and witnesses in support of your contention.

25  RESPONSE TO INTERROGATORY NO. 20:

26        Not applicable. See the objections and response to interrogatory number 19.

27  INTERROGATORY NO. 21:

28        Do you contend that the deficiency of appropriate beds and space for the *Coleman* class

Governor's Responses to Coleman Interrogatories, Set One

1 | members that you cited in your overcrowding proclamation has been remedied or reduced?

2 | RESPONSE TO INTERROGATORY NO. 21:

3 |     DEFENDANT objects that this request seeks information protected from disclosure by

4 | the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

5 | critical analysis privilege, and official information privilege. DEFENDANT objects that this

6 | interrogatory seeks information concerning the overall population of CDCR and so exceeds

7 | Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

8 | disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, DEFENDANT

9 | objects to this interrogatory as compound and as phrased in the conjunctive.

10 |     Subject to and without waiving the foregoing objections, DEFENDANT responds as

11 | follows: The Governor has not terminated the Emergency Proclamation, and his

12 | administration continues to aggressively use the emergency authority to address overcrowding in

13 | ways that are less intrusive than a prisoner release order. Indeed, in the past few months,

14 | Coleman class members have been provided a significant increase in mental health beds to

15 | enable appropriate care in the following institutions: California Medical Facility, Vacaville

16 | increased intermediate care beds by 30, with additional 50 mental health crisis care beds to

17 | activate in 2008; Salinas Valley State Prison activated 112 additional intermediate care beds;

18 | California State Prison, Sacramento activated 192 more Enhanced Outpatient Program beds;

19 | Mule Creek State Prison provided an additional 295 beds to meet the needs of Level III and

20 | Level IV inmates requiring Sensitive Needs Yard placement within the Enhanced Outpatient

21 | Program. In the next few months, the Administration will provide additional treatment space at

22 | Mule Creek State Prison, and will prepare a plan for additional bed and treatment space at

23 | California Medical Facility, Vacaville for mental health care patients.

24 |     The issues cited in the Emergency Proclamation will be alleviated upon further

25 | implementation of the reforms and plans stated in (a) DEFENDANT'S filed briefs in opposition

26 | to Plaintiffs' motion to convene a three-judge panel in the *Coleman* and *Plata* cases, (b)

27 | DEFENDANT'S plans filed with the *Coleman* court to provide mental health beds (the Mental

28 | Health Bed Plan of August 2007), to enhance recruitment of mental health clinicians (filed

1    October 1, 2007), to increase the pay of mental health clinicians within the California

2    Department of Corrections and Rehabilitation and the Department of Mental Health (filed June

3    28, 2007), and to increase small management yards (filed October 29, 2007). In addition,

4    DEFENDANT awaits the Receiver's Plan of Action, due on November 15, 2007. With the

5    *Coleman* court's approval of DEFENDANT'S plan to create consolidated care centers for

6    mental health care patients, the Administration will move forward on those plans to develop

7    appropriate mental health beds for the present and forecasted *Coleman* population.

8    INTERROGATORY NO. 22:

9          If your response to interrogatory number twenty-one is affirmative, state all facts and

10    identify all documents and witnesses in support of your contention.

11    RESPONSE TO INTERROGATORY NO. 22:

12          DEFENDANT objects that this request seeks information protected from disclosure by

13    the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

14    critical analysis privilege, and official information privilege. DEFENDANT objects that this

15    interrogatory seeks information concerning the overall population of CDCR and so exceeds

16    Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

17    disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, DEFENDANT

18    objects that this interrogatory seeks information equally available to Plaintiffs.

19          Subject to and without waiving the foregoing objections, DEFENDANT responds as

20    follows: Plaintiffs have already been provided with the non-privileged documents that are

21    responsive to this request. Those documents have been filed with the *Coleman* court by

22    DEFENDANT in the course of the *Coleman* case and include: Defendant's August 2007 mental

23    health bed, Defendant's response to Special Master Keating's report on the August 2007 bed

24    plan. In addition, DEFENDANT has provided status reports on the construction, staffing and

25    licensure of mental health beds at the regularly scheduled meetings with the Special Master and

26    Plaintiffs, known as Policy Meetings.

27          The witnesses to this contention include and are not limited to: Doug McKeever of

28    CDCR, Cindy Radavsky of DMH, Deborah Hysen of CDCR.

Governor's Responses to Coleman Interrogatories, Set One

13

1  INTERROGATORY NO. 23:

2      What is the current projected time period when you or CDCR expect to run out of all

3  common area space to house prisoners, previously described by you in your overcrowding

4  proclamation as mid-2007?

5  RESPONSE TO INTERROGATORY NO. 23:

6      DEFENDANT objects that this request seeks information protected from disclosure by

7  the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

8  critical analysis privilege, and official information privilege. DEFENDANT objects that this

9  interrogatory seeks information concerning the overall population of CDCR and so exceeds

10 Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

11 disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, DEFENDANT

12 objects that this interrogatory is argumentative and assumes facts not in evidence.

13     Subject to and without waiving the foregoing objections, DEFENDANT responds as

14 follows: The Administration's less intrusive efforts to address overcrowding are having a

15 positive effect. CDCR is currently reducing the number of non-traditional beds.

