EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST - 183792
Senior Assistant Attorney General
JONATHAN L. WOLFF - 193479
Supervising Deputy Attorney General
LISA A. TILLMAN - 126424
Deputy Attorney General
KYLE A. LEWIS - 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5677
Facsimile: (415) 703-5843
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
S. ANNE JOHNSON - 197415
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## AND THE EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS MOTION FOR DISCOVERY SANCTIONS CONCERNING FORMAT OF DOCUMENTS**<br><br>**Date and time: August 15, 2008, 2:00 p.m.<br>Courtroom: 26<br>Judge: Magistrate Judge John F. Moulds** |

DEFS.' OPP. TO PLFS.' MOT. FOR DISCOVERY SANCTIONS CONCERNING FORMAT OF DOCUMENTS (CASE NO. 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1584221.1

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

    A.  The Parties Agreed And Established A Practice By Which To Produce Documents .......................................................................................... 2

    B.  The TIFF Format Is Essentially A Picture Of The Document That Can Be Reviewed And Analyzed ................................................................... 4

    C.  Plaintiffs First Objected To Providing The TIFF Format On August 11, 2008, And Unilaterally Deemed Further Meet and Confer Efforts Futile Despite Defendants' Asserted Concerns That Native Production Could Result In Production Of Documents That Remain Privileged ............................................................................................................ 4

III. ARGUMENT ............................................................................................................... 6

    A.  Producing In The TIFF Format Is Sufficient Under The Federal Rules Of Civil Procedure .......................................................................................... 6

    B.  Sanctions Are Not Warranted For Defendants' Production In TIFF Format ........................................................................................................... 7

IV. CONCLUSION .......................................................................................................... 8

-i-

## I.    INTRODUCTION

Defendants oppose Plaintiffs' motion for discovery sanctions which among other things seeks to obtain certain documents produced in native format.  Plaintiffs have all of the documents that the Court has ordered produced via hand delivery at 11:50 a.m. on August 11, 2008.  Contrary to Plaintiffs' assertions now, Defendants did not produce these documents in a format that Plaintiffs cannot review or evaluate for 1.5 weeks.  Defendants produced the documents in a TIFF format consistent with the practice between the parties dating back to Defendants' production of February 4, 2008.  The simple truth of the matter is that Plaintiffs have been able to review the documents provided in this format and still can.

Rather than simply commence their review, Plaintiffs seek to tie up the resources of this Court and Defendants in raising this discovery format issue, an issue which has not been a problem for Plaintiffs for the past six months.  Moreover, documents in native form cannot be redacted and Plaintiffs agreed for Defendants to provide documents with redactions.  Plaintiffs should not be permitted to continually tax the resources of this Court and Defendants, when they can simply analyze these documents now.

Even more fundamental, is that producing these documents in native format creates a risk that Defendants will produce documents that remain privileged.  While this Court has ordered thousands of documents produced in its April 14, 2008 and May 29, 2008 orders, thousands of documents still remain privileged that Plaintiffs have never sought to compel.  For example, aside from the deliberative process privilege, there are many documents protected by the attorney client, work product, official information and privacy privileges.  The problem specifically arises with documents that contain a primary document followed by attachments.  If the primary document, i.e. a cover email is ordered produced in native format, then Defendants risk producing the related attachments, even if such documents remain privileged.  The Court should not order a comprehensive production of documents in native form that were previously ordered produced by this Court's April 14, 2008 and May 29, 2008 orders as it would result in

- 1 -

1  Defendants producing many documents that remain privileged — documents that have
2  never been produced by this court.
3      In sum, the Court should deny Plaintiffs' request for documents produced to them
4  in native format.  The TIFF format is an adequate format and has been sufficient for
5  Plaintiffs for more than six months.  Defendants had no reason to believe that a
6  production in TIFF format on August 11, 2008 would be a concern to Plaintiffs due to the
7  practice maintained by the parties.  Defendants should not be prejudiced because
8  Plaintiffs suddenly decided to change their stance regarding the format of the
9  documents.  Even though Defendants explained the very next day that providing such
10 documents in TIFF format would compromise Defendants' ability to protect documents
11 that remain privileged, Plaintiffs decided that further meet and confer to attempt to find a
12 middle ground on this issue would be futile.  Plaintiffs should not be allowed to change
13 their stance on issues on a whim solely for their convenience without regard to the
14 remaining privileged documents and the time and resources of this Court and
15 Defendants.  Defendants ask the Court to deny Plaintiffs' motion for sanctions and
16 request to compel the native format of these documents.

