EXHIBIT B

```
                    UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF CALIFORNIA

                              --o0o--

RALPH COLEMAN, et al.,        ) Case No. 2:90-cv-00520-LKK-JFM
                              )
              Plaintiffs,     )
                              ) Sacramento, California
     vs.                      ) Wednesday, August 13, 2008
                              ) 11:37 A.M.
SCHWARZENEGGER, et al.,       )
                              ) Telephonic Hearing re: order
              Defendants.     ) shortening time re: discovery
_____)

                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN F. MOULDS
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Coleman Plaintiffs:     MARIA V. MORRIS
                            LORI E. RIFKIN
                            Rosen, Bien & Galvan, LLP
                            315 Montgomery Street 10th Floor
                            San Francisco CA    94105
                            (415) 433-6830

For Defendants:             RENJU P. JACOB
                            SAMANTHA TAMA
                            Hanson Bridgett, LLP
                            425 Market Street, 26th Floor
                            San Francisco, CA    94105
                            (415) 995-5049

For Defendants:             DANIELLE O'BANNON
                            CHARLES J. ANTONEN
                            Attorney General's Office
                            455 Golden Gate Avenue
                            Suite 11000
                            San Francisco, CA    94102
                            (415) 703-5500

Court Recorder:             CASEY SCHULTZ
                            U.S. District Court
                            501 I Street, Suite 4-200
                            Sacramento, CA    95814
                            (916) 930-4193
```

ii

1  APPEARANCES (Cont.):

2  Transcription Service:           Petrilla Reporting &
                                      Transcription
3                                   5002 - 61st Street
                                    Sacramento, CA   95820
4                                   (916) 455-3887

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

```
                                                               11
 1   more time, and then we'll go on from there unless it looks like
 2   something's wrong.
 3             THE CLERK:  Samantha Tama, are you present?
 4             MS. TAMA:  Yes.
 5             THE CLERK:  Renju Jacob, are you present?
 6             MR. JACOB:  Yes.
 7             THE CLERK:  Danielle O'Bannon, are you present?
 8             MS. O'BANNON:  Yes.
 9             THE CLERK:  Charles Antonen, are you present?
10             MR. ANTONEN:  Yes.
11             THE CLERK:  Maria Morris, are you present?
12             MS. MORRIS:  Yes.
13             THE CLERK:  Thank you.  That's everyone, Your Honor.
14             THE COURT:  Thank you.  Okay.
15             MS. MORRIS:  Your Honor, if I may answer your
16   question?
17             THE COURT:  Yeah.
18             MS. MORRIS:  This is Maria Morris.  We had -- we
19   looked at this at the disk, and found no native files.  We sent
20   it to our vendor and our vendor -- who would normally do the
21   process of uploading as sort of a -- from an objective coding
22   from some of the codes in the documents, and then they
23   confirmed to us that it was all tif files, no native format
24   whatsoever.  But that's the basis of our knowledge that there
25   are no native files.
```

12

1      THE COURT: And what's the problem with that from
2 your perspective?
3      MS. MORRIS: That in order to get the documents to
4 the point where the -- where we would have basic, sort of
5 objective information, what the title of the document is, what
6 type of document it is, what -- who made it when it was -- when
7 it was created, these sorts of things, which is sort of a
8 starting point for review, that will -- that process, when you
9 are going from a tif -- from a set of tif files, we are told
10 will take a minimum of a week and a half, and that's with our
11 agreement with the vendor that they're going to be working at
12 all hours.
13      Whereas, had these documents been produced in a
14 native format, that whole process would take only about four to
15 eight hours and --
16      THE COURT: Well, you've been produced the documents
17 in the tif manner, haven't you?
18      MS. MORRIS: Now or in the past?
19      THE COURT: In the past?
20      MS. MORRIS: In the past we have, and in the past,
21 two weeks didn't matter as much as it does now.
22      THE COURT: Well, see, you had me convinced otherwise
23 at several times in the past, I can tell you that.
24      MS. MORRIS: And at the time that it was critically
25 important that it be quick, in my understanding from speaking

1   with -- from Lori Rifkin, is that we did get -- we did come to
2   you and say we need them quicker, and we got them quicker.
3   She's looking at me like I'm wrong. Let her speak. I'll let
4   her speak.
5           MS. RIFKIN: Your Honor, last year when we were going
6   through a similarly time pressured summary process before it
7   was stayed, we entered into the stipulation with defendants
8   about the way the documents would be produced. That was the
9   rolling -- the whole rolling production schedule stipulation.
10          And in that stipulation, defendants agreed to provide
11  us with files in both tif and native format. The reason we
12  requested that was because last year we were on the accelerated
13  discovery schedule, and in order for the documents to be in a
14  format where we would be able to review them in any kind of
15  time sensitive manner, we needed them in the native format, and
16  they were produced. Defendants did produce them to us in the
17  native format.
18          Defendants stopped producing them to us in the native
19  format when they produced them earlier this year when discovery
20  was stayed, and we were not in the same time critical situation
21  that we are now. At this point we have expert reports due this
22  Friday, and depositions starting next week, and obviously, the
23  documents the defendants held back just by your orders and the
24  orders of the three-judge court, are those that are very
25  critical for us for use in those depositions. Some of the

14

1  deponents are the people whose documents these were, and that's
2  why this is more important to us at this point.
3        MR. ANTONEN: And Your Honor, the reason that
4  the -- this is Charles Antonen on behalf of defendants -- is
5  the purpose for plaintiffs agreed to accept tifs of the de-
6  privileged documents of the linking issue with the native
7  documents. I know that Renju can speak at more depth about the
8  reason why we've -- you know, the parties agreed that tifs
9  would be sufficient for de-privileged documents is that there
10 may be attachments, or the original e-mail may have been
11 privileged, but the attachments were de-privileged, and when
12 you do a native production, you get the whole kaboodle. But
13 with the tifs you can be more selective as to which specific
14 documents were de-privileged. And so from a logistical
15 standpoint, that's what the parties agree to do, and that's how
16 the parties have been acting over the entire year.
17       MS. MORRIS: Your Honor, if I may? This is Maria
18 Morris.
19       I think that there is a significant distinction
20 between documents over which defendants decided that they
21 should not be asserting privilege and other documents which
22 they continued to assert privilege, and we challenged, and we
23 prevailed. I think there is a great distinction there.
24       I also think that the stipulation remains in effect,
25 and they agreed to produce in native and image file, and it's