1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST - 183792
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF - 193479
   Supervising Deputy Attorney General
5  LISA A. TILLMAN - 126424
   Deputy Attorney General
6  KYLE A. LEWIS - 201041
   Deputy Attorney General
7  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
8  Telephone: (415) 703-5677
   Facsimile: (415) 703-5843
9  kyle.lewis@doj.ca.gov

   HANSON BRIDGETT LLP
   JERROLD C. SCHAEFER - 39374
   PAUL B. MELLO - 179755
   S. ANNE JOHNSON - 197415
   SAMANTHA TAMA - 240280
   RENJU P. JACOB - 242388
   425 Market Street, 26th Floor
   San Francisco, CA 94105
   Telephone: (415) 777-3200
   Facsimile: (415) 541-9366
   jschaefer@hansonbridgett.com
   pmello@hansonbridgett.com
   stama@hansonbridgett.com
   rjacob@hansonbridgett.com

10 Attorneys for Defendants

11            UNITED STATES DISTRICT COURT

12       FOR THE NORTHERN DISTRICT OF CALIFORNIA

13        AND THE EASTERN DISTRICT OF CALIFORNIA

14   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

15     PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

16 RALPH COLEMAN, et al.,                No. 2:90-cv-00520 LKK JFM P

17        Plaintiffs,                    THREE-JUDGE COURT

18     v.

19 ARNOLD SCHWARZENEGGER, et al.,

20        Defendants.

21 MARCIANO PLATA, et al.,               No. C01-1351 TEH

22        Plaintiffs,                    THREE-JUDGE COURT

23     v.                                APPENDIX TO DEFENDANTS'
                                         OPPOSITION TO PLAINTIFFS' MOTION
24 ARNOLD SCHWARZENEGGER, et al.,        FOR DISCOVERY SANCTIONS
                                         CONCERNING FORMAT OF
25        Defendants                     DOCUMENTS

26                                       Date and time: August 15, 2008, 2:00 p.m.
                                         Courtroom: 26
27                                       Judge: Magistrate Judge John F. Moulds

28

                                   - 1 -

1    Pursuant to Local Rule 5-133 (i), Defendants hereby submit copies of the

2    following authorities cited in their Memorandum of Points and Authorities in Support of

3    Defendants' Opposition to Plaintiffs' Motion for Discovery Sanctions Concerning the

4    Format of the Documents.

5        1.  *In re ATM Fee Antitrust Litig.,* 2007 U.S. Dist. LEXIS 47943 (N.D. Cal., June

6    25, 2007).

7

8    DATED:  August 18, 2008                    HANSON BRIDGETT LLP

9

10                                              By: /S/ Paul Mello
                                                    RENJU P. JACOB
11                                                  PAUL MELLO
                                                    Attorneys for Defendants Arnold
12                                                  Schwarzenegger, et al.

13   DATED:  August 18, 2008                    EDMUND G. BROWN JR.
                                                Attorney General of the State of California
14

15

16                                              By: /S/ Rochelle East
                                                    ROCHELLE C. EAST
17                                                  Senior Assistant Attorney General
                                                    Attorneys for Defendants Arnold
18                                                  Schwarzenegger, et al.

19

20

21

22

23

24

25

26

27

28
                                          - 2 -

LEXSEE 2007 U.S. DIST. LEXIS 47943



Analysis
As of: Aug 18, 2008

**IN RE ATM FEE ANTITRUST LITIGATION, This Document Relates To: ALL ACTIONS**

**No. C 04-02676 CRB**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2007 U.S. Dist. LEXIS 47943; 2007-1 Trade Cas. (CCH) P75,760**

**June 25, 2007, Decided**
**June 25, 2007, Filed**

**SUBSEQUENT HISTORY:** Partial summary judgment granted by In re ATM Fee Antitrust Litig., 2008 U.S. Dist. LEXIS 22901 (N.D. Cal., Mar. 24, 2008)

**PRIOR HISTORY:** In re ATM Fee Antitrust Litig., 2006 U.S. Dist. LEXIS 89836 (N.D. Cal., Nov. 30, 2006)

**CORE TERMS:** network, discovery, interchange, procompetitive, electronic, predecessor, disclosure, antitrust, burdensome, time periods, supplemental, relevance, lawsuit, format, discoverable, pertain, entities, joint venture's, appreciates, proffered, unduly, arbitration, pertaining, card, discovery rules, · new rule, summary judgment, discovery requests, antitrust case, produce documents

