1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                             --o0o--

4  RALPH COLEMAN, et al.,        ) Case No. 2:90-cv-00520-LKK-JFM
                                 )
5                 Plaintiffs,    )
                                 ) Sacramento, California
6       vs.                      ) Wednesday, August 13, 2008
                                 ) 11:37 A.M.
7  SCHWARZENEGGER, et al.,       )
                                 ) Telephonic Hearing re: order
8                 Defendants.    ) shortening time re: discovery
   _____)

9

10                     TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JOHN F. MOULDS
11                 UNITED STATES MAGISTRATE JUDGE

11

12  APPEARANCES:

13  For Coleman Plaintiffs:      MARIA V. MORRIS
                                 LORI E. RIFKIN
13                               Rosen, Bien & Galvan, LLP
14                               315 Montgomery Street 10th Floor
                                 San Francisco CA   94105
15                               (415) 433-6830

16  For Defendants:              RENJU P. JACOB
                                 SAMANTHA TAMA
17                               Hanson Bridgett, LLP
18                               425 Market Street, 26th Floor
                                 San Francisco, CA   94105
19                               (415) 995-5049

20  For Defendants:              DANIELLE O'BANNON
                                 CHARLES J. ANTONEN
21                               Attorney General's Office
                                 455 Golden Gate Avenue
22                               Suite 11000
                                 San Francisco, CA   94102
23                               (415) 703-5500

24  Court Recorder:              CASEY SCHULTZ
                                 U.S. District Court
25                               501 I Street, Suite 4-200
                                 Sacramento, CA   95814
                                 (916) 930-4193

ii

1   APPEARANCES (Cont.):

2   Transcription Service:          Petrilla Reporting &
                                        Transcription
3                                   5002 - 61st Street
                                    Sacramento, CA    95820
4                                   (916) 455-3887

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1

1    SACRAMENTO, CALIFORNIA, WEDNESDAY, AUGUST 13, 2008, 4:12 P.M.

2

3         THE CLERK:  Calling Civil Case 90-0520-LKK, Coleman

4    v. Schwarzenegger.  And this is on for plaintiff's motion for

5    order shortening time.

6         THE COURT:  And would the parties state their

7    appearances please?

8         MS. MORRIS:  Maria Morris and Lori Rifkin from Rosen,

9    Bien & Galvan for the Coleman plaintiffs.

10        MR. JACOB:  Renju Jacob and Samantha Tama for

11   defendants.

12        THE COURT:  I'm having trouble hearing.

13        MR. JACOB:  That's Renju Jacob and Samantha Tama for

14   defendants.

15        MS. O'BANNON:  And Danielle O'Bannon and Charles

16   Antonen for the defendants.

17        THE CLERK:  Did we lose somebody?

18     (Busy signal.)

19        THE CLERK:  I'll hang up and I'll try to call

20   everyone back.

21     (Off the record from 4:18 to 4:24 p.m.)

22        MR. JACOB:  Renju Jacob and Samantha Tama on behalf

23   of defendants from Hanson Bridgett.

24        MS. O'BANNON:  Danielle O'Bannon and Charles Antonen

25   from the Attorney General's Office on behalf of the defendants.

2

1          THE COURT:  Is that everybody?

2          THE CLERK:  Yes, Your Honor, I believe so.

3          THE COURT:  I don't hear anybody else claiming

4     they're hanging around.

5          So as I understand it, this matter arises out of

6     plaintiff's request for an order shortening time on two

7     matters.

8          One is that they believed they were being provided

9     the discovery material previously ordered as to which claims of

10    attorney/client privilege and deliberative process privilege

11    had been ruled upon and the documents were to be presented, and

12    the -- that was a subject of a brief discussion that we had at

13    our last meeting last Thursday.  Those are now being delivered

14    and there was a delay because they were being delivered in a

15    format with which the plaintiffs disagreed.

16         And the second matter had to do with two requests for

17    an order shortening time covering two other discovery requests

18    which have not yet been the subject of any rulings, and there

19    was a request for an order shortening time so that we could

20    proceed with both.

