1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF CALIFORNIA

3                             --o0o--

4    RALPH COLEMAN, et al.,        ) Case No. 2:90-cv-00520-LKK-JFM
                                   )
5                  Plaintiffs,     )
                                   ) Sacramento, California
6         vs.                      ) Wednesday, August, 20, 2008
                                   ) 11:37 A.M.
7    SCHWARZENEGGER, et al.,       )
                                   ) Hearing re: motion for
8                  Defendants.     ) sanctions.
     ─────────────────────────────)
9
                         TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE JOHN F. MOULDS
                   UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For Plaintiffs:              MARIA V. MORRIS
13                                Rosen, Bien & Galvan, LLP
                                  315 Montgomery Street 10th Floor
14                                San Francisco CA   94105
                                  (415) 433-6830
15
     For Defendants:             DANIELLE O'BANNON
16                                Attorney General's Office
                                  455 Golden Gate Avenue
17                                Suite 11000
                                  San Francisco, CA   94102
18                                (415) 703-5500

19   Court Recorder:             (UNMONITORED)
                                  U.S. District Court
20                                501 I Street, Suite 4-200
                                  Sacramento, CA   95814
21                                (916) 930-4193

22   Transcription Service:      Petrilla Reporting &
                                     Transcription
23                                5002 - 61st Street
                                  Sacramento, CA   95820
24                                (916) 455-3887

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1

1    SACRAMENTO, CALIFORNIA, WEDNESDAY, AUGUST 20, 2008, 3:08 P.M.

2

3         THE CLERK:  Calling Civil Case 90-0520-LKK, Coleman

4    v. Schwarzenegger, and this is on for motion for sanctions.

5         THE COURT:  And a few other matters too.  Would

6    counsel please state their appearances?

7         MS. O'BANNON:  Yes.  Danielle O'Bannon on behalf of

8    the defendants, Your Honor.

9         THE COURT:  Good morning.  Good afternoon.

10        MS. O'BANNON:  Good afternoon.

11        MS. MORRIS:  Good afternoon, Your Honor.  Maria

12   Morris on behalf of plaintiffs.

13        THE COURT:  Good afternoon.

14        I do believe this is -- these are your motions.

15   discovery you wish to be heard?

16        MS. MORRIS:  Certainly.  One issue I would like to

17   address is why we brought a sanctions motion rather than a

18   motion to compel, which defendants raised in their brief

19   yesterday.  And -- as far as the privilege log questions go,

20   that would be the recent --

21        Basically, we brought it as a sanctions motion

22   because we didn't think it was appropriate that we even needed

23   to bring a motion.  There -- the language that was used in the

24   declaration supporting the deliberative process assertions was

25   precisely the same language that you had ruled to be

1    inadequate, and when we raised this with defendants we were

2    told they didn't agree, and we thought that was improper, and

3    we didn't think that we should be required to go through the

4    hurdle of bringing a motion to compel again when this had

5    already been briefed extensively, and defendants had lost on

6    that point.

7         Secondly, the meet and confer process was rendered

8    something of a futile exercise.  We tried for two weeks to meet

9    and confer and we identified the specific documents under the

10   attorney/client privilege that we considered to be problematic

11   assertions of privilege from what the log said, and we weren't

12   able to get the defendant's counsel who were participating in

13   the meet and confer at that point didn't go and get the

14   documents, so they couldn't look at the documents and say to

15   me:  yes, you're right; no, you're wrong, this is what it said.

16        And then -- and similarly we had asked what about the

17   declarations for the June 10th log, and we couldn't get an

18   answer as to whether or not there in fact were declarations for

19   the June 10th log.

20        THE COURT:  Let me stop you there for a moment, if I

21   might.  With regard to the June 10th log, I think we've been

22   told that that matter has been resolved.  Am I wrong about

23   that?

24        MS. MORRIS:  It is almost entirely resolved.  The

25   deliberative process --

3

1          THE COURT:  Well, it --

2          MS. MORRIS:  The deliberative process on the June

3     10th log is resolved, and I believe almost all of the

4     attorney/client privilege assertions have been resolved.  Ms.

