EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST - 183792
Senior Assistant Attorney General
JONATHAN L. WOLFF - 193479
Supervising Deputy Attorney General
LISA A. TILLMAN - 126424
Deputy Attorney General
KYLE A. LEWIS - 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5677
Facsimile:  (415) 703-5843
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## AND THE EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | **No. 2:90-cv-00520 LKK JFM P**<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | **No. C01-1351 TEH**<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION** |

///

## I.   INTRODUCTION

This Court, in ordering a Receivership established, divested the Secretary of the California Department of Corrections and Rehabilitation (CDCR) of his control over the delivery of medical care to all inmates statewide, and instead placed that responsibility under the control of a Receiver.  (Oct. 3, 2005 Findings of Fact and Conclusions of Law.) The Order Appointing Receiver makes clear that the Receiver is tasked with providing "leadership and executive management of the California prison medical health care delivery system," and similarly grants the Receiver the authority to "control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." (Feb. 14, 2006 Order at 2:11-12, 15-17.)  As a result of this Order, the Secretary of CDCR no longer oversees the delivery of medical care at each of the thirty-three institutions statewide.

Since the appointment of the Receiver, significant improvements in the delivery of medical care statewide have been effected, as most recently evidenced in Volume 1, Issue 1 of the Receiver's newsletter,  "The Turnaround Lifeline: California Prison Health Care Services," in which the Receiver provides an overview of the status of medical care statewide.  The newsletter also describes plans for future improvements that are called for in the Receiver's "Turnaround Plan of Action," and speaks of the Receiver's goal of "fundamentally reform[ing] prison health care delivery in California, and set[ting] a national standard for rapid, quality improvement."  (*The Turnaround Lifeline*, (California Prison Health Care Services, Sacramento, Cal.), Aug. 8, 2008 at 1.)

Evidence regarding the Receiver's improvements and efforts to advance the constitutional delivery of medical care at all CDCR institutions is of critical importance to the Three-Judge Court proceedings at hand.  It is mandated by law that a prisoner release order, such as the one requested by Plaintiffs, may not be entered unless it is proven by clear and convincing evidence that overcrowding is the primary cause of unconstitutional care, and that no other relief exists that may cure the unconstitutional

- 2 -

1 provision of medical care.  Evidence that overcrowding is not the primary cause of the
2 problems with medical care, or that a prisoner release order would not fix the problems
3 with medical care, and evidence of improvements in the delivery of medical care and the
4 Receiver's plans for future improvements all inextricably relate to the Prison Litigation
5 Reform Act elements that must be met prior to the issuance of a prisoner release order.
6 The Receiver stated that "those who believe that the challenges faced by the Plan of
7 Action are uncomplicated and who think that population controls will solve California's
8 prison health care problems, are simply wrong.  Population limits may help effectuate a
9 more timely and cost effective remedial process.  However the cure to existing health
10 care problems will be difficult and costly to implement, regardless of population control
11 efforts." (Receiver's Report re Overcrowding at 42-43.)  The Receiver has further stated
12 that "it is incumbent on the Receiver in this case to move with all possible speed to
13 establish a constitutionally adequate prison medical care system." (Turnaround Plan of
14 Action at 1; Ct. Docket No. 1229.)  However, only the Receivership is in possession of
15 such essential information, as the Receiver has acquired all of the Secretary's authority
16 regarding the provision of medical care.  Moreover, the Court issued a protective order
17 preventing written reports and testimony from the Receiver and his staff.  Defendants
18 believe that this order impermissibly excludes direct evidence that is critical to the Three-
19 Judge Panel proceeding, and Defendants do not waive their continued belief that they
20 are entitled to full discovery from the Receiver and his office.  Nonetheless, in an effort to
21 present the best case possible under the existing protective order, Defendants make this
22 new request in an effort to obtain at least some limited, but essential, information from
23 the Receiver.
24      It is vital to these proceedings that focused evidentiary requests to the Receiver
25 be permitted for the very limited purpose of obtaining updated, authenticated, and
26 admissible factual evidence regarding the delivery of medical care at CDCR institutions
27 for use at trial.  Asking the Receiver to provide purely factual evidence will in no way
28 intrude on the Receiver's mental processes.

