| | |
|---|---|
| 1 | EDMUND G. BROWN JR. |
| | Attorney General of the State of California |
| 2 | DAVID S. CHANEY |
| | Chief Assistant Attorney General |
| 3 | ROCHELLE C. EAST - 183792 |
| | Senior Assistant Attorney General |
| 4 | JONATHAN L. WOLFF - 193479 |
| | Supervising Deputy Attorney General |
| 5 | LISA A. TILLMAN - 126424 |
| | Deputy Attorney General |
| 6 | KYLE A. LEWIS - 201041 |
| | Deputy Attorney General |
| 7 | 455 Golden Gate Avenue, Suite 11000 |
| | San Francisco, CA 94102-7004 |
| 8 | Telephone: (415) 703-5677 |
| | Facsimile: (415) 703-5843 |
| 9 | kyle.lewis@doj.ca.gov |

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
S. ANNE JOHNSON - 197415
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

10    Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## AND THE EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | **No.  2:90-cv-00520 LKK JFM P** <br><br> **THREE-JUDGE COURT** |
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No. C01-1351 TEH <br><br> **THREE-JUDGE COURT** <br><br> **DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR RECONSIDERATION BY THE THREE-JUDGE COURT OF MAGISTRATE JUDGE'S RULING REQUIRING THE GOVERNOR, HIS CHIEF OF STAFF, AND HIS SENIOR DEPUTY CABINET SECRETARY TO SUBMIT TO DEPOSITION; REQUEST FOR STAY OF ORDER (E.D. L.R. 72-303)** <br><br> **To:  Three-Judge Court** |

- 1 -

# I.    INTRODUCTION

The Governor, Chief of Staff Susan Kennedy, and Senior Deputy Cabinet Secretary Robert Gore are entitled to executive immunity against personal testimony. Plaintiffs' request to depose the Governor and his top aides is unprecedented and defies established law and public policy.  Reasonable alternatives are available to provide the evidence Plaintiffs seek.  Plaintiffs can propound written discovery and depose other witnesses, including the current and former CDCR Secretaries, who have personal knowledge of the relevant facts.  Requiring the Governor and two of his top aides to submit to deposition in this case is neither proper nor necessary.  Plaintiffs do not demonstrate otherwise.

Federal courts have consistently held that high government officials should not be forced to testify in deposition absent a compelling need and extraordinary circumstances where the information sought is not available from any other source.[1]  The law recognizes that top public officials must be allowed to focus on their important governmental duties, such as protecting public health and safety, and absent the requisite exceptional and compelling need, should not be diverted from their essential public duties to provide personal testimony.

Plaintiffs have not shown the requisite exceptional and compelling need to force the Governor and his senior staff into depositions in this case.  Plaintiffs contend that the

---

[1] *Kyle Engineering Company v. Kleppe*, 600 F.2d 226, 231 [heads of government are not normally subject to deposition]; *In re United States*, 985 F.2d 510, 513 (11th Cir. 1993) [because of the time constraints and responsibilities of high officials, courts discourage parties calling them as witnesses and require exigent circumstances to justify a request for their testimony]; *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) [top executive officials should not be called to testify absent extraordinary circumstances]; *In re Office of Inspector General*, 933 F.2d 276, 278 (5th Cir. 1991) [exceptional circumstances must exist to justify depositions of high officials]; *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982) [governor not required to testify absent compelling need]; *United States v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1974) [depositions allowed only under exceptional circumstances]; Green v. Baca, 226 F.R.D. 624, 648 (C.D.Cal. 2005) [deposition prohibited if information is available from any other source]; see also *Bagley v. Blagojevich*, 486 F. Supp. 2d 786 (C.D. Ill. 2007); *Prisma Zona Exploratoria De Puerto Rico, Inc. v. Calderon*, 154 F. Supp. 2d 245 (D.P.R. 2001) [both of which involved officials who were allegedly involved in wrongdoing].

