PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
ALISON HARDY, Bar No. 135966
SARA NORMAN, Bar No. 189536
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No. Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION** |
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No. C01-1351 TEH <br><br> **THREE-JUDGE COURT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................1

I. THE COURT SHOULD DENY DEFENDANTS' REQUEST BECAUSE IT IS PROCEDURALLY DEFECTIVE ..................................................................1

II. THE COURT SHOULD DENY DEFENDANTS' REQUEST BECAUSE IT VIOLATES THE COURT'S PROTECTIVE ORDER REGARDING OBTAINING DISCOVERY FROM THE RECEIVER..........................................4

III. THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR DISCOVERY BECAUSE IT SEEKS INFORMATION OTHERWISE AVAILABLE TO DEFENDANTS ..................................................................5

IV. ALTERNATIVELY, IF THE COURT ORDERS THAT DEFENDANTS ARE ALLOWED TO FORMALLY OBTAIN DOCUMENTS FROM THE RECEIVER, THE ORDER SHOULD BE MADE APPLICABLE TO ALL PARTIES ................................................................................................................10

CONCLUSION ....................................................................................................................11

i

PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION, NOS. CIV S 90-0520 LKK-JFM, C01-1351 TEH

[219945-1]

# TABLE OF AUTHORITIES

## STATUTES

Federal Rules of Civil Procedure 37 .................................................................................... 3

Federal Rules of Civil Procedure 37(1)(a) .......................................................................... 3

Federal Rules of Civil Procedure 45 .................................................................................... 3

ii

PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION, NOS. CIV S 90-0520 LKK-JFM, C01-1351 TEH

[219945-1]

## INTRODUCTION

On August 29, 2008, defendants filed a "Request For Evidence From The California Prisoner Health Care Receivership Corporation" (hereafter Defendants' Request). Defendants ask the Court to "permit[]" them "to obtain" certain reports, memoranda, and other documents from the Receiver regarding fifteen categories of information. Defendants' Request at 4:1-2, 6:11 - 7:18, and 9:10-11.

The Court should deny defendants' request. First, the request is procedurally defective and would if granted require the re-opening of the non-expert discovery period, which closes in just days, and inject chaos into expert discovery. In addition, the request if granted would violate the Court's November 29, 2007 Protective Order. It also seeks information either already available to defendants from the Receiver's Turnaround Plan and most recent Quarterly Report, or which defendants could have obtained.

In the alternative, any order allowing defendants to formally obtain documents should be made applicable to all parties.

## ARGUMENT

### I.

**THE COURT SHOULD DENY DEFENDANTS' REQUEST BECAUSE IT IS PROCEDURALLY DEFECTIVE.**

Defendants' request is, essentially, a motion to compel production of documents that were never requested during discovery. This motion is procedurally defective for a number of reasons, and thus should be denied.

First, this motion is brought too late. Non-expert discovery closes on September 8, 2008. Order For Pretrial Preparation, July 2, 2008, at 3:9-10. Under the motion schedule

-1-

established by this Court, parties are provided 14 days to file opposition to Defendants' request. Order, April 25, 2008 at 2:1-2. As such, the non-expert discovery period will have closed before even the time for opposition briefing on Defendants' Request is concluded. Further, in the present action a person on whom discovery is propounded has in this proceeding 21 days to respond (Order For Pretrial Preparation, July 2, 2008, at 2:17-19), meaning that even if defendants were entitled today to get documents from the Receiver, the production of those documents would not be due until well after the non-expert discovery cut-off.[1]

Defendants' last-minute request for discovery will also wreak havoc with the Court's expert witness schedule. The deadline for expert disclosure and exchange of reports was, with certain exceptions, August 15, 2008; rebuttal reports were required to be exchanged by August 27, 2008.[2] Order For Pretrial Preparation, July 2, 2008, at 3:1-4. Additional formal discovery of the kind sought by defendants would likely require all experts to review the documents produced and re-write reports, thereby in essence re-opening that phase of discovery.

This Court very recently emphasized that all previously established pretrial dates in the case "are firm and shall remain unchanged." Stipulation and Order Regarding Expert Discovery and Evidence, August 7, 2008, at 2, fn. 1. Defendants' Request, if granted, would require reconfiguration of most or all pretrial dates.

---

[1]. Defendants' Request does not even specify a time period within which they be permitted to obtain documents.

