PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
E. IVAN TRUJILLO, Bar No. 228790
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
SARAH M. LAUBACH, Bar No. 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF, Bar No. 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants | No.: Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>vs.<br><br>    Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' STATEMENT RE DISCOVERY DISPUTE RE MATTHEW CATE DEPOSITION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND ..................................................................................... 2

THE PARTIES HAVE MET AND CONFERRED ............................................................ 4

ARGUMENT ....................................................................................................................... 5

    I.    The Court Should Reopen Secretary Cate's Deposition and Require him to Respond to the Relevant Questions ............................................................. 5

        A.    The Deliberative Process Privilege Is a Narrow Conditional Privilege That May Be Overcome ................................................................................ 5

        B.    Any Deliberative Process Privilege is Overcome Where, as Here, Defendants Have Put Their Deliberative Processes At Issue ................... 7

        C.    Any Deliberative Process Privilege is Overcome Where, as Here, Plaintiffs' Need For The Information Greatly Outweighs Any Government Interest In Non-Disclosure ................................................. 10

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

## CASES

*Assembly of State of California v. U.S. Department of Commerce,*
968 F.2d 916 (9th Cir. 1992) .................................................................................... 5

*Burlington N. of Santa Fey Ry. Co. v. U.S. Dist. Ct.,*
408 F.3d 1142 (9th Cir. 2005) ................................................................................... 5

*Carter v. U.S. Department of Commerce,*
307 F.3d 1084 (9th Cir. 2002) ................................................................................... 5

*Coastal States [Gas Corp. v. Department of Energy,*
617 F.2d 854 (D.C.Cir. 1980)] .................................................................................. 5

*Department of Interior v. Klamath Water Users Protective Association,*
532 U.S. 1 (2001) ...................................................................................................... 5

*Environmental Protection Agency v. Mink,*
410 U.S. 73 (1973) .................................................................................................... 5

*FTC v. Warner Comm's Inc.,*
742 F.2d 1156 (9th Cir. 1984) ............................................................................ 5, 6, 7

*L.H. v. Schwarzenegger,*
2007 WL. 2009807 (E.D. Cal 2007) .................................................................... 7, 10

*Landry v. F.D.I.C.,*
204 F.3d 1125 (D.C. Cir. 2000) ................................................................................. 6

*NLRB v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975) ............................................................................................ 5, 11

*N. Pacifica, LLC v. City of Pacifica,*
274 F. Supp. 2d 1118 (N.D. Cal. 2003) .............................................................. 6, 7, 10

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,*
145 F.3d 1422 (D.C. Cir. 1998) ............................................................................. 6, 7

*U.S. v. Rozet,*
183 F.R.D. 662 (N.D. Cal. 1998 ................................................................................ 6

*United States v. Gray,*
876 F.2d 1411 (9th Cir. 1989) ................................................................................... 6

*United States v Phoenix Union High School,*
681 F.2d 1235 (9th Cir. 1982) ................................................................................. 10

## STATUTES

5 United States Code

   §552 .................................................................................................................... 5

18 United States Code

   §3626(a)(2) ......................................................................................................... 2
   §3626(a)(3)(E)(i) and (ii)..................................................................................... 2

# INTRODUCTION

The *Plata and Coleman* plaintiffs jointly bring this motion seeking an order reopening the deposition of CDCR Secretary Matthew Cate and requiring Mr. Cate to respond to questions about communications with the Governor and the Governor's aides. Defendants have stipulated that the deposition, if reopened, may proceed after the September 8, 2008 non-expert discovery cutoff.

Mr. Cate refused to answer questions about his conversations with the Governor or the Governor's aides even though the conversations concerned matters key to this case (including strategies to solve the prison overcrowding crisis, and health care) and despite the numerous orders from this Court and the Three-Judge Panel rejecting defendants' deliberative process claims. This invocation of the deliberative process privilege is improper because defendants put their deliberative communications at issue in this case, and the public need for disclosure outweighs any interest in protecting the communications.

