1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  LISA A. TILLMAN – State Bar No. 126424
   Deputy Attorney General
6  KYLE A. LEWIS – State Bar No. 201041
   Deputy Attorney General
7  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
8  Telephone: (415) 703-5708
   Facsimile: (415) 703-5843
9  lisa.tillman@doj.ca.gov
   kyle.lewis@doj.ca.gov
10
11 Attorneys for Defendants

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

14          **AND THE NORTHERN DISTRICT OF CALIFORNIA**

15    **UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

16      **PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

17 RALPH COLEMAN, et al.,

18          Plaintiffs,

19     v.

20 ARNOLD SCHWARZENEGGER, et al.,

          Defendants.

No.  2:90-cv-00520 LKK JFM P

**THREE-JUDGE COURT**

21

22 MARCIANO PLATA, et al.,

23          Plaintiffs,

24     v.

25 ARNOLD SCHWARZENEGGER, et al.,

26          Defendants.

No. C01-1351 TEH

**THREE-JUDGE COURT**

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION**

**To:  Three-Judge Panel**

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF ISSUES ................................................................................3

III.  PROCEDURAL HISTORY ................................................................................4

    A.  Plata v. Schwarzenegger .......................................................................4

    B.  Coleman v. Schwarzenegger ..................................................................4

IV.  SUMMARY OF UNDISPUTED FACTS ..........................................................5

    A.  Plaintiffs Did Not Comply with the PLRA's Exhaustion Requirement .................5

    B.  The Three-Judge Panel Lacks Jurisdiction to Consider a Prisoner Release Order ................................................................................................5

    C.  Overcrowding Is Not the Primary Cause of, nor Remedy for, the Alleged Constitutionally Inadequate Delivery of Medical Care ..........................5

    D.  Overcrowding Is Not the Primary Cause of, nor Remedy for, the Alleged Constitutionally Inadequate Delivery of Mental Health Care ...............8

V.  LEGAL STANDARD ........................................................................................9

VI.  ARGUMENT ...................................................................................................10

    A.  This Proceeding Must Be Dismissed Because Plaintiffs Failed to Exhaust Their Administrative Remedies ................................................10

        1.  Failure to Exhaust Administrative Remedies is Grounds for Dismissal ..........................................................................................10

        2.  The PLRA Requires Exhaustion of Administrative Remedies .................10

        3.  The CDCR Offers Prisoners a Grievance and Appeal Process ................11

        4.  The Plata Plaintiff Class Representatives Failed to Exhaust ....................12

        5.  The Sole Remaining Coleman Class Representative Failed to Exhaust ..........................................................................................13

    B.  This Proceeding Must Be Dismissed Because the Three-Judge Panel Lacks Jurisdiction to Consider a Prisoner Release Order ...............15

        1.  No Prior Order Directed at Overcrowding Has Been Issued ....................15

        2.  The Three-Judge Panel Lacks Jurisdiction to Consider an Order with Respect to the General Prison Population .........................................16

    C.  Defendants Are Entitled to Summary Judgment or Summary Adjudication on the Grounds that Overcrowding Is Not the Primary Cause of, nor Remedy for, the Alleged Constitutionally Inadequate Delivery of Medical or Mental Health Care ..........................................17

        1.  Overpopulation Is Not "The Primary Cause" of, nor Remedy for, the Alleged Inadequacies in Medical Care in California's Prisons ..........18

        2.  Overpopulation Is Not "The Primary Cause" of, nor Remedy for, the Alleged Inadequacies in Mental Health Care in California's Prisons ...........................................................................20

# TABLE OF CONTENTS
(continued)

**Page**

VII.    CONCLUSION.................................................................................................. 21

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)

1604043.5

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Berg v. Kincheloe,*
   794 F.2d 457 (9th Cir. 1986) ............................................................10

*Bishop v. Lewis,*
   155 F.3d 1094 (9th Cir. 1998) ..........................................................14

*Booth v. Churner,*
   532 U.S. 731 (2001)...........................................................................10

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)..............................................................................9

*Coleman v. Wilson,*
   912 F. Supp. 1282 (E.D. Cal. 1995) ..................................4, 13, 14, 20

*Dean v. Coughlin,*
   804 F.2d 207 (2d Cir. 1986) ..............................................................16

*Foulk v. Charrier,*
   262 F.3d 687 (8th Cir. 2001) ............................................................14

*Griffin v. Griffin,*
   327 U.S. 220 (1946)..............................................................................9

*Jones v. Bock,*
   549 U.S. 199, ___, 127 S. Ct. 910 (2007).................................9, 10, 11

*Lewis v. Casey,*
   518 U.S. 343 (1996)............................................................................17

*Li v. Chertoff,*
   482 F. Supp. 2d 1172 (S.D. Cal. 2007)................................................9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)............................................................................10

*McKinney v. Carey,*
   311 F.3d 1198 (9th Cir. 2002) ..........................................................11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,*
   210 F.3d 1099 (9th Cir. 2000) ............................................................9

*Porter v. Nussle,*
   534 U.S. 516 (2002)......................................................................10, 11

*Preiser v. Rodriguez,*
   411 U.S. 475 (1973)............................................................................16

*Robi v. Five Platters, Inc.,*
   918 F.2d 1439 (9th Cir. 1990) ............................................................9

*Sacks v. Office of Foreign Assets Control,*
   466 F.3d 764 (9th Cir. 2006) ..............................................................9

*State of Idaho v. Hodel,*
   814 F.2d 1288 (9th Cir. 1987) ..........................................................10

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)

1604043.5

# TABLE OF AUTHORITIES
### (continued)

Page

*Turner v. Safley,*
    482 U.S. 78 (1987)..............................................................................16

*United States v. Jackson,*
    480 F.3d 1014 (9th Cir. 2007) ..........................................................18

*Vaden v. Summerhill,*
    449 F.3d 1047 (9th Cir. 2006) ................................................11, 13, 15

*Woodford v. Ngo,*
    548 U.S. 81 (2006)..................................................................11, 13, 15

*Wyatt v. Terhune,*
    315 F.3d 1108 (9th Cir. 2003) ....................................................9, 10, 11

## Statutes

18 U.S.C. § 3626 ......................................................................2, 15, 17, 20

42 U.S.C. § 1983 ............................................................................4, 10, 14

42 U.S.C. § 1997 ........................................................3, 10, 11, 12, 13, 14, 15

## Other Authorities

American Heritage College Dictionary *1106 (4th ed. 2002)*.......................18

Random House Webster's Unabridged Dictionary *1537 (2d ed. 1998)* .........18

## Rules

California Rules of Professional Conduct 3-310 .......................................15

Federal Rule of Civil Procedure 12 .......................................................9

Federal Rule of Civil Procedure 15 ......................................................14

Federal Rule of Civil Procedure 56 .......................................................9

## Regulations

Cal. Code Regs. tit. 15, § 3084.1 .........................................................11

Cal. Code Regs. tit. 15, § 3084.2 .........................................................11

Cal. Code Regs. tit. 15, § 3084.5 .........................................................11

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)

1604043.5

## I.    INTRODUCTION

Defendants request dismissal of this Three-Judge Panel proceeding, or in the alternative, that summary judgment or summary adjudication be granted in Defendants' favor.  Defendants assert jurisdictional defects in their motion to dismiss, because this proceeding is not in the correct procedural posture and cannot continue as a matter of law.  In addition, Defendants present matters of undisputed fact in their motion for summary judgment or summary adjudication, because the undisputed material facts establish that Plaintiffs cannot prove an essential element of their burden of proof, and that the requested prisoner release order cannot issue as a matter of law.

