1  PRISON LAW OFFICE                        ROSEN, BIEN & GALVAN, LLP
   DONALD SPECTER, Bar # 83925              MICHAEL W. BIEN, Bar # 96891
2  STEVEN FAMA, Bar # 99641                 ERNEST GALVAN, Bar # 196065
   ALISON HARDY, Bar # 135966               JANE E. KAHN, Bar # 112239
3  SARA NORMAN, Bar # 189536                AMY WHELAN, Bar # 215675
   REBEKAH EVENSON, Bar # 207825            LISA ELLS, Bar # 243657
4  1917 Fifth Street                        MARIA V. MORRIS, Bar # 223903
   Berkeley, CA  94710                      315 Montgomery Street, 10th Floor
5  Telephone:  (510) 280-2621               San Francisco, California  94104
                                            Telephone: (415) 433-6830
6  K&L GATES LLP                            BINGHAM, McCUTCHEN, LLP
   JEFFREY L. BORNSTEIN, Bar # 99358        WARREN E. GEORGE, Bar # 53588
7  EDWARD P. SANGSTER, Bar # 121041         Three Embarcadero Center
   RAYMOND E. LOUGHREY, Bar # 194363        San Francisco, California  94111
8  55 Second Street, Suite 1700             Telephone: (415) 393-2000
   San Francisco, CA  94105-3493
9  Telephone:  (415) 882-8200

10 THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
11 CLAUDIA CENTER, Bar # 158255
   600 Harrison Street, Suite 120
12 San Francisco, CA  94107
   Telephone:  (415) 864-8848

13 Attorneys for Plaintiffs

14           IN THE UNITED STATES DISTRICT COURTS
15           FOR THE EASTERN DISTRICT OF CALIFORNIA
             AND THE NORTHERN DISTRICT OF CALIFORNIA
16      UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
17        PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

18 RALPH COLEMAN, et al.,                  ) #  Civ S 90-0520 LKK-JFM P
                                           )
19          Plaintiffs,                    ) **THREE-JUDGE COURT**
                                           )
20     vs.                                 )
                                           )
21 ARNOLD SCHWARZENEGGER, et al.,          )
                                           )
22     Defendants                          )
                                           )
23 MARCIANO PLATA ,et al.,                 ) # C01-1351 TEH
                                           )
24          Plaintiffs,                    ) **THREE-JUDGE COURT**
       vs.                                 )
25                                         ) **PLAINTIFFS' RESPONSE TO**
   ARNOLD SCHWARZENEGGER, et al.,          ) **DEFENDANTS' SEPARATE STATEMENT**
26                                         ) **OF UNDISPUTED FACTS**
       Defendants                          )
27
28
                                  - 1 -

Plaintiffs object generally to defendants' "Separate Statement of Undisputed Facts in Support of Motions for Dismissal, or, Alternatively, Summary Judgment" because it violates the requirements of E.D. Local Rule 56-260 (a). The vast majority of defendants' "facts" are not "material," and defendants have not either "enumerated discretely each of the specific material facts relied upon" or "cite[d] the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon to establish that fact." E.D. Local Rule 56-260 (a). Plaintiffs also object that defendants improperly paraphrase comments or statements made in this case and then represent them as "facts" without explanation and without the necessary context within which the statements or comments were made. Finally, plaintiffs object generally to defendants' headings as misleading; most of the "facts" listed below defendants' headings are either not material to or do not establish the "factual issues" listed in the headings. For ease of reference and consistency, however, plaintiffs include defendants' original headings below.

| #  | Defendants' Undisputed Material Facts | Plaintiffs' Response | Plaintiffs' Supporting Evidence |
|----|---------------------------------------|----------------------|---------------------------------|

