EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Supervising Deputy Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile: (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR SUMMARY ADJUDICATION**<br><br>**To: Three-Judge Panel** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 3

A.    This Proceeding Must Be Dismissed Because Plaintiffs Failed to Exhaust
Their Administrative Remedies ............................................................................... 3

1.    Defendants Did Not Waive the Exhaustion Argument for Plaintiffs'
Overcrowding Claims Raised in this Proceeding......................................... 3

2.    Plaintiffs' Must Exhaust Their Administrative Remedies, and Their
Failure to Do So Should Result in Dismissal of These Proceedings .......... 5

B.    This Proceeding Must Be Dismissed Because No Prior Order Directed at
Overcrowding Has Been Issued and the Three-Judge Panel Lacks
Jurisdiction to Consider a Prisoner Release Order.................................................. 7

C.    This Proceeding Must Be Dismissed Because the Three-Judge Panel Lacks
Jurisdiction to Consider an Order Directed at the General Prison Population........ 9

D.    Summary Judgment or Adjudication Must be Granted in Defendants' Favor
Because Overcrowding Is Not the Primary Cause of, nor Is a Prisoner
Release Order the Proper Remedy for, the Alleged Inadequacies in Medical
Care in California's Prisons ................................................................................... 10

1.    The Testimony of Plaintiffs' Correctional Healthcare Expert,
Ronald Shansky, M.D., Defeats Plaintiffs' Case ...................................... 10

2.    The Testimony of Plaintiffs' Correctional Experts Should be
Disregarded ............................................................................................... 13

a.    Jeanne Woodford .......................................................................... 14

b.    Wayne Scott ................................................................................. 14

c.    Joseph Lehman.............................................................................. 15

E.    Summary Judgment or Adjudication Must be Granted in Defendants' Favor
Because Overcrowding Is Not the Primary Cause of, nor Is a Prisoner
Release Order the Proper Remedy for, the Alleged Inadequacies in Mental
Health Care in California's Prisons ....................................................................... 16

F.    Plaintiffs' Other Purported Evidence Does Not Create a Triable Issue of
Material Fact ......................................................................................................... 17

III.  CONCLUSION ........................................................................................................... 19

1

# TABLE OF AUTHORITIES

2
                                                                                    **Page**

3
**CASES**

4
*Bell Atlantic Corp. v. Twombly,*
5
   __ U.S. __, __, 127 S. Ct. 1955, 1964-65 (2007).................................................... 6

6
*Caruso v. Zenon,*
   No. 95-MK-1578-BNB, 2005 WL 5957978 (D. Colo. July 25, 2005) .................................... 5, 6

7
*Clarkson v. Coughlin,*
   No. 91-CV-1792-RWS, 2006 WL 587345 (S.D.N.Y. Mar. 10, 2006) ........................................ 5

8
Jones v. Bock,
   549 U.S. 199, __, 127 S. Ct. 910, 922-23 (2007)................................................. 6, 7

9
*Jones v. Goord,*
10
   No. 95-CIV-8026-WHP, 2000 WL 290290 (S.D.N.Y. Mar. 20, 2000)....................................... 5

*Lewis v. Casey,*
11
   518 U.S. 343, 349 n.1 (1996).................................................................... 9

12
*McHugh v. United Serv. Auto. Ass'n,*
   164 F.3d 451, 454, (9th Cir. 1999)........................................................... 12, 14

13
*Roberts v. County of Mahoning,*
   495 F. Supp. 2d 694 (N.D. Ohio 2006) ......................................................... 7, 8

14
*Strong v. David,*
15
   297 F.3d 646, 649 (7th Cir. 2002).............................................................. 7

*Wyatt v. Terhune,*
16
   315 F.3d 1108, 1119 (9th Cir. 2003)............................................................ 4

**STATUTES**
17

18
18 U.S.C. § 3626.................................................................................. 7

18 U.S.C. § 3626(a)(3)(E)......................................................................... 4
19
Cal. Code Regs. tit. 15, § 3084.2(a).............................................................. 7

20
Fed. R. Civ. P. 56(e)(1)......................................................................... 14

21
PLRA, 42 U.S.C. § 1997e(a)...................................................................... 3, 7

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF DEPOSITION
OF DR. DAVID THOMA 2:90-CV-00520 LKK JFM P

1

## I.    INTRODUCTION

2    A prisoner release order is an extreme remedy that should not issue unless it will cure the

3    constitutional violation in question and the violation cannot be fixed any other way.  Here, the

4    alleged constitutional violations at issue are the delivery of medical and mental health care in

5    California's prisons.  Plaintiffs have not met either the jurisdictional or substantive requirements

6    to pursue a prisoner release order.  Therefore, Defendants' motion to dismiss, or alternatively,

7    motion for summary judgment or adjudication must be granted.

8    In short, this Three-Judge Panel proceeding must be dismissed for three reasons:  (1)

9    Plaintiffs failed to exhaust their administrative remedies before filing suit; (2) the Three-Judge

10    Panel should not have been convened because less intrusive orders addressed at overcrowding

11    have never been previously issued; and (3) the Three-Judge Panel lacks jurisdiction.  Defendants

12    are also entitled to summary judgment or adjudication because overcrowding is not the primary

13    cause of, nor remedy for, the alleged constitutional inadequacies in medical or mental health care

14    in California's prisons.

15    First, there is no question that neither the *Plata* nor the *Coleman* class representatives ever

16    submitted an inmate appeal regarding overcrowding as the cause of alleged inadequate medical or

17    mental health care.  Plaintiffs submit no evidence to the contrary.  Under the Prison Litigation

18    Reform Act (PLRA), failure to exhaust administrative remedies must result in dismissal of this

19    Three-Judge Panel proceeding.

20    Dismissal is also required because it is undisputed that since filing these lawsuits,

21    Plaintiffs have never sought and no court has ever ordered any relief directed at overcrowding.  In

22    opposition, Plaintiffs cite only to their Motions to Convene this very Three-Judge Panel

23    proceeding.  Thus, Plaintiffs concede that, prior to their Motions to Convene this Three-Judge

24    Panel proceeding, they did not seek any relief directed at overcrowding.  To the contrary, before

25    the present proceeding was initiated, the focus of these cases was providing adequate medical and

26    mental health care, not general conditions of overcrowding.

