PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
E. IVAN TRUJILLO, Bar No. 228790
SARA NORMAN, Bar No. 189536
ALISON HARDY, Bar No. 135966
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARIA V. MORRIS, Bar No. 223903
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>vs.<br><br>Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION** |

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

Defendants filed evidentiary objections along with their reply brief in support of their motions to dismiss or, alternatively, motions for summary judgment or summary adjudication. Plaintiffs request that this Court deny defendants' objections for the reasons stated below.

**I.     The Tolling Agreement, which Dealt with Separate and Distinct Issues from the *Plata* Stipulated Settlement Agreement, is Relevant and Admissible**

Defendants object that plaintiffs should not be able to introduce a contract, signed by defendants' lawyers, by which the *Plata* defendants "irrevocably" waived any right to raise an exhaustion defense "in any civil lawsuit brought by plaintiffs' counsel" on behalf of prisoners in need of medical care. Defendants make no showing that the "irrevocable" waiver was revoked. Instead, defendants claim that their waiver (contained in a tolling agreement, which also waived the statute of limitations defense) is somehow "irrelevant" because the parties subsequently agreed to the terms of a settlement of the *Plata* suit, and those settlement terms were set forth in a stipulation that contained a clause indicating that it was the entire agreement of the parties. *See* "Defendants' Objections to Plaintiffs' Evidence in Opposition to Motions for Dismissal or, Alternatively, Summary Judgment or Summary Adjudication" (hereinafter *Coleman* Docket 3068), Objection No. 1.

Defendants are simply wrong to assert that the stipulated settlement supersedes the "irrevocable" tolling agreement and exhaustion waiver. The "entire agreement" clause in the stipulated settlement clause must be read in context; that clause relates to the terms of the settlement itself; it concerns use of extrinsic evidence to prove "the meaning or construction of this Stipulation," and "modification of the terms of this Stipulation." It does not cover the collateral agreement between the parties about issues not covered – or even mentioned – in the stipulation. Indeed, if defendants were correct that the "irrevocable" tolling agreement and exhaustion waiver were extinguished when plaintiffs signed the stipulated settlement, then they could have simply obtained plaintiffs' signature on the document and – before obtaining court approval – moved to dismiss the entire action on statute of limitations or exhaustion grounds. Such a result would be absurd. Thus, courts regularly hold that this type of "entire agreement" clause may be read narrowly, so that earlier agreements on collateral topics remain

-1-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

enforceable. *See, e.g., Masterson v. Sine*, 68 Cal.2d 222, 225 (1968) (even where a subsequent contract expresses "parties' intention to nullify antecedent understandings or agreements," courts must examine the earlier collateral agreement to determine "whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected by the writing"); *see also Cione v. Foresters Equity Serv., Inc.*, 58 Cal.App.4th 625 (1997) (prior arbitration agreement enforceable notwithstanding subsequent "integrated" employment contract).

Since there is no indication that the parties intended to abandon their collateral agreement regarding tolling the statute of limitations and waiving exhaustion requirements, the tolling agreement remains a valid and admissible statement of the parties' intentions.[1]

## II. Defendants' Objections to Plaintiffs' Deposition Transcripts and Excerpts Are Improper or Have Been Cured

Defendants make several objections to deposition transcripts either because they were not final or because they did not include certifications from the court reporters. Most of these objections are simply wrong in that plaintiffs included the appropriate certifications with their opposition and submitted the final, complete transcripts directly to the Court. Regarding the one transcript for which plaintiffs did not have a final copy prior to filing their opposition, we have since lodged the complete, certified copy with the Court. Plaintiffs also remedied the missing information from Exhibits U and X to the Ells Declaration. *See Coleman* Docket 3074 (Declaration of Rebekah Evenson).

## III. Documents Produced in Discovery Are Properly Authenticated

Defendants' objections that plaintiffs did not properly authenticate exhibits M, O, T, Z, AA, BB, CC, DD to the Ells Declaration are incorrect. *See Coleman* Docket 3068, Objection Nos. 9, 15, 16, 18, 19 and 20. Where a document is produced in discovery, and then offered

---

[1] Defendants' second "objection," that plaintiffs have misstated the testimony of their own expert, is not an objection at all, but rather a disagreement about the evidence before this Court. In particular, the parties disagree about mortality data—this shows a disputed issue of fact and not, as defendants contend, an evidentiary issue.

