EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile:  (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>   Plaintiffs,<br> v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>   Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>   Plaintiffs,<br> v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>   Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS**<br><br>**To:  Three-Judge Panel** |

TO PLAINTIFFS RALPH COLEMAN AND MARCIANO PLATA AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Arnold Schwarzenegger, et al., move the Three-Judge Panel for an in limine order to exclude any and all evidence, reference to evidence, testimony, or argument regarding the annual rate of suicides among inmates in California state prisons for the purpose of showing that overcrowding is the primary cause of the alleged unconstitutional inadequacies in the delivery of medical or mental heath in California's prisons. This motion is based on this notice, the points and authorities, the Court's file in this case, and any further argument presented to the Three-Judge Panel.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.   INTRODUCTION**

A prisoner release order is an extreme remedy that should not issue unless it will cure the constitutional violation in question and the violation cannot be fixed any other way. Here, the alleged constitutional violations at issue are the delivery of medical and mental health care in California's prisons, not overcrowding, housing, or other environmental conditions affecting the general population. Defendants are not deliberately indifferent to the medical and mental health needs of Plata and Coleman class-members, and overcrowding is not the "primary cause" of those alleged constitutional violations. Therefore, a prisoner release order is not the proper remedy.

Plaintiffs suggest that information regarding the annual rates of suicide among inmates in the California prison system demonstrates overcrowding-related problems within the California Department of Corrections and Rehabilitations (CDCR) with respect to the quality of mental health care provided in prisons. However, Plaintiffs have not referenced evidence that prison overcrowding directly leads to inmate suicides in California facilities or results in constitutionally inadequate treatment of inmates resulting in suicides. Furthermore, studies and reports by persons involved in the *Coleman* matter demonstrate that suicide is the result of a variety of factors, yet none of the factors cited

is prison overcrowding,  Accordingly, under Federal Rules of Evidence 402 and 403, Defendants move to exclude any and all evidence, reference to evidence, testimony, or argument from the trial and to strike all such statements from the expert reports or trial affidavits submitted by Plaintiffs regarding the annual rates of suicides among inmates at California state prisons.

## II.    ARGUMENT

### A.    Evidence Regarding the Annual Suicide Rate Among California Prison Inmates Is Irrelevant and Should Be Excluded.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  And "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The fundamental questions in this proceeding are whether overcrowding is the primary cause of the allegedly inadequate delivery of medical care and mental health care in California's prisons and whether any measures other than a prisoner release order can solve those alleged inadequacies.  *See* 18 U.S.C. § 3626.  Plaintiffs have cited no evidence that indicates prison overcrowding results in higher rates of suicides among inmates or degrades the quality of mental health care to the point that inmates commit suicide.  Annual suicide rates are, therefore, not relevant to whether a prisoner release order should issue to resolve the alleged violations with respect to medical and mental health care.

If allowed during trial, evidence of annual suicide rates will cause undue delay and waste time.  Fed. R. Evid. 403.  Given the Court's stated desire for a streamlined and efficient trial, as indicated by limits on live testimony and presentation of witness, allowing presentation of this information would serve no purpose and only take time that could otherwise be spent addressing salient evidence regarding the true issues of the case.  Furthermore, evidence of annual suicide rates from years past will confuse the

issues before the Court and unfairly prejudice Defendants, who have recently implemented court-approved suicide prevention plans whose efficiency has not been statistically proven yet. As a result, any and all evidence, reference to evidence, testimony, or argument regarding annual suicide rates should be excluded.

### B. Plaintiffs' Expert Has Not Identified Overcrowded Environments as the Overriding or Primary Cause of Suicides in California Prisons.

Plaintiffs' expert, Dr. Craig Haney, has prepared two reports in this matter—the first dated November 9, 2007, and the second dated August 15, 2008. The second report is intended to "update and replace" Dr. Haney's initial report. (Decl. Paul Mello Supp. Defs.' Mots. In Limine, Ex. CC (Haney 8/15/08 expert report) at 7.)

In his report, Dr. Haney states at various points his opinions regarding the effects of population overcrowding on the delivery of mental health care at CDCR facilities. (*Id.* at 9, 27, 34, 53-55.) However, he does not state that overcrowding results in higher incidence of inmate suicides. (*Id.* at 54-55.) Instead, Dr. Haney cites to a report prepared by the *Coleman* Special Master titled "Report on Suicides Completed in California Department of Corrections in Calendar Year 2005." (*Id.* at 187.) This report references various facts and data regarding the status of the mental health care delivery system in CDCR during the year 2005. Dr. Haney states "the Special Master's analysis illustrates a clear nexus between overcrowding-related disfunction, decreased quality of overall mental health care, and an extreme and set of mental health outcomes." (*Id.* at 189.)

