EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile: (415) 703-5843
lisa.tillman@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER – 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB – 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# AND THE NORTHERN DISTRICT OF CALIFORNIA
# UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
# PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF RICK JOHNSON IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NUMBER 11 TO EXCLUDE ANY EVIDENCE OF ALLEGED NON-COMPLIANCE AT DESERT INSTITUTIONS**<br><br>**To: Three-Judge Panel** |

I, Rick Johnson, declare:

1. I am employed by the California Department of Corrections and Rehabilitation (CDCR) as Chief and Associate Warden of the Health Care Placement Oversight Program. I have been employed within the Health Care Placement Oversight Program, in the position of Correctional Counselor III, for over nine years. I served as a youth counselor and a correctional counselor with the CDCR for over 24 years.

2. I have personal knowledge of the facts stated in this declaration and if called to testify upon those facts would do so competently.

3. The Health Care Placement Unit provides oversight for the placement assistance and population management of inmates within the mental health services delivery system and certain inmates within the medical care services system.

4. I am familiar with the *Coleman* Court's orders and the *Coleman* Revised Program Guide mandates concerning the placement of mental health patients into mental health beds. I am responsible for compliance with those court orders and policy mandates when responding to requests from mental health clinicians within CDCR for the placement of mental health patients into available mental health beds systemwide.

5. Because I must essentially match mental health patients with appropriate mental health beds, I am familiar with the mental health care beds and services provided by each CDCR institution. I am familiar with the levels of care within the Mental Health Services Delivery System, as follows:

    a. Correctional Clinical Case Management System (CCCMS): Inmates receiving this level of care are able to function well in the General Population with some mental health treatment. These inmate-patients are provided individual therapy at least once eery 90 days, medication management by a psychiatrist at least once every 90 days, and group therapy as indicated by the inmate-patient's treatment plan.

    b. Enhanced Outpatient Program (EOP): Inmates receiving this level of care are segregated from the General Population in housing dedicated to these inmates because they require significant services to function well. These inmate-patients are

-2-
DECL. JOHNSON SUPP. DEFS.' MIL #11 TO EXCLUDE EVIDENCE OF NON-COMPLIANCE AT DESERT INSTITUTIONS (CASE NOS. 90-00520; 01-1351)

16551020.1

provided weekly contact with a primary clinician, medication management by a psychiatrist at least once every 30 days, and structured treatment activities 10 hours per week.

        c.      Psychiatric Services Unit (PSU): The purpose of the PSU is to assure the effective delivery of EOP services to inmates who have been diagnosed as having a serious mental disorder and are serving a security housing unit (SHU) term.

        d.      Mental Health Crisis Beds: Inmates receive this level of care because of a short-term need for intensive mental health care services, generally not to exceed 10 days. This level of care provides 24-hour inpatient care, evaluation and treatment for inmate-patients who require mental health services to prevent danger to themselves or others, or who have mental conditions which cause grave disability.

        e.      Inpatient Non-Acute Intermediate Care Facility (ICF): Inmates receive this level of care because of a longer-term need for intensive mental health care services delivered by the Department of Mental Health (DMH).

        f.      Day Treatment Program: This program with 44 beds is operated by the DMH at the California Medical Facility. It is designed for patients needing transitional outpatient care, essentially a step down from intermediate to Enhanced Outpatient Program level of care.

        g.      Inpatient Acute Care: The Department of Mental Health delivers this 24-hour inpatient care in licensed facilities. Inmates who require mental health treatment to prevent danger to themselves or others, or who have mental conditions which cause grave disability (such as an inability to use food, clothing, or shelter in appropriate ways) receive individual and group therapy as well as medication management by a psychiatrist.

        6.      In the course of my work, I have learned that certain CDCR institutions have only the minimal staffing necessary to provide temporary care of an inmate requiring *Coleman*-mandated mental health services: Calipatria State Prison in Calipatria, Centinela State Prison in Imperial, Chuckawalla Valley State Prison in Blythe, Ironwood State Prison in Blythe, and California Correctional Center in Susanville. As acknowledged by the *Coleman* court in its order of January 31, 2001, these institutions' extreme heat conditions put mentally

ill inmates on certain psychotropic medications at risk for adverse health events. (See also, *Coleman* Special Master's 17th Monitoring Report, Part C, filed 6/11/07, p. 2.) As a result, when an inmate housed at such locations is admitted to the *Coleman* caseload for mental health services, that inmate is provided an expedited transfer to an institution that can provide necessary mental health services.

7. The timelines used by each of these institutions for transferring mental health patients to another institution are mandated by the *Coleman* court's January 31, 2001 order. In 2001, these institutions were given explicit direction, in the form of field memoranda, on the implementation of that order. (Decl. Paul Mello Supp. Defs.' Mots. in Limine (Decl. Mello), Ex. MM (CDCR 3/2/2001 Memo).) The transfer timelines were incorporated within the court-approved Revised Program Guide.

8. In the course of my work, I receive and review weekly reports on the transfer of *Coleman*-caseload inmates from these five institutions to institutions with available mental health beds appropriate for their care.

9. As Chief of the Health Care Placement Unit, I am responsible for the preparation of a weekly tracking document showing the movement of *Coleman*-caseload inmates out of these five institutions. This document is distributed to the warden, health care managers, and classification and representatives at these five institutions as well as to the Health Care Regional Administrators and Chief of Clinical Services within the CDCR Correctional Health Care Services Division. This document shows the number of inmates within the *Coleman* caseload at each institution and their transfer dates.

10. I am aware that these five institutions are not personally toured by the *Coleman* Special Master's team for compliance purposes. Rather, the five institutions are on 'paper review,' submitting documentation of their compliance with court-mandated mental health programs and policies. (See *Coleman* Special Master 20th Monitoring Report, filed 9/12/08, internal p. 2.) For the Twentieth Round Monitoring Tour of September 2007 through February 2008, the five institutions reported the following population of *Coleman* caseload inmates :

- California Correctional Center: 1 *Coleman* caseload inmate

(1 within CCCMS level of care)

- Calipatria State Prison: 21 *Coleman* caseload inmates

(13 within the CCCMS level of care, 8 within EOP level of care).

- Centinela State Prison: 35 *Coleman* caseload inmates

(30 within CCCMS and 5 within EOP level of care)

- Chuckawalla Valley State Prison: 14 *Coleman* caseload inmates

(12 within CCCMS and 2 within EOP level of care)

- Ironwood State Prison: 25 *Coleman* caseload inmates

(25 within CCCMS)

(*Id.* at internal pp. 1, 51, 286, 290, 303.)

11.   These figures fall within the usual range of the *Coleman* population housed in these desert institutions at any one time.

I declare under the penalty of perjury that the foregoing is true and correct. Executed in Sacramento, California on October 20, 2008.

*/s/ Rick Johnson*
RICK JOHNSON

-5-
DECL. JOHNSON SUPP. DEFS.' MIL #11 TO EXCLUDE EVIDENCE OF NON-COMPLIANCE AT DESERT INSTITUTIONS (CASE NOS. 90-00520; 01-1351)

16510201.1