EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN - State Bar No. 126424
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5677
Facsimile: (415) 703-5843
Lisa.Tillman@doj.ca.gov
Kyle.Lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
S. ANNE JOHNSON - 197415
SAMANTHA D. TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>  Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>  Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 12 TO EXCLUDE REPORT AND TESTIMONY OF PLAINTIFFS' EXPERTS JAMES GILLIGAN AND PABLO STEWART**<br><br>**To: Three-Judge Panel** |

TO PLAINTIFFS MARCIANO PLATA AND RALPH COLEMAN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Arnold Schwarzenegger, et al. move the Three-Judge Panel for an in limine order to exclude any and all of Plaintiffs' evidence, report, testimony, or argument that a prisoner release order will not adversely impact public safety. This motion is based on this notice, the points and authorities, the Court's file in this matter, the declaration and exhibits filed in support of Defendants' motion, and any further argument presented to the Three-Judge Panel.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.     INTRODUCTION

A prisoner release order is an extreme remedy that should not issue unless it will cure the constitutional violation in question and the violation cannot be fixed any other way. Here, the alleged constitutional violations at issue are the delivery of medical and mental health care in California's prisons, not overcrowding, housing, or other environmental conditions affecting the general population. Defendants are not deliberately indifferent to the medical and mental health needs of *Plata* and *Coleman* class-members, and overcrowding is not the "primary cause" of those alleged constitutional violations. Therefore, a prisoner release order is not the proper remedy.

Defendants move in limine to exclude the report and testimony of Plaintiffs' designated mental health experts, Dr. James Gilligan and Dr. Pablo Stewart, under Federal Rules of Evidence 702 and 703. Both Dr. Gilligan and Dr. Stewart were designated by Plaintiffs to address whether a prisoner release order would have an adverse effect on the public. Yet, at deposition, both testified they were unfamiliar with the community mental health care system in California. Therefore, Dr. Gilligan's and Dr. Stewart's opinion that a prisoner release order will not adversely impact public safety lacks the requisite expertise and factual and methodological foundation to be admissible. Defendants respectfully request that this evidence, report, testimony, and argument be excluded.

1

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Dr. Pablo Stewart, a board-certified psychiatrist, stated the following opinion in his expert report: "The State can include the *Coleman* class in population reduction plans without adversely affecting public safety and should do so. Moreover, f the State enhanced the services provided to released individuals, public safety would improve." (Decl. Mello Supp. Defs.' Mots. in Limine (Decl. Mello), Ex. V (Supp. Expert Report Stewart) at 63.)

Dr. James Gilligan, a board-certified psychiatrist from New York, stated the following opinions in his expert report: (A) "A prisoner release order that includes an incremental decrease in the length of stay and/or diversion of mentally ill offenders would not adversely impact public safety" (Decl. Mello, Ex. Q at 7, ¶ 18); and (B) the elements need to improve public safety outcomes regarding the treatment of mentally ill offenders include pre-release planning, a system of access to care, programs to target co-occurring disorders/dual diagnosis, and coordination with community care providers. (*Id*. at 26-36, ¶ 50-66).

## III.  LEGAL ARGUMENT

### A.  An Expert Opinion that Public Safety Will Not Be Adversely Impacted by a Prisoner Release Order Must be Supported By Data or Suffer Exclusion.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

An expert's opinion may be excluded where the expert does not have "knowledge, skill, experience, training, or education" to qualify them as having "specialized knowledge" regarding the subject upon which they propose to testify. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799-800 (4th Cir. 1989). Factors

regarding reliability include: "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" (*Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand)); whether there is simply "too great an analytical gap between the data and the opinion proffered" and the opinion "is connected to existing data only by the *ipse dixit* of the expert" (*General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)); and whether the conclusions are "mere subjective belief or unsupported conclusions" (*Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 502 (9th Cir. 1994)).  Dr. Gilligan's and Dr. Stewart's opinion does not satisfy these requirements.

