| | |
|---|---|
| PRISON LAW OFFICE | ROSEN, BIEN & GALVAN, LLP |
| DONALD SPECTER, Bar No. 83925 | MICHAEL W. BIEN, Bar No. 96891 |
| STEVEN FAMA, Bar No. 99641 | JANE E. KAHN, Bar No. 112239 |
| E. IVAN TRUJILLO, Bar No. 228790 | AMY WHELAN, Bar No. 215675 |
| SARA NORMAN, Bar No. 189536 | MARIA MORRIS, Bar No. 223903 |
| ALISON HARDY, Bar No. 135966 | LISA ELLS, Bar No. 243657 |
| REBEKAH EVENSON, Bar No. 207825 | 315 Montgomery Street, 10th Floor |
| 1917 Fifth Street | San Francisco, California 94104 |
| Berkeley, CA 94710 | Telephone: (415) 433-6830 |
| Telephone: (510) 280-2621 | |
| | |
| K&L Gates LLP | BINGHAM, McCUTCHEN, LLP |
| JEFFREY L. BORNSTEIN, Bar No. 99358 | WARREN E. GEORGE, Bar No. 53588 |
| EDWARD P. SANGSTER, Bar No. 121041 | Three Embarcadero Center |
| RAYMOND E. LOUGHREY, Bar No. 194363 | San Francisco, California 94111 |
| 55 Second Street, Suite 1700 | Telephone: (415) 393-2000 |
| San Francisco, CA 94105-3493 | |
| Telephone: (415) 882-8200 | |

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>Defendants. | No. Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE PORTIONS OF MCINTOSH OPINION TESTIMONY** |
| MARCIANO PLATA, et al.,<br>Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT** |

Plaintiffs move to exclude portions of opinion evidence to be offered by putative expert witness Paul McIntosh on behalf of Santa Clara County. This motion seeks to exclude (1) opinions offered concerning the medical needs of California prisoners, (2) survey responses obtained from his association members for the purpose of this litigation, and (3) his supplemental expert report.

**Background and Relevant Opinions of Mr. McIntosh Relevant to the Motion**

Paul McIntosh is the Executive Director of the California State Association of Counties ("CSAC"), an organization that lobbies on behalf of California county governments. Santa Clara County designated him to testify concerning the impact of a prisoner release order on California counties.

Mr. McIntosh is a self-described "visionary leader" in the field of county administration. He has a Bachelors degree in public administration, and a Masters degree in Public Management/Finance. He has held a variety of positions in which he was responsible for managing the finances of county governments in California, Arizona and Florida. He has no medical training or background in epidemiology. Expert Report of Paul McIntosh, p. 10-16. Exhibit 5 attached to the Declaration of Edward P. Sangster In Support of Motions in Limine Nos. 6 and 7 (hereafter, "Sangster Decl.").

Santa Clara County served an expert report from Mr. McIntosh, dated August 13, 2008. Ex. 5 to the Sangster Decl. In it, Mr. McIntosh opined, among other things, concerning the rate of disease in California prisons, and the medical needs of California prisoners following their release from prison.

Plaintiffs deposed Mr. McIntosh on September 29, 2008. At the deposition, Santa Clara County's counsel produced a "Supplemental Report" of Mr. McIntosh. Sangster Decl., Ex. 6. The Supplemental Report was comprised mainly of a 28 page compilation of responses to a survey conducted by CSAC of its member counties. The survey was first distributed to CSAC members on September 3, 2008, after the deadline for the service of expert reports. Mr. McIntosh's "Supplemental Report" consisted of a compilation of the survey results, his two page opinion that the survey results "further support my position" articulated in his original report, and his summary of the survey results.

# Argument

### A. The Court should exclude Mr. McIntosh's opinion evidence concerning the rate of disease and medical needs of California prison inmates because he is not qualified to offer such testimony.

The Court should exclude from evidence the following sentences in Mr. McIntosh's expert report: "Of equal importance is the rate of disease in California's prisons that will likely result in most, if not all, inmates requiring some form of medical care. And, if they do not receive that medical care, greater costs will be incurred by counties and private health providers due to the spread of infection because of parolees' untreated medical conditions." Expert Report of Paul McIntosh, p. 7. Sangster Decl., Ex. 5.

