JONES & MAYER
Martin J. Mayer (SB # 73890)
Michael R. Capizzi (SB # 35864)
Kimberly Hall Barlow (SB # 149902)
Ivy M. Tsai (SB # 223168)
3777 North Harbor Boulevard
Fullerton, California 92835
(714) 446-1400; Fax (714) 446-1448
e-mail: mjm@jones-mayer.com
e-mail: mrc@jones-mayer.com
e-mail: khb@jones-mayer.com
e-mail: imt@jones-mayer.com

Attorneys for Law Enforcement
Intervenor-Defendants

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No: CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)] |
| ARNOLD SCHWARZENEGGER, et al., | **LAW ENFORCEMENT INTERVENORS' MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF JAMES AUSTIN, PhD REGARDING CERTAIN MATTERS** |
| Defendants. | |
| | |
| MARCIANO PLATA, et al., | Case No.: C01-1351 TEH |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | |

-1-

LAW ENFORCEMENT INTERVENORS' MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF
JAMES AUSTIN, PhD. REGARDING CERTAIN MATTERS

1
2    ARNOLD SCHWARZENEGGER, et
     al.,
3              Defendants.

4    TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

5         Defendant Intervenors Sheriffs, Police Chiefs, Chief Corrections Officer and Chief

6    Probation Officers (Law Enforcement Intervenors) respectfully submit the following

7    motion to exclude at trial testimony of James Austin, PhD. offered to rebut the testimony

8    of Chief Jerry Dyer, Chief Jerry Powers and Dr. James Marquardt.  This motion is based

9    upon the points and authorities set forth herein, the attached declaration of Kimberly Hall

10   Barlow, and such other evidence and argument as may be made at the hearing on the

11   motions in limine.

12       **I.**     ***Dr. Austin should be precluded from testifying in rebuttal for failure to***

13            ***preserve or produce drafts of his rebuttal reports or his expert file.***

14        First, the Law Enforcement Intervenors move to preclude Dr. Austin from offering

15   any rebuttal testimony as set forth in his September 25, 2008 "rebuttal" report.  Dr.

16   Austin's deposition relating to his rebuttal report was originally scheduled for October 8,

17   2008, however, at Plaintiffs' request, the deposition was rescheduled to October 15,

18   2008.    A true and correct copy of the deposition notice for October 8, 2008 is attached

19   to the accompanying declaration of Kimberly Hall Barlow ("Barlow Decl.") as Exhibit

20   "A."  A true and correct copy of the amended notice for October 15, 2008 is attached to

21   the Barlow declaration as Exhibit "B."

22        During Dr. Austin's deposition, no drafts of his "rebuttal" report were produced.

23   Barlow Decl., ¶ 4.  Nor did Dr. Austin produce the documents saved on his computer or

24   saved in a "stack" on his floor, which he testified he keeps in lieu of an expert file.

25   Barlow Decl. ¶ 5.  Both the original and amended notice of the deposition of Dr. Austin

26   had requested that all drafts of the rebuttal report be produced, as well as Dr. Austin's

27   expert file.  Nonetheless, at the deposition, Dr. Austin testified that he intentionally did

28

1   not preserve drafts of his rebuttal report, choosing instead to create the report using

2   Plaintiffs' counsel's private server and overwriting the drafts with successive drafts and

3   ultimately the final version of the report.  Barlow Decl., ¶ 4, 7.    No explanation was

4   offered by Plaintiffs' counsel at Dr. Austin's deposition as to why the drafts were not

5   preserved.  Barlow Decl., ¶ 4.

6       Any preliminary or draft report prepared by an expert is discoverable under FRCP

7   Rule 26(a)(2)(B).  Hewlitt-Packard v. Bausch & Lomb, Inc., 116 F.R.D. 533, 536 (N.D.

8   Cal. 1987).   An expert is required to retain materials given to him to review, and to

9   preserve all information considered by him, to allow effective cross-examination.  Adv.

10  Comm. Notes to 1993 Amendments to FRCP 26(a)(2); Fidelity Nat'l Title Ins. Co. of

11  N.Y. v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 750 (7th Cir. 2005).  Documents to

12  be preserved include draft expert reports.   McDonald v. Sun Oil Co., 423 F. Supp. 2d

13  1114, 1122 (draft reports discoverable) (D. Or. 2006).

