# EXHIBIT M

**Certified Copy**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

RALPH COLEMAN, et al.,

        Plaintiffs,

    vs.

ARNOLD SCHWARZENEGGER, et al.,

        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MARCIANO PLATA, et al.,

        Plaintiffs,

    vs.

ARNOLD SCHWARZENEGGER, et al.,

        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

CASE NO. 2:90-cv-00520
LKK JFM P

THREE-JUDGE COURT

CASE NO. C01-1351 TEH

THREE-JUDGE COURT

DEPOSITION OF

JAMES AUSTIN

VOLUME I

SEPTEMBER 19, 2008
10:06 a.m.

425 Market Street, 26th Floor

San Francisco, California

Reported by Quyen N. Do, RPR, CSR No. 12447

P A U L S O N

REPORTING & LITIGATION SERVICES

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

James Austin - Volume I                          September 19, 2008

25

1    paragraph 15, you've been retained as an expert in

2    prison administration.  Do you see that?

3          A    Yes.

4          Q    Have you ever been a prison administrator?

5          A    No.

6          Q    You also state that you've been retained as an

7    expert in the impact of overcrowding on prisoners'

8    medical care.  Do you see that?

9          A    Yes.

10         Q    Do you have any medical training, education or

11   experience?

12         A    No.

13              MS. EVENSON:  Objection.  Compound.

14   BY MS. JOHNSON:

15         Q    Do you have any experience in health care

16   management or systems of any sort?

17              MS. EVENSON:  Objection.  Compound.

18              THE WITNESS:  What do you mean by systems of

19   any sort?

20   BY MS. JOHNSON:

21         Q    Health care systems.  Do you have any

22   experience in the operation of any health care systems?

23              MS. EVENSON:  Objection.  Vague.

24              THE WITNESS:  Well, I have experience in terms

25   of looking at the reception centers.

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

James Austin - Volume I                          September 19, 2008

30

1    Q    I don't remember you mentioning crowding in

2    connection with Georgia.  Was crowding involved in the

3    Georgia case?

4    A    Yes.  It was part of the protection from harm.

5    Q    In Louisiana, with respect to the specific

6    standards that the state had to achieve in order to be

7    in compliance in connection with medical and mental

8    health, did you establish those standards, or were you

9    just monitoring standards that someone else had

10   established?

11   A    Well, the -- the agreement itself kind of

12   specified the standards, but in each of these, there

13   were medical and mental health experts that were hired,

14   and they were doing their own independent assessment of

15   whether or not the states -- those states were in

16   compliance.

17   Q    So, the function of determining whether the

18   medical and mental health systems were in compliance

19   with the standards in both Georgia and Louisiana was not

20   your direct function; that was delegated to mental and

21   medical health experts?

22        MS. EVENSON:  Objection.  Vague.

23        THE WITNESS:  No, I wouldn't characterize it

24   that way.  They -- like in Louisiana, they worked for

25   me, and so they would -- you know, I would go on tours

PAULSON
REPORTING & LITIGATION SERVICES, LLC
www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

                                    31

1    with them, and we would jointly look at it.  I -- they

2    would issue their reports to me, and then ultimately I

3    would make the determination as to whether or not

4    compliance was being met.

5    BY MS. JOHNSON:

6        Q    Well, why did you hire medical and mental

7    health experts to work under you rather than just doing

8    the assessment directly yourself?

9        A    Because I'm not a doctor or a psychiatrist, so

10   you need to get people with expertise in these areas.

11       Q    Is there any other work that you've done,

12   other than the experiences in Georgia and Louisiana,

13   that involved issues of prison medical or mental health

14   care?

15           MS. EVENSON:  Anne, why don't we get his

16   résumé, because he's just testified that he has [sic] a

17   full recollection of all the work he's ever done.  So,

18   maybe --

19           MS. JOHNSON:  I'm entitled to his best

20   recollection sitting here, so ...

21           MS. EVENSON:  Okay.

22           THE WITNESS:  Well, there may be others, and

23   it depends on your definition of, you know, what you

24   think I should report here.

