# EXHIBIT V
# PART 1

**EXHIBIT V**

1  PRISON LAW OFFICE
   DONALD SPECTER, Bar No. 83925
2  STEVEN FAMA, Bar No. 99641
   E. IVAN TRUJILLO, Bar No. 228790
3  SARA NORMAN, Bar No. 189536
   ALISON HARDY, Bar No. 135966
4  REBEKAH EVENSON, Bar No. 207825
   1917 Fifth Street
5  Berkeley, CA  94710
   Telephone:  (510) 280-2621
6

7  KIRKPATRICK & LOCKHART PRESTON
   GATES ELLIS LLP
8  JEFFREY L. BORNSTEIN, Bar No. 99358
   EDWARD P. SANGSTER, Bar No. 121041
9  RAYMOND E. LOUGHREY, Bar No. 194363
   55 Second Street, Suite 1700
10 San Francisco, CA  94105-3493
   Telephone:  (415) 882-8200
11
   THE LEGAL AID SOCIETY –
12 EMPLOYMENT LAW CENTER
   CLAUDIA CENTER, Bar No. 158255
13 600 Harrison Street, Suite 120
   San Francisco, CA  94107
14 Telephone:  (415) 864-8848

   ROSEN, BIEN & GALVAN, LLP
   MICHAEL W. BIEN, Bar No. 96891
   ERNEST GALVAN, Bar No. 196065
   JANE E. KAHN, Bar No. 112239
   AMY WHELAN, Bar No. 215675
   LORI RIFKIN, Bar No. 244081
   LISA ELLS, Bar No. 243657
   MARIA V. MORRIS, Bar No. 223903
   315 Montgomery Street, 10th Floor
   San Francisco, California  94104
   Telephone: (415) 433-6830

   BINGHAM, McCUTCHEN, LLP
   WARREN E. GEORGE, Bar No. 53588
   Three Embarcadero Center
   San Francisco, California  94111
   Telephone: (415) 393-2000

15 Attorneys for Plaintiffs

16            IN THE UNITED STATES DISTRICT COURTS

17          FOR THE EASTERN DISTRICT OF CALIFORNIA

18         AND THE NORTHERN DISTRICT OF CALIFORNIA

       UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

19        PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

20  RALPH COLEMAN, et al.,                  No.:  Civ S 90-0520 LKK-JFM P

21              Plaintiffs,                 **THREE-JUDGE COURT**

22      vs.

23  ARNOLD SCHWARZENEGGER, et al.,

24              Defendants

    MARCIANO PLATA, et al.,                 No. C01-1351 THE

25              Plaintiffs,                 **THREE-JUDGE COURT**

26      vs.

    ARNOLD SCHWARZENEGGER, et al.,          **SUPPLEMENTAL EXPERT REPORT OF**
27                                          **PABLO STEWART, M.D.**
        vs.
28              Defendants

## TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS/ACRONYMS .................................................................iv

I.    INTRODUCTION .................................................................................................... 1

II.   SUMMARY OF MY OPINIONS IN THIS MATTER ............................................. 4

III.  MY OPINIONS IN THIS MATTER ....................................................................... 6

    A.  Opinion 1: Overcrowding Within The CDCR Is The Primary Cause Of The Constitutional Violations Currently Experienced By *Coleman* And *Plata* Class Members ............................................................................................ 6

        1.  Evidence Concerning Overcrowding-Induced Constitutional Violations from My Recent Prison Inspections .......................................... 7

            (a)  Salinas Valley State Prison (SVSP) Tour ..................................... 7

                SVSP Tour Overview ..................................................................... 7

                Long Waiting List for Intermediate Care Facility Beds ................ 8

                Waiting List for Acute Inpatient Beds .......................................... 9

                Problems with Access to MHCB Care at SVSP ........................... 10

                Staffing Shortages at SVSP .......................................................... 13

                Impact of Excessive Lockdowns at SVSP .................................... 13

                Lack of Adequate Treatment Space ............................................... 15

                Deficient Medication Distribution Practices at SVSP .................. 15

            (b)  California Medical Facility (CMF) Tour ...................................... 16

