# EXHIBIT CC
# PART 1

**EXHIBIT CC**

1  PRISON LAW OFFICE                    ROSEN, BIEN & GALVAN, LLP
   DONALD SPECTER, Bar No. 83925        MICHAEL W. BIEN, Bar No. 96891
2  STEVEN FAMA, Bar No. 99641           JANE E. KAHN, Bar No. 112239
   E. IVAN TRUJILLO, Bar No. 228790     AMY WHELAN, Bar No. 215675
3  SARA NORMAN, Bar No. 189536          LORI RIFKIN, Bar No. 244081
   ALISON HARDY, Bar No. 135966         LISA ELLS, Bar No. 243657
4  REBEKAH EVENSON, Bar No. 207825      MARIA V. MORRIS, Bar No. 223903
   1917 Fifth Street                    315 Montgomery Street, 10th Floor
5  Berkeley, CA 94710                   San Francisco, California 94104
   Telephone: (510) 280-2621           Telephone: (415) 433-6830
6
   KIRKPATRICK & LOCKHART PRESTON       BINGHAM, McCUTCHEN, LLP
7  GATES ELLIS LLP                      WARREN E. GEORGE, Bar No. 53588
   JEFFREY L. BORNSTEIN, Bar No. 99358  Three Embarcadero Center
8  EDWARD P. SANGSTER, Bar No. 121041   San Francisco, California 94111
   RAYMOND E. LOUGHREY, Bar No. 194363  Telephone: (415) 393-2000
9  55 Second Street, Suite 1700
   San Francisco, CA 94105-3493
10 Telephone: (415) 882-8200

11 THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
12 CLAUDIA CENTER, Bar No. 158255
   600 Harrison Street, Suite 120
13 San Francisco, CA 94107
   Telephone: (415) 864-8848
14
   Attorneys for Plaintiffs

15          IN THE UNITED STATES DISTRICT COURTS
16        FOR THE EASTERN DISTRICT OF CALIFORNIA
           AND THE NORTHERN DISTRICT OF CALIFORNIA
17    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
18      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

19 RALPH COLEMAN, et al.,            )   No.: Civ S 90-0520 LKK-JFM P
20         Plaintiffs,               )   **THREE-JUDGE COURT**
                                     )
21    vs.                            )
                                     )
22 ARNOLD SCHWARZENEGGER, et al.,    )
                                     )
23         Defendants                )
                                     )
24 MARCIANO PLATA, et al.,           )   No. C01-1351 TEH
                                     )
25         Plaintiffs,               )   **THREE-JUDGE COURT**
                                     )
26    vs.                            )
                                     )
27 ARNOLD SCHWARZENEGGER, et al.,    )   **EXPERT REPORT OF PROFESSOR**
                                     )   **CRAIG HANEY**
28    vs.    Defendants              )

(ix)      Administrative Segregation Units..........................................67

b.    Valley State Prison for Women (VSPW)........................................75

(i)       VSPW Overview.......................................................................75

(ii)      Treatment and Office Space and Staffing.............................76

(iii)     Overcrowding in Housing Units, Dayrooms and
          Gyms ........................................................................................78

(iv)      Security Housing and Administrative Segregation
          Units ........................................................................................80

c.    Salinas Valley State Prison (SVSP) ..............................................83

(i)       SVSP Overview ........................................................................83

(ii)      MHCB Access............................................................................86

(iii)     DMH Level IV ICF Beds..........................................................87

(iv)      Impact of Lockdowns on EOP Programs..............................89

(v)       Impact of Lockdowns on Facility C.......................................91

(vi)      Facility C-Lockdown Suicides.................................................93

(vii)     Behavior Modification Unit.....................................................95

(viii)    Custody and Clinical Staffing Problems in ASUs ...............97

(ix)      Impact of MHCB/DMH Shortages ......................................100

d.    Mule Creek State Prison (MCSP) ................................................101

(i)       MCSP Overview .....................................................................101

(ii)      Inappropriate Treatment Space ...........................................102

(iii)     Staff Concerns Related to Overcrowding ...........................105

(iv)      Overcrowding and Housing Units........................................106

(v)       Extreme Adaptations to Overcrowding ..............................108

e.    California Substance Abuse Treatment Facility (SATF)..............113

(i)       SATF Overview ......................................................................113

