JONES & MAYER
Martin J. Mayer (SB # 73890)
Michael R. Capizzi (SB # 35864)
Kimberly Hall Barlow (SB # 149902)
Ivy M. Tsai (SB # 223168)
3777 North Harbor Boulevard
Fullerton, California 92835
(714) 446-1400; Fax (714) 446-1448
e-mail: mjm@jones-mayer.com
e-mail: mrc@jones-mayer.com
e-mail: khb@jones-mayer.com
e-mail: imt@jones-mayer.com

Attorneys for Law Enforcement
Intervenor-Defendants

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No: CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |
| vs. | [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)] |
| ARNOLD SCHWARZENEGGER, et al., | **SUPPLEMENTAL DECLARATION OF KIMBERLY HALL BARLOW IN SUPPORT OF LAW ENFORCEMENT INTERVENORS' MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF JAMES AUSTIN, PhD REGARDING CERTAIN MATTERS** |
| Defendants. | |
| MARCIANO PLATA, et al., | Case No.: C01-1351 TEH |
| | **THREE-JUDGE COURT** |

-1-
DECLARATION OF KIMBERLY HALL BARLOW IN SUPPORT OF LAW ENFORCEMENT INTERVENORS'
MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF JAMES AUSTIN, PhD.
REGARDING CERTAIN MATTERS

| | |
|---|---|
| 1 | Plaintiffs, |
| 2 | vs. |
| 3 | ARNOLD SCHWARZENEGGER, et al., |
| 4 | |
| 5 | Defendants. |

I, KIMBERLY HALL BARLOW, declare as follows:

1. I am an attorney at law duly licensed to practice in the State of California and admitted to practice in the all the federal districts in this State. I am one of the attorneys representing the Sheriff, Police Chief, Chief Probation, and Corrections Chief Intervenors ("Law Enforcement Intervenors") in this action. I have personal knowledge of the following facts and could and would testify competently thereto if called upon.

2. At the time I filed the Law Enforcement Intervenors' Motion in Limine Number 1 concerning testimony of James Austin, PhD., I had not yet received the transcript of Dr. Austin's deposition testimony so that I could refer to his testimony by line and page number. I since have received that transcript.

3. Attached hereto as Exhibit "D" are true and correct copies of the face page, certification page and excerpts of Dr. Austin's deposition that relate to the issues raised in our Motion in Limine No. 1. Testimony concerning Dr. Austin's failure to preserve, retain or produce drafts of his "rebuttal" report appears on Page 370, l. 6 through Page 377, l. 15.

4. Dr. Austin's testimony concerning his "expert file" appears on Page 377, l. 17 through Page 380, l. 20.

5. Dr. Austin's testimony regarding further pre-trial work and the fact that he was not provided with the documents produced by Chief Dyer or Chief Powers

regarding their expert opinions or their deposition transcripts appears at Page 313, l. 22 through 314, l. 10 and Page 504, l. 7 through Page 505, l. 19.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 24th day of October, 2008 at Fullerton, California.

                                         /s/
                                  Kimberly Hall Barlow
                                  Attorneys for Sheriff, Probation, Police Chief, and Corrections Intervenor-Defendants

-3-
DECLARATION OF KIMBERLY HALL BARLOW IN SUPPORT OF LAW ENFORCEMENT INTERVENORS' MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF JAMES AUSTIN, PhD. REGARDING CERTAIN MATTERS

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. CIV S-90-0520 LKK-JFM P |
| ) | |
| ARNOLD SCHWARZENEGGER, et ) | THREE-JUDGE COURT |
| al., ) | |
| ) | |
| Defendants. ) | |
| MARCIANO PLATA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| ARNOLD SCHWARZENEGGER, et ) | |
| al., ) | |
| Defendants. ) | |

