# Exhibit J



# MENTALLY ILL OFFENDER
# CRIME REDUCTION GRANT PROGRAM

## SECTION I: APPLICANT INFORMATION

### A. APPLICANT (LEAD AGENCY)

| AGENCY NAME (COUNTY AND DEPARTMENT) | | | TELEPHONE NUMBER | |
|---|---|---|---|---|
| County of Santa Clara Department of Correction | | | (408) 808-3640 | |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 180 W. Hedding St. | San Jose | CA | 95110 |

| MAILING ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 180 W. Hedding St. | San Jose | CA | 95110 |

### B. PROJECT TITLE (NAME OF PROPOSED GRANT PROGRAM) / C. AMOUNT OF FUNDS REQUESTED

| B. PROJECT TITLE (NAME OF PROPOSED GRANT PROGRAM) | C. AMOUNT OF FUNDS REQUESTED |
|---|---|
| MIOCR Justice and Recovery Courtroom to Community Partnership (JRCCP) | $1,500,000 |

### D. IMPLEMENTING AGENCY (DESIGNATED BY LEAD AGENCY)

AGENCY NAME
County of Santa Clara Department of Mental Health

| CONTACT PERSON | TELEPHONE NUMBER |
|---|---|
| Nancy Peña, Ph.D., Director | (408) 885-5783 |

| STREET ADDRESS | FAX NUMBER |
|---|---|
| 828 South Bascom, Suite #200 | (408) 885-5788 |

| CITY | STATE | ZIP CODE | E-MAIL ADDRESS |
|---|---|---|---|
| n Jose | CA | 95128 | Nancy.Pena@hhs.co.santa-clara.ca.us |

### E. PROJECT DIRECTOR

| NAME AND TITLE | TELEPHONE NUMBER |
|---|---|
| Bruce Copley, Deputy Director | (408) 885-5773 |

| STREET ADDRESS | FAX NUMBER |
|---|---|
| 828 South Bascom, Suite #200 | (408) 885-5788 |

| CITY | STATE | ZIP CODE | E-MAIL ADDRESS |
|---|---|---|---|
| San Jose | CA | 95128 | Bruce.Copley@hhs.co.santa-clara.ca.us |

### F. PROJECT FINANCIAL OFFICER

| NAME AND TITLE | TELEPHONE NUMBER |
|---|---|
| Martha Paine, Budget Director, Santa Clara Valley Health & Hosp. System | (408) 885-6860 |

| STREET ADDRESS | FAX NUMBER |
|---|---|
| 2324 Enborg Lane, #360 | (408) 885-6886 |

| CITY | STATE | ZIP CODE | E-MAIL ADDRESS |
|---|---|---|---|
| San Jose | CA | 95128 | Martha.Paine@hhs.co.santa-clara.ca.us |

### G. APPLICANT'S AGREEMENT

By signing this application, the applicant assures that the grantee will abide by the laws, policies and procedures governing this funding.

NAME AND TITLE OF PERSON AUTHORIZED TO SIGN AGREEMENT (SHERIFF, DIRECTOR OF CORRECTIONS, CHIEF PROBATION OFFICER, OR BOARD OF SUPERVISORS' CHAIR)

Edward Flores, Chief of Correction

| PLICANT'S SIGNATURE | DATE |
|---|---|
| | 11/03/06 |

Pena/ 00015

## SECTION II. STATEMENT OF NEED

### A.    IMPACT OF MENTALLY ILL OFFENDERS

In the space below, describe the impact of mentally ill offenders on the local justice system, particularly on adult or juvenile detention facilities.  Include data supporting the described impact.

Santa Clara County is the seventh largest county in California, with a population of more than 1.7 million; however, it has the fifth largest jail system in California and among the 20 largest systems in the United States.  Santa Clara County's jail is among the 100 systems nationwide, with an inmate population of more than 1,000.  Last year, it housed and cared for an average of 4,554 inmates a day, a custody population higher than in 10 state systems.   The Santa Clara County Department of Correction (SCCDOC) books approximately 68,000 arrestees annually.   The average length of stay is a little over 105 days.   Between 18% and 20% (800 to 900 inmates) are receiving psychiatric medications at any one time.   A large percentage of custody mental health clients (76%) have a co-occurring substance abuse disorder.

The "revolving door" between jail and the street in Santa Clara County is propelled in large part by untreated mental illness and co-occurring substance abuse disorders according to past and recent local analyses.  Several years ago, a "snapshot" review of inmate records showed that 175 inmates who had been diagnosed with serious mental illness and housed in the Main Jail facility represented 1,159 incarcerations. FY05-06 data demonstrates the continued impact of mentally ill offenders on the Santa Clara County criminal justice system (CJS).  Last year, Custody Mental Health staff responded to 32,419 crisis referrals; psychiatrists and nurse practitioners provided 5,463 outpatient visits to inmates; and 1,323 inmates were admitted to the custody acute psychiatric facility. Santa Clara County spent $10.2

Pena/ 00016

million in FY06 on mental health services for mentally ill offenders held in custody, with $1.8 million (18%) going to pharmaceuticals.

Best-case estimates are that less than 30% of inmates in need of mental health service upon release from custody are able to access psychiatric aftercare due to limited resources and strict eligibility criteria. Based on available data on inmates who receive psychiatric service while in custody, and factoring in length of stay and recidivism, it is estimated that close to 2,500 individuals with significant psychiatric needs are released from custody each year and are in need of ongoing psychiatric service upon jail release. The large majority of these individuals are not connected with service and the community based mental health system is able to offer access to only the most severely mentally ill.

## B.    IDENTIFIED NEEDS

In the space below, describe the identified need(s) that would be addressed with grant funds (i.e., the in-custody and/or post-custody gaps in treatment and/or support services for mentally ill offenders).

MIOCR grant funds will be used to address critical gaps in post-custody treatment and support, will expand existing services, and complement new services being implemented through Mental Health Services Act (MHSA) funding. This focus is based on extensive analysis by county inter-departmental leadership and community input and analysis that resulted from an extensive MHSA planning process.

In 2005, the Santa Clara County Board of Supervisors, alarmed at the dramatic increase in the jail population, directed the County Executive to assemble a task force to examine reasons for the continued increase in the jail population and to formulate possible solutions to decrease this population. A Jail Population Task Force was formed under the leadership of the Deputy County Executive, and included executive managers from several county departments and agencies including the Probation

Pena/ 00017

Department, Department of Correction, Mental Health Department, Drug and Alcohol Services, Custody Health, the Courts, Board of Parole, Pretrial Services, District Attorney, Public Defender and the Office of the County Executive. The members embarked on an intensive analysis of the current jail population and identified a series of jail reduction solutions for the Board's consideration. In an 11/10/05 "Report-back from the County Executive Regarding Solutions for Reducing the Jail Population," it was noted, "Criminal case filings have increased, and most notable are mental health filings." The report found a backlog for clinical assessments and treatment beds and cited the need for more housing options to facilitate timely jail discharge to address the waiting list for therapeutic housing, outpatient counseling, and residential treatment beds. A 5/11/06 update to the Board on Jail Population Task Force findings called for an emphasis on services to the most vulnerable individuals with high risk of recidivism and highlighted the need for enhanced services to "individuals served through the Mental Health Treatment Court (who) will benefit from a greater level of case management and community resources including treatment, housing and vocational rehabilitation available at the time of release to the community from the court hearing."

