| | |
|---|---|
| PRISON LAW OFFICE | ROSEN BIEN & GALVAN, LLP |
| DONALD SPECTER, Bar No. 83925 | MICHAEL W. BIEN, Bar No. 96891 |
| STEVEN FAMA, Bar No. 99461 | JANE E. KAHN, Bar No. 112239 |
| SARA NORMAN, Bar No. 189536 | AMY WHELAN, Bar No. 215675 |
| ALISON HARDY, Bar No. 135966 | LISA ELLS, Bar No. 243657 |
| REBEKAH EVENSON, Bar No. 207825 | MARIA V. MORRIS, Bar No. 223903 |
| 1917 Fifth Street | 315 Montgomery Street, 10th Floor |
| Berkeley, CA 94710 | San Francisco, CA 94104 |
| Telephone: (510) 280-2621 | Telephone: (415) 433-6830 |
| | |
| K & L GATES LLP | BINGHAM, McCUTCHEN, LLP |
| JEFFREY L. BORNSTEIN, Bar No. 99358 | WARREN E. GEORGE, Bar No. 53588 |
| EDWARD P. SANGSTER, Bar No. 121041 | Three Embarcadero Center |
| RAYMOND E. LOUGHREY, Bar No. 194363 | San Francisco, CA 94111 |
| 55 Second Street, Suite 1700 | Telephone: (415) 393-2000 |
| San Francisco, CA 94105-3493 | |
| Telephone: (415) 882-8200 | |

THE LEGAL AID SOCIETY -
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>　　Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　Defendants | No. Civ S 90-0520 LKK-JFM P<br>**THREE-JUDGE COURT**<br>No. C01-1351 THE<br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>　　Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　Defendants | **PLAINTIFFS' OPPOSITION TO LAW ENFORCEMENT INTERVENORS' MIL NO. 1 (RE TESTIMONY OF DR. AUSTIN)** |

## I. INTRODUCTION

Law Enforcement Intervenors' motion in limine to exclude Dr. Austin's September 25, 2008 rebuttal report and rebuttal testimony should be denied. The motion asks the Court to exclude Dr. Austin's report because the intervenors contend Dr. Austin should have produced supporting documents in a different *format*. But all documents responsive to the document requests were produced – Law Enforcement Intervenors do not even contend that any documents were improperly withheld. The motion also asks the Court to exclude Dr. Austin's report because Dr. Austin did not produce drafts of his report. However, there were no drafts to produce. Dr. Austin drafted the report on his computer and did not separately save "drafts" every time he made a change to the report, and courts have consistently approved this methodology. Moreover, Law Enforcement Intervenors do not even make a claim that they were prejudiced, a prerequisite for the harsh remedy they seek. Finally, the motion asks the Court to exclude rebuttal testimony that this Court specifically allowed in its September 5, 2008 Order. That request should be rejected as well.

## II. ARGUMENT

**A.    Plaintiffs produced all documents Dr. Austin relied upon, considered or referred to, and all relevant communications with counsel.**

Plaintiffs have produced all documents responsive to defendants' and intervenors' document requests to Dr. Austin, amounting to thousands of pages of documents. Declaration of Rebekah Evenson In Support of Plaintiffs' Opposition to Law Enforcement Intervenors' MIL No. 1 ("Evenson Decl."), ¶¶ 4-6, Exhs. B-C; Barlow Supp. Decl., (*Plata* Docket No. 1607), Exh. D at 379-380. First, plaintiffs produced two banker's boxes full of documents in advance of Dr. Austin's September 19, 2008 deposition. Evenson Decl., ¶ 4. Next, at Dr. Austin's October 15, 2008 deposition, plaintiffs produced hundreds more pages of documents related to Dr. Austin's September 25, 2008 rebuttal report. Evenson Decl., ¶¶ 4-6, Exhs. B-C.[1] The documents produced included all documents that Dr. Austin relied upon,

---

[1] Plaintiffs produced documents even though Law Enforcement Intervenors provided less than two weeks' notice of Dr. Austin's October 15 deposition and document request. Evenson Decl., ¶¶ 4, Exh. B. Two documents were not available in hard copy, and plaintiffs' counsel informed Law Enforcement Intervenors' counsel of that fact in advance, and provided information about how to obtain

1  considered or referred to in his reports and all communications between plaintiffs and Dr. Austin (with
2  the exception of those communications relating to settlement negotiations, per agreement between the
3  parties). Evenson Decl., ¶ 4; Barlow Supp. Decl., Exh. D at 379-380. Law Enforcement Intervenors
4  marked Dr. Austin's document production as an exhibit to his October 15, 2008 deposition. Evenson
5  Decl., ¶¶ 4, 6, Exhs. A at 310 and C.

