PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99461
SARA NORMAN, Bar No. 189536
ALISON HARDY, Bar No. 135966
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARIA V. MORRIS, Bar No. 223903
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

K & L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY -
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>　　　　Plaintiffs,<br>　vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　　　Defendants | No. Civ S 90-0520 LKK-JFM P<br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>　　　　Plaintiffs,<br>　vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　　　Defendants | No. C01-1351 THE<br>**THREE-JUDGE COURT**<br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MIL NO. 7 (RE SUBSEQUENT REMEDIAL MEASURES)** |

## I. INTRODUCTION

The Court should deny Defendants' Motion in Limine No. 7, which asks the Court to exclude evidence of "subsequent remedial measures," because the evidence defendants seek to exclude simply does not fit within the parameters of Federal Rule of Evidence 407, and even if it did, the evidence is admissible under the broad exceptions to Rule 407.

## II. ARGUMENT

**A. Rule 407 does not apply in this case**

Federal Rule of Evidence 407 ("Rule 407") provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Defendants contend that plaintiffs should be barred from introducing evidence of 1) the Governor's Prison Overcrowding State of Emergency Proclamation ("Emergency Proclamation"); 2) Assembly Bill 900 ("AB 900"); and 3) the convening of CDCR's Expert Panel on Adult Offender Reentry and Recidivism Reduction Programs ("Expert Panel"). As we demonstrate below, this motion makes no sense in light of the facts of this case, and defendants' defenses.

1. Rule 407 only excludes evidence used "to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." F.R.E. 407. These are all elements relevant to proving liability or degree of culpability. But this three-judge court is convened to conduct a remedy proceeding, and neither liability nor culpability are at issue here. *See* 18 U.S.C. §§ 3636(a)(1), (3) (setting forth factors to consider in determining whether to issue prospective relief and prisoner release order). Accordingly, Rule 407 does not exclude any evidence in this matter.

Defendants attempt to shoehorn their motion into the rule by claiming that the Emergency Proclamation, AB 900 and the Expert Panel should not be used "to prove that the alleged constitutional violations in medical and mental health care do in fact currently exist, or that overcrowding is the primary cause of the alleged violations." Def's MIL No. 7 at 5. But proof of the existence of conditions,

Pltfs' Opp to Def's MIL No. 7
Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351

1

or evidence of the cause of those conditions, does not amount to proof of "culpable conduct" excludable under Rule 407. Accordingly, the rule does not apply.

        2. Rule 407 applies only to situations where remedial measure are taken *"after* an injury or harm allegedly caused by an event." F.R.E. 407 (emphasis added). Here, however, the constitutional violations continue and the injuries are ongoing, so the Emergency Proclamation, AB 900 or the Expert Panel recommendations were not "measures taken" *after* the injuries were suffered. Courts have regularly found that "remedial measures" taken before the "event" causing an injury do not fit within Rule 407's prohibition. *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989) (report developed prior to accident but issued one day after accident was not treated as a subsequent remedial measure because it was not a response to the accident); *W.E. Green v. Baca*, 226 F.R.D. 624, 635 (C.D. Cal. 2005) (Rule 407 did not provide a basis for the exclusion of reports because they were prepared prior to the incident that was the subject of the lawsuit); *City of Richmond, Virginia, v. Madison Management Group, Inc.,* 918 F.2d 438, 460 (4th Cir. 1990) (since the "event" at issue was the bursting of the pipe, it was not a violation of Rule 407 to admit evidence of remedial measures that occurred before the pipe bursted); *Bogosian v. Mercedes-Benz of North America, Inc.,* 104 F.3d 472, 481 (1st Cir. 1997) (Rule 407 "does not apply where, as here, the modification took place before the accident that precipitated the suit."); *Traylor v. Husqvarna Motor,* 988 F.2d 729, 733 (7th Cir. 1993) ("the problem with applying Rule 407 was . . . the fact that the remedial measures were taken before rather than after the 'event'"). There can be no "*subsequent measures*" where the constitutional violations are not yet alleviated, and thus Rule 407 does not apply in this case.

        3. Rule 407 applies only to measures "taken that, if taken previously, *would have made the injury or harm less likely to occur*." F.R.E. 407 (emphasis added). But any measures that the defendants have taken did not make the injuries suffered by plaintiffs "less likely to occur," since the health care provided in the prisons remains unconstitutional. Indeed, defendants argue strenuously that neither the Emergency Proclamation, AB 900, nor the Expert Panel were "directed at improving the delivery of medical or mental health care." Def's MIL No. 7 at 5. That being so, and since the harms alleged in this case arise from unconstitutional delivery of medical and mental health care, defendants have implicitly conceded they have taken no "subsequent measures" to "ma[ke] the injury or harm less likely to occur,"

Pltfs' Opp to Def's MIL No. 7
Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351                                    2

and Rule 407 does not apply.

