EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile: (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br>　v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　　　Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　Plaintiffs,<br>　v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　　　Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE CERTAIN TESTIMONY OF EXPERT GALE BATAILLE**<br><br>**To: Three-Judge Panel** |

## I. INTRODUCTION

Defendants oppose Plaintiffs' motion to exclude testimony of Defendants' expert Gale Bataille. Plaintiffs wrongly seek to exclude "[a]ny testimony regarding the adverse impact of a prisoner release order on public safety;" "[a]ny testimony regarding intergovernmental disputes within the state of California regarding the funding of community mental health system;" and "[a]ny testimony regarding the adverse impact of a prisoner release order on the operation of a criminal justice system." (Pls.' MIL No. 5, 18:9-11,15-17, and 19:3-4.)

Ms. Bataille worked as an upper level manager in three California county mental health systems for 27 years, including holding the position of Mental Health Director in two Bay Area counties for over 17 years. She has held active leadership roles in the California Mental Health Directors Association, including serving as President and on the Governing Board and most recently as Chair of the Forensic Committee. She is unquestionably an expert in community mental health in the State of California, and Plaintiffs do not challenge Ms. Bataille's qualifications or expertise in this area. Ms. Bataille's opinion regarding the adverse impact of a prisoner release order on public safety is based on her substantial experience and training in mental health and relates to her knowledge that currently there are not sufficient community mental health services to serve the general public, much less the needs of former prisoners.

Because of the current lack of community services to meet the existing level of need, if the population of former prisoners is increased, community mental health services do not exist to serve their needs and to help prevent and reduce recidivism. The absence of needed services poses a problem for former prisoners as well as the communities into which they would be released. Ms. Bataille's comments regarding a lack of clarity between the Counties and the State regarding responsibility for funding community mental health services go directly to the question of whether the mental health services needed by former prisoners are and will be available in the community. The Court should not exclude this relevant and reliable opinion from consideration at the

- 1 -

1  trial of the very serious question of whether to issue a prisoner release order. *See*
2  *McKendall v. Crown Control Corp.*, 122 F.3d 803, 807 (9th Cir. 1997) (holding that non-
3  scientific expert evidence that is "relevant and reliable" should be admitted).

4       In addition, Ms. Bataille addresses the impact of mentally ill offenders on the local
5  criminal justice systems. As explained in her Preliminary Expert Report dated August
6  15, 2008 and her deposition and further detailed in her declaration submitted herewith,
7  Ms. Bataille has extensive experience working with issues related to mentally ill
8  offenders and local criminal justice systems. For example, as the Director of the San
9  Mateo County Behavioral Health and Recovery Services, Ms. Bataille was involved in
10  successfully applying for and implementing two Mentally Ill Offender Crime Reduction
11  grants dealing with working more effectively with individuals who are released from the
12  County jail. She was an active advocate and participant in designing a Mental Health
13  Court, and providing treatment services to supplement the activities of that court. She
14  represented the County Health Department on the Board of Supervisors' Criminal
15  Justice Committee for a period of time, and was a member of the Reentry Services
16  Planning Committee for several months. In her many years as a County Mental Health
17  Director, Ms. Bataille supervised direct service to individuals who were criminal-justice-
18  involved at the local level. (*See* Bien Decl., Ex. L (Prelim. Rep.) at p. 25; Decl. Mello
19  Supp. Defs.' Opp'n to Pls. Mot. In Limine No. 5, Exh. A (Bataille Dep.), at 35:5-36:16,
20  103:7-25; Bataille Decl., ¶¶2-6.)

21       As an undisputed expert in the area of community mental health in the State of
22  California, Ms. Bataille provides an important knowledge base and viewpoint essential to
23  assisting the trier of fact in determining whether a prisoner release order should issue.
24  Her opinions should be considered in their entirety, and not excluded.

25                 **II.    ARGUMENT**

26  **A.  Ms. Bataille Is Qualified To Opine On The Availability Of Needed Mental Health Services To Former Inmates And Her Opinions Are Appropriately**
27  **Based On Her Experience And Training.**

28       Federal Rule of Evidence 702 allows for the admission of testimony by a witness

- 2 -

with "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness may be "qualified as an expert by knowledge, skill, experience, training, *or* education." *Id.* (emph. added). The Ninth Circuit has made clear that it is improper to exclude an expert's testimony where it is "based on his specialized knowledge acquired through his vast experience." *McKendall*, 122 F.3d at 807, citing *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 n.3 (9th Cir. 1994). The Ninth Circuit has also explained:

> '[A]pplication of the *Daubert* factors is unwarranted in cases where expert testimony is based solely upon experience or training. . . . In such cases, Rule 702 merely requires the trial court to make a preliminary finding that proffered expert testimony is both relevant and reliable while taking into account 'the inquiry envisioned by Rule 702 is . . . a flexible one.'

