# EXHIBIT B

COPY

1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4   RALPH COLEMAN, et al.,      ) Case No. 2:90-cv-00520-LKK-JFM
                                )
5                   Plaintiffs, )
                                )
6       vs.                     ) Sacramento, California
                                ) Thursday, August 7, 2008
7   SCHWARZENEGGER, et al.,     ) 11:14 A.M.
                                )
8                   Defendants. ) Hearing re: motions to compel
    _____   ) and hearing re: joint
9                               ) statement.

10                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN F. MOULDS
11              UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For Coleman and Plata        MARIA V. MORRIS
       Plaintiffs:               Rosen, Bien & Galvan, LLP
14                               315 Montgomery Street 10th Floor
                                 San Francisco CA    94105
15                               (415) 433-6830

16  For Plaintiffs:              REBEKAH EVANSON
                                 Prison Law Office
17                               General Delivery
                                 San Quentin, CA    94964
18                               (415) 457-9144

19  For Coleman Defendants:      LISA A. TILLMAN
                                 Attorney General's Office
20                               1300 I Street, Suite 125
                                 Sacramento, CA    95814
21                               (916) 327-7872

22  For Plata Defendants:        S. ANNE JOHNSON
                                 RENJU P. JACOB
23                               Hanson Bridgett, LLP
                                 425 Market Street, 26th Floor
24                               San Francisco, CA    94105
                                 (415) 995-5049

25

ii

1  | APPEARANCES (Cont.):

2

Court Recorder:                    (UNMONITORED)
3                                   U.S. District Court
                                    501 I Street, Suite 4-200
4                                   Sacramento, CA    95814
                                    (916) 930-4193
5

Transcription Service:             Petrilla Reporting &
6                                      Transcription
                                    5002 - 61st Street
7                                   Sacramento, CA    95820
                                    (916) 455-3887
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  | Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1

1      SACRAMENTO, CALIFORNIA, THURSDAY, AUGUST 7, 2008, 11:14 A.M.

2

3           THE CLERK:  Calling Civil Case 90-520-LKK, Coleman,

4      et al. v. Schwarzenegger, et al.  Your Honor, this matter is on

5      calendar for motions to compel and hearing regarding joint

6      statement.

7           THE COURT:  Yes, the jury box is on the other side in

8      this courtroom.

9           Good morning.  Would counsel please state their

10     appearances?

11          MS. MORRIS:  Maria Morris of Rosen, Bien & Galvan on

12     behalf of plaintiffs.

13          MS. EVANSON:  Rebekah Evanson from Prison Law Office

14     on behalf of plaintiffs.

15          MS. TILLMAN:  Good morning.  Lisa Tillman on behalf

16     of the Coleman defendants.

17          MS. JOHNSON:  Good morning, Your Honor.  Anne Johnson

18     on behalf of the Plata defendants.

19          MR. JACOB:  Good morning, Your Honor.  Renju Jacob on

20     behalf of the Plata defendants.

21          THE COURT:  Good morning everyone.  We have a number

22     of interesting matters on the calendar this morning, but

23     there's one that's not on calendar this morning, but it's

24     raised by the submissions provided to the Court in connection

25     with this proceeding, and I want to address that first.

2

1     At page 6 of the document, which is titled "Joint

2  Statement Regarding Discovery Dispute about Deposition," page

3  6, there's a footnote 4 which discusses what the plaintiffs

4  discussed, their concern about responding on this issue because

5  of the lack of documents dealt with in discovery.

6     The paragraph that alerted me was the document -- was

7  the paragraph which says plaintiffs are prejudiced in their

8  ability to bring this motion and to show the personal

9  involvement by the Governor, Mr. Gore, and Mrs. Kennedy in the

10  over-crowding issue by a lack of those documents.

11     And the paragraph before that, there is the language,

12  although this Court and the three-judge panel have repeatedly

13  ordered defendants to produce additional documents that

14  defendants incorrectly withheld as privileged -- I'll leave out

15  the parenthetical material -- defendants have refused to

16  produce the documents, instead filing a notice of appeal from

17  those orders.  Accordingly, the plaintiffs have still not

18  received a full set of documents from the Governor's office.

19     What I want to know, and I have questions for both

20  sides in this matter, but I suppose the first people I'm

21  turning to are the defendants, is it the case that the

22  discovery orders have not been complied with in this case?  And

23  if so, what's the authority for doing that?

24     MS. JOHNSON:  My understanding, Your Honor, is that

25  those orders are under appeal at this time.

3

1          THE COURT:  What does that have to do with anything
2   if there's not a stay?
3          MS. JOHNSON:  Well, we're obviously contesting the
4   validity of the orders, with all due respect to the Court,
5   so --
6          THE COURT:  Excuse me.  I'm not concerned about an
7   appeal from this Court's orders.  I've lived with that for
8   about 30 years now, an I think I can handle that emotionally.
9   Trust me.
10         But the last time I looked, orders made by this
11  Court, and incidentally, affirmed by the three-judge court, but
12  there's an order which is in full effect, which has been
13  affirmed by the three-judge court, it stands, and nobody's
14  doing anything.  Now, what's that about?
15         MS. JOHNSON:  We have requested a stay from the Ninth
16  Circuit and --
17         THE COURT:  Have they acted on that?
18         MS. JOHNSON:  It's under submission, it's under
19  consideration at this time, Your Honor.  There has been no
20  action on it that I'm aware of.
21         THE COURT:  When was it -- when were the appeals
22  submitted?
23         MS. JOHNSON:  I'm not certain of that, Your Honor.
24         MS. MORRIS:  Your Honor, might I -- as I
25  understand --

4

1          THE COURT:  I'll get to you in a moment, ma'am.

2          MS. MORRIS:  Okay.

3          THE COURT:  Is there any authority that any of the

4    three lawyers here from the defense are familiar with which

5    permits refusal to comply with a court order absent obtaining a

6    stay, and which, of course, the appellate court knows how to do

7    perfectly well.

