| | |
|---|---|
| PRISON LAW OFFICE<br>DONALD SPECTER, Bar No. 83925<br>STEVEN FAMA, Bar No. 99641<br>E. IVAN TRUJILLO, Bar No. 228790<br>SARA NORMAN, Bar No. 189536<br>ALISON HARDY, Bar No. 135966<br>REBEKAH EVENSON, Bar No. 207825<br>1917 Fifth Street<br>Berkeley, CA 94710<br>Telephone: (510) 280-2621 | ROSEN, BIEN & GALVAN, LLP<br>MICHAEL W. BIEN, Bar No. 96891<br>JANE E. KAHN, Bar No. 112239<br>AMY WHELAN, Bar No. 215675<br>LISA ELLS, Bar No. 243657<br>MARIA V. MORRIS, Bar No. 223903<br>315 Montgomery Street, 10th Floor<br>San Francisco, California 94104<br>Telephone: (415) 433-6830 |
| K&L GATES LLP<br>JEFFREY L. BORNSTEIN, Bar No. 99358<br>EDWARD P. SANGSTER, Bar No. 121041<br>RAYMOND E. LOUGHREY, Bar No. 194363<br>55 Second Street, Suite 1700<br>San Francisco, CA 94105-3493<br>Telephone: (415) 882-8200 | BINGHAM, McCUTCHEN, LLP<br>WARREN E. GEORGE, Bar No. 53588<br>Three Embarcadero Center<br>San Francisco, California 94111<br>Telephone: (415) 393-2000 |
| THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>CLAUDIA CENTER, Bar No. 158255<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107<br>Telephone: (415) 864-8848 | |

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE"** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF
THE STATUTORY PHRASE "THE PRIMARY CAUSE"**

## INTRODUCTION

California prisons are still in a state of emergency due to overcrowding two years after the Governor officially proclaimed the overcrowding emergency.[1]  Defendants cannot reasonably dispute that they are unable to deliver adequate mental health and medical care in the present overcrowded environment.  Instead, Defendants and their proffered expert witnesses seek any possible loophole in the Prison Litigation Reform Act through which to escape responsibility for solving an overcrowding crisis that not only injures the plaintiff classes in *Coleman* and *Plata*, but also adversely impacts public safety.  The instant motion *in limine*, which asks the Court to construct an artificial definition of "primary cause," is an example of such loophole-seeking behavior.

Contrary to Defendants' assertions, the term "primary cause" requires no investigation into legislative history for a definition.  The term "primary cause" has a plain meaning.  Where a term has a plain meaning, a court need not reach into statutory history to embellish that meaning.  Defendants here are taking advantage of the fact the Prison Litigation Reform Act has a particularly tendentious statutory history, full of unsupported negative assertions about civil rights litigation on behalf of prisoners.  Defendants would like to dip into this poisoned well so that they can embellish the plain meaning of "primary cause" with a few choice hostile comments about how the Prison Litigation Reform Act should always be used to cut off civil rights remedies for prisoners or to establish "tough new conditions" before the court may address life-endangering violations of constitutional rights.  Attractive as this rhetoric might be for Defendants, it has no application here where the statute's meaning is plain.

---

[1] *See* Defendant Arnold Schwarzenegger's Response to Plaintiff Coleman's Second Set of Requests for Admissions, Response to RFA Nos. 44-52 (Oct. 20, 2008), attached as Exhibit K to the Declaration of Jane Kahn In Support of Plaintiffs' Opposition to Defendants Motions *In Limine*.)

-1-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

Plaintiffs request that Defendants' Motion *In Limine* No. 15 be denied, so that the court may apply the plain meaning of "the primary cause" without the artificially narrowing constructions requested by Defendants. In the alternative, if the Court is inclined to establish a definition by an order *in limine*, Plaintiffs request that the Court use the *full* dictionary definition of "primary", rather than Defendants' cherry-picked version of the definition. Using the full applicable definition, "the primary cause" under the PLRA means the cause that is first in rank or importance, or that is the chief, principal, basic or fundamental cause. (*See Webster's Third New International Dictionary* (1993 & 2002) at 1800 (defining "primary" as, among other senses, "2 a: first in rank or importance: CHIEF, PRINCIPAL . . . b : BASIC, FUNDAMENTAL").

## ARGUMENT

### I. Defendants' Motion *in Limine* Is Improper, Premature and Unnecessary.

Motions *in limine* are used to secure pre-trial rulings on the admissibility of evidence. 21 Wright & Graham, Federal Practice & Procedure, Evidence § 5037.10. Motions in *limine* are not proper substitutes for summary judgment motions or motions to dismiss. *Id.* § 5037.18. Even where admission of evidence is concerned, definitive rulings through motions *in limine* are not appropriate where the ruling is "context dependent" *Id.* § 5037.15. Rulings on motions *in limine* are by definition preliminary and are subject to change as the case unfolds. *Luce v. United States*, 469 U.S. 38, 41-42, (1984) (noting definition of "*in limine*" as "[o]n or at the threshold; at the very beginning; preliminarily"). Defendants cite no authority for the proposition that a motion *in limine* is proper to secure a pre-trial ruling on the definition of a statutory term.

