1  ANN MILLER RAVEL, County Counsel (S.B. #62139)
   THERESA J. FUENTES, Deputy County Counsel (S.B. #208588)
2  OFFICE OF THE COUNTY COUNSEL
   70 West Hedding, East Wing, 9th Floor
3  San Jose, California  95110-1770
   Telephone:  (408) 299-5900
4  Facsimile:  (408) 292-7240

5  Attorneys for Intervenor
   COUNTY OF SANTA CLARA
6

7

8                UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10         AND THE NORTHERN DISTRICT OF CALIFORNIA

11    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

12      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

13

14  RALPH COLEMAN, et al.,              )   No.  CIV S-90-0520 LKK JFM P
                                        )
15          Plaintiffs,                 )   THREE-JUDGE COURT
                                        )
16  v.                                  )
                                        )
17  ARNOLD SCHWARZENEGGER, et al.,      )
                                        )
18          Defendants.                 )
    _____)
19                                      )   No.  C01-1351 TEH
    MARCIANO PLATA, et al.,             )
20                                      )   THREE-JUDGE COURT
            Plaintiffs,                 )
21                                      )   **INTERVENOR COUNTY OF SANTA**
    v.                                  )   **CLARA'S EXPERT REPORT OF ROBERT**
22                                      )   **GARNER**
    ARNOLD SCHWARZENEGGER, et al.,      )
23                                      )   Date:      November 18, 2008
            Defendants.                 )   Time:      1:30 p.m.
24  _____)   Location:  U.S.D.C. Ceremonial Courtroom

25

26  //

27  //

28  //

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

Intervenor County of Santa Clara's
Expert Report of R. Garner                    CIV S-90-0520 LKK JFM P / C01-1351 TEH

# EXPERT REPORT OF ROBERT GARNER
## August 14, 2008

**STATEMENT OF QUALIFICATION:**

I am currently employed as the Director of the Santa Clara County Department of Alcohol and Drug Services. I also hold the official designation of Santa Clara County Alcohol and Drug Program Administrator, a position that exists in every California County.

I have been in the drug abuse field continuously since 1971, when I was named the Drug Program Coordinator of Santa Clara County. At that time there was a separate position of Alcohol Program Coordinator. The two programs were merged in 1981 into a single Department of Alcohol and Drug Services, which I was appointed to lead, and I have been the Department Director since that time. I am the longest serving county drug and alcohol program official in the state of California. I am a founding member, past President, and current Executive Committee member of the California Alcohol and Drug Program Administration Association of California.

During this thirty-seven year period I have developed and administered every aspect of comprehensive continuum of drug and alcohol services, ranging from prevention and early intervention, to a wide range of treatment and rehabilitation services. I have developed a large array of contract services, data systems, oversight and accountability systems, monitoring and outcome measures, staff development, training and education services.

During that same thirty-seven year period I have provided extensive consultation at the local, state and federal levels on drug and alcohol issues. Within Santa Clara County I have consulted in the development of a variety of drug court programs in both criminal and dependency courts, alcohol and drug services in the county's mental health and child welfare systems, and alcohol and drug services in local cities and communities.

I have consulted with several Grand Juries in Santa Clara County regarding drug and alcohol issues.

I have consulted with the state Department of Alcohol and Drug Program Services since it's inception in every aspect of the State's drug and alcohol program, its relationship to county systems, with the California Youth Authority, and the California Department of Corrections and Rehabilitation.

I have consulted with the State's Little Hoover Commission and the Legislative Analyst's Office and several Legislative Officers on the development of specific drug and alcohol legislative proposals. I have consulted on numerous occasions with the County Supervisor's Association of California on drug and alcohol issues.

My professional resume is attached.

1

I have not been retained or specifically employed to provide testimony in this case, nor do my duties regularly involve giving expert testimony.

I have not testified as an expert at trial or deposition during the previous four years.

I reserve the right to supplement these opinions if more information is provided.


Robert Garner, Director
Department of Alcohol and Drug Services

8/15/08
Date

2

Garner/ 00002

**PREPARATION**:

Preparing for this statement I read the following documents:

1. California Prisoners and Parolees 2006
   This is a summary of statistics on adult felon prisoners and parolees, civil narcotic addicts and outpatients and other populations, prepared by the California Department of Corrections and Rehabilitation, Offender Information Services, Estimates and Statistical Analysis Section, Data Analysis Unit.

2. Supplemental Responses to Defendant's First Set of Interrogatories to Plaintiff, Ralph Coleman.

3. Episode data for adult treatment services 2006, prepared by Alcohol and Drug Services Research Institute, Santa Clara County Department of Alcohol and Drug Services.

4. Waiting List Data for Adult Treatment services, prepared week of August 11th by Jolene Wing, Quality Improvement Division, Department of Alcohol and Drug Services.

5. Cost of adult treatment, fiscal year 2006, report prepared by Amelia Whitlow, Administrative Services Manager, Department of Alcohol and Drug Services.

Also in preparing this report I consulted with:

1. Katherine Christian, Director of Research Institute, Department of Alcohol and Drug Services.

2. Amelia Whitlow, Administrative Services Manager, Department of Alcohol and Drug Services.

3. Jolene Wing, Senior Program Manager of Quality Improvement Division, Department of Alcohol and Drug Services.

3

Garner/ 00003

OPINION #1:

*The release of State prisoners into Santa Clara County will have a severe negative impact on the Santa Clara County drug treatment system.*

Background

Santa Clara County residents comprise 3.6% of the State's prisoners, and therefore a release of 40,000 prisoners would result in 1,440 of these prisoners returning to the County. An estimated 70% or about 1,000 of these prisoners would have serious drug problems. It is this group of 1,000 released prisoners that would impact the County's drug treatment system.

