# Sonoma County Corrections Master Plan
## Summary

Sonoma County has the building blocks for a strong and effective system. Its commitment to efficient jail management is evident in its broad array of alternative to jail programs. Moreover, it stands out for having experienced staff with a real interest in moving offenders toward positive change. Importantly, it also has a culture of teamwork and an interest in pursuing new ideas. Taken together, this puts Sonoma County in a strong position to take its system to the next level.

Given this foundation, Sonoma County is now in a position to ask: How might we optimize system resources? This Report provides system data and recommendations to address this question.

**The Analysis**

The Criminal Justice System analysis has revealed areas where action can be taken to further reduce the impact on the jail.

This analysis involved the development of a Jail 'snapshot' to provide a detailed review of the in-custody population, and to allow the county to monitor changes in the inmate population over time.

The analysis also included an examination of system case processing, tracking all defendants booked into the Sonoma County Jail on a new charge over a one-year period, and following their cases through to disposition.

And, the analysis included an examination of alternative to jail programs. We collected snapshot data on offenders in substance abuse treatment; summarized referral source data; conducted an analysis of reasons defendants were denied treatment; examined program discharge data; distributed surveys to probation officers to review case management issues; and distributed surveys to treatment providers for look at program characteristics and methods of treatment delivery.

Finally, over the course of multiple visits to the county, time was spent meeting with key officials, reviewing system policies, and observing the operations of the system. All this has resulted in this Report, which provides the reader with a wealth of Jail and system date, and concludes with recommendations for system change.

**The Findings**

The principle findings are as follows:

1

- **The system is negatively impacted by high pre-trial failure rates**
  Felony pre-trial re-arrest rates (31%) are significantly higher than the national average.

- **Pre-Trial failure rates reflect the lack of a comprehensive Pre-Trial program, the absence of objective risk screening, and an over-reliance on surety releases.**
  Failure-to-appear rates for defendants released on Surety were more than two times the rate of those released to Pre-Trial program supervision. Overall, 69% of pre-trial felony defendants exited jail on a surety release.

- **System case processing times and failure rates are related**
  The time from booking to disposition is two times as long for defendants who have a FTA.

- **The Jail is impacted by repeat offenders**
  Misdemeanor defendants had an average of 7 prior bookings into the Jail; felons had an average 6 prior bookings.

- **The Jail is impacted by case processing times**
  Time from booking to attorney filing of charges is 55 days for felons. The average time from booking to disposition for felons is 142 days.

- **Case attrition takes a toll on the system**
  The felony filing rate in Sonoma County is 49%. Most of the cases that end with a 'no complaint' are domestic violence cases.

- **The Jail is Impacted by the Time to Complete the Pre-sentence Investigation**
  The average time from disposition to sentencing is 46 days. There was little difference in the time to complete the PSI between those in custody and those out of custody.

- **The Jail is impacted by a high number of defendants on 'Hold' status**
  Of the Jail's average daily population, 39% are in 'hold' status. Of these, more than one-third are comprised of ICE holds.

- **The Jail is impacted by the percentage of offenders who receive Jail time as their sentence**
  53% of felony offenders received a jail sentence, higher than the national average of 28%.

- **The system is impacted by DUI offenses**
  32% of felony defendants booked into the Jail had 2 or more prior bookings on a DUI charge.

2

- **The most intensive treatment is not necessarily reserved for the higher risk offender.**
  The pathway to treatment can be through self-referrals (over 60% of TASC assessments are for defendants who self-referred)

- **Violent charges or history can be a barrier to treatment**
  40% of TASC treatment denials were because of violent charges

- **Treatment outcomes suffer when system is not able to sanction**
  Although Prop. 36 clients have relatively good completion rates, incarceration rates are roughly 2 times that of drug court participants.

**The Recommendations**

The recommendations can be grouped in five general areas:

1. Reduce Adjudication Time
    - Develop an Expedited Case Resolution Program
    - Fund a Pre-Trial Intake Unit.
    - Streamline Pre-sentence Investigation

2. Improve Program Cost Effectiveness
    - Reduce Cost of System Failures by Funding Pre-Trial
    - Use Risk Assessment to Allocate Resources: Target Higher Risk Offender for Most Intensive Services
    - Improve Front-end Screening and Assessment
    - Provide Direct Access to Lower Cost Intensive Outpatient
    - Improve Return on Investment: Assure Program Adherence to Research on 'What Works'
    - Make Full Use of Existing Resources
    - Expand Sentence Alternatives
    - Assess all Jail Inmates for Step-down Plan

3. New Alternatives
    - Extend the Continuum: Plan a Community Corrections Center

4. Improve System Cohesion
    - Develop Common Case Plans for Offenders
    - Improve Treatment Continuity
    - Improve Information Sharing

5. Adopt Analytic Tools
    - Maintain Integrated Information Systems
    - Establish Best Practice Review and Data Collection
    - Track Program Outcomes

3

If implemented, these measures will go a long way toward reducing impact on the jail and will provide a system strategy for on-going management of the inmate population.

**Priority Recommendations**

Of these recommendations, we would highlight the following as priorities:

- ❖ Develop an Early Case Resolution (ECR) Program
- ❖ Fund a Pre-Trial Program
- ❖ Plan a Community Corrections Center
- ❖ Link Program Resources to Criminal Risk
- ❖ Maintain Integrated Information System

We recommend that some of the recommendations be considered collectively, among them:

Jail + CCC
The Jail and Community Corrections Center should be planned together. The two should be considered as part of a single continuum of custody to community resources. Having both facilities provides a jurisdiction with increased flexibility to manage its inmate population, while providing the offender a graduated re-entry to the community.

Pre-trial + ECR
These two new programs should be planned together. Pre-Trial intake services are fundamental to the success of an ECR program. Pre-Trial provides the immediate and validated information that is a prerequisite for accelerated decision-making and swift case resolution. The two go hand in hand.

Risk Assessment Instrument + New Treatment
The assessment of risk should be used to guide the allocation of treatment resources.

Integrated Information System + On-going Planning
Maintaining an integrated information system is crucial to future planning.

Some of the recommendations require a real investment in both time and money, but can be viewed as a 'pay me now or pay me later' proposition. This is because the implementation of these recommendations will result in the more efficient management of existing resources, thereby delaying the day when the county needs to start planning again for more jail beds.

Taken together, these measures form a strategic Corrections Master Plan for Sonoma County.