PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
E. IVAN TRUJILLO, Bar No. 228790
SARA NORMAN, Bar No. 189536
ALISON HARDY, Bar No. 135966
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARIA V. MORRIS, Bar No. 223903
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 AND EXHIBIT THERETO** |

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10
AND EXHIBIT THERETO, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249391-1]

## I. Introduction

Defendants have filed an improper and previously undisclosed expert report, the Declaration Of Robert Canning In Support Of Defendants' Motion In Limine No. 10 Re: Exclude Evidence Of Suicide Rate ("Canning Decl."). The Canning Declaration should be stricken from the record because Dr. Canning was not timely disclosed as an expert witness, his report was not timely provided to the other parties, and his report provides no information whatsoever about his methodology and is, on its face, unreliable. The Canning Declaration should be excluded, together with his "chart."

### A. Robert Canning's Declaration Is An Expert Report

Dr. Canning's declaration is, in large part, based not upon things he personally witnessed, but upon one scholarly article, a review of data that is not specifically identified, and a review of reports by the *Coleman* Special Master. Canning Decl. ¶¶ 7-10, 16-19. Dr. Canning's relies on his own statistical analysis of undisclosed information, and claims to have created a chart to reflect his analysis. Canning Decl. ¶8; *see also Coleman* Docket Nos. 3122 and 3108. Dr. Canning opines: "There is no empirical or scientific basis to causally link [certain] factors to the overall census of CDCR." Canning Decl. ¶17. He further states that "it is [his] opinion that the evidence is inconclusive that there is any causal link between suicide rates and CDCR inmate census." *Id.* at ¶19.

The analysis of statistical information and opinions regarding causality purportedly shown by statistics are typical in expert testimony. *See, e.g.*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1995) (discussing use of statistics by experts); *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 111 F.3d 528, 537-38 (7th Cir. 1997) (finding expert report that simplistically found causation in statistical analysis excludable as inadequately scientific).

Further, Dr. Canning relies on scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702, which is impermissible if he is not being offered as an expert. *See* F.R.E. 701(c). Dr. Canning relies heavily on data from an article published in *Psychiatric Services*, a journal of the American Psychiatric Association. Canning

-1-

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 AND EXHIBIT THERETO, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249391-1]

Decl. ¶¶ 9, 16-17.  This is precisely the type of information that F.R.E. 701(c) precludes a non-expert from using to form an opinion.

There can be no question that Defendants are attempting to proffer an additional expert report through Dr. Canning.  As discussed below, this untimely and improper report should be stricken from the record.

### B. Dr. Canning's Expert Declaration Is Untimely

This Court made clear in its July 2, 2008 Order that "[e]xpert disclosures shall be made, and expert reports exchanged, on or before **August 15, 2008**," and "[r]ebuttal expert disclosures shall be made, and rebuttal expert reports exchanged, on or before **August 27, 2008**." *Coleman* Docket 2859 at 3 (emphasis in the original).

The only way to ensure fairness and consistency in a complicated, multi-party case such as this one is to bind all of the parties to the same deadlines and standards. Moreover, the deadlines with respect to expert reports are particularly significant in this case where, "[d]irect testimony from expert witnesses will be presented through their expert reports and no more than thirty minutes of live testimony, followed by cross-examination." *Coleman* Docket 2859 at 3-4.  Defendants will have an unfair advantage at trial if they can rely on Dr. Canning's October 20, 2008 declaration as part of his direct testimony, or if Plaintiffs must spend some portion of their own experts' direct testimony to address the issues in Dr. Canning's declaration.  Plaintiffs followed the deadlines set forth by this Court and Defendants should be made to do the same.

