

COUNTY ADMINISTRATION CENTER
575 ADMINISTRATION DRIVE,
ROOM 105A
SANTA ROSA, CALIFORNIA 95403

TELEPHONE: (707) 565-2421
FACSIMILE: (707) 565-2624

ASSISTANT COUNTY COUNSEL
BRUCE D. GOLDSTEIN

**OFFICE OF THE COUNTY COUNSEL**
STEVEN M. WOODSIDE
County Counsel

CHIEF DEPUTIES
C. DAVID HURST                RICHARD M. FLORES
TARA HARVEY                   SHERYL L. BRATTON

DEPUTIES
KATHLEEN A. LAROCQUE      BARBARA A. FITZMAURICE
SUZANNE M. DE KOZAN      LINDA D. SCHILTGEN
SUE GALLAGHER            ELIZABETH S. HUTTON
JEFFREY L. BERK          WILLIAM L. ADAMS
SALLY B. MCGOUGH         JEFFREY M. BRAX
DAVID R. MCFADDEN        JENNIFER C. KLEIN
GREGORY T. DION          MARGARET A. SINGLETON
STEVEN S. SHUPE          DEBBIE F. LATHAM
PHYLLIS C. GALLAGHER     THERESA L. CUNNINGHAM
ANNE L. KECK             CORY W. O'DONNELL
TINA M. WALLIS

December 18, 2007

*Via e-mail only*

The Honorable Elwood Lui                    *Confidential – for Settlement Purposes Only*
Settlement Referee
elui@jonesday.com

The Honorable Peter Siggins
Settlement Consultant
peter.siggins@mac.com

    Re:    List of Settlement Proposals from the
           Sonoma County Intervenors and County Intervenors
           in the Consolidated Cases of
           *Coleman, et al. v. Schwarzenegger, et al.* (CIV S-90-0520 LKK KFM) and
           *Plata , et al. v. Schwarzenegger, et al.* (C01-1351-TEH)

Dear Justices Lui and Siggins:

      The Sonoma County Intervenors and the five County Intervenors hereby propose a list of criminal justice reforms aimed at reducing prison overcrowding, pursuant to your letter dated November 21, 2007. This list is being proposed separately from the proposals intended to be submitted by the other local intervenors (the groups of Sheriffs, Police Chiefs, District Attorneys, and Chief Probation Officers) based the counties' desire to present a global systems approach to settlement, and an inability to reach consensus with the other intervenors due to limited time and other considerations.

      This list of proposed reforms was developed with the assistance of the prison alternatives expert, David Bennett (of David Bennett Consulting), engaged by the County of Sonoma to assist it with its local criminal justice reforms, and was prepared largely at the staff level. Due to a lack of sufficient time, it has not necessarily been reviewed or approved by the appropriate public officials. This list should not be construed as an acknowledgment or admission of any of the facts or law that are at issue in the case.

      Among the reforms Intervenors considered, the most effective ones involve a partnership between the State and local officials, creating a seamless and effective system that promptly assesses the risk and needs of persons entering the justice system; appropriately houses and treats them pending trial; appropriately houses, treats and educates those entering the State prison system; and one which provides a services network to assist parolees in re-entering society to

Justice Lui and Siggins
December 18, 2007
Page 2

break the cycle that led to the criminal behavior in the first place. This is known as a "systems approach" that addresses inmate population management across the full corrections continuum. The specific reforms proposed below are evidence-based programs, proven to reduce recidivism, and which will ultimately lower costs at State and local levels, and provide for a generally healthier community. All of them require sufficient funding from the State to be developed and implemented.

Suggested reforms to decrease prison overcrowding include the following:

1. Adopt objective risk/needs assessment models
2. Strengthen the community corrections continuum
3. Reform parole/probation revocation and supervision policies and practices
4. Strengthen non-custody mental health and drug intervention services
5. Ensure access to in-custody programs at both jail and prison levels
6. Appropriate sentencing reform

These proposals are discussed in detail, below. Following such discussion, we have identified those reforms that can occur on a short-term basis to relieve some of the prison overcrowding, sufficient to permit time for the more far-reaching reforms to take effect.

## PROPOSED REFORMS

### 1. Adopt Objective Risk/Needs Assessment Models

Intervenors understand that the State is moving in the direction of employing an objective Risk and Needs Assessments model (Compas) upon prison inmates. Intervenors believe that such assessment tools are vital to properly assess inmates upon their *entry* into the criminal justice system. Risk/needs assessments can help inform decisions about release from custody, diversion eligibility, treatment intensity, and response to non-compliance. Risk assessment can be a tool to help impose the least restrictive option, avoid unnecessary incarceration, and allocate resources in the most cost-effective manner.

