# EXHIBIT F
# TO DECLARATION OF
# THERESA J. FUENTES
# ISO OPPOSITION TO MIL NO. 6

# EXPERT REPORT OF ROBERT GARNER
## August 14, 2008

**STATEMENT OF QUALIFICATION:**

I am currently employed as the Director of the Santa Clara County Department of Alcohol and Drug Services. I also hold the official designation of Santa Clara County Alcohol and Drug Program Administrator, a position that exists in every California County.

I have been in the drug abuse field continuously since 1971, when I was named the Drug Program Coordinator of Santa Clara County. At that time there was a separate position of Alcohol Program Coordinator. The two programs were merged in 1981 into a single Department of Alcohol and Drug Services, which I was appointed to lead, and I have been the Department Director since that time. I am the longest serving county drug and alcohol program official in the state of California. I am a founding member, past President, and current Executive Committee member of the California Alcohol and Drug Program Administration Association of California.

During this thirty-seven year period I have developed and administered every aspect of comprehensive continuum of drug and alcohol services, ranging from prevention and early intervention, to a wide range of treatment and rehabilitation services. I have developed a large array of contract services, data systems, oversight and accountability systems, monitoring and outcome measures, staff development, training and education services.

During that same thirty-seven year period I have provided extensive consultation at the local, state and federal levels on drug and alcohol issues. Within Santa Clara County I have consulted in the development of a variety of drug court programs in both criminal and dependency courts, alcohol and drug services in the county's mental health and child welfare systems, and alcohol and drug services in local cities and communities.
I have consulted with several Grand Juries in Santa Clara County regarding drug and alcohol issues.

I have consulted with the state Department of Alcohol and Drug Program Services since it's inception in every aspect of the State's drug and alcohol program, its relationship to county systems, with the California Youth Authority, and the California Department of Corrections and Rehabilitation.

I have consulted with the State's Little Hoover Commission and the Legislative Analyst's Office and several Legislative Officers on the development of specific drug and alcohol legislative proposals. I have consulted on numerous occasions with the County Supervisor's Association of California on drug and alcohol issues.

My professional resume is attached.

1

I have not been retained or specifically employed to provide testimony in this case, nor do my duties regularly involve giving expert testimony.

I have not testified as an expert at trial or deposition during the previous four years.

I reserve the right to supplement these opinions if more information is provided.

_Robert Garner_ (signature)    8/15/08
Robert Garner, Director         Date
Department of Alcohol and Drug Services

2

**PREPARATION:**
Preparing for this statement I read the following documents:

1. California Prisoners and Parolees 2006
   This is a summary of statistics on adult felon prisoners and parolees, civil narcotic addicts and outpatients and other populations, prepared by the California Department of Corrections and Rehabilitation, Offender Information Services, Estimates and Statistical Analysis Section, Data Analysis Unit.
2. Supplemental Responses to Defendant's First Set of Interrogatories to Plaintiff, Ralph Coleman.
3. Episode data for adult treatment services 2006, prepared by Alcohol and Drug Services Research Institute, Santa Clara County Department of Alcohol and Drug Services.
4. Waiting List Data for Adult Treatment services, prepared week of August 11th by Jolene Wing, Quality Improvement Division, Department of Alcohol and Drug Services.
5. Cost of adult treatment, fiscal year 2006, report prepared by Amelia Whitlow, Administrative Services Manager, Department of Alcohol and Drug Services.

Also in preparing this report I consulted with:

1. Katherine Christian, Director of Research Institute, Department of Alcohol and Drug Services.
2. Amelia Whitlow, Administrative Services Manager, Department of Alcohol and Drug Services.
3. Jolene Wing, Senior Program Manager of Quality Improvement Division, Department of Alcohol and Drug Services.

3

### OPINION #1:
***The release of State prisoners into Santa Clara County will have a severe negative impact on the Santa Clara County drug treatment system.***

Background

Santa Clara County residents comprise 3.6% of the State's prisoners, and therefore a release of 40,000 prisoners would result in 1,440 of these prisoners returning to the County. An estimated 70% or about 1,000 of these prisoners would have serious drug problems. It is this group of 1,000 released prisoners that would impact the County's drug treatment system.

The County has a large adult treatment system, supported by more than $37 million in public funding from all sources in fiscal year 2006. This includes administrative and other support costs directly related to providing treatment.

