# EXHIBIT H
# TO DECLARATION OF
# THERESA J. FUENTES
# ISO OPPOSITION TO MIL NO. 6

Expert Report of Gary A. Graves
Coleman, Plata v Arnold Schwarzenegger
August 15, 2008

I am currently employed as the Assistant County Executive for Santa Clara County and have been so employed since August 2003. Previously, I have served Santa Clara County as the County Budget Director from 1984 through 1997 and Deputy County Executive from 1997 to 2003. Previous to that I was employed by the City of New York as a Principal Budget Analyst responsible for Police services from 1979 through 1984.

For my entire career I have been involved in budget and resource allocation decisions in the public sector. During the 13 years I was the Budget Director I authored, on an annual basis, analyses that determined the impact of state and federal actions on the many programs operated by Santa Clara County. The information provided to county decision makers focused on both financial and programmatic impacts and included not only actions taken by the State and Federal government in the context of their budgets as well as the impact of legislation on county programs as well.

As an example, in 2002 I provided staff leadership in supporting the County State Association of Counties (CSAC) State Budget Task Force in the development of responsible alternatives for State budget reductions in the FY 2003 budget process. Specifically, I was involved in developing proposals for the Revenue, Bonded Indebtedness and Information Technology Subcommittee.

Over the past 10 years I have also been asked by CSAC to make presentations to the New Supervisors Institute providing information and insights about how the county budget process works, who the stakeholders are in the typical budget process and how to evaluate departmental budget proposals. The invitations to present at these meetings were based on my reputation and the expertise I have developed during my career with Santa Clara County

During the past five years my areas of responsibility have broadened and I have spent more time managing and coordinating countywide issues in the criminal justice area. During the past twelve months I have appeared three times before legislative committees on issues that impact counties. In May of 2007 I appeared before the Assembly Budget Subcommittee to discuss the impacts of Juvenile Probation reform specifically the impact of the state not accepting non 707 (b) minors into the state system. In October 2007 I appeared before the Assembly Select Committee on Alcohol and Drug Abuse to discuss how Santa Clara County was addressing growth in jail population and recidivism. Finally, in April of this year I appeared before the Senate Budget and Fiscal Review Subcommittee #4 to discuss the issue of Parole realignment and the potential impacts on counties.

Graves/ 00001

In June of 2008 I was asked, as a party to the case, to participate in a work group requested by Court Appointed Settlement Referee Justice Elwood Lui in the Coleman/Plata v. Schwarzenegger Federal litigation. The workgroup was asked to: 1) estimate, based on the number of Probationers and diverted prisoners, the cost range of various programs proposed by the Settlement Referee; 2) Assuming the state could and would provide sufficient funding to implement the necessary programs in each county, create or adapt a mechanism for allocating those funds to particular counties; 3) Create or adapt an audit mechanism to track the funding by program and/or participant and 4) Create or adapt an evaluation tool to determine whether the programs being funded were effective in reducing recidivism.

As the Assistant County Executive for Santa Clara County with extensive expertise in fiscal matters and how legislative changes can affect counties, I am prepared to offer my opinion regarding the impact of releasing inmates currently held in state prison on Santa Clara County. I have not been retained or specially employed to provide testimony in this case, nor do my duties regularly involve giving expert testimony.

In preparation for rendering an opinion, I have reviewed the following materials:

a. FY 2009 Santa Clara County Recommended Budget
b. California Association of Public Hospitals – Website – Fast Facts
c. Santa Clara County Board Transmittal – Finance Committee – August 13, 2008 – Response to Referral on Inventory Proposal #3 – Agenda Item #5
d. Santa Clara County Board Transmittal – Public Safety and Justice Committee – December 13, 2007 – Report Back on the Department of Correction Bed Capacities, Closed Housing Units and Vacancy Rates
e. Legislative Analyst's Office – Parole Realignment and the 2008-2009 Budget – LAO's Alternative Budget Package
f. E-Mail from Robert Garner re: Drug and Alcohol Adult Treatment Costs
g. E-Mail from Nancy Pena re: Mental Health Adult Service Costs – Inpatient and Outpatient Programs
h. E-Mail from Sandi Eovino – Information regarding Average Daily Population in Santa Clara County Department of Correction
i. E-Mail from Emily Harrison re: Questions about Homeless Count
j. Memo From Edward Flores, Chief of Correction – Impact of Imposition of a Cap on State Prisoner Population

