STEVEN M. WOODSIDE #58684
County Counsel
ANNE L. KECK #136315
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403-2815
Telephone: (707) 565-2421
Fax: (707) 565-2624
swoodsid@sonoma-county.org
akeck@sonoma-county.org

Attorneys for Intervenors THE COUNTY OF SONOMA, SONOMA COUNTY SHERIFF/CORONER WILLIAM COGBILL, SONOMA COUNTY DISTRICT ATTORNEY STEPHAN PASSALACQUA, and SONOMA COUNTY CHIEF PROBATION OFFICER ROBERT OCHS

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br> Plaintiffs, <br> v. <br> ARNOLD SCHWARZENEGGER, et al., <br> Defendants. | No.   CIV S-90-0520 LKK JFM P <br><br> **THREE-JUDGE COURT** |
| MARCIANO PLATA, et al., <br> Plaintiffs, <br> v. <br> ARNOLD SCHWARZENEGGER, et al., <br> Defendants. | No. C-01-1351 THE <br><br> **THREE-JUDGE COURT** <br><br> **SUPPLEMENTAL EXPERT REPORT OF DAVID M. BENNETT (Submitted by Sonoma County Intervenors) (FRCP 26(e)(2))** <br><br> Trial Date: November 18, 2008 <br> Time:     1:30 p.m. <br> Ctrm:     USDC Ceremonial Courtroom |

No. 97780
Supplemental Expert Report of David M. Bennett

# SUPPLEMENTAL EXPERT REPORT OF
# DAVID M. BENNETT
**Criminal Justice Consultant**
October 16, 2008

I am submitting this Supplemental Expert Report to address and respond to information that has been disclosed by Plaintiffs pursuant to discovery processes (including disclosure of supplemental/rebuttal expert reports and deposition testimony) that was not available to me prior to the date I submitted my initial expert report in the matter on August 15, 2008, nor the date my deposition was held on September 9, 2008. Specifically, Plaintiffs presented additional information through the deposition of one of their expert witnesses, James Austin, Ph.D., that was held on September 19, 2008, and that directly addressed my opinions disclosed in my Expert Report.

Since my deposition, I have reviewed the additional following reports, documents, and papers submitted in this case:

1. Supplemental Report of James Austin, Ph.D., dated September 25, 2008
2. Transcription of Deposition of James Austin, Ph.D., on September 19, 2008
3. Supplemental Report of James W. Marquet, Ph.D., dated September 22, 2008
4. Addendum to Expert Report by Ira K. Packer, Ph.D., dated October 1, 2008
5. Plaintiff's Opposition to Defendants' Motion to Dismiss And/Or Motion For Summary Judgment/Adjudication, filed September 29, 2008
6. Expert witness report of Jerry Dyer, dated September 15, 2008
7. Expert witness report of Jerry Powers, dated September 15, 2008

As a supplement to my initial expert report dated August 15, 2008, and pursuant to my engagement by Intervenors the County of Sonoma, Sonoma County Sheriff-Coroner William Cogbill, District Attorney Stephan Passalacqua, and Chief Probation Officer Robert Ochs, I offer the following opinions in this case.

## 1. Impact of Plaintiffs' Proposed Release Measures on Counties

While I support a measured reduction of the California prison population to remedy prison overcrowding, and also support the principal incarceration and supervision reforms advanced by Plaintiffs (through their expert Dr. James Austin) to achieve this reduction (diversion from prison of lower risk parole violators, earned early discharge from prison, and targeted reductions in length of parole supervision — to name a few) I take exception to their position that that these changes will not have a significant impact on California counties.

1

In part, this difference is based on the methodology Plaintiffs use to assess the expected impact on Counties. For example, Dr. Austin bases his conclusion that Plaintiffs' proposal will have a minimal impact on Counties by focusing on expected changes in crime rate as the central measure. By that measure, Dr. Austin is correct in that, at a population level, the expected level of crimes committed by the released inmates are but a proportion of a larger total of arrests. However, Counties are interested not only in population level analysis, but also in an individual/county level impact analysis. An increase in the number of re-arrests for those who have been released early, or diverted, may not have statistical significance when it comes to the overall crime rate, but it has real significance as it impacts local services and costs. There is a social cost not captured in the singular focus on global crime rates.

Finally, the analysis assumes that the suggested reforms will not result in changes in policy that will have an impact on counties. But experience in other states has shown that the long-term management of the prison population has resulted in policy changes (Counties assuming responsibility for offenders with less than 12 month sentences, for example, or providing enhanced services for supervision violators who in the past were sent to prison) that can have a dramatic impact on the cost and administration of local justice services. The lack of analysis of the implications of possible policy shifts to reduce and sustain any prison reduction puts Counties at a disadvantage in this discussion.

