1  JONES & MAYER
   Martin J. Mayer (SB # 73890)
2  Michael R. Capizzi (SB # 35864)
   Kimberly Hall Barlow (SB # 149902)
3  Ivy M. Tsai (SB # 223168)
   3777 North Harbor Boulevard
4  Fullerton, California 92835
   (714) 446-1400; Fax (714) 446-1448
5  e-mail: mjm@jones-mayer.com
   e-mail: mrc@jones-mayer.com
6  e-mail: khb@jones-mayer.com
   e-mail: imt@jones-mayer.com
7
   Attorneys for Intervenor-Defendants
8  SAN DIEGO COUNTY SHERIFF WILLIAM B.
   KOLENDER, ORANGE COUNTY SHERIFF-
9  CORONER SANDRA HUTCHENS, PLACER
   COUNTY SHERIFF EDWARD N. BONNER,
10 BUTTE COUNTY SHERIFF-CORONER PERRY
   L. RENIFF, CALAVERAS COUNTY SHERIFF
11 DENNIS DOWNUM, LOS ANGELES COUNTY
   SHERIFF LEE BACA, SANTA CLARA COUNTY
12 SHERIFF LAURIE SMITH, SAN BENITO COUNTY
   SHERIFF CURTIS HILL, STANISLAUS COUNTY
13 SHERIFF ADAM CHRISTIANSON, MENDOCINO
   COUNTY SHERIFF TOM ALLMAN, TEHAMA
14 COUNTY SHERIFF CLAY PARKER, LASSEN
   COUNTY SHERIFF STEVE WARREN, YOLO
15 COUNTY SHERIFF ED PRIETO, SANTA BARBARA
   COUNTY SHERIFF BILL BROWN, KERN COUNTY
16 SHERIFF DONNY YOUNGBLOOD, SAN MATEO
   COUNTY SHERIFF GREG MUNKS, YUBA COUNTY
17 SHERIFF STEVE DURFOR, CONTRA COSTA
   COUNTY SHERIFF WARREN RUPF,
18 SHASTA COUNTY SHERIFF TOM BOSENKO,
   RIVERSIDE COUNTY SHERIFF STANLEY SNIFF JR.,
19 VENTURA COUNTY SHERIFF BOB BROOKS,
   SOLANO COUNTY SHERIFF GARY R. STANTON,
20 SAN LUIS OBISPO COUNTY SHERIFF PAT HEDGES,
   SUTTER COUNTY SHERIFF JIM DENNEY,
21 LAKE COUNTY SHERIFF ROD MITCHELL,
   GLENN COUNTY SHERIFF LARRY JONES,
22 TUOLUMNE COUNTY SHERIFF JIM MELE,
   FRESNO COUNTY SHERIFF MARGARET MIMS,
23 MONTEREY COUNTY SHERIFF MIKE KANALAKIS,
   MONO COUNTY SHERIFF RICHARD SCHOLL,
24 HUMBOLDT COUNTY SHERIFF GARY PHILP,
   EL DORADO COUNTY SHERIFF JEFF NEVES,
25 MERCED COUNTY SHERIFF MARK PAZIN,
   DEL NORTE COUNTY SHERIFF DEAN WILSON,
26 SAN JOAQUIN COUNTY SHERIFF STEVE MOORE,
   AMADOR COUNTY SHERIFF MARTIN RYAN,
27 INYO COUNTY SHERIFF WILLIAM LUTZE,
   STANISLAUS COUNTY CHIEF PROBATION OFFICER
28 JERRY POWERS, VENTURA COUNTY CHIEF

