1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DAVID S. CHANEY
    Chief Assistant Attorney General
3   ROCHELLE C. EAST
    Senior Assistant Attorney General
4   JONATHAN L. WOLFF
    Senior Assistant Attorney General
5   LISA A. TILLMAN – State Bar No. 126424
    Deputy Attorney General
6   KYLE A. LEWIS – State Bar No. 201041
    Deputy Attorney General
7   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
8   Telephone: (415) 703-5708
    Facsimile:  (415) 703-5843
9   lisa.tillman@doj.ca.gov
    kyle.lewis@doj.ca.gov
10
11  Attorneys for Defendants

    HANSON BRIDGETT LLP
    JERROLD C. SCHAEFER - 39374
    PAUL B. MELLO – 179755
    S. ANNE JOHNSON – 197415
    SAMANTHA D. TAMA – 240280
    RENJU P. JACOB - 242388
    425 Market Street, 26th Floor
    San Francisco, CA  94105
    Telephone: (415) 777-3200
    Facsimile:  (415) 541-9366
    jschaefer@hansonbridgett.com
    pmello@hansonbridgett.com
    ajohnson@hansonbridgett.com
    stama@hansonbridgett.com
    rjacob@hansonbridgett.com

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**ATTACHMENT TO DEFENDANTS'<br>OPPOSITION TO PLAINTIFFS' MOTION<br>IN LIMINE NO. 8**<br><br>**To:  Three-Judge Panel** |

- 1 -

# I.    INTRODUCTION

The following is a listing of out-of-court statements that are not hearsay or are admissible hearsay statements contained in the expert reports of Gail Bataille, Dr. David Thomas, Dr. Ira Packer, and James Marquart, and an explanation as to why such statements are admissible.

| Statement | Admissibility |
|---|---|
| **A.    November 9, 2007 Report of Dr. David Thomas** | |
| "In removing these dual role positions, the Receiver declared openly that there was security and there was health care and they had to work together, but there would be no overt barrier to health care and security henceforth had a real role perform in assisting a Constitutional health care delivery system, not an obstructive one." (11/9/07 Report at p. 12.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B).  The information referenced in this expert report is from material published by the *Plata* Receiver.  The Receiver's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ." Fed. R. Evid. 803(8)(B). |
| **B.    September 17, 2008 Addendum and Report of Dr. David Thomas** | |
| "Uniformly, one hundred per cent of the people I elicited comments from felt positive and empowered to do their jobs."  (9/17/08 Addendum at ¶ 3.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references CDCR staff members' then existing state of mind with regard to the current status of the California Department of Corrections and Rehabilitation's (CDCR) medical care services.<br><br>This statement is similarly admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by CDCR staff members during Dr. Thomas' inspections at CDCR facilities. |
| "Also, almost all personnel uniformly cited the need for more space and more staff.  When | This statement is admissible hearsay under Federal Rule of |

| Statement | Admissibility |
|---|---|
| asked specifically if they could deliver an adequate Constitutional level of health care with the existing population, all answered that they could." (*Id.* at ¶ 5.) | Evidence 803(3). This statement references CDCR personnel's then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by CDCR personnel during Dr. Thomas' inspections at CDCR facilities. |
| "I had several long term health care employees comment that even a few years ago they were told by the custody staff to 'Sit over there in the corner and we'll let you know if we need you.'" (*Id.* at ¶ 6.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the long term health care employees' then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by long term health care employees at CDCR during Dr. Thomas' inspections at CDCR facilities. |
| "…most all physicians I spoke to indicated they would like to spend about an hour with each inmate at each visit because of the complexity of medical conditions presented. Also, each provider felt their inmates were 'sicker' than any other inmates in correctional systems." (*Id.* at ¶ 10.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the physicians' then existing state of mind with regard to the current status of CDCR's medical care services. |
| "When I was responsible for health care delivery in Florida (the fourth largest system in the country) a quality management study was undertaken at my behest. It indicated that more than sixty per cent of our inmates received their | This statement is admissible because it is not hearsay. It is not being offered for the truth of what it asserts, but rather for background and the effect on the hearer. |

| Statement | Admissibility |
|---|---|
| first significant health care services in an incarcerated setting." (*Id.* at ¶ 11.) | |
| "One provider indicated '…the inmates run the system…' in reference to requesting specific medications and complaining until they receive them. Certainly, there were some inmates who complained bitterly about '…terrible medical care…' When an inquiry was made, he was bitter about waiting for two hours to be seen. Almost all other inmates indicated that the care was …good and getting better…'" (*Id.* at ¶ 15.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the provider and theinmates' then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the provider and inmates during Dr. Thomas' inspections at CDCR facilities. |
| "Upon discussions with several physician level providers none complained of overcrowding in any way impacting on their services or care. Once again all of the physician providers' complaints resolved around administrative, managerial, and pharmaceutical issues. There were several comments concerning the inability to resolve issues pertaining to which medications patients were actually taking." (*Id.* at ¶ 18.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the physician providers' then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the physician providers during Dr. Thomas' inspections CDCR at facilities. |
| "Other physician providers complained that as nurses were trained they would be moved to another area of the facility. This caused the physician to have to retrain a new set of nurses. While this provider complained of several other issues like this, none of them were related to prisoner population. They were all related to administrative and management issues. Some of | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the physician providers' then existing state of mind with regard to the current status of CDCR's medical care services. |

