| | |
|---|---|
| PRISON LAW OFFICE<br>DONALD SPECTER, Bar No. 83925<br>STEVEN FAMA, Bar No. 99641<br>E. IVAN TRUJILLO, Bar No. 228790<br>SARA NORMAN, Bar No. 189536<br>ALISON HARDY, Bar No. 135966<br>REBEKAH EVENSON, Bar No. 207825<br>1917 Fifth Street<br>Berkeley, CA 94710<br>Telephone: (510) 280-2621 | ROSEN, BIEN & GALVAN, LLP<br>MICHAEL W. BIEN, Bar No. 96891<br>JANE E. KAHN, Bar No. 112239<br>AMY WHELAN, Bar No. 215675<br>LISA ELLS, Bar No. 243657<br>MARIA V. MORRIS, Bar No. 223903<br>315 Montgomery Street, 10th Floor<br>San Francisco, California 94104<br>Telephone: (415) 433-6830 |
| K&L GATES LLP<br>JEFFREY L. BORNSTEIN, Bar No. 99358<br>EDWARD P. SANGSTER, Bar No. 121041<br>RAYMOND E. LOUGHREY, Bar No. 194363<br>55 Second Street, Suite 1700<br>San Francisco, CA 94105-3493<br>Telephone: (415) 882-8200 | BINGHAM, McCUTCHEN, LLP<br>WARREN E. GEORGE, Bar No. 53588<br>Three Embarcadero Center<br>San Francisco, California 94111<br>Telephone: (415) 393-2000 |
| THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>CLAUDIA CENTER, Bar No. 158255<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107<br>Telephone: (415) 864-8848 | |

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>  Defendants | No. Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA ,et al.,<br><br>  Plaintiffs,<br>  vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br>  vs.<br><br>  Defendants | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 14 REGARDING EVIDENCE OF DMH'S NONCOMPLIANCE WITH COURT ORDERS** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 14 REGARDING EVIDENCE OF DMH'S NONCOMPLIANCE WITH COURT ORDERS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249406-1]

**Introduction**

Defendants filed a motion *in limine* to exclude "any and all evidence, reference to evidence, testimony, or argument of DMH's alleged noncompliance with *Coleman* court orders" on the basis that it is irrelevant to this litigation and, if admitted, would be unduly prejudicial. *See Coleman* Docket 3090 (Defs' MIL No. 14). DMH's noncompliance with this Court's orders is highly relevant to this litigation and goes to the heart of the issues that the Court must determine at trial. Nor is there any basis for a claim of prejudice. The motion *in limine* should be denied.

**I.     Factual History**

While the *Coleman* Court formally added Dr. Mayberg, the Director of the Department of Mental Health (DMH), as a defendant in this lawsuit on June 28, 2006, the failure of DMH to provide appropriate access to inpatient psychiatric hospitalization for *Coleman* class members has been central to this litigation from the outset. On the one hand, defendants chose to provide the highest levels of mental health care to prisoners through DMH. On the other, DMH has consistently failed in its duty to provide timely and appropriate access to inpatient care.[1] Numerous *Coleman* court orders addressed DMH deficiencies well before the Court found it necessary to add DMH as a party. The Court explained, when it officially added Dr. Mayberg:

> DMH plays a critical role in creating sustainable and effective solutions for inpatient care within the California Department of Corrections and Rehabilitation (CDCR). *It is also apparent that, for multiple reasons, DMH is failing to address specific court-ordered remedies.* DMH's attempts to remedy the shortage of inpatient beds has been marked by delay and difficulty.

---

[1] This Court has directed numerous Orders at the DMH over the years, including the following sampling of more recent ones: *Coleman* Docket 1800 (ordering DMH to open on an emergency basis, two inpatient units, D5 and D6 at SVSP, additional units at CMF, and to open 50 beds at Coalinga State Hospital for *Coleman* class members); *Coleman* Docket 1998 (ordering defendants to file a long-range plan to provide adequate DMH acute and intermediate care facility beds and approving defendants' plan regarding additional units at SVSP and CMF); *Coleman* Docket 2158 (ordering defendants to collect data and report on referrals and transfers to DMH programs); *Coleman* Docket 2301 (ordering defendants to file a plan to make 231 intermediate care facility beds available to *Coleman* class members at Atascadero State Hospital); *Coleman* Docket 2930 (ordering defendants to provide "full access to DMH inpatient treatment irrespective of their release date" and including pre-revocation parolees).

-1-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 14 REGARDING EVIDENCE OF DMH'S NONCOMPLIANCE WITH COURT ORDERS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249406-1]

*Coleman* Docket 1855 at 2 (emphasis added). The Court concluded that adding Dr. Mayberg as a party was "the only way to insure an effective remedy in this case." *Id.*

DMH is similarly essential to the overcrowding remedy. DMH runs all of the inpatient psychiatric hospital beds for the *Coleman* class, as well as 25 Mental Health Crisis Beds (MHCBs). The inpatient psychiatric beds, which are located at California Medical Facility (CMF), Salinas Valley State Prison (SVSP), Atascadero State Hospital (ASH), Coalinga State Hospital (CSH) and Patton State Hospital (PSH),[2] represent the highest level of care available to *Coleman* class members and, due to overcrowding and crisis-level shortages, are almost always filled with the most acutely ill psychiatric patients in the CDCR.

