Gregg McLean Adam, No. 203436
Natalie Leonard, No. 236634
James W. Henderson, Jr., No. 071170
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone:    415.989.5900
Facsimile:    415.989.0932
Email:        gadam@cbmlaw.com
              jstoughton@cbmlaw.com


Daniel M. Lindsay, No. 142895
**CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:    916.372.6060
Facsimile:    916.372.9805
E-Mail:       dan.lindsay@ccpoa.org

Attorneys for Intervenor California Correctional Peace
Officers' Association

IN THE UNITED STATES DISTRICT COURTS
FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| MARCIANO PLATA, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> ARNOLD SCHWARZENEGGER, *et al.*, <br><br> Defendants. | No. Civ C01-1351 TEH (N.D. Cal.) *and* <br><br> No. Civ S90-0520 LKK-JFM (E.D. Cal.) <br><br> **THREE-JUDGE COURT** |
| RALPH COLEMAN, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> ARNOLD SCHWARZENEGGER, *et al.*, <br><br> Defendants. | **DIRECT TESTIMONY DECLARATION OF GARY BENSON** <br><br> **TRIAL DATE: NOVEMBER 18, 2008** |

CBM-SAC\SA067517.2                    -1-

**DIRECT TESTIMONY DECLARATION OF GARY BENSON**

I, Gary Benson, state as follows:

1. I am a correctional officer employed by the California Department of Corrections and Rehabilitation ("CDCR"). I commenced my employment with the CDCR in 2002 at Pelican Bay State Prison. Based upon my work as a correctional officer, I have personal knowledge of the matters stated herein and, if called upon to do so, could and would testify competently to them.

2. In 2004, I transferred to Folsom State Prison ("FSP") where I have continued to work as a correctional officer up to the present time.

3. When I first started at FSP, I was assigned to Visiting. I worked in Visiting for three years and then was assigned to the Folsom Transitional Treatment Facility ("FTTF") which is a drug rehabilitation program. The FTTF was a housing unit but it is not the same as a regular housing unit in FSP because it was a dorm rather than cells.

4. After working at the FTTF for approximately a year, I transferred to the Treatment Triage Area ("TTA") clinic, which is the main clinic at FSP. It is an urgent care and emergency clinic that is open 24 hours a day. My duties at the TTA clinic include safety and security of the clinic. During my shift, I typically am the only correctional officer present at the clinic facility. In connection with ensuring the security of the area, I am responsible for observing the inmates that are there receiving treatment and keeping watch over the narcotics and medical instruments that are contained in the clinic.

5. In addition to the positions indicated above, I have worked a substantial amount of overtime since coming to FSP. In the course of working that overtime, I have handled most of the positions that are assigned to correctional officers on all of the shifts. In certain of those positions, my duties have included escorting inmates who have been injured or are going for medical treatment or psychiatric evaluation.

1      6.      Based on my observations at FSP since arriving there in 2004, I believe
2 that inmate overcrowding has had several detrimental impacts on the health of inmates
3 and staff and the ability to provide medical care to the inmate population at FSP.

4      7.      With respect to the TTA clinic, there are simply too many inmates for
5 that clinic to function effectively. First, the waiting area for the clinic consists of a caged
6 area of approximately 12 x 20 feet. On a daily basis they will have forty to fifty inmates
7 packed into that waiting area and some of them can be there for several hours. When that
8 area fills up, an additional eighteen to twenty inmates are allowed to stand in the hallway
9 in front of the treatment area. I have had inmates come and tell me that they would rather
10 go back to their cell than to be locked up in the cage for hours while waiting for medical
11 treatment.

12     8.      The treatment room of the clinic, where services are provided, is grossly
13 inadequate for the inmates who need it. This room itself is small and actually can only
14 accommodate two gurney-confined patients at a time. I recall one situation this past
15 August in which two inmates confined to gurneys were already being treated in the clinic
16 when a third inmate arrived on a gurney. Since there was no room to treat him, he was
17 placed, bleeding, on a Stokes Litter in the hallway, where he was surrounded by
18 approximately fifteen to twenty other inmates waiting for services.

19     9.      The clinic itself is not limited to only two patients at a time and as many
20 as six can be treated. However, this creates situations where there can be six patients, as
21 many as three doctors, and five nurses all in this small room, as well as additional inmates
22 seeking treatment. This puts a tremendous stress on my ability to do my job since I have
23 to keep watch, not only on the inmates but the numerous locations where narcotics and
24 surgical instruments are kept within that room.

25     10.     In addition, because of overcrowding, there are inadequate facilities to
26 provide treatment to inmates with contagious staph infections. During the time that I have
27 been at FSP (and prior to that at Pelican Bay State Prison) there have been no facilities
28 available to isolate inmates who had contagious staph infections.

CBM-SAC\SA067517.2                               -3-

**DIRECT TESTIMONY DECLARATION OF GARY BENSON**

1  11.  I have seen situations where inmates have come to the clinic with large infections that have burst and are bleeding. These inmates are given antibiotics and then sent back to their housing units. They are not isolated and remain in contact with other inmates as well as staff. These inmates continue to use the same housing facilities as non-infected inmates including showers and toilets.

12.  I am aware of a specific type of staph infection known as methicillin-resistant Staphylococcus aureus, or as it is more commonly known, MRSA. MRSA is a staph infection that has proven to be resistant to antibiotics and is highly contagious. I have knowledge of this because I contracted MRSA while I was working at the FTTF facility in 2006.

13.  I believe that I contracted my MRSA from coming in contact with inmates in the FTTF who had the MRSA condition at that time. I did not have contact with anyone else whom I knew or believed to have MRSA at that time, other than inmates.

14.  My MRSA condition was such that I was required to be hospitalized on two different occasions and underwent two surgical procedures. At the time that I was hospitalized with MRSA, I was placed in an isolation room and a large sign was posted outside my door indicating that I had MRSA. I have never seen any such procedures utilized for any inmates who had MRSA at FSP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this ___ day of October, 2008 at _____, California.

_____
GARY BENSON

CBM-SAC\SA067517.2                               -4-

**DIRECT TESTIMONY DECLARATION OF GARY BENSON**