Gregg McLean Adam, No. 203436
Natalie Leonard, No. 236634
James W. Henderson, Jr., No. 071170
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:    415.989.5900
Facsimile:    415.989.0932
Email:        gadam@cbmlaw.com
              jstoughton@cbmlaw.com


Daniel M. Lindsay, No. 142895
**CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:    916.372.6060
Facsimile:    916.372.9805
E-Mail:       dan.lindsay@ccpoa.org

Attorneys for Intervenor California Correctional Peace
Officers' Association

IN THE UNITED STATES DISTRICT COURTS

FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| MARCIANO PLATA, *et al.*, <br><br> Plaintiffs, <br> v. <br> ARNOLD SCHWARZENEGGER, *et al.*, <br><br> Defendants. | No. Civ C01-1351 TEH (N.D. Cal.) *and* <br><br> No. Civ S90-0520 LKK-JFM (E.D. Cal.) <br><br> **THREE-JUDGE COURT** |
| RALPH COLEMAN, *et al.*, <br><br> Plaintiffs, <br> v. <br> ARNOLD SCHWARZENEGGER, *et al.*, <br><br> Defendants. | **DIRECT TESTIMONY DECLARATION OF BRENDA M. GIBBONS** <br><br> **TRIAL DATE: NOVEMBER 18, 2008** |

I, Brenda M. Gibbons, state as follows:

1. I am currently employed as a correctional officer by the California Department of Corrections and Rehabilitation ("CDCR") at Salinas Valley State Prison ("SVSP"). I have been employed by CDCR as a correctional officer since 1994. Based upon my work as a correctional officer, I have personal knowledge of the matters stated herein and, if called upon to do so, could and would testify competently to them.

2. As a correctional officer, I was first assigned to the Correctional Training Facility at Soledad ("CTF") from 1994 to 1996. During that time, I worked as a tower officer, a dorm officer and a search and escort officer.

3. I transferred to SVSP in 1996 and have worked there continuously up to the present time. As a correctional officer, I have worked at SVSP in the following positions: tower officer, floor officer, kitchen officer, mental health officer and yard officer.

4. Since 1998 or 1999, I have been assigned as a floor officer in Facility D Building 4 ("D-4"), Floor 1. I have also occasionally worked overtime in various other positions. I currently work the second shift (which runs from 6:00 a.m. to 2:00 p.m.) but I previously worked the night shift (10:00 p.m. to 6:00 a.m.) on Floor 1 of D-4.

5. Floor 1 of D-4 houses mental health patients and specifically patients who are a part of the Enhanced Outpatient program ("EOP"). Inmates in this program are housed separately from the general population and are supposed to receive structured treatment activities and mental health services.

6. Based on my observations, including my familiarity with the inmate population at SVSP since 1996, I believe that there is significant overcrowding of inmates at SVSP generally. This has had adverse consequences on the delivery of medical services to the EOP inmates in D-4. For example, I have observed shortages of emergency vehicles, correctional officer escorts to take inmates to receive medical treatment, holding cells and safety cells. I have also observed situations where prescribed medical equipment such as special pillows and mattresses for specific inmate medical

CBM-SAC\SA067524.3            -2-

DIRECT TESTIMONY DECLARATION OF BRENDA M. GIBBONS

1    conditions were not available. There is also a lack of specialized facilities for the inmates
2    in D-4. That Building has two cells that are designated as "ADA Cells" which are larger
3    and fitted to accommodate wheelchair bound inmates. There have been occasions where
4    there have been more ADA EOP inmates than could be accommodated in these two cells.
5    On some occasions, such inmates have had to remain in the Ag-Seg Unit, which houses
6    general population inmates, until there is an available cell. I have also witnessed
7    situations where a wheelchair bound inmate's status has been changed from DPW, which
8    means a wheelchair is required, to DPO or DPM which indicates only that the inmate has
9    a mobility impairment and does not require a wheelchair. Such reclassified inmates have
10   been put into regular cells and the wheelchairs are left outside the cells.

11           7.   On Floor 1 of D-4, most of the cells house two inmates. In my
12   observation, when there are two inmates to a cell, particularly in a mental health unit,
13   there is a higher potential for violence involving the inmates than if they are single-celled
14   (e.g. one inmate per cell).

15           8.   In addition, due to general overcrowding conditions at SVSP, there are
16   frequently delays in obtaining materials and services including food, laundry and medical
17   treatment. For example, clean laundry is frequently unavailable for the inmates and I have
18   observed situations where inmates have done their own laundry either in the sinks used for
19   the service of food or in the toilets. Based on my training and duties as a correctional
20   officer, such conduct presents a specific problem with respect to the spread of infectious
21   diseases in the institution because laundering in the sinks or toilets does not adequately
22   clean soiled laundry.

23           9.   With respect to canteen privileges, I have seen situations where the
24   inmates have had emotional outbursts when they learned that the canteen services had
25   been delayed or cancelled due to the inability of the canteen to accommodate all of the
26   inmates. In addition, there are too many inmates housed Floor 1 of D-4 for the staff
27   assigned, especially during the night watch (10:00 p.m. to 6:00 a.m.). The fact that there
28   are too many inmates to be adequately monitored led to one self-help remedy of which I

CBM-SAC\SA067524.3                           -3-

DIRECT TESTIMONY DECLARATION OF BRENDA M. GIBBONS

1  observed involving an inmate who suffered from seizures.  This inmate devised a warning
2  system in which he wore a helmet with a string attached to bottles in an adjacent cell.  If
3  he had a seizure, the inmate in the adjacent cell could see or hear the bottles shake and
4  could then summon help.

5        10.  My reason for coming forward in this is to help make conditions better
6  for everyone including inmates and the correctional staff.  However, I am concerned about
7  speaking up about the problems that I have observed in the delivery of medical care,
8  overcrowding or other related topics because I fear that the CDCR will retaliate against
9  me.

10        I declare under penalty of perjury under the laws of the United States of
11  America that the foregoing is true and correct and that this declaration was executed this
12  ___ day of October, 2008 at _____, California.

                                BRENDA M. GIBBONS

CBM-SAC\SA067524.3  -4-

**DIRECT TESTIMONY DECLARATION OF BRENDA M. GIBBONS**