1  ROD PACHECO
   District Attorney, County of Riverside
2  4075 Main Street, First Floor
   Riverside, California 92501
3  Telephone: (951) 955-5542
   Fax: (951) 955-0190
4  William E. Mitchell
   Assistant District Attorney
5  (CSB # 108483)

6  Attorneys for Intervenors
   ROD PACHECO, District Attorney, Riverside
7  BONNIE M. DUMANIS, District Attorney, San Diego
   TONY RACKAUCKAS, District Attorney, Orange
8  JAN SCULLY, District Attorney, Sacramento
   CHRISTIE STANLEY, District Attorney, Santa Barbara
9  MICHAEL A. RAMOS, District Attorney, San Bernardino
   ROBERT J. KOCHLY, District Attorney, Contra Costa
10 DAVID W. PAULSON, District Attorney, Solano
   GREGG COHEN, District Attorney, Tehama
11 TODD RIEBE, District Attorney, Amador
   BRADFORD R. FENOCCHIO, District Attorney, Placer
12 JOHN R. POYNER, District Attorney, Colusa
   MICHAEL RAMSEY, District Attorney, Butte
13 GERALD T. SHEA, District Attorney, San Luis Obispo
   EDWARD R. JAGELS, District Attorney, Kern
14 GREGORY TOTTEN, District Attorney, Ventura
   VERN PIERSON, District Attorney, El Dorado
15 CLIFFORD NEWELL, District Attorney, Nevada
   RONALD L. CALHOUN, District Attorney, Kings
16 DONALD SEGERSTROM, District Attorney, Tuolumne

17 Attorneys for District Attorney Defendant Intervenors

18            IN THE UNITED STATES DISTRICT COURTS
        FOR THE EASTERN AND NORTHERN DISTRICTS OF CALIFORNIA
19      UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
20       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

21 RALPH COLEMAN, et al.,                  Case No: CIV S-90-0520 LKK JFM P

22            Plaintiffs,                   **THREE-JUDGE COURT**

23      vs.

24 ARNOLD SCHWARZENEGGER, et al.,

25            Defendants.                   Case No.: C01-1351 TEH

26 MARCIANO PLATA, et al.,                  **THREE-JUDGE COURT**

27            Plaintiffs,

28                                  -1-

| | |
|---|---|
| vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | DECLARATION OF RIVERSIDE COUNTY DISTRICT ATTORNEY RODRIC PACHECO SUBMITTED IN ADDITION TO LIMITED DIRECT TESTIMONY BY DISTRICT ATTORNEY DEFENDANT INTERVENORS |

## DECLARATION OF RIVERSIDE COUNTY DISTRICT ATTORNEY RODRIC PACHECO

1.    I, Rodric Pacheco, declare:

2.    I am the elected District Attorney of Riverside County.

3.    The elected District Attorneys of the counties of San Diego, Orange, Sacramento, San Bernardino, Santa Barbara, San Luis Obispo, Contra Costa, Solano, Tehama, Amador, Colusa, Placer, Butte, Kern, Ventura, El Dorado, Nevada, Tuolumne, and Kings have joined with me to intervene in these proceedings pursuant to 18 U.S.C. § 3626(a)(3)(F) to oppose any court-ordered release of prison inmates.

4.    At issue in these proceedings are allegations that the delivery of medical care to inmates with serious medical needs (*Plata* class plaintiffs) and the delivery of mental health care to inmates with serious mental disorders (*Coleman* class plaintiffs) are so inadequate that the constitutional rights of these inmates under the Eighth Amendment are being violated. While the District Attorney Intervenors recognize and acknowledge that the State of California has a legal obligation to establish and maintain a constitutional level of prison healthcare, a prisoner release order or prison population cap should not be imposed as a remedial measure to address the alleged constitutional inadequacies in this case.

5.    After graduating from the University of California, Riverside and the University Of San Diego School Of Law, I began my legal career as a Deputy District Attorney with the Riverside County District Attorney's Office in May, 1984. As a deputy district attorney prosecuting juvenile, misdemeanor, felony and capital cases, I learned how the criminal justice system works from the investigation stage through charging, case settlement proceedings, trial and sentencing. I witnessed the devastating impact and effects of crime on victims and their families.

6.    In 1996, I was elected to the California State Assembly as a representative of the 64th Assembly District. I served three two-year terms in the California Assembly. During my tenure in the Legislature, I had the opportunity to observe all facets of public safety, not

-2-

merely the prosecution side. On the Budget Committee, I observed and worked with state agencies and their financial issues. On the Public Safety Committee, I was exposed to countless issues encompassing all facets and sides of public safety. As a legislator, I discussed and worked on major statewide public safety issues involving incarceration, prison construction, prisoner rehabilitation, and even early release proposals, to name only a few prominent ones.

7.  In December 2002, I returned to the Riverside County District Attorney's Office as a Chief Deputy District Attorney. In 2003, I was promoted to Assistant District Attorney. In June 2006, I was elected by the citizens of Riverside County, and sworn into Office as District Attorney in January 2007. As District Attorney, I have focused on recidivism rates, effective prosecution techniques, court congestion, jail congestion, early releases, and many other dynamics that affect the public safety of the citizens of Riverside County. Our county is the fastest growing county in California today and over the past twenty years. It is the second fastest growing county in the nation. Our justice system, law enforcement, and prosecution have been overwhelmed by the massive, exponential population growth. Any prisoner release order would, I fear, create a public safety meltdown wherein our county's public safety resources would be incapable of handling the early release of large numbers of state prisoners.

8.  There would be many unintended consequences of a prison cap or prisoner release order on the administration of criminal justice within the State and within the County of Riverside that are adverse to public safety and detrimental to the administration of justice.

9.  A prisoner release order and population cap would likely involve the following consequences:

1) The transfer of inmates to local detention facilities to complete their terms. The influx of state prisoners would displace pre-trial detainees and defendants serving misdemeanor sentences or jail terms as conditions of felony probation.

2) The direct release of prisoners to the community prior to the completion of their terms. Without increased staffing and funding to parole, supervision from an already overwhelmed parole department will be minimal.

3) County jail inmates awaiting transfer to prison custody to begin new terms would be held longer in county jail awaiting space in prison resulting in the displacement and

-3-

1    release of more and more offenders who belong in county jail.

2  10.  These and other consequences would create a direct threat to public safety, make it more
3        difficult to adjudicate cases, and put an additional strain on local law enforcement.
4        There will be other unintended consequences. It would impose massive financial burdens
         on county and local governments which are already suffering the negative consequences
5        of inadequate jail facilities and funding shortages for programs targeting criminal
6        offenders.

