Gregg McLean Adam, No. 203436
Natalie Leonard, No. 236634
James W. Henderson, Jr., No. 071170
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:   415.989.5900
Facsimile:   415.989.0932
Email:       gadam@cbmlaw.com
             jstoughton@cbmlaw.com


Daniel M. Lindsay, No. 142895
**CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:   916.372.6060
Facsimile:   916.372.9805
E-Mail:      dan.lindsay@ccpoa.org

Attorneys for Intervenor California Correctional Peace
Officers' Association

IN THE UNITED STATES DISTRICT COURTS
FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| MARCIANO PLATA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>Defendants. | No. Civ C01-1351 TEH (N.D. Cal.) *and*<br><br>No. Civ S90-0520 LKK-JFM (E.D. Cal.)<br><br>**THREE-JUDGE COURT** |
| RALPH COLEMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>Defendants. | **PLAINTIFF INTERVENOR, CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 11 TO EXCLUDE EVIDENCE RE: DESERT INSTITUTIONS**<br><br>**TRIAL DATE: NOVEMBER 18, 2008** |

# I

# INTRODUCTION

In their Motion in Limine No. 11, the Defendants ask this Court to exclude from the *Coleman* action the five "Desert Institutions"[1]. The grounds for this Motion are not that the Defendants can establish that the California Department of Corrections and Rehabilitation ("CDCR") is meeting its mental healthcare obligations at those institutions, or that overcrowding is not an issue, but rather that the *Coleman* Class inmates who require mental health services are at those institutions only on a "temporary"[2] basis and are small in number. In reality, what the Defendants ask this Court to do is to ignore the constitutional rights and entitlements of a small group of inmates because their numbers are not significant enough. However, the small number and "temporary" status of such inmates does not justify the Court ignoring whether overcrowding conditions also apply to this group. In fact, as will be discussed below, the Court's scrutiny should perhaps even be stronger in situations where permanent facilities for treating these inmates are not available. Accordingly, this Motion should be denied.

///

///

///

///

///

---

[1]  The Desert Institutions include California Correctional Center, Calipatria State Prison, Centinela State Prison, Chuckawalla Valley State Prison and Ironwood State Prison.

[2]  According to the Defendants' moving papers, the CDCR is required to move from a Desert Institution any *Coleman* Class inmate within ninety (90) days of the determination that the inmate is "admitted to the *Coleman* Class". See Defendants' Motion in Limine No. 11 (hereinafter "Motion in Limine No. 11"), pg. 3, lines 21-23. However, the Defendants make no showing as to how long the process takes for an inmate to be determined by the CDCR to be a member of the *Coleman* Class, nor is there any information given as to how soon the inmate is transferred to a facility that does provide permanent housing and a full range of mental health services.

CBM-SAC\SA067490.1                -2-

## II

## DISCUSSION

### A. Neither The Temporary Status Nor The Small Numbers Of The *Coleman* Class Members At The Desert Institutions Justifies Ignoring Their Situation

In support of Motion No. 11, the Defendants basically play the "numbers game". They do not argue that the *Coleman* Class inmates housed at the Desert Institutions are currently receiving adequate mental health services. In fact, their papers suggest to the contrary. See Motion in Limine No. 11, pg. 4, lines 18-19. Nor do they argue that overcrowding is not the primary cause of the failure of these *Coleman* Class inmates to receive adequate mental heath services at the Desert Institutions. Rather, their argument is that the number of such inmates is so small and their status is so temporary that this Court should not bother itself to determine any issues relating to these inmates.

The invalidity of this argument is obvious. While CCPOA will acknowledge that the number of *Coleman* Class inmates at the Desert Institutions is small, that does not justify the Defendant's argument that the Court should turn a blind eye to their situation. This case is about numbers, namely that there are more inmates incarcerated than the State is capable of effectively handling. The fact that numbers are an issue in this case does not support the State's efforts to exclude from consideration a small group of "temporarily housed" *Coleman* Class inmates. In fact, it is the small number of such inmates that should invite more inquiry into their situation. What mental health services are *Coleman* Class inmates receiving while they are incarcerated at the Desert Institutions if those institutions have no full time or permanent services to offer? How long does it take the CDCR to determine that an inmate is to be "admitted into the *Coleman* Class" if full services and permanent housing are lacking at these institutions? Interestingly, the Defendants do not address these questions in their Motion, and it is submitted that the failure to do so is not an oversight.

### B. The Temporary Nature Of The Inmates' Incarceration At The Desert Institutions Likewise Does Not Justify Ignoring Their Plight Or Its Cause

The State claims that the group of *Coleman* Class inmates are only "temporarily housed" at the Desert Institutions and are relocated pursuant to the *Coleman* Order. (Motion in Limine No. 11, pg. 3, lns. 21 – 23.) However, how "temporary" is temporary? While the Defendants indicate that the CDCR has, under the *Coleman* Order, up to 90 days to transfer the *Coleman* Class inmates to facilities providing full and mental health services, how long does that process take? Is it routinely something close to 90 days; are there situations where the inmates are "temporarily" incarcerated at the Desert Institutions beyond 90 days after their admission? Are any delays in transferring such inmates due to the fact that there is overcrowding in the institutions that do offer permanent mental health facilities? Once again, these questions are left unanswered by the Defendants.

Furthermore, even the term "temporary" is something of a misnomer since the Defendants themselves concede that this is an ongoing condition at the Desert Institutions. See Declaration of Rick Johnson in Support of Defendants' Motion in Limine No. 11, ¶ 11, pg. 5, lns. 12-13. While the individual *Coleman* Class inmates may change over time, the group itself seems to be permanent not temporary. Accordingly, the Court should make an inquiry into this situation just as it must with the other issues pertaining to the delivery of mental health services within the California correctional system.

## III

### CONCLUSION

The fact that the Defendants characterize those *Coleman* Class inmates residing in the Desert Institutions as a small, temporary group of individuals, does not excuse the CDCR from its obligations to deliver constitutionally mandated mental health services to them. Indeed, by virtue of their small number and "temporary" status, these inmates, in all likelihood, have an even greater need for the Court's inquiry into their conditions, whether or not they are receiving the mental health services to which they are

1. entitled to receive and, if not, the cause for that failure. Defendants' attempt to sweep this small group under the carpet given the overall size of this litigation is unjustified and their Motion should be denied.

Dated: October 30, 2008

CARROLL, BURDICK & McDONOUGH LLP

By    /s/ Natalie Leonard
Gregg McLean Adam
Natalie Leonard
James W. Henderson, Jr.
Attorneys for Intervener California Correctional Peace Officers' Association