PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
E. IVAN TRUJILLO, Bar No. 228790
SARA NORMAN, Bar No. 189536
ALISON HARDY, Bar No. 135966
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARIA V. MORRIS, Bar No. 223903
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants | No. Civ S 90-0520 LKK-JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS** |

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

    I.    LEGAL ARGUMENT ................................................................................. 2

        A.    Defendants Have Not Met The Legal Burden Under F.R.E. 403 ................ 2

    II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................. 4

        A.    CDCR Suicide Prevention Plans, Policies and Procedures Have Been Court Ordered For Many Years ........................................................... 4

        B.    CDCR's High Suicide Rates Have Been Linked to Overcrowding By Governor, Coleman Special Master and Plaintiffs' Experts ............................ 5

            1.    Governor Schwarzenegger .................................................................. 5

            2.    Coleman Special Master Reports on CDCR Suicides ....................... 5

            3.    Plaintiffs' Experts Testified To The Clear Nexus Between Overcrowding-Related Dysfunction and CDCR Suicide Rates .................................................................................. 8

        C.    Defendants Mischaracterize the Deposition Testimony of Dr. Haney ................................................................................................ 10

        D.    Dr. Canning's Declaration Fails to Dispute that Evidence of Suicide Rate is Not Relevant and Probative Is An Untimely Expert Report ..................................................................................... 10

            1.    Canning Chart .................................................................................. 11

            2.    Patterson/Hughes Article ................................................................. 11

            3.    Defendants' Plan to Reduce Suicide Trends in Administrative Segregation ............................................................ 12

CONCLUSION ............................................................................................................. 13

-i-

NO. C01-1351 TEHOPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Coleman v. Wilson*,
    912 F.Supp. 1282 (E.D.Cal. 1995) ................................................................................ 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ....................................................................................................... 3

*Obrey v. Johnson*,
    400 F.3d. 691 (9th Cir 2005) ......................................................................................... 3

*Schultz v. Butcher*,
    24 F.3d 626 (4th Cir. 1993) ........................................................................................... 3

*Sprint/United Management Co. v. Mendelsohn*,
    128 S.Ct. 1140 (2008) .................................................................................................... 3

*White v. Ford Motor Co.*,
    500 F.3d 963 (9th Cir. 2007) ......................................................................................... 3

**Rules**

F.R.E. 104 ............................................................................................................................ 4

F.R.E. 401, Adv. Committee Notes ..................................................................................... 3

F.R.E. 403 ........................................................................................................................ 2, 3

-ii-
NO. C01-1351 TEH OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

**INTRODUCTION**

Plaintiffs oppose defendants' motion for an in limine order "to exclude any and all evidence, reference to evidence, testimony, or argument regarding the annual rate of suicides among inmates in California state prisons for the purpose of showing that overcrowding is the primary cause of the alleged unconstitutional inadequacies in the delivery of medical or mental health in California's prisons." *Coleman* Docket 3085 at 2. After years of court orders directed at reducing unnecessary and avoidable suicides in the CDCR, the rate of suicide in California prisons remains far above the national average and, as the Special Master has found, more than 70% of the prisoner suicides were foreseeable or avoidable. It is understandable that defendants want to keep this damaging and highly probative information from this Court and that they consider these undisputed facts to be "prejudicial."

Defendants ask the Court to exclude any evidence regarding the annual rate of suicides among prisoners in California because they allege that plaintiffs have failed to reference any evidence that links prison overcrowding to suicides or constitutionally inadequate treatment of prisoners resulting in suicide. *Coleman* Docket 3085 at 3. Defendants also allege that permitting evidence of annual suicide rates at trial will cause undue delay, will confuse the issues before the Court and will unfairly prejudice defendants, who have recently implemented court-approved suicide prevention plans. *Id* at 3-4. Finally, defendants state that plaintiffs' experts have not identified overcrowding as the overriding or primary cause of the high suicide rates in California prisons.

