# APPENDIX A

**MGT** OF AMERICA, INC.

## DOYLE WAYNE SCOTT

SENIOR ASSOCIATE

### RANGE OF EXPERIENCE

Mr. Scott served over 30 years with the Texas Department of Criminal Justice and the Texas Board of Pardons and Paroles. He began his career in corrections in 1972 as a correctional officer and progressed through the ranks to serve as Executive Director of the Texas Department of Criminal Justice (TDCJ). While serving as Executive Director with the TDCJ, Mr. Scott was responsible for the confinement and care of 151, 000 felony offenders, as well as for the supervision of 518,000 offenders on probation or parole; he led an agency of more than 40,000 employees and administered an annual budget of $2.3 billion. He initiated major reforms in the management of purchasing, construction, and contract operations and in the management of the agency's finances. Mr. Scott also instituted aggressive new policies to ensure equal employment opportunity, cultural diversity, and the elimination of sexual harassment in the workplace, and has created an Advisory Council on Ethics to increase staff awareness of ethical issues and to facilitate the practice of ethical behavior by all of the agency's employees.

During his tenure Mr. Scott actively pursued accreditation for the department's confinement facilities from the American Correctional Association. He introduced several innovative treatment programs, most notably the Inner Change Freedom Initiative, which was begun in 1996 as the first faith-based pre-release program in a penal institution in the United States. He also began a cooperative effort with a number of local communities statewide to build Habitat for Humanity homes with volunteer offender labor and to produce 2.5 million pounds of food grown on prison agricultural lands that was donated to local Texas food banks.

The State of Texas and the Texas Board of Criminal Justice honored Mr. Scott for his service to the state by dedicating and naming a Texas prison for him in February 2002.

### PROFESSIONAL AND BUSINESS HISTORY

MGT of America, Inc., Senior Associate, July 2004 - Present.

Correctional Consultant, May 2002 - June 2004.

Management & Training Corporation, Vice President, International Operations, 2001 - 2002.

Texas Board of Pardons & Paroles, Board Member, 2001.

Texas Dept. of Criminal Justice, Executive Director, 1996-2001; Institutional Division Director, 1994 - 1996; Deputy Director of Operations, 1989-1994; Regional Director, 1984 - 1989; Senior Warden-Ellis II, February - June 1984; Assistant Warden-Ellis I, January - February 1984; Major of Correctional Officers, 1983 - 1984; Captain of Correctional Officers, 1974 - 1983; Lieutenant of

**YEARS OF EXPERIENCE:**

30+

**EDUCATION:**

B. A., Business Administration-Finance, Sam Houston State University, Huntsville, Texas, 1973

A. A., Navarro Junior College, Corsicana, Texas, 1971

**AWARDS:**

Texas Corrections Association - President's Gavel Award

Texas Public Employees Association - State Agency Administrator of the Year

Sam Houston State University - Distinguished Alumni

Texas Corrections Association - Dr. George Beto Hall of Honor Award

Teague High School - Distinguished Alumni

*Additional Information Available on Request*

Correctional Officers, 1973 - 1974; Sergeant of Correctional Officers, 1972 - 1973; Correctional Officer, January 1972.

## PROFESSIONAL AND BUSINESS EXPERIENCE

Consultant on a team hired by the Oklahoma state legislature to examine all operational and procedural aspects of all areas of responsibility managed by the Oklahoma Department of Corrections. The project commenced in June 2007 and is scheduled for completion in December 2007.

Consultant on a two-man team hired by the National Institute for Corrections at the request of the Commissioner of the Indiana Department of Correction to provide an external, independent review of the investigation into the causes and response to a disturbance at the New Castle Correctional Facility in April 2007.

Consultant on an agency-wide operational analysis for the Florida Department of Corrections. MGT contracted with the Florida Department of Corrections to provide an agency-wide operational analysis with recommendations for retooling specific areas that might not have been operating effectively, efficiently, in compliance with procedures or within the bounds of the law. Areas reviewed included the Inspector General's Office, contracting processes, personnel issues, security and institutions, and community corrections. MGT was able to accommodate the department's aggressive sixty-day schedule for delivery of the final report by mobilizing staff from different offices that have extensive corrections experience.

MGT OF AMERICA, INC.

## PROFESSIONAL AND BUSINESS EXPERIENCE *(cont'd)*

Consultant on an assessment of the New Mexico Department of Correction's policies, procedures, and practices as they relate to the deployment of its correctional staff. The review included an assessment of the application of roster management procedures at two representative institutions within the Department. The project objective focused on enhancing the efficiency and effectiveness of the deployment of security staff and to determine if the use of overtime could be reduced.

