1   JONES & MAYER
    Martin J. Mayer (SB # 73890)
2   Michael R. Capizzi (SB # 35864)
    Kimberly Hall Barlow (SB # 149902)
3   Ivy M. Tsai (SB # 223168)
    3777 North Harbor Boulevard
4   Fullerton, California 92835
    (714) 446-1400; Fax (714) 446-1448
5   e-mail: mjm@jones-mayer.com
    e-mail: mrc@jones-mayer.com
6   e-mail: khb@jones-mayer.com
    e-mail: imt@jones-mayer.com
7
    Attorneys for Intervenor-Defendants
8   SAN DIEGO COUNTY SHERIFF WILLIAM B.
    KOLENDER, ORANGE COUNTY SHERIFF-
9   CORONER SANDRA HUTCHENS, PLACER
    COUNTY SHERIFF EDWARD N. BONNER,
10  BUTTE COUNTY SHERIFF-CORONER PERRY
    L. RENIFF, CALAVERAS COUNTY SHERIFF
11  DENNIS DOWNUM, LOS ANGELES COUNTY
    SHERIFF LEE BACA, SANTA CLARA COUNTY
12  SHERIFF LAURIE SMITH, SAN BENITO COUNTY
    SHERIFF CURTIS HILL, STANISLAUS COUNTY
13  SHERIFF ADAM CHRISTIANSON, MENDOCINO
    COUNTY SHERIFF TOM ALLMAN, TEHAMA
14  COUNTY SHERIFF CLAY PARKER, LASSEN
    COUNTY SHERIFF STEVE WARREN, YOLO
15  COUNTY SHERIFF ED PRIETO, SANTA BARBARA
    COUNTY SHERIFF BILL BROWN, KERN COUNTY
16  SHERIFF DONNY YOUNGBLOOD, SAN MATEO
    COUNTY SHERIFF GREG MUNKS, YUBA COUNTY
17  SHERIFF STEVE DURFOR, CONTRA COSTA
    COUNTY SHERIFF WARREN RUPF,
18  SHASTA COUNTY SHERIFF TOM BOSENKO,
    RIVERSIDE COUNTY SHERIFF STANLEY SNIFF JR.,
19  VENTURA COUNTY SHERIFF BOB BROOKS,
    SOLANO COUNTY SHERIFF GARY R. STANTON,
20  SAN LUIS OBISPO COUNTY SHERIFF PAT HEDGES,
    SUTTER COUNTY SHERIFF JIM DENNEY,
21  LAKE COUNTY SHERIFF ROD MITCHELL,
    GLENN COUNTY SHERIFF LARRY JONES,
22  TUOLUMNE COUNTY SHERIFF JIM MELE,
    FRESNO COUNTY SHERIFF MARGARET MIMS,
23  MONTEREY COUNTY SHERIFF MIKE KANALAKIS,
    MONO COUNTY SHERIFF RICHARD SCHOLL,
24  HUMBOLDT COUNTY SHERIFF GARY PHILP,
    EL DORADO COUNTY SHERIFF JEFF NEVES,
25  MERCED COUNTY SHERIFF MARK PAZIN,
    DEL NORTE COUNTY SHERIFF DEAN WILSON,
26  SAN JOAQUIN COUNTY SHERIFF STEVE MOORE,
    AMADOR COUNTY SHERIFF MARTIN RYAN,
27  INYO COUNTY SHERIFF WILLIAM LUTZE,
    STANISLAUS COUNTY CHIEF PROBATION OFFICER
28  JERRY POWERS, VENTURA COUNTY CHIEF

