# EXHIBIT 1 - LEIOCSD0001
# DECLARATION OF EXPERT WITNESS DOSTAL

**SHERIFF'S PRESENTATION ON
THEO LACY EXPANSION
ORANGE COUNTY BOARD OF
SUPERVISORS
JULY 1, 1997**

Slide #1

Slide #2

**Honorable Board Members, Ladies and**

**Gentleman:**

Thank you for this opportunity to present
our proposed Financial Plan for the
expansion of the Theo Lacy Facility.  In this
plan 384 maximum security jail beds will be
added by the construction of Building C at
Theo Lacy.

Before I begin this presentation I would like
to personally thank:  The County Executive
Officer Jan Mittermeier,  and her staff
members Gary Burton and Rick Dostal,
County Counsel's  Barbara Stocker, HDR's
Principal Architect  Robert Boyle and his
staff, and Patti Gorczyca of PFM and her
staff.

Slide #3

Overcrowding in the Orange County Jail system continues to be an ongoing problem that affects each and every citizen in Orange County.

In 1996 the Orange County jail system operated at 139% of it's rated capacity and currently is at 137% of it's rated capacity.

According to the Bureau of Justice Statistics, of the 15 largest jail jurisdictions in the United States, the Orange County Jail system is the 11th largest  and the most overcrowded.

Slide 4

The ongoing early release of tens of
thousands of criminals into our community
affects the safety and well being of all our
families and business locations.

Because of the lack of sufficient space in
the jails, inmates found guilty and sentenced
by the courts are routinely released early to
make room for new arrestees. **Someone
must be released before another criminal
can be accepted into the jail. In other
words, when one comes in the front door
one has to go out the back door.**

In 1996, over 32,000 criminals were cited
and released or released early because the
jail system simply did not have enough
room to keep them in custody.

***The total number of days cut from inmate's sentences, just in 1996, was the equivalent of over 428 years.***

> *156,387 days cut from inmate's sentences ÷ 365 days = 428 years.*

The old saying "You do the crime, you do the time" just doesn't hold true anymore in Orange County. Criminals are only having to serve a small portion of the sentences imposed on them by the courts. That does not include the thousands of criminals arrested by police officers in Orange County who are never brought to the county jail due to the overcrowding. Police officers who go to work everyday, put on a bullet-proof vest, and go out on the street risking their lives to keep these criminals from hurting us. Only to have the criminals released within hours, victimizing citizens again.

**Slide #5**

Some examples of the most frequent charges

for inmates released before their sentence

was up in 1996 were:

| Charge | # of Inmates |
|---|---|
| Possession/Sales of Drugs | 3,874 |
| Driving Under the Influence | 2,131 |
| Burglary | 1,337 |
| Spousal/Child Abuse | 1,332 |

> *Other Releases*
>
> *36 - Kidnapping*
>
> *160 - Robbery*
>
> *443 - ADW*

**Slide #6**

Since 1993, there were 3,240 inmates who ≈ 3 YEARS

were released early and rearrested for

committing additional crimes during the

time they should have still been in custody.


In 1996, there were 740 inmates who were

released early that were rearrested for

committing additional crimes during the

time they should have still been in jail.

**Nearly half (335) of those criminals were**

**arrested for committing new felony**

**crimes.**

FOR INSTANCE:

- Inmate was arrested for child abuse. He was released 72 days early and rearrested 2 days later for child abuse again.

- Inmate was arrested for spousal abuse. He was released 39 days early and rearrested 23 days later for spousal abuse again.

- Inmate was arrested for burglary. He was released 32 days early and rearrested 23 days later for assault with a deadly weapon.

- Inmate was arrested for possession of a controlled substance. He was released 30 days early and rearrested 5 days later for indecent exposure.

**Slide #7**

It is estimated that in 1996 it cost the

taxpayers of Orange County $2 million

dollars in court and probation costs for

the 740 criminals released early and

rearrested.   These criminals committed

those crimes during the time they should

have been in jail.

> 1996 LA County study.
>
> $ 2 million ÷ $57,000
> equals 35 jail beds.

