1   EDMUND G. BROWN JR.                        HANSON BRIDGETT LLP
    Attorney General of the State of California   JERROLD C. SCHAEFER - 39374
2   DAVID S. CHANEY                            PAUL B. MELLO – 179755
    Chief Assistant Attorney General           S. ANNE JOHNSON – 197415
3   ROCHELLE C. EAST                           SAMANTHA D. TAMA – 240280
    Senior Assistant Attorney General          RENJU P. JACOB - 242388
4   JONATHAN L. WOLFF                          425 Market Street, 26th Floor
    Senior Assistant Attorney General          San Francisco, CA  94105
5   LISA A. TILLMAN – State Bar No. 126424     Telephone: (415) 777-3200
    Deputy Attorney General                    Facsimile:  (415) 541-9366
6   KYLE A. LEWIS – State Bar No. 201041       jschaefer@hansonbridgett.com
    Deputy Attorney General                    pmello@hansonbridgett.com
7   455 Golden Gate Avenue, Suite 11000        ajohnson@hansonbridgett.com
    San Francisco, CA 94102-7004               stama@hansonbridgett.com
8   Telephone: (415) 703-5708                  rjacob@hansonbridgett.com
    Facsimile:  (415) 703-5843
9   lisa.tillman@doj.ca.gov
    kyle.lewis@doj.ca.gov
10
    Attorneys for Defendants
11

12              UNITED STATES DISTRICT COURT

13          FOR THE EASTERN DISTRICT OF CALIFORNIA

14          AND THE NORTHERN DISTRICT OF CALIFORNIA

15     UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

16       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

17

18   RALPH COLEMAN, et al.,            No. 2:90-cv-00520 LKK JFM P

19              Plaintiffs,            **THREE-JUDGE COURT**

20          v.

21   ARNOLD SCHWARZENEGGER, et al.,

             Defendants.
22
     ────────────────────────────
23   MARCIANO PLATA, et al.,          No. C01-1351 TEH

24              Plaintiffs,           **THREE-JUDGE COURT**

25          v.                        **JOINT PRE-TRIAL STATEMENT**

26   ARNOLD SCHWARZENEGGER, et al.,

27              Defendants.           **To:  Three-Judge Panel**

28
                              - 1 -

## I.   INTRODUCTION

The parties respectfully submit this Joint Pre-Trial Statement in compliance with the Court's Order dated October 10, 2007.

## II.   UNDISPUTED FACTS AND DISPUTED FACTUAL ISSUES

The following constitute each party's version of "undisputed" and "disputed" facts. No agreements have been reached as to what facts are undisputed except as otherwise noted under each party's section.

**A.   Defendants**

**Undisputed Facts**

1.      The *Plata* class consists of inmates with serious medical needs. (*See* Defendants' Status Statement Regarding Statement of Undisputed Facts in Support of Motion to Dismiss or Alternatively, Summary Judgment or Summary Adjudication ("Status Statement"), *Plata* Docket No. 3070, filed 10/6/08 at 4.)[1]

2.      The *Coleman* class consists of inmates with serious mental disorders.  (Status Statement at 5.)

3.      The *Plata* and *Coleman* cases are not about housing or other environmental conditions.

4.      In the *Plata* case, the parties negotiated a settlement of the litigation which is encompassed in the Stipulation and Order for Injunctive Relief (Stipulation) which was approved by the Court on June 13, 2002. Following entry of the Stipulation, the parties entered into a remedial phase and roll-out plan to correct the alleged constitutional violations.

5.      The Court ordered the appointment of a Receiver to take control

---

[1] Defendants list the material facts from its motion where Plaintiffs affirmatively admitted the material fact in an effort to narrow the issues for trial.  As demonstrated by the Status Statement, Plaintiffs did not create a genuine issue of material fact for any of the facts listed.  While Defendants did not include material facts where Plaintiffs claimed a dispute as undisputed, any such dispute should not be construed as genuine for purposes of resolving the summary judgment motion.

- 2 -

of CDCR's medical care system.  This appointment became effective April 17, 2006.

6.    In the *Coleman* case, the Court entered a judgment of injunctive relief and appointed a Special Master to oversee the development of a constitutionally compliant mental health care system.  The case is in the remedial phase, with ongoing implementation of plans that have corrected or will correct alleged constitutional violations.

7.    On November 13, 2006, Plaintiffs filed their motion to convene a Three-Judge Panel.  Over Defendants' objections, the *Plata* and *Coleman* Courts held a joint hearing on June 27, 2007 in Sacramento.  On July 23, 2007, the Court granted Plaintiffs' motion to convene this Three-Judge Panel.

8.    Operating a constitutionally adequate medical system in California also requires, among other things, providing oversight to clinical personnel as well as overhauling dysfunctional business and financial systems.  (Status Statement at 13.)

9.    The number of board-certified and board eligible physicians has increased dramatically in part due to improvements by the Receiver in compensation.  (Status Statement. at 20.)

10.    Neither the Receiver's November 15, 2007 Plan of Action, nor the Receiver's June 2, 2008 Turnaround Plan of Action, state that overcrowding would prohibit the Receiver and CDCR from developing a constitutionally adequate medical care delivery system.  (Status Statement at 23.)

11.    CDCR's Offender Information Services Branch produces and publishes Total Population reports on a weekly and monthly basis on its website:

http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Population_Reports.asp.

- 3 -

12.  Based on the monthly total population reports, the total inmate population housed in institutions was: 151,463 (October 2003), 155,216 (October 2004), 153,252 (May 2005), 156,972 (October 2005), 160,353 (April 2006), 162,735 (October 2006), 161,736 (May 2007), 159,499 (November 2007), 157,649 (January 2008), 155,855 (June 2008).

13.  Based on the weekly total population report, the total inmate population housed in institutions was 156,352 on August 27, 2008.

14.  Based on the weekly total population report, the total number of inmates housed in out of state institutions was 2,055 on December 19, 2007.

15.  Based on the weekly total population report, the total number of inmates housed in out of state institutions was 4,788 on August 27, 2008.

16.  Plaintiff classes in two separate cases, *Plata* and *Coleman*, seek a "prisoner release order" as defined by the Prison Litigation Reform Act, 18 U.S.C. § 3626 et seq. (PLRA).

17.  *Plata* Plaintiffs are seeking "A PRISONER RELEASE ORDER that would require that Defendants develop a plan (within 30 days of the date of such an order) to immediately reduce the population by 15,000 prisoners so that no prisoners are housed in what are commonly referred to as "ugly" or "bad" beds, i.e., those in gymnasiums, dayrooms, triple-bunks, and other locations not intended for housing, and to reduce the prison population in each CDCR prison to each facilities' design capacity over a three period, with most of the reduction in the first two years.  (*See Plata* Plaintiffs' Third Supplemental Response to Defendant Schwarzenegger's First Set of Interrogatories, dated September 8, 2008.  Ex. 1319 at 2.)

18.  *Coleman* Plaintiffs are similarly seeking an "immediate reduction of approximately 15,000 prisoners so that no prisoners are housed in what are commonly referred to as 'ugly' or 'bad' beds, i.e., those in gymnasiums, dayrooms, triple-bunks, and other locations not intended four housing."  (*See*

- 4 -

1    Coleman Plaintiffs' Supplemental Responses to Defendant Arnold

2    Schwarzenegger's First Set of Interrogatories, dated April 11, 2008 Ex. 1320

3    at 7.)

4         19.    Defendants reserve their right to supplement this list before trial .

5    **Disputed Factual Issues**

6         1.    Before filing the *Plata* lawsuit, on April 5, 2001**,** none of the

7    named class representatives—Marciano Plata (aka Marcial Plata), Gilbert

8    Aviles, Steve Bautista, Paul Decasas, Raymond Johns, Joseph Long, Clifford

9    Myelle, Leslie Rhoades, Raymond Stoderd, and Otis Shaw)[2]—exhausted their

10   administrative remedies for the issues raised in this Three-Judge Panel

11   proceeding.  Specifically, they did not exhaust whether overcrowding is the

12   primary cause of the alleged unconstitutional medical care or request the

13   remedy of a prisoner release order.

14        2.    Before filing the motion to convene the Three-Judge Panel, the

15   sole remaining incarcerated *Coleman* class representative, Ralph Coleman,

16   failed to exhaust the issue of overcrowding as the primary cause of alleged

17   unconstitutional mental health care or a prisoner release order.

18        3.    Since the filing of these lawsuits, Plaintiffs have never sought

19   and no court has ever ordered any relief directed at overcrowding.

20        4.    According to the Receiver, the overall goals of a constitutionally

21   adequate prison medical care system are to reduce unnecessary morbidity

22   and mortality, improve inmates' health status and functioning, coordinate care

23   with mental health and dental, and protect public health.

24        5.    California's average annual mortality rate of State prison

25   inmates, per 100,000 inmates, from leading causes of illness deaths between

26   2001 and 2004 was 170.

27        6.    The national average for annual mortality of State prison inmates

28   _____

[2] Plaintiffs Decasas, Long, and Shaw are no longer incarcerated.

1    during the same period was 223 and the West's average was 181.

2        7.    According to Plaintiffs' medical expert and the Receiver, there

3    are multiple, interrelated components of a constitutionally adequate

4    correctional healthcare system, including (i) adequate numbers of

5    appropriately trained and credentialed professional staff; (ii) an adequate

6    environment within which to work including appropriate equipment and

7    conditions which ensure an environment that is conducive to a professional

8    assessment including privacy; (iii) a system of documenting the healthcare

9    interactions including assessments, plans, orders, results of tests, etc.; (iv) a

10   system of tracking to ensure continuity with regard to all elements of

11   professionally created plans, including medications, lab, x-ray, other ancillary

12   services, follow up visits, specialty referrals, etc.; (v) a system that allows for

13   the movement of patients to appropriate levels of care based on the

14   complexity of their medical problems, including both inpatient and outpatient;

15   (vi) a system of self-monitoring in order to identify patterns of breakdowns in

16   the system for which improvement strategies can then be implemented in

17   order to mitigate the breakdowns; (vii) the ability to ensure access regardless

18   of custody level or housing situation, meaning sufficient officers to both ensure

19   access onsite and ensure access to offsite services; (viii) sufficient resources

20   in the community either through offsite encounters or some sort of tele-

21   medicine arrangement so that specialized care can be provided when ordered

22   by the clinician; and (ix) a system of ensuring that credentialing is done on

23   entry-based standards related to the type of practice the clinician is going to

24   be engaged in and that the credentialing process mirrors what happens in the

25   community at an HMO or a hospital in terms of the processes used.

26       8.    It is very difficult to rank these interrelated components in terms

27   of importance and very hard to single out a most important component.

28       9.    The *Plata* Court itself acknowledged that the problem with the

- 6 -

delivery of constitutionally adequate medical care in California Department of Corrections and Rehabilitation (CDCR) facilities is a polycentric problem, involving an historical lack of leadership, planning, and vision by the State's highest officials during a period of exponential growth of the prison population.

10.     According to Plaintiffs' medical expert, one of the most important factors to remedy CDCR's failed medical care delivery system is changing the culture.

11.     Plaintiffs' own expert testifies that simply reducing the prison population will not by itself cure the problems with specialty medical care.

12.     A prisoner reduction will only impact the volume of the use of a paper-based medical scheduling system, not solve the problems caused by such a system.

13.     Likewise, a reduction in the prison population would not solve the problems caused by CDCR's storage of unit health records for returning prisoners at a southern regional facility.

14.     A reduction in the prisoner population will not result in an effective computer network, which is essential to providing adequate medical care.

15.     A decrease in the prisoner population of up to 40,000 inmates by itself would not result in a constitutionally adequate medical care delivery system.

16.     There have been improvements in the delivery of medical care since the Receiver was appointed, including, but not limited to responsiveness to inmate appeals, timeliness of appointments, and staffing.

17.     An adjustment of the medical classification system is a possible solution to the staffing issues at some of the remotely located prisons, such as California State Prison, Avenal State Prison, or High Desert State Prison.

18.     The Receiver's November 15, 2007 Plan of Action addressed

- 7 -

many of the important issues impacting medical care in California's prisons that are potentially within the Receiver's purview.

19.    According to Plaintiff's own medical expert, it is possible for the Receiver and CDCR to ultimately provide constitutionally adequate medical care to 172,000 plus inmates.

20.    Whether the delivery of mental health care to inmates is constitutionally adequate depends upon six basic components: (1) a systematic program for screening and evaluating inmates to identify those in need of mental health care; (2) a treatment program that involves more than segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number of trained mental health professionals; (4) maintenance of accurate, complete and confidential mental health treatment records; (5) administration of psychotropic medication only with appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and supervise inmates at risk for suicide.

21.    Since 1998, the Special Master has prepared twenty reports on the status of the delivery of mental health care to California's adult inmates.

22.    None of the *Coleman* Special Master's reports has identified overcrowding as the primary cause of the alleged constitutional inadequacies.

23.    None of the Special Master's reports has recommended or asked for any orders on population control.

24.    According to Special Master Keating, clinicians cannot be spread out evenly over the Mental Health Care Services Delivery System because staffing ratios are much more intensive in inpatient setting (intermediate care, acute care, and mental health crisis beds), as opposed to outpatient care (Enhanced Outpatient Program and Correctional Clinical Case Management System).

25.    The *Coleman* court has issued a variety of orders to ensure the

- 8 -

development of a constitutionally adequate mental health services delivery system. None of those orders directed Defendants to address the inmate population of the entire CDCR system. Rather, the orders have consistently focused upon the development of the integral components of a constitutionally adequate mental health care system: sufficient and qualified mental health care staff, appropriate policies and procedures for mental health care, accurate record and data management, and sufficient licensed and unlicensed beds for mental health patients.

26. A reduction in the overall inmate population would not enable any increase in this specialized clinical staffing and licensed beds necessary to serve the needs of the mental health caseload.

27. Even a release of 100,000 inmates would still not resolve the need to provide sufficient clinical staffing and licensed mental health beds to serve this population.

28. Defendants have submitted a detailed plan to provide such beds and have already engaged in implementing increased pay to recruit and retain the necessary staff to enable care in those beds.

29. The number of filled correctional officer positions were as follows: 19,797.40 (October 2003), 20,142.22 (October 2004), 20,571.56 (May 2005), 20,741.64 (October 2005), 21,562.72 (April 2006), 21,738.62 (October 2006), 22,470.91 (May 2007), 23,326.87 (November 2007), 23,533.68 (January 2008), 23,802.72 (June 2008), and 24,093.72 (August 2008).

30. The number of filled physician positions were as follows: 250 (October 2003), 253 (October 2004), 251 (May 2005), 218 (October 2005), 200 (April 2006), 183.50 (October 2006), 166.50 (May 2007), 166.50 (November 2007), 167.50 (January 2008), 223.76 (June 2008), and 228 (August 2008).

31. The number of filled registered nurses positions were as follows:

- 9 -

250 (October 2003), 801.20 (October 2004), 812.73 (May 2005), 818.25 (October 2005), 1062.37 (April 2006), 1202.95 (October 2006), 1396.50 (May 2007), 1467.11 (November 2007), 1473.15 (January 2008), 1,591.24 (June 2008) and 1556.78 (August 2008).

32.    In July 1994, CDCR had approximately 314 clinical positions statewide.  In June 2008, CDCR had approximately 2,396 clinical positions statewide.

