```
 1  JONES & MAYER
    Martin J. Mayer (SB # 73890)
 2  Michael R. Capizzi (SB # 35864)
    Kimberly Hall Barlow (SB # 149902)
 3  Ivy M. Tsai (SB # 223168)
    3777 North Harbor Boulevard
 4  Fullerton, California 92835
    (714) 446-1400; Fax (714) 446-1448
 5  e-mail: mjm@jones-mayer.com
    e-mail: mrc@jones-mayer.com
 6  e-mail: khb@jones-mayer.com
    e-mail: imt@jones-mayer.com
 7
    Attorneys for Intervenor-Defendants
 8  SAN DIEGO COUNTY SHERIFF WILLIAM B.
    KOLENDER, ORANGE COUNTY SHERIFF-
 9  CORONER SANDRA HUTCHENS, PLACER
    COUNTY SHERIFF EDWARD N. BONNER,
10  BUTTE COUNTY SHERIFF-CORONER PERRY
    L. RENIFF, CALAVERAS COUNTY SHERIFF
11  DENNIS DOWNUM, LOS ANGELES COUNTY
    SHERIFF LEE BACA, SANTA CLARA COUNTY
12  SHERIFF LAURIE SMITH, SAN BENITO COUNTY
    SHERIFF CURTIS HILL, STANISLAUS COUNTY
13  SHERIFF ADAM CHRISTIANSON, MENDOCINO
    COUNTY SHERIFF TOM ALLMAN, TEHAMA
14  COUNTY SHERIFF CLAY PARKER, LASSEN
    COUNTY SHERIFF STEVE WARREN, YOLO
15  COUNTY SHERIFF ED PRIETO, SANTA BARBARA
    COUNTY SHERIFF BILL BROWN, KERN COUNTY
16  SHERIFF DONNY YOUNGBLOOD, SAN MATEO
    COUNTY SHERIFF GREG MUNKS, YUBA COUNTY
17  SHERIFF STEVE DURFOR, CONTRA COSTA
    COUNTY SHERIFF WARREN RUPF,
18  SHASTA COUNTY SHERIFF TOM BOSENKO,
    RIVERSIDE COUNTY SHERIFF STANLEY SNIFF JR.,
19  VENTURA COUNTY SHERIFF BOB BROOKS,
    SOLANO COUNTY SHERIFF GARY R. STANTON,
20  SAN LUIS OBISPO COUNTY SHERIFF PAT HEDGES,
    SUTTER COUNTY SHERIFF JIM DENNEY,
21  LAKE COUNTY SHERIFF ROD MITCHELL,
    GLENN COUNTY SHERIFF LARRY JONES,
22  TUOLUMNE COUNTY SHERIFF JIM MELE,
    FRESNO COUNTY SHERIFF MARGARET MIMS,
23  MONTEREY COUNTY SHERIFF MIKE KANALAKIS,
    MONO COUNTY SHERIFF RICHARD SCHOLL,
24  HUMBOLDT COUNTY SHERIFF GARY PHILP,
    EL DORADO COUNTY SHERIFF JEFF NEVES,
25  MERCED COUNTY SHERIFF MARK PAZIN,
    DEL NORTE COUNTY SHERIFF DEAN WILSON,
26  SAN JOAQUIN COUNTY SHERIFF STEVE MOORE,
    AMADOR COUNTY SHERIFF MARTIN RYAN,
27  INYO COUNTY SHERIFF WILLIAM LUTZE,
    STANISLAUS COUNTY CHIEF PROBATION OFFICER
28  JERRY POWERS, VENTURA COUNTY CHIEF
```

