```
 1  JONES & MAYER
    Martin J. Mayer (SB # 73890)
 2  Michael R. Capizzi (SB # 35864)
    Kimberly Hall Barlow (SB # 149902)
 3  Ivy M. Tsai (SB # 223168)
    3777 North Harbor Boulevard
 4  Fullerton, California 92835
    (714) 446-1400; Fax (714) 446-1448
 5  e-mail: mjm@jones-mayer.com
    e-mail: mrc@jones-mayer.com
 6  e-mail: khb@jones-mayer.com
    e-mail: imt@jones-mayer.com
 7
    Attorneys for Intervenor-Defendants
 8  SAN DIEGO COUNTY SHERIFF WILLIAM B.
    KOLENDER, ORANGE COUNTY SHERIFF-
 9  CORONER SANDRA HUTCHENS, PLACER
    COUNTY SHERIFF EDWARD N. BONNER,
10  BUTTE COUNTY SHERIFF-CORONER PERRY
    L. RENIFF, CALAVERAS COUNTY SHERIFF
11  DENNIS DOWNUM, LOS ANGELES COUNTY
    SHERIFF LEE BACA, SANTA CLARA COUNTY
12  SHERIFF LAURIE SMITH, SAN BENITO COUNTY
    SHERIFF CURTIS HILL, STANISLAUS COUNTY
13  SHERIFF ADAM CHRISTIANSON, MENDOCINO
    COUNTY SHERIFF TOM ALLMAN, TEHAMA
14  COUNTY SHERIFF CLAY PARKER, LASSEN
    COUNTY SHERIFF STEVE WARREN, YOLO
15  COUNTY SHERIFF ED PRIETO, SANTA BARBARA
    COUNTY SHERIFF BILL BROWN, KERN COUNTY
16  SHERIFF DONNY YOUNGBLOOD, SAN MATEO
    COUNTY SHERIFF GREG MUNKS, YUBA COUNTY
17  SHERIFF STEVE DURFOR, CONTRA COSTA
    COUNTY SHERIFF WARREN RUPF,
18  SHASTA COUNTY SHERIFF TOM BOSENKO,
    RIVERSIDE COUNTY SHERIFF STANLEY SNIFF JR.,
19  VENTURA COUNTY SHERIFF BOB BROOKS,
    SOLANO COUNTY SHERIFF GARY R. STANTON,
20  SAN LUIS OBISPO COUNTY SHERIFF PAT HEDGES,
    SUTTER COUNTY SHERIFF JIM DENNEY,
21  LAKE COUNTY SHERIFF ROD MITCHELL,
    GLENN COUNTY SHERIFF LARRY JONES,
22  TUOLUMNE COUNTY SHERIFF JIM MELE,
    FRESNO COUNTY SHERIFF MARGARET MIMS,
23  MONTEREY COUNTY SHERIFF MIKE KANALAKIS,
    MONO COUNTY SHERIFF RICHARD SCHOLL,
24  HUMBOLDT COUNTY SHERIFF GARY PHILP,
    EL DORADO COUNTY SHERIFF JEFF NEVES,
25  MERCED COUNTY SHERIFF MARK PAZIN,
    DEL NORTE COUNTY SHERIFF DEAN WILSON,
26  SAN JOAQUIN COUNTY SHERIFF STEVE MOORE,
    AMADOR COUNTY SHERIFF MARTIN RYAN,
27  INYO COUNTY SHERIFF WILLIAM LUTZE,
    STANISLAUS COUNTY CHIEF PROBATION OFFICER
28  JERRY POWERS, VENTURA COUNTY CHIEF
```

