EXHIBIT "SMC-G"



Elimination of TANF/CYSA funding for Probation is not Cost Effective!

# TANF Programs

- CYSA/TANF funds support a wide variety of services to juvenile offenders including:
    - Camps—8,856 wards served annually.
    - Prevention and Intervention programs and services
    - Community-based Organization services to children and families.

- CPOC commissioned the RAND Corp. to complete a 3-year study of implementation of CYSA. Their report clearly indicated positive outcomes were achieved for programs implemented with TANF funds.



# Camp Programs

## Are are Effective and Cost Effective

- Keep children in their own community.
- Return children to their families more quickly (average program is 6 months).
- Provide the Court with a intermediate sanction that works.



# EXHIBIT "SMC-H"

**Beverly Beasley Johnson**
400 Harbor Boulevard
Belmont, California 94002
bbjohnson@smchsa.org

**Professional Experience**

November 2006 – present, San Mateo County Human Services Agency, Belmont, CA.
**Agency Director**
- Directed the Agency in being the first public social services agency to become COA accredited in all eligibly services in the State of California
- Provided leadership to the Executive/Management Team consisting of 45 top level executives
- Provided guidance and support to the budget/finance division overseeing an annual budget of $200,000,000
- Management Oversight - Provided direction and oversight to the day to day operations of 820 employees
- Strategic Initiatives – Managed a variety of strategic initiatives including the Agency reorganization and the initiation of the Strategic Plan
- Community Collaboration – Maintained partnerships with clients and community based organizations throughout the County to be better informed of the needs of the community

May 2002 – November 2006 Kern County Department of Human Services
**Agency Director**
- Provide leadership to a large full service Public Human Services Department
- Fourteen Hundred Staff and Three Hundred Million dollar annual budget
- Effectively managed Departments budget and implemented Revenue Maximizing strategy in collaboration with Mental Health, First Five and Probation Departments
- Led our successful implementation of the Kern Citizens Review Panel, Family-to-Family Program, The Linkages Project, and the Permanency Youth Projects in Kern County
- Extensive experience with Community Partnerships, Community Collaboration and Service

September, 1999-May, 2002 Michigan Department of Civil Rights Lansing, Michigan
**Chief Deputy Director**
- Restructured Departments Legal Case Review Division to successfully eliminate case load backlog eliminating three years of overdue legal opinions while ensuring that current legal opinions were completed within 90 days of the Commission rendering its ruling.

- Led the Departments Automation efforts by proactively identifying and contracting with outside project management to get previously installed automation project on track.
- Served as liaison and executive sponsor for the project the department was successfully automated prior to my departure.
- Executive Sponsor of Departments Y2K planning efforts resulting in no disruption in client service.
- Served as Chief Operations Officer for the Departments day-to-day internal operations.

January, 1976 – September, 1999 Michigan Department of Social Services Lansing, Michigan (Now the Michigan Department of Human Services)

**Social Worker, Supervisor, District Manager, Zone Manager**
- Twenty three years of progressive Social Services experience in Child Welfare, Child Care, Adult Services, Community Placement, Public Assistance, Welfare Reform and Michigan's TANF Program, the Family Independence Program, Welfare to Work program.
- Co-chaired the Statewide Food Stamp Payment Accuracy Initiative which addressed ways to get a handle on the food stamp error rate and avoid fiscal sanctions.
- Provided leadership to one-third, (26) of Michigan's county Social Services operations as the Zone 4 Manager
- Served on the executive leadership team for Out State Operations.
- In partnership with County Social Services Boards recruited, developed, coached, mentored and conducted performance appraisal on ten new County Directors appointed in my zone.
- Delivered Direct Services to Families making up my Child Welfare caseload including, counseling, coaching, mentoring, and case managing.

