**EXHIBIT "SMC-Q"**



San Mateo County, CA
Detention Facilities Needs Assessment & Master Plan

## Statement of Probable Construction Costs

Based on the estimated area requirements, the estimates of probable costs were developed on a component by component basis. Total construction costs for the Women's Correctional Center and Men's Sentenced Facility are estimated at $89.5M. If a one level deck is required to meet parking needs, an additional $2M would be required for construction for a total of $91.5M. Project costs are estimated at $132.7M with the deck included and $127.9M if the parking deck is not required.

Escalation is included thru the mid-point of construction in December of 2009. No allowance has been made for a full EIR since this is a continuation of an existing use. Estimated construction and project costs are detailed as follows:

| ID | Component | BGSF | Cost/SF | Component Cost |
|---|---|---|---|---|
| **General Facility Components** | | | | |
| 1.00 | Facility Public Area | 1,221 | $ 260.00 | $ 317,538 |
| 2.00 | Facility Administration | 3,713 | $ 240.00 | $ 891,038 |
| 3.00 | Staff Services | 5,611 | $ 275.00 | $ 1,542,984 |
| 4.00 | Master Control | 1,063 | $ 375.00 | $ 398,475 |
| 5.00 | Male Shift Command | 708 | $ 240.00 | $ 170,016 |
| 6.00 | Female Shift Command | 708 | $ 240.00 | $ 170,016 |
| 7.00 | Inmate Processing Area | 12,298 | $ 220.00 | $ 2,705,519 |
| 8.00 | Medical Clinic | 8,808 | $ 380.00 | $ 3,346,983 |
| 9.00 | Program Staff Area | 4,302 | $ 240.00 | $ 1,032,461 |
| 10.00 | Visiting Center | 7,995 | $ 290.00 | $ 2,318,659 |
| 11.00 | System Laundry | 3,947 | $ 525.00 | $ 2,072,070 |
| 12.00 | System Food Preparation | 29,886 | $ 465.00 | $ 13,896,816 |
| 13.00 | Staff Dining | 1,366 | $ 220.00 | $ 300,438 |
| 14.00 | Warehouse | 13,181 | $ 195.00 | $ 2,570,365 |
| 15.00 | Facility Maintenance | 2,004 | $ 210.00 | $ 420,753 |
| | | 96,810 | | |
| **Female Housing and Support** | | | | |
| 16.00 | Unit Management/ Housing Zone Support | 5,337 | $ 325.00 | $ 1,734,574 |
| 17.00 | High Security/ Special Needs Housing (32 rated and 4 unrated beds) | 7,960 | $ 415.00 | $ 3,303,405 |
| 18.00 | 64-Bed Double Cell Housing Unit | 10,678 | $ 350.00 | $ 3,737,213 |
| 19.00 | 64-Bed Mini-Dorm (8 Person Cells) Housing Unit | 11,006 | $ 335.00 | $ 3,686,843 |
| 20.00 | 16-Bed Transition/ Work Furlough Dormitory [Two Required] | 10,594 | $ 310.00 | $ 3,284,078 |
| | | 45,574 | | |
| **Male Housing and Support** | | | | |
| 21.00 | Unit Management/ Housing Zone Support [Two Required] | 10,674 | $ 325.00 | $ 3,469,148 |
| 22.00 | 64-Bed Double Cell Housing Unit | 10,678 | $ 350.00 | $ 3,737,213 |
| 23.00 | 64-Bed Mini-Dorm (8 Person Cells) Housing Unit [Seven Required] | 77,039 | $ 335.00 | $ 25,807,898 |
| 24.00 | 36-Bed Transition/ Work Furlough Dormitory [Two Required] | 23,184 | $ 310.00 | $ 7,187,040 |
| | | 121,575 | | |
| **Alternatives Sentencing Bureau (ASB)** | | | | |
| 25.00 | General Administration | 3,022 | $ 240.00 | $ 725,328 |
| 26.00 | Sheriff's Work Program | 3,177 | $ 220.00 | $ 698,913 |
| | | 6,199 | | |
| | Subtotal | 270,158 | $ 331.38 | $ 89,525,780 |
| | Parking Structure | 200 | $ 10,000 | $ 2,000,000 |
| | **Total Construction** | | | **$ 91,525,780** |
| | **Project Costs** | | | |
| | Design/CM Fees/Project Administration | | 12% | $ 10,983,094 |
| | Design Contingency | | 5% | $ 5,125,444 |
| | Escalation to Mid-point of Construction 12/09 @ 6%/yr | | 17% | $ 18,745,808 |
| | Subtotal | | | $ 126,380,125 |
| | Construction Contingency | | 5% | $ 6,319,006 |
| | **TOTAL** | | | **$ 132,699,131** |
| | **TOTAL w/o Parking Deck** | | | **$ 126,899,710** |

