**EXHIBIT "SMC-S"
PART 1 OF 2**

**Report Preview**

# Report of the Re-Entry Policy Council

Charting the Safe and Successful Return of Prisoners to the Community

WWW.REENTRYPOLICY.ORG

A public/private partnership funded in part by the US Department of Justice, US Department of Labor, and US Department of Health and Human Services

The US Department of Justice, US Department of Labor, and US Department of Health and Human Services provided logistical and funding support to make this project possible through the following grants: 2003-RE-CX-0002, awarded by the Office of Justice Programs' Bureau of Justice Assistance; 2002-PR-551, awarded by the Office of Justice Programs' Corrections Program Office (DOJ); AF 131300360, awarded by the Employment and Training Administration (HHS); and 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, task order #24, awarded by the Office of the Assistant Secretary for Planning and Evaluation (DOL). In addition, the National Institute of Corrections (DOJ) covered travel expenses for several of the advisory group members to the RPC, and the Substance Abuse and Mental Health Services Administration (HHS) has pledged significant funding to the project. The Robert Wood Johnson Foundation, the Open Society Institute, and the JEHT Foundation also provided support.

The Council of State Governments (CSG) is a nonpartisan, public, nonprofit organization that provides information, research, and training to state officials in all three branches of government in every state and US territory.

Points of view, recommendations, or findings stated in this document are those of the authors and do not necessarily represent the official position or policies of project supporters or the advisory group members who provided input into this document.

Cover image: © Automobile Association Developments Limited 2003 LIC014/04 © Crown copyright. All rights reserved. Licence number 399221

Report design by David Williams.

Tel:   (212) 482-2320
Fax:  (212) 482-2344
www.reentrypolicy.org

40 Broad Street
Suite 2050
New York, NY 10005

# Re-Entry: What It Is and Why It Matters



Nearly all of the 2.1 million people incarcerated in the United States will eventually be released. Re-entry is the process of transition that these individuals – predominantly male and disproportionately nonwhite – make from prison or jail to the community. While prisoner re-entry has occurred for as long as correctional facilities have existed, its current scale is larger than ever before:

- The number of people released from prison has increased 350 percent over the last 20 years.[1]
- Nearly 650,000 people are released annually from prisons in this country.[2]
- Over 7 million different individuals are released each year from US jails.[3]
- About 1 in 32 adults in this country was in jail or prison, or on parole or probation, in 2002.[4]
- Approximately 2 out of every 3 people released from prison in the US are re-arrested within 3 years of their release.[5]

Budget crunches in every state have made it nearly impossible for lawmakers and governors to address this issue by simply building more prisons and jails; to control the soaring costs of corrections in their respective jurisdictions, policymakers and elected officials must find ways to ensure that the transition people make from prison or jail to the community is safe and successful.

> "Re-entry success or failure has implications for public safety, the welfare of children, family unification, growing fiscal issues, and community health.  Our country's high recidivism rates translate into thousands of new crimes committed each year, at least half of which can be averted through improved prisoner re-entry efforts. State taxpayers went from spending approximately $9 billion a year on corrections in 1982 to $60 billion in 2002.[6]  Yet, the likelihood of a former prisoner succeeding in the community upon his or her release is no better to-day than it was 30 years ago.  It is clear that re-entry affects each one of us and must be addressed with a comprehensive and common sense approach."
>
> **REP. ROBERT PORTMAN**
> U.S. HOUSE OF REPRESENTATIVES (R-OH)

### People are released from prison and jail with complex needs. . .

- 3 out of 4 have a substance abuse problem, but only 10 percent in state prisons and 3 percent in local jails receive formal treatment prior to release.[7,8]
- 55 percent have children under 18; about 2 percent of all US minors had a parent in prison in 1999.[9]
- 2 out of 3 lack a high school diploma, and 40 percent have neither a diploma nor a GED. Only about 1 out of 3 gets vocational training at any point during incarceration.[10]
- Nearly half of those in jail earned less than $600 per month just prior to incarceration.[11]
- More than 1 out of 3 jail inmates reported some physical or mental disability.[12]
- About 1 out of 5 prisoners is released from prison without community supervision.[13]

