STEVEN M. WOODSIDE #58684
County Counsel
ANNE L. KECK #136315
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403-2815
Telephone: (707) 565-2421
Fax: (707) 565-2624
swoodsid@sonoma-county.org
akeck@sonoma-county.org

Attorneys for Intervenors THE COUNTY OF SONOMA, SONOMA COUNTY SHERIFF/CORONER WILLIAM COGBILL, SONOMA COUNTY DISTRICT ATTORNEY STEPHAN PASSALACQUA, and SONOMA COUNTY CHIEF PROBATION OFFICER ROBERT OCHS

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br>Defendants. | No.   CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br>Defendants. | No. C-01-1351 TEH<br><br>THREE-JUDGE COURT<br><br>**SONOMA COUNTY INTERVENORS' OPENING TRIAL BRIEF**<br><br>Trial Date:  November 18, 2008<br>Time:         1:30 p.m.<br>Ctrm:         USDC Ceremonial Courtroom |

Intervenors the County of Sonoma, Sonoma County Sheriff William Cogbill, Sonoma

County District Attorney Stephan Passalacqua, and Sonoma County Chief Probation Officer

Robert Ochs (collectively, "Sonoma County Intervenors") hereby submit their Opening Trial Brief pursuant to Eastern District Local Rule 16-285. Issues required to be addressed in an Opening Trial Brief under such local rule which are not expressly set forth herein were instead presented in the parties' Joint Pre-Trial Conference Statement filed October 30, 2008, and are incorporated herein by reference. The purpose of this Opening Trial Brief is to provide a brief statement of facts and identify the issues on which Sonoma County Intervenors intend to submit evidence, to assist the Court in the trial of this matter.

I.

STATEMENT OF FACTS

Due to jail overcrowding issues that surfaced in Sonoma County over a period of about two years, the County analyzed the state of its jails in its Adult Detention Planning Staff Report dated January of 2006 (the "2006 Detention Report").[1] The 2006 Detention Report demonstrated that Sonoma County's increase in its jail population, and projected future increases, required Sonoma County to take action by either building a new jail to house this ever-increasing population, or institute jail alternatives to reduce its jail population. To examine these jail alternatives, Sonoma County engaged expert consultant David M. Bennett to conduct a comprehensive penal and criminal justice system assessment. The study resulted in a Sonoma County Corrections Master Plan, dated December 2007 (the "Master Plan"), which contains many recommendations for criminal justice reform that address the increase in jail population as well as obviate the need for building a new jail.[2] The Sonoma County Supervisors approved the Master Plan in 2007, and Sonoma County has been engaged in the process of implementing it ever since.

The Master Plan implementation has required Sonoma County public officers and judges of the Sonoma County Superior Court to engage in an unprecedented, collaborative

---

[1] The 2006 Detention Report is attached as Exhibit "A" to the Trial Declaration of Sonoma County Sheriff-Coroner William Cogbill, filed with this Court on October 30, 2008.

[2] The Master Plan is attached to the Expert Report of David M. Bennett, dated August 15, 2008, as Appendix "C", filed with the Court on October 30, 2008.

effort to reform Sonoma County's criminal justice and penal systems, pursuant to a program of "upstream intervention." Generally, "upstream intervention" requires a commitment of resources and efforts to be placed at the beginning of the criminal process (starting at the booking phase) to shorten the time for completing criminal proceedings, shorten the time in jail, effectively address rehabilitation and treatment issues at an early stage, and provide a continuum of effective supervision to reduce recidivism. Ultimately, the success of the Master Plan will result not only in fewer inmates being housed in the County jails, but also fewer prisoners being sent to State prison.

Sonoma County and the Sonoma County Superior Court have invested a substantial amount of time, energy, and resources to implement the reforms outlined in the Master Plan, and are committed to doing so over an extended period of time. However, the programs, procedures and facilities that will make the Master Plan a success are not yet in place. There is a finite amount of resources available to devote to the reforms of the Master Plan, and certain types of prisoner release orders would require Sonoma County to take the resources dedicated to its reforms and instead divert them to addressing the increase in recidivism and jail population that would result from such orders. It is the threat to its criminal justice reform that has caused Sonoma County Intervenors to take a separate stance in requesting the Court to refrain from ordering a prison population cap as a means to address prison overcrowding.

