ANN MILLER RAVEL, County Counsel (S.B. #62139)
THERESA J. FUENTES, Deputy County Counsel (S.B. #208588)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding, East Wing, 9th Floor
San Jose, California  95110-1770
Telephone:  (408) 299-5900
Facsimile:  (408) 292-7240

Lead Attorneys for Intervenors
COUNTY OF SANTA CLARA, COUNTY
OF SAN MATEO, COUNTY OF SANTA
BARBARA

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | No.  CIV S-90-0520 LKK JFM P |
| Plaintiffs, | THREE-JUDGE COURT |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |
| MARCIANO PLATA, et al., | No.  C01-1351 TEH |
| Plaintiffs, | THREE-JUDGE COURT |
| v. | **TRIAL BRIEF OF COUNTY INTERVENORS** |
| ARNOLD SCHWARZENEGGER, et al., | Trial Date: November 18, 2008 |
| Defendants. | Time:      1:30 p.m. |
| | Location:  U.S.D.C. Ceremonial Courtroom |

//

//

I.

INTRODUCTION

Intervenor Counties Santa Clara, San Mateo and Santa Barbara (hereinafter the "County Intervenors") jointly submit this Trial Brief pursuant to Eastern District Local Rule 16-285. The issues required to be addressed in the Trial Brief that are not set forth herein have been addressed in the parties' Joint Pre-Trial Conference Statement filed October 30, 2008, and are incorporated herein by reference.

The County Intervenors will primarily present evidence at trial to show that a prisoner release order under 18 U.S.C. §3626 would have a substantial adverse impact on the operation of the local criminal justice systems in San Mateo and Santa Clara Counties and on public safety in these and other California Counties. The County Intervenors will show that a prisoner release order would exacerbate already severely overcrowded county jails, and would jeopardize the safety of their operation. County Intervenors will show their social service safety nets are already severely stretched due to ever-decreasing funding from federal, state and local sources, and the addition of early-released state prisoners to these systems will decrease their effectiveness still further. Released prisoners coming into the local communities are expected to bring with them the need for drug and alcohol treatment, mental health treatment, housing and employment assistance, and other social services that currently already have lengthy wait times. The counties do not have the funding or resources to provide treatment and other services to prisoners released pursuant to a prisoner release order. Without the ability to provide these various last-resort county services, released prisoners are at great risk of, among other things, increased drug use, exacerbated and untreated mental illness, increased criminal behavior in the community, recidivism, and re-incarceration in both local jails and state prisons.

II.

STATEMENT OF POSITION

A.   THE PRISON LITIGATION REFORM ACT

The relevant law is the Prison Litigation Reform Act of 1995 (18 U.S.C. § 3601, et seq.) (the "PLRA"). The PLRA identifies three primary issues for trial:

1. Whether crowding is the primary cause of the violation of a Federal right (18 U.S.C. § 3626(a)(3)(E)(i)[1];

2. Whether no other relief will remedy the violation of the Federal right (18 U.S.C. § 3626(a)(3)(E)(ii)); and

3. Whether an order for prospective relief can be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief. 18 U.S.C. § 3626(a)(1).

The County Intervenors will present evidence at trial that a prisoner release order *would* adversely impact both the operation of the local criminal justice systems as well as public safety.

## B. A PRISONER RELEASE ORDER WOULD ADVERSELY IMPACT THE OPERATION OF THE COUNTY INTERVENOR S' CRIMINAL JUSTICE SYSTEM

The County Intervenors will present evidence that the San Mateo County jails are currently so overcrowded that their average daily population is 143% of the rated capacity as certified by the California Standards Authority of the California Department of Corrections and Rehabilitation. As a result of existing overcrowding, San Mateo must place inmate beds in space previously reserved for re-entry programs that have been proven to increase success of the inmates upon release. Santa Clara County jails exceed their Board rated capacity by 24%. Santa Clara County has very little flexibility to house additional inmates and the affect of a prisoner release order would be to push the jail system into an overcrowded condition. In addition, Santa Clara County houses over 400 state, federal and other county inmates that contribute $15 million to the operation of the jail system. If the County were faced with the requirement to incarcerate additional inmates as the result of a prisoner release order, the

---

[1] The County Intervenors do not intend to present evidence on the issue of whether crowding is the primary cause of the violation of a Federal right.

County would be forced to terminate the revenue contracts, thus creating a funding shortfall for operation of the County jails, and leaving the state, federal and other county inmates that are housed by Santa Clara County with nowhere to go.

