1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Senior Assistant Attorney General
5  LISA A. TILLMAN – State Bar No. 126424
   Deputy Attorney General
6  KYLE A. LEWIS – State Bar No. 201041
   Deputy Attorney General
7  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
8  Telephone: (415) 703-5708
   Facsimile:  (415) 703-5843
9  lisa.tillman@doj.ca.gov
   kyle.lewis@doj.ca.gov
10
   Attorneys for Defendants
11

                          HANSON BRIDGETT LLP
                          JERROLD C. SCHAEFER - 39374
                          PAUL B. MELLO – 179755
                          S. ANNE JOHNSON – 197415
                          SAMANTHA D. TAMA – 240280
                          RENJU P. JACOB - 242388
                          425 Market Street, 26th Floor
                          San Francisco, CA  94105
                          Telephone: (415) 777-3200
                          Facsimile:  (415) 541-9366
                          jschaefer@hansonbridgett.com
                          pmello@hansonbridgett.com
                          ajohnson@hansonbridgett.com
                          stama@hansonbridgett.com
                          rjacob@hansonbridgett.com

12              **UNITED STATES DISTRICT COURT**

13           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

14           **AND THE NORTHERN DISTRICT OF CALIFORNIA**

15      **UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

16        **PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

17

18  RALPH COLEMAN, et al.,

19              Plaintiffs,

            v.

20  ARNOLD SCHWARZENEGGER, et al.,

21          Defendants.

    No. 2:90-cv-00520 LKK JFM P

    **THREE-JUDGE COURT**

22  MARCIANO PLATA, et al.,

23              Plaintiffs,

            v.

24  ARNOLD SCHWARZENEGGER, et al.,

25          Defendants.

26

27

    No. C01-1351 TEH

    **THREE-JUDGE COURT**

    **DEFENDANTS' OBJECTIONS TO THE EXPERT REPORTS OF RONALD M. SHANSKY, M.D. PLAINTIFFS IDENTIFIED FOR ADMISSION IN PHASE I**

    **To:  Three-Judge Panel**

28

                                  - 1 -
    DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
    PLTFS IDENTIFIED FOR PHASE I ADMISSION

                                                            1671599.1

## I.    INTRODUCTION

The following is a listing of Defendants' objections to the statements in the expert reports Plaintiffs' identified for admission in Phase I of the trial of Plaintiffs' request for a prisoner release order under the Prisoner Litigation Reform Act.  Defendants forwarded their objections to Plaintiffs, requesting their responses, which, to the extent provided, are set forth below.

### GENERAL OBJECTIONS

In his Report dated November 9, 2007, Dr. Shansky makes numerous references to and recites in detail information purportedly contained in prison tour letters completed by Plaintiffs' counsel.  While these letters, or portions of these letters, may constitute party admissions and may be used by Defendants *against* Plaintiffs, no legal authority exists for Plaintiffs' counsel to use their own out-of-court statements in their own favor. As indicated below, these letters and the information and statements in them constitute inadmissible hearsay and Dr. Shansky's detailed recitation of their contents should not be permitted.

**A.    November 9, 2007 Report of Ronald Shansky, M.D.**

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 1.    "VSPW staff advised me, however, that they had to open the clinic space in the gymnasium, despite its shortcomings, because the additional gym prisoners had placed too great a strain on the existing clinics." (November 9, 2007 Report, p. 7, ¶16.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 2. "Forcing professionals to work under such conditions will likely create hiring and retention problems." | Objection: Lacks foundation, speculation | Within scope of expertise; Personal observation |

- 2 -

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| (November 9 2007 Report, p.7, ¶16.) | | |
| 3.    "The treatment delays at SQ will only worsen if the prison is not capable of remaining qualified physicians". (November 9, 2007 Report, p. 10, ¶23.) | Objection: Speculation | Within scope of expertise |
| 4.    "These conditions will exacerbate overcrowding problems – clinicians will be unable to obtain essential information from their patients, and they are more likely to resign over frustration with the working conditions, further worsening the clinician shortage." (November 9, 2007 Report, p. 11, ¶25.) | Objection: Speculation | Within scope of expertise |
| 5.    "Plaintiffs' on-site inspections have found that…the space allocated for medical care at the prisons is insufficient for the number of prisoners who must be treated in the clinics." (November 9, 2007 Report, p. 11, ¶26.) | Objection: Hearsay, documents speak for themselves | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted). |
| 6.    "For example, San Quentin's West Block housing unit was under a lockdown and quarantine during the month of July.  Nurses reported that, for a period of about two weeks, very few West Block prisoners were escorted to the Gymnasium/West Block clinic for nurse triage.  The nurses said that they did go to West Block and tried to do triage at the sergeant's desk, but this was not effective, as there was no available exam space.  Plata Pls' Trial Ex. 27, at 5.  (Letter, September 7, 2007.) Without alternative clinic facilities, the RN triage system essentially broke down for the duration of the disease outbreak." (November 9, 2007 Report, p.11, ¶27.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2).   See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 7. "At Pleasant Valley State Prison (PVSP), staff report that space is a problem even though there are three rooms in each yard clinic dedicated to medical encounters; staff also state that in addition to more medical exam rooms more space is needed for medication distribution and work by phlebotomists. Plata Pls' Trial Ex. 23, at 7. (Letter, July 24, 2007.) At that prison, clinics for patients with Hepatitis C cannot be regularly held because of space constraints. *Id.* at 12." (November 9, 2007 Report, p. 12, ¶28.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |

- 4 -

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 8. "At the Substance Abuse Treatment Facility at Corcoran (SATF), managers state that even if the prison were fully staffed with primary care providers (PCPs), timely and adequate PCP appointments could not be provided because of a lack of space. Plata Pls' Trial Ex. 32, at 3. (Letter, October 19, 2007.)" (November 9, 2007 Report, p. 12, ¶29.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 9. "California Correctional Center (CCC) medical managers and staff state that they lack the space necessary to provide medical care to the number of prisoners in their custody. Plata Pls' Trial Ex. 31, at 2. (Letter, October 18, 2007.) Among the more serious of the space-related problems, as described by CCC staff, are: (1) a Main Clinic waiting area that routinely has 60 to 70 patients although the rated fire marshal | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| capacity is 46 (there is no alternative space available, and having patients wait outside, aside from security/custody concerns, is not practical, particularly during the winter months); (2) inadequate numbers of medical exam rooms in the Main Clinic area given the number of primary care providers (PCPs) and patients to be seen; (3) an OHU that is not large enough to house all patients who need that level of care on any given day; (4) a Triage & Treatment Area (TTA) too small for patients and workers who must use it, particularly since space in the TTA must be regularly used by a PCP because of the lack of adequate space in the Main Clinic; (5) "temporary space" for FTF triage for registered nurses (and their patients) on two prison yards, described as "small closets" without sinks or toilet facilities; (6) an extremely crowded medical records space; and (7) no dedicated space for a telemedicine clinic, meaning that such services must be provided in an existing medical exam room (which of course results in that room being unavailable for an on-site PCP or RN)." (November 9, 2007 Report, p. 12-13, ¶30.) | | contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 10.    "At Mule Creek State Prison there also is insufficient clinical space. Clinical staff pack the small clinics. The space allocation to the pharmacy, which functions out of two separate rooms, is a long-standing issue. The physical therapist does not have adequate or permanent space. Plata Pls' Trial Ex. 30, at 5. (Letter, October 8, 2007, at 5.)" (November 9, 2007 Report, p. 13, ¶31.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 11.    "At ASP, the current medical clinic and other medical-related spaces are inadequate to treat the approximately 7500 prisoners at that facility. There is not enough space for on-site specialty providers, or for medical records. The building that used to house administrative segregation prisoners (Facility 1, Building 140) has no medical room or adequate alternative area for exams or assessments. Plata Pls' Trial Ex. 17, at 1. (Letter, May 30, 2007.)" (November 9, 2007 Report, p. 13, ¶32.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay. However, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 12.    "At California Men's Colony (CMC), the area allotted to the nurse responsible for doing the initial medical interview for incoming prisoners is a small office that serves as a "pass-through" area and | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| appeared to be shared with a custody officer; the prison's warden reported that it was not an appropriate space for these interviews.  Plata Pls' Trial Ex. 25, at 17.  (Letter, August 3, 2007.)  (November 9, 2007 Report, p. 13, ¶33.) | | to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 13.   "Based on its review of four years of correctional system audits, the Office of the Inspector General also acknowledges that insufficient clinical staffing for the growing population makes the medical care delivery problem intractable.  "[I]t must be recognized that efforts to address problems in these areas [including inadequate medical care] have been severely hampered by inmate population pressures that have prisons straining at nearly twice design capacity, spreading staff resources thin and leaving little facility space available for programming and other purposes."  Joint Pls' Trial Ex. 46, at ES-1. | Objection: Hearsay, document speaks for itself | Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10 |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| (Office of the Inspector General, Accountability Audit, Review of the Audits of the California Department of Corrections and Rehabilitation Adult Operations and Adult Programs, 2000-2004, April 2006, vol. 1.)" (November 9, 2007 Report, p. 14, ¶36.) | | |
| 14.    "Located in the central valley town of Chowchilla, the prison has had a physician vacancy for years, and earlier converted two other physician positions to mid-level positions because they considered the physician positions unfillable." (November 9, 2007 Report, p. 16, ¶39.) | Objection: Lacks foundation | Personal observation; within scope of expertise |
| 15.    "Dr. Virk, VSPW's Chief Medical Officer, frankly admitted that given his inability to fill the existing single physician position, he was unlikely to be able to fill the additional positions allocated.  In the two months since the extra positions had been allocated, he had received little interest, and he had just two candidate interviews scheduled.  He acknowledged that he did not know whether either candidate had the necessary credentials (*i.e.*, board eligibility or certification.)"  (November 9, 2007 Report, p. 16, ¶39.) | Objection: Hearsay, speculation | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); within scope of expertise |
| 16.    "At ASP, I learned that of the 10.5 PCP positions, only three were state employees and none of the five physician positions were filled by a state employee."  (November 9, 2007 Report, p. 16, ¶40.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be |

