1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Senior Assistant Attorney General
5  LISA A. TILLMAN – State Bar No. 126424
   Deputy Attorney General
6  KYLE A. LEWIS – State Bar No. 201041
   Deputy Attorney General
7  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
8  Telephone: (415) 703-5708
   Facsimile:  (415) 703-5843
9  lisa.tillman@doj.ca.gov
   kyle.lewis@doj.ca.gov
10
   Attorneys for Defendants
11

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

14          **AND THE NORTHERN DISTRICT OF CALIFORNIA**

15    **UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

16      **PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

17

| | |
|---|---|
| 18  RALPH COLEMAN, et al., | No. 2:90-cv-00520 LKK JFM P |
| 19                Plaintiffs, | **THREE-JUDGE COURT** |
|        v. | |
| 20  ARNOLD SCHWARZENEGGER, et al., | |
| 21          Defendants. | |
| 22  MARCIANO PLATA, et al., | No. C01-1351 TEH |
| 23                Plaintiffs, | **THREE-JUDGE COURT** |
|        v. | **DEFENDANTS' TRIAL OBJECTIONS TO EXPERT REPORT OF BARRY KRISBERG AND PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS** |
| 24  ARNOLD SCHWARZENEGGER, et al., | |
| 25          Defendants. | |
| 26 | |
| 27 | **To:  Three-Judge Panel** |

28                                          - 1 -

Defendants submit their objections and Plaintiffs submit their responses to
Defendants objections to the Expert Report of Barry Krisberg dated September 8, 2009.

**I.**

**GENERAL OBJECTIONS**

Under Federal Rules of Evidence 702, Barry Krisberg is not qualified to make
many of the opinions and assertions contained in his August 2008 expert report.
Professor Haney's comments are not based upon sufficient facts or data, nor are they
product of reliable principles and methods.

**II.**

**PLAINTIFFS RESPONSE TO DEFENDANTS GENERAL OBJECTIONS**

**III.**

**SPECIFIC OBJECTIONS**

A.    **Expert Report of Barry Krisberg Haney dated August 15, 2008**

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| <u>Part I, Qualifications</u><br>Pages 1 through 4 | Without waiving any assertions of lack of foundation, Defendants make no objection to this statement. | |
| <u>Part II, Expert Opinions</u> | | |
| I was retained by the plaintiffs in July of 2008 to be an expert in these proceedings and have reviewed many documents, depositions, interrogatories, and other expert reports and statistical data relevant to the Coleman and Plata proceedings. I have been asked to render an opinion on whether the accelerated release of CDCR inmates would create a danger to public safety. My fee is | No objections | |

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| $300 per hour for work related to these cases. | | |
| Subpart A<br>Page 4<br>Done properly, a population cap in the California state prison system would not have an adverse effect on public safety. | Inappropriate basis for opinion. Fed. R. Evid. 703.<br>Lack of foundation.<br>Assumes facts not in evidence.<br>Speculation. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Moreover, Dr. Krisberg has direct, percipient knowledge of the studies conducted in Illinois, Florida and California |
| My extensive review of the available data reveals that millions of prisoners in other states as well as inmates in numerous California county jail systems have been released early in response to population pressures with no adverse effect on serious crime. Indeed, the most solid empirical evidence on the experience of other states that have accelerated prisoner release to reduce population is that such releases are uniformly safe and, if done properly, actually reduce crime. | Inappropriate basis for opinion. Fed. R. Evid. 703.<br>Lack of foundation.<br>Assumes facts not in evidence.<br>Speculation. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Moreover, Dr. Krisberg has direct, percipient knowledge of the studies conducted in Illinois, Florida and California |
| Subpart A 1.<br>Page 5<br>All rigorous studies of other state prison systems' early release programs demonstrate that such programs do not endanger public safety. | Inappropriate basis for opinion. Fed. R. Evid. 703.<br>Lack of foundation.<br>Assumes facts not in evidence.<br>Speculation. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Moreover, Dr. Krisberg has direct, percipient knowledge of the studies |

