1  PRISON LAW OFFICE
   DONALD SPECTER, Bar No. 83925
2  STEVEN FAMA, Bar No. 99641
   ALISON HARDY, Bar No. 135966
3  SARA NORMAN, Bar No. 189536
   REBEKAH EVENSON, Bar No. 207825
4  1917 Fifth Street
   Berkeley, CA  94710
5  Telephone:  (510) 280-2621

6  KIRKPATRICK & LOCKHART PRESTON
   GATES ELLIS LLP
7  JEFFREY L. BORNSTEIN, Bar No. 99358
   EDWARD P. SANGSTER, Bar No. 121041
8  RAYMOND E. LOUGHREY, Bar No. 194363
   55 Second Street, Suite 1700
9  San Francisco, CA  94105-3493
   Telephone:  (415) 882-8200

10
   THE LEGAL AID SOCIETY –
11 EMPLOYMENT LAW CENTER
   CLAUDIA CENTER, Bar No. 158255
12 600 Harrison Street, Suite 120
   San Francisco, CA  94107
13 Telephone:  (415) 864-8848

14 Attorneys for Plaintiffs

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LORI RIFKIN, Bar No. 244081
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

15         IN THE UNITED STATES DISTRICT COURTS

16         FOR THE EASTERN DISTRICT OF CALIFORNIA
           AND THE NORTHERN DISTRICT OF CALIFORNIA

17         UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

18         PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

19 RALPH COLEMAN, et al.,                    ) No.  Civ S 90-0520 LKK-JFM P
                                             ) **THREE-JUDGE COURT**
20            Plaintiffs,                     )
           vs.                               )
21                                           )
   ARNOLD SCHWARZENEGGER, et al.,            )
22                                           )
              Defendants                     )
23                                           )
                                             )
24 MARCIANO PLATA ,et al.,                   ) No. C01-1351 TEH
                                             ) **THREE-JUDGE COURT**
25            Plaintiffs,                     ) **HARDY DECLARATION IN SUPPORT OF**
           vs.                               ) **PLAINTIFFS' MOTION TO STRIKE**
26                                           ) **PORTIONS OF MARQUART EXPERT**
   ARNOLD SCHWARZENEGGER, et al.,            ) **REPORTS**
27                                           )
              Defendants                     )
28

[219945-1]

1    I, Alison Hardy, declare as follows:

2        1.    I am an attorney admitted to practice in this state and before this Court.  I am a

3    staff attorney at the Prison Law Office, and one of the attorneys for the plaintiff class in this

4    action.

5        2.    Attached hereto as **Exhibit A** is a true and correct copy of pages 6-12 of the

6    August 15, 2008 expert report submitted by defendants' expert, James Marquart.

7        3.    Attached hereto as **Exhibit B** is a true and correct copy of page 1 of James

8
9    Marquart's August 27, 2008 Rebuttal Report.

10       4.    Attached hereto as **Exhibit C** is a true and correct copy of the Defendants'

11   Motion to Strike, December 1, 2008 (*Plata* Docket No. 1865).

12       I declare under penalty of perjury that the foregoing is true and correct, and that this

13   declaration is executed this fourth day of December, 2008 in Berkeley, California.

14
15
                                    __/s/ *Alison Hardy*
16                                  Alison Hardy

17
18
19
20
21
22
23
24
25
26
27
28

HARDY DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE PORTIONS OF MARQUART EXPERT REPORTS, NOS.: CIV S
90-0520 LKK-JFM, C01-1351 TEH

[219945-1]

EXHIBIT A

# Preliminary Expert Report from

# Dr. James Marquart, Ph.D

# I.    Introduction

### 1.   Professional Background

I am currently a Professor of Criminology and serve as the Chair of the Criminology and Sociology Program at the University of Texas—Dallas. I have been Chair since 2005. Prior to this appointment, I was a Professor of Criminal Justice at Sam Houston State University from 1986-2005. I have taught graduate and undergraduate courses on research methods, crime and public policy, social problems, corrections, and criminal justice. I have published over forty refereed journal articles, written (and co-authored) seven books and engaged in over $1 million in funded research activity.

