EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile: (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

# AND THE NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

# PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OBJECTIONS AND COUNTER DESIGNATIONS TO PLAINTIFFS' PHASE II DESIGNATIONS FOR ROBERT STORMS**<br><br>**To: Three-Judge Panel** |

**Deposition of Robert Storms, August 19, 2008**

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 12:15 - 12:25 | None | None |
| 14:10 - 15:9 | None | None |
| 15:10 - 18:13 | None | None |
| 23:10 - 23:23 | None | 22:25-23:9 |
| 25:8 - 26:7 | None | None |
| 41:3 - 44:17 | **Objections as noted in transcript - lack of foundation, personal knowledge, 42:8-43:16:**<br>Q.  Is that -- sorry to interrupt you.<br>    Is that last part important because the caseload of nonmentally ill sex offenders was burdensome to the POC?<br>    MR. ANTONEN:  Objection.<br>    To the extent you know, but it seems we're getting a little far afield.<br>    THE WITNESS:  It appeared to be a finding in the report from the Bureau of State Audits, as well as -- yeah, we do have high ratios of mentally ill parolees to our clinicians.<br>  BY MR. GALVAN:<br>    Q.  So, by removing the sex offender -- some of the sex offender load from POCs, did you increase the capacity of POCs to serve mentally ill parolees?<br>    MR. ANTONEN:  Objection.  I believe the testimony was the contract for sex offenders was in a different unit not handled by Mr. Storm's unit.<br>  BY MR. GALVAN:<br>    Q.  Was one of the purposes of getting that contract to relieve the -- to create more capacity in the POCs to serve mentally ill parolees?<br>    MR. ANTONEN:  Again, objection to foundation, as it's not inside Mr. Storm's purview in prerelease planning.<br>  BY MR. GALVAN:<br>    Q.  Can you answer the question?<br>    MR. ANTONEN:  To the extent you know, Robert.<br>    THE WITNESS:  All I can do is make an assumption that the contracted services for sex offenders was not primarily to reduce the case load for Parole Outpatient Clinic staff, but rather to provide necessary treatment in case management for the sex offender population. | 39:25-40:10 (in support of objections):<br>So, I want to switch to prerelease and the transitional case management program.  And I'd like to mark an Exhibit 4.<br>(Whereupon Plaintiffs' Exhibit 4 was marked for identification.)<br>  BY MR. GALVAN:<br>    Q.  This is on the Web site of the Bureau of State Audits -- their 2001 report.<br>    Do you recognize this, Mr. Storms?<br>    A.  Um, not real familiar with it. I glanced at it before.  I'm just really not familiar with it. |
| 45:10 - 47:1 | | |

| | DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|---|
| | 47:5 - 49:1 | None | None |
| | 52:4 - 54:4 | **Objections as noted in transcript - calls for speculation, 52:4-19:**<br>[Sic.] were" -- another acronym -- "OIS listed, but these offenders only account for 56.8 percent of eligible releases overall."<br>    Can you explain what problem that sentence is identifying with the Mental Health Services Continuum Program?<br>    MR. ANTONEN: Objection. The witness has testified he was not involved in the preparation of the report. Calls for speculation.<br>    MR. GALVAN: If you know.<br>    MR. ANTONEN: To the extent you know.<br>    THE WITNESS: It's my belief that this is -- the particular sentence that you read is referencing the identification of mentally ill inmates within 90 days to parole -- or, release from prison to parole, which is based on automated identification. | **51:23-52:3 (In support of Objection)**<br>Q. Turning to page 31 of Exhibit 7, which has the major heading, "Conclusions," if you take a moment to look at the first sentence of the conclusion that says: "The current evaluation has focused on the impact of the MHCP, Mental Health Service Continuum Program, on those inmates who … |
| | 54:6 - 55:3 | None | None |
| | 55:6 - 58:1 | **Objections as noted in transcript - vague; 56:25-58:1:**<br>Q. Okay.<br>    And when -- looking at the page that's Bates numbered 9, is the first page, with an Exhibit 8 -- under "Background History," you wrote the sentence -- well, I'll ask you, did you write the sentence:<br>    "Each year over 6,000 parolees suffering from serious mental illness are returning to prison for periods ranging for a few months up to one full year or longer, if they receive a new term. This is primarily due to technical violations or other criminal behavior that can result from their mental illness"?<br>    Did you write those two sentences?<br>A. Yes.<br>    Q. And is that the problem that you were trying to solve with this Budget Change Proposal?<br>    MR. ANTONEN: I would say objection, vague, but...<br>    MR. GALVAN: Okay.<br>    THE WITNESS: I'm not sure which problem. | None |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | BY MR. GALVAN:<br>    Q.  The problem of "6,000 parolees suffering from serious mental illness are returned to prison for periods ranging" -- et cetera -- "due to technical violations."<br>    A.  I was trying to reduce recidivism and crime among this population. | |
| 59:25 - 61:7 | None | None |
| 61:8 - 61:21 | None | None |
| 65:5 - 66:3 | None | 63:10-13; 63:21-64:19; 64:24-65:4. |
| 66:12 - 67:3 | None | None |
| 67:5 - 67:25 | None | None |
| 68:6 - 68:24 | None | None |
| 68:5 - 70:4 | None | None |
| 70:8 - 71:2 | None | None |
| 71:13 - 71:21 | None | None |
| 73:22 - 76:2 | **Objections as noted in transcript - vague; 75:5-76:2:**<br>Q.  Under "Benefits" on the first page, could you read the fourth bullet point there -- just read it into the record?<br>    A.  Sure.  (Reading)<br>        "Although not all paroling inmates are eligible for these benefits, for those who do qualify, a pre-release application process and establishment of benefits will provide increased parole success, improved public safety, and reduced recidivism."<br>    Q.  Can you describe the mechanism by which you expect that benefit to be realized?<br>    MR. ANTONEN:  Objection.  Vague as to what you mean by "mechanism."<br>    MR. GALVAN:  If you can answer.<br>    THE WITNESS:  It is my belief that if a disabled parolee has any type of financial resource that could help them from being homeless, and if a disabled parolee who needs medical care has a resource to help them obtain medical care when available to them and provided, those individuals will have a higher success on parole, and hopefully discharge from parole and be more independent. | None |
| 79:3 - 80:10 | None | None |
| 80:12 - 82:15 | None | None |
| 82:17 - 83:13 | None | None |
| 84:8 - 89:5 | None | None |
| 89:7 - 92:22 | **Objections as noted in transcript - lacks foundation, vague; 90:10-91:15:** | 92:23-24 |

