EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile: (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**AND THE NORTHERN DISTRICT OF CALIFORNIA**

**UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

**PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

RALPH COLEMAN, et al.,

Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

No. 2:90-cv-00520 LKK JFM P

**THREE-JUDGE COURT**

MARCIANO PLATA, et al.,

Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

No. C01-1351 TEH

**THREE-JUDGE COURT**

**DEFENDANTS' OBJECTIONS AND COUNTER DESIGNATIONS TO PLAINTIFFS' PHASE II DESIGNATIONS FOR JOHN MISENER**

**To: Three-Judge Panel**

**Deposition of John Misener, January 29, 2008**

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 17:5 - 18:1 | none | 17:2-4, 18:2-19:7 |
| 20:5 - 23:16 | 20:5-23 **Objection: Calls for legal conclusion; Objection as noted in counter designation lack of foundation.**<br><br>If you understand that. That might have a legal kind of definition that may or may not be within your understanding.<br><br>MS. WHELAN: Let me just clarify my question --<br><br>THE WITNESS: I'm an employee of McManis Consulting. McManis -- as a -- and as a principal and part owner of McManis Consulting -- Consulting, I -- you know, I have the authority to write a proposal to Navigant. So I guess I'm not exactly sure what the relationship would be. But, you know, McManis Consulting would be the actual subcontractor, which I am an employee.<br><br>BY MS. WHELAN<br>Q So your work with the California Department of Corrections is as a principal of McManis and not as an independent person of John Misener himself; correct?<br>A Right.<br><br>22:17-23:16 **Objection: Hearsay, Calls for Legal Conclusion**<br><br>MS. WHELAN: This will be Exhibit 2.<br>BY MS. WHELAN<br>Q Exhibit 2 is a -- consists of a cover letter dated December 12th, 2006 from Maria Costa, a contract analyst in the institution medical contracts section, procurement and contracts branch, to Dorn K. Dean, managing director of Navigant Consulting. And enclosed with that letter is a contract for a term through December 31st, 2009. I | 19:8-20:1, 20:2-4<br><br>Q Is it correct to say that McManis is a third party contractor?<br><br>MS. TILLMAN: Objection. Lack of foundation.<br><br>23:17-18 |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | understand there may have been other contracts between CDCR and Navigant. But is it correct to say that this is the contract that set forth your three-year retention with CDCR?<br><br>A That's correct.<br><br>Q Can you describe what your general obligations are under this contract, as you understand them.<br><br>A Well, in short, it's to perform the work that would realize the deliverables that are outlined in the tables here.<br>For example, basically there's a table 1, expense schedule, with milestones and deliverables and fees and -- hard to tell the pagination because everything seems to be page 1, 2.<br><br>Q I think one helpful way to describe it also is the exhibit number in the upper right-hand corner. | |
| 23:19 - 25:25 | 23:19 -24:11 **Objection hearsay, calls for legal conclusion.**<br><br>All right. What I'm looking at, for instance, Exhibit A, which sets out the purpose of the contract.<br><br>MS. TILLMAN: And I was going to say Exhibit A, page 4 has the subtitle tasks and deliverables.<br><br>THE WITNESS: Right. This outlines in a little more detail what the requirements would be to meet the deliverables that are in the chart in Exhibit A.<br><br>BY MS. WHELAN<br>Q So on page 4, the first deliverable is a five-year mental health bed forecast using Navigant's methodology. | none |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | And the contract sets forth that that will be accomplished twice a year with due dates 30 days after the contractor's receipt of CDCR's general population projections, which come out in the fall and the spring; is that correct?<br><br>A That's what it says. Correct. | |
| 35:4 - 42:6 | 40:3-41:6 **Objection as stated in transcript - vague and ambiguous.**<br><br>Q My question is whether you recall your data took into account in the formula how long they may have been waiting for that level of care, or whether the data just assumed that if at some point they made it there. all of those people were treated equally, whether they were on a waiting list for ten days or whether they were on a waiting list for a hundred days.<br><br>MS. TILLMAN: I'm going to object it's vague and ambiguous when you say treated equally. I'm not sure that is the same phrasing that this witness has been using in his testimony.<br><br>THE WITNESS: You gave me a -- you said something that reminded me of what we had done, because we did have access to the waiting list. And we added the waiting list back into the numbers. So technically --And we're dealing with years here. Not months 20 or days per se. But if there's an average waiting list of the UNA patients, they get added into the appropriate year, and so the number -- the capacity number -- the need of the bed capacity requirement for that particular year includes both those who actually had been admitted and started generating days on record, plus the waiting list numbers as well.<br><br>Then, you know, the other numbers from those that got paroled or died or decided they were not appropriate for admitting -- for | 34:3-35:3, 42:7 |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | admission, for custodial reasons or whatever other reasons, those got added in as well. So. | |
