1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Senior Assistant Attorney General
5  LISA A. TILLMAN – State Bar No. 126424
   Deputy Attorney General
6  KYLE A. LEWIS – State Bar No. 201041
   Deputy Attorney General
7  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
8  Telephone: (415) 703-5708
   Facsimile:  (415) 703-5843
9  lisa.tillman@doj.ca.gov
   kyle.lewis@doj.ca.gov
10
   Attorneys for Defendants
11

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

12            **UNITED STATES DISTRICT COURT**

13         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

14          **AND THE NORTHERN DISTRICT OF CALIFORNIA**

15     **UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

16       **PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

17

18  RALPH COLEMAN, et al.,

19            Plaintiffs,

20        v.

21  ARNOLD SCHWARZENEGGER, et al.,

           Defendants.

22

23  MARCIANO PLATA, et al.,

           Plaintiffs,

24        v.

25  ARNOLD SCHWARZENEGGER, et al.,

26           Defendants.

27

28

No. 2:90-cv-00520 LKK JFM P

**THREE-JUDGE COURT**

No. C01-1351 TEH

**THREE-JUDGE COURT**

**DEFENDANTS' OBJECTIONS AND
COUNTER DESIGNATIONS TO
PLAINTIFFS' PHASE II DESIGNATIONS
FOR JAMES TILTON**

**To:  Three-Judge Panel**

- 1 -

**Deposition of James Tilton, September 3, 2008**

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 10:20 - 11:23 | none | none |
| 15:1 - 17:12 | none | 17:13-18:2 |
| 30:23 - 36:10 | none | none |
| 38:4 - 39:12 | none | none |
| 42:3 - 43:2 | **42:8-43:2 Objection: Attorney-Client Privilege**<br><br>        Q.  Were you informed why funding had not been released for projects for AB 900?<br>        A.  You need to talk to attorneys, but there were a series of issues that were given to me in terms of language in the bill, as well as other steps that prevented us from getting access to the bond funds.<br>        Q.  Do you understand that the Attorney General's office had issued an opinion that the bond funding mechanism of AB 900 needed to be modified before the projects would go forward?<br>        MS. TILLMAN:  I'll object to the extent that it calls for any information that he might obtain through the course of an attorney/client communication. If he can answer without calling upon such information, he's free to do so.<br>        THE WITNESS:  Well, maybe I'll just answer it this way:  Is, we know we need a legal opinion from the Attorney General's office in order to issue bonds, and I know there were issues that prevented them from being able to issue that opinion. | 43:3-44:3 |
| 44:4 - 45:17 | None | None |
| 45:24 - 46:7 | None | None |
| 46:8 - 48:21 | None | 48:22-24 |
| 49:11 - 51:16 | **51:12-25 Objection: Lack of foundation, speculation, lack of personal knowledge.**<br><br>        Q.  To your knowledge, has any cleanup legislation ever been enacted since AB 900 was passed?<br>        A.  No.<br>        Q.  Does that failure to pass this cleanup legislation remain a barrier to implementation of AB 900?<br>        MS. TILLMAN:  I'm going to object to the extent that it calls -- well, lack of foundation, since he's not within CDCR at this time, and, so, there is certainly a lack of | None |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | foundation to his ability to speak about that time, but he knew what occurred at the time of his tender as secretary.<br>　　THE WITNESS:  Up through May 16th, it was a barrier.<br><br>**51:10-16  Objection as stated in record: Assumes Facts not in Evidence**<br><br>Q.   So the failure to pass the cleanup legislation at the time you left as secretary of CDCR was delaying AB 900 projects?<br>　　MS. TILLMAN:  I'm going to object to the testimony.  Assumes facts not in evidence.  Go ahead and answer if you can.<br>　　THE WITNESS:  My conclusion is, yes. | |
| 54:12 - 56:13 | none | none |
| 83:2 - 83:18 | none | 65:23-66:14, |
| 83:25 - 85:12 | none | none |
| 86:9 - 86:15 | none | none |
| 87:3 - 89:9 | none | none |
| 91:11 - 91:18 | none | none |
| 98:10 - 100:7 | none | 100:8-101:3 |
| 101:4 - 101:15 | none | none |
| 101:16 - 102:16 | none | none |
| 102:17 - 103:8 | 102:17-103.8 **Objection: Hearsay**<br><br>Q.   Were you ever told what reasons were given by counties for not providing those services?<br>　　A.   Anecdotally, I have.<br>　　Q.   Have you ever had discussions with representatives of counties about who's responsible for providing mental health services for parolees?<br>　　A.   Yes.<br>　　Q.   And do you understand there to be confusion as to who is responsible for providing mental health services for parolees between counties and the CDCR?<br>　　A.   Yes.<br>　　Q.   Can you describe the issue, as you see it?<br>　　A.   Driven by the language in Prop 63, many counties believe they have no responsibility to provide services to parolees and that it's a state responsibility.  I disagree, but that's where many county mental health directors are. | none |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 103:19 - 104:15 | 103:19-104:15 - **Objection: Lack of foundation.  Objections as noted in transcript - speculation, vague and ambiguous**<br><br>Q.   Were you present when the Governor made these<br>remarks on June 26, 2006?<br>   A.   I don't believe so.<br>   Q.   