EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile:  (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OBJECTIONS AND COUNTER DESIGNATIONS TO PLAINTIFFS' REVISED PHASE II DESIGNATIONS FOR JOHN MISENER**<br><br>**To:  Three-Judge Panel** |

- 1 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II
DESIGNATIONS FOR MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

**Deposition of John Misener, January 29, 2008**

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| 16:5 - 17:1 | None | None |
| 19:5 - 22:16 | 20:2-23, **Objection as noted in transcript – lack of foundation. Objection: Calls for legal conclusion.**<br><br>Q Is it correct to say that McManis is a third party contractor?<br><br>MS. TILLMAN: Objection. Lack of foundation.<br><br>If you understand that. That might have a legal kind of definition that may or may not be within your understanding.<br><br>MS. WHELAN: Let me just clarify my question --<br><br>THE WITNESS: I'm an employee of McManis Consulting. McManis -- as a -- and as a principal and part owner of McManis Consulting -- Consulting, I -- you know, I have the authority to write a proposal to Navigant.<br><br>So I guess I'm not exactly sure what the relationship would be. But, you know, McManis Consulting would be the actual subcontractor, which I am an employee.<br><br>BY MS. WHELAN<br><br>Q So your work with the California Department of Corrections is as a principal of McManis and not as an independent person of John Misener himself; correct?<br><br>A Right. | None |
| 22:19 - 24:25 | 22:19-24:25 **Objection: Hearsay, Calls for Legal Conclusion**<br><br>Q Exhibit 2 is a -- consists of a cover letter dated December 12th, 2006 from Maria | None |

- 2 -
DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II
DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Costa, a contract analyst in the institution medical contracts section, procurement and contracts branch, to Dorn K. Dean, managing director of Navigant Consulting. And enclosed with that letter is a contract for a term through December 31st, 2009. I understand there may have been other contracts between CDCR and Navigant. But is it correct to say that this is the contract that set forth your three-year retention with CDCR?<br><br>A That's correct.<br><br>Q Can you describe what your general obligations are under this contract, as you understand them.<br><br>A Well, in short, it's to perform the work that would realize the deliverables that are outlined in the tables here.<br>For example, basically there's a table 1, expense schedule, with milestones and deliverables and fees and -- hard to tell the pagination because everything seems to be page 1, 2.<br><br>Q I think one helpful way to describe it also is the exhibit number in the upper right-hand corner.<br><br>A Exhibit B too. I don't know how many of those are in there.<br><br>Q All right. What I'm looking at, for instance, Exhibit A, which sets out the purpose of the contract.<br><br>MS. TILLMAN: And I was going to say Exhibit A, page 4 has the subtitle tasks and deliverables.<br><br>THE WITNESS: Right. This outlines in a little more detail what the requirements would be | |

- 3 -
DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II
DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | to meet the deliverables that are in the chart in Exhibit A.<br><br>BY MS. WHELAN<br><br>Q So on page 4, the first deliverable is a five-year mental health bed forecast using Navigant's methodology.<br><br>And the contract sets forth that that will be accomplished twice a year with due dates 30 days after the contractor's receipt of CDCR's general population projections, which come out in the fall and the spring; is that correct?<br><br>A That's what it says. Correct.<br><br>Q And have you been accomplishing the two year -- the twice-per-year reports since you – since this contract was initiated?<br><br>A. Yeah. There's been two created. They don't fall very well under the time frame, which I think is unrealistic, primarily due to the client's difficulty in pulling the data together for those time periods. Basically pushes back my ability to -- you know, the time frame -- my ability to complete those in a fashion that would meet the requirements listed here.<br><br>MS. TILLMAN: 5. Is that correct? The note 5 on page 4 gives an outline of the time.<br><br>THE WITNESS: Oh, yeah. Yes, that's correct. | |
| 41:8 - 44:16 | None | None |
| 49:6 - 49:18 | None | 49-19-51:6 |
| 53:5 - 53:25 | None | None |
| 55:9 - 60:4 | None | None |
| 60:18 - 62:2 | None | None |
| 78:25 - 82:22 | None | None |
| 83:19 - 84:25 | 83:19-84:25 **Objection: Hearsay, Improper Lay Opinion Testimony** | None |

- 4 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q You also mentioned in this E-mail, you wrote reflect -- <br><br> After discussing problems getting data, you wrote, reflecting what Doug or Robin said on the last call, that we are dealing with an organization in crisis. <br><br> Was -- was it your opinion at that time that the CDCR was in crisis? <br><br> A Well, a lot of government agencies are in crisis all the time. He laughed. <br><br> But I don't remember exactly what maybe the issues were at the time, other than maybe people trying to fit into new positions or people leaving or – I don't remember at the time. Challenged by several – a number of demands at the same time. <br><br> And an organization that is dealing with the population that it's dealing with in terms of overpopulation, like the current situation, it - probably existed back then as well, I would think. <br><br> Q Do you have an opinion sitting here today about whether or not the CDCR is in crisis? <br><br> A From a layman's perspective or from what I hear, read, and people send me newspapers and stuff, I would think it's -- yeah. It has a lot of challenges. <br><br> It's got too many inmates and not enough places to put them. <br><br> If you look at the bed need forecasts and the capacities out there, there's a challenge, financial challenge to upgrade the -- the supply of types of programs that are needed. And those things -- you can't just turn those on, you know, tomorrow. It takes a number of | |

