MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 083887)
By: CAROL L. WOODWARD, DEPUTY (SBN 084197)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4746
Facsimile: (650) 363-4034
E-mail: cwoodward@co.sanmateo.ca.us

Attorneys for Intervenor
COUNTY OF SAN MATEO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.<br><br>Defendants. | Case No. CIV S-90-0520 LKK JFM P<br><br>THREE-JUDGE COURT |
| MARCIANO PLATA, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.<br><br>Defendants. | Case No. C01-1351 THE<br><br>THREE-JUDGE COURT<br><br>**DECLARATION OF SAN MATEO COUNTY SHERIFF GREG MUNKS FOR TRIAL**<br><br>**TRIAL: NOVEMBER 17, 2008** |

GREG MUNKS declares as follows:

1. I am the duly-elected Sheriff of San Mateo County. The following is within my personal knowledge and, if called as a witness, I could and would testify competently thereto. My

experience and training as the Sheriff of the County are as follows:

| | |
|---|---|
| January 8, 2007 to Present | **Sheriff of San Mateo County** |
| | Chief Law Enforcement Officer for County of San Mateo, elected June 6, 2006. As Sheriff, I oversee a large, full-service organization that provides law enforcement services to the unincorporated county areas as well as contract law enforcement services to municipalities and a three-county transit system. Beyond this, I provide security to county buildings and to the court system. In addition, as with most Sheriffs in the state, I operate all of the adult correctional facilities within the County. |
| 1993 to 2007 | **Undersheriff, San Mateo County Sheriff's Office** |
| | Second-in-Command of 600-person law enforcement agency. Assist in planning, organizing, directing, and reviewing the activities of the Sheriff's Office including patrol, investigations, corrections, civil and records management, search and rescue, bomb detection and disposal, narcotics enforcement, internal affairs, personnel and training, and fiscal management. Assist in the preparation and oversight of a $100 million annual operating budget. Act as Sheriff in his absence. |
| 1990 to 1993 | **Human Resources Manager, City of Palo Alto** |
| | Responsible for various human resources functions including Training and Development, Recruitment, Labor Relations, etc. |
| 1981 to 1990 | **Promoted through the ranks to Lieutenant, Palo Alto Police Department** |
| | Assignments included: Patrol Officer, Field Training Officer, Burglary Suppression Detective, Robbery/Homicide Investigator, Manager of Crime Prevention Division, Patrol Watch Commander, Manager of Personnel and Training Division, Commander of Field Training Officer Program, Commander of Hostage Negotiations Team, Commander of Public Information Officer Unit, Liaison to Human Relations Commission, Member of Management Negotiations Team during contract negotiations with both Police and Fire Unions. |
| 1977 to 1981 | **Deputy Sheriff, San Mateo County Sheriff's Office** |
| | Assignments included Main Jail, Honor Camp, and Manpower Pool |
| 1975 to 1977 | **Reserve Police Officer, Palo Alto Police Department** |

2. San Mateo County Sheriff's Office and the County's criminal justice system, and ultimately local public safety would be adversely impacted by a prisoner release order. The following are facts, opinions, assumptions, and conclusions related to the impact and effect a prisoner release order would have on the San Mateo County Sheriff's Office, the County's criminal justice system, including our overcrowded detention system, and public safety.

3. Releasing prison inmates before their sentences have been completed will negatively impact our overall criminal justice system in San Mateo County. Currently, California's recidivism rate is at 70 percent, the nation's highest. In San Mateo County, we do not have an information management system that calculates local recidivism. However, based on a snapshot of those inmates re-booked with old identification numbers from our database system between March 2008 and May 2008, we calculated a local recidivism rate of 68.3 % (Intervenor San Mateo County (hereinafter referred to as "SMC") Exhibit A).

4. Recent parole realignment discussions assumed 70,000 early releases from the state's incarceration population. Using the figure of 1.5% of California prison inmates that come from San Mateo County, approximately 1,050 of the 70,000 would return to San Mateo County. Based on a conservative recidivism rate of 65% for my county, I can make an approximation that 682 of those 1,050 state early released prisoners would re-offend in a short period of time. It is my opinion, based on my law enforcement experience, that this potential and significant number of felons recommitting crimes in my community would strain the Sheriff's Office limited resources in protecting the public from serious law violators and thus create an adverse impact on public safety.

