County Manager's Office



# COUNTY OF SAN MATEO

COUNTY GOVERNMENT CENTER • REDWOOD CITY • CALIFORNIA 94063-1662
WEB PAGE ADDRESS:http://www.co.sanmateo.ca.us

BOARD OF SUPERVISORS
MARK CHURCH
JERRY HILL
RICHARD S. GORDON
ROSE JACOBS GIBSON
ADRIENNE TISSIER

JOHN L. MALTBIE
COUNTY MANAGER
CLERK OF THE BOARD

(650) 363-4123
FAX: (650) 363-1916

August 15, 2008

Ms. Carol Woodward
Deputy County Counsel
County of San Mateo
Hall of Justice
400 County Center
Redwood City, CA 94063

Re: Coleman-Plata Federal Lawsuit

Dear Ms. Woodward:

I write to provide you with my opinions about the above-captioned matters pending before the Three-Judge Panel in Federal Court. In preparing the following remarks, I rely on my over 29 years of experience in local government, the last 18 months in my capacity as the Assistant County Manager for San Mateo County, my education including a Master of Public Administration degree from Harvard University, and a reasonably in depth knowledge of the criminal justice system in California learned in part from having read and considered the following publications.

- Detention Facilities Needs Assessment & Master Plan, County of San Mateo and Huskey & Associates, February 25, 2008
- California Corrections Reform: State/Local Partnerships, Stanford Law School, June 8, 2007
- The Role of the Judiciary in Shaping Sentencing Law and Policy, Stanford Law School, November 2007
- San Mateo County Housing Needs Study, Economic & Planning Systems, Inc., July 2007
- Strategic Directions 2010, County of San Mateo Human Services Agency Alcohol and Other Drug Services, June 2006
- Roadmap for Alcohol, Tobacco and Other Drug Prevention: A Guide for Community Action, San Mateo County Board of Supervisors
- The Challenge of Treating Forensic Dual Diagnosis Clients: Comment on "Integrated Treatment for Jail Recidivists with Co-occurring Psychiatric and Substance Use Disorders, Robert E. Drake, Ph.D., Joseph P. Morrissey Ph.D. and Kim T. Mueser, Ph.D., Community Mental Health Journal, August 2006

D.I. 224

- Coordination at the Front-End of Sentencing: The Judiciary, Probation, and the Pre-Sentence Report, Stanford Law School, March 7, 2008
- From Cellblocks to Classrooms: Reforming Inmate Education to Improve Public Safety, Legislative Analyst's Office, February 2008
- Addressing Addiction: Improving & Integrating California's Substance Abuse Treatment System, Little Hoover Commission, March 2008
- Crime, Corrections, and California: What Does Immigration Have to Do with It?, Kristin F. Butcher and Anne Morrison Piehl, California Counties, February 2008
- Changing the Focus of Corrections, California Counties, September/October 2007
- Prison Reforms: Achieving Results, State of California, Department of Corrections and Rehabilitation, April 2008
- Criminal Justice Information Sharing: Enhancing Early Intervention, Measuring Results, Stanford Law School, December 2007
- Adult Correctional System Master Plan-Phase I, Napa County, November 13, 2007
- Inmates Services & Case Management for Re-Entry, San Mateo County Sheriff's Office, June 6, 2006
- San Mateo County Crime and Justice System Indicators Comparison with Six Bay Area Counties and Statewide, San Mateo County Jail Crowding Task Force, October 14, 2004
- San Mateo County Sheriff's Facilities Master Plan, Hellmuth, Obata & Kassabaum, Inc.; Omni Group, Inc.; Williams-Kuebelbeck & Associates, Inc., September 19, 1991
- A Roadmap for Effective Offender Programming in California, California Department of Corrections and Rehabilitation, June 29, 2007
- Attitudes of US Voters toward Prisoner Rehabilitation and Reentry Policies, Barry Krisberg, Ph.D., Susan Marchionna, National Council on Crime and Delinquency, April 2006
- Task Force on California Prison Crowding, National Council on Crime and Delinquency, August 2006
- Reconsidering Incarceration: New Directions for Reducing Crime, Don Stemen, Director, Center on Sentencing and Corrections, January 2007
- Understanding California Corrections, Joan Petersilia, California Policy Research Center, May 2006
- Who's in Prison? The Changing Demographics of Incarceration, Amanda Bailey and Joseph M. Hayes, August 2006
- Governor's Prison Overcrowding Package Is More Balanced But Too Big, Legislative Analyst's Office, April 12, 2007
- California's Criminal Justice System, Elizabeth G. Hill, Legislative Analyst's Office, January 2007
- Analyzing U.S. Prison Growth, Mike Males, Ph.D., Center on Juvenile & Criminal Justice, July 2007
- California Juvenile Justice Reentry Partnership Aims to Improve Outcomes for Youth, California Juvenile Justice Reentry Partnership, May 21, 2007
- California Corrections Reform: State/Local Partnerships, Stanford Law School, June 8, 2007

