# EXHIBIT R

EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST - 183792
Senior Assistant Attorney General
JONATHAN L. WOLFF - 193479
Supervising Deputy Attorney General
LISA A. TILLMAN - 126424
Deputy Attorney General
KYLE A. LEWIS - 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5677
Facsimile: (415) 703-5843
kyle.lewis@doj.ca.gov

Attorneys for Defendants

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

## UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

### AND THE NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

### PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | No.  2:90-CV-00520 LKK JFM P <br><br> **THREE-JUDGE COURT** |
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | No. C-01-1351 TEH <br><br> **THREE-JUDGE COURT** <br><br> **DEFENDANT CATE'S SUPPLEMENTAL RESPONSES TO PLAINTIFF PLATA'S FIRST SET OF INTERROGATORIES TO FORMER DEFENDANT TILTON** |

1 | **PROPOUNDING PARTIES:**     Plaintiffs Marciano Plata, *et al*.

2 | **RESPONDING PARTY:**     Defendant Secretary of the California Department of

3 | Corrections and Rehabilitation

4 | **SET NUMBER:**     One

5 | **INTRODUCTION AND DEFINITIONS**

6 |     In construing these discovery responses, the following definitions shall apply:

7 |     1.     "PLAINTIFFS" shall mean class representatives Marciano Plata, et. al., the

8 | named PLAINTIFFS in the action *Plata v. Schwarzenegger*, Case No. C 01 1351 TEH

9 | (N.D. Cal.) (*Plata*).

10 |     2.     "DEFENDANT" shall mean Matthew Cate, a named defendant in *Plata*, in

11 | his official capacity on behalf of the California Department of Corrections and

12 | Rehabilitation.

13 |     3.     "DEFENDANTS" shall mean each of the named DEFENDANTS in the

14 | *Plata* action.

15 |     4.     "PROCEEDING" shall mean the three-judge panel proceeding convened

16 | under 28 U.S.C. Section 2284 in the cases of *Coleman v. Schwarzenegger*, Case No.

17 | 90-0520 LKK JFM (E.D. Cal.) (*Coleman*) and *Plata*.

18 |     5.     DEFENDANTS have not completed their investigation of the facts relating

19 | to this case, have not completed their discovery in this action, and have not completed

20 | their preparation for trial.  To the extent that DEFENDANTS learn that in some material

21 | respect that a response below is in any way incomplete or incorrect, and if the additional

22 | or corrective information has not otherwise been made known to PLAINTIFFS during the

23 | discovery process or in writing, DEFENDANTS will supplement or correct the response,

24 | as required by the Federal Rules of Civil Procedure.

25 | **GENERAL OBJECTIONS**

26 |     1.     DEFENDANT objects to Plaintiffs' definition of a California Department of

27 | Corrections and Rehabilitation (CDCR) prison and a "prison" to include those housing

28 | units within the Department of Mental Health (DMH) facilities that house CDCR

- 1 -

1   prisoners. That Definition mischaracterizes the role of DMH as a provider of housing for

2   incarcerated inmates. DMH's true role is defined by California Penal Code section 2684

3   as a provider of inpatient mental health treatment to CDCR inmate-patients. Further,

4   that definition erroneously assumes the Governor's Emergency Proclamation of October

5   4, 2006 addressed DMH as a provider of housing for incarcerated inmates.

6   DEFENDANT will interpret the terms "CDCR prison" and "prison" for the purposes of this

7   request to mean those prisons within the jurisdiction of the California Department of

8   Corrections and Rehabilitation, pursuant to California Penal Code section 5054. Further,

9   DEFENDANTS object to Plaintiffs' definition of a CDCR prison to include "any planned

10  redesigns of, construction to, or renovations of such facilities, and any new such facilities

11  contemplated by AB 900" as an inaccurate statement of the scope of AB 900, vague,

12  and calling for speculation.

13      2.      DEFENDANT objects that the discovery seeks information that is neither

14  relevant to PLAINTIFFS' claims in this PROCEEDING nor reasonably calculated to lead

15  to the discovery of admissible evidence.

16      3.      DEFENDANT objects that the discovery seeks information equally

17  available to PLAINTIFFS, and is thus overbroad and unduly burdensome. In

18  accordance with the *Coleman* and *Plata* remedial orders, PLAINTIFFS receive monthly

19  document productions and other discovery from DEFENDANT and the Receiver

20  appointed in *Plata*.

