EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN – State Bar No. 126424
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5708
Facsimile:  (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' SUPPLEMENTAL TRIAL OBJECTIONS TO EXPERT REPORT OF CRAIG HANEY AND PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS**<br><br>**To:  Three-Judge Panel** |

- 1 -
DEFS.' SUPPLEMENTAL TRIAL OBJECTIONS EXPERT REPORT OF
CRAIG HANEY AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

Defendants submit their supplemental objections and Plaintiffs submit their responses to Defendants' supplemental objections to the Expert Report of Craig Haney dated August 15, 2008.

## I.

## SPECIFIC OBJECTIONS

**A.    Expert Report of Craig Haney dated August 15, 2008**

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| 380.  As a starting point for establishing the range of reasonable goals, let me begin with what was once understood to be collective correctional wisdom (rather than an expedient approach to a largely politics-driven problem). As I mentioned earlier in this report, until the massive overcrowding crises that befell correctional systems in the United States beginning in the mid-1970s, most correctional scholars, experts, and administrators viewed prisons as dangerously overcrowded when they began to approximate 100% of their design capacity. The wisdom in this view was based on several commonsense assumptions. The first was that prisons were virtually always designed sparsely, from very basic and minimalist perspectives and premises, so that a prison that was reaching 100% of its capacity really was pushing against the limits of the number of prisoners that it could safely and humanely hold. In a related way, prison design traditionally | Inadmissible Hearsay. Fed. R. Evid. 802. Lack of foundation. Argumentative. Assumes facts not in evidence. | FRE 703 (based upon personal observation, personal review of data and/or expertise). |

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| maximized housing capacities and minimized space allocated to programming needs, opportunities, and demands. Thus, when a prison began to operate at near its rated capacity, there was typically little or no space available to pursue all but the most basic programming options. A prison administration that wanted to preserve at least some of its programming possibilities knew that those options would be all but foreclosed as its institutions neared 100% of capacity. In addition, correctional administrators, especially, knew that they were likely to face a number of unexpected contingencies and challenges, and that they would need at least some flexibility-to move or separate prisoners in response to conflict or confrontation, to accommodate to the special needs of a changing inmate population, or to address anyone of a number of other unforeseeable but inevitable demands that had not been factored into an original design capacity. | | |
| 381. Aside from the way that the overcrowding crises of the last several decades has forced administrators to accept the unthinkable, nothing has changed to undermine that earlier view- namely, that a prison that is approximating 100% of its design capacity is beginning to place its staff and inmates at risk. With this in | Lack of foundation. Vague and ambiguous. Argumentative. Assumes facts not in evidence. | FRE 703 (based upon personal observation, personal review of data and/or expertise); |

- 3 -

DEFS.' SUPPLEMENTAL TRIAL OBJECTIONS EXPERT REPORT OF
CRAIG HANEY AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| mind, I see no reason why a proposed range of goal-based remedies for what are significant and chronic constitutional violations should not at least begin with what once was regarded as the outer limit of acceptability, albeit, in this instance, as a concession to exactly how dire a situation has been allowed to come about, set as its most ambitious goal. | | |
| 382. How then to set the maximum allowable population? Fortunately, there is an existing estimate that has been proffered by informed analysts that I believe provides a useful (albeit very conservative) outer limit. The Corrections Independent Review Panel that was appointed by Governor Schwarzenegger undertook an analysis of the various ways that an acceptable CDCR "capacity" could and should be defined and established. Entirely consistent with the observations that I have made throughout this report, the panel concluded in 2004 that the overall population of male prisons in the state "exceeds a safe maximum, and individual housing units in some prisons are so severely over-crowded as to be at a crisis stage.,, As part of its work, the panel convened a group of experienced wardens to determine what they termed the "Maximum Operable Capacity" (MOC) of the prisons system-the percent of design capacity at which a "prison can be operated both safely and | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. | FRE 801(d)(2) Admission of a party opponent; FRE 803 (8) (Public Record) Hearsay Exception; FRE 703 (basis of expert opinion need not be admissible if of a type reasonably relied upon by experts in the field). |

