# EXHIBIT 16

**Deposition of Christopher J. Mumola
August 25, 2008
(Counter-Designations)**

```
 1           IN THE UNITED STATES DISTRICT COURTS
            FOR THE EASTERN DISTRICT OF CALIFORNIA
 2          AND THE NORTHERN DISTRICT OF CALIFORNIA
       UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
 3      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE
 4    - - - - - - - - - - - - - -+
                                 |
 5    RALPH COLEMAN, et al,       |
                                 |
 6            Plaintiffs,         |
         vs.                      |  No. S 90-0520 LKK-JFM P
 7                                |
                                 |
      ARNOLD SCHWARZENEGGER,      |
 8    et al,                      |
                                 |
 9            Defendants.         |
                                 |
10    - - - - - - - - - - - - - -+
                                 |
11    MARCIANO PLATA, et al,      |  No. C 01-1351 TEH
                                 |
12            Plaintiffs,         |
         vs.                      |
13                                |
      ARNOLD SCHWARZENEGGER,      |
14    et al,                      |
                                 |
15            Defendants.         |
      ---------------------------|
16
17              DEPOSITION OF CHRISTOPHER J. MUMOLA
                      (by written questions)
18                       Washington, D.C.
                    Monday, August 25th, 2008
19                       10:00 a.m. EST
20    Job No. 2-132568
21    Pages 1 - 123
22    Reported by: Laurie Bangart-Smith, RPR, CRR
```

1   BY PLAINTIFFS' COUNSEL:

2        Q    So for people in the U.S. aged 15 to 64

3   unintentional injury is a very significant

4   contributing factor to the overall mortality rate,

5   correct?

6             DEFENSE COUNSEL:  Objection.  Lacks

7   foundation, document speaks for itself, document

8   not properly authenticated, the term "very

9   significant" is vague and ambiguous.

10            THE WITNESS:  From the data presented in

11  this chart, it appears that the contribution of

12  unintentional injury to the overall mortality

13  rate of U.S. residents drops substantially as age

14  increases.  For example, unintentional injury

15  accounted for 46 percent of the overall mortality

16  rate of persons age 15 to 24, but this percentage

17  dropped to 20 percent of the overall mortality

18  among persons 35 to 44, ten percent of persons 45

19  to 54, and finally down to only four percent of

20  mortality among persons 55 to 64 years old.

21            According to this chart, among persons age

22  55 to 64, the combined rate of mortality from

1  just two medical conditions, heart disease and
2  cancer (541.7 per 100,000) is 15 times greater
3  than the rate of death from unintentional injury
4  (35.8 per 100,000).
5      So I would say that unintentional injury is
6  a very significant factor in the overall
7  mortality rate of those persons age 15 to 34, but
8  a much smaller contributor towards the overall
9  mortality of adults over the age of 35.
10 BY PLAINTIFFS' COUNSEL:
11     Q    According to the Data Brief unintentional
12 injury was not one of the ten leading causes of death
13 of state prisoners in 2001 to 2004, correct?
14     A    Correct.  Unintentional injury or accidental
15 injury, as BJS referred to such deaths in the report,
16 was the 16th most common cause of death in state
17 prison during 2001 to 2004.
18     Q    The fact that the mortality rate for 2001 to
19 2004 is lower in state prisons than in the U.S.
20 resident population is likely related to the very low
21 rate of death from unintentional injury for state
22 prisoners aged 15 to 64 years old, correct?

1   on a state-by-state basis, the relationship between
2   each state's overall mortality rate and the mortality
3   rate for that state's state prisoner population?
4           DEFENSE COUNSEL: Objection. Overbroad, not
5       relevant to subject matter.
6           THE WITNESS: No. All of the state-specific
7       data I have analyzed have referred to the
8       comparisons of state prisoner death rates across
9       states. I have not focused relating
10      state-specific resident population mortality
11      rates to prison death rates in those same states.
12  BY PLAINTIFFS' COUNSEL:
13      Q   If so, please describe the studies and any
14  findings and/or conclusions you have made.
15          DEFENSE COUNSEL: Objection. Overbroad, not
16      relevant to subject matter.
17          THE WITNESS: Not applicable.
18  BY PLAINTIFFS' COUNSEL:
19      Q   Are you familiar with any studies performed
20  to determine, on a state-by-state basis, the
21  relationship between each state's overall mortality
22  rate and the mortality rate for that state's state

1   needed to be highlighted.  Furthermore, the scale
2   of the difference between California and all
3   other states combined was quite small compared to
4   the difference in illness/AIDS mortality rates.
5   The difference in suicide rates amounted to three
6   suicides per 100,000 inmates each year, compared
7   to a difference of 53 illness or AIDS death per
8   100,000 inmates each year.
9  BY PLAINTIFFS' COUNSEL:
10      Q   Is it correct that attachment 2 to
11  Defendants' Exhibit B shows that the homicide death
12  rate for California prisons was above the average rate
13  for all other states in each year, averaging more than
14  double the average rate for the other states for the
15  entire five-year period (8 homicide deaths per 100,000
16  inmates versus 3 homicide deaths per 100,000 inmates)?
17          DEFENSE COUNSEL:  Objection.  Irrelevant.
18          THE WITNESS:  Yes, that is correct.
19  BY PLAINTIFFS' COUNSEL:
20      Q   Who decided not to include this information
21  as a "highlight"?
22          DEFENSE COUNSEL:  Objection.  Lacks

1    foundation, argumentative.

2        THE WITNESS: My role in writing all of the

3    highlights has already been described in

4    responses to earlier questions. The defendants

5    did not request any comparisons on mortality

6    issues beyond illness and AIDS. In my

7    conversations with them they only mentioned they

8    were dealing with allegations regarding the

9    quality of medical care provided in their

10    prisons. They made no mention of security

11    concerns being part of the complaints.

