1  JONES & MAYER
   Martin J. Mayer (SB # 73890)
2  Michael R. Capizzi (SB # 35864)
   Kimberly Hall Barlow (SB # 149902)
3  Ivy M. Tsai (SB # 223168)
   3777 North Harbor Boulevard
4  Fullerton, California 92835
   (714) 446-1400; Fax (714) 446-1448
5  e-mail: mjm@jones-mayer.com
   e-mail: mrc@jones-mayer.com
6  e-mail: khb@jones-mayer.com
   e-mail: imt@jones-mayer.com
7
   Attorneys for Law Enforcement
8  Intervenor-Defendants

9

10            IN THE UNITED STATES DISTRICT COURTS

11          FOR THE EASTERN DISTRICT OF CALIFORNIA

12          AND THE NORTHERN DISTRICT OF CALIFORNIA

13   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

14      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

15
   RALPH COLEMAN, et al.,            Case No:  CIV S-90-0520 LKK JFM P
16
              Plaintiffs,            **THREE-JUDGE COURT**
17
        vs.
18                                   [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)]
   ARNOLD SCHWARZENEGGER, et
19 al.,

20            Defendants.

21

22
                                     Case No.:  C01-1351 TEH
23 MARCIANO PLATA, et al.,
                                     **THREE-JUDGE COURT**
24            Plaintiffs,
                                     **DECLARATION OF IVY M. TSAI IN**
25      vs.                          **SUPPORT OF RESPONSES TO**
                                     **PLAINTIFFS' OBJECTIONS TO LAW**
26 ARNOLD SCHWARZENEGGER, et         **ENFORCEMENT INTERVENOR TRIAL**
   al.,                             **EXHIBITS**
27
              Defendants.
28

                                    -1-

I, IVY M. TSAI, declare as follows:

1.     I am an attorney licensed to practice before the courts of the State of California.  I am admitted to practice before the United States District Courts for the Eastern and Northern Districts of California.  I am employed by the law firm of Jones & Mayer, which represents the Sheriff, Police Chief, Chief Probation, and Chief Corrections Intervener-Defendants (collectively, the "Law Enforcement Intervenors") in this action.  I have personal knowledge of the facts stated in this declaration and could and would competently testify thereto.

2.     Attached hereto are true and correct copies of excerpts of the transcripts of the trial testimony of Stanislaus County Chief Probation Officer Jerry Powers and the deposition transcripts for the following witnesses: Fresno Police Chief Jerry Dyer, Vacaville Police Chief Richard Word, Yolo County Chief Probation Officer Don Meyer, and Richard Conklin of the Diego County Sheriff's Department.

3.     These transcript excerpts are being offered in support of the responses to Plaintiffs' objections to the trial exhibits of Law Enforcement Intervenors.  Specific references to these transcript excerpts are set forth in the responses to the objections, which appear in the document entitled Objections to Law Enforcement Intervenor Trial Exhibits, filed separately by Plaintiffs on January 20, 2009.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of January, 2009 in Fullerton, California.

IVY M. TSAI

TSAI DECL. IN SUPPORT OF RESPONSES TO PLAINTIFFS' OBJECTIONS TO TRIAL EXHIBITS

# EXCERPT OF TRIAL TESTIMONY OF JERRY POWERS IN SUPPORT OF RESPONSE TO OBJECTIONS TO DI-604 -- DI-611

Case 2:90-cv-00520-KJM-SCR   Document 3473   Filed 01/20/09   Page 4 of 34
Case 3:01-cv-01351-TEH   Document 1897   Filed 12/09/2008   Page 185 of 219
POWERS - DIRECT / BARLOW

| 1 | THE CLERK: PLEASE BE SEATED. |
| --- | --- |
| 2 | JUDGE HENDERSON: OKAY. YOU MAY CALL YOUR NEXT |
| 3 | WITNESS WHEN YOU'RE READY, COUNSEL. |
| 4 | MS. BARLOW: GOOD AFTERNOON, YOUR HONORS. KIMBERLY |
| 5 | HILL BARLOW JONES & MAYER ON BEHALF OF THE LAW ENFORCEMENT |
| 6 | INTERVENORS, CALLING JERRY POWERS, CHIEF PROBATION OFFICER |
| 7 | STANISLAUS COUNTY. |
| 8 | THE CLERK: PLEASE STEP UP, AND RAISE YOUR RIGHT |
| 9 | HAND. |
| 10 | (THEREUPON, THE WITNESS WAS SWORN.) |
| 11 | MS. BARLOW: IF IT PLEASE THE COURT, I HAVE COPIES |
| 12 | OF MR. POWERS' EXPERT REPORT FOR THE COURT. |
| 13 | THE CLERK: STATE AND SPELL YOUR FULL NAME. |
| 14 | THE WITNESS: JERRY POWERS, J-E-R-R-Y P-O-W-E-R-S. |
| 15 | MS. BARLOW: THANK YOU, MR. POWERS. |
| 16 | THEREUPON -- |
| 17 | **JERRY POWERS** |
| 18 | WAS CALLED ON BEHALF OF THE DEFENDANT LAW ENFORCEMENT |
| 19 | INTERVENORS, AND AFTER HAVING BEEN FIRST DULY SWORN WAS |
| 20 | EXAMINED AND TESTIFIED AS FOLLOWS: |
| 21 | **DIRECT EXAMINATION** |
| 22 | BY MS. BARLOW: |
| 23 | Q. COULD YOU STATE YOUR POSITION, PLEASE? |
| 24 | A. I'M THE CHIEF PROBATION OFFICER FOR STANISLAUS COUNTY. |
| 25 | Q. AND IN YOUR CAPACITY AS CHIEF PROBATION OFFICER, WHAT ARE |

