# EXHIBIT A

# *California State Senate*

*Legislation*
*Codes*
*Statutes*
*Constitution*

*Bill Info -Help*
*Subscribe*
*Unsubscribe*
*Subscription*
*List*

I want to search again.

Documents associated with **ABX1 8** in the Session

Status   - 01/06/2009 - 2001 bytes
History   - 01/06/2009   1852 bytes

## Bill Text

**In order to view the PDF version of the bill text documents, you may need a free viewer from Adobe.**

Enrolled      - 12/18/2008      HTML - 133845 bytes      PDF - 297662 bytes
Amended      - 12/18/2008      HTML - 148053 bytes      PDF - 410583 bytes
Introduced   - 12/08/2008      HTML - 1908 bytes      PDF - 212004 bytes

## Analyses

Assembly Floor                    - 12/18/2008 - 5018 bytes
Senate Floor                      - 12/18/2008 - 6229 bytes

## Votes

Assembly Floor                    - 12/18/2008 - 1488 bytes
Senate Floor                      - 12/18/2008 - 1121 bytes
Assembly Floor                    - 12/08/2008 - 1464 bytes

## Veto Message

Veto Message                      - 01/06/2009 - 1178 bytes

**Assembly Bill No. 8**

———

Passed the Assembly  December 18, 2008

_____
_Chief Clerk of the Assembly_

———

Passed the Senate  December 18, 2008

_____
_Secretary of the Senate_

———

This bill was received by the Governor this _____ day of _____, 2008, at _____ o'clock _____M.

_____
_Private Secretary of the Governor_

**AB 8**           — 2 —

## CHAPTER _____

An act to amend Sections 14491, 17550.19, and 21653 of the Business and Professions Code, to amend Section 5305 of the Financial Code, to amend Section 421 of the Military and Veterans Code, to amend Sections 154, 155, 337.4, 368, 422.7, 476a, 484b, 484g, 484h, 487, 487b, 487e, 487f, 487h, 496, 498, 500, 502, 537, 537e, 550, 551, 565, 566, 592, 594.4, 641.3, 2932, 2933.1, 2933.2, 2933.3, 2933.5, 2933.6, 3000, 4019, and 4600 of, to amend, renumber, and add Section 2933.4 of, to add Sections 2933.05 and 3060.95, and to repeal Section 2933 of, the Penal Code, to amend Sections 14591 and 41955 of the Public Resources Code, to amend Sections 10851.5 and 42002.4 of the Vehicle Code, and to amend Sections 10980 and 15656 of the Welfare and Institutions Code, relating to the Department of Corrections and Rehabilitation.

LEGISLATIVE COUNSEL'S DIGEST

AB 8, Committee on Budget. Department of Corrections and Rehabilitation.

Existing law establishes certain values for determining if theft or certain other property crimes are punishable as felonies or not. Existing law provides that for many of these crimes, the threshold is $400, while the thresholds for certain other crimes are $100, $200, and $1,000, as specified.

This bill would increase those thresholds uniformly; for example by increasing the $400 threshold to $950.

Because this bill would change the definitions of various crimes, it would impose a state-mandated local program.

Existing law provides for a 6-month reduction in a prisoner's term of confinement for every 6 months of full-time performance by the prisoner in a qualified work, training, or education program, as specified. Existing law provides that for every 6 days served in a specified local detention center following an arrest and prior to the imposition of a prison sentence for a felony conviction, 2 days shall be deducted from his or her period of confinement, as specified.

This bill would instead provide that certain prisoners shall earn one day of credit for every one day served either in the state prison

or in a local facility prior to delivery to the state prison. This bill would provide for up to 4 months of additional credit for the successful completion of certain programs offered by the department, as specified. This bill would also expand an existing program for extra time credits for inmates assigned to conservation camps to apply to inmates on the wait list for conservation camps.

Existing law provides that the maximum period of parole for persons who have served at least one year and one day of imprisonment in the state prison is 3 years, unless the person was convicted of certain crimes, or unless the parole authority, for "good cause," waives parole. Existing law also requires a person who has not been convicted of a violent felony to be discharged from parole after one year of continuous parole supervision, and a person who has been convicted of a violent felony who has a parole term of 3 years to be discharged after 2 years of continuous supervision or who has a parole term of 5 years to be discharged after 3 years of continuous supervision, unless the parole authority determines that the person should be retained on parole, as specified.

This bill would instead provide that a person who is not required to register as a sex offender, and who was not sentenced for any offense that is a serious felony or a violent felony, as defined, shall be subject to six months of parole, except as specified. The bill would further provide that a person who is on parole as of the effective date of this bill who is not pending revocation shall be discharged from parole immediately if he or she has already served the time and met the terms specified above, or upon meeting those terms.

Existing law provides for various sanctions to be imposed on persons who violate parole, including reincarceration.

This bill would state the intent of the Legislature that parole violators who present a lower risk to public safety, as defined, shall have community sanctions imposed, as specified. The bill would require the Department of Corrections and Rehabilitation to implement a "parole violation decisionmaking instrument" to provide guidelines for use by parole agents and the Board of Parole Hearings to determine the most appropriate sanctions for parole violators, as specified. The bill would require the department to adopt regulations to implement these provisions. The bill would

**AB 8**                    — 4 —

provide that its provisions do not limit the authority of counties to prosecute parolees who commit new crimes.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

This bill would make its provisions contingent on the enactment of other legislation, as specified.

The California Constitution authorizes the Governor to declare a fiscal emergency and to call the Legislature into special session for that purpose. The Governor issued a proclamation declaring a fiscal emergency, and calling a special session for this purpose, on December 1, 2008.

This bill would state that it addresses the fiscal emergency declared by the Governor by proclamation issued on December 1, 2008, pursuant to the California Constitution.

*The people of the State of California do enact as follows:*

SECTION 1. Section 14491 of the Business and Professions Code is amended to read:

14491. The violation of any of the provisions of this article is a misdemeanor, except that if the violation consists of unlawfully using, selling, or secreting in any place supplies of a value exceeding nine hundred fifty dollars ($950), the violation is a felony.

SEC. 2. Section 17550.19 of the Business and Professions Code is amended to read:

17550.19. In addition to any civil penalties provided in this division, violation of this article is punishable as follows:

(a) As a misdemeanor by a fine of not more than ten thousand dollars ($10,000), by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment for each violation.

(b) In addition, any violation of Section 17550.14 or subdivision (b) or (c) of Section 17550.15 where money or real or personal property received or obtained by a seller of travel for transportation or travel services from any and all persons aggregates two thousand

three hundred fifty dollars ($2,350) or more in any consecutive 12-month period, or the payment or payments by or on behalf of any one passenger exceeds in the aggregate nine hundred fifty dollars ($950) in any 12-month period, is punishable either as a misdemeanor or as a felony by imprisonment in the state prison for 16 months, or two or three years, by a fine of not more than twenty-five thousand dollars ($25,000), or by both that fine and imprisonment for each violation.

(c)  In addition, any intentional use for any purpose of a false seller of travel registration number, with intent to defraud, by an unregistered seller of travel is punishable as a misdemeanor or felony as provided in this section.

(d)  Any violation of Section 17550.15 shall be a misdemeanor and shall be punished as provided in this section. Every act in violation of Section 17550.15 may be prosecuted as a separate and distinct violation and consecutive sentences may be imposed for each violation.

(e)  Sellers of travel shall also comply with Sections 17537, 17537.1, and 17537.2 of the Business and Professions Code and all other applicable laws. This section shall not be construed to preclude the applicability of any other provision of the criminal law of this state that applies or may apply to any transaction.

SEC. 3.   Section 21653 of the Business and Professions Code is amended to read:

21653.  Every junk dealer or secondhand dealer who resells any item acquired in violation of Section 21652 is guilty of a felony, if the value of the item exceeds nine hundred fifty dollars ($950), and is guilty of a misdemeanor if value of the item does not exceed nine hundred fifty dollars ($950).

SEC. 4.   Section 5305 of the Financial Code is amended to read:

5305.   Any institution-affiliated party who abstracts or willfully misapplies any of the money, funds, or property of the savings association, or willfully misapplies its credit, is guilty of a felony and shall be punished by a fine of not more than one million dollars ($1,000,000), by imprisonment in the state prison for 2, 3, or 4 years, or by both that fine and imprisonment. However, if the amount abstracted or willfully misapplied does not exceed two hundred fifty dollars ($250), the offense shall instead be punishable by a fine of not more than one thousand dollars ($1,000), by

AB 8                    — 6 —

imprisonment in the county jail for not more than one year or in the state prison, or by both that fine and imprisonment.

SEC. 5.  Section 421 of the Military and Veterans Code is amended to read:

421.  Any person who secretes, sells, disposes of, offers for sale, purchases, retains after demand made by a commissioned officer of the National Guard or of the unorganized militia when called into the service of the state or Naval Militia, or in any manner pawns or pledges any arms, uniforms, equipment, or military or naval property of the state or of the United States, or of any organization of the active militia or of the unorganized militia when called into the service of the state is guilty of a felony if said arms, uniforms, equipments, or military or naval property of the state or of the United States is of a value of nine hundred fifty dollars ($950) or more, otherwise such person is guilty of a misdemeanor.

SEC. 6.  Section 154 of the Penal Code is amended to read:

154.  (a)  Every debtor who fraudulently removes his or her property or effects out of this state, or who fraudulently sells, conveys, assigns or conceals his or her property with intent to defraud, hinder or delay his or her creditors of their rights, claims, or demands, is punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(b)  Where the property so removed, sold, conveyed, assigned, or concealed consists of a stock in trade, or a part thereof, of a value exceeding two hundred fifty dollars ($250), the offense shall be a felony and punishable as such.

SEC. 7.  Section 155 of the Penal Code is amended to read:

155.  (a)  Every person against whom an action is pending, or against whom a judgment has been rendered for the recovery of any personal property, who fraudulently conceals, sells, or disposes of that property, with intent to hinder, delay, or defraud the person bringing the action or recovering the judgment, or with such intent removes that property beyond the limits of the county in which it may be at the time of the commencement of the action or the rendering of the judgment, is punishable by imprisonment in a county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(b) Where the property so concealed, sold, disposed of, or removed consists of a stock in trade, or a part thereof, of a value exceeding two hundred fifty dollars ($250), the offenses shall be a felony and punishable as such.

SEC. 8.  Section 337.4 of the Penal Code is amended to read:

337.4.  Any person who in the commission of touting obtains money in excess of nine hundred fifty dollars ($950) may, in addition to being prosecuted for the violation of any provision of this chapter, be prosecuted for the violation of Section 487 of this code.

SEC. 9.  Section 368 of the Penal Code is amended to read:

368.  (a) The Legislature finds and declares that crimes against elders and dependent adults are deserving of special consideration and protection, not unlike the special protections provided for minor children, because elders and dependent adults may be confused, on various medications, mentally or physically impaired, or incompetent, and therefore less able to protect themselves, to understand or report criminal conduct, or to testify in court proceedings on their own behalf.

(b) (1) Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years.

(2) If in the commission of an offense described in paragraph (1), the victim suffers great bodily injury, as defined in Section 12022.7, the defendant shall receive an additional term in the state prison as follows:

(A) Three years if the victim is under 70 years of age.

(B) Five years if the victim is 70 years of age or older.

(3) If in the commission of an offense described in paragraph (1), the defendant proximately causes the death of the victim, the defendant shall receive an additional term in the state prison as follows:

(A) Five years if the victim is under 70 years of age.

(B) Seven years if the victim is 70 years of age or older.

(c) Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health may be endangered, is guilty of a misdemeanor. A second or subsequent violation of this subdivision is punishable by a fine not to exceed two thousand dollars ($2,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

(d) Any person who is not a caretaker who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of an elder or a dependent adult, and who knows or reasonably should know that the victim is an elder or a dependent adult, is punishable by imprisonment in a county jail not exceeding one year, or in the state prison for two, three, or four years, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950); and by a fine not exceeding one thousand dollars ($1,000), by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value not exceeding nine hundred fifty dollars ($950).

(e) Any caretaker of an elder or a dependent adult who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of that elder or dependent adult, is punishable by imprisonment in a

county jail not exceeding one year, or in the state prison for two, three, or four years when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950), and by a fine not exceeding one thousand dollars ($1,000), by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value not exceeding nine hundred fifty dollars ($950).

(f)  Any person who commits the false imprisonment of an elder or a dependent adult by the use of violence, menace, fraud, or deceit is punishable by imprisonment in the state prison for two, three, or four years.

(g)  As used in this section, "elder" means any person who is 65 years of age or older.

(h)  As used in this section, "dependent adult" means any person who is between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age. "Dependent adult" includes any person between the ages of 18 and 64 who is admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code.

(i)  As used in this section, "caretaker" means any person who has the care, custody, or control of, or who stands in a position of trust with, an elder or a dependent adult.

(j)  Nothing in this section shall preclude prosecution under both this section and Section 187 or 12022.7 or any other provision of law. However, a person shall not receive an additional term of imprisonment under both paragraphs (2) and (3) of subdivision (b) for any single offense, nor shall a person receive an additional term of imprisonment under both Section 12022.7 and paragraph (2) or (3) of subdivision (b) for any single offense.

(k)  In any case in which a person is convicted of violating these provisions, the court may require him or her to receive appropriate counseling as a condition of probation. Any defendant ordered to be placed in a counseling program shall be responsible for paying the expense of his or her participation in the counseling program

AB 8                    — 10 —

as determined by the court. The court shall take into consideration the ability of the defendant to pay, and no defendant shall be denied probation because of his or her inability to pay.

SEC. 10.  Section 422.7 of the Penal Code is amended to read:

422.7.  Except in the case of a person punished under Section 422.6, any hate crime that is not made punishable by imprisonment in the state prison shall be punishable by imprisonment in the state prison or in a county jail not to exceed one year, by a fine not to exceed ten thousand dollars ($10,000), or by both that imprisonment and fine, if the crime is committed against the person or property of another for the purpose of intimidating or interfering with that other person's free exercise or enjoyment of any right secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States under any of the following circumstances, which shall be charged in the accusatory pleading:

(a)  The crime against the person of another either includes the present ability to commit a violent injury or causes actual physical injury.

(b)  The crime against property causes damage in excess of nine hundred fifty dollars ($950).

(c)  The person charged with a crime under this section has been convicted previously of a violation of subdivision (a) or (b) of Section 422.6, or has been convicted previously of a conspiracy to commit a crime described in subdivision (a) or (b) of Section 422.6.

SEC. 11.  Section 476a of the Penal Code is amended to read:

476a.  (a)  Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or depositary, or person, or firm, or corporation, for the payment of such check, draft, or order and all other checks, drafts, or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison.

