1 | ANN MILLER RAVEL, County Counsel (S.B. #62139)
THERESA J. FUENTES, Deputy County Counsel (S.B. #208588)
2 | OFFICE OF THE COUNTY COUNSEL
70 West Hedding, East Wing, 9th Floor
3 | San Jose, California  95110-1770
Telephone:  (408) 299-5900
4 | Facsimile:  (408) 292-7240

5 | Lead Attorneys for County Intervenors
COUNTY OF SANTA CLARA, COUNTY OF SAN MATEO and
6 | COUNTY OF SANTA BARBARA

7 | MICHAEL P. MURPHY, County Counsel (S.B. # 83887)
DEBORAH PENNY BENNETT, Chief Deputy County Counsel (S.B. # 72282)
8 | CAROL L. WOODWARD, Deputy County Counsel (S.B. # 84197)
OFFICE OF THE COUNTY COUNSEL
9 | Hall of Justice and Records
400 County Center, 6th Floor
10 | Redwood City, California  94063
Telephone: (650) 363-4746
11 | Facsimile:  (650) 363-4034

12 | Attorneys for Intervenor
COUNTY OF SAN MATEO

13

14 | UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
15 | AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
16 | PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

17

18 | RALPH COLEMAN, et al.,                    )   No.  CIV S-90-0520 LKK JFM P
                                          )
19 |        Plaintiffs,                      )   THREE-JUDGE COURT
                                          )
20 | v.                                      )
                                          )
21 | ARNOLD SCHWARZENEGGER, et al., )
                                          )
22 |        Defendants.                     )
    ——————————————————————— )
23 |                                          )   No.  C01-1351 TEH
    MARCIANO PLATA, et al.,                )
24 |                                          )   THREE-JUDGE COURT
           Plaintiffs,                     )
25 |                                          )   **COUNTY INTERVENORS' PROPOSED**
    v.                                      )   **FINDINGS OF FACT AND CONCLUSIONS**
26 |                                          )   **OF LAW**
    ARNOLD SCHWARZENEGGER, et al., )
27 |                                          )
           Defendants.                     )
28 |    ——————————————————————— )

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                1          CIV S-90-0520 LKK JFM / C01-1351 TEH

Pursuant to the Court's Order of January 9, 2009, the Counties of Santa Clara, San Mateo and Santa Barbara (the "County Intervenors") submit the following Proposed Findings of Fact and Conclusions of Law.  The Proposed Findings of Fact are based on evidence submitted by the County Intervenors.  In addition, where relevant, the County Intervenors rely on proposed findings of fact submitted by Defendants and other Defendant Intervenors.

## I.

## PROPOSED FINDINGS OF FACT

**A.    A PRISONER RELEASE ORDER WILL HAVE A SUBSTANTIAL ADVERSE IMPACT ON PUBLIC SAFETY AND THE OPERATION OF CRIMINAL JUSTICE SYSTEMS BECAUSE THE COUNTIES DO NOT HAVE SUFFICIENT RESOURCES TO PROVIDE PROGRAMS FOR AND SERVICES TO RELEASED PRISONERS**

### 1.    California Counties Are Providers of Programs and Services

California counties are providers of last resort for health and mental health care for indigent residents who are uninsured or do not receive Medi-Cal assistance from the state. (Expert Report of Gary Graves, Exh. DI-300 ("Graves Report"), p. 7; Trial Declaration of Nancy Pena, Exh. DI-319 ("Pena Decl."), ¶ 9.)  California counties also provide drug and alcohol treatment, and general relief and social services for indigent residents, such as emergency shelter, housing assistance and job training.  (Graves Report, p. 6-7.)  County services aimed at caring for vulnerable populations, such as behavioral health and recovery services, comprise a system of care for persons with serious mental illness, alcohol and other drug addiction, and co-occurring mental health and substance abuse issues.  Aging and adult services protect and promote the health and well-being of older adults and persons with disabilities.  Correctional health services address the medical and behavioral health needs of clients in local criminal justice systems.  (Declaration of Charlene Silva, Exh. DI-225 ("Silva Decl."), ¶ 1.)  These county services are commonly referred to as "safety net" services.

The public health system in California is straining to meet the needs of uninsured and Medi-Cal insured residents who have little choice but to rely on the public health system. (Graves Report, p. 7.)  According to the California Association of Public Hospitals, only six percent of all California hospitals statewide are publicly run.  (Graves Report, p. 7; California

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    2          CIV S-90-0520 LKK JFM / C01-1351 TEH

Association of Public Hospitals Fast Facts Web Page, Exh. DI-303.)

The county safety nets are extremely fragile due to lack of resources and service capacity. (Graves Report, p. 7.) Santa Clara County has been operating at the bare minimum, having made reductions to every service area within the county, including public safety, social services, health and administration and general government. (Trial Testimony of Gary Graves, December 11, 2008, Docket No. 1935 ("Graves Testimony"), p. 2248, lines 5-12.) Each department within Santa Clara County has had to reduce its level of service because counties generally have no revenue raising authority, and the only option to bridge gaps between revenues and expenditures is to reduce expenditures. (Graves Testimony, p. 2248, lines 5-12.)

San Mateo County works with the San Mateo Medical Center and the Health Plan of San Mateo (the local Medi-Cal and public coverage managed care plan) to leverage their joint resources to serve the needs of the underserved, which would include parolees. (Silva Decl., ¶ 1.) However, existing health and mental health systems in San Mateo are stretched in meeting the needs of current residents. As the number of those without health insurance has grown, and state and federal funding for many of the county's services has been reduced, the pressures on the safety net have increased, and the supports that keep communities and individuals healthy have frayed. (Silva Decl., ¶ 1.)

