FUTTERMAN & DUPREE LLP
MARTIN H. DODD (104363)
JAMIE L. DUPREE (158105)
160 Sansome Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
martin@dfdlaw.com
jdupree@dfdlaw.com

*Attorneys for Receiver*
J. Clark Kelso

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., *Plaintiffs*, v. ARNOLD SCHWARZENEGGER, et al., *Defendants.* | Case No. CIV S-90-0520 LKK JFM P |
| MARCIANO PLATA, et al., *Plaintiffs*, v. ARNOLD SCHWARZENEGGER, et al., *Defendants.* | Case No. C01-1351 TEH<br><br>**RECEIVER'S INITIAL REPLY TO DEFENDANTS' RESPONSE TO OSC RE TRANSCRIPTION AND DICTATION COORDINATION AGREEMENT** |
| CARLOS PEREZ, et al., *Plaintiffs*, v. MATTHEW CATE, et al., *Defendants.* | Case No. C 05-05241 JSW |
| JOHN ARMSTRONG, et al., *Plaintiffs*, v. ARNOLD SCHWARZENEGGER, et al., *Defendants.* | Case No. C94-2307 CW |

On January 15, 2009, the Courts issued an Order to Show Cause ("OSC"), giving the parties until January 30, 2009 to show cause why the Courts should not adopt the Transcription and Dictation Services Coordination Agreement submitted by the Receiver, Special Master and court representatives. Plaintiffs interposed no objections, but Defendants filed a response.

Although the OSC did not request any reply from the Receiver to responses submitted by the parties, the Receiver believes it is important to clarify, for all four Courts the very serious, negative consequences of the State's new position in terms of both remedial plan progress and the waste of taxpayer funds.

The Defendants first contend that the Courts should refrain from adopting the coordination agreement because it "may be moot" if the *Plata* Court grants a pending motion to terminate the Receivership. *See* Plata Docket # 2054, pp. 2-3. The *Plata* Court has not terminated the Receivership and, unless and until the four Courts order otherwise, no coordination agreement previously approved or to be approved is moot.

Although counsel for Defendants appear to agree that there is a need for a single, coordinated transcription and dictation unit for all health care services (consistent with the position taken by CDCR dental and mental health officials), they object to the sensible proposal put forward by the Receiver, Special Master and court representatives because they do not wish the *Receiver* to be in control of that unit. Defendants do not, however, say what, if anything, they propose as an alternative if the coordination agreement is not adopted; for example, Defendants do not assure the Courts that they have the requisite funding, information technology expertise and equipment, and staffing to implement the program.

As the Receiver has reported to the Courts, he has incurred substantial time, expense and expertise in developing a workable, efficient and sustainable transcription and dictation program to support prison medical care services. He was required to undertake these efforts because the CDCR had failed to demonstrate any competency or apparent interest in the matter. As a result, the transcription and dictation services that existed when the Receiver was appointed were extremely poor and not remotely consistent with good medical practice. Since adequate and accurate recordkeeping is a necessary component of any medical delivery system, the Receiver

recognized that overhauling and improving the broken system that existed at the time of his appointment was essential.

Inasmuch as the Receiver has undertaken to develop a new, improved and clinically appropriate transcription process, it made sense to apply that same process to the other health care delivery components of the CDCR. The benefits of such coordination are apparent. A dual or triple system is an obvious waste of the State's resources. Implementing the Receiver's process system-wide will improve the health care delivery system generally by reducing errors, increasing efficiency and improving recordkeeping and will avoid unnecessary duplication of services and expense across health care disciplines. And because the CDCR has neither the expertise, information technology, staffing or funding necessary to overhaul transcription and dictation services for the mental and dental health care delivery systems, one would have thought that the State would have welcomed the Receiver's offer to utilize the effective and efficient program he has developed for those delivery systems as well. Apparently not.

In view of the State's stated desire not to cooperate with the Receiver, as far as the Receiver is concerned the coordination agreement can be withdrawn. However, the Receiver is very concerned about the impact of the State's new position on the other Court remedial programs and recommends that counsel for plaintiffs in those actions, as well as the Court representatives, be afforded an opportunity to comment. For his part, the Receiver will continue to implement his transcription and dictation services for the medical care delivery system; the State is free to fumble around, trying to make do on its own for the other components of the health care delivery system. If at some point in the future, the State decides that efficiency, cost-effectiveness and good clinical practice are more important than litigation posturing, the Receiver will be happy to discuss implementing his program to the health care delivery system as a whole.

Dated: February 3, 2009                    FUTTERMAN & DUPREE LLP

                                           By:_____/s/ Martin H. Dodd_____
                                              Martin H. Dodd
                                              Attorneys for Receiver J. Clark Kelso