EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
LISA A. TILLMAN - 126424
Deputy Attorney General
KYLE A. LEWIS - 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5677
Facsimile: (415) 703-5843
lisa.tillman@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
S. ANNE JOHNSON - 197415
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# AND THE EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

# PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | **No. 2:90-cv-00520 LKK JFM P**<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S FEBRUARY 4, 2009 ORDER REQUIRING FURTHER BRIEFING**<br><br>**To: Three-Judge Panel** |

- 1 -

## INTRODUCTION

On February 4, 2009, the Three-Judge Panel directed the parties to brief three questions:

1. Does the Court have the authority to order the expenditure of funds for purposes of implementing any prisoner release order that it may issue?

2. Does the Court have the authority to order the State to divert funds from the prison budget to community programming or other local programs designed to facilitate the re-entry into society of prisoners released pursuant to the entry of a prisoner release order?

3. Would the answer to either of the above questions be different if the funds at issue consisted of savings to the State resulting from the issuance of a prisoner release order?

After canvassing the case law and statutory authority, Defendants inform the Court that the answer to all three questions is no. The Court's authority to order relief in this case is limited to issuing a prisoner release order. The Court must comply with constitutional limits, prudential considerations, and the limitations imposed by the Prison Litigation Reform Act (PLRA). Individually, each of these limitations precludes the Court from directing expenditure of funds in the implementation of a prisoner release order, or diversion of funds towards community programming or other local programs to ease the reentry into society of any released prisoners. These limitations apply even if these funds are drawn from any savings to the State that resulted from a prisoner release order.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

- 2 -

## DISCUSSION

### I. Constitutional Limits Preclude This Court From Fashioning the Type of Relief Contemplated by the Court's Order for Further Briefing.

The Court lacks the authority to direct how a prisoner release order will be effected, including how it will be funded.

When assessing a claim that prison conditions are "cruel and unusual" under the Constitution, "courts must bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). In other words, federal courts are not in the business of trying to ascertain the best way to run prisons; the role of the courts is instead to determine whether there is a constitutional violation, and, if so, to order the correction of this violation. *Id.* at 349-50. As the Supreme Court stated in admonishing judges against becoming overly-involved in the minute details of prison administration, "[Judges] have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan." *Bell*, 441 U.S. at 562. Ultimately, "the wide range of 'judgment calls' that meet constitutional and statutory requirements are confided to officials outside the Judicial Branch of Government." *Id.*

These limitations are informed by multiple considerations, including federalism concerns. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). "In entertaining a cause of action alleging Eighth Amendment violations in a state prison, federal courts must be cognizant of the limitations of federalism and the narrowness of the Eighth Amendment. Federal courts lack the power to interfere with decisions made by state prison officials, absent constitutional violations." *Id.* at 1246. Moreover, "courts must

- 3 -

1  recognize that the authority to make policy choices concerning prisons is not a proper
2  judicial function." *Id.* Any such policy choices are left to the executive and legislative
3  bodies. *Id.* Accordingly, a court's function is "limited to determining whether a
4  constitutional violation has occurred . . . and to fashioning a remedy that does no more
5  and no less than correct that particular constitutional violation." *Id.*

6  Similarly, the Ninth Circuit has pointed out that "Prison reform, beyond the
7  standards required by the Eighth Amendment, is the function of state government
8  officials." *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). The mere finding of a
9  constitutional violation does not grant this Court total authority over California prisons:
10 "The duty to protect inmates' constitutional rights . . . does not confer the power to
11 manage prisons, for which courts are ill-equipped, or the capacity to second-guess
12 prison administrators. Federal courts should not, in the name of the Constitution,
13 become enmeshed in the minutiae of prison operations. Our task is limited to enforcing
14 constitutional standards and does not embrace superintending prison administration."
15 *Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir. 1986) (citation omitted).
16 Ultimately, the goal of the courts' intervention must be limited. "The commission of a
17 federal judge is not a 'general assignment to go about doing good.'" *Id.* at 1087 (citation
18 omitted).

19 Here, the sole question before the Court is whether plaintiffs have demonstrated
20 by clear and convincing evidence that crowding is the "primary cause" of the denial of
21 their constitutional rights, and that therefore a prisoner release order should issue. The
22 operative complaints in these actions do not allege that the Constitution requires funding
23 for a prisoner release order. *See Hoptowit*, 682 F.2d at 1252 (reversing district court
24 order requiring the state to eliminate racism in prison where the complaint contained no
25 allegations that racism violated constitutional rights). Notably, the Constitution does not
26 require rehabilitative programs in prison. *Id.* at 1255 ("There is no constitutional right to
27 rehabilitation."). If inmates are not entitled to rehabilitative programs (including any
28 programs to designed to facilitate their re-entry into society) within prison, a fortiorari

- 4 -

they are not so entitled once they leave the prison walls. Thus, the Court lacks the authority to further intrude into the running of prisons by delineating the circumstances under which such a release order should be effected, including how it is to be funded, or the provision of community programming or other re-entry programs.[1]

## II. Prudential Considerations Also Preclude this Court from Prescribing the Manner in Which a Prisoner Release Order Should be Effectuated.

