Gregg McLean Adam, No. 203436
Natalie Leonard, No. 236634
James W. Henderson, Jr., No. 071170
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:    415.989.5900
Facsimile:     415.989.0932
Email:          gadam@cbmlaw.com
                   jstoughton@cbmlaw.com

Daniel M. Lindsay, No. 142895
**CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:    916.372.6060
Facsimile:     916.340.9372
E-Mail:        dan.lindsay@ccpoa.org

Attorneys for Plaintiff Intervenor California Correctional
Peace Officers' Association

IN THE UNITED STATES DISTRICT COURTS

FOR THE NORTHERN AND EASTERN DISTRICTS OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| MARCIANO PLATA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, *et al.*, <br><br> Defendants. | No. Civ C01-1351 TEH (N.D. Cal.) *and* <br><br> No. Civ S90-0520 LKK-JFM (E.D. Cal.) <br><br> **THREE-JUDGE COURT** |
| RALPH COLEMAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, *et al.*, <br><br> Defendants. | **CCPOA'S RESPONSE TO ORDER REQUIRING FURTHER BRIEFING** |

CBM-SF\SF434884.2

-1-

**CCPOA'S RESPONSE TO ORDER REQUIRING FURTHER BRIEFING**

# INTRODUCTION

Plaintiff Intervenor California Correctional Peace Officers' Association ("CCPOA") submits the following brief in response to the Court's February 4, 2009 Order (*Plata* Dock. # 2064) requiring further briefing on: (1) the Court's authority to order the expenditure of funds to implement any prison release order it may issue; (2) the Court's authority to order the State to divert funds from the prison budget to community programming pursuant to a prisoner release order; and (3) whether it makes a difference if the funds at issue consist of savings to the State resulting from the release order.

Although this Court has the authority to fashion a prisoner release order, for reasons of comity it should permit the State to propose a constitutionally-sound remedial plan to effectuate the prisoner release order before directing the course the State should follow, preferably in consultation with all parties. *Lewis v. Casey*, 518 U.S. 343, 362 (1996) ("giv[ing] the States the first opportunity to correct the errors made in the internal administration of their prisons"). Plaintiffs and Intervenors should then be allowed to comment on and file objections to the State's remedial plan. After a court hearing, this Court should then enter its remedial order. After that point, if the State then fails to adequately implement or fund provisions in the remedial order, this Court may draw upon its broad powers to ensure the State complies with the Court order, including directing that the programs be funded adequately.

The State—recognizing the significant potential public safety issues involved—should voluntarily propose mechanisms ensuring public safety that include, for example, community programming and maintaining adequate staffing ratios in the prisons to effectuate adequate constitutional care. Toward this end, CCPOA was troubled to learn just today that the State issued approximately 13,000 of the 20,000 total surplus notices sent to State employees were sent to employees at the California Department of Corrections, after touting in trial that custody vacancies had been filled and clinician vacancies were dropping. (R.T. at 1894:20-1907:21, testimony of S. Kernan.)

Heeding the caution of the U.S. Supreme Court that federal courts should "scrupulously respect[] the limits on [their] role" (*Lewis*, 518 U.S. at 363), this Court need not prematurely order the State to "expend[] … funds for purposes of implementing [its] prisoner release order," especially if the State voluntarily addresses these concerns in a proposed remedial plan.

**I.   THIS COURT SHOULD GIVE THE STATE THE FIRST OPPORTUNITY TO PROPOSE A REMEDIAL PLAN TO IMPLEMENT ANY PRISONER RELEASE ORDER BEFORE DIRECTLY ORDERING EXPENDITURE OF STATE FUNDS**

"Strong considerations of comity" require federal courts to "giv[e] the States the first opportunity to correct the errors" in the administration of prison systems by proposing a constitutionally-sound remedial program. *Lewis*, 518 U.S. at 362 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973)). Federal courts must thus refrain from "dictat[ing] precisely what course the State should follow." *Id.* Federal courts have heeded this call, and when faced with the task of remedying constitutional violations in prisons have ordered the states to propose a remedial plan in the first instance. *See, e.g., Ginest v. Bd. of County Commissioners of Carbon County*, 333 F. Supp. 2d 1190, 1209 (D. Wyo. 2004).

*Lewis* and *Ginest* provide the appropriate remedial structure this Court should follow. The State should submit a proposed remedial plan that effectively rectifies the violations and is constitutionally sound. That proposed plan should be drafted in consultation with Plaintiffs and Intervenors, who should also be able to file objections to the plan after the State submits it to the Court. The Court may then adopt the plan after conducting hearings where the parties give their input. *Ginest*, 333 F. Supp. 2d at 1209; *Lewis*, 518 U.S. at 362. This procedure prevents the Court from unnecessarily "thrust[ing] itself into prison administration." *Lewis*, 518 U.S. at 362.

The State's participation in the remedial plan will ensure that the Prison Litigation Reform Act's requirements are met. *See* 18 U.S.C. § 3626(a)(1)(A) (relief must "extend no further than necessary to correct the violation," must be "narrowly drawn,"

and must also be "the least intrusive means" to correct the violation). The plan must give substantial weight to any adverse impact on public safety and the criminal justice system. *Id.*

The State's own evidence establishes the paramount importance that community and prison rehabilitative programs will play in reducing the prison population and enhancing pubic safety. *See, e.g.*, Powers Expert Report at 5-6; Bennett Expert Report, ¶¶ 60-79; Buddress Trial Decl., ¶¶3-13; Rodriquez Trial Decl., ¶¶ 20-21; Dumanis Trial Decl., ¶¶ 17-20; Cogbill Trial Decl., ¶12; Jett Trial Decl,. ¶¶ 27-37. Any potential adverse impact on public safety from the remedial order is mitigated by adequately implementing, funding, and properly staffing rehabilitative programming with support and custody staff in the prisons and in the communities. The State would be remiss and misuse its opportunity to craft its remedial plan by failing to include adequately funded community rehabilitative programs and adequate staffing levels in the prisons, and the State has benefitted by increasing those levels in recent years. (R.T. 1894:20-1907:21.)

There is no question that if the remedial order adopted by this Court provides for community rehabilitative programs—and the State for *any* reason fails to either fund or staff them—that this Court has the authority to enforce compliance with its order, including directing the State to fund these programs. *See, e.g., Milliken v. Bradley*, 433 U.S. 267, 289 (1977) ("federal courts [can] … enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury"); *Missouri v. Jenkins*, 495 U.S. 33, 57 (1990) (federal courts can compel local state taxing authority to remedy Constitutional violations despite state statutory limitations); *Griffin v. Prince Edward County School Bd.*, 377 U.S. 218, 233 (1964) ("We have no doubt of the power of the court to give this relief" to remedy Constitutional violations). If that point is reached, the source of the funding (*i.e.*, whether it is from the cost-savings due to the prisoner release order) is irrelevant because the source of the funding does not impact this Court's authority to ensure that parties comply with this Court's orders.

CBM-SF\SF434884.2                                        -4-

**CCPOA'S RESPONSE TO ORDER REQUIRING FURTHER BRIEFING**

1  Conversely, if the State adequately implements and funds rehabilitation
2  programs in state prisons and in the community, this Court would not need to determine
3  whether to independently order institution of the programs and/or their funding.

5  Dated: February 18, 2009

6  CARROLL, BURDICK & McDONOUGH LLP

8  By  */s/ Natalie Leonard*
9  Gregg McLean Adam
   Natalie Leonard
10 James W. Henderson, Jr.
   Attorneys for Plaintiff Intervenor California
11 Correctional Peace Officers' Association