JONES & MAYER
Martin J. Mayer (SB # 73890)
Michael R. Capizzi (SB # 35864)
Kimberly Hall Barlow (SB # 149902)
Ivy M. Tsai (SB # 223168)
3777 North Harbor Boulevard
Fullerton, California 92835
(714) 446-1400; Fax (714) 446-1448
e-mail: mjm@jones-mayer.com
e-mail: mrc@jones-mayer.com
e-mail: khb@jones-mayer.com
e-mail: imt@jones-mayer.com

Attorneys for Law Enforcement
Intervenor-Defendants

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | Case No: CIV S-90-0520 LKK JFM P <br><br> **THREE-JUDGE COURT** <br><br> [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)] |
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | Case No.: C01-1351 TEH <br><br> **THREE-JUDGE COURT** <br><br> **LAW ENFORCEMENT INTERVENORS' RESPONSE TO THE COURT'S ORDER REQUIRING FURTHER BRIEFING** |

///

///

The Sheriff, Police Chief, Probation Chief, and Corrections Chief Intervenors ("Law Enforcement Intervenors") respectfully submit this response to the Court's Order Requiring Further Briefing, issued February 4, 2009, asking the parties and intervenors to brief the following questions:

1. Does the Court have the authority to order the expenditure of funds for purposes of implementing any prisoner release order that it may issue?

2. Does the Court have the authority to order the State to divert funds from the prison budget to community programming or other local programs designed to facilitate the re-entry into society of prisoners released pursuant to the entry of a prisoner release order?

3. Would the answer to either of the above questions be different if the funds at issue consisted of savings to the State resulting from the issuance of a prisoner release order?

The Law Enforcement Intervenors submit that the answer to the first question is yes, if such expenditure of funds is deemed by the Court to be a necessary component of a prisoner release order pursuant to the Prison Litigation Reform Act (PLRA). As set forth in the PLRA, such order must be narrowly drawn and extend no further than necessary to correct the violation of a Federal right. 18 U.S.C. § 3626(a)(1)(A). The Court may find that expenditure of funds falls within this requirement. The PLRA also provides that in issuing such an order, the Court "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Id. Indeed, in the Tentative Ruling issued by the Court on February 9, 2009, the Court made a tentative finding that a prison cap could be achieved without an adverse impact on public safety, but seemed to contemplate such a cap only in the context of there also being reform measures to avoid an adverse impact on public safety. (Tentative Ruling, p. 7, ll. 7-20.)

As the Court noted in its Tentative Ruling, the definition of a "prisoner release order" (18 U.S.C. § 3626(g)(4)) is broad and would encapsulate many of the alternatives

to an "early release" program opposed by Defendants and Defendant-Intervenors (Tentative Ruling, p. 8, ll. 20-22.). The Court identified programs such as parole reform, diversion of low risk prisoners with short sentences, and good time credits, or a combination thereof, as ways to implement prison population reduction without adversely affecting public safety. (Tentative Ruling, p. 7, ll. 10-18). Further, the Court identified evidence-based programming as a way of benefiting public safety by reducing recidivism. (Tentative Ruling, p. 7, ll. 18-20.) The testimony of Dr. James Austin cited by the Court set forth the opinion that a population reduction such as that contemplated by the Court could be implemented without adversely affecting public safety, but only in connection with the adoption of a combination of such programs as parole reform, diversion, and good time credits. Id. The evidence presented during the trial overwhelmingly demonstrates that a population cap or early release of large numbers without such programming would result an adverse impact to public safety in local communities, with many individuals sure of recidivating, and increased crime. With the unprecedented economic crisis in this state, and the budgetary implications, as acknowledged by the Court, the potential public safety impact of a population reduction must be addressed by any prisoner release order.

The Court is correct that parole reform, diversion, good time credits, evidence-based programs, and similar programs, if ordered, would constitute "prisoner release orders" within the plain meaning of the PLRA. The "basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written" controls here. See Estate of Floyd Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992). An order requiring the State of California to implement evidence-based programming at the state and/or local level, or to fund such program indisputably would have the "purpose or effect" of reducing the prison population. Thus, under the clear meaning of the statute, the Court could order such a remedy so long as it meets the other criteria of the statute, being narrowly drawn to correct the violation, and it appears that such a remedy would meet such criteria in addressing potential adverse public safety impacts.

The PLRA clearly identifies remedies which are not within the power of the Three-Judge Court;[1] the explicit exclusion of these remedies does not change the meaning of a "prisoner release order" – it merely limits it. The inability of this Court to order construction of prisons or to require the State to implement a tax does not prohibit the Court from exercising its otherwise full equitable powers to remedy the unconstitutional violations it has, at least tentatively, determined to exist and to be caused by overcrowding in the prisons. See authorities cited in Post-Trial Brief of Intervenors County of Santa Clara and County of San Mateo regarding broad equitable powers of the court to correct constitutional violations, e.g., the Supreme Court has recognized that "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15 (1971) ("Swann I"). See also, Milliken v. Bradley, 433 U.S. 267, 283–88 (1977); Stone v. City and County of San Francisco, 968 F.2d 850, 860 (9th Cir. 1992). These and myriad other cases demonstrate the broad powers that federal courts have to order not just a particular result, but implementation of a particular means to a result in order to remedy a constitutional deprivation. Congress has made clear the broad scope of the Court's power in this case; given the nature of the statute, the constitutional deprivation found, and the proposed remedy and its impacts, the Court's power to order payment of funds to implement the narrowest, least intrusive, and least harmful remedy is clear.

In response to the second and third questions by the Court, the Law Enforcement Intervenors were unable to find any authority authorizing the Court to order the State to divert funds from the prison budget to community programming or other local programs designed to facilitate the re-entry into society of prisoners released pursuant to the entry of a prisoner release order, or any authority on this question if the funds at issue consisted of savings to the State resulting from the issuance of a prisoner release order. However,

---

[1] "Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts." 18 U.S.C. § 3626(a)(1)(C).

-4-
LAW ENFORCEMENT INTS.' RESPONSE TO COURT'S ORDER REQUIRING FURTHER BRIEFING

as the Court reasons in its Tentative Ruling, the State could certainly provide funding to community rehabilitative and other programs from the amounts saved by reform of earned credit and parole systems. While the Court may order the expenditure of funds as a necessary part of a prisoner release order, the method of funding would be within the State's discretion.

Dated: February 18, 2009

Respectfully submitted,

JONES & MAYER

By: _____/s/_____
Kimberly Hall Barlow
Attorneys for Law Enforcement
Intervenors