VOLUME 16

PAGES 3099 - 3148

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES PURSUANT

TO SECTION 2284, TITLE 28 UNITED STATES CODE

RALPH COLEMAN, ET AL,                )
                                     )
          PLAINTIFFS,                )
                                     )
  VS.                                ) NO. CIV S-90-0520 LKK JFM
                                     )
ARNOLD SCHWARZENEGGER, ET AL,        )
                                     ) THREE-JUDGE COURT
          DEFENDANTS.                )
                                     )
_____

MARCIANO PLATA, ET AL,               )
                                     )
          PLAINTIFFS,                )
                                     )
VS.                                  ) NO. C 01-1351 TEH
                                     )
ARNOLD SCHWARZENEGGER, ET AL,        )
                                     )
          DEFENDANTS.                )
_____)

***TRANSCRIPT OF PROCEEDINGS***

SAN FRANCISCO, CALIFORNIA
FEBRUARY 4, 2009

**(APPEARANCES ON FOLLOWING PAGE)**

*REPORTED BY:    DEBRA L. PAS, CSR 11916, CRR, RMR, RPR*
*OFFICIAL REPORTER - US DISTRICT COURT*
*COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

1    **APPEARANCES:**

2    **FOR PLAINTIFFS**            PRISON LAW OFFICE
3                                  1917 FIFTH STREET
                                   BERKELEY, CALIFORNIA  94710
                                   **SARA NORMAN, ESQUIRE**
4                                  **ALISON HARDY, ESQUIRE**
                                   **DONALD SPECTER, ESQUIRE**
5                                  **REBEKAH EVENSON, ESQUIRE**

6                                  ROSEN, BIEN & GALVAN, LLP
                                   315 MONTGOMERY STREET, TENTH FLOOR
7                                  SAN FRANCISCO, CALIFORNIA 94104
                          BY:  **MICHAEL W. BIEN, ESQUIRE**
8

9
     **FOR CCPOA**                 CARROLL, BURDICK & MCDONOUGH
10                                 44 MONTGOMERY STREET, SUITE 400
                                   SAN FRANCISCO, CALIFORNIA  94104
11                        BY: **NATALIE LEONARD, ESQUIRE**

12
     **FOR DEFENDANTS**            STATE OF CALIFORNIA
13                                 DEPARTMENT OF JUSTICE
                                   OFFICE OF THE ATTORNEY GENERAL
14                                 1300 I STREET, SUITE 125
                                   P.O. BOX 944255
15                                 SACRAMENTO, CALIFORNIA  94244
                          BY:  **LISA A. TILLMAN, ESQUIRE**
16
                                   STATE OF CALIFORNIA
17                                 DEPARTMENT OF JUSTICE
                                   OFFICE OF THE ATTORNEY GENERAL
18                                 455 GOLDEN GATE AVENUE, SUITE 11000
                                   SAN FRANCISCO, CALIFORNIA  94102
19                        BY: **KYLE A. LEWIS, ESQUIRE**

20
                                   HANSON BRIDGETT
21                                 425 MARKET STREET, 26TH FLOOR
                                   SAN FRANCISCO, CALIFORNIA  94105
22                        BY:  **PAUL MELLO, ESQUIRE**
                                   S. ANNE JOHNSON, ESQUIRE
23

24           **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

25

1 **APPEARANCES (CONTINUED):**

2

3 **FOR DISTRICT ATTORNEY**      THE DISTRICT ATTORNEY'S OFFICE
  **INTERVENORS**               COUNTY OF RIVERSIDE
4                               82-675 HIGHWAY 111, FOURTH FLOOR
                                INDIO, CALIFORNIA  92201
5                    BY:  **WILLIAM E. MITCHELL, ESQUIRE**

6

7 **FOR LEGISLATOR**             AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
  **INTERVENORS**               580 CALIFORNIA STREET, 15TH FLOOR
                                SAN FRANCISCO, CALIFORNIA  94104
8                    BY:  **STEVE KAUFHOLD, ESQUIRE**

9

10 **FOR LAW ENFORCEMENT**       JONES & MAYER
   **INTERVENORS**              3777 NORTH HARBOR BOULEVARD
                                FULLERTON, CALIFORNIA  92835
11                   BY:  **KIMBERLY HALL BARLOW, ESQUIRE**

12

13 **FOR COUNTY INTERVENORS**    OFFICE OF THE COUNTY COUNSEL
                                COUNTY OF SANTA CLARA
                                70 WEST HEDDING STREET
14                              NINTH FLOOR, EAST WING
                                SAN JOSE, CALIFORNIA  95110
15                   BY:  **THERESA FUENTES, ESQUIRE**

16

17 **FOR SONOMA COUNTY**         COUNTY OF SONOMA
   **INTERVENORS**              575 ADMINISTRATION DRIVE, ROOM 105A
                                SANTA ROSA, CALIFORNIA  95403
18                  BY:  **ANNE L. KECK, ESQUIRE**

19

20 **FOR THE COUNTY OF**         OFFICE OF MICHAEL P. MURPHY
   **SAN MATEO**                COUNTY COUNSEL, SAN MATEO COUNTY
   **INTERVENORS:**             HALL OF JUSTICE AND RECORDS
21                              400 COUNTY CENTER, 6TH FLOOR
                                REDWOOD CITY, CALIFORNIA 94063-1662
22                   BY:  **CAROL L. WOODWARD, ESQUIRE**

23

24                              -  -  -  -

25

1                    **P R O C E E D I N G S**

2    **FEBRUARY 3, 2009**                                    **10:03 A.M.**

3

4            **JUDGE REINHARDT:**  GOOD MORNING AGAIN, EVERYBODY.  WE

5    ARE HERE FOR THE REMAINDER OF THE ORAL ARGUMENTS.

6            COUNSEL.

7                    **REBUTTAL ARGUMENT**

8            **MR. BIEN:**  GOOD MORNING, YOUR HONORS.  WE WILL DIVIDE

9    UP THE REBUTTAL AS WE DID BEFORE.  MR. SPECTER WILL ADDRESS THE

10   PUBLIC SAFETY ISSUES.

11           **JUDGE KARLTON:**  THE WHAT ISSUES?

