ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111-5994
Phone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, | No. CIV S 90-520 LKK-JFM |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | Date: June 4, 2009<br>Time: 11:00 a.m.<br>Place: Courtroom 26<br>Judge: Honorable John F. Moulds |

[282274-2]

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION ................................................................................................1

INTRODUCTION.......................................................................................................1

        1.     Enforcement of *Coleman* Remedy through the Three-Judge Panel Proceeding and Direct Uses of Three-Judge Panel Evidence in Subsequent Proceedings in *Coleman* ...........................2

        2.     Withholding of Payment for Out-of-Pocket Expenses Involving Both the Three-Judge Panel Trial and other *Coleman* Post-Judgment Work .........................................4

        3.     Defendants' Erroneous Theory Regarding Paralegal Rates ............4

PROCEDURAL HISTORY .........................................................................................5

STANDARD FOR RECOVERY OF ATTORNEYS' FEES AND COSTS ...............................6

ARGUMENT .............................................................................................................7

    I.     The Issue of Entitlement to Fees and Costs for Work Litigating Overcrowding Issues Has Already Been Litigated and Determined in Favor of the Plaintiff Class ........................................................7

    II.    Work Litigating Overcrowding Issues Before the Three-Judge Panel Is Reasonable and Necessary to Enforce the Injunction...........................9

    III.   Ruling on Entitlement to Reasonable Fees Sought in this Motion ......10

    IV.   Order for Immediate Payment of Disputed Costs Sought in this Motion; Plaintiffs Costs and Expenses Are Reasonable and Defendants Should Be Ordered To Pay Them Immediately.............................................13

        A.     Electronic Processing / Electronic Database Expenses .............14

        B.     Computerized Legal Research Expenses ..................................17

        C.     Outside and In-House Photocopying Costs ..............................18

        D.     Trial Graphics Consulting Expenses........................................19

        E.     Witness Fees, Deposition Transcripts and Trial Transcripts .....19

        F.     Other Miscellaneous Expenses ...............................................20

i

[282274-2]

1

2

V.    Plaintiffs' Paralegal Rates Are Reasonable and Are Not Subject to the PLRA Fee Cap ................................................................................................. 20

CONCLUSION ................................................................................................................ 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH
QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[282274-2]

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Davis,*
    318 F.3d 965 (9th Cir. 2003) ................................................................. 12

*Bjornson v. Dave Smith Motors/Frontier Leasing and Sales,*
    578 F. Supp. 2d 1269 (D. Idaho 2008) ................................................... 17

*Cummings v. Connell,*
    177 F. Supp. 2d 1079 (E.D. Cal. 2001) .................................................. 18

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ..................................................................... 14

*Hasbrouck v. Texaco, Inc.,*
    879 F.2d 632 (9th Cir. 1989) ............................................................. 7, 12

*In re PaineWebber Ltd. P'ships Litig.,*
    999 F. Supp. 719 (S.D.N.Y. 1998) ........................................................ 16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
    985 F. Supp. 410 (S.D.N.Y. 1997) ........................................................ 15

*In re Veeco Instruments Inc. Sec. Litig.,*
    No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. 2007)................. 15, 16

*Jenkins v. State of Missouri,*
    158 F.3d 980 (8th Cir. 1998) ................................................................. 14

*Karsian v. Inter-Regional Fin. Group, Inc.,*
    13 F. Supp. 2d 1085 (D. Colo. 1998)..................................................... 19

*L.H. v. Schwarzenegger,*
    No. CIVS-06-2042 LKK/GGH, 2009 WL 674345 (E.D. Cal. March 6, 2009) ................. 12

*Lockheed Martin Idaho Technologies Co. v. Lockheed Martin Advanced Envtl. Sys., Inc.,*
    No. 98-316-E-BLW, 2006 WL 2095876 (D. Idaho 2006) ...................... 16

*Madrid v. Gomez,*
    190 F.3d 990 (9th Cir. 1999) .......................................................... 3, 5, 7

*Northcross v. Bd. of Ed. of Memphis City Schs.,*
    611 F.2d 624 (6th Cir. 1979) ................................................................. 18

*Oberfelder v. City of Petaluma,*
    No. 98-1470(MHP), 2002 WL 472308 (N.D. Cal. 2002) ....................... 19

[282274-2]

*Richlin Security Service v. Chertoff,*
   128 S.Ct. 2007 (2008) ................................................................................................ 21

*Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.,*
   460 F.3d 1253 (9th Cir. 2006) ................................................................................... 17

*Webb v. Ada County,*
   285 F.3d 829 (9th Cir. 2002) ........................................................................... 7, 9, 12

*West Virginia Univ. Hosp. Inc. v. Casey,*
   499 U.S. 83 (1991) ...................................................................................................... 14

## **STATUTES**

42 U.S.C. § 1988 ................................................................................................... 14, 18

42 U.S.C. § 1997e(d) ................................................................................................. 5, 7

42 U.S.C. § 1997e(d)(1)(B)(ii) ...................................................................................... 6

42 U.S.C. § 1997e(d)(3) ............................................................................................... 21

## **RULES**

E.D. Local Rule 5-133(i) ......................................................................................... 16, 19

[282274-2]

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 4, 2009, at 11:00 a.m. or as soon thereafter as the matter may be heard in the United States District Court, 501 I Street, Sacramento, California, before the Honorable John F. Moulds, United States Magistrate Judge, in Courtroom 26, the plaintiff class will and hereby does move this Court for an order determining plaintiffs' entitlement to disputed attorneys' fees for the second, third and fourth quarters of 2008 and seeking immediate payment of all outstanding costs.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities filed herewith, the supporting declarations of Ernest Galvan, Edward P. Sangster, Richard M. Pearl, Jon B. Streeter, James W. Morando, Geoffrey T. Holtz, Joseph T. Anastasi, Paul Endo, Terrence Jones, and Marcia R. Gordon filed herewith, the exhibits attached thereto, the pleadings and papers on file in this matter, and such other evidence and arguments as may be presented to the Court at or before the time of the hearing.

**INTRODUCTION**

This motion concerns three disputed categories: (1) attorneys' fees for work performed during the second, third and fourth quarters of 2008 to enforce the *Coleman* injunction in the recently concluded three-judge panel trial; (2) compensation for over $712,000 in merits costs and $623 in costs related to fees proceedings advanced by plaintiffs' counsel since July of 2007; (3) reasonable paralegal rates.[1]

As shown in the following chart, plaintiffs have filed four motions to compel attorneys' fees and costs related to work performed before the three-judge court, three of which remain pending before this Court:

---

[1] As described below, plaintiffs also seek immediate payment of undisputed fees for paralegal work on non-three-judge panel matters.

