| | |
|---|---|
| 1 | PRISON LAW OFFICE |
| | DONALD SPECTER, Bar No. 83925 |
| 2 | STEVEN FAMA, Bar No. 99641 |
| | E. IVAN TRUJILLO, Bar No. 228790 |
| 3 | SARA NORMAN, Bar No. 189536 |
| | ALISON HARDY, Bar No. 135966 |

1   PRISON LAW OFFICE
    DONALD SPECTER, Bar No. 83925
2   STEVEN FAMA, Bar No. 99641
    E. IVAN TRUJILLO, Bar No. 228790
3   SARA NORMAN, Bar No. 189536
    ALISON HARDY, Bar No. 135966
4   REBEKAH EVENSON, Bar No. 207825
    1917 Fifth Street
5   Berkeley, CA 94710
    Telephone: (510) 280-2621

6   K&L GATES LLP
    JEFFREY L. BORNSTEIN, Bar No. 99358
7   EDWARD P. SANGSTER, Bar No. 121041
    RAYMOND E. LOUGHREY, Bar No. 194363
8   55 Second Street, Suite 1700
    San Francisco, CA 94105-3493
9   Telephone: (415) 882-8200

10  THE LEGAL AID SOCIETY –
    EMPLOYMENT LAW CENTER
11  CLAUDIA CENTER, Bar No. 158255
    600 Harrison Street, Suite 120
12  San Francisco, CA 94107
    Telephone: (415) 864-8848

13  Attorneys for Plaintiffs

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARIA V. MORRIS, Bar No. 223903
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

14          IN THE UNITED STATES DISTRICT COURTS
15          FOR THE EASTERN DISTRICT OF CALIFORNIA
            AND THE NORTHERN DISTRICT OF CALIFORNIA
16  UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
17      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

18  RALPH COLEMAN, et al.,                    )   No.: Civ S 90-0520 LKK-JFM P
                                              )
19              Plaintiffs,                   )   **THREE-JUDGE COURT**
                                              )
20      vs.                                   )
                                              )
21  ARNOLD SCHWARZENEGGER, et al.,            )
                                              )
22          Defendants                        )
                                              )
23  MARCIANO PLATA, et al.,                   )   No. C01-1351 TEH
                                              )
24              Plaintiffs,                   )   **THREE-JUDGE COURT**
        vs.                                   )
25                                            )   **REQUEST FOR JUDICIAL NOTICE**
    ARNOLD SCHWARZENEGGER, et al.,            )
26                                            )
        vs.                                   )
27          Defendants                        )

28

Plaintiffs submit this Request for Judicial Notice pursuant to Federal Rule of Evidence 201 to ensure that all appropriate evidence is before the Court.

On January 6, 2009, this Court issued an order requiring the State to advise the Court and the parties whether the Governor's budget proposal contains "any provisions relating to the release of prisoners." *Plata* Docket No. 1985. Defendants filed their responsive papers on January 16, 2009. Plaintiffs filed a Request for Judicial Notice on January 23, 2009 requesting, among other things, that the Court take judicial notice of the Governor's 2009-2010 budget, which proposes to reduce the prison population by providing enhanced credit earning for inmates, and adjusting the threshold value for property crimes. *Plata* Docket No. 2027.

Since that time, the Governor has issued several revisions to the 2009-2010 budget, proposing additional measures to dramatically reduce the prison population. In addition, the California Legislative Analyst's Office (LAO) issued official reports analyzing the Governor's various budget proposals, and proposing additional measures to reduce the prison population.

Plaintiffs request that the Court take judicial notice that the enumerated prison population reduction measures were proposed in the following State government documents:

1. Excerpts from the Governor's 2009-10 May Revision to the Budget General Fund Proposals (dated May 14, 2009), which proposes to reduce the prison population further by commuting the sentences of certain undocumented immigrants. A true and correct copy of the relevant excerpts are attached hereto as Exhibit A, and are available online at http://www.dof.ca.gov/budget/historical/2009-10/may_revision/documents/May_Revision_2009-10_General_Fund_Proposals.pdf;

2. Excerpts from the Governor's 2009-10 May Revision with Additional 5.5 Billion in Spending Reductions (dated May 26, 2009), which proposes to reduce the prison population further by commuting the sentences of nonviolent, non-serious, non-sex offenders one year early. A true and correct copy of the relevant excerpts are attached hereto as Exhibit B, and are available, online at

1  http://www.dof.ca.gov/budget/historical/2009-10/may_revision/documents/2009-
2  10_May_Revision_Updates.pdf;

3  3. Excerpts from the Governor's 2009-10 May Revision General Fund Proposal-
4  Comprehensive List (dated June 1, 2009), which proposes to reduce the prison
5  population by deporting undocumented immigrants, changing sentencing laws so
6  that crimes that may be treated as either felonies or misdemeanors are punishable
7  by a jail term rather than state prison, and "reduc[ing time served/provid[ing]
8  alternative placements for certain offenders." A true and correct copy of the
9  relevant excerpts are attached hereto as Exhibit C, and are available online at
10  http://www.dof.ca.gov/budget/historical/2009-
11  10/may_revision/documents/Comprehensive_Solutions-Technical.pdf;

12  4. Excerpts from the California Legislative Analyst's Office 2009-10 Budget
13  Analysis Series: Judicial and Criminal Justice, dated January 30, 2009. This
14  document analyzes the Governor's 2009-2010 Budget proposal, and estimates
15  that the Governor's proposal would reduce the prison population by 16,000 and
16  the parole population by 66,000. This document also contains alternative means
17  for reducing the prison population by 23,000 inmates proposed by the Legislative
18  Analyst's Office. A true and correct copy of the relevant excerpts are attached
19  hereto as Exhibit D, and are available online at
20  http://www.lao.ca.gov/analysis_2009/crim_justice/crimjust_anl09.pdf;

21  5. Exerpts from the California Legislative Analyst's Office Overview of the 2009-
22  10 May Revision, dated May 21, 2009. This document, at page 25, outlines the
23  Legislative Analyst's recommendations for reducing the prison population:
24      a. Release inmates who have no current or prior serious, violent, or sex
25        offenses 30 days early.
26      b. Release inmates over the age of 55 who have no current or prior serious,
27        violent or sex offenses.
28      c. Enhance credit earnings available for inmates.

