PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OPF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**[PROPOSED] ORDER REGARDING DEFENDANTS' SPRING 2009 BED PLAN**<br><br>Submitted to Special Master Matthew Lopes With a Copy Filed With the Court Pursuant to the Order of March 31, 2009 (Docket No. 3556)<br><br>Hearing: June 16, 2009, 1:30 p.m.<br>**COURT: HON. LAWRENCE K. KARLTON** |

The enormous gap between existing mental health placements and the hundreds of *Coleman* class members in need of outpatient and inpatient mental healthcare has plagued this case for at least the past decade. Since 2005, Defendants have created at least six mental health bed plans intended to ameliorate the gap, yet only a few discreet projects from those plans have been completed.

On February 17, 2009, almost four years after Defendants submitted their first bed plan in March of 2005, this Court granted Plaintiffs' motion for an evidentiary hearing regarding Defendants' efforts to bridge the gap between placement supply and demand. After Defendants sought a 90-day extension of time to submit their report on their mental health bed planning efforts, this Court ordered Defendants to file a progress report within 10 days on their emergency and long-range plans to meet mental health placement needs. Defendants submitted a written progress report on March 19, 2009. Plaintiffs filed objections to the report on March 23, 2009.

The Court heard argument on March 24, 2009. On March 31, 2009, the Court ordered Defendants to take additional steps with respect to two projects (a long-delayed 50-bed crisis unit at the California Medical Facility, Vacaville, and a then nearly completed 64-bed intermediate inpatient care facility at Salinas Valley State Prison). The Court also ordered Defendants' representatives to work with the Special Master to develop detailed activation schedules for all other court-ordered construction projects, and to file an updated mental health bed plan that meets the remaining short-term, intermediate, and long-range bed needs of the Plaintiff class.

The March 31, 2009 Order also required Defendants, in conjunction with the Special Master, to conduct an assessment to determine whether there are unmet needs for inpatient care among members of the Plaintiff class and to refer on an expedited basis any patients identified during the modified assessment for appropriate inpatient care.

Defendants submitted their Activation Schedule and Bed Plan on May 26, 2009. Plaintiffs provided comments to the Special Master, with a copy to the Court on June 9, 2009. This Court held a hearing regarding the bed plan on June 16, 2009.

After careful consideration of the record and good cause appearing, THE COURT NOW MAKES THE FOLLOWING ORDERS:

1. The Court makes the following orders regarding Defendants' emergency mental health bed planning projects: For purposes of this order, the words "activate" and "activation" shall mean that the facility or program shall be fully staffed and operational and serving *Coleman* class member patients.[1]

2. Defendants' Activation Schedule (Docket No. 3591) and Bed Plan (Docket No. 3592) refer to various timelines for state officials to take certain steps regarding funding and construction authority. Compliance with this Order is not established by reference to such steps. Compliance with this Order is only established by activation of the facilities and programs by the deadlines set forth in this Order. Defendants may not demonstrate compliance with this Order by showing that they followed the specific steps in their Activation Plan and Bed Plan.

3. The Court, with the assistance of the Special Master, has reviewed Defendants' representations in the Activation Plan and the prior Bed Plan filing, and has accepted almost all of Defendants' own proposed final deadlines for specific projects identified in the filings. Where deadlines are adjusted, they are adjusted based on Defendants' own representations about what is practicable, or based on Defendants' prior performance in establishing *Coleman* facilities and programs. The Court finds, and bases some adjustments on the finding, that Defendants have not exhausted all available alternative procurement processes to accelerate projects, including but not limited to alternative contracting processes such as those approved by the United States District Court for the Northern District of California in the *Plata v. Schwarzenegger* litigation, or the procurement of design-build services such as recently authorized by the California legislature for use by CDCR.

4. Based on the record established for the most recent hearing, and on the prior briefings and hearings on the bed planning process, and on the recently completed three-judge

---

[1] Defendants define short term (emergency projects) as those that will be completed in 9 months or fewer until activation. Docket 3592 at p. 4.

panel trial on overcrowding, the Court finds that the relief ordered here is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court has given substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief ordered here.

