ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111-5994
Telephone: (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

Plaintiff,

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

Case No. CIV S 90-520 LKK-JFM

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES**

Date: July 2, 2009
Time: 11:00 a.m.
Place: Courtroom 26
Judge: Honorable John F. Moulds

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................... 1

ARGUMENT ..................................................... 3

I. The PLRA Does Not Change the Legal Standard Regarding Plaintiffs' Entitlement to Reasonable Attorneys' Fees and Costs for Post-Judgment Monitoring ..................................................... 3

II. This Court Did Not Divest Itself of Jurisdiction by Convening the Three-Judge Panel ..................................................... 5

III. Defendants Cannot Refuse to Meet and Confer Regarding Plaintiffs' Discrete Billing Entries and Then Later Claim that Plaintiffs' Motion to Compel Should be Dismissed for Failing to Include those Records ..................... 6

IV. Defendants Have Not Met their Burden of Contesting Plaintiffs' Paralegal Rates, Which are Consistent with, and in Some Instances Far Below, Market Rates ..................................................... 7

V. Plaintiffs Have Fully Supported and Itemized Their Costs and Expenses and Defendants, By Failing to Object to Even One Discrete Cost Item, Have Waived All Objections ..................................................... 11

CONCLUSION ..................................................... 12

i

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[302601-1]

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, No. 04-9396, 2006 WL 4081215 (C.D. Cal. Dec. 12, 2006) .......... 10

*Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183 (C.D. Cal. 2009) .......... 10

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) .......... 8, 11

*Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995) .......... 3

*Hamilton v. Nakai*, 453 F.2d 152 (9th Cir. 1972) .......... 6

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) .......... 11

*Hasbrouk v. Texaco, Inc.*, 879 F.2d 632 (9th Cir. 1989) .......... 3

*Jacobs v. Tawes*, 250 F.2d 611 (4th Cir. 1957) .......... 6

*Jenkins v. State of Missouri*, 158 F.3d 980 (8th Cir. 1998) .......... 11

*Lucas v. White*, 63 F. Supp. 2d 1046 (N.D. Cal. 1999) .......... 8, 10, 12

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .......... 10

*Public Service Comm'n v. Brashear Freight Lines, Inc.*, 312 U.S. 621 (1941) .......... 6

*Richlin Security Service Company v. Chertoff*, 128 S. Ct. 2007 (2008) .......... 11

*Walker v. City of Lompoc*, Nos. 93-55882, 94-55442, 1994 WL 684504 (9th Cir. Dec. 7, 1994) .......... 6

ii

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[302601-1]

*Webb v. Ada County*,
285 F.3d 829 (9th Cir. 2002) .......... 4

*West Virginia Univ. Hosp. Inc. v. Casey*,
499 U.S. 83 (1991).......... 11

*Zambrano v. I.N.S.*,
282 F.3d 1145 (9th Cir. 2002) .......... 5

**Statutes**

28 U.S.C. § 636(b)(1)(B) .......... 6

42 U.S.C. § 1988 .......... 11

42 U.S.C. § 1997e(d)(1) .......... 3

**Other Authorities**

Article III of the U.S. Constitution.......... 6

Local General Order No. 262 .......... 6

iii

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES, NO. CIV S 90-0520 LKK-JFM

[302601-1]

**INTRODUCTION**

Plaintiffs had no choice but to enforce the 1995 *Coleman* injunction before the three-judge panel when it became clear that the severe overcrowding in California's prison system prohibited the provision of constitutionally adequate mental healthcare. The three-judge panel acknowledged this crisis, tentatively ruling in February of 2009 that the "[e]vidence offered at trial was overwhelmingly to the effect that overcrowding is the primary cause of the unconstitutional conditions that have been found to exist in the California prisons" and that the inmate population must be reduced "in order to alleviate the constitutional violations." Docket 3514 at 2:27-3:1; 7:1-4. In other words, all of plaintiffs' work before the three-judge panel was directly and reasonably incurred to enforce the September 1995 *Coleman* Injunction. Defendants' arguments to the contrary are legally and factually wrong and the Court should reject them.

