EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
JEFFREY STEELE, State Bar No. 124668
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>    v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>                              Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' RESPONSE TO COURT'S JUNE 18, 2009 ORDER RE: MEMORANDUM OF UNDERSTANDING** |

1

Defs.' Resp to Court Order Re: Memorandum of Understanding  (2:90-cv-00520 LKK JFM P)

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| **AB** | Assembly Bill |
| **CDCR** | California Department of Corrections and Rehabilitation |
| **MOU** | Memorandum of Understanding |
| **TIPS** | *Taxpayers for Improving Public Safety v. Schwarzenegger* |

2

Defs.' Resp to Court Order Re: Memorandum of Understanding  (2:90-cv-00520 LKK JFM P)

**INTRODUCTION**

On June 18, 2009, this Court ordered that within fifteen days from the date of the June 16, 2009 hearing, that Defendants inform the Court whether the Memorandum of Understanding (MOU) between the *Plata* Receiver and defendants in that case has been signed. (Docket No. 3613, ¶ 5.) This Court further ordered that if the MOU has not been signed, that Defendants in the *Coleman* case explain why it has not been signed and identify who is responsible for the MOU not being signed. (*Id.*)

**DEFENDANTS' RESPONSE**

**I.   The Memorandum of Understanding Was Not Signed.**

On June 24, 2009, Matthew L. Cate, Secretary of the California Department of Corrections and Rehabilitation (CDCR), sent a letter to the *Plata* Receiver. (Ex. 1.) In that letter, Secretary Cate explained that the State defendants would not agree to the proposed MOU in light of California's current budget and cash crisis, and because it was unclear whether the construction outlined in the MOU was necessary to provide constitutional care. (*Id.*) In addition, Secretary Cate indicated that CDCR considers the Public Safety and Offender Rehabilitation Services Act (AB 900) a more feasible and secure option for funding its capital projects. (*Id.*) Those responsible for the absence of a signed agreement are Secretary Cate and the Governor.

The current economic crisis weighs against entering into an agreement premised on approximately $2 billion in I-Bank lease-revenue financing. California is facing at least a $24 billion budget deficit, and the State Controller recently projected that the State will run out of cash in July 2009. (Exs. 1–2.) As Secretary Cate wrote on June 24, 2009, "The State's precarious financial condition will result in severe and significant cuts to vital State programs. The State cannot at this time become further indebted for correctional healthcare." (Ex. 1.)

Moreover, the administration's budget proposals will impact the inmate population. (Ex. 1.) In the aggregate, these budget proposals, if enacted, would reduce the prison population by up to 19,000 inmates. (*Id.*) For instance, one budget proposal would provide alternative custody options for elderly and medically infirm inmates. (*Id.*) "[I]n light of the administration's prison

3

1 | reform proposals, it is unclear whether all of the construction contemplated in the MOU is
2 | necessary to achieve constitutionally adequate medical care in California's prison system." (*Id.*)
3 |      Additionally, the California Supreme Court's June 17, 2009 denial of the petition for
4 | review in the *Taxpayers for Improving Public Safety v. Schwarzenegger* (TIPS) lawsuit removed
5 | a significant legal obstacle for nearly $8 billion in AB 900 lease-revenue financing authority that
6 | the California Legislature already appropriated to construct capital projects. (Exs. 1, 3.)
7 | Specifically, the Supreme Court's action cleared the way for an unqualified bond opinion on the
8 | validity of AB 900 bonds for capital projects.[1] I-Bank financing, on the other hand, was
9 | uncertain, complex, and under California law, could have been challenged in a state court by any
10 | interested person. (*See* Ex. 1; Docket No. 3592, p. 23.) Such litigation could have resulted in a
11 | significant delay in funding. (*Id.*)
12 |      Finally, despite the fact that the MOU was not signed between the State and the Receiver,
13 | Secretary Cate and the Receiver are still coordinating their "efforts to achieve the shared goal of
14 | providing a constitutional level of healthcare that the State can sustain on its own." (Ex. 4.)
15 | **II.   Funding for *Coleman* Projects.**
16 |      In their May 26, 2009 filing, the *Coleman* Defendants proposed to fund the long-term
17 | mental health bed construction projects through a combination of General Fund Budget Act
18 | appropriations, AB 900 appropriations, and the I-Bank. (Docket No. 3592, pp. 16-23.)
19 | Specifically, Defendants proposed to construct the two new Correctional Health Care Facilities
20 | with the *Plata* Receiver and to work with the Receiver to obtain funding via lease-revenue bonds
21 | authorized by I-Bank. (*Id.* p. 23.) Because the MOU was not signed, Defendants are readjusting
22 | this aspect of their long-term mental health bed plan in order to construct those beds through AB
23 | 900 appropriations. Defendants will notify the Court in thirty days if, after review of AB 900

