PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA  94710
Telephone:  (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
MARK R. FEESER, Bar No. 252968
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

　　　　　Plaintiffs,

　　　v.

ARNOLD SCHWARZENEGGER, et al.,

　　　　　Defendants.

Case No. Civ S 90-0520 LKK-JFM

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RESPONSE TO COURT'S JUNE 18, 2009 ORDER TO SHOW CAUSE RE: NAVIGANT CONTRACT**

[303741-2]

On June 18, 2009, this Court ordered that "[w]ithin ten days from the date of the [June 16, 2009] hearing, [D]efendants shall show cause in writing, if any, why they should not be ordered to renew their contract with Navigant Consulting for another three years." Order at ¶ 7 (Docket No. 3613). On June 30, 2009, Defendants submitted their response to the Court's June 18, 2009 Order. Defendants' Response to Court's June 18, 2009 Order to Show Cause RE: Navigant Contract (Docket No. 3623) ("Defendants' Response"). Defendants' Response fails to provide any substantive justification for not renewing the Navigant Contract for an additional three years, and therefore Plaintiffs respectfully request the Court enter an Order requiring that Defendants immediately take all steps necessary to renew the contract with Navigant Consulting. Defendants have not pointed to any state laws that would prevent renewal of the contract prior to its expiration on December 31, 2009. Their citation to the Public Contracting Code is without any explanation as to why it presents an obstacle to either putting the contract out to bid in time for a new contract to be in place by December 31, 2009, or using the various options available for awarding a No Bid Contract. In any event, if there are any state law obstacles that cannot be addressed, Defendants should identify them immediately so that the Court can order them waived.

Despite being afforded the chance to inform the Court why they should not be ordered to renew the contract, Defendants have offered no substantive objection regarding Navigant Consulting's ability to perform under a renewed contract. Defendants' Response generally cites to the requirement under California Public Contract Code §§ 10339-10345, that the State submit certain contracts through a competitive bidding process. Defendants' Response at 2. With no examination of the options available to them under the Public Contract Code, Defendants simply aver that they "cannot, at this point in time, simply renew Navigant Consulting's contract for another three years." *Id.* Defendants' Response completely fails to respond to this Court's inquiry as to why they should not be "ordered" to renew the Navigant Consulting contract. In fact, Defendants' Response concedes that the lead author and forecaster of the Navigant Consulting semi-annual reports "has the competence and experience in developing and updating projected bed needs for [Defendants'] mental health programs." *Id.* at 2.

[303741-2]

Moreover, despite Defendants' claims regarding the procedural requirements of renewing the Navigant Consulting contract, it is not clear that renewal of the contract would be subject to the competitive bidding process as Defendants' Response suggests. While California Public Contract Code § 10340 requires that all state agencies obtain at least three competitive bids for each contract, Defendants' Response fails to mention that there are a number of exceptions to this competitive bid requirement. CAL. PUB. CONT. CODE § 10340(b).

Notably, competitive bidding is not required in "cases of emergency where a contract is necessary for the immediate preservation of the public health, welfare, or safety, or protection of state property." *Id.* at § 10340(b)(1). Additionally, competitive bidding is not required where the "contract meets the conditions prescribed by the department pursuant to subdivision (a) of Section 10348." *Id.* at § 10340(b)(4) (California Public Contract Code § 10348 provides that the Department of General Services may prescribe conditions upon which a contract may be awarded without competition). The California State Contracting Manual ("SCM") § 5.80 (Rev. 10/05) describes certain contracts exempt from competitive bidding, including "[a]mendments to an existing competitively bid contract if the additional years or additional tasks were anticipated and evaluated in the IFB/RFP."[1] SCM § 5.80(B)(2)(c). The Navigant Consulting contract, notably, provides that "[t]his agreement may be amended to extend the term if it is determined to be in the best interest of the State. Upon signing the amendment, contractor hereby agrees to provide services for the extended period at the rates specified in the original Agreement." Navigant Consulting Agreement Number C06.284, Approved December 7, 2006, Exhibit D at 5 ¶ 13, a true and correct copy of which is attached hereto as **Exhibit A** (Exhibit B-3 containing individual resumes and personal information of certain Navigant Consultants is not included).

Regardless of whether Defendants would be required to submit this contract to the competitive bidding process, as the *Plata* Receiver noted in seeking an Order waiving State contracting regulations and procedures, "The State Contracting Process Is Unduly Time-

---

[1] The State Contracting Manual is available at http://www.ols.dgs.ca.gov/Contract%20Manual/default.htm.

[303741-2]

1  Consuming Under The Best of Circumstances."  Receiver's Master Application For Order

2  Waiving State Contracting Statutes, Regulations And Procedures, And Approving Receiver's

3  Substitute Procedure for Bidding And Award Of Contracts, *Plata v. Schwarzenegger*, CIV 01-

4  1351 TEH (N.D. Cal. April 17, 2007, *Plata* Docket No. 639, at 8); *see also* Order Re Receiver's

5  Master Application For Order Waiving State Contracting Statutes, Regulations, And Procedures,

6  And Request For Approval Of Substitute Procedures For Bidding And Award Of Contracts

7  (N.D. Cal. June 4, 2007, *Plata* Docket No. 700) (ordering waiver of various State contracting

8  laws regarding the competitive bidding and non-competitive bidding processes for 13 specific

9  projects).  Further, on June 8, 2009, Governor Schwarzenegger issued Executive Order S-09-09

10  (available at http://www.gov.ca.gov/executive-order/12460/), which places additional restrictions

11  on entering into new contracts or amending existing contracts as a result of the State's fiscal

12  condition.

13            Despite the fact that the Navigant Consulting contract expires on December 31, 2009,

14  Defendant's Response does not indicate whether they have taken any action to renew the contract

15  pursuant to the requirements under State contracting law.  Renewal of the Navigant Consulting

16  contract is critical to achieving constitutional compliance in this case.  Any lapse in this contract

17  will delay future semi-annual population projections, which have proved invaluable in

18  formulating Defendants' bed plans in this case.  *See e.g.*, Defendants' Response to Court's March

19  31, 2009 Order That Defendants File a Final Proposal to Meet The Remaining Short-Term,

20  Intermediate, and Long-Range Bed Needs of the Plaintiff Class, May 26, 2009 (Docket No.

21  3592) (relying on Navigant projections to develop short-term, intermediate, and long-range bed

22  plan).  Therefore, the Court should enter an order requiring Defendants to take all necessary steps

23  to renew the Navigant Consulting contract and requiring Defendants to request a waiver of any

24  applicable State contracting requirements that cannot be complied with in order to ensure that

25  ///

26  ///

27  ///

28

[303741-2]

1   there is no lapse in the provision of accurate and reliable mental health population projections in

2   this case.

3

4   Dated:  July 2, 2009                              Respectfully submitted,

5                                                     ROSEN, BIEN & GALVAN, LLP

6                                                     By:  */s/ Mark R. Feeser*

7                                                          Mark R. Feeser
                                                          Attorney for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' OPP TO DEFS' FILING RE NAVIGANT CONTRACT - CASE NO. CIV S 90-0520 LKK-JFM

[303741-2]

# EXHIBIT A

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF SUPPORT SERVICES**
OFFICE OF BUSINESS SERVICES
1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



December 12, 2006

Dorn K. Dean
Managing Director
Navigant Consulting Incorporated
1 California Plaza
300 South Grand Avenue, 28th Floor
Los Angeles, CA 90071

Dear Mr. Dean:

**AGREEMENT NUMBER: C06.284**
**SERVICE: MENTAL HEALTH BED PROJECTIONS SERVICES**

Enclosed for your files is a fully executed Agreement regarding the services described above with the California Department of Corrections and Rehabilitation for the period of December 7, 2006 through December 31, 2009.

A copy of this Agreement has been forwarded to the Regional Accounting Office, which is responsible for the payment of approved invoices. In order to expedite the payment process, please ensure all invoices submitted to the State are submitted in accordance with the payment provisions of this Agreement. They must be accurate; reasonable for the services performed and costs incurred; and include all applicable receipts and necessary supporting documentation as stated in this Agreement.

If you have any questions or need assistance, do not hesitate to contact me at (916) 327-2176.

Sincerely,

Maria Costa
Contract Analyst
Institution Medical Contracts Section
Procurement and Contracts Branch

Enclosure



PIP's **EXHIBIT** 2
56 pg.
Misener 11/29/08

STATE OF CALIFORNIA
**STANDARD AGREEMENT**
STD 213 (Rev 06/03)

| | |
|---|---|
| AGREEMENT NUMBER | |
| **C06.284** | |
| REGISTRATION NUMBER | |

1. This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME

California Department of Corrections and Rehabilitation (CDCR)

CONTRACTOR'S NAME

Navigant Consulting Incorporated

2. The term of this Agreement is:     Upon Approval   through   December 31, 2009

3. The maximum amount of this Agreement is:     $378,339.00

   Three Hundred, Seventy-Eight Thousand, Three Hundred Thirty-Nine Dollars and no cents.

4. The parties agree to comply with the terms and conditions of the following exhibits which are by this reference made a part of the Agreement. **This Agreement is not exclusive and CDCR reserves the right to contract with other Providers for the same service.**

| | |
|---|---|
| Exhibit A – Scope of Work | 7 pages |
| Exhibit B – Budget Detail and Payment Provisions | 2 pages |
| Exhibit B-1 – Contractor Budget Request | 1 page |
| Exhibit B-2 – Budget Proposal | 6 pages |
| Exhibit B-3 – Resumes | 6 pages |
| Exhibit C* – General Terms and Conditions | GTC 306 |
| Check mark one item below as Exhibit D: | |
| ☒ Exhibit - D Special Terms and Conditions (Attached hereto as part of this agreement) | 12 pages |
| ☐ Exhibit - D* Special Terms and Conditions | |
| Exhibit E – Additional Provisions | 3 pages |
| Exhibit F – Travel Expense Claim (CDC 1880) | 2 pages |
| Exhibit G – Business Associates Agreement (HIPPA) | 15 pages |

*Items shown with an Asterisk (*), are hereby incorporated by reference and made part of this agreement as if attached hereto. These documents can be viewed at www.ols.dgs.ca.gov/Standard+Language*

**IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.**

| CONTRACTOR | California Department of General Services Use Only |
|---|---|
| CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.) | |
| **NAVIGANT CONSULTING INCORPORATED** | |
| BY (Authorized Signature) | |
| DATE SIGNED (Do not type) 4/30/06 | **APPROVED** |
| PRINTED NAME AND TITLE OF PERSON SIGNING | DEC - 7 2006 |
| DORN K. DEAN, Managing Director | |
| ADDRESS  175 West Jackson Boulevard, #500  Chicago, IL  60604 | PHONE NUMBER (213) 670-3277 |
| | DEPT OF GENERAL SERVICES |

| STATE OF CALIFORNIA | |
|---|---|
| AGENCY NAME | |
| California Department of Corrections and Rehabilitation | |
| BY (Authorized Signature) | DATE SIGNED (Do not type) 12/4/06 |
| PRINTED NAME AND TITLE OF PERSON SIGNING | |
| SUSAN LEW, Chief, Institution Medical Contracts Section | |
| ADDRESS  P.O. Box 942883, Sacramento, CA  94283-0001 | |

Navigant Consulting Incorporated                                    Agreement Number C06.284
California Department of Corrections And Rehabilitation (CDCR)                        Exhibit A
SCOPE OF WORK

## MENTAL HEALTH BED PROJECTIONS SERVICES

### A.  PURPOSE

Contractor shall provide consulting services, over a three year period, to the California Department of Corrections and Rehabilitation (CDCR), Division of Correctional Health Care Services (DCHCS) to update the mental health bed forecast, and review and update the forecasting methodology twice a year; and on an as needed basis, provide expert testimony to the associated parties in the *Coleman v. Schwarzenegger* (formerly Wilson) lawsuit and State control agencies regarding the mental health forecast and methodology.

In addition, the Contractor will:

- Identify and recommend areas within the CDCR, which if changed, may improve its mental health bed forecast. This includes participating as a member of a task force that addresses an overall forecasting effort that would evaluate historical trends within CDCR's mental health population and identify areas of best practices that may be used to increase the accuracy of the mental health bed forecast,
- Provide training to appropriate DCHCS staff so that CDCR may ultimately perform this function on a consistent and reliable basis; and
- Produce an annual report indicating the accuracy of the projections.

### B.  BACKGROUND

The DCHCS, within the CDCR, is responsible for the management and delivery of health care, including mental health services, to California's inmate population.  Mental health services (including assessment, evaluation, and crisis intervention for each inmate), and therapeutic programs for seriously mentally disordered inmates are delivered via the Mental Health Service Delivery System (MHSDS) at 33 prisons statewide.  The MHSDS provides both inpatient and outpatient services to approximately 32,200 inmates, representing approximately 19 percent of CDCR's overall inmate population[1].

The federal court in the *Coleman v. Schwarzenegger* (formerly Wilson) began issuing orders in 1995.  Since this time, the federal court has issued numerous orders requiring CDCR to take certain measures designed to deliver adequate mental health services to its seriously mentally disordered inmates.  In an effort to comply with these orders and ensure sufficient mental health bed capacity is available to meet future program needs, the CDCR contracted with a health care consulting firm named Tucker-Alan (now called Navigant) in 2002 to design a mental health bed demand forecast methodology.  The derived method projects future bed needs based on several variables that drive bed usage, including total overall prison population, length of stay and discharge rates of patients in inpatient status, and growth in outpatient demand proportional to the historical prevalence of outpatients in the total prison population.  These factors produce a five-year forecast and are adjusted twice

---

[1] Data Sources:  MHSDS population from Health Care Placement Unit. Division of Correctional Health Care Services. June 1, 2006. Mental Health Population Download.
Total Inmate Population from Data Analysis Unit. Estimates and Statistical Analysis Section. CDCR. May 31, 2006.

