1

| | |
|---|---|
| 1 | SACRAMENTO, CALIFORNIA |
| 2 | TUESDAY, JUNE 16TH, 2009 – 1:30 P.M. |
| 3 | ---o0o--- |
| 4 | THE CLERK:  Please, remain seated. |
| 5 | Court is now in session. |
| 6 | THE COURT:  Please, be seated, folks. |
| 7 | Good afternoon. |
| 8 | THE CLERK:  Calling Civil Case S-90-520, Coleman, et |
| 9 | al., v. Schwarzenegger, et al. |
| 10 | THE COURT:  Counsel, please approach the podium, |
| 11 | state your appearance for the record. |
| 12 | MR. BIEN:  Good afternoon, Your Honor.  Michael Bien |
| 13 | on behalf of the Coleman plaintiff class. |
| 14 | MS. VOROUS:  Good afternoon, Your Honor.  Debbie |
| 15 | Vorous on behalf of the defendants. |
| 16 | MR. STEELE:  Good afternoon, Your Honor.  Jeff Steele |
| 17 | also on behalf of the defendants. |
| 18 | THE COURT:  Miss Vorous, you're essentially going to |
| 19 | be speaking for defendants? |
| 20 | MS. VOROUS:  Yes, that's correct. |
| 21 | THE COURT:  All right. |
| 22 | You may retire, sir. |
| 23 | I suppose the first thing I ought to do is welcome |
| 24 | you to the ongoing hearings in this matter.  I leave it at |
| 25 | that. |

2

1          Actually, counsel -- all counsel can retire for a

2     moment.  I want to talk about some things that we're doing

3     and that we're not doing this afternoon.  I have some

4     questions that I want to ask and go from there.

5          This matter is on for -- So that you all understand

6     how serious this is, I've got written remarks to make sure

7     that important points are covered.

8          This matter is on for consideration of approval of

9     three separate matters related to bed planning:  defendants'

10    activation schedule for projects that have long been

11    scheduled -- that have already been ordered by this Court,

12    some of them long ago; defendants' short-term and

13    intermediate plans for meeting the current needs for mental

14    health beds; and defendants' long-range plan.

15         The Court has received and read all of the papers,

16    including the defendants' responses to the plaintiffs'

17    comments filed last evening.

18         To say that I've read them, and I have, is different

19    than saying that I have fully digested all of them.  These

20    are very complicated matters, which all I can do is do the

21    best that I can.

22         Plaintiffs, have you had a chance to review the

23    defendants' responses?

24         MR. BIEN:  Yes, Your Honor.

25         THE COURT:  All right.  Good.

3

1      Before we turn to the specific plans and schedules, I

2  want to discuss the role of the modified needs assessment and

3  what effect it will have on this hearing.

4      The Court is aware that the assessment ordered by

5  this Court in March is complete and has resulted in, not

6  surprisingly, identification of additional unmet need for

7  hospital beds.

8      The Court is also aware that the Special Master is

9  working with defendants to extend this assessment to other

10  prison institutions.

11      The Court is encouraged by the fact that the

12  Department of Mental Health has participated as well as the

13  plaintiffs.

14      The Court intends to assess each of the proposals

15  before the Court with reference to the current needs as

16  identified in the Navigant numbers, not with reference to the

17  additional unmet needs now being reported.

18      After the Court goes through Defendants' three

19  proposals, we will have to discuss where we go from here with

20  respect to the modified needs assessment.

21      I do want to say that the Court wants to acknowledge

22  the very solid effort made by defendants with the guidance of

23  the Special Master at the meetings immediately following this

24  Court's last hearing and weekly thereafter for several weeks.

25      Significant progress has been made.  The parties

4

1    have, as best I can tell, and the Special Master assures me,

2    have worked in good faith.  While there remains a difference

3    between what is planned and what is actually needed today,

4    defendants' short-term and intermediate plans will, when

5    fully activated, significantly reduce the difference in most

6    categories of beds.

7         I want to say to plaintiffs:  Progress is important.

8    Having abstract plans is not nearly as important.  Hopes are

9    not nearly as important.  Getting things done is what

10   matters.

11        There are people out there who are not being treated.

12   And what we can do to get them treated, get them beds, get

13   them service, sometimes is more important than perfectly

14   executed plans -- perfectly articulated plans which are not

15   going to be executed because they can't be.

