PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
ALISON HARDY, Bar No. 135966
SARA NORMAN, Bar No. 189536
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 882-8200

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARIA V. MORRIS, Bar No. 223903
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants | No.: Civ S 90-0520 LKK-JFM P <br><br> **THREE-JUDGE COURT** |
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> vs. <br><br> Defendants | No. C01-1351 TEH <br><br> **THREE-JUDGE COURT** <br><br> **REQUEST FOR JUDICIAL NOTICE; DECLARATION OF REBEKAH EVENSON** |

Plaintiffs seek judicial notice of the fact that defendants made proposals to reduce the prison population as set forth in the "CDCR Prison Population Reduction Package," a true and correct copy of which is attached hereto as Exhibit 1 to the Evenson Declaration. The "CDCR Prison Population Reduction Package" explains Defendant Governor Schwarzenegger's proposal to reduce the average daily prison population by 27,300 inmates within one year. During trial, defendants contended that any prison population reduction would adversely impact public safety. The fact that the Governor now makes these population reduction proposals is relevant to two questions central to these proceedings: 1) whether it is possible for the State to safely reduce the prison population, and 2) the appropriate timeframe for a prison population reduction.

Additionally, in its tentative ruling the Court has suggested that its final ruling would order the State to develop a plan to reduce the population to between 120% and 145% of design capacity. Currently, the population in CDCR prisons (excluding camps and community correction centers) is just under 150,000, and the design capacity is approximately 80,000. A reduction to 120%-150% of design capacity means a reduction of between 34-54,000 prisoners. The Governor's proposal would, in one year, comprise half of the maximum court-ordered reduction.

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of facts that are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

The fact for which plaintiffs seek judicial notice is that the Governor made the prison population reduction proposals as set forth in the "CDCR Prison Population Reduction Package." The "CDCR Prison Population Reduction Package" is a matter of public record. It is a document produced by the California Department of Corrections and Rehabilitation, issued on CDCR letterhead, and distributed to the public. Evenson Decl., ¶2. Courts regularly take judicial notice of the existence of "matters of public record, which are not subject to reasonable

dispute." *Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d 1121, 1145 (C.D. Cal. 2006); *see also Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075 (E.D. Cal. 2004)(court may take judicial notice of existence of matters of public record); *W. Fed. Sav. v. Heflin*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents from a county public record); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) (recognizing that court make take judicial notice of public documents).

To be clear, plaintiffs do *not* seek judicial notice of the truth of the facts asserted in the "CDCR Prison Population Reduction Package" (e.g., the truth of the assertions that the proposed population reduction measures would have the impacts identified in the document), nor do plaintiffs seek to assert by this Request that the proposals were actually enacted. The only fact for which plaintiff seeks judicial notice is that the Governor made the prison population reduction proposals as set forth in the "CDCR Prison Population Reduction Package." This fact is relevant to the proceedings in this matter.

In making its determination in this matter, this Court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A). The Court heard more than nine days of testimony from plaintiffs' experts, defendants and their experts, and defendant-intervenors and their experts about whether there are measures by which the State can safely reduce its prison population. Defendants contended that a reduction in the prison population would have an adverse impact on public safety.

Defendants also repeatedly affirmed that public safety is of paramount concern to the Governor, and conceded that the Schwarzenegger administration would not propose or make policy changes that would endanger public safety. *See, e.g.*, Gore Dep. at 58:18-59:12; 105:13-21; 129:12-18 (Governor's deputy cabinet secretary affirms that public safety is of paramount concern to the Governor and the Governor would not make legislative proposals unless they were consistent with public safety); Cate at RT 1685:3-11 (Secretary of CDCR affirms that Governor's legislative proposals would not endanger public safety); Kernan at RT 1921:14-1922:1 (Undersecretary of CDCR affirms same). Since the administration would not

propose measures that are contrary to public safety, the fact that the Governor has proposed measures to reduce the prison population by more than 27,000 inmates is relevant to the question whether there are methods by which the State can safely reduce the prison population. And since the Governor aims to implement his proposals in one year, the proposals are relevant to the appropriate timeframe for a prison population reduction.

On January 6, 2009, this Court issued an order requiring the State to advise the Court and the parties whether the Governor's budget proposal contains "any provisions relating to the release of prisoners." *Plata* Docket No. 1985. Defendants filed their responsive papers on January 16, 2009. Plaintiffs filed a Request for Judicial Notice on January 23, 2009 requesting, among other things, that the Court take judicial notice of the Governor's 2009-2010 budget, which proposed to reduce the prison population by providing enhanced credit earning for inmates, and adjusting the threshold value for property crimes. *Plata* Docket No. 2027. Plaintiffs filed a subsequent Request for Judicial Notice on June 8, 2009, requesting that the Court take judicial notice of additional revisions to the Governor's 2009-10 budget proposals. *Plata* Docket No. 2174.

