PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

Attorneys for Plaintiffs

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

      Plaintiffs,

  v.

ARNOLD SCHWARZENEGGER, et al.,

      Defendants.

Case No. Civ S 90-0520 LKK-JFM

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

# TABLE OF ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| ASU: | Administrative Segregation Unit |
| BCP: | Budget Change Proposal |
| CDCR: | California Department of Corrections and Rehabilitation |
| CMF: | California Medical Facility |
| COR: | California State Prison, Corcoran |
| CTC: | Crisis Treatment Center |
| DMH: | California Department of Mental Health |
| DOF: | California Department of Finance |
| EOP: | Enhanced Outpatient Program |
| FY: | Fiscal Year |
| ICF: | Intermediate Care Facility |
| MHCB: | Mental Health Crisis Bed |
| OFS: | Office of Fiscal Services |
| SATF: | California Substance Abuse Treatment Facility |
| SOL: | California State Prison, Solano |
| SNY: | Special Needs Yard |
| SVPP: | Salinas Valley Psychiatric Program |
| SVSP: | Salinas Valley State Prison |

[312446-8]

# INTRODUCTION

On the eve of a Court-ordered compliance deadline, Defendants have filed an Ex Parte Request for Extension of Time to Complete Staffing Plan ("Request"), seeking to delay by thirty more days their response to the Court's June 18, 2009 order to file a plan for staffing the short- and intermediate-term bed plan projects. Defendants have failed to establish good cause for this additional delay, as the asserted need for extra time for Department of Finance ("DOF") and CDCR Office of Fiscal Services ("OFS") review was entirely foreseeable and should have been accounted for in Defendants' planning process. Additionally, the Request makes clear that the California Department of Corrections ("CDCR") and the Special Master have already determined the proper levels of clinical and administrative staffing necessary to run the mental health programs in accordance with the Program Guide's requirements. While DOF and OFS review may be necessary to implement the new staffing ratios, they are not appropriately considered part of the staffing plan itself, which must be clinically — rather than fiscally — driven. Finally, and most significantly, the Request betrays the fact that Defendants have not only failed to "take all steps necessary to resolve all outstanding staffing allocation issues," 6/18/09 Order (Docket No. 3613) at 2:24-25, they currently have no plans to allocate the necessary funds to adequately staff the new programs. Accordingly, this Request reveals a major impediment to Defendants' ability to comply with the Court's June 18, 2009 order to activate the short- and intermediate-plan beds within the timeframe promised in Defendants' May 26, 2009 bed plan filing. *See* Docket No. 3592. This serious deficiency must be addressed before additional time is lost.

The Legislature is still in Special Session today and is still addressing the difficult issue of CDCR's budget for the *current* fiscal year, 2009-2010. A thirty-day delay in the staffing plan, however, will conveniently allow the Administration to avoid the uncomfortable subject of additional funding requests for CDCR. The critical need for the Court-ordered mental health bed projects is undisputed, urgent and real—lives are at stake. The projects must be opened on schedule, with appropriate clinical staff. Yet Defendants' existing plan provides no financial resources whatsoever to fund the clinical staff necessary to open these programs—all but one of which is scheduled for this fiscal year.

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

### A. Defendants Have Failed To Establish Good Cause For The Thirty-Day Extension

Defendants have not shown good cause for the requested extension. In fact, Defendants' pleadings make plain that the instant Request is a result not of unforeseen necessity, but of either poor planning or a late decision by the Administration to delay or cut back on the staffing request. This Court has ordered Defendants to implement the short- and long-term bed plan projects within the timeframe promised in Defendants' May 26, 2009 filing — if not sooner. *See* 6/18/09 Order (Docket No. 3613) at 1:25-2:1. The plan includes the following urgently needed, but still pending projects: (1) additional EOP-ASU beds at COR, set to open September 16, 2009, (2) additional EOP-ASU beds at SVSP, set to open no later than November 16, 2009, (3) a pilot double bunking of intermediate care ("ICF") beds at SVSP, slated for October 16, 2009, (4) additional SNY EOP beds at SATF, due to open by December 15, 2009, (5) temporary mental health crisis beds ("MHCBs") at SAC, set to open December 15, 2009, (6) dual diagnosis beds at SATF expected to open by June 15, 2010, (7) EOP-ASU beds at Lancaster, set to open by March 15, 2010, (8) additional MHCBs in the San Quentin CTC, due to be activated by January 1, 2010, (9) a conversion at CMF of P-1 to acute care beds, expected to open by March 15, 2010, (10) a conversion of C-5/C-6 at SVPP into ICF beds by June 18, 2010, and (11) additional Level III/IV EOP beds at SOL, set to open between June 18 and December 18, 2010. Docket No. 3592; *see also* Declaration of Jane Kahn In Support of Plaintiffs' Opposition to Defendants' Ex Parte Request for Extension of Time to Complete Staffing Plan ("Kahn Decl.") ¶ 8, Exh. D. With the possible exception of the Solano project, all of these beds are slated to open in the 2009-2010 budget year, but will be unable to do so unless there are actual clinicians hired and ready to begin treating *Coleman* class members in time for activation of the beds.

