PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA  94710
Telephone:  (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California  94104-1823
Telephone:  (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA  94107
Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone:  (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>              Plaintiffs,<br><br>       v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>              Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN** |

1    I, Jane E. Kahn, do hereby declare under penalty of perjury as follows:

2        1.    I am an attorney admitted to practice law in California and of counsel in the law

3    firm Rosen, Bien & Galvan, LLP, one of the counsel of record for Plaintiff class in this case.  I

4    have personal knowledge of the matters set forth herein and if called as a witness I could

5    competently so testify.  I make this declaration in support of Plaintiffs' Opposition to

6    Defendants' Ex Parte Request for Extension of Time to Complete Staffing Plan ("Ex Parte

7    Request").

8        2.    On August 25, 2009, I was informed in a phone call with Mohammedu Jones and

9    Jeffrey Metzner of the *Coleman* Special Master team that Defendants would be seeking an

10   extension of time to complete the Court-ordered staffing plan, due August 31, 2009.  I called

11   counsel for Defendants, Debbie Vorous and Jeff Steele, to discuss the matter on August 26,

12   2009.  During this phone call, Defendants' counsel informed me that the process of formulating

13   the appropriate staffing ratios was essentially completed, but that the CDCR Office of Fiscal

14   Management ("OFM") and the Department of Finance ("DOF") still needed to review the plan.  I

15   expressed concern that a further extension of time would delay funding for the short- and

16   intermediate-term beds until the next budget cycle, given that, with one possible exception, all of

17   these beds were ordered to be brought on line – with necessary staff – within the current budget

18   year.  I sought reassurance from counsel that this was not the case.

19       3.    After this phone call, I received an email from Ms. Vorous on August 26, 2009

20   stating that she had confirmed with DOF that the positions necessary to staff the short- and

21   intermediate-term beds "were authorized and funded in the Budget Act of 2009."  A true and

22   correct copy of this August 26, 2009 email sent to me by Ms. Vorous is attached hereto as

23   **Exhibit A.**

24       4.    Also on August 26, 2009, I received a second email from Ms. Vorous containing

25   links to the original 2009 Budget Act, passed in February, as well as to the amended Budget Act,

26   passed in July 2009.  A true and correct copy of this August 26, 2009 email sent to me by

27   Ms. Vorous is attached hereto as **Exhibit B**.

28

1

[312445-3]

5.      Later the same day, I sent an email to Ms. Vorous recounting our August 25, 2009 conversation and addressing her two emails. In particular, I noted that, based on my review of the two budget documents that she had sent me, it appeared that the spending allocation for CDCR mental health was reduced from $357,381,000 to $341,358,000 between the February and July 2009 Budget Acts. *Compare* February 2009 Budget Act Item 5225-002-0001(5), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/sen/sb_0001-0050/ sbx3_1_bill_20090220_chaptered.html, *with* July 2009 Budget Act Section 390, Item 5225-002-0001(5), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/ abx4_1_bill_20090728_chaptered.html. Given Ms. Vorous's representation that staffing for the new short- and intermediate-term beds was accounted for in the July 2009 budget, I expressed concern that the budget for mental health had been cut at the same time that the mental health beds were being expanded. I asked Ms. Vorous to correct me if my reading of the 2009 budget was faulty, or, if not, to explain the budget cuts to mental health and their impact on the bed plans. I also asked that the DOF's review of the staffing plan be transparent so that the Court, the Special Master Team, and Plaintiffs could be reassured that any changes to the staffing ratios DOF or OFS deemed necessary were clinically justifiable. A true and correct copy of the August 26, 2009 email I sent to Ms. Vorous and Mr. Steele is attached hereto as **Exhibit C**.

6.      Unlike CDCR, the Department of Mental Health specifically requested and obtained funding for the staffing required for the short-term and intermediate inpatient beds in Defendants' bed plan approved by the Court. *See* Docket No. 3610 at 8-9. I reviewed the same budget documents that Ms. Vorous provided to me on August 26, 2009 and compared the February and July 2009 Budget Act allocations for Department of Mental Health Long-Term Care Services for CDCR patients. The documents show an increase in funding from $128,141,000 to $153,466,000. *Compare* February 2009 Budget Act Item 4440-011-0001(3), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/sen/sb_0001-0050/ sbx3_1_bill_20090220_chaptered.html, *with* July 2009 Budget Act Section 361, Item 4440-011-0001(3), *available at* http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/ abx4_1_bill_20090728_chaptered.html.

2

[312445-3]

7.      On August 27, 2009, I spoke with Ms. Vorous, Kathryn Tebrock, Chief Deputy General Counsel of CDCR's Office of Legal Affairs, and Sharon Aungst, CDCR's Chief Deputy Secretary of the Division of Correctional Health Care Services regarding these issues.  During the call, I was informed that mental health funding was cut between the February and July 2009 Budget Acts because of: (1) an expected population reduction due to legislative action; and (2) a correction of an error, whereby the CMF MHCB project was funded twice in the February 2009 budget.  I was further informed that DOF planned to fund the staffing of the new MHCB and EOP projects through "current staffing vacancies."  I understood this to mean that no funding for new staff had been allocated in the 2009-2010 budget for the new mental health beds.  I was also told that staffing requests for some of the short- and intermediate-term projects could be delayed to the next budget cycle.

8.      Later on August 27, 2009, I wrote an email to Ms. Vorous memorializing our conversation from earlier that day and requesting assurances about the funding for staffing the Court-ordered short- and intermediate-term bed projects so that they could open within the timeframes promised in Defendants' May 26, 2009 filing.  I expressed concern about DOF's plan to "fund" the staffing for the new beds out of existing vacancies, as it was not clear that these "vacancies" were sufficient to properly staff the new beds or contained the correct types of clinical positions, and because the "vacancies" were authorized for existing beds in the first place because they were required to meet Program Guide levels of care.  I also asked whether Defendants would fund additional staffing for existing beds if the "vacancies" were reallocated to the new short- and intermediate-term programs.  I also noted that, given that the last of the intermediate bed projects was slated to open at Solano between June and December 2010, it would not be possible to staff these projects in later budget cycles, as had been previously suggested.  I attached to the email a chart summarizing the timeline for the short- and intermediate-term bed plans, which was prepared at my direction by an associate at my law firm based on Defendants' May 26, 2009 filing (Docket No. 2592).  Finally, I asked that Defendants provide Plaintiffs with the information and data related to the staffing ratios deemed to be appropriate by CDCR and the Special Master team at the same time the draft plan was submitted

3

1   to OFS and DOF.  I then asked for reassurances from Ms. Vorous that the new beds would be

2   appropriately staffed.  A true and correct copy of the August 27, 2009 email I sent to

3   Ms. Vorous, along with the attached chart, is attached hereto as **Exhibit D**.

4          9.     I sent a similar email expressing my concerns about Defendants' staffing plan and

5   request for extension of time to members of the *Coleman* Special Master team on the same day.

