| | |
|---|---|
| EDMUND G. BROWN JR.<br>Attorney General of the State of California<br>DAVID S. CHANEY<br>Chief Assistant Attorney General<br>JONATHAN L. WOLFF<br>Senior Assistant Attorney General<br>WILLIAM C. KWONG – State Bar No. 168010<br>Deputy Attorney General<br>KYLE A. LEWIS – State Bar No. 201041<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004<br>Telephone: (415) 703-5724<br>Facsimile: (415) 703-5843<br>william.kwong@doj.ca.gov<br>kyle.lewis@doj.ca.gov | HANSON BRIDGETT LLP<br>JERROLD C. SCHAEFER - 39374<br>PAUL B. MELLO – 179755<br>S. ANNE JOHNSON – 197415<br>SAMANTHA D. TAMA – 240280<br>RENJU P. JACOB - 242388<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br>Telephone: (415) 777-3200<br>Facsimile: (415) 541-9366<br>jschaefer@hansonbridgett.com<br>pmello@hansonbridgett.com<br>ajohnson@hansonbridgett.com<br>stama@hansonbridgett.com<br>rjacob@hansonbridgett.com |

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

# AND THE NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

# PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>    Plaintiffs,<br>  v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>    Defendants. | No. 2:90-cv-00520 LKK JFM P<br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>    Plaintiffs,<br>  v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>    Defendants. | No. C01-1351 TEH<br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**To: Three-Judge Court** |
DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1
II. PROCEDURAL BACKGROUND ..........................................................................1
III. ARGUMENT .........................................................................................................2
    A. Defendants Are Entitled To A Stay Pending The Appeal Under Federal Rule of Civil Procedure 62 ......................................................2
        1. Defendants Have Made A Strong Showing Of Likelihood Of Success On The Merits Of Their Appeal ..........................................3
            a. The Plata Court's Determination To Convene This Three-Judge Court Was Erroneous Because The Receivership Had Only Just Commenced, And The Plata Court Has Not Found That The Receivership Has Failed................................................................................4
            b. This Court Improperly Construed The Requirement That Crowding Be "The Primary Cause" Of The Claimed Violation Of A Federal Right When It Determined That Overcrowding Was "The Primary Cause" Despite Its Finding That The Prisoner Release Order Would Not Remedy The Claimed Violations...............7
            c. This Court Erred In Ordering A Prisoner Release Of Up To 46,000 Inmates Where, By This Court's Own Findings, No Nexus Exists Between The Proposed Population Reduction And The Delivery Of Constitutionally Adequate Medical Care To The Plata Class Or Mental Health Care To The Coleman Class ..........8
        2. The Public Interest And Balance Of Hardships Weigh Strongly In The State's Favor ......................................................12
IV. CONCLUSION ...................................................................................................15

- i -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Armstrong v. Davis*,
  275 F.3d 849, 870-73 (9th Cir. 2001)..................................................................9, 11

*Britton v. Co-op Banking Group*,
  916 F.2d 1405, 1412 (9th Cir. 1990) ........................................................................4

*Coleman v. Schwarzenegger, Plata v. Schwarzenegger*,
  2008 WL 4813371 (E.D. Cal./N.D. Cal. Nov. 3, 2008) ....................................passim

*Estelle v. Gamble*,
  429 U.S. 97, 104 (1976)..........................................................................................11

*Golden Gate Rest. Ass'n v. City and County of San Francisco*,
  512 F.3d 1112, 1115-16 (9th Cir. 2008).....................................................................3

*Hilton v. Braunskill*,
  481 U.S. 770, 776 (1987)...........................................................................................2

*Hoptowit v. Ray*,
  682 F.2d 1237, 1249 (9th Cir. 1982).........................................................................9

*In re Wirecomm Wireless, Inc.*,
  2008 WL 3056491, at *3 (E.D. Cal. Aug. 1, 2008) ....................................................4

*Lopez v. Heckler*,
  713 F.2d 1432, 1435 (9th Cir. 1983).........................................................................3

*Natural Res. Def. Council, Inc. v. Winter*,
  502 F.3d 859, 863 (9th Cir. 2007).............................................................................3

