IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br><u>ORDER DENYING MOTION TO</u><br><u>STAY AUGUST 4, 2009 ORDER</u> |

On August 4, 2009, this court issued an opinion and order finding that plaintiffs had met their burden under the Prisoner Litigation Reform Act, 18 U.S.C. § 3626, to establish that crowding was the primary cause of the constitutionally inadequate medical and mental health care systems at issue in the underlying cases and that a prisoner release order was necessary to remedy those violations. The *Coleman* case, which concerns inmate mental health care, was filed nearly two decades ago and has been in the remedial phase since 1995. The *Plata* case, which concerns inmate medical care, was filed eight years ago and entered the remedial phase in 2002, with a receiver appointed in 2006 after the state's admitted failure to implement agreed-upon reforms. After hearing fourteen days of live testimony

commencing on November 18, 2008, and reviewing dozens of trial declarations and expert reports in addition to hundreds of exhibits, this court concluded that crowding was the primary cause of the constitutional violations at issue in both cases and that no relief that did not include a prisoner release order – defined broadly by the statute as any order having "the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison," 18 U.S.C. § 3626(g)(4) – could remedy those violations.  We further found, based on the evidence presented at trial, including reports commissioned and proposals made by the state itself, that a prisoner population reduction could be achieved without adversely impacting public safety or the operation of the criminal justice system and that, in fact, California's crowded prisons are criminogenic environments that themselves have a substantial negative impact on public safety.

Rather than ordering any specific mechanisms for reducing California's prison population, we instead ordered defendants to present the court with a plan "that will in no more than two years reduce the population of the CDCR's adult institutions to 137.5% of their combined design capacity."  Aug. 4, 2009 Opinion & Order at 183.  We determined the order to be narrowly tailored, to extend no further than necessary, and to be the least intrusive means possible to correct the constitutional violations at issue.  We also recognized the importance of preserving the state's discretion, as well as the limited role of the federal courts.  As we noted near the outset of our opinion, "[w]e recognize the gravity of the population reduction order we issue herein, and we do not intervene in matters of prison population lightly.  Nonetheless, when federal court intervention becomes the only means by which to enforce rights guaranteed by the Constitution, federal courts are obligated to act."  *Id.* at 9.

Defendants now seek a stay of our order to develop a population reduction plan pending their appeal of that interlocutory order to the United States Supreme Court.  In our opinion and order, we stated that we "will not grant any stay of the proceedings prior to the issuance of the final population reduction plan, but will entertain motions to stay implementation of that plan pending the resolution of any appeal to the Supreme Court."  *Id.*

2

at 183. In other words, we stated that we would entertain motions to stay our final order once it was issued, to the effect that the state would not be required to put any population reduction order into effect until after the Supreme Court had the opportunity to consider the legality of that order; we also stated, however, that we would not stay any interim order designed to require the state to help inform this court of its position and to allow the court to develop a plan that would take into account the state's proposals. After carefully reviewing the state defendants' written arguments, we do not find good cause to alter our decision.

As we have explained, our August 4, 2009 order requires simply the development of a plan; it does not require implementation of any population reduction measures. The first step towards the development of a plan is the state's submission of a proposed plan by September 18, 2009. Plaintiffs and intervenors will then have until October 8, 2009, to file any objections to the state's proposal, as well as to propose modifications to the state's proposed plan or suggestions for additional actions. Defendants will then have until October 23, 2009, to file a response to any submissions by the plaintiffs and intervenors.

We have set no fixed time limit for completing the process of developing a final population reduction plan, although time is of the essence, and we may, after considering all of the written submissions, find it necessary to obtain additional information from the parties or intervenors, or to hold further hearings prior to approving a final plan. The state will be required to take no action with respect to implementing any components of a population reduction order until all of these proceedings are completed, and then, should it appeal, we will entertain a motion to stay any action until the Supreme Court has reviewed the final court-ordered plan.

In considering an application for stay, courts must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Applying these factors to this case, we first find little, if any, likelihood that the state could prevail on its appeal from our interlocutory

3

order to provide a population reduction plan. To the extent that defendants would seek a stay on the merits of an order to implement any such plan, no such order exists. Moreover, as we have noted, in our August 4, 2009 order, we stated that once a final population reduction plan has been issued, we will entertain motions to stay implementation of the plan pending resolution of an appeal to the Supreme Court. Second, developing a plan to resolve the state-acknowledged crisis in the prisons will not under any circumstances constitute irreparable harm to the state, but will be of benefit to it in its efforts to bring to an end the unconstitutional conditions in its prisons, as well as the detriments that flow therefrom – to the state, its prisoners, the prison guards, and the public. Indeed, the state has already completed much of the necessary work to develop a plan that could satisfy much or all of our order, with the Governor's population reduction proposals having been recently considered and adopted (in full by one house and in part by the other) by the California Legislature. Third, the balance of the equities is in favor of development of a plan rather than in delaying such development for another year or more. Constitutional deprivations are now occurring and are adversely affecting the health and mental health of many thousands of prisoners in the California prison system. Plaintiffs have been seeking relief from these deprivations for almost two decades, and, under the terms of our August 4, 2009 order, the state will have two more years to resolve crowded prison conditions once a final plan is ordered by this court, even aside from any delay resulting from a stay issued pending appeal on the merits and the final resolution of the matter by the Supreme Court. No equitable purpose whatsoever could be served by further delays in formulating a plan. Finally, the public interest lies in the state's making progress towards resolving its prison crisis, which includes the undisputed crowding that led the Governor to declare a state of emergency in 2006 that remains in effect to date. Development of a population reduction plan can only further this process and, thus, the public interest.[1]

---

[1] Were we to apply the *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008), test for the issuance of a preliminary injunction to the stay sought here, we would reach precisely the same result with respect to each of the four factors.

1   This court has been more than patient with the state and its officials. Throughout the
2 proceedings, we have had considerable difficulty in determining their positions, in view of
3 their conflicting representations before this and other official bodies. We are persuaded that
4 it is now in the best interests of all concerned to act as swiftly as possible. Further delays and
5 obstruction will not well serve the people of the state, and will not be tolerated by this court.

6   For all of the above reasons, Defendants' motion to stay this court's August 4, 2009
7 order to develop a population reduction plan is DENIED.

**IT IS SO ORDERED.**

Dated:  09/03/09

_____
STEPHEN REINHARDT
UNITED STATES CIRCUIT JUDGE
NINTH CIRCUIT COURT OF APPEALS

Dated:  09/03/09

_____
LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

Dated:  09/03/09

_____
THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA