PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, California  94710
Telephone:  (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARK R. FEESER, Bar No. 252968
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone:  (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, California  94107
Telephone:  (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone:  (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

        Plaintiffs,

    v.

ARNOLD SCHWARZENEGGER, et al.,

        Defendants.

Case No. Civ S 90-0520 LKK-JFM

**PLAINTIFFS' RESPONSE TO DEFENDANTS' UPDATE TO COURT-ORDERED PROJECTS, SHORT-TERM AND INTERMEDIATE-TERM PROJECTS, AND LONG-TERM BED PLAN**

Hearing Date: September 22, 2009
Time: 1:30 p.m.
Judge: The Honorable Lawrence K. Karlton

[314572-11]

PLAINTIFFS' RESPONSE TO DEFENDANTS' UPDATE TO COURT-ORDERED PROJECTS, SHORT-TERM AND INTERMEDIATE-TERM PROJECTS, AND LONG-TERM BED PLAN – CASE NO. CIV S 90-0520 LKK-JFM

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF ACRONYMS/ABBREVIATIONS ....................................................... ii

INTRODUCTION ................................................................................................... 1

I.  DEFENDANTS' UPDATE TO COURT-ORDERED PROJECTS, SHORT-
    TERM AND INTERMEDIATE PROJECTS AND LONG-RANGE BED
    PLAN ............................................................................................................ 2

    A.  COURT-ORDERED PROJECTS .................................................... 2

        1.  SAC EOP TREATMENT AND OFFICE SPACE ..................... 2

        2.  SALINAS VALLEY EOP PROJECTS .................................. 3

            A.  72-BED EOP ASU ........................................................ 3

            B.  EOP TREATMENT SPACE AND 96 BED EXPANSION ............. 3

    B.  COURT-ORDERED PROJECTS TO EXPEDITE ................................. 4

        1.  CMF 64-BED ICF PROJECT ............................................ 4

        2.  CMC 50-BED MHCB ..................................................... 6

    C.  SHORT-TERM AND INTERMEDIATE-TERM PROJECTS ............................. 8

    D.  LONG-RANGE BED PLAN .......................................................... 9

II. DEPARTMENT OF MENTAL HEALTH (DMH) ISSUES ........................................... 13

    A.  DMH'S PROGRESS FILLING 256 BEDS AT ATASCADERO STATE
        HOSPITAL (ASH) BY OCTOBER 31, 2009 ......................................... 13

    B.  GIVEN THE CURRENT WAITING LIST OF 565 PATIENTS FOR
        INPATIENT INTERMEDIATE CARE FACILITY, HIGH CUSTODY
        BEDS, DEFENDANTS SHOULD REPORT TO THE COURT ABOUT
        THE FEASIBILITY OF EXPEDITING THE CMF 64-BED PROJECT
        AND THE 116-BED CONVERSION PROJECT AT SVSP ..................... 14

CONCLUSION ....................................................................................................... 15

i

[314572-11]

**TABLE OF ACRONYMS/ABBREVIATIONS**

| | | |
|---|---|---|
| 2 | AB 900 | Assembly Bill 900, Public Safety and Offender Rehabilitation Services |
| 3 | | Act of 2007 |
| 4 | ASH | Atascadero State Hospital |
| 5 | ASU | Administrative Segregation Unit |
| 6 | BCP | Budget Change Proposal |
| 7 | CDCR | California Department of Corrections and Rehabilitation |
| 8 | CHCF | Consolidated Health Care Facility |
| 9 | CLO-B | Close Custody B |
| 10 | CMC | California Men's Colony, San Luis Obispo |
| 11 | CMF | California Medical Facility, Vacaville |
| 12 | CSP | California State Prison |
| 13 | DJJ | Department of Juvenile Justice |
| 14 | DMH | Department of Mental Health |
| 15 | EOP | Enhanced Outpatient Program |
| 16 | FY | Fiscal Year |
| 17 | GP | General Population |
| 18 | HC-POP | Health Care Placement Oversight Program |
| 19 | ICF | Intermediate Care Facility |
| 20 | ICF-H | Intermediate Care Facility-High Custody |
| 21 | JLBC | Joint Legislative Budget Committee |
| 22 | LAC | California State Prison, Los Angeles County, Lancaster |
| 23 | MAX | Maximum Custody Status |
| 24 | MHCB | Mental Health Crisis Bed |
| 25 | MH-OHU | Mental Health Outpatient Housing Unit |
| 26 | MOU | Memorandum of Understanding |
| 27 | PMIB | Pooled Money Investment Board |
| 28 | SAC | California State Prison, Sacramento |

ii

PLAINTIFFS' RESPONSE TO DEFENDANTS' UPDATE TO COURT-ORDERED PROJECTS, SHORT-TERM AND INTERMEDIATE-TERM PROJECTS, AND LONG-TERM BED PLAN – CASE NO. CIV S 90-0520 LKK-JFM

