1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF CALIFORNIA

3                      ---O0O---

4     BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

5

6     RALPH COLEMAN, et al.,

7          Plaintiffs,

8     Vs.                          CASE NO. CIV. S-90-0520 LKK

9     ARNOLD SCHWARZENEGGER,
      et al.,

10

11         Defendants.

12     _____/

13

14

15

16                      ---o0o---

17

18               REPORTER'S TRANSCRIPT

19          TUESDAY, SEPTEMBER 22ND, 2009

20   RE:  STATUS CONFERENCE ON ACTIVATION SCHEDULES, SHORT-TERM

21        AND INTERMEDIATE PROJECTS, LONG-RANGE BED PLANS

22

23                      ---o0o---

24

25   Reported by:                CATHERINE E.F. BODENE,
                                 CSR. No. 6926

```
 1                          APPEARANCES

 2                           ---o0o---

 3

 4    FOR THE PLAINTIFF:

 5            ROSEN, BIEN & GALVAN, LLP
              315 MONTGOMERY STREET, TENTH FLOOR
 6            SAN FRANCISCO, CALIFORNIA  94104

 7            BY:  MICHAEL BIEN,
                   ATTORNEY AT LAW
 8

 9

10

11

12    FOR THE DEFENDANTS:

13             STATE OF CALIFORNIA, DEPT. OF JUSTICE
               OFFICE OF THE ATTORNEY GENERAL
14             130O I STREET
               SACRAMENTO, CALIFORNIA  95814
15
               BY:  DEBBIE VOROUS,
16                  DEPUTY ATTORNEY GENERAL

17

18

19

20                           ---o0o---

21

22

23

24

25
```

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

```
 1                    SACRAMENTO, CALIFORNIA

 2            TUESDAY, SEPTEMBER 22ND, 2009 - 1:30 P.M.

 3                          ---o0o---

 4            THE CLERK:  All rise.  Court is now in session.  The

 5    Honorable Lawrence K. Karlton presiding.

 6            THE COURT:  Please, be seated everyone.

 7            Good afternoon.

 8            THE CLERK:  Calling Civil Case S-90-0520, Coleman v.

 9    Schwarzenegger, et al.

10            THE COURT:  Counsel, please state your appearance for

11    the record.

12            MR. BIEN:  Good afternoon, Your Honor.  Michael Bien

13    on behalf of the plaintiff class.

14            MS. VOROUS:  Good afternoon, Your Honor.  Debbie

15    Vorous on behalf of the defendants.

16            THE COURT:  Actually, you both can retire for a

17    moment.  I will tell you that I have spent some time dealing

18    with the documents that the Court has received, and I want --

19    I will proceed in a few moments to read what's been prepared

20    in response to it all.

21            I have some questions of State counsel that I will

22    ask her to -- Ms. Vorous to answer when it comes to that

23    place.

24            Well, I think I better read what I wrote because

25    otherwise I'm going to say things that I'll be sorry for.
```

2

1          Good afternoon, folks:

2          This matter is on for a status conference on

3     defendants' activation schedules, short-term and intermediate

4     projects approved by the Court at its June 18th, 2009 order,

5     and for further hearing on defendants' nonexistent long-range

6     bed plan.

7          Defendants have filed three reports in this matter

8     since the last hearing in June of this year.  Plaintiffs have

9     filed two responses to two of defendants' reports, and

10    defendants have replied to one of plaintiffs' responses.  The

11    Court has received and read all of the documents.

12         Defendants' latest report reflects completion of

13    three projects ordered by the Court over the past seven years

14    for which activation schedules were approved in June.

15         Defendants' reports also reflect completion of three

16    of the short-term and intermediate projects approved by the

17    Court in June, and all but one of the remaining short-term

18    and intermediate projects are on schedule, and that they

19    require a three month extension for one of the short-term and

20    intermediate projects.

21         The progress on most of the court-ordered short-term

22    and intermediate projects is encouraging, and the people

23    responsible for making that happen are to be commended.  And

24    I do commend them.

25         The Court expects, however, the same level of effort

3

1    and diligence will continue with respect to those projects

2    and that they will all be completed in a timely manner and,

3    where possible, on an accelerated schedule.

4        The focus of this hearing must be on those areas in

5    which defendants are not in compliance with the Court's

6    orders.  In that regard, in their September 21st, 2009

7    response to defendants' update to their bed planning,

8    plaintiffs pose a series of questions that defendants must

9    answer.

10       The Court will identify those questions now and will

11   direct defendants to file within 30 days detailed written

12   responses.

