1   EDMUND G. BROWN JR.
    Attorney General of California
2   JONATHAN L. WOLFF
    Senior Assistant Attorney General
3   JEFFREY STEELE, State Bar No. 124668
    DEBBIE J. VOROUS, State Bar No. 166884
4   Deputy Attorneys General
       1300 I Street, Suite 125
5      P.O. Box 944255
       Sacramento, CA 94244-2550
6      Telephone: (916) 324-5345
       Fax: (916) 324-5205
7      E-mail: jeff.steele@doj.ca.gov

8   Attorneys for Defendants

9                  IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11                        SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM PC |
| Plaintiffs, | **DECLARATION OF DR. ROBERT CANNING IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY THE SPECIAL MASTER'S EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION IN CALENDAR YEAR 2007** |
| v. | |
| **ARNOLD SCHWARZENEGGER, et al.,** | |
| Defendants. | |

I, Robert Canning, declare:

1.     I am an Acting Chief Psychologist for the California Department of Corrections and Rehabilitation, and currently serve as Chief of Clinical Practices, and Suicide Prevention Coordinator.  I have served as the Department's Suicide Prevention Coordinator since September 26, 2005.  I was previously employed as Staff Psychologist at the California Medical Facility from August 1, 2001 to September 23, 2005.  From April 1, 1998 through June 30, 2001 I was employed as a staff psychologist by the Department of Psychiatry and Behavioral Sciences,

1

1  University of California Davis Medical Center, Sacramento, CA. I was granted a Ph.D. in

2  Clinical Psychology from the Pacific Graduate School of Psychology in Palo Alto, CA, in June,

3  1993. In 1995 I completed a National Institute of Mental Health training fellowship in

4  Psychiatric Epidemiology at the Western Psychiatric Institute and Clinic in Pittsburgh, PA. I

5  have been licensed to practice clinical psychology in California since February, 1997. My job

6  duties include analyzing data regarding inmate suicides, including suicide reports, Unit Health

7  Records of those inmates who have committed suicide, and Quality Improvement Plans, and any

8  other available data. In addition, I have analyzed long-term trends pertaining to inmate suicides.

9  I have personal knowledge of the facts stated in this declaration and if called to testify to those

10  facts could and would do so.

11      2.    There has been no consistent pattern of suicide deaths in administrative segregation

12  units in the last ten years of the *Coleman* remedial phase. The percentage of suicides taking place

13  in administrative segregation units has varied from a high of 69 percent of total suicides in 2004

14  to a low of 24 percent in both 1998 and 2002. The numbers utilized in the charts at pages 2-3 of

15  the Points and Authorities accompanying this motion are taken from data that was compiled as

16  part of my duties as Suicide Prevention Coordinator, and are accurate. (The data is attached as

17  Exhibit B.) The percentage occurring in 2004 appears to be an outlier when compared to the

18  average percentage for the ten-year period. It is in fact greater than two standard deviations

19  beyond the mean for the percentage of suicides in administrative segregation units. As such, it

20  will distort calculated trend lines. When 2004 is removed from the data, the trend in percentage

21  of suicides occurring in administrative segregation is even more neutral. Additionally the choice

22  of length of analysis (one, two, three, five, or more years) may lead to mistaken conclusions about

23  longer term trends (the ten-year trend, for instance). Suicides percentages in CDCR's

24  administrative segregation units averaged less than forty percent over the ten year period. This is

25  substantially lower than percentages published for the Federal Bureau of Prisons over similar

26  periods.

27  3.    I am aware that the Special Master's Report on Suicides Completed in the California

28  Department of Corrections and Rehabilitation in Calendar Year 2007 (the Report), authored by

1    Dr. Raymond Patterson, criticizes CDCR for failing to provide the Unit Health Record for an

2    inmate who committed suicide in 2006.  This is a reiteration of a criticism made in the Special

3    Master's 2006 report, and it is unfair.  The *Plata* Receiver began scanning Unit Health Records in

4    2006, so that they would be available electronically.  CDCR forwarded to Dr. Patterson the

5    electronic record, unaware that the *Plata* Receiver had inadvertently not scanned all the records.

6    When CDCR found out, via the draft 2006 suicide report, that Dr. Patterson did not have all the

7    records, CDCR located the hard copies of the records and provided them.  Dr. Patterson was

8    notified of these events in 2007 and provided with the complete mental health records for his

9    review.

10        4.    I am aware that the Report criticizes CDCR for failing to perform cardiopulmonary

11   resuscitation (CPR) on an inmate who leapt to his death from a fifth story window.  Inmate Y

12   leaped 50 feet from a window to his death on the pavement below.  When he was discovered 28

13   minutes later, his skull was cracked open, and pieces of his brain lay on the pavement nearby.

14   This information was provided to Dr. Patterson in the suicide report.  To criticize CDCR for not

15   performing CPR on an inmate who quite obviously was beyond revival, is to require a futile act

16   for the sake of adherence to bureaucratic rules.

17        I declare under penalty of perjury that the foregoing is true.  Executed this 1st day of

18   October, 2009, at Sacramento, California.

19

20   *Robert D Canning, PhD*
     ROBERT CANNING, Ph.D.

21

22

23

24

25

26

27

28

                                              3