1
2
3
4
5
6
7

8                    IN THE UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10                              SACRAMENTO DIVISION
11

12  | **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM PC |
13  | Plaintiffs, | **(PROPOSED) ORDER GRANTING DEFENDANTS' MOTION TO MODIFY THE SPECIAL MASTER'S EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION IN CALENDAR YEAR 2007** |
14  | v. | |
15  | **ARNOLD SCHWARZENEGGER, et al.,** | |
16  | Defendants. | |

     On October 1, 2009, Defendants filed their motion seeking modification of the Special Master's expert's report on inmate suicides in the California Department of Corrections in 2007. Plaintiffs have filed their response, and Defendants their reply to that response.

     Good cause presented to the Court and good cause appearing, the Court grants Defendants' motion. The report is ordered adopted by the Court, with the following modifications:

     1.    The second paragraph of Section III, page 4, of the Report will read as follows:

     On October 2, 2006, CDCR submitted its Plan to Address Suicide Trends in Administrative Segregation Units, and on December 1, 2006, it submitted its amended version. This plan was ordered by the *Coleman* court on June 7, 2006, following a set of recommendations from the *Coleman* Special Master to reduce suicides in CDCR administrative segregation units. While development and

1

1  implementation of the Plan remained ongoing at the end of 2006, CDCR had begun taking steps in its implementation.

2.   The following paragraph, on page 14 of the Report, is stricken:

2007 was not the first year for which the Department failed to comply with deadlines for completion and submission of required documentation. Following distribution of the Special Master's expert's 2006 report on suicides in the CDCR in draft form, defendants stated in their response that they had failed to provide any of the mental health records within the Unit Health Record for one of the inmates whose suicide in 2006 was reviewed and included in the draft report. In the final version of this reviewer's Report on Suicides in the CDCR in 2006, Defendants were admonished that they "must ensure that no such lapses in their production of information occur again. Review of incomplete records can lead to erroneous conclusion and recommendations, and ultimately to allowing deficiencies in the defendants' suicide prevention efforts to remain undetected and uncorrected." *Report on Suicides Completed in the California Department of Corrections and Rehabilitation in Calendar Year 2006*, filed 9/12/08, at 1, n.1. Unfortunately, that admonition must be repeated, and failure to heed it in the future may result in a recommendation for an order from the court.

3.   The sentence on page 12 of the Report that reads, "While this reviewer found that SRACs were completed appropriately in the majority of the cases, there were a number in which SRACs had resulted in a determination of 'no risk'" is revised to state, "While there were some instances in which SRACs resulted in a determination of 'no risk,' SRACs were completed appropriately in the majority of cases."

4.   The paragraph on page 14 of the Report that formerly read:

The Department continued its effort to reduce suicide deaths by providing training on CPR requirements and on the suicide review process. However, it was apparent that CPR was not performed in a timely and/or appropriate manner in seven, or 22 percent, of the 34 suicides. This rate of non-compliance is lower than it was in calendar year 2006, when there were 17 such instances among 43 suicides, for a non-compliance rate of 40 percent.

is revised to read as follows:

The Department continued its effort to reduce suicide deaths by providing training on CPR requirements and on the suicide review process. CPR was performed in 27 of the 33 suicides for which CPR was arguably appropriate in 2007, for a compliance rate with Program Guide requirements of 81 percent. In 2006, CPR was performed in 26 of 43 suicides, for a compliance rate of 60 percent.

5.   The last paragraph on page 16 of the Report, which formerly read, "Although 30-minute welfare checks and confidential screens for inmates newly admitted to administrative segregation were features of the defendants' 2006 Plan to Address Suicide Trends in

///

2

Administrative Segregation, circumstances of at least one suicide in 2007 raised questions about implementation of this policy[,]" is stricken.

      6.    With respect to the "Case Reviews" section of the Report, the following modifications are ordered:

          A.    The words on page 66, "These failures included his precipitous discharge from ASH after he had commited an assault against other inmates . . ." are stricken. Accordingly, the reference to this language in footnote 3 on page 66 is stricken as well.

          B.    The following language on page 66 is stricken: "However, despite requests to have the documents implementing the corrective actions sent to this reviewer, the Special Master's Expert, only the CDCR responses were received by 3/26/09, as reflected above in the responses from the directors on 8/14/07." Accordingly, the reference to this language in footnote 4 on page 66 is stricken as well.

          C.    The following language is stricken from page 85 of the Case Reviews.

> Based on this reviewer's examination of the documents provided, it appears that the presumption by staff was that this individual [Inmate G], with diagnoses of several Personality Disorders and history of assessment by staff as being "manipulative," somehow suggested that he could not also have become seriously depressed and in need of intensive re-evaluation by psychiatry as well as the overall treatment team. This presumption appears to suggest that personality disorders and serious psychiatric disorders such as Major Depression are mutually exclusive. They certainly are not.

          D.    The reference to Inmate W's suicide as being foreseeable and preventable, found on page 182 of the Case Reviews, is stricken.

          C.    The reference to Inmate X's suicide as being preventable, found on page 186 of the Case Reviews, is stricken.

IT IS SO ORDERED.

Dated: _____            _____
                                                          Lawrence K. Karlton
                                                          United States District Court Judge

3