1   PRISON LAW OFFICE
    DONALD SPECTER, Bar No. 83925
2   STEVEN FAMA, Bar No. 99641
    ALISON HARDY, Bar No. 135966
3   SARA NORMAN, Bar No. 189536
    REBEKAH EVENSON, Bar No. 207825
4   1917 Fifth Street
    Berkeley, CA  94710
5   Telephone:  (510) 280-2621

6   K&L GATES LLP
    JEFFREY L. BORNSTEIN, Bar No. 99358
7   EDWARD P. SANGSTER, Bar No. 121041
    RAYMOND E. LOUGHREY, Bar No. 194363
8   4 Embarcadero Center, Suite 1200
    San Francisco, CA  94111-5994
9   Telephone:  (415) 882-8200

    THE LEGAL AID SOCIETY –
10  EMPLOYMENT LAW CENTER
    CLAUDIA CENTER, Bar No. 158255
11  600 Harrison Street, Suite 120
    San Francisco, CA  94107
12  Telephone:  (415) 864-8848

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
ERNEST GALVAN, Bar No. 196065
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
MARK FEESER, Bar No. 252968
315 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone: (415) 433-6830

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111
Telephone: (415) 393-2000

13  Attorneys for Plaintiffs

14          IN THE UNITED STATES DISTRICT COURTS
15          FOR THE EASTERN DISTRICT OF CALIFORNIA
            AND THE NORTHERN DISTRICT OF CALIFORNIA
16     UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
17       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

18  RALPH COLEMAN, et al.,                     No. Civ S 90-0520 LKK-JFM P

19          Plaintiffs,                        **THREE-JUDGE COURT**

20      v.

21  ARNOLD SCHWARZENEGGER, et al.,

22          Defendants

23  MARCIANO PLATA ,et al.,                    No. C01-1351 TEH
                                               **THREE-JUDGE COURT**
24          Plaintiffs,

25      v.                                     EVENSON DECLARATION IN SUPPORT
                                               OF PLAINTIFFS' RESPONSE TO
26  ARNOLD SCHWARZENEGGER, et al.,             DEFENDANTS' POPULATION
                                               REDUCTION PLAN AND APPLICATION
27          Defendants.                        FOR ORDER TO SHOW CAUSE RE
                                               CONTEMPT
28

I, Rebekah Evenson, hereby declare:

1.      I am a member of the Bar of this Court and a staff attorney at the Prison Law Office, one of the counsel of record for the plaintiffs in this action. I have personal knowledge of the matters set forth herein and if called as a witness I could and would competently so testify.

2.      Defendants have failed to comply with this Court's August 4 Opinion and Order (*Plata* Doc. No. 2197) ("August 4 Order") in the following respects:

3.      The order requires defendants to submit a plan that accomplishes a reduction to 137.5% of design capacity in two years. August 4 Order at 183. Defendants' plan would reduce the prison population to 166% of design capacity in two years, and would *never* achieve 137.5% of design capacity. Def. Pop. Reduction Plan, Exh. A at 15.

4.      The order requires defendants' plan to include six-month benchmarks. August 4 Order at 183. Defendants' plan has one-year benchmarks, tied to the Fiscal Year.

5.      The order requires defendants to advise the Court whether any population reduction measures require waiver of state law. August 4 Order at 183. Defendants refused to identify any state law barriers to reducing the prison population. Def. Pop. Reduction Plan, Exh. A at 16 n.11.

6.      Attached hereto as Exhibit A is a true and correct copy of Timm Herdt, *State Prison Plan Will Fall Short of Judges' Order*, Ventura County Star, September 16, 2009, available at http://www.venturacountystar.com/news/2009/sep/16/state-prison-plan-will-fall-short-of-judges/?printer=1/ (site last visited October 8, 2009). In this article, CDCR's Deputy Chief of Staff is quoted as stating that defendants' "plan will not meet the court's requirements . . . I think we recognize we may be held in contempt."

7.      Attached hereto as Exhibit B is a true and correct copy of Matthew Cate, *Prisons: Its Time to Reform and Reduce the Population*, Capitol Weekly, August 13, 2009, available at http://www.capitolweekly.net/article.php?_c=ybr1t2urmkdejf&xid=y6x62x72akddqo&done=.ybr1ub1utqweuz (site last visited Oct. 8, 2009). In this article, defendant Cate trumpets the

1   Governor's plan to reduce the prison population "by up to 27,000 inmates this year, and 37,000

2   through 2009-10." He urges the legislature to adopt the proposals: "[n]ow is the time for

3   elected officials and law enforcement to come together and pass criminal justice reforms that

4   will safely reduce our inmate population."

