EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JEFFREY STEELE, State Bar No. 124668
DEBBIE J. VOROUS, State Bar No. 166884
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 323-1937
  Fax: (916) 324-5205
  E-mail: jeff.steele@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                          Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                          Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY THE SPECIAL MASTER'S EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION IN CALENDAR YEAR 2007** |

## INTRODUCTION

In this reply brief, Defendants respectfully request that the Court modify the Special Master's 2007 suicide report (the Report) because parts of the Report (1) rely on inappropriate and misleading data; (2) unfairly faults Defendants for actions of third parties; (3) do not present a balanced view of CDCR's suicide prevention efforts; and (4) incorrectly characterize alleged deficiencies in individual inmate suicide cases.

///

///

1

# ARGUMENT

## I. DEFENDANTS HAVE ESTABLISHED THEIR RIGHT TO RAISE EACH OF THE OBJECTIONS AND REQUESTED MODIFICATIONS.

The Court's order referring this matter to the Special Master authorizes the parties to object to, and move to modify, any compliance report provided that the objections first be brought to the attention of the Special Master. (Court Record [CR][1] 640, 8:5-20.) Defendants satisfied this requirement by raising each of their objections and proposed modifications in response to the draft report. (Mot., 1:24-26, Ex. A.) The Special Master's expert responded to Defendants' objections.

## II. PLAINTIFFS HAVE NOT REFUTED DEFENDANTS' CONTENTION THAT THE COURT SHOULD STRIKE THE LANGUAGE IN THE REPORT REFERRING TO A "DISTURBING TREND" IN SUICIDES IN ADMINISTRATIVE SEGREGATION.

Defendants pointed out in their motion that the Special Master's expert, Dr. Patterson, responded to their objection to this language by citing to inapposite statistics. (Mot., 2:10-20.) Specifically, the expert stated that he relied on "the longer-term general trend of increasing suicides in administrative segregation in CDCR, which goes back to at least 1999[,]" and referred to the chart on pages 7-8 of the Report in support of that statement. (Id.) That chart, however, pertains to annual suicide rates in CDCR as a whole, not suicide rates in administrative segregation, and therefore cannot provide support for any conclusion about trends in administrative segregation. (Mot., 2:16-20.)

In their opposition, Plaintiffs attempt to counter this in two ways. Neither way directly addresses the evidence presented in the motion, and neither has merit. First, Plaintiffs claim that suicide reports filed by the Special Master since 1999 have contained statistical summaries of the number of suicides in administrative segregation, and that there is no reason to assume the Special Master's expert did not rely upon that data. (Opposition, 3:10-20.)

///

---

[1] The only abbreviations used in this Reply Brief are "CR" to refer to documents in the Court Record, and "CDCR" to refer to the California Department of Corrections and Rehabilitation.

2

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)

But the Special Master's expert did not claim that his conclusions were based on that data, and instead stated that he relied upon a chart that does not pertain to administrative segregation units. Thus, Plaintiffs' suggestion is not supported by the expert's statements.

Plaintiffs' other argument is that there is sufficient evidence to support the expert's conclusion, even if that evidence was not relied upon by the Special Master's expert. This reveals a misunderstanding of the nature and purpose of Defendants' motion. The question presented by the motion is not whether the expert's opinions and conclusions could be defended by reference to evidence that he did not consider. Instead, the question is whether the expert has provided a sufficient evidentiary basis for the Court to adopt his opinions and conclusions as the Court's findings of fact. (See CR 640 8:6-10.) In offering evidence that the Special Master's expert does not contend he relied upon, Plaintiffs are asking the Court to reach an independent opinion about trends in suicides in administrative segregation units, absent expert guidance.

Moreover, Plaintiffs' evidence in their Opposition is flawed. They misuse data, and therefore arrive at invalid conclusions.

In his suicide reports for both 2004 and 2007, the Special Master's expert uses the term "rate" to substitute for "percentage." Plaintiffs, however, calculate rates for suicide in administrative segregation unit by calculating suicides per 100,000 inmates, without understanding the underlying reason the Court's expert does not. In fact, the Special Master's expert does not calculate the rates for suicides in administrative segregation units the way the rate for the department as a whole is calculated. This is not meant as a criticism; indeed, it is entirely appropriate. Because of the small population in administrative segregation, and the small number of suicides both in administrative segregation and overall, a difference of one or two suicides per year would cause outsized swings in the rate, making calculation of trend lines meaningless. (Canning Decl. ¶¶ 2, 3.)

