EXHIBIT C

EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
DANIELLE F. O'BANNON
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5724
Facsimile: (415) 703-5843
kyle.lewis@doj.ca.gov

Attorneys for Defendants

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. WOLFF – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
swolff@hansonbridgett.com
rjacob@hansonbridgett.com

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF DAVID LEWIS IN SUPPORT OF DEFENDANTS' RESPONSE TO THREE-JUDGE COURT'S OCTOBER 21, 2009 ORDER**<br><br><br>**To: Three-Judge Court** |

- 1 -

1    I, DAVID LEWIS, declare as follows:

2    1.    I am the Deputy Director, Fiscal Services for the California Department of

3    Corrections and Rehabilitation (CDCR). I am competent to testify to the matters set forth

4    in this declaration, and if called upon to do so, I would and could so testify. I submit this

5    declaration in support of Defendants' Response to the Three-Judge Court's October 21,

6    2009 Order.

7    2.    I have been the Deputy Director of Fiscal Services/Acting Deputy Director,

8    Fiscal Services for 14 months. I have been employed by CDCR for the past two years.

9    As Deputy Director of Fiscal Services, I am responsible for overseeing all of CDCR's

10    budgeting and accounting functions. As such, I am responsible for overseeing the

11    development and implementation of CDCR's budget, proposing changes to the budget,

12    and tracking expenditures.

13    3.    Before working at CDCR, I worked as a consultant on public safety for the

14    California State Senate for nearly two years. I also worked at the Department of Finance

15    for four years. A significant amount of my work for the State Senate and the Department

16    of Finance related to CDCR.

17    4.    I was involved in informally estimating the reductions in the average daily

18    population (ADP) of California's adult prisons that would have resulted from reform

19    measures that were previously proposed by the Governor in April and May of this year.

20    5.    At the beginning of 2009, California faced a two-year projected budget

21    deficit of approximately $41.6 billion. In response, Governor Schwarzenegger reduced

22    CDCR's budget by $400 million. As a result of this budget reduction (and subsequent

23    budget reductions), several budget measures were presented to the Legislature in order

24    to accommodate CDCR's reduced budget. The proposed budget measures were aimed

25    at reducing spending, in part by reducing certain programs and the number of inmates

26    housed in CDCR institutions. The monetary savings obtained by the proposed budget

27    measures were not re-directed in any way to other programs, including rehabilitative

28    programs, and were not re-directed to local communities. Instead, the monetary savings

- 2 -

1  were required in order to meet CDCR's reduced overall budget and address California's

2  historic budget deficit.

3      6.      The April 2009 budget proposals were aimed at addressing the budget

4  reduction, not at reducing the population of California's adult prisons to 137.5% of design

5  bed capacity in two years.  Thus, formal population projections were not completed.

6  However, in the course of estimating cost savings that would be realized, informal

7  estimates of the possible reduction resulting from each measure were made by CDCR.

8      7.      I assisted in analyzing the informal estimates of the possible reduction in

9  the April 2009 proposed reform measures.  Estimates of population savings were done

10  using a variety of methods.  To estimate the population related to changes in parole, the

11  estimate was created by using the total parole population and excluding populations

12  based on certain factors including the risk factor, and current and prior crimes, a similar

13  percentage was also applied to the total prison population at that time. To estimate the

14  impact of alternative sanctions an estimate of the time frame to roll out the program was

15  used.  Other estimates were created by the Offender Information Services Branch using

16  established methodologies.

17      8.      The April 2009 proposed reform measures included the following: (1)

18  increase the monetary threshold for felony property crimes, including grand theft, with an

19  estimated reduction in the average daily population (ADP) of 1,389 in Fiscal Year (FY)

20  2009-10 and up to 2,778 through FY2010-11; (2) eliminate parole for low and moderate

21  risk non-serious, non-violent, non-sex offender parolees, with an estimated reduction in

22  the ADP of 4,053 in FY2009-10 and up to 5,037 through FY2010-11; (3) provide credit-

23  earning enhancements (including day-for-day jail credits, program completion credits,

24  day-for-day credits for good behavior, and two-for-one credits to participate in fire camp

25  training) with an estimated reduction in the ADP of 1,658 in FY2009-10 and up to 4,939

26  through FY2010-11; (4) discharge deported parolees from parole, with an estimated

27  reduction in the ADP of 269 in FY2009-10 and up to 261 through FY2010-11; and (5)

28  use GPS as an alternative sanction, with a reduction in the ADP of 1,029 in FY2009-10

- 3 -

1  and up to 1,900 through FY2010-11.  These reforms would result in a 8,397 ADP

2  reduction in FY2009-10 and up to 14,915 through FY2010-11, or to 179 percent of

3  design capacity by the end of FY2009-10 and to 171 percent of design capacity by the

4  end of FY2010-11.

5       9.      At the time the Administration put forward the budget reduction proposals,

6  possible overlap between the population reductions resulting from the measures was not

7  accounted for in calculating the total reduction that could be achieved.  Accordingly, the

8  estimated population reductions for the measures are not independent of each other,

9  and an inmate may fall into one or more proposed reform measure categories.

10      10.     Additional prison population reduction reform measures were proposed in

11  the 2009 May Revise budget proposal.  These additional reforms would have reduced

12  the adult prison population by additional estimated 18,405 inmates by the end of

13  FY2009-10, and up to 22,209 inmates through FY2010-11.  These three additional

14  reforms included: (1) deportation of undocumented inmates, with an estimated reduction

15  in the ADP of 8,505 in FY 2009-10 and up to 8,712 through FY2010-11; (2) change

16  sentencing options for certain crimes that may currently be charged as either a

17  misdemeanor or felony ("wobbler" crimes) so they are only chargeable as a

18  misdemeanor, with an estimated reduction in the ADP of 4,343 in FY2009-10 and up to

19  14,497 through FY2010-11; and (3) provide alternative housing options for low-level

20  offenders, with an estimated reduction in the ADP of 6,307 in FY2009-10.

21      11.     Combined, the April 2009 proposed reforms and the 2009 May Revise

22  budget proposal would have a total estimated reduction in the ADP by 26,802 inmates

23  (or 156% of design capacity) in FY2009-10, and up to 37,124 inmates (or 143% of

24  design capacity) through FY2010-11. Attached as Exhibit 1 is a chart that details each

25  proposed reform measure, the informal estimate of the corresponding reduction in the

26  ADP, proposed implementation date, and subsequent legislative action.  Again, at the

27  time the Administration put forward the budget reduction proposals, possible overlap

28  between the population reductions resulting from the measures was not accounted for in

- 4 -

1  calculating the total reduction that could be achieved. Accordingly, the estimated

2  population reductions for the measures are not independent of each other, and an

3  inmate may fall into one or more proposed reform measure categories.

4      12.    Of the reforms proposed in the April 2009 proposal and the 2009 May

5  Revise, five required legislative approval. Those five reform measures included: (1)

6  increasing the monetary threshold for felony property crimes, including grand theft; (2)

7  providing alternative housing for low-level offenders; (3) restricting wobbler crimes to be

8  charged as misdemeanors; (4) eliminating parole for certain parolees; (5) credit-earning

9  enhancements. These proposed reform measures were introduced to the California

10  Senate in the form of ABx3 14.

11      13.    In addition to the above five measures introduced to the California Senate

12  in the form of ABx3 14, the California Legislature also proposed three additional reforms

13  that were included in ABx3 14. Those reforms were: (1) the California Community

14  Corrections Performance Incentives Act of 2009: a fiscal incentive program for county

15  probation departments that demonstrate success; (2) the establishment and expansion

16  of drug and mental health reentry courts for parolees; and (3) creation of a public safety

17  commission to review sentencing.

18      14.    ABx3 14 was passed by the California Senate on August 20, 2009, by a

19  vote of 21 ayes to 19 noes. Because ABx3 14, in the form approved by the California

20  Senate, is over 375 pages, Defendants do not attach it as an exhibit. However, it may

21  be accessed at http://info.sen.ca.gov/pub/09-10/bill/asm/ab_0001-

22  0050/abx3_14_bill_20090820_amended_sen_v96.pdf. Attached as Exhibit 2 is a true

23  and correct copy of the unofficial ballot indicating the Senate vote on ABx3 14.

24      15.    ABx3 14 was never presented to the California Assembly for a vote in the

25  form approved by the Senate. Instead, SBx3 18 was presented to the Assembly and

26  was passed on August 31, 2009, by a vote of 41 ayes, 37 noes, 1 member abstaining,

27  absent, or not voting, and 1 vacancy. Attached as Exhibit 3 is a true and correct copy of

28  the unofficial ballot indicating the Assembly vote on SBx3 18. SBx3 18 does not include

- 5 -

1 │ four proposed reform measures that the Senate approved: (1) increasing the monetary

2 │ threshold for grand theft; (2) providing alternative housing for low-level offenders; (3)

3 │ restricting wobbler crimes such that they may only be charged as a misdemeanor; and

4 │ (4) the creation of a sentencing commission.

5 │       16.    The California Senate then voted to approve this version of the bill on

6 │ September 11, 2009, by a vote of 21 ayes, 16 noes, and 3 members either abstaining,

7 │ absent, or not voting.  The legislation was signed into law by the Governor on October

8 │ 10, 2009.  Attached as Exhibit 4 is a true and correct copy of SBx3 18 in the form

9 │ approved by the California Legislature and signed by the Governor.

10 │       17.    The Legislature adjourned on October 26, 2009.  This means that the laws

11 │ enacted in SBx3 18 will go into effect 90 days later, on January 24, 2010.

12 │       18.    On September 17, 2009, CDCR's budget for rehabilitation programs for

13 │ adult offenders was reduced by $250 million.  However, this budget reduction was

14 │ accounted for in Defendants' September 18, 2009 Population Reduction Plan, and

15 │ accordingly, would not have affected CDCR's the population reductions proposed in

16 │ Defendants' September 18, 2009 Population Reduction Plan.  Similarly, to the extent

17 │ that Defendants' "November 12, 2009 Response to the Court's October 21, 2009 Order

18 │ to Reduce Prison Population to 137.5% of Design Capacity" (Defendants' Response)

19 │ relies upon rehabilitation programs, the September 17, 2009 budget reduction has been

20 │ accounted for.

21 │       19.    CDCR's Offender Information Services Branch (OISB) compiles and

22 │ retains summary statistical information about inmates and parolees.  As described

23 │ below, CDCR was able to estimate the reductions associated with the proposed

24 │ measures included in Defendants' Response by utilizing information contained within

25 │ OISB's data warehouse.

26 │       20.    **"Summary Parole."**.  The enactment of SB 18 creates a new program of

27 │ "summary parole" whereby CDCR is prohibited from returning to prison, placing a parole

28 │ hold, or reporting to the Board of Parole Hearings, any parolee who meets the following

- 6 -

1  conditions: (1) is not a sex offender; (2) has not been committed to prison for a sexually

2  violent offense; (3) has no prior conviction for a sexually violent offense; (4) has no

3  instant or prior convictions that are violent or serious; (5) has not been found guilty of a

4  serious disciplinary offense as defined by CDCR during his or her current term of

5  imprisonment; (6) is not a validated prison gang member or associate, as defined in

6  CDCR regulations; (7) has not refused to sign any written notification of parole

7  requirements or conditions; and (8) has not been determined to pose a high risk to

8  reoffend pursuant to a validated risk assessment tool.  Defendants anticipate that

9  "summary parole" will reduce CDCR's institutional population because, when fully

10  implemented, CDCR will be precluded from revoking parole and returning approximately

11  35,000 parolees to prison for parole violations.

12      21.    Defendants estimate that Summary Parole will net an approximate 4,556

13  reduction in CDCR's ADP by December 31, 2011.  This estimated reduction in ADP was

14  achieved by first identifying the total number of adult parolees in 2008 that were non-

15  serious, non-violent, non-sex offenders, with no prior serious or violent offenses, which

16  was converted to a percentage and applied to the Spring 2009 Population Projection

17  numbers of parolees to give an updated number of applicable parolees.  Then, using

18  data from the Division of Adult Parole Operations (DAPO) the percentage of this

19  population that were low and moderate risk were applied to estimate the applicable

20  parole population.  Then, it was assumed that a like percentage of the total number of

21  Parole Violators Returned to Custody (PV-RTC) inmates would not go to prison, and this

22  determined the total expected prison ADP reduction.  Then, it was assumed that it would

23  take approximately 5 months for the total impact of the ADP reduction to be realized so

24  that was calculated to reduce the ADP in 2009-10.  The 4,556 number is based on the

25  best information available at the time.  Of course, actual implementation may vary from

26  these numbers.  Factors that could not be accounted for include: (1) crimes that do not

27  show up on the Offender Based Information System (OBIS) such as those committed in

28  other states that may render an individual ineligible; (2) changes in local prosecutorial

- 7 -

1   behavior resulting in some of these offenders coming to prison with a longer sentence as

2   a Parole Violator With a New Term (PV-WNT).

3       22.    **Re-entry Courts.** CDCR will collaborate with the California Administrative

4   Office of the Courts to establish and expand drug and mental health reentry courts for

5   parolees. The implementation of the reentry courts should have a significant impact on

6   reducing the number of mentally ill inmates in CDCR because it should reduce the

7   number of parolees with mental illness returning to prison. Because this program has

8   not yet been implemented, CDCR is not able to identify a formal estimate. However,

9   State Defendants estimate this program will reduce CDCR's ADP by approximately 435

10  inmates by December 31, 2011. This ADP estimate was developed by dividing the $10

11  million reduction in CDCR's budget for reentry courts by the per capita annual inmate

12  cost of approximately $23,000.[1]

13      23.    **Discharge of Deported Parolees.** CDCR has implemented a new policy

14  to discharge from parole the over 12,000 criminal aliens who have served their full state

15  prison sentences and, upon release to parole, have been deported by the federal

16  government. This new policy has resulted in fewer parolees being returned to state

17  prison for parole violations and provides an incentive for federal prosecution of these

18  offenders. This proposal was in effect earlier this year and was accounted for in the new

19  Fall 2009 Population Projections as set forth in Table 1 of Defendants' Response.

20      24.    **Alternative Sanctions for Violations of Parole.** CDCR will make greater

21  use of electronic monitoring systems such as global positioning systems (GPS) for

22  parole violators in lieu of revocation and re-incarceration. Defendants estimate this

23  program will net an approximate 1,000 reduction in CDCR's ADP by December 31,

24  2011. This reduction reflects an assumption that CDCR will begin diverting offenders in

25  March 2010 and that it will be able to acquire 300 GPS units per month until September

26

27  [1] The per capita annual inmate cost of $23,000 is an estimated cost developed by
    CDCR, and is used by CDCR for estimating the impact of legislation and other
    proposals, such as ballot initiatives, that have the affect of reducing the prison and/or
28  parole populations.

- 8 -

1  2010, when there will be 2,000 units in use. If the system diverted inmates for every day

2  they would have otherwise spent in prison, the reduction in ADP would actually be

3  2,000. The 50% discount assumes that there will be processing time between offenders

4  that wear the device and that, on average, a revocation action to prison would have

5  been shorter than the time given to an inmate to wear GPS as a sanction.

6      25.    **Jail Time for Enumerated Felonies.** The Administration will seek

7  legislation for certain enumerated offenses that would allow the offenses to be charged

8  as felonies, but would limit the maximum sentences to 366 days which could only be

9  served in county jail. Thus, while convictions would result in imprisonment in county jail,

10  the offenses would remain felonies within the meaning of section 17 of the penal code.

11  The reduction in the ADP as a result of this proposal would be 11,815 by December

12  2011. To determine the reduction of ADP for this proposal, CDCR utilized data in OBIS.

13  Specifically, CDCR looked at the number of admits to CDCR for these particular crimes.

14  CDCR then estimated a reduction in ADP based on the average length of sentence for

15  these individuals.

16

17      I declare under the penalty of perjury under the laws of the State of California that

18  the foregoing is true and correct. Executed in Sacramento, California on November 12,

19  2009.

