MIGUEL MARQUEZ, Acting County Counsel (S.B. # 184621)
THERESA J. FUENTES, Deputy County Counsel (S.B. #208588)
OFFICE OF THE COUNTY COUNSEL, County of Santa Clara
70 West Hedding, East Wing, 9th Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
Theresa.Fuentes@cco.sccgov.org

Lead Attorneys for Intervenors
COUNTY OF SANTA CLARA, COUNTY OF SAN MATEO, COUNTY OF SANTA BARBARA

STEVEN M. WOODSIDE, County Counsel (S.B. #58684)
ANNE L. KECK, Deputy County Counsel (S.B. #136315)
OFFICE OF THE COUNTY COUNSEL, County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403-2815
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
akeck@sonoma-county.org

Attorneys for Sonoma County Intervenors

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>    Plaintiffs,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>    Defendants. | No.   CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>    Plaintiffs,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>    Defendants. | No. C-01-1351 TEH<br><br>**COUNTY INTERVENORS AND SONOMA COUNTY INTERVENORS' JOINT RESPONSE TO DEFENDANTS' NOVEMBER 12, 2009 PROPOSED PRISON POPULATION REDUCTION MEASURES** |

Intervenors the Counties of Santa Clara, San Mateo, and Santa Barbara (collectively, "County Intervenors") and the County of Sonoma, Sonoma County Sheriff William Cogbill, Sonoma County District Attorney Stephan Passalacqua, and Sonoma County Chief Probation Officer Robert Ochs (collectively, "Sonoma County Intervenors") jointly submit their Responses to Defendants' November 12, 2009 Proposed Prison Population Reduction Measures pursuant to the invitation provided by the Court via its Order entered November 18, 2009 (N.D. Docket No. 2275; E.D. Docket No. 3730). For the purposes of this Response, County Intervenors and Sonoma County Intervenors shall collectively be referred to simply as the "Counties".

In Defendants' Response to Three-Judge Court's October 21, 2009 Order, filed on November 12, 2009 (the "November 12, 2009 Plan"), Defendants separated their prison population reduction proposals into two sections. In Section One, Defendants reiterated and provided additional discussion on the proposals described in the initial plan they filed on September 18, 2009. Counties did not file any responses to such a plan, and do not respond to any proposals made in Section One of the November 12, 2009 Plan. Counties herein respond only to the proposals Defendants make in Section Two of the November 12, 2009 Plan, beginning on page 16 of Exhibit "A" attached to the plan.

Counties' responses to each of Defendants' six prison population reduction proposals described in Section Two are set forth below, under the headings and in the order in which they appear in the November 12, 2009 Plan.

**A.   Additional California Out-of-State Correctional Facility Expansion**

Defendants suggest that the Court permit the State to expand the pool of inmates who may be transferred to out-of-state prisons, as well as immediately and indefinitely waive the consent provisions of California Penal Code § 11191. Counties do not provide a substantive response to this proposal, as it does not appear to impact the Counties.

**B.   Property Crime Thresholds**

Defendants suggest that the Court increase the minimum threshold for grand theft from $400 to $950 by entering an order prohibiting the State prisons from accepting inmates

committed to prison for grand theft unless the threshold has been met. Defendants do not provide information as to the procedure for enforcement of the proposed order: if prison officials deny admission of these convicted felons at the front door of the prison, are they to be released to the streets or returned to local jails to serve their time? If these felons are returned to local jails to serve their time, does the State intend to provide necessary funding to the counties to house and provide services to these prisoners? These unanswered questions regarding implementation of Defendants' proposal prevents Counties from being able to take a position on it at this time.

### C. Alternative Custody Program

Defendants suggest that alternative custody options for low-risk offenders could include house arrest with GPS monitoring, or placing prisoners in residences, local programs, hospitals, or treatment centers. To effectuate this proposal, Defendants suggest the Court waive Penal Code Section 1170(a) (which requires a term of imprisonment in State prison) as well as possibly Article I, sections 28(a)(5) and 28(f)(5) of the California Constitution (the Victim's Bill of Rights).

As a general matter, Counties strongly favor alternative custody programs such as those suggested in Defendants' proposals. However, the State does not provide information on whether there are available facilities or programs needed to address the targeted prison population, or whether such facilities and programs could be established. Counties provided evidence to this Court that many local programs, treatment centers, and hospitals are stretched to the point of breaking – reserving bed space for state prisoners would have the effect of further reducing the number of beds available to needy County residents.[1] In

---

[1] For example, local substance abuse programs could not accommodate a new influx of offenders: (1) in Sonoma County, there are waiting lists for substance abuse treatment programs reserved for offenders, and on any given day approximately 412 county residents may be seeking publicly-funded alcohol and drug treatment that is not available [see Supplemental Expert Report of David M. Bennett, submitted October 30, 2008 (hereinafter, "Bennett Supp."), p. 3, §2]; and (2) in Santa Clara County, the drug treatment system is full and lengthy waiting lists would prevent released state prisoners from entering treatment in a timely manner [see Expert Report of Robert Garner, submitted October 30, 2008, Exhibit DI-

County Intervenors and Sonoma County Intervenors'
Joint Response to Defendants' November 12, 2009
Proposed Prison Population Reduction Measures        3

addition, in light of the current budget crisis, it is unclear whether there is funding available to pay for the required programs or treatment – or whether the Counties would be required to bear the burden of the cost in this regard (which, as demonstrated at trial, the Counties are not financially able to do).

