EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
WILLIAM KWONG
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5724
Facsimile:  (415) 703-5843
kyle.lewis@doj.ca.gov

Attorneys for Defendants

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. WOLFF – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
swolff@hansonbridgett.com
rjacob@hansonbridgett.com

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>          Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>          Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' REPLY TO RESPONSES TO DEFENDANTS' NOVEMBER 12, 2009 REVISED POPULATION REDUCTION PLAN**<br><br>**To:  Three-Judge Court** |

- 1 -

## I.    INTRODUCTION

Under court order, Defendants Arnold Schwarzenegger et al. (Defendants) submitted a revised population reduction plan on November 12, 2009, to which Plaintiffs and Intervenors filed responses.  In their response, Plaintiffs admit that Defendants' plan meets the Three-Judge Court's requirements, but they do not acknowledge Defendants' opposition to the prisoner release order, or Defendants' inability to meet the Three-Judge Court's order without waivers and affirmative changes in State law.  Moreover, Plaintiffs assert that public safety is assured under this plan.  But this Court acknowledged in its August 4, 2009 order that crime was likely to increase without an additional investment in rehabilitation programming, and such investment is unlikely given the State's current financial condition.

This response does not constitute a waiver of any issue previously raised before the Three-Judge Court, nor does this response constitute an admission that the Three-Judge Court's order meets the requirements of the Prison Litigation Reform Act (PLRA). Defendants continue to assert, among other things, that the Three-Judge Court was improperly convened, that the Three-Judge Court misconstrued the PLRA's requirement that crowding be the primary cause of the violation of a federal right, and that the court-ordered population cap of 137.5% of design capacity does not satisfy the PLRA's "least intrusive" and "narrowly drawn" requirements.  Defendants have appealed the Three-Judge Court's prisoner release order to the United States Supreme Court.  That appeal is pending.

## II.    BACKGROUND

On September 18, 2009, by order of the Three-Judge Court, Defendants submitted a proposed population reduction plan to gradually reduce the State's prison population to 137.5% by Fiscal Year 2014-15.  (Defs.' Pop. Reduction Plan (Defs.' Initial Plan), Ex. A at 1, *Plata* Dock. No. 2237-1.)  Defendants' September 18, 2009 population reduction plan was not a short-term fix for prison crowding, and was instead designed to

1  implement long-term prison reform that enhanced public safety and reduced the prison

2  population.  (*Id.* at 2; *see also* Defs.' Resp. to Three-Judge Court's Oct. 21, 2009 Order

3  (Defs.' Nov. 12, 2009 Plan, Ex. A at 1, *Plata* Dock. No. 2274.)  But the Three-Judge

4  Court rejected Defendants' September 18, 2009 prisoner reduction plan because it did

5  not meet the two-year deadline to achieve the prisoner reduction contemplated by the

6  Three-Judge Court in its August 4, 2009 Order.  (Oct. 21, 2009 Order, *Plata* Dock. No.

7  2269.)

8        Thereafter, by order of the Three-Judge Court, on November 12, 2009,

9  Defendants submitted a revised prison population reduction plan to reduce the State's

10  prison population to 137.5% of design capacity over two years.  (*See* Oct. 21, 2009

11  Order at 6; Defs.' Nov. 12, 2009 Plan.)  As Defendants stated on November 12, 2009,

12  they believe that the revised population reduction plan is impossible to implement

13  without extraordinary action by the federal courts or the California Legislature.  (*See*

14  Defs.' Nov. 12, 2009 Plan.)  Nonetheless, Defendants continue to believe that the

15  September 18, 2009 plan is the most effective way to safely and responsibly reduce the

16  prison population.  (Defs.' Nov. 12, 2009 Plan at 3.)  Moreover, the elements of that plan

17  were the foundation for the revised plan.  (*Id.*)  However, in order to comply with the

18  Three-Judge Court's order, in the revised plan, Defendants identified State laws that, if

19  waived or affirmatively changed by federal court order, would allow the State to

20  implement additional reduction measures.[1]  (*Id.* at 16-21.)

