PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710-1916
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, CA 94104-1823
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107-1389
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, CA 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING** |

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

**INTRODUCTION**

Defendants still refuse to comply with the Court's order to meet the critical need for specialized mental health beds for the most seriously and acutely ill members of the *Coleman* class by 2013—four years from today and more than 18 years after the judgment that the State is violating the 8th Amendment through its deliberate indifference to prisoners' mental health needs. Instead of responding to the repeated advice and warnings of the Special Master and his experts as to how to address the inadequacies of the Stark EOP plans, Defendants put their heads in the sand and ask the Court to approve the dangerous and inadequate project based on a hearsay objection. Defendants also refuse to even develop a plan for female prisoners in need of EOP level of care, claiming that the three-judge court's population reduction order—which Defendants are appealing and resisting—will magically address this unmet need.

Plaintiffs request that the Court promptly approve the long-term bed plan projects other than the Stark EOP and EOP-ASU projects,[1] but require Defendants to accelerate all of the projects to meet the 2013 deadline. Defendants should also be required, within 30 days, to file a complete plan to address the needs of the female EOP population by 2013. Finally, the Court should schedule an evidentiary hearing to address the Stark EOP and EOP-ASU projects and require Defendant officials to explain, under oath, the clinical and custodial evidence supporting those projects.[2]

**I.    Defendants' Plan to Intentionally Overcrowd Patients at Stark, without Any Commitment to Provide Enhanced Programming, Is Likely to Endanger the *Coleman* Class**

Plaintiffs' November 30, 2009 filing identifies several serious problems with Defendants' plan to create the largest EOP program at Stark. Docket 3733 at 10-15. Chief among Plaintiffs' concerns is Defendants' plan to intentionally overcrowd class members in cells that are insufficient for one prisoner, much less two, in order to create specialized mental health programs in an aging,

---

[1] Plaintiffs object to Defendants' EOP-ASU plan at Stark for the reasons set forth in our November 30, 2009 filing. *See* Docket 3733 at 13-15. Plaintiffs do not object to Defendants 30-bed MHCB plan at Stark.

[2] Plaintiffs incorporate by reference all other arguments made in our November 30, 2009 response, but will not restate them here. Docket 3733.

1

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

run-down prison designed for other purposes.

Fewer than four months ago, the three-judge panel convened for the overcrowding trial determined, in accordance with the opinions of "some of the nation's foremost prison administrators" that "overcrowding is not only the primary cause of the constitutionally inadequate medical and mental health care in California's prisons, but also that until the problem of overcrowding is overcome it will be impossible to provide constitutionally compliant care to California's prison population." *Coleman / Plata v. Schwarzenegger*, Nos. 90-520 LKK and 01-1351 TEH, 2009 WL 2430820, at *62 (E.D. Cal. Aug. 4, 2009). Deborah Hysen, the Chief Deputy Secretary of Facility Planning, Construction and Management, acknowledged during trial that 145% design capacity does not meet federal guidelines or national standards and recommended that the CDCR, as a long-term goal, should not exceed 130% of design capacity. *Id.* at *81. Even a 130% benchmark is likely to be too high for aging facilities, or facilities with mental health or healthcare missions. *Id.* at *81 ("[W]hile [130%] might be appropriate for new construction, it should be used carefully in CDCR's old, decaying facilities…Crowding prisoners at 130% is an appropriate goal for CDCR, speaking broadly, but some facilities might only be able to support and provide appropriate healthcare for smaller numbers."). The Court should reject Defendants' plan for the Stark EOP program in its current form.

### A. Defendants Refuse to Provide Enhanced Programming at Stark and Ignore the Special Master's Experts' Recommendations to Do So

Despite the overwhelming proof that overcrowding prohibits the provision of constitutionally adequate mental healthcare and that it is imperative for Defendants to reduce the population, Defendants' plan for Stark includes the dangerous, business-as-usual strategy to intentionally overcrowd prison facilities. Contrary to Ms. Hysen's long-term goal of "establishing planning capacity and oversight mechanisms to prevent the occurrence of exceeding [the 130%] threshold" (*id.*) expressed at trial, Ms. Hysen now expects to double-cell "up to 141% capacity" at Stark. Docket 3747-2 at ¶ 11 (Hysen Decl.). In support of this plan, Defendants cite a Title 15 provision requiring prisoners to double-cell, and argue that double-celling is not a *per se* constitutional violation. Docket 3747 at 11-12. Not a single declarant, however, submits evidence that *Coleman*

2

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

class members in need of a specialized higher level of mental health care can be safely and humanely double-celled in an aging facility intended to house only single prisoners. In fact, the only licensed mental health clinicians who have commented on the planned overcrowding at Stark are the Special Master's experts.[3] Those experts have expressed serious concerns about the overcrowding at Stark and have recommended various alternatives: Reduce the size of the program to eliminate double-celling or mitigate the harm through enhanced out of cell programming. For instance, the Special Master's team recommends that EOP-GP prisoners housed in Stark have programming for a minimum of twelve hours per day out of their cells, that at least 70% of their mental health treatment be provided outside of the celled housing units, and that their out-of-cell time should also include vocational and educational programs. Docket 3733 at 13-14; Docket 3734 at ¶¶ 8, 9 (Kahn Decl.).[4]

Defendants stubbornly refuse to make any changes in the Stark EOP plan. In their December 11, 2009 filing, they refuse to even consider the mitigation of enhanced programming, stating that they will provide only the "programming [CDCR] has already established in already existing

---

[3] Defendants did, however, file a declaration by Dr. Scaramozzino, the Acting Deputy Director, Mental Health Clinical Services, Division of Correctional Health Care Services. Far from testifying that *Coleman* class members will be appropriately and safely housed at Stark, however, Dr. Scaramozzino's declaration establishes nothing more than the uncontroversial opinion that double-celling can deter suicides and foster socialization. Docket 3747-4 at ¶¶ 4-6. Plaintiffs do not contest that double-celling can have clinical benefits, and that it may be an appropriate practice at newer facilities equipped with appropriate programming, treatment space and cells that were constructed with the purpose of housing two prisoners. Stark is not that facility, however, and neither Dr. Scaramozzino, nor any other mental health clinician employed by Defendants, has testified before this Court that they support the double-celling of class members at the Stark facility.

[4] Defendants assert a hearsay objection to Plaintiffs' evidence that the Special Master's team has raised serious concerns over the use of Stark for EOP and EOP-ASU class members. Docket 3747 at 11, fn. 3. Tellingly, Defendants do not contest that the Special Master has these concerns, or that he has repeatedly communicated them to Defendants. Nor do they deny that they were present at the meeting when the concerns were expressed yet again in public.

3

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

facilities that house EOP-GP inmates." Docket 3747 at 14.[5]

Given Defendants' position that the Court cannot consider the substance of the Special Master's recommendations on this record, Plaintiffs request that the Special Master provide his recommendations in a report issued in advance of the evidentiary hearing.

Defendants must also be required to address the need for Level I and II EOP beds either in the Stark project or in alternative projects. Defendants' current policy of forcing all EOP patients to live and program in high security prison environments deprives these men of a range of privileges, opportunities and programs that they are entitled to enjoy, and complicates and interferes with the delivery of mental health care due to the additional custodial barriers of high security prisons. Defendants fail in their attempt to hide the fact that all Level I/II EOP class members are currently housed in Level III EOP programs. Defendants assert a misleading claim that "CDCR has Level I/II EOP-GP programs at several prisons…" Docket 3747 at 14 (citing Kernan Decl. at ¶ 3). As Mr. Kernan goes on to explain, however, "Level I, II and III EOP-GP inmates are housed at CMC, MCSP, RJD and CMF." Docket 3747-3 at ¶ 4. In other words, Defendants *do not* have Level I/II EOP programs—they house Level I and II EOP prisoners in Level III programs through custodial overrides. This practice must be stopped.

In light of Defendants refusal to provide enhanced programming, or otherwise address the serious problems at Stark, the Special Master should be requested to report in writing concerning his recommendations, the Stark project, as currently outlined, must be rejected and an evidentiary hearing is necessary.

---

[5] The Stark and other DJJ facilities were previously rejected as appropriate sites for mental health care by Defendants: "Because of their size, insufficient space for treatment programs and mental health staff, and generally non-therapeutic environments, DJJ's facilities also do not meet the programmatic needs set forth in this Mental Health Remedial Plan." *See* Defendant's Notice of Filing DJJ's Mental Health Remedial Plan at 72, Filed August 25, 2006 in *Farrell v. Cate*, Case No. RG 03079344, Superior Court of California, County of Alameda (available at http://www.cdcr.ca.gov/Juvenile_Justice/docs/MentalHealthPlan.pdf). Although the DJJ planned to address some of the grave shortcomings in the aging facilities through short-term fixes, the DJJ acknowledged that "while the addition of modular space will improve conditions for youth and staff, the experts consulted in drafting this plan believe that *new facilities are required to meet the programmatic requirements identified in this plan*." *Id.* (emphasis added)

4

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

## II. Defendants Admit that Their Plan Fails to Comply with the 2013 Deadline to Fully Staff and Activate its Long-Range Programs

Pursuant to this Court's September 24, 2009 Order, the Court will schedule an evidentiary hearing if Defendants' long-range bed plan fails to materially comply with the deadlines and directives included in that order. Docket 3686 at ¶ 5. One such directive is that "all projects in the long-range plan will be fully staffed and activated by the 2013 target date defendants have established." *Id.* at ¶ 2. Defendants refuse to even *plan* to comply with the Court's order.

According to Defendants' original plan, sixty-six (66) percent (or 1,862) of the long-range mental health beds would not come online until well into 2014, missing the court-ordered deadline by nearly a year. Docket 3724-2 at Exs. 1, 10, 12 & 14. The 1,862 beds are located in three planned facilities—the Consolidated Care Center ("CCC") (432 ICF, 43 acute and 137 MHCBs, for a total of 612 beds), the Stark facility (775 EOP and 50 ASU EOP beds, for a total of 825 beds) and the Dewitt Nelson facility ("Dewitt") (375 EOP and 50 ASU EOP beds, for a total of 425 beds). Plaintiffs urged in our prior filing that the Court hold an evidentiary hearing to address Defendants' failure to comply with the 2013 deadline set by the September 24, 2009 order. Docket 3733 at 5.

Defendants' December 11, 2009 response indicates that they have now secured design-build authority for the CCC, which will allow them to complete patient admissions by December 24, 2013. Docket 3747 at 5; Docket 3747-2 at ¶ 4 and Ex. 1 (Hysen Decl.). Defendants note, however, that this schedule "is subject to change based on issues outside the control of Defendants or the State, including litigation that is or may be pending to stop the project." Docket 3747 at 5. With respect to the two other projects at Stark and Dewitt, which may eventually house 1,250 *Coleman* class members, Defendants refuse to even attempt to activate them by the 2013 court-ordered deadline.

In other words, Defendants treat the 2013 deadline not as a firm order imposed to remedy the ongoing Constitutional violations evidenced by the chronic shortage of appropriate mental health placements, but as a malleable deadline they can change at will. Defendants include a vague and unexplained statement that their decision to use AB900 funds for these projects "impacted [their] ability to complete all of the mental health bed projects by 2013." Docket 3747 at 6. Regarding Stark in particular, Defendants blame the delay on the housing shortage caused by the CIM riot. *Id.*

5

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

For Dewitt, it is the "lengthy environmental review." *Id.* Deborah Hysen, the Chief Deputy Secretary of Facility Planning, Construction and Management, also argues that Defendants should not use the design-build approach for these projects because that approach is "best suited to new construction projects" and that design-build will not "yield similar acceleration for the renovation of existing buildings." Docket 3747-2 at ¶ 8.

The Court should order Defendants to proceed with their projects (other than Stark), but to take all necessary steps to accelerate each project to meet the 2013 deadline. Plaintiffs also renew our request for an evidentiary hearing to address Defendants' material non-compliance with the Court-ordered 2013 deadline.

### III. Defendants' Plan Ignores the Female EOP Population, Resulting in Material Non-Compliance with this Court's September 24, 2009 Order

Defendants claim that their long-range plan addresses the female population because they include activation schedules for two projects at California Institution for Women (CIW), a 20 bed PSU and a 45 bed ICF. With respect to badly needed EOP units, however, Defendants have no plan. They justify this based on pure speculation that the "prison reduction measures may reduce or eliminate the need for additional mental health beds in the female population." Docket 3747 at 8. Once Defendants know the true need, conversions of EOP units for women will be "more akin to a population adjustment, rather than construction of a bed project…" *Id.*

Plaintiffs pointed out in our November 30, 2009 filing that Defendants have not submitted any evidence supporting their theory that population reduction measures may obviate the need for female EOP beds and their December 11, 2009 filing is no exception. Moreover, Defendants' track record of converting general population or ASU housing units for EOP care belies their claim that no activation schedule is necessary for EOP conversions. Defendants anticipate that it will take between *two and three years*, for instance, to fully activate other EOP-GP programs in need of treatment and office space. *See* Docket 3724-2 at Ex. 3 (EOP-GP treatment and office space project at SVSP will not be activated until 10/2/2012); Ex. 4 (EOP treatment and office space project at SAC will not be activated until 5/23/2011); Ex. 5 (EOP-GP treatment and office space project at CMF will not be activated until 4/19/2013); Ex. 6 (EOP-GP treatment and office space project at LAC will not

6

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]

be activated until 9/12/2012). Defendants do not explain why or how they will complete EOP conversions at women's prisons on a faster timeline and without even preliminary plans for those projects. Plaintiffs request a court order requiring Defendants, within 30 days, to submit a specific sited and funded plan to address the needs of the female EOP population on or before 2013.

## CONCLUSION

Several projects in Defendants' long-range plan represent important steps forward in the bed planning process and Plaintiffs urge that the Court approve those projects immediately. Plaintiffs object, however, to Defendants' plan to convert the inadequate Stark facility into an overcrowded EOP program, their failure to plan for the needs of the female EOP population, and to their overall failure to meet the 2013 activation deadline set forth in this Court's September 24, 2009 Order. With respect to these three issues, Defendants' long-range bed plan fails to materially comply with this Court's Order.

Accordingly, Plaintiffs request that the Court promptly approve the long-term bed plan projects, other than the Stark EOP projects, but require that Defendants accelerate all of the projects to meet the 2013 deadline. Defendants should also be required, within 30 days, to file an appropriate and complete plan to address the needs of the female EOP population by 2013. Finally, the Court should schedule an evidentiary hearing to address the Stark EOP and EOP-ASU projects. Defendants should be compelled to produce all relevant witnesses to explain, under oath, the clinical and custodial evidence supporting their position. Given Defendants' position that the Court cannot consider the substance of the Special Master's recommendations regarding Stark, Plaintiffs also request that the Special Master provide his recommendations in a written report in advance of the evidentiary hearing.

Dated: December 18, 2009          Respectfully submitted,

                                  ROSEN, BIEN & GALVAN, LLP


                                  By: */s/ Amy Whelan*
                                      Amy Whelan
                                      Attorney for Plaintiffs

7

PLAINTIFFS' REPLY TO DEFENDANTS' LONG-RANGE MENTAL HEALTH BED PLAN AND RENEWED REQUEST FOR EVIDENTIARY HEARING - CASE NO. CIV S 90-0520 LKK-JFM

[335424-1]