IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.

      Plaintiffs,

    vs.                                     No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGER,
et al.
      Defendants.

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON HIS EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION IN CALENDAR YEAR 2007**

On June 23, 2009, the report of the special master's expert, Raymond F. Patterson, M.D., on inmate suicides in the California Department of Corrections and Rehabilitation during calendar year 2007 was distributed in draft form to the parties. Plaintiffs submitted their comments on the draft report on July 22, 2009, followed by defendants' submission of their comments on July 28, 2009. Dr. Patterson's report in final form was filed with the court on September 17, 2009. Docket No. 3677.

Defendants moved to modify Dr. Patterson's report on October 1, 2009. Docket No. 3695. Plaintiffs filed their opposition to defendants' motion on October 23, 2009, Docket No. 3714 – 3716, after which defendants filed their reply to that opposition on November 6, 2009. Docket No. 3725

This court entered an order on November 23, 2009 denying defendants' motion to modify Dr. Patterson's report. In the same order, the court denied without prejudice plaintiffs' request that the recommendations in Dr. Patterson's report be made orders of the court, and said

1

that "[r]equests for such orders should come, if at all, from the special master."  Order, filed

November 23, 2009, at 14.   Docket No. 3731

In view of the court's denial of the defendants' motion to modify Dr. Patterson's report, and based on the recommendations therein, the special master requests that the court order that:

1. Defendants shall specifically identify inmates' known and/or suspected medical problems and medications within these inmates' mental health treatment plans, rather than merely allude to them by reference to other records.

2. CDCR and DMH shall communicate and collaborate with each other to ensure that the highest level of care provided by DMH to CDCR inmates is given to any inmate who has been determined to need it.

3. Defendants shall accord priority to access to inpatient care for CDCR inmates at DMH facilities, particularly for Level III and Level IV inmates.  This involves requiring clinical staff to properly assess suicide risk factors for inmates experiencing changes in mental health functioning, particularly on placement in administrative segregation or other single-cell housing.  A vital component of this process is appropriate crisis-level service in treatment settings such as MHCBs, or limited treatment within OHUs, until transfers to DMH facilities can be achieved.  DMH must also be held accountable for its decisions on admissions or rejections and for its treatment provided to CDCR inmates, and cannot be permitted to avoid transparency with CDCR on any pretext of patient confidentiality.

4. Defendants shall fully and timely implement the suicide prevention and review processes that are already in place, at both the institutional and department levels, and shall give this priority.  This includes incorporation of revised policy and procedural guidelines and court orders into those processes.  It also entails the identification of deficiencies at the facility and systemic levels, appropriate follow-up of corrective action plans, and submission of documentation to the Coleman special master on the outcomes of investigations of staff misconduct, negligence, and error.  This process must include not only training but also supervision and appropriate supervisory action regarding staff performance.

                                               Respectfully submitted,

                                               /s/

                                          Matthew A. Lopes, Jr., Esq.
                                          Special Master

December 24, 2009