IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,

vs.                  No. 2:90-cv-0520 LKK JFM P

ARNOLD SCHWARZENEGGER,
et al.,

        Defendants.

SPECIAL MASTER'S REQUEST FOR A
WAIVER OF THE REQUIREMENT TO SUBMIT SEMI-ANNUAL
REPORTS ON DEFEDNANTS' COMPLIANCE WITH PROVISIONALLY
APPROVED PLANS, POLICIES AND PROTOCOLS

INTRODUCTION

On December 24, 1997, this court ordered the special master to submit reports on the defendants' compliance with provisionally approved plans, policies and protocols on a semi-annual basis. (Docket No. 905, ¶ 3.) On July 31, 2009, the special master submitted his twenty-first monitoring report with the court. (Docket No. 3638).

The twenty-second monitoring period was originally scheduled to commence on April 23, 2009. A series of court orders entered in this case resulted in the focus of the special master's resources on defendants' plans for short-term, intermediate-term and long-range bed needs, as well as training and staffing. Pursuant to the court order of June 18, 2009 (Docket No. 3613, ¶ 10) the modified needs assessment was expanded to all non-desert institutions under the continued supervision of the special master. Consequently the special master suspended the twenty-second round of monitoring during 2009 and as a result will be unable to file his report on findings for that monitoring period before the end of 2009.[1]

---

[1] The twenty-second monitoring round is presently scheduled to begin in February 2010.

Accordingly the special master is requesting a waiver of the requirement to submit compliance reports on a semi-annual basis. This waiver would only apply to the 2009 calendar year.

### GOOD CAUSE EXISTS TO GRANT THE SPECIAL MASTER'S REQUEST

Pursuant to a court order dated March 5, 2009, (Docket No. 3540) defendants filed a written progress report on March 19, 2009 (Docket No. 3544) on their plan to provide sufficient beds and treatment space for the provision of constitutionally adequate mental health care. Plaintiffs filed their objections to defendants' plan and the matter came on for hearing on March 24, 2009 to consider what further steps were required to insure compliance with the March 5, 2009 order. The court ordered the defendants to meet with the special master within twenty-four hours of the court hearing and on March 31, 2009 issued another order (Docket No. 3556) without a hearing based upon the representations of the special master. Defendants were ordered to file activation schedules for the completion of all <u>Coleman</u> court-ordered projects and were ordered to meet with the special master over a period of sixty (60) days to develop concrete proposals to meet the remaining short-term, intermediate, and long range bed needs of the plaintiff class. Both of those filings were due on or before May 26, 2009 and a further hearing was scheduled for June 16, 2009.

From March 24th through May 19th, the special master, together with his experts and monitors, met with representatives from the California Department of Corrections and Rehabilitation (CDCR), Attorney General's office (AG), Governor's office, Department of Finance (DOF) and the Department of Mental Health (DMH) to develop the court-ordered activation schedules and concrete proposals to meet the bed needs of the plaintiff class. Under the guidance of the special master and his team, defendants developed fifteen proposals to address the short-term and intermediate-term bed needs of the plaintiff class. These proposals addressed the bed needs of those inmates requiring enhanced outpatient program (EOP), mental health crisis bed (MHCB), intermediate care facility (ICF), and acute levels of care. Of the

fifteen proposals approved by the court, implementation for eleven of these proposals was scheduled to start immediately or within 180 days from the court order.

Pursuant to the March 31, 2009 order, CDCR and DMH were ordered to conduct a modified needs assessment to determine whether there were any unmet needs for inpatient care among members of the plaintiff class and to refer for inpatient care, on an expedited basis, any inmates identified during the modified assessment process. This modified needs assessment was to be completed within sixty (60) days. Over the following sixty (60) days the special master dispatched his experts to twelve (12) designated institutions to supervise the process undertaken by CDCR and DMH to comply with this provision of the March 31, 2009 order. The process demonstrated that there was a substantial number of previously unidentified Coleman class members who were in need of inpatient care. As a result of this finding, the court ordered the expansion of the modified needs assessment to all non-desert institutions to be completed by December 31, 2009. (Docket No. 3613, ¶ 10). In order to meet the completion date, the special master dedicated the services of all of his experts and monitors to supervising the modified needs assessment process at the remaining institutions, which made these experts unavailable for regular monitoring tours.

The court ordered the defendants to develop a staff training plan as part of the short-term and intermediate-term bed plan under the guidance of the special master. (Docket No. 3613, ¶ 4) The development of this training plan necessitated the further utilization of the special master's experts and monitors. Commencing on June 30, 2009, the special master's experts and monitors met seven times with representatives from CDCR, DOF and the AG's office to develop the training plan. Subsequent to these meetings, three pilot training sessions were conducted at two institutions which were also attended by the special master's experts and monitors and which concluded on October 7, 2009. The defendants submitted the training plan to the special master on October 26, 2009. He approved it on November 30, 2009 on the condition that his experts and monitors would continue to play a role in any refinement of defendants' training plan. (See letter attached hereto).

3

The court ordered defendants to complete a staffing plan by the end of August 2009, again under the guidance of the special master. (Docket No. 3613, ¶ 3) In response to the court's order the special master organized a workgroup comprised of his experts and monitors to guide CDCR in the development of a staffing plan. Commencing on July 1, 2009, more than ten in-person meetings were conducted with the experts and monitors together with representatives from CDCR, DOF and the AG's office. Defendants filed their staffing plan with the court on September 30, 2009. (Docket No. 3693) Defendants continue to work with the special master's experts and monitors and also with the plaintiffs to further explain the plan and address issues raised by the parties. Those communications are ongoing as of the date of this request.

CONCLUSION

Defendants have commenced the implementation of their court-approved proposals to address the short-term and intermediate-term bed needs of the plaintiff class. The modified needs assessment was expanded to all non-desert institutions and is scheduled to be completed by December 31, 2009. In addition, the special master's experts and monitors have been actively engaged in the development of defendants' training plan and staffing plan through December 2009. The special master's experts are actively supervising the modified needs assessment until the end of 2009 which would render even a regular monitoring tour all but impossible.

The special master has communicated with plaintiffs' counsel and defendants' counsel regarding this request for a waiver and both counsel have stated that they have no objection to such waiver.

For these reasons, the special master is asking the court to waive the requirement to submit semi-annual reports on defendants' compliance with provisionally approved plans, policies and protocols for the 2009 calendar year.

Respectfully submitted

/s/

_____

Matthew A. Lopes, Jr., Esq.
Special Master

December 29, 2009

<u>ACRONYM LIST</u>

| | |
|---|---|
| AG | Attorney General |
| CDCR | California Department of Corrections and Rehabilitation |
| DMH | Department of Mental Health |
| DOF | Department of Finance |
| EOP | Enhanced Outpatient Program |
| ICF | Intermediate Care Facility |
| MHCB | Mental Health Crisis Bed |

{}

# PANNONE
# LOPES
# DEVEREAUX &
# WEST LLC

*counselors at law*                                                    www.pldwlaw.com

November 30, 2009

Debbie Vorous, Esq.                     Michael Bien, Esq.
Deputy Attorney General                 ROSEN, BIEN & GALVAN, LLP
Office of the Attorney General          315 Montgomery Street, Tenth Floor
1300 I Street                           San Francisco, CA 94104
Sacramento, CA 94244

RE:    Custody and Mental Health Staff Collaboration Training

Dear Ms. Vorous and Mr. Bien:

On May 26, 2009 Defendants filed their "Report on Short-Term, Intermediate, and Long Range Bed Plan in Response to the March 31, 2009 Court Order." After a hearing on June 16, 2009, the court ordered the Defendants to develop a staff training plan as part of the short-term and intermediate term bed plan[1]. This plan was to be developed under the guidance of the Special Master and was to be completed by September 16, 2009. On September 17, 2009 the court granted Defendants' ex parte request for an extension of time for thirty (30) days to file the proposed training program so that an outside consultant could be engaged to assist in the development of the plan. The extension also allowed the plan to be tested before a live group of trainees prior to submission to the Special Master and prior to the implementation of the short-term and intermediate-term plans at the five institutions. CDCR contracted with Jane Haddad, Vice-President of Mental Health Management Inc., to work with the Defendants in the development of the training plan. On October 16, 2009, Defendants submitted their training plan entitled "Custody and Mental Health Staff Collaboration Training."

I assigned certain Coleman experts and monitors to provide guidance to the Defendants in the development of their training plan. Over the course of nine weeks commencing on June 30, 2009, my experts and monitors met seven times with representatives from the California Department of Corrections and Rehabilitation, Division of Adult Institutions, Department of Finance and the Attorney General's office to develop the training plan. Under the guidance of Dr. Jeffrey Metzner, the training plan began to focus on the interaction between custody staff and mental health staff and their treatment of mentally ill inmates. It was emphasized to the Defendants that the final

---

[1]   *Coleman* docket number 3613 entered on June, 18, 2009.

Debbie Vorous, Esq.
Michael Bien, Esq.
November 30, 2009
Page -2-

training plan would be produced by the Defendants using the same process employed in
the formation of the short-term and intermediate-term bed plans previously submitted by
the Defendants.

On September 23, 2009, Defendants conducted a pilot mental health training
session at California State Prison, Sacramento using the plan that had been developed.
This pilot was presented in a one-day, eight (8) hour training session. It should be noted
that Defendants voluntarily chose to conduct this pilot training session and that it was
never part of any court order. The pilot was attended by approximately 80 custody and
mental health staff from the institution. Also in attendance were Plaintiffs' counsel,
Defendants' counsel and my experts and monitors. At the conclusion of the pilot mental
health training session, all parties were afforded the opportunity to discuss their concerns
regarding the presentation and the accompanying written materials. Defendants
continued to fine tune the training plan based on the outcome of the pilot training session
and received further guidance from my experts and monitors. In addition, Plaintiffs'
counsel submitted written comments to me and Defendants regarding the pilot training
session at California State Prison, Sacramento.

On October 6th and 7th 2009, Defendants conducted two additional training pilot
sessions at California State Prison, Solano. These training sessions were attended by
Defendants, my experts and monitors, and Plaintiffs' counsel.[2] Plaintiffs' counsel
provided additional written comments to me and Defendants regarding concerns of the
overall state of readiness of Defendants' plan as well as observations of the September
and October pilot training sessions

On October 16, 2009, Defendants submitted their "Custody and Mental Health
Staff Collaboration Training Plan." Defendants continued to receive guidance from my
experts and monitors in order to address concerns regarding the plan. Included in the
plan was a provision that stated "CDCR will continue to use quality improvement
techniques to gauge the effectiveness of the training, will address the training as
appropriate, and will confer with the Special Master on any substantial change." This
provision allows the Defendants to make changes and improvements to their plan as
circumstances warrant under my continued guidance.

On October 26, 2009 Defendants submitted an amended training plan
incorporating changes suggested by my experts and monitors. Together with my experts

---

[2]    Plaintiffs' counsel attended the October 6, 2009 training session but not the October
       7, 2009 training session.

Debbie Vorous, Esq.
Michael Bien, Esq.
November 30, 2009
Page -3-

and monitors, I have reviewed the Defendants' "Custody and Mental Health Staff Collaboration Training" plan dated October 26, 2009. The plan as written is approved as to both form and substance. However, there are two issues which I will continue to follow and monitor.

The first issue is the extension of the contract between CDCR and Dr. Haddad, to monitor the quality of the training and to develop indicators for the long-term effectiveness of the training. I am particularly concerned regarding the reported seven month timeframe required to obtain approval for this contract extension.

The second issue is the concern surrounding the "Train the Trainers" training conducted by the Defendants. These trainers are being trained on the material contained in the plan and will then be responsible for conducting the actual training seminars at the respective institutions. The Defendants held two "Training the Trainers" sessions, on November 3rd and 4th. Dr. Metzner has discussed with Sharon Aungst my specific concerns, which included, but were not limited to, the lack of materials (e.g., the lesson plan) being sent to the participants prior to the training as well as the participants not observing the complete training program themselves, with the exception of those who attended the pilot training at California State Prison, Sacramento. It has been agreed that there will be another "Train the Trainers" session designed to remedy the above issues conducted over one and half days.

Representatives from my office will observe the training and be available for consultation purposes prior to the actual training, if requested.

Sincerely,

*Matthew A. Lopes, Jr. (KFW)*

Matthew A. Lopes, Jr.

cc:    S. Aungst
       B. Rice, Esq.
       M. Stone, Esq.
       K. Tebrock, Esq.
       D. Specter, Esq.
       E. Galvan, Esq.
       J. Kahn, Esq.
       A. Whelan, Esq.
       S. Fama, Esq.
       I. Trujillo, Esq.
       Coleman Experts and Monitors