EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
SAMANTHA RAMSEY, State Bar No. 230862
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' REQUEST FOR TEMPORARY RELIEF RE: 256 INTERMEDIATE CARE FACILITY LOW-CUSTODY BEDS AT ATASCADERO STATE HOSPITAL** |

1

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| **ASH** | Atascadero State Hospital |
| **CCAT** | Coordinated Clinical Assessment Team |
| **CDCR** | California Department of Corrections and Rehabilitation |
| **CSH** | Coalinga State Hospital |
| **DMH** | Department of Mental Health |
| **HC-POP** | Health Care Placement Oversight Program |
| **ICCs** | Institutional Classification Committees |
| **ICF** | Intermediate Care Facility |
| **OAL** | Office of Administrative Law |
| **SVPP** | Salinas Valley Psychiatric Program |
| **VPP** | Vacaville Psychiatric Program |

2

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

## INTRODUCTION

On June 18, 2009, this Court ordered that the California Department of Mental Health (DMH) admit *Coleman* class members to the 256 Intermediate Care Facility (ICF) low-custody beds at Atascadero State Hospital (ASH) at a rate of not less than ten per week until all 256 low-custody beds are filled by *Coleman* class members, and that DMH fill those beds by October 31, 2009. (Docket No. 3613 ¶¶ 3.e, 8.) This Court extended that time to December 31, 2009. (Docket No. 3720.) Moreover, this Court ordered that DMH consider transferring non-*Coleman* class patients at ASH to Coalinga State Hospital (CSH). (Docket No. 3613 ¶ 8.)

DMH will not fill all 256 ICF low-custody beds at ASH by December 31, 2009—ASH's census as of December 18, 2009, totaled 198 inmate-patients. Despite DMH's transfer of non-*Coleman* class members to CSH and its expediting ASH admissions, there has not been enough need to date to fill the 256 ICF low-custody beds. Currently ongoing are the following efforts that will potentially effect bed needs. First, Defendants are working with the *Coleman* Special Master to complete the Court-ordered modified assessment project. (Docket No. 3613 ¶ 8.) Defendants have not processed all the referrals nor analyzed the referral data. Second, Defendants have implemented the new ICF Pilot Program and have reviewed the *Coleman* class members on the Salinas Valley Psychiatric Program (SVPP) Wait List for potential referral to ASH. (*See* Docket No. 3720 ¶ 2.) Defendants have not had adequate time to evaluate the Pilot Program nor process the referrals from the SVPP Wait List. Therefore, Defendants request temporary relief from the requirement that DMH fill all 256 ICF low-custody beds at ASH so that they, in consultation with the Special Master, can complete the assessment, evaluate the Pilot Program, and determine whether there remains any unmet need for ICF low-custody beds.

Defendants will update this Court no later than March 31, 2010, on ASH's census and on whether there remains any unmet need for ICF low-custody beds, and will, if appropriate, seek relief from the requirement that they maintain and fill the 256 ICF low-custody beds. This request will not place the *Coleman* class members' mental health at risk. The Special Master will continue to work with Defendants to complete this process. Defendants are not seeking relief from the Court's requirement that DMH expedite admissions to ASH.

3

# ARGUMENT

**I. THE NEED FOR LOW-CUSTODY BEDS HAS NOT BEEN GREAT ENOUGH TO DATE TO FILL ALL 256 INTERMEDIATE CARE FACILITY LOW-CUSTODY BEDS AT ATASCADERO STATE HOSPITAL.**

The need for all DMH CDCR or Penal Code section 2684 low-custody beds is below bed capacity. (Radavsky Decl. ¶ 5.) ASH's census as of December 18, 2009, was 198—58 below capacity—and DMH cannot fill the full complement of 256 ICF low-custody beds by December 31, 2009. (*Id.*) Likewise, the census for *Coleman* inmate-patients at CSH and the Vacaville Psychiatric Program (VPP) dorms at California Medical Facility are below capacity: CSH's census was 36—14 below capacity; and the VPP dorm's census was 52—32 below capacity. (*Id.*) Table 1, which shows all the DMH programs available for male CDCR inmate-patients who are referred to DMH, reflects this circumstance:

**Table 1 – DMH Inpatient Mental Health Care Programs**

| Program | Level of Care | Number of Beds | 12/18/09 Census | 12/18/09 Avail. Beds |
|---|---|---|---|---|
| Vacaville Psychiatric Program | Acute Psychiatric Care | 182 | 174[1] | 8 |
| Vacaville Psychiatric Program | ICF High Custody | 30 | 30 | 0 |
| Salinas Valley Psychiatric Program | ICF High Custody Cells | 212 | 212[2] | 0 |
| Salinas Valley Psychiatric Program | ICF High Custody Dorms | 32 | 26 | 6 |
| Vacaville Psychiatric Program | ICF Low Custody Dorms | 84 | 52 | 32 |
| Atascadero State Hospital | ICF Low Custody Dorms | 256 | 198 | 58 |
| Coalinga State Hospital | ICF Low Custody Dorms | 50 | 36 | 14 |

(*Id.*)

DMH complied with this Court's June 18, 2009 Order that it consider transferring non *Coleman* inmate-patients at ASH to CSH. DMH activated a new 50-bed unit at CSH and

---

[1] This number reflects 15 beds that are on hold for inmate-patients scheduled for admission. (Radavsky Decl. ¶ 5.)

[2] This number reflects 12 beds that are on hold for inmate-patients scheduled for admission. (Radavsky Decl. ¶ 5.)

4

admitted non-*Coleman* patients transferred from ASH. (Radavsky Decl. ¶ 6.) This unit was operating at full capacity on October 27, 2009. (*Id.*)

In addition, DMH expedited admissions to ASH. Between June 22, 2009 and December 18, 2009—a 26 week period—DMH admitted 274 CDCR inmate-patients to ASH, for an average admission rate of over 10 per week.[3] (Radavsky Decl. ¶ 7, Ex. 1, ASH Census from 6/22/09 to 12/18/09.) In fact, for several weeks, ASH admitted up to 14 CDCR inmate-patients a week. (*Id.* ¶ 8.) Nonetheless, DMH has not been able to increase ASH's census much beyond the 200 mark. (*Id.*) One reason is because for every 10 admissions, there are approximately 7 discharges. (*Id.*) Another reason is because the extension of the modified needs assessment project to all 28 non-desert institutions has not generated the same number of referrals that the assessment generated during its early phase. (*Id.*) For instance, the ASH census ending the week of June 26, 2009, was 115 inmate-patients while the census ending the week of August 28, 2009, was 176 inmate-patients—an increase of 61. (*Id.*) By comparison, the ASH census ending the week of October 16, 2009, was 197 inmate-patients while the census ending the week of December 18, 2009 was 198 inmate-patients—an increase of 1. (*Id.*)

Moreover, ASH is not suitable for ICF high-custody inmate-patients because it does not provide the necessary safety and security for inmate-patients who require single-cell and/or locked housing. (Radavsky Decl. ¶ 9.) ASH is a self-contained inpatient psychiatric hospital situated within a fenced security perimeter. (*Id.*) The perimeter does not include an electrified fence or armed guard towers that are critical safety components of CDCR Level IV institutions that house high-custody inmates. (*Id.*) The hospital's interior security is provided by skilled clinical staff with limited assistance from state hospital police officers whose primary responsibilities are to maintain the safety of the hospital's perimeter. (*Id.*) In addition, ASH's housing units are configured as dormitory settings (2-man dorms and 4-man dorms) in unlocked

---

[3] Although during this time period, DMH also admitted to ASH inmate-patients on the ASH wait list and/or referred through the standard CDCR referral process, the majority of ASH admissions were generated through the assessment. (Radavsky Decl. ¶ 7.)

5

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

rooms within locked units. (*Id.*)  Consequently, ASH does not provide the necessary safety and security for high-custody inmates who require a more secure environment. (*Id.*)

Despite DMH's transfer of non-*Coleman* patients to CSH and its admitting an average of over 10 CDCR inmate-patients per week to ASH, the 256 ICF low-custody beds at ASH are not full.  This Court should therefore grant Defendants' request for temporary relief from filling the 256 ICF low-custody beds so that Defendants, in consultation with the Special Master and his experts, can determine whether there remains any unmet need for low-custody beds and, if appropriate, seek relief from this Court's orders concerning those beds.   For the reasons discussed below, three months is a reasonable amount of time in which to complete this process.

## II. EVALUATION OF ANY REMAINING UNMET NEED REQUIRES THAT DEFENDANTS COMPLETE THE ASSESSMENT PROJECT AND EVALUATE THE IMPACT FROM THE ICF PILOT PROGRAM.

### A. The Modified Needs Assessment Project.

On March 31, 2009, this Court ordered that CDCR and DMH clinicians work with the Special Master and his experts to conduct a modified assessment to determine whether there are unmet needs for DMH inpatient care among members of the *Coleman* class. (Docket No. 3556 ¶ 7.)  On June 18, 2009, this Court ordered the assessment expanded to all non-desert CDCR institutions, and ordered it completed by December 31, 2009.  (Docket No. 3613 ¶ 10.)

CDCR and DMH clinicians worked with the Special Master and his experts to develop and implement a modified needs assessment plan that included four phases (Phase 1, 2, 3, and 4) and all 28 non-desert institutions.  (McGill Decl. ¶ 4.)  Phases 1 and 2 of the assessment involved 12 institutions:  Phase 1 began on April 15, 2009, and Phase 2 ended on May 21, 2009.  (*Id.* ¶ 5.) During Phase 1, CDCR identified and listed the inmate-patients at the institutions to be assessed for a higher level of care referral, which list approximated 1,470 cases.  (*Id.*)  During Phase 2, designated referral teams assessed the list of inmate-patients for determination of DMH referral. (*Id.* ¶ 6.)

Defendants designed Phase 3 of the assessment in order to complete review of the cases that remained from Phase 2.  (McGill Decl. ¶ 7.)  In addition, CDCR and DMH developed a

6

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

training module on access to higher level of care that they presented to institutional staff at the 12 institutions. (*Id.*) Phase 3 began on July 7, 2009, and ended on October 15, 2009.[4] (*Id.*) Phase 4 of the assessment involved review of the remaining 16 non-desert institutions (13 male institutions and 3 female institutions), and included training and team assessments. (*Id.* ¶ 8.) The last Phase 4 institutional visit occurred on December 29, 2009. (*Id.*)

As noted, CDCR identified and listed approximately 1,470 inmate-patients during Phase 1 to be assessed for higher level of care referral. CDCR and DMH assessment teams reviewed the approximate 1,470 cases over the course of Phases 2–3. (McGill Decl. ¶ 9.) From those 1,470 cases, the teams recommended that approximately 720 cases be referred to a higher level of care. (*Id.*) In addition, the training that occurred during Phase 3 resulted in approximately 125 cases being recommended for referral. (*Id.*) Some cases, however, are still pending from Phase 3. (*Id.*) And because Defendants just completed Phase 4, CDCR has not received back nor processed all the recommended referrals. (*Id.*) The preliminary figures through December 10, 2009, however, show that 13 of the 16 institutions assessed during Phase 4 recommended approximately 130 referrals to a higher level of care. (*Id.*) Thus, although Defendants have completed the actual assessment at the 28 non-desert institutions and have recommended nearly 1,000 cases for review, CDCR has not processed all of those recommended referrals. (*Id.*) Nor have Defendants completed reconciling the data from the nearly 1,000 cases that were recommended for referral as noted above, but that are still pending receipt from CDCR institutions, were paroled, won their Vitek hearings, were rescinded by CDCR, rescinded through the Coordinated Clinical Assessment Team (CCAT) process, deferred for special determinations, or are uncertain.[5] (*Id.* ¶ 10.) CDCR expects it will take approximately two months to receive back and process the remaining recommendations for referral and another month to evaluate the data and prepare a final report. (*Id.* ¶ 11.)

---

[4] Because of a change in the Phase 3 schedule, the parties rescheduled two Phase 2 institutions to December 2009. (McGill Decl. ¶ 7.)

[5] These numbers are pending final reconciliation with the Special Master and his experts. (McGill Decl. ¶ 10.) Reconciliation meetings are scheduled for January 27 and 28, 2010. (*Id.*)

7

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

Because CDCR is still receiving back and processing recommended referrals, DMH has not had an opportunity to review and consider for admission all of the potentially eligible inmate-patients identified for referral through the assessment. (Radavsky Decl. ¶ 10.) As of December 15, 2009, DMH had received 688 referrals from the assessment. (*Id.*) From those 688 referrals, DMH admitted 294 inmate-patients to its various DMH programs for CDCR male inmate-patients, placed 312 inmate-patients on Wait Lists, and did not admit nor waitlist 82 inmate-patients. (*Id.*) DMH did not admit nor waitlist the 82 inmate-patients for various reasons including that CDCR rescinded the referrals and that the inmate-patients won their Vitek hearings, paroled, were rejected by DMH, and/or determined to be mentally disordered offenders. (*Id.*)

Table 2 shows to which DMH Program the 294 inmate-patients were admitted as well as to which DMH Program the 312 inmate-patients were wait listed:

**Table 2 – DMH Program Admissions and Wait Listed as of December 15, 2009**

| DMH Program | Admissions | Wait Listed |
|---|---|---|
| VPP Acute | 58 | 22[6] |
| SVPP ICF High Custody[7] | 45 | 283 |
| VPP ICF Low Custody Dorms | 22 | 7 |
| ASH | 135 | 0 |
| CSH | 34 | 0 |
| **Total:** | **294** | **312** |

(Radavsky Decl. ¶ 11.)

Until the assessment is complete and the data evaluated, Defendants cannot determine whether there remains any unmet need for ICF low-custody beds. This Court should therefore

---

[6] This number reflects 15 beds that are on hold for inmate-patients scheduled for admission. (Radavsky Decl. ¶ 11.)

[7] The Salinas Valley Psychiatric Program (SVPP) at Salinas Valley State Prison acts as the clearinghouse for all high-custody ICF referrals. (Radavsky Decl. ¶ 11.)

8

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

grant Defendants' request for temporary relief until Defendants, in consultation with the Special Master and his experts, complete this process. In the meantime, DMH remains committed to admit *Coleman* class members at a rate of not less than ten per week in order to fill the remaining ICF low-custody beds at ASH. (Radavsky Decl. ¶ 13.)

**B.  The Intermediate Care Facility Pilot Program.**

On September 22, 2009, CDCR submitted to the California Office of Administrative Law (OAL) a Pilot Program for increasing referrals of inmate-patients who are identified as needing placement at a DMH ICF program. (Johnson Decl. ¶ 4.) The OAL officially approved the Pilot Program on October 23, 2009. (*Id.*) The Pilot Program is effective October 23, 2009 through October 23, 2011. (*Id.*) Two aspects of the OAL's approval of the Pilot Program affect the determination of any remaining unmet need for low-custody beds at ASH and in the VPP dorms.

The first aspect is that the custody criteria and guidelines in the Pilot Program will likely increase future admissions to ASH and the VPP dorms. (Johnson Decl. ¶ 5.) The reason is because the criteria and guidelines in the Pilot Program will now allow CDCR's Health Care Placement Oversight Program (HC-POP) to refer to ASH and the VPP dorms, on a case-by-case evaluation, some CDCR inmate-patients whose custody factors would previously have prevented their referral to an ICF low-custody bed.[8] (*Id.*) On November 4, 2009, HC-POP directed impacted field custody and classification staff to immediately begin using these new screening criteria for assessing all future referrals to DMH ICF levels of care at ASH and the VPP dorms. (*Id.*) HC-POP, however, needs to have the Pilot Program in effect for at least several months before it can evaluate the Program's impact on referrals to ASH and the VPP dorms. (*Id.*)

The second aspect is that the approval allowed HC-POP to go back and reconsider for potential referral to ASH and/or the VPP dorms those inmate-patients on the SVPP Wait List as of November 4, 2009—the date that HC-POP directed field staff to start using the new Pilot Program custody criteria. (Johnson Decl. ¶ 6.) HC-POP's review of these inmate-patients

---

[8] Under the ICF Pilot Program, HC-POP will review, on a case-by-case evaluation, CDCR inmate-patients designated as Maximum Custody (based on non-adverse reasons), Close B custody, Sensitive Needs Yard, required single celling, and Level IV placement scores. (Johnson Decl. ¶ 5.)

9

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

consisted of two phases.[9] The first phase involved a review of 420 cases on the SVPP Wait List as of September 2, 2009. (*Id.* ¶ 7.) First, HC-POP looked at data from the Distributed Data Processing System and the Offender Based Information System. (*Id.*) This review resulted in 147 potentially eligible inmate-patient referrals. (*Id.*) Second, HC-POP reviewed those cases taking into account the old and new case factors, and recommended 60 cases for referral. (*Id.*)

Of the 60 cases that HC-POP recommended for referral during the first phase of the review, the Institutional Classification Committees (ICCs) at the various institutions housing those inmate-patients informed HC-POP that they concurred with referring 33 to ASH and 12 to the VPP dorms. (Johnson Decl. ¶ 8.) With respect to the remaining 15 recommended referrals, 2 were clinically rescinded, 1 was already in a DMH ICF program, 7 had paroled, and 5 were retained on the SVPP Wait List. (*Id.*)

The second phase of the review involved a review of 149 inmate-patients added to the SVPP Wait List between September 3, 2009 and November 4, 2009. (Johnson Decl. ¶ 9.) HC-POP's initial review resulted in 45 potentially eligible inmate-patient referrals. (*Id.*) From this number, HC-POP recommended 12 cases for referral. (*Id.*) Of these 12 cases, HC-POP referred 2 cases to ASH and 2 cases to the VPP dorms. (*Id.* ¶ 10) The remaining 8 cases are pending review by the ICCs. (*Id.*) CDCR expects that this review will be completed by January 14, 2010. (*Id.*)

///
///
///

---

[9] HC-POP reviewed all of the inmate-patients on the SVPP Wait List, not just those added to the Wait List as part of the modified assessment project. (Johnson Decl. ¶ 6.)

10

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

Table 3 below summarizes CDCR's review of the SVPP Wait List:

**Table 3 – Summary of CDCR's Review of SVPP Wait List**

|  | SVPP Wait List as of 9/2/09 | SVPP Wait List as of 11/4/09 |
|---|---|---|
| Total number of cases on Wait List | 420 | 150 |
| Cases potentially eligible for case-by-case review | 147 | 45 |
| **Recommended by HC-POP for referral to DMH higher level of care after case-by-case evaluation** | **60** | **12** |
| **Disposition of HC-POP's recommended referrals to DMH higher level of care** | **60** | **12** |
| *Referred to ASH by ICCs* | 33 | 2 [pending] |
| *Referred to VPP Dorms by ICCs* | 12 | 6 [pending] |
| *Referred directly to ASH by HC-POP* | N/A | 2 |
| *Referred directly to VPP Dorms by HC-POP* | N/A | 2 |
| *Clinically rescinded* | 2 | |
| *Already transferred to ICF level of care* | 1 | |
| *Paroled* | 7 | |
| *Returned to SVPP Wait List* | 5 | |

DMH has received the 33 referrals to ASH generated from the SVPP Wait List as of September 2, 2009. (Radavsky Decl. ¶ 12.) ASH, however, has not yet admitted those inmate-patients—3 are scheduled for admission and 30 are pending clinical updates from the various institutions that house them. (*Id.*) CDCR expects to provide those updates by January 7, 2010. (Johnson Decl. ¶ 11.)

Until the Defendants have an opportunity to evaluate the impact from the ICF Pilot Program and complete the referrals from the SVPP Wait List, they cannot determine whether

11

1 there remains any unmet need for ICF low-custody beds. This Court should therefore grant
2 Defendants' request for temporary relief until Defendants, in consultation with the Special Master
3 and his experts, complete this process as well.

### III. DEFENDANTS' REQUEST DOES NOT PLACE THE *COLEMAN* PATIENTS' MENTAL HEALTH AT RISK.

Defendants' request does not place the *Coleman* inmate-patients' mental health at risk. All three DMH low-custody programs for *Coleman* inmate-patients remain below bed capacity, and DMH continues to admit inmate-patients into those programs. Nor will granting temporary relief harm the *Coleman* inmate-patients because DMH remains committed to expedite referrals in order to fill the remaining ICF low-custody beds at ASH. Moreover, the Special Master has agreed to continue working with Defendants; thus, Defendants, in consultation with the Special Master and his experts, will have an opportunity to complete the assessment, evaluate the impact from the ICF Pilot Program, and determine whether there remains any unmet need for low-custody beds. (Vorous Decl. ¶ 2.)[10] Because this benefits the *Coleman* inmate-patients, this Court should grant Defendants' request.

///
///
///

---

[10] On December 30, 2009, the Attorney General's Office contacted Plaintiffs' counsel to ascertain whether they agreed to Defendants' request for temporary relief. (Vorous Decl. ¶ 3.) Plaintiffs have not agreed to the request. (*Id.*)

12

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)

# **CONCLUSION**

Because good cause exists to grant Defendants' request, Defendants respectfully request that this Court grant them temporary relief from the requirement that they fill all 256 ICF low-custody beds at ASH. Defendants will update this Court no later than March 31, 2010, on ASH's census and whether there remains any unmet need for low custody beds, and will, if appropriate, seek relief from this Court's orders that they maintain and fill the 256 ICF low-custody beds at ASH.

Dated: December 31, 2009

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General

/s/ *DEBBIE J. VOROUS*

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
30925498

13

Defs.' Req. for Temp. Relief Re: 256 ICF Low-Custody Beds at Atascadero State Hospital
(2:90-cv-00520 LKK JFM PC)