PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　　Defendants. | Case No. Civ 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

I.  DEFENDANTS' FILING ESTABLISHES AN INCREASED DEMAND FOR ICF BEDS AND NOT A DECREASED DEMAND AS THEY WOULD HAVE THIS COURT BELIEVE ............................................................................... 3

II. DEFENDANTS SHOULD EXPEDITE THEIR REVIEW OF THE UNMET NEED DATA ................................................................................................................ 5

III. DEFENDANTS SHOULD EXPEDITE THEIR REVIEW OF ASH-QUALIFIED PATIENTS FROM THE SVPP WAITLIST AND SHOULD TRANSFER THOSE PATIENTS AS SOON AS POSSIBLE .......................................... 6

IV. THE *COLEMAN* CLASS HAS SUFFERED HARM, AND IS BEING PUT IN SERIOUS RISK OF FUTURE HARM BY DEFENDANTS' FAILURES TO TIMELY TRANSFER PATIENTS TO INPATIENT BEDS ........................................... 8

CONCLUSION ...................................................................................................................... 9

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| ASH | Atascadero State Hospital |
| ASP | Avenal State Prison |
| CCI | California Correctional Institution |
| CDCR | California Department of Corrections and Rehabilitation |
| CIM | California Institution for Men |
| CMC | California Men's Colony |
| CMF | California Medical Facility |
| COR | California State Prison - Corcoran |
| CSH | Coalinga State Hospital |
| CSP-SAC | California State Prison - Sacramento |
| DMH | Department of Mental Health |
| DVI | Deuel Vocational Institution |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| MCSP | Mule Creek State Prison |
| RJD | R.J. Donovan State Prison |
| SATF | California Substance Abuse Treatment Facility |
| SCC | Sierra Conservation Center |
| SOL | California State Prison - Solano |
| SQ | San Quentin State Prison |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP | Salinas Valley State Prison |
| WSP | Wasco State Prison |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

# INTRODUCTION

Defendants' Request for Temporary Relief Regarding 256 Intermediate Care Facility Low-Custody Beds at Atascadero State Hospital should be denied. Defendants are in violation of the orders of this Court to provide prompt and appropriate access to inpatient psychiatric hospitalization to prisoners with serious mental illness who need this high level of care.

On June 28, 2007, two and a half years ago, this Court ordered defendants to submit a plan to make "available the full complement of 231 intermediate[1] care beds for the *Coleman* class members referred to ASH for treatment." Docket 2301 at 4. At that time, ASH was experiencing dire staffing shortages that seriously hindered admissions. Two years later and still faced with chronically underused beds at ASH, this Court issued an order on June 18, 2009, requiring that defendants fill all 256 beds at ASH by October 31, 2009. Docket 3613 at 4. At defendants' request, that deadline was moved to December 31, 2009, to permit defendants time to implement a recently approved "pilot program" which "revised the custody exclusionary criteria utilized for CDCR referrals to Atascadero State Hospital, and expanded the category of inmates that can be considered for admission." Docket 3720 at 2. The ASH census was then at 200. Docket 3760-4 at Exhibit 1.

On December 31, 2009, the extended deadline for compliance with the Order, defendants reported that the ASH census had *decreased* to 198—below the level reached when defendants obtained the extension. Despite this Court's Order to admit no fewer than ten patients per week to ASH (Docket 3613 at 4), defendants reached that level only three times in the seven weeks since they obtained the extension. Docket 3760-4 at Exhibit 1. In the last two weeks of November, defendants admitted a total of only four patients to ASH beds. Docket 3760-4 at Exhibit 1.

It is undisputed that many *Coleman* class members are unable to access every level of mental healthcare required for their illnesses, from Enhanced Outpatient Program placements to inpatient acute psychiatric care, rendering every available mental health bed a precious commodity. Defendants request for relief from this Court's order to fill all 256 Atascadero State Hospital (ASH) Intermediate Care Facility (ICF) beds is a major setback in remedying this shortage.

---

[1] At the time this Court issued the 2007 order, 231 beds were reserved for ICF care at ASH and another 25 beds were used for acute care.

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

Contrary to the claims in their filing, demand for ICF beds has not decreased in recent months. Indeed, through the Modified Needs Assessment, defendants have identified nearly 1,000[2] patients who need higher levels of care, but have not been referred for that care. Many other patients who need an ASH placement and who do not pose security problems have been lingering on the SVPP waiting list. Rather, defendants need this relief only because they have not expedited admissions from the Modified Needs Assessment, have not completed the appropriate paperwork and review to actually transfer patients to inpatient beds, and have not, as of their filing, transferred *even a single patient* to an ASH ICF bed from their review of the SVPP waiting list.

Defendants already received a two-month extension to comply with this Court's order to fill the ASH beds. Plaintiffs oppose defendants' request for a second, three-month extension. Instead, defendants should expedite their review and transfer of patients into ASH beds from the Modified Needs Assessment and from the SVPP waiting list. The Court should order defendants to physically transfer all ASH-qualified patients identified during the Modified Assessment and the SVPP waiting list review to ASH beds no later than January 30, 2010. Because defendants admit that 10 patient admissions per week are insufficient to offset discharges from ASH, the Court should also order that defendants admit no fewer than 20 patients per week into the ASH beds moving forward.

Plaintiffs also request an order from the Court requiring defendants to file a detailed report on the Modified Needs Assessment by the end of February 2010. The Court should specify that the report include a full accounting of all patients referred to higher levels of care during the Assessment Process, the levels of care to which the patients were referred, and a case-by-case explanation of whether and when each patient was physically placed in the appropriate bed. For patients who have not physically moved to an appropriate placement, defendants should explain why the transfers have not occurred and should detail any ongoing barriers to the transfers.

Finally, plaintiffs request an order requiring defendants to file a report, no later than February

---

[2] Defendants clarify that 720 patients were referred to higher levels of care during Phases 1 and 2 of the Modified Needs Assessment, 125 were referred during Phase 3 and approximately 130, from preliminary data, were recommended during Phase 4. The Phase 4 estimate, however, excludes referrals from three prisons. Docket 3760 at 7.

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

2010, detailing the efficacy of their Pilot program to remove custodial barriers preventing access to intermediate care facility beds (ICF). The report should include detailed information about all 192 patients CDCR's Health Care Placement Oversight Program (HC-POP) deemed potentially eligible for ASH placement from the SVPP waiting list during phase one and two of the review, including the name, CDC number, custody level, custody points, and any other information relevant to their placement at ASH. For each patient, defendants should detail when the referral and transfer occurred. For each patient who was rejected or otherwise excluded from ASH, defendants should detail the custodial, medical, clinical, or other reason for the exclusion. For every patient who has been referred to ASH but has not reached a bed, defendants should detail the patient's current status and the reason or reasons for the delay. The analysis of this information will shed light on the various obstacles to inpatient psychiatric hospitalization that cause unnecessary and avoidable pain and suffering to the plaintiff class.

Moving forward, plaintiffs request an order requiring that defendants complete the referral and transfer process for every patient, including all paperwork and transportation to an ICF bed, within 15 calendar days from the initial referral. There is simply no excuse for the dangerous delays that have become routine and acceptable in today's system.

Before the Modified Assessment and SVPP waiting list review, defendants contended that DMH hospital beds were ready and available to provide inpatient psychiatric hospitalization for class members, but that they could not find patients to fill the beds. Defendants have now identified those patients, but have lagged in processing and transferring patients to the hospital beds critical to their mental health. This constitutes deliberate indifference and the Court should reject these practices.

**I.   Defendants' Filing Establishes an Increased Demand for ICF Beds and Not a Decreased Demand as they Would Have This Court Believe**

Defendants assertion that there "has not been enough need to date to fill the 256 ICF low-custody beds" at ASH belies all available data, including defendants' own monthly reports. Docket 3760 at 3. As an initial matter, the Modified Needs Assessment has generated nearly 1,000 patients in need of higher levels of care, including hundreds who need ICF care. Docket 3760 at 7 (975 patients identified during Phases I through IV, not including patients from three prisons). Many of those patients are eligible for ASH placement, but defendants have failed to timely process the referrals and transfers.

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

Even without those patients, there were 200 *Coleman* class members housed in ICF beds at ASH in October 2009, with another 5 scheduled for admission and an additional 6 awaiting scheduling for admission. Whelan Decl. at ¶ 2. The story was much the same in November.[3] Defendants' November data shows that 196 patients were housed in ASH ICF beds, with another 18 awaiting scheduling. *Id.* at ¶ 3. These numbers will only increase when defendants fully process referrals from the Modified Needs Assessment.

In addition to the patients mentioned above, defendants determined that another 45 patients from the SVPP waiting list should transfer to ASH ICF beds. Docket 3760 at 10-11. Defendants admit, however, that they have failed to transfer even 1 of those 45 patients to ASH for psychiatric hospitalization. Three from Phase I are pending admission while 30 others are "pending clinical updates from the various institutions that house them." *Id.* at 11. This is outrageous—many of these patients have likely been lingering on the SVPP list for many months *and have already been accepted for DMH care*. There is no reason "clinical updates" should delay transfers—defendants can process the updates after the patients move to ASH beds. Of the 12 patients from Phase II, defendants have referred only 2, with the remaining 8 "pending review by the ICCs." *Id.* at 10. Defendants fail to state when even 1 of the 45 patients will actually receive inpatient care.

From these three categories, the Modified Assessment, the SVPP waiting list review, and the ongoing weekly referrals from prisons throughout the system, there are certainly hundreds of patients who qualify for ASH placement at any moment in time. The problem is not, as defendants suggest, that these patients do not exist, but rather that defendants have not completed the necessary reviews to process their referrals and transfers to ASH. Indeed, defendants' record of processing even the typical monthly referrals is extremely slow. In October 2009, the male prisons referred 68 patients to the ASH/CSH ICF beds, yet only 10 made it to a bed before the month was over. Whelan Decl. at ¶ 5. The prisons referred another 22 patients to those beds in November, yet DMH admitted only 1 of those 22 patients before the month was over. *Id.* at ¶ 6. Far from expediting admissions to ASH, defendants were able to place only 14.7% and 4.5% respectively of referred patients in a bed in the same month the

---

[3] Plaintiffs' attorneys have not yet received December 2009 data.

4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

referrals occurred, despite defendants' claims of empty beds.

This is not a problem of decreased demand—it is a crisis that stems from defendants' chronic foot-dragging and delay. As usual, defendants have failed to prioritize the *Coleman* class' access to inpatient care. The solution is not to award this delay, but rather to set firm deadlines for defendants to complete the Modified Needs Assessment and the SVPP waiting list review such that all patients will be physically transferred to ASH by January 30, 2010.

## II. Defendants Should Expedite Their Review of the Unmet Need Data

In response to the Navigant consultant's concern that there may be unidentified need for inpatient beds, this Court ordered defendants to complete a Modified Needs Assessment on March 31, 2009. Docket 3556 at 3. The Court specifically ordered defendants, in connection with the Modified Assessment, to "refer on an expedited basis any inmates identified during" the Assessment. *Id.* at 6. On June 18, 2009, the Court expanded the Assessment to all non-desert institutions and gave defendants until December 31, 2009 to complete it. Docket 3613 at 4. The June 18, 2009 Order also mandated that DMH "admit Coleman class members to [the ASH beds] at a rate of not less than ten per week until all 256 beds are filled by *Coleman* class members not later than October 31, 2009." *Id*.

While defendants have completed a part of the Assessment, they have not completed the critical process of referring and actually transferring the patients to higher levels of care. Nor have defendants expedited referrals and admissions of class members into ASH in accordance with this Court's orders. First, defendants treat the 10 admissions per week mandate as a cap rather than a floor. Defendants have known for months that they have to admit many more than 10 patients per week in order to offset the weekly average of 7 discharges. Despite this, defendants never exceeded more than 14 weekly admissions during the past six months. Docket 3760-4 at Exhibit 1 (Radavsky Decl.). Worse, defendants failed to admit even the 10 patients during 9 of the past 26 months, or 35% of the time.[4] *Id.* In the last two weeks of November alone, defendants admitted a total of only four patients to ASH beds. Docket 3760-4 at Exhibit 1.

Second, defendants' processing of referrals and admissions generated during the Modified

---

[4] It appears from defendants' data that each time the population approached 210, admissions slowed and/or discharges increased to bring the population back down. Docket 3760-4 at Exhibit 1.

5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

Assessment have been extremely slow. Defendants admit that while Phase 3 of the Modified Assessment was completed on October 15, 2009, more than two months ago, "[s]ome [of the 125] cases…are still pending" from that phase. Docket 3760 at 7. In other words, defendants have not even fully reviewed, referred or transferred cases from Phase 3, much less Phase 4. Actual admissions have also been slow. Of the 688 patients referred to DMH as of December 15, 2009, only 294 (42.7%) have actually made it to inpatient beds. *Id.* at 8. Defendants have placed another 283 patients on the Salinas Valley Psychiatric Program's (SVPP) waiting list, including many patients who are likely eligible for placement at ASH or Coalinga State Hospital (CSH). Docket 3760 at 8, Table 2. Defendants did this because they are using the SVPP waiting list as "the clearinghouse for all high-custody ICF referrals." Docket 3760 at 8, fn. 8; Docket 3760-4 at 4-5 (Radavsky Decl.). This practice flies in the face of the pilot program intended to move patients *off* the SVPP waiting list into ASH beds.

Defendants should stop using the SVPP waiting list as a default waitlist for patients in need of ICF care and should expedite the admission of qualifying patients into ASH ICF beds. Moreover, defendants should be ordered to admit all ASH-qualified patients referred to DMH through the Modified Assessment process as soon as possible, but no later than January 30, 2010.

### III. Defendants Should Expedite Their Review of ASH-Qualified Patients from the SVPP Waitlist and Should Transfer Those Patients as Soon as Possible

Based on concerns that many ASH-qualified patients are languishing on the SVPP waiting list due to unreasonable custodial restrictions, defendants proposed a Pilot Program intended to remove those barriers. Defendants' efforts thus far have failed to overcome the artificial and inappropriate custodial barriers to inpatient psychiatric hospitalization that the Pilot Project was designed to overcome. Rather, defendants have "accepted" hundreds of patients for DMH hospitalization, but done nothing more than place them on a waiting list with hundreds of other patients, all of whom have no real prospect to access care for many months. This is unacceptable. By October and November of 2009, for instance, the SVPP waiting list skyrocketed to 619 and 608 patients respectively. Whelan Decl. at ¶¶ 2-3.

Defendants' filing describes the first two Phases of HC-POP's review of patients on the SVPP waiting list. Of the 569 patients defendants evaluated, HC-POP concluded only 45 (7.9% of inmates on the list) have any chance of reaching ASH even with the new Pilot Program in place. Docket 3760 at 10

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

(33 from phase one and 12 from phase two). Even as to those 45 patients, however, defendants had failed to transfer a single one to ASH as of the date of defendants' filing. Docket 3760 at 10-11 (three patients "scheduled" for admission, thirty pending "clinical updates," eight pending review by the ICCs, and two "referred" to ASH).

The fact that defendants have failed to actually transfer even a single patient to ASH in the past two months of the Pilot Program review establishes the need for a tighter timeframe to do so, not an extension of three more months. Accordingly, defendants should be ordered to process and admit all 45 patients to ASH beds no later than January 30, 2010.

The paltry referral of only 45 patients, however, also raises a larger question regarding the overall efficacy of the Pilot Project. Plaintiffs therefore request an order requiring defendants to file a report, no later than February 2010, detailing the efficacy of the program, including detailed information about all 192 patients CDCR's Health Care Placement Oversight Program (HC-POP) deemed potentially eligible for ASH placement during Phases one and two of the review. For each patient, defendants should explain whether he was referred to an ASH bed, when the referral occurred and when the patient actually transferred to the program. For patients ASH or CDCR rejected, the report should detail the custodial, medical, clinical, or other reason(s) for the rejections.[5] As to the 283 patients defendants placed on the SVPP waiting list through the Modified Needs Assessment process (Docket 3760 at 8, Table 2), defendants should be ordered to transfer each ASH-eligible patient no later than January 30, 2010. Defendants should also be barred from using the SVPP waiting list as "the clearinghouse for all high-custody ICF referrals." Docket 3760 at 8, fn. 8; Docket 3760-4 at 4-5 (Radavsky Decl.). This practice flies in the face of the pilot program intended to move patients *off* the SVPP waiting list into ASH beds.

---

[5] If defendants are incapable of making the Pilot Program work, plaintiffs will move this Court for more specific orders regarding access to ASH. DMH asserts that it has 118 empty hospital beds supposedly "available" to the *Coleman* class right now. Docket 3760 at 4, Table 1 (showing "Avail. Beds" as of 12/18/09). If the Pilot Program and defendants' other efforts fail to fill those and other beds, plaintiffs will move for an order requiring defendants to promptly transfer patients from the SVPP waiting list to the empty beds with whatever additional security defendants deem necessary. This process already exists for prisoners with serious medical conditions and there is no reason it should not apply to prisoners with serious mental health issues as well. If a prisoner requires medical care at an outside hospital, CDCR transports the prisoner to the hospital and provides whatever security is necessary. The same arrangements can be made at ASH, CMF, Coalinga, or other DMH hospitals.

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

### IV. The *Coleman* Class Has Suffered Harm, and Is Being Put in Serious Risk of Future Harm by Defendants' Failures to Timely Transfer Patients to Inpatient Beds

Defendants' half-hearted claim that their request will not harm the *Coleman* class is unsupported by the facts. This request pertains to prisoners who need inpatient, psychiatric hospitalization. It is unconscionable that defendants have not completed the review and admission of ASH-qualified patients from the SVPP waiting list and the Modified Assessment, many of whom have been languishing in improper placements for months or even years. Defendants also admit they rescinded some referrals to inpatient care at ASH because patients paroled. Docket 3760 at 8 (some portion of 82 patients identified during the Modified Assessment paroled before receiving inpatient care); at 10 (7 ASH-qualified patients from the SVPP wait list paroled prior to receiving inpatient care). It is inherently harmful to release patients in need of inpatient mental health care to their communities without stabilizing them and without ensuring appropriate medication compliance, particularly if those patients have been lingering on waiting lists for many months. This practice also creates a cycle of readmission to prisons, thereby increasing already back-logged waiting lists. *Coleman v. Schwarzenegger*, Nos. Civ 90-520 LKK/JFM, Civ 01-1551 TEH, 2009 WL 2430820, at *37 (N.D. and E.D. Cal. Aug. 4, 2009) (inmates who parole before receiving inpatient care fall into a "vicious cycle, as they decompensate in the community and quickly return"). Since defendants' prior practice of denying inpatient care to prisoners with imminent parole dates has presumably ceased in accordance with this Court's order (Docket 2930 at 5, August 8, 2008 Order), defendants must have been unable to place the paroling inmates in hospital beds due to backlogs or other delays.

Because class members who need inpatient, psychiatric services are often severely decompensated or suffering from acute suicidality, the risks of delayed access are life-threatening. On December 24, 2009, the Special Master requested various orders from this Court regarding defendants' suicide prevention efforts. Docket 3758. Many of the requested orders are intuitive and unquestionably involve the most basic efforts to ensure appropriate mental health care. The Special Master requested, for instance, that defendants identify patients' "known and/or suspected medical problems and medications within…mental health treatment plans, rather than merely allude to them by reference to other records." *Id.* at 2. The Special Master also asked for an order requiring defendants to "accord

8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

priority to access to inpatient care for CDCR inmates at DMH facilities, particularly for Level III and Level IV inmates." *Id.* These are basic things defendants should do on a daily basis in order to protect the lives of *Coleman* class members, yet defendants objected to the Special Master's requests and have asked this Court to reject them. *See* Docket 3762. These objections provide additional context for defendants' current request. In the absence of specific orders, defendants have repeatedly demonstrated that they simply cannot be trusted to provide timely access to inpatient beds.

## CONCLUSION

Plaintiffs oppose any attempt by defendants to decrease the pool of life-saving mental health placements for the *Coleman* class. Defendants' request demonstrates the chronic foot-dragging and delays that have impeded access to adequate mental health care for the past 20 plus years. It is unreasonable, for instance, that only 45 patients of the 569 defendants reviewed on the SVPP waiting list have any chance of reaching ASH (Docket 3760 at 10) and that defendants have failed to transfer ASH-qualified patients from the Modified Assessment and the SVPP waiting list review.

Defendants have identified the work they need to do to fill the ASH beds—rather than add another 3 months to the 2 month extension defendants already obtained, this Court should order defendants to admit, by January 30, 2010, all ASH-eligible patients identified during the Modified Needs Assessment and the SVPP waiting list review. The order should also mandate that defendants physically transfer no fewer than 20 patients per week into the ASH beds and that defendants take all necessary steps to expedite the admission process to meet that number. Moving forward, the Court should order defendants to complete the referral and transfer process for every ASH-qualified patient, including all paperwork and transportation to an ICF bed, within 15 calendar days from the initial referral. There is simply no excuse for the dangerous delays that have become routine and acceptable in today's system.

Plaintiffs also request an order requiring defendants to file a detailed report on the Modified Needs Assessment by the end of February 2010. The report should include a full accounting of all patients referred to higher levels of care during the Assessment Process, the levels of care to which the patients were referred, and a case-by-case explanation of whether and when each patient was physically placed in the appropriate bed. For patients who have not physically moved to an appropriate placement, defendants should explain why the admissions have not occurred and should detail any ongoing barriers

9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]

to the transfers.

Finally, plaintiffs request an order requiring defendants to file a report, no later than February 2010, detailing the efficacy of their Pilot program to remove custodial barriers preventing access to intermediate care facility beds (ICF). The report should include detailed information about all 192 patients CDCR's Health Care Placement Oversight Program (HC-POP) deemed potentially eligible for ASH placement from the SVPP waiting list during phase one and two of the review, including the name, CDC number, custody level, custody points, and any other information relevant to their placement at ASH. For each patient, defendants should detail when the referrals and transfers occurred. For each patient who was rejected or otherwise excluded from ASH, defendants should detail the custodial, medical, clinical, or other reason for the exclusion. For every patient who has been referred to ASH but has not reached a bed, defendants should detail the patient's current status and the reason or reasons for the delay. In the meantime, defendants should be barred from using the SVPP waiting list as "the clearinghouse for all high-custody ICF referrals" (Docket 3760 at 8, fn. 8; Docket 3760-4 at 4-5) since this practice flies in the face of the Pilot Program's intended goal to move patients to ASH.

Dated: January 8, 2010

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Amy Whelan*
    Amy Whelan
    Attorney for Plaintiffs

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF REGARDING THE 256 INTERMEDIATE CARE FACILITY BEDS AT ATASCADERO STATE HOSPITAL - CASE NO. CIV 90-0520 LKK-JFM

[338834-1]