IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                  Plaintiffs,<br><br>       v.<br><br>ARNOLD SCHWARZENEGGER,<br>et al.,<br><br>                  Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>                  Plaintiffs,<br><br>       v.<br><br>ARNOLD SCHWARZENEGGER,<br>et al.,<br><br>                  Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>ORDER TO REDUCE PRISON<br>POPULATION |

On August 4, 2009, this three-judge court issued an Opinion and Order finding, by clear and convincing evidence, that crowding is the primary cause of the constitutional inadequacies in the delivery of medical and mental health care to California inmates and that no relief other than a "prison release order," as that term is broadly defined by the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(g)(4), is capable of remedying these constitutional deficiencies. We further concluded that relief requiring the State to reduce the

1    population of its thirty-three adult prisons to 137.5% of their total design capacity was

2    narrowly drawn, would extend no further than necessary to correct the violation of California

3    inmates' federal constitutional rights, and was the least intrusive means necessary to correct

4    that violation.  Accordingly, in consideration of this court's limited role and the State's "wide

5    discretion within the bounds of constitutional requirements," *Bounds v. Smith*, 430 U.S. 817,

6    832-33 (1977), we ordered the State to provide "a population reduction plan that will in no

7    more than two years reduce the population of the CDCR's adult institutions to 137.5% of

8    their combined design capacity."  Aug. 4, 2009 Opinion and Order at 183.  As required by

9    the PLRA, we also gave "substantial weight to any adverse impact on public safety or the

10   operation of a criminal justice system," 18 U.S.C. § 3626(a)(1)(A), and determined, based on

11   the evidence presented at trial, that means exist by which the defendants can accomplish the

12   necessary population reduction without creating an adverse impact on public safety or the

13   operation of the criminal justice system.

14         The State submitted a proposed prison population reduction plan on September 18,

15   2009, but that proposed plan would have reduced the prison population to only 166% of

16   design capacity in two years absent further legislation, and 151% of design capacity in two

17   years if all of the proposals were granted legislative approval.  Defs.' Sept. 18, 2009 Plan at

18   15, 19 (tables showing projected prison populations and crowding rates based on defendants'

19   proposed population reduction mechanisms).  Because the plan that the State provided did

20   not comply with our August 4, 2009 Order, we rejected the plan and ordered the State to

21   submit a revised population reduction plan that complied with our August 4 Order.  On

22   November 12, 2009, the State timely submitted a revised plan.  In accordance with our

23   Orders, this revised plan proposed measures estimated to reduce the prison population to the

24   required 137.5% of design capacity by December 2011.

25         On December 7, 2009, plaintiffs agreed that the State's revised plan satisfied the

26   requirements of our August 4, 2009 Order and proposed that we enter an order requiring the

27   defendants to achieve the six-month population reduction benchmarks set forth in the revised

28   plan without ordering implementation of any specific population reduction measures.  We

2

1   agree that such an order is appropriate because it would afford the State maximum flexibility

2   in its efforts to achieve the constitutionally required population reduction.

3        As defendants and county intervenors observe in their December 18, 2009 replies to

4   plaintiffs' response, we have not evaluated the public safety impact of each individual

5   element of the State's proposed plan.  However, the evidence presented at trial demonstrated

6   that means exist to reduce the prison population without a significant adverse impact on

7   public safety or the criminal justice system.  Certain of the measures suggested by the State,

8   such as raising the threshold for grand theft and limiting the maximum sentence for certain

9   enumerated felonies to 366 days to be served in county jail, were not included within the

10   means we considered in our August 4 Opinion and Order, and were thus not evaluated from

11   the standpoint of public safety.  We noted, however, that they had previously been endorsed

12   by state officials, and thus, presumably, "would not have an adverse effect on public safety."

13   Aug. 4, 2009 Opinion and Order at 156.  Certain measures that we concluded would

14   substantially reduce the prison population that we did evaluate positively from a public safety

15   standpoint, such as changes with respect to the churning of technical parole violators, appear

16   to be included only in part in the State's plan.  We believe, as we did when we issued our

17   prior Order, that it is appropriate for the State to exercise its discretion in choosing which

18   specific population reduction measures to implement, and, in doing so, to bear in mind the

19   necessity for ensuring the public safety.  We are satisfied that, as we previously held, the

20   reduction in prison population that we have ordered can be implemented safely and trust that

21   the State will comply with its duty to ensure public safety as it implements the

22   constitutionally required reduction.  Should the State determine that any of the specific

23   measures that it has included in its plan cannot be implemented without significantly

24   affecting the public safety or the criminal justice system, we trust that it will substitute a

25   different means of accomplishing the constitutionally required population reductions.

26        We emphasize here that we are not endorsing or ordering the implementation of any

27   of the specific measures contained in the State's plan, only that the State reduce the prison

28   population to the extent and at the times designated in this Order.  We also emphasize that

3

we do not intend by this Order to prohibit the State from taking actions that may have the effect of reducing the prison population, whatever their impact on public safety, should those actions be taken for reasons other than compliance with our Order.

The concerns that county intervenors express regarding funding may have merit. Counties may well require additional financial resources from the State in order to ensure that no significant adverse public safety impact results from the State's population reduction measures. Counties may, for example, need additional financial resources in order to fund the additional costs of ongoing rehabilitation, re-entry, drug or alcohol, educational, and job training programs. Reducing the number of persons it imprisons should result in significant savings to the State. We do not now decide whether and to what extent the State should allocate part of its savings from such reductions to the counties; instead, we note that whether public safety requires such a reallocation demands serious consideration by the State, both under its general responsibilities to the public and in accord with the PLRA.

In light of all of the above, as well as our August 4, 2009 Opinion and Order, IT IS HEREBY ORDERED that:

1.      In accordance with the figures in defendants' November 12, 2009 revised population reduction plan, defendants shall reduce the population of California's thirty-three adult prisons as follows:

a.      To no more than 167% of design capacity by six months from the effective date of this Order.

b.      To no more than 155% of design capacity by twelve months from the effective date of this Order.

c.      To no more than 147% of design capacity by eighteen months from the effective date of this Order.

d.      To no more than 137.5% of design capacity by twenty-four months from the effective date of this Order.

"Design capacity" for purposes of these benchmarks may not remain static. For example, an increase in design capacity through construction would decrease the number of

inmates by which the prison population must be reduced.  Conversely, a decrease in design capacity, such as would result from the closing of a prison, would increase the numeric reduction required.

2.      All population reduction measures undertaken by defendants must comply not only with our Orders and the PLRA, but also with any relevant orders entered by other courts, including the individual *Plata* and *Coleman* courts.

3.      Within fourteen days following each of the deadlines described above, defendants shall file a report advising the court whether the estimated population reduction has been achieved.  This report shall include the total reduction in the population of California's adult prisons that has been achieved; the current population of those institutions, both in absolute terms and as a percentage of design capacity; and the reductions associated with each of the individual measures that defendants described in their November 12, 2009 plan as well as any additional or alternative population reduction measures that it may have subsequently adopted.  If the State has failed to achieve the required population reduction, defendants shall advise the court as to the reasons for such deficiency and what measures they have taken or propose to take to remedy it.  They also shall advise the court as to whether such deficiency could have been avoided by the exercise of executive authority, such as that invested in the Governor and other officials by the California Emergency Services Act.  Finally, defendants shall advise the court whether legislative changes are required to remedy any deficiency and, if so, what efforts defendants have made to obtain such changes, including specific proposals made to the legislature and the legislative responses to such proposals.  Defendants are advised that we may also order the submission of interim reports informing the court of what specific tasks defendants intend to undertake during each six-month period and the specific persons responsible for executing those tasks.

4.      If, at any time, the State believes that the waiver of state law by this court is necessary to permit it to meet any of the above population reduction deadlines, defendants shall promptly file a statement with this court, explaining the reasons that they believe such waiver to be necessary; whether they have considered and rejected all other available

remedies; if they have rejected such remedies, the reasons therefor; and why the proposed waiver is permissible under the PLRA and the Constitution of the United States.

5.    To the extent that population reduction measures implemented by the State increase the need for re-entry, rehabilitation, education, job training or other community services provided by the counties, or necessitate other measures be undertaken by such counties, defendants shall, in cooperation with the counties, calculate the amount of additional funds that the counties may require from the State in order to maintain the level of public safety at or about the existing level.  Within thirty days of the effective date of this Order, defendants shall file with this court a statement setting forth (1) the amounts agreed upon or, should there be no agreement, the parties' respective positions as to such amounts, and (2) what steps defendants have taken or plan to take to fulfill their obligations to the counties in connection with the implementation of the prison population reduction measures, including the allocation to the counties of a portion of any budgetary savings resulting from such implementation.  It would be in the interest of both the State and the counties to commence such discussions prior to the effective date of this Order.

6.    The effective date of this Order is STAYED pending the United States Supreme Court's consideration of the appeal of our August 4, 2009 Opinion and Order and any appeal of this Order.  Unless this Order is rendered moot by the Court's disposition of any such appeal, the effective date of this Order shall be the day following the final resolution by the Court of a timely-filed appeal of this Order or, if no such appeal is filed, the later of the day following the expiration of defendant's time for filing an appeal and the day following the Court's final resolution of the appeal of our August 4 Opinion and Order.

7.    We note that this stay grants the State additional time in which to reduce the population of its adult prisons, which Defendant Governor Arnold Schwarzenegger has proclaimed are in a state of emergency due to overcrowding.  *See* Ex. P1 (Oct. 4, 2006 Prison Overcrowding State of Emergency Proclamation).  In addition, the stay affords defendants the time and opportunity to seek legislation enacting those prisoner population reduction measures that they proposed in their November 12, 2009 revised plan, but asserted that they

1  lacked the authority to implement.  We also note that defendants represented in their

2  November 12, 2009 plan that they would seek legislation affording them such authority.

3  Accordingly, within fourteen days of the effective date of this Order, defendants shall file a

4  report advising this court whether they have obtained the requisite authority for such

5  measures or for other alternative measures that would achieve equal or greater reductions in

6  the prison population, and, if not, what efforts they have made towards obtaining such

7  authority, including what specific proposals they have made and what specific responses

8  have been received from the legislature, if any.

9         As we have repeatedly stated, we do not intervene lightly in the State's management

10 of its prisons.  However, the State's long-standing failure to provide constitutionally

11 adequate medical and mental health care to its prison inmates has necessitated our actions,

12 and our prison population reduction Order is the least intrusive remedy for the constitutional

13 violations at issue.  We reiterate our "hope that California's leadership will act constructively

14 and cooperatively . . . so as to ultimately eliminate the need for further federal intervention."

15 Aug. 4, 2009 Opinion and Order at 182.  We do, however, necessarily reserve the right, and

16 indeed we have the obligation, to order additional steps to implement our August 4 Order

17 should the actions taken by the State fail to meet any six-month reduction goal set forth in

18 this Order.

19

20 **IT IS SO ORDERED.**

21

22 Dated:   01/12/10

23                                          STEPHEN REINHARDT
                                            UNITED STATES CIRCUIT JUDGE
                                            NINTH CIRCUIT COURT OF APPEALS
24

25

26 Dated:   01/12/10

27                                          LAWRENCE K. KARLTON
                                            SENIOR UNITED STATES DISTRICT JUDGE
                                            EASTERN DISTRICT OF CALIFORNIA
28

Dated:   01/12/10

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA