EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
SAMANTHA H. RAMSEY, State Bar No. 230862
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5165
 Fax: (916) 324-5205
 E-mail: Samantha.Ramsey@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR TEMPORARY RELIEF RE: 256 INTERMEDIATE CARE FACILITY LOW-CUSTODY BEDS AT ATASCADERO STATE HOSPITAL** |

1

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| **ASH** | Atascadero State Hospital |
| **CDCR** | California Department of Corrections and Rehabilitation |
| **CSH** | Coalinga State Hospital |
| **DMH** | Department of Mental Health |
| **HC-POP** | Health Care Placement Oversight Program |
| **ICF** | Intermediate Care Facility |
| **SVPP** | Salinas Valley Psychiatric Program |
| **VPP** | Vacaville Psychiatric Program |

2

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)

**INTRODUCTION**

Defendants requested temporary relief from the requirement that the California Department of Mental Health (DMH) fill all 256 Intermediate Care Facility (ICF) low custody beds at Atascadero State Hospital (ASH) so that Defendants can complete the Court-ordered modified assessment project, evaluate the new ICF Pilot Program, and determine whether there remains any unmet need for ICF low-custody beds. (Docket #3760.) In support of their request, Defendants presented evidence that they had worked diligently with the Special Master and his experts to complete the assessment, but that the bed need to date had not been sufficient to fill the ICF low custody beds. (*Id*.) In addition, Defendants presented evidence that they had implemented a new ICF Pilot Program, but had not had sufficient time to evaluate the Pilot Program nor process the referrals from the Salinas Valley State Prison Wait List for the Salinas Valley Psychiatric Program (SVPP). (*Id*.) Completing these tasks is critical to determining whether there remains any unmet need for ICF low-custody beds. In addition, the Special Master has agreed to continue working with Defendants to complete them.

In opposition, Plaintiffs accuse Defendants of inaccurately representing data and erroneously assert that Defendants have not expedited the assessment or the Pilot Program. (Docket #3763.) These accusations are wrong. And because Plaintiffs offer no evidence to support their accusations, the Court should grant Defendants' request. Plaintiffs also include in their opposition three extraneous matters. This Court should deny those requests because they reach beyond the Court's June 18, 2009 order, and they are unnecessary.

**ARGUMENT**

**I.    DEFENDANTS HAVE ACCURATELY REPRESENTED THE DATA.**

In Defendants' request, they informed the Court that the need for low-custody beds is below bed capacity. Defendants presented sworn testimony that the need for all DMH California Department of Corrections and Rehabilitation (CDCR) or Penal Code section 2684 low-custody beds is below capacity. (Docket #3760–3 ¶4-9.) In addition, despite DMH's transfer of non-*Coleman* class members to Coalinga State Hospital (CSH) and its expediting ASH admissions,

3

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)

there has not been enough need to fill the 256 ICF ASH low-custody beds. (*Id.*) Because Plaintiffs did not submit any contrary evidence, the Court should grant Defendants' request.

Plaintiffs claim that Defendants' assertion concerning the bed need belies all available data. (Docket # 3763 at 3:23–24.) In addition, they contend that "there are certainly hundreds of patients who qualify for ASH placement at any moment in time." (*Id.* at 4:18–19.) But Plaintiffs offer no evidence to support these accusations. Moreover, Defendants' evidence is to the contrary. As of December 15, 2009, DMH had received 688 referrals from the assessment—135 were admitted to ASH, with zero waitlisted and 58 available beds. (Docket #3760–3 ¶¶10–11.) Similarly, the census for *Coleman* inmate-patients at CSH and the Vacaville Psychiatric Program (VPP) dorms at the California Medical Facility (CMF) were below capacity. (*Id.*) In addition, CDCR's Health Care Placement Oversight Program (HC-POP) reviewed the SVPP Wait List for inmate-patients that were potentially eligible for placement at ASH. (Docket #3760-4 ¶¶ 6–10.) But that review did not result in "hundreds of patients who qualify for ASH placement;" rather, it resulted in 37 referrals—33 referred to ASH by Institutional Classification Committees from the SVPP Wait List as of September 2, 2009, and 4 referred to ASH from the SVPP Wait List as of November 4, 2009.[1] (Docket #3760-4 ¶¶7-11.) Plaintiffs imply that because the assessment identified nearly 1,000 cases for review, there still should be hundreds more that qualify for ASH placement. (Docket #3763 at 4:17-19.) The fact that the assessment identified nearly 1,000 cases for review, however, does not equate to a conclusion that "hundreds of inmates" are eligible for ICF low-custody beds. In fact, those inmate-patients are not eligible for ASH, *e.g.*, over 200 inmate-patients were referred to ICF high-custody beds at SVPP.[2] (Docket #3760–4 ¶¶11.) Placing inmate-patients in proper mental health care facilities cannot be reduced to a simple

---

[1] Plaintiffs state that Defendants have "determined that another 45 patients from the SVPP waiting list should transfer to ASH ICF Beds" and that "[o]f the 12 patients from Phase II, defendants have referred only 2, with the remaining 8 'pending review by the ICCs.'" (Docket #3763 at 4:7–8, 14–15.) This misstates the evidence. HC-POP identified 45 potentially eligible inmates for referral for mental health placement, of which 4 were recommended for referral to ASH. (Docket #3760 at 10–11.)

[2] Plaintiffs also imply that Defendants have represented that there is a decrease in ICF high-custody beds. (Docket #3763 at 3:21–22.) Defendants acknowledge in their request that there exists a wait list for ICF high-custody inmates—they do not state that there is a decrease in ICF high-custody beds. (Docket #3760 at 8, 11.)

4

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)

mathematical conclusion—force patients identified as potentially having mental healthcare needs into any program with available beds, regardless of serious security issues. This would present potential harm to those very inmate-patients, as well as staff. And, as Defendants discussed in their request, ASH is not suitable for ICF high-custody inmate-patients because it does not provide the necessary safety and security for inmate-patients who require single-cell and/or locked housing. (Docket #3760–3 ¶ 9.)[3]

Plaintiffs further claim that Defendants have failed to "timely process" the referrals and transfers, and contend that DMH should be forced to admit 20 inmate-patients a week. (Docket #3763 at 3.) But, again, Plaintiffs offer no evidence to support this accusation much less their request for additional ICF low-custody beds. Instead, Plaintiffs offer their opinion on how quickly CDCR should process referrals and boldly state that DMH should simply admit inmates into ASH absent clinical updates. (Docket#3763 at 4.) But Defendants' sworn testimony provides reasonable representations on how long it will take to complete the assessment and evaluate the impact from the ICF Pilot Program. In addition, clinical updates are critical to ensuring appropriate placement of inmate-patients. Because an inmate-patient's clinical evaluation may have changed since the initial referral, it is reasonable to require an update to ensure accuracy. This Court should therefore reject Plaintiffs' attempt to second-guess the opinions of the CDCR and DMH professionals concerning these matters.

Plaintiffs also argue that two monthly reports—October and November 2009—from CDCR show that Defendants' record of processing monthly referrals is extremely slow. (Docket #3763 at 4.) It is not appropriate, however, to rely on these reports to oppose Defendants' request. First, the report entitled, "A California Department of Corrections and Rehabilitation Division of Correctional Health Care Services Inmates Referred to DMH Settings for Treatment," reflects referrals from CDCR prisons, not the number of actual referrals that DMH received during those

---

[3] Plaintiffs also contend that Defendants' objections to the Special Master's recommendations concerning his expert's suicide report provide proof that Defendants are ignoring their needs. (Docket #3763 at 8–9.) Defendants have a legal right to object to the Special Master's recommendations and the fact that they object is not evidence that they are ignoring Plaintiffs' needs. This Court should therefore resist Plaintiffs' efforts to use Plaintiffs' objections as a vehicle to oppose Defendants' request concerning the ASH beds.

5

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)

months. (Docket #3764 ¶¶ 4–7.) Second, Plaintiffs' analysis of the report entitled, "Department of Mental Health Summary Monthly Report of CDC Patients in DMH Hospitals Cumulative Total of All Patients Treated During the Month," does not account for the actual number of inmate-patients that were admitted into ASH in October and November 2009. (*Id.*) On the other hand, Defendants presented sworn testimony that in October 2009, ASH admitted 42 inmates and in November 2009, ASH admitted 28 inmates—both months reflecting a much greater admission rate than presented. (Docket #3760-4 ¶¶ 7–9.) Thus, reference to these two reports does not show a failure by DMH to expedite admissions to ASH.[4]

Good cause therefore exists to grant Defendants' request for temporary relief from filling the 256 ICF low-custody beds at ASH so that Defendants, in consultation with the Special Master and his experts, can determine whether there remains any unmet need for low-custody beds.

## II.   DEFENDANTS HAVE EXPEDITED THE MODIFIED ASSESSMENT PROJECT.

In Defendants' request, they presented sworn testimony that they have worked with the Special Master and his experts to develop and implement a modified assessment plan that spanned over 10 months and included all 28 non-desert institutions. (Docket #3760–2 ¶¶ 4–8.) In addition, Defendants presented evidence that they had just completed the assessment on December 29, 2009, and had not had the opportunity to process all the referrals nor analyze the referral data. (*Id.*) Defendants expect to receive and process the remaining recommendations in February 2010. (*Id.* at ¶11.) In addition, Defendants are meeting with the Special Master's experts on January 27 and 28, 2010, to reconcile the data, and will continue to work with them to complete a final report. (*Id.* at ¶10.) Because Plaintiffs did not present any evidence that Defendants delayed the assessment, the Court should grant Defendants' request.

Plaintiffs also argue that admissions are slow because of "the 688 patients referred to DMH as of December 15, 2009, only 294 (42.7%) have actually made it to inpatient beds." (Docket #3763 6:5–6.) Plaintiffs are correct that DMH admitted 294 inmates into DMH Programs. But

---

[4] Plaintiffs also criticize the fact that Defendants paroled a certain number of inmates that had been referred to a higher level of care, and accuse Defendants of failing to comply with their obligations in the *Valdivia* case. (Docket #3763 at 8.) The Court should disregard this accusation because it is unsupported and beyond the scope of this Court's June 18, 2009 order.

6

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)

looking at this data in isolation distorts the picture. What is missing from the picture is the fact that nearly all the inmates not in DMH beds are on the VPP Acute and SVPP ICF High Custody Wait Lists—not waiting to get into ASH. (*See* Docket #3760 at 8.) Plaintiffs further argue that "Defendants have placed another 283 patients on the Salinas Valley Psychiatric Program's (SVPP) waiting list, including many patients who are likely eligible for placement at ASH." (*Id.* at 6-9.) Plaintiffs are correct that 283 inmate-patients were placed on the SVPP Wait List, but they are incorrect that these inmates are "likely eligible for placement at ASH." Defendants' sworn testimony shows that those inmates are not eligible for ASH, and the fact that Defendants use the SVPP Wait List as the clearinghouse for all high-custody ICF referrals—VPP High Custody, SVPP High Custody Cells, and SVPP High Custody Dorms—is not material to the number of inmates on the Wait List. (Docket #3760 at 4, 8 n.7, 9.)

Plaintiffs argue that Defendants should be ordered to admit all ASH qualified inmate-patients referred to DMH through the assessment no later than January 30, 2010. (Docket #3673 at 6:12-15.) This is not a reasonable timeline in light of the status of the referral data. And DMH remains committed to admit *Coleman* class members at a rate of not less than ten per week in order to fill the remaining ICF low-custody beds at ASH. (Docket #3760–3 ¶ 13.)

### III.  DEFENDANTS HAVE EXPEDITED THE ICF PILOT PROJECT

In Defendants' request, they presented sworn testimony that they had implemented their new ICF Pilot Program and had reviewed the SVPP Wait List for potential referrals to ASH. (Docket #3760–4 ¶¶4-10.) The SVPP Wait List review involved reviewing all the inmate-patients on the Wait List as of November 4, 2009. (*Id.*) For that reason, Defendants had not had adequate time to process all the referrals and DMH was waiting for clinical updates on some of them. (Docket #3760–3 ¶ 12; 3760–4 ¶11.) Nor had Defendants had adequate time to evaluate the impact of the Pilot Program on the need for low-custody beds. (Docket #3760–4 ¶5.) Because Plaintiffs did not submit any evidence that Defendants delayed the Pilot Program, the Court should grant Defendants' request.

Plaintiffs allege that the Pilot Program has failed, and accuse Defendants of delay (Docket #3763 at 6-7.) Again, Plaintiffs offer no evidence to support their accusations. Instead, they

7

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)

1  point to the number of inmates on the SVPP Wait List[5] and the fact that as of December 29, 2009,
2  DMH had not admitted any referrals from the Wait List.  But this information does not establish
3  that the program has failed or that Defendants are dragging their feet.  Instead, the evidence is that
4  the Pilot Program has resulted in inmate-patients being recommended for placement at ASH—
5  inmate-patients that would not otherwise have been recommended.  In addition, since the Pilot
6  Program has only been in effect since November 4, 2009, Defendants have not had sufficient time
7  to evaluate its impact.  And DMH's request for clinical updates prior to admitting those inmates
8  that had been on the SVPP Wait List, shows care and caution, not delay.

## IV.   PLAINTIFFS' EXTRANEOUS REQUESTS ARE NOT APPROPRIATE.

Plaintiffs ask the Court to make three extraneous requests.  First, Plaintiffs ask this Court to order that Defendants file a detailed report on the modified assessment project by the end of February 2010.  (Docket #3763 at 9:23-24.)  Plaintiffs' request is not appropriate.  A Court-approved process is in place for the assessment.  Specifically, the Special Master has agreed to continue working with Defendants to complete the assessment, evaluate the impact of the ICF Pilot Program, and determine whether there remains any unmet need for low-custody beds.  (Docket #3760–2 ¶10.)  Moreover, Defendants have agreed to prepare a final report and to update the Court by March 31, 2010, on ASH's census and on whether there remains any unmet need for ICF low-custody beds.  (Docket #3760 at 3.)  Thus, since Plaintiffs' request is beyond the scope of the Court's June 18, 2009 order, this Court should deny it.

Second, Plaintiffs ask this Court to order that Defendants file a detailed report on the Pilot Program no later than February 2010.  (Docket #3763 at 10:2-4.)  Plaintiffs' request is not appropriate for the reasons set forth above.  In addition, Plaintiffs have no right to details concerning Defendants' implementation of the Pilot Program—the ICF Pilot Program came into

---

[5] Plaintiffs' counsel represents that the SVPP Wait List in October totaled 619 and in November totaled 608.  (Docket #3763 at 6.)  These numbers are incorrect.  DMH has filed amended bed utilization reports for October and November 2009, which reflect correct Wait List numbers for October and November 2009; that is, 469 and 505 respectively. (Docket #s 3776, 3781.)

8

being on Defendants' own volition and initiative. And because the request is beyond the scope of this Court's June 18, 2009 order, this Court should deny it as well.

Last, Plaintiffs ask the Court to order that, in going forward, Defendants complete the referral and transfer process for every patient within 15 calendar days from the initial referral. (Docket #3673 at 10.) Plaintiffs' opposition is not the proper venue to make this request, and they are obligated to file a properly noticed motion if they want this order.

## CONCLUSION

Because good cause exists to grant Defendants' request, as set forth in their moving papers, Defendants respectfully request that this Court grant them temporary relief from the requirement that they fill all 256 ICF low-custody beds at ASH.

Dated: January 22, 2010

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS
Deputy Attorney General

*/s/ Samantha H. Ramsey*

SAMANTHA H. RAMSEY
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003

9

Defs. Reply to Pltfs. Opp. to Request for Temporary Relief Re: 256 Int. Low Custody Beds at ASH
(2:90-cv-00520 LKK JFM P)