IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,                       No. CIV S-90-0520 LKK JFM (PC)

    vs.

ARNOLD SCHWARZENEGGER, et al.,

        Defendants.                 ORDER

/

        Defendants have filed a motion for temporary relief from this court's June 18, 2009 order requiring the California Department of Mental Health (DMH) to admit members of the plaintiff class to Atascadero State Hospital (ASH) at a rate of not less than ten admissions per week until the full complement of 256 beds at ASH dedicated to inpatient care for Coleman class members are filled. Initially, the beds were to be filled by October 31, 2009. Pursuant to the stipulation of the parties, that deadline was extended to December 31, 2009. See Order filed November 2, 2009. Defendants now seek an extension of time to March 31, 2010 to complete admissions to ASH resulting from the Modified Needs Assessment (assessment) conducted last year pursuant to this court's March 31, 2009 order and to "update this Court . . . on ASH's census and on whether there remains any unmet need for ICF low-custody beds." Defendants' Request for Temporary Relief, filed December 31, 2009, at 3. Defendants also signal their intention to

1

seek relief from their obligation to fill 256 beds at ASH should there be, in their view, no unmet need for such care remaining. Id. Plaintiffs oppose the request.

Defendants' request raises two separate questions: first, whether defendants should be granted an additional period of three months to complete the transfer of inmates referred to the intermediate level of inpatient mental health care pursuant to the assessment; and, second, whether they should be required to fill all 256 beds at ASH in that same period of time.

As noted above, the assessment was conducted pursuant to an order of this court issued on March 31, 2009. The assessment, which involved review and assessment of over 1,500 Coleman class members at all 28 non-desert prisons in the California Department of Corrections and Rehabilitation (CDCR) to determine whether they were in need of inpatient mental health care, began on April 15, 2009 and was completed on December 29, 2009. See Declaration of Lucinda McGill, filed December 31, 2009, at ¶¶ 4-9. As a result of the assessment, almost 1,000 inmates have been referred for inpatient mental health care. Id. at 9-10. As of December 15, 2009, DMH had received 688 referrals resulting from the assessment. See Declaration of Cynthia A. Radavsky, filed December 31, 2009 (Radavsky Declaration), at ¶ 10. CDCR continues to process referrals from the assessment. See McGill Declaration at ¶¶ 9-10.

Inpatient mental health care for CDCR inmates is provided through programs for acute and intermediate care run by DMH. At present, defendants have 182 beds for acute inpatient care, all at the Vacaville Psychiatric Program (VPP) at California Medical Facility (CMF). Radavsky Declaration at ¶ 5 Table 1. In addition, defendants have 274 intermediate care beds for inmates designated as high custody, and 390 intermediate care beds for low custody inmates. Id. The intermediate care beds for high custody inmates are at the VPP at CMF, which has 30 beds, and at Salinas Valley State Prison in the Salinas Valley Psychiatric Program (SVPP), which has a total of 244 beds. Intermediate inpatient psychiatric care is provided for low custody inmates in 84 beds at the VPP, 50 beds at Coalinga State Hospital (Coalinga), and 256 beds at ASH. Id.

Of the 688 inmates referred to DMH through December 15, 2009 as a result of the assessment, 58 were admitted to acute care beds at VPP and 22 were placed on the wait list for admission to that unit; 45 were admitted to the intermediate care units at SVPP and 283 were placed on the wait list for admission to that unit; 22 were admitted to intermediate care beds at VPP and seven were placed on the wait list there; 135 were admitted to ASH; and 34 were admitted to Coalinga. Id at ¶ 11 Table 2. Eighty-two other inmates were neither admitted to inpatient care nor placed on a wait list "for various reasons including that the CDCR rescinded their referrals and that the inmate-patients won their Vitek hearings, paroled, were rejected by DMH, and/or determined to be mentally disordered offenders." Id. at ¶ 11.

Defendants report that in October and November 2009, the number of high custody inmates on the wait list for admission to SVPP was 469 and 505 inmates, respectively.[1] In October 2009, CDCR commenced a two-year pilot program, administered by its Health Care Placement Oversight Program (HC-POP), designed to increase placement of CDCR inmates in need of inpatient care in the DMH intermediate care programs. See Declaration of Rick Johnson, filed December 31, 2009 (Johnson Declaration), at ¶¶ 2, 4-5. Specifically, "the criteria and guidelines in the Pilot Program will now allow HC-POP to refer to ASH and the VPP dorms, on a case-by-case evaluation, some CDCR inmate-patients whose custody factors would previously have prevented their referral to an ICF low-custody bed." Id. at ¶ 5. Pursuant to the pilot program, HC-POP has reviewed a total of 569 inmates on the wait list for admission to SVPP in two separate reviews, the first for inmate-patients on the SVPP wait list as of September 2, 2009, and the second of inmate-patients added to that wait list from September 3, 2009 through November 4, 2009. Id. at ¶¶ 7, 9. Those reviews identified, respectively, 147 and 45 "potentially

---

[1] In their opposition, plaintiffs pointed to evidence that the wait list for admission to SVPP in October and November 2009 was 600 and 608 inmates, respectively. See Declaration of Amy Whelan in Support of Plaintiffs' Opposition to Defendants' Request, filed January 8, 2010 (Whelan Declaration), at ¶ 2-3. Subsequent to the time plaintiffs filed their opposition, defendants filed "amended bed utilization reports" for these two months, and they rely on these amended reports to describe the size of the wait list in these two months.

eligible inmate-patient referrals", and resulted in, respectively, 60 and 12 referrals by HC-POP. Id. at 7-9. Following subsequent review by Institutional Classification Committees (ICCs), 45 inmates from the first group and four inmates from the second group have been referred to DMH intermediate care programs. Id. at 9-10. Eight inmates from the second group are pending review by ICCs. Id. at 10. Of the 33 inmates referred to ASH pursuant to the first review[2], none had been admitted as of the time the instant request was filed; three were "scheduled for admission" and 30 were "pending clinical updates from the various institutions that house them." Radavsky Declaration at ¶ 12.

The timelines for transfer of inmates who are identified as needing intermediate inpatient care are set forth in Chapter Six of the Mental Health Services Delivery System Program Guide (Program Guide).[3] Under the Program Guide, the paperwork necessary for a referral must be completed within five working days from the time an inmate is referred for inpatient care if the inmate consents to transfer, and ten working days if a due process hearing is required. See Program Guide, at 12-6-9. DMH has three working days after receipt to review the referral packet and must "immediately notify the referring institution by fax of the decision to accept or reject." Id. at 12-6-10. For inmates accepted to DMH, transfer must take place within 30 days of referral, and inmates accepted to DMH must "be transported to DMH within 72 hours of bed assignment." Id. at 12-6-11.

The court turns now to the specific issues raised by defendants' request and plaintiffs' response. As noted above, the assessment was completed on December 29, 2009. Under the timelines set forth in the Program Guide, all inmates referred on that date and accepted to ASH must be transferred to ASH no later than January 29, 2010. That represents the last day

---

[2] The other 12 were referred to VPP. Johnson Declaration at ¶ 8.

[3] All references to the Program Guide in this order are to the 2009 Revision, a copy of which has been provided to the court by the special master and of which the court takes judicial notice.

4

on which inmates referred and accepted to ASH pursuant to the assessment should have been transferred; inmates referred earlier in the assessment should have been transferred 30 days after their referral and, therefore, prior to January 29, 2010.  Although defendants assert that they need more time to complete referrals generated during the assessment, they provide no reasons for the delay in completing the referrals that would justify extending further the time for completing such referrals.  Given the apparent size of backlogged referrals, the court will extend to February 5, 2010 the time for completing the transfer of all ASH-eligible inmates referred during the assessment process.  The court will look with great disfavor on any further requests for extension of this deadline.

As noted above, defendants are also reviewing inmates placed on the wait list for admission to SVPP to determine whether some of those inmates can in fact be placed at ASH.[4] At the time defendants filed their request, at least 33 inmates were waiting to be placed at ASH following referral through the HC-POP program, and there were 58 empty beds at ASH.[5]  It appears from the record that the delay in placing these inmates at ASH is primarily, though not entirely, due to delays in providing clinical updates to DMH, a responsibility that lies with CDCR.  At the request of the special master, the court will require that henceforth all clinical updates requested by DMH shall be provided within five working days of the request.  All outstanding requests for clinical updates made prior to this order shall be provided within five working days from the date this order is filed, and all inmates eligible for ASH following the

---

[4] The court is encouraged by defendants' decision to conduct the pilot program in an effort to increase placement of inmates on the wait list for inpatient mental health care.  The decision to conduct this program appears to be validated by the first sets of reviews that have been conducted.

[5] The special master reports that as of the first week in January, there were 218 Coleman class members at ASH.  It is not clear to what extent the additional 20 inmates admitted to ASH since defendants' request was filed were from the HC-POP referrals.  The court anticipates that the special master, and the parties, will have a clear picture of the status of all inmates evaluated pursuant to the assessment following the reconciliation meeting scheduled for January 26 and 27, 2010.

updates shall be transferred to ASH not later than 72 hours from bed assignment or twenty days from the date of this order, whichever is earlier.

   The court turns now to defendants' request for relief from the requirement that they fill all 256 beds at ASH and their proposal that they update the court on March 31, 2010 as to whether there remains sufficient unmet need for inpatient care among inmates appropriate for admission to ASH to warrant continued dedication of the full complement of 256 beds at ASH for Coleman class members.  From the record before this court it appears likely that the full complement of 256 beds at ASH will be necessary for defendants to comply with this order. Moreover, the wait list for admission to intermediate care continues to be extraordinarily long and as defendants acknowledge, they are only at the beginning stages of the pilot program designed to increase referrals to ASH through case-by-case review of custody factors, which is already showing signs of success and which will be ongoing for almost two years.  Given the evident demand for inpatient care and the continued drastic shortage of inpatient beds, it is simply too early to consider decreasing the number of beds available for Coleman class members at ASH.

   Finally, the court notes that in their opposition plaintiffs ask for several specific orders, including requiring defendants to increase to 20 the minimum number of inmates that defendants are required to admit to ASH each week and requiring defendants to prepare and file several reports related to the assessment and the pilot program.  The court will not increase at this time the minimum number of inmates that defendants will be required to admit to ASH weekly. The court reminds defendants that the provision of the June 18, 2009 order requiring admission of Coleman class members to ASH at a rate of not less than ten per week until 256 beds are filled was intended as a floor for admission, not a ceiling.  Defendants will be expected to take all steps necessary to comply with the deadlines set in this order and to plan their admissions to ASH accordingly.

/////

With regard to the requested reports, the special master has advised the court that the information plaintiffs seek is being or will be produced to him as part of the assessment process. The court will not require any specific reports to be filed at this time. However, the record shows that defendants, under the guidance of the special master, have now twice in the past five years conducted special assessments of unmet need for inpatient care and that both assessments disclosed significant numbers of inmates who needed but had not been referred for such care. The court will set this matter for status conference at which time the court will hear from defendants concerning the steps they have taken and are taking to ensure that the referral and transfer of inmates to higher levels of care is proceeding in a way that will avoid the need for any future special assessments of unmet need and will ensure that those who require inpatient care are referred and admitted in a timely manner.

In accordance with the above, IT IS HEREBY ORDERED that defendants' December 31, 2009 motion is granted in part and denied in part, as follows:

1. Defendants are granted an extension of time until no later than February 26, 2010 to fill all of the 256 beds at ASH dedicated to <u>Coleman</u> class members. In filling those beds, defendants shall also comply with the deadlines set forth in paragraphs 2 and 3 of this order.

2. Defendants shall complete the referral process for all <u>Coleman</u> class members referred for intermediate inpatient care during the assessment process who are eligible for admission to ASH without further custody review so that all such class members accepted to ASH have been transferred by February 5, 2010.

3. All outstanding requests for clinical updates made by DMH prior to this order shall be provided within five working days from the date this order is filed, and all inmates eligible for ASH following the updates shall be transferred to ASH not later than 72 hours from bed assignment or twenty days from the date of this order, whichever is earlier.

/////

7

4. Henceforth, all clinical updates requested by DMH shall be provided within five working days of the request.

5. This matter is set for status conference on March 29, 2010 at 11:00 a.m.

DATED:   January 27, 2010.

*/s/ Lawrence K. Karlton*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT