1   EDMUND G. BROWN JR.
    Attorney General of California
2   JONATHAN L. WOLFF
    Senior Assistant Attorney General
3   DEBBIE J. VOROUS, State Bar No. 166884
    SAMANTHA RAMSEY, State Bar No. 230862
4   Deputy Attorneys General
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 324-5345
     Fax: (916) 324-5205
7    E-mail: Debbie.Vorous@doj.ca.gov

8   Attorneys for Defendants

9                  IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11                        SACRAMENTO DIVISION

12

| | |
|---|---|
| 13  **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM P |
| 14                                    Plaintiffs, | **DEFENDANTS' NOTICE OF** |
| 15         v. | **MOTION AND MOTION FOR RECONSIDERATION AND RELIEF RE: THE STARK** |
| 16 | **CONVERSION PROJECT; MEMORANDUM OF POINTS** |
| 17  **ARNOLD SCHWARZENEGGER, et al.,** | **AND AUTHORITIES** |
| 18                                    Defendants. | |
| 19 | |
| 20 | Hearing Date: March 22, 2010 |
| 21 | Time:          10:00 a.m. Courtroom:     Dept. 4, 15th Floor Judge: Lawrence K. Karlton, Senior Judge |
| 22 | |

23          **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

24          PLEASE TAKE NOTICE that Defendants move this Court to reconsider and relieve

25   Defendants of the following portion of its January 4, 2010 order: "Defendants' proposed Stark

26   EOP conversion project is not approved. Within forty-five days from the date of this order,

27   defendants shall file an amended proposal for the Stark EOP conversion project that limits the

28   / / /

                                        1

1    population for that facility to no more than 137.5% of the facility's design capacity and that meets

2    the concerns identified by the special master."  (Docket No. 3761 ¶ 1.c.)

3         Defendants ask the Court to reconsider the above-referenced part of its January 4, 2010

4    order under Federal Rule of Civil Procedure 60(b).

5         First, under Rule 60(b)(5), Defendants ask the Court to reconsider and relieve Defendants

6    of the portion of its January 4, 2010 order that requires Defendants to file an amended plan that

7    limits the population for Stark to no more than 137.5% of the facility's design capacity on the

8    ground that changed circumstances render the continued enforcement at this time of the

9    population cap inequitable—on January 12, 2010, the three-judge court stayed the prisoner

10   release order requiring Defendants to reduce the prison population to 137.5% of design capacity

11   pending resolution in the United States Supreme Court.

12        Second, under Rule 60(b)(6), Defendants ask the Court to reconsider and relieve

13   Defendants of the portion of its January 4, 2010 order that requires Defendants to file an amended

14   plan that meets the concerns identified in the Court's order on the ground that Defendants

15   submitted a constitutional plan to provide access to mental health beds in 2014, and Defendants

16   should not be required to amend their plan in a manner that exceeds constitutional requirements.

17        This motion is based on this notice of motion, the supporting memorandum of points and

18   authorities, the pleadings, records and files in this action, and such other matters as may properly

19   come before the Court.

20   Dated:  February 1, 2010                          Respectfully submitted,

21                                                     EDMUND G. BROWN JR.
                                                       Attorney General of California
22                                                     JONATHAN L. WOLFF
                                                       Senior Assistant Attorney General
23
                                                       */s/  Debbie J. Vorous*
24
                                                       DEBBIE J. VOROUS
25                                                     Deputy Attorney General
                                                       *Attorneys for Defendants*
26

27

28

2

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| **ASU** | Administrative Segregation Unit |
| **CDCR** | California Department of Corrections and Rehabilitation |
| **EOP** | Enhanced Outpatient Program |
| **GP** | General Population |
| **PLRA** | Prisoner Litigation Reform Act |

3

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3

4        On January 4, 2010, as part of Defendants' long-range mental health bed plan, this Court

5   declined to approve Defendants' proposed Stark conversion project from a Division of Juvenile

6   Justice facility to an adult male facility that would house and serve a portion of the adult male

7   EOP population.  The Court ordered that Defendants file an amended plan within forty-five days

8   of the date of the order that: 1) limits the population for the Stark facility to no more than 137.5%

9   of the facility's design capacity in order to comply with the three-judge court's order "to 'reduce

10  the population of the CDCR's adult institutions to 137.5% of their combined design capacity' as a

11  necessary prerequisite to the provision of constitutionally adequate medical and mental health

12  care"; and 2) meets the concerns identified by the *Coleman* special master (i.e., reducing the

13  admissions at Stark and/or increasing the amount of out-of-cell time).  But on January 12, 2010,

14  the three-judge court convened under the Prison Litigation Reform Act (PLRA) stayed the

15  prisoner release order requiring Defendants to reduce the prison population to 137.5% of design

16  capacity pending resolution of an appeal to the United States Supreme Court.  This change in

17  circumstances renders the continued enforcement at this time of this Court's January 4, 2010

18  order concerning the population cap inequitable.  Further, Defendants' plan for the Stark

19  conversion project meets the bed needs identified in the Navigant Consulting population numbers

20  and provides for appropriate programming and out-of-cell time for the Enhanced Outpatient

21  Program (EOP) inmates.  Moreover, Defendants' plan to provide housing and programming at

22  Stark satisfies constitutional requirements, and Defendants should not be required to alter their

23  plan in a manner that exceeds constitutional requirements.  Accordingly, extraordinary

24  circumstances exist to justify relief.

25        Defendants therefore request that this Court reconsider its January 4, 2010 order and

26  relieve Defendants of the obligation to amend the Stark plan to limit the population to 137.5% of

27  / / /

28  / / /

4

1   the facility's design capacity and to address the concerns related to out of cell time and

2   admissions.[1]

3                                    **BACKGROUND**

4          On September 24, 2009, this Court ordered that Defendants file with the Court a detailed

5   long-range mental health bed plan, including activation schedules.  (Docket No. 3686 ¶ 2.)  On

6   November 6, 2009, Defendants submitted a comprehensive, long-range mental health bed plan,

7   including activation schedules.  (Docket No. 3724-2.)  As one of their long-range projects,

8   Defendants proposed to renovate Stark—a former Division of Juvenile Justice institution—to

9   provide housing, treatment, and office space for 775 Enhanced Outpatient Program (EOP)

10  General Population (GP) and 50 EOP Administrative Segregation Unit (ASU) inmates.  (Docket

11  No. 3724–2 at 7, 10–11.)  Additionally, Defendants noted that the California Department of

12  Corrections and Rehabilitation (CDCR) expects to double cell the EOP-GP inmates up to 141%

13  of design capacity.  (Docket No. 3747 at 11 n.4.)

14         Plaintiffs objected to the fact that CDCR expects to double cell EOP-GP inmates, and urged

15  the Court to adopt recommendations made by the special master's experts concerning increased

16  programming and out-of-cell time for the EOP-GP and EOP-ASU inmates.  (Docket No. 3733 at

17  10–17.)  Defendants replied that double celling EOP-GP inmates is not in and of itself

18  unconstitutional.  (Docket No. 3747 at 11–13.)  Defendants also replied that CDCR selected Stark

19  for its extensive amount of space in and outside of the housing units and that it intends to provide

20  sufficient programming for the EOP-GP and EOP-ASU inmates housed at Stark.  (Docket No.

21  3747–3 ¶¶ 6–7, 9.)

22         On January 4, 2010, this Court declined to approve Defendants' proposed Stark conversion

23  project, and ordered that Defendants file an amended plan that:  1) limits the population for that

24  facility to no more than 137.5% of the facility's design capacity; and 2) meets the concerns

25         _____

           [1]  Concurrent with this filing, Defendants filed a request for temporary relief from the
26  Court's January 4, 2010 order that they file by February 18, 2010, an amended proposal for the
    Stark conversion project so that they can evaluate alternative options to the project, and determine
27  whether a viable alternative option exists.  Should this Court grant Defendants' request for
    temporary relief, Defendants have asked it to continue the hearing on this motion for
28  reconsideration and relief for 90 days.

                                              5

1  identified by the *Coleman* special master.  (Docket No. 3761 ¶ 1.c.)  Based on the three-judge

2  court's "order[] [that] defendants . . . 'reduce the population of the CDCR's adult institutions to

3  137.5% of their combined design capacity' as a necessary prerequisite to the provision of

4  constitutionally adequate medical and mental health care," this Court held that it "will not

5  approve the Stark EOP conversion project as long as the project calls for a projected population in

6  excess of 137.5% of the facility's design capacity."  (*Id.* at 2:20–3:4)

7       On January 12, 2010, the three-judge court issued an *Order to Reduce Prison Population*.

8  (Docket No. 3767.)  The three-judge court's January 12, 2010 order reaffirmed the 137.5%

9  population cap set forth in its August 4, 2009 prisoner release order, and imposed a schedule by

10  which the population reductions must be achieved.  (*Id.* ¶ 1)  But the three-judge court stayed *sua*

11  *sponte* the effective date of the order pending the United States Supreme Court's review of any

12  appeal of the order.  (*Id.* ¶ 6.)  On January 19, 2010, Defendants appealed the three-judge court's

13  order to the Supreme Court on the grounds that the prisoner release order violates the PLRA.

14  (Docket No. 3772.)

15                          **<u>STANDARD OF REVIEW</u>**

16       Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a final

17  judgment or order if applying the judgment or order prospectively is no longer equitable.  Fed. R.

18  Civ. P. 60(b)(5).  Under Rule 60(b)(5), a court may modify or vacate a judgment or order if "a

19  significant change either in factual conditions or in law" renders continued enforcement

20  "detrimental to the public interest."  *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 384

21  (1992).  The party seeking relief bears the burden of establishing that changed circumstances

22  warrant relief, *id.* at 383, but once that party carries that burden, a court abuses its discretion

23  "when it refuses to modify an injunction or consent decree in light of such changes."  *Agostini v.*

24  *Felton*, 521 U.S. 203, 215 (1997).

25       Federal Rule of Civil Procedure 60(b)(6) provides that a court may relieve a party from an

26  otherwise final judgment or order for "any other reason that justifies relief."  Fed. R. Civ. P.

27  60(b)(6).  Rule 60(b)(6) affords courts the discretion and power to vacate judgments whenever

28  such action is appropriate to accomplish justice.  *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005)

1    (quoting *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 864 (1988)).  A movant

2    seeking relief under Rule 60(b)(6) is required to show "extraordinary circumstances" justifying

3    relief.  (*Id.* at 535.)  "Extraordinary circumstances" typically means that the movant is without

4    fault.  *Ackermann v. United States*, 340 U.S. 193, 195–97 (1950).

5

6                                            **ARGUMENT**

7    **A.    CONTINUED ENFORCEMENT OF THE POPULATION CAP IS INEQUITABLE.**

8            The Court should relieve Defendants from the January 4, 2010 order's requirement that

9    they amend their plan for the Stark conversion project to limit the population for that facility to no

10   more than 137.5% of design capacity.  After this Court issued its order, the three-judge court

11   issued and stayed its prisoner release order requiring Defendants to reduce the prison population

12   to 137.5% of design capacity, pending resolution of an appeal to the United States Supreme

13   Court.  In light of the three-judge court's stay, continuing enforcement of the population cap in

14   this Court would be inequitable.

15          This Court relied on the three-judge court prisoner release order as the primary basis for

16   requiring that Defendants limit the population at Stark to no more than 137.5% of design

17   capacity.  (Docket No. 3761 at 2:21–3:4.)  On January 12, 2010, however, the three-judge court

18   stayed the effective date of the prisoner release order pending the United States Supreme Court's

19   review of Defendants' appeal of the order under the PLRA.  A stay of an order suspends the legal

20   effect of the order until disposition of the appeal.  *Western Lighting Corp. v. Smoot-Holman Co.,*

21   352 F.2d 1019, 1020–21 (9th Cir. 1965) (in the absence of a stay pending appeal, the prevailing

22   party must act upon a district court's order or judgment).  Consequently, and to the extent that this

23   Court relied on the three-judge court's prisoner release order, the three-judge court's subsequent

24   order should stay this Court's order as well.  However, even if this Court did not rely on the

25   prisoner release order, the stay renders continued enforcement at this time of this Court's January

26   4, 2010 order detrimental to the public interest.  Requiring that Defendants amend their plan to

27   meet the population cap while the prisoner release order is stayed pending review by the United

28   States Supreme Court creates the possibility that the plans filed with the three-judge court and this

                                                  7

1   Court will be inconsistent.  Defendants planned, as part of their revised prisoner reduction plan, to

2   house inmates at Stark at 141% of design capacity.  Additionally, the Supreme Court may find in

3   Defendants' favor on the appeal.  Hence, equity and deference to the Supreme Court's pending

4   review warrant relief at this time from the January 4, 2010 order.

5       Accordingly, because Defendants have met their burden of establishing that changed

6   circumstances warrant relief from this Court's January 4, 2010 order concerning the population

7   cap at Stark, this Court should grant Defendants' motion for reconsideration.

8
9   **B.    DEFENDANTS SHOULD NOT BE REQUIRED TO AMEND THEIR PLAN TO
        REDUCE ADMISSIONS OR INCREASE OUT-OF-CELL TIME BECAUSE
10       DEFENDANTS' PLAN SATISFIES CONSTITUTIONAL REQUIREMENTS.**

11       Extraordinary circumstances exist here to grant Defendants relief from the requirement that

12  they submit a new plan that reduces admissions or increases out of cell time at Stark.  (Docket

13  No. 3761 at 2:15–17.)  These requirements bind Defendants to more than the constitutional

14  minimum, and enforcement of this order would be unjust.

15      Inmate access to mental health care is one component of a constitutionally compliant

16  mental health system, including available mental health beds.  *Coleman v. Wilson*, 912 F. Supp.

17  1282, 1308 (E.D. Cal. 1995).  However, prison authorities are alone vested with wide-ranging

18  deference in adopting and executing policies and practices concerning conditions of confinement.

19  *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).  This includes the medical treatment to be given to

20  inmates.  *Snow v. Gladden*, 338 F.2d 999, 1001 (9th Cir. 1964).  Moreover, courts are precluded

21  from approving or enforcing any "relief that binds prison administrators to do more than the

22  constitutional minimum."  *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000).

23      Although not entirely clear from this Court's January 4, 2010 order, Defendants believe that

24  the order requiring them to reduce admissions at Stark relates to Defendants' plan to double cell

25  inmates at that facility.  Requiring that Defendants amend their plan to reduce or eliminate any

26  amount of double celling binds Defendants to do more than the constitutional minimum.

27  Defendants' long-range mental health bed plan meets the constitutional requirement that they

28  provide *access* to mental health beds.  Additionally, Defendants have satisfied this Court's order

8

1   that they submit a long-range bed plan that meets the "current needs as identified in the Navigant

2   numbers." (Docket No. 3632 at 3:14–17; Docket 3724–2). And double celling in and of itself is

3   not unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Bell*, 441 U.S. at 541–42.

4   Thus, Defendants' plan does not run afoul of any constitutional requirements, and it is premature

5   to require that Defendants alter their plan to reduce or eliminate double celling. Any

6   constitutional analysis of Defendants' plan to double cell inmates must encompass the specific

7   circumstances of the application of a double cell policy. *Rhodes,* 452 U.S. at 348. Here, because

8   the specific circumstances of application of a double cell policy are not known, and cannot be

9   known until CDCR activates the program at Stark, the constitutional questions concerning

10   CDCR's policy on double celling are premature and not ripe for determination.

11      Likewise, requiring CDCR to increase the "amount of out of cell time for class members

12   housed in [the Stark] program," binds CDCR to do more than the constitutional minimum. (*See*

13   Docket No. 3761 at 2:15–17.) Defendants are unaware of any constitutional requirement that

14   they must commit to a standard regimen of programming hours and out-of-cell time for the EOP

15   inmates that they intend to house at Stark in 2014. The Constitution requires CDCR to provide

16   access to mental health care, but prison officials retain discretion to determine what that program

17   will look like (i.e., they retain discretion to decide what amount of programming hours and out-

18   of-cell time is appropriate). CDCR has demonstrated that it intends to provide sufficient staff and

19   programming to serve the EOP-GP and EOP-ASU population at Stark, and recognizes its

20   obligations to provide programming as outlined in the Mental Health Delivery System Program

21   Guide. (Docket No. 3747–3 ¶¶ 3, 6–7, 9.)

22      The Stark conversion project is set to be fully occupied in Fiscal Year 2013–14. (Docket

23   No. 3724–2 at 10–11, 44.) CDCR is in the early stages of planning the program for the EOP

24   inmates that it intends to house at Stark. (Docket No. 3747–3 ¶ 7.) The Stark program likely will

25   be affected by prison reduction measures—potentially eliminating the need to double cell the

26   EOP-GP inmates—and may be subject to budget impacting reductions. (Docket No. 2274–5 ¶ 6.)

27   The discretion to decide whether to double cell inmates, and how to appropriately provide

28

9

1    programming for them, is firmly vested with Defendants, and they should not be required to alter

2    their constitutional plan.

3         Accordingly, because Defendants have demonstrated "extraordinary circumstances" to

4    justify relief from this Court's January 4, 2010 order that they amend their plan for the Stark

5    conversion project to meet the concerns raised by the special master, this Court should grant

6    Defendants' motion for reconsideration.

7

                                    **CONCLUSION**

8

9         Under Rules 60(b)(5) and (b)(6), Defendants respectfully request that the Court reconsider

10   its January 4, 2010 order and relieve Defendants from the requirement that they amend their

11   proposal for the Stark project to:  1) limit the population for the facility to no more than 137.5%

12   of the facility's design capacity; and 2) meet the concerns identified by the special master.

13   Dated:  February 1, 2010                          Respectfully submitted,

14                                                     EDMUND G. BROWN JR.
                                                       Attorney General of California
15                                                     JONATHAN L. WOLFF
                                                       Senior Assistant Attorney General
16

17                                                     */s/  Debbie J. Vorous*

18                                                     DEBBIE J. VOROUS
                                                       Deputy Attorney General
19                                                     *Attorneys for Defendants*

20   CF1997CS0003

21

22

23

24

25

26

27

28