PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, CA 94710-1916
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
MARK R. FEESER, Bar No. 252968
315 Montgomery Street, 10th Floor
San Francisco, CA 94104-1823
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107-1389
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, CA 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

# INTRODUCTION

The *Coleman* class of prisoners with severe mental illness continues to face critical shortages of mental health treatment beds. Since at least 1998, this litigation has included long-range bed-planning efforts, and at least since that time, the efforts have been plagued by delay, with projects constantly being pushed just over the horizon into the indefinite future. On March 31, 2009, this Court issued one of a series of orders directing Defendants to develop concrete proposals to meet the long-range bed needs of the Plaintiff class. Order at 5:19-21, Docket No. 3556. Following a September 22, 2009 status conference and hearing regarding Defendants' long-range bed plan, the Court ordered Defendants to submit a detailed long-range plan including activation schedules with a date certain for completion of each of the projects in the plan. Order at 3:1-9, Docket No. 3686. The Court further ordered that "[t]he timetables for completion of each step described in the plan shall be developed in such a way that all projects in the long-range plan will be fully staffed and activated by the 2013 target date defendants have established." *Id.* at 3:9-11. Finally, Defendants were required to "identify any waivers of state law that may be required to complete the projects that compromise the long-range plan," though the "burden of requesting any such waiver shall be on plaintiffs." *Id.* at 3:16-19.

On November 6, 2009, Defendants filed their long-range bed plan, which included, among other things, the conversion of the Dewitt Nelson Juvenile Justice Center ("Dewitt Project"). Defs' Response to Court's September 24, 2009 Order that Defs File a Long-Range Bed Plan, Including Activation Schedules ("Defendants' Long-Range Bed Plan") at 9-11 of 68, Docket No. 3724-2. Defendants' Long-Range Bed Plan provided for a November 9, 2014 completion date for patient admissions for the Dewitt Project—nearly a full year past the 2013 target date the Court ordered them to meet. *Id.* at 51 of 68.

On November 30, 2009, Plaintiffs filed their response to Defendants' Long-Range Bed Plan, requesting, among other things, that the Court hold an evidentiary hearing regarding Defendants' failure to comply with the Court's Order to submit a long-range plan that included full activation by 2013. Docket No. 3733, at 5. Plaintiffs noted that Defendants had not demonstrated any efforts to treat the project as anything other than a business-as-usual state

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

procurement project, rather than what it really is: an emergency program designed to fill a life-threatening gap in mental health beds. For example, Defendants did not seek to use "Design-Build" authority for any of the long-range mental health projects, nor proposed any alternate strategy to meet the court-ordered deadline. *Id*.

On December 11, 2009, Defendants responded to Plaintiffs' request for an evidentiary hearing. Docket No. 3747. While Defendants agreed to seek Design-Build authority to accelerate activation of the Consolidated Care Center project, they rejected Design-Build for the Dewitt Project, claiming it was not suitable for renovation construction projects and therefore would not result in acceleration of the project. *Id.* at 5-7. Instead, Defendants noted that they had identified state laws that lengthened the construction process, and blamed their failure to meet the 2013 deadline on the fact that Plaintiffs had not requested state law waivers in response to Defendants' Long-Range Bed Plan. *Id.* at 6. On December 18, 2009, Plaintiffs filed a Reply, renewing their request that Defendants be ordered to take all necessary steps to accelerate the Dewitt Project to meet the 2013 deadline, including the use of Design-Build, and for an evidentiary hearing. Docket No. 3754, at 5-6.

On January 4, 2010, this Court denied Plaintiffs' request for an evidentiary hearing, but entered an Order approving the Dewitt Project "subject to submission within thirty days of a new activation schedule for this project that reflects patient admissions completed to full occupancy by 2013." Order at 4:14-16, 5:17, Docket No. 3761. On February 1, 2010, Defendants filed a Notice of Motion and Motion for Reconsideration and Relief Re: the Dewitt Conversion Project ("Motion for Reconsideration"), seeking relief from the Court's January 4, 2010 Order pursuant to Federal Rule of Civil Procedure 60(b)(6). Docket No. 3791. Plaintiffs hereby oppose Defendants' Motion for Reconsideration.

## ARGUMENT

The Dewitt Project represents 425 badly needed Enhanced Outpatient Program ("EOP") beds, which are crucial to addressing the staggering projected gap per Navigant's Spring 2009 Projections for Calendar Year 2013. Moreover, Navigant's more recent Fall 2009 Projections demonstrate that the 2013 gap is likely to be significantly higher, reporting that the "FY2009

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

Mental Health Services Delivery System (MHSDS) population, excluding CCCMS, is 0.3% higher than that estimated for the same year in the Spring 2009 study. This grows to 2.4% higher by 2014." Navigant Fall 2009 Mental Health Bed Need Study at 3 (January 2010), Exhibit A to Declaration of Mark R. Feeser in Support of Plaintiffs' Opposition to Defendants' Motion for Reconsideration and Relief Re: Dewitt Conversion Project ("Feeser Decl."). And this says nothing of the intervening gap in MHSDS beds – in particular, EOP beds – during the nearly four years between now and the 2013 target for activation of Defendants' Long-Range Bed Plan. *See* Docket No. 3609, at 21 (Table 2) (illustrating significant remaining gap in 2010/11 after Defendants' Short and Intermediate-Range Plan is implemented). The activation plan for the Dewitt Project should treat 2013 as the outer limit for completion. Yet rather than committing themselves to considering and implementing all processes and steps necessary to complete the Dewitt Project by 2013, Defendants have simply thrown their hands in the air.

Defendants' Motion for Reconsideration is completely without merit both procedurally and substantively. It must be rejected. First, Defendants' motion merely rehashes arguments previously raised before this Court when it entered the January 4, 2010 Order and does no more than demonstrate disagreement with this Court's prior Order. Second, as before, Defendants have failed to demonstrate that they cannot complete activation of the Dewitt Project in 2013 absent a waiver of state law, and thus cannot meet their burden to show extraordinary circumstances justifying relief under Federal Rule of Civil Procedure 60(b)(6). Defendants must be required to utilize any and all possible methods of project acceleration at their disposal, including the use of the Design-Build method, phased construction, and incentive contracts, to accelerate the timeframe for this project and achieve activation by 2013. Accordingly, Plaintiffs request that Defendants' Motion for Reconsideration be denied.

## I.    STANDARD OF REVIEW

Defendants' Motion for Reconsideration seeks relief pursuant to Federal Rule of Civil Procedure 60(b), which generally provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" under certain enumerated circumstances. However, under Rule 60, "[a] party seeking reconsideration must show more

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Fresquez v. Adams*, 2010 U.S. Dist. LEXIS 16031, at *5 (E.D. Cal. Feb. 23, 2010) (internal quotation marks omitted); *e.g.*, *Buzayan v. City of Davis Police Dep't*, 2009 U.S. Dist. LEXIS 30506, at *3 (E.D. Cal. Mar. 27, 2009); *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001). Accordingly, "[t]o succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Fresquez*, 2010 U.S. Dist. LEXIS 16031, at *5.

More specifically, Defendants seek relief under Federal Rule of Civil Procedure 60(b)(6), a catch-all provision that provides that a court may relieve a party from a final order for "any other reason that justifies relief." As Defendants' Motion for Reconsideration concedes, a "movant seeking relief under Rule 60(b)(6) is required to show 'extraordinary circumstances' justifying relief." Docket No. 3791, at 4:28-5:2 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)). As the Ninth Circuit has observed "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007) (internal quotation marks omitted).[1] Defendants' Motion for Reconsideration fails to demonstrate extraordinary

---

[1] Defendants also cite *Ackermann v. United States*, 340 U.S. 193 (1950), for the proposition that extraordinary circumstances under Rule 60(b)(6) "typically means that the movant is without fault." Defendants' Motion for Reconsideration at 5. *Ackermann*, however, announces no such rule. The rule actually announced by *Ackermann* supports denial of Defendants' motion. In *Ackermann,* the Court affirmed denial of a Rule 60(b)(6) motion because the record showed that the moving party had every opportunity to avail himself of the steps needed to avoid the hardships imposed by final operation of the judgment. The Court in *Ackermann* distinguished other Rule 60(b)(6) cases where the moving party had no other opportunity for relief. The Court summarized the contrast thusly: "The comparison strikingly points up the difference between no choice and choice . . . ." *Id.* at 202. Here, as in *Ackermann,* the moving party has a choice between availing itself of reasonable steps needed to avoid the hardship it asserts. Defendants here have means available to meet the 2013 deadline, a few of which are reviewed in this opposition--Design-Build construction, incentive payments, and phased construction. That Defendants are making a choice not to

4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

1 circumstances justifying relief and should be denied.

## II. DEFENDANTS' MOTION FOR RECONSIDERATION MERELY REHASHES ARGUMENTS MADE BEFORE THE COURT IN ENTERING ITS JANUARY 4, 2010 ORDER

Defendants have failed to carry their burden of demonstrating extraordinary circumstances justifying relief from the 2013 deadline.  The crux of Defendants' argument is that absent a waiver of state laws, and in particular the California Environmental Quality Act review process ("CEQA"), they cannot accelerate the Dewitt Project to complete activation prior to November 9, 2014.  Defendants' Motion for Reconsideration at 5-6.  Accordingly, Defendants argue, because Plaintiffs have not requested a waiver of state law, and the Court has not relieved Defendants' obligations under state law, they are "without fault for the situation." *Id.* at 5.  As discussed below, this argument fails, as it assumes that there are no methods to accelerate the Dewitt Project, absent a state law waiver.

Defendants' argument is exactly the same as raised in opposing Plaintiffs' request for an evidentiary hearing regarding Defendants' compliance with the Court's Order to submit a plan with activation dates in 2013.  Docket No. 3747, at 6-7.  Similarly, all of the evidence offered in support of Defendants' current Motion for Reconsideration was previously before the Court when it entered its January 4, 2010 Order, i.e., the activation schedule Defendants submitted with their Long Range Plan (Docket No. 3724-2) and the Declaration of Deborah Hysen, filed in Response to Plaintiffs' Response to Defendants' Long-Range Bed Plan ("Hysen Decl.") (Docket No. 3747-2).  *See* Defendants' Motion for Reconsideration at 5-6.  Accordingly, as Defendants' Motion for Reconsideration is nothing more than a "recapitulation of the … arguments considered by the court before rendering its original decision," it fails to meet the standard for relief under Rule 60(b).  *Fresquez*, 2010 U.S. Dist. LEXIS 16031, at *5.

---

avail themselves of these means does not justify Rule 60(b)(6) relief.  That is the rule of *Ackermann.*

5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

## III. DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT THEY ARE UNABLE TO ACCELERATE THE DEWITT PROJECT ABSENT A WAIVER OF STATE LAW

Even if Defendants' Motion for Reconsideration amounted to more than a mere recapitulation of the pleadings previously considered by this Court in entering its January 4, 2010 Order, Defendants have failed to set forth facts or law, new or old, "of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* Defendants' assertion that they cannot accelerate this project absent a waiver of state law, and in particular the CEQA laws, remains unsupported in light of Defendants' unjustified refusal to consider all the tools available under state law to accelerate this project.

Defendants' unjustified refusal to accelerate activation of the Dewitt Project is particularly evident with regard to the possible use of the Design-Build method of project delivery. Design-Build is a method of project delivery that combines and vests responsibility for a project within a single entity, and is generally associated with significant reductions in both the time and cost of completing a large construction project. Declaration of Richard L. Engler, AIA in Support of Plaintiffs' Opposition to Defendants' Motion for Reconsideration and Relief Re Dewitt Conversion Project ("Engler Decl.") at ¶¶ 6-9. CDCR has legal authority to use Design-Build without a waiver of state law following enactment of Senate Bill No. 4 ("SB 4") in 2009, which provides authority to the Secretary of the California Department of Corrections and Rehabilitation to use the Design-Build procurement process for contracting and procuring a state prison facility, up to a total of five projects, subject to approval by the Department of Finance. S.B. 4, 2009-10 Leg., 2d Extraord. Sess. (Cal. 2009). Defendants have presented evidence that there are remaining available projects under SB 4, and therefore no statutory barriers to the use of Design-Build for the Dewitt Project. *See* Exhibit 1 to Hysen Decl., Docket No. 3747-2 (December 7, 2009 letter from Department of Finance noting only two of the five permitted Design-Build projects have been allocated). Moreover, numerous Design-Build firms in California have the requisite expertise to complete the Dewitt Project using the Design-Build method. Engler Decl. at ¶ 10. The use of Design-Build for the Dewitt Project could reasonably be expected to accelerate activation of the Dewitt project by as much as a full year, and would

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

permit Defendants to meet their obligations under the Court's January 4, 2010 Order. *Id.* at ¶ 26.

Despite the potential benefits and availability of Design-Build for the Dewitt Project, Defendants have repeatedly and unjustifiably rejected the use of Design-Build, claiming that it is not suitable for renovations to existing facilities. Docket No. 3747-2, at ¶ 8. This bald assertion is a red herring, and is belied by the fact that Design-Build has been used successfully for numerous public renovation projects, including the renovation of the U.S. Pentagon, the renovation and construction of the Sacramento City Hall Complex, and even renovations to CDCR facilities as part of the *Plata* Receiver's construction projects. *Id.* at ¶¶ 11-12, 18-19. It is true that in contrast to new construction, renovations to an existing facility carry an increased risk of change orders due to unforeseen issues that may arise during construction. *Id.* at ¶ 13. However, the Design-Bid-Build method (under which Defendants propose to complete the Dewitt Project) is not significantly superior to the Design-Build method for reducing possible delays associated with unforeseen conditions. *Id.* Further, it is standard practice in public facility design and construction to include allowance provisions in a Design-Build or Design-Bid-Build contract in order to properly account for and allocate the risk of unforeseen conditions. *See id.* at ¶ 14. Accordingly, although the Dewitt Project includes renovations to an existing facility, it is nevertheless an appropriate project and would benefit from the use of Design-Build. *Id.* at ¶¶ 23-26.

To be clear, Design-Build is just one possible method to accelerate activation of the Dewitt Project. Defendants should also consider using incentive contracts, which reward contractors who complete design or construction by predetermined benchmarks, and which have been successful in large state public work projects. *Id.* at ¶ 27. Further, Defendants should consider using a "phased construction" approach to the Dewitt Project. *Id.* at ¶ 28. Phased construction separates certain components of a construction project in order to permit various components to be accelerated or to proceed at the same time. *Id*. There are no doubt additional steps that Defendants can take to accelerate this project. *Cf. id.* at ¶ 29 (to the extent CDCR is using existing designs for housing units, production of Preliminary Plans should require less time to complete than the nearly eight months currently anticipated).

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

The Plaintiff class continues to languish in inadequate and unconstitutional conditions while these construction projects are completed. Defendants must use any and all methods to accelerate activation of the Dewitt Project. As Defendants have failed to demonstrate that the Dewitt Project cannot be activated in 2013 absent a state law waiver, Defendants' Motion for Reconsideration should be denied.

**IV. TO THE EXTENT DEFENDANTS' LONG-RANGE BED PLAN PROJECTS WILL NOT BE ACTIVATED UNTIL 2014, DEFENDANTS SHOULD BE REQUIRED TO MEET THE CURRENT NAVIGANT PROJECTED NEED FOR THAT YEAR**

While Plaintiffs strongly oppose Defendants' Motion for Reconsideration, in the event Defendants are not required to submit an activation schedule for Dewitt reflecting full activation by 2013, Defendants must be required to meet the 2014 mental health bed need as determined by Navigant Consulting in its Fall 2009 Mental Health Bed Need Study. Defendants' Long-Range Bed Plan purports to be "designed to meet the mental health bed need projections to 2013 using Navigant Consulting Spring 2009 population projections," which show a combined 2013 shortage of 1,823 male EOP-General Population ("EOP-GP") and EOP-Administrative Segregation Unit ("EOP-ASU") beds. Docket No. 3724-2, at 6, 8 of 68 (Table 1). The Dewitt Project represents 425 badly needed EOP-GP and EOP-ASU beds, nearly a fourth of the total EOP beds included in Defendants' Long-Range Plan. *Id.* at 10 of 68 (Table 4) and 12 of 68 (Table 7). Yet, Defendants' Long-Range Bed Plan does not contemplate completion of patient admissions to the Dewitt Project until November 9, 2014, nearly a full year past the 2013 target. Docket No. 3724-2, at 51 of 68.

As Plaintiffs have previously noted in opposing Defendants' Short-term and Intermediate Bed Plan, the total MHSDS bed need – and the EOP bed need in particular – is not static, and increases over time. Docket No. 3609, at 20-21. Demand for EOP beds not only increases from 2013 to 2014, but as the most recent Fall 2009 Navigant Projections show, demand is expected to increase even as compared to the Spring 2009 projections for the same period. Ex. A to Feeser Decl. at 13, 34. The chart below demonstrates how the men's mental health bed need increases from Defendants' original target for 2013 to the projected bed need in 2014 per Navigant's Fall

8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

2009 Projections – an increase of 328 beds, or 4.3 percent above the 2013 target. The demand for EOP-GP and EOP-ASU beds similarly increases by a combined 172 beds, or 3.2 percent above the 2013 target.

| Table 1. Increased Bed Need in 2014 | | | | |
|---|---|---|---|---|
| Level of Care | Spring 2009 Navigant Projection for 2013 | Fall 2009 Navigant Projection for 2014 | Variance | Percentage Increase |
| EOP-GP | 4,763 | 4,903 | 140 | 2.9% |
| EOP-ASU | 675 | 707 | 32 | 4.7% |
| PSU | 546 | 570 | 24 | 4.4% |
| MHCB | 470 | 496 | 26 | 5.5% |
| Acute | 193 | 224 | 31 | 16.1% |
| ICF | 301 | 301 | - | 0.0% |
| ICF-H | 624 | 699 | 75 | 12.0% |
| **Total** | **7,572** | **7,900** | **328** | **4.3%** |

To the extent the Dewitt Project will not be fully activated until 2014, not only will a tremendous gap in EOP-GP and EOP-ASU beds remain for another year, but Defendants' Long-Range Bed Plan will be inadequate once completed. Accordingly, to the extent Defendants are otherwise not required to develop an activation schedule for the Dewitt Project reflecting full activation by 2013, Plaintiffs respectfully request that that the Court require Defendants to revise their Long-Range Bed Plan to meet the current projected bed need for 2014.

## CONCLUSION

Defendants' Motion for Reconsideration fails to present any new evidence regarding the inability to accelerate activation of the Dewitt Project and fails to meet their burden to demonstrate extraordinary circumstances justifying relief under Rule 60(b)(6). Plaintiffs respectfully request that the Motion be denied. Further, to the extent the Court is inclined to grant the motion or otherwise relieve Defendants of the obligation to submit an accelerated activation schedule for the Dewitt Project, Plaintiffs request that Defendants be ordered to revise

9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]

1  their Long-Range Bed Plan to meet the projected need for the year in which it is slated to be
2  completed.

4  Dated: March 11, 2010                                  Respectfully submitted,

5                                                         ROSEN, BIEN & GALVAN, LLP

6                                                         By: */s/ Mark R. Feeser*
7                                                             Mark R. Feeser
                                                              Attorney for Plaintiffs

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND RELIEF RE: DEWITT CONVERSION PROJECT - CASE NO. CIV S 90-0520 LKK-JFM

[356353-3]