1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11            Plaintiffs,              No. 2:-90-cv-0520-LKK-JFM (PC)

12       vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14
             Defendants.              ORDER
15   _____/

16            This matter is before the court on the Special Master's Report and

17   Recommendations on His Expert's Report on Suicides Completed in the California Department

18   of Corrections and Rehabilitation in Calendar Year 2007 filed December 24, 2009 (hereafter

19   December 24, 2009 Report and Recommendations).  Therein, the special master recommends

20   orders based on recommendations contained in the Report on Suicides Completed In the

21   California Department of Corrections and Rehabilitation in Calendar Year 2007, filed September

22   17, 2009, (hereafter the 2007 Suicide Report).  Defendants interpose several objections to the

23   special master's report and recommendations.  Plaintiffs have filed an opposition to defendants'

24   objections, and defendants have filed a reply in support thereof.

25            The special master recommends the following orders:

26   /////

                                              1

1.  Defendants shall specifically identify inmates' known and/or suspected medical problems and medications within these inmates' mental health treatment plans, rather than merely allude to them by reference to other records.

2.  CDCR and DMH shall communicate and collaborate with each other to ensure that the highest level of care provided by DMH to CDCR inmates is given to any inmate who has been determined to need it.

3.  Defendants shall accord priority to access to inpatient care for CDCR inmates at DMH facilities, particularly for Level III and Level IV inmates.  This involves requiring clinical staff to properly assess suicide risk factors for inmates experiencing changes in mental health functioning, particularly on placement in administrative segregation or other single-cell housing.  A vital component of this process is appropriate crisis-level service in treatment settings such as MHCBs, or limited treatment within OHUs, until transfers to DMH facilities can be achieved.  DMH must be held accountable for its decisions on admissions or rejections and cannot be permitted to avoid transparency behind a pretext of patient "confidentiality."

4.  Defendants shall fully and timely implement the suicide prevention and review processes that are already in place, at both the institutional and department levels, and shall give this priority. This includes incorporation of revised policy and procedural guidelines and court orders into these processes.  It also entails the identification of deficiencies at the facility and systemic levels, appropriate follow-up of corrective action plans, and submission of documentation to the <u>Coleman</u> special master on the outcomes of investigations of staff misconduct, negligence, and error.  This process must include not only training but supervision and appropriate supervisory action regarding staff performance.

December 24, 2009 Report and Recommendations at 2.  The recommended orders are based on several findings in the 2007 Suicide Report, including:

- The CDCR inmate suicide rate in 2007 continued "CDCR's pattern of exceeding the national prison suicide rate."

- The 2007 CDCR inmate suicide rate was "higher by 1.5 percent than the CDCR average annual suicide rate per 100,000 inmates for the preceding nine years."

- "In 82 percent of the suicide cases in 2007, there was at least some degree of inadequacy in assessment, treatment, or intervention, for the highest rate of inadequacy in these areas in the past several years."

1
2
3
4
5

- • In 79 percent of cases, deadlines in completion and submission of required documentation of suicides were missed, and some reporting was not completed at all by the time the 2007 Suicide Report was filed.

- • Although three suicides were completed in Department of Mental Health (DMH) facilities, DMH refused to provide complete documentation of quality improvement and other action plans to the special master.

6  2007 Suicide Report at 1-2.

7          At the outset, the court notes that the recommended orders are almost identical to

8  the four recommendations contained in the 2007 Suicide Report, which was filed on September

9  17, 2009.  Id. at 18-19.  On October 1, 2009, defendants filed a motion to modify that report.

10  Defendants did not object to the substance of any of the recommendations.  Defendants did,

11  however, object to the request by plaintiffs, made in opposition to the motion, that those

12  recommendations be made orders of this court; defendants contended then only that none of the

13  recommendations meets the criteria for injunctive relief set forth in 18 U.S.C. § 3626.  See

14  Defendants' Reply Brief, filed November 6, 2009, at 11.  By order filed November 23, 2009,

15  defendants' motion was denied.  Plaintiffs' request that the recommendations in the 2007 Suicide

16  Report be made orders of this court was also denied, without prejudice, based on the court's

17  determination that requests for such orders should come, if at all, from the special master.  Order

18  filed November 23, 2009, at 14.  On December 24, 2009, the special master filed the instant

19  request.  Defendants now raise again their objection that the recommended orders do not meet

20  the criteria for injunctive relief set forth in 18 U.S.C. § 3626, and they raise additional objections

21  to adoption of some of the recommendations as orders of the court.

22          Suicide prevention and policy has been monitored by the Coleman special master

23  since late 1998, see Order filed Dec. 22, 2000, at 1 n.1, and the special master has filed annual

24  reports on completed inmate suicides in the California Department of Corrections and

25  Rehabilitation (CDCR) since October 2000.  The first Suicide Report, filed on October 10, 2000

26  as part of the Sixth Monitoring Report, examined "completed suicides in the California

Department of Corrections (CDC) from October 1998 through December 1999" and included

several observations and recommendations.  Coleman Suicide Report, October 6, 2000,

appended to Sixth Monitoring Report, at 1, 5-6.  All of the observations and recommendations in

that report were adopted by this court in an order filed December 22, 2000.  See Order filed

December 22, 2000, at 4.

   Since the first report, the special master's experts have conducted annual reviews

of completed inmate suicides, and their reports have been filed with the court either as part of the

special master's monitoring reports or as separate stand alone reports.  The 2007 Suicide Report

is the most recent of these reports.  In addition, the special master has filed several other reports

and recommendations related to suicide prevention and policy.  Many of the recommendations

contained in these reports have become orders of this court.

   The issues undergirding the recommendations before the court have been the

subject of recommendations from the special master several times over the past decade.  For

instance, the need for adequate consideration of information available in the medical records of

Coleman class members has been the subject of numerous observations and recommendations in

Suicide Reports filed by the special master.  In the 2004 Suicide Report, filed May 9, 2006, the

special master's expert observed that "[t]he failure of clinicians to make use of available

information to ensure that inmates are fully and appropriately screened, assessed and treated

remained a dominant problem.  In too many cases, completed suicides occurred when

information in a UHR [Unit Health Record] or central file, had it been reviewed by mental health

clinicians during interviews with inmates, might have alerted mental health staff to inmates'

potential for suicide."  2004 Suicide Report at 10.  Similar observations were made in the 2005

and 2006 Suicide Reports.  See 2005 Suicide Report, filed November 26, 2007, at 12; 2006

Suicide Report, filed September 12, 2008, at 10.  On July 31, 2007, the special master filed a

report prepared by his psychiatric experts summarizing their review of completed suicides by

CDCR inmates from 1999 through 2004.  That report also identifies the failure of clinicians to

1    "review fully and carefully available documentation, such as health and classification records, for

2    indices of prior suicidal activity or ideation" among "clinical practices . . . that ought to be

3    addressed."  Special Master's Psychiatric Experts' Review of Completed Suicides in the

4    California Department of Corrections and Rehabilitation in Calendar Years 1999 through 2004,

5    filed July 31, 2007 (hereafter Six-Year Suicide Report), at 9.

6            The need for effective communication and collaboration between CDCR and

7    DMH to provide Coleman class members with access to necessary levels of DMH care has also

8    been the subject of repeated observations and recommendations by the special master.  Similarly,

9    defendants' obligation to provide "timely access to DMH inpatient placements, particularly for

10   Level III and Level IV inmates," 2004 Suicide Report at 11, has been the subject of numerous

11   recommendations by the special master and his experts.  In the Six-Year Suicide Report, the

12   special master's experts observed that three suicides in DMH facilities in 2001 revealed "the

13   need for better coordination and cooperation in the responses of both agencies."  Six-Year

14   Suicide Report at 7.  The Six-Year Suicide Report highlighted, inter alia, "[t]he failure of clinical

15   staff to refer potentially suicidal prisoners to programs with more intensive monitoring and care"

16   and "[t]he provision of prompt and adequate access to higher levels of monitoring and care to

17   prisoners identified as potentially suicidal" among the items to be addressed by defendants.  Id.

18   at 9.  In the 2003 Suicide Report the special master's expert reported that "74.2 percent of

19   suicides completed in 2003 involved some measure of inadequate treatment or intervention"

20   including "lapses in communication and inattention to documented concerns about the need for

21   an assessment or placement in higher level of care of individuals demonstrating significant

22   mental illness or past suicidal behavior."  2003 Suicide Report, filed April 28, 2005, at 7.  In the

23   2005 Suicide Report, the special master's expert noted the need to repeat and to implement the

24   recommendation that there is a "need for clinicians to monitor suicidal inmates more closely and,

25   where appropriate, aggressively refer decompensating suicidal inmates, especially those at Level

26   /////

1  III and IV custody levels, to DMH programs." 2005 Suicide Report at 14.  A similar

2  recommendation was made in the 2006 Suicide Report.  See 2006 Suicide Report at 12-13.

3          Finally, since 2001, when defendants were ordered to implement their Suicide

4  Reporting and Review Policy, the special master's experts have repeatedly identified the need for

5  full implementation of these policies and for timely production of documents necessary to review

6  completed suicides.  See 2000 Suicide Report at 7; 2003 Suicide Report at 10-11; 2004 Suicide

7  Report at 11; Six-Year Suicide Report at 9; 2005 Suicide Report at 13-14; 2006 Suicide Report

8  at 12.

9          Most of the foregoing matters have also been the subject of orders of this court.

10  The second and third recommendations are focused at the ongoing struggle to provide Coleman

11  class members with access to necessary levels of mental health care, particularly inpatient care.

12  All inpatient mental health care for Coleman class members is provided in DMH facilities, either

13  at state mental hospitals or in units operated by DMH at several California prisons.  The shortage

14  of available inpatient beds, particularly for Level IV inmates, is extant in this record and has been

15  the subject of numerous court orders to date.  In addition, several orders have directed defendants

16  to provide the special master's experts with documents related to the suicide review process.  See

17  Order filed June 13, 2002 at 2-3; Order filed January. 12, 2004 at 3; Order filed June 10, 2005 at

18  2.[1]

19          The increase in both the inmate suicide rate and the percentage of suicide cases

20  with "at least some degree of inadequacy in assessment, treatment, or intervention" is deeply

21  troubling.  The fundamental task at hand is for defendants is to take all steps necessary to reduce

22  ────────────

23      [1]  Defendants object on several grounds that DMH should not be bound by the order filed
June 10, 2005.  Defendants have not adequately briefed the question of whether a subsequently

24  joined party is bound by existing court orders following such joinder.  Nonetheless, the court will
direct the DMH defendants to meet and confer with the special master concerning production of

25  information essential to the special master's suicide review process and to develop, if necessary,
appropriate policies and procedures for such production.  This shall take place within the one

26  hundred and twenty day review period set by this order.

1   both the inmate suicide rate and the inadequacies in assessment, treatment and intervention found

2   in an unacceptably high percentage of completed suicides.  As noted above, most of the issues for

3   which orders are presently requested by the special master have been the subject of repeated

4   recommendations by the special master, and some are already the subject of existing court orders,

5   yet both the suicide rate and the percentage of suicides with some degree of inadequacy in

6   assessment, treatment or intervention are rising.  Before this court enters any further orders

7   directed at the problems of inmate suicides, both the CDCR defendants and the DMH defendants

8   will be directed to work with the special master to review all suicide prevention and review

9   policies, as well as any other relevant policies and practices, and the implementation of such

10  policies at all institutions, and to identify any modifications to such policies and practices or

11  implementation thereof that may be necessary to address the problem of inmate suicides.

12          In accordance with the above, IT IS HEREBY ORDERED that:

13          1.  The special master's December 24, 2009 recommendations are not adopted at

14  this time;

15          2.  Over the next one hundred and twenty days, under the guidance of the special

16  master, defendants shall review all suicide prevention policies and practices, all suicide review

17  and reporting processes, and the implementation of such policies, practices and processes.  As

18  part of this review, defendants shall identify any and all specific modifications to their suicide

19  prevention policies and practices, their suicide review and reporting processes, and the

20  implementation thereof as may be required to address the problem of inmate suicides.  Within

21  forty-five days thereafter the special master shall report to the court on the foregoing review.

22          3.  DMH defendants shall meet and confer with the special master concerning

23  production of information essential to the special master's suicide review process and shall

24  /////

25  /////

26  /////

1   develop, if necessary, appropriate policies and procedures for such production.  This shall take

2   place within the one hundred and twenty day review period set by this order.

3   DATED:   April 14, 2010.

4

5

6                                                    LAWRENCE K. KARLTON
7                                                    SENIOR JUDGE
                                                     UNITED STATES DISTRICT COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

8