IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,
    Plaintiffs

vs.                          No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER,
et al.
    Defendants
_____/

## SPECIAL MASTER'S REQUEST FOR THE APPOINTMENT OF ADDITIONAL STAFF

Pursuant to paragraph B7 of the December 11, 1995 Order of Reference in the above-captioned matter, the Special Master requests the appointment of Steven Raffa, Esq. and Kristina Hector, Esq., to the Special Master's staff as monitors. The reasons for this request are set forth in the accompanying memorandum.

Mr. Raffa and Ms. Hector are to be compensated at the rate of two hundred thirty five dollars ($235.00) per hour for their work, and at the rate of ninety dollars ($90.00) per hour for travel, plus reasonable expenses.

                                              Respectfully submitted,

                                              Matthew A. Lopes, Jr.
                                              Special Master

June 17, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,
    Plaintiffs

vs.                                                  No. CIV S-90-0520 LKK JFM P

ARNOLD SCHWARZENEGGER,
et al.
    Defendants
_____ /

## MEMORANDUM IN SUPPORT OF SPECIAL MASTER'S REQUEST FOR THE APPOINTMENT OF ADDITIONAL STAFF

Pursuant to paragraph B7 of the December 11, 1995 Order of Reference in the above-captioned matter, the Special Master requests the court's approval of his request for the appointment of two monitors to his staff. During the past three years, the Special Master's staff has undergone a loss of experienced staff upon the retirements of the preceding *Coleman* Special Master Michael Keating, the Special Master's original psychiatric expert Dennis Koson, M.D., the resignation of monitor Virginia Morrison, Esq., to assume the post of deputy special master in matter of *Valdivia, et al v. Schwarzenegger*, No. 2:94-cv-671; and the resignation of monitor Mary Joy Spencer, Esq.[1] During the same period, and in keeping with the dynamic history of the *Coleman* case, the demands upon the Special Master have expanded, resulting in additional and more varied projects that need to be done in order to carry out the Special Master's

---

[1] On April 2, 2009, William F. Alvarez, Ph.D., was appointed to the Special Master's staff as an expert.

1

charge. The following is a summary, although by no means an exhaustive one, of current responsibilities of the mastership.

**Duties and Responsibilities of the *Coleman* Special Master**

- **Prison Monitoring and Reporting to the Court**

The core function of the Special Master's staff of monitors and experts is their regular twice-yearly on-site examination of mental health care and related matters at 28 of the 33 CDCR institutions. The remaining five institutions are evaluated by review of voluminous documentation provided by these institutions on their compliance with *Coleman* Program Guide standards. Each on-site visit lasts three to four days and is conducted by a team of two to four mental health experts and monitors. The number of team members and the lengths of the visits vary according to the individual institutions' missions and mental health programs. The number and complexity of matters which these teams must examine has expanded over time, with emerging problematic areas and court orders in response to those issues. The basic monitored areas are institutional census, mental health staffing, quality assurance, medication management, inmate sexual misconduct, suicide prevention, and access to higher levels of care. Among the added areas which the teams monitor are use of force against mental health caseload inmates, the defendants' program for providing care to EOP inmates who are in reception centers while awaiting transfers to hub institutions, the defendants' compliance with their plan to reduce suicides for inmates in administrative segregation, and institutional referrals to DMH care in the aftermath of the recent mental health assessment and referral project (MHARP) (*see* discussion below). Findings made during these site visits are then compiled into a monitoring team report or field report to the Special Master for each

2

institutional site visit. These reports have to provide the Special Master with all of the data and information he needs to prepare and submit a comprehensive report to the court on all 33 CDCR institutions at the end of each monitoring period, as required by court order. The Special Master's staff then distills the important information from the field reports into a comprehensive yet readable status report to the court, discerning trends both positive and negative in the state of the mental health programs within the institutions. From these conclusions, the Special Master then determines what recommendations he will make to the court for any necessary orders. Prompt and accurate reporting to the court for each monitoring period is no small feat, given the size and complexity of CDCR and the amount of information that has to be gathered and analyzed.[2] In addition, as part of their monitoring duties, the Special Master's experts prepare and submit individual inmate case reviews of the care provided to selected *Coleman* caseload inmates. These case reviews accompany the Special Master's regular monitoring reports to the court. The size of a typical monitoring report, including case reviews as well as the Special Master's summary findings, observations, and recommendations to the court, may approximate 600 pages.

- **Coordination with the *Plata* Receivership**

Apart from the regular monitoring and reporting activities, the court-ordered coordination process of the past three years with the *Plata* receivership[3], the *Perez* dental case[4], and the *Armstrong* disabilities case[5] continues. This process requires the Special

---

[2]Normally, there are two monitoring rounds per year, although only one monitoring round was conducted in 2009 because much of the Special Master's resources were absorbed by special projects and intensive reviews ordered by the court to address particularly acute problem areas. *See* Order filed January 27, 2010.
[3] *Plata v.* Schwarzenegger, No C01-1351 (N.D. Cal.)
[4] *Perez v. Tilton*, No. C05-05241 (N.D. Cal.)
[5] *Armstrong v. Schwarzenegger*, NO C94-23-7 (N.D. Cal.)

3

Master to attend coordination meetings and work with representatives and staff on the other coordinating cases to avoid working at cross-purposes or duplicating efforts, pool their knowledge and resources, and ultimately to resolve common or intertwined issues among these cases. A wide variety of issues have been, and continue to be, the subject of coordination efforts. Among them are improvement in medication management and performance audits within the institutions, the role of nursing staff, retrofitting of mental health crisis beds to comply with the Americans with Disabilities Act, construction (both new and upgraded), use of seclusion and restraints, implementation and use of the Disability and Effective Communication System (DECS) for scheduling of medical and mental health appointments and provision of necessary support services to disabled inmates, use of appropriate therapeutic modules and/or alternatives in mental health treatment settings, implementation and use of electronic treatment records, and integration of a new pharmacy/medication administration records system throughout CDCR prisons.

- **Short-Term, Intermediate, and Long-Range Bed Construction**

Members of the Special Master's team also work on the various short-term, intermediate and long-range bed projects for *Coleman* class members. Some of these projects have been ordered by the *Coleman* court; others are joint projects with the *Plata* Receiver and include the DeWitt and Stark projects and the receiver's plan for an eventual consolidated care center for both medical and mental health inmate-patients. Team members work with CDCR and the *Plata* Receiver's staff in this area, attending planning meetings and doing site examinations for fitness of these projects to provide housing and programming to *Coleman* plaintiff class members. The Special Master and

4

his team work to facilitate negotiated agreements between the parties so that these construction projects may proceed toward completion as expeditiously as possible.

- **Mental Health Assessment and Referral Project, and Follow-Up Monitoring**

In early 2009, the lingering problem of lack of access for CDCR inmates to in-patient care in facilities of the Department of Mental Health led to a court order that this problem be addressed and that necessary referrals and admissions to DMH be facilitated without further undue delay. As a result, the Special Master and his team designed and instituted the Mental Health Assessment and Referral Project or MHARP. This entailed on-site participation by a number of the Special Master's experts and monitors in evaluations of 2,016 inmates at a number of different institutions for referral to DMH for intermediate inpatient or acute levels of care. This process spanned nearly nine months and resulted in the recommendation of 987 inmates for referral. Of these, 417 were accepted by DMH as of mid-March 2010. The project also resulted in the design and implementation of a pilot program known as the ICF[6] Pilot to increase the number of referrals of inmates whose custody factors would otherwise prevent their access to available lower-custody level DMH beds. As of this writing, there is still a wait list of nearly 500 inmates who need intermediate level in-patient care but have not been admitted due to their custody levels. Recently, the *Coleman* court ordered that the Special Master and his staff must work with the defendants to develop a plan to reduce the exceedingly long wait list, and in the interim to better serve the treatment needs of those patients who are on the list. Order filed March 30, 2010. This intensive process is now underway. Later this year, the Special Master must prepare and submit a report to

---

[6] "ICF" meaning "intermediate care facility."

5

the court on the defendants' implementation of their policies and practices for referral of *Coleman* class members for DMH level inpatient care. In the meantime, reports of lack of referrals to fill available intermediate in-patient beds for lower custody level inmates have caused the Special Master to assemble and implement a "mini-MHARP" to investigate the levels of such ongoing referrals, determine whether there are inmates who need such referrals but are not receiving them, and examine the lengths of stay for inmates who have already been admitted to DMH facilities as a result of the MHARP process. This project requires three of the Special Master's experts to return to several institutions to investigate and report back on the state of DMH referrals, as well as to assist these institutions with maintaining improved referral practices that were developed in the MHARP process.

- **Annual Suicide Review and Reporting**

Another activity of the Special Master's staff is to assist his psychiatric expert in his annual review of suicides completed by CDCR inmates. This expert synthesizes a great deal of data on such suicides, identifies and reports trends and problem areas calling for interventions, and makes recommendations as needed for reducing suicides. In addition, the Special Master's expert conducts and prepares a detailed written review of each suicide case for the pertinent year, determining whether Program Guide and other suicide prevention criteria, including clinical interventions, have or have not been met. These suicide reviews are included within the expert annual suicide reports. Typically, an annual expert suicide review consists of approximately 250 to 300 pages. One of the Special Master's deputies assists the expert with editing, distribution, and filing of this annual richly detailed report.

- **Re-Evaluation of Suicide Prevention, Review and Reporting Practices**

The Special Master, one of his deputies, three of his psychiatric experts, and a monitor have recently begun work with representatives of CDCR and DMH on a project to reduce the number of suicides in CDCR and DMH facilities. Despite a decade of expert recommendations and resulting court orders to help reduce the number of suicides by CDCR inmates, the absence of improvement in this area led to a court order filed on April 14, 2010 calling for a re-visitation and review of defendants' suicide prevention, review, and reporting policies and processes. This process involves intensive work over a four-month period with the defendants to offer them assistance and expert consultation with identifying and recommending modifications to the existing suicide prevention and review standards, all to help resolve the persistent problem of inmate suicides. This effort will be followed by a response from defendants as to how they propose to address the problem of CDCR inmate suicides. Their response will then be evaluated and reported on by the Special Master to the court later in 2010.

## Recommended Staff to be Appointed

To replace the staff who are no longer with the Special Master's team, and to aid in the expeditious and competent execution of the duties described above and others as they arise, the Special Master requests that this Court approve the appointment of Steven Raffa, Esq., and Kristina Hector, Esq., to the Special Master's staff as monitors.

- **Steven Raffa, Esq.**

Mr. Raffa is a 1986 graduate of the University of Pennsylvania Law School, and the Georgetown University School of Foreign Service, where he was awarded Phi Beta Kappa and *Magna Cum Laude* honors. Mr. Raffa's legal experience has been in the area

7

of litigation. Most recently, he has served as legal counsel to the Rhode Island Department of Revenue, where his duties involve conduct of legal research and analysis, administrative rule-making, and general litigation practice. Mr. Raffa has also had a distinguished career in education. He is the co-founder and former director of student employment at Rhode Island's first charter school, where he worked annually with 220 at-risk high school students, from 1994 to 2008. In that capacity, Mr. Raffa taught and counseled students on setting and achieving work goals, developed "job shadowing" and business speakers' programs, and networked in the Providence, Rhode Island business community to secure and place over two thousand students into meaningful positions. He has been active in a number of charitable and community programs including serving on the boards of directors for the Mount Hope Child Care Center which is a non-profit child care facility, and the Providence Haitian Project which provides financial support for a Haitian boarding school. Mr. Raffa's *curriculum vitae* is attached as Exhibit A.

Mr. Raffa will assist the Special Master with on-site prison monitoring and writing of semi-annual monitoring reports as well as researching and writing of interim reports on special issues and projects, as required.

- **Kristina Hector, Esq.**

Ms. Hector was admitted to the California State Bar in December 2003, following her graduation from the undergraduate program at the University of California at Berkeley, and from the University of California, Hastings College of the Law. Thus far, Ms. Hector's entire legal career has been devoted to improving conditions in the California state corrections system. From May 2001 to June 2008, Ms. Hector served in the office of the special master in the matter of *Madrid v. Woodford*, United States

8

District Court for the Northern District of California, C-90-3094-THE, where she assisted the special master in monitoring compliance with reform mandates in the areas of use of force and medical and mental health care. Her responsibilities included work with the CDCR and affiliated agencies to create and implement new policies and procedures, review of inmate claims of inappropriate use of force by prison staff, conduct of legal research, and assistance to the *Madrid* special master with preparation of monitoring reports to the court and conduct of court-ordered hearings relating to compliance at Pelican Bay State Prison. More recently, Ms. Hector has served on the legal staff of the California Prison Health Care Receivership where she has been responsible for the implementation of the *Plata* Receiver's Correspondence and Control Response Program. There, she has worked on initiating investigations of inmate-patient-complaint correspondence concerning medical care, supervising and directing employees in tracking and ensuring response to all such correspondence, and evaluating inmate-patient complaints for relevant legal concerns. Ms. Hector has worked with the Receiver and executive staff on-site at prisons throughout California, and has conducted research on a variety of legal issues. From June 2009 to the present, Ms. Hector has worked as staff legal counsel in the Receiver's Office of Legal Affairs, State of California Prison Health Care Services (CPHCS). In that post, she has been responsible for, among other things, the Receiver's *Habeas Corpus* Review Program, initiating investigations into petitioners' habeas claims involving the delivery of medical care, working closely with CPHCS executive physicians and Litigation Unit staff to prepare clinical summary reports, and representing the Receiver in *habeas corpus* proceedings throughout the state. Ms. Hector's *curriculum vitae* is attached as Exhibit B.

9

Ms. Hector's knowledge and experience within the prisons and specifically in the areas of medical and mental health care make her an ideal candidate for the Special Master's staff. She will assist the Special Master with on-site prison monitoring and writing of semi-annual monitoring reports as well as researching and writing of interim reports on special issues and projects, as required.

The parties have had an opportunity to review these candidates' *curricula vitae* and have no objections to their appointments.

Respectfully submitted,

Matthew A. Lopes, Jr.
Special Master

June 17, 2010

**EXHIBIT A**

# Steven W. Raffa, Esq.

40 Ruth Avenue, Rumford, RI 02916
(401) 487-4480 (cell), swraffa7@yahoo.com

## EDUCATION

**University of Pennsylvania Law School**, Philadelphia, PA. *J.D., 1986.*

**Georgetown University, Edmund Walsh School of Foreign Service**, Washington, DC
 *B.S.F.S. International Politics, 1982.*
  Phi Beta Kappa, Magna Cum Laude Honors.
  Awarded Edmund Walsh Medal for Excellence in International Politics.
  Phi Alpha Theta (History), Pi Sigma Alpha (Government) and Alpha Sigma Nu (Jesuit) Honor Societies.

 *Nicaragua Externship Program, 1982-1983.*
  Volunteered for yearlong Georgetown University-sponsored program working at rural elementary school and living with host family. Taught classes, managed school's sports programs, and helped build additional schools.

**University of Valencia**, Spain, *Summer, 1980.*
  Studied Spanish language and culture.

## LEGAL EMPLOYMENT

*9/2008-present* **Rhode Island Department of Revenue**, Legal Counsel, Providence, RI.
  Responsibilities include legal research and analysis, administrative rulemaking, handling litigation, motion practice and court appearances, policy formulation, contract drafting and negotiation, grant compliance, grievance hearings and other labor matters, serving as legal counsel to administrative boards and preparing written decisions, drafting and tracking legislation and testifying at Rhode Island State House, and providing general legal advice.

*2003-2004* **Rodio & Brown**, Lawyer, Providence, RI.
  Worked part-time on a variety of litigation matters.

*1989-1993* **Blish & Cavanagh**, Litigation Associate, Providence, RI.
*1986-1989* **Hinckley, Allen & Snyder**, Litigation Associate, Providence, RI; Boston, MA.
  Performed all aspects of litigation, including extensive legal research, writing and brief preparation, conducted discovery, counseled clients, argued motions in court, undertook witness preparation, engaged in settlement negotiations, and tried cases in federal and state courts.

*1985-1986* **Pepper, Hamilton & Scheetz**, Legal Assistant, Philadelphia, PA.
  Assisted with the preparation of complex litigation matter for trial.

*Summer 1985* **Venable, Baetjer & Howard**, Summer Associate, Baltimore, MD.
Performed numerous legal research and writing assignments, and received offer for full-time employment following graduation.

## EDUCATION EMPLOYMENT

*1994-2008* **Textron Chamber of Commerce Charter School**, Providence, RI.
Co-Founder and Director of Student Employment at Rhode Island's first charter school, annually serving 220 "at risk" high school students.

Established Student Employment Program as integral component of school curriculum, educating students about the professional "world of work", implementing business speakers' program, developing job shadowing experiences, and counseling students toward employment success.

Networked in the Providence business community to secure more than two thousand meaningful afterschool and summer employment positions for students, placing students and monitoring their employment performance, and serving as a liaison between business community and school.

Wrote hundreds of grants to obtain program funding, complying with federal grant guidelines, and managing school staff.

*1993-1994* **Greater Providence Chamber School-to-Work Program**, Providence, RI.
Worked at urban high school mentoring "at risk" students, developed employment opportunities, prepared students for the professional "world of work" and monitored students' employment performance.

## VOLUNTEER WORK

*1996-2003* **Mount Hope Child Care Center**, Providence, RI.
Board of Directors member for non-profit childcare facility.

*1990-1996* **Providence Haitian Project**, Providence, RI.
Board of Directors member for Providence-based organization financially supporting Haitian boarding school.

*1989-1993* **Junior Achievement of Rhode Island**, Providence, RI.
Taught economics at urban middle school.

## SPECIAL SKILLS/PROFESSIONAL AFFILIATIONS

Languages: Proficient in Spanish.
Software: Microsoft Word, Excel, PowerPoint, Outlook.
Member of Rhode Island Bar Association.
Graduate of Leadership Rhode Island Class of 2000.

**EXHIBIT B**

# KRISTINA M. HECTOR
**Attorney at Law**
10 Quay Court, # 78 • Sacramento, CA 95831 • (510) 435-0864
kristinahector@sbcglobal.net

**Admitted to the California State Bar**, December 2003

## EDUCATION

**University of California, Hastings College of the Law**, San Francisco, CA
J. D., May, 2003

**University of California, Berkeley**, Berkeley, CA
B.A., Political Science, May, 2000

## EXPERIENCE

**State of California Prison Health Care Services, Receiver's Office of Legal Affairs**
*Plata v. Schwarzenegger* (C-01-1351-TEH)
*Staff Counsel,* June 2009 – present
- Responsible for oversight of the Receiver's Habeas Corpus Review Program.
- Initiate investigations into petitioner habeas claims involving the delivery of medical care, including working closely with California Prison Health Care Services executive physicians and Litigation Unit staff to prepare clinical summary reports.
- Represent the Receiver in habeas corpus proceedings throughout the state.
- Communicate with state courts and opposing counsel on behalf of the Receiver.
- Attend habeas corpus court proceedings throughout the state; prepare informal responses, returns and supplemental responses to writs of habeas corpus.
- Conduct legal research on a variety of issues.

**California Prison Health Care Receivership, Office of the Receiver**
*Plata v. Schwarzenegger* (C-01-1351-TEH)
*Inmate Patient Relations Manager/Staff Attorney,* June 2006 – June 2009
- Conducted research on a variety of legal issues.
- Traveled with Receiver and executive staff to prisons throughout California.
- Worked with Receiver's Chief Medical Officer and Communications Director to Create Receiver's Correspondence Control and Response Program.
- Responsible for implementation of Receiver's Correspondence Control and Response Program, including initiating investigations of patient inmate complaints about medical care, supervising and directing employees in tracking and ensuring all correspondence received a response, reviewing patient inmate complaints for relevant legal concerns, preparing monthly correspondence summary reports.
- Provided oversight of California Department and Corrections Correspondence Control Program after merger with Receiver's Correspondence Control and Response Program.

- Worked closely with Receiver, *Coleman* Special Master, and *Armstrong* and *Perez* court representatives to coordinate court ordered monthly meetings with regard to state prison reform efforts involving medical care, mental health care, American with Disabilities Act issues and dental care.
- Responsible for preparing section on coordination efforts for Receiver's Bi-Monthly Reports to the Court.
- Prepare memoranda on a variety of legal issues.
- Worked closely with Receiver's outside counsel on various legal matters pertaining to the delivery of health care in California state prisons.
- Worked with Receiver's executive staff, California Prison Health Care Services executive staff and Receiver's outside counsel to create and implement the Receiver's Habeas Corpus Review Program.

**The Honorable Judge Thelton E. Henderson, United States District Court**
**Northern District of California, San Francisco, CA**
*Office of the Special Master, John Hagar Madrid v. Woodford* (C-90-3094-TEH),
*Assistant to the Special Master,* May 2001 – June 2008
- Assisted Special Master in monitoring reform compliance at Pelican Bay State Prison, including use of force, medical and mental health care.
- Daily exposure to judicial decision-making, policy-making and court process.
- Worked closely with the Special Master, court appointed experts, the Department of
- Corrections and Rehabilitation and affiliated agencies to create and implement new policies and procedures.
- Reviewed inmate complaints of inappropriate use of force by prison officials for relevant legal concerns.
- Conducted research on a variety of legal issues.
- Traveled to Pelican Bay State Prison to ensure court-ordered policies and procedures were in compliance.
- Assisted Special Master with preparation of monitoring reports to the Court.
- Assisted Special Master in conducting court ordered hearings related to reform compliance at Pelican Bay State Prison.

## MEMBERSHIPS

- California State Bar Association
- Sacramento County Bar Association