EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
GREGORY G. GOMEZ, State Bar No. 242674
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>     v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>                              Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' RESPONSE TO COURT'S JUNE 15, 2010 ORDER RE: DEFENDANTS' AMENDED LONG-RANGE MENTAL HEALTH BED PLAN FOR THE STARK FACILITY** |

1

Defs.' Resp. to Court's June 15, 2010 Order Re: Defs.' Am. Long-Range Mental Health Bed Plan for Stark Facility.
(2:90-cv-00520 LKK JFM P)

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| **AB** | Assembly Bill |
| **CDCR** | California Department of Corrections and Rehabilitation |
| **CEQA** | California Environmental Quality Act |
| **EIR** | Environmental Impact Report |
| **EOP** | Enhanced Outpatient Program |
| **JLBC** | Joint Legislative Budget Committee |
| **MHCB** | Mental Health Crisis Bed |

# INTRODUCTION

On June 15, 2010, this Court ordered that, within fifteen days from the date of the order, Defendants file a detailed statement identifying every step that might be taken to accelerate Defendants' proposed amended long-range mental health bed plan for the Stark facility (amended Stark plan). (Docket No. 3856 ¶ 2.) This Court further ordered that Defendants identify all actions required to accomplish such steps, including waivers of state law, and the amount of time that can be saved by each step. (*Id.*) Defendants now respond to this Court's June 15, 2010 order. First, Defendants provide background information that explains, in part, the timeline associated with their amended Stark plan. Second, Defendants identify two steps that might be taken to accelerate that timeline, and the associated actions required to achieve the potential acceleration.

# BACKGROUND

On May 13, 2010, Defendants filed their amended Stark plan. (Docket No. 3845.) Defendants' amended Stark plan proposes to build four new housing units on the current Stark facility to house the Enhanced Outpatient Program (EOP) population. (Docket No. 3845–2 at 4.) Additionally, Defendants' amended Stark plan proposes to include the new 30-bed Mental Health Crisis Bed (MHCB) project previously approved by this Court on January 4, 2010. (*Id.* at 6.) The 30-bed MHCB project is an integrated part of the new 60-bed Correctional Treatment Center that the California Department of Corrections and Rehabilitation, (CDCR) plans to build at the Stark facility. (Meyer Decl. ¶ 3.) CDCR also plans to build a new Central Health Services Building at the facility. (*Id.*) All three projects are part of a cooperative effort between CDCR and the *Plata* Receiver. (*Id.*)

Defendants' activation schedule for their amended Stark plan reflects a December 2014 full occupancy date. (Docket No. 3845–2 at 4, 9.) That date is premised, in part, on two factors that extend the full occupancy date into December 2014. First, the construction timeline runs from January 2, 2013 to July 11, 2014. (*Id.* at 8.) This timeline is premised on the standard "design-bid-build" procurement method governed by the California Public Contracts Code. (Meyer Decl. ¶ 4.) Second, the State's environmental review process under the California Environmental

3

Quality Act (CEQA), which requires that CDCR, as lead agency, prepare an Environmental Impact Report (EIR) for the Stark project, extends the project. (Meyer Decl. ¶ 4; Docket No. 3845–2 at 8.) Despite these factors, however, Defendants informed this Court in their amended Stark plan that they remained committed to identifying ways to accelerate the Stark project. (*Id.* ¶ 6; *Id.* at 4.)

### DEFENDANTS' RESPONSE

Consistent with Defendants' commitment to identify ways to accelerate the amended Stark plan, CDCR assembled a team of individuals to undertake that task. (Meyer Decl. ¶ 6.) And in response to this Court's June 15, 2010 order, CDCR has now identified two steps that might be taken to accelerate the construction phase of the Stark project: (1) use of the "design-build" procurement method for the new EOP housing units, the Correctional Treatment Center, and the Central Health Services Building; and (2) eliminate the statutory and regulatory time periods that CDCR, as the lead agency, must provide the public, responsible agencies, and potential petitioners to participate in the Environmental Impact Report review process. (*Id.* ¶¶ 6–9.)

**A.   Use of the "Design-Build" Procurement Method.**

California Government Code section 14661.1(i) allows the use of the "design-build" procurement process for five prisons, court, or state office facilities. Cal. Gov. Code § 14661.1(i). The "design build" procurement process is available for projects that will be completed after January 1, 2009 and before December 31, 2013. Cal. Gov. Code §§ 14661(h)(i). Three projects remain unallocated. (Meyer Decl. ¶ 7.)

CDCR has determined that if it uses the "design-build" procurement method to construct the new housing units for the EOP population, the Correctional Treatment Center, and the Central Health Services Building, rather than the traditional "design-bid-build" procurement method that it relied on to develop the activation schedule for the amended Stark plan, it could potentially accelerate the construction schedule for the project, completing it by December 31, 2013. (Meyer Decl. ¶ 7.) The action required to use the "design-build" procurement method for the new construction projects identified in Defendants' amended Stark plan is to verify that those projects fit within the Government Code section 14661.1 framework. (*Id.* ¶ 8.) CDCR has begun this

4

process, however, has not yet been able to verify that the new construction projects qualify for "design-build" authority under Section 14661.1. (*Id.*) Defendants expect that this action will take up to thirty days. (*Id.*) As soon as Defendants complete this action, they will inform the Court whether the new construction projects fit within the statutory framework for use of the "design-build" procurement method.

If CDCR uses the "design-build" procurement method for the new construction projects, CDCR expects that full occupancy of the EOP housing unit will occur on April 10, 2014, for a savings of approximately eight months. (Meyer Decl. ¶ 8.) This schedule could be impacted, however, by issues outside the control of the Defendants or the State, including project litigation. (*Id.*)

**B.  Eliminate the Statutory and Regulatory Time Periods in the Environmental Impact Report Review Process.**

The State's environmental review process under CEQA requires that CDCR, as lead agency, prepare an Environmental Impact Report (EIR) for the Stark project. (Meyer Decl. ¶ 4.) Because the EIR extends the project timeline, CDCR assessed whether there were any potential opportunities in CEQA to accelerate the amended Stark plan. (*Id.* ¶ 9.) CDCR determined that the current project schedule already anticipates an accelerated process for preparing an EIR, but that eliminating the review process for the EIR could potentially accelerate the project. (*Id.*) The action required to accomplish this step would be for this Court to waive those State laws that establish the review process. CDCR has identified three notice periods that, if eliminated, could potentially accelerate the amended Stark plan:

1.   Cal. Pub. Res. Code § 21091(a); Cal. Code Regs. tit. 14, § 15105(a) (provides a 45-day time period for public review of the draft EIR). (Meyer Decl. ¶ 9.)

2.   Cal. Pub. Res. Code § 21092.5(a); Cal. Code Regs. tit. 14, § 15088(b) (provides that at least 10 days prior to certifying the final EIR, the lead agency shall provide a written proposed response to a public agency on comments made by that agency). (Meyer Decl. ¶ 9.)

/ / /

/ / /

5

1    3.   Cal. Pub. Res. Code § 21108(c); Cal. Code Regs. tit. 14, § 15094(f) (provides that a Notice of Determination must be posted and available for public inspection for 30 days). (Meyer Decl. ¶ 9.)[1]

Thus, under these sections, the total amount of time that can be saved on the CEQA process is 85 days.

Defendants are funding the amended Stark project through Assembly Bill (AB) 900 lease-revenue financing authority that the California Legislature appropriated to construct capital projects. (Docket No. 3845–2 at 8.) Hence, Joint Legislative Budget Committee (JLBC) approval is required under AB 900, and an unqualified bond opinion is necessary to market the bonds.[2] (Docket No. 3591 at 54–56, 63–64.) However, it is unknown whether the JLBC would approve the amended Stark project if this Court waived the above-referenced CEQA review process, and this issue is outside of Defendants' control. Moreover, following the Court's June 15, 2010 order, Defendants contacted bond counsel to see if they would offer an unqualified bond opinion regarding the validity of AB 900 bonds if the Court waived this review process. Defendants expect to receive a response from bond counsel within the next thirty days. Thus, Defendants respectfully request that should this Court be inclined to waive any or all of the above-referenced statutes and regulations, that it not issue such an order until Defendants have received a response from bond counsel and had an opportunity to update this Court on that response. Additionally, since CDCR does not expect to complete the draft EIR until April 2011, these statutory and regulatory provisions would not impact the schedule during the next thirty days. (Meyer Decl. ¶ 10.)

---

[1] The filing of a Notice of Determination by a state agency starts a 30-day statute of limitations period on court challenges to approval of the project under CEQA. Cal. Pub. Res. Code § 21167(c); Cal. Code Regs. tit. 14, § 15094(g).

[2] Generally speaking, a bond opinion is unqualified if counsel is "firmly convinced (also characterized as having a 'high degree of confidence') that, under the law in effect on the date of the opinion, the highest court of the relevant jurisdiction, acting reasonably and properly briefed on the issues, would reach the legal conclusions stated in the opinion." Nat. Assoc. of Bond Lawyers Comm. On Opinions and Documents, Model Bond Opinion Report (February 2003); *see also Weiss v. Securities and Exchange Comm.*, 468 F.3d 849 (D.C. Cir. 2006) (standards published by the National Association of Bond Lawyers could be presumed by bond purchasers to apply to bond opinions).

6

Defs.' Resp. to Court's June 15, 2010 Order Re: Defs.' Am. Long-Range Mental Health Bed Plan for Stark Facility.
(2:90-cv-00520 LKK JFM P)

## CONCLUSION

As required by this Court's June 15, 2010 order, Defendants identify two potential mechanisms for accelerating the activation schedule of the amended Stark plan: (1) using "design-build" authority for the new construction projects at the Stark facility; and (2) eliminating certain CEQA timelines in the EIR review process.

Dated: June 30, 2010

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General

/s/ *Debbie J. Vorous*

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
31048398.doc

7

Defs.' Resp. to Court's June 15, 2010 Order Re: Defs.' Am. Long-Range Mental Health Bed Plan for Stark Facility.
(2:90-cv-00520 LKK JFM P)