ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
315 Montgomery Street, 10th Floor
San Francisco, California  94104-1823
Telephone:  (415) 433-6830

PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:  (510) 280-2621

K&L GATES LLP
JEFFREY L. BORNSTEIN, Bar No. 99358
EDWARD P. SANGSTER, Bar No. 121041
RAYMOND E. LOUGHREY, Bar No. 194363
4 Embarcadero Center, Suite 1200
San Francisco, California  94111-5994
Telephone:  (415) 882-8200

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111-4067
Telephone:  (415) 393-2000

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, California  94107-1389
Telephone:  (415) 864-8848

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

     Plaintiffs,

  v.

ARNOLD SCHWARZENEGGER, et al.,

     Defendants.

Case No. CIV S 90-520 LKK-JFM

**DECLARATION OF LAURENCE PARADIS IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PAYMENT OF DISPUTED FEES FROM 2009**

Date:  August 23, 2010
Time:  10:00 a.m.
Place:  Courtroom 4 (15th Floor)
Judge:  Honorable Lawrence K. Karlton

[384369-1]

I, LAURENCE PARADIS, declare:

1.      I have personal knowledge of the facts contained in this declaration and, if called as a witness, am competent to testify as to those facts.

2.      I am an attorney at law duly licensed to practice law in all state and federal courts of the State of California.

### PROFESSIONAL EXPERIENCE

3.      I am a 1985 graduate of the Harvard Law School.  From 1985 until 1995, I was at the Miller, Starr & Regalia law firm, and was a partner from 1993 until 1995.  In 1995, I left that firm to found Disability Rights Advocates, as its Executive Director and Co-Director of Litigation (with Sidney M. Wolinsky).  My resume is attached hereto as **Exhibit A**.

4.      While I was at Miller, Starr & Regalia, the firm billed our clients by the hour.  We also consistently billed all expenses attributable to a client's matter to our clients and were paid by them.  While at the firm, I also was counsel in several civil rights cases along with the Disability Rights Education and Defense Fund (DREDF).  Hence I have been involved throughout my legal career in billing clients, setting billing rates, presenting fee applications, and claiming multipliers in fee shifting cases.  I remain current as to appropriate billing rates and practices due to having to prosecute attorneys' fees applications on behalf of both my firm and co-counsel who often are private law firms.

5.      Since I started at DRA in 1996, I have been involved in litigating, negotiating, and supervising attorneys in numerous lawsuits across the state and country affecting the rights of people with disabilities.  A few examples of cases litigated include:

- *National Federation of the Blind v. Target Corp.*, 452 F. Supp 2nd 946 (N.D. Cal. 2006); 582 F Supp Supp 2nd 1185 (N.D. Cal. 2007), a nationwide class action on behalf of blind and low-vision individuals denied access to Target's consumer website.  This case was the first in the nation to establish application of disability laws to the internet, resulting in a settlement requiring changes to Target's website to provide access for visually impaired users, as well as $6 million in damages for a California subclass.

1

[384369-1]

- *Bates v. UPS*, 204 F.R.D. 440 (N.D. Cal. 2001), a nationwide class action on behalf of UPS employees with hearing impairments denied accommodations in the workplace. This case went to trial in 2003 resulting in a settlement improving workplace access and promotional opportunities for deaf and hard-of-hearing employees at UPS facilities throughout the country.

- *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002), *cert denied*, 539 U.S. 958 (2003), a class action on behalf of people with mobility and vision disabilities to enforce access requirements for public sidewalks throughout the city. This case resulted in a published opinion from the Ninth Circuit establishing the broad scope of the ADA's requirement for "program access" under Title II and a subsequent comprehensive settlement agreement.

- *Cupolo v. BART*, 5 F. Supp. 2d 1078 (N.D. Cal. 1997), a class action on behalf of all mobility disabled users of a regional mass transit agency to enforce access requirements. This case resulted in a published opinion issuing a preliminary injunction forcing BART to maintain its elevators for use by the class, and a subsequent comprehensive settlement agreement.

- *Lieber v. Macy's West*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999) and *Camalo v. Macy's*, No. C-98-02350 SI (N.D. Cal.), class actions against Macy's stores throughout California for failure to remove barriers to access for people with mobility disabilities. The *Lieber* case was among the first cases in the country to go to trial to establish the scope of the ADA Title III "readily achievable" requirement.

- *Williams v. Housing Authority of the City and County of San Francisco*, No. C 90-2150 CAL (N.D. Cal.), a class action against the San Francisco Public Housing Authority on behalf of tenants with disabilities denied equal access to housing due to architectural and other access barriers. This case resulted in a settlement under which many hundreds of accessible housing units were developed.

2

[384369-1]

6.    Additionally, as reflected on my resume, **Exhibit A** hereto, I have authored and/or edited various papers and publications on disability civil rights law, and made numerous presentations on this subject.

### MARKET PRACTICES REGARDING BILLING RATES AND LEGAL SUPPORT STAFF

7.    DRA is a 501(c)(3) non-profit public interest organization exclusively dedicated to advancing the civil rights of people with disabilities.  DRA generally handles cases in which a client or clients cannot afford to retain a law firm or where other lawyers will not handle the matter.  Our clients do not pay for our services and we do not receive any government funding. This means that DRA's existence is largely dependent upon court awarded fees in the cases in which we succeed.

8.    I am familiar with billing rates for attorneys and legal support staff at firms across the Bay Area.  As a part of my professional work, I routinely monitor hourly rates and fee awards.

9.    DRA litigates cases in various venues throughout the state of California and the country.  We establish hourly rates for the billing personnel at our firm on an annual basis, looking at comparable rates in the market.  We regularly request fee awards based on these billing rates whether we litigate cases in San Francisco or in other parts of the state or country. For instance, we filed the following cases in recent years outside the San Francisco Bay Area: *Barden v. Sacramento*, Case No. 99-0497 (MLS), E.D. California (class action lawsuit against the City of Sacramento for its failure to provide accessible sidewalks); *CALIF v. City of Los Angeles* (class action lawsuit seeking to ensure access to emergency preparedness services of the City and County of Los Angeles), *Padd v. Equity Residential*, Case No. 04-5267 RBL, W.D. Washington (lawsuit to ensure accessible housing for soldiers and their families at Fort Lewis in Washington state); *A.S.K. v. Oregon*, Case No. **CV 99-263-KI**, Dist. of Oregon (statewide litigation in Oregon to ensure appropriate accommodations for students with learning disabilities for state tests), and; *Noon, et al. v. Alaska State Board of Education, et al.,* Case No. A04-0057 (JKS), Dist. of Alaska (class action lawsuit against the state of Alaska to ensure accommodations

1  for students with disabilities who take the Alaska High School Graduation Qualifying

2  Examination).  In some cases we have been awarded our regular billing rates when litigating

3  outside the Bay Area; in other cases we have been awarded somewhat lower rates.

4      10.    In addition to billing for attorneys, DRA also bills paralegals, law students, word

5  processors, and law clerks on an hourly basis.  These staff members are not treated as office

6  overhead.  While our law student, word processor and paralegal categories are self-explanatory,

7  the staff members we refer to as "law clerks" are college graduates who typically work with the

8  firm for a year under the close supervision of our attorneys.  DRA has employed law clerks, and

9  billed them out on an hourly basis, ever since I began working for the firm fifteen years ago.

10      11.    We regularly receive compensation for our law clerk time and paralegal time

11  through the course of settlement agreements or by written fee orders.  In *Camalo, et al. v. Macy's*

12  *West, Inc.*, No. 99-5184 MHP/BZ, N.D. Cal., the court adopted our $135 per hour requested rates

13  for law clerks who performed work through 2003.  A true and correct copy of the *Macy's West*

14  fee order is attached hereto as **Exhibit B**.  Our most recent contested fee motions were in

15  *National Federation of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261

16  (N.D. Cal. Aug. 03, 2009) and *Kidd v Cal. Dept. of Education*, No. JCCP 004468 (Cal. Super.

17  March 4, 2009).  In the *Target* case, the federal District Court for the Northern District of

18  California granted DRA fees at our requested 2008 rates.  A true and correct copy of the *Target*

19  fee order is attached hereto as **Exhibit C**.  The *Target* Court approved DRA's 2008 rates for

20  paralegals ($225), summer associates ($195), and law clerks ($155).  In the *Kidd* case, the

21  Alameda County Superior Court similarly granted DRA fees at our requested 2008 rates,

22  including law clerk time at the rate of $155 per hour.

23      12.    As a general matter, our law clerks, paralegals and law students work on actual

24  case-related tasks such as factual investigation, client communications, preparation of

25  declarations, scheduling and arranging for discovery and discovery responses, review of

26  documents, and preparation of motions for filing with the Court.  DRA also has general support

27  staff that provide purely clerical work such as filing and copying.  DRA does not charge for such

28  purely clerical work.

[384369-1]

DECLARATION OF LAURENCE PARADIS IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PAYMENT OF
DISPUTED FEES FROM 2009 – No. Civ S 90-520 LKK-JFM

13.     In my experience, law firms and attorneys regularly bill hourly rates for law clerks, paralegals, and other specialized support staff in the San Francisco and Sacramento areas, which is consistent with DRA's practices.  Further, the courts have regularly ordered and/or approved payment of DRA's claims for hourly work by law clerks and paralegals and other specialized support staff.  No court has denied DRA's time for such employees as overhead.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 1, 2010 at Berkeley, California.

Laurence Paradis

5

[384369-1]

# EXHIBIT A

2001 Center Street, Fourth Floor
Berkeley, CA 94704-1204
Phone (510) 665-8644
Fax (510) 665-8511
TTY (510) 665-8716
www.dralegal.org

# DRA
## DISABILITY RIGHTS ADVOCATES
### A non-profit corporation

**BOARD OF DIRECTORS**
William F. Alderman
*Orrick, Herrington & Sutcliffe*
Leslie Aoyama
*Nordstrom*
Shelley Bergum
*California Communications
    Access Foundation*
Peter Blanck
*Burton Blatt Institute*
Mark A. Chavez
*Chavez & Gertler LLP*
Linda Dardarian
*Goldstein, Demchak, Baller,
    Borgen & Dardarian*
Benjamin Foss
*Intel Corporation*
Laurence Paradis
*Disability Rights Advocates*
Walter Park
*Access Consultant*
Anne E. Schneider
*LD Access Foundation, Inc.*
Todd Schneider
*Schneider & Wallace*
Michael P. Stanley
*Legal Consultant*
Liane Chie Yasumoto
*Culture! Disability! Talent!*
**ATTORNEYS AND FELLOWS**
Laurence Paradis
*Executive Director*
Sid Wolinsky
*Litigation Director*
Melissa Kasnitz
*Managing Attorney*
Jennifer Weiser Bezoza
*Senior Staff Attorney*
Roger Heller
*Senior Staff Attorney*
Katherine Weed
*Staff Attorney
(Admitted in MI and MA only)*
Kevin Knestrick
*Staff Attorney*
Mary-Lee Kimber
*Staff Attorney*
Kasey Corbit
*DRA Attorney-Fellow*
Stephanie Biedermann
*Arthur Liman Fellow*
Julia Pinover
*David Boies / LD Access Fellow
(Bar Admission Pending)*
**ADVISORY BOARD**
Joseph Cotchett
*Cotchett, Pitre & McCarthy*
Hon. Joseph Grodin
*Retired Justice, Calif. Supreme Court*
Kathleen Hallberg
*Ziffren, Brittenham & Branca*
Karen Kaplowitz
*New Ellis Group*
Hon. Charles Renfrew
*Retired, United States District Judge*
Margaret R. Roisman
*Roisman Henel LLP*
Guy T. Saperstein
Fernando M. Torres-Gil, Ph.D.
*University of Calif. Los Angeles*
Gerald Uelmen
*Santa Clara University School of Law*

## *LAURENCE PARADIS*
### *Executive Director*
### *Co-Director of Litigation*

### Employment

Disability Rights Advocates:  Executive Director, Co-Director of Litigation (1996-present) 2001 Center Street, Fourth Floor, Berkeley, California 94704; (510) 665-8644

Miller, Starr & Regalia:  Partner (1993-1995); Associate (1985-1992) One Kaiser Plaza, Suite 1600, Oakland, California 94612

### Education

Harvard Law School, Cambridge, Massachusetts.  J.D. received, cum laude, 1985.

University of California at Santa Cruz, Santa Cruz, California.  B.A. received, with honors, 1982.

### Honors and Legal/Community Affairs (Past and/or Present)

"Super Lawyer" - Northern California Super Lawyers Magazine

2006 Finalist:  Consumer Attorney of the Year award by Consumer Attorneys of California

2004 Trial Lawyer of the Year Award from the San Francisco Trial Lawyers Association

2003 California Lawyers of the Year Award by *California Lawyer* magazine

President's Committee on Employment of People with Disabilities

Court Appointed Mediator: U.S. District Court for Northern District of California.

Ninth Circuit Judicial Council Lawyer Representative from the U.S. District Court for Northern District of California

Magistrate Judge Selection Panel, U.S. District Court for the Northern District of California: member

National Council on Disability: International Watch Committee Berkeley/Oakland Center for Independent Living: Board of Directors

American Civil Liberties Union of Northern California: Board of Directors

Berkeley Commission on Disability

Disability Statistics Center at UCSF:  Advisory Board

UCSF Center for Personal Assistance Services Advisory Committee

## *Publications and Presentations (Partial List)*

"Disability Civil Rights":   lecture to Hastings Law School (March 2010)

"Target Settlement Webcast":  presentation to California State University on settlement of NFB v. Target website access case ( Oct. 20, 2008).

"Disability Rights: The Road Ahead":  Ruth Chance Lecture to UC Berkeley School of Law (Sept. 24, 2007).

"The ADA and the Internet: How Accessible Does Your Nonprofit Organization's Website Have to Be?" Clearinghouse Review published September-October 2007.

Presentations on Civil Rights Litigation:  Panel presentations at Stanford Law School (October 4 and 7, 2006).

Disability Diversity Training:  Board of Directors of NALP – The Association For Legal Career Professionals (July 20, 2007).

"Rights of Prisoners with Disabilities Under Title II of the Americans with Disabilities Act and Section 50 of the Rehabilitation Act":  paper and presentation to the American Trial Lawyers Association (July 2006 Annual Convention).

"Diversity in the Workplace":  Panel presentation at Boalt Hall School of Law (March 16, 2004).

"Recent Developments In Civil Rights Class Actions":  Presentation for attorneys sponsored by the Lawyers Club of San Francisco (January 23, 2004).

"Fundamentals of Civil Rights Class Actions": Panel presentation for attorneys sponsored by the Impact Fund (October 11, 2003).

"Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act: Making Programs, Services and Activities Accessible to All", Stanford Law & Policy Review v.14.2 (2003).

"The ADA: Its Intent and Undermining": Presentation to Conference on Social Work and Disability at San Francisco State University (April 2, 2003).

"Litigating the ADA": Presentation to the 42nd Annual Meeting of the Association of Defense Counsel of Northern California and Nevada (December 13, 2001).

"ADA Revisited": Presentation to District Conference for U.S. District Courts for the Eastern District of California (November 3, 2001).

"Beyond the ADA: Where Do We Go Now with Civil Rights for People with Disabilities?": Presentation to Pacific Regional Conference on Asians and Pacific Islanders with Disabilities (October 19, 2001).

"Elimination of Bias Towards Persons with Disabilities Who Are Judges, Lawyers or Others in the Legal Profession": Presentation sponsored by the Bar Association of San Francisco (October 17, 2001).

"Mediating and Evaluating ADA Title II and III Cases": Training of court appointed mediators and neutral evaluators (Dec. 7, 2000).

"Disability Rights Law and Higher Education": Presentation at NIH Institute on Disability Studies at San Francisco State University (August 8, 2000).

"Emerging Issues In Disability Rights Law and Culture":  Presentation at Stanford Law School (March 4, 2000).

"Disability Rights Litigation and Practice":  Presentation to Center for Social Justice, Boalt Hall School of Law (January 24, 2000).

"Beyond Fear and Pity":  Keynote speech at annual conference of Multiple Sclerosis Society of Northern California (November 6, 1999).

"Transcending Compliance: Employment Opportunities and Barriers for People with Disabilities": Keynote speech at annual conference of Project Hired (October 20, 1999).

ADA and Employment for People with Disabilities: KQED Forum Radio Program (July 16, 1999).

EEOC Technical Assistance Program:  Panel Presentation on Recent Developments in ADA Employment Law (June 17, 1999).

"Transportation—Update on ADA Law and Regulations": Presentation to Disability Rights Enforcement and Education Services (DREES) (June 11, 1999).

"Mediating and Evaluating ADA Cases": Training of court-appointed mediators and evaluators on ADA issues (May 13, 1999).

"Depictions of ADA in the Media": Presentation at U.C. Berkeley School of Law (Boalt Hall) symposium on backlash against the ADA (March 12, 1999).

"Challenging Systemic Civil Rights and Statutory Violations: Class Actions, Writs, Unfair Business Practices, and Beyond": Panel presentation for attorneys sponsored by the Public Interest Clearing House and the Impact Fund  (November 16, 1998).

"Disability Rights Law":  Guest Speaker at Stanford Law School (September 20, 1998).

"Litigation Avoidance": Seminar sponsored by McUtcheon, Doyle, Brown & Emerson for legal and business professionals  (April 30, 1998).

"Beyond Fear and Pity," Mainstream Magazine Volume 23, No. 4, (December 1998/January 1999).

"Social, Legal and Historic Perspectives of the ADA":  Presentation to University of California at San Francisco (October 16, 1996).

"Recent Developments in California Disability Access Law," California Real Estate Reporter (Matthew Bender), Volume 1995, Issue No. 4 (April 1995).

"Litigating Disability Rights Cases":  Panel presentation for attorneys sponsored by the State Bar of California's Standing Committee on Legal Rights of Persons with Disabilities, the Disability Rights Education and Defense Fund, and the Bar Association of San Francisco (May 13, 1995).

"Disability Access Laws and Regulations":  Presentation to the International Facilities Managers Association, East Bay Chapter (January 26, 1995).

"Disability Rights Law":  Presentation to the New College School of Law, San Francisco, CA (March 8, 1994).

"Prosecuting Public Accommodation and Commercial Facility Cases (Title III), and Transportation Cases (Title II) under the Americans with Disabilities Act":  Presentation to the Association of Trial Lawyers of America (August 3, 1993).

"Disability Rights and the ADA":  Panel presentation at Boalt Hall School of Law (March, 1993).

"Disability Rights Law and Practice":  Presentation at 4th and 5th Annual Disability Law Conferences at Boalt Hall School of Law (1990 and 1991)

## Sample Cases

ADA Taskforce v. City and County of San Francisco, United States District Court (Case No. C-97-02438 VRW): class action against S.F. for failure to comply with ADA self-assessment and transition plan requirements.

Arnold v. United Artists, 158 F.R.D. 439 (N.D. Cal. 1994) (Henderson, J.):  class action on behalf of persons with mobility disabilities denied equal access to over 400 theaters located throughout the country.

ASK v. Oregon, United States District Court (Case No.CV99-263): class action on behalf of students with learning disabilities challenging performance test given to high school students throughout Oregon.

Barbier v. CalPERS, United States District Court (Case No. 98-10497 CW): class action against insurer for discriminatory underwriting practices.

Barden v. Sacramento, 292 F.3d 1073 (9th Cir. 2002): class action against City and County of Sacramento for failure to provide access to streets and sidewalks.

Bates v. UPS, United States District Court Bates v. United Parcel Service  204 F.R.D. 440 (N.D. Cal. 2001), 511 F.3d 974 (9th Cir. 2007): national class action against United Parcel Service for discriminating against deaf and hard of hearing employees.

Berlowitz v. Masonic Center, United States District Court (Case No. C96 01241 MHP): class action against concert hall for failure to remove barriers.

Campos v. San Francisco State University, United States District Court (Case No. C-97-02326 MMC): class action against University for failure to provide program access to students and faculty with disabilities.

C.P. v. City and County of San Francisco, San Francisco Superior Court (Case No. 976437):  class action on behalf of foster children with disabilities denied benefits of defendant's child care program.

California Association for Nursing Home Reform (CANHR) v. Creekside Nursing Home, United States District Court (Case No. CIV-5-941709 WBS):  action against nursing home for discrimination against residents with disabilities.

Chabner v. United of Omaha, United States District Court (Case No. C950447 MHP):  action against insurance company on behalf of insured with disabilities charged excessive rates in violation of non-discrimination laws.

Cordellos v. City and County of San Francisco, San Francisco Superior Court (Case No. 952520): class action on behalf of mass transit riders with vision disabilities denied equal access.

Cupolo v. Bay Area Rapid Transit (BART), 5 F.Supp.2d 1078 (N.D. Cal. 1997) (Wilken, J.):  class action on behalf of mass transit riders with mobility disabilities denied equal access.

Ellenwood v. Indian Springs Spa, United States District Court (Case No. C96-00437):  class action against resort facility on behalf of persons with physical disabilities denied access due to architectural barriers.

Giacopini v. Alamo Rent A Car, United States District Court (Case No. C95-04190):  class action against car rental company on behalf of persons with disabilities denied equal access due to lack of hand controls on rental vehicles.

Guckenberger v. Boston University, United States District Court (Case No. 96-11426 PBS):  class action against Boston University on behalf of students with learning disabilities subjected to discriminatory policies and practices.

Gustafson v. University of California at Berkeley, United States District Court (Case No. 97-4016 BZ), class action against University for failure to remove access barriers.

Hodges v. B.P., United States District Court (Case No. C95-02215 JLQ):  class action on behalf of persons with mobility disabilities denied access to gas stations/convenience stores throughout the west coast.

Imperiale v. Greyhound, United States District court:  statewide class action against Greyhound for discriminating against riders with mobility disabilities.

Independent Housing Services v. Fillmore Center, United States District Court:  class action against 1,100 unit apartment complex for denial of access to tenants with disabilities.

Jorgensen v. Jack In The Box, United States District Court (Case No. C95-00406 SAW):  nationwide class action against restaurant chain for failure to remove barriers as required under Title III of the ADA.

Lacy v. Thousand Trails, United States District Court (Case No. C96-00441 SAW):  statewide class action against camp ground facilities for failure to remove barriers to persons with mobility disabilities.

Lieber v. Macy's, United States District Court  Lieber v. Macy's West, Inc. 80 F.Supp.2d 1065 N.D. Cal, 1999) and Camalo v. Macy's United States District Court (Case No. C-98-02350 SI): class actions against Macy's stores throughout California for failure to remove barriers to access for people with mobility disabilities.  First case in the country to go to trial to establish scope of ADA Title III readily achievable requirement.

Mendoza v. Fairmont Hotel, San Francisco Superior Court (Case No. 954016):  class action brought under the ADA and California access laws on behalf of persons with physical disabilities denied access due to architectural and other access barriers.

Mueller v. Committee of Bar Examiners, United States District Court (Case No. C-97-3309 FMS PJH):  class action against California State Bar for failure to accommodate law school graduates with learning disabilities on bar exam tests.

National Federation of the Blind v. Target Corp., United States District Court (452 F. Supp.2d 946(N.D. Cal. 2006); 582 F. Supp.2d 1185 (N.D. Cal. 2007):  national class action brought on behalf of consumers with disabilities seeking access to Target's website.

Parents for Integration v. Oakland Unified School District, United States District Court (Case No. C95 0092 CW):  class action against school district on behalf of students with disabilities subjected to segregated facilities.

Pauer v. City and County of San Francisco, San Francisco Superior Court (Case No. 975859):  class action against City and County of San Francisco challenging failure of building department to enforce state access requirements vis-a-vis issuance of building permits.

Peck v. United Artists, United States District Court (Case No. C93-0912 THE):  class action on behalf of persons with hearing impairments denied equal access to movie theaters located throughout California.

Putnam v. Oakland Unified School District, United States District Court (Case No. C93-3772):  class action against school district challenging district's failure to remove architectural barriers that deny access to students with mobility disabilities.

Richardson v. MUNI, United States District Court (Case No. C 973491 SBA): class action against light rail system for failure to provide access for riders with mobility disabilities.

Ripley v. California State Lottery, United States District Court (Case No. C96 04666 MMC): class action for failure to provide programmatic access to people with physical disabilities at sites throughout California.

Scotlan v. Hollywood Park, United States District Court (Case No. 98-2149 JMI (CWx): class action against race track for failure to remove barriers.

Shotz v. City of Palm Beach, United States District court (Case No. 98-8182 CIV-RYSKAMP): class action against sports stadium for multiple access barriers.

<u>Spieler v. Mt. Diablo Unified School District</u>, United States District Court (Case No. 98-00951 CW): class action against school district for failure to provide programmatic access.

<u>Sutton v. ETS</u>, United States District Court (Case No. C-98-02870 MMC): class action against Educational Testing Services for failure to provide accessible format materials to people with vision disabilities taking the GRE exam.

<u>Thomas v. BASS</u>, Alameda County Superior Court (Case No. 733496-8): statewide class action against ticket selling company based on defendant's failure to handle distribution of accessible seating tickets.

<u>Tucker v. California State Parks</u>, (Case No.302586): statewide class action on behalf of people with mobility, vision and hearing disabilities, challenging access barriers throughout the California State Parks system.

<u>Walsh v. Tamalpais Union School District</u>, United States District Court (Case. No. C-96 03037 CAL): class action against school district for multiple access barriers at all district facilities.

<u>Weissman v. Quail Lodge</u>, United States District Court (Case No. C96 1131 JSB):  class action against resort facility on behalf of persons with physical disabilities denied equal access due to architectural and other access barriers.

<u>Williams v. Housing Authority of the City and County of San Francisco</u>, United States District Court (Case No. C90-2150 CAL):  class action against the San Francisco Public Housing Authority on behalf of tenants with disabilities denied equal access due to architectural and other access barriers.

# EXHIBIT B

CC. Camy

LAURENCE W. PARADIS, CA Bar No. 122336
MELISSA W. KASNITZ, CA Bar No. 162679
DISABILITY RIGHTS ADVOCATES
449 Fifteenth St., Suite 303
Oakland, CA 94612
(510) 451-8644
(510) 451-8511 (fax)

LINDA M. DARDARIAN, CA Bar No. 131001
LAURA HO, CA Bar No. 173179
GOLDSTEIN, DEMCHAK, BALLER,
  BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800
(510) 835-1417 (fax)

Attorneys for Plaintiffs

LINDA S. HUSAR, Bar No. 093989
TIMOTHY L. PIERCE, Bar No. 141170
333 South Grand Avenue, 34th Floor
Los Angeles, CA 90071-3139
(213) 621-9800

ELLEN M. PAPADAKIS, Bar No. 186621
THELEN REID & PRIEST LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3601
(415) 371-1200

GLEN D. NAGER, appearing pro hac vice
ALISON B. MARSHALL, appearing pro hac vice
DAVID B. COPUS, appearing pro hac vice
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
(202) 626-1700 (fax)

Attorneys for Defendant MACY'S WEST, INC.

RECEIVED
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA CAMALO, et al. | Case No. C98-02350 MHP/BZ |
| **Plaintiffs,** | |
| v. | Case No. C99-5184 MHP |
| **MACY'S WEST INC., a corporation,** | [PROPOSED] **FINAL APPROVAL ORDER AND ORDER REGARDING MOTION FOR ATTORNEYS' FEES AND COSTS** |
| **Defendant.** | |
| CDR, a non-profit corporation, et al. | |
| **Plaintiffs,** | |
| v. | |
| **MACY'S WEST, Inc., a corporation,** | |
| **Defendant.** | |

FILED

APR 1 3 2004

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WAI-2105411v1 [Proposed] Final Approval Order and
Order Regarding
Motion for Attorneys' Fees and Costs

1    This matter having come before the Court for hearing on April 13, 2004, for approval of

2    the settlement set forth in the Settlement Agreement and Consent Decree ("Decree") between

3    Plaintiffs and Defendant Macy's West, Inc. ("Macy's West") and due and adequate notice having

4    been given to the Settlement Class Members as required in the Court's February 2, 2004 Order,

5    and the Court having considered all papers filed and proceedings had herein and good cause

6    

7    appearing therefor, it is

8        ORDERED, ADJUDGED AND DECREED THAT:

9    1.    All terms used herein shall have the same meaning as defined in the Decree.

10   2.    This Court has jurisdiction over the subject matter of this litigation and over all

11   Parties to this litigation, including all Settlement Class Members.

12   

13   3.    Publication of the notice directed to the Settlement Class Members as set forth in

14   the Decree has been completed in accordance with the Preliminary Approval Order, which was

15   the best notice practicable under the circumstances. This Notice provided due and adequate

16   notice of the proceedings and of the matters set forth herein, including the Decree, to all persons

17   entitled to such Notice, and the Notice fully satisfied the requirements of due process.   No

18   Settlement Class Members objected to the Decree.

19   

20   4.    This Court hereby approves the Decree and finds that the Decree is, in all respects,

21   fair, adequate and reasonable and directs the parties to effectuate the Decree according to its

22   terms. The Court finds that the Decree has been reached as a result of intensive, serious and non-

23   collusive arms-length negotiations. The Court further finds that counsel for the Parties are able to

24   reasonably evaluate their respective positions. The Court also finds that settlement at this time

25   will avoid substantial costs, as well as avoid the delay and risks that would be presented by

26   further prosecution of the claims covered by the Decree. The Court has reviewed the relief

27   granted as part of the Decree and recognizes the significant value to the settlement class of the

28

injunctive relief. The Court also finds that the settlement class, as defined in Section V of the Decree, is properly certified as a settlement class only pursuant to the standards set forth in Fed. R. Civ. P. 23.

5.    As of the Effective Date, each and every released claim, as specified in Section XI of the Decree, is and shall be deemed to be conclusively released as against Macy's West. All Settlement Class Members as of the Effective Date are hereby forever barred and enjoined from prosecuting the released claims against Macy's West, as provided in Section XI of the Decree.

6.    The Court hereby grants Plaintiffs' Motion for an Award of Attorneys' Fees, and thereby approves the amount of reasonable attorneys' fees and costs stated in the Decree. Macy's West shall pay to Class Counsel $299,300 in settlement of all fees and costs for any work performed by Class Counsel, as well as by all lawyers, law firms, employees, contractors and/or experts whom Class Counsel have hired, retained, consulted with or contracted with, on all remaining issues raised in the CDR and Camalo Actions through the Effective Date of this Decree. Macy's West shall pay this sum within fifteen (15) days of the Effective Date of the Decree. Macy's West shall also pay Class Counsel reasonable attorney's fees and costs up to an annual cap of $48,000 and a total cap of $144,000 in settlement of all fees and costs for work performed and costs and expenses incurred after the Final Approval Date relating to monitoring the implementation of the Decree as provided in the Decree. Class Counsel will submit to Macy's West semi-annual statements within ninety days after the end of each audit period, listing the fees and costs expended, and supported by a description of services by day and by timekeeper.

Dated: _____, 2004

_____
MARILYN HALL PATEL
UNITED STATES DISTRICT JUDGE

awb

for the
Northern District of California
April 13, 2004

## * * CERTIFICATE OF SERVICE * *

Case Number:3:98-cv-02350

Camalo

    vs

Macy's West, Inc.

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Northern District of California.

That on  April 13, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.

       Ellen Papadakis, Esq.
       Thelen Reid & Priest LLP
       101 Second St
       Ste 1800
       San Francisco, CA  94105-3601

       Alison B. Marshall, Esq.
       51 Louisiana Avenue, N.W.
       Washington, DC  20001-2113

       Laurence W. Paradis, Esq.
       Disability Rights Advocates
       449 15th St
       Ste 303
       Oakland, CA  94612-2821

       Linda M. Dardarian, Esq.
       Saperstein Goldstein Demchak & Baller
       300 Lakeside Dr
       Suite 1000
       Oakland, CA  94612

# DISABILITY RIGHTS ADVOCATES
## 2003 HOURLY RATES

I. **Attorneys**

|  | Rate | Graduation |
|---|---|---|
| Sid Wolinsky | $550.00 | 1961 |
| Laurence W. Paradis | $415.00 | 1985 |
| Melissa Kasnitz | $355.00 | 1992 |
| Rhoda Benedetti | $300.00 | 1996 |
| Alison Aubrejuan | $290.00 | 1997 |
| Shawna Parks | $270.00 | 1999 |
| Caroline Jacobs | $250.00 | 2000 |
| Brian Dimmick | $230.00 | 2001 |
| Monica Goracke | $230.00 | 2001 |
| Stephen Tollafield | $200.00 | 2002 |
| Amy Hill | $200.00 | 2002 |
| Kevin Knestrick | $185.00 | 2003 |
| Alexius Markwalder | $185.00 | 2003 |
| Sara Zimmerman | $185.00 | 2003 |

II. Other Professional Staff

    A. **Senior Paralegal** — $185.00
       Susan Prior

    B. **Paralegal**
       Gabi Marcus — $155.00
       Laura Eichhorn
       Kirsten Gibney
       Andrew Simmons

    C. **Law Clerk**
       Ken Ashworth — $135.00
       Helena Phillibert
       Jay Sansing
       Sonia Silbert
       Jessica Polsky

    D. Summer Associates/Law Students — $175.00

    E. Word Processing — $ 55.00

# EXHIBIT C

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATIONAL FEDERATION OF THE BLIND,          No. C 06-01802 MHP
et al.,

        Plaintiffs,                              **MEMORANDUM & ORDER**

   v.                                              **Re: Attorneys' Fees and Costs**

TARGET CORPORATION,

        Defendant.

_____/

      Plaintiffs filed the instant action in the Superior Court for the State of California, County of Alameda, in February 2006. In March 2006, defendant removed the case to federal court. A period of intense litigation followed, culminating in the certification of the plaintiff class in October 2007. In April 2008, the parties reached a settlement and agreed, among other things, that defendant would pay plaintiffs' reasonable attorneys' fees and litigation costs in an amount to be determined by the court. On March 9, 2009, the court held a fairness hearing and on March 10, 2009, the court granted final approval of the settlement. As part of the briefing on the fairness issues plaintiffs moved for attorneys' fees and costs. At the fairness hearing the court entertained arguments on the quantum of such fees and costs to which plaintiffs' counsel might be entitled. Having considered the parties' argument and submissions, the court enters the following memorandum and order.

**United States District Court**
For the Northern District of California

1   BACKGROUND

2        Plaintiffs are a non-profit organization with the purpose of promoting the general welfare of

3   blind persons, its California chapter, and individuals representing a national class and a California

4   subclass of blind persons.  Defendant Target Corporation operates approximately 1,400 retail stores

5   nationwide, including 205 stores in California.  Target.com is a website owned and operated by

6   Target.  By visiting target.com, customers can purchase many of the items available in Target stores.

7        Plaintiffs originally filed a class action in state court seeking certification of a class of

8   California individuals.  Plaintiffs alleged that Target.com was not accessible to blind persons,

9   denying them full and equal access to Target stores in violation of California's Unruh Civil Rights

10  Act, Cal. Civ. Code §§ 51, *et seq.*, and Disabled Persons Act, id. §§ 54, *et seq.*  After defendant

11  removed this action to federal court, plaintiffs amended their complaint to include a federal claim

12  under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.*

13       Defendant mounted a vigorous opposition.  The court denied defendant's first motion to

14  dismiss but also rejected plaintiffs' motion for a preliminary injunction.  Plaintiffs filed a motion for

15  class certification, which the court found partially deficient; the court granted plaintiffs leave to

16  amend.  Plaintiffs filed a corrected motion for certification, including numerous declarations of blind

17  individuals from across the country documenting similar experiences with Target.com.  Defendant

18  deposed many of these persons, and, while the second motion for certification was pending, filed a

19  motion for summary judgment.  The court granted in part defendant's motion for summary judgment

20  with respect to plaintiff Bruce F. Sexton's ADA claim but subsequently certified a national class and

21  a California subclass.  Plaintiffs replaced Sexton with James P. Marks and Melissa Williamson as

22  representatives of the nationwide class.

23       Target sought an interlocutory appeal of the class certification before the Court of Appeals,

24  which was denied.  Target then filed a second motion to dismiss the ADA claim, which the court

25  rejected as bordering on the frivolous.  During this time, defendant had improved Target.com to

26  make it more accessible using a plan submitted by plaintiffs prior to the commencement of this

27  action.

28
                                            2

**United States District Court**
For the Northern District of California

1    The parties settled in September 2008. Defendant agreed to modify its website to meet

2    accessibility guidelines and permit plaintiffs to monitor its continued compliance. Additionally,

3    defendant established a six million dollar settlement fund to compensate members of the California

4    subclass.

5

6    LEGAL STANDARD

7    A prevailing plaintiff may petition for attorneys' fees under the fee-shifting provisions of the

8    federal ADA, see 42 U.S.C. § 12205, the Unruh Act, see Cal. Civ. Code § 52(a), and the Disabled

9    Persons Act, see Cal. Civ. Code § 54.3(a). All three statutes provide that prevailing plaintiffs may

10   be entitled to reasonable attorneys' fees and costs, as determined by the court in its discretion.

11   Under federal law, to be considered a prevailing party the plaintiff must effect a "material alteration

12   of the legal relationship between the parties [whereby] the plaintiff becomes entitled to enforce a

13   judgment, consent decree, or settlement against the defendant." Farrar v. Hobby, 506 U.S. 103, 113

14   (1992). Defendant does not dispute that plaintiffs are a prevailing party for the purposes of

15   entitlement to fees and costs. While the statutes leave the award of attorneys' fees and costs to the

16   court's discretion, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special

17   circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)

18   (citation omitted). The court must determine the amount in fees and costs to which plaintiffs are

19   reasonably entitled. See id. at 433.

20   When California law governs the claim, it also governs the award of fees. Vizcaino v.

21   Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). California allows courts to award attorneys'

22   fees under the following circumstances:

23       [A] court may award attorneys' fees to a successful party against one or more
         opposing parties in any action which has resulted in the enforcement of an important
24       right affecting the public interest if: (a) a significant benefit, whether pecuniary or
         nonpecuniary, has been conferred on the general public or a large class of persons, (b)
25       the necessity and financial burden of private enforcement, or of enforcement by one
         public entity against another public entity, are such as to make the award appropriate,
26       and (c) such fees should not in the interest of justice be paid out of the recovery . . . .

27

28                                                   3

Cal. Code Civ. Proc. § 1021.5.  To establish reasonable attorneys' fees, California employs the lodestar method, which "multipl[ies] the number of hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors . . . ."  Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000).

DISCUSSION

I.      The Lodestar

        The "lodestar is the product of reasonable hours times a reasonable rate."  City of Burlington v. Dague, 505 U.S. 557, 559 (1992) (citations omitted).  The Supreme Court has established a "strong presumption" that lodestar fees are reasonable.  Id. at 562.  Plaintiffs' attorney bears the burden of submitting detailed records documenting "the hours worked and rates claimed."  Hensley, 461 U.S. at 434.  The court may reduce those hours if the documentation is inadequate, the submitted hours are duplicative or inefficient, or the requested fees appear excessive or otherwise unnecessary.  Id.; see also Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

        A.      Hourly Rates

        Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation."  Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992).  As a general rule, the forum district represents the relevant legal community.  See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  In this case, the forum district is the Northern District of California.  Since these are market rates, and therefore subject to normal performance expectations, they "d[o] not already reflect an expectation of excellent results."  Vizcaino, 290 F.3d at 1051.  The court is satisfied that the plaintiffs' requested rates are in line with those billed by attorneys in this district experienced in complex litigation, as analyzed and thoroughly discussed by plaintiffs' attorneys' fees expert.  See Docket No. 191 (Pearl Dec.).

4

United States District Court

For the Northern District of California

1    While defendant does not dispute the rates charged by plaintiffs' lawyers, it does challenge

2    the rates of summer associates and paralegals.  Defendant also objects to funding plaintiffs' practice

3    of using more expensive partner time for some drafting and research tasks.  First, the court finds

4    plaintiffs' evidence of paralegal and summer associate rates in this judicial district convincing, see

5    id., and notes that defendant's own counsel charges similar rates for paralegals, see id. at 23.

6    Second, as this court has consistently held, the court may not condition fees on plaintiffs' counsel's

7    conformance to the typical commercial law firm's pyramidal staffing structure.  See, e.g., Chabner v.

8    United of Omaha Life Ins. Co., No. C 95-0447, 1999 WL 33227443, at *5 (N.D. Cal. Oct. 12, 1999)

9    (Patel, J.).  The legal profession is diverse enough to embrace a variety of ways of conducting

10   effective litigation, some of which may involve partners with relevant expertise conducting research

11   or preparing a witness.   As this court noted in the past, the benefits of the pyramidal structure itself

12   have been a subject of debate within the profession for some time.  See, e.g., United States v. San

13   Francisco, 748 F. Supp. 1416, 1432 (N.D. Cal. 1990) (Patel, J.).  Plaintiffs' proposed hourly rates are

14   granted as requested.

15

16       B.       Reduction of Fees

17   Plaintiffs request that all hours be counted as part of the lodestar, regardless of whether the

18   hours were spent pursuing successful or unsuccessful motions.  Defendant opposes paying any of the

19   hours spent on unsuccessful motions or media appearances.

20   Hours spent on unsuccessful motions are excluded when the motion is unrelated to the

21   prevailing plaintiff's successful claim.  Hensley, 461 U.S. at 440.  "Where a lawsuit consists of

22   related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced

23   simply because the district court did not adopt each contention raised.  But where the plaintiff

24   achieved only limited success, the district court should award only that amount of fees that is

25   reasonable in relation to the results obtained."  Id.  The plaintiffs' attorney is entitled to reasonable

26   remuneration for hours spent on a claim that contributes to the ultimate success of plaintiff's main

27   goals.  See Cabrales v. County of Los Angeles, 935 F.2d 1050, 1052 (9th Cir. 1991).

28
                                          5

United States District Court
For the Northern District of California

1    In cases involving novel arguments or extensions of existing law, the proper test is whether it

2  was reasonable at the time to work on an ultimately unsuccessful motion rather than ask whether, in

3  hindsight, the plaintiff could have prevailed without it.  See Walsh ex rel. Walsh v. Tamalpais Union

4  High Sch. Dist., No. C-96-3037, 1998 U.S. Dist. LEXIS 22704 (N.D. Cal. Nov. 19, 1998) (Legge,

5  J.).  This was such a case.  Plaintiffs' unsuccessful pursuit of a preliminary injunction yielded parts

6  of the evidentiary record used to support their commonality argument at the certification stage.  The

7  plaintiffs are granted half of all hours spent litigating the unsuccessful preliminary injunction, in the

8  amount of $116,986.25.

9    Similar reasoning applies to plaintiffs' request for hours spent on their supplemental class

10  certification briefing.  This briefing should not be fully compensated, since it was necessitated by

11  deficiencies in plaintiffs' first round of briefing.  The plaintiffs are granted two-thirds of the hours

12  spent on the supplemental class certification briefing, i.e., $17,175.33, instead of the $25,763

13  requested.

14    When a plaintiff's attorney gives press conferences or performs other public relations work

15  directly and intimately connected to the successful representation of the client, he or she is entitled

16  to compensation.  See Davis, 976 F.2d at 1545.  However, "the district court should disallow any

17  hours claimed by [plaintiff's] counsel for public relations work which did not contribute, directly

18  and substantially, to the attainment of [plaintiff's] litigation goals."  Id.  In class actions, it is doubly

19  necessary to publicize plaintiffs' efforts in order to keep class members informed of the course of the

20  action and to help identify additional class members.  See United States v. San Francisco, 748 F.

21  Supp. at 1423.  While recognizing the important function of media work in class actions, the court

22  also notes that the class counsel's reputation also stands to gain considerably.  Accordingly,

23  plaintiffs' counsel are granted half of the hours spent on media work, in the amount of $13,969.75.

24

25    C.    Unmodified Fees

26    The following fees, requested by plaintiffs and opposed by defendant, are granted in their

27  entirety.  Defendant challenged a number of insufficiently documented time entries, which the

28

1   plaintiffs have agreed to offset by a five percent voluntary reduction in their merit-based fees.  This

2   voluntary reduction is sufficient to offset the flawed time entries identified.  Defendant also asserts

3   that preparation of an expert witness by two attorneys constituted unnecessarily duplicative billing.

4   In fact, it is often more efficient for lawyers with complementary skill sets to cooperate in

5   performing a task.  The use of two attorneys for such a task is hardly extravagant.

6       Defendant also opposes awarding fees for travel time and time used to perform clerical tasks.

7   The Ninth Circuit has established that travel time and clerical tasks are reasonably compensated at

8   normal hourly rates if such is the custom in the relevant legal market.  See Davis, 976 F.2d at 1543;

9   Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253,

10  1256 (9th Cir. 2006).  Plaintiffs have documented this custom to the court's satisfaction.  See Docket

11  No. 198 (Paradis Dec.) ¶ 6.  The custom in this district of charging for word processing and other

12  clerical tasks has also been well-established.  See, e.g., Finkelstein v. Bergna, 804 F. Supp. 1235,

13  1260 (N.D. Cal. 1992) (Conti, J.) (finding that "it has become the prevailing practice in firms in the

14  San Francisco area to bill clients separately for word processing support work").

15      Finally, defendant would exclude the time plaintiffs' counsel spent in connection with

16  individuals who turned out not to be class members.  In class actions, the outer edges of the class are

17  often blurry and may require additional investigation to firmly establish class membership.  This

18  task will sometimes involve contacting or deposing individuals who might end up outside of the

19  class definition.  The test is the same as for unsuccessful motions: class counsel is entitled to

20  compensation for his reasonable efforts as long as they advanced the class's ultimate goals.

21  Cabrales, 935 F.2d at 1052.  Here, the court finds it reasonable to compensate plaintiffs for these

22  hours.

23

24  II.   Multiplier

25      Plaintiffs' counsel has requested a 2.0 multiplier, and defendant has argued that no multiplier

26  whatsoever should be granted.  There is a strong presumption that the lodestar—computed as the

27  product of hours billed times a reasonable hourly rate—represents a reasonable fee.  See Dague, 505

28

*United States District Court*
For the Northern District of California

1   U.S. at 562.  A party that requests an augmentation of its lodestar figure through the use of a

2   multiplier bears the burden of showing "that such an adjustment is necessary to the determination of

3   a reasonable fee."  <u>Blum v. Stenson</u>, 465 U.S. 886, 898 (1984); <u>see also</u> <u>Ketchum</u>, 24 Cal. 4th at

4   1138 (establishing that, under California law, "the party seeking a fee enhancement bears the burden

5   of proof").  As a result, district courts will use a multiplier only in "rare and exceptional cases."

6   <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000).  This is such a case.

7        Federal law does not permit the use of multipliers in actions brought under fee-shifting

8   statutes like the ADA, <u>see</u> <u>Dague,</u> 505 U.S. at 566, but California law does, <u>see</u> <u>Ketchum</u>, 24 Cal.

9   4th at 1138.  "When a party prevails under both federal and state law, the district court may apply

10  the more generous provisions of state law in calculating a fee award, such as including a multiplier

11  for contingent fee risk."  <u>Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's</u>

12  <u>Ass'n</u>, 523 F. Supp. 2d 1164, 1170 (S.D. Cal. 2007), <u>citing</u> <u>Mangold v. Cal. Pub. Util. Comm'n</u>, 67

13  F.3d 1470, 1479 (9th Cir. 1995).  This action involved California claims and one federal claim.

14  Under the circumstances of the case, it is reasonable for the court to consider applying a multiplier.

15  A court may augment or reduce the lodestar figure in order to bring it in line with "the range of fees

16  freely negotiated in the legal marketplace in comparable litigation."  <u>Lealao</u>, 82 Cal. App. 4th at 50.

17  In determining the exact quantum of the multiplier, California courts evaluate several factors,

18  including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in

19  presenting them, (3) the extent to which the nature of the litigation precluded other employment by

20  the attorneys, [and] (4) the contingent nature of the fee award."  <u>Ketchum</u>, 24 Cal. 4th at 1132.[1]  The

21  total fee amount is then compared against lodestar multipliers in comparable cases.

22

23        A.    <u>Factors Affecting the Multiplier</u>

24        Exceptional results in the face of vigorous opposition and in the absence of supporting

25  precedent militate in favor of higher multiplier values.  <u>See</u> <u>Vizcaino</u>, 290 F.3d at 1048.  As

26  discussed below, plaintiffs' litigation strategy involved the extension of important areas of disability

27  law into an emerging form of electronic commerce that promises to grow in importance.  While

28
                                        8

1   similar results in established areas of law might be less impressive or worthy of additional

2   encouragement, it takes exceptional creativity to establish the lawfulness of extending established

3   rights into uncharted legal territory.  When successful, these efforts must earn a premium to

4   encourage novel legal arguments and a stringent examination of the accessability of new

5   technologies.  The alternative is a stagnant legal landscape where advances in technology render

6   statutory protections ineffective or obsolete.

7       While every action enforcing a right sends a message to the losing party or others like it,

8   presumably affecting their future behavior, the public must benefit in a more tangible way to warrant

9   the award of a multiplier.  See Flannery v. Cal. Highway Patrol, 61 Cal. App. 4th 629, 637 (Cal.

10  App. 1998).  In Flannery, the state court found that a successful action, even when it sent a message

11  that sexual discrimination and harassment would not be tolerated, failed to register as a significant

12  public benefit.  Id.  The court found that the lawsuit's primary result was to secure a remedy for the

13  plaintiff, while the public received only the generic assurance that anti-discrimination laws will be

14  enforced.  Id.  Unlike the Flannery plaintiff, plaintiffs in this action have not only vindicated their

15  own rights, but have created a six-million dollar damages fund for a California class, prompted

16  defendant to effect substantial changes to its website enabling the plaintiff class to access it, and

17  established for the first time that equal access to internet commerce is guaranteed under California

18  law and partially protected by the ADA.

19      The scope and significance of plaintiffs' victory cannot be overlooked—nor has it been

20  ignored by the country's largest retailers, many of whom promptly revised their websites following

21  this lawsuit.  See Docket No. 199 (Goldstein Dec.) ¶ 6 & Exh. C.  As in Heritage v. Town of

22  Woodside, Nos. A120749 & A120757, 2008 WL 4868816 (Cal. Ct. App. 2008), a case in which the

23  state court awarded a 2.0 multiplier, the present action "added to the jurisprudence of California on

24  legal issues of public interest" by expanding important civil rights to the disabled, with the

25  assistance of little existing case law.  See id. at 3.  Plaintiffs have substantially achieved their goals.

26  In addition to securing a six million dollar settlement fund, they have compelled defendant, and

27

28
                                                    9

**United States District Court**

For the Northern District of California

1   influenced other corporations, to alter their respective web presences.  Plaintiffs have broken new

2   ground in an important area of law.

3       Class counsel's skill is also a factor to be considered.  In the court's estimation, and as

4   demonstrated by the result obtained above, class counsel has prosecuted the instant action with

5   exceptional skill.  Not every tactical decision was flawless, as is almost always true, but the court

6   has already reduced the lodestar to account for unsuccessful motions.  The skill of class counsel

7   supports a substantial multiplier.

8       Defendant does not dispute plaintiffs' counsel's representations that plaintiffs' counsel

9   turned down other potential cases in order to pursue the instant case.  The need to ensure a steady

10  supply of excellent lawyers advocating public causes militates in favor of awarding a multiplier

11  greater than one in this case.  That said, the record does not indicate that any of plaintiffs' attorneys

12  dedicated themselves exclusively to this case or document how many or what sort of opportunities

13  were turned down in order to continue with this action.  This factor militates in favor of a substantial

14  multiplier, though not necessarily 2.0.

15      Risk of non-payment is also an issue to be considered.  "A contingent fee must be higher

16  than a fee for the same legal services paid as they are performed.  The contingent fee compensates

17  the lawyer not only for the legal services he renders but for the loan of those services."  <u>Ketchum</u>, 24

18  Cal. 4th at 1132-1133, <u>citing</u> Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992).  After

19  careful consideration, the <u>Ketchum</u> court declined to adopt the <u>Dague</u> rule.  <u>Id.</u> at 1136-37.  "The

20  purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial

21  incentives for attorneys enforcing important constitutional rights . . . into line with incentives they

22  have to undertake claims for which they are paid on a fee-for-services basis."  <u>Id.</u> at 1133.

23      Plaintiffs faced considerable risk in undertaking the present action.  Defendant is correct that

24  the risk of non-payment of any recovery was low considering Target's financial resources.

25  However, defendant makes a basic mathematical error by suggesting that risk should be discounted

26  because the work was divided among multiple firms.  Merely because the risk was spread around to

27

28                                                  10

**United States District Court**
For the Northern District of California

1   more than one firm does not mean that the risk of losing the lawsuit was somehow diminished: the

2   amount at stake is less for each firm, but the risk of not getting paid remains the same.

3          In terms of the risk that plaintiffs would not prevail, it should be noted that defendant is a

4   large national corporation whose resources dwarfed those available to plaintiffs.  The arguments

5   were new, the law uncharted.  Defendant's arguments threatened to derail plaintiffs' strategy on

6   more than one occasion.  Without much legal precedent to guide their assessment of risk, plaintiffs'

7   attorneys can hardly be faulted for seeking a higher than usual return on their investment.  In

8   summary, this was a substantially risky case; it merits a substantial multiplier.

9

10         B.     Multipliers in Similar Cases

11         California state courts have awarded multipliers greater than one for successful cases brought

12  under the Unruh Act and federal law, placing special emphasis on the results obtained.  See, e.g.,

13  Donovan v. Poway Unified School Dist., 167 Cal. App. 4th 567, 628 (2008) (awarding a 1.25

14  multiplier in light of the case's difficulty and risk, but declining to grant the 1.7 multiplier plaintiffs

15  had requested).  When plaintiffs have been only partially successful in their claims or the lawsuit

16  proved unexceptional, the courts have on occasion reduced the multiplier to less than 1, reflecting

17  factors such as the fraction of the claims that plaintiffs failed to win or the quality of counsel's legal

18  representation.  See, e.g., Fair Hous. Council v. Penasquitos Casablanca Owner's Ass'n, 523 F.

19  Supp. 2d 1164, 1178 (S.D. Cal. 2007) (granting a 0.61 multiplier).

20         Courts have awarded 2.0 multipliers in those few exceptional cases where the risk of non-

21  payment was so overwhelming that it had to be offset by the expectation of substantial attorneys'

22  fees.  In Woodside, which plaintiffs cite in support of a 2.0 multiplier, the court noted that the 2.0

23  multiplier was generous but found it to be within the range of acceptability, given the uncertainty of

24  the outcome and protracted appellate litigation.  2008 WL 4868816 at *7.  Discussing the multipliers

25  generally awarded in the San Francisco area, this court previously underscored that 2.0 was usually

26  the upper limit for cases that involved novel issues, high risk, and low availability of comparable

27

28
                                           11

United States District Court

For the Northern District of California

1   counsel.  See United States v. San Francisco, 748 F. Supp. 1416, 1435-1436 (N.D. Cal. 1990) (Patel,

2   J.).

3        Even when courts have declined to grant multipliers of 2.0, they have adjusted multipliers

4   upward to reflect delays in expected payment and the counsel's effective loan of legal services to the

5   client class.  See, e.g., Stevens v. Vons Cos., 2d Civil Nos. B196755, B201528, 2009 WL 117902, at

6   *10 (Cal. Ct. App. 2009) (upholding 1.4 and 1.6 multipliers in light of three-year duration of the

7   lawsuit during which class counsel received no compensation); Donovan, 167 Cal. App. 4th at 628

8   (affirming a 1.25 multiplier where risk and novelty of arguments were factors but rejecting a 1.75

9   value as excessive).  Like the prevailing plaintiffs in Stevens, plaintiffs' victory came only after

10  multi-year litigation during which class counsel received no fees.

11       The instant case also resembles a previous decision of this court, involving the same counsel,

12  a similarly large retailer, and a comparable victory.  See Lieber v. Macy's West, Inc., 80 F. Supp. 2d

13  1065, 1066 (N.D. Cal. 1999) (Patel, J.).  The court emphasized the risk associated with the counsel's

14  decision to represent the class, ultimately resulting in a bench trial.  The attorneys' fee award

15  included a 1.75 multiplier.  Lieber v. Macy's West, Inc., No. C 96-2955 (N.D. Cal. Dec 18, 2000)

16  (Patel. J.).  Unlike the Lieber plaintiffs, plaintiffs in the present case settled before the trial stage

17  and, in the court's estimation, took on a somewhat smaller risk.

18       In light of these considerations, the court grants a multiplier of 1.65.

19       Defendant urges the court to cross-check the final fee award obtained through the multiplier

20  method against percentage awards in common fund cases.  It cites a Colorado district court decision

21  that cross-checked a lodestar total only against the part of the settlement that could be monetized

22  with certainty.  See Lucas v. Kmart Corp., No. 99-CV-01923, 2006 WL 2729260 (D. Colo. July 27,

23  2006).  In Lucas, the Colorado court relied upon a common fund case, Vaszlavik v. Storage Tech.

24  Corp., No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140 (D. Colo. Mar. 9, 2000), to cross-check the

25  lodestar against a thirteen million dollar damages fund while ignoring the admittedly

26  "comprehensive and far-reaching" injunctive relief the plaintiff had obtained.  Id. at *2.  The court

27  declines to follow this path in the instant case.  Here, the primary remedy sought by plaintiffs was

28

12

injunctive relief, not monetary damages.  The court need not limit itself to monetary damages or

cash settlement funds in assessing the benefits of a litigation.  Vizcaino, 290 F.3d at 1049.  Some

important benefits are difficult to quantify, such as clarifying a certain area of law, id., forcing

changes in corporate policies affecting thousands of individuals, id., or educating the public that the

law requires them to accommodate persons with disabilities, Fischer, 214 F.3d at 1120.[2]  These are

more than merely "technical" victories; they are the very heart of what plaintiffs sought to

accomplish.  See id.


III.    Costs Other Than Attorneys' Fees

        Plaintiffs, as the prevailing party, are entitled to costs other than attorneys' fees, unless

otherwise provided by federal statute.  Fed. R. Civ. P. 54(d)(1).  Defendant does not dispute

plaintiffs' requested total, which the court views as well-documented and reasonable.  Costs are

granted in their entirety, in the amount of $194,353.


IV.    Fees on Fees

        "[T]ime spent by counsel in establishing the right to a fee award is compensable."  Davis,

976 F.2d at 1544.  California also allows the prevailing party's counsel to recover a "fee on fees,"

since otherwise the interminable litigation related to fees would frustrate the "purpose behind

statutory fee authorizations[, which are meant to] encourage attorneys to act as private attorneys

general and to vindicate important rights affecting the public interest."  Ketchum v. Moses, 24 Cal.

4th 1122, 1133-1134 (Cal. 2001).  After a review of the time records plaintiffs have submitted, the

court has determined that $125,000 constitutes a reasonable award of fees for time used litigating

fees and costs, rather than the requested $160,000.


V.    Calculation of Fees

        The award of fees and costs is calculated as follows.  Plaintiffs' request for $2,321,050.50 in

attorneys' fees is reduced by $13,969.75 (media), $116,986.25 (preliminary injunction), and

United States District Court

For the Northern District of California

1    $8,587.66 (supplemental class certification briefing).  The total after these reductions is

2    $2,181,506.83.  Applying a 5% voluntary reduction in fees, the lodestar merit fees to which

3    plaintiffs are entitled becomes $2,072,431.49.  Applying a 1.65 multiplier to this amount yields a

4    total merit-based fee of $3,419,511.96.  Additionally, the court awards costs of $194,353 and fees on

5    fees of $125,000.

6

7

8

9    CONCLUSION

10         Plaintiffs' motion for reasonable attorneys' fees and costs is GRANTED as described above.

11   Attorneys' fees and costs shall be awarded in the amount of $3,738,864.96.

12

13         IT IS SO ORDERED.

14

15

16   Dated: August 3, 2009                              _____

                                                        MARILYN HALL PATEL
17                                                      United States District Court Judge
                                                        Northern District of California
18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

14

**ENDNOTES**

1.      In <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), the Ninth Circuit listed twelve factors courts should consider when evaluating attorneys' fees in federal cases.  In addition to California's four factors, <u>Kerr</u> requires a district court to consider "the time and labor required, . . . the customary fee, . . . time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases." <u>Id.</u> at 70.  The court has already considered most of these factors in its determination of the lodestar amount, and now incorporates the remaining ones into its evaluation of the multiplier.  Since the court is awarding the multiplier pursuant the more generous provisions of California law, it has structured the following discussion according to the four factors articulated by California precedent.  <u>See</u> <u>Ketchum</u>, 24 Cal. 4th at 1132.  To avoid double-counting, the court has excluded the factors already discussed in the lodestar from its evaluation of the multiplier.  <u>See</u> <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363-364 (9th Cir. 1996) (only factors "that are not already subsumed in the initial lodestar calculation" are relevant).

2.      Plaintiffs' counsel contend that their work on this case has greatly increased access to target.com for tens of thousands of blind people.  Defendants note that the accessibility of target.com was a disputed issue and that no conclusive finding was made.  Yet there is ample evidence in the record of defendant's significant moves to upgrade the accessibility of its website.