Deborah J. Fox (SBN 110929)
dfox@meyersnave.com
Edward A. Grutzmacher (SBN 228649)
egrutzmacher@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
333 South Grand Avenue, Suite 1670
Los Angeles, California 90071
Telephone: (213) 626-2906
Facsimile: (213) 626-0215

Attorneys for Intervenor
CITY OF CHINO

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., | CASE NO. 2:90-CV-00520-LKK-JFM |
| Plaintiffs, | CITY OF CHINO'S REPLY BRIEF IN SUPPORT OF THE CITY'S MOTION TO INTERVENE |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | Hearing:<br>Date:  August 9, 2010<br>Time: 10:00 a.m.<br>Dept.: 4 |
| Defendants. | Hon. Lawrence K. Karlton |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. The City's Intervention Is Neither Premature Nor Improperly Contingent ................................................................................................. 2

    B. The City Does Not Oppose A Reasonable Limitation On The Scope of Its Intervention ....................................................................... 6

III. CONCLUSION ..................................................................................................... 7

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Greene v. United States,*
   996 F.2d 973 (9th Cir. 1993) ........................................................................... 4

*Sierra Club v. United States EPA,*
   995 F.2d 1478 (9th Cir. 1993) ......................................................................... 4

*Southern Cal. Edison Co. v. Lynch,*
   307 F.3d 794 (9th Cir. 2002) ........................................................................... 4

*Washington Elec. Co-op, Inc. v. Massachusetts Mun. Wholesale Elec. Co.,*
   922 F.2d 92 (2nd Cir. 1990) ............................................................................ 5

I.   INTRODUCTION

Defendants State of California, *et al.*'s ("CDCR") and Plaintiffs Ralph Coleman *et al.*'s ("Plaintiffs';" collectively "the Opponents") main argument against the City of Chino's ("the City's") motion to intervene is that the motion is premature and improperly contingent on future events. The Opponents claim that because no formal request has been made that the Court order waivers of the California Environmental Quality Act ("CEQA") the City's motion to intervene is premature. However, it is not clear that such a request is even required. CDCR's response to this Court's June 15, 2010 Order specifically asks this Court to withhold any order approving a waiver of state law for 30 days while CDCR checks with its bond counsel as to the impacts of any such waiver on CDCR's bond financing. Docket No. 3870. This clearly indicates that CDCR believes that such an order could be forthcoming at any time. Moreover, this argument is rendered largely moot by CDCR's filing of Docket Number 3889 in which CDCR states that it is prepared to submit an order to the Court for the waiver of CEQA if requested to do so by the Court. In any event, even if a formal request was required before the Court could order waiver of CEQA, Federal Rules of Civil Procedure ("FRCP") Rule 24 does not require that the City wait to see if such materializes. Rather, Rule 24 simply requires that there is a relationship between the legally protected interest and the claims at play.

Similarly, the Opponents argue that the violation of the City's rights is contingent on future events and, therefore, not the type of harm that can give basis for intervention. The Opponents, however, misapply the law concerning the contingency of rights. The contingent rights identified in the cases cited by the Opponents involve issues of far greater unpredictability than simply whether or not a particular motion or request is currently pending before a court. Likewise, CDCR claims the City's motion to intervene is contingent on whether CDCR determines that the proposed waivers of CEQA would not jeopardize its ability to construct

1 improvements at Stark. This argument is also rendered moot by CDCR's recent
2 filing. Moreover, whether CDCR ultimately determines that it can live with its
3 proposed waivers of CEQA is irrelevant to the question of whether the City's rights
4 would be violated if those waivers are granted.

5 Finally, the Opponents argue that the City's intervention should be limited to
6 the issue of the proposed waiver of CEQA. While the City agrees that the City's
7 intervention should be of a limited nature, the Opponents' definition of the City's
8 role in this case is too narrow. As alleged in the City's motion to intervene and
9 supporting documentation, the City's rights are impacted by the daily operation of
10 the California Institution for Men ("CIM") and the Stark facility. To the extent that
11 any improvements at CIM or Stark will impact the City's residents, employees,
12 and/or property, the City submits that it should have the opportunity to voice any
13 concerns to the Court on these matters and the City impacts.

14 II.   ARGUMENT
15     A.   *The City's Intervention Is Neither Premature Nor Improperly*
16          *Contingent.*

17 As a preliminary matter, the Opponents misconstrue the City's motion to
18 intervene as claiming that CDCR's mere *proposal* to waive CEQA violates the City's
19 rights. Docket No. 3887 at 5-6. However, the City has always claimed that it is the
20 actual waiver of CEQA that would violate the City's rights. Notably, the Opponents
21 do not refute the City's contention. Rather, the Opponents only claim that the City's
22 motion is premature or improperly based on contingent rights because the Opponents
23 have not made a formal request to the Court to waive CEQA. The issue before this
24 Court is whether the City should be allowed to intervene now, or whether the City
25 must renew its motion either after this Court orders such a waiver or after a formal
26 request for waiver of CEQA is made.
27 FRCP Rule 24 does not require that this Court delay the City's intervention.
28 First, the Opponents do not argue that the Court must wait for a formal request from

one of the parties to waive state law before ordering such a waiver. Instead, all that the Opponents claim is that the Court did not order CDCR to request such a waiver and, in the past, the Court has mandated that Plaintiffs make such a request. Docket No. 3887 at 4. These recitations of past practice, however, do not assuage the City's fears that an order from this Court granting the requested waivers could issue at any time. Indeed, this concern is shared by CDCR, who, in its response to this Court's June 15 Order, requested a 30-day grace period to check with its bond counsel as to the impact of the proposed waiver of CEQA:

> Thus, Defendants respectfully request that should this Court be inclined to waive any or all of the above-referenced statutes and regulations, *that it not issue such an order* until Defendants have received a response from bond counsel and had an opportunity to update this Court on that response.

Docket No. 3870 at 6 (emphasis added).

This request implicitly acknowledges that CDCR itself expected that the Court could order the waivers of CEQA at any time. Why else would CDCR need to request that the Court delay any order providing for the CEQA waivers?[1] As such, any argument that the City's motion to intervene is premature simply because no party has filed a formal request for waivers of CEQA falls flat because there does not appear to be any such limitation on the Court's exercise of its discretion.

Moreover, CDCR recently filed Docket No. 3889 which details CDCR's bond counsel's purported conditional approval of CDCR's proposed waivers of CEQA. At the end of this document, CDCR states that it is prepared to submit a proposed

---

[1] CDCR weakly argues that its 30-day requested grace period has not yet expired. While this was true at the time of CDCR's opposition brief, the 30 days has already expired and, as set forth in Docket No. 3889, CDCR has already received its advice from bond counsel and reported to the Court the results of that consultation.

1 order for the waiver of CEQA at the Court's request. Docket No. 3889 at 3. Thus, the City's intervention is required now in order to oppose any such order.

Second, as tacitly acknowledged by the Opponents, there is no question that a waiver of CEQA would impact the City's rights. Thus, there is nothing in Rule 24 that would require the City to wait until after the Court issues an order to waive CEQA, or until after a formal request for such a waiver, to intervene in this case to protect these rights. Indeed, as the City has previously noted "[w]hether an applicant for intervention demonstrates sufficient interest in an action is a *practical*, threshold inquiry." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (emphasis added). "It is generally enough that the interest is protectable under some law, and that there is *a relationship* between the legally protected interest and the claims at issue." *Sierra Club v. United States EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) (emphasis added). Here, the City's rights would, as a practical matter, be impeded should the Court grant waivers of CEQA.

The Opponents counter that the City's rights are only "contingent" because: (1) this Court has not "indicated that it is inclined" to waive CEQA; (2) no party has formally requested a waiver; and (3) CDCR is still making up its mind about whether waiving CEQA would impair its ability to complete improvements at Stark. Docket No. 3887 at 5-6. None of these factors, however, is the type of contingency that would bar intervention. For example, in *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802-03 (9th Cir. 2002) the court denied intervention to two electric power wholesalers who sought to intervene in a dispute between Southern California Edison ("SCE"), an electric retailer, and the California Public Utilities Commission on the basis that SCE owed the wholesalers money that SCE was unable to pay, allegedly due to the Commission's actions. The court held that the current lawsuit would not resolve the wholesalers claims and that the wholesalers were improperly seeking intervention on the basis of "a contingent, unsecured claim against a third-party debtor." *Id.* at 803.

Similarly, in *Washington Elec. Co-op, Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2nd Cir. 1990), a Vermont state agency sought to intervene in a case between a Vermont electrical cooperative and an out-of-state electrical wholesaler allegedly to protect the interests of other Vermont ratepayers who may also have had claims against the wholesaler for reimbursement. The court, however, denied intervention because the rights the agency sought to protect were based on a "double contingency" of the electrical cooperative winning its suit and then the agency's board making a ruling that the ratepayers were entitled to reimbursement. *Id.*

Here, none of the three "contingencies" alleged by the Opponents is of the same type as those identified in the cases above that would act to bar intervention. First, the fact that the Court has not yet ruled on the proposed waivers of CEQA or otherwise indicated that it is inclined to do so is not the type of contingency that would bar intervention. The City is not required to wait until after the Court has ordered a waiver of CEQA to intervene in an attempt to then change the Court's mind. Indeed, if the City proceeded as such, the City would be accused of belatedly filing its motion to intervene. Next, the fact that no party has formally requested a waiver of CEQA is also not the type of contingency that would bar intervention. Unlike the contingencies identified above, it is clear that the City's rights are directly impacted by the proposed waiver, not a secondary right contingent upon the outcome of the case or some external factor. As noted above, it is not clear that the Court is required to wait for a formal request before ordering a waiver of state law, but this is really of no moment here because CDCR's own proposal identifies the waiver of CEQA as a possible outcome. The City should be granted leave to intervene now to be able to offer the Court its arguments why such a waiver should not be granted. Finally, CDCR originally indicated that it is not itself convinced that the waiver of CEQA is a good idea. Whether and how strongly CDCR advocates for the proposed waiver of CEQA is irrelevant, however, to the issue of whether such a waiver would

5

1  impact the City's rights.  Should CDCR ultimately determine that the waivers of
2  CEQA are not a good idea, the City would welcome CDCR's support in opposing
3  such waivers, but CDCR's position on the waivers does not change the fact that the
4  City's rights would be impacted if the waivers are granted.  In any event, it appears
5  that CDCR has changed its mind after consultation with bond counsel and is now
6  prepared to submit a proposed order granting the waivers of CEQA.  Thus, the City's
7  interest no longer relies to any extent on CDCR's position on the proposed waivers.
8       For all of these reasons, the Opponents have not shown that the City lacks the
9  requisite protectable interests for intervention.  As this was the only ground on which
10 the Opponents opposed intervention, the City's motion should be granted.
11      B.   *The City Does Not Oppose A Reasonable Limitation On The Scope of*
12           *Its Intervention.*
13      The Opponents request that, in the event the Court grants the City's motion to
14 intervene, the Court limit the City's intervention to the issues raised in the City's
15 motion.  The City has no objections to certain reasonable limitations on the City's
16 intervention.  The City respectfully requests, however, that the City's intervention
17 be broad enough to ensure that the City is able to adequately defend the City's
18 interests in this case.  Specifically, the City would request that any limitation not be
19 so narrow as to restrict the City's ability to challenge particular improvements at the
20 Stark facility that may negatively impact the City, its residents, employees, and
21 property.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1  III.   *CONCLUSION*

2       The Opponents have failed to show any reason why intervention should not
3  be granted as a matter of right.  As such, the City respectfully requests that the Court
4  grant the City's proposed intervention.

6  DATED:  August 2, 2010         MEYERS, NAVE, RIBACK, SILVER & WILSON

8                                  By:   /s/ Deborah J. Fox
                                     DEBORAH J. FOX
9                                    Attorneys for Intervernor
10                                   CITY OF CHINO

1486794.1
1433.002