| | |
|---|---|
| PRISON LAW OFFICE<br>DONALD SPECTER, Bar No. 83925<br>STEVEN FAMA, Bar No. 99641<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621 | ROSEN, BIEN & GALVAN, LLP<br>MICHAEL W. BIEN, Bar No. 96891<br>ERNEST GALVAN, Bar No. 196065<br>JANE E. KAHN, Bar No. 112239<br>AMY WHELAN, Bar No. 215675<br>LISA ELLS, Bar No. 243657<br>315 Montgomery Street, 10th Floor<br>San Francisco, California 94104-1823<br>Telephone: (415) 433-6830 |
| THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>CLAUDIA CENTER, Bar No. 158255<br>600 Harrison Street, Suite 120<br>San Francisco, California 94107-1389<br>Telephone: (415) 864-8848 | BINGHAM, McCUTCHEN, LLP<br>WARREN E. GEORGE, Bar No. 53588<br>Three Embarcadero Center<br>San Francisco, California 94111-4066<br>Telephone: (415) 393-2000 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME**<br><br>Date:  TBD<br>Time:  TBD<br>Place: Courtroom 4, 15th Floor<br>Judge: Honorable Lawrence K. Karlton |

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| ASU | Administrative Segregation Unit |
| CDCR | California Department of Corrections and Rehabilitation |
| CMF | California Medical Facility |
| CSH | Coalinga State Hospital |
| DCHCS | Division of Correctional Health Care Services |
| DMH | Department of Mental Health |
| EOP | Enhanced Outpatient Program |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| ICF-H | Intermediate Care Facility – High Custody |
| MHARP | Mental Health Assessment and Referral Project |
| MHCB | Mental Health Crisis Bed |
| MHSDS | Mental Health Services Delivery System |
| PSH | Patton State Hospital |
| SHU | Security Housing Unit |
| SNY | Sensitive Needs Yard |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP | Salinas Valley State Prison |
| TC1 | SVPP Treatment Center 1 |
| TC2 | SVPP Treatment Center 2 |
| VPP | Vacaville Psychiatric Program |

[398242-1]

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES................................................................ 1

INTRODUCTION ........................................................................................................................ 1

RELEVANT PROCEDURAL HISTORY .................................................................................... 3

ARGUMENT................................................................................................................................. 7

I. THIS COURT SHOULD SHORTEN THE TIME FOR BRIEFING AND ARGUMENT ON THIS MOTION PURSUANT TO EASTERN DISTRICT LOCAL RULE 144(E) ............................................................................................. 7

II. DEFENDANTS ARE ALREADY SUBJECT TO EXISTING COURT ORDERS TO EXPEDITE SHORT AND INTERMEDIATE-TERM PROJECTS DUE TO THE OVERWHELMING SHORTAGE OF INPATIENT ICF BEDS............................................................................................ 8

III. AN EVIDENTIARY HEARING IS NECESSARY TO DETERMINE WHAT MEASURES ARE AVAILABLE TO ACCELERATE THE ACTIVATION AND LICENSING OF C5/C6 AND TO ENSURE THAT ALL NECESSARY STEPS ARE TAKEN TO ADDRESS ANY REMAINING CONSTRUCTION-RELATED OBSTACLES ....................................................................................... 11

IV. DEFENDANTS MUST ACCELERATE THE PATIENT ADMISSION PROCESSES IN C5/C6 IN ORDER TO ALLEVIATE THE EXTREME DELAYS COLEMAN CLASS MEMBERS CURRENTLY EXPERIENCE ACCESSING INPATIENT CARE ................................................................... 13

V. AN EVIDENTIARY HEARING IS ALSO NECESSARY BECAUSE OF DEFENDANTS' DELAY IN FILING THEIR COURT-ORDERED PLAN TO ALLEVIATE THE INPATIENT WAITING LISTS ....................................................... 14

CONCLUSION ........................................................................................................................... 15

[398242-1]

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Coleman v. Wilson*,
    912 F. Supp. 1282 (E.D. Cal. 1995) .............................................................................. 3

**Rules**

E.D. Cal. Local Rule 144(e) .................................................................................... 1, 7, 16

E.D. Cal. Local Rule 230(b) ............................................................................................ 8

[398242-1]

NOTICE OF MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT *Coleman* plaintiffs, through their counsel of record, will and hereby do move for an evidentiary hearing regarding the status of the Salinas Valley Psychiatric Program's C5/C6 units in light of repeated delays in completing construction and opening these emergency inpatient psychiatric hospital beds.  At the hearing, defendants should also explain their plan to admit only five patients per week into these units, and should testify regarding any steps they can take to accelerate the admission process to ten or even twenty patients per week.  Because of the undisputed and continuing Eighth Amendment violations from delayed access to higher levels of care, the undisputed demand for these beds by several hundred patients on a waiting list, and the serious risk of pain, suffering and even death due to denied access to hospitalization, plaintiffs request that the Court schedule the evidentiary hearing on an expedited schedule.  Defendants have agreed to a hearing on shortened time and the parties have filed a proposed expedited briefing schedule and hearing for this motion pursuant to Eastern District Local Rule 144(e).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Jane E. Kahn in Support of this Motion, the pleadings and orders on file in the above-captioned matters, and any oral argument or evidence permitted at any hearings on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Today, more than 400 *Coleman* class members linger on a waiting list for inpatient psychiatric hospitalization at the Intermediate Care Facility (ICF) level.  Every one of these patients has been referred by CDCR clinicians for psychiatric hospitalization, having failed to respond to mental health treatment available within the CDCR prison system, and has been accepted by clinicians at the Department of Mental Health as a patient who meets the clinical criteria for inpatient psychiatric hospitalization.  They remain on the waiting list, however, due to an ongoing and severe shortage of inpatient psychiatric hospital beds.  These class members have

1

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

waited months, or even years, to gain access to necessary inpatient psychiatric hospitalization.

In the face of this crisis, the only relief in sight for these class members is defendants' short-term plan to convert buildings 5 and 6 on the C yard at Salinas Valley State Prison (SVSP) to 116 high-custody ICF beds.[1] (Even when these beds are fully activated, defendants will be unable to meet the inpatient psychiatric needs of upwards of 300 male class members.) After more than a year of construction to convert these units, defendants were finally nearing the point of admitting patients into only one unit three months after their originally scheduled activation date. Further delays, however, in the project have surfaced. Business as usual—delays, obstacles and disorganization—are the rule of the day despite this Court's orders. An evidentiary hearing is necessary to establish whether, given the critical and urgent need for the prompt opening of the C5 and C6 hospital units, additional emergency orders are required.

Defendants have also announced that if and when they are ready to open the one unit on a temporary basis, they will admit only five patients per week, a leisurely pace designed, apparently, for the convenience of staff and to save money. Moreover, the second unit (C6) will not be completed until November 26, 2010. At that time, defendants plan to move the C5 patients into C6 and only then begin a permanent renovation of C5.[2] When C5 is "ready" (at the end of January, 2011, at the earliest, under defendants' latest construction and licensing plan) defendants still commit to only five patient admissions per week. This means C5 and C6 will not be fully occupied with patients until at least May of 2011. Plaintiffs object to this schedule, which violates this Court's numerous orders requiring defendants to accelerate court-ordered projects and patient admissions whenever possible.

---

[1] Defendants also have a 64-bed ICF unit at California Medical Facility (CMF) that they are building as part of their *long-range bed plan*. This 64-bed unit, which is insufficient even with the 116 beds in C5 and C6, is not currently scheduled to come online until November 27, 2012, more than two years from now. Docket 3724-2 at p. 35 of 68 (using numbers on the top of the page). Other long-range projects with high-custody ICF beds are even further off.

[2] At the point defendants are ready to move the C5 patients into C6, there will only be about 45 to move (five patient admissions per week between September 21, 2010, and November 19, 2010, or for nine weeks). Kahn. Decl. at ¶ 8.

2

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

A hearing is necessary, with the decision-makers present and prepared to testify under oath, to finally resolve the obstacles to full activation and to evaluate defendants' extremely slow admission plan.

## RELEVANT PROCEDURAL HISTORY

Fifteen years ago, the *Coleman* court found that the denial of timely access to inpatient hospitalization is a violation of the Eighth Amendment "[b]ecause the evidence demonstrates that there are delays everywhere within the system and that those delays result in exacerbation of illness and patient suffering." *Coleman v. Wilson*, 912 F. Supp. 1282, 1308 (E.D. Cal. 1995). Since that time, this Court has extensively reviewed access to inpatient psychiatric hospitalization and issued numerous orders directed at addressing the adequacy of existing DMH inpatient resources and timely access to those resources.[3] Following hearings in 2006 regarding defendants' long-range bed plans, for instance, this Court noted: "At issue is the access to necessary and constitutionally adequate levels of care for the most seriously mentally ill inmates in the CDCR, including the availability of sufficient numbers of acute inpatient beds, intermediate inpatient beds and mental health crisis beds…It is undisputed that the shortage is leaving critically mentally ill inmates languishing in horrific conditions without access to immediately necessary mental health care." Docket 1800 at 2 (5/2/06 Order). By June 28, 2006, the Court had joined the Department of Mental Health as a defendant in the *Coleman* case in order to ensure that the shortage of inpatient beds for CDCR patients could be more effectively addressed. Docket 1855 at ¶ 1.

Despite these efforts, the California prison system has utterly failed to provide timely access to inpatient psychiatric hospitalization to hundreds of *Coleman* class members desperately in need of that critical level of care. The result has been a constant waiting list of more than 400 patients with serious, often life-threatening mental health issues who wait months, or even years,

---

[3] For a sample of this Court's numerous orders, *see* Docket 2857 at paragraph 4 and footnote 1 (Jane E. Kahn Declaration in Support of Plaintiffs' Motion for Injunctive Relief Requiring Timely Access to Inpatient Psychiatric Hospitalization, filed under seal).

3

[398242-1]

before being admitted to an Intermediate Care Facility (ICF) bed. While those patients wait, they consume either scarce Mental Health Crisis Bed (MHCB) or inpatient acute psychiatric hospital bed resources, or are scattered throughout administrative segregation, Enhanced Outpatient Programs (EOPs) or even general population units that cannot meet their mental health needs. This logjam wreaks havoc throughout the mental health system, further backlogging the ability of patients to access MHCB, acute psychiatric hospitalization, and EOP care.

Defendants' long-range bed plan, if and when it is fully implemented, is intended to address these severe shortages. Without a substantial reduction in the overcrowded prison population, defendants' mental health bed construction plan will fall short of the ongoing and growing demand for specialized mental health beds. Because it will take years for defendants to build or convert necessary mental health facilities, and because population reduction measures have not been implemented, the *Coleman* class must rely on defendants' short and intermediate-term plans as an interim solution to relieve a small portion of the severe shortages. One of defendants' short-term projects is to convert buildings 5 and 6 on the C yard at Salinas Valley State Prison (SVSP) into 116 high-custody ICF beds (hereinafter C5 and C6). *Coleman* Docket 3592 at 9-10 (Defendants' Report on Short-Term, Intermediate, and Long Range Bed Plan in Response to the March 31, 2009 Court Order, filed May 26, 2010). Like the already existing D-5 and D-6 units at SVSP, these new units are intended as "temporary," and will require "program flexes" in order to operate. *Id.* at 10. In other words, the Department of Public Health will have to waive various health and safety licensing requirements in order for C5 and C6 to operate legally as a medical facility. Still, given the emergency and the desperate needs of the patients, these units are a necessary compromise to address at least some of the severe and chronic shortage of ICF beds. Defendants originally anticipated that C5 and C6 would be "implemented within 12 months of the Court's approval of this plan." *Id.* The Court approved defendants' short and intermediate-term plans on June 18, 2009, but ordered defendants to "accelerate" the projects to the extent they can. Docket 3613 at 1-2. The Court also ordered defendants to "promptly notify the Special Master of any impediments to timely completion of the approved short-term and intermediate projects…[and] file a copy of any such notification with the court

4

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

1  and serve a copy on counsel for plaintiffs." *Id.* at 2.

2  On April 20, 2010, defendants notified the Court and plaintiffs' counsel of an impediment
3  to completing the C5 and C6 units on time. Specifically, defendants reported a 7-8 week delay in
4  obtaining the license and activating the facility, pushing the completion date from June 2010 to
5  August 2010. Docket 3841 at 2. Defendants promised they would continue "to explore ways to
6  mitigate this delay," but offered no concrete solutions for doing so in violation of this Court's
7  orders. *See* Docket 3686 at 3-4 (ordering that any notice of an impediment filed with the Court
8  include "a proposed remedy to the impediment").

9  Plaintiffs' counsel were concerned about this further delay and added the C5 and C6
10 project to the agenda for a policy meeting with defendants and the Special Master's team. Kahn
11 Decl. at ¶ 3. The policy meeting took place on July 29, 2010 in Sacramento. *Id.* A few days
12 before that meeting, defendants provided plaintiffs' counsel with their proposed schedule for the
13 C5/C6 unit. *Id.* at ¶ 3 and Ex. A. The schedule made clear that defendants, starting August 30,
14 2010, plan to admit only five patients per week into only one of the two units, meaning that the
15 116 beds would not be fully occupied for at least five months. *Id.* at ¶ 3. During the policy
16 meeting on July 29, 2010, however, defendants reported yet another delay with the C5/C6
17 project, clarifying that admissions would not begin until September 6, 2010 and would still move
18 at a rate of only five per week. *Id.* On August 26, 2010, defendants informed plaintiffs' counsel
19 that there may be even further delays activating C5 and C6 beyond the September 6, 2010 date,
20 resulting from failures to obtain approvals from the Fire Marshal and problems with the sprinkler
21 systems. Defendants reported that resolution of these problems may further delay completion of
22 the units and the ability of patients to make full use of the beds. *Id.* at ¶ 7.

23 On September 1, 2010, plaintiffs' counsel met with defendants and the Special Master's
24 team to discuss delays with the C5/C6 project, and potential ways to alleviate these delays. *Id.* at
25 ¶ 8. Deborah Hysen, Chief Deputy Secretary of CDCR's Facility Planning, Construction and
26 Management division, Paul Scott, the head of Inmate Ward Labor (IWL) for that division, and
27 Bill Westin, a construction supervisor in the division, explained the physical plant delays in more
28 detail. They reported that the prison had discovered that a fire suppression sprinkler system in

5

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

C5 and C6 (the same system is relied on throughout SVSP) was corroded and had developed leaks and that various repairs are required to the pipes. Because C5 and C6 are not currently occupied and are subject to approval by the Fire Marshal, those units are particularly problematic. *Id.* There is no urgency, apparently, to making these repairs on other occupied housing units at the prison. *Id.* Defendants stated that they must perform a temporary fix in C5 in order to obtain conditional approval from the Fire Marshal for patients to move in to the unit. At the same time, defendants state they will begin to permanently fix C6 by replacing sprinkler piping throughout the unit. *Id.* Defendants plan to admit only five patients into C5 per week after the temporary construction is complete, meaning that it will take at least three months to admit all 58 patients. Once C6 is permanently renovated, the patients in C5 will be moved over to C6. Defendants will then begin the permanent fix of C5, which they anticipate taking at least five to six weeks. After that, and assuming defendants can license the unit, they will begin yet another slow admission process of only five patients per week. *Id.* This means that C5 and C6 will not be fully occupied, in the best case scenario, until May of 2011, nearly two years from the date this Court approved the C5/C6 plan. Meanwhile, defendants have no plans at all, and no funding, to fix the exact same fire suppression sprinkler problems in other housing units throughout SVSP. *Id.*

Because of the construction delays, plaintiffs' counsel first requested that defendants accelerate admissions at the policy meeting on July 29, 2010. *Id.* at ¶ 4. Plaintiffs made this request in light of the huge waiting list for these ICF beds and asked defendants to consider even ten patient admissions per week in each of the two units (for a total of twenty per week). *Id.* At that time, plaintiffs were unaware that defendants planned to activate only one unit at a time (first filling C5 and then beginning the process of filling C6). Defendants would not commit to any acceleration of the patient admission process. *Id.* On August 6, 2010, plaintiffs' counsel sent a letter to defendants following up on the issue. *Id.* Regarding the C5 and C6 units, plaintiffs noted that it would take defendants at least five months to fill the 116 beds if they admitted only five patients per week, and that this delay was unacceptable in light of the long waitlist for ICF care. *Id.* Noting the "extreme emergency and the hundreds of patients waiting for these beds,"

6

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

plaintiffs urged defendants to admit at least ten or even twenty patients into the units per week. *Id.* at ¶ 4 and Ex B. Although plaintiffs asked for a response before August 13, 2010, defendants asked to have until August 25, 2010 to respond. *Id.* at ¶ 4. Defendants, despite a renewed request, failed to provide any response whatsoever on August 25, 2010. *Id.* at ¶ 5. On August 26, 2010, however, defendants' counsel notified plaintiffs that defendants could not commit to any more than five admissions per week in only one of the C5 or C6 units. *Id.* at ¶ 7. Defendants restated this position on September 1, 2010, offering no additional strategies to expedite the activation of the units in light of the significant construction delays. *Id.* at ¶ 8.

## ARGUMENT

### I. THIS COURT SHOULD SHORTEN THE TIME FOR BRIEFING AND ARGUMENT ON THIS MOTION PURSUANT TO EASTERN DISTRICT LOCAL RULE 144(e)

Eastern District Local Rule 144(e) permits a party to move for an order shortening time where the party sets "forth by affidavit of counsel the circumstances claimed to justify the issuance of an order shortening time." On August 25, 2010, plaintiffs' counsel notified defendants for the third time of our intent to file the instant motion. Kahn Decl. at ¶ 5 and Ex. C. After defendants agreed to meet with plaintiffs and the Special Master's team to fully explain the problems, plaintiffs agreed to delay filing. When defendants refused yet again to accelerate the admissions process on September 1, 2010, counsel for both parties discussed an expedited briefing schedule. *Id.* at ¶ 5. On September 2, 2010, the Senior Assistant Attorney General, Jon Wolff, confirmed in a voicemail message that defendants could file their opposition on September 16, 2010, and could be available for a hearing on September 20, 2010. *Id.* In an email dated September, 3, 2010, Mr. Wolff also agreed that plaintiffs could file a reply, if any, on September 18, 2010. Mr. Wolff made clear, however, that defendants do not agree that the hearing should be an evidentiary one. *Id.*

An expedited briefing schedule is warranted here due to the short window of time within which to ensure expedited admissions in the C5 unit. *Id.* at ¶ 6. If this Court hears this motion 28 days from the filing, as typically required by Eastern District rules, defendants could implement their extremely slow admission process for two weeks before the hearing is even

7

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

scheduled (assuming admissions begin the week of September 21st). *Id.*; E.D. Local Rule 230(b) (requiring twenty-eight (28) days notice of a motion prior to the hearing). At stake here are the undisputed, continuing Eighth Amendment violations resulting from serious and ongoing delays to inpatient psychiatric hospitalization. Hundreds of male class members are waiting for beds in the C5/C6 units and there is a serious risk of pain, suffering and even death if class members are denied that access. Accordingly, plaintiffs request an order expediting the schedule as follows: defendants' opposition shall be filed on or before September 16, 2010; plaintiffs' reply shall be filed on or before September 17, 2010; the evidentiary hearing will occur on September 20, 2010.

## II. DEFENDANTS ARE ALREADY SUBJECT TO EXISTING COURT ORDERS TO EXPEDITE SHORT AND INTERMEDIATE-TERM PROJECTS DUE TO THE OVERWHELMING SHORTAGE OF INPATIENT ICF BEDS

This Court has already repeatedly ordered defendants to accelerate short-term and intermediate projects where possible, to accelerate the admission processes where possible, and to generally commit themselves to solving the severe shortage of mental health placements. *See, e.g.,* Docket 3613 at 1-2 (June 18, 2009 Order requiring that defendants accelerate all court-ordered projects to the extent they can); *Id.* at 4 (ordering that defendants admit no fewer "than ten [patients] per week" at Atascadero State Prison until all 256 ICF beds are full and requiring defendants to accelerate that schedule where possible); Docket 3686 at 2 (September 24, 2009 Order requiring defendants to "describe with specificity any and all steps that might be taken to expedite completion of the 64 bed project at California Medical Facility and the conversion of the C5 and C6 units at Salinas Valley"); Docket 3831 at 3 (requiring that defendants "forthwith direct their attention to solving the ongoing, and growing, problem of the[] wait lists [for inpatient care]"). Despite these orders, defendants propose a sluggish admission process for C5 and C6 that will take at least five months to move 116 patients into the units; 116 patients who have already waited an average of more than six months for an inpatient bed.

Defendants' construction delays and slow patient admission plans must be evaluated within the context of California's prison mental health crisis. As of June 30, 2010, there were a

8

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

staggering 485 patients[4] on the waitlist for high-custody ICF beds, the exact beds that will come online in C5/C6, and another 87 patients on the waitlist for acute psychiatric care. Docket 3884 at cells 750-1218, 1238-1255 (SVPP) and 248-334 (acute) ("Monthly Bed Utilization Report for DMH Hospitals and Psychiatric Programs, June 1, 2010 through June 30, 2010," filed under seal on July 21, 2010). But it is not simply the number of patients who are waiting at any given time—it is also the extremely long periods each person lingers in an improper placement before receiving appropriate care. Eight of the patients on the SVPP waitlist were referred for an inpatient ICF bed back in 2008, or more than one and a half years ago. *Id.* at cells 750-752, 1238-1242. More than 300 other patients (303) were referred between January of 2009 and February of 2010, meaning that they have already been waiting 4-16 months for inpatient care, and continue to wait. *Id.* at cells 753-1045, 1243-1253. The extremely long waits are also apparent from patients who finally do move into ICF high custody beds. Defendants' data shows, for instance, that patients admitted into D5, D6, and the two free-standing SVPP units since March of 2010 waited an average of 232, 205, 230, and 222 days respectively for beds in those units. *Id.* at cells 481-564 (D5);[5] cells 565-643 (D6);[6] cells 644-692 (Treatment Center 1), and; cells 693-749 (Treatment Center 2) (calculating the difference between "Date of Referral" and "Date of Admission" for patients admitted in March 2010 or later, and averaging those waiting times).

Moreover, the waiting times have been increasing in recent months. When plaintiffs presented this data to the Court only five months ago, *Coleman* class members were waiting 72-116 days for an ICF bed, not more than 200 days as they are now. Docket 3824 at 6 (Plaintiffs' March 24, 2010 Status Conference Statement). This means defendants are not coming anywhere

---

[4] Defendants are missing two cells in this data (cells 756 and 1185). Plaintiffs have excluded those cells from the calculation of the waitlist.

[5] Because defendants failed to include a referral date for the patient listed in cell 537, plaintiffs used that patient's "Date received at DMH" rather than his referral date.

[6] Defendants failed to include referral dates for three patients who fell into this category (at cells 574, 631, and 635). Plaintiffs excluded these patients from the averages.

9

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

near the Program Guide requirement to transfer patients to an ICF bed within 30 days after referral. 2009 Revised Program Guide at 12-6-10 through 12-6-11. Any system that has average waiting times for inpatient care of even a few weeks is in crisis, yet *Coleman* class members with serious mental illness are waiting an average of *more than six months* to receive care.

It is also undisputed that patients lingering in alternative placements while they await inpatient ICF care are subject to unacceptable risk. Indeed, between September of 2009 and January of 2010, two class members committed suicide while they lingered on the SVPP waitlist. Kahn Decl. at ¶ 12. One of those men was referred to an ICF bed on September 4, 2009. He killed himself on September 23, 2009 in an administrative segregation unit at California Institution for Men (CIM). Immediately before his death, he spent 28 days in an MHCB. Clinicians discharged him from the MHCB to administrative segregation because they were unable to transfer him to an ICF bed. Upon discharge from the MHCB, he was placed in a holding cell for two hours, in a ZZ cell[7] for 16 hours, and then finally in an ASU single cell. He killed himself 12 hours after he was placed in ASU. *Id.* Another class member was referred to ICF care on October 22, 2009 and lingered on the waitlist until he killed himself on January 13, 2010. *Id.* Before he was even referred to an ICF bed, he spent nearly two months in an acute bed. DMH staff concluded at the end of his acute stay that he needed an ICF bed, but they could not move him to one given the shortage. Instead, he was discharged to administrative segregation at California State Prison-Corcoran, moved in and out of MHCBs, and then eventually killed himself in ASU. Defendants were never able to move either of these men to an ICF bed, moves that very well could have saved their lives. *Id.*

---

[7] ZZ cells are "contraband watch cells" that defendants use as overflow placements when MHCBs, Outpatient Housing Units (OHUs), and Mental Health Oupatient Housing Units (MHOHUs) are unavailable and filled with other people. *See, e.g.,* Docket 3201 at 33.

10

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

### III. AN EVIDENTIARY HEARING IS NECESSARY TO DETERMINE WHAT MEASURES ARE AVAILABLE TO ACCELERATE THE ACTIVATION AND LICENSING OF C5/C6 AND TO ENSURE THAT ALL NECESSARY STEPS ARE TAKEN TO ADDRESS ANY REMAINING CONSTRUCTION-RELATED OBSTACLES

Defendants have been working on the C5/C6 conversion since June of 2009. It was originally scheduled to come online "within 12 months" (*Coleman* Docket 3592 at 9-10), but is now delayed. Defendants' first notification of delay was for 7-8 weeks, pushing the completion date from June 2010 to August 2010. Docket 3841 at 2. Defendants promised they would continue "to explore ways to mitigate this delay," but offered no concrete solutions for doing so in violation of this Court's orders. *See* Docket 3686 at 3-4 (ordering that any notice of an impediment filed with the Court include "a proposed remedy to the impediment"). On August 26, 2010, defendants' counsel notified plaintiffs of yet more delays, this time resulting from failures to obtain approvals from the Fire Marshal and problems with the sprinkler systems. Defendants reported that resolution of these issues may further delay the complete utilization of C5 and C6, although defendants could not provide exact time frames or estimates. Kahn Decl. at ¶ 7.

Defendants are under an ongoing obligation to accelerate the C5/C6 project. Docket 3613 at 1-2. As of today, however, defendants are predicting only further delays for unspecified periods of time. This project is the only one that will add high-custody ICF beds, within the next two years, to a system currently facing a more than 400-patient waiting list for this care. These beds are imperative to the *Coleman* class and must be activated as soon as possible. Accordingly, plaintiffs request an evidentiary hearing, on shortened time, to address the construction delays defendants currently face in activating C5/C6. Plaintiffs request that defendants produce all persons with substantial responsibility for the project, including but not limited to: Deborah Hysen, Cynthia Radavsky, Sharon Aungst, Bill Westin, Vic Brewer, Rick Traversi, David Horch, and the Fire Marshal. Defendants previously identified all of these

11

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

people as key persons related to the project.[8] Each person should be prepared to testify, under oath, about the following construction issues/physical barriers to completion:

- The specific construction delays that exist, including with respect to the sprinkler system and any other issues.

- What defendants have done to try to mitigate those delays, and why those efforts failed or were only partially successful.

- What defendants can do moving forward to complete and license the units as soon as possible.

- Whether any of the construction-related problems can be solved through court-ordered waivers. If the primary issues relate to the sprinkler system, the Fire Marshall should explain what waivers s/he would need in order to open the units as soon as possible.

- Whether the permanent renovations on C5 and C6 can be done while patients remain in or are admitted into the units, and what effect, if any, that would have on the schedule. In particular, whether defendants can admit patients into one or two of the three pods in each building while they complete construction on only one pod.

- Whether the permanent renovations on C5 and C6 are really necessary in light of the exact same problems throughout SVSP which defendants do not have any plans to remedy in the near future.

- Whether any increased fire safety risk could be addressed by other means that would not delay the opening of C5 and C6.

---

[8] In response to this Court's original order to "describe with specificity any and all steps" that can be taken to expedite C5/C6 and to identify all persons with authority to expedite any part of the project (Docket 3686 at 2), defendants reported in October of 2009 that they have been "unsuccessful in identifying any steps to expedite" the C5/C6 conversion project. Docket 3712, Attachment A at 10 of 23. To the extent defendants could accelerate the project moving forward, however, they identified Deborah Hysen. *Id.* Defendants also identified Cynthia Radavsky as the "person responsible for accelerating the activation of the project" once the buildings are fully converted. *Id.* Defendants' 7/21/10 updated activation schedule identified Sharon Aungst as the primary person responsible for the project, and identified the following people for discrete parts: Bill Westin (dining hall conversion and yard fence); Vic Brewer (responsible for, among other things, training/orientation, activation, facility inspections & SVPP Operations, group schedules, mentor program, and patient admissions); State Fire Marshal (facility inspections); Rick Traversi (self-certification), and; David Horch (Licensing Inspections). Kahn Decl., Ex. A.

12

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

## IV. DEFENDANTS MUST ACCELERATE THE PATIENT ADMISSION PROCESSES IN C5/C6 IN ORDER TO ALLEVIATE THE EXTREME DELAYS COLEMAN CLASS MEMBERS CURRENTLY EXPERIENCE ACCESSING INPATIENT CARE

Despite the ongoing construction delays and the severe shortage of ICF beds, defendants have refused to accelerate admissions to more than five patients per week. Although defendants intend to begin admissions into only one of the units (C5) on September 21, 2010, they could not explain what the activation plan is for both units, or when they will be fully occupied with patients. Kahn Decl. at ¶ 8. Based on estimates they provided, however, and if defendants are allowed to move forward at this extremely slow rate, they will not fully occupy all 116 beds with patients until at least May of 2011. *Id.*

Accordingly, defendants, and DMH staff in particular, should be prepared to testify at the evidentiary hearing regarding the following issues:

- Defendants' five patient per week admission plan and why defendants believe that additional admissions are not possible.

- An explanation of the exact reasons defendants are unable to admit more than five patients per week, including whether they stem from staffing shortages, hiring problems, custodial classification issues, plant limitations, or other problems.

- Why defendants cannot shift staff from the empty 50-bed unit at Coalinga State Hospital (CSH) to expedite admissions. Defendants have significant staffing allocations in place at CSH to provide care to *Coleman* class members, yet the facility does not currently house even a single class member.

- Why defendants cannot pull staff from other units, or hire new staff, to accelerate admissions.

- Why defendants cannot move more stable patients into C5 from other DMH programs, while increasing admissions in other SVPP units that already have well-established and experienced staff. Defendants move patients between SVPP units all the time, and can certainly do so here. If they utilize this strategy, they can populate C5 with stable patients from D5, D6, TC1 and TC2 while spreading out expedited patient admissions

13

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

to those four units.[9]

- Why defendants cannot admit at least ten patients per week into C5 even though they did exactly that, at Atascadero State Hospital, to comply with a prior Court order. *See* Docket 3613 at 4.

- If defendants' slow admission plan is based in any way on custodial procedures, defendants should explain what those procedures are and why they cannot dedicate additional custodial staff to relieve those delays.

## V. AN EVIDENTIARY HEARING IS ALSO NECESSARY BECAUSE OF DEFENDANTS' DELAY IN FILING THEIR COURT-ORDERED PLAN TO ALLEVIATE THE INPATIENT WAITING LISTS

This Court has issued many orders that target defendants' extremely long waiting lists for inpatient care. On March 29, 2010, the Court held a status conference with the parties and the Special Master's team in order to discuss the recently completed Mental Health Assessment and Referral Project (MHARP), which resulted in hundreds of additional referrals of patients for ICF and acute care. As a result of the MHARP, for instance, the waitlists grew to 574 male patients awaiting ICF care and another 64 male patients awaiting acute psychiatric services. Docket 3831 at 2-3 (3/31/10 Order). The Court noted that "the size of the wait lists suggests that the short-term bed projects that have and will come on line will not be sufficient to eliminate the wait lists for inpatient care…[and] defendants' long-term bed projects will not be activated for three years." *Id.* at 3. As a result, the Court ordered defendants to meet with the Special Master in order to "develop a plan to reduce or eliminate the wait lists for inpatient care and, in the interim, to better serve the treatment needs of *Coleman* class members placed on such lists." *Id.* Defendants were to file the plan within 120 days, or by July 29, 2010. *Id.* at 4.

On June 3, 2010, plaintiffs' counsel sent a letter to defendants and the Special Master's team outlining various strategies defendants should use to comply with the Court's March 31, 2010 Order. Kahn Decl. at ¶ 10 and Ex. D. Plaintiffs' counsel urged specific actions regarding

---

[9] Plaintiffs' counsel proposed several of these strategies at the September 1, 2010 meeting, including shifting staff from CSH or other units to accelerate admissions, or moving stable patients into C5 rather than new ones. DMH once again refused to accelerate admissions to more than five patients per week. Kahn Decl. at ¶ 7.

14

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

1    three main issues: (1) ways to address obstacles defendants face when trying to move patients to
2    inpatient beds; (2) ways to bring inpatient or enhanced mental healthcare to patients in their
3    existing locations, and; (3) steps defendants could take to reduce the need for inpatient care. *Id.*
4    Plaintiffs did not receive any response to that letter, but assume defendants will incorporate all
5    necessary strategies in its court-ordered plan. *Id.* at ¶ 10. Defendants recently notified plaintiffs,
6    however, that they were unable to submit the plan by the Court's deadline. *Id.* The parties
7    stipulated to a 120-day extension for defendants' plan, or until November 26, 2010. Docket
8    3892. This Court made that stipulation an order of court on August 4, 2010. Docket 3894.

9    Defendants requested additional time to develop a comprehensive plan to target the
10   extremely long waiting lists for inpatient care, and plaintiffs stipulated to an extension. Plaintiffs
11   did so, however, only because defendants are under an ongoing obligation to decrease the
12   waiting lists even before they file their plan. Kahn Decl. at ¶ 11; *see also* Docket 3831 at 3
13   (3/31/10 Order requiring that defendants "forthwith direct their attention to solving the ongoing,
14   and growing, problem of the[] wait lists [for inpatient care]"). To date, defendants have not
15   informed plaintiffs' counsel of any steps they are taking to reduce the waitlists or even bring
16   enhanced care to the class members awaiting inpatient care. Kahn Decl. at ¶ 11. When plaintiffs
17   asked defendants to at least accelerate admissions in C5 and C6, they refused. *Id.*

18   The C5 unit is in the final stage of activation. While it may be more convenient for
19   defendants to activate the unit as slowly as possible, the risks to the plaintiff class members who
20   have been identified and "admitted" (on paper) to DMH, outweighs defendants' interests in slow-
21   balling admissions. An evidentiary hearing is necessary to evaluate defendants' admission plan
22   and to determine ways to accelerate it until both C5 and C6 are fully occupied with patients.

23   ## CONCLUSION

24   Despite this Court's repeated orders to take all necessary steps to deplete the waiting lists
25   and expedite short-term and intermediate projects, defendants have not done so. Plaintiffs
26   therefore move for an evidentiary hearing regarding the status of the C5/C6 units in light of
27   repeated delays opening those beds. The hearing is also necessary to evaluate defendants'
28   extremely slow patient admission plan, including ways to accelerate patient admissions to ten or

15

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]

even twenty patients per week. Because of the undisputed Eighth Amendment violations from delayed access to higher levels of care, the undisputed demand for these beds, and the serious risk of pain, suffering and even death due to denied access to hospitalization, plaintiffs request an order shortening time pursuant to Eastern District Local Rule 144(e). Indeed, the parties have stipulated to the following schedule: Defendants' opposition shall be filed by September 16, 2010; plaintiffs' reply, if any, shall be filed by September 17, 2010, and; the evidentiary hearing regarding this motion will be set for September 20, 2010 or as soon thereafter as possible according to the Court's schedule. Prior to the hearing, the Court should issue an order requiring defendants to produce all persons previously identified as responsible for the C5/C6 project, as well as persons who have substantial knowledge of the status of the project, any delays defendants are encountering, and the admission process for those units.

Dated: September 3, 2010

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Amy Whelan*
    Amy Whelan
    Attorney for Plaintiffs

16

PLAINTIFFS' EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON, AND MOTION TO SHORTEN TIME – CASE NO. CIV S 90-0520 LKK-JFM

[398242-1]