PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, California 94107-1389
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 4, 15th Floor<br>Judge: Honorable Lawrence K. Karlton |

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| ASU | Administrative Segregation Unit |
| CDCR | California Department of Corrections and Rehabilitation |
| CMF | California Medical Facility |
| CSH | Coalinga State Hospital |
| DCHCS | Division of Correctional Health Care Services |
| DMH | Department of Mental Health |
| EOP | Enhanced Outpatient Program |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| ICF-H | Intermediate Care Facility – High Custody |
| MHARP | Mental Health Assessment and Referral Project |
| MHCB | Mental Health Crisis Bed |
| MHSDS | Mental Health Services Delivery System |
| PSH | Patton State Hospital |
| PSU | Psychiatric Segregation Unit |
| SHU | Security Housing Unit |
| SNY | Sensitive Needs Yard |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP | Salinas Valley State Prison |
| TC1 | SVPP Treatment Center 1 |
| TC2 | SVPP Treatment Center 2 |
| VPP | Vacaville Psychiatric Program |

[402256-1]

**INTRODUCTION**

Defendants' opposition to this motion drops four bombshells of information that establish more than ever the need for an evidentiary hearing about the C5/C6 units at Salinas Valley State Prison (SVSP). Each admission draws a clearer picture of the crisis at hand, where more than 400 *Coleman* class members linger on a waiting list for inpatient psychiatric hospitalization, while defendants repeatedly fail to abide by this Court's orders to alleviate the crisis and expedite admissions. Plaintiffs therefore renew our request for an evidentiary hearing regarding the construction and admission plans for C5/C6, and request that the hearing take place as soon as possible in light of the short window of time to address the crisis.

**ARGUMENT**

**I. Defendants Admit Their Failures to Comply with this Court's Orders, Revealing Even More Details about Staffing Shortages and their Failure to Prioritize Patient Care**

This Court has repeatedly ordered that defendants accelerate inpatient admissions and projects to the extent possible. *See, e.g.,* Docket 3613 at 1-2 (June 18, 2009 Order requiring that defendants accelerate all court-ordered projects to the extent they can); *Id.* at 4 (ordering that defendants admit no fewer "than ten [patients] per week" at Atascadero State Prison until all 256 ICF beds are full and requiring defendants to accelerate that schedule where possible); Docket 3831 at 3 (requiring that defendants "forthwith direct their attention to solving the ongoing, and growing, problem of the[] wait lists [for inpatient care]"). Each of these orders was in effect either before defendants began the conversion of C5/C6 or during that process. Yet defendants' opposition reveals four bombshells of information that show defendants' ongoing violations of this Court's orders and reveals further their apparent inability to protect the *Coleman* class in the absence of court oversight.

First, defendants claim they have insufficient staff to admit more than five patients per week into the units while still complying with Title 22 of the California Code of Regulations. Docket 3913 at 12. If they try to do that with current staff levels, "the inmate-patients will be locked in the housing pods without having the benefit of DMH programming and/or yard time." *Id.* The point, however, is that defendants could accept patients more rapidly if they were

1

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

permitted to hire additional staff for these units in order to process additional admissions, while also providing mental health programming, yard time, and other services. There is no evidence that any of the declarants requested authority to hire additional staff, transfer staff, or that they took any other measures to address the shortage of staff that prevents a more rapid intake of patients in to C5/C6. Nor have defendants addressed whether their staffing problems result in any way from the Governor's August 31, 2010 "hard" hiring freeze, which remains in effect. Declaration of Amy Whelan in Support of Plaintiffs' Emergency Motion for an Evidentiary Hearing Regarding the C5/C6 Project at Salinas Valley State Prison" (hereinafter "Whelan Decl."), Ex. A. The "hard hiring freeze" eliminated all past exceptions and requires agencies to apply to the Governor's Office itself for "limited circumstances where exceptions to this directive may be necessary for the preservation and protection of human life and safety, emergency and disaster response, the provision of 24-hour medical care, and mission critical functions." *Id.* Have defendants requested increased staffing and permission to fill positions from the Governor's Office for C5/C6?

Second, without telling anyone and in clear contravention of this Court's orders, defendants specifically devised a staffing plan that assumed intakes of only five patients per week. Docket 3913 at 13 ("DMH requested and received funding for staffing the C-5/C-6 Project based on admitting five inmate-patients a week over an extended period of time"); *see also* 3913 at ¶ 8 (Brewer Decl.). Defendants' justification of this move was business-as-usual—they "historically admitted five inmate-patients into its ICF high-custody bed programs" and therefore chose to do the same here. Docket 3913 at 5; Docket 3913-3 at ¶ 3 (Brewer Decl. describing D5 and D6 admission process between May 2006 and April 2007). Yet the fact that DMH has historically admitted only five patients per week is exactly the point. This Court could not have been clearer when it recently ordered defendants to expedite projects and admissions as

2

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

much as possible.¹ It did so specifically because of the current crisis, whereby patients in need of inpatient psychiatric hospitalization wait an average of more than six months for that care. Docket 3907 at 9-10. Defendants ignore those orders in their opposition, just as they have done in their everyday responses to this crisis.

Defendants also claim that "given this fiscal climate, it is unrealistic to expect that DMH could receive emergency funding to increase staff solely in order to accelerate activation from five to ten inmate-patients a week, particularly where their services would only be required during the activation phase." Docket 3913 at 13. Defendants again miss the point. They need to fully staff the unit for all purposes right now so that the units can be up and running as soon as possible. None of the declarants even bothered to request additional funding or hiring authority. Moreover, a difficult budgetary process does not excuse constitutional violations. Plaintiffs submitted evidence showing that defendants' inability to provide inpatient hospitalization to class members in need of that care creates an unacceptable risk of harm and even death. Docket 3907 at 10. In fact, two patients killed themselves between September of 2009 and January of 2010 while they lingered on the SVPP waitlist without the care they so desperately needed. *Id.*; *see also* Docket 3908 at ¶ 12 (Kahn Decl.). Defendants do not dispute the underlying facts or consequences of these suicides, arguing instead that this evidence should be struck as "expert testimony" under Federal Rules of Evidence 702 and 703. Docket 3913 at 15, fn. 5. But it does not take an expert to understand that people with severe mental illness requiring inpatient care are in extreme danger when they are deprived of that care, particularly when they are housed, as these two men were, in harsh conditions such as administrative segregation.

Third, defendants revealed additional details about the true extent of their staffing crisis,

---

¹ Defendants cite this Court's June 18, 2009 order to justify their five patient per week admission plan, arguing that they were ordered to "activate C-5/C-6 consistent with the D-5/D-6 programs." Docket 3913 at 11. The order's requirement that the units be consistent related not to admission procedures, however, but rather to the physical make-up of the units. Docket 3613 at ¶3.b (requiring that C5 and C6 be "*substantially similar to the D5 and D6 units when all construction is completed* in said units in July 2009") (emphasis added).

3

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

admitting that they were forced to choose patients for C5 based not on acuity or severity of mental health symptoms, but rather on purely custodial factors. Defendants must prioritize admissions in this way due to an alleged "severe shortage" of Medical Technical Assistants (MTAs), forcing DMH to "admit the lowest custody inmate-patients for the protection of both the inmate-patients and staff." Docket 3913 at 14; Docket 3913-3 at ¶ 9 (Brewer Decl.). Accordingly, defendants now state that they plan to pull qualified patients only from general population EOP units, despite the fact that patients lingering in Administrative Segregation Units (ASUs), Psychiatric Services Units (PSUs), or even Security Housing Units (SHUs) may have more acute psychiatric symptoms, or may be at an even greater risk of harm. Defendants did not previously reveal this plan, which exalts custodial concerns far above patient care.

The primary purpose of the C5/C6 emergency project is to address the severe and ongoing shortage of the highest security, level four ICF beds. Despite numerous meetings with the Special Master's team and plaintiffs' counsel, and multiple reports to the Court updating activation schedules, defendants never revealed this significant and catastrophic obstacle—a "shortage" of MTAs—that, if not overcome, will result in the failure of the C5/C6 project to address a large portion of the population it was designed to serve.[2] What is the nature of the "MTA shortage?" What steps have defendants taken to address the problem? What alternatives to MTAs have they explored, assuming that the shortage cannot be addressed? Since no other DMH hospitals (other than CMF) use MTA's, why not use psychiatric technicians for these functions just as other DMH hospitals do? An evidentiary hearing is therefore necessary to explore the alleged MTA shortage, steps defendants have taken to address the "shortage," alternatives to MTA staffing, and defendants' unapproved plan to populate C5 with only the

---

[2] Patients who do not require high security ICF beds can use the underutilized, lower security beds at California Medical Facility (CMF), or Coalinga (CSH) and Atascadero State Hospitals (ASH). Defendants should confirm at the hearing that they evaluated each of the EOP general population patients now being considered for C5 for admission to CMF, ASH and CSH, and should explain how many of those patients, if any, transferred to those lower security programs. It is undisputed that there are 50 open beds at CSH for *Coleman* patients and other available lower security beds at CMF.

4

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

lowest security patients.

Finally, defendants admit that they have diverted DMH staff specifically budgeted and allocated for *Coleman* class members to hospital units serving other patients. Docket 3913 at 13; Docket 3913-4 at ¶ 5 ("CSH redirected some of the staff previously assigned to the *Coleman* beds to the new 50-bed Mentally Disordered Offender unit"). Defendants miss the point here—if they no longer needed those staff at CSH, they should have shifted the budgeted positions to other *Coleman* mental health programs either in the prisons or in DMH hospitals. These positions were specifically funded to provide desperately needed care to the *Coleman* class, yet defendants diverted them to other populations the moment they had a chance to do so.

Each of these admissions, standing alone, justifies an evidentiary hearing to fully analyze and assess the consequences for *Coleman* class members. Combined, these bombshells of information suggest that defendants have routinely ignored the Court's orders to expedite bed plan projects and accelerate admissions every step of the way, including during the staffing phase, the budgeting phase, and now the impending activation and admission phase. Defendants also plan to admit to C5 only the lowest security patients, denying access to many of the high-security patients the C5/C6 unit was designed to serve. Plaintiffs therefore renew our request for an evidentiary hearing regarding this project, including the requirement that responsible staff members testify under oath.

**II.     Defendants' Response and Plans in the Face of Construction Delays are Once Again Focused on Budgetary Concerns and Convenience Rather than the Constitutional Rights of the *Coleman* Class**

There is no question that defendants have faced, and continue to face, serious construction-related delays regarding the C5 and C6 units. The problem, however, is defendants' response to these delays. Defendants originally planned that *both* C5 and C6 would come online within 12 months from June 2009. Under that scenario, defendants could have presumably admitted at least five patients per week into both units (for a total of 10), thereby reducing the SVPP waitlist by 116 patients by approximately September or October 2010. Because of the construction delays, defendants now plan to occupy only one unit (a maximum of 58 beds) between now and January of 2011. Docket 3913 at 9 (estimating the *start* of admissions into the

5

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

second unit on January 18, 2011). Assuming no discharges from the second unit during the entire 12 week period of full activation, this means patients will not fully occupy C5 and C6 until at least April or May of 2011. This is an unacceptable pace given the waiting list for these beds.

Yet in addition to defendants' absolute refusal to admit more than five patients per week into only one unit at a time, they also refuse to consider a full array of construction solutions that could alleviate this crisis. Plaintiffs' counsel, for instance, has independently contacted the Supervising Deputy State Fire Marshall overseeing the C5/C6 project. Whelan Decl. at ¶ 3-6. That preliminary call has revealed that defendants may have other options available to deal with the construction delays—options that will both ensure patient safety, but also expedite patient admissions into *both* C5 and C6. For instance, defendants may be able to use a "fire watch" system which would allow them to admit patients into both units while they take additional time to renovate the corroded pipes. *Id.* at ¶ 5. In fact, since the corroded pipes appear to exist throughout the entire prison (Docket 3908 at ¶ 8), defendants will presumably have to use a "fire watch" system, or some other mitigation effort, throughout SVSP while all the pipes are replaced. Whelan Decl. at ¶ 4 (the OSFM plans to survey pipes throughout the entire prison and, if problems exist, will have to negotiate interim fixes while the long-term repair is pending). In fact, defendants informed plaintiffs' counsel that the pipes are compromised throughout the prison but that they have no current plans to fix pipes outside of C5/C6, and no funding to do so even if they had such a plan. Docket 3908 at ¶ 8. The Fire Marshal also acknowledged that defendants could do work in the units while patients occupy them, a strategy defendants considered but rejected. Defendants' objection seems to stem from budgetary concerns and convenience, however, and not from a concern for patient care. Plaintiffs' priority is to get patients into these units and receiving care as soon as possible, even if that means that construction will take longer to complete.[3]

---

[3] Defendants claim that it is plaintiffs' burden to request state law waivers. Docket 3913 at 10 (citing this Court's 9/24/09 Order). That order makes clear, however, that defendants must first identify any state laws that pose barriers. Docket 3686 at ¶ 4 ("Defendants shall identify any waivers of state law that may be required to complete the projects…").

6

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]

There may be other alternative strategies defendants can pursue, with the Fire Marshal, which will expedite activation of C5/C6 while also ensuring patient safety. An evidentiary hearing is required to fully explore those options.

## CONCLUSION

Defendants have failed to come forward with credible answers to the fundamental questions raised by plaintiffs in their request for an evidentiary hearing concerning this critical, life-saving project. In fact, defendants have revealed additional problems and obstacles in their staffing plan, the budgetary process, and activation schedule that make the need for a hearing that much greater. This Court has already ordered defendants to take all necessary steps to deplete the waiting lists and to expedite short-term and intermediate projects, yet defendants continue to approach the projects in their same business-as-usual way. Plaintiffs therefore renew our request for an evidentiary hearing regarding the status of the C5/C6 units, possible ways to mitigate the delays, and defendants' extremely slow patient admission plan. Prior to the hearing, plaintiffs respectfully request that the Court issue an order requiring defendants to produce all persons previously identified as responsible for the C5/C6 project, as well as persons who have substantial knowledge of the status of the project, any delays defendants are encountering, and the admission process for those units. If defendants are unable or unwilling to invite the Fire Marshall to that hearing, plaintiffs are willing to serve a subpoena for that purpose.

Dated: September 17, 2010

Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Amy Whelan*
    Amy Whelan
    Attorney for Plaintiffs

7

PLAINTIFFS' REPLY ISO EMERGENCY MOTION FOR AN EVIDENTIARY HEARING REGARDING THE C5/C6 PROJECT AT SALINAS VALLEY STATE PRISON–CASE NO. CIV S 90-0520 LKK-JFM

[402256-1]