# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

**RALPH COLEMAN, et al.**

**Plaintiffs,**

**vs.** **No. CIV S-90-0520 LKK JFM P**

**GRAY DAVIS, et al.,**

**Defendants.**

# SPECIAL MASTER'S REPORT ON DEFENDANTS' EXPEDITED PROCESS FOR TRANSFERS TO A MENTAL HEALTH CRISIS BED (MHCB) LEVEL OF CARE

The genesis for this report was a compilation and description in May of 2001 of obstacles to access for seriously mentally ill inmates in crisis in the California Department of Corrections (CDC) to short-term acute-care inpatient beds in Mental Health Crisis Bed (MHCB) units. The purpose of the MHCB level of care within the defendants' Mental Health Services Delivery System (MHSDS) is to evaluate inmates in crisis and, if possible, restore stability sufficiently to discharge them to one of the department's outpatient mental health programs. That May report documented a system-wide shortfall of MHCB beds, and confirmed the particular difficulties of four CDC institutions, including California Correctional Institution (CCI), California Training Facility (CTF), Deuel Vocational Institution (DVI) and California State Prison, San Quentin (SQ), in obtaining timely transfers for inmates in need of a MHCB level of care. In the absence of a MHCB unit of their own, these four facilities were attempting, unsuccessfully and at considerable cost to their other mental health programs, to provide

a level of inpatient, stabilizing care in local infirmaries or outpatient housing units (OHUs) without the staffing and physical resources required for the operation of a MHCB unit.

The May report concluded with a recommendation that the department be required to work with CCI, CTF, DVI and SQ to develop and implement within 60 days an expedited process to transfer inmates in need of a MHCB level of care within 24 hours to facilities able to provide such care. The court adopted that recommendation in a June 27, 2001 order, and the department filed subsequently filed a description of the process it had developed to meet the requirement for expediting access to MHCB care for the four named facilities. At the end of September, the court directed the master to report within 45 days on the adequacy of the defendants' process. This report responds to that directive.

The department's plan for expediting access was spelled out in an August 30, 2001 memorandum that prescribed three remedies. See Exhibit A. First, it adjusted existing service areas to improve the access of affected institutions to MHCB units outside their designated service areas that were more likely to be capable of accommodating their referrals. Service areas are the primary organizational unit in the department's decentralized system for delivering mental health services. Each service area is designed to provide, among other centralized programs, an inpatient MHCB unit for one or more nearby institutions. Some anomalies resulted from the initial geographical alignment of service areas. Both SQ and DVI, for example, were included in Service Area D, where California State Prison, Solano (CSP/Solano) provided the area's MHCB unit. Both DVI and SQ have had substantial reception functions, which

often generate a greater need for crisis care and stabilization than institutions that do not process new arrivals to CDC, and CSP/Solano's limited MHCB unit, with only five beds, was incapable of meeting the service area's need for MHCB placements. The August 30 memorandum formally made the MHCB unit at California State Prison, Corcoran (CSP/Corcoran) the hub MHCB unit for DVI.

The defendants' second remedy involved plans to expand the number of available MHCB beds in CDC. The expansion includes, in the short-term, an increase of the CSP/Solano MHCB unit from five to ten beds; an increase of the MHCB unit at California State Prison, Los Angeles County (CSP/LAC) from eight to ten beds; the addition of 18 MHCB beds in California State Prison, Sacramento (CSP/Sac) and the addition of one bed each in MHCB units at Mule Creek State Prison (MCSP) and CSP/Corcoran. Reported long-term projects include the construction of Correctional Treatment Centers, or licensed infirmaries, at SQ, "Delano II" and CSP/Sac, all with expanded MHCB capacity. The department received staffing allocations for 39 additional MHCB beds in the latest budget, although the translation of these resources into actual MHCB beds will take some time.

The third element in the defendants' remedial plan was increased central office assistance to the four institutions whenever they are unable to place referrals in a designated hub MHCB unit in a timely fashion, i.e., within 24 hours. The Health Care Placement Unit (HCPU) in the Health Care Services Division's Sacramento headquarters will be the vehicle for finding a "back-up" MHCB location if an assigned primary hub institution is unable to accept a referral from any of the four institutions.

The August 30 memorandum, which was addressed to defendants' counsel for filing with the court, did not provide much information on the timing of these various measures, but indicated that all of the information set out in the memorandum would be communicated to the institutions in a subsequent memorandum. For whatever reason, that promised follow-up memorandum was not promulgated until November 8, 2001 (See Exhibit B), although increased central office assistance in the placement of MHCB referrals from the four named institutions was already in evidence by August 30.

Over the last six months, the defendants have succeeded in providing expedited and timely access to MHCB units for inmates referred to that level of care from CCI, CTF, DVI and SQ. Monitors and the monitor's experts have visited all four of these institutions within the past seven weeks, and they confirm that once an inmate is referred to a MHCB level of care at any of the four facilities, they are transferred routinely within 24 hours. In CCI, all of the 20 most recent transfers to an MHCB unit as of early November had occurred within 24 hours. At CTF, all nine transfers to MHCB units that took place from May through September occurred within 24 hours of the referral. Of 18 referrals to an MHCB level of care at DVI between June 5 and July 5, one was rejected and all 17 others were transferred within 24 hours of the referral. At San Quentin, where referrals occurred unevenly and documentation was less certain, staff reported that they were able to move inmates to MHCB units within 24 hours "when they had to." All of the institutions reported the cooperative help of Sacramento's HCPU as critical and effective in finding empty MHCB beds for the placement of referred inmates. The transfers sometimes took multiple phone calls and continual bird-dogging and

occasionally involved some sharp exchanges between and among clinicians and administrators, but they did occur in a timely manner.

All of this indicates, accurately, that the defendants have successfully developed and implemented an expedited process to transfer inmates in need of a MHCB level of care to facilities able to provide such care within 24 hours. Does it mean the problem is solved? Not quite. In CTF, at least for the moment, expedited transfers seem to have reduced considerably the length of stays of mental health caseload inmates admitted to its OHU, which suggests, in turn, that CTF now recognizes the need for, and the utility of, prompt transfers of inmates in need of inpatient acute care and stabilization to the MHCB next door at Salinas Valley State Prison (SVSP).

Elsewhere, vestiges of the historical problem linger. There is a departmental policy, currently in the process of revision and clarification, which permits OHUs to hold for up to 72 hours inmates who require crisis intervention or further observation and evaluation of behavior that may indicate mental illness. The policy calls for a re-evaluation at 24 and 48 hours and requires that arrangements be made for transfer to a higher level of care, if the inmate's mental health needs continue beyond 48 hours. The policy is not unreasonable. Seriously mentally disordered inmates can become briefly agitated or depressed and need some isolation and quiet, which may suffice to restore equanimity relatively quickly. Similarly, inmates with no prior mental health involvement may manifest temporarily symptoms of a mental disorder in the correctional environment, especially during the reception process. A rigid requirement to transfer immediately every agitated inmate who enters an OHU makes no sense. As long as the

OHU transfers an inmate as soon as it becomes clear that he or she needs, for example, a MHCB level of stabilizing care, the 72-hour observation period is acceptable.

Problems occur when a clearly psychotic inmate arrives in an OHU and is "observed" or "evaluated" there for 72 hours, without the supervision, monitoring and treatment that can be provided in CDC only in a MHCB setting. Such a situation, not a far-fetched scenario, is exacerbated when local clinicians and administrators in an OHU believe they can treat and stabilize inmates as well as, or better than, clinicians in MHCB units. In practice, severely mentally ill inmates sometimes remain in an OHU for anywhere from three to ten or more days before a referral is made to a MHCB unit elsewhere. The expedited transfer process, now available and successful, may mean the inmate gets to a MHCB level of care within 24 hours of the referral, an important improvement, but local clinical hubris and/or lack of confidence in the clinical skills of a MHCB unit elsewhere has delayed needed care, diverted local resources and, perhaps, created a potentially dangerous situation for a psychotic inmate.

These vestiges of a transfer process that historically often made it difficult to move an inmate in need of a MHCB level of care to a facility capable of providing such care seem to be fading in DVI and, as indicated, appear to be pretty well eradicated in CTF. On the other hand, they seem more durable in CCI and somewhat entrenched in SQ. The situation has been complicated in SQ by some ambiguity in the department's plans for an eventual MHCB unit there. For a period in early 2001, SQ reportedly was prohibited from transferring inmates in need of a MHCB level of care elsewhere so long as there was an empty bed in its OHU, a requirement entirely out of synch with the defendants' overall policies on access to a MHCB level of care, but supposedly related to

the planned development of a MHCB unit at SQ. Because of the complexity and number of the mental health programs it is scheduled to provide, SQ particularly can ill afford to divert scarce resources to provide an acute-care inpatient program for which no clinicians are allocated.

The department and its Health Care Services Division need to clarify and enforce its existing MHSDS structure, while curbing local programmatic deviations by institutional administrators and clinicians. The issue is fundamentally one of the department's overall management and control of the institutional elements of its service delivery system. The monitor will continue to review and report on the appropriateness of institutions' utilization of their OHUs.

In the meantime, the defendants have fulfilled the requirement to expedite transfers of inmates in need of a MHCB level of care from CCI, CTF, DVI and SQ to institutions able to provide such care. They need to keep that process in place and operating efficiently until such time as additional MHCB beds have been activated in sufficient numbers to provide access to all of the inmates in the system who need them.

Respectfully submitted,

J. Michael Keating, Jr.
Special Master

November 15, 2001

**DECLARATION OF SERVICE BY AIRBORNE EXPRESS**

Case Name: Ralph Coleman, et al. v. Gray Davis, et al.
U.S.D.C Eastern District No. CIV S-90-0520 LKK JFM P

I am employed in the County of Providence, Rhode Island. I am over the age of 18 years and not a party to the within entitled cause: my business address is Little, Bulman, Medeiros & Whitney, P.C., 72 Pine Street, Providence, Rhode Island 02903.

On November 15, 2001, I served the attached

**SPECIAL MASTER'S REPORT ON DEFENDANTS' EXPEDITED PROCESS FOR TRANSFERS TO A MENTAL HEALTH CRISIS BED (MHCB) LEVEL OF CARE**

in said cause, placing, or causing to be place, a true copy thereof, enclosed in a sealed enveloped fully prepared and sent Airborne Express from Providence, Rhode Island as follows:

Honorable Lawrence K. Karlton
Chief Judge Emeritus
United States District Court
Eastern District of California
501 I Street
Sacramento, CA 95814

Honorable John F. Moulds
Chief Magistrate Judge
United States District Court
Eastern District of California
501 I Street, 8th Floor
Sacramento, CA 95814

Haven Gracey, Esq.
Senior Staff Attorney to
Chief Magistrate John F. Moulds
U.S. District Court
Eastern District of California
501 I Street, 8th Floor
Sacramento, CA 95814

Donald Specter, Esquire
Prison Law Office
2173 East Francisco Blvd.
Suite M
San Rafael, CA 94901

Michael Bien, Esquire
Rosen, Bien & Asaro
155 Montgomery St., 8th Fl.
San Francisco, CA 94104

John Sugiyama, Esq.
Deputy Director (A), Legal Affairs
California Dept. of Corrections
1515 S Street
P.O. Box 942883
Sacramento, CA 94283-0001

Jennifer Neill, Esq.
Deputy Attorney General
1300 I Street
P.O. Box 944255
Sacramento, CA 94244-2500

Rochelle Holzmann, Esq.
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury under the laws of the State of Rhode Island that the foregoing is true and correct, and that this declaration was executed at Providence, Rhode Island on November 15, 2001.

jmk\mastering\cert2 fedex.doc

EXHIBIT A

August 30, 2001 Memorandum on
MHCB Transfers

State of California Department of Corrections

# Memorandum

Date : August 30, 2001

To : Rochelle Holzmann
Deputy Attorney General

Subject: **RESPONSE REGARDING TRANSFER OF INMATES FROM FOUR INSTITUTIONS TO MENTAL HEALTH CRISIS BEDS**

The following procedure will be followed to assure that inmates from San Quentin State Prison (SQ), Deuel Vocational Institution (DVI), California Training Facility (CTF), and California Correctional Institution (CCI) who require mental health crisis bed (MHCB) services are transferred to an institution that has MHCB capabilities within 24 hours of being identified as requiring that level of care.

(1) As a precursor step, some modifications will be made in existing hub assignments on a "long-term temporary" basis (i.e., until new MHCB capacity is built). DVI's MHCB hub will now be California State Prison (CSP) Corcoran (COR); its hub is presently CSP Solano (SOL). Sierra Conservation Center (SCC) will have as its MHCB hub the Substance Abuse Treatment Facility and State Prison at Corcoran (SATF); its hub is presently Mule Creek State Prison MCSP). In reality these modifications are not a change from current actual practice, since DVI and SCC have had their MHCB cases diverted to COR/SATF for several months now. In addition, SQ's MHCB hub will be designated as SOL. Other hub assignments remain the same (e.g., Salinas Valley State Prison [SVSP] for CTF, and CSP Los Angeles County [LAC] for CCI).

(2) We will allocate clinical staffing to SOL to increase their MHCB capacity from the current six beds to ten beds. We will also allocate resources to LAC to increase their MHCB capacity from the current eight beds to ten beds. These resources, which were part of a Fiscal Year 2001/02 Budget Change Proposal (BCP), will be allocated at the next opportunity. At this time, COR and SVSP have sufficient staffed MHCB capacity to handle their normal MHCB demand.

(3) SQ, DVI, CTF, and CCI will be directed to contact their assigned primary hub for MHCB when they require such a placement. The hub institution will inform the requesting institution if it has a bed available or if it expects one to be available within the 24-hour period. It is the sending institutions' responsibility to arrange special transportation and transport that inmate to the MHCB when the inmate has been accepted.

(4) If the assigned primary hub institution cannot take a referred MHCB case within the 24-hour window, the sending institution will be directed to "back-up" MHCB locations. For SQ, the back-up locations are, in the following order: SAC (which is scheduled to get 18 OHU beds and more clinical staffing for their CTC, which should increase their capacity significantly), MCSP, and COR. For CCI, the back-up locations are, in the following order: CEN, RJD, and COR. For DVI, in the event a back-up location is needed, cases will be directed to SATF. For CTF, in the event a back-up location is needed, cases will be directed to PVSP. If any institution is unable to secure a placement with their primary institution, they should contact Health Care Placement Unit that will assist these institutions with these secondary contacts. (HCPU maintains daily census figures from all CDC inpatient facilities so they can direct an institution to the appropriate alternative location.) It is the sending institutions' responsibility to transport that inmate to the identified MHCB when the inmate has been accepted.

(5) CDC will continue to pursue construction of additional CTC beds, including projects at SQ, "Delano II", and SAC as permanent means of increasing MHCBs. However, none of these projects will produce additional MHCB beds until 2004, at the earliest.

(6) The preceding information will be provided to the institutions through a memorandum jointly signed by the Deputy Directors of Health Care Services and Institutions Divisions.

If you need any additional information, please contact me at (916) 323-0236.

EILEEN BAUMGARDNER
Chief (A), Mental Health Services
Health Care Services Division

cc: Susann J. Steinberg, M.D., Deputy Director, HCSD
Larry Witek, Deputy Director, Institutions Division
Edward S. Alameida Jr., Assistant Deputy Director, Institutions Division
Stephen M. Boreman, Assistant Deputy Director (A), Field Management/Operations, HCSD
Tom Voss, Regional Administrator, HCSD
Martha Linney, Regional Administrator, HCSD
John O'Shaughnessey, Health Care Administrator California State Prison, Corcoran
Irma Nava, Chief, Health Care Placement Unit, HCSD
Rodrick Q. Hickman, Regional Administrator-North
Jeff Diggs, Institution Services
Kathy Keeshen, Supervising Attorney, Legal Affairs
Judi Lemos, Staff Counsel, Legal Affairs

EXHIBIT B

November 8, 2001Memorandum on
MHCB Transfers

# Memorandum

Date : November 8, 2001

To : Wardens
Health Care Managers
Chief Psychiatrist
Chief / Senior Psychologist

Subject: **MODIFICATION OF MENTAL HEALTH CRISIS BED "HUB" ASSIGNMENTS**

The following is a modification of the December 12, 2000 memorandum. This procedure ensures that inmates from San Quentin State Prison (SQ), Deuel Vocational Institution (DVI), Correctional Training Facility (CTF), and California Correctional Institution (CCI) who require a Mental Health Crisis Bed (MHCB) level of care are transferred to an appropriate MHCB institution within 24 hours of being identified as requiring this level of care.

The primary "hub" designations for the above institutions are as follows: DVI's primary hub is California State Prison, Corcoran (COR); Sierra Conservation Center (SCC) will use the Substance Abuse Treatment Facility and State Prison at Corcoran (SATF); SQ will use California State Prison Solano (SOL); CTF will use Salinas Valley State Prison (SVSP); and CCI will use California State Prison Los Angeles County (LAC). When a MHCB is required, SQ, DVI, CTF, and CCI are to contact their primary hub. The hub institution will inform the requesting institution if it has a bed available or if they expect one to be available within the 24-hour period. Once the inmate has been accepted by the Chief Psychiatrist (or designee at the receiving institution) and after the receiving Classification and Parole Representative (C&PR) at the receiving institution has requested the teletype endorsement, it is the sending C&PR's responsibility to arrange special transportation and to ensure transport of the inmate to the MHCB (teletypes for transfers occurring on non-work days will be issued on the next working day).

If any institution is unable to secure a placement with their primary institution, they should contact Health Care Placement Unit (HCPU) for assistance with secondary MHCB placement contacts. If SQ is unable to effect a transfer to their primary hub (SOL) their back-up locations (in order of contact) are as follows: SAC, MCSP, and COR. If CCI is unable to effect a transfer to LAC their back-up locations (in order of contact) are Centinela State Prison (CEN), Richard J. Donovan Correctional Facility (RJD), and COR. DVI's back-up location is SATF, and CTF's back-up is Pleasant Valley State Prison (PVSP).

If you need any additional information, please contact David Gransee, Chief (A), Mental Health Services, Health Care Services Division at (916) 323-0236. For placement questions please contact Irma V. Nava, Chief, Health Care Placement Unit at (916) 322-5765. For classification questions contact Jeff Diggs, Chief, Classifications at (916) 322-2544.

for SUSANN J. STEINBERG, M.D.
Deputy Director
Health Care Services Division

LARRY WITEK
Deputy Director
Institutions Division

cc: Edward S. Alameida, Director, CDC
David M. Tristan, Chief Deputy Director, Field Operations, CDC
Stephen M. Boreman, Assistant Deputy Director(A), Field Management/Operations, HCSD
Roderick Q. Hickman, Assistant Deputy Director, Institutions Division, CDC
David G. Gransee, Chief (A), Mental Health Services, HCSD
Health Care Regional Administrators, Health Care Services Division
Regional Administrators, Institutions Division
Irma V. Nava, Chief, Health Care Placement Unit, HCSD
Jeff Diggs, Institution Services
Rochelle Holzmann, Deputy Attorney General, Attorney General's Office
Kathy Keeshen, Supervising Attorney, Legal Affairs Division
Judi Lemos, Attorney, Legal Affairs Division
Correctional Couselor III's
Classification and Paroles Representatives