# *Declaration of V. Brewer*

1  EDMUND G. BROWN JR.
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  DEBBIE J. VOROUS, State Bar No. 166884
   GREGORY G. GOMEZ, State Bar No. 242674
4  DAVID E. BRICE, State Bar No. 269443
   Deputy Attorneys General
5   1300 I Street, Suite 125
    P.O. Box 944255
6   Sacramento, CA 94244-2550
    Telephone: (916) 324-5345
7   Fax: (916) 324-5205
    E-mail: Debbie.Vorous@doj.ca.gov
8
   Attorneys for Defendants
9

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12                       SACRAMENTO DIVISION

13

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DECLARATION OF VICTOR BREWER IN SUPPORT OF DEFENDANTS' RESPONSE TO THE COURT'S OCTOBER 5, 2010 ORDER THAT DEFENDANTS FILE A STATEMENT IDENTIFYING PROVISIONS OF STATE LAW THAT PROHIBIT THEM FROM INCREASING ADMISSIONS TO THE SALINAS VALLEY STATE PRISON C-5/C-6 PROJECT AND IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF** |

I, VICTOR BREWER, declare:

1.  I am the Executive Director of the Salinas Valley Psychiatric Program (SVPP) at Salinas Valley State Prison (SVSP) and employed by the California Department of Mental Health (DMH). I have personal knowledge of the facts stated in this declaration and if called to testify to those facts, could and would do so competently. I submit this declaration in support of Defendants' Response to The Court's October 5, 2010 Order That Defendants File a Statement

1

Identifying Provisions of State Law That Prohibit Them From Increasing Admissions to the Salinas Valley State Prison C-5/C-6 Project. I also submit this declaration in Support of Defendants' Notice of Motion and Motion for Relief Re: The Court's October 5, 2010 Order That The Department of Mental Health Admit Ten Inmate-Patients Per Week Into The Salinas Valley State Prison C-5/C-6 Project.

2. As the Executive Director of the SVPP, I oversee the completion and activation of Defendants' short, intermediate, and long-range construction bed projects involving DMH, including Defendants' mental health bed project to convert two buildings (C-5 and C-6) on the SVSP C yard to 116 Intermediate Care Facility high-custody beds (C-5/C-6 Project). The C-5/C-6 Project is a licensed inpatient hospital program that provides care for mentally ill inmates.

3. In response to this Court's October 5, 2010 order that Defendants identify those provisions of state law that, in Defendants' view, preclude them from admitting ten inmate-patients per week into the C-5/C-6 Project, I identified six provisions of state law. These provisions, which are set forth below, include those provisions that I referred to in my testimony in Court on October 4, 2010:

(a) Cal. Code Regs. tit. 22, § 79743(c) (requiring determination of inmate-patient's condition, provisional diagnosis, and initial treatment plan within 24 hours of admission);

(b) Cal. Code Regs. tit. 22, § 79747(a)(1) (requiring the individual treatment plan be developed by the Interdisciplinary Treatment Team (IDTT) no later than 72 hours following inmate-patient's admission);

(c) Cal. Code Regs. tit. 22, § 79747(a)(3) (requiring that the individual treatment plan be reviewed and updated as often as indicated, but no less often than every seven days);

(d) Cal. Code Regs. tit. 22, § 79747(a)(3) (requiring that the individual treatment plan be reviewed and updated not less than every 30 days for nonacute mental health patients);

(e) Cal. Code Regs. tit. 22, § 79747(a)(4)(A)-(I), (b)(c) (outlining the minimum requirements of the individual treatment plan); and

(f) Cal. Code Regs. tit. 22, § 79749 (outlining services required in a mental health treatment program).

4. Waiving the above-referenced state law would allow DMH to extend the licensing timelines to complete inmate-patient reviews and assessments and develop treatment plans, thereby allowing DMH to physically admit ten inmate-patients per week into the C-5/C-6 Project without potentially violating Title 22. The Court's order, however, may not help the very problem that it seeks to remedy—providing greater access to intermediate level of care to the inmate-patients. While the Court's order will accelerate the number of inmate-patients admitted in C-5 and C-6, it will also have the undesirable effect—due to the physical plant's limitation on treatment space—of lowering the quality of treatment to all of the inmate-patients in that unit.

5. With waiver of the above-referenced state laws, I currently expect that the following tasks will not be accomplished and/or will have a negative impact on the program:

(a) When an inmate-patient is admitted to C-5, the SVPP inmate-patient treatment team must first assess that inmate-patient for, among other things, medication needs. Consequently, the C-5 Unit will become an Intake Unit during the period of time that it will take to admit the 58 inmate-patients into the Unit. During that period of time, the inmate-patient treatment teams, which include, among others, psychiatrists, psychologists, and social workers, will not likely be able to complete the 72-hour IDTT, 10-day IDTT, 30-day IDTT, or provide an inmate-patient care plan. Additionally, the inmate-patients will not likely have individualized treatment plans or be able to participate in therapeutic programming until after all 58 inmate-patients are admitted. This means that the inmate-patients would be kept in their cells longer, without beneficial group or individualized therapy until the IDTTs could be held. Additionally, the lack of a timely treatment plan may increase the average length of stay by several months due to the initial loss of inpatient programming.

(b) Because the intake process is expected to take up to six weeks, it will likely be at least six weeks before the inmate-patient treatment team can make a recommendation to the Institutional Classification Committee (ICC) for an alteration of the inmate-patient's custody status from being cuffed to un-cuffed. Therefore, all inmate-patients will be on limited programming status and precluded from participating in large group activities.

3

      (c)    The inmate-patients currently admitted into C-5 who are currently receiving out-of-cell, un-cuffed, therapeutic programming will immediately cease programming when the accelerated rate commences.

    6.    I expect that by waiving the licensing requirements in order to accelerate admissions, it may take up to six months after the accelerated admissions cease to provide the minimum treatment requirements under Title 22 and complete the ICC appointments. Additionally, preliminary estimates are that it will take the C-5 program and staff approximately eight to ten months to recover from the accelerated process because, in part, DMH must retrain the C-5 staff in the correct processes for admissions and therapeutic expectations.

I declare under penalty of perjury that the foregoing is true.

Executed this 12 day of October, 2010, in Sacramento.

                              */s/ Victor P. Brewer*
                              VICTOR BREWER

CF1997CS0003