1  EDMUND G. BROWN JR.
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  DEBBIE J. VOROUS, State Bar No. 166884
   GREGORY G. GOMEZ, State Bar No. 242674
4  DAVID E. BRICE, State Bar No. 269443
   Deputy Attorneys General
5   1300 I Street, Suite 125
    P.O. Box 944255
6   Sacramento, CA 94244-2550
    Telephone: (916) 324-5345
7   Fax: (916) 324-5205
    E-mail: Debbie.Vorous@doj.ca.gov
8
   Attorneys for Defendants
9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE EASTERN DISTRICT OF CALIFORNIA
11
                          SACRAMENTO DIVISION
12

13

14  **RALPH COLEMAN, et al.,**              2:90-cv-00520 LKK JFM P

15                              Plaintiffs,  **DEFENDANTS' NOTICE OF
                                             MOTION AND MOTION FOR
16          v.                               RELIEF RE: THE COURT'S
                                             OCTOBER 5, 2010 ORDER THAT
17                                           THE DEPARTMENT OF MENTAL
                                             HEALTH ADMIT TEN INMATE-
18  **ARNOLD SCHWARZENEGGER, et al.,**       PATIENTS PER WEEK INTO THE
                                             SALINAS VALLEY STATE PRISON
19                              Defendants.  C-5/C-6 PROJECT; MEMORANDUM OF
                                             POINTS AND AUTHORITIES**
20
                                             Hearing Date: November 22, 2010
21                                           Time:         10:00 a.m.
                                             Courtroom:    Dept 4, 15th Floor
22                                           Judge: Lawrence K. Karlton, Senior Judge

23

24  **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

25          PLEASE TAKE NOTICE that Defendants move this Court for relief from the following

26  portion of the Court's October 5, 2010 order: "Beginning on October 12, 2010, defendants shall

27  admit inmate patients to the C-5 unit at a rate of not less than ten inmate patients per week until

28  that unit is filled." (Docket No. 3939 ¶ 2.) Defendants further move this Court for relief from the

                                          1

1  following italicized portion of its October 5, 2010 order: "Following the transfer of inmate

2  patients from the C-5 Unit to the C-6 Unit and completion of the permanent replacement of the

3  fire suppression system, defendants shall begin admitting inmate patients to the C-5 Unit on

4  January 18, 2011 and *shall admit inmate patients to that unit at a rate of not less than ten inmate*

5  *patients per week until both the C-5 and C-6 Units are filled."* (*Id.* ¶ 3 (italics added).)

6        Defendants ask the Court for relief from the above-referenced portions of its October 5,

7  2010 order under Federal Rule of Civil Procedure 60(b)(6) on the ground that there are

8  "extraordinary circumstances" that justify relief.  First, waiving the provisions of state law that, in

9  Defendants' view, preclude them from admitting ten inmate-patients per week would not change

10  the fact that by increasing admissions to ten inmate-patients per week, the California Department

11  Mental Health (DMH) cannot provide appropriate treatment for those inmate-patients admitted

12  into the C-5 and C-6 Units for up to six months after the accelerated admissions cease.  (Brewer

13  Decl. ¶¶ 4–6.)  Second, the Court's waiver of the timelines for inmate-patient assessments and

14  reviews will have the unintended consequence of placing the DMH clinicians working in the C-5

15  and C-6 Units in the untenable position of providing treatment that could potentially fall below

16  the standard of care for institutional mental health treatment in violation of ethical principles.

17  (Lipon Decl. ¶¶ 6–9.)

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

2

1    This motion is based on this notice of motion, the supporting memorandum of points and

2    authorities, the pleadings, records and files in this action, the declarations of Victor Brewer and

3    Richard Lipon, M.D., and such other matters as may properly come before the Court.

4    Dated:  October 12, 2010

        Respectfully submitted,

5        EDMUND G. BROWN JR.
         Attorney General of California

6        JONATHAN L. WOLFF
         Senior Assistant Attorney General

7

8        */s/ Debbie J. Vorous*

9        DEBBIE J. VOROUS
         Deputy Attorney General
         *Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                3

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| **DMH** | Department of Mental Health |
| **ICC** | Institutional Classification Committee |
| **IDTT** | Interdisciplinary Treatment Team |
| **SVPP** | Salinas Valley Psychiatric Program |
| **SVSP** | Salinas Valley State Prison |

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On October 5, 2010, this Court issued an order following an evidentiary hearing on Defendants' mental health bed project to convert two buildings (C-5 and C-6) on the Salinas Valley State Prison (SVSP) C yard to 116 Intermediate Care Facility high-custody beds (C-5/C-6 Project). (Docket No. 3929.) The Court ordered, in part, that the California Department of Mental Health (DMH) increase its intended admissions into the C-5 and C-6 Units from five inmate-patients per week to ten inmate-patients per week until those units are filled, and stated that the Court intends to waive those requirements of state law that, in Defendants' view, preclude them from admitting ten inmate-patients per week into the C-5 and C-6 Units. (*Id.* at 2:20–23; ¶¶ 2–4.)

First, waiving the provisions of state law that, in Defendants' view, preclude them from admitting ten inmate-patients per week would not change the fact that by increasing admissions to ten inmate-patients per week, DMH cannot provide appropriate intermediate care facility treatment for those inmate-patients admitted into the C-5 and C-6 Units. (Brewer Decl. ¶¶ 4–5.) Second, the Court's waiver of the timelines for inmate-patient assessments and reviews will have the unintended consequence of placing the DMH clinicians working in the C-5 and C-6 Units in the untenable position of providing treatment that could potentially fall below the standard of care for institutional mental health treatment in violation of ethical principles. (Lipon Decl. ¶¶ 6–9.)

Defendants therefore request that this Court relieve them from the portions of the Court's October 5, 2010 order that obligate DMH to admit inmate-patients into the C-5 and C-6 Units at a rate of not less than ten inmate-patients per week until those units are filled because extraordinary circumstances exist to justify relief.

**BACKGROUND**

On September 3, 2010, Plaintiffs filed an emergency motion for an evidentiary hearing regarding the C-5/C-6 Project. (Docket No. 3907.) Plaintiffs argued that a hearing was necessary to understand the premise behind DMH's plan to admit five inmate-patients per week and why

5

1    DMH cannot accelerate the admissions to ten per week.  (*Id.* 17:13–17, 18:2–6.)  Defendants

2    opposed Plaintiffs' motion and explained that, in part, "[t]his admission rate has assured that the

3    inmate-patients received *appropriate* treatment upon admission to the various programs."

4    (Docket No. 3913 at 11:22–23; Docket No. 3913–3 ¶ 3) (emphasis added).)  Additionally,

5    Defendants explained that the Salinas Valley Psychiatric Program (SVPP) must meet all

6    requirements under Title 22, Chapter 12, regarding required Interdisciplinary Treatment Team

7    (IDTT) appointments, and that it provide inmate-patient programming of between 35 and 40

8    hours per week during the activation process.  (*Id.* 12:2–6; *Id.* ¶ 5.)  Moreover, Defendants

9    explained that physical plant limitations prohibit DMH from increasing admissions to ten inmate-

10   patients per week while maintaining the appropriate treatment regimen.  (*Id.* 12:20–24; *Id.* ¶ 7.)

11        The Court granted Plaintiffs' motion and set a hearing for October 4, 2010.  (Docket No.

12   3917.)   At the hearing, Victor Brewer, Executive Director of the SVPP, testified, in part, that

13   limiting admissions to five inmate-patients per week is necessary to permit Defendants to comply

14   with the regulatory timelines for patient assessments and reviews required by state law.  (Docket

15   No. 3929 at 2: 9–13.)  Mr. Brewer "opined that the assessments and reviews [under Title 22]

16   could be completed, although not within the required time frames if they admit more than five

17   inmate patients per week."  (Docket No. 3929 at 2:9–15.)

18        On October 5, 2010, the Court issued its order on the hearing.  The Court ordered that

19   beginning on October 12, 2010, DMH shall admit inmate-patients to the C-5 Unit "at a rate of not

20   less than ten inmate patients per week until that unit is filled."  (Docket No. 3929 ¶ 2.)  The Court

21   further ordered that once the permanent repairs to the C-6 Unit are complete and the inmates from

22   the C-5 Unit are transferred to the C-6 Unit, "defendants shall begin admitting inmate patients to

23   the C-5 Unit on January 18, 2011 and shall admit inmate patients to that unit at a rate of not less

24   than ten inmate patients per week until both the C-5 and C-6 Units are filled."  (*Id.* ¶ 3.)  In order

25   to accelerate admissions, the Court stated that it "intends to waive those requirements of state law

26   that, in defendants' view, preclude them from admitting ten inmate patients per week to the C-5

27   and C-6 ICF units" and that it "intends to waive the provisions of state law referred to in the

28   testimony of Victor Brewer to the extent required to comply with" its order.  (*Id.* at 2:20–22; ¶ 4.)

1   Consequently, the Court ordered that Defendants "file a statement identifying those provisions of

2   state law." (*Id.* ¶ 4.)  Concurrent with this filing, and without waiving any arguments or appellate

3   rights, Defendants submit the requested statement identifying state laws.

4                                   **STANDARD OF REVIEW**

5        Federal Rule of Civil Procedure 60(b)(6) provides that a court may relieve a party from an

6   otherwise final order for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  A

7   movant seeking relief under Rule 60(b)(6) is required to show "extraordinary circumstances"

8   justifying relief.  *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  Rule 60(b)(6) affords courts the

9   discretion and power to vacate judgments whenever such action is appropriate to accomplish

10  justice.  *Gonzalez*, 545 U.S. at 542 (Stevens, J., dissenting) (quoting *Liljeberg v. Health Servs.*

11  *Acquisition Corp.,* 486 U.S. 847, 864 (1988)).

12                                       **ARGUMENT**

13  **A.   THIS COURT SHOULD RELIEVE DEFENDANTS FROM THOSE PORTIONS OF**
14  **THE COURT'S ORDER THAT OBLIGATE THE DEPARTMENT OF MENTAL**
     **HEALTH TO ADMIT TEN INMATE-PATIENTS PER WEEK INTO THE C-5 AND**
15  **C-6 UNITS BECAUSE THE INMATE-PATIENTS HOUSED IN THOSE UNITS**
     **WILL NOT RECEIVE APPROPRIATE TREATMENT AT THAT ADMISSION**
16  **RATE.**

17       Extraordinary circumstances exist here to grant Defendants relief from the requirement that

18  the California Department of Mental Health (DMH) admit inmate-patients into the C-5 and C-6

19  Units at the rate of ten inmate-patients per week until both the C-5 and C-6 Units are filled.  The

20  extraordinary circumstances are that the Court's order may not help the very problem that it seeks

21  to remedy—providing greater access to intermediate care facility level of care to the *Coleman*

22  class members.  (Brewer Decl. ¶¶ 4–6.)

23

24       In order to accelerate admissions, this Court has indicated that it intends to waive the

25  provisions of state law that, in Defendants' view, preclude them from admitting ten inmate-

26  patients per week to the C-5 and C-6 Units.  (Docket No. 3929 at 2:20-22.)   But, as discussed

27  below, even with this waiver, DMH cannot provide an appropriate intermediate care facility level

28  / / /

7

1  of treatment to those inmate-patients housed in the C-5 and C-6 Units for up to six months after

2  the accelerated admissions cease.  (Brewer Decl. ¶ 6.)

3       Defendants have complied with this Court's order and, concurrent with this filing and

4  without waiving any appellate rights, filed a statement identifying those provisions of state law

5  that, in Defendants' view, preclude them from admitting ten inmate-patients a week into the C-5

6  and C-6 Units.  The provisions of state law that preclude DMH from admitting ten inmate-

7  patients per week to the C-5 and C-6 Units, are as follows:

8       (1)   Cal. Code Regs. tit. 22, § 79743(c) (requiring determination of inmate-patient's

9  condition, provisional diagnosis, and initial treatment plan within 24 hours of admission);

10       (2)   Cal. Code Regs. tit. 22, § 79747(a)(1) (requiring the individual treatment plan be

11  developed by the Interdisciplinary Treatment Team (IDTT) no later than 72 hours following

12  inmate-patient's admission);

13       (3)   Cal. Code Regs. tit. 22, § 79747(a)(3) (requiring that the individual treatment plan be

14  reviewed and updated as often as indicated, but no less often than every seven days);

15       (4)   Cal. Code Regs. tit. 22, § 79747(a)(3) (requiring that the individual treatment plan be

16  reviewed and updated not less than every 30 days for nonacute mental health patients);

17       (5)   Cal. Code Regs. tit. 22, § 79747(a)(4)(A)-(I), (b)(c) (outlining the minimum

18  requirements of the individual treatment plan); and

19       (6)   Cal. Code Regs. tit. 22, § 79749 (outlining services required in a mental health

20  treatment program).  (Brewer Decl. ¶ 3.)

21       Waiving the above-referenced state law would allow DMH to extend the licensing timelines

22  to complete inmate-patient reviews and assessments and develop treatment plans, thereby

23  allowing DMH to physically admit ten inmate-patients per week into the C-5/C-6 Project without

24  potentially violating Title 22.  (Brewer Decl. ¶ 4.)  However, waiving these timelines does not

25  change the fact that DMH still cannot provide *appropriate* intermediate care facility treatment for

26  up to six months after the accelerated admissions cease if the admission rate is increased to ten

27  inmate-patients per week.  (Brewer Decl. ¶ 6.)  Nor does it address the physical plant limitations;

28  that is, the available treatment space for interviews and IDTTs that prohibit DMH from admitting

8

1    and providing appropriate treatment to ten inmate-patients per week.  (Docket No. 3913 at 12:20–

2    24; Brewer Decl. ¶ 4.)[1]  Because of this limited treatment space, programming in the unit will be

3    necessarily curtailed, in order to use the available space for intake of new patients.  (*Id; Id.* ¶¶ 4–

4    5.)

5            With waiver of the above-referenced state laws, Defendants currently expect that the

6    following tasks will not be accomplished and/or will have a negative impact on the program:

7            (1)    When an inmate-patient is admitted to C-5, the SVPP inmate-patient treatment team

8    must first assess that inmate-patient for, among other things, medication needs.  (Docket No.

9    3913 at 12:6–8; Brewer Decl. ¶ 5.)  Consequently, the C-5 Unit will become an Intake Unit

10   during the period of time that it will take to admit the 58 inmate-patients into the unit.  (Brewer

11   Decl. ¶ 5.)  During that period, the inmate-patient treatment teams will not likely be able to

12   complete the 72-hour IDTT, 10-day IDTT, 30-day IDTT, or provide an inmate-patient care plan.

13   (*Id.*)  Additionally, the inmate-patients will not likely have individualized treatment plans or be

14   able to participate in therapeutic programming until after all 58 inmate-patients are admitted.

15   (*Id.*)  This means that the inmate-patients will be kept in their cells longer, without beneficial

16   groups or individualized therapy, until the IDTTs could be held.  (*Id; Lipon Decl.* ¶ 8.)  This has

17   the potential to result in the inmate-patient regressing, decompensating and/or becoming violent

18   towards himself or others.  (Lipon Decl. ¶ 8.)  Additionally, the lack of a timely treatment plan

19   may increase the average length of stay by several months due to the initial loss of inpatient

20   programming.  (Brewer Decl. ¶ 5 .)

21           (2)    Because the intake process is expected to take up to six weeks, it will likely be at least

22   six weeks before the inmate-patient treatment team can make a recommendation to the

23   Institutional Classification Committee (ICC) for an alteration of the inmate-patient's custody

24   / / /

25   _____

26          [1] Defendants do not intend to imply that this Court's waiver of any other requirement
     associated with the C-5/C-6 Project is possible or appropriate.  Defendants continue to believe
27   that the appropriate admission rate into the C-5/C-6 Project is five inmate-patients a week—the
     rate that will assure that the inmate-patients receive appropriate treatment in the program.
28   (Docket No. 3913 at 11:10–14:15.)

1  status from being cuffed to un-cuffed.  (Brewer Decl. ¶ 5.)  Therefore, all inmate-patients will be

2  on limited programming status and precluded from participating in large group activities. (*Id.*)

3         (3)    The inmate-patients currently admitted into C-5 who are currently receiving out-of-

4  cell, un-cuffed, therapeutic programming will immediately cease programming when the

5  accelerated rate commences.  (Brewer Decl. ¶ 5.)  Potentially, some or all of these inmate-patients

6  may decompensate due to losing the therapeutic and recreational programming they had been

7  receiving before DMH accelerated admissions.  (Lipon Decl. ¶ 9.)

8         Defendants expect that by waiving the licensing requirements in order to accelerate

9  admissions, it may take up to six months to provide the minimum treatment requirements under

10  Title 22 and complete the ICC appointments.  (Brewer Decl. ¶ 6.)  Additionally, preliminary

11  estimates are that it will take the C-5 treatment program and staff approximately eight to ten

12  months to recover from the accelerated process because, in part, DMH must retrain the C-5 staff

13  in the correct processes for admissions and therapeutic expectations.  (*Id.*)

14         Defendants believe that the Court's order may not help the very problem it seeks to

15  remedy—providing greater access to intermediate level of care to the *Coleman* class members.

16  (Brewer Decl. ¶¶ 4–6; Lipon Decl. ¶¶ 7–9.)  While the Court's order will accelerate the number of

17  inmate-patients admitted in C-5 and C-6, it will also have the undesirable effect—due to the

18  physical plant's limitation on treatment space—of lowering the quality of treatment to all of the

19  inmate-patients in the unit.  (*Id.* ¶ 4.)  Because this runs counter to the Defendants' responsibility

20  in this litigation and under state law to provide appropriate intermediate care facility level of care,

21  "extraordinary circumstances" exist to justify relief under Rule 60(b)(6).

22         Accordingly, because Defendants have demonstrated "extraordinary circumstances" to

23  justify relief from this Court's October 5, 2010 order concerning the requirement that DMH admit

24  ten inmate-patients per week in the C-5/C-6 Project, this Court should grant Defendants' motion

25  for relief.

26  / / /

27  / / /

28  / / /

10

1

**B.     THIS COURT SHOULD GRANT DEFENDANTS RELIEF FROM THOSE PORTIONS OF THE COURT'S ORDER THAT OBLIGATE THE DEPARTMENT OF MENTAL HEALTH TO ADMIT TEN INMATE-PATIENTS PER WEEK INTO THE C-5 AND C-6 UNITS BECAUSE WAIVER OF STATE LAWS GOVERNING TREATMENT PLACES DMH CLINICIANS WORKING IN THE UNITS IN THE UNTENABLE POSITION OF PROVIDING TREATMENT THAT COULD POTENTIALLY FALL BELOW THE STANDARD OF CARE.**

Although permitting state officials to act in excess of state law could be within this Court's equitable powers under *Stone v. City and County of San Francisco,* 968 F.2d 850, 862 (9th Cir. 1992), this Court's intended waiver of state law, so that Defendants can increase admissions to ten inmate-patients per week, will have the unintended consequence of placing the DMH's clinicians in the untenable position of providing treatment that could potentially fall below the standard of care for institutional mental health treatment in violation of ethical principles.  (Lipon Decl. ¶¶ 6–9.)  Therefore, extraordinary circumstances exist to grant Defendants relief from the requirement that DMH admit inmate-patients into C-5 and C-6 Units at the rate of not less than ten inmate-patients per week.

The C-5/C-6 Project is a licensed inpatient hospital program that provides care for mentally ill inmates.  (Brewer Decl. ¶ 2.)  The treatment teams consist of, among others, psychiatrists, psychologists, and social workers.  (*Id.* ¶ 5.)  These clinicians have potential liability to third parties, including plaintiffs, for personal injury or wrongful death caused by their professional negligence.  Cal. Civ. Code §§ 1714.8, 3333.2; Cal. Gov't Code §§ 820, 845.6.  And psychiatrists are bound by the American Psychiatric Association's Principles of Medical Ethics, which contain two standards of conduct directly on point:  (1) A physician shall be dedicated to providing competent medical care, with compassion and respect for human dignity and rights; and (2) A physician shall, while caring for a patient, regard responsibility to the patient as paramount. (Lipon Decl. ¶ 2, citing to American Psychiatric Association, Principles of Medical Ethics, Revised June 2001.)

Waiving the above-referenced Title 22 requirements as this Court intends, and ordering that DMH admit ten inmate-patients per week into the C-5/C-6 Project, places the DMH clinicians working in the C-5 and C-6 Units in the untenable position of providing treatment that could potentially fall below the standard of care for institutional mental health treatment in violation of

11

1   ethical principles; that is, by focusing only on intake of the new inmate-patients, the clinicians

2   will not be able to complete the 72-hour IDTT, 10-day IDTT, 30-day IDTT, or provide an inmate-

3   patient care plan until after all 58 inmates-patients are admitted.  (Lipon Decl. ¶¶ 5–8.)  This

4   would sacrifice development of inmate-patient IDTTs and individualized treatment plans.  (*Id.* ¶¶

5   7–8.)  Because of the delay in IDTTs that would occur as a result of increased admissions,

6   inmate-patients would likely be kept in their cells longer, without beneficial group or individual

7   therapy, until the IDTTs could be held.  (*Id.*; Brewer Decl. ¶ 5.)  This has the potential to result in

8   the inmate-patient regressing, decompensating and/or becoming violent toward himself or others.

9   (Lipon Decl. ¶ 8.)

10      Additionally, because the DMH clinicians will be focusing only on intake of new inmate-

11   patients, therapeutic programming for those inmate-patients already admitted into the C-5 Unit

12   will cease.  (Brewer Decl. ¶ 5.)  Ceasing this treatment in order to intake new inmate-patients also

13   places the DMH clinicians working in the C-5 Unit in the untenable position of providing

14   treatment that could potentially fall below the standard of care of institutional mental health

15   treatment.  (Lipon Decl. ¶¶ 6, 9.)  Potentially, some or all of these inmate-patients admitted into

16   C-5 may decompensate due to losing the therapeutic and recreational programming they had been

17   receiving before DMH accelerated admissions.  (*Id.* ¶ 9.)

18      As Dr. Lipon's declaration demonstrates, the Court's order will place the DMH clinicians

19   in the C-5 and C-6 Units in the position of having to choose between complying with the Court's

20   order on one hand, or maintaining their ethical duties to their inmate-patients and the standard of

21   care on the other hand.  (Lipon Decl. ¶¶ 6–9.)  Again, this is an extraordinary circumstance that is

22   not consistent with state law or Defendants' responsibility in this litigation to improve the quality

23   of mental health treatment for the *Coleman* class members.

24      Accordingly, because Defendants have demonstrated "extraordinary circumstances" to

25   justify relief from this Court's October 5, 2010 order concerning the requirement that DMH admit

26   ten inmate-patients per week into the C-5/C-6 Project, this Court should grant Defendants'

27   motion for relief.

28   / / /

12

1

## <u>CONCLUSION</u>

2     For the foregoing reasons, Defendants respectfully request that this Court grant their motion

3 for relief and relieve Defendants from the above-described portions of the Court's October 5,

4 2010 order.

5

6 Dated:  October 12, 2010

Respectfully submitted,

7
EDMUND G. BROWN JR.
Attorney General of California
8
JONATHAN L. WOLFF
Senior Assistant Attorney General
9

10
*/s/ Debbie J. Vorous*

11
DEBBIE J. VOROUS
Deputy Attorney General
12
*Attorneys for Defendants*

13 CF1997CS0003

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Not. Mot. & Mot. for Relief Re: C-5/C-6 Proj.; P. & A.
(2:90-cv-00520 LKK JFM P)