EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
GREGORY G. GOMEZ, State Bar No. 242674
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' REQUEST FOR STAY PENDING THE COURT'S DISPOSITION OF DEFENDANTS' MOTION FOR RELIEF RE: THE COURT'S OCTOBER 5, 2010 ORDER THAT THE DEPARTMENT OF MENTAL HEALTH ADMIT TEN INMATE-PATIENTS PER WEEK INTO THE SALINAS VALLEY STATE PRISON C-5/C-6 PROJECT**<br><br>**REQUEST FOR EXPEDITED RULING** |

## INTRODUCTION

Defendants seek a stay under Federal Rule of Civil Procedure 62(b)(4) from the following portion of the Court's October 5, 2010 order: "Beginning on October 12, 2010, defendants shall admit inmate patients to the C-5 unit at a rate of not less than ten inmate patients per week until that unit is filled." (Docket No. 3939 ¶ 2.) Concurrent with this filing, Defendants filed a Federal Rule of Civil Procedure 60(b)(6) motion for relief from the above-referenced portion of the Court's October 5, 2010 order on the ground that there are "extraordinary circumstances" that

1

justify relief.[1] First, the Court's intended waiver of state law concerning the timelines for inmate-patient assessments and reviews would not change the fact that by increasing admissions to ten inmate-patients per week, the California Department of Mental Health (DMH) cannot provide appropriate intermediate care facility treatment for those inmate-patients admitted into the C-5 and C-6 Units for up to six months after the accelerated admissions cease. (Defs.' Mot. 7:13–10:25.) Second, the Court's waiver of the timelines for inmate-patient assessments and reviews will have the unintended consequence of placing the DMH clinicians working in the C-5 and C-6 Units in the untenable position of providing treatment that could potentially fall below the standard of care for institutional mental health treatment in violation of ethical principles. (Defs.' Mot. at 11:1–12:27.) Defendants' motion is set for hearing on November 22, 2010.

The Court should grant Defendants' request for a stay pending the Court's disposition of Defendants' motion for relief because Defendants are likely to succeed on their motion, and they will suffer irreparable harm if a stay is not granted. Additionally, Defendants' motion raises a serious legal question; that is, whether waiving the timelines for inmate-patient admissions and reviews so that DMH can accelerate admissions helps with the problem that it seeks to remedy—the provision of greater access to intermediate care facility treatment for the *Coleman* class members. The balance of hardships favors Defendants, the Plaintiffs will not be substantially harmed if the order is stayed, and the public interest lies in favor of providing appropriate intermediate care facility treatment.

/ / /
/ / /
/ / /
/ / /

---

[1] Defendants also seek relief from the following italicized portion of the Court's October 5, 2010 order: "Following the transfer of inmate patients from the C-5 Unit to the C-6 Unit and completion of the permanent replacement of the fire suppression system, defendants shall begin admitting inmate patients to the C-5 Unit on January 18, 2011 and *shall admit inmate patients to that unit at a rate of not less than ten inmate patients per week until both the C-5 and C-6 Units are filled.*" (Docket No. 3929 ¶ 3 (italics added).) Because Defendants' motion is set to be heard on November 22, 2010, Defendants are not seeking a stay of this portion of the Court's order.

2

Defs. Motion to Stay in Part October 5, 2010 Order
(2:90-cv-00520 LKK JFM P)

**ARGUMENT**

**A.    THIS COURT HAS AUTHORITY TO STAY THE ORDER.**

Federal Rule of Civil Procedure 62(b)(4) provides that a court may stay an order pending disposition of a motion under Federal Rule of Civil Procedure 60 for relief from a judgment or order. Fed. R. Civ. Proc. 62(b)(4). Defendants therefore request that this Court stay that part of its October 5, 2010 order requiring that on October 12, 2010, DMH commence admitting inmate-patients into the C-5 Unit at a rate of not less than ten inmate-patients per week until that Unit is filled. Defendants seek an expedited ruling on their motion for a stay due to the short compliance period.

**B.    LEGAL STANDARD FOR ISSUANCE OF STAY.**

The factors involved in determining whether a stay is appropriate include: (1) a likelihood of success on the merits; (2) irreparable harm to the moving party if the stay is not granted; (3) the absence of substantial harm to the non-moving party(ies) if the stay is granted; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The Ninth Circuit has articulated the above standard in the context of "two interrelated legal tests" that "represent the outer reaches of a single continuum." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). At one end of the continuum, the moving party is required to "show both a probability of success on the merits and the possibility of irreparable injury." (*Id.*) At the other end of the continuum, the moving party is required to "demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." (*Id.*) The two tests represent two points on a sliding scale where the required degree of irreparable harm increases as the probability of success decreases. *Golden Gate Rest. Ass'n v. City and County of S.F.,* 512 F.3d 1112, 1116 (9th Cir. 2008). Finally, in cases where the government or third parties are affected, the court also considers the public interest. *Warm Springs Dam Task Force v. Gribble*, 565 F.2d 549, 551 (9th Cir. 1977).

/ / /

/ / /

/ / /

3

Defs. Motion to Stay in Part October 5, 2010 Order
(2:90-cv-00520 LKK JFM P)

**C. THIS COURT SHOULD STAY ITS OCTOBER 5, 2010 ORDER WITH RESPECT TO THE REQUIREMENT THAT ON OCTOBER 12, 2010, THE DEPARTMENT OF MENTAL HEALTH ADMIT INMATE-PATIENTS INTO THE C-5 UNIT AT THE RATE OF NOT LESS THAN TEN INMATE-PATIENTS PER WEEK UNTIL THAT UNIT IS FILLED.**

Applying the legal standard set forth above, the component of the Court's order concerning the requirement that on October 12, 2010, DMH start admitting ten inmate-patients a week into the C-5 Unit until that Unit is filled, should be stayed pending the Court's disposition of Defendants' motion for relief.

**1.  There is a likelihood of success on the merits of Defendants' motion.**

Extraordinary circumstances exist under Rule 60(b)(6) to grant Defendants relief from the requirement that DMH admit inmate-patients into the C-5 and C-6 Units at the rate of ten inmate-patients per week until both the C-5 and C-6 Units are filled. Defendants believe that the appropriate admissions rate into the C-5 and C-6 Units is five inmate-patients per week—the rate that will assure that the inmate-patients receive appropriate intermediate care facility treatment upon admission to the program. (Docket No. 3913 at 11:10–14:15.) In order to effectuate DMH's admission of ten inmate-patients a week into the C-5 Unit, the Court stated that it "intends to waive those requirements of state law that, in defendants' view, preclude them from admitting ten inmate patients per week to the C-5 and C-6 ICF units" and that it "intends to waive the provisions of state law referred to in the testimony of Victor Brewer to the extent required to comply with" its order. (Docket No. 3929 at 2:20–22, ¶ 4.) Concurrent with this filing and as required by the Court, Defendants filed a statement identifying licensing timelines to complete inmate-patient assessments and reviews and develop treatment plans. (Defs.' Stmt. Ident. Prov. of State Law.)

Waiving these timelines would permit faster admission into the C-5 Unit, but it would not change the fact that DMH cannot provide appropriate intermediate facility care treatment to the ten inmate-patients admitted per week. (Defs.' Mot. at 7:13–10:25.) In Defendants' motion, they identify specific tasks that will not be accomplished and/or will have a negative impact on the program and the inmate-patients for a period of up to six months after the accelerated admissions cease. (*Id.* at 9:5–10:13.) Thus, the Court's waiver of state law so that DMH can

4

accelerate admissions may not help the very problem that it seeks to remedy—providing greater access to intermediate care facility level of care to the *Coleman* class members. Additionally, the Court's waiver of the timelines will have the unintended consequence of placing the DMH clinicians in the untenable position of providing treatment that could potentially fall below the standard of care for institutional mental health treatment in violation of ethical principles. (*Id.* at 11:1–12:23.) These are extraordinary circumstances that justify relief, and therefore there is a likelihood of Defendants' success on the merits of their motion. (*Id.* at 7:13–12:23.)

### 2. Defendants will suffer irreparable harm if the stay is not granted.

Defendants have an obligation in this litigation and under state law to provide appropriate intermediate care facility treatment to the inmate-patients in DMH's intermediate care facility programs. If a stay is not granted, DMH clinicians will be in the untenable position of having to choose between complying with the Court's order, or maintaining their ethical obligations to the inmate-patients and the standard of care. (Defs.' Mot. at 11:1–12:23.) Defendants will suffer irreparable harm if they must provide care—for even the brief period during which admissions will be accelerated—that potentially falls below the standard of care for institutional mental health treatment in violation of ethical principles. (*Id.*)

### 3. Plaintiffs will not be substantially harmed if the stay is granted.

As Defendants describe in their motion, DMH expects that if it admits ten inmate-patients per week to the C-5 Unit, several tasks will not be accomplished and/or have a negative impact on the program. (Defs.' Mot. at 9:5–10:**8**.) Specifically, because the C-5 Unit will become an Intake Unit during the period of time that it takes to admit the inmate-patients into the Unit, the inmate-patient treatment teams will not likely be able to complete the 72-hour Interdisciplinary Treatment Team (IDTT) appointments, 10-day IDTT appointments, 30-day IDTT appointments, or provide an inmate-patient care plan. (*Id.* at 9:7–21.) This means that the inmate-patients will be kept in their cells longer and not receive an intermediate facility level of care; that is, they will not receive beneficial groups or individualized therapy until the IDTTs could be held, which DMH expects will not for at least six weeks. (*Id.*) Consequently, the Plaintiffs will not be harmed if the stay is granted pending the Court's disposition of Defendant' motion for relief

5

Defs. Motion to Stay in Part October 5, 2010 Order
(2:90-cv-00520 LKK JFM P)

because it will take up to six weeks before the inmate-patient treatment teams can develop and implement the inmate-patient individualized treatment plans and the inmate-patients receive therapeutic programming.

### 4. Where the public interest lies.

The public interest lies in the ability to provide appropriate intermediate care facility mental health care to the inmate-patients admitted into the C-5 and C-6 Units.

### 5. Defendants' motion for relief raises a serious legal question that requires staying the order, and the balance of hardships tips in Defendants' favor.

The Court's intended waiver of state law in order to allow DMH to accelerate admissions into the C-5 and C-6 Units until they are filled raises a serious legal question that warrants a stay. Specifically, whether waiving the timelines for inmate-patient admissions and reviews so that DMH can accelerate admissions actually helps the problem that it seeks to remedy—the provision of greater access to intermediate care facility treatment to the *Coleman* class members. (Defs.' Mot. at 7:13–12:27.) The Court should stay its order so that it can address this question. Moreover, the balance of hardships tips in Defendants' favor, as demonstrated above.

## CONCLUSION

For the reasons stated, Defendants' respectfully request that this Court grant their request for stay pending the Court's disposition of their motion for relief.

Dated: October 12, 2010

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General

*/s/ Debbie J. Vorous*

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003

6

Defs. Motion to Stay in Part October 5, 2010 Order
(2:90-cv-00520 LKK JFM P)