PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
AARON J. FISCHER, Bar No. 247391
315 Montgomery Street, 10th Floor
San Francisco, California  94104-1823
Telephone:    (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, California  94107-1389
Telephone:    (415) 864-8848

BINGHAM McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California  94111-4066
Telephone:    (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

       Plaintiffs,

   v.

ARNOLD SCHWARZENEGGER, et al.,

       Defendants.

Case No. Civ S 90-0520 LKK-JFM

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF SPECIAL MASTER'S RECOMMENDATION THAT DEFENDANTS SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE**

[443870-1]

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   PROCEDURAL BACKGROUND ....................................................................... 2

III.  STANDARD OF REVIEW .................................................................................. 4

IV.   ARGUMENT ......................................................................................................... 4

      A.    THE SPECIAL MASTER'S RECOMMENDATION AS TO SUICIDE-
            RESISTANT BEDS IS WELL SUPPORTED BY THE RECORD ...................... 5

      B.    AN ORDER DIRECTING DEFENDANTS TO SUBMIT A PLAN TO
            FURNISH SUICIDE-RESISTANT BEDS TO PRISONERS IN MHCB
            UNITS IS PART OF THE REMEDY FOR THE EIGHTH
            AMENDMENT VIOLATIONS THAT HAVE *ALREADY* BEEN
            FOUND AND ARE *ONGOING* ................................................................ 9

      C.    AN ORDER DIRECTING DEFENDANTS TO SUBMIT A PLAN TO
            FURNISH SUICIDE-RESISTANT BEDS TO PRISONERS IN MHCB
            UNITS IS CONSISTENT WITH PLRA REQUIREMENTS ............................... 14

      D.    THE SPECIAL MASTER'S RECOMMENDATION HAS NO
            BEARING ON THE CONSTITUTIONALITY OF TITLE 22 AND IS,
            IN ANY EVENT, ENTIRELY CONSISTENT WITH TITLE 22 ........................ 16

V.    CONCLUSION .................................................................................................... 17

i

[443870-1]

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

*Anderson v. Cty. of Kern*,
   45 F.3d 1310 (9th Cir. 1995) ................................................... 13

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ................................................... 15

*Bull v. City & Cty. of San Francisco*,
   595 F.3d 964 (9th Cir. 2010) ................................................... 14

*Coleman v. Schwarzenegger*,
   No. S-90-0520, 2007 U.S. Dist. LEXIS 56043 (E.D. Cal. July 23, 2007) ............................ 10

*Coleman v. Schwarzenegger*,
   No. S-90-0520, 2009 U.S. Dist. LEXIS 67943 (E.D. Cal. Aug. 4, 2009) ........................ 10, 11

*Coleman v. Wilson*,
   912 F. Supp. 1282 (E.D. Cal. 1995) ........................................... 10

*Knerr v. Richards*,
   No. C08-5021, 2009 U.S. Dist. LEXIS 116405 (W.D. Wash. Nov. 16, 2009) ...................... 14

*McMahon v. Beard*,
   583 F.2d 172 (5th Cir. 1978) ................................................... 13

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................... 15

*Stewart v. Gates*,
   450 F. Supp. 583 (C.D. Cal. 1978) ............................................ 14

*Thomas v. Baca*,
   514 F. Supp. 2d 1201 (C.D. Cal. 2007) ........................................ 14

*Thompson v. City of Los Angeles*,
   885 F.2d 1439 (9th Cir. 1989) ................................................. 14

*Williams v. Delo*,
   49 F.3d 442 (8th Cir. 1995) ................................................... 13

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[443870-1]

1

## **Statutes**

2

Prison Litigation Reform Act,

3
    18 U.S.C. § 3626(a)(1)(A) ..................................................................................... *passim*

## **Rules**

4

5
Fed. R. Civ. P. 53(f)(1) ............................................................................................ 4

6
Fed. R. Civ. P. 53(f)(3)-(4) ....................................................................................... 4

7

## **Regulations**

8

Cal. Code Reg. tit 22, § 79829(a) ............................................................................ 17

9

Cal. Code Regs. tit 22, § 79829(a) ........................................................................... 16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[443870-1]

# TABLE OF ABBREVIATIONS/ACRONYMS

| | |
|---|---|
| ASH or Atascadero | Atascadero State Hospital |
| C5/C6 | Salinas Valley Psychiatric Program Intermediate Care Units located inside prison housing C5 and C6 |
| CCWF | Central California Women's Facility |
| CDC | California Department of Corrections |
| CDCR | California Department of Corrections and Rehabilitation |
| CIM | California Institute for Men |
| CIW | California Institute for Women |
| CMC | California Men's Colony |
| CMF | California Medical Facility |
| COR or Corcoran | California State Prison/Corcoran |
| CPT | Coleman Project Team |
| CTC | Correctional Treatment Center |
| DECS | Disability and Effective Communication System |
| EOP | Enhanced Outpatient Program |
| DMH | Department of Mental Health |
| DPO | CDCR classification for a prisoner who is an intermittent wheelchair user because of a permanent disability |
| DPW | CDCR classification for a prisoner who is prescribed a wheelchair at all times because of a permanent disability |
| FAQ | Frequently Asked Questions |
| GACH | General Acute Care Hospital |
| HDSP or High Desert | High Desert State Prison |
| ICF | Intermediate Care Facility |
| ITT | Interdisciplinary Treatment Team |

[443870-1]

| | |
|---|---|
| KVSP or Kern Valley | Kern Valley State Prison |
| LAC or Lancaster | California State Prison/Los Angeles County |
| MCSP or Mule Creek | Mule Creek State Prison |
| MHCB | Mental Health Crisis Bed |
| MHTS | Mental Health Tracking System |
| MHOHU | Mental Health Outpatient Housing Unit |
| NKSP or North Kern | North Kern State Prison |
| OHU | Outpatient Housing Unit |
| PBSP or Pelican Bay | Pelican Bay State Prison |
| PLRA | Prison Litigation Reform Act |
| PVSP or Pleasant Valley | Pleasant Valley State Prison |
| RJD or R.J. Donovan | Richard J. Donovan Correctional Facility |
| SAC or CSP-Sacramento | California State Prison/Sacramento |
| CSATF | California Substance Abuse Treatment Facility |
| SOL or Solano | California State Prison/Solano |
| SQ or San Quentin | California State Prison/San Quentin |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP or Salinas Valley | Salinas Valley State Prison |
| WSP or Wasco | Wasco State Prison |

[443870-1]

# I.    INTRODUCTION

Defendants' current practice in all licensed Mental Health Crisis Bed (MHCB) units in California prisons (except two) is to deny beds to all mental health patients admitted to an MHCB unit.  The mental health patients are required to sleep on the floor, or with only a thin mattress pad laid directly on the floor.  It is also common in these units to deprive mental health patients of their clothing and shoes.  At the urging of the Special Master, suicidal patients are supposed to be provided with a "suicide smock" to cover their nakedness.  It has also become routine in these MHCB units to assume that all mental health patients, but not medical patients, are high security/high risk, no matter what their actual security classification or housing may be.  As a result, they are handcuffed each time they are removed from their room and are seen by clinicians only after being locked in small cages.

These conditions in licensed MHCBs, the highest level of crisis mental health care provided by California Department of Corrections and Rehabilitation (CDCR) in its prisons, are counter-therapeutic, harsh and cruel.  Patients in need of treatment for mental health crisis are unnecessarily and unjustifiably punished by these inhumane conditions, which are more likely to worsen depression than to alleviate their mental health crisis situation.  The risk that patients will avoid mental health care in order to avoid these conditions is manifest and is likely to contribute to the high rate of suicide.

Two of the newer MHCBs, located at San Quentin State Prison (hereinafter, "San Quentin") and California Medical Facility (hereinafter, "CMF"), have a different practice.  In these MHCBs, Defendants have installed suicide-resistant beds, and mental health patients are not forced to sleep on the floor.  The Special Master has recommended that Defendants develop a plan to install the same suicide-resistant beds at all remaining MHCBs.  Defendants object to this recommendation, ignoring the fundamental inhumanity and counter-therapeutic impact of their existing practice and resisting, in order to save a few dollars, a modest step that if implemented, will help save human lives.  Defendants provide no legal or factual basis for their objection.  The Special Master's recommendation is fully supported by his findings, reached after extensive input from his experts and the parties.  The Special Master has found that the "need for suicide-

1

[443870-1]

1  resistant beds in MHCB units is *critical*" to addressing the high suicide rate and that the current

2  CDCR practice in all but two MHCB units is "*objectionable* and *must be stopped*."  Report on

3  Defendants' Review of Suicide Prevention Policies, Practices, and Procedures at 37 (hereinafter,

4  the "Special Master's Report"), Docket No. 3918, Sept. 27, 2010 (emphasis added).

5          Defendants' objection should be rejected, and the Special Master's fourth

6  recommendation should become an order of this Court.

7  **II.     PROCEDURAL BACKGROUND**

8          On September 17, 2009, the Special Master filed the Report on Suicides Completed in the

9  California Department of Corrections and Rehabilitation in Calendar Year 2007 (hereinafter, "the

10  2007 Suicide Report").  Docket No. 3677, Sept. 17, 2009.  This was the ninth annual Suicide

11  Report submitted to the Court in the course of the *Coleman* litigation.  On December 24, 2009,

12  the Special Master filed his Report and Recommendations on the 2007 Suicide Report.  In that

13  submission, the Special Master recommended that the Court issue a series of orders, each based

14  on specific findings that include:  (1) the CDCR suicide rate in 2007 continued "CDCR's pattern

15  of exceeding the national prison suicide rate"; (2) the 2007 CDCR suicide rate had worsened – it

16  was higher than the CDCR average annual suicide rate for the preceding nine years; (3) in 82

17  percent of the suicide cases in 2007, there was at least some degree of inadequacy in assessment,

18  treatment, or intervention, for the highest rate of inadequacy in these areas in the past several

19  years; (4) in 79 percent of suicide cases, deadlines in completion and submission of required

20  documentation of suicides were missed, and some reporting was not completed at all by the time

21  the Suicide Report was filed; and (5) although three suicides of CDCR prisoners occurred within

22  the Department of Mental Health (DMH), DMH refused to provide the Special Master with

23  complete documentation of its quality improvement plans.  2007 Suicide Report, at 1-2.

24          Defendants filed objections to the Special Master's December 24, 2009 recommendations,

25  and on April 14, 2010, this Court, by written order, declined to adopt those recommendations.

26  Order, Docket No. 3836.  In discussing the Special Master's recommendations, this Court noted

27  that "most of the issues for which orders are presently requested by the special master have been

28  the subject of repeated recommendations by the special master, and some are already the subject

2

of existing orders, yet both the suicide rate and the percentage of suicides with some degree of inadequacy in assessment, treatment or intervention are rising." *Id.* at 7.  The Court characterized these trends as "*deeply troubling*."  *Id.* at 6 (emphasis added).  The Court determined that, before it entered "any further orders directed at the problems of inmate suicides," Defendants would be "directed to work with the special master to review their suicide prevention and review policies, as well as any other relevant policies and practices, and the implementation of policies at all institutions, and to identify any modifications to such policies and practices or implementation thereof that may be necessary to address the problem of inmate suicides." *Id.* at 7.  The Special Master was then to report to the Court on the foregoing review. The Court stated clearly the purpose of this review process and of the Special Master's report:

> The fundamental task at hand is for defendants to take *all steps necessary* to reduce both the inmate suicide rate and the inadequacies in assessment, treatment and intervention found in an unacceptably high percentage of completed suicides.

*Id*. at 6-7 (emphasis added).

Over the next several months, the Special Master – with the assistance of his own work group[1] – oversaw Defendants' court-mandated review of its suicide prevention policies and practices.  Defendants' report was shared with Plaintiffs' counsel, and was discussed at a meeting with Plaintiffs' counsel, numerous CDCR clinicians and officials, and the Special Master and his team of experts.  At the request of the Special Master, Plaintiffs later submitted a letter summarizing their position on Defendants' report and suggesting additional measures to reduce the number of suicides among CDCR inmates.  Defendants provided a written reply to Plaintiffs' letter.  On September 27, 2010, the Special Master issued his Report on Defendants' Review of Suicide Prevention Policies, Practices, and Procedures.[2]

The Special Master's Report provided five recommendations meant to address the high

---

[1] The Special Master's work group included: deputy Linda Buffardi, Esq.; experts Raymond Patterson, M.D., Jeffrey Metzner, M.D., and Kerry Hughes, M.D.; and monitor Haunani Henry.

[2] The Special Master noted that "[a]s of this writing, there have been 26 suicides in CDCR in 2010, and it is only September."  Special Master's Report at 32.

1   rate of inmate suicides and the inadequacies in assessment, treatment and intervention that are

2   seen in many completed suicides.  On November 4, 2010, Defendants filed their objection to the

3   Special Master's Report ("Defs.' Objection").  Docket No. 3950.  Defendants object to the

4   Special Master's fourth recommendation, which is:  "That within the next 60 days, defendants

5   submit a plan to furnish suicide-resistant beds in their MHCBs for any at-risk inmates who would

6   otherwise not be provided with a bed while in an MHCB unit."  Special Master's Report at 38.

7   Defendants asserted no objections to the other four Special Master recommendations.  By written

8   order dated November 17, 2010, the Court adopted the Special Master's first, second, third, and

9   fifth recommendations in full.  Docket No. 3954.

10        Plaintiffs hereby respond to Defendants' objection and request that the Court (1) find that

11  the relief contained in the Special Master's fourth recommendation is "narrowly drawn, extends

12  no further than necessary to correct the violation of the Federal right, and is the least intrusive

13  means necessary to correct the violation of the Federal right," 18 U.S.C. § 3626(a)(1)(A); and

14  (2) adopt in full the Special Master's fourth recommendation as an order of the Court.

15  **III.    STANDARD OF REVIEW**

16        The district court decides *de novo* all objections to findings of fact and to conclusions of

17  law made or recommended by the Special Master.  Fed. R. Civ. P. 53(f)(3)-(4).  Where

18  appropriate, the Court may receive additional evidence bearing on the Special Master's

19  recommendations.  Fed. R. Civ. P. 53(f)(1).

20  **IV.    ARGUMENT**

21        The Special Master's fourth recommendation, which would require Defendants to submit

22  within 60 days a plan to furnish suicide-resistant beds in their MHCBs for any at-risk inmates

23  that would otherwise not be provided with a bed while in an MHCB unit, is based on the careful

24  review process conducted over several months, the advice of the Special Master's team of

25  experts, the extensive input of the parties, and the Special Master's substantial experience in this

26  litigation.  The recommendation is supported by the Special Master's findings as to the specific

27  harms caused by the practice of denying beds to prisoners placed in an MHCB unit.  Those

28  findings are themselves well supported by the record, and in fact *understate* the problem and the

4

[443870-1]

1    grave harm to prisoners in MHCB units resulting from Defendants' current practice.

2        The Special Master's recommendation is also consistent with the statutory requirements

3    for ordering prospective relief, as provided in the Prison Litigation Reform Act (PLRA), 18

4    U.S.C. § 3626(a)(1)(A). The recommendation is directly and narrowly drawn to provide a

5    necessary remedy to some of the most vulnerable members of the *Coleman* class – those in

6    mental health crisis and at-risk for suicide. The recommendation also constitutes the least

7    restrictive means of addressing the harsh and unnecessary practice of denying beds to mentally ill

8    prisoners placed in MHCB units, and is consistent with applicable state law.

9        Defendants' objection is entirely without merit. The Special Master's fourth

10   recommendation is necessary to address the "deeply troubling" rate of suicides in CDCR prisons,

11   and is consistent with the PLRA. It should be adopted in full as an order of this Court.[3]

12       **A.    THE SPECIAL MASTER'S RECOMMENDATION AS TO SUICIDE-
              RESISTANT BEDS IS WELL SUPPORTED BY THE RECORD**

13

14       The Special Master's recommendation to require Defendants to submit a plan to furnish

15   suicide-resistant beds in all MHCB units is based on an extensive review of relevant conditions

16   and a transparent, collaborative process with his own experts and the parties. The evidence in the

17   record fully supports the Special Master's recommendation. The Special Master correctly notes

18   that suicide-resistant beds have already been furnished in all cells in the MHCB units at San

19   Quentin and CMF. *See* Declaration of Jane E. Kahn in Support of Special Master's

20   Recommendation that Defendants Submit a Plan to Furnish Suicide-Resistant Beds in Their

21   Mental Health Crisis Bed Units to Reduce High Rate of Suicide ("Kahn Decl.") ¶ 3. He further

22   identifies "reports that in the absence of suicide-resistant beds in some [other] MHCB units,

23

24   [3] As the Special Master recommends, Defends should be directed to submit a plan to ensure that
     *all* prisoners within MHCB units be provided a bed, and that all suicidal prisoners within MHCB

25   units be provided a suicide-resistant bed. Given the constantly changing prisoner population in
     an MHCB unit, it is likely that the only means of ensuring that each prisoner in an MHCB unit

26   receives an appropriate bed is to install suicide-resistant beds in *all* MHCB cells. Defendants
     appear to recognize this fact, having furnished all MHCB cells at San Quentin and CMF with a

27   suicide-resistant bed. Defendants may, with the assistance and supervision of the Special Master,

28   develop an alternative plan to provide an appropriate bed for *all* MHCB patients *at all times*.

[443870-1]

suicidal patients are not provided with any beds at all." Special Master's Report at 32-33.

The Special Master's fourth recommendation is also well supported by the advice of his own team of experts, including that:

> (1) "the failure to provide suicide-resistant beds, and the practice of requiring suicidal MHCB patients to sleep on the floor, creates a needlessly harsh environment that does not serve therapeutic purposes";

> (2) "this practice, along with other punitive-type practices, may even contribute to an inmate's decision to not report thoughts of self-harm to staff"; and

> (3) "the default practice in an MHCB unit should be to provide a suicide-resistant bed unless clinically contraindicated."

Special Master's Report at 33 (emphasis added).

These findings are not challenged by Defendants, and are well established in the record. The Special Master's findings in fact *understate* the horrible, punitive conditions faced by *Coleman* class members placed in MHCB units that do not provide appropriate beds to mentally ill prisoners. Currently, *all* MHCB patients not placed at San Quentin or CMF are denied beds, without regard to their security/risk classification or individual mental health status and needs. *See* Kahn Decl. ¶¶ 2-3; Declaration of Michael L. Freedman in Support of Special Master's Recommendation that Defendants Submit a Plan to Furnish Suicide-Resistant Beds in Their Mental Health Crisis Bed Units to Reduce High Rate of Suicide ("Freedman Decl.") ¶¶ 5, 8-10; Declaration of Blake Thompson in Support of Special Master's Recommendation that Defendants Submit a Plan to Furnish Suicide-Resistant Beds in Their Mental Health Crisis Bed Units to Reduce High Rate of Suicide ("Thompson Decl.") ¶¶ 4-5. In some MHCB units, patients are not even provided with mattresses, blankets or suicide smocks/gowns.[4] *See* Kahn Decl. ¶¶ 2, 4-6; Thompson Decl. ¶ 5; Twentieth Monitoring Report of the Special Master on the

---

[4] The denial of appropriate bedding, blankets, and clothing to MHCB patients stands in marked contrast to treatment of patients in the medical wings of the Correctional Treatment Centers and General Acute Care Hospitals where MHCB units are also located. Medical patients are provided with hospital beds, clothing, and substantially more humane cell conditions. *See* Kahn Decl. ¶ 2; Freedman Decl. ¶¶ 9-11; Thompson Decl. ¶ 5.

1    Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols ("20th

2    Report"), Sept. 12, 2008, Docket No. 3029, at 133 (staff reported continued problems obtaining

3    mattresses and blankets, as well as issues related to worn-out patient gowns); *id.* at 255 ("Staff

4    also reported a recurring shortage of safety mattresses and suicide smocks.  As a result, inmates

5    were sometimes placed on suicide watch with nothing more than boxer shorts."); Twenty-First

6    Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally

7    Approved Plans, Policies and Protocols ("21st Report"), July 31, 2009, Docket No. 3638, at 159

8    (problems with clean mattresses and blankets addressed, but issues with worn-out gowns

9    persisted); *id.* at 289 (periodic lack of mattresses available to MHCB inmates was a recurring

10    problem).

11        During the three-judge overcrowding trial, Plaintiffs' mental health experts toured crisis

12    units where they observed and interviewed patients on suicide observation.  Kahn Decl. ¶¶ 5-6.

13    At Wasco State Prison, Plaintiffs' expert Dr. Craig Haney observed a wheelchair user, who had

14    been housed in the MHCB unit for three months, living on the floor in a barren cell in conditions

15    that the patient described as "physically very painful, as well as degrading." *Id.* ¶ 5.  During a

16    recent November 2010 monitoring tour of the same MHCB unit at Wasco State Prison,

17    Plaintiffs' counsel observed nine (9) MHCB cells.  Thompson Decl. ¶ 4.  In five (5) of the nine

18    MHCB cells, the prisoner was standing up with no bed or mattress to lie down on. *Id.* ¶ 5.  In the

19    other four (4) MHCB cells, the prisoner had only a blanket and a thin pad to lie down on.  *Id.*

20        During a tour of Mule Creek State Prison, Dr. Pablo Stewart observed patients on suicide

21    observation who were housed in cells "wearing nothing but suicide smocks, and had no mattress

22    or blanket." Kahn Decl. ¶ 6.  Dr. Stewart echoed the Special Master's concerns, noting that the

23    conditions in the MHCB units were "likely to exacerbate many patients' clinical conditions and

24    will ultimately dissuade people from communicating candidly with their doctors about their

25    mental health conditions." *Id.*  Equally concerning is Dr. Stewart's observation that, "[i]t is my

26    experience that word travels quickly among inmates about deplorable conditions they experience.

27    This results in prisoners not reporting the extent of their suicidality." *Id.*

28        Plaintiffs' counsel's communications with *Coleman* class members through interviews,

7

[443870-1]

1  phone calls, and letter correspondence further demonstrates the critical need for Defendants to

2  create and implement a plan to provide appropriate beds to *all* MHCB patients.  Class members

3  have described to counsel that they are reluctant to report their suicidal thoughts to staff because

4  they fear it will result in an MHCB placement.  Kahn Decl. ¶ 7.  Prisoners describe harsh and

5  punitive MHCB conditions that include sleeping on hard floors with only a thin mattress or no

6  mattress, naked or in a suicide smock, and cuffed and caged at all times.  *Id.*  They describe how

7  their treatment in these MHCB units increases their depression and sense of hopelessness, and is

8  humiliating, stressful, and causes extreme mental anguish.  *Id.*  Some clients have asked counsel

9  not to contact CDCR Mental Health staff for fear that it will result in an MHCB placement,

10  despite the fact that the client expresses a suicide plan or suicidal thoughts.  *Id.*  Other prisoners

11  have stated that they tell MHCB staff they are "better," not because they truly are, but so they

12  will be discharged from the MHCB unit rather than have to withstand its harsh conditions.  *Id.*

13       Defendants' argument that forcing mentally ill MHCB patients to sleep on the floor does

14  not implicate Eighth Amendment violations because stays in the MHCB units are ten days or

15  less, as "the Program Guide contemplates," is simply wrong as a factual matter.  Defs.' Objection

16  at 5.  The actual data on MHCB lengths of stay, as provided by the Special Master and by

17  Defendants in their monthly data, clearly shows that the Program Guide standard for MHCB

18  length of stay (ten days or less) is nothing more than "aspirational," as are many of the Program

19  Guide timeframes, due to system-wide bed shortages.  *Compare, e.g.*, Program Guide, 12-1-16

20  (transfer requirement for patient accepted to an ICF program, such as Salinas Valley Psychiatric

21  Program (SVPP) is 30 days from referral, if accepted) *with* Plaintiffs' Emergency Motion for an

22  Evidentiary Hearing Regarding C5/C6 Project at SVSP, Docket No. 3907, at 9 (actual data

23  shows that patients accepted to SVPP wait *months* for transfer to the program).  In his most

24  recent monitoring report, the Special Master documented extended MHCB stays – many

25  exceeding twenty (20) days – in more than half of the MHCBs.  Kahn Decl. ¶ 8.  In Defendants'

26  own monthly data on MHCB admissions and lengths of stay, at least 255 MHCB patients had

27  stays exceeding ten (10) days in the month of September 2010, with extended stays lasting for

28  months in some cases.  *Id.* ¶ 9.  This data underscores the seriousness of the deprivation of an

appropriate bed for MHCB patients, who are instead forced to sleep on the floor for extended periods of time.[5]

The Special Master also states that "it is [his] understanding that CDCR's decision thus far to not provide suicide-resistant beds is based solely on cost, which I also understand is not prohibitively expensive." Special Master's Report at 33. In their objection, Defendants do not even attempt to argue that the furnishing of suicide-resistant beds in MHCB units would be prohibitively costly. The Special Master's assessment of the prospective financial burden is clearly correct. The suicide-resistant beds to be furnished in MHCB cells cost approximately $1,500 each. Kahn Decl. ¶ 11. Defendants have a total of 306 MHCB cells in prisons other than San Quentin and CMF that do not have beds. *Id.* As compared to other CDCR expenditures, the financial burden of this life-saving recommendation is not burdensome. Defendants' furnishing of 67 suicide-resistant beds in all MHCB cells at two state prisons confirms this fact.

In light of the Special Master's well supported findings, the Special Master concludes that the failure to provide suicide-resistant beds to MHCB patients is "serious and deserving of prompt attention." Special Master's Report at 33. The Special Master's fourth recommendation is a necessary and appropriate step to remedy the critical problem of CDCR prisoners' high suicide rate, and the related inadequacies of assessment, treatment, and intervention that have been identified by this Court.

**B. AN ORDER DIRECTING DEFENDANTS TO SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS TO PRISONERS IN MHCB UNITS IS PART OF THE REMEDY FOR THE EIGHTH AMENDMENT VIOLATIONS THAT HAVE *ALREADY* BEEN FOUND AND ARE *ONGOING***

In their objection, Defendants incorrectly argue that the Special Master's recommendation

---

[5] The denial of appropriate beds to MHCB patients is in fact one among many harsh, cruel, and unwarranted CDCR practices harming *Coleman* class members in MHCB units. For example, the Special Master has extensively documented the practice of handcuffing all MHCB patients, regardless of their previous housing location, and providing treatment to MHCB patients only in holding cells or cages. Kahn Decl. ¶¶ 12-13. The Special Master found that, at CSP-Sacramento, the cuffing and caging of MHCB patients were driven in part "by local custody requirements and staff opinion that inmates should not be motivated to remain in the [Correctional Treatment Center]." *Id.* ¶ 12.

9

1   as to the provision of suicide-resistant beds should be rejected because, they contend, forcing

2   MHCB patients to sleep on the floor does not violate the Eighth Amendment, and the Court may

3   not order a remedy without grounding it in a constitutional violation.  However, this Court has

4   *already* found that Defendants have violated the Eighth Amendment.  At this stage of this

5   decades-long litigation, there is no need for this Court, much less the Special Master, to make

6   specific findings of Eighth Amendment violations in order to direct the parties to implement

7   necessary and appropriate remedies for established violations.

8          This Court has already found that Defendants have violated the Eighth Amendment rights

9   of *Coleman* class members by denying adequate mental health care.  *Coleman v. Wilson*, 912 F.

10   Supp. 1282 (E.D. Cal. 1995).  The Court has ordered that an appropriate remedy for the

11   constitutional violations should "redress its derivative effects," including inadequate suicide

12   prevention policies and practices.  *Id.* at 1315.  The fifteen years since the finding of Eighth

13   Amendment violations "have involved continual efforts to remedy [those] constitutional

14   violations."  *Coleman v. Schwarzenegger*, No. S-90-0520, 2009 U.S. Dist. LEXIS 67943, at *69

15   (E.D. Cal. Aug. 4, 2009).  It is beyond dispute that the Eighth Amendment rights of *Coleman*

16   class members continue to be violated.  *See Coleman v. Schwarzenegger*, No. S-90-0520, 2007

17   U.S. Dist. LEXIS 56043, at *12 (E.D. Cal. July 23, 2007) ("[D]efendants' mental health care

18   delivery system has not come into compliance with the Eighth Amendment at any point since

19   this action began."); *Coleman*, 2009 U.S. Dist. LEXIS 67943, at *70 (stating that Defendants

20   "remain[] unable to deliver constitutionally adequate mental health care" to mentally ill

21   prisoners).

22          For the past fifteen years, the duties of the Special Master have included working with

23   Defendants to develop a remedial plan to address the constitutional violations that have been

24   identified by this Court, *not* to identify new constitutional violations.  *See, e.g.*, *Coleman*, 2007

25   U.S. Dist. LEXIS 56043, at *10 (noting the "directive to defendants to work with the Special

26   Master and his staff to develop and implement remedial plans for the delivery of constitutionally

27   adequate mental health care to class members"); *Coleman*, 912 F. Supp. at 1324, n.63 ("The

28   special master's responsibility will be twofold: to provide expert advice to the defendants to aid

10

[443870-1]

1  in ensuring that their decisions regarding the provision of mental health care to class members

2  conform to the requirements of the federal constitution, and to advise the court concerning issues

3  relevant to assessing defendants' compliance with their Constitutional obligations."); Order of

4  Reference at 2, Dec. 11, 1995 (noting that, among the "principal responsibilities" of the Special

5  Master is to "advise the court regarding assessment of defendants' compliance with their

6  constitutional obligations," with "due regard" for the "constitutional deficiencies identified by

7  the court").  This Court has issued more than seventy orders aimed at providing an appropriate

8  remedy to the constitutional violations that it has identified.  *Coleman*, 2009 U.S. Dist. LEXIS

9  67943, at *81.  As part of this remedial process, the Special Master has completed nine detailed

10  reports on suicides completed by prisoners in CDCR institutions, and the Court has issued

11  several orders concerning suicide prevention efforts.  *See, e.g.*, Oct. 6, 2008 Order, Docket No.

12  3072, at 2 (adopting Special Master's recommendations contained in the Twentieth Monitoring

13  Report, including ordering Defendants to implement tracking logs to document level of suicide

14  risk for all MHCB patients and directing specific treatment protocols for suicidal MHCB

15  patients); June 7, 2006 Order, Docket No. 1830, at 2-3 (adopting Special Master's

16  recommendations contained in the report on inmate suicides completed in CDC institutions in

17  Calendar Year 2004, including ordering Defendants to develop a plan to address the high suicide

18  rate in administrative segregation through increased mental health resources, staff, services

19  and/or confidential interview space); June 9, 2005 Order, Docket No. 1668, at 1-2 (adopting

20  Special Master's recommendations contained in the report on inmate suicides completed in CDC

21  institutions in Calendar Year 2003, including ordering Defendants to submit a plan to address

22  hazard of large-mesh ventilation screens in cells in which mentally ill inmates are housed and

23  ordering all trained custody staff to provide immediate life support measures when needed);

24  Jan. 12, 2004 Order at, Docket No. 1559, at 2-3 (overruling Defendants' objections and adopting

25  all five of Special Master's recommendations pertaining to suicide prevention and review

26  contained in the report on inmate suicides completed in CDC institutions in Calendar Year

27  2002); July 25, 2003 Order, Docket No. 1536, at 7 (requiring that Defendants forthwith

28  implement the recommendations of the Special Master's experts contained in the report on

11

[443870-1]

1   inmate suicides completed in CDC institutions in Calendar Year 2001); Oct. 1, 2001 Order,

2   Docket No. 1306, at 2 (adopting Special Master's recommendations arising out of Sixth

3   Monitoring Report, and ordering implementation of Suicide Reporting and Review Policy,

4   including implementation of appropriate mechanisms for internal discipline of CDC staff whose

5   unethical, negligent, and/or criminal misconduct causes or contributes to an inmate suicide).

6   None of the prior orders have been appealed and they are final.

7           It is undisputed that there are established and ongoing violations of *Coleman* class

8   members' constitutional rights based on Defendants' failure to provide adequate mental health

9   care.  As part of the remedial process, and in light of the continuing and "deeply troubling"

10  problems related to suicides in CDCR institutions and inadequate suicide prevention measures,

11  the Court directed Defendants to "work with the special master to review all suicide prevention

12  and review policies, as well as any other relevant policies and practices, and the implementation

13  of such policies at all institutions, and to identify any modifications to such policies and practices

14  or implementation thereof that may be necessary to address the problem of inmate suicides."

15  Order, Docket No. 3836, at 7.  That order was not appealed and is final.  The Special Master has

16  submitted his report and recommendations, which have been developed after a thorough review

17  process.  *See* Special Master's Report at 6-11.  The Special Master has stated that the

18  recommendation for Defendants to submit a plan to provide suicide-resistant beds to suicidal

19  inmates within MHCB units is a "critical" step to address the high prisoner suicide rate.  *Id.* at

20  37.  The instant recommendation is a necessary, though modest, step towards providing a remedy

21  for the serious and ongoing violations identified by this Court.[6]

22

23  [6] Defendants wrongly assert that "nothing" in the Special Master's Report "indicate[s] that

24  inmate-patients have suffered actual harm or injury as a result of the practice of not using suicide
    resistant beds in all MHCB units."  Defs.' Objection at 6.  Defendants ignore the factual basis on

25  which the Special Master has relied in formulating his recommendation, including his assessment
    that the denial of appropriate beds to mentally ill prisoners creates a "needlessly harsh

26  environment," fails to serve therapeutic purposes, and may cause prisoners to refrain from

27  reporting serious mental problems, including thoughts of self-harm.  *See* Part IV.A, *supra*.
    Additional evidence provided herein by Plaintiffs further demonstrates the real and continuing

28  harm suffered by *Coleman* class members.  *Id.*

12

[443870-1]

1    The cases cited by Defendants have no application to the instant circumstances. Each

2    cited case addresses the determination of *whether* such a violation has occurred, *not* the crafting

3    of an appropriate remedial measure for an *already identified* and *ongoing* violation of the Eighth

4    Amendment.  *See McMahon v. Beard*, 583 F.2d 172 (5th Cir. 1978) (finding that a single

5    prisoner did not establish an Eighth Amendment violation where he had been placed in a "strip

6    cell" after he attempted suicide, where there was no evidence that the prisoner carried a mental

7    health diagnosis, or that a suicide-resistant bed had been requested or was available); *Williams v.*

8    *Delo*, 49 F.3d 442 (8th Cir. 1995) (holding that qualified immunity applied and no constitutional

9    violation occurred where a violent inmate with no identified mental disability challenged the

10   prison's denial of bedding and clothes in temporary administrative segregation for a period of

11   four days).  The Ninth Circuit's decision in *Anderson v. Cty. of Kern*, 45 F.3d 1310 (9th Cir.

12   1995), also does not support Defendants' argument, and in fact is consistent with the Special

13   Master's recommendation and Plaintiffs' position.  In *Anderson*, the court found that a prison's

14   denial of certain articles – including sinks, stand-up toilets, and beds – to prisoners "*for short*

15   *periods of time during violent episodes*" may be constitutionally justifiable under certain

16   circumstances.  *Id*. at 1314 (emphasis added); *see also id.* (relying on evidence that a prisoner's

17   placement in a safety cell required a clinical assessment and that such placement was to be

18   reviewed every four hours).  Defendants somehow suggest, in a case where widespread

19   constitutional violations have *already been established* and *are ongoing*, that these cases

20   legitimate a policy of denying beds to prisoners with serious mental health needs for periods of

21   up to ten days or more without any clinical assessment or determination as to the prisoners'

22   mental status, disability, or actual risk of committing violence or suicide.  Defendants' argument

23   should be rejected.

24        In reality, the vast weight of the case law supports the Special Master's recommendation

25   to direct Defendants to submit a plan to furnish suicide-resistant beds to prisoners placed in

26   MHCB units.  The widespread denial of beds to prisoners in an MHCB unit clearly constitutes a

27   substantial element of the *ongoing* violation of mentally ill CDCR prisoners' Eighth Amendment

28   right to be free of cruel and unusual punishment.  *See Thompson v. City of Los Angeles*, 885 F.2d

13

[443870-1]

1439, 1448 (9th Cir. 1989) (finding that plaintiff's "uncontroverted allegation that he was provided with neither a bed nor even a mattress unquestionably constitutes" a constitutional claim), overruled on other grounds by *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010); *Thomas v. Baca*, 514 F. Supp. 2d 1201, 1216 (C.D. Cal. 2007) (finding that "requiring inmates to sleep on the floor deprives them of a minimum measure of civilized treatment and access to life's necessities" and recognizing that "sleeping in a bed identifies our common humanity"); *Stewart v. Gates*, 450 F. Supp. 583, 588 (C.D. Cal. 1978) (finding that "basic concepts of decency, as well as reasonable respect for constitutional rights, require that [prisoners] be provided a bed"); *accord Knerr v. Richards*, No. C08-5021, 2009 U.S. Dist. LEXIS 116405, at *32 (W.D. Wash. Nov. 10, 2009) (noting that the "failure to provide inmates with beds or mattresses is actionable under the Eighth Amendment") (citing *Thompson*).

At this stage, the Court must consider appropriate remedies for the already established constitutional violations that continue to harm mentally ill prisoners in CDCR institutions. The Special Master's recommendation to require Defendants to submit a plan to furnish appropriate beds to prisoners placed in MHCB units is responsive to this Court's April 14, 2010 Order, and is appropriate within the ongoing remedial process of this litigation.

## C.   AN ORDER DIRECTING DEFENDANTS TO SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS TO PRISONERS IN MHCB UNITS IS CONSISTENT WITH PLRA REQUIREMENTS

The PLRA requires that any prospective relief with respect to prison conditions be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). An order adopting the Special Master's recommendation that Defendants be required to submit a plan within the next 60 days for furnishing suicide-resistant beds to prisoners in all MHCB units would fully comply with this statutory mandate. Defendants have offered no basis for a finding that adoption of the Special Master's recommendation in full would violate the PLRA. They claim only, without any legal or factual support, that the proposed remedy is improper because it is "not the least intrusive means of correcting the alleged violation." Defs.' Objection at 6. Notably, Defendants do not state any disagreement with a

14

[443870-1]

1  finding that an order adopting the recommendations would be "narrowly drawn" and "extend[]

2  no further than necessary to correct the violation."

3       The Special Master's recommendation as to the provision of suicide-resistant beds to

4  suicidal prisoners in MHCB units is narrowly drawn, extends no further than necessary, and

5  constitutes the least intrusive means of remedying the constitutional violations that continue to

6  cause grave harm to mentally ill prisoners.  First, the Special Master's recommendation is

7  narrowly drawn and necessary to remedy the harm that this Court has found "deeply troubling."

8  Order, Docket No. 3836, at 6.  The Court has set forth as a "fundamental task" that Defendants

9  take the "necessary steps" to reduce the inmate suicide rate and related inadequacies in

10 assessment, treatment and intervention.  The provision of appropriate beds to all prisoners in

11 MHCB units is directly and narrowly aimed at the specific harms to mentally ill prisoners,

12 including those who are most at-risk for suicide.  As the Special Master has found, and the

13 factual record confirms, the failure to provide suicide-resistant beds, and the practice of requiring

14 MHCB patients to sleep on the floor, creates a "needlessly harsh environment" that is counter-

15 therapeutic.  *See* Special Master's Report at 33.  The current practice punishes patients in need of

16 treatment for mental health crisis with inhumane conditions, and likely worsens depression and

17 mental health problems.  *See id*; Kahn Decl. ¶¶ 5-7.  The practice also increases the risk that

18 patients will choose not to report mental health needs, including thoughts of self-harm, further

19 contributing to the high rate of suicide.  *See* Special Master's Report at 33; Kahn Decl. ¶¶ 6-7.

20      Second, the Special Master's recommendation is the least intrusive means of remedying

21 the constitutional violations that continue to contribute to the high prisoner suicide rate and

22 related inadequacies in assessment, treatment and intervention.  Defendants' objection provides

23 *no* legal or factual basis for a finding that the recommendation is not the least intrusive remedy

24 available, or that it is in any way "overly 'intrusive and unworkable.'"  *Armstrong v. Davis*, 275

25 F.3d 849, 872 (9th Cir. 2001) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)).  In fact,

26 the record suggests that the barriers to the submission and implementation of a plan to provide

27 appropriate beds to prisoners in MHCB units would be minimal.  The Special Master found that

28 CDCR's decision "to not provide suicide-resistant beds is based solely on cost, which I also

15

[443870-1]

1   understand is not prohibitively expense." The Special Master's understanding is correct. *See*

2   Kahn Decl. ¶ 11 (cost of suicide-resistant bed is approximately $1,500). What is more, CDCR

3   has *already* purchased and furnished suicide-resistant beds for the MHCB units at San Quentin

4   and CMF. Defendants' unsupported assertion that the Special Master's recommendation is

5   overly intrusive is contradicted by the record, including their own actions, and should be

6   rejected.

7          **D.    THE SPECIAL MASTER'S RECOMMENDATION HAS NO BEARING ON
                    THE CONSTITUTIONALITY OF TITLE 22 AND IS, IN ANY EVENT,**
8          **ENTIRELY CONSISTENT WITH TITLE 22**

9          Curiously, Defendants argue that, by ordering the provision of suicide-resistant beds to

10   suicidal prisoners within MHCB units, "the Court would be effectively declaring portions of

11   Title 22 [of the California Code of Regulations] unconstitutional." Defs.' Objection at 6-7.

12   Defendants argue that Section 79829(a) of "Title 22 does not require a suicide-resistant bed," and

13   thus that the Special Master's recommendation does not comport with state law or the PLRA.

14   This argument is without merit.

15          An order adopting the Special Master's fourth recommendation would not contravene

16   Title 22. The Special Master's recommendation to provide suicide-resistant beds to prisoners in

17   MHCB units is entirely consistent with Section 79829(a) of Title 22, which Defendants have

18   quoted only partially in their objection. The full regulation provides that inmate-patient room

19   furnishings must include:

20          A clean, comfortable bed with a mattress, pillow, blankets, bed linen
            and provisions for the storage of personal items shall be provided for
21          each licensed bed. All furnishings will be in good repair and suitable
            for special inmate-patient needs.
22

23   Cal. Code Regs. tit 22, § 79829(a) (emphasis added).

24          Based on his extensive experience in this litigation, the investigation conducted for

25   purposes of this Report, the advice of his team of experts, and the input of the parties, the Special

26   Master has provided a recommendation to the Court that meets the requirements contained in 18

27   U.S.C. § 3626(A)(1) *and* is wholly consistent with Section 79829(a) of Title 22. The

28   recommendation would ensure that all CDCR prisoners in MHCB units are not improperly

                                             16

1  deprived of a bed, and that prisoners at-risk for suicide receive suicide-resistant beds, *i.e.*, beds

2  that are "suitable for special inmate-patient needs."  Cal. Code Reg. tit 22, § 79829(a).

3  **V.     CONCLUSION**

4         Based on a comprehensive investigation and assessment conducted in response to this

5  Court's April 14, 2010 Order, the Special Master has recommended that Defendants submit a

6  plan within 60 days to furnish suicide-resistant beds in MHCB units for any at-risk inmates that

7  would otherwise not be provided a bed.  This recommendation is a necessary component of the

8  remedy to the ongoing constitutional violations, addressing a "serious" and "objectionable"

9  practice that, according to the Special Master, is "deserving of prompt attention" and "must be

10 stopped."  Special Master's Report at 33, 37.  The Court should reject Defendants' instant

11 objection, and adopt in full the Special Master's fourth recommendation as an order, finding that

12 "such relief is narrowly drawn, extends no further than necessary to correct the violation of the

13 Federal right, and is the least intrusive means necessary to correct the violation of the Federal

14 right."  18 U.S.C. § 3626(a)(1)(A).

15

16 Dated:  November 18, 2010                    Respectfully submitted,

17                                              ROSEN, BIEN & GALVAN, LLP

18

19                                              By:  */s/ Jane E. Kahn*
                                                    Jane E. Kahn
20                                                   Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

17

PLS.' MEMORANDUM ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFENDANTS SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - NO. CIV S 90-0520 LKK-JFM

[443870-1]