PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
AARON J. FISCHER, Bar No. 247391
315 Montgomery Street, 10th Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, California 94107-1389
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>      Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**DECLARATION OF JANE E. KAHN IN SUPPORT OF SPECIAL MASTER'S RECOMMENDATION THAT DEFENDANTS SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE** |

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

I, Jane E. Kahn, do hereby declare as follows:

1.      I am an attorney admitted to practice law in California and of counsel in the law firm Rosen, Bien & Galvan, one of the counsel of record for plaintiff class in this case. I have personal knowledge of the matters set forth herein and if called as a witness, I could competently so testify. I make this declaration in support of the Special Master's Recommendation that Defendants Submit a Plan to Furnish Suicide-Resistant Beds in Their Mental Health Crisis Bed Units to Reduce High Rate of Suicide.

2.      I have been involved in the remedial process in *Coleman v. Schwarzenegger* since 1998, and have accompanied the *Coleman* Special Master and his monitoring teams on numerous prison tours since 1998. As part of the monitoring tours, the Special Master's experts examine the conditions inside of the mental health crisis bed ("MHCB") units located in the Correctional Treatment Centers ("CTCs") and General Acute Care Hospitals ("GACHs") inside of the prisons. I have visited many MHCB units during my tours of prisons and have observed that none of these MHCB units have beds inside of the cells where suicidal patients are housed. Instead, the crisis bed patients are forced to sleep on the concrete floor. Some of the patients are provided with a thin mattress, a blanket and a suicide smock. However, I have also observed that in the medical wings of the CTCs and GACHs, the medical patients are provided with hospital beds and are clothed.

3.      On July 29, 2010, I attended a *Coleman* Policy Meeting held in Sacramento, California. Also present at that meeting were Special Master Lopes and his experts, Debbie Vorous, Deputy Attorney General, CDCR Staff Counsel, Michael Stone, Plaintiffs' counsel Michael Bien, Steve Fama and Ernest Galvan, and representatives from CDCR and DMH. During the meeting, there was discussion regarding two issues related to MHCBs: (1) the provision of suicide-resistant beds in MHCBs, and (2) the use of handcuffs and other restraints on all MHCB patients regardless of their security status. During the meeting, Defendants acknowledged that two prisons – San Quentin State Prison and California Medical Facility – have suicide-resistant beds in their MHCBs. With regard to the practice of cuffing and caging MHCB patients and generally treating all MHCB patients like administrative segregation prisoners, the parties were unable to reach an agreement, and the issue was continued for later discussion.

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

4. The *Coleman* Special Master has identified problems with the provision of mattresses, blankets and suicide smocks/gowns for patients who were admitted to the MHCB units. *See* Twentieth Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols ("20th Report"), Sept. 12, 2008, Docket No. 3029, at 133 (staff reported continued problems obtaining mattresses and blankets, as well as issues related to worn-out patient gowns); *id.* at 255 ("Staff also reported a recurring shortage of safety mattresses and suicide smocks. As a result, inmates were sometimes placed on suicide watch with nothing more than boxer shorts."). *See* Twenty-First Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols ("21st Report"), July 31, 2009, Docket No. 3638, at 159 (problems with clean mattresses and blankets addressed, but issues with worn-out gowns persisted); *id.* at 289 (periodic lack of mattresses available to MHCB inmates was a recurring problem).

5. Dr. Craig Haney, one of Plaintiffs' mental health experts in the three-judge overcrowding trial, toured Wasco State Prison on August 1, 2008. Haney Expert Report, Docket No. 3201, ¶ 299. As part of his tour, he visited the Correctional Treatment Center and interviewed a patient, a wheelchair user, who had been housed for months in the MHCB unit in "abysmal" conditions where the "MHCBs lack furniture so, for more than three months, Inmate III, lived his life – slept, ate, and otherwise just sat – literally on the floor of his barren cell." *Id.* ¶ 315. Inmate III's conditions were especially grueling, as his leg was amputated and he had four artificial disks in his spine, and he described that living on the floor in this manner was "physically very painful as well as degrading." *Id.* ¶¶ 314-315.

6. Dr. Pablo Stewart, Plaintiffs' psychiatric expert in the three-judge overcrowding trial, testified about the impact of the punitive suicide watch conditions on the willingness of prisoners to express their suicidal thoughts to staff. During his tour of Mule Creek State Prison on August 1, 2008, he observed patients on suicide observation who were housed in cells "wearing nothing but suicide smocks and had no mattress or blanket." Stewart 10-30-08 Expert Report, Docket No. 3221, ¶ 58. Dr. Stewart concluded that the conditions that he observed were "likely to exacerbate many patients' clinical conditions and will ultimately dissuade people from communicating candidly with

2

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

their doctors about their mental health conditions." *Id.* ¶ 59. Dr. Stewart, who served for ten years as a psychiatric expert working for the court-appointed Mediator in the remedial phase of *Gates v. Deukmejian*, noted that "[i]t is my experience that word travels quickly among inmates about deplorable conditions they experience. This results in prisoners not reporting the extent of their suicidality out of fear of being housed in places like the MHOHU [Mental Health Outpatient Housing Unit] [where patients slept on the floor, and were only permitted to wear suicide smocks]." *Id.* ¶ 60.

7. As part of my work, I am responsible for communications with *Coleman* class members concerning their mental health treatment, access to care and conditions of confinement. I am also responsible for supervising and training other attorneys and paralegals in my office who communicate with our class members and regularly consult with these attorneys and paralegals about issues that arise in their work. I have personally interviewed numerous *Coleman* class members during monitoring tours and most recently, during the 2007 and 2008 expert tours in the three-judge overcrowding trial. Many years ago within the *Coleman* case, Defendants established a process permitting Plaintiffs to directly contact CDCR Headquarters Mental Health staff, now known as the *Coleman* Project Team ("CPT"), regarding a prisoner we had reason to believe was suicidal or severely decompensated or otherwise in crisis. In response, Defendants agreed to contact the prison where the prisoner was located and have a clinician assess him or her. In our letters to class members, and in our other communications in phone calls and interviews, we regularly encourage our clients to tell prison staff about their suicidal thoughts (in addition to writing to us) and have included this message in a Frequently Asked Questions (FAQ) pamphlet that we send along with our letters. However, in response to this message, we have been told by many class members that they are reluctant to report their suicidal thoughts to staff because they fear it will result in an MHCB placement. They describe harsh and punitive MHCB conditions that include sleeping on hard floors, with only a thin mattress or no mattress, naked or in a suicide smock, and cuffed and caged at all times. They describe how their treatment in these MHCB units increases their depression and sense of hopelessness, and is humiliating, stressful, and causes extreme mental anguish. Some clients have asked us not to contact the CPT for fear that it will result in an MHCB placement despite the fact that

3

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

the client expresses a suicide plan or suicidal thoughts. Other clients have stated that they tell MHCB staff they are "better," not because they truly are, but so they will be discharged from the unit rather than have to withstand the harsh conditions there. Most work days, our law firm contacts the CPT about at least one prisoner who we have reason to believe may be suicidal or in crisis.

8. The *Coleman* Program Guide states that the length of stay in an MHCB unit shall only be ten days, and that any exceptions to this maximum length of stay must be approved by the Chief Psychiatrist or his/her designee. Program Guide at 12-5-1. However, in reality, many MHCB patients remain housed in the MHCB units, sleeping on the floor without clothing or access to basic programming, for extended periods of time due to overcrowding transfer delays and inpatient DMH bed shortages. The Special Master has documented these extended MHCB stays in the 21st Report at 15 (more than half of MHCB admissions at CSP-Sacramento exceeded 10 days, more than a quarter exceeded 20 days, 12 percent exceeded 30 days); at 60 (46 of the patients in the MHCB at HDSP were there longer than 10 days); at 109 (33 percent of the admissions to the MHCB at CSP-Solano exceeded ten days); at 179 (over 30 of the MHCB admissions at CSATF were longer than 20 days and a handful spent weeks); at 225 (at CMC, 51 patients had stays ranging from 11 to 20 days, and 39 were in the MHCB longer than 21 days); at 246 (at KVSP, in 55 cases, the stays were greater than 10 days, and in 23 cases the stays were greater than 20 days); at 257 (between December 2007 and May 2008, 18 patients with DMH referral had stays in MHCB that averaged 32.8 days before transfer to DMH); at 288 (CIM's MHCB had 116 patients with stays greater than 10 days); at 308 (at RJ Donovan Correctional Facility, lengths of stay exceeding 10 days increased to 23 percent of the admissions); and at 351 (26 percent of all admissions in the CCWF MHCB exceeded 10 days). This data highlights the seriousness of the deprivation of suicide-resistant beds for patients admitted to the MHCB units, many of whom must sleep on the floor, and suffer other unwarranted deprivations, for extended periods of time.

9. Defendants provide the Special Master and Plaintiffs with a monthly data report that includes an "Inpatient Psychiatric Aging Report" for each MHCB unit, which lists each patient admitted in the month and their total number of days in the unit. I have reviewed the "Inpatient Psychiatric Aging Report" for September 2010. The data includes prisoner names and

4

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

CDCR numbers, and in order to maintain confidentiality, I will provide a summary of my review of this report. I have included the number of patients in each of the MHCB units with stays greater than 10 days and the longest stay in each MHCB for September 2010:

- CIM: 29 patients with stays greater than 10 days, longest 99 days;
- CIW: 3 patients with stays greater than 10 days, longest 18 days;
- CMC: 36 patients with stays greater than 10 days, longest 145 days;
- COR: 20 patients with stays greater than 10 days, longest 3,020 days;
- LAC: 6 patients with stays greater than 10 days, longest 161 days;
- SAC: 43 patients with stays greater than 10 days, longest 90 days;
- SOL: 9 patients with stays greater than 10 days, longest 52 day;
- CCWF: 8 patients with stays greater than 10 days, longest 56 days;
- CSATF: 21 patients with stays greater than 10 days, longest 92 days;
- HDSP: 4 patients with stays greater than 10 days, longest 94 days;
- KVSP: 11 patients with stays greater than 10 days, longest 107 days;
- MCSP: 7 patients with stays greater than 10 days, longest 189 days;
- NKSP: 13 patients with stays greater than 10 days, longest 81 days;
- PBSP: 10 patients with stays greater than 10 days, longest 107 days;
- PVSP: 2 patients with stays greater than 10 days, longest 28 days;
- RJD: 16 patients with stays greater than 10 days, longest 42 days;
- SVSP: 13 patients with stays greater than 10 days, longest 48 days; and
- WSP: 4 patients with stays greater than 10 days, longest 63 days.

In total, there were 255 patients housed in MHCB units within CDCR prisons in September 2010 who had stays greater than 10 days.

10. As part of an inspection tour in *Plata v. Schwarzenegger*, Plaintiffs inspected the accessibility features in the San Quentin State Prison MHCBs, and Defendants provided photos of those beds to Plaintiffs' counsel. The new MHCB unit at San Quentin has suicide-resistant beds that are also accessible to prisoners who rely on wheelchairs, which ensures that suicidal prisoners with physical disabilities will not have to sleep on the floor. Attached hereto as **Exhibit A** is a true and correct copy of the cover email from Jay Russell, Supervising Deputy Attorney General forwarding the photos of the San Quentin suicide-resistant beds, and true and correct copies of the photos of the San Quentin suicide-resistant beds.

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

11. During a meeting with Defendants held on April 1, 2010, I was informed by Defendants that the suicide-resistant beds that they had purchased for San Quentin were from Moduform, a company that manufactures furniture, including suicide-resistant beds for Correctional systems.  http://www.moduform.com  I contacted a sales representative at Moduform, who informed me that a bulk order of the beds (approximately 300 beds) would drop the list price of $2,777 to $1,500 per bed.  In addition, the company will work with Prison Industries to build the beds.  http://www.moduform.com/contracts/prison_industries/default.cfm  CDCR has approximately 373 MHCBs, with 67 of these beds (50 at California Medical Facility and 17 at San Quentin) already furnished with suicide-resistant beds.  Attached hereto is a true and correct copy of the Mental Health Population – Placement Per Institution, dated April 1, 2010, as **Exhibit B**.  Thus, Defendants could procure the additional 306 suicide-resistant beds required to provide appropriate beds system-wide at a cost of approximately $1,500 per bed, unless CDCR decides to have the beds constructed by Prison Industries, thereby reducing the cost.

12. The practice of cuffing and caging MHCB patients, regardless of their prior housing, was first identified as problematic in the Special Master's Twentieth Monitoring Report.  Docket No. 3029, Sept. 12, 2008.  In the Twentieth Monitoring Report, the Special Master described this practice at Kern Valley State Prison, where all MHCB patients, regardless of their security status were "handcuffed and escorted by two correctional officers."  20th Report at 228.  When these patients were seen, their "MHCB clinicians were required to wear stab-proof vests and inmates were required to be handcuffed or placed in a holding cell during one-on-one interviews, even if they were not on administrative segregation status."  *Id.*  This practice of cuffing and caging all MHCB patients was also documented at California Institution for Men (at 264, "significantly impeding access to clinical care"); at CSP-Sacramento (at 19, emphasis added, "MHCB operations were affected by local custody requirements and *staff opinion that inmates should not be motivated to remain in the CTC*.  All inmates were escorted into the interdisciplinary treatment team (IDTT) room in handcuffs and designated clothing regardless of their actual security status."); and at Pleasant Valley State Prison (at 166, all MHCB patients generally

6

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

treated like administrative segregation status, and were handcuffed for treatment meetings, evaluations and any other activities; staff members spoke to the patient through a food port in the door, and "[l]ack of yard time and recreational therapy for this population raised concern among clinical staff.").

13. In the Special Master's Twenty-First Monitoring Report, July 31, 2009, Docket No. 3638, the Special Master documented the continued practice of treating MHCB patients as if they were in administrative segregation and described six (6) MHCB units where patients admitted for mental health crises were escorted to treatment sessions in handcuffs, interviewed by their clinicians and treatment teams in cages, and were denied access to the dayrooms. 21st Report at 60, 100, 182, 206, and 248. Although Plaintiffs filed comments on the draft 21st Report, requesting a recommendation directed at this MHCB practice, the Special Master directed the parties to discuss the practice further at the upcoming policy meetings, noting, however, that placement of an MHCB patient in restraints "cannot be based solely on the inmate's housing status." *Id.* at 419. During the July 2010 Policy Meeting, the issue was discussed, and representatives from CDCR Institutions Division provided a draft memorandum that would provide some process for reviewing and removing these restraints from all MHCB patients, after three days of admissions. The issue remains in dispute and further mediation efforts will be attempted before redress to this Court. However, the practice of cuffing and caging all MHCB patients, persists unabated, and appears to be driven in part by "staff opinion that inmates should not be motivated to remain in the CTC." 20th Report at 19.

I declare under penalty of perjury under the laws of California and the United States, that the foregoing is true and correct, and that this declaration is executed in San Francisco, California on November 18, 2010.

*/s/ Jane E. Kahn*
Jane E. Kahn

7

DECL. OF JANE E. KAHN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - CASE NO. CIV S 90-0520 LKK-JFM

[418752-1]

# EXHIBIT A

**From:** Jay Russell [Jay.Russell@doj.ca.gov]
**Sent:** Tuesday, October 19, 2010 4:30 PM
**To:** Alison Hardy
**Cc:** michael.stone@cdcr.ca.gov; Thomas@CDCR Gilevich; Jon Wolff; Gay C. Grunfeld; Jane E. Kahn
**Subject:** RE: Armstrong v. Schwarzenegger; Photos from San Quentin MHCB

**Attachments:** IMG_5586.jpg; IMG_5587.jpg

Alison -

Attached are two photographs of beds installed in the San Quentin MHCB unit. Although these beds are not related to the Armstrong litigation, I am sending you these photos per your request.

If you have any questions, please let me know.


Jay C. Russell
Supervising Deputy Attorney General
State of California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-7004
415.703.5717
415.703.5843 (Facsimile)
jay.russell@doj.ca.gov


>>> Alison Hardy <ahardy@prisonlaw.com> 10/19/2010 9:00 AM >>>

Hi Jay,

As I indicated last week, I appreciate your forwarding the photos that we took in the SQ MHCB unit on September 22. However, the set of photos I received is not complete. I still need the photos that we took of the platform beds in that unit. Please forward them today.

Thanks,

Alison Hardy
510.280.2621


**From:** Alison Hardy [mailto:ahardy@prisonlaw.com]
**Sent:** Wednesday, October 13, 2010 4:32 PM
**To:** 'Jay Russell'
**Cc:** 'Daniel.Blake@cdcr.ca.gov'; 'Jim Blevins'; 'Julian Martinez'; 'michael.stone@cdcr.ca.gov';
'Trina.Hirsig@cdcr.ca.gov'; 'Danielle OBannon'; 'Jon Wolff'; 'Scott Feudale'; 'Sara Norman'; 'Gay Grunfeld'
**Subject:** RE: Armstrong v. Schwarzenegger; Photos from San Quentin MHCB

Thank you, Jay. We had also taken several pictures of the platform beds for the Coleman attorneys. Could you forward those photos, as well?

Appreciate your help.

Alison Hardy


**From:** Jay Russell [mailto:Jay.Russell@doj.ca.gov]

**Sent:** Wednesday, October 13, 2010 4:25 PM
**To:** Sara Norman; Gay Grunfeld
**Cc:** Daniel.Blake@cdcr.ca.gov; Jim Blevins; Julian Martinez; michael.stone@cdcr.ca.gov; Trina.Hirsig@cdcr.ca.gov; Danielle OBannon; Jon Wolff; Scott Feudale; ahardy@prisonlaw.com
**Subject:** Armstrong v. Schwarzenegger; Photos from San Quentin MHCB

Sara and Gay -
As I believe was discussed in a recent conference with Armstrong court expert Ed Swanson, Plaintiffs inspected the accessibility features in the San Quentin mental health crisis beds during a recent tour conducted under the Plata litigation. During that tour, Alison Hardy asked that photos of these features be taken. Copies of those photos are attached.
Please let me know if you have any questions.
Jay C. Russell
Supervising Deputy Attorney General
State of California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-7004
415.703.5717
415.703.5843 (Facsimile)
jay.russell@doj.ca.gov

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.


**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.





# EXHIBIT B

# Mental Health Population - Placement Per Institution

*Grouped by: Ad-Seg, GP, RC, and SHU*
*DDPS Download Date: April 1, 2010*

## SUMMARY
### Mental Health Population - Combined Placement Per Institution

| Institution | CCCMS Capacity | CCCMS Current Pop | CCCMS % of Capacity | EOP Capacity | EOP Current Pop | EOP % of Capacity | MHCB Capacity | Total MH Pop |
|---|---|---|---|---|---|---|---|---|
| ASP | 1099 | 1356 | 123% | | 14 | | | 1370 |
| CAL | | 21 | | | 1 | | | 22 |
| CCI | 1349 | 1365 | 101% | | 61 | | | 1426 |
| CCWF | 899 | 1127 | 125% | 54 | 43 | 80% | 12 | 1170 |
| CEN | | 17 | | | | | | 17 |
| CIM | 999 | 1140 | 114% | | 176 | | 34 | 1316 |
| CIW | 499 | 708 | 142% | 85 | 111 | 131% | 10 | 819 |
| CMC | 1099 | 1232 | 112% | 634 | 524 | 83% | 36 | 1756 |
| CMF | 599 | 643 | 107% | 591 | 554 | 94% | 70 | 1197 |
| COR | 949 | 1241 | 131% | 249 | 211 | 85% | 23 | 1452 |
| CRC-M | 848 | 1075 | 127% | | | | | 1075 |
| CTF | 745 | 987 | 132% | | 3 | | | 990 |
| CVSP | | 16 | | | 1 | | | 17 |
| DVI | 649 | 718 | 111% | | 47 | | | 765 |
| FOL | 599 | 750 | 125% | | 8 | | | 758 |
| HDSP | 699 | 872 | 125% | | 22 | | 10 | 894 |
| ISP | | 16 | | | 4 | | | 20 |
| KVSP | 1000 | 1296 | 130% | 96 | 109 | 114% | 12 | 1405 |
| LAC | 1149 | 1276 | 111% | 374 | 417 | 111% | 12 | 1693 |
| MCSP | 1149 | 1368 | 119% | 546 | 594 | 109% | 8 | 1962 |
| NKSP | 799 | 1147 | 144% | | 83 | | 10 | 1230 |
| PBSP | 349 | 277 | 79% | 66 | 73 | 111% | 10 | 350 |
| PVSP | 1499 | 1903 | 127% | | 3 | | 6 | 1906 |
| RJD | 1199 | 1424 | 119% | 393 | 449 | 114% | 14 | 1873 |
| SAC | 849 | 812 | 96% | 458 | 448 | 98% | 44 | 1260 |
| SATF | 1199 | 1507 | 126% | | 19 | | 20 | 1526 |
| SCC | 499 | 648 | 130% | | 13 | | | 661 |
| SOL | 1199 | 1406 | 117% | | 10 | | 9 | 1416 |
| SQ | 899 | 1054 | 117% | 36 | 146 | 406% | 17 | 1200 |
| SVSP | 999 | 1121 | 112% | 264 | 220 | 83% | 10 | 1341 |
| VSPW | 849 | 1126 | 133% | 9 | 33 | 367% | | 1159 |
| WSP | 1049 | 1094 | 104% | | 115 | | 6 | 1209 |
| **TOTAL** | **25718** | **30743** | **120%** | **3855** | **4512** | **117%** | **373** | **35255** |