PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
ERNEST GALVAN, Bar No. 196065
JANE E. KAHN, Bar No. 112239
AMY WHELAN, Bar No. 215675
LISA ELLS, Bar No. 243657
AARON J. FISCHER, Bar No. 247391
315 Montgomery Street, 10th Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, California 94107-1389
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br>Plaintiffs, <br><br>v. <br><br>ARNOLD SCHWARZENEGGER, et al., <br><br>Defendants. | Case No. Civ S 90-0520 LKK-JFM <br><br>**DECLARATION OF MICHAEL L. FREEDMAN IN SUPPORT OF SPECIAL MASTER'S RECOMMENDATION THAT DEFENDANTS SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE** |

DECL. OF MICHAEL L. FREEDMAN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - NO. CIV S 90-0520 LKK-JFM

[443770-1]

I, Michael L. Freedman, do hereby declare as follows:

1. I am an attorney admitted to practice law in California, a member of the State Bar of California, and of this Court. I am an associate attorney in the law firm Rosen, Bien & Galvan. I have personal knowledge of the matters set forth herein and if called as a witness, I could competently so testify. I make this declaration in support of the Special Master's Recommendation that Defendants Submit a Plan to Furnish Suicide-Resistant Beds in Their Mental Health Crisis Bed Units to Reduce High Rate of Suicide.

2. On November 2 and 3, 2010, I conducted a monitoring tour of R.J. Donovan Correctional Facility ("RJD") as part of the institutional monitoring of prison facilities in *Armstrong v. Schwarzenegger*, No. C94 2307 CW (N.D. Cal.). On November 2, 2010, I interviewed ten prisoners with my colleague Blake Thompson. On November 3, 2010, I toured some of the prison's facilities and interviewed prison staff with my colleague Gay Grunfeld.

3. On November 2, 2010, Mr. Thompson and I interviewed a prisoner, Mr. T, a large man weighing at least 300 pounds, who is classified as DPW. DPW is a classification used by the California Department of Corrections and Rehabilitation ("CDCR") to identify prisoners who, because of a permanent disability, are medically prescribed a wheelchair at all times, both within and outside their assigned cell. (*Armstrong* Remedial Plan, January 3, 2001 at II.C.1.a.) Prison staff pushed Mr. T in his wheelchair to and from the interview, but according to the Disability and Effective Communication System ("DECS") log from October 25, 2010, Mr. T was housed in the Correctional Treatment Center ("CTC") at RJD in cell 149, which is not a DPW accessible cell; that is, the cell did not have architectural features, like grab bars, that make it accessible for individuals in wheelchairs. Cell 149 is one of the designated MHCB cells in the CTC. I know that cell 149 is a designated MHCB cell because one of the nurses who worked in the CTC told me so during my tour of the unit on November 3, 2010.

4. During our interview, Mr. T reported that he was on suicide watch. According to the monthly data produced by the *Coleman* defendants, Mr. T was admitted to Atascadero State Hospital ("ASH"), one of the institutions providing intermediate inpatient level of care in the CDCR system, on August 8, 2010, and remained there at least through the end of September

1

DECL. OF MICHAEL L. FREEDMAN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - NO. CIV S 90-0520 LKK-JFM

[443770-1]

2010. In our interview with Mr. T, he indicated that he had been transferred from ASH to RJD three to four weeks prior to the interview date. Mr. T also indicated that prior to ASH, he was housed at California Medical Facility in an Enhanced Outpatient Program ("EOP").

5. Mr. T described his MHCB cell at RJD as consisting solely of a sink, a toilet, and a thin suicide-resistant mattress placed on the floor.

6. Mr. T reported that he was not permitted to keep his wheelchair in his cell, which made using the bathroom an extremely difficult process. According to Mr. T, when he needed to use the toilet, he would crawl to the toilet using only his arms, sit with his back against the front of the toilet seat, reach behind him to grab onto the front of the toilet seat, and then use his arms to lift himself onto the toilet. Mr. T indicated that sometimes he had the strength to lift himself onto the toilet, but that sometimes he did not. On those occasions when he could not lift himself onto the toilet, Mr. T stated that he soiled himself. According to Mr. T, the staff in the CTC never provided him with any assistance getting onto or off of the toilet. Mr. T did state that he was provided with and used a urinal.

7. On November 3, 2010, Ms. Grunfeld and I toured the CTC at RJD. We spoke with the nurse in charge of the CTC at the time of our tour. We were informed that the CTC places DPW prisoners who are suicidal in the same type of room as suicidal prisoners without mobility restrictions. She also stated that the doctors at the prison determine whether DPW prisoners were permitted to keep their wheelchairs in their cell or whether they are required to leave the wheelchair outside of the cell.

8. We asked the nurse what type of bedding suicidal prisoners are provided. The nurse explained to us that suicidal prisoners sleep on the floor on suicide-resistant mattresses. She then showed us one of the MHCB suicide-resistant mattresses. It was a gray, vinyl mattress, approximately six feet long by three and a half feet wide by two to three inches thick. It had very little padding or filling.

9. We asked whether they used any suicide-resistant beds in the MHCB unit of the CTC at RJD; the nurse explained that they used only the suicide-resistant mattresses, and did not provide any suicide-resistant beds.

2

DECL. OF MICHAEL L. FREEDMAN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - NO. CIV S 90-0520 LKK-JFM

[443770-1]

10. During the tour of the CTC, I viewed, through the cell window, an MHCB cell that was occupied by a prisoner who was on twenty-four hour suicide watch. I knew that he was on suicide watch both because the nurse so informed us and because there was an individual sitting outside of his room, constantly observing him. The cell consisted solely of a sink, a toilet, and one of the suicide-resistant mattresses set on the floor. The prisoner in the cell was sitting on the mattress. The front of the cell, including the cell door, only had a single, small window—approximately twelve by four inches.

11. The cell in which the patient on suicide watch was housed contrasted sharply with the cells in the CTC that the nurse identified as medical treatment cells. All of the cells for medical patients that I observed—approximately eight cells—contained beds that looked like a hospital bed. The beds in these cells looked considerably sturdier than the typical beds provided to prisoners on a non-medical cell block. The front of the medical treatment cells had large windows that looked out into the hallway of the CTC. Furthermore, at least one of the medical treatment cells contained a television.

12. We asked the nurse to describe the CTC's procedures for accommodating suicidal DPW inmates who need to use the bathroom. She explained that DPW prisoners on suicide watch are provided with a "urinal," a container into which the prisoner can urinate. The prison staff would then empty the urinal when necessary. The nurse stated that if the prisoner needs to defecate, the prisoner can ring a buzzer in the cell to notify the nursing staff. The nursing staff would then physically help the inmate get onto and off of the toilet.

I declare under penalty of perjury under the laws of California and the United States, that the foregoing is true and correct, and that this declaration is executed in San Francisco, California on November 18, 2010.

                                          */s/ Michael L. Freedman*
                                          Michael L. Freedman

3

DECL. OF MICHAEL L. FREEDMAN ISO SPECIAL MASTER'S RECOMMENDATION THAT DEFS. SUBMIT A PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN THEIR MENTAL HEALTH CRISIS BED UNITS TO REDUCE HIGH RATE OF SUICIDE - NO. CIV S 90-0520 LKK-JFM

[443770-1]