16 INTERROGATORY NO. 24:

17     Do you contend that the magnitude of the circumstances due to severe overcrowding that

18 you stated in your overcrowding proclamation to exceed the capabilities of services, personnel,

19 equipment, and facilities of any geographical area in California, have been reduced or alleviated?

20 RESPONSE TO INTERROGATORY NO. 24:

21     DEFENDANT objects that this request seeks information protected from disclosure by

22 the attorney-client privilege, attorney work product privilege, deliberative process privilege, self

23 critical analysis privilege, and official information privilege. DEFENDANT objects that this

24 interrogatory seeks information concerning the overall population of CDCR and so exceeds

25 Plaintiff Coleman's standing as a representative of the certified class of seriously mentally

26 disordered inmates and exceeds the jurisdiction of the *Coleman* case. Further, the interrogatory

27 is vague in the use of the word 'alleviated', as this word is subject to different meanings and is

28 not defined in the interrogatories.

1    Subject to and without waiving the foregoing objections, DEFENDANT responds as

2  follows: The Governor has not terminated the Emergency Proclamation, and his administration

3  continues to aggressively use the emergency authority to address overcrowding in ways that are

4  less intrusive than a prisoner release order.

5  <u>INTERROGATORY NO. 25:</u>

6    If your response to interrogatory number twenty-four is affirmative, state all facts and

7  identify all documents and witnesses in support of your contention.

8  RESPONSE TO INTERROGATORY NO. 25:

9    Not applicable. See the objections and response to interrogatory number 24.

10    Dated:  November 9, 2007

11                Respectfully submitted,

12                EDMUND G. BROWN JR.
                 Attorney General of the State of California

13                DAVID S. CHANEY
                 Chief Assistant Attorney General

14                FRANCES T. GRUNDER
                 Senior Assistant Attorney General

15

16                ROCHELLE C. EAST
                 Supervising Deputy Attorney General

17

18                LISA A. TILLMAN

19                LISA A. TILLMAN
                 Deputy Attorney General

20                Attorneys for Defendants

21
   response gov colemanrogs1.wpd
22  CF1997CS0003

23

24

25

26

27

28

## VERIFICATION

I, ROBERT GORE, declare:

I am the Acting Chief Deputy Cabinet Secretary for the California Governor's Office. Prior to serving in this role, I was the Deputy Cabinet Secretary. In these roles, I am actively involved with, and review, budgets and corrections issues for the Office of the Governor, a defendant in his official capacity in this pending action entitled *Coleman v. Schwarzenegger*. I have read the foregoing responses to the First Request for Production propounded by Plaintiff Ralph Coleman, and the foregoing responses to the First Set of Interrogatories propounded by Plaintiff Ralph Coleman, and state upon my information and belief that they are true and correct.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this _9th_ day of November, 2007.

ROBERT GORE

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  *Coleman v. Schwarzenegger, et al.*; *Plata v. Schwarzenegger, et al.*
Nos.:  **01-1351 & 90-0520**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or
older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service that same day in the ordinary course of business.

On **November 07, 2007,** I served the attached **: DEFENDANT GOVERNOR
SCHWAREZENEGGER'S RESPONSES TO PLAINTIFF COLEMAN'S FIRST SET OF
INTERROGATORIES** by placing a true copy thereof enclosed in a sealed envelope with
postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney
General at 1300 I Street, Sacramento, California 94244, addressed as follows:

| | |
|---|---|
| Claudia Center<br>The Legal Aid Society<br>Employment law Center<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107 | Richard Goff<br>Heller, Ehrman White & McAuliffe<br>701 Fifth Avenue<br>Seattle, WA 98104 |
| Warren E. George<br>Bingham McCutchen<br>3 Embarcadero Ctr., Fl. 24<br>San Francisco, CA 94111 | Martin H. Dodd<br>Futterman & Dupree<br>160 Sansome Street, 17th Street<br>San Francisco, CA 94109 |
| Ronald Yank<br>Carroll, Burdick & McDonough, LLP<br>44 Montgomery Street, Suite 400<br>San Francisco, CA 94104 | Ann Miller Ravel<br>Office of the County Counsel<br>County of Santa Clara<br>70 West Hedding, East Wing, 9th Floor<br>San Jose, CA 95110 |
| Jared Goldman<br>California Prison Healthcare Receivership<br>1731 Technology Dr., Suite 700<br>San Jose, CA 95110 | Steven s. Kaufhold<br>Akin Gump Straus Hauer & Feld LLP<br>580 California Street, 15th Floor<br>San Francisco, CA 94102 |

| Rod Pacheco<br>Chuck Hughes<br>Office of the District Attorney<br>County of Riverside<br>4075 Main Street, First Floor<br>Riverside, CA 92501 | Steven Woodside<br>Office of the County Counsel<br>575 Administration Dr., Room 105A<br>Santa Rosa, CA 95403 |
|---|---|
| Donald Specter<br>Prison Law Office<br>2173 'E' Francisco Blvd., Suite M<br>San Rafael, CA 94901 | Michael Bien<br>Rosen, Bien and Galvan<br>315 Montgomery Street, 10th Floor<br>San Francisco, CA 94104 |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 07, 2007**, at Sacramento, California.

| S. Burke | _S. Burke_ |
|---|---|
| Declarant | Signature |