17     **II.    STATEMENT OF FACTS**

18 **A.    The Parties Agreed And Established A Practice By Which To Produce Documents.**
19

20     On November 1, 2007, the parties entered into a Stipulated Rolling Production
21 Schedule ("Stipulation").  Among other things, the Stipulation provided for a rolling
22 production schedule from November 1, 2007 to November 30, 2007.  (Stipulation at 3:5-
23 4:19, Dock. No. 2500.)  The Stipulation further provided: "With respect to *this* rolling
24 production schedule, Defendants agree to produce to Plaintiffs any documents gathered
25 from an electronic source in a "native + image" format."  (*Id.* at 4:22-23) (emphasis
26 added).  Further the Stipulation expressly applied only to Plaintiffs' First and Second
27 Requests for Production of Documents.[1]  (*Id.* at 3:1-4.)

28 [1] Plaintiffs claim that Defendants are in violation of the Stipulation by producing

- 2 -

1    On December 17, 2007, the Three Judge Panel issued an order staying
2  proceedings and required Defendants to review and revise privilege logs within 45
3  calendar days. (Or., 12/17/07, *Coleman* Dock. No. 2620.)[2]  While Defendants were
4  conducting their additional review, counsel for Defendants and Plaintiffs met with this
5  Court to discuss discovery issues in late December 2007 or early January 2008.
6  (Declaration of Rochelle East in Support of Opposition to Plaintiffs' Motion for Discovery
7  Sanctions Concerning Format of Documents, ("East Decl.") at ¶ 2.)  At this meeting, the
8  issue of the format of the documents to be produced was discussed and Plaintiffs
9  agreed to accept a non-native format. (*Id.*)

10    Further on January 29, 2008 during a hearing regarding privilege logs and the
11  production of additional documents, the manner of the production of documents was
12  discussed. (See Declaration of Renju P. Jacob in Support of Opposition to Plaintiffs'
13  Motion for Discovery Sanctions Concerning the Format of Documents ("Jacob Decl."),
14  ¶ 2, Ex. A. Court Transcript of January 29, 2008 Proceedings at 28:4-29:11. )
15  Specifically, the Court inquired as to whether Defendants would produce documents in
16  redacted format. (*Id.*)  Defendants explained that it would produce documents with
17  redactions and Plaintiffs agreed. (*Id.*)  Documents produced in native form cannot be
18  redacted. (Jacob Decl. at ¶ 3.)

19    Defendants have produced several sets of documents to Plaintiffs in TIFF format
20  dating back to February 4, 2008.  For example, among others, Defendants have
21  produced the documents on or about the following dates to Plaintiffs in TIFF format:
22  2/4/08, 2/14/2008, 2/15/2008, 4/2/2008, 4/11/2008, 6/10/2008, 7/24/2008, 8/6/2008, and
23  8/11/2008. (Jacob Decl. at ¶ 4.)  Plaintiffs have obtained and analyzed these documents
24  in TIFF format before and it has never compromised their ability to analyze documents.

25  ─────────────────────────────────────────
26  documents in TIFF format.  The Stipulation does not govern here.  The Stipulation was limited to the specific production set forth in that schedule.  Further, it does not apply to subsequent requests for production of documents.  Moreover, the agreements and
27  practice in this litigation demonstrate that TIFF format was acceptable to Plaintiffs.
     [2] Defendants cite to the docket numbers in the *Coleman* case to be consistent with
28  Plaintiffs, but file this Opposition on behalf of both the *Coleman* and *Plata* Defendants.

- 3 -

(Jacob Decl., Ex. B, 8/13/08 Transcript at 12:22-14:2.) Up until August 11, 2008, Plaintiffs continued to receive documents in TIFF format without objection. (Jacob Decl. at ¶ 4.) Plaintiffs' sudden change in their position is based solely on their perception that obtaining documents in native format will help expedite their review. (Jacob Decl., Ex. B, 8/13/08 Transcript at 12:22-14:2.)

### B. The TIFF Format Is Essentially A Picture Of The Document That Can Be Reviewed And Analyzed

The TIFF or Tagged Image File Format is a format by which images can be stored and is essentially a mirror image of the original. (Jacob Decl. at ¶ 9) To put it in more concrete terms, the manner in which a TIFF is displayed on screen is the same as if the document was printed from a printer. (*Id.* at ¶ 9, and Ex. C, Examples of TIFF images.) Plaintiffs have admitted that they have received the documents in TIFF format, that they are able to open the documents and that when opened, the documents can be viewed just as if they were printed from a printer. (Jacob Decl., Ex. B, 8/13/08 Transcript at 6:24-25.) Plaintiffs have obtained and analyzed these documents in TIFF format before. (*Id.* at 12:22-14:2.)

### C. Plaintiffs First Objected To Providing The TIFF Format On August 11, 2008, And Unilaterally Deemed Further Meet and Confer Efforts Futile Despite Defendants' Asserted Concerns That Native Production Could Result In Production Of Documents That Remain Privileged.

On August 11, 2008 at 11:50 a.m., Defendants served by hand five disks containing any remaining documents ordered produced by this Court's April 14, 2008 and May 29, 2008 orders. (Declaration of Ernest Galvan in Support of Plaintiffs' Motion for Discovery Sanctions ("Galvan Decl."), at ¶ 2.) These documents, like the many previous productions before it, were produced in TIFF format. (*Id.*) At 3:11 p.m. that same day, Plaintiffs' Counsel Lori Rifkin wrote a letter to Defendants claiming that Defendants needed to produce the documents in native format by the close of business that day and if that was not possible to prepare for a telephonic conference with this Court. (Declaration of Maria V. Morris in Support of Plaintiffs' Motion for Discovery

1   Sanctions ("Morris Decl."), at ¶ 17, Ex. O.)  Given that Plaintiffs accepted documents in
2   the TIFF format since February 5, 2008, Defendants had no indication to believe that
3   producing documents in TIFF format would be a point of contention.  (Jacob Decl. at ¶4)
4   Indeed, Defendants only became aware of Plaintiffs' issue with the format of the
5   documents when Ms. Rifkin wrote her August 11, 2008 letter demanding the native
6   format of the documents.  (Morris Decl. at ¶ 17, Ex. O)

7        Defendants responded on August 12, 2008 explaining that the production in
8   native format compromises Defendants' ability to maintain the proper assertion of
9   privileges for which the Court has never ordered produced.  (*Id.*)  Despite awareness of
10  Defendants' difficulty in producing all documents in native format due to privilege
11  concerns, Plaintiffs declared in a conference call that they would seek court intervention
12  to compel the native format of the documents.  (*Id.* at ¶ 5.)  As a result, Plaintiffs filed
13  their motion.  (Mot for Discovery Sanctions, 8/12/08, Dock. No. 2937.)  The parties could
14  not explore whether there existed alternatives that would meet both the interest of
15  Plaintiffs to review documents in a certain manner and for Defendants to maintain the
16  privileged status of documents that remain privileged.  (Jacob Decl. at Ex. ¶ 5.)

17       Requiring Defendants to produce all documents ordered produced will result in
18  the disclosure of documents that remain privileged.  While the Court ordered Defendants
19  to produce certain documents for which Defendants asserted privileged, many
20  documents still retain their privileged status as such documents have never been
21  ordered produced by the Court.  Other documents have affirmatively been upheld as
22  privileged.  (*See* Order, 4/14/08, Attachment B, Dock. No. 2753.)  For example, many
23  documents that are on the Defendants' 2/15/08 Privilege log are still privileged.  These
24  include documents privileged under the official information, privacy, attorney client and
25  work product privileges.  (Jacob Decl. ¶ 6.)  According to Defendants' vendor, close to
26  10,000 documents remain privileged that have never been ordered produced by the
27  Court.  (Jacob Decl. ¶ 6.)

28       Native production presents a risk of disclosure of some of these remaining

- 5 -

privileged documents. Specifically, when a cover email is not privileged but it contains a privileged attachment, production of the cover email in native form can result in the production of the privileged attachment. (Jacob Decl. ¶ 7.) The reason being is that a native document can contain the attachment links on the document itself, so when the native cover email is produced, the links to the privileged attachment may correspondingly be produced. (*Id.*) TIFF productions of the same cover email do not result in this problem as the document is produced as an image. (*Id.*) While the cover email may make reference to a privileged attachment, the reviewer cannot click on the attachment text to link to the attachment. (*Id.*)

### III.    ARGUMENT

**A.    Producing In The TIFF Format Is Sufficient Under The Federal Rules Of Civil Procedure.**

Rule 34 of the Federal Rules of Civil Procedure does not mandate production of documents in electronic format. Rule 34 allows for the responding party to produce documents in a "reasonably usable form" and does not require a party to produce documents in more than one format. Fed. R. Civ. P. 34. Courts have denied motions to compel documents in native format. *See In re ATM Fee Antitrust Litig.*, 2007 U.S. Dist. LEXIS 47943, *27 (N.D. Cal. June 25, 2007) (finding native production unnecessary and TIFF production sufficient where parties established a prior practice of producing in TIFF format). TIFF format is considered an accepted and proper format to produce responsive documents to Rule 34 requests. *Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*, 248 F.R.D. 556, 560 (N.D. Ill. 2008) (denying motion to compel documents in native format).

The Court should reject Plaintiffs' motion seeking to compel certain productions in native format. The TIFF format is an appropriate format for producing documents responsive to Rule 34 requests and as a factual matter has been sufficient for Plaintiffs to review documents for nearly this entire calendar year. Plaintiffs now claim that production of the documents in native format will allow Plaintiffs to review documents

- 6 -

1  more quickly.  This argument should be rejected.  Plaintiffs received document

2  productions in TIFF format on July 24, 2008 and August 5, 2008.  Yet, Plaintiffs only

3  voiced objection to the format of the productions on the afternoon of August 11, 2008.

4  Given Plaintiffs' review of documents in TIFF format for more than six months and their

5  acceptance of documents in TIFF format on July 24, 2008 and August 5, 2008, Plaintiffs'

6  concerns to efficiently review documents do not appear to be credible.

7        On the other hand, Defendants have a genuine and serious need to produce

8  documents in TIFF format – to maintain the privileged nature of documents never

9  ordered produced by the Court.  While Plaintiffs note that Defendants have been able to

10  produce in native format in the past, those native productions did not involve documents

11  with privileged attachments.  Thus, in balancing the need for Defendants to maintain

12  privilege when compared to the Plaintiffs' perception that production in native format will

13  allow them a more efficient review documents, the Court should rule in favor of

14  Defendants.

15  **B.  Sanctions Are Not Warranted For Defendants' Production In TIFF Format.**

16        The Court should deny Plaintiffs' request for sanctions based upon Defendants'

17  production of documents in TIFF format.  Plaintiffs claim that Defendants' production of

18  documents in TIFF format was done in bad faith and is sanctionable.  (Mot. at 7:24-8:2.)

19  Rule 37 of the Federal Rules of Civil Procedure governs when discovery sanctions are

20  warranted.  Fed. R. Civ. P. 37.

21        Application of this rule does not warrant sanctions.  Specifically, Plaintiffs did not

22  engage in good faith meet and confer in seeking to compel the native format of

23  documents produced.  Fed. R. Civ. P. 37(a).  Defendants produced documents on

24  August 11, 2008 consistent with the ongoing practice of the litigation and Defendants

25  had no indication that Plaintiffs would object or oppose such a production.  This is

26  especially true in light of the July 24, 2008 and August 5, 2008 productions that were in

27  the same TIFF format that Plaintiffs accepted without objection.  Defendants explained

28  the next day after Plaintiffs objected that production of documents in TIFF format would

- 7 -

DEFS.' OPP. TO PLFS.' MOT. FOR DISCOVERY SANCTIONS CONCERNING FORMAT OF
DOCUMENTS (case no. 2:90-cv-00520 LKK JFM P/ C01-1351 TEH)

1584221.1

1  compromise Defendants' ability to maintain the privileged status of documents that have
2  never been ordered produced by the Court.  Without inquiry as to whether an agreement
3  could be reached, Plaintiffs simply stated their intent to file and filed their motion later
4  that evening.  Such a process is not good-faith meet and confer.

5  The Court should not award sanctions to Plaintiffs based upon the format in which
6  Defendants produced documents.  Defendants are justified in producing documents in
7  this TIFF format based upon the practice established throughout this litigation and
8  because it enables Defendants to protect documents that remain privileged.

### IV.  CONCLUSION

10  The Plaintiffs have the documents ordered produced by this Court.  In fact,
11  Defendants produced documents as agreed upon and accepted by Plaintiffs throughout
12  the course of this litigation.  Production of documents in the TIFF format allows for
13  sufficient review and analysis.  Indeed, Plaintiffs have reviewed the documents produced
14  in this format for the past six months.  Consequently, Plaintiffs cannot provide an
15  adequate justification to obtain documents in their native format.  That coupled with the
16  fact that production in native format can reveal privileged documents further exemplifies
17  why production in native format should not be ordered.  In sum, the Court should deny
18  Plaintiffs' request to compel the production of certain documents in native format and for
19  sanctions.

20  DATED: August 18, 2008                                            HANSON BRIDGETT LLP

22                                                                                By:   /s/ Paul Mello
23                                                                                     PAUL MELLO
                                                                                       Attorneys for Defendants Arnold
24                                                                                     Schwarzenegger, et al.

- 8 -

1  DATED: August 18, 2008

EDMUND G. BROWN JR.
ATTORNEY GENERAL OF THE
STATE OF CALIFORNIA

By:   /s/ Rochelle East
ROCHELLE C. EAST
Senior Assistant Attorney General
Attorneys for Defendants Arnold
Schwarzenegger, et al.

- 9 -

DEFS.' OPP. TO PLFS.' MOT. FOR DISCOVERY SANCTIONS CONCERNING FORMAT OF
DOCUMENTS (case no. 2:90-cv-00520 LKK JFM P/ C01-1351 TEH)

1584221.1