**COUNSEL:** [*1] For Pamela Brennan, Plaintiff: Daniel O. Myers, LEAD ATTORNEY, Richardson, Patrick, Westbrook and Brickman, LLC, Mt. Pleasant, SC; Joseph Richard Saveri, LEAD ATTORNEY, Daniel E. Barenbaum, Hector Daniel Geribon, Jahan C. Sagafi, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; Andrew W. Hutton, Hutton & Hutton, LLC, Wichita, KA; Anthony J. Bolognese, Bolognese & Associates LLC, Philadelphia, PA; Bart D. Cohen, Merrill G. Davidoff, Michael J. Kane, Berger & Montague, P.C., Philadelphia, PA; Channel P. Townsley,

Deborah Brown McIlhenny, Hutton & Hutton, LLC, Wichita, KS; Daniel B. Allanoff, Joel Cary Meredith, Meredith Cohen Greenfogel & Skirnick, P.C., Philadelphia, PA; Daniel E. Gustafson, Karla M. Gluek, Gustafson Gluek PLLC, Minneapolis, MN; David Felderman, Eugene A. Spector, Jeffrey J. Corrigan, William G. Caldes, Spector, Roseman & Kodroff, P.C., Philadelphia, PA; George A. Shohet, Attorney at Law, Venice, CA; Gretchen M. Nelson, Kreindler & Kreindler LLP, Los Angeles, CA; Joseph C. Kohn, William E. Hoese, Kohn Swift & Graf P.C., Philadelphia, PA; Joshua P. Davis, University of San Francisco School of Law, San Francisco, CA; Kim Keevers, Richardson Patrick Westbrook [*2] & Brickman, Charleston, SC; Marc Howard Edelson, Esq., Edelson & Associates, LLC, Doylestown, PA; Marc S. Moller, Kreindler & Kreindler LLP, New York, NY; Mark G. Ayesh, Ayesh Law Offices, Wichita, KS; Michael Joseph Brickman, Richardson, Patrick, Westbrook & Brickman, LLC, Charleston, SC.

For Terry Crayton, Darla Martinez, on behalf of themselves & all others similarly situated, Plaintiffs: Daniel O. Myers, LEAD ATTORNEY, Richardson, Patrick, Westbrook and Brickman, LLC, Mt. Pleasant, SC; Joseph Richard Saveri, LEAD ATTORNEY, Daniel E. Barenbaum, Hector Daniel Geribon, Jahan C. Sagafi,

2007 U.S. Dist. LEXIS 47943, *2; 2007-1 Trade Cas. (CCH) P75,760

Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; Andrew W. Hutton, Hutton & Hutton, LLC, Wichita, KA; Anthony J. Bolognese, Bolognese & Associates LLC, Philadelphia, PA; Bart D. Cohen, Merrill G. Davidoff, Michael J. Kane, Berger & Montague, P.C., Philadelphia, PA; Channel P. Townsley, Deborah Brown McIlhenny, Hutton & Hutton, LLC, Wichita, KS; Daniel B. Allanoff, Joel Cary Meredith, Meredith Cohen Greenfogel & Skirnick, P.C., Philadelphia, PA; Daniel E. Gustafson, Karla M. Gluek, Gustafson Gluek PLLC, Minneapolis, MN; David Felderman, Eugene A. Spector, Jeffrey J. Corrigan, William G. Caldes, [*3] Spector, Roseman & Kodroff, P.C., Philadelphia, PA; George A. Shohet, Attorney at Law, Venice, CA; Gretchen M. Nelson, Kreindler & Kreindler LLP, Los Angeles, CA; Joseph C. Kohn, William E. Hoese, Kohn Swift & Graf P.C., Philadelphia, PA; Joshua P. Davis, University of San Francisco School of Law, San Francisco, CA; Kim Keevers, Richardson Patrick Westbrook & Brickman, Charleston, SC; Marc Howard Edelson, Esq., Edelson & Associates, LLC, Doylestown, PA; Marc S. Moller, Kreindler & Kreindler LLP, New York, NY; Mark G. Ayesh, Ayesh Law Offices, Wichita, KS; Michael Joseph Brickman, Richardson, Patrick, Westbrook & Brickman, LLC, Charleston, SC; W. Joseph Bruckner, Lockridge Grindal Nauen P.L.L.P, Minneapolis, MN.

For Cecilia Salvador, Plaintiff: Bart D. Cohen, Michael J. Kane, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Joseph Richard Saveri, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; David Felderman, Eugene A. Spector, Jeffrey J. Corrigan, William G. Caldes, Spector, Roseman & Kodroff, P.C., Philadelphia, PA; Jayne Arnold Goldstein, Mager & Goldstein LLP, Weston, FL.

For Peter Sanchez, Plaintiff: David B. Krauss, LEAD ATTORNEY, [*4] Law Office of David B. Krauss, New York, NY; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; Eugene A. Spector, Spector, Roseman & Kodroff, P.C., Philadelphia, PA.

For Deborah Fennern, Plaintiff: David B. Krauss, LEAD ATTORNEY, Law Office of David B. Krauss, New York, NY; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San

Francisco, CA; Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, St. Paul, MN.

For Darecia Miller, Lynette Williams, Plaintiffs: Reginald Von Terrell, LEAD ATTORNEY, THE TERRELL LAW GROUP, Richmond, CA; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; Donald Chidi Amamgbo, Esq., Amamgbo & Associates, Oakland, CA.

For Melissa Griffin, Plaintiff: Laurence D. King, LEAD ATTORNEY, Kaplan Fox & Kilsheimer LLP, San Francisco, CA; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, [*5] Heiman & Bernstein, LLP, San Francisco, CA; Linda Phyllis Nussbaum, Kaplan Fox & Kilsheimer, LLP, New York, NY; Lori Sambol Brody, Kaplan Fox & Kilsheimer LLP, Los Angeles, CA.

For Dorothy Stam, Plaintiff: Laurence D. King, LEAD ATTORNEY, Kaplan Fox & Kilsheimer LLP, San Francisco, CA; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; Linda Phyllis Nussbaum, Kaplan Fox & Kilsheimer, LLP, New York, NY.

For Steve Murray, Plaintiff: Beth E. Terrell, LEAD ATTORNEY, Tousley Brain Stephens, Seattle, WA; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA; Mary Bondy Reiten, Tousley Brain Stephens PLLC, Seattle, WA.

For Grace P. Spohnholz, Plaintiff: George T. Freeman, LEAD ATTORNEY, Anchorage, AK; Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA; Daniel E. Barenbaum, Hector Daniel Geribon, Lieff, Cabraser, Heiman & Bernstein, LLP, San Francisco, CA.

For Concord EFS, Inc., First Data Corp., Defendants: Benjamin Kneeland Riley, Howrey LLP, San Francisco, CA; Brian Douglas [*6] Wallach, Peter Edward Moll, Esq., Howrey Simon Arnold & White, LLP, Washington, DC; Stephen R. Cook, Howrey LLP, Irvine, CA; Buckmaster DeWolf, Howrey Simon Arnold & White, LLP, Menlo Park, CA.

2007 U.S. Dist. LEXIS 47943, *6; 2007-1 Trade Cas. (CCH) P75,760

For Bank of America Corporation, Defendant: Tara M. Steeley, LEAD ATTORNEY, James R. Atwood, Kelly Patrice Finley, Sonya D. Winner, Covington & Burling LLP, San Francisco, CA.

For Bank One Corporation, Defendant: Kathryn Ann Vaclavik, Diane Elizabeth Pritchard, Morrison & Foerster LLP, San Francisco, CA.

For Bank One, N.A., Defendant: Benjamin Jonathan Fox, Sylvia Rivera, Morrison & Foerster LLP, Los Angeles, CA; Kathryn Ann Vaclavik, Diane Elizabeth Pritchard, Jesse William Markham, Jr., Morrison & Foerster LLP, San Francisco, Ca.

For J.P. Morgan Chase & Co., Defendant: Kathryn Ann Vaclavik, Diane Elizabeth Pritchard, Jesse William Markham, Jr., Morrison & Foerster LLP, San Francisco, Ca.

For Citibank (West), F.S.B., Defendant: Carrie M. Anderson, James Christopher Egan, Jr., Peter D. Isakoff, Steven A. Newborn, LEAD ATTORNEYS, Weil, Gotshal & Manges LLP, Washington, DC; Gregory D. Hull, Weil, Gotshal & Manges LLP, Redwood Shores, CA.

For Suntrust Banks, Inc., Defendant: Adam Jason Gromfin, Stephen [*7] V. Bomse, Heller Ehrman LLP, San Francisco, CA; M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe LLP, San Francisco, CA; Rachel M. Jones, Heller Ehrman White & McAuliffe, San Francisco, CA.

For Wachovia Corporation, Defendant: Jack R. Nelson, LEAD ATTORNEY, Reed Smith LLP, Oakland, CA; Kirsten Joy Daru, Michele D. Floyd, Reed Smith LLP, San Francisco, CA.

For Wachovia Bank NA, Defendant: Kirsten Joy Daru, Michele D. Floyd, Reed Smith LLP, San Francisco, CA.

For Wells Fargo & Co., Wells Fargo Bank, N.A., Defendants: Brett Davis Collins, Daniel M. Wall, Mark Jeremy Seifert, Erica T. Grossman, Latham & Watkins LLP, San Francisco, CA; Donald I Baker, Baker & Miller PLLC, Washington, DC; Katie Ya-yee Chang, Joshua N. Holian, Latham & Watkins, San Francisco, CA.

For Servus Financial Corp., Defendant: Brett Davis Collins, Daniel M. Wall, Erica T. Grossman, Mark Jeremy Seifert, Latham & Watkins LLP, San Francisco,

CA; Katie Ya-yee Chang, Joshua N. Holian, Latham & Watkins, San Francisco, CA.

JUDGES: CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

OPINION BY: CHARLES R. BREYER

OPINION

ORDER RE: PLAINTIFFS' FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Now pending before the Court is Plaintiff's motion to compel. [*8] For the reasons set forth below, the motion is hereby GRANTED in part and DENIED in part.

BACKGROUND

In this action, Plaintiffs claim that the "interchange fee" charged by members of the Start ATM network is the product an illegal price-fixing scheme. On a motion to dismiss, Judge Walker sustained Plaintiffs' claim because, at that stage of the litigation, he was bound to accept the Plaintiff's allegation that the interchange fee was not necessary to, or reasonably ancillary to, "the achievement of the joint venture's procompetitive benefits." Brennan v. Concord EFS, Inc., 369 F.Supp.2d 1127, 1135 (N.D. Cal. 2005). In response to Defendants' subsequent argument that they had not engaged in "concerted action" to fix prices in the context of their joint venture, this Court terminated their motion for partial summary judgment motion and directed the parties "to proceed forthwith with any discovery necessary to elucidate the plausible procompetitive justifications that might be advanced in support of the fixed interchange fee." In re ATM Fee Antitrust Litig., No. 04-2676, at 1, 2006 U.S. Dist. LEXIS 89836 (N.D. Cal. Nov. 30, 2006). The Court suggested that "[s]uch discovery need not be extensive, for many of the plausible [*9] arguments are found in the very nature and structure of the agreement itself, as to which all the parties by now have a thorough understanding." Id. 2006 U.S. Dist. LEXIS 89836 **16, 17, [slip op] at 6. In a further attempt to focus discovery on relevant issues, the Court directed Defendants to set forth their procompetitive justifications in a preliminary proffer, which they did, albeit not to Plaintiffs' satisfaction. See Docket No. 374, at 13-19 (Mar. 13, 2007).

2007 U.S. Dist. LEXIS 47943, *9; 2007-1 Trade Cas. (CCH) P75,760

The Court's aim in ordering further discovery was to provide the parties with a limited opportunity to gather materials related to the economic consequences and justifications of the interchange fee, which could then be tested on a motion for summary judgment. In retrospect, this effort appears somewhat quixotic. In an antitrust case, nearly every aspect of a defendant's conduct or business can plausibly be viewed as relevant. See Bd. of Trade of Chicago v. United States, 246 U.S. 231, 38 S. Ct. 242, 62 L. Ed. 683 (1918) ("To determine [the reasonableness of a restraint or agreement] the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. [*10] The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts.").

Not unreasonably, Plaintiffs sought far-reaching discovery to test the merits of Defendants' putative procompetitive explanations for the interchange fee. Plaintiffs argue that they are entitled to any and all information that might shed light on the reason for, the history of, the theory underlying, the operation of, and the effects stemming from both the interchange fee charged by Defendants specifically, and the operation of ATM and other financial transactional networks generally.

The parties now find themselves at loggerheads, in numerous ways, about the proper scope of discovery. That impasse generated the instant motion to compel. Plaintiffs argue that they are entitled to "material regarding networks other than Star," "material provided to the government or in connection with [other] relevant private litigation," "material regarding ATM networks in foreign countries," "material from the inception of the Star network to date," "materials regarding entities [that] Defendants acquired," among other materials. [*11] Motion at 3-4. Defendants seek relief from what they perceive as the limitless scope of Plaintiffs' demands.

The Court does not deny that the materials identified by Plaintiffs might assist them in their effort to debunk the proffered explanations for the interchange fee. Nonetheless, the Court agrees with Defendants that the tremendous scope of these discovery demands are unduly burdensome. Although the discovery rules entitle Plaintiffs to seek all material "reasonably calculated to lead to the discovery of admissible evidence," their

theoretical entitlement yields to practical considerations when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). See also Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers, 542 F.2d 1076, 1082 (9th Cir. 1976) ("Particularly in antitrust litigation, the long drawn out process of discovery can be both harassing and expensive."). But see In re Folding Carton Antitrust Litig., 83 F.R.D. 251, 253 (N.D. Ill. 1978) (approving antitrust plaintiffs' "first wave interrogatories relating to industry information," including "identification of studies, [*12] reports, statistical bulletins, analyses, memoranda, and data compilations of folding carton operations for enumerated economic measures").

This order sets forth general guidance regarding what the Court considers the appropriate scope of discovery. [1] The parties' discovery disputes fall into three general categories: (1) the type of information that is discoverable, (2) the time periods as to which Plaintiffs may obtain discovery, and (3) the format in which discoverable information must be furnished by Defendants. The Court addresses each of these three issues in turn.

1 Defendants contend that Plaintiffs have failed to set forth their motion to compel in requisite detail. Cf. Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429, 438-39 (9th Cir. 1992) (upholding a magistrate judge's finding that a demand for "millions of pages of documents concerning every aspect of [the defendant's business] relationships" was "unnecessarily burdensome and overly broad" where the plaintiff had "fail[ed] to make a 'specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence'" (quoting Sorosky v. Burroughs Corp., 826 F.2d 794, 805 (9th Cir. 1987))).

Here, [*13] the Court agrees that Plaintiffs have painted their discovery demands with a broad brush. For this reason, the Court is constrained to consider many of the disputes presented in the motion in categorical terms, rather than with detailed reference to disputed materials. Yet this does not mean that Plaintiffs' motion is premature. Given the chasm between the parties' expectations about the appropriate

2007 U.S. Dist. LEXIS 47943, *13; 2007-1 Trade Cas. (CCH) P75,760

scope of discovery, at least some guidance is necessary at this point, regardless of the abstract and general nature of some of Plaintiffs' demands. Here, the parties should view the Court's order as setting forth general guidance, rather than concrete commands. If the Court's order proves inadequate to resolve disputes about specific documents, the parties may seek an additional ruling from the Court--subject, of course, to the Northern District's meet-and-confer requirements. N.D. Cal. Civ. L.R. 37. The Court is cognizant of the real discovery dilemmas posed by the theoretical nature of an antitrust case and appreciates the extensive efforts that the parties have made to settle disputes on their own.

## I. Types of Discoverable Information

This lawsuit is about a specific legal violation (*i.e.*, [*14] a violation of the *per se* prohibition against price-fixing, due to a specific course of conduct (*i.e.*, the imposition of a fixed interchange fee). The interchange fee is the anchor of Plaintiffs' case. The discovery process must not become unmoored from this issue, lest the case drift into a dispute about the most economically desirable structure of ATM networks generally. Although Plaintiffs rightly observe that discovery is not limited to Defendants' theory of the case, it is equally true that discovery *is* limited to the specific subject matter presented by Plaintiffs' complaint. It is from this perspective that the Court approaches Plaintiffs' various requests for documents.

**1. Other ATM Networks and ATM Transactions Abroad.** The Court finds that the production of information about ATM networks other than Star is unnecessarily burdensome. The Court reaches the same conclusion regarding ATM transactions occurring in foreign countries. It is true that such information may provide a basis for Plaintiffs to draw useful comparisons to the domestic Star network. But it is useful in any antitrust suit to understand how other market participants behave or how other markets operate. The usefulness [*15] of this information, however, pales in comparison to the burden of requiring an antitrust defendant to provide any and all information about its global industry and its competitors, as opposed to the anticompetitive practice alleged. Thus, to the extent that Plaintiffs demands the production information pertaining *exclusively* to other ATM networks, the Court finds that

such demands are unreasonably broad. The Court draws the came conclusion with respect to ATM transactions occurring *exclusively* outside the United States. To the extent that Plaintiffs request the production of materials that themselves contain information about other or foreign ATM networks *and the domestic Star ATM network as well,* the Court finds that the production of such information is not unduly burdensome in light of its greater relevance. The Court notes, however, that Defendants appear to have agreed to produce such information. Cf. Motion at 15 (noting that Defendants agree to produce documents regarding Star that are otherwise discoverable and happen to mention other ATM networks); Concord EFS Opp. at 10 (noting an agreement wherein Defendants agreed that they "would not exclude an otherwise responsive document [*16] simply because it mentioned one of these other networks").

**2. Acquired or Merged Entities.** Plaintiffs have apparently set aside their demand for documents related to NYCE and Cash Station, see Motion at 13 n. 16, but continue to request documents related to other ATM networks, specifically MAC and Honor, which have been acquired by and incorporated into the Star ATM network. Plaintiffs claim that these "predecessor networks" are relevant because they may reveal Defendants' approach to (re)configuring an ATM network. Defendants do not dispute the relevance of these materials, but they claim that these requests are "the most overbroad and unduly burdensome aspect of [Plaintiffs'] demands]." Further, Defendants note that Plaintiffs previously agreed to forego such materials. See Wallach Decl., Ex. B, at 2 ("The parties have agreed that Concord will not have to search for or produce Honor, MAC, or Cash Station documents prior to the time that these entities became part of Star."). The only response that Plaintiffs provide for repudiating their prior agreement is that the agreement was executed before Defendants proffered their procompetitive justifications. Yet the proffer, contrary to [*17] Plaintiffs' suggestion, nowhere explicitly mentions these other predecessor networks.

Although the predecessor networks are of obvious relevance to the lawsuit, the Court concludes that Plaintiffs must abide by their prior commitment to constrain their discovery requests to the Star ATM network, and not to the predecessor networks generally. The issues presented in the case are not substantially different now than when the case began. Indeed, the

2007 U.S. Dist. LEXIS 47943, *17; 2007-1 Trade Cas. (CCH) P75,760

Court's directive "to proceed forthwith with any discovery necessary to elucidate the plausible procompetitive justifications that might be advanced in support of the fixed interchange fee" is directly related to Chief Judge Walker's initial ruling that Plaintiffs' had adequately pled that the interchange fee was not necessary to, or reasonably ancillary to, "the achievement of the joint venture's procompetitive benefits." Brennan v. Concord EFS, Inc., 369 F.Supp.2d at 1135. In short, despite the twists and turns of this litigation, the playing field has not changed dramatically since Plaintiffs agreed in January of 2006 to forego the materials they now demand.

A caveat is in order, however. The agreement apparently reached by the parties does [*18] not indicate exactly what is meant by the phrase "prior to the time that these entities became part of Star." Wallach Decl., Ex. B, at 2. The Court construes this limitation to encompass information and documents pertaining to these predecessor networks as they existed before Concord incorporated them under their corporate umbrella. The Court does not view the agreement as placing a restriction on Plaintiffs ability to obtain information relating to changes made to MAC subsequent to its acquisition by Star in 1998, or to Honor subsequent to its merger with Star in 1999. Id.; Concord EFS Opp. at 10. Thus, Plaintiffs are free to explore any changes made to these two networks to achieve their integration with Star or to bring these networks into the Concord fold. This avenue for discovery, which is likely to produce the information most relevant to Plaintiffs' lawsuit (because it will identify aspects of the predecessor networks that needed to be altered in order to become part of the Star network), remains open.

3. *Other Card Transactions.* The Court finds that "point-of-sale" transactions and "on-us" transactions are appropriate areas for additional discovery, provided that such transactions [*19] pertain to the Star network (or its members) and occur within the United States. The fact that Star network gives customers access to their accounts via other types of transactions that do not involve an interchange fee (if, in fact, these transactions do not involve such a fee) is certainly relevant to Plaintiffs' claim that the interchange fee is unnecessary and anti-competitive. (Of course, the Court does not intend to suggest any conclusion here about the probative value of such evidence, which may pertain to an entirely distinguishable economic arrangement). The Court does

not hold that every document pertaining to a POS or on-us transaction is fair game, but rather that a blanket objection to these areas of inquiry is without merit. In the Court's view, more extensive exploration would be warranted as to POS transactions, which ostensibly employ the "machinery" of the Star ATM network, than would be warranted as to "on-us" transactions, which generally do not. The Court notes that many of the defendants appear to have produced information regarding such card transactions already. See Opp. of Wells Fargo, Bank One, Bank of America, and Wachovia at 10-14. Any further effort to [*20] compel production of such materials should be based not merely on the relevant nature of the transactions themselves, but rather on the need for specific subsets of POS or "on-us" information, as Plaintiffs demands were originally framed.

4. *Government Investigations and Other Litigation.* Plaintiffs seek materials "submitted pursuant to the Hart-Scott-Rodino Act" as well as "materials from private litigation" or arbitration proceedings on the basis that Defendants' "statements in pleadings or under oath . . . *may* contradict or estop Defendants' claims here." Motion at 4. Plaintiffs state that they "have attempted to limit the burden of searching for this requested information through the identification of a custodian with knowledge as to these issues and a list of litigation and arbitration proceedings." Id. at 21.

The Court concludes that the potential for turning up a needle does not require Defendants to sift through this haystack. Plaintiffs have identified no reason to think that Defendants have ever taken any prior inconsistent position in prior litigation or in their HSR filings. Instead, their justification for seeking such is purely speculative. Reply at 18 (noting that such [*21] materials would be relevant "*if* their own testimony in non-antitrust settings conflicts with their current litigation position"). Furthermore, Defendants have already agreed to produce such information if it "relates specifically to antitrust violations." Id. at 21-22. Under these circumstances, the Court concludes that the potential and speculative benefit of such materials outweighs the burden of producing them. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1085 (11th Cir. 1990) ("A vague possibility that loose and sweeping discovery might turn up something suggesting that [Defendants have changed their view of the market or applicable antitrust principles] does not show particularized need and likely relevance that would

2007 U.S. Dist. LEXIS 47943, *21; 2007-1 Trade Cas. (CCH) P75,760

require moving discovery beyond the natural focus of the inquiry.").

**5. Costs and Revenues.** The Court finds that Plaintiffs' requests for production of documents related to the costs and revenues associated with the Star ATM network is proper. Undoubtedly, the procompetitive justifications for a fee, which ostensibly supports the ATM network, must be assessed in light of the way a network operates, including the costs its members must bear and the revenues they [*22] receive from it. 2 Donald I. Baker et al., The Law of Electronic Fund Transfer Systems P 24.07[5][c] (2006). The Court rejects Concord's contention that the costs and revenues of the network itself are irrelevant, notwithstanding the fact that the interchange fee itself passes only from a card issuer to an ATM owner.

## II. Information During Different Time Periods

Plaintiff's motion to compel raises two controversies about the time periods as to which Plaintiffs may propound discovery requests. The first dispute pertains to historical information regarding the Star ATM network, and specifically to the time period between 1985 and 1995. The second dispute pertains to Defendants' obligations to supplement their initial disclosures, which occurred in 2004 and 2005, with more contemporary information.

**1. Historical Information.** It appears that only Defendant Concord EFS poses an obstacle to Plaintiffs' effort to obtain historical information for the time period from 1985 to 1995. See Reply at 5-7 (describing outstanding disputes with regard to each defendant). Further, both Plaintiffs and Concord EFS appear amenable to some sort of compromise on this issue. Indeed, the moving papers indicate [*23] that they may not be far apart at all. Concord EFS Opp. at 8 (discussing "an effort to reach compromise"); Reply at 15-16 (same).

The Court recognizes that historical information is important to Plaintiffs' case, particularly insofar as it reflects changes to or discussion about the structure of the ATM network. At the same time, the Court appreciates the burden of sifting through 700 boxes and the many millions of documents contained therein. The Court therefore directs the parties to proceed initially with their tentative compromise--that is, for Concord to provide an index of its historical documents (however imperfect that summary document may be) and then to provide

Plaintiffs with a copy of their favorite thirty (30) boxes. If that production proves insufficient, and if the parties are unable to agree upon an appropriate supplemental disclosure, Plaintiffs will be free to renew their request to compel additional documents. Until then, their motion to compel these historical materials is premature, and as to those materials, the motion is therefore denied without prejudice. The Court encourages Concord to furnish specific information, if possible, regarding the particular historical [*24] periods that have attracted Plaintiffs' attention. See, e.g., Motion at 24 (stating interest in "historical prices, including any changes over time, and evidence reflecting how Defendants made those pricing decisions"); Reply at 16 (discussing the "advent of surcharges" and "the 1988 arbitration decision concerning Pulse interchange fees").

**2. Current Information.** Plaintiffs want supplemental disclosures covering all contemporary materials up to the end of the year 2006. Defendant Concord EFS refuses to provide materials subsequent to the initial searches and disclosures they made in 2004, while certain of the Bank Defendants refuse to search for and produce discovery for materials subsequent to the summer of 2005.

On the one hand, the Court appreciates Plaintiffs' contention that a great deal of time has passed since the complaint was first filed. Motion at 25. The court is also mindful that the present posture of the case raises specific discovery concerns, especially in light of the proffered procompetitive justifications. Id. Yet given that there has been "no change to ATM interchange fees since the amended complaint was filed," Concord EFS Opp. at 8, it is difficult to see the value [*25] in requiring another round of supplemental disclosures simply in order to gain a better understanding about "why Star maintained the same fixed interchange fees." Opp. at 16. The purpose of supplemental disclosures is not to affirm what is already known. It is to generate new and better information. See Fed. R. Civ. P. 26(e) (requiring a party to supplement or to amend a prior response if "the information is disclosed is incomplete or incorrect"). The civil discovery rules do not anticipate perpetual production.

Given that the parties have previously agreed to permit "specific, targeted" requests for additional documents, and given the duration and unusual posture of this case, the Court agrees that some additional production of contemporary materials is permissible. To

2007 U.S. Dist. LEXIS 47943, *25; 2007-1 Trade Cas. (CCH) P75,760

that end, the Court directs Plaintiffs to assemble a list of twenty (20) custodians from whom it wishes to obtain additional records, and for the parties then to meet and confer regarding additional production. Plaintiffs may of course seek additional contemporary information, but if such requests merely seek a supplement about information already provided, Plaintiffs will bear the burden either of demonstrating that [*26] such requests are based upon changed circumstances or of showing cause why the information already disclosed is otherwise inadequate.

### III. Format of Information

The Supreme Court recently amended Rule 34, which now states that "a party who produces documents for inspection shall produce them as they are kept in the usual course of business," and that unless a request specifies otherwise, the production of "electronically stored information" shall be produced "in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable." Fed. R. Civ. P. 34(b)(i)-(ii). The rule further provides that the form of electronic production required under the new rule may be altered by agreement of the parties or by order of the Court. Id. A month after this new rule went into effect, Plaintiffs propounded their Fourth Set of Requests for Production of Documents. In their request, Plaintiffs state that Defendants must comply with the amended rule as to any additional productions they make.

The Court declines to compel Defendants to comply with Rule 34 for future document productions. When this

litigation began, the parties agreed to the production of electronic information [*27] in a particular format. Specifically, Defendants agreed to produce, and Plaintiffs agreed to accept, electronic documents stored in the form of a "TIFF file" that is subject to a scanning process known as "OCR." In plain English, Defendants agreed to give Plaintiffs a digital image of all electronic documents that they could search, albeit imperfectly, for certain words and terms. An amendment to the civil rules--nearly two year after the filing of the lawsuit, and long after the parties established a system for propounding electronic discovery--does not justify the abdication of the parties' agreement, especially given the security concerns raised by Defendants about maintaining the confidentiality of electronic documents. Of course, if the parties can stipulate to the production of some materials in native electronic format, they are free to do so. Otherwise, the Court orders that production of additional materials shall proceed in accordance with the parties' prior agreement.

### CONCLUSION

According to the findings and conclusions set forth above, Plaintiffs' motion to compel is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: June 25, 2007

CHARLES R. BREYER

UNITED STATES DISTRICT [*28] JUDGE