21         As to the first matter, I think that's before the

22    Court, and the second matter, as I understand it, the parties

23    on those two new discovery -- or two new requests for

24    compulsion of discovery, they were -- as I understand it there

25    is a tentative agreement which the parties wish to put on the

1  record which at least solves the problem for today.  Am I right

2  about that?

3          MS. TAMA:  Yes.

4          THE COURT:  Okay.

5          MS. TAMA:  In part, Your Honor.  This is Samantha

6  Tama from Hanson Bridgett.

7          The first dispute that you were discussing, I don't

8  think there is a dispute that there was a delay in defendants

9  producing the documents.  It's just a dispute over the format

10  of the production of the documents.

11          THE COURT:  The -- well, as to whether there was a

12  dispute or not, I think that's been definitively resolved by

13  several things:  one, my irritation a week ago; and two, relief

14  by the Ninth Circuit last Friday.

15          The -- but let's not get into a discussion about

16  what's not in dispute today.  I'd like to hear first a

17  statement of the tentative agreement concerning the two new

18  motions to compel.

19          MS. MORRIS:  Your Honor, this is Maria Morris.  I

20  spoke with Samantha Tama, and what we agreed to, which requires

21  your acceptance, clearly, is that we would like -- we could

22  agree to a Wednesday hearing next week, but defendants can only

23  agree to that date of the hearing if the briefing can be

24  done -- due on Tuesday at 3:00 p.m.

25          MS. TAMA:  And I -- this is Samantha Tama again.  I

4

1  just wanted to clarify that the briefing at 3:00 p.m. on

2  Tuesday, I would assume that that's just defendant's opposition

3  since plaintiffs have already submitted briefing on this issue.

4          MS. MORRIS:  And -- this is Maria Morris.  My only

5  dispute with that would be if we are able to resolve some

6  portion of the attorney/client privilege issues in a meet and

7  confer prior to that, I would want to be able to put in

8  something about where we are on that.

9          MS. TAMA:  That's fine.

10          THE COURT:  You mean, you're asking me to forgive you

11  if you notified me ahead of time that you may have part of it

12  solved?

13          MS. MORRIS:  Yes.

14          THE COURT:  I think that's called an IQ test, but

15  I'll try my best to pass it.

16          All right.  Now, where are we with regards to the

17  first matter?

18          MR. JACOB:  Good afternoon, Your Honor, Renju Jacob

19  on behalf of the defendants.  If I may go into defendants

20  position on this issue.  Defendants would just request that the

21  Court provide us a minimal amount of time, even by noon

22  tomorrow to provide some briefing on this matter.  Defendants

23  haven't had an opportunity to brief the issue at all, and feel

24  that that would assist the Court in resolving this matter.

25          THE COURT:  Counsel, I would -- I believe that

1    there's a pretty clear resolution of that matter, and if you

2    have anything to say that would assist me in resolving it, I

3    think now is probably your time to say it.

4            MR. JACOB:  Thank you, Your Honor.  I'd just like to

5    note that objection for the record.

6            Plaintiff seek defendants to provide all documents in

7    native format.  That's what this issue is about.  The Court

8    should deny this request for the following reasons:

9            First, plaintiffs have all the documents the Court

10    ordered produced in its April 14th, 2008 order, and also in its

11    May 29th, 2008 order.  Those documents were delivered to

12    plaintiff's counsel, Lori Rifkin, at about 11:50 a.m. on

13    Monday.  These documents are usable, they can be reviewed, and

14    they are capable of being searched.  They are essentially

15    images, or tif images of documents, essentially how someone

16    would look at it if they were to look at a piece of paper, or a

17    pdf version of that document.

18            Second, defendants have followed the practice, this

19    practice of providing tifs during the course of the litigation

20    for almost this entire calendar year.  The first major

21    production this year was February 4th, 2008, and subsequent to

22    that, there were several other productions:  on February 15th,

23    '08, and then there were some privilege released productions

24    based on our meet and confer, and then there were about three

25    or four other productions on June 10th, '08, July 24th, '08,

6

1    August 6th of '08 and August 11th of '08.

2    All of these productions had tif production only.

3    Defendants first heard of plaintiff's objection to the format

4    on the afternoon of August 11th, 2008.  Defendants would also

5    point -- direct the Court to meetings and discussions that the

6    parties had before the Court in late December and early January

7    of '08.  In --

8    THE COURT:  Counsel?  Counsel?

9    MR. JACOB:  Yes, Your Honor.

10    THE COURT:  Let me break in for just a moment.  As I

11    understand it, there seems to be agreement between plaintiffs

12    and defendants that it's going to take about two weeks to

13    convert the material that you provided into readable format.

14    Am I correct about that?

15    MR. JACOB:  That's incorrect, Your Honor.  The

16    documents that are provided are essentially an image, it's an

17    exact image of the documents that -- if we're looking at an e-

18    mail, or a Word document, or a spreadsheet, whatever it may be,

19    plaintiffs have that document in a format that is currently

20    viewable.  It's a document that they can view, analyze, access,

21    just as if it was printed from a printer.

22    MS. MORRIS:  Your Honor?

23    THE COURT:  Yes?

24    MS. MORRIS:  This is Maria Morris.  We can open each

25    single tif, but yes, it is like having it on a printer, it's

1   not like having electronic documents and we are going based

2   upon what our vendor has told us they are capable of doing, and

3   they said it will take at a minium a week and a half before

4   they have it into a state where we are capable of reviewing it.

5          MR. ANTONEN:  Your Honor, Charles Antonen on behalf

6   of the defendants.  One reason why these documents were

7   produced in tif format is during late December and early

8   January there was an in-camera conference held in your chambers

9   in which defendants and plaintiffs discussed the de-privileging

10  of various documents.

11         These documents are part of that whole de-privileging

12  process and that the parties agreed that defendants would

13  produce de-privileged documents in a tif format exclusively,

14  because the problem with producing a native format is the

15  certain documents are linked, and so therefore the documents --

16  the de-privileged documents may actually be linked to a

17  privileged document.  And so the easiest and cleanest way was

18  to produce it in a tif format and plaintiffs agreed to accept

19  that format at that time.

20         THE COURT:  All right.  Well, let me be clear where

21  we are, or as clear as I can be.  I'm concerned about a couple

22  of things here.  One is I do recall when the Court requested to

23  see the documents that -- as to which there was a claim of

24  privilege.  There was first notification to the Court that it

25  would take about two weeks to make the conversion.  At the

1    time, there was some time pressure felt, and I was not

2    perfectly happy with the two week delay.

3          And the next day, I was assured that they could be

4    provided and would be provided within 24 hours.  That's the

5    first concern that makes me a little skeptical about everything

6    I'm hearing from everybody at the moment.

7          Now, to get to where I think we are, and this is an

8    area where I've not yet made an order, but it will give you a

9    preview of where I'm going, and I'm doing that for purposes of

10   having you tell me why I might be wrong so we can get it right

11   this time.

12         The -- I had all of those documents which were at

13   issue at that time regarding attorney -- claims of -- as to

14   which claims of attorney/client privilege had been made, and as

15   to which claims of deliberative process privilege had been

16   made.  Some of them, in fact, were overlapping claims for

17   individual documents.  So we have those in the Court's

18   possession and it seems to me that it should be relatively easy

19   for the documents to be available to plaintiffs for inspection

20   and copying starting tomorrow morning, and the result is that

21   there should be -- I don't see why there's any problem for

22   anybody with -- that agreed that it would be made that way.

23         MR. JACOB:  Your Honor, this is Renju Jacob on behalf

24   of the defendants.  The precise documents that we gave to

25   plaintiffs were based upon the documents that you received.

1    They're the same format.  So the documents that you see when

2    you opened up the privileged CDs for in-camera review are the

3    precise documents that we provided to plaintiffs.

4            THE COURT:  Well, I had -- I saw some documents which

5    had been electronically presented to me, or at least on media

6    that are -- that perform electronically.  I also had a very

7    substantial, I can assure you, number of paper documents which

8    were delivered to me, and I also looked at those.

9            There were relatively few documents as to which a

10    claim of -- the Court sustained a claim of privilege.  First

11    there were a number of documents on which I -- first I

12    considered the attorney/client privilege and I withheld from

13    that consideration those documents as to which there had been a

14    claim of deliberative process privilege also.  But later on I

15    ruled on those, and that reduced the number further.

16            It's a relatively easy problem for us to withdraw

17    from the material the Court has those documents of which a

18    claim of privilege was made.  I'm sure you all remember that

19    that was a -- what would be carefully described as a pretty

20    small number of documents.  I can make those available to the

21    plaintiffs, and whether they're the same as being offered by

22    defendants or not, I -- I'm somewhat concerned to know whether

23    that is a -- isn't a resolution that takes care of plaintiff's

24    problem.

25            MS. MORRIS:  Your Honor, this is Maria Morris.  I'm

1    not actually certain I understand what you have, and so I can't

2    be sure what -- whether it would resolve our problem or not.

3              What is important to us is that, you know, as --

4              THE COURT:  Well, counsel, if you're not sure what

5    the Court has, it makes me wonder if you're sure what --

6          (Telephone recording speaking.)

7              THE COURT:  I trust that got fixed, whatever it was.

8              THE CLERK:  Can I have everybody say who's still on

9    the line?

10         (Telephone recording speaking.)

11             MS. O'BANNON:  Danielle --

12             THE CLERK:  I'm sorry, is Samantha Tama still there?

13             MS. TAMA:  Yes.

14             THE CLERK:  And is Maria Morris still there?

15             MS. MORRIS:  Yes.

16             THE COURT:  And I'm still here.

17             THE CLERK:  Does anybody know where the voice mail

18   prompt is coming from?

19         (Telephone recording speaking.)

20             ALL COUNSEL:  No.

21             THE CLERK:  Judge, would like me to hang up and try

22   everyone -- conferencing everybody back in?

23             MS. MORRIS:  That sounds like it might be the end of

24   it.

25             THE COURT:  Well, Casey will you do roll call one

1  more time, and then we'll go on from there unless it looks like

2  something's wrong.

3        THE CLERK:  Samantha Tama, are you present?

4        MS. TAMA:  Yes.

5        THE CLERK:  Renju Jacob, are you present?

6        MR. JACOB:  Yes.

7        THE CLERK:  Danielle O'Bannon, are you present?

8        MS. O'BANNON:  Yes.

9        THE CLERK:  Charles Antonen, are you present?

10        MR. ANTONEN:  Yes.

11        THE CLERK:  Maria Morris, are you present?

12        MS. MORRIS:  Yes.

13        THE CLERK:  Thank you.  That's everyone, Your Honor.

14        THE COURT:  Thank you.  Okay.

15        MS. MORRIS:  Your Honor, if I may answer your

16  question?

17        THE COURT:  Yeah.

18        MS. MORRIS:  This is Maria Morris.  We had -- we

19  looked at this at the disk, and found no native files.  We sent

20  it to our vendor and our vendor -- who would normally do the

21  process of uploading as sort of a -- from an objective coding

22  from some of the codes in the documents, and then they

23  confirmed to us that it was all tif files, no native format

24  whatsoever.  But that's the basis of our knowledge that there

25  are no native files.

1    THE COURT:  And what's the problem with that from

2    your perspective?

3    MS. MORRIS:  That in order to get the documents to

4    the point where the -- where we would have basic, sort of

5    objective information, what the title of the document is, what

6    type of document it is, what -- who made it when it was -- when

7    it was created, these sorts of things, which is sort of a

8    starting point for review, that will -- that process, when you

9    are going from a tif -- from a set of tif files, we are told

10   will take a minimum of a week and a half, and that's with our

11   agreement with the vendor that they're going to be working at

12   all hours.

13    Whereas, had these documents been produced in a

14   native format, that whole process would take only about four to

15   eight hours and --

16    THE COURT:  Well, you've been produced the documents

17   in the tif manner, haven't you?

18    MS. MORRIS:  Now or in the past?

19    THE COURT:  In the past?

20    MS. MORRIS:  In the past we have, and in the past,

21   two weeks didn't matter as much as it does now.

22    THE COURT:  Well, see, you had me convinced otherwise

23   at several times in the past, I can tell you that.

24    MS. MORRIS:  And at the time that it was critically

25   important that it be quick, in my understanding from speaking

1    with -- from Lori Rifkin, is that we did get -- we did come to

2    you and say we need them quicker, and we got them quicker.

3    She's looking at me like I'm wrong.  Let her speak.  I'll let

4    her speak.

5         MS. RIFKIN:  Your Honor, last year when we were going

6    through a similarly time pressured summary process before it

7    was stayed, we entered into the stipulation with defendants

8    about the way the documents would be produced.  That was the

9    rolling -- the whole rolling production schedule stipulation.

10        And in that stipulation, defendants agreed to provide

11   us with files in both tif and native format.  The reason we

12   requested that was because last year we were on the accelerated

13   discovery schedule, and in order for the documents to be in a

14   format where we would be able to review them in any kind of

15   time sensitive manner, we needed them in the native format, and

16   they were produced.  Defendants did produce them to us in the

17   native format.

18        Defendants stopped producing them to us in the native

19   format when they produced them earlier this year when discovery

20   was stayed, and we were not in the same time critical situation

21   that we are now.  At this point we have expert reports due this

22   Friday, and depositions starting next week, and obviously, the

23   documents the defendants held back just by your orders and the

24   orders of the three-judge court, are those that are very

25   critical for us for use in those depositions.  Some of the

14

1   deponents are the people whose documents these were, and that's

2   why this is more important to us at this point.

3           MR. ANTONEN:  And Your Honor, the reason that

4   the -- this is Charles Antonen on behalf of defendants -- is

5   the purpose for plaintiffs agreed to accept tifs of the de-

6   privileged documents of the linking issue with the native

7   documents.  I know that Renju can speak at more depth about the

8   reason why we've -- you know, the parties agreed that tifs

9   would be sufficient for de-privileged documents is that there

10  may be attachments, or the original e-mail may have been

11  privileged, but the attachments were de-privileged, and when

12  you do a native production, you get the whole kaboodle.  But

13  with the tifs you can be more selective as to which specific

14  documents were de-privileged.  And so from a logistical

15  standpoint, that's what the parties agree to do, and that's how

16  the parties have been acting over the entire year.

17          MS. MORRIS:  Your Honor, if I may?  This is Maria

18  Morris.

19          I think that there is a significant distinction

20  between documents over which defendants decided that they

21  should not be asserting privilege and other documents which

22  they continued to assert privilege, and we challenged, and we

23  prevailed.  I think there is a great distinction there.

24          I also think that the stipulation remains in effect,

25  and they agreed to produce in native and image file, and it's

1   true that we have not been objecting because time was not of

2   the essence, but it is now, and if they had produced these

3   documents at the time that they were ordered to produce them,

4   then we wouldn't be coming to the Court about the fact that

5   they produced them in tif, because we would have the time to

6   review them, but now we don't because they delayed.

7           And another think I'd like to point out in terms of

8   the question of whether additional documents might be provided

9   that are, in fact, privileged.  There's a call-back agreement

10  on -- that covers that problem.  They don't need to worry about

11  us being able to use privileged documents that get turned over

12  in this process.

13          We feel very strongly that given the improper

14  assertion of privileges, given the orders requiring them to

15  produce them and their delays, we should not be the ones that

16  are prejudiced by their delay, and then their production in

17  this format that violates the stipulation and that makes it

18  impossible for us to get these reviewed in a timely manner in

19  order to use them in depositions.

20          MR. JACOB:  Your Honor, this is Renju Jacob on behalf

21  of the defendants.  I just wanted to alert the Court that the

22  issue -- the documents that remained privileged are more than

23  just the documents that are identified in Exhibit B of the

24  Court's April 14th, 2008 order.  There are many documents that

25  are still privileged under the official information, privacy,

1    attorney/client and attorney work product privileges that have

2    never been brought before this Court.

3         To the extent that any of these documents are

4    attachments to documents that we produced, and we are required

5    to produce them in native form, defendants producing that

6    wholesale will be producing the documents that are currently

7    privileged, and we ask the Court to allow us to protect the

8    documents that are still privileged.

9         Providing these documents in tif format allows

10   plaintiffs to review the documents and analyze the documents.

11   They've been doing this for at least six months now, and when

12   the Court is trying to balance the interests here as to whether

13   or not defendants should be providing privileged documents

14   versus whether or not plaintiffs -- if they're saying it takes

15   another week and a half to fully analyze the documents, I think

16   that balance should lean toward the defendants' interest

17   because we are dealing with serious privileges, particularly

18   the attorney/client privilege which has never been brought

19   before the Court, but in some instances in Exhibit B of the

20   Court's April 14th order has been affirmatively upheld by this

21   Court.

22        MS. MORRIS:  Your Honor, I think it's -- this is

23   Maria Morris.  I think it's critical to remember that while

24   it's possible to say, oh, what's a week and a half -- this is a

25   week and a half in a -- in what is four weeks of remaining

1   discovery.

2          All of the depositions are going forward.  There are

3   numerous documents, and we believe -- there are numerous

4   documents among these documents that we need to be able to use

5   to -- to use in depositions, to question people, what is this

6   document?  What does it mean?  Does it say this?  This is an

7   important part of the discovery process.

8          And we've brought the question before the Court

9   months and months ago, and the Court ordered these things

10  produced, and --

11          THE COURT:  Counsel.

12          MS. MORRIS:  -- it seems to me that --

13          THE COURT:  Counsel.

14          MS. MORRIS:  -- defendants chose not to produce them

15  when they were told to produce them, and now they might end up

16  producing things that are privileged but that they can get

17  back.

18          I think that the burden -- the problem should be on

19  them, not on plaintiff, and right now, because of the way

20  they've produced it, the prejudice is landing on the plaintiff.

21          MR. ANTONEN:  Your Honor, Charles Antonen again on

22  behalf of defendants.

23          THE COURT:  Well, just a moment, Mr. Antonen.

24  The -- I must say my -- I gather there is no concern by the

25  plaintiffs that the defendants are providing them -- provided

18

1  them with the material which is responsive to this Court's

2  order.

3        MS. MORRIS:  Honestly, Your Honor, we don''t know

4  yet.

5        THE COURT:  All right.  If that is a concern, then

6  I'm prepared to make available to -- in my library in chambers

7  starting tomorrow the documents which defendants -- in-camera

8  with the exception of --

9        MS. MORRIS:  I'm sorry, Your Honor, but I -- the

10 phone seems to be cutting out, and I'm not able to hear what

11 you're saying.

12       THE COURT:  Okay.  Well, let me start again.  That

13 I'm prepared to make available to you in chambers tomorrow all

14 the documents which I've reviewed in-camera with the exception

15 of that limited number as to which I found there was no valid

16 claim of privilege.  I mean, excuse me, which I found there was

17 a valid claim of privilege.

18       If that assists in your problem, that's great.  If

19 not, my concern is that the problem of compliance with the

20 Court's order -- the speed with the -- of the compliance with

21 the Court's order is really a two-headed problem, and I

22 expressed myself on that somewhat last Thursday, and I'm still

23 of the view that I'm essentially irritated at everyone that we

24 got ourselves into this last minute pickle when it was totally

25 unnecessary.

19

1       MR. JACOB:  Your Honor, this is Renju Jacob on behalf

2  of the defendants.  To alleviate plaintiff's concerns and the

3  Court's concerns as to what documents were produced, I can

4  either assert in open court what disk goes to what, or I can

5  provide plaintiffs a listing of what disk goes to what document

6  in your orders.

7       THE COURT:  I don't understand anything you just

8  said.

9       MR. JACOB:  Your Honor, I'm just trying to articulate

10  if plaintiffs are concerned that the production that defendants

11  made on August 11th, 2008 is not responsive to your orders of

12  April 14th, 2008, and May 2000 -- May 29, 2008, defendants are

13  prepared to demonstrate how the production is responsive to

14  those orders.

15       MS. MORRIS:  Your Honor, that would, in fact, be

16  helpful, but it's -- we have not gotten to the point where

17  we're able to say, oh, we're concerned that they didn't provide

18  us with all the documents, this is -- that we're having a sort

19  of a threshold problem of we can't get to the documents in a

20  timely manner.

21       If we come to your chambers to review the documents,

22  I'm not sure how that -- would we then take them from you

23  somehow?  I'm not clear how that would work in terms of us

24  being able to review them, because I don't think you want to

25  have us in --

1    THE COURT:  I stated inspect and copy, counsel, and

2    if you -- I'm sure you have somebody on your side who can

3    figure out what that means, and no, I'm not going to deliver up

4    the material which this Court used for its in-camera review,

5    thank you.

6         The -- we'll -- but those will be available if you

7    think it's necessary, and if you -- or even advisable.  But if

8    you do that, I want you to notify my chambers, and I'm well

9    aware of the fact that you know how to contact chambers and

10   notify them about your desire.

11   MS. MORRIS:  I'm sorry, I will have to talk with

12   someone about -- I mean, would it be -- are you saying that we

13   would be able to copy onto disks the documents that you found

14   to be privileged?  Not privileged, sorry.  But not privileged?

15   THE COURT:  The -- they're available for inspection

16   and copying.  Some of those documents are in paper form.

17   MS. MORRIS:  Right.  And we certainly don't -- we're

18   not objecting to ten files of paper documents, that seems like

19   a perfectly reasonable thing.  What we're concerned about is

20   electronic documents that were electronic before they became

21   tif, and having electronic versions of those documents which is

22   what defendants originally agreed to produce when -- in the

23   whole production.

24   THE COURT:  Well, if you -- it sounds to me as if you

25   are disinclined to review the documents which are in the

1  Court's possession, and which are there available for

2  you -- and I'm certain --

3          MS. MORRIS:  But we're certainly not going to find

4  any --

5          THE COURT:  Well, now, just a minute.  I'm not

6  encouraging you to do it, because you've got enough work to do

7  without going on something you think's a wild goose chase, just

8  because you think the Court offered it to you, all right?

9          But if you decide to review those documents, please

10  notify my chambers of that at your earliest opportunity so we

11  don't find ourselves sitting there scratching our head while

12  you come by saying, I'd like to review some documents.  Okay?

13          MS. MORRIS:  Yes, certainly.

14          MR. JACOB:  Your Honor, this is Renju Jacob.  The

15  documents that we provided to Your Honor for in-camera review

16  go beyond the documents that were produced and ordered produced

17  in your two orders.  He -- we essentially have -- I believe

18  have provided every single document that are on the privilege

19  logs.  As an alternative, Your Honor, defendants would request

20  that the Court allow defendants to provide all the native files

21  for these documents that -- in a manner that does not

22  compromise our ability to protect solely the documents that are

23  privileged, and we can do that by the end of next week, so

24  August 22nd.

25          THE COURT:  Well, if you want to work out something

1  like that with the plaintiffs, I'll give you an opportunity to

2  discuss that when we're off the phone, but I'm not -- the --

3  I'm not aware that you provided to the Court anything beyond

4  documents as to which you made a claim of privilege, and

5  I'm -- I don't -- I can't imagine what you would be talking

6  about.

7          MR. JACOB:  Yes, Your Honor.  The -- I believe

8  pursuant to the Court's orders back in November of '07, the

9  Court instructed defendants to provide all the documents for

10  in-camera review that are listed on the privilege logs.  Not

11  every single document that are listed on the privilege logs

12  have been brought on a motion to compel by plaintiffs.

13  Therefore, there are many documents that are still privileged

14  that have never been ordered produced by the Court and are in

15  the hands of the Court that were provided in in-camera review.

16          THE COURT:  Well, I have nothing further to say on

17  that point.  I have told the plaintiffs what will be made

18  available to them if it is necessary in order to deal with he

19  current problem.

20          MS. MORRIS:  Your Honor, can I ask one question for a

21  little more clarification so that I will have a better sense of

22  whether we will need to do this?

23          When you said that the documents that you reviewed

24  were -- I think your phrase was electronically interactive, or

25  something along those lines, does this mean that when you

1    opened -- if you got to say a report that was on an Excel

2    spreadsheet that it opened up Excel on your computer and you

3    were in -- you were actually in the spreadsheet, or was it that

4    you opened up the document and saw essentially a picture of an

5    Excel spreadsheet, if you can understand the difference I'm

6    making?

7              THE COURT:  And you're not helping me a bit, counsel.

8              MS. MORRIS:  Okay.  So when --

9              THE COURT:  The --

10             MS. MORRIS:  My understanding of the distinction

11   between a tif file and a native format file, and admittedly,

12   I'm not a computer engineer, when you open up a tif file you're

13   essentially viewing a picture of a document the way it looked

14   in its original format; whereas if you were to open up the

15   native file, then you would actually be opening up the document

16   itself and so, for example, if it were an Excel -- if it were

17   an Excel document, if it were a tif file you would get a static

18   picture; whereas, if it is an Excel native format document, you

19   get the actual spreadsheet, and then you can figure things out

20   with it.  So it's a very different kind of information that you

21   get out of the two types of documents until you then turn the

22   tif back into its original format.

23             And I'm -- what my question is, is whether the

24   documents that you reviewed were tif, which are essentially a

25   picture of the document, or the actual document in its original

24

1  format?

2          THE COURT:  Almost everything I saw, counsel, was

3  either on paper, or was downloaded from a website.  And there

4  you have it.  The -- beyond that, I think we're just beginning

5  to make noise at each other without moving this further

6  forward.

7          MS. MORRIS:  Okay.  Well, we will try to figure out

8  whether it would be helpful to us to come and review the

9  documents or not.

10          MR. JACOB:  And Your Honor, defendants would like to

11  object formally to the -- on the record to that process.

12          THE COURT:  Do you wish to say anything further about

13  it?

14          MR. JACOB:  Just, Your Honor, just to summarize

15  quickly, the documents that the Court has in its possession

16  that defendants provided for in-camera review contained several

17  privileged documents that are still privileged and have never

18  been ordered produced by this Court.

19          MS. TAMA:  Also, Your Honor, this is Samantha Tama

20  for defendants.  The format that you received the documents in

21  is the same format that plaintiffs received the documents in.

22          THE COURT:  Well, now, counsel, if the two of you are

23  going to decide to have a disagreement about what you sent to

24  the Court, I suppose it would be helpful to me if you would

25  figure out who's right and who's wrong, and then you can let me

1    know.

2            MR. JACOB:  Your Honor.

3            THE COURT:  Counsel.  The -- that's going to need to

4    be sorted out further before we go any further in this

5    analysis.  If you want to be present during any review of the

6    Court's documents by the plaintiffs, you certainly may do so,

7    but I suspect it's probably just going to waste everybody's

8    time if --  However, you have that right, and --

9            MS. TAMA:  Your Honor, this is Samantha Tama again.

10   I'm not really sure why defendants need to review -- I'm sorry,

11   why plaintiffs need to review the documents at the courthouse.

12   Plaintiffs have been provided all of the documents that you

13   requested that defendants provide to them.  Only the --

14           THE COURT:  That's wonderful, and I'm grateful for

15   your assurances in that area, but you get to talk that out with

16   them.

17           MS. TAMA:  No, but I don't think that that's the

18   dispute though.  The dispute isn't whether or not we've

19   provided all the documents.  The dispute is the form of the

20   documents.  They want them provided in a different type of

21   form.  The form that --

22           THE COURT:  One that --

23           MS. TAMA:  -- you have is the form that they have.

24   They want something beyond what you have.

25           THE COURT:  Then I'm sure they thank you for the

1  warning.  I gave them the same one myself a little while ago,

2  and I think that' where we are.  And beyond that, this matter

3  is -- the hearing is over, and thank you.

4        MR. JACOB:  Thank you, Your Honor.

5        MS. RIFKIN:  Your Honor, this is Lori Rifkin.  Can I

6  just try one last time to try and clarify what -- why we

7  continue to dispute this?  Is everyone still there?  Nope.

8     (Whereupon the hearing in the above-entitled matter was

9  adjourned at 5:06 p.m.)

10                         --o0o--

11                        <u>CERTIFICATE</u>

12     I certify that the foregoing is a correct transcript from

13  the electronic sound recording of the proceedings in the above-

14  entitled matter.

15

16  _____     August 15, 2008

17  Patricia A. Petrilla, Transcriber

18  AAERT CERT*D-113

19

20

21

22

23

24

25