5     O'Bannon and I, we had a very good meet and confer last Friday

6     and Monday, but we actually didn't discuss what it meant when

7     we -- when she looked at a document and said, no, I think this

8     is privileged but it was one of the documents that we had

9     challenged.  So there are --

10          THE COURT:  Well, just a moment.  Let's go off track

11     for just a moment, and I don't want to intrude on your argument

12     time, but if we've got something settled, I'd like to know what

13     it is, and if we don't have something settled, you probably

14     want me to know that it's not settled.  So, what's going on?

15          MS. O'BANNON:  Well, she's correct in regards to the

16     deliberative process documents.  Those have been produced to

17     plaintiff's counsel yesterday, as it relates to the June 10th,

18     2008 logs.

19          THE COURT:  Okay.

20          MS. O'BANNON:  Some of the attorney/client documents

21     have been resolved.  We have produced those to plaintiff's

22     counsel yesterday as well.  The documents -- the five or six

23     documents that --

24          THE COURT:  Which is it, five or six?

25          MS. O'BANNON:  Well, I can count them.  There were a

1    couple of documents that plaintiffs identified in their

2    supplemental motion that weren't part of the meet and confer

3    and weren't part of their motion, so --

4                MS. MORRIS:  Seven documents.

5                THE COURT:  What?

6                MS. MORRIS:  It's seven documents on the June 10th

7    log that remain at issue.

8                THE COURT:  Well, are you moving to compel those, all

9    seven?

10               MS. MORRIS:  Yes.  Yes.

11               THE COURT:  And you think --

12               MS. O'BANNON:  They're attorney/client privileged,

13   Your Honor, so I --

14               THE COURT:  Just a moment.  I didn't know whether you

15   were saying that they had failed to move on those documents?

16               MS. O'BANNON:  No, they did fail to move on the

17   documents.  There are two documents that they didn't address

18   and weren't in the meet and confer.  They're document numbers

19   E001-00315 and E001-00346 that were not part of the meet and

20   confer and were not in the original moving papers, which I have

21   not reviewed and cannot address to the Court today.

22               Other than those, Your Honor --

23               THE COURT:  I gather, then, there are five documents

24   as to which you're agreeing that you're fighting, and two

25   documents as to which the defendants believe there's no motion

1    before the Court.

2           MS. O'BANNON:  Correct, Your Honor.

3           THE COURT:  Okay.  What are the five?

4           MS. O'BANNON:  That we're fighting over?  Just give

5    me one second, I can give you those numbers.

6           THE COURT:  Sure.

7           MS. MORRIS:  I can actually -- I've got them.

8           MS. O'BANNON:  Do you have them?

9           MS. MORRIS:  Yes.  It's E001-00148.

10          THE COURT:  Now, are the rest of them going to be all

11   001-00 --

12          MS. MORRIS:  All same through the zeros, through the

13   E001-00 --

14          THE COURT:  So you give me the last three digits, all

15   right.

16          MS. MORRIS:  274 through 276.

17          THE COURT:  Just a second.

18          MS. MORRIS:  Okay.

19          THE COURT:  274, and the next one was what?

20          MS. MORRIS:  Through 276, so 274, 75, and 76.

21          THE COURT:  You're not the first lawyer who can talk

22   faster than I can write, but you're doing -- you're certainly

23   approaching the record.  274, 75, 76?

24          MS. MORRIS:  Um-hmm.

25          THE COURT:  That's four, where's the other one?

6

 1          MS. MORRIS:  278 -- I think we've got six -- 278, and
 2    then there's also 316.
 3          MS. O'BANNON:  I believe 148.
 4          MS. MORRIS:  Um-hmm.
 5          MS. O'BANNON:  Entry 148 may not even be on the logs.
 6          THE COURT:  And are the parties agreed -- excuse me,
 7    are the parties apart on whether 315 and 346 are even before
 8    the Court today, and are you agreed that these documents 148,
 9    274, 275, 276, 278, and 316 are all properly before the Court
10    today and you do not agree?
11          MS. O'BANNON:  I'm not certain about 148.  I need to
12    take a look, Your Honor, because I don't believe that's at
13    issue.
14       (Pause - counsel conferring.)
15          MS. O'BANNON:  Okay.  It wasn't in plaintiff's moving
16    papers, Your Honor, I apologize.
17          THE COURT:  It was, you said?
18          MS. O'BANNON:  It wasn't.
19          THE COURT:  All right.  Thank you.  All right.  Now,
20    Ms. Morris, back to you.
21          MS. MORRIS:  Okay.  So we were unable to get some
22    pretty basic information through this meet and confer process
23    that we engaged in, or tried to engage in for about two weeks,
24    and given the time frames, given the histories of the privilege
25    logs and production therefrom in this case, we thought it was

7

1  time to move, and that it was inappropriate that we should have

2  to bear the cost of bringing a motion, and that what we needed

3  was a motion for sanctions to get it underway, make it clear

4  that this was a problematic situation, get the documents

5  produced, and have the Court -- have it brought to the Court's

6  attention that these are not issues that ought to be still

7  before the Court at this late date, given all of the hearings,

8  all of the briefing, all of the orders on these issues to date.

9         THE COURT:  All right.  The -- that goes to what I

10  think of as motion number two on today's proceeding.  With

11  regard to the question of the format of the most recent

12  production, were you going to address that in argument?

13         MS. MORRIS:  The -- I think the only issue on that

14  really outstanding is whether there was an agreement to change

15  the agreement that the parties had reached.

16         THE COURT:  Well, I have a question that may or may

17  not be preliminary to that.

18         During the telephone conference which set up

19  this -- or at least led to this date, there was a concern,

20  express concern, and speed necessary to convert the latest

21  productions to native format, and I believe the plaintiffs were

22  telling me that your -- the persons with whom you were

23  contracting for this transfer were going to charge you a bundle

24  of money, and it was going to take about a week and a half, and

25  the defendants were saying they didn't have to produce it in

8

1    the format you were seeking, but it could be done by their

2    people in about a week and a half.

3            Given the stated urgency, I -- it left me wondering

4    what anybody was going to do since a good chunk of that week

5    and a half was going to be gone by the time we met in this

6    hearing, and then the first question I'm having is, is that

7    then mooted because you've been steaming ahead, or are you

8    still sitting in status quo?

9            MS. MORRIS:  We are not still sitting in status quo.

10            THE COURT:  So are you, in fact, asking to get

11    it -- to get the documents in the native format from them,

12    which might be longer than will take you for your vendor to

13    produce, or have we moved on beyond that?

14            MS. MORRIS:  I think at this point it still would be

15    useful to us to have the documents in native format.

16            THE COURT:  Well --

17            MS. MORRIS:  That -- what we have done is we have

18    moved on.  We didn't -- we weren't going to sit and wait around

19    for a week for a decision for any additional decisions to be

20    made.  So what we did was very much an imperfect work-around.

21    Ordinarily what happens with documents of this sort as

22    essentially the document gets sent to the vendor, and then the

23    vendor turns it into a searchable format, which is not as

24    useful as the original format could be.  It still doesn't have

25    the same kind of functionality that the original document would

9

1   have.

2          And then what the vendor would do would be to

3   essentially have people -- they out source -- they have people

4   who look at the face of the document and enter in codes, who

5   the author of the document is, where the document came from,

6   what the date of the document is.

7          So a lot of this information that could with a native

8   format document just simply be pulled out of the document

9   automatically, as to be entered by hand.  We decided to forego

10  that stuff, because that was going to be the most time

11  consuming part of the process.  But as a result, we've got

12  significantly less information about these documents than we

13  would ordinarily have when we're going through the review

14  process.

15         So that's how we were about to get around this delay

16  that we really couldn't afford at this point.  And so we have

17  the documents in a much less useful form than we would have if

18  they were native format documents.  We would still like to get

19  them as native format documents.  We don't know at this point

20  if we'll be able to use them as native format documents in the

21  depositions, or for all of the depositions because they're

22  coming up so quickly, but we would still be able to use them

23  moving forward, preparing for trial.

24         THE COURT:  Well, thank you for updating me.

25         Now, you were starting your argument on this.  Did

1    you have anything further?

2         MS. MORRIS:  I think -- and so what we understand

3    defendant's position to be essentially is that we agreed to

4    this, but we've been talking about this amongst ourselves, and

5    trying to figure out what it is that they're talking about, and

6    we haven't been able to figure it out, really, because we

7    didn't agree to it.

8         The recollection of the person from Rosen, Bien &

9    Galvan, she put it into her declaration yesterday, is that at

10   the conference with Your Honor in December, what was discussed

11   was the format of the privilege logs themselves, not of the

12   documents to be produced, because tifs for a privilege log,

13   give that those were such large privilege logs, they weren't as

14   useful as they would be if they were Excel documents, the way

15   they were originally created.  So we wanted to get them in

16   original -- in native format, and that was our understanding of

17   the only format issue that was discussed at that hearing -- at

18   that conference.

19        And then in the hearing transcript described and

20   submitted for the hearing in January, all that was said was

21   we're willing to have them redact, but I don't think any of the

22   people in this room really are technology experts.  We're

23   willing to say yes, they can redact.  That doesn't mean that we

24   should be deprived of information to which we're entitled.

25        So to us, our position is that November 2nd

1  stipulation in which they said they'd produce the documents

2  responsive to the first and second set of requests would be

3  produced in native and image format.

4          THE COURT:  Ms. O'Bannon, did you wish to be heard?

5          MS. O'BANNON:  Yes, Your Honor.  A number of issues

6  on that particular subject, Your Honor.

7          THE COURT:  Well, you -- both of those subjects are

8  before you at this point.

9          MS. O'BANNON:  The native format -- in regards to the

10  native format, plaintiff's counsel keeps alluding to the

11  stipulation that was entered.  The stipulation between the

12  parties were -- was specifically related to the rolling

13  production of November 1st, '07 through November 30th, '07, and

14  it related specifically to the request for production of

15  documents one and two.  And if you took a look at the

16  stipulation on page 3, it specifically says that.

17          THE COURT:  Are you talking now about the production

18  of documents which finally concluded last week after the

19  request for reconsideration had been decided against defendants

20  and both of your appeals to the circuit had been denied?

21          MS. O'BANNON:  Yes, Your Honor.  Both documents were

22  produced to plaintiff I believe on August 11th, 2008.  In

23  regards to those, that is correct, there was a stipulation in

24  regards to the forming of the documents.  It's my understanding

25  and the Court also has a declaration from the head of our

1  department which indicated the privileged documents -- the

2  documents that are determined to be privileged that were coming

3  out of that production would be produced in tif, and the reason

4  why was in native format you cannot redact a document in native

5  format, so you just can't produce that document and wipe out

6  something off of it.  So in regards to that, that was the

7  agreement of the parties.

8      The productions that were received hereafter have all

9  this year been in tif, and plaintiff's counsel has never

10 complained to defendant's counsel that we should produce them

11 in another format.  It wasn't until they received the documents

12 on the 11th that they brushed -- broached this subject with us

13 indicating they had to have it in native format.

14     The reason why we can't produce the privileged

15 documents in native format, at least the ones that are

16 attached -- that have attachments, because attachments may be

17 privileged, we can't produce those in native, because if you

18 do, the length to that attachment still would be present, and

19 plaintiff's counsel can still access those.

20     So in regards to those particular documents, those

21 cannot be produced in tif.  In regards to what have -- what

22 we've been doing, in regards to that, we did make a

23 representation to plaintiff and we did make a representation to

24 the Court on Thursday's hearing that there is some type of

25 medium here, and what we can do, we can, if the Court requires

13

1   us to, is produce the documents in native format.  However, we

2   still want to protect the privilege of the documents, of

3   attachments, those can't be in true native format, but we can

4   produce them in a format that is greater than a tif document

5   that plaintiffs currently have.

6        We have been talking to our vendor, they can complete

7   that process and we can actually give it to -- get those

8   documents to plaintiff's counsel, if the Court orders, by

9   Monday of next week.  So that's August 25th.

10       But I just want to make sure that the Court -- it's

11  clear to the Court that the documents as produced were produced

12  in the same format as they have been all year.  There hasn't

13  been any complaints about those documents.  Plaintiff's counsel

14  has been able to look and review those documents, although, not

15  in the way they want to look at them.

16       But they have been able to look at them, they can

17  print them, they can do things with these documents in tif, and

18  defendants don't believe that they should be sanctioned, or

19  forced to produce documents in that manner when this is the

20  first time this has come up this year in regards to plaintiff's

21  counsel.

22       THE COURT:  Did you wish to be heard now about the

23  matters of the June 10th and August 5th production?

24       MS. O'BANNON:  Regarding the attorney/client --

25  which -- I'm sorry, Your Honor, there's so many productions.

1          THE COURT:  Well, I believe on calendar today are --

2          MS. O'BANNON:  The first -- if the first -- the first

3     issue plaintiff talked about --

4          THE COURT:  Excuse me, usually when the judge is

5     talking --

6          MS. O'BANNON:  I did not mean to interrupt you, Your

7     Honor.

8          THE COURT:  I know.  But I believe before the Court

9     today are the motions concerning the June 10th documents as to

10    something between six and eight documents which are before the

11    Court, and then the August 5th documents as to which there has

12    been no agreement.  And if you wish to address those, this is

13    your chance to do that.

14         MS. O'BANNON:  Okay.  Thank you.  In regards to the

15    June 10th, 2008 attorney/client privilege documents, those six,

16    I've actually taken a look at those, those documents, each one

17    of the documents that have been -- the defendants have held

18    back as privileged all have attorneys in the recipient and

19    sender lines.  It's shown -- that's also shown on the log.  The

20    content of the document clearly, there's a seeking of legal

21    advice in those particular documents, recommendations for legal

22    advice, and recommendations to go forward in regards to certain

23    legal advice that are contained in those six or seven documents

24    that plaintiffs are complaining about.

25         The defendants feel that they have a right to protect

1    the privilege that are contained in those particular documents

2    because they do express legal opinions, recommendations and

3    legal analysis.  In regards to those particular ones, we feel

4    that those should be kept privileged.

5             I don't know what else to say further regarding those

6    documents unless the Court wants those -- take a look at those

7    particular entries and see if the Court agrees with our

8    definition of privilege on those particular documents.

9             THE COURT:  The August 5th documents deal both with

10   attorney/client and deliberative process privilege, I believe.

11            MS. O'BANNON:  Yes, they do.  I'll address the

12   attorney/client one first, because the same argument applies to

13   the attorney/client one in the August 5th, 2008 log.  I did

14   actually take a look at those.  I participated in the meet and

15   confer with plaintiff's counsel this Monday in regards to

16   those, and again, those particular documents do contain

17   privileged communications between an attorney and their clients

18   in regards to legal advice, recommendations and analysis.

19            THE COURT:  Well, the plaintiff's counsel today said

20   that the declaration claiming the privilege was identical with

21   the declaration which was before this Court more recently in

22   which you quite within your rights and reasonably sought

23   reconsideration before the District Court.

24            You were rejected without any modification of this

25   Court's order.  The you sought review in the circuit by

1    mandate, and the circuit denied you -- oh, I guess last Friday.

2         MS. O'BANNON:  Yes, last Friday, Your Honor.

3         THE COURT:  About the same time I had -- I think that

4    was the day after I had had a little chat with all the lawyers

5    in court about who on earth was sitting on those documents

6    since there was no authority for a stay from the time after the

7    District Court granted it's request for reconsideration, or

8    heard the request for reconsideration.

9         MS. O'BANNON:  Those documents have to do with the

10   June 10th, 2008 logs which have been produced to plaintiff's

11   counsel, which I believe you already addressed.

12         In regards to the August 5th, 2008 log, the

13   deliberative process privileges is what we're discussing now,

14   which is the next subject.  That's what the declarations

15   pertain to.

16         The declarations -- the supplemental declarations

17   that were submitted in support of the August 5th, 2008 log, the

18   defendants feel they are more substantive than the ones that

19   were presented to this Court previously when we had these

20   discussions on the other logs, at the other times.

21         We have three separate department heads that are

22   testing that they've actually reviewed and considered these

23   particular documents.  The declarations themselves identify

24   categories of documents that each department would consider

25   privileged or confidential, the type of documents these are.

1    Also in the declarations there's actually --

2            THE COURT:  I must confess, I'm interested in what

3    the word "review" means in that context.

4            MS. O'BANNON:  We actually provided all the

5    declarants with all the documents, Your Honor.

6            THE COURT:  Well, that's a start, but did they read

7    them?

8            MS. O'BANNON:  Yes, they read them, Your Honor.  I

9    would not have a declarant attest in a declaration that they

10   received them, but not reviewed them, and the declarations say

11   that they reviewed them.

12           THE COURT:  Well, I've reviewed a lot of documents in

13   my day.  Maybe my life is a little different from theirs, but I

14   know how to spell the four letter word, and could say read, if

15   I'd actually read a document.

16           MS. O'BANNON:  Well, if the Court actually looks at

17   these documents, even the declaration of David Reynolds, it's

18   clear -- there's categories of documents that are listed in

19   there.  They're Bate numbered documents referenced to those

20   categories.  There are statements in the declarations that

21   specifically state what types of documents these are, why a

22   privilege would apply, and what that department does and how

23   they consider these particular documents.

24           So in that respect, I don't -- defendants wouldn't

25   feel that that's just a I received the documents and looked at

18

1  them and I signed the declaration.  They were actually

2  submitted to these individuals, these individuals participated

3  in the process, and that's how we came up with these

4  declarations.

5        These declarations are more sufficient than the past

6  declarations that the Court has had problems with.  The

7  defendants have tried to correct those problems, and we believe

8  that these declarations have successfully corrected those

9  issues that were -- that arise previously.

10        Th declarations also addressed not only the

11  privileged nature of the documents but the confidentiality of

12  some of these documents.  They also addressed the pre-

13  decisional issues in regards to these particular documents.

14  What documents were advisory opinion, recommendation,

15  deliberations and so forth.

16        So we believe that these documents are sufficient to

17  support the deliberative process privilege that are contained

18  in he August 5th, 2008 log, and we would ask the Court to

19  please consider and review these new declarations and rendering

20  its opinion in regards to whether or not we're following along

21  the same line that we were doing previously.

22        THE COURT:  Thank you, counsel.

23        MS. O'BANNON:  Thank you, Your Honor.

24        THE COURT:  Anything further for plaintiffs?

25        MS. MORRIS:  I'd like to clarify a little bit.  The

1   document -- the new declarations are not perfectly identical to

2   he prior declarations; however, some of the very same

3   shortcomings that you referenced in your prior orders are still

4   the same.  For example, the declarations still say as a general

5   matter for various groups -- or various types of documents

6   without discussing the ones that the declarant states that they

7   personally reviewed.  They simply say, these materials are

8   maintained as privileged and confidential.

9          That's the same general averment that these are

10  confidential that you previously held to be inadequate.

11         Secondly, there's a little bit of a complication with

12  the declarations that I feel needs to be made perfectly clear,

13  which is that there were declarations submitted with the July

14  24th log, and then there were -- then there was a new log on

15  the 5th of August with supplemental declarations.

16         The supplemental declarations and the August 5th log

17  includes all the documents from the July 24th log, and those

18  are the first 90 or so documents on the August 5th log.

19         The supplemental declarations that were submitted

20  with the -- on the 5th, they do -- they have addressed one of

21  your concerns, at least somewhat, in that they identified

22  specific documents to which -- that go within categories by

23  document I.D. number.  However, the first 90 documents on the

24  April 5th log, so nearly a quarter of the log, are not

25  addressed at all in those.

1          THE COURT:  You mean the August 5th log?

2          MS. MORRIS:  Yes.  In the August 5th log, the first

3     90 documents or so, which are the documents that were in the

4     July log, are not addressed -- are not tied to specific

5     statements in any way, just as was the case with the earlier

6     declarations.

7          I hope that made sense, because it took me a while to

8     figure out what was going on in these long discussions with

9     defendant.  So that --

10         THE COURT:  So did that mean you got those documents

11    when you settled the June 10th?

12         MS. MORRIS:  No.  No.  These are documents that

13    remain on the August 5th log, but they were first identified

14    and the declarations were presented in -- on July 24th, and

15    those declarations, which are the only -- which according to

16    defendants are the only declarations that apply to those

17    initial 90 documents on the August 5th log, don't tie any of

18    the statements of the declarants to any specific document,

19    which was one of the concerns that you had had on the prior

20    declaration -- with the prior declarations.

21         THE COURT:  Anything further?

22         MS. MORRIS:  I would like to raise the issue of the

23    inaccuracies in the privilege log.  As we were -- this was not

24    something that was in the original motion, because I had no

25    knowledge of it at that point, but it became clear over the

1  course of the meet and confer as defendants looked at the

2  documents, that a lot of the documents had individuals listed

3  on them that are not listed on the logs describing them.

4        Nearly half of all the documents we looked at had

5  some variation between what was listed on the log as author and

6  recipient, and what was listed on the document itself as author

7  and recipient.  Some of them, it was just entirely wrong -- at

8  least one of them, it was entirely wrong, and then on several

9  others there were just numerous people missing -- one or more

10 people missing.

11       That level of inaccuracy makes it seem to me that

12 there can't be any assurance at all that who received the

13 documents, who sent the documents, how -- and if you don't know

14 that, you can't say that they're confidential.  I don't

15 understand how, with that level of inaccuracy, any privilege

16 can really be upheld.

17       THE COURT:  Ms. O'Bannon, anything further?

18       MS. O'BANNON:  Yes.  I would like to touch on quickly

19 the 1 through 90 documents and the inaccuracies in the logs.

20       THE COURT:  Okay.

21       MS. O'BANNON:  Just quickly I was going to say that

22 the first 1 through 90 documents, I -- although the

23 supplemental declarations don't specifically list them as we

24 did the other stuff in the logs, those 1 through 90 do fall

25 into the same category of documents that are contained in these

22

1    declarations.

2          In regards to the inaccuracies of the logs,

3    defendants don't believe that the log is inaccurate.  The

4    thought -- I've actually taken time -- and to look at the logs,

5    look at the entries in the logs, and the way the log is set up,

6    which if a document has an attachment, an e-mail or something

7    that has attached documents, the parent e-mail, the parent

8    document, as it's listed on the log is completely accurate as

9    it's listed there.

10          However, if there's two attachments to that

11    particular main document, that description is also carried down

12    to the attachment on the log.  So all the documents -- the

13    eight documents in plaintiff's declaration that she listed, I

14    actually went back and pulled those documents, made sure I

15    pulled the parent document to ensure and make sure that as

16    listed on the log, that's what it said, and that's what they do

17    say.

18          And so in that respect, I don't believe that the log

19    itself is inaccurate.  Without going through each of the

20    documents, which I'm sure the Court does not want me to do, but

21    the Court does have those particular documents and the logs,

22    but my declaration also stated that I reviewed those, and I've

23    looked, and as -- if it has a parent in the attachment, then

24    that is completely accurate, and that is what's carried down

25    over, and that may be the issue that plaintiff's counsel may

1    have an issue with.

2          THE COURT:  Thank you.  One matter I meant to address

3    earlier, the -- during her -- during Ms. O'Banion's -- is it

4    O'Bannon or O'Banion?

5          MS. O'BANNON:  O'Bannon.

6          THE COURT:  O'Bannon.  Thank you.

7          MS. O'BANNON:  Yes, Your Honor.

8          THE COURT:  The -- is where she indicated that the

9    documents in native format would be available one day if the

10   Court ordered it.  But I was not clear about what modifications

11   in the format she was contemplating when she said that.  Do you

12   understand what she was saying?

13         MS. MORRIS:  No.

14         MS. O'BANNON:  Just to be clear, Your Honor --

15         THE COURT:  Well, just a minute.  Let's take five or

16   ten minutes now.  I want the two of you to go outside and talk

17   about that and -- because from what was said then, I had no

18   idea what was being proposed, and I'd really hate to leave the

19   bench on this argument even dumber about computers than I was

20   when I started.  All right?  So, I'll just -- take 5 or 10

21   minutes and -- well, let's call it take 10 minutes, and then

22   we'll be back.

23       (Recess from 3:46 p.m. until 4:04 p.m.)

24         THE CLERK:  Recalling Civil Case 90-520, Coleman v.

25   Schwarzenegger.

1          THE COURT:  We are back in session in Coleman v.

2     Schwarzenegger, and everybody who was here is still here.

3     Welcome back.

4          MS. MORRIS:  Thank you, Your Honor.

5          MS. O'BANNON:  Thank you, Your Honor.

6          THE COURT:  What do we know that we didn't know

7     before?

8          MS. O'BANNON:  I've confirmed that we can produce the

9     documents in native to plaintiffs by Monday.  We have currently

10    been isolating the documents that we had concern over regarding

11    the privilege.  Those documents plaintiff wanted to kind of get

12    a count of those.  We're currently trying to get a count of how

13    many documents that issue would relate to.

14         In regards to only like a cover e-mail that had

15    attachments to it, if there were two documents in there that

16    are not privileged we can produce those in native format to

17    plaintiff.  However, the cover e-mail and that one attachment

18    of a privileged document would have to be -- that e-mail would

19    have to be produced in tif at this time.

20         So we're trying to isolate that now and find out how

21    many documents that really relates to so that plaintiffs will

22    have a better idea if it's going to be a large portion of the

23    documents that are going to be effected instead of a small

24    portion.

25         THE COURT:  Do you have any idea of the order of

25

1  magnitude?

2       MS. O'BANNON:  I have a call into the vendor now, I'm

3  waiting to hear back from them to find out the number of

4  documents.  I don't think it's going to be a huge -- a large

5  number at all, but I can't represent to the Court right now

6  exactly -- or approximately what that number would be.

7       MS. MORRIS:  It sounds much better to us than what

8  we've got so far.  It's hard for me to say exactly without

9  having the numbers.

10       THE COURT:  All right.  Well, needless to say with

11  regard to the -- well, needless to say, so I'm saying it, the

12  matters having to do with the documents which have been

13  produced to the Court for in-camera review, and the

14  declaration, and the motion to compel production styled as a

15  motion for sanctions, I believe, those I'm  -- I have more

16  looking to do.

17       I hope I would have a decision for that on that one

18  shortly, but I want to give you a decision today with regard to

19  the motions concerning the format of the recent production, and

20  I will be sending you a written order on this very shortly, but

21  the reason I'm telling you this is because we are under some

22  time constraints.

23       All counsel may have seen some indications in recent

24  actions of the three-judge court that indicate that there may

25  be some modification sin the scheduling order coming up, but I

26

1    will tell you with both candor and complete accuracy at the

2    moment, you know at least as much as I do about that, and

3    perhaps more, because I've had no communications with the

4    three-judge court on the schedule, and from my perspective, the

5    schedule still is in place.

6         I have no idea what the temporary stay on the

7    Governor's deposition is going to have on the scheduling, but

8    I'm proceeding as if the schedule is in place, and will remain

9    in place, and I think that's the prudent thing to do, and I

10   would imagine that that's the prudent thing for all counsel to

11   be doing as well.

12        That said, the -- there was a written stipulation by

13   the parties in this case that the documents which were a

14   portion of the production which was just completed last week

15   would be provided in native format, and I believe native --

16   native and imaging I think was the language, but I suspect

17   you're both more familiar with that language than I am.

18        The -- I see nothing from which to conclude that that

19   was modified -- that that was a modification and was

20   subsequently changed.  And if it has been changed it would have

21   been very prudent for counsel to have changed a writing --

22   changed a document like that in writing with another document

23   in writing.

24        Instead, I'm confronted with a declaration from one

25   lawyer who says it didn't happen, I was there, I don't recall

1   anything like it, and another lawyer who's saying, well, we

2   talked about something which would lead to the inference that

3   we must have changed it, and we did some other things in a

4   different manner, neither one of which, I think, changes the

5   stipulation.

6           And Rule 34 gives you the authority to make those

7   changes in writing by agreement, if that's your choice, and it

8   also spells out where things land if there is no such

9   agreement.  But none of those things happened, except that

10  there was an agreement in writing, and I think it's this

11  Court's job to enforce that agreement in writing.

12          The result is that the defendants are directed to

13  provide those documents in native format by -- well, forthwith,

14  and in this Court's view, forthwith means by next Monday at the

15  close of business.

16          Now, I hope you can reach some agreements to make

17  your lives easier, because I suspect that the plaintiffs don't

18  need to be addressing the question of the call-back provisions

19  if there's unintended additional material provided in that

20  production, and certainly the defendants don't want to find

21  themselves caught up in that either.

22          But that's the Court's direction, and the parties are

23  still entitled to reach agreement at how that's going to

24  happen, and that is best for everybody.  And I would urge you

25  to use your discretion.  Failing the discretion, the Court's

28

1   order remains that those will be produced in native format.

2       The motion -- I'm not -- the motion for sanctions,

3   which struck me more as a motion for expenses is not something

4   I'm going to make any orders on at this time.  I'm sure both

5   parties have considered the possibility that there's going to

6   be a resolution at the end of this proceeding concerning

7   attorney's fees, that's certainly at least a possibility, and

8   the -- it's perhaps premature to start picking segments out of

9   that for awards at this time.

10      So that's as far as we can go today.  Ms. Morris and

11  Ms. O'Bannon, thank you for your attendance here today.  These

12  are much better done in person than over the telephone, and

13  thank you.

14      MS. O'BANNON:  Thank you, Your Honor.

15      MS. MORRIS:  Thank you, Your Honor.

16      (Whereupon the hearing in the above-entitled matter was

17  adjourned at 4:13 p.m.)

18                        --o0o--

19                       CERTIFICATE

20      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the above-
21  entitled matter.

22

23  _____        August 21, 2008
    Patricia A. Petrilla, Transcriber
24  AAERT CERT*D-113

25