- 3 -

1    To that end, Defendants request that they be permitted to obtain from the
2    Receivership updated, authenticated, and admissible evidence relating to fifteen topics,
3    as detailed below.  In the absence of updated, authenticated, and admissible evidence
4    regarding the current status and future plans for improvements in the delivery of medical
5    care, the integrity of these proceedings will suffer and the State's defense of this action
6    will be severely impaired.

## II.   ARGUMENT

### A.   The Best Evidence Is the Receiver's Testimony and Written Reports

9    The Prison Litigation Reform Act requires a Three-Judge Court to determine by
10   clear and convincing evidence that overcrowding is the primary cause of the
11   unconstitutional delivery of medical care, and that no other relief will remedy the
12   complained-of constitutional violation before that court may enter a prisoner release
13   order.  18 U.S.C. § 3626(a)(3)(E).  As such, it is of critical importance for this Court to
14   have at its disposal in the course of making its findings in these proceedings current
15   evidence regarding the status of the delivery of medical care and the Receiver's plans
16   for implementing improvements in medical care.  Without this evidence, this Court
17   cannot adjudge whether there are any other primary causes of the unconstitutional
18   provision of medical care, nor whether relief besides a prisoner release order will remedy
19   the unconstitutional delivery of medical care.

20   Due to the role of the Receivership in the delivery of medical care at CDCR
21   institutions, however, only the Receiver and his staff possess that information which this
22   Court must rely upon in ruling on Plaintiffs' request for a prisoner release order.
23   Evidence regarding improvements to medical care statewide and the status of future
24   plans for improvements is in the Receiver's sole possession.  Not even the Secretary of
25   CDCR has access to such information crucial to these proceedings.  But because of this
26   Court's November 29, 2007 protective order, and its June 5, 2008 Order re: Role of
27   Receiver and Special Master Regarding Prison Population Advisory Group, the parties
28   are forbidden from requesting the preparation of written reports or formal testimony from

- 4 -

the Receiver or any member of his staff at any stage of these proceedings. (June 5, 2008 Order at 2:6-10.) These orders prevent the parties from obtaining the necessary factual information that is relevant to these proceedings from the only entity in possession of such pertinent information.

The Court reasoned in these orders that the Receiver, as a quasi-judicial officer, should not be subject to questioning regarding his mental processes. Although Defendants do not waive their right to obtain such full discovery, and continue to contend that such full discovery is necessary and appropriate, Defendants at a minimum hope to obtain at least some information from the Receiver for use at trial. Defendants suggest that information from the Receiver can be limited in a way that is consistent with the reasoning behind the protective orders, and would not intrude on the Receiver's mental processes. Indeed, Defendants do not seek the Receiver's opinion regarding overcrowding as it relates to the delivery of medical care, rather, Defendants merely seek to obtain factual evidence relating to improvements undertaken by the Receiver, as well as evidence relating to the status of the Receiver's future plans for the improvement of the delivery of medical care to inmates statewide. Thus, the Receiver's provision of such information to the parties in no way permits an intrusion into the Receiver's mental processes, and should therefore be permitted.

**B.     At a Minimum, the Parties Should Be Permitted to Obtain Updated, Authenticated, and Admissible Evidence from the Receiver for Use at Trial.**

The most recent quarterly report by the Receiver was issued in June 2008. Thus, the parties will be relying on evidence from June during the November trial if they are not permitted to seek updated, authenticated evidence on a limited number of topics from the Receiver. Indeed, the Receiver's next quarterly report is not due until mid-September 2008, after this Court's August 30, 2008 deadline for the admissibility of evidence of changed prison conditions at trial. (July 2, 2008 Order at 3:6-7.) Thus, Defendants' ability at trial to present evidence of the other primary causes of the unconstitutional provision of medical care, and of improving prison conditions, will be

- 5 -

1  significantly prejudiced.

2  Because the parties are not currently permitted to request the preparation of
3  written reports nor seek the testimony of the Receiver or his staff, Defendants request at
4  a minimum that the Receiver provide updated and authenticated factual information on
5  the fifteen relevant topics outlined below. Such validated and authenticated evidentiary
6  updates would not require the Receiver and his staff to testify, nor would it require the
7  preparation of new written reports. Rather, Defendants only seek evidence that is
8  already in the possession of the Receiver. And as discussed above, such a request
9  would not impermissibly intrude on the Receiver's mental processes, as this Court
10 cautioned against in its November 29, 2007 order. (Nov. 29, 2007 Order at 3:22-25.)

11 Defendants therefore seek all reports, memoranda, and any other documents
12 providing factual data and/or current information regarding the following:

   1. The status of the URS/Bovis 10,000 bed project, including accomplishments, timelines, and goals, as of August 30, 2008.
   2. The status of the information technology system, including timelines, capabilities, and goals, as of August 30, 2008.
   3. The status of the Clinical Data Repository/Clinical Portal project, including accomplishments and timelines, as of August 30, 2008.
   4. Staffing and staffing vacancies for medical positions both statewide and at each CDCR institution as of August 30, 2008, including but not limited to, registered nursing positions, physician and surgeon positions, physician assistant positions, Chief Medical Officer positions, Chief Physician and Surgeon positions, and licensed vocational nursing positions.
   5. Current statistics regarding the number of physicians who were fired and/or retired due to actions taken by the Receiver in accordance with the State Personnel Board.
   6. Current status of the Receiver's physician clinical competency policies and implementation plan, including timelines for completion and goals.

- 6 -

7. Current status of any and all training and supervision plans for any and all medical staff positions, including but not limited to, registered nurses, physicians and surgeons, physician assistants, Chief Medical Officers, Chief Physicians and Surgeons, and licensed vocational nurses.

8. Current status of the Receiver's Career Executive Assignment program, including number of positions created and filled.

9. Current statistics regarding the number of preventable and/or possibly preventable deaths statewide, as of August 30, 2008.

10. The status of each institution's adoption of the Emergency Medical Response System policy.

11. The status of implementation of a central fill pharmacy.

12. The status of implementation of a standardized health records practice.

13. The status of the Receiver's efforts to improve radiology and laboratory services.

14. The status of the Receiver's "Construction Upgrade Program."

15. The status of the Receiver's plans to improve the screening of incoming prisoners at all reception centers, including the status of the San Quentin pilot program and plans for a statewide roll-out.

As indicated by the Receiver in his Turnaround Plan of Action, his vision is to provide, as soon as practicable, "constitutionally adequate medical care to patient-inmates of the California Department of Corrections and Rehabilitation (CDCR) within a delivery system the State can successfully manage and sustain." (Turnaround Plan of Action at 1; Ct. Docket No. 1229.) The Receiver's stated vision, if properly executed, would undeniably constitute relief less intrusive than that of a prisoner release order. Further, the Receiver's information regarding the causes of the problems with medical care, and the Receiver's future plans to address the primary causes of the unconstitutional delivery of medical care very clearly relate to the issues before this Court in these proceedings. Therefore, because the above-requested information is crucial to the proper

- 7 -

determination of Plaintiffs' request for a prisoner release order, because Defendants will be prejudiced at trial if this Court continues to prevent the parties from obtaining evidence from the Receiver, and because this information may not be obtained from any other source, Defendants respectfully request that this Court permit Defendants to seek the above information from the Receivership solely for use at trial in these proceedings.

///

///

### III. CONCLUSION

It is undeniable that facts relating to the current status and plans for future improvements to the provision of health care at all CDCR institutions is of crucial importance to these proceedings. Yet the parties are prohibited from seeking such crucial information from the Receiver and his staff. No other source of such information exists. Accordingly, it is essential that Defendants be permitted to obtain from the Receiver updated and authenticated information on the fifteen limited topics previously articulated in this motion for use at trial. Because it would greatly benefit both parties and this Court to rely upon accurate and updated evidence at trial regarding the current status of medical care at CDCR institutions statewide, Defendants respectfully request that this Court permit Defendants to obtain such updated and verified information from the Receiver.

DATED: August 29, 2008                          HANSON BRIDGETT LLP

By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants Arnold Schwarzenegger, et al.

DATED: August 29, 2008                          EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Jonathan L. Wolff
JONATHAN L. WOLFF
Supervising Deputy Attorney General
Attorneys for Defendants Arnold Schwarzenegger, et al.