1   Governor, Ms. Kennedy and Mr. Gore have personal knowledge of the official decision-

2   making process.  But that is beside the point.

3        In *United States v. Morgan*, although the Secretary of Agriculture had personal

4   knowledge of facts regarding the decision-making process, the United States Supreme

5   Court nonetheless held that "the Secretary should never have been subjected to this

6   examination" because it was not appropriate to probe the mental processes of the

7   Secretary, and the integrity of the administrative process must be respected.  *United*

8   *States v. Morgan*, 313 U.S. 409, 422 (1941).  Indeed, absent a clear showing of

9   misconduct or wrongdoing, testimony by a government decision-maker regarding mental

10   processes in reaching a decision is prohibited.  *Franklin Savings Ass'n v. Ryan*, 922 F.2d

11   209, 211-12 (4th Cir. 1991).  Neither are Plaintiffs permitted to debate policy decisions

12   with the Governor and his top aides.  *See Deukmejian v. Super. Court*, 143 Cal. App. 3d

13   632, 635 (Cal. App. 1983).

14        Plaintiffs concede that they want to depose the Governor and two of his top aides

15   to question them about "the establishment of policies, and alternative methods for

16   reducing overcrowding that the Governor considered" (Opp'n 4:12-13).   They expressly

17   want to debate the Governor's past policy decisions with him, including to press him on

18   his mental processes.  For example, they want to question the Governor about the

19   "reasons for changing his mind" regarding the proposed CDCR budget.  (*Id.* at 10:20.)

20        In seeking the depositions of the Governor and his top aides, Plaintiffs wrongly

21   contend that they have a right to depose them about policy decisions unless the

22   Governor was "just acting as a figurehead" when directing policy.  (Opp'n 2:10.)  Of

23   course, the Governor is never "just acting as a figurehead" when he directs policy for any

24   of the numerous operations of the State of California.  To the contrary, he is performing

25   his function as the State's chief executive.  Absent a claim of misconduct or wrongdoing,

26   performance of his function as the chief executive does not and, as a matter of public

27   policy, cannot subject the Governor or his top aides to deposition.

28

1    The Governor makes policy decisions and pronouncements every day across the

2  wide range of California's operations.  To require the Governor and his top aides to

3  personally testify in the numerous cases where the policy pronouncements and

4  decisions they have made are arguably relevant would usurp their executive functions,

5  requiring them to spend their time preparing for and testifying in lawsuits instead of

6  running the State of California.  Plaintiffs do not even address, much less rebut, this key

7  point.

8    Neither do Plaintiffs refute that the Governor and his top aides are not involved in

9  the daily operations of the State's prisons and, therefore, do not have "direct personal

10  factual information" about the ongoing conditions in California's prisons, the causes or

11  possible remedies of those conditions, or the possible impacts of a prisoner release

12  order on public safety or the operation of the criminal justice system.

13    In sum, this case is <u>not</u> about what the Governor, Ms. Kennedy, or Mr. Gore knew

14  when, and alternative means of proper discovery exist.  The Governor, Ms. Kennedy,

15  and Mr. Gore should not be required to personally testify in this matter.  To rule

16  otherwise will disrupt their performance of their public duties and set a perilous

17  precedent.

18    The importance of upholding the rule of executive immunity against personal

19  testimony is highlighted by the particularly urgent issues facing California today.

20  California is in the midst of a record-setting budget impasse, the effect of which is being

21  felt throughout California.  Even the Prison Healthcare Receiver has been impacted.

22  The Governor and his senior staff are working every day to resolve the current gridlock

23  and to reach a compromise that will allow the State to move forward.  For the good of

24  California, they must be allowed to maintain their focus on their executive duties at this

25  time.

26    Nonetheless, if this Court concludes that no other witness, and no other form of

27  discovery, would satisfy Plaintiffs' need for information, and that Plaintiffs have somehow

28  shown an extraordinary and exceptional need to depose a senior official in the

- 4 -

1    Governor's Office, the least intrusive alternative would be to allow the deposition of

2    Robert Gore regarding facts and outcomes, but not decision-making processes, while

3    prohibiting the depositions of the Governor and Ms. Kennedy.

## II.    ARGUMENT

### A.    The Governor's Decision-Making Process Is Not Subject To Deposition And All Relevant Information Can Be Discovered By Alternate Means.

7    Plaintiffs concede that they do not want to ask the Governor or his top aides about

8    prison conditions.  (Opp'n 1:24.)  Instead, Plaintiffs' fundamental argument is that they

9    are entitled to depose the Governor because he has been "involved" in directing policy

10   regarding California's prisons.  They note that he issued a June 26, 2006 press release

11   announcing a special legislative session to deal with issues confronting California's

12   prisons and an October 4, 2006 emergency proclamation regarding prison overcrowding;

13   that on December 21, 2006, he proposed building 78,000 new prison beds; that in

14   February 2007, he engaged in closed-door sessions with legislators regarding strategies

15   to address prison overcrowding; and that later in 2007, he toured a prison.  (Opp'n 7:24-

16   8:9.)  He also "push[ed] for the enactment of AB 900" and "organiz[ed] strike teams" that

17   report to his staff.  (*Id.* at 7:15-16.)  He also proposed a budget, later withdrawn, to

18   effectuate budget savings by releasing prisoners.  (*Id.* at 6:24-25.)  In short, Plaintiffs

19   want to depose the Governor simply because he has been doing his job as governor—

20   which the law cannot permit.  *See Deukmejian,* 143 Cal. App. 3d at 634-35.

21   In addition, Plaintiffs want to obtain prohibited personal testimony regarding the

22   Governor's decision-making mental processes.  *See Franklin Savings,* 922 F.2d at 211

23   (explaining that absent a "clear showing of misconduct or wrongdoing," a government

24   decision-maker will not be compelled to testify about his mental processes in reaching a

25   decision, 'including the manner and extent of his study of the record and his

26   consultations with subordinates.'" (citations omitted)).  Plaintiffs impermissibly want to

27   personally question the Governor about "the basis of [his] findings and the alternatives

28   considered" (Opp'n 8:23-24); his response to the Receiver that he does not have

- 5 -

1   authority to procure funds for new medical beds, and "alternatives considered" (*id.* at

2   10:9-11); and his "reasons for changing his mind" about the CDCR budget proposed

3   earlier this year (*id.* at 10:20).  Such questioning is not only prohibited, it is also

4   irrelevant.  The Governor's personal state of mind in coming to a decision has no bearing

5   on the objective facts that will determine the outcome of this case.  *See Trunk v. San*

6   *Diego*, 2007 WL 1110715, *5-6 (S.D. Cal. 2007).

7       Further, Plaintiffs do not refute that the Governor necessarily relies on the CDCR

8   to operate California's correctional system and lacks the day-to-day operational

9   knowledge held by CDCR.  Accordingly, Plaintiffs cannot even meet the first of the

10  required elements to abrogate executive immunity against personal testimony.  (Opp'n

11  10:24:28, quoting *Green v. Baca*, 226 F.R.D. 624, 648 (C.D. Cal. 2005) ("a well-

12  established exception exists for depositions of 'top officials who have direct personal

13  factual information pertaining to material issues . . . [and] where the information to be

14  gained . . . is not available through any other source'").

15      Moreover, Plaintiffs admit that they have propounded written interrogatories to the

16  Governor—to which he has responded.  Accordingly, an alternative means of discovery

17  against the Governor clearly exists.  That Plaintiffs prefer the "flexibility" of deposition to

18  written interrogatories is irrelevant.  (Opp'n 15:13.)  When it comes to deposing high

19  government officials, the case law does not promise the "best" discovery; rather, it

20  recognizes the importance of protecting the time and responsibilities of high officials and

21  allows for reasonable alternatives.  Plaintiffs contend that prior written discovery

22  responses were inadequate, but they did not move to compel further responses.  If

23  Plaintiffs were not satisfied with the Governor's responses, the next step was meeting

24  and conferring regarding their concerns and moving to compel further response, if

25  necessary and appropriate—not abrogating the general rule of executive immunity

26  against personal testimony.

27      Plaintiffs can also obtain discovery, including personal testimony, from witnesses

28  at CDCR, Finance, and the Strike Teams.  Indeed, Plaintiffs have already noticed the

1   depositions of, or deposed, top employees at Finance and CDCR, including the current
2   and former CDCR Secretaries, and members of the Strike Teams.  The other witnesses
3   at CDCR and Finance know about AB 900 details, AB 900 implementation, AB 900
4   amendments, withdrawn budget proposals, the out-of-state transfer of inmates, and the
5   taking down of bad beds.  The Receiver is the best position to discuss efforts underway
6   to improve prison medical care.

7          With respect possible remedies of the problems with medical and mental health
8   care, the public record speaks for itself.  Plaintiffs know which bills have advanced in the
9   Legislature and which have not.  They know what the Receiver is doing, and they know
10  what CDCR is doing.  They have access to the Governor's public pronouncements, and
11  they can review the more than 500,000 pages of documents produced by Defendants in
12  this proceeding.

13         Regarding the impact of a prisoner release order on public safety and the criminal
14  justice system, local governments and CDCR are in a much better position to address
15  those questions than the Governor or his staff.  The Statutory Intervenors contend that a
16  prisoner release order would have an adverse effect on safety in communities
17  throughout the State.  Plaintiffs can obtain discovery from these sources.

18         It is not enough for Plaintiffs to show that the Governor has knowledge about the
19  decision-making process or that he took a tour of a prison or that he made a particular
20  decision.  Plaintiffs must demonstrate the requisite extraordinary and exceptional need to
21  depose the Governor, which they fail to do here.  Consistent with the law and in the
22  interests of public policy, Plaintiffs' request to require the Governor to submit to
23  deposition in this case must be denied.

24  **B.    Neither Ms. Kennedy Nor Mr. Gore Have Relevant Information That Cannot
        Be Discovered by Other Means.**
25

26         Plaintiffs want to depose the Governor's Chief of Staff because she "is integrally
27  involved in nearly everything the Governor does."  (Opp'n 14:2-4.)  As with the Governor,
28  Plaintiffs want to depose Ms. Kennedy just because she has been doing her job and as

1    part of her duties has been involved in executive decision-making.  Plaintiffs do not

2    contend that Ms. Kennedy has "direct personal factual information" about the ongoing

3    conditions in California's prisons, the causes or possible remedies of those conditions, or

4    the possible impacts of a prisoner release order on public safety or the operation of the

5    criminal justice system.  Rather, in performing her executive function, Ms. Kennedy has

6    made statements describing California's prisons as a "powder keg" (*id.* at 14:5-6) and

7    directed CDCR not to backfill "bad" beds that were emptied by transfers of inmates to

8    prisons out-of-state and to speed up out-of-state transfers (*id.* at 14:16-25).

9        These statements and actions do not even go to the central issue in this case:

10    the delivery of medical and mental health care to inmates.  In fact, Plaintiffs do not point

11    to a single act by Ms. Kennedy that addresses medical or mental health care of inmate—

12    as opposed to general population policies.  Nonetheless, without any basis, Plaintiffs

13    claim they "must have the opportunity to question Ms. Kennedy about these and other

14    directives she issued in an effort to resolve the ongoing health care crisis in the state

15    prison system. . . ."  (Opp'n 15:1-3.)  In stating their desire to quiz Ms. Kennedy on

16    executive directives that she issued, Plaintiffs ignore completely the prohibition against

17    deposing executive officials about their decision-making mental processes.  *Franklin*

18    *Savings,* 922 F.2d at 211.  Nor do Plaintiffs explain how Ms. Kennedy's decision-making

19    process is relevant or even reasonably calculated to lead to the discovery of admissible

20    evidence.

21        Plaintiffs want to depose Mr. Gore, the Governor's Deputy Cabinet Secretary,

22    because he has been involved in "monitoring overcrowding" and "has personally led a

23    number of meetings with top CDCR officials and consultants on the subject."  (Opp'n

24    12:16-17.)  Accordingly, Plaintiffs admit that Mr. Gore does not have "direct personal

25    factual information" about overcrowding.  Instead, he has monitored the efforts of the

26    CDCR and its consultants to address the problem.  And as with Ms. Kennedy, Plaintiffs

27    do not provide a single act or statement by Mr. Gore regarding the delivery of mental or

28    medical health care to inmates.  Again, as with the Governor and Ms. Kennedy, Mr.

1    Gore's mental processes are neither a permissible subject of deposition nor relevant.

2        Appropriate and admissible information Plaintiffs seek about the policies of the

3    Governor's Office could be obtained through properly framed written discovery to the

4    Governor.  Indeed, Plaintiffs have already propounded such discovery on the Governor.

5    As discussed above, discovery of relevant information is also available through

6    depositions of CDCR and Finance officials and members of the Strike Teams.

7        Nonetheless, if this Court concludes that no other witness and no other form of

8    discovery, would satisfy Plaintiffs' need for information, and that Plaintiffs have somehow

9    shown the requisite extraordinary and exceptional need to depose a senior official in the

10   Governor's Office, then the least intrusive order would be to allow the deposition of

11   Robert Gore regarding facts and outcomes, but not decision-making processes, while

12   prohibiting the depositions of the Governor and Susan Kennedy.  Such an order would

13   provide Plaintiffs with personal testimony from the Governor's Office, without burdening

14   the Governor and his Chief of Staff with depositions.

15                          **III.    CONCLUSION**

16       To abrogate the general rule of executive immunity, Plaintiffs have a heavy

17   burden, which they have failed to meet.  By their own account, the standard for obtaining

18   personal testimony from an executive official is unique "direct personal factual

19   information" which cannot be discovered through other means.  That standard of such

20   an extraordinary and exceptional circumstance is simply not met here.  Indeed, the only

21   "unique" information the Governor, Ms. Kennedy, and Mr. Gore has is regarding their

22   own mental processes, which are a prohibited topic of discovery and which are irrelevant

23   in any event.  Public policy does not allow Plaintiffs to use this case as an opportunity to

24   debate prison policy with the Governor or his top aides.  Any legitimate discovery

25   Plaintiffs seek is available through other means, and when dissatisfied with Defendants'

26   response, Plaintiffs have amply demonstrated their ability to demand further responses

27   to written discovery, which Plaintiffs could have done here.

28       The time of top executive officials is precious and should be safeguarded, as

1   highlighted by the need of the Governor's Office to maintain its focus on the record

2   budget impasse facing California.  Because policymaking and not personal wrongdoing

3   is at issue here, executive immunity against personal testimony should be respected and

4   upheld.  Judge Moulds's August 14, 2008 order to the contrary allowing the depositions

5   to go forward must be set aside.

6

7   DATED:  September 2, 2008                    HANSON BRIDGETT LLP

8

9                                               By:____/s/ Paul Mello_____
                                                PAUL MELLO
10                                              Attorneys for Defendants Arnold
                                                Schwarzenegger, et al.
11  DATED:  September 2, 2008                    EDMUND G. BROWN JR.

12

13                                              By:____/s/ Rochelle C. East_____
                                                ROCHELLE C. EAST
14                                              Senior Assistant Attorney General
                                                Attorneys for Defendants Arnold
15                                              Schwarzenegger, et al.

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' REQ. FOR RECONSIDERATION (case no. 2:90-cv-00520 LKK JFM P/ C01-1351 TEH)          1594494.4