[2]. Pursuant to Court Orders, and due to certain experts' scheduling conflicts, the deadline was extended for the exchange of reports by two of plaintiffs' and one of defendants' experts was extended. Those expert reports are due on September 8, 10 and 18, respectively. See Order, July 11, 2008 and Stipulation and Order Regarding Expert Discovery and Evidence, August 7, 2008.

-2-

PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION, NOS. CIV S 90-0520 LKK-JFM, C01-1351 TEH

Defendants' request is also procedurally defective because a motion to compel requires certain formal elements lacking here. Defendants do not show that they prepared or served a third party subpoena on the Receiver pursuant to Fed.R.Civ.P. 45 or otherwise attempted to obtain the requested material (see further discussion under Argument III, below, regarding how the material could have been requested). Nor do defendants show that they did not receive a response, or an adequate response, to any such discovery or request, and thereafter were unable to resolve the matter after a good faith effort to do so, as required before a motion to compel. Fed.R.Civ.P. 37. The federal rule regarding compelling discovery provides, "[t]he motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P 37(a) (1). Having failed to make the required showing, defendants' request must be denied.

The failure of defendants to lay any groundwork for the present request is particularly acute given that they seek an exceedingly broad range and large number of documents. They demand "all reports, memoranda, and any other documents providing factual data and/or current information" for 15 different topics, most of which are themselves very broad. The first topic, for example, is the "status," "accomplishments," "timelines," and "goals" of the Receiver's 10,000 bed project. Defendants' Request at 6:13-14. The number of pages of documents associated with these matters, particularly

the extremely broad and vague "status" and "accomplishments" categories, likely number in the tens or hundreds of thousands given the scale of this project and the efforts so far undertaken. See Receiver's Eighth Quarterly Report, June 17, 2008, at 40:12 - 41:28 (stating

-3-

among other things that site evaluations are underway at eight geographic locations, environmental analysis and infrastructure engineering investigations are proceeding at seven of the locations, community outreach programs are being implemented, and design-build team selection process is underway).

## II.

### THE COURT SHOULD DENY DEFENDANTS' REQUEST BECAUSE IT VIOLATES THE COURT'S PROTECTIVE ORDER REGARDING OBTAINING DISCOVERY FROM THE RECEIVER.

Almost a year ago, this Court issued a protective order barring a deposition – noticed by defendants – of the Receivership. Protective Order Re: Deposition Of The California Prison Healthcare Receivership Corporation (Protective Order), November 29, 2007. Defendants now assert that their instant request is consistent with "the reasoning behind" the Protective Order, and would not intrude into the Receiver's mental processes. Defendants' Request at 5:9-11. Defendants' assertion is without merit.

The deposition notice that resulted in the Protective Order sought, among other things, "a broad range of documents" regarding matters relating to prisoner medical services. Protective Order at 1:21 - 2:3. The Court determined that Receiver had filed numerous reports regarding his efforts. *Id.* at 3:20-22. The Court further held that, "these reports speak for themselves, and any testimony about the reports, as well as testimony about *or the production of underlying documents considered by the Receiver* in his preparation of the reports, would impermissibly intrude on the Receiver's mental processes." *Id.* at 3:22-25 (citation omitted

-4-

PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION, NOS. CIV S 90-0520 LKK-JFM, C01-1351 TEH

and emphasis added). Defendants' discovery demand is inconsistent with the Protective Order and its reasoning.[3]

## III.

### THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR DISCOVERY BECAUSE IT SEEKS INFORMATION OTHERWISE AVAILABLE TO DEFENDANTS.

Defendants assert that Court orders herein "prevent[]" them from "obtaining . . . necessary factual information . . . relevant to these proceedings [from the Receiver]." Defendants' Request 5:2-4. This is patently incorrect. Defendants have had myriad opportunities to obtain facts and evidence, but chose or failed to do so.

First, as stated above and as the Court is well aware, the Receiver files regular and lengthy reports regarding his activities. The most recent such report was filed a little more than two months ago and discusses among other matters each element of the Receiver's Turnaround Plan of Action. Receiver's Eighth Quarterly Report, June 17, 2008 (Eighth Report). The Turnaround Plan of Action, a 33 page single spaced document not counting prefatory material, was filed in early June and sets out six main goals and numerous sub-goals and target dates. Receiver's Turnaround Plan of Action, June 6, 2008 (Turnaround Plan). When approving the Turnaround Plan, the Court noted that it includes "specific action items with deadlines" for all stated goals. Order Approving Receiver's Turnaround Plan of Action, June 16, 2008, at 4:14-17.

---

[3]. In June 2008, the Court reiterated that no party could request formal testimony by the Receiver or any of his staff members. Order Re; Role Of Receiver And Special Master Regarding Prison Population Advisory Group, June 5, 2008, at 2:6-10.

-5-

PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR EVIDENCE FROM THE CALIFORNIA PRISON HEALTH CARE RECEIVERSHIP CORPORATION, NOS. CIV S 90-0520 LKK-JFM, C01-1351 TEH

Each of the topics which defendants list as necessary for them to receive documents from the Receiver are comprehensively discussed in the Turnaround Plan, and in the Eighth Report. For example, defendants ask for timelines and goals for the Receiver's projects concerning 10,000 healthcare beds, information technology, and clinical data projects, and the status of emergency response policy adoption, implementation of central fill pharmacy, and implementation of standardized health records practice. Defendants' Request at 6-7. Timelines, associated goals, and the current status for each of these are directly stated, or easily deducible, from information in the Turnaround Plan and Eighth Report. See Turnaround Plan at 10 (status and timeline target dates for emergency response policy improvements), 22 (timeline target date for central fill pharmacy and status and plan for health records practices), 23 (status of radiology and laboratory services improvements, and status and timeline target date for clinical data repository), 25-26 (status of and planned actions regarding construction upgrade program), 27 (timeline target date for completion of 10,000 bed project); Eighth Report at 4-41 (discussing each matter identified here, plus all other Turnaround Plan elements, including providing details such as the schedule for adoption of emergency response policy in the prisons). Defendants' Request for discovery makes no showing whatsoever that circumstances have changed so much in the short time since the plan and most report were filed that they would be unable, using the extensive information already in the record, to adequately defend against the motions to be decided by the Three Judge Court.

Furthermore, defendants have extraordinary information already available to them from the Receivership, and about the Receiver's activities, which has not been made available to plaintiffs' counsel. The Receiver confers with officials in the Governor's Office. See Eighth

-6-

Report at 49:14-17 (mentioning such a meeting). Matt Cate, the California Department of Corrections and Rehabilitation (CDCR) Secretary meets regularly with the Receiver and his Chief of Staff. Fama Dec at ¶ 2. Defendants' Request fails to state whether any of these officials – actual defendants herein – or any other CDCR official, or defendants' counsel, have ever asked the Receiver about, or for any of documents related to, any of the topics which they assert they cannot get current information.

Further, defendants know much information because the Receiver works directly with them and their staff on projects. For example, in the Receiver's Construction Upgrade Program for existing prisons – for which defendants' claim not to be able to obtain information and thus request all documents relating to the status thereof (Defendants' Request at 7:15) – each individual prison construction upgrade plan, before approved by the Receiver, filed with the Court, or provided to plaintiffs, is reviewed and agreed to by the subject prison's Warden and Associate Warden, as well as by CDCR Facilities Management staff. See Eighth Report at 38:1-16. These same custody officials, and thus defendants, also surely know if or when any actual construction occurs at their facilities, and when any new medical facility is actually used, since they – not the Receiver – provide custody supervision at those facilities.

In addition, defendants in the time since the filing of the Turnaround Plan and Eighth Report have had myriad opportunities to obtain from the Receiver, or the health care staff over which the Receiver has authority, facts and evidence on the topics they list. The Court's orders prohibit formal discovery. Although the Court has barred formal discovery on the Receiver, nothing prohibits the parties from asking, and obtaining information or documents from the

-7-

Receiver. The Receiver and CDCR healthcare staff working under the Receiver's authority have, in fact, provided such documents, as defendants should know.

Since May 2008 plaintiffs' and defendants' counsel in *Plata* have jointly participated in regularly scheduled monthly phone calls with counsel for the Receiver. Fama Dec at ¶ 3. During these phone calls, any party may raise for discussion with the Receiver's office matters related to implementation of the existing Stipulated Injunction, issues or questions related to the Turnaround Plan and Quarterly Reports, or other matters concerning medical care. *Id.* During those phone calls, plaintiffs have requested and then received documents from the Receiver's office regarding matters related to the subjects discussed. *Id.*

For example, during the July phone call plaintiffs requested and then received a document listing and describing the status of healthcare construction upgrades at existing prisons. For the August 2008 phone conference, plaintiffs placed on the agenda – which is provided to all participants, including defendants' counsel, approximately 10 days in advance of the phone call – a question concerning what we described as the "new" and very recently received medical staff vacancy/registry report (covering through May 2008). *Id.* Defendants' counsel in the phone calls held in May, June, July and August, 2008, did not ask that the Receiver provide any documents or reports, and plaintiffs are not aware that they even asked for copies of the documents and reports that plaintiffs requested, received, and/or asked about during the phone calls, even though some of those – including the examples discussed herein – concern the exact topics that defendants assert they cannot obtain information about. *Id.*

Defendants had another opportunity to obtain relevant information and documents during the expert inspections discovery phase. Defendants' experts ability to gather facts and

-8-

evidence during their experts' prison inspections was explicitly reiterated by this Court when it ordered that defendants' physician expert (Dr. Thomas) could inspect CDCR prisons through September 6, 2009 and that "Defendants may introduce evidence at trial that was obtained" during those inspections. Stipulation and Order Regarding Expert Discovery and Evidence, August 7, 2008 at 2:18-21.

Subsequent to that Order, defendants could have had an expert inspect all prisons and related medical facilities, including headquarters. Defendants instead chose to have Dr. Thomas inspect five CDCR facilities. Fama Dec at ¶ 4 and Exhibit A thereto at 2-3 (e-mail from Samantha D. Tama, August 25, 2008 3:11 PM).

At any facility inspected, the expert could talk to any medical or other staff member, and request documents or reports. See Order, October 30, 2007, at 6:17-24 (providing for expert to talk with healthcare and custody staff during prison inspections). When plaintiffs' physician expert recently inspected certain CDCR prisons he asked in advance, or while on-site, for numerous documents, including logbooks and computer generated reports. Fama Dec at ¶ 5. While on-site he reviewed those documents, and also numerous unit health records of prisoner-patients. *Id.* Medical and other CDCR staff were very cooperative during the inspections, including answering the expert's questions and providing access to and copies of documents and reports when requested. *Id.* Defendants' counsel and a representative from the Receiver's office were present at all these inspections; defendants' counsel received copies of any document that plaintiffs' expert obtained. *Id.*

The Receiver also understood that defendants' physician expert could talk to staff and review documents. After receiving notice of defendants' expert Dr. Thomas' inspections, the

-9-

Receiver's counsel asked defendants for further information, including how long staff interviews might last and when they might occur during the inspections, whether defendants anticipated "needing documents" or "files pulled for review," and if so, what "categories." Fama Dec at ¶ 4 and Exhibit A thereto at 1-2 (e-mail from Martin Dodd, August 26, 2008 12:36 PM).

In response, defendants did not specify documents or files, but informed the Receiver and the parties that, "Defendants do not anticipate that Dr. Thomas will require documents or files to be pulled for his review." Fama Dec at ¶ 4 and Exhibit A thereto at 1 (e-mail from Samantha D. Tama, August 26, 2008 2:06 PM). In short, defendants and their physician expert declined an opportunity to request documents, including documents regarding matters about which they now assert they cannot get current information.

Given all these opportunities to gather facts and evidence, most of which they have squandered, defendants' assertion that they have been prevented from obtaining necessary information must be rejected, and there is no cause for them to be granted discovery at this late date.

### IV.

**ALTERNATIVELY, IF THE COURT ORDERS THAT DEFENDANTS ARE ALLOWED TO FORMALLY OBTAIN DOCUMENTS FROM THE RECEIVER, THE ORDER SHOULD BE MADE APPLICABLE TO ALL PARTIES.**

As discussed above, the Court should deny Defendants' Request. However, in the alternative if the Court orders that defendants are allowed to formally obtain documents from the Receiver, then the order should be made applicable to all parties. Discovery, to be fair, must take place on a level playing field, with all parties having the same opportunities.

-10-

## CONCLUSION

For the reasons stated above, defendants' request should be denied. Alternatively, if the Court permits defendants to obtain documents from the Receiver, plaintiffs request that the order be made applicable to all parties.

Dated: September 5, 2008

By: /s/ *Steven Fama*
Steven Fama

PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

*Attorneys for Plaintiffs*