Defendants' litigation position in this case is that overcrowding is not the primary cause of the ongoing constitutional violations, and that the court should not enter a "prisoner release order" because defendants will resolve the overcrowding crisis through other means. Defendants also aver that any court-ordered prisoner release would have an adverse impact on public safety. At the heart of the defense is the argument that defendants have considered the alternatives and are planning to implement safe alternative prison population control measures. Mr. Cate is offered by defendants as the witness "expected to give testimony on the size of the CDCR population and the means of addressing that population through a combination of programs…" Specter Decl., Exh. C. But Mr. Cate testified that CDCR would not implement population control measures without ensuring that they were "consistent with" the Governor's office's positions on the issue, and that he discussed strategies to reduce overcrowding with the Governor and his aides. Specter Decl., Exh. A at 115-116, 12-35.[1] Indeed, the administration

---

[1] The deposition transcript is rough, and there are two sets of page numbers on each page. The page numbers referenced herein are the page numbers at the bottom of the page of the exhibit.

shut down one pilot "parole reform" program. *Id.* at 116-120. As this Court has recognized, it is "difficult to imagine how defendants could present evidence at trial in their own behalf without abandoning the deliberative process privilege." 8/29/08 Order at 10 (Coleman Docket No. 1435).

The only way for plaintiffs to understand and test defendants' position that CDCR will implement appropriate measures is to discover what population reduction alternatives the Governor's office and CDCR have considered, and why some alternatives were adopted and others rejected. By refusing to answer deposition questions pursuant to the deliberative process privilege, defendants have prevented plaintiffs from discovering information essential to their case. In a case as important as this one, the public interest in disclosing the Governor's communications regarding overcrowding far outweigh any countervailing considerations.

## PROCEDURAL BACKGROUND

The central allegations in these proceedings are that California's prisons are overcrowded and that the overcrowding is the primary cause of violations of prisoners' constitutional rights to adequate medical and mental health care. Plaintiffs seek a court order requiring the State to reduce its prison population. Under the Prison Litigation Reform Act (PLRA), in order to obtain a "prisoner release order," plaintiffs need to demonstrate to a specially-constituted Three-Judge Panel that "crowding is the primary cause of the violation of a Federal Right" (here, the rights to medical and mental health care), and that "no other relief will remedy the violation of the Federal Right." 18 U.S.C. §§3626(a)(3)(E)(i) and (ii). The PLRA also requires any Three-Judge Panel hearing such a motion to consider whether a "prisoner release order" would have an "adverse impact on public safety." 18 U.S.C. §3626(a)(2).

Defendants have contended, among other things, that overcrowding is not the primary cause of the constitutional violation, that relief other than a court order will remedy any violation, and that any court-imposed prisoner release order would adversely impact public safety.

Yet defendants have persisted in blocking plaintiffs' attempts to obtain a full set of information about other population reducing measures they have considered, and about impacts on public safety, by refusing to respond to discovery on deliberative process privilege grounds. This Court, and the Three Judge Panel, has consistently rejected all such claims.

The history of defendants' improper invocation of the deliberative process privilege is extensive. Defendants first invoked the privilege in response to requests for production of documents served on defendants by plaintiffs on September 5, 2007. After lengthy disputes over the privilege log ensued, this Court issued an order on December 7, 2007 finding that defendants' privilege logs failed to describe the documents in sufficient detail to enable plaintiffs and the court to assess the privilege. 12/7/07 Order at 10:10-21. The Three Judge Panel denied defendants' request for reconsideration in part, but granted defendants leave to revise their privilege log and remanded the matter to this Court for further consideration. 12/14/07 Order.

Defendants finally served revised privilege logs on February 15, 2008, which continued to make unwarranted assertions of deliberative process privilege. The parties again raised the matter before this Court. *See* Joint Statement Regarding Discovery Disputes (*Coleman* Doc. No. 2689) at 10:22-23. On May 29, 2008, this Court ruled that defendants had improperly asserted the deliberative process privilege, and ordered defendants to produce, among other things, documents for which they claimed deliberative process privilege. 5/29/08 Order at 8:6-18. In violation of this order, defendants did not produce these documents to plaintiffs within five business days of the order. Instead, they sought reconsideration by the Three Judge Panel. The Three Judge Panel rejected the motion. 7/8/08 Order (*Coleman Doc.* No. 2862). Defendants then filed a petition for a writ of mandate in the Ninth Circuit Court of Appeals. The Ninth Circuit denied the petition for writ of mandate.

Only after the Ninth Circuit ruled in August, 2008 did defendants produce the documents that this Court had ordered produced in its May 29, 2008 Order. *See Coleman Doc. No.* 2933 (8/11/08 Def's Statement).

But that was not the end of the matter. Despite all of the previous court orders rejecting their deliberative process privilege arguments, defendants served yet another privilege log in August of 2008 that once again makes spurious deliberative process claims. In its order of August 29, 2008, this Court rejected defendants' most recent invocation of the deliberative process privilege, and ordered responsive documents to be produced. *See* 8/29/08 Order (Coleman Docket No. 1435). Defendants are now seeking reconsideration of that order.

On August 29, 2008, CDCR Secretary Matthew Cate appeared for his deposition as noticed by plaintiffs. Mr. Cate testified that he had conversations with the Governor and the Governor's top aides about, among other things, 1) overcrowding in the prisons (including CDCR's "integrated strategy on overcrowding,") 2) parole reform (a potential population reducing measure), 3) CDCR budget proposals (which, in January 2008, included a provision to release more than 22,000 prisoners); 4) healthcare issues; 5) this case (the Three-Judge Panel proceedings); and 4) missions and goals of CDCR, including plans for Mr. Cate's first 100 days in office (which began with his appointment in May, 2008). Specter Decl., Exh. A 12-35. Mr. Cate refused to answer questions about the substance of these conversations pursuant to the deliberative process privilege. *Id.*

Other deponents have also refused to answer questions about communications with the Governor. Specter Decl., Exh. B at 84-85. Still other depositions have yet to be taken, including depositions of the Governor and his aides, depositions of Republican state legislators who intervened as defendants in this action, and other public officials.

## THE PARTIES HAVE MET AND CONFERRED

The parties conferred about the subject matter of this dispute during the August 29, 2008 deposition of CDCR Secretary Matthew Cate. Specter Decl., ¶5, Exh. A at 21-24, Exh. D. Although the parties were unable to resolve the matter informally, defense counsel agreed that the instant motion could be heard after the September 8, 2008 cutoff for non-expert discovery. *Id.*, ¶5, Exh. D. Accordingly, the parties have agreed to submit this matter to the Court with the understanding that, should the court grant plaintiffs' motion, Mr. Cate's reopened deposition could proceed after the discovery cutoff. *Id.*

# ARGUMENT

## I. The Court Should Reopen Secretary Cate's Deposition and Require him to Respond to the Relevant Questions

### A. The Deliberative Process Privilege Is a Narrow Conditional Privilege That May Be Overcome

This Court has correctly set forth the standard for invoking the deliberative process privilege on numerous occasions, most recently in the Order of August 29, 2008 at 8-9 (Coleman Docket No. 1435), which quotes the Court's Order of May 29, 2008:

> The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).[2] It was "developed to promote frank and independent discussions among those responsible for making governmental decisions, *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87 (1973), and also to protect against premature disclosure of proposed agency policies or decisions." *FTC v. Warner Comm's Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States [Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866(D.C.Cir. 1980)]; see also *NLRB*, 421 U.S. at 150-51.
>
> To qualify for the privilege a document must be both "predecisional" and "deliberative." *Id.*
>
> "A 'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. A predecisional document is part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."
>
> *Carter v. U.S. Department of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (quoting *Assembly of State of California v. U.S. Department of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (internal citations omitted)).

---

[2] The case law addressing this privilege has generally been in the context of actions brought under the Freedom of Information Act, ("FOIA"), 5 U.S.C. §552. The rationale of the FOIA cases, however, is equally applicable where the governor asserts the privilege to protect documents from disclosure during civil discovery. See *NLRB*, 421 U.S. at 148-50.

1   The deliberative process privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal quotation marks omitted).

The party asserting the deliberative process privilege has the burden to demonstrate that the privilege applies to the information in question. *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989). Thus, this Court has found (and the Three-Judge Panel has affirmed) that a proper invocation of the deliberative process privilege requires:

> "(1) a formal claim of privilege by the head of the department possessing control over the requested information, (2) an assertion of the privilege based on actual personal consideration by that official, and (3) a detailed specification of the information for which the privilege is claimed, along with an explanation why it properly falls within the scope of the privilege." *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000).

8/29/08 Order at 9-10 (quoting 5/29/08 Order at 6-7). Thus, as the Three-Judge Panel found, "A party does not satisfy its burden by offering assertions of privilege that are 'functionally silent,' or, in other words, expressly invoke a particular privilege but offer little information about the basis for the invocation of that privilege." 7/8/02 Order at 6 (quoting *Burlington N. & Santa Fey Ry. Co. v. U.S. Disct. Ct.*, 408 F.3d 1142, 1147 & n.2(9th Cir. 2005)).

Even if a party does establish the underlying factors necessary for application of the deliberative process privilege, "[t]he deliberative process privilege is a qualified one." *FTC*, 742 F.2d at 1161. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.*; *see also U.S. v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998 ("privilege may be overcome by a strong showing of need on the part of the party seeking discovery").

First, if the government's deliberative processes are the issue being litigated, the government may not use the deliberative process privilege to avoid scrutiny of its actions and decisions. "The [deliberative process] privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424

(D.C. Cir. 1998). "If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield." *Id.*

Second, even where the deliberations are not the issue being litigated, a party "may obtain deliberative materials [or information] if his or her need for the materials [or information] and the need for accurate fact-finding override the government's interest in non-disclosure." *N. Pacifica*, 274 F. Supp. 2d at 1122 (alterations in original) (internal quotation marks omitted). "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *FTC*, 742 F.2d at 1161. The court should also consider "(5) the interest of the litigant, and society, in accurate judicial fact finding; and (6) the seriousness of the litigation and the issues involved." *L.H. v. Schwarzenegger*, 2007 WL 2009807 at *2 (E.D. Cal 2007) (citations omitted).

### B. Any Deliberative Process Privilege is Overcome Where, as Here, Defendants Have Put Their Deliberative Processes At Issue

Defendants have put their deliberations at issue in these proceedings, and cannot now shield them from discovery. *In re Subpoena Duces Tecum,* 145 F.3d at 1424.

Secretary Cate testified that he spoke with the Governor, the Governor's Chief of Staff (Susan Kennedy), Cabinet Secretary (Dan Dunmoyer) and Deputy Cabinet Secretary (Robert Gore) about matters including 1) overcrowding in the prisons (including CDCR's "integrated strategy on overcrowding"); 2) parole reform (a potential population reducing measure); 3) CDCR budget proposals (which, in January 2008, included a provision to release more than 22,000 prisoners); 4) healthcare issues; 5) this case (the Three-Judge Panel proceedings); and 4) missions and goals of CDCR, including plans for Mr. Cate's first 100 days in office (which began with his appointment in May, 2008). Specter Decl., Exh. A at 12-35. Each of these topics is integral to defendants' defenses in this action. Yet when plaintiffs' counsel asked what specifically was discussed about those topics, defense counsel interposed a global objection (including an objection to follow-up questions), stating that "*I think a real court would clearly*

-7-

*protect the communications with the governor's chief of staff and the governor's cabinet secretary, those deliberative communications I think a real court would protect those, and therefore I'm going to instruct the witness not to answer those questions."* Specter Decl., Exh. A at 22-23 (emphasis added).

But as this Court recognized,

> it is evident from the record before this court that the manner in which these proceedings are being defended involves presentation of material which will constitute a waiver of deliberative process privilege. The Governor has responded to interrogatories from plaintiffs that his administration 'continues to aggressively use the [October 4, 2006 overcrowding] Emergency Proclamation to address overcrowding in ways that are less intrusive than a prisoner release order.' Moreover, there is ample evidence in the record that the provisions of Assembly Bill 900 (AB 900) will play a substantial part in defendants' defense in these proceedings, a fact acknowledged by defendants at the September 24, 2007 hearing before the three-judge court when defendants stated that they 'would certainly like the opportunity to fully present to the court how AB 900 is rolling out and how it will roll out in the near future, so you have a better understanding—everybody at the table has a better understanding of what it can and can't do.'

12/7/07 Order at 13:26-14:12 (citation omitted).

Defendants have put at issue the topics of Mr. Cate's conversations with the Governor in at least two additional ways. First, defendants contend in this case that measures other than a court-ordered "prisoner release order" will alleviate overcrowding (*see, e.g., Coleman* Doc. No. 2781 (4/8/08 Joint Discovery Statement) at 10) and contend that they are implementing *or will implement* measures to resolve the overcrowding crisis safely. Defendants identify Secretary Cate as the individual who will testify about "the size of the CDCR population and the means of addressing that population through a combination of programs, such as reduced recidivism through parole reform, direct release of certain offenders, and enhanced clerical support to enable timely discharge of parolees." Specter Decl., Exh. C. Mr. Cate testified during his deposition that such population reducing measures can only be adopted if they are "consistent with" the Governor's position. *Id.*, Exh. A at 115-116. And he specifically testified that parole reform measures are "political charged," which would indicate they require the Governor's approval. *Id.* at 120. Accordingly, Mr. Cate's conversations with the Governor about overcrowding and potential methods for solving the overcrowding crisis (including

-8-

parole reform and the Governor's budget proposal to release 22,000 inmates), are directly at issue in this case.[3]

Defendants have also put at issue their deliberations regarding solving the health care crisis. Defendants contend that overpopulation is not the primary cause of the constitutionally inadequate health care because there are "[m]ultiple causes at play," including defendants' administrative ineptitude and systemic failures to, among other things, recruit and retain staff, employ a viable information technology system, and plan for and provide medical care as needed. *See Coleman* Doc. No. 2583 (Rifkin Decl.) Exh. C at 5); *see also Coleman* Doc. No. 2238 (Defs.' Suppl. Brief) at 18. And defendants have argued that *they are currently engaged in efforts that will provide relief for the constitutionally inadequate health care,* such as the implementation of appropriate health care policies and procedures, recruitment of qualified clinicians, and planning for and construction of appropriate medical and mental health beds. *Coleman* Doc. No. 2238 at 4-8. Mr. Cate also testified that he has spoken with the Governor and his aides about health care and the Three Judge Panel proceedings. Specter Decl., Exh. A at 12-35. By contending that they have considered the alternatives and have adopted – *or will adopt* – measures to resolve the health care crisis, defendants' have put their deliberations regarding those matters at issue in these proceedings. Indeed, as this Court has recognized, it is "difficult to imagine how defendants could present evidence at trial in their own behalf without abandoning the deliberative process privilege." 8/29/08 Order at 10 (Coleman Docket No. 1435).

Any deliberative process privilege that might attach to Mr. Cate's conversations with the Governor and his aides is overcome in this case because the information is directly related to the defenses defendants have raised in this case. Without access to the information reflecting

---

[3] Moreover, it is clear that the Governor has taken more than a passing interest in this matter This Court previously agreed with plaintiffs that "the Governor has made a number of public pronouncements on matters that will be at issue at the trial of this matter, [] the Governor has been personally involved in meetings and strategy sessions with state legislative leaders and others concerning prison overcrowding, and [] the Governor has personal information relevant to several defenses tendered in these proceedings." 8/14/08 Order at 6.

the Governor's conversations with CDCR Secretary Cate about these essential matters, plaintiffs cannot meaningfully address the state's argument that its failures are the real primary cause of the violations (rather than the population pressures resulting from overcrowding), that defendants' current and future remedial measures will solve the overcrowding and health care crises, and that any "prisoner release order" issued by the court (as opposed to measures voluntarily adopted by the state) would adversely impact public safety.

### C. Any Deliberative Process Privilege is Overcome Where, as Here, Plaintiffs' Need For The Information Greatly Outweighs Any Government Interest In Non-Disclosure

As demonstrated above, Mr. Cate's communications with the Governor concern matters at the heart of defendants' defenses in this important case, and plaintiffs' need for the information far exceeds any interest defendants may have in withholding the information. Under these circumstances, Mr. Cate should be required to answer the questions at issue. *N. Pacifica*, 274 F. Supp. 2d at 1122.

The factors the courts consider in balancing plaintiffs' need for discovery against the government's interest in non-disclosure tip heavily in favor of the plaintiffs in this case. For example, "the interest of the litigant, and ultimately society, in accurate judicial fact finding, and the seriousness of the litigation and the issues involved" are factors that weigh heavily in favor of disclosure. *See L.H.*, 2007 WL 2009807 at *8 (citations omitted). "[W]hen the issues involved are alleged violations of federally-protected civil rights, courts have consistently found that this need is heightened and the privilege is outweighed." *Id.* (citing *United States v. Phoenix Union High Sch.*, 681 F.2d 1235 (9th Cir. 1982), and other cases). Moreover, there is no evidence that defendants have maintained the confidentiality of the discussions for which a claim of privilege has been made.

The issues in this case are the most serious possible: indeed, they are matters of life and death, as inmates are daily denied the minimal level of medical and mental health treatment required by the Constitution. Society has a common interest in enforcing these rights and in ensuring accurate judicial fact-finding in a case of such sweeping political and

humanitarian consequence. Accordingly, this factor weighs in favor of disclosure of the information.

Moreover, the withheld information is highly relevant; indeed, it goes to the heart of plaintiffs' claim and defendants' defenses. As outlined in the previous section, Mr. Cate had a series of conversations with the Governor and his aides about matters at the core of this case, including strategies to address overcrowding and health care. Information about these communications are not available from any other source.

The Court should also examine the extent to which government discussions would be impeded by the disclosure of the substance of these communications. The ultimate purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151. There is no evidence that agency decisions would be hindered by the disclosure of this information.[4] Any speculative risk to the government of embarrassment is not enough to outweigh the interests of the class members whose rights are being gravely violated, the interest of the Court in accurate fact-finding, and the interest of the public in ensuring that the significant public policy matters involved in this case are considered with all relevant information at hand.

---

[4] We note that defendants did not even make the effort to properly invoke the deliberative process privilege. This Court found in its December 7, 2007 and May 29, 2008 Orders that "conclusory" descriptions of information "as 'pre-decisional' were not sufficient to establish that the information was covered by the deliberative process privilege. The District Court agreed. 7/8/08 Order at 6-7.

Defendants nonetheless made only the most conclusory assertion of privilege here. After Secretary Cate testified that he spoke with the Governor and his aides about a number of topics, and plaintiffs' counsel asked about the substance of those conversations, defense counsel interposed a global objection (including an objection to all follow-up questions), stating that "I think a real court would clearly protect the communications with the governor's chief of staff and the governor's cabinet secretary, those deliberative communications I think a real court would protect those, and therefore I'm going to instruct the witness not to answer those questions." Specter Decl., Exh. A at 22-23.

Such conclusory assertions of privilege do not satisfy the requirement that the privilege must be claimed in a specific, precise and certain manner. See L.H., 2007 WL 2009807 at *2. Defendants made no effort to demonstrate that the communications with the Governor's office were predecisional – as opposed to merely informational – nor did defendants demonstrate that the communications were deliberative, or that any recommendations were made or discussed in the course of the conversations. Finally, defendants failed to demonstrate that the contents of the communications were otherwise maintained as confidential.

In sum, these factors all weigh heavily in favor of disclosure. Plaintiffs respectfully request that this Court require Mr. Cate to appear for further deposition and to respond to plaintiffs' counsel's questions regarding his communications with the Governor.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court issue an order reopening the deposition of CDCR Secretary Matthew Cate and compelling Mr. Cate to respond to deposition questions about communications with and between the Governor and his aides regarding 1) overcrowding in the prisons and potential measures to resolve overcrowding (including CDCR's "integrated strategy on overcrowding"); 2) parole reform (a potential population reducing measure); 3) CDCR budget proposals (which, in January 2008, included a provision to release more than 22,000 prisoners); 4) healthcare issues; 5) this case (the Three-Judge Panel proceedings); and 4) missions and goals of CDCR, including plans for Mr. Cate's first 100 days in office (which began with his appointment in May, 2008).

Dated: September 5, 2008

Respectfully submitted,

*/s/ Rebekah Evenson*
Rebekah Evenson
Prison Law Office
Attorneys for Plaintiffs