Defendants move to dismiss this proceeding on the following grounds:

1.  Plaintiffs failed to exhaust their administrative remedies.  Plaintiffs never raised overcrowding in any prior administrative appeal and never sought less intrusive relief specifically designed to address overcrowding.  In fact, the *Plata* and *Coleman* cases are not about overcrowding, but rather about medical and mental health care.

2.  This Three-Judge Panel lacks jurisdiction to consider Plaintiffs' request for a prisoner release order because no federal court has previously issued less intrusive orders to address or remedy overcrowding in California prisons.  Although Judge Henderson in the *Plata* case, and Judge Karlton in the *Coleman* case, both issued orders referring this matter to this Three-Judge Panel by finding that less intrusive orders had been issued, those prior orders were directed at medical care in *Plata* and at mental health care in *Coleman*.  No federal judge has issued less intrusive orders intended to remedy prison overcrowding.

3.  This Three-Judge Panel lacks jurisdiction over the general prison inmate population, because the *Plata* class consists of inmates with serious medical needs and the *Coleman* class consists of inmates with serious mental disorders.  Given the limits of the underlying Plaintiff classes, this Three-Judge Panel lacks jurisdiction to issue a general prisoner release order.

In the alternative, Defendants move for summary judgment or summary adjudication on the following grounds:

1.  The undisputed material facts establish as a matter of law that overcrowding is not the

- 1 -

1   "primary cause" of the alleged unconstitutional medical care in California prisons. Plaintiffs'

2   correctional healthcare expert, Dr. Ronald Shansky, conceded in his deposition that (a)

3   constitutionally adequate prison medical care is comprised of many components, (b) that it is

4   difficult to rank the components in order of importance, (c) that a reduction in the prison

5   population, by itself, will not cure prison medical care, (d) that a decrease in the prisoner

6   population of up to 40,000 inmates by itself would not result in a constitutionally adequate

7   medical care delivery system, and (e) that it is possible for the Receiver and the California

8   Department of Corrections and Rehabilitation (CDCR) to provide constitutionally adequate

9   medical care for 172,000 or more inmates.

10      2.  The undisputed material facts establish as a matter of law that overcrowding is not the

11   "primary cause" of the alleged unconstitutional mental health care in California prisons. It is

12   undisputed that (a) the Special Master in the *Coleman* case has never once identified

13   overcrowding as the primary cause of the alleged unconstitutional mental health care in California

14   prisons, and (b) the Special Master's report to the Court indicated that a release of 100,000

15   inmates would not solve mental health care problems in the prisons.

16      In light of these undisputed material facts, Plaintiffs cannot meet the strict causal standard

17   for a prisoner release order set forth in 18 U.S.C. § 3626. The Prison Litigation Reform Act

18   (PLRA) was enacted to restrict judicial imposition of prisoner release orders to only those cases

19   where crowding is the primary cause of the constitutional violation – in this case the alleged

20   unconstitutional provision of medical or mental health care. The *Plata* and *Coleman* cases are not

21   about housing or other environmental conditions. The violations at issue here are the alleged

22   inadequate delivery of medical and mental health care in California's prisons.

23      Although crowding may have some impact on the delivery of medical or mental health

24   care in California's prisons, the undisputed evidence establishes that crowding is not the primary

25   cause. The undisputed evidence confirms that a prisoner release order will not cure the alleged

26   constitutional deficiencies in medical and mental health care. Less intrusive measures, such as

27   those planned by the Receiver and recommended by the Special Master, are better designed to

28   address the primary cause of the problems with medical and mental health care. The Receiver's

- 2 -

1    next quarterly report will provide more relevant evidence of this point, and Defendants request

2    that the Court take judicial notice of the Receiver's report.

3                          **II.    STATEMENT OF ISSUES**

4    A.    The Prison Litigation Reform Act mandates that a prisoner exhaust his or her

5           administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Plaintiffs failed to

6           exhaust their administrative remedies before filing suit, because they failed to submit any

7           administrative appeal for relief specifically directed to overcrowding. In fact, Plaintiffs

8           never mentioned overcrowding in any administrative appeal before requesting referral to

9           this Three-Judge Panel. Does the PLRA require that this Three-Judge Panel proceeding

10          be dismissed based on Plaintiffs' failure to exhaust their administrative remedies

11          regarding overcrowding?

12   B.    Before a Three-Judge Panel can enter a prisoner release order, the courts must first enter

13          orders for less intrusive relief and give Defendants a reasonable amount of time to comply

14          with the previous orders. Neither the *Plata* Court nor the *Coleman* Court entered orders

15          for less intrusive relief specifically addressing overcrowding in California's prisons. Does

16          the PLRA require that this Three-Judge Panel proceeding be dismissed because there have

17          been no prior less intrusive orders designed to address prison overcrowding?

18   C.    Is this Three-Judge Panel barred from issuing a general prisoner release order, because it

19          does not have jurisdiction over the general prison population because the *Plata* class is

20          limited to inmates with serious medical needs and the *Coleman* class is limited to inmates

21          with serious mental disorders?

22   D.    A three-judge panel can only issue a prisoner release order if it finds by clear and

23          convincing evidence that crowding is the "primary cause" of the violation of a Federal

24          right and that no other relief will remedy such violation. Does the undisputed evidence

25          establish that Plaintiffs cannot meet their burden to prove, by clear and convincing

26          evidence, that prison overcrowding is the primary cause of the alleged unconstitutional

27          medical care and mental health care and that no other relief will remedy the alleged

28          violations?

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)

1604043.5

### III.    PROCEDURAL HISTORY

A.    *Plata v. Schwarzenegger*

The *Plata* class action lawsuit challenges the medical care delivery system of the CDCR. The Amended Complaint, filed on August 20, 2001, alleges that the medical care delivery system operated by the CDCR does not, and with current systems and resources cannot, properly care for and treat the prisoners in its custody.  The parties negotiated a settlement of the litigation which is encompassed in the Stipulation and Order for Injunctive Relief (Stipulation) which was approved by the Court on June 13, 2002.  The Stipulation defines the Plaintiff class as "California state prisoners who have serious medical needs."  Following entry of the Stipulation, the parties entered into a remedial phase and roll-out plan to correct the alleged constitutional violations. Three years later, the Court ordered the appointment of a Receiver to take control of CDCR's medical care system.  This appointment became effective April 17, 2006.

On November 13, 2006, Plaintiffs filed their motion to convene a three-judge panel.  Over Defendants' objections, the *Plata* Court held a joint hearing on June 27, 2007 in Sacramento.  On July 23, 2007, the Court granted Plaintiffs' motion to convene this Three-Judge Panel.

B.    *Coleman v. Schwarzenegger*

In 1990, the *Coleman* Plaintiffs filed this class action under 42 U.S.C. § 1983 alleging that the mental health care services provided by CDCR were so inadequate that the class members' rights under the Eighth and Fourteenth Amendments were violated.  The certified class consisted of those inmates "with serious mental disorders" confined within CDCR.  *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995).  In 1995, this Court granted injunctive relief by directing the development and implementation of remedial plans and appointing a special master to monitor those remedial steps.  *Id.* at 1298 n.10.

The *Coleman* court has issued a variety of orders to ensure the development of a constitutionally adequate mental health services delivery system.  None of those orders directed Defendants to address the inmate population of the entire CDCR system.  Rather, the orders have consistently focused upon the development of the integral components of a constitutionally adequate mental health care system: sufficient and qualified mental health care staff, appropriate

- 4 -

1   policies and procedures for mental health care, accurate record and data management, and

2   sufficient licensed and unlicensed beds for mental health patients. *Id.*

3       On November 13, 2006, Plaintiffs moved to convene a three-judge panel. After briefing

4   and oral argument, and over Defendants' objections, this Court granted Plaintiffs' motions to

5   convene a three-judge panel.

6                   **IV.    SUMMARY OF UNDISPUTED FACTS**

7   A.    **Plaintiffs Did Not Comply with the PLRA's Exhaustion Requirement.**

8       Neither the *Plata* nor *Coleman* named class representatives exhausted their administrative

9   remedies for the issues raised in this three-judge panel proceeding before filing suit. Indeed,

10  before the *Plata* lawsuit was filed, on April 5, 2001, none of the ten named class representatives

11  (including Marciano Plata (aka Marcial Plata), Gilbert Aviles, Steve Bautista, Paul Decasas,

12  Raymond Johns, Joseph Long, Clifford Myelle, Leslie Rhoades, Raymond Stoderd, and Otis

13  Shaw[1]) exhausted their administrative remedies with regard to whether overcrowding is the

14  primary cause of the alleged unconstitutional medical care or request the remedy of a prisoner

15  release order. (Defs.' Separate Stmt. of Undisputed Facts in Supp. of Mot. Dismiss, Alt., Mot.

16  Summ. J. (Stmt. Facts), ¶ 1.) Similarly, the sole remaining incarcerated *Coleman* class

17  representative, Ralph Coleman, failed to exhaust the issue of overcrowding as the primary cause

18  of alleged unconstitutional mental health care or a prisoner release order before filing the motion

19  to convene the three-judge panel. (*Id.* ¶ 2.)

20  B.    **The Three-Judge Panel Lacks Jurisdiction to Consider a Prisoner Release Order.**

21      Plaintiffs in the *Plata* class consist of inmates with serious medical needs, while the

22  *Coleman* class consists of inmates with serious mental disorders. (Stmt. Facts, ¶¶ 4, 5.) Since the

23  filing of both the *Plata* and *Coleman* actions, Plaintiffs in both class actions have never sought,

24  and no court order has ever ordered, any less intrusive relief directed at overcrowding. (*Id.* ¶ 3.)

25  C.    **Overcrowding Is Not the Primary Cause of, nor Remedy for, the Alleged
26          Constitutionally Inadequate Delivery of Medical Care.**

27      According to the Receiver, the overall goals of a constitutionally adequate prison medical

_____

28  [1] Plaintiffs Decasas, Long, and Shaw are no longer incarcerated.

- 5 -

1    care system are to reduce unnecessary morbidity and mortality, improve inmates' health status

2    and functioning, coordinate care with mental health and dental, and protect public health.  (Stmt.

3    Facts, ¶ 6.)  While California's average annual mortality rate among State prison inmates (per

4    100,000 inmates) from leading causes of illness deaths between 2001 and 2004 was 170, the

5    national average for annual mortality of State prison inmates for the same period of time was 223.

6    (*Id.* ¶¶ 7, 8.)  Additionally, the average mortality rate among State prison inmates for the Western

7    region of the United States during the same period was 181.  (*Id.* ¶ 8.)

8         Both the *Plata* Plaintiffs' medical expert and the Receiver agree that there are multiple,

9    interrelated components of a constitutionally adequate correctional healthcare system, including:

10   (i) adequate numbers of appropriately trained and credentialed professional staff; (ii) an adequate

11   environment within which to work including appropriate equipment and conditions which ensure

12   an environment that is conducive to a professional assessment including privacy; (iii) a system of

13   documenting the healthcare interactions including assessments, plans, orders, results of tests, etc.;

14   (iv) a system of tracking to ensure continuity with regard to all elements of professionally created

15   plans, including medications, lab, x-ray, other ancillary services, follow-up visits, specialty

16   referrals, etc.; (v) a system that allows for the movement of patients to appropriate levels of care

17   based on the complexity of their medical problems, including both inpatient and outpatient; (vi) a

18   system of self-monitoring in order to identify patters of breakdowns in the system for which

19   improvement strategies can then be implemented in order to mitigate the breakdowns; (vii) the

20   ability to ensure access regardless of custody level or housing situation, meaning sufficient

21   officers to both ensure access onsite and to ensure access to offsite services; (viii) sufficient

22   resources in the community either through offsite encounters or some sort of tele-medicine

23   arrangement so that specialized care can be provided when ordered by the clinician; and (ix) a

24   system of ensuring that credentialing is done on entry-based standards related to the type of

25   practice the clinician is going to be engaged in and that the credentialing process mirrors what

26   happens in the community at an HMO or a hospital in terms of the processes used.  (*Id.* ¶ 9.)

27        The *Plata* Plaintiffs' medical expert similarly believes that it is very difficult to rank these

28   interrelated components in terms of importance and very hard to single out a most important

- 6 -

1    component. (*Id.* ¶ 10.) Additionally, the *Plata* Court itself acknowledged that the problem with

2    the delivery of constitutionally adequate medical care in CDCR facilities is a polycentric

3    problem, involving an historical lack of leadership, planning, and vision by the State's highest

4    officials during a period of exponential growth of the prison population. (*Id.* ¶ 11.)

5         The *Plata* Plaintiffs' expert does, however, believe that one of the most important factors

6    to remedy CDCR's failed medical care delivery system is changing the culture. (*Id.* ¶ 12.)

7    Additionally, operating a constitutionally adequate medical system in California requires, among

8    other things, providing oversight to clinical personnel as well as overhauling dysfunctional

9    business and financial systems. (*Id.* ¶ 13.) Notably, Plaintiffs' expert has testified that simply

10   reducing the prison population will not by itself cure the problems with specialty medical care.

11   (*Id.* ¶ 14.) Plaintiffs' expert also believes that a prisoner reduction will only impact the volume of

12   the use of a paper-based medical scheduling system, not solve the problems caused by such a

13   system. (*Id.* ¶ 15.) Likewise, a reduction in the prison population would not, according to

14   Plaintiffs' own expert, solve the problems caused by CDCR's storage of unit health records for

15   returning prisoners at a southern regional facility. (*Id.* ¶ 16.) Nor does Plaintiffs' expert believe

16   that a reduction in the prisoner population would result in an effective computer network, which

17   is essential to providing adequate medical care. (*Id.* ¶ 17.) Most importantly, Plaintiffs' medical

18   expert believes that a decrease in the prisoner population of up to 40,000 inmates by itself would

19   not result in a constitutionally adequate medical care delivery system. (*Id.* ¶ 18.)

20        There have been improvements in the delivery of medical care since the Receiver was

21   appointed, including responsiveness to inmate appeals, timeliness of appointments, and staffing.

22   (*Id.* ¶ 19.) Additionally, the number of board-certified and board-eligible physicians employed at

23   CDCR institutions has increased dramatically in part due to improvements by the Receiver in

24   compensation. (*Id.* ¶ 20.) The Plaintiffs' medical expert believes that an adjustment of the

25   medical classification system is a possible solution to the staffing issues at some of the remotely

26   located prisons, such as California State Prison, Avenal or High Desert State Prison. (*Id.* ¶ 21.)

27        The Receiver's November 15, 2007 Plan of Action addressed many of the important

28   issues impacting medical care within California's prisons that are potentially within the

- 7 -

1    Receiver's purview. (*Id.* ¶ 22.) Further, neither the Receiver's November 15, 2007 Plan of

2    Action, nor the Receiver's June 2, 2008 Turnaround Plan of Action, state that overcrowding

3    would prohibit the Receiver and CDCR from developing a constitutionally adequate medical care

4    delivery system. (*Id.* ¶ 23.) And according to Plaintiffs' own medical expert, it is possible for the

5    Receiver and CDCR to ultimately provide constitutionally adequate medical care to 172,000 plus

6    inmates. (*Id.* ¶ 24.)

7    **D.    Overcrowding Is Not the Primary Cause of, nor Remedy for, the Alleged**
     **Constitutionally Inadequate Delivery of Mental Health Care.**

8

9            Whether the delivery of mental health care to inmates is constitutionally adequate depends

10   upon six basic components: (1) a systematic program for screening and evaluating inmates to

11   identify those in need of mental health care; (2) a treatment program that involves more than

12   segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number

13   of trained mental health professionals; (4) maintenance of accurate, complete, and confidential

14   mental health treatment records; (5) administration of psychotropic medication only with

15   appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and

16   supervise inmates at risk for suicide. (Stmt. Facts ¶ 25.) Since 1998, the Special Master in

17   *Coleman* has prepared twenty reports on the status of the delivery of mental health care to

18   California's adult inmates. (*Id.* ¶ 26.) None of these reports has identified overcrowding as the

19   primary cause of the alleged constitutional inadequacies. (*Id.* ¶ 27.) Similarly, none of these

20   reports has recommended or asked for any orders on population control. (*Id.* ¶ 28.)

21           According to Special Master Keating, clinicians cannot be spread out evenly over the

22   Mental Health Care Services Delivery System because staffing ratios are much more intensive in

23   inpatient setting (intermediate care, acute care, and mental health crisis beds), as opposed to

24   outpatient care (Enhanced Outpatient Program and Correctional Clinical Case Management

25   System). (*Id.* ¶ 29.) A reduction in the overall inmate population would not enable any increase

26   in this specialized clinical staffing and licensed beds necessary to serve the needs of the mental

27   health caseload. (*Id.* ¶ 30.) Even a release of 100,000 inmates would still not resolve the need to

28   provide sufficient clinical staffing and licensed mental health beds to serve this population. (*Id.* ¶

- 8 -

1  31.)  Additionally, Defendants have submitted a detailed plan to provide mental health beds and

2  have already engaged in implementing increased pay to recruit and retain the necessary staff to

3  enable care in those beds.  (*Id.* ¶ 32.)

### V.    LEGAL STANDARD

5          Under *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), this motion is brought in part

6  under the unenumerated portion of Federal Rule of Civil Procedure 12(b).  *But see Jones v. Bock*,

7  549 U.S. 199, ___, 127 S. Ct. 910, 921 (2007) (holding that failure to exhaust under the PLRA is

8  an affirmative defense).

9          With respect to lack of jurisdiction, this motion is brought under Federal Rule of Civil

10  Procedure 12(b)(1) and 12(b)(6), alternatively.  *Sacks v. Office of Foreign Assets Control*, 466

11  F.3d 764, 771 (9th Cir. 2006); *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1174-75 (S.D. Cal. 2007).

12          In the alternative, this motion is also brought under Federal Rule of Civil Procedure 56(b),

13  (c), and (d)(1) to seek summary judgment or alternatively summary adjudication of claims, issues,

14  and/or facts.  *Griffin v. Griffin*, 327 U.S. 220, 225-226 (1946); *Robi v. Five Platters, Inc.*, 918

15  F.2d 1439, 1441 (9th Cir. 1990).  Summary judgment is appropriate if there is no genuine issue as

16  to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

17  P. 56(c).  The moving party bears the initial burden of identifying those portions of the pleadings,

18  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

19  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the movant does not bear the burden of

20  persuasion at trial, he may carry his initial burden of production by either producing evidence

21  "negating an essential element of the nonmoving party's case, or, after suitable discovery, the

22  moving party may show that the nonmoving party does not have enough evidence of an essential

23  element of its claim . . . to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine*

24  *Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  When the movant meets its

25  initial burden, entry of summary judgment is mandated where the nonmoving party fails to "set

26  out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

27          The burden then shifts to the opposing party to show that summary judgment is not

28  appropriate.  *Celotex*, 477 U.S. at 324.  To avoid summary judgment, the opposing party cannot

- 9 -

1   rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

2   Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a

3   "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec.*

4   *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Because this case is governed

5   by the clear and convincing evidence standard, Defendants are entitled to summary judgment

6   unless Plaintiffs can show that there is clear and convincing evidence that crowding is the primary

7   cause of a violation of their Federal rights and that no other relief will remedy that violation.

8   *State of Idaho v. Hodel*, 814 F.2d 1288, 1294 (9th Cir. 1987) (per curiam).

9          As explained below, there is no disputed issue of material fact and both the *Plata* and

10  *Coleman* Defendants are entitled to summary judgment in their favor as a matter of law.

11                         **VI.    ARGUMENT**

12  A.    **This Proceeding Must Be Dismissed Because Plaintiffs Failed to Exhaust Their**
13        **Administrative Remedies.**

14         1.    Failure to Exhaust Administrative Remedies is Grounds for Dismissal.

15         In this Circuit, a prisoner's failure to exhaust administrative remedies as required by the

16  Prison Litigation Reform Act (PLRA) is a matter in abatement properly raised in an

17  unenumerated 12(b) motion. *See Wyatt,* 315 F.3d at 1119; *but see Bock,* 549 U.S. at ___, 127 S.

18  Ct. at 921 (holding that failure to exhaust under the PLRA is an affirmative defense). "In

19  deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look

20  beyond the pleadings and decide disputed issues of fact." *Wyatt,* 315 F.3d at 1119-20. If the

21  court determines that the inmate has not exhausted his administrative remedies, the case should be

22  dismissed without prejudice. *Id.*

23         2.    The PLRA Requires Exhaustion of Administrative Remedies.

24         In the PLRA, Congress amended 42 U.S.C. § 1997e(a) and imposed an exhaustion

25  requirement on suits by prisoners. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v.*

26  *Churner*, 532 U.S. 731 (2001). The amended 42 U.S.C. § 1997e(a) provides that "[n]o action

27  shall be brought with respect to prison conditions under section 1983 of this title, or any other

28  Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

                                    - 10 -

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)                           1604043.5

1  administrative remedies as are available are exhausted." It applies to "all inmate suits about

2  prison life, whether they involve general circumstances or particular episodes." *Porter*, 534 U.S.

3  at 532. Even when a prisoner brings an action where relief is not available in the grievance

4  process, exhaustion is still a prerequisite to suit. *Id.*

5  The exhaustion requirement under § 1997e(a) "is now mandatory" and is "a prerequisite

6  to suit." *Porter*, 534 U.S. at 524. Moreover, a prisoner must comply with an agency's deadlines

7  and other procedural rules in order to meet the exhaustion requirement. *Woodford v. Ngo*, 548

8  U.S. 81, 90-91 (2006). Furthermore, the prisoner must exhaust administrative remedies before

9  filing suit, and exhaustion "subsequent to the filing of suit will not suffice." *McKinney v. Carey*,

10  311 F.3d 1198, 1199 (9th Cir. 2002). When there is no pre-suit exhaustion, the district court is

11  required to dismiss the complaint without prejudice. *Id.* at 1200-01; *Wyatt*, 315 F.3d at 1120.

12  Further, the Ninth Circuit requires exhaustion to be completed before any papers in federal court

13  are filed, stating that "[t]he bottom line is that a prisoner must pursue the prison administrative

14  process as the first and primary forum for redress of grievances" and "may initiate litigation in

15  federal court only after the administrative process ends and leaves his grievances unredressed."

16  *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).

17      3.   The CDCR Offers Prisoners a Grievance and Appeal Process.

18  The California Department of Corrections and Rehabilitation offers prisoners a four-step

19  grievance process to appeal "any departmental decision, action, condition, or policy which they

20  can demonstrate as having an adverse effect upon their welfare." *See* Cal. Code Regs. tit. 15, §

21  3084.1. The four levels of review include: (1) informal resolution; (2) first formal level of

22  review; (3) second formal level of review; and (4) third formal level of review. *See* Cal. Code

23  Regs. tit. 15, § 3084.5. For purposes of the PLRA, a decision at the third formal level of review,

24  or Director's level, constitutes exhaustion of administrative remedies. *See* Cal. Code Regs. tit.

25  15, §§ 3084.1(a), 3084.5(e)(2); *Woodford*, 548 U.S. at 85-86. Under California's regulations, an

26  inmate must "describe the problem and action requested" in his or her grievance. Cal. Code

27  Regs. tit. 15, § 3084.2(a); *see also Bock*, 549 U.S. at ___, 127 S. Ct. at 923 ("The level of detail

28  necessary in a grievance to comply with the grievance procedures will vary from system to

- 11 -

system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion.").

Plaintiffs may argue that it would be futile for this Court to require them to exhaust their administrative remedies regarding overcrowding. But recent events establish that prison crowding can be impacted administratively, without a more intrusive prisoner release order. CDCR has already transferred thousands of inmates to out-of-state prisons, and has already taken down hundreds of bad beds. In addition, CDCR has revised its parole policies and adopted new programs to reduce recidivism. All of these administrative efforts will help with overcrowding, and that is why it is necessary for Plaintiffs to exhaust their administrative remedies before seeking a much more intrusive prisoner release order that could cause harm to California communities.

    4.    The *Plata* Plaintiff Class Representatives Failed to Exhaust.

On April 5, 2001, through counsel, Plaintiffs filed the *Plata* action. (Pls.' Compl.) The named class representatives in the Amended Complaint are the following individuals: Marciano Plata (aka Marcial Plata), Gilbert Aviles, Steve Bautista, Paul Decasas, Raymond Johns, Joseph Long, Clifford Myelle, Leslie Rhoades, Raymond Stoderd, and Otis Shaw.[2] (Pls.' Am. Compl.) None of these class representatives exhausted their current complaints of overcrowding as the primary cause of the alleged unconstitutional medical care or request the remedy of a prisoner release order in an administrative grievance. (Stmt. Facts, ¶ 1.) Therefore, this proceeding must be dismissed without prejudice for failure to exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(a).

Except for inmates Aviles and Stoderd, none of these class representatives even exhausted any inmate appeals through the final level of review before the *Plata* action was filed.[3] (Stmt.

---

[2] Plaintiffs Decasas, Long, and Shaw are no longer incarcerated.
[3] Plaintiff Aviles exhausted one inmate appeal through the final level of review before the *Plata* suit was filed. (Stmt. Facts, ¶ 1 at Decl. Grannis ¶ 9.) In Inmate Appeal No. SATF-00-00136, Plaintiff Aviles grieved mailroom procedures and regulations, and exhausted this inmate appeal on November 21, 2000. (*Id.*) Plaintiff Stoderd exhausted two inmate appeals through the final level of review before the *Plata* suit was filed: (1) Inmate Appeal No. COR-98-01225; and (2) Inmate Appeal No. COR-99-02159. (Stmt. Facts, ¶ 1 at Decl. Grannis ¶ 17.) In Inmate Appeal No. COR-98-01225, Plaintiff Stoderd grieved whether a Medical Technical Assistant provided him with his prescribed medication, and exhausted this inmate appeal on December 18, 1998.

- 12 -

1    Facts, ¶ 1 at Decl. Grannis ¶¶ 8-17 & 19.)  None of the class-representative-Plaintiffs' inmate

2    appeals concern the issues at stake in this three-judge panel proceeding, namely that

3    overcrowding is the primary cause of allegedly unconstitutional medical care, and thus none of

4    the class representatives exhausted their administrative remedies.

5          Even if this Court only required, contrary to Ninth Circuit case law, that the class-

6    representative-Plaintiffs exhaust the issues at stake in this proceeding before they filed their

7    motion to compel the three-judge panel on November 13, 2006, this proceeding must still be

8    dismissed.  The Plaintiff-class representatives did not exhaust the issue of overcrowding as the

9    primary cause of alleged unconstitutional medical care and did not exhaust the request for a

10   prisoner release order.  (Stmt. Facts, ¶ 1.)  While the class-representative-Plaintiffs have

11   exhausted multiple other issues since the filing of the *Plata* lawsuit, they failed to exhaust the

12   issues at stake in this proceeding.  (Stmt. Facts, ¶1 at Decl. Grannis ¶¶ 8-17 & 19.)

13         As demonstrated, the class-representative-Plaintiffs failed to exhaust their administrative

14   remedies concerning the issues at stake in this three-judge panel proceeding.  Namely, no class-

15   representative-Plaintiff exhausted the issue of overcrowding as the primary cause of alleged

16   unconstitutional medical care or requested a prisoner release order either before this action was

17   filed as required by the Ninth Circuit or before Plaintiffs moved to convene this three-judge

18   panel.  Their failure to do so mandates dismissal of this proceeding without prejudice.  42 U.S.C.

19   § 1997e(a); *Woodford*, 584 U.S. 81; *Vaden*, 449 F.3d 1047.

20         5.    The Sole Remaining *Coleman* Class Representative Failed to Exhaust.

21         Filed in 1990, the *Coleman* case was not then subject to 42 U.S.C. § 1997e(a) as amended

22   in 1996.  However, when Plaintiffs filed their motion to convene the three-judge panel on

23   November 13, 2006, they were subject to the mandatory exhaustion requirement of § 1997e(a).

24   And the sole remaining incarcerated class-representative-Plaintiff, Ralph Coleman, failed to

25   exhaust the issue of overcrowding as the primary cause of alleged unconstitutional mental health

26   care or a prisoner release order.  (Stmt. Facts, ¶ 2.)  Therefore, this proceeding must be dismissed

27   _____

28   (*Id.*)  And in Inmate Appeal No. COR-99-02159, Plaintiff Stoderd grieved whether he should be
     prescribed pain medication, and exhausted this inmate appeal on February 7, 2000.  (*Id.*)

- 13 -

1    without prejudice. 42 U.S.C. § 1997e(a).

2        Although the *Coleman* case was filed before the passage of the PLRA's exhaustion

3    provision, the November 13, 2006 motion to convene a three-judge panel was filed after the

4    exhaustion provision became effective. Accordingly, the Plaintiff class's complaints of

5    overcrowding as the primary cause of their constitutional rights are tantamount to an amended

6    complaint, and, as such, must have been exhausted before being brought in court.

7        The PLRA exhaustion requirement does not apply retroactively. *Bishop v. Lewis*, 155

8    F.3d 1094, 1096 (9th Cir. 1998). However, courts have held that the exhaustion requirement

9    applies to amended complaints filed after passage of the PLRA, unless the complaint relates back

10   to an earlier filing. *Foulk v. Charrier*, 262 F.3d 687, 695 (8th Cir. 2001).

11       In *Jones v. Goord*, the court confronted a scenario like the instant case. No. 95-CIV-

12   8026-WHP, 2000 WL 290290 (S.D.N.Y. Mar. 20, 2000). Plaintiffs brought four individual

13   actions under 42 U.S.C. § 1983 before passage of the PLRA. *Id.* After the PLRA was passed,

14   plaintiffs asserted class-based allegations of unconstitutional conditions of confinement. *Id.* As a

15   result, the court determined that the exhaustion requirement applied to these amended allegations

16   unless the amended allegations related back to the pre-PLRA claims. *Id.* Similarly, in *Caruso v.*

17   *Zenon*, the court determined that an amended pleading filed after the PLRA was subject to the

18   exhaustion requirement, even though the original complaint was filed before its passage. No. 95-

19   MK-1578, 2005 WL 5957978 at *7 (D. Colo. July 25, 2005).

20       Here, the allegations by the Plaintiff class that overcrowding is the primary reason for the

21   alleged unconstitutional conditions and a request for a prisoner release order do not meet the

22   requirements for the relation-back doctrine under Federal Rule of Civil Procedure 15(c). While

23   Plaintiffs alleged that the prisons were overcrowded in their 1991 amended complaint (Pls.' Am.

24   Compl. ¶¶ 18-19), the allegations that overcrowding is the primary cause of unconstitutional

25   mental health care and a request for a prisoner release order were not a part of the original legal

26   claims brought by the Plaintiff class. Therefore, the amended allegations pertaining to

27   overcrowding are subject to the exhaustion requirement.

28       Since 1993, Plaintiff-representative Coleman exhausted five inmate appeals to the final

- 14 -

1  level of review. (Stmt. Facts, ¶ 2 at Decl. Grannis ¶ 18.) None of these inmate appeals concern

2  the issues at stake in this proceeding. (Stmt. Facts, ¶ 2 at Decl. Grannis ¶¶ 18-19.) Therefore,

3  this proceeding must be dismissed without prejudice. 42 U.S.C. § 1997e(a); *Woodford*, 584 U.S.

4  81; *Vaden*, 449 F.3d 1047.

5  B.    **This Proceeding Must Be Dismissed Because the Three-Judge Panel Lacks**
       **Jurisdiction to Consider a Prisoner Release Order.**

6

7       1.    No Prior Order Directed at Overcrowding Has Been Issued.

8           A three-judge panel cannot be convened, and thus does not have jurisdiction to consider, a

9  prisoner release order, unless Plaintiffs establish that "(i) a court has previously entered an order

10 for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be

11 remedied through the prisoner release order; and (ii) the defendant has had a reasonable amount

12 of time to comply with the previous court orders." 18 U.S.C. § 3626(a)(3)(A) & (C).

13          Although Judge Karlton and Judge Henderson previously determined that they did issue

14 orders for less intrusive relief, and that Defendants failed to comply with those orders, it is

15 undisputed that no federal judge has ordered less intrusive relief directed at addressing prison

16 overcrowding.

17          Plaintiffs did not initiate the underlying lawsuits in Coleman and Plata in an effort to

18 redress overcrowding. Instead, Plaintiffs brought the underlying lawsuits to remedy the alleged

19 unconstitutional medical and mental health care in CDCR's institutions. Plaintiffs' request for a

20 population cap would not remedy medical or mental health care, which must be accomplished by,

21 among other things, creating leadership, hiring qualified staff, appropriate office and treatment

22 space, and creating a useable records system. Instead, Plaintiffs simply seek to reduce the prison

23 population. Such a reduction will not remedy the alleged clinical problems in the delivery of

24 medical and mental health care that will continue to exist for the prisoners that remain.[4]

25          Moreover, strictly enforcing the requirement of a prior order directed at overcrowding is

26

27 [4] To the extent Plaintiffs ask the Three-Judge Panel to prioritize the release and interests of
   certain inmates over others, it potentially places Plaintiffs' counsel in a precarious ethical position
   given Rule 3-310 of the California Rules of Professional conduct, insofar as counsel could be
28 seen as advancing the interests of one set of clients to the detriment of the other.

- 15 -

important because the State of California has a right to attempt to remedy overcrowding before a judicially-imposed population cap is considered. The U.S. Supreme Court has repeatedly instructed federal courts not to become unduly enmeshed in running prisons. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). The rationale behind this policy is that the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems." *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973). "The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Id.* Thus, a remedial court order must balance the court's obligation to eliminate a constitutional violation with the state's right to administer its own prisons, with the state continuing to have the responsibility for implementing a plan to operate its prison in a constitutional manner. *Dean v. Coughlin*, 804 F.2d 207, 214 (2d Cir. 1986) (agreeing that relief was necessary, but nonetheless vacating injunction imposing comprehensive dental care plan on the state's prison system as a departure from the concepts of comity and federalism).

The Supreme Court's directives mandate that California be given a chance to address overcrowding before a court entertains a prisoner release order. The principles of comity, federalism, and judicial restraint favor allowing the democratic institutions of the State of California to attempt to resolve the larger prison overcrowding problem before a federal court imposes a population cap on the State, particularly where, as here, the State has not even been sued for overcrowded conditions. Plaintiffs' request for a prisoner release order must be dismissed.

2. The Three-Judge Panel Lacks Jurisdiction to Consider an Order with Respect to the General Prison Population.

The *Plata* class consists of inmates with serious medical needs. (Stmt. Facts, ¶ 4.) The *Coleman* class consists of inmates with serious mental disorders. (*Id.* ¶ 5.)

The U.S. Supreme Court has made clear that the role of federal courts is to provide relief only to claimants, whether in individual or class actions, "who have suffered, or will imminently

- 16 -

1    suffer, actual harm." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). It is not up to the courts, but to

2    the political branches, to conform the institutions of government with the laws and the

3    Constitution. *Id.* The distinct roles of the judiciary and the political branches are only permitted

4    to "briefly and partially coincide" where a court orders the alteration of an institution that causes

5    harm to a particular individual or class of individuals. *Id.* The U.S. Supreme Court has made

6    clear that the essential distinction between judge and executive must be maintained – that judges

7    should not assume the role of executive merely because an institution is poorly managed. *Id.* at

8    350.

9          The interests of the general prison population, including those of healthy inmates, are not

10   being represented in these class actions. Indeed, under *Lewis v. Casey*, healthy inmates would

11   not have standing to sue for purported inadequacies in the delivery of medical and mental health

12   care. See *id.* at 350. The *Plata* and *Coleman* classes necessarily consist of those inmates who

13   have been harmed by the alleged unconstitutional conditions, i.e., those inmates with serious

14   medical needs and serious mental disorders.

15         The general prison population is not a party to these lawsuits and does not have standing

16   to sue. Accordingly, the Three-Judge Panel lacks jurisdiction to consider a prisoner release order

17   directed at the entire prison population, rather than the members of the *Plata* and *Coleman*

18   classes. This action must then be dismissed.

19   **C.    Defendants Are Entitled to Summary Judgment or Summary Adjudication on the**
          **Grounds that Overcrowding Is Not the Primary Cause of, nor Remedy for, the**
20        **Alleged Constitutionally Inadequate Delivery of Medical or Mental Health Care.**

21         To obtain a prisoner release order, Plaintiffs have the burden to prove by clear and

22   convincing evidence that "crowding is the primary cause of the violation of a Federal right" *and*

23   that "no other relief will remedy the violation of the Federal right." 18 U.S.C. § 3626(a)(3)(E).

24   In the *Plata* case, the Federal right at issue is the delivery of a constitutional level of medical care

25   in California's prisons. In the *Coleman* case, the Federal right at issue is the delivery of a

26   constitutional level of mental health care in California's prisons.

27         Here, the PLRA prohibits a prisoner release order unless crowding is the primary cause of

28   the inadequacies in the delivery of medical care in California's prisons. The PLRA does not

- 17 -

1 define "primary," and thus the Court must look to the ordinary meaning of this term. *See United*

2 *States v. Jackson*, 480 F.3d 1014, 1022 (9th Cir. 2007). "Primary" commonly means "first or

3 highest in rank or importance; chief; principal." *Random House Webster's Unabridged*

4 *Dictionary* 1537 (2d ed. 1998); accord *American Heritage College Dictionary* 1106 (4th ed.

5 2002) ("First or highest in rank, quality, or importance; principal.") (RJN-11 & 12).

6   The term "the primary cause" must also be read in conjunction with the second, related

7 requirement that "no other relief will remedy the violation of the Federal right." In other words,

8 crowding must be so central to the condition complained of that it is the only remedy for the

9 problem. The two requirements read together reveal a meaning of "primary" consistent with the

10 common definition, i.e., for a prisoner release order to issue, crowding must be the most

11 important, or principal, cause of the violation.

12   The plain meaning of "the primary cause" is consistent with the legislative intent of the

13 PLRA, which was to impose a strict causal standard between crowding and the claimed violation

14 before a prisoner release order could issue. Senator Dole, the principal sponsor of the PLRA,

15 characterized the provisions on prisoner release orders as "tough new guidelines for Federal

16 courts when evaluating legal challenges to prison conditions" and "tough new conditions that a

17 Federal court must meet before issuing a prison cap order." The purpose of the bill was to

18 restrain "[p]erhaps the most pernicious form of judicial micro-management . . . the so-called

19 prison population cap" and to "help slam-shut the revolving prison door." 141 Cong. Rec.

20 S14413 (daily ed. Sept. 27, 1995) (Statement of Sen. Dole).

21   1. <u>Overpopulation Is Not "The Primary Cause" of, nor Remedy for, the Alleged</u>
22     <u>Inadequacies in Medical Care in California's Prisons.</u>

23   According to the deposition testimony of Plaintiffs' own expert, Dr. Ronald Shansky,

24 overcrowding is not "the primary cause" of the unconstitutional delivery of medical care in

25 California's prisons. First, Dr. Shansky admitted that the constitutional delivery of medical care

26 has multiple, interrelated components; that it is very difficult to rank these interrelated

27 components; and that the delivery of constitutionally adequate medical care is a polycentric

28 problem. (Stmt. Facts, ¶¶ 9, 10.) Second, Dr. Shansky admitted that key factors to improving the

- 18 -

1   delivery of medical care in California's prisons include: leadership and vision and changing the

2   culture. (*Id.* ¶¶ 11, 12.) Improving the delivery of medical care in California's prisons also

3   requires oversight of clinical personnel and overhauling dysfunctional business and financial

4   systems. (*Id.* ¶ 13.)

5         Crowding is not the primary cause of these problems, as shown by Dr. Shansky's

6   admission that a reduction in the prisoner population alone would not resolve many of the

7   deficiencies in care and that even a decrease in the prisoner population of up to 40,000 inmates by

8   itself would not result in a constitutionally adequate medical care delivery system. (*Id.* ¶¶ 14-18.)

9   Thus, based upon the testimony of Plaintiffs' own expert, there can be no question that

10   overpopulation is not "the primary cause" of the alleged constitutional inadequacies in medical

11   care in California's prisons.

12         Furthermore, other measures will remedy the alleged constitutional inadequacies in the

13   delivery of medical care, but a prisoner release order will not. The *Plata* Court has provided

14   other relief – the appointment of the Receiver over the medical care system – and that relief is

15   working. It is not disputed that the Receiver has made improvements in the delivery of medical

16   care, including responsiveness to inmate appeals, timeliness of appointments, improved pharmacy

17   and drug formulary, and increased staffing with board certified and board eligible physicians. (*Id.*

18   ¶ 19.)

19         Moreover, the Receiver has a detailed plan improving medical care. Dr. Shansky

20   admitted that it is possible for the Receiver and CDCR to ultimately provide constitutionally

21   adequate medical care to 172,000 plus inmates. (*Id.* ¶ 24.) This is true because even some of the

22   most difficult, seemingly population-related problems, can be addressed through measures other

23   than prisoner release. For example, according to Dr. Shansky, an adjustment of the medical

24   classification system is a possible solution to the staffing issues at some of the remotely located

25   prisons, such as at California State Prison, Avenal or High Desert State Prison. (*Id.* ¶ 21.)

26         Most significantly, however, not only *will* other measures solve the problems in the

27   delivery of medical care, other measures are *necessary* to solve the problems. Indeed, if the

28   Receiver's efforts are not necessary to remedy to the alleged constitutional inadequacies in the

- 19 -

1    delivery medical care, then the *Plata* court would have no basis to continue the Receivership and

2    it should be dissolved. 18 U.S.C. § 3626(f)(5). Even Dr. Shansky admitted that a decrease in the

3    prisoner population of up to 40,000 inmates by itself will not remedy the unconstitutional delivery

4    of medical care. In other words, a prisoner release order cannot be the only remedy to the

5    unconstitutional delivery of medical care, because it is not a remedy at all.

6           There is no evidence that overcrowding is the primary cause of the alleged

7    unconstitutional provision of medical care. Therefore, summary judgment or summary

8    adjudication must be granted in favor of Defendants because Plaintiffs will not be able to prove

9    by clear and convincing evidence the necessary elements for a prisoner release order under the

10   PLRA.

11           2.    Overpopulation Is Not "The Primary Cause" of, nor Remedy for, the Alleged
                   Inadequacies in Mental Health Care in California's Prisons.

12

13          The undisputed facts are that California cannot achieve the goals of a constitutionally

14   adequate prison mental health care system by simply reducing its prisoner population. Whether

15   the delivery of mental health care to inmates is constitutionally adequate depends upon numerous,

16   inter-related basic components. In the ten-plus years since the *Coleman* court appointed a special

17   master to oversee the delivery of mental health care to California's inmates, the Special Master

18   has issued twenty biannual reports. (Stmt. Facts, ¶ 26.) Never once has the Special Master

19   identified overcrowding as the primary cause of the constitutional inadequacies in the delivery of

20   mental health care or recommended or requested population controls. (*Id.* ¶¶ 27-28.) Neither has

21   the *Coleman* court issued any orders directed at population controls. (*Id.* ¶ 3.) Therefore,

22   overcrowding is not and cannot be the primary cause of the alleged constitutional violation.

23          There is no direct nexus between meeting the treatment needs of the *Coleman* population

24   and capping the overall population of CDCR. Although a reduction in prison overcrowding may

25   improve the overall prison environment, the provision of constitutional mental health care

26   requires increased mental health beds and mental health staff to provide necessary care. That

27   staff must be well-managed, well-paid, and well-trained. Indeed, Defendants have submitted a

28   detailed plan to provide such beds and have already engaged in implementing increased pay to

- 20 -

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)                          1604043.5

1    recruit and retain the necessary staff to enable care in those beds.  (*Id.* ¶ 32.)  A cap on the

2    population will not ensure this.

3        According to Special Master Keating, a reduction in the overall inmate population would

4    not enable any increase in this specialized clinical staffing and licensed beds necessary to serve

5    the needs of the mental health caseload.  (*Id.* ¶ 30.)  Even a release of 100,000 inmates would still

6    not resolve the need to provide sufficient clinical staffing and licensed mental health beds to serve

7    this population.  (*Id.* ¶ 31.)

8        In short, general population reduction will not satisfy the particularized needs of mentally

9    ill inmates.  There is no evidence that overcrowding is the primary cause of alleged

10   unconstitutional mental health care.  Therefore, summary judgment or summary adjudication

11   must be granted in favor of Defendants because Plaintiffs will not be able to satisfy by clear and

12   convincing evidence the necessary elements for a prisoner release order under the PLRA.

13                    **VII.    CONCLUSION**

14       This proceeding must be dismissed.  Contrary to the requirements of the law, as set forth

15   by the U.S. Supreme Court and the Ninth Circuit, Plaintiffs failed to exhaust their administrative

16   remedies to seek relief in connection with overcrowding.  Moreover, this Three-Judge Panel lacks

17   jurisdiction to consider Plaintiffs' request for a prisoner release order because no court has issued

18   any prior relief directed at overcrowding, and no jurisdiction exists to consider an order with

19   respect to the general prison population because the Plaintiff classes consist of inmates with

20   serious medical needs and serious mental disorders, not the general prison population.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

- 21 -

DEFENDANTS' MPA ISO MOTIONS FOR DISMISSAL OR, ALT., SUMMARY JUDGMENT
(CASE NOS. 90-00520 LKK JFM P AND C01-01351 TEH)                    1604043.5

1    Alternatively, Defendants should be granted summary judgment or summary adjudication

2 because the undisputed facts demonstrate that overcrowding is not the primary cause of, or

3 remedy for, the alleged unconstitutional delivery of medical and mental health care in

4 California's prisons.

6 DATED:  September 15, 2008         HANSON BRIDGETT LLP

8        By:  /s/ Paul B. Mello

9        PAUL B. MELLO
Attorneys for Defendants Arnold
10       Schwarzenegger, et al.

11 DATED:  September 15, 2008        EDMUND G. BROWN JR.
Attorney General of the State of California

14       By:  /s/ Rochelle C. East

        ROCHELLE C. EAST
15       Senior Assistant Attorney General
Attorneys for Defendants Arnold
16       Schwarzenegger, et al.

- 22 -