**A.    Plaintiffs Did Not Comply with the PLRA's Exhaustion  Requirement**

| # | Defendants' Undisputed Material Facts | Plaintiffs' Response | Plaintiffs' Supporting Evidence |
|---|---|---|---|
| 1. | Before filing the *Plata* lawsuit, on April 5, 2001**,** none of the named class representatives—Marciano Plata (aka Marcial Plata), Gilbert Aviles, Steve Bautista, Paul Decasas, Raymond Johns, Joseph Long, Clifford Myelle, Leslie Rhoades, Raymond Stoderd, and Otis Shaw)[1]— exhausted their administrative remedies for the issues raised in this three-judge panel proceeding. Specifically, they did not exhaust whether overcrowding is the primary cause of the alleged unconstitutional medical care or request the remedy of a prisoner release order. | Deny. | Defendants' "fact" presupposes an exhaustion requirement where none exists. Defendants waived any exhaustion defense. *See* Specter Decl., Exh. A (Tolling Agreement, 12/16/99). In addition, no exhaustion requirement exists. Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 26-28. |
| 2. | Before filing the motion to convene the three-judge panel, the sole remaining incarcerated *Coleman* class representative, Ralph Coleman, failed to exhaust the issue of overcrowding as the primary cause of alleged unconstitutional mental health care or a prisoner release order. | Deny. | Defendants' "fact" presupposes an exhaustion requirement where none exists. Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 26-28. |

| **B.  The Three-Judge Panel Lacks Jurisdiction to Consider a Prisoner Release Order.** | **Plaintiffs' Response** | **Plaintiffs' Supporting Evidence** |
|---|---|---|

---

[1] Plaintiffs Decasas, Long, and Shaw are no longer incarcerated.

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| | | | |
|---|---|---|---|
| 3. | Since the filing of these lawsuits, Plaintiffs have never sought and no court has ever ordered any relief directed at overcrowding. | Deny. | Plaintiffs have sought relief for overcrowding. *See, e.g.,* Notice Of Motion And Motion To Convene A Three Judge Panel To Limit Prison Population, Nov. 13, 2006 (*Plata* Docket # 561; Plaintiffs' Notice Of Motion And Motion To Convene A Three Judge Panel To Limit Prison Population, Nov. 13, 2006 (*Coleman* Docket # 2036); 7/23/07 *Plata* Order (*Plata* Docket # 780); 7/23/07 *Coleman* Order (*Coleman* Docket # 2320). |
| 4. | The *Plata* class consists of inmates with serious medical needs. | Admit. | |
| 5. | The *Coleman* class consists of inmates with serious mental disorders. | Admit. | |
| **C.    Overcrowding Is Not the Primary Cause of, Nor Remedy for, the Alleged Constitutionally Inadequate Delivery of Medical Care.** | | **Plaintiffs' Response** | **Plaintiffs' Supporting Evidence** |
| 6. | According to the Receiver, the overall goals of a constitutionally adequate prison medical care system are to reduce unnecessary morbidity and mortality, improve inmates' health status and functioning, coordinate care with mental health and dental, and protect public health. | Deny. | Defendants quote the Receiver inaccurately. The correct quote is in the Turnaround Plan of Action, where the Receiver states the following under the heading "Mission": "Reduce avoidable morbidity and mortality and protect public health by providing patient-inmates timely access to safe, effective and efficient medical care, and integrate the delivery of medical care with mental health, dental and disability programs." 6/6/08 Receiver's Turnaround Plan of Action (*Plata* Docket # 1229) at 2. |
| 7. | California's average annual mortality rate of State prison inmates, per 100,000 inmates, from leading causes of illness deaths between 2001 and 2004 was 170. | Deny. | Defendants' figures are incorrect. *See* Reingold Declaration ¶ 2, Exh. A (8/27/08 Reingold Report) at ¶ 9 and Exh. C. |

- 4 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.    The national average for annual mortality of State prison inmates during the same period was 223 and the West's average was 181.

Deny.

Defendants' figures are incorrect. Reingold Declaration ¶ 2, Exh. A (8/27/08 Reingold Report) at ¶ 9 and Exh. C.

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| | | | |
|---|---|---|---|
| 1 | 9. | According to Plaintiffs' medical expert and the | Deny. | This "fact" is compound and impossibly cumbersome.  Defendants have paraphrased |

9.    According to Plaintiffs' medical expert and the Receiver, there are multiple, interrelated components of a constitutionally adequate correctional healthcare system, including (i) adequate numbers of appropriately trained and credentialed professional staff; (ii) an adequate environment within which to work including appropriate equipment and conditions which ensure an environment that is conducive to a professional assessment including privacy; (iii) a system of documenting the healthcare interactions including assessments, plans, orders, results of tests, etc.; (iv) a system of tracking to ensure continuity with regard to all elements of professionally created plans, including medications, lab, x-ray, other ancillary services, follow up visits, specialty referrals, etc.; (v) a system that allows for the movement of patients to appropriate levels of care based on the complexity of their medical problems, including both inpatient and outpatient; (vi) a system of self-monitoring in order to identify patterns of breakdowns in the system for which improvement strategies can then be implemented in order

Deny.

This "fact" is compound and impossibly cumbersome.  Defendants have paraphrased and compounded the statements of the Receiver and Dr. Shansky in a way that is neither complete nor accurate. *See, e.g.,* Shansky Decl. ¶ 3, Exh. A at ¶¶ 6, 9-139 (11/9/07 Shansky Report); Shansky Decl. ¶ 4, Exh. B at ¶ 1-2 (12/6/07 Shansky Supp. Report); Shansky Decl. ¶ 5, Exh. C at ¶¶ 8, 12-118 (9/10/08 Second Supp. Shansky Report); 6/6/08 Receiver's Turnaround Plan of Action at 4-29 (Plata Docket # 1229).

- 6 -

1

2

3  (9.        to mitigate the
   continued)  breakdowns; (vii)

4            the ability to ensure
             access regardless of
             custody level or

5            housing situation,
             meaning sufficient

6            officers to both
             ensure access onsite

7            and ensure access to
             offsite services;

8            (viii) sufficient
             resources in the

9            community either
             through offsite

10           encounters or some
             sort of tele-medicine

11           arrangement so that
             specialized care can

12           be provided when
             ordered by the

13           clinician; and (ix) a
             system of ensuring

14           that credentialing is
             done on entry-based

15           standards related to
             the type of practice

16           the clinician is going
             to be engaged in and

17           that the credentialing
             process mirrors what

18           happens in the
             community at an

19           HMO or a hospital
             in terms of the

20           processes used.

21

22  10.      It is very difficult to rank        Deny.        *See* Plaintiffs' Supporting Evidence to
             these interrelated                                Number 9, above.

23           components in terms of
             importance and very hard

24           to single out a most
             important component.

25

26

27

28

- 7 -

| | | | |
|---|---|---|---|
| 1 | 11. | The *Plata* Court itself acknowledged that the problem with the delivery of constitutionally adequate medical care in California Department of Corrections and Rehabilitation (CDCR) facilities is a polycentric problem, involving an historical lack of leadership, planning, and vision by the State's highest officials during a period of exponential growth of the prison population. | Deny. |

Defendants paraphrase the Court and the result is an incomplete statement of the Court's opinions, which include the following:

10/3/05 Plata Findings of Fact (Docket # 371), at 1 ("By all accounts, the California prison medical care system is broken beyond repair….The Court has given defendants every reasonable opportunity to bring its prison medical system up to constitutional standards, and it is beyond reasonable dispute that the State has failed"), 37-38 ("The task of running the CDCR medical system is a complex and difficult one, especially given the number of prisoners …the extreme state of overcrowding, and the failures of past administrations to take medical care seriously"); 41 (Court "also could consider closing some institutions or ordering the release of some prisoners (perhaps those who are at highest risk of receiving inadequate medial care, or those who post the security risk as a means of general population reduction.)")

7/23/07 *Plata* Order at 8 (*Plata* Doc. # 780): "It is clear to the Court that the crowded conditions of California's prisons, which are now packed well beyond their intended capacity, are having - and in the absence of any intervening remedial action, will continue to have - a serious impact on the Receiver's ability to complete the job for which he was appointed: namely, to eliminate the unconstitutional conditions surrounding delivery of inmate medical health care."

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| 12. | According to Plaintiffs' medical expert, one of the most important factors to remedy CDCR's failed medical care delivery system is changing the culture. | Deny. | Defendants paraphrase plaintiffs' medical expert's statement and take it out of context and the result is an incomplete statement of his position. Dr. Shansky stated that overcrowding is the primary cause of the violations. *See, e.g.,* Shansky Decl. ¶ 3, Exh. A at ¶ 6 (11/9/07 Shansky Report); Shansky Decl. ¶ 4, Exh. B at 1 (12/6/07 Shansky Supp. Report); Shansky Decl. ¶ 5, Exh. C at ¶¶ 7, 8 (9/10/08 Second Supp. Shansky Report); Ells Decl. ¶ 35, Exh. HH at 53:1-9, 161:6-18 (Shansky Deposition). |
| 13. | Operating a constitutionally adequate medical system in California also requires, among other things, providing oversight to clinical personnel as well as overhauling dysfunctional business and financial systems. | Admit. | |
| 14. | Plaintiffs' own expert testifies that simply reducing the prison population will not by itself cure the problems with specialty medical care. | Deny. | Defendants paraphrase Dr. Shansky's testimony and the result is an incomplete statement of his position. Dr. Shansky stated that relief from overcrowding is a necessary precursor to remedying the violations. *See, e.g.,* Shansky Decl. ¶ 3, Exh. A at ¶ 6 (11/9/07 Shansky Report); Shansky Decl. ¶ 4, Exh. B at 1 (12/6/07 Shansky Supp. Report); Shansky Decl. ¶ 5, Exh. C at ¶¶ 7, 8 (9/10/08 Second Supp. Shansky Report); Ells Decl. ¶ 35, Exh. HH at 53:1-9, 161:6-18 (Shansky Deposition). |

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| | | | |
|---|---|---|---|
| 15. | A prisoner reduction will only impact the volume of the use of a paper-based medical scheduling system, not solve the problems caused by such a system | Deny. | This "fact" is a prediction and is improperly included in a Separate Statement. Plaintiffs' position is that overcrowding is the primary cause of the health care constitutional violations and without a significant population reduction, the constitutional violations will not be remedied. Other remedial efforts, which are insufficient without population reduction, are necessary in addition to population reduction to bring the health care system to constitutional standards. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 7-26. |
| 16. | Likewise, a reduction in the prison population would not solve the problems caused by CDCR's storage of unit health records for returning prisoners at a southern regional facility. | Deny. | This "fact" is a prediction and is improperly included in a Separate Statement. Plaintiffs' position is that overcrowding is the primary cause of the health care constitutional violations and without a significant population reduction, the constitutional violations will not be remedied. Other remedial efforts, which are insufficient without population reduction, are necessary in addition to population reduction to bring the health care system to constitutional standards. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 7-26. |
| 17. | A reduction in the prisoner population will not result in an effective computer network, which is essential to providing adequate medical care. | Deny. | This "fact" is a prediction and is improperly included in a Separate Statement. Plaintiffs' position is that overcrowding is the primary cause of the health care constitutional violations and without a significant population reduction, the constitutional violations will not be remedied. Other remedial efforts, which are insufficient without population reduction, are necessary in addition to population reduction to bring the health care system to constitutional standards. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 7-26. |

- 10 -

| | | | |
|---|---|---|---|
| 18. | A decrease in the prisoner population of up to 40,000 inmates by itself would not result in a constitutionally adequate medical care delivery system. | Plaintiffs can neither admit nor deny this is undisputed. | This "fact" is a prediction and is improperly included in a Separate Statement.  Plaintiffs' position is that overcrowding is the primary cause of the health care constitutional violations and without a significant population reduction, the constitutional violations will not be remedied.  Other remedial efforts, which are insufficient without population reduction, are necessary in addition to population reduction to bring the health care system to constitutional standards. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 7-26. |
| 19. | There have been improvements in the delivery of medical care since the Receiver was appointed, including responsiveness to inmate appeals, timeliness of appointments, and staffing. | Plaintiffs can neither admit nor deny this is undisputed. | This "fact" is compound and the measure of "improvements" is undefined.  Some portions of the extremely broad areas referenced in the "fact" have changed since the Receiver's appointment, but without a clearer definition of specific areas and metrics, plaintiffs cannot admit or deny the assertion. |
| 20. | The number of board-certified and board-eligible physicians has increased dramatically in part due to improvements by the Receiver in compensation. | Admit in part. | Although Dr. Shansky made the statement paraphrased by defendants, it is not a complete statement of plaintiffs' position.  Significant staffing gaps and problems remain. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 12-15. |

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| | | | |
|---|---|---|---|
| 21. | An adjustment of the medical classification system is a possible solution to the staffing issues at some of the remotely located prisons, such as California State Prison, Avenal or High Desert State Prison. | Deny. | Defendants paraphrase Dr. Shansky's testimony and the result is an incomplete statement of his position. Dr. Shansky's paraphrased testimony concerned transferring medically needy prisoners out of some prisons to other facilities so that CDCR might "match the intensity of the clinical resources with the intensity of the pathology" so long as there are difficulties in bringing in sufficient numbers of qualified clinicians. Ells Decl. ¶ 35, Exh. HH at 112:20 - 113:25 (Shansky Deposition). The Receiver calls for such transfers in his TurnAround Plan of Action, but has determined that new facilities must be built for such transfers to result in adequate medical care. 6/6/08 Receiver's Turnaround Plan of Action (*Plata* Docket # 1229) at 28. However, those new facilities will not be complete, per the Plan, until July 2013 (*see id.*), and, per the Receiver, that schedule currently is "in jeopardy." 9/15/08 Receiver's Ninth Quarterly Report at 65 (Plata Docket # 1472). |
| 22. | The Receiver's November 15, 2007 Plan of Action addressed many of the important issues impacting medical care in California's prisons that are potentially within the Receiver's purview. | Deny. | The Receiver's Plan of Action of November 15, 2007, discussed many important issues impacting medical care in California's prisons, but that Plan was neither approved nor implemented: the *Plata* Court determined the November 15, 2008 Plan of Action required revision. Order Appointing New Receiver, January 23, 2008 (Docket No. 1063), at 3:18 - 4:9. The issues still have not been "addressed." |

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| | | | |
|---|---|---|---|
| 23. | Neither the Receiver's November 15, 2007 Plan of Action, nor the Receiver's June 2, 2008 Turnaround Plan of Action, state that overcrowding would prohibit the Receiver and CDCR from developing a constitutionally adequate medical care delivery system. | Admit that those reports do not use the words set forth in defendants' "fact," but at the *Plata* Court's request, the Receiver set forth his position on overcrowding in a separate report. | Receiver's Report Re Overcrowding, filed 5/15/2007 (*Plata* Docket # 673). |
| 24. | According to Plaintiff's own medical expert, it is possible for the Receiver and CDCR to ultimately provide constitutionally adequate medical care to 172,000 plus inmates. | Deny. | Defendants paraphrase Dr. Shansky's testimony and the result is an incomplete statement of his position. While Dr. Shansky testified that it was "not impossible" to provide constitutional care to 172,000 prisoners, he also testified that it "population pressures over which the receiver has no control will continue to sabotage" Court-ordered remedies in the case, and absent such remedies, remediation "could be a very long time" coming. Ells Decl. ¶ 35, Exh. HH at 144:24-145:3, 145:13-19 (Shansky Deposition). *See also* Shansky Decl. ¶ 3, Exh. A at ¶ 6 (11/9/07 Shansky Report); Shansky Decl. ¶ 4, Exh. B at 1 (12/6/07 Shansky Supp. Report); Shansky Decl. ¶ 5, Exh. C at ¶¶ 7, 8 (9/10/08 Second Supp. Shansky Report); Ells Decl. ¶ 35, Exh. HH at 53:1-9, 144:24-145:3, 161:6-18 (Shansky Deposition). |

**D.  Overcrowding Is Not the Primary Cause of, Nor Remedy for, the Alleged Constitutionally Inadequate Delivery of Mental Health Care.**

| | | | |
|---|---|---|---|
| | | **Plaintiffs' Response** | **Plaintiffs' Supporting Evidence** |
| 25. | Whether the delivery of mental health care to inmates is constitutionally adequate depends upon six basic components: (1) a systematic program for screening and evaluating | Deny. Plaintiffs also object that this is not a material fact and is instead a mixed question of law and fact. The precise features of a | | |

- 13 -

| | | | |
|---|---|---|---|
| 1 | inmates to identify those in need of mental health care; (2) a treatment program that involves more than segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number of trained mental health professionals; (4) maintenance of accurate, complete and confidential mental health treatment records; (5) administration of psychotropic medication only with appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and supervise inmates at risk for suicide. | theoretical, constitutionally adequate mental health delivery system are not at issue in this motion. | |
| | 26.  Since 1998, the Special Master has prepared twenty reports on the status of the delivery of mental health care to California's adult inmates. | Deny. | In addition to the twenty monitoring reports, the Special Master has issued numerous other relevant reports, including but not limited to the 5/31/07 Response to Court's May 17, 2007 Request for Information (Docket 2253), Reports on Suicides (Docket 3030), Reports on Defendants' Bed Plans (Docket 2432), and Reports on defendants' ability to implement EOP care for inmates in reception centers (Docket 2369).  Judge Karlton found on July 23, 2007 that in addition to the Special Master's monitoring reports, the Special Master issued "fifty-five other reports" since February of 1996. *See* Docket 2320 at 4:20-21.  The Special Master has issued additional reports since that time. |

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| 27. | None of the Special Master's reports has identified overcrowding as the primary cause of the alleged constitutional inadequacies. | Deny. Plaintiffs also object that this is an incomplete and misleading statement and not a discrete material fact as required by E.D. Local Rule 56-260. | There is overwhelming evidence from the Special Master and numerous other sources that overcrowding and overcrowding-related issues are the primary cause of the constitutional violations, including, for instance, as follows: |
|---|---|---|---|

**Overcrowding is the Primary Cause of Constitutional Violations**

*See, e.g.*, 5/31/07 Special Master's Response to Court's May 17, 2007 Request for Information at 12, 17 (Docket 2253);

9/12/08 Special Master's 20th Report at 12, 356 (Docket 3029-8 and 3029-9);

7/23/07 Coleman Order at 7-8, 13 (Docket 2320);

Ells Decl,, ¶ 4, Exh. C at 1 (10/4/06 Governor's Emergency Proclamation);

Ells Decl. ¶ 10, Exh. I at 4 (6/26/08 Video of Republican Senator Dave Cogdill, "Senator Cogdill Discusses GOP's Solution to California's Prison Overcrowding");

Ells Decl. ¶ 21, Exh. T at CDCR009404 (CDCR July 2006 Report "Inmate Population, Rehabilitation, and Housing Management Plan");

Ells Decl. ¶ 25, Exh. X at Vol. I, at 141:23-142:8 (Cate Deposition);

Ells Decl. ¶ 25, Exh. X at Vol. I, at 175:22-176:4 (Cate Deposition);

Ells Decl. ¶ 29, Exh. BB at 2 ("Overview and Planning Guide for Northern California Women's Facility Conversion to a Secure Reentry Program Facility");

Ells Decl. ¶ 33, Exh. FF at 20, 23 (12/10/07 Packer Report);

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

1                 Ells Decl. ¶ 34, Exh. GG at 6, 9
                   (8/15/08 Packer Report);

2                 Stewart Decl. ¶ 4, Exh. C at ¶¶ 112,
                  146  (8/15/08 Stewart Report)

3

4                 Haney Decl. ¶ 2, Exh. B at ¶¶ 16, 37
                   (8/15/08 Haney Report)

5                 Woodford Decl., ¶ 3, Exh. A at ¶¶ 1, 6
                  and Appx. A (11/9/07 Woodford
6                 Report);

7                 Woodford Decl., ¶ 4, Exh. B at ¶¶ 3,
                  31 (8/15/08 Woodford Supp. Report);
8

9                 Scott Decl., ¶ 3, Exh. A at ¶¶ 3, 80
                  (11/9/07 Report of Wayne Scott)

10               Scott Decl., ¶ 4, Exh. B at ¶¶ 4, 21
                  (8/15/08 Scott Supp. Report);
11

12               Lehman Decl., ¶ 2, Exh. A at ¶ 10
                  (8/15/08 Lehman Report);

13               Ells Decl. ¶ 7, Exh. F (6/26/06 Speech
                  by Governor Schwarzenegger).
14

15               **<u>Severe Staffing Shortages</u>**

16               *See, e.g.*, 5/31/07 Special Master's
                  Response to Court's May 17, 2007
                  Request for Information at 15 (Docket
17                 2253);

18               9/12/08 Special Master's 20th Report
                  at 329 (Docket 3029-8);
19

20               5/15/07 Receiver's Overcrowding
                  Report at 29, 30 (*Plata* Docket 673);

21               9/15/08 Receiver's Ninth Report at 10,
                  29 (*Plata* Docket 1472);
22

23               Ells Decl. ¶ 17, Exh. P at 10, 12
                  (7/12/08 Lopes Letter);

24               Ells Decl. ¶ 15, Exh. N at 7 (CDCR
                  Staffing Statistics).
25

26               **<u>Poor Access to Higher Levels
              of Care</u>**

27               *See, e.g.*, 5/31/07 Special Master's
                  Response to Court's May 17, 2007
28                 Request for Information at 8, 9

- 16 -

(Docket 2253);

9/12/08 Special Master's 20th Report at 351, 357-358 (Docket 3029-9);

9/15/08 Receiver's Ninth Report at 62, 65 (*Plata* Docket 1472);

Ells Decl. ¶ 19, Exh. R at p. R1-5;

Ells Decl. ¶ 20, Exh. S at 1-2.

## Lack of Office / Treatment Space

*See, e.g.*, 5/31/07 Special Master's Response to Court's May 17, 2007 Request for Information at 5, 7 (Docket 2253);

9/12/08 Special Master's 20th Report at 356 (Docket 3029-9);

3/26/08 Three-Judge Court Order at 4 (Coleman Docket # 2696);

Ells Decl. ¶ 22, Exh. U at 80:11-15 (Tilton Deposition);

Ells Decl. ¶ 27, Exh. Z at E_PRIV_161333 ("From Custody to Community: Building the Bridge for California's Prisoners Returning Home");

Ells Decl. ¶ 9, Exh. H at 31:15-19, 23:10-15 (Hysen Deposition);

Ells Decl., ¶ 6, Exh. E at 126:12-17 (Kernan Deposition).

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)

| | | | |
|---|---|---|---|
| 28. | None of the Special Master's reports has recommended or asked for any orders on population control. | Deny. | Because the Special Master's reports frequently address the effects of overcrowding – for example, to increase numbers of clinical staff, mental health beds, offices and treatment space – defendants' assertion is false. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 9-17.  The *Coleman* Court, responding to the Special Master's reports, has directed numerous orders to relieve the constitutional violations that have stemmed from overcrowding. *See, e.g.,* 7/23/07 *Coleman* Order at 7-8 (*Coleman* Docket 2320). |
| | | | Moreover, although the Special Master's periodic reports to the *Coleman* Court do not use the words set forth in defendants' "fact," at the Court's request, the Special Master set forth his position on overcrowding in a separate report.  5/31/07 Special Master's Response to Court's Request for Information  (Coleman Docket # 2253). |
| 29. | According to Special Master Keating, clinicians cannot be spread out evenly over the Mental Health Care Services Delivery System because staffing ratios are much more intensive in inpatient setting (intermediate care, acute care, and mental health crisis beds), as opposed to outpatient care (Enhanced Outpatient Program and Correctional Clinical Case Management System). | Deny.  Plaintiffs also object that this is not a discrete fact as required by E.D. Local Rule 56-260. Defendants improperly paraphrased the Special Master's comments in one report and excluded necessary text required to understand those comments. | The evidence that overcrowding is the primary cause of the ongoing constitutional violations and that no other relief will be sufficient to remedy the violations other than a prisoner release order is overwhelming. In addition to plaintiffs' expert witnesses, numerous admissions by defendants and their experts also support this contention. See Plaintiffs Supporting Evidence to Number 27, above. |
| 30. | A reduction in the overall inmate population would not enable any increase in this specialized clinical staffing and licensed | Deny.  Plaintiffs also object that defendants improperly paraphrased the Special Master's | See Plaintiffs Supporting Evidence to Number 27, above.

This "fact" is a prediction and is improperly included in a Separate Statement.  Plaintiffs' position is that |

- 18 -

| | | | |
|---|---|---|---|
| | beds necessary to serve the needs of the mental health caseload. | comments in one report and excluded necessary text required to understand those comments. | overcrowding is the primary cause of the health care constitutional violations and without a significant population reduction, the constitutional violations will not be remedied.  Other remedial efforts, which are insufficient without population reduction, are necessary in addition to population reduction to bring the health care system to constitutional standards.  *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment/Adjudication at 7-26. |
| 31. | Even a release of 100,000 inmates would still not resolve the need to provide sufficient clinical staffing and licensed mental health beds to serve this population. | Deny.  Plaintiffs also object that defendants improperly paraphrased the Special Master's comments and excluded necessary text required to understand those comments. | The evidence that overcrowding is the primary cause of the ongoing constitutional violations and that no other relief will be sufficient to remedy the violations other than a prisoner release order is overwhelming.  In addition to plaintiffs' expert witnesses, numerous admissions by defendants and their experts also support this contention. See Plaintiffs Supporting Evidence to Number 27, above. |
| 32. | Defendants have submitted a detailed plan to provide such beds and have already engaged in implementing increased pay to recruit and retain the necessary staff to enable care in those beds. | Deny. | Defendants' plan is neither detailed nor feasible and has not been submitted to the Court for approval. The evidence that overcrowding is the primary cause of the ongoing constitutional violations and that no other relief will be sufficient to remedy the violations other than a prisoner release order is overwhelming.  In addition to plaintiffs' expert witnesses, numerous admissions by defendants and their experts also support this contention. See Plaintiffs Supporting Evidence to Number 27, above. |

1    DATED:  September 29, 2008                PRISON LAW OFFICE

2

3                                              By:  /s/ *Rebekah Evenson*
                                                   REBEKAH EVENSON
4                                                  Attorneys for Plaintiffs
                                                   MARCIANO PLATA, et al.
5                                                  RALPH COLEMAN, et al.

6

7                                              ROSEN BIEN & GALVAN

8

9
                                               By:  /s/ *Amy Whelen*
10                                                  AMY WHELEN
                                                    Attorneys for Plaintiffs
11                                                  RALPH COLEMAN, et al.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -

PLAINTIFFS' RESPONSE TO DEFS.' SEPARATE STMT. OF UNDISPUTED FACTS
(CASE # 2:90-CV-00520 LKK JFM P/ C01-1351 TEH)