27    Moreover, this proceeding must be dismissed because the Three-Judge Panel lacks

28    jurisdiction to issue a general prisoner release order.  It is undisputed that the Plata and Coleman

- 1 -

1    classes are limited to prisoners with "serious medical needs" and "serious mental disorders." The

2    Plata and Coleman class representatives do not have standing to seek relief directed at the general

3    population. Indeed, even Plaintiffs concede that the Three-Judge Panel only has the power to

4    issue an injunction that "incidentally impacts non-class members." (Opp'n at 31:6-8.) To the

5    extent that Plaintiffs seek a prisoner release order that is directed at the general population, rather

6    than the Plata and Coleman class members, the Three-Judge Panel lacks jurisdiction to consider

7    or implement such an order.

8        Defendants are also entitled to summary judgment or adjudication as overcrowding is not

9    the primary cause of, nor is a prisoner release order the proper remedy for, alleged constitutional

10   inadequacies in the medical and mental health systems.

11       It is undisputed that operating a constitutionally adequate medical system in California

12   requires systemic changes other than a population reduction, and that even a large scale

13   population reduction by itself will not result in adequate medical or mental health care. Plaintiffs'

14   own expert, Dr. Ronald Shansky, testified that if the only improvement that was made in the next

15   two years was a decrease in the inmate population by 40,000, the California Department of

16   Corrections and Rehabilitation (CDCR) would not have a systemwide constitutionally adequate

17   medical care delivery system. Dr. Shansky further testified that, in his opinion, it was not

18   impossible for the CDCR and the Receiver to ever provide constitutionally adequate medical care

19   to 172,000-plus prisoners and that "one could provide constitutional care" to that number of

20   prisoners. According to Dr. Shansky, overcrowding is not the underlying cause of inadequate

21   medical care, but only an "external pressure."

22       Similarly, it is undisputed that the *Coleman* Court's Special Master wrote that even a

23   release of 100,000 prisoners "would likely leave the defendants with a largely unmitigated need

24   to provide intensive mental health services to program populations." Moreover, the Special

25   Master has identified many components necessary for a constitutionally adequate mental health

26   care system; he does not state that overcrowding is the primary cause of alleged constitutional

27   deficiencies.

28       In sum, Plaintiffs are seeking the drastic remedy of a prisoner release order although it is

- 2 -

clear that even a large scale prisoner release order will not solve the alleged constitutional inadequacies in medical and mental health care experienced by the *Plata* and *Coleman* class members.  As explained in this reply brief, and in the concurrently filed Defendants' Status of Separate Statement of Facts, Defendants' Objections to Evidence, Supplemental Declaration of Paul Mello, and Supplemental Request for Judicial Notice, Defendants' motion to dismiss or, alternatively, motion for summary judgment or adjudication must be granted.

## II.    ARGUMENT

**A.    This Proceeding Must Be Dismissed Because Plaintiffs Failed to Exhaust Their Administrative Remedies.**

Defendants moved to dismiss based, in part, on Plaintiffs' failure to exhaust administrative remedies under the PLRA, 42 U.S.C. § 1997e(a).  Plaintiffs oppose the motion to dismiss.  Plaintiffs do not contend that they have in fact exhausted their administrative remedies.  (Opp'n at 26-28.)  Instead, Plaintiffs erroneously argue that Defendants have waived the exhaustion argument as to the claims in *Plata*, and that the instant Three-Judge Panel proceedings are not subject to a "separate" exhaustion requirement.  Both of these contentions lack merit.

1.    Defendants Did Not Waive the Exhaustion Argument for Plaintiffs' Overcrowding Claims Raised in this Proceeding.

Plaintiffs erroneously argue that Defendants waived any right to raise the defense of failure to exhaust administrative remedies in the context of the *Plata* action.  In support of this argument, Plaintiffs cite a document entitled "Tolling Agreement," which purports to have been signed on December 16, 1999, and is attached as Exhibit A to the Declaration of Donald Specter.  However, this document is of no effect because it was superseded by the parties' Stipulation for Injunctive Relief, filed with the Plata Court on June 13, 2002.  Specifically, the Stipulation for Injunctive Relief provides that "This Stipulation reflects the entire agreement of the parties and supersedes any prior written or oral agreements between them."  (Defs.' Suppl. Req. for Jud. Not. (RJN)-1, Stipulation for Injunctive Relief ¶ 33.)  Notably, the Stipulation for Injunctive Relief says nothing about waiver of an exhaustion defense.  (See generally id.)  In fact, the Stipulation contemplated that use of the inmate grievance procedure was required for all complaints

- 3 -

1    regarding medical care "except those requiring urgent medical care." (Id. ¶ 7.) Accordingly,

2    even if the Tolling Agreement waived Defendants' exhaustion defense, the Tolling Agreement

3    was expressly superseded and rendered void by the Stipulation for Injunctive Relief.

4        Assuming arguendo that the Tolling Agreement was a validly executed waiver, it does not

5    undermine Defendants' argument that the Plata Plaintiffs failed to exhaust administrative

6    remedies for the claim at issue in this Three-Judge Panel proceeding: that overcrowding is the

7    primary cause of constitutionally inadequate health care. As Defendants point out in their

8    motion, Plaintiffs have never submitted a prison grievance complaining that overcrowding is the

9    primary cause of any deficient medical care provided to them. (Defs.' Mem. P. & A. Supp. Mots.

10   at 12.) The purported waiver states that the parties waive "in any civil lawsuit brought by

11   plaintiffs' counsel on behalf of plaintiffs involving the claims covered by this Agreement, any

12   defense based on whether plaintiffs have exhausted administrative remedies." (Decl. D. Specter

13   Supp. Pls.' Opp'n at Ex A.) In turn, "the term 'claims' includes any and all claims for injunctive

14   relief that could be brought in a civil lawsuit alleging that the medical care provided to prisoners

15   within the CDC is inadequate." (Id.) Thus, even if valid, this waiver only covers claims that

16   medical care provided to CDCR prisoners is inadequate. The waiver does not encompass claims

17   that overcrowding is the primary cause of allegedly inadequate medical care, or that no remedy

18   other than a prisoner release order will alleviate such violations. 18 U.S.C. § 3626(a)(3)(E)

19   (stating standard for ordering prisoner release). Consequently, the waiver does not cover the

20   claims at issue in the Three-Judge Panel proceeding. Therefore, this proceeding must be

21   dismissed without prejudice.

22       Plaintiffs also argue that Defendants waived the failure to exhaust defense because they

23   did not previously assert it in these Three-Judge Panel proceedings. (Opp'n at 27 n.6.) However,

24   Defendants' motion is the first dispositive motion filed by Defendants in the context of the Three-

25   Judge Panel proceedings. Thus, caselaw where the exhaustion defense was deemed waived

26   because it was not raised in an answer or at the pleading stage is inapposite; in these Three-Judge

27   Panel proceedings, Defendants have not had an opportunity to file an unenumerated motion under

28   Federal Rule of Civil Procedure 12(b). *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

- 4 -

1    Ultimately, Plaintiffs' arguments that Defendants waived the failure to exhaust defense

2    lack merit, and must be rejected.

3        2.    Plaintiffs' Must Exhaust Their Administrative Remedies, and Their Failure to Do
              So Should Result in Dismissal of These Proceedings.
4

5    Plaintiffs argue that no "separate" exhaustion is necessary in either *Plata* or *Coleman*

6    because the Three-Judge Panel proceeding is not a new case. (Opp'n at 26.) However, courts

7    addressing the applicability of the PLRA's exhaustion requirement have required exhaustion for

8    amended pleadings that raise new claims, not just for new cases. See, e.g., *Jones v. Goord*, No.

9    95-CIV-8026-WHP, 2000 WL 290290 (S.D.N.Y. Mar. 20, 2000); see also *Caruso v. Zenon*, No.

10   95-MK-1578-BNB, 2005 WL 5957978 (D. Colo. July 25, 2005). Plaintiffs contend that the

11   caselaw does not require exhaustion when a party "make[s] a motion before the court for a new

12   type of relief." (Opp'n at 27.) But this argument overlooks the fact that these Three-Judge Panel

13   proceedings came about not merely because Plaintiffs sought a new type of relief, but also

14   because they raise new factual allegations.

15   Specifically, this Three-Judge Court was empaneled because Plaintiffs contended not

16   only that they are suffering from deficient medical or mental health care (as they alleged in their

17   operative complaints), but that overcrowding is the primary cause for these alleged deficiencies.

18   It is Plaintiffs' new allegations that gave rise to the Three-Judge Panel, and, by extension, to the

19   exhaustion requirement. Plaintiffs rely on *Clarkson v. Coughlin*, No. 91-CV-1792-RWS, 2006

20   WL 587345 (S.D.N.Y. Mar. 10, 2006). (Opp'n at 27.) *Clarkson* involved a complaint that was

21   filed before passage of the PLRA. Id. at *1. Subsequently, the plaintiffs moved for an order to

22   enforce the terms of the consent decree. Id. That court held that the motion, which was filed

23   after passage of the PLRA, was not subject to the PLRA exhaustion requirement because it only

24   sought the enforcement of the underlying consent decree. Id. at *3. Here, Plaintiffs do not

25   merely seek the enforcement of the consent decrees, but instead seek the added relief of a prisoner

26   release order. This new allegation is subject to the exhaustion requirement because there is no

27   consent decree containing any provision that addresses overcrowding.

28   In *Jones v. Goord*, the court determined that the PLRA's exhaustion requirement did not

- 5 -

1  apply because the "factual contours of the [amended] challenge are present in plaintiffs' initial

2  complaints, and the scope of injunctive relief sought in the amended and consolidated complaint

3  closely parallels the relief requested in plaintiffs' earlier pleadings." 2000 WL 290290 at *2; *see*

4  *also Caruso*, 2005 WL 5957978 at *8 (holding that amended complaint was not subject to

5  exhaustion requirement because it alleged the same conduct as that challenged in the original

6  complaint). By contrast, the factual contours of Plaintiffs' instant allegations and the injunctive

7  relief sought in these proceedings differ significantly from those in the original complaints in

8  Plata and Coleman.

9       The conduct of these Three-Judge Panel proceedings also reflects the fact that they are

10  fundamentally distinct and separate from the proceedings in *Plata* and *Coleman*. In fact, the

11  Three-Judge Panel has indicated its view of these proceedings as akin to a new action through its

12  handling of the issues. For example, the Three-Judge Panel allowed discovery even though the

13  respective cases of *Plata* and *Coleman* had already reached judgment. Further, the Three-Judge

14  Panel is allowing the filing of dispositive motions, which also indicates that these proceedings are

15  different than the respective class actions. And, of course, there is the upcoming trial.

16  Accordingly, Plaintiffs are subject to the PLRA exhaustion requirement for their newly minted

17  claim that overcrowding is the primary cause of deficient medical and mental health care, and that

18  a prisoner release order should issue.

19       Plaintiffs erroneously contend that in these proceedings before the Three-Judge Panel they

20  seek only a new remedy rather than raising a new claim. (Opp'n at 28.) But in order to be

21  entitled to this new remedy, Plaintiffs have to establish a new factual predicate – that is, that

22  overcrowding is the primary cause of defective care, which must be exhausted before being

23  brought in court. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964-65

24  (2007) (noting that a plaintiff has an obligation to provide the grounds of his entitlement to relief).

25  Moreover, even if Plaintiffs were only seeking a different remedy (instead of raising a new

26  claim), they are still required to exhaust administrative remedies. Under *Jones v. Bock*, the

27  contours of proper exhaustion are set forth by the prison grievance procedures. 549 U.S. 199, __,

28  127 S. Ct. 910, 922-23 (2007). Thus, "the level of detail necessary in a grievance to comply with

1   the grievance procedures will vary from system to system and claim to claim, but it is the prison's

2   requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at __, 127

3   S. Ct. at 923 (emphasis added).[1] Here, the California grievance procedures provide that proper

4   exhaustion requires the inmate to describe the problem and the requested action. Cal. Code Regs.

5   tit. 15, § 3084.2(a). Plaintiffs cannot argue that the allegations or the requested remedy in these

6   Three-Judge Panel proceedings were exhausted in either the Plata or Coleman cases.

7       Accordingly, these proceedings must be dismissed without prejudice. 42 U.S.C. §

8   1997e(a).

9   **B.    This Proceeding Must Be Dismissed Because No Prior Order Directed at**
       **Overcrowding Has Been Issued and the Three-Judge Panel Lacks Jurisdiction to**
10      **Consider a Prisoner Release Order.**

11      As Defendants point out, this Three-Judge Panel proceeding should not have been

12  convened because the statutory conditions for such a proceeding have not been met: Plaintiffs

13  have not shown that less intrusive orders addressed to overcrowding have been previously issued

14  by the Plata or Coleman courts.

15      Plaintiffs failed to submit evidence to satisfy their burden that before the Motions to

16  Convene this Three-Judge Panel proceeding, they sought and obtained relief directed at

17  overcrowding that was less intrusive than a prisoner release order. To obtain a prisoner release

18  order, overcrowding must be the primary cause of the constitutional violation in question. As a

19  matter of logic, the less intrusive relief previously ordered must have addressed and attempted to

20  alleviate overcrowding. Otherwise, the relief would not have been directed at the cause of the

21  constitutional violation at issue.

22      *Roberts v. County of Mahoning*, 495 F. Supp. 2d 694 (N.D. Ohio 2006), is instructive of

23  the manner that three-judge panels should be constituted under 18 U.S.C. § 3626. In *Roberts*, the

24  only other reported case Defendants' counsel found where the district court found that a three-

25  judge panel under § 3626 was warranted, the plaintiff class alleged constitutional violations

---

26  [1]Plaintiffs rely on *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002), for the proposition that an
    administrative system cannot demand that a prisoner specify the type of remedy sought.
27  However, *Strong* predates the Supreme Court's decision in *Jones v. Bock*, which specifically
    states that proper exhaustion under the PLRA is determined by the prison's requirements.
28

1    *including overcrowding. Id.* at 696. The district court in *Roberts* described overcrowding as "the

2    central issue" in that case. *Id.* After the district court had entered orders for less intrusive relief

3    addressed to overcrowding, it became apparent that such orders would not suffice. *Id.*

4    Accordingly, the district court determined that "without a mechanism to release inmates to

5    accomplish training and to maintain population caps . . . the Defendants are unable to control the

6    jail population and to prevent unconstitutional overcrowding." *Id.* at 697. Given that

7    "Defendants have been given an opportunity to correct the problem of jail overcrowding and have

8    been unable to do so," the district court determined that a three-judge court should be impaneled.

9    *Id.*

10         In contrast, neither the *Plata* nor the *Coleman* cases, nor the relief previously ordered in

11    these cases, has been directed at overcrowding. Until Plaintiffs brought their Motions to Convene

12    this Three-Judge Panel proceeding, these cases addressed the delivery of medical and mental

13    health care to prisoners with "serious medical needs" and "serious mental disorders." Until this

14    Three-Judge Panel was convened, these cases did not concern overcrowding, and Plaintiffs do not

15    cite a single prior order directed at overcrowding. Never having previously sought, much less

16    obtained, a prior order directed at overcrowding, Plaintiffs cannot properly seek the drastic

17    remedy of a prisoner release order, and this proceeding must be dismissed.

18         Plaintiffs erroneously argue that "[a]ny order 'directed at overcrowding' (as opposed to

19    aimed at remedying inadequate health care) would logically entail reducing the prison

20    population." (Opp'n at 30:6-8.) But as the court in *Roberts* established, it is possible to enter

21    orders directed to overcrowding without releasing prisoners and before a referral to a three-judge

22    court.

23         Plaintiffs' arguments are unpersuasive; neither the *Plata* nor *Coleman* courts have entered

24    less intrusive orders addressed to overcrowding, and thus this Three-Judge Panel should not have

25    been convened.[2]

26    _____
      [2] Plaintiffs also contend that Defendants' challenge to the validity of this Three-Judge Panel
      proceeding is barred by the "law of the case" doctrine. (Opp'n at 29 n.7.) First, the law of the

27    case doctrine does not apply here by its own terms because Defendants are not attempting to ask a
      court to reconsider its own rulings or those of a higher court.   Instead, Defendants ask a higher

28    court than the individual courts in *Plata* and *Coleman* – the Three-Judge Panel – to ascertain

-8-

**C.    This Proceeding Must Be Dismissed Because the Three-Judge Panel Lacks Jurisdiction to Consider an Order Directed at the General Prison Population.**

Standing is a jurisdictional question. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).  The *Plata* and *Coleman* class representatives do not have standing to seek a prisoner release order directed at the general prison population because they represent only the interests of prisoners with "serious medical needs" and "serious mental disorders."  Plaintiffs conceded this point, claiming "Plaintiffs seek relief only on behalf of the classes" and that any injunction on behalf of the classes can only "incidentally impact[] non-class members."  (Opp'n at 30:14, 31:6-8.)  Even if, as Plaintiffs contend, "a narrowly drawn remedy" might incidentally include prisoners who do not have serious health care needs (Opp'n at 30:25-26), a prisoner release order that purposefully included prisoners without consideration of their health care needs, i.e., an order directed at the general population, would not be narrowly drawn and cannot be issued.  Moreover, early release from prison cannot possibly be considered an "incidental impact" on non-class prisoners.

The Supreme Court has addressed the "actual-injury" requirement for standing sufficient to confer jurisdiction.  "If . . . a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care . . . simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons."  *Lewis*, 518 U.S. at 352.  Applying *Lewis* here leads to the indisputable conclusion that healthy prisoners have not been injured by the alleged violations at issue in these cases, their interests are not represented in this litigation, and relief cannot be granted on their behalf.  Most certainly, relief cannot be granted on behalf of healthy prisoners due to constitutional violations not proven, or even raised, here, such as housing and other environmental conditions.

Plaintiffs' claim that they are not "seeking relief for individuals outside the classes" is disingenuous and belied by the very documents they submit in opposition.  (Opp'n at 30:15-16.)  For example, Joe Lehman, one of their experts, opines on whether the "California prison whether the statutory requirements for convening such a panel were met.

- 9 -

1    population can be reduced safety." (Decl. Lehman Supp. Pls.' Opp'n, Ex. A. at 4.) Mr. Lehman

2    does not opine on whether prisoners with "serious medical needs" and "serious mental disorders,"

3    i.e., the Plata and Coleman class members, can be released safely. The thrust of Mr. Lehman's

4    opinion regarding public safety is that California needs to look at diversion and early release for

5    low-risk, non-serious offenders (*id*. at 4-9), not that California can safely release, or should

6    release, prisoners with "serious medical needs" and "serious mental disorders." In fact, Mr.

7    Lehman never addresses the demographic, offense, or risk profiles of the Plata or Coleman class

8    members, nor assesses the possibility of a safe reduction of their population. Mr. Lehman's

9    comments are directed solely at the general California prison population.

10        A prisoner release order directed at the *Plata* and *Coleman* class members is not just *an*

11    option, as Plaintiffs claim (Opp'n at 30:22-23), it is the *only* option available to the Plaintiff

12    representatives under the law. That Plaintiffs seek more than that, and are in fact improperly

13    using these lawsuits as a vehicle for wider relief, is clear. But Plaintiffs cannot bootstrap an

14    overcrowding class action through *Plata* and *Coleman*. Plaintiffs do not have standing to seek the

15    relief sought, and this proceeding must be dismissed.

16    **D.    Summary Judgment or Adjudication Must be Granted in Defendants' Favor**
      **Because Overcrowding Is Not the Primary Cause of, nor Is a Prisoner Release Order**
17    **the Proper Remedy for, the Alleged Inadequacies in Medical Care in California's**
      **Prisons.**
18

19        Defendants are also entitled to summary judgment or summary adjudication. Plaintiffs

20    concede that "the question in the present motion is whether there is a sufficient caliber or quantity

21    of evidence to allow a rational trier of fact to find by clear and convincing evidence that

22    overcrowding is the primary cause of the unconstitutional conditions and that no relief other than

23    population reduction will remedy the violation." (Opp'n 32:26-28 n.9.) The clear answer is that

24    the required caliber and quantity of evidence does not exist.

25        1.    The Testimony of Plaintiffs' Correctional Healthcare Expert, Ronald Shansky,
              M.D., Defeats Plaintiffs' Case.
26

27        According to Plaintiff's own expert, operating a constitutionally adequate medical care

28    system in California requires systemic changes other than a population reduction and even a large

- 10 -

1   scale population reduction by itself will not result in adequate medical care.  Plaintiff's expert,

2   Dr. Ronald Shansky, testified that:

3       Q.  "And operating day-to-day medical care requires far more than simply
            providing oversight to clinical personnel.  It also requires overhauling
4           dysfunctional business and financial systems."  Do you see that?

5       A.  Yes.

6       Q.  Do you agree or disagree with that statement?

7       A.  I would agree.

8   (Decl. Mello Supp. Defs.' Mot., Ex. A. (Shansky Depo.) at 87:17-88:1.)

9       Dr. Shansky further testified:

10      Q.  If the only improvement that was made in the next two years is the
            decrease in the population, nothing else, everything else remained
11          status quo, the only change is in two years from now there are 40,000
            less inmates, no other changes other than the current status quo, would
12          CDCR have a systemwide constitutionally adequate medical care
            delivery system? . . .
13
        A.  The answer is no.
14

15  (Id. at 144:3-12.)

16      Dr. Shansky also testified:

17      Q.  Based upon your review of the documents to date, your experience with
            CDCR and your recent inspections, do you believe that it's impossible
18          for CDCR and the receiver to provide constitutionally adequate medical
            care to 172 plus thousand inmates?
19
        A.  Ever?  Is the question ever?
20
        Q.  Ever.
21
        A.  No, I think one could provide constitutional care.
22

23  (Id. at 61:14-24.)

24      The Plata court itself expressly found: "While blame for the deplorable condition of

25  prison medical care in the state can properly be attributed to multiple causes, there is a single root

26  cause of this crisis:  An historical lack of leadership, planning, and vision by the State's highest

27  officials during a period of exponential growth of the prison population."  (Defs.' Req. Jud. Not. ¶

28

                                              - 11 -

1  6 at 43:11-15.)  This "single root cause" was the cause the Receiver was appointed to remedy.  It
2  was not overcrowding.

3      Plaintiffs argue that this Court can disregard Dr. Shansky's actual testimony and other
4  evidence in this case and rely on Dr. Shansky's legal conclusion that overcrowding is the primary
5  cause.  However, expert testimony is not admissible on questions of law; instead, the role of
6  experts is to interpret and analyze factual evidence and not to testify about the law.  *McHugh v.*
7  *United Serv. Auto. Ass'n*, 164 F.3d 451, 454, (9th Cir. 1999).  The question of whether
8  overcrowding is the primary cause, under the PLRA, of the unconstitutional delivery of medical
9  care in California's prisons is a question for this Three-Judge Panel to decide, not for Dr. Shansky
10  to opine on.

11      On the legal meaning of "primary cause" under the PLRA, Plaintiffs do not dispute that
12  "crowding must be so central to the condition complained of that [a prisoner release order] is the
13  only remedy for the problem."  (Defs.' Mem. P. & A. Supp. Mots. at 18:8-9.)  According to
14  Dr. Shansky, a prisoner release order is not a remedy for the inadequate delivery of medical care
15  at all.  Systemic changes regarding the delivery of medical care need to be implemented and a
16  prisoner release order by itself, even on a large scale, will not result in adequate medical care.
17  (Decl. Mello Supp. Defs.' Mot., Ex. A (Shansky Depo.) at 87:17-88:1, 144:3-12.)  The remedy is
18  providing appropriate staffing, administrative resources, and treatment space (Opp'n at 22:9-11),
19  which the Receiver is in the process of doing.  Dr. Shansky states, "[i]f the population were
20  reduced at a prison facility, but that prison lacked sufficient numbers of physicians, the care
21  would still be unconstitutional."  (Opp'n at 35:9-10.)  Precisely.  When it comes to providing
22  adequate medical care, the question is not the absolute number of prisoners, it is whether adequate
23  medical care resources are available for the prisoners who need care.

24      According to Dr. Shansky, reducing the prisoner population will only facilitate earlier
25  implementation of the actual remedies for the inadequate delivery of medical care.  (Opp'n at
26  22:9-11.)  Dr. Shansky states: "The Receiver has the tools to fix the health care system, but has no
27  tool within his purview, to deal with external pressures such as overcrowding."  (Opp'n at 35:25-
28  26.)  Thus, according to Dr. Shansky, overcrowding is not the underlying cause of inadequate

- 12 -

1   medical care, it is simply an "external pressure." (*Id.*) That a reduction in the prisoner population

2   would facilitate implementation of the actual remedy for the violation in question is not the

3   standard under the PLRA for a prisoner release order—overcrowding must be the primary cause

4   of the violation, which can be solved by no remedy other than a prisoner release order.

5          Notably, Dr. Shansky remarks that "the only avenue for building a constitutional health

6   care delivery system is to reduce the demand on the system by lowering the number of *patients* it

7   serves." (Opp'n at 22:10-11 (emph. added).) But as discussed above, Plaintiffs are not proposing

8   a reduction in the number of "patients," but a reduction in non-serious, purportedly low-risk

9   offenders from the general population. (Decl. Lehman Supp. Pls.' Opp'n, Ex. A. at 4-9.)

10  Certainly, a prisoner release order directed at the general population, such as Plaintiffs seek, is not

11  a remedy for the inadequate delivery of medical care and cannot be authorized under the PLRA.[3]

12         Plaintiffs assert that "Dr. Shansky's experience makes him uniquely qualified to provide

13  an opinion on the relevant issues in this case." (Opp'n at 21:21-22.) Dr. Shansky, with his

14  purportedly "unique" expertise, has stated that overcrowding is an "external pressure" on the

15  delivery of medical care; has acknowledged that the Receiver has the tools to fix the healthcare

16  system; and has opined that constitutionally adequate medical care cannot be achieved without

17  systemic changes directed at medical care itself and that a prisoner release order will not result in

18  adequate medical care, but only make it easier to provide the needed remedies sooner.

19         Therefore, even if based solely on Dr. Shansky's testimony, Defendants are entitled to

20  summary judgment or adjudication.

21         2.     The Testimony of Plaintiffs' Correctional Experts Should be Disregarded.

22         In addition to Dr. Shansky, *Plata* Plaintiffs retained three other experts, Jeanne Woodford,

23  Wayne Scott, and Joseph Lehman, to opine on whether overcrowding is the primary cause of the

24  ───────────────
    [3] In their brief, although not in their Separate Statement of Facts in connection with *Plata*,
25  Plaintiffs cite comments by various CDCR personnel and former personnel, the Expert Panel on
    Adult Offender and Recidivism Reduction Programming (which addressed programming, not
26  medical care), and the deposition testimony by Dr. David Bennett, an expert of defendant-
    intervenor Sonoma County. These comments are more specifically addressed in Defendants'
27  Status of Separate Statement of Facts and Objections to Evidence. Not one of the cited
    statements contradicts Dr. Shansky's conclusions that a release of 40,000 prisoners by itself will
28  not result in adequate medical care and that systemic changes are necessary to fix the delivery of
    medical care.

1   alleged inadequacies in medical care in California's prisons.  Just as with Dr. Shansky, the legal

2   conclusions of these experts that overcrowding is the primary cause under the PLRA is not

3   admissible, as expert opinion on legal questions is not admissible.  *McHugh,* 164 F.3d at 454;

4   Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal

5   knowledge, set out facts that would be admissible in evidence, and show that the affiant is

6   competent to testify on the matters stated.)  Further, these "correctional experts" (Opp'n at 24:11-

7   12) are not experts in correctional healthcare and are not qualified to opine on the inadequacies in

8   medical care delivery in California's prisons or their causes.

9               a.    Jeanne Woodford

10      Ms. Woodford does not have any degrees in medical or mental health (Suppl. Decl. Mello

11   Supp. Defs.' Mot., Ex. A (Woodford Depo.) at 9:25-10:2), nor does she have any experience in

12   providing medical or mental health care, including in a correctional setting (*id.* at 12:3-5).  She

13   has only worked in "various custodial and management positions."  (Decl. Woodford Supp. Pls.'

14   Opp'n at Ex. A at ¶ 1.)  When Ms. Woodford was Director of the Department of Corrections,

15   there were Chief Medical Officers at each of the prisons and a head of healthcare services in

16   Sacramento.  (Woodford Depo., 23:6-26:11.)  When she was Undersecretary of the California

17   Department of Corrections and Rehabilitation, Dr. Peter Farber-Szekrenyi directly oversaw

18   medical and mental health care at the Undersecretary level.  (*Id.* at 27:12-22, 29:2-31:5.)  Ms.

19   Woodford is not able to identify the "components or necessary parts of a constitutionally

20   adequate medical or mental health system" in "technical terms."  (*Id.* at 32:9-34:2.)  She does not

21   know an appropriate physician-to-inmate ratio in a prison setting.  (*Id.* at 71:12-19.)

22               b.    Wayne Scott

23      Mr. Scott does not have a degree in the medical or mental health fields or any other

24   advanced degree.  (Suppl. Decl. Mello Supp. Defs.' Mot., Ex. B (Scott Depo.) at 10:16-11:2.)  He

25   has never been a clinician that provided medical or mental health care.  (*Id.* at 11:3-5.)  He rose

26   through the ranks as a correctional officer to become the Executive Director of the Texas

27   Department of Criminal Justice from 1996 to 2001.  (*Id.* at 11:6-13:6.)  While Mr. Scott was

28   Executive Director in Texas, a physician oversaw all of the medical and mental health services.

- 14 -

1    (*Id*. at 20:22-21:15.)  He has no experience analyzing staffing ratios as it relates to medical or

2    mental health clinicians or the quality of care provided by medical or mental health clinicians.

3    (*Id*. at 27:7-10, 33:9-22.)  His experience is mostly with custody and not with delivery of medical

4    or mental health care. (*Id*. at 37:11-16.)   He is not an expert in the quality of care provided by

5    medical or mental health clinicians.  (*Id*. at 33:17-25.)  Mr. Scott himself testified that he is not

6    qualified to opine on what the overall goals of an adequate medical care system are.  (*Id*. at

7    103:17-104:9.)

8              c.       Joseph Lehman

9         Mr. Lehman does not have any degrees or training in medical or mental health care or

10   experience providing medical or mental health care.  (Suppl. Decl. Mello Supp. Defs.' Mot., Ex.

11   C (Lehman Depo.) at 10:25-11:18.)  When he was the Secretary of the Washington State

12   Department of Corrections, he appointed a physician to head the health department, which

13   included mental health.  (*Id*. at 11:19-12:22.)  When he was Commissioner of the Maine

14   Department of Corrections, there was a staff person responsible for promulgating medical and

15   mental health care policies.  (*Id*. at 21:9-23:22.)  When he was Secretary for the Pennsylvania

16   Department of Corrections, he created a department for medical and mental health care, which

17   was headed by a former health care manager at one of Pennsylvania's major prisons.  (*Id*. at

18   26:13-27:25.)  Mr. Lehman has never held a position such as a health care manager at a prison or

19   head of the health department for a prison system.  (*Id*. at 34:13-18.)  When asked if he was

20   familiar with the medical services in California's prisons, Mr. Lehman testified that he is not a

21   healthcare provider or an expert in that field.  (*Id*. at 59:9-17.)

22        In sum, the unqualified opinions of Ms. Woodford, Mr. Scott, and Mr. Lehman are

23   inadmissible and should be disregarded.  Additionally, given the contrary opinions of their

24   "uniquely qualified" correctional healthcare expert (Opp'n at 21:21-22), Plaintiffs cannot meet

25   their burden of providing "a sufficient caliber or quantity of evidence to allow a rational trier of

26   fact to find by clear and convincing evidence that overcrowding is the primary cause of the

27   unconstitutional conditions and that no relief other than population reduction will remedy the

28   violation." (Opp'n at 32:26-28 n.9.)  There is nothing clear and convincing about Plaintiffs' case

- 15 -

1    where their own self-proclaimed "most qualified expert" has offered opinions that are contrary to

2    the required PLRA standards.

3        Therefore, Defendants' motion for summary judgment or adjudication must be granted.

4    **E.    Summary Judgment or Adjudication Must be Granted in Defendants' Favor**
      **Because Overcrowding Is Not the Primary Cause of, nor Is a Prisoner Release Order**
5    **the Proper Remedy for, the Alleged Inadequacies in Mental Health Care in**
      **California's Prisons.**
6

7        Overcrowding is the not primary cause of alleged unconstitutional mental health care in

8    California's prisons.  As described below, the Coleman Special Master maintains that in order to

9    provide constitutionally adequate mental health care, many issues are at play, including space,

10   staffing, and management issues.  The Special Master has never identified overcrowding as the

11   primary cause of alleged unconstitutional mental health care.  Therefore, a prisoner release order

12   is not the proper remedy, and summary judgment or adjudication must be granted in Defendants'

13   favor.

14       The Coleman Special Master reports that the lack of adequate clinical space arises not

15   from too many prisoners, but from a failure of prison design and, more broadly, management

16   vision.  The Plata Receiver "traces Defendants' lack of adequate clinical space to the design

17   decisions made in the 1980s."  (Defs.' RJN-9, Coleman Special Master's 5/31/07 Response to

18   Court's May 17, 2007 Request for Information at 5.)

19       In 2005, Defendants completed a survey of mental health needs.  (Defs.' Suppl. RJN-2,

20   Coleman Special Master's Report and Recommendations on the Defendants' August 2007 Bed

21   Plan, 9/24/07 at 1.)  Since 2006, Defendants have submitted plans to the Coleman court for the

22   construction of mental health beds to meet the treatment needs of mentally ill prisoners.  (*Id*. at 4-

23   8.)  The Coleman Special Master observed these bed plans have been challenged by "at least a

24   half dozen changes and obstacles."  (*Id*. at 1.)  Only one factor was "the unanticipated surge in

25   overall population."  (*Id*.)

26       The Special Master also found the following other equally important factors at play:  (a)

27   the long-standing paucity of headquarters personnel trained and able to develop mental health

28   beds; (b) the need for coordination with the Receiver; (c) the "Right Prison, Right Mission"

- 16 -

1  project; (d) the "rapid and continuous turnover in CDCR leadership;" (e) the discordance among

2  separate executive departments (alleviated in part by the Governor's own intervention); (f) a

3  shortage of DMH inpatient beds; (g) the very need to craft and implement interim solutions to bed

4  needs in the midst of intricate long-term planning; and (h) vacancy rates among mental health

5  clinicians.  (*Id*. at 2-3.)

6      The Coleman Special Master also acknowledged the bed plans have been stymied by the

7  Defendants' inability to obtain the Court's approval to proceed with the overall bed plan.  Such

8  lack of approval has impeded Defendants' "pursuit of the funding necessary for construction of

9  the treatment beds scheduled to be housed in the Department's consolidated care centers, without

10  which it cannot hope to meet the level of care required by the Eighth Amendment and the orders

11  of the Court."  (*Id*. at 12, 13.)

12      As this demonstrates, there are many competing factors for provision of constitutional

13  mental health care, only one of which concerns the prison population.  The Special Master has not

14  found overcrowding to be the primary cause of Defendants' alleged inability to provide

15  constitutionally adequate mental health care.  Defendants respectfully request this Court make the

16  same acknowledgment and grant this motion for summary judgment or adjudication.

17  **F.**   **Plaintiffs' Other Purported Evidence Does Not Create a Triable Issue of Material
        Fact.**

18

19      Plaintiffs invoke the Governor's Emergency Proclamation (Opp'n at 6:10-16) and

20  comments from other government officials, such as Senator Cogdill (Opp'n at 7:13-18), regarding

21  general prison overpopulation to try to create a triable issue of material fact.  But the simple fact

22  is that the comments Plaintiffs cite regarding the general prison overpopulation crisis do not

23  address the alleged inadequacies in medical and mental health care that are the subject of these

24  lawsuits.  For example, the Governor's Emergency Proclamation was directed at "bad beds" and

25  does not once mention the inadequacies in the medical and mental health care delivery systems or

26  offer an opinion regarding their relationship to overcrowding or the other problems created by

27  overpopulation that are addressed in the Emergency Proclamation.  (Decl. Ells Supp. Pls.' Opp'n

28  Mots., Ex. C.)  Neither does Senator Cogdill once mention the inadequacies in the medical and

- 17 -

1    mental health care delivery systems or offer an opinion regarding their relationship to

2    overcrowding.  (*Id.*, Ex. I.)

3         Further, all evidence regarding the impact of overcrowding on the provision of

4    programming, such as statements by former Secretary Tilton or the Governor, is irrelevant.

5    Programming is an aspect of rehabilitation, not health care.  None of the government officials

6    Plaintiffs cite have stated that adequate medical and mental health care cannot be provided at the

7    existing population level given time and resources.  (*Id.*, Ex. F (6/26/06 Speech by Governor

8    Schwarzenegger); *Id.*, Ex. T (CDCR July 2006 Report "Inmate Population, Rehabilitation, and

9    Housing Management Plan"); *Id.*, Ex. V (CDCR "Prison Reform and Rehabilitation Media"); *Id.*,

10   Ex. U (Tilton Deposition); *Id.*, Ex. W (3/3/07 Schwarzenegger Speech); *Id.*, Ex. X (Cate

11   Deposition).)  Similarly, the report of the Expert Panel on Adult Offender And Recidivism

12   Reduction Programming, which addressed rehabilitation programming and not medical or mental

13   health care, has no bearing on whether overcrowding is the primary cause of, and a prisoner

14   release order is the only solution to, inadequacies in the delivery of medical and mental health

15   care.  (*Id.*, Ex. DD.)

16        Also, evidence regarding impact of overpopulation on infrastructure, such as wastewater

17   systems, has no relationship to the alleged inadequacies in the delivery of medical and mental

18   health care and no place in this motion.  (*Id.*, Ex. AA at 2 (CDCR Budget Change Proposal re:

19   STWD Infill Housing and Program Space).)

20        The problem of "bad beds," providing rehabilitation programming, and general prison

21   infrastructure systems do not go to the question of whether overcrowding is the primary cause of

22   the alleged inadequate delivery of medical and mental health care, particularly to those prisoners

23   with serious medical needs and serious mental disorders.  Plaintiffs' reliance on such evidence is

24   misplaced, but telling.  First, it reflects an absence of evidence regarding whether overcrowding is

25   the primary cause of inadequacies in medical and mental health care delivery.  Second, it shows

26   Plaintiffs' intent to redirect this case from the alleged constitutional inadequacies in medical and

27   mental health care to general overcrowding conditions—a case which has not been pled, much

28   less proven, and is not before this Court.

- 18 -

1   Defendants respectfully request that this Court grant summary judgment or adjudication

2   against Plaintiffs' request for a prisoner release order to remedy the alleged constitutional

3   inadequacies in medical and mental health care, the primary cause of which is not overcrowding.

4   ### III.     CONCLUSION

5   Plaintiffs do not satisfy the jurisdictional or substantive requirements for a trial of their

6   request for a prisoner release order.  The *Plata* and *Coleman* lawsuits are not directed at

7   overcrowding or its impact on the general population.  These lawsuits were brought on behalf of

8   prisoners with "serious medical needs" and "serious mental disorders" to correct alleged

9   constitutional inadequacies in the delivery of medical and mental health care.  The class

10  representatives never submitted an inmate grievance regarding overcrowding or its relationship to

11  the delivery of medical and mental health care.  By their request for a prisoner release order,

12  Plaintiffs are improperly attempting to transform their lawsuits into a vehicle for wider relief to

13  the general population.  They do not have standing to do this and the Court does not have

14  jurisdiction to entertain such a request.  Therefore, this Three-Judge Panel proceeding must be

15  dismissed.

16  Moreover, there is no dispute that a release of prisoners from the general population will

17  not result in adequate medical and mental health care.  This is because overcrowding is not the

18  primary cause of the alleged inadequacies of medical and mental health care.  Thus, Plaintiffs

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

- 19 -

1  cannot satisfy the requirements for a general prisoner release order under the PLRA as a matter of

2  law and summary judgment or adjudication must be granted in Defendants' favor.

3  DATED: October 6, 2008                                    HANSON BRIDGETT LLP

4

5                                                       By: /s/ Paul B. Mello

6                                                          PAUL B. MELLO
                                                         Attorneys for Defendants
7                                                      Arnold Schwarzenegger, et al.

8  DATED: October 6, 2008                                  EDMUND G. BROWN JR.
                                                    Attorney General of the State of California
9

10

11                                                      By: /s/ Rochelle C. East
                                                          ROCHELLE C. EAST
12                                                   Senior Assistant Attorney General
                                                         Attorneys for Defendants
13                                                     Arnold Schwarzenegger, et al.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
DEFS.' REPLY BRIEF SUPP. MOT. TO DISMISS OR, ALT., MOT. SUMM. J. OR SUMM. ADJ.
(CASE NOS. 2:90-CV-00520 LKK JFM P AND C01-1351 TEH)