-2-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

into evidence by the party-opponent in the same litigation, the document is adequately authenticated. *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir.1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); 31 Federal Practice & Procedure: Evidence § 7105, at 39 ("Authentication can also be accomplished through judicial admissions such as…production of items in response to…[a] discovery request."). Defendants' reliance on *Orr v. Bank of America*, 285 F.3d 764, 777 (9th Cir. 2002), for their assertion that "Counsel's affidavit is insufficient to authenticate documents obtained through discovery from Defendants," is misplaced. The Court in *Orr* found the affidavit of counsel insufficient because the documents at issue had been produced in discovery in a different case, the producing party was not identified in the affidavit, the likely producing party had not admitted to producing it in the *Orr* litigation, and the likely producing party was not a party to the *Orr* litigation. *Orr*, 285 F.3d at 777. Moreover, the *Orr* court contrasted the situation in that case with cases where "documents produced by a party in discovery were deemed authentic when offered by the party-opponent." *Id.* at n.20.

Here, unlike *Orr*, counsel's declaration to which the exhibits are attached states that these documents were produced to plaintiffs by defendants in response to discovery requests, and provides the Bates Numbers for each of the documents. Defendants have not denied that they produced them. To the contrary, the objection describes them as "documents obtained through discovery from Defendants," thereby admitting that these documents were in fact obtained through discovery from defendants. The Ells Declaration was sufficient, and the objections strengthen the authentication further.

**IV.  Experts Are Permitted to Rely on Hearsay and Their Reports Cannot Be Excluded on This Basis**

Defendants also object to plaintiffs reliance on Dr. Shansky's 11/9/07, 12/6/07 and 9/10/08 expert reports "to the extent that these reports contain references to any statements or documents" since those statements or documents are inadmissible hearsay. Docket 3068, Objection No. 3, 4, 5, 7, 9. The federal rules, however, permit experts to rely on hearsay in

-3-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

1  forming their opinions. Fed. R. Civ. P. 703 ("If of a type reasonably relied upon by experts in
2  the particular field in forming opinions or inferences upon the subject, the facts or data need
3  not be admissible in evidence in order for the opinion or inference to be admitted").
4  Defendants' objections to paragraph 3 of the 8/15/08 Woodford Supplemental Report,
5  paragraph 80 of the 11/9/07 Scott Report, and paragraphs 4 and 21 of the 8/15/08 Scott
6  Supplemental Report, are also improper for this reason. *See* Docket 3068, Objection 9 at p. 6
7  and 8. Courts are also free to admit the underlying and otherwise inadmissible evidence itself
8  if the probative value of that information substantially outweighs its prejudicial effect. Fed. R.
9  Civ. P. 703. Where there is no jury, as in this case, the prejudicial effect is of very little, if any
10 concern. Moreover, if defendants believe the underlying information is unreliable or otherwise
11 infirm, they are free to cross-examine the experts about it during trial.

12    Moreover, many of defendants' objections regarding hearsay are overcome by the fact
13 that the evidence in question contains party admissions and/or statements against interest,
14 including Ex. F to the Ells Declaration (6/26/06 Speech by Governor Schwarzenegger), Ex. I to
15 the Ells Declaration (6/26/08 Video of Republican Senator Dave Cogdill), Ex. Y to the Ells
16 Declaration (3/16/07 Sacramento Bee Article quoting Bud Prunty),[2] and paragraphs 4 and 21
17 of the 8/15/08 Scott Supplemental Report.[3] *See* Fed. R. Civ. P. 801(d)(2); 804(b)(3).

---

[2] Defendants also produced the 3/16/07 Article in discovery as noted in paragraph 26 of the Ells Declaration, and it is thus properly authenticated. See discussion *supra* at Section III.

[3] Defendants also object to Exhibit K to the Ells Declaration (10/6/06 Sillen Sacramento Bee Article stating that overcrowding is "at the root" of health care problems). While that letter was published as an editorial by the Receiver, it also appears on the California government website at http://www.cphcs.ca.gov/docs/resources/LetterFromReceiver4_102706.pdf and is thus judicially noticeable. *See, e.g.*, *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 61 F. Supp. 2d 1058, 1066 (N.D. Cal. 1999) (taking judicial notice of document posted on agency's website and "readily accessible through the Internet"); *Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183981, * 5 (N.D. Cal. Sept. 9, 2008) (noting that "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web.

-4-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

## V. Plaintiffs' Correctional Experts Are Sufficiently Qualified and Experienced to Opine about the Effects of Overcrowding on the Medical and Mental Healthcare Systems

Defendants also object to paragraph 31 of the 8/15/08 Woodford Supplemental Report and paragraph 80 of the 11/9/07 Wayne Scott Report as lacking foundation because neither Ms. Woodford nor Mr. Scott "have any degrees in medical or mental health nor [do they] have any experience providing medical or mental health care, including in a correctional setting."[4] *Coleman* Docket 3068, Objection 9 at pp. 6-7 (citing *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799-800 (4th Cir. 1989)). In fact, Ms. Woodford and Mr. Scott have substantial correctional experience and are highly qualified to opine about the effects of overcrowding on every aspect of a prison system, including the healthcare systems. Ms. Woodford worked for the California Department of Corrections and Rehabilitation for 27 years through various custodial and management positions, including serving as the Director, the Undersecretary and the acting Secretary for the entire system. She explains in her report that she personally observed and was responsible for various health care related tasks during her tenure with the CDCR. Mr. Scott is currently an expert consultant on corrections management, staffing and security, having previously served the Texas Department of Criminal Justice for 30 years, including as the Executive Director from 1996 to 2001. He has extensive experience working in multiple correctional systems throughout the country and implemented specific overcrowding reforms in Texas over the course of several years. As heads of correctional systems, both Ms. Woodford and Mr. Scott were ultimately responsible for eliminating barriers to constitutional care, including in the medical and mental healthcare systems. Defendants' use of the *Kline* case, in which the Court excluded expert testimony by a clearly unqualified expert, is inapposite. *Kline*, 878 F.2d at 799-800. In any event, these objections go to the weight of the expert testimony, not its admissibility.

---

[4] Defendants make similar objections to Joseph Lehman in their reply brief, but fail to attack any portion of his expert report in their evidentiary objections.

-5-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

## VI. Experts Can Properly Testify About the Ultimate Issues in these Cases

Defendants also object to the following statements in plaintiffs' opposition and particular paragraphs in plaintiffs' experts' reports on the basis that they are impermissible legal conclusions:

1. Plaintiffs' statement that, "Dr. Shansky stated that overcrowding is the primary cause of the violations." Docket 3068, Objection No. 4 at p. 2.

2. Plaintiffs' statement that, "Dr. Shansky stated that relief from overcrowding is a necessary precursor to remedying the violations." Docket 3068, Objection No. 5 at p. 2-3.

3. Expert Jeanne Woodford's statement in paragraph 6 of her 11/9/07 report that "[m]y opinion is that overcrowding is the primary cause of the constitutional violations…" Docket 3068, Objection No. 9 at p. 5-6.

4. Expert Jeanne Woodford's statement in paragraph 3 of her 8/15/08 report that, "it is still my opinion that the CDCR remains severely overcrowded, that this overcrowding is the primary cause of the constitutional violations and that the prison population must be substantially reduced to alleviate the unconstitutional conditions." Docket 3068, Objection No. 9 at p. 6.

5. Expert Wayne Scott's statement in paragraph 80 of his 11/9/07 report that, "[b]ased on the above, my opinion is that overcrowding is the primary cause of the medical and mental health constitutional violations caused by deficiencies in the support role played by non-health care staff." Docket 3068, Objection No. 9 at p. 7.

As to the first two objections, defendants cite no authority for the absurd proposition that they can make an evidentiary objection to plaintiffs' opposition brief. Plaintiffs are permitted to summarize the testimony of their experts and have done so accurately. The fact that defendants dispute this evidence shows that there are disputed issues of fact that preclude summary judgment or adjudication. Defendants' objections that the statements are irrelevant or lack foundation are absurd on their face. These issues go to the heart of this case and Dr. Shansky documents, in significant detail, the bases for his opinions.

Defendants cite four cases for the proposition that the Woodford and Scott statements should be excluded, including *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451 (9th Cir. 1999), *M & M Med. Supplies and Servs., Inc. v. Pleasant Valley Hosp.*, 981 F.2d 160, 164 (4th Cir. 1992), *In re Segerstrom*, 247 F.3d 218, 227 (5th Cir. 2001), and *Evers v. General Motors*

-6-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

*Corp.,* 770 F.2d 984, 986 (11th Cir. 1985). In the latter two cases, the courts excluded expert statements or opinions not because they went to ultimate legal questions, but because they had no factual support whatsoever in the record. *See Segerstrom,* 247 F.3d at 227 (the expert's statement was "wholly unsupported by evidence in the record"); *Evers*, 770 F.2d at 986 (the expert opinion was excluded because it "fail[ed] to provide specific facts to back up its conclusory allegations"). By contrast, Jeanne Woodford and Wayne Scott provide significant factual support for their conclusions that overcrowding is the primary cause of the constitutional violations, including their vast experience in correctional settings, their tours for this case, their review of data and other documents, and their personal observations about the overcrowding crisis. The Fourth Circuit in *M & M Med. Supplies and Serv., Inc.*, the Court of Appeal *reversed* the lower's court's exclusion of an expert declaration for failing to set forth specific facts, finding that the affidavit did in fact do so. *M & M Med. Supplies and Serv., Inc.*, 981 F.2d at 164. This case provides no support for defendants' position.

Defendants' use of the *McHugh* case is similarly misplaced. The Court ruled in *McHugh* that an expert could not testify as to whether a mudslide was covered by an insurance policy since that was a *legal conclusion* for the trier of fact. *McHugh*, 164 F.3d at 454. The expert was permitted, however, to testify about the facts surrounding the mudslide, what caused the mudslide and what effects the mudslide had on the property in question. *Id.* With respect to Ms. Woodford and Mr. Scott's opinions about overcrowding, including its origins, its effect on the medical and mental health care systems and the necessary relief to address the overcrowding crisis, these opinions are explicitly permitted by the federal rules. *See* Fed. R. Civ. P. 704(a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002). The opinions are also appropriately admitted when they, as here, refer to fact-intensive issues or issues related to causation. *See, e.g., Miksis v. Howard*, 106 F.3d 754, 762 (whether the driver's sleep deprivation was the primary cause of the accident); *Davis v. Mason County,* 927 F.2d 1473, 1484-1486 (9th Cir. 1991) (whether there was a causal link between defendants'

-7-
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN OPPOSITION TO MOTIONS FOR DISMISSAL OR, ALTERNATIVELY, SUMMARY JUDGMENT OR ADJUDICATION, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[245533-1]

reckless conduct and plaintiff's injuries); *Nielson v. Armstrong Rubber Co.,* 570 F.2d 272, 276-277 (8th Cir. 1978) (whether defendants' manufacturing process caused the defect in plaintiff's tire).

Finally, although defendants argue that Ms. Woodford and Mr. Scott reach impermissible "legal" conclusions, defendants acknowledge that "the PLRA does not define 'primary,' and thus the Court must look to the ordinary meaning of this term…" Docket 3034 at p. 17-18. Indeed, defendants sought judicial notice of two definitions of the word "primary" from *non-legal* dictionaries. *See* Docket 3039 at pp. 3-4. As a general rule, experts are permitted to use statutory or other legal terms if they are using them in a nonlegal sense. *See United States v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir. 1995); *In Re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 826 (2nd Cir. 1994). It is also the case that witnesses can "refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *United States v. Oles*, 994 F.2d 1519, 1523 (10th Cir. 1993); *Lewis v. New Mexico Dept. of Health*, 275 F.Supp.2d 1319, 1331 (D.N.M. 2003). Ms. Woodford and Mr. Scott's opinions comport with these cases and, in any event, are highly relevant and otherwise supported by extensive evidence in the record.

## Conclusion

For all of the reasons stated above, this Court should deny defendants' evidentiary objections in their entirety.

Dated: October 13, 2008                    Respectfully submitted,

*/s/ Amy Whelan*
Amy Whelan
Rosen, Bien & Galvan
Attorneys for *Coleman* Plaintiffs and on
Behalf of *Plata* Plaintiffs