However, as the title indicates, this report contains data from 2005, and thus reflects statistics and conditions that are nearly three years old. In citing the Special Master's report, Dr. Haney appears to claim there is a connection between overcrowding and suicide, but he offers little independent evidence to support this assertion. In fact, when questioned at deposition regarding the cause of suicides in prison, Dr. Haney acknowledged that there are many causes and factors at play when an inmate commits suicide, but he did not identify overcrowded environments as the overriding or primary

1  cause. (Decl. Paul Mello Supp. Defs.' Mots. In Limine, Ex. JJ (9/26/08 Dep. Haney) at
2  53, 60.) Dr. Haney further testified that could not state a particular rate of suicide that he
3  would expect to see in a constitutionally compliant mental health care system. (*Id.* at
4  92.) By this testimony, Dr. Haney illustrates the irrelevance of suicide rates to this
5  case—if Plaintiffs are unable to cite an acceptable suicide rate in a properly functioning
6  prison mental health system, then what probative value is gained from introducing
7  evidence about any suicide rates at California prisons?

8  Without independent evidence supporting the theory that overcrowding is the
9  cause of suicide in California prisons, Plaintiffs cannot be allowed to present testimony,
10 declarations, or reports containing the annual suicide rates. To do so will be misleading,
11 confuse the issues, cause undue delay, waste time, and constitutes the type of evidence
12 that must be excluded under Rule 403.

### C. Recent Data Indicates that there Is No Causal Link Between Inmate Population and Suicide Rate in California Prisons.

15 Plaintiffs should not also be permitted to present evidence regarding the annual
16 suicide rates because recent CDCR statistical data shows that there is no causal
17 relationship between inmate population and the suicide rate, or alleged overcrowded
18 housing conditions and the suicide rate.

19 As demonstrated by the chart attached to the Declaration of Robert Canning in
20 support of this motion in limine, suicide rates at California prisons vary widely from year
21 to year. (Decl. Robert Canning Supp. Defs.' Mot. In Limine No. 10 (Decl. Canning), Ex.
22 A.) However, in recent years as the prison population has steadily climbed, the suicide
23 rates have fluctuated. In fact, the suicide rate for 2007 has actually fallen sharply since
24 2005 and 2006. (*Id.*) Contrary to what Plaintiffs seem to suggest, there is no causal
25 relationship between the total inmate population and the suicide rate. (Decl. Canning ¶
26 8.)

27 Further support that there is no nexus between overcrowding and suicide rates is
28 found in an article written by two of the court-appointed *Coleman* monitors, Drs. Kerry

- 5 -

1  Hughes and Raymond Patterson.  (Decl. Canning ¶ 9.)  Between 1998 and 2004, 73% of
2  all suicides in CDCR occurred in single-cell environments, whether in general population
3  housing, administrative segregation, or secure housing units.  (*Id.*)   The upshot of this is
4  that the vast majority of suicides at California prisons occur in single-cell housing units,
5  not in the allegedly overcrowded gymnasiums and dayrooms.  (*Id.* ¶ 10.)
6  As stated previously, Plaintiffs have not demonstrated that overcrowding results in
7  suicide among CDCR inmates.  According to the statistics provided above, there is no
8  connection between population and suicide rate.  To allow Plaintiffs to present evidence
9  of the annual suicide rate in support of their contention that overcrowding is the primary
10 cause on the alleged inadequate medical and mental health care provided in California
11 prisons will unfairly prejudice Defendants, confuse the issues before this Court, cause
12 undue delay, and waste time, and must be excluded.  Fed. R. Evid. 403.

### D. Upon the Recommendation of the *Coleman* Special Master and Order of the Court, California Prisons Developed Operational Plans to Address Suicide Concerns in Single-Celled Environments.

15 Evidence of the annual suicide rate in California prisons must be excluded at trial
16 in this matter because CDCR, by recommendation of the *Coleman* Special Master and
17 subsequent order of the court, has developed a plan to reduce suicide trends in housing
18 units where they most likely occur, namely the administrative segregation units.  (Decl.
19 Canning ¶¶ 11-12.)  This plan, adopted by the court in February 2007, was the result of
20 collaborative efforts of Defendants and Plaintiffs, and at no time was overcrowding
21 mentioned as a cause of the suicide trends in California prisons.  (*Id.* ¶ 12.)  Permitting
22 introduction of annual suicide rates, especially where the annual rates will be for periods
23 predating the implementation of the suicide prevention plan approved by the Court, will
24 needlessly confuse the issues in this case, unfairly prejudice Defendants, and waste the
25 Court's time.
26 The suicide prevention plan aims to reduce the risk of suicide particularly among
27 inmates in administrative segregation housing, the population previously identified as
28 having the highest percentage of suicides in California prisons.  (Decl. Canning ¶¶ 9-10.)

1  Among some of the actions now being taken to reduce the risk of inmate suicide,
2  correctional officers more frequently observe new arrivals to administrative segregation
3  units, inmates are subject to increased mental health screening before placement into
4  administrative segregation, and cells have been retrofitted to reduce the presence of
5  physical feature that may enable suicide attempts. (*Id.* ¶ 12.)  In addition to this suicide
6  prevention plan, CDCR has voluntarily taken steps to increase the amount of out-of-cell
7  time administrative segregation inmates receive, increase personal observation of
8  inmates in their cells, and train correctional officers on emergency life saving techniques.
9  (*Id.* ¶¶ 13-15.)

10  All of the actions detailed above, done with the full knowledge of the *Coleman*
11  court, the *Coleman* Special Master, and Plaintiffs, are expressly focused on reducing the
12  risk of suicide among inmates in administrative segregation.  However, it will likely take
13  time to quantify the positive effects of these actions to reduce suicide. (*Id.* ¶ 16.)
14  Moreover, although Defendants have taken this course of action, Defendants are not
15  asserting that the suicide rate is linked to overcrowding.  Allowing Plaintiffs to introduce
16  evidence of annual suicide rates from years pre-dating these newest efforts by the court,
17  the Special Master, and the parties to address the alleged suicide concern in California
18  prisons will unfairly prejudice Defendants and cause undue delay at trial.  Fed. R. Evid.
19  403.  For these reasons, all evidence of the annual suicide rates must be excluded.

20  **E.    Suicide Is the Result of Unique Factors and there Is No Link Between Suicide Rates and Overcrowding.**
21

22  Evidence of the annual suicide rates in California prisons must also be excluded
23  because suicide is the result of a variety of factors unique to every individual, and have
24  not be linked to overcrowded conditions.  The *Coleman* monitors have identified a
25  number of features found in prison inmates who are considered suicide risks, including
26  history of mental illness, housing in single-cell environments, and history of suicide
27  attempts, among others.  (Decl. Canning ¶ 17.)  None of these features arise from or are
28  related to the overall number of inmates in California prisons, and no link has been made

- 7 -

DEFS.' MIL NO. 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATES IN
CALIFORNIA PRISONS (CASE NOS. 90-00520 AND 01-1351)                                    1649971.1

1  between overcrowding and suicide rates. (*Id.*)

2  Moreover, neither of the *Coleman* Special Master's most recent reports on
3  suicides in California prisons for 2005 and 2006 contained recommendations concerning
4  the impact of overcrowding, if any, on the occurrence of the suicides in CDCR facilities.
5  (Decl. Canning ¶ 18.) These reports, while critical of the mental health treatment
6  received by inmates who committed suicide, did not comment upon the impact
7  overcrowding had on the years' suicides and did not make any recommendations
8  regarding reduction of prison population in order to positively affect the suicide rate. (*Id.*)
9  Where there has been no link between prison overcrowding and inmate suicide, the
10  Court must exclude all evidence of CDCR's annual suicide rates in support of their case
11  due to the confusing and prejudicial nature such evidence poses. Fed. R. Evid. 403.

### III.    CONCLUSION

Plaintiffs' use of the annual suicide rates in California prisons is irrelevant to this case because no causal link has been made between alleged population overcrowding and inmate suicides. Moreover, introduction of this evidence will only confuse the issues before the Court because it is dated and does not reflect current plans in place to address suicide concerns at California prisons. The issues before this Court are whether overcrowding is the primary cause of the alleged inadequate delivery of medical care and mental health care in California's prisons and whether any measures other than a prisoner release order can solve those alleged inadequacies. Under Federal Rules of

/ / /
/ / /

1  Evidence 402 and 403, any and all evidence, reference to evidence, testimony, or
2  argument not addressed to those issues, such as the unsupported notion that suicide
3  results from overcrowding, should be excluded from this case.

4  DATED: October 20, 2008                     HANSON BRIDGETT LLP

6                                              By: /s/ Paul B. Mello
7                                                  PAUL B. MELLO
                                                   Attorneys for Defendants
                                                   Arnold Schwarzenegger, et al.
8
9  DATED: October 20, 2008                     EDMUND G. BROWN JR.
                                                Attorney General of the State of California

11                                             By: /s/ Kyle A. Lewis
12                                                 KYLE A. LEWIS
                                                   Deputy Attorney General
13                                                 Attorneys for Defendants
                                                   Arnold Schwarzenegger, et al.

DEFS.' MIL NO. 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATES IN
CALIFORNIA PRISONS (CASE NOS. 90-00520 AND 01-1351)                    1649971.1