**B.    Dr. Gilligan's Opinion Is Not Based on Sufficient Facts or a Reliable Method and So Must Be Excluded.**

As a psychiatrist who has practiced only in Massachusetts and New York, Dr. Gilligan had no familiarity with the availability of mental health care services within the State of California.  (Decl. Mello, Ex. P (9/19/08 Dep. Gilligan) at 11:22-24; 25:14-15.)  He had never personally toured any parole outpatient clinic, any facility of the California Department of Corrections and Rehabilitation (CDCR), nor any facility the Department of Mental Health.  (*Id.* at 35:24 -36:2, 15-17; 36:18-24; 64:7-11.)  Dr. Gilligan testified that he did not "know California in that much detail" and that he just "assume[d] that there are mental health clinics and mental health centers."  (*Id.* at 79:25 & 90:3-9.)  Moreover, Dr. Gilligan did not know the number or the capacity of mental health hospitals in California. (*Id.* at 90:10-18.)

He understood, only from "reading documents," that inmates within the Mental Health Services Delivery System (*Coleman* class members) may, upon parole from prison in California, access needed mental health services through a Parole Outpatient Clinic (POC).  He stated, "The POC framework is set up to provide treatment consisting of medication management, group therapy and individual therapy in California parole offices throughout the state."  (Decl. Mello, Ex. Q at 31, ¶ 59.)  He had reviewed an

annual report on the efficacy of the POC, in combination with pre-release planning. (*Id.*) He urged Defendants adopt the Massachusetts protocol of involuntary placement of mentally ill inmates into the DMH instead of release on parole, but was not aware of the Lanterman-Petris-Short Act. (Decl. Mello, Ex. P (9/19/08 Dep. Gilligan) at 44:5-45:5.) Dr. Gilligan opined that the POC clinics needed to be expanded to meet the mentally ill parolees' needs, but did not have any opinion on the magnitude of that expansion and did not even know the present types of mental health clinicians staffing the clinics. (*Id.* at 65:6-67:7)

Because Dr. Gilligan is not familiar with the community resources available to parolees, he cannot proffer any opinion concerning the public safety impact of releasing mentally ill parolees to the community.

**C.    Dr. Stewart's Opinion Is Not Based on Sufficient Facts or a Reliable Method and So Must Be Excluded.**

Like Dr. Gilligan, Dr. Stewart's knowledge of mental health services provided to mentally ill inmates through Parole Outpatient Clinics or other programs was extremely nominal. (Decl. Mello, Ex. T (9/18/08 Dep. Pablo Stewart) at 238:11-20.) When asked if he had an opinion as to where the POC were sufficient in number and staff to meet the mental health needs of *Coleman* class members subject to a release order, Dr. Stewart confessed, "I don't have that, an opinion on that because I'm not that absolutely familiar with what is currently available. " (*Id.* at 238:11-20.) Dr. Stewart agreed that some portion of released *Coleman* class members would at least need ongoing medication support for their illnesses while in the community, but did not know the number of such patients. (*Id.* at 260:19-261:12.) Dr. Stewart was not aware that certain counties in the State of California do not have the ability to support a county hospital for the care of the indigent. (*Id.* at 266:1-8.) Dr. Stewart did not know the staffing ratios in the California community mental health care system. (*Id.* at 288:6-11.) He urged diversion programs for mentally ill offenders, but had never visited such a program and was not aware if any existed within the State of California. (*Id.* at 273:6-274:2.)

In conclusion, both Dr. Gilligan and Dr. Stewart demonstrated a similar unfamiliarity with respect to the California parole outpatient clinics provided by CDCR and the community mental health care system.  Dr. Gilligan's and Dr. Stewart's opinion that a prisoner release order will not have an adverse impact on public safety lacks the requisite "intellectual rigor" to be an admissible expert opinion, but is instead a statement of mere subjective belief and unsupported conclusions, engineered to match the positions of Plaintiffs' counsel.

## V. CONCLUSION

For the foregoing reasons, the evidence, report, testimony, or argument of Plaintiffs' experts, Dr. James Gilligan and Dr. Pablo Stewart, that a prisoner release order will not have an adverse impact on public safety should be excluded at trial.

DATED:  October 20, 2008                    HANSON BRIDGETT LLP

By: /s/ Paul B. Mello
PAUL MELLO
Attorneys for Defendants Arnold Schwarzenegger, et al.

DATED:  October 20, 2008                    EDMUND G. BROWN JR.
Attorney General for the State of California

By: /s/ Kyle A. Lewis
KYLE LEWIS
Deputy Attorney General
Attorneys for Defendants Arnold Schwarzenegger, et al.