In order to be admissible, expert opinions must be based on "knowledge, skill, experience, training, or education" relevant to the subject matter. Fed. R. Evid. 702; *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Thus, in order to render an opinion as to medical matters or disease prevalence, an expert must possess knowledge, skill, experience, training, or education in such matters. *See, e.g., Smelser v. Norfolk S. Ry. Co*, 105 F.3d 299, 305 (6th Cir. 1997), *abrogation on other grounds recognized by Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 515 n.4 (6th Cir. 1009) (reversing trial court's admission of expert testimony because engineer not qualified to render medical opinion); *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (trial court correctly excluded engineer testimony because not qualified to render medical opinion); *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 492-93 (D.N.J. 1998) (expert testimony on medical causation excluded because expert unqualified).

The sentences quoted above should be excluded from evidence because Mr. McIntosh is not qualified to offer an opinion regarding disease prevalence in California prisons, the spread of infectious diseases, or California parolees' medical conditions. His curriculum vitae, attached to his August 13 report, demonstrates that his qualifications lie solely in the area of management and administration. He has no experience running a prison or county jail. McIntosh Depo. at 28:7-14, Sangster Decl. Ex. 4. He has no information about how many or how often parolees use medical care services provided by California counties. McIntosh Depo. at 111:14-19, 111:25-112:3, Sangster Dec.

Ex. 4. His curriculum vitae contains no mention of any qualifications or experience relating to the delivery of medical services; the spread of infectious diseases; the delivery of medical services in California prisons; the prevalence of any diseases or medical conditions, infectious or otherwise, in California prisons or among parolee populations.

**B.     The Court should exclude the compilation of survey responses attached to Mr. McIntosh's Supplemental Report because it constitutes inadmissible hearsay.**

It is readily apparent that the Supplemental Report is simply a tool by which Santa Clara County and CSAC are attempting to introduce 28 pages of unsubstantiated hearsay into evidence. Twenty-eight out of the 30 pages comprising Mr. McIntosh's Supplemental Report consist of a compilation of survey responses. The surveys and responses, themselves, are not attached. The surveys apparently asked counties to discuss the impacts of early release of prisoners on county mental health programs, alcohol and drug programs, county heath systems, General Assistance, unspecified "other programs" and infrastructure. The compiled responses consist of unsubstantiated assertions by fourteen counties about what the impacts would be.

Survey responses are out of court statements being offered for the truth of the matters stated. In this case, Santa Clara County is attempting to introduce into evidence unsubstantiated assertions by non-testifying witness about how a prisoner release order would impact those counties. They are, therefore, hearsay. Thus, unless an exception to the hearsay rule applies, they must be excluded. Federal Rules of Evidence, Rule 802. Because no exception applies, the responses should be excluded.

**C.     Mr. McIntosh's Supplemental Report should be excluded because the opinions in that report are based upon the survey responses, and the survey responses are not of a type relied upon by reasonable experts.**

With one minor exception, Mr. McIntosh's Supplemental Report consists of the survey responses, Mr. McIntosh's summary of the survey responses, and his conclusion that the survey responses "further support" the opinions disclosed in his original report. Plaintiffs object to the Supplemental Report on several grounds.

4

PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE PORTIONS OF MCINTOSH OPINIONS
Nos.: Civ S 90-0520 LKK-JFM, C01-1351 THE

### 1. The Supplemental Report was inexcusably served more than a month after the August 15, 2008 deadline.

The Court set a deadline of August 15, 2008 to disclose expert reports. Mr. McIntosh's employer, CSAC, did not even send the surveys to its members until September 3, 2008, and did not request that responses be provided until September 17, 2008. Supplemental Report, p.1, 2d paragraph. Sangster Decl., Ex. 6. Then, Santa Clara County waited until the day of his deposition to deliver the Supplemental Report to the attorney who noticed the deposition.[1] In short, Santa Clara County simply flouted the Court imposed deadline and then bushwhacked counsel with a 30 pages of survey response at the deposition.

Santa Clara County did not seek or obtain an extension of the court-imposed deadline for disclosing expert reports, and no good cause existed to explain the last minute production. The Court should therefore exclude the Supplemental Report.

### 2. The Supplemental Report should be excluded because it is based upon inadmissible hearsay that is not a type upon which experts in the field rely.

Experts may base their opinions on inadmissible facts or data, providing that the facts or data are a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Federal Rules of Evidence, Rule 703. Whether inadmissible evidence has been "reasonably" relied upon, so as to render admissible opinion testimony based on inadmissible facts or data, is a foundational question to be determined by the court. In re Paoli R.R.. Yard PCB Litigation, (3d Cir. 1994) 35 F.3d 717, 748. The court must give "'careful consideration' to any inadmissible facts upon which the expert will rely, in order to determine whether reliance is 'reasonable.'" Univ. of Rhode Island v. A.W. Chesterton Co., (1st Cir. 1993) 2 F.3d 1200, 1218. A reasonableness determination requires an assessment of whether there are good grounds for reliance on the particular facts or data. In re Paoli R.R.. Yard PCB Litigation, 35 F.3d at 748. "Courts look to evidence from experts in the field about the reliability of the materials in question, *In re Japanese Electronic*

---

[1] Santa Clara County claimed to have emailed the report to Plaintiffs' counsel on the Friday before the Monday deposition. There is no record of receiving the Supplemental Report, but in any event, the attorney taking the deposition was not aware of it until it was mentioned during the deposition. Sangster Decl., ¶ 7.

1   *Products* [3d Cir. 1983)] 723 F.2d at 277, as well as their own experience and common sense." In re
2   Agent Orange Prod. Liab. Litigation, (E.D.N.Y. 1985) 611 F. Supp. 1223.

3       This issue is analogous to the one considered by the court in In re Agent Orange Prod. Liab.
4   Litigation. In that case, plaintiffs' medical experts attempted to rely on affidavits executed by class
5   members concerning their exposures to Agent Orange. The affidavits attached checklists of
6   symptoms of Agent Orange exposure. The checklists allowed the individuals to identify any or all of
7   a number of symptoms which the affiants attributed to Agent Orange exposure. In ruling on a motion
8   for summary judgment, the trial court excluded opinions based on the affidavits and checklists
9   because there was no evidence that experts would typically rely on such hearsay. Id. at 1243-47.
10  "No case . . . has gone so far as to allow a doctor to rely on such self-serving laypersons' general
11  affidavits and checklists prepared in gross for a complex litigation." Id. at 1247.

12      The surveys used by Mr. McIntosh are less reliable than the affidavits and checklists used in
13  In re Agent Orange Litigation. The information in the hearsay relied upon in In re Agent Orange
14  Litigation at least was provided under oath. Id. at 1246-47 and 1264, App. A.

15      Here, the accuracy of the survey responses was not verified in any way, and there is nothing
16  to indicate that the information contained in the responses was in any way reliable. Mr. McIntosh
17  could not explain how the respondents came up with the information in their responses:

18      Q. What methodology was used by the respondents to your survey?
19      A. I don't know exactly.
20      McIntosh Depo, 80:25-81:2, Sangster Decl. Ex. 4.

21      Instead, he talked to a representative of Butte County and made assumptions about how other
22  counties prepared their responses, "Because I know how county administrators work." McIntosh
23  Depo, 81:9-82:18, Sangster Decl. Ex. 4. Mr. McIntosh did not know what records the respondents
24  reviewed in order to prepare their responses, or what, if anything, was done to verify the accuracy of
25  information reported in the responses. McIntosh Depo, 82:23-83:8, Sangster Decl. Ex. 4.

26      There is no evidence that experts like Mr. McIntosh typically rely on surveys of their
27  members to form their opinions. Even if some experts reasonably relied upon such information, Mr.
28  McIntosh could not reasonably rely upon his survey responses because he does not have any

information about how the responses were prepared, or whether the information in them was accurate.

### Conclusion

Mr. McIntosh has no qualifications to opine about the rate of disease or medical needs of California prisoners. His opinions regarding that subject should be excluded.

The Court should also exclude the counties' survey responses, which are hearsay. If Santa Clara County wanted to introduce evidence from each of these counties, it should have designated witnesses so they could testify and be cross-examined. Nor should the Court permit Santa Clara County to sneak the survey responses into evidence by claiming that they Mr. McIntosh is an expert who is reasonably relying on those responses. There is nothing reliable about the responses.

Dated: October 20, 2008          By:

/s/ Edward P. Sangster
EDWARD P. SANGSTER
ed.sangster@klgates.com

K&L Gates LLP
Attorneys for Plaintiffs