14      Where drafts of an expert report are intentionally destroyed, preclusion of the

15  expert's opinions is an appropriate sanction where remedial measures cannot ameliorate

16  prejudice to the other party.  Trigon Ins. Co. v. United States, 204 F.R.D 277 (E.D. Va.

17  2001).   In Trigon, the United States hired a litigation consultant who in turn "supervised"

18  and paid experts for the United States, in the course of which drafts of the expert reports

19  and communications between the consultant and the experts, as well as communications

20  between the experts, were intentionally destroyed due to the consultant's document

21  retention policy and the "individual practices of" the testifying experts.  Id. at 281.  The

22  Court held that the United States and its agents (the consultants and experts) had a duty to

23  preserve the drafts from the time of their genesis and to produce them upon request.  Id.

24  at 282, 288.  Their destruction of the drafts was intentional, and caused prejudice to the

25  opposing party because they were deprived of an opportunity to use the drafts to cross-

26  examine the experts to test their independent and the substance of their opinions.  Id. at

27  289-90.  The Court concluded that preclusion of evidence from willful conduct that

28

1   results in loss of relevant evidence, including draft reports of experts, could be an

2   appropriate sanction in a case where there is no ability to recover the destroyed evidence.

3   Id. at 291. Because the injured party did not request preclusion, the Court instead

4   allowed an adverse inference to be drawn as to both the substantive testimony and

5   credibility of the experts at trial. Id.

6          The situation at bar is not one where drafts were inadvertently lost or failed to be

7   saved by an inexperienced expert. Dr. Austin has produced four separate reports in this

8   matter, and according to his resume and deposition testimony, has served as an expert

9   witness in numerous cases. He was questioned extensively in his first deposition session,

10  taken on September 19, 2008, about an e-mail from Plaintiffs' counsel attaching a draft

11  document which appeared remarkably similar to portions of his earliest report in this case

12  -- the line of questioning related to whether certain portions of his report were authored

13  by Plaintiffs' counsel rather than Dr. Austin himself. Barlow Decl., ¶ 6, and Exhibit "C,"

14  deposition excerpts of Austin deposition, Vol. I.

15         Plaintiffs' counsel has been involved in this case for more than a dozen years.

16  Remarkably, they provided direct access to their computer server to their designated

17  expert, and apparently completely failed to advise him that drafts of his reports were to be

18  preserved. No effort was undertaken to preserve the drafts or to locate them on back up

19  tapes or other sources. Coming as it did immediately upon the heels of difficult questions

20  regarding who really authored portions of Dr. Austin's initial report in this case, this

21  intentional overwriting of drafts of the rebuttal report cannot be explained away as mere

22  inadvertence. The Court can and should presume that the decision to overwrite Dr.

23  Austin's drafts instead of saving each version of his rebuttal report as a separate

24  document, or at least printing out a copy of a draft before overwriting it, was not only

25  made intentionally, but made for the purpose of precluding questions regarding

26  differences between the drafts and the final report.   Dr. Austin should be precluded from

27  testifying regarding the deposition testimony and documents provided by Jerry Powers

28

1    and Jerry Dyer in support of their opinions.

2    **II.     Dr. Austin should be precluded from offering any "rebuttal" testimony**

3    **regarding the opinions expressed in deposition by Jerry Dyer and Jerry**

4    **Powers or from testifying regarding the documents relied upon by either**

5    **of them.**

6        Dr. Austin has been designated by Plaintiffs as a rebuttal expert by designation

7    dated August 27, 2008.   The expert reports of Chief Jerry Powers and Chief Jerry Dyer

8    were served on all parties by the Law Enforcement Intervenors on September 15, 2008.

9    Barlow Decl., ¶ 2.    Plaintiffs took the deposition of Jerry Dyer on October 6, 2008, and

10   were provided with documents relating to Chief Dyer's opinions on October 1, 2008 and

11   October 3, 2008.   Additional documents were also produced at the deposition on October

12   6, 2008.  Following the deposition, as a result of a request by Plaintiffs' counsel at the

13   deposition, an additional document relating to Chief Dyer's deposition was produced to

14   all parties on October 13, 2008. Barlow Decl., ¶ 8.    However, Dr. Austin testified at his

15   deposition on October 15, 2008 that none of the documents relating to Chief Dyer's

16   opinions were provided to him by Plaintiffs, although he had asked for copies. Barlow

17   Decl., ¶ 9.   He confirmed that he was unable to testify at his deposition concerning the

18   documents or how they might affect his rebuttal opinions to those of Chief Dyer.  He also

19   confirmed that he had not been provided with a copy of Chief Dyer's deposition

20   transcript to address any specific opinions or documents addressed at that deposition.

21   Barlow Decl., ¶ 9.   However, he seemed to suggest that he would be prepared at trial to

22   testify regarding those documents and how they might affect his opinions if Plaintiffs'

23   counsel later provided the documents to him.  Barlow Decl., ¶ 9.

24       Because all of the documents which related to Chief Dyer's opinions were

25   provided to Plaintiffs prior to the deposition of Dr. Austin, most of which were provided

26   at least two weeks prior to Dr. Austin's deposition, Plaintiffs should be precluded from

27   offering any testimony from Dr. Austin rebutting Chief Dyer's opinions, and especially

28

1    any opinions relating to the documents relied upon or considered by Chief Dyer in

2    rendering his opinions.

3         Plaintiffs took the expert deposition of Jerry Powers on October 7, 2008, and were

4    provided with documents relating to Chief Powers' opinions on or before the date of the

5    deposition.   Barlow Decl., ¶ 8.   Just as with Chief Dyer, Dr. Austin testified at his

6    deposition on October 15, 2008 that none of the documents relating to Chief Powers'

7    opinions were provided to him by Plaintiffs, although he had asked for copies. Barlow

8    Decl., ¶ 9.  He confirmed that he was unable to testify at his deposition concerning the

9    documents or how they might affect his rebuttal opinions to those of Chief Powers. He

10   also confirmed that he had not been provided with a copy of Chief Powers' deposition

11   transcript to address any specific opinions or documents addressed at that deposition.

12   Barlow Decl., ¶ 9.   However, Dr. Austin again seemed to suggest that he would be

13   prepared at trial to testify regarding documents produced by Chief Powers and how they

14   might affect his opinions if Plaintiffs' counsel later provided the documents to him.

15   Barlow Decl., ¶ 9.

16        Because all of the documents which related to Chief Powers' opinions were

17   provided to Plaintiffs prior to the deposition of Dr. Austin, all of which were provided

18   more than two weeks prior to Dr. Austin's deposition, Plaintiffs should be precluded

19   from offering any testimony from Dr. Austin rebutting Chief Powers' opinions, and

20   especially any opinions relating to the documents relied upon or considered by Chief

21   Powers in rendering his opinions.

22        Plaintiffs' willful failure to provide the documents or deposition transcript of

23   Chief Powers and Chief Dyer to Dr. Austin in advance of his deposition so that he could

24   be questioned regarding how the deposition testimony or documents affected his rebuttal

25   opinions, if at all, should preclude Plaintiffs from offering direct testimony from Dr.

26   Austin on these subjects.  It would be unfair and inappropriate to allow Plaintiffs to

27   sandbag the Defendant Intervenors in this way since they will not be prepared to address

28

1  any additional rebuttal testimony that Dr. Austin may provide at trial due to his post-

2  deposition work.

3      A supplementary disclosure under Federal Rule of Civil Procedure 26(a)(2)(D),

4  even if timely (which it cannot be) would not cure the prejudice to Defendant

5  Intervenors.  In any event, a supplemental disclosure is not allowed to contain new

6  opinions after the disclosure deadline.  Metro Ford Truck Sales, Inc. v. Ford Motor Co.,

7  145 F.3d 320, 324 (5th Cir. 1998).  Thus, any rebuttal testimony from Dr. Austin

8  concerning the depositions of Chief Dyer and Chief Powers, or the documents relied

9  upon by them, should be precluded.

10                        Respectfully submitted,

11  DATED:    October 20, 2008          JONES & MAYER

12

13                        By: _____/s/_____

14                          Kimberly Hall Barlow
Attorneys for Sheriff, Probation, Police

15                          Chief, and Corrections Intervenor-
Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW ENFORCEMENT INTERVENORS' MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF
JAMES AUSTIN, PhD. REGARDING CERTAIN MATTERS