25   BY MS. JOHNSON:

PAULSON
REPORTING & LITIGATION SERVICES, LLC
www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

James Austin - Volume I                    September 19, 2008

                              88

1    and in Georgia.

2    BY MS. JOHNSON:

3         Q     Were those alleged constitutional

4    deficiencies?

5              MS. EVENSON:  Objection.  Calls for

6    speculation.

7              THE WITNESS:  All I can tell you is that they

8    were results of -- that being alleged and an agreement

9    being reached to remedy those situations.

10   BY MS. JOHNSON:

11        Q     You think specifically constitutional

12   deficiencies were alleged?

13             MS. EVENSON:  Objection.  Lacks foundation.

14             THE WITNESS:  I don't know.

15             MS. JOHNSON:  Okay.

16             MS. EVENSON:  And we were going to break at

17   12:30, so any time.

18   BY MS. JOHNSON:

19        Q     Okay.  So, you also concluded on page 21 in

20   paragraph 53 that overcrowding is the primary cause of

21   the current unconstitutional conditions experienced by

22   the members of the Coleman class.

23        A     Yes.

24        Q     Can you tell me specifically which

25   unconstitutional conditions experienced by the members

**PAULSON**

**REPORTING & LITIGATION SERVICES, LLC**

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

89

1    of the Coleman class are caused by overcrowding?

2        A    No.

3        Q    Okay, we can take a break now.

4                           * * *

5            (LUNCHEON RECESS TAKEN FROM

6            12:33 P.M. to 1:10 P.M.)

7            (Record read as follows:

8            "QUESTION:  Can you tell me

9            specifically which unconstitutional

10           conditions experienced by the

11           members of the Coleman class are

12           caused by overcrowding?

13           "ANSWER:  No.")

14           THE WITNESS:  When you ask specifically, you

15   know, I'm not familiar specifically with the Coleman

16   case unless I have those other documents in front of me.

17                   EXAMINATION (Resumed)

18   BY MS. JOHNSON:

19       Q    I'm not sure [sic] you mean.  What other

20   documents?

21       A    The Receiver's reports, monitor's reports.

22   All the documents that are listed as the basis for my

23   opinion.

24       Q    We can mark as whatever -- what's the next

25   one?

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

92

1      A    Right.

2      Q    So you didn't represent that you actually read

3  all of the documents.

4      A    No, I'm not saying that at all.

5      Q    You're not saying that -- what at all?

6      A    Just what you said.

7      Q    Okay.  So you're not saying that you read all

8  of the documents.

9      A    I'm not saying that, no.

10         Let's go to the exhibit that you're referring

11  to, Exhibit 3, right?

12     Q    I'm in Exhibit 3 already.

13     A    What page?

14     Q    Page 6.

15     A    And?

16     Q    At the top where you refer to Appendix B.

17     A    Okay, says, "A complete list of the documents

18  provided to me by plaintiffs' counsel is attached."

19     Q    That's correct.

20     A    Okay.

21     Q    So --

22     A    So those -- those were provided to me.

23     Q    My question to you is, Did you or did you not

24  read all the documents --

25     A    I can't tell you that.

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

93

1    Q    Did you or did you not read all the documents

2    that are identified on Appendix B?

3    A    I can't tell you.

4    Q    You don't know?

5    A    I'd have to look at each of the documents to

6    see that I read those.  They were provided to me.

7    There's a difference between providing and reading.

8    Q    Sitting here today, you don't know?

9    A    Sitting here, I don't know; what do you mean

10   by that?

11   Q    Sitting here today, you do not know whether

12   you read every single one of those documents that's

13   listed on Appendix B?

14   A    Not the way that I would phrase it.  I would

15   say I can't tell you without looking at the documents.

16   Q    Okay.  Let's look at the first page of

17   Appendix B.  It identifies the Receiver's Report

18   Regarding Overcrowding and Appendices to same.

19   A    What line are you on?

20   Q    I don't know.

21        MS. EVENSON:    [Indicating.]

22   BY MS. JOHNSON:

23   Q    17th line about.

24   A    Receiver's Report?

25   Q    Mm-hm.

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

100

1      Q     These are all of them; you didn't consider any

2   deficiencies other than the ones that are identified in

3   Section B?

4      A     Oh, I see.  These are the ones that I've

5   identified as the major things that crowding is causing,

6   which -- which affects the delivery of adequate medical

7   and mental health services.  I guess are you asking, are

8   there -- anything else I looked at or considered?

9      Q     That's correct.

10     A     I'm sure I did.  In reading all the reports,

11  you know, I'm sure I looked at a lot of things that were

12  being stated.

13     Q     Can you identify to me today all of the

14  deficiencies in medical care in California's prisons

15  that you considered when attempting to determine whether

16  overcrowding was the primary cause of the

17  constitutionally adequate care overall?

18     A     No, I can't tell you today without looking at

19  all the documents that I reviewed.

20     Q     So, in reaching the conclusion that

21  overcrowding was the primary cause of the -- the

22  unconstitutional opinions conditions for the Plata class

23  members, you did not make an exhaustive list of what you

24  thought all the deficiencies in medical care were and

25  attempt to assign some type of cause to each of those

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

James Austin - Volume I                          September 19, 2008

101

1    deficiencies; is that correct?

2              MS. EVENSON:  Objection.  Vague and ambiguous.

3              THE WITNESS:  The way you're phrasing it,

4    it -- it is not accurate.  So I can't -- it's hard for

5    me to respond to your question.  Did I list -- put a

6    list of all the factors and then assign a weight to

7    them?

8              MS. JOHNSON:  Yes.

9              THE WITNESS:  Okay.  I don't think I put

10   weights on them, but I just listed the ones that I

11   thought were the most important ones.

12   BY MS. JOHNSON:

13       Q    And how did you come to the conclusion that

14   those were the most important ones if you didn't put a

15   weight on them?

16       A    Well, that's based on my opinion and my

17   experience in working with other states and the work

18   that I do.  People ask me all the time, you know, "What

19   do you think are the most important things here?"  And

20   that's what I do for a living.  You know, people ask me

21   to do that.  I do that.  That's what I did here.

22       Q    Well, sometimes you actually do statistical

23   analyses as well, correct?

24       A    Mm-hm.  Yes.

25       Q    But you didn't do any form of statistical or

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

102

1    empirical analysis here, correct?

2            MS. EVENSON:   Objection.   Vague as to "here."

3    There are three reports.

4            MS. JOHNSON:   Well, we're only talking about

5    the first report, so we can clear that up.

6        Q    (By Ms. Johnson)  And, with respect to your

7    opinion regarding whether overcrowding is the primary

8    cause of the unconstitutional conditions for the Plata

9    class members, you did not do any statistical or

10   empirical analysis; is that correct?

11       A    No, that's not correct.

12       Q    Okay.   What statistical or empirical analysis

13   did you do to determine that overcrowding is the primary

14   cause of the unconstitutional conditions for Plata class

15   members?

16       A    Well, what I was looking at, in these various

17   reports, there's a lot of documentation that's

18   statistical in nature about the state's ability to meet

19   the requirements set forth in the agreements.   So

20   there's bunch of statistical analysis there, so I'm

21   looking at that data.   Did I do any statistical analysis

22   myself?   No.   I was reviewing other people's analysis.

23       Q    Who's people -- what analysis -- specific data

24   analysis did you review --

25       A    It's --

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

103

1        Q      -- to draw your conclusion that overcrowding

2    is the primary cause of the unconstitutional conditions

3    with respect to the Plata class members?

4        A      It would be all the documents that are listed

5    in Appendix B.

6        Q      But I'm asking what specific data.

7        A      And I could tell you if I had the documents in

8    front of me.    There's no way I can tell you right now.

9        Q      Did you summarize the statistical information

10   in your report?

11              MS. EVENSON:   Objection.   The report speaks

12   for itself.

13              MS. JOHNSON:   Exhibit 3.

14              THE WITNESS:   Well, the major things that I

15   was --

16   BY MS. JOHNSON:

17       Q      I don't think -- I think that you have a

18   different report in front of you right now.

19       A      Oh, okay.

20       Q      Is that the right one?

21       A      Exhibit 3?

22       Q      Okay.

23       A      I tried, in the report, to list as much as I

24   could the information that I reviewed and my opinions

25   and the basis for my opinions in that report.

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

104

1                MS. EVENSON:  Do you want him to go through

2      paragraph by paragraph and talk about --

3                MS. JOHNSON:  I want him to tell me the

4      statistical analyses that he relied upon to determine

5      that overcrowding is the primary cause of the

6      unconstitutional conditions facing the Plata class

7      members.

8                THE WITNESS:  Could you restate her -- or

9      reread back her question to me?

10               (Record read as follows:

11               "QUESTION:  I want him to tell me

12               the statistical analyses that he

13               relied upon to determine that

14               overcrowding is the primary cause

15               of the unconstitutional conditions

16               facing the Plata class members.")

17               THE WITNESS:  Right.  I didn't do any

18      statistical analysis.  I reviewed the data and formed

19      opinions based on the data, which is very different than

20      what I did in my other reports, where I'm actually doing

21      statistical analysis.

22      BY MS. JOHNSON:

23          Q    Why did you do statistical analysis in your

24      other reports and not in this one?

25          A    Because you have to calculate information that

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

105

1   wasn't available from the Department of Corrections or

2   from other documents.  In order to reach my conclusions

3   in the other documents, I had to perform analysis that

4   had never been done.

5       Q    And what statistical analyses had been done

6   regarding whether overcrowding is the primary cause of

7   the unconstitutional conditions facing the Plata class

8   members?

9       A    Well, I can give you some examples, but, you

10  know, there was examples of proportion of cases where

11  services were not being provided, screenings, delays in

12  screening.  There was a number of statistical reports

13  that are in the various progress reports that present

14  measures of whether or not the state's in compliance

15  with Plata and Coleman.  And so those that's -- those

16  are data that's in those reports, and again if I had the

17  reports, I could go by and show you this is the report,

18  this is the data, et cetera.

19      Q    Well, what the --

20      A    But I'm not doing that analysis.  That's being

21  done by other people, and they're presenting it in

22  reports.

23      Q    And that has to do with the deficiencies in

24  providing care itself, correct?  There's data about

25  whether care is being provided correctly.

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

106

1    A    Correct.

2    Q    Okay.  Where is the data about what the causes

3    of the deficiencies in care are?

4    A    The data about what's causing it and that's

5    overcrowding, that's my opinion.

6    Q    Is your opinion about what's causing

7    overcrowding based on any data?

8    A    Yes.

9    Q    I'm sorry.  Strike that.

10        Is your opinion about what's causing the

11   deficiencies based on any data?

12   A    Yes.

13   Q    What data is your opinion about what's causing

14   the deficiencies based on?

15   A    It's contained in the documents that I

16   reviewed.  I'd have to have access to those documents

17   and point them out to you.

18   Q    So there's no individual study that you can

19   point to that you recall relying on to provide -- to

20   support your opinion that overcrowding is the primary

21   cause of the unconstitutional conditions for either the

22   Plata or Coleman class members?

23        MS. EVENSON:  Objection.  Asked and answered

24   and vague and ambiguous.

25        THE WITNESS:  The documents I relied upon are

PAULSON
REPORTING & LITIGATION SERVICES, LLC
www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

107

1    in that appendix.

2    BY MS. JOHNSON:

3        Q    I know, but I was asking for -- I think a --

4        A    Specific document.

5        Q    Specific --

6        A    Yeah.  And I --

7        Q    -- statistical analysis.

8        A    -- I can -- they exist.  I don't have access

9    to it.  So, I wasn't aware that you wanted me to present

10   the specific analysis today that I relied upon, so I

11   would be glad to review those documents and -- again and

12   give you -- you know, the data, the charts, the tables,

13   they're assembled by all the people that produced those

14   reports.

15       Q    And those charts and tables relate to what the

16   causes of the deficiencies are?

17       A    They may in some -- they may in some regard,

18   but, you know, that's my opinion that it's crowding.

19       Q    I understand.  What I'm trying to ask you is

20   to tell me the data that your opinion that crowding is

21   the cause is based on.

22       A    Right, and I'll be glad to provide that to

23   you, but I can't until I look at those documents again.

24            MS. JOHNSON:  Well, I guess we're not going to

25   be closing this deposition, because it doesn't seem like

Telephone: 415.591.3333
Facsimile: 415.591.3335

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

109

1    Everything in accordance with the rules and the court's

2    orders, everything that he's prepared to testify about

3    is in his reports.

4            MS. JOHNSON:  Okay, so if he can't testify

5    about it today, then he is not going to be permitted to

6    testify about it at trial, right?  I mean, either he can

7    identify to me today what the data, the basis -- the

8    data on which he based his opinion that crowding is the

9    primary cause of the unconstitutional conditions, he

10   either do it today, or he's not going to be able --

11   permitted to do it at trial.

12           MS. EVENSON:  If you show him a specific --

13   the documents that he relied upon --

14           THE WITNESS:  Could I say something here,

15   please?

16           MS. EVENSON:  Don't -- don't -- don't --

17   don't -- don't volunteer.

18           THE WITNESS:  All right, Counsel.

19           MS. EVENSON:  You'll answer questions when

20   they're posed to you, but ...

21           He said he needs to look at documents.  If you

22   show him the documents --

23           MS. JOHNSON:  It wasn't my job to prepare your

24   expert for testimony at pretrial deposition, which means

25   that when you designate someone as an expert and then

PAULSON
REPORTING & LITIGATION SERVICES, LLC
www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

110

1    you offer them up for deposition, they are supposed to

2    be prepared to explain their opinions and the foundation

3    for it so that we have that information in discovery and

4    not just be surprised with it at trial.  So it's not my

5    job to prepare your witness today for what the

6    foundation of his opinion that he gave back in

7    November 2007 is.  He was supposed be prepared with that

8    for the deposition today.

9            MS. EVENSON:  He lays out the foundation in

10   his report.

11           THE WITNESS:  Which is what I wanted to

12   comment upon.  If you look at paragraph Section 26.

13   BY MS. JOHNSON:

14       Q    What page is that on?

15       A    10.  So, in that paragraph, I talk about the

16   expert panel, which I was a member, said that "prison

17   crowding must first be reduced before any meaningful

18   programming can occur," and that's one of my reasons,

19   you know, why I reach my conclusion about overcrowding.

20       Q    What is the relationship --

21       A    I -- could I -- can I continue here?  I just

22   want to -- and then, on paragraph 27, we talk about the

23   reception process, and that they have a 60-day wait, and

24   I note that, and I give my opinion is, that's excessive,

25   and that -- that impedes the delivery of proper medical

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

111

1    screening, mental health screening, and I go through

2    each of these paragraphs.  I thought that's my basis for

3    my opinion, and I'm citing, you know, reports as best I

4    can in that document.  So I'll -- I'll be glad to talk

5    about those paragraphs, but you're asking me, are there

6    other documents and other statistics and stuff like that

7    that are in the other documents?  I'm sure there are

8    that I read and I took into account, but I would have to

9    say this is basically my -- the basis for my opinion.

10   That's it.

11           So if it's not in here, I think you can

12   conclude, you know, I didn't take into account or I

13   didn't think it was that important, but there's other

14   information that I reviewed that kind of builds upon

15   these -- these paragraphs, which are the basis for my

16   opinion.  That's what I understand my -- my report is

17   designed to do, and that's what I tried do there.  So

18   I'm glad to talk about the basis listed in here if you

19   want to.

20       Q    On page 7 of your report, in paragraph 21, you

21   wrote that "there has been no progress by the state in

22   reducing its over-crowding situation for approximately

23   20 years (or more)."  Do you see that?

24       A    Yes, ma'am.

25       Q    Is it your opinion that the delivery of

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

James Austin - Volume I                                    September 19, 2008

                                    121

1          A      Yes.

2          Q      And what I'm trying to understand is, are you

3    trying to, in this statement -- in this section of your

4    report, say that there is a link between lack of access

5    to meaningful medical treatments and excessive delays at

6    the reception center?

7                 MS. EVENSON:  Objection.  The document speaks

8    for itself.

9                 THE WITNESS:  Well, yes, I am saying that.

10   BY MS. JOHNSON:

11         Q      Okay.  So, are you aware of any specific

12   instances of a lack of access to meaningful medical

13   treatment that was due to delay at the reception center?

14         A      I cannot name one, but there are -- I think

15   there was a lot of data again in the Receiver's reports

16   that talk about that, so ...

17         Q      So, the Receiver's reports identify particular

18   instances where lack of access to meaningful medical

19   treatment was due to delay at a reception center?

20         A      Well, when you say particular instances, I

21   guess you're saying, Can you name a case, a person, an

22   inmate?

23         Q      Like I said, I would be happy with numbers,

24   too, if you could come up with a certain number of them.

25         A      Well, I think there are numbers in those

PAULSON
REPORTING & LITIGATION SERVICES, LLC
www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

122

1    reports, so again I'd have to review those reports and

2    show them to you.

3         Q    Those reports being the Receiver's reports?

4         A    Primarily, yes.

5         Q    Okay.

6         A    Probably exclusively.

7         Q    On page 15, paragraph 38.

8         A    Yes.

9         Q    You wrote, "It goes without saying that a

10   dangerous environment is not conducive to treatment."

11        A    Yes.

12        Q    Aren't all prisons, in some sense, a dangerous

13   environment?

14        A    No.

15        Q    No?

16        A    No.

17        Q    What makes a prison a dangerous environment?

18        A    It would be if inmates and staff feel that

19   they are threatened beyond reasonable level one would

20   expect, and, of course, that's going to be a judgment

21   call, but there are many prisons that are very safe, and

22   you don't have those conditions, and there are prisons

23   that are not safe.  Those conditions exist.

24        Q    Are all the prisons in California equally

25   unsafe?

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

123

1        A      No.

2        Q      Which prisons, in your opinion, are the most

3    unsafe?

4        A      I'd have to do a tour of all the prisons and

5    do a comprehensive evaluation of each one.

6        Q      So sitting here today, you can't tell me which

7    prisons in California that the dangerous environment is

8    impairing access to treatment in?

9               MS. EVENSON:   Objection.   Mischaracterizes

10   testimony.

11              THE WITNESS:   I cannot tell you which prisons

12   today in California.   I can tell you at Lancaster, which

13   is one that I visited, is one of those.

14   BY MS. JOHNSON:

15       Q      Okay.   How many specific instances of denial

16   of access to medical or mental health care are you aware

17   of at Lancaster that have been caused by its purportedly

18   dangerous environment?

19       A      I can't tell you that number.

20       Q      On page 15, paragraph 39.   You wrote that, in

21   your opinion, the number of prisoners with medical needs

22   far exceeds the resources that can now be provided by

23   the CDCR" -- I'm sorry.

24              MS. EVENSON:   Where are you?

25              MS. JOHNSON:   Wrong place.

PAULSON
REPORTING & LITIGATION SERVICES, LLC
www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104

James Austin - Volume I                                    September 19, 2008

303

REPORTER'S CERTIFICATION

1

2

3          I, Quyen N. Do, Certified Shorthand Reporter, in

4     and for the State of California, do hereby certify:

5

6          That the foregoing witness was by me duly sworn;

7     that the deposition was then taken before me at the time

8     and place herein set forth; that the testimony and

9     proceedings were reported stenographically by me and

10    later transcribed into typewriting under my direction;

11    that the foregoing is a true record of the testimony and

12    proceedings taken at that time.

13          IN WITNESS WHEREOF, I have subscribed my name

14    this 26th day of September 2008.

15

16

17    /s/ Quyen M. Do

           Quyen N. Do, RPR, CSR No. 12447

18

19

20

21

22

23

24

25

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 415.591.3333
Facsimile: 415.591.3335

44 Montgomery Street
Suite 1100
San Francisco, CA 94104