                CMF Tour Overview ..................................................................... 16

                Access to Higher Levels of Care .................................................. 17

                Medication Management Problems ................................................ 20

                Insufficient Office and Treatment Space ...................................... 21

                The Use of Dorm Housing at CMF ............................................... 22

            (c)  Mule Creek State Prison (MCSP) Tour ........................................ 23

                MCSP Tour Overview ................................................................... 23

i

[229848-1]

Lack of Access to Higher Levels of Care,
Including the Housing of Suicidal Inmates
in MHOHUs and Administrative
Segregation Units .........................................................................23

The Significant Use of "Bad Beds" at MCSP ...............................27

Medication Management Problems.................................................29

Problems with MCSP's EOP Program ...........................................30

2.   Updated Information Regarding Overcrowding-Related
Violations at Institutions I Previously Toured............................................30

(a)   Deuel Vocational Institute (DVI) Update.......................................31

(b)   California State Prison - Solano Update.........................................33

3.   Evidence Concerning Systemic, Overcrowding-Induced
Constitutional Violations..................................................................................34

(a)   Systemic Problems with Seriously Delayed
Access to Higher Levels of Care .....................................................35

MHCB and EOP Patients Who Require
Inpatient Care ..................................................................................37

Intermediate Care Facility Patients Who
Require Acute Care ..........................................................................43

(b)   Systemic Problems with the CDCR's Medication
Management System..........................................................................45

(c)   Systemic Problems with Medical Records .....................................50

(d)   The Systemic Use of "Bad Beds" Throughout
the CDCR System..............................................................................51

(e)   The Impact of Overcrowding on Suicide Rates.............................52

4.   Overcrowding is the Primary Cause of the Constitutional
Violations in the CDCR......................................................................................53

(a)   The Persistence of the Constitutional Violations
Present in the CDCR Demonstrates that They
Are Caused by Overcrowding ..........................................................54

(b)   The Coleman Special Master Has Found That
Overcrowding Has Undermined Progress
That Was Being Made In Various Areas.........................................54

ii

(c)     The Percentage of Caseload Inmates in the
        CDCR is Increasing Faster than the
        Overall Population ...................................................................55

(d)     In Many Instances, the Overcrowded
        Conditions Themselves Are the Cause
        of the Unconstitutional Mental Health Care ................................56

B.    Opinion 2:  Other Remedial Efforts, Other than Population
      Reductions, Will Not Succeed In Remedying The
      Underlying Constitutional Violations .................................................56

      1.    Defendants' Current Plans to Fix the System Will
            Not Work ...................................................................................56

      2.    The State Must Make Substantial Reductions in
            the Prisoner Population ..............................................................60

C.    Opinion 3:  The State Can Include the *Coleman* Class in Population
      Reduction Plans without Adversely Affecting Public Safety
      and Should Do So.  Moreover, If the State Enhanced the Services
      Provided to Released Individuals, Public Safety Would Improve. .......................63

IV.   CONCLUSION ..............................................................................................70

[229848-1]

**TABLE OF ABBREVIATIONS/ACRONYMS**

| | |
|---|---|
| 3CMS: | Correctional Clinical Case Manager System |
| ACH: | Acute Care Hospital |
| ADD: | Attention Deficit Disorder |
| ADHD: | Attention Deficit Hyperactivity Disorder |
| ADL: | Activities of Daily Living |
| Ambu bag: | Ambulatory Bag Used for CPR |
| APP: | Acute Psychiatric Program at Vacaville |
| ASH: | Atascadero State Hospital |
| ASP: | Avenal State Prison |
| ASU: | Administrative Segregation Unit |
| BMU: | Behavioral Modification Unit |
| BPT: | Board of Prison Terms |
| C-file: | Central File |
| C&PR: | Classification and Parole Representative |
| CAL: | Calipatria State Prison |
| CAP: | Corrective Action Plan |
| CC: | Correctional Counselor |
| CCAT: | Coordinated Clinical Assessment Team |
| CCC: | California Correctional Center |
| CCI: | California Correctional Institution |
| CCM: | Clinical Case Manager |
| CCPOA: | California Correctional Peace Officers Association |

iv

| | |
|---|---|
| CCWF: | Central California Women's Facility |
| CDC: | California Department of Corrections |
| CDCR: | California Department of Corrections and Rehabilitation |
| CEN: | Centinela State Prison |
| CHCFs: | California Health Care Facilities |
| CIM: | California Institute for Men |
| CIW: | California Institute for Women |
| CM: | Case Manager |
| CMC: | California Men's Colony |
| CMF: | California Medical Facility |
| CMO: | Chief Medical Officer |
| CO: | Correctional Officer |
| COR: | California State Prison/Corcoran |
| CPR: | Cardiopulmonary Resuscitation |
| CRC: | California Rehabilitation Center |
| CSATF: | California Substance Abuse Treatment Facility |
| CSH: | Coalinga State Hospital |
| CSP: | California State Prison |
| CSP/Corcoran: | California State Prison/Corcoran |
| CSP/LAC: | California State Prison/Los Angeles County |
| CSP/Sac: | California State Prison/Sacramento |
| CSP/Solano: | California State Prison/Solano |
| CTC: | Correctional Treatment Center |

[229848-1]

| | |
|---|---|
| CTF: | California Training Facility/Soledad |
| CTQ: | Confined To Quarters |
| CVSP: | Chuckawalla Valley State Prison |
| DAI: | Division of Adult Institutions |
| DCHCS: | Division of Correctional Health Care Services |
| DDP: | Developmental Disabilities Program |
| DHS: | Department of Human Services |
| DMH: | Department of Mental Health |
| DNR: | Do Not Resuscitate |
| DOF: | Director of Finance |
| DON: | Director of Nursing |
| DOT: | Directly Observed Therapy |
| DRC: | Death Review Coordinator |
| DRMC: | Delano Regional Medical Center |
| DSM: | Diagnostic and Statistical Manual |
| DTP: | Day Treatment Program |
| DVI: | Deuel Vocational Institute |
| EOP: | Enhanced Outpatient Program |
| EPPD: | Earliest Possible Parole Date |
| EPRD: | Earliest Possible Release Date |
| ERDR: | Emergency Response and Death Review Committee |
| ERRC: | Emergency Response Review Committee |
| FIT: | Focus Improvement Team |

[229848-1]

| | |
|---|---|
| Folsom: | Folsom State Prison |
| FTE: | Full-Time Equivalent |
| GACH: | General Acute Care Hospital |
| GAF: | Global Assessment of Functioning |
| GP: | General Population |
| HCCUP: | Health Care Cost and Utilization Program |
| HCM: | Health Care Manager |
| HCPU: | Health Care Placement Unit |
| HCQMC: | Health Care Quality Management Committee |
| HDSP: | High Desert State Prison |
| HQ: | Headquarters |
| HS: | *Hora Somni*/Hour of Sleep |
| ICC: | Institutional Classification Committee |
| ICF: | Intermediate Care Facility |
| ICU: | Intensive Care Unit |
| IDTT: | Interdisciplinary Treatment Team |
| IEX: | Indecent Exposure |
| IMHIS: | Inmate Mental Health Information System |
| INS: | Immigration and Naturalization Service |
| IP: | Inmate Profile |
| I/P: | Inmate/Patient |
| ISP: | Ironwood State Prison |
| ISU: | Investigative Services Unit |

[229848-1]

| | |
|---|---|
| KVSP: | Kern Valley State Prison |
| LCSW: | Licensed Clinical Social Worker |
| LOC: | Level of Care |
| LOP: | Local Operating Procedure |
| LOU: | Locked Observation Unit |
| LPN: | Licensed Practical Nurse |
| LPT: | Licensed Psychiatric Technician |
| LSW: | Limited Suicide Watch |
| LVN: | Licensed Vocational Nurse |
| MAR: | Medication Administration Record |
| MCSP: | Mule Creek State Prison |
| MDD: | Major Depressive Disorder |
| MDO: | Mentally Disordered Offender |
| MH-4: | Mental Health Assessment |
| MHCB: | Mental Health Crisis Bed |
| MHOHU: | Mental Health Outpatient Housing Unit |
| MHSDS: | Mental Health Services Delivery System |
| MHTS: | Mental Health Tracking System |
| MOD: | Medical Officer of the Day |
| MOU: | Memorandum of Understanding |
| MSF: | Minimal Support Facility |
| MTA: | Medical Technical Assistant |
| NCF: | Normal Cognitive Functioning |

[229848-1]

NKSP:            North Kern State Prison

NOS:             Not Otherwise Specified

OHU:             Outpatient Housing Unit

OIA:             Office of Investigative Affairs

OP:              Operating Procedure

OT:              Office Tech

PBSP:            Pelican Bay State Prison

PC:              Primary Clinician

PHU:             Protective Housing Unit

PIA:             Prison Industry Authority

POC:             Parole Outpatient Clinic *or* Psychiatrist on Call

POD:             Psychiatrist on Duty *or* Psychiatrist of the Day

PSH:             Patton State Hospital

PSU:             Psychiatric Services Unit

PSW:             Psychiatric Social Worker

PT:              Psychiatric Technician

PTSD:            Post Traumatic Stress Disorder

PVSP:            Pleasant Valley State Prison

QIP:             Quality Improvement Plan

QIT:             Quality Improvement Team

QMAT:            Quality Management Assessment Team

QMT:             Quality Management Team

R&R:             Receiving & Release

ix

| | |
|---|---|
| RC: | Reception Center |
| RJD: | Richard J. Donovan Correctional Facility |
| RN: | Registered Nurse |
| RT: | Recreation Therapist |
| RVR: | Rule Violation Report |
| SAC: | California State Prison/Sacramento |
| SCC: | Sierra Conservation Center |
| SHU: | Security Housing Unit |
| SI: | Suicidal Ideation |
| SMY: | Small Management Yard |
| SNF: | Skilled Nursing Facility |
| SNY: | Sensitive Needs Yard |
| SPC: | Suicide Prevention Committee |
| SPR-FIT: | Suicide Prevention and Response Focused Improvement Team |
| SPU: | Special Processing Unit |
| SQ: | California State Prison/San Quentin |
| SRA: | Suicide Risk Assessment |
| SRAC: | Suicide Risk Assessment Checklist |
| SRC: | Suicide Review Committee |
| SRN: | Senior Registered Nurse |
| SSI: | Supplemental Security Income |
| SVP: | Sexually Violent Predator |
| SVPP: | Salinas Valley Psychiatric Program |

x

SVSP:          Salinas Valley State Prison

TCMP:          Transitional Case Management Program

THU:           Transitional Housing Unit

TLU:           Transitional Living Unit

TPU:           Transitional Program Unit *or* Temporary Protective Unit

TTA:           Triage and Treatment Area

UCC:           Unit Classification Committee

UCSF:          University of California at San Francisco

UHR:           Unit Health Records

UNA:           Unidentified Needs Assessment

VSPW:          Valley State Prison for Women

VPP:           Vacaville Psychiatric Program

WSP:           Wasco State Prison

[229848-1]

## SUPPLEMENTAL EXPERT REPORT OF PABLO STEWART, M.D.

### I.    INTRODUCTION

1.    I am a physician licensed to practice in California, with a specialty in clinical and forensic psychiatry. A true and correct copy of my current curriculum vitae is attached hereto as **Appendix A**.

2.    I previously completed a report in this matter on November 9, 2007, which I will refer to here as my "11/9/07 Report." My previous report sets forth my full academic and professional career, including my extensive work as a consultant and expert for jail and prison facilities in California and in other states (including Michigan, Georgia, and New Mexico) as well as the various professional positions I have held. 11/9/07 Report at pp. 1-9.

3.    My 11/9/07 Report also details my presentations before mental health professionals, prosecuting and defense attorneys, probation officers, and judges, and my publications in professional and peer-reviewed journals over the past several years. Since submitting my prior report, I have not authored any additional publications. I have testified as an expert in court or in a deposition in the following matters since November 9, 2007: *Coleman v. Schwarzenegger*; *Plata v. Schwarzenegger; People v. Mathew Cunningham* (Maricopa County, Arizona); *People v. Alfredo Prieto* (Fairfax County, Virginia); *People v. Edward Gutierrez* (Santa Clara County, California), and; *Fred Graves, et al. v. Joseph Arpaio, et al.* (Phoenix, Arizona).

4.    I currently work as a private psychiatric consultant and as a Clinical Professor in the Department of Psychiatry at the University of California, San Francisco, School of Medicine. I am being compensated as an expert in this case as follows: $250 per hour for routine office work, writing, document review, and other similar tasks; $3,000 per day for tours and full day meetings or projects; $400 per hour for time testifying in depositions and at trial, with a 4 hour minimum for that work.

1

5.    I have been retained by plaintiffs' attorneys in the *Coleman* and *Plata* cases as an expert on prison medical care and prison psychiatry and the impact of overcrowding on prisoners' medical and mental health, including how prison overcrowding detrimentally affects prisoners' mental health and interferes with the ability of prison officials to meet the existing and increased medical and mental health needs of the prisoners in an overcrowded system. As stated in my previous report, I have also been asked to render my opinion as to whether overcrowding within the California Department of Corrections and Rehabilitation (CDCR) is the primary cause of the current unconstitutional conditions experienced by members of the *Coleman* and *Plata* classes. I have also been asked to address whether other relief – that does not address overcrowding – will remedy the ongoing constitutional violations in a timely and effective manner. Finally, I have also been asked to offer an opinion concerning whether and to what extent public safety would be affected by a prisoner release order that included prisoners with mental illnesses.

6.    I submit this supplemental report in order to update and expand upon my opinions on these matters and to present my findings from three recent prison inspections.

7.    My opinions are based on my knowledge of the psychiatric and social science literature regarding the effects of overcrowded jail and prison conditions on the mental health of inmates and on my personal experiences assessing and treating individual inmates within the context of overcrowded correctional systems as set forth in my prior report and my curriculum vitae.

8.    When I submitted my previous report, the Receiver and the Special Master had already submitted several reports to the Courts regarding overcrowding and the Governor had declared a state of emergency in California due to the prison overcrowding crisis. It remains my opinion that the serious problems described in those reports continue to plague the California medical and mental health systems.

9.    In the months since I completed my prior report for this case, the *Coleman* Special Master issued a final 19th monitoring report for tours conducted between March and

2

early June of 2007 and a draft 20th round monitoring report for the monitoring period of September 2007 through February of 2008. The *Plata* Receiver also issued his 7th and 8th quarterly reports regarding the status of the healthcare system in the prisons, dated March 14, 2008 and June 17, 2008 respectively. I reviewed these documents, and others, in order to update my opinions in this matter. A complete list of the materials I have reviewed, including the updated materials I reviewed for this supplemental report, is attached hereto as **Appendix B**.

10.     My opinions are also based on the site inspections I completed back in October and November of 2007 and, more recently, in late July and early August of 2008. Specifically, I toured the following institutions on the following dates: Deuel Vocational Institute (DVI) (October 29, 2007); California State Prison-Solano (Solano) (October 31, 2007); Salinas Valley State Prison (SVSP) (November 1, 2007 and July 29, 2008); California Medical Facility (CMF) (July 30, 2008), and; Mule Creek State Prison (MCSP) (August 1, 2008).

11.     During each of the site inspections I conducted, staff provided me with excellent access to information, clinicians, housing areas, treatment spaces and to prisoners and their medical and mental health records. I also was accompanied by a photographer on some of my recent tours and was able to have photographs taken when I or the accompanying attorneys so requested. Custody and clinical staff, including both medical and mental health clinicians, made themselves available throughout the day and answered questions about existing conditions, problems, plans for the future and challenges. The institutions also provided requested documents for each tour, including information such as logs of patients transferred to (or awaiting transfer to) higher levels of care and printouts showing *Coleman* class members by housing unit. Various pictures from my tours are attached as follows:

| | |
|---|---|
| Appendix C | Mesh, holding cages in the Salinas Valley State Prison Correctional Treatment Center (CTC) |
| Appendix D | Mental Health Outpatient Housing Unit Cells at Mule Creek State Prison |
| Appendix E | Gym Dorm on B-Yard at Mule Creek State Prison |

3

Appendix F        Gym Dorm on A-Yard at Mule Creek State Prison

## II.    SUMMARY OF MY OPINIONS IN THIS MATTER

12.    As set forth in detail below, it is my opinion that there has been no material change in the conditions of severe overcrowding in the California prison system in the past eight months since I issued my prior report. In particular, it remains my opinion that overcrowding is the primary cause of the constitutional violations currently experienced by *Coleman* and *Plata* class members, that the State must reduce the population (including *Coleman* class members) if it has any hope of addressing those violations and that such reductions can be done safely.

13.    Although my report details several deficiencies in the medical and mental health care systems that I believe are the direct result of overcrowding, the following are the systemic problems that I find most disturbing and that, in my opinion, have the most detrimental effects on the *Coleman* and *Plata* classes:

- The *Coleman* class, as a whole, is more acutely ill due to the extreme shortage of beds at every level of care. This is particularly true for class members in need of acute hospitalization, but the shortages affect the entire Mental Health Services Delivery System (MHSDS). By denying prompt access to inpatient care, the State is allowing patients to become more acutely ill than they otherwise would. By the time those patients reach an inpatient bed, they will generally require more resources for a longer period of time to become well than they otherwise may have needed. This further backlogs the system, thereby exacerbating the shortage of beds and making it difficult to assess the true demand for services.

- The medication management system is overwhelmed and the State is therefore unable to adequately monitor both the efficacy and the side effects of prescribed medications. I saw this problem time and again on my tours. Because of staff shortages, frequent lock-downs, overwhelmed pharmacies and medical records offices, and the vast number of patients on medications, staff spend only a few seconds with each patient

4

when they distribute medications. Too many clinical contacts occur at cell front, in makeshift "offices" or in the open with no confidentiality, without access to medical records and by clinicians with little or no ongoing relationship with their patient. Problems such as side effects, refusals and unrelieved symptoms are regularly not identified, reported or followed up on with psychiatric appointments or blood testing. Continuity of care is hampered by staff turnover and major reliance on contract and registry clinicians. The ability to appropriately monitor both the efficacy and the effects of medication is a key component of basic psychiatric and medical care.

- <u>Until overcrowding is reduced, the State will be unable to hire and retain adequate, qualified and permanent staff.</u> As detailed below and as explained in the *Coleman* Special Master and the *Plata* Receiver's reports to the Courts, many medical and mental health staff face significant challenges in the current overcrowded system, including inadequate office and treatment space, insufficient inpatient beds, and large caseloads. These are difficult working conditions that, in my opinion, hamper the State's ability to hire and retain permanent and qualified staff.

- <u>The overcrowded conditions themselves significantly burden the medical and mental healthcare systems.</u> Because of population pressures, inmates are frequently housed in places that either exacerbate or, in some instances, might trigger mental health symptoms, including crowded dorms, administrative segregation units, holding cages, and small cells that were built for one person, but currently hold two. These conditions put added pressure on the already over-burdened medical and mental health systems.

- <u>The overburdened system results in a suicide rate that is nearly twice the national average.</u> The *Coleman* Special Master found in his analysis of 2006 suicides that more than 70 percent were "foreseeable and/or preventable." Joint Pls' Trial Ex. 58 at p. 2. In my opinion, the high suicide rate is a direct result of overcrowding in that the system lacks beds at every level of care, is plagued with poor medication management practices, and has severe shortages of adequate and permanent staff.

5

### III.    MY OPINIONS IN THIS MATTER

   A.    **Opinion 1:** Overcrowding Within The CDCR Is The Primary Cause Of The Constitutional Violations Currently Experienced By *Coleman* And *Plata* Class Members.

   14.    My previous report detailed the characteristics that are typically seen in overcrowded correctional settings, including shortages of medical, mental health and correctional staff, insufficient treatment space in which to provide therapeutic activities and contacts, dangerous and chaotic living conditions, increased idleness among prisoners due to decreased programming, increased population pressures on reception centers and locked areas such as administrative segregation units and delayed access to higher levels of care. All of these characteristics, particularly when they are permitted to go on for long periods of time, significantly increase the burden placed on mental health and medical systems.[1] I have personally witnessed these conditions in California's prisons and am also aware that they are well-documented by others with intimate knowledge of California's system, including the Governor, the federal Receiver who oversees the medical care system and the Special Master in the *Coleman* case.

   15.    The facilities and conditions I have observed in the California Prison system represent the most overcrowded conditions I have seen. In this report, I first set forth the findings from my late July and early August 2008 tours at SVSP, CMF and MCSP. I have also provided updated information about facilities I did not return to during my recent round of inspections. Finally, I discuss my overall opinions in this case based on my prior report, my

---

[1]    *See* P. Paulus, G. McCain, V. Cox, "The Relationship Between Illness Complaints and Degree of Crowding in a Prison Environment," *Environment and Behavior* 8 (1976) at 283, 288; P. Paulus, G. McCain, V. Cox, "Death Rates, Psychiatric Commitments, Blood Pressure, and Perceived Crowding as a Function of Institutional Crowding," *Environmental Psychology and Nonverbal Behavior* 3 (1978) at 107, 115; V. Cox, P. Paulus, G. McCain, "Prison Crowding Research," *American Psychologist* 39 (1984) at 1148, 1159; E. Sieh, "Prison Overcrowding: The Case of New Jersey," *Federal Probation* 53 (1989) at 41; B Walker and T. Gordon, "Health Risks and High Density Confinement in Jail and Prisons," *Federal Probation* 44 (1980) at 53. *See also* Joint Pls' Trial Ex. 27 (*Plata* Receiver's June 11, 2007 Supplemental Report on Overcrowding) at 3 (discussing increasing risk of "communicable disease outbreaks" in overcrowded CDCR units).

[229848-1]

updated tours of these facilities and my review of additional materials and documents identified in Appendix B.

### 1. Evidence Concerning Overcrowding-Induced Constitutional Violations from My Recent Prison Inspections

#### (a) Salinas Valley State Prison (SVSP) Tour

#### SVSP Tour Overview

16.     I toured Salinas Valley State Prison (SVSP) on November 1, 2007 and again on July 29, 2008. SVSP is a Level IV high security institution located south of the city of Salinas in the Salinas Valley. According to the most recent CDCR weekly population report, as of midnight on August 6, 2008, SVSP had a population of 4,085 and a design capacity of 2,388, which means SVSP was operating at 171.1 percent of capacity. Joint Pls' Trial Ex. 65 at p. 2. My previous opinions and observations about SVSP were set forth on pages 51-63 of my November 9, 2007 Report.

17.     Similar to my last tour at SVSP, I observed significant overcrowding-related problems at SVSP, including serious problems with access to higher levels of care, poor medication distribution and compliance, staffing shortages, and inadequate treatment and office space. 11/9/07 Report at pp. 51-63. According to the data provided by staff during the tour, there were 1,537 total *Coleman* class members housed at SVSP, with 1,152 at the 3CMS level of care and 232 at the EOP level of care as of July 28, 2008. Coleman Pls' Trial Ex. 136. This means that SVSP was operating at 115 percent capacity of its 3CMS program and 121 percent capacity of its EOP program. Coleman Pls' Trial Ex. 57 at p. 3 (showing SVSP's capacities of 999 for 3CMS patients and 192 for its EOP program). The data provided during the tour also showed that between April 29, 2008 and July 28, 2008, SVSP admitted 50 patients into mental health crisis beds and housed 79 patients in various "overflow" placements because crisis beds were unavailable. Coleman Pls' Trial Ex. 136.

[229848-1]