(ii)      Shortages of Space for Offices and Treatment ..................115

(iii)     Lack of Beds at Appropriate Level of Care ........................117

f.    California Correctional Institute (CCI) ........................................131

EXPERT REPORT OF PROFESSOR CRAIG HANEY. NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[230542-1]

(i)     CCI Overview ..................................................................131

(ii)    Insufficient Clinical and Custody Staff..............................132

(iii)   Use of Substandard, Non-Traditional Housing..................133

(iv)    Severe Lack of Clinical Office and Treatment Space........135

(v)     Inability to Provide Appropriate Levels of Care................138

(vi)    Lack of Adequate Programming in ASU and SHU ...........143

g.   North Kern State Prison (NKSP) ...............................................146

(i)     NKSP Overview..................................................................146

(ii)    Shortages of Space for Offices and Treatment .................146

(iii)   Understaffing .....................................................................151

(iv)    Reception and Receiving Problems ...................................153

(v)     Lack of Programming .........................................................155

(vi)    Overcrowding in Housing Units .........................................159

(vii)   Lack of Beds at Appropriate Level of Care and
        Delays in Transfers ...........................................................159

h.   Wasco State Prison (WSP).........................................................162

(i)     WSP Overview....................................................................162

(ii)    Shortages of Space for Offices and Treatment .................163

(iii)   Overcrowding in Housing Units .........................................165

(iv)    Lack of Beds at Appropriate Level of Care and
        Transfer Delays ................................................................165

(v)     Reception Center Problems................................................170

(vi)    Profoundly Mentally Ill Prisoners Receiving Little or
        No Treatment ....................................................................172

3.   General Observations About the Impact of Overcrowding in These
     Facilities .........................................................................................177

a.   Backlogs Due to Overcrowding ...................................................177

b.   Staff Shortages ............................................................................179

c.   Space Shortages ..........................................................................180

d.   Lack of Meaningful Activity and Treatment .................................181

EXPERT REPORT OF PROFESSOR CRAIG HANEY, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[230542-1]

e.      Use of Holding Cages ................................................................. 183

f.      Overcrowded Housing Units ....................................................... 184

g.      Lockdowns ................................................................................. 185

h.      Impact of Overcrowding Effects on Quality of Mental
        Health Care and Suicide Prevention ........................................... 186

i.      Disproportionate Impact of Overcrowding on Vulnerable
        Parole Population ....................................................................... 189

j.      Perniciousness of Overcrowding Effects ..................................... 191

D.  The Only Remedy to the Continuing Constitutional Violations That Are
    Primarily Caused by Overcrowding is to Reduce the Population of the
    CDCR ........................................................................................... 192

IV.  CONTINUING CONSTITUTIONAL VIOLATIONS THAT ARE PRIMARILY
     CAUSED BY OVERCROWDING SHOULD BE REMEDIED BY OVERALL
     POPULATION REDUCTIONS TO BETWEEN 100-145% OF CDCR'S
     DESIGN CAPACITY ......................................................................... 200

V.   CONCLUSION ................................................................................. 207

EXPERT REPORT OF PROFESSOR CRAIG HANEY, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[230542-1]

# TABLE OF ABBREVIATIONS/ACRONYMS

| | |
|---|---|
| 3CMS/CCCMS: | Correctional Clinical Case Manager System |
| ACH: | Acute Care Hospital |
| ADD: | Attention Deficit Disorder |
| ADHD: | Attention Deficit Hyperactivity Disorder |
| ADL: | Activities of Daily Living |
| AED: | Automatic Electronic Defibrillator |
| Ambu bag: | Ambulatory Bag Used for CPR |
| APP: | Acute Psychiatric Program at Vacaville |
| ASH: | Atascadero State Hospital |
| ASMHS: | Administrative Segregation Mental Health Services |
| ASP: | Avenal State Prison |
| ASU: | Administrative Segregation Unit |
| BLS: | Basic Life Support |
| BMU: | Behavioral Modification Unit |
| BPT: | Board of Prison Terms |
| C-file: | Central File |
| C & PP: | Clinical Policy and Programs |
| C&PR: | Classification and Parole Representative |
| CAL: | Calipatria State Prison |
| CAP: | Corrective Action Plan |
| CAT II: | Category II |

CHCFs:            California Health Care Facilities

CIM:              California Institute for Men

CIW:              California Institute for Women

CM:               Case Manager

CMC:              California Men's Colony

CMF:              California Medical Facility

CMO:              Chief Medical Officer

CO:               Correctional Officer

COR:              California State Prison/Corcoran

CPR:              Cardiopulmonary Resuscitation

CRC:              California Rehabilitation Center

CSATF:            California Substance Abuse Treatment Facility

CSH:              Coalinga State Hospital

CSP:              California State Prison

CSP/Corcoran:     California State Prison/Corcoran

CSP/LAC:          California State Prison/Los Angeles County

CSP/Sac:          California State Prison/Sacramento

CSP/Solano:       California State Prison/Solano

CTC:              Correctional Treatment Center

CTF:              California Training Facility/Soledad

CTQ:              Confined To Quarters

CVSP:             Chuckawalla Valley State Prison

DAI:              Division of Adult Institutions

DCHCS:            Division of Correctional Health Care Services

DDP:              Developmental Disabilities Program

DHS:              Department of Human Services

DMH:              Department of Mental Health

DNR:              Do Not Resuscitate

-vi-

[230542-1]

| DOF: | Director of Finance |
| DON: | Director of Nursing |
| DOT: | Directly Observed Therapy |
| DRC: | Death Review Coordinator |
| DRMC: | Delano Regional Medical Center |
| DSM: | Diagnostic and Statistical Manual |
| DTP: | Day Treatment Program |
| DVI: | Deuel Vocational Institute |
| EOP: | Enhanced Outpatient Program |
| EPPD: | Earliest Possible Parole Date |
| EPRD: | Earliest Possible Release Date |
| ERDR: | Emergency Response and Death Review Committee |
| ERRC: | Emergency Response Review Committee |
| FIT: | Focus Improvement Team |
| Folsom: | Folsom State Prison |
| FTE: | Full-Time Equivalent |
| GACH: | General Acute Care Hospital |
| GAF: | Global Assessment of Functioning |
| GP: | General Population |
| HCCUP: | Health Care Cost and Utilization Program |
| HCM: | Health Care Manager |
| HCPU: | Health Care Placement Unit |
| HCQMC: | Health Care Quality Management Committee |
| HDSP: | High Desert State Prison |
| HQ: | Headquarters |
| HS: | *Hora Somni*/Hour of Sleep |
| ICC: | Institutional Classification Committee |
| ICF: | Intermediate Care Facility |

-vii-

[230542-1]

| | |
|---|---|
| ICU: | Intensive Care Unit |
| IDTT: | Interdisciplinary Treatment Team |
| IEX: | Indecent Exposure |
| IMHIS: | Inmate Mental Health Information System |
| INS: | Immigration and Naturalization Service |
| IP: | Inmate Profile |
| I/P: | Inmate/Patient |
| ISP: | Ironwood State Prison |
| ISU: | Investigative Services Unit |
| KVSP: | Kern Valley State Prison |
| LCSW: | Licensed Clinical Social Worker |
| LOC: | Level of Care |
| LOP: | Local Operating Procedure |
| LOU: | Locked Observation Unit |
| LPN: | Licensed Practical Nurse |
| LPT: | Licensed Psychiatric Technician |
| LSW: | Limited Suicide Watch |
| LVN: | Licensed Vocational Nurse |
| MAR: | Medication Administration Record |
| MCSP: | Mule Creek State Prison |
| MDD: | Major Depressive Disorder |
| MDO: | Mentally Disordered Offender |
| MH-4: | Mental Health Assessment |
| MHCB: | Mental Health Crisis Bed |
| MHOHU: | Mental Health Outpatient Housing Unit |
| MHSDS: | Mental Health Services Delivery System |
| MHTS: | Mental Health Tracking System |

[230542-1]

| | |
|---|---|
| MOD: | Medical Officer of the Day |
| MOU: | Memorandum of Understanding |
| MSF: | Minimal Support Facility |
| MTA: | Medical Technical Assistant |
| NCF: | Normal Cognitive Functioning |
| NKSP: | North Kern State Prison |
| NOS: | Not Otherwise Specified |
| OHU: | Outpatient Housing Unit |
| OIA: | Office of Investigative Affairs |
| OP: | Operating Procedure |
| OT: | Office Tech |
| PBSP: | Pelican Bay State Prison |
| PC: | Primary Clinician |
| PHU: | Protective Housing Unit |
| PIA: | Prison Industry Authority |
| POC: | Parole Outpatient Clinic *or* Psychiatrist on Call |
| POD: | Psychiatrist on Duty *or* Psychiatrist of the Day |
| PSH: | Patton State Hospital |
| PSU: | Psychiatric Services Unit |
| PSW: | Psychiatric Social Worker |
| PT: | Psychiatric Technician |
| PTSD: | Post Traumatic Stress Disorder |
| PVSP: | Pleasant Valley State Prison |
| QIP: | Quality Improvement Plan |
| QIT: | Quality Improvement Team |
| QMAT: | Quality Management Assessment Team |
| QMT: | Quality Management Team |
| R&R: | Receiving & Release |

EXPERT REPORT OF PROFESSOR CRAIG HANEY, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[230542-1]

*j*

| | |
|---|---|
| RC: | Reception Center |
| RJD: | Richard J. Donovan Correctional Facility |
| RN: | Registered Nurse |
| RT: | Recreation Therapist |
| RVR: | Rule Violation Report |
| SAC: | California State Prison/Sacramento |
| SCC: | Sierra Conservation Center |
| SHU: | Security Housing Unit |
| SI: | Suicidal Ideation |
| SMY: | Small Management Yard |
| SNF: | Skilled Nursing Facility |
| SNY: | Sensitive Needs Yard |
| SPC: | Suicide Prevention Committee |
| SPR-FIT: | Suicide Prevention and Response Focused Improvement Team |
| SPU: | Special Processing Unit |
| SQ: | California State Prison/San Quentin |
| SRA: | Suicide Risk Assessment |
| SRAC: | Suicide Risk Assessment Checklist |
| SRC: | Suicide Review Committee |
| SRN: | Senior Registered Nurse |
| SSI: | Supplemental Security Income |
| SVP: | Sexually Violent Predator |
| SVPP: | Salinas Valley Psychiatric Program |
| SVSP: | Salinas Valley State Prison |
| TCMP: | Transitional Case Management Program |
| THU: | Transitional Housing Unit |
| TLU: | Transitional Living Unit |

| | |
|---|---|
| TPU: | Transitional Program Unit *or* Temporary Protective Unit |
| TTA: | Triage and Treatment Area |
| UCC: | Unit Classification Committee |
| UCSF: | University of California at San Francisco |
| UHR: | Unit Health Records |
| UNA: | Unidentified Needs Assessment |
| VSPW: | Valley State Prison for Women |
| VPP: | Vacaville Psychiatric Program |
| WSP: | Wasco State Prison |

[230842-1]

EXPERT REPORT OF PROFESSOR CRAIG HANEY, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

## I.    INTRODUCTION

1.    I am a Professor of Psychology and former Chair of the Department of Psychology at the University of California at Santa Cruz. I have been teaching graduate and undergraduate courses in social psychology, research methodology, psychology and law, forensic psychology, and institutional analysis at the University of California for 30 years, and previously served as the Director of the Graduate Program in Psychology, Chair of the Legal Studies Program, and Chair of the Department of Sociology. I received a Ph.D. in Social Psychology from Stanford University and a J.D. degree from the Stanford Law School. I have been the recipient of a number of scholarship, fellowship, and other academic awards and have published approximately one hundred scholarly articles and book chapters on topics in law and psychology, including encyclopedia and handbook chapters on conditions of confinement and the psychological effects of incarceration. My book on the psychological consequences of imprisonment, Reforming Punishment: Psychological Limits to the Pains of Imprisonment,[1] was published by the American Psychological Association in 2006. (My curriculum vitae is attached to this Report as "Appendix A.")

2.    For approximately 35 years, I have been studying the psychological effects of living and working in institutional environments. In the course of that work, I have conducted what is perhaps the only laboratory experiment ever done on the acute psychological effects of prison-like environments.[2] This research, which has come to be known as the "Stanford Prison

---

[1]    Craig Haney, *Reforming Punishment: Psychological Limits to the Pains of Imprisonment.* Washington, DC: APA Books (2006).

[2]    This study was originally published as Haney, C., Banks, C., and Zimbardo, P., Interpersonal Dynamics in a Simulated Prison, 1 *International Journal of Criminology and Penology* 69 (1973), and has been reprinted in numerous books in psychology and law and translated into several languages. For example: Steffensmeier, D., and Terry R. (Eds.) *Examining Deviance Experimentally.* New York: Alfred Publishing, 1975; Golden, P. (Ed.) *The Research Experience.* Itasca, Ill.: Peacock, 1976; Leger, R. (Ed.) *The Sociology of Corrections.* New York: John Wiley, 1977; *A kiserleti tarsadalom-lelektan foarma.* Budapest, Hungary: Gondolat Konyvkiado, 1977; Johnston, N., and Savitz, L. *Justice and Corrections.* New York: John Wiley, 1978; *Research Methods in Education and Social*

(continued . . .)

Experiment," is regarded as a classic social psychological study of the effects of institutional environments.[3] For the 35 years since that study was completed, I have continued to study and publish scholarly articles on the psychology of imprisonment. That research has included conducting numerous interviews with correctional officials, officers, and prisoners to assess the nature and consequences of living and working in correctional settings. In addition, I have statistically analyzed aggregate correctional data to examine the effects of overcrowding, punitive segregation, and other conditions of confinement on the quality of prison life and the ability of prisoners to adjust to them.

    3.    In addition, I have toured and inspected and analyzed conditions of confinement at numerous state prisons (including in Alabama, Arkansas, Arizona, California, Florida, Georgia, Idaho, Louisiana, Massachusetts, Montana, New Jersey, New Mexico, Ohio, Oklahoma, Oregon, Tennessee, Texas, Utah, Washington, and Wyoming), maximum security federal prisons (at McNeil Island, Washington, Marion, Illinois, and the Administrative Maximum or "ADX" facility in Florence, Colorado), as well as prisons in Canada, Cuba, England, Hungary, and Russia. In 1989, I received a UC-Mexus grant to conduct a comparative study of prisons and prison policy in the United States and Mexico. As a result of that research grant, I toured a number of Mexican prisons, interviewed correctional officials and, in conjunction with United States Department of State officials, interviewed many United States citizens who were incarcerated in Mexico.

---

*Sciences.* The Open University, 1979; Goldstein, J. (Ed.), *Modern Sociology.* British Columbia: Open Learning Institute, 1980; Ross, R. (Ed.) *Prison Guard/Correctional Officer: The Use and Abuse of Human Resources of Prison.* Toronto: Butterworth's 1981; Monahan, J., and Walker, L. (Eds.), *Social Science in Law: Cases, Materials, and Problems.* Foundation Press, 1985; Siuta, Jerzy (Ed.), *The Context of Human Behavior.* Jagiellonian University Press, 2001; and Ferguson, Susan (Ed.), *Mapping the Social Landscape: Readings in Sociology.* St. Enumclaw, WA: Mayfield Publishing, 2001; Pethes, Nicolas (Ed.), *Menschenversuche (Experiments with Humans).* Frankfurt, Germany: Suhrkamp Verlag, 2006.

[3] The American Psychological Association sponsored a "retrospective" commemorating the 25th anniversary of this study at its Annual Convention a decade ago. *See, also,* Haney, C., and Zimbardo, P., The Past of Future of U.S. Prison Policy: Twenty-Five Years After the Stanford Prison Experiment, 53 *American Psychologist* 709-727 (1998).

[230542-1]

4.    I have lectured and given invited addresses throughout the country on the psychological effects of living and working in institutional settings (especially maximum security prisons) at various law schools, bar associations, university campuses, and numerous professional psychology organizations such as the American Psychological Association. I have also served as a consultant to numerous governmental, law enforcement, and legal agencies and organizations, including the Palo Alto Police Department, the California Judicial Council, various California Legislative Select Committees, the National Science Foundation, the American Association for the Advancement of Science, the NAACP Legal Defense Fund, and the United States Department of Justice.

5.    For example, in the summer of 2000, I was invited to attend and participated in a White House Forum on the uses of science and technology to improve crime and prison policy, and in 2001, I participated in a conference jointly sponsored by the United States Department of Health and Human Services (DHHS) and the Urban Institute concerning government policies and programs that could better address the needs of formerly incarcerated persons to facilitate their reintegration into their home communities. I continued to work with DHHS and other organizations on the issue of how best to maximize the success of recently released prisoners. And, in 2005, I was the Scholar-in-Residence at the Center for Social Justice, at the Boalt Hall School of Law, a role that included delivering an invited lecture at the school on the psychological effects of conditions of confinement and consulting with law students and faculty members on a variety of prison-related issues.

6.    In addition to the research I have conducted into the psychological effects of confinement and patterns of adjustment in institutional settings, I also have extensive experience evaluating the life histories and psychological reactions of individual clients in the criminal justice system. Beginning as a Law and Psychology Fellow at the Stanford Law School in the mid-1970s, I participated for several years in an intensive clinically-oriented course co-taught by law professor Anthony Amsterdam and psychiatrist Donald Lunde that sensitized me to the special problems and vulnerabilities of psychiatrically-impaired criminal defendants and prisoners with special needs. Since that time I have been extensively involved

in teaching and conducting research on a variety of forensic issues that have placed me in continuing contact with diverse prisoner populations, many of whose members suffer from adverse effects of institutionalization, as well as pre-existing psychiatric disorders and developmental disabilities.[4]

7.    For example, over the last 25 years I also have been studying the backgrounds and social histories of persons accused and convicted of violent crime. In the course of this research, I have evaluated the background and social histories of defendants and convicted persons, carefully assessed the effects of prior periods of institutionalization, and analyzed the ways in which these factors have influenced the development and psychological functioning of the persons in question. Much of that work has entailed an assessment of the potentially adverse effects of their institutional histories as well as evaluations of their potential for future prison adjustment.

8.    My interests in these broad issues within the general area of psychology and law is both academic and professional. Thus, in the course of my work on conditions of confinement, adjustment to incarceration, and effects of institutionalization on persons accused or convicted of violent crime, I have been qualified and have testified as an expert in various state and federal courts, including the Superior Courts of Lake, Los Angeles, Marin, Monterey, Orange, Sacramento, San Diego, San Francisco, and Ventura counties in California, state courts in New Jersey, New Mexico, Oregon, Wyoming, and Utah, as well as Federal District Courts in the Western and Eastern Districts of Washington, the Northern, Southern, and Eastern Districts of California, the District Court of New Mexico, and the Southern District of Illinois.

9.    In the course of this academic and professional work, I have also evaluated and testified concerning the psychological effects of conditions of confinement in the mainline

---

[4] For example, *see* Haney, C., and Specter, D., Legal Considerations in the Treatment of "Special Needs" Offenders, in Ashford, J., Sales, B., and Reid, W., (Eds.), *Treating Adult and Juvenile Offenders with Special Needs* (pp. 51-79). Washington, D.C.: American Psychological
(continued . . .)

housing units of various maximum and medium security prisons in a number of states (including California, New Jersey, New Mexico, Oregon, Utah, and Washington). For example, I have evaluated and provided testimony about the psychological effects of overcrowded conditions of confinement in the mainline housing units at the California Men's Colony, Folsom, San Quentin, and Soledad prisons. In the mid-1980s I toured, inspected and conducted extensive interviews in more than a half dozen Texas prisons, and examined and analyzed numerous documents as the basis for an opinion about the psychological effects of overcrowding in the Texas Department of Corrections.

10. I have often focused in this work on the effects of conditions of confinement on so-called "special needs" prisoners (primarily the mentally ill and developmentally disabled). For example, under the auspices of the United States Department of Justice, I evaluated conditions of confinement and the quality of care provided at Atascadero State Hospital, a forensic facility designed to house mentally-ill and developmentally-disabled offenders for the State of California. Also, as noted above, I testified as an expert witness concerning conditions of confinement and their effects on prisoners at the California Men's Colony, which was a treatment-oriented facility in which many mentally-ill prisoners were housed at the time I evaluated it. In addition, I evaluated the effects of conditions of confinement on prisoners at the California Medical Facility at Vacaville (including prisoners housed in the Department of Mental Health units),[5] and also testified about the prevalence of seriously mentally-ill prisoners in the California Department of Corrections, as well as the special psychological problems that living in isolated housing units created for them.[6] I have also evaluated the psychological effects of conditions of confinement at juvenile justice facilities, on the condemned or "death

---

Association (2000).

[5] *Gates v. Deukmejian*, Civ-S-87-1636 LKK-JFM (E.D. Cal.)(1990).

[6] *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995).

row" units in several states (including Arkansas, California, New Mexico, and Texas), and in various special treatment facilities for sex offenders (in Florida and Washington).

11.    In much of my research, writing, and testimony about prison conditions, especially in recent years, I also have focused on the assessment of the psychological effects of confinement in so-called "lockup," punitive segregation, or so-called "supermax" confinement (in what are variously known as management control, security housing, high security, or close management units).[7] This has included tours and inspections and interviews in a number of what were once called "management control units" as well as "security housing units" in institutions in California, in several separate prisons or specialized units in each of the states of Louisiana, Massachusetts, New Mexico, Oregon, Texas, and Washington, as well as at the Federal Penitentiary at Marion, Illinois. For example, I have testified about the effects of isolation and social deprivation in the Security Housing Unit at Pelican Bay State Prison,[8] and in several of the High Security Units in the Texas Department of Corrections.[9]

## II.    FOUNDATION FOR EXPERT OPINIONS IN THIS ACTION

12.    I was retained by attorneys for Plaintiffs in *Coleman v. Schwarzenegger* and *Plata v. Schwarzenegger* to complete several inter-related tasks. Those tasks included reviewing and summarizing the existing psychological and social science literature on the effects of overcrowding in prison settings. They also included reviewing an extensive number of documents provided by Plaintiffs' counsel that pertain to the current nature and quality of medical and mental health care in the California Department of Corrections and Rehabilitation (CDCR), the conditions of confinement that prevail throughout the state's prison system and,

---

[7] *See, generally,* Haney. C., and Lynch, M., Regulating Prisons of the Future: The Psychological Consequences of Supermax and Solitary Confinement, 23 *New York University Review of Law and Social Change* 477-570 (1997); and Haney, C., Mental Health Issues in Long-Term Solitary and "Supermax" Confinement, *Crime & Delinquency* (special issue on mental health and the criminal justice system), *49*, 124-156 (2003).

[8] *See, Madrid v. Gomez,* 889 F. Supp. 1146, 1280 (N.D. Cal. 1995).

[9] *See, Ruiz v. Johnson,* 37 F. Supp. 855 (S.D. Texas 1999).

[230542-1]

especially, the ways in which these things may be affected by the chronic and severe overcrowding that continues to plague CDCR facilities. An updated list of the documents I was provided by Plaintiffs' counsel and reviewed in advance of preparing this report is appended as Appendix B. A list of prior cases in which I have testified at trial or deposition in the past four years and a statement of compensation is attached as Appendix C. I submit the present report to update and replace my report dated November 9, 2007.

13.       In addition to the documents reviewed, as listed in Appendix B, I also conducted tours and interviews in numerous housing units located in eight prisons where *Coleman* class members reside.[10] The prisons were: California Institution for Men (CIM), in Chino, California; Valley State Prison for Women (VSPW), in Chowchilla, California; Salinas Valley State Prison (SVSP), in Soledad, California; Mule Creek State Prison (MCSP), in Ione, California; California Substance Abuse and Treatment Facility (SATF), in Corcoran, California; California Correctional Institution (CCI), in Tehachapi, California; North Kern State Prison (NKSP), in Delano, California; and Wasco State Prison (Wasco), in Wasco, California. In the course of these tours, I made a point of visiting a representative sample of mainline housing units, including those that had been impacted by the severe overcrowding in CDCR (*e.g.*, housing units that had been converted into makeshift dayroom and gymnasium dormitories). I also toured areas that contained specialized mental health and crisis beds. Because of the special sensitivity and vulnerability of mentally ill prisoners to the harsh regimes that exist in Administrative Segregation Units (ASUs),[11] I also made a point of touring and speaking to a number of the mentally ill prisoners housed in the ASUs at each of the prisons. In the cases of VSPW and CCI, I also toured and spoke to men and women housed in

---

[10] *Coleman* class members are CDCR prisoners with serious mental illness.

[11] Administrative Segregation Units are locked-down units within the prison where prisoners are housed for a wide variety of "administrative" reasons. Special security procedures are used in the transport of Ad Seg prisoners and their out-of-cell time and other program participation is drastically reduced. They spend the overwhelming majority of their time locked in their cells.

[230542-1]

the Security Housing Units (SHU),[12] where prisoners also are housed under severe locked down conditions. In addition, in the course of touring the last four CDCR facilities that I visited, we photographed a number of different areas inside the prisons themselves. I have reviewed and relied on those photographs, as well as photographs and videos materials obtained from the CDCR's own publicly accessible website depicting conditions inside CDCR institutions.

14.     In addition to the tours themselves, and my conversations with correctional administrators, clinical staff, and line correctional officers, I was able to converse with numerous prisoners who were participants in the CDCR's mental health delivery system, including many who were in the Correctional Clinical Case Management System (CCCMS)[13] as well as those in the Enhanced Outpatient Program (EOP).[14]  I also conducted private, one-on-one interviews with individual prisoners who were selected by Plaintiffs' counsel from the various lists of CCCMS and EOP prisoners at each facility and from correspondence.

---

[12] Security or Secured Housing Units are also locked-down units within the prison where prisoners are housed as a result of disciplinary infractions (specific offenses committed in prison, or gang status), or sometimes for safety-related concerns. As with AD SEG prisoners, special security procedures are used in the transport of SHU prisoners and their out-of-cell time and other program participation is drastically reduced. They, too, spend the overwhelming majority of their time locked in their cells.

[13] CCCMS prisoners constitute the largest CDCR mental health category. It comprises some 28,000 prisoners with mental illness who live in general population housing, and are supposed to receive medication management and meet with their case manager every 90 days. When CCCMS prisoners are housed in Ad Seg, they are supposed to receive enhanced mental health services that include weekly case manager contact and daily rounding from psychiatric technicians.

[14] EOP includes seriously mentally ill prisoners who require a higher and more intensive level of mental health care. These prisoners are unable to function in a general population prison setting and, as a result, are supposed to be in sheltered treatment programs and live in segregated housing units. They are supposed to receive 10 hours each week of therapy or "structured therapeutic activities."  When they are housed in Ad Seg, they are supposed to be provided with weekly case manager contact and receive daily rounding from psychiatric technicians. There are approximately 4,900 EOP prisoners in the CDCR.

---

-8-

[230542-1]

15.     Finally, I was asked to formulate expert opinions concerning: a) the impact of overcrowding on prisons, prison systems in general, and the California prison system in particular; b) whether and how overcrowding is the primary cause of the continuing constitutional violations that have been identified in the California prison system; c) whether and why a prisoner relief order is the only appropriate remedy to the overcrowding-related constitutional violations that continue to plague the California prison system; and d) assuming that the Court will issue a prisoner release order, what population level or percentage of design capacity is an appropriate target that is likely to remedy the overcrowding-related constitutional violations.

## III.    EXPERT OPINIONS

### A.    Summary of Expert Opinion

16.     The relevant psychological and social scientific literature on prison overcrowding underscores its negative impact on virtually every aspect of prison life, from the pains of imprisonment suffered by prisoners, to the performance and well-being of correctional officers and other prison employees, to the way in which individual institutions and prison systems discharge their constitutionally mandated duties and functions. In my experience as a scholar and researcher who has studied prisons in the United States for more than 35 years, no other single aspect or condition of confinement has had a more significant impact on the prisons of this country or prisons in the State of California.

17.     Because of the tremendous importance of overcrowding and its impact on virtually every aspect of prison life, it is my opinion that it is the primary cause of the continuing constitutional violations that plague the California prison system, including the CDCR's inability to provide medical and mental health care for state prisoners that meets the relevant constitutional minimum standards.

18.     It is my opinion that a prisoner release order that results in a significant and expeditious reduction in the number of prisoners housed in the CDCR is the only appropriate remedy to the continuing overcrowding-related constitutional violations. I base this opinion on my knowledge of and experience with court-ordered institutional change in this state and

-9-