CERTIFIED COPY

VOLUME II

DEPOSITION OF JAMES AUSTIN, Ph.D.,

BURBANK, CALIFORNIA

WEDNESDAY, OCTOBER 15, 2008

Reported By:
JULIE MEEHAN
CSR NO. 12341

1  the --
2       MS. BARLOW:  The September 22 report?
3       MS. EVENSON:  Yeah.
4       MS. BARLOW:  So other than this rebuttal report
5  that was issued September 25, 2008, you haven't
6  otherwise addressed Dr. Marquart's rebuttal?
7       MS. EVENSON:  Right the August 27 report addressed
8  Dr. Marquart's August 15 report --
9       MS. BARLOW:  Okay.
10      MS. EVENSON:  -- per the court's scheduling.
11      MS. BARLOW:  Very good.
12      MS. EVENSON:  But there's been no other report
13  addressing Dr. Marquart's September 22 report.
14      MS. BARLOW:  Just the one dated --
15      MS. EVENSON:  The 25th.
16      MS. BARLOW:  September 25; is that correct?
17      THE DEPONENT:  I don't know the date, but that
18  sounds --
19      MS. EVENSON:  The most current one.
20      MS. BARLOW:  That was the last report we received.
21      THE DEPONENT:  That's correct.
22      Q    BY MS. BARLOW:  All right.  Since you issued
23  the report on September 25, have you done any additional
24  work?
25      A    No.

1   Q   Have you reviewed the deposition transcripts
2   of either Jerry Dyer or Jerry Powers?
3   A   No.
4   Q   Did you communicate with counsel for the
5   plaintiffs regarding the contents of those depositions?
6   A   No.
7   Q   Did you communicate with counsel any
8   statements that either Jerry Dyer or Jerry Powers made
9   regarding your opinions in this case?
10  A   No.
11  Q   Okay. That was the follow up. Thank you.
12      Let's talk briefly about these documents that
13  you brought here today.
14      MS. BARLOW: Are these in any particular order,
15  counsel?
16      MS. EVENSON: I think they should be in -- what
17  they are are the documents that were requested in
18  addition. They're the e-mails between Dr. Austin and
19  myself and I think they should be in chronological
20  order.
21      MS. BARLOW: Okay.
22      MS. EVENSON: With the attachment attached to the
23  various e-mails pertaining.
24      MS. BARLOW: We'll just label these as one exhibit,
25  if you don't mind, and then I'll have the doctor go

314

1  access.
2      MS. BARLOW: Counsel, will you provide us with that
3  link so we can access the article or a copy of the
4  article?
5      MS. EVENSON: I would be happy to.
6      Q   BY MS. BARLOW: Dr. Austin, there's an e-mail
7  that attaches your signature page to the -- for lack of
8  a better word rebuttal report. Did you send another
9  e-mail with the text of the body? Is there a draft of
10 that report?
11     A   Yes.
12     Q   And are those in this stack?
13     A   You have the report, you have my rebuttal
14 report.
15     Q   You didn't prepare any drafts of it, it was
16 just the one document completely unchanged from the
17 first time you sent it?
18     A   I was making changes all the time as I was
19 drafting it.
20     Q   Did you send any drafts to counsel before the
21 final draft was prepared?
22     A   Uh-huh.
23     Q   And I don't see those here? We're entitled to
24 drafts.
25     MS. EVENSON: They were all saved over, as I

HAHN & BOWERSOCK (800) 660-3187 FAX (714) 662-1398
151 KALMUS DRIVE, SUITE L1 COSTA MESA, CA 92626

1  understand it, on a shared server; so.
2      MS. BARLOW:  Have you searched your e-mails for
3  them?
4      MS. EVENSON:  I wasn't sent any e-mails with the
5  draft.
6      Q    BY MS. BARLOW:  Who did you send the draft to?
7      A    That was on their website so I'm working on
8  their website.
9      Q    You access their website directly and prepare
10  your report on their website?
11     A    I'm writing the report and I am sending it to
12  the protected server.  They have a protected server.
13     Q    But you're doing that from your computer at
14  home?
15     A    Right.
16     Q    And you didn't save any of your drafts?
17     A    No.
18     Q    You said you were -- you said you were saving
19  them on a server as you went along?
20     A    Uh-huh.
21     Q    Were you discussing them with counsel?
22     A    Yes.
23     MS. BARLOW:  And, counsel, you didn't print any of
24  those drafts to discuss with him?
25     MS. EVENSON:  I don't have any drafts.

371

1  Q  BY MS. BARLOW: Who did you discuss the drafts
2  with?
3  A  Rebekah.
4  Q  Just Rebekah?
5  A  Uh-huh.
6  Q  No one else?
7  A  No, ma'am.
8  Q  Well, since we don't have any of the drafts,
9  can you tell me what kind of changes were made as a
10 result of those discussions?
11 A  Well, that would be a little -- I don't think
12 I can. I was writing, getting information, looking at
13 it, studying it, changing it.
14 Q  Tell me what information you received from
15 Ms. Evenson.
16 A  The depositions of Mr. Marquart, Dyer, Powers,
17 and Bennett.
18 Q  The reports or the depositions?
19 A  The report.
20 Q  That's all you received from Ms. Evenson?
21 A  Uh-huh.
22 Q  Did you discuss with her --
23 A  Yes.
24 Q  -- with her the content of your drafts?
25 A  Pardon?

372

```
 1    Q    Did you discuss with her the content of your
 2 drafts?
 3    A    Well, she could see my drafts.
 4    Q    That's not the question. Did you discuss
 5 those with her in detail?
 6    A    Yes, we discussed them.
 7    Q    And as a result of the discussions, were
 8 changes made to the drafts?
 9    A    Yeah, I would hear her concerns or issues and
10 stuff like that.
11    MS. BARLOW: Counsel, you know as well as I do that
12 it's completely inappropriate to allow drafts of an
13 expert report to be destroyed especially when counsel
14 has been communicating with the expert regarding the
15 draft and changes have been made as a result. I mean, I
16 think you guys better try to figure out a way to find
17 the drafts or we're going to move to exclude any
18 opinions on this report. I'm just telling you now. And
19 I'm going to reserve my right to requestion him if any
20 drafts are produced.
21    Q    BY MS. BARLOW: Dr. Austin, can you tell me
22 what kinds of changes, if any, were made to the report
23 as a result of the discussions you had with counsel?
24    A    No.
25    Q    None?
```

373

1    A    Well, no, I really can't recall any -- as a
2  result of her discussions with me?
3    Q    Well, you said you discussed substance and as
4  a result of those discussions --
5    A    She would say the report is looking good,
6  things like that.
7    Q    That's all you can recall?
8    A    That's all I recall right now, yes.
9    Q    What would refresh your recollection, if
10 anything, about the substance of your conversations with
11 counsel concerning your draft report?
12   A    I don't know.
13   Q    Would the drafts refresh your recollection?
14   A    I don't have any drafts, ma'am, I told you.  I
15 had one version I was working on.  And I would save it
16 and then I would go back and look at it and move things
17 around and change things based on what I thought was
18 appropriate.
19   Q    Did counsel ever advise you that you should
20 retain drafts of your reports in your expert file?
21   A    I was working on a document and I save the
22 document and that's it.  I don't have anything else to
23 show.  I don't know what you're getting at, I guess.  I
24 mean, did you expect me to submit one final version and
25 that's it I don't do any drafts, I don't do any spell

374

1  checks, I don't check any references, I don't --
2      Q   I expect the drafts prepared would have been
3  produced as I produced drafts of my expert's report
4  including the final version. That's what I expect
5  because that's what the rules require.
6      A   Okay. Well, that's between you guys, I guess.
7      Q   Nobody ever advised you that you should retain
8  drafts of your reports?
9      A   Well, when I would change it, I would save it
10 so I'm not saving anything.
11     Q   But there was an electronic form that existed
12 that was different from your final report, at least one;
13 is that correct?
14     A   No, it's constantly on the server.
15     Q   On the serve there was a document that you
16 would leave to go and do something else, right, and it
17 would be saved in some format. And then you would come
18 back --
19     A   Make changes.
20     Q   -- reopen it --
21     A   And save it again --
22     Q   -- so you never saved versions of the
23 document --
24     A   No, no.
25     Q   -- you just saved over the prior draft?

1   A   That's right.
2       MS. BARLOW: Counsel, do you know if you have tapes
3   of those electronic documents, backups?
4       MS. EVENSON: I don't think so.
5       MS. BARLOW: Have you checked?
6       MS. EVENSON: My understanding is that we don't.
7       MS. BARLOW: That would be shocking in this day and
8   age, absolutely, unbelievably shocking that you would
9   not have backup tapes of your electronic server.
10      Q   BY MS. BARLOW: So the best you can recall
11  from the report that you submitted approximately a month
12  ago is that she would tell you the report was looking
13  good and you would then make changes?
14      A   No.. The way I write my reports is I look at
15  them and I keep coming back to them and keep reanalyzing
16  them and looking at things and submit my final version.
17      Q   So you can't tell me what changes were made
18  from draft one to draft two and draft two to draft three
19  and draft three to draft -- or even how many drafts you
20  made?
21      A   I would say hardly any changes of any
22  substance. What I was doing was going through each of
23  the reports and going by each person. So I would say
24  the communications produced very little changes, just
25  typos. They would double the check the spelling and

HAHN & BOWERSOCK (800) 660-3187 FAX (714) 662-1398
151 KALMUS DRIVE, SUITE L1 COSTA MESA, CA 92626

1  everything and they would format it for me to make it
2  look good.  Like I didn't do the numbering and I kind of
3  --
4      Q    How many discussions did you have with counsel
5  regarding the draft report?
6      A    Maybe two.
7      Q    How many different drafts do you recall saving
8  to the server?
9      A    Maybe two or three.
10     Q    Do you recall the dates on which you might
11 have saved those?
12     A    What's the date of the report?
13     Q    September 25.
14     A    Well, it was all done within about a week; so
15 the saved dates probably would have been before the
16 25th.
17     Q    And do you have a file?  I mean, you have
18 produced documents, but I don't see documents that I
19 would call an expert file in here.  Do you have a file
20 that you keep regarding studies that you have referred
21 to and notes and copies of documents provided to you by
22 counsel and so on as part of your expert file?
23     A    No, I don't have a file.
24     Q    What do you do with the documents that you
25 receive from counsel?

377

| | | |
|---|---|---|
| 1 | A | They're on my floor in my bedroom. |
| 2 | Q | So there are no documents? |
| 3 | A | You said do I have a file. |
| 4 | Q | Well, you have documents, but you don't put them into a file? |
| 6 | A | Every document, yeah. |
| 7 | Q | Do you have a stack of documents? |
| 8 | A | Well, I have the reports. |
| 9 | Q | What about the studies and reports and data that you used to base your opinions on, you don't keep those somewhere? |
| 12 | A | I'm not sure what you're talking about now. |
| 13 | Q | By way of example, the report that was the Texas report, the -- |
| 15 | A | Yeah, the Texas -- |
| 16 | Q | -- Michigan -- |
| 17 | A | Yeah, the Texas report came. I asked Mr. McGinniss to send that to me. The V.J.S. report is on the V.J.S. website which I downloaded it, but I don't keep them. |
| 21 | Q | So you have no place where you have all the documents that you reviewed or relied on -- |
| 23 | A | You just asked about those -- we'll go document by document. I'm just telling you what I've got. |

1  Q   What I'm trying to ascertain, Dr. Austin, is
2  when I represent a client, I have a file, sometimes more
3  than one file, that represents a particular case. And
4  if I just spread documents along my bedroom and my
5  office, I wouldn't be able to find things that I need in
6  order to handle that case. So I'm asking you is there a
7  place where you keep the documents that you consider or
8  review or rely on or consult or keep notes about the
9  work that you're doing in this case?
10     MS. EVENSON: Objection. Compound. Argumentative.
11     THE DEPONENT: I don't have any notes. The
12 documents -- the ones that you have are the ones I sent
13 to everyone. Those are -- I don't have copies of those
14 right now, I sent them electronically.
15     Q   BY MS. BARLOW: Do you have any folders on
16 your computer system then that are dedicated to the work
17 in this case?
18     A   Yes.
19     Q   Any electronic documents produced?
20     MS. EVENSON: My understanding is that everything
21 that was requested was produced.
22     MS. BARLOW: Well, I asked for everything that he
23 had on this case, basically. So if he has electronic
24 files --
25     MS. EVENSON: If we already produced to you the

379

1  report, I don't -- I guess I don't quite understand what
2  you're asking.
3      MS. BARLOW:  Well, producing the report and
4  producing the documents that he considered or relied on
5  are two different things.
6      MS. EVENSON:  Correct, and he forwarded them to me
7  in an electronic copy and I printed them and gave them
8  to you.
9      Q   BY MS. BARLOW:  Is there any electronic
10 document, Dr. Austin, that you might have on your
11 computer at home that is not sitting in front of us
12 today that relates to your opinions in this?  Documents
13 that you used to --
14     A   That would be my whole computer theoretically.
15     Q   Well, we're entitled to know everything that
16 you looked at.
17     A   I've given you everything that has been asked
18 of me and everything that has been relied upon; so I
19 don't know what else you would like to have.  There's
20 nothing that you don't have already that is --
21     Q   Well, there is, because I don't have your
22 drafts, so.
23         With respect to the documents that Ms. Evenson
24 sent to you in three parts on September 23, the Marquart
25 Part One, Marquart Part Two, and Marquart Part Three,

HAHN & BOWERSOCK (800) 660-3187 FAX (714) 662-1398
151 KALMUS DRIVE, SUITE L1 COSTA MESA, CA 92626

1  report.
2      Q    Do you know why it was sent to you?
3      A    Just for my information.
4      Q    Did you use it for any purpose?
5      A    Not really, I skimmed through it.  I know
6  Mr. Bennett quite well.
7      Q    And it's not your intention to offer any
8  testimony about it at trial?
9      A    It's not my intention unless asked to by
10 someone.
11     Q    Can I ask if you anticipate doing any further
12 work with respect to this case?  For example, a number
13 of documents were produced at the depositions of
14 Jerry Dyer and Jerry Powers in support of the opinions
15 and data that they gave that hasn't been provided to
16 you.  Do you know whether you will be asked to review
17 those documents and offer any opinions or assessment of
18 those documents?
19     A    I don't know if I'm going to be asked to do
20 that.
21     Q    But you haven't been asked to do that up to
22 this point?
23     A    I did inquire with counsel if I could see
24 those because I was curious about those, but counsel has
25 not indicated to me whether or not they're going to send

```
 1  them to me.
 2      Q    And when did you make that inquiry?
 3      A    This morning.
 4      Q    So did you have any communication with counsel
 5  for the plaintiffs regarding those documents prior to
 6  this morning?
 7      A    No.
 8      Q    Were you informed that documents had been
 9  produced?
10      A    No.
11      Q    And nobody told you whether you'll get them or
12  not?
13      A    That's correct.
14      Q    Has anybody asked you to review any deposition
15  transcripts of any of the other witnesses of the
16  interveners or defendants?
17      A    No.
18      Q    And do you intend to do that prior to trial?
19      A    No.
20      MS. BARLOW:  Anything else?
21      MS. JOHNSON:  No.
22      MS. BARLOW:  All right.  I have nothing further.
23           Do we have a stipulation that we can give her
24  quickly so you guys can get on the road?
25      MS. JOHNSON:  What are you talking about?
```

```
 1                DEPOSITION OFFICER'S CERTIFICATE
 2                     [C.C.P. 2025(q)(1),(r)]
 3
   STATE OF CALIFORNIA      )
 4                          ) ss
   COUNTY OF LOS ANGELES    )
 5
 6        I, JULIE SEYMOUR, Certified Shorthand
 7   Reporter, Certificate No. 12341, State of California,
 8   hereby certify:
 9        I am the deposition officer that
10   stenographically recorded the testimony in the foregoing
11   deposition;
12        Prior to being examined, the deponent was by
13   me administered an oath in accordance to CCP 2094;
14        The foregoing transcript is a true record of
15   the testimony given;
16        The deposition officer was relieved of her
17   duty pursuant to the Code of Civil Procedure, Section
18   2025(q)(1); and therefore, any changes made by the
19   deponent or whether or not the deponent signed the
20   transcript are not herein set forth.
21
22   Dated:  OCT 1 5 2008         , Los Angeles, California.
23
24                              _____
                                 JULIE SEYMOUR, CSR NO. 12341
25
```

HAHN & BOWERSOCK (800) 660-3187