The need for housing was a recurring theme in all analyses. For example, approximately 87% of defendants referred to the Mental Health Treatment Court (MHTC) are homeless on entering the program from custody with no ability to purchase housing. There is a continual waiting list of MHTC clients who remain in custody, sometimes for long periods past their intended release date simply because of the severity of their mental illness and the lack of a suitable facility to house them. On any given date, there is a list of as many as 50 inmates who have waited from seven to 90 days for release and transport to residential housing due to lack of treatment beds at the time they are ordered released.

Pena/ 00018

Jail Population Task Force members, and many other providers and advocates also participated in the MHSA planning process, where there was further examination of the unmet mental health needs of mentally ill offenders. As a result, the county's MHSA Community Services and Supports Plan identified criminal justice involved mentally ill as one of nine focal populations. The approved plan will establish a Jail Aftercare and Recovery Services (JARS) intensive wraparound-like model of comprehensive integrated services for 178 individuals. These "Full Service Partnership" services make up the largest adult program in the county's MHSA plan, yet the program will address the needs of only 178 of the most severely mentally ill individuals a year. Additional MHSA funded programs include Therapeutic Housing Units (THU's), permanent housing development, and training and education in evidenced-based practices. MHSA funds will also be used to hire a senior manager to oversee a new division of the organization- Criminal Justice Recovery and Housing Services.

Considering the need described above, there still remains a tremendous gap in service and supports for this population. With the background of recent and past collaborative analysis and planning, bolstered by significant research and literature review of evidence-based practices, the MIOCR planning group identified the following crucial service needs as priorities for this proposed MIOCR project:

**Increased post-release linkage support.** Building on knowledge gained from the previous MIOCR program (PALS), there is a need for more extensive transition case management services to connect mentally ill offenders with essential community supports so they can secure stable living arrangements, engage in therapeutic and rehabilitative services, and establish positive social supports. Longer-term and better-resourced linkage services will be a need addressed with MIOCR funds.

**Increased access to effective mental health treatment and support services.** The Mental Health Treatment Court and PALS program effectiveness can be greatly enhanced by providing specialized treatment and supports to meet immediate needs of mentally ill offenders. There is a need for court-based mental health evidenced-based treatment, crisis intervention, psychiatric evaluation and medication management services to provide immediate access to offender-focused services that are not available through the "usual care" system. Delays related to waiting for usual care appointments and treatment services that are not proven effective with mentally ill offenders lead many offenders to experience psychiatric episodes resulting in rearrest, return to substance abuse, loss of housing, and avoidable psychiatric emergency room and psychiatric hospital use.    MIOCR funds will establish critically needed services, including health care benefit assistance and housing support. These new services will be augmented by new MHSA-funded full service partnerships, housing, and evidenced-based treatment training and implementation assistance.

**Peer support, educational and vocational resources.** Mentally ill offenders have needs related to establishing positive peer supports and activities that support their recovery. Many have no friends, no community or family support, and little or no successful employment histories. Consumers need to be connected with suitable vocational and educational efforts that offer opportunities for work and productive community involvement.    MIOCR funds will be utilized to implement peer support, drop-in services, psycho-education, and vocational support through an established client self-help center currently serving mentally ill offenders.

While California voters passed Proposition 63 in November 2004 to supplement local funding for mental health services (Santa Clara County's current annual allocation for MHSA treatment services and supports is $13.4 million), at the same time, Santa

Pena/ 00020

Clara County revenue shortfalls have projected significant local reductions and countywide cuts in health and human services will likely result in more arrests of mentally ill offenders who experience crises as a result of losing social and health services. This situation will surely worsen the local need describe above, despite the fact that no reductions are planned for custody-based services. Through MHSA and MIOCR funded services, Santa Clara County will be able to firmly establish a critically needed and improved service system for mentally ill offenders that can be expanded as resources become available in future years.

**B.    EXISTING RESOURCES**

In the space below, explain why existing state and local resources are inadequate to address the identified need(s).

Even with planned new MHSA services, there are inadequate community services and inadequate linkages to services, and it is estimated that over 70% of the current offender population with demonstrated need will remain unserved. Without intensive treatment, case management, peer support, housing and other services, these individuals are at high risk of re-offending. Specific offender-focused services include:

**Custody Mental Health Services.** This program provides crisis intervention, medication, and acute, inpatient services within the Main Jail and other custody settings and serves approximately **3,240 inmates yearly**.

**Mental Health Treatment Court (MHTC).** This program provides a courtroom-based "therapeutic jurisprudence" model that is a collaborative supervision and case management effort of the court, Mental Health, Department of Alcohol and Drug Services (DADS), the District Attorney, Probation, Public Defender, Public Health Department and community-based agencies. It serves approximately **700 offenders per year.**

Pena/ 00021

**Providing Assistance with Linking to Services (PALS).** This previously MIOCR-funded program provides short-term (60 days) intensive case management, group counseling, and service linkages for inmates upon their release from custody. It serves approximately **180 offenders per year**.

**Community Based Mental Health Services.** Mentally ill offenders may also be referred to the community mental health system through the centralized referral Call Center. Services include the following: Outpatient service teams, offered by county and contract operated programs that provide medication, case management, individual and group therapy. In addition, service team clients may have access to limited day services, self-help, emergency psychiatric services, psychiatric hospitalization, locked residential treatment and limited supplemental board and care services depending on need and service availability. Offenders served through PALS and MHTC (est. 900 each year) are referred to this public service. Unfortunately, due to limited resources, eligibility criteria limit access to individuals with severe psychiatric disorders and exclude a significant number of mentally ill offenders with serious personality disorders, debilitating episodes of anxiety, or a variety of other mental health issues that significantly impact their lives and contribute to their criminal justice involvement but do not meet current mental health criteria for service. Even for those who qualify, many lose functionality while waiting an average 6 weeks for their initial psychiatrist appointment.

**Planned MHSA Services.** New services are planned using MHSA funding that will offer full service partnerships (intensive and comprehensive integrated services) to approximately 178 very high need individuals, most of whom are homeless and have significant concurrent substance abuse problems. In addition, new temporary and permanent housing will be funded, and all system providers will receive intensive

Pena/ 00022

training in evidenced-based practices. The program is designed to meet the special needs of Latino and African American consumers who are over-represented in the CJS and under-represented in the mental health system.

The proposed MIOCR project focuses on the capacity and programmatic limitations of the MHTC and PALS. It establishes resources specifically available to the MHTC and PALS by providing a shared resource of additional clinical, evidence-based treatment; psychosocial education; client and staff training; and self-help/peer support system elements, allowing the MHTC and PALS to function more beneficially and, also, to serve a larger number of mentally ill offenders. The MIOCR and MHSA funded programs are estimated to increase services to 600 unserved and inadequately served mentally ill offenders, increasing the current service capacity from 900 to 1500 annually.

## SECTION III PROJECT DESIGN

### A.    PROJECT DESCRIPTION

In the space below, describe the proposed project, including the evidence-based treatment model upon which it is based, specific services that would be provided, where and when service delivery would occur, and who would provide services (i.e., project staff by position).

Santa Clara County's proposed MIOCR "Justice and Recovery Courtroom-to-Community Partnership" (JRCCP) will implement three program components that are directly tied to the service need described above. The components are: (1) expanded aftercare linkage and support through an enhanced and modified PALS program, (2) specialized contracted court-based treatment, housing and benefit assistance available directly to PALS and MHTC, and (3) peer support, psycho-education and vocational support targeted to address recovery and social support needs of mentally ill offenders. The project will utilize evidenced-based practices and proven-effective strategies to expand, revise and improve existing PALS and MHTC programs and will be

Santa Clara County MIOCR RFP –11/3/2006                                                                9

Pena/ 00023

complemented by services and supports funded through MHSA. The new MIOCR and MHSA funded program components will serve an estimated 600 additional mentally ill offenders each year increasing existing capacity by 67%.

**PALS Expanded Aftercare Linkage and Support**. The PALS program will be modified to increase the length of case management services and to provide access to additional specialized psychiatric treatment, therapy, housing, and other services. PALS will expand its current, annual caseload of 180 to serve an additional 120 clients per year. Staff will be increased by 1 FTE clinician and 1 FTE case manager and the program will share the MIOCR project court-based treatment and housing services, benefit assistance, as well as peer support and vocational services. As a result, PALS will be able to extend assistance to clients from the 60-day period to up to one year. Clients will "graduate" after time intervals that will vary depending on their stability and individual circumstances.

The current PALS program has earned high praise from clients, families, and the mental health and justice systems because it is the only program of its kind to provide immediate linkage and support to newly released mentally ill clients. PALS program staff meet newly released clients 24/7 and through an agreement with the Emergency Housing Consortium (homeless shelter) PALS clients in need of housing are placed in a shelter bed until stable housing is found. Services include transportation, service linkage, and short-term clinical interventions to support appropriate planning and decision-making. Many PALS clients are fully sentenced inmates who have served out their sentences in custody. Referrals are received through the MHTC and other courts, from Custody Health staff, the Public Defender and other defense attorneys. Qualifying inmates may also receive PALS services based on their own in-custody request.

Evaluation of the PALS program revealed that it effectively linked clients to

Pena/ 00024

services and that participation increased the likelihood that clients would receive more intensive and frequent community supports and services. Clients report significantly more positive experiences with respect to service linkage, support, and access. However, involvement in the CJS (bookings, convictions and days in jail) was not significantly impacted through the short-term, 60-day program. This is attributable to the complex needs of those served that require longer-term, sustained intervention. The PALS program will be modified to increase the length of case management services and to provide access to additional specialized psychiatric treatment, therapy, housing, and other services.

**Mental Health Treatment Court - Court-Based Treatment, Housing and Benefit Assistance.** The MIOCR project will add critical psychiatric and support resources for MHTC clients through implementation of court-based services including 30 beds of transitional housing, access to benefit-qualifying assistance, psychiatric medications and laboratory services, case management, and evidenced-based treatment. Services will be provided through a contract with a community based agency selected through a request for proposal process that seeks providers with expertise and experience in working with dual diagnosed mentally ill offenders. The service will be housed in offices provided through in-kind contribution of space in the building that houses the MHTC and will include (1) on-site psychiatric consultation (1.5 FTE MD), with the ability to utilize the medications and laboratory services mentioned above; (2) additional, on-site clinical services (1 FTE) to increase the capacity for evaluations and treatment planning and to furnish Cognitive Behavioral Therapy when indicated; (3) additional, on-site case management services (1 FTE) to better facilitate, support, and track community service utilization; and (4) an on-site peer counselor (1 FTE) to assist the case manager and facilitate and encourage the progress of the clients. In addition,

Pena/ 00025

30 transitional beds will be utilized repeatedly to assist homeless defendants as they leave jail to have a structured living situation during their initial phase of stabilization, and allow them to access day programming, education and other re-entry opportunities as well, rather than remain in custody. Through these increased resources, the MHTC will increase its caseload by 200 defendants and provide enhanced services and supports to new and existing clients.

The MHTC, the first court of its kind in California and the second in the nation, was established in 1998 to serve mentally ill defendants as well as those with co-occurring disorders, low functioning, or suffering from traumatic head injuries. The MHTC was designed to break away from the restraints of existing Court rules and processes and motivate non-compliant defendants to participate in treatment. The MHTC philosophy is that the Court must accept the responsibility for supervising mentally ill defendants in community treatment. A core principle of the MHTC is affirmation and acknowledgment of progress. As Judge Stephen Manley, the official presiding drug treatment court judge, tells the Court's clients, "We are looking for progress, not perfection." Goals are limited and, therefore, attainable. (Judge Manley was instrumental in the establishment of both the MHTC and the DTC in Santa Clara County and is a nationally recognized expert in the field of therapeutic and restorative justice.)

All judges hearing criminal assignments in Superior Court refer defendants directly to MHTC under a protocol established by the presiding judge to change sentencing practices relating to mentally ill and dually diagnosed defendants. This protocol is believed to be the first such protocol established in the State. The MHTC has the strong leadership support, not only from the presiding judge of the court, but from Santa Clara County Sheriff Laurie Smith and District Attorney George Kennedy,

Pena/ 00026

who have provided ongoing assistance throughout its existence.

A weekly MHTC Team meeting involves all partners in consensus-based review and decision-making concerning each defendant's situation and treatment plan. The Superior Court provides the judge, data collection and entry staff, a courtroom clerk and a court reporter. The MHTC team consists of the Judge, two substance abuse specialists from DADS, two Deputy DA's, four Public Defenders, a specialized Probation Department unit of five officers who thoroughly understand mental illness and supervise the most demanding cases, a Public Health nurse, three licensed mental health counselors, a liaison with the Department of Corrections from the County Jail, and representatives from the major treatment providers.

The MHTC has received national recognition for its successful model and best practices in successfully placing mentally ill offenders from custody into community treatment. Recently, the program was selected by CBS to highlight the MHTC model in a special national news edition to be aired in November 2006. The MHTC was selected as one of three mental health treatment courts throughout the nation to participate in a long-term evaluation through a grant from the MacArthur Foundation. The program was recently presented as a new and evolving innovation through the courts at the Annual Meeting of the National Association of the Mentally Ill (NAMI), and one of the present MHTC Team members has been selected by NAMI to receive the annual Community Merit Award.

**Cognitive Behavioral Therapy (CBT).** Recognized by NAMI, this treatment focuses on patterns of thinking that are maladaptive and the beliefs that underlie such thinking. CBT is a relatively short-term, focused psychotherapy for a range of psychological problems. Studies of CBT have demonstrated its usefulness for a variety of problems, including mood disorders, anxiety disorders, personality disorders,

Pena/ 00027

substance abuse disorders, and psychotic disorders. The focus of therapy is on current thinking, behaving, and communicating. The therapist assists clients in identifying specific distortions (using cognitive assessment) and biases in thinking and provides guidance on how to change this thinking. CBT is action-oriented, practical, rational, and helps build independence and effectiveness in dealing with real-life issues. CBT therapy will be provided to MHTC clients at scheduled times in the MHTC Team offices.

**Benefit Assistance.** For an individual who has no health insurance, there is little or no access to community-based, therapeutic services. Creating more access to benefits is an important corollary to the proposed service expansions. Utilizing culturally sensitive, multilingual staff to obtain necessary documentation, conducting home visits and/or providing transportation when necessary, and providing advocacy through the appeals process, this contract service has been extremely successful in assisting patients to establish payer sources, and it has proven to be exceptionally cost effective. The MIOCR project will select a provider through a request for proposal process to provide these services, for 53 MHTC clients and 53 additional PALS clients, utilizing a contingency fee model.

**ACT Peer Support and Vocational Training.** The MIOCR project will fund self-help, peer support, and vocational support services through a contract with ACT for Mental Health, Inc., a non-profit community agency located in downtown San Jose in proximity to the MHTC. ACT is dedicated to self-help through mental health counseling, education and rehabilitation. It was founded in 1955 as a way to help clients find and keep jobs, make and keep friends, and take substantial strides toward successful community living." (Hospital and Community Psychiatry, Wanda Alexander, ACSW, 1970).

The importance of peer support is well grounded in the literature. Experts

Pena/ 00028

advocate for community mental health centers to complement the medical model and recommend that successful treatment approaches depend on available avenues of referral with self-help agencies and mental health centers. (Online by American Psychiatric Association, Jonathan Prince, Ph.D., Rutgers University, and Steven Segal, Ph.D., University of California, Berkeley, 2005). NAMI released a report from its first national survey of people living with mental illness and their families.   Findings "highlighted the power of peer-run services, but also revealed a shameful dearth of these programs in the current mental health system. Peer-provided services, such as drop-in centers, peer-led education programs, and peer-provided job coaching, are a cost-effective, recovery-oriented, and community based service that should be available to all people with mental illness."

The ACT Center has been host to Family of Friends (FOF) for the past six years. FOF are peer support sessions facilitated by two Probation Officers with specialized mental health caseloads as part of the MHTC.  Shortly after the initiation of FOF's coed group, another specialized MHTC Probation Officer, in recognition of the unique issues women face around parenting and family relationships, began a Women's Group.  A Men's Group is planned to begin in conjunction with the proposed MIOCR Project. Currently, 30 mentally ill offenders, both men and women, attend FOF (coed group) each week. An additional 15 CJS-involved women with mental disorders attend the Women's Group. Meals are prepared by the group members and served during the meetings.  The sharing of meals creates a deeper feeling of community.  The MHTC, PALS, additional courts, and the Probation Department make referrals to FOF and the Women's Group. Clients and professionals point to several reasons for the success of ACT and these two support groups: "(ACT groups provide)...a feeling of ownership, a feeling of belonging, they are self-governing groups, they share meals together,

Pena/ 00029

participants help one another, it is a place of safety, and people relate to one another's past experiences, past experiences, and future goals."

The ACT Center has a newly remodeled kitchen due to the contributions and volunteer service of local church groups. The MIOCR funding will include, in addition to the creation of a FOF Men's Group, (1) hiring a program manager to coordinate the project services, including the initiation and maintenance of a 5-day Drop-In Center; (2) hiring a Food Services Coordinator, a CJS-involved ACT client with culinary and managerial skills, to (a) provide meals and snacks for FOF and other groups/events, and (b) supervise three trainees referred through the MHTC or PALS to learn food preparation and service skills; and (4) hiring a CJS-involved ACT client with appropriate skills and experience to serve as a Maintenance Supervisor to oversee the community service work required of MHTC clients by the Court. In addition, the MIOCR Project will formalize the linkages between PALS, the MHTC, ACT, and treatment staff for counseling and crisis services as needed to support clients through crises and to avoid use of emergency psychiatric hospitalization.

**Health Realization (HR).** Presently funded on a limited basis through the Department of Alcohol and Drug Services (DADS), HR is a psycho-educational program based on respect for, and certainty of, the innate mental health and capacity for well being inherent in every human being. The goal of HR is to help people realize that this birthright cannot be destroyed by present circumstances or past experiences and that it is accessible at any moment throughout our lives. HR is gaining recognition and use nationally and internationally. HR has been identified by the National Institute on Drug Abuse (NIDA) as a "Promising Program." HR classes will be provided for MHTC and PALS referrals.

**Motivational Interviewing (MI).** To complement their ability to implement the

Santa Clara County MIOCR RFP –11/3/2006

Pena/ 00030

specific service modalities, staff of the various MIOCR Project components will receive MHSA-funded training in MI.  MI is a clinical approach shown to be effective with a number of special populations such as criminal justice clients, substance abusers, and medical patients.  It is characterized by seeking to understand the person's frame of reference through reflective listening; expressing acceptance and affirmation; eliciting and reinforcing the client's own expressions of problem recognition, concern, desire and intention to change; monitoring the client's degree of readiness to change; and affirming the client's freedom of choice and self-direction. MI and CBT training will be offered to MIOCR project clinicians through the MHSA funded Learning Partnership.

**Program Oversight and Administration.**  The Justice and Recovery Courtroom to Community Partnership (JRCCP) will be coordinated under the leadership of the new MHSA funded Director of Criminal Justice Recovery and Housing Services. All services and consumer referral, admission, tracking and service coordination will be coordinated through the team of management staff who will directly supervise the JRCCP funded services.  The Director position will ensure that JRCCP procedures and protocols are developed, that brochures and consumer informing materials are developed and conform to MIOCR grant requirements. The Director will provide regular reports to the MIOCR Steering Committee and the Board of Supervisors regarding the status of the program.  The PALS, MHTC and ACT programs have all worked closely together and will continue to do so to assure that the maximum number of mentally ill and dually diagnosed offenders may be released from the jail, and receive the appropriate level of treatment, support and supervision in the community.

**B.    TARGET POPULATION**

In the space below, identify the project's target population and program eligibility criteria (e.g., estimated number of offenders who would participate, criminal history, types of offenders, diagnostic categories, etc.).

Pena/ 00031

The target population is mentally ill offenders referred to PALS and/or MHTC. Participants will be misdemeanor and felony offenders eligible for release based on judicial discretion prior to completion of sentencing, or who have completed their sentences at a County correctional facility. Offenses may include violent offenses, property offenses, drug offenses, and violations of probation. These individuals typically have histories of multiple incarcerations, co-existing disorders, experience chronic homelessness, substance abuse, and chronic medical conditions. Diagnostic criteria will include diagnosis based on DSM IV categories ranging from mood disorders (bipolar disorder, major depression, post-traumatic stress disorder, and other types of anxiety disorders) to psychotic disorders (schizophrenia, schizoaffective, etc.). A smaller proportion may suffer from severe adult attention deficit disorders, amphetamine-induced psychosis, HIV-related dementia, traumatic brain injuries, and other mental disorders directly linked to a medical condition. Approximately 76% are expected to have a substance abuse problem, and will be served through the County's drug and alcohol treatment system, as well as the proposed MIOCR project. This is based on the recognition that simultaneous treatment of all disorders by a cross-trained treatment team whose members are competent to treat both substance abuse and mental health disorders is the most effective approach.

Participants will be ethnically diverse with approximately 40% Hispanic, 25% Caucasian, 15% African American and 20% Asian. The numbers of new clients to be served annually is estimated to be: 200 MHTC clients, 120 PALS clients, and 300 ACT clients, for a total of approximately 600 clients.

## SECTION IV: INTERAGENCY COLLABORATION

A.    COORDINATED PLANNING PROCESS

Pena/ 00032

In the space below, describe the coordinated planning process undertaken to develop the grant proposal.   Following this description, use the table to identify the individuals who participated in this planning process.  *Refer to the section on Grant Application Requirements for information on mandatory representation and, if necessary, extend the table.*

The MIOCR Project results from ongoing collaboration, including a series of meetings at which top-level decision-makers were joined by staff from the agencies/departments shown below.   Evaluations of existing and proposed project components were reviewed and consensus was reached on the priority project elements and the highest and best use of MIOCR grant funds.   Due to space limitations, the following is a partial list of participants:

| Coordinated Planning Process Participants (include the individual's name, title and agency/organization) |
| --- |
| Edward Flores, Chief, Santa Clara County Department of Corrections |
| Nancy Peña, Director, Santa Clara County Mental Health Department . |
| Laurie Smith, Sheriff, Santa Clara County |
| Hon. Stephen Manley, Judge, Superior Court; Adult MH Treatment Court Judge |
| Robert Garner, Director, Santa Clara County Dept. of Alcohol and Drug Services |
| Sheila Mitchell, Chief Probation Officer, Santa Clara County Probation Dept. |
| Sherry Johnson, PALS Program Manager |
| Christine Ferry, Director, Adult Custody Mental Health |
| Maryann Barry, Associate Director, Acute Psychiatric/Custody Health Services |
| Teea Gilbert, Division Director, MHD Adult and Older Adult Services |
| Hon. Alden Danner, Presiding Judge, Superior Court |
| Hon. Catherine Gallagher, Assistant Presiding Judge, Superior Court |
| Mary Greenwood, Santa Clara County Public Defender |
| Marc Buller, Assistant District Attorney |
| Bruce Copley, Deputy Director, Mental Health Department |

Pena/ 00033

| Linda Ramus, DADS Prevention Program Analyst, Health Realization Services |
|---|
| Wanda Alexander, Director, ACT for Mental Health |

## B.    PROJECT COLLABORATION

In the space below, describe the applicant's plan for ongoing collaboration among those who participated in the planning process and explain the role of each partnering agency/community-based organization in the project.

Participants have agreed on the formation of a MIOCR Steering Committee to oversee project implementation and budget usage, monitor services, collect and evaluate service data and outcomes, and provide regular status reports to local and state authorities.  The Committee will be chaired by the Chief of the Department of Correction, and will have representation, at a minimum, of the Department of Correction, the Mental Health Department, Courts, Custody Health Services, Probation and the Department of Alcohol and Drug Services.  The Committee will meet at least quarterly and will be convened by the Chief of Correction.  The role of each Committee member will be to coordinate project activities within their domains and to report back to the Committee on project status and outcomes.  The MIOCR Steering Committee will report to the Board of Supervisors through the Public Safety and Justice and Health and Hospitals Committees.

## C.    PAST COLLABORATION

In the space below, describe the applicant's involvement in other collaborative efforts involving treatment and support services for offenders with mentally illness.

The MIOCR Steering Committee will build on the work of the last two years to address the issue of increased jail population. This effort was led by the Board of Supervisors, and the County Executive, as well as the Courts, and involved the creation of an ongoing Jail Population Task Force, composed of the Sheriff, Supervising Judges of the Superior Court, District Attorney, Public Defender, Chief of the Department of

Pena/ 00034

Correction, Probation, Mental Health, Department of Alcohol and Drug Services, Custody Health Services and Pretrial Services.

The Task Force has met on a monthly basis to work in collaboration to find strategies to reduce the population of the jail, and one major emphasis has been the mentally ill. This ongoing collaboration has resulted in formal reports and the identification of twenty one strategies many of which have been implemented through actions by the Board of Supervisors, the Superior Court and the other stakeholders, with the goal of reducing the jail population and moving as many mentally ill and dually diagnosed defendants from custody into community treatment, consistent with public safety. Strategies are not adopted without the full consensus of all members of the Task Force.

Further support for the **MIOCR Justice and Recovery Courtroom to Community Partnership** is offered through the Superior Court Streamlining Committee at which stakeholders from the CJS and the County Executive meet monthly with the Superior Court to discuss system improvements, including new and innovative changes within the Court to address the needs of the mentally ill that have in fact been implemented over the past two years. In addition, Custody Health and Mental Health Services and DOC staff jointly participate in a Quality Improvement Committee and a Behavioral Management Committee to ensure collaboration in care of incarcerated mentally ill offenders. Finally, the above named leaders were active participants in the local MHSA planning process.

## SECTION V. PROBABILITY OF SUCCESS

**A.    LIKELIHOOD OF SUCCESS**

In the space below, describe the likelihood that the project would succeed due to the proven effectiveness of its design (evidence-based treatment model) with the target population. Include research data.

Pena/ 00035

The proposed MIOCR Project will reduce days in custody settings and reduce recidivism rates among mentally ill offenders. In addition, these project elements are expected to achieve the following outcomes: (1) reduce utilization of emergency and inpatient psychiatric services; (2) increase enrollment in health benefits; (3) increase participation and success in substance abuse recovery programs; and (4) increase housing stability and social support networks. The likelihood of achieving success is greatly enhanced because the project will build on successful, current program practices and incorporate evidence-based, positively evaluated processes and service models to address existing gaps in the current service system.

The MHTC has demonstrated that mentally ill defendants can maintain sobriety, function in the community, reduce recidivism, and enhance public safety. Begun as a pilot project, the MHTC now meets five days per week. Since its inception in 1998, 900 participants have graduated. A study reviewing the progress of the MHTC was conducted in April 2001. A careful review of case files of open MHTC participants to those of 56 graduates revealed a significant cost savings to the public of $395,655 in jail days avoided and improved public safety through lowered number of rearrests.

A two-year Bureau of Justice Assistance (BJA) grant supported augmented case management services to 130 MHTC clients. The increased one-on-one assistance and support led to substantially greater compliance with treatment and court orders than the general MHTC population. Approximately 80% of the BJA pilot participants were able to obtain housing compared to only 58% of MHTC clients. Furthermore, only 17% of BJA project participants (out of the 130 total participants) were rearrested on new charges, contrasted with the 22% rearrest rate of all MHTC participants. Finally, 73% of the BJA project participants have remained clean and sober (Santa Clara County report to the US Dept. of Justice, BJA, 1/31/05). It is fully expected that the proposed MIOCR

Pena/ 00036

Project service augmentations will produce similar but further improved outcomes.

With access to additional services and the ability to serve clients for longer periods of time and until greater stability has been achieved, PALS will be an essential contributor to overall MIOCR Project success. When the previous MIOCR funding ended, the Board of Supervisors received strongly supportive letters on behalf of continuation of PALS from the Superior Court, MHTC, Public Defender, San Jose Police Department Crisis Intervention Team, NAMI, the County's Homeless Coordinator, criminal defense attorneys, former clients, families of clients, and others.

A client wrote, "I was given the opportunity to take part in the PALS program when I was released from jail. They came to see me when I was incarcerated and they have been a big help ever since. If they had not helped me when I was released I would not have been able to handle all the stress from the courts and probation. If it wasn't for them I would have been violated and I would be back in jail. They also made sure that I wasn't overwhelmed with all the things the county wants you to do. They are great moral support as well. PALS program helped me to get my life back on track!"

Superior Court Judge Sharon Chapman wrote, "... Without the immediate connection upon release (to counseling and other services), SMI offenders are at risk of committing further violence against the victim. PALS intensive case management and services has been exceptional and a key component in reducing this risk."

Deputy Public Defender Peggy Banks, a public defender for 25 years with the majority spent representing mentally ill defendants, wrote, "PALS is able to stop the ongoing cycle of release and arrest by aiding these persons immediately upon their exit from the jail. My experience has shown that my clients who are in the PALS have a far greater likelihood of complying with the terms of probation and follow through with mental health treatment."

Pena/ 00037

ACT for Mental Health has been in successful operation for 51 years. It operates as a therapeutic social community, with educational and clinical adjuncts. ACT fills a critical need of MHTC and PALS for social support and recovery services.

Health Realization is recognized by NIDA as a "Promising Program," because it is based on good theory and results can be replicated. Positive program outcomes have been documented through eight evaluations, including one study conducted by Santa Clara University last year of juveniles using HR. In addition, a 2002 pre/post self assessment of adult male offenders conducted by DADS program evaluation staff, showed a significant decrease in self-assessed levels of anxiety, significant increase in general positive affect (feelings of well-being), and significant increase in feelings of belonging. Significant behavioral changes were noted by correctional officers and by an independent evaluator.

A 2001 study conducted through a large community mental health program, Alliance for Community Care, of clients diagnosed schizophrenia, bipolar disorder and major depression showed that three months after HR training the treatment group had significant increases in positive affect and self-efficacy and significant decreases in anxiety and depression. Similar positive results were found by a 2001 study of HR at the County's Correctional Center.

Program staff will be trained in Motivational Interviewing and Cognitive Behavioral Therapy. A strong emphasis will be placed on continuing education in best practices and program fidelity through the MHSA-funded Learning Partnership.

Cultural competency will be a cornerstone of all MIOCR Project elements consistent with the expertise, abilities and attitudes of the current MHTC Team and PALS Team who are ethnically and linguistically reflective of the populace they serve. All MIOCR staff and contract providers will be required to demonstrate cultural

Pena/ 00038

competency in assessment and treatment, including the ability to formulate treatment plans that are culturally sensitive to the individual and family's concept of health and illness and deliver culturally competent treatment interventions. All staff completes in-service training in culturally competent service provision.

For the past decade, Santa Clara County's MHD and DADS also have been recognized for their needs assessment and research/evaluation efforts. Their departments and research divisions have successfully completed several projects that have significantly advanced Santa Clara County's cost-effectiveness, culturally competent service system, services research, and program planning and development. All services provided by the Departments and their contracted programs are entered into a data base, which maintains client information, clinical information (diagnoses and functional assessment), quality compliance, and review information related to treatment plans and types and dates of service delivery. MHD provider services are evaluated through the MHD Performance Evaluation system that has recently implemented annual provider performance evaluation reports. The MIOCR Project will add .5 FTE health care analyst II to assist in tracking outcomes through its own databases as well as to respond fully to CSA data collection and reporting requirements.

The MIOCR Project design has been carefully crafted by a broad collaborative that includes all key partners, is based on consensus decisions, responds specifically to gaps in existing services, has received a pledge from all partners of ongoing participation in project implementation and oversight, and will be the recipient of a significant amount of complementary, matching services.

**B.    PAST SUCCESS**

In the space below, describe past successes by the applicant in implementing and managing grant-funded projects (state and/or federal).

Pena/ 00039

Both applicant and designated agencies have experience in successfully managing grants and contracts. By designation of the Department of Corrections, the Mental Health Department will provide fiscal oversight and grant administration. The two departments will establish all requirements and responsibilities through a formal MOU. The Mental Health Department Administration will manage the grant, and has extensive experience in the fiscal management of grants and has responsibility for managing revenue from the state and federal governments, the County General Fund, fees for service, and numerous grants and other sources. Its fiscal operations are subject to periodic audits by the County's Auditor Controller, the California Department of Mental Health, the California Department of Finance, various grantors, and the federal government. All of its records are available and open for public inspection. The MHD has extensive experience in program management and the reporting, record maintenance, data collection and analysis of contracts and programs. The MHD has received numerous other state and federal grants, such as Substance Abuse and Mental Health Services Administration (SAMHSA), Projects for Assistance in Transitions from Homelessness (PATH), Juvenile Justice Crime Prevention Act (JJCPA), and FIRST 5.

## C.    TIMELINE OF ACTIVITIES

Use the table below to list project start-up/implementation activities and anticipated timelines for the 18-month grant period. If more space is needed, extend the table.

| Project Activity | Timeline (month(s)/year) |
|---|---|
| Hold first meeting of the MIOCR Project Steering Committee | January 2007 |
| Formalize departmental Memoranda of Understanding | January 2007 |
| Release RFP for MHTC-based contract services | January 2007 |
| Formalize contract with ACT for Mental Health, Inc. | February 2007 |
| Formalize agreed-upon, interagency project protocols | February 2007 |
| Formalize MHTC, PALS and ACT coordination procedures | February 2007 |
| Formalize service referral criteria and process | February 2007 |
| Recruit, screen and hire project staff | January-April 2007 |
| Select service provider/s and finalize contracts | April 2007 |

Pena/ 00040

| Initiate Motivational Interviewing training for staff and contractors | April 2007 |
| Initiate CBT training for staff and contractors | April 2007 |
| Begin serving clients using expanded MIOCR Project resources | May 2007 ongoing |
| Hold quarterly MIOCR Project Steering Committee meetings | Ongoing |
| Develop data tracking and evaluation procedures per CSA directives | January2007 ongoing |
| Respond to all CSA fiscal and programmatic reporting requirements | ongoing |

## SECTION VI: PROJECT BUDGET

**A.     BUDGET LINE ITEM TOTALS:**  Please fill out the following table for the project's proposed budget.  Although line items may not reflect those used by counties, the CSA uses these line items for its invoices, so please insert amounts where they fit best.  Amounts must be whole dollars only.  Applicants must provide a 25 percent match of the grant funds requested.

| LINE ITEM | GRANT FUNDS | CASH MATCH | IN-KIND MATCH | TOTAL |
|---|---|---|---|---|
| 1. Salaries and Benefits | $235,914 | $0 | $434,209 | $670,123 |
| 2. Services and Supplies | $104,360 | $0 | $70,187 | $174,548 |
| 3. Professional Services | $94,076 | $0 | $198,390 | $292,466 |
| 4. CBO Contracts | 1,028,800 | $0 | $2,328,967 | $3,357,767 |
| 5. Indirect Costs | $36,850 | $0 | $0 | $36,850 |
| 6. Fixed Assets/Equipment | $0 | $0 | $0 | $0 |
| 7. Other | $0 | $0 | $0 | $0 |
| TOTAL | $1,500,000 | $0 | $3,031,753 | $4,531,753 |

**B.     LINE ITEM DETAILS:**  In the space below each line item, describe how grant funds and local match funds would be used to implement the project.  Please provide sufficient detail to assess the nexus between the requested grant funds and the proposed project.

**1. SALARIES AND BENEFITS:**

**Grant positions for the PALS/MHTC Programs Include:**

| | | |
|---|---|---|
| 1.0 FTE Psychiatric Social Worker | Jul start, $80,588 salary; $37,710 benefits | $118,298 |
| 0.5 FTE HC Program Analyst II | Oct start, $29,880 salary; $14,046 benefits | $43,926 |
| 1.0 FTE Community Worker | Jul start, $46,449 salary; $27,241 benefits | $73,690 |

**In-Kind positions for the PALS Program:**

| | | |
|---|---|---|
| 1.0 FTE Program Manager I | $88,505 salary and $39,366 benefits | $127,871 |
| 2.0 FYE PSW/MFT | $130.889 salary and $61,632 benefits | $192,521 |
| 1.0 FTE Community Worker | $46,449 salary and $27,241 benefits | $73,690 |
| 0.5 FTE Administrative Asst | $25,777 salary and $14,350 benefits | $40,127 |
| | | $670,123 |

Pena/ 00041

MIOCR funds will be used to add 1.5 FTE additional direct clinical and case management staff to the PALS program. This will complement the 4.5 FTE staff currently working in the program. The Health Care Analyst II will set up, collect, summarize and prepare reports on program data as required by CSA from all MIOCR funded programs.

## 2. SERVICES AND SUPPLIES:

Grant funds will be used to pay for psychiatric medications estimated at $57,692 and lab testing at $23,077 for MHTC and PALS contracted treatment team; office supplies and other program operating expenses estimated at 10% of personnel cost ($23,591). In-Kind funding covers PALS Program transportation and other operating expenses at $70,187.

## 3. PROFESSIONAL SERVICES:

**Benefit Assistance ($37,204)**. Grant funds will include costs associated with payment for through a qualified benefit assistance provider that will be selected through an RFP process. Current contracts for similar services are paid at $350 per successful case. The proposal estimates that 106 individuals will be successfully enrolled in health insurance phased over 18 months.

**Health Realization Training ($56,872).** Grant funds will include cost of Health Realization training that will be obtained through contracts with professional trainers for staff training on the HR model @ $225 per hour x 36 hours x 2 sessions ($16,200), in addition to 239 two-hour weekly client classes @ $170.18 per class ($40,630).

**In-Kind HR, CBT and Motivational Interviewing Training ($198,390).** In-kind funding will cover 578 additional HR two-hour weekly client classes @ $170.18 (total $98,430); and approximately 500 hours of professional training and consultation for

staff from all MIOCR programs and partner agencies in Health Realization, Cognitive Behavioral Therapy and Motivational Interviewing estimated at $200 per hour for.

## 4. COMMUNITY-BASED ORGANIZATIONS:

**Therapeutic Housing ($330,000)**. Grant funds will be use to contract for 30 Therapeutic Housing Units (beds) @ $11,000 per bed per year.

**Mental Health Treatment Services ($598,800)**. Grant funds will be used to contract with a community-based mental health organization for the provision of psychiatric medication treatment (1.5 FTE MD), CBT treatment (1.0 FTE MSW/MFT), and mental health case management services (1.0 FTE case manager) to 200 dual diagnosed mentally ill offenders referred through MHTC and PALS.

**ACT, Inc. Self Help Center ($100,000)**. Grant funds will be used to contract with a non-profit self-help center for peer support and vocational training. Contract will pay for program management staff ($30,000), a food service training coordinator ($15,000), maintenance/community service coordinator ($8,000), two peer counselors ($16,000), two trainee stipends ($16,000), food supplies ($10,000) and administrative overhead ($5,000).

**In-Kind Housing and MHSA Full Service Partnerships ($2,328,967)**. In-kind support includes PALS program housing funds ($81,000) and MHSA funded Jail Aftercare Full Service Partnership ($2,409,559 offset by $161,592 MediCal revenue).

## 5. INDIRECT COSTS: This total may not exceed 10% of the grant funds.

Grant will fund $36,850 indirect costs budgeted at 15.62% of personnel cost based on FY06 actual Mental Health expenses.

## 6. FIXED ASSETS/EQUIPMENT:

None

## 7. OTHER

Pena/ 00043

None

## C.    FUNDING REQUEST

In the space below, explain why the amount of funds requested is reasonable and appropriate given the proposed project's design and scope.    If applicable, describe any other funding streams that may be used to support the proposed project.

The grant funds will support a comprehensive set of services that will fully serve 600 new mentally ill offenders, at an average MIOCR investment of $2,500 per each newly served offender. Services will include treatment, medication, lab services, housing, intensive case management, self-help and vocational support. The funding will be augmented with $3,031,753 in county, MediCal and new MHSA funds and will serve a total of 1500 mentally ill offenders in Santa Clara County. The program will serve as a model for large urban counties with significant numbers of unserved and underserved mentally ill offenders and will achieve outcomes in reduction of annual jail days utilized, reductions in annual rearrest rates, increased client enrollment in health benefits, and increased utilization of self-help and recovery services.

## SECTION VII: PRIORITY CONSIDERATION

THIS SECTION IS ONLY TO BE COMPLETED BY THE 15 APPLICANTS ELIGIBLE FOR PRIORITY CONSIDERATION. PLEASE REFER TO THE PROPOSAL REVIEW AND RATING PROCESS SECTION OF THE GRANT APPLICATION PACKET FOR MORE INFORMATION ON PRIORITY CONSIDERATION ELIGIBILITY.

## A.    MIOCR II PROJECT DESCRIPTION AND SUCCESS

In the space below, briefly explain what the county's demonstration project involved and whether it was successful in reducing recidivism among mentally ill offenders.  If it was successful, support that assertion with quantitative or qualitative data. If it was unsuccessful, explain why.

The MIOCR proposal funded by the Department of Corrections was the Providing Assistance with Linkages to Service Program (PALS), an intensive, short-term case management program that directly links seriously mentally ill offenders with community services upon release from jail.  MIOCR funding provided $747,312 for the

Pena/ 00044

grant period from 07/01/01 through 06/30/04 and funded 4.0 FTE's positions. The program originally served 120 mentally ill offenders per year. The program continues today and is fully funded by county general fund dollars and provides service to 180 per year.

PALS provides intensive discharge planning while mentally ill offenders are in custody and continues with assistance through the 60-day period post release. The program aims to decrease criminal justice recidivism by increasing offender engagement with services and interventions upon jail release. Staff and peer counselors provide case management, enhanced prerelease planning, transportation, linkage to housing assistance, benefit assistance, and mental health and substance abuse services. Critical service components include ensuring clients receive their initial prescription for psychotropic medication, accompanying clients to mental health to appointments, court dates and probation appointments, ensure linkage with substance abuse treatment services including the identification of a sponsor through the Bridging the Gap Program.

Program evaluation involved both qualitative and quantitative methods including a true experimental design with random assignment to either treatment as usual or to PALS. Program staff also conducted personal interviews with each participant at 6 and 12-month intervals. Finally, programmatic successes and lessons learned about program impact and delivery were evaluated by case vignettes illustrating both successful and unsuccessful cases systematically documented by program staff.

PALS Program participants involved in the MIOCR evaluation were predominantly male, typically in they're mid 30's with a 10-year history of involvement in the criminal justice system with multiple arrests and bookings. PALS program participants were ethnically diverse with 48% Caucasian, 24% Latino, 14.5% African

Pena/ 00045

American, and 13.1% Asian American. Participants' mental health status diagnosed using the DMS-IV showed the following predominant forms of serious mental disorders: psychotic disorders/schizophrenia 66%, major depression 28%, bipolar spectrum disorders 30.1%. Participants tended to live in temporary housing or be homeless at time of qualifying arrest. Most participants were unemployed but reported receiving very few entitlements. Participants suffered from a range of problems including substance misuse, loss of social interpersonal supports and resources, and other behavioral problems that significantly interfered with engagement and ongoing linkage to treatment and social services.

The PALS program effectively linked designated Seriously Mentally Ill (SMI) offenders to services in the community immediately upon release and demonstrated short-term effects in the 60-day and six-month follow-up periods post release. PALS participation increased the likelihood that clients would receive significantly more intensive and/or frequent services in the areas of case management, mental health, psychiatric medication management services, vocational and transportation services, treatment plan development, contact with mental health courts/legal personal. At both six months and one-year follow-up, PALS clients reported significantly more positive experiences with respect to support, access to mental health services, medication services, transportation assistance, emotional support from PALS staff and service linkage. Services the PALS Clients felt were most helpful involved support from staff, transportation assistance, emotional support and availability of PALS staff.

However, at the one-year mark, none of the significant differences in service engagement were sustained. Additionally, there were no significant differences found for criminal justice involvement measured as arrests, bookings, and convictions at 60 days, 6 months or 1-year post release.

Santa Clara County MIOCR RFP –11/3/2006

Pena/ 00046

On the basis of these findings PALS demonstrated limited ability to have enduring impact on long-term engagement in mental health and social services and did not reduce criminal justice involvement and costs. While 60-day short-term support and linkage approach is promising, there is a need for more enduring long-term support that the community system does not provide. Mentally ill offenders present with lifelong behavioral problems and the debilitating effects of untreated/under treated mental illness, substance abuse, poor or degraded social and interpersonal support systems, physical health problems and financial problems. They require ongoing treatment and sustained social support to establish new lifestyles including stable housing, personal health and hygiene, peer support, self-help recovery, vocational activities and restitution/community service. Given the multiple problems and complexities of this population, a more sustained, intensive effort is needed to effectively impact the ongoing, complex mental health, psychosocial, and behavioral needs of this population.

**B.    RESPONSE TO BUDGET REDUCTION**

In the space below, describe how the county responded to the budget reduction during the final year of the three-year grant period. For example, did the county leverage other funding streams to maintain all aspects of the project, reduce the scope of its project, or reduce the size of its target population?

The Santa Clara County Board of Supervisors recognized the value of PALS in providing critical custody release services, despite the findings of the evaluation on the longer-term impact on recidivism. The MIOCR Steering Committee members (corrections, court, public defenders, district attorneys, custody health, mental health) advocated for continued funding of the program, even in light of significant reductions to community mental health services. In response, the Board of Supervisors approved reallocation of budgeted funds through the MHD to continue the PALS Program. Once the experimental period of the program ended, the scope of the program remained intact with slight modifications to diagnosis eligibility and data collection.

Pena/ 00047

## C.    PROJECT SUSTAINABILITY

In the space below, describe what components of the project the county sustained after the grant period ended, how much money was dedicated to that effort, and what funding sources were used to sustain the effort. If the project was not sustained, explain why.

Following the grant period the PALS Program was kept intact at initial funding

levels. The FY07 budget for the PALS Program is $567,833. In addition, the PALS

Program Manager has been successful in obtaining small grants from local foundations

to support client needs for personal necessities including clothing and personal care

items.    The current MIOCR proposal will revise and augment the PALS program to

establish longer term of services and provide access to newly dedicated resources for

mentally ill offenders including court-based treatment, housing, benefit assistance, self-

help and vocational support.

Pena/ 00048