6      Dr. Austin has also submitted to two days of deposition in this matter, and defendants and
7  defendant-intervenors have had ample opportunity to question him regarding the documents he
8  produced, and the basis for his opinions. Evenson Decl., ¶ 3.

9      Law Enforcement Intervenors do not contend that any documents were withheld, but instead
10 complain about the format of the production. They argue that Dr. Austin did not give them the
11 documents in the manner in which he kept the documents (i.e., in a stack on his floor, or in computer
12 files). MIL at 2. But the document request did not seek the documents in the manner in which they were
13 stored – it merely sought responsive documents "for copying and inspection." Barlow Decl., Exh. B.
14 Plaintiffs fully complied by producing copies of all responsive, non-privileged documents that had not
15 previously been produced. Evenson Decl., ¶¶ 4-6, Exhs. B-C; Barlow Supp. Decl., Exh. D at 379-380.[2]
16 Law Enforcement Intervenors were able to question Dr. Austin about these documents (and indeed
17 devoted most of the deposition to questions about the documents), and do not even claim to have
18 suffered prejudice as a result of the form of production. Accordingly, the motion to exclude the rebuttal
19 report should be denied.

---

22 electronic copies. Evenson Decl., ¶ 4.

23   [2] Dr. Austin is an expert criminologist, and so his opinions are based on his extensive academic
24 and practical experience in the field, including his work assisting states across the country to safely
reduce their prison populations. Dr. Austin produced every report or research document that he relied
25 upon, considered or referred to in his reports, and every nonprivileged communication with counsel.
26 Evenson Decl., ¶¶ 4-6, Exhs. B-C; Barlow Supp. Decl., Exh. D at 380. That is all that was requested or
required. Law Enforcement Intervenors seem to contend that Dr. Austin should have produced the entire
27 contents of his computer hard drive because they might "relate" to prison population reductions in
general. That would be neither responsive to the document requests nor appropriate under the discovery
28 rules.

**B.    There are no drafts of Dr. Austin's September 25, 2008 report**

Law Enforcement Intervenors also complain about the manner in which Dr. Austin drafted his rebuttal report. But Dr. Austin followed a typical, acceptable method for drafting his report. He wrote the short (5½ page) report on a computer over a period of approximately one week, and as he added to the report or corrected typos, he continued saving the document under the same file name. Barlow Supp. Decl., Exh. D at 374. Dr. Austin did not maintain any electronic or hard copy drafts of his report.[3] *Id.* Thus, there were no drafts to be produced. (Plaintiffs produced drafts that did exist of Dr. Austin's earlier reports in response to the September 19, 2008 deposition subpoena. Evenson Decl, ¶ 4.)

Law enforcement intervenors improperly assume that because draft reports are discoverable, the failure to *create* draft reports is sanctionable. But it is well recognized that there is no duty to artificially create and separately save "drafts" when an expert writes a report in a single computer file. In *Teleglobe Comm'ns Corp. v. BCE, Inc.,* 392 B.R. 561, 573 (Bankr. D. Del. 2008), the court specifically held that there is no duty to preserve or produce drafts saved-over on computer files, and rejected arguments analogous to those made by the Law Enforcement Intervenors:

> because most experts now draft their reports on the computer, adding to and subtracting from the document, it would be impractical to require the production of all drafts. For example, any time an expert added or subtracted a section, a paragraph, a sentence or even a word, the Defendants' reading of the Rules would require the expert to save the draft and preserve it for production later. This is a completely unworkable reading of the Rules and would mire the courts in battles over each draft of an expert's report. The Court concludes that this interpretation comports with neither the plain meaning of the Rule nor its policy.

Other courts have reached the same conclusion. *St. Tammany Parish Hosp. Serv. Dist. No. 1 v. Travelers Property Cas. Co.*, 250 F.R.D. 275 (E.D. La. 2008) (rejecting motion to exclude expert report where expert "did not submit multiple drafts of his report to Plaintiff; instead, he worked within one draft, and submitted that singular work to Plaintiff upon completion."); *Univ. of Pittsburgh v. Townsend*, No. 3:04-cv-291, 2007 WL 1002317, at *3 (E.D. Tenn. Mar. 30, 2007) (rejecting contention that expert

---

[3] Pursuant to request of plaintiffs' counsel, Dr. Austin saved his report onto a "server" that was available to both Dr. Austin and plaintiffs' counsel. *Id.* at 374-75. This is a simple method for individuals in different parts of the country to review the same document.

should not have worked from only one draft of report, and finding that Rule 26(a)(2) does not "impose an 'affirmative duty' upon an expert to preserve 'all documents,' particularly report drafts.... Nor does Rule 26(a)(2) require that draft reports be disclosed as part of an expert disclosure."); *McDonald v. Sun Oil Co.*, 423 F. Supp. 2d 1114, 1122 (D.Or. 2006) (concluding that Rule 26 "does not require the production of an expert's working notes" and that "[i]t was reasonable for the experts to assume that retention of th[e] notes [at issue] was unnecessary" because experts "are not 'required to retain every scrap of paper' created in preparing their opinions"). In fact it is entirely common – and indeed recommended – for experts not to create multiple drafts, and to communicate orally with counsel. *See, e.g., Id.; see also* Rutter, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Ch. 11(II)-D, §11:403 (2008) ("PRACTICE POINTER: Ask your testifying experts *not to prepare* written reports (including "draft" or "tentative" reports, including notices on a computer) until *after* they confer with you personally or by phone") (emphasis in original); *Adler v. Shelton,* 778 A.2d 1181, 1192 (N.J. Super. Ct. 2001) (concluding that while drafts of expert reports are discoverable, "[e]xperts familiar with the litigation process usually destroy their draft reports and the rules do not forbid this").

     Law Enforcement Intervenors' contention that Dr. Austin had some obligation to create and save separate drafts of the report would also be counterproductive. As the *Teleglobe* court acknowledged, "[i]t would be impossible for the Court to require that all drafts of expert reports be produced because it might require that an expert retain and print his report every time a single change was made to it. This is not required to understand the basis for an expert's opinion and would impede rather than aid cross-examination of the expert." *Teleglobe,* 392 B.R. at 580.

     Law Enforcement Intervenors' argument that it was sanctionable error not to separately save drafts relies upon a single case where an expert created and then destroyed communications and draft reports that had circulated among experts and between experts and counsel, despite a pending discovery request specifically seeking those documents (*Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277 (E.D. Va. 2001)). But the *Trigon* decision specifically distinguishes the spoliation at issue in that case from the situation at issue here, acknowledging that "[t]here is no need to decide in this case whether a testifying expert is required to retain, and a party is required to disclose, the drafts prepared solely by that expert while formulating the proper language in which to articulate that expert's own, ultimate opinion arrived at by

the expert's own work or those working at the expert's personal direction. There are cogent reasons which militate against such a requirement but the issue is not presented here . . ." 204 F.R.D. at 283 n.8. Similarly, the court in the *St. Tammany* case distinguished the "intentional destruction of evidence for [the] purpose of depriving opposing parties of its use" (sanctionable spoliation) and the situation where an expert "incorporated the notes into his Rule 26 report, and then discarded the notes after they were no longer needed" (not-sanctionable). *St. Tammany*, 250 F.R.D. at 277.

The *Trigon* court's finding of sanctionable conduct was based on the *spoliation* of the documents: "[t]o establish a claim of spoliation, a movant must show that the adverse party had a duty to preserve the allegedly spoiled documents and that the documents were intentionally destroyed." *Trigon,* 204 F.R.D. at 286. Other courts require a showing of bad faith conduct in destroying the documents. *See, e.g., St. Tammany*, 250 F.R.D. at 277. But neither showing has been made here. Law Enforcement Intervenors do not claim spoliation and make no effort to meet the standard to demonstrate it. At most, they argue that the Court should presume that the decision to create only one draft was intentional and "made for the purpose of precluding questions regarding differences between the drafts and the final report." MIL at 4. But no such inference can be drawn by Dr. Austin's use of a typical, court-sanctioned method for drafting his report. And while Law Enforcement Intervenors claim some duty to prepare drafts arose when they propounded document requests seeking drafts, those document requests were propounded only *after* the September 25, 2008 report had already been finalized and served. Barlow Decl., Exhs. A and B. (And in any event, a document request does not create the obligation to prepare a document that does not exist).

Nor is it relevant that plaintiffs' counsel was able to review Dr. Austin's work in progress and discuss it with Dr. Austin orally. Even the Rutter Guide suggests that attorneys communicate orally with expert witnesses in order to minimize the number of drafts of expert reports. *See* Rutter, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, *supra*.

Dr. Austin's drafting process and oral communications with counsel – which follow recommendations made by courts and the leading treatise – hardly constitutes "intentional" destruction of evidence or willful bad faith conduct of the type that warrants sanction. Accordingly, the motion in limine should be denied.

**C.    Intervenors suffered no prejudice from the lack of drafts**

Even if Dr. Austin had intentionally destroyed drafts (which he did not), no sanction would be warranted because Law Enforcement Intervenors have failed to demonstrate any prejudice. It is improper to preclude expert testimony where there has been no prejudice. *See Physicians Dialysis Ventures, Inc. v. Griffith,* No. 06-2468(MCC), 2007 WL 3125197, at *12-13 (D.N.J. Oct. 24, 2007) (rejecting challenge to expert testimony even though expert destroyed notes of conversations with counsel pursuant to document retention policy, because expert "was not on notice that [opposing party] wanted her notes" and there was "no evidence that [opposing party] ha[d] been prejudiced"); *Teleglobe*, *supra*. Even the Law Enforcement Intervenors' cases affirm that basic principle. *See Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.,* 412 F.3d 745, 750-52 (7th Cir. 2005) (cited by Law Enforcement Intervenors at MIL at 3) (overturning order excluding testimony of expert who had intentionally destroyed interview notes because sanction was too severe in light of prejudice suffered).

Yet Law Enforcement Intervenors do not even contend that they were prejudiced by the lack of drafts of Dr. Austin's rebuttal report. And any such argument would fail. Dr. Austin submitted to two days of deposition. Before they took his second deposition on October 15, 2008, the Law Enforcement Intervenors had the benefit of reviewing not only the transcript of Dr. Austin's first day of deposition testimony, but also the two-plus boxes of documents that Dr. Austin produced (including all documents that Dr. Austin relied upon, considered or referred to in his various reports and all communications between plaintiffs and Dr. Austin regarding those reports).[4] At the October 15 deposition, counsel inquired extensively into the bases of Dr. Austin's opinions, the reports and research he had relied upon, and even the research cited by Law Enforcement Intervenor's own experts. In short, counsel has had ample opportunity to explore Dr. Austin's expert opinions, and neither claims nor demonstrates any

---

[4]    In addition, defendant CDCR employed Dr. Austin as one if its experts on CDCR's "Expert Panel on Adult Offender Reentry and Recidivism Reduction Programs" (*see* http://www.cdcr.ca.gov/news/Panel_Members.html (site last visited October 21, 2008)). The panel came to many of the same conclusions that Dr. Austin makes in his expert reports, including conclusions regarding the need to reduce the prison population and methods for safely reducing it. Defendants have had ample opportunity to question Dr. Austin and the other experts about the bases for the opinions set forth in the Expert Panel report.

1  prejudice from the lack of drafts.[5]

2  **D.   Dr. Austin's rebuttal testimony should not be restricted**

3  Pursuant to this Court's September 5, 2008 Order (*Plata* Docket No. 1449), Dr. Austin's
4  September 25, 2008 report was entitled to rebut the September 15, 2008 reports of Jerry Dyer and Jerry
5  Powers. Dr. Austin's rebuttal report did just that, and during Dr. Austin's October 15, 2008 deposition,
6  Law Enforcement Intervenors asked him extensive questions about his rebuttal, and about the studies
7  upon which Mr. Dyer in particular relied. Evenson Decl., Exh. A at 399-414. There is nothing to
8  prevent Dr. Austin from testifying about these matters at trial.

9  After Dr. Austin had issued his September 25, 2008 rebuttal report, Law Enforcement
10 Intervenors produced documents that Mr. Dyer and Mr. Powers considered or relied upon, but did not
11 cite in their reports. MIL 1 at 5. Some of the documents were produced as little as two days before Dr.
12 Austin's deposition. *Id.*

13 Law Enforcement Intervenors argue that because Dr. Austin had not reviewed the documents that
14 Mr. Dyer and Mr. Powers produced, Dr. Austin should be barred from introducing *any* testimony about
15 *either* report. But the intervenors cite no law to support this extreme position, and we are aware of none.
16 The intervenors have not challenged the contents of Dr. Austin's rebuttal report, which addresses the
17 substance of the Powers and Dyer reports. Under this Court's September 5, 2008 order, Dr. Austin is
18 entitled to testify about these matters.

19 Law Enforcement Intervenors further argue that Dr. Austin should not be allowed to testify about

---

[5] The Law Enforcement Intervenors' accusation that plaintiffs' counsel *authored* Dr. Austin's report is wholly unfounded. Dr. Austin testified that he personally wrote his report. Evenson Decl., Exh. A at 483-484. Law Enforcement Intervenors' contention rests solely upon a document sent by plaintiffs' counsel to Dr. Austin in 2007 that set forth (in narrative form) Dr. Austin's background and qualifications, and then listed (in a numbered list) topics for Dr. Austin "to consider" including in his November 2007 report. Evenson Decl., ¶ 7, Exh. D. When asked about that document, Dr. Austin testified that he "may well" have drafted some of the information contained in that document – presumably pertaining to his background and qualifications. Barlow Decl., Exh. C at 40-41. But even if plaintiffs had drafted the paragraphs describing Dr. Austin's background and qualifications in the November 2007 report, that would hardly constitute "authoring" his report. On the substantive matters, plaintiffs' counsel did nothing more than to send a list of topics for Dr. Austin to consider. Defendants' contentions to the contrary should be stricken.

Pltfs' Opp to Law Enf. Intevenors MIL No. 1
Re Testimony of Dr. Austin
Case Nos. 90-00520; 01-1351                                7

the documents they produced because they did not have an opportunity to question Dr. Austin about those documents.  But nothing prevented Law Enforcement Intervenors from showing the documents to Dr. Austin at his deposition, and asking him about them.  (Indeed, Law Enforcement Intervenors started to do just that when they questioned Dr. Austin about some of the reports that Mr. Dyer had relied upon.  Evenson Decl., Exh. A at 399-414.)[6]  Having failed to even ask the questions, Law Enforcement Intervenors cannot now claim prejudice from their inability to get answers.

In any event, the intervenors do not identify the specific documents about which they seek to preclude Dr. Austin from commenting, which prevents a meaningful discussion about the admissibility of the testimony.  While plaintiffs do not expect Dr. Austin to testify about the Powers or Dyer documents during his direct examination, plaintiffs reserve the right to present any relevant rebuttal testimony.

### III.  CONCLUSION

For the foregoing reasons, Law Enforcement Intervenors' Motion in Limine No. 1 should be denied.

DATED: October 30, 2008

Respectfully submitted,

By: */s/ Rebekah Evenson*

Rebekah Evenson
Prison Law Office
Attorney for Plaintiffs in
*Plata v. Schwarzenegger*
and
*Coleman v. Schwarzenegger*

---

[6] Nor did anything prevent Law Enforcement Intervenors from producing the documents earlier, in time for Dr. Austin to include them in his rebuttal report.

Pltfs' Opp to Law Enf. Intevenors MIL No. 1
Re Testimony of Dr. Austin
Case Nos. 90-00520; 01-1351

8