Defendants apparently contend that because their efforts are "directed at overcrowding" (i.e. the cause of the unconstitutional conditions that cause the harms), they are somehow protected by the Rule. But the measures failed. All the measures at issue in this motion were taken more than 18 months ago, and yet overcrowding persists. Thus, the Emergency Proclamation, AB 900, and the Expert Panel are not "subsequent remedial measures" that made the "injury or harm *less likely to occur*." F.R.E. 407 (emphasis added).[1]

4. Rule 407 addresses only situations where an injury is "*caused by an event*." F.R.E. 407 (emphasis added). But this is a case of ongoing constitutional violations where there is no identifiable "event" that caused an injury. Defendants do not even attempt to define the "event" alleged to have caused the injuries in this case.

In short, unlike the typical tort case – where injuries are caused by an automobile accident, a defective product, or even a dangerous condition like a pothole – the concepts of "culpable conduct," an injury "caused by an event" and "subsequent remedial measures" just do not make sense in the context of these remedy proceedings in which plaintiffs seek an injunction to remedy ongoing constitutional violations. Because the very text of Rule 407 demonstrates that the Rule does not apply to this case, defendants' motion should be denied.

**B.    Even if Rule 407 did apply, the evidence defendants seek to exclude falls within exceptions to Rule 407.**

The evidence that defendants seek to exclude fits squarely within the broad exceptions to Rule 407. Rule 407 "does not require the exclusion of evidence of subsequent measures when *offered for*

---

[1] The only case that defendants cite in support of their motion is *Ford v. Schmidt*, 577 F.2d 408, 410 (7th Cir. 1978) in which a prisoner challenged a prison's mail policy, the prison subsequently revised its mail policy, and the court limited evidence of the revised policy "to the injunctive relief claim only." *Id.* Unlike the case at hand however, in *Ford* the court found that "there can be no doubt" that if the new policy had existed at the time the suit was filed, the policy "would have avoided the event in litigation." *Id.* at 411. Defendants make no such contention in this case, nor could they, since the violations giving rise to this litigation are ongoing. Moreover, the *Ford* court did not exclude the evidence of the new policy altogether; it allowed evidence of the new policy in proceedings related to the prisoner's *injunctive relief claim*. *Id.* The entire proceedings before this three judge court are for injunctive relief, and the evidence of the so-called "remedial measures" is relevant and admissible for that purpose.

Pltfs' Opp to Def's MIL No. 7
Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351                    3

*another purpose*, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." F.R.E. 407 (emphasis added). Each of the matters defendants seek to exclude will be offered for other purposes.

    1. The PLRA specifically makes the availability (or unavailability) of other "remedial measures" *an element of the case.* Under 18 U.S.C. §3626(a)(3)(E)(ii), the court can only issue a prisoner release order if "no other relief will remedy the violation of the Federal right." Since the existence of other potential relief is an element of the case, such alternatives – tried or untried – are necessarily relevant and admissible.

    2. Defendants themselves have made their attempts at alleviating overcrowding a centerpiece of their defense in this action. From the beginning, and throughout the three judge court proceedings, they have contended that they will solve the overcrowding crisis through AB 900, or out-of-state transfers authorized by the Emergency Proclamation, or increased recidivism-reducing programs. *See, e.g., Coleman* Order convening Three Judge Court, 7/23/07 at 10 -12 (*Coleman* Docket No. 2320) (noting defendants' reliance upon AB 900 and recidivism-reducing programs as measures that will reduce prison population and make prisoner release order unnecessary). The *Plata* court noted the defense and found that if the population-reducing reforms "were actually implemented and reduced levels of prison crowding as estimated, then a three-judge court may find that a prisoner release order is not warranted." *Plata* Order convening Three Judge Court, 7/23/07 (*Plata* Docket No. 780) at 9. Defendants cannot use population reform measures as the core of their defense while at the same time preventing plaintiffs from even mentioning them.

    3. The PLRA requires a court granting prospective relief to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. §3626(a)(1)(A). Defendants and several of the intervenors contend that reducing the prison population would have an adverse impact on public safety. But in the Emergency Proclamation and the Expert Panel Report, defendants and their experts admit that *overcrowding itself* has an adverse impact on public safety. *See* Emergency Proclamation (the Emergency Proclamation can be found at http://gov.ca.gov/proclamation/4278/ (site last visited 10/27/08)); Expert Panel Report at 9 (the Expert Panel Report can be found at http://www.cdcr.ca.gov/news/ExpertPanel.html (site last visited

Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351

4

10/27/08)). And in the Expert Panel Report, CDCR's consultants demonstrate how the department could *safely* reduce its prison population. Expert Panel Report, Appendix E. These admissions are relevant to controvert defendants' and intervenors' "public safety" defenses.

4. The Emergency Proclamation and the Expert Panel Report are relevant impeachment evidence. Defendants have contested the harms plaintiffs allege to have been caused by overcrowding, and claimed that they could fix the medical system without fixing overcrowding. But in the Emergency Proclamation the Governor declared that "the current severe overcrowding in 29 CDCR prisons has caused substantial risk to the health and safety of . . . the inmates housed in them." Emergency Proclamation, *supra*. Large numbers of prisoners live in "increased, substantial risk for transmission of infectious illnesses." *Id*. Overcrowding causes "extreme peril" because the prison population "exceeds the capabilities of the services, personnel, equipment, and facilities." *Id*. As a result of overcrowding, the Governor estimated that more than 15,000 prisoners were housed in "conditions that pose substantial safety risks, namely, prison areas never designed or intended for inmate housing, including, but not limited to, common areas such as prison gymnasiums, dayrooms, and program rooms." *Id.* at 1. These statements are admissible as impeachment, and as statements of a party and admissions against interest.

Similarly, the Expert Panel Report found, contrary to defendants' contentions, that "[n]ot only does overcrowding have a negative impact on [rehabilitative] programming but, according to documents provided to the court by CDCR Chief Deputy Secretary Scott Kernan (2007), 'housing inmates in non-traditional quarters presents serious safety concerns for both inmates and correctional staff. The overcrowding of CDCR facilities has led to increased numbers [of] infectious disease outbreaks and riots and disturbances system-wide.'" Expert Panel Report at 9. This conclusion led to the Expert Panel's first recommendation, which was to "reduce overcrowding in [CDCR's] prison facilities and parole offices." *Id.* at 10. Like the Governor's statements in the Emergency Proclamation, the Expert Panel Report is admissible for impeachment, and as statements of a party and admissions against interest.

Accordingly, all of the evidence defendants seek to exclude fits within an exception to Rule 407, and the Motion should be denied.

Pltfs' Opp to Def's MIL No. 7
Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351

5

### C. The convening of the Expert Panel is not a "remedial measure" under Rule 407

Defendants contend that their decision to convene the Expert Panel should be excluded as a remedial measure under Rule 407. But the Expert Panel was convened "to complete an assessment of California's adult prison and parole programs designed to reduce recidivism" and to make recommendations on those topics. Expert Panel Report at vii. Since the mission of the Expert Panel was not to fix the harms alleged in this case it can not a "subsequent remedial measure" under Rule 407. That the Expert Panel's analysis concluded that overcrowding has pervasive impacts throughout CDCR's operations does not transform it into a "subsequent remedial measure" inadmissible under Rule 407. That would turn the purpose of Rule 407 on its head. Rule 407 is intended as a measure to encourage defendants who "do the right thing" by fixing a problem identified by a plaintiff. *See, e.g.,* Advisory Committee Notes to Rule 407. This is not the situation here.

Nor is the report issued by the Expert Panel a remedial measure under Rule 407. A research study with recommendations, such as the Expert Panel Report, is not a "remedial measure" under Rule 407. *Fasanaro v. Mooney Aircraft Corp.,* 687 F.Supp. 482, 487 (N.D.Cal.1988) ("subsequent remedial measures" include "only the actual remedial measures themselves and not the initial steps toward ascertaining whether any remedial measures are called for" including post-event tests); *Rocky Mountain Helicopters v. Bell Helicopters Textron,* 805 F.2d 907, 918 (10th Cir.1986) (upholding admission of helicopter manufacturer's post-accident "stress test" of potentially defective component because "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports"); *Brazos River Authority v. GE Ionics, Inc*., 469 F.3d 416, 430 (5th Cir.2006) (post-accident investigations and tests do not fall within the exclusionary ambit of Rule 407 because "by themselves, post-accident investigations would not make the event 'less likely to occur;' only the actual implemented changes make it so," and embracing the view of other courts that "'[t]he fact that the analysis may often result in remedial measures being taken ... does not mean that evidence of the analysis may not be admitted.' ") (quoting *Prentiss & Carlisle Co. v. Koehring-Waterours Div. of Timberjack, Inc.,* 972 F.2d 6, 9 (1st Cir.1992)); *See also* 2 Weinstein, et al., Federal Evidence (2d ed.1997) § 407.06 [1] ("It is only if changes are implemented as a result of the tests that the goal of added safety [under Rule 407] is furthered; and even then, it is only evidence of those changes that is

Pltfs' Opp to Def's MIL No. 7
Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351

6

precluded by the rule."); *City of Bethel v. Peters,* 97 P.3d 822, 827 (Alaska Sep 03, 2004) ("Rule 407 prohibits evidence of 'measures' that have been 'taken.' We take 'measures' to mean concrete actions, and to leave outside the rule's prohibition preliminary investigations and recommendations pointing toward those actions.")

Accordingly, neither the convening of the Expert Panel nor the issuance of the Expert Panel Report are remedial measure excludable under Rule 407.

## CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine No. 7 should be denied.

DATED: October 30, 2008

Respectfully submitted,

By: */s/ Rebekah Evenson*

Rebekah Evenson
Prison Law Office
Attorney for Plaintiffs in
*Plata v. Schwarzenegger*
and
*Coleman v. Schwarzenegger*

Pltfs' Opp to Def's MIL No. 7
Re Subsequent remedial measures
Case Nos. 90-00520; 01-1351

7