*Id.*, quoting *Compton v. Subaru of America, Inc.,* 82 F.3d 1513, 1518-19 (10th Cir. 1996).

It is undisputed that Ms. Bataille is an expert in community mental health services in the State of California. Her qualifications are set forth in her Preliminary Expert Report, dated August 15, 2008, and further described in her deposition and declaration submitted herewith. (*See* Bien Decl., Ex. L (Prelim. Rep.) at p. 25; Decl. Mello Supp. Defs.' Opp'n to Pls. Mot. In Limine No. 5, Exh. A (Bataille Dep.), at 35:5-36:16, 103:7-25; Bataille Decl., ¶¶2-6.) Ms. Bataille has a Masters Degree in Social Work from San Francisco State University and worked as an upper level manager in three California County Mental Health Systems from 1981 to 2008, including holding the position of Mental Health Director in two Bay Area counties for over 17 years. She has held active leadership positions in the California Mental Health Directors Association, including serving as President and on the Governing Board and most recently as Chair of the Forensic Committee.

Ms. Bataille's opinion that currently there are not sufficient community services to meet the mental health needs of the general population, much less those of former inmates, is not a "scientific" opinion, but one that is based on her substantial experience and training in the field of mental health. As such, it is admissible under well-established

- 3 -

1  Ninth Circuit authority. Plaintiffs' authority regarding the exclusion of purported expert
2  scientific testimony, including based on the specific standards set forth in *Daubert* for
3  scientific testimony, is inapposite.

4  In addition, Plaintiffs' claim that Ms. Bataille failed to take into account "the official
5  state statistics showing that California's community mental health system has an annual
6  budget of approximately $6 billion and serves over 650,000 persons per year, over
7  40,000 of them with 24-hour services" is not accurate or a grounds for exclusion of her
8  opinion. (Pls.' MIL No. 5, 21:21-25.) Even assuming that Plaintiffs' numbers are correct,
9  Plaintiffs fail to take into account whether the existing budget is sufficient to provide the
10 needed community mental health services and whether the number of persons currently
11 being served includes all of the people among California's 36.5 million residents who
12 need services. Ms. Bataille is clear in her opinion that, based on her experience and
13 knowledge of the State community mental health systems, the budget is not sufficient
14 and that today not all persons who need services receive them.

15 Ms. Bataille addressed the unmet need in California's community mental health
16 system in detail in both her August 15th Preliminary Expert Report *(see* Bien Decl., Ex. L
17 at pp. 9-14, 20) and in her August 27th Rebuttal Report (see Bien Decl., Ex. M at pp. 8-
18 10). These discussions included specific references to evaluative studies on workforce
19 capacity, State Department of Mental Health assessments of unmet need, a report by
20 the California Hospital Association's Center for Behavioral Health as well as the reports
21 of specific counties on their capacity to meet current service demands of seriously
22 mentally ill Medicaid beneficiaries and indigent populations.

23 Ms. Bataille's opinion is not mere *ipse dixit*, as Plaintiffs claim. It is grounded in
24 fact and Ms. Bataille's substantial experience with community mental health, including
25 service to criminal-justice-involved individuals. Ms. Bataille's opinions about the impact
26 of a release of prisoners on the community are based, among other things, upon the
27 *Coleman* Plaintiffs' proposed immediate release of 15,000 inmates (Decl. Mello Supp.
28 Defs.' Opp'n to Pls. Mot. In Limine No. 5, Exh. B (*Coleman* Pls.' Suppl. Resps. to

- 4 -

1  Schwarzenegger's First Set of Interrogatories, No.7); Special Master Keating's
2  determination that 19 to 20 percent of the prison population has serious mental illness
3  (Bien Decl., Ex. L (Prelim. Rep.), p. 2); Plaintiffs' April 17, 2008 supplemental response
4  to Interrogatory No. 4, which stated that a prisoner release order would need to reduce
5  the prison population in all of the different categories of the *Coleman* class, including
6  Correctional Clinical Case Management System, Enhanced Outpatient, and inpatient
7  inmates (*id.*); the higher prevalence of co-occurring mental health and substance abuse
8  disorders among prisoners (*id.* at 3); and the finding of the CDCR's Mental Health
9  Services Continuum Program's that parolees with an enhanced outpatient level of need
10 have a higher return rate than Correctional Clinical Case Management System parolees
11 (*id.* at 8.)
12     Ms. Bataille did not just make up her opinion, as Plaintiffs claim. She based it on
13 claims by Plaintiffs, data from the *Coleman* Special Master, information about the
14 prevalence of behavioral health issues among inmates, recidivism rates of former
15 inmates with higher levels of mental health needs, and her knowledge regarding the
16 existing gap between community mental health services and community need.
17 Moreover, Plaintiffs' concerns at best go to the weight, not the admissibility, of Ms.
18 Bataille's opinion, and Plaintiffs will have ample opportunity to cross-examine her at trial.
19 Ms. Bataille's opinion is relevant and reliable and meets the broad standard for
20 admissibility for non-scientific opinions established by the Ninth Circuit, and it would be
21 error to exclude it.

22 **B.   Information Regarding Funding And Responsibility For Mental Health Services To Former Inmates Is Relevant To The Availability Of Services To Former Inmates.**
23
24     Contrary to Plaintiffs' claim, Ms. Bataille is not "waging a fight" with the State
25 about whether the State or the Counties are responsible for funding and providing
26 community mental health services, including to former inmates. (*See* Pls.' MIL No. 5,
27 22:19-23:5.) Ms. Bataille's discussion of the lack of clarity between the State and the
28 Counties about responsibility for mental health services, the history of State funding of

- 5 -

1  mental health services, and the opposition of the California State Association of
2  Counties to a Legislative Analysts' Office proposal to realign parole and probation
3  functions directly relates to the existing lack of needed community mental health
4  services, both for the general population and former inmates.  Whether sufficient mental
5  health services exist to treat prisoners released pursuant to a prisoner release order is
6  directly relevant to whether a prisoner release order would adversely affect public safety.
7  If the mental health and substance abuse needs of former inmates are not addressed,
8  those inmates present a greater likelihood of committing new crimes and threatening
9  public safety.  Based on her substantial experience with community mental health,
10 including its relationship with the State and its interplay with the treatment of criminal-
11 justice-involved individuals, Ms. Bataille explains why necessary mental health services
12 do not currently exist and are not likely to exist in the future.

**C.    Ms. Bataille Has Experience Regarding The Provision Of Mental Health Services To Offenders At The Local Level.**

15      Plaintiffs take Ms. Bataille's statement that she is "not the criminal justice system
16 expert" out of context and use it inappropriately.  Ms. Bataille is not a "criminal justice
17 system expert" in the sense that she is not a probation officer or parole agent and does
18 not have an opinion or recommendation about what probation or parole would need to
19 do to address the issues presented by a prisoner release order.  As described in her
20 Preliminary Report, her deposition, and her declaration submitted herewith, Ms. Bataille
21 does have substantial experience in the interplay between community mental health,
22 offenders, and the criminal justice system.  (*See* Bien Decl., Ex. L (Prelim. Rep.) at p. 25;
23 Decl. Mello Supp. Defs.' Opp'n to Pls. Mot. In Limine No. 5, Exh. A (Bataille Dep.), at
24 35:5-36:16, 103:7-25; Bataille Decl., ¶¶2-6.)
25      For example, Ms. Bataille was involved in successfully applying for and
26 implementing two Mentally Ill Offender Crime Reduction grants dealing with working
27 more effectively with individuals who are released from the County jail.  She was an
28 active advocate and participant in designing a Mental Health Court, and providing

1  treatment services to supplement the activities of that court.  She represented the
2  County Health Department on the Board of Supervisors' Criminal Justice Committee and
3  was a member of the Reentry Services Planning Committee.  In her many years as a
4  County Mental Health Director, Ms. Bataille supervised direct service to individuals who
5  were criminal-justice-involved at the local level.  (Decl. Mello Supp. Defs.' Opp'n to Pls.
6  Mot. In Limine No. 5, Exh. A (Bataille Dep.), at 35:5-36:16, 103:7-25; Bataille Decl., ¶¶2-
7  6.)

       Accordingly, Ms. Bataille has a sufficient basis of knowledge and experience to address the likely impact of a release of prisoners with mental health needs on the local criminal justice systems.

## CONCLUSION

Gale Bataille has almost three decades of experience working in upper management of community mental health services in California.  She also has been actively involved in leadership positions with the California Mental Health Directors Association and is familiar with community mental health issues at both the County and State level.  Her involvement in community mental health has involved issues directly related to mentally ill offenders and local criminal justice systems, including implementing two Mentally Ill Offender Crime Reduction grants and designing a County Mental Health Court.  Ms. Bataille's opinion is not intended to be "scientific" but is based on her substantial experience and training.  Her opinion regarding the impact of a prisoner release order on public safety and the local criminal justice systems is based, among other things, on Plaintiffs' claims, data from the *Coleman* Special Master, information about the prevalence of behavioral health issues among inmates, recidivism rates of former inmates with higher levels of mental health needs, and her knowledge

/ / /
/ / /
/ / /
/ / /

regarding the existing gap between community mental health services and community need. Her opinion is relevant and reliable and to exclude it would be improper.

DATED: October 30, 2008        HANSON BRIDGETT LLP

By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED: October 30, 2008        EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Kyle A. Lewis
KYLE LEWIS
Deputy Attorney General
Attorneys for Defendants
Arnold Schwarzenegger, et al.