8          MS. JOHNSON:  I would say, Your Honor, that we did

9    not research that particular issue in coming to this hearing as

10   you mentioned, because it was not on calendar, off the top of

11   my head.  I believe that what we're relying on is the simple

12   principle that if we complied with the order, we will be harmed

13   by having the documents turned over if the order is

14   subsequently overturned.

15         THE COURT:  So when are you planning on getting an

16   order from the Ninth Circuit so these documents can be used at

17   trial, if they're to be used, or are we simply going to wait

18   until -- oh, maybe the close of plaintiff's case before

19   documents are submitted?

20         MS. JOHNSON:  Again, I'm not -- I was not prepared to

21   address this issue at this hearing and I --

22         THE COURT:  I understand that perfectly well.

23         MS. JOHNSON:  So my -- what I can say to the Court is

24   that we can go back and turn to this issue at your request.  I

25   mean, I can go back to the office and try to sort out where

5

1  we're at on this issue, but I'm not -- I have no specific

2  information to be able to address it to you, with you today.

3          THE COURT:  Now, plaintiffs.  We've got a scheduling

4  order in this case, and unless that scheduling order is going

5  to be completely undermined, it seems to me you probably want

6  to see those documents before this case is tried.

7          Not only that, but if I remember correctly, from

8  doing what I consider to be a relatively extensive in-camera

9  review, there's a lot of junk to look at, not all of which

10  you'll find is wonderful.  But you're going to want to look at

11  it all, I trust, or else we wouldn't have gone to all the

12  effort to deal with it.

13          Now, is there going to be some step taken to enforce

14  the orders of this Court, or are we all going to sit around

15  until you come and tell the three-judge court, we'd really like

16  to do this trial sometime in about 2010?

17          MS. MORRIS:  No, Your Honor.  We are not going to be

18  seeking to delay the trial.  We intend to stick with just the

19  discovery schedule and the trial schedule and we are working on

20  a motion to enforce that order.

21          It's our understanding that the three-judge Court's

22  order affirming this Court's order on the privilege documents

23  came down around June 16th or 17th.  It was appealed, and it

24  was not stayed on appeal.  Toward the end of July, defendants

25  filed what they styled as an emergency motion to stay, but it's

1  still pending, and plaintiffs are planning to move to enforce

2  the Court's order.

3          THE COURT:  If I recall correctly, the Court's

4  order -- and I haven't looked, I will tell you, the Court's

5  order specified the date for -- the time for production.

6          The -- my concern is quite simple, and that is the

7  three-judge court has set a schedule for dealing with this

8  case.  Enforcement of their schedule is up to them, but taking

9  care of the discovery within the framework of that schedule is

10 a responsibility that's devolved upon this Court.

11         Counsel, I realize you may not have come prepared

12 this morning to deal with the Court's concerns, rather than

13 your own, but by noon on Monday, I want from defendants a

14 document filed, it can be filed electronically, in case that

15 needs to be said, either spelling out the authority by which

16 you believe you are refusing to comply with the Court's order,

17 or a statement that the documents have been delivered to

18 plaintiff.

19         Also, I believe in the fist round of orders which

20 dealt with attorney/client privilege questions, there were a

21 substantial number of documents in which this Court made an

22 order that they be produced, and they were not part of the

23 request for reconsideration filed in the three-judge court.

24         I'm not sure how it would be possible, and I have not

25 research the question whether it would be possible to seek to

7

1   appeal this Court's order directly to the Ninth Circuit for

2   documents for which you did not first request reconsideration.

3   I'm not suggesting that as a weigh station to you, but simply

4   alerting you to the fact that there may be a set of documents

5   out there as to which there is absolutely no viable appeal

6   pending either.

7          All right.  Why don't we get to today.  Do plaintiffs

8   wish to be heard on the supplemental responses and production

9   of documents?

10          MS. MORRIS:  Yes, Your Honor.  One thing I'd like to

11   first do is just sort of clarify where we are in this dispute,

12   because it did change over the course of writing the joint

13   statement.

14          THE COURT:  Do you have any good news for me?

15          MS. MORRIS:  Well, it changed while we were writing

16   it, it hasn't changed since we wrote it.

17          THE COURT:  I don't know what that means.  Go ahead.

18          MS. MORRIS:  Well, we had agreed to do sort of a

19   step-by-step process in writing the joint statement internally

20   amongst us, so we wrote -- the plaintiffs wrote a portion, and

21   then defendants responded, and then I replied to that, all

22   within the joint statement.

23          THE COURT:  You can rest confident that I've read

24   that joint statement.

25          MS. MORRIS:  Okay.  All right.  So, if here's any

8

1    question about what remains at issue, I'd be happy to respond

2    to that, but you sound as though you're comfortable with where

3    they -- with where we are.

4            THE COURT:  I didn't say that.

5            MS. MORRIS:  Okay.  All right.  So --

6            MS. TILLMAN:  If I just might interrupt, I don't mean

7    to be rude, but I'm just not sure whether you're talking about

8    Coleman or Plata, because as much as those cases have something

9    to do with this motion to supplement, it would help me as the

10   attorney for Coleman, recognize what you're trying to address,

11   and Mr. Jacob will address the Plata portion.

12           MS. MORRIS:  Okay.  As it stands, there are four

13   requests that were specifically made by Coleman, by the Coleman

14   plaintiffs, Nos. 22, 28, 30 and 38, that defendants are still

15   refusing to supplement.  There are two requests that were made

16   by both sets of plaintiffs, so plaintiffs apostrophe, Nos. 32

17   and 33.  And then the interrogatory responses that plaintiffs

18   have asked for from both -- from all defendants, all defendants

19   have agreed to supplement them on the 15th, which is the day

20   that expert reports are due.

21           And so, with regards to the interrogatory responses,

22   all that's at issue is timing of when they will be

23   supplemented, whereas, with regard to these six document

24   requests, the question is whether -- whether they will be

25   supplemented, and then in addition, when those requests that

1    they have agreed to supplement will be supplemented.

2            You look as though I haven't made it any clearer.

3            THE COURT:  No, I was just wondering whether you were

4    going to keep going.  Are you done?

5            MS. MORRIS:  I'm done on that, yes.

6            THE COURT:  All right.

7            MS. TILLMAN:  I'm glad we all agree that

8    supplementation is underway, because it is.  All of our clients

9    are busy working on supplemental responses, including the

10   supplemental responses to the plaintiff's interrogatories from,

11   I think October, 2007 that were provided responses in November

12   2007.

13           So plaintiffs will see those updated responses

14   with --

15           THE COURT:  You're acknowledging that you are to

16   provide supplementation not only to the discovery requests

17   which were submitted to this Court for an order, but also to

18   those to which some objections were filed, and there were

19   no -- there was no request to compel further responses at that

20   time; is that correct?

21           MS. TILLMAN:  In terms of the interrogatory, that

22   issue does not really apply, but in terms of the request for

23   production that issue does apply, and we still hold fast to

24   that stance, that because we filed objections in the fall to

25   certain requests for production, and plaintiffs didn't seek to

10

1   in any way compel responses, then we are under no obligation to

2   provide supplemental responses to items that we never provided

3   a response to, other than objections in the fall.

4           And that would be as delineated in the joint

5   statement, Items 22, 28, 30 and 38 as well as 32 and 33.  So

6   the very ones that were cited by plaintiff's counsel just

7   moments ago are the ones that of course have not been subject

8   to a motion to compel by plaintiffs despite our stated

9   objections to those request for production.  Otherwise,

10  supplementation is underway.

11          THE COURT:  And you are -- when you say

12  supplementation is underway, does that mean you're developing a

13  stack over here of things you're going to supply, and then

14  you'll supply them on the 15th of August, the last date for the

15  expert's report?

16          MS. TILLMAN:  Some of these items, quite frankly,

17  have already been provided to plaintiff's counsel, maybe not

18  these particular plaintiff's counsel, but the usual people that

19  receive the status reports and various correspondence that I

20  sent to the Special Master, to Michael Bien, to Jane Cohn of

21  Rosen, Bien and Galvan, as well as to Ivan Trujillo of Prison

22  Law Office, including several revised plans that were filed

23  this spring in the Coleman case, as well as the July 16th, 2008

24  mental health bed plan.

25          I will say this, we all know that we don't have a

1  budget yet in California, and should the budget be signed after

2  August 15th, I believe I'm obligated to provide further

3  supplemental responses to the extent that a budget somehow

4  affects what may have been stated previously by way of any

5  ongoing efforts to comply with the Court's mandates to create a

6  constitutionally compliant system.

7         And so what I recognize is I'm kind of in this

8  dynamic situation, kind of a river of information, and as the

9  information comes to me, I've been supplying it through the

10  usual resources available to me in both the three-judge panel

11  case, as well as in the monitoring case.

12         We will provide formal responses that provide

13  supplemental statements and supplemental documents on August

14  15th.

15         I am certainly aware that plaintiffs are trying, as

16  we are, to get our experts ready to write those reports.  I'm

17  also aware that sometimes experts get information after they

18  write their reports and can provide additional, or pre -- or

19  supplemental reports themselves should the information

20  be -- and somehow -- in some fashion significant to their

21  opinions.

22         And if that's where plaintiffs are addressing their

23  concerns, maybe we should probably address that.  I thought

24  that the federal rules permitted that sort of supplemental

25  statements be made in an expert report, so long as the initial

1   expert report is filed on August 15.  If there's additional

2   information later, supplement it.

3           THE COURT:  Are you keeping records at the moment of

4   the documents which are delivered on which days and to who?

5           MS. TILLMAN:  And in terms of the work I do for the

6   monitoring side of Coleman, or in terms of the three-judge

7   panel documents?

8           THE COURT:  No.  My concern is this:  Subject to

9   hearing from plaintiffs, the proposal you're making sounds to

10  me to be a sensible one, because we don't want to find

11  ourselves playing ducks and drakes about whether -- about

12  testimony that might be allowed by defendants after a document

13  has been delivered, but delivered too late to be included in

14  the expert's report -- or the expert's first report.

15          On the other hand, if we don't know what goes to whom

16  and when, it will be difficult to make those decisions.  The

17  good news for me is it won't be my decision that will be the

18  decision about what evidence the three-judge court's going to

19  receive.  But it seems to me that the log of delivery is going

20  to be significant to reach a solution such as the one you're

21  suggesting.

22          MS. TILLMAN:  I recognize that.  And generally what

23  we've been doing, of course, is using our computerized database

24  to enable, you know, scanning and you know, digitalized kind of

25  versions of the documents.  Occasionally, you know, if I have a

13

1    client who suddenly just hands me a few bits of paper, we've

2    been trying to Bates stamp and simply send the hard copies with

3    a formal statement saying "Please find enclosed."

4            And so we hope that we've been able to track

5    everything that's gone out on certain days by way of our disks,

6    as well as by way of hard copies.

7            THE COURT:  I would just point out that -- at least

8    we've talked about this today, and you're going to need to keep

9    the best records you can if you're going to have to get into an

10   evidentiary tangle in the trial of this proceeding.

11           MS. TILLMAN:  No, I appreciate that, and obviously,

12   you know, I'm as concerned about my expert's reports as I'm

13   sure plaintiffs are for theirs.

14           THE COURT:  Even if you are working for minimum wage

15   these days.  My apologies for that.

16       (Laughter).

17           THE COURT:  Is there anything wrong with that

18   suggestion?

19           MS. MORRIS:  Yes.

20           THE COURT:  Okay.

21           MS. MORRIS:  Which is that it's not just about the

22   expert reports, it's also about depositions, and while expert

23   reports can be supplemented, it will be a serious burden if we

24   have -- we have all these depositions that are set to take

25   place during the last three weeks of the discovery period,

14

1   given the way that the discovery period was set up.

2           And if we're going into those depositions with

3   information about the state of affairs that is no longer true,

4   it puts us at a fairly serious disadvantage regarding what

5   kinds of questions we're posing, and whether we can see the

6   problems with the answers, and that's not something that will

7   be as easily rectified as filing a supplemental declaration

8   from an expert.

9           THE COURT:  Might not -- I have to tell you, I'm very

10  grateful that both sides in this case have really smart lawyers

11  who can figure out how to handle that kind of problem.

12          Plus the fact, I must tell you, not to keep beating

13  the horse from the start of this proceeding, but if you haven't

14  found it necessary to enforce this Court's earlier discovery

15  orders, it's hard to get too excited about the need for speed

16  at this point in the proceeding.  The -- but that's just an

17  observation.

18          The --

19          MS. MORRIS:  Also, Your Honor, regarding the question

20  of whether we moved to compel, I just want to remind the Court

21  a little bit about the timing.

22          THE COURT:  You could also direct me to the federal

23  rules, I suspect, counsel.

24          MS. MORRIS:  I'm sorry, I'm not sure --

25          THE COURT:  Well, never mind.  Go ahead.

1          MS. MORRIS:  We don't think there's been any waiver,

2     of course, there's no rule saying there's a waiver.

3          THE COURT:  What I was saying was, I happen to agree

4     with you in that regard.

5          MS. MORRIS:  Okay.  But if in order to get further

6     documents regarding these document requests, if what you feel

7     we need to do is bring a motion to compel, I can get that on

8     file this afternoon, and I would like to have it -- I would

9     like -- in order to avoid having any time --

10          THE COURT:  Didn't I just say I agreed with you?

11          MS. MORRIS:  Okay.

12          THE COURT:  All right.  The question -- I must tell

13     you, the question of whether we will order the California

14     prison system to stand still on one day, and take the perfect

15     photograph of the whole blooming thing as -- so that the three-

16     judge court can address that thing of beauty, or otherwise for

17     purposes of resolving this case, that strikes me as a nice

18     fantasy, but it's just not going to happen.

19          This is an entity that has a continuing existence,

20     and the Court is going to have to address the entity as it sees

21     it at the time of trial.  There may be changes.

22          I think the gravamen of your case is that the changes

23     that are required are sufficiently gross that they require the

24     Court's intervention, and that's not going to be decided by

25     some bobbing and weaving at the last moment by defendants, and

1  I don't think you're going to find in some last minute change a

2  magic bullet that proves your side of the case, either.  We're

3  going to have to recognize the questions that are going on as

4  we go along.

5          But I've put some thought into the question of

6  whether there's a date by which we can say all the evidence has

7  to be before the lawyers for the parties before trial, and I

8  think you're just going to have to do the best you can on both

9  sides with that regard.

10          I don't have anything much more sensible than that to

11  say about this.  If you have an alternative procedure to

12  suggest, that's fine, but I'll -- and I'll hear it.

13          MS. MORRIS:  Well, Your Honor, I recognize that yes,

14  everything is changing.  There's no question.  There are always

15  going to be some small changes that are happening, and the

16  question is how big those changes are.  And we want to get as

17  much information as quickly as we can so that we are -- we as

18  the plaintiffs are as close to understanding what the current

19  situation is, and that we can present that to the Court, as

20  possible.

21          We -- my understanding is that defendants are saying

22  they will provide documents by the 15th, what documents they

23  have now, and then if there need to be more later, there need

24  to be more later, and we can accept that.

25          THE COURT:  Oh.  All right.  I would caution you all

16

1    I don't think you're going to find in some last minute change a
2    magic bullet that proves your side of the case, either.  We're
3    going to have to recognize the questions that are going on as
4    we go along.

5        But I've put some thought into the question of
6    whether there's a date by which we can say all the evidence has
7    to be before the lawyers for the parties before trial, and I
8    think you're just going to have to do the best you can on both
9    sides with that regard.

10        I don't have anything much more sensible than that to
11    say about this.  If you have an alternative procedure to
12    suggest, that's fine, but I'll -- and I'll hear it.

13        MS. MORRIS:  Well, Your Honor, I recognize that yes,
14    everything is changing.  There's no question.  There are always
15    going to be some small changes that are happening, and the
16    question is how big those changes are.  And we want to get as
17    much information as quickly as we can so that we are -- we as
18    the plaintiffs are as close to understanding what the current
19    situation is, and that we can present that to the Court, as
20    possible.

21        We -- my understanding is that defendants are saying
22    they will provide documents by the 15th, what documents they
23    have now, and then if there need to be more later, there need
24    to be more later, and we can accept that.

25        THE COURT:  Oh.  All right.  I would caution you all

1    that the other part of thing of things are changing is that old

2    saying that the more things change the more they stay the same,

3    and having been on this bench for a long period of time, I must

4    tell you, I'm impressed with the logic of that.

5              THE COURT:  So as I understand it, defendants

6    are -- defendants in Coleman are saying that they are prepared

7    to supplement all except those responses to which they've

8    previously made objections and to do that by the 15th of August

9    to the extent that the events happen before the 15th of August,

10   and thereafter, you recognize a continuing obligation to

11   supplement with possible implications for revising the

12   testimony of experts, et cetera.

13             MS. TILLMAN:  We'll abide by, of course, the federal

14   rule about supplementation.  I can't say that what I produce on

15   August 15th will be up to August 15th, because obviously, we're

16   getting the materials in from the clients right now, and quite

17   frankly, we've produced gosh, over 34,000 documents in response

18   to --

19             THE COURT:  Counsel, please don't do that.  Every

20   time someone says to me we've produced this huge stack of

21   documents the result is that I tell them they have to give more

22   anyway.

23             MS. TILLMAN:  Right.

24             THE COURT:  I mean it just -- how much you have done,

25   other than explaining why you're looking a little tired at the

1    moment, just doesn't advance the analysis.

2         MS. TILLMAN:  I understand.  We will go ahead and

3    supplement as of August 15 and to the extent there's material

4    changes that we become aware of after August 15, we will

5    continue to supplement.

6         THE COURT:  Okay.

7         MS. MORRIS:  Your Honor, one other quick thing is

8    that Ms. Tillman stated that they objected to the four -- to

9    the six document requests, and said they would not produce, but

10   I just wanted to clarify that for No. 22 of Coleman's -- No. 22

11   of the Coleman request they did, in fact, say that they would

12   produce.  It is Exhibit E to my declaration, page 19.  It's the

13   very last sentence of the response.

14        MS. TILLMAN:  I think what we indicated in our

15   papers, Your Honor, is that for Items 22 and 28, we didn't

16   think we had anything to produce at this time.  We'll double

17   check and see.

18        THE COURT:  Counsel --

19        MS. TILLMAN:  28 and 30 we indicated did have

20   objections to.

21        THE COURT:  Counsel, excuse me for interrupting, but

22   actually I intended to.  The -- we ain't got nothing is a

23   perfectly good response to a discovery request, and if that's

24   the situation, that's all you have to say.  That's not an

25   argument about why you don't respond, because responding,

1   saying we don't have anything is a perfectly reasonable answer

2   to a discovery question.

3           And by the way, it's got to be the truth.  So that

4   provides protection to everybody if you just give the square

5   answer instead of saying you hope not, or we think we've found

6   everything, and if we find something more, we'll let you know

7   also works.  But the -- it has to be done in the form of a

8   discovery response.

9           MS. TILLMAN:  We'll follow that, Your Honor.

10          THE COURT:  Okay.  Now, what does this have to do

11  with Plata?

12          MR. JACOB:  Your Honor, the Plata plaintiffs agree

13  essentially with the same position that Coleman defendants have

14  made in this, in that we are also going to supplement by August

15  15th and continue to supplement after that point.

16          And also with respect to the specific requests for

17  productions that we've objected to, we take the same stance,

18  and Plata it is request for productions 32 and 33.

19          MS. MORRIS:  Your Honor, would it be possible for us

20  to set a briefing schedule for an expedited motion to compel on

21  the document requests for which defendants on both sides are

22  saying they're not going to respond?

23          THE COURT:  I thought that's what this was about.

24          MS. MORRIS:  I did too.

25          THE COURT:  Well --

1    MS. MORRIS:  But their position is that we need to

2    bring a motion to compel, and they're not going to supplement

3    now, so I'm asking if that's the decision, then --

4        THE COURT:  I'll consider your request for further

5    briefing.  I trust I'll find a way to rise above that, but I

6    would consider it.

7        All right.  Do you want to talk about depositions

8    next?  And even if you don't, let's.

9        MS. MORRIS:  Do you have specific questions, or would

10   you like to --

11       THE COURT:  Not for you.

12       MS. MORRIS:  Okay.

13       THE COURT:  Anything you want to say?  It will be

14   important in a minute.

15       MS. MORRIS:  Yeah.  I mean, what we have to say is

16   basically in our papers.  This isn't the run of the mill case

17   where the Governor is just a figurehead.  This is a case where

18   the Governor and his top aides are personally, deeply involved

19   in the issues that are before the Court in the matters that are

20   a part of the plaintiffs' claims, and the defendants' defenses.

21   I think we've laid that out in our papers.

22       THE COURT:  Who is dealing with this for the

23   defendants?

24       MS. JOHNSON:  I am, Your Honor.  I would agree that

25   this is not a run of the mill case, but is not --

1          THE COURT:  Thank you very much for that.

2          MS. JOHNSON:  It's also not the kind of case where

3   the general rule against allowing chief executives of states to

4   be deposed, or -- and their top aides to be deposed is pushed

5   aside.  An exception is not usually --

6          THE COURT:  Well, okay.  Excuse me.  Let me

7   interrupt, because there's one thing that's bugging me about

8   this, and --

9          MS. JOHNSON:  Okay, Your Honor.

10          THE COURT:  And the Governor's been noticed as a

11   witness, and have been noticed by the interveners.  Is the

12   Governor going to testify in this trial?  And if he isn't -- if

13   he is, why shouldn't I order his deposition as a matter of

14   simple equity and proper trial preparations?

15          MS. JOHNSON:  My understanding at this time would be

16   no, the Governor would not be testifying at trial, and --

17          THE COURT:  How do you know that?

18          MS. JOHNSON:  Well, I think that o the same grounds

19   that we are opposing him being deposed, we will be opposing him

20   testifying at trial.

21          THE COURT:  And do you know that, or are you hoping

22   that's true for purposes of today's argument?

23          MS. JOHNSON:  Well, I'm not saying that I know that

24   that motion would be granted, but I'm certain that we're going

25   to be taking the same position, yes, Your Honor.  The same

1   principle that applies for excluding chief executives in the

2   government, such as the Governor from being deposed, also

3   applied for excluding them from testifying at trial.  There are

4   cases that raise the same point.

5            THE COURT:  I understand that.

6            MS. JOHNSON:  So the question here is, is the

7   Governor subject to personal testimony whether at deposition or

8   at trial, fundamentally, and our position is, is he is not.

9            Despite the fact that this is not the run of the mill

10  case, it is not the kind of case where the Governor's personal

11  involvement in the matter at hand, such as the Governor's

12  conduct itself is at question in this case.  There's no

13  question in this case regarding the Governor's conduct itself.

14  The Governor runs the State of California, he does not run its

15  prisons.

16           The knowledge about the condition of the prisons, and

17  the implementation of the policies are in the hands of the

18  executives in the Department of Corrections who are -- have

19  been noticed for deposition, and their depositions have been

20  scheduled, and there's been no objection made to those

21  depositions going forward.

22           Currently, there is on schedule the deposition of

23  Scott Kernan (phonetic), who is the Chief Deputy Secretary for

24  Adult Operations; Kathy Jett (phonetic), who's the Undersecary

25  of Programs; Debra Heison (phonetic), who's the Chief Deputy

1    Secretary of Facility Planning, Construction and Management;

2    Matthew Kate (phonetic), who's the current Secretary of the

3    Department of Corrections and Rehabilitation; and James Tilton,

4    who's the recent former Secretary.

5           All those depositions are on calendar to go forward.

6    This privilege for executive officials could arguably extend

7    down to official at their level.  We have not raised the

8    objection for those officials, because they are in charge of

9    the department whose function is the center of this case.

10          The Governor oversees all of the operations of the

11   State of California, including, of course, the prisons, but he

12   is not directly responsible for the functioning of the prisons.

13   That all of the information that he knows about the prisons,

14   and all of the information on which he's based his emergency

15   proclamation or any other policy statement come from the people

16   who are in charge of the departments here, not the Governor

17   himself.  He certainly doesn't sit down and come up with these

18   numbers himself.

19          So this is not the kind of case where the Governor

20   himself has been accused of bad faith, or misconduct, or where

21   his personal conduct, or the conduct of his staff is at

22   question in the case.

23          What's at issue here is the system of health care in

24   California prisons in which the Governor has no direct

25   knowledge or responsibility for.  So it's rather -- it's really

1    a stretch in this case, despite putting aside the rather

2    extraordinary nature of the case itself.   I will grant you,

3    it's an unusual case.   It's a historic case even.   But the

4    Governor's role in this case is just as a Governor, not as a

5    hand's-on person involved in the issues that the case presents.

6           And that's true for Ms. Kennedy and also Robert Gore

7    as well.

8           The other thing I'd like to say, Your Honor, is that

9    we have not opposed Mr. -- the Governor or his staff from being

10   subjected to discovery.   They can -- the rule here is that you

11   get the top official if they have direct personal factual

12   information about the question at issue, and there's no

13   alternative method for getting the information you need, such

14   as an interrogatory.   An interrogatory is an approved

15   alternative by the Ninth Circuit in a case like this, and

16   that's the Kyle case, which is cited in the joint statement.

17   The Ninth Circuit has said that interrogatories are an

18   appropriate alternative.

19          So the Governor does not have direct personal factual

20   information about the circumstances in California prisons, but

21   putting that aside, we would be willing to accept and respond

22   to on behalf of the Governor, Ms. Kennedy and Mr. Gore,

23   interrogatories directed at them regarding the questions that

24   plaintiffs have, and there is still time to propound those

25   interrogatories in complying with the existing discovery

1   schedule.

2           THE COURT:   Thank you, counsel.

3           Anything further from plaintiffs on this?

4           MS. MORRIS:   Well, Your Honor, I disagree with the

5   representation that the Governor's conduct isn't involved in

6   this case.   While we are not -- this isn't a case challenging a

7   specific action of the Governor.   The Governor's actions

8   are -- and his personal actions, and his personal decisions and

9   policy statements are directly implicated in every step of this

10  case.

11          The Governor issued a budget proposal that

12  contemplated releasing 22,000 prisoners.   The defendants are

13  taking the position in this case that releasing any prisoners,

14  including under the Governor's budget proposal, would have an

15  adverse effect on public safety.   We're entitled to inquire

16  into that.   How would he release these people?   What are the

17  factors he considered?   What are the methods he considered?

18  How can it be done safely?

19          The Governor has made numerous statements that AB900,

20  the legislation about building prison beds that were supposed

21  to be a panacea for this overcrowding problem, the Governor

22  said, it's not working.   We need cleanup legislation.

23  Defendants' litigation position is AB900 solves everything.

24  We're entitled to inquire into that.

25          The Governor has continued his emergency

1   proclamation, in effect.  The emergency proclamation says the

2   prisons are in a state of crisis.  There is imminent risk to

3   health and safety everyday of prisoners.  The defendants'

4   litigation position is, things are peachy.  They're fixed.

5   We're well on the way out of this crisis.

6           Well, the proclamation remains in effect.  We're

7   entitled to inquire into all of these things that are really

8   the Governor's decisions, and the various alternatives proposed

9   by defendants just aren't sufficient.

10          Matt Kate, who's the head of the Department of

11  Corrections has specifically stated that he has no policy-

12  making power.  He's not the policy-maker here.  He's not making

13  those decisions.  And not only that, but he has been in the

14  position for about three months, and hasn't been involved in

15  any of the Governor's actions.  They're not offering anyone in

16  the Governor's office, and Matt Kate's underlings were the

17  functionaries who are implementing the various policies that

18  the Governor's office has promulgated are also not stand-ins

19  for the Governor or his top aides.

20          And interrogatories, I mean, it's fairly obvious that

21  they don't stand in for a deposition for interrogating a trial

22  witness, or someone with information in the documents already

23  in the record in this motion show the kind of evasive lawyer-

24  written answers that you get to interrogatory questions, and to

25  particularly the follow-ups.

1      MS. JOHNSON:  Your Honor, if I may respond?

2      THE COURT:  Briefly, please.

3      MS. JOHNSON:  The Governor -- like I said, we're not

4  opposing discovery directed at these questions.  We're opposing

5  them being done in the form of a deposition.  There is strong

6  case law in the Ninth Circuit and in California Federal Courts

7  that supports our position.

8      There is -- the Governor relies -- for a budget, the

9  Governor relies on the people under him who are responsible for

10  running those departments to come up with the analysis and the

11  numbers.  There's a -- it can't be the plaintiff's position if

12  the Governor sits down and pencils out that budget himself as

13  if he, himself has the personal factual information to do that.

14      The factual information is available at the

15  departmental level, and the purpose of this lawsuit is to

16  determine the facts, not to determine what the Governor thinks.

17  The Governor is not an expert in corrections, and he's not

18  being presented as an expert in corrections.  He is the Chief

19  Executive Officer of the State of California who relies on the

20  people in charge of the various departments of the state for

21  the information necessary to make leadership decisions.

22      The issues in this case are not hung up on future

23  leadership decisions, they are about what are the conditions in

24  the prisons today, and is overcrowding the primary cause of the

25  problems that are in health care delivery.

1          MS. JOHNSON:   Your Honor, if I may respond?

2          THE COURT:   Briefly, please.

3          MS. JOHNSON:   The Governor -- like I said, we're not

4   opposing discovery directed at these questions.   We're opposing

5   them being done in the form of a deposition.   There is strong

6   case law in the Ninth Circuit and in California Federal Courts

7   that supports our position.

8          There is -- the Governor relies -- for a budget, the

9   Governor relies on the people under him who are responsible for

10  running those departments to come up with the analysis and the

11  numbers.   There's a -- it can't be the plaintiff's position if

12  the Governor sits down and pencils out that budget himself as

13  if he, himself has the personal factual information to do that.

14         The factual information is available at the

15  departmental level, and the purpose of this lawsuit is to

16  determine the facts, not to determine what the Governor thinks.

17  The Governor is not an expert in corrections, and he's not

18  being presented as an expert in corrections.   He is the Chief

19  Executive Officer of the State of California who relies on the

20  people in charge of the various departments of the state for

21  the information necessary to make leadership decisions.

22         The issues in this case are not hung up on future

23  leadership decisions, they are about what are the conditions in

24  the prisons today, and is overcrowding the primary cause of the

25  problems that are in health care delivery.

28

1    What the Governor has -- thinks, based on information

2    that he has learned from the department in charge of the

3    functioning of the prisons is simply not sufficiently material

4    to burden him with a deposition.  The Governor's personal

5    conduct is not at issue in this case.

6        THE COURT:  Counsel, plaintiff's position seems to

7    be, if I heard her right just a moment ago, that the reason

8    they want to depose the Governor is they think he's one of

9    their best witnesses.

10       MS. JOHNSON:  The Governor does not have personal

11   knowledge about the state of the prisons, Your Honor.  But that

12   knowledge, the information is compiled at the department level.

13   All of the people in charge of the department that they have

14   wanted to depose, we've agreed to, including the former

15   Secretary of the department.

16       Mr. Kate has been in the role for just a few months,

17   but Mr. Tilton was in it for longer, and there's -- he's being

18   deposed as well.  So it's not as if there's some gap there that

19   needs to be filled by the Governor.  The Governor wouldn't be

20   able to fill that gap even if there were.

21       The Governor doesn't have detailed knowledge about

22   this.  Neither do his staff.  They oversee the entire state.

23   They don't focus on this one thing.  Everything they know about

24   the prisons, they've learned from the people who are in charge

25   of the prisons.

1          Also, if interrogatories aren't appropriate in this
2     place, because that's not plaintiff's preference, that would
3     tend to swallow the rule.  It's not that plaintiffs prefer
4     interrogatories because they are just a better method of
5     getting information, that's not the standard for being able to
6     obtain a deposition of a chief executive officer of a state.
7          THE COURT:  All right.  Counsel, what I'm going to
8     want from you -- I'm going to take this matter, this particular
9     matter under submission, and I do want to hear from you again
10    in a written submission, and we might as well make everything
11    Monday at noon.
12         I want to know from you one, whether the Governor
13    will oppose being called as a witness in this case by the
14    interveners, since he's been listed as a witness.  And also, to
15    the extent that you can discern it, the intervener's position
16    on whether they intend that the Governor remain on their
17    witness list.
18         My apologies for going into your work -- into your
19    noon hour, but I want to take 10 minutes.  Take a deep breath.
20    We'll be back at 12:15 by that clock on the wall behind you.
21         (Recess from 12:05 p.m. until 12:17 p.m.)
22         THE CLERK:  Court is back in session.
23         THE COURT:  Everybody who was here is here.  Welcome
24    back.
25         With regard to what I think of as the third and last

1    matter, where are we on the --

2         MR. JACOB:  Your Honor, the parties have reached a

3    stipulation on that matter.

4         (Laughter.)

5         THE COURT:  So I took a 10-minute recess to clear my

6    head, cough a couple of times, and you guys reached an

7    agreement.  Thank you.  Yes?

8         MR. JACOB:  Rebekah, would you like to recite?

9         MS. EVANSON:  Yeah.  Sure.  There were two distinct

10   matters that we were seeking to compel.  With respect to

11   document request No. 40 through 42, which were the data

12   requests for information about the population in the prison,

13   the defendants have agreed to waive the mediation privilege for

14   data that they provided during the course of mediation, and

15   plaintiffs are satisfied.

16        THE COURT:  Are we -- that's -- is that a wholesale

17   waiver, or does it go to particular documents?

18        MS. EVANSON:  Well, with regard to the data that was

19   provided by CDCR's Office of Research to Dr. Austin.

20        MR. JACOB:  During the month of November 1st to March

21   of '08, that was the period in which he obtained the data from

22   the CDCR Office of Research.

23        THE COURT:  And did that describe the documents we're

24   talking about?

25        MS. EVANSON:  I am not familiar with the date range.

1    I am familiar -- my -- Dr. Austin has said to me that he would

2    be satisfied if he got -- if he was able to use whatever data

3    that he received.  I don't know the dates, so I can't limit it

4    in terms of time, but the data he got --

5              THE COURT:  All right.  Just a moment.  Is that the

6    entire agreement, or is there more?

7              MS. EVANSON:  There's a second piece.  The second

8    sort of matter at issue is the motion to compel was with

9    respect to document request No. 43, which requested certain

10   data that was used by defendant's consultant to analyze the

11   CDCR's risk assessment instrument.

12             For Request No. 43, we asked for very specific data

13   for these 100,000 cases that the UCI, that the consultants

14   researched.  Defendants have offered to provide plaintiffs with

15   a data file -- an electronic data file that contains all of the

16   data that defendant provided to their consultants at UC Irvine,

17   and/or that UC Irvine provides back to the defendant to -- that

18   they used to analyze the risk assessment instrument.

19             There is still some confusion about what precisely

20   that data is, and whether it contains sufficient data fields

21   for plaintiff's expert.  The parties have agreed to take this

22   matter off calendar, but plaintiffs are reserving the right to

23   renew the matter if the data provided doesn't meet plaintiff's

24   requirement.  We're willing to waive some of the requests, but

25   there's some essential data that we need.

32

1        THE COURT:  All right.  The -- the reason I asked you

2   to go to the rest of it is, can you get this to me in writing

3   please?

4        MR. JACOB:  Yes.

5        MS. EVANSON:  Yes.

6        THE COURT:  Okay.  Rather than relying on what we

7   have here in the record, since there's some uncertainty about

8   the scope of the first set of data, and the -- I trust you can

9   work that out on the phone and ship me a -- either a formal

10  stipulation, or a letter which spells out in writing and in

11  sufficient detail the position that you both agreed to.

12       MR. JACOB:  Very well.

13       THE COURT:  I could -- it's fine with me if you give

14  me a letter from one person with counsel's representation that

15  it's been cleared by both of you, or if you need to do it with

16  joint signatures, I'll let you figure out how to do that.

17       MS. EVANSON:  Thank you, Your Honor.

18       THE COURT:  Can I get that by the same date, on

19  Monday?

20       MS. EVANSON:  Yes, Your Honor.

21       MR. JACOB:  Yes.

22       THE COURT:  All right.  One more question, counsel,

23  with regard to the depositions of highly placed governmental

24  officials.  I -- if the Court were to allow a deposition of the

25  Governor, how long do you believe it would take to complete the

33

1   deposition which you were discussing in your argument?

2          MS. EVANSON:  Well, Your Honor, we would prefer to

3   take a full seven-and-a-half hour deposition, but we would be

4   satisfied with a four to five hour deposition.  I think that

5   would be sufficient.

6          THE COURT:  Okay.  All right, is there anything we've

7   missed?

8          MS. EVANSON:  No, Your Honor.

9          THE COURT:  Thank you very much.  Stand adjourned.

10   I'll send you an order shortly.

11     (Whereupon the hearing in the above-entitled matter was

12   adjourned at 12:23 p.m.)

13                  --o0o--

14                 CERTIFICATE

15     I certify that the foregoing is a correct transcript from

16   the electronic sound recording of the proceedings in the above-

17   entitled matter.

18

19   *Patricia A. Petrilla*          August 27, 2008

20   Patricia A. Petrilla, Transcriber

21   AAERT CERT*D-113

22

23

24

25