There is no need for a ruling in advance of trial on the statutory meaning of "the primary cause." It is the province of the Court to apply the law to the facts. The facts regarding the relationship between crowding and the constitutional violations in *Plata* and *Coleman* will be developed through written and oral testimony at trial. Defendants' misuse of the *in limine* motion to secure an advance ruling on the definition of "the primary cause," or any other statutory term, would improperly intrude upon the Court's discretion to make

-2-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

conclusions of law based on the evidence adduced at trial. There will be ample opportunity in post-trial briefing to address the application of 18 U.S.C. § 3626(a)(3)(E) in the context of the factual record to be developed at trial. Defendants' motion should be denied as not within the proper scope of a motion *in limine.*

## II. No Order In Limine Is Necessary to Define Primary Cause, Because the Meaning Is Plain.

Because "primary cause" is not given any specialized definition in the Prison Litigation Reform Act, and is not a term of art, it should be construed in accordance with its "ordinary, contemporary, common meaning." *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir. 2004); *see also Nuclear Information and Resource Service v. U.S. Dept. of Transp.,* 457 F.3d 956, 960 (9th Cir. 2006) ("It is well established that the plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results").

Because the meaning of "primary cause" is plain on the face of the statute, there is no need for an order *in limine* defining the term, and Defendants' motion should be denied.

## III. Defendants Embellish Their Proffered Definition with Erroneous Elements

Plaintiffs primarily request that the motion in *limine* be denied. If, however, the Court is inclined to establish a pre-trial definition of "the primary cause," Plaintiffs request the Court correct the omissions and disregard the embellishments in Defendants' motion *in limine*.

### A. Defendants' Motion Attempts to Secure A Litigation Advantage by Omitting Parts of the Definition of "Primary"

Defendants pick only the words from the definition of primary that favor an artificially narrow construction closer to "sole" cause rather than "primary" cause. (*See* Defs.' MIL No. 15 (Docket No. 3102) at page 3:6: "'first in rank or importance, chief, principal,'" quoting *Webster's Third New International Dictionary* 1800 (2002) (definition of "primary" marked as "2 a").) Defendants omit the other applicable definitions of "primary" as synonymous with the words "basic" and "fundamental." *Webster's Third New International Dictionary* at 1800 (definition of "primary" marked as "2 b"). The terms "basic" and "fundamental" should be included in any definition of "primary."

-3-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

The words "basic" and "fundamental" are necessary to dispel any erroneous requirement that there must be a specific quantum of importance before a cause can be considered primary. *See Board of Governors of Federal Reserve System v. Agnew*, 329 U.S. 441, 446-47 (1947).

> It is true that 'primary' when applied to a single subject often means first, chief, or principal. But that is not always the case. For other accepted and common meanings of 'primarily' are 'essentially' (Oxford English Dictionary) or 'fundamentally' (Webster's New International). An activity or function may be 'primary' in that sense if it is substantial. If the underwriting business of a firm is substantial, the firm is engaged in the underwriting business in a primary way though by any quantitative test underwriting may not be its chief or principal activity. On the facts in this record we would find it hard to say that underwriting was not one primary activity of the firm and brokerage another. If 'primarily' is not used in the sense we suggest then the firm is not 'primarily engaged' in any line of business though it specializes in at least two and does a substantial amount of each. One might as well say that a professional man is not 'primarily engaged' in his profession though he holds himself out to serve all comers and devotes substantial time to the practice but makes the greater share of his income on the stock market.

*Id.* Here, Defendants omit the elements of the plain meaning of "primary" that are necessary to avoid the error that the court criticized in *Agnew* of requiring some arbitrary quantum of importance, such as more than 50%, before something can be considered primary. As the Court stated in *Agnew* this error arises from neglecting the qualitative "fundamental" element of the dictionary definition of "primary." Defendants' proffered definition should be rejected because it omits the "basic" and "fundamental" definitions of the word "primary."

**B.  Defendants' Motion Attempts to Embellish the Plain Meaning of "the primary cause" by Employing the Wrong Definition of "The".**

Defendants' effort to piece together an artificially constricted definition of "the primary cause" goes off the rails right from the first word: "the." At page 3, lines 11-13 (Coleman Docket No. 3102), Defendants present the Court with the wrong definition of the word "the" for this context. Of the 34 separate definitions found in three entries for the word "the" in the

-4-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

*Webster's Third New International Dictionary* (1993 & 2002), Defendants cited this one: "so as to exceed all others." (Defs' MIL No. 15 (Coleman Docket No. 3102 at 3:10-12.) The use of this adverbial definition of "the" suits Defendants' purpose to make it nearly impossible for overcrowding to be "the primary cause" if other important causes exist as well. Defendants' proffered definition, however, is only used in a very specific superlative sense that does not apply here, such as "the best" or "the worst." The *Webster's* entry quoted by Defendants--the third adverbial sense of "the"--reads in full: "**3:** so as to exceed all others -- used before a superlative <of all my books I like this *the* best -- Charles Dickens>." *Webster's Third New International Dictionary* (1993 & 2002) at page 2369. If a non-superlative word like "primary" is substituted into *Webster's* example for this meaning of "the," the sentence makes no sense: "of all my books I like this *the* primary."

The correct *Webster's* definition of "the" for this context is not the one proffered by Defendants, but rather the definition provided in *Webster's* entry for "the" as the definite article: "**2 a** (1) -- used as a function word with a noun modified by an adjective or by an attributive noun to limit the application of the modified noun to that specified by the adjective or by the attributive noun <*the* right answer> <*the* privileged classes> <*the* English language> <*the* greatest difficulty> <*the* third time> <*the* Boston road> <*the* seafood industry>." *Id.* This correct definition, however, does not include Defendants' preferred sense of "so as to exceed all others," and so did not serve their purpose of asking this Court to artificially constrict the set of causes that might be considered primary under the statute.

### C. Defendants' Selective Quotes from the Legislative History Are Unnecessary, and Are Deployed Here Only to Embellish on the Plain Meaning of "the primary cause" with Statements Hostile to Civil Rights Litigation.

When the language of the statute is clear, there is no reason for the court or the parties to delve into legislative history in search of arguments to support deviations from the plain meaning. *United States v. Jackson*, 480 F.3d 1014, 1021 (9th Cir. 2007). Defendants' selective quotes from the legislative history of the Prison Litigation Reform Act serve no purpose other than take advantage of an opportunity to repeat the sponsors' "tough on crime" rhetoric. Defendants selectively quote from House Report 104-21 at page 25, choosing only

-5-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

language critical of population caps, while omitting the immediately preceding paragraph that states Congress's intention to preserve judicial power to order such caps when necessary:

> While prison caps must be the remedy of last resort, a court still retains the power to order this remedy despite its intrusive nature and harmful consequences to the public if, but only if, it is truly necessary to prevent an actual violation of a prisoner's federal rights.

H.R. Rep. No. 104-21, at 25 (1995).

During the hearings on the PLRA, the Senate Judiciary Committee heard testimony from Associate Attorney General John Schmidt on the need to avoid constitutional problems that would arise from an unduly constricted definition of "primary cause" in the proposed legislation that become 18 U.S.C. § 3626(a)(3)(E). Associate Attorney General Schmidt told the Judiciary Committee:

> We have a couple of constitutional concerns with the particular provisions that are in the legislation. The one that I was starting to refer to arises because of a concern that we not, by legislation, say that the cap will not be available if that is, in fact, the only remedy for a constitutional violation.
>
> The problem arises not with respect to a violation where overcrowding is the principal violation because the legislation says then the cap can be used. But it is possible to have a situation where overcrowding is a secondary rather than a primary cause of a constitutional violation, and a court might nevertheless conclude that the cap is the only effective remedy for that violation. It seems to us in that circumstance there is both a constitutional and a policy problem in restricting the court from using the cap as the remedy.

Prison Reform: Enhancing the Effectiveness of Incarceration Before the Senate Committee on the Judiciary, 104th Cong. 13 (1995) (statement of John Schmidt, Associate Attorney General, U.S. Department of Justice). This testimony shows that Congress was made aware of the constitutional infirmity of the type of artificially narrow construction of "primary cause" that would leave the courts powerless to address constitutional violations where other important causes are also at work in addition to "the primary cause." Congress cannot be deemed to have intended a meaning for "primary cause" that would lead to constitutional problems. *Cf.*

-6-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NUMBER 15 REGARDING DEFINITION OF THE STATUTORY PHRASE "THE PRIMARY CAUSE", NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[248104-3]

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Counsel,* 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.")

## CONCLUSION

Defendants' Motion *In Limine* No. 15 improperly seeks to expand the use of *in limine* rulings beyond evidentiary issues, and into premature rulings of law that invade the Court's province to apply the law to the facts found based on the evidence admitted at trial. For this reason alone, the Court should deny the motion.

In addition, the meaning of "the primary cause" is plain on the face of the statute, and does not require a narrowing construction as proposed by Defendants. This, too, is an adequate reason to deny the motion.

Finally, in the alternative, if the Court is inclined to make an order *in limine* Plaintiffs request that "the primary cause" be defined as "the cause that is first in rank or importance, or that is the chief, principal, basic or fundamental cause." Furthermore, Plaintiffs request that any such order be expressly qualified as preliminary in nature and subject to change based on the record developed at trial.

Dated: October 30, 2008                    Respectfully submitted,

                                           ROSEN, BIEN & GALVAN, LLP


                                           By: /s/ Ernest Galvan
                                               Ernest Galvan
                                               Attorney for *Coleman* Plaintiffs and on
                                               Behalf of *Plata* Plaintiffs