The County has a large adult treatment system, supported by more than $37 million in public funding from all sources in fiscal year 2006. This includes administrative and other support costs directly related to providing treatment.

In that same fiscal year (2006) the adult treatment system served 7,528 clients (unduplicated) and provided 8,566 treatment episodes. A treatment episode is defined as the time from a client's first treatment admission to their final discharge from treatment, without a break in treatment over thirty days. This reflects the fact that individual clients often move through several levels of care. These different levels of care are considered part of a single treatment episode as long as the time between treatment contacts does not exceed thirty days.

The treatment system includes a variety of levels of care, or treatment modalities, including various types of outpatient treatment, residential treatment, detoxification, and methadone maintenance. Short term transitional housing for homeless clients is provided, but only in conjunction with outpatient treatment. All of the adult treatment system operates at capacity, and demand exceeds supply. In the outpatient services, there is a 33-day waiting list to access treatment (average across all outpatient providers). There is an average 9-day wait for residential treatment, an average of 28 day wait list for methadone treatment. The average wait for transitional housing is 7-days for men and 14-days for women.

Discussion:

The release of 1,440 State prisoners, including 1,000 with serious drug problems, would have a severe, negative impact on the County's current treatment system. Drug addiction is a chronic, relapsing brain disease and without treatment relapse is highly expected. While there is limited drug treatment available in some prisons, a recent study found it to be an expensive failure. It is highly likely that most of those 1,000 drug abusing prisoners would initiate drug use in the first year following release.

Given that the treatment system is full with waiting lists for most treatment exceeding one month, few of these individuals would enter treatment in a timely manner. Research has linked positive treatment outcomes to quick access and engagement in treatment. Without such quick access, drug addicts will continue and often escalate

4

their drug use. This increases their exposure to arrest and incarceration, and it usually means that the level of treatment needed has increased. The current system cannot support this increased demand, and in fact, it cannot adequately address the current level of need.

Untreated drug addiction also increases the likelihood that the clients will develop several medical problems requiring medical care and increase their exposure to such things as HIV infection and Hepatitis C. These serious medical conditions are extremely costly and will themselves become additional costs in the County's medical care system.

The inability of the County's treatment system to accommodate these new clients will be exacerbated by severe budget reductions at the County level, now several years worth and expected to continue for several more years, which has already resulted in reductions of millions of dollars in treatment services.

This large release of prisoners would cause considerable harm to the County's drug treatment system, and all of the systems clients would suffer. Without timely and appropriate treatment, most addicts will be arrested and end up back in jail or prison where they will not receive treatment that is adequate and appropriate. Community based treatment is essential to reduce recidivism.

A special problem will be caused by these prisoners who are rearrested for drug use and qualify for SACPA (Substance Abuse and Crime Prevention Act—Proposition 36) services. The County is required by law to provide treatment for these clients, but the state allocation covers less than half the cost of that treatment. If this prisoner release results in an increase in SACPA clients, and given the fact the allocation has been decreased over time, the County's ability to provide the legally mandated treatment will be jeopardized. If SACPA clients are given a priority for treatment, it will be at the expense of some other client population.

5

Garner/ 00005

**OPINION #2:**
***The County would need significant funding to provide alcohol and drug services to State prisoners released into Santa Clara County.***

As indicated earlier, in FY06 there were 8,566 treatment episodes costing $37,422,085 or $4,369 per episode. The cost of priority treatment for an additional 1,000 clients released from prison would be $4,369,000, based on actual cost of treatment episodes in FY06. These resources are not available locally and without adequate resources the current treatment system would be devastated.

A mechanism for funding treatment for this population already exists. This County is part of what is known as the Bay Area Services Network, a treatment system for state parolees in which the state funds treatment in each county for parolees who are addicted. If adequate state funding is provided, this mechanism can easily be used to administer the funds and provide the services. Local treatment systems exist in every county and with adequate state funding they can be expanded to accommodate the proposed increase in clients resulting from early release of prisoners. Counties have existing structures for accountability and reporting that could be expanded with appropriate funding.

There is a larger problem that needs to be identified and addressed, and that is any effective solution to the related problems of drug addiction and crime require a partnership between Counties and State. A proposal to release 40,000 prisoners will not foster this partnership and will only have negative effects of devastating County drug treatment systems.

In the longer run, the prisoner will be the one to lose. Those granted early release will be thrown into local communities unprepared and unable to accommodate them. Without housing support most will be forced to live in substandard housing, often drug infested. Most will initiate their compulsive drug use again, and without treatment the acuity of their addiction will worsen and their exposure to re-arrest and incarceration will increase. A prison release order will not remedy these problems.

6

Garner/ 00006

# ROBERT GARNER

## Resume

**EMPLOYMENT:**

Since 1971, developed and administered Santa Clara County's drug and alcohol services and currently serves as Director, Department of Alcohol and Drug Services. Responsible for directing a $50 million department employing 166 staff that provides a combination of direct and contract substance abuse prevention, intervention, treatment and recovery services. Develops and leads the County's response to the substance abuse problem and develops systems to integrate substance abuse services with a variety of related criminal justice, health and other human services in the County. Consults with State and Federal agencies, the State Legislature, Board of Supervisors and other government agencies.

From 1981 to 1983 served concurrently as Acting Public Administrator/Guardian for Santa Clara County.

In 1987 served as Acting Director, Office of Justice Planning, Office of the County Executive. Developed a new office to provide coordinated, countywide planning for the various criminal justice agencies and administration of a criminal justice grant program.

From 1967 to 1970 served as Legislative Assistant and Press Secretary to Representative John M. Murphy (D-NY) in his Washington, D.C. and New York offices. Developed legislative positions, handled media and press relations, and wrote speeches and other public relations material.

**PROFESSIONAL:**

Founding member and past Chairman, County Alcohol and Drug Program Administrators Association of California. Currently, member of Executive Committee and Chairman, Youth Committee.

Consulted with various State and local agencies including California Youth Authority, California Department of Alcohol and Drug Programs, Federal Office of Treatment Improvement.

**EDUCATION:**

Stanford University, Political Science 1965

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

## PROOF OF SERVICE BY MAIL

*Plata, et al. v. Schwarzenegger, et al.*    Nos.  C01-1351 THE (Northern District)
CIV S-90-0520 LKK JFM P (Eastern District)

I, Linda Ramos, say:

I am now and at all times herein mentioned have been over the age of eighteen years, employed in Santa Clara County, California, and not a party to the within action or cause; that my business address is 70 West Hedding, East Wing, 9th Floor, San Jose, California 95110-1770.  I am readily familiar with the County's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I served a copy of **EXPERT REPORT OF ROBERT GARNER** by placing said copy in an envelope addressed to:

**SEE ATTACHED SERVICE LIST**

which envelope was then sealed, with postage fully prepaid thereon, on **August 15, 2008**, and placed for collection and mailing at my place of business following ordinary business practices.  Said correspondence will be deposited with the United States Postal Service at San Jose, California, on the above-referenced date in the ordinary course of business; there is delivery Service by United States mail at the place so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on **August 15, 2008**, at San Jose, California.

Linda Ramos

Garner/ 00008

| | |
|---|---|
| 1 | Donald Specter |
| 2 | Prison Law Office<br>General Delivery |
| 3 | San Quentin, CA 94964<br>E-Mail: dspecter@prisonlaw.com |
| 4 | |
| 5 | Claudia B Center, Legal Aid Society<br>Employment Law Center |
| 6 | 600 Harrison Street, Suite 120<br>San Francisco, CA 94107 |
| 7 | E-Mail: ccenter@las-elc.org |

K & L Gates LLP
Jeffrey L. Bornstein
Edward P. Sangster
Raymond E. Loughrey
55 Second Street, Suite 1700
San Francisco, CA 94105-3493

Michael Bien
Rose, Bien and Galvan
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
E-Mail: mbien@rbg-law.com

Warren E. George
Bingham McCutchen
3 Embarcaradero Center, Fl. 24
San Francisco, CA 94104
E-Mail: warren.george@bingham.com

Martin J. Mayer
Kimberly Hall Barlow
Jones & Mayer
3777 North Harbor Boulevard
Fullerton, CA 92835
E-Mail: mjm@jones-mayer.com
E-Mail: khb@jones-mayer.com

Ronald Yank
Natalie Leonard
Gregg MacClean Adam
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
E-Mail: gadam@cbmlaw.com
E-Mail: nleonard@cbmlaw.com

Paul Mello
Hanson Bridget
425 Market Street, 26th Floor
San Francisco, CA 94105
E-Mail: Pmello@hansonbridgett.com

Richard Goff
Heller, Ehrman White & McAuliffe
701 Fifth Avenue
Seattle, WA 98104
E-Mail: Not Available

Edmund G. Brown Jr., Attorney General
Lisa Tillman, Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
E-Mail: Lisa.Tillman@doj.ca.gov

Steven S. Kaufhold
Terese Wang
Akin Gump Straus Hauer & Feld LLP
580 California Street, 15th Floor
San Francisco, CA 94102
E-Mail: skaufhold@akingump.com

Rochelle East, DAG
455 Golden Gate Avenue, Suite 1100
San Francisco, CA 94102
E-Mail: rochelle.east@doj.ca.gov

Rod Pacheco
Chuck Huges
Office of the District Attorney
County of Riverside
4075 Main Street, First Floor
Riverside, CA 92501
E-Mail: rodpacheco@co.riverside.ca.us

Michael P. Murphy, County Counsel
Carol L. Woodward, Deputy County Counsel
Office of the County Counsel
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
E-Mail: mmurphy@co.sanmateo.ca.us
E-Mail: cwoodward@co.sanmateo.ca.us

A... R RAVEL
Cou... ..sel
County of Santa Clara
San Jose, California

Garner/ 00009

Dennis Bunting, County Counsel
Alan Cohen, Deputy County Counsel
Office of the County Counsel
675 Texas Street, Suite 6600
Fairfield, California 94533
E-Mail: dwbunting@solanocounty.com
E-Mail: amcohen@solanocounty.com

Steven M. Woodside, County Counsel
Anne L. Keck, Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403-2815
E-Mail: swoodside@sonoma-county.org
E-Mail: akeck@sonoma-county.org

Stephen Shane Stark, County Counsel
Kelly Duncan Scott, Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
105 East Anapamu Street, Room 201
Santa Barbara, California 93101
E-Mail: sstark@co.santa-barbara.ca.us
E-Mail: kscott@co.santa-barbara.ca.us

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

.ER RAVEL
County of Santa Clara
San Jose, California

Garner/ 00010

Exhibit A

**California Department of Correction and Rehabilitation**
**California Prisoners and Parolees 2006**

County of Santa Clara Trial Exhibit #Q

# EXHIBIT B
# TO EXPERT REPORT OF
# ROBERT GARNER

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
E. IVAN TRUJILLO, Bar No. 228790
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
SARAH M. LAUBACH, Bar No. 240526
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

HELLER, EHRMAN, WHITE & McAULIFFE
RICHARD L. GOFF, Bar No. 36377
701 Fifth Avenue
Seattle, Washington 98104
Telephone: (206) 447-0900

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

Attorneys for Plaintiffs

DOCKETED
APR 17 2008
By
No.

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No.: Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** <br><br> ***COLEMAN* PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT ARNOLD SCHWARZENEGGER'S FIRST SET OF INTERROGATORIES** |
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> vs. <br><br> Defendants | No. C01-1351 TEH <br><br> **THREE-JUDGE COURT** |

*Coleman* Plaintiffs' Supplemental Responses To Defendant Arnold Schwarzenegger's First Set Of Interrogatories
NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

68209-4

Garner/ 00140

PROPOUNDING PARTY:    DEFENDANTS SCHWARZENEGGER, et al.

RESPONDING PARTY:    PLAINTIFFS RALPH COLEMAN, ET AL.

SET:    ONE

    Pursuant to Federal Rule of Civil Procedure 33 and the general rules governing discovery, Plaintiff Ralph Coleman, on behalf of the *Coleman* class, hereby submits supplemental responses to Defendants' First Set of Interrogatories to Plaintiff Ralph Coleman.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

    1.    The parties met and conferred about this first set of interrogatories and these supplemental responses. Defendants requested supplemental responses to Interrogatories 3-14 and clarified that this set of Interrogatories is directed to Ralph Coleman as a class representative and not as an individual. Accordingly, the supplemental responses are submitted on behalf of the class as a whole.

    2.    Plaintiffs have not completed their investigation of the facts relating to this case, have not completed their discovery in this action and have not completed their preparation for trial. Therefore, these responses, while based on diligent factual exploration, reflect only Plaintiffs' current state of knowledge, understanding, and belief with regard to the matters about which inquiry has been made. Plaintiffs reserve the right to supplement these responses with subsequently obtained or discovered information. With regard to each Interrogatory, Plaintiffs reserve the right, notwithstanding these answers and responses, to employ at trial or in any pretrial proceeding herein information subsequently obtained or discovered, information the materiality of which is not presently ascertained, or information Plaintiffs do not regard as coming within the scope of the Interrogatories as Plaintiffs understand them.

    3.    These responses are made solely for the purpose of this action. Each answer is subject to all objections as to competence, relevance, materiality, propriety, admissibility, privacy, privilege, and any and all other objections that would require exclusion of any statement contained herein if any such Interrogatories were asked of, or any statement contained herein were made by, a witness present

Garner/ 00141

and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

4.     Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. Plaintiffs' answers or objections to any Interrogatory are not an admission of any fact set forth or assumed by that Interrogatory. In addition, each of Plaintiffs' answers to an Interrogatory or part of any Interrogatory is not a waiver of part or all of any objection they might make to that form of Interrogatory, or an admission that such answer or objection constitutes admissible evidence. Plaintiffs assert these objections without waiving or intending to waive any objections as to competency, relevancy, materiality or privilege.

5.     Plaintiffs object to each and every Interrogatory to the extent that Defendants are requesting information that is privileged pursuant to the attorney-client privilege, the work product doctrine, the right to privacy, or any other applicable privilege or doctrine. Plaintiffs object to the Definition of "PLAINTIFFS" which specifically includes "attorneys" and therefore by definition seeks information in violation of the attorney-client privilege and the work product doctrine. Plaintiffs object to the Instructions provided by Defendants insofar as they specifically call for information protected by the attorney-client privilege and work-product doctrine, such as requiring Plaintiffs to "furnish all information available to you, including information in the possession of your...attorneys..." and asking for information that is "obtained or developed by you or your counsel."

6.     Plaintiffs object to each and every Interrogatory to the extent that Defendants are requesting information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Plaintiffs object to the Interrogatories to the extent that they seek information available to Defendants through public sources or records, and on the grounds that they subject Plaintiffs to unreasonable and undue annoyance, oppression, burden and expense. Plaintiffs further object to the Requests to the extent that such Requests are unduly burdensome because much or all of the information requested in the Interrogatories is in the possession of Defendants, has been filed with Court, or is otherwise equally or more available to Defendants than to Plaintiffs.

2

68269-4

Garner/ 00142

8.      Plaintiffs object to the Interrogatories to the extent that they are vague and ambiguous and do not include adequate definition, specificity, or limiting factors.

9.      Plaintiffs object generally to each Interrogatory to the extent that it seeks information prepared by expert consultants. Plaintiffs submitted one round of expert reports on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit supplemental and/or new expert reports in accordance with the schedule that will be established by the Three-Judge Court. Many of Defendants' Interrogatories request information that will be provided in whole or in part by expert testimony.

10.      Plaintiffs object generally to each Interrogatory that involves an opinion or contention that relates to fact or the application of law to fact upon the ground that such Interrogatories are premature and inappropriate until after discovery has been completed. Plaintiffs moreover object to Interrogatories requesting "each and every" and/or "any and all" fact(s) or piece(s) of evidence on a particular topic, as such contention Interrogatories are unduly burdensome, oppressive, and inappropriate.

11.      Plaintiffs object to the Definitions provided by Defendants. While the term "PRISONER RELEASE ORDER" is defined by reference to the statutory definition, it is vague, ambiguous, and overbroad as used in these Interrogatories. The statute has rarely, if ever, been interpreted by the federal courts, and the question of whether a particular order is a "Prisoner Release Order" depends on a range of complex factual and legal elements, including deciding whether an order "has the purpose or effect" of "reducing or limiting population" or "directing the release from or nonadmission of prisoners."

Subject to and without waiving the foregoing objections, and incorporating them by reference into each of the responses provided below, Plaintiffs hereby provide the following supplemental responses.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 3:**

If the response to Interrogatory number 1 is affirmative, by what amount must the *Coleman* mental health caseload be reduced by the PRISONER RELEASE ORDER to remediate that failure?

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. While the term "PRISONER RELEASE ORDER" is defined by reference to the statutory definition, it is vague, ambiguous, and overbroad as used in this Interrogatory. The statute has rarely, if ever, been interpreted by the federal courts, and the question of whether a particular order is a "Prisoner Release Order" depends on a range of complex factual and legal elements, including deciding whether an order "has the purpose or effect" of "reducing or limiting population" or "directing the release from or nonadmission of prisoners." Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows: As Judge Karlton found in his Order of July 23, 2007, "the orders of this court issued from 1995 through the present have failed to remedy the constitutionally inadequate delivery of mental health care to CDCR inmates." 7/23/07 Order at 7:22-23. Plaintiffs contend that crowding is the primary cause of the ongoing constitutional violations and that no other relief other than a prisoner release order will remedy the constitutional violations in a timely manner. A prisoner release order that excludes or

4

Garner/ 00144

1  discriminates against the *Coleman* class, in Plaintiffs' opinion, will be unlikely to promptly and

2  effectively alleviate the ongoing constitutional violations.  Plaintiffs further contend that a prisoner

3  release order that is directed solely at the *Coleman* class and fails to address overcrowding in general is

4  also unlikely to promptly and effectively alleviate the constitutional violations.

5      Plaintiffs anticipate that the Court will order Defendants to develop a plan to accomplish the

6  population reductions, meaning that Defendants will be the ones charged with safely reducing the

7  population.  Defendants have numerous, evidence-based options available to them to safely effect the

8  population reductions, including those set forth in the following reports commissioned by or otherwise

9  available to Defendants:

10      Expert Panel on Adult Offender and Recidivism Reduction Programming, Report to the
       State Legislature, *A Roadmap for Effective Offender Programming in California* (June

11      29, 2007);

12      Little Hoover Commission, *Solving California's Corrections Crisis: Time is Running
       Out* (January 2007); *Reforming Corrections: Report of the Corrections Independent*

13      *Review Panel*, June 30, 2004 (Former Gov. Deukmejian, Chairman);

14      Petersilia, Joan, *Understanding California Corrections*, California Policy Research
       Center, University of California (May 2006)

15      (http://www.ucop.edu/cprc/documents/understand_ca_corrections.pdf);

16      Final Report and Recommendations, Feb. 2008, Blue Ribbon Commission on Jail
       Overcrowding, County of Santa Barbara, hereinafter "Santa Barbara Report."

17      (http://www.sbsheriff.org/documents/FullFinalBRCReport.pdf);

18      Governor's Rehabilitation Strike Team Report, *Meeting the Challenges of Rehabilitation
       in California's Prison and Parole System*, December 2007

19      (http://www.cdcr.ca.gov/news/docs/GovRehabilitationStrikeTeamRpt_012308.pdf);

20      LAO 2008-09 Budget Analysis, Judicial and Criminal Justice
       (http://www.lao.ca.gov/analysis_2008/crim_justice/crimjust_anl08.pdf);

21

22      "Accelerated Release:  A Literature Review, January 2008 (available at
       http://www.nccd-crc.org) and all reports cited therein.

23      In terms of the numbers by which the *Coleman* and or general population must be reduced to

24  remediate the ongoing constitutional violations, it is impossible for Plaintiffs to determine at this time

25  the specific contours of the prisoner release order and, as stated above, Defendants will likely be the

26  ones ordered to develop a release plan.  The necessary population reductions also depend on issues

27  under Defendants' control, such as their ability to comply with required staffing ratios and court-

28

---

5

68269.1

Garner/ 00145

1    ordered mental health bed construction projects, which may change over time. Any release order,

2    however, should include immediate reductions in the prison population over a limited period of time.

3    In Plaintiffs' view, the court may use various benchmarks for determining the population at which

4    defendants can meet constitutional standards for mental health treatment. One method is design bed

5    capacity. The institutions were built for roughly half of the current population. The Deukmejian

6    Commission also suggested that the prison system had an operable capacity of 111,000 prisoners and a

7    maximum "safe and reasonable capacity of 138,000 prisoners." Regardless of what plan Defendants

8    choose to establish, however, Plaintiffs will oppose any release plan that excludes *Coleman* class

9    members and will establish that many class members can be safely released to the community.

10   Moreover, Defendants' plan should include provisions specifically intended to both reduce the intake

11   and the recidivism rates of *Coleman* class members, including but not limited to improved pre-release

12   planning services for *Coleman* class members (including completion of benefits applications with the

13   Social Security and Veterans' Administrations), increased mental health services on parole to include

14   placement in appropriate treatment programs and housing, funding community-based alternatives to

15   returns to custody for parole violations that are related to mental illness, providing access to residential

16   mental health programs (including Department of Mental Health hospitals and programs), establishing

17   specialized mental health parole revocation units oriented to appropriate alternatives to incarceration of

18   persons with mental illness, and expanding mental health courts in the counties to reduce prison

19   commitments for offenders with mental illness. Finally, the exact effect of population reduction

20   measures on the provision of constitutionally adequate mental health care may not be known until the

21   reductions actually begin to occur. To this end, the population reduction measures may have to be

22   implemented in phases and/or may change over time.

23   **INTERROGATORY NO. 4:**

24       Do you contend that the PRISONER RELEASE ORDER must reduce the number of inmates in

25   the different categories of the *Coleman* mental health caseload (such as the Enhanced Outpatient

26   Program, coordinated clinical case management system, inpatient care patient) to achieve

27   constitutionally adequate mental health care?

28

6

Garner/ 00146

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. While the term "PRISONER RELEASE ORDER" is defined by reference to the statutory definition, it is vague, ambiguous, and overbroad as used in this Interrogatory. The statute has rarely, if ever, been interpreted by the federal courts, and the question of whether a particular order is a "Prisoner Release Order" depends on a range of complex factual and legal elements, including deciding whether an order "has the purpose or effect" of "reducing or limiting population" or "directing the release from or nonadmission of prisoners." Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase 1. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows: Yes.

### INTERROGATORY NO. 5:

If your response to the previous Interrogatory is affirmative, identify the reduction for each category of the *Coleman* mental health caseload and by level of custody to achieve constitutionally adequate mental health care.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs also

7

Garner/ 00147

object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows: See Supplemental Response to Interrogatory No. 3.

**INTERROGATORY NO. 6:**

State each and every policy and procedure Defendants should adopt to achieve the amount of the reduction in the *Coleman* mental health caseload necessary to remediate Defendants' failure to provide constitutionally adequate mental health care according to the Revised Program Guide standards.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. The request for "each and every" conceivable policy and procedure is unduly burdensome and oppressive because it is unlimited in time and scope and requests information not possibly within Plaintiffs' knowledge. Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

*Coleman* Plaintiffs' Supplemental Responses To Defendant Arnold Schwarzenegger's First Set Of Interrogatories
NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

Garner/ 00148

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows: Plaintiffs anticipate that the Court will order Defendants to develop a plan to accomplish the population reductions, meaning that Defendants will be the ones charged with safely reducing the population. Defendants have numerous, evidence-based options available to them to safely effect the population reductions, including, but not limited to, those set forth in the following reports commissioned by or otherwise available to Defendants:

Expert Panel on Adult Offender and Recidivism Reduction Programming, Report to the State Legislature, *A Roadmap for Effective Offender Programming in California* (June 29, 2007);

Little Hoover Commission, *Solving California's Corrections Crisis: Time is Running Out* (January 2007); *Reforming Corrections: Report of the Corrections Independent Review Panel*, June 30, 2004 (Former Gov. Deukmejian, Chairman);

Petersilia, Joan, *Understanding California Corrections*, California Policy Research Center, University of California (May 2006) (http://www.ucop.edu/cprc/documents/understand_ca_corrections.pdf);

Final Report and Recommendations, Feb. 2008, Blue Ribbon Commission on Jail Overcrowding, County of Santa Barbara, hereinafter "Santa Barbara Report." (http://www.sbsheriff.org/documents/FullFinalBRCReport.pdf);

Governor's Rehabilitation Strike Team Report, *Meeting the Challenges of Rehabilitation in California's Prison and Parole System*, December 2007 (http://www.cdcr.ca.gov/news/docs/GovRehabilitationStrikeTeamRpt_012308.pdf);

LAO 2008-09 Budget Analysis, Judicial and Criminal Justice (http://www.lao.ca.gov/analysis_2008/crim_justice/crimjust_anl08.pdf);

"Accelerated Release: A Literature Review, January 2008 (available at http://www.nccd-crc.org) and all reports cited therein.

As these and other reports make clear, Defendants have numerous, evidence-based population reduction options available to them that can be done safely and, in light of the dangerous overcrowding in the prison system right now, could actually improve public safety. Some of the population reduction measures available to Defendants include, but are not limited to the following:

1.    Fund Community Corrections Programs to Divert Prisoners with Sentences of Fewer than 24 Months.

2.    Provide Intensive Probation Supervision for 18-25 year old offenders.

*Coleman* Plaintiffs' Supplemental Responses To Defendant Arnold Schwarzenegger's First Set Of Interrogatories
NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

Garner/ 00149

3.    Replace Discretionary Day for Day Earned Time with Statutory Day for Day Credits, with Provisions That Only Disciplinary Conduct Can Result in Lost Days. This would ensure that all prisoners receive day for day credits (including pretrial jail credits) that can only be removed for serious misconduct. Washington, Indiana and Illinois have similar statutory schemes and this remedy was also recommended by the Expert Panel and Deukmejian Panel reports.

4.    Provide Supplemental Program Credits For Prisoners Complying With Case Management Plan And For Prisoners Who Complete Rehabilitative Programs. *See* Expert Panel Report, pp. 92-93.

5.    Transfer Low Risk Prisoners with Fewer than 12 months to Serve to Parole. This will require use of the risk assessment tool identified below and would place low risk offenders on a very short period of parole supervision while moving moderate to high risk offenders to community corrections centers (CCCs) or reentry facilities.

6.    Discharge Low Risk Offenders from Parole if Arrest-Free for 12 Months.

7.    Use a Validated Risk Assessment Procedure to Release Non-Violent, Non-Sex Offenders from Prison without Parole. *See* Expert Panel, Exhibit E, p. 90.

8.    Develop A Parole Sanctions Matrix Based on the Risk to Re-Offend Level of the Offender And the Seriousness of the Violation. Similar matrices are currently in use in other states, as reported by the National Institute of Corrections. The matrix should preclude low risk parolees from being returned to prison for technical violations or misdemeanors.

9.    Implement a Validated Risk Assessment Instrument Throughout CDCR. The prison system has ready access to such an instrument, which will ensure that high risk prisoners are not released from prison without proper supervision and that low-risk people are not over-supervised. CDCR *already* compiles the data necessary to use this risk assessment tool.

Garner/ 00150

10.    Immediately Hire Sufficient Staff to Calculate Credits and to Process Outgoing Prisoners.  The state found that 354 out of 679 prisoners subject to a recent audit were not released on time, resulting in $2.3 million in added housing costs for those prisoners.

11.    Greatly Expand the Availability of Alternative Sanctions As Recommended by the Parole Sanctions Matrix.  Some examples include residential multi-service centers, drug treatment programs, electronic in-home detention, mental health programs providing residential, day treatment and other necessary programs and services, and day reporting centers.

12.    Divert New Court Commitments with County Subsidy Grants.  One option is to provide funding to counties similar to Senate Bill 81 (requiring non-violent juvenile offenders to be retained in the community) for housing/treatment of non-violent adult offenders.  The state of Pennsylvania also has this type of diversion program.

13.    Automatically Restore Good-Time Credits for All Prisoners with Non-Serious Misconduct (Classes D, E, And F).  Under the current system, prisoners must request restoration of these credits, which are then inconsistently restored throughout the system.  This change would result in automatic restoration of credits in the absence of additional misconduct by the prisoner.

14.    Expand Pre-Release Planning Services for Mentally Ill, Developmentally Disabled, And Other Special Needs Inmates to Include Benefits Applications With the Social Security And Veteran's Administrations.  The CDCR will need to complete contract negotiations with each federal agency and hire social workers to implement this recommendation.

15.    Redirect Funds to Counties to Manage Parolees with Mental Illness, including, for example:

a)    Increase and Fund Mental Health Services on Parole to Include Placement in Appropriate Housing (e.g. Board and Care, Inpatient, Outpatient Day Reporting) to Reduce Recidivism.

11

Garner/ 00151

b)   Fund Community-Based Alternatives to Returns to Custody for Parole Violations that Are Related to Symptoms of Mental Illness.

c)   Expand Mental Health Courts in the Counties to Reduce Prison Commitments for Offenders with Mental Illness.

16.   Establish specialized mental health parole units to provide appropriate supervision, access to treatment, housing and reintegration with the community.

17.   Enact Legislation to Create a Sentencing Commission.  Unless the sentencing structure is reformed the prison population will continue to grow thereby perpetuating a system that will need court supervision to maintain limits on the prison population.

**INTERROGATORY NO. 7:**

State the time frame for the implementation of each and every policy that Defendants should adopt to achieve the reduction in the *Coleman* mental health caseload necessary to remediate Defendants' failure to provide constitutionally adequate mental health care according to the Revised Program Guide standards.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine.  Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion.  Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I.  Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

*Coleman* Plaintiffs' Supplemental Responses To Defendant Arnold Schwarzenegger's First Set Of Interrogatories
NOS.. CIV S 90-0520 LKK-JFM, C01-1351 TEH

Garner/ 00152

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows:  See Supplemental Response to Interrogatory No. 3.  In addition, any plan defendants' develop or adopt should mandate that population reductions occur within a three year period, with most of the reductions occurring within the first two years.  There should also be an immediate reduction of approximately 15,000 prisoners so that no prisoners are housed in what are commonly referred to as "ugly" or "bad" beds, i.e., those in gymnasiums, dayrooms, triple-bunks, and other locations not intended for housing.

**INTERROGATORY NO. 8:**

If those policies and procedures identified in response to Interrogatory number 7 are based upon any prison or population models, please identify each and every model by its source, including but not limited to entity, publication, and author.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine.  Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion.  Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I.  Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows:  See Supplemental Responses to Interrogatory No. 3 and Interrogatory No. 6.

13

Garner/ 00153

**INTERROGATORY NO. 9:**

Do Plaintiffs contend that a PRISONER RELEASE ORDER reducing only non-*Coleman* caseload population will enable Defendants to meet constitutionally adequate standards for mental health care according to the court-approved Revised Program Guide?

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. While the term "PRISONER RELEASE ORDER" is defined by reference to the statutory definition, it is vague, ambiguous, and overbroad as used in this Interrogatory. The statute has rarely, if ever, been interpreted by the federal courts, and the question of whether a particular order is a "Prisoner Release Order" depends on a range of complex factual and legal elements, including deciding whether an order "has the purpose or effect" of "reducing or limiting population" or "directing the release from or nonadmission of prisoners." Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows: See Supplemental Response to Interrogatory No. 3.

**INTERROGATORY NO. 10:**

If your response to Interrogatory number 9 is in the affirmative, please state the amount of that population reduction.

14

Garner/ 00154

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows: See Supplemental Responses to Interrogatory No. 3 and Interrogatory No. 7.

**INTERROGATORY NO. 11:**

For the population reduction stated in response to Interrogatory number 10, please identify the numbers of inmates that you contend must be released by level of custody and gender.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine. Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion. Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I. Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

15

Garner/ 00155

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows:  See Supplemental Responses to Interrogatory No. 3 and Interrogatory No. 7.

**INTERROGATORY NO. 12:**

State each and every policy and procedure Defendants should adopt to achieve the reduction in only *non-Coleman* caseload population stated in response to Interrogatory number 10.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs also object to the extent that it would require disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal conclusion in violation of the work product doctrine.  Plaintiffs further object on the basis that this Interrogatory calls for an expert opinion.  Plaintiffs disclosed their experts and served initial reports of the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order Bifurcating Proceedings and Setting Deadlines for Phase I.  Plaintiffs will submit additional expert reports in accordance with the deadlines set by the Three-Judge Court.

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows:  See Supplemental Response to Interrogatory No. 6.

**INTERROGATORY NO. 13:**

State the time frame for the implementation of each and every policy that Defendants should adopt to achieve the reduction in only *non-Coleman* caseload population necessary to remediate Defendants' failure to provide constitutionally adequate mental health care according to the Revised Program Guide standards.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs also

16

1  object to the extent that it would require disclosure of information protected by the attorney-client

2  privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal

3  conclusion in violation of the work product doctrine.  Plaintiffs further object on the basis that this

4  Interrogatory calls for an expert opinion.  Plaintiffs disclosed their experts and served initial reports of

5  the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order

6  Bifurcating Proceedings and Setting Deadlines for Phase I.  Plaintiffs will submit additional expert

7  reports in accordance with the deadlines set by the Three-Judge Court.

8        Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows:  See

9  Supplemental Response to Interrogatory No. 7.

10  **INTERROGATORY NO. 14:**

11        If those policies and procedures identified in response to Interrogatory number 12 are based

12  upon any prison or population models, please identify each and every model by its source, including

13  but not limited to entity, publication, and author.

14  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

15        In addition to the General Objections stated above, Plaintiffs object to this Interrogatory on the

16  grounds that it is vague, ambiguous and overbroad and that it seeks information not relevant to this

17  litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs also

18  object to the extent that it would require disclosure of information protected by the attorney-client

19  privilege, work-product doctrine, and/or any other applicable privilege and improperly calls for a legal

20  conclusion in violation of the work product doctrine.  Plaintiffs further object on the basis that this

21  Interrogatory calls for an expert opinion.  Plaintiffs disclosed their experts and served initial reports of

22  the experts on November 9, 2007, as required by the Three-Judge Court's October 10, 2007 Order

23  Bifurcating Proceedings and Setting Deadlines for Phase I.  Plaintiffs will submit additional expert

24  reports in accordance with the deadlines set by the Three-Judge Court.

25

26

27

28

Coleman Plaintiffs' Supplemental Responses To Defendant Arnold Schwarzenegger's First Set Of Interrogatories
NOS. CIV S 90-0520 LKK-JFM, C01-1351 TEH

Garner/ 00157

Subject to and without waiver of the above-stated objections, Plaintiffs respond as follows:  See Supplemental Responses to Interrogatory No. 3 and Interrogatory No. 6.

Dated:  April 11, 2008

ROSEN, BIEN & GALVAN, LLP

By: _____
Amy Whelan
Attorneys for Plaintiffs
RALPH COLEMAN, ET AL.

18

Garner/ 00158

## VERIFICATION

I, Ralph Coleman, certify and declare that I have read the foregoing "Coleman Plaintiffs' Supplemental Responses to Defendant Schwarzenegger's First Set of Interrogatories" and know the contents thereof.

I, Ralph Coleman, class representative in this action, am authorized to make this verification for and on behalf of Plaintiffs, and I make this verification for that reason. The responses are not all within my personal knowledge. I am informed and believe that there is no single person who has full personal knowledge of all of the matters set forth therein and that the responses were prepared with the advice and assistance of counsel. Subject to inadvertent or undiscovered errors and reserving the right to make changes to the responses if it appears that there were errors or omissions, I allege that the matters stated in the responses are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed at Vacaville, California on April 10th, 2008.

*Ralph Coleman*

Ralph Coleman

19

Garner/ 00159

## PROOF OF SERVICE

I, Kathleen Johnson-Silk, declare that I am a resident of the State of California, am over the age of eighteen years and am not a party to the within action. I am employed with Rosen, Bien & Galvan LLP, whose address is 315 Montgomery Street, Tenth Floor, San Francisco, California 94104. On April 11, 2008, I served the following documents:

**PLAINTIFF RALPH COLEMAN'S SUPPLEMENTAL RESPONSE TO DEFENDANT GOVERNOR SCHWARZENEGGER'S FIRST SET OF INTERROGATORIES**

I served the documents on the persons listed below, as follows:

| | |
|---|---|
| [ ] | **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons listed below and providing them to a professional messenger service for service. (A declaration by the messenger is attached hereto as a separate document.) |
| [X] | **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons listed below and placed the envelope or package for collection and mailing in accordance with our ordinary business practices. I am readily familiar with my firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California. |
| [ ] | **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addressed listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

Lisa A. Tillman
Deputy Attorney General
P.O. Box 944255
Sacramento, CA 94244-2550

Paul B. Mello, Esq.
Hanson & Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

Lead Counsel for County Intervenors
Ann Miller Ravel
Theresa Fuentes
Office of the County Counsel
70 West Hedding, East Wing, 9th Floor
San Jose, CA 95110

Republican Assembly and Senate Intervenors
Steven S. Kaufhold
Akin, Gump Strauss Hauer & Feld, LLP
580 California Street, 15th Floor
San Francisco, CA 94104

*Coleman* Plaintiffs' Supplemental Responses To Defendant Arnold Schwarzenegger's First Set Of Interrogatories
NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

Garner/ 00160

California Correctional Peace Officers'
Association (CCPOA) Intervenors
Natalie Leonard
Gregg MacClean Adam
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

County of Sonoma Intervenors
Anne L. Keck, Deputy County Counsel
Steven Woodside
575 Administration Drive, Room 105A
Santa Rosa, CA 95403

District Attorney Intervenors
William E. Mitchell
Assistant District Attorney
Riverside County District Attorney's
Office
4075 Main Street, First Floor
Riverside, CA 92501

California Sheriff, Probation, Police Chief
and Corrections Intervenors
Jones & Mayer LLP
Martin J. Mayer
Michael R. Capizzi
Kimberly Hall Barlow
Elizabeth R. Feffer
3777 North Harbor Boulevard
Fullerton, CA 92835

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this Proof of Service was executed on this 11th day of April, 2008, at San Francisco, California.

_____
Kathleen Johnson-Silk

21

Garner/ 00161

Exhibit C

**Santa Clara County Department of Alcohol and Drug Services**
**Episodes of Care for Fiscal Year 2008**

County of Santa Clara Trial Exhibit #L

Exhibit D

**Santa Clara County Department of Alcohol and Drug Services
Network for the Improvement of Addiction Treatment
Preliminary Baseline Aims Fiscal Year 2007**

County of Santa Clara Trial Exhibit # M

Exhibit E

**Fiscal Year 2006 Adult Treatment Cost for the Department of Drug and Alcohol**

County of Santa Clara Trial Exhibit F