Here, defendants and Dr. Canning attempt to circumvent this Court's clear deadlines by labeling a report "declaration" when it is based not on information within the declarants own knowledge, but rather on a review of scientific and specialized information.  Defendants' misnomer of the report as a declaration does not change what is really is—an untimely and impermissible expert report.  Dr. Canning was required to serve his report by August 15, 2008 or, if it is considered a rebuttal report to the Plaintiffs' expert Craig Haney, as suggested by Defendants' Motion in Limine No. 10, by August 27, 2008.  Under these circumstances, and to ensure fairness among the parties, the report should be excluded from the record. *See, e.g.,*

-2-

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 AND EXHIBIT THERETO, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249391-1]

1  *Quevedo v. Trans-Pac. Shipping, Inc.,* 143 F.3d 1255, 1258 (9th Cir. 1998) (refusing to
2  consider expert's report because it was filed one-and-a-half months late and party could have
3  asked for an extension of time); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101,
4  1106 (9th Cir. 2001).

   **C.    Dr. Canning's Expert Declaration Has No Reliable Basis**

6  An expert's opinion must have "a reliable basis in the knowledge and experience of [the
7  relevant] discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).  The
8  reliability of the expert's opinion may come from "professional studies or personal
9  experience." *Id*. at 152.  In either case, the expert must demonstrate "the same level of
10 intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id*.

11 Dr. Canning's declaration does not meet the requirements for an expert report.  His
12 declaration includes information far beyond what he has learned through his experience,
13 discussing data he has "obtained," apparently for the purpose of putting together his chart, and
14 declaration, statistical information he has taken from reports filed in this case, and making
15 conclusions about the "empirical or scientific basis to causally link" certain factors to the size
16 of the CDCR population.  Canning Decl. ¶¶ 7, 8, 16-19.

17 Dr. Canning provides no explanation of his methodology in reaching the conclusions
18 that are not based upon his experience.  He does not identify the documents from which he
19 pulled his numbers for his chart, or even what those numbers are.  Canning Decl. ¶¶7-8.  He
20 lists characteristics or risk factors of persons who have committed suicide, pulled from an
21 article and reports written by someone else, and concludes – without any explanation or
22 analysis – that the characteristics are not causally linked to overcrowding or the CDCR
23 population.  Canning Decl. ¶¶ 17-19.  He does not discuss the relationship between the
24 characteristics or risk factors and causation.  He also does not discuss the relationship between
25 the characteristics or risk factors and overcrowding.  Notably, he does not mention that the
26 article upon which he relies states that the suicide review process discussed in his declaration
27 and in the article "took place in a state correctional system that has a designated capacity of
28 79,477 beds and an annual population average of 159,893 for the six-year review period,

-3-

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 AND EXHIBIT THERETO, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249391-1]

exceeding the rated capacity by approximately 200%." Declaration of Jane E. Kahn in Support of Plaintiffs' Opposition to Defendants' Motions in Limine Nos. 3, 10-12 and 14-16, Plaintiffs' Opposition to Defendants' Motion to File Exhibit JJ Under Seal, and Plaintiffs' Motion to Strike ("Kahn Decl."), Ex. E. Dr. Canning instead simply states that certain risk factors and characteristics have been noted, they are not overcrowding, and therefore overcrowding does not cause suicide. Such an unsubstantiated conclusion is "[p]ersonal opinion, not science." *Daubert*, 43 F.3d at 1319. The declaration should be excluded as a matter of law. *Id.*

### D. Dr. Canning's Report Is Unreliable

In additional to being an improper and untimely expert report, Dr. Canning's Declaration fails to support his opinion that there is no causal link between the CDCR suicide rates and overcrowding in CDCR institutions.

First, in discussing the relationship between CDCR population and suicide rates, Dr. Canning provides information that he claims to have gathered from documents that he neither attaches to his declaration nor identifies. *See* Canning Decl. ¶¶ 7-8. Indeed, neither in his declaration nor in the chart he claims to have created from the information from the unidentified documents does Dr. Canning provide the raw numbers of suicides, the population, nor any information about how he calculated the suicide rate. Without adequate information about the source of his numbers, what the numbers are, or how the rate was calculated, the Court and Plaintiffs have no way to meaningfully assess Dr. Canning's assertions.

Further, the information in his declaration for which Dr. Canning does provide a source does not in fact lead to his opinion that there is no causal link between overcrowding and suicide rates. Dr. Canning presents the finding of Drs. Patterson and Hughes that "expressions of safety concerns with associated anxiety and agitation" are one of the characteristics of inmates at risk for suicide. Canning Decl. ¶ 17. However, as explained by Plaintiffs' Expert Dr. Craig Haney, overcrowded conditions lead to violence and anxiety. Declaration of Paul Mello in Support of Defendants' Motions in Limine, Ex. CC ("Haney Decl."), ¶¶53-56. Indeed, the article by Drs. Patterson and Hughes concludes with recommendations for CDCR "correctional administrative, clinical, and custody staff members to assist in their efforts to

-4-

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 AND EXHIBIT THERETO, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249391-1]

establish and manage an effective suicide prevention program," including: "Consideration of the impact of overcrowding and staffing deficiencies." Kahn Decl. Ex.E.

Similarly, Dr. Canning presents the finding of the *Coleman* Special Master that the records for 72.1% of the inmates who committed suicide in 2006 showed "significant indications of inadequate treatment." Canning Decl. ¶ 18. Dr. Canning apparently does not recognize that "[a] number of the inadequacies in treatment that the Special Master identified appear to be the direct result of the severe overcrowding-related problems." Haney Decl. ¶¶353-54.

Moreover, Dr. Canning claims that correctional officers are required "to initiate and continue cardiopulmonary resuscitation to inmates who are unresponsive due to their suicide attempts, unless the inmate demonstrates rigor mortis or other signs of obvious trauma rendering such response moot." Canning Decl. ¶ 15. However, according to the *Coleman* Special Master's report, in 39.5% of the 43 suicide cases in 2006 reviewed by the Special Master, CPR was not performed at all or was not initiated in a timely manner. *Coleman* Docket No. 3030 at 10. Such a high rate of non-compliance with the requirement of providing life-saving assistance suggests that corrections officers are stretched too thin by the demands of the overcrowded prisons to respond to suicide attempts in a timely and appropriate manner.

Finally, Dr. Canning describes the policies that were established to attempt to address the alarming rate of suicides in Administrative Segregation Units, and states that overcrowding was never identified as a cause of the suicides in these units. Canning Decl. ¶ 12. However, in Defendants' Plan to Address Suicide Trends in Administrative Segregation Units, filed with the Court on October 2, 2006, Defendants' themselves acknowledged part of the role that overcrowding played in the extreme deprivation suffered by non-disciplinary inmates in the Administrative Segregation Units. Defendants argued that they could not sustainably segregate disciplinary and non-disciplinary inmates in the Administrative Segregation Units, which they considered a requirement to allow greater freedoms for non-disciplinary inmates, because of "the Department's current housing crisis." *Coleman* Docket No. 1990 at 15.

Not only is Dr. Canning's declaration an improper expert report, it is demonstrably

unreliable as a source of factual information.  There is no basis for the consideration of this declaration whether as an expert report or as the declaration of a percipient witness.  The declaration and the unsubstantiated chart created by Dr. Canning should be stricken from the record.

## II.  Conclusion

The Declaration of Dr. Canning in Support of Defendants' Motion in Limine No.10 Re: Exclude Evidence of Suicide Rate, and his chart filed as *Coleman* Docket Nos. 3122 and 3108, should be stricken from the record as improper, untimely, and demonstrably unreliable.

Dated:  October 30, 2008                           Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP


By: */s/ Maria V. Morris*
    Maria V. Morris
    Attorney for *Coleman* Plaintiffs and on
    Behalf of *Plata* Plaintiffs

-6-

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 AND EXHIBIT THERETO, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249391-1]