Currently, many local agencies do not have risk/needs assessment tools, and even those who have such tools may be unable to effectively implement them, due to a lack of resources. Accordingly, the State should fund county development of "front-end" Risk and Needs Assessment models, and ensure that counties have sufficient resources to apply the models to determine the individual proclivities and needs of each person as he/she enters the justice system. Such information is also necessary to ensure proper placement in diversion, treatment, or intervention programs (more of which are necessary, as discussed below).

Justice Lui and Siggins
December 18, 2007
Page 3

## 2. Strengthen the Community Corrections Continuum

### a. Support County Jail Management Efforts: Pre-Trial Services

The management of prison resources is inextricably tied to jail population management. No proposed solution to manage prison beds will be effective if the jails cannot deliver the "one empty bed" needed to handle new offenders. In discussions of prison reform, attention is always given to the need for more beds, but rarely is the need for jail population management measures raised. Since more than 60% of inmates in California jails are in a pre-trial status, comprehensive pre-trial programs are essential jail population management tools.

Such pre-trial programs act as the gatekeeper to the system. They provide for risk assessments to guide judicial release decisions; support the early appointment of counsel; identify diversion candidates; support early case resolution; monitor pre-trial jail inmates; identify early those defendants with specialized needs (e.g., mental illness); and monitor/supervise pre-trial defendants (e.g., place reminder calls for court dates, ensure program placement). The benefits can be measured in reduced pre-trial failure, reduced impact on jails, informed decision-making, and expedited case processing.

A significant impact for the state of implementing pre-trial services programs is a reduced prison commitment rate. Offenders who are released through a pre-trial Services program and address the underlying issues that resulted in their contact with the criminal justice system are, upon conviction, less likely to be sentenced to prison. The State should set standards for such programs, and provide funding for their development and implementation.

### b. Fund Expanded Local Programs

Prison and jail management depends upon access to community-based alternatives. *Community Corrections Acts* have been adopted by some states to provide funding for counties and cities to develop community-based sanctions, aimed at reducing prison overcrowding and improving jail utilization. These Acts recognize the necessity of having a continuum of community interventions available to structure meaningful responses and conserve scarce custody resources. The state provides monies to counties to develop a Community Corrections plan that is then submitted to the state for funding. Counties are held accountable for the use of the funds, and must demonstrate the success of their programs to be entitled to future funding. This allows for local-based solutions to be developed that are implemented according to overall state goals.

In addition, more and better quality diversion and intervention programs are necessary to address such community issues as drug/alcohol addiction and gang violence. Evidence demonstrates that such intervention must occur at earlier stages, prior to the person entering the justice system. Once young people have entered the justice system, special programs designed for these younger offenders (18-25 year olds) have been proven highly effective in preventing them from becoming hardened criminals. By providing funding for such intervention services to

Justice Lui and Siggins
December 18, 2007
Page 4

be delivered at the local level, people can be diverted from the criminal justice system and kept out of the State prisons.

### c. Fund the Continuum: Community Corrections Centers

One option to provide a local continuum of custody is the development of a Community Corrections Center, a *non-secure* facility that provides a program-based custody/work release option to transition jail inmates, divert prison-bound offenders, respond to lower level technical violations in lieu of returning them to prison, and accept inmates transitioning back to the community from prison. This kind of resource, coupled with sanction policy reform and treatment programs, could allow for the diversion of many lower risk offenders from California prisons (estimates are as high as 30,000 per year).

### d. Expand Diversion/Specialty Courts

The expansion of specialty courts, as both diversion and transition options, holds promise for reducing the impact on jails and prisons. These types of courts include Drug Courts, Mental Health Courts, and Domestic Violence Courts. For example, California's Proposition 36 and Drug Courts are diversion models that have had a positive impact on prisons and jails. These approaches hold promise for reducing recidivism and offering inmates an incentive for early release.

## 3. Reform Parole/Probation Revocation and Supervision Policies and Practices

### a. Adopt Risk-Based Sanction Model: Structured Sanctions

Controlling the prison population begins with a cohesive strategy to respond to parole and probation non-compliance (six out of every ten offenders who enter California prisons have violated their terms of parole). Because there are too few local options for responding to non-criminal violations, prison becomes the consequence of *first* resort, rather than *last* resort. For these reasons, it appears that most parole violators go back into state prison with only "technical" or minor violations that do not normally result in new charges. With proper State funding, such parole violators could be diverted to programs and treatment options at the local level.

An effective approach to reduce parole and probation revocations requires a multi-step process that does not immediately return the person to prison, but provides alternate steps to assist the person in preventing prison incarceration. Such approach will require: (i) access to a continuum of interventions; (ii) sanctions that make distinctions based on offender risk; (iii) expanded discretion for probation and parole officers; and (iv) policies that offer the county flexibility to move offenders along a custody/non-custody continuum. This approach can be seen in Oregon, which has developed "structured sanctions" to provide risk-based responses to non-compliance.

A structured sanctions approach is consistent with those evidence-based practices aimed at reserving the most secure resources for the higher risk offender. As an example of an alternative approach, Oregon has put an end to short-term prison sanctions for technical non-compliance (SB 1145).

### b. Expand Local Discretion: Supervisory Authority Concept

As a companion measure to Oregon's structured sanctions approach, legislation was passed to give sheriffs and/or community corrections managers the discretion ("supervisory authority," ORS 144.087) to move offenders along a sanction continuum. This provides the flexibility necessary to make individualized decisions in moving offenders along a community-to-custody continuum, thereby saving jail and prison beds.

### c. Meaningful Probation and Parole Supervision

California is one of only two states with universal parole supervision, and one of only two states where local government is the primary source of probation funding. California should consider utilizing a new risk-based approach: linking the decision to supervise, the length of supervision, and its conditions to risk; and ensuring quality treatment for all high risk offenders. Several reforms appear warranted.

As an initial matter, meaningful supervision must be provided for both probationers and parolees. The process begins through use of the Risk/Needs Assessment information, so that those who are in most need of supervision obtain it, and those with fewer needs use fewer supervision resources.

A related concept is that of banked or summary parole: those parolees who are low risk and/or who behave appropriately after re-entering society are released from supervision while at the same time technically remaining on parole (remaining subject to search and seizure, etc.). The only duty of the parole officers is to monitor any new criminal filings, which could result in a parole revocation. Such a system rewards those parolees who behave appropriately, as well as allows parole officers to use their time more wisely and effectively on higher-risk parolees.

Finally, the fact that parolees are provided with no resources once they are released from prison causes them to fall back into the life that resulted in their incarceration in the first place. Conversely, a system that would provide for the needs of each individual parolee (e.g., housing needs, drug treatment, mental health treatment, job placement, etc.) would enable them to avoid entering the system again. To be effective, Counties must be provided with the funding and other resources necessary to ensure adequate services are provided to clients to enable them to avoid imprisonment. Evidence demonstrates that a Drug Court model with judicial oversight (team supervision, swift sanctions, incentives, addiction counseling, public recognition, strict accountability, comprehensive case planning, etc.) hold promise for parole supervision for those higher risk offenders.

Justice Lui and Siggins
December 18, 2007
Page 6

### 4. **Strengthen Mental Health and Drug Treatment Services**

Our present system is not well equipped to work with mentally ill offenders or those who are effectively rendered incapable due to substance abuse. Any reforms should assess how to employ the most effective and humane measures for these offenders, and the degree to which they can be diverted to well-funded community-based alternatives.

#### a. Support County Triage/Central Receiving Centers

For want of crisis centers, too many mentally ill are taken to jail. These individuals are often more appropriately treated at a crisis receiving and assessment center. However, counties no longer have the resources to operate and maintain such centers, and many local mental health facilities have closed. State funding for such facilities could divert those mentally ill who are in need of treatment from entering the penal system in the first place.

#### b. Support Expanded Mental Health and Drug Diversion

Mental Health and Drug Courts with specialized case management are promising approaches that take a front-end approach to prevent further penetration into the system. California has already taken some important steps toward supporting some diversion options; more should be done.

#### c. Review the First-Time Seriously Mentally Ill Prison Inmate

Estimates are that of the California prisoners who have been diagnosed as seriously mentally ill, 20% are first-time offenders. Review of this population by both diagnosis and charge could help frame a larger discussion on alternative approaches.

### 5. **Ensure Access to In-Custody Programs at both the Jail and Prison Levels**

All inmates should have access to quality treatment, education, programming and work. Incentives should be in place to encourage participation, including early release with 'step-down' to community-based facilities and programs. Inmates serving time for non-violent crimes should be prime candidates for this kind of behavior based movement along a graduated custody to community continuum. Better quantity and quality of such programs in both jails and prisons require funding from the State; success can be assured through accountability measures.

### 6. **Appropriate Sentencing Reform**

Prison planning is inextricably linked to sentencing policy, and as such necessitates its examination. This should be pursued as a method to decrease recidivism, crime, and victims, while at the same time assuring proper punishing of offenders.

Justice Lui and Siggins
December 18, 2007
Page 7

As a first step, California should examine the potential for behavior-based sentence modifications for those offenders completing quality in-custody treatment. Other options include: examining mandatory minimum sentences; scaling back sentence lengths for non-violent offenders; expediting release considerations; increasing good time credits; expanding judicial discretion; creating presumptive release options linked to in-custody treatment completion; reducing lengths of probation supervision; and broadening the target range for prison diversion under state sentencing guidelines. There also appears to be an emerging consensus in favor of diverting non-violent drug offenders to community-based treatment, and a move to differentiate between violent and non-violent offenders in the use of prison resources.

## PROPOSED SHORT TERM OPTIONS

Experts and experience indicate that virtually all of the reforms suggested herein can be completed within a two-year period – many can be implemented much more expeditiously – but only with proper funding from the State. In addition, there are other, more immediate reforms that can be accomplished within six months that will have a significant impact on reducing prison population. However, several of these reforms should be considered as intermediate and temporary fixes only, pending implementation of more significant reform.

*A.     Temporarily Provide Intermediate Local Sanctions in Lieu of Returning of Technical/Minor Parole Violators to State Prison:* Rather than sending parolees who are guilty of only minor or technical parole violations immediately back to State prison, the State could temporarily fund intermediate sanctions to be administered at the county level (including, for example, extended work programs, electronic monitoring, and mandatory treatment/diversion programs). Taking such action will significantly reduce the number of returning admissions, thereby relieving overcrowding and permitting prisons time to better classify existing and new admissions. During the suspension period, other reforms must be instituted so that they take effect when the suspension is released.

*B.     Provide Parole Officers the Ability to Modify Parole:* To enable existing parole officers to work more effectively, provide them with the ability to modify the terms of an individual's parole (such as employing a system of banked/summary parole), which will allow them to actively supervise only those parolees who are most in need of supervision. Such decisions should be exercised under a framework that guides parole officers in making appropriate parole decisions as part of a larger risk-based supervision model.

*C.     Expand Diversion/Treatment Programs and Specialty Courts:* Diversion and treatment programs have been demonstrated to be extremely effective in reducing recidivism. Such local programs can be increased, both in quality and quantity, throughout the State of California on a relatively short time basis (estimated time of six months). Expanding such programs will require the State to set standards for diversion/treatment and expected results, and then request counties to develop plans that meet such standards. A necessary component of such programs will be judicial oversight, to provide swift and appropriate sanctions for those who

Justice Lui and Siggins
December 18, 2007
Page 8

stray. Courts should be provided with the discretion to make such sentencing and diversion options as deemed necessary and appropriate.

    D.    *Divert Prison Inmates to Local Facilities Voluntarily:* Local facilities which have the capacity to accept prison inmates could make such bed space available to the State pursuant to a contract, particularly for parole revocations resulting in short-term sanctions. A necessary component of this method is a re-evaluation of the methodology for determining the actual cost of housing in each facility or area (as the existing cost paid by the State is inadequate) and timely payment of such costs.

    \*              \*              \*

The County of Sonoma has engaged an expert in the field of criminal justice reform who can provide a wealth of information to explain the suggestions discussed above, as well as provide supporting data. We request the opportunity to provide such information to assist you in addressing these issues with all parties.

We appreciate the opportunity to participate in the settlement process in this case, and welcome any questions or comments you may have.

                Very truly yours,

                Anne L. Keck
                Deputy County Counsel
                Sonoma County
                Attorneys for Intervenors the Sonoma County Sheriff William Cogbill, Sonoma County District Attorney Stephan Passalacqua, Sonoma County Chief Probation Officer Robert Ochs, and the County of Sonoma

                Theresa Fuentes /AK
                Theresa Fuentes
                Deputy County Counsel
                Santa Clara County
                Lead Counsel for Intervenors the Counties of Santa Clara, San Mateo, Santa Barbara, Solano, and Contra Costa