In that same fiscal year (2006) the adult treatment system served 7,528 clients (unduplicated) and provided 8,566 treatment episodes. A treatment episode is defined as the time from a client's first treatment admission to their final discharge from treatment, without a break in treatment over thirty days. This reflects the fact that individual clients often move through several levels of care. These different levels of care are considered part of a single treatment episode as long as the time between treatment contacts does not exceed thirty days.

The treatment system includes a variety of levels of care, or treatment modalities, including various types of outpatient treatment, residential treatment, detoxification, and methadone maintenance. Short term transitional housing for homeless clients is provided, but only in conjunction with outpatient treatment. All of the adult treatment system operates at capacity, and demand exceeds supply. In the outpatient services, there is a 33-day waiting list to access treatment (average across all outpatient providers). There is an average 9-day wait for residential treatment, an average of 28 day wait list for methadone treatment. The average wait for transitional housing is 7-days for men and 14-days for women.

Discussion:

The release of 1,440 State prisoners, including 1,000 with serious drug problems, would have a severe, negative impact on the County's current treatment system. Drug addiction is a chronic, relapsing brain disease and without treatment relapse is highly expected. While there is limited drug treatment available in some prisons, a recent study found it to be an expensive failure. It is highly likely that most of those 1,000 drug abusing prisoners would initiate drug use in the first year following release.

Given that the treatment system is full with waiting lists for most treatment exceeding one month, few of these individuals would enter treatment in a timely manner. Research has linked positive treatment outcomes to quick access and engagement in treatment. Without such quick access, drug addicts will continue and often escalate

4

their drug use. This increases their exposure to arrest and incarceration, and it usually means that the level of treatment needed has increased. The current system cannot support this increased demand, and in fact, it cannot adequately address the current level of need.

Untreated drug addiction also increases the likelihood that the clients will develop several medical problems requiring medical care and increase their exposure to such things as HIV infection and Hepatitis C. These serious medical conditions are extremely costly and will themselves become additional costs in the County's medical care system.

The inability of the County's treatment system to accommodate these new clients will be exacerbated by severe budget reductions at the County level, now several years worth and expected to continue for several more years, which has already resulted in reductions of millions of dollars in treatment services.

This large release of prisoners would cause considerable harm to the County's drug treatment system, and all of the systems clients would suffer. Without timely and appropriate treatment, most addicts will be arrested and end up back in jail or prison where they will not receive treatment that is adequate and appropriate. Community based treatment is essential to reduce recidivism.

A special problem will be caused by these prisoners who are rearrested for drug use and qualify for SACPA (Substance Abuse and Crime Prevention Act—Proposition 36) services. The County is required by law to provide treatment for these clients, but the state allocation covers less than half the cost of that treatment. If this prisoner release results in an increase in SACPA clients, and given the fact the allocation has been decreased over time, the County's ability to provide the legally mandated treatment will be jeopardized. If SACPA clients are given a priority for treatment, it will be at the expense of some other client population.

**OPINION #2:**
*The County would need significant funding to provide alcohol and drug services to State prisoners released into Santa Clara County.*

As indicated earlier, in FY06 there were 8,566 treatment episodes costing $37,422,085 or $4,369 per episode. The cost of priority treatment for an additional 1,000 clients released from prison would be $4,369,000, based on actual cost of treatment episodes in FY06. These resources are not available locally and without adequate resources the current treatment system would be devastated.

A mechanism for funding treatment for this population already exists. This County is part of what is known as the Bay Area Services Network, a treatment system for state parolees in which the state funds treatment in each county for parolees who are addicted. If adequate state funding is provided, this mechanism can easily be used to administer the funds and provide the services. Local treatment systems exist in every county and with adequate state funding they can be expanded to accommodate the proposed increase in clients resulting from early release of prisoners. Counties have existing structures for accountability and reporting that could be expanded with appropriate funding.

There is a larger problem that needs to be identified and addressed, and that is any effective solution to the related problems of drug addiction and crime require a partnership between Counties and State. A proposal to release 40,000 prisoners will not foster this partnership and will only have negative effects of devastating County drug treatment systems.

In the longer run, the prisoner will be the one to lose. Those granted early release will be thrown into local communities unprepared and unable to accommodate them. Without housing support most will be forced to live in substandard housing, often drug infested. Most will initiate their compulsive drug use again, and without treatment the acuity of their addiction will worsen and their exposure to re-arrest and incarceration will increase. A prison release order will not remedy these problems.