**Opinion #1** – The impact of the release of state prisoners directly into Santa Clara County or the imposition of a population cap at the State level would create jail overcrowding conditions in our systems and significant budgetary impacts.

Over the past 12 months Santa Clara County has analyzed the potential impacts of various actions that could be taken by the Federal Court to reduce the inmate population in the State prison system. Various strategies have been discussed including:

- The immediate release of 40,000 inmates from the state correctional system.
- A phased release of 40,000 inmates from the state correctional system.
- Parole realignment that would transfer 71,000 inmates to local systems.
- A population cap of roughly 135,000 inmates.

These actions could transfer from 1,500 to 3,500 individuals from the state system to Santa Clara County. The estimate of 1,500 inmates is based on analysis done by the Santa Clara County Department of Correction related to the impact of a population cap that would reduce the statewide inmate population by 40,000. The estimate of 3,500 individuals is based on analysis done by the Legislative Analyst's Office and relates to the impact of a parole realignment proposal developed by the LAO during the FY 2009 state budget process. Whether inmates are transferred by one action or phased over a period of time, the impact to our system would be overwhelming.

At the current time the Santa Clara County Corrections system has a Board of Corrections rated capacity of 3,810 although we identify our capacity at 5,380. Our average daily population during 2008 has been 4,737. We are currently exceeding the Board of Correction rated capacity by 24% but have 643 slots available according to our current capacity. From the perspective of accepted jail management standards, Santa Clara County has very little flexibility to house additional inmates and the affect of even a phased transfer would be to push our system into an overcrowded condition. Our estimates show that the addition of 1,500 inmates would require additional double bunking and the use of inappropriate areas of our facilities to house prisoners. Based on the nature of the Coleman/Plata litigation, it would be inappropriate to shift the problem of overcrowding from the state level to the local level and consider that the problem being litigated had been solved.

It is important to note that during the past 5 years (FY 2003 through FY 2008) Santa Clara County has solved deficits that have exceeded $1 billion. During FY 2009 Santa Clara County faced a general fund deficit of $172 million and we project significant deficits into the future. We have been forced to reduce the resources allocated to the Department of Corrections and have closed housing units in order to balance our budget. We currently house over 400 state, federal and other county inmates that contribute $15 million to the operation of our jail system. If faced with the requirement of housing 1,500 additional prisoners, we would be forced to terminate our revenue contracts creating a funding shortfall for the county and creating a new housing issue for both the state and federal governments. Considering our current financial

3

crisis, an action of this kind would cause the further deterioration of our financial stability and the elimination of discretionary programs.

It is important to also note that Santa Clara County has been extremely aggressive in managing our jail population. We have established a Jail Population Task Force with representatives from all of the criminal justice agencies, including the courts, to develop proposals and ideas to reduce jail population and divert individuals into other programs to address their needs. We have an extremely successful Drug, Alcohol and Mental Health diversion system that with the support of the court we are able to divert many individuals instead of having them sit in jail with no access to treatment. We have allocated significant discretionary general funds to support these programs in order to reduce the chance these individuals will reoffend. If additional resources are needed to house and support inmates, the money would have to be reallocated from existing discretionary programs, like drug, alcohol and mental health treatment programs that would impair our ability to reduce recidivism and reduce the number of people in jail and prison.

Any actions taken by the State or Federal Court to return inmates from the state system to counties without adequate funding to provide services would do nothing to address the crisis we find ourselves in. Even though Santa Clara County has worked diligently to provide alternatives to incarceration, the same cannot be said of the state and inmates are released back into the community with little or no treatment of their conditions. As a result, the state has a recidivism rate of 70% to 80% and those individuals end up back in the criminal justice system using both local and state resources and not resolving any of the overcrowding issues that have created this crisis.

**Opinion #2** – Our local Drug and Alcohol system including inpatient and outpatient services would not be able to support the addition of new clients without resources.

Santa Clara County has a history of allocating discretionary general fund resources to make sure individuals get the services they need. In 2009 the Board of Supervisors appropriated over $20 million above required match levels for Drug and Alcohol programs. With the financial difficulties and challenges we now face and will face in the future, our ability to sustain these programs is at risk. Santa Clara County has also embraced Proposition 36 and allocated discretionary general fund resources to keep individuals afflicted with the disease of drug and alcohol addiction out of jail and in treatment. Through a very cooperative arrangement with the Superior Court, Santa Clara County has achieved completion rates above 50% for Prop 36 programs, among the highest rate in the state. At the current time there are no resources available to provide services to large numbers of released or paroled state inmates. In fact, such an action if taken by the court would seriously impact our ability to continue services to our existing clients.

4

One of the critical issues that have emerged from looking at the problems faced by the State correctional system is the lack of effective programs especially in the areas of substance abuse. The kinds of programs typically offered in counties are not available in state prison and as a result, recidivism rates are in the 70% to 80% range. Releasing these individuals into our local systems without enhancing our service delivery capacity will only result in these people re-entering the system with no relief from the current crisis.

It is important to note that most new funding available for Drug and Alcohol programs is mandated for criminal justice programs. The waiting lists and programming available for individuals not in the criminal justice system are substantial. This represents a significant issue for local Boards of Supervisors as our systems have little or no capacity to treat residents unless they are being referred from the criminal justice system. This is a true equity issue if a resident cannot access service because counties have been mandated by State law or the court to provide services to individuals being referred from the criminal justice system and counties do not have the resources to provide services to them.

In reviewing the profiles of individuals that would be released from State Prison or on parole, our subject experts have indicated that 70% have substance abuse problems that would require treatment in our system. These are generally accepted prevalence rates in prison systems for inmates afflicted with substance abuse issues. At the current time we estimate that in Santa Clara County it costs an average of $4,369 to serve the average client on an annual basis. If 1,500 inmates were released or paroled requiring service, this would translate into a cost of $4.6 million. If 3,500 were released or paroled requiring service, this would translate into a cost of $10.7 million. Santa Clara County could not support this cost without impacting all of our other service delivery systems and seriously disrupting what is an already fragile health and social service safety net.

**Opinion #3** - Our local Mental Health system including inpatient and outpatient services would not be able to support the addition of new clients without resources.

Another critical area where Santa Clara County has focused energy is diverting individuals with Mental Health issues from jail into programs where they can receive treatment. With the cooperation of our courts, we have established a Mental Health court where individuals suspected of suffering from mental disease can be treated instead of spending time in jail.

In reviewing the profiles of individuals that could be released or paroled to local communities, we believe that 20% would require mental health treatment, 10% in an inpatient environment and 10% in an outpatient environment. These are generally accepted prevalence rates in prison systems for inmates afflicted with

5

Graves/ 00005

Mental Health issues. The cost to treat an individual as an inpatient is $19,380 and as an outpatient is $4,839. If 1,500 inmates were released or paroled requiring mental health service, this would translate into a cost of $3.6 million. If 3,500 inmates were released or paroled required mental health service, this would translate into a cost of $8.5 million. Once again, Santa Clara County has no available resources to provide these additional services. It is not even clear if our existing system has the capacity to treat a large number of new clients even if resources were available.

At the current time it is important to note there are very few facilities that provide inpatient services so capacity is an important issue when you face the possibility of introducing a significant number of new clients into our system. As indicated with Drug and Alcohol programs, mental health services are generally not available to the general population in the State correctional system. As a result their road to recovery will be long, difficult and expensive.

Santa Clara County has invested significant general fund resources in our mental health system. On a statewide basis, we allocate more discretionary resources to enhance mental health service levels than any other county in the state. Even in the face of difficult financial times, Santa Clara County currently spends over $70 million in excess of required matches on mental health programs. In addition, we have utilized Proposition 63 funding to develop criminal justice programs for mental health clients. Even with this level of investment our system is not able to come close to meeting the demand in the community for mental health services. We are forced to only treat the most acutely mentally ill leaving many without service. The introduction of any significant number of new clients without additional resources could easily cause the system to collapse.

**Opinion #4** - The release or parole of a significant number of state inmates will further exacerbate the homeless problem in Santa Clara County as there is currently an insufficient supply of affordable housing units.

The issue of affordable housing and homelessness is a serious one in Santa Clara County. In 2007 the County's Office of Affordable Housing determined through an annual count process that there were over 7,000 homeless in Santa County. Based on information provided by a cross section of the homeless that were interviewed, over 10% or 700 had come from criminal justice facilities. If more individuals are released outright or on parole, the potential for an increase in the number of homeless is very real.

Santa Clara County has taken several steps to address the issues of affordable housing and the homeless. In 2002 the Board of Supervisors established the Affordable Housing Fund and the Office of Affordable Housing. The goal of this action was to proactively address the severe lack of affordable housing for the County's most needy populations and consolidate County housing services for better effectiveness.

6

The County has allocated discretionary general fund resources to leverage with other local funds as well as State and Federal Funds. In total, $17.7 million in local funds has leveraged a total investment of $398 million. These funds have assisted in the acquisition or development of 21 different housing projects which have or will result in 1,658 new housing units and 51 permanent shelter beds.

The need for affordable housing in every county in California is significant. Any plan to release prisoners on parole or in any other fashion must consider the impact on already strained systems including housing. Like Alcohol, Drug and Mental Health services, if issues like housing are not taken into consideration, many of the released inmates will return to the criminal justice system because they have no other choice if they are to survive. The county's safety net is extremely fragile and the there must be a recognition of this fact in any decision that is made.

**Opinion #5** – The release or parole of a significant number of state inmates will put an additional burden on public health care facilities in Santa Clara County.

The public health system in the state of California is straining to meet the needs of residents. Those that are uninsured or insured by Medi-cal have little choice but to rely on public hospitals. At this point in time only 11 out of 58 counties operate hospitals. Many counties no longer can afford to operate hospitals and the care is contracted out. Even though just 6% of all California hospitals are publicly run,

- ✓ They provide 45% of all hospital care to the state's 6.5 million uninsured
- ✓ Operate almost 60% of the top-level trauma and burn centers
- ✓ Provide more than 60% of the state's psychiatric emergency care
- ✓ Deliver 11 million outpatient visits per year.

Counties are required by statute to provide health care to the uninsured or those insured by Medi-cal. Many private providers have terminated their Medi-cal contracts and will only see these patients if they present themselves in their emergency rooms. This population represents a significant financial burden for counties. In Santa Clara County, the general fund has provided subsidies in excess of $100 million over the past three years. The introduction of a significant number of individuals that have health issues is a serious concern that must be addressed by any plan to shift inmates to local jurisdictions. Counties do not have the financial wherewithal to absorb these kinds of costs without compromising other critical service delivery systems.

Any solution to the jail overcrowding issue must address the impacts on local government. It is unacceptable to shift a problem of this magnitude from the

7

State to the County without addressing these concerns and providing resources that will solve these problems identified above.

I have not testified as an expert or by deposition in the last four years.

I will supplement the opinions included herein if more information becomes available.

My Curriculum Vitae is attached.

Gary A. Graves
Assistant County Executive

# GARY A. GRAVES

2539 Derby Drive
San Ramon, CA 94583

Home   (925) 830-4568
Business  (408) 299-5180

## OBJECTIVE

Appointment as Chief Executive Officer responsible for providing vision and leadership while assuring the provision of efficient and effective services within a public policy context.

## PROFILE

- 24 years experience working in a large urban county with a record of significant achievement in developing innovative programmatic and financial solutions for a wide variety of organizational issues

- Possess an unquestioned commitment to ethics; emphasize an honest and straightforward approach to organizational and personal communications

- Strong interpersonal skills demonstrated by the existence of strong relationships with Board members and their staff, elected officials, union leaders and the community

- A detailed understanding of the programs and services provided by counties including hospital and managed care issues, 24-hour institutions adult and juvenile correctional facilities and Social Services/Welfare requirements

## RELEVANT EXPERIENCE AND ACCOMPLISHMENTS

### ASSISTANT COUNTY EXECUTIVE, County of Santa Clara, San Jose, CA  8/03 to Present

Chief Operating Officer and County Executive Pro Tem for Santa Clara County. Directly supervise Information Services, Procurement, Facilities and Fleet, the Office of Budget and Analysis and the Office of Emergency Services. Chair the Administrative Capital Committee, County Space Allocation Committee, Proposition 36 Steering Committee, Disaster Preparedness Executive Committee and the Jail Population Task Force. Executive liaison to the Superior Court and the lead negotiator in the transfer of court facilities to the State. Provide lead staff support to the Board's Health and Hospital Committee, the Public Safety and Justice Committee and the Finance and Government Operations Committee. Recent achievements include:

- Developing the plan to restructure indigent defense services in Santa Clara County

- Leading the current review of the Criminal Justice System with Consultant support to develop a new model for managing criminal cases in the Criminal Court

- Providing leadership in evaluating recent correctional initiatives relating to AB-900 and the impending impacts of the Coleman/Plata litigation on Santa Clara County.

- Developing a strategy to maximize the utilization of the county's real estate assets through ground lease, development and sale.

*Page Two*
*Gary A. Graves*

### DEPUTY COUNTY EXECUTIVE, *County of Santa Clara, San Jose, CA  9/97 to 8/03*

One of four Deputy County Executives providing direct staff support to the County Executive and member of the County Executive's senior executive team: Responsibilities included

- Management and oversight of the County's resource allocation process.  Direct the Office of Budget and Analysis in the development and review of financial and policy information which includes the creation of the annual budget
- Responsible for the Information Services function defining information technology strategies and ways to apply innovative technology solutions to departmental work flow issues.
  - Provided County staff leadership in supporting the CSAC State Budget Task Force in the development of responsible alternatives for State budget reductions in FY 2003.  Developed proposals for the Revenue, Bonded Indebtedness and Information Technology Subcommittee
  - Lead the design of the Child Support Transition effort, including a significant outreach effort, and the development of checklist to assure the successful transition of this important function.
  - Led the development of the County's Long Range Capital Financing plan. This effort has resulted in the construction of $520 million of high priority capital projects while protecting the county's AA+ credit rating.
  - Provided direct staff support to the Board's Ad Hoc Committee charged with analyzing the general fund subsidy of Valley Medical Center.

### DIRECTOR, OFFICE OF BUDGET AND ANALYSIS, *County of Santa Clara  8/91 to 9/97*

Provide leadership in the development of strategies that link financial and policy goals that define recommendations regarding service delivery to the Board of Supervisors.  Work directly with Board Members as the County Executive's representative on several Committees including Budget, Audit, Technology, Health and Hospital and the Investment Policy Committee.  Serve as Santa Clara County's Chief Budget Architect and the Chief Budget Advisor to the County Executive and Board of Supervisors.

- From FY 1991 through FY 1997, developed reduction targets and orchestrated over $300 million in deficit solutions including $200 million in expense reductions and $100 million in revenue solutions.
- Negotiated innovative six-year agreement with cities regarding booking fees protecting revenues and providing incentives for reducing the number of bookings and reducing the upward pressures on the county's jail population.

### BUDGET ANALYSIS MANAGER, *County of Santa Clara, San Jose, CA  8/84 to 8/91*

Responsible for the day-to-day operations of the Office of Budget and Analysis.  Developed the framework for the annual budget process including the public budget hearings. Developed recommendations that made up the substance of each years recommended budget.  In this role provided a variety of support to the County Executive including the development of an extended financial planning process and the completion of several policy analyses including issues surrounding jail closure and diversion alternatives to avoid jail overcrowding and reviewing options in providing medical care to the indigent.

*Page Three*
*Gary A. Graves*

### DIVISION MANAGER - POLICE SERVICES, OFFICE OF MANAGEMENT AND BUDGET, *City of New York, N.Y. 12/81 to 8/84*

Oversight responsibility for the fiscal management of all Police services in the City of New York. This included the New York City Police, the Transit and the Housing Authority Police Departments, whose expense and capital budgets totaled more than $1.2 billion and whose staff exceeded 36,000 uniformed and civilian personnel. Directed several in-depth analyses concerning Police operations. These included analyzing optimal deployment strategies for the Transit Police and a study analyzing the consequences of new Police patrol procedures that would have been required if a one-officer car patrol strategy was adopted.

### SUPERVISING ANALYST, OFFICE OF MANAGEMENT AND BUDGET, *City of New York, N.Y. 2/80 to 12/81*

Directed staff in the management of one of the most complex agency budgets within New York City government. The Mayoralty is comprised of 14 discrete agencies, all of whom provide direct staff support to the Mayor. This position required a high degree of technical proficiency and the ability to resolve intricate policy issues through negotiation and compromise. Responsibilities included the preparation of the Executive Budget and creation of detailed five-year financial plans for each agency.

### FINANCIAL CONSULTANT, URBAN ACADEMY FOR MANAGEMENT - *New York, N.Y. 3/79 to 2/80*

Major responsibility was the development and implementation of a restructured expense budget for the City of New York. Developed procedures and formulated detailed work manuals to assist fiscal managers in monitoring and interpreting monthly fiscal data. Trained 400 New York City fiscal personnel.

### MANAGEMENT ANALYST, DEPARTMENT OF HEALTH, EDUCATION AND WELFARE *(HEW), Washington, D.C. (2/78 to 3/79)*

Developed HEW's first "Master Facilities Plan" for all HEW owned facilities as part of the 1979 zero-based budgeting process. Evaluated capital projects and recommended funding within the facilities plan based on life-cycle costing and cost-benefit analyses.

## EDUCATION

### HARVARD UNIVERSITY, JOHN F. KENNEDY SCHOOL OF GOVERNMENT, *Cambridge, Massachusetts*

Program for Senior Executives in State and Local Government - 1994

### STATE UNIVERSITY OF NEW YORK AT ALBANY, NELSON ROCKEFELLER SCHOOL OF PUBLIC AFFAIRS, *Albany, New York*

Master of Public Administration - 1978
Concentration in Administrative Management

### BUCKNELL UNIVERSITY, *Lewisburg, Pennsylvania*

Bachelor of Arts - Economics and Political Science – 1976

Graves/ 00012

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

### PROOF OF SERVICE BY MAIL

*Plata, et al. v. Schwarzenegger, et al.*    Nos.  C01-1351 THE (Northern District)
                                             CIV S-90-0520 LKK JFM P (Eastern District)

I, Linda Ramos, say:

I am now and at all times herein mentioned have been over the age of eighteen years, employed in Santa Clara County, California, and not a party to the within action or cause; that my business address is 70 West Hedding, East Wing, 9th Floor, San Jose, California 95110-1770.  I am readily familiar with the County's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I served a copy of **EXPERT REPORT OF GARY GRAVES** by placing said copy in an envelope addressed to:

### SEE ATTACHED SERVICE LIST

which envelope was then sealed, with postage fully prepaid thereon, on **August 15, 2008**, and placed for collection and mailing at my place of business following ordinary business practices.  Said correspondence will be deposited with the United States Postal Service at San Jose, California, on the above-referenced date in the ordinary course of business; there is delivery Service by United States mail at the place so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on **August 15, 2008**, at San Jose, California.

Linda Ramos

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

| | |
|---|---|
| 1 | Donald Specter<br>Prison Law Office<br>General Delivery<br>San Quentin, CA 94964<br>E-Mail: dspecter@prisonlaw.com | K & L Gates LLP<br>Jeffrey L. Bornstein<br>Edward P. Sangster<br>Raymond E. Loughrey<br>55 Second Street, Suite 1700<br>San Francisco, CA 94105-3493 |

1
Donald Specter
Prison Law Office
2
General Delivery
San Quentin, CA 94964
3
E-Mail: dspecter@prisonlaw.com

4

5
Claudia B Center, Legal Aid Society
Employment Law Center
600 Harrison Street, Suite 120
6
San Francisco, CA 94107
E-Mail: ccenter@las-elc.org
7

8
Warren E. George
Bingham McCutchen
9
3 Embarcaradero Center, Fl. 24
San Francisco, CA 94104
10
E-Mail: warren.george@bingham.com

11

12
Ronald Yank
Natalie Leonard
13
Gregg MacClean Adam
Carroll, Burdick & McDonough, LLP
14
44 Montgomery Street, Suite 400
San Francisco, CA 94104
15
E-Mail: gadam@cbmlaw.com
E-Mail: nleonard@cbmlaw.com
16

17
Richard Goff
Heller, Ehrman White & McAuliffe
18
701 Fifth Avenue
Seattle, WA 98104
19
E-Mail: Not Available

20

21
Steven S. Kaufhold
Terese Wang
Akin Gump Straus Hauer & Feld LLP
22
580 California Street, 15th Floor
San Francisco, CA 94102
23
E-Mail: skaufhold@akingump.com

24
Rod Pacheco
Chuck Huges
25
Office of the District Attorney
County of Riverside
26
4075 Main Street, First Floor
Riverside, CA 92501
27
E-Mail: rodpacheco@co.riverside.ca.us

28

K & L Gates LLP
Jeffrey L. Bornstein
Edward P. Sangster
Raymond E. Loughrey
55 Second Street, Suite 1700
San Francisco, CA 94105-3493

Michael Bien
Rose, Bien and Galvan
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
E-Mail: mbien@rbg-law.com

Martin J. Mayer
Kimberly Hall Barlow
Jones & Mayer
3777 North Harbor Boulevard
Fullerton, CA 92835
E-Mail: mjm@jones-mayer.com
E-Mail: khb@jones-mayer.com

Paul Mello
Hanson Bridget
425 Market Street, 26th Floor
San Francisco, CA 94105
E-Mail: Pmello@hansonbridgett.com

Edmund G. Brown Jr., Attorney General
Lisa Tillman, Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
E-Mail: Lisa.Tillman@doj.ca.gov

Rochelle East, DAG
455 Golden Gate Avenue, Suite 1100
San Francisco, CA 94102
E-Mail: rochelle.east@doj.ca.gov

Michael P. Murphy, County Counsel
Carol L. Woodward, Deputy County Counsel
Office of the County Counsel
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
E-Mail: mmurphy@co.sanmateo.ca.us
E-Mail: cwoodward@co.sanmateo.ca.us

1    Dennis Bunting, County Counsel
     Alan Cohen, Deputy County Counsel
2    Office of the County Counsel
     675 Texas Street, Suite 6600
3    Fairfield, California 94533
     E-Mail: dwbunting@solanocounty.com
4    E-Mail: amcohen@solanocounty.com

5

6    Steven M. Woodside, County Counsel
     Anne L. Keck, Deputy County Counsel
7    County of Sonoma
     575 Administration Drive, Room 105A
8    Santa Rosa, California 95403-2815
     E-Mail: swoodside@sonoma-county.org
9    E-Mail: akeck@sonoma-county.org

Stephen Shane Stark, County Counsel
Kelly Duncan Scott, Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
105 East Anapamu Street, Room 201
Santa Barbara, California 93101
E-Mail: sstark@co.santa-barbara.ca.us
E-Mail: kscott@co.santa-barbara.ca.us

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

Exhibit A

**Fiscal Year 2009 Santa Clara County Recommended Budget**

Santa Clara County Trial Exhibit #A

# EXHIBIT B
# TO EXPERT REPORT OF
# GARY A. GRAVES



**California Association
of Public Hospitals
and Health Systems**
*Leaders in health care policy,
advocacy and education since 1983*



CAPH Home | About CAPH | Member Directory | Contact Us                                    **Search**

| | |
|---|---|
| **Issue Briefs** | ## Fast Facts |
| **Publications** | **CALIFORNIA'S ESSENTIAL PUBLIC HOSPITALS** |
| **Letters** | California 's 19 public hospitals make up the core of the state's medical safety net – delivering care to all who need it, regardless of ability to pay, immigration status or insurance. |
| **Management Excellence Awards** | Though just 6% of all California hospitals statewide, public hospitals: |
| **News Releases** | ■ **Provide nearly 45%** of all hospital care to the state's 6.5 million uninsured |
| **Conference** | ■ **Operate almost 60%** of the top-level trauma and burn centers |
| **Legislative Issues** | ■ **Are teaching hospitals**, training 45% of the doctors in the state |
| **Recommended Links** | ■ **Provide more than 60%** of the state's psychiatric emergency care |
| | ■ **Deliver 11 million outpatient** visits per year |

READ/PRINT ENTIRE FAST FACTS DOCUMENT (UPDATED FEB. 2007)

CAPH members:

- constitute 10.5% of the state's hospital beds
- train 45% of all medical residents in the state
- provide 43% of the state's burn care
- provide 57% of the state's level I trauma centers
- deliver 87% of the state's outpatient care to the medically indigent
- handle 32% of the state's Medi-Cal neo-natal intensive care
- deliver 29% of the state's inpatient care to the Medi-Cal population
- provide 38% of the state's outpatient care to the Medi-Cal population
- provide 11 million outpatient clinic visits annually
- serve a patient population that is 70% non-white
- provide more than half of all outpatient care delivered by hospitals to the uninsured
- deliver 74% of the state's inpatient care to the medically indigent
- provide 63% of the state's psychiatric emergency care
- are located in counties containing 81% of all Californians

Source: Office of Statewide Health Planning and Development

caph home | about caph | member directory | fast facts | issue briefs | publications | letters
management excellence awards | news releases | recommended links | contact us

Copyright © 1999 - 2004 California Association of Public Hospitals and Health Systems

Exhibit C

**August 13, 2008 Report to the Board of Supervisors from the Office of Affordable Housing**

Santa Clara County Trial Exhibit #B

Exhibit D


**December 13, 2007 Report to the Board of Supervisors from the Department of Correction Re: Report Back on the Department of Correction Bed Capacities, Closed Housing Units, and Vacancy Rates**


Santa Clara County Trial Exhibit #C

Exhibit E

**Parole Realignment and the 2008-2009 Budget**

County of Santa Clara Trial Exhibit #R

Exhibit F

**Fiscal Year 2006 Adult Treatment Cost for the Department of Drug and Alcohol**

County of Santa Clara Exhibit #F

Exhibit G

**Santa Clara Valley Health and Hospital System  Mental Health Department Fiscal Year 2008 Adult Full Service Partnership Expenses and County Adult Service Teams**

County of Santa Clara Trial Exhibit #G

Exhibit H

**August 7, 2008 email to Graves from Eovino**
**Re: Department of Correction Housing Report**

County of Santa Clara Trial Exhibit #I

Exhibit I

**August 11, 2008 email to Harrison from Scheiner Re: Homeless Count**

County of Santa Clara Trial Exhibit #H

Exhibit J

**September 14, 2007 Report to County Budget Director From the Department of Correction
Re: Impact of Imposition of a Cap on State Prisoner Population**

County of Santa Clara Trial Exhibit #D