## 2. The Need for Programs to Mitigate Risk

We cannot take a broken system and simply demand more from it as the course to correct the problem. The problem of prison overcrowding in California has taken 30 or more years to develop, driven by high failure rates from the sentencing and supervision policies developed by the legislature and elsewhere. Plaintiffs, through Dr. Austin, focus only on population reduction measures and changes in policy, but

2

do not address the need for measures to reduce subsequent failure. It is not that Plaintiffs do not recognize the linkage between access to local resources and offender success. As Dr. Austin states in his deposition:

> "There is a way that a prison population reduction could improve public safety and the administration of justice. If, upon a prison population reduction, CDCR reallocated funds currently used to imprison inmates to community resources, the state could improve public safety and the administration of criminal justice." (Austin, Supplemental, Sept. 25, 2008)

We cannot assume, as Dr. Austin seems to do, that the reduction of the prison population would, of itself, make funds available for programs. To remedy unconstitutional prison conditions will take additional funds. California has already experienced this in the Juvenile System realignment. The institutional costs for each ward in a state facility more than doubled after the *Farrel* consent decree, from $155,000 per ward in 2005 (before the consent order), to $252,000 per ward in 2008.[1]

The state prison system cannot be changed and the prison population reductions cannot be sustained without the services in place to change behavior. The proposed changes are not a zero sum proposition. In fact, Dr. Austin argues for adding a risk assessment component to assist with population management decisions. A risk assessment that identifies the type of services an offender needs is hollow without the services to meet those needs. Any diversion of violators of parole must be done within a plan for services.

Counties cannot be expected to provide services to a newly-assessed population. An analysis of services in Sonoma County, for example, found that not only are there waiting lists for substance abuse treatment reserved for offenders, but that on any given day approximately 412 county residents may be seeking publicly-funded alcohol and drug treatment that is not available.[2] Local substance abuse programs could not accommodate a new influx of offenders. Sonoma County already has long waiting lists for entry into alcohol and other drug treatment programs.

---

[1] Little Hoover Commission, July 2008, "Juvenile Justice Reform: Realigning Possibilities."
[2] Sonoma County Dept. of Health Services, Policy Brief: 'Focus on Alcohol & Other Drug Treatment: Can We Close the Gap?" Spring 2002.

3

The lack of sufficient treatment services for parolees in the state is evident in the COMPAS risk and needs assessment data for California parolees, which shows less than 15% currently in formal treatment for alcohol and drugs. This compares to the more than 35% of parolees who say they would benefit from treatment for drugs, or the almost 45% who were using drugs when arrested for their current offense. (COMPAS data, as presented in supplemental report of James Marquart, Ph.D. September 22, 2008).

Any additional treatment needs for a diverted or discharged parole population would impact this public system of treatment.

Plaintiffs' proposed remedies to bring mental health services to a constitutional level cannot ignore the system needs beyond the prison gate. Yet, mental health needs are significantly under-met in Sonoma County. Currently, there is no County inpatient psychiatric medical facility in the county; the county transports patients to Fairfield, Solano County. Population increases in Solano could cause it to close its doors to Sonoma County residents - then Sonoma County would have no location to house residents requiring emergency psychiatric care under California Welfare & Institutions Code Section 5150 (danger to self or others due to a mental disorder) or other such mental health patients.

Community Medical Services are also not prepared to meet the additional medical costs of a population that would be returning to the jail. The expense of medications and other medical needs are on a steep upward trajectory and represent a significant cost to Counties and the jails they support.

In contrast to these facts, Dr. Austin claims that, based on an earlier review of services in Los Angeles County, county "programs exist" and concludes that additional services are not needed to achieve the numbers presented in his analysis. However, Dr. Austin does not present a scenario that <u>reduces</u> criminal activity.

4

I agree with Dr. Austin that incarceration by itself cannot be expected to reduce re-arrests rates, but it is also true that simply limiting incarceration without the benefit of meaningful supervision and quality treatment will not reduce individual failure. No long-term change is possible without building an approach based on an attention to risk and resources. It is not an either/or proposition, but a balanced and proportionate use of supervision and treatment, and making available the 'one empty jail bed' for a swift and short sanction. Research shows that this is where we achieve our best results.

In addition, Dr. Austin explains that Plaintiffs urge a shortening of parole supervision and retaining more violators at the local level. However, research shows that supervision alone does not reduce recidivism. On the other hand, meaningful supervision and quality treatment (of sufficient duration), targeted to the higher risk offender can achieve significant reductions in recidivism. We cannot take a formulaic or one-dimensional approach to the problem of population management, as doing so will only shift the problem to a different level, not resolve it.

Prison population management plans must be developed concurrently with the development of local county plans for services. A responsible and sustainable prison reduction plan will work toward having programs in place to address the risk and needs of offenders: to address the underlying issues that recycle offenders back through our jails and prisons. The state will need to fund locally developed programs and work toward a systems reform to achieve any lasting positive change. Without this state-county cooperation, the efforts of individual counties – such as Sonoma County – to reform their criminal justice systems (to provide for efficient use of resources and effective provision of justice) will be doomed to failure.

3. **Other System Reforms Necessary to Sustain Prison Population Reductions**

In my initial expert report and at my deposition I explain that a 'systems approach' is the only long-term solution to the problem of prison overcrowding. This approach

5

requires a new partnership between the state and the counties with regard to funding, policies, and attention to front-end assessment and diversion options at the local level.

At his deposition, Dr. Austin objected to my recommendation for the establishment of a Sentencing Commission because of the time it might take. I am not, however, suggesting that the proposed reforms be suspended until a Sentencing Commission could be formed and complete an initial report. I only propose that, like this and other system reforms measures be initiated as part of a comprehensive strategy. The two are not mutually exclusive.

Contrary to Plaintiff's assertions, a prison cap is not a solution to overcrowding. The wholesale release of inmates would only shift the crowding problem to the Counties and provide nothing more than temporary relief to the state. This kind of short-term 'fix' is short-sighted and will, in fact, exacerbate the very real problems that confront the state system.

To open the prison doors and release inmates without the benefit of a state-county "systems plan" would only further compromise State and County systems. A prison cap outside a coherent system plan would overwhelm already overburdened local jails; and increased erosion of system integrity will result in higher failure rates — ultimately increasing returns to prison. The goal of a state-county partnership that provides the appropriate level of supervision/treatment is to change an offender's behavior that causes them to come into the system in the first place, so that it doesn't happen again. This requires an individualized approach that is not formulistic, and that ensures an appropriate level of services is available at both the state and county levels.

Dated: 16 OCT 08

David M. Bennett
2940 American Saddler Drive
Park City, Utah 84060
Ph: (435) 649-1999
E-mail: davidbennett@mnc.com

6

PROOF OF SERVICE BY MAIL
(Code Civ. Proc. §§ 1013a(3) and 2015.5)

I am employed in the County of Sonoma, California; I am over the age of 18 years and not a party to the within action; my business address is 575 Administration Dr., Rm. 105A, Santa Rosa, California. I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.

On October 17, 2008, following ordinary business practice, I served the "SUPPLEMENTAL EXPERT REPORT OF DAVID M. BENNETT (Submitted by Sonoma County Intervenors)" on the parties in said cause, by placing on that date at my place of business, a true copy thereof, enclosed in a sealed envelope, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business, and by emailing a copy addressed as follows:

Steven A. Kaufhold, Esq.
Akin Gump Straus, et al.
580 California St., 15th Floor
San Francisco, CA 94104-1036
skaufhold@akingump.com

Paul B. Mello, Esq.
Hanson & Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
pmello@hansonbridgett.com

Gregg MacClean Adam, Esq.
Natalie Leonard
Carroll, Burdick, McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
nleonard@cbmlaw.com

Rochelle East
Deputy Attorney General
Office of the Attorney General
455 Golden Gate Ave, Suite 1100
San Francisco, CA 94102
rochelle.east@doj.ca.gov

Ann Miller Ravel
Theresa Fuentes
Office of the County Counsel
County of Santa Clara
70 West Headding, East Wing 9th Fl.
San Jose, CA 95110
Theresa.fuentes@cco.sccgov.org

Martin J. Mayer, Esq.
Kimberly Hall Barlow
Jones & Mayer LLP
3777 North Harbor Blvd.
Fullerton, CA 92835
mjm@jones-mayer.com

| | | |
|---|---|---|
| 1 | Lisa Tillman<br>Deputy Attorney General<br>Office of the Attorney General<br>1300 "I" Street<br>Sacramento, CA 94244-2550<br>lisa.tillman@doj.ca.gov | William E. Mitchell, Esq.<br>Assistant District Attorney<br>County of Riverside<br>4075 Main Street, First Floor<br>Riverside, CA 92501<br>wemitchell@rivcoda.org |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | Michael W. Bien, Esq.<br>Kathleen Johnson-Silk<br>Rosen, Bien & Galvan, LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, CA 94104<br>mbien@rbg-law.com | Donald Spectre, Esq.<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710<br>dspecter@prisonlaw.com |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Jeffrey L. Bornstein, Esq.<br>Ed Sangster, Esq.<br>Kirkpatrick & Lockhart, et al.<br>55 Second Street, Suite 1700<br>San Francisco, CA 94105-3493<br>Jeffrey.Bornstein@klgates..com<br>ed.sangster@klgates.com | Claudia Center<br>The Legal Aid Society<br>600 Harrison street, Suite 120<br>San Francisco, CA 94107<br>ccenter@las-elc.org |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | Warren E. George, Esq.<br>Bingahm, McCutchen, et al.<br>Three Embarcadero Center<br>San Francisco, CA 94111<br>warren.george@bingham.com | Michael P. Murphy, County Counsel<br>Carol L. Woodward,<br>Deputy County Counsel<br>Hall of Justice & Records<br>400 County Center, 6th Floor<br>Redwood City, CA 94063<br>mmurphy@co.sanmateo.ca.us |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | Kelly Duncan Scott<br>Deputy County Counsel<br>Office of the County Counsel<br>105 East Anapamu St., Rm. 201<br>Santa Barbara, CA 93101<br>kds3957@sbsheriff.org | Dennis Bunting, County Counsel<br>Office of the County Counsel<br>675 Texas Street, Suite 6600<br>Fairfield, CA 94533<br>dbunting@solanocounty.com |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 17, 2008, at Santa Rosa, California.

_____
Eileen Shired
Legal Assistant