-1-

DECLARATION OF EXPERT WITNESS LT. STEPHEN M. SMITH

| | |
|---|---|
| 1 | PROBATION OFFICER KAREN STAPLES, SOLANO COUNTY CHIEF PROBATION OFFICER |
| 2 | ISABELLE VOIT, SANTA BARBARA COUNTY CHIEF PROBATION OFFICER PATRICIA STEWART, |
| 3 | BUTTE COUNTY CHIEF PROBATION OFFICER JOHN WARDELL, SAN LUIS OBISPO COUNTY CHIEF |
| 4 | PROBATION OFFICER KIM BARRETT, CONTRA COSTA COUNTY CHIEF PROBATION OFFICER |
| 5 | LIONEL CHATMAN, INYO COUNTY CHIEF PROBATION OFFICER JIM MOFFETT, |
| 6 | SHASTA COUNTY CHIEF PROBATION OFFICER BRIAN RICHART, YOLO COUNTY |
| 7 | CHIEF PROBATION OFFICER DON MEYER, FRESNO COUNTY CHIEF PROBATION OFFICER |
| 8 | LINDA PENNER, MARIPOSA COUNTY CHIEF PROBATION OFFICER GAIL NEAL, CITY OF |
| 9 | WHITTIER POLICE CHIEF DAVE SINGER, CITY OF ROSEVILLE POLICE CHIEF JOEL NEVES, |
| 10 | CITY OF PASADENA POLICE CHIEF BARNEY MELEKIAN, CITY OF ALHAMBRA POLICE |
| 11 | CHIEF JIM HUDSON, CITY OF FREMONT POLICE CHIEF CRAIG STECKLER, CITY OF |
| 12 | GROVER BEACH POLICE CHIEF JIM COPSEY, CITY OF SANTA CLARA POLICE CHIEF STEVE |
| 13 | LODGE, CITY OF VACAVILLE POLICE CHIEF RICH WORD, CITY OF WOODLAND POLICE CHIEF |
| 14 | CAREY SULLIVAN, CITY OF SONORA POLICE CHIEF MACE McINTOSH, CITY OF PASO ROBLES POLICE |
| 15 | CHIEF LISA SOLOMON, CITY OF SAN BERNARDINO POLICE CHIEF MICHAEL BILLDT, CITY OF |
| 16 | ATWATER POLICE CHIEF RICHARD HAWTHORNE, NATIONAL CITY POLICE CHIEF ADOLFO GONZALES, |
| 17 | CITY OF DELANO POLICE CHIEF MARK DeROSIA, CITY OF MODESTO POLICE CHIEF ROY WASDEN, |
| 18 | CITY OF FRESNO POLICE CHIEF JERRY DYER, AND CITY OF DELANO CHIEF OF CORRECTIONS GEORGE |
| 19 | GALAZA |

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No: CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |

-2-

DECLARATION OF EXPERT WITNESS LT. STEPHEN M. SMITH

|   |   |   |
|---|---|---|
| 1 | vs. | [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)] |
| 2 | ARNOLD SCHWARZENEGGER, et al., | **DECLARATION OF EXPERT WITNESS LT. STEPHAN M. SMITH** |
| 3 | Defendants. |   |

Case No.: C01-1351 TEH

**THREE-JUDGE COURT**

MARCIANO PLATA, et al.,

Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

I, STEPHEN M. SMITH, hereby declare as follows:

1. I have been employed by the Los Angeles County Sheriff's Department for the last 23 years, and currently serve as the Unit Commander for Custody Support Services of Custody Operations Division. This unit supports Custody Operations Divisions and Correctional Services Division by providing administrative support, independent auditing, research, policy review and development, critical incident review and data analysis. I received an Associate of Arts degree from Antelope Valley College in 1980.

2. I authored the processing plan for the Inmate Reception Center which processes and releases between 170,000 and 180,000 inmates annually.

3. I was the Unit Commander and Operations Lieutenant for the Medical Services Bureau from 2004 through April of 2007.

4. During my career with the Sheriff's Department I have been assigned to several patrol, custody, and administrative assignments, prior to my return to the correctional environment in 2004.

5. Based on my past and current experience for the Los Angeles County Sheriff's Department, I have an intimate knowledge of the information set forth in this document.

6. The Los Angeles County Jail system has court imposed limits on the number of individuals who can be housed in any jail operated or maintained by the County. These limits have significantly impacted the way the legal system works in Los Angeles County.

7. The impacts on public safety due to the projected release of inmates from State Prison would be substantial. The easiest and most obvious problem created by the release of state prison convicts into the community is the fact that they will not be in prison. This eliminates the state's control over the convict's ability to commit additional crimes in the community. One of the goals of imprisonment is "to incapacitate the offender and thus deprive him or her of the opportunity to offend again for a given period of time." If a convict is out of custody, whether or not they are supervised, the state has provided them additional opportunity to commit crimes.

8. According to published reports by the State of California 67.5 % of those currently released by the California Department of Corrections will return to custody within two years of their release. It was earlier estimated that 26,000 inmates would have to be released by the State of California back into the community to meet the proposed

-4-

inmate population caps. We believe about 31% of those inmates would be released back into Los Angeles County. This is approximately 8,200 inmates that would be returned to Los Angeles County. The State of California estimates that approximately 67.5% commit crimes and return to custody. This would mean that Los Angeles County would get 5,500 additional inmates returning to custody. Since the 2007 overall Part One crime percent cleared rate was 22%, it follows that these arrests would only be a small percentage of the new crimes these individuals would commit in the community. This would cause the overall crime rates to climb over time. The crime rates represent more than mere numbers, as they represent lives seriously interrupted and sometimes violently ended.

9. The 5,500 additional inmates also will fall into the already overburdened Los Angeles County jail system. Assuming even an average length of stay in county jail is approximately 42 days, the sentenced population would minimally be required to return to 10% sentence time according to estimates by the Los Angeles County Sheriff's Department housing personnel. With the likelihood of a significant portion of the 5,500 being second and third strike inmates, the average length of stay would likely be much higher. A typical second strike / third strike inmate spends between 114 to 174 days in jail custody respectively, thus imposing more burden on the jail system than the average inmate.

10. The effect that these additional inmates will have on the system is that our female facility primarily becomes a pre-sentenced facility and the male facilities will be at about 10% of their sentenced time. This will decrease the ability to program these

individuals. There simply will be no room for them in the jail and they will have little incentive to participate in proven self-improvement programs given the short time that they will be required to stay.

11. The released 5,500 state prison inmates also represent an additional strain on limited mental health resources inside of the jail. It is estimated that approximately 605 of the 5,500 state inmates will require some form of treatment for mental health issues. The Los Angeles County jail already has the largest concentration of the mentally ill in California. Since these inmates will require services, the County of Los Angeles will have to fund and house these individuals.

12. Alternative Resource Management (ARM) is a program that reviews inmates that do not appear to belong in the custody environment. The objective of the committee is to identify and use available resources to ensure that individuals with serious acute or chronic medical / mental health conditions who are eligible for release are more quickly and appropriate placed. Placement includes transfer to state facilities, rehabilitation programs, convalescent centers, etc, as appropriate. Since June 2008, this program has placed 394 inmates into appropriate treatment programs and / or facilitated release of inmates.

13. The plans of Los Angeles County to house and pay for the normal growth expected in the inmate population would be impacted. The plans for new County jail space does not factor in the burden of the immediate early release of state prison inmates. Expansion of existing facilities is minimally expected to take five years. There would literally be no relief from this situation during that period and with no additional funds,

the plans would still be woefully short of the projected need even upon completion.

14. All of this indicates that public safety would be negatively impacted, jail planning would be negatively impacted, and the criminal justice system would be more unresponsive to the will of judges and juries as there would be more forced release of even more criminals into the streets without the benefits of incarceration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 30th day of October, 2008 at Los Angeles, California.

STEPHEN M. SMITH

DECLARATION OF EXPERT WITNESS LT. STEPHEN M. SMITH