- 4 -

| Statement | Admissibility |
|---|---|
| the physician providers were concerned that the nursing staff was semi-autonomous and could not be directed by physicians. The feeling was that better use of nurses could be made if the nurses reported to the medical director." (*Id.* at ¶ 19.) | This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the physician providers during Dr. Thomas' inspections at CDCR facilities. |
| "No nursing provider pointed to overcrowding as an issue in the delivery of medical care. Indeed most of the comments were typified by one nurse who stated: 'these inmates are very lucky. I don't get are as good as they get.' She then went on to describe some of her problems in accessing care and some of the advantages of the incarcerated population. Another stated that the care was '…good and getting better.' She went on to claim that she had practiced in the Department for more than two decades and there had been significant problems, but she felt that in the last year it was clear that medical care undergone significant changes and '…was moving in the right direction.'" (*Id.* at ¶ 20.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the nursing providers' then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the nursing providers during Dr. Thomas' inspections at CDCR facilities. |
| "Once again, not one single staff person indicated overcrowding an issue in the appropriate delivery of health care, only in their desire to take longer with each patient and see fewer patients per day." (*Id.* at ¶ 21.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references CDCR staff members' then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by CDCR staff members during Dr. Thomas' inspections at CDCR facilities. |
| "Indeed another expert who ran the system commented that there was a lack of leadership and a lack of organization that came about | This statement is admissible because it is not hearsay. It is not being offered for the truth of what it |

| Statement | Admissibility |
|---|---|
| because of the culture of the system."  (*Id.* at ¶ 22.) | asserts, but rather for the effect on the hearer. |
| "Previous courts (Madrid v. Gomez) in dicta have opined that an inmate's psychological condition may not deteriorate while incarcerated."  (*Id.*) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(C).  This statement references a public record, and such records setting forth "factual findings resulting from an investigation made pursuant to authority granted by law . . ." are admissible.  Fed. R. Evid. 803(8)(C). |
| "The ninth report of the receiver points out (page 69) deaths are down by 30% . . . "  (*Id.* at ¶ 28.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B).  The information referenced in this expert report is from material published by the *Plata* Receiver.  The Receiver's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ." Fed. R. Evid. 803(8)(B). |
| "Receivers appointed by the court have recognized that medical care delivery in a correctional setting is a multifaceted problem that cannot be 'fixed' by removing one single problem."  (*Id.* at ¶ 32.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B).  The information referenced in this expert report is from material published by the *Plata* Receiver.  The Receiver's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ." Fed. R. Evid. 803(8)(B). |
| "All providers felt their interactions with inmates were as good as or better than in the community. They did desire to spend more time with individual patients, but the time frames indicated were totally inconsistent with the non-correctional practice of medical care."  (*Id.* at ¶ 36.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the providers' then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of |

1654510.1

| Statement | Admissibility |
|---|---|
|  | Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the providers during Dr. Thomas' inspections at CDCR facilities. |
| "Once again on this multiple site evaluation, each and every health care staff I spoke to felt empowered and those who had been there prior to last few years expressed great satisfaction in the recent changes that had been brought about and all felt that a quality level care was being achieved."  (*Id.* at ¶ 38.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the health care staff's then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the health care staff during Dr. Thomas' inspections at CDCR facilities. |
| "When an inquiry was made at several institutions, the responses were predicated upon an understanding of the inappropriateness of that system by upper level custody personnel."  (*Id.* at ¶ 40 (discussing the change in culture away from a custody driven system as evidenced by the Receiver's removal of the MTA designation).) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the declarant's then existing state of mind with regard to the current status of CDCR's medical care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the declarant during Dr. Thomas' inspections at CDCR facilities. |

**C.     November 08, 2007 Report of Dr. Ira Packer**

| "Dr. McAloon's declaration that many inmates enter prison severely decompensated due to lack of services in the community, at least suggests that crowding is not the *primary* reason for | This statement is admissible because it is not hearsay.  It is not being offered for the truth of what it asserts, but rather for the effect on the hearer. |

ATTACH. TO DEFS.' OPP'N TO PLS.' MIL NO. 8 TO EXCLUDE HEARSAY
IN EXPERT REPORTS (CASE NOS. 90-00520 AND 01-1351)

1654510.1

| Statement | Admissibility |
|---|---|
| severity symptom presentation among mentally ill inmates." (*Id.*, p. 8.) | |
| "For instance, Dr. Patterson noted [] that 'there continued to be significant substantive inconsistencies and inadequacies in the application of policies and procedures and in staff performance with regard to suicide prevention and management.'" (*Id.*, p. 10.) | This statement is admissible because it is not hearsay. It is not being offered for the truth of what it asserts, but rather for the effect on the hearer. |

**D.    August 15, 2008 Addendum to Report of Dr. Ira Packer**

| | |
|---|---|
| "I was informed by staff that they were progressing ahead of schedule for full deployment." (8/15/08 Addendum at p. 3.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the staff's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the staff during Dr. Packer's inspections at CDCR facilities. |
| "On the day of my visit, the waiting list was only 15 (I was informed that this was down from a waiting list of over 50)." (*Id.*, p. 3.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the staff's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the staff during Dr. Packer's inspections at CDCR facilities. |
| "Both staff and inmates in the program described | This statement is admissible |

1654510.1

| Statement | Admissibility |
|---|---|
| the program in positive terms and there were indications that the inmates were receiving the required elements of the program without significant difficulty." (*Id.*, p. 3.) | hearsay under Federal Rule of Evidence 803(3). This statement references the staff and inmates' then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the staff and inmates during Dr. Packer's inspections at CDCR facilities. |
| "I note that at North Kern, two inmates who were classified as CCCMS complained to me during my interviews with the that they wanted to be re-classified as EOP, as they observed the enhanced services those inmates received." (*Id.*) | This statement is not hearsay as it is an admission by a party-opponent. Fed. R. Evid. 801(d)(2). The statement relies upon admissions by *Coleman* class members and is admissible as non-hearsay.<br><br>Alternatively, this statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the inmates' then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is also alternatively admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the inmates during Dr. Packer's inspections at CDCR facilities. |
| "He acknowledged that services he received while in the EOP general population were 'alright' but complained that he was not receiving | This statement is not hearsay as it is an admission by a party-opponent. Fed. R. Evid. 801(d)(2). |

1654510.1

| Statement | Admissibility |
|---|---|
| services in Ad Seg."  (*Id.*, p. 4.) | The statement relies upon admissions by *Coleman* class members and is admissible as non-hearsay.<br><br>Alternatively, this statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the inmate's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is also alternatively admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the inmate during Dr. Packer's inspections at CDCR facilities. |
| "I was informed that the waiting list for the ICF was 167, and that some inmates had been removed from a list as they were so low down as to be unlikely to obtain a bed in any reasonable time period[]."  (*Id.*, p. 4.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the staff's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the staff during Dr. Packer's inspections at CDCR facilities. |
| "Clinicians at CCI Tehachapi reported that they had decreased their transfers to crisis beds over the past 6 months."  (*Id.*, p. 5.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the clinicians' then existing state of mind with regard to the current status of CDCR's mental health care services. |

- 10 -

1654510.1

| Statement | Admissibility |
|---|---|
| | This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the clinicians during Dr. Packer's inspections at CDCR facilities. |
| "Clinical staff informed me that 70% of inmates in the holding cells were discharged back to population within 3 days and the remaining 30% were admitted to a crisis bed." (*Id.*) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the clinical staff's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the clinical staff during Dr. Packer's inspections at CDCR facilities. |
| "Staff indicated that this was a rare occurrence, and stated that this should not have occurred . . ." (*Id.*, p. 6.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the staff's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the staff during Dr. Packer's inspections at CDCR facilities. |
| "On one of the units at Wasco, the sergeant informed me that the overflow beds were actually considered more desirable by the inmates than the cells, as they had more access to the TV and | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the sergeant's then |

1654510.1

| Statement | Admissibility |
|---|---|
| increased mobility." (*Id.*, p. 7.) | existing state of mind with regard to the current status of CDCR's facilities.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the sergeant during Dr. Packer's inspections at CDCR facilities. |
| "I interviewed a number of CCCMS inmates who were housed in gyms. Their reactions to that space were mixed; some preferred it to being in a cell (as they were more restricted in the latter), while others found it too noisy and distracting. Correctional officers informed me that inmates were selected for these gyms based on lower security status and proximity to discharge. They also characterized these units as not having 'a lot of drama,' by which they meant not a lot of behavioral management issues. Clinical staff also reported that, in their experience, they did not find that CCCMS inmates in these units decompensated …due to the environment." (*Id.*) | This statement is not hearsay as it is an admission by a party-opponent. Fed. R. Evid. 801(d)(2). The statement relies upon admissions by *Coleman* class members and is admissible as non-hearsay.<br><br>Alternatively, this statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the CCCMS inmates and correctional officers' then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is also alternatively admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the CCCMS inmates and correctional officers during Dr. Packer's inspections at CDCR facilities. |
| "I was also informed that if clinical staff determine that a particular inmate is not able to cope with these units, that this information is shared with administration and the inmate will be moved." (*Id.*) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references the staff's then existing state of mind with regard to the current status of CDCR's mental |

1654510.1

| Statement | Admissibility |
|---|---|
| | health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the staff during Dr. Packer's inspections at CDCR facilities. |
| "These inmates all complained about lack of therapeutic activities for them in the facility.  However, they all seemed to be psychiatrically stable, and did not appear to meet criteria for EOP."  (*Id.*) | This statement is not hearsay as it is an admission by a party-opponent.  Fed. R. Evid. 801(d)(2).  The statement relies upon admissions by *Coleman* class members and is admissible as non-hearsay.<br><br>Alternatively, this statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the inmates' then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is also alternatively admissible hearsay under Federal Rule of Evidence 803(1).  This statement is a present sense impression describing the conditions perceived by the inmates during Dr. Packer's inspections at CDCR facilities. |
| "CCI Tehachapi has a designated pre-parole coordinator, and clinical staff reported that coordination was going well with parole, in terms of obtaining needed services for parolees."  (*Id.*, p. 8.) | This statement is admissible hearsay under Federal Rule of Evidence 803(3).  This statement references the staff's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of |

1654510.1

| Statement | Admissibility |
|---|---|
| | Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the staff during Dr. Packer's inspections at CDCR facilities. |
| "She indicated that the program had started about a year ago and appeared to be working well with most parole officers (although they did not have any outcome data, in terms of recidivism). By contrast, a psych tech at Wasco reported her experience of inconsistencies in working with the Transitional Case Management Program." (*Id.*) | This statement is admissible hearsay under Federal Rule of Evidence 803(3). This statement references a social worker's and a psych tech's then existing state of mind with regard to the current status of CDCR's mental health care services.<br><br>This statement is admissible hearsay under Federal Rule of Evidence 803(1). This statement is a present sense impression describing the conditions perceived by the social worker and psych tech during Dr. Packer's inspections at CDCR facilities. |
| "As indicated in the Operational Guidelines for these facilities, prepared by URS Bovis [], the new facilities 'will be unlike any correctional facility currently found within the existing California Department of Corrections Rehabilitation (CDCR) . . . There will be an emphasis on achieving a therapeutic environment that is conductive to appropriate levels of treatment and restorative care and programs for both medical and mental health patients.'" (*Id.*, p. 9.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B). The information referenced in this expert report is from material published by the *Plata* Receiver. The Receiver's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ." Fed. R. Evid. 803(8)(B). |
| **E.    October 1, 2008 Addendum to Report of Dr. Ira Packer** | |
| "For example, in a study by Teplin and colleagues using a jail (rather than prison study) concluded: 'Our sample of jail detainees was highly recidivistic: Nearly one half were arrested for a violent crime during the six-year follow-up period. In this extremely recidivistic population, however, psychiatric disorder did not increase the | This statement is admissible hearsay under Federal Rule of Evidence 803(18). This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise |

- 14 -

| Statement | Admissibility |
|---|---|
| probability of being arrested for violent crimes after release.' Nevertheless, they did find that particular symptoms of psychosis may have been associated with increase arrests for violent crime. They wrote: 'A history of both hallucinations and delusions increased the number of arrests for violent crimes after release, but not significantly. This finding might have been stronger if we had had data on the recency of the psychotic symptoms. Nevertheless, this pattern corroborates prior studies [] and suggests that psychotic symptoms may be more powerful predictors of violent crimes than diagnoses per se [].'" (10/1/08 Addendum, pp. 1-2 (citing to Teplin, Abram, and McClelland (1994): Does Psychiatric Disorder Predict Violent Crime Among Released Jail Detainees? A Six-Year Longitudinal Study, *American Psychologist*, 49, 335-342).) | which will be established at trial as a reliable authority. Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807. This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |

**F.    August 14, 2008 Report of James Marquart**

| Statement | Admissibility |
|---|---|
| "With an annual budget of nearly $10 billion, the California Department of Corrections and Rehabilitation (or CDCR) oversees or has the responsibility for 319,000 offenders, employs over 60,000 individuals; the annual cost per inmate is $35,587 and the annual cost per parolee is $4,338." (8/14/08 Report, p. 4 (referring to CDCR's Division and Board's First Quarter 2008 Facts and Figures).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "Since 1982, the institutional population has increased five-fold, resulting in an incarceration rate for 461/100,000." (*Id.* (referring to CDCR's California Prisoners & Parolees, 2006, Offender Information Services, Data Analysis Unit).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or |

ATTACH. TO DEFS.' OPP'N TO PLS.' MIL NO. 8 TO EXCLUDE HEARSAY
IN EXPERT REPORTS (CASE NOS. 90-00520 AND 01-1351)

1654510.1

| Statement | Admissibility |
|---|---|
| | data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table 6: Institution Population Rate Per 100,000 California Population, December 31, 1982 through December 31, 2006.  (*Id.*, p. 5 (referring to data provided by the Department of Finance).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table: institutional data on population size, design bed capacity, and the rate of occupancy. (*Id.*, p. 6 (referring to data from CDCR's California Prisoners & Parolees 2006, Offender Information Services, Data Analysis Unit).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an |

- 16 -

1654510.1

| Statement | Admissibility |
|---|---|
| | investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table 23: Assaults on Staff in Institutions and Camps Rate Per 100 Average Daily Population (ADP) With and Without Use of Weapon, Calendar Year 1982 through 2006.  (*Id.*, p. 9 (referring to data from CDCR's California Prisoners & Parolees 2006, Offender Information Services, Data Analysis Unit).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table 24: Assault Incidents on Inmates in Institutions and Camps Rate Per 100 Average Daily Population (ADP) With and Without Use of Weapon, Calendar Year 1982 through 2006.  (*Id.*, p. 10 (referring to data from CDCR's California Prisoners & Parolees 2006, Offender Information Services, Data Analysis Unit).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "Between 1982 and 2006, the rate of attacks on staff by inmates using weapons was nearly | This statement is admissible hearsay under Federal Rules of |

1654510.1

| Statement | Admissibility |
|---|---|
| 'static' and increased only slightly, from 0.2 to 0.6. The rate of inmate assaults on staff without weapons, increased from 1.3 in 1982 to 1.8 in 2006." (*Id.*, p. 11 (referring to data from CDCR's California Prisoners & Parolees 2006, Offender Information Services, Data Analysis Unit).) | Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table 1: California Department of Corrections and Rehabilitation population, suicide rate, and housing and location of suicide. (*Id.*, p. 12 (referring to CDCR data.) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "It has been asserted by the Plaintiffs that the primary source of unconstitutional levels of prisoner health care and mental health services is overcrowding, and that one possible solution or remedy to this situation is the immediate reduction of the prisoner population thru [sic] the imposition of a <u>cap</u> set at the level of 158% of design capacity, or 132,500 inmates by 2012." (*Id.*) | This statement is admissible because it is not hearsay. It is not being offered for the truth of what it asserts, but rather for the effect on the hearer. |

ATTACH. TO DEFS.' OPP'N TO PLS.' MIL NO. 8 TO EXCLUDE HEARSAY
IN EXPERT REPORTS (CASE NOS. 90-00520 AND 01-1351)

1654510.1

| Statement | Admissibility |
|---|---|
| "Currently, there are 155,812 offenders in CDCR prisons and 4,341 in camps for a total of 160,153 inmates."  (*Id.* (referring to data from CDCR's Division and Boards, First Quarter 2008 Facts and Figures).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "Table 3 from the Panels' report portrays CDCR admission and length of stay data. These data show that first pool of 'diverts' consists of 14,532 probation violators serving less than nine months. The second ready pool of 'diverts' are the roughly 70,000 'short-term' prisoners/parolees defined as 'technical violators/technical violators reinstated'" with and average length of stay of less than six months.' (*Id.*, p. 14 (referring to data in CDCR's Expert Panel on Adult Offender & Recidivism Reduction Programming, *Report to the California State Legislature: A Roadmap for Effective Offender Programming in California*, 2007).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table 3: CDCR Admissions and Lengths of Stay by Admit Type.  (*Id.* (referring to data in CDCR's Expert Panel on Adult Offender & Recidivism Reduction Programming, *Report to the California State Legislature: A Roadmap for Effective Offender Programming in California*, 2007).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities |

- 19 -

| Statement | Admissibility |
|---|---|
|  | of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table: Historical One and Two Year Recidivism Rate with Annual Return to Prison Rate 1977-2004.  (*Id.*, p. 15 (referring to CDCR data).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table: One, Two, Three Year Follow-up Recidivism Rates For All Paroled Felons Released from Prison for the First Time in 2004 Under the Supervision of the California Department of Corrections and Rehabilitation.  (*Id.*, p. 16 (referring to CDCR data).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations |

ATTACH. TO DEFS.' OPP'N TO PLS.' MIL NO. 8 TO EXCLUDE HEARSAY
IN EXPERT REPORTS (CASE NOS. 90-00520 AND 01-1351)

1654510.1

| Statement | Admissibility |
|---|---|
| | and reports fall within each of these exceptions to the hearsay rule. |
| "In fact, the California State Association of Counties has stated: '…if a significant number of prison inmates are released into our communities-- -communities that are ill-equipped to deal with existing service demands—counties' program and services will be stretched beyond the breaking point.'"  (*Id.*, p. 17 (referring to a letter dated 9/14/07 by the California State Association of Counties).) | This statement is admissible under Federal Rule of Evidence 803(6) as a record of regularly conducted activity.  This statement is made by an association with regard to "acts, events, conditions, opinions, or diagnoses" which were made at or near the relevant time by an entity with the requisite knowledge.  This statement was made as part of CSAC's regular business practices.

This statement is also admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).

This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "'In 1980, just over 7,000 Texas inmates were paroled; by 1985 the figure had grown to almost 9500. By 1990, over 45,000 were released from state prisons on parole. According to Jack Kyle, chairman of the Texas Board of Pardons and Paroles, 'during this time period [mid-1980s] parole in Texas became an open door.'  By way of comparison, the national parole rate in 1983 was 135 parolees per 100,000 and increased to | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18). |

- 21 -

1654510.1

| Statement | Admissibility |
|---|---|
| 248 in 1989. In Texas, the 1983 parole rate was 290 and 1989 the figure leaped to 758.'"  (*Id.*, p. 18 (referring to Marquart, J. and colleagues, 1994: "A Limited Capacity to Treat: Examining the Effects of Prison Population Control Strategies on Prison Education Programs." *Crime and Delinquency*, 40 (4): 516-531).) | This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "In Texas, complying with a population cap taxed the resources of the state. At the same time the state saw an upsurge in crime.  'From 1980 through 1984, the number of index crime known to the police nationwide dropped by 11.4 % but those in Texas rose by 5%. Then, from 1984 through 1989, although the nation as a whole was experiencing a 20% increase in the number of known index of crimes, Texas experienced an increase of 47.3%.'"  (*Id.*, p. 18 (referring to Marquart, J. and colleagues, 1993: "Ceremonial Justice, Loose Coupling, and the War on Drugs in Texas, 1980-1989."  *Crime and Delinquency*, 39 (4): 528-542).) | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).

This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "'Two of his victims, Melissa Ann Northrup and Colleen Reed were killed a short time later.  After a nationwide manhunt, McDuff was arrested in Kansas City in 1992.

It was for the abduction, rape and murder of Northrup that McDuff was executed.  The body of | This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other |

- 22 -

| Statement | Admissibility |
|---|---|
| the 22-year old pregnant mother of two was found in a gravel pit weeks after her abduction from a convenience store.  Her hands were tied behind her, and she had been strangled with a rope.<br><br>McDuff also had a second death sentence for the 1991 abduction and killing of Austin accountant Colleen Reed, 28, but a judge granted a stay in that case.  Authorities say he may have killed as many as a dozen other people, primarily in central Texas between Austin and Waco.'" (*Id.*, p. 19 (referring to the *Huntsville Item*, 11/7/98, "Man blamed for 14 murders executed in Texas").) | evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "There were 107 offenders on death row (including such notables as Sirhan Sirhan and Charles Manson) and *Anderson* resulted in these 107 offenders receiving commutations and then being 'released' into the general prisoner population -- a number were eventually paroled, and one *Anderson*-commutee went on to commit a murder while in the free community." (*Id.*, p. 20 (referring to Marquart, James W., Jonathan R. Sorensen, and Madhava Bodapati, 1990: "A Research Note: Two Decades After *People v. Anderson*." *Loyola of Los Angeles Law Review*, 24 (1): 45-55).) | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "'The move to comply with the population cap produced a situation whereby the average number of months in prison was less than the average number of months needed to advance one grade level or to attain vocational certification.  Accordingly, the opportunity to benefit from educational programming escaped | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as |

- 23 -

| Statement | Admissibility |
|---|---|
| many inmates." (*Id.*, p. 21 (referring to Marquart, J. and colleagues, 1994: "A Limited Capacity to Treat: Examining the Effects of Prison Population Control Strategies on Prison Education Programs." *Crime and Delinquency*, 40 (4): 516-531).) | a reliable authority. Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807. This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "Currently there are over 4,000 offenders in these camps which train inmates in fire suppression and to render aid in other emergencies: 'The average sentence for adult inmates selected for camp is less than two years and the average time they will spend in camp is eight months. After being selected for camp, inmates undergo a vigorous two-week physical fitness training program and are then schooled for another two weeks in fire safety and suppression techniques.'" (*Id.*, p. 21 (referring to CDCR data contained on CDCR's website at: www.cdcr.ca.gov/Conservation_Camps/index).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "I also support the 'Legislator Intervenors' Position Statement dated 6/2/2008' especially in regards to their authorization of a: ' comprehensive census of inmates to determine the current illegal alien population of the California prisons--currently estimated at approximately 30,000 inmates--and negotiation of full federal funding for the costs associated with housing these inmates.'" (*Id.*, p. 22.) | This statement is admissible because it is not hearsay. It is not being offered for the truth of what it asserts, but rather for the effect on the hearer. |

- 24 -

1654510.1

| Statement | Admissibility |
|---|---|
| "In 2003, the State of California was awarded as part of the State Criminal Alien Assistance Program (SCAAP), $66 million in payments for the housing of illegal aliens, and about $30 million was distributed to a number of California counties."  (*Id.*, p. 22 (referring to information on the US Department of Justice's website; *see* 2003 State Criminal Alien Assistance Program Report at: www.ojp.usdoj.gov/BJA/grant/03scaaparch.htm).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "The four regions combined deported roughly 13,000 offenders."  (*Id.*, p. 23 (referring to data from CDCR's Division and Boards, Population Reports, Parole Population, Monthly Report).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table 2: Parole Counts for Parole Statuses. Deport & Pending Deport and All Other Parole Units by Parole Region for July 31, 2008.  (*Id.* (referring to data from CDCR's Division and Boards, Population Reports, Parole Population, Monthly Report).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities |

1654510.1

| Statement | Admissibility |
|---|---|
| | of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "Many inmates actually believed that they 'had' to be released for the state to comply with a federal court order."  (*Id.*, p. 25 (referring to Ben M. Crouch and James W. Marquart, 1989: "An Appeal to Justice: Litigated Reform of Texas Prisons," University of Texas Press: Austin, Texas).) | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |

**G.      September 22, 2008 Supplemental Report of James Marquart**

| | |
|---|---|
| Chart: California Crime Rates 1960-2006 Compared to Institution Population Rate and New Felon Admissions 1982-2006.  (9/22/08 Suppl. Report, p. 3 (referring to data compiled by the Federal Bureau of Investigation and data and charts prepared by Erin Orrick, Research Assistant, Program in Criminology, University of Texas -- Dallas).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by |

- 26 -

| Statement | Admissibility |
|---|---|
| | law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Chart: Index Crime Rate Compared to Institution Population Rate.  (*Id.*, p. 4 (referring to data compiled by the Federal Bureau of Investigation and data and charts prepared by Erin Orrick, Research Assistant, Program in Criminology, University of Texas -- Dallas).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Chart: Property Crime Rate Compared to Institution Population Rate.  (*Id.*, p. 5 (referring to data compiled by the Federal Bureau of Investigation and data and charts prepared by Erin Orrick, Research Assistant, Program in Criminology, University of Texas -- Dallas).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |

| Statement | Admissibility |
|---|---|
| Chart: Violent Crime Rate Compared to Institution Population Rate. (*Id.*, p. 6 (referring to data compiled by the Federal Bureau of Investigation and data and charts prepared by Erin Orrick, Research Assistant, Program in Criminology, University of Texas -- Dallas).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "Dr. William Spelman, who reviewed the refereed research literature on this topic, had this to say: 'In a nutshell then, what the studies of the past ten years tell us is that crime responds to prison capacity and that continued expansion of prisons nationwide will reduce crime. What studies do not tell us is whether the reduction is large enough to warrant continued expansion.'" (*Id.* at ¶ 3, p. 7 (referring to William Spellman, 2000: "What Recent Studies Do (And Don't) Tell us about Imprisonment and crime."  Crime and Justice: An Annual Review of Research, Chicago: University of Chicago Press (419-494).) | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).

This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| " As Dr. Joan Petersilia noted, 'fully 50% [of existing CDCR prisoners in 2006] did not | This statement is admissible hearsay under Federal Rules of |

| Statement | Admissibility |
|---|---|
| participate in any rehabilitation or work program, nor do they have work assignment, during their entire prison term.' Specific to parolees, 56% of California's 2005 parolees did not participate in any parole programming and only 10% participated in substance abuse programs. Importantly, 'most prisoners and parolees leave CDCR with their literacy, substance abuse, and employment needs unmet. In other words, they are unprepared for success.'" (*Id.* at ¶ 5, p. 8 (referring to Review of the California Expert Panel on Adult Offender and Recidivism Reduction Programming, Summary of Findings from the Program Review Subcommittee, Testimony before the Senate Budget and Fiscal Review Subcommittee NO. 4 on State Administration, General Government, Judicial and Trnasportation, August 27, 2007, 3-4, Joan Petersilia, Ph.D.).) | Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "In 2005, 60,324 parolees were returned to the custody of CDCR. Of these, 49,422 or roughly 82% were returned to CDCR Institutions versus re-released to parole supervision. More than 75% (or 37,532) of those returned to CDCR institutions came back as 'Administrative Criminal Returns,' meaning they were not convicted of a new crime but were involved in new criminal activity." (*Id.* at ¶ 6, p. 8 (referring to CDCR data regarding parole violators released from custody by principal charge category, 2003-2005).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Figure 4: Long-Term Growth of Inmate Population: Three Scenarios. (*Id.*, pp. 9-11 (referring to CDCR data regarding parole violators released from custody by principal charge category, 2003-2005).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets |

| Statement | Admissibility |
|---|---|
| | forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "According to the California State Sheriffs' Association in 2006, the state was between 4,900-12,800 beds short comparing their rated capacity to their average daily population.  'The consequences is that, in 2005 statewide, 9,148 offenders a month were given pretrial releases and an additional 9,323 inmates a month were released early from their jail sentence *dues solely to lack of jail space.*'"  (*Id.* at ¶ 8, p. 11 (referring to information contained in "Do the Crime, Do the Time? Maybe not, in California."  California State Sheriff's Association, June 2006, p. v; 11).) | This statement is admissible under Federal Rule of Evidence 803(6) as a record of regularly conducted activity.  This statement is made by an association with regard to "acts, events, conditions, opinions, or diagnoses" which were made at or near the relevant time by an entity with the requisite knowledge.  This statement was made as part of the California State Sheriff's Association's regular business practices.

This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "Research by Frank Williams and colleagues on a group of California parolees found that the overall employment experiences of offenders was not good, and in fact only 20% of the parolees supported themselves through employment in the first year after release."  (*Id.* at ¶ 9a, p. 12 (referring to F. Williams & colleagues, 2000: | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. |

| Statement | Admissibility |
|---|---|
| "Predicting Parole Absconders." *The Prison Journal*, 80:24-38).) | 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807. This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "Research on correctional populations has shown that offender populations have 'significantly higher incidences of substance abuse, mental health concerns, and other debilitating diseases than the general population.'" (*Id.* at ¶ 9b, p. 13 (referring to James, D., & L. Glaze, 2006: Mental Health Problems of Prison and Jail Inmates (Publication No. NCJ-213600). Washington, D.C.: U.S. Department of Justice, *Bureau of Justice Statistics*).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "'Once the offender leaves the correctional system, then he or she must obtain these services in the community, if they exist. In the cases where the needed services do exist, released offenders often don't have the resources required to obtain them. This leads to the offender becoming physically or mentally destabilized and often results in him of her being returned to prison after being convicted of committing a new crime violating one or more parole conditions. We believe that it would be in | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a |

- 31 -

| Statement | Admissibility |
|---|---|
| the best interest of California to ensure that released offenders have access to medications they need to manage their mental health disorders and-or physical ailments, as well as access to housing and job assistance services." (*Id.* (referring to the CDCR Expert Panel on Offender Reentry and Recidivism Reduction Program).) | duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "The median home price in California in 2005 was $545,910 requiring an annual income of $127,950 to qualify for a loan -- a job in the service sector at minimum wage would eliminate most released offenders from purchasing their own home."  (*Id.* at ¶ 9c, p. 14 (referring to J. Grossberg, 2005: "Area Housing Prices in a Froth."  *Daily Breeze*, 11/9/2005).) | This statement is admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "They report that nearly half (44%) of the parolees that they examined lived with the family member, not in a half way house or group housing situation. Moreover, data on the needs of California paroles shows that roughly 13% of these offenders have '2 or more prior family violence arrests or convictions.'"  (*Id.* (referring to F. Williams & colleagues, 2000: "Predicting Parole Absconders."  *The Prison Journal*, 80:24-38).) | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).

This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |

1654510.1

| Statement | Admissibility |
|---|---|
| "COMPAS data (used to assess the needs of parolees) collected from 11,140 parolees shows that a sizeable percentage of parolees have a substance problem that led to a prison term." (*Id.* at ¶ 9d, p. 14 (referring to the CDCR Expert Panel on Offender Reentry & Recidivism Reduction Program, p. 137-140).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Tables based on COMPAS data.  (*Id.*, p. 15 (referring to the CDCR Expert Panel on Offender Reentry & Recidivism Reduction Program, p. 137-140).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Figure 21: LAO Cost and Benefit Comparison of Employment Programs.  (*Id.*, p. 17 (referring to "Judicial & Criminal Justice," 2007-2008, *California Legislative Analyst's Office*).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets |

ATTACH. TO DEFS.' OPP'N TO PLS.' MIL NO. 8 TO EXCLUDE HEARSAY
IN EXPERT REPORTS (CASE NOS. 90-00520 AND 01-1351)

1654510.1

| Statement | Admissibility |
|---|---|
| | forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Figure 34: Administrative Violations vs. New Criminal Convictions of California Parolees Returned to Prison, 1980-2004. (*Id.*, p. 19 (referring to data provided by CDCR's Division of Adult Parole Operations).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| **H. September 27, 2008 Rebuttal Report of James Marquart** | |
| " The chart below illustrates that even within groups identified as 'low risk' recidivism can be expected to occur." (9/27/08 Rebuttal Report, p. 2 (referring to the Development of the California Static Risk Assessment (CSRA), by Jesse Jannetta, UC Irvine 4/2/08).) | This statement is admissible hearsay under Federal Rule of Evidence 807. This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this |

1654510.1

| Statement | Admissibility |
|---|---|
| | statement into evidence. |
| **I.    August 15, 2008 Report of Gale Bataille** | |
| " On the basis of <u>Special Master Keating's Response to the Court's May 17, 2007 Request for Information</u> it is reasonable to assume that 'the percentage of the caseload census in the overall population is predictable 19-20 percent.'" (8/15/08 Report, p. 2.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B).  The information referenced in this expert report is from material published by the *Coleman* Special Master.  The Special Master's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ."  Fed. R. Evid. 803(8)(B). |
| "Special Master Keating states: 'even the release of 100,000 inmates would likely leave the defendant with a largely unmitigated need to provide intensive mental health services to program populations that would remain undiminished by a reduction of some 19,000 3CMS (case management level mentally ill inmates in the general prison population.)  Only a targeted release of seriously mentally ill inmates will serve quickly to reverse current deficiencies, especially of bed and program space.  Still, the most seriously mentally ill inmate/patients in CDCR are unlikely to be among those released pursuant to any of the provision[s] of defendants' Assembly Bill 900.'" (*Id.*, p. 5.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B).  The information referenced in this expert report is from material published by the *Coleman* Special Master.  The Special Master's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ."  Fed. R. Evid. 803(8)(B). |
| "In addition, in the April 17th Supplemental Responses to Defendants['] Interrogatories, the Coleman Plaintiff's [sic] articulated proposals that Defendants could consider as prison overcrowding reduction measures 'available to them that can be done safely and, in light of the dangerous overcrowding in the prison system right now, could actually improve public safety.'" (*Id.*) | This statement is not hearsay as it is an admission by a party-opponent.  Fed. R. Evid. 801(d)(2).  The statement relies upon Plaintiffs' April 17, 2008 responses to Defendants' supplemental interrogatories and is admissible as non-hearsay. |
| "A March 28, 2008 report released by the CDCR Division of Adult Parole Operations regarding the mentally ill parolee population states: 'Consistent with the terms of the *Valdivia v.* | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references |

| Statement | Admissibility |
|---|---|
| *Schwarzenegger* federal court injunction, effective January 8, 2007, the California Department of Corrections and rehabilitation (CDCR) no longer incarcerates parolees solely for psychiatric treatment (psych-return). Therefore, when a parolee requires mental health treatment above the level of care available from the Parole Outpatient Clinics (POC), CDCR relies on the counties, and other community-based providers, to obtain necessary mental health services. Specifically, parolees are brought to the county mental health facilities for a California Welfare and Institutions Code (WIC) §5150 evaluation. Oftentimes, a parolee resident does not meet the criteria for continued county services via the WIC §5150 process, but will still require a structured level of care in order to prevent negative outcomes in the community. With the end of psych-return process, this level of care must now be provided by community-based mental health facilities.'" (*Id.*, pp. 6-7.) | "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "CDCR reported a total of 22,219 parolees eligible for POC services in February 2008. Four thousand and eight (4008) of this population was designated as EOP and in need of higher level mental health services." (*Id.*, p. 7 (referring to California Prisoners & Parolees, 2006, Offender Information Services, Data Analysis Unit).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law. Fed. R. Evid. 803(8). CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "The MHSCP evaluation found that parolees with the highest level of mental health need (EOP) had a higher recidivism and prison return rate than the CCCMS population: 60.9% of EOP parolees were returned to prison within 12 months, relative to | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C). This statement references "[r]ecords, reports, statements, or |

| Statement | Admissibility |
|---|---|
| 53.4% of CCCMS parolees . . . In addition the evaluation finds a 'strong relationship between the number of POC sessions attended and recidivism risk for all seriously mentally ill parolees.['] Specifically, 'the greater number of POC contacts a CCCMS/EOP parolee has, the less likely he or she is to be returned to prison.  Interestingly, the greatest decline in recidivism risk occurs for parolees who have attended a POC more than four times.'"  (*Id.*, p. 8 (referring to the Final Report on the Mental Health Services Continuum Program of the California Department of Corrections and Rehabilitation - Parole Division, dated 6/30/06).) | data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| Table: Statewide Parole Outpatient Clinic Classifications --February 2008, Parolee to Clinician Ratio.  (*Id.* (referring to Mentally Ill Parolee Population 3/28/08, Report by the CDCR Division of Adult Parole Operations).) | This statement is admissible hearsay under Federal Rules of Evidence 803(8)(A), (B), and (C).  This statement references "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies," and sets forth the following: (A) the activities of the office or agency; (B) matters observed under a duty imposed by law as to matters which there as a duty to report; and (C) factual findings resulting from an investigation made under authority granted by law.  Fed. R. Evid. 803(8).  CDCR's data compilations and reports fall within each of these exceptions to the hearsay rule. |
| "Findings of the <u>President's New Freedom Commission on Mental Health</u> (2003) and the preponderance of literature on community mental health supports the importance of a range of community support services including supported housing, educational and vocational services, substance abuse treatment, integrated treatment for individuals with co-occurring substance abuse and psychiatric disorders, family education and support and health services."  (*Id.*, p. 11 (referring to the New Freedom Commission on Mental Health Report to the President, 2003).) | This statement is admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this |

| Statement | Admissibility |
|---|---|
| | statement into evidence. |
| "Special Master Keating's 5/17/07 report discusses critical vacancy rates of mental health staff at CDCR facilities --and the uneven geographic distribution of vacancies: '…defendants cannot meet at least a substantial portion, amounting in some loose amalgam, to about 33% of acknowledged mental health needs with current staffing resources.'" (*Id.*, p. 12.) | This statement is admissible hearsay under Federal Rule of Evidence 803(8)(B).  The information referenced in this expert report is from material published by the *Coleman* Special Master.  The Special Master's publications are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . ."  Fed. R. Evid. 803(8)(B). |
| "The Plaintiff's [sic] state (pg. 9): 'Defendants have numerous, evidence-based population reductions available to them that can be done safel[y] and, in light of the dangerous overcrowding in the prison system right now, could actually improve public safety.'" (*Id.*, p. 14.) | This statement is not hearsay as it is an admission by a party-opponent.  Fed. R. Evid. 801(d)(2).  The statement relies upon Plaintiffs' April 17, 2008 responses to Defendants' supplemental interrogatories and is admissible as non-hearsay. |
| "The LAO Parole Realignment proposal focused on 'the wrong end of the corrections system and targets the wrong population.'  The CSAC taskforce advocates a 'front-end'/community focus on intercepting criminal justice at risk/involved persons through prevention, early intervention and diversion programs rather than 'expecting counties to succeed with offenders who have been subject to severely overcrowded prison conditions, …exposed to harmful criminal influences, and received little in the way of services or preparation for reintegration.'<br><br>"'Better outcomes cannot be assured…' especially in light of the lack of adequate local services to a substantially larger existing population at the local [sic] that is 'presently receiving inadequate supervision and services because of a lack of funding.'<br><br>"'Our existing system needs attention … a realignment of a significant new population will only place additional pressures on a strained and | This statement is admissible under Federal Rule of Evidence 803(6) as a record of regularly conducted activity.  This statement is made by an association with regard to "acts, events, conditions, opinions, or diagnoses" which were made at or near the relevant time by an entity with the requisite knowledge.  This statement was made as part of CSAC's regular business practices.<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a study contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has |

1654510.1

| Statement | Admissibility |
|---|---|
| under-funded system.[']"  (*Id.*, p. 19 (referring to: Corrections Reform: County Policy Principles and Guidelines, California State Association of Counties).) | guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| **J.**    **August 27, 2008 Rebuttal Report of Gale Bataille** | |
| "As is acknowledged by Dr. Gilligan, '**Criminal history, antisocial personality, <u>substance abuse</u>**, and family dysfunction' were the most powerful predictors [of violence,] in mentally ill and non-mentally ill parolees."  (*Id.*, p. 2.) | This statement is not hearsay as it is an admission by a party-opponent.  Fed. R. Evid. 801(d)(2). The statement relies upon Plaintiffs' experts' statements and is therefore admissible as non-hearsay. |
| "A June 25, 2008 updated report of the California Hospital Association's Center for Behavioral Health provides dramatic and disturbing data regarding the decline in psychiatric inpatient beds in California from 1995-2006 as follows:<br>• Inpatient psychiatric beds have dropped from 9353 to 6424: a 31.3% decrease and only 5515 of those beds serve adults.<br>• Inpatient chemical dependency beds have dropped from 1400 to 818 for a 41.6% decrease.<br>• This drop in bed numbers is paralleled by a decrease in the actual number of facilities: psychiatric facilities have decreased from 181-1342 or <21.5% and chemical dependency inpatient facilities have decreased from 55 to 34 or <38.2%<br>• The National average is 1 psyc. bed for every 2536 people: CA average is 1:5675 and according to CHA national experts estimate the need at 1 psyc. bed per 2000<br>• Chemical dependency beds compare at national average of 1 bed:39,336 while CA has 1 CD bed:44,569."<br>(*Id.*) | This statement is admissible under Federal Rule of Evidence 803(6) as a record of regularly conducted activity.  This statement is made by an association with regard to "acts, events, conditions, opinions, or diagnoses" which were made at or near the relevant time by an entity with the requisite knowledge.  This statement was made as part of the California Hospital Association's Center for Behavioral Health's regular business practices.<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a report contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has |

1654510.1

| Statement | Admissibility |
|---|---|
|  | guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |
| "The UCLA <u>Final Report on the Mental Health Services Continuum Program of the California Department of Corrections and Rehabilitation-Parole Division</u> dated June 30, 2006 documents a significant rate of parolee failure to follow through on outpatient services and a correlation between decreased CDCR-POC contacts and recidivism and re-offense."  (*Id.*, p. 10.) | This statement is admissible hearsay under Federal Rule of Evidence 803(18).  This statement is made by an expert witness in direct examination, and the statement references a report contained in a published treatise which will be established at trial as a reliable authority.  Fed. R. Evid. 803(18).<br><br>This statement is also admissible hearsay under Federal Rule of Evidence 807.  This statement has guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that may be procured through reasonable efforts, and the purposes of these rules and the interests of justice will best be served by the admission of this statement into evidence. |

- 40 -

1654510.1

1 | DATED: October 30, 2008                    HANSON BRIDGETT LLP

2

3 |                                            By: /s/ Paul B. Mello

4 |                                            PAUL B. MELLO
   |                                            Attorneys for Defendants
   |                                            Arnold Schwarzenegger, et al.
5

6 | DATED: October 30, 2008                    EDMUND G. BROWN JR.
   |                                            Attorney General of the State of California

7

8 |                                            By: /s/ Kyle A. Lewis

9 |                                            KYLE LEWIS
   |                                            Deputy Attorney General
   |                                            Attorneys for Defendants
10 |                                           Arnold Schwarzenegger, et al.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 41 -

ATTACH. TO DEFS.' OPP'N TO PLS.' MIL NO. 8 TO EXCLUDE HEARSAY
IN EXPERT REPORTS (CASE NOS. 90-00520 AND 01-1351)

1654510.1