Overcrowding has directly affected access to DMH inpatient care for the *Coleman* class. First, plaintiffs will prove that due to overcrowding, *Coleman* class members cannot access the critical, and often life-saving DMH beds. Plaintiffs' expert Dr. Pablo Stewart found in his supplemental report, "In my opinion, DMH's practice of designating acutely psychotic but non-suicidal patients as 'low priority' admissions to acute beds is a direct consequence of overcrowding. Clinicians would not be forced to turn acutely psychotic patients away at the door in a system that had sufficient inpatient beds." *Coleman* Docket 3063 at ¶ 41 (8/15/08 Supplemental Expert Report of Pablo Stewart, M.D.).[3] There are simply too many patients and too few beds. The shortages are most severe for certain custody levels but in general, access to inpatient care has been dangerously delayed. The waiting list for custody level IV intermediate care facility beds was up to 171 patients in July of 2008 and, as of September 2008, was up to 201 patients, including patients who have been waiting years for a bed. *See* Declaration of Jane Kahn in Support of Plaintiffs' Oppositions to Defendants' Motions *in Limine* (hereinafter "Kahn Decl.") at ¶ 29.

---

[2] CMF and SVSP are prisons, while ASH, CSH and PSH are state hospitals. The vast majority of inpatient beds that DMH runs are located in the prisons, although this Court has also ordered DMH to set aside beds at the state hospitals for *Coleman* class members due to severe shortages of those beds in the prisons. *See, e.g., Coleman* Docket 1800 (ordering DMH to set aside 50 intermediate care facility beds at Coalinga State Hospital for *Coleman* class members).

[3] Dr. Stewart's supplemental report, which was attached as Exhibit V to the Mello declaration (Docket 3114) was not his final report.

Second, plaintiffs will prove at trial that overcrowding throughout the CDCR has resulted in the use of dangerous and inadequate housing, office and treatment space throughout the CDCR, including in the DMH inpatient psychiatric hospital units at CMF and SVSP. The dire need for acute beds has also meant that *Coleman* patients are left in cells that still have not been modified for known suicide risks in the DMH unit at CMF, contributing to two suicides in January of 2007. Kahn Decl., Ex. U at 161:6-164:20 (Deposition of Victor Brewer, admitting that two patients hanged themselves from known hazards in the Q unit at DMH nearly two years ago but that, due to a dire need for acute-level beds, DMH has not made retrofits because they would require temporarily taking beds offline). DMH intermediate care facility units are also inadequate. The emergency opening of the D-5 and D-6 inpatient units at SVSP occurred without the construction of confidential treatment space, compromising all mental health care that occurs in those units. The "project" to provide confidential treatment space is still years away from completion. These units, which include D5 and D6 at SVSP and P2 and P3 at CMF, are "bad beds" for mental health patients to the same extent that gyms and day rooms are "bad beds." Indeed, they were always intended to be temporary, but now will operate for years to come unless the population is reduced through this case. *See, e.g., Coleman* Docket 3063 at ¶ 35 (Stewart 8/15/08 Supplemental Report) (noting that D-5 and D-6 have significant space limitations, that group therapy sessions happen on the dayroom floor while custody and clinical staff work at nearby tables, and that this arrangement prohibits the privacy required for effective mental health care). The units operate only due to Court-ordered licensing waivers and could never meet licensing standards.

Plaintiffs will also prove that the Court has issued Orders to improve these (and other) inadequate facilities and to build new inpatient beds but that DMH, like the CDCR, has been unable to comply with those Orders due to overcrowding. DMH has insufficient mental health staff, hospital beds, office, and treatment space to provide for the basic mental health care of the *Coleman* class. DMH is legally responsible to provide that care and its ongoing failures are a central theme of the overcrowding litigation.

## II. Legal Argument

Plaintiffs must prove at trial that "crowding is the primary cause of the violation of a Federal right and no other relief will remedy the violation of the Federal right." 18 U.S.C. § 3626(a)(3)(E). Defendants attempt, with this motion *in limine*, to exclude any evidence of DMH's noncompliance with court orders, the exact orders that constitute "other relief" pursuant to the PLRA. In support of their argument, defendants state simply that the DMH's noncompliance is irrelevant and that, if admitted, would be unduly prejudicial. In fact, if evidence regarding the DMH is excluded from this case, there will be a void of information essential to understand the mental health care delivery system as a whole, the DMH's role in perpetuating constitutional violations due to overcrowding, and the fact that "other relief," including orders directed at the DMH, have had (and will continue to have) no effect in the CDCR's severely overcrowded system.

To be relevant, evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993.) This is a liberal standard. *Id*. The evidence does not need to prove an ultimate fact; it can be merely a step in proving some fact that itself is an ultimate, intermediate or evidentiary fact. Fed. R. Evid. 401 advisory committee's note. A Court may exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In a bench trial, however, the concerns about unfair prejudice, confusion of the issues, or misleading the jury are lessened, as the Court can be expected to "hear relevant evidence, weigh its probative value and reject any improper inferences." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1993). Exclusion of evidence under Rule 403 should be done through "case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues." *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005). Moreover, evidence that risks unfair prejudice, as defendants' claim in this motion *in limine*, is evidence that "suggests decision on an improper basis." *White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007). Where evidence is probative and a proper factor in a fact-finder's analysis, "any 'prejudice' experienced [from the

-4-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 14 REGARDING EVIDENCE OF DMH'S NONCOMPLIANCE WITH COURT ORDERS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249406-1]

admission is] not 'unfair' as that term is used in Rule 403." *Id*.

Here, evidence regarding DMH's noncompliance with *Coleman* Court Orders is far from irrelevant—it relates to two key prongs of plaintiffs' case, including the fact that overcrowding is the primary cause of the ongoing constitutional violations and that no other relief will remedy those violations. As the Court pointed out in its July 23, 2007 Order granting referral to the three-judge panel, "delays in access to care at the highest level of need—mental health crisis beds, acute inpatient care, and intermediate inpatient care—have plagued the CDCR throughout the course of this litigation."[4] *Coleman* Docket 2320 at 6. Evidence regarding DMH and its noncompliance with *Coleman* Orders is essential to this issue—indeed, DMH is the sole provider of acute inpatient and intermediate care beds for *Coleman* class members. Moreover, evidence regarding DMH's inability to comply with this Court's Orders is an essential part of the "no other relief" prong of the PLRA in that DMH, like the CDCR, has been unable to comply with the myriad of orders to remedy constitutional violations. Defendants' arguments that this evidence is irrelevant, therefore, must fail.

Nor can defendants show that this evidence is unduly prejudicial. First, typical concerns regarding prejudice are virtually nonexistent for a bench trial, where the Court can be expected to "hear relevant evidence, weigh its probative value and reject any improper inferences." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1993). Second, where evidence is probative and proper for a fact-finder's analysis, "any 'prejudice' experienced [from the admission of the evidence is] not 'unfair' as that term is used in Rule 403." *White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007). Here, evidence

---

[4] Defendants' argument that plaintiffs failed to identify the DMH in its motion to convene a three-judge panel is false. Plaintiffs brought the motion against *all* defendants, not just the CDCR. Moreover, plaintiffs referred directly to the DMH several times in their briefing. *See, e.g., Coleman* Docket 2041 (Plaintiffs' initial motion) at 2 ("Inmates with severe mental illness, including those decompensating or in crisis, cannot be given appropriate placements in mental health crisis beds, EOP beds, and inpatient DMH programs"); at 9 (detailing the Special Master's findings that there were long waiting lists for MHCBs, PSUs and DMH beds); and at 11 (noting that the DMH and CDCR will not remedy the extreme shortage of inpatient beds until at least 2011, a timeline that is in even further jeopardy now); *Coleman* Docket 2251 (Plaintiffs' supplemental brief) at 9-10 (detailing the shortages of mental health beds at all levels of care, including DMH intermediate and acute beds); and at 10 (detailing the Special Master's findings of the dire consequences of inadequate access to DMH beds, including suicides).

-5-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 14 REGARDING EVIDENCE OF DMH'S NONCOMPLIANCE WITH COURT ORDERS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249406-1]

regarding DMH's noncompliance with Court Orders is highly probative of whether overcrowding is the primary cause of the ongoing constitutional violations and whether other relief, which DMH has been unable to achieve thus far, can or will remedy those violations.

Finally, defendants' implication that Dr. Mayberg should be spared from liability for DMH's noncompliance with Court Orders because he does not control the CDCR's population is spurious at best. *Coleman* Docket 3090 at 3 ("Director Mayberg has no control or custody over the population of the CDCR."). Plaintiffs do not have to show that any particular person or entity is responsible for the severe overcrowding in California's prison system. Rather, plaintiffs must prove that overcrowding is the primary cause of constitutional violations and that no other relief, besides population reductions, will remedy those abuses. The DMH is an essential part of those claims.

**Conclusion**

For all of the reasons stated above, plaintiffs respectfully request that this Court deny defendants' motion *in limine* to exclude any evidence at trial of the DMH's noncompliance with Court Orders.

Dated: October 30, 2008

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

*/s/ Amy Whelan*
Amy Whelan
Attorneys for *Coleman* Plaintiffs and on behalf of the *Plata* Plaintiffs

-6-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 14 REGARDING EVIDENCE OF DMH'S NONCOMPLIANCE WITH COURT ORDERS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249406-1]