7  11.  Riverside County, like many of the other counties in California, has been unable to keep
8        pace with rapid population growth and the demand for jail space. We have been dealing
9        with the adverse public safety impacts of jail crowding for years. Jail population caps
         already often result in the early release of sentenced misdemeanants and felons, the non-
10       admission of arrestees, and the unwarranted release of pre-trial detainees.

11 12.  Riverside County statistics for 2007 show that 6,001 jail inmates were early released due
12       to jail crowding; 3,823 pre-trial detainees and 2,178 inmates sentenced to county jail time
13       for misdemeanor convictions or as terms of felony probation. In the first eight months of
14       2008, a total of 2,971 have been released early, and 833 have already been rearrested for
15       new crimes. This represents a recidivism rate of 28 percent for an eight month time
         period. Broken down further, 701 of 2,179 pre-trial detainees released because of jail
16       crowding were rearrested, a 32 percent rate; 132 of 792 sentenced inmates were
17       rearrested, a 16.6 percent rate. In addition to recidivism, failure to appear rates for those
18       released pending trial was 34.8 percent for 2007 and 28.4 percent through July 2008.
19       (See EXHIBIT A - – "Riverside County Jail Statistical Information – Early Releases
20       and Recidivism," attached to this declaration and incorporated herein.)

21 13.  Jail crowding in Riverside County has also led to recent increased numbers of
22       misdemeanor and felony offenders being cite-released, i.e., not physically arrested and
23       booked into the jail. Law enforcement agencies have modified their procedures in
         recognition of the futility of transporting arrestees for booking when the jail has limited
24       space to house them.

25
26
27
28
                                              -4-

Citations to Appear 2004 Through Year-To-Date Oct. 2008

Countywide 2004: Felony 438, Misdemeanor 19621
Countywide 2005: Felony 412, Misdemeanor 20003
Countywide 2006: Felony 424, Misdemeanor 22162

Countywide 2007: Felony 554, Misdemeanor 30916
Countywide 2008: Felony 448, Misdemeanor 26209*
*2008 figures through September

14.    The above trends and figures show that Riverside County is already experiencing adverse public safety impacts due to jail crowding in the form of additional crime and failures to appear in court. The records show that the great majority of the defendants who are being released early from county jail have committed or are charged with drug, theft and other property crimes. If a prisoner release order or prison population cap is imposed, more jail inmates will be displaced by an increasing state prison population in the county jails, resulting in more serious and dangerous types of offenders being released to the community. The additional crimes committed by this growing number and increasingly more serious class of offender poses a substantial threat to the lives and property of the law-abiding citizens of Riverside County. This increased number of crimes will be in addition to new crimes that will be committed by the prisoners released early from state prison.

15.    Of course, it is the same categories of offenders (drug, theft and other property crimes) that are now targeted for early release and/or diversion from state prison in order to achieve a reduction of the overall prison population. Academics and CDCR statistics have documented the high recidivism rates of these classes of felons – some estimates are as high as 70 percent convicted of additional crimes within three years of release.

16.    The defendants that Riverside County sends to prison that fall into these categories of offenses have long histories of committing crimes. First-time and most second and third-time offenders are dealt with on a local level. A very high percentage of the felons convicted in Riverside County are initially placed on probation. Almost without exception, those defendants who are sentenced to state prison for property or drug offenses are recidivists who have failed to comply with multiple grants of probation and treatment at the local level.

17.    Riverside County sent 4,282 new admissions and parole violators with new convictions to prison in 2007. This was 6.3 percent of the total for the entire state. Approximately

-5-

3,200 or 74 percent of these prison commitments were for property and drug crimes and for terms of four years or less. Almost all of these prison commitments involved multiple offenses, multiple violations of probation, prior felony convictions, and/or prior prison commitments.

18. CDCR statistics for 2007 show that Riverside County accounts for approximately 6 percent of the state prison population. As of December 31, 2007, Riverside County accounted for 11,022 state prison inmates; 6.4 percent of the state total. In 2007, 8,679 felons were released on parole back to Riverside County; 6.6 percent of the state total. With a hypothetical early release of 30,000 inmates, 1,890 (6.3 percent) would be returned to Riverside County prior to the completion of their prison terms. See **EXHIBIT B** - "CDCR Statistics - 2007 New Admissions and Parole Violators with New Terms," attached to this declaration and incorporated herein.

19. A prison population cap will not ensure, promote or encourage lawful behavior or rehabilitation. It does just the opposite. Releasing prisoners early allows for the commission of new crimes sooner and more crimes over time, affording prisoners more opportunities to commit more crimes.

20. Numerous articles, academic studies and CDCR statistical information substantiates that convicted felons have a substantial risk of recidivism and will commit new violent and property crimes in our communities if they are not incarcerated. See **EXHIBIT C** - "Articles and Studies on Crime Rates and Early Releases from Jails," attached to this declaration and incorporated herein.

21. One of the Plaintiffs' experts has determined that 25 percent of those released will be caught and arrested for new crimes within the first four months of release. (Austin, supp. rpt. 8-27-08, p. 1.) The number of new crimes that will go unsolved is not factored in or given consideration. This 25 percent recidivism rate in the first four months of release equates to the commission of approximately 473 new crimes in Riverside County; crimes that would otherwise not have occurred, but for the early release of the perpetrators. Studies have shown that a certain percentage of these new crimes will be violent crimes.

22. While plaintiffs' experts have come to the conclusion that early or accelerated release has little effect on the recidivism rate of the felons released, the fact is that a substantial percentage will commit new crimes whenever they are released. The conclusion drawn by Plaintiffs' expert witness James Austin that the additional crimes that we can expect

-6-

will be committed by those prisoners who will be released from prison early represent an *insignificant* impact on local communities is shocking. (Austin, supp. rpt. 8-27-08, p.1.) While it is clear that Dr. Austin is merely stating that the raw numbers of new crimes that will be committed are *statistically* insignificant when compared to the total number of crimes or arrests in a community or in the state, he fails to recognize or discuss the very real and serious human consequences these *insignificant* numbers represent. For those who will be the victims, the additional crimes will be very significant. This fact cannot be ignored.

473 new crimes within four months are not insignificant when considered from a human, rather than a statistical, perspective. Even if only 4 percent of these new crimes are violent, it is not an acceptable risk that 19-20 Riverside County residents will be assaulted, robbed, car-jacked, raped or murdered. Nor is it acceptable that the citizens of any other county be subjected to these risks.

23.    There have been observations in various jurisdictions where they have had early release programs where crime has gone up dramatically, and where that has created a synergistic effect to the detriment of the citizens of those communities. Los Angeles and Philadelphia are prime examples. Texas is another example. There are studies and observations of those jurisdictions where early release programs were put in place and they served to the detriment of the public safety of those areas. (See **EXHIBIT C.**)   It is unnecessary to guess about the future because it has been played out in Los Angeles, Philadelphia and Texas and to a lesser extent already in Riverside County. Early releases have a negative public safety impact and a significant one. Those programs have been failed experiments and have not led to the result that was intended. In fact, these programs resulted in much more harm than good.

24.    Lessening the length of prison terms to reduce the prison population will have the adverse effect of increasing crime in the local communities, increasing congestion in the courts, and compromising the integrity of the criminal justice system. From my perspective as a line prosecutor for 12 and a half years, from my perspective as a manager and now as the District Attorney, and also from my perspective as a legislator and observing the criminal justice system from different vantage points, I have learned that punishment provides significant deterrence. Any diminution of that effort encourages and increases recidivism, and results in additional human victims.

-7-

25.    When someone who is violating the law on a fairly consistent basis sees that the system is incapable of providing accountability, it encourages negative behavior. It is human nature. It also increases failures to appear. A criminal defendant will not appear in court if he or she believes that court is meaningless, if no sentence exacts any punishment or creates any deterrence. That is the experience in Riverside County, and it will undoubtedly happen in other communities as well.

26.    Punishment exists to deter people from committing more crimes than they have already committed. Sometimes it is very effective. Sometimes it is not so effective. There are varying degrees, depending on the individual, of how effective it can be. Some people will not commit crimes because of the deterrence. Some people will not commit crimes based on morality and their familial teachings. When a society identifies a punishment and then diminishes that punishment, in some significant way, public safety will be diminished. Reducing consequences encourages recidivism and repeat offenses within that community. And there are numerous anecdotal stories and studies from around the country that demonstrate that result.

27.    Common sense and empirical evidence proves that increased incarceration will reduce the rate of crime. Incentives matter. Deterrence works. Fear of consequences is a motivating factor. The more severe the consequences, the more of those who may be inclined to commit crime will be deterred.

28.    Recent studies have shown that states with higher incarceration rates have lower rates of crime. A high risk of punishment reduces crime. Deterrence works. ("Do the Time, Lower the Crime; Too Many People Behind Bars? The Statistics Suggest Otherwise" L.A. Times, March 30, 2008; attached in EXHIBIT C.) A comparative analysis of California's tough on crime policy against Britain's more lenient sentencing measures disclosed that longer prison sentences actually reduced violent crime rates. By 1996, Britain's robbery rate was 25 percent higher than California's. (Id.)

29.    Stanford University published a study in 2000 called "The Social Benefits of Confining Habitual Criminals." (Attached in EXHIBIT C.) Between 1982 and 1997, California has more than tripled its incarceration rate with a focus on habitual criminals. During this period, the number of victims of serious crime dropped from 4,777.1 per 100, 000 population to 2,381.4 per 100, 000.

-8-

30.   During the 1990's, California's crime rate decreased 10 percent from 1991 to 1994 (6776/100K (91) to 6094.8/100K (94)). After passage of Three-Strikes legislation in 1994, the rate plummeted over 21 percent in the next three years (4807.6/100K (97)).

31.   There are well-reasoned, practicable measures that can be used to reduce the prison population that are consistent with our responsibility to protect public safety. The remedial efforts by the Receiver, which is an extension of the Court, have been a positive development. The spurring of the Legislature and the Governor to pass AB 900 has also been a positive development. In my opinion, they are not enough. There needs to be a more significant investment in rehabilitation efforts on a statewide and local level. Rehabilitation programs, drug treatment centers, and job training need to be provided. There are a number of things that need to occur while the prisoners are in custody, not waiting until the day they get out. The parole apparatus of the Department of Corrections needs to be restructured. In my opinion, it has been dramatically underfunded. It makes little sense to expect people to rehabilitate when the period they are on parole is reduced and the number of parole officers to supervise and help them is reduced. Increase the size of probation offices throughout the State of California. When these things are done, there will be less recidivism. And when there is less recidivism, there will naturally be a prison population reduction. Just in the time I was at the Legislature, the State population increased dramatically, and it continues to increase. And it is expected that the State of California, which now has about 36 or 37 million people, will increase to 50 million over the next 20 to 30 years. The raw numbers of population and criminals are going to increase no matter what is done.

32.   The first rule for anyone proposing changes to the criminal justice system should be to do no harm. A prisoner release order and/or prison population cap will do harm. The State must invest in rehabilitation. I fully support those efforts. Releasing prisoners when there is obviously a lack of appropriate resources available, before their sentences are concluded, is the worst of all actions. If resources need to be provided, the Court should not order early releases when appropriate resources are not available.

33.   While the District Attorney Intervenors are not opposed to measures that would reduce the prison population that are well-reasoned, practicable and consistent with our responsibility to protect public safety, these measures must be primarily designed to

-9-

1    encourage rehabilitation and reduce recidivism, rather than simply achieving a reduction

2    in the prison population. Success cannot be measured in a reduced number of prisoners

3    that results in an increased number of victims of violent and property crimes.

4    34.  Significant measures to alleviate prison crowding and promote rehabilitation of inmates

5    have already been signed into law in Assembly Bill 900, and the funding and

     implementation of these measures should be prioritized and expedited. The District

6    Attorney Intervenors support the full implementation of AB 900, and the continued

7    efforts of the *Plata* Receiver to improve the quality and delivery of healthcare in the

8    prisons. The *Plata* Receiver has the authority to identify prisoners with serious unmet

9    medical needs which rise to the level of a constitutional deprivation and devise remedial

10   plans to address those unmet needs. The Receiver has defined what a "constitutional"

     level of healthcare means and what it consists of in the context of California's prisons.

11   Detailed and specific strategic plans to achieve the required reforms have been

12   formulated, work is underway and significant progress has been made.

13   35.  It is critical that these efforts, the transfer of prisoners out of state, as well as the

14   expansion of programs that can effectively reduce recidivism, like the SB618 program in

15   San Diego County, be coordinated in order to maximize the efficient use of resources and

16   to expedite the reforms that will alleviate the health and safety issues which concern us

17   all.

18   36.  We support the ongoing efforts to improve prison health care. However, a prisoner

     release order and/or a prison population cap that would result in the release or non-

19   admission of thousands of healthy felons have no apparent nexus to solving the issues

20   that gave rise to these proceedings. With all of the promising work in progress directed

21   at alleviating the conditions that gave rise to the possible need for a prisoner release

22   order, reform legislation awaiting implementation, and the availability of less intrusive

23   alternative measures that would result in a reduction of the prison population, it is my

     opinion that a prisoner release order directed at the entire California state prison system is

24   unwarranted. The Court should deny the Plaintiffs' request.

25

26

27

28
                                        -10-

Being present in the City of Riverside, California, I declare under penalty of perjury and under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: October 30, 2008

RODRIC PACHECO
DISTRICT ATTORNEY
RIVERSIDE COUNTY

RESPECTFULLY SUBMITTED,

DATED:    October 30, 2008

ROD PACHECO, DISTRICT ATTORNEY
COUNTY OF RIVERSIDE

By:_____/s/_____
WILLIAM E. MITCHELL
Attorneys for District Attorney Intervenors

-11-

Declaration Of Rodric Pacheco Submitted In Addition To Limited Direct Testimony By District Attorney Defendant Intervenors

DECLARATION OF RIVERSIDE COUNTY DISTRICT ATTORNEY RODRIC PACHECO

EXHIBIT LIST

Exhibit A – "Riverside County Jail Statistical Information – Early Releases and Recidivism"

Exhibit B – "CDCR Statistics - 2007 New Admissions and Parole Violators with New Terms"

Exhibit C – "Articles and Studies on Crime Rates and Early Releases from Jails"

1. "The Social Benefits of Confining Habitual Criminals," Kent Scheidegger & Michael Rushford, Criminal Justice Legal Foundation, 2000, Board of Trustees of the Leland Stanford Junior University

2. "Who's In Our State Prisons?" – from the Office of California State Senator George Runner

3. "Time to Deal with America's Prison Crisis" Joel, Dana; Heritage Foundation, Nov. 1989

4. "Releasing Inmates Early Has Costly Human Toll," L.A. Times, May 14, 2006

5. "Escaping the Myth of Three Strikes State Prison Law," San Francisco Chronicle, July 6, 2008

6. "Do the Time, Lower the Crime; Too Many People Behind Bars? The Statistics Suggest Otherwise," L.A. Times, March 30, 2008

7. "Jailhouse Blues," Smith, Wesley, National Review, 1994

8. "Bail, Humbug! Why Criminals Would Rather Be in Philadelphia," Vandenbraak, Sara, 2007, Board of Trustees of the Leland Stanford Junior University

9. "Understanding California Corrections," Petersilia, 2006

-12-

1

2  Being present in the City of Riverside, California, I declare under penalty of perjury and under

3  the laws of the State of California and the United States of America that the foregoing is true and

4  correct.

5  Dated: October 30, 2008

6

7

8  RODRIC PACHECO
   RIVERSIDE COUNTY DISTRICT ATTORNEY

9

10  RESPECTFULLY SUBMITTED,

11
   DATED:    October 30, 2008        ROD PACHECO, DISTRICT ATTORNEY
12                                   COUNTY OF RIVERSIDE

13                                   By:_____/s/_____
                                        WILLIAM E. MITCHELL
14                                      Attorneys for District Attorney Intervenors

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        -11-

# EXHIBIT A



# RIVERSIDE COUNTY SHERIFF'S DEPARTMENT
## HEADCOUNT MANAGEMENT UNIT
## FEDERAL RELEASE RECIDIVISM RATE

**SAMPLING PERIOD: 01/01/08-08/31/08**

## DEFINITIONS:

**POST ARRAIGNMENT-** REFERS TO THE FEDERAL RELEASE OF AN *UNSENTENCED* INMATE, FOLLOWING HIS/HER ARRAIGNMENT.
**PRIORITY-** REFERS TO THE FEDERAL RELEASE OF AN INMATE *SENTENCED* TO COUNTY JAIL TIME.

| | # OF RELEASES | # OF RECIDIVISTS | RECIDIVISM % |
|---|---|---|---|
| ALL FEDERAL RELEASES | 2971 | 833 | 28.04% |
| PRIORITY RELEASES (SENT.) | 792 | 132 | 16.67% |
| POST/ARRAIGN RELEASES (UNSENT.) | 2179 | 701 | 32.17% |

### STATE PRISON TRANSFERS

| MALE STATE CHAIN AVERAGES | DAILY | WEEKLY | MONTHLY | YEARLY |
|---|---|---|---|---|
| New commits | 38 | 76 | 304 | 3952 |
| Returnees | 7 | 14 | 56 | 728 |
| 3056 (Parole violators only) | 13 | 79 | 316 | 4108 |
| Totals | 58 | 169 | 676 | 8788 |

| FEMALE STATE CHAIN AVERAGES | DAILY | WEEKLY | MONTHLY | YEARLY |
|---|---|---|---|---|
| New commits | 9 | 18 | 72 | 936 |
| Returnees | 3 | 6 | 24 | 312 |
| 3056 (Parole violators only) | 2 | 10 | 41 | 520 |
| Totals | 14 | 34 | 137 | 1768 |
| COMBINED TOTALS | 72 | 203 | 813 | 10556 |

| NOTABLE RECIDIVIST INMATES | |
|---|---|
| MURDER | 1 |
| ATTEMPTED MURDER | 2 |
| ROBBERY/ HATE CRIME | 1 |
| CARJACKING/ 245 | 1 |
| FELONY EVADING | 1 |
| ANIMAL CRUELTY | 1 |
| BURGLARY (CRIME SPREE) | 2 |

**SPECIAL REQUESTS FROM OUTSIDE AGENCIES/JUDGES FOR NO FEDERAL RELEASE DUE TO CRIMINAL BEHAVIOR/FTA'S    20**

## 2007 Countywide Priority Federal Release Statistics

### PRIORITY FEDERAL RELEASES

| CRIME CATEGORY | Males | Females | Total |
|---|---|---|---|
| Sent. Fel. Drug (11377,11379,4573.6,11350) | 596 | 169 | **765** |
| Sent. Fel. Theft (496,459,10851,666,476,487) | 550 | 212 | **762** |
| Sent. Fel. Vandalism (594(B)(1)) | 39 | 3 | **42** |
| Traffic Crimes (14601.1,12500,4000A) | 86 | 18 | **104** |
| Sent. Misd. Drug (11377,11379,4573.6) | 78 | 39 | **117** |
| Sent Misd. Theft (496,459,10851,666,476) | 43 | 21 | **64** |
| Sent. Misd. Vandalism (594(B)(1)) | 4 | 0 | **4** |
| Crimes against persons (245,211,422) | 60 | 6 | **66** |
| Weapon charges (12020,12025,417) | 38 | 2 | **40** |
| Dom. Violence (273.5,243(E)) | 54 | 2 | **56** |
| D.U.I (22453,22452) | 53 | 6 | **59** |
| Probation Violation (1203.2) | 0 | 0 | **0** |
| Sent. Felony Other | 23 | 6 | **29** |
| Sent. Misd. Other | 18 | 4 | **22** |
| Misd. Unsentenced | 33 | 15 | **48** |
| **Total Priority Releases** | **1675** | **503** | **2178** |

## 2007 Countywide Post-Arraignment Federal Release Statistics

### POST-ARRAIGNMENT FEDERAL RELEASES

| CRIME CATEGORY | Males | Females | Total |
|---|---|---|---|
| Post-Arr. Drug (11377,11379,4573.6,11350) | 1027 | 350 | **1377** |
| Post-Arr. Theft (496,459,10851,487,666,476) | 1702 | 596 | **2298** |
| Post-Arr. Vandalism (594(B)(1)) | 74 | 10 | **84** |
| Post-Arr. Misd. Traffic (14601.1,12500,4000A) | 18 | 3 | **21** |
| Post-Arr Other. | 29 | 14 | **43** |
| **Total Post-Arraignment Releases** | **2850** | **973** | **3823** |

| | Males | Females | Total |
|---|---|---|---|
| **TOTAL ALL FEDERAL RELEASES 2007** | **4525** | **1476** | **6001** |

## 2007 Countywide Post-Arraignment FTA Statistics

### Countywide Post-Arraignment FTA Figures (One Month Lag)

| 2007 | Post-Arraignment Fed Releases | FTA's | FTA Percentages |
|---|---|---|---|
| December-06 | 261 | 95 | 36.4% |
| January-07 | 284 | 102 | 35.9% |
| February-07 | 231 | 75 | 32.5% |
| March-07 | 263 | 109 | 41.4% |
| April-07 | 287 | 100 | 34.8% |
| May-07 | 306 | 109 | 35.6% |
| June-07 | 401 | 144 | 35.9% |
| July-07 | 362 | 155 | 42.8% |
| August-07 | 365 | 113 | 31.0% |
| September-07 | 340 | 111 | 32.6% |
| October-07 | 327 | 91 | 27.8% |
| November-07 | 358 | 112 | 31.3% |
| **YTD Totals** | **3785** | **1316** | **34.8%** |

## 2008 Countywide Priority Federal Release Statistics

| PRIORITY FEDERAL RELEASES(YTD) | | | | Percentage Change From Last Year |
|---|---|---|---|---|
| CRIME CATEGORY | Males | Females | Total | |
| Sent. Fel. Drug  (11377,11379,4573.6,11350) | 168 | 44 | 212 | -72.1% |
| Sent Fel. Theft (496,459,10851,666,476,487) | 232 | 70 | 302 | -60.0% |
| Sent. Fel. Vandalism (594(B)(1)) | 9 | 1 | 10 | -76.2% |
| Traffic Crimes (14601.1,12500,4000A) | 20 | 5 | 25 | -76.0% |
| Sent. Misd. Drug (11377,11379,4573.6) | 23 | 12 | 35 | -69.8% |
| Sent Misd. Theft (496,459,10851,666,476) | 14 | 9 | 23 | -64.1% |
| Sent. Misd. Vandalism (594(B)(1)) | 4 | 1 | 5 | 25.0% |
| Crimes against persons (245,211,422) | 8 | 2 | 10 | -84.8% |
| Weapon charges (12020,12025,417) | 1 | 0 | 1 | -97.5% |
| Dom. Violence (273.5,243(E)) | 11 | 0 | 11 | -80.4% |
| D.U.I (22453,22452) | 14 | 5 | 19 | -67.8% |
| Probation Violation (1203.2) | 0 | 0 | 0 | |
| Sent. Felony Other | 2 | 0 | 2 | -93.1% |
| Sent. Misd. Other | 8 | 3 | 11 | -47.6% |
| Misd. Unsentenced | 0 | 0 | 0 | |
| Total Priority Releases | 514 | 152 | 666 | -69.2% |

## 2008 Countywide Post-Arraignment Federal Release Statistics

| POST ARRAIGNMENT FEDERAL RELEASES (YTD) | | | | Percentage Change From Last Year |
|---|---|---|---|---|
| CRIME CATEGORY | Males | Females | Total | |
| UnSent. Fel. Drug  (11377,11379,4573.6,11350) | 425 | 145 | 570 | -58.4% |
| UnSent Fel. Theft (496,459,10851,666,476,487) | 878 | 374 | 1252 | -45.3% |
| UnSent. Fel. Vandalism (594(B)(1)) | 38 | 1 | 39 | -53.6% |
| Traffic Crimes (14601.1,12500,4000A) | 4 | 0 | 4 | -81.0% |
| UnSent. Misd. Drug (11377,11379,4573.6) | 15 | 2 | 17 | |
| UnSent Misd. Theft (496,459,10851,666,476) | 7 | 1 | 8 | |
| UnSent. Misd. Vandalism (594(B)(1)) | 5 | 0 | 5 | |
| Crimes against persons (245,211,422) | 0 | 0 | 0 | |
| Weapon charges (12020,12025,417) | 2 | 0 | 2 | |
| Dom. Violence (273.5,243(E)) | 0 | 0 | 0 | |
| D.U.I (22453,22452) | 4 | 0 | 4 | |
| Probation Violation (1203.2) | 0 | 0 | 0 | |
| UnSent. Felony Other | 3 | 0 | 3 | -93.0% |
| UnSent. Misd. Other | 6 | 1 | 7 | |
| Total Post-Arraignment Releases | 1387 | 524 | 1911 | -49.8% |

| | Males | Females | Total | % Change |
|---|---|---|---|---|
| TOTAL ALL FEDERAL RELEASES 2008 | 1901 | 676 | 2577 | -56.8% |

| 2008 Countywide Post-Arraignment FTA Figures (YTD) | | | | Percentage Change From Last Year |
|---|---|---|---|---|
| 2008 | Post-Arraignment Fed Releases | FTA's | FTA Rate | |
| Dec-07 | 297 | 95 | 32.0% | -12.1% |
| Jan-08 | 347 | 107 | 30.8% | -14.1% |
| Feb-08 | 325 | 103 | 31.7% | -2.4% |
| Mar-08 | 256 | 63 | 24.6% | -40.6% |

| | | | | |
|---|---|---|---|---|
| Apr-08 | 269 | 71 | 26.4% | -24.2% |
| May-08 | 233 | 63 | 27.0% | -24.1% |
| Jun-08 | 246 | 64 | 26.0% | -27.6% |
| Jul-08 | 229 | 0 | 0.0% | -100.0% |
| Aug-08 | 0 | 0 | | |
| Sep-08 | 0 | 0 | | |
| Oct-08 | 0 | 0 | | |
| Nov-08 | 0 | 0 | | |
| YTD Totals | 2202 | 566 | 28.4% | -18.6% |

**IN-CUSTODY PROFILE: COUNTYWIDE**

**Report:** Countywide Inmate Profile (All Facility Compilation)
**Sampling:** Snapshot of all inmates held in custody on 022008

| | |
|---|---|
| Total countywide headcount at time of sampling: | **3495** |
| Total countywide trusty count at time of sampling: | **225** |
| Total RSAT count at time of sampling: | **44** |



☐ Unsentenced Felony     ☐ Unsentenced Misdemeanor     ☐ Sent. Felony-Prison
☐ Sent. Felony-Jail (Non-RSAT)     ☒ Sent. Misd.-Jail (Non-RSAT)     ☐ Sent. Fel or Misd.-Jail (RSAT)

| | Unsentenced | | Sentenced | | | | Total | % |
|---|---|---|---|---|---|---|---|---|
| | | | Prison | County Jail (Non-RSAT) | | RSAT | | |
| **Most Serious Offense** | **Felony** | **Misd.** | | **Felony** | **Misd.** | **(All Felony)** | | |
| Murder | 278 | 0 | 4 | 0 | 0 | 0 | **282** | 8.1% |
| Attempted Murder | 277 | 0 | 5 | 2 | 0 | 0 | **284** | 8.1% |
| Crimes of Violence | 772 | 5 | 46 | 135 | 4 | 5 | **967** | 27.7% |
| Sex Crimes | 349 | 3 | 9 | 20 | 3 | 0 | **384** | 11.0% |
| Property Crimes *** | 372 | 14 | 36 | 70 | 3 | 12 | **507** | 14.5% |
| Narcotic Offenses *** | 284 | 6 | 19 | 68 | 7 | 12 | **396** | 11.3% |
| Weapons Possession | 135 | 5 | 16 | 42 | 3 | 0 | **201** | 5.8% |
| Domestic Violence | 74 | 21 | 9 | 69 | 42 | 1 | **216** | 6.2% |
| Evading/DUI/Hit & Run w/ Injury | 72 | 15 | 8 | 53 | 35 | 14 | **197** | 5.6% |
| 3056/ Other Holds | 34 | 0 | 0 | 0 | 0 | 0 | **34** | 1.0% |
| Detainers/Witness | 16 | 0 | 6 | 0 | 0 | 0 | **22** | 0.6% |
| Fugitive Warrants | 5 | 0 | 0 | 0 | 0 | 0 | **5** | 0.1% |
| **Totals** | **2668** | **69** | **158** | **459** | **97** | **44** | **3495** | **100.0%** |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gang Enhancement (186.22 PC) | 267 | 0 | 8 | 5 | 0 | 0 | **280** | 8.0% |

# EXHIBIT B

# CHARACTERISTICS OF FELON NEW ADMISSIONS AND PAROLE VIOLATORS RETURNED WITH A NEW TERM

## CALENDAR YEAR 2007

**Department of Corrections and Rehabilitation**

**Offender Information Services Branch**

**Estimates and Statistical Analysis Section**

**Data Analysis Unit**

Sacramento, California
February 2008

## AND PAROLE VIOLATORS RETURNED WITH A NEW TERM (PV-WNTs)

### TOTAL FELON ADMISSIONS

**The total felon admission for calendar year 2007 was 67,795.**

· • The total felon admission population includes:

46,987 felon new admissions.

20,808 felon PV-WNTs

• The number of male felon new admissions decreased from 42,509 in 2006 to 41,110 in 2007. The number of female felon new admissions decreased from 6,130 in 2006 to 5,877 in 2007.

• The number of male PV-WNTs decreased from 18,912 in 2006 to 18,885 in 2007. The number of female felon PV-WNTs increased from 1,857 in 2006 to 1,923 in 2007.

### AREA OF COMMITMENT

During calendar year 2007:

• 46,568 (68.7%) of the total felon admissions were from Southern California.

• 6,916 (10.2%) were from the San Francisco Bay Area.

• 14,311 (21.1%) of the total felon admissions were admitted from the remainder of the state.



Total Felon Admissions
Area of Commitment
Calendar Year 2007

Remainder of the State 21.1%

San Francisco Bay Area 10.2%

Southern California 68.7%

Source: Table 6

NOTE: Percentages may not add to 100% due to rounding

Data Analysis Unit
Estimates and Statistical Analysis Section
Offender Information Services Branch

Department of Corrections and Rehabilitation
State of California
February 2008

TABLE 1
COMMITMENT STATUS
TOTAL FELON ADMISSIONS
CALENDAR YEAR 2007

| | GENDER | | | | TOTAL | |
| | FEMALE | | MALE | | | |
| | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| TOTAL | 7,800 | 100.0 | 59,995 | 100.0 | 67,795 | 100.0 |
| COMMITMENT STATUS | | | | | | |
| NEW ADMISSION | 5,877 | 75.3 | 41,110 | 68.5 | 46,987 | 69.3 |
| PV-WNT | 1,923 | 24.7 | 18,885 | 31.5 | 20,808 | 30.7 |

Data Analysis Unit
Estimates and Statistical Analysis Section
Offender Information Services Branch

Department of Corrections and Rehabilitation
State of California
February 2008

TABLE 6
COUNTY AND AREA OF COMMITMENT*
TOTAL FELON ADMISSIONS
CALENDAR YEAR 2007

| | | GENDER | | | | TOTAL | |
| | | FEMALE | | MALE | | | |
| | | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|
| TOTAL | | 7,800 | 100.0 | 59,995 | 100.0 | 67,795 | 100.0 |
| AREA OF COMMITMENT | COMMITMENT COUNTY | | | | | | |
| SOUTHERN CALIFORNIA | IMPERIAL | 16 | 0.2 | 162 | 0.3 | 178 | 0.3 |
| | KERN | 255 | 3.3 | 1,995 | 3.3 | 2,250 | 3.3 |
| | LOS ANGELES | 2,612 | 33.5 | 19,699 | 32.8 | 22,311 | 32.9 |
| | ORANGE | 690 | 8.8 | 4,430 | 7.4 | 5,120 | 7.6 |
| | RIVERSIDE | 444 | 5.7 | 3,838 | 6.4 | 4,282 | 6.3 |
| | SANTA BARBARA | 94 | 1.2 | 712 | 1.2 | 806 | 1.2 |
| | SAN BERNARDINO | 757 | 9.7 | 5,224 | 8.7 | 5,981 | 8.8 |
| | SAN DIEGO | 533 | 6.8 | 3,917 | 6.5 | 4,450 | 6.6 |
| | SAN LUIS OBISPO | 23 | 0.3 | 291 | 0.5 | 314 | 0.5 |
| | VENTURA | 112 | 1.4 | 764 | 1.3 | 876 | 1.3 |
| | SUB TOTAL | 5,536 | 71.0 | 41,032 | 68.4 | 46,568 | 68.7 |
| SAN FRANCISCO BAY AREA | COMMITMENT COUNTY | | | | | | |
| | ALAMEDA | 87 | 1.1 | 1,228 | 2.0 | 1,315 | 1.9 |
| | CONTRA COSTA | 29 | 0.4 | 439 | 0.7 | 468 | 0.7 |
| | MARIN | 18 | 0.2 | 110 | 0.2 | 128 | 0.2 |
| | NAPA | 20 | 0.3 | 159 | 0.3 | 179 | 0.3 |

(Continued)

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                    ACHAR-1

Data Analysis Unit
Estimates and Statistical Analysis Section
Offender Information Services Branch

Department of Corrections and Rehabilitation
State of California
February 2008

TABLE 6
COUNTY AND AREA OF COMMITMENT*
TOTAL FELON ADMISSIONS
CALENDAR YEAR 2007

| | | GENDER | | | | | |
| | | FEMALE | | MALE | | TOTAL | |
| | | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|
| AREA OF COMMITMENT | COMMITMENT COUNTY | | | | | | |
| SAN FRANCISCO BAY AREA | SANTA CLARA | 290 | 3.7 | 2,023 | 3.4 | 2,313 | 3.4 |
| | SAN FRANCISCO | 28 | 0.4 | 450 | 0.8 | 478 | 0.7 |
| | SAN MATEO | 97 | 1.2 | 704 | 1.2 | 801 | 1.2 |
| | SOLANO | 95 | 1.2 | 661 | 1.1 | 756 | 1.1 |
| | SONOMA | 42 | 0.5 | 436 | 0.7 | 478 | 0.7 |
| | SJB TOTAL | 706 | 9.1 | 6,210 | 10.4 | 6,916 | 10.2 |
| REMAINDER OF THE STATE | COMMITMENT COUNTY | | | | | | |
| | ALPINE | . | . | 2 | 0.0 | 2 | 0.0 |
| | AMADOR | 8 | 0.1 | 70 | 0.1 | 78 | 0.1 |
| | BUTTE | 62 | 0.8 | 424 | 0.7 | 486 | 0.7 |
| | CALAVERAS | 5 | 0.1 | 59 | 0.1 | 64 | 0.1 |
| | COLUSA | 6 | 0.1 | 32 | 0.1 | 38 | 0.1 |
| | DEL NORTE | 7 | 0.1 | 44 | 0.1 | 51 | 0.1 |
| | EL DORADO | 17 | 0.2 | 164 | 0.3 | 181 | 0.3 |
| | FRESNO | 288 | 3.7 | 2,341 | 3.9 | 2,629 | 3.9 |
| | GLENN | 5 | 0.1 | 55 | 0.1 | 60 | 0.1 |
| | HUMBOLDT | 19 | 0.2 | 237 | 0.4 | 256 | 0.4 |

(Continued)

Page 11

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                    ACHAR-1

Estimates and Statistical Analysis Section
Offender Information Services Branch

State of California
February 2008

TABLE 11
COUNTY AND AREA OF COMMITMENT*
FELON NEW ADMISSIONS
CALENDAR YEAR 2007

| | | GENDER | | | | TOTAL | |
| | | FEMALE | | MALE | | | |
| | | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|
| TOTAL | | 5,877 | 100.0 | 41,110 | 100.0 | 46,987 | 100.0 |
| AREA OF COMMITMENT | COMMITMENT COUNTY | | | | | | |
| SOUTHERN CALIFORNIA | IMPERIAL | 11 | 0.2 | 108 | 0.3 | 119 | 0.3 |
| | KERN | 208 | 3.5 | 1,378 | 3.4 | 1,586 | 3.4 |
| | LOS ANGELES | 1,903 | 32.4 | 12,945 | 31.5 | 14,848 | 31.6 |
| | ORANGE | 505 | 8.6 | 2,940 | 7.2 | 3,445 | 7.3 |
| | RIVERSIDE | 327 | 5.6 | 2,479 | 6.0 | 2,806 | 6.0 |
| | SANTA BARBARA | 73 | 1.2 | 501 | 1.2 | 574 | 1.2 |
| | SAN BERNARDINO | 584 | 9.9 | 3,326 | 8.1 | 3,910 | 8.3 |
| | SAN DIEGO | 396 | 6.7 | 2,546 | 6.2 | 2,942 | 6.3 |
| | SAN LUIS OBISPO | 19 | 0.3 | 207 | 0.5 | 226 | 0.5 |
| | VENTURA | 87 | 1.5 | 606 | 1.5 | 693 | 1.5 |
| | SUB TOTAL | 4,113 | 70.0 | 27,036 | 65.8 | 31,149 | 66.3 |
| SAN FRANCISCO BAY AREA | COMMITMENT COUNTY | | | | | | |
| | ALAMEDA | 55 | 0.9 | 850 | 2.1 | 905 | 1.9 |
| | CONTRA COSTA | 19 | 0.3 | 322 | 0.8 | 341 | 0.7 |
| | MARIN | 15 | 0.3 | 79 | 0.2 | 94 | 0.2 |
| | NAPA | 19 | 0.3 | 122 | 0.3 | 141 | 0.3 |

(Continued)

Page 20

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                    ADHAR-1

Data Analysis Unit
Estimates and Statistical Analysis Section
Offender Information Services Branch

Department of Corrections and Rehabilitation
State of California
February 2008

TABLE 16
COUNTY AND AREA OF COMMITMENT*
PAROLE VIOLATORS RETURNED WITH A NEW TERM (PV-WNTs)
CALENDAR YEAR 2007

| | | GENDER | | | | | |
| | | FEMALE | | MALE | | TOTAL | |
| | | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| TOTAL | | 1,923 | 100.0 | 18,885 | 100.0 | 20,809 | 100.0 |
| AREA OF COMMITMENT | COMMITMENT COUNTY | | | | | | |
| SOUTHERN CALIFORNIA | IMPERIAL | 5 | 0.3 | 54 | 0.3 | 59 | 0.3 |
| | KERN | 47 | 2.4 | 617 | 3.3 | 664 | 3.2 |
| | LOS ANGELES | 709 | 36.9 | 6,754 | 35.8 | 7,463 | 35.9 |
| | ORANGE | 185 | 9.6 | 1,490 | 7.9 | 1,675 | 8.0 |
| | RIVERSIDE | 117 | 6.1 | 1,359 | 7.2 | 1,476 | 7.1 |
| | SANTA BARBARA | 21 | 1.1 | 211 | 1.1 | 232 | 1.1 |
| | SAN BERNARDINO | 173 | 9.0 | 1,898 | 10.1 | 2,071 | 10.0 |
| | SAN DIEGO | 137 | 7.1 | 1,371 | 7.3 | 1,508 | 7.2 |
| | SAN LUIS OBISPO | 4 | 0.2 | 84 | 0.4 | 88 | 0.4 |
| | VENTURA | 25 | 1.3 | 158 | 0.8 | 183 | 0.9 |
| | SUB TOTAL | 1,423 | 74.0 | 13,996 | 74.1 | 15,419 | 74.1 |
| SAN FRANCISCO BAY AREA | COMMITMENT COUNTY | | | | | | |
| | ALAMEDA | 32 | 1.7 | 378 | 2.0 | 410 | 2.0 |
| | CONTRA COSTA | 10 | 0.5 | 117 | 0.6 | 127 | 0.6 |
| | MARIN | 3 | 0.2 | 31 | 0.2 | 34 | 0.2 |
| | NAPA | 1 | 0.1 | 37 | 0.2 | 38 | 0.2 |

(Continued)

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                    ACHAR-1

Data Analysis Unit                                    Department of Corrections and Rehabilitation
Estimates and Statistical Analysis Section                                 State of California
Offender Information Services Branch                                          February 2008

TABLE 16
COUNTY AND AREA OF COMMITMENT*
PAROLE VIOLATORS RETURNED WITH A NEW TERM (PV-WNTs)
CALENDAR YEAR 2007

| | | GENDER | | | | TOTAL | |
| | | FEMALE | | MALE | | | |
| AREA OF COMMITMENT | COMMITMENT COUNTY | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|
| SAN FRANCISCO BAY AREA | SANTA CLARA | 77 | 4.0 | 478 | 2.5 | 555 | 2.7 |
| | SAN FRANCISCO | 5 | 0.3 | 102 | 0.5 | 107 | 0.5 |
| | SAN MATEO | 27 | 1.4 | 194 | 1.0 | 221 | 1.1 |
| | SOLANO | 16 | 0.8 | 217 | 1.1 | 233 | 1.1 |
| | SONOMA | 8 | 0.4 | 87 | 0.5 | 95 | 0.5 |
| | SUB TOTAL | 179 | 9.3 | 1,641 | 8.7 | 1,820 | 8.7 |
| REMAINDER OF THE STATE | COMMITMENT COUNTY | | | | | | |
| | AMADOR | . | . | 11 | 0.1 | 11 | 0.1 |
| | BUTTE | 9 | 0.5 | 92 | 0.5 | 101 | 0.5 |
| | CALAVERAS | 1 | 0.1 | 6 | 0.0 | 7 | 0.0 |
| | COLUSA | 1 | 0.1 | 7 | 0.0 | 8 | 0.0 |
| | DEL NORTE | . | . | 10 | 0.1 | 10 | 0.0 |
| | EL DORADO | 2 | 0.1 | 27 | 0.1 | 29 | 0.1 |
| | FRESNO | 62 | 3.2 | 672 | 3.6 | 734 | 3.5 |
| | GLENN | . | . | 10 | 0.1 | 10 | 0.0 |
| | HUMBOLDT | 7 | 0.4 | 70 | 0.4 | 77 | 0.4 |
| | INYO | . | . | 9 | 0.0 | 9 | 0.0 |

(Continued)

Page 31

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                                    ACHAR-1

Data Analysis Unit
Estimates and Statistical Analysis Section
Offender Information Services Branch

Department of Corrections and Rehabilitation
State of California
February 2008

TABLE 16
COUNTY AND AREA OF COMMITMENT*
PAROLE VIOLATORS RETURNED WITH A NEW TERM (PV-WNTs)
CALENDAR YEAR 2007

| | | GENDER | | | | TOTAL | |
| | | FEMALE | | MALE | | | |
| AREA OF COMMITMENT | COMMITMENT COUNTY | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|
| REMAINDER OF THE STATE | KINGS | 8 | 0.4 | 95 | 0.5 | 103 | 0.5 |
| | LAKE | 2 | 0.1 | 38 | 0.2 | 40 | 0.2 |
| | LASSEN | 1 | 0.1 | 13 | 0.1 | 14 | 0.1 |
| | MADERA | 17 | 0.9 | 71 | 0.4 | 88 | 0.4 |
| | MENDOCINO | . | . | 16 | 0.1 | 16 | 0.1 |
| | MERCED | 4 | 0.2 | 115 | 0.6 | 119 | 0.6 |
| | MONO | . | . | 8 | 0.0 | 8 | 0.0 |
| | MODOC | . | . | 1 | 0.0 | 1 | 0.0 |
| | MONTEREY | 11 | 0.6 | 164 | 0.9 | 175 | 0.8 |
| | MARIPOSA | . | . | 3 | 0.0 | 3 | 0.0 |
| | NEVADA | . | . | 4 | 0.0 | 4 | 0.0 |
| | PLACER | 4 | 0.2 | 80 | 0.4 | 84 | 0.4 |
| | PLUMAS | . | . | 4 | 0.0 | 4 | 0.0 |
| | SACRAMENTO | 64 | 3.3 | 606 | 3.2 | 670 | 3.2 |
| | SAN BENITO | 2 | 0.1 | 22 | 0.1 | 24 | 0.1 |
| | SANTA CRUZ | 3 | 0.2 | 38 | 0.2 | 41 | 0.2 |
| | SHASTA | 12 | 0.6 | 104 | 0.6 | 116 | 0.6 |

(Continued)

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                    ACHAR-1

Data Analysis Unit
Estimates and Statistical Analysis Section
Offender Information Services Branch

Department of Corrections and Rehabilitation
State of California
February 2008

TABLE 16
COUNTY AND AREA OF COMMITMENT*
PAROLE VIOLATORS RETURNED WITH A NEW TERM (PV-WNTs)
CALENDAR YEAR 2007

| | | GENDER | | | | TOTAL | |
| | | FEMALE | | MALE | | | |
| AREA OF COMMITMENT | COMMITMENT COUNTY | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|
| REMAINDER OF THE STATE | SISKIYOU | 1 | 0.1 | 11 | 0.1 | 12 | 0.1 |
| | SAN JOAQUIN | 38 | 2.0 | 189 | 1.0 | 227 | 1.1 |
| | STANISLAUS | 31 | 1.6 | 278 | 1.5 | 309 | 1.5 |
| | SUTTER | 7 | 0.4 | 40 | 0.2 | 47 | 0.2 |
| | TEHAMA | 3 | 0.2 | 46 | 0.2 | 49 | 0.2 |
| | TRINITY | 1 | 0.1 | 1 | 0.0 | 2 | 0.0 |
| | TULARE | 12 | 0.6 | 223 | 1.2 | 235 | 1.1 |
| | TUOLUMNE | 4 | 0.2 | 14 | 0.1 | 18 | 0.1 |
| | YOLO | 9 | 0.5 | 103 | 0.5 | 112 | 0.5 |
| | YUBA | 5 | 0.3 | 49 | 0.3 | 54 | 0.3 |
| | SUB TOTAL | 321 | 16.7 | 3,248 | 17.2 | 3,569 | 17.2 |

Page 33

THESE DATA VALUES MAY DIFFER FROM THOSE PREVIOUSLY PUBLISHED DUE TO DATABASE UPDATES.
Reference:                                    ACHAR-1