The evidence of annual suicides rates within the California prisons is relevant and probative to the issue of whether overcrowding is the primary cause of the constitutional violations in the delivery of mental health care, as well as other pending issues. While not every suicide is preventable, the mental health delivery system within CDCR is designed to prevent suicides whenever possible through the provision of *Coleman* Program Guide treatment, including required suicide prevention screening, follow-ups and emergency response. Powerful evidence of unnecessary and avoidable suicides directly related to overcrowding-related deficiencies in the CDCR is "prejudicial" to defendants only to the

-1-

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

extent that it demonstrates the urgency and seriousness of the issues before this Court. Lives are at stake and defendants' endless "plans" have done little to reduce the harm to the *Coleman* class. Plaintiffs will demonstrate at trial that only a major reduction in the level of overcrowding in the prison system will enable the court-ordered remedies to take hold. California's shameful and persistent high rate of suicide, almost two times higher than the national average, is relevant and probative evidence that can and must be considered by this Court in this trial.

Despite years of extensive monitoring by the Special Master to implement the *Coleman* Program Guide and specific orders directed to suicide prevention, the high rate of suicides within CDCR persists. In fact, the rate has even edged upward. The reason is clear: the Court-ordered standards, the training programs, the written guidelines are simply beyond the ability of the overcrowded system to put in place. Clinicians identify patients for higher levels of care but they remain in inadequate locations due to shortages of beds at every level of care. Suicide watch takes place in cages in prison hallways or in cells in segregation units rather than in licensed Mental Health Crisis Beds ("MHCB") — as required by the *Coleman* Program Guide. As plaintiffs' mental health experts have testified, there is a direct relationship between overcrowding and the inability of defendants to provide appropriate and constitutional levels of mental health care. The ultimate failure of the system is avoidable or preventable suicides. The evidence before this Court is that almost three quarters of the suicides in the CDCR are in this category.

Defendants' argument that consideration of human beings whose lives were lost due to the failure of defendants to address the unconstitutional conditions of their system and to reduce overcrowding is "confusing" or may "delay" the trial is offensive. Defendants' motion in limine should be denied.

## I.     LEGAL ARGUMENT

### A.     Defendants Have Not Met The Legal Burden Under F.R.E. 403

Defendants move to exclude evidence of suicide rates because they allege that evidence of these rates is not relevant to the fundamental questions at trial, and because the probative

value of this evidence is outweighed by the risk of undue delay and waste of time at trial if the evidence is presented, by the unfair prejudice to defendants, and by the confusion of the issues before the Court. Defendants have not met their legal burden.

To be relevant, evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993). The evidence does not need to prove an ultimate fact; it can merely be a step in proving some fact that itself is an ultimate, intermediate or evidentiary fact. F.R.E. 401, Adv. Committee Notes. In evaluating whether to exclude relevant evidence because of claims that the probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues," typical concerns regarding prejudice or confusion are virtually nonexistent for a bench trial, where the Court can be expected to "hear relevant evidence, weigh its probative value and reject any improper influences." *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1993).

Evidence that risks unfair prejudice is evidence that "suggest decision on an improper basis." *White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007). Where evidence is probative and a proper factor in a fact-finder's analysis, "any "prejudice" experienced [from the admission of the evidence] is not "unfair" as that term is used in Rule 403." *Id.* Finally, the only delay considered under Rule 403 is "undue delay." F.R.E. 403. Evidence should be excluded only if it "clearly involve[s] delay that [is] "undue" or a "waste of time." *Obrey v. Johnson*, 400 F.3d. 691, 698 (9th Cir 2005). The decision to admit or exclude evidence is committed to the discretion of the trial court. *Sprint/United Management Co. v. Mendelsohn*, 128 S.Ct. 1140, 1145 (2008); F.R.E. 104. Exclusion of evidence under Rule 403 should be done through "case-by-case determinations, requiring examination of the surrounding facts, circumstances and issues." *Obrey*, 400 F.3d. at 698.

The applicable law does not support defendants' motion in limine to exclude any and all evidence regarding suicide rates in California prisons.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. CDCR Suicide Prevention Plans, Policies and Procedures Have Been Court Ordered For Many Years

In their motion, defendants state that evidence of annual suicide rates from previous years will be unfairly prejudicial to defendants "who have recently implemented court-approved suicide prevention plans whose efficiency has not been statistically proven yet." Docket 3085 at 3-4.

The reality is that CDCR has been required to implement suicide prevention policies since the *Coleman* decision when the Court found that "defendants have designed an adequate suicide prevention program" but were unable to implement the program "due to severe understaffing in mental health care." *Coleman v. Wilson*, 912 F.Supp. 1282, 1315 (E.D.Cal. 1995). The *Coleman* Program Guide, which sets forth policies and procedures for mental health care in CDCR, has always emphasized suicide prevention, as has *Coleman* mandatory training for correctional officers and clinical staff. The *Coleman* Program Guide was implemented in 1997 (and has been amended frequently since then). Docket 1749 (*Special Master's Report and Recommendations on Defendants' Revised Program Guide*, filed 2/3/06). Since 1998 when he began monitoring suicide prevention, the *Coleman* Special Master has issued eight annual suicide reports, with recommendations regarding each of the individual suicides and overall recommendations to the Court for orders. Docket 3030 at 1. For example, the *Coleman* Court issued a June 9, 2005 Order, adopting the recommendations of the Special Master, directing defendants to address the hazards of large-mesh ventilation screens (which could be easily accessed for hangings) in administrative segregation cells, to require officers to provide CPR to prisoners, to track suicide attempt history of prisoners on the mental health caseload, and to implement the remedies identified by the Special Master in his suicide reports and demonstrate that staff judged to have been responsible for some act of incompetence, malfeasance or negligence were appropriately disciplined. June 9, 2005 Order [Docket1668] A year later, the *Coleman* Court issued an order addressing the high rate of suicide in administrative segregation units. June 8, 2006 Order [Docket 1830] In response, defendants

-4-

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

developed and filed their Administrative Segregation Suicide Plan ("Ad Seg Suicide Plan") on October 2, 2006. Docket 1990. Elements of this plan continue to be monitored by the *Coleman* experts and defendants continue to have great difficulty complying with its requirements due to the effects of overcrowding.

In short, there have been many years of *Coleman* court orders and many years of defendants' plans addressed to suicide prevention. Despite these orders and extensive monitoring, the high suicide rate persists. The reason is overcrowding. This evidence is relevant and probative and must be considered by this Court.

### B. CDCR's High Suicide Rates Have Been Linked to Overcrowding By Governor, Coleman Special Master and Plaintiffs' Experts

The *Coleman* Special Master, Governor Schwarzenegger, and the plaintiffs' experts have each linked the severe overcrowding in the California prisons with the high suicide rates.

#### 1. Governor Schwarzenegger

In his emergency proclamation issued on October 4, 2006, Governor Arnold Schwarzenegger stated that 29 of the 33 CDCR prisons were severely overcrowded, and he described the serious risks to the public and to the staff and prisoners who were housed in the severely overcrowded prisons. In justifying the State of Emergency due to overcrowding, the Governor directly connected the high suicide rate to overcrowding:

> [I]n addition to the 1,671 incidents of violence perpetrated in these 29 severely overcrowded prisons by inmates against CDCR staff last years, and the 2,642 incidents of violence perpetrated in these prisons on inmates by other inmates in the last year, the suicide rate in these 29 prisons is approaching an average of one per week.

Exhibit KK, Declaration of Paul Mello in Support of Defendants' Motions in Limine ("Mello Dec."), [Docket 3114]

#### 2. Coleman Special Master Reports on CDCR Suicides

The *Coleman* Special Master has regularly reported on the high rate of suicide in CDCR facilities and has connected the high rate to overcrowding related problems, such as shortages of Mental Health Crisis Beds. In his report filed on November 26, 2007, the Special Master

concluded that between 74 to 76 percent[1] of the completed suicides involved inadequate treatment and were foreseeable and/or preventable. Docket 2566 at 9-10. In discussing the high percentage of "preventable/foreseeable" suicides and the high rate of suicides within CDCR in his November 26, 2007 Report, the Special Master emphasized the overcrowding-related shortage of Mental Health Crisis Beds noting:

> The crisis in the availability of MHCBs, which became evidence in early 2005, led to the spreading use of "alternative" and supposedly "temporary" housing in Mental Health Outpatient Housing Units (MHOHUS), Outpatient Housing Units (OHUs), and a variety of other holding cells for suicidal inmate for whom no bed was available in an MHCB unit. Defendants' dependence on these alternative placements emerged as a factor in a number of suicides in 2005.

Docket 2566 at 12.[2]

In the Special Master's most recent suicide report, filed September 12, 2008, he again found that almost three-fourths (or 72.1%) of the suicides involved significant indications of inadequate treatment and were foreseeable or preventable. Docket 3030 at 11. The Special Master noted that the persistence shortage of MHCBs, and the:

---

[1] The Special Master cites to a percentage range because the Special Master and the CDCR disagreed on the number of CDCR prisoner deaths in 2005, with the CDCR reporting 36 suicides, while the Special Master calculated 43 suicides. Docket 2566 at 1. The CDCR chose to exclude two suicides by CDCR prisoners who were housed in DMH facilities at the time of their death, although the Special Master noted that in past years CDCR counted suicides that occurred in DMH units. *Id* at 2. In addition, CDCR did not count five suicides after changing its initial classification of the five deaths as "suicide" or "undetermined" to non-suicide deaths. Based upon a review of medical records, coroner's reports, and other documents, the Special Master counted these five deaths as suicides in his count. CDCR's major efforts to reduce the suicide rate appear to be directed at manipulating the data rather than complying with the Court's orders and implementing appropriate mental health care.

[2] Most of the deficiencies in mental health care that the Special Master identified were related to overcrowding, such as canceled appointments not rescheduled, referrals not responded to, past medical records not reviewed, non-compliance with treatment without assessment, assignment to inappropriate levels of care, failure to provide five-day follow-up for prisoners discharged from suicide watch, and the failure to provide immediate CPR. *Id.*

-6-
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

> Continuing use of ZZ cells [3] and other holding cells for inmates awaiting transfers to *bona fide* CTCs with MHCBs, and placements in OHUs that exceeded the 72-hour time limitation, were ongoing obstacles to the care of inmates in need of constant or close monitoring or timely transfer to higher levels of care."

Docket 3030 at 11.[4]

The *Coleman* Special Master has found that the stark contrast between the CDCR suicide rates and the national prison suicide rate provides a standard by which to measure the CDCR's compliance with the court-ordered standards for the delivery of appropriate mental health care and suicide prevention and life-saving procedures that are necessary for all prisoners in the CDCR. Docket 3030 at 9. Measuring CDCR against other prison systems – many of which may also be under remedial orders – finds CDCR falling backwards in its efforts to reduce its annual suicide rate. Clearly, the suicide rate is a factor that should be considered by this Court in assessing whether overcrowding is the primary cause of the ongoing constitutional violations in the CDCR and whether other lesser remedies will be effective.

State prison suicide rates have dropped sharply nationwide from 34 suicides per 100,000 in 1980 to 14 suicides per 100,000 in 2002, but suicides rates within CDCR have not experienced the same drop. Declaration of Jane E. Kahn in Support of Plaintiffs' Opposition to Defendants' Motions in Limine Nos. 3, 10-12 and 14-16, Plaintiffs' Opposition to Defendants' Motion to File Exhibit JJ Under Seal, and Plaintiffs' Motion to Strike ("Kahn Decl."), **Exhibit D**, Mumola, Christopher J. "Suicide and Homicide in State Prisons and Local

---

[3] ZZ cells are holding cells located between housing units that have toilets and are designed to temporarily hold prisoners during transit.

[4] The Special Master identified other overcrowding-related types of inadequate treatment including: cancelled appointments that were not rescheduled, lack of responses to referrals, failure to reassess noncompliance with treatment, failure to provide five-day follow-up following discharge from suicide watch, failure to provide immediate or appropriate CPR, failure to review medical/central files or referral forms, and lack of adequate and timely screenings and assessment of inmates on intake, placement in administrative segregation, transfers to other prisons, and referrals for suicide assessments. Docket 3030 at 7-8.

-7-
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

Jails." Bureau of Justice Statistics Report (August 2005) at 2. The *Coleman* Special Master in most recent report on CDCR suicides, issued September 12, 2008, noted that "[t]he difference between the national rates and the CDCR rates has provided a standard by which the Department's record in dealing with suicides can be measured. It also provides a measure against which to determine the adequacy of the Department's suicide prevention efforts." Docket 3030 at 9. When compared to the national prison rates, the evidence shows that CDCR's suicide rates have persisted significantly higher than the national prison rate. Despite Court orders directed at suicide prevention efforts and the Special Master's intensive monitoring of the suicide prevention requirements, CDCR's suicide rates have remained almost twice the national prison suicide rate.

### 3. Plaintiffs' Experts Testified To The Clear Nexus Between Overcrowding-Related Dysfunction and CDCR Suicide Rates

Two of plaintiffs' mental health experts, Dr. Craig Haney, a psychologist and expert on prison overcrowding issues, and Dr. Pablo Stewart, a psychiatrist with extensive experience in prison psychiatry, have testified to the relationship between CDCR's extraordinarily high suicide rate and overcrowding.

Dr. Haney explained the nexus between overcrowding-related dysfunction and its impact on suicide rates within prisons. Exhibit CC at 36, Mello Dec. [Docket 3114]. According to Dr. Haney, a nationwide study of prison suicides evaluated the effects of deprivation and overcrowding on suicide rates and concluded that the probability of suicide increases dramatically as overcrowding increases in prison systems. *Id*. According to Dr. Haney, overcrowded prisons systems often respond to an influx of unprecedented numbers of prisoners by reducing the amount of screening, monitoring and managing that they perform, all problems that were identified in the *Coleman* Special Master's Suicide Reports as the type of inadequate treatment or intervention that led to his conclusion that the vast majority of the suicides were "foreseeable and/or preventable." Ex. CC at 34-35, Mello Dec.; Docket 3030 at 9-10; Docket 2566 at 9-10. Dr. Haney also noted that although national prison suicide rates dropped to 14 per 100,000 in 2000, even with "specific orders of the *Coleman* court and the

-8-

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

ongoing intervention of the *Coleman* Special Master, California's prison suicide rate has not seen a similar drop." Ex. CC at 55.

In discussing the Special Master's review of the CDCR suicides, Dr. Haney stated that:

> A number of the inadequacies in treatment that the Special Master identified appear to be the direct result of the severe overcrowding-related problems from which the CDCR continues to suffer. Thus, the failure to reschedule appointments, respond to referrals, review medical records, reassess treatment compliance, employ appropriate levels of care, and conduct required five-day clinical follow-ups all represent the kind of poor quality of care that comes about in understaffed, overpopulated prison systems.

Ex. CC at 187-188.

Dr. Haney stated that the crisis in the availability of MHCBs, which was identified as a problem directly implicated in the Special Master's November 26, 2007 Suicide Report, "has become increasingly problematic…the Special Master's analysis illustrates a clear nexus between overcrowding-related dysfunction, decreased quality of overall mental health care, and an extreme and tragic set of mental health outcomes." Ex. CC at 188-89.

Plaintiffs' expert, Dr. Pablo Stewart, is a clinical and forensic psychiatrist who has worked extensively as a consultant and expert in jail and prison facilities in California and other states. Ex. V at Mello Dec. Dr. Stewart submitted two reports, and in both reports he discussed the impact of overcrowding on suicide rates. Ex V. and Ex. U, Mello Dec.. Dr. Stewart was deposed twice. Defendants failed to mention Dr. Stewart's reports or his deposition testimony in their motion in limine.

In his November 9, 2007 report, Dr. Stewart opined that:

> [O]vercrowding increases both the prevalence and the severity of mental illness. Put another way, overcrowding both creates new mental illness and makes existing mental illness worse. Since many or most suicides are due to the presence of severe mental illness or the onset of a severe mental health crisis, it is clinically reasonable to anticipate a higher suicide rate in an overcrowded system. Another way to think about the correlation between overcrowding and suicide rates is to see overcrowding as a broad environmental factor increasing the risk of suicides by creating a larger class of at-risk individuals.

-9-
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

Ex U at 76.

In his August 15, 2008 Report, Dr. Stewart discussed a suicide that illustrated the consequences of an overcrowded and overburdened system, where prisoners are placed in alternative placements and delayed access to higher levels of care. Ex. V at 53, Mello Dec. The suicide occurred on March 18, 2008 at Correctional Training Facility (CTF) in an unlicensed infirmary. The patient had been admitted to the infirmary after being found unresponsive in his administrative segregation cell due to a suspected drug overdose, with dried blood on his wrist. *Id.* Although he was recommended for transfer to an MHCB, he was never referred by infirmary staff. In addition, although he was noted to be a "high suicide risk," he was observed at one hour rounding rather than cell front on suicide watch or on 15-minute watches. *Id*. The next day, he hung himself with a noose made out of torn pieces of a towel. The CDCR Suicide Report reflects that staff was confused about the correct suicide observation standards that should have been followed. *Id*.

### C. Defendants Mischaracterize the Deposition Testimony of Dr. Haney

Defendants assert that Dr. Haney's testimony during his deposition "illustrates the irrelevance of suicide rates to this case – if Plaintiffs are unable to cite to an acceptable suicide rate in a properly functioning prison mental health system, then what probative value is gained from introducing evidence about any suicide rates at California prisons?" Docket 3085 at 5.

During his testimony, Dr. Haney testified that he would expect there to be some suicides even in a constitutionally compliant mental health care system. Ex. JJ at 91:24-92:3, Mello Dec. Clearly, not all suicides are foreseeable or are preventable. Unfortunately, however, almost three-quarters of the suicides in the CDCR are in this category. Dr. Haney's straight forward testimony concerning suicide rates provides no support for defendants' motion in limine.

### D. Dr. Canning's Declaration Fails to Dispute that Evidence of Suicide Rate is Not Relevant and Probative Is An Untimely Expert Report

Defendants' motion relies on a declaration by Dr. Canning, a witness that has not been

-10-
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

previously identified as an expert witness or even a percipient witness.[5]  His declaration should not be considered in connection with this motion.

### 1. Canning Chart

In his declaration, Dr. Canning describes a chart he has created entitled "CDCR Suicide Rate, 1988 to 2007, with Inmate Population," which purports to compare CDCR's annual inmate population—not the level of overcrowding-- and the suicide rate per 100,000 inmates. Declaration of Robert Canning in Support of Motion in Limine No. 10, ¶8.  Docket 3086  He then opines that  "[t]his chart does not show a causal relationship between historical inmate population and suicide rates."  *Id.*[6]  Nor does Dr. Canning present any information about the level of overcrowding in the system, which is the issue before this Court.  The comparison of suicide rate to population level is meaningless.  This chart simply lacks any reliability as presented.

### 2. Patterson/Hughes Article

Dr. Canning also cites to a published article by *Coleman* experts, Drs. Hughes and Patterson, but only for selected points.  The article, entitled "Review of Completed Suicides in California Department of Corrections and Rehabilitation, 1999 to 2004" was a review of the 154 suicides that occurred during the six-year period of time and looked at housing, mental health status, and other demographic factors that make prisoners at risk for suicide.  The article identified recommendations and considerations for prison staff to establish and manage an effective suicide prevention program.  Dr. Canning did not attach the article to his declaration,

---

[5] See Plaintiffs' Motion To Strike Canning Declaration, filed herewith.

[6] He reports that he obtained overall CDCR census data from the CDCR website, but does not indicate which website population data he includes on his chart.  The website reports CDCR data in various categories, including total population, institutions/camps, community correctional centers, hospitals, and out of state.  Dr. Canning does not indicate in his declaration or on his chart which population data he is reporting.  Dr. Canning also does not indicate whether he has included all CDCR prisoners who committed suicide in 2007 in his total count.  In 2005, CDCR began excluding CDCR prisoners who committed suicide in DMH units in their count of suicides. Docket 2566 at 2.

-11-
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

and for good reason. The article directly refers to the level of severe overcrowding within the CDCR during the period of study: "[a]ll this took place in a state correctional system that has a design-rate capacity of 79,477 beds and an annual population average of 159,893, for the six year review period, exceeding the rated capacity by approximately 200%." Kahn Dec, **Exhibit E** at 677.

The authors also discussed the impact of overcrowding-related prison conditions on prison suicides:

> These findings regarding the importance of environmental stressors unique to prison conditions, such as isolation, punitive sanctions, severely restricted living conditions, and acquisition of new charges or imposition of unexpected sentence were consistent with previous reports.

*Id* at 678.

And among the recommendations that the authors made to correctional administrative, clinical and custody staff in establishing and managing an effective suicide prevention program was to consider the **"impact of overcrowding and staffing deficiencies."** *Id* at 681 (emphasis added).

Finally, it is important to note that in their review of the 154 suicides that occurred between 1999 and 2004, Drs. Patterson and Hughes found that only sixty percent of the suicides were either foreseeable or preventable, while in the two most recent suicide reports by the Special Master, the percent of suicides that were preventable or foreseeable has edged up even higher, to more than 70%, despite additional court-ordered remedial measures. *Id* at 679; Docket 2566 at 11; Docket 3030 at 9.

### 3. Defendants' Plan to Reduce Suicide Trends in Administrative Segregation

In his declaration, Dr. Canning states that he participated in the development of the CDCR's plan to address the escalating rates of suicides in the administrative segregation units, and at no time was overcrowding identified as the cause of the suicide rates in CDCR. Canning Dec. ¶¶ 11-12. This is patently incorrect.

Overcrowding-related problems were central to the problems that the suicide plan was

-12-

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]

designed to address, including shortages of exercise yards and staff to escort prisoners to both yard and to confidential clinical settings, and efforts to provide additional property and services to non-disciplinary prisoners backlogged in segregation units waiting for an empty bed.  As a result of overcrowding, CDCR was unable to provide basic requirements such as 10 hours a week of exercise to prisoners housed in administrative segregation.  This increased isolation and seclusion violates all applicable prison standards and increases the risk of suicide. Defendants' plan concedes that one of the reasons why CDCR cannot implement the suicide experts' recommendations (to provide separate housing for prisoners in administrative segregation for their own protection and to provide welfare checks) is "[d]ue to the Department's current housing crisis" and because it "would further strain the resources available to the Department." Kahn Dec. **Exhibit F** at 12, 13.

## CONCLUSION

The Court should deny defendants' motion for an in limine order to exclude evidence of suicide rates for the purpose of showing that overcrowding is the primary cause of the on-going constitutional violations in the in the delivery of medical and mental health care in the California prisons.  Defendants have failed to show that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, or will cause undue delay or will confuse the issues before the Court.  This evidence regarding CDCR suicides and suicide rates is relevant and probative evidence which will assist the Court in making its determinations.

Dated:  October 30, 2008

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Jane E. Kahn*
    Jane E. Kahn
    Attorney for *Coleman* Plaintiffs and on
    Behalf of *Plata* Plaintiffs

-13-
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 10 TO EXCLUDE EVIDENCE RE: SUICIDE RATE IN CALIFORNIA PRISONS, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

[249404-1]