Consultant on a project for the Cook County Judicial Advisory Council to develop an approach to assessing security staffing needs at the Cook County (Chicago, Illinois) Jail. The jail houses over 10,000 offenders on a daily basis, employs 2,400 officers, and is the largest single-site jail facility in the United States. MGT met with key policymakers, reviewed the jail's physical plant, and assessed jail operating policies. MGT reviewed current officer deployment patterns as well as facility operating systems and procedures. The project team also assessed security issues associated with the facility's physical plant and operational practices. The project produced a detailed work plan for a definitive study of Cook County Jail staffing needs.

Consultant on a correctional staffing analysis for the Indiana Department of Corrections. The objective of the study was to identify the optimum number of staff required to operate two Indiana DOC facilities safely and efficiently and to complete on-site training to IDOC staff in the process utilized to determine the optimum staffing level of a correctional facility. With submission of the final report MGT delivered a staffing analysis for the two facilities, in addition to specific recommendations on how the IDOC could improve the processes utilized to determine the optimum staffing complement required to operate its correctional facilities.

Consultant on a staffing analysis for the Kentucky Department of Corrections, through a grant from the Training Resource Center of Eastern Kentucky University. The analysis targeted three selected institutions within the Department of Corrections in order to determine the optimum number of staff required to operate these facilities in a safe and efficient manner. MGT issued a final report on its findings and recommendations and projected the potential for additional savings if its findings were implemented department-wide.

Consultant on a comprehensive review of the Puerto Rico prison system focusing on security and staffing assessments. This study was conducted for a federal district judge who was overseeing the prison system because of constitutional violations of the rights of inmates. Since that study, MGT has been hired by the prison system to help implement the recommendations.

Directed a team of experts that examined the staffing at every Texas prison and established the base staffing requirements that is used by the agency today.

Served over 30 years with the Texas Department of Criminal Justice and the Texas Board of Pardons and Paroles.

Began his career in corrections in 1972 as a correctional officer and progressed through the ranks to serve as Director of the Texas Department of Criminal Justice until 1996.

## PROFESSIONAL MEMBERSHIP

American Correctional Association
*Vice Chair, Standards Committee*
*Member, Policies and Resolutions Committee*

Association of State Correctional Administrators
*Chairman, Legislative and Legal Issues Committee*
*Member, Standards Committee*
*Member, Substance Abuse Committee*
*Member, Controlling the Difficult to Manage Inmate Committee*

Southern States Correctional Association

Texas Corrections Association
*Chair, Training and Certification Committee*

Texas Public Employees Association

Law Enforcement and Corrections Technology Advisory Committee

## COMMUNITY ACTIVITIES

Texas Corrections Association - President's Gavel Award

Texas Public Employees Association - State Agency Administrator of the Year

Sam Houston State University - Distinguished Alumni

Texas Corrections Association - Dr. George Beto Hall of Honor Award

Teague High School - Distinguished Alumni

# APPENDIX B

List of documents reviewed by Doyle Wayne Scott

Governor Schwarzenegger's Proclamation Regarding Prison Overcrowding, State of Emergency (October 4, 2006)

Photographs from the CDCR website, www.cdcr.ca.gov

CDCR's Inmate Population, Rehabilitation, and Housing Management Plan.

Finding of Fact and Conclusions of Law re Appointment of Receiver, *Plata v. Schwarzenegger*, October 3, 2005

Corrections Independent Review Panel, "Reforming Corrections," June 2004, Chapter 7, Inmate/Parolee Population Management.

Memorandum written by John Dovey, entitled " Memorandum Re: Modification to Correctional Operations Due to Compelling Operational Need," dated October 25, 2006

Dr. Peter Farber-Szekrenyi's Letter to Robert Sillen and J. Michael Keating, Jr., dated September 1, 2006.

Statement of CDCR Acting Secretary James Tilton on the Legislature's Failure to Act on Critical Prison Reform Legislation, issued September 1, 2006

Office of the Inspector General, "Accountability Audit, Review of the Audits of the California Department of Corrections and Rehabilitation Adult Operations and Adult Programs, 2000-2004," April 2006.

California Department of Corrections (CDCR) Spring 2007 Adult Population Projections.

Senate Budget and Fiscal Review Committee Subcommittee No.4, Agenda of April 12, 2007.

Senate Budget and Fiscal Review Committee Subcommittee No.4, Agenda May 9, 2007.

Dr. Joan Petersilia, "Understanding California Corrections," printed on May 29, 2007. Petersillia, Joan, Understanding California Corrections, California Policy Research Center, University of California (May 2006) (http://www.ucop.edu/cprc/documents/understand_ca_corrections.pdf)

Declaration of Scott Kernan in Opposition to Writ of Mandate, California Correctional Peace Officers' Organization v. Schwarzenegger, No. 06CS0168 (Sacramento Superior

Ct.), filed January 19, 2007.

Plata Defendants' Report in Response to the Court's February 15, 2007 Order, May 16, 2007, with supporting Declaration of Scott Kernan.

California State Sheriffs' Association, "Do the Crime, Do the Time? Maybe Not, in California: Jail Cell Shortage is Upsetting the Balance," June 2006.

Transcript of Proceedings, December 20, 2006, *Madrid v. Woodford*, No. C 90-3094 THE

California Department of Corrections, Fall 2007 Adult Populations Projections: 2008-2013

Weekly Population Report as of midnight, October 31, 2007

18th Report of the *Coleman v. Schwarzenegger* Special Master on the Defendant's Compliance with Provisionally Approved Plans, Policies and Protocols (without exhibits)

Special Master's Response to Court's May 17, 2007 Request for Information, *Coleman v. Schwarzenegger*, May 31, 2007

California State Auditor, High Risk: The California State Auditor's Initial Assessment of High-Risk Issues the State and Select State Agencies Face, May 2007

Receiver's Report Re Overcrowding, May 15, 2007, and selected Exhibits:

> CDCR Inmate Population Table 6/30/1997 - 4/40/2007. (Exhibit 2)

> Independent Review Panel Report on Reforming Corrections, Section 7: "Inmate/Parolee Population Management. (Exhibit 3)

> January 2007 Little Hoover Commission Report, "Solving California's Corrections Crisis: Time is Running Out". (Exhibit 4)

> CDCR Facilities Master Plan 1993-1998 - August 12, 1994. (Exhibit 5)

> CDCR Facilities Master Plan 1995-2000 - August 24, 1995. (Exhibit 6)

> CDCR Facilities Master Plan 1998-2003 - February 23, 1998. (Exhibit 7)

> CDCR Inmate Movement Table January 1, 2007 - January 31, 2007. (Exhibit 10)

CDCR Inmate Movement Table February 1, 2007 - February 28, 2007. (Exhibit 11)

CDCR Inmate Movement Table March 1, 2007 - March 31, 2007. (Exhibit 12)

Bed Conversions Occurring from Fiscal Year 2/03 to 6/07. (Exhibit 13)

March 30, 2007 Memorandum Re Emergency Revision of the April 2007 Institution Activation Schedules and Issuance of May 2007 Institution Activation Schedule. (Exhibit 14)

March 30, 2007 Memorandum re Conversion of CSP-LAC Facility D to a Reception Center. (Exhibit 15)

March 30, 2007 Memorandum re Conversion of Centinela State Prison Level III to a Level IV. (Exhibit 16)

CDCR Prototypical Prison Policy Design Criteria. (Exhibit 17)

Assembly Bill 900 Table. (Exhibit 24)

Receiver's Supplemental Report Re Overcrowding, *Plata v. Schwarzenegger,* June 11, 2007

Receiver's Sixth Quarterly Report, *Plata v. Schwarzenegger*, September 25, 2007

# APPENDIX C

Vernon's Texas Statutes and Codes Annotated Currentness
    Government Code (Refs & Annos)
        Title 4. Executive Branch (Refs & Annos)
            Subtitle G. Corrections
                📖 Chapter 499. Population Management; Special Programs (Refs & Annos)
                    📖 Subchapter E. Unit and System Capacity
                        → § 499.101. Existing Units

(a) The maximum capacities for the units in the institutional division are as follows:

| | |
|---|---:|
| Beto I.................... | 3,000 |
| Beto II.................... | 888 |
| Boyd.................... | 1,012 |
| Briscoe.................... | 1,012 |
| Central.................... | 720 |
| Clemens.................... | 851 |
| Clements.................... | 2,200 |
| Coffield.................... | 3,000 |
| Daniel.................... | 1,012 |
| Darrington.................... | 1,610 |
| Diagnostic.................... | 1,365 |
| Eastham.................... | 2,050 |
| Ellis I.................... | 1,900 |
| Ellis II.................... | 2,260 |
| Ferguson.................... | 2,100 |
| Gatesville.................... | 1,571 |
| Goree.................... | 1,058 |
| Hightower.................... | 1,012 |
| Hilltop.................... | 761 |
| Hobby.................... | 1,012 |
| Hughes.................... | 2,264 |
| Huntsville.................... | 1,705 |
| Jester I.................... | 323 |
| Jester II.................... | 378 |
| Jester III.................... | 908 |
| Lewis.................... | 1,012 |
| McConnell.................... | 2,264 |
| Michael.................... | 2,264 |
| Mountain View.................... | 718 |
| Pack I.................... | 864 |
| Pack II.................... | 1,088 |
| Panpa.................... | 1,012 |
| Ramsey I.................... | 1,400 |
| Ramsey II.................... | 850 |
| Ramsey III.................... | 1,000 |
| Retrieve.................... | 770 |
| Roach.................... | 1,012 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| Robertson.................... | 2,264 |
| Smith.................... | 1,012 |
| Stiles.................... | 2,264 |
| Terrell.................... | 2,264 |
| Torres.................... | 1,012 |
| Wynne.................... | 2,300 |

(b) It is the intent of the legislature that as case law evolves and indicates that maximum capacities established under Subsection (a) may be increased, the staff of the institutional division shall use the procedures established by this subchapter to increase those capacities. There shall be no cause of action against the institutional division for failure to take action under this subsection.

### § 499.102. Staff Determinations and Recommendations

(a) The staff of the institutional division, on its own initiative or as directed by the governor or the board, may recommend to the administration of the institutional division that the maximum capacity established under Section 499.101 for a unit be increased if the staff determines through written findings that the division can increase the maximum capacity and provide:

(1) proper inmate classification and housing within the unit that is consistent with the classification system;

(2) housing flexibility to allow necessary repairs and routine and preventive maintenance to be performed without compromising the classification system;

(3) adequate space in dayrooms;

(4) all meals within a reasonable time, allowing each inmate a reasonable time within which to eat;

(5) operable hygiene facilities that ensure the availability of a sufficient number of fixtures to serve the inmate population;

(6) adequate laundry services;

(7) sufficient staff to:

(A) meet operational and security needs;

(B) meet health care needs, including the needs of inmates requiring psychiatric care, mentally retarded inmates, and physically handicapped inmates;

(C) provide a safe environment for inmates and staff; and

(D) provide adequate internal affairs investigation and review;

(8) medical, dental, and psychiatric care adequate to ensure:

(A) minimal delays in delivery of service from the time sick call requests are made until the service is performed;

(B) access to regional medical facilities;

(C) access to the institutional division hospital at Galveston or contract facilities performing the same services;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(D) access to specialty clinics; and

(E) a sufficient number of psychiatric inpatient beds and sheltered beds for mentally retarded inmates;

(9) a fair disciplinary system that ensures due process and is adequate to ensure safety and order in the unit;

(10) work, vocational, academic, and on-the-job training programs that afford all eligible inmates with an opportunity to learn job skills or work habits that can be applied on release, appropriately staffed and of sufficient quality;

(11) a sufficient number and quality of nonprogrammatic and recreational activities for all eligible inmates who choose to participate;

(12) adequate assistance from persons trained in the law or a law library with a collection containing necessary materials and space adequate for inmates to use the law library for study related to legal matters;

(13) adequate space and staffing to permit contact and noncontact visitation of all eligible inmates;

(14) adequate maintenance programs to repair and prevent breakdowns caused by increased use of facilities and fixtures; and

(15) space and staff sufficient to provide all the services and facilities required by this section.

(b) The staff of the institutional division shall request of the Legislative Budget Board an estimate of the initial cost of implementing the increase in capacity and the increase in operating costs of the unit for the five years immediately following the increase in capacity. The Legislative Budget Board shall provide the staff with the estimates, and the staff shall attach a copy of the estimates to the recommendations.

(c) The staff of the institutional division may not take more than 90 days from the date the process is initiated to make recommendations on an increase in the maximum capacity for a unit under this section.

## § 499.103. Notice to Inmates

(a) The director of the institutional division shall prominently display in areas accessible to inmates housed in a unit for which the staff has recommended an increase in capacity copies of the recommendation and findings accompanying the recommendation.

(b) The board shall establish a process by which inmates may comment on the recommendations and ensure that a written summary of inmate comments is available to each individual or entity that makes a determination under this subchapter.

## § 499.104. Officers' Review and Recommendation

The executive director of the department, the director of the institutional division, the deputy director for operations, the deputy director for finance, the deputy director for health services, and the assistant director for classification and treatment shall independently review staff recommendations for an increase in the maximum capacity of a unit and the written findings accompanying the recommendation. Not later than the 30th day after the date of accepting the comments of the other officers, if the executive director agrees that the new maximum capacity for the unit is supported by the findings, the executive director shall forward the recommendation and findings to the board.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## § 499.105. Board Review and Recommendation

The board shall review the recommendation and findings forwarded to the board under Section 499.104. Not later than the 60th day after the date the board receives the recommendation and findings, the board shall reject the recommendation or accept or modify the recommendation and forward the recommendation or modified recommendation and findings to the governor. The board may not modify the recommendation by increasing the maximum capacity specified in the recommendation.

## § 499.106. Governor's Review and Recommendation

The governor shall review the recommendation and findings forwarded to the governor under Section 499.105. The governor shall determine whether population pressures otherwise making an increase in maximum capacity necessary may instead be ameliorated by other measures, including the use of community corrections programs. Not later than the 30th day after the date the governor receives the recommendation and findings, the governor shall reject the recommendation or accept the recommendation and forward the recommendation and findings to the attorney general.

## § 499.107. Attorney General Review; Board Decision

(a) The attorney general shall review the recommendation and findings forwarded to the attorney general under Section 499.106 to determine whether the institutional division may confine the number of inmates permitted under the recommended new maximum capacity and be in compliance with state and federal law. In conducting the review under this section, the attorney general may request additional information from the institutional division and conduct on-site inspections of the institutional division. Not later than the 30th day after the date the attorney general receives the recommendation and findings, the attorney general shall approve or disapprove the recommendations and findings. If the attorney general approves the recommendations and findings, the attorney general shall notify the board of the approval, and on receiving the approval the board may establish a new maximum capacity for the unit. The attorney general may make the approval conditional and subject to further monitoring by the attorney general. The maximum capacity of a unit may not be increased if the attorney general determines that the increase would violate state or federal law.

(b) The institutional division may request that the board increase or decrease the new maximum capacity of a unit, but the board may not increase the new maximum capacity without following all procedures required by Sections 499.102-499.106 and by Subsection (a), and except as provided by Subsection (c) may not decrease the new maximum capacity without following the procedures required by Sections 499.103-499.106.

(c) The board may decrease a new maximum capacity without following the procedures listed in Subsection (b) only for the purposes of allowing single-celling flexibility or to repair minor structural deficiencies, provided that the decrease does not continue in effect for longer than 60 days.

## § 499.108. Capacity for New Units

(a) Before construction begins on a unit of the institutional division for which construction was not approved before January 1, 1991, the board shall establish a maximum capacity for the unit.

(b) Maximum capacity for a unit must be established under this section in the same manner as maximum capacity for a unit is increased under Sections 499.102, 499.104, 499.105, 499.106, and 499.107, except that time limits on official actions imposed by those sections do not apply.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c) This section does not apply to a 2,250-bed (Michael-type) unit or a 1,012-bed (Daniel-type) unit, approved on or after January 1, 1991, unless the design for the unit is significantly altered or space in the unit is reduced.

## § 499.109. System Capacity

(a) The inmate population of the institutional division may not exceed 100 percent of the combined capacities of each unit in the division, as determined by this subchapter.

(b) The attorney general may authorize the institutional division to increase the inmate population of the division above 100 percent, but only if:

(1) the staff determines through written findings that the population may be increased without limiting the ability of the division to transfer inmates between units as necessary for classification, medical, and security purposes; and

(2) the administration of the department, the board, and the governor approve of the increase, in the same manner as increases in capacity of individual units are approved under Sections 499.104, 499.105, and 499.106.

(c) If the attorney general authorizes the institutional division to increase the inmate population of the division above 100 percent, the institutional division shall distribute the additional admissions permitted by the increase among counties or groups of counties in the same manner as regular admissions are distributed under the allocation formula.

## § 499.110. Administrative Procedure Act

Subchapter B, Chapter 2001, [FN1] applies to all reviews, recommendations, and decisions made under Sections 499.102-499.109.

[FN1] V.T.C.A., Government Code § 2001.021 et seq.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

V.T.C.A., Government Code § 501.111                                                                  Page 1

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code (Refs & Annos)
    Title 4. Executive Branch (Refs & Annos)
      Subtitle G. Corrections
        ⌐☰  Chapter 501. Inmate Welfare (Refs & Annos)
          ⌐☰  Subchapter D. Inmate Housing
            → § 501.111. Temporary Housing

(a) Except as provided by Subsection (b) and Subsection (c), the institutional division may not house inmates in tents, cellblock runs, hallways, laundry distribution rooms, converted dayroom space, gymnasiums, or any other facilities not specifically built for housing.

(b) Temporary housing may be used to house roving inmate construction crews and inmates temporarily displaced only because of housing renovation, fire, natural disaster, riot or hostage situations, if the institutional division provides those inmates with reasonable sanitary hygiene facilities.

(c) The institutional division may house inmates in tents or tent-like structures unless prohibited by federal law or a specific court order.


CREDIT(S)

Added by Acts 1991, 72nd Leg., ch. 655, § 3, eff. June 16, 1991. Amended by Acts 1993, 73rd Leg., ch. 845, § 1, eff. June 19, 1993.

LIBRARY REFERENCES

2004 Main Volume

    Prisons ☜⤳ 17(1).
    Westlaw Topic No. 310.
    C.J.S. Prisons and Rights of Prisoners §§ 55, 59, 63 to 66, 68 to 69, 71 to 72, 76 to 90, 124, 129.

V. T. C. A., Government Code § 501.111, TX GOVT § 501.111

Current through the end of the 2007 Regular Session of the 80th Legislature

(c) 2007 Thomson/West
END OF DOCUMENT


© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

V.T.C.A., Government Code § 501.112                                                      Page 1

C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code (Refs & Annos)
    Title 4. Executive Branch (Refs & Annos)
      Subtitle G. Corrections
        Chapter 501. Inmate Welfare (Refs & Annos)
          Subchapter D. Inmate Housing
           → **§ 501.112. Mixing Classifications Prohibited**

(a) Except as provided by Subsection (b), the institutional division may not house inmates with different custody classifications in the same cellblock or dormitory unless the structure of the cellblock or dormitory allows the physical separation of the different classifications of inmates.

(b) If an appropriate justification is provided by the unit classification committee or the state classification committee, the board may permit the institutional division to house inmates with different custody classifications in the same cellblock or dormitory, but only until sufficient beds become available in the division to allow the division to house the inmates in the manner required by Subsection (a) and in no event for more than 30 days.

CREDIT(S)

Added by Acts 1991, 72nd Leg., ch. 655, § 3, eff. June 16, 1991.

LIBRARY REFERENCES

2004 Main Volume

    Prisons ☞ 13(5).
    Westlaw Topic No. 310.
    C.J.S. Prisons and Rights of Prisoners § § 20 to 21, 25 to 27.

V. T. C. A., Government Code § 501.112, TX GOVT § 501.112

Current through the end of the 2007 Regular Session of the 80th Legislature

(c) 2007 Thomson/West
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

V.T.C.A., Government Code § 501.113                                                                 Page 1

C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code (Refs & Annos)
    Title 4. Executive Branch (Refs & Annos)
      Subtitle G. Corrections
        📖 Chapter 501. Inmate Welfare (Refs & Annos)
          📖 Subchapter D. Inmate Housing
           ➡ **§ 501.113. Triple-Celling Prohibited; Single-Celling Required for Certain Inmates**

(a) The institutional division may not house more than two inmates in a cell designed for occupancy by one inmate or two inmates.

(b) The institutional division shall house the following classes of inmates in single occupancy cells:

    (1) inmates confined in death row segregation;

    (2) inmates confined in administrative segregation;

    (3) inmates assessed as mentally retarded and whose habilitation plans recommend housing in a single occupancy cell;

    (4) inmates with a diagnosed psychiatric illness being treated on an inpatient or outpatient basis whose individual treatment plans recommend housing in single occupancy cells; and

    (5) inmates whose medical treatment plans recommend housing in a single occupancy cell.

CREDIT(S)

Added by Acts 1991, 72nd Leg., ch. 655, § 3, eff. June 16, 1991.

LIBRARY REFERENCES

2004 Main Volume

    Prisons ⟸ 13(5).
    Westlaw Topic No. 310.
    C.J.S. Prisons and Rights of Prisoners §§ 20 to 21, 25 to 27.

V. T. C. A., Government Code § 501.113, TX GOVT § 501.113

Current through the end of the 2007 Regular Session of the 80th Legislature

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c) 2007 Thomson/West
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.