DECLARATION OF WITNESS  RICK DOSTAL

1  PROBATION OFFICER KAREN STAPLES,
   SOLANO COUNTY CHIEF PROBATION OFFICER
2  ISABELLE VOIT, SANTA BARBARA COUNTY
   CHIEF PROBATION OFFICER PATRICIA STEWART,
3  BUTTE COUNTY CHIEF PROBATION OFFICER JOHN
   WARDELL, SAN LUIS OBISPO COUNTY CHIEF
4  PROBATION OFFICER KIM BARRETT, CONTRA
   COSTA COUNTY CHIEF PROBATION OFFICER
5  LIONEL CHATMAN, INYO COUNTY CHIEF
   PROBATION OFFICER JIM MOFFETT,
6  SHASTA COUNTY CHIEF PROBATION
   OFFICER BRIAN RICHART, YOLO COUNTY
7  CHIEF PROBATION OFFICER DON MEYER,
   FRESNO COUNTY CHIEF PROBATION OFFICER
8  LINDA PENNER, MARIPOSA COUNTY CHIEF
   PROBATION OFFICER GAIL NEAL, CITY OF
9  WHITTIER POLICE CHIEF DAVE SINGER,
   CITY OF ROSEVILLE POLICE CHIEF JOEL NEVES,
10 CITY OF PASADENA POLICE CHIEF BARNEY
   MELEKIAN, CITY OF ALHAMBRA POLICE
11 CHIEF JIM HUDSON, CITY OF FREMONT
   POLICE CHIEF CRAIG STECKLER, CITY OF
12 GROVER BEACH POLICE CHIEF JIM COPSEY,
   CITY OF SANTA CLARA POLICE CHIEF STEVE
13 LODGE, CITY OF VACAVILLE POLICE CHIEF
   RICH WORD, CITY OF WOODLAND POLICE CHIEF
14 CAREY SULLIVAN, CITY OF SONORA POLICE CHIEF
   MACE McINTOSH, CITY OF PASO ROBLES POLICE
15 CHIEF LISA SOLOMON, CITY OF SAN BERNARDINO
   POLICE CHIEF MICHAEL BILLDT, CITY OF
16 ATWATER POLICE CHIEF RICHARD HAWTHORNE,
   NATIONAL CITY POLICE CHIEF ADOLFO GONZALES,
17 CITY OF DELANO POLICE CHIEF MARK DeROSIA,
   CITY OF MODESTO POLICE CHIEF ROY WASDEN,
18 CITY OF FRESNO POLICE CHIEF JERRY DYER, AND
   CITY OF DELANO CHIEF OF CORRECTIONS GEORGE
19 GALAZA

20          IN THE UNITED STATES DISTRICT COURTS

21        FOR THE EASTERN DISTRICT OF CALIFORNIA

22          AND THE NORTHERN DISTRICT OF CALIFORNIA

23  UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

24    PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

25

26  RALPH COLEMAN, et al.,          Case No: CIV S-90-0520 LKK JFM P

27       Plaintiffs,                **THREE-JUDGE COURT**

28
                              -2-

vs.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

[F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)]

**DECLARATION OF WITNESS RICK DOSTAL**

---

MARCIANO PLATA, et al.,

Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

Case No.: C01-1351 TEH

**THREE-JUDGE COURT**

I, RICK DOSTAL, hereby declare as follows:

1.     I am the Executive Director of Administrative Services for the Orange County Sheriff's Department.  In that capacity I oversee the Financial and Administrative Services Division, Communications Division, and our Research and Development Division.

2.     The Research and Development Division does all of our facility planning, design, construction, and maintenance so I am involved with the planning for not only new jail expansion but also maintenance of our jail facilities.

3.     I have a Bachelor of Science degree in Business Administration from California State University Long Beach State and a Masters degree in Business Administration from the University of California, Irvine.

4.     I began my County career in 1983 being employed by what was then called the Environmental Management Agency for the County of Orange as an intern in the budget section. I then became a full-time employee of that agency in the Management Services Division, which did various management studies and problem solving policies, procedures, and reorganization studies. In 1991, I was promoted to what is now called the

-3-

County Executive Office in the Facilities Planning Section working on public safety
facilities planning projects including jail expansion projects. In addition, I had other
budget oversight responsibilities including budget oversight of the Sheriff's budget. In
2001, I was promoted to the Sheriff's Department to be the Director of Research and
Development which does the jail planning, design, construction, and maintenance. In
2005, I was placed in charge of the Financial and Administrative Services Division for
the Sheriff's Department. In 2008, I was promoted to my current position as Executive
Director of Administrative Services for the Sheriff's Department.

5.    Orange County has five facilities in our jail system. One is the central
men's jail which is located in Santa Ana. The central women's jail is attached to the
central men's jail and the Intake Release Center (IRC) is also attached to this complex.
Thus, the Orange County Sheriff's Department has three separate facilities in one
complex in Santa Ana. In addition, the Sheriff's Department operates the Theo Lacy jail
facility which is located in the City of Orange, and the James A. Musick facility, located
on unincorporated land adjacent to the cities of Irvine and Lake Forest.

6.    All arrests are booked into the Santa Ana Intake Release Center, and then
those remaining in custody are typically assigned to a different facility from there. The
James A. Musick facility is a very low security facility. It used to be an honor farm. It
has large barracks and thus, there is no real ability to separate inmates, so only the lowest
of minimum security inmates go to the James A. Musick facility. The types of arrests that
would trigger an inmate to go to the James A. Musick facility would be minor drug
charges, DUI's and the like, but excluding those who may be gang members or who are a
high risk for violence. This facility has a rated capacity of 713; however, the facility
currently has 1,256 beds. Many of the inmates work throughout the entire jail system
performing such functions as cleaning, gardening, cooking, laundry, and other non-
skilled tasks that are critical to the operations of the jail system. The County is currently
planning to build an additional 1,000 beds, which should be completed in approximately
4 years if funding is approved by the Board of Supervisors. Unfortunately, the proposed
new beds cannot be made available to new inmates, as they will be replacing existing
temporary tents and wooden barracks buildings which were originally intended to be

temporary housing for inmates.   The construction cost of replacing the 1,000 beds which are included in this project is approximately $150,000,000.  Given the Country's, State's and County's current financial condition, and the fact that Orange County continues to pay $80,000,000 per year in bankruptcy related debt, it will be difficult to fund this project and there are no funds available to do further jail expansion without funding from the State or federal government.

7.    Theo Lacy is a combination of maximum security, medium security and minimum security facilities for men. That facility has already been expanded, and the County is currently unable to expand it further due to a court ordered population cap. The population cap and prohibition on expansion which applies to Theo Lacy was ordered on July 21, 1995, as part of a stipulated judgment in a legal challenge brought by the City of Orange against the County of Orange regarding the expansion of the Theo Lacy facilities, City of Orange v. Orange County Sheriff-Coroner's Department, Los Angeles Superior Court Case Number BS029472.  The population cap imposed by this order limits the facility to 2,986 inmates except in defined emergencies or unusual circumstances set out in the order.   The number of maximum security inmates may never exceed 1,152.  Emergency or unusual circumstances would allow no more than an additional 396 inmates to be housed at Theo Lacy not to exceed sixty (60) days for each such emergency.

8.    The Men's Central Jail was previously operating under a population cap which was lifted in April 2005, and the Ninth Circuit approved the order eliminating the population cap in May 2008.  In part, the population cap was able to be eliminated due to facilities expansions at the Theo Lacy facility.

9.    The entire jail system has a rated capacity of 5,079.  In 2007, the average daily inmate population was 6,554.  The jail facilities are overcrowded.  We continue to use alternatives such as diversion to drug programs, community work programs, drug court, homeless court, and related alternatives to incarceration as a means of reducing the number of inmates in the County system.  These alternatives to incarceration allow us to take the people who least need to be incarcerated and put them in alternative settings or programs, leaving room for more serious criminals. However, because Musick is a

DECLARATION OF WITNESS  RICK DOSTAL

1  minimum security facility, it is not capable of housing serious criminals which makes it

2  difficult to safely manage such a large inmate population of serious criminals.

3       10.  A major influx of high risk offenders would substantially impact both the

4  population mix and the costs of maintaining the system for the County of Orange and the

5  Sheriff's Department.  It would also jeopardize our ability to continue providing

6  programming to our jail inmates to assist them upon release and would result in the early

7  release of inmates.

8       11  In the past, prior to the expansion of available facilities for housing jail

9  inmates in the County, early release was used much more heavily than currently.  Data

10  compiled by the Orange County Sheriff's Department to support the Theo Lacy Facility

11  expansion for the years 1994 through 1996 demonstrated that 3,240 inmates who were

12  released early due to court imposed population caps and overcrowding conditions in

13  Orange County jails were rearrested for crimes committed during the time when they

14  should have been in custody but for the early release necessitated by the cap and

15  overcrowding.  In 1996 alone, 740 inmates were rearrested for committing additional

16  crimes during their early release period, with 335 of them arrested for committing new

17  felonies.  A true and correct copy of the Sheriff's presentation to the Board of

18  Supervisors, on July 1, 1997, containing those statistics is attached hereto as Exhibit 1

19  (LEIOCSD0001).

20       12.  Orange County has seen a dramatic shift over the past to thirty years or more

21  in the type of offenders being incarcerated in its facilities, either pre-trial or post-

22  sentence.  Years ago, approximately 30% of Orange County jail inmates were held on

23  felony charges, with the remaining 70% being misdemeanants.  The ratio today is

24  reversed; 70% to 80% of inmates are felons and the rest are misdemeanants.   Thus,

25  while there still remain viable alternatives to incarceration for some convicted

26  misdemeanants and pre-trial misdemeanants, the proportion of prisoners who are at lower

27  risk to the public has shrunk dramatically.  By using these alternatives to incarceration we

28  are able to keep those people who are more violent in the jail system which I believe

contributes to public safety.  However, if the County receives a large influx of offenders

released from state prison, and they are rearrested at the rates published by the California

Department of Corrections and Rehabilitation, Orange County's jail capacity could be taken up entirely by felons and high risk misdemeanants.

13.    Very few low end offenders have been released early in the last four to five years. In the 1990s about 20,000 inmates per year were released early because of lack of facilities. As we expanded our jail system and as the economy improved, crime rates declined, and the County was thus able to more closely match demand with bed space. However, the County is now in a similar position to that time period in terms of capacity compared to demand. The County's jails are overcrowded by 20 to 25 percent.

14.    The statewide recidivism rate is reported to be 70% percent. According to the most recent COMPAS risk assessment issued by the CDCR on or about September 16, 2008, 69% of Orange County parolees have a high to medium risk of recidivism.

15.    The Orange County Sheriff's Department currently has programs in its jails to assist county inmates upon release from jail. However, the programs are not and cannot be provided to all inmates who might be eligible for them. The programs need to be expanded. Part of the planned Musick expansion project is intended to focus on expanding our programs to more inmates by providing more class room space. The programming provided by the Sheriff's Department is currently mostly voluntary. It includes domestic violence counseling, anger management, education services, etc., and inmates are permitted to use programming available to them in Orange County's jail to satisfy court ordered programming. Inmates have repeatedly requested that we expand both the number and type of programs to help them become productive members of society upon release from custody.

16.    However, a reduction in the number of misdemeanants housed in Orange County facilities, coupled with an increase in the number of felons or felony arrestees could dramatically reduce the Department's ability to provide programming to inmates. The reasons for this are two-fold. Felons and felony arrestees typically require a higher level of security than misdemeanants. Thus, it simply takes more space and staff to provide programming services to higher risk inmates. In addition, to the extent that we must use the minimum security facilities at Musick to house more dangerous inmates, we would no longer be able to house as many inmates there, and would no longer be able to

1  use inmate labor to simultaneously reduce costs of housing these inmates and provide

2  valuable on the job training to the lowest risk inmates that they may use in obtaining

3  employment following release from incarceration.

4      17.    There is currently no available capacity in the Orange County jail for

5  inmates with mental health or medical treatment needs, as those beds are at or beyond full

6  capacity.    There are also no private facilities in the County available to absorb additional

7  inmates with mental health or medical treatment needs.

8      18.    I declare under penalty of perjury under the laws of the State of California

9  that the foregoing is true and correct. Executed this 30th day of October, 2008 at Santa

   Ana, California.

10

11

12  RICK DOSTAL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF WITNESS  RICK DOSTAL