> *The cost to have kept them in jail*
>
> *would have only been $240,000.*

> 740 early releases x 7
> days released early
> totals  14.2 years
> x  $16,800 per yeare
> =  $238,560.

A Department of Justice study found

criminals commit on average 187 crimes per

year (3.6 per week).  Based on that study,

the inmates released early in 1996 alone

were likely responsible for committing

nearly 2,700 more crimes in Orange County

when they should of still been in jail.

> 740 early releases x 3.6
> crimes per week = 2664
> crimes.

**Slide #8**

And these aren't the only costs we have to consider.   A Department of Justice study in 1996 found that *nationally*, **victim costs** totaled ***$450 billion dollars*** annually.


Victim costs include medical bills, mental health care,  personal property losses, lost earnings and productivity,  public program costs related to victim assistance, as well as the fear, pain, suffering and lost quality of life.

These are costs to society over and
above the cost to arrest, prosecute and
incarcerate law breakers.

Examples of victim costs in this
study include:

- Rape -                $ 87,000

- Robbery -             $ 8,000

- Felony Assault -      $ 9,400

- Child Abuse -         $ 60,000

*These associated costs of crime on*
*society mandates a decision to*
*allocate resources to build additional*
*jail beds.*

As we continue to release more serious

habitual criminals back into the community

the costs will increase drastically.


## THE COST TO INCARCERATE A PRISONER IS A BARGAIN WHEN WEIGHED AGAINST THE OVERALL COST CRIME HAS ON SOCIETY.

**Slide #9**

In spite of the fact that the overall crime rate has gone down, the Orange County Jail is still overcrowded.

The impact of "Three Strikes" legislation has resulted in longer lengths of stay in jail. Since 1995, the average pre trial stay has increased from 78 to 100 days.

This can be attributed to the fact that the right people, "habitual criminals" are being kept in jail and are unable to commit new crimes.

**Slide 10**

The type of criminal remaining in custody has become increasingly dangerous and difficult and requires maximum security beds. In 1968, the jail was approximately 30% felony and 70% misdemeanor. In 1997, over 80% of the inmates in custody have been initially arrested for serious felony crimes.

We added 192 maximum security beds to Theo Lacy in 1993. And double bunked them in1995, increasing the total to 384 maximum security beds. Yet, it is still necessary to release thousands of inmates early and the number of felony inmates is now over 80%. If new beds are not added the inmate population may reach 100% felony.

The addition of 384 maximum security beds at Theo Lacy will enable us to keep more dangerous criminals in jail and unable to prey upon the citizens of Orange County..

However, we are still over 7,000 jail beds short of our projected need for the year 2006.

The expansion capabilities for housing maximum security inmates at Theo Lacy will reach its limit of 1,152 with the completion of two of the four planned housing units.

Additional maximum security jail beds at other sites such as the Musick Facility will need to built to meet current and future maximum security needs.

**Slide #11**

The Theo Lacy Branch Jail was built in
1960 and the original barracks are still in
use today.

Between 1986 and 1994, new construction
at Theo Lacy added three additional
barracks housing units and two module type
housing units.

| | |
|---|---|
| Barracks F | 292 - Medium |
| Barracks G | 292 - Medium |
| Barracks H | 292 - Medium |
| Module I | 192 - MAXIMUM |
| Module J | 192 - MAXIMUM |

Because of severe jail overcrowding, in
1994 a plan and an Environmental Impact
Report (EIR) was initiated to study the
further expansion of the Theo Lacy Facility.

The City of Orange subsequently filed a lawsuit to halt the expansion. The lawsuit was settled in July 1995 when Supervisor Steiner was able to negotiate a settlement agreement which was then approved by the Board of Supervisors.

On August 8, 1995, the Board of Supervisors certified EIR # 558 for the further expansion of the Theo Lacy Branch Jail.

As detailed in the EIR, the proposed
expansion of Theo Lacy would allow for the
addition of four new housing units (Bldgs
A,B,C,&D). This will add 1,302 jail beds
plus 125 medical beds.  The expansion size
at build-out would bring the facility
population up to 2,986 regular beds and 125
medical beds.  Over one third of those beds
(1,152) would be for maximum security .


The project will also require the relocation
of the Interim Care Facility and the Animal
Shelter.  The demolition  of the Interim Care
Facility is required prior to construction
beginning on Building C.

> ICF will interfere with sallyport
> access, and construction
> laydown area.

Construction of Building C will also require

demolition of the existing laundry facilities

which washes on average 4000 lbs of

laundry per day.  By September of 1997

HDR will complete a study and will provide

recommendations to resolve the

requirements for the laundry.

| See Laundry Attachment |
| --- |
|  |

Case 2:90-cv-00520-KJM-SCR     Document 3233-1     Filed 10/30/08     Page 22 of 29
Page 21

**Slide 12**

The new housing unit to be constructed
(Building 'C') will contain 192 cells,  which
will be  double bunked to house 384
inmates. .  Total cost to construct building
'C' is estimated at **$22,198,725**.

| |
|---|
| Per bed OC  =  $57,809 |
| Per bed CA = $70,000 |

Once again, I want to thank Mr. Bob Boyle
of HDR for his help in keeping the cost
down on this project.

**Slide #13**

<u>FINANCING</u>

project will be financed  **totally** with
existing revenues through a combination of
sources:

- **Prop 172 Savings (Fund 14B)**

  Established by the Board on March 26,
  1996.  Full name: County Public Safety
  Sales Tax Excess Revenue/Unspent
  Appropriations Fund.

  In common English this fund receives
  money from two sources:

  1.   Any 172 money which was
  budgeted but not spent beginning in
  1996.

2.     Any increase in 172 revenues which was over and above the amount budgeted in a fiscal year.

- **Net annual Proposition 172 increases**

  Amount of Proposition 172 revenues available each year to pay for this project's operational costs.  To come up with this number we projected annual increases in Prop 172 revenues and subtracted projected department-wide fixed costs.  One half of the remaining balance will be used to pay for operational costs of this expansion.  The other half will pay for other critical department needs.

|  |
|---|
| 100 |
| -  30 |
| 70 ÷ 2 = 35 |

- **COP's Funds**

  Citizen's Option for Public Safety
  funds available through FY 98-99 (in
  State's budget).

- **Alien Assistance Funds**

  Federal funds used to offset costs of
  housing undocumented arrestees.
  Projected to be available through FY
  99-00.

- **Booking Fees**

  Cost of booking and processing
  arrestees.

  *$176 per booking*

  *$1.8 Million currently.*
  *$1.6 Million excluding,*
  *$99,000 Lake Forest.*
  *$113,000 Irvine.*

- **Inmate Welfare Funds**

    One time money will be taken from
    inmate welfare's "fund balance
    available" for construction and jail
    operations.  The fund balance was the
    accumulation of moneys received from
    commissary profits, telephone
    commissions and other minor sources
    of revenue through fiscal year 96-97.

    In addition to this one-time revenue,
    on-going revenue will be available
    from commissary and telephone
    profits on a yearly basis.

- **Health Care Agency and Health &**

   **Welfare Funds**

   One time health and welfare funds to

   be used for medical equipment.

**Slide #14**

CONCLUSION

Our goal as always continues to be to provide a safe community in which our families can live without fear of being victimized. By investing in more jail beds today, we help to prevent our citizens from becoming tomorrow's victim. You can either pay now <u>or</u> pay more later.

Increasing jail capacity will keep criminals off the street and will minimize and monetary and emotional impacts that law breakers have on our society.

This is the first part of a 10- year plan,

designed to provide the necessary maximum

security beds needed to meet the projected

demands on the county jail system.  I intend

to return to the Board within 90 days with

the details of that plan.


In the meantime, I request Board approval

of the proposed financial plan to use

existing revenues to construct building 'C' at

the  Theo Lacy Branch Jail.  With your

approval of this plan we will be returning to

the Board with the documentation needed to

commence construction and expedite this

project.