33.    At the end of August 2008, there were approximately 33,601 *Coleman* class members.

34.    One measure that Defendants took to address overcrowding was the October 4, 2006 Governor's Prison Overcrowding State of Emergency Proclamation (the Proclamation).  In the Proclamation the Governor expressly addressed the fact that 29 of California Department of Corrections and Rehabilitation's (CDCR) adult institutions "house more than 15,000 inmates in conditions that pose substantial safety risks, namely, prison areas never designed or intended for inmate housing, including, but not limited to, common areas such as prison gymnasiums, dayrooms, and program rooms, with approximately 1,500 inmates sleeping in triple-bunks."

35.    The Proclamation was not directed at improving medical or mental health care.

36.    Another measure that Defendants took to address overcrowding was Assembly Bill 900 (AB 900), which the California Legislature enacted on April 26, 2007 and the Governor signed into law on May 3, 2007.

37.    AB 900 is directed at reducing California's prison population.

38.    AB 900 proposes to reduce the prison population through four measures: (1) through the out-of-state transfer of inmates, (2) by creating in-fill beds, (3) by establishing more community re-entry beds, and (4) by creating more medical and mental health beds.  These measures were also directed at

reducing CDCR's use of "non-traditional" beds or beds that are used to house inmates in areas that were neither designed nor intended for inmate housing, including in areas such as gymnasiums, day rooms, program rooms, and triple bunk beds.  AB 900 directed authorizing new housing, programming space, reentry facilities, and local jail facilities; establishing pilot programs that provide training and counseling for parolees to assist in their successful reintegration into the community; implementing a system of incentives to increase inmate participation in, and completion of, academic and vocational education, consistent with the inmate's educational needs; implementing a plan to obtain additional rehabilitation and treatment services for prison inmates and parolees; expanding substance abuse treatment services in prison; conducting assessments of inmates for placement in programs; and it established the California Rehabilitation Oversight Board (C-ROB) in the Office of the Inspector General to regularly examine and report to the Legislature and Governor on the various mental health, substance abuse, and educational and employment programs for inmates and parolees operated by the CDCR.

39.    AB 900 was not directed at improving the delivery of medical or mental health care.

40.    Overcrowding is not the "primary cause" of any alleged unconstitutional provision of medical care.

41.    The Receiver and the California Department of Corrections and Rehabilitation (CDCR) can ultimately provide constitutionally adequate medical care.

42.    Overcrowding is not the "primary cause" of any alleged unconstitutional provision of mental health care.

43.    In fiscal-year 2005-2006, when the Receiver was appointed, California spent $1.252 billion on its prison health-care system.  In fiscal-year 2008-2009, California anticipates spending $2.193 billion.  The amount of

money spent on each prisoner for healthcare per year has increased from $7,601 to $13,887 dollars in this time frame.

44.    CDCR's physician staffing has increased dramatically, and is within 5% of the Receiver's goal to fill 90% of physician positions.

45.    Staffing of registered nurses has increased and is now within 2% of the Receiver's statewide goal to fill 90% of nursing positions.

46.    The prisoner death-rate has declined since 2006.

47.    Defendants are not deliberately indifferent to Plaintiffs' medical or mental health needs in violation of the Eighth Amendment to the U.S. Constitution.

48.    Defendants and the Receiver are providing constitutionally adequate medical care to Plaintiffs.

49.    In accord with court orders, the Receiver is vested with responsibility over integral elements of the mental health system, such as the development of pharmacy, information technology, bed construction, administrative space, and executive officer position.

50.    There is no empirical evidence showing a causal link between CDCR suicide rate and the census of CDCR institutions.

51.    Defendants are providing constitutionally adequate mental health care to Plaintiffs.

52.    A prisoner release order will not have an adverse impact on public safety or the operation of a criminal justice system.

53.    Defendants reserve their rights to supplement this list before trial.

Defendants are unable to admit or deny the proposed undisputed facts of Plaintiffs, Sonoma County, Santa Clara County and the Law Enforcement Intervenors as we have not sufficient time to take a position on each of the facts listed.

- 12 -

**B.    Plaintiffs**

Plaintiffs are unable to provide a position on defendant intervenors Sonoma County and Santa Clara County's proposed undisputed facts because we have not had enough time to research the numerous proposed facts.

**Undisputed Facts**

According to CDCR's weekly report of population as of midnight, August 27, 2008:

a.    The total CDCR prisoner population was 172,052

b.    The design capacity of CDCR institutions was 79,828

c.    There were 156,352 prisoners housed in CDCR institutions

d.    CDCR institutions were overcrowded at 195.9% of design capacity

e.    Twelve institutions were overcrowded at more than 200% of design capacity

Governor's Schwarzenegger's October 4, 2006 "Prison Overcrowding State of Emergency Proclamation" remains in effect.

"The facts supporting the Governor's 2006 emergency proclamation and state of emergency continue to exist today."  10/9/08 Notice of Emergency Regulations, Statement of Reasons at 1.

Over 14,000 prisoners were housed in "bad" or "nontraditional" beds in CDCR gyms and dayrooms as of August 30, 2008.  The prisoners housed in these nontraditional beds include *Coleman* and *Plata* class members.

CDCR has no written policy to exclude MHSDS prisoners prior to the placement in nontraditional beds.

As of August 2008, there were 34,319 prisoners identified by CDCR as receiving services in the Mental Health Delivery System.  5000 prisoners were at the EOP level of care and 28,744 were at the CCCMS level of care.  575 patients were in DMH programs.

As of August 2008, the staffed capacity of the EOP program was 4051.  The staffed capacity of the CCCMS program in August 2008 was 24,922.

As of August 2008, there were wait lists for prisoners identified as needing EOP

1  level of care, including prisoners requiring specialized placements to PSU's, EOP ad seg

2  Hubs and SNY EOP programs.   Program Guide Transfer time requirements for EOPs

3  are not being met.

4  As of August 2008, there were wait lists of prisoners referred and accepted to

5  Department of Mental Health inpatient psychiatric programs for CDCR prisoners.  The

6  wait list for the DMH ICF inpatient psychiatric program at Salinas Valley State Prison

7  (Level IV, male) was 166.  There were also patients on the wait list for the DMH APP

8  inpatient psychiatric program at CMF (male) and for the DMH ICF program at

9  Atascadero State Hospital (Level I-III, male).   Program Guide Transfer time

10  requirements are not being met.

11  As of August 2008, CDCR reported the following clinical staffing information for

12  the Mental Health Delivery System:  There were 298.7 allocated positions for CDCR

13  psychiatrists; 121.65 were vacant resulting in a vacancy rate of 40.7%.  The use of

14  registry services resulted in a functional vacancy rate of 22.6%.  There were 920.4

15  allocated positions for psychologists; 277.6 were vacant resulting in a vacancy rate of

16  30.2%.  The use of registry services resulted in a functional vacancy rate of 20%.  There

17  were 1253.3 allocated "other" mental health clinical staff; 326.61 were vacant resulting in

18  a vacancy rate of 26.1%.  The use of registry services resulted in a functional vacancy

19  rate of 24.2%.

20  As of August 2008, CDCR reported that 322 prisoners were referred to the Health

21  Care Placement Oversight Program (HCPOP) for emergency placement in an available

22  Mental Health Crisis Bed.  Of the 322 prisoners, 135 were transferred to an MHCB by

23  HCPOP.  Program Guide Transfer time requirements are not being met.

24  As of August 2008, additional treatment and office space identified by CDCR as

25  necessary for the operation of the Enhanced Outpatient Programs at CMF, SVSP,

26  MCSP and SAC has not been constructed.

27  As of August 2008, additional office and treatment space identified by CDCR and

28  DMH as necessary for the operation of the DMH inpatient psychiatric ICF program at

1   SVSP in the D-5 and D-6 units has not been constructed.

2         As of August 2008, the 50-bed MHCB unit planned by CDCR at CMC has not

3   been constructed.

4         As of August 2008, additional office and treatment space identified by CDCR as

5   necessary for the operation of EOP Reception Center Programs has not been

6   constructed.

7         As of August 2008, CDCR had not constructed sufficient small management

8   yards in order to permit *Coleman* class members housed in administrative segregation

9   units to be provided with 10 hours a week of outdoor exercise.

10        Parole

11        In 2006, CDCR released approximately 134,148 persons on parole.  ("Roadmap

12  for Effective Offender Programming in California," Report to the California State

13  Legislature by the CDCR's Expert Panel on Adult Offender and Recidivism Reduction

14  Programming (June 29, 2007), Appendix L, page 145, Table L-5.)

15        In 2006, of the approximately 134,148 persons released on parole by CDCR,

16  approximately 23,735 had a record of mental health treatment in CDCR at the CCCMS

17  Level of Care.  (Id.)

18        In 2006, of the approximately 134,148 persons released on parole by CDCR,

19  approximately 2,447 had a record of mental health treatment in CDCR at the EOP Level

20  of Care.  (Id.)

21        In 2006, of the approximately 134,148 persons released on parole by CDCR,

22  approximately 480 had a record of mental health treatment in CDCR at the DMH Level of

23  Care.  (Id.)

24        In 2006, of the approximately 134,148 persons released on parole by CDCR,

25  approximately 162 had a record of mental health treatment in CDCR at the Crisis Bed

26  Level of Care.  (Id.)

27        In 2006, CDCR admitted approximately 141,881 persons to the state prison

28  system.  (Id. Table L-6.)

1    Of the approximately 141,881 persons admitted to the state prison system in 2006

2  by CDCR, approximately 35,435 persons were admitted due to probation failure.  (Id.

3  Table L-6.)

4    Of the approximately 141,881 persons admitted to the state prison system in 2006

5  by CDCR, approximately 89,973 persons had no current or prior crime that qualified

6  violent or serious.  (Id. at page 144 Table L-4.)

7    Of the approximately 141,881 persons admitted to the state prison system in 2006

8  by CDCR, approximately 50,708 persons were admitted due to new court felony

9  convictions.  ("Roadmap for Effective Offender Programming in California,"  (Report to

10  the California State Legislature by the CDCR's Expert Panel on Adult Offender and

11  Recidivism Reduction Programming (June 29, 2007) at page 24, Table 3.)

12    Of the approximately 141,881 persons admitted to the state prison system in 2006

13  by CDCR, approximately 91,173 persons were admitted due to parole violations.  (Id.)

14    Of the approximately 91,173 persons admitted to the state prison system in 2006

15  due to parole violations, approximately 21,936 persons also had new court felony

16  convictions.  (Id.)

17    Of the approximately 91,173 persons admitted to the state prison system in 2006

18  due to parole violations, approximately 57,728 persons were "technical violators," where

19  that termed is defined as persons whose parole was revoked without a new court felony

20  conviction.  (Id.)

21    Of the approximately 91,173 persons admitted to the state prison system in 2006

22  due to parole violations, approximately 11,509 persons were "technical violators

23  reinstated" whose parole was revoked without a new court felony conviction and who

24  were reinstated on parole after serving an average term of 0.6 months.  (Id.)

25    Among the approximately 57,728 persons returned to state prison in 2006 for

26  technical parole violations the current average length of stay was 4.6 months.  (Id.)

27    Of the approximately 141,881 persons admitted to the state prison system in

28  2006, approximately 17,280 persons had "two strikes" as that term is defined in the

1  California Penal Code.  (Id.)

2  Of the approximately 141,881 persons admitted to the state prison system in

3  2006, approximately 334 persons had "three strikes" as that term is defined in the

4  California Penal Code.  (Id.)

5  Of the approximately 141,881 persons admitted to the state prison system in

6  2006, approximately 1,138 persons had life sentences (not including second and third

7  strikers).  (Id.)

8  CDCR operates a statewide Parole Outpatient Clinic system to provide mental

9  health services to persons release on parole from state prisons.

10  County Mental Health Programs

11  California's county mental health programs served approximately 658,314

12  persons during fiscal year 2005-2006.

13  (http://www.dmh.cahwnet.gov/Statistics_and_Data_Analysis/docs/Statewide_Production

14  _Rpt/CSI_annualreport_FY0506_FINAL_1.pdf at page 2)

15  Approximately 43,435 persons received any type of 24-hour services from

16  California's county mental health programs in fiscal year 2005-2006.

17  (http://www.dmh.cahwnet.gov/Statistics_and_Data_Analysis/docs/Statewide_Production

18  _Rpt/CSI_annualreport_FY0506_FINAL_1.pdf. at page 7)

19  Approximately 69.063 persons received any type of day services from California's

20  county mental health programs in fiscal year 2005-2006.

21  (http://www.dmh.cahwnet.gov/Statistics_and_Data_Analysis/docs/Statewide_Production

22  _Rpt/CSI_annualreport_FY0506_FINAL_1.pdf at page 8.)

23  Approximately 633,884 persons received any type of outpatient services from

24  California's county mental health programs in fiscal year 2005-2006.

25  (http://www.dmh.cahwnet.gov/Statistics_and_Data_Analysis/docs/Statewide_Production

26  _Rpt/CSI_annualreport_FY0506_FINAL_1.pdf at page 9.)

27  **Disputed Factual Issues**

28  Overcrowding in CDCR institutions is the primary cause of violations of prisoners'

1  8th Amendment rights to constitutionally adequate medical care.

2      Overcrowding in CDCR institutions is the primary cause of violations of prisoners'

3  8th Amendment rights to constitutionally adequate mental health care.

4      Overcrowding in CDCR institutions causes a shortage of beds to house prisoners

5  with medical needs, which leads to a violation of prisoners' 8th Amendment rights to

6  constitutionally-adequate medical care.

7      Overcrowding in CDCR institutions causes a shortage of beds to house prisoners

8  with mental health needs at appropriate levels of care, which leads to a violation of

9  prisoners' 8th Amendment rights to constitutionally-adequate mental health care.

10     Overcrowding in CDCR institutions has required the housing of prisoners with

11 medical needs and mental health needs in non-traditional or "bad" beds in gyms and day

12 rooms and other spaces not designed for their intended use,  which are unhealthy and

13 dangerous living conditions, which leads to violations of prisoners' 8th  Amendment

14 rights to constitutionally-adequate medical and mental health care.

15     Overcrowding in CDCR institutions causes there to be insufficient space for

16 adequate, timely, confidential medical or mental health intake interviews or

17 examinations, which leads to a violation of prisoners' 8th Amendment rights to

18 constitutionally-adequate medical and mental health care.

19     Overcrowding in CDCR institutions causes there to be insufficient custodial staff

20 to provide escorts to prisoners needing to see health professionals and participate in

21 treatment programs, which leads to a violation of prisoners' 8th Amendment rights to

22 constitutionally-adequate medical and mental health care.

23     Overcrowding in CDCR institutions causes there to be insufficient medical or

24 mental health professionals for the prisoner population, which leads to a violation of

25 prisoners' 8th Amendment rights to constitutionally-adequate medical and mental health

26 care.

27     Overcrowding in CDCR institutions causes a breakdown in CDCR's ability to

28 adequately compile and track medical and mental health files, which leads to a violation

1  of prisoners' 8th Amendment rights to constitutionally-adequate medical and mental

2  health care.

3     Overcrowding in CDCR institutions causes a breakdown in CDCR's ability to

4  adequately and consistently provide medication to prisoners, which leads to a violation

5  of prisoners' 8th Amendment rights to constitutionally-adequate medical and mental

6  health care.

7     Overcrowding in CDCR institutions causes a breakdown in CDCR's ability to

8  adequately and consistently ensure that prisoners in need of specialty medical or mental

9  health care receive timely access to such care, which leads to a violation of prisoners'

10  8th Amendment rights to constitutionally-adequate medical and mental health care.

11     Overcrowding in CDCR institutions causes there to be insufficient space for

12  prisoners to participate in rehabilitative programs, which leads to increased levels of

13  violence and lockdowns.

14     Overcrowding in CDCR institutions causes there to be insufficient space for

15  prisoners to participate in recreational activities, which leads to increased levels of

16  violence and lockdowns.

17     Overcrowding in CDCR institutions causes increased violence and lockdowns,

18  which impedes the delivery of medical and mental healthcare, and leads to a violation of

19  prisoners' 8th Amendment rights to constitutionally-adequate medical and mental health

20  care.

21     Overcrowding in CDCR institutions causes a deterioration in mental health, and

22  an increase in suicides, which leads to a violation of prisoners' 8th Amendment rights to

23  constitutionally-adequate mental health care.

24     Overcrowding in CDCR institutions causes unhealthy living conditions that

25  enhance the risk of transmission of disease, which leads to a violation of prisoners' 8th

26  Amendment rights to constitutionally-adequate mental health care and adversely impacts

27  public safety.

28     Because of the myriad problems caused by overcrowding in CDCR institutions,

1    CDCR is overtaxed, and is therefore unable to devote the time and resources necessary
2    to maintain constitutionally adequate medical and mental health care.

3        No relief other than a reduction in the prison population will remedy the
4    constitutional violations.

5        Neither prison construction generally nor construction of medical or mental health
6    facilities specifically will provide a timely remedy for the constitutional violations.

7        Out of state transfers will not remedy the constitutional violations.

8        Overcrowding in CDCR institutions has an adverse impact on public safety.

9        Overcrowding in CDCR institutions causes strains on prison a local infrastructure,
10   which has an adverse impact on public safety.

11       Overcrowding in CDCR institutions has an adverse impact on the health and
12   safety of correctional staff.

13       Overcrowding in CDCR institutions has an adverse impact on the administration
14   of criminal justice systems.

15       CDCR can reduce its institutional population without causing an adverse impact
16   on public safety.

17       CDCR can reduce its institutional population without causing an adverse impact
18   on the administration of a criminal justice system.

19   **C.    Defendant Intervenors**

20       **1.    Legislative Intervenors**

21       The Legislator Intervenors concur with Defendants' Statement of Undisputed
22   Facts and Disputed Factual Issues.

23       **2.    District Attorney Intervenors**

24       The District Attorney Intervenors concur with the Defendants' statements of
25   undisputed facts and disputed factual issues

26       **3.    Law Enforcement Intervenors**

27       **Undisputed Factual Issues**

28       Amador County Jail has a rated capacity of 76 inmates.  In 2007, 4 pre-trial

1   detainees were required to be released pretrial due to the lack of housing capacity in the

2   jail; 223 sentenced jail inmates were required to be released before their county jail

3   sentences were completed due to the lack of housing capacity in the jail.

4          In fiscal year 2006-07, Amador County had 652 adult felony probationers and

5   1,649 adult misdemeanant probationers, none of whom could be actively supervised

6   because the County had only three probation officers, all of whom are required to devote

7   their time to preparing Proposition 36 reports, intake and investigation reports for the

8   Courts, including pre-sentence reports, and "administratively" monitor probationers.

9          Butte County Jail has a rated capacity of 614 inmates.  Butte County is subject to

10  a court ordered cap requiring that it release inmates when it is at 90% of its rated

11  capacity.  In 2007, 63 pre-trial detainees were required to be released pretrial due to the

12  lack of housing capacity in the jail; 78 sentenced jail inmates were required to be

13  released before their county jail sentences were completed due to the lack of housing

14  capacity in the jail.

15         Calaveras County Jail has a rated capacity of 65 inmates.  In 2007, 368 pre-trial

16  detainees were required to be released pretrial due to the lack of housing capacity in the

17  jail; 383 sentenced jail inmates were required to be released before their county jail

18  sentences were completed due to the lack of housing capacity in the jail.

19         Contra Costa County's jail facilities have a total rated capacity of 1,987 inmates.

20         Del Norte County Jail has a rated capacity of 133 inmates.

21         El Dorado County Jail has a rated capacity of 265 inmates.  El Dorado County Jail

22  is subject to a state court ordered cap of 243 inmates.  South Lake Tahoe Jail, also in El

23  Dorado County has a jail rated capacity of 158, and a state court ordered cap of 126

24  inmates.  In 2007, 2,238 pre-trial detainees were required to be released pretrial due to

25  the lack of housing capacity in the jail; 172 sentenced jail inmates were required to be

26  released before their county jail sentences were completed due to the lack of housing

27  capacity in the jail.

28         Fresno County's four jail facilities have a rated capacity of 2,840 inmates.  Fresno

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)                                    1654598.6

1    County is subject to a federal court ordered cap of 3,778.

2        Glenn County Adult Detention Facility has a rated capacity of 144.

3        Humboldt County Correctional Facility has a rated capacity of 411 inmates.  In

4    2007, 421 sentenced jail inmates were required to be released before their county jail

5    sentences were completed due to the lack of housing capacity in the jail.

6        Inyo County Jail has a rated capacity of 96 inmates.  In 2007, 35 sentenced jail

7    inmates were required to be released before their county jail sentences were completed

8    due to the lack of housing capacity in the jail.

9        Kern County's four jail facilities have a rated capacity of 2,698 inmates.  Kern

10   County is subject to a court ordered cap of 2,718.  In 2007, 7,597 sentenced jail inmates

11   were required to be released before their county jail sentences were completed due to

12   the lack of housing capacity in the jail.

13       Lake County Jail has a rated capacity of 286 inmates.

14       Lassen County Adult Detention Facility has a rated capacity of 149.

15       Los Angeles County's jail system has a rated capacity of 14,072 inmates.  The

16   Los Angeles Central Jail has a rated capacity of 5,108 inmates.  Los Angeles County is

17   subject to a court ordered cap limiting the population of the Los Angeles Central Jail to

18   4,896 inmates.   In 2007, 9,959 pre-trial detainees were required to be released pretrial

19   due to the lack of housing capacity in the jail; 40,830 sentenced jail inmates were

20   required to be released before their county jail sentences were completed due to the

21   lack of housing capacity in the jail.

22       Mendocino County Adult Detention Facility has a population cap of 295 inmates.

23       Merced County Jail has a rated capacity of 189 inmates.  Merced County is

24   subject to a federal court ordered cap of 182 inmates.  In 2007, 883 pre-trial detainees

25   were required to be released pretrial due to the lack of housing capacity in the jail; 465

26   sentenced jail inmates were required to be released before their county jail sentences

27   were completed due to the lack of housing capacity in the jail.

28       Mono County Jail has a rated capacity of 44 inmates.

- 22 -

1    Monterey County Jail has a rated capacity of 563 inmates.

2    Orange County's jail facilities have a rated capacity of 5,079. In 2007, 5,890 pre-

3    trial detainees were required to be released pretrial due to the lack of housing capacity in

4    the jail; 1,472 sentenced jail inmates were required to be released before their county jail

5    sentences were completed due to the lack of housing capacity in the jail.

6    Placer County jails have a maximum capacity of 646. Placer County is subject to

7    a court ordered cap requiring it to release prisoners from each of its two facilities when it

8    reaches 100% of rated capacity. In 2007, 1,738 pre-trial detainees were required to be

9    released pretrial due to the lack of housing capacity in the jail; 2,131 sentenced jail

10   inmates were required to be released before their county jail sentences were completed

11   due to the lack of housing capacity in the jail.

12   Riverside County has five jail facilities with a total rated capacity of 3,129 inmates.

13   Riverside County is under a court order preventing any inmates from sleeping on the

14   floor in any of the County's jails. In 2007, 3,817 pre-trial detainees were required to be

15   released pretrial due to the lack of housing capacity in the jail; 2,228 sentenced jail

16   inmates were required to be released before their county jail sentences were completed

17   due to the lack of housing capacity in the jail.

18   San Benito County Adult Detention Facility has a rated capacity of 142 inmates.

19   In 2007, 159 sentenced jail inmates were required to be released before their county jail

20   sentences were completed due to the lack of housing capacity in the jail.

21   San Diego County has eight Type II jails with a total rated capacity of 4,802

22   inmates. San Diego County is subject to a state court ordered cap as to four of its

23   facilities, and an informal but agreed upon cap with the ACLU of 944 for a fifth facility.

24   Based on the court imposed limit, the agreed upon limit, and the self-imposed limitation

25   based on rated capacity, the County has total population cap of 5,601 inmates. In 2007,

26   9,855 pre-trial detainees were required to be released pretrial due to the lack of housing

27   capacity in the jail; 9,007 sentenced jail inmates were required to be released before

28   their county jail sentences were completed due to the lack of housing capacity in the jail.

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)                                    1654598.6

San Joaquin County's two jail facilities have a combined rated capacity of 1,411 inmates.  The facilities are subject to a systemwide cap of 1,546 inmates under state court order.  In 2007, 10,368 pre-trial detainees were required to be released pretrial due to the lack of housing capacity in the jail; 2,638 sentenced jail inmates were required to be released before their county jail sentences were completed due to the lack of housing capacity in the jail.

San Luis Obispo County has two jail facilities, a Type II jail with a rated capacity of 455, and a Type III facility with a rated capacity of 63.   In 2007, 870 sentenced jail inmates were required to be released before their county jail sentences were completed due to the lack of housing capacity in the jail.

San Mateo County has two Type II jail facilities with a combined rated capacity of 772, and two Type III facilities with a combined rated capacity of 62.

Santa Barbara County has two jail facilities with a combined rated capacity of 779.  The Santa Barbara County Main Jail, which has a rated capacity of 618 is subject to a court ordered cap of 706, 605 males and 101 females maximum.  In 2007, 1,784 sentenced jail inmates were required to be released before their county jail sentences were completed due to the lack of housing capacity in the jail.

Santa Clara County has three jail facilities with a combined rated capacity of 3,825.

Shasta County Main Jail has a rated capacity of 381.  In 2007, 1,692 pre-trial detainees were required to be released pretrial due to the lack of housing capacity in the jail; 878 sentenced jail inmates were required to be released before their county jail sentences were completed due to the lack of housing capacity in the jail.

Solano County's two jail facilities have a combined rated capacity of 1,084.  In 2007, 3,677 pre-trial detainees were required to be released pretrial due to the lack of housing capacity in the jail; 686 sentenced jail inmates were required to be released before their county jail sentences were completed due to the lack of housing capacity in the jail.

- 24 -

1    Stanislaus County's three jail facilities have a combined rated capacity of 1,366.

2  The Stanislaus County Main Jail has a rated capacity of 342 and is subject to a court

3  ordered cap of 396 inmates.  In 2007, 3,029 sentenced jail inmates were required to be

4  released before their county jail sentences were completed due to the lack of housing

5  capacity in the jail.

6    Sutter County Jail has a rated capacity of 352 inmates.

7    Tehama County Jail has a rated capacity of 191 inmates.

8    Tuolumne County Jail has a rated capacity of 149 inmates.  In 2007, 54 pre-trial

9  detainees were required to be released pretrial due to the lack of housing capacity in the

10  jail; 324 sentenced jail inmates were required to be released before their county jail

11  sentences were completed due to the lack of housing capacity in the jail.

12    Ventura County's two Type II jails have a rated capacity of 1575 inmates.  In

13  2007, 4,352 sentenced jail inmates were required to be released before their county jail

14  sentences were completed due to the lack of housing capacity in the jail.

15    Yolo County's two jail facilities have a combined rated capacity of 392 inmates.

16  The Monroe Detention Center in Yolo County has a rated capacity of 272 and a court

17  imposed population cap of 303 inmates.  In 2007, 230 pre-trial detainees were required

18  to be released pretrial due to the lack of housing capacity in the jail; 75 sentenced jail

19  inmates were required to be released before their county jail sentences were completed

20  due to the lack of housing capacity in the jail.

21    Yuba County Jail has a rated capacity of 432 inmates.

22    For the entire State of California, 2007 County (and City Type II) jails released

23  10,859 pre-trial detainees due to lack of housing capacity.  These jails released 86,064

24  sentenced inmates prior to completion of their sentences due to lack of housing

25  capacity.

26    In fiscal year 2006/2007, California County Probation Departments were

27  responsible for nearly 250,000 adult felony probationers (249,945) and over 81,000 adult

28  misdemeanant probationers (81,605).   There were 2,137 probation officers statewide to

1   supervise these probationers, as others are required to perform other tasks, including

2   investigations and evaluations pre-sentence and post-sentence reports, etc.  Thus, there

3   were over 155 probationers per supervising probation officer.  This forces probation

4   officers to actively supervise only those probationers who are assessed as high risk,

5   leaving those at lower risk to be "banked" or minimally/administratively monitored.

6   **Disputed Factual Issues**

7   Law Enforcement Intervenors dispute the following factual issues:

8   That overcrowding is the primary cause of any unconstitutional medical care or

9   mental health care being provided to prisoners in the State of California prisons;

10   That an order releasing prisoners from state prison prior to the completion of their

11   sentences, less currently available and earned credits, will remedy any unconstitutional

12   medical or mental health care being provided to prisoners in the State of California

13   prisons;

14   That there are no viable alternatives to the issuance of an order releasing

15   prisoners from state prison prior to completion of their sentences to remedy

16   unconstitutional provision of medical or mental health care in State of California prisons;

17   That an order releasing prisoners from state prison prior to completion of their

18   sentences will have no negative impact on public safety in the State of California;

19   That an order releasing prisoners from state prison prior to completion of their

20   sentences will have no significant negative impact on public safety in the State of

21   California;

22   That an order releasing prisoners from state prison without provision of pre-

23   release and post-release services such as anger management training, domestic

24   violence counseling, substance abuse treatment and counseling, vocational, educational

25   and job placement services, assistance with benefits applications, housing aid, mental

26   health care, and medical care will have no negative impact on public safety in the

27   communities to which these prisoners would be released;

28   That an order releasing prisoners from state prison without provision of pre-

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)                                                    1654598.6

1  release and post-release services such as anger management training, domestic

2  violence counseling, substance abuse treatment and counseling, vocational, educational

3  and job placement services, assistance with benefits applications, housing aid, mental

4  health care, and medical care will have any ultimate net positive effect on the prison

5  population in the State of California;

6       That there is sufficient available capacity in community service programs to

7  absorb those ordered released from California's state prisons to reduce recidivism risk

8  and lead to a net reduction in state prison population;

9       That there are local community resources and funding available to provide

10  necessary counseling, treatment, training and placement services to prisoners ordered

11  released early from state prisons;

12       That there will be no negative impact to local criminal justice systems if an order is

13  entered releasing prisoners from state prison prior to completion of their sentences;

14       That there will be no significant negative impact to local criminal justice systems if

15  an order is entered releasing prisoners from state prison prior to completion of their

16  sentences;

17       That prison overcrowding can be ultimately reduced or avoided by simply

18  accelerating the rate at which prisoners are released and recidivate

19      **4.**    **County Intervenors**

20       On October 28, 2008, the County of Santa Clara submitted to all parties County of

21  Santa Clara's Proposed Statement of Facts, which is attached hereto as Exhibit A.  In

22  addition, the County of Santa Clara will submit facts by written declaration and by expert

23  witness reports and exhibits.

24       The County of San Mateo will submit facts by written declaration and by expert

25  witness reports and exhibits.

26       The County of Santa Barbara is not proposing any factual evidence.

27      **5.**    **Sonoma County Intervenors**

28       Counsel for the parties agreed that Defendants and Defendant-Intervenors could

1  propose stipulated facts by 5:00pm on October 28, 2008.  Parties were to indicate their

2  agreement or disagreement with respect to the stipulated facts in the joint pre-trial

3  conference statement.

4         The only parties to propose stipulated facts by that time were Sonoma County

5  Intervenors and Intervenor the County of Santa Clara.  Sonoma County Intervenors' List

6  of Proposed Stipulated Facts is attached hereto as Exhibit B.

7         Sonoma County Intervenors agree to all of the stipulated facts proffered by the

8  County of Santa Clara.

9         Sonoma County Intervenors do not intend to offer any evidence on the issue

10  raised in 18 U.S.C. §3626(a)(3)(E)(i), as to whether overcrowding is the primary cause of

11  the violation of the Federal right.  Sonoma County Intervenors do intend to offer

12  evidence via expert reports, a declaration, oral testimony, and exhibits on the issues

13  raised in 18 U.S.C. §3626(a)(3)(E)(ii) (as to whether other relief will remedy the violation

14  of the Federal right), as well as 18 U.S.C. §3626(a) (regarding the adverse impact of any

15  prisoner release order on public safety or the operation of a criminal justice system, and

16  whether relief can be narrowly drawn, extend no further than necessary to correct the

17  violation of the Federal right, and is the least intrusive means necessary to correct the

18  violation of the Federal right).  Sonoma County Intervenors submit that all of these

19  issues are combined issues of fact and law that are disputed and remain at issue in this

20  proceeding.

21  **D.     CCPOA**

22         Plaintiff intervenor CCPOA joins in plaintiffs' statement of undisputed and

23  disputed facts.  Plaintiff Intervenors CCPOA do not at this time agree to stipulate to the

24  facts in the proposed stipulated facts of any of the parties other than those of Plaintiffs.

25                    **III.     DISPUTED EVIDENTIARY ISSUES**

26  **A.     Defendants**

27              1.     Whether evidence regarding programming, housing, living

28         conditions, violence, danger and security  should be excluded.

- 28 -

2.  Whether CCPOA witnesses should be excluded from testifying.

3.  Whether certain witnesses and evidence not disclosed during discovery, including postdated discovery responses should be admitted.

4.  Whether evidence and references to sentencing commission and sentencing reform should be admitted.

5.  Whether evidence pertaining to settlement should be admitted.

6.  Whether evidence pertaining to subsequent remedial measures should be admitted.

7.  Whether opinion evidence about health care by non-health care witnesses should be excluded.

8.  Whether Plaintiffs' expert reports, which were not written by Plaintiffs' experts, should be excluded.

9.  Whether evidence pertaining to the suicide rate should be excluded.

10.  Whether Plaintiffs' experts are qualified to testify on the issues for which they opine, including remedial relief and the impacts on public safety.

11.  Whether evidence pertaining to the Department of Mental Health will be permitted.

12.  The definition of primary cause.

13.  Whether testimony of Non-retained Third-Party Experts, who did not provide expert reports, will be permitted.

14.  Whether Changes Made by Plaintiffs' Counsel to Ralph Coleman's Deposition will be permitted.

15.  Whether the Receiver's Plans of Action are conclusive to the questions that (1) overcrowding is not the primary cause of the unconstitutional delivery of medical care and (2) other measures are available to achieve constitutional levels of medical care.

16.  Whether the Three-Judge Panel's jurisdiction to enter a prisoner

- 29 -

release order extends to an order addressing all of CDCR's population, or is limited to an order addressing only the *Coleman* and *Plata* classes.

17.    Whether the convening of the proceeding is improper.

18.    Whether Plaintiffs failure to exhaust their administrative remedies to seek relief in connection with overcrowding prevents the parties from proceeding in this action

19.    Whether the Three-Judge Panel lacks jurisdiction to consider Plaintiffs' request for a prisoner release order because no court has issued any prior relief directed at overcrowding.

20.    Whether the Three-Judge Panel lacks jurisdiction to consider an order with respect to the general prison population because the *Plata* class consists of inmates with serious medical needs and the *Coleman* class consists of inmates with serious mental disorders.

21.    Whether a Prisoner Release Order can encompass direction to establish a sentencing commission, to cease intake of inmates, and to provide community-based services to parolees.

22.    Whether the Receiver should be a party to this action as he is now in charge of CDCR's medical care system and manages and runs many parts of CDCR's mental health care system through coordination efforts.

23.    Whether Defendants and the Receiver are providing constitutional adequate medical care.

24.    Whether Defendants are providing constitutionally adequate mental health care.

25.    Defendants reserve the right to supplement this list before trial.

**B.    Plaintiffs**

All disputes that are reasonably anticipated regarding admissibility of evidence have been addressed in the motions in limine, with one exception.  Plaintiffs anticipate a dispute regarding the admissibility of hearsay contained within the testimony of non-

- 30 -

retained employee expert witnesses, many of whom will present direct testimony via declaration.  This same dispute was raised by both parities in motions in limine regarding hearsay in the already exchanged expert reports which are filed simultaneously with this pre-trial statement.  The parties have not yet agreed on a process for: (1) identifying inadmissible hearsay in the expert reports and declarations once filed by the parties; and (2) responding to assertions that certain matters in the filed reports and declarations are inadmissible hearsay.  Given the large number of expert witness reports already exchanged and the declarations reasonably anticipated, and the length of some of those reports, identifying and responding to claims of inadmissible hearsay is likely to take a great amount of time.  A process should be established to resolve these admissibility disputes before the end of trial.

**C.   Defendant Intervenors**

     **1.   Legislative Intervenors**

The Legislator Intervenors concur with Defendants' statements of disputed evidentiary issues.

     **2.   District Attorney Intervenors**

The District Attorney Intervenors concur with Defendants' statements of disputed evidentiary issues.

     **3.   Law Enforcement Intervenors**

Law Enforcement Intervenors dispute the admissibility of rebuttal testimony from Plaintiffs' designated expert James Austin, PhD.   They have filed a motion in limine to exclude all or a portion of the rebuttal testimony of Dr. Austin due to his intentional destruction of all drafts of his rebuttal report dated September 25, 2008, failure to produce his electronic documents and expert file.    In addition, Plaintiffs failed to provide either the deposition transcripts of Law Enforcement Intervenors' Expert Witnesses Jerry Dyer or Jerry Powers or the documents these witnesses produced at their depositions in support of their opinions and testimony to Dr. Austin prior to his deposition so that he could be subjected to questioning concerning their deposition testimony and the

1   documents supporting their opinions.

2        Plaintiffs dispute the admissibility of certain opinion testimony from Law

3   Enforcement Intervenors' designated expert witness, Jerry Dyer, Chief of Police of the

4   City of Fresno.  The testimony they seek to exclude deals with the impact of fear of crime

5   on sales revenue and unemployment in the City of Fresno, the relationship between

6   property crimes offenders, drug use, and unemployment, and employment rates and

7   their effects on released inmates.  Plaintiffs also seek to exclude Chief Dyer's testimony

8   relating to the impacts of a prisoner release order on the local county jail, the local

9   District Attorney's office, the Fresno Superior Court, and other Central Valley cities.

10   Plaintiffs argue that Chief Dyer is insufficiently qualified as a Police Chief to give his

11   opinions on these topics, despite the fact that this testimony directly relates to the

12   extensive knowledge and experiences Chief Dyer has gained as a Police Chief; his

13   background as a peace officer for nearly thirty years, which includes experience with

14   parolees, analysis of crime trends, and partnerships with community-based

15   organizations and other government agencies; his history as a member of the California

16   Police Chiefs Association, of which he is currently President; and the fact that he serves

17   as Chair of the California Central Valley "High Density Drug Trafficking Area" Board,

18   among other qualifications.

19        Plaintiffs also apparently dispute the admissibility of certain evidence upon which

20   Law Enforcement Intervenors relied in assessing the likely impacts of a prisoner release

21   order on the communities which they serve as public officials, and which are supportive

22   of the opinions these witnesses have formed regarding how a prisoner release order

23   would impact the entire criminal justice system of which they are an integral part in their

24   communities.  Plaintiffs' motion focuses on alleged hearsay evidence supporting

25   Defendants' and Defendant-Intervenors' experts' reports or opinions, ignoring of course,

26   the fact that their own expert reports are based nearly exclusively on hearsay statements

27   from prisoners, guards, the receiver, expert panelists, authors, and countless others who

28   they may have never met.   The Law Enforcement Intervenors do not dispute the general

1  proposition that hearsay statements should not be admitted for the truth of the

2  statements without foundation.  They simply dispute that the statements cited solely as

3  to these Intervenors  by Plaintiffs are lacking in foundation or are inadmissible.

4        Law Enforcement Intervenors are unaware at this time of any other evidentiary

5  disputes with Plaintiffs, but the parties have agreed to meet and confer to resolve issues

6  of admissibility, foundation and authentication prior to seeking rulings from this Court to

7  resolve any such evidentiary disputes.

8        4.   **County Intervenors**

9        The County Intervenors have not objected to any evidence to date, but reserve

10  their rights with respect to evidence submitted with this Statement, as stipulated by the

11  parties, and pursuant to federal and local rules.   One or more of the County Intervenors

12  will file oppositions within the time set by the Court to the following motions in limine: (1)

13  Plaintiffs' Motion in Limine No. 6 to Exclude Evidence of Fiscal or Human Services

14  Impacts of Prisoner Release Order; (2) Plaintiffs' Motion in Limine No. 7 to Exclude

15  Portions of McIntosh Opinion Testimony; and (3) Plaintiffs' Motion in Limine No. 8 to

16  Exclude Hearsay in Expert Reports from Introduction Into Evidence at Trial.

17        5.   **Sonoma County Intervenors**

18        Sonoma County Intervenors do not anticipate disputing the admission of any

19  evidence by any party at this time.  Sonoma County Intervenors' oppose the relief

20  requested in two motions in limine, and shall file oppositions thereto: (a) Plaintiffs' Motion

21  in Limine No. 8 to Exclude Hearsay In Expert Reports from Introduction Into Evidence at

22  Trial; and (b) Defendant's Motion in Limine No. 5 to Exclude Evidence Re: References to

23  Sentencing Commission and Reform.

24

25  **D.**   **CCPOA**

26        Plaintiff intervenor CCPOA joins in plaintiffs' statement of disputed evidentiary

27  issues.

28            **IV.**   **IDENTIFICATION OF RELEVANT POINTS OF LAW**

**A.    Defendants**

1.    The PLRA provides that a three-judge court "shall enter a prisoner release order only if the court finds by clear and convincing evidence that – 1) Crowding is the primary cause of the violation of a Federal right – the unconstitutional delivery of medical and mental health care; and 2) That no other relief (other than a prisoner release order) will remedy the violation of the Federal right.  18 U.S.C. § 3626(a)(3)(E)(i) and (ii).

2.    Plaintiffs have the burden of proof to prove the elements of 18 U.S.C. § 3626(a)(3)(E) by clear and convincing evidence. Roberts v. Mahoning County, 495 F. Supp. 2d 713 (N.D. Ohio 2006); *Plata* v. Schwarzenegger, 2007 U.S. Dist. LEXIS 56031 *19 (N.D. Cal. July 23, 2007).

3.    Clear and convincing evidence is an exacting standard "which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n11 (1990) (internal quotations and citations omitted).

4.    The PLRA also mandates that any prospective relief must be narrowly drawn, shall extend no further than necessary to correct the specific constitutional violation involved, and must be the least intrusive means necessary to correct the constitutional violation.  18 U.S.C. § 3626(a)(1).

5.    Under the PLRA, substantial weight must be given to any adverse impact on public safety or the operation of the criminal justice.  18 U.S.C. § 3626(a)(1).

6.    "In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless (i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the

- 34 -

1   Federal right sought to be remedied through the prisoner release order; and

2   (ii) the defendant has had a reasonable amount of time to comply with the

3   previous court orders." 18 U.S.C. § 3626(a)(3)(A).

4          7.     The Eighth Amendment to the U.S. Constitution requires that

5   Defendants act with deliberate indifference to medical or mental health care to

6   violate Plaintiffs' constitutional rights.

7          8.     Defendants reserve the right to supplement this list before trial.

8   **B.**    **Plaintiffs**

9   Plaintiffs seek a prisoner relief order on the grounds that the courts herein have

10  previously entered orders for less intrusive relief that have failed to remedy the

11  deprivation of the Federal right sought to be remedied through the prisoner release order

12  and defendants have had a reasonable amount of time to comply with the previous court

13  orders, and because clear and convincing evidence shows that crowding is the primary

14  cause of the violation of a Federal right and that no other relief will remedy the violation

15  of the Federal right.  18 U.S.C. § 3626(a)(3)(A) and (a)(3)(E).

16  The term "prisoner release order" includes any order that has the purpose or

17  effect of reducing or limiting the prison population, or that directs the release from or

18  non-admission of prisoners to a prison. 18 U.S.C. § 3626(g)(4).

19  Once the Court finds that a prisoner release order is necessary to cure the

20  constitutional violations, the Court has certain obligations imposed by statute and case

21  law.  First, the Court must provide Defendants with the opportunity to develop a plan to

22  reduce the prison population to acceptable levels.  Any order must be narrowly drawn,

23  extend no further than necessary to correct the violation of the Federal right, and be the

24  least intrusive means necessary to correct the violation of the Federal right, and the

25  Court must so find. 18 U.S.C. § 3626(a)(1)(A).

26  When crafting the order the Court must also give substantial weight to any

27  adverse impact on public safety or the operation of a criminal justice system caused by

28  the relief.  18 U.S.C. § 3626(a)(1).  The evidence will show that any such order can be

- 35 -

1  issued without any adverse impact on public safety or criminal justice system operations,

2  and that if certain measures are taken will actually have a beneficial impact on public

3  safety.   Thus, the Court must require that Defendants' plan to achieve a reduction in the

4  prisoner population include measures that will not have an adverse impact on, or will

5  have a substantial benefit to, public safety and criminal justice system operations.

6  **C.**    **Defendant Intervenors**

7      1.    **Legislative Intervenors**

8      The Legislator Intervenors concur with Defendants' Identification of Relevant

9  Points of Law

10     2.    **District Attorney Intervenors**

11     The District Attorney Intervenors concur with Defendants' identification of relevant

12 points of law.

13     3.    **Law Enforcement Intervenors**

14     The Law Enforcement Intervenors concur with the other Defendant Intervenors

15 and Defendants regarding the relevant points of law.

16     4.    **County Intervenors**

17     18 U.S.C. §3626(a)(1)(A), which states in part that  "Prospective relief…etc. shall

18 extend *no further than necessary to correct the violation…The court shall not grant or*

19 *approve any prospective relief unless the court finds that such relief is narrowly drawn,*

20 *extends no further than necessary …and is the least intrusive means necessary. . ."*

21     18 U.S.C. § 3626(a)(1)(A), which states in part that "[t]he court shall give

22 substantial weight to any adverse impact on public safety or the operation of a criminal

23 justice system caused by the relief

24     18 U.S.C. § 3626(a)(3)(E):  which states "the three-judge court shall enter a

25 prisoner release order only if the court finds by clear and convincing evidence that--…(ii)

26 no other relief will remedy the violation of the Federal right."

27     The Due Process Clause of the United States Constitution with respect to the

28 issue of counsel representation at trial for intervenors

1      5.      **Sonoma County Intervenors**

2          Sonoma County Intervenors concur with Defendants' identification of relevant

3  points of law.

4  **D.      CCPOA**

5          Plaintiff intervenor CCPOA joins in plaintiffs' identification of relevant points of law.

6                            **V.      LIST OF WITNESSES**

7  **A.      Defendants**

8          Christopher Mumola (via deposition, witness is unavailable)

9          Cynthia Radavsky

10         David L. Thomas

11         Deborah Hysen

12         Gale Bataille

13         Ira Packer, PhD, ABPP

14         James Tilton

15         James W. Marquart, Ph.D.

16         Kathryn P. Jett

17         Mathew Cate

18         Ralph Coleman (via deposition, pursuant to parties' stipulation)

19         Ray Stoderd (via deposition, pursuant to parties' stipulation)

20         Robin Dezember

21         Scott Kernan

22         Thomas L. Hoffman

23         Todd Jerue

24  **B.      Plaintiffs**

25         (a) Deposition testimony

26         *See* Exhibit C for Plaintiffs' Deposition Designations.

27         (b) Live testimony (each of the following is an expert witness)

28         Craig Haney, Ph.D., J.D.

                              - 37 -

1    Pablo Stewart, M.D.

2    James F. Gilligan. M.D.

3    James Austin, Ph.D.

4    Jeanne Woodford

5    Joseph Lehman

6    Ronald Shansky, M.D.

7    Barry Krisberg

8    Doyle Wayne Scott

9    Jeff Beard

10    Michael Hennessy

11    Plaintiffs agreed to provide, in this pretrial conference statement, a brief

12  description of the testimony of Mr. Hennessey:

13    Michael Hennessey is the Sheriff of the City and County of
     San Francisco.  He will testify about the programs operated
14    by the City and County of San Francisco that promote public
     safety in prison and when offenders are released on parole.
15    He will also testify about the effect of a prisoner release order
     on public safety and administration of the criminal justice
16    system.

17    Plaintiffs reserve the right to call as live witnesses the custodians of records as

18  listed on their August 1 witness disclosure, in the event the parties are unable to reach a

19  stipulation on authentication.  Plaintiffs further reserve the right to call as live witnesses

20  any deponents for whom admissibility of deposition testimony is disputed.

21  **C.    Defendant Intervenors**

22    1.    **Legislative Intervenors**

23    Assemblyman Todd Spitzer- Assemblyman Spitzer will testify regarding the fact

24  that overcrowding is not the primary cause of unconstitutional conditions, if any exist at

25  present; the alternatives to prisoner release order, including Assembly Bill 900 and the

26  work of the Plata Receiver; and the public safety consequences of a prison release

27  order.

28    Senator George Runner- Senator Runner will testify regarding the fact that

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)                    1654598.6

1    overcrowding is not the primary cause of unconstitutional conditions, if any exist at

2    present; the legislative alternatives to prisoner release order, including Assembly Bill

3    900, and other alternatives to a prison release order, including the transfer of illegal alien

4    prisoners to federal prisons.

5            2.    **District Attorney Intervenors**

6          The District Attorney Intervenors intend to call the following witnesses at trial:

7          Riverside County District Attorney Rodric Pacheco

8          San Diego District Attorney Bonnie Dumanis

9          San Diego Deputy District Attorney Lisa Rodriguez

10            3.    **Law Enforcement Intervenors**

11          Rick Dostal, Orange County Sheriff's Department, Executive Director of Special

12    Services

13          Adam Christianson, Stanislaus County Sheriff

14          Richard Conklin, Chief Mental Health Clinician, San Diego County Sheriff's

15    Department

16          Karen Dalton, Los Angeles County Sheriff's Department, Director of Bureau

17    Operations.

18          Jerry Dyer, City of Fresno Police Chief

19          John Ingrassia, San Diego County Sheriff's Department Commander, Detention

20    Services Bureau

21          Michael James, Orange County Assistant Sheriff

22          Don Meyer, Yolo County Probation Chief

23          Jerry Powers, Stanislaus County Probation Chief

24          Martin Ryan, Amador County Sheriff

25          Lt. Stephen M. Smith, Los Angeles County Sheriff's Department Lieutenant,

26    Custody Support Services

27          Rich Word, City of Vacaville Police Chief

28          Alexander R. Yim, Los Angeles County Sheriff's Department Chief, Correctional

- 39 -

1    Services Division

2         Possible witnesses if authenticity or foundation disputed:

3         Custodian of  Records of California State Sheriff's Association

4         Custodian of  Records of Chief Probation Officers of California

5         Custodian of  Records of California Police Chief's Association

6         Custodian of Records of each of the 67 Law Enforcement Intervenors

7         Custodian of Records of CDCR

8         4.    **County Intervenors**

9         The County of Santa Clara's witnesses are as follows:

10         1.  Gary A. Graves, Assistant County Executive, County of Santa Clara.  Mr.

11   Graves' Expert and Trial Declaration will be filed with the Court.

12         2.  Nancy Dane Pena, Director of Mental Health Services, County of Santa Clara.

13   Ms. Pena's Expert Report and Trial Declaration will be filed with the Court.

14         3.  Robert Garner, Director of the Department of Alcohol and Drug Services,

15   County of Santa Clara.  Mr. Garner's Expert Report and Trial Declaration will be filed

16   with the Court.

17         4.  Paul McIntosh, Executive Director, California State Association of Counties

18   (CSAC).  Mr. McIntosh's Expert Report and Supplemental Expert Report will be filed with

19   the Court.

20         The County of San Mateo's witnesses are as follows:

21         1.  Duane Bay, Director of Housing.  Mr. Bay's Declaration for Trial will be filed

22   with the Court.

23         2.  David S. Boesch, Jr., Assistant County Manager.  Mr. Boesch's Expert Report

24   and Declaration for Trial will be filed with the Court.

25         3.  Loren Buddress, Probation Chief.  Mr. Buddress' Expert Report and

26   Declaration for Trial will be filed with the Court.

27         4.  Beverly Beasley Johnson, Director, Human Services Agency.  Ms. Johnson's

28   Expert Report and Declaration for Trial will be filed with the Court.

1    5.  Greg Munks, San Mateo County Sheriff.  Sheriff Munks' Expert Report and

2    Declaration for Trial will be filed with the Court.

3    6.  Charlene A. Silva, County Health Director.  Ms. Silva's Expert Report and

4    Declaration for Trial will be filed with the Court.

5    The County of Santa Barbara will not call any witnesses.

6    5.    **Sonoma County Intervenors**

7    Sonoma County Sheriff William Cogbill, Intervenor, 2796 Ventura Avenue, Santa

8    Rosa, California 95403, telephone number (707) 565-2781; Sheriff Cogbill has been

9    designated in this proceeding as a hybrid percipient expert witness.  His declaration will

10   be filed with the Court on October 30, 2008.

11   David M. Bennett, 2940 American Saddler Drive, Park City, Utah, telephone

12   number (435) 649-1999; Mr. Bennett has been engaged by Sonoma County Intervenors

13   as an expert witness in this matter.  His initial and supplemental expert reports shall be

14   filed with the Court on October 30, 2008.

15   **D.    CCPOA**

16   Eric Adelman

17   Gary Benson

18   Brenda Gibbons

19   Ruben Leija

20   Kevin Raymond

21   Debbra Rowlett

22   **CCPOA's List of Deposition Page and Line Designations for Use at Trial**

23   Percipient Witnesses:

24   **Debbra Rowlett**, Deposition Date September 2, 2008: 9:18-22; 10:6-10; 11:5-7;

25   11:11-13; 12:22-13:7; 13:10-12; 13:16-24; 13:25-14: 1; 14:5-8; 14:14-15; 14:19-15:3;

26   15:6-9; 15:20-25; 16:1-9; 17:2-11; 17:14-17; 17:18-22; 18:1-23; 19:1-4; 19:9-10; 19:25-

27   20:4; 20:6-10; 20:12-14; 20:25-21:1; 21:11-17; 21:21-23; 22:21-24; 23:2-6; 23:7-9;

28   23:16-24; 23:25-24:6; 24:7-10; 25:2-3; 25:4-5; 25:6-8; 25:22-26:1; 26:6-10; 26:14-18;

27:6-8; 27:9-12; 27:16-17; 27:21-24; 27:25-28:2; 28:3-6; 28:7-9; 29: 3-6; 29:9-13; 29:16-19; 29:25-30:3; 30:4-8; 30:15-22; 31:8-13; 32:20-33:2; 33:19-20; 34:6-8; 34:9-14; 34:18-21; 34:25-35:4; 35:5-18; 36:12-14; 36:15-17; 38:4-12; 38:20-22; 39:2-9; 39:10-20; 40:2-12; 40:15-24; 41:14-24; 42:3-11; 42:12-18; 43:1-3; 43:9-14; 43:15-19; 43:20-44:1; 44:14-22; 45:7-15; 46:1-8; 46:16-18; 48:3-4; 48:9-10; 48:19-49:5; 50:17-18; 51:1-4; 51:5-8; 51:9-12; 51:19-21; 52:13-15; 53:3-9; 53:10-22; 53:25-54:2; 54:7-8; 54:18-24; 55:14-17; 55:18-20; 55:24-56:3; 56:9-14; 57:15-24; 57:25-58:5; 58:9-11; 58:17-59:24; 59:25-60:4; 60:23-61:5; 61:6-10; 61:11-22; 62:17-22; 62:23-63:1; 63:8-11; 63:18-23; 64:4-6; 64:19-22; 65:6-8; 65:20-21; 66:6-12; 66:16; 66:21-67:6; 67:16-22; 67:23-25; 68:3-6; 68:7-15; 68:16-19; 69:2-6; 70:15; 71:1-8; 71:9-16; 72:1-4; 72:15-18; 73:13-16; 74:1-2; 74:8-14; 74:18-75:7; 75:8-18; 75:18-25; 76:5-6; 76:8-12; 77:1-4; 77:5-8; 80:3-20; 80:22-81:12; 81:23-82:8; 83:9-12; 85:13-20; 85:21-23; 87:3-17; 89:11-18.

**Ruben Leija**, Deposition Date September 4, 2008: 10:10-14; 10:15-17; 10:21-25; 13:7-23; 13:24-14:3; 15:19-24; 15:25-16:5; 16:12-14; 17:7-9; 18:15-16; 19:8-11; 19:15-17; 19:20-24; 20:7-10; 20:13-15; 21:12-19; 22:14-20; 24:8-13; 24:21-23; 24:25-25:4; 25:5-10; 25:14-17; 25:24-26:2; 26:3-10; 26:15-17; 27:4-6; 27:7-12; 27:13-15; 27:16-18; 27:19-24; 28:3-9; 29:8-12; 29:20-23; 30:1-5; 30:6-7; 30:8-13; 31:14-19; 31:20-22; 32:7-10; 32:14-17; 32:22-33:3; 33:8-10; 33:11-13; 33:14-18; 33:20-24; 33:25-34:6; 34:7-12; 34:14-17; 34:18-21; 35:7-10; 35:11-14; 35:15-19; 35:23-24; 36:23-24; 37:3-9; 37:10-16; 37:23-38:1; 38:5-19; 39:17-18; 40:7-10; 40:11-15; 40:16-23; 41:5-7; 41:8-10; 41:18-21; 41:25-42:1; 42:8-15; 42:19-21; 43:3-5; 43:6-13; 43:14-16; 43:19-21; 44:8-10; 44:17-19; 44:20-23; 45:21-; 46:3-6; 46:10-15; 46:20-21; 46:23-47:4; 47:19-21; 47:22-48:3; 48:4-8; 48:13-18; 48:19-23; 49:10-12; 50:1-3; 51:10-21; 52:13-19; 52:22-53:1; 53:2-10; 53:21-25; 54:7-16; 55:3-6; 55:7-13; 55:15-23; 55:25-56:8; 56:15-20; 57:14-17; 58:3-6; 58:11-13; 58:23-59:5; 59:6-9; 59:17-60:1; 60:2-5; 60:6-8; 61:4-9; 61:18-21; 61:25-62:3; 62:20-63:4; 63:12-14; 63:25-64:2; 64:3-5; 64:8-15; 64:25-65:4; 66:14-16; 66:18-67:07; 67:13-18; 67:21-25; 67:25-68:2; 68:3-12; 68:13-16; 68:24-69:8.

**Kevin Raymond**, Deposition Date September 4, 2008: 8:2-8; 8:22-24; 8:25-9:2;

1   9:3-7; 9:8-11; 9:14-24; 9:25-10:1; 10:2-6; 12:4-15; 12:16-18; 12:19-13:4; 13:5-9; 13:14-

2   20; 13:24-14:3; 14:7-8; 14:9-17; 14:18-15:3; 15:4-9; 15:10-13; 15:16-20; 15:25-16: 4;

3   17:18-22; 18:15-20; 19:1-5; 19:6-14; 20:16-25; 21:11-22:1; 22:2-10; 22:11-17; 22:18-20;

4   23:16-24:7; 25:11-18; 26:10-17; 26:19-27:3; 27:5-12; 27:13-17; 28:1-7; 28:13-23; 28:24-

5   29:1; 29:2-10; 29:17-20; 29:21-25; 30:23-24; 31:14-17; 32:3-4; 32:5-11; 32:14-18; 32:19-

6   33:1; 33:2-16; 33:22-25; 34:1-13; 35:25-36:13; 37:6-22; 38:9-11; 38:21-39:5; 40:1-10.

7       **Eric Adelman**, Deposition Date September 2, 2008, 9:1-5; 10:15-17; 10:18-19;

8   10:22-23; 11:3-5; 12:9-12; 12:13-19; 12:24-13:1; 13:2-13; 13:14-15; 13:16-18; 14:6-8;

9   14:9-13; 14:14-17; 14:18-15:1; 15:14-25; 16:1-11; 16:14-21; 16:22-24; 17:11-17; 17:18-

10  23; 18:6-7; 18:8-17; 18:18-19; 18:10-19:4; 19:16-18; 20:2-17; 20:25-21:1; 21:03; 21:16-

11  18; 21:19-22; 21:23-22:05; 22:7-9; 22:13-15; 22:23-23:4; 23:5-13; 23:17-18; 24:5-7;

12  25:25-26:17; 29:20-25; 30:1-2; 30:7-11; 30:19-22; 30:23-31:4; 31:6-7; 31:14-22; 32:9-20;

13  32:21-33:10; 33:19-34:2; 34:16-18; 34:24-35:5; 35:10-22; 37:4-6; 37:15-19; 37:20-38:3;

14  38:4-5; 38:25-39:14; 39:18-23; 40:5-7; 40:10-20; 40:25-41:6; 41:13-19; 42:24-43:9;

15  43:12-15; 43:17-21; 44:6-16; 44:18-20; 44:23-25.

16      **Brenda M. Gibbons**, Deposition Date September 4, 2008: 9:4-9; 9:11-14; 9:19-

17  21; 9:22-24; 10:9-15; 10:18-23; 12:4-6; 12:7-9; 12:13-19; 16:17-19; 17:24-18:4; 20:10-

18  16; 20:22-21:9; 21:10-16; 21:17-19; 22:15-23; 22:25-23:9; 23:10-11; 23:15-16; 23:22-

19  24:1; 24:6-9; 24:10-14; 24:19; 24:22-24; 26:2-10; 26:11-19; 26:25-27:5; 27:14-17; 27:18-

20  19; 27:20-28:3; 28:10-11; 29:3-6; 29:20-25; 30:2-24; 31:8-17; 31:18-20; 32:3-6; 32:7-11;

21  32:15-18; 32:22-24; 32:25-33:2; 34:10-13; 34:17-19; 34:21; 35:3-5; 35:11-13; 35:22-

22  36:4; 36:25-37:2; 37:13-17; 37:18-20; 37:22-23; 37:24-38:9; 38:17-22; 39:14-15; 39:16-

23  20; 40:19-24; 40:25-41:13; 41:18-23; 41:24-42:1; 42:4-11; 42:22-43:1; 43:2-7; 43:8-17;

24  43:18-23; 45:6-10; 45:24-46:12; 46:14-16; 46:18-21; 46:22-24; 46:25-47:9; 49:11-13;

25  50:3-5; 50:6-10; 50:23-51:13; 51:23-52:8; 52:13-18; 52:19-21; 52:25-53:3; 53:4-8; 53:9-

26  13; 54:7-19; 54:24-55:2; 55:4-13; 55:19-21; 55:22-56:3; 56:20-24; 58:4-7; 58:9-16; 59:8-

27  18; 60:19-23; 62:17-25; 63:2-13; 65:5-14; 65:25-66:07; 67:4-14; 67:22-68:6; 68:20-25;

28  69:2-14; 70:4-10; 70:12-16; 70:18-71:10; 71:12-17; 72:18-24; 73:23-74:17; 74:18-75:3;

1    75:5-8; 75:10-15; 75:19-20; 75:21-76:3.

2

3        **Gary Benson**, Deposition Date September 2, 2008: 8:4-11; 8:12-14; 9:13-15;

4    9:25-10:3; 10:25-11:5; 11:6-10; 12:24-13:5; 13:6-14; 13:15-21; 13:25-14:44; 14:5-11;

5    14:12-18; 14:19-21; 15:2-6; 15:10-14; 15:20-23; 15:24-25; 16:8-13; 16:17-20; 16:21-24;

6    16:25-17:3; 17:4-9; 17:12-17; 17:18-19; 17:20-24; 17:25-18:7; 18:12-20; 18:23-25; 19:1-

7    3; 19:04-08; 20:22-21:12; 22:2-5; 22:9-12; 22:14-16; 23:10-16; 23:24-24:2; 24:3-16;

8    24:20-25; 24:25-25:4; 25:1221; 25:22-26:5; 26:6-17; 26:18-25; 27:2-6; 27:7-14; 27:15-

9    17; 27:21-25; 28:7-15; 28:25-29:11; 29:12-19; 29:20-25; 30:1-4; 30:5-11; 30:12-22;

10   31:18-32:4; 32:9-15; 32:16-33:2; 33:3-7; 33:8-15; 33:16-25; 34:1-3; 34:7-9; 34:11-17;

11   34:20-35:3; 35:4-16; 35:17-20; 35:25-36:14; 37:4-19; 37:20-24; 37:24-38:2; 38:7-20;

12   39:9-12; 39:13-22; 40:3-10; 40:11-20; 40:25-41:8; 41:12-20; 42:8-12; 42:20-43:2; 43:11-

13   17; 44:2-6; 44:10-13; 44:16-19; 45:1-6; 45:17-46:5; 46:6-13; 46:17-20; 48:21-49:1.

14        CCPOA does not plan to offer other documents during trial.

15                        **VI.    LIST OF EXHIBITS**

16   **A.    Defendants**

17        Attached as Exhibit D to this joint pretrial statement is a list of exhibits that

18   Defendants intend to offer at trial, other than exhibits to be used for the sole purpose of

19   impeachment.  In addition to the exhibits listed in Exhibit D, Defendants reserve the right

20   to reference exhibits identified by the other parties.

21   **B.    Plaintiffs**

22        *See* Exhibit E (Plaintiffs' Trial Exhibit List).

23   **C.    Defendant Intervenors**

24        1.    **Legislative Intervenors**

25        Attached as Exhibit F is a list of exhibits that the Legislator Intervenors will offer at

26   trial, other than exhibits to be used for impeachment only. In addition to the exhibits

27   listed in Exhibit F, the Legislator Intervenors reserve the right to reference exhibits

28   identified by the other parties.

2.     **District Attorney Intervenors**

The District Attorney Intervenors intend to proffer the following exhibits at trial:

Riverside County District Attorney Rodric Pacheco

Exhibit A – "Riverside County Jail Statistical Information – Early Releases and Recidivism"

Exhibit B – "CDCR Statistics - 2007 New Admissions and Parole Violators with New Terms"

Exhibit C – "Articles and Studies on Crime Rates and Early Releases from Jails"

"The Social Benefits of Confining Habitual Criminals," Kent Scheidegger & Michael Rushford, Criminal Justice Legal Foundation, 2000 by the Board of Trustees of the Leland Stanford Junior University

"Who's In Our State Prisons?" – from the Office of California State Senator George Runner

"Time to Deal with America's Prison Crisis" Joel, Dana; Heritage Foundation, Nov. 1989

"Releasing Inmates Early Has Costly Human Toll," L.A. Times, May 14, 2006

"Escaping the Myth of Three Strikes State Prison Law," San Francisco Chronicle, July 6, 2008

"Do the Time, Lower the Crime; Too Many People Behind Bars? The Statistics Suggest Otherwise," L.A. Times, March 30, 2008

7.  "Understanding California Corrections," Petersilia, 2006

San Diego District Attorney Bonnie Dumanis

San Diego Deputy District Attorney Lisa Rodriguez

Exhibit A - "Symposium: SB618 Community Reentry Program, March 13, 2008"

Exhibit B - "SB618 Participant Success Stories"

Exhibit C - "Improving Reentry for Ex-Offenders in San Diego County: SB618 First Annual Evaluation Report, March 2008"

3.     **Law Enforcement Intervenors**

- 45 -

1      Law Enforcement Intervenor's Exhibit List

2      2007 California Jails Capacity Caps and Early Release Statistics spreadsheet

3      Sheriff Adam Christianson – curriculum vitae

4      Richard M. Conklin, LCSW -- curriculum vitae

5      Karen S. Dalton, DrPH, CHES, CJM -- curriculum vitae

6      John L. Ingrassia -- curriculum vitae

7      Don L. Meyer -- curriculum vitae

8      Orange County Jail Needs Assessment Preliminary Findings and

9  Recommendation

10     Expert report of Jerry Powers

11     Expert report of Jerry Dyer

12     Fresno County Policies and Procedures, No. C-211, Criteria for Inmate Release

13  from Custody pursuant to Federal Court Order, 9-29-06, 8-1-08 and 8-18-08 revisions

14     CDCR Fall 2005 Adult Population Projections, 2006-2011

15     Fresno County Crimes and Crime Rates 1997-2006, from California Department

16  of Justice Website

17     Excerpts from Rational Choice and Criminal Behavior

18     Stipulation re: Permanent Injunction; Order, filed Feb. 25, 1994, Cruz v. County of

19  Fresno, United States District Court, Eastern District of California, Case No. F-93-5070

20  JFM [P]

21     Preliminary Examination of the Fresno Public Safety Ballot Initiative

22     E_PRIV_169726 and E_PRIV_169727

23     Secure Reentry Facility—Community and Program Requirements

24     E_DOF_008958 to E_DOF_008963

25     Governor's Rehabilitation Strike Team Work Groups

26        COMPAS—Classification and Endorsements System

27        Parole—Intermediate Sanctions and Parole Matrix

28        Secure Reentry Facility—Community and Program Requirements

1        Institutions

2        Rehabilitation, Addiction, Vocational Education and Job Training

3        Population Estimates and Mobility

4    E_PRIV_037788 to E_PRIV_037791

5    CCJCC Reentry Subcommittee Notes, Wednesday, September 12, 2007

6    Los Angeles County Sheriff's Department Inmate Reception Center Daily Inmate

7 Statistics, Friday, 08/22/2008

8        Inside the Nation's Largest Mental Institution by Renee Montagne

9        Inpatient Psychiatric Aging Report for the Period of 8/1/2004 to 8/31/2004

10        Sheriff's Presentation on Theo Lacy Expansion Orange County Board of

11 Supervisors July 1, 1997

12        The Fresno Bee, October 26, 2008 – Valley's jobless problem grows by Tim

13 Sheehan

14        Amador County Re: People Who Participated on Home Electronic Monitoring; Jail

15 Manual Section B-5, Revised 01-2007

16        San Joaquin County Reentry Program Facility, San Joaquin, Calavares, Amador

17 County Statistics

18        COMPAS Assessment Data for Amador County (8/07)

19        COMPAS Assessments of Active Parolees by County as of 4/30/08

20        COMPAS Assessments, statewide, as of 9/16/08

21        Adult Services Plan: Serving 18-25 year-olds Best Practices

22        California County Probation Departments, 06/07 statewide compiled data,

23 including probationers by crime committed, probation officers and caseload, community

24 and law enforcement task forces

25        California County Juvenile Probation Information, 06/07 statewide compiled data

26        California Department of Corrections and Rehabilitation Expert Panel on Adult

27 Offender and Recidivism Reduction Programming Report to the California State

28 Legislature:  A Roadmap for Effective Offender Programming in California

1    Edwin Zedlewski, "Making Confinement Decisions," Research In Brief, National

2   Institute of Justice, July 1987; released July 1988.

3    San Benito County Jail Manual (Revision 2002) section 317.

4    San Bernardino PD Interoffice Memorandum dated 7-7-08 re June 2008 Parole

5   Report; May 2008 Report; CAPC Monthly Reports

6    April 10, 2008 Memorandum to Members of the Urban Counties Caucus Board of

7   Directors from Casey Kaneko re Realignment of State Parolees to County Probation

8    San Diego County Sheriff's Detention Facilities Inmate Population History;

9    San Diego County Sheriff, Detention Services, All Sheriff Facilities, Average

10   Inmate Population, Fiscal Year: 2007 / 2008

11    County of San Diego, UCC Survey Response

12    Synopsis of programs currently in place in San Diego County that provide

13   alternatives to detention and the relative effectiveness of these programs.

14    San Diego County Sheriff's Department Daily Inmate Population Report

15    San Diego – Court documents relating to Hudler v. Duffy, May 12, 1980, No.

16   404148 and Armstrong v. San Diego County Board of Supervisors, November 8, 1990;

17   No. 588349; cases consolidated October 13, 1993.

18    San Diego – Sentence Calculation Record; Sentence Calculation Manual (CD);

19   Detention Services Bureau Policies and Procedures R.1, R.3, R.5, R.11 and T.13; Final

20   Release (IPD) Post Orders.

21    San Diego – Documents relating to the Mentally Ill Offender Crime Reduction

22   Program.

23    Senate Budget Hearing Item #63, Sentate Bill 618 (J1), May 7, 2007 [Ex. 1 to

24   Conklin Depo; E_PRIV_055285]

25    Summary of Meeting with Jennifer Schaffer, Ph.D., Re Potential Impact of CDCR

26   Plan to return inmates to local counties, [Ex. 2 to Conklin Depo]

27    SB 618 Caseload as of 9/17/08 [Ex. 3 to Conklin Depo]

28    San Diego County Sheriff Active Collection Roster

1    San Diego County Parole Stats - June 2008

2    San Diego County Inmate Programs Work Release

3    San Diego County Sheriff 2007-08 Pop and Cap Graph

4    San Diego County Sheriff 4024 PC Letter 050708-060708

5    San Diego County Sheriff 4024 PC Letter 060708-070708

6    San Diego County Sheriff 4024 PC Letter 070708-080708

7    San Diego County Sheriff 4024.1 PC Letter 040708-050708

8    San Diego County Sheriff Bd of Corrections Jail Profile Survey

9    San Diego County Sheriff Bd of Corrections Jail Profile Survey 2

10    San Diego County Sheriff Bd of Corrections Jail Profile Survey 3

11    San Diego County Sheriff Bd of Corrections Jail Profile Survey 4

12    San Diego County Sheriff Bd of Corrections Jail Profile Survey 5

13    San Diego County Sheriff Bd of Corrections Jail Profile Survey 6

14    San Diego County Sheriff Bd of Corrections Jail Profile Survey 7

15    San Diego County Sheriff Bd of Corrections Jail Profile Survey 8

16    San Diego County Sheriff Bd of Corrections Jail Profile Survey 9

17    San Diego County Sheriff County Parole Stats

18    San Diego County Sheriff Court Ordered Caps in effect 2008

19    San Diego County Sheriff Work Programs

20    San Diego County Sheriff Work Release

21    San Diego County Women's Facility Needs

22    San Diego Sheriff 4024 Letter Archived Aug2007-Mar2008

23    San Luis Obispo – Inmate Release Policy section 1508.00; Sentence Calculation

24    worksheet; Inmate Classification Policy section 1701.00; correspondence with the court

25    in regard to California Penal Code section 4024.1; memorandum dated June 8, 2007;

26    memorandum dated September 18, 2000; and memorandum dated March 23, 2005

27    San Luis Obispo Co Sheriff Re: Home Detention Program, Fiscal Year: 2007-

28    2008

1    San Luis Obispo County Sheriff Jail Needs Assessment Update 2008

2    San Mateo – Documents titled Resolution Accepting the Mentally Ill Offender

3  Crime Reduction Grant from the State Board of Corrections and memo from Sheriff Greg

4  Munks to County Board of Supervisors dated May 21, 2007.

5    San Mateo County Manager's Office, Response to UCC Survey on Parole

6  Realignment, April 30, 2008

7    Shasta County Main Jail Superior Court Cap Report form;

8    Shasta County Main Jain Superior Court Cap Quarterly Report and letter to

9  Presiding Judge;   Quarterly Capacity Releases since 1993 recap.

10    County of Shasta v. Jim Pope, Stipulation and Proposed Order No. 115258.

11    Memo to all Custody Division Sergeant and Classification Officers re County of

12  Shasta v. Jim Pope, Stipulation and Proposed Order No. 115258.

13    Solano County Sheriff's Office Inmate Policy 1.20.3 and Solano County Sheriff's

14  Office Inmate Policy 1.20.32.20.3.

15    Solano County Superior Court order granting authority to accelerate release

16    Solano County - BOC-STC Jail Profiles Apr 07 - Jun 08

17    Solano County - Electronic Monitoring & Work Program Part 1 - May 2007 -

18  December 2007

19    Solano County - Electronic Monitoring & Work Program Part 2 - January 2008 -

20  July 2008

21    Solano County - JCDF Rated Capacity - CSA Inspection 2006

22    Solano County - SDF Rated Capacity - CSA Inspection 2006

23    Solano County - SEP Reports 2007-2008

24    Solano County - Stats on Early Release re - PTA's July 07 - June 08

25    Solano County Probation Adult Division County Approved Budget

26    Solano County Probation Proposed Budget Adult Division Narrative

27    Stanislaus – Rodriguez v. County of Stanislaus, case no. CIV F-90-0601 REC

28  JFM P dated May 4, 1992.

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)

1654598.6

1    Stanislaus County Sheriff's Department Adult Detention Policies and Procedures

2    Stanislaus County – Copy of grant for the Mentally Ill Offender Crime Reduction

3  Grant Program.

4    Stanislaus Jail Alt Apr 2008

5    Stanislaus Jail Alt Aug 2007

6    Stanislaus Jail Alt Dec 2007

7    Stanislaus Jail Alt Jul 2007

8    Stanislaus Jail Alt June 2008

9    Stanislaus Jail Alt May 2008

10    Stanislaus Jail Alt Nov 2007

11    Stanislaus Jail Alt Oct 2007

12    Stanislaus Jail Alt Sep 2007

13    Sutter – Stipulation Re Population Limits, Order in Dempsey W. Haller, et al. v.

14  The County of Sutter, et al., CIV-S-93-1256, September 15, 1994 and Order in Dempsey

15  W. Haller, et al., CIV-S-93-1256, September 14, 1994.

16    Tehama – Dennis Wyckoff, et al. v. The County of Tehama, et al., No. CIV-S 92

17  1472 GEB JFM, dated April 21, 1998; Tehama County Jail ground floor map; map of

18  Women's Dormitory; Memorandum of Completion for Women's Dormitory; Board of

19  Corrections Notice regarding full compliance with Title 24; and Jail Division Policy No.

20  6001.

21    Tehama – Letters from Captain Ronald Dodd to Judge Dennis Murray requesting

22  accelerated release pursuant to Penal Code section 4024.1; Judge Dennis Murray's

23  Minute Orders granting accelerated release pursuant to Penal Code section 4024.1; and

24  letters from Captain Dennis Murray to Judge Dennis Murray informing him of any

25  accelerated releases.  Date range:  July 22, 1997 through September 13, 2007.

26    Tehama County Sheriff – Warrant Bookings and Bail Procedures for

27  Misdemeanor Warrants and Traffic Warrants Number 6625, Effective Date: 010395,

28  Revised 112807

1    Tuolumne – Stipulation Order in Donald G. Ercoli, et al. v. County of Tuolumne,

2    Case No. CIV F-90-0649 JFM P, filed on December 20, 1994.

3    Tuolumne County Sheriff's Office Procedure No. 6.45.1.

4    Tuolumne – Documents related to Mentally Ill Criminal Offenders Crime

5    Reduction Grant program

6    Tuolumne Co Sheriff Custody Division Jail Statistics 11/26/07

7    Tuolumne County Grand Jury Final_Report_2008-06-04

8    Tuolumne Jail Needs Assessment

9    Ventura – See Penal Code section 4024.1.  Declarations, all dated in

10    approximately 30 day increments, to the Presiding Judge of the Ventura County Superior

11    Court requesting authorization to implement the provisions of Penal Code Section

12    4024.1; Signed authorization documents from the Presiding Judge of the Ventura

13    County Superior Court, allowing the accelerated release.

14    Ventura – Letter dated February 6, 2007 from Intervenor-Defendant to County

15    Board of Supervisors in regard to the Mentally Ill Offender Crime Reduction Grant and

16    the attached related documents.

17    Yolo – Roy et al. v. County of Yolo et al., United States District Court, Eastern

18    District of California, NO. CIV S-90-0393, DFL-JFM P, and copy of internal tracking log

19    of releases

20    Probation "Approved" Annual Budget Fiscal Year 2008/2009

21    Roy et al. v. County of Yolo et al., United States District Court, Eastern District of

22    California, NO. CIV S-90-0393, DFL-JFM P.

23    Atwater PD Re: Booking Report, by date as per Government Code 6254f(1)

24    Butte County Sheriff, Electronic Surveillance Program

25    Delano PD, 2007-2008 Booking Report Summaries

26    Fremont Police Department, Parole Violation Arrests, July 1, 2007 through July 1,

27    2008

28    Roseville PD Crime Suppression Unit Re: 2008 Activity Log; 2007 Yearly Report

1654598.6

1    of Activities; Case Notes

2        Inmates of Santa Barbara v. Sheriff John Carpenter, Case No. 152487 and its

3    related documents. This case was decided in the early 1980's.

4        Santa Barbara - Current Policy and Procedures relating to Community Release

5    issued 2/08 and historical Policies and Procedures relating to Community Release.

6        San Joaquin County Sheriff's Custody Division Policies and Procedures sections

7    1.4.2, 3.2.4, and 8.7.3; See In the Matters of Johnnie S. Smith, et al., Case No. 43450

8    and Daniel S. Gonzales, et al., Case No. 44255, Interim Order filed May 8, 1989,

9    Superior Court, County of San Joaquin, Agreement and Consent Decree filed December

10   17, 1990 and amendments thereto covering the period from January 1, 1995 to the

11   present; San Joaquin County Corrections Standards Authority Local Jail Construction

12   Funding Program – San Joaquin County Jail Inmate Housing & Infrastructure

13   Construction Project; documents relating to AB 900 and use of the Northern California

14   Women's Facility as a re-entry facility; and San Joaquin County Sheriff's Department Jail

15   Needs Assessment Update.

16       San Joaquin – Statistics of court cap releases and work programs releases.

17       San Joaquin County Sheriff 2007 Jail Profile Survey

18       San Joaquin County Sheriff Policies & Procedures  3.2.2 - Jail Crowding

19       San Joaquin County Sheriff Policies & Procedures 3.2.1 - Unit Mgmt

20       Michael Harris, et al., v. County of Placer, et al. Case No. CIVS 90-394 LKK-JFM,

21   (Bates-stamped 000000-000017).

22       Placer County - Final R.E.W.A.R.D. Grant Application, 6/18/97 (000018-000061);

23   Violent Offender Incarceration Grant, 10/21/97 (000124-000251); Adult Detention Facility

24   Construction Grant Application: Housing Unite Four, 3/11/99 (000314-000349); Report to

25   the Grand Jury, 1/21/97 (000379-000403); Corrections Division 1996 Year End Report,

26   1/31/97 (000404-000419); Criminal Justice Master Plan: Recommendations, 2/9/98

27   (000420-000432); Placer County DUI Symposium; Statistical Summaries. 4/24/06

28   (000433-000434); REALITIES (Program Proposal) (000492-000502); Providing Contract

- 53 -

Services, Roseville Police Department Jail: Sentenced Prisoner Program, 2007 (000503-000506); Supplemental Budget Request, 2/28/05 (000642-000647); Inmate Needs and Assessment Survey, 1998 (000648-000701); Mark Morris Associates, background papers, 9/23/97 (000702-000717).

Placer County - Policy 2-1: Corrections Commander, Policy 2-7: Classification, Policy 3-7: Inmate Release, Policy 6-9: County Parole Program, BOC Letter authorizing use of additional beds, 4/19/1999. These documents are Bates-stamped 000718-000743 and 000490-000491.

Placer County - Trends and Comparisons by Mark Morris, 2003 (00360-000378); Order of Release (000435-000435); Classification Manual, Captain Keyes (000436-000455); Inmate Classification Manual, Captain Reader (000456-000469); Own Recognizance Report (000470-000470); Classification Interview Questions and Decision Tree (000471-000473); Classification Unit Manual, Captain FitzGerald (note: numbered by accident in reverse order; 000489 is page on of this documents) (000474-000489); Request for Technical Assistance for Discharge Planning Policies and Implementation (to US Dept of Housing and Urban Development), 10/10/06 (000507-000614); Substance Abuse Program Overview, and Misc. Papers, 3/2/07 (000615-000641).

Placer – Mentally Ill Offender Crime Reduction Grant Application, 3/4/99 (000062-000093); Mentally Ill Offender Crime Reduction Grant Application, 11/6/06 (000094-000123); Mentally Ill Offender Crime Local Plan Model, Placer County CARE Program, March 1999 (000252-000313).

Alhambra PD Re: Parolee Registrants

Alhambra PD Re: Probation Arrests

Grover Beach PD Re: Parolees arrested January 1, 07 to July 24, 08

Grover Beach PD Re: Probationers arrested between January 1, 07 to July 24, 08

Kern Co Sheriff Annual Statistics 7-1-07 to 6-30-08

Kern Co Sheriff General Statistics

Kern County Sheriff Bd of Corrections FY 07-08 Quarterly Reports

1        Kern County Sheriff Bd of Corrections Jail Profile Survey FY 07-08 Monthly

2  Reports

3        Kern County Sheriff CRF Policy C-100 Receiving Inmates

4        Kern County Sheriff CRF Policy C-200 Inmates Surrendered or Arrested by a

5  Bondsman

6        Kern County Sheriff CRF Policy C-400 Absentee  Enrouter Bookings

7        Kern County Sheriff CRF Policy C-800 Manual Bookings

8        Kern County Sheriff CRF Policy F-100 Release from CRF Custody

9        Kern County Sheriff CRF Policy F-200 Release on Citation

10        Kern County Sheriff DB K-100 Inmate Classification - General Policy

11        Kern County Sheriff DB K-310 Minimum Facillty Eligibility

12        Kern County Sheriff DB Policy C-1400 Release on Citation

13        Kern County Sheriff DB Policy K-0300 Classification Criteria

14        Kern County Sheriff DB Policy K-200 Classification Unit Responsibility

15        Kern County Sheriff DB Policy K-320 - Inmate Population Management

16        Kern County Sheriff Electronic Monitoring Program Inmate Management System

17  Query

18        Kern County Sheriff Jail Needs Assessment

19        Kern County Sheriff Max Policy C-2200 Release From Custody

20        Kern County Sheriff Min Policy C-120 Inmate Releases

21        Kern County Sheriff Min Policy D-150 Transfer to Another Agency

22        Kern County Sheriff PT Policy C-110 Receiving Federal Inmates

23        Kern County Sheriff PT Policy C-200 Releasing Inmates from Pre-Trial

24        Kern County Sheriff PT Policy C-201 Releasing Federal Inmates from Pre-Trial

25        Kern County Sheriff Work Release Program FY 07-08, Annual Statistics, cover

26  memo

27        Yuba County Sheriff Booking Procedure

28        Yuba County Sheriff Classification Plan

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)

1654598.6

1    Yuba County Sheriff Dress-In & Housing

2    Yuba County Sheriff O.R. Releases

3    Yuba County Sheriff Release - Bail

4    Yuba Co. Sheriff Release for Time Served

5    White Paper, Earned Discharge, Division of Adult Parole Operations

6    Chief Probation Officers of California, Adult Probation Services and the Need to

7    Increase Public Safety, Accountability, Competency Development and Cost

8    Effectiveness

9    Do the Crime, Do the Time?   Maybe Not, In California:  Jail Cell Shortage is

10    Upsetting the Balance, California State Sheriff's Association, June 2006

11    Little Hoover Commission Report, November 13, 2003

12        4.    **County Intervenors**

13    Santa Clara County's Proposed Exhibit List is attached as Exhibit G.

14    San Mateo County's Proposed Exhibit List is attached as Exhibit H.

15    Santa Barbara County has no proposed exhibits.

16        5.    **Sonoma County Intervenors**

17    Sonoma County Intervenors designate each of the following documents provided

18    in discovery as trial exhibits:

19        A.  Documents attached as appendices/exhibits to the Expert Report of David M.

20    Bennett (Submitted by Sonoma County Intervenors) dated August 15, 2008, including:

21    (1) Appendix "A" – David Bennett Resume; (2) Appendix "B" – List of Documents

22    Provided by County Counsel for Review; (3) Appendix "C" – County of Sonoma

23    Corrections Master Plan, December 2007; and (4) Appendix "D" – List of Settlement

24    Options proposed by Sonoma County Intervenors and County Intervenors via letter

25    dated December 18, 2007.

26        B.  Documents attached to Sonoma County Intervenors' Supplemental

27    Disclosures and Responses to Requests for Production of Documents, including: (1)

28    Memorandum from Lt. Toby to ASH Suvoy dated September 10, 2008, regarding Parole

1  Populations; (2) Letter from Donald M. Allen, Field Representative, Facilities Standard

2  and Operation Division, Corrections Standards Authority, to Sheriff Cogbill, dated July

3  16, 2008; (3) Corrections Standards Authority 2006-2008 Biennial Inspections Report of

4  the Sonoma County Sheriff's Department Main Adult Detention Facility dated November

5  7, 2007; and (4) Corrections Standards Authority 2006-2008 Biennial Inspections Report

6  of the Sonoma County Sheriff's Department North County Detention Facility, with a final

7  date of April 24, 2008.

8        C.  Adult Detention Planning Staff Report, Adult Detention Projections, Final

9  Report dated January 2006 (General Services Department/Sheriff's Department),

10  produced in response to Plaintiffs' First Request for Production of Documents directed to

11  Sonoma County Intervenors

12                         **VII.    Discovery Documents**

13  **A.    Defendants**

14          1.    *Coleman* Plaintiffs' Responses to Defendant Schwarzenegger's

15          First Set of Interrogatories, dated November 5, 2007 (Defendants' Exhibit No.

16          1214).

17          2.    *Coleman* Plaintiffs' Responses to Defendant Schwarzenegger's

18          Second set of Interrogatories, dated December 23, 2007 (Defendants' Exhibit

19          No. 1215).

20          3.    *Coleman* Plaintiffs' Responses to Defendant Schwarzenegger's

21          First Set of Request for Production of Documents, dated March 6, 2008

22          (Defendants' Exhibit No. 1216).

23          4.    *Coleman* Plaintiffs' Responses to Defendant Cate's First Set of

24          Interrogatories, dated September 2, 2008 (Defendants' Exhibit No. 1217).

25          5.    *Coleman* Plaintiffs' Supplemental Responses to Defendant

26          Arnold Schwarzenegger's First Set of Interrogatories, dated April 11, 2008

27          (Defendants' Exhibit No. 1320).

28          6.    Plaintiff Marcial/Marciano Plata's Supplemental Response to

1  Defendant Michael Genest's First Set of Interrogatories, dated December 11,

2  2007 (subject to protective order) (Defendants' Exhibit No. 1321).

3         7.      Plaintiff Marcial/Marciano Plata's Second Supplemental

4  Response To Defendant Genest's First Set of Interrogatories, dated

5  September 18, 2008 (subject to protective order) (Defendants' Exhibit No.

6  1322).

7         8.      Plaintiff Leslie Rhoades's Second Supplemental Response to

8  Defendant Genest's First Set of Interrogatories, dated September 16, 2008

9  (subject to protective order) (Defendants' Exhibit No. 1314).

10         9.      Plaintiff Gilbert Aviles's Second Supplemental Response to

11  Defendant Genest's First Set of Interrogatories ,dated September 16, 2008

12  (subject to protective order) (Defendants' Exhibit No. 1315).

13         10.     Plaintiff Steven Bautista's Second Supplemental Response to

14  Defendant Genest's First Set of Interrogatories ,dated September 16, 2008

15  (subject to protective order) (Defendants' Exhibit No. 1316).

16         11.     Plaintiff Clifford Myelle's Second Supplemental Response to

17  Defendant Genest's First Set of Interrogatories ,dated September 16, 2008

18  (subject to protective order) (Defendants' Exhibit No. 1317).

19         12.     Plaintiff Ray Stoderd's Second Supplemental Response to

20  Defendant Genest's First Set of Interrogatories ,dated September 16, 2008

21  (subject to protective order) (Defendants' Exhibit No. 1318).

22         13.     *Plata* Plaintiffs' Third Supplemental Response to Defendant

23  Schwarzenegger's First Set of Interrogatories ,dated September 8, 2008

24  (Defendants' Exhibit No. 1319).

25         14.     *Plata* Plaintiffs' Third Supplemental Response to Defendant

26  Tilton's First Set of Interrogatories, dated September 8, 2008.  (Defendants'

27  Exhibit No. 1323).

28         15.     Response by Intervenor CCPOA to Defendant

- 58 -

1          Schwarzenegger's First Set of Interrogatories (November 13, 2007)

2          (Defendants' Exhibit No. 1325).

3                16.     Supplemental Response by Intervenor CCPOA to Defendant

4          Schwarzenegger's First Set of Interrogatories (December 4, 2007)

5          (Defendants' Exhibit No. 1326).

6 **B.**     **Plaintiffs (all of the designations below are offered by both *Plata* and *Coleman* plaintiffs)**

7

8         **Defendants' Responses to *Coleman* Plaintiffs' Requests**

9         <u>Defendant Governor Schwarzenegger's Responses to Plaintiff Coleman's First</u>

10 <u>Set of Interrogatories</u> (November 9, 2007)

11         Responses to Interrogatories 1, 3, 5, 7, 9, 11, 13, 15, 19, and 24.

12         <u>Defendant Tilton's Response to Plaintiff Coleman's Interrogatories</u> (November 9,

13 2007)

14         Responses to Interrogatories 13, 14, 15, 16 (and Exhibit A to Interrogatory 16),

15 17, 18, 19, 23, and 24.

16         <u>Defendant Cate's Responses to Plaintiff Coleman's First Set of Interrogatories</u>

17 (July 25, 2008)

18         Responses to Interrogatories 9, 11, 12, 13, 14, 17, 18, 19, and 20.   Documents

19 identified in response to Interrogatories 17, 18, 19, and 20.

20         <u>Defendant Cate's Responses to Second Set of Interrogatories from Plaintiff</u>

21 <u>Coleman</u> (August  8, 2008)

22         Response to Interrogatory Number 5.

23         <u>Defendant Cate's Supplemental Responses to Then-Secretary Tilton November</u>

24 <u>2007 Responses to Plaintiff Coleman's Interrogatories, Set One</u> (August 15, 2008)

25         Responses to Interrogatories 13, 14, 15, 19, 20, and 24.

26         <u>Responses to Plaintiff Coleman's First Set of Requests for Admission to</u>

27 <u>Defendant Cate</u> (September 4, 2008)

28

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)

1654598.6

1    Responses to Requests for Admission 1, 2, 3, 6, 7, 8, 11, 12, 13, 16, 17, 18, 21,

2    22, 23, and 30.

3    Responses to Plaintiff Coleman's First Set of Requests for Admission to

4    Defendant Schwarzenegger (September 5, 2008)

5    Responses to Requests for Admission 1, 2, 3, 4, and 6.

6    Defendant Arnold Schwarzenegger's Response to Plaintiff Coleman's Second Set

7    of Requests for Admissions (October 20, 2008)

8    Responses to Requests for Admission 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14,

9    15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37,

10   38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, and 56.

11   **Defendants' Responses to _Plata_ Plaintiffs' Requests**

12   Defendant Tilton's Response to Plata Plaintiffs' First Set of Interrogatories

13   (November 9, 2007), Response to Interrogatory 10.

14   Defendant Cate's Supplemental Responses to Plata Plaintiffs' First Set of

15   Interrogatories to Former Defendant Tilton (August 15, 2008), Supplemental Response

16   to Interrogatory 10.

17   **Intervenor Defendants' Responses to Plaintiffs' Requests**

18   Intervenor-Defendant Amador County Sheriff=s Responses to Plaintiffs' First Set

19   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

20   Intervenor-Defendant Butte County Sheriff's Responses to Plaintiffs' First Set of

21   Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

22   Intervenor-Defendant Calaveras County Sheriff's Responses to Plaintiffs' First Set

23   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

24   Intervenor-Defendant Eldorado County Sheriff's Responses to Plaintiffs 'First Set

25   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

26   Intervenor-Defendant Fresno County Sheriff's Responses to Plaintiffs' First Set of

27   Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

28

1654598.6

1    Intervenor-Defendant Humboldt County Sheriff=s Responses to Plaintiffs' First
2    Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

3    Intervenor-Defendant Inyo County Sheriff=s Responses to Plaintiffs' First Set of
4    Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

5    Intervenor-Defendant Kern County Sheriff=s Responses to Plaintiffs' First Set of
6    Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

7    Intervenor-Defendant Los Angeles County Sheriff=s Responses to Plaintiffs' First
8    Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

9    Intervenor-Defendant Merced County Sheriff=s Responses to Plaintiffs' First Set
10   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

11   Intervenor-Defendant Orange County Sheriff=s Responses to Plaintiffs' First Set
12   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

13   Intervenor-Defendant Placer County Sheriff=s Responses to Plaintiffs' First Set of
14   Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

15   Intervenor-Defendant San Benito County Sheriff=s Responses to Plaintiffs' First
16   Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

17   Intervenor-Defendant San Diego County Sheriff=s Responses to Plaintiffs' First
18   Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

19   Intervenor-Defendant San Joaquin County Sheriff=s Responses to Plaintiffs' First
20   Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

21   Intervenor-Defendant San Mateo County Sheriff=s Responses to Plaintiffs' First
22   Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

23   Intervenor-Defendant Santa Barbara County Sheriff=s Responses to Plaintiffs'
24   First Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

25   Intervenor-Defendant Shasta County Sheriff=s Responses to Plaintiffs' First Set
26   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

27   Intervenor-Defendant Solano County Sheriff=s Responses to Plaintiffs' First Set
28   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)

1654598.6

1       Intervenor-Defendant Stanislaus County Sheriff=s Responses to Plaintiffs' First

2   Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

3       Intervenor-Defendant Tehama County Sheriff=s Responses to Plaintiffs' First Set

4   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

5       Intervenor-Defendant Tuolumne County Sheriff=s Responses to Plaintiffs' First

6   Set of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

7       Intervenor-Defendant Ventura County Sheriff=s Responses to Plaintiffs' First Set

8   of Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

9       Intervenor-Defendant Yolo County Sheriff=s Responses to Plaintiffs' First Set of

10  Interrogatories, Responses to Interrogatories Numbers 1, 3 and 4.

11  **C.**    **Defendant Intervenors**

12      1.    **Law Enforcement Intervenors**

13      2.    **County Intervenors**

14      The County of Santa Clara will offer the following discovery documents in its case

15  in chief: (1) Expert Report of Gary A. Graves; (2) Expert Report of Nancy Dane Pena; (3)

16  Expert Report of Robert Garner; (4) Expert Report of Paul McIntosh; (5) Supplemental

17  Expert Report of Paul McIntosh.

18      The County of San Mateo will offer the following discovery documents in its case

19  in chief:  (1) Expert Report of David S. Boesch, Jr.; (2) Expert Report of Loren Buddress;

20  (3) Expert Report of Beverly Beasley Johnson; (4)  Expert Report of Greg Munks; (5)

21  Expert Report of Charlene A. Silva.

22      The County of Santa Barbara will not offer any discovery documents in its case in

23  chief.

24      The County Intervenors reserve the right to use discovery documents not

25  disclosed in this Statement for impeachment or rebuttal purposes.

26      3.    **Sonoma County Intervenors**

27      A. Discovery Responses: Sonoma County Intervenors designate their

28  Supplemental Disclosures and Responses to Requests for Production of Documents,

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)    1654598.6

1  including the documents attached thereto.

2          B. <u>Expert Reports</u>: Sonoma County Intervenors designate the two expert reports

3  prepared and submitted by their retained expert witness David M. Bennett, and

4  previously provided to the parties in discovery, including: (1) Expert Report of David M.

5  Bennett (Submitted by Sonoma County Intervenors) dated August 15, 2008 (including its

6  appendices); and (2) Supplemental Expert Report of David M. Bennett (Submitted by

7  Sonoma County Intervenors) dated October 16, 2008.

8          C. <u>Deposition Transcript Excerpts</u>. Sonoma County Intervenors designate the

9  following deposition transcript excerpts from the Deposition of James Austin, Volume 1,

10  September 19, 2008 (designated by page number/line number):

11          Coverpage

12          229/6 through 232/1

13          232/25 through 233/7

14          235/9 through 236/5

15          239/13 through 15

16          252/14 through 253/1

17          273/17 through 278/6

18          279/17 through 282/6

19          289/24 through 290/10

20          292/3 through 296/3

21                          **VIII.    STIPULATIONS**

22          On the date on which this pretrial conference statement is signed, the parties

23  enter into stipulations agreeing the following:

24  **A.     Modification of Courts Order of February 8, 2008 and Questioning of
        Witnesses by Intervenors**

25

26          The parties have agreed on a Stipulation and Proposed Order to resolve the due

27  process concerns raised by the Court's February 8, 2008 Order that "Intervenors, will,

28  however, present their evidence and question other parties' witnesses through not more

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)                                    1654598.6

1  than a total of three different attorneys throughout the trial." In its March 18, 2008 Order,

2  the Court directed the parties to "present in their joint pretrial conference statement any

3  such arguments for the need for separate counsel to participate at trial." The Stipulation

4  and Proposed Order By All Parties and Intervenors for Modification of the Court's Order

5  of February 8, 2008 re Intervenor Representation at Trial will be filed simultaneously with

6  this Joint Pre-Trial Conference Statement.

7  **B.   Testimony of Dr. David Thomas**

8       The parties agree that Dr. David Thomas can be called as a witness out of order

9  on December 11, 2008 to allow Dr. Thomas to recover from a surgery. If trial does not

10  extend to December 11, 2008, the parties agree that Dr. Thomas can be called on

11  December 11, 2008 for his direct, cross and redirect examination. Should Dr. Thomas

12  suffer from unanticipated consequences due to his surgery which render him unable to

13  travel for live in-court testimony, the parties agree that Defendants can present Dr.

14  Thomas' testimony remotely via video-conference technology on December 11, 2008 or

15  on another date determined by Defendants during their case in chief.

16  **C.   Testimony of Plaintiffs by Deposition**

17       The parties agree to the following: (1.) Defendants can present testimony of the

18  prisoner plaintiffs through deposition; (2) The video of deposition testimony will not be

19  used; (3) Plaintiffs can designate testimony from the deposition in response to

20  defendants' designation; (4) The parties reserve all rights to object to the admissibility of

21  any testimony offered.

22  **D.   Regarding Use of Technology at Trial**

23       The parties agree that exhibits may be displayed electronically on projection

24  screens and/or monitors at trial. The parties are allowed to use trial presentation

25  software and trial technology consultant(s) to facilitate this process. The parties will

26  make efforts to minimize the amount of equipment and consultants in the courtroom. To

27  that end, to the extent the parties mutually agree to share equipment and consulting

28  services, they agree to share in the cost equally.

1

**E.    Admission of Monitoring Report**

2

The *Coleman* Plaintiffs and Defendants stipulate that, because the *Coleman*

3

Special Master's 20th Monitoring Report (Part A) addresses tours that occurred prior to

4

the Court's August 31, 2008, evidentiary deadline regarding prison conditions, the

5

parties can properly identify the report as a trial exhibit.

6

**F.    Non-Retained Expert Testimony**

7

Subject to and without waiving Defendants' pending Motion in Limine No. 13, the

8

parties stipulate that non-retained experts identified as trial witnesses in this pretrial

9

statement who do not submit reports shall have one hour to testify on direct examination

10

at trial.

11

**G.    Deposition Testimony**

12

The parties have agreed to exchange deposition excerpts (in the form of page/line

13

citations) in the pretrial conference statement and to exchange objections to other

14

parties' designations by November 6.  All parties reserve the right to use a deposition to

15

impeach any witness at trial, even if that party does not include deposition excerpts in

16

this pretrial conference statement.

17

**H.    Trial Witness Schedules**

18

The parties have agreed to exchange trial witness schedules one week in

19

advance.  (For example, Plaintiffs' planned schedule for the week of November 18 will

20

be sent out November 11.) Minor changes might be necessary based on scheduling and

21

availability.  The parties will confer every evening about the firm plans for the next day's

22

witnesses.  The defendant intervenors will provide a joint witness list, in a single

23

document or email.

24

**I.    Opening Statements**

25

The parties have agreed to 15-minute opening statements: one for *Plata* Plaintiffs,

26

one for *Coleman* Plaintiffs, one for Plaintiff intervenors, one for *Plata* Defendants, one for

27

*Coleman* Defendants, and one for Defendant-intervenors jointly.

28

**J.    Other**

- 65 -

1    The parties have agreed to a procedure to attempt to find agreement on
2  admissibility and authenticity of each parties' trial exhibits.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PRETRIAL STATEMENT
(2:90-CV-00520 LKK JFM )(C01-1351 TEH)

1654598.6

1

2

DATED:  October 30, 2008                    HANSON BRIDGETT LLP

3

4

By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants

5

Arnold Schwarzenegger, et al.

6

DATED:  October 30, 2008                    EDMUND G. BROWN JR.
Attorney General of the State of California

7

8

9

By: /s/ Kyle A. Lewis
KYLE A. LEWIS
Deputy Attorney General

10

Attorneys for Defendants
Arnold Schwarzenegger, et al.

11

12

DATED:  October 30, 2008                    PRISON LAW OFFICE

13

14

By: /s/ Donald Specter
DONALD SPECTER

15

Attorneys for *Plata* Plaintiffs.

16

17

DATED:  October 30, 2008                    ROSEN BIEN & GALVAN

18

19

By: /s/ Michael Bien
MICHAEL BIEN

20

Attorneys for *Coleman* Plaintiffs.

21

DATED:  October 30, 2008                    CARROLL, BURDICK & MCDONOUGH

22

23

By: /s/ Natalie Leonard

24

NATALIE LEONARD
Attorneys for CCPOA Intervenors.

25

26

27

28

- 67 -

DATED:  October 30, 2008                    AKIN GUMP STRAUSS HAUER & FELD
                                                        LLP

By: /s/ Steven Kaufhold
_____
STEVEN KAUFHOLD
Attorneys for Republican Assembly and
Senate Intervenors

DATED:  October 30, 2008                    JONES & MAYER

By: /s/ Kimberly Hall Barlow
_____
KIMBERLY HALL BARLOW
Attorneys for Law Enforcement Intervenors

DATED:  October 30, 2008                    ROD PACHECO, DISTRICT ATTORNEY,
                                                        COUNTY OF RIVERSIDE

By: /s/ William E. Mitchell
_____
WILLIAM E. MITCHELL
Attorneys for District Attorney Intervenors

DATED:  October 30, 2008                    ANN MILLER RAVEL, COUNTY COUNSEL,
                                                        SANTA CLARA COUNTY

By: /s/ Theresa J. Fuentes
_____
THERESA J. FUENTES
Attorneys for County Intervenors.

DATED:  October 30, 2008                    STEVEN M. WOODSIDE, COUNTY
                                                        COUNSEL, COUNTY OF SONOMA

By: /s/ Anne L. Keck
_____
ANNE L. KECK
Attorneys for the County of Sonoma, Sonoma
County Sheriff/Coroner William Cogbill, Sonoma
County District Attorney Stephan Passalacqua
and Sonoma County Chief Probation Officer
Robert OCHS.

- 68 -