-1-

DECLARATION OF EXPERT WITNESS CHIEF ALEXANDER YIM

| | |
|---|---|
| 1 | PROBATION OFFICER KAREN STAPLES, SOLANO COUNTY CHIEF PROBATION OFFICER |
| 2 | ISABELLE VOIT, SANTA BARBARA COUNTY CHIEF PROBATION OFFICER PATRICIA STEWART, |
| 3 | BUTTE COUNTY CHIEF PROBATION OFFICER JOHN WARDELL, SAN LUIS OBISPO COUNTY CHIEF |
| 4 | PROBATION OFFICER KIM BARRETT, CONTRA COSTA COUNTY CHIEF PROBATION OFFICER |
| 5 | LIONEL CHATMAN, INYO COUNTY CHIEF PROBATION OFFICER JIM MOFFETT, |
| 6 | SHASTA COUNTY CHIEF PROBATION OFFICER BRIAN RICHART, YOLO COUNTY |
| 7 | CHIEF PROBATION OFFICER DON MEYER, FRESNO COUNTY CHIEF PROBATION OFFICER |
| 8 | LINDA PENNER, MARIPOSA COUNTY CHIEF PROBATION OFFICER GAIL NEAL, CITY OF |
| 9 | WHITTIER POLICE CHIEF DAVE SINGER, CITY OF ROSEVILLE POLICE CHIEF JOEL NEVES, |
| 10 | CITY OF PASADENA POLICE CHIEF BARNEY MELEKIAN, CITY OF ALHAMBRA POLICE |
| 11 | CHIEF JIM HUDSON, CITY OF FREMONT POLICE CHIEF CRAIG STECKLER, CITY OF |
| 12 | GROVER BEACH POLICE CHIEF JIM COPSEY, CITY OF SANTA CLARA POLICE CHIEF STEVE |
| 13 | LODGE, CITY OF VACAVILLE POLICE CHIEF RICH WORD, CITY OF WOODLAND POLICE CHIEF |
| 14 | CAREY SULLIVAN, CITY OF SONORA POLICE CHIEF MACE McINTOSH, CITY OF PASO ROBLES POLICE |
| 15 | CHIEF LISA SOLOMON, CITY OF SAN BERNARDINO POLICE CHIEF MICHAEL BILLDT, CITY OF |
| 16 | ATWATER POLICE CHIEF RICHARD HAWTHORNE, NATIONAL CITY POLICE CHIEF ADOLFO GONZALES, |
| 17 | CITY OF DELANO POLICE CHIEF MARK DeROSIA, CITY OF MODESTO POLICE CHIEF ROY WASDEN, |
| 18 | CITY OF FRESNO POLICE CHIEF JERRY DYER, AND CITY OF DELANO CHIEF OF CORRECTIONS GEORGE |
| 19 | GALAZA |

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No: CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |

-2-
DECLARATION OF EXPERT WITNESS CHIEF ALEXANDER YIM

| | |
|---|---|
| vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　　Defendants. | [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)]<br>**DECLARATION OF CHIEF ALEXANDER YIM** |
| MARCIANO PLATA, et al.,<br>　　　Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br>　　　Defendants. | Case No.: C01-1351 TEH<br>**THREE-JUDGE COURT** |

I, CHIEF ALEXANDER YIM, hereby declare as follows:

1. I have been employed by the Los Angeles County Sheriff's Department for the last 26 years, and currently serve as the Chief of the Correctional Services Division. The Correctional Services Division is comprised of the Inmate Reception Center, Medical Services Bureau, Transportation Bureau, Bureau of Offender Programs, Food Services Unit, and the Mental Health Liaison Unit. I received my Bachelor's of Science Degree in Occupational Science from the California State University, Long Beach in 2007.

2. I have had oversight of ancillary correctional programs and functions since 2004, as an area commander and chief, for a jail environment with an average daily population of 20,000 inmates.

3. The Inmate Reception Center processes and releases an average of 180,000 inmates per year. The processing effort includes appropriately classifying and housing all individuals who are arrested and brought to the Los Angeles County jail system by any competent authority. The Inmate Reception Center is also responsible for monitoring the daily inmate population numbers, ensuring that all facilities are adhering to established

jail capacities (caps) and all inmates are appropriately housed according to security levels and special handling designations. Release criteria (early release percentage and good time/other release credits) and inmate releases are determined and completed by Inmate Reception Center personnel.

4. The Transportation Bureau transported over 1.4 million inmates to court, other Los Angeles County Jail facilities, and state prisons in 2007. This bureau's buses were driven over 2.7 million miles in 2007.

5. The Food Services Unit has an annual operational food budget of over 26 million dollars, and produces over 87,000 inmate meals a day for the Los Angeles County jail system. Included in this number are 6,000 meals for inmates temporarily housed in patrol station jails, those who are going to court, and 6,500 special medical diet meals.

6. During my 26 years on the Sheriff's Department, I have been assigned to several patrol, detective, and administrative assignments, prior to my return to the correctional environment in 2004.

7. Based on the my past and current work experience for the Los Angeles County Sheriff's Department, I have an intimate knowledge of the design capacity of the Los Angeles County jail system, current inmate population information, the policies surrounding inmate release procedures from the Los Angeles County jail system, and the impact of a state prisoner release order on certain segments of the Los Angeles County criminal justice system.

8. There are court imposed limits in place in Los Angeles County as to the number of individuals that can be housed in any jail operated or maintained by the County. The Dennis Rutherford, et al., (Plantiff) vs Sherman Block, et al., (Defendant) Case No.: CV-75-4111 WPG, mandated cap was 25,000 and approximately a year and a half ago the Federal Court further limited our ability to house inmates in our main county jail, reducing the population by approximately 2,000 inmate beds (equivalent to a nearly 10 percent reduction.) In addition, we are under a federal court order to not have floor sleepers in our jail system. The imposition of inmate population caps results, from time to time, in a requirement that the County reduce the number of inmates currently in custody in order to meet the cap requirement.

9.   As of October 29, 2008, within the Los Angeles County jail system there were 22,515 useable beds, 21,381 functional beds, 1,044 unavailable beds and 90 non-usable beds, with a total inmate count of 19,172. The Inmate Reception Center has full responsibility to house all inmates within the Los Angeles County jail system. The Inmate Reception Center assesses the jail population and, based on their process, determines what the release percentage will be in overcrowding situations. The Inmate Reception Center, in assessing whether or not there is a risk of exceeding a cap, will recommend that there be a certain percentage of time served of nonviolent county sentenced misdemeanor violators that need to be released to avoid violation of the court order.

10.   Upon my arrival in 2004, the release percentage of time served for qualified non-violent misdemeanor males and females was 10 percent of full sentence. Once I receive a recommendation as to the cap compliance, I assess the current status of the jail environment, speak to our centralized housing unit and determine whether certain inmate populations can be shifted to other facilities to accommodate more inmates and assess if, from a global environment perspective, whether this percentage is proper

11.   From the inception of the Early Release program in 1993 to present there have been 770,807 inmates released on Early Release. This was approximately 29% of the total releases for this period. The approximate total number of inmates released during this time was 2,657,955.

12.   The Early Release program uses a matrix to determine which inmates qualify for early release. A point value is assigned to multiple factors in the matrix, including such items as security level, current charge, misdemeanant, felon, etc. Each inmate is then assigned a score with the lowest score being optimal. The program has been modified periodically through the years, based upon the current needs and new information about those released.

13.   Good Time / Work Time credit is calculated as one day removed from the inmate's sentence for every six days that the inmate is in custody. If a male inmate is in custody for more than 14 days, or 48 hours for female inmates, the Good Time / Work Time number is factored in and the inmate completes 70% of their sentence, if the

inmate's behavior qualifies. If the inmate is sentenced to less than 14 days for males, or 48 hours for females, the credit is not factored.

14. The vast majority of the County jail population is comprised of pretrial detainees, whereas approximately only 30% of the jail's population is sentenced inmates. California Penal Code sections 18 and 19 describe who is to be incarcerated in the County jail.

15. Although the overall Los Angeles County jail population is likely more violent then many county jails due to the large number of gang members, the Los Angeles County jail population is tremendously different from the State prison population. The average length of stay in the Los Angeles County jail is approximately 42 days. The California State prison average length of stay is 24 months. The jail population, as indicated above, is largely presentenced, with the resultant fear, depression and anxiety associated with this experience. Suicides and attempted suicide rates are significantly higher in Los Angeles County. The average age of a Los Angeles County inmate is 27 years old, as opposed to 37 years old in the California State prison. The average California State prison convict has been through the various County jail systems on multiple occasions before being sentenced to prison.

16. The Los Angeles County jail system is currently not robust enough to handle any additional workload and is struggling to handle the workload it is currently experiencing. A State Prison release order will overburden the jail system and would not be a proper solution to the alleged ills of the state system. The Los Angeles County jail system simply can not have this burden thrust upon it, without inheriting a significant danger to the public.

17. Approximately 5 percent of LA County inmates are governed by alternative programs such as electronic monitoring, confining people outside the jail facilities, with whatever restrictions the monitoring program has. The work release program is a free program and it does not cost the inmate or the County any funds. We supply a force of 660 county inmates, who are deemed low risk, to 152 work sites throughout the County. These inmates do not return to jail facilities after the workday, because they are in a program where they are allowed to live outside the jail facilities. If you talk to the

recipients of the free labor, they will say the program is working well. If you look at the noncompliance rate, the inmate's that do not show up, there may be an argument that the program is not working as well as it should be.

18.  The electronic monitoring program allows people who belong in jail, the high-risk, serious felons, to have a bed in the jail system. It also provides a mechanism for low-risk inmates, who were doing little or no jail time in prior years, such as 2004, to pay their debt to society, but outside the jail system.

19.  Weekenders serve their jail sentence on weekends, in our facilities. That helps the cap situation by not having them take up beds during the week. If there are no free beds when the weekend arrives, the weekenders cannot come in. During the week, it gives me some discretion to impose some jail punishment, but it gives me the discretion not to have them cause a cap problem.

20.  Station trustees are inmate workers provided to our 23 patrol stations. It is free labor with the inmates being housed at the individual patrol stations. Station trustees' beds are not considered jail beds for purposes of cap compliance.

21.  These programs have assisted me in maintaining cap compliance. There is one instance where an inmate was released to a CBAC program and committed a murder. In that one instance, these programs have created harm to public safety in Los Angeles County. To my knowledge, none of the senior people currently in the sheriff's department recommend that any of these programs be terminated because of a perceived threat to public safety.

22.  Only low risk, non violent misdemeanor inmates are the type of inmates who are considered for release in order to meet cap compliance. A low risk inmate would be a non-transient person convicted of a non-violent misdemeanor, with no current firearm charges and no violent conviction history.

23.  There is a program whereby certain designated and qualified misdemeanor defendants are booked and released, for certain offenses, rather than being taken in to the inmate population. The individual's bail amount determines whether somebody stays in custody or is released in this manner. This program is designed in part to assist in compliance with the cap requirements.

24. There are programs, such as electronic monitoring, which provide pretrial supervised release to certain low-risk offenders, rather than holding them in custody pending trial. In addition to that, probation sponsored electronic monitoring programs, for pre-sentenced inmates, also provides pretrial supervised release.

25. Our percentage-based early release program is modified as to the percentage of time served according to the inmate population at hand. As of this date, we currently hold male inmates for a minimum of 70 percent of their sentences and we hold female inmates for a minimum of 10 percent of their sentences. The differences in the percentages are due to differences in the availability of beds. The majority of female inmates in our custody, with the exception of probation violations, do 10 percent of their sentences. There are some exceptions to the 10 percent rule. Females who have confirmed gang memberships will be held longer. A number of male prisoners are released after they have done 70 percent of their time.

26. There are individuals, who have serious mental illnesses, housed within the Los Angeles County jail system. I do not think putting individuals in jail, with minor offenses, who are severely mentally ill, is the appropriate way to deal with issues such as those inmates. I think a more appropriate place for them would be a noncustodial environment, where they can receive more treatment. However, there are insufficient mental health resources in the community to provide for this group of individuals. Thus, when they commit crimes, and are incarcerated, we must deal with them at the local level, whether they are in local jails or living in our community.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 30th day of October, 2008 at Los Angeles, California.

CHIEF ALEXANDER YIM