-1-

DECLARATION OF EXPERT WITNESS SHERIFF MARTIN RYAN

| | |
|---|---|
| 1 | PROBATION OFFICER KAREN STAPLES, SOLANO COUNTY CHIEF PROBATION OFFICER |
| 2 | ISABELLE VOIT, SANTA BARBARA COUNTY CHIEF PROBATION OFFICER PATRICIA STEWART, |
| 3 | BUTTE COUNTY CHIEF PROBATION OFFICER JOHN WARDELL, SAN LUIS OBISPO COUNTY CHIEF |
| 4 | PROBATION OFFICER KIM BARRETT, CONTRA COSTA COUNTY CHIEF PROBATION OFFICER |
| 5 | LIONEL CHATMAN, INYO COUNTY CHIEF PROBATION OFFICER JIM MOFFETT, |
| 6 | SHASTA COUNTY CHIEF PROBATION OFFICER BRIAN RICHART, YOLO COUNTY |
| 7 | CHIEF PROBATION OFFICER DON MEYER, FRESNO COUNTY CHIEF PROBATION OFFICER |
| 8 | LINDA PENNER, MARIPOSA COUNTY CHIEF PROBATION OFFICER GAIL NEAL, CITY OF |
| 9 | WHITTIER POLICE CHIEF DAVE SINGER, CITY OF ROSEVILLE POLICE CHIEF JOEL NEVES, |
| 10 | CITY OF PASADENA POLICE CHIEF BARNEY MELEKIAN, CITY OF ALHAMBRA POLICE |
| 11 | CHIEF JIM HUDSON, CITY OF FREMONT POLICE CHIEF CRAIG STECKLER, CITY OF |
| 12 | GROVER BEACH POLICE CHIEF JIM COPSEY, CITY OF SANTA CLARA POLICE CHIEF STEVE |
| 13 | LODGE, CITY OF VACAVILLE POLICE CHIEF RICH WORD, CITY OF WOODLAND POLICE CHIEF |
| 14 | CAREY SULLIVAN, CITY OF SONORA POLICE CHIEF MACE McINTOSH, CITY OF PASO ROBLES POLICE |
| 15 | CHIEF LISA SOLOMON, CITY OF SAN BERNARDINO POLICE CHIEF MICHAEL BILLDT, CITY OF |
| 16 | ATWATER POLICE CHIEF RICHARD HAWTHORNE, NATIONAL CITY POLICE CHIEF ADOLFO GONZALES, |
| 17 | CITY OF DELANO POLICE CHIEF MARK DeROSIA, CITY OF MODESTO POLICE CHIEF ROY WASDEN, |
| 18 | CITY OF FRESNO POLICE CHIEF JERRY DYER, AND CITY OF DELANO CHIEF OF CORRECTIONS GEORGE |
| 19 | GALAZA |

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No: CIV S-90-0520 LKK JFM P |
| Plaintiffs, | **THREE-JUDGE COURT** |

-2-

DECLARATION OF EXPERT WITNESS SHERIFF MARTIN RYAN

| | | |
|---|---|---|
| 1 | vs. | [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)] |
| 2 | ARNOLD SCHWARZENEGGER, et al., | **DECLARATION OF EXPERT WITNESS SHERIFF MARTIN RYAN** |
| 3 | Defendants. | |
| 7 | MARCIANO PLATA, et al., | Case No.: C01-1351 TEH |
| 8 | Plaintiffs, | **THREE-JUDGE COURT** |
| 9 | vs. | |
| 10-11 | ARNOLD SCHWARZENEGGER, et al., | |
| 12 | Defendants. | |

I, SHERIFF MARTIN RYAN, hereby declare as follows:

1.  I have been a California peace officer for 33 years having served at both the local and state levels.

2.  I began my career in 1975 as the Chief Investigator for the Amador County District Attorney's Office. In addition to my duties in that capacity, i.e., trial preparation, I also served in the following areas of criminal investigations: countywide law enforcement training coordinator, and special projects. I was also the Deputy Public Administrator/Conservator and welfare fraud investigator for the Office.

3.  In 1981, I was hired as a Special Agent for the California Department of Justice and assigned to the Los Angeles Office of the California Bureau of Investigation (CBI). While in this assignment, I conducted criminal and civil investigations on behalf of the state Attorney General and local law enforcement. I investigated such matters as public/police corruption, major fraud, consumer fraud, deaths in custody, Commission on Judicial Performance investigations, criminal investigations, and served as a Departmental Firearms Instructor.

4.  In 1984, I transferred to the Sacramento Office of CBI. In 1985 I was the

assigned CBI case agent for the Leonard Lake/Charles Ng serial murder investigation where I coordinated our statewide role in this multi-jurisdictional investigation. I later became one of CBI's first members of a new Criminal Investigation Response Team (CIRT) where we were specially trained to respond to and investigate homicides, serial murders and officer involved shootings throughout Northern California in partnership with our forensic services bureau. I continued to investigate corruption cases and investigations of statewide importance involving elected officials, fraud, and a variety of other cases in support of local law enforcement and the Attorney General's Office.

5. In 1987 I was promoted to Special Agent Supervisor and directed a team of CBI agents assigned to the 26 counties that comprised the Sacramento regional Office of CBI. I was responsible for quality control as well as case direction. I was later assigned to CBI Headquarters where I coordinated our statewide CIRT program, insuring proper training, equipment acquisition, and continued responding to homicides and other violent crimes. I also wrote policy in such areas as report writing, inspections, firearms, etc. I was also responsible for responding to citizen complaints regarding other agencies.

6. In 1990, I was promoted to Special Agent in Charge (SAC) of the CBI Sacramento regional Office where I was responsible for budgets, quality control, case acceptance and investigative direction for the teams of agents assigned to that office. I was later assigned as the SAC of the CBI Intelligence Operations Bureau, which provided intelligence analysis and database assistance to California law enforcement agencies and tracked the activities of gangs, criminal extremists, organized crime, and domestic terrorism.

7. In 1997, I was promoted to the position of Assistant Chief of CBI, responsible for statewide daily operations of CBI's six regional offices. I was the direct supervisor for the SAC's assigned to each of those offices. In this capacity I dealt with budgets, policy development and implementation, case acceptance, quality control, and coordination with the Attorney General's legal divisions.

8. In 1999 I was appointed by the Attorney General as the Chief of CBI and served in that capacity until December of 2005. As Chief I was in daily contact with the Attorney General's Executive staff in developing priorities, developing and implementing

new programs such as Sexual Predator Response Teams, budget development, and high profile statewide cases.

9. In June of 2006 I was elected as the Sheriff-Coroner of Amador County and took office in January of 2007. In this capacity I am responsible for the 116 employees and $14 million budget of this office, including the Corrections/Court Services Division, Operations Division ( Patrol, Investigations, Dispatch), and Administrative Division. A true and correct copy of my curriculum vitae is attached hereto as Exhibit 1 (LEIASD0001).

10. As Sheriff, I work closely with all local law enforcement in the County, the County Courts, District Attorney's Office, the County Probation Department and Behavioral Health Department. I am familiar with the work loads, funding and resources of each of these agencies and how additional crime and associated arrests affect their work, individually and collectively, and impact the entire criminal justice system in the County.

11. Our jail has a Corrections and Standards Authority (CSA) bed rating of 76. However, we are regularly over capacity by 10-15%. The facility is approximately 24 years old, outdated, and is not capable of expansion in its existing location and does not have adequate room for currently mandated programs for inmates. To partially mitigate our overcrowding issues we utilize Home Electronic Monitoring, Sheriff's Parole in cooperation with the courts, Work Furlough, Citation Release (Misdemeanors), and Work Release. For non-violent felonies, a "Felony Agreement to Appear" program is in place allowing court selected persons arrested for a felony to remain free until their court date. These programs have reduced our jail population by approximately 10%, still leaving us 10-15% over capacity, and thus creating difficulties in classification and segregation of jail inmates and officer safety. Today, 80% of our inmate population is there for felony offenses.

12. Our jail staffing levels continue to be very problematic given the mandated Title 15 requirements and our increasing transportation needs. The 2007-2008 Amador County Grand Jury found, among other things, "The jail population is well beyond what was established when it was built," and "With a growing population in the county,

overcrowding and security will cause additional strain on the jail system." Overcrowding and lack of staffing has been a recurring theme in the past Grand Jury reports as well.

13. In order to address this ongoing problem, this office partnered with the Calaveras and San Joaquin County Sheriff's Offices to participate in a tri-county Re-Entry facility pursuant to AB 900 and I was actively pursuing local jail construction grant monies which were to be made available under this Bill. The Jail Needs Assessment prepared for this grant opportunity, rated Amador County's needed jail capacity by 2010 at 165 beds, over double the current number.

14. The California Department of Corrections and Rehabilitation (CDCR), has provided information from their CALPAROLE database that as of August 13, 2007, there were 92 active Amador County parolees. Utilizing their COMPAS offender risk and needs assessment tool, it was determined that of our 92 parolees, 29% had a "Highly Probable" or "Probable" vocational education needs, 51% had a "Highly Probable" or "Probable" residential instability risk, 83% had a "Highly Probable" or "Probable" substance abuse risk, 63% had a "Highly Probable" or "Probable" risk of violence, and 83% had a "High" or "Medium" risk of recidivism. These risk factors could be addressed in a community based reentry facility type of program, such as the one envisioned by AB 900. These assessments demonstrate that services need to be provided to these parolees in order to reduce their risk to the community and improve their chances of success. The COMPAS data for Amador County, as of April 30, 2008, shows that Amador County had at that time an additional 39 prison inmates who were within 240 days (approximately 8 months) of being paroled. Of that number, 48.7% were assessed as at high or medium risk to re-offend, 61.5% had a high or medium risk of continued violent behavior, 41% had a high to medium risk of residential instability/difficulty, 76.9% had a high or medium probability of continued substance abuse, and 35.9% had a high or medium need for vocational training. The most recent COMPAS data, from September 16, 2008 shows that there are an additional 47 parolees in the short term pipeline for release to Amador County. Of that number, 46.8% were assessed as at high or medium risk to re-offend. 61.7% have a high or medium risk of continued violent behavior, with medium or high risk of a history of past or current violence at 59.6% and 42.6% respectively.

55.3% have a high or medium risk for Community Non-Compliance. 46.8% have a highly probably or probable risk of further criminal involvement 57.5% have a high to medium risk of "failure to appear." 48.9% have a high to medium risk of residential instability/difficulty, 78.7% have a high or medium probability of continued substance abuse/need for substance abuse treatment, and 42.5% have a high or medium need for vocational or education training. Collectively, these three COMPAS reports average the following percentage of risk factors in these five categories:

Vocational Education Needs- 36%

Residential Instability- 47%

Substance Abuse- 79%

Risk of Violence- 62%

Recidivism- 60%

15. I am not aware of any planned risk and needs assessments by CDCR for the proposed Coleman/ Plata releases. I am aware that Plaintiffs' experts have opined that no such risk and needs assessment need be done to determine whether the proposed releases could have a negative impact on public safety. I profoundly disagree with this opinion. But even if the COMPAS risk/needs assessment were performed on those proposed to be released early by Plaintiffs' experts, there would still be a gap in provision of services to these potential releases.

16. In 2007, 23 active parolees were arrested for new crimes in Amador County. Given that our jail has only a rated capacity of 76 and is typically 20-25% over rated capacity currently, there is simply no room for any additional arrestees. Thus, any early release of parolees into Amador County, given the anticipated risk of violence, recidivism and other risk factors (such as substance abuse) which are not likely to be treated due to the unavailability of current resources, is likely to result in new crimes and overcrowding in our County jail, accelerated early release or use of alternatives to custody, and thus negative impacts to public safety. The only way that the County could handle an additional influx of parolees would be for there to be pre-release and post-release services provided to them such as counseling, education, job training, and other services to help them be successful upon release, as well as additional capacity at the jail

to hold more pre-trial detainees. Without services and facilities, the risk and needs assessment simply tells us how much additional risk the County faces due to early release and hence an increase in the number of active parolees. Without provision of services, particularly in a structured and secure environment such as a re-entry facility operated by either CDCR or the County, those who are released early are being set up for failure; the vast majority of them will re-offend, creating inevitable public safety impacts to Amador County.

17. Based on my law enforcement experience, I believe that inmates being released prematurely into Amador County will fall within multiple, if not all of the above COMPAS risk categories. The Amador County Jail, with a CSA rated capacity of 76 beds and already overcrowded, can expect to be impacted by a 60% recidivism rate of all parolees released into this jurisdiction. Unlike the inmates who would go through a re-entry facility, training and counseling in these risk areas will not be provided to the Coleman/Plata releases, therefore diminishing their chance of success and increasing the threat to public safety in Amador County.

18. In addition to jail impacts, such numbers will have significant impacts on the entire criminal justice system in Amador County, including local police departments, the Sheriff's Office, the Probation Department, the District Attorney's Office and the Superior Court, all of which are already over taxed due to a lack of staff and existing workload.

19. Similar stresses will be placed on the county Behavioral Health Department which will be expected to deal with the mental health, substance abuse, domestic violence, and other impacts created by any new prison releases in addition to their existing community caseload which already overburdens their limited resources.

20. Releasing inmates who have received no re-entry type training will result in a large number of re-offenders that could significantly impact the resources of the Amador County Probation Department. The Probation Department may not feel immediate effects of an early release program as proposed, however, with limited programming available in Amador County for alcohol/drug issues, limited job readiness training available, and limited employment opportunities, released inmates will almost

DECLARATION OF EXPERT WITNESS SHERIFF MARTIN RYAN

certainly find their way back into our local criminal justice system.

21. The current authorized staffing level for the Amador County Probation Department is 14 Probation Officers with an average caseload of 300 cases per Officer. Most of the cases supervised are high risk offenders. Of this group, more than 90% have or have had a substance abuse and/or mental health issue. Most, if not all of the state inmates released, if placed back on probation, will likely be classified as high risk, and therefore will require supervision.

22. The Amador County Behavioral Health Department (BHD) includes mental health treatment services, case management for those with serious mental illness, 24 hour crisis intervention, substance abuse treatment, mental health and substance abuse prevention, and offender treatment programs under Proposition 36 and Drug Court.

23. The full time BHD staff includes 1 registered nurse, 8 psychotherapists, and 4.5 alcohol and drug counselors. The existing mental health caseload averages 450 patients per month with an additional 80 clients per month in the offender treatment and outpatient substance abuse caseload. It currently takes 2 weeks from a request for services until a new client can be assessed. An appointment with a psychiatrist is typically not until 6-8 weeks after the assessment.

24. Released state inmates are expected to have a high rate of mental illness, substance abuse and addiction, and propensity to violence that would substantially and negatively impact the already over burdened Behavioral Health Department.

25. Released state inmates will need housing in Amador County. It is anticipated that most will have few if any job skills which would mean they would need very low income housing. According to the 2005 Amador County General Plan Housing Element, the largest concentration of very low income households can be found in and around the cities of Jackson (31%), Ione (26%), and Plymouth (26%).

26. Given the recidivism rate of state inmates, these communities could expect a significant increase in criminal activity. The city of Jackson has 11 police officers including the Chief, the city of Ione has 7 police officers including the Chief, and the city of Plymouth contracts with the Amador County Sheriff to provide .75% of a deputy to serve as their police officer. An influx of criminally sophisticated state inmates into these

-9-
DECLARATION OF EXPERT WITNESS SHERIFF MARTIN RYAN

areas would seriously impact law enforcement's ability to protect their communities.

27. The Amador County District Attorney's Office is staffed with 7 Deputy District Attorney's assigned to criminal prosecution. A review of their caseload shows their current caseload to be 389 cases per prosecutor per year. A proposed prisoner release plan would have a negative impact on the District Attorney's ability to move cases through the court system in an effective and expedient manner. Such delays directly and negatively impact the court as well as the existing jail overcrowding problem.

28. The Amador County Superior Court has two criminal courtrooms and two full time Superior Court Judges. On August 25, 2008, 50% of the inmates housed in the Amador County jail were un-sentenced which reflects the impact of the existing court caseload on jail overcrowding. Due to the Court's ongoing caseload, there is an agreement with the Court, where for non-violent felonies, a "Felony Agreement to Appear" exists allowing selected persons arrested for a felony offense to remain free until their court date. Additional caseload resulting from a state prisoner release would further delay court proceedings thereby causing more sentencing delays, overcrowding in the jail, and more felons at large in our community.

29. The Amador County Sheriff and our Board of Supervisors have aggressively pursued jail overcrowding relief provided for by Assembly Bill 900, including participation in a regional re-entry facility where inmates scheduled for release to Amador County could receive the counseling and training they will need to be successful members of our community. A successful re-entry program, whether under AB 900 or not, will reduce both state prison and local jail overcrowding due to reduced recidivism. Thus, rather than releasing prisoners early or imposing a prison population cap, ordering provision of re-entry services to prisoners in the last twelve to twenty four months of their prison sentences will be much more effective at reducing both prison population and crime in the State of California.

30. Amador County does not have the resources in housing, job training, job opportunity, counseling, or public safety to deal effectively with a population of criminally sophisticated state inmates who have not been provided the skills necessary to allow them to be successful. This is not only a grave disservice to the citizens and safety

of this community, but also to the inmates who are destined to fail.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 30th day of October at Jackson, California.

*[signature]*
SHERIFF MARTIN RYAN