**Education**

September, 1988-1992 Detroit College of Law Detroit Michigan
- Juris Doctorate
- Member of the Michigan State bar Association (P46157)
- Served on the Open Justice Commission of the Michigan State Bar Association

September, 1969-1973 Wayne County Community College, Wayne State University, Oakland University, Rochester, Michigan
- Bachelors of Arts Degree, Psychology Major

**Community**

- East Palo Alto Crime Reduction Task Force
- Mothers Against Senseless Killing (MASK)
- Bethany Homeless Shelter Board
- First Five Commissioner
- California State University at Bakersfield Social Work Advisory Committee
- California Welfare Directors Association
- National Association for the Advancement of Colored People
- Child Welfare League of America
- Peninsula Partnership Leadership Council
- Redwood City 2020

References Available Upon Request

**EXHIBIT "SMC-I"**

# San Mateo County Housing Indicators as of June 30, 2008

## INCOME DATA
### 2008 Median Family Income

| Family Size | Income | 1-Year Change -0%- |
|---|---|---|
| 1-person | $66,500 | |
| 2-person | $76,000 | HUD median incomes have been unchanged since 2004 due to HUD having over-calculated median incomes in past few years; HUD will continue to use these incomes until real median incomes catch up. |
| 3-person | $85,500 | |
| 4-person | $95,000 | |

## RENTAL DATA
### Quarter ending June 2008

| Unit Size (by bedroom count) | Voucher Payment Standard* | 1-Yr. Change | Market Average Rent | 1-Year Change |
|---|---|---|---|---|
| 2-BR | $1,751 | 3.7% | $1,870 | 10.5% |
| 1-BR | $1,399 | 3.7% | $1,583 | 6.4% |

* Replaces section 8 Fair Mkt Rent as basis for calculating tenant portion of rent.
Payment Standard effective 2/1/2008

**Average Apt. Vacancy Rate:** 3.5%

**Section 8 Waiting List:** Under development (see immediately below)

**Sec. 8 Housing Choice Vouchers Average Turnover per Year:** The County Housing Authority opened its application period for Sec. 8 Housing Choice Vouchers for 1 week, 7/7 - 7/12/08 and received about 23,000 applications; HA will do a lottery in 9/08 to establish new wait list of 3,600 applicants (for estimated 3-year turnover period).**

**Section 8 Average Wait Time:** 3 years for new wait list under development

** Original waiting list of 10,129 households was established from one-week application window April 2002.

## HOMES SALES DATA
### Quarter ending June 2008

| | Median Price | 1-Yr. Change | Mean (Av.) Price | 1-Year Change |
|---|---|---|---|---|
| **Single Family Homes** | | | | |
| **2008** | $872,500 | -10.1% | $1,272,378 | 3.2% |
| 2007 | $970,000 | | $1,232,852 | - |
| **Common Interest Development (Condos, Townhomes)** | | | | |
| **2008** | $510,000 | -15.7% | $573,396 | -8.4% |
| 2007 | $605,000 | | $625,826 | - |

Chart prepared by County of San Mateo - Department of Housing - HCD

**Data Sources:**
U.S. Dept. of Housing & Urban Development
County of San Mateo Housing Authority
RealFacts, June Quarter 2008 Rental Data
San Mateo County Association of Realtors, June Quarter 2008 Completed Sales data.



7/17/2008

# EXHIBIT "SMC-J"

STATE OF CALIFORNIA--HEALTH AND HUMAN SERVICES AGENCY      ARNOLD SCHWARZENEGGER, Governor

DEPARTMENT OF SOCIAL SERVICES
744 P Street, Sacramento, CA 95814

December 29, 2004

ALL COUNTY LETTER NO. 04-59

TO:   ALL COUNTY WELFARE DIRECTORS
      ALL FOOD STAMP COORDINATORS
      ALL CalWORKs PROGRAM SPECIALISTS

| REASON FOR THIS TRANSMITTAL |
|---|
| [X]    State Law Change |
| [ ]    Federal Law or Regulation Change |
| [ ]    Court Order or Settlement Agreement |
| [ ]    Clarification Requested by One or More Counties |
| [ ]    Initiated by CDSS |

SUBJECT:   ASSEMBLY BILL (AB) 1796 – DRUG FELONY BILL – EFFECTIVE JANUARY 1, 2005

This letter is to provide counties with implementation instructions for AB 1796, Chapter 932, Statutes of 2004 (copy attached), which was signed by the Governor on September 29, 2004.  As permitted under federal law [42 USC 862a(d)(1)(A)], AB 1796 changes the eligibility standard for certain felony drug offenders to become eligible for food stamp benefits.  Individuals with felony convictions involving the selling, manufacturing, or distributing of controlled substances as listed below, shall continue to be ineligible for food stamp benefits.  These provisions are being implemented through All County Letter effective January 1, 2005, as provided in AB 1796.  Regulations are forthcoming, and will be in place no later than July 1, 2005.  It is important to note that these provisions apply to the Food Stamp program only.  Individuals with felony drug offenses continue to be ineligible for California Work Opportunity and Responsibility to Kids (CalWORKs) assistance under existing CalWORKs eligibility rules.

**QUALIFYING DRUG FELONIES**

AB 1796 adds Section 18901.3 to the Welfare and Institutions Code, and provides that individuals convicted of felony use or possession for personal use of a controlled substance, or an offense not listed under "Disqualifying Drug Felonies", shall be potentially eligible for food stamp benefits.

**DISQUALIFYING DRUG FELONIES**

Under Welfare and Institutions Code Section 18901.3(b), individuals shall remain ineligible for food stamp benefits if convicted of a felony offense for unlawfully transporting, importing into this state, selling, furnishing, administering, giving away, possessing for sale, purchasing for purposes of sale, manufacturing a controlled substance, possessing precursors with the intent to manufacture a controlled substance, or cultivating, harvesting, or processing marijuana or any part thereof pursuant to Section 11358 of the Health and Safety Code.  Additionally, any person who has been convicted of unlawfully soliciting, inducing, encouraging, or intimidating a minor to participate in any of the above activities shall also be ineligible for food stamp benefits.

**CONDITIONS OF ELIGIBILITY**

Under Welfare and Institutions Code Section 18901.3(d), individuals who have been convicted of a qualifying felony drug offense shall, as a condition of eligibility, provide proof of one of the following subsequent to the most recent drug-related conviction:

1) Completion of a government-recognized drug treatment program.
2) Participation in a government-recognized drug treatment program.
3) Enrollment in a government-recognized drug treatment program.
4) Placement on a waiting list for a government-recognized drug treatment program.
5) Other evidence that the illegal use of controlled substances has ceased.

A government-recognized drug treatment program is a program licensed, certified, or funded by a government entity, or a program in which a government or court entity has directed the applicant to participate. Sober Living Environment (SLE) group living facilities emphasizing "Clean and Sober" living shall also be considered government-recognized programs or proof that drug use has ceased. Applicants shall be asked to provide proof that they meet the conditions noted in 1 through 4 (above). When such proof is not available, the County Welfare Department (CWD) shall accept self-certification under penalty of perjury as proof.

When Condition 5 (other evidence that illegal use of controlled substances has ceased) is used as the condition of eligibility, then the applicant must state what the other evidence is and provide proof. The applicant must also certify under penalty of perjury that the illegal use of controlled substances has ceased. The CWD shall consider the evidence and must clearly document the reasons upon which denial or approval of benefits is made. If proof of the "other evidence" is unavailable, the CWD shall accept self-certification under penalty of perjury as proof.

**APPLICATION PROCESS**

Households applying for food stamp benefits will indicate on the application form under penalty of perjury whether any members have been convicted of a drug felony. If the applicant indicates that he/she or a member of a household has been convicted of a felony drug offense, the applicant shall be required to submit details pertaining to that offense, including date of conviction and details of conviction/offense. This information shall be used to determine eligibility under the provisions of this statute. Eligibility determinations shall be based upon information provided. The CWD shall follow current procedures when reviewing information submitted by applicants to verify their status and employ existing processes when information is determined to be questionable (Manual of Policies and Procedures (MPP) Section 63-300.5(g)). Counties may utilize the Special Investigative Unit to function as a liaison between the CWD and law enforcement agencies as a resource for verifying details of a felony offense (MPP Section 20-007.1).

**PREVIOUSLY EXCLUDED HOUSEHOLD MEMBERS**

Under current food stamp regulations, the income and resources of individuals ineligible for food stamp benefits due to their felony drug convictions are already counted in their entirety (MPP Section 63-503.44). Therefore, any excluded household member who becomes eligible for food stamp benefits as a result of this statute will become an included household member, which may result in additional food stamp benefits for the household (MPP Section 63-504).

Quarterly Reporting (QR) households must report their drug felony status on the QR 7. A "yes" response to the drug felony status is a trigger for the CWD to review the drug felony status. The FS 26, Food Stamp Program Qualifying Drug Felon Addendum (shown below), shall be provided to the household in order to determine the food stamp eligibility of the drug felon. The qualified drug felon shall be added to the food stamp household in accordance with MPP 63-508.654.

A QR household may also report a mid-quarter change for increased benefits. The FS 26 shall be provided to the household in order to determine the food stamp eligibility of the drug felon. Qualified drug felons shall be added to the food stamp household on the first of the month following the reported change in accordance with MPP 63-509(d)(4)(B).

Eligibility for change reporting households that do not request assistance upon implementation of the statute shall be reviewed no later than the next scheduled recertification of the household. If the individual is found to be a qualified drug felon, they shall be added to the food stamp household as of the first day of the next month following the discovery of eligibility.

**ONGOING ELIGIBILITY**

Any subsequent conviction for a felony drug offense shall result in the termination of food stamp benefits. Upon adjudication of the subsequent offense, the individual may re-apply for food stamp benefits, and an eligibility determination will again be made pursuant to the provisions of this statute. Continued eligibility for a qualified drug felon shall be reviewed at recertification; however, no new verification is required unless there has been a subsequent drug felony conviction.

**FORMS AND NOTICES**

The following forms and notices have been amended as a result of AB 1796:

- Applying for Food Stamp Benefits (FS 22 QR)

  This form has been revised to inform food stamp applicants of the new provisions which allow individuals convicted of certain drug related felonies to be eligible for food stamp benefits. This form may used to inform Public Assistance (PA) food stamp applicants of these new rules.

- How to Report Household Changes (FS 23 QR)

  This form has been revised to advise food stamp households of the new rules regarding individuals convicted of certain drug related felonies and the reporting requirements associated with these convictions.

- Application for Food Stamp Benefits, Statement of Facts (DFA 285 A2)

  This form has been revised to reflect the new rules regarding the ineligibility of individuals convicted of certain drug related felonies (i.e., Question I). A new Question J has been added for those individuals who have been convicted of eligible drug related felonies and have met the additional eligibility requirements.

- Food Stamp Program Qualifying Drug Felon Addendum (FS 26)

  The FS 26 was developed to be used for situations involving a drug felony conviction and the DFA 285 A2 is not being completed, such as when adding a household member. The FS 26 should also be used for PA households where the SAWS2/CW2 is being used, until these forms have been revised. This form may also be used when additional information is needed on a drug related felony conviction.

If you have any questions about the new or revised forms, please contact Frederick Hodges of the Food Stamp Policy Implementation Unit at (916) 654-1430.

## CAMERA READY COPIES AND TRANSLATIONS

For a camera-ready copy of English and Spanish forms, contact the Forms Management Unit at (916) 657-1907. If your office has Internet access, you may obtain these forms from the CDSS web page at: www.cdss.ca.gov/cdssweb/On-lineFor_271.htm. When translations are completed, they are posted on an ongoing basis on our web site. Copies of the translated forms and publications can be obtained at: www.cdss.ca.gov/cdssweb/formsandPu_274.htm. For questions on translated materials, please contact Language Services at (916) 445-6778.

If you have any other questions regarding this ACL, please contact Karen Abbe of the Food Stamp Policy Development Unit at (916) 654-5709 or Karen.Abbe@dss.ca.gov.

Sincerely,

*Original Document Signed By:*

CHARR LEE METSKER
Acting Deputy Director
Welfare to Work Division

Attachments

4

**Assembly Bill No. 1796**

CHAPTER 932

An act to add Section 18901.3 to the Welfare and Institutions Code, relating to human services.

[Approved by Governor September 29, 2004. Filed
with Secretary of State September 30, 2004.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1796, Leno.    Food stamps: eligibility.

Existing law provides for the Food Stamp Program, under which food stamps allocated to the state by the federal government are distributed to eligible individuals by each county. Existing law provides that a person convicted of specified felonies related to controlled substances shall be ineligible for aid under the Food Stamp Program.

This bill would provide that a convicted drug felon, with certain exceptions, shall be eligible for aid under the Food Stamp Program. The bill would require these Food Stamp Program applicants to have proof of completion of or other affiliation with a government-recognized drug treatment program, or other evidence that the illegal use of controlled substances has ceased.

The bill would authorize implementation of its provisions through an all-county letter or similar instruction, and would otherwise require the department to adopt implementing regulations by July 1, 2005.

By changing eligibility standards under the Food Stamp Program, this bill would increase the responsibilities of counties in the administration of the program, thereby imposing a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement, including the creation of a State Mandates Claims Fund to pay the costs of mandates that do not exceed $1,000,000 statewide and other procedures for claims whose statewide costs exceed $1,000,000.

This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated by the state, reimbursement for those costs shall be made pursuant to these statutory provisions.

Ch. 932 — 2 —

*The people of the State of California do enact as follows:*

SECTION 1. Section 18901.3 is added to the Welfare and Institutions Code, to read:

18901.3. (a) Subject to the limitations of subdivision (b), pursuant to Section 115(d)(1)(A) of Public Law 104-193 (21 U.S.C. Sec. 862a(d)(1)(A)), California opts out of the provisions of Section 115(a)(2) of Public Law 104-193 (21 U.S.C. Sec. 862a(a)(2)). A convicted drug felon shall be eligible to receive food stamps under this section.

(b) Subdivision (a) does not apply to a person who has been convicted of unlawfully transporting, importing into this state, selling, furnishing, administering, giving away, possessing for sale, purchasing for purposes of sale, manufacturing a controlled substance, possessing precursors with the intent to manufacture a controlled substance, or cultivating, harvesting, or processing marijuana or any part thereof pursuant to Section 11358 of the Health and Safety Code.

(c) Subdivision (a) does not apply to a person who has been convicted of unlawfully soliciting, inducing, encouraging, or intimidating a minor to participate in any activity listed in subdivision (b).

(d) As a condition of eligibility to receive food stamps pursuant to subdivision (a), an applicant convicted of a felony drug offense that is not excluded under subdivision (b) or (c) shall be required to provide proof of one of the following subsequent to the most recent drug-related conviction:

(1) Completion of a government-recognized drug treatment program.

(2) Participation in a government-recognized drug treatment program.

(3) Enrollment in a government-recognized drug treatment program.

(4) Placement on a waiting list for a government-recognized drug treatment program.

(5) Other evidence that the illegal use of controlled substances has ceased, as established by State Department of Social Services regulations.

(e) Notwithstanding the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code), the department may implement this section through an all-county letter or similar instructions from the director no later than January 1, 2005.

(f) The department shall adopt regulations as otherwise necessary to implement this section no later than July 1, 2005. Emergency regulations adopted for implementation of this section may be adopted by the director in accordance with the Administrative Procedure Act. The

94

— 3 —                              Ch. 932

adoption of emergency regulations shall be deemed to be an emergency and necessary for immediate preservation of the public peace, health and safety, or general welfare. The emergency regulations shall be exempt from review by the Office of Administrative Law. The emergency regulations authorized by this section shall be submitted to the Office of Administrative Law for filing with the Secretary of State and shall remain in effect for no more than 180 days.

SEC. 2.   Notwithstanding Section 17610 of the Government Code, if the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code. If the statewide cost of the claim for reimbursement does not exceed one million dollars ($1,000,000), reimbursement shall be made from the State Mandates Claims Fund.

O

**EXHIBIT "SMC-K"**

# WELFARE AND INSTITUTIONS CODE
# SECTION 360-370

361.4.   (a) Prior to placing a child in the home of a relative, or
the home of any prospective guardian or other person who is not a
licensed or certified foster parent, the county social worker shall
visit the home to ascertain the appropriateness of the placement.
     (b) Whenever a child may be placed in the home of a relative, or
the home of any prospective guardian or other person who is not a
licensed or certified foster parent, the court or county social
worker placing the child shall cause a state level criminal records
check to be conducted by an appropriate governmental agency through
the California Law Enforcement Telecommunications System (CLETS)
pursuant to Section 16504.5. The criminal records check shall be
conducted with regard to all persons over the age of 18 years living
in the home, and on any other person over the age of 18 years, other
than professionals providing professional services to the child,
known to the placing entity who may have significant contact with the
child, including any person who has a familial or intimate
relationship with any person living in the home. A criminal records
check may be conducted pursuant to this section on any person over
the age of 14 years living in the home who the county social worker
believes may have a criminal record. Within 10 calendar days
following the criminal records check conducted through the California
Law Enforcement Telecommunications System, the social worker shall
ensure that a fingerprint clearance check of the relative and any
other person whose criminal record was obtained pursuant to this
subdivision is initiated through the Department of Justice to ensure
the accuracy of the criminal records check conducted through the
California Law Enforcement Telecommunications System and shall review
the results of any criminal records check to assess the safety of
the home. The Department of Justice shall forward fingerprint
requests for federal level criminal history information to the
Federal Bureau of Investigation pursuant to this section.
     (c) Whenever a child may be placed in the home of a relative, or a
prospective guardian or other person who is not a licensed or
certified foster parent, the county social worker shall cause a check
of the Child Abuse Central Index pursuant to subdivision (a) of
Section 11170 of the Penal Code to be requested from the Department
of Justice. The Child Abuse Central Index check shall be conducted on
all persons over the age of 18 years living in the home. For any
application received on or after January 1, 2008, if any person in
the household is 18 years of age or older and has lived in another
state in the preceding five years, the county social worker shall
check the other state's child abuse and neglect registry to the
extent required by federal law.
     (d) (1) If the criminal records check indicates that the person
has no criminal record, the county social worker and court may
consider the home of the relative, prospective guardian, or other
person who is not a licensed or certified foster parent for placement
of a child.

(2) If the criminal records check indicates that the person has been convicted of a crime that would preclude licensure under Section 1522 of the Health and Safety Code, the child may not be placed in the home, unless a criminal records exemption has been granted by the county, based on substantial and convincing evidence to support a reasonable belief that the person with the criminal conviction is of such good character as to justify the placement and not present a risk of harm to the child pursuant to paragraph (3).

(3) (A) A county may issue a criminal records exemption only if that county has been granted permission by the Director of Social Services to issue criminal records exemptions. The county may file a request with the Director of Social Services seeking permission for the county to establish a procedure to evaluate and grant appropriate individual criminal records exemptions for persons described in subdivision (b). The director shall grant or deny the county's request within 14 days of receipt. The county shall evaluate individual criminal records in accordance with the standards and limitations set forth in paragraph (1) of subdivision (g) of Section 1522 of the Health and Safety Code, and in no event shall the county place a child in the home of a person who is ineligible for an exemption under that provision.

(B) The department shall monitor county implementation of the authority to grant an exemption under this paragraph to ensure that the county evaluates individual criminal records and allows or disallows placements according to the standards set forth in paragraph (1) of subdivision (g) of Section 1522 of the Health and Safety Code.

(4) The department shall conduct an evaluation of the implementation of paragraph (3) through random sampling of county exemption decisions.

(5) The State Department of Social Services shall not evaluate or grant criminal records exemption requests for persons described in subdivision (b), unless the exemption request is made by an Indian tribe pursuant to subdivision (f).

(6) If a county has not requested, or has not been granted, permission by the State Department of Social Services to establish a procedure to evaluate and grant criminal records exemptions, the county may not place a child into the home of a person described in subdivision (b) if any person residing in the home has been convicted of a crime other than a minor traffic violation, except as provided in subdivision (f).

(e) Nothing in this section shall preclude a county from conducting a criminal background check that the county is otherwise authorized to conduct using fingerprints.

(f) Upon request from an Indian tribe, the State Department of Social Services shall evaluate an exemption request, if needed, to allow placement into an Indian home that the tribe has designated for placement under the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.) that would otherwise be barred under this section. However, if the county with jurisdiction over the child that is the subject of the tribe's request has established an approved procedure pursuant to paragraph (3) of subdivision (d), the tribe may request that the county evaluate the exemption request.  Once a tribe has elected to have the exemption request reviewed by either the State Department of Social Services or the county, the exemption decision may only be made by that entity. Nothing in this subdivision limits the duty of a county social worker to evaluate the home for placement or to gather

information needed to evaluate an exemption request.

(g) This section shall remain in effect only until January 1, 2010, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2010, deletes or extends that date.