**EXHIBIT "SMC-R"**

## DRAFT CMHDA Forensics Committee White Paper
### 8/12/08 9:00 AM

**Mental Health and Criminal Justice: Principles, Policy and Practice in Designing Services for Justice Involved Youth and Adults with Mental Illness**

*"CMHDA will advocate for equity and full inclusion of vulnerable populations and to secure social justice as measured by access to necessary quality services that promote mental health, wellness resiliency and recovery in our communities…* [This includes:]
→Be proactive at all levels around criminalization issues to strengthen relationships with our communities.
   Promote policies and specialty programs for counties to implement to reduce disparities
   Participate in ongoing collaboration and partnerships with critical stakeholders especially in health care and prison reform
→ Look at best practices, criminalization, homeless issues, social isolation, barriers to service, resources and outreach and employment". **(CMHDA Strategic Plan-2008)**

## Introduction

The criminal justice system does not simply mirror our social & economic realities; it is a lens that magnifies inequities—socio-economic, gender, race & culture and class differences.  Individuals from ethnic and/or economically disadvantaged populations are dramatically over-represented in our juvenile halls and camps, jails and prisons. And these marginalized criminal justice populations have high rates of mental illness and emotional disturbance while individuals with serious mental illness that have money and private insurance rarely end up in the criminal justice system (New Freedom Commission). Up to 10% of community police incidents involve individuals with psychiatric disturbances (Muntz and Griffin).  The "criminalization" of individuals with mental illness is well documented in our jail and prison populations with prevalence estimates ranging from 15%-50%--depending on diagnostic criteria but, at least 75% of this incarcerated mentally ill population also has co-occurring drug and alcohol use (Teplin) and is thus highly vulnerable to relapse and re-incarceration.   Individuals with psychiatric disturbances may be incarcerated for "crimes" that largely stem from lack of access to effective mental health/behavioral heath care, only to become more disturbed as a result of that incarceration—as evidence mounts that the stress and trauma of incarceration causes or is a component of psychiatric disorders including psychosis, depression, anxiety and PTSD. Seriously mentally ill inmates remain incarcerated 2-3 times longer than other inmates. (Muntz and Griffin)

Our moral and social imperative to address the disproportionate criminalization of youth and adults with mental illness has taken on an added political urgency in California as a result of local and federal lawsuits, the appointment of a Federal Receiver for prison health and mental health services--and the State's

deepening fiscal crisis. California cannot simply build it's way out of the crisis caused by failing and overcrowded jail and prison systems and there is a growing recognition that our priorities are profoundly distorted when we spend more money on locking people up than on higher education. The legislature, the courts, and local and state governments are beginning to tackle criminal justice system reform—including the criminalization of individuals with mental illness and co-occurring mental health and substance use disorders. Effective and comprehensive early intervention, treatment, rehabilitation and community support are essential if California is to be successful in reforming its broken and costly unequal justice systems.

The California Mental Health Directors Association has an active stake in designing a reformed criminal justice system because this will have a lasting effect on the individuals we serve and our community mental health services. Within State and local corrections systems, a new "awareness" of the impact of mental illness often includes an overly broad definition that incorporates individuals with social and character disorders that are neither included in the public mental health target population legislative/funding mandates, nor responsive or well served by treatment strategies or resources of the public mental health system. Additionally, virtually all California corrections reform proposals—whether through the State, the legislature or through initiatives such as the Administrative Office of the Courts' Task Force for Criminal Justice Collaboration on Mental Health Issues, will result in counties and local mental health and behavioral health systems assuming greater supervision and treatment responsibility for growing numbers of individuals diverted from jails and prisons or returning to our communities after incarceration.

Our challenge is to build a values-driven and transformative social justice framework as we actively partner in the design of new State and local reform initiatives--while proactively developing and refining our local partnerships, practice and programs.

## Purpose and Organization

This white paper provides a Principles, Policy and Practices framework to guide CMHDA and our partners in our efforts to reduce or eliminate the criminalization of people with psychiatric disabilities and emotional disturbance through achieving equitable access to effective public mental health and related health, social and community support services. CMHDA, and the County Mental Health/Behavioral Health Directors it represents, must be full and active participants in California's efforts to address the criminalization of youth and adults with mental illness (and co-occurring substance use disorders) in our communities and in our criminal justice institutions. This is both the right thing to do as we seek to promote equity for people with mental illness-and it is necessary and pragmatic.

This white paper will focus on:
    I.    Guiding Principles for Mental Health Corrections Reform; and

2

  II. Considerations for Mental Health/Criminal Justice Systems Design and Practice
  III. Resources for Developing Effective Strategies and Systems

Due to limitations in scope, this policy paper is largely focused on adult corrections reform issues though it does acknowledge the challenges that our systems face in serving SED/mentally ill young people that are transitioning from juvenile justice to adult corrections systems. This is a population—and an issue, that deserves more in-depth attention as the costs and benefits of our social investment choices are weighed: investing in prevention and early intervention for our justice involved seriously emotionally disturbed transition age youth versus long term criminal justice and treatment costs for adults who might have taken a different life path.

## I. Core Assumptions and Guiding Principles for Mental Health Corrections Reform

**(A) Equitable access to quality care will reduce criminalization of mentally ill individuals.** The criminal justice system is not an isolated institution but mirrors the successes—and all too often, the failures of our societal institutions and our communities. The criminalization of youth and adults with mental illness and emotional disorders—and the over-representation of ethnic and low-income people in our jails and prisons will only truly be reversed when people have equitable access to health and mental health care—and individuals and their families can envision a hopeful and meaningful future. Individual, family and community risk is reduced in communities that promote social inclusion. Local Mental Health/Behavioral Health systems are essential partners in the development of accepting and inclusive communities.

**(B) State and local criminal justice and corrections systems are fundamentally inter-dependent.** The availability of prison-based treatment and rehabilitation as well as re-entry services affect the life chances and recidivism rates for released prisoners. However, positive reform of the State's prison system can only be sustained if local corrections and treatment systems have the resources and capacity to provide effective treatment and rehabilitation as ex-prisoners return to their families and communities. Community-based jail diversion at the front end and support for the reintegration of ex-prisoners will slow and could even decrease the growth of California's prison population freeing up funding for critically needed community programs. As CSAC's Correction's policy states: *"A shared commitment to rehabilitation can help address the inextricably linked challenges of recidivism and facility overcrowding. The most effective method of rehabilitation is one that maintains ties to an offender's community."* (California State Association of Counties-CSAC)

3

Criminal Justice reform requires sustained collaboration among the courts, the legislature, state agencies, local government (counties and cities) and health and human services including Mental Health/Behavioral Health Departments. Failure of any component of this inter-connected system, affects the performance and results of other system providers—and ultimately the outcomes for our clients, families and communities.

**(C) Mental Health must be at the table when state or local initiatives are designed and when current (or future) resources are committed.** Well-intended corrections reform legislation and other initiatives are likely to fall short of their potential if Mental Health/Behavioral Health Directors are not active partners in the design, implementation and evaluation of services. Without active mental health participation, assumptions and expectations regarding access and even effectiveness of treatment will not achieve anticipated results nor match the reality of local resources. For example, since 75-80% of prisoners with mental illness also have co-occurring substance use disorders services, community diversion services and re-entry services should focus on integrated co-occurring disorder treatment. However, many of California's reform initiatives—including AB 900, envision separate treatment programs for mental illness and addiction. In addition, many corrections reform initiatives would require an expansion of the focus of county mental health (and substance abuse) services to serve parole or other criminal justice populations. Unless Mental Health/Behavioral Health Directors are included at all levels of planning, etc., this expanded population focus would have an unanticipated adverse effect, at least in the short-term, on the resources and services access for other mentally ill populations. This might include draining off of resources that could be available for early intervention and treatment to prevent the cycle of incarceration of people with mental illness.

**(D) Prevention, early intervention and diversion are essential at the community level to change the trajectory of at-risk populations from marginalization and criminalization to community participation.** A lesson of the past 30 years is that California cannot build its way out of prison overcrowding. Any real reform with the potential to reduce California's 70% prison recidivism rate must include front-end prevention, intervention and diversion at the community level. This front-end investment must include health, mental health and addiction services as well as education, employment and economic and community development. California is often caught in contradictory public policies and legal mandates: for example, federal lawsuits require access to treatment and a reduction in prison overcrowding while State ballot propositions would increase mandatory sentences for certain criminal convictions.

Stigma is a barrier to treatment access and community integration for all individuals with psychiatric disabilities but fear and discrimination increase exponentially when individuals with mental illness (or co-occurring disorders) have been involved in the criminal justice system. The Mental Health Services Act (MHSA) provides funding for community development, early intervention and prevention—including

4

statewide and local anti-stigma campaigns. These initiatives must include a focus on developing greater understanding and acceptance of youth and adults with mental health and criminal justice histories as individuals who are capable of positive family and social engagement.

**(E) Funding must be adequate and sustainable.** New mental heath programs for high-risk parole and other criminal justice-involved populations must have adequate and sustainable funding. State law prohibits use of MHSA funding for services to state prison parolees and there is not sufficient MHSA, Realignment or Medicaid funding to address current community mental health program needs, let alone to address the needs of a growing local justice involved population. Any proposal for expanded services must include: careful analysis of available revenues and the impact of using a proposed funding source on other programs including indigent care resources; and, an analysis of how access to proposed funds is tied to a particular population's service eligibility—for example, MHSA (Proposition 63). Note: it is also important to understand that all mental health revenue sources are inadequate to meet current local needs. For example, the MHSA was passed by the public to expand mental health services, yet due to the economic downturn, any growth in MHSA services has been matched or exceeded by actual cuts in core mental health services.

- New funds must be identified to implement new and expanded mental health/criminal justice services.
- Any proposal for "realignment" of program responsibility such as "parole realignment," "early release" or "diversion" must take into account not only financial resources, but also the impact of the proposed change on access to the continuum of community programs. [Note: CSAC has developed "realignment principles" that should (and must) be considered to protect the interest of counties and local programs.]
- The California Department of Corrections (CDCR), the Courts and local justice agencies must work closely with County Mental Health systems to ensure appropriate and equitable salaries and services whether county operated or contracted to avoid a two-tier system of care -- one for parolees and one for community services.

**(F) Diverse Environments Require Locally Responsive Solutions.** California's county mental health systems reflect highly diverse local environments—geographic, size and distances among population centers, population diversity and resources. Small and rural counties—where prisons and re-entry facilities are most commonly located, face very different challenges than large or urban counties. While cost of living may be lower in rural and small counties, the actual cost of providing professional staffing (including psychiatry) may be equal or greater than the cost in more urban counties. Urban counties face different challenges including those of locating mental health/criminal justice services in more densely populated areas. Criminal justice reform initiatives must take this diversity into account, recognize local needs and

5

promote flexibility and creativity in program design.

## II. Considerations for Mental Health/Criminal Justice Systems Design and Practice

> "The good news is that the urgency of the problem has bred numerous workable options—within a framework of limited resources—in many communities across the country. These efforts span the criminal justice continuum, preceding arrest and continuing past incarceration and the individual's re-entry into the community, and their success is often a function of the creation of partnerships, especially between the criminal justice and mental health systems...Identifying and engaging other with a stake in the problem builds a support network for its solution. Partnerships create a framework for moving forward." (Criminal Justice/Mental Health Consensus Project)

CMHDA and California's County Mental Health/Behavioral Health systems are actively engaged in state and local partnerships to promote best and innovative services for seriously mentally ill individuals who are involved in the criminal justice system. These individuals are not just our clients; they are also our mothers, fathers, sons and daughters—and they are neighbors and members of our communities. In the past decade—and particularly in the past five years, public and professional advocacy and research has resulted the identification of best and emerging practices for systems and services. We will learn about and build on nationally recognized best practices in collaborative systems design and service delivery.

The discussion and recommendations for systems design and practice improvement that follow represent areas of particular concern and relevance to County Behavioral Health systems as partners in California's emerging corrections reform movement.

**(A) The population to be served by public sector mental health corrections programs.** California's county-based public mental health system is designed and funded to serve adults and older adults with serious mental illnesses and a more broadly defined spectrum of seriously emotionally disturbed and at risk children and youth. Approximately 50% of individuals who are served in the community based mental health system have co-occurring substance abuse/use disorders—with a higher prevalence (75-80%) reported among homeless, psychiatric emergency, hospitalized and incarcerated populations. Counties' public mental health services are based on severity of disorder/disturbance and level of impairment; are mandated for Medi-Cal beneficiaries and special education pupils who meet target population criteria; but, are available to other mentally ill populations <u>only</u> to the extent that resources are available. **However, the criminal justice system uses far broader diagnostic and functional criteria to define the prevalence of mental illness and emotional disturbance.** Justice system estimates also may include individuals with

6

developmental disabilities and/or cognitive disorders that are not the result of mental illness, and are not within the target/treatment responsibility of the public mental health system. It is not unusual to see criminal justice system reports that up to 30-40% of the incarcerated adult population has a diagnosable psychiatric disorder. Reports cite up to 50-70%% of youth in juvenile halls have emotional disturbance. Yet, careful assessments at State Hospitals and in county adult correctional facilities reveal that the prevalence of individuals with serious mental illness and emotional disorders that meet public sector access criteria is far lower. Linda Teplin's well cited 1990 study indicated that 7% of jail inmates have a major mental illness (schizophreniza, bipolar, and major depression). In 2008, eighteen years later, routine reviews of San Francisco's jail population shows that 10-11% have those same major mental illnesses.

These divergent assumptions about the criteria used to define mentally ill target populations can lead to faulty program design and even conflict among well-intended partners in criminal justice reform. The State and even counties' momentum to promote corrections reform and reduce prison overcrowding through jail diversion, re-entry programs, parole realignment, summary parole, etc... may lead to unrealistic expectations that public mental health systems have the resource capacity and can effectively and safely treat a population with character disorders and high "criminogenic " risks.

- Mental health/criminal justice program initiatives must be explicit about the target population to be served—including whether this is an expanded population that requires new funding resources and services that are beyond the current scope of the public mental health system. When the public mental health system serves individuals who have encountered the criminal justice system—we also have a responsibility to understand and address its gender and culture specific impacts including trauma and victimization.
- Co-occurring mental health and substance use disorders are the assumption-not the exception among individuals who have contact with the criminal justice system. Client assessments (and services) must focus on integrated models of care.
- Not all psychiatric disorders are amenable to treatment modalities offered in the public sector and individuals with certain personality and social disorders that are accompanied by criminal behaviors do present supervision and public safety concerns. Local mental health systems that develop or contract to serve these higher risk populations must distinguish specialty criminal justice services from the broader public mental health system and be clear about inherent risks and responsibilities in serving a new population.
- It is critical that there be agreed upon and broadly applied "risk assessment" tools and procedures for criminal justice involved populations. Risk and needs assessments should follow the individual's progress through local and State institutions and services. However, Risk Assessments must not become tools for labeling and limiting the potential of individuals for rehabilitation and recovery. There is a great likelihood and risk that mentally ill/emotionally

7

disturbed individuals with criminal justice involvement will become stigmatized and experience discrimination as a result of their history. As administrators and practitioners, we must exercise vigilance and leadership to avoid inaccurate or harmful labeling and discrimination.

**(B) Active and effective partnerships.** CMHDA will continue to collaborate with state level agencies, organizations and advocacy groups to promote reform of the criminal justice system but it is equally important that local Mental Health Directors develop and promote local coalitions and partnerships.

- Use any starting point that is feasible to develop and build county level collaboration(s). This may be as formal as a Board of Supervisors sanctioned committee or may emerge and evolve from the local Police Chief or Sheriff and the Mental Health Director initiating discussions about crisis intervention services or a Superior Court Judge getting interested in a mental health/behavioral health court.
- Local collaborations of law enforcement/criminal justice agencies and mental health must include client, family members and community stakeholders. The active voice and leadership of clients/consumers who have experienced the criminal justice system will both give urgency to the collaboration and must shape the design of services.
- African American, Latino and Asian/Pacific Islander populations are over-represented in adult and juvenile justice institutions, while they fail to access needed mental health services. Counties engaged MHSA outreach/engagement and Prevention and Early Intervention plans and initiatives might find common ground and common cause with ethnic communities in mental health/criminal justice reform initiatives.

**(C) Build on shared knowledge and experience.** CMHDA will work with CSAC, CSAC affiliate organizations, state agencies, professional organizations and advocacy organizations including the California Network of Mental Health Clients and California-NAMI to develop model agreements, memorandums of understanding and program templates that can guide state & local agreements for criminal justice partnerships, re-entry services, collaborative justice and other initiatives. These templates or agreements can and should be shared and adapted to local circumstances. For example, the California Department of Corrections (CDCR) is negotiating agreements with county mental health departments to directly provide or contract with community organizations to provide intensive treatment services for seriously mentally ill parolees. CDCR will also negotiate service agreements for Re-Entry Centers. Counties would benefit and build on each other's experience if these agreements were easily accessible and routinely shared.

- CMHDA (in collaboration with CSAC and other affliliates) should identify and compile model agreements, program design and implementation documents that support local system development. This information should be maintained in an easily accessible and retrievable

8

format that could be supported and maintained by CMHDA or a technical assistance organization such as the California Institute for Mental Health.

**(D)** *Provide state-of-the-art treatment services.* Services must reflect current evidence-based and promising practices, and evolve to reflect new findings. Research on effective mental health/criminal justice services finds that a continuum of services is required to address the needs of justice-involved persons with mental illness and criminal justice agencies. Nationally recognized service design models including the "Criminal Justice Mental Health Consensus Project" of the Council of State Governments, the National GAINS Co-occurring Disorders and Justice Center and the "Sequential Intercept Model" adopted by the State of Ohio. California's 2007 AB 900 "Rehabilitation Strike Force" report <u>Meeting the Challenges of Rehabilitation in California's Prison and Parole System</u> reviews current research on effective offender treatment. All of these analyses stress the importance of establishing a coordinated continuum of prevention, early intervention, treatment and rehabilitation that provides/insures access to behavioral health services that are coordinated with justice system intervention and/or sanction and supervision.

The Criminal Justice Mental Health Consensus Project provides a particularly rich and comprehensive approach—with 46 principles for program design and practice, and is a framework that is endorsed by the CMHDA Forensics Committee. No community can implement a full range of mental health/criminal justice services at a particular point in time but it is important for collaborative planning processes to take into account the various levels of intervention. The CMHDA Forensics Committee has developed a system assessment questionnaire based on the Consensus Project. A local mental health/criminal justice planning collaborative to assess local service availability and gaps can use this instrument. Priorities and local resources for system development can emerge from this process.

Additional considerations for service design:
- <u>Community integration supports:</u> Effective mental health/criminal justice services require, state-of-the-art treatment resources, but also health care services, income support, housing, education, jobs and access to social and leisure activities. This means that mental health/criminal justice initiatives must fundamentally rely on other community agencies and institutions and foster social inclusion.
- <u>Gender, sexual orientation, and culture/race and ethnicity impact access and design of effective interventions and services.</u> One size does not fit all in program design. It is this understanding of the importance of culturally specific services that is largely lacking in the national literature and research on effective practices. For example, services for women must be gender focused and take into account prevalent experiences of victimization, abuse, trauma and re-dramatization both

9

in the community and in institutions. California has much to offer in developing and documenting services that are responsive to culture, gender and sexual orientation.

- <u>CMHDA adult levels of care service guidelines should be considered as organizing principles for identifying access and intensity of specialized services for justice involved mentally ill populations.</u> Of particular relevance to mental health system development, the California CDCR "Rehabilitation Strike Force" report cautions against over-treatment of certain psychiatric conditions while advocating for access to evidence based treatment. Program design whether for stand-alone programs or integrated system of care services for the criminal justice involved population should consider not only service benefits for this specialty population, but also the impact of any resource direction/redirection on other public sector mental health populations requiring services.

- <u>Transition Age Youth-Young Adults in the Justice System</u>—There is a growing body of effective practice, both service design and specific therapeutic interventions that identify and address the needs of youth as they transition to young adulthood. However, the very structure of criminal justice system institutions create barriers to implementing transition age focused services and supports. For example, the most recent round of Mentally Ill Offender Crime Reduction Grants funded innovative programs for adolescent or adults but were precluded from funding programs that focused on bridging these systems.* CMHDA's Multi-Association Joint Committee (MAJC) has provided a forum for examination of "collaborative activities in order to meeting the mental health and alcohol and other drug service needs of youth in the juvenile justice system..." (MAJC Mission Statement). It is critical that California's corrections reform initiatives include increased focus on transition issues for young adults with mental illness and co-occurring substance use disorders. MAJC should be convened in conjunction with the CMHDA's Forensic Committee to identify policy and practice recommendations.

**(E) Create expanded workforce capacity to provide treatment and rehabilitation programs in correctional facilities and in communities.** The mental health/behavioral health workforce is not adequate to meet current needs—let alone the focused needs of a justice involved mental health population. In addition, the impact of wage competition that was driven by CDCR prison and state hospital health care needs has been well documented. What appears to be an inevitable "realignment" or diversion of currently incarcerated populations to community care will only increase California's behavioral health workforce crisis—especially for skilled professionals including psychiatrists. Public mental health systems also confront workforce capacity and training gaps. Our workforce is not fully trained in providing therapeutic service interventions identified as best practices for the justice involved mental health population. The focus of state and local agencies on corrections reform and

---

* Bataille, Personal communication with Corrections Standards Authority, Fall 2006

rehabilitation and county mental health MHSA workforce education and training initiatives may provide new opportunities and resources for designing career pathways and collaborative training ventures including:

- Specialized masters, post-graduate and continuing education programs in forensic assessment and treatment strategies. For example, the City University of New York's John Jay College of Criminal Justice has recently established a partnership with Arizona State University develop cross-county criminology programs enhance research efforts and strengthen ties between academia and practitioners" (John Jay College Press Announcement 6/18/08) California should be at the forefront of creating such academic training partnerships.
- Regional and distance learning best practices training for clinicians and other providers.
- Best practices learning partnerships such as the MIOCR grantees' learning collaborative facilitated by CIMH.

(F) **Supervision & jurisdictional issues.** County Mental Health/Behavioral Health Departments have experience—even if only on a small scale, with collaborative justice/mental health courts and have developed working relationships with local law enforcement, probation departments (and State Parole), but California's corrections reform initiatives which emphasize diversion, shorter prison terms for "non violent" offenses and re-entry services may dramatically change expectations for collaboration with State and local criminal justice agencies. In addition, CMHDA and CSAC have raised concerns with the legislature and State agencies about the need for jurisdictional clarity between the Courts, State Parole (CDCR) local law enforcement and Probation Departments for offenders who are being released to the community. For example: re-entry courts require enhanced supervision and services but the County organizations responsible for funding and providing the services are not necessarily included in the design and oversight bodies for these courts; and, CDCR has proposed MOU's with Sheriff Departments for Re-entry Centers but, have not to date articulated the need to include other local entities that are not under the jurisdiction of the Sheriff. Questions regarding the roles and reporting responsibilities of public sector mental health and substance abuse treatment providers can be anticipated to evolve and expand. CMHDA should continue to monitor and address these issues and questions as corrections reform initiatives unfold.

(G) **Outcomes**— It is critical that CMHDA, representing County Mental Health Services, and criminal justice agencies work together to carefully explore and develop a framework for outcomes of any new or expanded services to justice involved individuals. This framework should consider the type of outcome to be measured in relation to the risk assessed population; and, level and intensity of services. As CMHDA has learned in its work with the State Department of Mental Health regarding an outcomes framework for the Mental Health Services Act, the development of a sound and cost

appropriate outcome framework—that can reasonably be implemented across a complex service system is one of the more difficult challenges we face. It is critical that counties not be required to implement multiple, complex and sometimes competing outcome collection and reporting structures. To the extent feasible the development of an outcomes reporting framework should reference and be grounded in the progress of counties in designing an outcome framework for the Mental Health Services Act.

## III. RESOURCES

CMHDA's Forensic's Committee maintains a web-based list of important reports, resources and documents on topics related to mental health/behavioral health and criminal justice. The research and practice literature that is referenced below represents several of the key resources that informed the development of this policy and practice discussion. It is in no way intended as an annotated bibliography or comprehensive listing resources.

- **Criminal Justice Mental Health Consensus Project**, Council of State Governments. Criminal Justice / Mental Health Consensus Project. New York: Council of State Governments. June 2002.
  "The Consensus Project Report, which was released in June 2002, was authored by the Council of State Governments Justice Center and representatives of leading criminal justice and mental health organizations. The Report reflects the results of a series of meetings among 100 of the most respected criminal justice and mental health practitioners in the country. The report is available online via a table of contents or flowchart of select events.
  Web citation: Consensusproject.org

- **CMHDA "Consensus Project Assessment Questionnaire"**: The CMHDA Forensic Committee developed a worksheet with a rating scale for each Consensus Project cited event/issue and the 46 policy statements to assist counties in evaluating program and policy status.

- **The Center for Mental Health Services—GAINS Center.** The work of the National GAINS Center in the Justice System and the Technical Assistance and Policy Analysis (TAPA) Center for Jail Diversion are informed by the National GAINS Center, which has operated since 1995 as a national locus for the collection and dissemination of information about effective mental health and substance abuse services for people with co-occurring disorders in contact with the justice system. The TAPA Center for Jail Diversion and the Center for Evidence-Based Programs in the Justice System, funded by the Center for Mental Health Services (CMHS) in 2001 and 2004 respectively, comprise the National GAINS Center.

---

This policy paper was prepared by Gale Bataille, Emeritus Mental Health Director and consultant to CMHDA with the guidance of Karen Baylor, Co-Chair of the CMHDA Forensic Committee, Jo Robinson and Tom Pinizotto, Forensic Committee members.