### . . . and they return to communities that are particularly ill-equipped to help them succeed.

- In Connecticut, almost half of the prison and jail population is from just a handful of neighborhoods in five cities, which have the most concentrated levels of poverty and nonwhite populations in the state.[14]
- In Chicago, only 24 percent of identified organizations that provide services to re-entering individuals were located in any of the six communities to which the highest numbers of people returned from prison in 2001. No services were located in two of those six neighborhoods.[15]
- In California, a study found significant gaps between the needs of parolees released in the state and available services:  there were only 200 shelter beds for more than 10,000 homeless parolees, 4 mental health clinics for 18,000 psychiatric cases, and 750 treatment beds for 85,000 released substance abusers.[16]

# The Re-Entry Policy Council and Its Report



Making men's and women's transition from prison or jail to the community successful is essential to state and national efforts to increase public safety and manage public spending. To assist policymakers in realizing these goals, the Council of State Governments (CSG) established the Re-Entry Policy Council (RPC). The purpose of the RPC is to develop bipartisan recommendations that policymakers can use to improve the likelihood that adults released from prison or jail will avoid crime and become productive, healthy members of families and communities.

To guide the work of the RPC and to coordinate the work of advisory groups in the areas of public safety, supportive health and housing, and workforce development and employment opportunities, CSG partnered with 10 organizations:

- American Probation and Parole Association
- Association of State Correctional Administrators
- Corporation for Supportive Housing
- National Association of Housing and Redevelopment Officials
- National Association of State Alcohol/Drug Abuse Directors
- National Association of State Mental Health Program Directors
- National Association of Workforce Boards
- National Center for State Courts
- Police Executive Research Forum
- Urban Institute

The RPC's Report is the product of over two years' work and more than a dozen meetings among key leaders in communities and state, local, and federal governments:

- state lawmakers
- criminal justice policymakers and practitioners
- workforce development and employment services officials
- housing providers and housing system officials
- representatives of health, mental health, and substance abuse treatment systems
- victim advocates
- people who have been incarcerated and their families
- ministers and others working in faith-based institutions

This Report Preview explains what the *Report of the Re-Entry Policy Council* offers to different audiences, introduces some of its principal ideas, and explains how to navigate the approximately 600-page document. The exact text and numbering of policy statements in this Preview is subject to change in the final Report.

# Anatomy of the Report



**Policy Statements:** Consensus-based principles that should be a critical underpinning of a re-entry initiative. There are approximately three dozen policy statements in the RPC Report.

**Research Highlights:** Overviews of research and statistics that correspond to each policy statement and that inform the recommendations following each policy statement.



**Recommendations:** Key steps essential to the implementation of each policy statement. Each policy statement includes several recommendations which explain how to operationalize the policy statement.

**Examples:** Programs, policies, and practices from across the country that illustrate a particular recommendation. The hundreds of examples cited in the RPC Report involve partnerships, resourcefulness, or even longtime practices. They draw attention to interesting re-entry efforts in a variety of communities that others may want to consider, but they are not necessarily meant to serve as models or "best practices."

**Subject Tabs:** Signposts to help readers find those policy statements or recommendations in the report that address one of six aspects of prisoner re-entry: public safety; workforce; victims; health; housing; and families and communities.

# Audience

*The Report of the Re-Entry Policy Council*, like the issue of prisoner re-entry generally, is not just for administrators of prisons and jails or chiefs of community supervision agencies.  It is for anyone who cares about public safety and people victimized by crime, as well as anyone responsible for workforce development, health, housing, and family and community vitality.  And it is for anyone who can make those systems better through legislation, advocacy, policymaking, program development and administration, research, and public education.

## What is your focus?

**PUBLIC SAFETY**

"We in law enforcement need to recognize that when we locked these guys up, they didn't go away forever. Now, they're coming back, released from prisons and jail systems that our elected officials can't afford to grow anymore.  We have to find a way to make sure these people succeed while maintaining the decline in violent crime."
**DEAN ESSERMAN,** CHIEF, PROVIDENCE POLICE DEPARTMENT (RI)

**WORKFORCE**

"Workforce Investment Boards, One-Stop Centers, and other publicly financed employment and job training services are charged with lowering unemployment. Whether they are uneducated, unskilled, or simply unmotivated, workers leaving prison or jail without a job and without a plan to get one are part of the unemployed population; and they are part of our responsibility."
**BOOKER GRAVES,** EXECUTIVE DIRECTOR, COLORADO WORKFORCE DEVELOPMENT COUNCIL

**VICTIMS**

"Before and after a prisoner is released to the community, victims have a right to information, notification, consultation, restitution, and protection.  Re-entry should be as much about the victim as it is about the offender."
**MARIAN LINDSEY,** VICE PRESIDENT, SOUTH CAROLINA VICTIM ASSISTANCE NETWORK

**HEALTH**

"At a national cost of about $6 billion per year, prisons and jails are among our largest providers of health care to millions of people with serious mental illnesses, substance abuse disorders, and chronic and infectious diseases.  Clinicians and service providers in correctional facilities and in many urban communities have a stellar opportunity to build bridges that promote continuity of care, reduce health care disparities, and advance vital public health priorities."
**DR. LAMBERT KING,** DIRECTOR, DEPARTMENT OF MEDICINE, QUEENS HOSPITAL CENTER (NY)

**HOUSING**

"People released from prison and jail have to live somewhere.  Too often that means a homeless shelter, the street, or with family members or friends in a publicly subsidized housing unit that prohibits anyone with a criminal record from living there.  Whether we work for the housing authority or an agency for the homeless, we need to be concerned about prisoner re-entry."
**STEVE RENAHAN,** DIRECTOR OF PLANNING AND OPERATIONS, HOUSING AUTHORITY OF THE CITY OF LOS ANGELES (CA)

**FAMILIES & COMMUNITIES**

"As never before, American communities are receiving record numbers of individuals returning to their homes after a period of incarceration. The challenge facing citizens in local communities is how to prepare to receive formerly incarcerated individuals in such a way that their dignity is affirmed, the community is safe, and they have a real opportunity to become contributing members in the affairs of society."
**REV. CHARLES SEE,** EXECUTIVE DIRECTOR, COMMUNITY RE-ENTRY PROGRAM, LUTHERAN METROPOLITAN MINISTRY (OH)

# Bipartisan Consensus

**THE DIVERSE MEMBERS OF THE RPC INCLUDE 100 LEADING POLICYMAKERS, PRACTITIONERS, AND ADVOCATES FROM ACROSS THE COUNTRY WHO WANT PEOPLE'S TRANSITION FROM PRISON OR JAIL TO THE COMMUNITY TO BE SAFE AND SUCCESSFUL.**

Steve Allen, Senior Business Manager, Community Lending, Fannie Mae ▪ Assemblyman Jeffrion Aubry, Chair, Correction Committee, NY ▪ Liz Barnett, Senior Research Analyst, Abt Associates, MA ▪ Senator Eric Bogue, Majority Leader, SD ▪ Barbara Broderick, Chief Probation Officer, Maricopa County Adult Probation Department, AZ ▪ Sonya Brown, State TASC Coordinator, Department of Health and Human Services, NC ▪ Michael Buenger, State Court Administrator, MO ▪ Robert Carmona, President, STRIVE Today, NY ▪ Bruce Chan, Chief Counsel, Assembly Committee on Public Safety, CA ▪ Martin Cirincione, Executive Deputy Commissioner, Division of Criminal Justice Services, NY ▪ Tom Clements, Assistant Director, Division of Adult Institutions, Department of Corrections, MO ▪ Stephanie Collins, Coordinator, Homeless Family Program, Family Health Center, MA ▪ Senator Donald Cravins, Vice-Chair, Judiciary B Committee, LA ▪ Superintendent Ed Davis, III, Lowell Police Department, MA ▪ Frank Demarais, Director, Community Lending, Fannie Mae ▪ Tommie Dorsett, Local Director, The Inner Change Freedom Initiative, TX ▪ Michael Duffy, Acting Assistant Secretary, Office for Addictive Disorders, LA ▪ David Fairman, Vice President, The Consensus Building Institute, MA ▪ Representative Michael E. Festa, MA ▪ Ron Field, Vice President, Public Policy, Volunteers of America ▪ Joy Leach Folkman, Government Affairs Manager, Volunteers of America ▪ Hon. Robert Francis, Judge, Criminal District Court #3, TX ▪ Hon. Randall B. Fritzler, Judge, Clark County District Court, WA ▪ Myrt Fultz, Instructor, Criminal Justice Department, Virginia Commonwealth University ▪ Dr. Lewis Gallant, Executive Director, National Association of State Alcohol and Drug Abuse Directors, DC ▪ Hon. Richard S. Gebelein, Judge, Superior Court, DE ▪ Denise Giles, Victims Services Coordinator, Department of Corrections, ME ▪ Sallie Glickman, Executive Director, Philadelphia Workforce Investment Board, PA ▪ Ron Goethals, Director, Dallas County Community Supervision and Corrections Department, TX ▪ Booker Graves, Executive Director, Colorado Workforce Development Council, CO ▪ Douglas R. Gray, Education Bureau Chief, Department of Corrections, IA ▪ Beth Greenland, Principal, Greenland & Associates, MD ▪ Ronell Guy, Preservation Coordinator, Pennsylvania Low Income Housing Coalition, PA ▪ Pastor Bill Hale, North Atlanta Church of Christ, GA ▪ Chief Ellen Hanson, Lenexa Police Department, KS ▪ Thomasina Hiers, Executive Assistant to the Deputy Secretary for Operations, Department of Public Safety and Correctional Services, MD ▪ Kristianne Hinkamp, Executive Director, Victims Outreach, TX ▪ Gary Hinzman, Director, Sixth Judicial District Department of Correctional Services, IA ▪ Jo G. Holland, Regional Administrator, Department of Corrections, VA ▪ Ronald Jackson, Attorney, OR ▪ Gary Johnson, Executive Director, Texas Department of Criminal Justice, TX ▪ Robert M.A. Johnson, County Attorney, Anoka County Attorney's Office, MN ▪ Michael Kelly, Executive Director, District of Columbia Housing Authority, DC ▪ Dr. Lambert King, Director, Department of Medicine, Queens Hospital Center, NY ▪ Thomas A. Kirk, Jr., Commissioner, Department of Mental Health and Addictions Services, CT ▪ Representative Kim Koppelman, Vice-Chair, Judiciary Committee, ND ▪ Assemblywoman Sheila Leslie, Assistant Majority Whip, NV ▪ Robert Levy, Director of Corrections, Volunteers of America, VA ▪ David Lewis, President and Co-Founder, Free-At-Last, CA ▪ Stefan LoBuglio, Deputy Superintendent, Community Corrections Division, Suffolk County Sheriff's Department, MA ▪ Representative John A. Loredo, Minority Whip, AZ ▪ Thomas MacLellan, Policy Analyst, National Governors Association ▪ Commissioner Michael T. Maloney, Executive Office of Public Safety/Department of Correction, MA ▪ Philip Mangano, Executive Director, The Interagency Council on Homelessness, DC ▪ Mike Maples, Assistant Director of Behavioral Health Services, Texas Department of Mental Health and Mental Retardation, TX ▪ Senator Michael J. McAlevey, Chair, Criminal Justice Committee, ME ▪ Chief Steve McFadden, Lewisville Police Department, TX ▪ Barbara Misle, Assistant County Attorney, Mental Health Division, Travis County, TX ▪ John Moore, Administrator, National Institute of Corrections, DC ▪ Oscar Morgan, Director, Mental Hygiene Department of Health & Mental Hygiene, MD ▪ Debbie Mukamal, Staff Attorney, Legal Action Center, NY ▪ Mary Nelson, Administrator, Division of Behavioral, Developmental and Protective Services for Families, Adults and Children, IA ▪ Cheri Nolan, Deputy Assistant Attorney General, Office of Justice Programs, U.S. Department of Justice, DC ▪ Ronald L. Oldham, Director, Pacific Northwest Regional Council - National Association of Housing and Redevelopment Officials, WA ▪ Dr. Fred C. Osher, Associate Professor and Director, Center for Behavioral Health, Justice, and Public Policy, MD ▪ John Ownby, Program Administrator, Project RIO, Workforce Commission, TX ▪ Mario Paparozzi, Associate Professor, Department of Sociology, Social Work, and Criminal Justice, University of North Carolina – Pembroke, NC ▪ Joan Pasco, Coordinator, East Multnomah County One Stop Career System, OR ▪ Representative Jan Pauls, KS ▪ Rebecca Peace, Chief Counsel, Housing Finance Agency, PA ▪ Richard Perez, Planner/Information Analyst, Tarrant County Workforce Advantage Board, TX ▪ Divine Pryor, Executive Director, Association of Drug Abuse Prevention and Treatment, Inc., NY ▪ Louis Quijas, Assistant Director, Federal Bureau of Investigation ▪ Tom Quinn, Consultant, Quinn Consultants ▪ Senator Donald Redfern, Vice Chair, Judiciary Committee, IA ▪ Steve Renahan, Director of Planning and Operations, Housing Authority of the City of Los Angeles, CA ▪ Cheryl Roberts, Director of Research and Policy, Crime and Justice Institute, Community Resources for Justice, MA ▪ Ron Rubbin, Program Director, Federal Bonding Program ▪ Timothy Ryan, Chief of Corrections, Orange County Corrections Department, FL ▪ Rudolph Sanchez, Cook County President's Office of Employment and Training, IL ▪ Hon. William G. Schma, Judge, Kalamazoo County Circuit Court, MI ▪ Charles R. See, Director, Community Re-Entry Program, Lutheran Metropolitan Ministry, OH ▪ Eric Seleznow, Executive Director, Montgomery County Workforce Development Corp., MD ▪ Anne Seymour, Public Safety Consultant, DC ▪ John S. Shaffer, Executive Deputy Secretary, Department of Corrections, PA ▪ Carol Shapiro, Executive Director, Family Justice, Inc., NY ▪ Michael R. Sibbett, Chair, Board of Pardons and Parole, UT ▪ Gwyn Smith Ingley, Executive Director, National Correctional Industries Association, MD ▪ Senator Liane Sorenson, Minority Whip, DE ▪ Flo Stein, Chief, Department of Health and Human Services, NC ▪ Commissioner William W. Sondervan, Division of Correction, MD ▪ Hon. John Surbeck, Judge, Allen County Superior Court, IN ▪ Senator Robert J. Thompson, Chair, Appropriations Committee, PA ▪ Vicki Turetsky, Senior Staff Attorney, Center for Law and Social Policy, DC ▪ Cressida Wasserman, Senior Research Analyst, National Center for Victims of Crime ▪ Reginald A. Wilkinson, Director, Department of Rehabilitation and Correction, OH ▪ Diane Williams, President and CEO, Safer Foundation, IL

# THE REPORT'S PRINCIPAL IDEAS

The remainder of this Report Preview summarizes some of the key ideas addressed by the Report's 34 policy statements and organizes them under three categories:

## GET STARTED

- Get people together
- Understand the issue in your jurisdiction

## ADDRESS CORE CHALLENGES

- Redefine missions
- Maximize value of existing funding
- Integrate systems
- Measure performance
- Inform and reassure the public

## DEVELOP POLICIES AND PROGRAMS

- Make smart release and community supervision decisions
- Ensure support for victims
- Offer safe places to live
- Break the bonds of addiction
- Treat physical and mental illnesses
- Foster meaningful relationships
- Provide training, education, and jobs

**RELEVANT POLICY STATEMENTS**

**1:** Encouraging Collaboration Among Key Stakeholders

**2:** Developing a Knowledge Base

**RELEVANT POLICY STATEMENTS**

**3:** Incorporating Re-Entry into Organizations' Missions and Work Plans

**4:** Funding a Re-Entry Initiative

**5:** Promoting Systems Integration and Coordination

**6:** Measuring Outcomes and Evaluating the Impact of a Re-Entry Initiative

**7:** Educating the Public About the Re-Entry Population

**RELEVANT POLICY STATEMENTS**

**INTAKE**

**8:** Development of Intake Procedure
**9:** Development of Programming Plan

**PRISON AND JAIL**

**10:** Physical Health Care
**11:** Mental Health Care
**12:** Substance Abuse Treatment
**13:** Children and Families
**14:** Behaviors and Attitudes
**15:** Education and Vocational Training
**16:** Work Experience
**17:** Advising the Releasing Authority

**TRANSITION**

**18:** Release Decision
**19:** Housing
**20:** Planning Continuity of Care
**21:** Creation of Employment Opportunities
**22:** Workforce Development and Transition Plan
**23:** Victims, Families, and Communities
**24:** Identification and Benefits
**25:** Design of Supervision Strategy

**COMMUNITY**

**26:** Implementation of Supervision Strategy
**27:** Maintaining Continuity of Care
**28:** Job Development and Supportive Employment
**29:** Graduated Responses

**SERVICE SYSTEMS**

**30:** Housing Systems
**31:** Workforce Development Systems
**32:** Establishing Effective Substance Abuse Treatment
**33:** Availability of Effective Mental Health Services
**34:** Children and Family Systems

# Get people together

## CHALLENGES

- Limited awareness of the agencies, organizations, and people that are best situated to improve prisoner re-entry and unfamiliarity with the most effective ways to reach out to these constituencies
- Key service organization officials' general unfamiliarity with the issue of prisoner re-entry and how it affects or overlaps with their own work
- Distrust that may historically exist between criminal justice officials and community leaders representing the neighborhoods that receive disproportionately large numbers of people released from prison or jail
- Finding a person to lead meetings who has credibility with the stakeholders but no improper self-interest (or financial stake) in the outcome of the discussions
- The complex nature of the issue itself, which can make it hard to avoid discussions that seem unfocused, philosophical, and generally impractical

## SECTION HIGHLIGHTS

**ENGAGE** leaders in the relevant fields, including:
- Criminal Justice
- Community Development
- Local Government
- Housing
- Workforce Development
- Public Health
- Mental Health
- Substance Abuse Treatment
- Faith Community
- Victim Advocates
- Family Members
- Peer Support Groups

→ **PERSUADE** representatives of the essential groups to invest time and energy to address an issue area that they may not have recognized as part of their responsibilities.

→ **ANALYZE** the problem and determine where and how to target initial efforts.

**RELEVANT POLICY STATEMENT**

1: Encouraging Collaboration Among Key Stakeholders

# Understand the issue in your jurisdiction

**CHALLENGES**

- Needed information unavailable in the records of any one particular agency, but spread throughout numerous federal, state, local, and community-based agencies and organizations
- Limited research capacity in corrections agencies or state or county criminal justice systems generally
- Over-reliance on national re-entry data or "best practices" developed in other jurisdictions which may be irrelevant to the characteristics of the state or local jurisdiction where the initiative will be implemented

**SECTION HIGHLIGHTS**



**WHO** is released from prison or jail? What are their risks and needs?

**OREGON:** Over 2/3 of all prisoners had a moderate or severe substance abuse problem.[17]

**MARYLAND:** In 2001, twelve percent of people in prison in Maryland were taking psychotropic medications.[18]

**WHERE** do people leaving prison go?

**NEW YORK:** Eleven percent of the city blocks in Brooklyn are home to 50 percent of the people in that city who are on parole.[19]

**KANSAS:** Approximately 1800 out of 7400 releasees each year return to a handful of neighborhoods in Wichita.[20]

**HOW** are people currently prepared for release and supported in the community post-release?

**OHIO:** The Department of Rehabilitation and Correction provides several levels of treatment for prisoners with mental illness, including an accredited psychiatric hospital and eight residential treatment units. A small percentage of halfway house beds is reserved for releasees with mental illness.[21]

**TEXAS:** Approximately 42 percent of eligible prisoners participated in basic education programs in 2001.[22]

**WHAT** are the laws or policies that govern release and how are they applied?

**MASSACHUSETTS:** Only about 25 percent of people released from state prisons in 1999 were supervised by the paroling agency; 58 percent completed their sentences while incarcerated.[23,24]

**WISCONSIN:** Practically all prisoners are supervised upon their release.[25]

**FOR WHAT** crimes do people released from incarceration return to prison?

**CALIFORNIA:** In 2000, returns to prison for technical violations of parole accounted for 57 percent of total admissions, up from 11 percent in 1980.[26]

**FLORIDA:** In 2000, people in violation of parole accounted for 12 percent of new prison admissions.[27]

**RELEVANT POLICY STATEMENT**
**2:** Developing a Knowledge Base

Case 2:90-cv-00520-KJM-SCR   Document 3247-8   Filed 10/31/08   Page 13 of 13

# Redefine missions



**CHALLENGES**

- Downtown locations of community corrections offices and hundreds of miles separating correctional facilities from communities to which people in prison return
- Growth of corrections systems coupled with increased budgetary pressures, which cause corrections administrators to focus attention and resources on security inside the institutions
- Impression shared by many community corrections officials that their primary professional responsibility is the apprehension of people who violate their conditions of release
- Views among some health and social service agency officials that people in prison or jail are not part of their clientele and that reducing recidivism is not part of their job
- Appointments to releasing authorities of people who may have limited, if any, expertise or training in corrections, community corrections, or in release decision-making

**SECTION HIGHLIGHTS**

- Engage community-based organizations to facilitate or provide intake assessments and the delivery of services to people while they are incarcerated;
- Concentrate services and supervision in the communities where releasees live;
- Ensure that releasing authorities comprise experts who understand the value and appropriateness of supervised release and evidence-based decisions;
- Consider whether (and to what extent) people are successfully transitioning from prison or jail to the community when measuring the performance of corrections and community corrections administrators, in addition to systems that deliver community-based services.

**RELEVANT POLICY STATEMENT**

3: Incorporating Re-Entry into Organizations' Missions and Work Plans