II.

STATEMENT OF POSITION

The Prison Litigation Reform Act, 18 U.S.C. §3626, *et seq.*, identifies three primary issues for trial that remain in dispute:

1. Whether crowding is the primary cause of the violation of a Federal right [18 U.S.C. §3626(a)(3)(E)(i)];

2. Whether no other relief will remedy the violation of the Federal right [18 U.S.C. §3626(a)(3)(E)(ii)]; and

3. Whether an order for prospective relief can be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, is the least intrusive means necessary to correct the violation of the Federal right, and whether there is any adverse impact on public safety or the operation of a

3

criminal justice system caused by the relief (to which the court must accord substantial weight) [18 U.S.C. §3626(a)(1)(A)].

Sonoma County Intervenors do not intend to submit any evidence or arguments, nor take a position regarding, the first factor cited above (whether crowding is the primary cause of the violation of the Federal right, per 18 U.S.C. §3626(a)(3)(E)(i)); Sonoma County Intervenors only intend to submit evidence and arguments, and cross-examine witnesses, on the latter two issues. To that end, it has filed with the Court two expert reports prepared by its retained expert witness, David M. Bennett (original report dated August 15, 2008, and supplemental report dated October 16, 2008), and the Trial Declaration of Sonoma County Sheriff-Coroner William Cogbill (in which Sheriff Cogbill presents testimony as a hybrid percipient-expert witness on issues relative to the County of Sonoma).

Sonoma County Intervenors submit that the evidence will show that the dangers associated with ordering a prison population cap (by which prison overcrowding is reduced simply by limiting the size of that population) far outweigh its benefits, in terms of the impacts on public safety as well as the negative affects such an order would have on Sonoma County's criminal justice system. Sonoma County's expert, David M. Bennett, will demonstrate that a prison population cap that results in closing the front doors of the prisons and opening up the back doors – without first having in place the support, supervision, treatment programs and mental health assistance that such a population needs – will simply result in higher recidivism rates and will cause havoc on local systems. The ultimate consequence will be a loss of integrity of the criminal justice system, rendering it less effective. With the high rate of alcohol/drug abuse, mental health issues, and homelessness in the prison population, releasing this population without providing the underlying support (treatment, supervision, education, etc.) will simply shift the prison overcrowding and associated problems from the state to the counties, which have fewer and more limited resources to address them than the State of California.

In addition, a prison population cap would have a particularly negative affect on Sonoma County, due to the likelihood that its criminal justice reform efforts would be jeopardized or completely derailed, as it would be required to reallocate its resources to

4

address these released prisoners. The citizens of Sonoma County would be dis-served – in both the short-term and the long-term – by the County's inability to reform its criminal justice system through the Master Plan, as the cycle of recidivism and the ineffective and inefficient use of public resources would continue.

On the other hand, Mr. Bennett opines that there are other, less intrusive remedies to reduce prison overcrowding aside from a prison population cap that will ameliorate the negative consequences of a cap, such as: (1) supporting front-end community efforts; (2) reforming parole revocation and sanction policies; (3) reducing length of parole/probation supervision; (4) funding non-secure community corrections facilities; and (5) establishing a sentencing commission to review sentencing reform. Sonoma County Intervenors urge the Court to consider these other remedies to refrain from ordering a prison population cap, or in lieu thereof if the Court finds that a prisoner release order is warranted in this matter.

Dated: October 30, 2008

STEVEN M. WOODSIDE, County Counsel

By: _____
ANNE L. KECK
Deputy County Counsel
Attorneys for Intervenors the County of Sonoma, the Sonoma County Sheriff-Coroner William Cogbill, the Sonoma County District Attorney Stephan Passalacqua, and Sonoma County Chief Probation Officer Robert Ochs