Such extreme overcrowding and resulting non-standard housing practices prevent the jails from properly classifying and separating inmates who should not be housed together, such as those charged with crimes against children, mentally ill inmates, gang members, and returning state prison inmates, and directly threatens safety inside the facilities. County Intervenors will show that a prisoner release order likely will result in many of the released state prisoners' re-offending, so that they will add to the county jails' overcrowding and the attendant problems.

Moreover, county jails currently provide to their inmates where possible a number of programs that have proven to reduce recidivism and to help inmates succeed when they are released back into the community. However, overcrowding at the jails decreases the jails' ability to provide such programming, because inmates in an overcrowded jail must be housed in programming space, and there is insufficient space and insufficient staff to operate the programs. Both Santa Clara County and San Mateo County have successful diversion systems and with the support of the local courts, are able to divert many individuals to treatment programs. The Counties have allocated significant discretionary funds to support these programs in order to reduce the chance these individuals will reoffend. If resources have to be reallocated from these diversion programs to house and support additional inmates, it would impair the County's ability to reduce recidivism and reduce the number of people in jail and prison.

Moreover, a prisoner release order that adds probationers and parolees to current case loads is likely to overwhelm county probation services and overload court dockets.

**C. A PRISONER RELEASE ORDER WOULD ADVERSELY IMPACT THE PUBLIC SAFETY**

The County Intervenors will present evidence that prisoners released under a prisoner release order in this case will require extensive support and services from counties, some of which will be intensive and specialized. However, the counties do not have the resources to

provide these services. Early-released prisoners are very likely to require drug and alcohol treatment, mental health and health treatment, emergency shelter and food, housing assistance, employment training, and other social services that the counties provide to low income, at-risk residents. Demand for county drug and alcohol programs exceed capacity and there are waitlists for services. Early release of prisoners into the community without resources to treat their drug and alcohol addiction would impact public safety because of escalated drug use, destructive behavior, and resulting exposure to arrest and re-incarceration. The same is true of County mental health programs. The counties do not have the resources to provide mental health treatment to individuals released pursuant to a prisoner release order. As a result, there will be negative public safety outcomes such as increased recidivism, increased psychiatric hospitalizations, suicide, danger to self and others, substance abuse and increased community safety concerns. Regarding housing, early-released state prisoners are not expected to be able to compete effectively for housing in the open housing market because of their low income, lack of positive credit history, and landlords' generally unfavorable view of tenants with criminal records. Nor will these prisoners be able to count on emergency shelters or transitional housing facilities, because those services are already "chronically overbooked." In addition, housing is a critical stabilizing need for many individuals with mental illness and drug and alcohol addiction. Without basic supports such as housing and employment, and no access to treatment, these individuals will likely decompensate in the community, leading to recidivism, increased emergency hospitalization, increased criminal justice involvement and increased incarceration. Moreover, prisoners have a high rate of communicable diseases, such as tuberculosis, HIV/AIDS and hepatitis. Adding significant numbers of residents who need intensive treatment for these diseases to a treatment delivery system that is already overtaxed threatens the public health of the entire community.

    County social services are currently stretched very thin and have long wait times. Thus, released prisoners will not have access to the continuity of care that is required for successful re-entry from prison. The lack of availability of community resources to prisoners in terms of housing, addiction treatment, mental health treatment, health care, and family services is a

factor that is positively correlated with recidivism and negative impacts to public safety.

## III.

## CONCLUSION

A prisoner release order would have an adverse impact on the Counties' criminal justice system, in that the order would exacerbate jail overcrowding. Moreover, such an order would have a significant negative impact on the public safety due to the inability of the counties to provide critical services to prisoners released pursuant to a prisoner release order. Treatment programs for at-risk residents, which early-released prisoners are likely to be, have been proven effective in changing criminal behavior, reducing community victimization, and reducing recidivism. But releasing large numbers of state prisoners into the county communities jeopardizes the counties' ability to continue to provide these evidence-based treatment programs to its vulnerable residents. For all the reasons set forth above, the County Intervenors respectfully will ask this Court not to issue a prisoner release order.

Dated: November 3, 2008

Respectfully submitted,

ANN MILLER RAVEL
County Counsel

By: _____/S/_____
THERESA J. FUENTES
Deputy County Counsel

Lead Attorneys for Intervenors
COUNTY OF SANTA CLARA,
COUNTY OF SAN MATEO,
COUNTY OF SANTA BARBARA