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | admitted) |
| 17.    The Chief Physician and Surgeon at HDSP, for example, stated that at least two additional PCP positions were needed at the prison given the number of PCP-patient medical encounters that are needed to comply with the policies. The Chief also pointed out that the ratio of PCPs to prisoner-patients at HDSP was 1-to-660, which he reported was the highest among the prisons in the CDCR northern region."  (November 9, 2007 Report, p. 16, ¶42.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant.  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 18.    "At ASP, the Chief Physician and Surgeon told me that the prison needed up to six additional PCP positions if encounters requested by policy were to be timely provided." (November 9, 2007 Report, p. 17, ¶42.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant.  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 19.    "CDCR staff members have also raised these issues during plaintiffs counsel's tours.  Dr. Dudley Lee, Health Care Manager at Salinas Valley State Prison, explained that he believed the "need is greater that the capacity" with respect to the number of PCPs allocated SVSP relative to the needs of its population, which is getting sicker, older, and has increasingly acute concerns. Explaining this phenomenon, Dr. Lee pointed to the fact that SVSP receives medically-vulnerable prisoners, including those who cannot go to institutions with a risk of Valley Fever and those who require | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| better oxygen (SVSP is at sea-level.) Additionally, Dr. Lee pointed to the fact that SVSP shares grounds with the Department of Mental Health (DMH), whose patients often have more acute health issues.  Plata Pls' Trial Ex. 29, at 2-3.  (Letter, October 4, 2007.)"  (November 9, 2007 Report, p. 17, ¶43.) | | admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 20.    A physician at California State Prison at Sacramento (SAC) reported that the prisoners at that prison, which has a heavy mental health load, have a higher medical acuity than is found at many other prisons. He stated that CDCR's current method for calculating physician staffing is strictly population-based, and thus fails to account for the greater medical needs of the sicker populations at prisons like SAC. Plata Pls' Trial Ex. 12, at 2.  (Letter, March 8, 2007.)"  (November 9, 2007 Report, p. 17, ¶44.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 21.    "Unable to fill existing vacancies, some prisons, including VSPW and ASP, have been forced to use registry providers to fill in for their chronically vacant positions, in an attempt to mitigate the effects of the lack of state employees.  While use of registry providers can be useful in the short term to ensure that individual patients are seen in a timely manner, it is at most a stop-gap measure that is inadequate as a long-term solution."  (November 9, 2007 Report, p. 17, ¶45.) | Objection: Lacks foundation | Within scope of expertise |
| 22.    "As VSPW's Dr. Virk explained to me, the registry providers have no investment in the development of a competent system of care because they have only a short-term commitment to the prison, and will leave for other employment when a higher registry rate is offered elsewhere."  (November 9, 2007 Report, p. 18, ¶45.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent);  Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 23.    "At ASP, I learned that there are large numbers of pending PCP appointments, with all but one of the six yard clinics having over 400 such appointments pending with two of the yard clinics (4 and 5) having more than 700 and 600 pending, respectively.  A single PCP is assigned to each yard clinic, and sees between 20 and 25 patients per day.  Each day, a number of patients must be added to each clinic's PCP appointment list who did not otherwise have a pending appointment, based on an urgent referral from a nurse or other policy requirements."  (November 9, 2007 Report, p.18, ¶47.) | Objection:  Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent);  Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 24.    "Plaintiffs' counsel in May 2007 reported that routine appointments | Objection: Hearsay, document speaks for | Fed. R. Evid 703 (facts or data need |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| were taking four to six weeks in most yard clinics (see Plata Pls' Trial Ex. 17, at 3)…"  (November 9, 2007 Report, p. 18, ¶47.) | itself | not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay. Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 25.    "At HDSP, the Chief Physician and Surgeon told me that there were backlogs for patients to see a PCP in all of the clinics."  (November 9, 2007 Report, p. 19, ¶49.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 26.    "Plaintiffs' counsel also uncovered significant delays for routine and urgent primary care appointments at prisons throughout the state prison system.  The staff at Corcoran State Prison reported four week delays for their primary care provider lines.  Plata Pls' Trial Ex. 24, at 3-4.  (Letter, July 25, 2007.)"  (November 9, 2007 Report, p. 19, ¶50.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 27. "Several of the clinics at PVSP reported three to four week delays for the PCP lines. Plata Pls' Trial Ex. 23, at 6. (Letter, July 24, 2007.)" (November 9, 2007 Report, p. 19, ¶50.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 28.   "Richard J. Donovan Prison (RJD) reported delays of up to a month for its PCP lines.  Plata Pls' Trial Ex. 22, at 6.  (Letter, July 18, 2007.)" (November 9, 2007 Report, p. 19, ¶50.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|-----------|------------------------|------------------------|
| | | plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 29.   "Centinela State Prison had delays of up to three months.  Plata Pls' Trial Ex. 9, at 1.  (Letter, February 8, 2007.)"  (November 9, 2007 Report, p. 19, ¶50.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay. However, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 30.     "For example, ASP has not yet implemented the required chronic care program.  Large numbers of additional PCP encounters/appointments will be necessary at ASP once the chronic care program is implemented, particularly given certain characteristics of the inmate population."  (November 9, 2007 Report, p. 20, ¶52.) | Objection: Lacks foundation | Personal observation; within scope of expertise |
| 31.     "The Correctional Health Services Administrator stated during my visit that ASP housed approximately 1,200 prisoners over 50 years of age."  (November 9, 2007 Report, p. 20, ¶52.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R Evid 703 (facts or data need not be |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | admissible in order for expert's opinion or inference to be admitted) |
| 32.    "At VSPW, Dr. Virk reported to me that his prison has not been able to develop the required preventive health care program due to a lack of primary care providers."  (November 9, 2007 Report, p. 20, ¶53.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 33.    "California State Prison at Solano (SOL), for example, fails to schedule these post-consultation appointments consistently, and getting reports after specialty appointments has been a problem in some specialties.  Plata Pls' Trial Ex. 21, at 8.  (Letter, July 20, 2007.)"  (November 9, 2007 Report, p. 20, ¶54.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted).  Plaintiffs' Counsel's prison reports are inadmissible hearsay.  However, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 34.    "The 30-day interim appointments are not scheduled at SOL.  Plata Pls' Trial Ex. 21, at 8-9.)"  (November 9, 2007 Report, p. 21, ¶55.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay. However, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 35.    "The seven-day interim appointments are not scheduled at California Medical Facility (CMF). Plata Pls' Trial Ex. 16, at 8-9. (Letter, May 7, 2007.)" (November 9, 2007 Report, p. 21, ¶55.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted). Plaintiffs' Counsel's prison reports are inadmissible hearsay. However, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 36.    "At ASP, managers and administrators told me there were delays with specialty services for inmates and that the basic problem was unavailability of specialty providers compared to the number of prisoners who need such services, particularly for cardiology and | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable |

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| orthopedics.  They further stated that they must use the same providers used by a number of other prisons who also need specialty appointments for their patients." (November 9, 2007 Report, p. 22, ¶60.) | | declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 37.    Heading 3 "Plaintiffs Counsel's Findings."<br><br>"66.  The reports of plaintiffs' counsel over the last year, consistent with findings of the Receiver and my observations, also show specialty services delays, rooted in an insufficient number of providers for the number of patients requiring care.<br><br>"67.  At SATF, it was reported in May and September 2007 that off-site specialty services were in crisis, with managers and staff making clear that the number of prisoner-patients who need specialty services, including those who need such services urgently, far exceeded the number of timely appointments that the prison was able to obtain from specialty service providers.  Plata Pls' Trial Ex. 32, at 2-3.  (Letter, October 19, 2007.)  Urgent appointments, including for cardiology and oncology, were identified that had been pending for a roughly three, four, or six months.  *Id.*  These delays occur despite a well organized utilization review and specialty scheduling unit at the prison, and despite the prison making repeated requests to providers in individual cases.  *Id.*  Most high priority off-site consults were not yet scheduled to take place, or would likely take place (i.e., in those case in which the prison had not yet received an appointment date for an approved high priority consult even though, for example, 30 days had passed), until two or three months after the consult was ordered.  There are also, pre the | Objection: In its entirety hearsay, documents speak for themselves. | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however these reports contain statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |

- 19 -

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| "aging report" provided by referrals that had not or would not occur within the 90 day period required by policy. SATF schedulers and managers estate that these delays were caused by too many patients needing specialty services compared to the number of appointments SATF is able to obtain. *Id.*<br><br>"68. At PVSP, there were 165 pending high priority off-site specialty appointments. Of these, 892 had not been scheduled. Some of the unscheduled appointments had been waiting for consults for almost a year; some of these appointments appeared to be diagnostics for Valley Fever or its associated diseased. There was a wait of three or five months for some urgently requested lumbar punctures. Plata Pls' Trial Ex. 23, at 1-3.) (Letter, July 24, 2007.)<br><br>"69. There were also 949 pending routine off-site appointments, including: abdominal ultrasounds; bone scans; GI referrals; colonoscopies; ENT referrals; liver biopsies; nephrology; orthopedic surgery; pain management; sleep study; and urology consults. (Of 21 referrals for abdominal ultrasounds, five were unscheduled for between 4-13 months; of seven referrals for bone scans, all were unscheduled, and four had been pending between 3-8 months; of 62 colonoscopy referrals, more than half had been waiting more than 90 days, and 11 unscheduled appointments had been pending between four months - one year; of 24 ENT referrals, four had been unscheduled seven months - 15 months; 47 pending liver biopsy referrals, 12 unscheduled for over four months; five orthopedic surgery appointments, non scheduled, eight 4 months or more out; eight pain management appointments, four unscheduled for 6 or more months, 4 scheduled 5 months or more out; 12 |  |  |

1671599.1

| | Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | pending sleep study appointments, none scheduled and pending 6-13 months.)  *Id.* at 1-3. | | |
| 4 | | | |
| 5 | "70.  At SOL, there was a backlog of specialty services cases, including some routine referrals that had been pending for more than six months and a few for more than a year. Plata Pls' Trial Ex. 21, at 8.  (Letter, July 10, 2007.)  At California Rehabilitation Center (CRC), roughly one-third of routine specialty appointment (83-293) were pending past 90 days and two-thirds of urgent appointments (21 of 32) were pending past 14 days.  Plata Pls' Trial Ex. 18, at 4-5.  (Letter, June 6, 2007.) | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | "71.  At SAC, there was a backlog of orthopedic referrals.  Plata Pls' Trial Ex. 12, at 7.  (Letter, March 8, 2007.) At Chuckawalla Valley State Prison (CVSP), some urgent specialty referrals were taking over two months to occur.  Plata Pls' Trial Ex. 20, at 9. (Letter, July 2, 2007.) | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | "72.  At California Institution for Women (CIW), off-site specialty scheduling was in disarray.  There was no accurate tracking method and no one knew how many appointments were pending.  Urgent referrals were frequently taking several months.  Plata Pls' Trial Ex. 15, at 4-5.  (Letter, May 7, 2007.) | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | "73.  At Kern Valley State Prison (KVSP), documentation regarding several unscheduled urgent appointments were observed in mid-July that had been pending since February and March, 2007.  Staff provided documentation that showed other urgent specialty refers that had been pending for six months to a year.  Plata Pls' Trial Ex. 26, at 9. (Letter, August 15, 2007.) | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | "74.  Telemedicine specialty services | | |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| at PVSP also had a high number of unscheduled appointments, including dozens of patients with Hepatitis C who could not be scheduled to see the infectious disease specialist because the ordered liver biopsy had not been performed because of an extreme (six to twelve month) backlog for the off-site provider who performed the biopsies.  Plata Pls" trial Ex. 23, at 12.  (Letter, July 24, 2007.) | | |
| "75.  At COR, on-site specialty services were reported to be not all scheduled timely, due to the volume of the requests, as well as limitations by providers.  Plata Pls' Trial Ex. 24, at 7.  (Letter, July 25, 2007.) | | |
| "76.  At CEN, there were approximately 20-30 routine off-site pending appointments over the policy required time-frames.  Plata Pls' Trial Ex. 9, at 5.  (Letter, February 8, 2007.) | | |
| "77.  Even prisons that are more successful at scheduling routine appointments may have problems scheduling timely urgent appointments.  At CMF, plaintiffs found the prison had been unable to meet the 14-day timeline in the overwhelming majority of high priority (urgent) specialty cases.  Of 38 high priority appointments that had been scheduled as of April 25, 2007, just one was scheduled within 14 days of the referral.  Some of these high priority referrals were scheduled several months after the referral was ordered.  Plata Pls' Trial Ex. 16, at 8. (Letter, May 7, 2007.)" | | |
| (November 9, 2007 Report, Section III 3, p. 24-28, ¶¶66-77.) | | |
| 38.    "The prisons report significant problems hiring and retaining LVNs, across the state."  (November 9, 2007 Report, p. 29, ¶82.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 39.    "VSPW has been unable to fill all of its LVN vacancies.  At that prison, there were four vacant LVN positions as of the end of October 2007…" (November 9, 2007 Report, p. 29, ¶83.) | Objection: Lacks foundation | Personal observation during prison tour |
| 40.    "…and the Director of Nursing reported retention problems with the LVNs that they hired.  She recalled that seven LVNs had quit since June.  She pointed out that the demands of running a pill line in prison are significantly higher than the demands of most LVN positions in the community, and that this made it difficult for the prison to keep these employees." (November 9, 2007 Report, p. 29, ¶83.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 41.    "At HDSP, the prison had six vacant LVN positions of 25 allocated." (November 9, 2007 Report, p. 29-30, ¶83.) | Objection: Lacks foundation | Personal observation during prison tour |
| 42.    "The medical managers at a number of prisons have reported to plaintiffs' counsel that they have been unable to hire and/or retain LVNs.  At CMC, plaintiffs' counsel learned in July 2007 that almost three quarters of the LVN positions were vacant.  Plata Pls' Trial Ex. 25, at 3. (Letter, August 3, 2007.)  medical managers at SVSP reported in January 2007 that they had received | Objection: hearsay, documents speak for themselves | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| few applications for the LVN positions and were unlikely to find candidates to fill them. Plata Pls' Trial Ex. 7, at 2. (Letter, January 29, 2007.) In may, 2007, staff at CVSP reported a 25% vacancy rate for LVNs and retention problems. Plata Pls' Trial Ex. 20, at 2-3. (Letter, July 2, 2007.) In May 2007, RJD had 25.94 vacancies for 43,94 LVN positions. Plata Pls' Trial Ex. 22, at 1. (Letter, July 18, 2007.) To cover the vacant LVN positions, RJD was using "forced overtime" with the remaining LVNs to cover many posts and the staff reported that, on one June weekend, the shortage was so acute that even the Supervising Registered Nurses (SRNs) had to fill LVN posts. *Id.* at 1. In June 2007, Corcoran reported a 40% vacancy rate for their 50 LVN positions, and they anticipated receiving 18 additional LVN positions that they likely cannot fill. Plata Pls' Trial Ex. 24, at 2. (Letter, July 25, 2007.) In June 2007, fewer than half of the LVN positions at PVSP were filled with state employees. Plata Pls' Trial Ex. 23, at 6. (Letter, July 24, 2007.)" (November 9, 2007 Report, p. 30, ¶84.) | | however these reports contain statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 43. "The CMC medical managers reported that, in order to build in some continuity with the limited LVN staff available, most of the LVNs were being trained to work in only one area. While this promotes stability in certain work areas, the supervisors acknowledged that this policy creates other strains on the system. Most significantly, the prison has no staffing depth, and is very challenged when an LVN is sick or on vacation. Plata Pls' Trial Ex. 25, at 3. (Letter, August 3, 2007.)" (November 9, 2007 Report, p. 30-31, ¶85.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 44.     "At VSPW, the prison assigned a wide variety of responsibilities to the LVNs possibly more than is reasonable given the overcrowded conditions at that prison.  The LVNs stated in the yard clinics were responsible for, *inter alia*, medication distribution and record-keeping (including insulin administration), following up with the pharmacy on medication inquiries, doing blood pressure checks, changing dressings and responding to emergency alarms in their yards.  Emergency alarms sound for a number of reasons, including inmate assaults on inmates or staff, medical emergencies and false alarms.  Once the alarm goes off, medication distribution (as well as all movement on the affected yard) is suspended while the LVNs respond to the call with emergency equipment.  Following the emergency, the LVNs would resume the medications line."  (November 9, 2007 Report, p. 31, ¶87.) | Objection: Lacks foundation; hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 45.     "The LVNs' duties have become more complex because the emergency alarms at VSPW have apparently increased in the last year, | Objection: Lacks foundation; hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| as I would expect given the rapid increase in population."  (November 9, 2007 Report, p. 31, ¶88.) | | agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Within scope of expertise |
| 46.  "VSPW's Director of Nursing reported that the number of alarms had increased significantly during this period."  (November 9, 2007 Report, p. 32, ¶88.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 47.  "Based upon my conversations with the LVNs in the clinic and their supervisors, I believe these treatment lapses occur because there are too few LVNs for the number of VSPW prisoners."  (November 9, 2007 Report, p. 32, ¶89.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 48.  "Plaintiffs" report documents that CMC likewise has a high reported LVN vacancy rate and has also had care deficiencies based on | Objections: Hearsay, the document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| having too few personnel to document medication distribution. Plaintiffs'' counsel documented that at that prison, the medications for mainline prisoners are dispensed from a central office on each of the housing yards.  The medications are no pre-packaged for each patient.  Instead, they are stacked on shelves around the room, and the LVNs must review the Medication Administration Record (MAR) of each patient who arrives at the window, gather the prescribed medications and distribute them, patient by patient.  This is a very time-consuming process, and Dr. Greenman stated that, following the transition from MTAs to LVNs, medication lines lengthened.  Plata Pls' Trial Ex. 25, at 8.  (Letter, August 3, 2007)."  (November 9, 2007 Report, pp. 32-33, ¶90.) | | order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 49.   "CMC staff readily admitted that they cannot review all of the hundreds of MARS on each yard each day to comply with this requirement, which is unsurprising given their level of staffing.  (Plata Pls' Trial Ex. 25, at 2 and 8.)  (Letter, August 3, 2007.)"  (November 9, 2007 Report, p. 33, ¶91.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 50.   "At ASP on October 30, 2007, I was told that the medical records office constantly has approximately four feet of loose filing, despite the fact that the medical records department runs two shifts on weekdays and is also staffed on weekends."  (November 9, 2007 Report, p. 38, ¶106.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 51.   "At HDSP on November 1, 2007, I was informed that medical records staff pull 1400-1500 UHRs per week for various health care providers, and that approximately three feet of loose filing is generated each week."  (November 9, 2007 Report, p. 40, ¶107.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent);  Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or |

- 28 -

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | data need not be admissible in order for expert's opinion or inference to be admitted) |
| 52.   "The medical records department has been short-staffed (unable to fill all allocated positions) for months, but uses overtime to increase the amount of work done. Despite using overtime, the amount of accumulated loose filing over the last two months has remained at 107 inches; these documents waiting to be filed are two to three weeks old. This means that the UHR received by a nurse or PCP may not include the most recent documentation. In addition, medical records staff no longer fastens documents in the UHR, as required by policy and good practice, but instead is "drop-filing," meaning that papers are simply placed into UHRs.  This practice greatly increases the chance of documents being lost or misplaced." (November 9, 2007 Report, p. 40, ¶107.) | Objection: Lacks foundation; hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 53.   "My findings regarding inadequate medical records are consistent with those reported by plaintiffs'' counsel over the last year.  At LAC, plaintiffs'' counsel reviewed approximately 25 UHRs, finding that progress notes were rarely in chronological order, and in several files progress notes from different years were mixed up.  Additionally, in most of the files records were misplaced within the folder.  Several clinicians asked about the issue all agreed that the poor organization of the UHRs was a significant problem. Plata Pls' Trial Ex. 14, at 10.  (Letter, April 18, 2007.)"  (November 9, 2007 Report, p. 40-41, ¶108.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 54.   "Very recently, staff at CCC reported to plaintiffs' counsel that they had a large amount of loose filing in medical records, with records supervisors stating that some of the documents were as old as six months. This loose filing backlog exists despite efforts such as utilizing overtime and additional staff from the prison next door. Plata Pls' Trial Ex. 31, at 2. (Letter, October 18, 2007.)" (November 9, 2007 Report, p. 41, ¶109.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 55. "114. My opinion and findings regarding inadequate medical scheduling and tracking are consistent with the reports by plaintiffs' counsel over the last year. Specifically, counsel reported that at SOL there were inadequate numbers of staff to enter data into the computer based scheduling system, and staff reported problems with the program in that appointments even when completed stay listed as pending. Thus, data entered can be incomplete or incorrect. Plata Pls' Trial Ex. 21, at 17. (Letter, July 10, 2007.)<br><br>"115. At CRC a manual paper-based system was being used to track specialty consult requests and appointments, and as such managers could not easily determine the extent of delays. Plata Pls' Trial Ex. 18, at 6. (Letter, June 6, 2007.) The prison also had no method to track those prisoner-patients who needed to be offered required preventive care tests (fecal occult blood tests). *Id.* at 11.<br><br>"116. At CMF, the prison had implemented the IMSATS program, but was not producing key indicator reports because the prison did not have confidence in the data produced. Plata Pls' Trial Ex. 16, at 10. (Letter, May 7, 2007.)<br><br>"117. CCWF was experiencing significant computer problems. Some of the computers were extremely slow, taking up to thirty seconds for the computer to open a screen that generally opens instantly. Obviously, this greatly limits the Office Technicians' (OTs) productivity. CCWF staff also reported that IMSATS itself also has problems. For example, appointments that have been closed are reportedly still reopening for no reason. Plata Pls' Trial Ex. 8, at 2-3. (Letter, February 7, 2007.) | Objection: Hearsay, document speaks for itself. | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however these reports contain statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| | Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|---|
| 1<br>2 | | | |
| 3<br>4<br>5<br>6<br>7<br>8 | "118.  At CIW, patients were not all being timely scheduled for medical appointments, and there was no doubt that part of the scheduling difficulties result from problems with the IMSATS program.  Further, some of the computers at CIW were very slow.  CIW staff members stated they had raised this issue, but did not know how to fix it.  Plata Pls' Trial Ex. 15, at 4-5.  (Letter, May 7, 2007.) | | |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19 | "119.  At CCC, managers and staff identified medical scheduling and tracking as an extreme challenge. The IMSATS computer program is not being provided to CCC, and so the prison must make do with what is essentially a hand-kept, paper-only process.  As prison managers stated, this is a very labor intensive approach.  The amount of scheduling and tracking is expected to increase as CCC more consistently schedules patients for follow-up and other appointments (e.g., chronic care), as required by the policies.  CCC staff stated that this effort will require additional dedicated clerical staff and additional space, imposed on currently inadequate space.  Plata Pls' Trial Ex. 31, at 2.  (Letter, October 18, 2007.) | | |
| 20<br>21<br>22<br>23<br>24<br>25 | "120.  Calipatria State Prison (CAL) reported that it would not receive the IMSATS computer tracking program. The current system for tracking sick call requests was to write them in a log book.  However, on C facility this logbook had a large gap where it did not indicate any 7362s were received.  This gap was from 4/17/07 to 5/4/07.  Plata Pls' Trial Ex. 19, at 6.  (Letter, June 25, 2007.) | | |
| 26<br>27<br>28 | "121.  SATF's computers are not networked.  The challenges this creates for medical scheduling and tacking are obvious, particularly given the spread-out nature of the prison | | |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| and its large population. In addition, most clinics only have a single old and very slow computer. Plata Pls' Trial Ex. 32, at 6. (Letter, October 18, 2007.)"<br><br>(November 9, 2007 Report, p. 43-45, ¶¶114-121.) | | |
| 56.  "The Receiver's conclusions are corroborated by plaintiffs' counsels' findings. At SVSP in June 2007, Warden Evans discussed that SVSP's serious custody staff shortages (at 26%) have impacted methods of care delivery. Because of these shortages, facilities are shut down on a rotational basis and there is not enough staff to do medication passes on the yards. Medication therefore must be delivered cell-to-cell. Plata Pls' Trial Ex. 29, at 2. (Letter, October 4, 2007.)" (November 9, 2007 Report, p. 46, ¶124.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 57.  "At San Quentin, nurses complained to plaintiffs counsel that custody officers were no available to escort prisoners with urgent or emergency medical symptoms to the clinic for same-day appointment. Plata Pls' Trial Ex. 27, at 5. (Letter, September 7, 2007.) This problem was vividly illustrated in the case of one prisoner whose 7362 was picked | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| upon July 30, and was scheduled for nurse triage on August 2.  The prisoner's listed symptoms included coughing blood, chest pains and high blood pressure.  When asked why the patient was not brought to the clinic immediately, the nurse indicated that he should have been, but that she believed it would have been futile to ask the custody officers to bring him down, based on her experience.  *Id.* at 5."  (November 9, 2007 Report, p. 46, ¶125.) | | inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible.  Fed. R. Evid. 106. |
| 58.   "At HDSP, for example, plaintiffs' counsel found in October 2006 that the number of Long Term Care (LTC) patients were of a higher acuity than previously housed in the CTC (some were transfers from CTCs at prisons in the Valley Fever epidemic region).  The staff reported that these patients greatly impacted the PCP workload in the CTC, and there were no medical records showing that these patients were seen by a primary care provider every three days, as required.  Moreover, the prison did not have the CTC equipment necessary to provide adequate treatment to the increased number of LTC patients, including for listing and bathing patients.  Plata Pls' Trial Ex. 10, at 2.  (Letter, February 9, 2007.)"  (November 9, 2007 Report, p. 47, ¶127.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). See also, Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Alternatively, defendants have offered plaintiff |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 59.  "In August 2006 and again in June 2007, plaintiffs counsel identified numerous cases in which prisoners complained that the physician orders for housing on the ground floor and/or a lower bunk were ignored.  Plata Pls' Trial Exs. 3 and 4, at 8-9 and 5-7.  (SQ *Armstrong* Report, June 20, 2007 and SQ *Armstrong* Report, August 30, 2006.)"  (November 9, 2007 Report, p. 47, ¶128.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however these reports contain statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits. If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's reports should be admissible. Fed. R. Evid. 106. |
| 60.  "In an especially egregarious example of improper housing, San Quentin inmate Cole, whose knees buckle frequently and whose feet are often swollen and numb or painful, | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| reports that he was forced to spend months on an upper bunk in violation of medical staff's order that he be housed in a lower bunk, even after repeatedly bringing the violation to the attention of building staff.  Joint Pls' Trial Ex. 12 at ¶¶ 2-8.  (Declaration of Peter Cole.)  In 2006, Mr. Cole states he fell from his upper bunk while trying to climb down using his case, crashed into the lockers below and punctured and broke his jaw and tore his left rotator cuff.  He needed ten stitches in his cheek and had his jaw wired shut.  *Id.* at ¶¶9-10.  Mr. Cole remained in the Correctional Treatment Center for two months, where he vomited his liquid diet and tore the wire in his jaw.  *Id.* at ¶¶11-13."  (November 9, 2007 Report, p. 47, ¶129.) | | to be admitted). |
| 61.    "For the period of February to May, 2007, plaintiffs counsel determined that out of 79 prisoners with disabilities requiring placement accommodations based on their physical or medical condition, more than one-third were not transferred to an appropriate placement within seven days, as required by court order in *Armstrong v. Schwarzenegger*.  Plata Pls' Trial Ex. 3, at 15-16.  (June 20, 2007 SQ *Armstrong* Report.)"  (November 9, 2007 Report, p. 48, ¶130.) | Objection: Hearsay, document speaks for itself | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Plaintiffs' Counsel's prison reports are inadmissible hearsay, however the report contains statements by defendants' agents that are admissible as party/agent admissions. Fed. R. Evid. 801(d)(2). Alternatively, defendants have offered plaintiff counsel's reports as trial exhibits.  If such reports are deemed admissible, then under the rule of related writings, all plaintiffs' counsel's |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | reports should be admissible.  Fed. R. Evid. 106. |
| 62.    "The California Division of Occupational Safety and Health recently fined CDCR for its failure to investigate eight bacterial infections and for not reporting two staph infections between June 2006 and May 2007.  Joint Pls' Trial Ex. 44. (Sacramento Bee, November 1, 2007.)"  (November 9, 2007 Report, p. 49, ¶134.) | Objection: Hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted). |
| 63.    "Indeed, one of the physicians I spoke to in the gymnasium clinic reported concerns regarding the recent incidence of virally-related skin conditions that could be the beginning of an outbreak." (November 9, 2007 Report, p. 50, ¶135.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 64.    "…overcrowding is the primary cause of the current state of medical crisis in the CDCR."  (November 9, 2007 Report, p. 50, ¶136.) | Objection: Legal conclusion; ultimate issue | Within scope of expertise; Fed. R. Evid. 704 (opinion or inference not objectionable because it embraces ultimate issue).  See Plaintiff's Response to Defendant's Objections to Evidence Submitted in Opposition to Motions for Dismissal or, Alternatively, Summary Judgment or Adjudication, October 13, 2008. |
| 65.    "The Receiver and the CDCR will be unable to address and resolve the critical medical care deficiencies until the need for services with the system is significantly reduced." (November 9, 2007 Report, p. 50, | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| ¶136.) | | |
| 66.  "Moreover, I believe that the hiring gains for clinicians made in the past year will be lost if these systemic issues are not addressed, because many newly-hired clinicians will be unwilling to risk their professional credentials and reputations by practicing in an environment where their patients are at risk of harm because among other things adequate clinical space is scarce, appointments are not scheduled, complete medical records are unavailable, and medications are not delivered."  (November 9, 2007 Report, p. 50, ¶136.) | Objection: Speculation | Within scope of expertise |
| 67.  "As the Receiver has already informed the Governor, "It will not be possible to raise access to, and quality of, medical care to constitutional levels with overpopulation at its current levels."  Joint Pls' Trial Ex. 55, at 1.  (July 24, 2006 Letter, Receiver to Governor Schwarzenegger.)"  (November 9, 2007 Report, p. 50, ¶137.) | Objection: Hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 106 (defendants have introduced related writings by the Receiver) |
| 68.  "Creating a constitutionally adequate medical system with the current population level is practically impossible.  Creating such a system while the population continues to grow steadily, adding thousands of prisoners each year, is inconceivable."  (November 9, 2007 Report, pp. 50-51, ¶137.) | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |
| 69.  "The CDCR, in concert with the Receiver, cannot simultaneously develop a competent medical care delivery system in facilities that lack necessary space and staffing, and address the growing needs of an ever-increasing number of patients. Until the exiting overcrowding situation is addressed, CDCR is locked into a "crisis-response" approach where it can focus only on | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| putting out "fires" rather than system-building." (November 9, 2007 Report, p. 51, ¶138.) | | |
| 70. "As a former Receiver tasked with building a constitutionally adequate medical care system in an unstable environment, I understand one must reduce on-going stresses in the system to stabilize the health care delivery situation. I was able to successfully implement a constitutionally adequate system in the District of Columbia jail in the required time frame because there was a population cap on the facility. In order to develop and implement a constitutionally adequate system in a reasonable time frame and avoid further unnecessary suffering and death, California must reduce and stabilize the prison population." (November 9, 2007 Report, p. 51, ¶139.) | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |

**B.     September 10, 2008 Second Supplemental Report of Ronald Shansky, M.D.**

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 1. "I also concluded in my first report that it will not be possible to achieve a constitutional level of health care in the CDCR in the foreseeable future, unless the prison population is significantly reduced. My opinion has not changed. The limitations on the CDCR, including staffing, administrative resources and especially treatment space, are so severe that the only avenue for building a constitutional health care delivery system is to reduce the demand on the system by lowering the number of patients it serves." (Sept. 10, 2008 2nd Suppl. Report, p.3, ¶8.) | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |
| 2. "While I believe that reducing the population is necessary to achieve a constitutional level of care. . . ." (Sept. 10, 2008 2nd Suppl. Report, p. | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 3, ¶9.) | | |
| 3. "Reducing the population in the system to a manageable level is the only way to create an environment in which other reform efforts, including strengthening medical management, hiring additional medical and custody staffing, and improving medical records and tracking systems, can take root in the foreseeable future. Continuing efforts to building a constitutional system under the current overcrowded conditions will guarantee that the unconstitutional conditions, and preventable suffering, will exist for a substantially longer period of time than would be the case if the population were reduced." (Sept. 10, 2008 2nd Suppl. Report, p.3, ¶10.) | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |
| 4. "I was told that a third nurse sometimes conducts these medical interviews at a desk in the open receiving area, where prisoners and staff circulate." (Sept. 10, 2008 2nd Suppl. Report, p. 8, ¶23.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 5. "I questioned Dr. Emam, the facilities Chief Physician and Surgeon, about these conditions. He indicated that space is so limited, that there is no other space available in which these interviews may be performed." (Sept. 10, 2008 2nd Suppl. Report, p. 8, ¶24.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant). Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or |

- 40 -

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | inference to be admitted) |
| 6. "According to Dr. Emam, prisoners at NKSP are seen by a physician or mid-level provider for their medical history and physical examination within two to three days . . . Dr. Emam acknowledged that the 'exams' that take place are in fact simply medical interviews, primarily for the purpose of determining what type of housing is appropriate for the prisoner." (Sept. 10, 2008 2nd Suppl. Report, p. 8, ¶25.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 7. "Dr. Emam told me that the prison lacks the space to provide actual physical examinations for the high number of incoming Reception Center prisoners arriving daily at NKSP, and that, in any case, he lacks the physician staff to provide that service." (Sept. 10, 2008 2nd Suppl. Report, p. 8, ¶27.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 8. ". . . .data provided to me by the scheduler show that prisoners are regularly not seen for their scheduled appointments."  (Sept. 10, 2008 2nd Suppl. Report, p. 11, ¶35.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| | | admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 9. "For example, I reviewed the nurse triage tracking data for the week of August 18, 2008 for prisoners from D-yard. Joint Pls' Trial Ex. 36. During that week, of the 119 appointments schedule[sic], more thant[sic] 50% (61) did not take place.  While the tracking form states that five prisoners were not seen because of a yard change, one paroled and one was at a different medical appointment, the primary reason stated for the missed appointment was 'lockdown,' 'out of time,' or 'short nurses.'" (Sept. 10, 2008 2nd Suppl. Report, p. 11, ¶36.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 10.    "I strongly suspect that the location of the clinic on a different yard means that the triage line runs slower, resulting in fewer patients being seen timely." (Sept. 10, 2008 2nd Suppl. Report, p. 11, ¶36.) | Objection: Lacks foundation, speculation | Within scope of expertise |
| 11.    "However, I reviewed D-yard's August 18-22 nursing tracking data, and found that of the 14 patients who were scheduled but not seen on August 18, just three patients were rescheduled and seen that week, while ten were either rescheduled but not seen, or not rescheduled within the week. _Id._ [Joint Pls' Trial Ex. 36] (One prisoner transferred or paroled.)" (Sept. 10, 2008 2nd Suppl. Report, p. 11, ¶37.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
|  |  | expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 12.    "At SATF, the medical staff reported that there were 1,200 overdue primary care appointments. I was told that, in an effort to address the backlog, SATF had on the day of my visit three CDCR physicians from the Central Office, whose mission was to visit, at their cell front, prisoners who had submitted sick call slips to determine what medical care they required, if any.  I was told that primary care providers will be performing cell front triages two days a week, every two weeks, for the foreseeable future."  (Sept. 10, 2008 2nd Suppl. Report, p.12, ¶41.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 13.    "The SATF staff said that physicians were seeing patients in the housing units at their cell fronts because SATF lacked exam space for them to use for these medical encounters." (Sept. 10, 2008 2nd Suppl. Report, p. 13, ¶42.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 14.    Heading 3.  "PVSP's Clinical Space is Inadequate."

"43.  Dr. Igbinosa, the Chief Medical Officer at PVSP, reported that he is currently authorized to hire 14 primary care providers to care for the | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by |

1671599.1

| | Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|---|
| | 5, 200 prisoners as PVSP. If he were able to fill all primary care positions, he advised me that he would not have the space for them.<br><br>44. Dr. Igbinosa further related that he would like to have more specialty providers from the outside community provide care to prisoners on-site at the prison. Although some specialists do currently see patients at the prison periodically, Dr. Igbinosa said that he cannot expand this program because he lacks the necessary clinical space to accommodate the providers."<br><br>(Sept. 10, 2008 2nd Suppl. Report, p.13, heading, ¶¶43, 44) | | unavailable declarant). Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| | 15.    Heading a. "California Rehabilitation Center (CRC)."<br><br>"48. The January 2008 operation assessment regarding the CRC conducted by the Receiver's office concluded that all medical spaces are in urgent need of repair, and that, '[f]or the most part, none of the existing areas occupied by health care clinicians are clinically appropriate.' Jt. Pls' Trial Ex. 100 (California Prisoner Health Care Receivership Corporation, Operational Assessment for Access to Care at the California Rehabilitation Center) at 15."<br><br>(Sept. 10, 2008 2nd Suppl. Report, p.14, heading, ¶48.) | Objection: Hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 106 (defendants have introduced related writings by the Receiver); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10 |
| | 16.    Heading b. "California Training Facility - Soledad (CTF)."<br><br>"49. A review of CTF conducted by CDCR and Receiver staff in March 2007 determined that the prison's Central Facility clinic is so crowded and has such limited space that '[i]mates that are ducatted for health care usually wait for hours to see the provider,' the North Facility clinic is 'very small based on the number of | Objection: Hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 106 (defendants have introduced related writings by the Receiver); Fed. R. |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| inmate-patients being served,' and that the South Facility clinic area, although the newest physical plant of the three facility clinics at the prison, was 'built to support an inmate population of 510 inmates and not the current housing of more than 1000 inmates.' Jt. Pls' Trial Exh. 99 (Operational Assessment, review conducted in March 2007) at 2-3." <br><br> (Sept. 10, 2008 2nd Suppl. Report, pp. 14-15, heading, ¶49.) | | Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10; Fed. R. Evid. 801(d)(2) (admission of party opponent or agent) |
| 17.    Heading c. "Mule Creek State Prison (MCSP)." <br><br> "50.  The December 2007 operational assessment report regarding MCSP conducted by the Receiver's office concluded, '[a]ll of the Facility Clinics are undersized for the quantity of inmate/patients seen on a daily basis and lack [] appropriate holding/waiting space for inmate/patients ducated to be seen by health care providers.'  Jt. Pls' Trial Ex. 101 (Operational Assessment for Access to Care at Mule Creek State Prison) at 7.  The assessment also pointed out that although Mule Creek's 'size and overall design…is likely one of the most manageable…anywhere within the State…,' it is 'no exception' to the 'system wide barrier' of 'serious space deficiencies for clinical staff,' which have existed at '[a]ll of the CDCR facilities the Review Team has visited….'  *Id.* at 28." <br><br> (Sept. 10, 2008 2nd Suppl. Report, p. 15, heading, ¶50.) | Objection: Hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 106 (defendants have introduced related writings by the Receiver); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10 |
| 18.    "The May 2008 vacancy and registry report provided by the Plata health care support division shows on-going serious problems in hiring primary care providers (PCPs), and even with having adequate numbers of such providers on site.  Jt. Pls' Trial Ex. 35 (Plata Vacancy/Registry | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| Report, May 2008) at 1. The report shows that statewide there was a 25 percent vacancy rate in primary care provider positions; the vacancy rate adjusted to account for PCP employees on leave in May was 35 percent. *Id.* Further, the report shows that in May the prisons statewide had a shortfall of 56 PCPs even after temporary, overtime, and contract/registry PCPs used to reduce vacancies were taken into account. *Id.*" (Sept. 10, 2008 2nd Suppl. Report, p. 17, ¶55.) | | expert's opinion or inference to be admitted); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 19.   "According to the Plata Vacancy/Registry Report for May 2008, NKSP had a total of 16 primary care provider positions, of which 6.6 were unfilled, for a vacancy rate of 41%. *Id.* at 12." (Sept. 10, 2008 2nd Suppl. Report, p. 17, ¶56.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 20.   "Dr. Emam, the acting Chief Physician and Surgeon at NKSP advised me that the prison had very recently succeeded in hiring some primary care providers, but hat it has been extremely difficult to fill the vacant positions. He reported that the prison continued to have two line | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   of party |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| physician vacancies and that they ahd also been unable to fill the Chief Physician and Surgeon position that he has been filling on a temporary basis." (Sept. 10, 2008 2nd Suppl. Report, pp. 17-18, heading and ¶57.) | | opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 21.    "The May 2008 Vacancy report shows that SATF had 13 primary care positions allocated, of which one was filled with a state physician, but that person was on leave. *Id.* at 15." (Sept. 10, 2008 2nd Suppl. Report, p. 18, ¶58.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 22.    "The Report shows that SATF had hired 7.7 registry providers at that time to deliver primary care. *Id.*" (Sept. 10, 2008 2nd Suppl. Report, p. 18, ¶59.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
|  |  | 2008, at 4-10; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 23.    "When I inspected the prison, Dr. Enenmoh, the acting Chief Medical Officer, advised me the prison still had just one state employee physician, and that recruiting for the physician positions, and for the unfilled Chief Physician and Surgeon position, had been very difficult.  He had eight contract physicians and two contract mid-level providers." (Sept. 10, 2008 2nd Suppl. Report, pp. 18, ¶60.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 24.    "The May Vacancy Report shows that PVSP had 14.8 allocated primary care positions.  At that time, PVSP had just one state employee primary care provider.  The prison contracted with 5.1 registry primary care providers. *Id.* at 13." (Sept. 10, 2008 2nd Suppl. Report, p. 18, ¶61.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 25.    "According to Dr. Igbinosa, as of the date of my inspection, the prison had the equivalent of eight full- | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission |

- 48 -

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| time primary care practitioners.  He explained that it is extremely difficult to recruit medical professionals to work at the prison because it is so remote.  Most contract providers currently providing care at the prison live in Los Angeles or San Francisco and commute to the prison on an intermittent basis.  One physician commutes from Chicago twice a month, for a week each time.  Dr. Igbinosa said that none are willing to relocate to the Central Valley.  He noted that, even when candidates at hiring fairs express interest in working at PVSP, they often retract their application when they realize that they can earn the same CDCR salary and live in or near an urban environment.  As a consequence, PVSP has too few primary care providers to care for the number of patients at the prison." (Sept. 10, 2008 2nd Suppl. Report, pp. 18-19, ¶62.) | | of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 26.     "The May 2008 Vacancy Report shows that HDSP had 8.0 allocated primary care positions, and that two were vacant in May. *Id.* at 10." (Sept. 10, 2008 2nd Suppl. Report, p. 19, ¶63.) | Objection: Document speaks for itself, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(8) (public record); see also Plaintiff's Opposition to Defendant's MIL No. 3, October 30, 2008, at 4-10; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |

- 49 -

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 27. "However, on the date I inspected High Desert in August 2008, Chief Medical Officer Dr. Swingle advised me that, although HDSP appeared to have four state physicians, all four were either on leave or stripped of their clinical privileges." (Sept. 10, 2008 2nd Suppl. Report, p. 19, ¶63.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant. Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 28. "At SOL, the prison is authorized 9.0 staff primary care provider (PCP) positions." (Sept. 10, 2008 2nd Suppl. Report, p. 19, ¶64.) | Objection: Lacks foundation, hearsay | Personal observation during prison tour |
| 29. "The health care manager stated that the prison was making a request to add two more staff PCP positions, so that there would be a total of eleven. The chief medical officer, however, said that the prison needs a total of 13 PCP staff positions, given the number of medical encounters." (Sept. 10, 2008 2nd Suppl. Report, p. 19, ¶64.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant. Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 30. "Solano's Chief Medical Officer, Dr. Traquina, indicated that there is a rapid turnover in registry personnel, and it is difficult to build a medical care delivery program with staff who do not intend to make a substantial time investment at the prison." (Sept. 10, 2008 2nd Suppl. Report, pp. 19-20, ¶64.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 31. "At NKSP, I reviewed the tracking data for the D-yard primary | Objection: Document | Fed. R. Evid. |

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| care provider sick call line for the week before my inspection, August 18-22. Jt. Pls' Trial Ex. 37. I found that the clinic had scheduled 94 appointments, but that the primary care provider had not seen 27 (29%) of those patients. The most common reasons cited on the tracking instrument were that the clinician ran out of time, or did not have the patient's Unit Health Record." (Sept. 10, 2008 2nd Suppl. Report, p. 20, ¶69.) | speaks for itself, hearsay | 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 32.    "At SATF, the prison's Health Care Manager, Gayle Martinez, reported that SATF had a backlog of 1,200 overdue primary care appointments."  (Sept. 10, 2008 2nd Suppl. Report, p. 20, ¶70.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 33.    "I interviewed the Office Technicians and reviewed sick call slips on four of the seven prison yards (A, C, E and G).  I found that, on each of the yards, it usually takes two to six days for prisoners to see a nurse for a triage appointment. (These appointments are supposed to occur within one business day of receipt of the patient's sick call slip.) For example, on E-yard, I reviewed the stack of sick call slips for the patients scheduled to see the RN on | Objection: Hearsay, documents speak for themselves | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| August 27. The sick call slips were marked received on August 21-25." (Sept. 10, 2008 2nd Suppl. Report, p. 21, ¶71.) | | expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 34.    "On each of the four prison yards I inspected, the Office Technicians reported, and the sick call slips demonstrated, that it takes roughly four weeks for primary care appointments, once the patient has been referred to the primary care line on a routine basis." (Sept. 10, 2008 2nd Suppl. Report, p. 21, ¶72.) | Objection: Hearsay, documents speak for themselves | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 35.    "I was told by PVSP staff that the wait for routine primary care provider appointments is two to four weeks." (Sept. 10, 2008 2nd Suppl. Report, p. 21, ¶73.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 36.    "At SOL, there are major delays for routine appointments with a primary care provider at each of the prison's three clinics (Primary, Satellite, and Annex).  In the Primary clinic, it takes 16 weeks for such an appointment.  In the Satellite clinic, it | Objection: Lacks foundation, hearsay | Personal observation; Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data |

- 52 -

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| takes six to eight weeks.  In the Annex clinic, the backlog is eight to ten weeks, even with primary care provider appointments taking place in Saturdays.  The Primary clinic also has a backlog of face-to-face appointments with registered nurses; such appointments take about ten days to occur, even though the clinic had run triple lines of such appointments on weekends."  (Sept. 10, 2008 2nd Suppl. Report, p. 21, ¶74.) | | need not be admissible in order for expert's opinion or inference to be admitted) |
| 37.    "At each of the four main medical clinics at HDSP there are significant delays for routine appointments with a primary care provider (PCP). In 'A' facility clinic, routine appointments are scheduled six weeks after a nurse determined that patient should be seen by such a provider.  In 'B' facility clinic, such appointments are scheduled approximately 16 weeks after such determinations.  In 'C' facility clinic, such appointments are scheduled approximately eight weeks after such determinations.  In 'D' facility clinic, such appointments are scheduled approximately 4 weeks after such determination." (Sept. 10, 2008 2nd Suppl. Report, p. 22, ¶75.) | Objection: Lacks foundation, hearsay | Personal observation; Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 38.    "The 'C' and 'D' facility clinics also had backlogs for routine registered nurse face-to-face triage appointments; those appointments are scheduled two and four to five days, respectively, after the prisoner's written request for medical attention was received."  (Sept. 10, 2008 2nd Suppl. Report, p. 22, ¶76.) | Objection: Lacks foundation, hearsay | Personal observation; Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 39.    "The HDSP CMO was not | Objection: Irrelevant, | Fed. R. Evid. |

- 53 -

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| surprised . . . She was also not surprised . . . " (Sept. 10, 2008 2nd Suppl. Report, p. 22, ¶77.) | hearsay | 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Relevant to existence and/or impact of overcrowding |
| 40.    "[The HDSP CMO] advised me that HDSP lacked the staff and resources to treat the number of prisoners at the facility." (Sept. 10, 2008 2nd Suppl. Report, p. 22, ¶77.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).  Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 41.    "Additionally, based on my review of a sample of unit health records (UHR), I believe required follow-up appointments with primary care providers are not being done for a substantial number of patients.  I reviewed 13 UHRs for prisoners sent offsite approximately one month before my inspection (either for scheduled or unscheduled appointments) for whom documentation of the offsite visit and follow-up with the PCP should have been in the file for minimally adequate care. f I found that nine of the 13 UHRs lacked documentation | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| of a timely follow-up with a physician, and eight lacked required documentation of the service or hospital visit." (Sept. 10, 2008 2nd Suppl. Report, p. 23, ¶80 | | |
| 42.    "Without this link, I believe some patients who do require urgent follow-up attention will fail to receive it." (Sept. 10, 2008 2nd Suppl. Report, p. 24, ¶81.) | Objection: Lacks foundation, speculation | Within scope of expertise |
| 43.    "I reviewed 11 UHRs for prisoners who had transferred to SATF two weeks earlier and had significant medical conditions.  Based on these records and the available documentation, I concluded that for ten of the eleven patients, medically necessary follow-up had not occurred.  The problems i identified included missed medications and lapsed chronic care follow-up visits with a primary care provider." (Sept. 10, 2008 2nd Suppl. Report, p. 24, ¶82.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 44.    "Additionally, the UHRs lacked documentation of required primary care follow-up appointments.  I reviewed nine UHRs for prisoners sent offsite approximately one month before my inspection (either for scheduled or unscheduled appointments) for whom documentation of the offsite visit and follow-up with the PCP should have been in the file for minimally adequate care.  I was unable to find documentation of a PCP follow-up in four records.  For three of those four medical records, there was also no documentation from either the hospital or specialist regarding the encounter." (Sept. 10, 2008 2nd Suppl. Report, p. 24, ¶83.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 45.    "Some patients who receive medical attention off-site but are not adequately followed up by their primary care providers upon return will be at serious risk of harm because necessary treatment will | Objection: Lacks foundation, speculation | Within scope of expertise |

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| either lapse, or not be ordered." (Sept. 10, 2008 2nd Suppl. Report, p. 24, ¶83.) | | |
| 46.    "The SATF medical staff advised me that they are unable to schedule timely follow-ups in many cases because they have too few medical providers for the number of prisoners requiring treatment."  (Sept. 10, 2008 2nd Suppl. Report, p. 24, ¶84.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 47.    "I reviewed the UHRs for 23 prisoners sent offsite approximately one month before my inspection (either for scheduled or unscheduled appointments) for whom documentation of the offsite visit and follow-up with the PCP should have been in the file for minimally adequate care.  According to the UHRs, 12 of 23 prisoners did not receive timely follow-up appointments.  Eleven of the 23 UHRs were missing required documentation, including ER reports, consult reports, etc."  (Sept. 10, 2008 2nd Suppl. Report, p. 25, ¶85.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 48.    "At Solano, I reviewed 14 records of patients sent offsite approximately one month before my inspection (either for scheduled or unscheduled appointments, for whom documentation of the offsite visit and follow-up with the PCP should be in the file for minimally adequate care.  I found that just seven of the files contained documentation of timely follow-up, and in four UHRs, required documentation of the offsite medical encounter was missing."  (Sept. 10, 2008 2nd Suppl. Report, p. 25, ¶86.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 49.    "At HDSP, I reviewed 15 records of patients sent offsite approximately one month before my inspection (either for scheduled or unscheduled appointments, for whom documentation of the offsite visit and follow-up with the PCP should be in the file for minimally adequate care. In eleven cases, there was no documentation of a timely PCP follow-up visit, and in nine cases, there was missing documentation. My review uncovered other serious problems.  For example, one patient was ordered an urgent MRI of the brian on July 8, 2008.  There was no documentation that the MRI had occurred as of August 29, 2008." (Sept. 10, 2008 2nd Suppl. Report, p. 25, ¶87.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 50.    "At PVSP, the offsite aging specialty report included 55 high priority referrals as of August 27, 2008. *Plata* Pls' Trial Ex. 38.  Of those, 11 had been pending for over 14 days, yet had no appointment scheduled, and of those scheduled, 19 were scheduled to take place more than 14 days after the referral. Thus, well over half of the PVSP patients are unable to receive timely high priority appointments."  (Sept. 10, 2008 2nd Suppl. Report, p. 26, ¶89.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted; Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 51.    "The situation at SOL was worse.  There, 63 high priority off-site specialty appointments were listed on the aging report for such appointments.  *Plata* Pls' Trial Ex. 39. None were scheduled for a date within 14 days of the primary care provider request.  Most of these urgent referrals--approximately 40-- did not yet even have an appointment date; four of these cases had been already pending at least 20 weeks, four others at least 15 weeks, three others at least 10 weeks, and another approximately one dozen between four and eight weeks.  Of the | Objection: Documents speak for themselves, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| approximately two dozen high priority off-site specialty referrals that had appointment dates scheduled, about 12 were scheduled to take place more than approximately five weeks after approval, with a few of these being scheduled four to five months (or longer) after approval. Another approximately one dozen were scheduled to take place three or four weeks after the approval date." (Sept. 10, 2008 2nd Suppl. Report, pp. 26-27, ¶90.) | | regularly conducted activity). |
| 52.    "At HDSP, 48 high priority off-site specialty referrals were listed on the aging report. *Plata* Pls' Trial Ex. 40.  Only one was scheduled for a date within 14 days of the primary care provider request, as required for these urgent referrals by the court-approved policies.  Three other referrals were scheduled to take place between 14 and 21 days after the approval date.  Seven other high priority referrals had appointments scheduled, with dates ranging from four to eight weeks after the approval date.  The vast majority of the urgent off-site specialty referrals - 37 of the cases - did not yet even have an appointment date with the requested specialty provider.  Approximately 20 cases without an appointment date scheduled had been pending for at least six weeks; half of these had been pending for more than two months."  (Sept. 10, 2008 2nd Suppl. Report, p. 27, ¶91.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent);  Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).    Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 53.    "At NKSP, of the 70 listed high priority offsite specialty referrals, 22 (31%) had been pending for more than 14 days and had no appointment scheduled.  *Plata* Pls' Trial Ex. 41.  Twelve more were scheduled, but more than 14 days had elapsed between the referral and the appointment.  Nearly half the appointments currently listed as 'high priority' NKSP will not take place within the required timeframe."  (Sept. | Objection: Documents speak for themselves, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).    Fed. R. Evid 703 (facts or data need not be admissible in order for |

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 10, 2008 2nd Suppl. Report, pp.27-28, ¶92.) | | expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 54.    "In addition, Dr. Swingle, the HDSP Chief Medical Officer, reported that the transcribing of dictated primary care provider notes was 'several months' behind at the prison." (Sept. 10, 2008 2nd Suppl. Report, p. 30, ¶101.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 55.    "I was told by custody staff that the B-yard at PVSP has been locked down during the last two months." (Sept. 10, 2008 2nd Suppl. Report, p. 32, ¶108.) | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted) |
| 56.    "The appointment tracking data for PVSP for the month of August (through August 14) shows the dramatic drop off in completed patient appointments on B-yard. Plata Pls' Trial Ex. 42 (PVSP Physician Appointment Statistics, | Objection: Documents speak for themselves, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| August 2008).  During the first two weeks of August, primary care providers on yards A, C and D saw 258, 193 and 25 prisoners, respectively. On B-yard, the primary providers saw 118 prisoners during the same period.  Indeed, on August 7, two providers were scheduled to see 42 patients, but just ten patients were seen.  *Id.*  The reasons stated on the tracking list were 'alarm, LD[presumably lockdown]; no escorts.' *Id.*"  (Sept. 10, 2008 2nd Suppl. Report, pp. 32-33, ¶108.) | | unavailable declarant).    Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 57.    "The tracking statistics for the RN triage appointment likewise reflect a drop for completed patient triage appointments for B-yard patients.  *Plata* Pls' Trial Ex. 43 (PVSP RN Appointment Statistics, August 2008).  While A, C and D completed 215,121 and 129 triage appointments, B-yard nurses completed just 98, or fewer than appointments per clinic day.  *Id.*  The reasons provided for the cancelled appointments included, 'lockdown,' 'no escorts,' and 'alarms.'  *Id.*"  (Sept. 10, 2008 2nd Suppl. Report, p. 33, ¶109.) | Objection: Documents speak for themselves, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).    Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Fed. R. Evid. 803(6) (record of regularly conducted activity) and 803(7) (absence of record of regularly conducted activity). |
| 58.    "However, when I questioned the office technician further about scheduling, he stated that because the yard was on lockdown, he had to schedule prisoners for their triage appointments by race/gang affiliation, with each subgroup having one day a week for appointments.  Thus, he was able to schedule timely RN triage appointments in only a handful of cases."  (Sept. 10, 2008 2nd | Objection: Hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).    Fed. R. Evid 703 (facts or data need not be |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| Suppl. Report, p. 33, ¶110.) | | admissible in order for expert's opinion or inference to be admitted) |
| 59.    "At HDSP, the prison routinely has what the Warden describes as rolling lockdowns, in which half of the prison's four main housing facilities are locked down at any one time because the prison does not have enough correctional officers to operate all facilities without using overtime.  When there is such a lockdown on the two HDSP facilities used to house maximum custody prisoners, access to medical care is affected because such prisoners must be escorted to the medical clinics.  When there is a lockdown in 'D' facility, the primary care provider will be able to see between 12 and 20 patients a day, instead of the 20 that can be seen if there is no lockdown."  (Sept. 10, 2008 2nd Suppl. Report, pp. 33-34, ¶111.) | Objection: Lacks foundation, hearsay | Fed. R. Evid. 801(d)(2) (admission of party opponent or agent); Fed. R. Evid. 804(b)(3) (statement against interest by unavailable declarant).   Within scope of expertise; Fed. R. Evid 703 (facts or data need not be admissible in order for expert's opinion or inference to be admitted); Personal observation on prison tour. |
| 60.    ". . . I continue to believe that overcrowding is the primary cause of the current state of medical crisis in the CDCR."  (Sept. 10, 2008 2nd Suppl. Report, p. 36, ¶119.) | Objection: Legal conclusion, ultimate issue | Within scope of expertise; Fed. R. Evid. 704 (opinion or inference not objectionable because it embraces ultimate issue).  See Plaintiff's Response to Defendant's Objections to Evidence Submitted in Opposition to Motions for Dismissal or, Alternatively, Summary Judgment or Adjudication, October 13, 2008. |
| 61.    "I do not believe the Receiver and the CDCR will be able to address and resolve the critical medical care deficiencies until the need for services within the system is significantly reduced. . . ."  (Sept. 10, | Objection: Phase II issue-irrelevant | Relevant to existence and/or impact of overcrowding |

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1

| Statement | Defendants' Objections | Plaintiffs' Responses |
|---|---|---|
| 2008 2nd Suppl. Report, p. 36, ¶119.) | | |
| 62.    "I still believe that some of the hiring gains for clinicians will be lost if these systemic issues are not addressed, because many newly-hired clinicians will be unwilling to risk their professional credentials and reputations by practicing in an environment where their patients are at risk of harm because, among other things, adequate clinical space is scarce, appointments are not scheduled, complete medical records are unavailable, and medications are not timely delivered."  (Sept. 10, 2008 2nd Suppl. Report, p. 36, ¶119.) | Objection: Speculation | Within scope of expertise |

DATED:  November 17, 2008                    HANSON BRIDGETT LLP


By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED:  November 17, 2008              EDMUND G. BROWN JR.
Attorney General of the State of California


By: /s/ Kyle A. Lewis
KYLE LEWIS
Deputy Attorney General
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED: November 17, 2008              PRISON LAW OFFICE


By: /s/ Sara Norman
SARA NORMAN
Attorneys for *Plata* and *Coleman* Plaintiffs.

DEFENDANTS' OBJECTIONS TO EXPERT REPORTS OF RONALD M. SHANSKY
PLTFS IDENTIFIED FOR PHASE I ADMISSION

1671599.1