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| | | conducted in Illinois, Florida and California. |
| My opinion is based on a thorough review of empirical research over the past 22 years ill states that have accelerated the release of prison inmates. In March of 2007, my colleague Carolina Guzman and I conducted an extensive review of the published literature on early release and public safety. This review utilized the library resources of the National Institute of Corrections, the National Criminal Justice Reference Service, the James Cotton-NCCD Criminal Justice Collection at Rutgers University, and the Bancroft Library at the University of California Berkeley. This review identified 14 peer-reviewed articles, dissertations, state agency reports, and national studies. These materials covered the period from 1981 to 2004 and covered Canada and the states of California, Washington, Wisconsin, Illinois, Texas, Colorado, Montana, Michigan, and Florida. In addition, one study covered early releases from a large jail in the Northeast U.S. Attachment I3 includes a brief overview of these 14 studies and the full citation of authors and sources. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Moreover, Dr. Krisberg has direct, percipient knowledge of the studies conducted in Illinois, Florida and California |
| Overall, this literature showed that the recidivism rates of prisoners released early were comparable to those who served their full terms. In some instances the recidivism rate among the early release group was lower than those inmates who served their full terms. We found | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Mischaracterizes the evidence. Hearsay. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| that early release programs actually lowered recidivism rates of released inmates when they were targeted at selected low-risk offenders, especially those convicted of substance abuse or property crimes. Further, early release produced lower rates of recidivism if there were provisions made for community-based supportive services such as housing, employment, or drug treatment. In addition to the recidivism data, virtually all of the studies illustrated that overall crime rates were either stable or declining during the periods when prisoners were being released early. The following discussion reviews some of the specific studies in greater detail. | Fed. R. Evid. 802, 805. | studies, literature, etc.) Moreover, Dr. Krisberg has direct, percipient knowledge of the studies conducted in Illinois, Florida and California. Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| Washington began accelerating the parole of inmates to reduce prison crowding in 1979. The Legislature mandated that the most serious felons and sexual psychopaths could not be part of the early release program. The research covered 1,674 inmates that were released an average of 6 months early. The comparison group consisted of inmates released in the 12 months before this program. The recidivism rates of the two groups were virtually | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG
AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| identical over the next five years. The Washington state crime rate was roughly constant during the period of the early release. | | preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| In 1970, the California Department of Corrections selected a cohort of 1,310 inmates who were eligible for parole. Half of the group members were randomly selected and paroled an average of 6.6 months earlier than their scheduled dates. The CDC researchers found no statistically significant differences between the two groups in terms of returning to prison based on either a new conviction or a parole violation. There was no evidence that this experiment had any effect on the state crime rate. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG
AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| | | effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| Colorado immediately released 126 prisoners after the courts ruled that they should have gotten good time credits based on their jail behavior during pre-sentence confinement. There were no statistically significant differences in the re-arrest rates for the accelerated released inmates compared to those who were not released. Again, there was no discernable impact on the Colorado crime rate. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| The Montana legislature placed a cap on its prison population in 1993, in part, by decreasing the amount of time served by its prison inmates. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

7

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| The researchers examined inmates who received accelerated good time credits, those sentenced to community based parole programs, and those who received a regular parole date. The recidivism rates of these offenders were roughly the same as historical Montana recidivism rates. During the period of the prison cap, the crime rate in Montana showed a modest decline. | Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| A Texas study examined a sample of 2,072 prisoners released from the Texas Department of Corrections in 1983. Approximately 29% of these cases were Early Mandatory Releases-inmates selected for release up to 180 days prior to their regular release dates. The researchers found that the return rate to prison was similar for | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG
AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| the early release cases compared to others that were released on their regular sentence dates. It was also noted that in 1983, when mandatory release was fully operating, Texas saw the largest drop in 20 years in its state crime rate. | | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact.  Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| Two studies from Wisconsin followed 1,886 inmates who received mandatory releases after being rejected for parole and another cohort of 892 inmates who were subject to Special Action Release to reduce crowding. In both studies, there was no evidence that releasing selected inmates had any negative effects on recidivism or general public safety. During the course of these programs, the crime rate in Wisconsin declined by over 5% from 1984 to 1988. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is |

- 9 -

| | Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|---|
| 1–15 | | | based, it does not preclude disclosure to a judge sitting as a finder of fact.  Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| 16–28 | With a grant from the National Institute of Justice, the NCCD conducted research on the early release program of the Illinois Department of Corrections (IDOC) that operated from 1980 to 1981. Early releases of up to 90 days were ordered by Governor James Thompson to prevent violence in Illinois's crowded prisons. By 1983, these releases had reduced the average daily population of IDOC by roughly 2,500 inmates. The NCCD study showed that the prisoners who were released early actually had a lower recidivism rate than those released after serving their full terms. Inmates were selected for early releases that were closest to their regular release dates.  Wardens were asked to flag cases in which | Mischaracterizes the evidence.  Hearsay. Fed. R. Evid. 802, 805. Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Speculation. Relevance. | Dr. Krisberg performed this study.  He therefore has percipient knowledge of it.  His summary does not mischaracterize the study. |

- 10 -

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| the inmates had presented significant problems while incarcerated. It might be that the early release population possessed a slightly lower risk of re-offending than the group that served their full terms, but the selection of inmates for release process was really driven by how soon inmates would be released anyway. | | |
| Illinois's crime rate declined during the years of early release. In 1990 the Illinois Legislature modified the program and actually increased the number of days to 180 by which inmates' sentences could be reduced. The NCCD examined the cases of 4,640 inmates. The early releases had the same recidivism rates as the other released inmates. The later cohort of early-release inmates actually possess lower post-prison failure rates compared to the original group of inmates with accelerated discharges (their releases were advanced to180 days vs. 90 days). For both cohorts, the majority of subsequent crimes were for nonviolent misdemeanors. Crime rates continued to decline even as early releases were increased in Illinois. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | Dr. Krisberg performed this study.  He therefore has percipient knowledge of it.  His summary does not mischaracterize the study. |
| A Michigan Task Force on Jail and Prison Crowding found that the state's crime rate continued to trend downward from 1991 to 2004. The crime drop in Michigan closely paralleled the national decline in crime during this same period. This was a period in which the Governor had capped the prison population and the county jails were advancing | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Relevance. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) |

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| the release of many inmates. | | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| Under court pressures, Florida employed house arrest and intensive supervision for offenders who were otherwise bound for state prisons. Inmates usually served short prison stays of roughly 90 days and then were released to intensive community supervision. With funding from the National Institute of Justice, the NCCD studied 630 offenders in this program, known as Community Control. During an 18-month follow-up period, the offenders in the Community Control Program had a lower rate of recidivism than similar | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | Dr. Krisberg oversaw this study. He has direct, percipient knowledge of it. |

- 12 -

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| offenders who served prison terms or approximately 9 months. A larger study of Community Control was conducted by the Florida Office of Inspector General. This analysis found that the majority of released prisoners that returned to prison or jail did so because they violated conditions of supervision and not because of new crimes. As with the other jurisdictions mentioned above, Florida's crime rate declined during the period when Community Control was operating. | | |
| Research on early parole of jail inmates in Philadelphia showed that adding in community-based drug treatment services increased the proportion of successes among the early released inmates from 66% to 78%. Those who actually completed the drug treatment programs had twice the success rate of those with less than 6 months in treatment. This study showed that while early paroled jail inmates had relatively low recidivism rates, the addition of drug treatment could substantially improve their post-release success rates. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. Relevance. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| | | effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| Finally, I found in my March 11, 2007 literature review several studies of offenders who received accelerated parole from Canadian prisons in the mid 1990s. Studies of both men and women prisoners who received early parole showed that they had relatively low post-release failure rates. These offenders did better than comparable inmates who served their full terms, and their subsequent offenses were primarily violations of parole conditions, minor crimes, and overwhelmingly nonviolent offenses. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay.  Fed. R. Evid. 802, 805. Relevance. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact.  Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies |

- 14 -

| | Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|---|
| | | | outweighs any possible prejudicial effect. |
| | Others involved in California corrections concur with my opinion. For example, Matthew Cate, the current director of CDCR, testified that corrections experts have indicated that "if done properly," one can reduce the prison population "without negatively impacting crime rates in society."' Loren Buddress, Chief Probation Officer for San Mateo County, believes that, given funding to provide appropriate services, "a controlled release of inmates from state prison would not negatively impact public safety."  According to Sonoma County Sheriff William Cogbill, putting programs in place would reduce recidivism, and if provided with sufficient funding for programs in conjunction with a prisoner release order, Sonoma County "could mitigate those impacts to public safety to the degree that it wasn't an issue." | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. | An expert may base his opinions on testimony given in connection with the action.  Fed. R. Evid. 703, Adv. Comm. Notes. Admissions of party opponents are not hearsay.  Fed. R. Evid. 801(d)(2). |
| | Early release of jail inmates in California has not had an adverse effect on crime rates | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. | The objection is nonsensical.  This statement is not the basis of an opinion.  It is the opinion.  The foundation for the opinion is provided earlier in the report. |
| | Subpart A 2. There has been extensive use of early release and diversion in California counties in response to court orders to reduce jail overcrowding. Although these practices have not been subject to the rigorous and in-depth research | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay.  Fed. R. | Dr. Krisberg makes clear in the next sentence of the report that he examined Board of Corrections data, on which this opinion is based.  Later, he makes clear that he examined |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| that I have described above, the aggregate data supports the position that early release done properly does not weaken public safety. | Evid. 802, 805. | the intervenor defendants' interrogatory responses. Fed. R. Evid. 703 permits reliance on governmental statistics. |
| I examined data from the Board of Corrections on the extent of releases of jail inmates in California counties due to court orders to manage crowding, and analyzed this data in relations to changes in the crime rates of these counties. For crime rates, I used the FBI's Uniform Crime Reports and looked at the most serious crimes that most criminologists use to examine crime trends and to compare jurisdictions. These offenses include homicide, aggravated assault, forcible rape, robbery, burglary, grand larceny, auto theft, and arson. The FBI uses these offenses as an index of crime because they are the most serious offenses, and these crimes have a high probability of being reported by citizens to the police. I will refer to time offenses throughout my report as "serious crimes." Although data on reports for misdemeanors and less serious offenses are less consistently available for all California counties, I examined 10-year trend data from the California Department of Justice on arrests for misdemeanors. From 1997- 2006 the California Department of Justice reported that statewide misdemeanor arrests declined from 1,013,196 to 939,046 -a reduction of 9%. The rate per 100,000 of misdemeanor arrests dropped from | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. | Dr. Krisberg makes clear that he personally examined Board of Corrections data, on which this opinion is based. Fed. R. Evid. 703 permits reliance on governmental statistics. There is no missing foundation, and the governmental statistics and interrogatory responses admissible in their own right.. |

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| 4,011 to 3,260 -a reduction of 18%. | | |
| I examined data on individual California counties in releases and the number of crimes, the five-year trends, and the more recent two-year trends. From 1996 to 2006, using 21 counties for which there was complete data, over 1.7 million jail inmates were released due to overcrowding.  These were jail inmates that the counties reported to the Board of Corrections (now known as the Corrections Standards Authority) that they had released either via diversion or shorter sentences pursuant to a court order to limit the capacity of their jails. In this same period, the number of serious crimes reported dropped by 18%. During the five years from 2001 to 2006, there were 764,277 inmates released from 22 counties.  The number of reported crimes was largely unchanged in these locales. During the most recent three-year period for which complete data are available (2004-2006), there were 416,767 inmates released in 24 counties due to court orders, but the number of reported crimes declined by 7%in these same counties. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay.  Fed. R. Evid. 802, 805. | Dr. Krisberg makes clear that he personally examined Board of Corrections data, on which this opinion is based.  In addition, he examined the defendant-intervenors' interrogatory responses.  Fed. R. Evid. 703 permits reliance on governmental statistics. There is no missing foundation, and the governmental statistics and interrogatory responses admissible in their own right. |
| I also analyzed the trends in individual counties but this showed no consistent relation between the volume of jail release due to court ordered population caps and changes in reported crimes across the counties. For example, from 2002-2004, 13 counties (Amador, Calaveras, Fresno, Humboldt, Inyo, Los Angeles, Orange, Placer, San Mateo, Santa Barbara, Shasta, | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. | Dr. Krisberg makes clear that he personally examined Board of Corrections data, on which this opinion is based.  In addition, he examined the defendant-intervenors' interrogatory responses.  Fed. R. Evid. 703 permits reliance on |

- 17 -

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| Ventura, and Yolo) had an increase in capacity-based releases and a decrease in crime. Another 8 counties (Butte, El Dorado, San Diego Merced, San Benito, Stanislaus, Tehama and Tuolumne) had a decrease in releases and a decrease in crime. Only 3 counties (Kern, San Joaquin, and Solano) experienced a rise in both releases and crime. | | governmental statistics. There is no missing foundation, and the governmental statistics and interrogatory responses admissible in their own right. |
| I looked at patterns in tile largest counties (Los Angeles, Orange, and San Diego) as well as a number of mid-sized or smaller counties. Here again, no consistent pattern linked changes in crime with increases or decreases in jail releases due to court orders. Put simply, the accelerated release of jail inmates neither lowers the crime rate nor increases it. This finding is entirely consistent with the studies that I reviewed earlier in this report. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | Dr. Krisberg makes clear that he personally examined Board of Corrections data, on which this opinion is based. In addition, he examined the defendant-intervenors' interrogatory responses. Fed. R. Evid. 703 permits reliance on governmental statistics. There is no missing foundation, and the governmental statistics and interrogatory responses admissible in their own right. |
| At the local level, testimony from corrections professionals supports the inference, drawn from the statistics discussed above, that early releases from local jails have not adversely impacted public safety. San Diego County has implemented a variety of diversion and early release programs to control the population in its county jails. William Ingrassia, Commander of the Detention Bureau for San Diego County, was unaware of any specific detriment to public safety | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. | This portion of Dr. Krisberg's opinion appropriately relies on the deposition testimony of witnesses in this action. |

- 18 -

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG
AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| caused by these programs. Sonoma County likewise functions under a population cap. Sheriff Cogdill was unaware of any particular crimes that were committed by inmates who were released early. | | |
| Studies show that if early releases are accompanied by resources for evidence-based programs for this population, there will be a positive effect on public safety. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| <u>Subpart B Studies Show</u> <u>Page 11</u> There is a significant population of people who are safer to society if provided appropriate programs in their communities rather than being warehoused ill overcrowded, violent prisons. We can generally identify | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| | Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|---|
| 3–26 | these inmates who pose a very low risk of recidivism, given proven risk classification tools. Further, there are well-tested assessment tools that can identify and prioritize the treatment needs for individual prisoners. There is a growing body of research identifying program interventions such as Cognitive Behavioral therapy and Therapeutic Communities that produce measurable progress for inmates with various treatment needs. We can identify the programs, given numerous studies with concrete data showing the positive effects on recidivism rates. It is also common sense. A low risk offender will have a better chance of succeeding in the community and becoming a productive member of society if they are enrolled in substance abuse programs or job training programs in the community. Compare this plan to the same convict sitting idle on a tripled bunk in an overcrowded, violent gym with minimal yard time and no work or educational opportunities, consorting with more sophisticated criminals or prison gangs. The CDCR's Expert Panel on Adult Offender Recidivism Reduction Programs (2007) gave numerous examples from states such as Pennsylvania, Ohio and Arizona that are initiating significant programs in matching appropriate services to offenders as a method of reducing future criminology. | | to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| 27–28 | Subpart C<br>Page 12<br>The critics of early release make | Inappropriate basis for opinion. Fed. R. Evid. 703. | These boilerplate objections do not make sense in light of the |

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| faulty assumptions about the relationship between correctional practices and public safety. | Lack of foundation. Assumes facts not in evidence. Speculation. | language in the report to which the objection is being made.  To the extent defendants are challenging Dr. Krisberg's qualifications, the objections are unfounded. |
| Arguments against accelerated release generally ignore several key facts. First, it is important that virtually every inmate selected for early release under the programs suggested by Dr. Austin in his expert reports and used in California counties under population caps will be released soon anyway. Most accelerated release programs will shorten the prison stays of inmates by six months or less. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay.  Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| As the President of John Jay College, Jeremy Travis has reminded us in his book, But They All Come Back death death row inmates and prisoners with life sentences eventually return to the community. Although it is true that | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does |

21

| | Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|---|
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | some released inmates will re-offend, being released several months sooner is not likely to have an impact on that fact. A National Research Council report released in 2007, reviewed studies oil the correlates of prisoners who recidivate and suggested that post-release opportunities including employment housing, and positive family supports can reduce these failure rates.  So data on the current recidivism rates of California Inmates are not especially relevant to evaluating early release. Further, respected psychologist such as Professor Craig Haney of the University of California, Santa Cruz have argued that prisons actually debilitate inmates, increasing their mental health problems and diminishing their abilities to function in the free world. This means that longer prison stays may actually increase recidivism rates. Data from<br><br>CDCR reviewed by Dr. James Austin suggests that the longer the time served the higher the post-release failure rates. | Hearsay.   Fed. R. Evid. 802, 805. | not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | Second, there is growing evidence that careful selection inmates for early release can improve the programs outcomes if there are focused efforts to match inmate's needs to services in the community. Well designed and implemented programs can actually lower prison populations and advance public safety. The Pew Trusts has recently issued reports illustrating examples of this win-win situation. There are several highly effective risk and needs | Inappropriate basis for opinion.  Fed. R. Evid. 703.<br>Lack of foundation.<br>Assumes facts not in evidence.<br>Speculation.<br>Hearsay.  Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence |

- 22 -

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| assessment systems that are available. For example, the NCCD approach known as Correctional Management Classification (CMC) has shows its ability to assist in the community supervision of released offenders in states such as Florida, Wisconsin, and South Carolina. Offenders who were supervised by parole or probation staff trained in CMC had much lower rates of failure than other parolees. There are several valid assessment tools available to CDCR to effectively screen out the high risk inmates and permit better community supervision. | | may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| There is solid evidence that effective services in the period right after discharge can substantially cut down on recidivism. The CDCR's own Expert Panel on Adult Offender Recidivism Reduction Program offers a blueprint designed by nationally known corrections leaders and researchers that is based on the best available research. Further, a recent report of the National Research Council on Parole, Desistence from Crime, and Community Integration (2007) offers the best evidence-based models for cutting down on post-release crime. The Urban Institute, the Council of State Governments, and the National Institute of Corrections all have tremendous resource materials on properly managing the prison reentry process. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies |

| | Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|---|
| | | | outweighs any possible prejudicial effect. |
| | All of these authoritative sources have shown that the provision of transitional housing, access to health care and mental health services, drug treatment, and vocational services can ease the re-entry process and reduce subsequent criminality. It is recommended that planning for re-entry services occur early in the incarceration period and that offenders leave prison with specific reentry plans. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| | The critics of early release exploit the image of inmates being randomly dumped into communities without reentry planning or effective services. If early release is accompanied by funding for proven reentry services, it would be a safe and effective population reduction strategy, tile cost of which is far less than building and operating more prison and jail beds. Further community based reentry programs can be up and running far more quickly. Critics have argued that such services do not presently exist in sufficient quantity at the local level, but there is no logical reason why this community capacity could not be | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| expanded with appropriate state funding and commitment. | | outweighs the prejudicial effect of the evidence. |
| Several counties such as Alameda, San Diego, Santa Barbara, Sail Mateo, and San Francisco have built sophisticated reentry strategies that merge county and state resources and involve both public and private agencies. These counties offer a range of ideas on how the CDCR could safely manage the early release of inmates. Many of these efforts are currently being researched, but the preliminary reports from the localities have been promising. Most important, these local efforts illustrate communities have stepped up to better respond to the needs of released inmates. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay.  Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact.  Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |
| Santa Barbara County worked with the NCCD to plan and design a community collaboration to assist released inmates from state prisons and the county jail. Funded initially by local philanthropist and the Gerbode Foundation, this program includes a consortium of non-profit organizations and public agencies such as the Santa Barbara Recovery Center. The program staff contact selected low risk inmates in advance of their release (usually 90 days) and begin joint planning wit11 | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence |

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| tile offender about the needed services when the person returns to Santa Barbara County of law enforcement leadership including<br><br>the Sheriff, the District Attorney, and the Police Chiefs from all major cities involved in the program. The Santa Barbara team works closely y with the CDCR Parole Division and was recently funded by CDCR to build and operate a local reentry center that will serve both state and local inmates. | | may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| San Mateo County asked the NCCD lo assist a multi-agency task force to help the County strengthen its re-entry services. This task force was chaired by the Chair of the County Board of Supervisors and included all pertinent county agencies and community-based groups. The initial planning was partially supported by a grant to NCCD from the San Francisco Foundation. Now the services are part of the regular county budget. San Mateo County chose to dedicate a full time probation officer to assist in reentry planning. The County is attempting to link its rehabilitation programs in the jail to Project Bridge that connects released offenders to similar services in the community. The County is also doing a careful assessment o f existing substance abuse service to plugs any gaps in these services. | Inappropriate basis for opinion. Fed. R. Evid. 703.<br>Lack of foundation.<br>Assumes facts not in evidence.<br>Speculation.<br>Hearsay. | This opinion is based on percipient observation. |
| San Diego County has received substance abuse and foundation funding to strengthen its local prison reentry services. The San Diego | Inappropriate basis for opinion. Fed. R. Evid. 703.<br>Lack of foundation. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG
AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| effort is primarily focused on getting released inmates into jobs. There are also a range of supportive services including counseling, health care and housing. | Assumes facts not in evidence. Speculation. Hearsay. | evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact.  Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| San Francisco has formed an ongoing multi-agency Reentry Council under the leadership of Mayor Gavin Newsome and the Board of Supervisors. The Reentry Council, which has dedicated staffing, also includes the DA, the Sheriff, the Superior Court and the Probation Department.  Many community agencies and organizations of formerly incarcerated persons meet monthly to plan new services and to ensure that existing programs for released jail inmates are well-coordinated. The SF Reentry Council has been working hard to reduce barriers to employment for low risk offenders and the Council has paid particular attention to diverting low level offenders  from jail sentences. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay.  Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies |

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| | | outweighs any possible prejudicial effect. |
| Besides the reentry programs that I have briefly described above, there are many county jail systems in California that have responded to court-imposed inmate releases have employed abroad range of programs as safe alternatives to total confinement. Attachment C illustrates the extent of court-imposed releases and lists the sorts of programmatic alternatives that have been enjoyed.  In the interrogatories gathered from most of the intervenor counties offer detailed policy and procedures being used in these counties for home electronic monitoring, work programs, county parole, or work furlough programs, weekend work programs, house arrest, day reporting programs, and drug treatment placements, to name a few existing alternatives. There is also information from the counties about inmate classification systems that are being used to identify the lower-risk inmates for these alternative programs. A recent report by the Chief Probation Officers of California (2007) entitled, Adult Services Plan: Serving 18-25 year olds -contains a range of excellent programs that California probation leadership assert would allow them to divert many offenders from state prison, if funded appropriately. Third some skeptics of early release also suggest that modest reductions in sentences will have a significant impact on the deterrent value of the penal system. | Inappropriate basis for opinion.  Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Hearsay.  Fed. R. Evid. 802, 805. | It is unclear how these boilerplate objections can apply to this portion of Dr. Krisberg's report. He is presenting a summary of information provided by defendant intervenors in this litigation, which are admissible in their own right.  An expert may on the discovery responses of a party in forming his opinion. |

- 28 -

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| The research on deterrence by Franklin Zimring and Gordon Hawkins suggests that it is the timely application of penalties, rather than their severity that exerts a real deterrent effect. There is no reliable scientific evidence that minor reductions in time served compromise the deterrent value of the penal system. | | |
| Reviewing CDCR data reported in California Prisoners and Parolees reveals that between 1975 and 2007, the median time served for prisoners who were committed for property crimes and many drug offenses actually went down. The corresponding median time served for violent offenders and serious sex offenders went up during that same time period. But, the state witnessed a drop in crime for both violent and nonviolent offenses. The largest crime decline was for burglary. (California Department of Justice 2007, Crime in California, Sacramento, California, 2008.) | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| The extent of time reductions for good behavior for nonviolent offenders has been changed repeatedly. Tile Legislature has changed the criteria for prison commitments versus sentences to county, jails. However, there is no empirical research showing a clear relationship between these sentencing changes and crime rates, especially for the property offenders and minor offenders who | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. Hearsay. Fed. R. Evid. 802, 805. | It is unclear how these boilerplate objections apply to this portion of Dr. Krisberg's report. To the extent that defendants are objecting on foundational grounds, the foundation has been laid earlier in his report. |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| would be subject to early release orders. The notion that modest early release will embolden potential offenders is more an "urban legend" than an established fact. Sentences and time served have varied over time, and they vary across jurisdictions. Current penalties are based on political decisions of state officials, not on the science of penology. | | |
| Subpart D, page 18. Defendants' expert Marquart makes significant errors in his report. I fully agree with Dr. Austin's criticisms of Dr. Marquarts' report, contained in pages five through eight of Dr. Austin's report. | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Hearsay. Fed. R. Evid. 802, 805. | Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs the prejudicial effect of the evidence. |
| Concluding Observations There are a variety of methods through which the CDCR could provide some relief for its severe crowding crisis. These approach encompass programs and policies that either divert offenders from admission or re-admission to CDCR or those measures that would modestly reduce the time | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. Speculation. | It is unclear how these boilerplate objections apply to this portion of Dr. Krisberg's report. To the extent that defendants are objecting on foundational grounds, the foundation has been laid earlier in his report. |

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| served for non-violent and non-dangerous offenders. Both strategies have been safely and successfully employed in a number of other states and in California over the past 25 years. Moreover many California counties faced with severe crowding and court-mandated capacity limits have successfully diverted or accelerated the releases over 1.7 million jail inmates over the past 10 years. Crime rates went down during that same time frame. | | |
| Prison and jail population and recidivism reduction programs can be successful in relieving population pressures and keeping the public safe if they include (1) effective screening through validated risk and needs assessment tools; and (2) the provision of services in the community including transitional housing, mental health and health care, and substance abuse counseling. Under these circumstances the recidivism rates of diverted or released offenders is often lower than for those who complete their regular terms. But, it must be added that the best research does not show public safety problems that have been created by early release programs, even if the community treatment or supervision resources are not increased. | Lack of foundation. Assumes facts not in evidence. Speculation. | It is unclear how these boilerplate objections apply to this portion of Dr. Krisberg's report. To the extent that defendants are objecting on foundational grounds, the foundation has been laid earlier in his report. |
| The current recidivism rates of released CDCR prisoners are quite high. Further, there is ample evidence that the level of crowding has contributed to a high level of | Inappropriate basis for opinion. Fed. R. Evid. 703. Lack of foundation. Assumes facts not in evidence. | It is unclear how these boilerplate objections apply to this portion of Dr. Krisberg's report. To the extent that defendants are objecting |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG
AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

1670883.3

31

| | Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|---|
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | violence within CDCR's institutions. Both inmates and staff have been victims of this prison violence. Moreover, the present inadequate system of prison mental health care and the idleness of many inmates make it more likely that these recidivism rates will remain high. Thus, the status quo that is made worse by severe crowding is threatening to community safety. A better managed and designed penal system could help California reduce risks to the public. | Speculation. Hearsay. Fed. R. Evid. 802, 805. | on foundational grounds, the foundation has been laid earlier in his report. |
| 11 | Attachment A, CV | No objection | |
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | Attachment B, Review of Literature re. Effect of Early Release on Public Safety | Inappropriate basis for opinion. Fed. R. Evid. 703.<br>Lack of foundation. Assumes facts not in evidence. Hearsay. Fed. R. Evid. 802, 805. | Fed. R. Evid. 703 permits an expert to express opinions based upon information made known to him before trial through a means other than the expert's own percipient observation (i.e., through reports, studies, literature, etc.) Although Fed. R. Evid. 703 restricts disclosure to a **jury** of hearsay and other inadmissible evidence upon which the expert's opinion is based, it does not preclude disclosure to a judge sitting as a finder of fact. Furthermore, even if the case is being presented to a jury, the inadmissible evidence may be presented to the jury if the court finds that the probative value in assisting the jury to evaluate the expert's opinion substantially |

DEFS.' TRIAL OBJECTIONS EXPERT REPORT OF BARRY KRISBERG AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

1670883.3

| Statement | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| | | outweighs the prejudicial effect of the evidence. That is the case in this instance, where the probative value of the contents of the detailed, peer reviewed studies outweighs any possible prejudicial effect. |

DATED:  November 25, 2008          HANSON BRIDGETT LLP


By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED:  November 25, 2008          EDMUND G. BROWN JR.
Attorney General of the State of California


By: /s/ Kyle A. Lewis
KYLE LEWIS
Deputy Attorney General
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED: November __, 2008          ROSEN BIEN & GAVLAN


By: /s/ Michael Bien
MICHAEL BIEN
Attorneys for *Coleman* Plaintiffs

DATED: November __, 2008          PRISON LAW OFFICE


By: /s/ Donald Specter
DONALD SPECTER
Attorneys for *Plata* Plaintiffs

- 33 -

**DECLARATION OF SERVICE BY OVERNIGHT COURIER & DOJ MESSENGER**

Case Name:    **Three-Judge Panel Proceeding Pursuant to 28 U.S.C. § 2284**
   **Coleman, et al. v. Schwarzenegger, et al.**
   **USDC, Eastern District of California, Case No. 2:90-cv-00520 LKK JFM**
   **Plata, et al. v. Schwarzenegger, et al.**
   **USDC, Northern District of California, Case No. C-01-1351 TEH**

No.:  **C 90-0520 LKK / C 01-01351 TEH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is: 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004.

On <u>December 2, 2008</u>, I served the attached

**DEFENDANTS' TRIAL OBJECTIONS TO EXPERT REPORT OF BARRY KRISBERG
AND PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS**

by placing a true copy thereof enclosed in a sealed envelope with the **OnTrac Overnight** courier service, addressed as follows:

**Honorable Stephen Reinhardt**          **Honorable Thelton E. Henderson**
**United States Courthouse**             **United States Courthouse**
**450 Golden Gate Avenue, Room 19-5398** **450 Golden Gate Avenue**
**San Francisco, CA 94102**              **San Francisco, CA 94102**
*via DOJ Messenger*                      *via DOJ Messenger*

**Honorable Lawrence K. Karlton**
**Robert T. Matsui**
**United States Courthouse**
**501 I Street**
**Sacramento, CA 95814**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 2, 2008, at San Francisco, California.

| T. Oakes | */s/ T. Oakes* |
|---|---|
| Declarant | Signature |

POS 3 judge.wpd