My interest in prisons stems from my employment as a security officer for the Texas prison system (1981-1983) at the Eastham Unit, a large facility for multiple recidivists, malcontents, and escape risks. I was employed at Eastham during a period of overcrowding wherein many offenders were triple-celled and additional space for 400 offenders was created through construction of a tent compound, an area that succumbed to a riot. I have witnessed crowding on a personal level.

In 1997-1998, I was awarded a Leverhulme Visiting Professorship, Queen Mary and Westfield College (University of London), Faculty of Laws, London, England, where I toured a number of British prisons, especially high security prisons that housed members of the Irish Republican Army, organized criminal groups, and major drug and weapons importers. Last year, 2007-2008, I was an Academic Fellow, Foundation for Defense of Democracies, and toured an Israeli prison that housed members of such terrorist organizations as Hamas and Hezbollah. In 2005, I was awarded the Bruce Smith Senior Award by the Academy of Criminal Justice Sciences. Most recently I was elected 2nd Vice president of the Academy of Criminal Justice Sciences, and will be President of this national-level organization in 2010.

1

I started my academic career in 1983, and have developed a research agenda around prison organizations. My research has examined the inmate culture, guard culture, prison violence, prison gangs, and the consequences of judicial intervention on prison systems. I am specifically interested in the aftermath or consequences of policy implementation on prison organizations and society. I have examined the consequences of the commutation of death row offenders resulting from the *Furman v. Georgia* case in 1972 as well the California death row offenders impacted by the *People v. Anderson* case.[1] I also tracked the behavior of former Texas death row prisoners in the post-1976 era.[2] I have testified in over 20 death penalty trials, and have rendered my expertise on future dangerousness in one federal death penalty trial. I have not testified in a death penalty trial in four years. I am at this time, though, assisting in one Texas capital proceeding. I have also examined the consequences of judicial reform on the Texas prison system as well as the desegregation of the Texas prison system. Papers, books, and published articles from my research are listed on my professional vita.

My current research (with several colleagues from Sam Houston State University, the University of North Texas, and the University of Texas-Arlington) agenda involves an analysis of sexual assaults in the Texas prison system based survey or questionnaire data from over 1000 male and female offenders. I am also conducting an analysis (with several colleagues from UTD) of foreign born offenders/prisoners in Texas prisons as well as those offenders slated for deportation.

I have relied upon my education, training, knowledge, and experience in the field of Criminology and Corrections in forming the basis for my opinions. I have attached my professional vita for your review. Moreover, I am working with Professor Chad Trulson (University of North Texas) and the California Department of Corrections and Rehabilitation (CDCR) as a consultant or expert in the *Johnson v. California*, a United States Supreme Court case involving in-cell integration. I and Professor Chad Trulson

---

[1] Furman v. Georgia, 408 U.S. 238 (1972), and People v Anderson, 493 P.2d 880, 6 Cal. 3d 628 (Cal. 1972).

[2] Marquart, James W., Sheldon Ekland-Olson, and Jonathan R. Sorensen. 1989. "Gazing into the Crystal Ball: Can Jurors Accurately Predict Dangerousness in Capital Cases?" *Law and Society Review.* 23 (3): 449-468.

2

assisted the CDCR with staff training involving the implementation of an automated inmate disciplinary form to track inmate-inmate and inmate-staff assaults, both intra and inter-racial. The form will enable researchers to examine inter and intra racial assaults over time as implementation of the in-cell integration plan proceeds. In the summer of 2006, I toured several California facilities (California Institution for Men, Wasco, North Kern, and San Quentin) to observe offender intake and classification procedures. I also personally talked to dozens of correctional officers and new prisoners at each facility to obtain their perspective on in-cell integration. My work in the California prison system is based on nearly two decades of similar analysis of in-cell racial integration in the Texas prison system.

The information relied upon and the methodology utilized in arriving at the enclosed opinions is generally accepted in my field and are the type that experts in the field would reasonably rely upon. Please refer to the case specific report attached hereto. I reserve the right to amend or supplement this disclosure and the opinions contained herein should additional information become available or with any testimony or statement I may provide, including by deposition.

## 2. Retained by Defendants

I was retained by the California Attorney General's Office to be an expert in these proceedings in July 2008 and have reviewed numerous documents, reports, and depositions pertaining to the *Coleman* and *Plata* proceedings. I have been asked to render opinions (1) relating to plaintiff's assertions that overcrowding leads to violence; (2) provide an opinion on whether defendant's current methods (such as construction plans, parole reform, out of state transfer) are "least intrusive" instead of a general prison release order; (3) examine any proposed prison release order by plaintiffs, and (4) examine whether a prison release order will have an adverse effect on public safety and the health and safety of released inmates. My fee is $200 per hour for activity and work related to these cases.

3

### 3. Expert Opinions

Based on my review of documents supplied to me to date, the California prison system is by far the largest and perhaps most complex penal organization in the United States. With an annual budget of nearly $10 billion, the California Department of Corrections and Rehabilitation (or CDCR) oversees or has the responsibility for 319,000 offenders, employs over 60,000 individuals; the annual cost per inmate is $35,587 and the annual cost per parolee is $4,338.[3] California correctional institutions confine roughly 170,000 offenders in roughly 35 institutions. Indeed, the size and scope of operations for this state agency is massive and few state agencies anywhere can "boast" about this complexity. Delivering services to so many offenders is a daunting task and takes a high degree of leadership and commitment from the staff. Indeed, the staff is to be commended for their efforts. The table below portrays the substantial growth of the CDCR between 1982 and 2006. Since 1982, the institutional population has increased five-fold, resulting in an incarceration rate of 461/100,000.[4]

---

[3] CDCR, Division and Boards, First Quarter 2008 Facts and Figures,
[4] California Prisoners & Parolees, 2006, Offender Information Services, Data Analysis Unit.

TABLE 6
INSTITUTION POPULATION
RATE PER 100,000 CALIFORNIA POPULATION
DECEMBER 31, 1982 THROUGH DECEMBER 31, 2006

| DECEMBER 31 | ESTIMATED CALIFORNIA POPULATION* | INSTITUTION POPULATION | RATE PER 100,000 CALIFORNIA POPULATION | ANNUAL CHANGE | |
|---|---|---|---|---|---|
| | | | | NUMBER | PERCENT |
| 1982 | 25,052,000 | 34,640 | 138.3 | 5,436 | 18.6 |
| 1983 | 25,555,000 | 39,373 | 154.1 | 4,733 | 13.7 |
| 1984 | 26,113,000 | 43,328 | 165.9 | 3,955 | 10.0 |
| 1985 | 26,742,000 | 50,111 | 187.4 | 6,783 | 15.7 |
| 1986 | 27,388,000 | 59,484 | 217.2 | 9,373 | 18.7 |
| 1987 | 28,061,000 | 66,975 | 238.7 | 7,491 | 12.6 |
| 1988 | 28,771,000 | 76,171 | 264.7 | 9,196 | 13.7 |
| 1989 | 29,558,000 | 87,297 | 295.3 | 11,126 | 14.6 |
| 1990 | 30,296,000 | 97,309 | 321.2 | 10,012 | 11.5 |
| 1991 | 30,812,000 | 101,808 | 330.4 | 4,499 | 4.6 |
| 1992 | 31,303,000 | 109,496 | 349.8 | 7,688 | 7.6 |
| 1993 | 31,661,000 | 119,951 | 378.9 | 10,455 | 9.5 |
| 1994 | 31,915,000 | 125,605 | 393.6 | 5,654 | 4.7 |
| 1995 | 32,223,000 | 135,133 | 419.4 | 9,528 | 7.6 |
| 1996 | 32,670,000 | 145,585 | 445.6 | 10,432 | 7.7 |
| 1997 | 33,226,000 | 155,276 | 467.3 | 9,711 | 6.7 |
| 1998 | 33,773,000 | 159,563 | 472.5 | 4,287 | 2.8 |
| 1999 | 34,336,000 | 160,687 | 468.0 | 1,124 | 0.7 |
| 2000 | 34,650,000 | 160,655 | 463.7 | -32 | 0.0 |
| 2001 | 35,230,000 | 157,142 | 446.0 | -3,513 | -2.2 |
| 2002 | 35,802,238 | 159,695 | 446.0 | 2,553 | 1.6 |
| 2003 | 36,363,502 | 161,785 | 444.9 | 2,090 | 1.3 |
| 2004 | 36,810,358 | 163,939 | 445.4 | 2,154 | 1.3 |
| 2005 | 36,854,224 | 168,035 | 455.9 | 4,096 | 2.4 |
| 2006 | 37,380,870 | 172,528 | 461.5 | 4,493 | 2.6 |

* The estimated California population is provided by the Department of Finance.

The obvious large increase in offenders over these twenty-four years has been driven by many variables, including increases in crime and convictions, and statutory changes. The reliance on incarceration has led to numerous "downstream" problems for the prison system, and perhaps the most important of which is overcrowding. The table below presents institutional data on population size, design bed capacity, and the rate of occupancy, and gives a context for which to understand the level of crowding in the

facilities.[5]  On the face of it, these data show that the prisons hold about twice as many prisoners as they were originally designed to hold.

| As of 6/30 | Institutional Population | Design Bed Capacity* | Rate of Occupancy** |
|---|---|---|---|
| 2000 | 154,014 | 79,873 | 192% |
| 2003 | 153,783 | 80,187 | 192% |
| 2006 | 166,547 | 83,370 | 199% |

* Design Bed Capacity= the number of inmates a facility was originally designed to house. (increases or decreases indicate beds lost/gained due to conversions, additions, or deactivations).
** Rate of Occupancy= population divided by number of design beds multiplied by 100, (166,547/83,370 x 100 = 199%).


A. Crowding

Concern for crowded cellblocks was voiced within a few years after the inception of the American penitentiary in the 1800s and has been a repeated concern for correctional managers and policymakers until today.  Courts in all regions of the country have addressed the crowding issue and judges in these cases have confronted two general sets of issues.  One is empirical, the other is considerably more value laden.  Value issues arise when deciding whether population densities involve the wanton infliction of pain, without penalogical justification.  In all likelihood, some levels of crowding, when combined with other conditions, policies and practices, would be universally condemned.[6]  In less extreme instances, decisions about what criteria to use varies across time, region, and correctional personnel and what constitutes crowding may also vary across time and jurisdiction.

Whatever the standard of constitutional decency, the empirical issue is whether there is a demonstrable connection between levels of population densities and the

---

[5] California Prisoners & Parolees, 2006, Offender Information Services, Data Analysis Unit data taken from Table 3.
[6] *Holt v. Sarver.* 442 F2d 304 (8th Cir. 1971).

6

# EXHIBIT B

# REBUTTAL REPORT

# OF JAMES MARQUART, PH.D

# Rebuttal Report of James W. Marquart, Ph.D.

August 27, 2008

1.    I am submitting this report to supplement my initial report submitted on August 15, 2008. I have not been deposed in this case, nor have I testified in court as an expert witness in this case.

2.    Since submission of my initial report I have reviewed various documents pertaining to these proceeding including

a.    Reports of J. Lehman, G. Bataille, D. W. Scott, J. Woodford, C. Haney, J. Gilligan, P. Stewart, and J. Austin;

b.    Reports prepared by experts retained by Santa Clara, San Mateo and Sonoma counties in California;

c.    The report "Development of the California Static Risk Assessment (CSRA), by Jesse Jannetta (UC Irvine 4/2/2008);

d.    The report "Do the Crime, Do the Time? Maybe Not, In California." Prepared by the California State Sheriff's Association, (6/2006);

e.    The report "Understanding California Corrections" by Dr. Joan Petersilia (5/2006).

3.    Since completing my initial report and reviewing the latter reports as well as other data and information contained on the CDCR's website, my opinion in these proceedings is as follows,

a.    A direct causal link between overcrowding and violence and other forms of detrimental human behavior has not been confirmed in the research literature.

1

EXHIBIT C

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DAVID S. CHANEY
Chief Assistant Attorney General
3 | ROCHELLE C. EAST
Senior Assistant Attorney General
4 | JONATHAN L. WOLFF
Senior Assistant Attorney General
5 | LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
6 | KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
7 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
8 | Telephone: (415) 703-5708
Facsimile:  (415) 703-5843
9 | lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov
10
| Attorneys for Defendants
11

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

12

## UNITED STATES DISTRICT COURT

13

## FOR THE EASTERN DISTRICT OF CALIFORNIA

14

## AND THE NORTHERN DISTRICT OF CALIFORNIA

15

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

16

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

17

18 | RALPH COLEMAN, et al.,

19 |                    Plaintiffs,
         v.

20 | ARNOLD SCHWARZENEGGER, et al.,

21 |                    Defendants.

No. 2:90-cv-00520 LKK JFM P

**THREE-JUDGE COURT**

22 | MARCIANO PLATA, et al.,

23 |                    Plaintiffs,
         v.

24 | ARNOLD SCHWARZENEGGER, et al.,

25 |                    Defendants.

No. C01-1351 TEH

**THREE-JUDGE COURT**

**DEFENDANTS' NOTICE OF MOTION
AND MOTION TO STRIKE PORTIONS OF
THE EXPERT REPORT OF DR. JAMES
AUSTIN**

26 | **To:  Three-Judge Panel**

27

28

- 1 -

1    TO PLAINTIFFS MARCIANO PLATA, et al., AND RALPH COLEMAN, et al., AND

2    THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE THAT Defendants Arnold Schwarzenegger, et al.

4    (Defendants) move this Three-Judge Panel to strike portions of the expert report of

5    Plaintiffs' expert, Dr. James Austin on the grounds that Dr. Austin discusses in his expert

6    report issues related to Phase I of this Three-Judge Panel proceeding but was not

7    offered as a witness in Phase I of this proceeding.  Defendants therefore move to strike

8    two portions of Dr. Austin's expert report that relate to Phase I.  This motion is based

9    upon this notice and accompanying motion, any papers Defendants submit in reply, and

10   any other matters properly submitted to this Court.

## I.    ARGUMENT

12       Plaintiffs' expert, Dr. James Austin, discusses in his expert report issues related to

13   Phase I of this Three-Judge Panel proceeding.  However, because Dr. Austin was not

14   offered as a witness in Phase I of this proceeding, Defendants now move to strike the

15   following portions of Dr. Austin's expert report that relate to Phase I:

16       Page 5, paragraph 15: "I have also been asked to render my opinion with respect

17   to whether overcrowding within the California Department of Corrections and

18   Rehabilitation (CDCR)  is the primary cause of the current unconstitutional conditions

19   experienced by members of the *Coleman* and *Plata* classes . . . "

20       Page 21, paragraph 53: "In my opinion, overcrowding within the California

21   Department of Corrections and Rehabilitation (CDCR) is the primary cause of the current

22   unconstitutional conditions experienced by members of the *Coleman* and *Plata* classes."

23       Because Dr. Austin was not offered by Plaintiffs as a Phase I witness, Defendants

24   respectfully request that the above two portions of Dr. Austin's expert report be stricken.

25   / / /

26   / / /

27

28

DEFS.' NOT. OF MOT. AND MOT. TO STRIKE
CASE NOS. 90-00520 LKK JFM; 0-1351 TEH

1679774.1

1

## II.    CONCLUSION

2    For the reasons stated above, Defendants respectfully request that this Court

3    strike the above two portions of Dr. Austin's report that discuss Phase I matters.

4    DATED:  December 1, 2008                  HANSON BRIDGETT LLP

5

6                                             By: /s/ Paul B. Mello
                                                  PAUL B. MELLO
7                                                 Attorneys for Defendants
                                                  Arnold Schwarzenegger, et al.
8

9    DATED:  December 1, 2008                  EDMUND G. BROWN JR.
                                               Attorney General of the State of California
10

11

12                                            By: /s/ Kyle A. Lewis
                                                  KYLE LEWIS
                                                  Deputy Attorney General
13                                                Attorneys for Defendants
                                                  Arnold Schwarzenegger, et al.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        - 3 -

DEFS.' NOT. OF MOT. AND MOT. TO STRIKE                              1679774.1
CASE NOS. 90-00520 LKK JFM; 0-1351 TEH