- 4 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR ROBERT STORMS (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681009.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q. And did that money run out on July 1st, 2008?<br>A. That money was part of the fiscal year 2007-2008 budget. We had no approval to expend any of that money beyond that date.<br>Q. So, what happened to the parolees who were receiving services with that money after July 1, 2008?<br>MR. ANTONEN: Objection. Lacks foundation. To the extent you know what happened to individual cases as a program manager.<br>THE WITNESS: Yeah. I couldn't really speak to what continued services those individuals or any one individual received in that particular venue.<br>BY MR. GALVAN:<br>Q. Did the Department do anything to address the running out of that -- of those funds for those parolees?<br>MR. ANTONEN: Objection. Vague.<br>MR. GALVAN: If you can answer.<br>THE WITNESS: Well, the 4 million that we -- that was set aside out of the Department of Corrections' budget for that purpose in fiscal year '07-'08 is a continued funding source in the current Department of Corrections' budget -- State budget that's pending approval. And it's to supplement the request that we put together for funding the Assembly Bill 900 delivery of mental health services to parolees. So, to answer your question, yes, we are moving forward with -- in our attempts to get into contracts for mental health services in California communities. | |
| 92:25 - 93:13 | None | |
| 94:10 - 95:8 | None | 95:9-13 |
| 96:18 - 97:4 | None | None |
| 98:3 - 99:10 | None | 99:11-18 |
| 101:20 - 102:24 | None | None |
| 104:3 - 106:1 | None | 103:19-104:1 |
| 106:16 - 107:7 | **Objections as noted in transcript - improper expert opinion, calls for speculation, 106:16:107:7:**<br>Q. Do you think $9.6 million is enough?<br>MR. ANTONEN: Objection. He's not an expert witness. | **106:12-14 (in support of objection)**:<br>Q. Is $9.6 million enough for this project? |

- 5 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS
FOR ROBERT STORMS (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681009.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
|  | MR. GALVAN: If you can answer.<br>THE WITNESS: It was the estimate we came up with based on what we believed services would cost at the time. It's still to be seen whether or not it will get us to our deliverable. We believe we're close, if not there. "Deliverable" being 300 at any point in time.<br>BY MR. GALVAN:<br>Q. 300 what?<br>A. Parolees receiving services at any point in time.<br>Q. How did you arrive at 300?<br>A. That is what is the deliverable that's specified in the Assembly Bill 900. | MR. ANTONEN: Objection. Calls for speculation. |
| 107:14 - 108:15 | None | None |
| 109:16 - 111:11 | **Objection as noted in transcript - vague, 109:16-110:4:**<br>Does the Department now have any estimate of the number of inpatient mental health beds that the Department needs?<br>A. No.<br>MR. ANTONEN: Objection. Vague as to "needs."<br>MR. GALVAN: If you can answer.<br>THE WITNESS: Not having an exact estimating formula in front of me here, obviously I was real integral in coming up with the estimate, and based the figures of numbers of parolees on the psyche return process that we ended.<br>So, I either had 30 to 50 beds -- there may have been less. I'm not sure. But that was kind of the basis for that. | 109:2-9 |
| 114:8 - 115:6 | **Lacks foundation; objection as noted in transcript - calls for speculation, 114:17-115:6:**<br>Is the Department making any effort to use any additional beds at Coalinga State Hospital for this population formerly known as the "psyche return population," to your knowledge?<br>MR. ANTONEN: Objection. Calls for speculation.<br>MR. GALVAN: To the extent you know.<br>THE WITNESS: To the extent I know, for us to have a mentally ill parolee -- and that's basically what we're referencing |  |

- 6 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS
FOR ROBERT STORMS (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681009.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
|  | here -- in a state hospital requires the county to conserve them, whether temporary or permanent, and for the State Department of Mental Health to admit them and place them in one of their facilities.<br>    I'm not aware of Coalinga being utilized for that population. |  |
| 115:20 - 116:11 | **Lacks foundation; objection as noted in transcript - calls for speculation, 115:20-116:2:**<br>Q. In any of your negotiations with the counties, are you offering the Coalinga beds as an option?<br>    MR. ANTONEN: And objection. The witness has previously testified Coalinga is a DMH facility, so I think it calls for speculation.<br>    MR. GALVAN: To the extent you know.<br><br>    THE WITNESS: I'm not aware of Coalinga being available for us for Penal Code Section 2974 placements. | 116:12-17 |
| 117:4 - 117:18 | **Lacks foundation, hearsay (esp. to the extent the exhibit is being designated) 117:4-117:8:**<br>(Whereupon Plaintiffs' Exhibit 17 was marked for identification.)<br>    MR. GALVAN: Exhibit 17, for the record, is a printout from a blog entry, dated January 17th, 2007, "PacoVilla's Corrections blog."<br>BY MR. GALVAN:<br>    Q. Mr. Storms, are you familiar with the PacoVilla blog?<br>    A. Yes, I am.<br>    Q. Did you read this entry when it was posted there?<br>    A. I have seen it. I have read it before, yes.<br>    Q. Does this appear to be a correct copy of the Entry you read?<br>    A. Appears to be, yes. | **117:20-118:10 (in support of objection):**<br>I direct your attention to -- on the first page, the fourth paragraph that reads:<br>    "Agents, you are being set up. Paco strongly urges you to arrest rejected 5150 placements on any and every petty technical violation you may find. If you can't find one, you are a LOP."<br>    What's an "LOP"?<br>    MR. ANTONEN: Objection. Foundation. The witness testified he's only read the |

- 7 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR ROBERT STORMS (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681009.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | article. He didn't write it.<br>BY MR. GALVAN:<br>   Q. Do you know what an LOP is?<br>   A. I've heard LOP before. I'm not really sure what it means. If it's an acronym for something, I don't know what it stands for. |
| 120:1 - 121:19 | None | None |
| 123:12 - 124:21 | None | None |
| 125:8 - 126:9 | None | None |
| 127:6 - 132:10 | None | None |
| 132:15 - 134:10 | **Objection as noted in transcript - calls for peculation, 133:3-18:**<br>Q. How would freestanding Parole Outpatient Clinics improve the delivery of POC services?<br>   MR. ANTONEN: Objection. Calls for speculation. The witness did not say that he drafted the BCP.<br>   MR. GALVAN: Okay.<br>BY MR. GALVAN:<br>   Q. Why did the task force propose freestanding Parole Outpatient Clinics?<br>   MR. ANTONEN: And again, same objection. Calls for speculation.<br>   MR. GALVAN: If you know.<br>   MR. ANTONEN: If you know.<br>   THE WITNESS: I'm not sure. There was just a lot of people meeting and coming up with ideas. | None |
| 136:25 - 137:13 | **Objection as noted in transcript - asked and answered, 136:25-137:8:**<br>Q. And what's the -- currently, as we sit here today, has the Department secured any of those 300 slots?<br>   MR. ANTONEN: Objection. Asked and answered.<br>BY MR. GALVAN:<br>   Q. Can you answer?<br>   A. We're still in negotiations. We don't have no[sic] approved contracts for those services at this time. | None |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 137:17 - 138:7 | None | None |
| 138:8 - 140:6 | **Hearsay; objection as noted in transcript - lacks foundation, 138:8-139:5:**<br>Q. Could you summarize what was -- what was being proposed in this document?<br>    MR. ANTONEN: Objection. The document speaks for itself. And I don't believe -- it lacks foundation, because the witness did not draft the document.<br>    MR. GALVAN: If you can answer.<br>    MR. ANTONEN: To the extent you're comfortable, Robert, summarizing another person's work product.<br>    THE WITNESS: Okay.<br>    It's my understanding the proposal was to provide a 24/7 -- so, 24 hours a day, seven days a week -- resource for us by way of a toll-free telephone number which we would contract for services and pay for to have a coordination service, if you will, that when we have a mentally ill parolee who needs increased services due to their mental illness, outside of what we provide in our Parole Outpatient Clinics -- that -- specifically those that may need inpatient-type care, that for however we set it up, an individual could call that number and they would get involved in trying to help secure those services for us, for a cost for the services, as well as the provider.<br>**Objection as noted in transcript - calls for speculation, 139:12-22:**<br>Q. How much was the budget?<br>    A. My understanding of what was approved to work with was somewhere in the area of $4 million.<br>    Q. Okay.<br>    Was that the same $4 million that was the case management dollars that we were talking about earlier?<br>    MR. ANTONEN: Objection. Calls for speculation. To the extent the witness knows.<br>    MR. GALVAN: To the extent you know.<br>    THE WITNESS: Not that I'm aware, no. | None |
| 141:18 - 142:9 | None | None |
| 143:24 - 145:24 | None | None |
| 147:24 - 148:22 | None | None |

- 9 -
DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS
FOR ROBERT STORMS (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681009.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 152:3 - 152:23 | None | None |
| 155:15 - 156:7 | None | None |
| 156:10 - 157:3 | None | None |
| 158:3 - 159:24 | None | None |
| 160:5 - 160:25 | None | None |
| 161:1 - 163:9 | None | None |
| 163:10 - 166:13 | **Attorney-Client communication, 164:2-165:6**:<br>Q. Have you asked the Department for anything else to help you with this deliverable?<br>A. I've asked for an analysis and opinion of whether or not we can work with private providers, rather than county providers, because it was our interpretation of the statute that we were to work direct with counties.<br>Q. Did you get that analysis?<br>MR. ANTONEN: And objection. Calls for potentially attorney-client privileged communication.<br>BY MR. GALVAN:<br>Q. Did you ask for an analysis from an attorney?<br>A. Yes.<br>Q. Did you get an analysis from an attorney?<br>A. With a --<br>Q. I'm not asking you what the analysis says.<br>MR. ANTONEN: Well, you can answer if you received it or not.<br>THE WITNESS: Yes.<br>BY MR. GALVAN:<br>Q. You got an analysis from an attorney?<br>A. Yes.<br>Q. When was that?<br>A. Couple months ago.<br>Q. And after you got the analysis from the attorney, did you proceed, then, to solicit contracts from private providers?<br>A. We are continuing our efforts with the counties, as we seem to have some forward movement that appears to be working out. | None |
| 166:16 - 167:4 | None | None |
| 167:15 - 169:16 | None | 169:17-170:12 |
| 174:23 - 179:20 | **Objections as noted in transcript - calls for speculation and improper expert** | None |

| | DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|---|
| | | **opinion, 179:2-20:**<br>Q. Okay.<br>   And do you have an understanding or a way of explaining what the -- why it improved public safety for that connection to be in place?<br>   MR. ANTONEN: Objection. Calls for speculation. He's not offered as an expert witness on public safety.<br>   But to the extent you have personal knowledge. Please don't speculate, Robert.<br>   THE WITNESS: Okay.<br>   According to the findings and recommendations of the Office of Inspector General on that particular incident in San Quentin, had that inmate been identified as previously participating in mental health services delivery system in the prison, then there may have been treatment provision that was necessary. Therefore, the individual may have been more stable when he released and may have not committed the offense that he committed. | |
| | 184:17 - 185:1 | None | None |
| | 198:3 - 198:12 | None | **Note: Designated testimony is taken from a portion of the transcript that is treated as confidential and subject to protective order.** |
| | 201:14 - 202:19 | **Objections as noted in transcript – calls for speculation and improper expert opinion, 201:23-202:7:**<br>Q. Okay.<br>   In your opinion, what could the Department do to address these barriers?<br>   MR. ANTONEN: Objection. Calls for speculation.<br>   He's not offered as an expert witness.<br>   MR. GALVAN: If you can answer. If you have a lay opinion.<br>   THE WITNESS: I don't believe we're in a position to do anything. | 210:6-13; 202:21-203:2 |

- 11 -
DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR ROBERT STORMS (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681009.1

| | | |
|---|---|---|
| 1 | DATED: December 5, 2008 | HANSON BRIDGETT LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ Paul B. Mello<br>PAUL B. MELLO<br>Attorneys for Defendants<br>Arnold Schwarzenegger, et al. |
| 5 | | |
| 6 | DATED: December 5, 2008 | EDMUND G. BROWN JR.<br>Attorney General of the State of California |
| 7 | | |
| 8 | | |
| 9 | | By: /s/ Kyle A. Lewis<br>KYLE A. LEWIS<br>Deputy Attorney General<br>Attorneys for Defendants<br>Arnold Schwarzenegger, et al. |

- 12 -