| 42:8 - 45:16 | none | 41:8-42:7; 45:17-46:12. |
| 50:6 - 50:18 | none | 49:14-51:6 |
| 54:5 - 54:25 | none | 54:1-54:4, 55:1-55:8 |
| 56:9 - 61:4 | none | 56:7-8, 61:5-62:2 |
| 61:18 - 63:2 | none | 60:18-61:17, 63:3-63:18 |
| 79:25 - 83:22 | 82:23-83:18 **Hearsay**<br><br>Q Referring back to Exhibit 5, which is your E-mail to Mary Beth Thomas, do you recall which departments at that time were not efficiently getting you data?<br><br>A Let's see. This was first part of 2006. Yeah. Well, I guess my -- my comment about the HCCUP, the HCCUP department was the one we were having the most trouble with. And as it says right in the text there, that getting the DMH database, particularly one that had detail in Atascadero, had been a problem till we -- till this E-mail date apparently, because I finally got some data from them.<br><br>And the department's dependent on this other department DMH to get that data. And anecdotally, I heard, you know, they have their own issues of staffing and stuff that limited their ability to apparently code that data in or get it into a format that was usable at the time. I don't remember the months that were involved or what.<br><br>But -- DMH also is -- no, never mind. | 78:25-79:24, |
| 84:19 - 85:25 | none | none |
| 88:2 - 89:8 | none | 86:25-88:1, 89:9-90:5 |
| 93:8 - 94:12 | 93:14-94:4 **Objection: Hearsay**<br><br>BY MS. WHELAN | 93:3-93:7, 94:13-14. |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q Exhibit 6 is a E-mail from John Misener to Robin Dezember dated March 3rd, 2006. Do you recognize this E-mail?<br><br>A Yeah. Yes, I do.<br><br>Q The subject is current mental health forecasts. And this E-mail refers again to the UNA study that we've been talking about. And it -- the original E-mail actually included a graphic showing the disposition of UNA patients, which is not attached to this E-mail. But I think we'll see that later, because it's included in one of your reports.<br><br>At this time in March of 2006, you were still trying to deal with data from the UNA study; is that correct?<br><br>A Yeah. Yes, that's correct. | |
| 94:15 - 96:20 | 94:19-95:15 **Objection: Hearsay**<br><br>Q In the second paragraph you wrote, I guess I was surprised at how many were not transferred, meaning the UNA identified inmate patients. Do you recall why you were surprised?<br><br>A Yeah. Because it was a big number.<br><br>Q And did you ever determine why those patients weren't transferred?<br><br>A What we did is we classified them in the pie chart. If you look at those that weren't transferred, they came into a couple of fairly well identified categories that were added up from the database on a comment field.<br><br>And we tried to consolidate like terms, things like paroled or, you know, there were various types of -- types of terminology that were in that category. Some that were no longer needing -- you know no longer needing | none |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | service like that or was blank.<br><br>And so although some of those causes we tried to quantify, others were just other. Because we had no idea why.<br><br>95:22-96:20 **Objection: Hearsay**<br><br>BY MS. WHELAN<br><br>Q Exhibit 7 is the June 2006 mental health bed 24 need study authored by a John Misener of McManis Consulting and Mary Beth Thomas of Navigant Consulting. Page 7 includes a pie chart that you referred to of the UNA case disposition. Looking at this pie chart, can you now explain for me some of these numbers of what happened to those UNA identified inmate patients?<br><br>A I'm also looking at page 8, which follows, because there's more of a tabular setting here.<br><br>Well, on page 7, you know, you see that various prisons that -- trying to figure out what the N is here. The number. Is it 512? Let's see. Okay. That's 250 --<br><br>Q Well, the report refers to records for inmates among the UNA studies, 512 inmates who were not admitted to a program as of the end dates for these databases.<br><br>A Bear with me a second. Should have put the sample size at the bottom here, and I didn't do it. Okay. So what is it. Oh, okay. You're right. 512. Okay.<br><br>So this is what happened to the 512. And you can see which -- which program they were admitted to. | |
| 96:23 - 101:4 | 96:23-99:16 **Objection: Hearsay** | 101:5-7. |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | (continuing from earlier designation)<br><br>Okay. That's -- this is -- what I was looking for is why the chart -- in my own mind, the pie slices were bigger, but I see now it's because three of these slices over here. Paroled or deceased, 11 percent. There was some kind of clinical improvement or the referral was rescinded for some reason, 42, or 8 percent. And then the wait -- people were either on a wait list or there's no other reason for why they weren't referred, 19 percent.<br><br>Q In your E-mail of March 3rd, 2006, which is Exhibit 6, when you wrote that you were surprised at how many were not transferred, what sections of this pie chart were you referring to?<br><br>MS. TILLMAN: Let's just say that that mischaracterizes the statements in the exhibit.<br><br>I'm sorry. Let me withdraw that objection. I see where you were at. Thank you.<br><br>THE WITNESS: Well, first of all, I guess the 19 percent I was surprised about.<br><br>BY MS. WHELAN<br>Q So the 19 percent is people who were on a wait list or there was some other unidentified reason why they were not referred?<br><br>A Right. And not being a clinician or having seen this data before at the time, I probably would also add in that those three pie charts, pie slices that I was just referring to, seem to be fairly high number of the total that were identified for care that ended up not receiving it.<br><br>But, you know, as I said, some of those | |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | reasons I think are logical. Somebody was paroled, or obviously if they died or they all of a sudden got better and didn't need care.<br><br>Q This goes back to a question I asked earlier, though, which is while it may be understandable why someone didn't make it to their level of care because they either died or paroled, one question I have is whether there was a consideration as to how long the person remained on the waiting list before they died or paroled.<br><br>A Correct. Would you like me to talk about what we actually did to try to resolve that issue?<br><br>Q Yes, please.<br><br>A You can see here there was a comment made about Sharon Riegel and I having talked about what the best methodology might be for incorporating the UNA patients in the current forecast.<br><br>Mary Beth was -- Mary Beth Thomas was an advocate for taking those other slices where the inmates hadn't received care for whatever reason, trying to apply the pattern of admission of the other sections of the pie, intermediate versus acute, and adding those in as the UNA adjustment.<br><br>Because all of these other slices showed up in the -- the department's data as utilization. So they were actually admitted, so there's no reason to double count them. They were already in the rate that we were using.<br><br>It's these ones, what we refer to as the UNA adjustment, got added in and then fed back into the formula under a separate line item on all of the models for acute and intermediate as the, quote, UNA adjustment, | |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | unquote.<br><br>Because the logic was, maybe at the time they -- even if they don't need the care now, after months of being on a waiting list or whatever, they still should be counted, because they needed the care at the time. That was the logic. | |
| 102:22 - 103:22 | 102:23-103:22 **Objection: Hearsay**<br><br>DEPOSITION OFFICER: We're on 8.<br><br>BY MS. WHELAN<br><br>Q Exhibit 8 is a E-mail chain between Mary Beth Thomas and John Misener spanning the dates of 4/18/06 to 4/20/06 regarding legislative analysts report.<br><br>Do you recognize this E-mail?<br><br>A Not particularly. Although I'm sure it's one I sent -- I'm trying to -- I'm trying to recognize what the issue is that she has here. Or who sent what. This is from her to me?<br><br>Q The top one is from her to you, and then below that there's an E-mail dated 4/18/06 from you to her.<br><br>And in your E-mail, you refer to a conversation that you had with Robin, who I assume is Robin Dezember. You're talking about the timing for your report, and you say that Robin told you that timing wise, the report wouldn't need to be imminent, especially if it conflicted significantly from the current gap analysis.<br><br>Does the current gap analysis refer to the CDCR's gap analysis?<br><br>A That's my understanding, yeah. | 102:3-102:21, |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q So at this point in time, which is April of '06, you were trying to come up with an explanation as to why Navigant's projections differed significantly<br><br>(103:24-104:3 **answer not designated, but Defendants' continue objection to answer**) | |
| 117:12 - 119:8 | 117:13- 119:8 **Objection: Lack of foundation, speculation.**<br><br>Q So if an inmate is in an OHU, and a clinician places them, that inmate on the MHCB wait list, you count the person as being on the wait list; correct?<br><br>A That's my understanding of how it's reported. I don't have access to that data, so I don't know.<br><br>Q I thought I saw some references also, though, to including people on the MHCB wait list who have been in an OHU for more than 72 hours. Is that true?<br><br>A I've not taken any of the OHU data and tried to do any kind of calculation with the OHU census and adding it into -- in addition to the wait list that's already there for crisis beds.<br><br>Q So as far as you know, anybody housed in an OHU is counted on the MHCB wait list only if a clinician has referred that person to an MHCB?<br><br>A That's my understanding, correct.<br><br>Q And is that also true for the MHOHUs, of which I think there's only one at SAC right now?<br><br>A Yeah. I -- my own knowledge of the | 116:15-117:11 |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | differences is sort of -- sort of sketchy. But yeah, that's correct.<br><br>Q And as to the LOU at CMC in particular, you said that that unit would not be counted as an MHCB unit. But would inmates housed in that unit be counted on the MHCB wait list if a clinician referred them to a MHCB?<br><br>A I'd say that's true. Although this is going back a couple years. So it's very sketchy in my mind, except that I think there was some discussion of it in the report. Because that was an issue that we brought up. And people going back with different opinions as to what was really going on. We thought it was important to sort of vet that issue.<br><br>And I don't even know if it exists anymore in the same way that it existed back then or not in terms of the physical facility or what's actually -- the kind of patients that are in there now or what. It didn't seem to come up again after this, so.<br><br>Q And again she refers to the emergency placements at CMF. But you don't recall what she means by that; is that correct?<br><br>A Well, one comment I made earlier was sort of a hypothetical comment, which was that perhaps they were people, inmates that were admitted on an observe basis that didn't actually get recorded as actual acute inmates. But that's a guess on my part.<br><br>(Answer continues to 119:14, but not designated. Defendants continue their objection to the remainder of the answer.) | |
| 121:7 - 122:19 | 121:24-122:18 **Objection: Hearsay**<br><br>Q. Have you ever been told that the CDCR | 120:11-121:6, |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | uses alternative placements for inmates when they are unable to place them in a mental health bed, such as a mental health crisis bed?<br><br>A For example, a medical bed, something like that? Is that what you're suggesting?<br><br>Q Medical bed could be an example. Or an ad seg unit, for instance. And a zz cell is another alternative placement that has been identified by the special master's team as a place where patients requiring inpatient care are put by the CDCR.<br><br>A Well, I don't have any quantitative data on this. But -- it's pretty clear that they are being placed from time to time into, say, the wrong setting or maybe a setting that wasn't referred. Say they had an opening in a crisis bed versus an acute or whatever.<br><br>Now my understanding was that -- and I know CADDIS captures this, but if a psychiatric patient shows up in the same prison, but in a -- like a medical unit, it will show up in my data. Now I don't know about Health Care Placement Unit, whether their data captures …<br><br>(Answer continues to 123:5, but not designated. Defendants continue objection to remainder of answer.) | |
| 124:21 - 125:20 | 124:21- **Objection:Hearsay**<br><br>DEPOSITION OFFICER: Exhibit 11.<br><br>BY MS. WHELAN<br>Q Exhibit 11 is a E-mail from Rick Johnson to John Misener dated January 11th, 2007 regarding MHCB census data.<br><br>Do you recognize this E-mail?<br><br>A Yeah, I do. Uh-huh. | none |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q Rick Johnson wrote, regarding MHCBs, when I heard it was announced there is not a waiting list for MHCBs, I cringed. It has gone down, and occasionally it may dip to zero for a moment, but it is currently running from several to about ten cases a day. I believe the decrease is due in part to new MHCB availability of 37 beds at CMF-DMH and KVSP, and previously CMC, and how we changed the reporting of CIM overflow cases.<br><br>Do you know what he means by the changed reporting of CIM overflow cases?<br><br>A Oh, I thought you were going to ask me something else. Like why did I ask him this question.<br><br>But let's see. Not specifically until I did some research on it. But generally what they'll have is a spreadsheet that has all of the capacities of each of the mental health crisis units, and it has a number in there for every week as to what the actual number is. . .<br><br>(Answer continues to 125:24, but only lines 23 and 24 are designated in the following designation. Defendants continue the objection for the remainder of the question.) | |
| 125:23 - 128:1 | 125:23 -128:1 **Objection: Hearsay**<br><br>(starts in the middle of answer)<br>. , , how we change the reporting of CIM overflow cases. I don't know. Have to ask him.<br><br>Q And what was the question you were asking that led to the statement?<br><br>A We had a conference call. I believe it was a fairly robust conference call with -- maybe the court experts or maybe the assistant special master also. | none |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | But whatever it was, somebody said there wasn't any wait list right now. Or there would have been zero or something. And that didn't seem to jive with what I have seen or what I believed to be the case.<br><br>And so what he's doing here is just saying, well, maybe for one reporting period it had dropped to nothing because of recent expansion of capacity.<br><br>And he's correct. I mean, when we looked at the data, it started creeping up again. We do a pretty good job of talking about showing the wait list fluctuation. Sometimes it's zero right around --actually, right around the same time as he's talking and this E-mail came out. 1/12/2007 on the page 11 of the July 2007 report. Using spring 2007 population projections.<br><br>So -- I'm sorry. That was the CMF. No. Okay. Yeah. He's talking about the CMF, I guess. CMF wait list. Which was the topic of some discussion. I think you were there at that meeting. Why these fluctuations actually occur. There's a lot of suggestions as to why these census wait list trends change so much.<br><br>Q And what were the suggestions about why the wait list was fluctuating?<br><br>A Well, generally what happens in the psychiatric field is that you try to see if there's any connection with the holidays. Because for some reason or another -- and I have personal knowledge of this in my family -- people with mental disorders seem to --their morbidity seems to increase right around Christmastime area, which only accounts for one of the blips.<br><br>Others had to do with clinicians being on | |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | vacation. So it's difficult, if there's a drop in the work force for a particular period of time, perhaps some of the evaluations may wait until they get back.<br><br>I don't know. I don't know much about the staffing issues. That was -- seemed to make sense to me as to one of the possibilities.<br><br>Q Do you recall any other --<br><br>A Full moon is -- I'm not kidding. My grandson, a psychologist, says it's going to be tough, because the full moon is -- this was last week. He said I might have my hands full. And he wasn't kidding. So. Cause and effect in psychiatric is sometimes...<br><br>MS. TILLMAN: They say there's more births during the full moon period as well. | |
| 132:19 - 133:21 | (question starts at 132:14, which is not designated but Defendants object to full question and answer.)<br><br>132:14- **Objection: Hearsay**<br><br>Q In No. 2, you asked about the MHOHU at SAC, which had at that time an average daily census of ten, and he wrote, not including the MHOHU numbers at SAC would be consistent and the appropriate approach.<br><br>Is that consistent with or does that explain your statement before that the MHOHUs are not included as supplied MHCB beds?<br><br>A That's correct.<br><br>Q Then you wrote in No. 3, neither the CMF crisis units or activity at CMC is in CADDIS. They provided the facility code for CMC as 83 and labeled it as an OHU, but there is no data in CADDIS for it. HCPU reports data for CMC averaging 35 ADC in the first half of fiscal year 2007. I can substitute HCPU in | 131:17-132:4,<br><br>DEPOSITION OFFICER: 13.<br><br>BY MS. WHELAN<br>Q Exhibit 13 I think will confirm or at least address some of the issues we were just talking about.<br><br>Exhibit 13 is a March 5th, 2007 E-mail from Michael Barks to John Misener, in which Michael Barks has embedded answers to questions that you set forth in your original E-mail. |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | the revised discharge model.<br><br>And I'm not sure where Mr. Barks' comments begin and where your question ends. Do you know where that is?<br><br>A I think that starts with I am confused.<br><br>Q Okay.<br><br>A I'm trying to see what his statement here says. Well, the first part of this --<br><br>I'm sorry. Did you have a question?<br><br>Q Well, can you explain what you meant by your statement that neither the CMF crisis units or activity at CMC is in CADDIS.<br><br>A Well, probably a better statement would have been the CMF crisis units are not categorized as such. They are in -- the inmates themselves are included as facility number whatever the facility is at CMF. But they're not broken out as to whether or not they're acute or crisis.<br><br>(Answer continues to 134:2, which is not designated. Defendants continue their objection for the remainder of the answer.) | Do you recognize this E-mail?<br><br>A I recognize that, you know, Michael did -- had a habit of answering my questions in this format on a number of occasions. I'd have to read it. Let's see. Yes, I remember this. |
| 142:13 - 144:19 | (Question begins at 142:7, but is not designated. Defendants include the complete question and object to the question and answer.)<br><br>142:7- **Objection: Hearsay, Lack of Foundation**<br><br>Q In the second paragraph, he wrote -- and I'm starting one sentence in. Once we know what data is available or must be made available in order to run the forecast and we know the source, we can then set up a regular required process for its delivery to the, quote, unquote, forecast manager, | 140:6-141:12<br><br>DEPOSITION OFFICER: Exhibit 15.<br><br>BY MS. WHELAN<br><br>Q Exhibit 15 is a E-mail from Robin Dezember to Sharon Riegel with a CC to Doug McKeever dated June 5th, 10 2006. |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | whomever that turns out to be.<br><br>To your knowledge, is there a forecast manager for the data projections?<br><br>A Well, when I first read that, I thought maybe he was referring to the person that eventually takes over the forecasting process from Navigant. Although he could be talking about the liaison.<br><br>But I really don't know. And I think it --putting this into current context, the -- the two main people that I had liaison were Doug McKeever, and more importantly Michael Barks, have both gone on to do other jobs.<br><br>So whatever good intentions this may have had -- if, for example, there hasn't been any progress made on this, I can see that some of the staff shifting occurred such that it didn't happen.<br><br>Q And in paragraph 3 he wrote, the goal is to be able to run the forecast every six months without having to regenerate requests for data to put into the model and to establish accountability for the routine provision of each data element.<br><br>Presumably at this point he's trying to make your life easier?<br><br>A That's correct. And I remember talking with Doug McKeever about doing the same thing. Why wait until the population projections are out. Why not have Health Care Placement Unit or HCCUP or whatever send me data each month as it's rendered from the -- from their data systems.<br><br>Q But as of now, including today, that does not happen; correct? | Since this E-mail came from you, I don't know if you were a BCC or there's some other way you obtained it, because your name is not on it.<br><br>A You think it came from my group?<br><br>Q I do.<br><br>MS. TILLMAN: Just to clarify --<br><br>BY MS. WHELAN<br><br>Q But if we can figure out whether or not you have ever seen it.<br><br>MS. TILLMAN: Let me just clarify for the record, when you say from, you mean from the disk he provided you information, or because you see something in here that indicates it's either on the from or to line of the E-mail?<br><br>MS. WHELAN: No. I'm saying his name is not on the from or to. But this |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | A It hasn't happened.<br><br>DEPOSITION OFFICER: Exhibit 16.<br><br>BY MS. WHELAN<br><br>Q Exhibit 16 is a June 20th, 2006 E-mail chain between Robin Dezember and John Misener.<br><br>A Yeah. I remember this.<br><br>Q At the top of the E-mail Robin Dezember wrote to you -- I'm starting the third sentence in. One of the things I will recommend to the department is the creation of a population database that is used for whatever reports are needed for the variety of different purposes. If one set of data is used, then all reports based on it would be compatible. As it is, one needs to ask specific questions in order to get the proper data, and often we don't know what the questions are.<br><br>Do you know if the CDCR created a single set of data that could be used for a variety of purposes as set forth in this E-mail?<br><br>A Well, this E-mail addresses an issue specifically related to --<br><br>What prompted it was specifically related to missing some of the EOP activity that occurred at reception centers because of -- of my asking the question in the wrong way, I guess. Even back into 2002, where Health Care Placement Unit had provided us with all of the EOP data, or so we thought, that . . .<br><br>(Answer continues to 145:14, but is not designated. Defendants continue this objection for the remainder of the answer.) | is one of the text E-mails he produced.<br><br>BY MS. WHELAN<br><br>Q So I can't explain why you had it, Mr. Misener.<br><br>A Nor can I, actually. I guess he BCCed me. But I don't remember actually -- I'm glad he's doing this. Must have been a BCC, I guess.<br><br>Q Does the E-mail look familiar to you?<br><br>A Well, like I say, he talked to me over the phone about wanting to do this. So the E-mail per se is not that familiar, but -- |
| 151:2 - 155:6 | 151:5-24 **Objection as stated in transcript: Vague and ambiguous and incomplete hypothetical** | 150:20-151:1, |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q And how does a population like that affect your model? In other words, you have a subset of 50 intermediate care facility beds at Coalinga, which are obviously existing intermediate care facility beds, but the reality is that they may not be as available to patients, for instance, as intermediate care facility beds at other institutions where there is turnover.<br><br>Do you agree with that premise?<br><br>MS. TILLMAN: That's vague and ambiguous and also incomplete hypothetical.<br><br>If you can -- if you understand the question, you're free to respond.<br><br>THE WITNESS: Well, Coalinga was a new facility during the -- that didn't exist in the first couple of reports, I don't believe. And we had a new --you know, basically a different mission than some of the other intermediate facilities.<br><br>So I don't really have much data on Coalinga other than the fact that they go in and don't seem to come out. | |
| 155:7 - 156:7 | 155:15- **Objection: Hearsay**<br><br>Q Exhibit 18 is a very brief E-mail from you to Lisa Tillman dated April 20th, 2007.<br><br>Do you recognize this E-mail?<br><br>A Yeah. Well, I remember saying it was nice meeting you.<br><br>Q I'm sure it was very nice meeting her.<br><br>MS. TILLMAN: Not many lawyers get that compliment. | none |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | THE WITNESS: Well, we had talked on the phone.<br><br>BY MS. WHELAN<br>Q Okay. So you met. It was great to meet you in person. I thought the meeting was very helpful and positive step in understanding some of the problems that create bottlenecks in the system that may show up in the data.<br><br>Do you recall some of the problems that you and Miss Tillman discussed regarding data issues?<br><br>(Answer starts at 156:8-156:21, which is not designated. Defendants continue their objection to the undesignated answer.) | |
| 163:22 - 164:22 | none | 163:10-21, 164:23-165:3. |
| 176:5 - 181:12 | none | none |
| 203:20 - 206:21 | (question begins at 202:20, which contains an objection within the transcript.)<br><br>202:20 - **Objection as noted in transcript - vague and ambiguous.**<br><br>Q Yeah. I'm not trying to make an argument one way or the other. I'm just trying to understand whether something like staffing shortages is an issue that can be mathematically captured in data as opposed to something that is not appropriate for a mathematical model.<br><br>MS. TILLMAN: I'm going to object vague and ambiguous.<br><br>But I also think he's answered that question a couple of different ways already. He's already said something along the lines of doing a new contract, a new model, and getting a different set of data from CDCR to create that sort of look at how staffing impacts available beds. | 206:22-25 |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Is that correct?<br><br>THE WITNESS: I guess I would just reiterate that if short-term adjustments -- and when I say short-term, I mean we're looking at current capacity numbers, they don't seem accurate because of staffing shortages, then they need to be footnoted and/or adjusted to reflect --<br><br>Or actually, what some people do is they'll have a built supply number, and then hospital agencies that deal with -- you know, state agencies, still have certificate of need, will have another column that says built but not operational. It means it's a potential capacity, which apparently from what you're saying --<br><br>And I assume this is true, that you're arguing that these are built or available but not staffed. Then that can just be a separate line put in the tables to say, okay, since they're not operational, the deficit goes up. That's what I'd do.<br><br>It's not my purview to create that or do I have the ability or context to refine what Michael Barks and company have pulled together for me for these previous studies. But that would change your --<br><br>It's not a complex algorithm or anything. It's just saying, okay, we're adjusting out the beds that aren't staffed at ASH, and the supply number, the need number doesn't change. That's why I said don't be making any kind of esoteric adjustment to the need. But if the supply numbers is incorrect because of staffing, then we have another column that says here's the need, here's the deficit after an adjustment for built, but not operational. And then that number could probably pretty easily be created. | |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 213:18 - 216:20 | none | 212:18-213:17, |
| 216:21 - 217:2 | none | none |
| 217:3 - 218:1 | none | 218:2-20 |
| 221:7 - 222:2 | none | 221:3-6, 222:3-5. |

DATED:  December 5, 2008

HANSON BRIDGETT LLP

By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED:  December 5, 2008

EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Kyle A. Lewis
KYLE A. LEWIS
Deputy Attorney General
Attorneys for Defendants
Arnold Schwarzenegger, et al.

- 23 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II
DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1680992.1