If you turn to the third page, the second paragraph from the top, at the end, he says, "Our prisons are dangerously overcrowded right now."<br>         And then he goes and describes the use of non-traditional beds.  And looking at the next paragraph there, it says, "Right now 16,300 inmates are housed in prison gyms and day rooms.  Any corrections expert will tell you that this is a recipe for disaster.  Without the programs, we will are never [sic] going to lower our recidivism rate, which is now, like I said, at 70 percent, which is highest in the nation."<br>         Did you agree with the Governor's statement at that time, in June of 2006, that the overcrowding was dangerous and a recipe for disaster?<br>         MS. TILLMAN:  Object to the extent that, again, it is a document prepared by another person, so it calls for speculation.  Vague and ambiguous.<br>         THE WITNESS:  I would qualify my answer to say, in combination with the lack of program. | 103:9-18 |
| 106:6 - 109:2 | none | none |
| 109:3 - 109:11 | none | none |
| 111:13 - 112:22 | none | 109:12-110:14 |
| 113:3 - 114:16 | none | none |
| 115:22 - 117:6 | none | 117:7-23 |
| 117:23 - 120:20 | 118:18-119:16 - **Objection -Hearsay**<br><br>         MR. BIEN:  Q.  Is it correct that there were discussions about whether that would be one of the options available to local communities?<br>   A.   Yes.<br>   Q.   Okay.  And was that issue, at least from CDC's side, decided in any way at the time you left CDC?<br>   A.   We expressed a preference and not a | none |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | mandate.<br>Q.  And what was the preference?<br>A.  The preference is that we would run the facilities and contract for services.<br>Q.  And by contracting for services, which services would you contract for?<br>A.  Those services that the inmates would then be delivered when they went on parole, so there would be a consistency of providers.  So we talked drug treatment.  We talked mental health.  We talked anger management, those kind of issues that we would want the parolee to<br>continue when they went on parole.<br>Q.  And as a model that you expressed a preference for from CDC's side, the same provider who is to provide the program for parolees upon their discharge from the re-entry facility would also provide the program while they're in the facilities?<br>A.  Yes.<br><br>120:4-9 **Objection: Hearsay**<br><br>Q.  The other issue in terms of operating facility, though, is the custodial side of re-entry facilities.  Am I correct that CDCR expressed its preference that CDCR would run the custodial operations of the re-entry facilities?<br>A.  Yes. | |
| 123:3 - 123:15 | none | none |
| 126:13 - 127:7 | none | 126:5-12, 127:8-129:15 |
| 130:2 - 131:9 | 130:24-131:9 **Objection - As noted in transcript - Lack of foundation.**<br>Q.  On the top of Page 2, there's a "whereas" clause dealing with the effects of current, severe overcrowding, and the first paragraph talks about increased substantial risks to the health and safety of CDCR staff, inmates, and the public.<br>Did you agree that conditions, as of October 2006, were substantial risks to the health safety of CDCR staff, inmates, and the public?<br>MS. TILLMAN:  Objection.  Lack of foundation.<br>Go ahead and answer. | 129:16-130:1 |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS
FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | THE WITNESS: Yes. | |
| 131:10 - 131:18 | none | none |
| 133:7 - 133:23 | 133:7-20 **Objection as noted in transcript - compound**<br><br>Q.   And then a little farther down, I think you mentioned this morning, there's a whereas clause that "Overcrowded prisons in other states have experienced some of the deadliest prison riots in American history," and it mentions Attica, New Mexico and Lucasville.<br>       Did you understand that there was a risk of riots or takeovers in California prisons due to the level of overcrowding in October of 2006?<br>       MS. TILLMAN: Objection. Compound in terms of riot versus takeover.<br>       Go ahead and answer.<br>       THE WITNESS: Yeah, I don't think the inmates would take over, but the issue of incidents and riots was a risk. | none |
| 133:24 - 134:5 | None | None |
| 141:22 - 147:14 | None | None |
| 147:15 - 149:4 | None | None |
| 149:5 - 151:3 | None | None |
| 151:4 - 154:17 | 154:10-17 **Objection as noted in transcript - lack of foundation.**<br><br>Q.   And you advocated for -- in other words, do you agree that there is a greater need in the current parole population than you're currently able to deliver?<br>       MS. TILLMAN: I'm going to object.<br>       You said "current." Obviously, during his time as secretary?<br>       MR. BIEN: Yes.<br>       THE WITNESS: Yes. | None |
| 154:18 - 156:14 | 154:18-155:22 **Objection - Hearsay**<br><br>MR. BIEN: Q.  Did you receive reports, when you were secretary of CDCR, that the parole division was having difficulty siting or contracting for various kinds of programs for parolees that wished to site?<br>       A.  It's been an issue as long as I've been related to an association with CDC.<br>       Q.  Could you explain what kind of issues<br>       A.  Well, that's -- in my view, that was one of my major goals was to get | None |

- 6 -

| | DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|---|
| | | communities to accept that they needed to be part of the delivery system for parolees and not because he was an ex-convict or a parolee, therefore, blocked them from getting services. <br><br>        And so this whole Nimby issue of, Not in my backyard.  That was the principals of why we went around the State talking about re-entry.  So I think the communities that we talked about re-entry, part of the expectation was that they would stand up and provide services for that population. <br><br>        That was one of the expectations. That was their responsibility, is to help us do a better job getting other services for parolees as part of that transition out.  So those communities that stood up and said, yes, we're willing to do re-entry also were saying, we're going to help you get those other programs because we see the value of providing services to those populations. <br><br>        So it was a two-way street in terms of not just us walking around paying for 100 percent.  They were saying they would, in fact, dedicate some of their resources towards services. | |
| | 162:2 - 162:7 | 162:2-7 **Objection: Lack of Foundation, Hearsay** <br><br>Q.   If you turn to the third page of the exhibit, second bullet has -- refers to AB 900 trailer bill language.  Do you recall that as early as August 20th of 2007, the CDCR had identified issues that should be addressed in a trailer bill to AB 900? <br>        A.   Yes. | 158:3-159:1 <br><br>MR. BIEN:  Q.  Mr. Tilton, I've asked the court reporter to mark as Exhibit 9 to your deposition a four-page document. On the front page, the title is "Major AB 900 Facility-Related Activities Recap, Week of 08/13/07."  The correct request for production numbers ECDCR 009795.001, which has been repeated four times, which is an interesting way of numbering. <br>        But, anyway, do you recognize |

- 7 -

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | this document, Mr. Tilton?<br>    A.  Not specifically, no.<br>    Q.  From time to time, did you receive reports about AB 900 implementation activities?<br>    A.  Yes.<br>    MS. TILLMAN:  Just for the record, my copy has different page numbers on the bottom.  Does yours --yours does not.  I'll show what you gave me.  I think mine has numbers ending in 0002, 3, 4.  Okay. I'm not sure what the exhibit shows. The exhibit does have the 0001 through 4, I believe.<br>    MR. BIEN: The miracle of modern technology. Mine is slightly different, but it is the same.<br>    Q.  So Ms. Tillman is correct. The exhibit does have consecutive numbering; is that correct, Mr. Tilton?<br>    A.  Yes. |
| 162:8 - 164:24 | 162:8-14 **Objection: Lack of foundation, Hearsay**<br><br>Q.  And, then, a few more bullets down.  The fourth bullet says, "Significant issue report developed to advise Secretary Tilton of expenditure of AB 900 funds for, quote, 'non-AB 900 projects.'"<br>    Do you recall that issue being | 158:3-159:1 (see above for quoted language). |

- 8 -

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | presented to you in August of 2007?<br>A.   Yes. | |
| 165:16 - 167:9 | **166:9-18 Objection: Hearsay**<br><br>Q.   At the bottom of the page, there's a list of<br>what I understand to be the makeup of COMIO; is that<br>correct?<br>A.   Yes.<br>Q.   And it includes the Director of California Department of Mental Health and also representatives of other -- might be missing the next page -- but representatives of other healthcare and correctional agencies?<br>A.   Yes, including courts. | 167:10-25 |
| 169:3 - 169:13 | None | 168:11 - 169:2 |
| 169:14 - 170:20 | **169:14-23 Objection: Hearsay**<br><br>Q.   Just turn back, if you would, for a moment, to Exhibit 11, which are the awards. In the adult category of the awards, you recognize several projects by superior courts in California; is that correct?<br>A.   Yes.<br>Q.   And what were these projects?<br>A.   The two primary ones -- there's three listed here, but two that I have knowledge of is the Behavioral Health Court in San Francisco, as well as the Mental Health Treatment Court in Santa Clara County. | None |
| 171:2 - 174:1 | **171:2-17 Objection: Hearsay**<br><br>Q.   Are you aware of any proposals to have a similar model of a mental health court that would apply to parole revocation procedures?<br>A.   Yes.<br>Q.   Can you tell me about that?<br>A.   Well, we raised the -- had a discussion internally about whether or not we could do the same thing in terms of triage and parole, if we could get appropriate services.<br>    That discussion has some major fiscal policy discussions, which have become problematic, but the thought was, if it works when they come to jail, and they still have | None |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS
FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | people come into prisons in the parole process, could we do the same thing? Could we basically set up a model that represented the same thing the judges do and have the parole boards do the same thing. | |
| 181:11 - 182:10 | 181:19-182:6 **Objection: Hearsay**<br><br>Q.  Can you explain what that report was and what this committee was?<br>    A.  This was a committee that was authorized by the legislature but requested and supported by me, to bring in experts around the country to advise us about addressing, largely, the program deficiencies in the Department, and how -- whether they were already existing programs that were out there.<br>    And, also, since many of these were practitioners, both from the program, as well as custody side, I asked them to give me advice in terms of how to get started.  You know, can't do it all at once.  Where should I prioritize my efforts? | 179:21-181:10 |
| 182:25 - 183:10 | 182:25-183:10 **Objection: Hearsay, Objection as noted in record -misstates the evidence.**<br><br>Q.  Yeah, is it correct that the expert panel identified overcrowding as a factor that must be addressed before CDCR could address -- could implement its rehabilitation programming?<br>    A.  Yes.<br>        MS. TILLMAN:  Objection.  Misstates the evidence.<br>        MR. BIEN:  Q.  Was Recommendation 1, which is stated on that same page, reduce overcrowding in its prison facilities and parole offices?<br>    A.  Yes | 182:16-24 |
| 183:11 - 183:17 | 183:11-17 **Objection: Hearsay**<br><br>Q.  In the expert panel, also made a series of recommendations to CDCR as to how to identify and develop and then implement rehabilitation programs?<br>    A.  Yes.<br>    Q.  And did you endorse these recommendations as secretary?<br>    A.  Yes. | 183:18-184:6. |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 184:7 - 186:1 | 184:7-16 **Objection: Hearsay**<br><br>Q.  The second recommendation, which is on the next page of the executive summary, is, "Enact legislation to expand its system of positive reinforcements for offenders who successfully complete the implementation program requirements and comply with institutional rules in prison, and fulfill parole obligations in the community."<br>    Did you endorse these recommendations, Secretary Tilton?<br>    A.  Yes. | none |
| 186:2 - 186:10 | none | none |
| 187:6 - 188:14 | 187:22-188:6 **Objection as noted in transcript - Lack of Foundation**<br><br>    Q.   Is it correct under CDCR's current system of credits that a prisoner gets the same credit for attending an educational program as he might get for graduating from an educational program?<br>    MS. TILLMAN:  Objection.  Lack of foundation, to the extent that he knows --<br>    THE WITNESS:  Or not participate in programs, they'll get credit.  All three.<br>    MR. BIEN:  Q.  Is that correct?<br>    A.   Yes. | 186:11-187:5 |
| 193:21 – 195:22 | 194:23-195:14 **Objection: lack of foundation, hearsay.  Objection as noted in transcript - misstates the evidence**<br><br>MR. BIEN:  Let me mark as the next in order, which I think this is 21, a Population Management Plan dated March 24th, 2006, E-CDCR_023431 through 436.<br>    (Whereupon, Plaintiffs' Exhibit No. 21 was marked for identification.)<br>    MR. BIEN:  Q.  I'm only going to ask you about -- there's a reference to Coalinga on Page 6.<br>    My question is, does that refresh your recollection that CDCR, in 2006, was advocating to increase its use of Coalinga State Hospital beds for mentally ill prisoners?<br>    MS. TILLMAN:  Objection.  Misstates the evidence. | 195:23-196:1. |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | THE WITNESS:  Well, two points. This document was prepared before I got to the agency. MR. BIEN:  Q.  Okay. | |
| 201:5 - 202:18 | **201:5-202:18 Objection: Hearsay, Lack of Foundation, Calls for Legal Conclusion** Q.   Do you recall that in early 2000, as part of the 2008 budget, that administration proposed a population reduction measure? A.   Yes. Q.   And is that reflected here on Page 2, the 20-month early release of inmates and summary parole? A.   Yes. Q.   And did you -- is it part of your responsibility to present this proposal to legislature in early 2008? A.   Yes. Q.   Did you do so? A.   Yes. Q.   It's correct that this proposal excluded inmates not currently convicted and who have a history of conviction for serious or violent offense; there account code is 11927 or 667.5(c)? A.   Yes. Q.   And also excluded, inmates who had a register under PC290? A.   That's correct. Q.   If you go back to page 6, is it correct that the application of this proposal would result in release of certain numbers of the Coleman class, along with the others being released? A.   I assume so, yes. Q.   Look at the bottom of that. A.   Yes. Q.   Page 6. A.   Um-hum. Q.   Had the Department done a study showing -- or actually -- the charge is actually at the top of Page 7. The text is at the bottom of Page 6. A.   Um-hum. Q.   The Department does a study as to, if this proposal was implemented, approximately what kind of inmates would be released and what effect it would have on its programs? A.   Yes. | 200:9-201:4 MR. BIEN:  I'd like to mark as the next exhibit No. 23, a Senate Budget Hearing Briefing by Mr. Tilton in 2008. Bears Production No. DEFS032628 through 643. (Whereupon, Plaintiffs' Exhibit No. 23 was marked for identification.) MS. TILLMAN: Just for the record, was there any sort of Bates on this? MR. BIEN:  My copy has it. MS. TILLMAN:  If you could just read it into the record, that would help me.  DEF? MR. BIEN: DEFS032628, on the first page. MS. TILLMAN: Okay.  Thank you. MR. BIEN:  Q.  Mr. Tilton, can you identify this document for the record? A.   Well, it's confusing to me because it doesn't |

- 12 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | look like this is testimony by me. It looks like this is copies of BCPs or proposals. It could have been by the title. It looks like the normal budget hearing, and these were topics, BCPs, that were discussed. |
| 203:22 - 206:7 | 203:22-204:1 **Hearsay, Lack of Foundation**<br><br>Q.  This proposal that's reflected in Exhibit 23 refers to -- partially, one of the aspects of it is called summary parole.<br>        Do you understand what that is?<br>        A.   Yes, I do. | *Id.* (see quoted text above). |
| 208:8 - 209:3 | 208:8-15 **Objection: Hearsay, lack of foundation**<br><br>Q.   Okay.  In the short-term item, Item 3(b)2, one of them is, eliminate state prison diagnostic evaluations.<br>        Do you know what that's in reference to?<br>        A.   Yes, there's a process -- I think it's a mental health evaluation, basically diagnostics, and it ends up with very few people actually getting to us, but it's a workload, and it takes up beds in our system. | 206:18-207:24<br><br>MR. BIEN:  Q.  Mr. Tilton, I've asked the court reporter to mark as Exhibit 24 to your deposition a two-page document.  It says, top of the first page, "Agenda Governor's meeting with Legislative Leaders on Prisons.  It has numbers E-CDCR_000414 and 415.<br>        Do you recall attending a meeting where the Governor made a presentation to legislative leaders concerning prison options?<br>        A.   Can you give me a time frame?<br>        Q.   I would only |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | guess from what you talked about earlier, this was somewhere around the special session because it seemed to have things that kind of dropped out after that, but I don't really know.  I can't make a representation to you.<br>    A.   Yeah, no, there were -- I can't link this document to a particular meeting, even though there were meetings with staffers, as we tried to rule out the emergency session.  This looks like trying to throw everything on the plate and get the considerations for a couple options and see what they were willing to consider.<br>    Q.   I understand that you can't identify this document like that.  I just want to use it as a guide, just to see if I can understand what some of these options were that were being considered.<br>        Under Point 3(a), immediate, I see -- we've talked about out-of-state beds, but I also see, "Lease of |

- 14 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | empty jail beds."<br>Did you undertake any investigation or one of your staffers an investigation about whether there were additional jail beds to lease in California?<br>A. Yes. |
| 210:9 - 211:23 | 210:9-19 **Objection: Hearsay, Lack of Foundation**<br><br>Q. Under long term, one of the proposals was, parole violators served time locally. Do you understand what that proposal was, or do you have -- did you ever discuss a proposal like that?<br>A. Yes, it was basically, rather than send them back to prisons, they would have to find some local facilities to put them in.<br>Q. Is that one of the proposals that has continued to be discussed while you were agency secretary?<br>A. No. | *Id.* (see text quoted above). |
| 211:24 - 213:2 | 211:24-212:21 **Objection: Hearsay, Lack of Foundation**<br><br>Q. Under Item Roman Numeral IV is a discussion of prison and parole reform alternatives. Under prison reform, the first one is sentencing commission.<br>Do you recall that Governor Schwarzenegger in, I think it was in the budget that came out in January of 2007, advocated that the sentencing commission be established?<br>A. Yes.<br>Q. And were you involved in discussions of sentencing commissions as one of the options to address prison overcrowding?<br>A. Yes.<br>Q. What can you recall about those discussions?<br>A. It was try to find an independent body to help us reassess the State laws that drive population in the prison system.<br>Q. In the time you left the CDC in the | *Id.* (see text quoted above). |

- 15 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | spring of 2008, were you aware of any further discussions of the sentencing commission?<br>    A.   I am aware of discussions, but I don't know if there was any movement from the various parties about how the makeup and what authority the commission should have. | |
| 213:8 - 213:16 | none | 213:3-7 |
| 213:17 - 214:19 | **213:17-24 Objection: Hearsay,  Lack of Foundation**<br><br>Q.   No. 8 is, "Increase Work Credits for Non-serious, Non-violent Inmates."<br>    Can you discuss -- do you recall what any of those proposals were?<br>    A.   Well, generally, this is identifying, and this is where I was supporting, if it's a non-violent offender, we do give additional credits for performance in program, and that's what this is. | *Id.* at 206:18-207:24  (see quoted text at designation 208:8 - 209:3.) |
| 214:20 - 217:19 | none | none |
| 219:6 - 220:4 | none | 218:12-219:5 |
| 229:9 - 231:11 | 230:23-231:11  **Objection as noted in the transcript vague and ambiguous.**<br><br>Q.   At the time you left CDCR in the spring of 2008, had this proposal been approved?<br>    MS. TILLMAN:  Objection.  Vague and ambiguous, as to whom.<br>    MR. BIEN:  Q.  Had it been incorporated as part of the budget?<br>    MS. TILLMAN:  The May revise?<br>    MR. BIEN:  There is no final budget yet.<br>    THE WITNESS:  Point taken and made.<br>    MR. BIEN:  Q.  As far as you know, it's not approved yet?<br>    A.   Not approved yet, and I don't know the current status of response to legislature BCPs to either the fall or the May. | None |
| 233:21 - 235:11 | **233:21-235:11  Objection as noted in transcript - attorney client and executive privilege.  (see counter designation).** The designated testimony refers to a document for which Defendants' asserted privilege during the deposition. | 232:22-233:20<br><br>MR. BIEN:  Mark as Exhibit 30, which I think will be the last one.<br><br>(Whereupon, Plaintiffs' Exhibit |

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | No. 30 was marked for identification.) THE WITNESS: (Witness reviewing document.) MR. BIEN: Q. Do you recall, Mr. Tilton, receiving this e-mail on or about July 10, 2007, from Mr. Gore? MS. TILLMAN: Before he answers the question, let me just state for the record that G-O-V PRIV 001091, obviously, the necessary privileges of attorney/client privileged, a little bit of confidence privileged, and executive privileged were asserted by defendant. It appears that this was a document produced pursuant to a court order. That being said, we will allow the witness to answer certain questions regarding this document, and we'll take it on a question-by-question basis at this time. MR. BIEN: Okay. THE WITNESS: I'm |

- 17 -

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | aware of this activity taking place. I don't recall seeing the memo, but I probably did, since it was cc'd to me. |
| 235:23 - 236:12 | 235:23-236:12 **Objection as noted in transcript - attorney client and executive privilege. (see counter designation).** The designated testimony refers to a document for which Defendants' asserted privilege during the deposition. | *Id.* (see quoted text above). |

DATED:  December 5, 2008

HANSON BRIDGETT LLP


By: /s/ Paul B. Mello

PAUL B. MELLO
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED:  December 5, 2008

EDMUND G. BROWN JR.
Attorney General of the State of California


By: /s/ Kyle A. Lewis

KYLE A. LEWIS
Deputy Attorney General
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO PHASE II DESIGNATIONS FOR JAMES TILTON (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1681013.1