- 5 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | years usually to build things, so. | |
| 93:15 - 95:20 | 93:15-94:4 **Objection: Hearsay**<br><br>Q Exhibit 6 is a E-mail from John Misener to Robin Dezember dated March 3rd, 2006.  Do you recognize this E-mail?<br><br>A Yeah. Yes, I do.<br><br>Q The subject is current mental health forecasts. And this E-mail refers again to the UNA study that we've been talking about. And it -- the original E-mail actually included a graphic showing the disposition of UNA patients, which is not attached to this E-mail. But I think we'll see that later, because it's included in one of your reports.<br><br>At this time in March of 2006, you were still trying to deal with data from the UNA study; is that correct?<br><br>A Yeah. Yes, that's correct.<br><br>94:19-95:15  **Objection: Hearsay**<br><br>Q In the second paragraph you wrote, I guess I was surprised at how many were not transferred, meaning the UNA identified inmate patients.  Do you recall why you were surprised?<br><br>A Yeah. Because it was a big number.<br><br>Q And did you ever determine why those patients weren't transferred?<br><br>A What we did is we classified them in the pie chart. If you look at those that weren't transferred, they came into a couple of fairly well identified categories that were added up from the database on a comment field.<br><br>And we tried to consolidate like terms, things like paroled or, you know, there were various | None |

- 6 -
DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | types of -- types of terminology that were in that category. Some that were no longer needing -- you know no longer needing service like that or was blank.<br><br>And so although some of those causes we tried to quantify, others were just other. Because we had no idea why. | |
| 95:23 - 100:4 | 95:23-96:20 **Objection: Hearsay**<br><br>Q Exhibit 7 is the June 2006 mental health bed 24 need study authored by a John Misener of McManis Consulting and Mary Beth Thomas of Navigant Consulting. Page 7 includes a pie chart that you referred to of the UNA case disposition. Looking at this pie chart, can you now explain for me some of these numbers of what happened to those UNA identified inmate patients?<br><br>A I'm also looking at page 8, which follows, because there's more of a tabular setting here.<br><br>Well, on page 7, you know, you see that various prisons that -- trying to figure out what the N is here. The number. Is it 512? Let's see. Okay. That's 250 --<br><br>Q Well, the report refers to records for inmates among the UNA studies, 512 inmates who were not admitted to a program as of the end dates for these databases.<br><br>A Bear with me a second. Should have put the sample size at the bottom here, and I didn't do it. Okay. So what is it. Oh, okay. You're right. 512. Okay.<br><br>So this is what happened to the 512. And you can see which -- which program they were admitted to.<br><br>Okay. That's -- this is -- what I was looking | None |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | for is why the chart -- in my own mind, the pie slices were bigger, but I see now it's because three of these slices over here. Paroled or deceased, 11 percent. There was some kind of clinical improvement or the referral was rescinded for some reason, 42, or 8 percent. And then the wait -- people were either on a wait list or there's no other reason for why they weren't referred, 19 percent.<br><br>Q In your E-mail of March 3rd, 2006, which is Exhibit 6, when you wrote that you were surprised at how many were not transferred, what sections of this pie chart were you referring to?<br><br>MS. TILLMAN: Let's just say that that mischaracterizes the statements in the exhibit.<br><br>I'm sorry. Let me withdraw that objection. I see where you were at. Thank you.<br><br>THE WITNESS: Well, first of all, I guess the 19 percent I was surprised about.<br><br>BY MS. WHELAN<br>Q So the 19 percent is people who were on a wait list or there was some other unidentified reason why they were not referred?<br><br>A Right. And not being a clinician or having seen this data before at the time, I probably would also add in that those three pie charts, pie slices that I was just referring to, seem to be fairly high number of the total that were identified for care that ended up not receiving it.<br><br>But, you know, as I said, some of those reasons I think are logical. Somebody was paroled, or obviously if they died or they all of a sudden got better and didn't need care. | |

- 8 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | Q This goes back to a question I asked earlier, though, which is while it may be understandable why someone didn't make it to their level of care because they either died or paroled, one question I have is whether there was a consideration as to how long the person remained on the waiting list before they died or paroled.<br><br>A Correct. Would you like me to talk about what we actually did to try to resolve that issue?<br><br>Q Yes, please.<br><br>A You can see here there was a comment made about Sharon Riegel and I having talked about what the best methodology might be for incorporating the UNA patients in the current forecast.<br><br>Mary Beth was -- Mary Beth Thomas was an advocate for taking those other slices where the inmates hadn't received care for whatever reason, trying to apply the pattern of admission of the other sections of the pie, intermediate versus acute, and adding those in as the UNA adjustment.<br><br>Because all of these other slices showed up in the -- the department's data as utilization. So they were actually admitted, so there's no reason to double count them. They were already in the rate that we were using.<br><br>It's these ones, what we refer to as the UNA adjustment, got added in and then fed back into the formula under a separate line item on all of the models for acute and intermediate as the, quote, UNA adjustment, unquote.<br><br>Because the logic was, maybe at the time | |

- 9 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II
DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
|  | they -- even if they don't need the care now, after months of being on a waiting list or whatever, they still should be counted, because they needed the care at the time. That was the logic. |  |
| 101:22 - 102:22 | None | None |
| 120:7 - 121:19 | None | None |
| 141:13 - 143:19 | 142:7-143:19 **Objection: Hearsay, Lack of Foundation**<br><br>Q In the second paragraph, he wrote -- and I'm starting one sentence in. Once we know what data is available or must be made available in order to run the forecast and we know the source, we can then set up a regular required process for its delivery to the, quote, unquote, forecast manager, whomever that turns out to be.<br><br>To your knowledge, is there a forecast manager for the data projections?<br><br>A Well, when I first read that, I thought maybe he was referring to the person that eventually takes over the forecasting process from Navigant. Although he could be talking about the liaison.<br><br>But I really don't know. And I think it --putting this into current context, the -- the two main people that I had liaison were Doug McKeever, and more importantly Michael Barks, have both gone on to do other jobs.<br><br>So whatever good intentions this may have had -- if, for example, there hasn't been any progress made on this, I can see that some of the staff shifting occurred such that it didn't happen.<br><br>Q And in paragraph 3 he wrote, the goal is to be able to run the forecast every six months without having to regenerate requests for data to put into the model and to establish accountability for the routine provision of | 140:6-141:12<br><br>DEPOSITION OFFICER: Exhibit 15.<br><br>BY MS. WHELAN<br><br>Q Exhibit 15 is a E-mail from Robin Dezember to Sharon Riegel with a CC to Doug McKeever dated June 5th, 10 2006.<br><br>Since this E-mail came from you, I don't know if you were a BCC or there's some other way you obtained it, because your name is not on it.<br><br>A You think it came from my group?<br><br>Q I do.<br><br>MS. TILLMAN: Just to clarify --<br><br>BY MS. WHELAN<br><br>Q But if we can figure out whether |

- 10 -

DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | each data element.<br><br>Presumably at this point he's trying to make your life easier?<br><br>A That's correct. And I remember talking with Doug McKeever about doing the same thing. Why wait until the population projections are out. Why not have Health Care Placement Unit or HCCUP or whatever send me data each month as it's rendered from the -- from their data systems.<br><br>Q But as of now, including today, that does not happen; correct?<br><br>A It hasn't happened. | or not you have ever seen it.<br><br>MS. TILLMAN: Let me just clarify for the record, when you say from, you mean from the disk he provided you information, or because you see something in here that indicates it's either on the from or to line of the E-mail?<br><br>MS. WHELAN: No. I'm saying his name is not on the from or to. But this is one of the text E-mails he produced.<br><br>BY MS. WHELAN<br><br>Q So I can't explain why you had it, Mr. Misener.<br><br>A Nor can I, actually. I guess he BCCed me. But I don't remember actually -- I'm glad he's doing this. Must have been a BCC, I guess.<br><br>Q Does the E-mail look familiar to you? |

| DEPOSITION DESIGNATIONS | DEFENDANTS' OBJECTIONS | DEFENDANTS' COUNTER DESIGNATIONS |
|---|---|---|
| | | A Well, like I say, he talked to me over the phone about wanting to do this. So the E-mail per se is not that familiar, but -- |
| 162:22 - 163:22 | None | None |
| 216:3-217:1 | None | None |
| 220:7 - 221:2 | None | None |

DATED: December 8, 2008            HANSON BRIDGETT LLP


By: /s/ Paul B. Mello
    PAUL B. MELLO
    Attorneys for Defendants
    Arnold Schwarzenegger, et al.

DATED: December 8, 2008            EDMUND G. BROWN JR.
            Attorney General of the State of California


By: /s/ Kyle A. Lewis
    KYLE A. LEWIS
    Deputy Attorney General
    Attorneys for Defendants
    Arnold Schwarzenegger, et al.

- 12 -
DEFS.' OBJECTIONS AND COUNTER DESIGNATIONS TO REVISED PHASE II
DESIGNATIONS FOR JOHN MISENER (2:90-CV-00520 LKK JFM)(C01-1351 TEH)

1779671.1