5. The last three years, San Mateo County law enforcement agencies arrested and booked into the county jail more than 450 state parolees yearly (SMC Exhibit B). Adding another potential 682 parolees that can be expected to re-offend in our communities is not only a public safety threat, but also it will severely strain all functions of our local criminal justice systems.

6. San Mateo County currently has a chronic and severe overcrowding crisis in its correctional system. It is strained beyond its functional and state rated capacity. If the state releases inmates early, the inmate population at my detention facilities will increase, further exacerbating our overcrowded jail crisis. The San Mateo County Sheriff's Office currently operates two Type II detention facilities – the Maguire Correctional Facility (MCF) and the Women's Correctional Center (WCC)). The Sheriff's Office also operates two Type III facilities – the male Minimum Security Facility (MSTF) and

the Men's Weekender Facility (MSTF). The rated capacity as established by the California Standards Authority (CSA) of the California Department of Corrections and Rehabilitation (CDCR) is 834 beds for all facilities. In 2007, the San Mateo County detention system had an average daily population (ADP) of approximately 1,200 inmates. This means that on an average, San Mateo County detention facilities were operating at 143% of rated capacity in total. The male facilities operated at 141% of CSA rated capacity and the female facility operated at 171% of CSA rated capacity.

7. The San Mateo County detention facilities operational capacity will also be adversely impacted by a prisoner release order. Best practices recommend that an allowance be made within the facilities rated capacity for inmate classification, population peaking, and maintenance. If a conservative allowance for these factors of 5% for males and 10% for females is applied to the rated capacity, the total population was 152% of the recommended operational capacity and the male and female factors were 148% and 180% respectively of recommended operational capacity. Any further inmate population increase will only exacerbate the County's jail-overcrowding crisis and exponentially increase the risk of assaults and serious injuries to the incarcerated inmates and to my staff that work within these detention facilities.

8. The San Mateo County Sheriff's Office has an inmate classification system for its detention population to insure inmates are lawfully housed in a safe environment. For example, state sentenced inmates are separated from inmates awaiting prosecution; mentally ill inmates are separated from gang members; inmates charged with crimes against children are separated from the general inmate population, etc. With overcrowding and additional increases in the detention population, the potential for misclassifying an inmate increases and those mistakes could cause serious unsafe situations for inmates and staff.

9. As a result of the severe overcrowding, the County's detention facilities are very limited as to areas where we can house additional inmates that need special housing arrangements. The increasing gang population in our County has compounded this issue. If the Court were to order state prisoners released into our community, we would expect some of these released inmates that re-offend to be gang members. If rival gang members are incarcerated in the same housing unit, they have the tendency to fight and attack each other. Therefore, rival gang members need to be in separate housing units within the facility. However, we also cannot allow a concentrated number of gang members from the same gang in the same housing unit because they have a tendency to take over, attempt to control and/or influence other inmates, causing unsafe conditions for inmates and staff. The overcrowding of the detention facilities makes this task of separating gang members more difficult and potentially

compromises my abilities and obligation to provide a safe correctional environment for inmates, staff, and the community.

10. As stated in this declaration, a prisoner release order would increase inmate population at all my detention facilities. Even with an overcrowding crisis in my detention facilities, as Sheriff of San Mateo County, it is my duty to protect public safety by finding any available space in my jails to insure inmates that are too dangerous to be in the communities awaiting their trials are not released until ordered by the courts. Therefore, I must convert any available jail space to housing units, even though the space was not intended for that use. The past few years, MCF's housing unit program rooms that were originally designed as classrooms have been modified with beds and converted into temporary housing units. These program rooms where we are forced to set up overflow beds do not have toilets and sinks. By state mandates and laws, these spaces cannot be locked which compromises the safety and security concern, especially when there are too many gang members in the facility. Additionally, by converting these program rooms to housing units, it limits our ability to conduct rehabilitation and re-entry programs, such as Choices, Project Read, GED, Alcoholics Anonymous, Domestic Violence Program, Narcotics Anonymous, etc., that are so vital and effective in preventing recidivism.

11. San Mateo County is continually designing and supporting programs that can serve as alternatives to incarceration. Alternative sentencing can relieve overcrowding in our detention facilities and assist in lower the recidivism rate.. Approximately 50% of the criminal offenders in this county, who are sentenced to county jail, will serve their time outside MCF in an alternative and/or reentry program. A prisoner release order could adversely impact these programs that are limited in the number of sentenced inmates they can serve. The following is a list and brief description of our alternative sentencing programs:

- The "First Chance" Program – In 2007, 3,261 offenders were arrested for non-violent public intoxication offenses and driving under the influence are taken to an alternative facility and not booked into MCF.
- Cite and Release Program – Local law enforcement agencies' polices to issue field citations to appear in court and allow immediate release to offenders for minor offenses. These offenders are not booked into MCF,
- Sheriff's "Release Own Recognizance" Program – Arrested and booked offenders who qualified can be release on a promise to appear citation, prior to their arraignment and without posting bail.
- "Bridges" Intensive Day Treatment Program – Inmates' sentences are modified to

an intensive day treatment program where they receive education and treatment for chemical addictions, employment, and cognitive training.

- "Pathways" Mental Health Program – Program for inmates with a history of mental illnesses who are eligible for release on probation. The treatment program is designed to reintroduce inmates back into society with treatment for their mental illnesses, along with intensive supervision.

- Electronic Monitoring Program - In appropriate cases, judicial officers have discretion to order electronic monitoring at the pretrial stages and as an alternative to incarceration for sentenced inmates.

- Sheriff's Work Program (SWP) – Approximately 450 inmates report to SWP each day in lieu of being incarcerated. These inmates report to the alternative sentencing bureau to perform community work for municipal and private non-profit agencies. At the end of the day, the inmate return home to sleep, thus freeing up jail beds.

- Sheriff's Work Furlough Program – This program allows sentenced inmates who have employment to continue with their jobs during the day and then come back into custody at night. This program is also allows qualified inmates to receive off-site vocational training during business hours and then return to a detention facility at night.

- Re-entry Programs – San Mateo County provides re-entry planning and rehabilitation programs to jail inmates prior to the end of their incarceration. It is a collaborative approach, involving rehabilitation service providers and the Probation Department, to identify and arrange for qualified sentenced inmates into community based rehabilitation services.

Most CDCR early released inmates would not be eligible for the current County alternative sentences, due to their criminal history, classification, and status. However, in order to control further overcrowding in our detention facilities, the Sheriff's Office will be placed in a position to consider other county inmates for alternative sentencing that would not normally qualify because of their risk to public safety. In other words, a prisoner release order will increase our detention population and the measures we employ to reduce overcrowding in our detention facilities may adversely impact public safety.

12. Conversely, our current and highly successful re-entry program would be adversely impacted by a prisoner release order. For example, CDCR's parolees would be the first to get the community based treatment beds before county inmates, because they are funded at a higher rate by the State. This will result in fewer community based treatment bed for county inmates. Our county inmates

DECLARATION OF SAN MATEO COUNTY SHERIFF GREG MUNKS FOR TRIAL

will remain in custody longer, causing further clogging in our rehabilitation efforts.

13.  If the state separately places a cap on its incarcerated population and would not allow any new intakes at the state CDCR's facilities, our jail population would be further backlogged, and we would incur further classification risks for our inmate population. In fact, any slowdown in the intake of inmates from the county to the state system would create a backlog in my jails, anywhere from 30-35 inmates compounded weekly. Each week San Mateo County sends approximately 15-17 new commitments to CDCR. In addition, we have approximately the same number (15-17) of parole violators, which are picked-up by CDCR transportation (SMC Exhibit C). Earlier this year, CDC San Quentin was placed on a lock down due to an illness breakout. Within less than two weeks, we had a backlog list of 40 inmates waiting to be transported to San Quentin, approximately 50% were new commitments, and the other half was parole violators. While we waited for CDCR's reception center to reopen, my detention facilities had to house those inmates, which only worsened the overcrowded conditions.

14.  If the Court orders CDCR to stop taking parole violators, the San Mateo County Sheriff's Office detention facilities would potentially experience more assaults on staff and the necessity for more keep away orders, thus giving even us less flexibility in housing additional inmates. CDCR inmates have been convicted of felonies, which often are related to violence. These inmates have higher risk factors in their classification and having them serve their parole violation time in county jails posses an undue threat to staff, visitors, and other inmates.

15.  A prisoner release order would adversely impact the County and Sheriff's Office budgets. Currently, the San Mateo County Sheriff's Office annual budget is approximately $150 million. Approximately 60 percent of the annual budget is allocated to operating our jails and re-entry programs. Our local average cost per inmate, per day is $110.00. Because of our housing arrangements, the cost for staff is based on a fixed ratio of staff to inmate. Meals and medical care are averaged, as some inmates require more medical treatment while others do not.

16.  If San Mateo County were forced to rent additional bed space to house our jail population, it would cost us $110 per day, per inmate, not including transportation that would be necessary for court and other appointments and appearances, or transportation back to San Mateo County for release. Thus, adding an additional 200 inmates into our local correctional system ($110 per day per inmate) would cost San Mateo County approximately $9 million annually.

17.  A long-term increase to our overall jail population, due to a prisoner release order, would require San Mateo County to construct a new correctional facility to accommodate the increase. We are

currently in the process of planning and designing to construct a new 648 bed correctional facility to handle our <u>current</u> overcrowded jail population. This new facility has not planned any significant increases in jail population due to a state prisoner release order or state caps on its incarcerated population. It is estimated that a new correctional facility to meet San Mateo County's current jail population needs will cost approximately $130 million to construct and approximately $40 million annually to operate (SMC Exhibit D). Even with a new facility, an additional increase in the <u>current</u> jail population will once again cause overcrowding conditions. The overcrowding will continue to pose an undue threat to the safety of staff, visitors, and inmates, as well as a financial burden to our County budget.

18. I have personally discussed the state's prisoner release proposal with the San Mateo County police chiefs and the San Mateo County District Attorney. I believe there is a consensus with this law enforcement group that a release of a significant number of inmates from the state's correctional system would have an adverse impact on police safety in San Mateo County.

19. My staff strives to perform at their highest level of efficiency and professionalism at all times, even as the burden of overcrowding threatens us daily. However, as I have declared in this document, my detention facilities do not have room for additional inmates that would likely come from a prisoner release order. Our daily detention population is already stretching our operational limits, which endangers my staff and the safety of the inmates. Moreover, I believe it is my responsibility to offer programming and opportunities that have proven successful in reducing recidivism and in assisting inmates to make a better life for them upon release from custody. Overcrowding decreases and sometimes precludes my ability to offer these programs and opportunities.

20. The county's jail system is an integral part of the criminal justice system that provides an element of public safety to our local communities. A well-functioning criminal justice system is critical to public safety, and if any part of that system is not working properly, it will have a negative impact on public safety. Jail is one of the necessary options for judges to consider when sentencing people for the crimes they have committed. Jail is also a necessary function for law enforcement when it comes to taking dangerous criminals off the street. If the jail is at or over its rate capacity, it limits those options for both law enforcement and the judiciary when making decisions about those aspects of the criminal justice system. If our county detention facilities reach maximum inmate capacity, then I would have to, as the Sheriff of San Mateo County, start releasing sentenced inmates before they have completed their court ordered sentence. County inmates released early will not be given the opportunity to finish one of the rehabilitation programs our detention system offers and/or enter into a reentry program. Without

these opportunities to better oneself and learn important life skills, I believe it is almost a certainty that the early released inmate will commit a new crime.

21. As Sheriff of San Mateo County and based on my more than thirty years of law enforcement experience, it is my professional opinion that releasing inmates into the community prior to completing their sentences would only shift the problems the CDCR is currently experiencing to the local level, which will adversely impact the County's criminal justice systems and public safety. I conclude with my opinion that any significant release of state prisoners, due to a prisoner release order, will have an adverse impact on my Sheriff's Office detention system, which will in turn have and adverse impact on the entire San Mateo County's criminal justice system, ultimately adversely affecting public safety.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Redwood City, California, on October 29, 2008.

GREG MUNKS

L:\LITIGATE\C_CASES\Coleman\TRIAL\Decl. Sheriff for trial.doc