2

- Phase I: Survey of Interventions and Programs, Juvenile Justice Data Project, April 2007
- Helping Mentally Ill Criminals, Donna Lyons, April 2007
- Mentally Ill Offender Crime Reduction Grant Program, Department of Corrections and Rehabilitation Corrections Standards Authority, November 6, 2006
- The State Has Inadequately Maintained Its Major Investment in Prison Infrastructure, Legislative Analyst's Office, February 21, 2007
- Evidence-Based Public Policy Options to Reduce Future Prison Construction, Criminal Justice Costs, and Crime Rates, Washington State Institute for Public Policy, October 2006
- Gender-Responsive Strategies for Women Offenders, U.S. Department of Justice, May 2006
- Reforming Corrections and Promoting Reentry Policy Statement, Volunteers of America, November 9, 2007
- Forecasting: Fiction and Utility In Jail Construction Planning, Allen R. Beck, Ph.D., 1996
- Evidence-Based Practice to Reduce Recidivism: Implications for State Judiciaries, Roger K. Warren, June 5, 2007
- Community Reentry Programs: Their Impacts on Offenders and Recidivism Rates, Tony M. Wilkes, Site Administrator, Davidson County Sheriff's Office, Nashville Tennessee, 2007
- Controlling Inmate Population Size: A Case Study of 20 Years of Success, Marily Chandler Ford, Assistant Director, Volusia County Department of Corrections, Daytona Beach, Florida, March 2007
- An Overview of NIC's Transition from Prison to the Community Initiative, Peggy B. Burke, Center for Effective Public Policy, Silver Spring, Maryland, 2007
- Avoiding The Expense of Constructing Unnecessary Jail Capacity, Allen R. Beck, Ph.D., 1999
- Corrections reform, Sonoma County style, Jennifer M. Murray, Sonoma County Deputy Administrator, California Counties, September 2007
- One in 100: Behind Bars in America, The Pew Center on the States, February 2008
- Sedgwick County Day Reporting Center Helps Alleviate Jail Overcrowding and Targets Recidivism, Behavioral Interventions, October 2007
- San Mateo County Human Services Agency Strategic Plan 2008-1013, San Mateo County Human Services Agency, February 27, 2008
- Assessment of the Impact of Prison Population Reductions on Counties and Public Safety, James Austin, Ph.D., The JFA Institute, Jeff Beard, Ph.D., Pennsylvania Department of Corrections
- Solving California's Corrections Crisis: Time Is Running Out, Executive Summary, Little Hoover Commission, January 2007
- Governor Unveils Comprehensive Prison Reform, Office of the Governor, December 21, 2006
- San Diego Community Prison to Reentry Program: A State County Collaborative, University of California San Diego
- Dispelling the Myths about Information Sharing Between the Mental Health and Criminal Justice Systems, John Petrila, JD, U.M., February 2007

- From Words to Deeds: Changing the Paradigm for Criminal Justice and Mental Health, California State Sheriff's Association Education Foundation, June 29, 2007
- Recommended Budget, San Mateo County, July 1, 2008-June 30, 2009
- 2008 Community Assessment: Health and Quality of Life in San Mateo County, Health Department, March 2008

In addition, I served as the Counties' Intervenor representative to the Settlement Discussion Group that worked with the Settlement Referee and Consultant for six months to craft a consensus document to be presented to the Panel. These efforts were a significant and substantial effort to avoid a Court-ordered prisoner release. The last working draft version of the memorandum of understanding (MOU) that was provided to the Court reflects a set of alternative solutions that would address the pervasive overcrowding and result in a transformation of the criminal justice and corrections system. The MOU was structured to cover the essential elements in terms of startup and continuing appropriations and necessary State legislation, and included a combination of local diversion strategies, improved parole capacity and changes to the credits system for inmates. Moreover and importantly, rather than continue the dysfunctional relationship between State and county corrections, the draft MOU incorporated the Community-Based Punishment Act of 1994 that received broad legislative and criminal justice community support but was never funded and implemented.

Finally, a number of the comments that follow are a reflection of and embody the policy positions that the California State Association of Counties (CSAC) and affiliated local government associations have consistently expressed to the Governor and Legislature.

OPENING REMARKS
Preserving public safety is of paramount importance to communities and officials throughout the state. The State and its counties must work more collaboratively as partners in the criminal justice and corrections system to address the inextricably linked challenges of recidivism and facility overcrowding. Treatment programs and rehabilitative services must be adequately funded to enable the State and counties to accomplish their shared criminal justice functions and to ensure successful outcomes for offenders. It is abundantly and increasingly clear that additional financial support is a prerequisite and must be in the form of a new, dedicated and sustained funding source rather than a redirection of existing resources or a downward shifting of responsibilities.

The County of San Mateo joined as an Intervenor to participate in the lawsuits with the express purpose of avoiding a massive prisoner release order that would have dire consequences for all of California's counties. We expect that such an order would result in increased crime, an overwhelmed probation and parole service, an exacerbation of our already overcrowded jails, increased rates of recidivism, overloaded court dockets and significant adverse impacts on our ability to provide health, mental health and alcohol and drug addiction services. Effectively, such an action by the Court would serve to give the State carte blanche to devolve its problem to the counties without a corresponding obligation to compensate or the ability of counties to absorb the financial consequences.

BUDGET CHALLENGES
Many California cities and counties are on the verge of financial calamity as they struggle to balance budgets in the face of existing demands and increasing pressure to provide more services with less revenue. Counties are especially challenged in light of the State's budget impasse, the likelihood of further State funding takeaways and the nature of the safety net services they are committed to provide to our most vulnerable residents. An influx of released prisoners with complex and expensive needs will force further difficult decisions regarding which population to serve: those residents who have service needs prior to any release or recently released parolees who have either not received treatment while incarcerated or will otherwise face a lapse in treatment. Any reasonable discussion about early release or a prison population cap cannot be undertaken without also acknowledging and addressing the likely release of elderly and sick inmates who require two or three times greater costs to incarcerate and treat. With a significant influx of inmates to counties, more resources would be diverted to accommodating these former inmates into our communities and safety nets—rather than positive efforts directed toward committing resources at the front end of corrections reform in prevention-oriented services.

San Mateo County has been dealing with a structural budget deficit, wherein costs of operations continue to outstrip and outpace revenues, for several years. The Board of Supervisors has adopted a five-year plan to restore the County Budget to balance, in order to close a projected $92 million shortfall. All departments, including criminal justice and health, are fully engaged in the process of improving revenues and decreasing expenditures. And, this is occurring both during this time of great fiscal uncertainty with respect to the State Budget and in light of the potential for further cutbacks in funding and increased demand for services in a soft economy. The latest estimate is that the County could suffer an additional cut of $23 million in State funding.

Any actions that require local governments to divert, house, incarcerate, or treat State prisoners must be accompanied by sufficient and sustained appropriations. Initially, upfront funding is required to create the community capacity necessary to provide the services required. The reality is that counties are not adequately prepared to provide the services that will be needed and this potential influx of released prisoners will have a serious, significant and unavoidable adverse ripple effect upon this County's service delivery system.

COUNTY SERVICES IMPACTED
Given the current overcrowding circumstances in prison, inmates clearly may not have had sufficient access to needed services. If significant numbers of prison inmates are released into our communities—communities that in many cases are already ill equipped to deal with existing service demands—numerous counties' programs and services will be stretched beyond the breaking point.

Past research has suggested the correlation between poverty and crime (*Who's in Prison? The Changing Demographics of Incarceration*. Public Policy Institute of California, August 2006). It is also well documented that 80% of inmates suffer from some degree of alcohol and/or drug addiction and that 16% suffer from mental illness. It is natural to assume, that if the Three-Judge Panel orders a prison population cap, the State has not

5

been able to provide the needed treatment and mental health services to all inmates. So, how many parolees (assuming all inmates released early would be placed on some level of parole supervision) do we suspect might require mental health treatment, at what cost and borne by whom? Furthermore, many county jails like San Mateo's are structured such that county mental health departments fund and provide mental health services to inmates in county jails. A release with a population cap will presumably impose a freeze on the transfer of county inmates to state prison, requiring county mental health departments to provide care to a growing number of inmates who are awaiting transfer to state prison as well as their routine county jail patient population.

Another point that should not be overlooked is the importance of providing a continuum of care to individuals in need of mental health treatment. A prison population cap would create an obstacle to providing that continuum by having an influx of additional residents into a county system already challenged to meet the needs of its current residents. Some, if not all, of these inmates and parolees would undoubtedly have a lapse in treatment. If parolees are unable to maintain and sustain themselves, they will be unable to maintain housing and unable to contribute to their family's livelihood; thus, some will seek aid from the counties' general funds for financial assistance and social services. To prevent adverse impacts on critical services for non-criminal justice clients, treatment capacity must be increased and separately funded in advance of any increased demand.

The Panel must be cognizant of the impact on local communities' existing treatment capacity (e.g., health, mental health, drug and alcohol treatment, vocational services, sex offender treatment, probation, courts, public defender) if major new demands for services result. Specialized, community-based and county provided services are likely to be quickly overtaxed. Counties throughout California provide numerous essential services to many underserved residents. Currently, however, demand for such county services exceeds available capacity. There are substantial waiting lists for services—services that many state prison inmates will require were they to return to our communities.

San Mateo County has estimated, based on a 2-3% share of the potential release of 40,000 State prisoners, that the annual cost of services for this hypothetical population of 1,000 former inmates would be $21 million, not including costs associated with either job/vocational training or housing. Increased crime, due to the early (premature, in some cases) release of State prisoners and/or the inability of parole or probation to effectively monitor significantly increased numbers will seriously affect a number of services within and in support of the criminal justice system of San Mateo County. For example, the County conducts several evidence-based programs as alternatives to jail incarceration or prison sentences. These programs are already oversubscribed. If additional persons with similar needs for substance abuse and mental health treatment were released into the San Mateo County community, we believe these programs would be overwhelmed and unable to function successfully; ultimately, and ironically, causing an increase in the number of persons going to State prison from this County.

JAIL OVERCROWDING
Without a doubt, a prisoner release order will increase local crime due, in part, to the inability of parole and probation officers to effectively monitor increased numbers of parolees. An increased number of inmates being booked into the County's jail, combined

with a refusal to accept inmates sentenced to State prison because of a population cap, will exacerbate San Mateo County's well-documented overcrowded jail condition; thereby, further inhibiting efforts to provide services and treatment to those while incarcerated, with resultant increases in recidivism and reentry or recycling back into the criminal justice system, and corresponding workload impacts on the courts, district attorneys, public defenders, correctional health and probation.

While San Mateo County does not currently face a population cap like 33 other counties, it does have a serious problem with jails that are crowded and lack space for effective reentry programs. (The County unsuccessfully applied for State funding under AB900 to construct a 648-bed, $140 million medium security facility.) Even if the State funds an expanded and improved parole capability, the likelihood is that some significant percentage of former prisoners will reoffend and add to the overcrowding local jails. In addition, much of the effort currently invested in addressing local jail and reentry challenges and systemic reform will be diverted to dealing with this imminent crisis.

## SUMMARY

San Mateo County has invested its time and resources in an effort to assist the State and the Three-Judge Panel in finding an acceptable solution to the State's prison overcrowding problem that will not adversely impact public safety in our community. I personally have spent countless hours as the Counties' Intervenor representative on the Settlement Discussion Group exploring ways to effectively reduce the prison population by applying proven, evidence-based approaches. I remained hopeful up until the end that a consensus document was possible: A comprehensive package of systemic reforms with sufficient funding that included improved prerelease risk and needs assessment, treatment and life skills planning, increased mental health services and parole oversight, a continuum of community-based treatment, stable housing and work readiness programs, and the other required services that can be better provided in a community rather than an institutional setting.

The threat of a prison release order forced the various and oft-competing interests to the table. Turning tens of thousands of inmates loose into our communities without sufficient resources to support the multiple service delivery systems that will be impacted will have a disastrous result. Whereas, the alternative approach of investing in proven rehabilitation programs and graduated sanctions earlier in the process can staunch the flow through the revolving door to state prison and contribute positively to safer communities.

Respectfully,

David S. Boesch Jr.
Assistant County Manager
San Mateo County