21      4.      Given the shortened time for DEFENDANT'S responses to this discovery,

22  DEFENDANT hereby reserves the right to supplement these responses at a later date,

23  including after the issuance and/or receipt of expert reports and witness declarations in

24  this matter.

25      5.      DEFENDANT objects to the interrogatories to the extent that they seek

26  information available to PLAINTIFFS through public sources or records, and on the

27  grounds that they subject DEFENDANT to unreasonable and undue annoyance,

28  oppression, burden, and expense. DEFENDANT further objects to the interrogatories to

- 2 -

1  the extent that such interrogatories are unduly burdensome because much or all of the

2  information requested is in the possession of PLAINTIFFS, has been filed with the Court,

3  or is otherwise equally or more available to PLAINTIFFS than to DEFENDANT.

4       6.    DEFENDANT objects that the discovery seeks information outside of

5  DEFENDANT'S control. To the extent the discovery seeks information known only to the

6  Receiver appointed in *Plata,* PLAINTIFFS should direct said discovery to the Receiver

7  and not DEFENDANT.

8       7.    With regard to each interrogatory, DEFENDANT reserves the right,

9  notwithstanding these answers and responses, to employ at trial or in any pretrial

10 proceeding herein information subsequently obtained or discovered, information the

11 materiality of which is not presently ascertained, or information DEFENDANT does not

12 regard as coming within the scope of the interrogatories as DEFENDANT understands

13 them.

14      8.    These responses are made solely for the purpose of this action. Each

15 answer is subject to all objections to competence, relevance, materiality, propriety,

16 admissibility, privacy, privilege, and any and all other objections that would require

17 exclusion of any statement contained herein if any such Interrogatories were asked of, or

18 any statement contained herein were made by, a witness present and testifying in court,

19 all of which objections and grounds are reserved and may be interposed at the time of

20 trial.

21               **DEFENDANT CATE'S SUPPLEMENTAL RESPONSES**

22 **INTERROGATORY NO. 10:**

23       IDENTIFY each action, program, policy or procedure that YOU have adopted

24 since October 2006 that YOU contend will limit or reduce the number of *PLATA* CLASS

25 MEMBERS housed in CDCR PRISONS.

26 **PREVIOUS RESPONSE TO INTERROGATORY NO. 10:**

27       In addition to the General Objections stated above, which are incorporated herein,

28 DEFENDANTS object to this interrogatory on the grounds that it is vague and

- 3 -

1  ambiguous as to the terms "action," "program," "policy," "procedure," "limit," and
2  "reduce."  In addition, DEFENDANTS object to this interrogatory to the extent it seeks
3  information covered by the attorney-client privilege or work-product doctrine.  Finally,
4  DEFENDANTS object that this interrogatory seeks information directed at phase two
5  issues as bifurcated by this Court.  Subject to and without waiving the foregoing
6  objections, DEFENDANTS respond as follows:
7        The State is working on many fronts to reduce overcrowding in California's
8  Prisons.  The Governor and the Legislature recently approved a historic, bipartisan plan
9  to reduce prison overcrowding, increase rehabilitation programs, and provide more beds
10  for all inmates, including those requiring medical care.  Assembly Bill 900, signed in May
11  2007, creates a comprehensive plan to immediately relieve overcrowding by providing
12  for additional out-of-state inmate transfers (CDCR anticipates transferring 8,000 inmates
13  by March 2009, to date approximately 1,722 inmates have been transferred), as well as
14  the construction of 40,000 prison beds including much-needed medical beds, in addition
15  to approximately 13,000 new jail beds.  AB 900 also provides for new rehabilitation
16  programs and re-entry facilities to ease parolees' transition back into California
17  communities, thereby reducing recidivism, relieving prison overcrowding, and ensuring
18  public safety.  AB 900's comprehensive plan and CDCR's parole reforms effectively
19  address prison overcrowding without encouraging or causing the early release of
20  dangerous criminals.
21        The Governor also established two strike teams -- one for construction and
22  another for rehabilitation -- to expedite the implementation of AB 900's mandates,
23  including construction and the improvement of programs for rehabilitation, substance
24  abuse, education, and job training.  These strike teams will report to the Governor's
25  Cabinet to ensure that AB 900's reforms are successful and swift.  CDCR is also
26  immediately implementing administrative parole changes that reward successful
27  rehabilitation, which will further reduce overcrowding.  In short, the Governor is
28  committed not only to prison reform, but to the long-term management efforts that are

- 4 -

1   needed to ensure that the reforms are successful.

2          Phase I of AB 900 provides for 7,484 in-fill beds at existing enumerated prisons,

3   plus an additional 4,516 in-fill beds once site assessments have been done for other

4   facilities, for a total of 12,000 Phase I in-fill beds.  AB 900 specifies that the purpose of

5   the infill beds is to replace the non-traditional beds currently in use.  Phase I also

6   provides for 6,000 re-entry beds and 6,000 medical, dental, and mental health beds.

7   The construction of all Phase I beds will total 24,000 beds.  Phase II of AB 900 provides

8   for an additional 4,000 in-fill beds; 2,000 medical, dental, and mental health beds; and

9   10,000 re-entry beds. The construction of all Phase II beds will total 6,000 beds.

10  However, AB 900 specifies that funds for Phase II construction shall not be released

11  unless specific enumerated progress in construction, rehabilitation programs,

12  management planning, and parole review has been confirmed by a panel consisting of

13  the State Auditor, the Inspector General and an appointee of the Judicial Council of

14  California. AB 900 also provides for construction of approximately 13,000 county jail

15  beds.

16         AB 900 ties prison bed construction to rehabilitation, requiring that each new bed

17  have appropriate programming for inmates, including education, vocational programs,

18  substance abuse treatment programs, employment programs, and pre-release planning.

19  These programs will address overcrowding by reducing the recidivism rate.

20         AB 900 also requires CDCR to develop and implement, by January 15, 2008, a

21  plan to address management deficiencies within the department. Among other things,

22  the plan must address (1) filling vacancies in management positions, (2) improving

23  accountability, (3) standardizing processes to improve management, (4) improving

24  communications within the Department, and (5) developing and implementing more

25  comprehensive plans for management of the prison and parole populations.  AB 900

26  authorizes CDCR to contract with outside management experts to assist in identifying

27  and addressing deficiencies.

28         The management assessment and plan required by AB 900 is not Defendants'

- 5 -

1    only tool for addressing management and administrative concerns.  The Governor has

2    already established two expert strike teams – one for facilities and one for

3    rehabilitation –composed of numerous experts from universities, community

4    organizations, and state government to ensure that California's prisons are managed

5    effectively and that bed construction and rehabilitation programs are implemented

6    expeditiously.

7            The Facilities Construction Strike Team will restore CDCR's major project

8    management capability and will work to expedite in-fill, re-entry, medical/dental/mental-

9    health, and jail beds authorized by AB 900.  The Facilities Construction Strike Team will

10   (1) consider all available options for housing inmates and improving inmate housing, (2)

11   evaluate alternative construction methods, (3) work to overcome impediments to

12   expedited construction, and (4) work with local communities impacted by prison facilities.

13           At the same time, the Rehabilitation Strike Team will provide expertise on creating

14   and expediting the implementation of rehabilitation programs. Such programs are

15   integral to increasing successful community re-entry and reducing recidivism. The

16   Rehabilitation Strike Team will be responsible for (1) assessing existing CDCR

17   rehabilitation programs and space, (2) designing an integrated rehabilitation services

18   delivery plan for inmates and parolees which includes substance abuse treatment,

19   education, job training, counseling, and life skills, (3) developing a plan for inmate job

20   training, (4) quickly implementing inmate intake and prerelease needs assessment tools,

21   (5) developing incentives for program participation; (6) developing a plan to immediately

22   reduce the number of lockdown days so that inmates can participate in rehabilitative

23   programming; and (7) developing the $50 million in rehabilitation and treatment funds

24   that are authorized by AB 900.  The Rehabilitation Strike Team expects to reduce

25   recidivism by 10%, which would eliminate 8,100 prison returns in a single year.

26           The construction of 16,000 in-fill beds will provide additional capacity at existing

27   prisons in a way that ensures proper facilities, support, and services.  Creating in-fill

28   beds will not require the construction of new prisons; rather, there will be construction of

- 6 -

1   new facilities at existing prisons.  In-fill beds, like the out-of-state transfer of inmates, will

2   eliminate non-traditional beds and provide better care and services for inmates.

3       The Facilities Construction Strike Team will expedite construction. As required by

4   AB 900, these beds will be constructed to fully integrate rehabilitative programs into the

5   new facilities.  The Facilities Construction Strike Team will work to finish construction as

6   quickly as possible, but at a minimum it is expected that construction of the 12,000

7   Phase I in-fill beds will be completed in 2009.  As new in-fill beds are constructed, AB

8   900 mandates the reduction in a proportionate number of non-traditional beds until non-

9   traditional bed use is entirely eliminated.

10      AB 900 also provides for the creation of 16,000 re-entry beds. The focused of the

11  reentry beds is to provide rehabilitation services and prepare inmates for re-entry into

12  society.  These beds will be located in small, secured facilities (500 inmates maximum

13  per facility) operated by CDCR.  The facilities will be located close to established

14  communities to better serve their rehabilitative and re-entry mission.  The Facilities

15  Construction Strike Team will expedite the construction of 6,000 Phase I re-entry beds.

16      AB 900 states that a total of 8,000 medical/mental health beds will be created.

17  The Facilities Construction Strike Team will expedite construction of these beds to bring

18  them on line as soon as possible.  Defendants are coordinating construction of medical

19  and mental health beds coordination with the Receiver.

20      Parole reform strategies will also play a large role in the reduction of prison

21  overcrowding. In tandem with the implementation of AB 900, CDCR has launched a set

22  of parole changes to reward successful rehabilitation.  CDCR is actively pursuing

23  strategies to release parolees from their statutory parole periods as soon as is

24  appropriate and anticipates discharging between 2,000 and 4,000 additional parolees

25  from parole in the next twelve months.

26      By discharging more parolees from supervision, CDCR expects to experience a

27  reduction in the number of parolees returned to custody for various parole violations.

28  Further, CDCR implemented a risk and needs assessment tool in each of the 33

- 7 -

1    institutions: the Correctional Offender Management Profiling for Alternative Sanctions

2    (COMPAS).  The predictive validity of COMPAS in terms of its ability to effectively

3    identify key risk and needs factors in the parole population is currently being studied.

4    Additionally, CDCR has undertaken extensive research into the use and effectiveness of

5    a parole-violation decision-making matrix.  This tool has been shown to improve

6    organizational decision-making consistency, as well as help to establish a culture of

7    determining sanctions based on policy driven rationale and then tailoring the sanction to

8    the specific risk and needs of the parolee.  When supported by evidence-based

9    programs, such as COMPAS, this type of matrix has been proven to play a meaningful

10   role in the overall reduction of recidivism rates among the parolee population.  CDCR

11   anticipates that a decision-making matrix will be ready for a pilot deployment by the end

12   of 2007.  Once implemented, these tools will result in even more discharges from parole.

13   **SUPPLEMENTAL INTERROGATORY RESPONSE NO. 10:**

14         DEFENDANT objects to this interrogatory to the extent it seeks information

15   protected from disclosure by the attorney-client privilege, deliberative process privilege,

16   and official information privilege.  DEFENDANT further objects to this interrogatory on

17   the grounds that it is overbroad and unduly burdensome as to location in that it seeks

18   information regarding all "CDCR Prisons," and therefore seeks information that is

19   irrelevant to the claim or defense of any party, and is not reasonably calculated to lead to

20   the discovery of admissible evidence.

21         DEFENDANT further objects to this interrogatory to the extent that information

22   related to that requested in this interrogatory has previously been provided to

23   PLAINTIFFS in the course of this PROCEEDING.

24         DEFENDANT further objects to this interrogatory on the grounds that it is

25   overbroad as to time and includes periods of time that are irrelevant to the claim or

26   defense of any party, and not reasonably calculated to lead to the discovery of

27   admissible evidence.

28         DEFENDANT further objects to this interrogatory on the grounds that it is vague

- 8 -

1    and ambiguous as to the meaning of the words "action, program, policy, or procedure,"

2    "adopted," "limit or reduce," and "housed."

3        Without waiving the foregoing and previously-asserted objections, DEFENDANT

4    responds as follows:  The following plans have been prepared and/or adopted since the

5    initial response to this interrogatory:  The Governor's Rehabilitation Strike Team

6    December 2007 report made numerous recommendations intended to reduce the inmate

7    population in CDCR.  The C-ROB Report issued on July 15, 2008, outlines the measures

8    that CDCR has taken to implement programs intended to reduce the inmate population.

9    CDCR has made significant progress in the area of risk and needs assessment.  The

10   COMPAS assessment instrument has been implemented for both male and female

11   parolees.  CDCR is also utilizing assessments to determine the number of inmates who

12   are high risk to reoffend for the purposes of identifying future inmate programming

13   resource needs.  In February 2008, CDCR began using COMPAS in classification at

14   Reception Centers to assign inmates to specific institutions based on programming

15   offered at those specific institutions.  CDCR is also implementing the Inmate Treatment

16   and Prison-to-Employment Plan as required by Assembly Bill 900, and is intended to

17   reduce the population.  CDCR over the past year has made some significant changes in

18   parole policy.  These changes in parole policy are designed to reduce the inmate

19   population in CDCR.

20   **INTERROGATORY NO. 11:**

21       For each such action, program, policy or procedure IDENTIFIED in YOUR

22   response to interrogatory number thirteen, state the time frame for implementation, the

23   size of the anticipated population reduction, and the date by which the population

24   reduction will be effected.

25   **PREVIOUS RESPONSE TO INTERROGATORY NO. 11:**

26       In addition to the General Objections stated above, which are incorporated herein,

27   DEFENDANTS object to this interrogatory on the grounds that it is vague and

28   ambiguous as to the terms "program," "policy," "procedure," and "interrogatory number

- 9 -

1    to the discovery of admissible evidence.

2         DEFENDANT further objects to this interrogatory to the extent that information

3    related to that requested in this interrogatory has previously been provided to

4    PLAINTIFFS in the course of this PROCEEDING.

5         DEFENDANT further objects to this interrogatory on the grounds that it is

6    overbroad as to time and includes periods of time that are irrelevant to the claim or

7    defense of any party, and not reasonably calculated to lead to the discovery of

8    admissible evidence.

9         DEFENDANT further objects to this interrogatory on the grounds that it is vague

10   and ambiguous as to the meaning of the words "lockdowns," "partial lockdowns,"

11   "affected" and "housing units."

12        Without waiving the foregoing and previously-asserted objections, DEFENDANT

13   responds as follows:  Responsive information is contained in updates to "Division of

14   Adult Institutions All Modified/Lockdown Programs by Institution" and "Division of Adult

15   Institutions Lockdowns/Modified Programs."  Those documents were previously

16   produced in response to Plaintiff Ralph Coleman's Third Request for Production of

17   Documents, Request no. 73.  See documents Bates labeled DEFS000001-

18   DEFS004259; DEFS005981-DEFS008152; DEFS010741-DEFS011698.

19

20   DATED:  August 15, 2008              HANSON BRIDGETT LLP

21

22                                       By: _____
                                             JERROLD C. SCHAEFER
23                                           PAUL B. MELLO
                                             Attorneys for Defendants
24

25

26

27

28

- 13 -

1

2                                  **VERIFICATION**

3          I, MATTHEW CATE, declare:

4          I am the Secretary of the California Department of Corrections and Rehabilitation,

5    and in that official capacity, I am a party in the pending action entitled *Plata v.*

6    *Schwarzenegger.* I have read the Supplemental Responses to Plaintiff Marciano Plata's

7    First Set of Interrogatories to former Defendant Tilton, and state upon my information

8    and belief that they are true and correct.

9          I declare under penalty of perjury that the foregoing is true and correct. Executed

10   in Sacramento, California, on August 15, 2008.

11

12

13                                    _____
                                      Matthew Cate

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       - 14 -

**RENJU P. JACOB**
ATTORNEY
DIRECT DIAL 415 995 5049
DIRECT FAX 415 995 3505
E-MAIL rjacob@hansonbridgett.com

**HansonBridgett**

**RECEIVED**

AUG 1 5 2008

August 15, 2008

Rosen, Bien & Galvan

COUNSEL OF RECORD:

Re:    Coleman/Plata v. Schwarzenegger, et al.

Dear Counsel:

The attached Defendant Cate's Supplemental Responses to Plaintiff Plata's First Set of Interrogatories to Former Defendant Tilton does not contain a Verification. A fully executed Verification will follow shortly.

Very truly yours,

Renju P. Jacob

RPJ:hp

Enclosure