- 4 -

DEFS.' SUPPLEMENTAL TRIAL OBJECTIONS EXPERT REPORT OF
CRAIG HANEY AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| can provide programming for every inmate, consistent with the inmate's ability." The "programming" that was contemplated in calculating the MOC included educational, vocational, substance abuse, and other rehabilitation programming. It explicitly did not take into account the kind of programming that would be required to provide constitutionally adequate mental health and medical treatment. Nonetheless, the Panel concluded that the statewide MOC for male prisons was 145% of design capacity. | | |
| 383. The Corrections Independent Review Panel's estimate assumed several other things. Thus, the use of all "bad beds" would have to be ended, so that adequate program space would be available. Of course, it also assumed that, in addition to available space, there would be "staff with requisite experience" provided to manage effective programming. Indeed, the Panel noted that the CDCR estimates of appropriate staffing "packages" that were operative at that time needed to be updated "to reflect position reductions, redirections, accommodations for' overcrowding,' court decisions and other mandates that have affected staffing allocations.,, Moreover, as I noted above, the Panel's estimate of an MOC did not specifically contemplate, take into account, or attempt to calculate the additional | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. | FRE 801(d)(2) Admission of a party opponent; FRE 803 (8) (Public Record) Hearsay Exception; FRE 703 (basis of expert opinion need not be admissible if of a type reasonably relied upon by experts in the field); FRE 703 (based upon personal observation, review of data and/or expertise). |

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| space and staffing levels that would be required to provide constitutionally adequate mental health and medical care. | | |
| 384.  In fact, of course, there is every reason to believe that the necessary space and staffing levels needed to provide constitutionally adequate mental and medical are truly substantial. That is certainly my own judgment; it is the very clear conclusion reached on the basis of the observations and analysis I have detailed in much of this report. It also reflects the judgment of numerous other independent experts who have evaluated, analyzed, and monitored the CDCR. In fact, of course, there is every reason to believe that the necessary space and staffing levels needed to provide constitutionally adequate mental and medical are truly substantial. That is certainly my own judgment; it is the very clear conclusion reached on the basis of the observations and analysis I have detailed in much of this report. It also reflects the judgment of numerous other independent experts who have evaluated, analyzed, and monitored the CDCR. In fact, although I have not attempted to provide a quantitative estimate of the extent of the shortcomings-in space and personnel-that plagues the CDCR in this regard, the *Coleman* Special Master has done so. Specifically, he reported to the Court on May 31, | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. Insufficient basis for expert opinion.  Fed. R. Evid. 702. | Hearsay Exception: FRE 803(8) (public record – Coleman Special Master is a public officer observing prisons pursuant to duty imposed by the Coleman Court, and the Special Master's Reports are factual findings from investigation in civil litigation made pursuant to authority granted by law); FRE 703 (based upon personal observation, review of data and/or expertise). |

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| 2007 that: "Given the inadequacies of programming space, program beds and mental health staffing, it is clear that a significant portion of the MHSDS caseload is not receiving the necessary mental health services ...defendants cannot meet at least a substantial portion, amounting in some loose amalgam to about 33 percent, of acknowledged mental health needs with current staffing resources. Insufficient intensive mental health treatment beds and a chronic lack of programming space for mental health treatment contribute further to defendants' inability to meet required mental health services.,, This quantitative estimate of the current shortfall brought about by inadequacies in space, beds, and housing-fully a third of mental health needs unmet-suggests that the magnitude of the incremental needs ignored in the Panel's estimate of maximum operable capacity is substantial. | | |
| 385. When these crucial mental health and medical treatment needs are taken into account-as they must be in any calculation aimed at addressing the primary cause of these continuing constitutional violations-then the appropriate percentage for maximum operable capacity would certainly be lower than the Panel's and wardens' estimate of 145%. Thus, in this important sense, a limit of 145% of design capacity can only | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. Insufficient basis for expert opinion. Fed. R. Evid. 702. | FRE 801(d)(2) Admission of a party opponent; FRE 803 (8) (Public Record) Hearsay Exception; FRE 703 (basis of expert opinion need not be admissible if of a type reasonably relied upon by experts in the field); FRE 703 (based upon personal observation, review of |

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| be regarded as a very conservative estimate of the MOC, and seems an appropriate figure to establish as the outer limit or maximum capacity in a range that is intended to eliminate the constitutional violations that are at issue here. | | data and/or expertise). |
| 386. There is another reason to regard the Independent Review Panel's estimate of a viable MOC as a very conservative outside limit. Specifically, it is based on the judgments of a group of experienced California wardens, many of whose own perspectives on "Maximum Operable Capacity" were likely forged in a system in which a certain amount of institutionalized acceptance of overcrowding has occurred. I note, for example, that the *Plata* Receiver described what he called "CDCR's institutionalized acceptance of overcrowding and the lowering of correctional standards to accommodate overcrowding.,, In fact, the Receiver documented not only the decades of prison overcrowding in California but also the parallel evolution of "a correctional mindset that allows *overcrowding* rather than *sound correctional management* to drive crucial construction and prisoner management policy." | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. Argumentative. | FRE 801(d)(2) Admission of a party opponent; FRE 803 (8) (Public Record) Hearsay Exception (the Receiver is a public officer observing prisons pursuant to duty imposed by law by the Plata Court, and Reports are factual findings from investigation in civil litigation made pursuant to authority); FRE 703 (based upon personal observation, review of data and/or expertise); Court can determine whether statement is argumentative. |
| 387. Moreover, the Receiver identified the same failure to take medical, mental health, and dental care programming needs into | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within | FRE 801(d)(2) Admission of a party opponent; FRE 803 (8) (Public Record) |

DEFS.' SUPPLEMENTAL TRIAL OBJECTIONS EXPERT REPORT OF CRAIG HANEY AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| account in the CDCR's Facility Master Plans (spanning 1993-2003) as was reflected in the Corrections Independent Review Panel's report. As he put it: "All the plans focus on corrections, as if medical, mental health, and dental care have no place in prison design, prison construction, or prison management.,, In fact, the Receiver found that the acceptance of overcrowding was institutionalized to such a degree in CDCR management that it knowingly planned construction of even its newest prisons to provide at most fifty percent of all health care related space needs, "ignoring pre-existing plans to double-cell the prison up to 200 percent of capacity.,, These facts suggest that the Maximum Operable Capacity would actually have been quite a bit lower than 145% if the Corrections Independent Review Panel had taken these critically important needs into account. | Hearsay. Fed. R. Evid. 805. Lack of foundation. Argumentative. | Hearsay Exception (the Receiver is a public officer observing prisons pursuant to duty imposed by law by the Plata Court, and Reports are factual findings from investigation in civil litigation made pursuant to authority); FRE 703 (based upon personal observation, review of data and/or expertise. |
| 388. At a minimum, then, using the Panel's estimate of 145% as a very conservative outside limit, remedial steps should be taken to reduce CDCR's prison population to its viable, defensible maximum operable capacity. This would mean that all bad beds must be eliminated, sufficient program space must be identified and made available, and the number of inmates not to exceed appropriate | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. Argumentative. | FRE 801(d)(2) Admission of a party opponent; FRE 703 (based upon personal observation, review of data and/or expertise). |

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| numbers of available, qualified staff to provide necessary programming. Necessary staffing must be calculated in such a way as to provide programming opportunities and sufficient custody/escort staff to enable that programming to occur. Indeed, it is not clear that, given the "serious staffing shortfalls" that continue to plague CDCR, its prisons can possibly safely and humanely accommodate even 145% of capacity (much less the near-double capacity they now face). | | |
| 389. Moreover, as I have suggested, a "maximum operable capacity" that provides for the constitutional delivery of mental health care must incorporate and take centrally into account the mental health treatment standards established by the *Coleman* Court. To parallel the Corrections Independent Review Panel's assumptions in this context, then, all "bad" mental health beds must be eliminated. For example, this includes reducing the population to eliminate the use of alternative crisis beds, EOP "overflow" housing that does not have appropriate space for individual or group mental health contacts, RC EOP housing for EOP stays greater than 60 days, and DMH units such as those currently run in SVSP D-5 and D-6 and CMF P-2 and P-3, which are not set up to provide care consistent with inpatient standards. | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. | FRE 801(d)(2) Admission of a party opponent; FRE 703 (based upon personal observation, review of data and/or expertise); Hearsay Exception: FRE 803(8) (public record – Coleman Court Orders. |

- 10 -
DEFS.' SUPPLEMENTAL TRIAL OBJECTIONS EXPERT REPORT OF
CRAIG HANEY AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS
(CASE NOS. 90-00520 AND 01-1351)

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| 390. Furthermore, the programming considerations of the Independent Review Panel must be expanded to reflect the requisite mental health "program" that is set forth in the *Coleman* remedy. Thus, adequate mental health programming space must be afforded under any defensible definition of the MOC. Moreover, whatever operable capacity is finally implemented must also be related to the number of mental health and custody staff in the prison system who are tasked with providing mental health care. For example, as I noted above, the Special Master found that current staffing cannot provide for roughly one-third of the prisoners with identified mental illness. Finally, the maximum operable capacity must also account for the intersection of space availability and staffing levels. This means, as the Receiver noted, California's long-standing policy of building "only to base staffing levels"-a policy that "has left the CDCR in crisis regarding the clinical space needed to provide constitutional levels of access to health care"-must be correspondingly changed. | Inadmissible Hearsay. Fed. R. Evid. 802. Hearsay within Hearsay. Fed. R. Evid. 805. Lack of foundation. Argumentative. | FRE 801(d)(2) Admission of a party opponent; FRE 803 (8) (Public Record) Hearsay Exception (the Receiver is a public officer observing prisons pursuant to duty imposed by law by the Plata Court, and Reports are factual findings from investigation in civil litigation made pursuant to authority; the Coleman Special Master is a public officer observing prisons pursuant to duty imposed by the Court, and the Special Master's Reports are factual findings from investigation in civil litigation made pursuant to authority granted by law); FRE 703 (based upon personal observation, review of data and/or expertise). |
| 391. Numerous previous court orders-most of which were issued a considerable period of time ago-and virtually every other approach to judicially-mandated institutional change of which I am aware have been tried and failed to solve this chronic (and in many | Lack of foundation. Argumentative. | FRE 703 (based upon personal observation, review of data and/or expertise); Court can determine whether the statement is argumentative. |

DEFS.' SUPPLEMENTAL TRIAL OBJECTIONS EXPERT REPORT OF CRAIG HANEY AND PLTFS.' RESPONSES TO DEFS.' OBJECTIONS (CASE NOS. 90-00520 AND 01-1351)

| Statement (Paragraph Number) | Defendants' Objections | Plaintiff's Responses |
|---|---|---|
| ways, worsening) problem. In my opinion, a carefully crafted prisoner release order is the only remedy that is capable of addressing this severe overcrowding crisis and beginning the process of finally solving the wide range of dangerous and debilitating problems it has brought about. | | |

DATED:  December 17, 2008         HANSON BRIDGETT LLP


By: /s/ Paul B. Mello
   PAUL B. MELLO
   Attorneys for Defendants
   Arnold Schwarzenegger, et al.

DATED:  December 17, 2008         EDMUND G. BROWN JR.
   Attorney General of the State of California


By: /s/ Kyle A. Lewis
   KYLE LEWIS
   Deputy Attorney General
   Attorneys for Defendants
   Arnold Schwarzenegger, et al.

DATED: December 23, 2008         ROSEN BIEN & GAVLAN


By: /s/ Jane E. Kahn
   JANE E. KAHN
   Attorneys for *Coleman* Plaintiffs

**DECLARATION OF SERVICE BY OVERNIGHT COURIER & DOJ MESSENGER**

Case Name:   **Three-Judge Panel Proceeding Pursuant to 28 U.S.C. § 2284**
  **Coleman, et al. v. Schwarzenegger, et al.**
  **USDC, Eastern District of California, Case No. 2:90-cv-00520 LKK JFM**
  **Plata, et al. v. Schwarzenegger, et al.**
  **USDC, Northern District of California, Case No. C-01-1351 TEH**

No.:   **C 90-0520 LKK / C 01-01351 TEH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is: 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004.

On <u>December 31, 2008</u>, I served the attached

**DEFENDANTS' SUPPLEMENTAL TRIAL OBJECTIONS TO EXPERT REPORT OF CRAIG HANEY AND PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS**

by placing a true copy thereof enclosed in a sealed envelope with the **Golden State Overnight** courier service, addressed as follows:

| | |
|---|---|
| **Honorable Stephen Reinhardt**<br>**United States Courthouse**<br>**450 Golden Gate Avenue, Room 19-5398**<br>**San Francisco, CA 94102**<br>*via DOJ Messenger* | **Honorable Thelton E. Henderson**<br>**United States Courthouse**<br>**450 Golden Gate Avenue**<br>**San Francisco, CA 94102**<br>*via DOJ Messenger* |

**Honorable Lawrence K. Karlton**
**Robert T. Matsui**
**United States Courthouse**
**501 I Street**
**Sacramento, CA 95814**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 31, 2008, at San Francisco, California.

| T. Oakes | */s/ T. Oakes* |
|:---:|:---:|
| Declarant | Signature |

POS 3 judge.wpd