12        Had they communicated any indication that

13    mortality related to security was a topic of

14    concern, I would have certainly included these

15    rates in the highlights, but as I understood

16    their questions, such comparisons were outside

17    the scope of their request. Furthermore, the

18    scale of the difference between California and

19    all other states combined was quite small

20    compared to the difference in illness and AIDS

21    mortality rates. The difference in homicide

22    rates amounted to five homicides per 100,000

1  inmates each year, compared to a difference of 53
2  illness or AIDS deaths per 100,000 inmates each
3  year.
4  BY PLAINTIFFS' COUNSEL:
5      Q   Is it correct that attachment 2 to
6  Defendants' Exhibit B shows that the drug/alcohol
7  intoxication death rate for California prisons was
8  above the rate for all other states in each year,
9  averaging triple the average rate for all other states
10 for the entire five-year period (6 drug/alcohol
11 intoxication death per 100,000 inmates versus 2
12 drug/alcohol intoxication deaths per 100,000 inmates)?
13         DEFENSE COUNSEL:  Objection.  Irrelevant.
14         THE WITNESS:  Yes, that's correct.
15 BY PLAINTIFFS' COUNSEL:
16     Q   Who decided not to include this information
17 as a "highlight"?
18         DEFENSE COUNSEL:  Objection.  Lacks
19 foundation, argumentative.
20         THE WITNESS:  I made this decision
21 consistent with the reasons already stated
22 several times for how I selected findings for

```
1    these highlights. Drug and alcohol intoxication
2    deaths were not a topic of interest for the data
3    requester, and the scale of difference between
4    the rates was quite small (4 deaths per 100,000
5    inmates per year) compared to the difference in
6    illness/AIDS mortality rates (53 illness or AIDS
7    deaths per 100,000 inmates each year).
8    BY PLAINTIFFS' COUNSEL:
9         Q    Is it correct that attachment 2 to
10   Defendants' Exhibit B shows that California prisons
11   mortality rate from all causes has increased from 2001
12   (178 per 100,000 inmates) to 2005 (223 per 100,000
13   inmates) and increased of about 25 percent?
14             DEFENSE COUNSEL: Objection. Irrelevant.
15             THE WITNESS: Yes, that is correct.
16   BY PLAINTIFFS' COUNSEL:
17        Q    Who decided not to include this information
18   as a "highlight"?
19             DEFENSE COUNSEL: Objection. Lacks
20   foundation, argumentative, irrelevant.
21             THE WITNESS: In an indirect way this trend
22   was already discussed in attachment 1, highlight
```

1  number 3. I noted that California's illness
2  mortality rate spiked from a low of 141 per
3  100,000 in 2001 to a high of 187 in 2002. I also
4  observed that the rate remained stable in the
5  years since. Given that illness deaths accounted
6  for over 1,300 of the 1,672 California prison
7  deaths during this period, it is not surprising
8  that the overall death rate for the state
9  followed the same trend as the illness death
10 rate.
11     The overall California prison mortality rate
12 spiked from a low of 178 per 100,000 in 2001 to
13 213 per 100,000 in 2002. Over the ensuing three
14 years, 2003 to 2005, the total mortality rate
15 remained very stable, increasing by ten deaths
16 per 100,000 inmates, an increase of five percent
17 over three years. In my view, it was the
18 stability of the rates over four consecutive
19 years of the five-year period that characterized
20 the period. Because the trend in overall
21 mortality rates simply reflected what I had
22 already discussed in attachment 1, highlight

```
 1          number 3, I didn't think it was important to
 2          repeat the point when composing highlights for
 3          attachment 2.
 4   BY PLAINTIFFS' COUNSEL:
 5        Q    Is it correct that attachment 2 to
 6   Defendants' Exhibit B also shows that the mortality
 7   rate for all other states for all causes has declined
 8   from 2001 (252 per 100,000 inmates) to 2005, (225 per
 9   100,000 inmates) a decline of about 11 percent?
10              DEFENSE COUNSEL:  Objection.  Misstates
11         document, the phrase "has declined" is vague and
12         ambiguous.
13              THE WITNESS:  Yes, that's correct.
14   BY PLAINTIFFS' COUNSEL:
15        Q    Who decided not to include this information
16   as a "highlight"?
17              DEFENSE COUNSEL:  Objection.  Lacks
18         foundation, argumentative, irrelevant.
19              THE WITNESS:  My process for selecting and
20         writing these highlights has already been
21         discussed in my response to numerous items.  In
22         terms of this particular question, I would point
```

1    out that the 11 percent decline over this
2    five-year period was neither a very dramatic
3    trend nor a stable one.  The 2005 overall
4    mortality rate for all other states combined was
5    the lowest of the five-year period, (225 deaths
6    per 100,000 inmates), but it was preceded by the
7    two highest rates of the period as well.  In 2003
8    and 2004, the overall mortality rate was 266 and
9    259 deaths respectively, per 100,000 inmates.
10        Comparing 2001 to either of these years
11   would have indicated the opposite trend in the
12   prison mortality of other states.  It was
13   impossible to judge whether the 2005 decline in
14   other states prison mortality rate was a one year
15   exception to this earlier increase or the
16   beginning of a sustained downward trend.  In
17   contrast, the trend that I did highlight, that of
18   California's stable rate of illness deaths
19   following the 2002 increase, was a more
20   established pattern over four years.
21   BY PLAINTIFFS' COUNSEL:
22        Q    Please turn your attention to Exhibit D to