Case 2:90-cv-00520-KJM-SCR    Document 3473    Filed 01/20/09    Page 5 of 34
Case 3:01-cv-01351-TEH    Document 1880    Filed 12/09/2008    Page 186 of 298
POWERS - DIRECT / BARLOW

1    YOUR DUTIES?

2    **A.**   ESSENTIALLY OVERSIGHT OF THE ENTIRE DEPARTMENT, POLICY

3    SETTING, BUDGET CONTROL, BUDGET SETTING, PERSONNEL DECISIONS,

4    THE ENTIRE FUNCTIONING OF THE PROBATION DEPARTMENT IN THE

5    COUNTY.

6    **Q.**   AND HOW MANY PROBATIONERS ARE YOU RESPONSIBLE FOR

7    ULTIMATELY SUPERVISING?

8    **A.**   RIGHT IN THE NEIGHBORHOOD OF ABOUT 8,000 BETWEEN JUVENILES

9    AND ADULTS.

10   **Q.**   AND ABOUT HOW MANY OF THOSE ARE ADULTS?

11   **A.**   LITTLE OVER 7,000.

12       **JUDGE REINHARDT:**  EXCUSE ME. YOUR DECLARATION SAYS

13   YOU'RE RESPONSIBLE FOR OVERSEEING APPROXIMATELY 8,000, BOTH

14   STANISLAUS COUNTY AND OTHER COUNTIES WITHIN THE STATE OF

15   CALIFORNIA.

16       WHAT DOES THAT MEAN?

17       **THE WITNESS:**  WELL, SOME OF THE PROBATIONERS FROM

18   STANISLAUS COUNTY ARE ACTUALLY RESIDING IN OTHER COUNTIES STILL

19   UNDER THE JURISDICTION OF OUR COUNTY.

20       **JUDGE REINHARDT:**  THANK YOU.

21       **THE WITNESS:**  OKAY.

22   **BY MS. BARLOW:**

23   **Q.**   IN ADDITION, ARE YOU RESPONSIBLE FOR OPERATING ANY

24   DETENTION FACILITIES?

25   **A.**   YES, I AM.

POWERS - DIRECT / BARLOW

```
 1   Q.   WHAT ARE THOSE?

 2   A.   WE HAVE 158 BED JUVENILE HALL.

 3   Q.   PRIOR TO YOUR EMPLOYMENT WITH THE STANISLAUS -- COUNTY OF

 4   STANISLAUS, HAVE YOU SERVED AS PROBATION CHIEF OR PROBATION

 5   OFFICER ANYWHERE ELSE?

 6   A.   YES, I SPENT A LITTLE OVER FIVE YEARS IN SAN DIEGO COUNTY.

 7   NOT AS CHIEF, BUT AS A PROBATION OFFICER.

 8   Q.   HOW LONG HAVE YOU BEEN WITH STANISLAUS COUNTY?

 9   A.   A LITTLE OVER EIGHT YEARS.

10   Q.   AND WHAT ROLES HAVE YOU PLAYED FOR STANISLAUS COUNTY

11   BESIDES CHIEF, IF ANY?

12   A.   WHEN I FIRST CAME TO THE COUNTY I WAS THE SUPERINTENDENT OF

13   THE JUVENILE DETENTION FACILITY. THEN, I WAS PROMOTED TO CHIEF

14   DEPUTY OVER FIELD SERVICES.  AND THEN, I WAS PROMOTED TO CHIEF

15   A LITTLE OVER SIX YEARS AGO.

16   Q.   NOW, COULD YOU JUST DESCRIBE BRIEFLY YOUR EDUCATIONAL

17   BACKGROUND FOR THE COURT?

18   A.   SURE. I HAVE A B.A. IN PSYCHOLOGY FROM THE UNIVERSITY OF

19   CALIFORNIA AT SAN DIEGO.

20   Q.   DO YOU HAVE ANY SPECIAL CERTIFICATIONS THAT YOU NEED TO

21   PERFORM THE SERVICES THAT YOU DO?

22   A.   YES, I HAVE CERTIFICATIONS IN -- AS A CORRECTIONS OFFICER,

23   AS A DEPUTY PROBATION OFFICER.  THOSE WERE TO FULFILL MY DUTIES

24   AS LINE STAFF.

25              I HAVE A CERTIFICATION AS A SUPERVISING PROBATION
```

1 OFFICER AND ALSO A MANAGEMENT CERTIFICATION FOR MANAGEMENT

2 LEVEL POSITIONS IN PROBATION.

3 Q. OKAY. SO IF I'M DOING MY MATH CORRECTLY THAT'S 24 YEARS OF

4 PROBATION EXPERIENCE?

5 A. CORRECT. ACTUALLY BE 24 YEARS ON SUNDAY.

6 Q. CONGRATULATIONS.

7 A. THANK YOU.

8 Q. NOW, IN ADDITION TO YOUR JOB RESPONSIBILITIES, ARE YOU

9 AFFILIATED WITH ANY PROFESSIONAL ORGANIZATIONS IN YOUR CAPACITY

10 AS PROBATION CHIEF?

11 A. YES. I'M A MEMBER OF THE CHIEF PROBATION OFFICERS OF

12 CALIFORNIA. ACTUALLY, I'M THE CURRENT PRESIDENT OF CHIEF

13 PROBATION OFFICERS OF CALIFORNIA.

14 Q. WHAT DO THE CHIEF PROBATION OFFICERS OF CALIFORNIA DO?

15 A. IT'S A PROFESSIONAL ASSOCIATION THAT CONSISTS OF THE 59

16 CHIEF PROBATION OFFICERS IN THE STATE OF CALIFORNIA. WE CALL

17 IT CPOC. IT'S THE ACRONYM FOR IT. IT IS ESSENTIALLY AN

18 ORGANIZATION THAT PROVIDES A VENUE FOR THE VOICE OF PROBATION

19 IN THE STATE OF CALIFORNIA.

20         THEY WORK LEGISLATIVELY ON PROBATION ISSUES AT THE

21 STATE LEVEL, AS WELL AS SOMETIMES AT LOCAL LEVELS AND

22 SOMETIMES, AS YOU SEE, AT THE FEDERAL LEVEL, AS WELL.

23 Q. NOW, DOES CPOC UNDERTAKE TO GATHER -- COLLECT DATA ON

24 BEHALF OF THE CHIEF PROBATION OFFICERS?

25 A. YES. CPOC TENDS TO BE THE CENTRAL REPOSITORY FOR COUNTY

```
 1   LEVEL STATISTICS. THEY THEN AGGREGATE THE STATISTICS TO COME UP
 2   WITH A STATEWIDE PICTURE OF POPULATION NUMBERS, TYPES OF
 3   OFFENDERS, THOSE TYPES OF THINGS.
 4   Q.    SO IN COLLECTING THAT DATA, WHAT ARE THEY LOOKING FOR?
 5   ARE THEY LOOKING FOR THE NUMBER OF PROBATION OFFICERS, THE
 6   NUMBER OF OFFENDERS, BREAKDOWN OF CRIMES, ET CETERA?
 7   A.    YES.  WHAT WE WILL DO, TYPICALLY -- AND THEN, THIS IS QUITE
 8   FRANKLY IN RESPONSE TO QUESTIONS OVER THE YEARS -- WE WILL HAVE
 9   STATISTICS RELATED TO THE TYPES OF CASELOADS THAT PROBATION
10   OFFICERS CARRY; THE OVERALL NUMBERS OF OFFENDERS UNDER
11   SUPERVISION; ANY SPECIALIZED CASELOAD, SUCH AS DOMESTIC
12   VIOLENCE CASELOADS, SEX OFFENDER CASELOADS, THE NUMBERS ON
13   THOSE CASELOADS AND THINGS RELATED TO THE ACTUAL MONITORING OF
14   OFFENDERS IN THE STATE.
15   Q.    AND IN ADDITION TO YOUR AFFILIATION WITH CPOC, ARE YOU ALSO
16   ASSOCIATED WITH ANY OTHER ORGANIZATIONS?
17   A.    I AM.  I'VE BEEN APPOINTED BY THE GOVERNOR TO TWO STATE
18   LEVEL BOARDS:  THE CALIFORNIA COUNCIL ON CRIMINAL JUSTICE.
19   I'VE BEEN A MEMBER THERE FOR ABOUT TWO-AND-A-HALF YEARS. AND
20   I'M ALSO A GOVERNOR APPOINTEE TO THE SEX OFFENDER MANAGEMENT
21   BOARD FOR THE STATE.  AND THAT'S BEEN A LITTLE BIT OVER A YEAR,
22   YEAR AND A HALF.
23   Q.    AND WHAT IS CALIFORNIA COUNCIL ON CRIMINAL JUSTICE?
24   A.    IT'S A -- IT'S AN ADVISORY BODY THAT IS DESIGNED TO ADVISE
25   THE LEGISLATURE AND THE ADMINISTRATION WITH RESPECT TO OVERALL
```

Case 3:00-cv-00580-TEH-SCR   Document 3470   Filed 12/03/2008/09   Page 9 of 34
Case 3:01-cv-01351-TEH-SCR   Document 1879   Filed 12/03/2008/09   Page 9 of 34
POWERS - DIRECT / BARLOW

1   STATE POLICIES WHEN IT COMES TO DEALING WITH CRIMINAL JUSTICE

2   ISSUES. IT'S CONSISTING OF SOMEWHERE IN THE NEIGHBORHOOD OF

3   ABOUT 15 PRACTITIONERS AND PEOPLE INVOLVED IN THE CRIMINAL

4   JUSTICE SYSTEM.

5   **Q.**   OKAY. NOW, YOU TALKED ABOUT THE CHIEF PROBATION OFFICERS

6   AND THE REPORTS THAT THEY PREPARE. YOU HAVE THE SET OF EXHIBITS

7   IN FRONT OF YOU?

8   **A.**   YES.

9   **Q.**   OKAY. IF YOU WOULD PLEASE REFER TO EXHIBIT 604 THROUGH 607,

10  AND TELL ME IF YOU RECOGNIZE THOSE DOCUMENTS?

11  **A.**   THEY APPEAR TO BE OUR ANNUAL SURVEY DATA ON ESSENTIALLY

12  NUMBERS THAT I PREVIOUSLY DISCUSSED:  THE TYPES OF OFFENDERS,

13  ADULTS, MISDEMEANOR FELON, NUMBERS FOR INDIVIDUAL COUNTIES

14  ACROSS THE STATE.

15  **Q.**   AND FOR WHAT PERIOD OF TIME WOULD THE EXHIBIT 604 THROUGH

16  607 COVER?

17  **A.**   IT LOOKS LIKE 2006, 2007.

18  **Q.**   NOW, THIS ISN'T ALL THE DATA THAT IS COMPILED BY CPOC,

19  CORRECT?

20  **A.**   ACTUALLY, THERE'S 2007, 2008 ALSO AS PART OF THE EXHIBITS

21  WHEN YOU GO FARTHER IN.

22          NO.  CPOC ACTUALLY COLLECTS QUITE A BIT OF DATA --

23  **Q.**   OKAY.

24  **A.**   -- ON JUVENILES AND ADULTS. THIS WOULD BE PART OF IT, YES.

25  **Q.**   SO THIS IS KIND OF A SUMMARY --

1   A.   YES.

2   Q.   -- BY COUNTY?

3            IF YOU WOULD TAKE A LOOK AT 608 THROUGH 611, I

4   BELIEVE THOSE WERE THE 2007, 2008 YOU WERE --

5            **JUDGE KARLTON:**  I THINK THERE'S CONFUSION.  I HAVE

6   JUST 2008.  DOWN AT THE BOTTOM HERE, THAT'S WHAT IT SAYS.

7            **JUDGE HENDERSON:**  YES, THAT'S WHAT I HAVE.

8            **THE WITNESS:**  IF YOU LOOK AT THE TOP --

9            **JUDGE KARLTON:**  OH, I SEE.

10           **THE WITNESS:**  -- IT SAYS:

11               "CPOC ANNUAL SURVEY 2006, 2007 DATA."

12           **JUDGE KARLTON:**  GOT IT.

13           **THE WITNESS:**  YES.  2007 AND 2008 IS IN THE BACK.

14  **BY MS. BARLOW:**

15  Q.   SO TO THE BEST OF YOUR KNOWLEDGE THOSE ARE THE TRUE AND

16  CORRECT COPIES OF THE CPOC COMPILED STATISTICS FOR THOSE TWO

17  CALENDAR OR FISCAL YEARS, RATHER?

18  A.   YES.

19  Q.   OKAY. THANK YOU.

20           COULD YOU DESCRIBE FOR US HOW THE PROBATION

21  DEPARTMENT WORKS WITH OTHER DEPARTMENTS IN THE COMMUNITY TO

22  SERVE OFFENDERS?

23  A.   WELL, PROBATION ACTS AS -- WE REFER TO IT AS "A BROKER FOR

24  SERVICES."

25           PROBATION ACTUALLY SHORT OF THE SUPERVISION OF

**EXCERPTS OF DEPOSITION OF RICHARD L. WORD
IN SUPPORT OF RESPONSE TO OBJECTIONS TO
DI-615 AND DI-616**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE


RALPH COLEMAN, et al.,

      Plaintiffs,

-vs-

ARNOLD SCHWARZENEGGER, et al.,

      Defendants.

_____/

**CERTIFIED COPY**

NO. CIV S-90-0520 LKK JFM P

THREE-JUDGE COURT


MARCIANO PLATA, et al.,

      Plaintiffs,

-vs-

ARNOLD SCHWARZENEGGER, et al.,

      Defendants.

_____/

NO. C01-1351 TEH

THREE-JUDGE COURT


Deposition of

RICHARD L. WORD

Thursday, August 28, 2008


Reported by:
KACY PARKER BARAJAS, CSR No. 10915, CRR
Job No. 19939LR



**PHILLIPS LEGAL SERVICES**
· SACRAMENTO DEPOSITION REPORTERS ·
350 UNIVERSITY AVENUE, SUITE 270
SACRAMENTO, CA 95825
916.927.3600 · 916.927.3605 (FAX)
WWW.PHILLIPSDEPO.COM

Richard Word - 8/28/2008

1  So I'd like to know more about who and where, how many, and

2  what these folks have been committed for.  I can add this is

3  always a little pet peeve of mine.  When people say we're

4  going to release the nonviolent, that concerns me too

5  because those often mean drug dealers.  They fuel drug

6  markets which lead to violence.

7  Q.      BY MR. SANGSTER:  Do you have any opinions about

8  how an order directing the release of prisoners would impact

9  your jurisdiction depending on how many are released?  I

10 mean, have you sat down and said if 10,000 are released from

11 the state, it's going to impact my department this way; if

12 50,000 are released, it's going to impact me this way?

13 A.      Yeah.  I was looking at some numbers, and I'll show

14 you those from the CDCR web site, that they were 1,868 in

15 state institutions committed from Solano County at the end

16 of 2006.  So I was thinking if you released 25 percent, that

17 could be 350 to 400 released into Solano County.  Maybe a

18 hundred then would be released to Vacaville.

19 Q.      All right.  So what's the CDCR web site you're

20 looking at?

21 A.      Just that, their California Department of

22 Corrections and Rehabilitation.  It was a -- I'll show it to

23 you.  Just a second.  Institution population by county of

24 commitment, their table 10.

25      MR. SANGSTER:  All right.  Can we go ahead and mark

1  that as Exhibit 1, please.

2                        (Exhibit 1 was marked.)

3  Q.        BY MR. SANGSTER:   So Exhibit 1 is the information

4  that you got from the CDCR web site, and that reports that

5  1.1 percent of the state prison population comes from

6  Solano County?

7  A.        Yes, sir.

8  Q.        And so you're assuming -- well, strike that.   You

9  mentioned that 25 percent of that end up in Vacaville; is

10 that right?

11 A.        If 25 percent of that total number of 1,868 is

12 released early, I estimate that total number to be then 350

13 to 400 inmates, and then from that, I estimate about 100

14 would probably be released to Vacaville.

15 Q.        All right.   So what impact, if any -- well, strike

16 that.   Are you able to tell me what impact you think a

17 prisoner release order would have if it resulted in 100

18 people from state prison being released back into Vacaville?

19 A.        It would still depend.   There are many questions I

20 would ask.   Did they complete any programming in prison?

21 Are they being transitioned back into the community?   How

22 long did they serve?   I think there should be some sort of

23 transition if they've been in prison for a while.   I think

24 that makes sense to me.

25 Q.        You'd still need to know the risk characteristics

1  Q.        Okay.  This is an article dated October 8, 2007, in

2  the Los Angeles Times, and why did you bring this?

3  A.        I like her work, and I've met with her.  And we've

4  been in meetings together with the Governor, and she seems

5  to have a good grasp of this whole prisoner reentry issue

6  and what's required and what is necessary so that we can

7  make better sense and improve the system we have that's not

8  working.

9  Q.        Okay.  What else did you bring with you?

10 A.        I guess it's entitled "Petersilia's Reform Agenda."

11 That's not the entire PowerPoint presentation, but it's five

12 or six pages of it.

13 Q.        Where did you get this?

14 A.        That was -- where did I get that?  I think I had

15 that in a personal file, and I just printed out pages of it.

16 I had received it sometime ago.

17 Q.        All right.  I'd like to mark this as Exhibit 2, and

18 we can give you a copy of this back right after the

19 deposition.

20                      (Exhibit 2 was marked.)

21        MS. BARLOW:  Is that the PowerPoint presentation?

22        MR. SANGSTER:  That's "Petersilia's Reform Agenda,"

23 the PowerPoint presentation.

24 Q.        And how did Exhibit 2 impact your opinions, if at

25 all?

1  A.        I'd say they confirmed my opinions.

2  Q.        Your opinions about what, the need for programming?

3  A.        Yeah.  Programming and changing the system and

4  earned discharge, transitioning people maybe through halfway

5  houses and stuff like that that I've seen work in talking to

6  people that run halfway houses, stuff like that, it seems to

7  confirm what I believe.  GPS, I think chiefs across the

8  state would like to see more of that.

9  Q.        What other documents did you bring with you?

10 A.        Just some remaining pages from the California

11 Department of Corrections and Rehabilitation web site.

12 Q.        What you've handed me are pages from it says "Total

13 New Felon Admissions and Parole Violators Returned with a

14 New Term," and you've got a checkmark next to Solano's

15 figure which shows 244 return with a new term.  What did you

16 understand that meant or did you?

17 A.        If I could take a look.  I'm sorry.  I took that to

18 mean in calendar year 2006, there were a total of 810 new

19 felony -- new admissions or parole violators that were

20 committed to state institutions with a new prison term.  So

21 they were either new felonies or people on parole that were

22 violated, sentenced to new terms, 810 in Solano County for

23 the calendar year 2006, and then it's broken out by rate per

24 100,000, felony new admissions versus parole violators.

25 Q.        What you're referring to is labeled table 5A at the

REPORTER'S CERTIFICATE

I certify that the witness in the foregoing deposition,

RICHARD L. WORD

was by me duly sworn to testify in the within-entitled cause; that said deposition was taken at the time and place therein named; that the testimony of said witness was reported by me, a duly Certified Shorthand Reporter of the State of California authorized to administer oaths and affirmations, and said testimony was thereafter transcribed into typewriting.

I further certify that I am not of counsel or attorney for either or any of the parties to said deposition, nor in any way interested in the outcome of the cause named in said deposition.

IN WITNESS WHEREOF, I have hereunto set my hand this 8th day of September, 2008.


KACY PARKER BARAJAS, RPR

Certified Realtime Reporter

State of California

Certificate No. 10915

# EXCERPTS OF DEPOSITION OF JERRY DYER
# IN SUPPORT OF RESPONSE TO OBJECTIONS TO
# DI-636 AND DI-637

**Original Transcript**

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED
OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28
UNITED STATES CODE

RALPH COLEMAN,
            Plaintiff,

vs.                                    CASE NO. Civ S 90-0520
                                       LKK-JFM P
ARNOLD SCHWARZENEGGER,                 THREE-JUDGE PANEL
et al.,

            Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~
MARCIANO PLATA, et al.,
            Plaintiff,

vs.

ARNOLD SCHWARZENEGGER,
et al.,

            Defendant.
~~~~~~~~~~~~~~~~~~~~~~~~~

DEPOSITION OF
JERRY DYER

OCTOBER 6, 2008
11:44 A.M.

2323 MARIPOSA MALL
FRESNO, CALIFORNIA

Reported by Celeste J. Silva, CSR No. 10179

P A U L S O N
REPORTING & LITIGATION SERVICES
www.paulsonreporting.com

Telephone: 559.222.9922
Toll Free: 800.300.1214
Facsimile: 559.222.7922

191 East Barstow Avenue
Suite 100
Fresno, CA 93710

Jerry Dyer                                          October 6, 2008



103

1    Q    That could be in part due to the way

2    they're publicized, correct?

3    A    Yes.  And fear -- you won't see crime

4    decrease and fear decrease at the same time.  But

5    what happens is there's a lag time.  If you

6    publicize the fact that crime rates are down over

7    a period of time fear will increase.

8         MS. BARLOW:  Can we go off the record for

9    just a minute?

10         (A recess was taken.)

11         MS. BARLOW:  Just for the record, I do

12    want to point out that counsel had earlier asked

13    the Chief for the source of the information in his

14    record indicating that ten percent of criminals

15    are responsible for eighty percent of crimes on

16    average, and that comes from a publication called

17    Rational Choice and Criminal Behavior.  And we

18    have provided counsel with the page which is page

19    300 of that volume which contains that

20    information.



21         MR. SPECTER:  Okay.

22    Q    (BY MR. SPECTER)  So, Jerry, you also

23    recognize that fear could be a function of media

24    publicity, right?

25    A    Yes.

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 559.222.9922
Facsimile: 559.222.7922

191 East Barstow Avenue
Suite 100
Fresno, CA 93710

Jerry Dyer                                          October 6, 2008

104

1      Q     So now the next part seems to me you

2   start veering into dangerous territory.

3            MS. BARLOW:   I'm going to move to strike

4   that as completely irrelevant to the question.

5   BY MR. SPECTER:

6      Q     Right here's the question.  You know,

7   according to this statement, you can -- there's a

8   correlation between sales tax revenue and the

9   amount of fear in a community.

10     A     Yes.

11     Q     The first question is have you done any

12  studies to determine whether that's -- if it's

13  true, it's true in Fresno?

14     A     Yeah, the study was done for us out of

15  the University of Pacific of Stockton.  I can get

16  you the research on that.  And the purpose was to

17  demonstrate the impact crime could have on a

18  community in terms of financial impact.  And the

19  other study dealt with the economics was this

20  Sensible Sentencing Trust but not given the sales

21  tax revenue.  But there is a study that deals with

22  that.

23     Q     Okay.  And you asked him to provide it to

24  me?

25            MS. BARLOW:   Of course, we'd be happy to

Telephone: 559.222.9922
Facsimile: 559.222.7922

PAULSON

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

191 East Barstow Avenue
Suite 100
Fresno, CA 93710

Jerry Dyer                                          October 6,

105

1   provide that.

2          THE WITNESS:  It's a University of

3   Pacific, they did it this past year as we were

4   looking at a sales tax.

5   BY MR. SPECTER:

6      Q     You say on the next page that parolees in

7   Fresno receive very little supervision.

8      A     Correct.

9      Q     If they receive more -- did we go over

10  this morning if they receive more supervision

11  would the community be safer, correct?

12     A     Yes.

13     Q     You know, there's a study by the Urban

14  Institute which looked at parole in state -- well,

15  looked at states which had different parole

16  policies, some of which didn't have parole

17  comparative with crime rates in the various

18  states, it came out and found that parole

19  supervision really didn't make a difference in

20  recidivism.  Were you aware of that by the Urban

21  Institute?  Do you remember that study?

22     A     I remember those discussions when we were

23  doing the -- in our meetings, I remember that.

24     Q     And does that have any effect on your

25  opinion that parole supervision would reduce the

**PAULSON**

REPORTING & LITIGATION SERVICES, LLC

www.paulsonreporting.com

Telephone: 559.222.99
Facsimile: 559.222.79

191 East Barstow Avenue
Suite 10
Fresno, CA 937

Jerry Dyer                                                    October 6, 2008

138

1                    REPORTER'S CERTIFICATION

2

3          I, Celeste J. Silva, Certified Shorthand

4     Reporter in and for the State of California, do

5     here by certify:

6

7          That the foregoing witness was by me duly

8     sworn; that the deposition was then taken before

9     me at the time and place herein set forth; that

10    the testimony and proceedings were reported

11    stenographically by me and later transcribed into

12    typewriting under my direction; that the foregoing

13    is a true record of the testimony and proceedings

14    taken at that time.

15

16         IN WITNESS WHEREOF, I have subscribed my name

17    this_____17th_____ date of_____Oct._____, 2008.

18

19

20         /s/ Celeste J. Silva

21              Celeste J. Silva, CSR 10179

22

23

24

25

**PAULSON**

**REPORTING & LITIGATION SERVICES, LLC**

www.paulsonreporting.com

Telephone: 559.222.9922
Facsimile: 559.222.7922

191 East Barstow Avenue
Suite 100
Fresno, CA 93710

**EXCERPTS OF DEPOSITION OF RICHARD CONKLIN
IN SUPPORT OF RESPONSE TO OBJECTIONS TO
DI-665**

1

2              IN THE UNITED STATES DISTRICT COURTS

3           FOR THE EASTERN DISTRICT OF CALIFORNIA

4          AND THE NORTHERN DISTRICT OF CALIFORNIA

5    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

6    PURSUANT TO SECTION 2284 TITLE 28 UNITED STATES CODE

7

     RALPH COLEMAN, et al.,      )
8                                )
                Plaintiffs,      )
9                                )
         vs.                     ) No. Civ S 90-0520 LKK-JFM P
10                               )
     ARNOLD SCHWARZENEGGER,      )
11   et al.,                     )
                                 )
12              Defendants.      )
                                 )
13   _____    )
                                 )
     MARCIANO PLATA, et          )
14   al.,                        )
                                 )
15              Plaintiffs,      ) No.  C01-1351 TEH
                                 ) THREE-JUDGE COURT
16       vs.                     )
                                 )
17   ARNOLD SCHWARZENEGGER,      )
     et al.,                     )
18                               )
                Defendants.      )
19   _____    )

20          DEPOSITION OF:  RICHARD CONKLIN

21       TAKEN ON:  TUESDAY, SEPTEMBER 30, 2008

22

23

     Reported by:
24
     PATRICIA L. HUBBARD
25   CSR #3400, CRP #10, RPR #7847

                                              Page 1

**Golden Gate Reporting**

```
 1    BY MS. MORRIS:

 2           Q.    Are you familiar with Exhibit 2?

 3           A.    Yes.

 4           Q.    Can you tell me what Exhibit 2 is?

 5           A.    It's a summary of a meeting that I had

 6    with Jennifer Schaffer, who is the behavioral

 7    health director for San Diego County Human --

 8    Health and Human Services Agency.

 9           Q.    And just for clarity on the record,

10    could you actually read the title for the record?

11           A.    "Summary of Meeting With Jennifer

12    Schaffer, Ph.D."

13           Q.    Thank you.

14                 When did this meeting take place?

15           A.    Do you want the exact date?

16           Q.    An estimate.

17           A.    It was about two months ago.

18           Q.    About two months ago.  Okay.

19                 And do you know -- actually,

20    withdrawn.

21                 What was the purpose of the meeting?

22           A.    I wanted to meet with Dr. Schaffer in

23    preparation for this deposition to ask her if she

24    had an opinion and some sort of an estimate about

25    San Diego County Mental Health, Health and Human
```

Page 135

```
 1                    REPORTER'S CERTIFICATE

 2

 3              I, PATRICIA L. HUBBARD, do hereby

 4    certify:

 5

 6              That I am a duly qualified Certified

 7    Shorthand Reporter in and for the State of

 8    California, holder of Certificate Number 3400,

 9    which is in full force and effect, and that I am

10    authorized to administer oaths and affirmations;

11

12              That the foregoing deposition

13    testimony of the herein named witness, to wit,

14    RICHARD CONKLIN, was taken before me at the time

15    and place herein set forth;

16

17              That prior to being examined, RICHARD

18    CONKLIN was duly sworn or affirmed by me to testify

19    the truth, the whole truth, and nothing but the

20    truth;

21

22              That the testimony of the witness and

23    all objections made at the time of examination were

24    recorded stenographically by me and were thereafter

25    transcribed by me or under my direction and
```

1    supervision;

2              That the foregoing pages contain a

3    full, true and accurate record of the proceedings

4    and testimony to the best of my skill and ability;

5

6              I further certify that I am not a

7    relative or employee or attorney or counsel of any

8    of the parties, nor am I a relative or employee of

9    such attorney or counsel, nor am I financially

10   interested in the outcome of this action.

11

12             IN WITNESS WHEREOF, I have subscribed

13   my name this 2nd day of October, 2008.

14

15

16   _____
     PATRICIA L. HUBBARD, CSR #3400

17

18

19

20

21

22

23

24

25

Page 177

**EXCERPTS OF DEPOSITION OF DON MEYER
IN SUPPORT OF RESPONSE TO OBJECTIONS TO
DI-734**

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

--oOo--

RALPH COLEMAN, et al.,     No. Civ S 90-0520 LLK JFM P

        Plaintiffs,   THREE-JUDGE COURT

vs.

ARNOLD SCHWARZENEGGER,

et al.,


        Defendants.

           /

MARCIANO PLATA, et al.,

              No. C01-1531 TEH

        Plaintiffs,

             THREE-JUDGE COURT

vs.


ARNOLD SCHWARZENEGGER,

et al.,

        Defendants.

           /

        Deposition of

         DON MEYER

      Friday, August 29, 2008


Reported by:

THOMAS J. LANGE, CSR No. 4689

Registered Merit Reporter

Job No.: 19941LR

Don Meyer - 8/29/2008

1  constantly the budget issues about not having money.

2  Q.      Do you have direct knowledge what their

3  capacity is to take additional patients?

4  A.      Not direct knowledge, but re-entry facility

5  information.  There's going to be response to that.  But

6  I haven't seen what that is, so...

7  Q.      What's the source of your knowledge at this

8  point about the impact on local mental health services?

9  A.      Discussions with the Ed Smith, who is the

10 director of that outfit.

11 Q.      What did Ed Smith tell you and what did you say

12 to him?

13      MS. BARLOW:  That's compound.

14      THE WITNESS:  That their budget was such a mess

15 and they have to reduce programs they already have.

16 They eliminated Walters House, which would be a

17 placement facility, and funding for several others,

18 which would impact us and anybody else that wanted to

19 access it.  And, you know, he wasn't -- we never

20 discussed about parolees or what impact that would have.

21 Q.      BY MR. SANGSTER:  Okay.  What's Exhibit 14?

22 A.      That is "Final Report on the Mental Health

23 Services Continuum Program of the California Department

24 of Corrections and Rehabilitation - Parole Division."

25 Looks likes UCLA presented that -- prepared that.

Don Meyer - 8/29/2008

1  Q.        Where did you get Exhibit 14?

2  A.        I think it was an attachment.  I -- I think it

3  might have been from Kim.

4  Q.        When did you get it?

5            MS. BARLOW:  I don't remember ever seeing this

6  before, but...

7            THE WITNESS:  Wait a minute.  No.  No.

8  Actually, both of these came from CPOC, from Karen Pang.

9  Q.        BY MR. SANGSTER:  Exhibits 13 and 14 came from

10  CPOC?

11  A.        I'm pretty sure it came from Karen Pang.

12  Q.        When did she give you these?

13  A.        The last couple of weeks.

14  Q.        What led her to give you Exhibits 13 and 14?

15            MS. BARLOW:  Calls for speculation.

16  Q.        BY MR. SANGSTER:  Go ahead and answer.

17            MS. BARLOW:  If you can.

18            THE WITNESS:  I think just preparation for

19  Coleman/Plata in part, just give us some additional

20  background information.

21  Q.        BY MR. SANGSTER:  Did you request additional

22  background information from her?

23  A.        No, not specifically.  But I mean we have

24  talked and the chiefs have talked about, you know, the

25  issues that impact probation and what all this has to do

Don Meyer - 8/29/2008

1  litigation.  And I'm trying to find out --

2  A.      Originally, yeah, mainly about adult services

3  that -- adult services initially and the whole thing

4  about probation, adult probation being in such a mess.

5  Q.      What I'm trying to ascertain is other than the

6  documents from the Washington State Institute, were

7  there others that you had looked at before you became

8  involved in the Coleman and Plata litigation?

9  A.      I may have, but I just don't recall.

10  Q.      All right.  Have you read all of Exhibit 14?

11  A.      No, no.  I scanned that, but it was -- let me

12  refresh my memory.

13          Yeah, mainly focused on some of the

14  conclusions, some of the data in there.

15  Q.      What conclusions and data are you referring to?

16  A.      About many of them that actually didn't have

17  assessments done, I think.  That's -- I felt that was

18  pretty problematic.

19  Q.      Which page are you looking at?

20  A.      Page 31 under the conclusions and some of the

21  data about prerelease assignment of social workers

22  really have a very positive impact on success.

23  Q.      What's Exhibit 15?

24  A.      That is a list that we prepared of adult

25  residential facilities that Yolo County refers to and

REPORTER'S CERTIFICATE

     I certify that the foregoing proceedings in the within-entitled cause were reported at the time and place therein named; that said proceedings were reported by me, a duly Certified Shorthand Reporter of the State of California, and were thereafter transcribed into typewriting.

     I further certify that I am not of counsel or attorney for either or any of the parties to said cause of action, nor in any way interested in the outcome of the cause named in said cause of action.

     IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of September, 2008.

_____

THOMAS J. LANGE, Calif. CSR No. 4689
Registered Merit Reporter