(b)  However, if the total amount of all such checks, drafts, or orders that the defendant is charged with and convicted of making, drawing, or uttering does not exceed five hundred dollars ($500), the offense is punishable only by imprisonment in the county jail for not more than one year, except that this subdivision shall not be applicable if the defendant has previously been convicted of a violation of Section 470, 475, or 476, or of this section, or of the crime of petty theft in a case in which defendant's offense was a violation also of Section 470, 475, or 476 or of this section or if the defendant has previously been convicted of any offense under the laws of any other state or of the United States which, if committed in this state, would have been punishable as a violation of Section 470, 475 or 476 or of this section or if he has been so convicted of the crime of petty theft in a case in which, if defendant's offense had been committed in this state, it would have been a violation also of Section 470, 475, or 476, or of this section.

(c)  Where such check, draft, or order is protested, on the ground of insufficiency of funds or credit, the notice of protest thereof shall be admissible as proof of presentation, nonpayment and protest and shall be presumptive evidence of knowledge of insufficiency of funds or credit with such bank or depositary, or person, or firm, or corporation.

(d)  In any prosecution under this section involving two or more checks, drafts, or orders, it shall constitute prima facie evidence of the identity of the drawer of a check, draft, or order if:

(1)  At the time of the acceptance of such check, draft or order from the drawer by the payee there is obtained from the drawer the following information: name and residence of the drawer, business or mailing address, either a valid driver's license number or Department of Motor Vehicles identification card number, and the drawer's home or work phone number or place of employment. Such information may be recorded on the check, draft, or order itself or may be retained on file by the payee and referred to on the check, draft, or order by identifying number or other similar means; and

(2)  The person receiving the check, draft, or order witnesses the drawer's signature or endorsement, and, as evidence of that, initials the check, draft, or order at the time of receipt.

AB 8                           — 12 —

(e)  The word "credit" as used herein shall be construed to mean an arrangement or understanding with the bank or depositary or person or firm or corporation for the payment of such check, draft or order.

(f)  If any of the preceding paragraphs, or parts thereof, shall be found unconstitutional or invalid, the remainder of this section shall not thereby be invalidated, but shall remain in full force and effect.

(g)  A sheriff's department, police department, or other law enforcement agency may collect a fee from the defendant for investigation, collection, and processing of checks referred to their agency for investigation of alleged violations of this section or Section 476.

The amount of the fee shall not exceed twenty-five dollars ($25) for each bad check in addition to the amount of any bank charges incurred by the victim as a result of the alleged offense. If the sheriff's department, police department, or other law enforcement agency collects any fee for bank charges incurred by the victim pursuant to this section, that fee shall be paid to the victim for any bank fees the victim may have been assessed. In no event shall reimbursement of the bank charge to the victim pursuant to this section exceed ten dollars ($10) per check.

SEC. 12.  Section 484b of the Penal Code is amended to read:

484b.  Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received, shall be guilty of a public offense and shall be punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in the county jail not exceeding one year, or by both such fine and such imprisonment if the amount diverted is in excess of two thousand three hundred fifty dollars ($2,350). If the amount diverted is less than two thousand three hundred fifty dollars ($2,350), the person shall be guilty of a misdemeanor.

SEC. 13.  Section 484g of the Penal Code is amended to read:

[1]

97

484g.  Every person who, with the intent to defraud, (a) uses, for the purpose of obtaining money, goods, services, or anything else of value, an access card or access card account information that has been altered, obtained, or retained in violation of Section 484e or 484f, or an access card which he or she knows is forged, expired, or revoked, or (b) obtains money, goods, services, or anything else of value by representing without the consent of the cardholder that he or she is the holder of an access card and the card has not in fact been issued, is guilty of theft. If the value of all money, goods, services, and other things of value obtained in violation of this section exceeds nine hundred fifty dollars ($950) in any consecutive six-month period, then the same shall constitute grand theft.

SEC. 14.  Section 484h of the Penal Code is amended to read:

484h.  Every retailer or other person who, with intent to defraud:

(a)  Furnishes money, goods, services or anything else of value upon presentation of an access card obtained or retained in violation of Section 484e or an access card which he or she knows is a counterfeit access card or is forged, expired, or revoked, and who receives any payment therefor, is guilty of theft. If the payment received by the retailer or other person for all money, goods, services, and other things of value furnished in violation of this section exceeds nine hundred fifty dollars ($950) in any consecutive six-month period, then the same shall constitute grand theft.

(b)  Presents for payment a sales slip or other evidence of an access card transaction, and receives payment therefor, without furnishing in the transaction money, goods, services, or anything else of value that is equal in value to the amount of the sales slip or other evidence of an access card transaction, is guilty of theft. If the difference between the value of all money, goods, services, and anything else of value actually furnished and the payment or payments received by the retailer or other person therefor upon presentation of a sales slip or other evidence of an access card transaction exceeds nine hundred fifty dollars ($950) in any consecutive six-month period, then the same shall constitute grand theft.

SEC. 15.  Section 487 of the Penal Code is amended to read:

487.  Grand theft is theft committed in any of the following cases:

1

97

AB 8                     — 14 —

(a) When the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950), except as provided in subdivision (b).

(b) Notwithstanding subdivision (a), grand theft is committed in any of the following cases:

(1) (A) When domestic fowls, avocados, olives, citrus or deciduous fruits, other fruits, vegetables, nuts, artichokes, or other farm crops are taken of a value exceeding two hundred fifty dollars ($250).

(B) For the purposes of establishing that the value of avocados or citrus fruit under this paragraph exceeds two hundred fifty dollars ($250), that value may be shown by the presentation of credible evidence which establishes that on the day of the theft avocados or citrus fruit of the same variety and weight exceeded two hundred fifty dollars ($250) in wholesale value.

(2) When fish, shellfish, mollusks, crustaceans, kelp, algae, or other aquacultural products are taken from a commercial or research operation which is producing that product, of a value exceeding two hundred fifty dollars ($250).

(3) Where the money, labor, or real or personal property is taken by a servant, agent, or employee from his or her principal or employer and aggregates nine hundred fifty dollars ($950) or more in any 12 consecutive month period.

(c) When the property is taken from the person of another.

(d) When the property taken is any of the following:

(1) An automobile, horse, mare, gelding, any bovine animal, any caprine animal, mule, jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow, or pig.

(2) A firearm.

(e) This section shall become operative on January 1, 1997.

SEC. 16.  Section 487b of the Penal Code is amended to read:

487b.  Every person who converts real estate of the value of two hundred fifty dollars ($250) or more into personal property by severance from the realty of another, and with felonious intent to do so, steals, takes, and carries away such property is guilty of grand theft and is punishable by imprisonment in the state prison.

SEC. 17.  Section 487e of the Penal Code is amended to read:

487e.  Every person who feloniously steals, takes, or carries away a dog of another which is of a value exceeding nine hundred fifty dollars ($950) is guilty of grand theft.

SEC. 18.  Section 487f of the Penal Code is amended to read:

487f.  Every person who feloniously steals, takes, or carries away a dog of another which is of a value not exceeding nine hundred fifty dollars ($950) is guilty of petty theft.

SEC. 19.  Section 487h of the Penal Code is amended to read:

487h.  (a)  Every person who steals, takes, or carries away cargo of another, when the cargo taken is of a value exceeding nine hundred fifty dollars ($950), except as provided in Sections 487, 487a, and 487d, is guilty of grand theft.

(b)  For the purposes of this section, "cargo" means any goods, wares, products, or manufactured merchandise that has been loaded into a trailer, railcar, or cargo container, awaiting or in transit.

(c)  This section shall remain in effect only until January 1, 2010, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2010, deletes or extends that date.

SEC. 20.  Section 496 of the Penal Code is amended to read:

496.  (a)  Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year. However, if the district attorney or the grand jury determines that this action would be in the interests of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed nine hundred fifty dollars ($950), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year.

A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property.

(b)  Every swap meet vendor, as defined in Section 21661 of the Business and Professions Code, and every person whose principal business is dealing in, or collecting, merchandise or personal property, and every agent, employee, or representative of that person, who buys or receives any property of a value in excess of nine hundred fifty dollars ($950) that has been stolen or obtained in any manner constituting theft or extortion, under circumstances

that should cause the person, agent, employee, or representative to make reasonable inquiry to ascertain that the person from whom the property was bought or received had the legal right to sell or deliver it, without making a reasonable inquiry, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year.

Every swap meet vendor, as defined in Section 21661 of the Business and Professions Code, and every person whose principal business is dealing in, or collecting, merchandise or personal property, and every agent, employee, or representative of that person, who buys or receives any property of a value of nine hundred fifty dollars ($950) or less that has been stolen or obtained in any manner constituting theft or extortion, under circumstances that should cause the person, agent, employee, or representative to make reasonable inquiry to ascertain that the person from whom the property was bought or received had the legal right to sell or deliver it, without making a reasonable inquiry, shall be guilty of a misdemeanor.

(c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

(d) Notwithstanding Section 664, any attempt to commit any act prohibited by this section, except an offense specified in the accusatory pleading as a misdemeanor, is punishable by imprisonment in the state prison, or in a county jail for not more than one year.

SEC. 21.   Section 498 of the Penal Code is amended to read:

498.   (a) The following definitions govern the construction of this section:

(1) "Person" means any individual, or any partnership, firm, association, corporation, limited liability company, or other legal entity.

(2) "Utility" means any electrical, gas, or water corporation as those terms are defined in the Public Utilities Code, and electrical, gas, or water systems operated by any political subdivision.

(3) "Customer" means the person in whose name utility service is provided.

(4) "Utility service" means the provision of electricity, gas, water, or any other service provided by the utility for compensation.

(5) "Divert" means to change the intended course or path of electricity, gas, or water without the authorization or consent of the utility.

(6) "Tamper" means to rearrange, injure, alter, interfere with, or otherwise prevent from performing a normal or customary function.

(7) "Reconnection" means the reconnection of utility service by a customer or other person after service has been lawfully disconnected by the utility.

(b) Any person who, with intent to obtain for himself or herself utility services without paying the full lawful charge therefor, or with intent to enable another person to do so, or with intent to deprive any utility of any part of the full lawful charge for utility services it provides, commits, authorizes, solicits, aids, or abets any of the following shall be guilty of a misdemeanor:

(1) Diverts or causes to be diverted utility services, by any means whatsoever.

(2) Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.

(3) Tampers with any property owned by or used by the utility to provide utility services.

(4) Makes or causes to be made any connection with or reconnection with property owned or used by the utility to provide utility services without the authorization or consent of the utility.

(5) Uses or receives the direct benefit of all or a portion of utility services with knowledge or reason to believe that the diversion, tampering, or unauthorized connection existed at the time of that use, or that the use or receipt was otherwise without the authorization or consent of the utility.

(c) In any prosecution under this section, the presence of any of the following objects, circumstances, or conditions on premises controlled by the customer or by the person using or receiving the direct benefit of all or a portion of utility services obtained in violation of this section shall permit an inference that the customer or person intended to and did violate this section:

(1) Any instrument, apparatus, or device primarily designed to be used to obtain utility services without paying the full lawful charge therefor.

(2) Any meter that has been altered, tampered with, or bypassed so as to cause no measurement or inaccurate measurement of utility services.

(d) If the value of all utility services obtained in violation of this section totals more than nine hundred fifty dollars ($950) or if the defendant has previously been convicted of an offense under this section or any former section which would be an offense under this section, or of an offense under the laws of another state or of the United States which would have been an offense under this section if committed in this state, then the violation is punishable by imprisonment in the county jail for not more than one year, or in the state prison.

(e) This section shall not be construed to preclude the applicability of any other provision of the criminal law of this state.

SEC. 22.  Section 500 of the Penal Code is amended to read:

500.  (a) Any person who receives money for the actual or purported purpose of transmitting the same or its equivalent to foreign countries as specified in Section 1800.5 of the Financial Code who fails to do at least one of the following acts unless otherwise instructed by the customer is guilty of a misdemeanor or felony as set forth in subdivision (b):

(1) Forward the money as represented to the customer within 10 days of receipt of the funds.

(2) Give instructions within 10 days of receipt of the customer's funds, committing equivalent funds to the person designated by the customer.

(3) Refund to the customer any money not forwarded as represented within 10 days of the customer's written request for a refund pursuant to subdivision (a) of Section 1810.5 of the Financial Code.

(b) (1) If the total value of the funds received from the customer is less than nine hundred fifty dollars ($950), the offense set forth in subdivision (a) is punishable by imprisonment in the county jail not exceeding one year or by a fine not exceeding one thousand dollars ($1,000), or by both imprisonment and fine.

(2) If the total value of the money received from the customer is nine hundred fifty dollars ($950) or more, or if the total value of all moneys received by the person from different customers is nine hundred fifty dollars ($950), or more and the receipts were

1                                                        97

part of a common scheme or plan, the offense set forth in subdivision (a) is punishable by imprisonment in the state prison for 16 months, 2, or 3 years, by a fine not exceeding ten thousand dollars ($10,000), or by both imprisonment and fine.

SEC. 23.   Section 502 of the Penal Code is amended to read:

502.   (a) It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.

The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

(b) For the purposes of this section, the following terms have the following meanings:

(1) "Access" means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network.

(2) "Computer network" means any system that provides communications between one or more computer systems and input/output devices including, but not limited to, display terminals and printers connected by telecommunication facilities.

(3) "Computer program or software" means a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions.

(4) "Computer services" includes, but is not limited to, computer time, data processing, or storage functions, or other uses of a computer, computer system, or computer network.

(5) "Computer system" means a device or collection of devices, including support devices and excluding calculators that are not programmable and capable of being used in conjunction with

**AB 8**                    — 20 —

external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions including, but not limited to, logic, arithmetic, data storage and retrieval, communication, and control.

(6) "Data" means a representation of information, knowledge, facts, concepts, computer software, computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device.

(7) "Supporting documentation" includes, but is not limited to, all information, in any form, pertaining to the design, construction, classification, implementation, use, or modification of a computer, computer system, computer network, computer program, or computer software, which information is not generally available to the public and is necessary for the operation of a computer, computer system, computer network, computer program, or computer software.

(8) "Injury" means any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access to legitimate users of a computer system, network, or program.

(9) "Victim expenditure" means any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access.

(10) "Computer contaminant" means any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information. They include, but are not limited to, a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network.

(11) "Internet domain name" means a globally unique, hierarchical reference to an Internet host or service, assigned through centralized Internet naming authorities, comprising a series

☐                                                             97

of character strings separated by periods, with the rightmost character string specifying the top of the hierarchy.

(c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services.

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

(6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

(8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

(9) Knowingly and without permission uses the Internet domain name of another individual, corporation, or entity in connection with the sending of one or more electronic mail messages, and thereby damages or causes damage to a computer, computer system, or computer network.

(d) (1) Any person who violates any of the provisions of paragraph (1), (2), (4), or (5) of subdivision (c) is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for 16 months, or two or three

AB 8                    — 22 —

years, or by both that fine and imprisonment, or by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(2) Any person who violates paragraph (3) of subdivision (c) is punishable as follows:

(A) For the first violation that does not result in injury, and where the value of the computer services used does not exceed nine hundred fifty dollars ($950), by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(B) For any violation that results in a victim expenditure in an amount greater than five thousand dollars ($5,000) or in an injury, or if the value of the computer services used exceeds nine hundred fifty dollars ($950), or for any second or subsequent violation, by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for 16 months, or two or three years, or by both that fine and imprisonment, or by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(3) Any person who violates paragraph (6) or (7) of subdivision (c) is punishable as follows:

(A) For a first violation that does not result in injury, an infraction punishable by a fine not exceeding one thousand dollars ($1,000).

(B) For any violation that results in a victim expenditure in an amount not greater than five thousand dollars ($5,000), or for a second or subsequent violation, by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(C) For any violation that results in a victim expenditure in an amount greater than five thousand dollars ($5,000), by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for 16 months, or two or three years, or by both that fine and imprisonment, or by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(4) Any person who violates paragraph (8) of subdivision (c) is punishable as follows:

(A) For a first violation that does not result in injury, a misdemeanor punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(B) For any violation that results in injury, or for a second or subsequent violation, by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

(5) Any person who violates paragraph (9) of subdivision (c) is punishable as follows:

(A) For a first violation that does not result in injury, an infraction punishable by a fine not one thousand dollars.

(B) For any violation that results in injury, or for a second or subsequent violation, by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(e) (1) In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access. For the purposes of actions authorized by this subdivision, the conduct of an unemancipated minor shall be imputed to the parent or legal guardian having control or custody of the minor, pursuant to the provisions of Section 1714.1 of the Civil Code.

(2) In any action brought pursuant to this subdivision the court may award reasonable attorney's fees.

(3) A community college, state university, or academic institution accredited in this state is required to include computer-related crimes as a specific violation of college or university student conduct policies and regulations that may subject a student to disciplinary sanctions up to and including dismissal from the academic institution. This paragraph shall not apply to the University of California unless the Board of Regents adopts a resolution to that effect.

AB 8                            — 24 —

(4) In any action brought pursuant to this subdivision for a willful violation of the provisions of subdivision (c), where it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice as defined in subdivision (c) of Section 3294 of the Civil Code, the court may additionally award punitive or exemplary damages.

(5) No action may be brought pursuant to this subdivision unless it is initiated within three years of the date of the act complained of, or the date of the discovery of the damage, whichever is later.

(f) This section shall not be construed to preclude the applicability of any other provision of the criminal law of this state which applies or may apply to any transaction, nor shall it make illegal any employee labor relations activities that are within the scope and protection of state or federal labor laws.

(g) Any computer, computer system, computer network, or any software or data, owned by the defendant, that is used during the commission of any public offense described in subdivision (c) or any computer, owned by the defendant, which is used as a repository for the storage of software or data illegally obtained in violation of subdivision (c) shall be subject to forfeiture, as specified in Section 502.01.

(h) (1) Subdivision (c) does not apply to punish any acts which are committed by a person within the scope of his or her lawful employment. For purposes of this section, a person acts within the scope of his or her employment when he or she performs acts which are reasonably necessary to the performance of his or her work assignment.

(2) Paragraph (3) of subdivision (c) does not apply to penalize any acts committed by a person acting outside of his or her lawful employment, provided that the employee's activities do not cause an injury, as defined in paragraph (8) of subdivision (b), to the employer or another, or provided that the value of supplies or computer services, as defined in paragraph (4) of subdivision (b), which are used does not exceed an accumulated total of two hundred fifty dollars ($250).

(i) No activity exempted from prosecution under paragraph (2) of subdivision (h) which incidentally violates paragraph (2), (4), or (7) of subdivision (c) shall be prosecuted under those paragraphs.

(j) For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a

🔲                                                                    97

**AB 8**

computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

(k) In determining the terms and conditions applicable to a person convicted of a violation of this section the court shall consider the following:

(1) The court shall consider prohibitions on access to and use of computers.

(2) Except as otherwise required by law, the court shall consider alternate sentencing, including community service, if the defendant shows remorse and recognition of the wrongdoing, and an inclination not to repeat the offense.

SEC. 24.   Section 537 of the Penal Code is amended to read:

537.   (a)   Any person who obtains any food, fuel, services, or accommodations at a hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, ski area, or public or private campground, without paying therefor, with intent to defraud the proprietor or manager thereof, or who obtains credit at an hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, or public or private campground by the use of any false pretense, or who, after obtaining credit, food, fuel, services, or accommodations, at an hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, or public or private campground, absconds, or surreptitiously, or by force, menace, or threats, removes any part of his or her baggage therefrom with the intent not to pay for his or her food or accommodations is guilty of a public offense punishable as follows:

(1) If the value of the credit, food, fuel, services, or accommodations is nine hundred fifty dollars ($950) or less, by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for a term not exceeding six months, or both.

(2) If the value of the credit, food, fuel, services, or accommodations is greater than nine hundred fifty dollars ($950), by imprisonment in the county jail for a term of not more than one year, or in the state prison.

□

(b) Any person who uses or attempts to use ski area facilities for which payment is required without paying as required, or who resells a ski lift ticket to another when the resale is not authorized by the proprietor, is guilty of an infraction.

(c) Evidence that a person left the premises of such an hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, ski area, or public or private campground, without paying or offering to pay for such food, fuel, services, use of facilities, or accommodation, or that the person, without authorization from the proprietor, resold his or her ski lift ticket to another person after making use of such facilities, shall be prima facie evidence of the following:

(1) That the person obtained such food, fuel, services, use of facilities or accommodations with intent to defraud the proprietor or manager.

(2) That, if, after obtaining the credit, food, fuel, services, or accommodations, the person absconded, or surreptitiously, or by force, menace, or threats, removed part of his or her baggage therefrom, the person did so with the intent not to pay for the credit, food, fuel, services, or accommodations.

SEC. 25.  Section 537e of the Penal Code is amended to read:

537e.  (a) Any person who knowingly buys, sells, receives, disposes of, conceals, or has in his or her possession any personal property from which the manufacturer's serial number, identification number, electronic serial number, or any other distinguishing number or identification mark has been removed, defaced, covered, altered, or destroyed, is guilty of a public offense, punishable as follows:

(1) If the value of the property does not exceed nine hundred fifty dollars ($950), by imprisonment in a county jail not exceeding six months.

(2) If the value of the property exceeds nine hundred fifty dollars ($950), by imprisonment in a county jail not exceeding one year.

(3) If the property is an integrated computer chip or panel of a value of nine hundred fifty dollars ($950) or more, by imprisonment in the state prison for 16 months, or 2 or 3 years or by imprisonment in a county jail not exceeding one year.

(b) For purposes of this subdivision, "personal property" includes, but is not limited to, the following:

1                                                        97

(1) Any television, radio, recorder, phonograph, telephone, piano, or any other musical instrument or sound equipment.

(2) Any washing machine, sewing machine, vacuum cleaner, or other household appliance or furnishings.

(3) Any typewriter, adding machine, dictaphone, or any other office equipment or furnishings.

(4) Any computer, printed circuit, integrated chip or panel, or other part of a computer.

(5) Any tool or similar device, including any technical or scientific equipment.

(6) Any bicycle, exercise equipment, or any other entertainment or recreational equipment.

(7) Any electrical or mechanical equipment, contrivance, material, or piece of apparatus or equipment.

(8) Any clock, watch, watch case, or watch movement.

(9) Any vehicle or vessel, or any component part thereof.

(c) When property described in subdivision (a) comes into the custody of a peace officer it shall become subject to the provision of Chapter 12 (commencing with Section 1407) of Title 10 of Part 2, relating to the disposal of stolen or embezzled property. Property subject to this section shall be considered stolen or embezzled property for the purposes of that chapter, and prior to being disposed of, shall have an identification mark imbedded or engraved in, or permanently affixed to it.

(d) This section does not apply to those cases or instances where any of the changes or alterations enumerated in subdivision (a) have been customarily made or done as an established practice in the ordinary and regular conduct of business, by the original manufacturer, or by his or her duly appointed direct representative, or under specific authorization from the original manufacturer.

SEC. 26.  Section 550 of the Penal Code is amended to read:

550.  (a)  It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

(1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.

(2) Knowingly present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer, with an intent to defraud.

(3) Knowingly cause or participate in a vehicular collision, or any other vehicular accident, for the purpose of presenting any false or fraudulent claim.

(4) Knowingly present a false or fraudulent claim for the payments of a loss for theft, destruction, damage, or conversion of a motor vehicle, a motor vehicle part, or contents of a motor vehicle.

(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

(6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

(7) Knowingly submit a claim for a health care benefit that was not used by, or on behalf of, the claimant.

(8) Knowingly present multiple claims for payment of the same health care benefit with an intent to defraud.

(9) Knowingly present for payment any undercharges for health care benefits on behalf of a specific claimant unless any known overcharges for health care benefits for that claimant are presented for reconciliation at that same time.

(10) For purposes of paragraphs (6) to (9), inclusive, a claim or a claim for payment of a health care benefit also means a claim or claim for payment submitted by or on the behalf of a provider of any workers' compensation health benefits under the Labor Code.

(b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or

97

entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

(4) Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state.

(c) (1) Every person who violates paragraph (1), (2), (3), (4), or (5) of subdivision (a) is guilty of a felony punishable by imprisonment in the state prison for two, three, or five years, and by a fine not exceeding fifty thousand dollars ($50,000), or double the amount of the fraud, whichever is greater.

(2) Every person who violates paragraph (6), (7), (8), or (9) of subdivision (a) is guilty of a public offense.

(A) When the claim or amount at issue exceeds nine hundred fifty dollars ($950), the offense is punishable by imprisonment in the state prison for two, three, or five years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine, or by imprisonment in a county jail not to exceed one year, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine.

(B) When the claim or amount at issue is nine hundred fifty dollars ($950) or less, the offense is punishable by imprisonment in a county jail not to exceed six months, or by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine, unless the aggregate amount of the claims or amount at issue exceeds nine hundred fifty dollars ($950) in any 12-consecutive-month period, in which case the claims or amounts may be charged as in subparagraph (A).

(3) Every person who violates paragraph (1), (2), (3), or (4) of subdivision (b) shall be punished by imprisonment in the state prison for two, three, or five years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine, or by imprisonment in a county jail not to exceed one year, or by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine.

(4) Restitution shall be ordered for a person convicted of violating this section, including restitution for any medical

evaluation or treatment services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid.

(d)  Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of a sentence be suspended for, any adult person convicted of felony violations of this section who previously has been convicted of felony violations of this section or Section 548, or of Section 1871.4 of the Insurance Code, or former Section 556 of the Insurance Code, or former Section 1871.1 of the Insurance Code as an adult under charges separately brought and tried two or more times. The existence of any fact that would make a person ineligible for probation under this subdivision shall be alleged in the information or indictment, and either admitted by the defendant in an open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury.

Except when the existence of the fact was not admitted or found to be true or the court finds that a prior felony conviction was invalid, the court shall not strike or dismiss any prior felony convictions alleged in the information or indictment.

This subdivision does not prohibit the adjournment of criminal proceedings pursuant to Division 3 (commencing with Section 3000) or Division 6 (commencing with Section 6000) of the Welfare and Institutions Code.

(e)  Except as otherwise provided in subdivision (f), any person who violates subdivision (a) or (b) and who has a prior felony conviction of an offense set forth in either subdivision (a) or (b), in Section 548, in Section 1871.4 of the Insurance Code, in former Section 556 of the Insurance Code, or in former Section 1871.1 of the Insurance Code shall receive a two-year enhancement for each prior felony conviction in addition to the sentence provided in subdivision (c). The existence of any fact that would subject a person to a penalty enhancement shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury. Any person who violates this section shall be subject to appropriate orders of restitution pursuant to Section 13967 of the Government Code.

(f) Any person who violates paragraph (3) of subdivision (a) and who has two prior felony convictions for a violation of paragraph (3) of subdivision (a) shall receive a five-year enhancement in addition to the sentence provided in subdivision (c). The existence of any fact that would subject a person to a penalty enhancement shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury.

(g) Except as otherwise provided in Section 12022.7, any person who violates paragraph (3) of subdivision (a) shall receive a two-year enhancement for each person other than an accomplice who suffers serious bodily injury resulting from the vehicular collision or accident in a violation of paragraph (3) of subdivision (a).

(h) This section shall not be construed to preclude the applicability of any other provision of criminal law or equitable remedy that applies or may apply to any act committed or alleged to have been committed by a person.

(i) Any fine imposed pursuant to this section shall be doubled if the offense was committed in connection with any claim pursuant to any automobile insurance policy in an auto insurance fraud crisis area designated by the Insurance Commissioner pursuant to Article 4.6 (commencing with Section 1874.90) of Chapter 12 of Part 2 of Division 1 of the Insurance Code.

SEC. 27.   Section 551 of the Penal Code is amended to read:

551.   (a) It is unlawful for any automotive repair dealer, contractor, or employees or agents thereof to offer to any insurance agent, broker, or adjuster any fee, commission, profit sharing, or other form of direct or indirect consideration for referring an insured to an automotive repair dealer or its employees or agents for vehicle repairs covered under a policyholder's automobile physical damage or automobile collision coverage, or to a contractor or its employees or agents for repairs to or replacement of a structure covered by a residential or commercial insurance policy.

(b) Except in cases in which the amount of the repair or replacement claim has been determined by the insurer and the repair or replacement services are performed in accordance with

**AB 8**                    — 32 —

that determination or in accordance with provided estimates that are accepted by the insurer, it is unlawful for any automotive repair dealer, contractor, or employees or agents thereof to knowingly offer or give any discount intended to offset a deductible required by a policy of insurance covering repairs to or replacement of a motor vehicle or residential or commercial structure. This subdivision does not prohibit an advertisement for repair or replacement services at a discount as long as the amount of the repair or replacement claim has been determined by the insurer and the repair or replacement services are performed in accordance with that determination or in accordance with provided estimates that are accepted by the insurer.

(c) A violation of this section is a public offense. Where the amount at issue exceeds nine hundred fifty dollars ($950), the offense is punishable by imprisonment in the state prison for 16 months, or 2 or 3 years, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine; or by imprisonment in a county jail not to exceed one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine. In all other cases, the offense is punishable by imprisonment in a county jail not to exceed six months, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine.

(d) Every person who, having been convicted of subdivision (a) or (b), or Section 7027.3 or former Section 9884.75 of the Business and Professions Code and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of subdivision (a) or (b), upon a subsequent conviction of one of those offenses, shall be punished by imprisonment in the state prison for 16 months, or 2 or 3 years, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine; or by imprisonment in a county jail not to exceed one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine.

(e) For purposes of this section:

(1) "Automotive repair dealer" means a person who, for compensation, engages in the business of repairing or diagnosing malfunctions of motor vehicles.

☐                                    97

**AB 8**

(2) "Contractor" has the same meaning as set forth in Section 7026 of the Business and Professions Code.

SEC. 28.  Section 565 of the Penal Code is amended to read:

565.  It is a misdemeanor, punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or both, for an unauthorized person to possess or use, or to obliterate or destroy the brand registration upon, containers (including milk cases), cabinets, or other dairy equipment, which have a value of nine hundred fifty dollars ($950) or less, when the containers, cabinets, or other dairy equipment are marked with a brand that is registered pursuant to Chapter 10 (commencing with Section 34501) of Part 1 of Division 15 of the Food and Agricultural Code. "Unauthorized person" shall have the meaning of that term as defined in Section 34564 of the Food and Agricultural Code.

SEC. 29.  Section 566 of the Penal Code is amended to read:

566.  It is a felony, punishable by a fine not exceeding one thousand five hundred dollars ($1,500), or by imprisonment, or both, for an unauthorized person to possess or use, or to obliterate or destroy the brand registration upon, containers (including milk cases), cabinets, or other dairy equipment, which have a value in excess of nine hundred fifty dollars ($950), when the containers, cabinets, or other dairy equipment are marked with a brand that is registered pursuant to Chapter 10 (commencing with Section 34501) of Part 1 of Division 15 of the Food and Agricultural Code. "Unauthorized person" shall have the meaning of that term as defined in Section 34564 of the Food and Agricultural Code.

SEC. 30.  Section 592 of the Penal Code is amended to read:

592.  (a)  Every person who shall, without authority of the owner or managing agent, and with intent to defraud, take water from any canal, ditch, flume, or reservoir used for the purpose of holding or conveying water for manufacturing, agricultural, mining, irrigating, generation of power, or domestic uses is guilty of a misdemeanor.

(b)  If the total retail value of all the water taken is more than nine hundred fifty dollars ($950), or if the defendant has previously been convicted of an offense under this section or any former section that would be an offense under this section, or of an offense under the laws of another state or of the United States that would have been an offense under this section if committed in this state,

AB 8                    — 34 —

then the violation is punishable by imprisonment in the county jail for not more than one year, or in the state prison.

SEC. 31.  Section 594.4 of the Penal Code is amended to read:

594.4.  (a)  Any person who willfully and maliciously injects into or throws upon, or otherwise defaces, damages, destroys, or contaminates, any structure with butyric acid, or any other similar noxious or caustic chemical or substance, is guilty of a public offense, punishable by imprisonment in the state prison or in a county jail, by a fine as specified in subdivision (b), or by both that imprisonment and fine.

(b) (1)  If the amount of the defacement, damage, destruction, or contamination is fifty thousand dollars ($50,000) or more, by a fine of not more than fifty thousand dollars ($50,000).

(2)  If the amount of the defacement, damage, destruction, or contamination is five thousand dollars ($5,000) or more, but less than fifty thousand dollars ($50,000), by a fine of not more than ten thousand dollars ($10,000).

(3)  If the amount of defacement, damage, destruction, or contamination is nine hundred fifty dollars ($950) or more, but less than five thousand dollars ($5,000), by a fine of not more than five thousand dollars ($5,000).

(4)  If the amount of the defacement, damage, destruction, or contamination is less than nine hundred fifty dollars ($950), by a fine of not more than one thousand dollars ($1,000).

(c)  For purposes of this section, "structure" includes any house or other building being used at the time of the offense for a dwelling or for commercial purposes.

SEC. 32.  Section 641.3 of the Penal Code is amended to read:

641.3.  (a)  Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery.

(b)  This section does not apply where the amount of money or monetary worth of the thing of value is two hundred fifty dollars ($250) or less.

(c) Commercial bribery is punishable by imprisonment in the county jail for not more than one year if the amount of the bribe is one thousand dollars ($1,000) or less, or by imprisonment in the county jail, or in the state prison for 16 months, or two or three years if the amount of the bribe exceeds one thousand dollars ($1,000).

(d) For purposes of this section:

(1) "Employee" means an officer, director, agent, trustee, partner, or employee.

(2) "Employer" means a corporation, association, organization, trust, partnership, or sole proprietorship.

(3) "Corruptly" means that the person specifically intends to injure or defraud (A) his or her employer, (B) the employer of the person to whom he or she offers, gives, or agrees to give the money or a thing of value, (C) the employer of the person from whom he or she requests, receives, or agrees to receive the money or a thing of value, or (D) a competitor of any such employer.

SEC. 33.   Section 2932 of the Penal Code is amended to read:

2932.   (a) (1) For any time credit accumulated pursuant to Section 2931 or to subdivisions (a) and (b) of Section 2933.05, not more than 360 days of credit may be denied or lost for a single act of murder, attempted murder, solicitation of murder, manslaughter, rape, sodomy, or oral copulation accomplished against the victim's will, attempted rape, attempted sodomy, or attempted oral copulation accomplished against the victim's will, assault or battery causing serious bodily injury, assault with a deadly weapon or caustic substance, taking of a hostage, escape with force or violence, or possession or manufacture of a deadly weapon or explosive device, whether or not prosecution is undertaken for purposes of this paragraph. Solicitation of murder shall be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.

(2) Not more than 180 days of credit may be denied or lost for a single act of misconduct, except as specified in paragraph (1), which could be prosecuted as a felony whether or not prosecution is undertaken.

(3) Not more than 90 days of credit may be denied or lost for a single act of misconduct which could be prosecuted as a misdemeanor, whether or not prosecution is undertaken.

☐                                                              97

**AB 8**                    — 36 —

(4)  Not more than 30 days of credit may be denied or lost for a single act of misconduct defined by regulation as a serious disciplinary offense by the Department of Corrections and Rehabilitation. Any person confined due to a change in custodial classification following the commission of any serious disciplinary infraction shall, in addition to any loss of time credits, be ineligible to receive credit pursuant to subdivisions (a) and (b) of Section 2933.05 for a period not to exceed the number of days of credit which have been lost for the act of misconduct or 180 days, whichever is less. Any person confined in a secure housing unit for having committed any misconduct specified in paragraph (1) in which great bodily injury is inflicted upon a nonprisoner shall, in addition to any loss of time credits, be ineligible to receive credit pursuant to Section 2933.05 for a period not to exceed the number of days of credit which have been lost for that act of misconduct, or for the period that the prisoner is confined in a secure housing unit, whichever is less. In unusual cases, an inmate may be denied the opportunity to participate in an assignment for up to six months beyond the period specified in this subdivision if the secretary of the department finds, after a hearing, that no program may be assigned to the inmate without creating a substantial risk of physical harm to staff or other inmates. At the end of the six-month period and of successive six-month periods, the denial of the opportunity to participate in an assignment may be renewed upon a hearing and finding by the secretary.

The prisoner may appeal the decision through the department's review procedure, which shall include a review by an individual independent of the institution who has supervisorial authority over the institution.

(b)  For any credit accumulated pursuant to Section 2931, not more than 30 days of credit may be denied or lost for a single failure or refusal to participate. Any act of misconduct described by the Department of Corrections and Rehabilitation as a serious disciplinary infraction if committed while participating in work, educational, vocational, therapeutic, or other prison activity shall be deemed a failure to participate.

(c)  Any procedure not provided for by this section, but necessary to carry out the purposes of this section, shall be those procedures provided for by the Department of Corrections and Rehabilitation

**AB 8**

for serious disciplinary infractions if those procedures are not in conflict with this section.

(1) (A) The Department of Corrections and Rehabilitation shall, using reasonable diligence to investigate, provide written notice to the prisoner. The written notice shall be given within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, except that if the prisoner has escaped, the notice shall be given within 15 days of the prisoner's return to the custody of the Secretary of the Department of Corrections and Rehabilitation. The written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing. The hearing shall be conducted by an individual who shall be independent of the case and shall take place within 30 days of the written notice.

(B) The Department of Corrections and Rehabilitation may delay written notice beyond 15 days when all of the following factors are true:

(i) An act of misconduct is involved which could be prosecuted as murder, attempted murder, or assault on a prison employee, whether or not prosecution is undertaken.

(ii) Further investigation is being undertaken for the purpose of identifying other prisoners involved in the misconduct.

(iii) Within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, the investigating officer makes a written request to delay notifying that prisoner and states the reasons for the delay.

(iv) The warden of the institution approves of the delay in writing.

The period of delay under this paragraph shall not exceed 30 days. The prisoner's hearing shall take place within 30 days of the written notice.

(2) The prisoner may elect to be assigned an employee to assist in the investigation, preparation, or presentation of a defense at the disciplinary hearing if it is determined by the department that: (A) the prisoner is illiterate; or (B) the complexity of the issues or the prisoner's confinement status makes it unlikely that the prisoner can collect and present the evidence necessary for an adequate comprehension of the case.

(3) The prisoner may request witnesses to attend the hearing and they shall be called unless the person conducting the hearing has specific reasons to deny this request. The specific reasons shall be set forth in writing and a copy of the document shall be presented to the prisoner.

(4) The prisoner has the right, under the direction of the person conducting the hearing, to question all witnesses.

(5) At the conclusion of the hearing the charge shall be dismissed if the facts do not support the charge, or the prisoner may be found guilty on the basis of a preponderance of the evidence.

(d) If found guilty the prisoner shall be advised in writing of the guilty finding and the specific evidence relied upon to reach this conclusion and the amount of time-credit loss. The prisoner may appeal the decision through the Department of Corrections and Rehabilitation's review procedure, and may, upon final notification of appeal denial, within 15 days of the notification, demand review of the department's denial of credit to the Board of Parole Hearings, and the board may affirm, reverse, or modify the department's decision or grant a hearing before the board at which hearing the prisoner shall have the rights specified in Section 3041.5.

(e) Each prisoner subject to Section 2931 shall be notified of the total amount of good behavior and participation credit which may be credited pursuant to Section 2931, and his or her anticipated time-credit release date. The prisoner shall be notified of any change in the anticipated release date due to denial or loss of credits, award of any credit pursuant to Section 2933.05, or the restoration of any credits previously forfeited.

(f) If the conduct the prisoner is charged with also constitutes a crime, the Department of Corrections and Rehabilitation may refer the case to criminal authorities for possible prosecution. The department shall notify the prisoner, who may request postponement of the disciplinary proceedings pending the referral.

The prisoner may revoke his or her request for postponement of the disciplinary proceedings up until the filing of the accusatory pleading. In the event of the revocation of the request for postponement of the proceeding, the department shall hold the hearing within 30 days of the revocation.

**AB 8**

Notwithstanding the notification requirements in this paragraph and subparagraphs (A) and (B) of paragraph (1) of subdivision (c), in the event the case is referred to criminal authorities for prosecution and the authority requests that the prisoner not be notified so as to protect the confidentiality of its investigation, no notice to the prisoner shall be required until an accusatory pleading is filed with the court, or the authority notifies the warden, in writing, that it will not prosecute or it authorizes the notification of the prisoner. The notice exceptions provided for in this paragraph shall only apply if the criminal authority requests of the warden, in writing, and within the 15 days provided in subparagraph (A) of paragraph (1) of subdivision (c), that the prisoner not be notified. Any period of delay of notice to the prisoner shall not exceed 30 days beyond the 15 days referred to in subdivision (c). In the event that no prosecution is undertaken, the procedures in subdivision (c) shall apply, and the time periods set forth in that subdivision shall commence to run from the date the warden is notified in writing of the decision not to prosecute. In the event the authority either cancels its requests that the prisoner not be notified before it makes a decision on prosecution or files an accusatory pleading, the provisions of this paragraph shall apply as if no request had been received, beginning from the date of the cancellation or filing.

In the case where the prisoner is prosecuted by the district attorney, the Department of Corrections and Rehabilitation shall not deny time credit where the prisoner is found not guilty and may deny credit if the prisoner is found guilty, in which case the procedures in subdivision (c) shall not apply.

(g) If time credit denial proceedings or criminal prosecution prohibit the release of a prisoner who would have otherwise been released, and the prisoner is found not guilty of the alleged misconduct, the amount of time spent incarcerated, in excess of what the period of incarceration would have been absent the alleged misbehavior, shall be deducted from the prisoner's parole period.

(h) Nothing in the amendments to this section made at the 1981–82 Regular Session of the Legislature shall affect the granting or revocation of credits attributable to that portion of the prisoner's sentence served prior to January 1, 1983.

SEC. 34.    Section 2933 of the Penal Code is repealed.

SEC. 35.    Section 2933.05 is added to the Penal Code, to read:

AB 8                          — 40 —

2933.05.  A prisoner sentenced to the state prison under Section 1170 shall receive credit reductions from his or her term of confinement as follows:

(a)  One day of credit for every day served in the state prison.

(b)  Except as provided in subdivision (f), one day of credit for every day served in a county jail, city jail, industrial farm, or road camp after the date of sentencing to the state prison as specified in subdivision (g) of Section 4019.

(c)  Credits earned pursuant to subdivision (a) or (b) are subject to denial or loss pursuant to the provisions of this article, including for refusal to perform work or participate in a program as ordered or assigned.

(d)  (1)  Except as provided in subdivision (f), a prisoner shall receive up to four months of program completion credit for the successful completion of any inmate program approved by the secretary, including, but not limited to, any of the following:

(A)  A drug rehabilitation program.

(B)  An alcohol rehabilitation program.

(C)  An educational program.

(D)  A vocational program, including, but not limited to, those operated by the Prison Industry Authority and Joint Venture.

(E)  Any other behavior management, mental health treatment, or rehabilitative program offered by the department.

(2)  A prisoner may earn up to four months of program completion credit for each program he or she successfully completes.

(e)  Once an inmate earns program completion credits pursuant to subdivision (d), those credits are not subject to loss pursuant to the provisions of this article.

(f)  Credits specified in subdivisions (b) and (d) shall not apply to a prisoner serving a term of imprisonment for either an offense requiring registration as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1 or an offense sentenced pursuant to subdivisions (b) to (i), inclusive, of Section 667 or Section 1170.12.

(g)  Less than maximum credit should be awarded pursuant to regulations adopted by the secretary for prisoners who undergo a change in custodial classification.

SEC. 36.  Section 2933.1 of the Penal Code is amended to read:

2933.1.  (a) Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of credit.

(b) The 15-percent limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law. However, nothing in subdivision (a) shall affect the requirement of any statute that the defendant serve a specified period of time prior to minimum parole eligibility, nor shall any offender otherwise statutorily ineligible for credit be eligible for credit pursuant to this section.

(c) Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Secretary of the Department of Corrections and Rehabilitation, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a).

(d) This section shall only apply to offenses listed in subdivision (a) that are committed on or after the date on which this section becomes operative.

SEC. 37.  Section 2933.2 of the Penal Code is amended to read:

2933.2.  (a) Notwithstanding Section 2933.1 or any other law, any person who is convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in Section 2933.05.

(b) The limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law.

(c) Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest for any person specified in subdivision (a).

(d) This section shall only apply to murder that is committed on or after the date on which this section becomes operative.

SEC. 38.  Section 2933.3 of the Penal Code is amended to read:

2933.3.  Notwithstanding any other provision of law, any inmate assigned to a conservation camp by the Department of Corrections

and Rehabilitation, including any inmate on the wait list for transfer to a conservation camp, who is eligible to earn one day of credit for every one day served in custody, as specified in subdivision (a) of Section 2933.05 shall instead earn two days of credit for every one day on the wait list for or on assignment to a conservation camp. This enhanced credit shall only apply to those eligible after January 1, 2003, except as to inmates on the wait list, to whom this enhanced credit shall apply after the date of enactment of the act that amended this section in the 2009–10 First Extraordinary Session.

SEC. 39.   Section 2933.4 of the Penal Code is amended and renumbered to read:

3050.   (a) Notwithstanding any other provision of law, any inmate under the custody of the Department of Corrections and Rehabilitation who is not currently serving and has not served a prior indeterminate sentence or a sentence for a violent felony, a serious felony, or a crime that requires him or her to register as a sex offender pursuant to Section 290, who has successfully completed an inprison drug treatment program, upon release from state prison, shall, whenever possible, be entered into a 150-day residential aftercare drug treatment program sanctioned by the department.

(b) As a condition of parole, if the inmate successfully completes 150 days of residential aftercare treatment, as determined by the Department of Corrections and Rehabilitation and the aftercare provider, the parolee shall be discharged from parole supervision at that time.

(c) Commencing with 2008, the department shall report annually to the Joint Legislative Budget Committee and the State Auditor on the effectiveness of these provisions, including recidivism rates.

SEC. 40.   Section 2933.4 is added to the Penal Code, to read:

2933.4.   (a) Under regulations adopted by the Department of Corrections and Rehabilitation, which shall require a period of not more than one year free of disciplinary infractions, credit lost or denied pursuant to Section 2932 may be restored.

(1) The regulations shall provide for separate classifications of serious disciplinary infractions as they relate to restoration of credits, the time period required before forfeited credits or a portion thereof may be restored, and the percentage of forfeited credits that may be restored for these time periods.

(2)  For credits forfeited for commission of a felony specified in paragraph (1) of subdivision (a) of Section 2932, the department may provide that up to 180 days of lost credit shall not be restored and up to 90 days of credit shall not be restored for a forfeiture resulting from conspiracy or attempts to commit one of those acts.

(3)  No credits may be restored if they were forfeited for a serious disciplinary infraction in which the victim died or was permanently disabled.

(4)  (A)  Upon application of the prisoner and following completion of the required time period free of disciplinary offenses, forfeited credits eligible for restoration under the regulations for disciplinary offenses other than serious disciplinary infractions punishable by a credit loss of more than 90 days shall be restored unless, at a hearing, it is found that extraordinary circumstances are present that require that credits not be restored.

(B)  "Extraordinary circumstances" shall be defined in the regulations adopted by the secretary. However, in any case in which credit was forfeited for a serious disciplinary infraction punishable by a credit loss of more than 90 days, restoration of credit shall be at the discretion of the secretary.

(b)  The prisoner may appeal the finding through the department's review procedure, which shall include a review by an individual independent of the institution who has supervisorial authority over the institution.

(c)  Subdivisions (a) and (b) shall also apply in cases of credit forfeited under Section 2931 for offenses and serious disciplinary infractions occurring on or after January 1, 1983.

SEC. 41.  Section 2933.5 of the Penal Code is amended to read:

2933.5.  (a)  (1)  Notwithstanding any other provision of law, every person who is convicted of any felony offense listed in paragraph (2), and who previously has been convicted two or more times, on charges separately brought and tried, and who previously has served two or more separate prior prison terms, as defined in subdivision (g) of Section 667.5, of any offense or offenses listed in paragraph (2), shall be ineligible to earn credit on his or her term of imprisonment pursuant to this article.

(2)  As used in this subdivision, "felony offense" includes any of the following:

(A)  Murder, as defined in Sections 187 and 189.

97

AB 8                              — 44 —

(B) Voluntary manslaughter, as defined in subdivision (a) of Section 192.

(C) Mayhem as defined in Section 203.

(D) Aggravated mayhem, as defined in Section 205.

(E) Kidnapping, as defined in Section 207, 209, or 209.5.

(F) Assault with vitriol, corrosive acid, or caustic chemical of any nature, as described in Section 244.

(G) Rape, as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262.

(H) Sodomy by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person, as described in subdivision (c) of Section 286.

(I) Sodomy while voluntarily acting in concert, as described in subdivision (d) of Section 286.

(J) Lewd or lascivious acts on a child under the age of 14 years, as described in subdivision (b) of Section 288.

(K) Oral copulation by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, as described in subdivision (c) of Section 288a.

(L) Continuous sexual abuse of a child, as described in Section 288.5.

(M) Sexual penetration, as described in subdivision (a) of Section 289.

(N) Exploding a destructive device or explosive with intent to injure, as described in Section 12303.3, with intent to murder, as described in Section 12308, or resulting in great bodily injury or mayhem, as described in Section 12309.

(O) Any felony in which the defendant personally inflicted great bodily injury, as provided in Section 12022.53 or 12022.7.

(b) A prior conviction of an offense listed in subdivision (a) shall include a conviction in another jurisdiction for an offense which includes all of the elements of the particular felony as defined under California law.

(c) This section shall apply whenever the present felony is committed on or after the effective date of this section, regardless of the date of commission of the prior offense or offenses resulting in credit-earning ineligibility.

(d) This section shall be in addition to, and shall not preclude the imposition of, any applicable sentence enhancement terms, or

☐                                                          97

**AB 8**

probation ineligibility and habitual offender provisions authorized under any other section.

SEC. 42.   Section 2933.6 of the Penal Code is amended to read:

2933.6.   (a) Notwithstanding any other law, a person who is placed in a Security Housing Unit or an Administrative Segregation Unit for misconduct described in subdivision (b) is ineligible to earn credits, pursuant to Section 2933.05, during the time he or she is in the Security Housing Unit or the Administrative Segregation Unit for that misconduct.

(b)  This section applies to the following offenses:

(1)  Murder, attempted murder, and solicitation of murder. For purposes of this paragraph, solicitation of murder shall be proven by the testimony of two witnesses, or of one witness and corroborating circumstances.

(2)  Manslaughter.

(3)  Assault or battery causing serious bodily injury.

(4)  Assault or battery on a peace officer or other nonprisoner which results in physical injury.

(5)  Assault with a deadly weapon or caustic substance.

(6)  Rape, attempted rape, sodomy, attempted sodomy, oral copulation, or attempted oral copulation accomplished against the victim's will.

(7)  Taking a hostage.

(8)  Escape or attempted escape with force or violence.

(9)  Escape from any departmental prison or institution other than a camp or reentry facility.

(10)  Possession or manufacture of a deadly weapon or explosive device.

(11)  Arson involving damage to a structure.

(12)  Possession of flammable, explosive material with intent to burn any structure or property.

(13)  Solicitation of assault with a deadly weapon or assault by means of force likely to produce great bodily injury, arson, or a forcible sex act.

(14)  Intentional destruction of state property in excess of four hundred dollars ($400) during a riot or disturbance.

(c)  This section does not apply if the administrative finding of the misconduct is overturned or if the person is criminally prosecuted for the misconduct and is found not guilty.

SEC. 43.   Section 3000 of the Penal Code is amended to read:

1

97

3000.  (a)  (1)  The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the effective supervision of and surveillance of parolees, including the judicious use of revocation actions, and to provide educational, vocational, family, and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to Section 1168 or 1170 shall include a period of parole, unless otherwise provided in this section.

(2)  The Legislature finds and declares that it is not the intent of this section to diminish resources allocated to the Department of Corrections and Rehabilitation for parole functions for which the department is responsible. It is also not the intent of this section to diminish the resources allocated to the Board of Parole Hearings to execute its duties with respect to parole functions for which the board is responsible.

(3)  The Legislature finds and declares that diligent effort must be made to ensure that parolees are held accountable for their criminal behavior, including, but not limited to, the satisfaction of restitution fines and orders.

(4)  The parole period of any person found to be a sexually violent predator shall be tolled until that person is found to no longer be a sexually violent predator, at which time the period of parole, or any remaining portion thereof, shall begin to run.

(b)  Notwithstanding any provision to the contrary in Article 3 (commencing with Section 3040) of this chapter, the following shall apply:

(1)  At the expiration of a term of imprisonment of one year and one day, or a term of imprisonment imposed pursuant to Section 1170 or at the expiration of a term reduced pursuant to Section 2931 or 2933.05, if applicable, the inmate shall be released on parole for a period not exceeding three years, except as follows, or unless the parole authority for good cause waives parole and discharges the inmate from the custody of the department:

(A)  A person sentenced for an offense specified in paragraph (3), (4), (5), (6), (11), (16), or (18) of subdivision (c) of Section 667.5 shall be released on parole for a period of no more than five years.

(B) A person who is not required to register as a sex offender pursuant to Section 290, who was not sentenced for any offense that is a serious felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5, and who does not have a prior conviction for a serious felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5 shall be discharged from parole if he or she has been on parole continuously for six consecutive months.

(C) A person who is on parole as of the effective date of the amendment of this subdivision during the 2009–10 First Extraordinary Session of the Legislature whose parole is not pending revocation shall be discharged from parole immediately if he or she has already served the time and met the terms specified in subparagraph (B), or upon meeting the terms of subparagraph (B).

(2) In the case of any inmate sentenced under Section 1168, the period of parole shall not exceed five years in the case of an inmate imprisoned for any offense other than first or second degree murder for which the inmate has received a life sentence, and shall not exceed three years in the case of any other inmate, unless in either case the parole authority for good cause waives parole and discharges the inmate from custody of the department. This subdivision shall also be applicable to inmates who committed crimes prior to July 1, 1977, to the extent specified in Section 1170.2.

(3) Notwithstanding paragraphs (1) and (2), in the case of any offense for which the inmate has received a life sentence pursuant to Section 667.61 or 667.71, the period of parole shall be 10 years.

(4) The parole authority shall consider the request of any inmate regarding the length of his or her parole and the conditions thereof.

(5) Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate under paragraph (1), (2), or (3), as the case may be, whichever is earlier, the inmate shall be discharged from custody. The date of the maximum statutory period of parole under this subdivision and paragraphs (1), (2), and (3) shall be computed from the date of initial parole and shall be a period chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner

🔲                                                                      97

is found not guilty of the parole violation. However, the period of parole is subject to the following:

(A) Except as provided in Section 3064, in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole.

(B) Except as provided in Section 3064, in no case may a prisoner subject to five years on parole be retained under parole supervision or in custody for a period longer than seven years from the date of his or her initial parole.

(C) Except as provided in Section 3064, in no case may a prisoner subject to 10 years on parole be retained under parole supervision or in custody for a period longer than 15 years from the date of his or her initial parole.

(6) The Department of Corrections and Rehabilitation shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority, the conditions of parole and the length of parole up to the maximum period of time provided by law. The inmate has the right to reconsideration of the length of parole and conditions thereof by the parole authority. The Department of Corrections and Rehabilitation or the Board of Parole Hearings may impose as a condition of parole that a prisoner make payments on the prisoner's outstanding restitution fines or orders imposed pursuant to subdivision (a) or (c) of Section 13967 of the Government Code, as operative prior to September 28, 1994, or subdivision (b) or (f) of Section 1202.4.

(7) For purposes of this chapter, the Board of Parole Hearings shall be considered the parole authority.

(8) The sole authority to issue warrants for the return to actual custody of any state prisoner released on parole rests with the Board of Parole Hearings, except for any escaped state prisoner or any state prisoner released prior to his or her scheduled release date who should be returned to custody, and Section 3060 shall apply.

(9) It is the intent of the Legislature that efforts be made with respect to persons who are subject to Section 290.011 who are on parole to engage them in treatment.

SEC. 44.   Section 3060.95 is added to the Penal Code, to read:

1

3060.95.  (a) It is the intent of the Legislature that parole violators who present a lower risk to public safety based on their criminal history, the outcomes of risk assessments such as those authorized in Section 33 of Chapter 175 of the Statutes of 2007, and the nature of their parole violations shall be given community sanctions where appropriate. Community sanctions include, but are not limited to, community work crews, increased supervision, increased drug testing, home detention, electronic monitoring, day reporting centers, short-term incarceration, or any combination of these.

(b) No later than January 1, 2009, the Department of Corrections and Rehabilitation shall begin implementation of a parole violation decisionmaking instrument designed to provide guidelines for use by parole agents and the Board of Parole Hearings to determine the most appropriate sanctions for parolees who violate their conditions of parole.

(c) For purposes of this section, a "parole violation decisionmaking instrument" provides ranges of appropriate sanctions for parole violators given relevant case factors, such as offense history, risk of reoffending or risk of violence based on a validated risk assessment tool, need for treatment services, the number and type of current and prior parole violations, and other relevant statutory requirements.

(d) Parole agents and, when a violation of parole has been referred to the board, the board, shall impose sanctions on parole violators in accordance with the parole decision instrument.

(e) The department shall adopt emergency regulations to implement this section initially, and shall subsequently adopt permanent regulations that make appropriate changes in policies and procedures to reflect the intent of this section.

(f) Subject to legislative appropriation, the department shall ensure that sufficient bed or program capacity is available in the community to assign parole violators to those sanctions designated in the parole violation decisionmaking instrument.

(g) Nothing in this section shall limit the authority of counties to prosecute parolees who commit new crimes.

SEC. 45.  Section 4019 of the Penal Code is amended to read:

4019.  (a) The provisions of subdivisions (b) to (f), inclusive, of this section shall apply in all of the following cases:

(1)  When a prisoner is confined in or committed to a county jail, industrial farm, or road camp, or any city jail, industrial farm, or road camp, including all days of custody from the date of arrest to the date on which the serving of the sentence commences, under a judgment of imprisonment, or a fine and imprisonment until the fine is paid in a criminal action or proceeding.

(2)  When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding.

(3)  When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp for a definite period of time for contempt pursuant to a proceeding, other than a criminal action or proceeding.

(4)  When a prisoner is confined in a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction of either an offense for which registration as a sex offender is required pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1 or an offense which is sentenced pursuant to subdivisions (b) to (i), inclusive, of Section 667 or Section 1170.12.

(b)  Subject to the provisions of subdivision (d), for each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

(c)  For each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

(d)  Nothing in this section shall be construed to require the sheriff, chief of police, or superintendent of an industrial farm or road camp to assign labor to a prisoner if it appears from the record

that the prisoner has refused to satisfactorily perform labor as assigned or that the prisoner has not satisfactorily complied with the reasonable rules and regulations of the sheriff, chief of police, or superintendent of any industrial farm or road camp.

(e) No deduction may be made under this section unless the person is committed for a period of six days or longer.

(f) It is the intent of the Legislature that if all days are earned as specified in subdivisions (b) to (e), inclusive, of this section, a term of six days will be deemed to have been served for every four days spent in actual custody.

(g) Subdivision (h) shall apply to every prisoner confined in a county jail, city jail, industrial farm, or road camp following arrest and prior to a court's imposition of a state prison sentence for a felony conviction under Section 1170 that is not suspended or a court's order executing a state prison sentence for a felony conviction under Section 1170 that is suspended, except for a prisoner serving a term of imprisonment for either an offense requiring registration as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1 or an offense sentenced pursuant to subdivisions (b) to (i), inclusive, of Section 667 or Section 1170.12.

(h) For each day that a prisoner is confined in or committed to a facility as specified in subdivision (g), one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

SEC. 46.   Section 4600 of the Penal Code is amended to read:

4600.  (a)  Every person who willfully and intentionally breaks down, pulls down, or otherwise destroys or injures any jail, prison, or any public property in any jail or prison, is punishable by a fine not exceeding ten thousand dollars ($10,000), and by imprisonment in the state prison, except that where the damage or injury to any city, city and county, or county jail property or prison property is determined to be nine hundred fifty dollars ($950) or less, that person is guilty of a misdemeanor.

(b)  In any case in which a person is convicted of violating this section, the court may order the defendant to make restitution to the public entity that owns the property damaged by the defendant. The court shall specify in the order that the public entity that owns

AB 8                    — 52 —

the property damaged by the defendant shall not enforce the order until the defendant satisfies all outstanding fines, penalties, assessments, restitution fines, and restitution orders.

SEC. 47.   Section 14591 of the Public Resources Code is amended to read:

14591.   (a)  Except as provided in subdivision (b), in addition to any other applicable civil or criminal penalties, any person convicted of a violation of this division is guilty of an infraction, which is punishable by a fine of one hundred dollars ($100) for each initial separate violation and not more than one thousand dollars ($1,000) for each subsequent separate violation per day.

(b)  (1)  Every person who, with intent to defraud, takes any of the following actions is guilty of fraud:

(A)  Submits a false or fraudulent claim for payment pursuant to Section 14573 or 14573.5.

(B)  Fails to accurately report the number of beverage containers sold, as required by subdivision (b) of Section 14550.

(C)  Fails to make payments as required by Section 14574.

(D)  Redeems out-of-state containers, rejected containers, line breakage, or containers that have already been redeemed.

(E)  Returns redeemed containers to the marketplace for redemption .

(F)  Brings out-of-state containers, rejected containers, or line breakage to the marketplace for redemption.

(G)  Submits a false or fraudulent claim for handling fee payments pursuant to Section 14585.

(2)  If the money obtained or withheld pursuant to paragraph (1) exceeds nine hundred fifty dollars ($950), the fraud is punishable by imprisonment in the county jail for not more than one year or by a fine not exceeding ten thousand dollars ($10,000), or by both, or by imprisonment in the state prison for 16 months, two years, or three years, or by a fine not exceeding twenty-five thousand dollars ($25,000) or twice the late or unmade payments plus interest, whichever is greater, or by both fine and imprisonment. If the money obtained or withheld pursuant to paragraph (1) equals, or is less than, nine hundred fifty dollars ($950), the fraud is punishable by imprisonment in the county jail for not more than six months or by a fine not exceeding one thousand dollars ($1,000), or by both.

**AB 8**

(c)  For purposes of this section and Chapter 8.5 (commencing with Section 14595), "line breakage" and "rejected container" have the same meanings as defined in the regulations adopted or amended by the department pursuant to this division.

SEC. 48.  Section 41955 of the Public Resources Code is amended to read:

41955.  If the value of the stolen material is more than fifty dollars ($50), but less than nine hundred fifty dollars ($950), a violation of this part may be charged as either a misdemeanor or an infraction. A violation after a second conviction within a 12-month period shall be charged as a misdemeanor punishable pursuant to Section 19 of the Penal Code.

SEC. 49.  Section 10851.5 of the Vehicle Code is amended to read:

10851.5.  Any person who takes binder chains, required under regulations adopted pursuant to Section 31510, having a value of nine hundred fifty dollars ($950) or less which chains are not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the binder chains whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in the unauthorized taking or stealing is guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail for not less than six months or by a fine of not less than one thousand dollars ($1,000) or by both such fine and imprisonment. The consent of the owner of the binder chain to its taking shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking of the binder chain by the same or a different person.

SEC. 50.  Section 42002.4 of the Vehicle Code is amended to read:

42002.4.  A violation of Section 10751 shall be punished by imprisonment in the county jail not exceeding six months if the value of the property does not exceed nine hundred fifty dollars ($950), and by imprisonment in the county jail not exceeding one year if the value of the property is more than nine hundred fifty dollars ($950).

SEC. 51.  Section 10980 of the Welfare and Institutions Code is amended to read:

10980. (a) Any person who, willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact in order to obtain aid under the provisions of this division or who, knowing he or she is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he or she is not entitled, or to receive a larger amount than that to which he or she is legally entitled, is guilty of a misdemeanor, punishable by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.

(b) Any person who knowingly makes more than one application for aid under the provisions of this division with the intent of establishing multiple entitlements for any person for the same period or who makes an application for that aid for a fictitious or nonexistent person or by claiming a false identity for any person is guilty of a felony, punishable by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

(c) Whenever any person has, willfully and knowingly, with the intent to deceive, by means of false statement or representation, or by failing to disclose a material fact, or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining this aid shall be punished as follows:

(1) If the total amount of the aid obtained or retained is nine hundred fifty dollars ($950) or less, by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.

(2) If the total amount of the aid obtained or retained is more than nine hundred fifty dollars ($950), by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

(d) Any person who knowingly uses, transfers, acquires, or possesses blank authorizations to participate in the federal Food Stamp Program in any manner not authorized by Chapter 10 (commencing with Section 18900) of Part 6 with the intent to defraud is guilty of a felony, punishable by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both imprisonment and fine.

(e) Any person who counterfeits or alters or knowingly uses, transfers, acquires, or possesses counterfeited or altered authorizations to participate in the federal Food Stamp Program or to receive food stamps or electronically transferred benefits in any manner not authorized by the Food Stamp Act of 1964 (Public Law 88-525 and all amendments thereto) or the federal regulations pursuant to the act is guilty of forgery.

(f) Any person who fraudulently appropriates food stamps, electronically transferred benefits, or authorizations to participate in the federal Food Stamp Program with which he or she has been entrusted pursuant to his or her duties as a public employee is guilty of embezzlement of public funds.

(g) Any person who knowingly uses, transfers, sells, purchases, or possesses food stamps, electronically transferred benefits, or authorizations to participate in the federal Food Stamp Program in any manner not authorized by Chapter 10 (commencing with Section 18900), of Part 6, or by the federal Food Stamp Act of 1977 (Public Law 95-113 and all amendments thereto) (1) is guilty of a misdemeanor if the face value of the food stamp benefits or the authorizations to participate is nine hundred fifty dollars ($950) or less, and shall be punished by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine, or (2) is guilty of a felony if the face value of the food stamps or the authorizations to participate exceeds nine hundred fifty dollars ($950), and shall be punished by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both imprisonment and fine, or by imprisonment in the county jail for a period of not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

(h) (1) If the violation of subdivision (f) or (g) is committed by means of an electronic transfer of benefits, in addition and consecutive to the penalties for the violation, or attempted violation, of those subdivisions, the court shall impose the following punishment:

(A) If the electronic transfer of benefits exceeds fifty thousand dollars ($50,000), an additional term of one year in state prison.

(B) If the electronic transfer of benefits exceeds one hundred fifty thousand dollars ($150,000), an additional term of two years in state prison.

(C) If the electronic transfer of benefits exceeds one million dollars ($1,000,000), an additional term of three years in state prison.

(D) If the electronic transfer of benefits exceeds two million five hundred thousand dollars ($2,500,000), an additional term of four years.

(2) In any accusatory pleading involving multiple charges of violations of subdivision (f) or (g), or both, committed by means of an electronic transfer of benefits, the additional terms provided in paragraph (1) may be imposed if the aggregate losses to the victims from all violations exceed the amounts specified in this paragraph and arise from a common scheme or plan.

(i) A person who is punished by an additional term of imprisonment under another provision of law for a violation of subdivision (f) or (g) shall not receive an additional term of imprisonment under subdivision (h).

SEC. 52.   Section 15656 of the Welfare and Institutions Code is amended to read:

15656.   (a) Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts unjustifiable physical pain or mental suffering upon him or her, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation such that his or her person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for two, three, or four years.

(b)  Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts unjustifiable physical pain or mental suffering on him or her, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured or willfully causes or permits the elder or dependent adult to be placed in a situation such that his or her person or health may be endangered, is guilty of a misdemeanor.

(c)  Any caretaker of an elder or a dependent adult who violates any provision of law prescribing theft or embezzlement, with respect to the property of that elder or dependent adult, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for two, three, or four years when the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950), and by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding one year, or by both that imprisonment and fine, when the money, labor, or real or personal property taken is of a value not exceeding nine hundred fifty dollars ($950).

(d)  As used in this section, "caretaker" means any person who has the care, custody, or control of or who stands in a position of trust with, an elder or a dependent adult.

(e)  Conduct covered in subdivision (b) of Section 15610.57 shall not be subject to this section.

SEC. 53.  The Department of Corrections and Rehabilitation shall implement the changes made by this act regarding time credits and parole periods in a reasonable time. However, in light of limited case management resources, it is expected that there will be some delays in determining the amount of additional time credits to be granted against inmate sentences, and in determining the applicability of new periods of parole resulting from changes in law pursuant to this act. An inmate shall have no cause of action or claim for damages because of any additional time spent in custody or on parole due to reasonable delays in implementing the changes in the credit and parole provisions of this act. However, to the extent that excess days in state prison due to delays in

implementing this act are identified, they shall be considered as time spent on parole, if any parole period is applicable.

SEC. 54.  No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

SEC. 55.  This act addresses the fiscal emergency declared by the Governor by proclamation on December 1, 2008, pursuant to subdivision (f) of Section 10 of Article IV of the California Constitution.

SEC. 56.  This act shall not become operative unless either Assembly Bill 2 or Senate Bill 2 and either Assembly Bill 9 or Senate Bill 9 of the 2009–10 First Extraordinary Session are chaptered.

Approved _____, 2008


_____
                    *Governor*

# EXHIBIT B

January 6, 2009

To the Members of the California State Assembly:

I am returning Assembly Bill X1 8 without my signature because it is part of a package of bills that does not deal with California's current budget and economic crisis.  This package of bills punishes Californians by raising revenue without providing permanent and ongoing cuts, does not create jobs or stimulate our economy, does not allow government to run more efficiently in California, and makes no attempt to keep people in their homes.

Sincerely,


Arnold Schwarzenegger

# EXHIBIT C

# California State Senate

Home  Senators  Legislation  Committees  Schedules  Offices/Caucuses  Audio/TV  Faqs/Links

*Legislation*
*Codes*
*Statutes*
*Constitution*

*Bill Info -Help*
*Subscribe*
*Unsubscribe*
*Subscription*
*List*

I want to search again.

Documents associated with **ABX1 10** in the Session

Status   - 01/06/2009 - 1661 bytes
History   - 01/06/2009   1872 bytes

**Bill Text**

**In order to view the PDF version of the bill text documents, you may need a free viewer from Adobe.**

| Enrolled | - 12/18/2008 | HTML | - 42163 bytes | PDF - 262473 bytes |
| Amended | - 12/18/2008 | HTML | - 47311 bytes | PDF - 285478 bytes |
| Introduced | - 12/08/2008 | HTML | - 1916 bytes | PDF - 212013 bytes |

## Analyses

| Assembly Floor | - 12/18/2008 - 4534 bytes |
| Senate Floor | - 12/18/2008 - 4520 bytes |

## Votes

| Assembly Floor | - 12/18/2008 - 1492 bytes |
| Senate Floor | - 12/18/2008 - 1125 bytes |
| Assembly Floor | - 12/08/2008 - 1473 bytes |

## Veto Message

| Veto Message | - 01/06/2009 - 1169 bytes |

**Assembly Bill No. 10**

———

Passed the Assembly  December 18, 2008

_____

_Chief Clerk of the Assembly_

———

Passed the Senate  December 18, 2008

_____

_Secretary of the Senate_

———

This bill was received by the Governor this _____ day of _____, 2008, at _____ o'clock ____M.

_____

_Private Secretary of the Governor_

☐

**AB 10**                     — 2 —

CHAPTER _____

An act to amend Sections 15819.40, 15819.402, 15819.403, 15819.404, 15819.41, 15819.412, 15819.414, 15819.417, 15820.903, 15820.911, and 15820.913 of, and to add Sections 15820.904 and 15820.914 to, the Government Code, to amend Section 7021 of the Penal Code, and to amend Sections 1970, 1971, 1972, 1973, and 1975 of, and to add Section 1977 to, the Welfare and Institutions Code, relating to correctional facilities, making an appropriation therefor, and declaring the urgency thereof, to take effect immediately.

LEGISLATIVE COUNSEL'S DIGEST

AB 10, Committee on Budget. Prison facilities: construction.

Existing law, the Public Safety and Offender Rehabilitation Services Act of 2007, requires the Department of Corrections and Rehabilitation to design, construct, or renovate prison housing units, prison support buildings, and programming space in order to add approximately 7,484 beds at specified adult correctional facilities, and authorizes the department to develop approximately 12,000 new prison beds overall, including appropriate programming space, and to acquire land, design, construct, and renovate reentry program facilities, and to construct and establish new buildings at facilities under the jurisdiction of the department to provide medical, dental, and mental health treatment or housing for 6,000 inmates, as specified.

This bill instead would remove the limitation on the number of beds that are required to be constructed at specified facilities, while maintaining the 12,000 bed maximum, and would delete the word "prison" from the types of facilities that are affected by the bill and replace it with "facilities under the jurisdiction of the department."

Existing law authorizes the State Public Works Board to issue revenue bonds or notes for purposes of financing these projects, as specified. Existing law also provides that funds derived from interim financing, bonds, or notes issued for this purpose are continuously appropriated to the board on behalf of the department for purposes of specified prison construction. Existing law

☐                                         97

— 3 —                               **AB 10**

authorizes the board to borrow funds for project costs from the Pooled Money Investment Account.

This bill would add acquisition and design as project costs for which the board may borrow funds from the Pooled Money Investment Account. The bill would also provide that preliminary expenditures to develop the scope, budget, programming, and scheduling for a project would be reimbursable from the proceeds of the revenue bonds. The board would be allowed to issue bonds or notes to finance the acquisition of specified projects. The amount of bonds or notes to be sold would be required to include the cost of acquisition of the facilities and other costs related to acquisition of the facilities. Because the bill would authorize additional uses of continuously appropriated funds, the bill would constitute an appropriation.

Under existing law, the amount of revenue bonds or notes to be sold is required to equal certain costs, including interim financing and a reasonable reserve.

This bill, instead, would authorize the amount of bonds and notes to include those items.

Existing law provides that eligible counties that choose to finance a local youthful offender rehabilitative facility with money from this act are responsible for the acquisition, design, construction, staffing, operation, repair, and maintenance of those facilities.

This bill would also require those counties to be responsible for the renovation of those facilities.

The bill would make related conforming changes, and would make its provisions contingent on the enactment of other legislation, as specified.

This bill would declare that it is to take effect immediately as an urgency statute.

The California Constitution authorizes the Governor to declare a fiscal emergency and to call the Legislature into special session for that purpose. The Governor issued a proclamation declaring a fiscal emergency, and calling a special session for this purpose, on December 1, 2008.

This bill would state that it addresses the fiscal emergency declared by the Governor by proclamation issued on December 1, 2008, pursuant to the California Constitution.

Appropriation: yes.

**AB 10**           — 4 —

*The people of the State of California do enact as follows:*

SECTION 1.   Section 15819.40 of the Government Code is amended to read:

15819.40.   (a) (1) (A) The Department of Corrections and Rehabilitation may design, construct, or renovate housing units, support buildings, and programming space in order to add up to 12,000 beds at

facilities under its jurisdiction. The department shall complete site assessments at facilities at which it intends to construct or renovate additional housing units, support buildings, and programming space. The department may use the funding provided in Section 28 of Chapter 7 of the Statutes of 2007 to complete these site assessments. After completing these site assessments, the department shall define the scope and cost of each project pursuant to subdivision (d).

(B) The authority contained in subparagraph (A) may be used to develop new beds including appropriate programmatic space pursuant to paragraph (2) of subdivision (a) and, together with the funds appropriated in Section 15819.403 for this purpose, shall constitute the scope of a single capital outlay project for purposes of calculating augmentations pursuant to Section 13332.11 as described in Section 15819.401.

(2)   Any new beds constructed pursuant to this section shall be supported by rehabilitative programming for inmates, including, but not limited to, education, vocational programs, substance abuse treatment programs, employment programs, and prerelease planning.

(3)   The purpose of beds constructed pursuant to this section is to replace the temporary beds currently in use, and they are not intended to house additional inmates. For the purposes of this section, "temporary beds" shall be defined as those that are placed in gymnasiums, classrooms, hallways, or other public spaces that were not constructed for the purpose of housing inmates.

(b)   The Department of Corrections and Rehabilitation may acquire land, design, construct, and renovate reentry program facilities to provide housing for up to 6,000 inmates as authorized in Chapter 9.8 (commencing with Section 6271) of the Penal Code and, together with the funds appropriated in Section 15819.403 for this purpose, this shall constitute the scope and cost of a single

capital outlay project for purposes of calculating augmentations pursuant to Section 13332.11 as described in Section 15819.401.

(c) The Department of Corrections and Rehabilitation is authorized to design, construct, and establish new buildings at facilities under the jurisdiction of the department to provide medical, dental, and mental health treatment or housing for up to 6,000 inmates and, together with the funds appropriated in Section 15819.403 for this purpose, this shall constitute the scope and cost of a single capital outlay project for purposes of calculating augmentations pursuant to Section 13332.11 as described in Section 15819.401.

(d) (1) The reporting requirements set forth in Sections 7000 to 7003.5, inclusive, of the Penal Code, shall apply separately to each institution or facility. The scope and cost of the project for each institution or facility shall be established individually by the State Public Works Board. The amount of the total appropriations in Section 15819.403 that is necessary for each project shall be allocated to each institution or facility project. The appropriations may be allocated based on current estimates. These initial allocations may be adjusted commensurate to changes that occur during the progression of the projects. As allocations are made or adjusted, the anticipated deficit or savings shall be continuously tracked and reported. Once the total appropriation has been allocated, any augmentation necessary to fund an anticipated deficit shall be based on the total applicable capital outlay appropriation in Section 15819.403 and applied to each project allocation as necessary.

(2) For each institution, the Department of Corrections and Rehabilitation shall report to the Joint Legislative Budget Committee identifying those projects that the department proposes to undertake, and any support buildings, and programming space to support up to 12,000 new beds. For each institution, the department shall describe the scope, budget, schedule, number of beds by security level, along with approximate square footage of support buildings, and programming space to be constructed or renovated. If after providing these reports, the committee fails to take any action with respect to each report within 30 days after submittal, this inaction shall be deemed to be approval for purposes of this section, and the department is authorized to proceed to design, construct, or renovate housing units, support buildings,

☐                                                          97

**AB 10**                        — 6 —

and programming space for each institution for which a report has been approved.

(3) The department shall notify the Joint Legislative Budget Committee 45 days prior to the submission of preliminary plans to the board for each project authorized in this section. If after providing these notifications, the committee fails to take any action with respect to each report within 45 days after submittal, this inaction shall be deemed to be approval for purposes of this section, and the department is authorized to design, construct, or renovate housing units, support buildings, and programming space for each institution for which a report has been approved.

(4) The Department of Corrections and Rehabilitation shall report quarterly to the Joint Legislative Budget Committee on the allocations from the appropriations in Section 15819.403 and the anticipated deficit or savings. Each reentry program facility authorized under subdivision (b) shall be considered to be a separate project for reporting purposes pursuant to Sections 7000 and 7003.5 of the Penal Code. Each medical, mental health, or dental building improvement authorized under subdivision (c) shall be considered to be a separate project, except that building improvements that have a related purpose and that are located at the same institution may be considered one project, for reporting purposes pursuant to Sections 7000 and 7003.5 of the Penal Code.

SEC. 2. Section 15819.402 of the Government Code is amended to read:

15819.402. For all projects authorized by this chapter, the board may borrow funds for project costs, including studies, acquisition, design, construction, and construction-related costs from the Pooled Money Investment Account pursuant to Sections 16312 and 16313. Except for preliminary expenditures to develop the scope, budget, programming, and scheduling for a project, project funds expended prior to project approval by the board shall not be reimbursable from the proceeds of the bonds.

SEC. 3. Section 15819.403 of the Government Code is amended to read:

15819.403. (a) The board may issue revenue bonds, negotiable notes, or negotiable bond anticipation notes pursuant to this part to finance the acquisition, design, and construction, including, without limitation, renovation, and the costs of interim financing of the projects authorized in Section 15819.40. Authorized costs

for acquisition, design, construction, including, without limitation, renovation, and construction-related costs for all projects approved for financing by the board shall not exceed one billion eight hundred million dollars ($1,800,000,000) for subdivision (a) of Section 15819.40, nine hundred seventy-five million dollars ($975,000,000) for subdivision (b) of Section 15819.40, and eight hundred fifty-seven million one hundred thousand dollars ($857,100,000) for subdivision (c) of Section 15819.40.

(b) Notwithstanding Section 13340, funds derived from interim financing, revenue bonds, negotiable notes, or negotiable bond anticipation notes issued pursuant to this chapter are hereby continuously appropriated to the board on behalf of the Department of Corrections and Rehabilitation for the purposes specified in Section 15819.40.

(c) For the purposes of this section, "construction-related costs" shall include mitigation costs of local government and school districts and shall be made available pursuant to subdivisions (c) and (d) of Section 7005.5 of the Penal Code. It is the intent of the Legislature that any payments made for mitigation shall be made in a timely manner.

SEC. 4.  Section 15819.404 of the Government Code is amended to read:

15819.404.  Notwithstanding Section 15819.403, the amount of revenue bonds, negotiable notes, or negotiable bond anticipation notes to be sold may include the following:

(a) The cost of acquisition, design, construction, including, without limitation, renovation, or construction management and supervision, and other costs related to the acquisition, design, and construction, including, without limitation, renovation, of the facilities, including augmentations.

(b) Sums necessary to pay interim financing.

(c) In addition to the amount authorized by Section 15819.403, any additional amount as may be authorized by the board to establish a reasonable construction reserve and to pay the costs of financing, including the payment of interest during acquisition or interest prior to, during, and for a period of six months after construction of the project, the cost of financing a debt-service reserve fund, and the cost of issuance of permanent financing for the project. This additional amount may include interest payable on any interim loan for the facility from the General Fund or the

⬚                                        97

**AB 10** — 8 —

Pooled Money Investment Account pursuant to Sections 16312 and 16313.

SEC. 5.  Section 15819.41 of the Government Code is amended to read:

15819.41.  (a) The Department of Corrections and Rehabilitation shall complete site assessments at facilities where it intends to construct or renovate additional housing units, support buildings, and programming space in order to add up to 4,000 beds at facilities under its jurisdiction. The department may use the funding provided in Section 28 of Chapter 7 of the Statutes of 2007 to complete the site assessments. After completing these site assessments the department shall define the scope and costs of each project pursuant to subdivision (d). This authorization is in addition to the authorization in subdivision (a) of Section 15819.40. Any new beds constructed shall be supported by rehabilitative programming for inmates, including, but not limited to, education, vocational programs, substance abuse treatment programs, employment programs, and prerelease planning. The Department of Corrections and Rehabilitation is authorized to design, construct, or renovate housing units, support buildings, and programming space in order to add up to 4,000 beds at facilities under its jurisdiction. This authorization is in addition to the authorization in subdivision (a) of Section 15819.40. Any new beds constructed shall be supported by rehabilitative programming for inmates, including, but not limited to, education, vocational programs, substance abuse treatment programs, employment programs, and prerelease planning. The authority contained in this subdivision together with the funds appropriated in Section 15819.413 for this purpose, shall constitute the scope and cost of a single capital outlay project for purposes of calculating augmentations pursuant to Section 13332.11 as described in Section 15819.411.

(b) The Department of Corrections and Rehabilitation is authorized to design and construct new, or renovate existing, buildings at facilities under the jurisdiction of the department to provide medical, dental, and mental health treatment or housing for up to 2,000 inmates. This authorization is in addition to the authorization in subdivision (c) of Section 15819.40. The authority contained in this subdivision together with the funds appropriated in Section 15819.413 for this purpose, shall constitute the scope and cost of a single capital outlay project for purposes of

☐

**AB 10**

calculating augmentations pursuant to Section 13332.11 as described in Section 15819.411.

(c) The Department of Corrections and Rehabilitation is authorized to construct, establish, and operate reentry program facilities throughout the state that will house up to 10,000 inmates pursuant to Section 6271.1 of the Penal Code, and together with the funds appropriated in Section 15819.413 for this purpose, this shall constitute the scope and cost of a single capital outlay project for purposes of calculating augmentations pursuant to Section 13332.11 as described in Section 15819.411.

(d) (1) The reporting requirements set forth in Sections 7000 to 7003.5, inclusive, of the Penal Code, shall apply separately to each institution or facility. The scope and cost of the project for each institution or facility shall be established by the State Public Works Board individually. The amount of the total appropriations in Section 15819.413 that is necessary for each project shall be allocated to each institution or facility project. The appropriations may be allocated based on current estimates. These initial allocations may be adjusted commensurate to changes that occur during the progression of the projects. As allocations are made or adjusted, the anticipated deficit or savings shall be continuously traced and reported. Once the total appropriation has been allocated, any augmentation necessary to fund an anticipated deficit shall be based on the total applicable capital outlay appropriation in Section 15819.413 and applied to each project allocation as necessary.

(2) For each institution, the department shall report to the Joint Legislative Budget Committee, identifying those projects that the department proposes to undertake, and any support buildings, and programming space to support up to 4,000 new beds. For each institution, the department shall describe the scope, budget, schedule, number of beds by security level, along with approximate square footage of support buildings, and programming space to be constructed or renovated. If after providing these reports, the committee fails to take any action with respect to each report within 30 days after submittal, this inaction shall be deemed to be approval for purposes of this section, and the department is authorized to proceed to design, construct, or renovate housing units, support buildings, and programming space for each institution for which a report has been approved.

(3) The Department of Corrections and Rehabilitation shall notify the Joint Legislative Budget Committee 45 days prior to the submission of preliminary plans to the board for each project authorized in this section. If after providing these notifications, the committee fails to take any action with respect to each report within 45 days after submittal, this inaction shall be deemed to be approval for purposes of this section, and the department is authorized to design, construct, or renovate housing units, support buildings, and programming space for each institution for which a report has been approved.

(4) The Department of Corrections and Rehabilitation shall report quarterly to the Joint Legislative Budget Committee on the allocations from the appropriations in Section 15819.413 and the anticipated deficit or savings. Each reentry program facility authorized under subdivision (c) shall be considered to be a separate project. Each medical, mental health, or dental building improvement authorized under subdivision (b) shall be considered to be a separate project, except that building improvements that have a related purpose and that are located at the same institution may be considered one project, for reporting purposes pursuant to Sections 7000 and 7003.5 of the Penal Code.

SEC. 6.  Section 15819.412 of the Government Code is amended to read:

15819.412.  For all projects authorized by this chapter, the board may borrow funds for project costs, including studies, design, construction, including, without limitation, renovation, and construction-related costs from the Pooled Money Investment Account pursuant to Sections 16312 and 16313. Except for preliminary expenditures to develop the scope, budget, programming, and scheduling for a project, project funds expended prior to project approval by the board shall not be reimbursable from the proceeds of the bonds.

SEC. 7.  Section 15819.414 of the Government Code is amended to read:

15819.414.  Notwithstanding Section 15819.413, the amount of revenue bonds, negotiable notes, or negotiable bond anticipation notes to be sold may include the following:

(a) The cost of design, construction, including, without limitation, renovation, or construction management and supervision, and other costs related to the design and construction,

including, without limitation, renovation, of the facilities, including augmentations.

(b) Sums necessary to pay interim financing.

(c) In addition to the amount authorized by Section 15819.413, any additional amount as may be authorized by the board to establish a reasonable construction reserve and to pay the costs of financing, including the payment of interest during acquisition or interest prior to, during, and for a period of six months after construction of the project, the cost of financing a debt-service reserve fund, and the cost of issuance of permanent financing for the project. This additional amount may include interest payable on any interim loan for the facility from the General Fund or the Pooled Money Investment Account pursuant to Sections 16312 and 16313.

SEC. 8.   Section 15819.417 of the Government Code is amended to read:

15819.417.   The State Public Works Board may not release any funds pursuant to this chapter until the panel created pursuant to Section 7021 of the Penal Code has certified that conditions listed in that section have been met. The authority provided by this chapter shall expire on January 1, 2014, and no project shall be commenced after that date, but projects already commenced may be completed and financed through the issuance of bonds pursuant to this chapter.

SEC. 9.   Section 15820.903 of the Government Code is amended to read:

15820.903.   (a) The SPWB may issue up to seven hundred fifty million dollars ($750,000,000) in revenue bonds, notes, or bond anticipation notes, pursuant to Chapter 5 of Part 10b of Division 3 of Title 2 (commencing with Section 15830) to finance the acquisition, design, or construction, and a reasonable construction reserve, of approved local jail facilities described in Section 15820.901, and any additional amount authorized under Section 15849.6 to pay for the cost of financing.

(b) Proceeds from the revenue bonds, notes, or bond anticipation notes may be utilized to reimburse a participating county for the costs of acquisition, preliminary plans, working drawings, and construction for approved projects.

AB 10 — 12 —

(c) Notwithstanding Section 13340, funds derived pursuant to this section and Section 15820.902 are continuously appropriated for purposes of this chapter.

(d) This section shall become inoperative on June 30, 2017, and no project may be commenced after that date; however, projects that have already commenced by that date may be completed and financed with bonds issued pursuant to this chapter.

SEC. 10. Section 15820.904 is added to the Government Code, to read:

15820.904. In support of this state funding, the Legislature finds and declares all of the following:

(a) The county jail system needs more capacity.

(b) Without increased capacity, public safety throughout the state may be jeopardized by offenders who either remain in the community or are released early due to lack of jail capacity.

(c) By expanding jail capacity, this funding will serve a critical state purpose by promoting public safety.

(d) This purpose represents valuable consideration in exchange for this state action.

SEC. 11. Section 15820.911 of the Government Code is amended to read:

15820.911. (a) The CDCR, a participating county, and the SPWB are authorized to acquire, design, and construct, a local jail facility approved by the Corrections Standards Authority (CSA) pursuant to Section 15820.916, or a site or sites owned by, or subject to a lease or option to purchase held by a participating county. The ownership interest of a participating county in the site or sites for a local jail facility must be determined by the SPWB to be adequate for purposes of its financing in order to be eligible under this chapter.

(b) Notwithstanding Section 15815, a participating county may acquire, design, or construct the local jail facility in accordance with its local contracting authority. Notwithstanding Section 14951, the participating county may assign an inspector during the construction of the project.

(c) The CDCR, a participating county and the SPWB shall enter into a construction agreement for these projects that shall provide, at a minimum, performance expectations of the parties related to the acquisition, design, construction, or renovation of the local jail facility, guidelines and criteria for use and application of the

☐                                                          97

proceeds of revenue bonds, notes, or bond anticipation notes issued by the SPWB to pay for the cost of the approved local jail facility project and ongoing maintenance and staffing responsibilities for the term of the financing.

(d) The construction agreement shall include a provision that the participating county agrees to indemnify, defend, and save harmless the State of California for any and all claims and losses arising out of the acquisition, design, and construction of the project. The construction agreement may also contain additional terms and conditions that facilitate the financing by the SPWB.

(e) The scope and cost of these approved local jail facility projects shall be subject to approval and administrative oversight by the SPWB.

(f) For purposes of compliance with the California Environmental Quality Act (Division 13 of the Public Resources Code (commencing at Section 210000)), neither the SPWB nor the CDCR shall be deemed a lead or responsible agency; the participating county is the lead agency.

SEC. 12.    Section 15820.913 of the Government Code is amended to read:

15820.913.    (a) The SPWB may issue up to four hundred seventy million dollars ($470,000,000) in revenue bonds, notes, or bond anticipation notes, pursuant to Chapter 5 of Part 10b of Division 3 of Title 2 (commencing with Section 15830) to finance the acquisition, design, or construction, and a reasonable construction reserve, of approved local jail facilities described in Section 15820.911, and any additional amount authorized under Section 15849.6 to pay for the cost of financing.

(b) Proceeds from the revenue bonds, notes, or bond anticipation notes may be used to reimburse a participating county for the costs of acquisition, preliminary plans, working drawings, and construction for approved projects.

(c) Notwithstanding Section 13340, funds derived pursuant to this section and Section 15820.912 are continuously appropriated for purposes of this chapter.

SEC. 13.    Section 15820.914 is added to the Government Code, to read:

15820.914.    In support of this state funding, the Legislature finds and declares all of the following:

(a) The county jail system needs more capacity.

☐    97

(b) Without increased capacity, public safety throughout the state may be jeopardized by offenders who either remain in the community or are released early due to lack of jail capacity.

(c) By expanding jail capacity, this funding will serve a critical state purpose by promoting public safety.

(d) This purpose represents valuable consideration in exchange for this state action.

SEC. 14.   Section 7021 of the Penal Code is amended to read:

7021.   (a)  The State Public Works Board may not release any funds provided for projects in Section 15819.41 of the Government Code or Section 6271.1, until a three-member panel, composed of the State Auditor, the Inspector General, and an appointee of the Judicial Council of California, verifies that the conditions outlined in paragraphs (1) to (13), inclusive, have been met. The Legislative Analyst shall provide information and input to the three-member panel as it considers whether the conditions have been met.

(1)  At least 4,000 beds authorized in subdivision (a) of Section 15819.40 of the Government Code are under construction.

(2)  The first 4,000 beds authorized in subdivision (a) of Section 15819.40 of the Government Code include space and will provide opportunities for rehabilitation services for inmates.

(3)  At least 2,000 of the beds authorized in subdivision (a) of Section 6271 are under construction or sited.

(4)  At least 2,000 substance abuse treatment slots established in Section 2694 have been established, with aftercare in the community.

(5)  Prison institutional drug treatment slots have averaged at least 75 percent participation over the previous six months.

(6)  The Department of Corrections and Rehabilitation has implemented an inmate assessment at reception centers, pursuant to Section 3020, and has used the assessment to assign inmates to rehabilitation programs for at least six consecutive months.

(7)  The Department of Corrections and Rehabilitation has completed the Inmate Treatment and Prison-to-Employment Plan, pursuant to Section 3105.

(8)  At least 300 parolees are being served in day treatment or crisis care services, pursuant to Section 3073.

(9)  The California Rehabilitation Oversight Board (C-ROB), created pursuant to Section 6140, has been in operation for at least one year, and is regularly reviewing the Department of Corrections

— 15 —                              AB 10

and Rehabilitation's programs. This condition may be waived if the appointments to the C-ROB have not been made by the Legislature.

(10) The Department of Corrections and Rehabilitation has implemented a plan to address management deficiencies, pursuant to Section 2061, and at least 75 percent of management positions have been filled for at least six months.

(11) The Department of Corrections and Rehabilitation has increased full-time participation in inmate academic and vocation education programs by 10 percent from the levels of participation on April 1, 2007.

(12) The Department of Corrections and Rehabilitation has developed and implemented a plan to obtain additional rehabilitation services, pursuant to Section 2062, and the vacancy rate for positions dedicated to rehabilitation and treatment services in prisons and parole offices is no greater than the statewide average vacancy rate for all state positions.

(13) The Department of Corrections and Rehabilitation has reviewed existing parole procedures.

(b) The provisions of Section 15819.41 of the Government Code and Section 6271.1 shall not authorize construction of facilities until the three-member panel specified in subdivision (a) has certified that the requirements of that subdivision have been met. Those sections shall become inoperative on January 1, 2014. Any projects already underway may continue, and funding for those projects shall remain authorized in order to allow for the issuance of bonds.

(c) The requirements set forth in Section 7021 are contingent upon the Legislature making funds available for the rehabilitation programs set forth in the Public Safety and Offender Rehabilitation Services Act of 2007.

SEC. 15.  Section 1970 of the Welfare and Institutions Code is amended to read:

1970.  (a) For the purposes of this article, "participating county" means any county, or regional consortium of counties, within the state that has been certified to the board by the authority as having satisfied all of the requirements set forth in Section 1975 for financing a local youthful offender rehabilitative facility pursuant to this article.

☐                                    97

(b)  For purposes of this article, "board" means the State Public Works Board, and "authority" means the Corrections Standards Authority.

SEC. 16.  Section 1971 of the Welfare and Institutions Code is amended to read:

1971.  (a)  The Department of Corrections and Rehabilitation, a participating county, and the board are authorized to acquire, design, renovate, or construct a local youthful offender rehabilitative facility approved by the authority pursuant to Section 1975, or a site or sites owned by, or subject to a lease or option to purchase held by a participating county. The ownership interest of a participating county in the site or sites for a local youthful offender rehabilitative facility shall be determined by the board to be adequate for purposes of its financing in order to be eligible under this article.

(b)  Notwithstanding Section 15815 of the Government Code, a participating county may acquire, design, renovate, or construct the local youthful offender rehabilitative facility in accordance with its local contracting authority. Notwithstanding Section 14951 of the Government Code, the participating county may assign an inspector during the construction of the project.

(c)  The department, a participating county, and the board shall enter a construction agreement for the project that shall provide, at a minimum, all of the following:

(1)  Performance expectations of the parties related to the acquisition, design, renovation, or construction of the local youthful offender rehabilitative facility.

(2)  Guidelines and criteria for use and application of the proceeds of revenue bonds, notes, or bond anticipation notes issued by the board to pay for the cost of the approved local youthful offender rehabilitative facility project.

(3)  Ongoing maintenance and staffing responsibilities for the term of the financing.

(d)  The construction agreement shall include a provision that the participating county agrees to indemnify, defend, and hold harmless the State of California for any and all claims and losses arising out of the acquisition, design, renovation, and construction of the local youthful offender rehabilitative facility. The construction agreement may also contain additional terms and conditions that facilitate the financing by the board.

(e)  The scope and cost of the approved local youthful offender rehabilitative facility project shall be subject to approval and administrative oversight by the board.

(f)  For purposes of compliance with the California Environmental Quality Act (Division 13 (commencing with Section 21000) of the Public Resources Code), neither the board nor the department, shall be deemed a lead or responsible agency. The participating county shall be the lead agency.

SEC. 17.  Section 1972 of the Welfare and Institutions Code is amended to read:

1972.  Upon the receipt by a participating county of responsive construction bids, the board and the department may borrow funds for project costs after the project has been certified pursuant to Section 1970 from the Pooled Money Investment Account pursuant to Sections 16312 and 16313 of the Government Code, or from any other appropriate source. In the event any of the revenue bonds, notes, or bond anticipation notes authorized by this chapter are not sold, the department shall commit a sufficient amount of its support appropriation to repay any loans made for an approved project.

SEC. 18.  Section 1973 of the Welfare and Institutions Code is amended to read:

1973.  (a)  The board may issue up to one hundred million dollars ($100,000,000) in revenue bonds, notes, or bond anticipation notes, pursuant to Chapter 5 (commencing with Section 15830) of Part 10b of Division 3 of Title 2 of the Government Code to finance the acquisition, design, renovation, or construction, and a reasonable construction reserve, of approved local youthful offender rehabilitative facilities described in Section 1971, and any additional amount authorized under Section 15849.6 of the Government Code to pay for the cost of financing.

(b)  Proceeds from the revenue bonds, notes, or bond anticipation notes may be utilized to reimburse a participating county for the costs of acquisition, preliminary plans, working drawings, and construction for approved projects.

(c)  Notwithstanding Section 13340 of the Government Code, funds derived pursuant to this section are continuously appropriated for purposes of this article.

(d)  This section shall become inoperative on June 30, 2017. No projects shall be commenced after that date, but projects already

**AB 10**                    — 18 —

commenced may be completed and financed through the issuance of bonds pursuant to this article.

SEC. 19. Section 1975 of the Welfare and Institutions Code is amended to read:

1975. (a) The authority shall adhere to its duly adopted regulations for the approval or disapproval of local youthful offender rehabilitative facilities. The authority also shall consider cost-effectiveness in determining approval or disapproval. No state moneys shall be encumbered in contracts let by a participating county until final architectural plans and specifications have been approved by the authority, and subsequent construction bids have been received. The review and approval of plans, specifications, or other documents by the authority are for the purpose of ensuring proper administration of moneys and determination of whether the project specifications comply with law and regulation. The authority may require changes in construction materials to enhance safety and security if materials proposed at the time of final plans and specifications are not essential and customary as used statewide for facilities of the same security level. Participating counties are responsible for the acquisition, design, renovation, construction, staffing, operation, repair, and maintenance of the project.

(b) The authority shall establish minimum standards and funding schedules and procedures, which shall take into consideration, but not be limited to, all of the following:

(1) Certification by a participating county of project site control through either fee simple ownership of the site or comparable long-term possession of the site, and right of access to the project sufficient to ensure undisturbed use and possession.

(2) Documentation of need for the project.

(3) A written project proposal.

(4) Submittal of a staffing plan for the project, including operational cost projections and documentation that the local youthful offender rehabilitative facility will be able to be safely staffed and operated within 90 days of completion.

(5) Submittal of architectural drawings, which shall be approved by the authority for compliance with minimum youthful offender rehabilitation facility standards and which also shall be approved by the State Fire Marshal for compliance with fire safety and life safety requirements.

(6) Documentation evidencing the filing by a participating county of a final notice of determination on its environmental impact report.

(7) Provisions intended to maintain the tax-exempt status of the bonds, notes, or bond anticipation notes issued by the board.

SEC. 20.  Section 1977 is added to the Welfare and Institutions Code, to read:

1977.  In support of state funding authorized by this article, the Legislature finds and declares all of the following:

(a)  Population levels in local juvenile offender facilities across the state have dramatically increased.

(b)  Although capacity in local juvenile offender rehabilitation and incarceration facilities has been added during the last decade, those facilities still face capacity problems, and aging facilities need to be repaired or replaced.

(c)  Insufficient capacity at local juvenile offender rehabilitation and incarceration facilities may create risks to the public safety as well as a loss to the state of potentially productive members of society.

(d)  By expanding local juvenile offender rehabilitation and incarceration facilities, this funding will serve a critical state purpose, which purpose represents valuable consideration in exchange for this state action.

SEC. 21.  This act addresses the fiscal emergency declared by the Governor by proclamation on December 1, 2008, pursuant to subdivision (f) of Section 10 of Article IV of the California Constitution.

SEC. 22.  This act shall only become operative if either Assembly Bill 2 or Senate Bill 2 and either Assembly Bill 9 or Senate Bill 9 of the 2009–10 First Extraordinary Session are chaptered.

SEC. 23.  This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to make the necessary statutory changes to implement the Budget Act of 2008 at the earliest time possible, it is necessary that this act take effect immediately.

Approved _____, 2008


_____

*Governor*

# EXHIBIT D

January 6, 2009

To the Members of the California State Assembly:

I am returning Assembly Bill X1 10 without my signature because it is part of a package of bills that does not deal with California's current budget and economic crisis.  This package of bills punishes Californians by raising revenue without providing permanent and ongoing cuts, does not create jobs or stimulate our economy, does not allow government to run more efficiently in California, and makes no attempt to keep people in their homes.

Sincerely,


Arnold Schwarzenegger