### 2.    California Counties Are in Poor Fiscal Health

California counties rely on the State of California for funding for many of their programs and services, although the state does not fully fund the costs of those services. (Graves Testimony, p. 2249, lines 10-20.) For example, Santa Clara County has a very active Substance Abuse and Crime Prevention Act (SACPA) program, which is a voter approved initiative providing state funding for drug treatment in lieu of incarceration for certain non-violent adult drug offenders. (Graves Testimony, p. 2254, lines 2-25; Trial Declaration of Robert Garner, Exh. DI-313 ("Garner Decl.,), ¶ 3; Expert Report of Robert Garner, Exh. DI-312, ("Garner Report"), p.5.) Despite the legal mandate for the County to provide treatment to SACPA eligible offenders, the state does not fully fund the program. As a result, the County must supplement one-half to two-thirds of the state SACPA allocation with state and federal

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law          3          CIV S-90-0520 LKK JFM / C01-1351 TEH

discretionary funds and County general funds.  (Garner Decl., ¶ 6, Garner Report, p. 5; Graves Testimony, p. 2254, lines 12-18.)  The more demands that are put on the County to use discretionary and general funds to provide services to SACPA and criminal justice clients, the fewer resources the County has available to provide services to non-offenders, including mothers, children, and other persons needing services in the community.  (Garner Decl., ¶ 6; Garner Report, p. 5.)  An influx of released prisoners with complex and expensive needs will force further difficult decisions regarding which population to serve:  those residents who had service needs prior to any release, or recently released parolees who either have not received treatment while incarcerated or otherwise will face a lapse in treatment.  (Declaration of David S. Boesch, Jr. For Trial, Exh. DI-223 ("Boesch Decl."), p. 8, lines 5-15.)

The counties are especially challenged in light of the State's structural budget imbalance, the likelihood of further reduction in state funding and the nature of the safety net services the counties are both committed to and often mandated to provide to the most vulnerable residents. (Boesch Decl., p. 8, lines 5-15.)  The impact of the state's budget woes on Santa Clara County is at least $13 million, including $7.8 million in health service cuts.  (Trial Declaration of Gary Graves, Exh. DI-301 ("Graves Decl."), ¶ 3.)

The counties rely for more than half their revenue on the state and federal government. (Graves Testimony, p. 2249, lines 23-24.)  A "critical issue" for Santa Clara County is that because such a large amount of revenue comes from the state and federal governments, decisions about the use of those revenues are effectively being made outside the County seat. (Graves Testimony, p. 2250, lines 9-12.)  This lack of discretion regarding allocation of funds has a "dramatic impact" on the County's ability to provide safety net services.  (Graves Testimony, p. 2250, lines 16-22.)

County fiscal health is declining across California and counties are experiencing budget deficits.  Many California cities and counties are on the verge of financial calamity as they struggle to balance budgets in the face of existing demands and increasing pressure to provide more services with less revenue. (Boesch Decl., p. 8, lines 5-15.)  Santa Clara County, with a population of 1.7 million, is the sixth largest county in the state of California and has a total

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                4        CIV S-90-0520 LKK JFM / C01-1351 TEH

budget of approximately $4 billion.  (Graves Testimony, p. 2246, line 24 through p. 2247, lines 1-6.)  Santa Clara County has had budget deficits that have exceeded $1 billion dollars during the past 5 years, a current projected deficit of $220 million, and projected deficits through at least 2012. (Graves Report, p. 3; Graves Decl., ¶ 4; Graves Testimony, p. 2247, lines 18-22.)

San Mateo County has been dealing with a structural budget deficit, wherein costs of operations continue to outstrip and outpace revenues, for several years.  The Board of Supervisors has adopted a five-year plan to restore the County budget to balance, in order to close a projected $92 million shortfall.  All departments, including criminal justice and health, are fully engaged in the process of improving flagging revenues and decreasing expenditures.  And, this is occurring both during this time of great fiscal uncertainty with respect to the ongoing State budget conundrum and in light of the potential for further cutbacks in funding and increased demand for services in a soft economy.  In all probability, the County of San Mateo will suffer additional substantial cuts in state funding. (Boesch Decl., p. 8, line 27- p. 9, lines 1-8.)

### 3.    The County Intervenors Do Not Have Capacity or Resources to Provide Mental Health Services to Released Prisoners

Approximately 20% of prisoners released from state prison will likely need some level of mental health treatment upon release.  (Pena Decl., ¶ 18; Expert Report of Nancy Pena, Exh. DI-318 ("Pena Report"), p. 2; Boesch Decl., p. 9, line 27 - p. 10, lines 1-2; Declaration of Duane Bay for Trial, Exh. DI-227 ("Bay Decl."), p. 2, lines 27-28, p. 3, lines 1-3; California Department of Corrections and Rehabilitation Division of Adult Parole Operations-Mentally Ill Parolee Population Report dated March 28, 2008, Exh. DI-323, p. 3.)  Approximately 75% of these individuals will have co-occurring substance abuse problems.  (Pena Decl. ¶16; Boesch Decl., p. 9, lines 26-28, p. 10, lines 1-19.)  Mentally ill individuals who may be subject to a prisoner release order are expected to have complex, high level service needs.  (Pena Decl., ¶ 16; Boesch Decl., p. 9, lines 26-28, p. 10, lines 1-19.)  Prisoners often receive mental health services (*e.g.,* medication, support therapy, counseling) in prison that they will not be able to receive in the community due to inadequate resources.  (Pena Decl., ¶ 16; Boesch Decl., p. 9,

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    5          CIV S-90-0520 LKK JFM / C01-1351 TEH

lines 20-24.)  Mentally ill individuals released from prison are likely to be homeless and unemployed once released from prison.  (Pena Decl., ¶ 16.)  It is likely they are not self sufficient and have no family and support network in the community.  (Pena Decl., ¶ 16.)  They have a criminal justice background which makes it more difficult to obtain housing and employment.  (Pena Decl., ¶ 16.)  Individuals with mental illness who are in prison or other institutions (regardless of the conditions in those institutions) are often provided with basic life needs such as shelter, food, clothing and medicine.  (Pena Decl., ¶ 16.)  If these individuals are released into the community setting with none of those basic supports in place, and no access to mental health treatment, they may quickly deteriorate in their psychiatric functioning.  (Pena Decl., ¶ 16.)  Psychiatric decompensation often results from this deterioration, leading to impaired judgment and thinking, paranoia, delusions, hallucinations, and loss of emotional and behavioral control.  This leads to psychiatric hospitalization and rapid re-involvement with the criminal justice system.  (Pena Decl., ¶ 16.)

Santa Clara County provides mental health services to individuals through the Mental Health Department.  The Mental Health Department serves 17,000-19,000 clients each year through an extensive network of County operated and contracted providers.  (Pena Decl., ¶ 6.)  The majority of adult mental health clients receive outpatient services, which consist of approximately one hour a month of case management services and individual, group and family therapy, and medication monitoring.  (Pena Decl., ¶ 12.)  These outpatient services cost the County an average of more than $4,300 per client per year.  (Pena Decl., ¶ 12; Pena Report, p. 3.)  In addition, it costs the County approximately $1,200 a day for inpatient services if the services are rendered in the County facility, and approximately $900 a day if the County contracts for services in the private sector.  (Pena Decl., ¶ 13.)  The County also provides full service partnership ("FSP") service, which is a comprehensive multi disciplinary approach involving psychiatrists, clinicians and case management staff to address all aspects of a client's life and to provide treatment and support services such as permanent housing, 24 hour access to treatment, support and case management, and flexible funds that can be used for any purpose, including employment, benefits or housing.  (Pena Decl., ¶ 14.)  FSP services, which are

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                6        CIV S-90-0520 LKK JFM / C01-1351 TEH

expensive, cost an average of $19,380 per year.  (Pena Decl., ¶ 14.)  Approximately 175 of 300-350 FSP slots are reserved for individuals who are part of the criminal justice system and are coming out of County jail.  (Pena Decl,. ¶ 14.)  There are many more individuals who need and would benefit from these services, but cannot get them because there are insufficient resources.  (Pena Decl., ¶ 14.)

The Santa Clara County Mental Health Department has a $250 million budget consisting of county, state and federal funds, approximately $72 million of which consists of County general fund.  (Pena Decl., ¶ 6, 9; Santa Clara County FY09 Recommended Budget, Exh. DI-302; p. 489.)  The State of California contracts with the County to act as the Medi-Cal Mental Health Managed care provider for Medi-Cal beneficiaries who are Santa Clara County residents.  (Pena Decl., ¶ 8.)  Medi-Cal, which is California's Medicaid program, is a public health insurance program that provides necessary health care services for certain low-income individuals, including children, families with children, pregnant women, seniors, persons with certain disabilities, and persons with certain diseases such as tuberculosis, breast cancer, or HIV/AIDS.  (Pena Decl., ¶ 7.)  The majority of the County's mental health clients are covered by Medi-Cal, although the County does serve some mentally ill adults and children that are either uninsured by Medi-Cal or have private insurance or resources ("Unsponsored Clients").  (Pena Decl., ¶¶ 7, 9.)  Generally, the County is not required to provide mental health services to Unsponsored Clients beyond local resources available through state and federal funds, and the required relatively small local Medi-Cal match.  Nonetheless the County, as the safety net and health care provider of last resort, expends significant general fund dollars to provide services to this population. (Pena Decl., ¶ 9.)  Santa Clara County is one of only a few counties that invests substantial general discretionary fund dollars that are used to provide mental health services to Unsponsored Clients.  (Pena Decl., ¶ 9.)

During the past five years, the Santa Clara County Mental Health Department has sustained general fund budget cuts of nearly $45 million dollars.  (Pena Decl., ¶ 10; Pena Report, p. 6.)  These budget cuts have resulted, among other things, in the County's loss of ability to provide mental health services to at least 4,000 Unsponsored Clients.  (Pena Decl., ¶

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law        7        CIV S-90-0520 LKK JFM / C01-1351 TEH

10; Pena Report, p. 6.)  The Mental Health Department anticipates further budget cuts of $22.5 million for fiscal year 2010. (Pena Testimony, p. 2428, lines 2-3.)  In addition, other departments and community based organizations that provide critical mental health, substance abuse, housing, employment training and social services have also been hit hard by budget cuts. (Pena Report, p. 6.)

Counties do not have the resources to serve everybody who needs County mental health services.  Most individuals needing mental health services from Santa Clara County seek those services through the Mental Health Department's Call Center, which screens individuals for eligibility based on ability to pay/availability of insurance and severity of need.  (Pena Decl., ¶ 11; Pena Testimony, p. 2426, lines 9-20.)  The Call Center accepts approximately 30% of individuals who request mental health services, and 70% are turned away or referred to other community resources.  (Pena Decl., ¶ 11; Pena Testimony, p. 2426, lines 9-20.)  Generally, the only people who are able to receive services from the County are Medi-Cal beneficiaries who have significant impairment in their functioning, are unable to work, and have had recent psychiatric crisis, hospitalizations or suicide attempts.  (Pena Decl., ¶ 11.)  Unsponsored clients usually only receive services if they are directly referred from an inpatient hospitalization or psychiatric emergency room.  (Pena Decl., ¶ 11.)  In fiscal year 2008, the Santa Clara County Mental Health Department had a waiting list of nearly 500 Unsponsored Clients and, as a result, made the decision not to maintain a waiting list because it did not seem appropriate to offer people a spot on a list for services they will likely never get.  (Pena Decl., ¶ 11; Pena Report, p. 3.)  Santa Clara County cannot provide mental health services to any additional people when it currently is forced to deny services to 70% of adults who seek those services.  (Pena Decl., ¶ 18.)

Many county jails, including San Mateo and Santa Clara, provide mental health services to inmates incarcerated in the county jails.  (Boesch Decl., p. 10, lines 8-13; Pena Decl., ¶ 15.) Santa Clara County is the fifth largest jail system in California and is among the 20 largest jail systems in the United States (Santa Clara County Mentally III Offender Crime Reduction Grant Program-Adult, Exh. DI-320 ("MIOCR Grant"), p. 2-3.)  Approximately 2,000 to 2,500 people

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    8            CIV S-90-0520 LKK JFM / C01-1351 TEH

leaving the Santa Clara County jail system each year are in need of mental health services. (Pena Decl., ¶ 15; MIOCR Grant, p. 2-3.)  The County is only able to serve an estimated 700 of these individuals, or less than 30%.  (Pena Decl., ¶ 15; Pena Report, p. 4-5; MIOCR Grant, p. 3.)  On any given day, as many as 50 mentally ill offenders who are released into the community from Santa Clara County's court system with conditions of obtaining community mental health and substance abuse treatment wait 7 to 90 days because of a backlog of available treatment beds.  (Pena Decl., ¶ 15; MIOCR Grant, p. 4; Pena Report, p. 5.)  This has created a "log jam" of mentally ill offenders in custody settings that has persisted despite system efforts to make change.  (Pena Report, p 3-4;; MIOCR Grant p. 3-4.)  A new influx of prisoners competing for these same beds will widen the already extensive gap between need and resource, resulting in even more untreated individuals.  (Pena Decl., ¶ 15.)  It will also create a real threat of serious overflow problems in jail settings resulting from the unavailability of adequate aftercare services.  (Pena Report, p. 5.)

A prisoner release order with a population cap that imposes a freeze or delay on the transfer of county inmates to state prison will require county mental health departments to provide care to a growing number of inmates in county jails who are awaiting transfer to state prison, as well as their routine county jail patient population.  (Boesch Decl., p. 10, lines 8-13.)  A prisoner release order  would create an obstacle to providing a continuum of care for mentally ill individuals, in that it would result in an influx of additional prison releasees into a county system already challenged to meet the needs of its current residents.  Some, if not all, of the released parolees would experience a lapse in mental health treatment.  (Boesch Decl., p. 10, lines 15-19; Pena Decl., ¶ 18.)

Releasing additional prisoners into the community without resources for treatment, and allocation of sufficient time for planning an coordination, will have a negative impact on public safety because the released individuals will go untreated and will decompensate in the community.  (Pena Decl., ¶ 18.)  Decompensation will result in increased psychiatric hospitalization and emergency psychiatric crises, increased medical emergency room utilization, recidivism, homelessness, unemployment, suicide, danger to others, substance abuse

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                                    9          CIV S-90-0520 LKK JFM / C01-1351 TEH

1  and increased community safety concerns.  (Pena Decl., ¶ 18.)  The County would have no

2  choice but to prioritize and provide services to newly released prisoners according to current

3  system acuity, thereby stretching an already thread-bare safety net and posing a severe risk to

4  community safety.  (Pena Decl., ¶ 18; Pena Report, p. 3, Pena Testimony, p. 2434, lines 8-22.)

5       As such, releasing prisoners under a prisoner release order without the ability to obtain

6  mental health treatment will pose a significant harm to public safety.  (Pena Testimony, p. 2434,

7  lines 8-22.)  A release of prisoners would be a negative impact to most communities in

8  California because the local communities do not have the resources or capacity to respond to the

9  needs of an influx of prisoners, especially given that more and more people need to rely on the

10  public service sector to get their needs met.  (Pena Testimony, p. 2436, lines 1-15; Boesch

11  Decl., p. 10, lines 18-25.)

12       **4.    The County Intervenors do not have the funding and capacity to provide**
         **drug and alcohol services to released prisoners**

13

14       Approximately 70% of parolees from state prison have alcohol or substance abuse issues.

15  (Graves Report, p. 5; Graves Testimony, p. 2277, line 11:14; Garner Report, p. 4; Testimony of

16  Robert Garner, December 12, 2008, Docket No. 1939 ("Garner Testimony"),  p. 2494, lines 16-

17  24, p. 2487, lines 3-9; Bay Decl., p. 2, lines 27-28, p. 3, lines 1-3; Drug Treatment in the

18  Criminal Justice System: The Current State of Knowledge, Urban Institute Justice Policy

19  Center, Exh. DI-330, p. 3.)

20       San Mateo County has had to prioritize the segments of its population with substance

21  abuse addiction that it will serve with the limited resources it has, resulting in four priority

22  populations and an ability to serve an estimated one in five of current residents in need of

23  substance abuse treatment.  (Silva Decl., ¶ 2.)

24       Santa Clara County has a Department of Alcohol and Drug Services (the "Department").

25  The Department has a $50 million budget consisting of combined federal, state and County

26  general fund dollars, approximately $24 million of which comes from the County's general

27  fund.  (Garner Decl., ¶ 4, Santa Clara County FY09 Recommended Budget, Exh. DI-302, p.

28  518-19.)  The Department has a budget reduction target of $9 million for fiscal year 2010.

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law          10      CIV S-90-0520 LKK JFM / C01-1351 TEH

(Garner Testimony, p. 2488, lines 22-25 through p. 2489, line 1.)

The Department provides a broad array of treatment services to adult clients through a combination of County and community based treatment providers.  These services include outpatient counseling, transitional short-term (1-3 months) housing for clients who are in the outpatient program but do not have adequate housing, residential programs, detoxification services, perinatal program, and methadone treatment (drug replacement for heroin and other opium addicts).  (Garner Decl., ¶ 5.; Garner Report, p. 4.)  The estimated cost to provide these services is $4,369.00 per client, per year.  (Garner Report, p. 6; Garner Decl., ¶ 5;  Fiscal Year 2006 Adult Treatment Cost for the Department of Alcohol and Drug Services, Exh. DI-307.)

In fiscal year 2006, the Department served approximately 8,566 clients.  (Garner Decl., ¶ 5, Fiscal Year 2006 Adult Treatment Cost for the Department of Alcohol and Drug Services, Exh. DI-307.)  In fiscal year 2008, the Department served approximately 8,130 clients, or 436 fewer clients than it served in 2006. (Garner Decl., ¶ 5; Santa Clara County Department of Alcohol and Drug Services Episodes of Care for Fiscal Year 2008, Exh. DI-315.)  The Department maintains a waiting list for drug and alcohol services, which ranges from an average of 33 days for outpatient services, 28 days for methadone treatment, 9 days for residential drug abuse treatment, 12 days for detoxification, and 7-14 days for residential treatment.  (Garner Decl., ¶ 7; Garner Report, p. 4.)  The waiting lists do not include everybody who wants or needs drug and alcohol services.  (Garner Decl., ¶ 7.)  Many people do not put their name on the waiting list when they find out they cannot get immediate access to treatment.  (Garner Decl., ¶ 7.)  In other words, they do not wait around to be selected off the waiting list, do not regularly call in, or do not take whatever steps are necessary to maintain a spot on the waiting list, and instead continue to abuse substances in the community.  (Garner Decl., ¶ 7; Garner Testimony, p. 2490, lines 11-25.)

Addiction and dependence are chronic and relapsing brain diseases.  (Garner Report, p. 4; Garner Testimony, p. 2490, lines 12-14.)  Most prisoners who have substance abuse or alcohol addiction will initiate drug use within the first year following release.  (Garner Report, p. 4.)  Because the county system is at capacity and there are lengthy waiting periods, Santa Clara

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law        11        CIV S-90-0520 LKK JFM / C01-1351 TEH

1  County will not be able to provide immediate treatment to individuals who may be released by

2  the Court in connection with a prisoner release order issued in this case. (Garner Decl., ¶ 8;

3  Garner Report, p. 4-5.) The current system cannot support an increased demand in people

4  needing services, and in fact, cannot adequately address the current level of need. (Garner

5  Report, p. 5; Garner Decl., ¶ 8.) Alcoholics and drug addicts who do not receive treatment may

6  continue their cycle of abuse and escalate their level of use. (Garner Decl., ¶ 8; Garner Report,

7  p. 5.) As a result, there will be a significant impact to public safety, including increased crimes

8  and arrests, resulting from untreated alcohol and drug abusers in the community. (Garner Decl.,

9  ¶ 8; Garner Report, p. 5.) This problem will only be exacerbated by future budget reductions to

10  drug and alcohol services. (Garner Report, p. 5.)

11  **5.    The County Intervenors do not have the capacity to provide other health,**
        **social and human services to released prisoners**

12

13  If parolees are unable to maintain and sustain themselves, they will be unable to obtain

14  housing and contribute to their and their family's livelihood; thus, some will seek aid from the

15  counties' general funds for financial assistance and social services. (Boesch Decl., p. 10, lines

16  18-25.) The largest county human services programs are funded through federal, state and local

17  sources and include public assistance programs such as CalWORKS, food stamps, Medi-Cal,

18  emergency assistance programs including shelter services and safety net services, as well as

19  ongoing workforce development and child welfare programs. (Declaration of Beverly Beasley

20  Johnson for Trial, Exh. DI-228 ("Johnson Decl."), p. 2, lines 1-15.) Eligibility for each

21  program is set by federal, state and local law, regulation and policy. Aside from mental health

22  and drug and alcohol services, the county programs which parolees released pursuant to a

23  prisoner release order are likely to require are general assistance, shelter services, workforce

24  development services, food stamp and assistance programs, child welfare services, indigent

25  medical care, and the CalWORKS program. (Johnson Decl., p. 2, ¶ 1.)

26  Housing and Emergency Shelter

27  Housing is a huge need for people coming out of the criminal justice system. (Pena

28  Testimony, p. 2431, lines 7-8.) Santa Clara County's homeless population is approximately

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                12        CIV S-90-0520 LKK JFM / C01-1351 TEH

7,000 individuals (Graves Report, p. 6).

In San Mateo County, between 30-50% of parolees are homeless at any given point in time.  (Boesch Decl., p. 10, lines 19-20; Bay Decl., p. 3, lines 4-8.)  Approximately 10% of the homeless people surveyed by representatives of Santa Clara County indicated that the last place they slept was a jail or prison.  (Graves Testimony, p. 2280, lines 11-25, Graves Report, p. 6.)  Santa Clara County has allocated $17.7 million in discretionary funds to leverage $398 million of state and federal funds in an attempt to address affordable housing and homelessness problems.  (Graves Report, p. 7; August 13, 2008 Report to the Board of Supervisors from the Office of Affordable Housing, Exh. DI-304.)

Early released prisoners will not be able to compete effectively for housing in the open housing market due to low income, lack of positive credit history, and the tendency of most landlords to discriminate against prospective tenants with criminal history.  (Declaration of Duane Bay for Trial, Exh. DI-227 ("Bay Decl."), p. 2, lines 14-16.)  Released prisoners who do not compete effectively for open-market housing will attempt to find shelter with relatives or acquaintances, in transitional treatment facilities, or in homeless shelters, or they will remain unsheltered.  (Bay Decl,. p. 2, lines 17-19.)  Because transitional treatment facilities and emergency shelters for the homeless are chronically overbooked, many early released prisoners will remain unsheltered.  According to the 2007 San Mateo County Homeless Census and Survey, the average demand for approximately 2,064 beds nightly exceeded the average supply of less than 1,094 beds by a factor of almost 2:1.  The supply to demand ratio is even less favorable for treatment facilities.  (Bay Dec., p. 2, lines 20-24.)

Lack of stable housing is among the factors that are positively correlated to recidivism.  (Bay Decl., p. 2, lines 25-26.)  This effect – lack of stable housing contributing to recidivism – is likely to be even more pronounced for persons with one or more additional challenges such as ill-health, physical or mental disability, illiteracy or drug/alcohol addiction.  (Bay Decl., p. 2, lines 27-28, p. 3, lines 1-3.)

Prisoners released by this Court will be thrown into local communities unprepared and unable to accommodate them.  (Garner Report, p. 6.)  Without housing support, most prisoners

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    13        CIV S-90-0520 LKK JFM / C01-1351 TEH

will be forced to live in substandard housing and will initiate drug use again. Without treatment, the acuity of their addiction will worsen and their exposure to re-arrest and incarceration will increase. (Garner Report, p. 6.) A prisoner release order will not remedy these problems. (Garner Report, p. 6.)

Medi-Cal and Indigent Medical Services

Santa Clara County has provided more than $100 million in general fund dollars for medical care to uninsured residents over the last three years. (Graves Report, p. 7.) Untreated drug addiction increases the likelihood that clients will develop medical problems requiring medical care, as well as increased exposure to ailments such as HIV infection and Hepatitis C, further straining County resources. (Garner Report, p. 5.)

There are an estimated 40,000 adults in San Mateo County who lack health insurance and have incomes below 400% of the federal poverty level, which is the estimated income required to live "self-sufficiently" in San Mateo County. (Silva Decl., ¶ 2.) San Mateo County has persistent health disparities in its community, disproportionately affecting populations of color and low-income populations, whose health outcomes are influenced by social and environmental factors that reflect poverty, inequities in health access and the toll of discrimination and stigma. (Silva Decl., ¶ 2.) San Mateo County has inadequate primary care capacity within its public health delivery system; the waits for a primary care appointment are currently between two and four months. (Silva Decl., ¶ 2.) State budget cuts to the Medi-Cal program, which is the financial platform for safety net medical and mental health care services, will likely result in reductions in current capacity. (Silva Decl., ¶ 2.) San Mateo County has waits for every level of long-term care (home and community-based services, skilled nursing facility services) for low-income populations, and currently does not have any affordable assisted living capacity. Given the County's age profile, the aging of the baby boomer population will affect San Mateo County earlier than the state as a whole, resulting in greater stresses in an already stretched system for current County residents. (Silva Decl., ¶ 2.) The demands on the medical care and behavioral health and recovery systems have not enabled San Mateo County to give adequate attention to "upstream" opportunities for prevention and early

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    14      CIV S-90-0520 LKK JFM / C01-1351 TEH

1   intervention.  (Silva Decl., ¶ 2.)

2   CalWORKS and Food Stamp Programs

3       The food stamp program will  be impacted if the released prisoners do not have the

4   resources to buy food.  The maximum food stamp allotment for one individual is $162.00 per

5   month. (Johnson Decl., p. 4, ¶ 5b.)  Depending on how many released prisoners return to San

6   Mateo County, the cost to the County could be hundreds of thousands of dollars.  (Johnson

7   Decl., p. 4, ¶ 5b.)

8       A prisoner release order would impact Children and Family Services.  Currently 14% of

9   San Mateo County's Children and Family Services caseload includes children with incarcerated

10  parents.  (Johnson Decl., p. 6, lines 10-11.)

11  Workforce Development and Unemployment

12      The labor market in San Mateo County is becoming increasingly limited due to the

13  economic downturn experienced by many local businesses.  Those prisoners who are released

14  early and who return to San Mateo County will have a very difficult time finding employment.

15  It is expected that many of them, if not all of them, will apply for General Assistance, which is

16  entirely funded from the County general fund.  The maximum payment for an individual is

17  $319.00 per month.  The cost to the County could realistically be millions depending on how

18  many released prisoners return to San Mateo County.  (Johnson Decl., p. 3, ¶ 5a.)

19      San Mateo County's Work Fare Program is designed to build an individual's employment

20  skills.  In order to receive either General Assistance or food stamp benefits, employable

21  recipients are required to participate in a Work Fare Program.  A prisoner release order would

22  lead to an increase in participants in the Work Fare Program, which would require an increase in

23  staffing and resources.  (Johnson Decl., p. 4, ¶ 5c.)  In addition, San Mateo County has

24  workforce development services.  These are career centers that deliver employment services and

25  include a "broad range of employment related activities as well as contracted employment

26  related training and education."  (Johnson Decl., p. 7, ¶ 5f.)  The staffing for these centers

27  would also have to increase in order to serve a larger clientele population.  (Johnson Decl., p. 7,

28  ¶ 5f.)

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    15        CIV S-90-0520 LKK JFM / C01-1351 TEH

**6.    Individuals who do not receive appropriate services may decompensate in the community, crowd emergency rooms, endanger public safety and commit more crimes**

Because the counties have no funding to allocate towards prevention, diversion and social services, unserved individuals are brought to emergency rooms and jails.  When individuals are brought in to the county jails or juvenile halls, the county has to house them by law.  When a people present themselves to an emergency room or mental health acute care facility, the counties have to provide services.   Thus, when funding declines, counties, in an effort to meet their mandated required emergency room and jail services, are unable to allocate resources to prevention, diversion and other programs.  (Graves Testimony, p. 2252, line 6 through p. 2253, line 14.)

Santa Clara County is one of only a  few California counties that has an inpatient psychiatric facility for emergency care.  (Pena Decl., ¶ 13.)   The County has seen a large spike in emergency crisis services and hospitalization because of the lack of available mental health services, and is currently $8 million over budget for inpatient psychiatric hospitalization (a gap that will likely be filled by further reduction in services to Unsponsored Clients).  (Pena Decl., ¶ 13.)   Sixty out of 100 parolees enrolled in the state's parole outpatient clinic had also been served in Santa Clara County's system through either the emergency department, the jail mental health unit, or inpatient care.  (Pena Testimony, p. 2432, lines 1-19.)  This indicates that the state was not meeting the needs of this population through outpatient services, causing crises and use of county jail and emergency facilities.   (Pena Testimony, p. 2432, lines 20-25.)  Moreover, individuals who have untreated or improperly treated mental illness tend to have increased contact with law enforcement and high recidivism rates (Pena Testimony, p. 2436, lines 18-24.)  Due to lack of funding, the counties are not able to provide the level of intervention that is needed to avoid such outcomes.  (Pena Testimony, p. 2436, 18-24.)

**7.    The Counties need guaranteed enforceable funding to provide services to released prisoners**

If state prisoners are early released into the community or there is a population cap on the state prison and the counties are unable to send prisoners into the state system,  there will be a

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                16                CIV S-90-0520 LKK JFM / C01-1351 TEH

significant hardship on the counties in terms of their jail system and ability to provide services. Without resources, the counties are at risk for their entire safety net collapsing under the weight of the added burdens of a prisoner release order (Graves Testimony, p. 2257, lines 3-23; Graves Report, p. 1-8; Graves Decl., ¶ 4; Boesch Decl., p. 7, lines 9-19; Pena Report, p. 3; Garner Report, p. 6.)   The impact of additional resources from the state would make a difference to Santa Clara County's ability to provide services, but there is no guarantee the state will provide and maintain the funding at levels needed to provide the services.  (Graves Testimony, p. 2258, lines 6-22; Pena Testimony, p. 2426, lines 24 through 2427, line 8.)  In the past, such as with realignment programs, the state has provided the counties with initial funding, but then reduced the funding, leaving the counties with programs in place and insufficient funding.   (Graves Testimony, p. 2258, lines 6-22.)   The counties simply do not trust the state to provide promised funding.  (Graves Testimony, p. 2258, lines 17-22.)

**B.    A PRISONER RELEASE ORDER WILL HAVE A SUBSTANTIAL ADVERSE IMPACT ON PUBLIC SAFETY AND THE OPERATION OF CRIMINAL JUSTICE SYSTEMS BECAUSE COUNTY JAILS DO NOT HAVE CAPACITY TO HOUSE AND CARE FOR PRISONERS THAT WILL ENTER OR REMAIN IN COUNTY JAILS AS A RESULT OF A PRISONER RELEASE ORDER**

California counties are responsible for jail and detention services,  sheriff and law enforcement operations, prosecution and defense functions,  probation supervision and programming, and the broad range of services and programming for the treatment and diversion of criminal offenders. (Boesch Decl., p. 10, line 27, p. 11.)

The Santa Clara County jail system has a Board rated capacity of 3,810, but it identifies its capacity at 5,380 incarcerated individuals.  (Graves Report, p. 3, December 13, 2007 Report to the Board of Supervisors from the DOC re DOC Bed Capacities, Closed Housing Units and Vacancy Rates, Exh. DI-305, p. 3) Santa Clara County requires a 15% vacancy rate in the jails in order to physically segregate incarcerated individuals as dictated by their security level and individual circumstance.   (December 13, 2007 Report to the Board of Supervisors from the DOC re DOC Bed Capacities, Closed Housing Units and Vacancy Rates, Exh. DI-305, p. 3.) The average daily population at the Santa Clara County jails as of October 1, 2008 was 4,737 incarcerated individuals, thus exceeding its Board rated capacity by approximately 24%.

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law          17          CIV S-90-0520 LKK JFM / C01-1351 TEH

(Graves Report, p. 3.)   Projections done by the Santa Clara County Chief of Correction indicate that a state prison population cap of  135,210 prisoners would substantially increase the County's jail population over its capacity should those prisoners remain in the County jails instead of going to the state prison.  (September 14, 2007 Report to County Budget Director from the Department of Correction re Impact of Imposition of a Cap on State Prisoner Population, Exh. DI-311.)   In addition, the County of Santa Clara houses over 400 state, federal and other county inmates that contribute $15 million in revenue to the operation of the County's jail system.  (Graves Report, p. 3.)  If Santa Clara County were faced with the requirement of housing additional inmates who cannot otherwise be transported to the state prison because of a population cap or other type of release order, it would be forced to terminate its revenue contracts to free up jail bed space, thus creating a substantial funding shortfall for the County jail system and new inmate housing issues for both the state and federal governments.  (Graves Report, p. 3.)

San Mateo County currently has a chronic and severe overcrowding crisis in its correctional system.  It is strained beyond its functional and state rated capacity.  (Declaration of San Mateo County Sheriff Greg Munks, Exh. DI-221 ("Munks Decl."), p. 3, lines 23-24.) The rated capacity for all of San Mateo County's detention facilities is 834 beds.  In 2007, San  Mateo County had an average daily population of about 1,200 inmates (Munks Decl., p. 4, lines 1- 4.)

Given the recidivism rate in California, it is more than likely that a good portion of those prisoners released under an early release order would re-offend, resulting in a further increase in the County jail population, further crowding an already overcrowded system. Currently, California's recidivism rate is at 70 percent, the nation's highest.  In San Mateo County, the local recidivism rate is 68.3 %.  (Munks Decl., p.3, lines 7-11.)  In the last three years, San Mateo County law enforcement agencies arrested and booked into the county jail more than 450 state parolees annually. (Munks Decl., p.3, lines 20-21.)

There are logistical issues with housing inmates that go beyond having one bed for one inmate. The San Mateo County Sheriff's Office has an inmate classification system for its

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                    18      CIV S-90-0520 LKK JFM / C01-1351 TEH

detention population to insure inmates are lawfully housed in a safe environment.  For example, State sentenced inmates are separated from inmates awaiting prosecution; mentally ill inmates are separated from gang members; and inmates charged with crimes against children are separated from the general inmate population. (Munks Decl., p.4, lines 14-18.)  In addition, members from rival gangs need to be housed separately.  The Sheriff cannot allow a concentrated number of gang members from the same gang in the same housing unit because they have a tendency to take over, attempt to control and/or influence other inmates, causing unsafe conditions for inmates and staff.  The overcrowding of the detention facilities makes this task of separating gang members more difficult and potentially compromises the Sheriff's abilities and obligation to provide a safe correctional environment for inmates, staff, and the community. (Munks Decl., p. 4-5, lines 25-28, 1-2.)

A prisoner release order would not only have an adverse impact on public safety, but also on the safety of the inmate population and the staff and visitors inside the San Mateo County detention facilities.  If the State were to place a cap on its prison population and prevent the County of San Mateo from sending inmates to the CDCR facilities, then the County's jail overcrowding would be further impacted and the County's limited resources would become further overextended.  Each week, San Mateo County sends approximately 15-17 new commitments to CDCR.  In addition, the same number (15-17) of parole violators are picked-up by CDCR transportation.  (Munks Decl., p. 7, lines 6-8.)  If the County could not send jail inmates to state prison because of a court-ordered population cap, then the inmates in county jails would back up and cause further overcrowding.  (Munks Decl., p. 7, lines 8-10.)

Law enforcement and the local judiciary rely on jail sentencing as a way of safeguarding the community by taking dangerous criminals off the street. An overcrowded County correctional system has an impact on the judiciary when sentencing dangerous criminals, and if the jail population continues to grow, then the County Sheriff would be facing the same situation that is before this court and before the CDRC – the necessity of early release of inmates on the local level.  (Munks Decl., p. 8, ¶ 20.)

//

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                19        CIV S-90-0520 LKK JFM / C01-1351 TEH

**C.    A PRISONER RELEASE ORDER WILL HAVE A SUBSTANTIAL ADVERSE IMPACT ON PUBLIC SAFETY AND THE OPERATION OF CRIMINAL JUSTICE SYSTEMS BECAUSE COUNTY CRIMINAL JUSTICE REFORM EFFORTS WILL BE JEOPARDIZED**

With a significant influx of state prisoners to counties, more local resources would be diverted to accommodating these former prisoners into communities and safety nets–rather than positive efforts currently directed toward committing resources at the front end of corrections reform in prevention-oriented services.  (Boesch Decl., p. 8, lines 22-25.)  Currently, in order to relieve some of the overcrowding in San Mateo County's jails, San Mateo County has developed alternative sentencing programs such as the "First Chance" Program, Cite and Release Program, Sheriff's "Release Own Recognizance" Program, "Bridges" Intensive Day Treatment Program, "Pathways" Mental Health Program, Electronic Monitoring Program, Sheriff's Work Program (SWP), and the Sheriff's Work Furlough Program. (Munks Decl., p. 5-6, ¶ 11.)  Fifty percent of sentenced offenders in San Mateo County now serve their jail sentences outside of the jails in an alternative or reentry program. (Munks Decl., p. 5-6, paragraph ¶ 11.)   The fact that San Mateo County has so many programs and yet the County's detention facilities are still operating at over capacity is an indication of the degree to which the County's correctional system is overcrowded and overextended.   Moreover, most CDCR early released prisoners would not be eligible for San Mateo's alternative sentencing programs, due to their criminal history, classification, and status.  Therefore, in order to control further overcrowding in the detention facilities if a prisoner release order were issued, the Sheriff's Office will be placed in a position to consider other county inmates for alternative sentencing that would not normally qualify because of the risk they would pose to public safety.  (Munks Decl., p.6, lines 20-24.)

Santa Clara County has a successful drug and alcohol and mental health diversion program.  (Graves Report, p. 4; Graves Testimony, p. 2255, lines 4-11.).  The County has allocated significant discretionary general funds to support these programs.  (Graves Report, p. 4)   To date, the County has been effective at managing its jail population because it has been proactive in developing and funding diversion programs.  (Graves Testimony, p. 2287, lines 17-

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                        20            CIV S-90-0520 LKK JFM / C01-1351 TEH

22.)  The County of Santa Clara has a cooperative arrangement with the Superior Court and achieves completion rates for the SACPA program of approximately 56%, among the highest rate in the state.  (Graves Report, p. 4; Graves Testimony, p. 2294, lines 19-22.)  Santa Clara County's courts and County officials are committed to the program because it takes inmates out of the jail system and puts them into treatment, which potentially offers them the ability to rehabilitate instead of recidivate. (Graves Testimony, p. 2245.)  The County has reduced its jail population by about 21% as a result of the successful implementation of the SACPA program. (Garner Testimony, p. 2491, lines 11-18.)  If additional resources are needed to house and support state inmates who cannot be transported to prison because of a prisoner release order, funding would have to be reallocated from the County's diversion programs, and would impair the County's ability to reduce recidivism and the number of people in jail and prison.  (Graves Report, p. 4.)

Moreover, approximately 70% of County drug and alcohol clients are linked to the criminal justice system in some fashion, either through drug court, probation, or some other criminal justice obligation.   (Garner Testimony, p. 2487, lines 3-9.)  Early released prisoners who are abusing substances would either stay on the street or end up back in county jail or state prison because there are not sufficient resources to divert them and provide treatment.  (Garner Testimony, p. 2496, line 23 through p. 2497, line 6.)  Community based treatment is essential to reduce recidivism. (Garner Report, p. 5.)  A prisoner release order without guaranteed enforceable funding for diversion programs and services will do nothing to stop the overcrowding in county jails and prisons. (Garner Report, p. 6.)

## II.

## CONCLUSIONS OF LAW

Before this Court may issue a prisoner release order, the Prison Litigation Reform Act, 18 U.S.C. § 3626, *et seq.* ("PLRA"), requires the plaintiffs to prove by clear and convincing evidence that (1) crowding is the primary cause of the violation of the Federal right, and (2) no other relief will remedy the violation of the Federal right.  18 U.S.C. § 3626(a)(3)(E).  The County Intervenors take no position on the first issue, and defer to the arguments of Defendants

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law

21    CIV S-90-0520 LKK JFM / C01-1351 TEH

and Defendant Intervenors with respect to the second.

In addition, the PLRA states that a prisoner release order may not be issued unless the Court finds that such relief (1) is narrowly drawn, (2) extends no further than necessary to correct the violation of the Federal right, and (3) is the least intrusive means necessary to correct the violation of the Federal right, and the Court accords substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief. 18 U.S.C. § 3626(a)(1). No prisoner release order may be issued in this case because of the significant adverse impacts such an order would have on the public safety and operation of criminal justice systems, as demonstrated by the evidence presented by the County Intervenors and all of the other parties and intervenors in this case. Moreover, such an order cannot be narrowly drawn in the least intrusive manner because it will significantly and adversely impact every single local entity and every program and service they provide in the State of California without providing the released prisoners with the medical and mental health care they are allegedly not receiving in the state prisons. These local entities are not the cause of the alleged violation of Federal rights. Yet they, and the citizens of California, will bear the brunt – and suffer the consequences – of a prisoner release order. Rather than remedying the alleged violations, a prisoner release order would simply shift the prison overcrowding and associated problems from the state to the counties, who have far fewer resources to address them.

Nonetheless, the Court has requested that the parties indicate their proposals for a release order, should such an order issue. The County Intervenors believe that the only way to mitigate the public safety and criminal justice impacts of a release order is for all California counties to receive enforceable guaranteed funding and adequate time to plan for and provide programs and services both to released prisoners and to those who safely can be diverted from state prison. The amount of funding needed will vary by county, and it will take time for the state and the appropriate county representatives to negotiate the appropriate amount. In addition, any release of prisoners should be gradual to mitigate the public safety impacts and allow time for the state and county officials to put programs and services into place. Any population cap should be

//

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law          22          CIV S-90-0520 LKK JFM / C01-1351 TEH

1    stayed for a two-year period, with gradual release occurring in the interim and appropriate

2    benchmarks to monitor progress.

3    Dated:  January 23, 2009                          Respectfully submitted,

4                                                      ANN MILLER RAVEL
                                                       County Counsel

5                                             By:      _____/S/_____

6                                                      THERESA J. FUENTES
                                                       Deputy County Counsel

7                                                      Lead Attorneys for Intervenors

8                                                      COUNTY OF SANTA CLARA,
                                                       COUNTY OF SANTA BARBARA,

9                                                      and COUNTY OF SAN MATEO

10

11   Dated:  January 23, 2009                          MICHAEL P. MURPHY
                                                       County Counsel

12

13                                            By:      _____/S/_____

14                                                     CAROL WOODWARD
                                                       Deputy County Counsel

15                                                     Attorneys for Intervenor

16                                                     COUNTY OF SAN MATEO

17

18

19

20

21

22

23

24

25

26

27

28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County Intervenors' Proposed Findings of
Fact and Conclusions of Law                23        CIV S-90-0520 LKK JFM / C01-1351 TEH