Certain decisions impacting prisons are outside the province of the federal courts. For example, courts have held that "Such fundamental decision as how many prisons to build and how large to build them" are "basic decisions regarding the allocation of public resources [that] are simply outside the domain of federal courts." *Inmates of Occoquan v. Barry*, 844 F.2d 828, 842-43 (D.C. Cir. 1988). Similarly, federal courts lack the power "to order legislative appropriations for jail construction." *Reece v. Gragg*, 650 F. Supp. 1297, 1306 (D. Kan. 1986). Another district court pointed out that "a federal court lacks the power to order the public or a governmental entity which represents the public . . . to expend funds to build new facilities." *Padgett v. Stein*, 406 F. Supp. 287, 303 (M.D. Pa. 1975). More to the point, "It is not for the courts to decide how funds available for public expenditure ought to be spent. That is a decision for the representative branches of government which are responsive to the public will." *Id.*; *see also Hamilton v. Love*, 328 F. Supp. 1182, 1194 (E.D. Ark. 1971) ("This Court, of course, cannot require the voters to make available the resources needed by public officials to meet constitutional standards. . . ."). This limitation applies regardless of whether the court determines that

---

[1] The PLRA mandates that this Court "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system" caused by issuance of a prisoner release order. 18 U.S.C. § 3626(a)(1)(A). This requirement constitutes a limitation on the Court's authority rather than a source of authority. In *Roberts v. Mahoning County*, 495 F. Supp. 2d 719 (N.D. Ohio 2007), the district court issued a prisoner release order based on the parties' consent, but only after it "considered and weighed any adverse impact on public safety and the effect on the operation of a criminal justice system." 495 F. Supp. 2d at 724. The House of Representatives Report notes that this subsection "requires the court to give appropriate consideration, *in selecting or approving a remedy*, to any potential impact on public safety or the criminal justice system." H.R. Rep. No. 104-21, at 24 (1995) (emphasis added).

construction of prisons is the best recourse for curing violations of federal rights: in *Jones v. Wittenberg*, 330 F. Supp. 707, 712-13 (N.D. Ohio 1971), the court noted that, although the court thought there were "strong reasons for thinking that a new jail should be built," the court lacked authority to order such construction because "Under our system of government, the ultimate source of power is the people.  The people have not given this Court any taxing power, or any control over their use of the taxing power."

At least one court of appeal has reaffirmed this limitation on the federal courts' power.  In *Rhem v. Malcolm*, 507 F.2d 333 (2d. Cir. 1974), the court modified the district court's remedial scheme, noting that this modification "ha[d] the crucial practical advantage. . . of not putting the judge in the difficult position of trying to enforce a direct order to the City to raise and allocate large sums of money."  *Id.* at 341.  The Second Circuit pointed out that these matters were "steps traditionally left to appropriate executive and legislative bodies responsible to the voters."  *Id.*  Thus, here this Court cannot direct expenditures of funds for the effectuation of any prisoner release order it might issue.

Likewise, this Court cannot prescribe the manner in which prisoners are released, including mandating the provision of programs to ease the re-entry of prisoners into society.  Decisions regarding the conditions under which inmates can be released when a prison cap is imposed are outside the purview of the federal courts.  *See Anderson v. Redman*, 429 F. Supp. 1105, 1131 (D. Del. 1977).  In *Anderson*, the district court imposed a population cap on a state prison.  *Id.* at 1128.  After ordering this cap, the district judge considered alternatives available to the state to try to bring the prison into compliance with the law.  *Id.*  After discussing various methods the state might utilize in coming into compliance with the law, including pre- and post conviction diversion, inmate supervision, furlough programs, work release, and sentencing policies, the district court concluded that these factors were more adequately a consideration for the legislature and the political process.  *Id.* at 1131 (noting that "The answers to these questions are properly resolved through the political process, not by opinion of this Court."); 1135 ("Use

- 6 -

1  of mandatory minimum sentences, mandatory concurrent sentences and restrictions on
2  early release are also policy decisions properly the province of the Legislature.").
3  Similarly, in *Padgett v. Stein*, 406 F. Supp. 287, 296 (M.D. Pa. 1975), the court
4  noted that whether the state should provide rehabilitative programs to prisoners "is a
5  social policy question which should be resolved by the representative branches of
6  government–i.e., the legislative and executive branches–and not by the courts."
7  Ultimately, the court concluded, federal courts are "simply not qualified to answer the
8  many difficult, psychological, sociological and correctional questions when it comes to
9  choosing between one form of treatment and another." *Id.* at 297 (citation omitted).  In
10 *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), the Court of Appeal vacated provisions of
11 a district court order that mandated use of good time, parole, and furlough programs to
12 relieve overcrowding.[2]  The Fifth Circuit determined that these provisions "unnecessarily
13 invade[] the management responsibility of state officials," and "require[d] detailed
14 supervision of programs that relate only indirectly to the conditions of confinement." *Id.*
15 at 1148.

### III. PLRA Limits Also Preclude this Court from Directing the Manner in Which a Prisoner Release Order Should Be Effectuated.

18 Lastly, the PLRA imposes an additional layer of limitations on this Court's
19 authority to fashion relief, and thus precludes the Court from mandating the conditions of
20 how a prisoner release order is funded.  The PLRA "amended § 3626 to impose greater
21 procedural and substantive restrictions on federal court authority to issue broad
22 injunctions regulating conditions at state and local prisons." *Tyler v. Murphy*, 135 F.3d
23 594, 595 (8th Cir. 1998).  The statute "limits remedies to those necessary to remedy the
24 proven violation of federal rights." *Id.* at 596 (quoting H.R. Rep. No. 104-21, at 24 n.2

---

[2] The Fifth Circuit subsequently modified its opinion in *Ruiz v. Estelle*. *See Ruiz v. Estelle*, 688 F.2d 266 (5th Cir. 1982) (per curiam).  However, the court reaffirmed its determination that the provisions regarding good time, parole, and furlough programs were unduly intrusive. *Id.* at 267.

- 7 -

DEFS.' RESP. TO CT. ORD. FOR FURTHER BRIEFING
 (Case No. 2:90-cv-00520 LKK JFM P/ C01-1351 TEH)                                                                            1839531.1

1  (1995)). In discussing this subsection, the House of Representatives report indicates
2  that it "permits a court to grant or approve relief for a prisoner who is a plaintiff in a prison
3  conditions suit only if that prisoner can prove a violation of his own federal rights." H.R.
4  Rep. No. 104-21, at 23 (1995). Specifically, the PLRA mandates that "[p]rospective relief
5  in any civil action with respect to prison conditions shall extend no further than necessary
6  to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C.
7  § 3626(a)(1). This provision "stops judges from imposing remedies intended to effect an
8  overall modernization of local prison systems or provide an overall improvement in
9  prison conditions." *Plyler v. Moore*, 100 F.3d 365, 369 (4th Cir. 1996) (quoting H.R. Rep.
10 No. 21, at 24 n.2).

11         Additionally, the PLRA requires that any prospective relief be narrowly drawn,
12 extend no further than necessary to correct the violation of a Federal right, and be the
13 least intrusive means necessary to correct the violation of such rights. Thus, the focus in
14 any civil rights action with respect to prison conditions is limited. *See Holt v. Sarver*, 309
15 F. Supp. 362, 369 (E.D. Ark. 1970). "The Court is not judicially concerned with questions
16 which in the last analysis are addressed to legislative and administrative judgment. A
17 practice that may be bad from the standpoint of penology may not necessarily be
18 forbidden by the Constitution. And a prison system that would be excellent from the
19 point of view of a modern prison administrator may not be required by the provisions of
20 the Constitution with which the Court is concerned." *Id.*

21         If this Court determines that a prisoner release order is appropriate, then issuing
22 such order is the limit of its authority. The Court cannot specify how the prisoner release
23 should be effected, how it should be funded, or any programming that released prisoners
24 should be provided. Those are discretionary matters within the purview of the state
25 executive and legislative branches.
26 / / /
27 / / /
28 / / /

- 8 -

**CONCLUSION**

For the foregoing reasons, Defendants respectfully inform the Three-Judge Court that the Court lacks authority to order the expenditure of funds for the implementation of any prisoner release order it might issue, or the diversion of funds for programming to ease the re-entry of released convicts into society. This answer holds irrespective of the source of such funds.

DATED: February 18, 2009                    RESPECTFULLY SUBMITTED,

                                            HANSON BRIDGETT LLP


                                            By: /s/ Paul B. Mello
                                                PAUL B. MELLO
                                                Attorneys for Defendants
                                                Arnold Schwarzenegger, et al.

DATED: February 18, 2009                    EDMUND G. BROWN JR.
                                            Attorney General of the State of California


                                            By: /s/ Kyle Lewis
                                                KYLE LEWIS
                                                Deputy Attorney General
                                                Attorneys for Defendants
                                                Arnold Schwarzenegger, et al.