12           **MR. BIEN:**  THE PUBLIC SAFETY ISSUES.  I WILL ADDRESS

13   THEM ONLY TO THE EXTENT -- AN IMPORTANT ISSUE WHICH I WANT TO

14   ADDRESS IS THE ISSUE OF THE RELEASE OF THE MENTALLY ILL INTO

15   THE COMMUNITIES, WHICH HAS BEEN A THEME BOTH BY THE DEFENDANTS

16   AND INTERVENORS, THAT SOMEHOW -- SOMEHOW IT IS BETTER FOR THE

17   MENTALLY ILL -- FOR THE PRISONERS TO REMAIN IN PRISON AND

18   REMAIN IN THE CONDITIONS THEY ARE IN RATHER THAN GOING INTO THE

19   COMMUNITY.  AND, YOU KNOW, THE EVIDENCE IN THIS RECORD IS TO

20   THE CONTRARY AND THE PRISONS REMAINING PATHOGENIC FOR THE

21   MENTALLY ILL.

22           THERE ARE ENVIRONMENTS WHERE MENTAL ILLNESS IS BEING

23   EXACERBATED.  THE DEMAND FOR MENTAL ILLNESS IS UP.  EXPERTS

24   TESTIFIED THAT PRISONERS WOULD DO BETTER EVEN WITH NO RESOURCES

25   BEING RELEASED INTO THE COMMUNITY.  THAT TESTIMONY IS IN OUR

1  FINDINGS.

2          DR. GILLIGAN -- MISS TILLMAN SAID THAT DR. GILLIGAN,

3  OUR EXPERT, SAID A RELEASE ORDER MUST BE DONE PROPERLY TO BE

4  EFFECTIVE.  WHAT HE SAID WAS, I QUOTE:

5          "I THINK THE STATUS QUO IS MORE DANGEROUS THAN

6      RELEASING PEOPLE."

7          MISS TILLMAN MADE A REFERENCE THAT WE WERE DOING

8  DEINSTITUTIONALIZATION BY ASKING FOR A RELEASE ORDER HERE,

9  IMPLYING THAT SOMEHOW THE PROCESS OF -- THAT TO DEAL WITH THESE

10  HORRIFIC CONSTITUTIONAL VIOLATIONS IN THE PRISONS, WHICH IS

11  ACTUALLY, SOME MIGHT SAY, A PRODUCT OF THE

12  DEINSTITUTIONALIZATION OF THE STATE HOSPITALS A LONG, LONG TIME

13  AGO, SOMEHOW THIS IS EQUIVALENT.

14          IT IS NOT IN ANY WAY, SHAPE OR FORM.  THE EVIDENCE IS

15  CLEAR AND WE THINK UNDISPUTED THAT THE PRISONS ARE DANGEROUS

16  AND HARMFUL RIGHT NOW, TODAY, FOR THE MENTALLY ILL.

17          AND THERE IS AN ABANDONED WITNESS HERE THAT I THINK

18  WE NEED TO RECALL.  DR. IRA PACKER, THE SINGLE MENTAL HEALTH

19  EXPERT THAT THE STATE RETAINED.  HE IS NOT MENTIONED HERE.  HE

20  IS NOT MENTIONED IN DEFENDANTS' FINDINGS EXCEPT FOR ONE PASSING

21  REFERENCE.  AND THAT IS BECAUSE HE TESTIFIED HONESTLY AND

22  TRUTHFULLY IN A MANNER THAT SUPPORTED THE PLAINTIFFS' CASE IN

23  ALMOST EVERY STAGE.

24          HE TESTIFIED THAT THE CHURNING OF MENTALLY ILL

25  PAROLEES IS DANGEROUS AND MUST BE STOPPED.  HE TESTIFIED THAT

1  THE RECEPTION CENTERS ARE UNCONSTITUTIONAL, AND THAT

2  OVERCROWDING IS THE PRIMARY CAUSE OF THAT PROBLEM.

3          THAT IS WHY HE HAS BEEN ABANDONED, BUT HIS TESTIMONY

4  REMAINS IN THIS RECORD.  IT IS COMPLETELY CONSISTENT WITH THE

5  TESTIMONY OF OUR EXPERTS.

6          HE TESTIFIED THE WAY THAT THIS PROBLEM SHOULD BE

7  FIXED IS THE WAY THAT HE ADVOCATED AND PRACTICED IN

8  MASSACHUSETTS, WHICH WAS TO DIVERT MENTALLY ILL PRISONERS FROM

9  PRISON WHO DON'T NEED TO GO TO PRISON.

10          THE TESTIMONY IN THIS RECORD IS THAT WE ARE SENDING

11  THOUSANDS OF PAROLEES TO PRISON AS A RESULT OF A FAILURE OF THE

12  COMMUNITY SYSTEM AND THE PAROLE SYSTEM TO PROVIDE MENTAL HEALTH

13  CARE.  THEY ARE DOING WORSE AS A RESULT OF THAT.

14          THIS CHURNING MUST BE STOPPED.  IT CAN BE STOPPED

15  NOW.  THAT IS WHAT THE RECORD IS HERE.  AND THE IDEA THAT

16  PEOPLE ARE BETTER OFF TO REMAIN IN THESE ENVIRONMENTS JUST

17  CANNOT BE COUNTENANCED.

18          THERE'S STILL ARGUMENTS MADE THAT THE COURT SHOULD

19  JUST RELY ON OUR ONGOING PROCESSES IN THE COLEMAN AND PLATA

20  CASES AND THAT WE JUST NEED TO WAIT A LITTLE BIT LONGER AND

21  THINGS ARE GOING TO BE FINE.

22          I JUST THINK IT NEEDS TO BE SAID THAT THAT ARGUMENT,

23  JUST LIKE THE WITNESSES WHO TESTIFIED TO THAT AT TRIAL, CINDY

24  RADAVSKY, DR. PACKER, WERE BLOWN OUT OF THE WATER WHEN THEY

25  WERE INFORMED THAT THEIR CLIENTS HAD DECIDED AGAINST THE REMEDY

1    THAT WAS THE FOUNDATION OF THEIR OPINION, DECIDED AGAINST

2    WORKING WITH THE RECEIVER, DECIDED AGAINST BUILDING THE COLEMAN

3    MENTAL HEALTH BEDS WITH THE RECEIVER.

4            THAT THAT ARGUMENT CAN BE MADE AGAIN TODAY, AS IF

5    LIFE GOES ON, THAT WE ARE -- THE REMEDY IS PROCEEDING, IT JUST

6    MUST BE ACKNOWLEDGED.

7            THE REALITY IS BEFORE THIS COURT.  THE REALITY IS

8    THAT WE HAVE LOST YEARS AND YEARS IN THIS PROCESS BY THE

9    STATE'S DECISION TO CHANGE ITS MIND ABOUT THE NEED OF PROCESS.

10           IT WAS PLAINTIFFS' POSITION FROM THE BEGINNING THAT

11   WAITING FOR THE RECEIVER AND WAITING FOR AB900 WAS NOT A

12   DEFENSE TO THIS CASE, BUT IT WAS A DEFENSE THAT WAS RAISED BY

13   THE INTERVENORS AND THE DEFENDANTS.  WE ARGUED THAT IT WAS TOO

14   LONG AND IT WASN'T GOING TO WORK BECAUSE OF OVERCROWDING

15   ANYWAY.  BUT TO COME HERE TODAY AND SAY THAT THIS IS STILL A

16   VIABLE DEFENSE IS JUST RIDICULOUS.

17           THIS COURT ASKED DEFENDANT'S INTERVENORS AT THE LAST

18   DAY OF TRIAL TO PUT FORWARD THEIR OWN REMEDIAL PROPOSALS, TO

19   COME FORWARD WITH SOME NUMBER DIFFERENT THAN 52,000 IN TWO

20   YEARS.  NOTHING HAPPENED.  NO ONE PUT ON ANY EVIDENCE.  NO ONE

21   OFFERED ANY ALTERNATIVES.

22           YESTERDAY, WE HEARD -- WHEN THIS COURT ASKED PEOPLE,

23   WE HEARD FROM MR. MITCHELL, THE D.A.'S, AN IDEA THAT SOMEHOW WE

24   SHOULD IDENTIFY THE COLEMAN AND PLATA CLASS MEMBERS AND BUILD

25   SOME -- I DON'T REALLY UNDERSTAND WHAT HE WAS SAYING.

1          I MEAN, IS HE SAYING IDENTIFY THEM AND MOVE THEM

2   SOMEWHERE AND PROVIDE CARE AND HAVE A CAP?  YOU KNOW, IT'S NOT

3   BASED ON EVIDENCE.  IT'S NOT BASED ON REALITY.  THERE IS NO

4   ALTERNATIVE THAT'S BEEN OFFERED BY THE INTERVENORS OR THE

5   DEFENDANTS.

6          THE IDEA THAT PLAINTIFFS NEVER MADE A CONNECTION

7   BETWEEN DESIGN CAPACITY AND THE DELIVERY OF HEALTHCARE, WHICH

8   WAS MADE BY DEFENDANTS IN THEIR ARGUMENT, AGAIN, IS CONTRARY TO

9   THE EVIDENCE IN THE RECORD.

10          I POINT THE COURT TO OUR FINDINGS AT PAGE 172.

11   MR. DEZEMBER TESTIFIED THAT THERE WAS A DIRECT CONNECTION

12   BETWEEN THE CAPACITY OF THE PRISONS AND DELIVERY OF HEALTHCARE.

13          DR. HANEY, DR. STEWART AND JEANNE WOODFORD, WAYNE

14   SCOTT, MR. LEHMAN ALL TESTIFIED TO THE RATHER OBVIOUS FACT, AND

15   I DON'T SEE ANY TESTIMONY OR EXPERTS THAT SAID TO THE CONTRARY.

16          OBVIOUSLY, ONE NEEDS APPROPRIATE OFFICE AND TREATMENT

17   SPACE, SPECIALIZED BEDS TO DELIVER HEALTHCARE.

18          IN ADDITION THE CONDITIONS, THE HORRIFIC CROWDED

19   CONDITIONS, NOT ONLY THE BAD BEDS, BUT THE CROWDED AD SEG

20   UNITS, THE CROWDED CELL UNITS, THE DOUBLE CELLING WITHOUT

21   EXERCISE, THE LONG LOCKDOWNS, ALL THOSE CONDITIONS PRECLUDE THE

22   DELIVERY OF HEALTHCARE.  THAT IS THE DIRECT CONNECTION BETWEEN

23   THE CAPACITY AND HEALTHCARE.

24          **JUDGE KARLTON:**  MR. BIEN, LET ME GO BACK TO THE

25   130 PERCENT, 135 PERCENT, WHATEVER, PROBLEM BECAUSE I AM

1  FLUMMOXED BY IT.  I DON'T KNOW WHERE WE ARE.

2        EVEN IF WE TALK ABOUT 130 PERCENT AS AN OVERALL

3  AVERAGE, APPARENTLY THE PLAINTIFFS IN THEIR PROPOSED FINDINGS

4  OF FACT AND CONCLUSIONS OF LAW ARGUE THAT THERE HAS TO BE A

5  REDUCED NUMBER OF CAPACITY FOR THOSE WHO ARE BEING TREATED IN

6  MENTAL HEALTH BEDS, AND I ASSUME PHYSICAL BEDS AS WELL.  SO

7  THAT MEANS THERE IS MORE THAN 130 PERCENT SOMEWHERE ELSE.

8        IN ADDITION, WE HAVE HEARD TESTIMONY, THAT I TAKE IT

9  NOBODY DISAGREES WITH, THAT THE RECEPTION CENTERS ARE SO

10  OVERCROWDED THAT THEY CANNOT PERFORM THEIR DUTY, WHICH MEANS

11  THAT YOU'VE GOT TO REDUCE THE NUMBER OF PEOPLE THERE.  THAT

12  WOULD INDICATE, AGAIN, A GREATER PERCENTAGE THAN 130, 135, 145,

13  TAKE A NUMBER, OUTSIDE.

14        NOW, I THINK THE ARGUMENT THE PLAINTIFFS COULD MAKE,

15  BUT IT'S A FAIRLY CRUEL ONE, IS MR. MELLO'S ARGUMENT.  THIS IS

16  NOT A CASE ABOUT OVERCROWDING PER SE.  AND THE FACT THAT WE ARE

17  GOING TO DESTROY THE LIVES OF EVERYBODY ELSE IS SOMETHING THIS

18  COURT SHOULDN'T CONSIDER BECAUSE OUR CONSIDERATION IS THE

19  PERSONS IN THE COLEMAN AND PLATA CLASS.

20        WHAT IS YOUR RESPONSE TO ALL OF THAT?

21        **MR. BIEN:**  WE THINK THAT THE -- AGAIN, IT MAY NOT

22  HAVE BEEN CLEAR YESTERDAY AND PERHAPS CONFUSED A LITTLE BIT BY

23  MISS TILLMAN'S REFERENCE TO THERE BEING 28,000 TRIPLE C BEDS.

24  THERE ARE NO -- THE TRIPLE C ARE IN -- BY DEFINITION IN THE

25  GENERAL POPULATION.  THEY LIVE EVERYWHERE.  THEY LIVE IN SHUS,

1  OR AD SEG, OR GENERAL POPULATION, LEVEL I, LEVEL II, LEVEL III.

2          THERE ARE NO SPECIALIZED BEDS AND WE ARE NOT

3  SUGGESTING THERE SHOULD BE SPECIALIZED BEDS FOR TRIPLE C'S.

4  SO WE ARE TALKING 100 PERCENT CAPACITY ONLY FOR DEDICATED

5  SPECIALIZED MENTAL HEALTH PROGRAMS.

6          SO THAT'S NOT GOING TO HAVE THIS TREMENDOUS IMPACT

7  BECAUSE WE ARE TALKING ABOUT, AGAIN, THE EOP.  WE NEED -- RIGHT

8  NOW WE NEED 5,000 OF THOSE.  WE HAVE 4,000, BUT WITH A

9  POPULATION REDUCTION THAT WE ARE SUGGESTING, WE'RE NOT GOING TO

10 NEED AS MANY EOP BEDS.  SO WE DON'T THINK IT'S GOING TO HAVE

11 THAT IMPACT ON ALL THE REST OF THE PROGRAMS.

12         THE RECEPTION CENTERS ARE -- SOME OF THEM ARE

13 OPERATING AT 300 PERCENT TODAY.  300 PERCENT.  BUT WHEN WE

14 LOOKED AT THE WHOLE SYSTEM, WHEN OUR EXPERTS LOOKED AT THE

15 WHOLE SYSTEM AND LOOKED AT THE EVIDENCE THAT WE SAW, THIS IS

16 THE BEST THAT THEY COULD DO.

17         AND IT IS NOT A PERFECT NUMBER, BUT WE THINK IT IS A

18 NUMBER WHERE HEALTHCARE CAN BE DELIVERED IN A CONSTITUTIONAL

19 MANNER.

20         IS IT GOING TO BE -- IT'S NOT GOING TO BE LUXURIOUS.

21 IT'S NOT GOING TO BE COMFORTABLE.  THERE ARE STILL GOING TO BE

22 -- I AGREE WITH YOUR HONOR.  I'M NOT SURE -- THIS IS NOT GOING

23 TO SOLVE EVERY OVERCROWDING PROBLEM, BUT THIS CASE IS NOT --

24 YOU KNOW, THAT'S NOT WITHIN WHAT WE ARE TRYING TO DO HERE.

25         **JUDGE KARLTON:**  IS IT YOUR VIEW, THEN, THAT THE COURT

1   CAN PROCEED TO ISSUE AN ORDER WHICH WILL HAVE -- AND I'M NOT

2   SAYING YOU ARE WRONG.  I DON'T KNOW.  I MEAN, JUST LIKE SO MUCH

3   ELSE IN THIS CASE.

4           PROCEED TO ISSUE AN ORDER WHICH WILL HAVE A SERIOUS

5   EFFECT UPON OVERCROWDING, AT LEAST BY VIRTUE OF THE FACT THAT

6   WE'VE GOT TO MOVE ALL OF THE PEOPLE OUT OF RECEPTION CENTERS

7   JUST TO ALLOW THEM TO FUNCTION, AND THAT'S ONE OF THE

8   CONSEQUENCES AND WE CAN GO AHEAD AND DO THAT AND NOT WORRY

9   ABOUT IT, CLEARLY NOT WORRY ABOUT IT?

10          **MR. BIEN:**  MAYBE I'M NOT FOLLOWING YOUR QUESTION.

11  THE METHOD WE'RE SUGGESTING IS A GRADUAL REDUCTION OVER TIME.

12  THE 130 PERCENT JUST FOR THE ENTIRE SYSTEM.

13          THE RECEPTION CENTERS WOULD BE RELIEVED THROUGH

14  CHANGES IN PAROLE; THAT SOME OF THE VERY CHANGES THAT THE

15  GOVERNOR HAS SUGGESTED WOULD RELIEVE THAT CONGESTION RATHER

16  RAPIDLY.

17          IN OTHER WORDS, IF YOU CHANGED POLICIES ABOUT WHO'S

18  REVOKED AND HOW THEY ARE REVOKED AND WHAT THEIR TERMS ARE, IF

19  YOU GOT AWAY FROM THIS IDEA OF SENDING PEOPLE TO PRISON FOR

20  THREE MONTHS, CIM HAD 95 PERCENT PAROLE VIOLATORS.  I MEAN, SO

21  THAT'S A BIG GROUP OF THAT POPULATION THAT'S CLOGGING THE

22  RECEPTION CENTERS.

23          THAT'S WHAT MR. AUSTIN TESTIFIED TO AND MR. HOFFMAN,

24  TOO.  IF YOU CAN CHANGE THAT POLICY, WHICH IS A POLICY, THEN

25  YOU CAN RELIEVE A LOT OF THAT RECEPTION CENTER CROWDING.

1          SO THE 130 PERCENT WE ARE ASKING FOR IS AN OVERALL

2   NUMBER FOR THE WHOLE UNIT, AND THEN IT'S ONLY CERTAIN LIMITED

3   BEDS THAT WOULD BE AT A 95 PERCENT.

4          WE ARE NOT ASKING THAT PEOPLE -- WE ARE NOT ASKING

5   THAT CERTAIN PRISONS BE -- WE DON'T THINK THIS IS GOING TO

6   RESULT IN PARTICULAR PRISONS BEING OVERCROWDED BEYOND THEIR

7   CURRENT LEVELS THAT WE THINK WOULD BE INAPPROPRIATE.

8          **JUDGE KARLTON:**  YOU COULDN'T HAVE THEM OVERCROWDED

9   BEYOND THE PRESENT LEVEL.

10         **MR. BIEN:**  AGAIN, WE THINK THAT -- TO THE EXTENT,

11  JUDGE KARLTON, WE THOUGHT YOU WERE SUGGESTING THAT, THAT YOU

12  CAN PUSH PEOPLE INTO OTHER PRISONS AND MAKE IT CROWDED, THAT'S

13  NOT WHAT WE'RE SUGGESTING.

14         WE'RE SUGGESTING THAT THE POPULATION BE BROUGHT DOWN

15  GRADUALLY; THAT IF IT'S MANAGED IN A RATIONAL WAY, THAT THE

16  POPULATION WILL BE REDUCED ACROSS THE BOARD AND THE 130 PERCENT

17  WILL BE AN EFFECTIVE LEVEL TO DELIVER HEALTHCARE.

18         **JUDGE HENDERSON:**  THE 130 IS AN AVERAGE FOR THE

19  OVERALL SYSTEM, NOT EACH PRISON.  IS THAT RIGHT?  BECAUSE I

20  IMAGINE FROM THE FACT --

21         **MR. BIEN:**  YES.

22         **JUDGE HENDERSON:**  -- THAT SOME PRISONS MIGHT REQUIRE

23  JUST 100 PERCENT.  IS THAT CORRECT?

24         **MR. BIEN:**  THAT'S CORRECT.  AND IT WOULDN'T A WHOLE

25  PRISON IN TERMS OF SPECIALIZED MENTAL HEALTH PROGRAMS.  THEY

1   ARE RATHER LIMITED.  THEN TEND TO BE -- AT LEAST THE WAY

2   THEY'RE OPERATED NOW, THEY'RE SPREAD AROUND AT DIFFERENT

3   PRISONS.  AND THEY ARE UNITS, THEY ARE NOT WHOLE PRISONS.

4          BUT THE 130 WOULD BE AN AVERAGE AND TO THAT EXTENT WE

5   THINK IT'S MANAGEABLE.

6          JUDGE HENDERSON, YOU HAD A DISCUSSION THAT I THINK

7   SHOULD BE CLARIFIED WITH MISS KECK ABOUT HOW PAROLE MAKES --

8   DOES PAROLE MAKE CERTAIN DECISIONS ABOUT WHICH COUNTIES GET

9   WHICH INMATES AND HOW WOULD THEY MANAGE THAT, BECAUSE YOU MIGHT

10  SEND TOO MANY TO ONE SMALL COUNTY AND TOO FEW TO ANOTHER

11  COUNTY.

12         AND I JUST WANTED TO CLARIFY THAT AT LEAST IN THE

13  CURRENT SYSTEM THERE IS A STATUTE THAT GOVERNS THAT, AND PEOPLE

14  GO BACK TO THE COUNTY THAT SENDS THEM THERE.  SO THE COUNTIES

15  KNOW EXACTLY HOW MANY PEOPLE ARE COMING BACK.

16         IT'S ACTUALLY QUITE DIFFICULT TO GET A WAIVER FOR

17  THAT AND SEND SOMEONE TO A DIFFERENT COUNTY.  THERE IS A SMALL

18  AMOUNT OF WAIVERS GRANTED, BUT BASICALLY IT'S PROPORTIONAL TO

19  YOUR RATE OF SENDING PEOPLE TO PRISON.  AND THAT WAY -- YOU

20  KNOW, L.A. COUNTY DOES GET A BIG CHUNK OF PEOPLE BACK, BUT

21  THAT'S BECAUSE THEY SEND A BIG CHUNK OF PEOPLE IN.

22         SO THAT'S NOT REALLY -- WE DON'T THINK THAT THERE

23  NEEDS TO BE A CHANGE IN THAT POLICY AND WE HAVEN'T PROPOSED A

24  CHANGE.  YOU KNOW, SOMETHING MIGHT BE POSSIBLE.  I DON'T THINK

25  THAT'S GOING TO BE A PROBLEM.  IN OTHER WORDS, NO ONE IS GOING

1  TO SUDDENLY SEND EXTRA PEOPLE TO AMADOR UNDER ANY PROPOSALS WE

2  MADE.

3           THE IDEA THAT SOMEHOW WE SHOULD WAIT, NOT JUST FOR

4  THE PRISONS TO BE FIXED, BUT WAIT FOR THE COUNTIES AND THE

5  STATE TO FIX ALL THEIR PROBLEMS SO THAT THEY WILL BE

6  WELL-SUITED TO RECEIVE THESE NEW PAROLEES, NEW PEOPLE BACK FROM

7  PRISON, THEY WILL WELCOME THEM AND HAVE THESE GREAT PROGRAMS,

8  WAIT FOR A LEADER, AS JUDGE REINHARDT SUGGESTED, THESE ARE -- I

9  MEAN, WE HAVE TO RECALL WHERE WE ARE.

10          THE INTERVENORS MOVED TO INTERVENE IN THIS CASE.

11 THEY, THEMSELVES, ARE THE LEADERS OF THE DISTRICT ATTORNEYS

12 ASSOCIATION, SHERIFFS, PROBATION OFFICERS.  THE COUNTIES HAVE

13 GOTTEN TOGETHER.  THE REPUBLICAN LEGISLATORS HAVE GOTTEN

14 TOGETHER.  THE GOVERNOR'S HERE.  THE HEAD OF CC IS HERE.  THIS

15 IS THE LEADERSHIP OF THE CRIMINAL JUSTICE SYSTEM.

16          THEY HAVE KNOWN WHAT'S HAPPENING.  THEY HAVE DEALT

17 WITH THE STATUS QUO.  THEY ARE MAKING PUBLIC SAFETY DECISIONS

18 EVERY DAY, WHICH THEY ARE TELLING YOU ABOUT, TELLING ALL OF US

19 ABOUT.

20          AND THERE IS NO -- THEY HAVE HAD TIME TO PUT ON THEIR

21 ALTERNATIVE REMEDY.  THEY HAVE HAD TIME TO SAY, HERE IS MY

22 PLAN, JUDGE.  JUST GIVE US ANOTHER SIX MONTHS.  WE PUT THIS IN

23 PLACE.  IT'S GOING TO BE READY IN SIX MONTHS.

24          THIS PROCEEDING HAS BEEN GOING FOR TWO YEARS.  MORE

25 THAN TWO YEARS.  THIS VERY PROCEEDING.  THERE IS NO BASIS IN

1  THIS RECORD TO WAIT FOR THEM.

2       IN ADDITION, OUR EVIDENCE IS THAT PUBLIC SAFETY WILL

3  NOT BE HARMED BY A PRISONER RELEASE EVEN WITH NO NEW RESOURCES.

4  IT WILL BE BETTER.  IT WILL BE WISER TO DO THE THINGS THAT

5  WE'VE ALL SUGGESTED, THAT THEY HAVE SUGGESTED.  IT WOULD BE

6  BETTER PUBLIC POLICY.

7       WE ALL KNOW THAT.  THEY KNOW THAT.  I DON'T THINK

8  THAT IT'S SOMETHING THAT YOU HAVE CAREFULLY CONSIDERED.  YOU

9  CAN WEIGH IT.  YOU CAN MAKE FINDINGS ABOUT.  AND I THINK THAT'S

10 ALL THAT CAN BE DONE.

11      I WOULD LIKE TO TURN IT OVER TO MR. SPECTER, UNLESS

12 THERE IS OTHER QUESTIONS.

13                        **REBUTTAL ARGUMENT**

14      **MR. SPECTER:**  GOOD MORNING.

15      **JUDGE REINHARDT:**  MR. SPECTER, I HAVE A COUPLE OF

16 QUESTIONS FOR YOU.

17      I WENT THROUGH YOUR FINDINGS OF FACT, BUT DO YOU

18 BREAK DOWN HOW YOU CAN GET TO THE 52,000 THAT YOU PROPOSE THE

19 POPULATION BE REDUCED BY?

20      **MR. SPECTER:**  THAT'S IN DR. AUSTIN'S REPORT, I

21 BELIEVE, YOUR HONOR.

22      (DISCUSSION HELD OFF THE RECORD.)

23      **MR. SPECTER:**  WHAT DR. AUSTIN TESTIFIED WAS THAT WE

24 CAN REDUCE THE -- NOT "WE."  I'M SORRY.

25      THE STATE CAN REDUCE THE POPULATION BY 52,000 USING

1  THE OPTIONS SET FORTH IN HIS REPORT; DIVERSION, PAROLE REFORM,

2  GOOD TIME CREDITS, ET CETERA.  AND HE TESTIFIED THAT THAT COULD

3  BE DONE SAFELY.

4          HE CERTAINLY HAS BROKEN IT DOWN FOR US AND COULD

5  BREAK IT DOWN, BUT THAT'S NOT IN THE RECORD.

6          **JUDGE REINHARDT:**  YOU KNOW, WE'VE TALKED ABOUT, I

7  THINK, ONE PART OF THAT, WHEN THEY SAY SOME PEOPLE GET RELEASED

8  THREE OR FOUR MONTHS EARLY.  AND THERE WE'VE HAD SOME

9  DISCUSSIONS BACK AND FORTH ABOUT WHETHER THAT REALLY MEANS AN

10 INCREASE IN CRIME OR JUST A DIFFERENCE IN TIMING.

11         BUT LOOKING AT IT MORE BROADLY, YOU'RE TALKING ABOUT

12 ACTUALLY REDUCING THE POPULATION BY 50,000 SO THAT OVER PERIODS

13 OF TIME THERE ARE GOING TO BEING 50,000 PEOPLE LESS, FEWER IN

14 PRISON AND 50,000 MORE ON THE STREETS.

15         **MR. SPECTER:**  EXACTLY.

16         **JUDGE REINHARDT:**  AND YOUR EVIDENCE, YOU BELIEVE,

17 SHOWS THAT THE 52,000 EXTRA PEOPLE WHO ARE GOING TO BE ON THE

18 STREETS GENERALLY FROM NOW ON, ONCE WE GET THERE, THOSE 52,000

19 ARE NOT GOING TO IN ANY WAY BE A DANGER TO THE COMMUNITY.

20         **MR. SPECTER:**  NOT QUITE.  WE DON'T BELIEVE THAT THE

21 COMMUNITY WILL BE IN ANY MORE DANGER FROM THOSE 52,000 PEOPLE

22 BEING THERE THAN THEY ARE NOW.  AND THAT DOESN'T MEAN THAT

23 THEY'RE ALL GOING TO BE --

24         **JUDGE REINHARDT:**  THEY'RE NOT GOING TO BE ANY EXTRA

25 DANGER TO THE COMMUNITY.

1          **MR. SPECTER:**  YES, YOUR HONOR.

2          **JUDGE KARLTON:**  I DIDN'T UNDERSTAND THAT,

3   MR. SPECTER.

4          **MR. SPECTER:**  WELL, IT'S COUNTERINTUITIVE.

5          **JUDGE KARLTON:**  YOU GOT THAT RIGHT.

6          **MR. SPECTER:**  YES.  AND THAT'S WHY -- THAT'S WHY IT'S

7   BEEN A LITTLE DIFFICULT TO EXPLAIN, BUT THE DATA SHOWS THAT

8   THAT'S WHAT THE FACTS ARE.

9          AND BEFORE I EXPLAIN THAT A LITTLE BETTER, I WANT TO

10  CLARIFY SOMETHING.  WHEN YOU SAY "ON THE STREETS," THAT DOESN'T

11  MEAN -- DID YOU SAY "ON THE STREET" OR IS THAT MY WORD?  IN THE

12  COMMUNITY.

13         **JUDGE REINHARDT:**  NO, I SAID ON THE -- I THINK I DID.

14         **JUDGE HENDERSON:**  HE SAID "ON THE STREET."

15         **MR. SPECTER:**  HE SAID "ON THE STREET," OKAY.

16         **JUDGE REINHARDT:**  AS OPPOSED TO BEING IN PRISON,

17  THEY'RE GOING TO BE, YOU COULD SAY, AT LARGE.

18         **MR. SPECTER:**  WELL, NO, YOU CAN'T SAY "AT LARGE"

19  BECAUSE SOME OF THEM WILL BE UNDER PAROLE SUPERVISION.  SOME OF

20  THEM MAY BE --

21         **JUDGE REINHARDT:**  WELL, THEY'RE STILL OUT AND ABOUT

22  IN THE COMMUNITY.

23         **JUDGE KARLTON:**  THE PAROLE AGENT IS NOT GOING TO

24  FOLLOW THEM EVERY DAY.  THEY ARE GOING TO COMMIT A CRIME.

25         **MR. SPECTER:**  I'M NOT DISPUTING THAT.

1          ALL I'M TRYING TO MAKE CLEAR IS THAT THEY ARE NOT

2    GOING TO BE -- SOME OF THEM COULD BE IN COUNTY JAILS, SOME OF

3    THEM COULD BE ON PROBATION, SOME OF THEM COULD BE ON PAROLE,

4    SOME COULD BE IN HALFWAY HOUSES, WORK FURLOUGH PROGRAMS, DAY

5    REPORTING CENTERS, ALL THESE OTHER ALTERNATIVE TYPES OF

6    INCARCERATION --

7          **JUDGE KARLTON:**  MR. SPECTER --

8          **MR. SPECTER:**  -- WHICH WE DON'T USE NOW --

9          **JUDGE KARLTON:**  MR. SPECTER --

10          **MR. SPECTER:**  -- AND WHICH ARE AVAILABLE.

11          **JUDGE KARLTON:**  THE COUNTIES HAVE PUT ON VERY SERIOUS

12    EVIDENCE.  THEY CAN'T BE IN THE COUNTY JAILS BECAUSE IF THEY

13    ARE IN THE COUNTY JAILS, ALL THAT MEANS IS THE COUNTY PEOPLE

14    ARE OUT ON THE STREET.  IT'S NOT LIKE THERE ARE PLACES TO PUT

15    THEM.

16          THERE IS NO MONEY FOR THE DAY CENTERS.  THAT GETS

17    BACK TO THE VERY SERIOUS PROBLEM THAT WE HAVE RAISED BEFORE,

18    WHETHER WE CAN ORDER THE STATE TO SHARE.

19          **MR. SPECTER:**  AND I WANT TO ADDRESS THAT BEFORE I

20    LEAVE TODAY, BUT TO GET BACK -- AND I PROMISE I WILL.

21          **JUDGE KARLTON:**  THAT'S ALL RIGHT.

22          **MR. SPECTER:**  BUT TO GET BACK TO YOUR POINT.  ALL THE

23    DATA SHOWS THAT WITH THE 50,000 PEOPLE LESS IN PRISON, BUT NOT

24    NECESSARILY NOT SUBJECT TO ALTERNATIVE SANCTIONS, THAT THE

25    CRIME RATE WILL NOT INCREASE.  ALL THE DATA, ALL THE

 1   UNCONTRADICTED EVIDENCE.

 2            NOW, THIS IS A VERY IMPORTANT POINT AND IT LEADS TO A

 3   LEGAL POINT, AND THAT'S THE PLRA FOR THE FIRST TIME IN OUR

 4   HISTORY EXPRESSLY PROVIDED FOR A REDUCTION IN THE PRISON

 5   POPULATION, A SANCTION BY CONGRESS THROUGH WHAT THEY CALL A

 6   PRISONER RELEASE ORDER, WHICH REALLY SHOULD BE CALLED A PRISON

 7   POPULATION REDUCTION ORDER TO AVOID CONFUSION.

 8            BUT MY ARGUMENT IS THAT BY SANCTIONING THAT KIND OF

 9   POPULATION REDUCTION MEASURE, CONGRESS KNEW THAT THERE WOULD BE

10   MORE OFFENDERS ON THE STREET, IN THE COMMUNITY, THAN THERE

11   WOULD BE IN CUSTODY.

12            AND WHAT IT DID ABOUT THAT, IT DIDN'T SAY, STOP, YOU

13   CAN'T DO THAT, LIKE THEY HAVE DONE IN SOME OTHER INSTANCES.

14   HABEAS 2254, AS MENTIONED YESTERDAY.  THEY SAID, WHAT YOU MUST

15   DO IS CONSIDER BEFORE YOU ISSUE SUCH A RELEASE ORDER THE IMPACT

16   ON THE CRIME, BUT ONCE YOU'VE CONSIDERED IT AND WAIVED THAT

17   FACT, THEN YOU CAN DO IT.

18            AND IT SEEMS TO ME THAT BY SETTING UP THAT KIND OF A

19   STRUCTURE, CONGRESS IMPLICITLY RECOGNIZED THAT THERE WOULD BE

20   MORE OFFENDERS ON THE STREET.  AND USING THE INTUITIVE NOTION

21   THAT JUDGE KARLTON JUST MENTIONED, THEY PROBABLY THOUGHT THAT

22   THIS WOULD LEAD TO MORE CRIME.

23            EVEN IN THAT INSTANCE, THEY SAID YOU CAN RELEASE

24   PRISONERS.

25            NOW, WE HAVE PROVED, I THINK, THE BEST CASE SCENARIO

1   YOU CAN -- WELL, YOU COULD HAVE, WHICH IS THAT YOU CAN HAVE A

2   REDUCTION IN THE POPULATION WITHOUT AN IMPACT ON CRIME AND A

3   VERY MINOR, ALMOST DI MINIMUS IMPACT ON THE CRIMINAL JUSTICE

4   SYSTEM BECAUSE OF THE ARREST.

5          NOW, CONGRESS DIDN'T SAY -- TO GET BACK TO YOUR

6   QUESTION -- THAT YOU SHOULD CONSIDER THINGS OTHER THAN ITS

7   IMPACT ON THE CRIMINAL JUSTICE SYSTEM.

8          I'M NOT SAYING YOU CAN'T CONSIDER THAT, BUT CONGRESS

9   MADE YOU CONSIDER ITS IMPACT ON THE CRIMINAL JUSTICE SYSTEM,

10  FOR WHATEVER THAT'S WORTH.

11         **JUDGE KARLTON:**  IT'S JUST AS LIKELY THAT THE

12  COUNTIES -- THAT THE CONGRESS DIDN'T CONTEMPLATE THE SITUATION

13  THAT WE HAVE IN CALIFORNIA, WHERE ALL OF THE COUNTIES ARE

14  STRUGGLING JUST TO STAY ALIVE, WHERE THE SEVERE BUDGET CUTS ARE

15  GOING TO IMPACT THEIR ABILITY TO DO ANYTHING.

16         CONGRESS WROTE IN A MUCH MORE FAVORABLE ECONOMIC.

17  YOU KNOW, IT WAS BEFORE THE CRASH.

18         **MR. SPECTER:**  YEAH, BUT IT WAS ALSO -- THIS PLRA

19  AROSE FROM AN OVERCROWDING CASE IN THE PHILADELPHIA CITY JAIL,

20  WHERE ALL OF THE SAME PROBLEMS -- YOU KNOW, I MEAN GENERALLY

21  SPEAKING -- ARE THERE AS ARE HERE.

22         AND WHAT OTHER SITUATION CAN THERE BE IF, FOR

23  EXAMPLE, THAT WE HAVE PROVED THAT IT WON'T HAVE ANY IMPACT ON

24  CRIME.  IT WILL HAVE A SMALL IMPACT ON THE CRIMINAL JUSTICE

25  SYSTEM.  WHAT OTHER CONDITION COULD YOU GET TO?  WHAT OTHER

```
 1   EVIDENCE COULD THERE BE TO SATISFY A PRISONER -- THE CONDITIONS

 2   THAT CONGRESS --

 3         JUDGE REINHARDT:  IF YOUR EVIDENCE IS PERSUASIVE,

 4   THAT RELEASING -- THAT HAVING 50,000 PEOPLE MORE ON THE STREET,

 5   IN THE BROAD SENSE --

 6         MR. SPECTER:  AND OVER A TWO-YEAR PERIOD OF TIME.

 7         JUDGE REINHARDT:  IT'S GOING TO BE A PERMANENT THING.

 8         MR. SPECTER:  IT IS.  YOU'RE RIGHT.  BUT IT'S GOING

 9   TO BE A GRADUAL --

10         JUDGE REINHARDT:  YOU GET THERE GRADUALLY, BUT --

11         JUDGE KARLTON:  NOT SO GRADUALLY.  TWO YEARS AIN'T SO

12   GRADUAL.

13         JUDGE REINHARDT:  WELL, BUT AFTER THAT TWO YEARS,

14   FROM THEN ON THERE ARE GOING TO BE 50,000 FEWER PEOPLE IN

15   PRISON THAN NORMALLY ARE IN PRISON OR THAT WOULD BE OTHERWISE.

16         MR. SPECTER:  YES, THAT'S RIGHT.

17         JUDGE REINHARDT:  AND SO --

18         MR. SPECTER:  BUT WHY IS THAT DIFFERENT THAN --

19         JUDGE REINHARDT:  WHY IS THAT BAD?

20         MR. SPECTER:  NO, NO.  THINK ABOUT THE OTHER EVIDENCE

21   IN THE CASE.

22         THERE IS EVIDENCE IN THE CASE, AND MISS WOODFORD

23   TESTIFIED ABOUT THIS, ABOUT THE FACT THAT THE STATE ON ITS OWN

24   INCREASED CREDITS.

25         WHAT DOES INCREASED CREDITS DO?  INCREASED CREDITS
```

1  MEANS THAT PRISONERS ARE GOING TO BE RELEASED EARLY.  THAT

2  MEANS THERE ARE GOING TO BE LESS PEOPLE IN PRISON, MORE PEOPLE

3  IN THE COMMUNITY.  IT HAPPENS ALL THE TIME.

4       **JUDGE KARLTON:**  WE ALL AGREE -- WE ALL AGREE THAT

5  THERE IS NO MAGIC NUMBER, THAT THE TERMS THAT PEOPLE SERVE ARE

6  ESSENTIALLY ARBITRARY.  THAT DOESN'T MEAN THAT RELEASING PEOPLE

7  FROM THAT EARLIER ARBITRARY NUMBER IS NOT GOING TO HAVE AN

8  IMPACT.

9       AND THE QUESTION THAT JUDGE REINHARDT KEEPS PRESSING

10  IS:  CAN YOU SERIOUSLY ARGUE THAT 50,000 FOLKS WHO HAVE

11  COMMITTED CRIMES, ARE BACK IN THE STREET -- PARTICULARLY GIVEN

12  THE FACT THAT WE HAVEN'T BEEN ABLE TO TREAT THEM WHATSOEVER, SO

13  THAT THEY ARE GOING TO GO OUT IN THE STREET AT LEAST AS BAD OFF

14  AS THEY CAME IN.  AND IF WE BELIEVE THE EVIDENCE, AND I DO,

15  GIVEN THE CRIMINOGENIC NATURE OF PRISON, THEY ARE GOING TO BE

16  MUCH MORE INCLINED TO COMMIT VIOLENT CRIMES THAN THEY WERE WHEN

17  THEY WENT IN.

18       **MR. SPECTER:**  WELL, I CANNOT TAKE AN INTUITIVE NOTION

19  THAT PEOPLE -- IF YOU TAKE OFFENDERS OUT AND PUT THEM ON THE

20  STREET, WE WILL HAVE A LOT OF CRIME.  THAT'S THE DEFENSE.  ALL

21  I CAN DO WITH THAT -- I CAN'T MAKE IT INTUITIVE, BUT ALL I CAN

22  DO IS TELL YOU ABOUT WHAT THE EVIDENCE IS.

23       AND THE EVIDENCE IS -- THESE ARE IMPORTANT.  THE

24  EVIDENCE IS, IS THAT OF ALL THE CRIMES THAT ARE COMMITTED

25  PAROLEES RESULT IN A VERY FEW.

1          THE OTHER EVIDENCE IS, IS THAT NEARLY ALL THE CRIME

2     THAT'S COMMITTED IS COMMITTED IN THE FIRST YEAR, NOT DURING

3     SUBSEQUENT TIMES.

4          SO, YOU KNOW, IT'S SORT OF --

5          **JUDGE REINHARDT:**  FIRST YEAR OF WHAT?  FIRST YEAR

6     AFTER THEY GET OUT OF PRISON?

7          **MR. SPECTER:**  YES, YOUR HONOR.

8          SO THAT'S WHY, FOR EXAMPLE, IN A MORE RATIONAL PAROLE

9     SYSTEM, AND IT'S BEEN ADVOCATED BY SOME OF THE DEFENDANTS'

10    EMPLOYEES, YOU CONCENTRATE YOUR PAROLE SUPERVISION ON HIGH-RISK

11    PAROLEES DURING THE FIRST SIX MONTHS OR YEAR THAT THEY ARE OUT,

12    BECAUSE THAT'S WHEN THEY ARE TRYING TO GET BACK, REINTEGRATE

13    THEM INTO THE COMMUNITY AND THAT'S WHEN THEY ARE MOST AT RISK.

14    IF YOU CAN GET THEM OVER THAT HUMP, THE EVIDENCE SHOWS THAT

15    THEY ARE LESS LIKELY TO COMMIT CRIMES.

16          NOW, THAT'S AN ALLOCATION PROBLEM THAT THE STATE HAS

17    AND, IN FACT, SOME OF THE STATE ACTORS HAVE BEEN ADVOCATING FOR

18    IT.

19          SORRY, YOUR HONOR.

20          **JUDGE HENDERSON:**  STAYING WITH INTUITION, MY

21    INTUITION AS I HEARD THAT WAS MAYBE IT'S THE FIRST YEAR WHEN

22    THE CRIMES ARE COMMITTED BECAUSE THEY ARE BACK IN PRISON THEN.

23    THAT'S INTUITIVELY THE ANSWER TO THAT.

24          **MR. SPECTER:**  WELL, 70 PERCENT ARE BACK IN PRISON

25    OVER THREE YEARS.  YOU KNOW, IT GOES DOWN AFTER A CERTAIN

 1  PERIOD OF TIME.  AND CERTAIN PEOPLE ARE MORE AT RISK OF GETTING

 2  BACK IN PRISON THAN OTHERS.  AND CERTAIN PEOPLE ARE MORE AT

 3  RISK OF GETTING BACK IN PRISON FOR VIOLENT CRIME --

 4        **JUDGE REINHARDT:**  SPEAKING OF INTUITION, IT SEEMS TO

 5  ME IT'S OBVIOUS.  IF WE LOCK EVERYBODY UP WHO EVER COMMITTED A

 6  CRIME FOR LIFE, WE WOULD HAVE LESS CRIME.

 7        **MR. SPECTER:**  RIGHT.

 8        **JUDGE REINHARDT:**  AND WHENEVER YOU LET PEOPLE OUT,

 9  YOU TAKE THE RISK OF MORE CRIME.

10        SO IF WE GIVE PEOPLE PAROLE AT ALL, THERE'S GOING TO

11  BE MORE CRIME THAN IF WE DON'T.  SO --

12        **MR. SPECTER:**  THAT'S WHY -- I'M SORRY.

13        **JUDGE REINHARDT:**  SO IF WE LET THEM OUT EARLIER,

14  THERE IS GOING TO BE MORE CRIME, EXCEPT THAT THEY MAY HAVE

15  OTHERWISE GONE BACK.  BUT IF WE ARE GOING TO REDUCE THE PRISON

16  POPULATION, IT SEEMS TO ME OBVIOUS THERE'S GOING TO BE MORE

17  CRIME THAN IF WE HAD 50,000 MORE PEOPLE IN PRISON.

18        **MR. SPECTER:**  WELL --

19        **JUDGE REINHARDT:**  BUT --

20        **JUDGE KARLTON:**  WELL, MORE CRIME IN THE COMMUNITY,

21  BUT THERE WILL BE MORE CRIME IN PRISON OBVIOUSLY.

22        **JUDGE REINHARDT:**  THAT'S RIGHT.  WE'LL TRANSFER THE

23  CRIMES FROM THE PRISON TO THE COMMUNITY.

24        BUT THEN IN THE LARGER -- YOUR PRISON POPULATION, THE

25  MORE PEOPLE ARE OUT TO COMMIT CRIMES.  NOW, THAT DOESN'T

1  MEAN -- I DON'T KNOW WHAT THAT MEANS AS FAR AS --

2        **MR. SPECTER:**  WELL, WHAT IT MEANS IS, IS THAT PEOPLE

3  DON'T COMMIT CRIMES -- YOU KNOW, SOME OF THE LAW ENFORCEMENT

4  INTERVENORS USE THE TERM "CAREER CRIMINALS."  THESE ARE CAREER

5  CRIMINALS THAT ARE IN PRISON.  WE ONLY SEND THE CAREER

6  CRIMINALS THAT ARE IN PRISON.

7        AND I THINK ABOUT THAT TERM AND I ASKED ONE PERSON AT

8  HIS DEPOSITION WHAT HE MEANT BY THAT.  AND I SAID, DO YOU MEAN

9  LIKE, I GO TO WORK, I HAVE A CAREER.  I GO TO WORK AND I COMMIT

10 CRIMES EVERY DAY?

11       YOU KNOW, IT'S BEEN SHOWN, AND I THINK DR. AUSTIN

12 TESTIFIED AND MS. BARLOW MADE REFERENCE TO IT YESTERDAY, PEOPLE

13 DON'T COMMIT CRIMES AT THE SAME RATE THROUGH THEIR WHOLE LIFE.

14 MOST OF THE PEOPLE COMMIT CRIMES BETWEEN 18 AND 25 YEARS OLD.

15       ONCE THEY'RE OLDER THAN 25, THE CRIME RATE GOES DOWN.

16 CERTAIN PEOPLE ARE MORE AT RISK OF COMMITTING CRIMES THAN

17 OTHERS.

18       WE ARE NOT SAYING -- THIS IS REALLY IMPORTANT -- THAT

19 YOU SHOULD RANDOMLY -- IF THE DEFENDANTS WANT TO, THEY CAN, BUT

20 IT'S -- WE ARE NOT PROPOSING THAT THE DEFENDANTS RANDOMLY TAKE

21 ALL -- JUST RANDOMLY SELECT 52,000 PEOPLE AND LET THEM OUT.

22       WHAT WE ARE SUGGESTING IS THAT THEY DO THAT IN A

23 MEASURED WAY THROUGH A RISK ASSESSMENT INSTRUMENT WHICH WILL

24 REDUCE THE IMPACT.  IT WILL -- AND AS DR. AUSTIN TESTIFIED,

25 THAT IT WOULD REDUCE THE NUMBER OF ARRESTS BECAUSE YOU WILL

 1  HAVE LET OUT THE LOWER RISK PEOPLE.

 2           AND SO IT'S A -- TO ANSWER YOUR MAIN POINT, IT'S NOT

 3  TRUE THAT IF YOU TAKE 50,000 PEOPLE FROM PRISON AND PUT THEM ON

 4  THE OUTSIDE, YOU'RE GOING TO HAVE 50,000 -- THEY SAID, YOU

 5  KNOW, PRISONERS COMMIT -- EACH CRIMINAL COMMITS 12 CRIMES.  YOU

 6  KNOW, YOU'RE GOING TO HAVE AN EXPLODING NUMBER OF CRIMES.  THAT

 7  JUST DOESN'T HAPPEN.

 8           **JUDGE REINHARDT:**  WELL, I SUPPOSE EVERY 50,000 PEOPLE

 9  WE DON'T LOCK UP IS GOING TO RESULT IN MORE CRIME.

10           **JUDGE KARLTON:**  I MEAN, ONE THING WE COULD DO IS LOCK

11  ALL THOSE PEOPLE UP RIGHT NOW.  AT LEAST SOME OF THEM ARE GOING

12  TO COMMIT A CRIME.

13           ACTUALLY YOU, MR. MELLO.

14           (LAUGHTER.)

15           **JUDGE REINHARDT:**  THAT DOESN'T MEAN IT LEADS TO

16  ANY PARTICULAR CONSEQUENCE IN THIS CASE, BUT IT SEEMS OBVIOUS

17  THAT --

18           **MR. SPECTER:**  WHY DOES IT SEEM -- WHAT IS OBVIOUS

19  ABOUT IT?

20           **JUDGE REINHARDT:**  IT'S OBVIOUS TO ME THAT 50,000

21  FEWER PEOPLE IN PRISON, THAT THERE ARE GOING TO BE MORE CRIMES.

22           **MR. SPECTER:**  AND THAT'S AN INTUITIVE NOTION

23  BECAUSE -- AND YOU BELIEVE THAT BECAUSE THOSE PEOPLE HAVE

24  COMMITTED CRIMES IN THE PAST.

25           **JUDGE REINHARDT:**  LISTEN, I BELIEVE IF YOU WENT OUT

1    AND PICKED UP 50,000 PEOPLE OFF THE STREETS OF SAN FRANCISCO

2    AND YOU PUT THEM IN PRISON, YOU WOULD HAVE FEWER CRIMES.

3              **MR. SPECTER:**  RIGHT.

4              **JUDGE REINHARDT:**  JUST ARBITRARILY YOU PICKED THEM

5    OUT, EVEN IF THEY DON'T HAVE RECORDS.

6              **JUDGE KARLTON:**  THAT'S WHAT I SAID.

7              **JUDGE REINHARDT:**  YOU ARE GOING TO HAVE FEWER PEOPLE

8    TO COMMIT CRIMES.

9              **JUDGE KARLTON:**  STARTING WITH YOU (INDICATING).

10             (LAUGHTER)

11             **MR. SPECTER:**  TO GET BACK TO THE LAW.

12             **JUDGE REINHARDT:**  I MEAN, IF -- YOUR EVIDENCE IS

13   PERSUASIVE THAT IF YOU LET 50,000 PEOPLE OUT, THEY ARE NOT

14   GOING TO COMMIT ANY CRIMES.

15             **MR. SPECTER:**  WELL, LOOK.  THE OTHER WAY OF ANSWERING

16   YOUR QUESTION ABOUT PICKING UP 50,000 MORE PEOPLE IS THAT

17   DEFENDANT'S OWN EXPERT, THEIR ONLY EXPERT, DR. MARQUART -- WHO

18   I KNOW THERE IS SOME QUESTION ABOUT --

19             **JUDGE REINHARDT:**  IS THIS THE ONE FROM TEXAS?

20             **MR. SPECTER:**  YES.

21             **JUDGE KARLTON:**  ANYTHING IS POSSIBLE, RIGHT?

22             **MR. SPECTER:**  ANYTHING IS POSSIBLE.

23             (CONTINUING) -- TESTIFIED.  EVEN HE, WHO HAS STUDIED

24   THIS SOMEWHAT, SAID HE CAN'T TELL YOU THAT THERE'S A DIRECT

25   RELATIONSHIP BETWEEN INCARCERATION RATES AND CRIME.

1            WHAT THAT MEANS, IT'S THE FLIP SIDE OF WHAT YOU SAID.

2    WHAT THAT MEANS IS THAT IF YOU TAKE 50,000 PEOPLE MORE AND PUT

3    THEM IN PRISON, YOU ARE NOT NECESSARILY GOING TO REDUCE THE

4    CRIME RATE.  IT MAY NOT BE OBVIOUS, BUT THAT'S WHAT THE DATA --

5            **JUDGE REINHARDT:**  THAT'S WHAT HE SAID.

6            **MR. SPECTER:**  THAT'S WHAT HE SAID.

7            **JUDGE REINHARDT:**  YEAH, WELL...

8            **MR. SPECTER:**  OKAY.  BUT IT'S THEIR EXPERT.  AND OUR

9    EXPERT SAID THE SAME THING.

10            **JUDGE REINHARDT:**  WELL, YOU KNOW, THAT'S WHAT I SAID

11    EARLIER IN THE TRIAL.  FIGURES ARE NOT TERRIBLY RELIABLE.  YOU

12    CAN HAVE FIGURES FOR ANYTHING.

13            **MR. SPECTER:**  WELL, YOUR HONOR, THAT'S A POINT I

14    CAN'T DISPUTE, BUT --

15            **JUDGE REINHARDT:**  WHOEVER SAID THE LAW IS THE

16    EXPERIENCE, YOU KNOW, YOU DON'T HAVE TO HAVE MUCH EXPERIENCE

17    WITH LIFE TO UNDERSTAND THAT IF YOU LOCK EVERYBODY UP, THERE IS

18    NOT GOING TO BE CRIME.  AND THEN IF YOU LET EVERYBODY OUT,

19    THERE IS GOING TO BE CRIME.

20            **MR. SPECTER:**  WELL, THAT, I THINK, LEADS INTO MY

21    POINT, WHICH IS THAT THE STATE OF CALIFORNIA HAS AN OBLIGATION.

22    THEY CAN DECIDE KIND OF WHAT PUBLIC SAFETY MEANS IN TERMS OF

23    HOW MANY PEOPLE THEY DECIDE THAT THEY WANT TO LOCK UP AND FOR

24    WHAT, RIGHT?

25            THE LIMIT ON THAT -- THE LIMIT ON THAT IS THE

1    CONSTITUTION.  THEY HAVE TO DO IT IN A CONSTITUTIONAL MANNER.

2    AND THE LAW SAYS, THE CONGRESS SAID, THAT IF THEY ARE NOT DOING

3    IT IN A CONSTITUTIONAL MANNER AND THE REASON FOR THAT IS

4    BECAUSE THERE ARE TOO MANY PEOPLE IN PRISON, WHICH OFTEN

5    HAPPENS, THAT'S WHY WE HAVE A LAW ON IT, YOU NEED TO LET

6    PEOPLE -- I MEAN, IT'S IN YOUR DISCRETION TO ISSUE A PRISONER

7    RELEASE ORDER.  AND I THINK THAT'S THE SITUATION WE HAVE HERE.

8           IF YOU ARE TALKING ABOUT LIFE AND LAW, THAT'S WHERE

9    WE ARE.

10          **JUDGE REINHARDT:**  WELL, I DON'T DISAGREE WITH THAT,

11   THAT WE HAVE AN OBLIGATION.  BUT I DON'T KNOW HOW YOU ARE

12   SUPPOSED TO WEIGH THOSE TWO THINGS.

13          YOU KNOW, THERE'S A CONSTITUTIONAL VIOLATION AND THE

14   PRISONS ARE OVERCROWDED, WHICH CAUSES A VIOLATION AND,

15   THEREFORE, UNDER THE CONSTITUTION YOU SHOULD REDUCE THE

16   POPULATION OF THE PRISONS.  THAT'S ALL TRUE.

17          AND THEN THEY SAY NOW CONSIDER THE FACT, YOU KNOW,

18   THAT IT'S GOING TO RESULT IN MORE CRIME.  WELL, WHAT DO YOU DO

19   WHEN YOU CONSIDER THAT FACT?

20          **MR. SPECTER:**  I'M GOING TO GIVE YOU --

21          **JUDGE KARLTON:**  IT ACTUALLY ISN'T THAT.  AND THIS

22   COMES BACK TO WHAT SEEMS TO ME AN IMPORTANT PIECE OF EVIDENCE,

23   WHICH I DIDN'T LEARN UNTIL I WAS IN THIS TRIAL, WHICH IS

24   AMAZING, WHICH IS KEEPING PEOPLE IN PRISON IS GOING TO MAKE

25   CRIME.

 1          AND IT ISN'T CLEAR AT ALL THAT LETTING PEOPLE OUT,

 2   EVEN IF IT WERE TO INCREASE CRIME, AND THAT'S -- I MEAN, THE

 3   PLAINTIFFS SAY IT WON'T.  BUT EVEN ASSUMING THAT, THAT THE

 4   INCREASE IN CRIME WOULD BE GREATER BY VIRTUE OF LETTING THEM

 5   OUT BEFORE THEY BECOME COMPLETELY CRIME ORIENTED AND HAVE NO

 6   OTHER WAY OF DEALING WITH LIFE.

 7          AND THAT, IT SEEMS TO ME, WHEN WE START TALKING ABOUT

 8   PUBLIC SAFETY, GETS TO BE A TRADE-OFF, THAT -- AT LEAST THERE'S

 9   A VERY SERIOUS ARGUMENT, IT TURNS OUT, THAT PUBLIC SAFETY ISN'T

10   GOING TO BE AFFECTED SIMPLY BECAUSE OF THE CONDITION OF THE

11   PRISONERS.

12          **JUDGE REINHARDT:**  LET ME ASK YOU ONE OTHER QUESTION

13   RELATED TO IT.

14          WE HEARD SEVERAL TIMES IN ARGUMENT, AND MAYBE IN THE

15   EVIDENCE, THAT PEOPLE AREN'T REALLY SENT TO PRISON UNTIL

16   THEY'VE COMMITTED A FAIR NUMBER OF CRIMES, THAT THEY'VE FLUNKED

17   PROBATION NUMEROUS TIMES.  THEY ARE PEOPLE WHO, IN EFFECT, ARE

18   REGULAR CRIMINALS BEFORE THEY GO TO PRISON.

19          IS THERE ANY CONTRARY EVIDENCE TO THAT?

20          **MR. SPECTER:**  IS THERE ANY CONTRARY EVIDENCE TO THAT?

21          WELL, I KNOW THAT THE EVIDENCE THAT YOU'VE HEARD IS

22   NOT DATA.  IT'S OPINION EVIDENCE.  IT'S FROM POLICE CHIEFS,

23   DISTRICT ATTORNEYS, LAW ENFORCEMENT OFFICERS.  WHAT THEY DIDN'T

24   DO IS SUPPORT IT WITH DATA SHOWING THAT.

25          AND I DO KNOW, AND YOU CAN LOOK AT -- YOU CAN TAKE

1  JUDICIAL NOTICE OF IT, THAT THERE ARE MANY CRIMES IN THE STATE

2  OF CALIFORNIA WHICH ARE -- YOU KNOW, USE A GUN, GO TO PRISON.

3  THERE ARE MANDATORY PRISON SENTENCES.

4          IT IS TRUE AND I BELIEVE -- GO AHEAD.

5          **JUDGE KARLTON:**  NO.

6          **MR. SPECTER:**  JERRY HARPER.  THERE ARE A LOT MORE

7  PEOPLE -- THERE ARE A LOT OF PEOPLE ON PROBATION AND IF THEY

8  VIOLATE PROBATION, THEN THEY GO TO PRISON.

9          AND ONE OF THE WAYS THAT JERRY POWERS, THE PROBATION

10 OFFICER FROM STANISLAUS COUNTY, SAID YOU COULD REDUCE THE

11 PRISON POPULATION IS IF YOU ACTUALLY GAVE THEM SERVICES ON

12 PROBATION AND HAVE INTENSIVE SUPERVISION, THEN COULD YOU REDUCE

13 THE PROBATION VIOLATIONS, WHICH WOULD THEREBY REDUCE THE PRISON

14 POPULATION.  AND WE SUPPORT ALL THAT.

15         **JUDGE KARLTON:**  SEE, THIS GOES BACK -- I MEAN, IT'S

16 AS IF THERE IS NO ANSWER BECAUSE IT'S THE SAME -- THERE IS NO

17 MONEY.  THERE IS NO MONEY.

18         **MR. SPECTER:**  WELL, THERE IS MONEY.  I MEAN, I AGREE

19 WITH MR. MITCHELL, THERE IS MONEY.  IT'S A POLITICAL DECISION

20 ON WHERE YOU ALLOCATE IT.

21         AND THE QUESTION IS, FOR EXAMPLE -- AND TO GET BACK

22 TO JUDGE REINHARDT'S QUESTION, THE 32 COUNTIES HAVE BEEN

23 OPERATING WITH A POPULATION CAP FOR YEARS AND YEARS AND YEARS.

24 THAT'S THE INTERVENOR'S EVIDENCE.

25         WELL, FOR THE MOST PART THEY RATHER WOULD LIVE WITH

1   THAT CAP THAN SPEND THE MONEY TO BUILD A NEW JAIL.  THAT'S

2   WHERE WE ARE -- THAT'S THE SAME SITUATION WHERE WE ARE IN THE

3   STATE.

4          THEY WOULD RATHER FACE THE CONSEQUENCES OF A PRISONER

5   RELEASE ORDER THAN PROVIDE ADEQUATE HEALTHCARE OR BUILD, LIKE

6   YOU SAID IN THE BEGINNING, A THOUSAND NEW PRISONS.  IF THEY

7   CAME IN AND SAID WE ARE GOING TO BUILD A THOUSAND NEW PRISONS,

8   WE ARE GOING TO HIRE 200 -- YOU KNOW, 500 MORE DOCTORS, OR

9   WHATEVER IT IS AND, YOU KNOW, THEY DID IT, WE WOULDN'T BE HERE.

10         BUT THE FACT OF THE MATTER IS, THE POLITICS OF THE

11  SITUATIONAL ALLOCATES ONLY A CERTAIN AMOUNT OF MONEY TO

12  CRIMINAL JUSTICE, AND SOME OF THAT IS IN PRISONS AND SOME OF

13  THAT IS POLICE AND DISTRICT ATTORNEYS.

14         THE FACT OF THE MATTER IS THAT YOU CAN'T LOCK UP

15  EVERY SINGLE PERSON WHO COMMITS A FELONY IN THIS STATE.  YOU

16  CAN'T DO IT.  THERE IS NOT ENOUGH FUNDS.  THERE'S NOT SPACE.

17  THERE IS NOT ENOUGH MONEY PROBABLY.

18         SO WHAT WE HAVE IS A FINITE AMOUNT OF RESOURCES IN

19  PRISON AND THE QUESTION -- AND NOW THAT THAT FINITE RESOURCE IS

20  FULL, THE QUESTION --

21         **JUDGE KARLTON:**  OVERFULL.

22         **MR. SPECTER:**  THANK YOU.  OVERFULL.

23         THE QUESTION FOR THE STATE BECOMES:  HOW ARE THEY

24  GOING TO ALLOCATE THOSE SCARCE RESOURCES SO AS TO MAKE THE

25  PUBLIC MOST SAFE?

1           AND THAT'S WHAT THEY CAN DO.  THAT'S WHAT THE

2    COUNTIES HAVE BEEN DOING.  THAT'S WHAT OTHER STATES HAVE BEEN

3    DOING.  AND THAT'S WHAT AN ORDER FROM THIS COURT WILL FINALLY

4    FORCE THEM TO DO.

5           WHICH BRINGS ME BACK TO ANSWER YOUR QUESTION ABOUT

6    THE FUNDING, I THINK, WHICH IS THAT YOU ASKED US -- YOU SAID

7    YOU WERE GOING TO ASK US TO PROVIDE YOU WITH AUTHORITY ABOUT

8    HOW THE STATE -- WHETHER THE STATE HAS THE AUTHORITY -- I'M

9    SORRY.  I'M GETTING MIXED UP.

10           WHETHER THE COURT HAS THE AUTHORITY TO ORDER THE

11   STATE TO PROVIDE FUNDS.  YOU CAN DO THAT AND WE WILL BE HAPPY

12   TO RESPOND --

13           **JUDGE REINHARDT:**  YES, WE WILL.

14           **JUDGE KARLTON:**  WE ARE GOING TO HAVE TO HAVE

15   BRIEFING.

16           **MR. SPECTER:**  BUT LET ME SUGGEST TO YOU -- AND WE

17   WILL ANSWER IT REGARDLESS OF MY ANSWER, OF COURSE, BUT LET ME

18   SUGGEST TO YOU THAT THAT QUESTION IS PREMATURE.  AND I WOULD

19   LIKE TO EXPLAIN WHY I THINK THAT.

20           **JUDGE REINHARDT:**  WHETHER IT'S PREMATURE OR NOT, WE

21   WOULD STILL LIKE TO KNOW THE ANSWER AND YOU'RE STILL GOING TO

22   GIVE US THE ANSWER.

23           **MR. SPECTER:**  THAT'S FINE.  BUT WHAT YOU DO WITH IT

24   -- IF IT'S PREMATURE, WHAT YOU DO WITH THAT ANSWER, IT IS

25   RELEVANT.  I'M GOING TO SAY IT'S RELEVANT.

1          **JUDGE REINHARDT:**  TELL US WHAT THE ANSWER IS AND WHY

2    IT'S PREMATURE, IF THAT WILL MAKE YOU HAPPY.

3          **MR. SPECTER:**  MY POINT IS, IF YOU ADOPT OUR

4    SUGGESTION AND ORDER A PLAN, THE STATES COME UP WITH A PLAN,

5    WHAT WE DON'T KNOW IS WHAT THE STATE WILL DO IN RESPONSE TO

6    THAT ORDER.  AND IT DOESN'T SEEM TO ME PARTICULARLY APPROPRIATE

7    TO SPECULATE --

8          **JUDGE REINHARDT:**  WE ARE NOT SPECULATING.  WE WOULD

9    LIKE TO KNOW WHAT OUR AUTHORITY IS.

10          **MR. SPECTER:**  I KNOW, AND WE WILL PROVIDE THAT TO

11   YOU.

12          BUT REGARDLESS OF WHAT YOUR AUTHORITY IS, THE STATE

13   WOULD COME UP WITH A PLAN.  AND I'M NOT SO SURE IT'S THAT --

14   IT'S THAT LIKELY THAT THE PLAN WILL BE AS INSUFFICIENT AS SOME

15   OF THEIR OTHER PLANS HAVE BEEN IN THE PAST.  AND LET ME TELL

16   YOU WHY.

17          THE REASON WHY I SAY THAT IS THE GOVERNOR, AS A

18   DEFENDANT IN THIS CASE, HAS COME UP WITH POPULATION REDUCING

19   PROPOSALS WHICH ARE CONSISTENT WITH THE ONES -- AND HE'S MADE

20   THEM PUBLICLY IN HIS BUDGET PROPOSAL.

21          **JUDGE REINHARDT:**  FOR HOW MANY PRISONERS?

22          **MR. SPECTER:**  WELL, HIS FIRST ONE WAS TO RELEASE

23   NON-VIOLENT, NON-SERIOUS, NON-SEX OFFENDERS, BLAH, BLAH, BLAH,

24   20 MONTHS EARLIER, WHICH WOULD HAVE REDUCED THE POPULATION BY

25   22,000.  THAT SINGLE THING ALONE WOULD HAVE TAKEN 22,000

1 AVERAGE DAILY POPULATION, ACCORDING TO THE GOVERNOR'S FIGURES.

2          OTHER THINGS HE HAS PROPOSED, SUMMARY PAROLE.

3 CERTAIN PEOPLE CAN'T BE RETURNED TO PRISON FOR NON-FELONY

4 OFFENSES OR TECHNICAL -- YOU KNOW, OR TECHNICAL PAROLE

5 VIOLATIONS.  HE SAID TO DIVERT SOME OF THESE PEOPLE.

6          THE GOVERNOR HAS SAID WE SHOULD EXPAND GOOD TIME

7 CREDITS.  AS YOU HEARD MATT CATE TESTIFY, THAT PROPOSAL WOULD

8 REDUCE THE NUMBER OF PEOPLE IN PRISON.  AND HE TALKED ABOUT

9 INCREASING THE STEPS TOWARD THRESHOLD FOR CERTAIN THEFT CRIMES,

10 WHICH WOULD ESSENTIALLY DIVERT PEOPLE FROM PRISON TO PROBATION

11 BY MAKING THEM MISDEMEANORS.

12          **JUDGE KARLTON:**  A GREAT MANY OF THOSE THINGS REQUIRE

13 LEGISLATIVE ACTION.  I KNOW WHERE YOU ARE GOING.  JUST HANG ON

14 A SECOND.

15          WE KNOW THAT THE CHANCES OF THE LEGISLATURE ACTING IN

16 A RATIONAL FASHION ARE NOT VERY GOOD, WHICH MEANS THEN WE COME

17 BACK TO WHETHER THIS COURT CAN ORDER ALL OF THOSE THINGS.  EVEN

18 IF THE GOVERNOR SAYS, LOOK, THAT'S OUR PLAN, BUT, YOU KNOW,

19 WE'VE GOT TO GO TO THE LEGISLATURE AND WAIT ANOTHER YEAR WHILE

20 THE LEGISLATURE PIDDLES AROUND.  AND WE SAY, NO, WE CAN'T WAIT

21 ANOTHER YEAR.

22          IS IT YOUR VIEW THAT IF THAT OCCURS, THE COURT CAN

23 THEN ORDER THOSE THINGS TO BE DONE AS A WAY OF ACHIEVING THE

24 POPULATION REDUCTION WHICH -- ASSUMING THAT WE THINK THAT IS

25 NECESSARY?

1          **MR. SPECTER:** THE SHORT ANSWER IS A THREE LETTER

2   WORD.  YES.  AND LET ME EXPLAIN WHY THAT IS IMPORTANT.

3          THE LEGISLATURE IS IN SESSION NOW AND TIMING IS

4   IMPORTANT IN THIS INSTANCE.  THEY GO OUT, AS YOU KNOW, IF THEY

5   PASS A BUDGET, WHICH WHO KNOWS WHETHER THAT IS EVER GOING TO

6   HAPPEN.  THEY GO OUT OF SESSION IN, YOU KNOW, JULY, AND THEY

7   COME BACK IN AUGUST FOR A MONTH OR SO.

8          SO ALL THAT HAS TO -- IF THEY ARE GOING TO BE -- IF

9   THE LEGISLATURE IS GOING TO BE COOPERATIVE, WE NEED TO FIND

10  THAT OUT NOW, RELATIVELY SPEAKING.

11         SECOND OF ALL, THE ANSWER -- THE REASON I SAY YES IS

12  BECAUSE THE WAY THE SUPREME COURT HAS SET IT OUT IS THAT

13  DEFENDANTS COME UP WITH A PLAN.  THEY PRESENT IT TO YOU, WITH

14  OBJECTIONS OR NOT.  HOPEFULLY, WE CAN WORK IT OUT, MAYBE NOT.

15  AND THEN REGARDLESS OF WHETHER THE LEGISLATURE -- THE PLAN HAS

16  TO BE APPROVED BY THE COURT AND ORDERED BY THE COURT.  AND WE

17  PUT IN OUR PROPOSED FINDINGS A STATEMENT SAYING THAT IF THE

18  STATE NEEDS A WAIVER OF STATE LAW TO ACCOMPLISH THAT PLAN, THAT

19  IT SHOULD PRESENT THOSE REQUESTS TO THE COURT.

20         SO THE WAY I ENVISION IT HAPPENING IS, THE GOVERNOR

21  WOULD -- YOU WOULD -- IF YOU ACCEPT OUR REQUEST, YOU WOULD SAY

22  THIS IS THE CAP, YOU HAVE TO MEET THIS, PRESENT A PLAN.  THE

23  GOVERNOR WOULD DEVELOP A PLAN.  HE WOULD SEE IF THE LEGISLATURE

24  AGREES WITH IT IN A SPEEDY FASHION.

25         AND THEN IF THEY DON'T, THEN HE WOULD COME TO YOU AND

```
 1  SAY, HERE IS MY PLAN AND WE NEED THE FOLLOWING WAIVERS OF STATE

 2  LAW IN ORDER TO ACCOMPLISH IT AND THIS IS WHY.

 3         AND THEN MR. KAUFHOLD COULD GET UP AND OBJECT TO

 4  THAT.

 5         BUT THAT'S THE WAY IT NEEDS TO WORK.  THAT'S THE WAY

 6  I THINK IT'S SUPPOSED TO WORK.

 7         JUDGE REINHARDT:  DID YOU ANSWER THE QUESTION ABOUT

 8  WHETHER WE CAN ORDER THE EXPENDITURE OF STATE FUNDS?

 9         MR. SPECTER:  I ANSWERED IT YESTERDAY.

10         JUDGE REINHARDT:  I THOUGHT YOU SAID --

11         JUDGE KARLTON:  HE IS GOING TO DO IT IN WRITING.

12         MR. SPECTER:  THE REASON I'M SAYING IT'S PREMATURE --

13  AND I FORGOT TO GET TO THAT POINT.

14         THE REASON I'M SAYING IT'S PREMATURE IS BECAUSE I

15  BELIEVE ONCE -- YOU SEE, UP UNTIL NOW EVERYBODY HAS BEEN ABLE

16  TO NOT HAVE TO MAKE THE HARD CHOICES.

17         IF THE COURT ISSUES AN ORDER, IT WILL BE APPARENT

18  THAT HARD CHOICES ARE GOING TO HAVE TO BE MADE AND THE

19  POLITICAL PROCESS CAN -- THE INTERVENORS CAN -- THAT WILL BE

20  THEIR TIME TO PRESSURE THE GOVERNOR AND THE LEGISLATURE TO

21  PROVIDE THE FUNDS.

22         AND IF THEY DO PROVIDE THE FUNDS, YOU DON'T HAVE TO

23  REACH THE ISSUE OF WHETHER THE COURT NEEDS TO DO IT.  IF THEY

24  DON'T, THEN YOU NEED TO DECIDE.

25         JUDGE REINHARDT:  IF THE LEGISLATURE DOES ALL THE
```

1  THINGS THAT THEY CAN DO AND THE GOVERNOR DID THEM, WE WOULDN'T

2  HAVE HAD TO HAVE A TRIAL AT ALL.

3           JUDGE KARLTON:  EXACTLY.

4           MR. SPECTER:  THAT'S TRUE.  BUT ONCE YOU ISSUE AN

5  ORDER SAYING THEY HAVE TO COME UP WITH A PLAN, THE SCENERY HAS

6  CHANGED.

7           JUDGE REINHARDT:  THEN WE ARE IN NIRVANA.

8           MR. SPECTER:  HUH?

9           JUDGE REINHARDT:  THEN WE ARE IN NIRVANA AS SOON AS

10 WE ISSUE THE ORDER.

11          MR. SPECTER:  NO, YOU ARE NOT IN NIRVANA, BUT YOU ARE

12 IN A DIFFERENT PLACE.  YOU ARE IN A DIFFERENT PLACE.

13          JUDGE REINHARDT:  OKAY.  ANYTHING ELSE?

14          MR. SPECTER:  YOU UNDERSTAND WHAT I'M SAYING.

15          JUDGE REINHARDT:  WHAT?

16          MR. SPECTER:  YOU UNDERSTAND WHAT I'M SAYING.

17          A COUPLE MORE POINTS.  YOU TALKED ABOUT TWO YEARS

18 ISN'T A MAGIC NUMBER.  WELL, THERE ARE -- YOU KNOW, TWO YEARS

19 AND 50,000 PEOPLE.  I JUST WANT TO EMPHASIZE THAT YOU HAVE THE

20 AUTHORITY TO ORDER 52,000 PEOPLE RELEASED NOW.

21          WHEN WE GAVE YOU TWO YEARS, WE DIDN'T PICK IT

22 ARBITRARILY.  WE ASKED OUR EXPERTS WHETHER OR NOT IT WAS A

23 REASONABLE PERIOD OF TIME IN WHICH TO ACCOMPLISH THIS.  THEY

24 SAID IT WAS.  AND WE --

25          JUDGE HENDERSON:  AS A PRACTICAL MATTER OR A PUBLIC

1  SAFETY MATTER?

2         **MR. SPECTER:**  AS A PUBLIC SAFETY MATTER AND AS A

3  PRACTICAL MATTER.

4         IN FACT, SOME OF THE TESTIMONY YOU HEARD SAID SOME OF

5  THESE PLANS COULD BE DEVELOPED IN A FEW MONTHS, PERIOD.  AND

6  THEN IMPLEMENTING THEM WOULD BE DONE OVER TWO YEARS.

7         WE WEREN'T GIVING YOU A NUMBER.  YOU KNOW, IF WE

8  WANTED A -- WE WEREN'T PLANNING -- WE WEREN'T NEGOTIATING.  I

9  MEAN, WE WEREN'T GIVING YOU A LONE -- WE TRY TO BE REASONABLE

10 AND GIVE YOU A FAIR NUMBER RIGHT NOW, NOT AN UNREALISTIC

11 NUMBER.

12        AND, FINALLY, THERE IS NO EVIDENCE TO THE CONTRARY

13 THAT IT CAN'T BE DONE SAFELY IN TWO YEARS.

14        IN TERMS OF THE 130 PERCENT ISSUE, WE AGREE WITH YOUR

15 COMMENTS YESTERDAY THAT IT'S NOT AN EXACT SCIENCE.  BUT WHAT IT

16 IS, IS A CONSENSUS AMONG EXPERTS THAT WE'VE USED AND, AS MR.

17 BIEN SAID, JEANNE WOODFORD, WHO RAN THE PRISON SYSTEM AND WHO

18 WORKED THERE 28 YEARS, THINKS IT'S A REASONABLE NUMBER AND WILL

19 GET US TO WHERE WE WANT TO GO.  IT SEEMS TO ME THAT'S A PRETTY

20 RELIABLE PIECE OF EVIDENCE UPON WHICH TO BASE A DECISION.

21        SECONDLY, YOU KNOW, THERE IS NO OTHER NUMBER OUT

22 THERE.  THE STATE HAD THE OPPORTUNITY, AS YOU ASKED THEM TO DO

23 SEVERAL TIMES, TO COME UP WITH A NUMBER AND THEY DIDN'T.  AND

24 MR. CATE TESTIFIED THAT THEY WANTED TO REDUCE THE POPULATION,

25 BUT HE DIDN'T EVEN HAVE A NUMBER IN MIND IN WHICH HE WANTED TO

1   REDUCE IT TO.

2            SO THE SHORT ANSWER IS THE STATE DOESN'T KNOW HOW

3   MUCH THEY WANT TO REDUCE IT TO AND THEY DON'T WANT, APPARENTLY,

4   TO PRESENT ANY EVIDENCE ABOUT WHAT ANOTHER NUMBER SHOULD BE.

5            SO I THINK THAT WE HAVE SATISFIED OUR BURDEN ON THAT

6   ISSUE, AND THAT THERE IS NO CONTRARY EVIDENCE.

7            SECONDLY, THIS IS AN INJUNCTION.  IT'S NOT A MONETARY

8   JUDGMENT.  AND AS JUDGE HENDERSON AND JUDGE KARLTON KNOWS,

9   INJUNCTIONS ARE KIND OF LIVING DOCUMENTS.  THEY ARE SUBJECT TO

10  MODIFICATION --

11           **JUDGE REINHARDT:**  LIKE THE CONSTITUTION.

12           **MR. SPECTER:**  EXCEPT IT'S NOT QUITE SO HARD TO AMEND.

13           **JUDGE KARLTON:**  ALL YOU NEED IS FIVE MEMBERS OF THE

14  COURT.

15           **MR. SPECTER:**  SO IF IT TURNS OUT THAT THIS NUMBER --

16  IT'S OUR BEST ESTIMATE BASED ON THE EVIDENCE.  IF IT TURNS OUT

17  THIS NUMBER IS NOT THE BEST NUMBER, BASED ON CHANGED

18  CIRCUMSTANCES OR HOW THINGS DEVELOP, IT CAN BE MODIFIED OVER

19  TIME.  AND WE --

20           **JUDGE KARLTON:**  THAT'S A VERY IMPORTANT ISSUE FOR US.

21  IN THE UNDERLYING CASES THERE IS A SINGLE JUDGE DOING WHAT

22  JUDGES DO.  WHAT WE ARE DOING HERE IS EXTRAORDINARY.

23           AND LET ME ASSURE YOU, YOU KNOW, JUDGE REINHARDT

24  DOESN'T WANT TO COME BACK EVERY THREE MONTHS, OR AT ALL.

25           AND THAT IS, I FIND, TROUBLING.  IF IT WERE MY ORDER,

 1  I WOULD FEEL COMFORTABLE SAYING IF IT TURNS OUT WE ARE WRONG,

 2  WE WILL DO SOMETHING ELSE.

 3          IT'S NOT AT ALL CLEAR TO ME WHAT HAPPENS IN A

 4  THREE-JUDGE COURT IF WE MAKE A MISTAKE.

 5          **MR. SPECTER:**  WELL, I WOULDN'T SAY IT WOULD BE A

 6  MISTAKE.

 7          **JUDGE REINHARDT:**  WE GET REVERSED.

 8          (LAUGHTER.)

 9          **JUDGE REINHARDT:**  YOU GET REVERSED FOR OTHER REASONS.

10          **JUDGE KARLTON:**  THE REAL QUESTION HERE IS, YOU KNOW,

11  TRYING TO MAKE GOOD ON OUR DUTY, AND UNDERSTANDING THAT THIS IS

12  A TEMPORARY COURT ESTABLISHED UNDER A VERY PARTICULAR

13  PROCEDURE.

14          **MR. SPECTER:**  RIGHT.  AND I AGREE WITH YOU

15  COMPLETELY.  BUT I'M GOING TO FALL BACK ON MY OTHER ANSWER.

16  THAT'S A QUESTION THAT'S A LITTLE PREMATURE.  IF WE GET TO THAT

17  POINT --

18          **JUDGE REINHARDT:**  LET'S GO ON TO YOUR NEXT POINT.

19          **MR. SPECTER:**  YES, GREAT.

20          **JUDGE KARLTON:**  WAS THERE ANOTHER POINT?  GO AHEAD.

21          **MR. SPECTER:**  THERE WAS SOME ARGUMENT YESTERDAY ABOUT

22  WHETHER OR NOT YOU CAN DO A POPULATION WITHOUT INVOLVING SECOND

23  STRIKERS.  AND I JUST WANTED TO EMPHASIZE -- AND THEY SAY THE

24  EVIDENCE IS THAT YOU CAN'T.

25          BUT IN THE TRIAL, JUDGE REINHARDT, YOU ASKED THAT

1   VERY QUESTION, WHETHER A PLAN COULD BE DEVELOPED WITHOUT SECOND

2   STRIKERS.  AND DR. AUSTIN, AT PAGE 2570 SAYS:

3          "YES, THERE ARE OTHER ALTERNATIVES.  IT DEPENDS

4       ON A LOT OF FACTORS.  IT DEPENDS ON THE NUMBER THAT

5       COMES UP AND ALL THOSE KIND OF THINGS."

6          JUST WANTED TO CLARIFY THAT POINT.

7          THE OTHER LAST POINT I WANTED TO TALK ABOUT WAS THIS

8   ISSUE OF THE NARROWNESS OF THE ORDER THAT WOULD BE ISSUED.

9          MR. BIEN TALKED ABOUT MR. MITCHELL'S PROPOSAL.  I

10  DIDN'T UNDERSTAND IT EITHER.  TO CONCENTRATE ALL THE CLASS

11  MEMBERS INTO PARTICULAR PRISONS WHICH AREN'T OVERCROWDED AND

12  THEN TO COMPLETELY OVERCROWD EVERYBODY ELSE, I DON'T THINK THE

13  STATE COULD POSSIBLY OR WANT TO POSSIBLY DO THAT.

14         BUT EVEN IF THEY SOMEHOW DECIDED THAT WAS A GOOD

15  IDEA, IT WOULDN'T RESOLVE THE CONSTITUTIONAL PROBLEMS.  AND

16  THAT'S BECAUSE --

17         **JUDGE REINHARDT:**  I DON'T THINK WE HAVE TO SPEND TOO

18  MUCH TIME WITH IT.

19         **MR. SPECTER:**  OKAY, FINE.  GOOD.

20         THE OTHER POINT IS THAT MR. KAUFHOLD MADE THE SAME

21  POINT.  AND, YOU KNOW, ONE OF THE IMPLICATIONS OF THAT POINT IS

22  THAT THE COURT ORDERED THAT THE PLATA CLASS MEMBERS AND THE

23  COLEMAN CLASS MEMBERS BE RELEASED FIRST BECAUSE THEY ARE THE

24  ONES THAT ARE SUFFERING THE CONSTITUTIONAL HARM.

25         AND IF THAT IS THEIR POINT, THEN MENTALLY ILL PEOPLE

1   WOULD BE THE ONES, AND THE PEOPLE WHO ARE PLATA CLASS MEMBERS

2   WHO ARE SICK WOULD BE RELEASED.  AND THAT'S THE IMPLICATION OF

3   WHAT THEY ARE SAYING.

4          AND I DON'T THINK IT WOULD RESOLVE ALL THE

5   CONSTITUTIONAL OVERCROWDING PROBLEMS, BUT I JUST WANTED TO

6   POINT THAT OUT.

7          **JUDGE REINHARDT:**  THAT'S IT?

8          **MR. SPECTER:**  YES, SIR.

9          **JUDGE REINHARDT:**  THANK YOU.  THE INTERVENORS?

10         **MS. LEONARD:**  NO, YOUR HONOR.

11         **JUDGE REINHARDT:**  WELL, IT LOOKS LIKE WE ARE AT THE

12  END OF THE ARGUMENT.

13         I HAVE TWO COMMENTS I WOULD LIKE TO MAKE AND THEN

14  I'LL ASK MY COLLEAGUES TO MAKE WHATEVER COMMENTS THEY HAVE,

15  ALTHOUGH I HOPE THAT MY REMARKS WILL REFLECT MY COLLEAGUES'

16  VIEWS AS WELL.  THOUGH, YOU HAVE MAY HAVE NOTED, WE ARE NOT

17  ALWAYS IN COMPLETE AGREEMENT ON ALL OF THE ISSUES, BUT I CAN

18  ASSURE YOU THAT BEFORE THIS IS OVER WE WILL BE IN COMPLETE

19  AGREEMENT BECAUSE THIS CASE IS TOO IMPORTANT FOR US NOT TO.

20         I WANT TO THANK THE LAWYERS FOR THEIR VIGOROUS AND

21  EFFECTIVE PRESENTATIONS.  WE MAY HAVE APPEARED TO BE CRITICAL

22  OF YOU SOMETIMES, EVEN HARSH ON OCCASION.  AND I WILL DEFER TO

23  JUDGE KARLTON, WHO MAY HAVE A FEW FURTHER REMARKS.  BUT I THINK

24  IT'S MORE REFLECTIVE OF OUR FRUSTRATION OVER THE DIFFICULTY, IF

25  NOT THE IMPOSSIBILITY, OF ATTEMPTING TO RESOLVE THE TREMENDOUS

1  PROBLEMS WE ALL FACE THAN IT IS OF YOUR PERFORMANCE.  I THINK

2  YOU ALL DID VERY WELL.

3           NOW IS THE TIME, HOWEVER, FOR A DIFFERENT VIEW OF AN

4  ISSUE THAT HAS BEEN HARD FOUGHT IN THE COURTROOM.  ALTHOUGH WE

5  ALL BELIEVE IN THE ADVERSARY SYSTEM, IN THE END THE

6  OVERWHELMING PROBLEM OF WHAT TO DO ABOUT THE CRISIS IN OUR

7  PRISON SYSTEM IS BEST RESOLVED THROUGH THE POLITICAL PROCESS.

8  IF WE HAVE TO RESOLVE IT, I ASSURE YOU, WE WILL.

9           IN THAT REGARD, WE WILL SHORTLY GIVE YOU OUR

10 TENTATIVE VIEWS OF THE ISSUES IN THIS PROCEEDING TO PROVIDE YOU

11 WITH SOME GUIDANCE AS TO HOW WE WILL RESOLVE THIS PROBLEM IF WE

12 ARE COMPELLED TO DO SO.

13          PERHAPS THESE VIEWS WILL ENCOURAGE YOU OR IN SOME

14 CASES YOUR CLIENTS TO COME TO YOUR SENSES AND SETTLE THIS

15 PROBLEM IN THE MANNER THAT PROBLEMS OF THIS NATURE SHOULD BE

16 RESOLVED, BY THE LEGISLATIVE AND EXECUTIVE BRANCHES OF

17 GOVERNMENT, NOT BY THE COURTS.

18          YOU HAVE HEARD WITNESSES AND EVEN JUDGES AT TIMES

19 TALK ABOUT A CRISIS OF LEADERSHIP.  BELIEVE ME, WE ARE WELL

20 AWARE OF THE INTERVENING ECONOMIC CRISIS THAT NOW CONFRONTS OUR

21 STATE.  BUT WITH TRUE POLITICAL LEADERSHIP THERE IS NO CRISIS

22 THAT CANNOT BE OVERCOME.

23          LET ME BE BLUNT.  I KNOW, AND MY COLLEAGUES KNOW,

24 MOST OF THOSE WHO MUST PROVIDE THAT LEADERSHIP WELL.  I WELL

25 KNOW FROM PERSONAL EXPERIENCES THAT THE GOVERNOR AND THE

1    ATTORNEY GENERAL BOTH HAVE THE CAPACITY TO PROVIDE THAT

2    LEADERSHIP HERE.  THEY ARE BOTH EXTREMELY CAPABLE AND

3    KNOWLEDGEABLE INDIVIDUALS.  ALL THEY NEED IS THE WILL AND

4    PERHAPS SOME ENCOURAGEMENT FROM ALL OF US, WISDOM TO LAY ASIDE

5    POLITICS AND PERSONAL CONSIDERATIONS.

6              THE PRISON PROBLEM IS SIMPLY TOO IMPORTANT TO THE

7    STATE AND THE PEOPLE FOR US TO TOLERATE FAILURE FOR ANY SUCH

8    REASON.

9              I SHOULD ADD THAT WE HAVE BEEN ENCOURAGED BY THE

10   APPEARANCES IN THE COURTROOM OF SOME OF THE REPUBLICAN

11   LEGISLATORS WHO HAVE APPEARED.  THEIR COOPERATION IS ALSO

12   NECESSARY.  AND WE BELIEVE THAT THEY, TOO, CAN PROVIDE THE

13   NECESSARY LEADERSHIP.

14             WE ALSO KNOW THAT THE VARIOUS BRANCHES OF GOVERNMENT

15   HAVE NOT WORKED WELL TOGETHER IN CALIFORNIA IN RECENT TIMES.

16   PUT THAT BEHIND YOU AS WELL.  DON'T RISK THE PUBLIC SAFETY FOR

17   PARTISAN CONSIDERATIONS.

18             NOW, WE HAVE HEARD MUCH TESTIMONY, AS WELL AS

19   IMPASSIONED PLEADING BY COUNSEL, REGARDING THE PUBLIC SAFETY.

20   THAT ISSUE HAS WEIGHED ON THE MINDS AND HEARTS OF ALL THREE OF

21   US THROUGHOUT THESE PROCEEDINGS.  IT WILL CONTINUE TO DO SO IF

22   WE ARE COMPELLED TO RESOLVE THIS LAWSUIT.

23             IF YOU ARE ALL EQUALLY CONCERNED, YOU WILL FIND A

24   SOLUTION THAT IS IN THE BEST INTERESTS OF THE PEOPLE.

25             WE HAVE COME TO THE END OF THE ROAD.  NOW IT'S TIME

1   FOR YOU AND YOUR CLIENTS TO DO YOUR JOB.  AND THE EVIDENCE

2   BROUGHT FORTH OR NOT BROUGHT FORTH IN THE TRIAL SHOULD GIVE

3   BOTH SIDES REASON TO DO SO.

4           AS TO WHERE WE ARE OTHERWISE, SHOULD WE CONCLUDE THAT

5   OVERCROWDING IS A PRIMARY CAUSE OF THE CONSTITUTIONAL

6   VIOLATIONS, AND WE HEARD MUCH EVIDENCE TO THAT EFFECT, AND

7   SHOULD WE CONCLUDE THAT NO OTHER ORDER THAT WE CAN ISSUE WILL

8   REMEDY THE CONSTITUTIONAL VIOLATIONS, WE WILL, WHILE

9   CONSIDERING THE EFFECT UPON PUBLIC SAFETY, BE REQUIRED TO GIVE

10  THE MOST SERIOUS CONSIDERATION TO ISSUING A PRISONER RELEASE

11  ORDER.

12          NOW, AS ALL THE LAWYERS HERE KNOW, THAT DOES NOT MEAN

13  NECESSARILY AN ORDER TO RELEASE PRISONERS.  THE TERM "PRISONER

14  RELEASE ORDER" ENCOMPASSES A FAR BROADER VARIETY OF POSSIBLE

15  ORDERS.  ORDERS THAT WILL SERVE TO LIMIT THE PRISON POPULATION

16  OVER A REASONABLE PERIOD OF TIME.  ORDERS RANGING FROM THOSE

17  CONTROLLING INTAKE TO ORDERS ADOPTING PLANS FOR ESTABLISHING

18  MORE EFFECTIVE INTERNAL PROGRAMS LEADING TO ACCELERATED RELEASE

19  DATES.  AN ORDER, OF COURSE, MAY BE AS SIMPLE AS A POPULATION

20  CAP.

21          WHATEVER THE METHOD, HOWEVER, IF WE MAKE THE

22  DETERMINATIONS THAT I HAVE LISTED ABOVE, WE CANNOT SIMPLY

23  IGNORE THE EGREGIOUS CONSTITUTIONAL VIOLATIONS THAT HAVE LASTED

24  FOR SO LONG.  WE CANNOT PERMIT THOSE UNCONSTITUTIONAL

25  CONDITIONS TO CONTINUE INDEFINITELY.

1          JUDGES KARLTON AND HENDERSON HAVE EXHIBITED

2    REMARKABLE PATIENCE.  I DOUBT THAT THERE ARE MANY JUDGES WHO

3    WOULD HAVE BEEN SO TOLERANT.  77 ORDERS ARE ENOUGH.  WE URGE

4    YOU NOT TO MAKE THIS ISSUE THE 78TH.

5          WITH THOSE WORDS, MAY WE THANK YOU ALL AGAIN.  I HOPE

6    THAT THE NEXT TIME WE ARE TOGETHER IT WILL BE SO THAT YOU CAN

7    TELL US THAT CALIFORNIA'S LEADERS HAVE NOT ONLY RECOGNIZED THE

8    SERIOUSNESS OF THE CRISIS, BUT HAVE FINALLY AGREED TO TAKE THE

9    NECESSARY STEPS TO RESOLVE IT; NOT OVER A PERIOD OF FIVE TO TEN

10   YEARS, BUT NOW.

11         IF NOT, IT WILL BE FOR US, PERHAPS AFTER FURTHER

12   EXPLORATION OF SOME OF THE POSSIBLE REMEDIES, TO TELL YOU HOW

13   IT WILL BE RESOLVED.

14         I CANNOT POSSIBLY CONVEY TO YOU THE DEPTH OF OUR

15   RELUCTANCE TO DO IT THAT WAY, BUT IF YOU LEAVE US NO

16   ALTERNATIVE, WE WILL.

17         I THANK YOU ALL ONCE MORE AND NOW I ASK MY COLLEAGUES

18   IF THEY WISH TO ADD ANY ADDITIONAL COMMENTS OF THEIR OWN.

19         JUDGE KARLTON?

20         **JUDGE KARLTON:**  JUDGE REINHARDT'S ELOQUENCE COVERS

21   THE ISSUE.

22         THOSE OF YOU WHO HAVE APPEARED IN MY COURT IN COLEMAN

23   KNOW HOW MUCH I BELIEVE THIS IS THE STATE'S RESPONSIBILITY AND

24   THAT WE ACT ONLY WHEN THE STATE HAS DEMONSTRATED AN INABILITY

25   TO COME TO GRIPS WITH THE PROBLEM, AND EVEN THEN RELUCTANTLY.

1        IT IS SO CLEAR THAT THE POLITICAL SITUATION HAS

2   DEFINED AND CREATED THIS CRISIS.  AND IT IS CLEAR TO ME, AS

3   JUDGE REINHARDT JUST SO ELOQUENTLY POINTED OUT, THAT IT IS THE

4   POLITICAL BRANCHES THAT HAVE THE RESPONSIBILITY TO SOLVE THE

5   PROBLEM THAT THEY CREATED.

6        AND, AGAIN, AS JUDGE REINHARDT SAID, WE WILL DO OUR

7   DUTY.  THAT'S WHAT WE ARE SWORN TO DO, BUT WE DO IT RELUCTANTLY

8   AND ONLY WHEN YOU HAVE DEMONSTRATED THAT THERE IS NOTHING ELSE

9   AND NO OTHER WAY TO PROCEED.

10        I JOIN JUDGE REINHARDT IN HIS PRAISE OF THE LAWYERS.

11   I FEEL COMPELLED TO TELL THE GOVERNOR'S LAWYERS I EXPECT THEM

12   TO REPRESENT THE GOVERNOR AND REPRESENT HIS POSITION.  I DON'T

13   EXPECT TO SEE DEVIATIONS FROM THAT POSITION WHICH ARE NOT

14   JUSTIFIED IN SOME WAY.  THAT HAS NOT EMERGED CERTAINLY IN THIS

15   TRIAL.

16        **JUDGE REINHARDT:**  THANK YOU.

17        JUDGE HENDERSON?

18        **JUDGE HENDERSON:**  JUDGE REINHARDT, YOUR REMARKS

19   REFLECT MY COMMENTS AND MY THOUGHTS VERY ELOQUENTLY.  AND I

20   WILL JUST FOCUS ON ONE ASPECT OF YOUR COMMENTS ABOUT THE SHEER

21   FRUSTRATION THAT WE FEEL UP HERE AND THE VIGOROUS QUESTIONING I

22   THINK AS A RESULT OF THAT FRUSTRATION.

23        AND I WILL SAY PERSONALLY NOTHING IN MY 29 YEARS ON

24   THE BENCH HAS BEEN MORE FRUSTRATING THAN FEELING DRAGGED AND

25   KICKING AND SCREAMING INTO THE POLITICAL ARENA, INTO THE

 1  POLITICAL THICKET IN WHICH WE FIND OURSELVES.

 2         I HAVE THOUGHT MANY TIMES ABOUT WHERE WE ARE NOW AND

 3  WHERE I AM IN MY CAREER, AND I NOTE THAT I STARTED MY LEGAL

 4  CAREER 47 YEARS AGO DEALING WITH STATE -- SOUTHERN STATE

 5  INTERPOSITION TO FEDERAL ENFORCEMENT OF CIVIL RIGHTS.  AND ALL

 6  TOO OFTEN I FEEL I'M ENDING MY CAREER WITH THAT SAME PROBLEM.

 7         **JUDGE REINHARDT:**  WELL, LET'S HOPE JUDGE HENDERSON

 8  DOESN'T HAVE TO END HIS CAREER THAT WAY.  LET'S HOPE IT DOESN'T

 9  END FOR A LONG TIME.

10         AGAIN, THANK YOU ALL.  WE WILL BE TOGETHER AGAIN,

11  UNFORTUNATELY.  BUT FOR THE MOMENT THE COURT WILL STAND IN

12  RECESS.

13         **JUDGE KARLTON:**  NO, NO, BEFORE THAT...

14     (DISCUSSION HELD OFF THE RECORD.)

15         **JUDGE REINHARDT:**  ALL RIGHT.  THANK YOU AGAIN.  SEE

16  YOU SOON.

17     (WHEREUPON AT 11:13 A.M. FURTHER PROCEEDINGS

18      IN THE ABOVE-ENTITLED CAUSE WERE ADJOURNED.)

19

20                    -   -   -   -

21

22

23

24

25

1

2                              **I  N  D  E  X**

3

4                                                      **PAGE**      **VOL.**

5    Rebuttal Argument by Mr. Bien                      3102         16
     Rebuttal Argument by Mr. Specter                   3113         16

6

7

8                              –    –    –    –

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, DEBRA L. PAS, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 01-1351 MARCIANO PLATA VS ARNOLD SCHWARZENEGGER AND S-90-0520 RALPH COLEMAN VS ARNOLD SCHWARZENEGGER, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.


/S/ DEBRA L. PAS

DEBRA L. PAS, CSR 11916, CRR, RMR, RPR

WEDNESDAY, FEBRUARY 4, 2009