[282274-2]

**Table 1, Motions to Compel in 2007 and 2008**

| Motion | Status |
|---|---|
| PLAINTIFFS' MOTION TO COMPEL DISPUTED ATTORNEYS' FEES AND COSTS FROM THE THIRD AND FOURTH QUARTERS OF 2006 (Docket No. 2325)<br><br>Filed July 25, 2007 | GRANTED IN PERTINENT PART<br><br>Sept. 11, 2007 (Docket No. 2397);<br><br>Oct. 5, 2007 (Docket No. 2451). |
| PLAINTIFFS' MOTION TO COMPEL DISPUTED ATTORNEYS' FEES AND COSTS FROM THE THIRD QUARTER OF 2007 (Docket No. 2708)<br><br>Filed March 10, 2008. | Under Submission Since<br><br>April 3, 2008 |
| PLAINTIFFS' MOTION TO COMPEL DISPUTED ATTORNEYS' FEES AND COSTS FROM THE FOURTH QUARTER OF 2007 (Docket No. 2821)<br><br>Filed June 16, 2008 | Under Submission Since<br><br>July 21, 2008 |
| PLAINTIFFS' MOTION TO COMPEL DISPUTED ATTORNEYS' FEES AND COSTS FROM THE FIRST QUARTER OF 2008 (Docket No. 2932)<br><br>Filed August 8, 2008 | Under Submission Since<br><br>September 11, 2008 |

    **1.    Enforcement of *Coleman* Remedy through the Three-Judge Panel Proceeding and Direct Uses of Three-Judge Panel Evidence in Subsequent Proceedings in *Coleman***

Contrary to the periodic fees order in this case, defendants have refused to pay plaintiffs' counsel for any work incurred enforcing the *Coleman* remedy via the three-judge panel since July of 2007, nearly two years ago. In failing to pay, defendants have defied[2] the District Court's October 5, 2007 Order, adopting this Court's Findings and Recommendations of September 11, 2007, that work performed to address overcrowding before the three-judge court is directly and reasonably incurred in enforcing the relief ordered in this case.

---

[2] Plaintiffs file this motion pursuant to Paragraph 4 of the Periodic Fees Order, which requires plaintiffs to file a yearly motion to compel payment of disputed items "not later than sixty (60) days after the parties meet and confer with respect to the statement covering the fourth quarter of each year." The parties concluded their meet and confer regarding fourth quarter fees and costs on March 26, 2009.

[282274-2]

1     Specifically, this Court found that "the fees and costs incurred by plaintiffs in connection with

2     their motion to convene a three-judge panel were 'directly and reasonably incurred in

3     enforcing the relief ordered'…in the district court's September 13, 1995 order." *Coleman*

4     Docket 2397 at 6. Defendants objected to the Findings and Recommendations on September

5     28, 2007. *Coleman* Docket 2438. The District Court's Order of October 5, 2007 adopted the

6     Findings and Recommendations on *de novo* review, after consideration of defendants'

7     objections and legal argument. *Coleman* Docket 2451 at 2.

8        In the intervening months, the three-judge court issued a tentative ruling stating the

9     three-judge court's intention to grant all of the relief plaintiffs sought during trial, further

10     establishing that plaintiffs' work before the three-judge panel was and is "directly and

11     reasonably incurred in enforcing the relief ordered" by the injunction in this case. *Madrid v.*

12     *Gomez,* 190 F.3d 990, 993-994 (9th Cir. 1999). In addition, plaintiffs' counsel made extensive

13     use of the facts disclosed in the three-judge panel trial to request an evidentiary hearing on

14     defendants' failures to provide adequate mental health beds for the plaintiff class. *Coleman*

15     Docket No. 3513. The evidence developed in the three-judge panel trial was central to

16     plaintiffs' presentation regarding the need for new bed planning orders. *Coleman* Docket No.

17     3545 (plaintiffs' objections to bed-plan filing, including numerous citations to trial testimony

18     and exhibits). The *Coleman* court issued a new bed plan order on March 31, 2009, directing

19     faster action on the process needed to close the gap between treatment needs and treatment

20     resources. *Coleman* Docket No. 3556. Plaintiffs' counsel expects that the factual record

21     developed in the three-judge panel proceeding will continue to inform enforcement efforts on

22     behalf of the class in the coming months and years.

23        Defendants still refuse to even meet and confer regarding the reasonableness of the fees

24     and costs sought, however, taking the position that a prevailing party standard should apply to

25     the fees and costs and not the "directly and reasonably incurred" standard set forth by the Ninth

26     Circuit and reaffirmed by this Court. *Madrid,* 190 F3d at 993-994; *Coleman* Docket 2397 at 4

27     (Judge Mould's Findings & Recommendations); *Coleman* Docket 2451 (adopting the

28     Magistrate's Findings & Recommendations in full).

[282274-2]

1
2

**2.    Withholding of Payment for Out-of-Pocket Expenses Involving Both the Three-Judge Panel Trial and other *Coleman* Post-Judgment Work**

3       Defendants have also withheld payment of approximately $712,000 in actual costs and

4  expenses incurred since July of 2007.  Defendants' objections to costs are completely arbitrary

5  and contrary to the law governing compensability of costs in fee-shifting cases.  The categories

6  of costs at issue include the following items that are regularly charged to clients in the private

7  legal marketplace:  (1) photocopying; (2) document processing and storage of voluminous hard

8  copy and electronic discovery materials; (3) trial presentation and graphics services;

9  (4) computerized research services such as Lexis and Westlaw; (5) deposition transcripts;

10 (6) court hearing and trial transcripts; (7) witness fees; (8) service of process on non-party

11 witnesses, and; (9) other costs ordinarily incurred and billed to clients in the private-pay legal

12 marketplace.  Plaintiffs' counsel has advanced more than $712,000 in such costs, in addition to

13 more than $270,000 in expert costs that are not recoverable under the applicable law.

14      **3.    Defendants' Erroneous Theory Regarding Paralegal Rates**

15      Finally, defendants have for the first time, interposed a new and unjustified barrier to

16 reasonable compensation for vital work performed by paralegals.  Despite the fact that

17 defendants have regularly agreed to market rate compensation for paralegals, they are now

18 imposing an arbitrary $135 per hour cap on all paralegal time, regardless of the level of

19 experience of the paralegal, and regardless of the prevailing rates in the legal marketplace.

20 Declaration of Ernest Galvan In Support of Plaintiffs' Motion for Reasonable Fees and Costs

21 (hereinafter "Galvan Decl.") ¶ 44.

22      Plaintiffs therefore seek an order from this Court establishing the following:

23 (1) plaintiffs' entitlement to reasonable compensation for work on the overcrowding issues

24 since the third quarter of 2007, which is directly and reasonably incurred to enforce the

25 injunction; (2) an order that defendants immediately pay plaintiffs' outstanding expenses,

26 which were directly and reasonably incurred to enforce the underlying injunction;

27 (3) plaintiffs' paralegal rates are reasonable; (4) immediate payment of the difference between

28

[282274-2]

1  plaintiffs' requested paralegal rates and $135 per hour for undisputed paralegal work

2  performed during 2008.

### PROCEDURAL HISTORY

4      This is a class action lawsuit challenging the adequacy of mental health care throughout

5  the California Department of Corrections and Rehabilitation (CDCR).  On September 13,

6  1995, the Court issued a decision after trial finding for plaintiffs on virtually all of the claims

7  advanced in this case.  The decision establishes that plaintiffs are the prevailing party and

8  thereby also establishes plaintiffs' right to seek an award of reasonable compensation for work

9  performed in monitoring and enforcing defendants' compliance with the District Court's

10  September 13, 1995 Order, and with all subsequent remedial orders the Court issued.

11      On March 19, 1996, the Court entered an order for periodic collection of attorneys' fees

12  and costs.  *See* Galvan Decl., Ex. A (March 19, 1996 "Periodic Fees Order").  In his September

13  11, 2007 Findings and Recommendations, Magistrate Judge Moulds found the standard of

14  review set forth in the Periodic Fees Order required modification pursuant to the December 24,

15  1998 Stipulation and Order and the Ninth Circuit Court of Appeals decision in *Madrid v.*

16  *Gomez*, 190 F.3d 990 (9th Cir. 1999).  Magistrate Judge Moulds found that the provisions of

17  42 U.S.C. § 1997e(d) apply, and that under the *Madrid* decision to the same effect,

18          [T]he proper standard of review on this motion is the standard set
        forth in 42 U.S.C. § 1997e(d)(1)(B)(ii).  Under that standard,

19          plaintiffs are entitled to fees and costs "directly and reasonably
        incurred in enforcing the relief ordered for the" constitutional

20          violation found in the district court's September 13, 1995 order.

21  *See Coleman* Docket 2397 (9/11/07 Order) at 4.

22      The present motion addresses, in part, plaintiffs' entitlement to attorneys' fees and costs

23  for their work before the three-judge panel during the second, third, and fourth quarters of

24  2008.  On July 23, 2007, Judge Karlton granted plaintiffs' motion to convene a three-judge

25  panel to address overcrowding:  "After careful review of the record in this action, this court has

26  come, with extreme reluctance but firm conviction, to the conclusion that the overcrowding

27  crisis in the CDCR is preventing the delivery of constitutionally adequate mental health care to

28  the plaintiff class and, therefore, that some form of limitation on the inmate population must be

1    considered." *Coleman* Docket 2320 at 13.  In September of 2008, defendants moved to

2    dismiss the three-judge panel proceeding or, alternatively, for summary judgment or

3    adjudication. *Coleman* Docket Nos. 3033-3039, 3046.  Plaintiffs opposed the motion

4    (*Coleman* Docket Nos. 3053-3064) and the three-judge court denied the motion in its entirety

5    on November 3, 2008. *Coleman* Docket 3260.  On February 9, 2009, and after extensive

6    discovery, pre-trial preparation, fourteen days of trial that included testimony by more than

7    sixty (60) witnesses, and extensive post-trial briefing and oral arguments, the three-judge court

8    issued a tentative order granting all of plaintiffs' requested relief.  Galvan Decl. ¶¶ 30-36.  The

9    three-judge court found that "plaintiffs have presented overwhelming evidence that crowding

10   is the primary cause of the underlying constitutional violations" (*Coleman* Docket 3514 at 2),

11   that "no relief other than a prisoner release order [] will remedy the unconstitutional prison

12   conditions," (*Id.* at 4) and that "a prison cap at 120% to 145% of capacity, with some

13   institutions or clinical programs at or below 100%, could be achieved without an adverse effect

14   on public safety" (*Id.* at 7).  The three-judge court also determined that the overcrowding crisis

15   as it exists today is a "public safety hazard." *Id.* at 8-9.

16        Immediately after the three-judge panel's tentative ruling, plaintiffs requested an

17   evidentiary hearing on defendants' failure to provide adequate treatment beds for the *Coleman*

18   class.  In preparation for the hearing on that motion, plaintiffs made extensive use of trial

19   exhibits used during the three-judge proceedings. *Coleman* Dockets 3513, 3545.  The

20   *Coleman* court issued a new bed plan order on March 31, 2009. *Coleman* Docket 3556.

21               **STANDARD FOR RECOVERY OF ATTORNEYS' FEES AND COSTS**

22        Plaintiffs are the prevailing party in the *Coleman* case and are entitled to recover

23   reasonable attorneys' fees and costs.  As set forth in the Findings and Recommendations of

24   September 11, 2007, "the proper standard of review…is the standard set forth in 42 U.S.C. §

25   1997e(d)(1)(B)(ii).  Under that standard, plaintiffs are entitled to fees and costs 'directly and

26   reasonably incurred in enforcing the relief ordered for the' constitutional violation found in the

27   district court's September 13, 1995 order." *Coleman* Docket 2397 at 4.  This standard

28   comports with current law, including the Ninth Circuit Court of Appeals' decision in *Madrid v.*

6

[282274-2]

1   *Gomez*, 190 F.3d 990 (9th Cir. 1999) (work performed after enactment of PLRA governed by

2   PLRA fees provisions, including 42 U.S.C. 1997e(d), limiting recovery to fees "directly and

3   reasonably incurred in enforcing the relief ordered" for a constitutional violation).  All work

4   spent enforcing the rights of the *Coleman* class is compensable if it, "at the time rendered,

5   would have been undertaken by a reasonable and prudent lawyer to advance or protect his

6   client's interest..."  *Hasbrouck v. Texaco, Inc.,* 879 F.2d 632, 638 (9th Cir. 1989).

7                                      **ARGUMENT**

8
9   **I.    The Issue of Entitlement to Fees and Costs for Work Litigating Overcrowding
        Issues Has Already Been Litigated and Determined in Favor of the Plaintiff Class**

10          This Court has considered and rejected defendants' challenges to plaintiffs' entitlement

11  to fees and costs for their efforts to address overcrowding in this case.  Defendants previously

12  contested plaintiffs' work on the overcrowding crisis, arguing, among other things, that the

13  overcrowding work was unrelated to the September 13, 1995 order and that "plaintiffs' counsel

14  must prove a constitutional violation every time they seek reasonable attorneys' fees and costs

15  in this matter."  *Coleman* Docket 2448 at 1 (citing *Webb v. Ada County*, 285 F.3d 829, 833 (9th

16  Cir. 2002), *cert. denied*, 537 U.S. 948 (2002)).  With respect to the latter point, the Magistrate

17  Judge found:  "Defendants' argument that plaintiffs must separately prove a violation of

18  prisoners' rights in order to collect fees during the compliance phase of this litigation [is]

19  without merit."  *Coleman* Docket 2397 at 4, n. 2.  Regarding the former point, the Court settled

20  the issue that plaintiffs' work litigating overcrowding before the three-judge panel is

21  compensable because it directly relates to the Court's September 13, 1995 order.  *Coleman*

22  Docket 2397 at 6.  Indeed, when this Court granted plaintiffs' underlying motion to convene a

23  three-judge panel in July of 2007, it found that overcrowding is directly responsible for the

24  failure of the Court's orders "to remedy the constitutionally inadequate delivery of mental

25  health care to CDCR inmates," *id*. at 5," and that "the overcrowding crisis in the CDCR is

26  preventing the delivery of constitutionally adequate mental health care to the plaintiff class

27  and, therefore, that some form of limitation on the inmate population must be considered."  *Id*.

28

at 5-6.  Magistrate Judge Moulds appropriately referenced these findings when determining

defendants' prior challenge to plaintiffs work on the overcrowding issues:

> Given these findings, it is quite clear that the fees and costs
> incurred by plaintiffs in connection with their motion to convene a
> three-judge panel were directly and reasonably incurred in
> enforcing the relief ordered for the sweeping Eighth Amendment
> violation found in the district court's September 13, 1995 order.

*Coleman* Docket 2397 at 6 (quotation omitted); *Coleman* Docket 2451 at 2 (findings adopted

in full after *de novo* review) (Magistrate Judge's "findings and recommendations [are]

supported by the record and by proper analysis.").  Defendants did not appeal this Order.

There is nothing ambiguous about the Court's rulings.  The Court found that

overcrowding impedes the delivery of constitutionally adequate mental health care, and that

overcrowding hampers the Court's own efforts to issue orders remedying the constitutional

violations shown by plaintiffs.  Plaintiffs instituted proceedings before the three-judge panel to

address overcrowding.  In ruling on the first fees and costs motion regarding the overcrowding

motion in October 2007, the Court adopted the findings that these efforts were directly and

reasonably incurred in enforcing the relief ordered in September 1995, and that plaintiffs need

not prove a constitutional violation anew each time they seek reasonable attorneys' fees and

costs.[3]  In light of this history and the Court's findings, defendants' continued objections to

plaintiffs' work on the overcrowding crisis should be summarily rejected.[4]

---

[3] Defendants agreed to pay attorneys' fees and costs for plaintiffs' work before the three-judge panel in quarters one and two of 2007 and no fees or costs remain in dispute from those quarters.  This is as it should be; the time spent litigating overcrowding issues during those quarters was clearly compensable under the terms of the Magistrate Judge's September 11, 2007 Findings and Recommendations, and the Court's Order of October 5, 2007 adopting those Findings and Recommendations.  There is no valid distinction between the work plaintiffs' counsel performed on overcrowding issues between the first two quarters of 2007 and work performed after.  Plaintiffs undertook similar steps to litigate overcrowding issues at all relevant times.

[4] Plaintiffs pointed out in a prior filing that defendants' ongoing refusal to pay reasonable attorneys' fees incurred in the overcrowding matter violates considerations of finality, judicial economy, and the "law of the case" doctrine.  *See Coleman* Docket 2708 at 7-8.  Rather than

(continued . . .)

8

[282274-2]

## II. Work Litigating Overcrowding Issues Before the Three-Judge Panel Is Reasonable and Necessary to Enforce the Injunction

Defendants have maintained a categorical objection to all work performed in connection with overcrowding and the proceedings before the three-judge court since the third quarter of 2007 and continuing through the present. These objections are unreasonable. The Court's October 5, 2007 ruling definitively determined that plaintiffs' work on the overcrowding matter is compensable. If that was not enough for defendants, however, the three-judge court's February 9, 2009 tentative order should have been. Plaintiffs are already the prevailing party in this litigation and do not have to "win" issues or matters in order to be compensated. *Webb v. Ada County*, 285 F.3d 829, 834-835 (9th Cir. 2002). Nevertheless, the fact that plaintiffs have now prevailed on 100 percent of the litigated issues in the overcrowding trial is further, definitive proof that plaintiffs' work was directly and reasonably incurred to enforce the injunction in this case. *See Coleman* Docket 3514 (plaintiffs presented overwhelming evidence that crowding is the primary cause of the underlying constitutional violations, that no other relief other than a prisoner release order will remedy the unconstitutional prison conditions, and that a prison cap at 120% to 145% of capacity, with some institutions or clinical programs at or below 100%, can be achieved without an adverse effect on public safety). The February 9, 2009 tentative order, like the July 2007 order granting referral to the three-judge court, definitively establishes that plaintiffs' work on the overcrowding issues was and continues to be directly and reasonably performed to enforce the injunction in this case.

The recent bed plan hearing and order further demonstrates the intimate connection between the three-judge panel evidence and the ongoing post-judgment enforcement proceedings in *Coleman.* On February 6, 2009, just days after the closing argument in the three-judge panel trial, plaintiffs' counsel requested an evidentiary hearing on the failure of the *Coleman* bed planning process that became evident when defendants' witnesses in the three-

restate those arguments again, plaintiffs incorporate them by reference.

[282274-2]

judge panel trial admitted that their existing bed plans had been overtaken by events and were

no longer workable. *See Coleman* Docket 3513 at 3, 4 (quoting Trial Affidavit of Robin

Dezember); *id.* at 5 (citing Mr. Dezember's trial testimony that defendants had lost a year or

more on their 2007 Bed Plan); *id.* (citing defendants' three-judge panel trial expert witness Dr.

Ira Packer's testimony on the inadequacy of makeshift, stop gap measures that characterize

defendants' current bed plans). The Court granted plaintiffs' motion for a hearing. Plaintiffs'

37-page pre-hearing submission relied heavily on the three-judge panel trial evidence,

including the testimony and/or discovery responses of Robin Dezember, the former Chief

Deputy Secretary of Correctional Health Care Services, (Coleman Docket No. 3545 at 14),

Deborah Hysen, head of Defendants' Facilities Construction Strike Team, (*id.* at 15-17, 19),

Cynthia Radavsky, head of long-term care services at the Department of Mental Health, (*id.*at

19, 29-30), Victor Brewer, executive director of the Salinas Valley and Vacaville Psychiatric

Programs, (*id.* at 23-24), Dr. Ira Packer, defendants' three-judge panel trial expert on prison

mental health care (*id.* at 24), Dr. Craig Haney and Dr. Pablo Stewart, two of plaintiffs' experts

on prison mental health care, (*id.* at 26), Matthew Cate, Secretary of Corrections and

Rehabilitation (*id.* at 28), and Dr. Shama Chaiken, CDCR Chief Psychologist, (*id.*). Plaintiffs'

pre-hearing submission included numerous citations to plaintiffs' and defendants' three-judge

panel trial exhibits. The result of the hearing held on March 24, 2009 was a new bed plan

order directing defendants to take immediate measures to complete long-delayed programs that

are desperately needed to begin filling the gap between treatment needs and resources.

*Coleman* Docket 3556. This new bed plan order demonstrates that the factual record

developed in the three-judge panel trial has and will continue to play a central role in ongoing

post-judgment enforcement of the September 1995 Injunction.

**III.   Ruling on Entitlement to Reasonable Fees Sought in this Motion**

      The periodic fees order requires that defendants meet and confer regarding the

reasonableness of fees sought. Defendants have refused to meet and confer regarding fees they

deem to be related to the overcrowding trial. Under the periodic fees order this constitutes

unreasonable delay of the process, (Periodic Fees Order at ¶¶ 2-3), and plaintiffs could move

1   for an order requiring payment of the full amounts sought. In the interests of judicial economy,

2   however, plaintiffs are hesitant to ask the Court to review voluminous time records before the

3   parties have attempted to resolve any disputes about specific entries. Therefore, plaintiffs are

4   only asking, as we have asked in the previous four motions to compel (*see* Table 1, above at

5   page 2), for a ruling on entitlement to the fees at issue in this motion. For that reason, we do

6   not submit detailed billing records with this motion.

7        At issue are plaintiffs' reasonable attorneys' fees for the following major categories of

8   work performed during the second, third and fourth quarters of 2008. All of these tasks were

9   necessary to prosecute the overcrowding matter and to protect the interests of the *Coleman*

10  class: (1) extensive work on paper discovery and document review, including briefing of

11  discovery disputes (Galvan Decl. ¶¶ 11, 13-14, 17-18, 23, 26-28, 32-33); (2) participation in

12  settlement negotiations which ultimately failed (Galvan Decl. ¶¶ 16, 19); (3) preparation of

13  joint status conference statements and negotiations; (4) participation in expert tours (by both

14  defense and plaintiffs' experts), including litigation of two motions necessary to overcome

15  obstacles to expert tours interposed by defendants (Galvan Decl. ¶¶ 11-12, 20); (5) work with

16  experts to prepare, finalize and file their reports (Galvan Decl. ¶¶ 15, 25); (6) taking and

17  defending 77 depositions (Galvan Decl. ¶ 32); (7) preparation of pre-trial disclosures,

18  including witness lists, deposition designations, interrogatory designations and extensive

19  negotiations with opposing counsel regarding all of these filings; (8) opposing defendants'

20  motion for summary judgment, which was denied by the three-judge court in its entirety

21  (Galvan Decl. ¶ 29); (9) preparing affirmative motions *in limine* and opposing those filed by

22  defendants and defendant-intervenors (Galvan Decl. ¶ 30); (10) preparation for and

23  participation in the 14-day trial which took place in November and December of 2008 (Galvan

24  Decl. ¶¶ 31-32, 34), (11) preparing highly detailed proposed findings of fact and conclusions of

25  law with all proposed findings fully supported by the specific record citations (Galvan Decl.

26  ¶ 35), and; (12) preparing for two days of closing arguments (Galvan Decl. ¶ 35). In the course

27  of the pre-trial and trial work, plaintiffs reviewed more than one-hundred thousand documents

28

[282274-2]

1  (100,000) produced by defendants and the defendant-intervenors, totaling more than nine

2  hundred and seventy thousand (970,000) pages.  *Id.* ¶ 33.

3       The District Court has already determined that plaintiffs' work to address overcrowding

4  in this case is compensable and the three-judge court has now issued a tentative order making

5  clear that plaintiffs' efforts were directly and reasonably incurred to enforce the underlying

6  injunction in this case.  All of plaintiffs' efforts in the underlying *Coleman* case and before the

7  three-judge panel are intended to enforce the far-reaching injunction obtained in 1995.  Galvan

8  Decl. ¶ 37.  Plaintiffs have dedicated significant resources and staffing to the following issues

9  which have plagued progress in the *Coleman* case for many years, and which were also central

10  to the overcrowding trial:  (1) severe medical and mental health staffing shortages; (2) extreme

11  shortages of office and treatment space for medical and mental health services; (3) long

12  waiting lists for Enhanced Outpatient (EOP) and inpatient programs, including intermediate

13  care, acute, and mental health crisis beds and the resulting inability to provide a higher levels

14  of care; (4) a broken and ineffective medication system; (5) problems with medical records and

15  patient tracking; (6) the use of alternative placements, such as administrative segregation units,

16  ZZ cells, and cages to house patients when appropriate mental health beds are fully occupied or

17  otherwise unavailable; (7) the extremely high suicide rate in the CDCR, and; (8) defendants'

18  inability to provide for the short and long-term bed planning needs of the *Coleman* class.

19  While the causes of the constitutional violations may fluctuate or change over time, they all

20  relate to the underlying injunction.  Galvan Decl. ¶ 37.

21       Defendants' attempts to apply a "prevailing party" standard to this case should be

22  squarely rejected by this Court.  Plaintiffs do not have to re-prove constitutional violations in

23  order to be compensated for their work.  *See, e.g. Webb v. Ada County*, 285 F.3d 829, 834-835

24  (9th Cir. 2002).  Moreover, what happens in this case from this point forward will have no

25  force or effect on plaintiffs' entitlement to fees and costs.  Plaintiffs are entitled to reasonable

26  fees and costs for "every item of service which, *at the time rendered*, would have been

27  undertaken by a reasonably prudent lawyer to advance or protect his client's interest."

28  *Hasbrouck v. Texaco, Inc.,* 879 F.2d 632, 638 (9th Cir. 1989) (emphasis added)*; Armstrong v.*

12

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH
QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[282274-2]

1  *Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (applying *Hasbrouck* to a prison case); *L.H. v.*

2  *Schwarzenegger*, No. CIVS-06-2042 LKK/GGH, 2009 WL 674345, at *8 (E.D. Cal. March 6,

3  2009) (plaintiffs entitled to compensation for time spent representing clients in hearings

4  unrelated to the parole hearings at issue in the case).

5      Accordingly, plaintiffs' counsel seek an order from this Court confirming their

6  entitlement to reasonable attorneys' fees for their work before the three-judge panel during the

7  second, third and fourth quarters of 2008, which included intensive discovery, pre-trial and

8  trial work.[5]  Plaintiffs do not in this motion ask for an order directing compensation of these

9  fees in a particular amount, but rather a ruling on entitlement only and direction that the parties

10  meet and confer regarding the amounts.[6]

11  **IV.  Order for Immediate Payment of Disputed Costs Sought in this Motion; Plaintiffs
       Costs and Expenses Are Reasonable and Defendants Should Be Ordered To Pay**
12     **Them Immediately**

13      No further meet and confer process is necessary regarding the disputed out-of-pocket

14  expenses.  Defendants have refused to pay hundreds of thousands of dollars in compensable

15  out-of-pocket expenses advanced by plaintiffs' counsel.  As to some of these expenses, such as

16  copying and delivery charges, defendants have asserted blanket objections to the entire

17  amounts, even though a large portion of the charges were incurred for ordinary post-judgment

18  monitoring and enforcement not in any way related to the three-judge panel trial.  Galvan Decl.

19  ¶ 39.  The asserted distinction between three-judge panel and non-three-judge panel expenses

20  is of no consequence, however, as all of the expenses were reasonably incurred to enforce the

21

22  _____
23  [5] Plaintiffs' attorneys are compensated at PLRA rates for their work on this case, which are far
    below market value.  Pursuant to the PLRA, all of plaintiffs' attorneys are compensated at a
24  rate of $169.50 per hour regardless of experience for work performed and compensated in
    2008.

25  [6] Plaintiffs also have motions pending before this Court to compel unpaid fees for work
    performed during the third and fourth quarters of 2007 and the first quarter of 2008.  *Coleman*
26  Docket Nos. 2708, 2821, 2932; Galvan Decl. ¶ 40.  Those motions seek compensation for a
    combined total of approximately 5,500 hours of work, or $910,000 in unpaid fees.  *Id.*
27  Plaintiffs request that the Court's Order address these pending motions as well.

28

[282274-2]

1   1995 Injunction.  Plaintiffs' counsel has acted responsibly to manage and control out-of-pocket

2   expenses and has exercised reasonable billing judgment.  Galvan Decl. ¶¶ 56, 58, 59, 61, 62.

3   Plaintiffs request an order requiring defendants to pay the disputed out-of-pocket expenses

4   forthwith.  The expense items and categories are set forth in the Galvan Declaration at

5   Exhibit T.

6        Plaintiffs' counsel dedicated tremendous resources to this case, including the

7   advancement of hundreds of thousands of dollars for costs and expenses.  *See* Galvan Decl.,

8   Ex. T.  In this motion, plaintiffs seek reimbursement for costs and expenses of approximately

9   $712,000 in merits costs and $623 in fees costs.  Galvan Decl. at Ex. T.  Although plaintiffs

10  paid more than $270,000 in expert fees in this matter, plaintiffs have removed those expenses

11  from their bill pursuant to *West Virginia Univ. Hosp. Inc. v. Casey*, 499 U.S. 83, 102 (1991)

12  and *Jenkins v. State of Missouri*, 158 F.3d 980, 983 (8th Cir. 1998).  Galvan Decl. ¶ 53.  As the

13  prevailing party under 42 U.S.C. § 1988, plaintiffs "may recover as part of the award of

14  attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying

15  client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  As demonstrated below, all of

16  the disputed items are clearly within the category of out-of-pocket expenses normally billed to

17  clients in the private marketplace for legal services.

18       **A.    Electronic Processing / Electronic Database Expenses**

19       A significant portion of plaintiffs' expenses, approximately $319,000, was spent on the

20  necessary electronic document processing and database hosting services related to the

21  enormous volume of electronic discovery in the three-judge panel trial.  These expenses are

22  normally billed to fee-paying clients.  Declaration of Geoffrey T. Holtz in Support of

23  Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ("Holtz Decl.") ¶¶ 7-8;

24  Declaration of Jon B. Streeter in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees

25  and Expenses ("Streeter Decl.") ¶¶ 6-9; Galvan Decl. ¶ 55; Declaration of James W. Morando

26  in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ("Morando

27  Decl.") ¶¶ 4-5; Declaration of Richard M. Pearl in Support of Plaintiffs' Motion for

28  Reasonable Attorneys' Fees and Expenses ("Pearl Decl.") ¶ 16; Declaration of Terrence Jones

[282274-2]

in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ("Jones Decl.")
¶ 5; Declaration of Joseph T. Anastasi in Support of Plaintiffs' Motion for Reasonable
Attorneys' Fees and Expenses ¶¶ 6-7.  Companies that provide electronic discovery services,
such as plaintiffs' CT Summation-Case Vault, quantify and bill law firms on a monthly basis
so that the costs can be passed to clients.  Declaration of Marcia R. Gordon in Support of
Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ("Gordon Decl.") ¶ 4.  Such
electronic discovery costs are unavoidable and standard in modern, complex litigation.  Pearl
Decl. ¶ 16; Streeter Decl. ¶ 6; Holtz Decl. ¶ 7; Morando Decl. ¶ 4; Jones Decl. ¶ 4; Gordon
Decl. ¶ 3.  These services increase efficiency and act to control overall client costs by
providing attorneys with the tools necessary to quickly search and funnel large volumes of
electronic discovery into a manageable set of relevant documents, rather than incurring
countless hours of attorney time to review every single document.  Galvan Decl. ¶ 55; Pearl
Decl. ¶¶ 17-18; Streeter Decl. ¶ 6; Holtz Decl. ¶ 7; Morando Decl. ¶ 4.  Moreover, plaintiffs
counsel worked with their electronic discovery vendors throughout the litigation to find the
most cost-effective and efficient ways to process data.  Jones Decl. ¶ 4; Gordon Decl. ¶ 5.

In the private marketplace for legal services, fee-paying clients demand a high-level of
sophisticated processing of electronic discovery information to ensure that documents are
properly identified, reviewed, and used to advance the client's interests.  Clients in the private
marketplace regularly pay for the high-level services required to achieve these necessary goals,
either in the form of hourly rate compensation for in-house law firm litigation technology
professionals, or in the form of outsourced vendor services.  Pearl Decl. ¶ 18; Streeter Decl.
¶¶ 6-9; Holtz Decl. ¶¶ 7-9.  *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410,
414 (S.D.N.Y. 1997) (awarding $1,000,000 in expenses that included $203,000 for a "high-
tech document database and imaging system" and noting that "vast majority of…expenses
[were] reasonable, necessary and well warranted"); *In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. 2007) (unpublished decision)
(awarding $774,000 in expenses that included "creation of a document database," noting that
all expenses were "customary and necessary expenses for a complex securities action."); *In re*

15

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH
QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[282274-2]

1   *PaineWebber Ltd. P'ships Litig.*, 999 F. Supp. 719, 723 (S.D.N.Y. 1998) (awarding $3.7

2   million in expenses that included "a computerized document database" after finding that

3   expenses were "appropriately incurred."); *Lockheed Martin Idaho Technologies Co. v.*

4   *Lockheed Martin Advanced Envtl. Sys., Inc.*, No. 98-316-E-BLW, 2006 WL 2095876 (D. Idaho

5   2006) (unpublished decision) (awarding $4.6 million in costs for creating a litigation database

6   that was necessary due to the complexity of the case).[7]

7       It was necessary and cost-effective for plaintiffs to use a document management system

8   in this case.  The discovery phase of the litigation was hotly contested.  Galvan Decl. ¶¶ 11-15,

9   17-21, 23-28.  Plaintiffs were forced to file numerous discovery motions to address, for

10  example, defendants' and defendant-intervenors' failure to produce appropriate privilege logs,

11  failure to produce relevant documents, delay in producing documents, failure to run

12  appropriate searches in their databases, refusal to permit appropriate and useful expert

13  inspections, improper assertions of privileges, and refusal to produce relevant defendants for

14  depositions.  *Id.* ¶¶ 11, 14, 17, 20, 23, 26-28.  Once documents were produced, plaintiffs had to

15  review, code, and manage hundreds of thousands of pages of documents and more than 175

16  gigabytes of electronic discovery produced by defendants and the numerous intervenors in the

17  case.  *Id.* ¶ 54.  Because of defendants' and defendant-intervenors' refusal to produce

18  documents and responses within the shortened discovery response timeframes ordered by the

19  Court, plaintiffs were also frequently forced to review and manage documents on extremely

20  shortened time-frames in order to adequately use the information during depositions and for

21  court filings.  *Id.*  The parties ultimately sought to introduce more than 1,200 exhibits during

22  the 14-day trial.  *Id.* ¶¶ 32, 34.  Plaintiffs' ability to find, review, manage and utilize key

23  documents from among the thousands produced was key to their success before the three-judge

24

25

26  ───────────────
    [7] Pursuant to E.D. Local Rule 5-133(i), copies of the *In re Veeco Instruments* and *Lockheed*
27  *Martin Idaho Technologies Co.* cases, which are unpublished, are attached as Exhibit U to the
    Galvan Declaration.
28

[282274-2]

1    court, which found that plaintiffs "presented overwhelming evidence that crowding is the

2    primary cause of the underlying constitutional violations." *Coleman* Docket 3514 at 2.

3          In this case, where plaintiffs were faced with a huge volume of produced documents and

4    very short time-frames within which to review them, the use of the database was the most

5    efficient and cost-effective way to litigate the case. Galvan Decl. ¶ 55. If plaintiffs did not

6    utilize such a database, it would have been impossible to review and manage the huge volume

7    of documents, which amounted to hundreds of thousands of pages and more than 175

8    gigabytes of electronically produced documents. *Id.* The database allowed many fewer staff

9    hours to review documents because it facilitated a "funnel" of only the most essential

10   information into the eventual designation of deposition exhibits, trial exhibits and documents

11   used to support motions and other filings. *Id.* Once staff members reviewed documents, for

12   instance, they could mark them as either useful in some way, pertinent to a particular issue in

13   the case, useless to the case, or duplicative (defendants produced hundreds of duplicative

14   documents). Plaintiffs then used the codes to exclude marked documents that had already been

15   coded from various searches that attorneys and paralegals performed. *Id.* It would have been

16   impossible for plaintiffs to review the huge volume of documents and to funnel information in

17   this way without the document management system. *Id.*

18          **B.    Computerized Legal Research Expenses**

19          The market practice is to charge computerized legal research expenses to fee-paying

20   clients. Plaintiffs are therefore entitled to reimbursement for those costs. Galvan Decl. ¶ 56;

21   *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460

22   F.3d 1253, 1257-1259 (9th Cir. 2006) (computerized legal research costs are compensable if

23   separate billing for computerized legal research is the prevailing practice in the community);

24   *Bjornson v. Dave Smith Motors/Frontier Leasing and Sales*, 578 F. Supp. 2d 1269, 1289 (D.

25   Idaho 2008) (awarding Westlaw research costs to prevailing civil rights plaintiff, noting that

26   the Ninth Circuit "endorsed the view of what it called 'the growing circuit consensus' that

27   computer-based legal research costs should be treated the same as attorneys' fees and are

28   recoverable if separate billing for such expenses is the prevailing practice in the local

17

[282274-2]

1   community."). *See also* Pearl Decl. ¶¶ 20-21; Declaration of Edward P. Sangster in Support of

2   Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs ("Sangster Decl.") ¶¶ 9, 11;

3   Morando Decl. ¶ 9; Streeter Decl. ¶ 10.

4       **C.    Outside and In-House Photocopying Costs**

5       Plaintiffs seek approximately $103,000 in in-house and $123,000 in outside copying

6   expenses. Galvan Decl., Ex. T. Photocopying expenses are compensable under 42 U.S.C.

7   § 1988. *Northcross v. Bd. of Ed. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979)

8   ("Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus

9   recoverable pursuant to the statutory authority of s 1988."); *Cummings v. Connell*, 177 F.

10  Supp. 2d 1079, 1089 (E.D. Cal. 2001), *rev'd in part on other grounds*, 316 F.3d 886 (9th Cir.

11  2003) (reasonable photocopying costs that are normally charged to a fee-paying client are

12  recoverable under section 1988).

13      RBG advanced the vast majority of copying costs in this case, including on behalf of

14  both the PLO and K&L Gates. Galvan Decl. ¶ 59. The charges for outside copying costs

15  frequently included charges for other services that were necessary to quickly process and

16  utilize documents, including Bates stamping, coding, uploading, payment for on-site copies of

17  class member records and, in some cases, onsite copy services for subpoenaed documents. *Id.*

18  Plaintiffs sent a copying service to the Center for Evidence-Based Corrections at the University

19  of California at Irvine (UCI), for instance, which is funded by the CDCR to evaluate and

20  suggest evidence-based practices to address criminal justice issues, including parole reform

21  and recidivism reduction programs. *Id.* These issues were highly relevant to the overcrowding

22  matters and UCI required that we copy documents on-site in response to the subpoena. *Id.*

23  Plaintiffs' copying costs for the case also predictably increased during particularly busy times

24  of the litigation and when plaintiffs had to process and review documents on short timeframes.

25  *Id.* ¶ 60; Sangster Decl. ¶ 10; Morando Decl. ¶ 6. In the late summer and fall of 2008, for

26  instance, RBG paid several large bills for copying services related to deposition preparation,

27  motions *in limine*, and the preparation of trial exhibit and other trial binders. Galvan Decl.

28

[282274-2]

¶ 60.  During the time periods when the case was stayed, including between December of 2007 and April of 2008, copying costs were comparably very low.  *Id.*

### D.    Trial Graphics Consulting Expenses

Plaintiffs seek approximately $17,000 for costs related to trial and demonstrative exhibits, including photographs and videos.  Costs for the preparation of trial exhibits are compensable.  *See Karsian v. Inter-Regional Fin. Group, Inc.*, 13 F. Supp. 2d 1085, 1093 (D. Colo. 1998) ("Reasonable costs incurred in preparing exhibits necessarily obtained for use in the case" are recoverable); *Oberfelder v. City of Petaluma*, No. 98-1470(MHP), 2002 WL 472308, at *11 (N.D. Cal. 2002) (unpublished decision) (awarding plaintiffs' expenses for services rendered by a graphics art company that prepared plaintiff's trial exhibits).[8]

It is the market practice to bill fee-paying clients for these services.  Galvan Decl. ¶ 61; Declaration of Paul Endo In Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ¶¶ 4-5; Morando Decl. ¶ 7; Pearl Decl. ¶ 19; Sangster Decl. ¶ 8.  Here, the services were necessary to establish defendants' admissions regarding overcrowding, population reduction measures, and public safety, and to effectively communicate evidence about the overcrowded conditions to the Court.  Galvan Decl. ¶ 61.  Because plaintiffs' experts documented their prison tours with photographs, the services were also a necessary part of expert testimony.  *Id.*  The video, photographic, and demonstrative evidence was imperative to the case and an extremely important part of the record.  *Id.*

### E.    Witness Fees, Deposition Transcripts and Trial Transcripts

Plaintiffs incurred approximately $83,000 in costs for witness fees paid to adverse witnesses, costs to subpoena third-party witnesses, deposition reporter and transcript fees, hearing transcript fees and trial transcript fees.  These costs were necessary to develop the extensive factual record in this case, and in order to document the record adequately to prepare complete proposed findings of fact for the Court.

---

[8] Pursuant to E.D. Local Rule 5-133(i), a copy of the *Oberfelder* case, which is unpublished, is provided at Exhibit U of the Galvan Declaration.

[282274-2]

### F.    Other Miscellaneous Expenses

Plaintiffs also advanced other costs as reflected in Exhibit T to the Galvan Declaration, including travel expenses, telephone charges (including the costs of conference calls), witness fees, and postage.  It is market practice to bill fee-paying clients for all of these expenses. Galvan Decl. ¶ 62; Sangster Decl. ¶ 12; Pearl Decl. ¶ 20; Streeter Decl. ¶ 10; Morando Decl. ¶ 9.  All of these expenses were necessary to the litigation.  Galvan Decl. ¶ 62.  With respect to conference calls, in particular, multi-party calls were essential for meet and confer sessions to discuss discovery issues, trial exhibits, pre-trial filings, and other litigation-related issues.  *Id.* It was also more cost-effective for the multiple plaintiffs' attorneys, including attorneys at RBG, PLO and K&L Gates, to communicate via conference calls rather than in person.  *Id.* All of these costs were necessary to prosecution of the case.  *Id.*

### V.    Plaintiffs' Paralegal Rates Are Reasonable and Are Not Subject to the PLRA Fee Cap

Beginning in the first quarter of 2008, defendants took the position that they would pay only $135 per hour for paralegal work in this case, including for senior paralegals.  Defendants have never fully explained this position.  This rate dispute applies to all of the work paralegals performed in the three-judge panel trial as well as all paralegal hours on monitoring and enforcement outside of the trial.  For non-three-judge panel work, the amount in dispute is the difference between the discounted rates plaintiffs' seek in this motion and the $135 rate that defendants agreed to pay, including, for example, for paralegal time spent corresponding with class members, working on suicide monitoring, assisting counsel in evaluating defendants' mental health plans (e.g. their short and long-term bed planning, their reception center EOP programs, their administrative segregations plans, their suicide prevention plans, etc.) and

[282274-2]

1  analyzing defendants' monthly statistics and data.[9]  The following chart summarizes the

2  paralegal rate dispute for overcrowding and non-overcrowding work:

| Paralegal Work | Rates in Dispute | Number of Hours in Dispute | Total Disputed |
|---|---|---|---|
| **Tasks that Defendants Deem to be Related Only to the Three-Judge Panel Trial** | $150 - $169.50 per hour depending on the paralegal's level of skill and experience. | (Decision sought here on entitlement and rates only.) | (Decision sought here on entitlement and rates only.) |
| **Tasks that Defendants Have Not Deemed to be Three-Judge Panel Related.** | Difference between $135 and the paralegal's market rate up to $169.50 depending on the paralegal's level of skill and experience. | 2,407 Undisputed Hours | $81,955 |

12      The PLRA caps attorney rates, not paralegal rates.  *See* 42 U.S.C. § 1997e(d)(3)

13  (mandating a fee cap only with respect to "attorneys' fees"); *Richlin Security Service Co. v.*

14  *Chertoff,* 128 S.Ct. 2007, 2019 (2008) (holding that the fee cap under the Equal Access to

15  Justice Act ("EAJA"), a statute similar to the PLRA, does not apply to paralegal rates, which

16  can be compensated at the market value regardless of the cap).  Nevertheless, plaintiffs'

17  counsel have, to date, voluntarily applied the PLRA fee cap to paralegal rates, even when

18  doing so meant that paralegals were compensated *below* their market rates.  Galvan Decl. ¶ 44.

19  Whereas the 2008 market rates for paralegals who worked on this case range from $170 to

20  $300 per hour, depending on experience, plaintiffs seek only $150 to $169.50 for paralegals.

21  *Id.*  These rates fall well within the range for paralegals in their market who have comparable

22  experience, and who work on comparable matters, and are in some cases well below market

23

24  _____

25  [9] The parties previously agreed on the number of compensable paralegal hours for work on
    non-overcrowding matters during 2008.  *See Coleman* Docket 2899 at Ex. A; 3128 at Ex. A;

26  3474 at Ex. A, and; 3559 at Ex. A.  A very small number of those hours were left in dispute,
    but were resolved in March of 2008 via a meet and confer session.  Because defendants agreed

27  to pay only $135 per hour for the non-overcrowding work, however, the difference between the
    requested and paid rates remains in dispute.

28

[282274-2]

1    rates.  *See* Galvan Decl. ¶ 46; Pearl Decl. ¶¶ 6, 8 and 11; Holtz Decl. ¶ 10 (market rates for

2    paralegals at his firm range from $135 to $325); Streeter Decl. ¶ 11; Morando Decl. ¶ 8.

3    Moreover, plaintiffs' paralegal hourly rates have been confirmed in numerous orders from state

4    and federal courts in recent cases, as have similar paralegal rates at other firms.  *See* Galvan

5    Decl. ¶¶ 47-50; Pearl Decl. ¶¶ 11a and 11b (RBG's 2006, 2007, and 2008 paralegal rates;

6    survey of other firms' paralegal rates).  There is simply no reason for this Court to deviate from

7    those awards.

8         Finally, plaintiffs' voluntary application of the PLRA rate cap to paralegal rates

9    represents a significant reduction in fees that should not be reduced any further.  While the

10   PLRA rate cap is generally consistent with market rates for plaintiffs' less-experienced

11   paralegals, it is well below the rates for paralegals with significant litigation experience.  Kevin

12   Jones, for example, has been a paralegal for six years, during which he managed the trial

13   preparation and presentation for twenty (20) jury and bench trials in both state and federal

14   courts.  Galvan Decl. ¶ 51(a) and Ex. H.  Mr. Jones was the lead paralegal on twelve (12) of

15   those cases.  *Id.*  He has extensive experience with Summation and other trial databases, was

16   essential to plaintiffs' ability to manage the huge volume of documents in this case, and was

17   the primary paralegal handling exhibits, direct and cross-examinations, opening and closing

18   arguments and general document management during trial.  *Id.*  Mr. Jones' market rate is $225

19   per hour, or $55.50 below his capped rate of $169.50.  Sofia Millham, for whom plaintiffs seek

20   $169.50 per hour, has been working as a paralegal at Rosen, Bien & Galvan, LLP ("RBG") for

21   nearly three years and had more than two years of litigation experience prior to joining

22   plaintiffs' counsel.  Galvan Decl. ¶ 51(b) and Ex. I.  Ms. Millham has worked on complex

23   litigation matters during her entire time at RBG and is proficient in legal databases such as

24   Casevault and CT Summation, which were essential to plaintiffs' success in the three-judge

25   matter.  *Id.*  Ms. Millham also played a key role in pre-trial work, including preparation for

26   depositions, review of defendant and defendant-intervenor document productions,

27   identification and preparation of trial exhibits and countless other tasks.  *Id.*  While Ms.

28   Millham's market rate is $180 per hour, plaintiffs seek only $169.50 for her work.  *Id.*  Pamela

Derrico is a senior litigation paralegal with 22 years of experience whose contribution was necessary during the busiest times of the litigation. *Id.* ¶ 51(c) and Ex. J. Ms. Derrico's market rate is $190 per hour, but plaintiffs seek only $169.50 for her work. The other paralegals at RBG for whom plaintiffs seek $169.50 per hour also possess the skills and experience justifying this hourly rate. Galvan Decl. ¶ 51(d)-(i) and Exhibits K-P (resumes and descriptions of skills and experience for remaining RBG paralegals).

The paralegals at the Prison Law Office and K&L Gates are similarly experienced and skilled. Galvan Decl. ¶ 51(j)-(l) and Exs. Q-S (setting forth the qualifications and experience of three paralegals at the PLO, all of whom have considerable prison and litigation experience); Sangster Decl. ¶¶ 5-6 and Exs. A and B (paralegal with 9 ½ years of complex litigation experience performed essential research and work regarding intervenors and second paralegal, with more than 10 years of litigation experience, provided vital assistance for experts, depositions, trial declarations and motions *in limine*, among other tasks).

Plaintiffs' paralegal rates, which are voluntarily capped at $169.50 per hour, are also far below the surveyed market rates for paralegals in five major geographical areas in California. Galvan Decl. ¶ 46 and Ex. C (showing that average hourly rates for "Legal Assistant/Paralegal" positions in the five areas were between $166 and $203 per hour and that average hourly rates for "Senior Legal Assistant/Paralegal" positions were between $228 and $253 per hour). The evidence plaintiffs provide in support of this motion establishes that their requested paralegal rates, up to $169.50, are exceedingly reasonable and, in many cases, far below the market value. This Court should therefore award plaintiffs' rates and reject defendants' arbitrary refusal to pay more than $135 per hour for paralegal services. Plaintiffs seek an order granting only entitlement to work performed by paralegals on the three-judge panel trial, and a decision on rates, with the parties directed to promptly complete the meet and confer on the reasonable number of hours. For work performed on undisputed non-overcrowding issues, plaintiffs seek an order directing immediate payment of the delta between plaintiffs' requested rate and the $135 rate arbitrarily imposed by defendants.

[282274-2]

1

**CONCLUSION**

2     For all of the reasons stated above, plaintiffs seek an order finding that plaintiffs' work

3 before the three-judge panel was directly and reasonably incurred to enforce the underlying

4 injunction, and establishing plaintiffs' entitlement to reasonable attorneys' fees for that work

5 since the third quarter of 2007.  Plaintiffs further request an order requiring the parties to

6 complete a meet and confer regarding the amounts to be paid within 30 days of the Court's

7 order.  Plaintiffs also request an order finding that plaintiffs' unpaid costs and expenses, in the

8 amount of $712,859, are reasonable and compensable under the applicable legal standards, and

9 ordering immediate payment of those amounts.  Finally, plaintiffs request an order from this

10 Court finding that plaintiffs' paralegal rates are reasonable.  With respect to all undisputed

11 work performed by paralegals on non-three-judge issues, plaintiffs request an order requiring

12 immediate payment of $81,955, which is the delta between plaintiffs' requested rates and $135

13 per hour.

14 Dated:  May 6, 2009                          Respectfully submitted,

15

16                                               */s/ Ernest Galvan*
                                                Ernest Galvan
17                                              Rosen, Bien & Galvan
                                                Attorneys for Plaintiffs
18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH
QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[282274-2]