270826-1]

1        d.  Exclude new admission to prison who would serve less than six months.

2        e.  Require second and third "strikes" to be serious or violent for an offender

3            to get a full "Three Strikes" sentence enhancement.

4        f.  Adjust property crime thresholds.

5        g.  Reduce time served for parole revocations.

6        h.  Exclude parolees with technical and misdemeanor violations from

7            revocation to prison.

8        i.  Expand the use of alternative sanctions for parole violators.

9        j.  Implement earned discharge program for parolees.

10   A true and correct copy of the relevant excerpts are attached hereto as Exhibit E, and

11   are available online at

12   http://lao.ca.gov/2009/bud/may_revise/may_revision_052109.pdf.

13

14       The documents for which plaintiffs seek judicial notice are properly noticeable.  Each of

15   the documents is a public document, posted on a government website, that was created after

16   the close of evidence in this case and that concerns defendants' proposals to reduce the

17   California prison population.

18       Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of facts

19   that are capable of accurate and ready determination by resort to sources whose accuracy

20   cannot reasonably be questioned.  Fed. R. Evid. 201(b)(2).  The Court may take judicial notice

21   of a judicially noticeable fact "if requested by a party and supplied with the necessary

22   information."  Fed. R. Evid. 201(d).

23       Judicial notice is an appropriate mechanism for supplementing the record.  Judicial

24   notice may be taken at any stage in the proceedings.  Fed. R. Evid. 201(f).  Indeed, judicial

25   notice can be taken even during appeal, so long as the document of which notice is taken could

26   have been noticed by the trial court, and the opposing party has an opportunity to be heard.

27   *U.S. v. Camp*, 723 F.2d 741, 744 n.** (9th Cir. 1984).

28

270826-1]

1    Courts routinely take judicial notice of government documents, particularly where they

2 are posted on the government agency's official website. *See, e.g.*, *Modesto Irrigation Dist. v.*

3 *Pac. Gas & Elec. Co.*, 61 F. Supp. 2d 1058, 1066 (N.D. Cal. 1999) (taking judicial notice of

4 document posted on agency's website and "readily accessible through the Internet"); *Paralyzed*

5 *Veterans of Am. v. McPherson*, 2008 WL 4183981, * 5 (N.D. Cal. Sept. 9, 2008) (noting that

6 "[i]t is not uncommon for courts to take judicial notice of factual information found on the

7 world wide web. This is particularly true of information on government agency websites,

8 which have often been treated as proper subjects for judicial notice," and collecting cases

9 (citation omitted)); *In re Agribiotech Secur. Litig.*, 2000 WL 35595963, *2 (D. Nev. Mar. 2,

10 2000) ("In this new technological age, official government or company documents may be

11 judicially noticed insofar as they are available via the worldwide web."); *see also Lee v. City of*

12 *L.A.*, 250 F.3d 668, 688 (9th Cir. 2001); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d

13 964, 974 (E.D. Cal. 2004) (recognizing that court make take judicial notice of public

14 documents).

15    Because the documents for which plaintiffs seek judicial notice are appropriate subjects

16 of judicial notice and are relevant to the proceedings in this case, the Request for Judicial

17 Notice should be granted.

18

19

20 Dated: June 8, 2009                                    Respectfully submitted,

21                                                        */s/ Rebekah Evenson*
                                                          Rebekah Evenson
22                                                        Prison Law Office
                                                          Plaintiffs Counsel
23

24

25

26

27

28

EXHIBIT A



# 2009-10 MAY REVISION
## GENERAL FUND PROPOSALS

# INTRODUCTION

In February, the Governor signed a budget for 2009-10 five months before the constitutional deadline. That budget included spending cuts and revenue increases totaling $41.6 billion and eliminated the largest budget gap in the state's history.

As the global recession has deepened, the budget has again fallen out of balance. Specifically, the May Revision projects spending this year and next will exceed available funds by $15 billion in the absence of any corrective action. Moreover, the budget assumes the passage of propositions 1A, 1B, 1C, 1D and 1E on the May 19 ballot. Should these measures all fail, the budget will be an additional $5.8 billion out of balance in 2009-10. Out-year deficits would also be higher given a revenue loss of $16.2 billion. INT-01 displays the changes in estimates that result in the new budget shortfall.

**May Revision Budget Shortfall**
(Dollars in Millions)

|  |  | Total Reserve |
|---|---:|---:|
| **June 30, 2010 Reserve Projected as of 2009 early Budget Act** |  | **$2,103** |
| Workload Adjustments: |  | -$15,546 |
| Revenues | -12,401 |  |
| Proposition 98 Expenditures (Mainly Property Tax Revenue Loss) | -1,090 |  |
| Non Proposition 98 Expenditures | -2,317 |  |
| Federal Stimulus Funds General Fund Offset | 262 |  |
| Rebuild Reserve |  | -2,000 |
| Budget Shortfall Assuming Passage of the Propositions |  | -$15,443 |
| Budget Shortfall if the Propositions Fail on May 19 |  | -$21,279 |

SUMMARY OF MAJOR SOLUTIONS BY CATEGORY

---

### PROGRAM SAVINGS

Major proposals previously included in the Governor's Budget but not adopted as part of the 2009 Budget Act are as follows:

- $8.8 million—**10-Percent Rate Reduction for All Drug Medi-Cal Treatment Modalities**. This program funds substance abuse treatment services for Medi-Cal eligible individuals.

Major new contingency proposals:

- $182.1 million—**Targeted Reductions in Prison Population.** The Federal Government's State Criminal Alien Assistance Program (SCAAP) has historically underfunded the state's cost to incarcerate undocumented inmates housed in California's state prisons. Additionally, the new Administration is proposing to eliminate funding for the SCAAP and instead augment resources to enhance border security. In light of these factors, and given the continued and ever-growing fiscal difficulty facing the state, it is becoming progressively more challenging for the state to afford to incarcerate the number of inmates in state prison, including the approximately 19,000 undocumented immigrants in our prison system. As such, unless the state can begin receiving an appropriate amount of reimbursement from the SCAAP, the state will have to begin approving, as appropriate, applications for commutation of sentences submitted by undocumented immigrants in our prison system and having them immediately deported by Federal Immigration and Customs Enforcement. Targeted commutations would provide necessary savings during this unprecedented fiscal crisis.

- $99.9 million—**Change Sentencing Options for Low-Level Offenders**. Eliminate the current sentencing options for specified crimes that may be treated either as felonies or misdemeanors, making them punishable by a jail term rather than state prison. This is proposed as a necessary cost savings measure that prioritizes the incarceration and rehabilitation of the most serious offenders.

- $108 million—**Eliminate Funding for Substance Abuse Treatment and Crime Prevention**. As enacted, the Substance Abuse and Crime Prevention Act (SACPA) (Prop. 36) guaranteed state funding for only the first 5 years, 2001 through 2006. This proposal eliminates $108 million General Fund for SACPA ($90 million) and the Substance Abuse Offender Treatment Program ($18 million).

- $24.6 million—**HIV Education and Prevention**. This program provides $24.6 million General Fund to local health jurisdictions to prevent HIV transmission, change attitudes and behavior related to HIV, and promote risk-reduction skills.

# EXHIBIT B

## 2009-10 MAY REVISION

## Workload Budget (estimated on May 26, 2009)

### (Dollars in Millions)

|  | 2008-09 | 2009-10 | 2010-11* |
|---|---|---|---|
| **Prior Year Balance** | $2,308 | -$6,270 | -$18,208 |
| Revenues and Transfers | $85,946 | $88,805 | $90,656 |
| **Total Resources Available** | $88,254 | $82,535 | $72,448 |
| Non-Proposition 98 Expenditures | $59,216 | $60,397 | $67,438 |
| Proposition 98 Expenditures | $35,308 | $40,345 | $40,443 |
| **Total Expenditures** | $94,524 | $100,742 | $107,881 |
| **Fund Balance** | -$6,270 | -$18,208 | -$35,433 |
| **Budget Reserves:** |  |  |  |
| Reserve for Liquidation of Encumbrances | $1,079 | $1,079 | $1,079 |
| **Special Fund for Economic Uncertainties** | -$7,349 | -$19,286 | -$36,511 |

* Preliminary

1

## Additional General Fund Reduction Proposals for 2009-10 May Revision

(Dollars in Millions)

| | Title and Short Description | Impact on GF Reserve | | |
|---|---|---|---|---|
| | | 2008-09 and Prior | 2009-10 | 2010-11 |
| 19 | **Offset GF Highway bond debt service with local share of gas tax**—Reduce local share from $1.05 billion to $300 million and redirect $750 million to pay current and prior year debt service on highway bonds. The amount is 25 percent of total fuel tax revenues as allowed under Article XIX, Sec. 5. | 0.0 | 744.0 | 745.0 |
| 20 | **Reduce GF Support for Courts by Another 10 percent and Require Electronic Court Reporting** | 0.0 | 181.6 | 190.8 |
| 21 | **Additional Reduction to Prison Population**—Commute sentences of nonviolent, non-serious, non-sex offenders one year early. | 0.0 | 120.5 | 0.0 |
| 22 | **Reduce Corrections Contract Expenditures, Reduce Rehabilitation Program and Make Other Reductions to CDCR.** Impacted programs include a range of rehabilitative services, such as substance abuse counseling, vocational training, and educational programs. In addition, funding for building maintenance is being eliminated on a one-time basis in 2009-10 and other operational savings will be achieved. | 0.0 | 788.5 | 914.4 |
| 23 | **Eliminate Funding for Various Community Clinic Programs**—This proposal eliminates funding for Indian Health, Seasonal and Agricultural and Migratory Workers, Rural Health Services Development, and Expanded Access to Primary Care. | 0 | 34.2 | 34.2 |
| 24 | **Eliminate Remaining General Fund in Maternal, Child, and Adolescent Health**—This is in addition to the General Fund reduction included in the "Contingency Reductions" in the May Revision. | 0 | 10.2 | 10.2 |

4

EXHIBIT C

F:\Unit\GF\2009-10\MR\Comprehensive Solutions Technical.xls

# All General Fund Solution Proposals for May Revision
## (Dollars in Millions)

| # | PIT | Org | Dept | Issue Title | Impact on Reserve | | |
|---|---|---|---|---|---|---|---|
| | | | | | 2008-09 and prior | 2009-10 | 2010-11 |
| 9 | C | 0250 | Judicial Branch | Reduce GF Support for Courts by Another 10 percent and Require Electronic Court Reporting | 0.0 | 181.6 | 190.8 |
| | A | 1100 | Science Center | Delay Opening of Science Center Phase II by One Year | 0.0 | 2.8 | 0.0 |
| 3 | A | 1730 | FTB | Increase Estimate Payments - Increase PIT and Corp second quarter estimate payments by 10 percent. | 0.0 | 610.0 | 95.0 |
| | B | 1730 | FTB | Increase PIT Withholding by 10% - Taxpayers can opt out. | 0.0 | 1,700.0 | 98.0 |
| | A | 1760 | Department of General Services | No State Capitol Repairs in 2009-10 | 0.0 | 6.6 | 0.0 |
| 6 | A | 2640 | Public Transit | Use Increased Spillover and other PTA revenues for General Fund Uses | 0.0 | 336.0 | 593.0 |
| | C | 2660 9901 | Caltrans/ Various | Offset GF Highway bond debt service with local share of gas tax--Reduce local share from $1.028 billion to $284 million and redirect $744 million to pay current and prior year debt service on highway bonds. The amount is 25 percent of total fuel tax revenues as allowed under Article XIX, Sec. 5. | 0.0 | 744.0 | 745.0 |
| | A | 3540 | CAL FIRE | CAL FIRE Interagency Agreement with the Legislature | 12.5 | 24.9 | 0.0 |
| | C | 3540 | CAL FIRE | Eliminate funding for CALFIRE Equipment Replacement--One time elimination of funding for equipment replacement. | 0.0 | 17.0 | 0.0 |

May 29, 2009 11:00am

# All General Fund Solution Proposals for May Revision
## (Dollars in Millions)

| # | PIT | Org | Dept | Issue Title | 2008-09 and prior | Impact on Reserve | |
|---|-----|-----|------|-------------|-------------------|-------------------|---|
| | | | | | | 2009-10 | 2010-11 |
| 61 | B | 5180 | Social Services | Reduce Funding for Child Welfare Services by 10 percent | 0.0 | 70.6 | 70.6 |
| 62 | C | 5180 | Social Services | Eliminate California Work Opportunity and Responsibility to Kids Program | 0.0 | 1,312.1 | 1,765.2 |
| 63 | C | 5180 | Social Services | Eliminate State Funding for Community Care Licensing—This piece would eliminate the inspection protocol for licensed facilities (eliminate random and required annual visits). | 0.0 | 12.6 | 25.1 |
| 64 | C | 5180 | Social Services | Eliminate State Funding for Community Care Licensing—This piece would increase annual and application fees by 56 percent. | 0.0 | 6.9 | 13.9 |
| 65 | D | 5180 | Social Services | HHS Realignment. Redirect realignment savings resulting from IHSS, CalWORKs, and other areas to fund an increased county share in Department of Social Services children's programs. | 0.0 | 550.0 | 625.0 |
| 66 | D | 5180 | Social Services | Provide IHSS Only to the Neediest Consumers - Only recipients with Functional Index scores of 4.0 and above would continue to receive all services. | 0.0 | 230.8 | 400.0 |
| 67 | B | 5225 | Corrections and Rehabilitation | Deport Undocumented Inmates - Refer criminal aliens to federal Immigration and Customs Enforcement (ICE) for deportation. | 0.0 | 182.1 | 345.2 |
| 68 | B | 5225 | Corrections and Rehabilitation | Change Sentencing Options for Low Level Offenders - Eliminate the current sentencing options for specified crimes that may be treated either as felonies or misdemeanors, making them punishable by a jail term rather than state prison. | 0.0 | 99.9 | 359.7 |

# All General Fund Solution Proposals for May Revision

(Dollars in Millions)

| # | PIT | Org | Dept | Issue Title | Impact on Reserve | | |
|---|-----|-----|------|-------------|-------------------|---|---|
| | | | | | 2008-09 and prior | 2009-10 | 2010-11 |
| 69 | C | 5225 | CDCR | Additional Reduction to Prison Population--Reduce time served/provide alternative placements for certain offenders. | 0.0 | 120.5 | 0.0 |
| 70 | C | 5225 | CDCR | Reduce Corrections Contract Expenditures, Reduce Rehabilitation Program and Make Other Reductions to CDCR. Impacted programs include a range of rehabilitative services, such as substance abuse counseling, vocational training, and educational programs. In addition, funding for building maintenance is being eliminated on a one-time basis in 2009-10 and other operational savings will be achieved. | 0.0 | 787.1 | 914.4 |
| 71 | A | 6110 | Department of Education | Reduce Funding for K-12 without Violating the Federal Stimulus MOE Requirement | 800.0 | 1,600.0 | 1,558.9 |
| 72 | B | 6110 | Department of Education | Further Reduce Proposition 98 for K-12 without Violating the Federal Stimulus MOE Requirement. | 617.0 | 1,512.0 | 1,874.7 |
| 73 | D | 6110 | Department of Education | Proposition 98 Contingent Appropriation Based on potential $3 billion revenue loss - Reflects savings resulting from reducing Proposition 98 if revenues are $3 billion lower than estimated. TBL would authorize DOF to notify the SPI to make an adjustment to the deficit factor to restore the some or all of the reduction in funding if revenues come in at a higher level. The language would also include notification to the Legislature. | 0.0 | 680.0 | 0.0 |
| 74 | A | 6440 | University of California | Reduce Funding for UC without Violating the Federal Stimulus MOE Requirement-Restore with SFSF | 510.0 | 0.0 | 0.0 |

May 29, 2009 11:00am

# EXHIBIT D

LAO

Mac Taylor
Legislative Analyst

January 30, 2009

2009-10 Budget Analysis Series

# Judicial and Criminal Justice



The primary trade-off with this option is the potential impact on public safety. Affected offenders would no longer be under state supervision, and if they committed new offenses, they would not be eligible for return to prison through the state's revocation process. However, they could still be convicted in court for any new crimes. In addition, early discharge would take some additional effort by CDCR staff to implement. That is because the department would need to identify which inmates met the criteria for early discharge and verify that they meet any relevant criteria before discharging them. (In our *2008-09 Budget: Perspectives and Issues* publication, we proposed the realignment of parole to counties. Our proposal has many of the same state benefits as early discharge but provides better public safety outcomes by keeping the offenders under local probation supervision. We continue to recommend consideration of this approach.)

**Governor's Budget Includes Three Population Reduction Proposals**

*Summary of the Governor's Proposals.* The Governor's budget includes three proposals intended to reduce the inmate and parole populations and generate combined savings that would reach $800 million annually at full implementation (2010-11). Figure 10 shows the savings level for the three proposals, as well as other related savings from implementing the proposals.

The population reduction proposals

included in the Governor's 2009-10 budget plan are identical to those the administration proposed as part of the November and December special sessions to address the serious state budget shortfall. In total, this set of proposals would reduce the state corrections populations by about 16,000 inmates and 66,000 parolees at full implementation. We describe each of the Governor's proposals below.

➤ *Early Discharge.* The Governor proposes direct discharge (no parole) for all inmates released from prison who have no current or prior serious, violent, or sex offenses. This proposal would be responsible for a majority of the estimated reduction in the inmate and parole populations under the Governor's plan.

➤ *Credit-Earning Enhancements.* The Governor also proposes to allow inmates to earn additional credits that would reduce the time they would otherwise serve in prison. Most of the estimated savings would result from two specific changes: (1) allowing many inmates to earn the same level of credits while in local jails, awaiting transfer to state prison, that they

**Figure 10**

**Savings From Governor's Population Reduction Proposals**

(In Millions)

| Proposal | 2008-09 | 2009-10 | 2010-11 |
|---|---|---|---|
| Early discharge | $19.9 | $206.2 | $407.1 |
| Credit-earning enhancements | 7.8 | 104.4 | 104.4 |
| Update property crime thresholds | — | 51.3 | 51.3 |
| Ancillary savings | 20.4 | 279.0 | 208.0 |
| Implementation and other costs | (38.4) | (42.5) | (42.5) |
| **Totals** | **$9.6** | **$598.4** | **$800.3** |

can already earn in state prison (one day of credit for each day served) and (2) allowing many inmates to earn additional credits for completing rehabilitation programs, including academic or vocational education and substance abuse treatment.

➢ *Update Property Crime Thresholds.* The administration proposes to update certain property crime thresholds for inflation. Under this proposal, many property crime thresholds would more than double. For example, the threshold for grand theft would increase from $400 to $950.

➢ *Ancillary Savings.* The Governor's budget plan identifies other areas of the department's budget that could be reduced if the inmate and parole populations were reduced substantially. This includes savings for revocation hearings, local assistance payments to county jails, and various community-based programs for parolees.

➢ *Implementation and Other Costs.* The administration identified about $7 million in ongoing costs for the department to implement the above changes, particularly to do the casework necessary to recalculate release dates and identify which inmates are eligible for early discharge. The proposed budget also includes adjustments to take into account actions already scored in the department's budget, such as savings related to the implementation of the PVDMI, so as not to double-count the savings.

***Proposals and Estimated Savings Seem Reasonable.*** We find that the administration's estimates of the savings that could be achieved from these proposals are reasonable, although the actual savings would depend on various factors. These factors include (1) the number of discharged offenders who commit new crimes for which they are sent to prison, (2) the number who are no longer eligible for state prison because the value of their property offense no longer meets the statutory threshold, and (3) the number who successfully complete prison programs. The administration's estimated savings for the current and budget year assume implementation by February 1, 2009. The administration has acknowledged that actual savings would be reduced in the short-term if implementation was delayed.

The Governor's proposed package of reforms generally provides a reasonable starting point for the Legislature to consider making correctional population reductions a part of its approach to balancing the state budget. For example, the proposed increase in credit-earning would result in only a modest reduction in time served for most inmates. In addition, the program completion credits may actually help reduce the likelihood that offenders commit new crimes after release by providing an incentive for them to participate in programs that are linked to reduced recidivism. Our analysis also indicates that the change in the property crime thresholds would result in only a small shift of property offenders from state prison to the local corrections system.

***Direct Discharge Proposal Raises Concerns.*** The Governor's early discharge proposal to release tens of thousands of offenders from prison without any community supervision (either through state parole or county probation) raises

some concerns because of its potential impact on public safety. Moreover, as now proposed by the administration, the release of particular offenders would not be based upon any assessment of their risk to reoffend. In order to help alleviate some of these public safety concerns, we propose below an alternative package for the Legislature to consider.

**LAO's Alternative Proposals for Correctional Population Reduction**

In developing an alternative package of correctional population proposals, we attempt a better balance between the need to achieve budgetary savings and the goal of also protecting public safety. Our alternative essentially builds upon the Governor's proposals by modifying the direct discharge proposal and replacing it with an earned discharge strategy. We believe earned discharge would provide a better balance with public safety by tying the discharge of offenders

from parole to factors such as their risk to reoffend and actual behavior in the community. Our alternative would retain the Governor's proposals to enhance credit-earning and changing the thresholds for various property crimes. Our alternative package results in roughly the same magnitude of savings as the Governor's plan when fully implemented.

The primary trade-off of implementing earned discharge instead of direct discharge is that our approach would achieve less state savings than the Governor's budget proposal. Our alternative makes up for this loss of savings by including three additional policy changes: (1) changing petty theft with a prior, currently a wobbler, to a misdemeanor, (2) expanding the use of alternative community-based sanctions for parole violators, and (3) allowing early release (by two months) for those inmates who are evaluated as being low-risk to reoffend and who have no current or prior serious, violent, or sex offenses.

Figure 11 summarizes the components of our alternative package.

*LAO Alternative Has Several Advantages.* At full implementation, we estimate our alternative package would reduce the prison population by about 23,000 inmates, and save the state about the same amount as the Governor's plan ($800 million). (Over time, it is possible that the total savings could be even greater as the department modifies other

**Figure 11**

## LAO Alternative Package of Population Reduction Options

*(Dollars in Millions)*

| | Reductions at Full Implementation | |
| --- | --- | --- |
| | Inmate Population | State Savings |
| **Modifying Governor's Proposals** | | |
| Earned discharge | 5,185 | $169 |
| Enhanced credit earning | 2,868 | 104 |
| Property crime thresholds | 2,778 | 51 |
| Ancillary savings | — | 280 |
| Implementation/other costs | — | -43 |
| **Additional Options to Reach Total Savings** | | |
| Alternative sanctions | 6,534 | $91 |
| Wobbler to misdemeanor[a] | 4,253 | 117 |
| Early release | 1,502 | 36 |
| **Totals** | **23,120** | **$805** |

[a] Petty theft with a prior.

2009-10 BUDGET ANALYSIS SERIES

areas of its operations to take into account the decrease in the prison population.) Most of these savings could begin to be realized immediately or within a few months. Only the implementation of alternative sanction programs would take more time in order to expand the availability of these programs. The level of savings that would be achieved in 2009-10 would depend on when the policies are implemented. A later implementation date would reduce budget-year savings because of the time it takes to change department policies and procedures, as well as to eliminate the affected staff positions. For example, we estimate that about one-half of the potential $800 million savings could be achieved in 2009-10 if the proposals were implemented by March 1, 2009. Implementation on July 1, 2009, on the other hand, would reduce budget-year savings, possibly to as little as one-third of the total savings achievable at full implementation.

Importantly, our proposed alternative would minimize the risk to public safety by focusing on lower-level offenders, utilizing risk assessments, and expanding the use of best practices like alternative sanctions and earned discharge. Finally, we estimate that this plan would have only minimal direct impact on local governments. Although the change of petty theft with a prior to a misdemeanor would shift about 4,400 inmates (and about 5,600 parolees) to the local corrections system, this would represent only a 2 percent increase in the local corrections population.

While we think the above package has advantages compared to the Governor's proposals, it is certainly not the only set of options available to the Legislature. So, the Legislature could certainly remove, replace, or modify any of these components to reflect its own choices about the

trade-offs between achieving state savings and protecting the safety of the public, as well as consideration of the other criteria.

**Impacts on Prison Facilities From Reducing the Inmate Population**

We would note that before the Legislature adopts any policies designed to reduce the inmate population, it should require CDCR to present a plan during budget hearings that would identify how it would implement these reductions. The plan should take into consideration how the projected reduction in the inmate population would be spread among inmates in reception centers, prisons of various security levels, and female prisons. Further, the plan should present how the administration would prioritize the reduction of different types of beds, such as those in gyms and dayrooms, contracted facilities, and reception centers. This plan should also assess the extent to which population reductions would eventually delay or eliminate the future need to construct prison facilities. This above plan would help the Legislature evaluate the full impact of significant population reductions on both operational and capital costs.

# REALIGNING CERTAIN CRIMINAL JUSTICE PROGRAMS

*Governor's Fund Shift Proposal.* The Governor's 2009-10 budget proposes to shift the funding for four local public safety programs from the General Fund to VLF. These programs include the Citizens' Option for Public Safety program (COPS), the Juvenile Justice Crime Prevention Act, local detention facility subventions (booking fees), and juvenile probation grants. Local governments would collectively receive $359 million of VLF—resources currently allocated to DMV.

EXHIBIT E



# Overview of the
# 2009-10 May Revision

MAC TAYLOR • LEGISLATIVE ANALYST • MAY 21, 2009



AN LAO REPORT

**Appendix**

## LAO Budget Options

*General Fund Benefit (In Millions)*

| Department | Option | 2009-10 | 2010-11 |
|---|---|---|---|
| **K-14 Education** | | | |
| K-12 Education | Suspend General Fund support for Program Improvement schools participating in the Quality Education Investment Act. | $326.0 | — |
| K-12 Education | Suspend General Fund support for special education residential placements. | 59.0 | — |
| K-12 Education | Suspend General Fund support for state special schools. | 38.7 | — |
| K-12 Education | Eliminate 200 California Department of Education positions associated with categorical programs eliminated in February package. | 10.0 | — |
| K-12 Education | Place measure on ballot to remove autopilot funding formula for After School Education and Safety program. | — | $550.0 |
| K-14 Education | Eliminate six of costliest K-12 mandates and three of costliest community college mandates. | — | — |
| **Higher Education** | | | |
| CPEC | Eliminate non-core functions of commission. | $0.4 | $0.4 |
| CSAC | Raise Cal Grant B eligibility to 2.5 GPA. | 11.0 | 11.0 |
| CSU | Phase out state support for professional schools. | — | 10.0 |
| CSU | Increase average faculty teaching load by 1 course per year. | 120.0 | 120.0 |
| CSU | Increase average class size by another 5 percent. | 67.5 | 67.5 |
| CSU | Reduce non-instructional staffing 5 percent through hiring freeze, furloughs, and layoffs. | 70.0 | 70.0 |
| CSU | Increase fees an additional 5 percent to offset General Fund support (net of additional Cal Grant costs). | 37.5 | 37.5 |
| CSU | Suspend Math and Science Teacher Initiative. | 2.7 | 2.7 |
| CSU | Eliminate state subsidy for students taking excess units for out-year savings of $48 million annually. | — | — |
| CSU | Fund pre-collegiate coursework at CCC rate. | 12.4 | 12.4 |
| UC | Phase-out state support for professional schools. | — | 25.0 |
| UC | Increase average faculty teaching load by 1 course per year. | 135.0 | 135.0 |
| UC | Increase average class size by another 5 percent. | 50.0 | 50.0 |
| UC | Reduce non-instructional staffing 5 percent through hiring freeze, furloughs, and layoffs. | 140.0 | 140.0 |
| UC | Increase fees an additional 5 percent to offset General Fund support (net of additional Cal Grant costs). | 42.0 | 42.0 |
| UC | Reduce state portion of research support by 10 percent. | 26.6 | 26.6 |
| UC | Eliminate California Summer School for Math and Science. | 1.9 | 1.9 |
| UC | Eliminate state subsidy for students taking excess units for out-year savings of $10 million annually. | — | — |

APPENDIX

| Department | Option | 2009-10 | 2010-11 |
|---|---|---|---|
| **Health** | | | |
| DADP | Redirect state and federal asset forfeiture proceeds to support drug treatment programs. | $10.0 | $10.0 |
| DADP | Use federal Byrne Grant funds to supplement substance abuse treatment activities provided by the Offender Treatment Program. | 50.0 | 15.0 |
| DDS | Expand the Family Cost Participation Program to all regional center (RC) purchase of services except 24-hour care. | 7.5 | 11.3 |
| DDS | Define the term cost-effective in the Lanterman Developmental Disabilities Services Act. | 5.0 | 11.0 |
| DDS | Implement regulations to govern RC expenditures for miscellaneous services. | Unknown | Unknown |
| DDS | Increase RC's authority to conduct utilization reviews of all RC-funded services. | Unknown | Unknown |
| DDS | Reduce provider payments and limit access to services if stakeholder process is unsuccessful. | 234.0 | 234.0 |
| DHCS | Suspend grants (Seasonal Agricultural and Migratory Workers Program, Indian Health Program, Rural Health Services Development Program) to primary care clinics. | 22.0 | 22.0 |
| DHCS | Suspend state-only funding for the Expanded Access to Primary Care program. | 13.5 | 13.5 |
| DHCS | Implement a pilot program to contract with a broker for Medi-Cal non-emergency medical transportation. | Unknown | Unknown |
| DHCS | Implement copays for nonemergency use of emergency rooms. | 5.8 | 7.7 |
| DHCS | Apply Federal Deficit Reduction Act eligibility requirements to Minor Consent Program to obtain federal funds | 10.9 | 14.5 |
| DHCS | Shift eligibility determinations from the counties to the state. | — | 17.5 |
| DHCS | Reduce benefits to the federal minimum—eliminate payment for over the counter drugs in the Medi-Cal Program. | 8.6 | 11.5 |
| DHCS | Impose a temporary rate cap on nursing home rate increases. | 9.2 | 22.2 |
| DHCS | Eliminate Medicare Part B payments for all beneficiaries who have not met their Medi-Cal share-of-cost. | 4.1 | 5.4 |
| DHCS | Use the Public Assistance and Reporting Information System to disenroll beneficiaries no longer in California. | 2.7 | 5.4 |
| DPH | Reduce several HIV/AIDS programs: (1) expand client cost-sharing and limit the formulary in AIDS Drug Assistance Program; and (2) reduce other HIV/AIDS programs. | 24.6 | 24.6 |
| DPH | Suspend General Fund support for Alzheimer's Disease research. | 6.2 | 6.2 |
| DPH | Suspend General Fund support for immunization assistance to local agencies. | 18.0 | 18.0 |
| DVA | Delay opening the Adult Day Health Care programs at the new veterans homes in Lancaster and Ventura. | 1.1 | 4.6 |

APPENDIX

| Department | Option | 2009-10 | 2010-11 |
|---|---|---|---|
| MRMIB | Implement co-payment increase in Healthy Families Program (HFP) as proposed by Governor in his 2008-09 budget proposal. | $1.9 | $2.9 |
| MRMIB | Lower HFP Dental Cap to $1,000 as proposed by Governor in his 2008-09 budget proposal. | 1.9 | 2.8 |
| MRMIB | Increase HFP premiums for beneficiaries with family incomes over 150 percent of the federal poverty level by $8-$13 per month. | 19.1 | 28.2 |
| MRMIB | Modify eligibility for Access for Infants and Mothers so women with high-deductible private coverage would keep their coverage and receive assistance in paying their deductibles. | 5.6 | 11.0 |
| **Social Services** | | | |
| Aging | Eliminate Linkages program. | $7.9 | $7.9 |
| Child Support Services | Create matching program for local child support agencies. | 4.0 | 4.0 |
| Child Support Services | Reduce child support automation staff by 10 percent. | 0.5 | 0.5 |
| EDD | Shift Workforce Investment Act funds to offset General Fund costs in the California Departmentof of Corrections and Rehabilitation (CDCR) parolee employment programs or California Conservation Corps. | 37.0 | 37.0 |
| OSI/Social Services | Reduce welfare automation maintenance and operations by 10 percent in 2009-10 and 2010-11. | 6.0 | 6.0 |
| OSI/Social Services | Reduce child welfare system maintenance and operations  by 10 percent in 2009-10. | 4.0 | — |
| OSI/Social Services | Delay CalWORKs Business Analytics and Reporting System by two years. | 1.8 | 4.2 |
| Social Services | Make CalWORKs work participation voluntary through September 2010. | 201.8 | 0.0 |
| Social Services | Adopt community service requirement for parents who have been on aid for more than five years effective Oct. 1, 2010. | — | 16.7 |
| Social Services | Make an in-person interview a condition of eligibility for CalWORKs effective Oct. 1, 2010. | — | 16.8 |
| Social Services | Modify CalWORKs earned income disregard to better reward work effective Oct. 1, 2010. | — | 15.0 |
| Social Services | Suspend "hold harmless" budgeting methodology for Child Welfare Services (CWS) for three years. | 9.7 | 9.7 |
| Social Services | Reform Adoption Assistance Program (AAP) prospectively. | 2.0 | 12.0 |
| Social Services | Eliminate the supplemental clothing allowance for Foster Care, Kin-GAP, and AAP. | 10.0 | 10.0 |
| Social Services | Eliminate the Dual Agency Rate Supplement. | 5.4 | 5.4 |
| Social Services | Reduce funding for the Extended Independent Living Program. | 10.0 | 10.0 |
| Social Services | Eliminate funding for emancipated foster youth stipends. | 3.6 | 3.6 |
| Social Services | Reduce Community Care Licensing visit protocol from 30 percent to 10 percent random sample for non-residential facilities and 20 percent random sample for residential facilities. | 10.0 | 10.0 |
| Social Services | Eliminate the Kinship Support Services Program. | 4.0 | 4.0 |

APPENDIX

| Department | Option | 2009-10 | 2010-11 |
|---|---|---|---|
| Social Services | Cap fully loaded CWS social worker costs at $155,000. | $4.0 | $4.0 |
| Social Services | Establish 30 percent county share for Transitional Housing Program Plus for emancipated foster youth. | 12.3 | 12.3 |
| Social Services | Restrict California Food Assistance Program to legal non-citizens residing alone. | 25.3 | 40.8 |
| Social Services-IHSS | Eliminate or reduce In-Home Supportive Services (IHSS) share-of-cost buyouts. | 35.6 | 47.5 |
| Social Services-IHSS | Make IHSS advisory committees optional and eliminate state support. | 1.6 | 1.6 |
| Social Services-SSI/SSP | Reduce SSI/SSP couples grants to federal minimum. | 80.0 | 98.0 |
| Social Services-SSI/SSP | Eliminate veterans program for Philippine residents. | 2.5 | 3.3 |
| Social Services-SSI/SSP | Eliminate SSI/SSP Restaurant meal allowance and allow for one-time purchase of cooking equipment. | 25.0 | 30.0 |
| Social Services-CAPI | Restrict Cash Assistance Program for Immigrants (CAPI) to most vulnerable populations, such as those living alone or those without adequate sponsors. | 34.0 | 45.0 |
| **Judiciary and Criminal Justice** | | | |
| CalEMA | Eliminate California Gang Reduction Intervention and Prevention program and Internet Crimes Against Children Task Force. | $10.0 | — |
| Corrections | Close one youth correctional facility. | — | $15.0 |
| Corrections | Use AB 900 funds for reentry facility site evaluations. | 5.0 | — |
| Corrections | Release inmates who have no current or prior serious, violent, or sex offenses 30 days early. | 50.0 | 50.0 |
| Corrections | Release inmates over the age of 55 who have no current or prior serious, violent, or sex offenses. | 9.0 | 9.0 |
| Corrections | Enhance credit earnings available for inmates. | 104.0 | 104.0 |
| Corrections | Exclude new admissions to prison who would serve less than six months. | 51.0 | 57.0 |
| Corrections | Require second and third "strikes" to be serious or violent for an offender to get a full "Three Strikes" sentence enhancement. | 10.0 | 50.0 |
| Corrections | Adjust property crime thresholds. | 51.0 | 51.0 |
| Corrections | Reduce time served for parole revocations. | 96.0 | 143.0 |
| Corrections | Exclude parolees with technical and misdemeanor violations from revocation to prison. | 262.0 | 350.0 |
| Corrections | Expand the use of alternative sanctions for parole violators. | 94.0 | 94.0 |
| Corrections | Implement earned discharge program for parolees. | 100.0 | 175.0 |
| Department of Justice | Charge forensic lab fees. | 20.0 | 40.0 |
| Department of Justice | Eliminate Underground Economy program. | 0.6 | 0.6 |
| Department of Justice | Reduce funding for the Bureau of Narcotics Enforcement. | 20.0 | 20.0 |
| Judicial Branch | Suspend conservatorship program for an additional year. | — | 17.4 |

APPENDIX

| Department | Option | 2009-10 | 2010-11 |
|---|---|---|---|
| Judicial Branch | Implement electronic court reporting. | $12.6 | $32.5 |
| Judicial Branch | Phase in competitive bidding for court security. | 20.0 | 40.0 |
| Judicial Branch | Transfer funding from the Immediate and Critical Needs Account to the General Fund for two years. | 275.0 | 275.0 |
| Public Safety Local Assistance | Redirect half the revenue from temporary .15 percent VLF increase to the General Fund, which supports various public safety grant programs. Remaining funds would support a consolidated juvenile justice program at a reduced level. | 250 | 250 |
| **Resources** | | | |
| CalFire | Eliminate funding for DC-10 aircraft contract. | $6.8 | $6.8 |
| CalFire | Delay vehicle replacements. | 17.0 | (17.0) |
| CalFire | Close low-priority fire stations and other facilities. | 10.0 | 10.0 |
| CalFire | Enact wildland fire protection fee. | 270.0 | 270.0 |
| Conservation Corps | Eliminate California Conservation Corps. | 17.1 | 34.2 |
| Energy Commission | Loan monies to General Fund from balance in Alternative and Renewable Fuel and Vehicle Technology Fund. | 35.0 | — |
| Energy Commission | Loan monies to General Fund from balance in Renewable Resource Trust Fund. | 140.0 | (40.0) |
| Fish and Game | Increase regulatory fees. | 3.0 | 3.0 |
| Fish and Game | Suspend General Fund support for Marine Life Protection Act Initiative. | 4.8 | 4.8 |
| Fish and Game | Eliminate General Fund support for California Environmental Quality Act review. | 2.5 | 2.5 |
| OEHHA | Fund regulatory support activities fully from fees. | 5.0 | 5.0 |
| Parks and Recreation | Increase state park fees (beyond the Governor's proposal). | 12.5 | 25.0 |
| State Water Board | Increase fees by expanding fee base to pay for water quality management activities. | 19.7 | 19.7 |
| State Water Board | Increase fees in core regulatory permitting and enforcement program. | 6.9 | 6.9 |
| State Water Board | Eliminate General Fund support for Total Maximum Daily Load program to regulate water pollution. | 10.6 | 10.6 |
| Various Resources Departments | Eliminate General Fund support for CALFED program oversight. | 7.2 | 7.2 |
| Various Resources Departments | Eliminate General Fund support for timber harvest plan reviews. | 21.6 | 21.6 |
| Water Resources | Increase fees to fully pay for (1) watermaster program and (2) Central Valley Flood Protection Board and related programs. | 8.7 | 8.7 |
| Water Resources | Eliminate General Fund support for California Irrigation Management Information System. | 1.0 | 1.0 |
| Water Resources | Eliminate General Fund support for Delta levees. | 4.9 | 4.9 |
| **Transportation** | | | |
| Caltrans | Partially suspend Proposition 42 transfer. | $1,152.8 | — |
| Caltrans | Reimburse General Fund for transit debt service from "spill-over" revenues in Mass Transportation Fund (MTF). | 426.7 | — |