5. The Court orders the following deadlines regarding projects addressed in the Activation Plan (Docket No. 3591):

    a. Defendants shall activate the 50-bed Mental Health Crisis Bed Unit at California Men's Colony no later than July 31, 2011. This is approximately one year earlier than Defendants' proposed activation date.

    b. Defendants shall complete the initial patient admission process at the Salinas Valley State Prison, 64-bed Intermediate Care Facility no later than July 10, 2009.

    c. Defendants shall activate the treatment space for the Salinas Valley State Prison Intermediate Care Facility program in the D5/D6 units no later than July 20, 2009.

    d. Defendants shall activate the California Medical Facility, Vacaville, 64-bed Intermediate Care Facility no later than August 27, 2012.

    e. Defendants shall activate the California Medical Facility, Vacaville, Suicide Proofing of 124 Inpatient Cells (referred to in the Activation Schedule as "Renovation of 124 cells for Risk Mitigation" in Q1, Q2, Q3, S1, and S2 areas no later than December 31, 2009.

    f. Defendants shall activate the California State Prison, Sacramento, Enhanced Outpatient Program Treatment and Office Space no later than May 23, 2011.

    g. Defendants shall activate the Salinas Valley State Prison, 72-bed Enhanced Outpatient Program Administrative Segregation Unit no later than May 10, 2013.

    h. Defendants shall activate the California Institution for Women, 45-bed Intermediate Care Facility no later than March 9, 2012. Defendants, however, shall work with the Special Master and report to the Court within 30 days on the use of alternative procurement processes to accelerate this project by 3 to 6 months.

    i. Defendants shall activate the California Institution for Women, 20-bed Psychiatric Services Unit, no later than February 24, 2011.

  6. Regarding the following three projects in this Activation Plan—the EOP Treatment Space at California State Prison, Los Angeles County; Salinas Valley State Prison, and; California Medical Facility, Vacaville—the Court finds that the additional Enhanced Outpatient Program beds that would be added by the these programs (150 beds, 96 beds, and 67 beds, respectively for a total of 313 beds), are too urgently needed to allow the extended timetables proposed by Defendants.  The Court finds that Plaintiffs have demonstrated, and Defendants have not negated, that Defendants have the ability to rapidly meet part of the Enhanced Outpatient Program need using the currently underutilized Coalinga State Hospital.  The only evidence Defendants have offered to the contrary is a feasibility study regarding the use of Coalinga State Hospital for high-security prisoners, which is not relevant here because of the large population of Enhanced Outpatient Program patients at lower custody levels.  Defendants assert that Coalinga is understaffed, but offer no evidence to support that assertion.  Plaintiffs, on the other hand, offer evidence to show that Coalinga is among the best-staffed of the Department of Mental Health hospitals.  Defendants' contentions that the EOP gap can be met by the temporary Reception Center program, or beds far in the future in unidentified "alternate sites" is not well-taken.  For the foregoing reasons, the Court will issue an Order in the alternative regarding the Activation Schedule for the three programs identified at the start of this paragraph, and will give Defendants 10 days to elect the alternative they prefer.

   a. Alternative Number One.

    i. Defendants shall activate the California State Prison, Los Angeles County, Treatment and Office Space for the Enhanced Outpatient Program, adding 150 Enhanced Outpatient General Population Beds no later than July 9, 2012, AND;

    ii. Defendants shall activate the California Medical Facility, Vacaville, Treatment and Office Space for the Enhanced Outpatient Program, adding 67 Enhanced Outpatient General Population Beds no later than February 19, 2013 AND;

     iii. Defendants shall activate the Salinas Valley State Prison, Treatment and Office Space for the Enhanced Outpatient Program, adding 96 Enhanced Outpatient General Population Beds no later than April 15, 2013, AND;

     iv. Defendants shall activate an Enhanced Outpatient Program Unit at Coalinga State Hospital within 60 days of this Order to meet the short and interim-term Enhanced Outpatient Program gaps; OR

  b. Alternative Number Two.

     i. Defendants shall activate the California State Prison, Los Angeles County, Treatment and Office Space for the Enhanced Outpatient Program, adding 150 Enhanced Outpatient General Population Beds no later than December 31, 2010, AND;

     ii. Defendants shall activate the California Medical Facility, Vacaville, Treatment and Office Space for the Enhanced Outpatient Program, adding 67 Enhanced Outpatient General Population Beds no later than December 31, 2010, AND;

     iii. Defendants shall activate the Salinas Valley State Prison, Treatment and Office Space for the Enhanced Outpatient Program, adding 96 Enhanced Outpatient General Population Beds no later than December 31, 2010.

  7. The Court orders the following deadlines regarding the projects identified in the Bed Plan (Docket No. 3592) as "short and intermediate term:"

  a. Defendants shall activate two pods at SATF in Facility F as dual-diagnosis treatment programs for Level I and II EOP patients within 9 months (270 days) from the date of this Order.

  b. Defendants shall convert a 270-design housing unit in Facility E at SATF to a 150-bed Level III/IV EOP SNY housing unit and shall activate it within 5 months (150 days) from the date of this Order.

  c. Defendants shall reallocate 150 beds at Solano State Prison from general population to level III/IV EOP beds and shall activate these beds within 12 months (360 days) from the date of this Order.

5

    d. Defendants shall add 45 EOP-ASU beds at Corcoran State Prison and shall activate them within 3 months (90 days) from the date of this Order.

    e. Defendants shall activate 27 EOP-ASU beds at SVSP within 4 months (120 days) from the date of this Order.

    f. Defendants shall increase staffing in the LAC EOP-ASU units and activate an additional 20 EOP-ASU beds within 6 months (180 days) from the date of this Order.

    g. Defendants shall activate 17 mental health crisis beds at San Quentin State Prison no later than January 2010.

    h. Defendants shall convert 20 Mental Health Outpatient Housing Unit (MHOHU) beds to temporary, unlicensed mental health crisis beds (MHCBs) at Sacramento State Prison and shall activate them within 5 months (150 days) from the date of this Order.

    i. Defendants have represented that activation of 4 additional beds to each of the Delta-5 and Delta-6 intermediate care facility units at SVSP has already been implemented.

    j. Defendants shall convert housing units C-5 and C-6 at SVSP to high custody ICF beds and shall activate this program within 12 months (360 days) from the date of this Order. Defendants shall work with the Special Master to identify, within 60 days of this Order, necessary augmentations to this proposal to ensure adequate treatment and office space in a manner that does not delay activation of these units.

    k. Defendants' plan to double bunk inmate-patients in one, 10-cell wing in the SVPP (TC-1) unit is approved as a temporary and emergency project until September 30, 2010. Defendants shall not impose disciplinary sanctions to inmates in this unit for conduct arising from double-bunking or double-celling during the period of the pilot. In particular, Defendants are prohibited from initiating disciplinary proceedings against *Coleman* class members for refusal to accept a cell-mate or for conduct arising from refusal to accept a cell-mate in this pilot program. Defendants are prohibited from imposing any sanctions for refusals to double-bunk, including reductions in privileges, worktime credits, or good time credits, and shall not revoke extension terms, refer inmates to segregation, impose SHU terms, or impose any other sanctions against a *Coleman* class member for refusal to accept a cell-mate or for conduct arising from

refusal to accept a cell-mate in this pilot program. Defendants may not expand this double-bunking proposal to any ICF or acute programs without leave of Court. The Special Master shall closely monitor this pilot program and Defendants shall include the following data regarding this unit in its monthly reports provided to Plaintiffs' counsel: (1) the total number of patients in the unit; (2) the number of patients considered for placement; (3) the number of patients placed in the unit; (4) the number of patients removed from the unit; (5) a summary of the rationale for removal of patients from the unit, and; (6) the lengths of stay for patients in the unit.

      *l.* Defendants' shall activate 44 ICF beds at CMF by converting Day Treatment Program (DTP) beds. Defendants shall reactivate, by 2013, the DTP at CMF (or in another appropriate location) unless they obtain leave of Court to eliminate the program by demonstrating that it is no longer clinically justified and the needs of the patients that it was serving are being addressed appropriately in other MHSDS programs. The Special Master shall closely monitor the use of these beds (currently located in the A-2 unit), Defendants' ability to accommodate previously DTP-qualifying patients, and shall make appropriate recommendations to the Court if the beds are underutilized.

      m. Defendants' proposal to convert 25 acute beds at Atascadero State Hospital (ASH) to low custody ICF beds is DENIED. In addition, the Court finds that urgent steps are necessary to ensure that the ASH beds currently dedicated for *Coleman* class members are fully utilized to meet the urgent and increasing need. Therefore, the Court orders the following:

      i. Defendants shall immediately increase the rate of admissions to ASH from 5 patients to 10 patients per week, and shall redirect resources to the admission units until the need for inpatient beds is met.

      ii. Defendants shall continue to accept CDCR patients at ASH and Coalinga at the rate of 10 patients per week until all such eligible patients have been accommodated and without regard for the previous cap of 256 beds.

      iii. Defendants shall transfer as many of the non-*Coleman* class members to Coalinga or other state hospitals as is necessary to accommodate the increase in ASH

7

admissions ordered above. Alternatively, Defendants may accommodate the *Coleman* class members at ASH to meet the needs identified in the Modified Needs Assessment.

        n.     Defendants shall convert 32 beds to acute beds in the P-1 housing unit at CMF and shall activate this program within 4 months (120 days) from the date of this Order.

        o.     Defendants shall convert 36 ICF-H beds to acute beds in the P-2 housing unit at CMF and shall activate this program within 2 months (60 days) from the date of this Order.

8. The Court makes the following orders regarding Defendants' long-range mental health bed planning projects:

        a.     Defendants shall activate two Correctional Health Care Facilities with a total of at least 1,365 male mental health placements and 70 female mental health placements, no later than June 30, 2013. Consistent with Defendants' representations in their long-range plan (Docket No. 3591 at 15), the Correctional Health Care Facilities shall provide mental health placements as follows: approximately 576 male general population EOP placements, approximately 193 male EOP ASU placements, approximately 167 male Mental Health Crisis Bed placements, approximately 18 Acute Inpatient Placements, approximately 432 Intermediate Inpatient placements, and approximately 70 female general population EOP placements.

        b.     Defendants shall activate 152 EOP PSU beds at California State Prison, Sacramento no later than June 30, 2013.

        c.     Defendants shall activate an additional 12 Mental Health Crisis Beds at San Quentin State Prison, in the projected Condemned Inmate Complex or elsewhere, no later than June 30, 2013.

9. The Court finds that Defendants plans to meet the EOP bed gap are inadequate, and would, if approved, leave, at any given time hundreds, and cumulatively over the next several years, thousands, of *Coleman* class members without minimally adequate care. The Court therefore issues the following orders regarding the long-term EOP gap:

        a.     Defendants shall make 100 lower level EOP beds immediately available at Coalinga State Hospital (CSH). These beds are exclusive of any additional beds Defendants may

choose to open to comply with Paragraph 6, above and that they must make available under Paragraph 7.m.iii, above.

   b. Defendants, in conjunction with the Special Master and his experts, shall develop an assessment tool to review the EOP population currently housed in segregated housing (ASU, ASU overflow, and PSUs). The purpose of the assessment shall be to determine how many of the EOP patients currently housed in segregation units require continued placement in that setting. Defendants and the Special Master shall complete the assessment by November 1, 2009. If Defendants determine there is either a lesser or greater need for the EOP-ASU and EOP-PSU beds based on the assessment, they shall modify their short/intermediate-term and long-range bed plans accordingly.

   c. Participants in the Reception Center Enhanced Outpatient Program shall be clustered in a manner similar to participants in the general population EOP.

   d. Defendants shall within 30 days of this Order finalize a contract with the VA and DHS, and shall execute a contract for the RC EOP programs not covered by the Kern County contract. Defendants shall prioritize the EOP prisoners covered by the Kern County contract, with an emphasis on the RC EOP prisoners with short terms of stay.

   e. Defendants shall file, within 60 days from the date of this Order, a specific plan to address the long-term EOP Need that is consistent with projections for future need and that accounts for no fewer than the 733 EOP placements for the "alternative sites" in the Bed Plan filing of March 26, 2009. The plan shall not identify vague "alternative sites," and shall instead identify specific projects at identified locations with funding, timeframes, and responsible parties fully identified.

  10. The Special Master or his designees shall continue meeting with the responsible parties identified in the bed plan filings, and shall designate an expert to supervise planning and implementation of the projects identified on the activation schedule and the short, intermediate and long-term plans. The Governor's Office, the Department of Finance, DMH, and CDCR shall all participate in the process, as well as representatives of the Controller and Treasurer. Defendants shall file with the Court an updated construction tracking chart on the first Monday

9

of every month, which shall identify any and all staff members or agencies that have unduly delayed or obstructed Court-approved projects. Defendants' work with the Special Master shall also include implementing all necessary steps to bring all long-term beds into compliance with licensing and program standards without the use of licensing or statutory waivers.

11. The DMH Defendants shall operate all female and male acute and ICF units located in the prisons, in outside DMH hospitals, and in the two "Consolidated Care Centers." The CDCR shall not operate any ICF or acute bed units in the absence of an express Court order permitting it to do so.

12. Within 90 days of the date of this Order, Defendants shall file detailed staffing, treatment space, and office space plans for each of the emergent and intermediate-term bed plan projects. The plans shall include information regarding the location and space available for confidential individual and group therapy sessions, and shall detail the office space available to mental health staff assigned to all units. The plan shall also identify any and all licensing waivers Defendants will seek for these units and shall list, in detail, all "program flexes" Defendants intend to seek from the Department of Public Health or any other state agency.

13. Within 30 days from the date of this Order, Defendants shall have 24-hour nursing, seven days per week, and a dedicated mental health clinician assigned to the Outpatient Housing Unit at DVI and the Mental Health Outpatient Housing Unit at MCSP.

14. Defendants shall complete a new model for the mental health staffing workload study by August 30, 2009, and shall prepare and submit an emergency BCP or Augmentation request for the current budget year for the positions identified in that study and for any additional staff positions required by Defendants' May 26, 2009 Bed Plan. The new model shall address all of the Special Master's concerns and shall be submitted to Special Master and Plaintiffs' counsel.

15. Defendants' proposal to use CDCR training for the new bed planning projects is DENIED. Defendants shall provide the Department of Mental Health's "Therapeutic Strategies and Interventions" training to all custody and mental health staff hired or used to staff all EOP (EOP-GP, EOP-ASU, and PSU), ICF, MHCB, and acute programs to come online as part of

1  Defendants' May 26, 2009 Bed Plan. The training shall be administered to all staff upon hiring
2  or assignment to the units and prior to each employee's first day of work in those units.
3      16.    Defendants' contract for outside mental health bed projections must be extended to
4  at least 2015. When Navigant issues its fall mental health bed plan projection report, which shall
5  be completed on or before November 1, 2009, it shall incorporate all Modified Needs
6  Assessment data from Phases I, II, and whatever portion of Phase III is completed at that time.
7  The Modified Needs Assessment of the type currently in process, pursuant to the March 31, 2009
8  Order, shall be conducted regularly and incorporated in the Navigant bed planning process
9  moving forward. The Navigant process shall be open to review by the Special Master, with bed
10 planning forecasts promptly served on the Special Master and Plaintiffs' counsel when
11 completed.
12     17.    Within 30 days of receipt of the updated population projections incorporating the
13 Modified Needs Assessment, Defendants shall file an updated bed plan.

Dated: _____          _____
                                       Honorable Lawrence K. Karlton