The instant motion concerns three disputed categories, including (1) attorneys' fees for work performed during the second, third and fourth quarters of 2008 to enforce the *Coleman* injunction in the recently concluded three-judge panel trial; (2) compensation for $712,236 in merits costs and $623 in costs related to fees proceedings advanced by plaintiffs' counsel since July of 2007, and; (3) reasonable paralegal rates. Because plaintiffs have fully supported and itemized the costs incurred since July of 2007, plaintiffs seek an order awarding those actual expenses. Plaintiffs seek two forms of relief with respect to paralegal rates. First, because the parties completed their meet and confer regarding paralegal work on non-three judge trial monitoring work, with plaintiffs making reductions in the hours claimed, and the parties having stipulated to payment of the remaining hours, plaintiffs seek an order awarding the $81,955 delta between plaintiffs' requested rates and the $135 rate that defendants agreed to pay for the undisputed hours. In other words, defendants have conceded that those paralegal hours are compensable; the only dispute is the rate to be paid.

Regarding compensation for the attorney and paralegal work performed for the three-judge trial, however, plaintiffs seek an order from this Court finding entitlement to compensation for that work. Plaintiffs do not seek an outright award of the fees and costs for the three-judge

1

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

trial work because the parties have not yet met and conferred about the reasonableness of discrete entries. This is because defendants refused to even discuss those time entries during the meet and confer process, forcing plaintiffs to set aside every time entry that in any way related to work on the three-judge trial. *See* "Reply Declaration of Amy Whelan in Support of Plaintiffs' Motion to Compel Disputed Attorneys' Fees from the Second, Third and Fourth Quarters of 2008 and to Seek Immediate Payment of All Outstanding Expenses" at ¶ 3 (hereinafter "Reply Whelan Decl."). Under the periodic fees order, plaintiffs could seek an order for immediate payment of the claimed amounts due to defendants' failure to come forward with specific objections. *See* Periodic Fees Order, Docket 2326 (7/25/07 Whelan Decl.) Ex. B at ¶ 3. In the interests of judicial economy, however, plaintiffs here seek only a ruling on compensability of the broad area of activity, and a ruling directing the parties to meet and confer on the reasonableness of individual time entries. The Court then need only address time entries that remain in dispute after the parties meet and confer.

Defendants present four main arguments why this Court should either deny or reduce the attorneys' fees and costs at issue in this motion, including (1) that the work before the three-judge panel was not directly and reasonably incurred to enforce the *Coleman* injunction; (2) that the Court lacks jurisdiction to determine the fee motion; (3) that the court must deny the motion because it has not seen plaintiffs' complete billing records, and; (4) that the already reduced paralegal rates sought here are unreasonable.[1] In making their arguments, defendants frequently

---

[1] Defendants also allege, without any evidence or legal citation, that the *Coleman* and *Plata* courts should not individually decide the fee motions because any decision "could lead to inconsistent rulings in the two courts, duplicative fees, and a windfall to Plaintiffs' counsel." Docket 3594 at 2:21-23. Defendants cite no evidence for this outrageous position, which falsely accuses plaintiffs' counsel of unethical billing practices. In fact, plaintiffs' counsel did not (and never would) double-bill defendants for work on the overcrowding trial. Reply Whelan Decl. ¶ 4. On the contrary, while plaintiffs' counsel necessarily shared information such as legal research (which makes the billing *more* efficient, not *less* so), they split the three-judge panel work efficiently between the three firms working on the matter. *Id*.; Docket 3581 at ¶ 5 (Sangster Decl.) (explaining that K&L Gates took primary responsibility for work related to intervenors and one expert witness). All of plaintiffs' work appears, or will appear, in separate billing records before *either* the *Coleman* or the *Plata* court. Reply Whelan Decl. at ¶ 4.

2

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

rely on naked assertions without any legal citations and fail to acknowledge plaintiffs' extensive factual evidence.

## ARGUMENT

### I. The PLRA Does Not Change the Legal Standard Regarding Plaintiffs' Entitlement to Reasonable Attorneys' Fees and Costs for Post-Judgment Monitoring

As set forth in the *Coleman* Periodic Fees Order, "[t]he standard of review to be applied to disputed billing items will be whether the services were useful and necessary to ensure compliance with the Decision and Order dated September 13, 1995." Docket 2326 (7/25/07 Whelan Decl.) Ex. B at ¶ 7. This criterion comports with current law, which holds that the standard applied to monitoring activities is "whether the services were reasonably performed during the pendency of the consent decree." *Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995). All work spent enforcing the rights of the *Coleman* class is compensable if it, "at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest..." *Hasbrouk v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989).

In previous oppositions regarding the three-judge trial, defendants argued that plaintiffs must prove new constitutional violations in order to be compensated. While defendants now admit that this is not the standard,[2] they still argue that plaintiffs must be acknowledged as the "prevailing party" by the three-judge panel before they can be compensated for that work.[3] This argument is premised on defendants' misconception that the PLRA somehow changed the

[2] Defendants wrote, "*Plaintiffs need not prove a new constitutional violation in order to seek attorneys' fees*, but they must show that the fees requested were directly and reasonably incurred to enforce or monitor the court's judgment." Docket 3594 at 5:6-8. This is the first time, over the course of three rounds of briefing, that defendants have conceded that plaintiffs need not prove new constitutional violations in order to be compensated for their work before the three-judge panel.

[3] Defendants' opposition is confusing on this point. In one section of their brief, defendants manipulate the meaning of 42 U.S.C. § 1997e(d)(1) by arguing that fees must be "directly and reasonably incurred in enforcing the relief *of a prisoner release order.*" Docket 3594 at 4:1-2 (emphasis added). Defendants correctly cite the statute two pages later, however, acknowledging that fees can be awarded when they were directly and reasonably incurred in enforcing the relief ordered for a violation. *Id.* at 5:26-6:3.

3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

standards for post-judgment monitoring fees and costs. In fact, the Ninth Circuit has found the exact opposite, holding that compensation for post-judgment attorneys' fees and costs is compensable when the "fees were directly incurred in enforcing court ordered relief instituted to correct violations of [plaintiffs'] constitutional rights." *Webb v. Ada County*, 285 F.3d 829, 833 (9th Cir. 2002), *cert. denied*, 537 U.S. 948 (2002).[4]

Plaintiffs have already been deemed "prevailing parties" in this lawsuit. The appropriate standard for attorneys' fees and costs at this post-judgment stage of the litigation is established by the periodic fees order in this case ("whether the services were useful and necessary to ensure compliance with the Decision and Order dated September 13, 1995") and controlling law. *See, e.g.*, *Webb*, 285 F.3d at 834 (the fees must be "directly and reasonably incurred in *enforcing* the *relief ordered* for the violation"). Plaintiffs have repeatedly shown that all of their work before the three-judge panel was necessary to enforce the underlying *Coleman* injunction, and is not a new or separate matter. *See, e.g.*, Docket 3576 at 12:3-20 (showing that the three-judge panel work addressed the same issues that have plagued the *Coleman* case for years, including severe staffing shortages, severe shortages of treatment and office space, long waiting lists for higher levels of care, problems with the medication management system, problems with medical records and patient tracking, the use of alternative placements, the extremely high suicide rate, and defendants' inability to meet the short and long-term bed planning needs of the Coleman class). *See also* Docket 3577 at ¶ 37 (Galvan Decl.). Defendants do not address or contest these points in their opposition.

Nor do defendants contest (or even mention) the intimate connection between the three-judge panel work and ongoing post-judgment enforcement proceedings in *Coleman*. As further evidence that the three-judge panel work was directly and reasonably incurred to enforce the injunction, plaintiffs recounted their extensive use of evidence from the three-judge proceedings

---

[4] Defendants also argue that plaintiffs are attempting to use the tentative ruling to establish our status as the prevailing party. Docket 3594 at 4:4-16. Plaintiffs do no such thing. Plaintiffs are already the prevailing party in the *Coleman* case; the tentative ruling is further evidence that plaintiffs' work on the overcrowding issues were directly and reasonably incurred to enforce the underlying 1995 injunction.

4

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

in subsequent bed plan hearings before the *Coleman* court. Docket 3576 at 9:21-10:23. On June 18, 2009, the *Coleman* Court issued an order approving new activation schedules for defendants' short-term projects, directing defendants to take various steps to expedite projects and secure funding, directing defendants to complete staffing plans for the projects by August 2009, ordering defendants to fully utilize beds at Atascadero State Hospital and requiring various other actions intended to meet the mental health needs of the *Coleman* class. Docket 3613 (June 18, 2009 Order). Defendants' opposition fails to address the undeniable connection between the evidence developed through discovery and trial of the three-judge panel proceeding and plaintiffs' subsequent efforts, beginning right after the trial and continuing to this day, to close or at least reduce the gaps between supply of and demand for treatment resources, staff and facilities. Having failed to address this intimate connection between the three-judge panel work and subsequent enforcement work, which was thoroughly explored in our moving papers, defendants should be deemed to have conceded the fact.

## II. This Court Did Not Divest Itself of Jurisdiction by Convening the Three-Judge Panel

Defendants argue, for the third time, that this Court lacks jurisdiction over the instant fee motion and that only the three-judge court can determine reasonable fees and costs. Docket 3594 at 2:10-3:13. The single case defendants cite in this section of their opposition is *Zambrano v. I.N.S.*, 282 F.3d 1145 (9th Cir. 2002), which held that the district court had no jurisdiction over a fee award since the entire underlying case had been dismissed for lack of subject matter jurisdiction. *Zambrano* has no relevance here, where it is undisputed that this Court has subject matter jurisdiction over plaintiffs' claims.

Plaintiffs have fully addressed defendants' jurisdictional argument in three prior reply briefs. *See* Docket 2742 at 2:2-4:17 (plaintiffs' reply brief regarding third quarter 2007 fees and costs); Docket 2878 at 4:13-24 (plaintiffs' reply brief regarding fourth quarter 2007 fees and costs); Docket 3026 at 2:1-9 (plaintiffs' reply brief regarding first quarter 2008 fees and costs). Plaintiffs incorporate those jurisdictional arguments by reference and include the citations for the Court's ease of reference. Defendants, on the other hand, have failed to address the controlling caselaw regarding three-judge panels, and their instant opposition is no exception. In summary,

5

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

"[t]he court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge[.]" *Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957). *See also Hamilton v. Nakai*, 453 F.2d 152, 161 (9th Cir. 1972), *cert. denied*, 406 U.S. 945 (1972) (single district judge has jurisdiction over enforcement, where three-judge panel convened for entry of judgment), *citing Public Service Comm'n v. Brashear Freight Lines, Inc.*, 312 U.S. 621, 625, 61 S.Ct. 784 (1941) (assessment of damages and costs should be considered by district court in exercise of its ordinary jurisdiction, did not require the attention of the full three-judge court).

Although defendants have had numerous chances to do so, they have never cited a case supporting their novel jurisdictional argument. There is no question that this Court has jurisdiction over motions for attorneys' fees and costs, with the Magistrate Judge issuing a report and recommendation in the first instance. *See* Docket 2451 at 1:16-18 (noting that fees matters in *Coleman* are referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262).

## III. Defendants Cannot Refuse to Meet and Confer Regarding Plaintiffs' Discrete Billing Entries and Then Later Claim that Plaintiffs' Motion to Compel Should be Dismissed for Failing to Include those Records

Citing Article III of the U.S. Constitution, an opinion from 1937 about the "case or controversy" doctrine and an unpublished (and irrelevant) Ninth Circuit opinion,[5] defendants argue that the Court should dismiss plaintiffs' motion to compel fees because plaintiffs failed to submit the actual billing records in question. Without those billing records, defendants argue that the Court's order would be nothing but an advisory opinion.

In fact, this Court previously granted the exact relief that plaintiffs seek here—an order

[5] Defendants use *Walker v. City of Lompoc*, Nos. 93-55882, 94-55442, 1994 WL 684504 (9th Cir. Dec. 7, 1994) to support their argument that there is no case or controversy regarding fees in the absence of billing records. Not even a tortured connection can be made between the *Coleman* and *Walker* cases. In *Walker*, the plaintiff's prospective attorney filed an equitable action, before agreeing to represent Mr. Walker, in an effort to protect any potential fee award. *Id.* at *1. The Court affirmed dismissal of the case as a "hypothetical controversy" since the lawyer did not represent Mr. Walker, had not filed suit, and could only speculate that a fee award could be at risk during settlement negotiations that might never even occur. *Id.* at *3.

granting entitlement to fees with a direction that the parties meet and confer regarding the exact amounts to be paid. Docket 2451 at 2:13-17. Defendants never raised these arguments during the briefing for that motion, and never appealed the Court's decision as an advisory opinion. Indeed, defendants complied with the order and the matter was resolved without further Court intervention.

In addition to the absence of legal support for this argument, there are no facts to support it either. Plaintiffs have not submitted their billing records because the parties have not yet met and conferred about the reasonableness of discrete entries. This is because defendants refused to even discuss those time entries during the meet and confer process, forcing plaintiffs to set aside every time entry that in any way related to work on the three-judge trial. Reply Whelan Decl. at ¶ 3. By refusing to meet and confer about discrete entries, defendants left plaintiffs with little other choice but to seek an order granting entitlement to a reasonable fee award. It is theoretically possible that plaintiffs could seek an order for immediate payment of the claimed amounts due to defendants' failure to come forward with specific objections. *See* Periodic Fees Order, Docket 2326 (7/25/07 Whelan Decl.) Ex. B at ¶ 3. In the interests of judicial economy, however, plaintiffs here seek only a ruling on compensability of the broad area of activity as to which defendants refused to make any specific objections, and a ruling directing the parties to meet and confer on the reasonableness of individual time entries. The Court then need only address time entries that remain in dispute after the parties meet and confer. A ruling on the issue of entitlement would not be advisory. The parties have a genuine case and controversy over the fees and costs dispute, which defendants have chosen to oppose by asserting a blanket objection that would bar compensability for all of the work claimed. Having chosen the ground of the controversy themselves, defendants cannot now deny its existence.

## IV. Defendants Have Not Met their Burden of Contesting Plaintiffs' Paralegal Rates, Which are Consistent with, and in Some Instances Far Below, Market Rates

Regarding paralegal fees, defendants interpose the same two arguments addressed above regarding prevailing party status and billing records. The Court should deny these arguments for the same reasons stated in Sections I and III above. Defendants also argue that plaintiffs'

7

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

requested rates are unreasonable.[6]  The Court should reject this argument since defendants failed to submit any evidence contesting plaintiffs' paralegal rates, choosing instead to rely on three inapplicable cases.

Plaintiffs bear the initial burden of documenting and supporting reasonable fees and expenses.  *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).  Once plaintiffs have met that burden, however, defendants "ha[ve] a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  *Id.* at 1397-1398.  Unsubstantiated or conclusory objections will not suffice.  *Lucas v. White*, 63 F. Supp. 2d 1046, 1057-1058 (N.D. Cal. 1999).

Plaintiffs have submitted ample evidence establishing that the paralegal rates sought here ($150-$169.50 per hour), which defendants previously paid without objection, are well within, and in fact are substantially below the range for paralegals with comparable experience in the relevant market.  *See* Docket 3577 at ¶¶ 47-50 (Galvan Decl.) (plaintiffs were awarded paralegal

---

[6] Under the guise of the rate dispute, defendants assert arguments in Section V.B. of their opposition that actually address the reasonableness of the number of hours, not the appropriate hourly rate.  Defendants argue, for instance, that the Court should not establish paralegal rates in the absence of billing records since "the Court cannot know whether clerical or secretarial work is being billed at paralegal rates."  Docket 3594 at 8:27-9:1.  With respect to the non-three judge paralegal hours at issue here, defendants have already stipulated that the activities performed are fully compensable.  As to the three-judge hours, defendants can raise these arguments during the post-order meet and confer, and in a response to a subsequent motion to compel items remaining in dispute, if necessary.  Defendants also imply that a paralegal's rate should depend on the various tasks she performs.  Docket 3594 at 9:12-14.  There is absolutely no legal support for this position.  Paralegals, like attorneys, are compensated at market rates for their work.  Again, if defendants have objections to particular hours, they can raise them during the meet and confer process or in subsequent briefing before this Court.

8

PLAINTIFFS'   REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

rates ranging from $150-$190 per hour in several cases for work performed during 2008);[7] Docket 3578 at ¶¶ 6, 8 and 11 (Pearl Decl.) (establishing that plaintiffs' paralegal rates are reasonable and setting forth similar rates at other law firms in 2006, 2007, and 2008); Docket 3586 at ¶ 10 (Holtz Decl.) (his firm's 2009 market rates range from $135 to $325 per hour); Docket 3579 at ¶ 11 (Streeter Decl.) (his firm's 2008 market rates ranged from $160 to $250 per hour); Docket 3580 at ¶ 8 (Morando Decl.) (his firm's 2009 market rates range from $140 for junior paralegals to $265 for more senior paralegals). For plaintiffs' most senior paralegals, the requested compensation is well below market value. Docket 3577 at ¶ 51 (Galvan Decl.) (seeking only $169.50 per hour for Kevin Jones even though his market rate, as a senior paralegal, is $225 per hour; seeking $169.50 per hour for Sofia Millham even though her market rate, as a senior paralegal, is $180 per hour; seeking only $169.50 for Pamela Derrico even though her market rate, as a senior paralegal, is $190 per hour); Docket 3581 at ¶¶ 5-6 (Sangster Decl.) (seeking only $169.50 per hour for Linda Woo even though her market rate, as a paralegal with 9 ½ years of experience with complex litigation, is $300 per hour; seeking $169.50 for Channel Yates even though her market rate, as a paralegal with more than 10 years of litigation experience, is $300 per hour).

Plaintiffs also submitted as evidence the "Annual Compensation Survey for Paralegals/Legal Assistants and Managers 2008 Edition," which further establishes the reasonableness of plaintiffs' requested paralegal rates. The annual compensation survey found the following average market rates for "Legal Assistant/Paralegal" and "Senior Legal Assistant/Paralegal" positions in major metropolitan areas throughout California: $203 for

---

[7] Defendants make the unbelievable claim that plaintiffs have "submitted no evidence that any clients ever paid the rates they seek to recover in this action." Docket 3594 at 10:3-5. In fact, plaintiffs explained that RBG's *unreduced* 2008 rates (*not* the voluntarily reduced rates sought in this motion) are "charged to and paid by clients who pay by the hour on a monthly billing basis" and that K&L Gates "regularly billed non-contingent private clients" for Ms. Woo and Ms. Yates' $300 per hour market rates during 2008. Docket 3577 at ¶ 43 (Galvan Decl.); Docket 3581 at ¶¶ 5-6 (Sangster Decl.). Mr. Galvan's declaration also sets forth various recent cases that resulted in full 2008 paralegal rate awards. Docket 3577 at ¶¶ 47-50. Defendants ignore all of this evidence.

9

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

paralegals and $235 for senior paralegals in the "Los Angeles-Long Beach-Santa Ana" area; $184 for paralegals and $228 for senior paralegals in the "San Diego-Carlsbad-San Marcos" area; $200 for paralegals and $253 for senior paralegals in the "San Francisco-Oakland-Fremont" area, and; $186 for paralegals and $238 for senior paralegals in the "San Jose-Sunnyvale-Santa Clara" area. Docket 3577 at ¶ 46 and Ex. C (Galvan Decl.). Although the survey did not include an average hourly rate for senior paralegals in the "Sacramento-Arden-Arcade-Roseville-Woodland" area, it determined that $166 per hour was the average hourly rate for paralegals/legal assistants in that market. *Id.* Finally, plaintiffs also submitted evidence detailing why the individual paralegals employed by Rosen, Bien & Galvan, the Prison Law Office, and K&L Gates warrant the requested rates of $150-$169.50 per hour. *Id.* at ¶ 51 and Exs. H-S; Docket 3581 at ¶¶ 5-6 and Exhs. A-B (Sangster Decl.).

Defendants fail to address any of plaintiffs' specific evidence in their opposition. Indeed, they do not refer to it at all. Nor do defendants submit any evidence of their own supporting $135 per hour as an appropriate market rate for paralegal work in this case. *Lucas v. White,* 63 F. Supp. 2d 1046, 1058 (N.D. Cal. 1999) (rejecting defendants' arguments regarding the reasonableness of plaintiffs' hours because defendants failed to submit any declaration or evidence supporting its position). Instead, defendants rely exclusively on three cases, two of which resulted in reduced paralegal rates because plaintiffs' counsel failed to support the rates, and a third that awarded plaintiffs' requested rates. *Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, No. 04-9396, 2006 WL 4081215, at *3 (C.D. Cal. Dec. 12, 2006) (reducing paralegal rates because "plaintiffs fail to provide *any evidence* to support the rates requested for their paralegals") (emphasis added); *Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1195 (C.D. Cal. 2009) (reducing the hourly paralegal rates because the parties "provide[d] *very little evidence* as to the reasonableness of these rates") (emphasis added); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115-1116 (9th Cir. 2008) (awarding the paralegal rate that plaintiffs' counsel requested).

Plaintiffs submitted extensive evidence establishing that their paralegal rates are consistent with, and in several cases much lower than the market rate for those services.

10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

Defendants failed to submit rebuttal evidence, opting instead to cite three inapplicable cases and thereby abandoning their evidentiary burden.[8] *See, e.g., Gates*, 987 F.2d at 1397-98 (once plaintiffs have met their initial burden, defendants must submit "evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits"). Plaintiffs therefore seek an order finding that plaintiffs' paralegal rates are reasonable and requiring immediate payment of $81,955, which is the delta between plaintiffs' requested rates and $135 per hour for the uncontested hours monitoring *Coleman* issues outside of the three-judge trial.

**V. Plaintiffs Have Fully Supported and Itemized Their Costs and Expenses and Defendants, By Failing to Object to Even One Discrete Cost Item, Have Waived All Objections**

As the prevailing party under 42 U.S.C. § 1988, plaintiffs "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Plaintiffs seek an order awarding immediate payment of $712,236 in merits and $623 in fees-for-fees costs incurred since July of 2007. Plaintiffs itemized every expense in Exhibit T to the Galvan Declaration (Docket 3577), providing 68 pages of detail regarding the incurred expenses.[9] Plaintiffs also provided additional detail and history regarding those expenses in paragraphs 52 through 63 of the Galvan Declaration. *Id.*

Here again, defendants failed to provide any rebuttal evidence at all contesting the reasonableness of plaintiffs' extensively documented expenses. *Gates*, 987 F.2d at 1397-98 (the burden shifts to defendants to provide evidence once plaintiffs have met their initial burden);

---

[8] Defendants include one sentence in their opposition stating that compensation at the market rate would result in a paralegal salary of $312,000 or "almost double the salary of a United States District Judge." Docket 3594 at 9:17-19. The U.S. Supreme Court squarely addressed and rejected a nearly identical argument in 2008. *Richlin Security Service Company v. Chertoff*, 128 S. Ct. 2007 (2008) (holding that paralegal rates are based on the market value).

[9] Although plaintiffs paid more than $270,000 in expert fees in this matter, plaintiffs removed those expenses from their bills pursuant to *West Virginia Univ. Hosp. Inc. v. Casey*, 499 U.S. 83, 102 (1991) and *Jenkins v. State of Missouri*, 158 F.3d 980, 983 (8th Cir. 1998). Docket 3577 at ¶ 53 (Galvan Decl.).

11

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]

*Lucas*, 63 F. Supp. 2d at 1057-1058 (unsubstantiated or conclusory objections to plaintiffs' evidence will not suffice). Defendants dedicate only 15 lines of text opposing plaintiffs' costs and fail to object to even a single, specific cost entry (or even a category of costs). Docket 3594 at 7:3-17. Plaintiffs have fully documented and supported the requested expenses, which defendants do not seriously contest, and the Court should therefore issue an order awarding immediate payment of $712,859.

Plaintiffs are treating the three-judge panel costs (seeking immediate payment) differently than the three-judge panel fees (seeking a ruling on entitlement only) because of the greater inequity of requiring plaintiffs' counsel to carry these out-of-pocket costs for years and years while defendants refuse to meet and confer on individual items.

## CONCLUSION

For all of the reasons stated above, plaintiffs seek an order finding that plaintiffs' work before the three-judge panel was directly and reasonably incurred to enforce the underlying injunction, and establishing plaintiffs' entitlement to reasonable attorneys' fees for that work since the third quarter of 2007. Plaintiffs further request an order requiring the parties to complete a meet and confer regarding the amounts to be paid within 30 days of the Court's order. Plaintiffs also request an order finding that plaintiffs' unpaid costs and expenses, in the amount of $712,859, are reasonable and compensable under the applicable legal standards, and ordering immediate payment of those amounts. Finally, plaintiffs request an order from this Court finding that plaintiffs' paralegal rates are reasonable. With respect to all undisputed work performed by paralegals on non-three judge issues, plaintiffs request an order requiring immediate payment of $81,955, which is the delta between plaintiffs' requested rates and $135 per hour.

Dated: June 25, 2009                     Respectfully submitted,

  */s/ Ernest Galvan*
Ernest Galvan
Rosen, Bien & Galvan
Attorneys for Plaintiffs

12

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISPUTED ATTORNEYS' FEES FROM THE SECOND, THIRD AND FOURTH QUARTERS OF 2008 AND TO SEEK IMMEDIATE PAYMENT OF ALL OUTSTANDING EXPENSES - CASE NO. CIV S 90-520 LKK-JFM

[302601-1]