---

[1] Generally speaking, a bond opinion is unqualified if counsel is "firmly convinced (also characterized as having a 'high degree of confidence') that, under the law in effect on the date of the opinion, the highest court of the relevant jurisdiction, acting reasonably and properly briefed on the issues, would reach the legal conclusions stated in the opinion." Nat. Assoc. of Bonds Lawyers Comm. On Opinions and Documents, Model Bond Opinion Report (February 2003); *see also Weiss v. Securities and Exchange Comm.,* 468 F.3d 849 (D.C. Cir. 2006) (standards published by the National Association of Bond Lawyers could be presumed by bond purchasers to apply to bond opinions).

4

Defs.' Resp to Court Order Re: Memorandum of Understanding  (2:90-cv-00520 LKK JFM P)

appropriations, Defendants propose to change the number of beds in their May 26, 2009 long-term bed plan.

Dated: July 1, 2009

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General

/s/ *Debbie J. Vorous*

DEBBIE J. VOROUS
Deputy Attorney General
Attorneys for Defendants

CF1997CS0003
30794443.doc

5

# EXHIBIT 1

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**OFFICE OF THE SECRETARY**
P.O. Box 942883
Sacramento, CA 94283-0001



June 24, 2009

Mr. Clark Kelso, Receiver
California Prison Health Care Receivership
501 J Street
Sacramento, CA 95812-4038

Dear Mr. Kelso,

I am thankful for the recently enhanced spirit of collaboration and cooperation between our two organizations over the last several months. Although it is a continued team effort on both sides, I specifically think the work of your Chief Deputy, Elaine Bush, and my chief of staff, Brett Morgan, have set the tone for a stronger working relationship going forward. I am convinced the California Department of Corrections and Rehabilitation (CDCR), the California Prison Healthcare Services, and the inmates all benefit when we collaborate in our missions.

During the last two months, we have invested a considerable amount of time negotiating a potential agreement concerning the construction of health-care-focused prison facilities and related litigation, among other things. All parties acted in good faith, and I appreciate the time and effort you and others on your staff put into this process. As you know, the most recent draft of the proposed Memorandum of Understanding (MOU) would require the State defendants to help the Receivership seek approximately $2 billion in funding from the California Infrastructure and Economic Development Bank (I-Bank). For the reasons set forth below, we cannot agree to a MOU that requires the State to seek I-Bank funding, or any other additional funding not previously appropriated by the California Legislature. This decision does not, however, foreclose the possibility of reaching an agreement coordinating our efforts to achieve our shared goals.

Currently, the State is facing at least a $24 billion budget deficit, and the State Controller recently projected the State will run out of cash in July. The State's precarious financial condition will result in severe and significant cuts to vital State programs. The State cannot at this time become further indebted for correctional healthcare. Additionally, in light of the administration's prison reform proposals, it is unclear whether all of the construction contemplated in the MOU is necessary to achieve constitutionally adequate medical care in California's prison system. In aggregate, these proposals would reduce the prison population by approximately 19,000 inmates. One such proposal, for example, would provide CDCR with the ability to furlough aged and infirm inmates serving determinate terms. This proposal alone would likely affect the need for future medical construction.

In addition, the California Legislature has already provided nearly $8 billion in funding through Assembly Bill (AB) 900 for CDCR to construct capital projects. Of this $8 billion, roughly $1

Mr. Clark Kelso, Receiver
Page 2

billion was directly appropriated to improve healthcare. Of the remaining appropriation, a significant amount of that money can also be used to build appropriate beds for inmates with disabilities and/or other health needs. In addition to this legislation, CDCR has almost doubled its health care spending on inmates from fiscal year 2005-2006 to the present. We believe that additional improvements in the delivery of health care will result from implementation of AB 900. Together, the Receivership's improvements in the delivery of health care and the State's implementation of AB 900 will address any remaining healthcare and capacity needs that may exist.

We also believe AB 900 funding is a more secure source of funding and will permit CDCR to fund its necessary capital projects. As you know, on June 17, the California Supreme Court denied the petition for review in the case of *Taxpayers for Improving Public Safety (TIPS) v. Schwarzenegger*. The related case of *Californians United for a Responsible Budget (CURB) v. the State Public Works Board* previously resolved in the State's favor. The Supreme Court's action in *TIPS* ended the litigation over the validity of these bonds, and it also cleared the way for the California Attorney General's Office to provide a clean bond opinion for AB 900 projects.

In conclusion, I sincerely hope the economic realities of our time and the administration's efforts to address population levels, which prohibit the State defendants from entering into the proposed MOU for I-Bank financing, will not sidetrack our joint efforts to further improve medical care and to return the day-to-day management of prison healthcare back to CDCR. Please be assured that CDCR and the Governor remain committed to these goals.

Please let me know if you would like to meet and discuss this further.

Sincerely,

*[signature]*

MATTHEW L. CATE
Secretary

# EXHIBIT 2



# JOHN CHIANG
### California State Controller

June 10, 2009

Honorable Arnold Schwarzenegger
Governor of California
State Capitol Building
Sacramento, CA 95814

The Honorable Darrell Steinberg
President Pro Tempore
State Capitol, Room 205
Sacramento, CA 95814

The Honorable Karen Bass
Speaker of the Assembly
State Capitol, Room 219
Sacramento, CA 95814

The Honorable Dennis Hollingsworth
California State Senate
State Capitol, Room 305
Sacramento, CA 95814

The Honorable Sam Blakeslee
California State Assembly
State Capitol, Room 4117
Sacramento, CA 95814

Dear Governor and Members:

On May 29, 2009, I informed you of the precarious nature of the State's cash condition and alerted you to impending risks which threaten the State's ability to meet its payment obligations. The situation has not improved. Based on actual revenues received during the month of May, and finalized May Revision data provided by the Department of Finance on June 1, I have the following updates to the State's 2009-10 cash outlook:

- In the absence of legislative action, the State will not have sufficient cash to meet all of its payment obligations on July 28. By July 31, the cash deficit will increase to a negative $2.78 billion.

- In April, the State's cash balance will fall to a negative $25.3 billion – the lowest point projected for Fiscal Year 2009-10. To put this shortfall into proper perspective, it is *five times* the $5.1 billion cash deficit we faced this past spring.

In the letter I sent you on May 29, I indicated we would have a negative cash balance of $1.02 billion at the end of July, and a low point for 2009-10 of $22 billion. The additional deterioration is a result of two factors: (a) May revenues coming in $827 million less than projected by the Governor's May Revision, and (b) adjustments made by the Department of Finance to its revenue and expenditure projections. Attached is a chart detailing the projected cash low point for each month for the fiscal year starting July 1.

300 Capitol Mall, Suite 1850, Sacramento, CA 95814 ♦ P.O. Box 942850, Sacramento, CA 94250 ♦ (916) 445-2636 ♦ Fax: (916) 322-4404
777 S. Figueroa Street, Suite 4800, Los Angeles, CA 90017 ♦ (213) 833-6010 ♦ Fax: (213) 833-6011
www.sco.ca.gov

The Honorable Governor Schwarzenegger and Members
June 10, 2009
Page 2

While the severity of the shortfall has worsened since my last letter, the time available to correct our budget and cash deficits has not materially changed. The State will run out of cash in less than 50 days without corrective action by the Legislature and Governor.

Likewise, without credible and durable budget solutions that produce positive results in the State's cash position and demonstrate the State's ability to repay at time of maturity, any form of cash flow borrowing – whether a Revenue Anticipation Warrant (RAW) or Revenue Anticipation Note (RAN) – will be met with heavy skepticism by investors. At best, this will result in a borrowing of limited size and at significant expense. At worst, it could result in a failed sale. As disclosed to you in my previous letter, I am reluctantly preparing to sell RAWs as a precautionary measure and will be meeting with rating agencies and launching an investor outreach effort in less than two weeks.

Again, I respectfully urge the timely adoption of a truly balanced budget, with immediate cash solutions, as the only responsible approach to resolving the State's cash crisis. As always, my office is at your service for any assistance we can provide.

                          Sincerely,

                          *Original signed by,*

                          JOHN CHIANG
                          California State Controller

Enclosure(s)
cc: All Legislators



California's Cash Outlook
For the Months of July 2009 - June 2010
Updated June 10, 2009
(in Billions of Dollars)

Red Line = Available Cash at Low Point of Month

California State Controller's Office

# EXHIBIT 3

# CALIFORNIA APPELLATE COURTS
Case Information



| Supreme Court | **Supreme Court** | Change court |
|---|---|---|
| Welcome | Court data last updated: 06/30/2009 12:05 PM | |

Case Summary　Docket　Briefs
Disposition　Parties and Attorneys　Lower Court

## Disposition

**TAXPAYERS FOR IMPROVING PUBLIC SAFETY v. SCHWARZENEGGER**
Case Number S172739

Only the following dispositions are displayed below: Orders Denying Petitions, Orders Granting Rehearing and Opinions. Go to the Docket Entries screen for information regarding orders granting review.

**Case Citation: none**

| Date | Description |
|---|---|
| 06/17/2009 | Petition for review denied |

Click here to request automatic e-mail notifications about this case.

© 2009 Judicial Council of California

# EXHIBIT 4

| CALIFORNIA PRISON HEALTH CARE SERVICES | State of California Department of Corrections and Rehabilitation |
|---|---|
| OFFICE OF THE RECEIVER | OFFICE OF THE SECRETARY |

 

Date:   June 30, 2009

To:     CDCR and Receivership Extended Executive Staff

From:   Matthew L. Cate, Secretary
        J. Clark Kelso, Receiver

In light of the State's precarious fiscal situation, the Administration has decided it could not finalize a proposed Memorandum of Understanding (MOU) between the California Department of Corrections and Rehabilitation and the Federal Medical Receivership. However, it is in the best interests of all parties that we continue coordinating our efforts to achieve the shared goal of providing a constitutional level of healthcare that the State can sustain on its own. The hard work done by both of our teams over the last several months demonstrates that a coordinated effort can result in remarkable advances.

Organizationally, we can best coordinate the day-to-day management of the overall prison healthcare program by taking further steps towards joint planning between medical, mental health and dental here in Sacramento, in the regions and at the institutions.

Although the additional $2 billion in funding contemplated by the MOU will not be available, the California Legislature has already provided CDCR with billions in capital funding through Assembly Bill (AB) 900. A little over $1 billion was directly appropriated to improve healthcare, and a significant amount of the remaining appropriation can also be used to build appropriate beds for inmates with health needs. We need our construction planning teams to engage in more of the same type of creative joint planning that led to the *Coleman* bed plan and the proposed MOU, so that as many of our mutual construction goals as possible may be met within the confines of AB 900.

As we continue to proceed toward our common goals, Brett Morgan and Elaine Bush will continue to guide the implementation of our coordinated efforts. We have made great progress in the last three months by working together, and we are confident that, with your help, we can maintain our momentum and forward progress.

Thank you for your ongoing commitment to public safety, rehabilitation and access and delivery of health care to all CDCR inmates.

Sincerely,

MATTHEW L. CATE
Secretary

J. CLARK KELSO
Receiver