Navigant Consulting Incorporated                                    Agreement Number C06.284
CDCR SCOPE OF WORK                                                                    Exhibit A

annually based on new overall prison population projections and variations in discharge rates and lengths of stay from the prior year.

Since the inception of the Tucker-Alan methodology, the CDCR has used this method to forecast mental health bed demand, and to demonstrate such demand to the *Coleman* court. Over time the CDCR updated the projection methodology based on changes within the mental health population. For example, on October 4, 2004, the *Coleman* court required the CDCR to submit the results of the Unidentified Needs Assessment (UNA) study. This study determined the existence of an "unidentified need" of some inmate-patients being treated at an outpatient level of care within the MHSDS. Unidentified need referred to those inmates that required a licensed level of care but were not identified as such by CDCR clinicians. As a result of the UNA study, the CDCR determined that there were 512 inmate-patients who required a licensed level of care, but had not been referred to that level of care. In Fall 2005, the CDCR updated the mental health projection methodology to account for the inmate-patients identified in the UNA study.

In November 2005, the *Coleman* Special Master's draft fifteenth round report observed the following regarding CDCR's mental health population forecasts for Mental Health Crisis Beds (MHCBs)[2]:

> " . . . updated and more accurate population plans and projections will need to be developed to determine whether the addition of 50 additional MHCBs in 2008 will suffice to meet the then-existing need, given the surging overall CDCR population. . . . "

In addition, the Special Master's draft report recommended several measures, of which two were recommendations to produce plans for inpatient mental health beds based on updated population projections[3].

In an effort to address the Court's concerns, the CDCR in January 2006, re-engaged Navigant Consulting Incorporated to, at a minimum, review and update the 2002 Tucker-Alan bed projection methodology based on the results of the UNA study, and produce a validated mental health bed five-year forecast that is based upon the Spring 2006 population projections.

In accomplishing these tasks, Navigant Consulting Incorporated discovered the following two major issues that produced a significantly different mental health bed forecast from the forecast that was produced by the CDCR in Fall 2005:

- The manner in which the number of UNA identified inmate-patients were incorporated into the projection methodology; and
- There was a difference in the discharge rate factor, which was double that of the Navigant Consulting Incorporated model in the CDCR projections.

Both of these factors caused the CDCR's bed forecasts to be significantly inflated compared to the now updated Navigant mental health bed forecast (*i.e.* the Spring 2006 bed forecast). The CDCR advised the *Coleman* court on June 30, 2006[4], of this discrepancy, and on

---

[2] Fifteenth Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies, and Protocols. (Draft form). November 2005.
[3] Note: These recommendations later became orders of the *Coleman* court on March 2, 2006.
[4] The CDCR submitted the *Statewide Mental Health Bed Plan, April 2006 - June 2006 Amendment* to the *Coleman* court on June 30, 2006.

October 20, 2006, the Coleman court approved the program population projections in the revised and updated Navigant Study (*i.e.* Spring 2006 bed forecast), and ordered the following:

"Defendants [CDCR] shall contract with Navigant Consultants to conduct annual population reviews and updates of their projections for mental health program populations from 2007 through 2009. Thereafter, Defendants may obtain such population projections services through the normal contract bidding process. The Navigant service contract shall be controlled and supervised by the CDCR's Division of Correctional Health Care Services rather than the CDCR's Division of Legal Affairs. The Special Master, and such of his experts as he may assign to the task, shall work with the defendants and Navigant to improve the projections and ensure that all necessary data is collected to make future projections as accurate as possible."

Presently, the DCHCS has an immediate need to complete the Fall 2006 bed forecast. Therefore, the DCHCS developed the following scope of work to meet this immediate need (i.e. the Fall 2006 bed forecast), and to comply with the mandates of the October 20, 2006, Coleman court order to contract with Navigant Consulting Incorporated to complete subsequent bed forecasts from 2007 through 2009.

As outlined below, the Contractor will provide instruction and direction to a designated CDCR employee, or employees, so that CDCR may ultimately assume responsibility of maintaining the mental health projections at the end of this contract.

## C. CDCR'S RESPONSIBILITIES

1. The CDCR shall identify a Program Manager for this contract, (See Section G below).
2. The CDCR shall provide the Contractor with the data necessary to complete the mental health bed forecast. **Note:** the CDCR will provide for a contingency payment if the Contractor must re-run a portion or full forecast (Deliverable #1 below) due to CDCR providing incomplete or inaccurate data necessary to complete said forecast, (See *Data Contingency Clause*, Section F below).
3. The CDCR shall make staff available as needed to provide support and other assistance.
4. The CDCR shall be responsible for reviewing deliverables detailed under the Contractor's Responsibilities.
5. The CDCR shall identify the positions and/or classifications to participate in this project, and upon identification shall notify the Contractor.
6. The CDCR shall identify and inform the Contractor of each position and/or classification scope of practice, and job description within CDCR for the Contractor's interpretation.

## D. CONTRACTORS RESPONSIBILITIES

1. The Contractor shall provide and maintain a Curriculum Vitae or resume for all staff paid through this contract.
2. The Contractor shall conduct all components of the project.
3. The Contractor shall compile results and provide written reports to the CDCR Program Manager. All forecasts, reports, and associated documents (e.g. revised methodology, instruction guide) shall also be provided in electronic format in either Microsoft Word, Excel, or Powerpoint, (version 2000 or more recent).

## E.  TASKS AND DELIVERABLES

Over an approximate three-year period, beginning with the Fall 2006 bed forecast (approximate start date of December 1, 2006), and continuing through December 31, 2009, (includes the Fall 2009 bed projection), the Contractor shall[5]:

1.  Update the mental health bed forecast twice a year.

    Deliverables:  Produce a five-year mental health bed forecast using Navigant Consulting Incorporated's methodology, CDCR's general population projections, and other data as needed from CDCR and the Department of Mental Health (DMH).  See *Data Contingency Clause*, Section F below for further details regarding data integrity issues.

    Completion Date:  This will need to be accomplished twice a year, and is due 30 days after the Contractor's receipt of CDCR's general population projections (Fall or Spring).  General timelines for the release of CDCR's general population projections are as follows:
    - Fall projections in September/October, and
    - Spring projections in March/April.

    If possible, the Contractor will provide the mental health forecast sooner than the 30 day period.

2.  Review and update Navigant Consulting Incorporated's mental health bed projection methodology.

    Deliverables:  Produce a revised mental health projection methodology, along with a report indicating such updates, if any, to the previous method.

    Completion Date:  The revised methodology and report will be due twice a year at the same time as the updated forecast (Deliverable #1 above).

3.  Provide expert testimony.

    Deliverables:  Contractor shall present their findings to the Special Master and provide associated expert testimony to the Special Master, the Court experts, plaintiffs' counsel, and other State control agencies as needed.

    Completion Date:  This will be completed on an as needed basis at the request of CDCR's Program Manager, or designee.  Expert testimony hours will be billed at $350/hour.  Over the three-year period of this contract, the Contractor may need to travel to California at least one time, at the request of CDCR's Program Manager, or designee.  CDCR payments for billed hours of expert testimony are subject to approval by the Program Manager identified in this contract.

---

[5] Note:  The Fall 2006 mental health bed forecast is included in Year 1, along with the Spring 2007 and Fall 2007 mental health bed forecasts.  The Fall 2006 mental health bed forecast will not be completed until the contract is approved and the Contractor receives the Fall 2006 general population projections.

Navigant Consulting Incorporated                                    Agreement Number C06.284
CDCR SCOPE OF WORK                                                                  Exhibit A

4.  Identify and recommend areas within the CDCR, which if changed, may improve its mental health bed forecast.

    Deliverables:  Develop a report that identifies and recommends areas within the CDCR, which if changed, may improve its mental health bed forecast.  This includes participating as a member of a task force that addresses an overall forecasting effort that would evaluate historical trends and discharge rates within CDCR's mental health population, and identify areas of best practices that may be used to increase the accuracy of the mental health bed forecast.

    Completion Date:  The report will be due twice a year at the same time as the updated forecast (Deliverable #1 above).

    It is anticipated at this time that participation in a task force that addresses the overall forecasting effort will require three meetings per year.  On an annual basis, the Contractor must travel to at least one of these meetings to be held at DCHCS headquarters in Sacramento, California.  The CDCR's Program Manager, or designee, shall determine the dates for these meetings. It is anticipated that the first task force meeting with be held within 30 days of the first projection report.

5.  Provide training to appropriate DCHCS staff so that CDCR may perform this function on a consistent and reliable basis.

    Deliverables:  Beginning the third year of this contract, the Contractor shall provide the CDCR an instruction guide on how to produce the mental health forecast using Navigant Consulting Incorporated's methodology, provide initial instruction to a designated CDCR employee (or employees), and provide follow up instruction as needed.

    Completion Date:  The instruction guide will be due the beginning of the third year of this contract, (estimated completion date of September 1, 2008).

    During the third year of this contract, and upon CDCR's designation of an employee (or employees), the designated employee(s) will "shadow" the Contractor who prepares the projections for the first report of year three; for the second report of year three, the Contractor will "shadow" the designated employee(s) to assure understanding of the process and the ability to execute the projection. It is anticipated that this instruction will require a two time two-day travel to Sacramento, with dates to be arranged with CDCR's Program Manager, or designee.

    The Contractor will provide follow up instruction as needed after the completion of report two for the third year.  The estimated time from the Contractor during the fourth year is to be no more than 10 hours at no additional cost to CDCR.

6.  Produce an annual report indicating the accuracy of the projections.

    Deliverables:  Develop a report indicating the accuracy of the bed forecasts, which includes a comparison of the projected beds and the actual beds for that time period with analysis of causal factors in cases of discrepancy.

    Completion Date:  This report is due on an annual basis by July 15th.

Navigant Consulting Incorporated                                      Agreement Number C06.284
CDCR SCOPE OF WORK                                                                      Exhibit A

## F. DATA CONTINGENCY CLAUSE

1.  It is mutually agreed between the CDCR and Contractor that if the Contractor must re-run either a portion or full forecast (Deliverable #1 above) due to CDCR providing inaccurate or incomplete data, then the Contractor shall be compensated for work necessary to produce the said report.

2.  The Contractor shall be compensated for work completed under this clause at a rate of $350/hour up to a maximum amount of $8,000 per incident. An incident is defined as each time the Contractor must produce a final forecast as outlined in Deliverable #1 above, (Section E.1 of this contract).

3.  The Contractor shall submit requests for payments under this clause to the Program Manager identified in this contract.

4.  CDCR payments under this clause are subject to approval by the Program Manager identified in this contract.

## G. REPORTING

The Contractor shall report to the Program Manager:
~~Doug McKeever~~ ⟶ KIM A. GARCIA
Program Director, Mental Health Services
California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services

## H. PROGRESS REPORTS

The review criteria shall include, but not be limited to, problems encountered during the contract, future performance, and any other subjects relating to completion of specified tasks. A copy of each review shall be prepared by the CDCR Program Manager or designee and forwarded to the contractor.

CDCR Program Manager and address:

Doug McKeever, Program Manager
California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
501 J Street, Suite 506
Sacramento, CA 95814

## I. CDCR CONTACT INFORMATION

Should questions or problems arise during the term of this contract, the Contractor should contact the following offices:

Billing/Payment Issues:
Headquarters Accounting Office
Phone Number (916) 327-0283

- 6 -

Navigant Consulting Incorporated                                      Agreement Number C06.284
CDCR SCOPE OF WORK                                                                    Exhibit A

Scope of Service/Performance Issues:
Doug McKeever, Program Director, Mental Health Services, or designee
Division of Correctional Health Care Services
Phone Number: (916) 327-1168

General Contract Issues:
Office of Contract Services
Phone Number (916) 323-8718
Fax Number (916) 322-1098

Navigant Consulting Incorporated                                        Agreement Number C06.284
California Department of Corrections And Rehabilitation (CDCR)                        Exhibit B
BUDGET DETAIL AND PAYMENT PROVISIONS

## MENTAL HEALTH BED PROJECTIONS SERVICES

1.   **Invoicing and Payment**

   a.   For services satisfactorily rendered, and upon receipt and approval of Provider's invoices, the State agrees to compensate the Provider for actual expenditures incurred in accordance with Exhibit B-1, Contractor Rate Proposal and the rates specified herein on Exhibit B-2, Budget Proposal, which are attached hereto and made a part of this Agreement.

   b.   Invoices shall be submitted in triplicate, not more frequently than monthly in arrears, and shall itemize each service provided.   Invoices submitted for payment must be legible and accurate.  Invoices that have been altered or are inaccurate and do not provide the information required will not be accepted and will be retuned to the Provider for correction.

   Invoices shall be sent to:

   **For Approval:**
   California Department of Corrections and Rehabilitation (CDCR)
   Division of Correctional Health Care Services
   Mental Health Program
   Attn:  Doug McKeever, Program Director of Mental Health Services
   501 J. Street
   Sacramento, CA 95814
   Phone: (916) 327-1168

   **After approval, invoices will be forwarded by DCHCS to the following address for Payment:**
   California Department of Corrections and Rehabilitation
   Headquarters Regional Accounting Office for
   Division of Correctional Health Care Services
   Attention: Accounts Payable
   P.O. Box 187018
   Sacramento, CA 95818-7018

2.   **Budget Contingency Clause**

   a.   It is mutually agreed that if the California State Budget Act for the current fiscal year and/or any subsequent fiscal years covered under this Agreement does not appropriate sufficient funds for the program, this Agreement shall be of no further force and effect. In this event, the State shall have no liability to pay any funds whatsoever to Provider, or to furnish any other considerations under this Agreement, and Provider shall not be obligated to perform any provisions of this Agreement.

b.  If funding for the purposes of this program is reduced or deleted for any fiscal year by the California State Budget Act, the State shall have the option to either cancel this Agreement with no liability occurring to the State, or offer an Agreement amendment to Provider to reflect the reduced amount.

3.  **Prompt Payment Clause**

Payment will be made in accordance with, and within the time specified in, Government Code Chapter 4.5, commencing with Section 927. Payment to small/micro businesses shall be made in accordance with and within the time specified in Chapter 4.5, Government Code 927 et seq.

4.  **Subcontractors**

For all Agreements, with the exception of Interagency Agreements and other governmental entities/auxiliaries that are exempt from bidding, nothing contained in this Agreement, or otherwise, shall create any contractual relation between the State and any subcontractors, and no subcontract shall relieve the Provider of Provider's responsibilities and obligations hereunder. The Provider agrees to be as fully responsible to the State for the acts and omissions of its subcontractors and of persons either directly or indirectly employed by any of them as it is for the acts and omissions of persons directly employed by the Provider. The Provider's obligation to pay its subcontractors is an independent obligation from the State's obligation to make payments to the Provider. As a result, the State shall have no obligation to pay or to enforce the payment of any moneys to any subcontractor.

5.  **Progress Payments**

Not less than ten percent (10%) of the Agreement amount shall be withheld pending final completion of the Agreement, and receipt and acceptance by the California Department of Corrections and Rehabilitation (CDCR) of any final reports required under the Agreement. However, for those Agreements that consist entirely of separate and distinct tasks, any funds withheld with regard to a particular task may be paid upon completion of that particular task.

Navigant Consulting Incorporated
California Department of Corrections and Rehabilitation (CDCR)
CONTRACTOR BUDGET REQUEST

Agreement Number C06.284
Exhibit B-1

## MENTAL HEALTH BED PROJECTIONS SERVICES

The contractor hereby agrees to provide all labor, materials, supplies, licenses, permits, equipment and transportation necessary to perform all services required for the foregoing titled work in accordance with the Scope of Work, all Terms and Conditions, and Disabled Veteran Business Enterprise (DVBE) requirements, if applicable, at the rates set forth by the contractor in Exhibit B-2. Any and all services performed outside the scope of this Agreement shall be at the sole risk and expense of the contractor.

Rates must be provided for all services listed in Exhibit B-2. Exhibit B-2 shall remain in force for the stated term of this Agreement and shall include every item of expense, direct and indirect, including any taxes incidental to the specified rates. Any quantities listed on Exhibit B-2 are CDCR's estimates only. The State does not expressly or by implication agree that the actual amount of work will correspond therewith and reserves the right to omit portions of the work as may be deemed necessary or advisable by the State.

### SMALL BUSINESS ENTERPRISE

Current law encourages state departments to first consider a Small Business Enterprise (Small)/Microbusiness Enterprise (Micro) for contracting opportunities. The California Department of Corrections and Rehabilitation (CDCR) is committed to supporting Small/Micro business participation in state contracting and seeks to use certified Small/Micro businesses whenever possible.

For certification information, contact the Department of General Services, Office of Small Business and Disabled Veteran Business Enterprise Certification (OSDC) by telephone at (916) 375-4940 or access the OSDC Internet website at *www.pd.dgs.ca.gov/smbus*. The CDCR asks that you encourage any subcontractor(s) and/or consultant(s) that are not currently certified as a Small/Micro business, that you believe may meet the certification requirements, to become certified through the DGS, OSDC. Please provide those subcontractor(s)/consultant(s) with the OSDC contact and certification information provided above.

If you are a certified Small/Micro business enterprise and fail to complete the Prime Contractor information section below, your business shall be classified as a large business which will preclude your bid from receiving the five percent (5%) Small/Micro business preference and cause incorrect reporting of Small/Micro business and large business participation by CDCR.

---

PRIME CONTRACTOR NAME: _____

☐   I am a Small Business Enterprise.  My DGS reference number is:  _____

☐   I am a Microbusiness Enterprise.   My DGS reference number is:  _____

☐   I am a large business.

**NOTE: IF YOU ARE A CERTIFIED SMALL/MICRO BUSINESS ENTERPRISE AND FAIL TO COMPLETE THIS SECTION, YOUR BUSINESS WILL BE CLASSIFIED AS A LARGE BUSINESS.**

---

Navigant Consulting Incorporated
Budget Proposal

Agreement No. C06.284
Exhibit B-2

## MENTAL HEALTH BED PROJECTIONS SERVICES

| DATE | MILESTONE | DELIVERABLE^ | FEE^^ |
|---|---|---|---|
| **TABLE 1: Total Expenses** | | | |
| **YEAR 1:**<br>11/17/2006 -<br>12/31/07 | Completion of first bed study<br>(Fall 2006 population projections) | #1, #2, #4 | $45,000.00 |
| | Completion of second bed study<br>(Spring 2007 population projections) | #1, #2, #4 | $45,000.00 |
| | Completion of third bed study<br>(Fall 2007 population projections) | #1, #2, #4 | $47,500.00 |
| | Completion of annual report. | #6 | $4,000.00 |
| | Contingency for data collections and expert testimony. | #3 | As needed* |
| **YEAR 2:**<br>1/1/08 –<br>12/31/08 | Completion of first bed study<br>(Spring 2008 population projections) | #1, #2, #4 | $47,500.00 |
| | Completion of second bed study<br>(Fall 2008 population projections).\ | #1, #2, #4 | $49,875.00 |
| | Completion of annual report. | #6 | $4,000.00 |
| | Contingency for data collections and expert testimony. | #3 | As needed* |
| **YEAR 3:**<br>1/1/09 –<br>12/31/09 | Completion of first bed study<br>(Spring 2009 population projections) | #1, #2, #4, #5 | $49,875.00 |
| | Completion of second bed study<br>(Fall 2009 population projections) | #1, #2, #4, #5 | $52,369.00 |
| | Completion of annual report. | #6 | $4,000.00 |
| | Contingency for data collections and expert testimony. | #3 | As needed* |
| | | Total: | $349,119.00 |
| | Travel, Data Contingency, Expert Testimony Fees | | $29,220.00 |
| | | **Grand Total** | **$378,339.00** |
| ^ See Scope of Work, Exhibit A, for deliverables detail. | | | |
| ^^ Each year includes a 5% increase between Spring and Fall projection bed studies. | | | |
| * Data collection contingency and expert testimony fee estimated in Table 2. | | | |

Navigant Consulting Incorporated
Budget Proposal

Agreement No. C06.284
Exhibit B-2

| TABLE 2:  Expenses for Data Contingency, Expert Testimony, and Travel | | | |
|---|---|---|---|
| Expense Item | Number of Occurrences | Rate | Costs |
| Data Contingency Clause | As needed. **Note:**  This money may not be needed if CDCR provides the contractor with good data. | $350 per hour for a maximum of $8,000 per event. | $8,000.00 |
| Expert Testimony | As needed. **Note:**  This cost is for the entire three-year term. | 16 hours at $350 per hour | $5,600.00 |
| Travel | Eight trips to Sacramento, California | Reimbursements in accordance with CDCR and DPA reimbursement guidelines. | **$15,620.00 |
| | | **Total** | **$29,220.00** |
| **Travel Expenses breakdown in Table 3 | | | |

| TABLE 3:  Travel Expenses | | | | | |
|---|---|---|---|---|---|
| Cost per Round trip Airfare | Lodging | Per diem | Taxis/ Parking | +30% | Grand Total |
| $1307 per trip | $84 per night | $40 per day | $40 per trip | | |
| $10,456.00 | $840.00 | $400.00 | $320.00 | $3,604.80 | $15,620.80 |
| | | | | | |
| 8 Trips | | 10 Nights | | 10 Nights | |
| 4 – one day trips + (John Misener) 2 – two day trips + (John Misener) 2 – one day trips for one additional person (Mary Beth Thomas) | | 6 one day one person stays + 2 one person two day stays | | 6 one day one person stays + 2 one person two day stays | |

When the Consultant(s) travel to Sacramento, they are required to travel under the terms of this Agreement.  CDCR agrees to pay travel, per diem and expense costs incurred in the performance of services described at rates not to exceed those approved by the Department of Personnel Administration (DPA) for non-represented employee(s).

**For the purposes of this contract, travel expenses are defined as follows:**

The State agrees to reimburse employees for actual, necessary and appropriate business expenses and travel expenses incurred 50 miles or more from home and headquarters, in accordance with existing DPA rules and as set forth below. Lodging and/or meals provided by the State or included in hotel expenses or conference fees or

in transportation costs such as airline tickets or otherwise provided shall not be claimed for reimbursement.

Snacks and continental breakfasts such as rolls, juice, and coffee are not considered to be meals. Each item of expenses of $25 or more requires a receipt; receipts may be required for items of expense that are less than $25. When receipts are not required to be submitted with the claim, it is the employee's responsibility to maintain receipts and records of their actual expenses for tax purposes. Each State agency shall determine the necessity for travel and the mode of travel to be reimbursed.

Meals/Incidentals - Meal expenses for breakfast, lunch, and dinner will be reimbursed in the amount of actual expenses up to the maximums. The term "incidentals" includes, but is not limited to, expenses for laundry, cleaning and pressing of clothing, and fees and tips for services, such as for porters and baggage carriers. It does not include taxicab fares, lodging taxes or the cost of telegrams or telephone calls.

**Meal Reimbursement Rates:**

Rates - Actual meal/incidental expenses incurred will be reimbursed in accordance with the maximum rates and time frame requirements outlined below:

Breakfast up to $ 6.00
Lunch up to $10.00
Dinner up to $18.00
Incidentals up to $ 6.00
Total up to $40.00 (Every full 24 hours of travel)

Time Frames - For continuous short-term travel of more than twenty-four (24) hours but less than thirty-one (31) days, the employee will be reimbursed for actual costs up to the maximum for each meal, incidental, and lodging expense for each complete twenty-four (24) hours of travel, beginning with the traveler's time of departure and return as follows:

a.  On the first day of travel on a trip of more than twenty-four (24) hours:
    Trip begins at or before 6 a.m. Breakfast may be claimed
    Trip begins at or before 11 a.m. Lunch may be claimed
    Trip begins at or before 5 p.m. Dinner may be claimed

b.  On the fractional day of travel at the end of a trip of more than twenty-four (24) hours:
    Trip ends at or after 8 a.m. Breakfast may be claimed
    Trip ends at or after 2 p.m. Lunch may be claimed
    Trip ends at or after 7 p.m. Dinner may be claimed
    If the fractional day includes an overnight stay, receipted lodging may be claimed. No meal or lodging expenses may be claimed or reimbursed more than once on any given date or during any 24-hour period.

c.  For continuous travel of less than twenty-four (24) hours, the employee will be reimbursed for actual expenses up to the maximum as follows:
    Travel begins at or before 6 a.m. and ends at or after 9 a.m.:  Breakfast may be claimed
    Travel begins at or before 4 p.m. and ends at or after 7 p.m.:  Dinner may be claimed

If the trip extends overnight, receipted lodging may be claimed.  No lunch or incidentals may be claimed on a trip of less than twenty-four (24) hours.

## Lodging:

All lodging reimbursement requires an original receipt from a commercial lodging establishment such as a hotel, motel, bed and breakfast inn, or public campground that caters to the general public. No lodging will be reimbursed without a valid receipt.

### Regular State Business Travel

a.  Statewide, in all locations not listed in b. below, for receipted lodging while on travel status to conduct State business:  With a lodging receipt: Actual lodging up to $84 plus applicable taxes.

b.  When employees are required to do business and obtain lodging in the counties of Alameda, San Francisco, San Mateo and Santa Clara, reimbursement will be for actual receipted lodging to a maximum of $140 plus applicable taxes. When employees are required to do business and obtain lodging in the counties of Los Angeles and San Diego, actual lodging up to $110 plus applicable taxes.

c.  For receipted lodging while attending State Sponsored conferences and conventions, when the lodging is contracted by the State sponsor for the event, and the appointing authority has granted prior approval for attendance and lodging at the contracted rate and establishment: Actual lodging up to $110 plus applicable taxes.

d.  Only those costs for directly related travel for the project will be reimbursed.  All travel costs and requirements shall be in accordance with the Department of Personnel Administration Rules for Excluded Employees, Section 599.615.1- 599.638.1 (incorporated by reference).  Travel costs must be supported by travel expense vouchers that clearly indicate the purpose, location (to and from destinations), dates, time of travel, rates claimed, mileage, and applicable receipts. Supporting documentation for travel costs claimed must be retained for audit purposes in the Contractor's headquarters or at the program service location where services are being provided.  Contractors may use the State's Travel Expense Claim (CDCR Form 1880, Exhibit F) to expedite processing of invoices.

## Transportation:

Transportation expenses include, but are not limited to, airplane, train, bus, taxi fares, rental cars, parking, mileage reimbursement, and tolls that are reasonably and necessarily incurred as a result of conducting State business. Each State agency shall determine the necessity for travel, and the mode of travel to be reimbursed.

### Mileage Reimbursement

When an employee is authorized by his/her appointing authority or designee to operate a privately owned vehicle on State business the employee will be allowed to claim and be reimbursed 44.5 cents per mile.

Navigant Consulting Incorporated
Budget Proposal

Agreement No. C06.284
Exhibit B-2

## Specialized Vehicles

Employees who must operate a motor vehicle on official State business and who, because of a physical disability, may operate only specially equipped or modified vehicles may claim 44.5 cents per mile, with certification.

Supervisors who approve claims pursuant to this subsection have the responsibility of determining the need for the use of such vehicles.

## Mileage to/From a Common Carrier

When the employee's use of a privately owned vehicle is authorized for travel to or from a common carrier terminal, and the employee's vehicle is not parked at the terminal during the period of absence, the employee may claim double the number of miles between the terminal and the employee's headquarters or residence, whichever is less, while the employee occupies the vehicle. Exception to "whichever is less". If the employee begins travel one (1) hour or more before he normally leaves his home, or on a regularly scheduled day off, mileage may be computed from his/her residence.

**Receipts:**

Receipts or vouchers shall be submitted for every item of expense of $25 or more. In addition, receipts are required for every item of transportation and business expense incurred as a result of conducting State business except for actual expenses as follows:

a.  Railroad and bus fares of less than $25 when travel is wholly within the State of California.

b.  Street car, ferry fares, bridge and road tolls, local rapid transit system, taxi, shuttle or hotel bus fares, and parking fees of $10 or less for each continuous period of parking or each separate transportation expense noted in this item.

c.  Telephone, telegraph, tax, or other business charges related to State business of $5 or less.

d.  In the absence of a receipt, reimbursement will be limited to the non-receipted amount above.

e.  Reimbursement will be claimed only for the actual and necessary expenses noted above. Regardless of the above exceptions, the approving officer may require additional certification and/or explanation in order to determine that an expense was actually and reasonably incurred. In the absence of a satisfactory explanation, the expense shall not be allowed.

**ADDITIONAL INFORMATION:**  It is the policy of the CDCR, pursuant to the State Administrative Manual, Section 0755, to reimburse employees parking at airports for the less expensive peripheral parking, or explain excessive parking charges.  In order to comply with the above rule, each Travel Expense Claim that includes reimbursement for short-term parking must bear the explanation of the emergency need for such parking.

5

Invoices must be submitted to the following:

      Department of Corrections and Rehabilitation
      Division of Correctional Health Care Services
      Mental Health Services
      Attn:  Doug McKeever, Program Director
      501 J. Street, Suite 506
      Sacramento, CA 95814

Navigant Consulting Incorporated                                        Agreement Number C06.284
California Department of Corrections and Rehabilitation (CDCR)                      Exhibit D
SPECIAL TERMS AND CONDITIONS

## MENTAL HEALTH BED PROJECTIONS SERVICES

1. **Contract Disputes** (Supersedes provision number 6, Disputes, of Exhibit C)

   As a condition precedent to contractor's right to institute and pursue litigation or other legally available dispute resolution process, if any, contractor agrees that all disputes and/or claims of contractor arising under or related to the Agreement shall be resolved pursuant to the following processes. Contractor's failure to comply with said dispute resolution procedures shall constitute a failure to exhaust administrative remedies.

   Pending the final resolution of any such disputes and/or claims, contractor agrees to diligently proceed with the performance of the Agreement, including the delivering of goods or providing of services. Contractor's failure to diligently proceed shall constitute a material breach of the Agreement.

   The Agreement shall be interpreted, administered, and enforced according to the laws of the State of California. The parties agree that any suit brought hereunder shall have venue in Sacramento, California, the parties hereby waiving any claim or defense that such venue is not convenient or proper.

   a. **Final Payment**
      The acceptance by contractor of final payment shall release the California Department of Corrections and Rehabilitation (CDCR) from all claims, demands and liability to contractor for everything done or furnished in connection with this work and from every act and neglect of CDCR and others relating to or arising out of this work except for any claim previously accepted and/or in process of resolution.



   b. **Informal Appeal**
      Contractor and the program or institution contract liaison, or other designated CDCR employee of the unit for which the goods are being delivered or the service is being performed, shall first attempt in good faith to resolve the dispute or claim by informal discussion(s). Contractor shall identify the issues and the relief sought. Informal discussion(s) between contractor and contract liaison, or the designated CDCR employee, shall be written, dated, and signed by the authors.

      The program or institution contract liaison shall issue an informal written statement to contractor regarding the dispute within fifteen (15) calendar days following settlement or an impasse in the informal discussion(s) process. The written statement shall either: (1) document the dispute settlement and what, if any, conditions were reached; or, (2) document the reason(s) the dispute could not be resolved informally and provide notification to contractor of its option to file a formal appeal within thirty (30) days of the informal statement. One (1) copy of the informal statement and the discussion(s) on which it is based shall be forwarded immediately to the Office of Business Services (OBS) for inclusion in the Agreement file.

   c. **Formal Appeal**
      If the dispute or claim is not resolved to contractor's satisfaction by the informal appeal process, contractor may file with the Associate Director, Procurement and Contracts Branch (PCB), OBS, a formal written appeal within thirty (30) calendar days of the date of CDCR's informal written decision. The formal written appeal shall be addressed as follows:

(SUBJECT)
Associate Director
Procurement and Contracts Branch
Office of Business Services
California Department of Corrections and Rehabilitation
P.O. Box 942883
Sacramento, California  94283-0001

Contractor shall specify in the formal written appeal the issue(s) in dispute, the particular relief or remedy sought, the factual basis for contractor's claim or dispute, and contractor's legal, technical and/or other authority upon which contractor bases its claim or dispute.

The formal written appeal shall include a written certification signed by a knowledgeable company official under the penalty of perjury according to the laws of the State of California pursuant to California Code of Civil Procedure Section 2015.5 that the dispute, claim, or demand is made in good faith, and that the supporting data are accurate and complete.  If an Agreement adjustment is requested, the written certification shall further state under penalty of perjury that the relief requested accurately reflects the Agreement adjustment for which the CDCR is responsible.

If contractor is a corporation, the written certification shall be signed by an officer thereof. If contractor is a sole proprietorship or partnership, it shall be signed by an owner or full partner.  If contractor is other than a corporation, sole proprietorship or partnership, it shall be signed by a principal of the company with authority to bind the company.

The Associate Director, PCB, OBS, shall issue a formal written decision on behalf of CDCR within thirty (30) calendar days of receipt of the properly addressed formal written appeal.  If mutually agreed by the parties, the date for the issuance of CDCR's final written decision may be extended.

d.    **Further Resolution**
      If the dispute is not resolved by the formal appeal process to contractor's satisfaction, or contractor has not received a written decision from the Associate Director, PCB, OBS, after thirty (30) calendar days, or other mutually agreed extension, contractor may thereafter pursue its right to institute other dispute resolution process(es), if any, available under the laws of the State of California.

e.    **Contract Disputes with Public Entities**
      A county, city, district or other local public body, state board or state commission, another state or federal agency, or joint-powers authority shall resolve a dispute with CDCR, if any, through a meeting of representatives from the entities affected.  If the dispute cannot be resolved to the satisfaction of the parties, each entity may thereafter pursue its right to institute litigation or other dispute resolution process, if any, available under the laws of the State of California.

2.    **Right to Terminate** (Supersedes provision number 7, Termination for Cause, of Exhibit C)

The State reserves the right to terminate this Agreement subject to thirty (30) calendar days written notice to the contractor.  Contractor may submit a written request to terminate this

Agreement only if the State should substantially fail to perform its responsibilities as provided herein.

Additionally, the State reserves the right to terminate this Agreement subject to thirty (30) calendar days written notice to the contractor should it be later identified as a service which can be consolidated into a statewide/regionalized Agreement. The State may exercise its option to cancel the remaining years of this Agreement, should it be decided that with additional institutions and/or sites, the State will receive a better rate for the same service.

However, the Agreement can be immediately terminated for cause. The term "for cause" shall mean that the contractor fails to meet the terms, conditions, and/or responsibilities of the Agreement. In this instance, the Agreement termination shall be effective as of the date indicated on the State's notification to the contractor.

This Agreement may be suspended or cancelled without notice, at the option of the contractor, if the contractor or State's premises or equipment are destroyed by fire or other catastrophe, or so substantially damaged that it is impractical to continue service, or in the event the contractor is unable to render service as a result of any action by any governmental authority.

3.    **Responsibility Hearing**

If this Agreement is terminated for cause, CDCR reserves the right to conduct a responsibility hearing to determine if the contractor is a responsible bidder before an award of future Agreements can be made.

4.    **Confidentiality of Data**

All financial, statistical, personal, technical and other data and information relating to State's operation, which are designated confidential by the State and made available to carry out this Agreement, or which become available to the contractor in order to carry out this Agreement, shall be protected by the contractor from unauthorized use and disclosure.

If the methods and procedures employed by the contractor for the protection of the contractor's data and information are deemed by the State to be adequate for the protection of the State's confidential information, such methods and procedures may be used with the written consent of the State. The contractor shall not be required under the provisions of this paragraph to keep confidential any data already rightfully in the contractor's possession that is independently developed by the contractor outside the scope of the Agreement or is rightfully obtained from third parties.

No reports, information, inventions, improvements, discoveries, or data obtained, repaired, assembled, or developed by the contractor pursuant to this Agreement shall be released, published, or made available to any person (except to the State) in violation of any State or federal law.

Contractor by acceptance of this Agreement is subject to all of the requirements of California Government Code Section 11019.9 and California Civil Code Sections 1798, et seq., regarding the collection, maintenance, and disclosure of personal and confidential information about individuals.

5.      **Workers' Compensation**

Contractor hereby represents and warrants that Contractor is currently and shall, for the duration of this agreement, carry workers' compensation insurance, at Contractor's expenses, or that it is self-insured through a policy acceptable to the CDCR, for all of its employees who will be engaged in the performance of this agreement.  Such coverage will be a condition of CDCR's obligation to pay for services provided under this agreement.

Prior to approval of this agreement and before performing any work, Contractor shall furnish to the State evidence of valid workers' compensation coverage.  Contractor agrees that the workers' compensation insurance shall be in effect at all times during the term of this agreement.  In the event said insurance coverage expires or is canceled at any time during the term of this agreement, Contractor agrees to give at least thirty (30) days prior notice to CDCR before said expiration date or immediate notice of cancellation.  Evidence of coverage shall not be for less than the remainder of the term of the agreement or for a period of not less than one year.  The State reserves the right to verify the Contractor's evidence of coverage.  In the event the Contractor fails to keep workers' compensation insurance coverage in effect at all times, the State reserves the right to terminate this agreement and seek any other remedies afforded by the laws of this State.

Contractor also agrees to indemnify, defend and save harmless the State, its officers, agents and employees from any and all of Contractor's workers' compensation claims and losses by Contractor's officers, agents and employees related to the performance of this agreement.

6.      **Liability for Loss and Damages**

Any damages by the contractor to the State's facility including equipment, furniture, materials or other State property, will be repaired or replaced by the contractor to the satisfaction of the State at no cost to the State.  The State may, at its option, repair any such damage and deduct the cost thereof from any sum due contractor under this Agreement.

7.      **Computer Software Management Memo**

Contractor certifies that it has appropriate systems and controls in place to ensure that state funds will not be used in the performance of this Agreement for the acquisition, operation or maintenance of computer software in violation of copyright laws.

8.      **Accounting Principles**

The contractor will adhere to generally accepted accounting principles as outlined by the American Institute of Certified Public Accountants.  Dual compensation is not allowed; a contractor cannot receive simultaneous compensation from two or more funding sources for the same services performed even though both funding sources could benefit.

9.      **Liability for Nonconforming Work**

The contractor will be fully responsible for ensuring that the completed work conforms to the agreed upon terms.  If nonconformity is discovered prior to the contractor's deadline, the contractor will be given a reasonable opportunity to cure the nonconformity.  If the nonconformity is discovered after the deadline for the completion of the project, CDCR, in its

Navigant Consulting Incorporated                                    Agreement Number C06.284
CDCR SPECIAL TERMS AND CONDITIONS                                   Exhibit D

sole discretion, may use any reasonable means to cure the nonconformity. The contractor shall be responsible for reimbursing CDCR for any additional expenses incurred to cure such defects.

## 10.    Subcontractor/Consultant Information

Contractor is required to identify all subcontractors and consultants who will perform labor or render services in the performance of this Agreement. Additionally, the contractor shall notify the Department of Corrections and Rehabilitation, Office of Business Services, in writing, within ten (10) working days, of any changes to the subcontractor and/or consultant information.

## 11.    Contract Violations

The contractor acknowledges that any violation of Chapter 2, or any other chaptered provision of the Public Contract Code (PCC), is subject to the remedies and penalties contained in PCC Sections 10420 through 10425.

## 12.    Temporary Nonperformance

If, because of mechanical failure or for any other reason, the contractor shall be temporarily unable to perform the work as required, the State, during the period of the contractor's inability to perform, reserves the right to accomplish the work by other means and shall be reimbursed by the contractor for any additional costs above the Agreement price.

## 13.    Extension of Term

This Agreement may be amended to extend the term if it is determined to be in the best interest of the State. Upon signing the amendment, contractor hereby agrees to provide services for the extended period at the rates specified in the original Agreement.

## 14.    Employment of Ex-Offenders

Contractor cannot and will not either directly, or on a subcontract basis, employ in connection with this Agreement:

a.    Ex-Offenders on active parole or probation;

b.    Ex-Offenders at any time if they are required to register as a sex offender pursuant to Penal Code Section 290 or if such ex-offender has an offense history involving a "violent felony" as defined in subparagraph (c) of Penal Code Section 667.5; or

c.    Any ex-felon in a position which provides direct supervision of parolees.

Ex-Offenders who can provide written evidence of having satisfactorily completed parole or probation may be considered for employment by the contractor subject to the following limitations:

a.    Contractor shall obtain the prior written approval to employ any such ex-offender from the Authorized Administrator; and

b.    Any ex-offender whose assigned duties are to involve administrative or policy decision-making; accounting, procurement, cashiering, auditing, or any other business-related

- 5 -

administrative function shall be fully bonded to cover any potential loss to the State of California.

## 15.   Electronic Waste Recycling

The Contractor certifies that it complies with the requirements of the Electronic Waste Recycling Act of 2003, Chapter 8.5, Part 3 of Division 30, commencing with Section 42460 of the Public Resources Code, relating to hazardous and solid waste. Contractor shall maintain documentation and provide reasonable access to its records and documents that evidence compliance.

## 16.   Excise Tax

The State of California is exempt from federal excise taxes; no payment will be made for any taxes levied on employees' wages. The State will pay for any applicable State of California or local sales or use taxes on the services rendered or equipment or parts supplied pursuant to this Agreement. California may pay any applicable sales and use tax imposed by another state.

## 17.   Licenses and Permits

The contractor shall be an individual or firm licensed to do business in California and shall obtain at contractor's expense all license(s) and permit(s) required by law for accomplishing any work required in connection with this Agreement.

In the event any license(s) and/or permit(s) expire at any time during the term of this Agreement, contractor agrees to provide the CDCR with a copy of the renewed license(s) and/or permit(s) within thirty (30) days following the expiration date. In the event the contractor fails to keep in effect at all times all required license(s) and permit(s), the State may, in addition to any other remedies it may have, terminate this Agreement upon occurrence of such event.

## 18.   Permits and Certifications from State Board of Equalization

This solicitation and any resulting contract shall be subject to all requirements as set forth in Sections 6487, 7101 and sections 6452.1, 6487.3, 18510 of the Revenue and Taxation Code, and section 10295.1 of the Public Contract Code requiring suppliers to provide a copy of their reseller's permit or certification of registration and, if applicable, the permit or certification of all participating affiliates, issued by California's State Board of Equalization. Effective January 1, 2004, awarding departments must obtain, prior to award, copies of the permits or certifications from the proposed awardee. Failure of the supplier to comply by supplying the required permit or certification will cause the supplier's bid response to be considered non-responsive and their bid rejected. Unless otherwise specified in this solicitation, a copy of the reseller's permit or certification of registration must be supplied within five (5) state business days of the request made by the State.

## 19.   Conflict of Interest

The contractor and their employees shall abide by the provisions of Government Code (GC) Sections 1090, 81000 et seq., 82000 et seq., 87100 et seq., and 87300 et seq., Public Contract Code (PCC) Sections 10335 et seq. and 10410 et seq., California Code of Regulations (CCR), Title 2, Section 18700 et seq. and Title 15, Section 3409, and the Department Operations Manual (DOM) Section 31100 et seq. regarding conflicts of interest.

a.   **Contractors and Their Employees**
     Consultant contractors shall file a Statement of Economic Interests, Fair Political Practices Commission (FPPC) Form 700 prior to commencing services under the Agreement, annually during the life of the Agreement, and within thirty (30) days after the expiration of the Agreement. Other service contractors and/or certain of their employees may be required to file a Form 700 if so requested by the CDCR or whenever it appears that a conflict of interest may be at issue. Generally, service contractors (other than consultant contractors required to file as above) and their employees shall be required to file an FPPC Form 700 if one of the following exists:

     (1)   The Agreement service has been identified by the CDCR as one where there is a greater likelihood that a conflict of interest may occur;

     (2)   The contractor and/or contractor's employee(s), pursuant to the Agreement, makes or influences a governmental decision; or

     (3)   The contractor and/or contractor's employee(s) serves in a staff capacity with the CDCR and in that capacity participates in making a governmental decision or performs the same or substantially all the same duties for the CDCR that would otherwise be performed by an individual holding a position specified in the CDCR's Conflict of Interest Code.

b.   **Current State Employees**

     (1)   No officer or employee shall engage in any employment, activity or enterprise from which the officer or employee receives compensation or has a financial interest and which is sponsored or funded by any state agency, unless the employment, activity or enterprise is required as a condition of regular state employment.

     (2)   No officer or employee shall contract on his or her own behalf as an independent contractor with any state agency to provide goods or services.

     (3)   In addition to the above, CDCR officials and employees shall also avoid actions resulting in or creating an appearance of:
           (a) Using an official position for private gain;
           (b) Giving preferential treatment to any particular person;
           (c) Losing independence or impartiality;
           (d) Making a decision outside of official channels; and
           (e) Affecting adversely the confidence of the public or local officials in the integrity of the program.

     (4)   Officers and employees of the Department must not solicit, accept or receive, directly or indirectly, any fee, commission, gratuity or gift from any person or business organization doing or seeking to do business with the State.

c.   **Former State Employees**

     (1)   For the two year (2-year) period from the date he or she left state employment, no former state officer or employee may enter into an Agreement in which he or she engaged in any of the negotiations, transactions, planning, arrangements or any part of the decision-making process relevant to the Agreement while employed in any capacity by any state agency.

     (2)   For the twelve-month (12-month) period from the date he or she left state employment, no former state officer or employee may enter into an Agreement with any state agency if he or she was employed by that state agency in a policy-making position in the same general subject area as the proposed Agreement within the 12-month period prior to his or her leaving state service.

In addition to the above, the contractor shall avoid any conflict of interest whatsoever with respect to any financial dealings, employment services, or opportunities offered to inmates or parolees. The contractor shall not itself employ or offer to employ inmates or parolees either directly, or indirectly through an affiliated company, person or business unless specifically authorized in writing by the CDCR. In addition, the contractor shall not (either directly, or indirectly through an affiliated company, person or business) engage in financial dealings with inmates or parolees, except to the extent that such financial dealings create no actual or potential conflict of interest, are available on the same terms to the general public, and have been approved in advance in writing by the CDCR. For the purposes of this paragraph, "affiliated company, person or business" means any company, business, corporation, nonprofit corporation, partnership, limited partnership, sole proprietorship, or other person or business entity of any kind which has any ownership or control interest whatsoever in the contractor, or which is wholly or partially owned (more than 5% ownership) or controlled (any percentage) by the contractor or by the contractor's owners, officers, principals, directors and/or shareholders, either directly or indirectly. "Affiliated companies, persons or businesses" include, but are not limited to, subsidiary, parent, or sister companies or corporations, and any company, corporation, nonprofit corporation, partnership, limited partnership, sole proprietorship, or other person or business entity of any kind that is wholly or partially owned or controlled, either directly or indirectly, by the contractor or by the contractor's owners, officers, principals, directors and/or shareholders.

The contractor shall have a continuing duty to disclose to the State, in writing, all interests and activities that create an actual or potential conflict of interest in performance of the Agreement.

The contractor shall have a continuing duty to keep the State timely and fully apprised in writing of any material changes in the contractor's business structure and/or status. This includes any changes in business form, such as a change from sole proprietorship or partnership into a corporation or vice-versa; any changes in company ownership; any dissolution of the business; any change of the name of the business; any filing in bankruptcy; any revocation of corporate status by the Secretary of State; and any other material changes in the contractor's business status or structure that could affect the performance of the contractor's duties under the Agreement.

If the contractor violates any provision of the above paragraphs, such action by the contractor shall render this Agreement void.

Members of boards and commissions are exempt from this section if they do not receive payment other than payment for each meeting of the board or commission, payment for preparatory time and payment for per diem.

**20.    Disclosure**

Neither the State nor any State employee will be liable to the contractor or its staff for injuries inflicted by inmates or parolees of the State. The State agrees to disclose to the contractor any statement(s) known to State staff made by any inmate or parolee which indicate violence may result in any specific situation, and the same responsibility will be shared by the contractor in disclosing such statement(s) to the State.

21. **Security Clearance/Fingerprinting**

The State reserves the right to conduct fingerprinting and/or security clearance through the Department of Justice, Bureau of Criminal Identification and Information (BCII), prior to award and at any time during the term of the Agreement, in order to permit Contractor and/or Contractor's employees access to State premises. The State further reserves the right to terminate the Agreement should a threat to security be determined.

22. **Notification of Personnel Changes**

Contractor must notify the State, in writing, of any changes of those personnel allowed access to State premises for the purpose of providing services under this Agreement. In addition, contractor must recover and return any State-issued identification card provided to contractor's employee(s) upon their departure or termination.

23. **Non Eligible Alien Certification**

By signing this Agreement Contractor certifies, under penalty of perjury, that Contractor, if a sole proprietor, is not a nonqualified alien as that term is defined by the United States Code (U.S.C.) Title 8, Chapter 14, Section 1621 et seq.

*The following provisions apply to services provided on departmental and/or institution grounds:*

24. **Bloodborne Pathogens**

Provider shall adhere to California Division of Occupational Safety and Health (CAL-OSHA) regulations and guidelines pertaining to bloodborne pathogens.

25. **Tuberculosis (TB) Testing**

In the event that the services required under this Agreement will be performed within a CDCR institution/parole office/community based program, prior to the performance of contracted duties, contractors and their employees who are assigned to work with inmates/parolees on a regular basis shall be required to be examined or tested or medically evaluated for TB in an infectious or contagious stage, and at least once a year thereafter or more often as directed by CDCR. Regular basis is defined as having contact with inmates/parolees in confined quarters more than once a week.

Contractors and their employees shall be required to furnish to CDCR, at no cost to CDCR, a form CDCR 7336, "Employee Tuberculin Skin Test (TST) and Evaluation," prior to assuming their contracted duties and annually thereafter, showing that the contractor and their employees have been examined and found free of TB in an infectious stage. The form CDCR 7336 will be provided by CDCR upon contractor's request.

26. **Primary Laws, Rules, and Regulations Regarding Conduct and Association with State Prison Inmates**

Individuals who are not employees of the California Department of Corrections and Rehabilitation (CDCR), but who are working in and around inmates who are incarcerated within California's institutions/facilities or camps, are to be apprised of the laws, rules and regulations

governing conduct in associating with prison inmates. The following is a summation of pertinent information when non-departmental employees come in contact with prison inmates.

By signing this contract, the Contractor agrees that if the provisions of the contract require the Contractor to enter an institution/facility or camp, the Contractor and any employee(s) and/or subcontractor(s) shall be made aware of and shall abide by the following laws, rules and regulations governing conduct in associating with prison inmates:

a.    Persons who are not employed by CDCR, but are engaged in work at any institution/facility or camp must observe and abide by all laws, rules and regulations governing the conduct of their behavior in associating with prison inmates. Failure to comply with these guidelines may lead to expulsion from CDCR institutions/facilities or camps.

       SOURCE:    California Penal Code (PC) Sections 5054 and 5058; California Code of Regulations (CCR), Title 15, Sections 3285 and 3415

b.    CDCR does not recognize hostages for bargaining purposes. CDCR has a "NO HOSTAGE" policy and all prison inmates, visitors, and employees shall be made aware of this.

       SOURCE:    PC Sections 5054 and 5058; CCR, Title 15, Section 3304

c.    All persons entering onto institution/facility or camp grounds consent to search of their person, property or vehicle at any time. Refusal by individuals to submit to a search of their person, property, or vehicle may be cause for denial of access to the premises.

       SOURCE:    PC Sections 2601, 5054 and 5058; CCR, Title 15, Sections 3173, 3177, and 3288

d.    Persons normally permitted to enter an institution/facility or camp may be barred, for cause, by the CDCR Director, Warden, and/or Regional Parole Administrator.

       SOURCE:    PC Sections 5054 and 5058; CCR, Title 15, Section 3176 (a)

e.    It is illegal for an individual who has been previously convicted of a felony offense to enter into CDCR institutions/facilities or camps without the prior approval of the Warden. It is also illegal for an individual to enter onto these premises for unauthorized purposes or to refuse to leave said premises when requested to do so. Failure to comply with this provision could lead to prosecution.

       SOURCE:    PC Sections 602, 4570.5 and 4571; CCR, Title 15, Sections 3173 and 3289

f.    Encouraging and/or assisting prison inmates to escape is a crime. It is illegal to bring firearms, deadly weapons, explosives, tear gas, drugs or drug paraphernalia on CDCR institutions/facilities or camp premises. It is illegal to give prison inmates firearms, explosives, alcoholic beverages, narcotics, or any drug or drug paraphernalia, including cocaine or marijuana.

SOURCE:     PC Sections 2772, 2790, 4533, 4535, 4550, 4573, 4573.5, 4573.6 and 4574

g.    It is illegal to give or take letters from inmates without the authorization of the Warden. It is also illegal to give or receive any type of gift and/or gratuities from prison inmates.

SOURCE:     PC Sections 2540, 2541 and 4570; CCR, Title 15, Sections 3010, 3399, 3401, 3424 and 3425

h.    *In an emergency situation the visiting program and other program activities may be suspended.*

SOURCE:     PC Section 2601; CCR, Title 15, Section 3383

i.    For security reasons, visitors must not wear clothing that in any way resembles state issued prison inmate clothing (blue denim shirts, blue denim pants).

SOURCE:     CCR, Title 15, Section 3171 (b) (3)

j.    Interviews with SPECIFIC INMATES are not permitted. Conspiring with an inmate to circumvent policy and/or regulations constitutes a rule violation that may result in appropriate legal action.

SOURCE:     CCR, Title 15, Sections 3261.5, 3315 (3) (W), and 3177.

27.    <u>Clothing Restrictions</u>

While on institution grounds, contractor and all its agents, employees, and/or representatives shall be professionally and appropriately dressed in clothing distinct from that worn by inmates at the institution. Specifically, blue denim pants and blue chambray shirts, orange/red/yellow/white/chartreuse jumpsuits and/or yellow rainwear shall not be worn onto institution grounds, as this is inmate attire. The contractor should contact the institution regarding clothing restrictions prior to requiring access to the institution to assure the contractor and their employees are in compliance.

28.    <u>Tobacco-Free Environment</u>

Pursuant to Penal Code Section 5030.1, the use of tobacco products by any person on the grounds of any institution or facility under the jurisdiction of the Department of Corrections and Rehabilitation is prohibited.

29.    <u>Security Regulations</u>

a.    Unless otherwise directed by the entrance gate officer and/or Contract Manager, the contractor, contractor's employees and subcontractors shall enter the institution through the main entrance gate and park private and nonessential vehicles in the designated visitor's parking lot. Contractor, contractor's employees and subcontractors shall remove the keys from the ignition when outside the vehicle and all unattended vehicles shall be locked and secured while on institution grounds.

b.    Any State- and contractor-owned equipment used by the contractor for the provision of contract services, shall be rendered temporarily inoperative by the Contractor when not in use, by locking or other means unless specified otherwise.

c.    In order to maintain institution safety and security, periodic fire prevention inspections and site searches may become necessary and contractor must furnish keys to institutional authorities to access all locked areas on the worksite. The State shall in no way be responsible for contractor's loss due to fire.

d.    Due to security procedures, the contractor, contractor's employees and subcontractors may be delayed at the institution vehicle/pedestrian gates and sally ports. Any loss of time checking in and out of the institution gates and sally ports shall be borne by the contractor.

e.    Contractor, contractor's employees and subcontractors shall observe all security rules and regulations and comply with all instructions given by institutional authorities.

f.    Electronic and communicative devices such as pagers, cell phones and cameras/microcameras are not permitted on institution grounds.

g.    Contractor, contractor's employees and subcontractors shall not cause undue interference with the operations of the institution.

h.    No picketing is allowed on State property.

## 30.    Gate Clearance

Contractor and contractor's employee(s) and/or subcontractor(s) must be cleared prior to providing services. The contractor will be required to complete a Request for Gate Clearance for all persons entering the facility a minimum of ten (10) working days prior to commencement of service. The Request for Gate Clearance must include the person's name, social security number, valid state driver's license number or state identification card number and date of birth. Information shall be submitted to the Contract Liaison or his/her designee. CDCR uses the Request for Gate Clearance to run a California Law Enforcement Telecommunications System (CLETS) check. The check will include Department of Motor Vehicles check, Wants and Warrants check, and Criminal History check.

*Gate clearance may be denied for the following reasons:* Individual's presence in the institution presents a serious threat to security, individual has been charged with a serious crime committed on institution property, inadequate information is available to establish positive identity of prospective individual, and/or individual has deliberately falsified his/her identity.

All persons entering the facilities must have a valid state driver's license or photo identification card on their person.

Navigant Consulting Incorporated                                    Agreement Number C06.284
California Department of Corrections and Rehabilitation (CDCR)                    Exhibit E
ADDITIONAL PROVISIONS

## MENTAL HEALTH BED PROJECTIONS SERVICES

**1.    Disabled Veteran Business Enterprise (DVBE)**

If this Agreement is exempt from DVBE requirements, CDCR requests your assistance in achieving legislatively established goals for the participation of DVBEs by reporting any certified DVBEs that will be used in the performance of this Agreement.

**2.    DVBE Participation for Equipment Rental and Brokering**

This solicitation and any resulting Agreement shall be subject to all requirements as set forth in SB 1008, Statutes of 2003 pertaining to the following code sections:

    MVC Sections 999.2, 999.5, 999.7, 999.9
    Public Contract Code (PCC) Section 10115.9

In part, these code sections involve DVBE requirements for the purposes of equipment rental. Effective January 1, 2004, awarding departments are prohibited from claiming DVBE participation when the DVBE acts as a broker or agent for purposes of equipment rental. The supplier must provide written submission of a declaration stating that they are acting as a broker or agent signed by any/all DVBE owners and the enterprise manager prior to any Agreement award. Also, PCC Section 10115.9 was added to require that a limited liability company must be wholly owned by one or more disabled veterans. Failure of the supplier to comply with the definition and detailed requirements for providing a commercially useful function will cause the supplier's bid response to be considered non-responsive and their bid will be rejected.

**3.    Small Business and DVBE Participation – Commercially Useful Functions**

This solicitation and any resulting Agreement shall be subject to all requirements as set forth in AB 669, Statutes of 2003 pertaining to the following code sections:

    Government Code Sections 14837, 14838.6, 14839, 14842, 14842.5
    Military and Veterans Code (MVC) Sections 999, 999.6, 999.9

In part, these code sections involve requirements to qualify as a California certified Small Business, Microbusiness and DVBE. Effective January 1, 2004, the aforementioned companies must perform a **commercially useful function** to be eligible for award. AB 669 also requires that the DVBE be "domiciled" in California. Failure of the supplier to comply with the definition of and detailed requirements for providing a **commercially useful function** will cause the supplier's bid response to be considered non-responsive and their bid will be rejected. Also, contractors found to be in violation of certain provisions contained within these code sections may be subject to loss of certification, penalties and Agreement cancellation.

**4.    Confidentiality of Information**

CDCR and Provider agree that all inmate/patient medical record information is identified as confidential and shall be held in trust and confidence and shall be used only for the purposes contemplated under this Agreement.



Provider by acceptance of this Agreement is subject to all of the requirements of the federal regulations implementing the Health Insurance Portability and Accountability Act of 1996 (Code of Federal Regulations (CFR), Title 45, Sections 164.501 et seq.); the California Government Code Section 11019.9; California Civil Code Sections 56 et seq.; and California Civil Code Sections 1798, et seq.; regarding the collections, maintenance, and disclosure of personal and confidential information about individuals. Attached as Exhibit "G" and incorporated herein is a Business Associate Agreement which memorializes the parties' duties and obligations with respect to the protection, use, and disclosure of protected health information.

5.    **Right to Terminate** (Supersedes provision number 3, Right to Terminate, of Exhibit D)

If this is a Public Entity Agreement, the parties hereto agree that either party may cancel this Agreement by giving the other party written notice thirty (30) days in advance of the effective date of such cancellation. In the event of such termination, the State agrees to pay Contractor for actual services rendered up to and including the date of termination.

6.    **Travel**

If contractor is required to travel under the terms of this Agreement, CDCR agrees to pay travel, per diem and expense costs incurred in the performance of services described at rates not to exceed those approved by the Department of Personnel Administration for nonrepresented employee(s).

7.    **Hiring Considerations**

If this Agreement is in excess of $200,000, the contractor shall be required to give priority consideration in filling vacancies in positions funded by the Agreement to qualified recipients of aid under Welfare and Institutions Code Section 11200 et seq.

8.    **Staff Expenses**

If this is a consulting service Agreement, the contractor represents that it has or shall secure at its own expense, all staff required to perform the services described in this Agreement. Such personnel shall not be employees of, or have any contractual relationship with, any governmental entity.

9.    **Evaluation of Contractor**

The Contract Manager shall complete a written evaluation of contractor's performance under this Agreement within sixty (60) days following the term end date. The evaluation shall be prepared on Contract/Contractor Evaluation Sheet (STD 4), and maintained in the Agreement file for three (3) years. If contractor's performance was unsatisfactory, a copy of the evaluation shall be sent to the Department of General Services, Office of Legal Services, within five (5) days, and to the contractor within fifteen (15) days, following completion of the evaluation.

**10.     Résumés, Job Descriptions and Duty Statements**

If this is a consultant Agreement or Request for Proposal (RFP), the contractor must provide and maintain résumés, duty statements and/or job descriptions for all staff paid through this Agreement. In addition, all contracted staff personnel files must indicate the date of employment, rate of pay and benefits, funding source, pay increases, promotions and status changes, and, if applicable, the date and reason(s) for employment termination.

**11.     Project Manager**

If this is a consultant Agreement or RFP, the contractor shall designate a Project Manager to be responsible for ensuring the terms, conditions, and provisions of this Agreement are met. The contractor shall notify the CDCR within five (5) working days of a change in Project Manager. The continuation and subsequent replacement of this position is subject to the provisions contained in the section entitled "Personnel".

**12.     Personnel**

If this is a consultant Agreement or RFP, the contractor agrees to allow CDCR the right to 1) approve, in advance, any personnel to be assigned to this project, and 2) disapprove the continuing assignment of any personnel. If any employee of the contractor is unable to perform due to illness, resignation or other factors beyond the contractor's control, the contractor shall immediately provide acceptable substitute personnel.

The contractor shall report in writing the resignation or dismissal of personnel who are an essential part of the successful operation of the contracted program. The CDCR may immediately terminate the Agreement if the replacement of personnel is detrimental to the program as determined by the CDCR.

**13.     Consultant Contractor's Rights and Obligations**

The State hereby notifies the Contractor of his or her duties, obligations and rights which are contained in Public Contract Code Sections 10335 through 10381.

**14.     Progress Reports**

The CDCR Program Manager and the contractor shall confer as often as necessary, but not less than monthly, to review progress and performance. The review criteria shall include, but not be limited to, problems encountered during the Agreement, future performance, and other subjects relating to completion of specified tasks. A copy of each review shall be prepared by the following CDCR Program Manager and forwarded to the Contractor.

CDCR Program Manager:     Doug McKeever
Address                                Division of Correctional Health Care Services
                                           501 J Street, Suite 506
                                           Sacramento, CA 95814

- 3 -

STATE OF CALIFORNIA

# TRAVEL EXPENSE CLAIM
CDC 1880

*See Instructions and *Privacy Statement On Reverse Side*

Page 1 of 1

| CLAIMANT'S NAME | | | SSN OR EMPLOYEE NUMBER* | DEPARTMENT Corrections |
|---|---|---|---|---|
| ION | CBID | | DIVISION OR BUREAU Administration | INDEX NUMBER |
| RESIDENCE ADDRESS* | | | HEADQUARTERS ADDRESS 1515 S Street | TELEPHONE NUMBER |
| CITY | STATE | ZIP CODE | CITY Sacramento  STATE CA  ZIP CODE 95814 | |

| (1) MONTH/YR (2) DATE | TIME | (3) LOCATION WHERE EXPENSES WERE INCURRED | (4) LODGING | (5) BREAK-FAST | LUNCH | O.T.,U/T, N/C,RELO, OR DINNER | (6) INCIDEN-TALS | (A) COST OF TRANS. | (B) TYPE USED | (C) CARFARE, TOLLS, PARKING | (D) MILES | AMOUNT | (8) BUSINESS EXPENSE | (9) TOTAL EXPENSES FOR DAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| (10) SUBTOTALS | | | | | | | | | | | | | | |
| CLAIM TOTAL | | | | | | | | | | | | | $ | 0.00 |

(11) PURPOSE OF TRIP, REMARKS, AND DETAILS (Attach receipts/vouchers when required)

| (12) NORMAL WORK HOURS | PCA | PROJECT | WORK PHASE | OBJ AO | AMOUNT | OBJ AO | AMOUNT | OBJ AO | AMOUNT | OBJ AO | AMOUNT | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (13) PRIVATE VEHICLE LICENSE No. | | | | | | | | | | | | |
| (14) MILEAGE RATE CLAIMED | | | | | | | | | | | | |
| AGENCY ACCOUNTING OFFICE USE ONLY. PAID BY REV. FUND CHECK No. | | | | | | | | | | | | |
| | | TOTALS | | | | | | | | | | |

(15) I HEREBY CERTIFY that the above is a true statement of the travel expenses incurred by me in accordance with DPA rules in the service of the State of California. If a privately owned vehicle was used, and d mileage rates exceed the minimum rate, I certify that the cost of operating the vehicle was equal to or greater than the rate claimed, and that I have met the requirements as prescribed by SAM Sections 0750, 0751, 0752, 0753, and 0754 pertaining to vehicle safety and seat belt usage.

CLAIMANT'S SIGNATURE ▷  DATE  (16) SIGNATURE OF OFFICER APPROVING TRAVEL AND PAYMENT ▷  DATE

(17) SIGNATURE AND TITLE OF AUTHORITY FOR SPECIAL EXPENSES *(See Item 17 on reverse)* ▷  DATE

**TRAVEL EXPENSE CLAIM**
CDC 1880

Agreement Number C06.284
Exhibit F

## INSTRUCTIONS

...ense accounts are to be submitted at least once a month and not more often than twice a month, expect where the amount claimed is less than $10, the claim need not be submitted until it exceeds $10 or until June 30, whichever occurs first. Requests for reimbursement of out-of-state travel expenses must be claimed separately. Requests for reimbursement of travel expenses which are incurred in different fiscal years must be claimed separately. A brief statement, one line if possible, of the purpose or objective, of the trip must be entered on the line immediately below the last entry for each trip. If the claim is for several trips for the same purpose or objective, one statement will suffice for those trips. Vouchers which are required in support of various expenses must be arranged in chronological order and attached to the claim. Each voucher must show the date, cost, and nature of the expense.

MULTIPLE PAGES--If your claim is more than one page, indicate page number and total number of pages. DO NOT total each page. Use subtotals and enter the total amount of the claim on the last page of the claim in the space for "TOTALS" and "CLAIM TOTAL."

## COLUMN ENTRIES

(1)  MONTH/YEAR--Enter numerical designation of the month and last two digits of the year in which the first expenses on the form were incurred.

(2)  DATE/TIME--Enter date and time of departure on the appropriate line using twenty-four-hour clock (example: 1700 = 5:00 PM). Show time of departure on date of departure, show time of return on the date of return. If departure and return are on the same date, enter departure time above and return time below on the same line. Where the first date show is a continuation of a trip, enter "Continuing" above that date, and where a trip is continued beyond the last date shown, enter "Continuing" after the last date.

(3)  LOCATIONS WHERE EXPENSES WERE INCURRED--Enter the name of the city, town, or location where expenses where incurred. Abbreviations may be used.

(4)  LODGING--Enter the actual cost of the lodging not to exceed the maximum amount authorized by current Department of Personnel Administration (DPA) regulations, bargaining agreements, and detailed in the State Administrative Manual (SAM) Section 0721 to 0724. A receipt is required for any expenditure of $25 or more.

(5)  MEALS--Enter the actual cost of each meal not to exceed the maximum amount for each meal as authorized by current DPA regulations, bargaining agreements, and detailed in the SAM Section 0761 to 0763. Dinner column is to be used to claim dinner on regular travel, overtime meals, and long term, noncommercial and relocation daily meal expense.

OVERTIME MEAL AND BUSINESS RELATED MAIL--Enter the actual cost of the meal not to exceed the maximum amount authorized by current DPA regulations and bargaining agreements. Refer to DPA Management Memos for receipt requirements

(6)  INCIDENTALS--Enter the total actual cost of incidentals not to exceed the maximum amount authorized by current DPA regulations and agreements.

(7)  TRANSPORTATION--Purchase the least expensive round-trip or special rate ticket available. Otherwise the difference will be deducted from the claim. If you travel between the same points without using round-trip tickets, an explanation should be given.

(A)  COST OF TRANSPORTATION--Enter the cost of each purchase of transportation. Show how transportation was obtained if fare was not purchased for cash. Use "CC" for credit card and "C" for cash. If transportation was paid by State, enter method of payment only. Use "SCC" for State credit card, "TO" for ticket order, or "BSA" for billed to State agency. Attach all passenger coupons and ticket order stubs including unused portion of tickets, other credit documents, or premiums, where credits or refunds are due to the State.

(B)  TYPE OF TRANSPORTATION USED--Enter method of transportation used. Use "R" for railway, "B" for bus, airport or, light rail, or BART, "A" for scheduled commercial airline, "RA" for rental aircraft, "DA" for department-owned aircraft, "PA" for privately owned aircraft, "PC" for privately owned car, truck, or other privately owned vehicles, "SV" for specially equipped vehicle for the handicapped, "SC" for State vehicles, "RC" for rental vehicles, "T" for taxi, and "BI" for bicycle.

Supervisors shall not authorize the use of motorcycles on official State business, and no reimbursements will be allowed for motorcycles.

(C)  CARFARE, TOLLS, AND PARKING--Enter carfare, bridge tolls, and parking charges; attach a voucher for any parking charge in excess of $6.00 for any one continuous period of parking.

(D)  PRIVATE CAR USE--Enter number of miles travelled and amount due for mileage for the use of privately owned automobiles as authorized by current agreements, regulations, and detailed in SAM Section 0754.

(8)  BUSINESS EXPENSE--Claims for phone calls must include the place and party called. If charge exceeds $2.50, support by voucher or other evidence. Emergency purchases of equipment, clothing or supplies, travel expenses of inmates, wards, or patients of institutions, and all other charges in excess of $1.00 require receipts and explanation.

(9)  ENTER TOTAL EXPENSES FOR DAY

(10) ENTER SUBTOTALS OR TOTALS

(11) PURPOSE OF TRIP, REMARKS, OR DETAILS--Explain need for travel and any unusual expenses. Enter detail or explanation of items in other columns, if necessary. Vouchers must be provided for any miscellaneous item of expense.

(12) NORMAL WORK HOURS--Enter your beginning and ending normal work hours using twenty-four-hour clock (example: 0800 = 8:00 AM).

(13) PRIVATE VEHICLE LICENSE NUMBER--Enter license number of the privately owned vehicle used on official State business. To claim reimbursement, you must have met the requirements as prescribed by SAM Sections 0751, 0752, and 0753 pertaining to operator requirements, vehicle safety, seat belt usage, and authorization.

(14) MILEAGE RATE CLAIMED--Enter the rate of reimbursement being claimed for private vehicle use.

(15) CLAIMANT'S CERTIFICATION AND SIGNATURE--Your signature certifies that expenses claimed were actually incurred and that the cost of operating the vehicle is at or above the rate claimed.

(16) SIGNATURE OF OFFICER APPROVING PAYMENT--Certifies and authorizes travel; approves expenses as incurred on State business.

(17) SIGNATURE OF AUTHORITY FOR SPECIAL EXPENSES--When a claim for conference or convention expenses under Section 599.635 of the DPA regulations and detailed in SAM Section 0724 is included, or when reimbursement of a business expense exceeds $25.00 or when reimbursing for Bar dues or license fees is included, the signature of the approving officer is required, either on separate document attached to this claim or by signature in this block.

## *PRIVACY STATEMENT

The information practices Act of 1977 (Civil Code Section 1798.17) and the Federal Privacy Act (Public Law 93-579) require that the following notice be provided when collecting personal information from individuals.

AGENCY NAME: Appointing powers and the State Controller's Office (SCO).

UNITS RESPONSIBLE FOR MAINTENANCE: The accounting office within each appointing power and the Audits Division, SCO, 3301 C Street, Room 404, Sacramento, CA 95816.

AUTHORITY: The reimbursement of travel expenses is governed by Government Code Sections 19815,4(d), 19816, and 19820. These sections allow the Department of Personnel Administration (DPA) to establish rules and regulations which define the amount, time, and place that expenses and allowances may be paid to representatives of the State while on State business.

PURPOSE: The information you furnish will allow the above-named agencies to reimburse you for expenses you incur while on official State business.

..HER INFORMATION: While your social security number (SSN) and home address are voluntary information under Civil Code Section 1798.17, the absence of this information may cause payment of your claim to be delayed or rejected. You should contact your departments Accounting Office to determine the necessity for this information.

Navigant Consulting Incorporated
California Department of Corrections and Rehabilitation (CDCR)

Agreement Number C06.284
Exhibit G

## BUSINESS ASSOCIATES AGREEMENT (HIPAA)

### MENTAL HEALTH BED PROJECTIONS SERVICES

WHEREAS, Provider, hereinafter referred to in this Exhibit as "Business Associate," acknowledges that the CDCR, hereinafter referred to in this Exhibit as "Covered Entity," has in its possession data that contains individual identifiable health information as defined by Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 ("HIPAA") and the regulations promulgated thereunder;

WHEREAS, Business Associate and Covered Entity acknowledge that the fulfillment of the Parties' obligations under this Service Agreement necessitates the exchange of, or access to, data including individual identifiable health information; and,

WHEREAS, the parties desire to comply with federal and California laws regarding the use and disclosure of individually identifiable health information, and in particular with the provisions of the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the regulations promulgated thereunder.

NOW, THEREFORE, in consideration of the mutual promises and covenants hereinafter contained, the Parties agree as follows:

## ARTICLE 1
## DEFINITIONS

Terms used, but not otherwise defined, in this Exhibit shall have the meanings set forth below.

1.1    "HHS Transaction Standard Regulation" means the Code of Federal Regulations ("CFR") at Title 45, Sections 160 and 162.

1.2    "Individual" means the subject of protected health information (PHI) or, if deceased, his or her personal representative.

1.3    "Parties" shall mean the Covered Entity and Business Associate.  (Covered Entity and Business Associate, individually, may be referred to as a "Party".)

1.4    "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.

1.5    "PHI" shall have the same meaning as the term "protected health information" in 45 CFR §164.501, limited to the information created or received by Business Associate from or on behalf of the Covered Entity.

1.6    "Required By Law" shall have the same meaning as "required by law" in 45 CFR §164.501.

1.7    "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

Any other terms used, but not otherwise defined, in this Exhibit shall have the same meaning as those terms in the Privacy Rule.

## ARTICLE 2
## CONFIDENTIALITY

2.1   <u>Obligations and Activities of Business Associate</u>.  Business Associate agrees as follows:

(a)   not to use or further disclose PHI other than as permitted or required by this Agreement or as Required By Law;

(b)   to establish, maintain, and use appropriate safeguards to prevent use or disclosure of the PHI other than as permitted herein;

(c)   to report to Covered Entity any use, access or disclosure of the PHI not provided for by this Agreement, or any misuse of the PHI, including but not limited to systems compromises of which it becomes aware and to mitigate, to the extent practicable, any harmful effect that is known to Business Associate as a result thereof.  Business Associate shall be responsible for any and all costs (including the costs of Covered Entity) associated with mitigating or remedying any violation of this Agreement;

(d)   to enforce and maintain appropriate policies, procedures, and access control mechanisms to ensure that any agent, including a subcontractor, to whom it provides PHI received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information. The access and privileges granted to any such agent shall be the minimum necessary to perform the assigned functions;

(e)   to provide access, at the request of Covered Entity, and in the time and manner reasonable designated by Covered Entity, to PHI in a Designated Record Set (as defined in the Privacy Rule), to Covered Entity or, as directed by Covered Entity, to an Individual in order to meet the requirements under 45 CFR §164.524;

(f)   to make any amendment(s) to PHI in a Designated Record Set that the Covered Entity directs or agrees to pursuant to 45 CFR §164.526 at the request of Covered Entity or an Individual, and in the time and manner reasonably requested by Covered Entity.

(g)   to make internal practices, books, and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity,  or at the request of the Covered Entity to the Secretary, in a time and manner reasonably requested by Covered Entity or designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.

(h)   to document such disclosures of PHI, and information related to such disclosures, as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR §164.528.  Said documentation shall include, but not be limited to, the date of the disclosure, the name and, if known, the address of the recipient of the PHI, a brief description of the PHI disclosed, and the purpose of the disclosure.  Said documentation shall be made available to Covered Entity upon request.

(i)     to provide to Covered Entity or an Individual, in a time and manner reasonably requested by Covered Entity, information collected in accordance with Section 2.1(h) above to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR §164.528.

(j)     to promptly notify Covered Entity of all actual or suspected instances of deliberate unauthorized attempts (both successful and unsuccessful) to access PHI. Such notice shall be made to Covered Entity by telephone as soon as Business Associate becomes aware of the unauthorized attempt, and this telephone notification shall be followed within two (2) calendar days of the discovery of the unauthorized attempt by a written report to Covered Entity from Business Associate. Business Associate shall, at the same time, report to Covered Entity any remedial action taken, or proposed to be taken, with respect to such unauthorized attempt. Covered Entity shall have the discretion to determine whether or not any such remedial action is sufficient, and all such remedial action shall be at Business Associate's expense.

(k)     to maintain and enforce policies, procedures and processes to protect physical access to hardware, software and/or media containing PHI (e.g., hardcopy, tapes, removable media, etc. ) against unauthorized physical access during use, storage, transportation, disposition and /or destruction.

(l)     to ensure that access controls in place to protect PHI and processing resources from unauthorized access are controlled by two-factor identification and authentication: a user ID and a Token, Password or Biometrics.

(m)     to implement, use and monitor its compliance with appropriate technological, administrative and physical safeguards to prevent the use or disclosure of PHI other than as permitted by this Agreement. Business Associate shall provide Covered Entity with evidence of such safeguards upon Covered Entities request. Covered Entity has the right to determine, in its sole discretion, whether such safeguards are appropriate, and to require any additional safeguards it deems necessary.

(n)     In the event that Business Associate is served with legal process (e.g. a subpoena) or request from a governmental agency (e.g. the Secretary) that potentially could require the disclosure of PHI, Business Associate shall provide prompt (i.e., within twenty-four (24) hours) written notice of such legal process (including a copy of the legal process served) to the designated person at the Covered Entity. In addition, Business Associate shall not disclose the PHI without the consent of Covered Entity unless pursuant to a valid and specific court order or to comply with a requirement for review of documents by a governmental regulatory agency under its statutory or regulatory authority to regulate the activities of either party.

(o)     to submit to periodic audits by Covered Entity verifying Business Associate's compliance with appropriate technological, administrative and physical safeguards to prevent the use or disclosure of PHI other than as permitted by this Agreement, as well as compliance with the terms and conditions pursuant to this Agreement and compliance with state and federal laws and regulations. Audit review may be undertaken directly by the Covered Entity or by third parties

engaged by the Covered Entity. Business Associate shall cooperate fully with Covered Entity or any such third party in connection with such audits.

2.2    <u>Disclosures Required By Law</u>.

In the event that Business Associate is required by law to disclose PHI, Business Associate will immediately provide Covered Entity with written notice and provide Covered Entity an opportunity to oppose any request for such PHI or to take whatever action Covered Entity deems appropriate.

2.3    <u>Specific Use and Disclosure Provisions</u>.

(a)    Except as otherwise limited in this Agreement, Business Associate may use PHI only to carry out the legal responsibilities of the Business Associate under this Service Agreement.

(b)    Except as otherwise limited in this Agreement, Business Associate may only disclose PHI (i) as Required By Law, or (ii) in the fulfillment of its obligations under the Service Agreement and provided that Business Associate has first obtained (A) the consent of Covered Entity for such disclosure, (B) reasonable assurances from the person to whom the information is disclosed that the PHI will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and (C) reasonable assurances from the person to whom the information is disclosed that such person will notify the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

2.4    <u>Obligations of Covered Entity</u>.

(a)    Covered Entity shall notify Business Associate of any limitations in its notice of privacy practices of Covered Entity in accordance with 45 CFR §164.520, to the extent that such limitation may affect Business Associate's use or disclosure of PHI.

(b)    Covered Entity shall notify Business Associate of any changes in, or revocation of, permission by an Individual to use or disclose PHI, to the extent that such changes may affect Business Associate's use or disclosures of PHI.

(c)    Covered Entity shall notify Business Associate of any restriction to the use or disclosure of PHI that Covered Entity has agreed to in accordance with 45 CFR §164.522, to the extent that such restriction may affect Business Associate's use or disclosure of PHI.

(d)    For any PHI received by Covered Entity from Business Associate on behalf of a third party or another covered entity, Covered Entity agrees to be bound to the obligations and activities of Business Associate enumerated in Section 2.1 as if and to the same extent Covered Entity was the named Business Associate hereunder.

Navigant Consulting Incorporated                          Agreement Number C06.284
BUSINESS ASSOCIATES AGREEMENT (HIPAA)                              Exhibit G

2.5    <u>Permissible Requests by Covered Entity</u>.

Covered Entity shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by the Covered Entity.

2.6    <u>Policy and Procedure Review</u>.

Upon request, Business Associate shall make available to Covered Entity any and all documentation relevant to the safeguarding of PHI including but not limited to current policies and procedures, operational manuals and/or instructions, and/or employment and/or third party agreements.

## ARTICLE 3
## SECURITY

3.1     Government Healthcare Program Representations.

Business Associate hereby represents and warrants to Covered Entity, its shareholders, members, directors, officers, agents, or employees have not been excluded or served a notice of exclusion or have been served with a notice of proposed exclusion, or have committed any acts which are cause for exclusion, from participation in, or had any sanctions, or civil or criminal penalties imposed under, any federal or state healthcare program, including but not limited to Medicare or Medicaid, or have been convicted, under federal or state law (including without limitation a plea of nolo contendere or participation in a first offender deterred adjudication or other arrangement whereby a judgment of conviction has been withheld), of a criminal offense related to (a) the neglect or abuse of a patient, (b) the delivery of an item or service, including the performance of management or administrative services related to the delivery of an item or service, under a federal or state healthcare program, (c) fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct in connection with the delivery of a healthcare item or service or with respect to any act or omission in any program operated by or financed in whole or in party by any federal, state or local government agency, (d) the unlawful, manufacture, distribution, prescription, or dispensing of a controlled substance, or (e) interference with or obstruction of any investigation into any criminal offense described in (a) through (d) above.  Business Associate further agrees to notify Covered Entity immediately after Business Associate becomes aware that the foregoing representation and warranty may be inaccurate or may be incorrect.

3.2     Security Procedures.

Each Party shall employ security procedures that comply with HIPAA and all other applicable state and federal laws and regulations (collectively, the "Law") and that are commercially reasonable, to ensure that transactions, notices, and other information that are electronically created, communicated, processed, stored, retained or retrieved are authentic, accurate, reliable, complete and confidential.  Moreover, each Party shall, and shall require any agent or subcontractor involved in the electronic exchange of data to:

(a)     require its agents and subcontractors to provide security for all data that is electronically exchanged between Covered Entity and Business Associate;

(b)     provide, utilize, and maintain equipment, software, services and testing necessary to assure the secure and reliable transmission and receipt of data containing PHI;

(c)     maintain and enforce security management policies and procedures and utilize mechanisms and processes to prevent, detect, record, analyze, contain and resolve unauthorized access attempts to PHI or processing resources;

(d)     maintain and enforce policies and guidelines for workstation use that delineate appropriate use of workstations to maximize the security of data containing PHI;

(e)     maintain and enforce policies, procedures and a formal program for periodically reviewing its processing infrastructure for potential security vulnerabilities;

Navigant Consulting Incorporated                                    Agreement Number C06.284
BUSINESS ASSOCIATES AGREEMENT (HIPAA)                               Exhibit G

(f)     implement and maintain, and require its agents and subcontractors to implement and maintain, appropriate and effective administrative, technical and physical safeguards to protect the security, integrity and confidentiality of data electronically exchanged between Business Associate and Covered Entity, including access to data as provided herein.  Each Party and its agents and subcontractors shall keep all security measures current and shall document its security measures implemented in written policies, procedures or guidelines, which it will provide to the other Party upon the other Party's request.

**ARTICLE 4**
**EXCHANGE OF STANDARD TRANSMISSIONS**

4.1    <u>Obligations of the Parties</u>.  Each of the Parties agrees that for the PHI,

(a)    it will not change any definition, data condition or use of a data element or segment as proscribed in the HHS Transaction Standard Regulation.

(b)    it will not add any data elements or segments to the maximum denied data set as proscribed in the HHS Transaction Standard Regulation.

(c)    it will not use any code or data elements that are either marked "not used" in the HHS Standard's implementation specifications or are not in the HHS Transaction Standard's implementation specifications.

(d)    it will not change the meaning or intent of any of the HHS Transaction Standard's implementation specifications.

4.2    <u>Incorporation of Modifications to HHS Transaction Standards</u>.

Each of the Parties agrees and understands that from time-to-time, HHS may modify and set compliance dates for the HHS Transaction Standards.  Each of the Parties agrees to incorporate by reference into this Agreement any such modifications or changes.

4.3    <u>Code Set Retention</u>.

If applicable, both parties understand and agree to keep open code sets being processed or used in this Agreement for at least the current billing period or any appeal period, which ever is longer.

4.4    <u>Business Associate Obligations</u>.

(a)    Business Associate shall not submit duplicate transmissions unless so requested by Covered Entity.

(b)    Business Associate shall only perform those transactions, which are authorized by Covered Entity.  Furthermore, Business Associate assumes all liability for any damage, whether direct or indirect, to the electronic data or to Covered Entity's systems caused by Business Associate's unauthorized use of such transactions.

(c)    Business Associate shall hold Covered Entity harmless from any claim, loss or damage of any kind, whether direct or indirect, whether to person or property, arising out of or related to (1) Business Associate's use or unauthorized disclosure of the electronic data; or (2) Business Associate's submission of data, including but not limited to the submission of incorrect, misleading, incomplete or fraudulent data.

(d)    Business Associate agrees to maintain adequate back-up files to recreate transmissions in the event that such recreations become necessary. Back-up tapes shall be subject to this Agreement to the same extent as original data.

(e)    Business Associate agrees to trace lost or indecipherable transmissions and make reasonable efforts to locate and translate the same. Business Associate shall bear all costs associated with the recreation of incomplete, lost or indecipherable transmissions if such loss is the result of an act or omission of Business Associate.

(f)    Business Associate shall maintain, for seven (7) years, true copies of any source documents from which it produces electronic data.

(g)    Except encounter data furnished by Business Associate to Covered Entity, Business Associate shall not (other than to correct errors) modify any data to which it is granted access under this Agreement or derive new data from such existing data. Any modification of data is to be recorded, and a record of such modification is to be retained by Business Associate for a period of seven (7) years.

(h)    Business Associate shall not disclose security access codes to any third party in any manner without the express written consent of Covered Entity. Business Associate furthermore acknowledges that Covered Entity may change such codes at any time without notice. Business Associate shall assume responsibility for any damages arising from its disclosure of the security access codes or its failure to prevent any third party use of the system without the express written consent of Covered Entity.

(i)    Business Associate shall maintain general liability coverage, including coverage for general commercial liability, for a limit of not less than one million dollars, as well as other coverage as Covered Entity may require to compensate any parties damaged by Business Associate's negligence. Business Associate shall provide evidence of such coverage in the form of a certificate of insurance and agrees to notify Covered Entity and/or HOI immediately of any reduction or cancellation of such coverage.

(j)    Business Associate agrees to conduct testing with Covered Entity to ensure delivery of files that are HIPAA-AS Compliant and to accommodate Covered Entity's specific business requirements.

4.5    Confidential And Proprietary Information

(a)    Proprietary Information

Business Associate acknowledges that it will have access to certain proprietary information used in Covered Entity's business. Covered Entity's proprietary information derives its commercial value from the fact that it is not available to competitors or any third parties, and the disclosure of this information would or could impair Covered Entity's competitive position or otherwise prejudice its ongoing business. Business Associate agrees to treat as confidential, and shall

not use for its own commercial purpose or any other purpose, Covered Entity's proprietary information. Business Associate shall safeguard Covered Entity's proprietary information against disclosure except as may be expressly permitted herein. Such proprietary information includes, but is not limited to, confidential information concerning the business operations or practices of Covered Entity, including specific technology processes or capabilities.

**ARTICLE 5**
**MISCELLANEOUS**

5.1    <u>Indemnification</u>.

Business Associate shall indemnify, defend, and save harmless the State, CDCR, and CDCR's officers, employees and agents, against any and all losses, liabilities, settlements, claims, demands, damages, or deficiencies (including interest) and expenses of any kind (including, but not limited to, attorneys' fees) arising out of or due to a breach of the terms of this Exhibit to the Service Agreement, and arising out of Business Associate's acts or omissions in regard to the terms of this Exhibit to the Service Agreement. The foregoing indemnity is in addition to any other save harmless or indemnification set forth in this entire Agreement.

5.2    <u>Term and Termination</u>.

(a)    Term. The Term of this Agreement shall be effective as of the first date of commencement of services under this entire agreement, and shall terminate when all of the PHI provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy PHI, protections are extended to such information, in accordance with the termination provisions in this Section.

(b)    *Termination for Cause.* Upon a material breach by Business Associate of its obligation hereunder, Covered Entity may (i) terminate this Agreement and the Service Agreement; (ii) permit Business Associate to cure the breach; (iii) report the violation to the Secretary; and/or (iv) require Business Associate to take such other action as Covered Entity may request, at Business Associate's expense.

Covered Entity's remedies under this paragraph shall be cumulative, and the exercise of any remedy shall not preclude the exercise of any other. If Covered Entity elects to terminate the Agreement pursuant to a breach of terms and conditions of this Exhibit, Covered Entity shall be relieved of any further obligations under the entire Agreement, and shall be immediately entitled to a refund of any amounts prepaid from the date of the termination through the end of the payment period, on a pro rata basis.

*The foregoing termination language is in addition to any other termination* language set forth in the entire agreement. Effect of Termination.

(i) Except as provided in paragraph 5.2(c)(ii), upon termination of this Agreement, for any reason, Business Associate shall return or destroy all PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to PHI that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the PHI.

(ii) In the event that Business Associate determines that returning the PHI is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible.

- 12 -

Upon Covered Entity's agreement that return or destruction of PHI is infeasible, Business Associate shall extend the protections of this Agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI.

5.3    Disputes.

HIPAA Appeal Procedures

CDCR has established and shall maintain an appeal procedure in accordance with CDCR Department Operations Manual, Section 22040.16. Business Associate agrees that disputes arising under the terms of this Exhibit shall be resolved in accordance with the following:

1.    Verbal Appeal
      Business Associate and CDCR's Privacy Officer, shall first attempt to resolve the problem by informal discussion. Business Associate agrees that CDCR's Division of Correctional Health Care Services shall be used as a resource in solving potential disputes.

2.    Informal Appeal
      If the issue is not resolved at the verbal appeal level, Business Associate shall file, within thirty (30) working days, an informal written appeal specifying: the issue(s) of dispute, legal authority or other basis for Business Associate's position, supporting evidence, and remedy sought, with the CDCR Chief, Licensing and Information Systems, and provide a photocopy to the CDCR Associate Director, Office of Business Services. The CDCR Chief, Licensing and Information Systems, shall make a determination on the issue and respond in writing within thirty (30) working days of receipt of the informal appeal, indicating the decision reached.

3.    Formal Appeal
      Should Business Associate disagree with the informal appeal decision, Business Associate shall submit, within ten (10) working days after Business Associate's receipt of the decision of the informal appeal, to the CDCR Deputy Director, Division of Correctional Health Care Services, and a photo copy to the CDCR, Associate Director, Office of Business Services, written notification indicating why the informal appeal decision is unacceptable, along with a copy of the original statement of dispute and a copy of CDCR's response. The CDCR Deputy Director, Division of Correctional Health Care Services, or his/her designee may meet with Business Associate to review the issues within twenty (20) working days of the receipt of Business Associate's notification and shall provide Business Associate with written notification of the decision within forty-five (45) working days from the receipt of the formal appeal.

The foregoing dispute process is solely for the purpose of disputes arising from the terms and conditions of this Exhibit. Disputes in relation to the scope of work and other terms and conditions shall be in accordance with any other dispute language set forth in the entire Agreement.

Navigant Consulting Incorporated                                    Agreement Number C06.284
BUSINESS ASSOCIATES AGREEMENT (HIPAA)                                    Exhibit G

5.4    Injunctive Relief.

Notwithstanding any rights or remedies provided for in Section 5.3, Covered Entity retains all rights to seek injunctive relief to prevent the unauthorized use of disclosure of PHI by Business Associate or any agent, contractor or third party that received PHI from *Business Associate*.

5.5    Regulatory References.

A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.

5.6    Amendment.

The Parties agree to take such action as is necessary to amend this Agreement from time to time to the extent necessary for Covered Entity to comply with the requirements of HIPAA and its regulations. All amendments to this Exhibit shall be in writing and signed by both parties through a formal amendment to the entire agreement.

5.7    Survival.

The respective rights and obligations of Business Associate and Covered Entity under Sections 4.5, 5.1 and 5.2(c) of this Agreement shall survive the termination of this Agreement.

5.8    Limitation of Damages.

Other than liabilities under Section 5.1, neither party shall be liable to the other for any special, incidental, exemplary, punitive or consequential damages arising from or as a result of any delay, omission, or error in the electronic transmission or receipt of any information pursuant to this Agreement, even if the other Party has been advised of the possibility of such damages.

5.9    Interpretation.

Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

5.10    Third Party Beneficiary

Unless otherwise set forth herein, nothing contained herein is intended, nor shall it be construed, to create rights running of the benefit of third parties.

5.11    Notices
Any HIPAA related notice required hereunder shall be deemed to be sufficient if mailed to the parties at the addresses below. In order to avoid unreasonable delay in the provision of the services to be rendered pursuant to this Agreement, Business Associate and Covered Entity shall each designate a specific "HIPAA" representative(s) for the purpose of communication between the parties. Such representative(s) may be changed upon written notice to the other party.

- 14 -

Navigant Consulting Incorporated                              Agreement Number C06.284
BUSINESS ASSOCIATES AGREEMENT (HIPAA)                              Exhibit G

Business Associate:

Ellen Waxenberg, Director
Navigant Consulting Incorporated
Open Market Street
Spear Tower, Suite 1200
San Francisco, CA 94105

Telephone:  (310) 480-5750
Facsimile:    (415) 356-4005

Covered Entity:

California Department of Corrections and Rehabilitation
Privacy Officer
HIPAA Compliance Unit
Division of Correctional Health Care Services
P.O. Box 942883
Sacramento, CA  94283-0001

Telephone:  (916) 327-1842
Facsimile:  (916) 327-0545