16        For purposes of this hearing, therefore, the Court

17   accepts the decision made by defendants in their meetings

18   with the Special Master to focus their short-term and

19   intermediate plans on meeting current needs.

20        I just think that was the right thing to do not to

21   pick a later target date for those plans.

22        But having said that, defendants remain under a

23   continuing obligation to meet all of the needs of the

24   plaintiff class and any approval of plans today is not a

25   finding by this Court that defendants have met those

5

1    obligations, nor is it approval of ongoing bed shortages.

2         I don't know how to say this so that people hear me,

3    but it is an approval of the steps that defendants represent

4    that they are able to take at this time.  No more.  No less.

5    There is a continuing obligation that the defendants must

6    meet.

7         As I've already said, I've read all of the papers

8    filed by the parties in connection with this hearing.  I do

9    not need further argument on many of the issues raised.

10   There are a few serious matters I do need to discuss with the

11   parties, and this hearing will be focused on those issues as

12   I've identified them.

13        I want to start with Activation Schedules For

14   Court-Ordered Projects.

15        I'm going to take a deep breath because while the

16   schedules proposed by the parties -- by the defendants are

17   encouraging, I must remind the defendants that those are

18   orders of the Court which must be obeyed.  Not hoped for.

19   Not prayed for.  Obeyed.

20        I'm sorry.  I was about to -- All right.

21        Defendants, relative to the 13 projects already

22   ordered, have presented detailed activation schedules for

23   each of those projects.

24        There are two main comments from plaintiffs.  First,

25   the time frame for some of the projects, and second, funding.

6

1      The Court recognizes the urgent need that continues

2  to exist.  The emergency.

3      Defendants have presented time frames, that if

4  approved, will have the force of a court order.  And I'm not

5  kidding.  The Court understands that the Special Master gave

6  defendants a clear directive to develop schedules that were

7  reasonable and could be met.  On that basis the Court will

8  approve the activation schedules proposed by defendants.

9      I want to say that to the extent possible, and it may

10 not be possible, but to the extent possible that the

11 defendants can accelerate any of those projects I instruct

12 you to do so.

13     The critical issue in this part of the hearing is the

14 funding source for several of these court-ordered projects.

15 I want to start by saying the Court will not tolerate further

16 delays.  The time to move forward is past.  I have written

17 "it is now."  It is not, it is past.

18     Defendants have identified two separate funding

19 sources for the court-ordered projects, General Funds and the

20 AB900 process.

21     The orders for these projects have been in existence,

22 some of them, for years.  Defendants shall report to the

23 Special Master on a monthly basis all action or actions taken

24 on each project and whether each project remains on schedule

25 or has been or can be accelerated.  Defendants' report shall

7

1    be in the form of updates to the existing activation

2    schedules.

3        I'm assuming that there will be no slippage, but for

4    any project that has fallen off the promised time frame,

5    defendants shall equally describe with specificity the reason

6    or reasons for the departure and shall identify individuals

7    or agencies whose acts or failure to act contributed to not

8    meeting the deadline.

9        If necessary, the Court will consider -- No, I won't.

10   Well, I'll consider joining additional parties in this action

11   as necessary.  We're going to get this done, and I'm going to

12   want to know who is holding it up, if anybody.

13       The Court will set this matter for status conference

14   in three months at which time the Court anticipates all the

15   necessary funding will have been secured and the projects

16   will be moving forward.

17       Second issue is Short-term and Intermediate Plan.

18       The plan presented to the Court, if implemented,

19   meets the current need identified in the Navigant Fall 2008

20   projections for intermediate care hospital beds, including

21   intermediate care hospital beds for high security inmates and

22   mental health crisis beds.

23       The plan comes close to meeting the current need

24   identified in those projections for actual hospital beds.

25   Given the defendants' representation, the Court assumes that

8

1   the identified projects are achievable on the timelines

2   presented.

3       The plaintiffs are going to say:  Judge, you've got

4   no right to assume that.  They've never made it yet.

5       This is a new day.  This is a new day.

6       I will accept the representation of the defense

7   counsel in that regard, but I'm going to ask counsel now to

8   make that specific representation or to describe any

9   potential impediments, other than what are already described

10  in the plan, to completion of the projects identified.

11      Come forward, Miss Vorous, and tell me.  Is it

12  realistic, do you really think you can do it, are there any

13  impediments I don't know about?

14      MS. VOROUS:  Your Honor, the only potential

15  impediments that may impact the schedule would relate to the

16  four CDCR projects that involve the creation of confidential

17  individual and group treatment space.  To the extent that

18  there are issues that may come up with that, such as delays

19  by licensing, fire marshal approval, those sorts of things,

20  then there could be a potential delay in the schedule.

21      At this point all of the funding -- CDCR believes all

22  the funding is available for those projects and are committed

23  to meet the timeline.  But with respect to any other

24  potential impediments, this could be one that could create

25  some delay with respect to those four facilities.

9

1          THE COURT:  You will timely notify the Special Master

2     of any impediment such as the ones that you have just

3     described.

4          The Special Master is directed to immediately contact

5     the Court, and we will do whatever is necessary.  If you have

6     a suggestion, please file it.

7          By the way, when I say "inform the Special Master,"

8     you're obligated, of course you understand, to inform the

9     plaintiffs as well.

10          If there are such impediments and you have a proposal

11     relative to solving them, let me know at the time that you

12     discover the impediment.  Plaintiffs are invited to join in

13     prompt responses as well.

14          I'm not going to wait for you folks.  I think we

15     have -- You know, I don't know how often I've said we have an

16     emergency.  And I don't know how often I feel like the only

17     person who hears me saying that is the Special Master.

18          All right.  I'm sorry.  I didn't mean that.  Forget

19     it.

20          You may retire, ma'am.  Thank you.

21          MS. VOROUS:  Thank you.

22          THE COURT:  Regarding the C5 and C6 units at Salinas

23     Valley, it appears that these units are to be identical to D5

24     and D6 units at the same prison.

25          That is correct, is that not, Miss Vorous?

10

1          MS. VOROUS:  Yes, it is correct.

2          THE COURT:  The D5 and D6 units have required

3    additional construction since they opened which will be

4    completed hopefully -- not hopefully -- will be completed in

5    July 2009 or I want to know why.

6          Plaintiffs request that the C5 and C6 units be

7    completed on the scheduled proposed by defendants so that

8    upon completion they are just like the D5 and D6 will be in

9    July of this year without the need for additional

10   construction.

11         I understand that to be the defendants' plan.  Am I

12   correct?

13         MS. VOROUS:  Yes.  The timeline includes

14   construction.

15         THE COURT:  All right.  Good.

16         In their responses to plaintiffs' comments,

17   defendants report that just yesterday the Joint Legislative

18   Conference committee on the budget approved their request for

19   funding for DMH clinical staff for the inpatient beds they

20   propose to add and that the request is now before both houses

21   of the California Legislature.

22         Frankly, the Court is reluctant to approve a plan

23   that has the potential funding and staffing impediments

24   identified by defendants, but at least one of those

25   impediments was removed yesterday.

1          Given the emergency that exists, defendants must move

2     forward with the proposed project and the Court will

3     therefore approve the project described in this plan.

4          The Court expects defendants to continue to take all

5     steps necessary to secure the necessary funding and to

6     resolve the staffing allocation issues.  To that end,

7     defendants shall complete a staffing plan by the end of

8     August.  The plan shall be developed under guidance of the

9     Special Master following the model used to develop the plans

10    now before the Court.

11          Defendants include a proposal to train custody staff

12    at certain institutions.  Plaintiffs object to the specific

13    plan identified by the defendants.  Plaintiffs propose

14    instead that defendants train custody staff using the new DMH

15    Therapeutic Strategies and Intervention training.

16          Defendants represent that they are working with a

17    Special Master to replace the training module plaintiffs

18    object to, and they are reviewing the DMH model and

19    considering using it for all custody and mental health staff

20    assigned to all levels of care above CCCMS.  That's with the

21    exception of the EOP programs in Reception Centers.

22          The Court approves the concept of training custody

23    staff and will leave the final determination of the

24    appropriate plan to do so to the Special Master.

25          Once again, the defendants shall develop the training

12

1    plan under the guidance of the Special Master following the

2    module used to develop the plan before this Court, and it

3    shall be completed in 90 days.  The Court approves

4    defendants' plan for training clinical staff at the units at

5    Salinas Valley.

6          Finally, the defendants have acknowledged this plan

7    does not meet their current need for EOP beds or for

8    psychiatric services unit beds.  Defendants and plaintiffs

9    disagree over the correct way to incorporate the EOP program

10   in Reception Centers into the calculation of need.

11         The Court will not resolve that question at this

12   time, nor will the Court consider plaintiffs' requests for

13   modifications of the EOP program in Reception Centers.

14         For purposes of this hearing, it is sufficient to say

15   that the Court approves the projects defendants have

16   identified to increase their EOP capacity and that the

17   Court's approval of these projects in no way signifies

18   defendants' full compliance.

19         In that regard, there is this question about

20   Coalinga.  And I accept the DMH -- I accept?  That's much too

21   strong.  I understand that DMH has its reasons concerning the

22   beds in Coalinga, but the answer to that is not to stand

23   there frustrated.  It is to say that DMH has those reasons,

24   let it move people into those beds from their other

25   institutions freeing up beds for the Coleman class.  And if

13

1    that can't be done, I want to know why.

2        I'm sorry.  I didn't mean to speak like that.  If I

3    sound terribly frustrated, it is because I am.

4        I want to talk about the long-term plan.  I don't

5    understand what is going on.  The long-term plan -- I'm

6    sorry.  I'm about to deviate from the writing, and that is

7    probably not a good thing to do.

8        The long-term plan is, to some significant degree,

9    dependent upon the MOU being worked out by the Receiver and

10   the defendants.  The Receiver tells me, best he knows, there

11   is a completed MOU which has not been signed.

12       Miss Vorous, come forward.

13       I want to know whether you know why.

14       MS. VOROUS:  Your Honor, I do not know why the MOU

15   has not been signed at this point in time.  I do know that

16   there is not an agreement.  And with respect to conversations

17   that have occurred between myself and my clients, I'm not at

18   liberty to discuss those based on attorney-client privilege,

19   but I can honestly say to you I do not understand why it has

20   not been signed at this point in time.

21       THE COURT:  This is intolerable.

22       The defendants shall report in 15 days whether the

23   MOU has been signed; if it has not, the reasons that it has

24   not been signed.

25       And Miss Vorous, I'm not threatening anybody, I

14

1  promise you, but I want to know why it has not been signed,

2  who is responsible for not signing it.

3          I mean, if it is because there is no agreement as to

4  the content, that's one thing.  My understanding is that's

5  not the -- I'm sorry.  My understanding is that is not the

6  problem, and I don't know what the problem is.  The Special

7  Master, wherever he is, the Special Master doesn't know what

8  the reason is.  The Receiver doesn't know what the reason is.

9          I can't approve a plan where there's no money,

10  there's no possibility of money until somebody does

11  something, and all that needs to be done is to sign the MOU

12  and get on with it.

13          All right.  You may retire, ma'am.

14          I obviously cannot approve the long-term plan so long

15  as those contingencies remain.

16          Defendants remain under an obligation to this Court

17  to plan to meet the long-range needs of the plaintiffs.  The

18  matter will be set for further hearing in three months on the

19  status of defendants' long-term plan.

20          And ma'am, you tell your clients that if they're not

21  going to sign that MOU, they better come in three months from

22  now with real money on the table.  Because otherwise I'm

23  going to start eating into their budget in a dramatic kind of

24  way.

25          Take that back.  I'm not threatening anything.  I'm

15

1   not threatening anything.

2           MS. VOROUS:  I understand.

3           THE COURT:  I just want to see progress, real honest

4   to God progress.

5           There's also this -- Once again, out of the blue, has

6   come DMH's divorce from CDCR.  I don't know why.  I don't

7   know what's going on.  I don't care.

8           It isn't going to happen without this Court's

9   approval.  And it won't happen unless this Court is

10  absolutely satisfied that the people in the class will not be

11  disserved by that divorce.

12          I mean, if that isn't typical of what's gone on in

13  this case.  "Yes, we are."  "No, we're not."  "Yes, we are."

14          Plaintiffs request that defendants be required to

15  extend the contract with Navigant Consulting.  In their

16  response, defendants indicate they are exploring contracting

17  options to pursue after the Navigant contract expires at the

18  end of this year.

19          I must say, in this Court's view, the Navigant

20  contract has been a significant component of the development

21  of useful planning tools.

22          Defendants do not yet have a long-range Bed Plan, and

23  even when the projects approved today are completed, they are

24  not -- it will not have enough beds to meet present demand,

25  particularly for the EOP level of care.

16

1          It's the Court's view it is simply too soon for

2    defendants to stop working with Navigant.  The Court will

3    give defendants ten days to show cause why they should not be

4    ordered to renew the contract with Navigant for another three

5    years.

6          I said at the start of this hearing that the Special

7    Master has informed me that the modified needs assessment

8    ordered in March is partially completed.  As a result of that

9    assessment, as I understand it, 561 inmates have been

10   referred to the DMH inpatient care.  The assessment, which so

11   far has involved 12 prisons, is continuing as to those

12   prisons.

13         In addition, defendants and the Special Master agree

14   that the assessment should be conducted at all of the

15   remaining non-desert CDCR institutions.

16         The modified need assessment demonstrates clearly

17   that there are a substantial number of Coleman class members

18   over and above those identified in the Navigant projections

19   who are in need of hospital care now -- right now.

20         The projects this Court has just approved include

21   conversion of hospital beds to provide a full compliment of

22   256 intermediate care beds at Atascadero State Hospital to

23   Coleman class members.

24         This Court approves that plan with the understanding

25   that the DMH defendants have committed to admitting Coleman

17

1    class members to those beds at a rate of not less than ten

2    per week until all those beds are full, and that by the end

3    of October of 2009 all 256 beds will be filled with members

4    of the Coleman class.

5            To that end, defendants have submitted a proposed

6    plan for expediting admissions to DMH inpatient facilities.

7    Defendants shall finalize this plan under the guidance of the

8    Special Master following the model used to develop the plan

9    before this Court, and it shall be completed in 30 days.  The

10   Court expects the agreed upon schedule to be followed, and

11   where possible, if possible, accelerate it.

12           Defendants have agreed to provide the Special Master

13   with bimonthly reports on the placement of the individuals

14   whose need for inpatient care is identified, and that is part

15   of this Court's order.

16           Defendant shall work with the Special Master

17   forthwith to ensure that the reports contain all of the

18   information that the Special Master needs to ensure

19   compliance with the timetables set in this order.

20           I have not given the parties an opportunity to

21   comment because I don't know that any comments are useful,

22   but I may be wrong.

23           We will take a ten minute recess or so to give the

24   parties a chance to think — that would be different — and if

25   they feel some need to comment on the orders of the Court, I

18

1   doubt very much you're going to get me to change anything,

2   but at least you might help me think about what needs to be

3   done.

4           We'll take a ten minute -- Ten minutes all right?

5           We will take a ten minute recess.

6           (Off the record at 02:04 PM.)

7           (On the record at 02:15 PM.)

8           THE CLERK:  Please, remain seated.

9           Court is now in session.

10          THE COURT:  Please, be seated everyone.

11          Plaintiffs, do you have any comments?

12          I want to make clear before you start, we're not

13   going to deal with all the other things besides the Bed Plan

14   that you introduced into your comments.

15          If you think that those need Court attention, bring a

16   separate motion or at least talk to the Special Master and

17   then decide.

18          Yes.

19          MR. BIEN:  Thank you, Your Honor.

20          First, we want to say we appreciate and acknowledge

21   the tremendous work the Special Master and his team have done

22   since the last hearing with the defendants in moving forward

23   on this.  A tremendous amount of time and effort has gone

24   into this, and we're very well aware of that.

25          We also appreciate the difficult decisions the Court

19

1    faces in the hearing -- this hearing and all the prior

2    hearings on these issues and the difficult things that you

3    are balancing at this time.

4         We're not taking issue with any of that.  I'm not

5    going to argue about any of them.  I would like clarification

6    concerning one or two of the points you made today.

7         One concerns the long-term Bed Plan, and here we are

8    without a decision from the State.  The Court suggested a

9    report in 15 days about --

10        THE COURT:  Whether it is signed; if it isn't signed,

11   why it isn't signed.  And ma'am, I want to make clear to you

12   that the attorney-client privilege won't lie because I'll

13   order your clients in and order them to tell me why.

14        Go ahead.

15        MR. BIEN:  That was -- What you just said, Your

16   Honor, clarifies it.  I think there -- if there is not an MOU

17   in 15 days, there should be a hearing so that we can

18   understand is this going to happen or not.

19        THE COURT:  The point is if it isn't signed in 15

20   days, you're going to have to find some other way of

21   financing the long-term plan.

22        I cannot -- Sorry.  I will not tolerate further delay

23   based upon goodness knows what.

24        Go ahead.

25        MR. BIEN:  The other issue has to do with the Court's

1   orders relative to the Department of Mental Health and access

2   to beds at Atascadero and Coalinga.

3          The Court, I think, made reference to the fact

4   Coalinga has a lot of space.  And it's the one place in the

5   system that has a lot of room.  And I think there was a

6   suggestion in what you said that if there's a need for

7   additional -- if there aren't enough beds at Atascadero for

8   the Coleman class members that are referred, that DMH should

9   be ordered to open additional beds at Coalinga.

10          I think that needs to be, if the Court would consider

11   that, it should be part of the Court's order.

12          THE COURT:  I think that that's the right thing to

13   do.  There may be reasons that can't be done.  If so, I want

14   to know about it.  Otherwise, I expect it to be done.

15          Whether I put that into an order now or await a

16   response, I'm going to have to think about it.  But I want to

17   tell you what the problem is, ma'am.  When I await a

18   response, that's just more delay.  And we've long passed the

19   time where the Court will tolerate delay because people are

20   trying to learn how to tie their shoes.

21          MR. BIEN:  Your Honor, those are the only comments we

22   would like to add.

23          THE COURT:  Thank you, sir.

24          Ma'am, anything you would like to say on behalf of

25   your clients?

21

1          MS. VOROUS:  Other than to thank Your Honor and the

2      Special Master --

3          THE COURT:  I'm sorry.  I know nobody believes it.  I

4      can't hear.

5          MS. VOROUS:  I apologize.

6          THE COURT:  That's all right.

7          MS. VOROUS:  Other than to thank Your Honor and the

8      Special Master and the Special Master's team for all the

9      effort and time that has been put in over the last six

10     months, we don't have any further comments on the Court's

11     orders.

12         THE COURT:  Thank you very much.

13         I join both the parties in commending the Special

14     Master and his staff on the inordinately hard work that

15     they've done for significant progress towards making a Bed

16     Plan that actually may happen.

17         Court will stand in recess.

18         Thank you, gentlemen and ladies.

19         (Off the record at 02:23 PM.)

20                        ---o0o---

21

22

23

24

25

```
1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE EASTERN DISTRICT OF CALIFORNIA

3                         ---O0O---

4    BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

5

6   RALPH COLEMAN, et al.,

7           Plaintiffs,

8   Vs.                              CASE NO. CIV. S-90-0520 LKK

9   ARNOLD SCHWARZENEGGER,
    et al.,
10

11          Defendants.

12   _____/

13

14

15

16                        ---o0o---

17

18                    REPORTER'S TRANSCRIPT

19                  TUESDAY, JUNE 16TH, 2009

20        RE:  STATUS HEARING ON DEFENDANTS' PROGRESS ON

21                  COURT-ORDERED PROJECTS

22

23                        ---o0o---

24

25   Reported by:            CATHERINE E.F. BODENE,
                             CSR. No. 6926
```

```
 1                          APPEARANCES

 2                          ---o0o---

 3

 4    FOR THE PLAINTIFF:

 5            ROSEN, BIEN & GALVAN, LLP
              315 MONTGOMERY STREET, TENTH FLOOR
 6            SAN FRANCISCO, CALIFORNIA  94104

 7            BY:  MICHAEL BIEN,
                   ATTORNEY AT LAW
 8

 9

10

11

12    FOR THE DEFENDANTS:

13             STATE OF CALIFORNIA, DEPT. OF JUSTICE
               OFFICE OF THE ATTORNEY GENERAL
14             1300 I STREET
               SACRAMENTO, CALIFORNIA  95814
15
               BY:  DEBBIE J. VOROUS,
16                  DEPUTY ATTORNEY GENERAL

17                   AND

18             JEFF STEELE,
               DEPUTY ATTORNEY GENERAL
19

20

21

22

23                          ---o0o---

24

25
```

1                    REPORTER'S CERTIFICATE

2                          ---o0o---

3
     STATE OF CALIFORNIA  )
4    COUNTY OF SACRAMENTO )

5


6
            I certify that the foregoing is a correct transcript
7
     from the record of proceedings in the above-entitled matter.
8

9

10                    IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California on this 22ND day of
11   JUNE, 2009.

12

13

14    /S/_Catherine E.F. Bodene_____
             CATHERINE E.F. BODENE, CSR NO. 6926
15           Official United States District Court Reporter

16

17

18

19

20

21

22

23

24

25