The "CDCR Prison Population Reduction Package," at issue here, is a further iteration of the Governor's proposals to reduce the prison population. It states that "The Administration has proposed a budget reduction package designed to reduce Average Daily Population (ADP) by approximately 27,000, which is estimated to save up to $1.2 billion if fully implemented in the 2009-10 fiscal year." The document then goes on to "lay[] out the estimated prison population reduction numbers for FY 2009-10 involved with each proposal." It proposes five measures to reduce the prison population:

- Alternative custody options for lower-risk offenders, including allowing certain offenders to serve their sentence under house arrest. This proposal is estimated to reduce the average daily prison population by 6,300 inmates.
- Placing non-serious, non-sex, low-risk parolees on a "banked" caseload, and placing parolees who commit certain parole violations on GPS supervision

instead of returning them to prison. This proposal is estimated to reduce the prison population by 5,300 inmates.

- Commuting the sentences of certain deportable non-citizens. This proposal is estimated to reduce the prison population by 8,500 inmates.

- Converting certain felonies to misdemeanors. This proposal is estimated to reduce the prison population by 5,600 inmates.

- Granting enhanced good time credits to prisoners who participate in rehabilitative programs. This proposal is estimated to reduce the prison population by 1,600 inmates.

While it is true that the Governor's legislative proposals have not yet been enacted by the Legislature, this does not diminish their relevance to these proceedings. Plaintiffs do not seek judicial notice of the proposals for purpose of demonstrating that they are *law*, or for the truth of any matters asserted therein, only for the purpose of demonstrating that the proposals were made formally by the Governor.[1] That fact is one capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Accordingly, the Request for Judicial Notice should be granted.

Dated: July 29, 2009                    Respectfully submitted,

                                        */s/ Rebekah Evenson*
                                        Rebekah Evenson
                                        Prison Law Office
                                        Plaintiffs Counsel

---

[1] The proposal laid out in Exhibit 1 was not included in the budget package passed by the Legislature. However, the Governor is implementing at least some of the proposals without legislative approval (*see* Evenson Decl., Exh. 2 at 14), and it appears that the Legislature intends to take up consideration of the Governor's population reduction procedures at a later date. *See Id*; LA Time*s, Vote on prison plan in California budget is delayed* (July 23, 2009), available at *http://www.latimes.com/news/local/la-me-budget23-2009jul23,0,7093912.story* (noting that "The controversial proposal to cut the inmate population, which is backed by a police chiefs association, is set aside until next month in an effort to pass the rest of the budget deal") (site last visited July 29, 2009).

-5-
REQUEST FOR JUDICIAL NOTICE, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

# DECLARATION OF REBEKAH EVENSON

I, Rebekah B. Evenson declare as follows:

1. I am an attorney admitted to practice before this Court and am one of the counsel for the plaintiff class in the above-entitled action.

2. Attached hereto as Exhibit 1 is a true and correct copy of the "CDCR Prison Population reduction Package." On July 29, 2009, I spoke by telephone with CDCR Press Secretary Seth Unger, who confirmed that this is a document issued by CDCR to the public in connection with a CDCR press briefing to discuss the Governor's budget proposals. The document was also provided by CDCR to members of the Legislature.

3. Attached hereto as Exhibit 2 is a true and correct copy of an excerpt from the 2009-10 State Budget (dated July 28, 2009), which reflects the budget passed by the legislature and signed by the Governor. The excerpt lays out a $182.1 million reduction to the CDCR budget based upon selective commutation and deportation of undocumented persons. The full 2009-10 State Budget is available online at http://www.dof.ca.gov/ (site last visited July 29, 2009).

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 29, 2009 at Berkeley, California.

*/s/ Rebekah Evenson*
Rebekah Evenson

EXHIBIT 1


## CDCR Prison Population Reduction Package
*By the Numbers*

The Administration has proposed a budget reduction package designed to reduce Average Daily Population (ADP) by approximately **27,300**, which is estimated to save up to **$1.2 billion** if fully implemented in the 2009-10 fiscal year. This document lays out the estimated prison population reduction numbers for FY 2009-10 involved with each proposal:

### POPULATION REDUCTIONS

- **Alternative Custody Options for Lower-Risk Offenders:** Proposal would provide alternative custody options for lower-risk offenders to reduce costs and strain on the state prison system. Certain offenders would be eligible to serve the last 12 months of their sentence under house arrest with GPS monitoring. House arrest may include placement in a residence, local program, hospital or treatment center. Statutorily eligible inmates would include inmates with 12 months or less remaining to serve, and elderly or medically infirm inmates. *Estimated to reduce the prison population by 6,300 ADP.*

- **Risk-Based Parole Supervision and Lower Agent Caseloads:** Proposal would target active parole supervision to offenders with a serious or violent commitment history, sex offenders, and those assessed as high risk. The remaining offenders, largely low and moderate risk, nonviolent felons, would be placed on administrative or "banked" parole, but would continue to be subject to warrantless search and seizure by local police. CDCR will reduce parole caseload ratios from 70-1 to 45-1, improving supervision and services for those with the highest risk of reoffending. Parolees who commit certain parole violations will be eligible for placement on GPS supervision as an alternative to returning them to prison. *Estimated to reduce the number of parole violators in prison population by 5,300 ADP.*

- **Commutation of Select Deportable Criminal Aliens:** The California Constitution provides the Governor the authority to commute prison sentences. The Governor will review the cases of criminal alien felons who are subject to deportation upon release on a case-by-case basis starting with the lowest level offenders. The first group to be considered for commutation will by those inmates who have never committed a violent or sex offense and who have only one felony in their entire adult criminal history. *Could reduce the number of criminal alien felons in California prisons by up to 8,500 ADP.*

- **Adjusting Property Crime Thresholds and/or Changing Crimes to Misdemeanors:** Proposal would reduce from wobblers to misdemeanors property crimes associated with writing bad checks, petty theft with a prior, receiving stolen property, vehicle theft and grand theft crimes, and change the monetary threshold that determines whether the property crime is a misdemeanor or felony from $400 to $2,500. For wobblers where there is no monetary threshold specified (e.g., vehicle theft), a $2,500 threshold would be added. *Estimated to prospectively reduce the prison population by 5,600 ADP.*

- **Positive Behavior and Rehabilitation Program Credit Enhancements:** Proposal would allow inmates who participate in and complete rehabilitation programs such as GED, college degrees, and vocational training, to earn additional sentence credits. Credits would also be increased for discipline-free time served in county jail, during parole violations, or while waiting for programs to become available. *Estimated to reduce the prison population by 1,600 ADP.*

####

# EXHIBIT 2

Case 2:90-cv-00520-KJM-SCR   Document 3637   Filed 07/29/09   Page 10 of 11



# STATE BUDGET 2009-10

## CLOSING THE $60 BILLION BUDGET GAP

The amendments to the 2009-10 Budget are the culmination of California's effort to restore balance to a state budget that has been decimated by the worst budget crisis in the state's history.

In February, the state enacted $36 billion in solutions to what was then estimated to be a $42 billion General Fund budget gap (the additional $6 billion in solutions failed to pass at the special election in May). The amendments to the 2009-10 budget include another $24 billion in solutions to address the further deterioration of the state's fiscal situation identified in the May Revision. The $60 billion in budget solutions adopted this year addresses the largest budget gap the state has ever faced, both in dollar amount and in the percent of General Fund revenues it represents.

### COMPONENTS OF THE $60 BILLION BUDGET GAP

Figure INT-01 displays the components of the $60 billion budget gap the state has faced in developing the budget for 2009-10. As the figure shows, the largest contributor to the budget gap is the reduction in the baseline revenue forecast for 2008-09 and 2009-10. This reduction is due almost entirely to the economic recession. In May 2008, the Department of Finance forecast the output of the state's economy (as measured by personal income) to be $1.589 trillion in 2008, $1.655 trillion in 2009 and $1.739 trillion

The $785.5 million in reductions to the California Department of Corrections and Rehabilitation (CDCR) is a combination of operational savings, program reductions, and policy reforms. While there is agreement on significant portions of the package, the legislation to establish significant policy reforms in the areas of parole, custody, program credits and other areas has not been enacted. We anticipate that the Legislature will enact the policy legislation upon its return in August. The following reductions can be implemented with the enactment of the Budget Act:

**Selective Commutation and Deportation of Undocumented Persons in State Prison.** $182.1 million due to the selective commutation and deportation of undocumented persons held in state prison. The CDCR will ensure that those offenders with the most serious convictions remain incarcerated while the remaining undocumented inmate population is referred to the United States Immigration and Customs Enforcement for deportation. Only those offenders who have been identified by the federal government for deportation will be released.

**Program Reductions.** $175 million associated with a decrease in the number of programs for inmates and parolees. Programs that have been demonstrated to effectively reduce recidivism will be retained. The CDCR will also attempt to achieve this savings through more efficient delivery of programs.

**Operational Savings.** $147.6 million associated with a one-time reduction for facility repairs, headquarters savings, additional efficiencies within the operations of the juvenile programs, and other operational savings.

**Contract Medical Rates.** $50 million associated with the establishment of limits on contract reimbursement rates for medical services.

The remaining $230.8 million in budgeted savings, plus the $400 million that the Governor reduced by veto from the February Budget Act, will be achieved through various reforms intended to reduce prison and parole populations. The reforms include alternative custody options for certain offenders within the last 12 months of their sentence, inmate credit earning opportunities, various parole reforms related to who is on parole and how parolees are supervised, community corrections strategies, and sentencing changes for property crimes.