Because these new beds cannot actually open and treat the many *Coleman* class members currently suffering from constitutionally inadequate mental health care without adequate clinical and administrative staff, Defendants were further specifically ordered to "take all steps necessary to resolve all outstanding staffing allocation issues . . . [and to] complete a staffing plan by the

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

1  end of August 2009." 6/18/09 Order (Docket No. 3613) at 2:24-26. Furthermore, to ensure the
2  staffing plan process stayed on track, Defendants were ordered to develop the plan under the
3  guidance of the Special Master following the model previously used to develop the activation
4  and bed plans, *id.* at 2:26-3:2, which involved bringing all necessary Defendant parties together
5  from the start of the planning process to ensure no late-in-the-game impediments arose.

6        Inexplicably, Defendants now request a month-long extension on the last day before their
7  staffing plan is due so that OSF and DOF can "review" the staffing plan, despite the fact that
8  Defendants' own declarations and Request make clear that OSF and DOF have been involved in
9  the development of the staffing plan from the very start of the process. *See* Request at 4:7-23;
10 Declaration of Sharon Aungst In Support of Defendants' Ex Parte Request for Extension of Time
11 to Complete Staffing Plan ("Aungst Decl.") at ¶¶ 5-9; Declaration of Jay Sturges In Support of
12 Defendants' Ex Parte Request for Extension of Time to Complete Staffing Plan ("Sturges Decl.")
13 at ¶ 4. There is absolutely no reason that OSF and DOF's concerns regarding the fiscal impact of
14 the staffing plan could not have been addressed as part of those meetings, nor do Defendants
15 assert any reason why they could not have been. Jay Sturges, a Principal Program Budget
16 Analyst for DOF, states that he was assigned to represent DOF at several meetings set up with
17 the express purpose of developing the staffing plan. *Id.* ¶ 4. He indicates nonetheless that DOF
18 needs an additional two weeks with CDCR staff to analyze, among other things, whether the
19 staffing needs in the plan are properly defined and ratio driven, and whether the most current
20 population data were used to create the projections. *Id.* ¶ 6. These are issues that could have,
21 and should have, been resolved at the front end of the planning process, not after the fact.

22       Additionally, if DOF and OSF knew their concerns could not be addressed while the plan
23 was still in development, Defendants were obliged by the hard deadline imposed by this Court's
24 June 18, 2009 Order to account for any fiscal review process that needed to occur in the
25 development process itself. In other words, if DOF and OSF knew they each needed two weeks
26 to review the draft staffing plan, Defendants should have accounted for that in their development
27 process timeline, rather than waiting until the last day to request an extension. That Defendants
28 are not prepared to submit their proposed staffing plan by the Court-imposed deadline is a

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE
STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

problem of their own making, not an unforeseeable obstacle necessitating this Request. No good cause has been shown for further delay.

Should the Court determine that Defendants ought to be given some additional amount of time to submit the staffing plan, however, Plaintiffs request that Defendants be given a deadline of no later than September 14, 2009, in time for the Court, Special Master, and Plaintiffs to review it in advance of the September 22, 2009 status conference. Given that DOF and OFS have participated in the staffing plan development meetings from the start, and given that this Court ordered all key stakeholders to participate for the very reason of attempting to forestall further delay, two additional weeks should be more than adequate while still allowing for the parties and the Court to address the plan at the scheduled status conference. Defendants have not explained why each of these agencies that were already involved in the staffing process supervised by the Special Master need two consecutive periods of fourteen days each to redo what they should have done already. A total of fourteen additional days should be more than sufficient.

**B.     Defendants Should Be Required To Provide Plaintiffs With The Existing Plan**

Additionally, Defendants have thus far refused to provide Plaintiffs with the draft staffing plan or any of the underlying data which is being submitted to OFS and DOF, on the grounds that this Court's June 18, 2009 Order only requires them to provide the information to the Special Master. *See* Kahn Decl. ¶ 10, Exh. F. In the interests of judicial economy and preventing further delay to the implementation of the staffing plan, which could then impact the activation schedule of the short- and intermediate-term projects, Plaintiffs request that this Court order Defendants to provide Plaintiffs with the finalized draft plan Defendants have represented already exists.

First, it is clear that the work ordered by the Court — to develop a plan to determine the appropriate amount of clinical and administrative staff under the Program Guide — is already complete. In her declaration accompanying the Request, Sharon Aungst, CDCR's Chief Deputy Secretary of the Division of Correctional Health Care Services, details her specific expertise in determining necessary staffing ratios in correctional mental health settings, as well as the arduous

4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

process undertaken in consultation with key stakeholders and the Special Master team to survey multiple other jurisdictions and determine an appropriate staffing plan to provide adequate mental health care for *Coleman* class members. *See* Aungst Decl. ¶¶ 3, 5-10. These ratios represent CDCR and the Special Master's best estimate of what levels of staffing the Program Guide requires in order for clinicians to be able to provide constitutionally adequate care in the CDCR. These numbers, based on Ms. Aungst's and the Special Master team's significant expertise and research, are the guidepost this Court ordered, not a watered down version driven by fiscal considerations rather than clinical need. *Cf.* Sturges Decl. ¶ 6 (indicating that DOF will inquire as to whether the ratios are "fiscally responsible" and whether the plan "address[es] issues the Legislature is likely to" be concerned about). Notably, neither Mr. Sturges nor Mr. Lewis suggests that the Special Master will participate in any way in the fiscal review process they propose, in direct contravention of this Court's Order. 6/18/09 Order (Docket No. 3613) at 2:26-3:2.

Furthermore, production of CDCR's finalized draft staffing plan, with the underlying data upon which the model relies, will help prevent further unnecessary delay. Under Defendants' current plan, Plaintiffs will not see any staffing proposal at all until the end of September — after the status conference — and will never receive any of the data and information necessary to understand how the ratios were selected. In order to comment on the adequacy of the plan, Plaintiffs will need to backwards engineer the ratios based on guesswork in order to even determine a starting point for the discussion. Additionally, Plaintiffs will be unable to provide comments to Defendants in advance of submission of the plan to the Court, thereby likely necessitating the filing of objections to the plan, which this Court will then have to resolve. All of this could be prevented if Plaintiffs are permitted to review the proposed staffing ratios, and the underlying data upon which they are based, as they are being submitted to DOF and OFS, rather than after the fact. In the interests of judicial economy and preventing further delay, Plaintiffs request that this Court order Defendants to produce the existing proposed staffing ratios and underlying data to Plaintiffs and the Special Master team by September 4, 2009.

Plaintiffs further request that Defendants be ordered to preserve all documents,

communications and information used to develop the finalized ratios being submitted for DOF and OFS review pursuant to the June 18, 2009 Order in order to ensure transparency, and that DOF and OFS also be required to preserve all of their documents and communications concerning the staffing plan. CDCR has previously developed comprehensive clinical staffing requests in an effort to comply with Program Guide standards, only to have them severely gutted by DOF before they were submitted to the Legislature for approval. *See* June 21, 2006 Special Master's Report on the Status and Sufficiency of the Defendants' Budget Requests for Staffing to Implement the Revised Program Guide (Docket No. 1851); 7/20/06 Order (Docket No. 1922) (adding Michael Genest, Director of DOF, as a Defendant in his official capacity).

### C. Defendants Should Be Required To Take Steps To Secure Funding For Staffing Without Poaching From Existing Programs

Most significantly, the Request makes clear that Defendants have failed to comply with this Court's Order to "take all steps necessary to secure any funding that is still required for full implementation of all of the projects in their short-term and intermediate plan." 6/18/09 Order (Docket No. 3613) at 2:21-23. Rather than securing additional funding to staff the new short- and intermediate-term bed projects, Defendants actually have cut the mental health budget and intend instead to use monies from "vacancies" at existing mental health programs to staff the new beds. Despite prior representations that Defendants' repeated delays of the process would still permit the staffing and bed plan to be funded in the 2009-2010 budget year, Defendants' present plan is to delay any actual new funding until the 2010-2011 budget year. This must not be permitted.

On March 5, 2009, in response to one of many previous requests by Defendants to delay the bed planning and staffing process, this Court ordered Defendants "to work immediately and with full dispatch on the development of a plan, so the financial aspects thereof can be included in the upcoming budget process, if necessary." 3/5/09 Order (Docket No. 3540) at 2:7-10. At the hearing on March 24, 2009, this Court ordered Defendants to meet with the Special Master to develop the bed plan and made clear that Defendants were "[t]o take all necessary steps to bring

urgent projects within the current budget cycle." Transcript at 7:11-12 (Docket No. 3566).

Defendants have represented to Plaintiffs that the requested thirty-day delay is unimportant because the funding for the short- and intermediate-term plans "have already been appropriated in the Budget Act of 2009," and alternately suggest that Defendants can "integrate the staffing allocations ratios into the [2010-2011] state budget process." Request at 6:10-14; Sturges Decl. ¶ 7. These statements seriously distort the facts. After this Court's June 18, 2009 Order requiring Defendants to abide by the schedule laid out in their May 26, 2009 filing, and to do everything possible to open the beds sooner, Defendants severely cut the mental health budget in July 2009. Kahn Decl. ¶ 5, Exh. C; *compare* February 2009 Budget Act Item 5225-002-0001(5), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/sen/sb_0001-0050/sbx3_1_bill_20090220_chaptered.html, *with* July 2009 Budget Act Section 390, Item 5225-002-0001(5), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/abx4_1_bill_20090728_chaptered.html. (The cut was based in large part on the assumption that the Legislature would implement a massive reduction in the prison population. Kahn Decl. ¶¶ 7-8, Exh. D.) As of today, there is simply no funding for staffing the new beds in the 2009-2010 budget. Kahn Decl. ¶¶ 7-8, Exh. D.

Indeed, when Plaintiffs asked Defendants where money for the new beds would come from, Defendants indicated that they would be "funding" the beds by reallocating existing staff vacancies. Kahn Decl. ¶¶ 7-8, Exh. D. It is not at all clear that the existing "vacancies" will be sufficient to properly staff the new beds, or that the correct types of clinical positions are adequately represented in the vacancy pool. Kahn Decl. ¶ 8, Exh. D. Most troubling is that Defendants plan to "fund" the new short- and intermediate-term beds by robbing staff deemed necessary to provide adequate clinical care under the Program Guide from existing mental health programs. Kahn Decl. ¶ 8, Exh. D. These existing beds are currently operating at sub-standard levels of staffing, and the massive "unmet need" being identified in the modified assessment process demonstrates that the current system is not functioning properly. Kahn Decl. ¶ 8, Exh. D. Nonetheless, rather than provide funding to staff either the new or the old beds properly, Defendants plan to poach resources from the existing, underserved *Coleman* program for an

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

unknown period of time.  Defendants have refused to reassure Plaintiffs that the positions have been appropriately "re-established," or whether new and additional positions will be allocated and funded if the existing mental health programs require new positions.  Kahn Decl. ¶ 10, Exh. F.

Defendants have already used this "creative" funding source—taking money from necessary but unfilled mental health positions to "fund" new mental health positions—to "establish" more than 400 new mental health positions in fiscal year 2008-2009.  Kahn Decl. ¶ 11, Exh. G.  The plan was to fully fund the 400 new positions in the 2009-2010 budget, but according to Defendants, these positions were *not even requested* by CDCR in the 2009-2010 budget.  Kahn Decl. ¶ 11, Exh. G.  Thus the mental health staffing budget for the current fiscal year is already under extra pressure and there is no basis to assume that the millions of extra dollars necessary to hire additional clinicians for the new mental health programs is available for that purpose.

This plan to rob resources from the existing program patently contradicts the Court's Order that Defendants "take all steps necessary to secure any funding that is still required for full implementation of all of the projects in their short-term and intermediate plan."  6/18/09 Order (Docket No. 3613) at 2:21-23.  While it would be convenient to fund the new beds through the primary budget cycle, Defendants have, in the past, secured funding through off-cycle funding requests.  In contrast, the Department of Mental Health ("DMH") has successfully secured funding for its programs arising out of the May 26, 2009 Bed Plan pursuant to the Court's order to take all necessary steps.  DMH specifically requested and obtained funding for staffing required for the inpatient short-term and intermediate mental health beds in the bed plan approved by the Court.  *See* Docket No. 3610 at 8-9.  A comparison of the February and July 2009 Budget Acts shows that allocations for Department of Mental Health Long-Term Care Services for CDCR patients increased in funding from $128,141,000 to $153,466,000.  Kahn Decl. ¶ 6; *compare* February 2009 Budget Act Item 4440-011-0001(3), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/sen/sb_0001-0050/sbx3_1_bill_20090220_chaptered.html, *with* July 2009 Budget Act Section 361, Item 4440-011-

8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]

0001(3), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/ abx4_1_bill_20090728_chaptered.html.  Just as DMH was required to seek and secure additional funding to staff the new projects, this Court should require CDCR to take affirmative steps to ensure that the short- and intermediate-term beds can open on schedule, if not before.

As such, Plaintiffs request that Defendants be ordered to submit by September 14, 2009 declarations detailing the funding secured for the clinical and custodial staffing necessary for each of the short- and intermediate-term projects identified in their May 26, 2009 filing.  The new positions must be established, allocated and funded and not rely on poaching from vacant positions for existing understaffed mental health programs.

Dated:  August 31, 2009

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Jane E. Kahn*
JANE E. KAHN
Attorney for Plaintiffs

9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312446-8]