6   A true and correct copy of the August 27, 2009 email I sent to Mohammedu Jones and Jeffrey

7   Metzner is attached hereto as **Exhibit E**.

8          10.    On August 28, 2009, I received an email from Ms. Vorous reiterating that the

9   extension of time "will not adversely impact CDCR's ability to staff the short-term and

10  intermediate-term projects proposed by Defendants in their May 26, 2009 bed plan as those plans

11  fall into the 2009-10 fiscal year.…  Thus, how CDCR elects to staff the positions has no

12  relevance to Defendants' request for a thirty-day extension and Defendants will not be making

13  any further assurance regarding those positions."  A true and correct copy of this August 28,

14  2009 email sent to me by Ms. Vorous is attached hereto as **Exhibit F.**

15         11.    In the Fiscal Year Budget 2008-2009, the CDCR requested funding for 407.7

16  mental health positions based upon the workload study.  A true and correct copy of the request,

17  which is also Plaintiffs' Trial Exhibit P-183 in the overcrowding matter, is attached hereto as

18  **Exhibit G**.  As justification for the request, the Finance Letter stated that "current resources are

19  insufficient to comply with the required levels of care for mentally ill inmates" and "[d]ue to

20  limited resources, mentally-ill inmate patients, who are receiving treatment suffer needless

21  extended and medically harmful delays accessing necessary psychiatric care."  *Id.* at 3 of 5.  The

22  Finance Letter provided that these positions would be funded by available salary savings "**from**

23  **currently authorized vacant positions**."  *Id.* at 5 of 5 (emphasis added).  However, it was

24  expected that by July 2009, "all existing salary savings will be exhausted and a subsequent BCP

25  \\\

26  \\\

27

28

[312445-3]

1  will be submitted for FY 2009/10 costs of up to $30.5m." *Id.* On June 3, 2009, Defendants told

2  Plaintiffs that no additional funding for these 407.7 positions was even requested in the FY

3  2009/10 Budget.

4      I declare under penalty of perjury under the laws of California and the United States, that

5  the foregoing is true and correct, and that this declaration is executed in San Francisco,

6  California on August 31, 2009.

7

8                                      */s/ Jane E. Kahn*

9                                      JANE E. KAHN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JANE E. KAHN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE
REQUEST FOR EXTENSION OF TIME TO COMPLETE STAFFING PLAN - CASE NO. CIV S 90-0520 LKK-JFM

[312445-3]

# EXHIBIT A

**Sofia Milhham**

**From:**    Debbie Vorous

**Sent:**    Wednesday, August 26, 2009 1:21 PM

**To:**    Jane E. Kahn; Michael W. Bien

**Cc:**    Debbie Vorous; Jeff Steele

**Subject:** EOT on Staffing Plan

Dear Jane and Michael:

This follows our discussion this morning concerning Defendants' request for a thirty-day extension to complete their staffing plan.  You raised the concern that the extension would adversely affect Defendants' ability to staff the short-term and intermediate-term projects.

I have confirmed with the Department of Finance that the positions necessary to staff the short-term and intermediate-term projects proposed in Defendants' May 26, 2009 filing were authorized and funded in the Budget Act of 2009 (Chapter 1, Statutes of 2009).  Thus, granting Defendants an extension of thirty days to complete their staffing allocation plan will not adversely impact staffing for those programs since CDCR already has those positions.

I hope this addresses your concern.  I will follow up with a further e-mail concerning your request for review of the current draft ratios.

Sincerely,


Debbie J. Vorous
Deputy Attorney General
State of California
Department of Justice
1300 I Street
Sacramento CA 94244-2550
(916) 324-5345

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT B

Sofia Millham

**From:** Debbie Vorous

**Sent:** Wednesday, August 26, 2009 2:19 PM

**To:** Jane E. Kahn; Michael W. Bien

**Cc:** Debbie Vorous; Jeff Steele

**Subject:** RE: EOT on Staffing Plan

Jane,

Here are the links:

Here is the original 2009 Budget Act that was passed in February
http://www.leginfo.ca.gov/pub/09-10/bill/sen/sb_0001-0050/sbx3_1_bill_20090220_chaptered.html
Here is the amended Budget Act  that was passed in July
http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/abx4_1_bill_20090728_chaptered.html

Debbie J. Vorous
Deputy Attorney General
State of California
Department of Justice
1300 I Street
Sacramento CA 94244-2550
(916) 324-5345

>>> "Jane E. Kahn" <jkahn@RBG-Law.com> 8/26/2009 1:22 PM >>>
Debbie,

Can you provide the location in the Budget Act?  I could not find it, maybe the link?


Jane Kahn
ROSEN, BIEN & GALVAN
315 Montgomery Street, Tenth Floor
San Francisco, CA  94104
Telephone:  415/433-6830
Fax:  415/433-7104
jkahn@rbg-law.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure.  If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited.  If you think you have received this e-mail message in error, please e-mail the sender at rbg@rbg-law.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.


**From:** Debbie Vorous [mailto:Debbie.Vorous@doj.ca.gov]
**Sent:** Wednesday, August 26, 2009 1:21 PM
**To:** Jane E. Kahn; Michael W. Bien
**Cc:** Debbie Vorous; Jeff Steele
**Subject:** EOT on Staffing Plan

Dear Jane and Michael:

This follows our discussion this morning concerning Defendants' request for a thirty-day extension to complete their staffing plan.  You raised the concern that the extension would adversely affect Defendants' ability to staff the short-term and intermediate-term projects.

I have confirmed with the Department of Finance that the positions necessary to staff the short-term and intermediate-term projects proposed in Defendants' May 26, 2009 filing were authorized and funded in the Budget Act of 2009 (Chapter 1, Statutes of 2009).  Thus, granting Defendants an extension of thirty days to complete their staffing allocation plan will not adversely impact staffing for those programs since CDCR already has those positions.

I hope this addresses your concern.  I will follow up with a further e-mail concerning your request for review of the current draft ratios.

Sincerely,


Debbie J. Vorous
Deputy Attorney General
State of California
Department of Justice
1300 I Street
Sacramento CA 94244-2550
(916) 324-5345

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.


**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT C

**Sofia Millham**

| | |
|---|---|
| **From:** | Jane E. Kahn |
| **Sent:** | Wednesday, August 26, 2009 3:40 PM |
| **To:** | Debbie Vorous; Jeff Steele |
| **Cc:** | 'Jones, Mohamedu'; Jeff Metzner; 'Lopes, Matthew A. Jr.'; lbuffardi@pld-law.com; Coleman Team - RBG Only; Steve Fama |

**Subject:** Defendants' Request for Extensions to Complete Plans for Staffing and Training

August 26, 2009
Dear Debbie and Jeff,

I am writing to follow-up on our phone call today regarding Defendants' request for plaintiffs' counsel to stipulate to extend court-ordered deadlines for the staffing and training plans. 6/18/09 Order (Docket No. 3618).

Staffing Plan

According to the June 18, 2009 order, "[t]he projects described in defendants' short-term and intermediate plan are approved, subject to the following conditions...
[d]efendants shall continue to take all steps necessary to resolve all outstanding staffing allocation issues.   To that end, defendants shall complete a staffing plan by the end of August 2009." Docket 3618 at 3.d.

During our phone call today, you indicated that Defendants would like a 30 day extension to finalize their staffing plan.  Although, you stated that the staffing ratios are essentially completed, you informed us that there remains the review by CDCR Office of Fiscal Management and the Department of Finance before the staffing plan came be completed, and any Budget Change Proposal can be developed for submission to the legislature.

We expressed several concerns regarding the 30 day extension requested by Defendants.

First, we are concerned that an extension of time will delay funding for the staffing of the short-term and intermediate beds until the next budget cycle.  The staffing plan ordered by the Court was directed at the short-term (9 months or less until activation) and intermediate (9 months to 18 months until activation).  The Court approved Defendants' timeframes, instructed them to accelerate them if possible and to report monthly to the Special Master on each project. Docket 3613 at 1 and 2.  Many of these beds will come on line this year, well before the next budget cycle, and the Court ordered that the staffing required to run these "emergency" mental health programs would be in place.  Defendants must assure Plaintiffs and the Special Master that any extension of time will not delay a funding request in the current budget cycle for the staff positions necessary to run the 388 EOP beds, 92 EOP ASU beds, and 37 MHCB beds included in the Defendants' Plan.  (Docket 3592 at p. 8).   Although you stated in a later email today that you confirmed with the DOF that the positions necessary to staff the short-term and intermediate-term projects were authorized and funded in the Budget Act of 2009, and sent links to the original 2009 Budget Act that was passed in February 2009, and the amended Budget Act that was passed in July 2009, we remain concerned.  In my review of the Budget Acts, I note that the spending allocation for Mental Health was reduced from 357,381,000 in the February 2009 Budget Act (at 5225-002-0001) to 341,358,000 in the July 2009 Amended Budget Act (at Section 390).  The July 2009 Amended Budget Act would have been passed after the court approved the short-term and intermediate beds proposed by Defendants.  If there is funding found elsewhere in the July 2009 Amended Budget Act, please provide us with the specific section.  If not, please provide an explanation why funding for mental health would be reduced at the same time that the mental health beds are being expanded.

Second, we remain concerned about the review process that DOF will undertake after the clinical staffing ratios have been developed by the mental health program.  Any cuts in the clinical staffing ratios must be transparent and must be clinically appropriate and justified to the Special Master and to the Court.  As we reminded you during the phone call, DOF and Mr. Genest were made defendants in the Coleman case because of prior actions by that agency which involved staffing cuts without transparency and justification.  Although staffing decisions must be fiscally responsible in the current climate, they must also be clinically justifiable.

Finally, we expressed our concern that the final staffing plan created by CDCR must be a comprehensive document that will replace the court-ordered, statutorily authorized workload study that was previously funded by the legislature at great cost. We mentioned that a staffer in the LAO office, responsible for CDCR staffing issues, had contacted our office and was unaware that the workload study had been discarded. We did not share any information about the current status of the workload study, but rather sent him a copy of the June 18, 2009 Order and explained that the DOF was involved in the planning occurring with the Special Master and CDCR.

We encourage you to have your clients share with us early drafts or information that addresses our concerns. We want to embrace any new staffing plan developed so that requests can go forward to the legislature with as little controversy as possible.

Training Plan

Jeff requested a 60 day extension of time for the completion of Defendants' training plan, which is currently due on September 18, 2009. He informed us that CDCR now has a contract with Jane Haddad, but that there is some concern whether they will be able to meet the schedule for the pilot at Solano, which Jeff Metzner and Mohammedu Jones informed us yesterday was planned for September 18th.

We suggested that we wait and see how things progress and then see whether Defendants need a 30 or 60 day extension of time. We also asked to observe the pilot training at Solano, which we have been permitted to do in other cases involving CDCR and/or BPH. Jeff agreed to go back to his client on that request.

Just as with the request for an extension of the staffing plan, we are concerned that an extension of time will delay the actual training that is necessary before Defendants can open some of the short-term and intermediate-term beds. Defendants must represent that the delay in the plan will not result in a delay in opening of these court-ordered projects with training completed prior to the opening. The training plan ordered by the Court was directed at the short-term (9 months or less until activation) and intermediate (9 months to 18 months until activation) projects. The Court approved Defendants' timeframes, instructed them to accelerate them if possible and to report monthly to the Special Master on each project. Docket 3613 at 1 and 2. Many of these beds will come on line this year. Docket 3613 at 1 and 2. Defendants must assure Plaintiffs and the Special Master that any extension of time for training will not delay the opening the 388 EOP beds, 92 EOP ASU beds, and 37 MHCB beds included in the Defendants' Plan. (Docket 3592 at p. 8).

In sum, we hope to hear back from you further regarding the status of the funding for staffing of the short-term and intermediate beds in the current budget cycle. Although we appreciate that the Defendants have undertaken a staffing plan for the entire mental health program, this does not relieve them of their responsibility to develop a plan now for the emergency beds which must come on line in the many months. We also look forward to updates on the development of the training materials and the possibility of our observation of the Solano pilot.

We are available to discuss this further this week or early next week before the staffing plan is due.

Sincerely,


Jane Kahn


Jane Kahn
ROSEN, BIEN & GALVAN
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: 415/433-6830
Fax: 415/433-7104
jkahn@rbg-law.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think you

have received this e-mail message in error, please e-mail the sender at rbg@rbg-law.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

# EXHIBIT D

Page 1 of 2

**Sofia Millham**

| | |
|---|---|
| **From:** | Jane E. Kahn |
| **Sent:** | Thursday, August 27, 2009 5:11 PM |
| **To:** | Debbie Vorous; 'Katherine.Tebrock@cdcr.ca.gov' |
| **Cc:** | Jeff Metzner; Mohammedu Jones; lbuffardi@pld-law.com; 'Lopes, Matthew A. Jr.'; Coleman Team - RBG Only |
| **Subject:** | Re CDCR Staffing Plan Extension |

**Attachments:** Timeline for Def Short-term and Intermediate Bed Plan.pdf

August 27, 2009
Dear Debbie,

We appreciate your effort to provide us with additional information today about the status of the staffing plan currently under development by the CDCR, as required by the Court's June 2009 Order.

It is our understanding, based upon this most recent phone call, that the funding for mental health in the Budget Act of 2009 was cut in anticipation of a population reduction authorized by the legislature and as a result of double-funding of the CMF 50-bed MHCB project. We also understand that DOF has informed CDCR that the staffing allocations for the short-term and intermediate projects were included in the Budget Act of 2009. Given the timing of the Budget Act of 2009 and Defendants' Plan and the Court Order, we remained confused about where that staffing allocation exists.

Today during this most recent phone call, we were informed that current mental health staffing vacancies will be used to cover the new staffing positions required for the expanded EOP, EOP ASU and MHCB beds in the short-term/intermediate bed plan. We expressed concerns about this type of "funding" plan, as it is unclear whether the existing staffing vacancies are sufficient to staff the new beds, whether they are the correct type of clinical positions, whether they have been appropriately "re-established," and whether new and additional positions will be allocated and funded if these vacancies are used for the short-term and intermediate bed projects and the existing mental health programs require new positions. As we are all aware, the current vacant positions were authorized because they were necessary for the existing programs, which must now provide care without sufficient resources. The staggering "unmet need" being identified by the modified assessment is a clear indication that the programs are not functioning as intended.

We have carefully reviewed Defendants' May 26, 2009 bed plan filing, which sets forth the timeframes for the completion of the various short-term and intermediate bed projects. (Docket 3592 at 9 to 15 of 87). The Court has ordered Defendants to implement the projects within these timeframes. All of these projects will be activated prior to the next budget cycle, with the latest project - Solano's EOP project fully activated by December 2010. (See Chart attached hereto) Thus, no staffing requests for these projects can be delayed to the next budget cycle as was suggested in previous phone calls.

We have requested further assurances regarding the staffing plan for these new projects, as well as further information about the staffing ratios that have been developed, and the data relied on to develop these ratios.

As we stressed during the phone conference, the staffing ratios which Sharon Aungst described as the final ratios developed through careful review of other states' ratios and through review by her own clinical leadership at all 33 prisons, should stand apart from any finance process that may be driven this year by the financial constraints of the State. These staffing ratios will exist as a guidepost for many years to come and are court-mandated, not DOF driven.

We look forward to hearing from you further.

Sincerely,


Jane Kahn


8/31/2009

Jane Kahn
ROSEN, BIEN & GALVAN
315 Montgomery Street, Tenth Floor
San Francisco, CA  94104
Telephone:  415/433-6830
Fax:  415/433-7104
jkahn@rbg-law.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure.  If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited.  If you think you have received this e-mail message in error, please e-mail the sender at rbg@rbg-law.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

.

Timeline for Defendants Short and Intermediate Bed Plan - Per Docket No. 3592

| Project | Court Approval | Date of Completion | Projected Completion | Institution | Total Beds Added/Lost | Type of Bed Added | Notes |
|---|---|---|---|---|---|---|---|
| SVPP D-5/D-6 | 6/16/2009 | N/A | 5/20/2009 | SVPP | 4 | ICF-H | |
| DTP to ICF at CMF | 6/18/2009 | 0 | 6/18/2009 | CMF | 44 | ICF | Implemented immediately for new admissions, 90 days for remaining population. |
| ASH Acute to ICF | 6/18/2009 | 0 | 6/18/2009 | ASH | 25 | Acute | To be implemented immediately. |
| CMF P-2 to Acute | 6/18/2009 | 0 | 6/18/2009 | CMF | 36 | Acute | Proposal to be implemented immediately but retrofit on phased schedule. |
| EOP-ASU at COR | 6/18/2009 | 90 | 9/16/2009 | COR | 45 | EOP-ASU | |
| EOP-ASU at SVSP | 6/18/2009 | 120 to 150 | 10/16-11/16/09 | SVSP | 27 | EOP-ASU | |
| Pilot Double Bunk at SVSP | 6/18/2009 | 120 | 10/16/2009 | SVSP | 10 | ICF-H | |
| SNY Beds at SATF | 6/18/2009 | 150 to 180 | 11/15-12/15/09 | SATF | 150 | EOP-GP | Additional time to create individual and group treatment space. |
| Temp MHCB at SAC | 6/18/2009 | 150 to 180 | 11/15-12/15/09 | SAC | 20 | MHCB | |
| Dual Diagnosis at SATF | 6/18/2009 | 180 to 365 | 12/15-6/15/10 | SATF | 88 | EOP-GP | |
| EOP-ASU at LAC | 6/18/2009 | 180 to 270 | 12/15-3/15/10 | LAC | 20 | EOP-ASU | |
| MHCBs at SQ CTC | 6/18/2009 | N/A | 1/1/2010 | SQ | 17 | MHCB | Activation scheduled for January 2010. |
| CMF P-1 to Acute | 6/18/2009 | 270 | 3/15/2010 | CMF | 32 | Acute | Seven months to retro-fit and then 60 days to activate beds. Total 9 months. |
| SVPP C-5/C-6 Conversion | 6/18/2009 | 365 | 6/18/2010 | SVPP | 116 | ICF-H | |
| Level III/IV at SOL | 6/18/2009 | 12 to 18 mos | 6/18-12/18/10 | SOL | 150 | EOP-GP | Begin transition at 12 months, fully operational at 18. |

# EXHIBIT E

**Sofia Millham**

| | |
|---|---|
| **From:** | Jane E. Kahn |
| **Sent:** | Thursday, August 27, 2009 3:18 PM |
| **To:** | Jeff Metzner; Mohammedu Jones |
| **Cc:** | 'Lopes, Matthew A. Jr.'; lbuffardi@pld-law.com; Michael W. Bien |

**Subject:** RE: Defendants' request for extension

Jeff and Mohammedu,

We had our phone call today with Debbie Vorous, Sharon Aungst and Kathryn Tebrok, but did not yet get any real answers about the type of funding that currently exists for the staffing positions that will be needed for the short-term and intermediate beds.

We were told that DOF informed Debbie V. that the funding cut in mental health (between Feb and July 2009) occurred because of: (1) expected population reductions due to legislative action; and (2) because the CMF MHCB project was funded twice. When we asked about the funding for staffing of the MHCB projects (SQ and SAC MHOHU) and the EOP projects in the short-term projects, Debbie or Sharon indicated that DOF expected these positions to be filled through current staffing vacancies. Thus, no additional staff was allocated as far as we can tell. It is unclear to us whether the existing vacancies are sufficient to staff the new beds, whether they are the correct type of positions or whether they have been "reestablished." Finally, if all of the vacant positions are filled for the short-term and interim beds, but existing programs have their own unfilled staff positions and hires become available, it is unclear how DOF will provide CDCR with new staff positions prior to the next budget cycle.

We did not agree to an extension of time at this point. We asked Defendants to provide us with some more assurances about the staffing that will be available for these short-term and interim bed projects and what DOF's role will be in the process.

Jane


Jane Kahn
ROSEN, BIEN & GALVAN
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: 415/433-6830
Fax: 415/433-7104
jkahn@rbg-law.com


The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think you have received this e-mail message in error, please e-mail the sender at rbg@rbg-law.com.

IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.


**From:** Jane E. Kahn
**Sent:** Wednesday, August 26, 2009 3:42 PM
**To:** Jeff Metzner; Mohammedu Jones
**Cc:** 'Lopes, Matthew A. Jr.'; lbuffardi@pld-law.com
**Subject:** Defendants' request for extension

Dear Jeff and Mohammedu:

Would it be possible to talk more about the extension requests that defendants are proposing?

30 days for staffing; 60 days for training.  I have sent an email, with you copied, outlining our concerns.

Thanks.


Jane Kahn
ROSEN, BIEN & GALVAN
315 Montgomery Street, Tenth Floor
San Francisco, CA  94104
Telephone:  415/433-6830
Fax:  415/433-7104
jkahn@rbg-law.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure.  If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited.  If you think you have received this e-mail message in error, please e-mail the sender at rbg@rbg-law.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

# EXHIBIT F

**Sofia Millham**

| | |
|---|---|
| **From:** | Debbie Vorous |
| **Sent:** | Friday, August 28, 2009 9:53 AM |
| **To:** | 'Katherine.Tebrock@cdcr.ca.gov'; Jane E. Kahn |
| **Cc:** | Debbie Vorous; Mohammedu Jones; lbuffardi@pld-law.com; Matthew A. Jr.' 'Lopes; Coleman Team - RBG Only; Jeff Metzner |
| **Subject:** | Re: Re CDCR Staffing Plan Extension |

Dear Jane:

Defendants are filing a request today for a thirty-day extension of time to complete their staffing plan. As already represented to you, providing an extension of time to complete the staffing plan will not adversely impact CDCR's ability to staff the short-term and intermediate-term projects proposed by Defendants in their May 26, 2009 bed plan as those plans fall into the 2009-10 fiscal year. Defendants made this representation in their May 26, 2009 bed plan and again in their June 15, 2009, filing. Thus, how CDCR elects to staff the positions has no relevance to Defendants' request for a thirty-day extension and Defendants will not be making any further assurance regarding those positions.

The Court's June 18, 2009 Order sets up a specific process for completing the staffing plan; that is, Defendants are to develop the plan under the guidance of the Special Master. Plaintiffs are not part of this process. Nonetheless, CDCR agreed yesterday during our conference call to see what information could be provided to you now, rather than after DOF and CDCR finalize the plan. Given the timing, however, this information will not be available before our office files the request with the Court.

Sincerely,

Debbie J. Vorous
Deputy Attorney General
State of California
Department of Justice
1300 I Street
Sacramento CA 94244-2550
(916) 324-5345

>>> "Jane E. Kahn" <jkahn@RBG-Law.com> 8/27/2009 5:10 PM >>>
August 27, 2009
Dear Debbie,

We appreciate your effort to provide us with additional information today about the status of the staffing plan currently under development by the CDCR, as required by the Court's June 2009 Order.

It is our understanding, based upon this most recent phone call, that the funding for mental health in the Budget Act of 2009 was cut in anticipation of a population reduction authorized by the legislature and as a result of double-funding of the CMF 50-bed MHCB project. We also understand that DOF has informed CDCR that the staffing allocations for the short-term and intermediate projects were included in the Budget Act of 2009. Given the timing of the Budget Act of 2009 and Defendants' Plan and the Court Order, we remained confused about where that staffing allocation exists.

Today during this most recent phone call, we were informed that current mental health staffing vacancies will be used to cover the new staffing positions required for the expanded EOP, EOP ASU and MHCB beds in the short-term/intermediate bed plan. We expressed concerns about this type of "funding" plan, as it is unclear whether the existing staffing vacancies are sufficient to staff the new beds, whether they are the correct type of clinical positions, whether they have been appropriately "re-established," and whether new and additional positions will be allocated and funded if these vacancies

are used for the short-term and intermediate bed projects and the existing mental health programs require new positions. As we are all aware, the current vacant positions were authorized because they were necessary for the existing programs, which must now provide care without sufficient resources. The staggering "unmet need" being identified by the modified assessment is a clear indication that the programs are not functioning as intended.

We have carefully reviewed Defendants' May 26, 2009 bed plan filing, which sets forth the timeframes for the completion of the various short-term and intermediate bed projects. (Docket 3592 at 9 to 15 of 87). The Court has ordered Defendants to implement the projects within these timeframes. All of these projects will be activated prior to the next budget cycle, with the latest project - Solano's EOP project fully activated by December 2010. (See Chart attached hereto) Thus, no staffing requests for these projects can be delayed to the next budget cycle as was suggested in previous phone calls.

We have requested further assurances regarding the staffing plan for these new projects, as well as further information about the staffing ratios that have been developed, and the data relied on to develop these ratios.

As we stressed during the phone conference, the staffing ratios which Sharon Aungst described as the final ratios developed through careful review of other states' ratios and through review by her own clinical leadership at all 33 prisons, should stand apart from any finance process that may be driven this year by the financial constraints of the State. These staffing ratios will exist as a guidepost for many years to come and are court-mandated, not DOF driven.

We look forward to hearing from you further.

Sincerely,


Jane Kahn



Jane Kahn
ROSEN, BIEN & GALVAN
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: 415/433-6830
Fax: 415/433-7104
jkahn@rbg-law.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think you have received this e-mail message in error, please e-mail the sender at rbg@rbg-law.com.

IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT G

STATE OF CALIFORNIA
FINANCE LETTER - COVER SHEET
FOR FISCAL YEAR 2008/09
DF-46 (WORD Version)(REV 3/00)
use report dollars in thousands.

Department of Finance
915 L Street
Sacramento, CA 95814
IMS Mail Code: A-15

| FINANCE LETTER # | PRIORITY NO. | ORG. CODE 5225 | DEPARTMENT California Department of Corrections and Rehabilitation |
|---|---|---|---|
| PROGRAM 50 | ELEMENT 30 | COMPONENT | |

TITLE OF PROPOSED CHANGE
Mental Health Staffing – Workload Study

SUMMARY OF PROPOSED CHANGES

This Finance Letter requests 407.7 positions in Fiscal Year 2008-09 and ongoing which will be funded by available salary savings. This is requested in order to comply with the *Coleman* court order dated March 2, 2006, and the 2006 MHSDS Revised Program Guide requirements, as recommended by the Mental Health Staffing Workload Study.

|  | FY 2007/08 | FY 2008/09 |
|---|---|---|
| POS | 0.0 | 407.7 |
| PYs | 0.0 | 387.3 |
| Funding (000's) | $0 | $0 |

| REQUIRES LEGISLATION | CODE SECTION(S) TO BE AMENDED/ADDED | BUDGET IMPACT—PROVIDE LIST AND MARK IF APPLICABLE |
|---|---|---|
| ☐ YES ☒ NO | | ☒ ONE-TIME COST  ☐ FUTURE SAVINGS <br> ☐ FULL-YEAR COSTS  ☐ REVENUE <br> ☐ FACILITIES/CAPITAL COSTS |

| PREPARED BY Jennifer Johnson | DATE 3/24/08 | REVIEWED BY Scott Carney, Deputy Director | DATE 4/1/08 |
|---|---|---|---|
| DEPARTMENT DIRECTOR Robin Dezember Division Director | DATE 3/24/08 | AGENCY SECRETARY Heidi Lackner, Director Division of Support Services | DATE 4/1/08 |

IF PROPOSAL AFFECTS ANOTHER DEPARTMENT, DOES OTHER DEPARTMENT CONCUR WITH PROPOSAL?

☐ YES   ☐ NO   ATTACH COMMENTS OF AFFECTED DEPARTMENT, SIGNED AND DATED BY THE DEPARTMENT DIRECTOR OR DESIGNEE.

FOR INFORMATION TECHNOLOGY REQUESTS, SPECIFY THE DATE SPECIAL PROJECT REPORT (SPR) OR FEASIBILITY STUDY REPORT (FSR) WAS APPROVED BY DOIT.

| DATE | PROJECT # | FSR ☐ | OR | SPR ☐ |

| DOF ANALYST USE (ADDITIONAL REVIEW) | Orignal Signed BY: Amy Jarvis |
|---|---|

PAGE II-1

Case No. CIV S-90-0520 LKK JFM P (E.D. Cal)
C01-1351 THE (N.D. Cal)
PLTF Exhibit No. P - 183
Date Entered:_____
Signature:_____
Alternate Reference:

DEFS014440

STATE OF CALIFORNIA
BUDGET CHANGE PROPOSAL- FISCAL DETAIL
STATE OPERATIONS
~~46 (REV 07/06) Alternative
~se report dollars in thousands

PAGE #: 1
Printed:03/25/08time:08:11:27
Data source :W:\TEMP\FL0325A.DBF
Report Location:W:\TEMP\FSCLDT~1.RP1
Report Form :DF46-Plcy/FnLtr_Whl_v1.09

| BCP # B4460MH | | DATE 03/25/08 | TITLE MH WORKLOAD STUDY FL |
|---|---|---|---|

| PROGRAM ( Consolidated ) | | ELEMENT | COMPONENT |
|---|---|---|---|

| PERSONNEL YEARS | PYs CY | PYs BY | PYs BY + 1 | CY | BY | BY + 1 |
|---|---|---|---|---|---|---|
| TOTAL S & W | | 407.7 | 407.7 | | | |
| SALARY SAVINGS | | -20.4 | -20.4 | | | |
| NET TOTAL S & W | 0.0 | 387.3 | 387.3 | | $0 | |
| STAFF BENEFITS | -- | -- | -- | | | |
| OASDI | | { } | ( | ) ( | ) ( | ) |
| HEALTH INSURANCE | | { whole } | ( | ) ( | ) ( | ) |
| RETIREMENT - Industrial | | { dollars } | ( | ) ( | ) ( | ) |
| RETIREMENT - Safety | | { } | ( | ) ( | ) ( | ) |
| RETIREMENT - Peace Officer | | { } | ( | ) ( | ) ( | ) |
| RETIREMENT - Other | | { } | ( | ) ( | ) ( | ) |
| WORKERS' COMPENSATION | | { } | ( | ) ( | ) ( | ) |
| IDL, NDI, UI (incl in W.C.) | | | | | | |
| TOTAL of STAFF BENEFIT DETAIL (whole $ $) | | | ( | ) ( | ) ( | ) |

**TOTAL PERSONAL SVCS**

**OPERATING EXPENSES AND EQUIPMENT**

| | | | | | | |
|---|---|---|---|---|---|---|
| GENERAL EXPENSE | | | | | 4 | 4 |
| PRINTING | | | | | | |
| COMMUNICATIONS | | | | | | |
| POSTAGE | | | | | | 0 |
| INSURANCE | | | | | | |
| TRAVEL - IN STATE | | | | | | |
| TRAVEL - OUT OF STATE | | | | | | |
| TRAINING | | | | | | |
| FACILITIES OPERATIONS | | | | | | |
| UTILITIES | | | | | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | | | | | |
| CONSULTING & PROFESSIONAL:External | | | | | | |
| CONSOLIDATED DATA CENTERS | | | | | | |
| Health and Welfare Data Center | | | ( | ) ( | ) ( | ) |
| Stephen P. Teale Data Center | | | ( | ) ( | ) ( | ) |
| DATA PROCESSING | | | | | | |
| EQUIPMENT | | | | | | |
| ERVICE | | | | | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | | | | |
| TOTAL OPERATING EXPENSES and EQUIPMENT | | | | | 4 | 4 |

**SPECIAL ITEMS of EXPENSE**

| TOTAL STATE OPERATIONS EXPENDITURES | | | | $4 | $4 |
|---|---|---|---|---|---|

PAGE III-2a

DEFS014441

| SOURCE OF FUNDS | ORG | REF | FUND | CY | BY | BY + 1 |
|---|---|---|---|---|---|---|
| GENERAL FUND | 5225 | 001 | 0001 | $ | $ | $ |
| SPECIAL FUNDS | 5225 | | | $ | $ | $ |
| HEALTH CARE FUND | 5225 | 002 | 0001 | $ | $   4 | $   4 |
| FEDERAL FUNDS | 5225 | 001 | 0890 | $ | $ | $ |
| OTHER FUNDS - Bond | 5225 | 001 | 0001 | $ | $ | $ |
| OTHER FUNDS - IWF | 5225 | 001 | 0917 | $ | $ | $ |
| OTHER - Spcl Deposit | 5225 | 001 | 0942 | $ | $ | $ |
| OTHER - | 5225 | 000 | 0000 | $ | $ | $ |
| OTHER - Lottery Educ | 5225 | 001 | 0831 | $ | $ | $ |
| REIMBURSEMENTS | 5225 | 501 | 0995 | $ | $ | $ |
| General Fund,Prop 98 | 5225 | 011 | 0001 | $ | $ | $ |
| Corr Trng Fund | 5225 | 001 | 0170 | $ | $ | $ |

| LOCAL ASSISTANCE SOURCE OF FUNDS | ORG | REF | FUND | | | |
|---|---|---|---|---|---|---|
| GENERAL FUND | 5225 | 101 | 0001 | $ | $ | $ |
| SPECIAL FUNDS | 5225 | | | $ | $ | $ |
| FEDERAL FUNDS | 5225 | | 0890 | $ | $ | $ |
| OTHER FUNDS | 5225 | | | $ | $ | $ |
| REIMBURSEMENTS | 5225 | 501 | 0995 | $ | $ | $ |

/////////// E N D of CONSOLIDATED DISPLAY ///////////////     PAGE III-2b

| PROGRAM | *ADULT CORR'L HEALTH CARE, PSYCHIATR* | ELEMENT | | COMPONENT | | |
|---|---|---|---|---|---|---|
| PERSONNEL YEARS | CY | BY | BY + 1 | CY $$ | BY $$ | BY + 1 $$ |
| TOTAL S & W | | 407.7 | 407.7 | | | |
| SALARY SAVINGS | | -20.4 | -20.4 | | | |
| NET TOTAL S & W | 0.0 | 387.3 | 387.3 | $0 | $0 | |
| STAFF BENEFITS | -- | -- | -- | | | |
| OASDI | | | | ( ) | ( ) | ( ) |
| HEALTH INSURANCE | | { whole} | | ( ) | ( ) | ( ) |
| RETIREMENT - Industrial | | { dollars} | | ( ) | ( ) | ( ) |
| RETIREMENT - Safety | | { } | | ( ) | ( ) | ( ) |
| RETIREMENT - Peace Officer | | { } | | ( ) | ( ) | ( ) |
| RETIREMENT - Other | | { } | | ( ) | ( ) | ( ) |
| WORKERS' COMPENSATION | | { } | | ( ) | ( ) | ( ) |
| IDL, NDI, UI (incl in W.C.) | | | | | | |

**TOTAL PERSONAL SVCS**

**OPERATING EXPENSES AND EQUIPMENT**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GENERAL EXPENSE | | | | | 4 | 4 | |
| PRINTING | | | | | | | |
| COMMUNICATIONS | | | | | | | |
| POSTAGE | | | | | | | |
| INSURANCE | | | | | | | |
| TRAVEL - IN STATE | | | | | | | |
| TRAVEL - OUT OF STATE | | | | | | | |
| TRAINING | | | | | | | |
| FACILITIES OPERATIONS | | | | | | | |
| UTILITIES | | | | | | | |
| CONSULTING & PROFESSIONAL:Interdepartmental | | | | | | | |
| CONSULTING & PROFESSIONAL:External | | | | | | | |
| CONSOLIDATED DATA CENTERS | | | | | | | |
| Health and Welfare Data Center | | | ( ) | ( ) | ( ) | |
| Stephen P. Teale Data Center | | | ( ) | ( ) | ( ) | |
| DATA PROCESSING | | | | | | | |
| EQUIPMENT | | | | | | | |
| DEBT SERVICE | | | | | | | |
| OTHER ITEMS OF EXPENSE (see Supplemental Info sheets) | | | | | | | |

**TOTAL OPERATING EXPENSES and EQUIPMENT**        4      4

**SPECIAL ITEMS of EXPENSE**

**TOTAL STATE OPERATIONS EXPENDITURES**    | $    | $    4    | $    4

PAGE III-2a



## 50  ADULT CORR'L HEALTH CARE, PSYCHIATRIC

| SOURCE OF FUNDS | APPROPRIATION NO. | | | CY | BY | BY + 1 |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 5225 | 001 | 0001 | $ | $ | $ |
| SPECIAL FUNDS | 5225 | | | $ | $ | $ |
| HEALTH CARE FUND | 5225 | 002 | 0001 | $ | $  4 | $  4 |
| FEDERAL FUNDS | 5225 | 001 | 0890 | $ | $ | $ |
| OTHER FUNDS - Bond | 5225 | 001 | 0001 | $ | $ | $ |
| OTHER FUNDS - IWF | 5225 | 001 | 0917 | $ | $ | $ |
| OTHER - Spcl Deposit | 5225 | 001 | 0942 | $ | $ | $ |
| OTHER - | 5225 | 000 | 0000 | $ | $ | $ |
| OTHER Lottery-Educ | 5225 | 001 | 0831 | $ | $ | $ |
| REIMBURSEMENTS | 5225 | 501 | 0995 | $ | $ | $ |
| General Fund,Prop 98 | 5225 | 011 | 0001 | $ | $ | $ |
| Corr Trng Fund | 5225 | 001 | 0170 | $ | $ | $ |

| LOCAL ASSISTANCE SOURCE OF FUNDS | APPROPRIATION NO. | | | $(        ) | $(        ) | |
|---|---|---|---|---|---|---|
| | ORG | REF | FUND | | | |
| GENERAL FUND | 5225 | 101 | 0001 | $ | $ | $ |
| SPECIAL FUNDS | 5225 | | | $ | $ | $ |
| FEDERAL FUNDS | 5225 | | 0890 | $ | $ | $ |
| OTHER FUNDS | 5225 | | | $ | $ | $ |
| REIMBURSEMENTS | 5225 | 601 | 0995 | $ | $ | $ |

PAGE III-2b



*CONTINUATION Sheet*     *ADULT CORR'L HEALTH CARE, PSYCHIATRIC*     Printed:03/25/08  time:08:11:27
BCP# B4460MH   Page:5     DEPARTMENT:*CORRECTIONS & REHABILITATION*     **FISCAL YEAR**2008 - 2009

Fiscal Detail Continued
**DETAIL OF PERSONAL SERVICES**50    *ADULT CORR'L HEALTH CARE, PSYCHIATRIC*

| Workload Adjustments | POSITIONS | | | | AMOUNT | | |
|---|---|---|---|---|---|---|---|
| CLASSIFICATION | CY | BY | BY + 1 | SALARY/RANGE | CY | BY | BY + 1 |
| Registered Nurse,CF | | -55.6 | -55.6 | 7285- 9296 | | | |
| Psychologist-Clinical, CF | | -614.1 | -614.1 | 7116- 8930 | | | |
| Supvng Registered Nurse | | -15.0 | -15.0 | 5060- 6551 | | | |
| Occ Therapist | | -1.0 | -1.0 | 3241- 4450 | | | |
| Psychiatric Social Worker | | -211.5 | -211.5 | 3554- 4430 | | | |
| Psychometrist | | -0.8 | -0.8 | 3241- 4037 | | | |
| Med Transcriber | | -49.5 | -49.5 | 2751- 3354 | | | |
| Ofc Asst-Typing | | -71.7 | -71.7 | 2324- 2826 | | | |
| TOTAL SALARIES AND WAGES | | -1,019.2 | -1,019.2 | | | | |

PAGE III-3

**SUPPLEMENTAL INFORMATION**
*Please report dollars in thousands.*Whole dollars
**IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.** SEE INSTRUCTIONS

| | CURRENT YEAR | BUDGET YEAR | BY + 1 |
|---|---|---|---|
| P - | | | 0 |
| PS-In | | | 0 |
| PS-Ex | | | 0 |
| ONE-TIMES(One-Times inclds EQUIP & CONTRACTS) | | | 0 |
| FULL-YR | | | |
| FACILITIES/CAPITAL COSTS | | | |

PAGE III-4

DEFS014445



*CONTINUATION Sheet*    *ADULT CORR'L HEALTH CARE, PSYCHIATRIC*    Printed:03/25/08  time:08:11:27
BCP# B4460MH   Page:6    DEPARTMENT:*CORRECTIONS & REHABILITATION*    **FISCAL YEAR2008 - 2009**

Fiscal Detail Continued
**DETAIL OF PERSONAL SERVICES***50*    *ADULT CORR'L HEALTH CARE, PSYCHIATRIC*

| *Proposed New* | POSITIONS | | | | AMOUNT | | |
|---|---|---|---|---|---|---|---|
| **CLASSIFICATION** | CY | BY | BY + 1 | SALARY/RANGE | CY | BY | BY + 1 |
| Sr Psychiatrist, CF-Spec | | 14.1 | 14.1 | 9845- 13170 | | | |
| Staff Psychiatrist,CF | | 36.5 | 36.5 | 11534-12863 | | | |
| Chief Psychologist | | 12.0 | 12.0 | 11391-11798 | | | |
| Sr Psychologist, CF-Spec | | 57.0 | 57.0 | 8416- 9376 | | | |
| Psychologist - Clinical (Safet | | 363.0 | 363.0 | 7116- 8930 | | | |
| Corr Counselor I | | 63.4 | 63.4 | 5033- 7772 | | | |
| Recr Therapist | | 122.4 | 122.4 | 5679- 6367 | | | |
| Assoc Govtl Prog Analyst | | 16.5 | 16.5 | 4400- 5348 | | | |
| Psych Techn (Safety) | | 279.7 | 279.7 | 4814- 5161 | | | |
| Psychiatric Social Worker | | 363.0 | 363.0 | 3554- 4430 | | | |
| Ofc Svcs Supvr II-Gen | | 37.2 | 37.2 | 2953- 3590 | | | |
| Ofc Techn-Typing | | 62.1 | 62.1 | 2686- 3264 | | | |
| **TOTAL SALARIES AND WAGES** | | 1,426.9 | 1,426.9 | | | | |

\*
\*    PAGE II + 90V
\*

**SUPPLEMENTAL INFORMATION**
*Please report dollars in thousands.*Whole dollars
**IDENTIFY ALL PROPOSED ITEMS WHICH FIT INTO THE CATEGORIES LISTED BELOW.  SEE INSTRUCTIONS**

| | CURRENT YEAR | BUDGET YEAR | BY + 1 |
|---|---|---|---|
| EQUIP - | | | 0. |
| C&PS-In | | | 0 |
| C&PS-Ex | | | 0 |
| ONE-TIMES(One-Times inclds EQUIP & CONTRACTS) | | | 0. |
| FULL-YR | | | |
| FACILITIES/CAPITAL COSTS | | | |

PAGE III-4

\\\\\\\\\\\\\\\\\    E N D  of  PROGRAM:

DEFS014446

**California Department of Corrections and Rehabilitation**
**Finance Letter**
**Fiscal Year 2008/09**
**Mental Health Staffing–Workload Study**

**Division/Institution:** Division of Correctional Health Care Services – Mental Health Programs

**Title:** Mental Health Staffing - Workload Study

## A.    NATURE OF REQUEST

Pursuant to SB 1134, Chapter 511, the California Department of Corrections and Rehabilitation (CDCR) was required to complete a workload study to assess the total level of resources needed for the implementation of the Revised Program Guide for the Mental Health Services Delivery System (MHSDS). The Mental Health Staffing Workload Study was completed in June, 2007 and this funding request has been developed as a result of the recommendations identified in the study. The Department is requesting 407.7 permanent positions effective Fiscal Year (FY) 2008/09.

## B.    BACKGROUND/HISTORY

### 1991

On June 25, 1991, a class action complaint *Coleman vs Schwarzenegger, et al* (*Coleman*) was filed alleging that the Department "...under color of state law...acted with deliberate indifference depriving the plaintiff class of their rights to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth amendments to the United States Constitution."

The United States District Court for the Eastern District of California ultimately found that the state and prison officials had acted with deliberate indifference to the medical needs of inmates with serious mental disorders by ignoring the advice of their own experts regarding the deficiencies that had existed in the Correctional Health Care System for years. The Court found that the Department and the Health Care Services Division's MHSDS was a constitutionally inadequate system that lacked the necessary elements for delivery of adequate mental health care, such as screening and identification of mentally ill inmates; prompt access to mental health professionals for diagnosis and treatment; patient access to necessary and appropriate levels of care as determined by clinicians, including outpatient care; residential care, crisis care, and inpatient care; medical records and an information management system; and a quality assurance system. The Court concluded that California's system could not, and did not; meet the serious medical needs of mentally ill inmates. On June 6, 1994, it was recommended that the District Court order the appointment of a Special Master and that state and prison officials develop and implement forms, protocols, and plans necessary to remedy constitutional violations.

### 1995

In 1995, the *Coleman* decision found that the Department violated the Eighth and Fourteenth Amendments by being deliberately indifferent to the mental health needs of inmates. The CDCR, the Division of Correctional Health Care Services (DCHCS), the Mental Health Program (MHP), and the institutional MHSDS intends, through approval of this request, to provide full compliance with the *Coleman* orders.

DEFS014447

**California Department of Corrections and Rehabilitation**
**Finance Letter**
**Fiscal Year 2008/09**
**Mental Health Staffing–Workload Study**

The DCHCS mission is to protect the health and safety of the public and CDCR staff by providing proper health care service in a timely and cost-effective manner to mentally disordered inmates and parolees. Proper screening and treatment of mental illness is the most effective way to reduce inmate-patient potential for violence and its associated costs.

**1997**
In 1997, the Department established initial policies and procedures for providing mental health services at all institutions through the MHSDS Program Guide, which was approved by the *Coleman* Court. Revisions to the Program Guide have been an ongoing requirement of the *Coleman* case. As a result, each revision has resulted in amending memoranda to the field requiring additional workload, changing timelines, and/or new programs.

**2006**
The MHSDS Revised Program Guide includes all amendments and represents up-to-date policies and procedures for compliance with the *Coleman* Court orders, and to provide the necessary levels of mental health care statewide. Implementing the MHSDS Revised Program Guide is an integral part of the strategy to exit the *Coleman* case and to reduce costs related to this litigation.

During the summer of 2006, SB 518 was Chaptered, mandating that the CDCR execute and complete a workload study of the staffing requirements necessary to deliver the level of care outlined in the MHSDS Revised Program Guide, of which the findings and recommendations of this study were to be included in the FY 2007/08 budget.

**2007**
The Mental Health Staffing Workload Study was completed in June, 2007. Due to the complexities and significance of the Study, the DCHCS was unable to provide appropriate Executive level resources to analyze and approve the findings until December, 2007.

**C.    STATE LEVEL CONSIDERATIONS**

The CDCR acknowledges, in its legislatively approved Strategic Plan, that it is morally and constitutionally obligated to provide health care services to incarcerated offenders. The plan notes that a fundamental level of health care is necessary for incarcerated individuals' successful return and integration into the community and concedes that radical changes are necessary in the Department's health care systems to ensure efficient delivery of quality, cost-effective health care services.

As noted in the *Coleman* Special Master's January 2006 report:



*"Coleman will not be ended until the defendants can demonstrate an ability to provide meaningful mental health care....  The defendants' recent history of*



DEFS014448

**California Department of Corrections and Rehabilitation**
**Finance Letter**
**Fiscal Year 2008/09**
**Mental Health Staffing–Workload Study**

*developing erratic plans or plans they are unable subsequently to implement suggests the present need for something more than just another requirement for the generation of yet more plans."*

Standardizing the delivery of mental health care is an essential, critical step to managing the inmate and parolee population and providing necessary mental health care in a safe, efficient, and cost effective manner. By providing the resources required to comply with the pending federal Court order and the mandated policies and procedures essential to providing constitutionally adequate mental health care, CDCR will take an important step toward self-directed management of the Mental Health Service Delivery System.

**D.    FACILITY/CAPITAL OUTLAY CONSIDERATIONS**

A space study is currently underway to determine the space needs of the Mental Health, Dental, and Medical programs as well as other programs in the institutions. CDCR intends to continue to work closely with the Health Care Receiver's Office to ensure facility space planning for all facility health care needs are coordinated and therefore not duplicated. Therefore, a future space request is anticipated.

**E.    JUSTIFICATION**

This Finance Letter addresses the necessary MHP field staffing for compliance with the *Coleman* Court orders, and the staffing in the institutions required to fully implement the MHSDS Revised Program Guide in conjunction with the staffing levels as described in the Mental Health Staffing Workload Study.

The CDCR is, therefore, requesting field positions to manage the increased workload relating to implementing and monitoring the MHSDS Revised Program Guide. The staffing levels requested in this Finance Letter will provide compliance with Court mandates and assist in extricating the state from federal judicial oversight.

After thirteen years of implementing the Court's orders and mandated services; the implementation of the MHSDS Revised Program Guide; and the development of and concurrence with, the Mental Health Staffing Workload Study; the DCHCS has determined that current resources are insufficient to comply with the required levels of care for mentally ill inmates. Partial implementation of the MHSDS Revised Program Guide suggests a tolerance for insufficient treatment of mentally ill inmates—undiscovered, undiagnosed, and untreated; while being subjected to conditions that aggravate conditions/illnesses. Due to limited resources, mentally-ill inmate patients, who are receiving treatment suffer needless extended and medically harmful delays accessing necessary psychiatric care.

To continue a MHSDS, which is understaffed, significantly overworked, and lacks a quality assurance program, places inmates and inmate-patients at a high risk, and the State, CDCR, and key decision-makers in danger of being found in contempt of court.

DEFS014449

**California Department of Corrections and Rehabilitation**
**Finance Letter**
**Fiscal Year 2008/09**
**Mental Health Staffing–Workload Study**

Standardizing the mental health care in accordance with generally accepted medical practice, the National Commission on Correctional Health Care, community standards, and the law is consistent with the CDCR's Strategic Plan and DCHCS's Goals and initiatives to manage the inmate and parolee population in a safe, efficient, and cost effective manner.

To date, the State of California has spent in excess of $30 million on monitoring and attorney fees in the *Coleman* case. To continue current operations without making adequate provisions for compliance with the Court's mandates and Mental Health professional standards, will leave the State in jeopardy of further litigation and expenses associated with Court imposed remedies that may be avoided by implementing the proposed improvements.

**F.     OUTCOMES AND ACCOUNTABILITY**

The *Coleman* Court continues to monitor compliance with their requirements, and it is the Department's goal to demonstrate the ability to plan for and to provide meaningful mental health care, and to effect an exit from this case by implementation of the MHSDS Revised Program Guide, and activating the staffing levels detailed in the Mental Health Staffing Workload Study.

**G.     ANALYSIS OF ALL FEASIBLE ALTERNATIVES**

**Alternative A:**   Fully implement the MHSDS Revised Program Guide with the addition of Field Operations staff designated in the Mental Health Staffing Workload Study.
- Establish 407.7 permanent field positions.
- The initial implementation of these positions will be funded using available salary savings .
- The DCHCS will monitor the activation of these positions, and will develop and present a request to the department's Budget Office for an augmentation to fund the ongoing costs associated with this request.

**Pros:**     This alternative would provide compliance with policies and procedures contained in the 2006 MHSDS Revised Program Guide, which were negotiated with all parties in the *Coleman* court case. This is the most likely alternative to lead to final exit of the *Coleman* case and reduction of legal costs associated with this case. This alternative is consistent with the mission of CDCR "to take responsibility and accountability for the rehabilitation of offenders" and to "provide training, counseling, and support" services.

**Cons:**     Alternative A will require a future augmentation to the department's budget when the temporary salary savings are exhausted.

**Alternative B:**   Do not implement the requirements of the revised MHSDS Program Guide.

DEFS014450

**California Department of Corrections and Rehabilitation**
**Finance Letter**
**Fiscal Year 2008/09**
**Mental Health Staffing–Workload Study**

**Pros:**      Requires no funding.

**Cons:**      Failure to provide constitutionally adequate mental health treatment may harm inmates and is a violation of inmate's rights under the Eighth and Fourteenth Amendments of the United States Constitution prohibiting cruel and unusual punishment.  Failure to implement the MHSDS Revised Program Guide with necessary staffing and equipment allocations will lead to increased litigation costs.  This alternative is not consistent with the CDCR's mission.

## H. RECOMMENDATION

The CDCR mission "to take responsibility and accountability for the rehabilitation of offenders" and to "provide training, counseling, and support" services is consistent with the revisions in the MHSDS Program Guide.  The best strategy to exit the *Coleman* Court case is to fully implement the revised MHSDS Program Guide.  It is therefore recommended that **Alternative A** be implemented beginning July 1, 2008.

The cost for the 407.7 positions is $30.5 million annually.  In FY 2008/09, salary savings from currently authorized vacant positions will be used to offset these costs, resulting in no funding for these positions being required for Budget Year.  By July, 2009, it is projected that all existing salary savings will be exhausted and a subsequent BCP will be submitted for FY 2009/10 costs of up to $30.5m.

The statewide Mental Health Programs vacancies are at 625.  Recruitment activities are being conducted for these positions, and an expedited hiring process is in place for most classifications.  Estimating that the Mental Health Programs will fill 10 percent (62 positions) of the vacancies each month will generate quantifiable cost savings through June, 2009.

The Mental Health Program will develop a comprehensive hiring plan based on the Mental Health Staffing Workload Study, vacancies and staffing complements by institutions, and submit to the Department and the Department of Finance.

<u>**Attachments**</u>
1 - 3/2/06 *Coleman* Court order
2 - SB 1134
3 - Workload Staffing Analysis
4 – MHP Classification Vacancy Summary
Revised MHSDS Program Guide (on CD)
Mental Health Workload Study (on CD)

DEFS014451