**Statutes**

18 U.S.C. § 3626(a)(1)(A)...............................................................................................9

18 U.S.C. § 3626(a)(3)(A)...............................................................................................4

18 U.S.C. § 3626(a)(3)(E)(i) and (ii) ...............................................................................7

18 U.S.C. § 3626(a)(4)(A)(ii)..........................................................................................6

28 U.S.C. § 1253 ........................................................................................................1, 2

Fed. R. Civ. P. 62(c) .......................................................................................................2

Violent Criminal Incarceration Act of 1995....................................................................4

- ii -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

# I. INTRODUCTION

Defendants respectfully request a stay of this Three-Judge Court's August 4, 2009 Opinion and Order (August 4, 2009 Order or Order) pending appeal of this Order to the United States Supreme Court. In its August 4, 2009 Order, this Three-Judge Court ordered Defendants to provide the Court within 45 days a plan to reduce the California Department of Corrections and Rehabilitation's (CDCR) adult institutions population by up to 46,000 inmates, or over 25 percent of CDCR's adult institutions population, within a two-year period. (Aug. 4, 2009 Order at 183:2-4.) The Supreme Court has jurisdiction over Defendants' direct appeal of this Court's August 4, 2009 Order under 28 U.S.C. § 1253.

The August 4, 2009 Order should be stayed pending appeal because Defendants have a strong likelihood of success on the merits, will be irreparably harmed absent a stay, the balance of hardships tips sharply in their favor, and the public interest weighs heavily in favor of granting the stay. Defendants have satisfied the standards of Federal Rule of Civil Procedure 62 and are therefore entitled to a stay of the Order pending resolution of their appeal.

# II. PROCEDURAL BACKGROUND

Plaintiffs filed separate motions to convene a three-judge court on November 13, 2006, with both the *Plata* and *Coleman* Courts simultaneously. (*Plata* Docket No. 561.) Over Defendants' objections, the *Plata* and *Coleman* Courts held a joint hearing on June 27, 2007, to determine whether to refer each case to a three-judge court. On July 23, 2007, both the *Plata* and *Coleman* Courts granted Plaintiffs' motions to convene a three-judge court to determine whether a prisoner release order should issue. (*Plata* Docket No. 780.)

Immediately following the *Plata* and *Coleman* Courts' orders convening this Three-Judge Court, Defendants filed a notice of appeal. (*See Plata* Docket No. 799.) The Ninth Circuit, however, dismissed Defendants' appeal for lack of jurisdiction, stating that "[t]he district court orders from which appellants seek to appeal can be effectively

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

reviewed following the entry of a final order by the three-judge district court." (Sept. 11, 2007 Order; *Plata* Docket No. 885.)

On November 3, 2008, the Three-Judge Court denied the State's motion for dismissal or, alternatively, summary judgment. *See Coleman* v. *Schwarzenegger*, *Plata* v. *Schwarzenegger*, 2008 WL 4813371 (E.D. Cal./N.D. Cal. Nov. 3, 2008). The Three-Judge Court commenced trial proceedings on November 18, 2008. (*See* Minute Entry, *Plata* Docket No. 1826.) The Three-Judge Court subsequently entered its Opinion and Order on August 4, 2009, granting Plaintiffs' request for a prisoner release order and requiring Defendants to provide the Court with a plan to reduce CDCR's adult institutions population by up to 46,000 inmates, as articulated by the Court, or over 25 percent of the adult prison population, within two years' time. (Aug. 4, 2009 Order at 183:2-4; *Plata* Docket No. 2197.)

Defendants will be filing a Notice of Appeal of the August 4, 2009 Order. The Supreme Court has jurisdiction under 28 U.S.C. § 1253. In order to give this Court a fair opportunity to consider Defendants' stay request, Defendants will wait to request a stay from the Supreme Court until Friday, September 4, 2009, at 12:00 p.m. if this Court denies this request or fails to act by that time.

### III. ARGUMENT

**A. Defendants Are Entitled To A Stay Pending The Appeal Under Federal Rule of Civil Procedure 62.**

This Court is empowered, under Rule 62 of the Federal Rules of Civil Procedure, to stay its August 4, 2009 Order to ensure that Defendants' rights are secured pending appeal. Fed. R. Civ. P. 62(c). The Supreme Court has identified the following factors for courts to consider in ruling on a motion for a stay of an order pending appeal: (1) whether the applicant for a stay has made a strong showing of likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The Ninth

Circuit has held that consideration of those factors constitute "two interrelated legal tests" where the moving party must show "that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983); *Golden Gate Rest. Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008). These two tests are not mutually exclusive, but rather represent two points on a sliding scale. *Golden Gate Rest. Ass'n*, 512 F.3d at 1116. Where, as here, the government and third parties are affected, the court must also consider whether the public interest lies separately from and in addition to whether the applicant will be irreparably injured absent a stay. *Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007), *stay vacated on other grounds, remanded,* 508 F.3d 885 (9th Cir. 2007).

As explained below, a stay of this Three-Judge Court's August 4, 2009 Order should be granted because not only do Defendants have a strong likelihood of success on appeal, but the balance of equities weighs in Defendants' favor.

1. <u>Defendants Have Made A Strong Showing Of Likelihood Of Success On The Merits Of Their Appeal.</u>

There is a likelihood that the Supreme Court will conclude that this Three-Judge Court's disposition of Defendants' motion for dismissal or, alternatively, for summary judgment and the Court's post-trial Order were made in error. The grounds on which there is a likelihood of success on the merits are multiple. For instance, as an initial matter, the *Plata* Court improperly moved to convene this Three-Judge Court because, as the *Plata* Court itself acknowledged, the Order Appointing Receiver has not failed. Further, this Three-Judge Court improperly construed the requirement that crowding be the "primary cause" of the claimed violation of a Federal right under the Prison Litigation Reform Act (PLRA) when it determined that overcrowding was the "primary cause" despite, *inter alia*, its finding that the prisoner release order would not remedy the claimed violations. Furthermore, the Order, in requiring the Defendants to reduce the prison population by up to 46,000 inmates, as estimated by this Court, or over 25

- 3 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1  percent of CDCR's adult institutions population, extends far further than necessary
2  because, by the Court's own findings, no nexus exists between the proposed population
3  reduction and the delivery of constitutionally adequate health care to the *Plata* or
4  *Coleman* classes.
5  Additionally, because this Court's August 4, 2009 Order is the first such prisoner
6  release order to be issued under the PLRA, Defendants' appeal presents a case of first
7  impression, which likewise weighs in favor of a stay pending appeal. *In re Wirecomm*
8  *Wireless, Inc.*, 2008 WL 3056491, at *3 (E.D. Cal. Aug. 1, 2008) (noting that whether the
9  appeal presented an issue of first impression informed the Court's decision to grant a
10 stay pending appeal) (citing *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th
11 Cir. 1990)).

      a.    The *Plata* Court's Determination To Convene This Three-Judge Court Was Erroneous Because The Receivership Had Only Just Commenced, And The *Plata* Court Has Not Found That The Receivership Has Failed.

15 Under the PLRA, a prisoner release order is the "remedy of last resort" for
16 unconstitutional prison conditions. (Aug. 4, 2009 Order at 8:18-19; H.R. Rep. No. 104-
17 21, at 25 (1995) (report of the House Committee on the Judiciary on the Violent Criminal
18 Incarceration Act of 1995)). A three-judge court should not be convened to determine
19 whether a prisoner release order should issue unless: (i) a court has previously entered
20 an order for less intrusive relief that has failed to remedy the deprivation of the Federal
21 right sought to be remedied through the prisoner release order; and (ii) the defendant
22 *has had a reasonable amount of time to comply with the previous court orders*. 18
23 U.S.C. § 3626(a)(3)(A).
24 The PLRA's exacting standards were not met in the *Plata* case and this Three-
25 Judge Court should not have been convened. The *Plata* Plaintiffs moved to convene a
26 three-judge court to obtain a prisoner release order just months after the *Plata* Court
27 appointed a receiver to take control of the delivery of medical care to California's
28 inmates, and still months before the Receiver's initial Plan of Action (Plan) was even

- 4 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

completed. On February 14, 2006, the *Plata* Court appointed the Receiver effective April 17, 2006. (Feb. 14, 2006 Order, *Plata* Docket No. 473.) The Order Appointing Receiver contemplated that, within 180-210 days after April 17, 2006, the Receiver would submit a "detailed Plan of Action" that would include a "proposed time line for all actions and a set of metrics by which to evaluate the Receiver's progress and success." (*Id.* at 2:20-22, 2:27-3:1.)

On November 13, 2006, the Receiver moved for an extension of time to file his Plan on the basis that it was premature at that stage of the Receivership to develop a final corrective action plan. (Nov. 13, 2006 Mot. for Extension of Time, *Plata* Docket No. 559.) The Receiver proposed to file a revised Plan six months after the initial Plan on May 15, 2007. (*Id.* at 21:2-9.) In granting the Receiver's requested extension, the *Plata* Court found that the initial seven-month deadline for creating a Plan was not realistic given the need to create the Receivership from the ground up and the complexity of the remedial tasks. (Dec. 19, 2006 Order, *Plata* Docket No. 590.) On the same day that the Receiver requested an extension of time to file his Plan, Plaintiffs filed a motion to convene a three-judge court to obtain a prisoner release order. (*See Plata* Docket No. 561.)

The Receiver filed his initial Plan on May 10, 2007. One stated purpose of the Plan was to "provide a comprehensive report to the Court, State officials, and the public concerning the Receiver's long term plans as well as his specific plans for the next two years." (May 10, 2007 Report re Plan, 2:8-11, *Plata* Docket No. 657.) Included in the Plan was a list of projects that the Receiver intended to focus upon in the following 18 to 24 months, as well as an explanation that the Receiver anticipated "future iterations of the Plan as various elements of the Plan are effectuated." (*Id.* at 3.) The Plan characterized the short term as the following 18 to 24 months, and thus clearly contemplated more than two years' time to remedy the claimed deficiencies in the delivery of medical care to California's inmates with serious medical needs.

On July 23, 2007, a little over two months after the Receiver filed his initial Plan

- 5 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

and four months before the revised Plan was due in November 2007, the *Plata* Court granted Plaintiffs' motion to convene a three-judge court to consider a prisoner release order. By statute, however, the *Plata* Court could not refer Plaintiffs' request for a prisoner release order to a three-judge court unless a sufficient period of time had passed for satisfying all previous orders aimed at bringing the delivery of medical care up to constitutional standards and the prior less intrusive relief had failed. *See* 18 U.S.C. § 3626(a)(4)(A)(ii). But when the *Plata* Court ordered a three-judge court convened, a sufficient amount of time had not passed to satisfy its most recent remedial order appointing a Receiver, and the Receivership had not had sufficient time to complete its Plan, much less to fail at implementing it.

The *Plata* Court stated that it was not required to "wait more time, potentially years, to see whether the Receiver's plans will succeed or fail." (July 23, 2007 Order at 6:25-26.) The *Plata* Court held that it was not necessary for the court to wait and "see if the Receiver's Plan of Action is able to remedy the constitutional deficiencies in this case." (*Id.* at 6:7-8.) In doing so, however, the *Plata* Court acknowledged that the Receiver had reported to the court that his "'Plan of Action' will work,'" and that "'those . . . who think that population controls will solve California's prison health care problems . . . are simply wrong.'" (*Id.* at 7:14-16.) Although the Receiver noted that population limits "*may* help effectuate a more timely and cost effective remedial process," the Receiver did not imply, nor did the district court find, that the Receiver had failed. (*Id.* at 7:17-18 (emphasis added).) To the contrary, the district court acknowledged that "the Receiver has made much progress since his appointment." (*Id.* at 6:10.)

On September 6, 2007 -- over one month *after* the *Plata* Court granted Plaintiffs' motion to convene a three-judge court to consider a prisoner release order -- the district court issued an order directing the Receiver to include in his next iteration of the Plan "those objectives, and/or specific portions thereof, that the Receiver plans to achieve within six months, 12 months and 36 months from the date of the November 15, 2007 Plan of Action." (Sept. 6, 2007 Order at 4:11-14.) It is evident from the September 6,

- 6 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1  2007 order that the *Plata* Court did not expect the Receiver to resolve the claimed

2  deficiencies in California's prison medical care delivery system for a minimum of at least

3  three years after November 2007. And yet, one month before, the court had already

4  determined that a three-judge court should be convened to entertain Plaintiffs' request

5  for a prisoner release order.

6  Because the *Plata* Court's referral, at the inception of the Receivership it had

7  ordered, of Plaintiffs' motion for a prisoner release order to a three-judge court was

8  premature and contravened the plain language of the PLRA, there is a substantial

9  likelihood that the Supreme Court will reverse the prisoner release order.

          b.      This Court Improperly Construed The Requirement That Crowding Be "The Primary Cause" Of The Claimed Violation Of A Federal Right When It Determined That Overcrowding Was "The Primary Cause" Despite Its Finding That The Prisoner Release Order Would Not Remedy The Claimed Violations.

13  To obtain a prisoner release order, Plaintiffs were required to prove by clear and

14  convincing evidence that "crowding is the primary cause of the violation of a Federal

15  right" and that "no other relief will remedy the violation of the Federal right." 18 U.S.C.

16  § 3626(a)(3)(E)(i) and (ii). The term "primary cause" must be read in conjunction with

17  the second, related requirement that "no other relief will remedy the violation of the

18  Federal right." In other words, crowding must be so central to the condition complained

19  of that a prisoner release is the only remedy -- indeed, the "remedy of last resort" -- for

20  the claimed violation.

21  But as this court acknowledges, "the population reduction order sought by

22  plaintiffs is not by itself a panacea, and . . . defendants' efforts to provide constitutionally

23  adequate mental health care must go beyond reducing prison overcrowding." (Aug. 4,

24  2009 Order at 111:22-24.) This court further recognizes that "additional steps will be

25  required after the prison population is reduced." (*Id.* at 112:5-6; *see also id.* at 94:9-10:

26  "Other steps will be necessary to fully remedy the deficiencies in the CDCR's medical

27  and mental health care services.".)

28  Indeed, Plaintiffs' expert, Dr. Shansky, testified at trial that CDCR could release

- 7 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1    40,000 inmates and it would not solve deficiencies in medical care because the State

2    would still need to address the other interrelated components involved in the delivery of

3    quality medical care, including staffing, medical escorts, medical records, and medication

4    management. (Rep. Tr. at 483:7-8.) Similarly, the *Coleman* Special Master concluded

5    that a reduction in the number of *Coleman* class members will not appreciably impact

6    those class members with more intensive care needs, leaving a "largely unmitigated

7    need to provide intensive mental health services to program populations." (Aug. 4, 2009

8    Order at 111:16-20.) Though this Court concluded that the Special Master's statement

9    about a reduction by 100,000 inmates is "somewhat hyperbolic," the Special Master's

10   estimates are consistent with those estimates of Plaintiffs' expert, Dr. Stewart, which

11   were cited in the August 4, 2009 Order.[1] In this context, it is likely that the Supreme

12   Court will find that the Three-Judge Court erred in concluding that it should impose upon

13   CDCR the "remedy of last resort" of a court-ordered reduction of over 25 percent of its

14   adult inmate population, despite its findings that this remedy will not resolve the claimed

15   violations.

16           The Three-Judge Court noted that the *Plata* Receivership and the *Coleman*

17   Special Master will continue to work to improve the alleged health care violations in

18   concert with the ordered reduction of the prisoner population. But overcrowding cannot

19   be the "primary cause" of the claimed health care violations if further intrusive judicial

20   intervention, including the *Plata* Receivership and the *Coleman* Special Master, remains

21   necessary even after a 25 percent reduction in CDCR's adult inmate population.

22                   c.    This Court Erred In Ordering A Prisoner Release Of Up To 46,000
                          Inmates Where, By This Court's Own Findings, No Nexus Exists
23                        Between The Proposed Population Reduction And The Delivery Of
                          Constitutionally Adequate Medical Care To The *Plata* Class Or
24                        Mental Health Care To The *Coleman* Class.

25           The PLRA requires that all prospective relief, including a prisoner release order,

26   ─────────────────────
     [1] Dr. Stewart estimated that a reduction by 50,000 inmates would result in 8,500 fewer
27   CCCMS inmates; the Special Master estimated that a reduction by 100,000 inmates
     would result in 19,000 fewer CCCMS inmates which equates to slightly more than twice
28   Dr. Stewart's estimate of 8,500. (*See* Aug. 4, 2009 Order at 170:21-25.)

- 8 -

be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The PLRA further requires the remedy to be "tailored to the actual injuries suffered by class members." (Aug. 4, 2009 Order at 53:13-14, citing *Armstrong v. Davis*, 275 F.3d 849, 870-73 (9th Cir. 2001).) The August 4, 2009 Order fails to meet the governing standards.

Significantly, "[o]vercrowding itself is not a violation of the Eighth Amendment." *See Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir. 1982). The claimed injuries suffered by the Plaintiff classes are the deprivation of minimally adequate medical and mental health care to inmates with correspondingly serious needs. The August 4, 2009 Order is not directed at these injuries or these class members, but toward overcrowding and the prison population generally. The Three-Judge Court states that "[t]o be certain, the relief sought by plaintiffs extends further than the identified constitutional violations in one regard: Any population reduction plan developed by the state is likely to affect inmates without medical conditions or serious mental illness." (Aug. 4, 2009 Order at 121:24-26.)

According to this Court's estimate, the ordered reduction of over 25 percent of CDCR's adult inmate population to 137.5% of design capacity will result in a reduction by "approximately 46,000" inmates. (Aug. 4, 2009 Order at 37:14-15; 130-27-131:1; 168:3-4.) This Court's findings, however, do not establish a relationship between the figure of 137.5% of design capacity and minimally adequate medical and mental health care, or a nexus between the proposed reduction in the overall population by up to 46,000 inmates and the members of the Plaintiff classes. To the contrary, the Court's factual findings refute a connection between the ordered population reduction and the delivery of adequate medical and mental health care and the *Plata* and *Coleman* class members.

This court did not select 137.5% "design capacity" as the population cap for California's 33 prisons based on a study that 137.5% design capacity was the maximum population at which either minimally adequate medical or mental health care could be provided to the *Plata* and *Coleman* classes. Rather, the Three-Judge Court expressly

- 9 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

stated that it picked 137.5% design capacity because it is "halfway between the cap requested by plaintiffs and the wardens' estimate of the California prison system's maximum operable capacity *absent consideration of the need for medical and mental health care.*" (Aug. 4, 2009 Order at 130:23-27 (emphasis added).) The population level at which California's prisons can deliver the minimal level of medical and mental health care required by the Constitution has never at any time been investigated, much less established at trial.

Even though no study has ever been conducted to determine the population at which California's prisons can provide constitutionally adequate medical and mental health care, this Court concluded that "California's prisoner population *must* be reduced to some level between 130% and 145% design capacity if the CDCR's medical and mental health services are ever to attain constitutional compliance." (Aug. 4, 2009 Order at 130:9-11.) In support of the 130% design capacity figure, the Three-Judge Court relies on both "national standards and the Governor's own strike team, which adopted those standards." (*Id.* at 130:11-14.) But the Three-Judge Court concedes, "we cannot determine from the evidence whether the national standard selected by the Governor's strike team represents a judgment regarding the mandates of the Constitution or whether it merely reflects a policy that ensures desirable prison conditions." (*Id.* at 130:14-17) This Court also acknowledges that the purpose of the Governor's strike team was "[t]o implement the prison building and prison reform projects authorized by AB 900." (*Id.* at 127:11-13.) The purpose of the Governor's strike team was not to determine the maximum prison population for which constitutionally adequate medical and mental health care could be provided to the *Plata* and *Coleman* classes. Accordingly, the 130% design capacity figure is not linked to provision of the minimally adequate medical or mental health care the Constitution requires.

The Three-Judge Court recognizes that there are currently over 34,000 inmates identified as *Coleman* class members. (Aug. 4, 2009 Order at 22:13-14.) The Court also notes that as of December 2006, the *Coleman* Special Master had determined that

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

"defendants still lacked clinical resources to meet the needs of some 25 to 30 percent of inmates identified as seriously mentally disordered." (*Id.* at 36:14-15.) Thus, to remedy deficiencies in care provided to 8,500-10,200 (25-30% of 34,000) seriously mentally ill inmates, this Court ordered a reduction of up to 46,000 inmates from the overall prison population. This is not relief "tailored to the actual injuries suffered by class members." *See Armstrong*, 275 F.3d at 870-73.

Further, as discussed above, according to this Court, Plaintiffs' expert, Dr. Stewart, estimated that a 50,000-inmate reduction in the prison population would result in around an additional 10,000 *Coleman* class members in the community, with about 8,500 of those at the lowest level of need. (Aug. 4, 2009 Order at 170:20-25.) While the *Coleman* court's remedial efforts have focused on the higher levels of care, the August 4, 2009 Order would most significantly impact inmates with the lowest level of mental health care need.

The Three-Judge Court does not even attempt to address the nexus between the proposed population reduction and the members of the *Plata* class. Again, in explaining that the ordered relief "extends further than the identified constitutional violations in one regard: Any population reduction plan developed by the state is likely to affect inmates without medical conditions or serious mental illness," this Court overlooks the definition of the *Plata* class itself. (Aug. 4, 2009 Order at 121:24-26.) The *Plata* class does not consist of inmates with "medical needs" but inmates with "serious" medical needs. Significantly, the meaning of "serious medical need" is established by law and is a necessary prerequisite to the finding of an Eighth Amendment violation in the first instance. If an inmate does not have a "serious" medical need to which the State has been deliberately indifferent, he cannot have suffered a constitutional injury. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Further, unlike the *Coleman* class, there is a complete dearth of evidence in the record with respect to the number of *Plata* class members. The August 4, 2009 Order does not include an estimate of the number of inmates who have serious medical needs;

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

the number of such inmates who require care at what level; the number of such inmates who are not receiving constitutionally adequate care at the level they require; or how many of the inmates with serious medical needs who are not receiving a constitutionally adequate level of care would be among those inmates subject to the population reduction.

The lack of factual support for the population cap selected by this Court and the tenuous nexus between the size of the cap and the federal violations sustained by the *Plata* and *Coleman* Plaintiffs create the likelihood of reversal on appeal.

### 2. The Public Interest And Balance Of Hardships Weigh Strongly In The State's Favor.

In addition to having a strong likelihood of success on the merits, the balance of hardships and public interest lie in Defendants' favor. The public has a strong interest in ensuring that the State does not take steps to cause an increase in crime. As this Three-Judge Court acknowledged in its August 4, 2009 Order, the facts at trial established that such a dramatic reduction in California's prison population is likely to result in increased crime. According to this Court, "California's incarceration rate for prisoners sentenced to more than one year in state or federal prisons is about 475 per 100,000." (Aug. 4, 2009 Order at 133:26-28.)[2] "California does not incarcerate felons at an unusually high rate . . . and the average prison sentence imposed and served in California is lower than the national average." (*Id.* at 133:28-134:2.) Further, this Court acknowledges, "there is likely some correlation between incarceration rates and crime rates. Indeed, according to Plaintiffs' experts, some studies have concluded that every ten percent increase in the incarceration rate results in a two to four percent decrease in the crime rate . . . and the massive incarceration rates have contributed to a 25% reduction in violent crime across the United States." (*Id.* at 173:1-6.) This Court also notes, "At its present incarceration rate of 470 per 100,000, California is close to the

---

[2] As noted below, this court later identifies the incarceration rate as 470 per 100,000 residents, which was correct at the time of trial.

- 12 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

inflection point at which *further incarceration* would not be productive." (*Id.* at 173, n.88 (emphasis added).)

But the Order does not cap California's prison population at its current, relatively average incarceration rate. Quite the contrary, it requires California to substantially roll back its incarceration rate by over 25 percent. Moreover, studies have not only shown that "every ten percent increase in the incarceration rate results in a two to four percent decrease in the crime rate" (as this Court notes), but an October 2006 study which Plaintiffs' expert cited, and to which this Court refers, found that a 10 percent decrease in the incarceration rate leads to a statistically significant 3.3 percent increase in crime rates, unless evidence-based programming is expanded. (*See* Aug. 4, 2009 Order at 173:10-16; *see also* Rep. Tr. at 2029:15-2032:19; Ex. 1331 at 10, 15.) Applying those findings here, unless evidence-based programming were expanded by some unstated amount at some unstated additional cost, one would expect the ordered prison population to result in a statistically significant increase of over 6.6 percent in California's crime rate.

Additionally, as this Three-Judge Court acknowledged, already-strained county resources will be negatively impacted by the reduction in the inmate population proposed by this Court. In particular, to the extent that inmates released into the communities as a result of the ordered population reduction receive county services, they will displace other people who are currently receiving services. (Aug. 4, 2009 Order at 165:4-7.) County services should not be further strained and members of the community should not be displaced from needed services, unless and until the ordered population reduction is fully and finally determined to be consistent with the law.

Additionally, absent a stay from this Court, California will be required to fund CDCR's efforts to create a plan to reduce the State's adult inmate population by 25 percent over the next 2 years. This task will require the State to expend its limited resources on a task that was erroneously ordered by the Three-Judge Court. CDCR is facing a $1.2 billion reduction in its budget and needs to focus its limited resources on

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

safely implementing that budget reduction.

If the Supreme Court concludes that the August 4, 2009 Order was issued erroneously, the State's scarce funds expended in developing a plan will be wasted. Given the State's severe financial crisis, that money represents funds that would be taken away from essential corrections functions or other essential programs. As this Three-Judge Court acknowledged in its August 4, 2009 Order, "California has reduced spending on education, health care, the social safety net, and services for the needy, the blind, and children to the breaking point. Under these circumstances, we would be reluctant to direct the state to allocate additional funds to its prisons or rehabilitative services at the expense of others to whom it has a legal and moral obligation." (Aug. 4, 2009 Order, fn. 4.)

The hardship that would befall the State in terms of requiring it to expend its scarce resources on a potentially unnecessary plan outweighs any potential harm that may befall the Plaintiff classes in the interim. This Court already indicated its willingness to entertain a stay of implementation of a prisoner reduction plan pending appeal to the Supreme Court, and there is no reason to believe that the Plaintiff classes will be any more injured if a stay is granted now, than if a stay is granted after the State creates a plan. (*See* Aug. 4, 2009 Order at 183:23-26.) Nonetheless, remedial measures are currently ongoing in both *Plata* and *Coleman*. The State, however, unquestionably will be irreparably harmed by expending limited and valuable resources on the creation of a prisoner reduction plan that may not be necessary in the Supreme Court's determination.

Moreover, because the ordered overall population reduction has no nexus to the affected classes and would provide them with no immediate relief, the balance lies in favor of mitigating public safety in California and preserving the management of the State's prison system to the Legislative and Executive branches of the State itself, until the case is determined on the merits.

Accordingly, the public interest and the balance of hardships both weigh in favor of allowing the Supreme Court to rule on Defendants' appeal before requiring the State

- 14 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

| | |
|---|---|
| 1 | to create a plan to reduce its adult inmate population by 25 percent or more within two |
| 2 | years. |

## IV. CONCLUSION

For the reasons articulated above, Defendants respectfully request that the Three-Judge Court stay any and all further proceedings before it, including any and all proceedings related to its August 4, 2009 Order, pending the resolution of the Defendants' appeal to the United States Supreme Court.

DATED: September 1, 2009       HANSON BRIDGETT LLP

By: /s/ Paul B. Mello
PAUL B. MELLO
Attorneys for Defendants
Arnold Schwarzenegger, et al.

DATED: September 1, 2009       EDMUND G. BROWN JR.
Attorney General of the State of California

By: /s/ Kyle Lewis
KYLE LEWIS
Deputy Attorney General
Attorneys for Defendants
Arnold Schwarzenegger, et al.