1  SATF                    Substance Abuse Treatment Facility, Corcoran

2  SVPP                    Salinas Valley Psychiatric Program

3  SVSP                    Salinas Valley State Prison

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[314572-11]

**INTRODUCTION**

On June 18, 2009, this Court approved the activation schedules for defendants' proposed court-ordered projects and the short-term and intermediate bed plan, but did not approve defendants' long-range bed plan. Docket 3613 at 1:25-26, 2:9-10, and 3:20. The matter was set for a status conference on the activation schedules and short-term and intermediate projects approved in the June 18, 2009 order, and "for further hearing on defendants' long-range bed plan." *Id.* at 5:2:4. The hearing was scheduled for September 22, 2009. *Id.*

Since the June 16, 2009 hearing on defendants' bed plan and the June 18, 2009 order, defendants have provided the *Coleman* Special Master and plaintiffs' counsel with monthly activation schedules, and have filed two updated bed plans. Docket 3639 (July 31, 2009 update); Docket 3656 (September 1, 2009 update). Additionally, on September 18, 2009, defendants in *Coleman* and *Plata* jointly filed defendants' Population Reduction Plan, pursuant to the three-judge court's August 4, 2009 Order, describing construction projects that include mental health beds. Docket 3678. Plaintiffs provide these comments in advance of the hearing, and request that defendants be prepared to address the concerns noted below.

Defendants' progress in implementing the short-term and intermediate-term projects has been adequate, assuming that various barriers to construction that have arisen can be promptly resolved.

The long-range bed plan, however, is moving in the wrong direction. The State has made no decisions about the Receivership: it continues to rely on the Receiver for the bulk of its long-term mental health construction projects and, at the same time, to be at war with the Receivership in Court. The State has failed to bring to this Court's attention that there is not only no agreement with the Receiver but a pending appeal where the State contends that the Receivership and all of the construction projects led by the Receiver, including the mental health projects, violate the Prison Litigation Reform Act (PLRA) and must be terminated. Even assuming the legal challenge to the Receivership issues was resolved, which it is not, the State has yet to select sites or identify funding for the bulk of the long-range plan.

[314572-11]

I.    **DEFENDANTS' UPDATE TO COURT-ORDERED PROJECTS, SHORT-TERM AND INTERMEDIATE PROJECTS AND LONG-RANGE BED PLAN**

A.    **Court-Ordered Projects**

In their September 1, 2009 filing, defendants report on the status of their court-ordered projects, including those that have either been delayed or were not approved by the Joint Legislative Budget Committee. ("JLBC"). Docket 3656 at 5 of 41. The following projects have encountered significant delays or barriers:

1.    **SAC EOP Treatment and Office Space**

The SAC EOP Treatment and Office Space Project was originally authorized as part of a Budget Change Proposal ("BCP") submitted in FY Year 2008/09 to "provide the necessary program, treatment and office space to serve the existing 192 Level IV EOP inmate-patients housed in Facility B at CSP-SAC, by converting existing, unused warehouse space." Declaration of Jane E. Kahn in Support of Plaintiffs' Response to Defendants' Update to Court-Ordered Projects, Short-Term and Intermediate-Term Projects, and Long-Term Bed Plan ("Kahn Decl."), **Ex. A**, P-390 at 1 of 6 (BCP submitted for SAC EOP Treatment and Office Space). According to the BCP, the "project is consistent with the August 2007 Supplemental Mental Health Bed Plan, approved by the Coleman court in October 2007," and is necessary because "CDCR activated 192 EOP beds at CSP-SAC in July 2006 (96 beds) and October 2006 (96 beds)." *Id.* at 3 of 6. The BCP was submitted because the temporary retrofits done at the time that the EOP program was expanded were not adequate and the project was needed to prevent "immediate risk to public safety and health." *Id.* at p. 2 of 6.

Defendants now report a delay in the construction of the SAC EOP Treatment and Office Space project, because their request for construction funding was denied. Docket 3656 at 5 of 41; Kahn Decl. **Ex. B**. Defendants' September 1, 2009 Activation Schedule for the period ending August 24, 2009 ("September 1, 2009 Activation Schedule"), at Ex. 9, CSP-SAC Treatment Space. Defendants should be prepared to report at the September 22, 2009 hearing on the status of construction funding and alternative funding sources to keep this project on schedule.

[314572-11]

1     **2.     Salinas Valley EOP Projects**

2         Defendants have encountered significant obstacles for two critical projects at Salinas

3     Valley State Prison for the EOP programs.

4     **a.     72-Bed EOP ASU**

5         Defendants report that the Salinas Valley 72-bed EOP ASU project, which will create

6     beds, treatment, and office space for 72 EOP ASU patients, was denied funding by the JLBC on

7     June 11, 2009.  Docket 3656 at 5 of 41.  Despite a request by the Director of the Department of

8     Finance, the JLBC affirmed its denial.  *Id.*  Defendants report that they are currently exploring

9     alternative funding options and will present proposed changes to the Court for approval.  *Id.*;

10    Docket 3678-2 at 14 of 21 (number 12).  Defendants should be prepared at the September 22,

11    2009 hearing to report on their alternative proposal for funding this critical project.

12    **b.     EOP Treatment Space and 96 Bed Expansion**

13        On October 7, 2008, this Court ordered defendants to construct the mental health and

14    counseling space at SVSP as described in their development proposal submitted in response to

15    the Court's October 18, 2007 order.  Docket 3072 at 3:1-4.  This court-ordered proposal, which

16    defendants submitted to the Coleman Special Master on February 14, 2008, described a project

17    designed "to provide additional treatment and office space to the existing GP EOP program for

18    192 inmate-patients in addition to a 96 inmate-patient expansion for a total GP EOP program of

19    288 inmate-patients."  Kahn Decl., **Ex. C**. at DEFS021942.  According to the proposal's funding

20    plan, Preliminary Funding would be in the FY2008/09 Budget and Working Drawings and

21    Construction Funding would be in FY2009/10 Budget.  *Id.*  The proposal's schedule assumed

22    that if funding was obtained during the normal budget process "construction will be completed in

23    September 2011."  *Id.*

24        The project has been plagued by delays and remains stalled.  The timeline now proposed

25    by defendants in their September 1, 2009 Activation Schedule is April 15, 2013.  Kahn Decl.,

26    **Ex. B** at Ex. 12.  (Activation Schedule).  Defendants report that they have not yet even been

27    given approval for preliminary plans.  *Id.*

28        The defendants acknowledge that "[b]ecause completion of this project [SVSP 72-Bed

3

[314572-11]

1  EOP ASU] is a prerequisite to activating the SVSP EOP Treatment Space project, that project

2  may be impacted as well."  Docket 3656 at 5 of 41.  The SVSP Treatment Space project is

3  designed to provide necessary treatment and office space for the existing 192 GP EOP patients,

4  as well as permit an expansion of 96 EOP GP patients at the prison.  Docket 3592 at 19 of 87.

5  Thus, the denial of funding for the 72-bed EOP ASU will delay the expansion of 96 GP EOP

6  beds.  *See* Special Master's Report and Recommendations on Defendants' December 2006

7  Mental Health Bed Plan, Docket 2133 at 9 (providing an explanation of the link between these

8  two SVSP EOP projects)[1].

9      Defendants must be required to provide an explanation at the September 22, 2009 hearing

10 about their current efforts to address the set-back in funding of their 72-Bed EOP ASU project

11 and any efforts to expedite the SVSP EOP treatment space and 96 GP EOP bed expansion

12 project.  Both of these projects are critical for addressing the massive EOP bed shortages that

13 exist today.

14     **B.    Court-Ordered Projects to Expedite**

15     As part of this Court's June 18, 2009 order, defendants were directed to accelerate any of

16 the court-ordered projects to the extent possible.  Docket 3613 at 1:26-2:1.  The Court found that

17 the "modified needs assessment that is being conducted pursuant to this court's March 31, 2009

18 order demonstrates clearly that there are a substantial number of Coleman class members, over

19 and above those identified in the Navigant projections, who are presently in need of hospital

20 care."  *Id* at 3:24-4:1.

21     **1.    CMF 64-Bed ICF Project**

22     There is a desperate need for additional Level IV ICF high custody beds.  The CMF 64-

23 bed ICF high custody project is currently sited and funded, yet defendants do not anticipate

24

25

26

27 [1] The two old EOP ASU units, D1 and D2, must first be vacated (which first requires that the
   new 72-bed EOP ASU be completed) before the 96-Bed GP EOP expansion can occur through a

28 retrofit of those old housing units.

4

1 | completing the project until November of 2012.[2] Kahn Decl., **Ex. B** (Activation Schedule,

2 | Ex. 8). Defendants report that the Pooled Money Investment Board (PMIB) approved a loan for

3 | the working drawing phase of the CMF 64-bed ICF project on July 15, 2009, but the

4 | architectural/engineering contract execution was "delayed due to year end work load issues." *Id.*

5 | As a result, this also "delayed start of working drawings," but "[t]here is no impact to design and

6 | overall schedule." *Id.* Defendants report that only 5% of the working drawings were complete

7 | as of September 1, 2009. Docket 3656 at p. 5 of 41. Although the project may not yet be

8 | delayed, it does not appear that defendants have attempted to expedite this project in any fashion.

9 | As a result of the Court-ordered modified needs assessment, which is still not complete,

10 | the SVPP ICF-high custody waiting list is a startling 565 patients admitted and waiting for an

11 | SVPP bed as of August 30, 2009. Kahn Decl., **Ex. E**. (August 2009 DMH Monthly Bed

12 | Utilization Report filed under seal). To put the gravity of this waiting list in perspective, only

13 | 166 patients were on the SVPP waiting list this time last year. Kahn Decl., **Ex. F.** (August 2008

14 | Monthly Report on the Licensure of Intermediate Care and Day Treatment Programs at the

15 | California Medical Facility, Vacaville, and the Salinas Valley Psychiatric Program, Salinas

16 | Valley State Prison ). A significant number of the patients in need of inpatient care are lingering

17 | in EOP programs or in locked EOP-ASU or PSU units. Kahn Decl., **Ex. G**. (August 2009

---

[2] As discussed below, defendants' long-range bed plan calls for the placement of 432 ICF-H beds inside of the Receiver's Correctional Health Care Facility (CHCF), if the Receivership withstands the legal challenges defendants have mounted. *See Plata v. Schwarzenegger*, No. 09-15864 (9th Cir. filed April 30, 2009) (State's reply brief filed September 10, 2009). Nevertheless, no site has been selected for this CHCF and legislation is required to amend AB 900 in order to obtain funding. Docket 3678-2 at 10 of 21 (n.10) and 12 of 21, numbered item 1. As a result, these beds will not be constructed until sometime in FY 2011/12 under the best case scenario. *Id.* at 12 of 21.

5

[314572-11]

1    Monthly Report on the Licensure of the Intermediate Care Programs at CMF and SVSP).[3]

2        At the same time that the waitlist has reached a staggering level, very few additional Level

3    IV ICF beds are set to come online in the near future.  Defendants added 4 temporary beds in the

4    D5 and D6 units in May of 2009 and will add another 10 beds through the pilot double-bunking

5    program at SVPP sometime between October and December of 2009.  Docket 3592 at 12-14 of

6    87.  These beds are a mere drop in a very large bucket.  Another 116 badly needed beds are set to

7    come online by June of 2010 assuming defendants' conversion of the C5 and C6 units moves

8    forward as planned.  *Id* at 12-13 of 87.  These projects still leave a giant delta of unmet need for

9    the *Coleman* class—a delta that is likely to increase in the coming months with completion of the

10   modified assessment.

11       Plaintiffs request that defendants be prepared to report on the CMF 64-bed ICF project

12   during the hearing, including any and all efforts they have made to expedite funding, planning

13   and construction.

14              **2.    CMC 50-Bed MHCB**

15       This bed project has been court-ordered multiple times.  *See* Docket 3513 at 2-3; Order,

16   March 26, 2007 (Docket 2173); Order, February 26, 2008 (Docket 2697).  Defendants report that

17   "[p]reliminary plans for the CMC 50-bed MHCB project are approximately 50% complete, and

18   the environmental report is underway."  Docket 3656 at 5 of 41.  According to the activation

19   schedule, once the plans are complete on February 23, 2010, various additional steps must be

20   undertaken (completing working drawings, bid and award) until construction can commence on

21   November 22, 2010 (21 months later).  Kahn Decl. at **Ex. B**, Ex. 2.  The project is not projected

22   for completion until October 4, 2012.  *Id.*

23

24   _____

25   [3] Defendants' data regarding the SVPP waiting list is problematic.  Whereas defendants' August
     2009 "DMH Monthly Bed Utilization Report" shows 565 patients on the SVPP and the Penal

26   Code Section 1370 waiting lists (Kahn Decl., **Ex. E**), defendants' August 2009  "Monthly Report
     on the Licensure of the Intermediate Care Programs at CMF and SVSP" show only 426 patients

27   on those waiting lists (Kahn Decl., **Ex. G**).  Both lists supposedly reflect August 2009 data.  Of
     the 426 patients on **Ex. G**'s waiting list, 384 are housed in EOP programs, with 141 housed in

28   locked EOP units, including PSU and EOP HUBs.

[314572-11]

1    The gap in MHCB beds during the next three years will only be partially addressed by

2 only a few interim emergency MHCB projects that are underway.[4]  The shortage of MHCB beds

3 remains severe with long delays common.  Defendants remain incapable of placing the majority

4 of the patients referred for transfer to an MHCB within the required timeframes.  Kahn Decl.,

5 **Ex. H.** (August 17, 2009 Summary of Inter-Institutional MHCB Referrals and Transfers for July

6 2009).  In July 2009, there were 185 MHCB referrals for placement, but only 98 patients were

7 placed, and among those 98 patients, only 4 were placed within the *Coleman* Program Guide

8 required 24 hour timeframe.  Kahn Decl., **Ex. H.** (July 2009 data); **Ex. I.** (12-1-16, 2009

9 Revision Program Guide).  In fact, those patients who were placed waited an average of 5.13

10 days, and as long as 12 days before they were placed in an MHCB.  Kahn Decl., **Ex. H**, at 3.  In

11 August 2008, there were 322 MHCB referrals for placement, with 135 patients transferred.  Kahn

12 Decl., **Ex. J** (Summary of Inter-Institutional MHCB Referrals and Transfers for August 2008,

13 also Plaintiffs' Trial Exhibit P-587 in the overcrowding matter).  Of those 135 patients

14 transferred, 58 of them were transferred within 24 hours, with the average time waiting for

15 transfer of 2.04 days, as compared to 5.13 days nearly a year later.  Kahn Decl., **Ex. J**. at 4;

16 **Ex. H** at 3.  Thus, although more patients were referred to HC-POP for MHCB placement a year

17 ago, more were successfully transferred within required timeframes, and if not, were transferred

18 with shorter delays.  Access for individual prisons requiring assistance in finding an MHCB for a

19 prisoner in crisis appears to have worsened.

20    For all of these reasons, defendants must make greater efforts to accelerate all of the

21 MHCB projects.  Plaintiffs request that the defendants report on their efforts made to expedite

22 the long-delayed CMC 50-bed MHCB project, as well as the interim MHCB projects.

23 Additionally, defendants' Population Reduction Plan indicates that legislation has been drafted to

24

---

25 [4] The short-term and intermediate bed plan MHCB beds only include the SQ 17 beds and the
SAC MH-OHU 20 bed conversion, which is already heavily utilized as quasi-MHCB beds.

26 Docket 3592 at 11-12 of 87.  Additionally, defendants' Population Reduction Plan proposes
moving 50 MHCB beds from the CHCF to an undetermined location in Southern California.

27 Docket 3678-2 at 14 of 21, numbered item 14.  However, this project is not expected to come
online until at least FY 2012/13, a date projected after the completion of the CHCF.  *Id.*

28

1   accelerate projects funded by AB 900 appropriations.  Docket 3678-2 at 18-19 of 21.  Defendants

2   should be prepared to report on that status of efforts to enact this legislation and the potential

3   impact on the remaining projects funded by AB 900.

4         **C.    Short-Term and Intermediate-Term Projects**

5         Defendants broadly report that the majority of their short-term and intermediate term

6   projects are on schedule.  Docket 3656 at 30 of 41.[5]  Although defendants report that their

7   projects are on schedule, at least six of the major projects do not have a completion date, but

8   rather a wide range of completion dates.  (SATF EOP dual diagnosis beds to be completed within

9   180 to 365 days, Docket 3592 at 9 of 87; Solano EOP to be completed within 12 to 18 months,

10  *id.* at 10 of 87; SATF EOP SNY beds, 150 to 180 days, *id.;* SVSP EOP beds, 120-150 days, *id.* at

11  11 of 87; LAC EOP beds, 180-270 days, *id.*; SAC MHCB, 150-180 days, *id.* at 12 of 87.)

12        Some of the short-term projects are scheduled to come on line in September and October

13  2009, calculating implementation dates from the June 18, 2009 order approving the short and

14  intermediate term plan.  These include the expansion of the Corcoran EOP ASU (45 beds) by

15  September 16, 2009[6], the expansion of the SVSP EOP ASU (27 beds) between October 16 and

16  November 16, 2009; and Pilot Double Bunks at SVPP (10 beds) by November 16, 2009.  Docket

17  3592 at 10-13 of 87.  What is the status of the staffing plans and any necessary space retrofits for

18  these programs, including the Corcoran EOP expansion which defendants report is on schedule?

19  Docket 3656 at 30 of 41.  Given the budget crisis, furloughs and hiring freezes that remain in

20  effect, and the ongoing clinical vacancies at these prisons, it is unclear whether defendants will

21  be able to open these programs, as scheduled, with appropriate *new* clinical resources.

22  Defendants should be prepared to respond to this direct question:  have additional clinicians been

23  hired for these new programs or has the existing clinical staff been required to "cover" these new

24  _____

25  [5] Defendants report that one project—the conversion of 32 beds in the P-1 housing wing at CMF
    to acute care beds—is delayed three months because defendants neglected to include the time
26  required to seek funding in their previous timeline.  *Id.*

27  [6] Defendants' Population Reduction Plan, filed September 18, 2009, does not indicate whether
    this project was activated by September 16, 2009.  Docket 3678-2 at page 14 of 21 (numbered
28  item 13).

8

[314572-11]

1    patients?

2          In addition, there are 170 additional beds (150 EOP at SATF and 20 MHCB at SAC)

3    scheduled to come on line between November 15 and December 15, 2009.  Docket 3592 at 10,

4    12 of 87.  What is the status of these projects, including any treatment and office space retrofits

5    and hiring of staff that must be occur before these EOP and MHCB beds can be opened?

6          Plaintiffs request that defendants be directed to provide monthly updates to the Special

7    Master on the status of the short-term and intermediate-term projects, including construction of

8    treatment, office and housing, staffing plans for the new programs and hiring progress, and the

9    projected opening dates of these programs.  Defendants have assured the Special Master,

10   plaintiffs' counsel and this Court that staffing has been requested and allocated in the Budget Act

11   of 2009.  Docket 3658 at 3:8-11.  Plaintiffs request an update on program activation at the

12   September 22, 2009 hearing, including the status of hiring for those programs which are coming

13   on line this month and in the next few months.

14         **D.    Long-Range Bed Plan**

15         On May 26, 2009, defendants submitted their long-range bed plan, which relied heavily

16   on a plan to construct two Correctional Health Care Facilities ("CHCF") with the *Plata* Receiver

17   ("May 2009 Long-Range Bed Plan").  Docket 3592 at 18-19 of 87.  The May 2009 Long-Range

18   Bed Plan sought to close a projected gap in FY 2012/13 of 2,433 male beds and 62 female

19   mental health care beds, spread across all levels of care.  *Id.* at 18 of 87.  The two CHCFs would

20   have created 1,368 newly constructed mental health beds, including: 751 EOP beds, 167 MHCB

21   beds, 18 acute care beds, and 432 IFC-H beds.  *Id.* at 18 of 87.  Defendants' May 2009 Long-

22   Range Bed Plan further relied on 733 EOP beds at "Alternate Sites" that are "yet to be

23   determined" to close the total projected unmet bed need of 1,622 male EOP and 201 EOP-ASU

24   beds in FY2012/2013.  *Id.* at 18, 20 of 87.

25         On July 1, 2009, defendants informed the Court that they had declined to sign a

26   Memorandum of Understanding ("MOU") with the *Plata* Receiver for the construction of the

27   two CHCFs included in the May 2009 Long-Range Bed Plan.  Docket 3624 at 3 of 16.  At that

28   time, defendants indicated that, as a result, they were "readjusting" the funding for the long-

9

[314572-11]

1   range bed plan in an attempt to construct the beds via AB 900 appropriations and would inform

2   the court if they intended to change the number of beds in the May 2009 Long-Range Bed Plan.

3   Docket 3624 at 4.

4          On July 31, 2009, defendants submitted a revision to the May 2009 Long-Range Bed

5   Plan. Docket 3639. The July 31, 2009 update significantly revised the long-range bed plan,

6   which now includes only one CHCF, reducing the total number of mental health beds to be

7   constructed as part of the Receiver's projects from 1,368 to 642. *Id* at 5 of 6. Defendants'

8   September 1, 2009 update to the long-range bed plan confirmed that there have been "no

9   changes" to the long-range bed plan since the July 31, 2009 filing. Docket 3656 at 38 of 41.

10          On September 18, 2009, defendants in *Coleman* and *Plata* filed their Population

11  Reduction Plan. Docket 3678. The Population Reduction Plan describes a number of

12  construction projects for mental health care beds, including many of those previously proposed

13  as part of defendants' bed planning in this case. Docket 3678-2 at 11-14 of 21. Notably,

14  defendants' Population Reduction Plan describes a Northern Consolidated Care Facility with an

15  undisclosed number of mental health care beds, which would come online as soon as FY 2011/12

16  and presumably corresponds to the single CHCF described in defendants' July 31, 2009 bed plan

17  update. *Id.* at 12 of 21. However, the Population Reduction Plan notes that 50 mental health

18  crisis beds, that were previously located inside the CHCF, will now be sited in a "yet to be

19  determined" location in Southern California and will not come on line until Fiscal Year 2012-

20  2013. *Id.* at 14 of 21, numbered item 14. The Population Reduction Plan further describes the

21  renovation of a Department of Juvenile Justice ("DJJ") facility at a site in Northern California

22  that is yet to be determined and will include an undetermined number of EOP beds. *Id.* at 11 of

23  21, numbered item 6. Defendants also report that funding for the CHCF will require legislation

24  to redirect $1 billion in infill funding towards the CHCF. *Id.* at 10 of 21, n.10. The remainder of

25  the projects described in defendants' Population Reduction Plan appears to have been included in

26  prior *Coleman* bed plan submissions and have completion dates consistent with those filings.

27          Three months after the June 16, 2008 hearing before this Court, defendants still have no

28  concrete long-range bed plan to meet the substantial unmet mental health care bed need projected

                                                      10

[314572-11]

1   for FY 2013.  The single CHCF to be constructed with the *Plata* Receiver does not include any

2   EOP or EOP-ASU beds, noting that "alternative site renovations are proposed for all EOP and

3   EOP-ASU beds."  Docket 3639 at 5 of 6.  The number of "unsited" EOP beds has more than

4   doubled from 733 to 1,484.  Docket 3592 at 18, 20 of 87 (733 EOP beds already "unsited" in

5   May 2009 plan plus 751 that were to be sited in the CHFCs).  Although defendants' Population

6   Reduction Plan indicates that some unknown number of these unsited EOP beds will be located

7   at the Northern California DJJ facility, the site for this renovation project has not been

8   determined.  Moreover, the total number of beds projected for this facility, 1,133, would be

9   insufficient to account for all the unsited EOP beds even if all of these beds were dedicated to

10  EOP patients.

11         Given the acute projected long-range shortage of EOP beds and the current uncertain

12  and/or delayed status of the court-ordered EOP projects – the SAC EOP treatment space, the 72-

13  bed SVSP EOP ASU project, and the SVSP EOP 96 bed expansion and treatment space –

14  defendants' vague plan for 1,484 "unsited" EOP beds is unacceptable.  Creation of 1,484 EOP

15  beds will require the type of treatment space and housing retrofits currently funded and moving

16  ahead, albeit slowly, at CSP-Sacramento, Lancaster and Salinas Valley State Prison.  Similarly,

17  the Northern California DJJ facility will not be complete until FY 2013/14, and only if "requisite

18  approvals are obtained, there are no legal challenges, and there are no construction delays."

19  Docket 3678-2 at 11 of 21.  Defendants must be required to finalize the details for these EOP

20  beds in order to develop the necessary budgetary requests for submission in the Governor's

21  January 2010 Budget.

22         Even the remaining CHCF included in defendants' revised long-range bed plan is

23  seriously in doubt.  As with the MOU relied upon by defendants in their May 2009 Long-Range

24  Bed Plan, there is no concrete agreement or confirmation that any construction with the *Plata*

25  Receiver will move forward.  Docket 3639 at 5 of 6 (defendants most recent substantive long-

26  range bed plan update notes that defendants are continuing "to collaborate with the *Plata*

27  Receiver to identify ways to accommodate the healthcare bed needs of the CDCR inmates using

28  AB 900"); *see also* Docket 3678-2 at 12 of 21 (noting the facility would be located "at a location

11

1    in Northern California to be selected among several sites that have already been identified and

2    for which environmental documents are underway"). And as indicated in defendants' Population

3    Reduction Plan, funding for this project will require legislative action to amend AB 900 to

4    reallocate $1 billion in infill funds to this project. Docket 3678-2 at 10 of 21 n.10.

5          Most troubling, however, is the fact that the primary defendants in this case, including

6    Governor Schwarzenegger and CDCR Secretary Cate, are also aggressively and currently

7    seeking to terminate the *Plata* Receivership. *See Plata v. Schwarzenegger*, No. 09-15864 (9th

8    Cir. filed April 30, 2009). In addition to asserting that the Plata Court's appointment of a

9    Receiver was unlawful, defendants in both the district court and now on appeal contend that all

10   construction and construction planning by the Receiver must be terminated asserting that all such

11   activities are barred by federal law. Appellants' Opening Brief, *Plata v. Schwarzenegger*, No.

12   09-15864 (9th Cir. July 31, 2009) at 38-41. The *Plata* defendants have reiterated their arguments

13   that the Receiver must be prohibited, and construction and construction planning by the Receiver

14   must be terminated, as recently as last week. Appellant's Reply Brief, *Plata v. Schwarzenegger*,

15   No. 09-15864 (9th Cir. Sept. 10, 2009), at 6-19 (Receivership must be terminated) and 19-26

16   (construction and construction planning must be terminated), and at oral argument before the

17   Ninth Circuit on September 16, 2009.

18         The State cannot have it both ways. In light of the more than ten years of start and stop

19   bed planning combined with the State's on-and-off again reliance and rejection of the *Plata*

20   Receiver's construction projects, the already indefinite nature of the 1,484 "unsited" EOP beds,

21   and the length of time required to implement a long-range bed plan, defendants must be required

22   to develop and execute a concrete long-range bed plan. Defendants may not, in good faith, be

23   permitted to rely in this Court on the *Plata* Receiver's construction projects while continuing to

24   press for termination of the *Plata* Receiver and his construction projects. Defendants should be

25   required to develop the long-range plan in a manner that is not contingent on the future

26   participation of the *Plata* Receiver and to explain the anticipated impact on these long-range

27   plans should they prevail with respect to termination of the *Plata* Receiver.

28

**II.    DEPARTMENT OF MENTAL HEALTH (DMH) ISSUES**

    **A.    DMH'S Progress Filling 256 Beds at Atascadero State Hospital (ASH) By October 31, 2009**

One of the most urgent issues facing the *Coleman* class with respect to the Department of Mental Health (DMH) is the severe underutilization of beds at Atascadero State Hospital (ASH). There is a pending order requiring DMH to fill all 256 beds at ASH by October 31, 2009, and mandating at least 10 patient admissions per week. Docket 3613 at 3:3-4, 4:3-6. If defendants cannot meet the October 31, 2009 deadline, they must consider "transferring non-*Coleman* patients to Coalinga State Hospital." *Id.* at 4:9-12.

Defendants are in jeopardy of missing the October 31, 2009 deadline. In July 2009, ASH treated only 175 patients during the entire month, yet this was the greatest volume of patients treated, by far, since the beginning of the year. Kahn Decl., **Ex. K** (140 patients treated in January, 136 in February, 132 in March, 132 in April, 120 in May, and 132 in June) (Encl. 10 for those months). While ASH treated 175 patients in July 2009, the census on any given day was much lower since patients are also discharged every week. Defendants' snapshot of the July census at ASH, for instance, showed only 147 *Coleman* patients at the hospital, leaving 109 beds empty. *Id;* Kahn Decl., **Ex. D** (DMH Monthly Bed Utilization Report for July 2009). By August of 2009, the ASH census increased by only 22 patients, to 169. *Id.* at **Ex. E** (DMH Monthly Bed Utilization report for August 2009 showing 169 patients "Still at ASH"). Only seven patients were scheduled for admission for the first week of September. *Id.*

At this rate, defendants are unlikely to comply with this Court's order to fill all 256 beds by October 2009. With a current census of about 170 patients, DMH must admit at least 43 more *Coleman* patients than it discharges during the months of September and October in order to comply with the Court's order (e.g. to achieve a net gain of ASH beds). It appears highly unlikely at this point that defendants will achieve this goal.

One barrier to admissions at ASH is the arbitrary ban on patients who are Level IV, Close B custody (Clo B) or maximum custody (MAX) status. Kahn Decl., **Ex. L** at 2 (June 15, 2009 DMH Plan to Expedite Admissions to ICF Inpatient Care). Defendants committed to reevaluate

13

[314572-11]

1  these policies in June of 2009, but have not yet confirmed that the policy has been revised.  *Id.*

2  This policy results in the exclusion of *Coleman* class members from inpatient beds even if, for

3  example, they are housed in administrative segregation solely for their own protection.  There is

4  no valid custodial justification for this policy and its implementation likely results in

5  underutilization of ASH inpatient beds.

6      Plaintiffs request that defendants report at the September 22, 2009 hearing about their

7  ability to fill all 256 beds at ASH by October 2009.  The report should include all barriers to

8  meeting this goal, including staffing shortages or custodial barriers to admitting patients.

9  Defendants should also report whether additional beds can be made available at Coalinga to

10  accommodate additional class members who may be identified through the modified needs

11  assessment process.

12  **B.      Given the Current Waiting List of 565 Patients for Inpatient Intermediate
        Care Facility, High Custody Beds, Defendants Should Report to the Court**
13  **about the Feasibility of Expediting the CMF 64-Bed Project and the 116-Bed**
        **Conversion Project at SVSP**
14

15      The other pressing need facing DMH is the unprecedented waiting list for SVPP level IV

16  high custody ICF inpatient beds, which reached 565 in August of 2009.[7]  Kahn Decl., **Ex. E.**

17  Plaintiffs therefore reiterate our request (as stated in Section I.B.1 above) that defendants report

18  on any and all ways to expedite the 64-bed ICF project at CMF in order to bring it online faster

19  than the current November of 2012 completion date.  Plaintiffs also request that defendants

20  report on the conversion of the C5 and C6 units at SVSP, which will add 116 level IV ICF beds

21  by June of 2010, including any and all efforts they can take to expedite completion ahead of the

22  projected schedule.  These two projects, which will add a total of 180 level IV high custody ICF

23  beds, are badly needed to offset the staggering 500+ waiting list for these inpatient beds.

24

25

26  [7] This Court ordered defendants to convert the D5 and D6 units at SVSP a few years ago to
    temporarily house level IV high custody ICF patients.  Defendants' recent data regarding these
27  units, however, shows many more patients housed in D5 and D6 than there are beds.  The August
    2009 data, for instance, shows 79 patients housed in each of these units even though they each
28  have only 58 beds.  Defendants should explain this data during the hearing.

**CONCLUSION**

Defendants' long term bed plan has regressed from a specific plan with sited and identified projects to vague representations about amorphous projects.  This is unacceptable.

DMH and CDCR must accelerate admissions to inpatient psychiatric programs, remove custodial barriers and accelerate construction programs to address the critical needs of the many hundreds of prisoners waiting for the highest levels of psychiatric care.

Defendants have moved forward successfully on various short-term and intermediate projects but have encountered barriers that must be promptly addressed.  Funding for clinical staffing and construction funding is at risk for several key projects.  Continued close monitoring by the Special Master is required.


Dated:  September 21, 2009                              Respectfully submitted,

                                                                          ROSEN, BIEN & GALVAN, LLP


                                                                          By:  */s/ Michael W. Bien*
                                                                                  Michael W. Bien
                                                                                  Attorneys for Plaintiffs

[314572-11]