13       To the extent that any response to the specific

14   questions the Court will now describe is set forth in an

15   activation schedule that has been or will be provided to the

16   Special Master pursuant to the Court's June 18th, 2009 order,

17   defendants may file the appropriate activation schedule.

18       Plaintiffs have raised questions with respect to

19   three court-ordered projects:  The EOP Treatment and Office

20   Space Project at California State Prison Sacramento, the

21   72-bed EOP ASU Project at Salinas Valley State Prison, and

22   the related EOP Treatment Space Project at Salinas Valley.

23   Defendants shall report on the status of construction funding

24   and alternative funding sources for these three projects.

25       Specifically, defendants shall identify all

4

1    possible -- all possible sources of funding for each of these

2    projects and every person who is responsible for any step

3    necessary to secure such funding.

4         This will all be incorporate in a formal order which

5    I will issue in due course.

6         Defendants shall also identify the person or persons

7    with whom final authority for funding these projects rests.

8         In addition, with respect to the 72-bed project at

9    Salinas Valley, defendants shall report on all alternatives

10   available to effect compliance with the order to create these

11   beds and shall identify every person who is responsible for

12   any step necessary to create these beds.

13        With respect to the Salinas Valley EOP Treatment

14   Space project, defendants shall report on any and all steps

15   that may be taken to expedite this project to offset the

16   delay caused by the Joint Legislative Budget Committee's

17   refusal to fully fund these two projects.

18        Defendants shall identify all persons who have

19   authority to expedite any part of this project and which part

20   or parts of the project may be expedited.

21        I'm going to stop reading for a moment to just keep

22   reminding everybody that we now have five -- we have more

23   than 500 people on the waiting list.

24        It is intolerable.

25        Plaintiffs also raise questions with respect to the

5

1   status of staffing and space retrofitting for the short-term

2   projects that are scheduled to come on-line for the rest of

3   the year.

4        To the extent that staffing for these projects is not

5   covered by the staffing allocation plan that defendant will

6   file on September 30th, 2009, defendant shall report on the

7   status of staffing for all of those projects due to come

8   on-line this year.  Defendants shall identify all persons

9   responsible for staffing these projects.

10       Defendants are already required to report on any

11   delays in these projects, and the Court will not require any

12   additional reporting on the status of space retrofitting that

13   may be required to complete them.

14       Now the Court turns to the truly startling

15   information being reported from the modified needs assessment

16   that has been ongoing for most of the year.

17       As a result of that assessment, which is not yet

18   complete, there are 565 Coleman class members who are waiting

19   to be admitted to an intermediate care facility.  They are

20   waiting for inpatient care for serious mental illness.

21       Two of the projects under way create an additional

22   180 intermediate care beds – the 64-bed project at California

23   Medical Facility and the conversion of the C5 and 6C units at

24   Salinas Valley.

25       In the June 18th, 2009 order, defendants were

6

1  directed to accelerate any of the court-ordered projects to

2  the extent that they could.  The need for inpatient beds is

3  now even more urgent, if that is possible, than it was at the

4  time of the June hearing.

5      Accordingly, in the report to be filed pursuant to

6  this order, defendant shall describe with specificity any and

7  all steps that might be taken to expedite completion of these

8  two projects.  Defendants shall identify all persons who have

9  authority to expedite any part of this project and which part

10 or parts of the project may be expedited.

11     Plaintiffs raise similar questions with respect to

12 the possibility of expediting the 50 bed mental health

13 crisis -- the 50-bed mental health crisis bed unit at

14 California Men's Colony.

15     Defendants have already been ordered to accelerate

16 this project if possible, and the Court expects defendants to

17 comply with that order.

18     In the June 18th, 2009 order, defendants were

19 directed to admit Coleman class members to ASH at a rate of

20 not less than ten per week until all 256 beds are filled by

21 Coleman class members not later than October 31st, 2009.

22     The Special Master reports a specific upward

23 trajectory in admissions to ASH since June.

24     Miss Vorous, will you come forward.

25     Will you please inform the Court whether they have

7

1  been admitting Coleman class members to ASH at the rate

2  required by the June 18th, 2009 order?

3       MS. VOROUS:  Your Honor, DMH has been admitting a net

4  number of ten inmates per week since the June order.  In the

5  beginning the numbers were higher, going up to 13, 14.  The

6  last two weeks there has been a reduction in admissions to a

7  number below ten.  And at this point, as of the week

8  beginning September 21st, the Coleman patient consensus at

9  ASH is 187.

10       THE COURT:  As far as you can tell -- Well, 187 is an

11  encouraging number from what we had.

12       MS. VOROUS:  Yes.

13       THE COURT:  But it's a fairly long piece to 256.

14       Can you tell me, do you know, does anybody know, are

15  the defendants on track to have all 256 beds filled by

16  October 31st?

17       MS. VOROUS:  At this point, Your Honor, yes.

18  Although, there has been a slow down.  And as a result we do

19  want to bring two things to the Court's attention.

20       THE COURT:  Yep.

21       MS. VOROUS:  One is my understanding that the number

22  of referrals from the UNA Project have decreased.

23       THE COURT:  I'm sorry.  The number of?

24       MS. VOROUS:  The number of referrals from the Unmet

25  Needs Project have decreased, yet there are additional

8

1   facilities that will be visited that referrals will be

2   generated from during this upcoming October.  For instance,

3   one of the facilities, my understanding, is CMC, that there

4   is an expectation there will be additional referrals coming

5   from that facility.

6        The other issue that is outstanding relates to a

7   pilot project that the defendants have been working very

8   diligently and very hard on bringing on-line.  It's my

9   understanding that that pilot project was signed this morning

10  by the Undersecretary of CDCR.

11       THE COURT:  This is the project in which it is

12  possible that some Class IV inmates will be housed at ASH?

13       MS. VOROUS:  Yes.  The pilot allows the review on a

14  case-by-case basis.

15       THE COURT:  I understand.

16       MS. VOROUS:  That project has been -- excuse me.

17       The pilot has been signed by the Undersecretary of

18  CDCR, returned to the regulations branch of CDCR for

19  submission to the Administrative Law Office for their notice

20  period.

21       THE COURT:  I was under the impression that that had

22  already gone -- apparently I'm wrong -- had already gone to

23  the Administrative Office or whoever it is that's got to

24  approve the regulation.  That's wrong?  He just signed it

25  today?

9

1          MS. VOROUS:  Well, the Undersecretary of CDCR just

2     signed it today, yes.

3          THE COURT:  So that means it can't be referred until

4     he signs it.

5          MS. VOROUS:  That's correct.

6          So the next step will be to forward it to the Office

7     of Administrative Law for their review process.  Once that is

8     approved then the defendants do expect there will be a number

9     of inmates off of the wait list for Salinas Valley that will

10    be referred to ASH and be both clinically and custody

11    appropriate for referral into ASH.

12         At this point, like I said, defendants expect the

13    project to go forward in a timely fashion.  We've made the

14    concerns known to the Special Master team with respect to the

15    last two weeks that the numbers have reduced.  And to the

16    extent that it continues, we will consult further with the

17    Special Master on any steps that need to be taken.

18         THE COURT:  My guess and my golly, and you might tell

19    me if I'm hopefully wrong, is that the regulation is unlikely

20    to be approved, or whatever the Office of Administrative

21    Regulations does, before the October 31st deadline?

22         MS. VOROUS:  It's my understanding, Your Honor, that

23    defendants are looking at the potential of accelerating that

24    process.  At this point it's, I believe, a 30-day waiting

25    period so that assumption is correct.

10

1          THE COURT:   Yep.

2          MS. VOROUS:   If I may, I would also like to make one

3    clarification.

4          THE COURT:   Sure.

5          MS. VOROUS:   In response to the plaintiffs' comments

6    that were filed yesterday afternoon concerning the number of

7    inmates on the Salinas Valley waiting list, I asked DMH to

8    look at that number and what appeared to be an apparent

9    discrepancy.

10         The response I received from DMH was that the actual

11   waiting list is 465 not 565.  I still realize that's a large

12   number, but with respect I wanted to make sure for the

13   record.

14         THE COURT:  Mr. Bien, where does your 565 number come

15   from?

16         MR. BIEN:  They all came from DMH documents.  We got

17   two different sets of reports.  So we have a list of names

18   that they give us, and we counted them up.

19         THE COURT:  Let me tell you, there is no occasion for

20   satisfaction if the number is 465.  565 is simply

21   mind-boggling.  You know, Miss Vorous, you're new to this so

22   you may not understand, 465 is hardly a number that we ought

23   to celebrate.

24         You may be seated.

25         Let me now turn to the final issue before the Court:

11

1          The absence of a concrete long-term plan for a

2     sufficient number of beds to provide necessary care to

3     Coleman class members.

4          I asked my Special Master just before we came out how

5     long we've been looking for a long-term plan.  And of course

6     he wasn't certain either.  It is more than three years --

7     more than three years.

8          Defendants have been ordered for years to develop a

9     long-range bed plan.  Both prior to and since the hearing in

10    June, defendants have represented to this Court that they

11    will provide enough mental health beds to meet, by the year

12    2013, the need for such beds identified by Navigant

13    Consulting.

14          In their latest status report, they represent that

15    they will do that by building one new Correctional Health

16    Care Facility and by upgrading several existing facilities.

17          In this court, defendants represent that they will do

18    that in conjunction with the Plata Receiver.  In the

19    United States Court of Appeals for the Ninth Circuit,

20    defendants argue that the Plata Receivership and the

21    Receiver's construction planning should be terminated.

22          I just want everybody to think about that.

23          Miss Vorous, I tell you, and I don't mean this to be

24    personal, but I tell you that counsel appearing before this

25    Court have an obligation under Rule 11 of the Federal Rules

12

1   of Civil Procedure to ensure that the information contained

2   in the documents filed with this Court is not being presented

3   for any improper purpose and is well-grounded in both law and

4   fact.

5          Many of your colleagues seem to not understand that

6   whatsoever.  And I want to make clear that's what's expected

7   in this court.

8          It is now time for defendants -- It's a good thing I

9   wrote this down because I can read it and not say something

10   I'll be sorry for later.

11          It is now time for defendants to flesh out the

12   long-range plan that they have tendered at least three times

13   for the Court's approval.

14          Within 45 days from today, defendants shall file with

15   the court a detailed plan for completion of the Correctional

16   Health Care Facility and for each of the alternative site

17   renovations that are planned to create EOP and EOP

18   administrative segregation beds.

19          The plan shall be accompanied by a detailed schedule,

20   including a date certain, for completion of the Correctional

21   Health Care Facility and each of the alternative site

22   renovations, a description of every step necessary to

23   complete each of the projects included in the long-range

24   plan, specific timetables by which each step shall be

25   completed, a list of every state agency involved in the

13

1    project, the names and addresses of all persons responsible

2    for approval and/or execution of each stage of the project,

3    and a timetable for certification to the Special Master with

4    the action or actions taken and whether the project remains

5    on schedule.

6         I want to start by saying that I was going to give

7    you 30 days, but at the request of my Special Master, who

8    knows the difficulties of doing these things, I've extended

9    it to 45 days.

10        The timetables for completion of each step described

11   in the plan shall be developed in such a way that all

12   projects in the long-term plan will be fully staffed and

13   activated by the 2013 target date defendants have

14   established.

15        There will be no -- Let me repeat, there will be no

16   extensions.  Plaintiffs will have 20 days thereafter to file

17   a response to the detailed plans.

18        Defendants shall identify any waivers of state law

19   that may be required to complete the plan, either at the time

20   the plan is filed or as the need for such waiver arises.  The

21   plaintiffs shall file requests for any such waiver in a

22   timely fashion.

23        It isn't fair to ask the State to ask the Court to

24   waive state law.  That's inappropriate.  I won't ask the

25   State to do that.

14

1          I will ask the State to tell me what you need -- not

2     what you need -- what needs to be done to make the timetable

3     work, and then the plaintiff will get off the dime and will

4     file a request with this Court.

5          I'm sorry.

6          Finally, I'm going to tell you folks -- No, I'm not

7     going to tell you.

8          Finally, the Court expects that the defendants will

9     comply fully with this order.  In the event they do not, the

10    Court will set an evidentiary hearing at which time the Court

11    will hear testimony from persons with knowledge of the reason

12    or reasons for such noncompliance and from any party or agent

13    of any party who has authority to ensure compliance with this

14    order but who has failed to do so.

15         We've been at this 14 years, folks.  468 or 565 or

16    whatever, there are insufficient beds to treat people who are

17    desperately ill.

18         The Court will not continue to tolerate that.

19         Court will stand in recess.

20         Yes, Mr. Bien.

21         MR. BIEN:  Your Honor, I feel it is important, based

22    on your statements, to bring to your attention unfortunately

23    some bad news that came to our attention last night from

24    defendants.

25         I thought they were going to raise it with you today.

15

1  Perhaps they did through the Special Master.  But one of the

2  short-term projects that defendants represented was on

3  schedule is apparently delayed, and counsel notified us of

4  this yesterday.

5       The Corcoran 45-bed EOP ASU project, which as of the

6  September 1 report was on schedule, which is why we told you

7  in our pleadings that everything was on schedule, is

8  apparently delayed.

9       And we're concerned that defendants are running into

10  delays for these short-term projects also.  And we'd like, if

11  possible, if Miss Vorous would address that because we think

12  the Special Master may need to look at these too.

13       THE COURT:  Miss Vorous.

14       MR. BIEN:  The second point is -- I guess I'll take

15  the Court's lead -- is as to the DMH, as to this regulation

16  that supposedly keeps people out of ASH and the law that

17  needs to be changed, we will file with the Court promptly a

18  request to waive any such law.

19       We've asked counsel to tell us what law this is, and

20  the law that they refer to does not provide --

21       THE COURT:  I always understood it was an internal

22  regulation adopted by ASH because they did not have the

23  custodial mechanisms to deal with Level IV.

24       MR. BIEN:  We've never seen such regulation or law,

25  but we can ask -- we will promptly file something because we

16

1    think lives are at risk so that this is waived so they can

2    move forward.

3            THE COURT:  Ma'am, let's take up the first item which

4    is apparently there's now a further delay even on the

5    short-term projects which was -- As my Special Master kept

6    telling me:  Judge, we're doing well, we're moving along.

7    Apparently that's not right either.

8            MS. VOROUS:  Your Honor, we did notify the Special

9    Master team yesterday as well as plaintiffs' counsel

10   yesterday evening with respect to one of the short-term

11   projects, and that is the Corcoran 45-bed EOP ASU Project.

12           Even though it's been delayed, it's only been delayed

13   for approximately six to seven weeks.  And the reason it is

14   delayed is because of a Section 6 funding issue.

15           Initially, defendants anticipated that the

16   construction costs associated with that project would be less

17   than $100,000.  They recently, just shortly before they were

18   ready to activate it, learned that the costs were going to

19   exceed $100,000 and were required to notify --

20           THE COURT:  I understand.

21           MS. VOROUS:  We do anticipate filing a formal notice

22   with the Court of that delay.  The reason I haven't brought

23   it up yet is because Your Honor had not given us a chance yet

24   to make any comments.

25           THE COURT:  I understand.

17

1          Is there anything else that I ought to know that I

2     don't know?

3          MS. VOROUS:  No.  All the other projects are on

4     scheduled or have been completed.

5          With respect to -- Just to note, Your Honor's order

6     requires that defendants notify the plaintiffs and the

7     Special Master team and then provide formal notice to the

8     Court.  This is the first project where there has been such a

9     delay.

10          THE COURT:  I understand.

11          You want to talk to me about Mr. Bien's assertion

12     that he can't find whatever regulation or law that you're

13     relying on which bars Level IV -- as a general matter Level

14     IV inmates for ASH placement.

15          MS. VOROUS:  Your Honor, I'm not prepared to indicate

16     a regulation at this point off the top of my head.

17          THE COURT:  All right.

18          MS. VOROUS:  What I can say is that ASH is not built

19     for Level IV custody.  They're built for a lower level

20     custody, I and II level, not higher Level III and IV.  So

21     aside from whatever regulation that would bar it, they're not

22     set up to house that type of population.

23          To the extent that Your Honor would like, I would be

24     happy to provide whatever regulations that exist that relates

25     to that level of custody.

18

1          THE COURT:  You might do that.  Although, it is my

2     understanding, Ms. Vorous, that the regulation which has now

3     apparently been transmitted to the Administrative Law Office

4     simply permits ASH folks on an individualized basis to

5     admit -- to study and admit Level IV inmates.

6          Am I correct?

7          It doesn't at all open it up for Level IV generally.

8          MS. VOROUS:  My understanding is it does not open it

9     up generally.  The two classes that are addressed in the

10    regulation that we've been focusing on in connection with the

11    Unmet Needs Project are the closed B and max custody.  To the

12    extent that those are Level IV, then they would be

13    considered.

14         THE COURT:  Thank you, ma'am.

15         I don't think there is anything else to be addressed.

16    Well, let me ask.  Plaintiff, is there anything else that

17    needs to be addressed?

18         MR. BIEN:  No, Your Honor.

19         THE COURT:  Defendants?

20         MS. VOROUS:  No, Your Honor.

21         THE COURT:  Stand in recess.

22         (Off the record at 02:00 PM.)

23                         ---o0o---

24

25

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

```
 1                      REPORTER'S CERTIFICATE

 2                           ---o0o---

 3
     STATE OF CALIFORNIA  )
 4   COUNTY OF SACRAMENTO )

 5


 6
             I certify that the foregoing is a correct transcript
 7
     from the record of proceedings in the above-entitled matter.
 8


 9

10               IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California on this 25th day of
11   SEPTEMBER, 2009.

12


13


14   /S/_Catherine E.F. Bodene_____
             CATHERINE E.F. BODENE, CSR NO. 6926
15           Official United States District Court Reporter

16

17

18

19

20

21

22

23

24

25
```