5         I declare under penalty of perjury under the laws of the State of California and of the

6   United States of America that the foregoing is true and correct, and that this declaration was

7   executed October 8, 2009, in Berkeley, California.

8

9

10                                          _____/s/_____
                                              Rebekah Evenson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVENSON DECL. ISO PLFS' RESP TO DEF. POP. RED. PLAN & APP. FOR OSC RE CONTEMPT,
NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

EXHIBIT A



# State prison plan will fall short of judges' order

By Timm Herdt
Wednesday, September 16, 2009

SACRAMENTO — Gov. Arnold Schwarzenegger on Friday will submit to a panel of three federal judges a plan that would reduce the inmate population at California's overcrowded prisons by substantially less than what the court has ordered, a move that a top prison administrator acknowledged will place state officials at risk of being held in contempt.

Although the final plan will not be submitted until late Friday, administration officials have briefed other parties involved in the court proceedings on its major elements. They said exact projections of how much the prison population will be reduced have not yet been calculated, but the reduction would not lower the population to the court's standard of 137.5 percent of the prison system's design capacity.

"This plan will not meet the court's requirements," said Lee Seale, deputy chief of staff of the Department of Corrections and Rehabilitation, in a conference call Wednesday with legislative staff members. "I certainly don't think this panel will be thrilled by this plan. I think we recognize we may be held in contempt."

The Star participated in the call after obtaining an advisory of the event.

The three-judge panel on Aug. 4 ruled that overcrowding is the primary reason the state has been unable to provide constitutional levels of medical and mental healthcare to inmates, even after many years of working under court supervision to do so.

The prison system, designed to hold 80,000 inmates, now houses nearly twice that number. To meet the 137.5 percent of capacity level would require a reduction of about 40,000 inmates.

Sen. George Runner, R-Lancaster, who has intervened in the court case in the hope of preventing a judicial mandate to lower the prison population, believes the administration is taking exactly the right approach.

Possible compromise

"I would like to see the state plan be as easily rejected as possible," Runner said.

If the administration submitted a plan that came close to meeting the court's order, Runner said, that could lead to a negotiated compromise. This way, he said, the court will be forced to propose its own plan — one that would set up a showdown before the U.S. Supreme Court.

A coalition of human rights groups is planning a demonstration at Schwarzenegger's San Francisco office today to urge him to submit a plan that complies with the court order.

Helia Rasti of Critical Resistance said she is disappointed but not surprised by the administration's decision.

"They're going to try every step of the way to delay the process with politics as usual," she said, noting the status quo has resulted in a surge in unnecessary state spending on prisons. "What we need to do is show them that people deserve to have these investments go back into the community."

Last month, the administration proposed a plan to lawmakers that would have nearly met the judges' goal within the two years allotted. The plan, designed to achieve reductions in prison spending already carved from the state budget, included a proposal to place selected inmates under alternative custody, specifically house arrest with GPS monitoring.

Although the Senate agreed with the alternative-custody plan, members of the Assembly, citing public safety concerns, refused to go along. Instead, both houses of the Legislature last week approved changes in parole and an expansion of good-time credits that would allow selected inmates to have their sentences reduced by as much as six weeks per year for participation in rehabilitative programs.

A legislative analysis estimated the steps approved by lawmakers would reduce the inmate population by 16,000 over two years.

The plan Schwarzenegger submits to the court will include those changes, Seale said, and some acts the department can take without legislative approval. Those include transferring about 2,500 more inmates to prisons in other states and commuting the sentences of some undocumented inmates and turning them over to federal authorities for deportation. The administration last month estimated the commutation of selected deportable inmates would remove 8,500 from state prisons, although critics say that number is grossly inflated..

The plan Schwarzenegger submits to the court will not, however, include the alternative custody provisions he had asked lawmakers to approve last month — even though the federal judges have the authority to waive any provisions of state law that might impede the administration from complying with the order.

"I'm pleased that they didn't try to put back on the table any kind of release program that would put the citizens of California at risk," Runner said.

In addition to programs to reduce the number of people in prison, the state plan will also propose the construction of more than 12,000 new prison beds at new facilities that would be built on the grounds of existing state prisons, a new acute-care medical facility, the conversion of three juvenile prisons for adult use and the creation of several county-based re-entry facilities.

Midnight Friday deadline

Most of that construction would be financed through AB 900, a prison bond approved by the Legislature in 2006 that has never been tapped.

Corrections Department attorney Ben Rice said the state will submit its plan by the midnight Friday deadline because the U.S. Supreme Court last week denied the state's request to delay the order of the three-judge panel.

He said he believes the order to produce a plan provides sufficient grounds for the state to appeal, although others contend the state cannot seek relief from the Supreme Court until after the three-judge

panel issues a final order detailing how the population reductions are to be achieved.

If a majority of Supreme Court justices agrees with the administration's position that the initial order is subject to appeal, Rice said he anticipates the California case would be heard by the high court late next spring.

Under the federal Prison Litigation Reform Act, only a special three-judge panel can order state or local jurisdictions to take such steps as releasing prisoners or constructing penal facilities. The law requires judges to seek the least intrusive remedy and allows states to appeal decisions directly to the Supreme Court.



© 2009 Ventura County Star

EXHIBIT B



# Prisons: it's time to reform and reduce population

By **Mathew Cate** | 08/13/09 12:00 AM PST

Federal courts are telling California that we are out of time when it comes to reducing inmate overcrowding. The Legislature and the Governor agree that we are out of money, and have cut $1.2 billion from the Corrections budget. Now is the time for elected officials and law enforcement to come together and pass criminal justice reforms that will safely reduce our inmate population.

Inmate "early release" is a radioactive term, and something that everyone wants to avoid. Yet, a three judge court ruling issued last week seeks to impose a cap that could force the release of upwards of 40,000 inmates over the next two years. While the state will likely appeal the ruling, lawmakers should not sit idly by and leave it up to the courts. The recent riot in Chino demonstrates the perils of severe overcrowding. California needs a package of sensible prison, parole and sentencing reforms that will allow our prisons to reduce population over time without swinging open the gates for serious and violent criminals and jeopardizing the safety of our communities.

The best minds in California and the nation have already provided us with recommendations. Five years ago, the Deukmejian Commission outlined ways that we can target resources on higher risk offenders and reduce costs, without increasing crime rates. An expert panel convened by the Schwarzenegger Administration has given us a roadmap to reducing recidivism. The Administration has adopted the recommendations of both these groups in drafting its current reform proposals.

The one remaining piece of the puzzle is the passage of these population and budget reduction proposals. When the Legislature returns next week, public safety reforms must be a focal point of discussion.

Over the past several months, the Administration has worked with law enforcement stakeholders to refine a plan that we believe can reduce the prison population by up to 27,000 inmates this year, and 37,000 through 2009-10, and avert the early release that has been widely feared with the following five key components:

•   Risked based parole supervision to reduce agent to parolee caseloads while maintaining law enforcement's search and seizure rights on non-serious, low-risk parolees;

•   House arrest or alternative custody with GPS for elderly or infirmed inmates, or low-level offenders with 12 months or less remaining;

•   Commutation to Immigration and Customs Enforcement custody of criminal alien felons who can be immediately deported to their country of origin if they're not prosecuted by the feds;

•   Changing sentencing for low level offenders convicted of writing bad checks, petty theft with a prior, receiving stolen property, and vehicle theft so that they don't occupy $48,000 per year state prison beds for low-level property crimes, and raising the grand theft threshold for the first time since 1982 from $400 to $2,500; and,

•   Motivating low-level offenders to complete in-prison GED, vocational, or substance abuse programs by offering up to six weeks off of the end of their sentences.

In addition to these population reduction strategies, CDCR is slashing operational costs. We are cutting over 400 positions from headquarters, reducing our programs budget by $250 million, curtailing overtime and sick leave abuse, and increasing efficiencies across the agency.

It is the duty of California's elected officials and appointed representatives of the people to make these tough decisions on budgeting for public safety resources. We cannot let the courts exert further control over our system, or allow this critical situation to worsen. With a $1.2 billion hole in our departments

Case 2:90-cv-00520-KJM-SCR    Document 3701    Filed 10/08/09    Page 10 of 10

budget that needs to be plugged immediately, and the price of inaction mounting at over $100 million a month or more, lawmakers cannot afford to wait any longer.

If California is to avoid court-ordered early release, and have the resources to keep serious, violent, and sex offenders locked up, our elected officials need to pass a sensible package of smart-on-crime bills in the coming weeks that allow us to reduce our prison population on our own terms.

Copyright ©2009 :: Contact Us