Thus, the Special Master's expert reports the rate for suicide in the department as suicides per 100,000 inmates, but notes the rate for administrative segregation units as a percentage of the overall suicide rate. His original comments about the "escalating percentage" in 2004, and in 2007 about the "disturbingly high rate," appear to refer to the proportion of suicides occurring in

3

1  administrative segregation compared to the total number for the department, rather than number
2  of suicides per 100,000 inmates in administrative segregation units or the absolute frequency of
3  suicides in administrative segregation. (Id.)
4      For this reason, Defendants' motion presented evidence showing that there is no trend in
5  the percentage of overall CDCR suicides represented by suicides in administrative segregation
6  units. (Mot., 2:21-4:25.)
7      In opposition to Defendants' motion, Plaintiffs present a chart that expresses suicides in
8  administrative segregation as a rate per 100,000 inmates. (Opp'n, 3:21-5:3.) As shown above,
9  however, this is not the rate the Special Master's expert refers to in the Report, so it is irrelevant
10 to his opinion, and thus to Defendants' motion. Evidence of the rate of suicides in administrative
11 segregation per 100,000 inmates cannot justify the Special Master's expert's statement about a
12 "disturbing trend" of rising suicides in CDCR administrative segregation units, when he has
13 always analyzed suicides in administrative segregation as a percentage of overall suicides within
14 CDCR. (Canning Decl. ¶ 4.) Therefore, Defendants request that this language be removed from
15 the Report.

### III. THE COURT SHOULD STRIKE THE LANGUAGE IN THE REPORT THAT CRITICIZES CDCR FOR NOT PROVIDING INFORMATION REGARDING A 2006 SUICIDE, BECAUSE IT IS INACCURATE.

18     Defendants' motion requests deletion of a paragraph criticizing CDCR for failing to provide
19 records regarding the suicide of one inmate in 2006, because the failure to provide records was
20 the result of incomplete scanning of those records by the *Plata v. Schwarzenegger* Receiver's
21 Office, and CDCR provided the complete records as soon as it was notified that the Special
22 Master's expert did not have them. (Mot., 5:13-27.) In response to Defendants' objection, the
23 expert did not cite other examples where he felt CDCR was at fault, and instead concluded that
24 the objection was outside the scope of the Report. But this issue was raised in the expert's report.
25 In any event, it does not appear that the expert relied on the evidence Plaintiffs' reference, and
26 therefore, Defendants' motion should be granted.
27 ///
28 ///

4

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)

## IV. THE REPORT SHOULD BE REVISED TO REFLECT A MORE BALANCED VIEW OF THE STATE OF CDCR SUICIDE PREVENTION EFFORTS.

### A. The Report Should Be Modified To Reflect The Fact That Suicide Risk Assessment Checklists Are Completed Appropriately In The Majority Of Cases.

Plaintiffs consider it "nonsensical and offensive" that Defendants think their efforts to reduce the rate of inmate suicides should be recognized. (Opp'n, 10:12.) Defendants disagree. The fact that the majority of Suicide Risk Assessment Checklists were completed appropriately (Mo., Ex. A, p. 12) is noteworthy, even if there were a few in which the Checklist resulted in a determination of no risk. But the Report does not adequately acknowledge Defendants' progress in tracking suicidality, and instead emphasizes the minority of instances in which the Checklist was not completed correctly. (*Id*.) This does not appear to be an accurate reflection of Defendants' efforts, and the Report should be modified in the manner requested by Defendants.

Plaintiffs' contention that evidence demonstrating the presence or absence of deliberate indifference by Defendants is far outside the scope of the Report is bizarre. This is a deliberate indifference case. Defendants do not contend that proper completion of Suicide Risk Assessment Checklists, standing alone, prove the absence of deliberate indifference. But it is equally indisputable that the proper completion of the Checklists is some evidence that prison officials are not deliberately indifferent to the risk of inmate suicide, and therefore indicates a lack of deliberate indifference. Plaintiffs do not—and logically cannot—contend otherwise. Instead, they contend that other evidence exists that could be used to demonstrate deliberate indifference. Defendants' motion does not ask the Court to pass judgment on whether they are deliberately indifferent to the risk of inmate suicide. Instead, Defendants' motion seeks only to have reports that this Court may adopt as its findings reflect an appropriate balance between the success Defendants have had in implementing measures designed to prevent inmate suicides, and the areas in which further improvements are desirable. Plaintiffs advance no reason why this is an unreasonable request. Accordingly, the Court should grant this motion.

///

///

5

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)

**B.  CDCR Should Not Be Criticized In The Report For Failing To Provide Cardiopulmonary Resuscitation To An Inmate Who Obviously Could Not Have Been Saved.**

Defendants' motion requests that appropriate consideration be given to the dramatic improvement in the rate of administration of cardiopulmonary resuscitation. The numbers cited in the Report show a dramatic improvement in the rate of administration of cardiopulmonary resuscitation (18%), to a rate that represents compliance in the vast majority of cases (78%), but the Report is written in a manner that downplays the rate of compliance and emphasizes instances of non-compliance.  (Mot., 6:15-26.)

In their opposition, Plaintiffs do not dispute these figures, nor do they contend that the improvement in the rate of administration of cardiopulmonary resuscitation is due to anything other than Defendants' good-faith efforts to prevent inmate suicides. Instead, Plaintiffs take the position that the Report's emphasis on the small number of cases in which cardiopulmonary resuscitation is justified, because suicide reports from other, earlier years have been critical of Defendants' efforts to administer cardiopulmonary resuscitation. (Opp'n, 11:23-13:15.) This is a non-sequitur. The issue raised by Defendants' motion is whether the improvements Defendants have made in preventing inmate suicides should be recognized as such. It makes little sense to contend that they should not be recognized because the improvements represent solutions to long-standing problems. On the contrary, to the extent that the rate of administration of cardiopulmonary resuscitation to inmates who attempted suicide had been a longstanding problem, Defendants' tremendous improvement in this area is all the more laudable.

In addition, Defendants asked the Special Master's expert to clarify whether he recommended that cardiopulmonary resuscitation be administered in all cases. (Mot., Ex. A, p. 4.) Defendants were seeking an explanation for having been criticized for not providing cardiopulmonary resuscitation to Inmate Y, who fell five stories, clearly could not have been saved by cardiopulmonary resuscitation due to the nature of his injuries, and who, in Dr. Patterson's opinion, could not have been saved. (Motion, 6:27-7:13.) The expert replied that the Program Guide answers this question by requiring custody personnel to provide immediate life support until medical staff arrive. (CR 3677, p. 17, n. 13.) This is an overbroad interpretation of

6

the Program Guide, which does not specify what life-support measures are appropriate in instances where such measures would clearly have no effect.  (See Ex. C, Mental Health Services Delivery System Program Guide, 12-10-21 to 12-10-22.)  Moreover, Plaintiffs' argument that cardiopulmonary resuscitation must be performed in all cases (Opp'n 14:16) is both inaccurate and absurd.  With respect to Inmate Y, Plaintiffs do not -- and cannot -- suggest that cardiopulmonary resuscitation would have served any purpose.  Indeed, the expert concluded that it would not.  (Mot., 7:1-2.)  Thus, Defendants should not be criticized for not performing a futile act.  (Mot., 6:27-7:13.)  There is no evidence that cardiopulmonary resuscitation could have saved Inmate Y's life.  Thus, the Court should grant Defendants' motion to modify the report.

Defendants' motion also requests deletion of the last paragraph on page 16 of the Report, which reads, "Although 30-minute welfare checks and confidential screens for inmates newly admitted to administrative segregation were features of the defendants' 2006 Plan to Address Suicide Trends in Administrative Segregation, circumstances of at least one suicide in 2007 raised questions about implementation of this policy."  (Mot., 7:14-21.)  Defendants objected to the implication of this paragraph that implementation of the policy should be questioned based upon one suicide.  (Id.)  The Special Master's expert did not respond to Defendants' objection to this paragraph in the initial draft of his Report.  (Motion, 7:22-25.)

Additionally, in their opposition, Plaintiffs rely upon evidence not cited by the Special Master's expert.  As discussed above, this cannot provide a basis for adoption of the experts' opinions as this Court's findings.  Plaintiffs' opposition is flawed in other respects, as well.  Plaintiffs cite evidence from the 19th and 20th Monitoring Reports that purport to show that 30-minute welfare checks were not instituted in all prisons.  (Opp'n 16:3-27.)  They do not attempt to match up the prisons at which the checks were implemented with the rates of suicide in administrative segregation, however, so their evidence cannot support the expert's statement.  Indeed, Plaintiffs' own evidence shows that 30-minute welfare checks were well established at the majority of prisons during 2007.  (Opp'n, 16:22-25.)  In addition, Plaintiffs rely upon evidence from the Special Master's 21st Monitoring Report, which covers a period after the period covered in the 2007 suicide report.  This evidence could not have supported the Report's

7

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)

conclusions because it did not exist at the time the Special Master's expert wrote the Report. Therefore, Defendants request that their motion be granted.

**V.    THE COURT SHOULD GRANT THE MOTION WITH RESPECT TO THE INDIVIDUAL SUICIDES DISCUSSED IN THE MOTION.**

**A.    The Findings Of The Court Must Have An Evidentiary Foundation.**

The order of reference in this case states that, in the absence of objections compliance reports shall be adopted by the Court as findings of fact and conclusions of law.  (CR 640 8:6-10.) A party making objections shall provide the Court with alternative findings or recommendations. (Id., 8:14-17.)  In either event, the Court will make findings of fact.  Those findings of fact must have an evidentiary foundation. *Baumgartner v. United States*, 322 U.S. 665, 670 (1944) ("That the concurrent findings of two lower courts are persuasive proof in support of their judgments is a rule of wisdom in judicial administration . . .But the rule does not relieve us of the task of examining the foundation for findings in a particular case."); see also *Ms. S. ex rel. G v. Vashon Island Sch. Dist*., 337 F.3d 1115, 1128 (9th Cir. 2003) (citing *United States v. Mejia*, 69 F.3d 309, 317 (9th Cir. 1995)) for the proposition that "a district judge's finding of fact 'without observing critical witnesses or hearing them testify in person' was sufficiently without foundation to warrant reversal of the denial of a motion to suppress.")

**B.    The Court Should Strike The Statement That The Release Of Inmate D From Atascadero State Hospital Was "Precipitous," Because It Lacks Foundation.**

Defendants object to the statement on page 66 of the Report that the release of Inmate D from Atascadero State Hospital was "precipitous." (Mot., 8:6-9.)  The Special Master's expert responded that Atascadero has a duty to manage assaultive inmates, rather than transferring them back to the custody of CDCR, but he did not identify the source of this duty.  (Mot., 8:9-13.)

In their opposition, Plaintiffs describe issues regarding Inmate D's care that are irrelevant to Defendants' motion.  (Opp'n, 17:19-18:20.)  The purpose of this discussion is unclear.  They next attempt to justify the Report's conclusion by reference to a passage from the 2009 Program Guide. The reference is illogical, because: (1) the passage merely states in general terms that CDCR has a contract with the Department of Mental Health to provide inpatients care to inmates, and thus

8

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)

provides no basis for concluding that the discharge of Inmate D was "precipitous;" (2) the Report covers 2007, and Plaintiffs provide no evidence that the passage from the 2009 Program Guide is unchanged from 2007; and, perhaps most important, (3) there is no evidence that this passage is what the Special Master's expert was referring to when he stated that Atascadero has a duty to manage assaultive inmates rather than discharging them back to CDCR.

As noted above, Plaintiffs' opposition reveals a misunderstanding of the nature and purpose of Defendants' motion. Plaintiffs write: "Defendants cite no authority for the proposition that the Special Master's Report must identify the underlying policy for each finding . . .". (Opp'n, 20:5-6.) This misses the point. Defendants' objections—and this motion—are not aimed at the Report per se, or at the expert's opinions. The objections and motion are aimed at the findings that this Court may adopt. If the Special Master's expert does not provide the bases of his opinions, this Court lacks a sufficient evidentiary record to adopt those opinions as its findings.

To demonstrate this point, the Court need only suppose that Plaintiffs' arguments are correct. If the Special Master's expert did indeed base his opinion that the discharge of Inmate D was precipitous on the passage from the Program Guide cited by Plaintiffs above, despite the passage's complete lack of guidance on this issue, then the opinion is baseless and should be rejected by the Court. Of course, the expert might have based it on something else—but the Court cannot know that, because the Special Master's expert did not offer an explanation. For this reason, the Court should grant Defendants' motion.

Plaintiffs cannot fill the gaps in the Report by pointing to evidence that, in their view, could justify its conclusions. The issue before this Court is whether to credit the opinions and conclusions of the Special Master's expert. To do that, the Court must know what the expert relied upon in forming his opinions and arriving at his conclusions. Not what he could have relied upon, or might have relied upon, or what someone else could rely upon in reaching a similar opinion or conclusion—but what this expert relied upon *in fact*. Without this information, the record does not support the adoption of the Report as the Court's findings.

Similarly, Defendants' motion should be granted with respect to the expert's criticism of the Department of Mental Health for allegedly not providing documentation to him, on the

9

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)

1  grounds that "it is required by policy." (Mot., 14-20.) No policy is identified. Plaintiffs attempt
2  to fill the gap by referring to the provision in the 2009 Revised Program that discusses supplying
3  corrective action plans to all necessary parties. (Opp'n, 20:8-17.) But, as Plaintiffs point out, the
4  document that the expert asked for was not the corrective action plan, but rather documentation of
5  its implementation. There is no evidence that the Program Guide requires CDCR to document
6  implementation of the corrective action plan and provide that documentation to the expert.
7  Because there is no foundation for the Special Master's expert's statement that providing this
8  documentation to him is "required by policy," the Court should grant Defendants' motion.

      **C.    The Court Should Modify The Report To Omit The Conclusion Regarding The Purported Opinion Of Staff Regarding Inmate G, Because That Conclusion Lacks Foundation.**

11  The Report offers an opinion about what clinical staff thought of Inmate G that does not
12  follow logically from the evidence and is not drawn from any statements by clinical staff. (Mot.,
13  8:23-9:12.) It therefore lacks foundation. Plaintiffs' opposition posits a basis for the Report's
14  conclusion that may or may not reflect the Report's thinking, and that was not advanced by the
15  Special Master's expert even after Defendants objected to the draft report. (Opp'n, 21:21-26,
16  Mot., 9:9-11.) Because there is no evidence that Plaintiffs' views are congruent with those of the
17  Special Master's expert, Defendants' motion should be granted.

      **D.    The Court Should Modify The Report To Omit The Characterization Of The Suicide Of Inmate W As Foreseeable And Preventable, Because Mental Health Staff Are Not At Fault For The Deficiencies Described In the Report.**

21  Defendants' motion requests the Court to recognize that the faults found by the Report in
22  the care of Inmate W are attributable to medical staff, not mental health staff, and that medical
23  staff are under the control of the *Plata* Receiver. (Mot. 9:16-18.) The Special Master's expert
24  responded that his conclusion that the suicide was foreseeable and preventable is based upon a
25  "broader set of concerns." (Mot. 10:1-3.) As Plaintiffs point out, these concerns implicate the
26  failure of medical staff to refer Inmate W to mental health. (Opp'n, 22:20-28.)
27  Defendants should not be faulted for the acts or omissions of employees who have been
28  removed from their control by order of the *Plata* court. Because the Report was prepared by the

10

Special Master's expert as part of the Special Master's duties in the present case, it should focus on whether the inmate suicides discussed therein were foreseeable and preventable by the Defendants in this case, or by employees under their control.

In addition, Plaintiffs offer no rebuttal to Defendants' contention that there is no indication that medications were the cause of Inmate W's suicide by hanging. For this reason as well, the Court should grant Defendants' motion.

### E. The Report Should Be Revised To Omit The Characterization Of Inmate X's Suicide As Preventable, Because It Lacks Foundation.

Defendants do not take issue with the contention that correctional staff should not have allowed an inmate to participate in the administration of cardiopulmonary resuscitation on Inmate W. Defendants' sole contention is that, in the absence of any evidence that cardiopulmonary resuscitation was administered incorrectly, or that correct administration of cardiopulmonary resuscitation would have produced a different result, any conclusion as the preventability of the suicide is mere guesswork. Plaintiffs offer no evidence that this is not so. Therefore, the Court should grant Defendants' motion.

## VI. PLAINTIFFS' REQUEST FOR ADDITIONAL ORDERS IS INAPPROPRIATE AND SHOULD BE DENIED.

The Prison Litigation Reform Act mandates that equitable relief be narrowly drawn, extend no further than necessary to correct the constitutional violation, and be the least intrusive means to correct the violation. 18 U.S.C. § 3626(b)(2). Plaintiffs' request for additional orders in their opposition contains no showing that the orders they seek satisfy any of these three requirements. The request for additional orders, therefore, should be denied.

///

///

///

11

**CONCLUSION**

As demonstrated above, the Special Master's 2007 Suicide Report relies on inappropriate and misleading data, wrongly faults Defendants for actions of third parties, does not present a balanced view of CDCR's suicide prevention efforts, and incorrectly characterizes alleged deficiencies in individual inmate suicide cases.  For these reasons, Defendants respectfully request that the Court modify the conclusions and language of Court Record 3677 to reflect the objections raised above

Dated:  November 6, 2009

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General

*/s/ Jeffrey Steele*

JEFFREY STEELE
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
30889207.doc

12

Defs.' Reply Brief in Supp. Of Mot. To Modify The Spec. Master's 2007 Report On Suicides
(2:90-cv-00520 LKK JFM P)