20

21                          DAVID LEWIS

22

23

24

25

26

27

28

- 9 -

EXHIBIT 1

## Prison Reform Measures -- Proposals And Legislative Action

| Proposed Reform Measures | Estimated Reduction in ADP '09-10 | '10-11 | Estimated Date of Implementation | Senate Action - ABX3 14 (Aug. 20, 2009) (Votes: 21 ayes, 19 noes?) | Assembly Action - SBX 3 18 (Aug. 31, 2009) (Votes: 41 ayes, 37 noes) | Final SBx 3 18 |
|---|---|---|---|---|---|---|
| *Governor-Initiated Proposals* | | | | | | |
| • Increase the monetary threshold for grand theft from $400 to $2,500 | 1,389 | 2,778 | July 1, 2009 | passed | rejected and removed from bill | not included in final bill |
| • Provide alternative housing options for low-level offenders (alternative custody) | 6,307 | not provided | July 1, 2009 | passed | rejected and removed from bill | not included in final bill |
| • Change sentencing options for certain crimes that may currently be charged as either a misdemeanor or felony ("wobbler" crimes) so they are only chargeable as a misdemeanor. | 4,343 | 14,497 | January 1, 2010 | passed | rejected and removed from bill | not included in final bill |
| • Eliminate parole for low and moderate risk non-serious, non-violent, non-sex offender parolees: certain offender parolees will be placed on summary parole with no parole supervision | 4,053 | 5,037 | July 1, 2009 | passed | passed | included in bill |
| • Credit-earning enhancements: day-for-day jail credits; program completion credits; day-for-day credits for good behavior; two-for-one credits to participate in fire camp training | 1,658 | 4,939 | July 1, 2009 | passed | passed | included in bill |

| Proposed Reform Measures | Estimated Reduction in ADP '09-10 | '10-11 | Estimated Date of Implementation | Senate Action - ABX3 14 (Aug. 20, 2009) (Votes: 21 ayes, 19 noes?) | Assembly Action - SBX 3 18 (Aug. 31, 2009) (Votes: 41 ayes, 37 noes) | Final SBx 3 18 |
|---|---|---|---|---|---|---|
| • Discharge deported parolees | 269 | 261 | May 1, 2009 | no legislative action required | no legislative action required | not applicable |
| • Deport undocumented inmates | 8,505 | 8,712 | July 1, 2009 | no legislative action required | no legislative action required | not applicable |
| • Use of GPS as an alternative sanction | 1,029 | 1,900 | July 1, 2009 | no legislative action required | no legislative action required | not applicable |
| • Elimination of prison and parole programs | -750 | -1,000 | July 1, 2009 | Reduced to $250 million | Reduced to $250 million | not applicable |
| • Creation of sentencing commission | unknown | | January 1, 2010 | passed | rejected and removed from bill | not included in final bill |
| TOTAL ESTIMATED REDUCTION | 27,553 | 38,124 | | | | |
| PERCENT REDUCTION IN DESIGN BED CAPACITY | 156% | 143% | | | | |

*Legislature-Initiated Proposals* (ABX4 1, Sec. 67 - Chaptered July 28, 2009)

| Proposed Reform Measures | Estimated Reduction in ADP '09-10 | '10-11 | Estimated Date of Implementation | Senate Action - ABX3 14 (Aug. 20, 2009) (Votes: 21 ayes, 19 noes?) | Assembly Action - SBX 3 18 (Aug. 31, 2009) (Votes: 41 ayes, 37 noes) | Final SBx 3 18 |
|---|---|---|---|---|---|---|
| • Community Corrections Performance Incentives: a fiscal incentive program for county probation departments that demonstrate success | none made | | July 1, 2009 | passed | passed | included in bill |

| Proposed Reform Measures | Estimated Reduction in ADP '09-10  '10-11 | Estimated Date of Implementation | Senate Action - ABX3 14 (Aug. 20, 2009) (Votes: 21 ayes, 19 noes?) | Assembly Action - SBX 3 18 (Aug. 31, 2009) (Votes: 41 ayes, 37 noes) | Final SBx 3 18 |
|---|---|---|---|---|---|
| • Parole reentry courts for parolees with drug and mental health needs | none made | July 1, 2009 | passed | passed | included in bill |

EXHIBIT 2

```
            UNOFFICIAL BALLOT
MEASURE:        ABX3 14
AUTHOR: Arambula
TOPIC: Corrections.
DATE:   08/20/2009
LOCATION:       SEN. FLOOR
MOTION: Assembly 3rd Reading AB14 Arambula By Ducheny
        (AYES  21. NOES  19.)  (PASS)


        AYES
        ****

Alquist Cedillo Corbett DeSaulnier
Ducheny Hancock Kehoe   Leno
Liu     Lowenthal       Negrete McLeod   Oropeza
Pavley  Price   Romero  Simitian
Steinberg       Wiggins Wolk    Wright
Yee


        NOES
        ****

Aanestad        Ashburn Benoit  Calderon
Cogdill Correa  Cox     Denham
Dutton  Florez  Harman  Hollingsworth
Huff    Maldonado       Padilla Runner
Strickland      Walters Wyland


        ABSENT, ABSTAINING, OR NOT VOTING
        *********************************
```

EXHIBIT 3

```
             UNOFFICIAL BALLOT
MEASURE:          SBX3 18
AUTHOR: Ducheny
TOPIC:  Corrections.
DATE:   08/31/2009
LOCATION:         ASM. FLOOR
MOTION: SB 18 Ducheny  Senate Third Reading  By ARAMBULA   Third
        Extraordinary Session
        (AYES  41. NOES  37.)   (PASS)


        AYES
        ****

Ammiano Arambula       Beall    Blumenfield
Brownley       Buchanan        Charles Calderon        Carter
Chesbro Coto    Davis    De La Torre
De Leon Eng     Evans    Feuer
Fong    Fuentes Furutani       Galgiani
Hall    Hayashi Hernandez      Hill
Huffman Jones   Krekorian       Bonnie Lowenthal
Monning John A. Perez   Ruskin   Salas
Saldana Skinner Solorio Swanson
Torlakson       Torres  Torrico Yamada
Bass


        NOES
        ****

Adams    Anderson       Bill Berryhill  Tom Berryhill
Blakeslee      Block    Caballero       Conway
Cook    DeVore  Duvall   Emmerson
Fletcher       Fuller   Gaines   Garrick
Gilmore Hagman  Harkey   Huber
Jeffries       Knight   Lieu     Logue
Ma      Mendoza Miller   Nava
Nestande       Niello   Nielsen V. Manuel Perez
Silva    Smyth   Audra Strickland        Tran
Villines


        ABSENT, ABSTAINING, OR NOT VOTING
        ********************************

Portantino      Vacancy
```

EXHIBIT 4

**Senate Bill No. 18**

CHAPTER 28

An act to amend Sections 14491, 17550.19, and 21653 of the Business and Professions Code, to amend Section 5305 of the Financial Code, to amend Section 421 of the Military and Veterans Code, to amend Sections 154, 155, 337.4, 368, 422.7, 461, 463, 476a, 484b, 484g, 484h, 487, 487b, 487c, 487e, 487f, 487h, 496, 498, 500, 502, 537, 537e, 550, 551, 565, 566, 592, 594.4, 641.3, 2932, 2933, 2933.2, 2933.3, 2933.5, 2933.6, 2934, 2935, 3000, 4019, and 4600 of, to amend and renumber Section 2933.4 of, to add Sections 2933.05 and 3000.03 to, to add Article 2.3 (commencing with Section 3015) to Chapter 8 of Title 1 of Part 3 of, and to add and repeal Chapter 3 (commencing with Section 1228) of Title 8 of Part 2 of, the Penal Code, to amend Sections 14591 and 41955 of the Public Resources Code, to amend Sections 10851.5 and 42002.4 of the Vehicle Code, and to amend Sections 10980 and 15656 of the Welfare and Institutions Code, relating to corrections.

[Approved by Governor October 11, 2009. Filed with
Secretary of State October 11, 2009.]

LEGISLATIVE COUNSEL'S DIGEST

SB 18, Ducheny. Corrections.

Existing law establishes certain values for determining if theft or certain other property crimes are punishable as felonies or not. Existing law provides that for many of these crimes, the threshold is $400, while the thresholds for certain other crimes are $100, $200, and $1,000, as specified.

This bill would increase certain of those thresholds, for example, by increasing certain $400 thresholds to $950.

By increasing local incarceration costs, this bill would impose a state-mandated local program.

Existing law provides for a 6-month reduction in a prisoner's term of confinement for every 6 months of full-time performance by the prisoner in a qualified work, training, or education program, as specified. Existing law provides that for every 6 days served in a specified local detention center following an arrest and prior to the imposition of a prison sentence for a felony conviction, 2 days shall be deducted from his or her period of confinement, as specified.

This bill would instead provide that certain prisoners shall earn one day of credit for every one day served either in the state prison or in a local facility prior to delivery to the state prison. This bill would provide for up to 6 weeks of additional credit for the successful completion of certain programs offered by the department, as specified. This bill would also expand an existing program for extra time credits for inmates assigned to

Ch. 28                            — 2 —

conservation camps to apply to inmates who are assigned to correctional institutions as inmate firefighters and to inmates who have completed the training for either of those assignments, as specified. This bill would also revise the time credits for certain prisoners confined or committed to a county jail or other specified facilities, as provided.

This bill would also provide criteria for the denial and loss of these credits, and would make various conforming and technical changes.

Existing law establishes provisions authorizing the department to oversee programs for the purposes of reducing parolee recidivism.

This bill would authorize each county to establish a Community Corrections Performance Incentives Fund (CCPIF) and would authorize the state to annually allocate money into a State Corrections Performance Incentives Fund to be used for certain purposes relating to improving local probation supervision practices and capacities, as specified. This bill would require the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, to make various calculations relating to the costs of incarceration, probation failure rates, and estimated numbers of adult felony probationers who are successfully prevented from being sent to prison per county, as specified. This bill would require the Department of Finance, in consultation with other specified agencies, to annually calculate 5% of the savings to the state attributed to those counties that successfully reduce the number of adult felony probationers sent to prison, and the bill would authorize those savings to be used to provide high performance grants to county probation departments to reduce recidivism among adult felony probationers. This bill would also require each county using CCPIF funds to identify and track specific outcome-based measures, as specified, and report to the Administrative Office of the Courts on the effectiveness of the programs paid for by the CCPIF.

This bill would require each county's community corrections programs to be developed and implemented by the probation department, as advised by a local Community Corrections Partnership. This bill would require specified local officials to serve as part of that Community Corrections Partnership. Because this bill would increase the duties for certain local officials, it would impose a state-mandated local program.

Existing law requires the Department of Corrections and Rehabilitation to release a prisoner on a specified period of parole after the expiration of a specified term of imprisonment. Under existing law, the department is authorized to return a parolee to prison if the Board of Parole Hearings determines that the parolee violated the terms of his or her parole, as specified.

This bill would prohibit the department from returning certain parolees to prison, placing a parole hold on the parolee, or reporting the parolee to the Board of Parole Hearings for a violation of parole, as specified.

3                                                                              95

Existing law requires the Department of Corrections and Rehabilitation to establish certain pilot programs to assist parolees in the successful reintegration of those parolees into the community.

This bill would require the Secretary of the Department of Corrections and Rehabilitation to establish a parole reentry accountability program for parolees who have been sentenced to a determinate term of imprisonment. The bill would require the department to employ a parole violation decisionmaking instrument to determine the most appropriate sanctions for parolees who violate their parole conditions. The bill would require the department to adopt regulations that make appropriate changes in policies and procedures to reflect the bill's intent.

The bill would also authorize the department to refer these parolees, if they have a history of substance abuse or mental illness and violate their parole conditions, to a reentry court program. The bill would require the secretary, subject to available funding, to enter into a memorandum of understanding with the Administrative Office of the Courts for the purpose of the establishment and operation of parolee reentry programs, as specified.

The bill would require the Judicial Council, in collaboration with the department, to design and perform an evaluation of the program to assess its effectiveness in reducing recidivism among parolees and reducing parole revocations. The bill would also require the Judicial Council, in collaboration with the department, to submit a final report of its findings to the Legislature and the Governor, as specified.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that with regard to certain mandates no reimbursement is required by this act for a specified reason.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

The California Constitution authorizes the Governor to declare a fiscal emergency and to call the Legislature into special session for that purpose. The Governor issued a proclamation declaring a fiscal emergency, and calling a special session for this purpose, on December 19, 2008.

This bill would state that it addresses the fiscal emergency declared by the Governor by proclamation issued on December 19, 2008, pursuant to the California Constitution.

*The people of the State of California do enact as follows:*

SECTION 1. Section 14491 of the Business and Professions Code is amended to read:

14491. The violation of any of the provisions of this article is a misdemeanor, except that if the violation consists of unlawfully using,

selling, or secreting in any place supplies of a value exceeding nine hundred fifty dollars ($950), the violation is a felony.

SEC. 2.   Section 17550.19 of the Business and Professions Code is amended to read:

17550.19.   In addition to any civil penalties provided in this division, violation of this article is punishable as follows:

(a)  As a misdemeanor by a fine of not more than ten thousand dollars ($10,000), by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment for each violation.

(b)  In addition, any violation of Section 17550.14 or subdivision (b) or (c) of Section 17550.15 where money or real or personal property received or obtained by a seller of travel for transportation or travel services from any and all persons aggregates two thousand three hundred fifty dollars ($2,350) or more in any consecutive 12-month period, or the payment or payments by or on behalf of any one passenger exceeds in the aggregate nine hundred fifty dollars ($950) in any 12-month period, is punishable either as a misdemeanor or as a felony by imprisonment in the state prison for 16 months, or two or three years, by a fine of not more than twenty-five thousand dollars ($25,000), or by both that fine and imprisonment for each violation.

(c)  In addition, any intentional use for any purpose of a false seller of travel registration number, with intent to defraud, by an unregistered seller of travel is punishable as a misdemeanor or felony as provided in this section.

(d)  Any violation of Section 17550.15 shall be a misdemeanor and shall be punished as provided in this section. Every act in violation of Section 17550.15 may be prosecuted as a separate and distinct violation and consecutive sentences may be imposed for each violation.

(e)  Sellers of travel shall also comply with Sections 17537, 17537.1, and 17537.2 of the Business and Professions Code and all other applicable laws. This section shall not be construed to preclude the applicability of any other provision of the criminal law of this state that applies or may apply to any transaction.

SEC. 3.   Section 21653 of the Business and Professions Code is amended to read:

21653.   Every junk dealer or secondhand dealer who resells any item acquired in violation of Section 21652 is guilty of a felony, if the value of the item exceeds nine hundred fifty dollars ($950), and is guilty of a misdemeanor if the value of the item does not exceed nine hundred fifty dollars ($950).

SEC. 4.   Section 5305 of the Financial Code is amended to read:

5305.   Any institution-affiliated party who abstracts or willfully misapplies any of the money, funds, or property of the savings association, or willfully misapplies its credit, is guilty of a felony and shall be punished by a fine of not more than one million dollars ($1,000,000), by imprisonment in the state prison for 2, 3, or 4 years, or by both that fine and imprisonment. However, if the amount abstracted or willfully misapplied does not exceed two hundred fifty dollars ($250), the offense shall instead be punishable by

a fine of not more than one thousand dollars ($1,000), by imprisonment in the county jail for not more than one year or in the state prison, or by both that fine and imprisonment.

SEC. 5.  Section 421 of the Military and Veterans Code is amended to read:

421.  Any person who secretes, sells, disposes of, offers for sale, purchases, retains after demand made by a commissioned officer of the National Guard or of the unorganized militia when called into the service of the state or Naval Militia, or in any manner pawns or pledges any arms, uniforms, equipment, or military or naval property of the state or of the United States, or of any organization of the active militia or of the unorganized militia when called into the service of the state is guilty of a felony if said arms, uniforms, equipments, or military or naval property of the state or of the United States is of a value of nine hundred fifty dollars ($950) or more, otherwise such person is guilty of a misdemeanor.

SEC. 6.  Section 154 of the Penal Code is amended to read:

154.  (a) Every debtor who fraudulently removes his or her property or effects out of this state, or who fraudulently sells, conveys, assigns or conceals his or her property with intent to defraud, hinder or delay his or her creditors of their rights, claims, or demands, is punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(b) Where the property so removed, sold, conveyed, assigned, or concealed consists of a stock in trade, or a part thereof, of a value exceeding two hundred fifty dollars ($250), the offense shall be a felony and punishable as such.

SEC. 7.  Section 155 of the Penal Code is amended to read:

155.  (a) Every person against whom an action is pending, or against whom a judgment has been rendered for the recovery of any personal property, who fraudulently conceals, sells, or disposes of that property, with intent to hinder, delay, or defraud the person bringing the action or recovering the judgment, or with such intent removes that property beyond the limits of the county in which it may be at the time of the commencement of the action or the rendering of the judgment, is punishable by imprisonment in a county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(b) Where the property so concealed, sold, disposed of, or removed consists of a stock in trade, or a part thereof, of a value exceeding two hundred fifty dollars ($250), the offenses shall be a felony and punishable as such.

SEC. 8.  Section 337.4 of the Penal Code is amended to read:

337.4.  Any person who in the commission of touting obtains money in excess of nine hundred fifty dollars ($950) may, in addition to being prosecuted for the violation of any provision of this chapter, be prosecuted for the violation of Section 487 of this code.

SEC. 9.  Section 368 of the Penal Code is amended to read:

368. (a) The Legislature finds and declares that crimes against elders and dependent adults are deserving of special consideration and protection, not unlike the special protections provided for minor children, because elders and dependent adults may be confused, on various medications, mentally or physically impaired, or incompetent, and therefore less able to protect themselves, to understand or report criminal conduct, or to testify in court proceedings on their own behalf.

(b) (1) Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years.

(2) If in the commission of an offense described in paragraph (1), the victim suffers great bodily injury, as defined in Section 12022.7, the defendant shall receive an additional term in the state prison as follows:

(A) Three years if the victim is under 70 years of age.

(B) Five years if the victim is 70 years of age or older.

(3) If in the commission of an offense described in paragraph (1), the defendant proximately causes the death of the victim, the defendant shall receive an additional term in the state prison as follows:

(A) Five years if the victim is under 70 years of age.

(B) Seven years if the victim is 70 years of age or older.

(c) Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health may be endangered, is guilty of a misdemeanor. A second or subsequent violation of this subdivision is punishable by a fine not to exceed two thousand dollars ($2,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

(d) Any person who is not a caretaker who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of an elder or a dependent adult, and who knows or reasonably should know that the victim is an elder or a dependent adult, is punishable by imprisonment in a county jail not exceeding one year, or

③                                                                                      95

in the state prison for two, three, or four years, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950); and by a fine not exceeding one thousand dollars ($1,000), by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value not exceeding nine hundred fifty dollars ($950).

(e) Any caretaker of an elder or a dependent adult who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of that elder or dependent adult, is punishable by imprisonment in a county jail not exceeding one year, or in the state prison for two, three, or four years when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950), and by a fine not exceeding one thousand dollars ($1,000), by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value not exceeding nine hundred fifty dollars ($950).

(f) Any person who commits the false imprisonment of an elder or a dependent adult by the use of violence, menace, fraud, or deceit is punishable by imprisonment in the state prison for two, three, or four years.

(g) As used in this section, "elder" means any person who is 65 years of age or older.

(h) As used in this section, "dependent adult" means any person who is between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age. "Dependent adult" includes any person between the ages of 18 and 64 who is admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code.

(i) As used in this section, "caretaker" means any person who has the care, custody, or control of, or who stands in a position of trust with, an elder or a dependent adult.

(j) Nothing in this section shall preclude prosecution under both this section and Section 187 or 12022.7 or any other provision of law. However, a person shall not receive an additional term of imprisonment under both paragraphs (2) and (3) of subdivision (b) for any single offense, nor shall a person receive an additional term of imprisonment under both Section 12022.7 and paragraph (2) or (3) of subdivision (b) for any single offense.

(k) In any case in which a person is convicted of violating these provisions, the court may require him or her to receive appropriate counseling as a condition of probation. Any defendant ordered to be placed in a counseling program shall be responsible for paying the expense of his or her participation in the counseling program as determined by the court.

3

Ch. 28                   — 8 —

The court shall take into consideration the ability of the defendant to pay, and no defendant shall be denied probation because of his or her inability to pay.

SEC. 10.   Section 422.7 of the Penal Code is amended to read:

422.7.   Except in the case of a person punished under Section 422.6, any hate crime that is not made punishable by imprisonment in the state prison shall be punishable by imprisonment in the state prison or in a county jail not to exceed one year, by a fine not to exceed ten thousand dollars ($10,000), or by both that imprisonment and fine, if the crime is committed against the person or property of another for the purpose of intimidating or interfering with that other person's free exercise or enjoyment of any right secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States under any of the following circumstances, which shall be charged in the accusatory pleading:

(a)  The crime against the person of another either includes the present ability to commit a violent injury or causes actual physical injury.

(b)  The crime against property causes damage in excess of nine hundred fifty dollars ($950).

(c)  The person charged with a crime under this section has been convicted previously of a violation of subdivision (a) or (b) of Section 422.6, or has been convicted previously of a conspiracy to commit a crime described in subdivision (a) or (b) of Section 422.6.

SEC. 11.   Section 461 of the Penal Code is amended to read:

461.   Burglary is punishable as follows:

(a)  Burglary in the first degree: by imprisonment in the state prison for two, four, or six years.

(b)  Burglary in the second degree: by imprisonment in the county jail not exceeding one year or in the state prison.

SEC. 12.   Section 463 of the Penal Code is amended to read:

463.   (a)  Every person who violates Section 459, punishable as a second-degree burglary pursuant to subdivision (b) of Section 461, during and within an affected county in a "state of emergency" or a "local emergency" resulting from an earthquake, fire, flood, riot, or other natural or manmade disaster shall be guilty of the crime of looting, punishable by imprisonment in a county jail for one year or in the state prison. Any person convicted under this subdivision who is eligible for probation and who is granted probation shall, as a condition thereof, be confined in a county jail for at least 180 days, except that the court may, in the case where the interest of justice would best be served, reduce or eliminate that mandatory jail sentence, if the court specifies on the record and enters into the minutes the circumstances indicating that the interest of justice would best be served by that disposition. In addition to whatever custody is ordered, the court, in its discretion, may require any person granted probation following conviction under this subdivision to serve up to 240 hours of community service in any program deemed appropriate by the court, including any program created to rebuild the community.

3                                                                    95

For purposes of this section, the fact that the structure entered has been damaged by the earthquake, fire, flood, or other natural or manmade disaster shall not, in and of itself, preclude conviction.

(b) Every person who commits the crime of grand theft, as defined in Section 487, except grand theft of a firearm, during and within an affected county in a "state of emergency" or a "local emergency" resulting from an earthquake, fire, flood, riot, or other natural or unnatural disaster shall be guilty of the crime of looting, punishable by imprisonment in a county jail for one year or in the state prison. Every person who commits the crime of grand theft of a firearm, as defined in Section 487, during and within an affected county in a "state of emergency" or a "local emergency" resulting from an earthquake, fire, flood, riot, or other natural or unnatural disaster shall be guilty of the crime of looting, punishable by imprisonment in the state prison, as set forth in subdivision (a) of Section 489. Any person convicted under this subdivision who is eligible for probation and who is granted probation shall, as a condition thereof, be confined in a county jail for at least 180 days, except that the court may, in the case where the interest of justice would best be served, reduce or eliminate that mandatory jail sentence, if the court specifies on the record and enters into the minutes the circumstances indicating that the interest of justice would best be served by that disposition. In addition to whatever custody is ordered, the court, in its discretion, may require any person granted probation following conviction under this subdivision to serve up to 160 hours of community service in any program deemed appropriate by the court, including any program created to rebuild the community.

(c) Every person who commits the crime of petty theft, as defined in Section 488, during and within an affected county in a "state of emergency" or a "local emergency" resulting from an earthquake, fire, flood, riot, or other natural or manmade disaster shall be guilty of a misdemeanor, punishable by imprisonment in a county jail for six months. Any person convicted under this subdivision who is eligible for probation and who is granted probation shall, as a condition thereof, be confined in a county jail for at least 90 days, except that the court may, in the case where the interest of justice would best be served, reduce or eliminate that mandatory minimum jail sentence, if the court specifies on the record and enters into the minutes the circumstances indicating that the interest of justice would best be served by that disposition. In addition to whatever custody is ordered, the court, in its discretion, may require any person granted probation following conviction under this subdivision to serve up to 80 hours of community service in any program deemed appropriate by the court, including any program created to rebuild the community.

(d) (1) For purposes of this section, "state of emergency" means conditions which, by reason of their magnitude, are, or are likely to be, beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, or city and require the combined forces of a mutual aid region or regions to combat.

3

95

(2) For purposes of this section, "local emergency" means conditions which, by reason of their magnitude, are, or are likely to be, beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, or city and require the combined forces of a mutual aid region or regions to combat.

(3) For purposes of this section, a "state of emergency" shall exist from the time of the proclamation of the condition of the emergency until terminated pursuant to Section 8629 of the Government Code. For purposes of this section only, a "local emergency" shall exist from the time of the proclamation of the condition of the emergency by the local governing body until terminated pursuant to Section 8630 of the Government Code.

(4) Consensual entry into a commercial structure with the intent to commit a violation of Section 470, 476, 476a, 484f, or 484g of the Penal Code, shall not be charged as a violation under this section.

SEC. 13.   Section 476a of the Penal Code is amended to read:

476a. (a) Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of that making, drawing, uttering, or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with the bank or depositary, or person, or firm, or corporation, for the payment of that check, draft, or order and all other checks, drafts, or orders upon funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in a county jail for not more than one year, or in the state prison.

(b) However, if the total amount of all such checks, drafts, or orders that the defendant is charged with and convicted of making, drawing, or uttering does not exceed four hundred fifty dollars ($450), the offense is punishable only by imprisonment in the county jail for not more than one year, except that this subdivision shall not be applicable if the defendant has previously been convicted of a violation of Section 470, 475, or 476, or of this section, or of the crime of petty theft in a case in which defendant's offense was a violation also of Section 470, 475, or 476 or of this section or if the defendant has previously been convicted of any offense under the laws of any other state or of the United States which, if committed in this state, would have been punishable as a violation of Section 470, 475 or 476 or of this section or if he has been so convicted of the crime of petty theft in a case in which, if defendant's offense had been committed in this state, it would have been a violation also of Section 470, 475, or 476, or of this section.

(c) Where the check, draft, or order is protested, on the ground of insufficiency of funds or credit, the notice of protest shall be admissible as proof of presentation, nonpayment and protest and shall be presumptive evidence of knowledge of insufficiency of funds or credit with the bank or depositary, or person, or firm, or corporation.

3

(d) In any prosecution under this section involving two or more checks, drafts, or orders, it shall constitute prima facie evidence of the identity of the drawer of a check, draft, or order if both of the following occur:

(1) When the payee accepts the check, draft or order from the drawer, he or she obtains from the drawer the following information: name and residence of the drawer, business or mailing address, either a valid driver's license number or Department of Motor Vehicles identification card number, and the drawer's home or work phone number or place of employment. That information may be recorded on the check, draft, or order itself or may be retained on file by the payee and referred to on the check, draft, or order by identifying number or other similar means.

(2) The person receiving the check, draft, or order witnesses the drawer's signature or endorsement, and, as evidence of that, initials the check, draft, or order at the time of receipt.

(e) The word "credit" as used herein shall be construed to mean an arrangement or understanding with the bank or depositary or person or firm or corporation for the payment of such check, draft or order.

(f) If any of the preceding paragraphs, or parts thereof, shall be found unconstitutional or invalid, the remainder of this section shall not thereby be invalidated, but shall remain in full force and effect.

(g) A sheriff's department, police department, or other law enforcement agency may collect a fee from the defendant for investigation, collection, and processing of checks referred to their agency for investigation of alleged violations of this section or Section 476.

The amount of the fee shall not exceed twenty-five dollars ($25) for each bad check in addition to the amount of any bank charges incurred by the victim as a result of the alleged offense. If the sheriff's department, police department, or other law enforcement agency collects any fee for bank charges incurred by the victim pursuant to this section, that fee shall be paid to the victim for any bank fees the victim may have been assessed. In no event shall reimbursement of the bank charge to the victim pursuant to this section exceed ten dollars ($10) per check.

SEC. 14.  Section 484b of the Penal Code is amended to read:

484b.  Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than for which the funds were received, shall be guilty of a public offense and shall be punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both that fine and that imprisonment if the amount diverted is in excess of two thousand three hundred fifty dollars ($2,350). If the amount diverted is less than or equal to two thousand three hundred fifty dollars ($2,350), the person shall be guilty of a misdemeanor.

SEC. 15.  Section 484g of the Penal Code is amended to read:

484g. Every person who, with the intent to defraud, (a) uses, for the purpose of obtaining money, goods, services, or anything else of value, an access card or access card account information that has been altered, obtained, or retained in violation of Section 484e or 484f, or an access card which he or she knows is forged, expired, or revoked, or (b) obtains money, goods, services, or anything else of value by representing without the consent of the cardholder that he or she is the holder of an access card and the card has not in fact been issued, is guilty of theft. If the value of all money, goods, services, and other things of value obtained in violation of this section exceeds nine hundred fifty dollars ($950) in any consecutive six-month period, then the same shall constitute grand theft.

SEC. 16.  Section 484h of the Penal Code is amended to read:

484h.  Every retailer or other person who, with intent to defraud:

(a)  Furnishes money, goods, services or anything else of value upon presentation of an access card obtained or retained in violation of Section 484e or an access card which he or she knows is a counterfeit access card or is forged, expired, or revoked, and who receives any payment therefor, is guilty of theft. If the payment received by the retailer or other person for all money, goods, services, and other things of value furnished in violation of this section exceeds nine hundred fifty dollars ($950) in any consecutive six-month period, then the same shall constitute grand theft.

(b)  Presents for payment a sales slip or other evidence of an access card transaction, and receives payment therefor, without furnishing in the transaction money, goods, services, or anything else of value that is equal in value to the amount of the sales slip or other evidence of an access card transaction, is guilty of theft. If the difference between the value of all money, goods, services, and anything else of value actually furnished and the payment or payments received by the retailer or other person therefor upon presentation of a sales slip or other evidence of an access card transaction exceeds nine hundred fifty dollars ($950) in any consecutive six-month period, then the same shall constitute grand theft.

SEC. 17.  Section 487 of the Penal Code is amended to read:

487.  Grand theft is theft committed in any of the following cases:

(a)  When the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400) except as provided in subdivision (b).

(b)  Notwithstanding subdivision (a), grand theft is committed in any of the following cases:

(1) (A)  When domestic fowls, avocados, olives, citrus or deciduous fruits, other fruits, vegetables, nuts, artichokes, or other farm crops are taken of a value exceeding two hundred fifty dollars ($250).

(B)  For the purposes of establishing that the value of avocados or citrus fruit under this paragraph exceeds two hundred fifty dollars ($250), that value may be shown by the presentation of credible evidence which establishes that on the day of the theft avocados or citrus fruit of the same variety and weight exceeded two hundred fifty dollars ($250) in wholesale value.

(2) When fish, shellfish, mollusks, crustaceans, kelp, algae, or other aquacultural products are taken from a commercial or research operation which is producing that product, of a value exceeding two hundred fifty dollars ($250).

(3) Where the money, labor, or real or personal property is taken by a servant, agent, or employee from his or her principal or employer and aggregates nine hundred fifty dollars ($950) or more in any 12 consecutive month period.

(c) When the property is taken from the person of another.

(d) When the property taken is any of the following:

(1) An automobile, horse, mare, gelding, any bovine animal, any caprine animal, mule, jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow, or pig.

(2) A firearm.

(e) This section shall become operative on January 1, 1997.

SEC. 18.  Section 487b of the Penal Code is amended to read:

487b.  Every person who converts real estate of the value of two hundred fifty dollars ($250) or more into personal property by severance from the realty of another, and with felonious intent to do so, steals, takes, and carries away that property is guilty of grand theft and is punishable by imprisonment in the state prison.

SEC. 19.  Section 487c of the Penal Code is amended to read:

487c.  Every person who converts real estate of the value of less than two hundred fifty dollars ($250) into personal property by severance from the realty of another, and with felonious intent to do so steals, takes, and carries away that property is guilty of petty theft and is punishable by imprisonment in the county jail for not more than one year, or by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

SEC. 20.  Section 487e of the Penal Code is amended to read:

487e.  Every person who feloniously steals, takes, or carries away a dog of another which is of a value exceeding nine hundred fifty dollars ($950) is guilty of grand theft.

SEC. 21.  Section 487f of the Penal Code is amended to read:

487f.  Every person who feloniously steals, takes, or carries away a dog of another which is of a value not exceeding nine hundred fifty dollars ($950) is guilty of petty theft.

SEC. 22.  Section 487h of the Penal Code is amended to read:

487h.  (a) Every person who steals, takes, or carries away cargo of another, when the cargo taken is of a value exceeding nine hundred fifty dollars ($950), except as provided in Sections 487, 487a, and 487d, is guilty of grand theft.

(b) For the purposes of this section, "cargo" means any goods, wares, products, or manufactured merchandise that has been loaded into a trailer, railcar, or cargo container, awaiting or in transit.

(c) This section shall remain in effect only until January 1, 2010, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2010, deletes or extends that date.

Ch. 28                    — 14 —

SEC. 23.  Section 496 of the Penal Code is amended to read:

496.  (a)  Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year. However, if the district attorney or the grand jury determines that this action would be in the interests of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed nine hundred fifty dollars ($950), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year.

A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property.

(b)  Every swap meet vendor, as defined in Section 21661 of the Business and Professions Code, and every person whose principal business is dealing in, or collecting, merchandise or personal property, and every agent, employee, or representative of that person, who buys or receives any property of a value in excess of nine hundred fifty dollars ($950) that has been stolen or obtained in any manner constituting theft or extortion, under circumstances that should cause the person, agent, employee, or representative to make reasonable inquiry to ascertain that the person from whom the property was bought or received had the legal right to sell or deliver it, without making a reasonable inquiry, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year.

Every swap meet vendor, as defined in Section 21661 of the Business and Professions Code, and every person whose principal business is dealing in, or collecting, merchandise or personal property, and every agent, employee, or representative of that person, who buys or receives any property of a value of nine hundred fifty dollars ($950) or less that has been stolen or obtained in any manner constituting theft or extortion, under circumstances that should cause the person, agent, employee, or representative to make reasonable inquiry to ascertain that the person from whom the property was bought or received had the legal right to sell or deliver it, without making a reasonable inquiry, shall be guilty of a misdemeanor.

(c)  Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

(d)  Notwithstanding Section 664, any attempt to commit any act prohibited by this section, except an offense specified in the accusatory pleading as a misdemeanor, is punishable by imprisonment in the state prison, or in a county jail for not more than one year.

SEC. 24.  Section 498 of the Penal Code is amended to read:

498.  (a)  The following definitions govern the construction of this section:

(1) "Person" means any individual, or any partnership, firm, association, corporation, limited liability company, or other legal entity.

(2) "Utility" means any electrical, gas, or water corporation as those terms are defined in the Public Utilities Code, and electrical, gas, or water systems operated by any political subdivision.

(3) "Customer" means the person in whose name utility service is provided.

(4) "Utility service" means the provision of electricity, gas, water, or any other service provided by the utility for compensation.

(5) "Divert" means to change the intended course or path of electricity, gas, or water without the authorization or consent of the utility.

(6) "Tamper" means to rearrange, injure, alter, interfere with, or otherwise prevent from performing a normal or customary function.

(7) "Reconnection" means the reconnection of utility service by a customer or other person after service has been lawfully disconnected by the utility.

(b) Any person who, with intent to obtain for himself or herself utility services without paying the full lawful charge therefor, or with intent to enable another person to do so, or with intent to deprive any utility of any part of the full lawful charge for utility services it provides, commits, authorizes, solicits, aids, or abets any of the following shall be guilty of a misdemeanor:

(1) Diverts or causes to be diverted utility services, by any means.

(2) Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.

(3) Tampers with any property owned by or used by the utility to provide utility services.

(4) Makes or causes to be made any connection with or reconnection with property owned or used by the utility to provide utility services without the authorization or consent of the utility.

(5) Uses or receives the direct benefit of all or a portion of utility services with knowledge or reason to believe that the diversion, tampering, or unauthorized connection existed at the time of that use, or that the use or receipt was otherwise without the authorization or consent of the utility.

(c) In any prosecution under this section, the presence of any of the following objects, circumstances, or conditions on premises controlled by the customer or by the person using or receiving the direct benefit of all or a portion of utility services obtained in violation of this section shall permit an inference that the customer or person intended to and did violate this section:

(1) Any instrument, apparatus, or device primarily designed to be used to obtain utility services without paying the full lawful charge therefor.

(2) Any meter that has been altered, tampered with, or bypassed so as to cause no measurement or inaccurate measurement of utility services.

(d) If the value of all utility services obtained in violation of this section totals more than nine hundred fifty dollars ($950) or if the defendant has

previously been convicted of an offense under this section or any former section which would be an offense under this section, or of an offense under the laws of another state or of the United States which would have been an offense under this section if committed in this state, then the violation is punishable by imprisonment in a county jail for not more than one year, or in the state prison.

(e) This section shall not be construed to preclude the applicability of any other provision of the criminal law of this state.

SEC. 25. Section 500 of the Penal Code is amended to read:

500. (a) Any person who receives money for the actual or purported purpose of transmitting the same or its equivalent to foreign countries as specified in Section 1800.5 of the Financial Code who fails to do at least one of the following acts unless otherwise instructed by the customer is guilty of a misdemeanor or felony as set forth in subdivision (b):

(1) Forward the money as represented to the customer within 10 days of receipt of the funds.

(2) Give instructions within 10 days of receipt of the customer's funds, committing equivalent funds to the person designated by the customer.

(3) Refund to the customer any money not forwarded as represented within 10 days of the customer's written request for a refund pursuant to subdivision (a) of Section 1810.5 of the Financial Code.

(b) (1) If the total value of the funds received from the customer is less than nine hundred fifty dollars ($950), the offense set forth in subdivision (a) is punishable by imprisonment in a county jail not exceeding one year or by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(2) If the total value of the money received from the customer is nine hundred fifty dollars ($950) or more, or if the total value of all moneys received by the person from different customers is nine hundred fifty dollars ($950) or more, and the receipts were part of a common scheme or plan, the offense set forth in subdivision (a) is punishable by imprisonment in the state prison for 16 months, 2, or 3 years, by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine.

SEC. 26. Section 502 of the Penal Code is amended to read:

502. (a) It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.

The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns,

governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

(b) For the purposes of this section, the following terms have the following meanings:

(1) "Access" means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network.

(2) "Computer network" means any system that provides communications between one or more computer systems and input/output devices including, but not limited to, display terminals and printers connected by telecommunication facilities.

(3) "Computer program or software" means a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions.

(4) "Computer services" includes, but is not limited to, computer time, data processing, or storage functions, or other uses of a computer, computer system, or computer network.

(5) "Computer system" means a device or collection of devices, including support devices and excluding calculators that are not programmable and capable of being used in conjunction with external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions including, but not limited to, logic, arithmetic, data storage and retrieval, communication, and control.

(6) "Data" means a representation of information, knowledge, facts, concepts, computer software, computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device.

(7) "Supporting documentation" includes, but is not limited to, all information, in any form, pertaining to the design, construction, classification, implementation, use, or modification of a computer, computer system, computer network, computer program, or computer software, which information is not generally available to the public and is necessary for the operation of a computer, computer system, computer network, computer program, or computer software.

(8) "Injury" means any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access to legitimate users of a computer system, network, or program.

(9) "Victim expenditure" means any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access.

(10) "Computer contaminant" means any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information. They include, but are not

3                                                             95

limited to, a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network.

(11) "Internet domain name" means a globally unique, hierarchical reference to an Internet host or service, assigned through centralized Internet naming authorities, comprising a series of character strings separated by periods, with the rightmost character string specifying the top of the hierarchy.

(c)  Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

(1)  Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2)  Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3)  Knowingly and without permission uses or causes to be used computer services.

(4)  Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(5)  Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

(6)  Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7)  Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

(8)  Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

(9)  Knowingly and without permission uses the Internet domain name of another individual, corporation, or entity in connection with the sending of one or more electronic mail messages, and thereby damages or causes damage to a computer, computer system, or computer network.

(d)  (1)  Any person who violates any of the provisions of paragraph (1), (2), (4), or (5) of subdivision (c) is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for 16 months, or two or three years, or by both that fine and imprisonment, or by

— 19 —                                         Ch. 28

a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(2)  Any person who violates paragraph (3) of subdivision (c) is punishable as follows:

(A)  For the first violation that does not result in injury, and where the value of the computer services used does not exceed nine hundred fifty dollars ($950), by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(B)  For any violation that results in a victim expenditure in an amount greater than five thousand dollars ($5,000) or in an injury, or if the value of the computer services used exceeds nine hundred fifty dollars ($950), or for any second or subsequent violation, by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for 16 months, or two or three years, or by both that fine and imprisonment, or by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(3)  Any person who violates paragraph (6) or (7) of subdivision (c) is punishable as follows:

(A)  For a first violation that does not result in injury, an infraction punishable by a fine not exceeding one thousand dollars ($1,000).

(B)  For any violation that results in a victim expenditure in an amount not greater than five thousand dollars ($5,000), or for a second or subsequent violation, by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(C)  For any violation that results in a victim expenditure in an amount greater than five thousand dollars ($5,000), by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for 16 months, or two or three years, or by both that fine and imprisonment, or by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(4)  Any person who violates paragraph (8) of subdivision (c) is punishable as follows:

(A)  For a first violation that does not result in injury, a misdemeanor punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(B)  For any violation that results in injury, or for a second or subsequent violation, by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

(5)  Any person who violates paragraph (9) of subdivision (c) is punishable as follows:

(A)  For a first violation that does not result in injury, an infraction punishable by a fine not one thousand dollars.

3                                                           95

(B)  For any violation that results in injury, or for a second or subsequent violation, by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

(e)  (1)  In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access. For the purposes of actions authorized by this subdivision, the conduct of an unemancipated minor shall be imputed to the parent or legal guardian having control or custody of the minor, pursuant to the provisions of Section 1714.1 of the Civil Code.

(2)  In any action brought pursuant to this subdivision the court may award reasonable attorney's fees.

(3)  A community college, state university, or academic institution accredited in this state is required to include computer-related crimes as a specific violation of college or university student conduct policies and regulations that may subject a student to disciplinary sanctions up to and including dismissal from the academic institution. This paragraph shall not apply to the University of California unless the Board of Regents adopts a resolution to that effect.

(4)  In any action brought pursuant to this subdivision for a willful violation of the provisions of subdivision (c), where it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice as defined in subdivision (c) of Section 3294 of the Civil Code, the court may additionally award punitive or exemplary damages.

(5)  No action may be brought pursuant to this subdivision unless it is initiated within three years of the date of the act complained of, or the date of the discovery of the damage, whichever is later.

(f)  This section shall not be construed to preclude the applicability of any other provision of the criminal law of this state which applies or may apply to any transaction, nor shall it make illegal any employee labor relations activities that are within the scope and protection of state or federal labor laws.

(g)  Any computer, computer system, computer network, or any software or data, owned by the defendant, that is used during the commission of any public offense described in subdivision (c) or any computer, owned by the defendant, which is used as a repository for the storage of software or data illegally obtained in violation of subdivision (c) shall be subject to forfeiture, as specified in Section 502.01.

(h)  (1)  Subdivision (c) does not apply to punish any acts which are committed by a person within the scope of his or her lawful employment. For purposes of this section, a person acts within the scope of his or her

3

employment when he or she performs acts which are reasonably necessary to the performance of his or her work assignment.

(2) Paragraph (3) of subdivision (c) does not apply to penalize any acts committed by a person acting outside of his or her lawful employment, provided that the employee's activities do not cause an injury, as defined in paragraph (8) of subdivision (b), to the employer or another, or provided that the value of supplies or computer services, as defined in paragraph (4) of subdivision (b), which are used does not exceed an accumulated total of two hundred fifty dollars ($250).

(i) No activity exempted from prosecution under paragraph (2) of subdivision (h) which incidentally violates paragraph (2), (4), or (7) of subdivision (c) shall be prosecuted under those paragraphs.

(j) For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

(k) In determining the terms and conditions applicable to a person convicted of a violation of this section the court shall consider the following:

(1) The court shall consider prohibitions on access to and use of computers.

(2) Except as otherwise required by law, the court shall consider alternate sentencing, including community service, if the defendant shows remorse and recognition of the wrongdoing, and an inclination not to repeat the offense.

SEC. 27. Section 537 of the Penal Code is amended to read:

537. (a) Any person who obtains any food, fuel, services, or accommodations at a hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, ski area, or public or private campground, without paying therefor, with intent to defraud the proprietor or manager thereof, or who obtains credit at an hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, or public or private campground by the use of any false pretense, or who, after obtaining credit, food, fuel, services, or accommodations, at an hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, or public or private campground, absconds, or surreptitiously, or by force, menace, or threats, removes any part of his or her baggage therefrom with the intent not to pay for his or her food or accommodations is guilty of a public offense punishable as follows:

(1) If the value of the credit, food, fuel, services, or accommodations is nine hundred fifty dollars ($950) or less, by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for a term not exceeding six months, or both.

(2) If the value of the credit, food, fuel, services, or accommodations is greater than nine hundred fifty dollars ($950), by imprisonment in a county jail for a term of not more than one year, or in the state prison.

Ch. 28                    — 22 —

(b) Any person who uses or attempts to use ski area facilities for which payment is required without paying as required, or who resells a ski lift ticket to another when the resale is not authorized by the proprietor, is guilty of an infraction.

(c) Evidence that a person left the premises of such an hotel, inn, restaurant, boardinghouse, lodginghouse, apartment house, bungalow court, motel, marina, marine facility, autocamp, ski area, or public or private campground, without paying or offering to pay for such food, fuel, services, use of facilities, or accommodation, or that the person, without authorization from the proprietor, resold his or her ski lift ticket to another person after making use of such facilities, shall be prima facie evidence of the following:

(1) That the person obtained such food, fuel, services, use of facilities or accommodations with intent to defraud the proprietor or manager.

(2) That, if, after obtaining the credit, food, fuel, services, or accommodations, the person absconded, or surreptitiously, or by force, menace, or threats, removed part of his or her baggage therefrom, the person did so with the intent not to pay for the credit, food, fuel, services, or accommodations.

SEC. 28.  Section 537e of the Penal Code is amended to read:

537e.  (a)  Any person who knowingly buys, sells, receives, disposes of, conceals, or has in his or her possession any personal property from which the manufacturer's serial number, identification number, electronic serial number, or any other distinguishing number or identification mark has been removed, defaced, covered, altered, or destroyed, is guilty of a public offense, punishable as follows:

(1) If the value of the property does not exceed nine hundred fifty dollars ($950), by imprisonment in a county jail not exceeding six months.

(2) If the value of the property exceeds nine hundred fifty dollars ($950), by imprisonment in a county jail not exceeding one year.

(3) If the property is an integrated computer chip or panel of a value of nine hundred fifty dollars ($950) or more, by imprisonment in the state prison for 16 months, or 2 or 3 years or by imprisonment in a county jail not exceeding one year.

(b) For purposes of this subdivision, "personal property" includes, but is not limited to, the following:

(1) Any television, radio, recorder, phonograph, telephone, piano, or any other musical instrument or sound equipment.

(2) Any washing machine, sewing machine, vacuum cleaner, or other household appliance or furnishings.

(3) Any typewriter, adding machine, dictaphone, or any other office equipment or furnishings.

(4) Any computer, printed circuit, integrated chip or panel, or other part of a computer.

(5) Any tool or similar device, including any technical or scientific equipment.

(6) Any bicycle, exercise equipment, or any other entertainment or recreational equipment.

(7) Any electrical or mechanical equipment, contrivance, material, or piece of apparatus or equipment.

(8) Any clock, watch, watch case, or watch movement.

(9) Any vehicle or vessel, or any component part thereof.

(c) When property described in subdivision (a) comes into the custody of a peace officer it shall become subject to the provision of Chapter 12 (commencing with Section 1407) of Title 10 of Part 2, relating to the disposal of stolen or embezzled property. Property subject to this section shall be considered stolen or embezzled property for the purposes of that chapter, and prior to being disposed of, shall have an identification mark imbedded or engraved in, or permanently affixed to it.

(d) This section does not apply to those cases or instances where any of the changes or alterations enumerated in subdivision (a) have been customarily made or done as an established practice in the ordinary and regular conduct of business, by the original manufacturer, or by his or her duly appointed direct representative, or under specific authorization from the original manufacturer.

SEC. 29.  Section 550 of the Penal Code is amended to read:

550.  (a)  It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

(1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.

(2) Knowingly present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer, with an intent to defraud.

(3) Knowingly cause or participate in a vehicular collision, or any other vehicular accident, for the purpose of presenting any false or fraudulent claim.

(4) Knowingly present a false or fraudulent claim for the payments of a loss for theft, destruction, damage, or conversion of a motor vehicle, a motor vehicle part, or contents of a motor vehicle.

(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

(6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

(7) Knowingly submit a claim for a health care benefit that was not used by, or on behalf of, the claimant.

(8) Knowingly present multiple claims for payment of the same health care benefit with an intent to defraud.

(9) Knowingly present for payment any undercharges for health care benefits on behalf of a specific claimant unless any known overcharges for health care benefits for that claimant are presented for reconciliation at that same time.

(10) For purposes of paragraphs (6) to (9), inclusive, a claim or a claim for payment of a health care benefit also means a claim or claim for payment

submitted by or on the behalf of a provider of any workers' compensation health benefits under the Labor Code.

(b)  It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1)  Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(2)  Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3)  Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

(4)  Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state.

(c)  (1)  Every person who violates paragraph (1), (2), (3), (4), or (5) of subdivision (a) is guilty of a felony punishable by imprisonment in the state prison for two, three, or five years, and by a fine not exceeding fifty thousand dollars ($50,000), or double the amount of the fraud, whichever is greater.

(2)  Every person who violates paragraph (6), (7), (8), or (9) of subdivision (a) is guilty of a public offense.

(A)  When the claim or amount at issue exceeds nine hundred fifty dollars ($950), the offense is punishable by imprisonment in the state prison for two, three, or five years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine, or by imprisonment in a county jail not to exceed one year, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine.

(B)  When the claim or amount at issue is nine hundred fifty dollars ($950) or less, the offense is punishable by imprisonment in a county jail not to exceed six months, or by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine, unless the aggregate amount of the claims or amount at issue exceeds nine hundred fifty dollars ($950) in any 12-consecutive-month period, in which case the claims or amounts may be charged as in subparagraph (A).

(3)  Every person who violates paragraph (1), (2), (3), or (4) of subdivision (b) shall be punished by imprisonment in the state prison for two, three, or five years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine, or by imprisonment in a county jail not to exceed

one year, or by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine.

(4) Restitution shall be ordered for a person convicted of violating this section, including restitution for any medical evaluation or treatment services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid.

(d) Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of a sentence be suspended for, any adult person convicted of felony violations of this section who previously has been convicted of felony violations of this section or Section 548, or of Section 1871.4 of the Insurance Code, or former Section 556 of the Insurance Code, or former Section 1871.1 of the Insurance Code as an adult under charges separately brought and tried two or more times. The existence of any fact that would make a person ineligible for probation under this subdivision shall be alleged in the information or indictment, and either admitted by the defendant in an open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury.

Except when the existence of the fact was not admitted or found to be true or the court finds that a prior felony conviction was invalid, the court shall not strike or dismiss any prior felony convictions alleged in the information or indictment.

This subdivision does not prohibit the adjournment of criminal proceedings pursuant to Division 3 (commencing with Section 3000) or Division 6 (commencing with Section 6000) of the Welfare and Institutions Code.

(e) Except as otherwise provided in subdivision (f), any person who violates subdivision (a) or (b) and who has a prior felony conviction of an offense set forth in either subdivision (a) or (b), in Section 548, in Section 1871.4 of the Insurance Code, in former Section 556 of the Insurance Code, or in former Section 1871.1 of the Insurance Code shall receive a two-year enhancement for each prior felony conviction in addition to the sentence provided in subdivision (c). The existence of any fact that would subject a person to a penalty enhancement shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury. Any person who violates this section shall be subject to appropriate orders of restitution pursuant to Section 13967 of the Government Code.

(f) Any person who violates paragraph (3) of subdivision (a) and who has two prior felony convictions for a violation of paragraph (3) of subdivision (a) shall receive a five-year enhancement in addition to the sentence provided in subdivision (c). The existence of any fact that would subject a person to a penalty enhancement shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is

established by plea of guilty or nolo contendere or by trial by the court sitting without a jury.

(g) Except as otherwise provided in Section 12022.7, any person who violates paragraph (3) of subdivision (a) shall receive a two-year enhancement for each person other than an accomplice who suffers serious bodily injury resulting from the vehicular collision or accident in a violation of paragraph (3) of subdivision (a).

(h) This section shall not be construed to preclude the applicability of any other provision of criminal law or equitable remedy that applies or may apply to any act committed or alleged to have been committed by a person.

(i) Any fine imposed pursuant to this section shall be doubled if the offense was committed in connection with any claim pursuant to any automobile insurance policy in an auto insurance fraud crisis area designated by the Insurance Commissioner pursuant to Article 4.6 (commencing with Section 1874.90) of Chapter 12 of Part 2 of Division 1 of the Insurance Code.

SEC. 30.  Section 551 of the Penal Code is amended to read:

551.  (a) It is unlawful for any automotive repair dealer, contractor, or employees or agents thereof to offer to any insurance agent, broker, or adjuster any fee, commission, profit sharing, or other form of direct or indirect consideration for referring an insured to an automotive repair dealer or its employees or agents for vehicle repairs covered under a policyholder's automobile physical damage or automobile collision coverage, or to a contractor or its employees or agents for repairs to or replacement of a structure covered by a residential or commercial insurance policy.

(b) Except in cases in which the amount of the repair or replacement claim has been determined by the insurer and the repair or replacement services are performed in accordance with that determination or in accordance with provided estimates that are accepted by the insurer, it is unlawful for any automotive repair dealer, contractor, or employees or agents thereof to knowingly offer or give any discount intended to offset a deductible required by a policy of insurance covering repairs to or replacement of a motor vehicle or residential or commercial structure. This subdivision does not prohibit an advertisement for repair or replacement services at a discount as long as the amount of the repair or replacement claim has been determined by the insurer and the repair or replacement services are performed in accordance with that determination or in accordance with provided estimates that are accepted by the insurer.

(c) A violation of this section is a public offense. Where the amount at issue exceeds nine hundred fifty dollars ($950), the offense is punishable by imprisonment in the state prison for 16 months, or 2 or 3 years, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine; or by imprisonment in a county jail not to exceed one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine. In all other cases, the offense is punishable by imprisonment in a county jail not to exceed six months, by a fine of not

3

more than one thousand dollars ($1,000), or by both that imprisonment and fine.

(d) Every person who, having been convicted of subdivision (a) or (b), or Section 7027.3 or former Section 9884.75 of the Business and Professions Code and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of subdivision (a) or (b), upon a subsequent conviction of one of those offenses, shall be punished by imprisonment in the state prison for 16 months, or 2 or 3 years, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine; or by imprisonment in a county jail not to exceed one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine.

(e) For purposes of this section:

(1) "Automotive repair dealer" means a person who, for compensation, engages in the business of repairing or diagnosing malfunctions of motor vehicles.

(2) "Contractor" has the same meaning as set forth in Section 7026 of the Business and Professions Code.

SEC. 31.  Section 565 of the Penal Code is amended to read:

565.  It is a misdemeanor, punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or both, for an unauthorized person to possess or use, or to obliterate or destroy the brand registration upon, containers (including milk cases), cabinets, or other dairy equipment, which have a value of nine hundred fifty dollars ($950) or less, when the containers, cabinets, or other dairy equipment are marked with a brand that is registered pursuant to Chapter 10 (commencing with Section 34501) of Part 1 of Division 15 of the Food and Agricultural Code. "Unauthorized person" shall have the meaning of that term as defined in Section 34564 of the Food and Agricultural Code.

SEC. 32.  Section 566 of the Penal Code is amended to read:

566.  It is a felony, punishable by a fine not exceeding one thousand five hundred dollars ($1,500), or by imprisonment, or both, for an unauthorized person to possess or use, or to obliterate or destroy the brand registration upon, containers (including milk cases), cabinets, or other dairy equipment, which have a value in excess of nine hundred fifty dollars ($950), when the containers, cabinets, or other dairy equipment are marked with a brand that is registered pursuant to Chapter 10 (commencing with Section 34501) of Part 1 of Division 15 of the Food and Agricultural Code. "Unauthorized person" shall have the meaning of that term as defined in Section 34564 of the Food and Agricultural Code.

SEC. 33.  Section 592 of the Penal Code is amended to read:

592.  (a) Every person who shall, without authority of the owner or managing agent, and with intent to defraud, take water from any canal, ditch, flume, or reservoir used for the purpose of holding or conveying water for

manufacturing, agricultural, mining, irrigating, generation of power, or domestic uses is guilty of a misdemeanor.

(b)  If the total retail value of all the water taken is more than nine hundred fifty dollars ($950), or if the defendant has previously been convicted of an offense under this section or any former section that would be an offense under this section, or of an offense under the laws of another state or of the United States that would have been an offense under this section if committed in this state, then the violation is punishable by imprisonment in a county jail for not more than one year, or in the state prison.

SEC. 34.  Section 594.4 of the Penal Code is amended to read:

594.4.  (a)  Any person who willfully and maliciously injects into or throws upon, or otherwise defaces, damages, destroys, or contaminates, any structure with butyric acid, or any other similar noxious or caustic chemical or substance, is guilty of a public offense, punishable by imprisonment in the state prison or in a county jail, by a fine as specified in subdivision (b), or by both that imprisonment and fine.

(b)  (1)  If the amount of the defacement, damage, destruction, or contamination is fifty thousand dollars ($50,000) or more, by a fine of not more than fifty thousand dollars ($50,000).

(2)  If the amount of the defacement, damage, destruction, or contamination is five thousand dollars ($5,000) or more, but less than fifty thousand dollars ($50,000), by a fine of not more than ten thousand dollars ($10,000).

(3)  If the amount of defacement, damage, destruction, or contamination is nine hundred fifty dollars ($950) or more, but less than five thousand dollars ($5,000), by a fine of not more than five thousand dollars ($5,000).

(4)  If the amount of the defacement, damage, destruction, or contamination is less than nine hundred fifty dollars ($950), by a fine of not more than one thousand dollars ($1,000).

(c)  For purposes of this section, "structure" includes any house or other building being used at the time of the offense for a dwelling or for commercial purposes.

SEC. 35.  Section 641.3 of the Penal Code is amended to read:

641.3.  (a)  Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery.

(b)  This section does not apply where the amount of money or monetary worth of the thing of value is two hundred fifty dollars ($250) or less.

(c)  Commercial bribery is punishable by imprisonment in the county jail for not more than one year if the amount of the bribe is one thousand dollars ($1,000) or less, or by imprisonment in the county jail, or in the state prison for 16 months, or two or three years if the amount of the bribe exceeds one thousand dollars ($1,000).

(d)  For purposes of this section:

(1)  "Employee" means an officer, director, agent, trustee, partner, or employee.

(2)  "Employer" means a corporation, association, organization, trust, partnership, or sole proprietorship.

(3)  "Corruptly" means that the person specifically intends to injure or defraud (A) his or her employer, (B) the employer of the person to whom he or she offers, gives, or agrees to give the money or a thing of value, (C) the employer of the person from whom he or she requests, receives, or agrees to receive the money or a thing of value, or (D) a competitor of any such employer.

SEC. 36.  Chapter 3 (commencing with Section 1228) is added to Title 8 of Part 2 of the Penal Code, to read:

### CHAPTER 3. CALIFORNIA COMMUNITY CORRECTIONS PERFORMANCE INCENTIVES

1228.  (a)  This chapter shall be known and may be cited as the California Community Corrections Performance Incentives Act of 2009.

(b)  The Legislature finds and declares all of the following:

(1)  In 2007, nearly 270,000 felony offenders were subject to probation supervision in California's communities.

(2)  In 2007, out of 46,987 new admissions to state prison, nearly 20,000 were felony offenders who were committed to state prison after failing probation supervision.

(3)  Probation is a judicially imposed suspension of sentence that attempts to supervise, treat, and rehabilitate offenders while they remain in the community under the supervision of the probation department. Probation is a linchpin of the criminal justice system, closely aligned with the courts, and plays a central role in promoting public safety in California's communities.

(4)  Providing sustainable funding for improved, evidence-based probation supervision practices and capacities will improve public safety outcomes among adult felons who are on probation. Improving felony probation performance, measured by a reduction in felony probationers who are sent to prison because they were revoked on probation or convicted of another crime while on probation, will reduce the number of new admissions to state prison, saving taxpayer dollars and allowing a portion of those state savings to be redirected to probation for investing in community corrections programs.

1229.  As used in this chapter, the following definitions apply:

(a)  "Community corrections" means the placement of persons convicted of a felony offense under probation supervision, with conditions imposed by a court for a specified period.

(b) "Chief probation officer" means the chief probation officer for the county or city and county in which an adult offender is subject to probation for the conviction of a felony offense.

(c) "Community corrections program" means a program established pursuant to this act consisting of a system of felony probation supervision services dedicated to all of the following goals:

(1) Enhancing public safety through the management and reduction of offender risk while under felony probation supervision and upon reentry from jail into the community.

(2) Providing a range of probation supervision tools, sanctions, and services applied to felony probationers based on a risk/needs assessment for the purpose of reducing criminal conduct and promoting behavioral change that results in reducing recidivism and promoting the successful reintegration of offenders into the community.

(3) Maximizing offender restitution, reconciliation, and restorative services to victims of crime.

(4) Holding offenders accountable for their criminal behaviors and for successful compliance with applicable court orders and conditions of supervision.

(5) Improving public safety outcomes for persons placed on probation for a felony offense, as measured by their successful completion of probation and commensurate reduction in the rate of felony probationers sent to prison as a result of a probation revocation or conviction of a new crime.

(d) "Evidence-based practices" refers to supervision policies, procedures, programs, and practices demonstrated by scientific research to reduce recidivism among individuals under probation, parole, or postrelease supervision.

1230. (a) Each county is hereby authorized to establish in each county treasury a Community Corrections Performance Incentive Fund (CCPIF), to receive all amounts allocated to that county for purposes of implementing this chapter.

(b) In any fiscal year for which a county receives moneys to be expended for the implementation of this chapter, the moneys, including any interest, shall be made available to the chief probation officer (CPO) of that county, within 30 days of the deposit of those moneys into the fund, for the implementation of that county's community corrections program as authorized by this chapter.

(1) The community corrections program shall be developed and implemented by the probation department and advised by a local Community Corrections Partnership.

(2) The local Community Corrections Partnership shall be chaired by the chief probation officer and comprised of the following membership:

(A) The presiding judge of the superior court, or his or her designee.

(B) A county supervisor or the chief administrative officer for the county.

(C) The district attorney.

(D) The public defender.

(E) The sheriff.

Ch. 28

(F)  A chief of police.

(G)  The head of the county department of social services.

(H)  The head of the county department of mental health.

(I)  The head of the county department of employment.

(J)  The head of the county alcohol and substance abuse programs.

(K)  The head of the county office of education.

(L)  A representative from a community-based organization with experience in successfully providing rehabilitative services to persons who have been convicted of a criminal offense.

(3)  Funds allocated to probation pursuant to this act shall be used to provide supervision and rehabilitative services for adult felony offenders subject to probation, and shall be spent on evidence-based community corrections practices and programs, as defined in subdivision (c) of Section 1229, which may include, but are not limited to, the following:

(A)  Implementing and expanding evidence-based risk and needs assessments.

(B)  Implementing and expanding intermediate sanctions that include, but are not limited to, electronic monitoring, mandatory community service, home detention, day reporting, restorative justice programs, work furlough programs, and incarceration in county jail for up to 90 days.

(C)  Providing more intensive probation supervision.

(D)  Expanding the availability of evidence-based rehabilitation programs including, but not limited to, drug and alcohol treatment, mental health treatment, anger management, cognitive behavior programs, and job training and employment services.

(E)  Evaluating the effectiveness of rehabilitation and supervision programs and ensuring program fidelity.

(4)  The chief probation officer shall have discretion to spend funds on any of the above practices and programs consistent with this act but, at a minimum, shall devote at least 5 percent of all funding received to evaluate the effectiveness of those programs and practices implemented with the funds provided pursuant to this chapter. A chief probation officer may petition the Administrative Office of the Courts to have this restriction waived, and the Administrative Office of the Courts shall have the authority to grant that petition, if the CPO can demonstrate that the department is already devoting sufficient funds to the evaluation of these programs and practices.

(5)  Each probation department receiving funds under this chapter shall maintain a complete and accurate accounting of all funds received pursuant to this chapter.

1231.  (a)  Community corrections programs funded pursuant to this act shall identify and track specific outcome-based measures consistent with the goals of this act.

(b)  The Administrative Office of the Courts, in consultation with the Chief Probation Officers of California, shall specify and define minimum required outcome-based measures, which shall include, but not be limited to, all of the following:

(1) The percentage of persons on felony probation who are being supervised in accordance with evidence-based practices.

(2) The percentage of state moneys expended for programs that are evidence-based, and a descriptive list of all programs that are evidence-based.

(3) Specification of supervision policies, procedures, programs, and practices that were eliminated.

(4) The percentage of persons on felony probation who successfully complete the period of probation.

(c) Each chief probation officer receiving funding pursuant to Sections 1233 to 1233.6, inclusive, shall provide an annual written report to the Administrative Office of the Courts and the Department of Corrections and Rehabilitation evaluating the effectiveness of the community corrections program, including, but not limited to, the data described in subdivision (b).

(d) The Administrative Office of the Courts shall, in consultation with the chief probation officer of each county and the Department of Corrections and Rehabilitation, provide a quarterly statistical report to the Department of Finance including, but not limited to, the following statistical information for each county:

(1) The number of felony filings.

(2) The number of felony convictions.

(3) The number of felony convictions in which the defendant was sentenced to the state prison.

(4) The number of felony convictions in which the defendant was granted probation.

(5) The adult felon probation population.

(6) The number of felons who had their probation revoked and were sent to prison for that revocation.

(7) The number of adult felony probationers sent to state prison for a conviction of a new felony offense, including when probation was revoked or terminated.

1232. Commencing no later than 18 months following the initial receipt of funding pursuant to this act and annually thereafter, the Administrative Office of the Courts, in consultation with the Department of Corrections and Rehabilitation, the Department of Finance, and the Chief Probation Officers of California, shall submit to the Governor and the Legislature a comprehensive report on the implementation of this act. The report shall include, but not be limited to, all of the following information:

(a) The effectiveness of the community corrections program based on the reports of performance-based outcome measures required in Section 1231.

(b) The percentage of felony probationers whose probation was revoked for the year about which the report is being made.

(c) The percentage of felony probationers who were convicted of crimes during their term of probation for the year about which the report is being made.

(d) The impact of the moneys appropriated pursuant to this act to enhance public safety by reducing the percentage and number of felony probationers

whose probation was revoked for the year being reported on for probation violations or new convictions, and to reduce the number of felony probationers who are sent to prison for the year about which the report is being made.

(e) Any recommendations regarding resource allocations or additional collaboration with other federal, state, regional, or local entities, or other for improvements to this act.

1233.  (a)  The Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, shall calculate for each county a baseline probation failure rate that equals the average number of adult felony probationers sent to state prison during calendar years 2006 to 2008, inclusive, as a percentage of the average adult felony probation population during the same period.

(b)  For purposes of calculating the baseline probation failure rate, the number of adult felony probationers sent to prison shall include those adult felony probationers sent to state prison for a revocation of probation, as well as adult felony probationers sent to state prison for a conviction of a new felony offense. The calculation shall also include adult felony probationers sent to prison for conviction of a new crime who simultaneously have their probation term terminated.

1233.1.  After the conclusion of each calendar year following the enactment of this section, the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, shall calculate the following for that calendar year:

(a)  The cost to the state to incarcerate in prison and supervise on parole a probationer sent to prison. This calculation shall take into consideration factors, including, but not limited to, the average length of stay in prison and on parole for probationers, as well as the associated parole revocation rates, and revocation costs.

(b)  The statewide probation failure rate. The statewide probation failure rate shall be calculated as the total number of adult felony probationers statewide sent to prison in the previous year as a percentage of the statewide adult felony probation population as of June 30 of that year.

(c)  A probation failure rate for each county. Each county's probation failure rate shall be calculated as the number of adult felony probationers sent to prison from that county in the previous year as a percentage of the county's adult felony probation population as of June 30 of that year.

(d)  An estimate of the number of adult felony probationers each county successfully prevented from being sent to prison. For each county, this estimate shall be calculated based on the reduction in the county's probation failure rate as calculated annually pursuant to subdivision (c) of this section and the county's baseline probation failure rate as calculated pursuant to Section 1233. In making this estimate, the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the

Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, shall adjust the calculations to account for changes in each county's adult felony probation caseload in the most recent completed calendar year as compared to the county's adult felony probation population during the period 2006 to 2008, inclusive.

(e) In calculating probation failure rates for the state and individual counties, the number of adult felony probationers sent to prison shall include those adult felony probationers sent to state prison for a revocation of probation, as well as adult felony probationers sent to state prison for a conviction of a new felony offense. The calculation shall also include adult felony probationers who are sent to prison for conviction of a new crime and who simultaneously have their probation terms terminated.

1233.2.  Annually, after the conclusion of each calendar year, the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, shall identify the appropriate Probation Revocation Tier for each county for which it was estimated that the county successfully prevented any number of adult felony probationers from being sent to state prison, as provided in subdivision (d) of Section 1233.1. The tiers shall be defined as follows:

(a) Tier 1. A Tier 1 county is one which has a probation failure rate, as defined in subdivision (c) of Section 1233.1, that is no more than 25 percent higher than the statewide probation failure rate, as defined in subdivision (b) of Section 1233.1.

(b) Tier 2. A Tier 2 county is one which has a probation failure rate, as defined in subdivision (c) of Section 1233.1, that is more than 25 percent above the statewide probation failure rate, as defined in subdivision (b) of Section 1233.1.

1233.3.  Annually, the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, shall calculate a probation failure reduction incentive payment for each eligible county, pursuant to Section 1233.2, for the most recently completed calendar year, as follows:

(a) For a county identified as being in Tier 1, as defined in subdivision (a) of Section 1233.2, its probation failure reduction incentive payment shall equal the estimated number of probationers successfully prevented from being sent to prison, as defined by subdivision (d) of Section 1233.1, multiplied by 45 percent of the costs to the state to incarcerate in prison and supervise on parole a probationer who was sent to prison, as defined in subdivision (a) of Section 1233.1.

(b) For a county identified as being in Tier 2, as defined in subdivision (b) of Section 1233.2, its probation failure reduction incentive payment shall equal the estimated number of probationers successfully prevented from being sent to prison, as defined by subdivision (d) of Section 1233.1, multiplied by 40 percent of the costs to the state to incarcerate in prison and

supervise on parole a probationer who was sent to prison, as defined in subdivision (a) of Section 1233.1.

1233.4. (a) It is the intent of the Legislature for counties demonstrating high success rates with adult felony probationers to have access to performance-based funding, as provided for in this section.

(b) On an annual basis, the Department of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts, shall calculate 5 percent of the savings to the state attributed to those counties that successfully reduce the number of adult felony probationers sent to state prison.

(c) The savings estimated pursuant to subdivision (b) shall be used to provide high performance grants to county probation departments for the purpose of bolstering evidence-based probation practices designed to reduce recidivism among adult felony probationers.

(d) County probation departments eligible for these high performance grants shall be those with adult probation failure rates more than 50 percent below the statewide average in the most recently completed calendar year.

(e) A county probation department may receive a high performance grant under this section in a year in which it does not also receive a probation failure reduction incentive payment as provided for in Section 1233.3. The CPO of a county that qualifies for both a high performance grant and a probation failure reduction incentive payment shall indicate to the Administrative Office of the Courts, by a date designated by the Administrative Office of the Courts, whether the CPO chooses to receive the high performance grant or probation failure reduction payment.

(f) The grants provided for in this section shall be administered by the Administrative Office of the Courts. The Administrative Office of the Courts shall seek to ensure that all qualifying probation departments that submit qualifying applications receive a proportionate share of the grant funding available based on the population of adults ages 18 to 25, inclusive, in each of the counties receiving the grants.

1233.5. If data of sufficient quality and of the types required for the implementation of this act are not available to the Director of Finance, then the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, and the Administrative Office of the Courts, shall use the best available data to estimate probation failure reduction incentive payments and high performance grants utilizing a methodology that is as consistent with that described in this act as is reasonably possible.

1233.6. (a) Probation failure reduction incentive payments and high performance grants calculated for any calendar year shall be provided to counties in the following fiscal year. The total annual payment to each county shall be divided into four equal quarterly payments.

(b) The Department of Finance shall include an estimate of the total probation failure reduction incentive payments and high performance grants to be provided to counties in the coming fiscal year as part of the Governor's

proposed budget released no later than January 10 of each year. This estimate shall be adjusted by the Department of Finance, as necessary, to reflect the actual calculations of probation revocation incentive payments and high performance grants completed by the Director of Finance, in consultation with the Department of Corrections and Rehabilitation, the Joint Legislative Budget Committee, the Chief Probation Officers of California, and the Administrative Office of the Courts. This adjustment shall occur as part of standard budget revision processes completed by the Department of Finance in April and May of each year.

(c) There is hereby established a State Community Corrections Performance Incentives Fund. Moneys budgeted for purposes of providing probation revocation incentive payments and high performance grants authorized in Sections 1230 to 1233.6, inclusive, shall be deposited into this fund. Any moneys deposited into this fund shall be administered by the Administrative Office of the Courts and the share calculated for each county probation department shall be transferred to its Community Corrections Performance Incentives Fund authorized in Section 1230. The Legislature may allocate up to 3 percent of the funds annually deposited into the State Community Corrections Performance Incentives Fund for use by the Administrative Office of the Courts for the costs of administering this program.

1233.7. The moneys appropriated pursuant to this chapter shall be used to supplement, not supplant, any other state or county appropriation for the chief probation officer or the probation department.

1233.8. This chapter shall remain in effect only until January 1, 2015, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2015, deletes or extends that date.

SEC. 37. Section 2932 of the Penal Code is amended to read:

2932. (a) (1) For any time credit accumulated pursuant to Section 2931 or to Section 2933, not more than 360 days of credit may be denied or lost for a single act of murder, attempted murder, solicitation of murder, manslaughter, rape, sodomy, or oral copulation accomplished against the victim's will, attempted rape, attempted sodomy, or attempted oral copulation accomplished against the victim's will, assault or battery causing serious bodily injury, assault with a deadly weapon or caustic substance, taking of a hostage, escape with force or violence, or possession or manufacture of a deadly weapon or explosive device, whether or not prosecution is undertaken for purposes of this paragraph. Solicitation of murder shall be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.

(2) Not more than 180 days of credit may be denied or lost for a single act of misconduct, except as specified in paragraph (1), which could be prosecuted as a felony whether or not prosecution is undertaken.

(3) Not more than 90 days of credit may be denied or lost for a single act of misconduct which could be prosecuted as a misdemeanor, whether or not prosecution is undertaken.

(4)   Not more than 30 days of credit may be denied or lost for a single act of misconduct defined by regulation as a serious disciplinary offense by the Department of Corrections. Any person confined due to a change in custodial classification following the commission of any serious disciplinary infraction shall, in addition to any loss of time credits, be ineligible to receive participation or worktime credit for a period not to exceed the number of days of credit which have been lost for the act of misconduct or 180 days, whichever is less. Any person confined in a secure housing unit for having committed any misconduct specified in paragraph (1) in which great bodily injury is inflicted upon a nonprisoner shall, in addition to any loss of time credits, be ineligible to receive participation or worktime credit for a period not to exceed the number of days of credit which have been lost for that act of misconduct. In unusual cases, an inmate may be denied the opportunity to participate in a credit qualifying assignment for up to six months beyond the period specified in this subdivision if the Director of Corrections finds, after a hearing, that no credit qualifying program may be assigned to the inmate without creating a substantial risk of physical harm to staff or other inmates. At the end of the six-month period and of successive six-month periods, the denial of the opportunity to participate in a credit qualifying assignment may be renewed upon a hearing and finding by the director.

The prisoner may appeal the decision through the department's review procedure, which shall include a review by an individual independent of the institution who has supervisorial authority over the institution.

(b)   For any credit accumulated pursuant to Section 2931, not more than 30 days of participation credit may be denied or lost for a single failure or refusal to participate. Any act of misconduct described by the Department of Corrections as a serious disciplinary infraction if committed while participating in work, educational, vocational, therapeutic, or other prison activity shall be deemed a failure to participate.

(c)   Any procedure not provided for by this section, but necessary to carry out the purposes of this section, shall be those procedures provided for by the Department of Corrections for serious disciplinary infractions if those procedures are not in conflict with this section.

(1)   (A)   The Department of Corrections shall, using reasonable diligence to investigate, provide written notice to the prisoner. The written notice shall be given within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, except that if the prisoner has escaped, the notice shall be given within 15 days of the prisoner's return to the custody of the Director of Corrections. The written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing. The hearing shall be conducted by an individual who shall be independent of the case and shall take place within 30 days of the written notice.

(B)   The Department of Corrections may delay written notice beyond 15 days when all of the following factors are true:

3                                                                        95

(i) An act of misconduct is involved which could be prosecuted as murder, attempted murder, or assault on a prison employee, whether or not prosecution is undertaken.

(ii) Further investigation is being undertaken for the purpose of identifying other prisoners involved in the misconduct.

(iii) Within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, the investigating officer makes a written request to delay notifying that prisoner and states the reasons for the delay.

(iv) The warden of the institution approves of the delay in writing.

The period of delay under this paragraph shall not exceed 30 days. The prisoner's hearing shall take place within 30 days of the written notice.

(2) The prisoner may elect to be assigned an employee to assist in the investigation, preparation, or presentation of a defense at the disciplinary hearing if it is determined by the department that: (i) the prisoner is illiterate; or (ii) the complexity of the issues or the prisoner's confinement status makes it unlikely that the prisoner can collect and present the evidence necessary for an adequate comprehension of the case.

(3) The prisoner may request witnesses to attend the hearing and they shall be called unless the person conducting the hearing has specific reasons to deny this request. The specific reasons shall be set forth in writing and a copy of the document shall be presented to the prisoner.

(4) The prisoner has the right, under the direction of the person conducting the hearing, to question all witnesses.

(5) At the conclusion of the hearing the charge shall be dismissed if the facts do not support the charge, or the prisoner may be found guilty on the basis of a preponderance of the evidence.

(d) If found guilty the prisoner shall be advised in writing of the guilty finding and the specific evidence relied upon to reach this conclusion and the amount of time-credit loss. The prisoner may appeal the decision through the Department of Corrections' review procedure, and may, upon final notification of appeal denial, within 15 days of the notification demand review of the department's denial of credit to the Board of Prison Terms, and the board may affirm, reverse, or modify the department's decision or grant a hearing before the board at which hearing the prisoner shall have the rights specified in Section 3041.5.

(e) Each prisoner subject to Section 2931 shall be notified of the total amount of good behavior and participation credit which may be credited pursuant to Section 2931, and his or her anticipated time-credit release date. The prisoner shall be notified of any change in the anticipated release date due to denial or loss of credits, award of worktime credit, under Section 2933, or the restoration of any credits previously forfeited.

(f) If the conduct the prisoner is charged with also constitutes a crime, the Department of Corrections may refer the case to criminal authorities for possible prosecution. The department shall notify the prisoner, who may request postponement of the disciplinary proceedings pending the referral.

The prisoner may revoke his or her request for postponement of the disciplinary proceedings up until the filing of the accusatory pleading. In the event of the revocation of the request for postponement of the proceeding, the department shall hold the hearing within 30 days of the revocation.

Notwithstanding the notification requirements in this paragraph and subparagraphs (A) and (B) of paragraph (1) of subdivision (c), in the event the case is referred to criminal authorities for prosecution and the authority requests that the prisoner not be notified so as to protect the confidentiality of its investigation, no notice to the prisoner shall be required until an accusatory pleading is filed with the court, or the authority notifies the warden, in writing, that it will not prosecute or it authorizes the notification of the prisoner. The notice exceptions provided for in this paragraph shall only apply if the criminal authority requests of the warden, in writing, and within the 15 days provided in subparagraph (A) of paragraph (1) of subdivision (c), that the prisoner not be notified. Any period of delay of notice to the prisoner shall not exceed 30 days beyond the 15 days referred to in subdivision (c). In the event that no prosecution is undertaken, the procedures in subdivision (c) shall apply, and the time periods set forth in that subdivision shall commence to run from the date the warden is notified in writing of the decision not to prosecute. In the event the authority either cancels its requests that the prisoner not be notified before it makes a decision on prosecution or files an accusatory pleading, the provisions of this paragraph shall apply as if no request had been received, beginning from the date of the cancellation or filing.

In the case where the prisoner is prosecuted by the district attorney, the Department of Corrections shall not deny time credit where the prisoner is found not guilty and may deny credit if the prisoner is found guilty, in which case the procedures in subdivision (c) shall not apply.

(g)  If time credit denial proceedings or criminal prosecution prohibit the release of a prisoner who would have otherwise been released, and the prisoner is found not guilty of the alleged misconduct, the amount of time spent incarcerated, in excess of what the period of incarceration would have been absent the alleged misbehavior, shall be deducted from the prisoner's parole period.

(h)  Nothing in the amendments to this section made at the 1981–82 Regular Session of the Legislature shall affect the granting or revocation of credits attributable to that portion of the prisoner's sentence served prior to January 1, 1983.

SEC. 38.  Section 2933 of the Penal Code is amended to read:

2933.  (a)  It is the intent of the Legislature that persons convicted of a crime and sentenced to the state prison under Section 1170 serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Secretary of the Department of Corrections and Rehabilitation pursuant to this section and Section 2933.05.

(b)  For every six months of continuous incarceration, a prisoner shall be awarded credit reductions from his or her term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser

period of continuous incarceration. Credit should be awarded pursuant to regulations adopted by the secretary. Prisoners who are denied the opportunity to earn credits pursuant to subdivision (a) of Section 2932 shall be awarded no credit reduction pursuant to this section. Under no circumstances shall any prisoner receive more than six months' credit reduction for any six-month period under this section.

(c) Credit is a privilege, not a right. Credit must be earned and may be forfeited pursuant to the provisions of Section 2932. Except as provided in subdivision (a) of Section 2932, every eligible prisoner shall have a reasonable opportunity to participate.

(d) Under regulations adopted by the Department of Corrections and Rehabilitation, which shall require a period of not more than one year free of disciplinary infractions, credit which has been previously forfeited may be restored by the secretary. The regulations shall provide for separate classifications of serious disciplinary infractions as they relate to restoration of credits, the time period required before forfeited credits or a portion thereof may be restored, and the percentage of forfeited credits that may be restored for these time periods. For credits forfeited as specified in paragraph (1) of subdivision (a) of Section 2932, the Department of Corrections and Rehabilitation may provide that up to 180 days of lost credit shall not be restored and up to 90 days of credit shall not be restored for a forfeiture resulting from conspiracy or attempts to commit one of those acts. No credits may be restored if they were forfeited for a serious disciplinary infraction in which the victim died or was permanently disabled. Upon application of the prisoner and following completion of the required time period free of disciplinary offenses, forfeited credits eligible for restoration under the regulations for disciplinary offenses other than serious disciplinary infractions punishable by a credit loss of more than 90 days shall be restored unless, at a hearing, it is found that the prisoner refused to accept or failed to perform in a credit qualifying assignment, or extraordinary circumstances are present that require that credits not be restored. "Extraordinary circumstances" shall be defined in the regulations adopted by the secretary. However, in any case in which credit was forfeited for a serious disciplinary infraction punishable by a credit loss of more than 90 days, restoration of credit shall be at the discretion of the secretary.

The prisoner may appeal the finding through the Department of Corrections and Rehabilitation's review procedure, which shall include a review by an individual independent of the institution who has supervisorial authority over the institution.

(e) A prisoner sentenced to the state prison under Section 1170 shall receive one day of credit for every day served in a county jail, city jail, industrial farm, or road camp after the date he or she was sentenced to the state prison as specified in subdivision (f) of Section 4019.

(f) The provisions of subdivision (d) shall also apply in cases of credit forfeited under Section 2931 for offenses and serious disciplinary infractions occurring on or after January 1, 1983.

SEC. 39.   Section 2933.05 is added to the Penal Code, to read:

— 41 —                                    Ch. 28

2933.05.  (a)  In addition to any credit awarded pursuant to Section 2933, the department may also award a prisoner program credit reductions from his or her term of confinement as provided in this section. Within 90 days of the enactment of this section, the secretary shall promulgate regulations that provide for credit reductions for inmates who successfully complete specific program performance objectives for approved rehabilitative programming ranging from credit reduction of not less than one week to credit reduction of no more than six weeks for each performance milestone. Regulations promulgated pursuant to this subdivision shall specify the credit reductions applicable to distinct objectives in a schedule of graduated program performance objectives concluding with the successful completion of an in-prison rehabilitation program. Commencing upon the promulgation of those regulations, the department shall thereafter calculate and award credit reductions authorized by this section. However, a prisoner may not have his or her term of imprisonment reduced more than six weeks for credits awarded pursuant to this section during any 12-month period of continuous confinement.

(b)  Program credit is a privilege, not a right. Prisoners shall have a reasonable opportunity to participate in program credit qualifying assignments in a manner consistent with institutional security and available resources. Assignments made to program credit qualifying programs shall be made in accordance with the prisoner's case plan, when available.

(c)  As used in this section, "approved rehabilitation programming" shall include, but is not limited to, academic programs, vocational programs, vocational training, and core programs such as anger management and social life skills, and substance abuse programs.

(d)  Credits awarded pursuant to this section may be forfeited pursuant to the provisions of Section 2932. Inmates shall not be eligible for program credits that result in an inmate overdue for release.

(e)  The following prisoners shall not be eligible for program credits pursuant to this section:

(1)  Any person serving a term of imprisonment for an offense specified in subdivision (c) of Section 667.5.

(2)  Any person sentenced to state prison pursuant to Section 1170.12 or subdivisions (b) to (i), inclusive, of Section 667.

(3)  Any person required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1.

(4)  Any person serving a term of imprisonment as a result of a violation of parole without a new term.

SEC. 40.  Section 2933.2 of the Penal Code is amended to read:

2933.2.  (a)  Notwithstanding Section 2933.1 or any other law, any person who is convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in Section 2933 or Section 2933.05.

(b)  The limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law.

(c) Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest for any person specified in subdivision (a).

(d) This section shall only apply to murder that is committed on or after the date on which this section becomes operative.

SEC. 41.  Section 2933.3 of the Penal Code is amended to read:

2933.3.  (a) Notwithstanding any other law, any inmate assigned to a conservation camp by the Department of Corrections and Rehabilitation, who is eligible to earn one day of credit for every one day of incarceration pursuant to Section 2933 shall instead earn two days of credit for every one day of service. The enhanced credit authorized pursuant to this subdivision shall only apply to those prisoners eligible after January 1, 2003.

(b) Notwithstanding any other law, any inmate who has completed training for assignment to a conservation camp or to a correctional institution as an inmate firefighter or who is assigned to a correctional institution as an inmate firefighter and who is eligible to earn one day of credit for every one day of incarceration pursuant to Section 2933 shall instead earn two days of credit for every one day served in that assignment or after completing that training.

(c) In addition to credits granted pursuant to subdivision (a) or (b), inmates who have successfully completed training for firefighter assignments shall receive a credit reduction from his or her term of confinement pursuant to regulations adopted by the secretary.

(d) The credits authorized in subdivisions (b) and (c) shall only apply to inmates who are eligible after July 1, 2009.

SEC. 42.  Section 2933.4 of the Penal Code is amended and renumbered to read:

3050.  (a) Notwithstanding any other provision of law, any inmate under the custody of the Department of Corrections and Rehabilitation who is not currently serving and has not served a prior indeterminate sentence or a sentence for a violent felony, a serious felony, or a crime that requires him or her to register as a sex offender pursuant to Section 290, who has successfully completed an in prison drug treatment program, upon release from state prison, shall, whenever possible, be entered into a 150-day residential aftercare drug treatment program sanctioned by the department.

(b) As a condition of parole, if the inmate successfully completes 150 days of residential aftercare treatment, as determined by the Department of Corrections and Rehabilitation and the aftercare provider, the parolee shall be discharged from parole supervision at that time.

(c) Commencing with 2008, the department shall report annually to the Joint Legislative Budget Committee and the State Auditor on the effectiveness of these provisions, including recidivism rates.

SEC. 43.  Section 2933.5 of the Penal Code is amended to read:

2933.5.  (a) (1) Notwithstanding any other law, every person who is convicted of any felony offense listed in paragraph (2), and who previously

has been convicted two or more times, on charges separately brought and tried, and who previously has served two or more separate prior prison terms, as defined in subdivision (g) of Section 667.5, of any offense or offenses listed in paragraph (2), shall be ineligible to earn credit on his or her term of imprisonment pursuant to this article.

(2) As used in this subdivision, "felony offense" includes any of the following:

(A) Murder, as defined in Sections 187 and 189.

(B) Voluntary manslaughter, as defined in subdivision (a) of Section 192.

(C) Mayhem as defined in Section 203.

(D) Aggravated mayhem, as defined in Section 205.

(E) Kidnapping, as defined in Section 207, 209, or 209.5.

(F) Assault with vitriol, corrosive acid, or caustic chemical of any nature, as described in Section 244.

(G) Rape, as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262.

(H) Sodomy by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person, as described in subdivision (c) of Section 286.

(I) Sodomy while voluntarily acting in concert, as described in subdivision (d) of Section 286.

(J) Lewd or lascivious acts on a child under the age of 14 years, as described in subdivision (b) of Section 288.

(K) Oral copulation by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, as described in subdivision (c) of Section 288a.

(L) Continuous sexual abuse of a child, as described in Section 288.5.

(M) Sexual penetration, as described in subdivision (a) of Section 289.

(N) Exploding a destructive device or explosive with intent to injure, as described in Section 12303.3, with intent to murder, as described in Section 12308, or resulting in great bodily injury or mayhem, as described in Section 12309.

(O) Any felony in which the defendant personally inflicted great bodily injury, as provided in Section 12022.53 or 12022.7.

(b) A prior conviction of an offense listed in subdivision (a) shall include a conviction in another jurisdiction for an offense which includes all of the elements of the particular felony as defined under California law.

(c) This section shall apply whenever the present felony is committed on or after the effective date of this section, regardless of the date of commission of the prior offense or offenses resulting in credit-earning ineligibility.

(d) This section shall be in addition to, and shall not preclude the imposition of, any applicable sentence enhancement terms, or probation ineligibility and habitual offender provisions authorized under any other section.

SEC. 44. Section 2933.6 of the Penal Code is amended to read:

2933.6.  (a) Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) or upon validation as a prison gang member or associate is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct.

(b)  This section applies to the following offenses:

(1)  Murder, attempted murder, and solicitation of murder. For purposes of this paragraph, solicitation of murder shall be proven by the testimony of two witnesses, or of one witness and corroborating circumstances.

(2)  Manslaughter.

(3)  Assault or battery causing serious bodily injury.

(4)  Assault or battery on a peace officer or other nonprisoner which results in physical injury.

(5)  Assault with a deadly weapon or caustic substance.

(6)  Rape, attempted rape, sodomy, attempted sodomy, oral copulation, or attempted oral copulation accomplished against the victim's will.

(7)  Taking a hostage.

(8)  Escape or attempted escape with force or violence.

(9)  Escape from any departmental prison or institution other than a camp or reentry facility.

(10)  Possession or manufacture of a deadly weapon or explosive device.

(11)  Arson involving damage to a structure.

(12)  Possession of flammable, explosive material with intent to burn any structure or property.

(13)  Solicitation of assault with a deadly weapon or assault by means of force likely to produce great bodily injury, arson, or a forcible sex act.

(14)  Intentional destruction of state property in excess of four hundred dollars ($400) during a riot or disturbance.

(c)  This section does not apply if the administrative finding of the misconduct is overturned or if the person is criminally prosecuted for the misconduct and is found not guilty.

SEC. 45.  Section 2934 of the Penal Code is amended to read:

2934.  Under rules prescribed by the Secretary of the Department of Corrections and Rehabilitation, a prisoner subject to the provisions of Section 2931 may waive the right to receive time credits as provided in Section 2931 and be subject to the provisions of Section 2933. In order to exercise a waiver under this section, a prisoner must apply in writing to the Department of Corrections. A prisoner exercising a waiver under this section shall retain only that portion of good behavior and participation credits, which have not been forfeited pursuant to Section 2932, attributable to the portion of the sentence served by the prisoner prior to the effective date of the waiver. A waiver under this section shall, if accepted by the department, become effective at a time to be determined by the Secretary of the Department of Corrections and Rehabilitation.

SEC. 46.  Section 2935 of the Penal Code is amended to read:

2935.  Under the guidelines prescribed by the rules and regulations of the director, the Secretary of the Department of Corrections and Rehabilitation may grant up to 12 additional months of reduction of the sentence to a prisoner who has performed a heroic act in a life-threatening situation, or who has provided exceptional assistance in maintaining the safety and security of a prison.

SEC. 47.  Section 3000 of the Penal Code is amended to read:

3000.  (a) (1) The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the effective supervision of and surveillance of parolees, including the judicious use of revocation actions, and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to Section 1168 or 1170 shall include a period of parole, unless waived, or as otherwise provided in this article.

(2)  The Legislature finds and declares that it is not the intent of this section to diminish resources allocated to the Department of Corrections and Rehabilitation for parole functions for which the department is responsible. It is also not the intent of this section to diminish the resources allocated to the Board of Parole Hearings to execute its duties with respect to parole functions for which the board is responsible.

(3)  The Legislature finds and declares that diligent effort must be made to ensure that parolees are held accountable for their criminal behavior, including, but not limited to, the satisfaction of restitution fines and orders.

(4)  The parole period of any person found to be a sexually violent predator shall be tolled until that person is found to no longer be a sexually violent predator, at which time the period of parole, or any remaining portion thereof, shall begin to run.

(b)  Notwithstanding any provision to the contrary in Article 3 (commencing with Section 3040) of this chapter, the following shall apply:

(1)  At the expiration of a term of imprisonment of one year and one day, or a term of imprisonment imposed pursuant to Section 1170 or at the expiration of a term reduced pursuant to Section 2931 or 2933, if applicable, the inmate shall be released on parole for a period not exceeding three years, except that any inmate sentenced for an offense specified in paragraph (3), (4), (5), (6), (11), (16), or (18) of subdivision (c) of Section 667.5 shall be released on parole for a period not exceeding five years, unless in either case the parole authority for good cause waives parole and discharges the inmate from the custody of the department.

(2)  In the case of any inmate sentenced under Section 1168, the period of parole shall not exceed five years in the case of an inmate imprisoned for any offense other than first or second degree murder for which the inmate has received a life sentence, and shall not exceed three years in the case of any other inmate, unless in either case the parole authority for good cause waives parole and discharges the inmate from custody of the department.

This subdivision shall also be applicable to inmates who committed crimes prior to July 1, 1977, to the extent specified in Section 1170.2.

(3) Notwithstanding paragraphs (1) and (2), in the case of any offense for which the inmate has received a life sentence pursuant to Section 667.61 or 667.71, the period of parole shall be 10 years.

(4) The parole authority shall consider the request of any inmate regarding the length of his or her parole and the conditions thereof.

(5) Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate under paragraph (1), (2), or (3), as the case may be, whichever is earlier, the inmate shall be discharged from custody. The date of the maximum statutory period of parole under this subdivision and paragraphs (1), (2), and (3) shall be computed from the date of initial parole and shall be a period chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation. However, the period of parole is subject to the following:

(A) Except as provided in Section 3064, in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole.

(B) Except as provided in Section 3064, in no case may a prisoner subject to five years on parole be retained under parole supervision or in custody for a period longer than seven years from the date of his or her initial parole.

(C) Except as provided in Section 3064, in no case may a prisoner subject to 10 years on parole be retained under parole supervision or in custody for a period longer than 15 years from the date of his or her initial parole.

(6) The Department of Corrections and Rehabilitation shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority, the conditions of parole and the length of parole up to the maximum period of time provided by law. The inmate has the right to reconsideration of the length of parole and conditions thereof by the parole authority. The Department of Corrections and Rehabilitation or the Board of Parole Hearings may impose as a condition of parole that a prisoner make payments on the prisoner's outstanding restitution fines or orders imposed pursuant to subdivision (a) or (c) of Section 13967 of the Government Code, as operative prior to September 28, 1994, or subdivision (b) or (f) of Section 1202.4.

(7) For purposes of this chapter, the Board of Parole Hearings shall be considered the parole authority.

(8) The sole authority to issue warrants for the return to actual custody of any state prisoner released on parole rests with the Board of Parole Hearings, except for any escaped state prisoner or any state prisoner released prior to his or her scheduled release date who should be returned to custody, and Section 3060 shall apply.

(9) It is the intent of the Legislature that efforts be made with respect to persons who are subject to Section 290.011 who are on parole to engage them in treatment.

SEC. 48.   Section 3000.03 is added to the Penal Code, to read:

3000.03.   Notwithstanding any other provision of law, the Department of Corrections and Rehabilitation shall not return to prison, place a parole hold on pursuant to Section 3056, or report any parole violation to the Board of Parole Hearings regarding any person to whom all of the following criteria apply:

(a)  The person is not required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1.

(b)  The person was not committed to prison for a serious felony as defined in Sections 1192.7 and 1192.8, or a violent felony, as defined in Section 667.5, and does not have a prior conviction for a serious felony, as defined in Section 1192.7 and 1192.8, or a violent felony, as defined in Section 667.5.

(c)  The person was not committed to prison for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code and does not have a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

(d)  The person was not found guilty of a serious disciplinary offense, as defined in regulation by the department, during his or her current term of imprisonment.

(e)  The person is not a validated prison gang member or associate, as defined in regulation by the department.

(f)  The person did not refuse to sign any written notification of parole requirements or conditions, including, but not limited to, the written notification of requirements pursuant to Section 3067.

(g)  The person was evaluated by the department using a validated risk assessment tool and was not determined to pose a high risk to reoffend.

SEC. 49.   Article 2.3 (commencing with Section 3015) is added to Chapter 8 of Title 1 of Part 3 of the Penal Code, to read:

Article 2.3.  Parole Reentry Accountability Program

3015.   (a) The Secretary of the Department of Corrections and Rehabilitation shall establish a parole reentry accountability program for parolees who have been sentenced to a term of imprisonment under Section 1170. The purpose of the program is to promote public safety, hold parolees accountable, and reduce recidivism.

(b)  The department shall employ a parole violation decisionmaking instrument to determine the most appropriate sanctions for these parolees who violate their conditions of parole.

(1)  For purposes of this subdivision, a "parole violation decisionmaking instrument" means a standardized tool that provides ranges of appropriate

sanctions for parole violators given relevant case factors, including, but not limited to, offense history, risk of reoffense based on a validated risk assessment tool, need for treatment services, the number and type of current and prior parole violations, and other relevant statutory requirements.

(2)  The department shall adopt emergency regulations to implement this section initially, and shall subsequently adopt permanent regulations that make appropriate changes in policies and procedures to reflect the intent of this section.

(c)  The secretary shall have the discretion to establish additional tools and standards to further the purposes of this section.

(d)  Parolees subject to this program with a history of substance abuse or mental illness who violate their conditions of parole may be referred by the department to a reentry court program established pursuant to subdivision (e).

(1)  A parolee who is deemed eligible by the department to participate in a reentry court program may be referred by his or her parole officer for participation in the program. The court shall have the discretion to determine if the parolee will be admitted into the program and, in making this determination, shall consider, among other factors, whether the parolee will benefit from the program, the risk the parolee poses to the community, and the history and nature of the committing offense.

(2)  If the court determines that the parolee will be admitted into the program, the court, with the assistance of the parolee's parole agent, shall have exclusive authority to determine the appropriate conditions of parole, order rehabilitation and treatment services to be provided, determine appropriate incentives, order appropriate sanctions, lift parole holds, and hear and determine appropriate responses to alleged violations, unless and until the court terminates the parolee's enrollment in the program authorized by subdivision (e).

(3)  A reentry court program plan shall include, but not be limited to, all of the following:

(A)  The anticipated number of parolees who will be served by the program.

(B)  The method by which each parolee who is eligible for the program shall be referred to the program.

(C)  The method by which each parolee is to be individually assessed as to his or her treatment and rehabilitative needs and the level of community and court monitoring required by the program.

(D)  The criteria for continued participation in, and successful completion of, the program, as well as the criteria for termination from the program and referral to the parole revocation process.

(E)  A description of how the program shall be administered effectively.

(F)  An established method by which to report outcome measures for program participants.

(G)  The development of a program team, as well as a plan for ongoing training in utilizing the drug court and collaborative court nonadversarial model.

(e) (1) Subject to funding made available for this purpose, the secretary shall enter into a memorandum of understanding with the Administrative Office of the Courts for the purpose of the establishment and operation of parolee reentry court programs. Only courts with existing drug and mental health courts or courts that otherwise demonstrate leadership and a commitment to conduct the reentry court authorized by this section may participate in this program. These parolee reentry court programs shall, with the assistance of the parolee's parole agent, direct the treatment and supervision of parolees who would benefit from community drug treatment or mental health treatment. The purpose of reentry court programs created pursuant to this subdivision is to promote public safety, hold parolees accountable, and reduce recidivism. The program shall include key components of drug and collaborative courts using a highly structured model, including close supervision and monitoring, dedicated calendars, nonadversarial proceedings, frequent drug and alcohol testing, and close collaboration between the respective entities involved to improve the parolee's likelihood of success on parole.

(2) The Judicial Council, in collaboration with the department, shall design and perform an evaluation of the program that will assess its effectiveness in reducing recidivism among parolees and reducing parole revocations.

(3) The Judicial Council, in collaboration with the department, shall submit a final report of the findings from its evaluation of the program to the Legislature and the Governor no later than 3 years after the establishment of a reentry court pursuant to this section.

SEC. 50.  Section 4019 of the Penal Code is amended to read:

4019.  (a)  The provisions of this section shall apply in all of the following cases:

(1)  When a prisoner is confined in or committed to a county jail, industrial farm, or road camp, or any city jail, industrial farm, or road camp, including all days of custody from the date of arrest to the date on which the serving of the sentence commences, under a judgment of imprisonment, or a fine and imprisonment until the fine is paid in a criminal action or proceeding.

(2)  When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding.

(3)  When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp for a definite period of time for contempt pursuant to a proceeding, other than a criminal action or proceeding.

(4)  When a prisoner is confined in a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction.

(b)  (1)  Except as provided in Section 2933.1 and paragraph (2), subject to the provisions of subdivision (d), for each four-day period in which a prisoner is confined in or committed to a facility as specified in this section,

one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

(2) If the prisoner is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290), was committed for a serious felony, as defined in Section 1192.7, or has a prior conviction for a serious felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5, subject to the provisions of subdivision (d), for each six-day period in which the prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

(c) (1) Except as provided in Section 2933.1 and paragraph (2), for each four-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

(2) If the prisoner is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290), was committed for a serious felony, as defined in Section 1192.7, or has a prior conviction for a serious felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5, for each six-day period in which the prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless is appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

(d) Nothing in this section shall be construed to require the sheriff, chief of police, or superintendent of an industrial farm or road camp to assign labor to a prisoner if it appears from the record that the prisoner has refused to satisfactorily perform labor as assigned or that the prisoner has not satisfactorily complied with the reasonable rules and regulations of the sheriff, chief of police, or superintendent of any industrial farm or road camp.

(e) No deduction may be made under this section unless the person is committed for a period of four days or longer, or six days or longer for persons described in paragraph (2) of subdivision (b) or (c).

(f) It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody, except that a term of six days will be deemed to have been served for every four days spent in actual custody for persons described in paragraph (2) of subdivision (b) or (c).

SEC. 51.   Section 4600 of the Penal Code is amended to read:

—51—                          Ch. 28

4600.  (a) Every person who willfully and intentionally breaks down, pulls down, or otherwise destroys or injures any jail, prison, or any public property in any jail or prison, is punishable by a fine not exceeding ten thousand dollars ($10,000), and by imprisonment in the state prison, except that where the damage or injury to any city, city and county, or county jail property or prison property is determined to be nine hundred fifty dollars ($950) or less, that person is guilty of a misdemeanor.

(b)  In any case in which a person is convicted of violating this section, the court may order the defendant to make restitution to the public entity that owns the property damaged by the defendant. The court shall specify in the order that the public entity that owns the property damaged by the defendant shall not enforce the order until the defendant satisfies all outstanding fines, penalties, assessments, restitution fines, and restitution orders.

SEC. 52.  Section 14591 of the Public Resources Code is amended to read:

14591.  (a) Except as provided in subdivision (b), in addition to any other applicable civil or criminal penalties, any person convicted of a violation of this division is guilty of an infraction, which is punishable by a fine of one hundred dollars ($100) for each initial separate violation and not more than one thousand dollars ($1,000) for each subsequent separate violation per day.

(b) (1) Every person who, with intent to defraud, takes any of the following actions is guilty of fraud:

(A)  Submits a false or fraudulent claim for payment pursuant to Section 14573 or 14573.5.

(B)  Fails to accurately report the number of beverage containers sold, as required by subdivision (b) of Section 14550.

(C)  Fails to make payments as required by Section 14574.

(D)  Redeems out-of-state containers, rejected containers, line breakage, or containers that have already been redeemed.

(E)  Returns redeemed containers to the marketplace for redemption.

(F)  Brings out-of-state containers, rejected containers, or line breakage to the marketplace for redemption.

(G)  Submits a false or fraudulent claim for handling fee payments pursuant to Section 14585.

(2)  If the money obtained or withheld pursuant to paragraph (1) exceeds nine hundred fifty dollars ($950), the fraud is punishable by imprisonment in the county jail for not more than one year or by a fine not exceeding ten thousand dollars ($10,000), or by both, or by imprisonment in the state prison for 16 months, two years, or three years, or by a fine not exceeding twenty-five thousand dollars ($25,000) or twice the late or unmade payments plus interest, whichever is greater, or by both fine and imprisonment. If the money obtained or withheld pursuant to paragraph (1) equals, or is less than, nine hundred fifty dollars ($950), the fraud is punishable by imprisonment in the county jail for not more than six months or by a fine not exceeding one thousand dollars ($1,000), or by both.

3

95

(c)  For purposes of this section and Chapter 8.5 (commencing with Section 14595), "line breakage" and "rejected container" have the same meanings as defined in the regulations adopted or amended by the department pursuant to this division.

SEC. 53.  Section 41955 of the Public Resources Code is amended to read:

41955.  If the value of the stolen material is more than fifty dollars ($50), but less than nine hundred fifty dollars ($950), a violation of this part may be charged as either a misdemeanor or an infraction. A violation after a second conviction within a 12-month period shall be charged as a misdemeanor punishable pursuant to Section 19 of the Penal Code.

SEC. 54.  Section 10851.5 of the Vehicle Code is amended to read:

10851.5.  Any person who takes binder chains, required under regulations adopted pursuant to Section 31510, having a value of nine hundred fifty dollars ($950) or less which chains are not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the binder chains whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in the unauthorized taking or stealing is guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail for not less than six months or by a fine of not less than one thousand dollars ($1,000) or by both such fine and imprisonment. The consent of the owner of the binder chain to its taking shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking of the binder chain by the same or a different person.

SEC. 55.  Section 42002.4 of the Vehicle Code is amended to read:

42002.4.  A violation of Section 10751 shall be punished by imprisonment in the county jail not exceeding six months if the value of the property does not exceed nine hundred fifty dollars ($950), and by imprisonment in the county jail not exceeding one year if the value of the property is more than nine hundred fifty dollars ($950).

SEC. 56.  Section 10980 of the Welfare and Institutions Code is amended to read:

10980.  (a)  Any person who, willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact in order to obtain aid under the provisions of this division or who, knowing he or she is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he or she is not entitled, or to receive a larger amount than that to which he or she is legally entitled, is guilty of a misdemeanor, punishable by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.

(b)  Any person who knowingly makes more than one application for aid under the provisions of this division with the intent of establishing multiple entitlements for any person for the same period or who makes an application for that aid for a fictitious or nonexistent person or by claiming a false

identity for any person is guilty of a felony, punishable by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

(c) Whenever any person has, willfully and knowingly, with the intent to deceive, by means of false statement or representation, or by failing to disclose a material fact, or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining this aid shall be punished as follows:

(1) If the total amount of the aid obtained or retained is nine hundred fifty dollars ($950) or less, by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.

(2) If the total amount of the aid obtained or retained is more than nine hundred fifty dollars ($950), by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

(d) Any person who knowingly uses, transfers, acquires, or possesses blank authorizations to participate in the federal Supplemental Nutrition Assistance Program in any manner not authorized by Chapter 10 (commencing with Section 18900) of Part 6 with the intent to defraud is guilty of a felony, punishable by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine.

(e) Any person who counterfeits or alters or knowingly uses, transfers, acquires, or possesses counterfeited or altered authorizations to participate in the federal Supplemental Nutrition Assistance Program or to receive food stamps or electronically transferred benefits in any manner not authorized by the Food Stamp Act of 1964 (Public Law 88-525 and all amendments thereto) or the Food and Nutrition Act of 2008 (7 U.S.C. Sec. 2011 et seq.) or the federal regulations pursuant to the act is guilty of forgery.

(f) Any person who fraudulently appropriates food stamps, electronically transferred benefits, or authorizations to participate in the federal Supplemental Nutrition Assistance Program with which he or she has been entrusted pursuant to his or her duties as a public employee is guilty of embezzlement of public funds.

(g) Any person who knowingly uses, transfers, sells, purchases, or possesses food stamps, electronically transferred benefits, or authorizations to participate in the federal Supplemental Nutrition Assistance Program in any manner not authorized by Chapter 10 (commencing with Section 18900), of Part 6, or by the federal Food Stamp Act of 1977 (Public Law 95-113

and all amendments thereto) or the Food and Nutrition Act of 2008 (7 U.S.C. Sec. 2011 et seq.) (1) is guilty of a misdemeanor if the face value of the food stamp benefits or the authorizations to participate is nine hundred fifty dollars ($950) or less, and shall be punished by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine, or (2) is guilty of a felony if the face value of the food stamps or the authorizations to participate exceeds nine hundred fifty dollars ($950), and shall be punished by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine, or by imprisonment in the county jail for a period of not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

(h) (1) If the violation of subdivision (f) or (g) is committed by means of an electronic transfer of benefits, in addition and consecutive to the penalties for the violation, or attempted violation, of those subdivisions, the court shall impose the following punishment:

(A) If the electronic transfer of benefits exceeds fifty thousand dollars ($50,000), an additional term of one year in state prison.

(B) If the electronic transfer of benefits exceeds one hundred fifty thousand dollars ($150,000), an additional term of two years in state prison.

(C) If the electronic transfer of benefits exceeds one million dollars ($1,000,000), an additional term of three years in state prison.

(D) If the electronic transfer of benefits exceeds two million five hundred thousand dollars ($2,500,000), an additional term of four years.

(2) In any accusatory pleading involving multiple charges of violations of subdivision (f) or (g), or both, committed by means of an electronic transfer of benefits, the additional terms provided in paragraph (1) may be imposed if the aggregate losses to the victims from all violations exceed the amounts specified in this paragraph and arise from a common scheme or plan.

(i) A person who is punished by an additional term of imprisonment under another provision of law for a violation of subdivision (f) or (g) shall not receive an additional term of imprisonment under subdivision (h).

SEC. 57.  Section 15656 of the Welfare and Institutions Code is amended to read:

15656.  (a) Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts unjustifiable physical pain or mental suffering upon him or her, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation such that his or her person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for two, three, or four years.

3