Accordingly, while the principle of this proposal is sound, Counties request that State Defendants provide more information regarding implementation of this proposal as well as its anticipated impact on Counties, to determine whether it would have a negative impact on public health, welfare and safety.

### D. AB 900 Construction Acceleration

State Defendants suggest that the Court waive certain state laws to allow the State to expedite some previously identified projects more expeditiously, including, *inter alia,* waiving the CEQA environmental review process and requirements. Counties object to this proposal on the grounds that Defendants have not provided sufficient justification for waiving environmental laws with respect to the building of new prisons, and that doing so would negatively impact California environs. In addition, such a proposal does not appear to be narrowly tailored to address the federal constitutional violations at issue. Accordingly, Counties believe that this proposal is outside the parameters of 18 U.S.C. §3626.

### E. House Inmates in Private Facilities

Defendants propose that the Court allow the State to rapidly increase the number of available prison beds by waiving certain state law requirements to permit the State to expedite the leasing, building, and/or operating of private correctional facilities to house State prisoners. Counties object to Defendants' request to waive the CEQA environmental review process and requirements, based on the grounds set forth in subsection D, above.

### F. Jail Time for Enumerated Felonies

Defendants propose to reduce prison population in the amount of 11,815 prisoners as of December 2011, by limiting sentencing for 7 enumerated felonies to 366 days, which

---

312, p. 4].

1 sentences could only be served in the county jail. This would result in a shifting of this
2 population of prisoners from State prisons to local jails – many of which are overcrowded
3 themselves. Defendants do not propose an implementation method for their suggestion, and
4 Counties believe that it cannot be implemented within the parameters of 18 U.S.C. §3626.

5   By suggesting that this prison population serve their time in local jails, Defendants
6 request this Court merely to shift the overcrowding problem to local governments rather than
7 solving the problem. Counties presented evidence and expert opinions to this Court
8 demonstrating that such a shift in population to local jails would dramatically and negatively
9 impact public safety. (See 18 U.S.C. §1326(a)(1).)[2] Indeed, California county jails are not in
10 a position to accommodate new unfunded demands: 32 California counties have jails with
11 population caps, and in 2005, 155,000 sentenced jail inmates were released early in
12 California due to overcrowding. (Bennett, p. 7, ¶20.)

13   Any proposal to shift prison population to local jails must be accompanied by
14 additional funding provided to counties as well as a State commitment to assist counties in
15 developing plans for services; absent such plans, shifting state prisoners to local jails would
16 overwhelm already overburdened jails and cause a loss in system integrity – which will result
17 in higher failure rates and ultimately an increase in returns to prison. (Bennett Supp., pp. 5-
18 6.) A responsible and sustainable prison reduction plan must aim to have programs in place
19 to address the risk and needs of offenders, in order to address the underlying issues that
20 recycle offenders back through our jails and prisons to prevent the cycle of recidivism.

---

[2] See generally, Expert Report of David M. Bennett Report, submitted October 30, 2008 (hereinafter, "Bennett"). For example, a shift in prison population to jails would result in overcrowded jails and overtaxed jail services, programs, personnel and other resources [Bennett, p. 8, ¶22]; such overcrowding in the local jails will force the state trial courts to take other action to reduce jail population, which will lead to inappropriate pre-trial releases and/or placement of non-qualified defendants on probation, or will result in a failure to sentence/failure to serve time for misdemeanors [Bennett, p. 8, ¶24]; such overcrowding in the local jails will result in a loss of flexibility that will prevent jail officials from effectively managing their own jail population, thereby compromising the safety of inmates and staff confined within an increasingly volatile environment [Bennett, p. 8, ¶25; p. 9, ¶26].

(Bennett Supp., p. 5, §2; p. 6, §3.) Without such a plan, counties will bear the brunt of the State's failure to manage its prison population.

In addition, this Court further invited plaintiffs and intervenors to submit population reduction measures they believe to be more practical or effective, and the cost for implementing such measures. While the Counties believe that the most effective method to reduce prison population is for the State to fund community programs designed to divert offenders and provide services at the local level, the Counties are not in a position to propose the implementation of specific programs in each of the 58 counties nor estimate the costs of such measures statewide. Further, should plaintiffs or other intervenors propose such alternative reduction methods, the Counties reserve the right to oppose any such proposals that would have a negative impact on public health or welfare, or that would shift the burden of released prisoners to counties absent sufficient funding to address the effects of the release.

Respectfully submitted,

Dated: December 7, 2009          STEVEN M. WOODSIDE, County Counsel

By:   /s/ Anne L. Keck
      ANNE L. KECK
      Deputy County Counsel

Attorneys for Intervenors the County of Sonoma, the Sonoma County Sheriff-Coroner William Cogbill, the Sonoma County District Attorney Stephan Passalacqua, and Sonoma County Chief Probation Officer Robert Ochs

Dated: December 7, 2009          MIGUEL MARQUEZ, Acting County Counsel

By:   /s/ Theresa J. Fuentes
      THERESA J. FUENTES
      Deputy County Counsel

Lead Attorneys for Intervenors COUNTY OF SANTA CLARA, COUNTY OF SAN MATEO, COUNTY OF SANTA BARBARA