21        On November 18, 2009, the Three-Judge Court ordered Plaintiffs and Intervenors

22  to submit comments and/or objections to the revised November 12, 2009 population

23  reduction measures.  (Nov. 18, 2009 Order, *Plata* Dock. No. 2275.)  Plaintiffs, the

24  County Intervenors, Sonoma County Intervenors, and the Republican Assembly and

25  _____

26  [1] Nonetheless, Defendants continue to preserve their objection that state law waivers are impermissible here.  Defendants' September 18, 2009 Plan pointed out that the Three-Judge Court did not permit Defendants to introduce evidence regarding whether there are any current and ongoing violations of

27  federal rights.  Plaintiffs were also not required to prove, nor did they prove, that there are any current and ongoing violations.  Thus, Defendants believe that the statutory requirements authorizing such waivers

28  have not been satisfied.  *See* 18 U.S.C. § 3626(a)(1)(B)(ii)-(iii).

1    Senate Intervenors all submitted comments and/or objections to Defendants' November

2    12, 2009 Plan.  (*See Plata* Dock. Nos. 2278-2280.)  Plaintiff-Intervenor CCPOA did not

3    file comments or objections to the November 12, 2009 Plan.

### III.    RESPONSE

5        Plaintiffs, in their Response to Defendants' November 12, 2009 plan, state that

6    Defendants' plan "meets the requirements of this Court's August 4, 2009 Order" in that it

7    "provides for a reduction in the population of the 33 adult prisons to 137.5% of design

8    capacity within two years."  (Pls.' Resp. at 1:3-5.)  Defendants provide the following

9    responses to Plaintiffs' minimal comments.[2]

**A.    State Law Must Change Before The State May Implement The Prisoner Reduction Measures In Defendants' November 12, 2009 Plan.**

12        Defendants' November 12, 2009 plan stated that "the prisoner reduction that this

13   Court seeks – a reduction of more than 40,000 prisoners in two years – can only be

14   accomplished if the State Legislature enacts new laws and/or this Court orders changes

15   to State laws . . . ."  (Defs.' Nov. 12, 2009 Plan, Ex. A at 2.)  Contrary to Defendants'

16   representations, Plaintiffs incorrectly assert that "[i]t is unnecessary for the Court to order

17   the waiver of any State laws at this time," particularly because of the Overcrowding State

18   of Emergency of 2006 (Emergency Proclamation) and Penal Code Section 2900.  (Pls.'

19   Resp. at 2:10, 2:14-3:2 & n.2.)  But Plaintiffs overlook the fact that Defendants'

20   November 12, 2009 plan requires waivers and, in some instances, affirmative changes

21   to State law to implement some of the prisoner reduction measures and to meet the

22   Three-Judge Court's required population reduction figure.  Without any explanation,

---

[2] Although Plaintiffs' comments were largely without substance and not particularly useful, Plaintiffs' attorneys nonetheless sought voluminous data from CDCR after entry of the August 4, 2009 and October 21, 2009 orders, presumably so that their expert could evaluate Defendants' prisoner reduction measures and offer their own alternative measures.  (*See, e.g.,* Pls.' Mot. to Compel Defs.' to Consult with Pls. and to Produce Data Relevant to Pop. Reduction Plan, *Plata* Dock. No. 2217.)  Defendants assisted Plaintiffs at great expense and continued to do so almost until the date that Plaintiffs filed their response on December 7, 2009.  Plaintiffs' response, however, contained no substantive analysis of Defendants' November 12, 2009 plan, did not indicate that any evaluation had been completed by Plaintiffs' purported expert, and did not propose alternative population reduction methods.

1  Plaintiffs suggest that, instead of state law waivers, Defendants can use the Governor's

2  emergency power and the CDCR Secretary's power pursuant to the emergency

3  provision in Penal Code section 2900(b)(1) to implement elements of the State's prison

4  population reduction plan.  Plaintiffs' suggestion that the State should rely on the

5  Governor's emergency power misapprehends the purpose and scope of the Governor's

6  emergency proclamation.  The emergency proclamation addresses the need to eliminate

7  the use of non-traditional beds in 29 of CDCR's 33 prisons, and does not address any

8  alleged need to provide healthcare to inmates.  Defendants remain committed to

9  addressing prison crowding.  In fact, CDCR continues to process out-of-state transfers

10  under the authority of the Governor's emergency proclamation.

11  Plaintiffs also suggest that Defendants use the CDCR Secretary's emergency

12  authority in Penal Code section 2900 to implement other elements of the State's plan but

13  does not identify the elements.  Penal Code section 2900 is an emergency measure that

14  allows the CDCR Secretary to temporarily house convicted felons in jails or other

15  facilities.  The temporary nature of this provision is insufficient to address the Three-

16  Judge Court's Order.

17  As Defendants stated in their November 12, 2009 plan, certain prisoner reduction

18  measures "cannot be accomplished administratively, and they will require legislative

19  changes or federal court orders."  (Defs.' Nov. 12, 2009 Plan, Ex. A at 16.)  In order to

20  meet the Three-Judge Court's population reduction figure of 137.5% of design capacity

21  within two years, Defendants set forth the following six proposals that could not be

22  implemented without changes in the law:

23      1.  <u>Transferring Additional Inmates to Out-of-State Correctional Facilities</u>

24  In their November 12, 2009 plan, Defendants stated that "it is unclear the extent

25  to which CDCR will be able to rely on the Emergency Proclamation in the future for out

26  of state transfers," and they noted that on July 1, 2011, Penal Code section 11191 will

27  require inmates to consent to an out-of-state transfer.  (*Id.* at 16.)  Defendants'

28

- 5 -

1  November 12, 2009 plan also explained that the Three-Judge Court could immediately

2  waive the consent provisions in section 11191 to allow out-of-state transfers to continue

3  indefinitely, without interruption.  (*Id.*)  Additionally, this Court could immediately waive

4  the provisions in section 11191 requiring attorney consultations, which entails a costly

5  and time consuming process.  (*Id.*)  The Court could also waive the provisions of section

6  11191 that restrict CDCR's ability to transfer out of state inmates with serious medical

7  and mental health conditions, and inmates in the mental health delivery system at the

8  Enhanced Outpatient Program level of care or higher.  (*Id.*)

9           2.      Property Crime Thresholds

10          In their November 12, 2009 plan, Defendants proposed increasing the threshold

11  for grand theft crimes from $400 to $950.  (*Id.* at 17.)  This is not a proposal for which a

12  Court order could waive the appropriate change in State law as an affirmative action is

13  required.  (*Id.* at 17.)  Absent additional legislation, Defendants would require a court

14  order requiring them to refuse admission of any person into State prison who was

15  convicted of a felony that did not meet the $950 threshold.  (*Id.* at 17.)

16          The Governor's Emergency Proclamation, as argued by Plaintiffs, does not

17  provide Defendants with the authority to unilaterally change State law.  (*See* Gov. Code

18  secs. 8567, 85671 and 8627.5.)  Instead, an affirmative action by the Legislature or the

19  Court would be required to implement this reduction measure.  (Defs.' Nov. 12, 2009

20  Plan, Ex. A at 17.)

21          3.      Alternative Custody Program

22          Defendants' alternative custody program proposal in their November 12, 2009

23  plan would require a waiver of Penal Code section 1170(a), which requires a term of

24  imprisonment, and Article I, Sections 28(a)(5) and 28(f)(5) of the California Constitution.

25  (*Id.* at 18.)  Absent waivers of these laws, Defendants cannot implement the alternative

26  custody program described in their plan.  (*Id.* at 17-18.)

27  / / /

28

DEFS.' REPLY TO RESPONSES TO NOV. 12, 2009 POP. REDUCTION PLAN
CASE NOS. 2:90-CV-00520 LKK JFM; C01-1351 TEH                          2163372.1

1    4.    AB 900 Construction Acceleration

2    Defendants' proposal in their November 12, 2009 plan to accelerate AB 900

3    construction would require the Three-Judge Court to waive the California Environmental

4    Quality Act (CEQA), as well as various Public Contract Code (PCC) sections.  (*Id.* at 18-

5    19.)

6    5.    Housing Inmates in Private Facilities

7    In their November 12, 2009 plan, Defendants proposed housing additional

8    inmates in private in-state facilities.  (*Id.* at 19-20.)  In order to achieve the most

9    expedited establishment of newly constructed prison cells in these facilities, Defendants

10   proposed the following waivers of State law:  waiver of CEQA, PCC sections covering

11   the approval and competitive bidding rules, Article VII of the California Constitution, the

12   State Civil Service Act, and Government Code section 19130.  (*Id.* at 19-20.)  Absent

13   waivers of the above laws, CDCR would not be able to implement this proposal in the

14   timeframe required by the Three-Judge Court.  (*Id.* at 20.)

15   6.    Jail Time for Enumerated Felonies

16   In their November 12, 2009 plan, Defendants proposed changing the law so that

17   the maximum sentences for certain felonies would be 366 days which could only be

18   served in county jail.  (*Id.* at 20-21.)  Absent legislative action, the Three-Judge Court

19   would have to order that CDCR not accept into State prison inmates convicted of certain

20   crimes.  (*Id.* at 20-21.)

21   Defendants maintain that it is not appropriate or permissible for the Three-Judge

22   Court to implement State law changes, but the vast and accelerated prisoner reduction

23   ordered by this Three-Judge Court cannot be accomplished in the absence of Legislative

24   action and/or court orders.  (*See* Defs.' Nov. 12, 2009 Plan, Ex. A at p. 2.)

25   / / /

26   / / /

27   / / /

28

- 7 -

1

2

**B.    This Court Did Not Adequately Evaluate The Impact That Its Prisoner Release Order Would Have On Public Safety And The Operation Of The Criminal Justice System.**

3    In their response, Plaintiffs state that the population reduction methods included

4  in Defendants' November 12, 2009 Plan "will have no adverse impact on public safety or

5  the operation of a criminal justice system" because this Court has already determined

6  some of the methods to be "safe."  (Pls.' Resp. at 1:24-2:1.)  As an initial matter,

7  Plaintiffs' reasoning is unsound because the Court could not have evaluated in August

8  the combination of reduction measures identified in either of Defendants' subsequent

9  plans.  Rather, the Court merely evaluated whether public safety could generally be

10  preserved under a 137.5% prison population cap.  The Court has not yet evaluated

11  whether the particular measures proposed in the November 12, 2009 plan assuredly will

12  sufficiently protect public safety.  Indeed, the Court originally acknowledged in its August

13  4, 2009 order that crime was likely to increase without substantial investment in

14  "evidence-based rehabilitative programming," but the Court did not find that such

15  programming could be expanded or calculate the costs of expanding such programming.

16  (August 4, 2009 Order at 152-154 & n.80, *Plata* Dock. No. 2197.)  In light of the State's

17  weak financial condition, it is unlikely that such programming could be made available.

18    Nonetheless, the reforms proposed in the Defendants' September 18, 2009

19  prisoner reduction plan resulted in a gradual reduction of the prison population, and

20  Defendants maintain that their initial plan provided for a safer prisoner reduction.  (*See*

21  Defs.' Nov. 12, 2009 Plan at Ex. A at 1.)  Defendants' November 12, 2009 Plan, on the

22  other hand, provides for an accelerated prisoner reduction because they were ordered to

23  do so by the Three-Judge Court.  (*See* Oct. 21, 2009 Order, *Plata* Dock. No. 2269.)

24    **IV.    CONCLUSION**

25    Defendants are opposed to any prisoner release order and there is an appeal

26  pending in the U.S. Supreme Court.  However, as required by the Three-Judge Court,

27  Defendants submitted their November 12, 2009 revised population reduction plan that is

28

DEFS.' REPLY TO RESPONSES TO NOV. 12, 2009 POP. REDUCTION PLAN
CASE NOS. 2:90-CV-00520 LKK JFM; C01-1351 TEH                                    2163372.1

1   based on waivers of State law and changes in other State laws by the Three-Judge

2   Court to meet the Court's requirements.

3   DATED:  December 18, 2009                    HANSON BRIDGETT LLP

4

5                                               By: /s/ Paul B. Mello

6                                               PAUL B. MELLO
                                                Attorneys for Defendants
7                                               Arnold Schwarzenegger, et al.

8   DATED:  December 18, 2009                    EDMUND G. BROWN JR.
                                                Attorney General of the State of California
9

10

11                                              By: /s/ Kyle Lewis

12                                              KYLE LEWIS
                                                Deputy Attorney General
                                                Attorneys for Defendants
13                                              Arnold Schwarzenegger, et al.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -