KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
GREGORY G. GOMEZ, State Bar No. 242674
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-5345
  Fax: (916) 324-5205
  E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DECLARATION OF DEBBIE VOROUS IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PLAN RE: INTERMEDIATE CARE FACILITY AND ACUTE INPATIENT WAITLISTS** |

I, Debbie J. Vorous, declare:

1.    I am a Deputy Attorney General with the Office of the Attorney General, attorneys of record for Defendants in this case, and I am licensed to practice in this Court. I have personal knowledge of the facts stated in this declaration and if called to testify to those facts could and would do so competently. I make this declaration in support of Defendants' Response to Plaintiffs' Objections to Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Waitlists.

///

1

2.      Attached as Exhibit 1 is a true and correct copy of a letter enclosing Defendants'
supplemental materials on the Psychological Assessment Plan section of Defendants' Plan Re:
Intermediate Care Facility and Acute Inpatient Waitlists.

3.      Attached as Exhibit 2 is a true and correct copy of a letter enclosing Defendants'
supplemental materials on the Extended Enhanced Outpatient Program Care Plan section of
Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Waitlists.

4.      Attached as Exhibit 3 is a true and correct copy of the ICF Pilot Program endorsed
by the California Secretary of State and the Office of Administrative Law on October 23, 2009,
which Office of Administrative Law legal staff forwarded to me on March 17, 2011.

5.      Attached as Exhibit 4 is a true and correct copy of a letter enclosing Defendants'
Plan to Review the Current Salinas Valley Psychiatric Program Population.

6.      Attached as Exhibit 5 is a true and correct copy of a letter notifying me that as of
February 25, 2011, the C5/C6 unit at the Salinas Valley Psychiatric Program was at a full census
of 116 ICF inmate-patients.

7.      Attached as Exhibit 6 is a true and correct copy of a letter notifying me that as of
December 17, 2010, the P-1 unit at the Vacaville Psychiatric Program was at a full census of 32
Acute Psychiatric Program inmate-patients.

I declare that the foregoing is true.  Executed this 18th day of March, 2011, at
Sacramento, California.


                        */s/ Debbie J. Vorous*
                        DEBBIE J. VOROUS


CF1997CS0003
31223349.doc

2

# EXHIBIT 1

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
Assistant Secretary
P.O. Box 942883
Sacramento, CA 94283-0001



February 4, 2011


Ms. Debbie Vorous
Deputy Attorney General
Department of Justice
1300 I Street
Sacramento, CA 94244-2550

Dear Ms. Vorous

Enclosed please find supplemental materials on the Extended Enhanced Outpatient Program Care Plan and the Psychological Assessment Plan sections of Defendants' Plan on the Intermediate Care Facility and Acute Inpatient Waitlists.

Sincerely,

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation


Enclosures

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

PROCEDURE FOR CONDUCTING CDCR PSYCHOLOGICAL ASSESSMENTS

## I.   POLICY

Inmate-patients identified as needing psychological assessment and testing shall receive these services on site by California Department of Corrections and Rehabilitation (CDCR) clinicians, unless the clinicians determine the inmate-patients need to be sent to the Department of Mental Health (DMH) for assessment and testing. Providing psychological assessments and testing on site at CDCR institutions is designed to: 1) ensure more appropriate treatment planning and overall inmate-patient care; 2) effectively use state resources; and  3) reduce the wait times for those high-custody inmate-patients that continue to require Intermediate Care Facility (ICF) level of care.

## II.   BACKGROUND

Over the last several years, CDCR has grown its capacity to provide a higher level of psychological treatment and assessment services:

- In December 2010, a new mental health staffing plan increased the number of psychologists and senior psychologist specialists providing mental health services in institutions statewide. With these new resources, CDCR now has a greater capacity to provide psychological assessment services in house.
- Many CDCR institutions have psychologists with appropriate training and experience in conducting psychological assessments and testing (subject matter experts (SMEs)). Institutions with an on site SME, will conduct the testing for that institution . For those institutions that do not have appropriately trained SMEs, the Utilization Management team at CDCR headquarters has developed a SME pool of psychologists that have the expertise and experience to provide psychological assessments and testing. These SMEs will travel to designated institutions to provide on site testing as needed.
- CDCR has purchased additional psychological testing supplies for the traveling SMEs, upgrading their capacity to conduct comprehensive psychological assessments and testing statewide.

## III.   PURPOSE

The purpose of this procedure is to provide guidelines for identifying, referring, and initiating psychological testing for CDCR inmate-patients as described in the Psychological Assessment Policy.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

## IV.   PSYCHOLOGICAL TESTING PROCEDURE OUTLINE

Sections A through C below outline the testing and assessment procedures. The attached Procedural Details and Appendixes A through C provide procedural details, directions, and suggestions.

## A. PRIMARY CLINICIAN AND INTERDISCIPLINARY TREATMENT TEAM IDENTIFY INMATE-PATIENTS WHO MAY BENEFIT FROM PSYCHOLOGICAL ASSESSMENT AND TESTING.

1) Prior to referring an inmate-patient for psychological testing, the Primary Clinician must do the following (*see* Procedural Details, Number 1. Primary Clinician Assessment Guidelines):

    a) Schedule an Interdisciplinary Treatment Team (IDTT) appointment;
    b) Conduct a thorough background assessment of the inmate patient and complete a new 7386 Mental Health Evaluation Form; and
    c) Present the psychological assessment report to the IDTT.

2) In considering whether to refer an inmate-patient for psychological testing, the IDTT does the following:(*see* Procedural Details, Number 2. Role of the IDTT):

    a) Members provide information about the inmate-patient's  level of functioning from each of their professional perspectives, within the scope of their training and expertise;
    b) Review the CDCR form 7386 completed by the inmate-patient's  Primary Clinician;
    c) The IDTT determines one of the following:
       i) There is sufficient information to provide appropriate mental health services to the inmate-patient at the current level of care; thus, no referral is made for psychological testing; or
       ii) The inmate-patient would benefit from a higher level of care including Enhanced Outpatient Program (EOP)/Extended EOP Care Plan, Mental Health Crisis Bed, , DMH-ICF and DMH-Acute Psychiatric Program and, if so, the Primary clinician completes the referral process; or
       iii) The inmate-patient's  treatment would likely be enhanced with more diagnostic clarity that would be provided by outpatient  psychological testing provided by a CDCR SME and, if so,
           (a) directs the Primary Clinician to refer the inmate-patient to the SME for psychological testing; and
           (b) assists the Primary Clinician in developing the psychological testing referral question; or
       iv) The inmate-patient  would likely benefit from inpatient psychological or neuropsychological testing at DMH and, if so,
           (a) IDTT assists the Primary Clinician in developing the psychological testing referral question; and
           (b) The Primary Clinician has 2-5 calendar days to complete the DMH referral (per DMH referral protocol) and forward it to the DMH Coordinator.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

---

**B. IDTT DETERMINES NEED FOR CDCR OUTPATIENT PSYCHOLOGICAL ASSESSMENT.**

When the IDTT and the inmate-patient's Primary Clinician determine that there is a need for psychological testing and develop a referral question, (*see* Procedural Details, Number 5. Assessment Referral Question), the following occurs:

1) The Primary Clinician completes the testing referral packet (*see* Procedural Details, Number 3. Referral of CDCR Inmate-Patients for Outpatient Psychological Testing) and submits it to designated assessment SME for their institution (in-house SME or one assigned by UM from another institution).

2) The Referral Packet Includes:
   a) Psychological Testing Referral form (Appendix A);
   b) CDCR Form 7386: Mental Health Assessment,(most recent);
   c) CDCR Form 7388: Mental Health Treatment Plan; and
   d) Central File (C-File) Review Form (Appendix B).

3) The Subject Matter Expert (*see* Procedural Details, Number 4. Qualification of the Subject Matter Expert and Number 6. Psychological Testing) does the following:
   a) Has 5 working days to review the referral packet and consult with the Primary Clinician;
   b) Obtains Informed Consent from the inmate-patient;
   c) Has 30 working days to complete the assessment and write the report (Appendix C, Psychological Testing and Consultation Report Format);
   d) Routes the Psychological Testing and Consultation Report to the Primary Clinician and the IDTT (*see* Procedural Details, Number 7. Completion of Psychological Testing); and
   e) Secures the testing documents in a confidential environment (*see* Procedural Details, Number 8. Securing Testing Documents).

4) The Primary Clinician presents the Psychological Testing and Consultation Report to the IDTT:
   a) The Primary Clinician and IDTT determine that there is need for additional testing at DMH:
      i) The IDTT and the Primary Clinician determine the referral question; and
      ii) The Primary Clinician completes the DMH referral for additional assessment within 2-5 working days (per DMH referral protocol) and submits it to the DMH Coordinator; or
   b) The Primary Clinician and the IDTT determine the assessment information is sufficient and, if so,
      i) The Primary Clinician updates the inmate-patient's treatment plan.

**C. ROLE OF THE DMH COORDINATOR**

1) The role of the DMH Coordinator is:
   a) To review all referrals to DMH and submit them to Utilization Management at CDCR Headquarters;
   b) To be the point of contact for assigned SMEs; and
   c) To obtain completed DMH assessments from SharePoint and ensure they are distributed to the Primary Clinician and placed in the Unit Health Record.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

**PROCEDURAL DETAILS FOR PSYCHOLOGICAL TESTING**

1) **Primary Clinician Assessment Guidelines:**
   a) Prior to making a referral for a psychological testing, the Primary Clinician is responsible for completing a thorough Central File (C-File) and Unit Health Record (UHR) review, the inmate-patient's history and mental status exam, and in-depth interviews with staff members that have interactions with the inmate-patient.
   b) The Primary Clinician's initial report shall include but not be limited to:
      i) CDCR UHR Review: When there are multiple volumes of records, focus on:
         (1) Behavior/symptoms at the time the inmate-patient was admitted into MHSDS,
         (2) Symptoms and behavior at the time of medication or level of care changes,
         (3) *Keyhea* documentation,
         (4) Symptoms and behaviors exhibited over the past year,
         (5) Psychiatric symptoms that might have been evident at the time of 115's, if any, in which symptoms were determined to play a role, and
         (6) Admissions to Mental Health Crisis Beds (MHCB), Outpatient Housing Units/Mental Health Outpatient Housing Units (OHU/MHOHU), and the Department of Mental Health (DMH), and placement in alternative housing.
      ii) Central File Review:
         (1) Any documentation from State Hospitals,
         (2) Psychological evaluations prepared for the courts,
         (3) Probation Officer's Report (POR) (including those from previous crimes, often found under the front tab on the right),
         (4) Parole records concerning violations, and
         (5) Inmate Appeals (CDCR Form 602's), and placement chronos.
      iii) Interviews:
         (1) Conduct a comprehensive interview with the inmate-patient, which should include a mental status exam and a thorough family, social, educational, work, substance abuse, and mental health history.
         (2) Conduct staff member interviews—Members of the Interdisciplinary Treatment Team (psychiatrist, clinicians, Licensed Psychiatric Technicians, Recreational Therapists, nursing and custody representatives), custody from the inmate-patient housing unit, work supervisors, teachers and anyone who has interactions with the inmate-patient.
   c) Reporting / Follow-up:
      i) Summarize the data by completing a CDCR Mental Health Evaluation Form 7386,
      ii) Schedule an IDTT within two weeks where the data will be presented. IDTT members will discuss the case and determine if additional psychological testing would help provide the diagnostic clarity needed to provide appropriate mental health treatment to the inmate-patient, and
      iii) The Primary Clinician and IDTT will identify the diagnostic question (See Section 5 below for examples).
   d) When the IDTT determines further psychological testing is required in order to provide more appropriate mental health treatment, the Primary Clinician will (see Section 2 e) below):
      i) Document the rationale for psychological testing in the Mental Health Treatment Plan (CDCR Form 7388),
      ii) Complete the Psychological Testing and Consultation Referral Form (Appendix A) within 5-

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

working days (per local operational procedures),

    iii) Submit the form to the SME, whether in house or the assigned from headquarters, and

e) If the inmate-patient is being referred to DMH for an inpatient psychological or neuropsychological assessment (see Section 2 e) iii) below):

    i) The Primary Clinician will complete the appropriate DMH referral form within 2 to 5 working days (according to DMH Intermediate Care Facility (ICF) and Acute Psychiatric Program (APP) referral protocols) and forward it to the DMH coordinator for submittal.

**2) Role of the IDTT:**

a) Reviews the CDCR form 7386,

b) Provides additional input from the various discipline's perspectives (psychiatry, psychology, nursing, custody etc) about the inmate-patient's level of functioning, interpersonal presentation, mental health treatment issues and other problems,

c) Rules out other potential remedies including higher levels of care, Enhanced Outpatient Program (EOP)/Extended EOP Care Plan (EECP), MHCB, inpatient mental health treatment at DMH ICF or APP,

d) Considers whether additional psychological testing is needed in order to provide appropriate mental health services to the inmate-patient,

e) If the IDTT determines:

    i) There is no need for additional testing; that is, the IDTT determines there is enough diagnostic clarity to provide appropriate mental health treatment then the Primary Clinician updates the inmate-patient's treatment plan.

    ii) That the inmate-patient would likely benefit from CDCR *outpatient* psychological testing (CDCR Referral); that is, there is confusion about the inmate-patient's diagnosis and additional psychological testing is necessary to improve the quality of the inmate-patient's mental health treatment plan, then:

        (1) The IDTT and the Primary Clinician develop the psychological testing referral question (see Section 5 below); and

        (2) The Primary Clinician has 5 working days to complete CDCR Testing and Consultation referral packet (Appendix A).

    iii) The inmate-patient would likely benefit from *inpatient* psychological testing at DMH for one or more of the following reasons if:

        (1) Comprehensive neuropsychological testing; or

        (2) CDCR testing provided inconclusive results; or

        (3) There is a need for second opinion; or

        (4) The assessment is too complex, or beyond the assigned assessment psychologist's expertise or scope of practice; or

        (5) Determines the inmate-patient would be better assessed in the inpatient environment provided by DMH. Issues that may be considered but not limited to include: 24 hour nursing environment provided by DMH, the inmate-patient's refusal due to distrust/paranoia, or institutional environmental issues surrounding the inmate-patient that are considered "difficult" or "manipulative" that may make it difficult to complete an adequate assessment.

        (6) If one of the above reasons for *inpatient* psychological testing at DMH applies, then:

            (a) The IDTT and the Primary Clinician develop psychological testing referral question (see Section 5 below for examples)

            (b) The Primary Clinician completes the DMH referral packet (2 calendar days for APP

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

and 5 calendar days for ICF) and forwards it to the DMH coordinator; and

    (c) The DMH coordinator reviews the referral and forwards it to the Utilization Management team at CDCR Headquarters.

**3) Referral of CDCR Inmate-Patients for Outpatient Psychological Testing:**
    a) The Primary Clinician will submit the following to the SME:
        i) Psychological Testing Referral form (Appendix A);
        ii) CDCR Form 7386: Mental Health Evaluation form, most recent;
        iii) CDCR Form 7388: Mental Health Treatment Plan; and
        iv) C-File Review form (Appendix B).
    b) Within one working week, the SME receiving the referral package will review the assessment referral, CDCR Form 7386, and consult with the Primary Clinician and determine what type of psychological assessment would be appropriate.

**4) Qualifications of the  Subject Matter Expert (SME):**
    a) General SME Requirements:
        i) Only licensed or supervised psychologists and interns with appropriate training and experience in psychological assessment with a forensic population shall access, administer, score or interpret psychological assessment instruments or protocols. Administration, scoring, and interpretation of psychological instruments shall be performed in a manner consistent with the operating manual for that instrument and the American Psychological Association (APA) Ethical Guidelines.  A psychologist who has not read or complied with this operating procedure shall not perform psychological assessments.
        ii) To insure adequate objectivity, clinicians will not conduct psychological assessments with inmate-patients with whom they are currently providing therapeutic services.
    b) In House SME versus Traveling SME:
        i) In House SME: Institution currently possesses well trained psychologist and the appropriate assessment materials and thus has the capacity to conduct its own psychological assessments.
        ii) Utilization Management assigned SME (i.e. traveling):  Institution lacks appropriate staffing and/or lacks the necessary testing materials in order to conduct its own assessments and will be assigned a SME by the Utilization Management team at CDCR headquarters.

**5) Assessment Referral Questions (may include the following examples, but are not limited to):**
    a) Clarify diagnosis;
    b) Assessment of possible neuropsychological impairment (attention, concentration, memory, processing ability, language, visual-spatial functioning, executive functioning);
    c) Identify the inmate-patient's coping skills and strengths and how the IDTT can capitalize on these in treatment;
    d) Assess level of Cognitive Functioning;
    e) Etiology (psychotic/organic/Axis II) of specific behavioral coping patterns (e.g., self injurious behaviors (SIBs) claimed suicidal ideation (SI) etc.);
    f) Assess for exaggeration or fabrication of symptoms;
    g) Assess to determine if the inmate-patient meets criteria for diagnoses of an underlying personality disorder;
    h) Differentiation between an Axis I condition versus an Axis II condition.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH**

**6) Psychological Testing:**

    a) The SME shall obtain informed consent from the inmate-patient prior to the commencement of testing. Limits of confidentiality and effective communication shall be assessed, discussed, and documented by the SME.

    b) Any inmate-patient questions about the testing process shall be addressed in a manner consistent with the standardized testing protocol for the instruments used and APA Ethical Guidelines. A copy of the informed consent shall be placed in the UHR, Mental Health section.

    c) If the SME determines the inmate-patient would benefit from a neuropsychological testing, the inmate-patient will be referred back to the Primary Clinician who will then complete a DMH referral.

    d) If the SME determines the need for an outpatient psychological testing, they have 30 working days to complete the assessment and write the report.

**7) Completion of Psychological Testing:**

    a) When testing is complete, verbal feedback may be given to the inmate-patient in a manner that is clinically therapeutic and relevant.

    b) The SME shall document a narrative interpretation of the results and submit a copy of the report to the referring Primary Clinician. At a minimum, the written report should include the information listed in Appendix C (Psychological Testing and Consultation Report Format).

    c) The SME shall provide feedback to the clinical staff of the referring program for the purposes of diagnosis, program placement, and treatment planning.

    d) The original copy of the written report is filed in the UHR under the section marked "Data Base."

    e) Completion of the testing will be tracked in the Mental Health Tracking System.

**8) Securing Testing Documents**

    a) The SME administering, scoring, and interpreting the instruments shall maintain the appropriate levels of confidentiality of materials and test results, in accordance with American Psychological Association (APA) Ethics Guidelines.

    b) Raw data from the testing (e.g. score sheets and protocols), along with a copy of the written interpretative report shall remain confidential and maintained separately in a locked file cabinet (see local LOP). In accordance with APA Ethical Guidelines, test records shall be maintained for a minimum of seven years.

**9) Oversight**

    a) All psychological testing conducted is subject to review at any time by the psychological assessment committee, the institution's Chief of Mental Health and/or the Utilization Management team at CDCR headquarters, to ensure clinical competency and compliance with this operating procedure, as well as to maintain compliance with ethical standards for psychological testing.

**APPENDIX A**
**REFERRAL FOR FOCUSED PSYCHOLOGICAL**
**TESTING AND CONSULTATION**

Inmate-Patient Name: _____    CDCR#:_____

Referral Date: _____    Program/Housing: _____

Referred by (Primary Clinician name): _____    Ext: _____

**Reason for Referral** (check all that apply)

_____ Differential Diagnosis              _____Symptom Validity                  _____Cognitive Functioning

_____ Neuropsychological Impairment (attention, concentration, memory, processing ability, language, visual-spatial functioning, executive functioning

_____ Etiology (psychotic/organic/characterological) of specific behavioral coping patterns (e.g. SIB)

_____ Other areas of concern directly related to patient care and specialized treatment planning needs (explain):

_____

**Please provide additional details that will clarify the referral question to be addressed by psychological testing (Note:** Referral questions should be specific and focused on how results of psychological assessment will lead to improved inmate-patient care and treatment planning.) :

_____

**Please describe results of any known previous psychological testing.** (Attach any available information/ reports to this referral form.): _____

_____

_____

**Prioritizing Referrals:**

_____ **Acute/Emergent** (Referrals from MHCB/MH-OHU - Testing requested for immediate treatment decisions)

_____ **Urgent** (Referrals from all programs - Testing requested for urgent patient care or treatment planning decisions)

_____ **Non-urgent/Routine** (Referrals from all programs)

**Patient's Anticipated Motivation/Cooperation with Testing:**     Good_____    Poor_____    Unknown_____

**Factors that may affect testing**:  (e.g. Current/Hx of Violence; Cultural Issues; Communication Problems; Current Litigation or Rule Violations, etc.)

**Include current Behavioral Alerts**: (e.g. Current S/I or H/I; IEX concerns, etc.)

**Attach Add-a-page with additional information if applicable**:

Revised 9/7/10

**APPENDIX B**
**CENTRAL-FILE REVIEW**

**DATE:**_____

**NAME:**_____**CDC #:**_____ **ARRIVAL DATE:**_____

**DOB/AGE:**_____**ETHNICITY:**_____

**COMMITMENT OFFENSE**

**CONTROLLING**

**NON-CONTROLLING**

**COUNTY OF OFFENSE:**

**CDCR TERM BEGAN:**

**LENGTH OF TERM/EPRD/MEPD:**

**PRIOR TERMS:**

**NUMBER OF STRIKES:**

**PAROLE VIOLATION?  Y/N**

**CLASSIFICATION SCORE:**

**GANG AFFILIATION:**

**RULE VIOLATIONS (PAST 5 YEARS):**

**R SUFFIX  YES/NO**

**POTENTIAL MDO  YES/NO**

**CRIMINAL HISTORY:  ADULT ARRESTS/CONVICTIONS**

**JUVENILE**

**ADDITIONAL INFORMATION (add pages as needed)**

APPENDIX C
Psychological Testing and Consultation Report Format

**Identification Data:**   Name; age; marital status; conviction; term; CDCR term began: referring program/clinician; current housing; other pertinent information

**Referral Question:**   Briefly explain reason for requesting psychodiagnostic assessment and specific issues to be addressed.

**Sources of Information:**

**Tests Administered:**

**Brief Psychosocial History:**   Suggested areas:  history/course of current psychiatric illness; medical; developmental; family; education; substance abuse; head injuries; suicide attempts/history of self-harm; criminal history; other relevant psychosocial history.

**Medications:**   Present medication and compliance; Past medications (if known); Is inmate-patient on a Keyhea (current or past)? If so, which category (DS; DO; GD) and what is the expiration date?

**Testing Observations and Conditions:**   Mental status; environmental conditions; communication barriers; If testing did not follow standardized procedures, explain how the testing deviated from the standardized procedures and what mitigating factors make the test still reliable; other relevant information

**Test Results:**

**Diagnosis (5 axes):**

**Summary/Conclusions and Recommendations:**

# EXHIBIT 2

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
Assistant Secretary
P.O. Box 942883
Sacramento, CA 94283-0001



February 4, 2011

Ms. Debbie Vorous
Deputy Attorney General
Department of Justice
1300 I Street
Sacramento, CA 94244-2550

Dear Ms. Vorous

Enclosed please find supplemental materials on the Extended Enhanced Outpatient
Program Care Plan and the Psychological Assessment Plan sections of Defendants'
Plan on the Intermediate Care Facility and Acute Inpatient Waitlists.

Sincerely,

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Enclosures

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

## INTRODUCTION

The California Department of Corrections and Rehabilitation (CDCR) designed an Extended Enhanced Outpatient Program (EOP) Care Plan (EECP) to provide treatment interventions targeted to the subgroup of EOP inmate-patients who exhibit serious *and* persistent mental illness, and whose level of functioning is insufficient to allow general population placement. These inmates may have received the benefit of licensed mental health services with no sustainable treatment effects; demonstrate episodic decompensation despite treatment; and, demonstrate significant limitations in overall daily living skills due to their mental health condition. Additionally, these inmate-patients frequently experience a cyclical pattern of placement in Mental Health Crisis Beds (MHCB) and/or Department of Mental Health (DMH) Intermediate Care Facility (ICF) beds without any long lasting effects. The focus of the EECP is to maintain and extend an inmate-patient's optimal level for functioning for as long as possible.

Initially, four CDCR institutions will provide treatment under the EECP: (1) California Medical Facility (CMF); (2) Salinas Valley State Prison (SVSP); (3) California State Prison, Corcoran (COR); and (4) Mule Creek State Prison (MCSP). Currently due to the hiring freeze, CDCR estimates that it will take up to two months from staff freeze resolution to hire and train civil service staff to begin delivering services. It is anticipated that CMF and SVSP will be the first to offer services to the three categories of inmate-patients according to their custody requirements. Services will begin as the EECP Treatment Team staff are recruited and trained. Currently, the inmates who will receive treatment under the EECP will be Enhanced Outpatient Program General Population (EOP-GP) inmates. Over the next five years, CDCR expects to expand the EECP to all non-reception institutions providing EOP services.

### EXTENDED ENHANCED OUTPATIENT PROGRAM CARE PLAN

The EECP utilizes a biological, behavioral and psychosocial model of services, which evaluates and addresses an inmate-patient's needs and behaviors by considering their medical, cognitive/learning, adaptive behavior and social abilities and needs. The EECP is tailored to promote an inmate-patient's self management of daily living skills and mental health needs at a sustainable individual optimal level of functioning. It focuses on monitoring symptoms, providing assistance with and training in daily living skills and medication management and provides structured opportunities for recreation and socialization. The treatment goal of the EECP is to maintain inmate-patients at their highest level of functioning. Positive reinforcement is utilized to promote and affirm an inmate-patient's efforts and progressive improvement in functioning.

Inmate-patients who suffer from chronic and persistent mental illness require care and treatment over a long period of time in a structured environment. The EECP is designed to provide this care by utilizing enhanced staffing and specialized treatment within a structured environment.

1

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

There are eight components of the EECP:

|       |                                                            |
|-------|------------------------------------------------------------|
| (I)   | Staffing;                                                  |
| (II)  | The EECP Inmate-Patient;                                   |
| (III) | Inmate-Patient Case Formulation;                           |
| (IV)  | Process for Review of Suggested Recommendations for EECP Services; |
| (V)   | The EECP Model;                                            |
| (VI)  | EECP Training;                                             |
| (VII) | EECP Quality Management; and                               |
| (VIII)| Monitoring EECP Inmate-Patient Progress.                  |

**I.    Staffing:**

CDCR has allocated staff for EECP treatment at CMF, SVSP, MCSP, and COR. The staff to inmate ratios for clinicians and Recreation Therapists range from 1:20 to 1:25. The staffing ratios, which are based on a seven-day-service algorithm, are:

| Extended EOP Classification | Class Code | MCSP | CMF | COR | SVSP |
|-----------------------------|------------|------|-----|-----|------|
| Clinical Psychologist       | 9283       | 4.50 | 3.00| 2.00| 1.00 |
| Social Worker               | 9872       |      |     | 2.50| 3.00 |
| Psychiatrist                | 9758       | 0.50 |     |     | 0.50 |
| Recreation Therapist        | 9286       | 2.50 | 1.50| 2.50| 2.50 |
| Office Tech                 | 1139       | 1.00 | 0.50| 1.00| 1.00 |

All four institutions have either hired or are in the process or hiring staff for the EECP. During the hiring freeze, institutions may use registry contract providers to the extent they are qualified.   Each institution's staff allocations serve up to 96 inmate-patients.

**II.    The EECP Inmate-Patient:**

  **A.    EECP Clinical Characteristics:**

In the community, symptoms associated with chronic and persistent mental illness correlate with the diagnosis of Schizophrenia and some affective disorders (DSM-IV Axis I).  This is also true for incarcerated patients.  Patients with chronic and persistent mental illness experience emotional deregulation, cognitive dysfunction and deficits in coping and daily living skills resulting in limited independent functioning.  Although there is an array of symptoms that may manifest based on unique individual characteristics, the following areas and type of symptoms may be experienced and/or demonstrated by the typical EECP inmate-patient:

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

■  Unresolved mental health symptoms related to **Axis I Diagnosis** of Schizophrenia and other Psychotic and Mood Disorders such as severe Depression w/out Psychotic features and Bi-Polar Disorder.  Other Axis I disorders may co-occur such as Anxiety.

■  On-going **negative symptoms** despite treatment of positive symptoms such as hallucinations, delusions and thought disorder.  Negative symptoms relate to difficulties with communication, known as 'alogia' (i.e. not having much to say); difficulties expressing emotions, or 'affective flattening' (i.e. lack of facial expression and emotional spontaneity, "blunted" or "flat" affect); difficulties with planning and doing activities, known as 'avolition' (i.e. problems with motivation and doing things on one's own, especially without structure); and difficulties with experiencing pleasure, known as 'anhedonia' (i.e. little experience of enjoyment).  When positive symptoms are present they are of low level and intensity.

■  Deficits in **cognitive functioning** such as processing and responding to information, attention, remembering and recall, and cognitive coordination of multiple pieces of information.  They exhibit "impoverished thinking" in that they withdraw socially, avoid contact with others and when they are forced to interact may have nothing to say.  They present apathetic (non responsive, non interested) and their motivation can be greatly decreased.  In some severe cases, a person can spend entire days doing nothing at all, not interacting with anyone and even neglecting basic hygiene.

■  Deficits in overall functioning and specifically in **Activities of Daily Living** (ADL) such as hygiene, dressing, showering, grooming, laundry, cell cleaning, canteen, following routines, making purchases, and communication.  They require significant structure and continuous support in order to function at their optimal level.  Similarly, due to their fragility and vulnerability, they require supervision for and protection from victimization.

Other characteristics and issues:

■  One of the most significant issues facing **people with serious mental illness** is **medication management**.  The complexity of the patient's symptomatology requires an on-going monitoring of their current medication regimen and on-going evaluations regarding adjunctive medications and/or additional medications.  In addition, teaching inmate-patients how their medication works, potential side effects, and how to be compliant with taking their medication as prescribed is an important skill.

■  Though inmate-patients with chronic residual mental health symptoms require support, guidance, and supervision while participating in therapeutic activities and daily living activities, they are not in need of a 24 hour in-patient care.

**B.    The EECP Inmate-Patient Clinical Indicators**:

In order to identify inmate-patients who need EECP services, there is a list of clinical indicators that corresponds to the clinical profile (presented above) of inmate-patients experiencing chronic mental health symptoms.  An inmate-patient would be considered for EECP services when meeting the following clinical indicators:

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

- Has received services at EOP level of care, and the prognosis for eventual transition to Correctional Clinical Case Management System level of care is poor.
- Has an Axis I persistent condition requiring treatment primarily for management of:

    negative symptoms;
    impoverished thinking;
    low level of continuous positive psychotic symptoms; and
    medication management.

- Demonstrates deficits in daily living activities and skills, and recreational and leisure activities.
- Presents a cyclical regressive pattern of functioning but optimal level of functioning is limited/poor.
- Currently, does not require Acute Psychiatric Program care.
- Currently, does not meet criteria for referral to ICF treatment.

    OR

    Is not recommended for referral to ICF treatment, because the IDTT determines inmate-patient is unlikely to benefit and reasons are clearly documented.

    OR

    The inmate-patient has been treated at the DMH ICF level-of-care and continues to display significant emotional and behavioral impairments.

- The inmate-patient is not in need of further diagnostic clarification.

### III.    Inmate-Patient Case Formulation.

#### A.    Sources of Referral of Inmates Who Meet Clinical Indicators:

Suggested referral of inmate-patients who meet the EECP clinical indicators may come from three separate sources:  (1)  Inmate-patients on the waitlist for high-custody ICF beds at SVSP; (2)  inmate-patients who are identified as part of the EOP IDTT evaluation process; and (3)  inmate-patients who are being transitioned back from a DMH program to CDCR.  These processes are discussed more fully below.

#### B.    Documentation of Rationale and Justification for Referral:

Regardless of source, the inmate-patient's Enhanced Outpatient Program General Population (EOP-GP) interdisciplinary treatment team makes the suggestion to refer an inmate-patient for EECP services who meets the clinical indicators for EECP.  The team must document the rationale and justifications for the suggested referral on the CDCR Mental Health Evaluation form 7386 Add-a-Page. The information from the case formulation will be used to establish the baseline criteria for the inmate-patient's EECP treatment goals.  The clinical rationale is expected to include the following information:

4

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

■ Five Axis Differential Diagnosis to include not only the current Global Assessment of Functioning (GAF) but also the highest GAF during the inmate-patient's incarceration.

■ Inmate-patient's coping skills and social functioning;

■ Inmate-patient's strengths and positive response attributes;

■ Behavioral Issues: aggression towards custody and clinical staff as well as other inmates, impulse control, suspiciousness, self harming behavior, exaggeration of symptoms, predatory tendencies, and extreme affect instability;

■ Motivation for treatment and level of insight and self awareness;

■ Feedback by all members of the multidisciplinary team regarding inmate-patient's therapeutic interests and level of participation;

■ Assessment of Activities of Daily Living (ADL) (showering, hygiene etc.)

■ Victimization issues;

■ Medical issues, status and alerts;

■ Developmental Disabilities Program and Disability Placement Program (DPP) designations and accommodation needs;

■ History of DMH treatment services; reason for referral; level of care; when referred; treatment results; after-care treatment recommendations;

■ Variables contributing to inmate-patient's decompensation;

■ Summary of inmate-patient's history of mental health prior to incarceration: i.e. psychiatric hospitalizations, outpatient mental health care, response to treatment and highest GAF;

■ Psychotropic Medication History: current medication regimen, compliance, and response; medication history; CDCR and DMH medication regimen differences and effects; *Keyhea* status; use of Clozaril;

■ Admissions to Medical Settings: admission history into an Outpatient Housing Unit (OHU) and a Mental Health Outpatient Housing Unit (MHOHU) or MHCB; and

■ Custody staff input regarding inmate-patient's classification, risk factors, needs, and strengths and weaknesses to function within an EOP level of care.

## IV.    Process for Review of Suggested Recommendations for EECP Services:

### A.    Accepting the Inmate-Patient for EECP Services:

As noted, there are three separate sources that can identify an inmate-patient who could benefit from EECP services. The process for accepting the inmate-patient for EECP services from each of these sources is as follows:

    1.    Inmates-patients currently on the ICF SVPP wait list who could benefit from the EECP services:

        a. CDCR institutions will continue to screen and identify inmate-patients currently on the ICF SVPP waitlist who meet EECP clinical indicators. This review will continue until EECP services are established.

5

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

b.      The clinical documentation will be sent to CDCR Headquarters for CDCR/DMH collaborate review.

c.      CDCR/DMH Headquarters staff will review and determine appropriateness of the inmate-patient's clinical case for EECP services.

d.      An inmate-patient who is identified as appropriate for EECP services will be referred to the CDCR institutions providing EECP services.

e.      The receiving EECP IDTT will document justification for a rescission to DMH.  However, inmate-patients will not be removed from the waitlist until housed at a designated EECP institution.

2.      Inmates who are identified as part of the EOP IDTT evaluation process:

a.      The  EOP-GP IDTT will complete and document the rationale for EECP services and forward for review to the EECP Coordinator/Supervisor.

b.      The EECP Care Plan Coordinator/Supervisor will review the clinical formulation/justification within 5 working days from receiving an EECP recommendation.  The receiving EECP may request additional information for the clinical formulation and baseline data from the sending EOP-GP if needed.

c.      The EECP Care Plan Coordinator/Supervisor must reach a final decision about the suitability of the inmate-patient for the EECP no later than 30 days from the day the recommendation was "Received".

d.      Upon acceptance of the recommendation for EECP the EECP Coordinator/Supervisor will consult with the EOP-GP primary clinician and determine an appropriate transfer. The consult/decision will be documented on CDCR Form 7230.

e.      The EECP Coordinator/Supervisor will consult with DCHCS HQ and Classification & Parole Representative (C&PR) and provide information in order to facilitate the inmate-patient's transfer to and placement at the EECP at that institution.  The consultation will be documented on a CDCR Form 7230.

f.      An inmate/patient will not be assigned to the EECP without the approval of the EECP Coordinator/Supervisor.

g.      If the inmate-patient is not suitable for the EECP, the inmate-patient remains at the EOP-GP level of care.  The EECP Coordinator/Supervisor will inform the primary referring clinician about the EECP screening decision via a consultative conference call and document the reason(s) on a CDCR Form 7230.

h.      If the inmate-patient is considered for EECP; then the EECP treatment plan will be developed on-site or at the institutions providing EECP services.

3.      Inmates being transitioned back from DMH to CDCR:

a.      DMH will make a recommendation for EECP placement on the discharge summary if indicated.

b.      The CDCR receiving institution EOP-GP IDTT will review DMH's transition suggestions and determine whether the inmate-patient is appropriate

6

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

for EECP services.  If the receiving institution provides EECP services, then they will proceed with the EECP clinical rational/documentation, placement and treatment plan development.

      c.     If the institution is not providing EECP services then the EOP-GP IDTT will provide the rational for EECP services in conjunction with DMH staffs' suggestion, to the designated EECP Coordinator/Supervisor for consideration.

      d.     If the inmate-patient is recommended for EECP, then the EECP treatment plan will be developed on-site or at the institution providing the EECP services.

      4.     Inappropriate Placement:  Because of the fragility of the EECP patient-inmates, behaviors such as calculative manipulation and victimization of other inmate-patients; disruptive behavior that interferes with other inmate-patients' treatment and the program schedule; violent acts towards others; taunting or preying upon others; sexually deviant behaviors; and disregard for the safety of others are not suitable for or conducive to the EECP specialized services.  Thus inmate-patients who exhibit the above type of behaviors most likely would not be appropriate for EECP placement.  An IDTT will convene and alternative placement considerations will be made.  Each case will be considered on an individual basis.  The IDTT decision for removing an inmate-patient from EECP will be documented on a CDCR 7386.

      **B.**     **EECP Clinical Recommendation Time Guidelines.**

The following represents a standard EECP recommendation timeline.  Institutions who provide EECP services will tailor these guidelines to their institutional process.

■ The receiving EECP Coordinator/Supervisor will review an EECP recommendation clinical justification, submitted by the EOP-GP, within 5 working days from receiving it.
■ The receiving EECP may request additional information for the clinical formulation and baseline data from the sending EOP-GP if needed.
■ The EECP Coordinator/Supervisor must reach a final decision about the suitability of the inmate-patient for the EECP no later than 30 calendar days from the day the referral was "received".
■ Staff will consult with custody, DCHCS Headquarters, C&PR, and DAI to facilitate placement and appropriate transfer if the inmate-patient requires placement at another institution.

**V.  EECP Model:**

There are ten tenets to the EECP Model:

**1.**    **Therapeutic environment**: The EECP provides a structured supportive environment in an out-patient setting that will resemble an environment of a community

7

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

where there is stability of relationships, consistency, and minimal unnecessary disruptions.

2.      **Treatment milieu**:    The EECP Multidisciplinary Team will consist of recreational therapists, nurses, social workers, psychologists, psychiatrists, and custody staff.    This mix of staff will differ from mainline EOP staffing by having a greater emphasis on recreational therapists and nurses working with custody staff.    Enhanced staffing is required to meet the extensive one-to-one attention.    An inmate-patient's functioning will require careful management of time and a slower pace in completing tasks; thus, daily routines will require more time and diligence.

3.      **Treatment goals**:  The EECP will involve the inmate-patient in activities of high interest, low demand and multiple modes of expression in order to keep the inmate-patient engaged and promote socialization, self satisfaction, and independence. Treatment is focused on maximizing an inmate-patient's strengths and positive attributes. A progressive involvement in as many activities as possible and as many activities as the patient can handle is the ultimate goal.    The focus of treatment is to promote socialization, self independence, and management of symptoms.

4.      **Therapeutic assignments**:  In order to ensure that the intensity of the therapeutic regimen is suitable to the inmate-patient's ability and tolerance level, the assignment to therapeutic activities will be progressive.  This progressive treatment regimen will aim at ensuring the inmate-patient's integration by providing the inmate-patient with a gradual introduction to staff, other inmates, and available therapeutic activities without overwhelming the inmate-patient.  Therapeutic activities will be based on the inmate-patient's high interest.  This progressive assignment  allows the EECP Team to evaluate and tailor activities and therapeutic interventions in the event that the inmate-patient is not initially responding/participating to the assigned therapeutic regiment.

5.      **Therapeutic activities**:  EECP therapeutic activities will emphasize but not be limited to daily living skills, physical fitness, health education, recreational therapy, mental health awareness, mental health symptom management, medical symptom management, problem solving, education, work, and leisure activities.  Therapeutic activities will predominantly be delivered on a 1:1 level, sometimes in small, but seldom in large, groups.  Several supplemental treatment curricula have also been evaluated and considered for conjunctive use.

6.      **Activities will be accompanied by motivating social reward incentives**:  The EECP's therapeutic model is based on the foundation of improving self management and self independence; therefore the model is skills focused.  To the extent that resources allow, the EECP will use a positive behavior modification system primarily incorporating social reinforcers to promote motivation and provide social affirmation. These reinforces may include activities such as:  movies, bingo, banquet, canteen, special announcements, and extra recreational time on selected activities.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**Extended Enhanced Outpatient Program Care Plan**

**7.    Level of programming**:  EECP therapeutic structured activities will average 13 hours per week (over a seven day period).  Therapeutic activities can be over-stimulating and tax an inmate-patient's poorly developed coping mechanisms, which may appropriately result in fewer structured activities.    An inmate-patient's individual treatment level of programming will be tailored to meet the individual needs and progressive engagement of the inmate-patient, always aiming at the maximum level possible.  Therefore, the EECP will provide inmate-patients a wide variety of activities to participate in that will be tailored to the inmate-patient's skills and abilities.

**8.    Assessment of skills and behaviors**:  The inmate-patient's symptoms, needs, skills, behaviors and interests and progress will be evaluated on an ongoing basis.  The EECP Team will establish a baseline, and assess and monitor the inmate-patient's treatment participation, progress and needs.  Baseline measures may include overall level of functioning, ADLs, medication compliance, behavioral and social issues, and prior response to treatment.

**9.    Maladaptive behaviors** will be assessed by utilizing Functional Behavioral Analysis (FBA), which is an evaluation of chronic behaviors.  FBA evaluates the triggers, antecedents, and presentation of a behavior and its consequences and its negative and/or positive reinforcers (i.e. maladaptive behavior takes place in order to avoid something, to get something, and/or to make something happen).

**10.    Mainstreaming**:  As an inmate-patient demonstrates progress and independence, the treatment team will assess whether the inmate-patient can function in more routine EOP-GP treatment plan.  Subsequently, based on the principle of "mainstreaming," the treatment team will provide the inmate-patient gradual and progressive transition opportunities to the EOP-GP level of care.

**VI.    EECP Training:**

Implementing the EECP requires different types of training for different purposes, as discussed below:

**First**, training will be conducted for CDCR clinical staff and DMH staff regarding EECP's purpose, identification of inmate-patients, clinical formulation, and specialized treatment services.  This training began on December 30, 2010, and will be completed by April 2011.

**Second**, EECP staff will be trained to enter therapeutic interactions directly into the MHTS.Net based on the clinical notes being placed in the Health Record.  Training on the MHTS.Net is provided by DCHCS Headquarters staff.  This has started, and will be completed for the CMF staff by April 2011 and SVSP, COR and MCSP by July 2011.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
DIVISION OF CORRECTIONAL HEALTH CARE SERVICES
**Extended Enhanced Outpatient Program Care Plan**

**Third,** EECP Clinical staff will be trained to use Functional Behavioral Analysis (FBA) assessment to examine inmate-patients' maladaptive behaviors. Trained DCHCS HQ staff in FBA will provide the training to the institutional staff. CMF EECP clinical staff will be trained no later than May 2011. SVSP, COR and MCSP EECP clinical staff will be trained no later than July 2011.

**Fourth,** there will be specialized training for all staff who will be working with patients at the EECP. This specialized training will be provided by DCHCS Headquarter staff in collaboration with Subject Matter Experts (staff) in the institutions. Training will be provided to the EECP multidisciplinary team: custody, medical, clinical, education, vocation, and ancillary staff. The training will focus on teaching how to best handle and manage the behaviors of an inmate-patient who is experiencing chronic mental health symptoms and limited overall functioning. CMF EECP staff will be trained no later than May 2011. SVSP, COR and MCSP EECP staff will be trained no later than July 2011. This training is under development and is anticipated to include but, not be limited to, the following:

- The collaboration of a Multidisciplinary Team's members/disciplines;
- Recognizing signs and symptoms of chronic residual mental health illness;
- Recognizing signs and symptoms of medical symptoms needing referral to medical and mental health staff;
- Learn how to best address and handle an inmate-patient's special needs such as: (1) how to effectively communicate with; (2) direct; (3) prompt; and (4) guide an inmate-patient in daily living routines;
- Learn how to promote a therapeutic environment;
- Learn how to promote problem solving with an inmate-patient and how to de-escalate an inmate-patient's behavior; and
- Learn how to best address safety and disciplinary issues considering the inmate-patient's therapeutic needs and limitations.

## VII.    **EECP Quality Management:**

The EECP will utilize an Off-Site and On-Site Quality Management (QM) and monitoring process to evaluate the referral process, screening practices, and quality and quantity of treatment care at each individual institution that provides EECP services. DCHCS is in the process of developing monitoring processes and tools. The following monitoring activities are being considered:

- DCHCS Headquarters would monitor the recommendations for placement in the EECP treatment plan from the DMH ICF waiting list made from both CDCR IDTT staff as well as DMH Headquarters' reviews. Both the appropriateness of the recommendation and outcome would be documented.
- When an inmate-patient is referred from an EOP to an EECP institution, DCHCS Headquarters would receive and review the EECP clinical justification and

10

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
DIVISION OF CORRECTIONAL HEALTH CARE SERVICES
**Extended Enhanced Outpatient Program Care Plan**

documentation before the inmate's case is screened by institutional EECP staff for inclusion. This monitoring/review would focus on the clinical appropriateness of the recommendation and the thoroughness of the clinical justification.

■ DCHCS Headquarters would conduct quarterly random audits of institutional EECP services to monitor the care and progress of individual inmate-patients at the EECP. This audit would review the treatment and care by examining treatment plans and treatment services based on the defined EECP indicators and service guidelines.

■ DCHCS would collect and monitor information about extraneous confounding variables that may impede the efficacy of the EECP referral process and EECP treatment care such as confounding classification issues (i.e. inmates with Developmental Disability (DD3 eligibility); Chronic, severe/terminal Illnesses; Dementia) and other system issues.

■ DCHCS would compile institutional and statewide data to monitor services and utilization of services at the EECP pending MHTS capability.

■ DCHCS HQs would develop an audit tool to evaluate institutional and statewide EECP services. This audit tool would be available to the institutions for self monitoring.

■ Information gathered by the audits would be submitted to the Institution's Mental Health Sub-committee (Q.M.).

## VIII. <u>Monitoring EECP Inmate-Patient Progress (Outcome Measures):</u>

The EECP will evaluate inmate-patient's progress by comparing the inmate-patient's progress to the baseline information provided by EOP-GP. The EECP's efficacy will be reflected in the progress of the individual inmate-patient as well as the progress of the collective inmate-patients in the program. This progress will be evaluated by a number of variables assessed at different and multiple intervals. Specific monitoring tools will be established.

# EXHIBIT 3

STATE OF CALIFORNIA—OFFICE OF ADMINISTRATIVE LAW

**NOTICE PUBLICATION/REGULATIONS SUBMISSION** (See instructions on reverse)

For use by Secretary of State only

STD. 400 (REV. 01-09)

| OAL FILE NUMBERS | NOTICE FILE NUMBER | REGULATORY ACTION NUMBER | EMERGENCY NUMBER |
|---|---|---|---|
| Z- | | 2009-0923-03P | |

ENDORSED FILED
IN THE OFFICE OF

2009 OCT 23 PM 2:58

*Debra Bowen*
DEBRA BOWEN
SECRETARY OF STATE

For use by Office of Administrative Law (OAL) only

2009 SEP 23 PM 4:30

OFFICE OF
ADMINISTRATIVE LAW

NOTICE                                    REGULATIONS

| AGENCY WITH RULEMAKING AUTHORITY | AGENCY FILE NUMBER (if any) |
|---|---|
| California Department of Corrections and Rehabilitation | 09-0082 |

## A. PUBLICATION OF NOTICE (Complete for publication in Notice Register)

| 1. SUBJECT OF NOTICE | TITLE(S) | FIRST SECTION AFFECTED | 2. REQUESTED PUBLICATION DATE |
|---|---|---|---|
| Mental Health/DMH ICF Treatment Pilot Program | 15 | 3999.8 | N/A |

| 3. NOTICE TYPE | 4. AGENCY CONTACT PERSON | TELEPHONE NUMBER | FAX NUMBER (Optional) |
|---|---|---|---|
| Notice re Proposed Regulatory Action / [X] Other | Rick Johnson HC-POP Unit | (916) 322-5765 | |

| OAL USE ONLY | ACTION ON PROPOSED NOTICE | | | NOTICE REGISTER NUMBER | PUBLICATION DATE |
|---|---|---|---|---|---|
| | ☐ Approved as Submitted | ☐ Approved as Modified | ☐ Disapproved/ Withdrawn | | |

## B. SUBMISSION OF REGULATIONS (Complete when submitting regulations)

| 1a. SUBJECT OF REGULATION(S) | 1b. ALL PREVIOUS RELATED OAL REGULATORY ACTION NUMBER(S) |
|---|---|
| Waiver of Custody Rules/DMH ICF Treatment Endorsements | None |

2. SPECIFY CALIFORNIA CODE OF REGULATIONS TITLE(S) AND SECTION(S) (Including title 26, if toxics related)

| SECTION(S) AFFECTED (List all section number(s) individually. Attach additional sheet if needed.) | ADOPT |
|---|---|
| | 3999.8 |
| | AMEND |
| TITLE(S) | |
| 15 | REPEAL |

TYPE OF FILING

- ☐ Regular Rulemaking (Gov. Code §11346)
- ☐ Resubmittal of disapproved or withdrawn nonemergency filing (Gov. Code §§11349.3, 11349.4)
- ☐ Emergency (Gov. Code, §11346.1(b))
- ☐ Certificate of Compliance: The agency officer named below certifies that this agency complied with the provisions of Gov. Code §§11346.2-11347.3 either before the emergency regulation was adopted or within the time period required by statute.
- ☐ Resubmittal of disapproved or withdrawn emergency filing (Gov. Code, §11346.1)
- ☐ Emergency Readopt (Gov. Code, §11346.1(h))
- ☐ File & Print
- [X] Other (Specify) Penal Code 5058.1 Pilot Program
- ☐ Changes Without Regulatory Effect (Cal. Code Regs., title 1, §100)
- [X] Print Only

ALL BEGINNING AND ENDING DATES OF AVAILABILITY OF MODIFIED REGULATIONS AND/OR MATERIAL ADDED TO THE RULEMAKING FILE (Cal. Code Regs. title 1, §44 and Gov. Code §11347.1)

EFFECTIVE DATE OF CHANGES (Gov. Code, §§ 11343.4, 11346.1; Cal. Code Regs., title 1, §100 )

- ☐ Effective 30th day after filing with Secretary of State
- [X] Effective on filing with Secretary of State
- ☐ $100 Changes Without Regulatory Effect
- ☐ Effective other (Specify)

CHECK IF THESE REGULATIONS REQUIRE NOTICE TO, OR REVIEW, CONSULTATION, APPROVAL OR CONCURRENCE BY, ANOTHER AGENCY OR ENTITY

- ☐ Department of Finance (Form STD. 399) (SAM §6660)
- ☐ Fair Political Practices Commission
- ☐ State Fire Marshal
- ☐ Other (Specify)

| CONTACT PERSON | TELEPHONE NUMBER | FAX NUMBER (Optional) | E-MAIL ADDRESS (Optional) |
|---|---|---|---|
| Tim Lockwood | (916) 255-5500 | | Tim.Lockwood@cdcr.ca.gov |

I certify that the attached copy of the regulation(s) is a true and correct copy of the regulation(s) identified on this form, that the information specified on this form is true and correct, and that I am the head of the agency taking this action, or a designee of the head of the agency, and am authorized to make this certification.

| SIGNATURE OF AGENCY HEAD OR DESIGNEE | DATE |
|---|---|
| *[signature]* | 9-21-09 |

TYPED NAME AND TITLE OF SIGNATORY
SCOTT KERNAN, Undersecretary Operations, CDCR

For use by Office of Administrative Law (OAL) only

ENDORSED APPROVED

OCT 23 2009

Office of Administrative Law

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date  :    July 16, 2009                    **INSTRUCTIONAL MEMORANDUM**

To    :    Associate Directors, Division of Adult Institutions
           Wardens
           Mental Health Chiefs

Subject:   **PILOT PROGRAM FOR INTERMEDIATE CARE FACILITIES AT ATASCADERO STATE
           HOSPITAL, CALIFORNIA MEDICAL FACILITY, AND SALINAS VALLEY STATE PRISON**

           <u>PURPOSE</u>

           This Instructional Memorandum announces the establishment and implementation of the
           California Department of Corrections and Rehabilitation (CDCR) pilot program for referring male
           inmate-patients who are identified as needing placement at a Department of Mental Health
           (DMH) Intermediate Care Facility (ICF), effective ~~(insert date here)~~. The DMH ICF programs
           are currently located at Atascadero State Hospital (ASH), Vacaville Psychiatric Program (VPP)
           at California Medical Facility (CMF), and Salinas Valley Psychiatric Program (SVPP) at Salinas
           Valley State Prison (SVSP). This memorandum does not impact the housing of inmate-patients
           in the ICF at Patton State Hospital.

           *October 23, 2009*

           The goal of this statewide pilot program is to arrive at a sustainable CDCR-DMH referral process
           that effectively provides for access to care to DMH ICF level of care, consistent with
           inmate-patient, staff, and public safety and security requirements, based on custody criteria
           developed specifically for DMH-ICF placement determination. Therefore, this pilot program is
           designed to facilitate:

           *per agency DMH 10-23-09*

           • *Timely court-ordered access to care.* Inmate-patients shall receive constitutionally
             required mental health care for a successful return to the Enhanced Outpatient Program
             (EOP) or Correctional Clinical Case Management System (CCCMS) levels of care, as
             clinically indicated within their respective institutions, and/or to return to society in
             general.
           • *Central review and placement oversight of all cases referred to DMH ICF level of care.*
             Male inmate-patients with security concerns that require ICF level of care shall be
             housed in the most appropriate DMH ICF program, consistent with safety and security
             requirements.
           • *Full utilization of beds available for CDCR inmate-patients referred to DMH ICF level of
             care.* There are a total of 664 ICF beds available for male CDCR inmate-patients.

           Please inform all concerned persons of this Instructional Memorandum.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 2


## BACKGROUND

On May 1, 2008, CDCR submitted the *Referral Strategy for ASH ICF* to the *Coleman* Special Master. This report included a long-term strategy to address systemic problems in the CDCR-DMH referral process, which will be carried out by this pilot program. The CDCR currently places designated inmates into ICF utilizing procedures outlined in the Intermediate Care/Non-Acute Services Memorandum of Understanding (MOU) between DMH and CDCR and previous instructional memoranda dated May 6, 2006, entitled "HOUSING POLICY FOR MALE INMATES WITH IDENTIFIED HOUSING CONCERNS WHO ARE APPROVED FOR PLACEMENT IN A DEPARTMENT OF MENTAL HEALTH TREATMENT PROGRAM AT THE INTERMEDIATE LEVEL OF CARE," and June 4, 2007, entitled "TRANSFER OF SECURITY HOUSING UNIT CASES TO DEPARTMENT OF MENTAL HEALTH INTERMEDIATE CARE FACILITIES." The California Code of Regulations (CCR), Title 15, sections 3377.1, Inmate Custody Designations; 3377.2, Criteria for Assignment of Close Custody; 3341.5, Segregated Program Housing Units; and 3375.2, Administrative Determinants may require additions and/or amendments in support of ICF placements at ASH, SVSP, and CMF. Specifically, the additions and/or amendments to Title 15 will pertain to the placement of those inmates who have housing concerns such as determinate or indeterminate Security Housing Unit (SHU) terms and close custody designations into dormitory settings at ASH, CMF, and SVSP for treatment in the ICF. This pilot program will allow the CDCR and DMH to evaluate the ICF custodial procedures and clinical protocols, and to implement any necessary changes during the pilot program period.

## PROGRAM COMPONENTS

This pilot program involves the following components:

   A. Identification and referral of inmate-patients that meet the MOU clinical criteria for ICF level of care;
   B. Submission and review of regular (non case-by-case) ICF referrals;
   C. Submission and review of case-by-case ICF referrals;
   D. DMH review;
   E. Case handling procedures;
   F. Transfer process; and
   G. Program discharges

## PROGRAM OVERVIEW

### A. Identification and Referral of Inmate-Patients that Meet the MOU Clinical Criteria for ICF Level of Care

The following process standardizes the clinical referral process of inmate-patients to DMH ICF.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 3

1. Interdisciplinary Treatment Teams (IDTT)

    a.  The institutions' IDTTs shall consider each inmate-patient in the Mental Health Services Delivery System (MHSDS) for referral to DMH ICF during all regularly scheduled IDTT meetings.  The IDTT shall complete CDCR Form 7388, Mental Health Treatment Plan, and the "IDTT Screening Checklist – Referral to DMH-ICF" (Attachment 1) to assess the appropriateness of a referral to DMH ICF.

    b.  When the IDTT determines that an inmate-patient meets the screening criteria for a referral to ICF and meets the DMH ICF MOU criteria, the inmate-patient's Primary Clinician shall be notified.

    c.  When the IDTT determines that an inmate-patient does not meet the screening criteria for a referral to ICF, this decision is documented on the Screening Checklist.

    d.  When the IDTT determines that an inmate-patient meets the screening criteria but is not referred, this decision is documented on the Screening Checklist and is submitted to the CDCR-DMH Coordinator.

2. Primary Clinician

    a.  When notified that an inmate-patient meets the criteria for referral to ICF, the Primary Clinician shall complete the approved DMH Referral Form (Attachment 2).

    b.  The Primary Clinician shall endeavor to obtain the inmate-patient's signature on CDCR 128-MH9, Transfer to DMH – Due Process Chrono.  If the inmate-patient refuses to sign the consent form, this information is forwarded to the CDCR-DMH Coordinator to schedule a *Vitek* (due process) hearing.

    c.  The Primary Clinician shall document the completion of CDCR 7388, Mental Health Treatment Plan, and the "IDTT Screening Checklist – Referral to DMH-ICF" forms for entry into the Mental Health Tracking System (MHTS).  The forms shall then be forwarded to the institutional CDCR-DMH Coordinator *on the same day of the IDTT.*

3. CDCR's DMH Coordinator

    a.  The CDCR-DMH Coordinator shall schedule a *Vitek* hearing if the inmate-patient refuses to sign the consent form.

    b.  The CDCR-DMH Coordinator shall maintain the DMH Referral Log Workbook in Excel (Attachment 3), which tracks, among other things, the date of approval by the Chief of Mental Health, date of referral, date of DMH acceptance or rejection, date of transfer, etc.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 4

The CDCR-DMH Coordinator shall also log each of the cases that meet screening criteria but are not referred in the DMH Referral Log Workbook.

c.  Consistent with monthly *Coleman* reporting requirements, the CDCR-DMH Coordinator shall submit a DMH Referral Log report, which is a printout of the spreadsheets in the DMH Referral Log Workbook, to the CDCR Statewide Mental Health Program every 5th day of each month.

## B. Submission and Review of Regular (non case-by-case) ICF Referrals

### 1. Referring Institution
*(Within five working days of identification by IDTT if inmate-patient consent is obtained, and within ten working days of identification if Vitek hearing is required, the CDCR-DMH Coordinator shall ensure completion of the DMH ICF referral.[1])*

Under this pilot program, the 30 adult male institutions shall submit *all* cases being referred for DMH ICF level of care to the Statewide Mental Health Program of the Division of Correctional Health Care Services (DCHCS) for placement recommendation, as follows:

a.  Within five working days of identification by IDTT if inmate-patient consent is obtained, and within ten working days of identification if *Vitek* hearing is required, the CDCR-DMH Coordinator shall ensure completion of the DMH ICF referral according to the "Department of Mental Health ICF/Non-Acute Referral Check List" (Attachment 4).  All original forms shall be forwarded to Health Records for placement in the Unit Health Record (UHR).

b.  If it has been clinically determined that an inmate serving a *determinate or indeterminate SHU term* requires placement in an ICF, the IDTT/ICC at the institution where the inmate is currently housed shall review the case for referral to either CMF-ICF or SVPP.  The IDTT/ICC must consider the ability of the inmate to safely program in an open dayroom and yard program environment.  The ICC shall:

   i)  Suspend the determinate SHU term or end the indeterminate SHU term due to mental health treatment needs effective the date of arrival at SVSP or CMF; and designate appropriate custody level upon arrival at SVSP or CMF based upon a management concern as stated in CCR, Title 15, section 3377.2 (b)(2);

OR

Leave the determinate or indeterminate SHU term and Max Custody in place through transfer where there are serious safety and/or security concerns.  The concerns are to be clearly articulated in the CDCR 128-G, Classification Chrono.

MHSDS Program Guide (2009 Revision)

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 5

      ii) Document whether the inmate meets double cell criteria based on CDCR policy.
      iii) Expedite the CDCR 128-G, Classification Chrono, to ensure its inclusion in the DMH referral packet.

      iv) Document any security concerns the committee may have as a result of the inmate's case factors.

c. *For unprocessed Reception Center (RC) referrals*, including new commitments and parole violators returned to custody, the referring mental health staff shall coordinate with the appropriate medical staff and make every effort to provide the Correctional Counselor (CC) with all the required medical documentation needed to expedite the completion of RC processing. Completed processing includes, but is not limited to:

- CDCR 128-C1, Reception Center Medical Clearance/Restriction Information Chrono;
- CDCR 128-MH1, Mental Health Screening Chrono;
- CDC 128-C, Medical-Psych-Dental Chrono;
- CDC 128-C2, Recommendation for Adaptive Support;
- CDC 1845, Disability Placement Program Verification (if necessary);
- Completed Institutional Staff Recommendation Summary (ISRS) and CDCR 839, Classification Score Sheet (for new commitments); and
- CDCR 816, Reception Center Readmission Summary, and CDCR 841, Readmission Score Sheet (for parole violators).

d. The Classification and Parole Representative (C&PR), RC CC III, or designee, shall ensure that the DMH ICF Placement Screening Sheet (Attachment 5) is completed, signed, and provided to the referring mental health clinician for attachment to the referral packet. A Placement Screening Sheet that is not signed by the C&PR or RC CC III will be deemed incomplete and will not be accepted. Headquarters staff may require additional documentation and information for certain cases, and therefore, it is imperative for the institution to identify a contact person on the DMH ICF Placement Screening Sheet, including telephone number with area code and extension. The DMH ICF Placement Screening Sheet shall also delineate the DMH-ICF program(s) for which the inmate-patient is eligible.

e. A pending CDC 115, Rules Violation Report, will not preclude an inmate-patient from being transferred into an appropriate DMH-ICF program within the established timelines. However, the sending institution shall be responsible for addressing the disposition of any pending CDC 115 violations.

f. The CDCR-DMH Coordinator shall forward the completed ICF referral packet to the Chief of Mental Health (or designee) for approval and signature.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 6

g.  The Chief of Mental Health, or designee, shall certify or deny the ICF referral within one working day.  The CDCR-DMH Coordinator shall log the date of the decision in the DMH Referral Log Workbook.

h.  If the referral is denied by the Chief of Mental Health (or designee), the CDCR-DMH Coordinator shall schedule a Coordinated Clinical Assessment Team (CCAT) case conference within five working days so that a disposition determination can be made. DMH's participation in this conference is optional.

i.  If the referral is approved by the Chief of Mental Health (or designee), the CDCR-DMH Coordinator shall, within one working day, transmit the completed ICF referral packet to:

>               California Department of Corrections and Rehabilitation
>               Division of Correctional Health Care Services
>               Statewide Mental Health Program
>               P.O. Box 942883
>               Sacramento, CA 94283-0001
>               ATTN: Mental Health Utilization Management Unit

The CDCR-DMH Coordinator shall log the date of transmittal in the DMH Referral Log Workbook.

2.  Mental Health Program Services (MHPS)
*(Once the referral is received at MHPS, the inmate-patient shall be transferred within 30 days, if accepted at a DMH hospital or psychiatric program.[2])*

a.  Once received, referral packets will be logged into a tracking system, which shall include referral dates, referral receipt dates, clinical review dates, custodial review dates, dates the referrals are sent to DMH or returned to the sending institution, admission dates, and discharge dates.

b.  *On the same day of receipt*, packets will be assigned to a clinician to be screened for the clinical appropriateness of the referral, based on the CDCR-DMH MOU clinical criteria for ICF level of care, and will be simultaneously forwarded to the Health Care Placement Oversight Program (HC-POP) for custodial placement review and recommendation.

c.  *Within three working days*, the clinician shall determine whether the case is an appropriate clinical referral.  If the clinician determines that the case is not an appropriate referral, the referring institution will be notified of the reason.

---

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 7

3. Health Care Placement Oversight Program
   *(Custodial review shall be completed within three working days of receipt for regular, non case-by-case ICF referrals.)*

HC-POP shall complete the custodial review in accordance with the newly developed DMH ICF Placement Screening Sheet. The new custody criteria, as detailed below, are designed to be inclusionary rather than exclusionary (see Attachment 6). The goal is to refer inmate-patients to the most appropriate ICF program with the lowest level of security possible based on their mental health acuity and custody case factors. Thus, the default institution is ASH rather than SVPP so that those inmates with the lowest custody needs are directed to ASH first, without compromising safety and security requirements. DMH shall review all referrals and the state hospitals/psychiatric programs will coordinate efforts for placement into the facility that best meets the inmate-patient's clinical need.

   a. *Atascadero State Hospital.* ASH ICF is a 256-bed inpatient psychiatric program operated by DMH to provide mental health services to inmate-patients under the jurisdiction of CDCR. ASH has all dormitory beds with some unlocked individual rooms in locked units with no internal gun coverage; yet, it has the most secure perimeter within the state hospital system. For purposes of this review, ASH will be considered a level II type placement based on the established custody criteria. Inmate-patients transferring to/from CDCR and ASH are pursuant to Penal Code, sections 2684 and 2685.

   HC-POP will refer CDCR inmates who are 18 years of age or older and that have a mental illness requiring ICF level of care to ASH, <u>unless</u> the inmate has:

   - Maximum custody due to threatening, assaultive, or inciting behavior;
   - A sentence of life without parole (LWOP);
   - S-suffix due to non-clinical reasons (clinical staff shall document inmate-patients' clearance for dorm housing if the S-suffix is affixed for clinical reasons);
   - Close A custody;
   - Committed in-custody homicide;
   - High notoriety/public interest; or
   - An active hold for an offense with potential sentence of:
     - LWOP,
     - Multiple Life Term,
     - 50 years or more,
     - Life Term, or
     - 15 years or more.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 8

b. *Vacaville Psychiatric Program – CMF-ICF Dorms.* VPP is an inpatient psychiatric program located inside CMF that is jointly operated by CDCR and DMH. VPP includes an 84-bed ICF dormitory.

HC-POP will refer CDCR inmates who are 18 years of age or older and that have a mental illness requiring ICF level of care to CMF-ICF *dorms* if ineligible for placement at ASH, <u>unless</u> the inmate has:

- Maximum custody due to threatening, assaultive, or inciting behavior, or;
- A LWOP sentence; or
- S-suffix due to non-clinical reasons (clinical staff shall document inmate-patients' clearance for dorm housing if the S-suffix is affixed for clinical reasons).

c. *Vacaville Psychiatric Program – CMF-ICF Cells.* VPP also includes a 30-bed high custody ICF located inside CMF. CMF is a Level III institution with an electrified fence.

HC-POP will refer CDCR inmates who are 18 years of age or older and that have a mental illness requiring ICF level of care to *CMF-ICF cells* if ineligible for placement at ASH or CMF-ICF *dorms*, <u>unless</u> the inmate has:

- A LWOP sentence (without approval from the Departmental Review Board (DRB)).

CMF-ICF *cells* may consider lower custody cases if: 1) the beds at ASH and CMF-ICF *dorms* are full, and 2) beds are available at CMF-ICF *cells*. Preference shall be given first to those that meet the case-by-case criteria for CMF-ICF *dorms*, and second to those that meet the criteria for ASH.

d. *Salinas Valley Psychiatric Program.* SVPP is a 244-bed inpatient psychiatric program located within SVSP, a Level IV institution, and is jointly operated by CDCR and DMH.

HC-POP will refer cases that are ineligible for placement at ASH or VPP to SVPP. These cases include, but are not limited to, inmate-patients with LWOP status. SVPP may consider lower custody cases if: 1) the beds at ASH and VPP are full, and 2) beds are available at SVPP. Preference shall be given first to those that meet the case-by-case criteria for CMF-ICF *dorms*, and second to those that meet the criteria for ASH.

e. HC-POP staff will notify the MHPS of HC-POP's placement recommendation for tracking purposes and final disposition of the referral packet.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 9

4. Mental Health Program Services

    a. MHPS staff will either return the referral to the sending institution or submit the referral to DMH based on the results of the CDCR central oversight clinical and custodial review process.

**C. Submission and Review of Case-By-Case ICF Referrals**
    *(Case-by-case evaluations shall be completed within 15 working days of receipt.)*

1. Referring Institution

The processes detailed in section A though B.2. above shall remain the same with the following addition:

    a. *Within five working days of identification by IDTT*, the CDCR-DMH Coordinator shall work with the C&PR to ensure completion of the DMH ICF referral packet. The C&PR/ RC CC III shall <u>immediately</u> schedule a case-by-case referral for Institutional Classification Committee (ICC) following the required 72-hour notice period. *Vitek* hearings shall be scheduled at the same time, if necessary.

2. Health Care Placement Oversight Program

HC-POP shall review those cases that have been identified as needing an expanded case-by-case evaluation. Case-by-case evaluations require ICC review prior to placement at ASH or CMF-ICF dorms. There will be no case-by-case evaluations for CMF-ICF cells or SVPP. Case-by-case criteria for ASH and CMF-ICF dorms are as follows (see Attachment 7, Case-By-Case Placement Guidelines):

    *Atascadero State Hospital*

- Maximum custody (based on non-disciplinary reasons)
- Committed SHU-able offense(s) per the CCR, Title 15, section 3341.5 (9), provided that the SHU Minimum Eligible Release Date (MERD) has been expired for 12 to 18 months (depending on offense)
- Level IV placement scores
- Sensitive Needs Yard (SNY) or safety concerns
- Close B custody

    *CMF-ICF Dorms*

- Maximum custody (based on non-disciplinary reasons)

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 10

- Committed SHU-able offense(s) per the CCR, Title 15, section 3341.5 (9), provided that the SHU MERD has been expired for at least 12 months
- Level IV placement scores
- SNY or safety concerns
- Close A custody

The following steps shall be followed for case-by-case evaluations:

a. Placement recommendations shall be based on information available from the DMH ICF Placement Screening Sheet at the time of review. HC-POP staff may require additional documentation and information for certain cases. Because the referrals are time-sensitive, it is imperative that the institution's C&PR/RC CC III provide the requested information as soon as possible.

b. HC-POP staff will forward a CDC 128-B, Placement Recommendation Chrono, to the referring institution's C&PR/RC CC III, or designee, outlining the reason for the case-by-case placement recommendation. Should the institution find case factors that would preclude the placement recommendation, the C&PR/RC CC III shall immediately contact HC-POP's designated DMH central oversight CC III for a case conference and resolution. Any new or additional case factor information shall be provided to HC-POP's CC III.

c. For cases not resolved at the CC III level, the HC-POP Chief will case conference with the Division of Adult Institutions (DAI), Classification Services Unit (CSU) Chief and, if necessary, the appropriate DAI Associate Director for placement resolution. If the case cannot be resolved at the Chief level, the case will proceed to ICC per DAI's direction.

d. Institution staff will conduct ICC classification action based on the DAI placement direction. The classification committee shall document the classification action; the HC-POP placement recommendation; and, if necessary, the basis for not following the HC-POP placement recommendation on the ICC CDC 128-G, Classification Chrono. A copy of the ICC CDC 128-G, Classification Chrono, shall be immediately sent to the HC-POP Chief by the institutional C&PR/RC CC III.

e. The HC-POP Chief shall document and track all cases when the institution/DAI do not refer the inmate to the DMH ICF facility as recommended on the final HC-POP CDCR 128-B, Placement Recommendation Chrono. HC-POP will review the cases for any patterns and recommend any administrative remedies as appropriate.

f. HC-POP staff will notify MHPS of the placement determination for tracking and final disposition of the referral packet. If applicable, a copy of the HC-POP CDC 128-B, Placement Recommendation Chrono, and the ICC CDC 128-G, Classification Chrono, shall be included with the referral packet.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 11

### 3. Mental Health Program Services

    a. MHPS staff will either return the referral to the sending institution or submit the referral to DMH based on the results of the CDCR central oversight clinical and custodial review process.

### D. DMH Review

1. In accordance with existing policy, DMH ICF clinical staff shall review the CDCR DMH ICF referral packets and determine if the referral meets the ICF MOU clinical criteria *within three working days of receipt*.

2. If the referral is rejected by DMH staff, a CCAT conference is convened and a disposition determination is made.

### E. Case Handling Procedures

Upon acceptance into DMH ICF, the inmate-patient will be referred to the CSR for endorsement and scheduled for transfer to ASH, CMF, or SVSP. The C&PR at California Men's Colony-East (CMC-E), CMF, and SVSP shall coordinate with the C&PR at the sending institution and contact the CSU to request a teletype authorization for psych and return, when immediate program openings occur.

### 1. Inmate-Patients Requiring SNY Housing

    a. The receiving institution's C&PR at CMF and SVSP shall review the DMH ICF Placement Screening Sheet to ensure the inmate-patient is appropriately housed commensurate with his safety/security needs. The receiving institution shall conduct an ICC/IDTT to determine the level of safety precautions needed for the inmate-patient to facilitate his participation in the ICF program at their facility.

### 2. Inmate-Patients with Close Custody

    a. If an inmate-patient with Close custody is accepted at CMF-ICF dorms, a telephonic case review shall be conducted between the sending warden (or designee) and the CMF warden (or designee) prior to transport of the inmate. All Close custody inmates received at CMF-ICF dorms shall be seen by ICC for follow-up to the telephonic case conference previously held.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 12

b. Upon arrival at CMF or SVSP, the receiving institution's ICC/IDTT shall evaluate whether the inmate-patient will retain Close custody based on management concerns and assign an appropriate level of custody based on that evaluation.

3. Inmate-Patients with an Active SHU Term

a. In cases where an inmate arrives with an active SHU term, he will be eligible only to participate in Phase One of the ICF program until such time as the ICC/IDTT reviews the case to evaluate risk factors relative to safety and security, and acts to address the SHU status. For inmates with a SHU term, Program Phase One requires the inmate to be housed in a single cell and be escorted in restraints with enhanced security precautions and limited movement until assessments of the inmate's compliance with medications and therapy can be fully evaluated. This phase can last from 30 to 120 days. Upon clinical evaluation, IDTT may submit a CDCR 128-C, Medical-Psych-Dental Chrono, to ICC for further review and evaluation for potential transition through Phases II and III, commensurate with the degree of successful participation in mental health therapy and adaptation to dormitory living.

4. Inmate-Patient Housing Assignment

a. The receiving institution's ICC/IDTT shall address the inmate-patient's status relative to double cell, single cell, or dorm housing. Inmates who have an S-suffix for non-clinical reasons shall be housed in a cell and shall not have a celimate regardless of their custody level.

**F. Transfer Process**

*Transport must be completed within 72-hours of bed assignment or notification by the state hospital.* Established policies and procedures for the CDCR transfer process, including timeframes, shall be applied to cases upon acceptance into a DMH-ICF program.

**G. Program Discharges**

1. Inmate-patients discharged from DMH-ICF will continue to be processed in accordance with the existing "Psych and Return" policy and the current MOU.

2. *For inmate-patients discharged from VPP and SVPP*, the following shall also occur:

a. Upon receipt of the CDCR 128-MH3, Mental Health Placement Chrono, stating that the inmate-patient is to be discharged from the program, the CC shall complete a discharge file review; CDCR 128-B, General Chrono; and the DMH Discharge Review Summary.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 13

b. The CDCR 128-MH3 and CDCR 128-B are forwarded to the CMF or SVSP C&PR who will determine if the inmate-patient is able to return to the sending institution based upon his current MHSDS level of care and the inmate-patient's case factors. If so, the sending institution's C&PR/RC CC III will be notified and arrangements will be made to transfer the inmate back to the sending institution *within three working days*.

c. If the inmate-patient is unable to return to the sending or hub institution, the CC shall issue the inmate-patient a CDCR 128-B1, Notice of Classification Hearing, and schedule him for the next available classification hearing. The classification committee shall review the case factors, make placement recommendations, and refer the case to a Classification Staff Representative (CSR) for transfer/placement endorsement.

d. Once discharged, inmates shall be moved to appropriate alternate housing, based on case factors, outside the ICF to make bed space available for incoming ICF inmate-patients.

e. SNY or SHU inmates who have been discharged from the ICF program will not normally be retained within the program's housing unit. The ICC/IDTT at CMF or SVSP shall determine whether the inmate will be housed in the Administrative Segregation Unit or in the general population pending transfer based upon his case factors. Additionally, the ICC/IDTT shall address the following:

  - Re-impose a determinate SHU term or reassess an indeterminate SHU term, clearly articulating the reason for returning the inmate to a SHU. Validated gang members or associates, active or inactive, who were received from SHU shall have their indeterminate SHU term reassessed.
    **OR**
  - Refer the case to a CSR for endorsement to an appropriate facility based upon the inmate's case factors and treatment needs.
    **OR**
  - If during ICC/IDTT, staff notes the inmate is eligible for an inactive gang status review, as outlined in CCR, Title 15, section 3378 (e), the committee shall note this fact in the CDCR 128-G, Classification Chrono. The inmate will be transferred back to the SHU facility from which he came and the appropriate staff at the assigned institution will complete the inactive gang status review.

f. The Discharge Review Summary shall be filed in the UHR prior to transfer of the inmate.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 14


STATEMENT AS TO THE DURATION OF THE PILOT PROGRAM

*October 23, 2009*

This pilot program shall remain in effect for a two-year period beginning ~~(insert date here)~~ through ~~(insert date here)~~. At the end of this two-year period, the pilot program will lapse by operation of law, or will be promulgated through the Administrative Procedure Act.

*October 23, 2011*

*DMc 10·23·09*

In conjunction with DMH and DAI, an ongoing evaluation of this pilot program will be conducted by HC-POP and the Mental Health Program under the DCHCS to ensure timely *court-ordered* access to care and central placement oversight is facilitated for inmate-patients requiring ICF level of care. The evaluation will also determine whether or not CDCR is fully utilizing the beds available for CDCR inmate-patients at ASH, VPP, and SVPP. A progress report will be provided to Executive Staff every six months that identifies any obstacles or issues with the pilot program and any recommended changes. It is intended that the pilot program will be adjusted throughout the two-year period, as necessary, until the goal is met.

PILOT PROGRAM REQUIREMENTS

The ICF pilot program for ASH, CMF, and SVPP is operating as a pilot program pursuant to Penal Code section 5058.1. The goal of this statewide pilot program is to arrive at a sustainable CDCR-DMH referral process that effectively provides for access to care to DMH ICF level of care, consistent with inmate-patient, staff, and public safety and security requirements, based on custody criteria developed specifically for DMH-ICF placement determination.

PILOT PROGRAM LOCATIONS

This pilot program shall be implemented at all CDCR adult male institutions that may refer an inmate-patient to DMH ICF at ASH, VPP, and SVPP. Additional CDCR institutions may be added, if needed, at the discretion of the Secretary and within the limits established in Penal Code section 5058.1.

Associate Directors, Division of Adult Institutions
Wardens
Mental Health Chiefs
Page 15

Inquiries regarding this pilot program should be directed as follows:

| Custody questions–DAI | Eric Arnold | Chief, Classification Services Unit | (916) 323-3660 | Eric.Arnold@cdcr.ca.gov |
|---|---|---|---|---|
| Placement questions–HC-POP | Rick Johnson | Associate Warden | (916) 322-5765 | Rick.Johnson@cdcr.ca.gov |
| Clinical questions–MH Program | Lucinda McGill | Nurse Consultant III | (916) 216-6955 | Lucinda.McGill@cdcr.ca.gov |

SUZAN L. HUBBARD
Director
Division of Adult Institutions

SHARON AUNGST
Chief Deputy Secretary
Division of Correctional Health Care Services

Attachments

cc: Scott Kernan
    Terri McDonald
    George Giurbino
    Timothy Lockwood
    Eric Arnold

Cindy Radavsky
Rollin Ives
Dennis Beaty
Health Care Managers
Nola Grannis

**INTERDISCIPLINARY TREATMENT TEAM (IDTT) - SCREENING CHECKLIST**
**REFERRAL TO DEPARTMENT OF MENTAL HEALTH - INTERMEDIATE CARE FACILITY**

The Interdisciplinary Treatment Team (IDTT) Screening Checklist is used to assess patient behaviors, symptoms and potential benefit from a referral to DMH-ICF. The Screening Checklist and Current Treatment Plan, CDCR form 7388-MH shall be completed at **every** IDTT, and filed together in the inmate-patient's Unit Health Record – Mental Health section.

**Check applicable IDTT meeting:**
☐ Initial IDTT   ☐ Weekly IDTT   ☐ 30-day IDTT   ☐ 60-day IDTT   ☐ 90-day IDTT   ☐ 1-year IDTT   ☐ other IDTT-_____

**Date of last IDTT :** _____

Current LOC:_____   Total length of time at EOP(excluding MHCB admit) :_____   Parole Date(If Known) :_____

| Check Applicable Box | Meets **one** of the established screenings for potential referral from: MHCB, CCCMS, EOP (PSU, ASU-EOP) or RC to DMH-ICF: |
|---|---|
| ☐ UHR NOT AVAILABLE   ☐ ☆ Check the ☆ box if the document is unavailable for review in the UHR | |
| ☐ Y ☐ N   ☐ ☆ | As a result of the major mental disorder, the inmate-patient is unable to adequately function within the structure of the CDCR Enhanced Outpatient Program (EOP) Level of Care |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms. |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient would benefit from a comprehensive treatment program with an emphasis on skill (i.e. coping, daily living, medication compliance) development with increased programming and a structured treatment environment. |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient demonstrates chronic psychiatric symptoms (disturbed emotions, perceptions, thought processes, and/or impaired cognition) that have not responded sufficiently to at least 6 months of treatment to a degree that facilitates adequate levels of functioning. |
| ☐ Y ☐ N   ☐ ☆ | Inmate-patient has less than 50% overall cooperation/participation with programming and/or the treatment plan during the last 3 months (i.e., mental health issues substantially affect ability to actively participate in treatment, the inmate-patient is noncompliant with medication, etc...) |
| ☐ Y ☐ N   ☐ ☆ | For Custody: the inmate-patient has incurred three (3) or more Rules Violation Reports during the last 3 months. |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient needs a comprehensive assessment for diagnostic clarification (only available at ASH, PSH, and VPP). |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient needs initiation of a trial of Clozapine. |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient had three (3) or more admissions to a MHCB during the last six (6) months. (Include MHCB admissions if the inmate-patient paroled and returned during the last six (6) months.) |
| ☐ Y ☐ N   ☐ ☆ | The inmate-patient has been in a MHCB for ten (10) or more days for clinical issues, i.e. the inmate-patient is not yet stabilized. |
| ☐ Y ☐ N | Are any of the above screenings checked yes? |
| ☐ Y ☐ N | Does the inmate-patient meet criteria for DMH-ICF referral and MOU criteria for admission?  If so, refer to DHM-ICF MOU criteria for admission. |
| If inmate-patient met screening element(s) above for DMH-ICF referral, but was not referred, document clinical rationale for non-referral: | |

| INSTITUTION: | | IDTT DATE: | |
|---|---|---|---|
| NAME: | | CDC #: | DOB: |

**MENTAL HEALTH TREATMENT PLAN**
**CDCR 7388 (Rev. 06/09)**
Confidential Client / Patient Information
Page 1 of 1

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

## California Department of Corrections and Rehabilitation -Mental Health Program
### MOU CRITERIA FOR INTERMEDIATE CARE/NON-ACUTE ADMISSION (2008)

A.  Criteria for inpatient care in a DMH hospital or psychiatric program requires an Axis I major (severe) mental disorder with active symptoms and any one of the following:

1.  As a result of the major mental disorder, the inmate-patient is unable to adequately function within the structure of the CDCR Enhanced Outpatient Program (EOP) Level of Care.

2.  The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms.

3.  Neurological/neuropsychological consultation services are available at ASH, PSH, and VPP. This level of assessment is not available at SVPP.

4.  The inmate-patient requires an inpatient diagnostic evaluation.

5.  The inmate-patient would benefit from a comprehensive treatment program with an emphasis on skill (i.e. coping, daily living, medication compliance) development with increased programming and structured treatment environment.

6.  The patient's psychiatric medication history indicates that a clozapine trial may be useful.

7.  Inmate-patients (male only) who are deemed a significant assault risk have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner) or present a high escape risk, shall be referred to the SVPP ICF. CDCR refers to these inmate-patients as high custody I/Ps.

8.  The inmate-patient's GAF indicates behavior that is considerably influenced by psychotic symptoms; OR serious impairment in communication or judgment; OR inability to function in almost all areas.

9.  For SVPP only, the inmate-patient is medically appropriate as determined by the receiving Prison medical staff. The SVPP Clinical Assessment Team (CAT) will determine mental health suitability.

B.  In addition to a primarily Axis I disorder, admission to a DMH hospital or psychiatric program shall be considered when:

1.  The inmate-patient engages in ritualistic or repetitive self-injurious/suicidal behavior that has not responded to treatment in a CDCR facility. Without inpatient mental health treatment the inmate-patient is likely to develop serious medical complications or present a threat to his life.

2.  The inmate-patient is chronically suicidal and has had repeated admissions to a MHCB.

C.  Inmate-patient committed to DMH by the courts as being incompetent to stand trial per PC § 1370.

Inmate-patients who commit an offense while in CDCR, are referred to the District Attorney for prosecution, and are found by the court to be incompetent to stand trial per Penal Code § 1370 will first be considered for the SVPP. If there are no custodial or clinical reasons for admission to SVPP, they will then be considered for other DMH programs.

1.  Whenever the CDCR institution referring clinician is in doubt concerning the appropriateness of referring a particular inmate-patient, the referring clinician will call the Chief, Classification and Parole Representative (C&PR), or designee then if necessary will call the State Hospital's PC§ 2684 screening clinician or the psychiatric programs' admission and discharge coordinator (ADC) to clarify the adequacy of the referral before formally submitting the referral.

2.  When an inmate-patient is admitted to either a state hospital or psychiatric program as a PC 1370, the sending CDCR institution shall provide all the documentation that would be required if the inmate-patient were being admitted to DMH for ICF mental health care.

**California Department of Corrections and Rehabilitation -Mental Health Program**

INTERDISCIPLINARY TREATMENT TEAM –SCREENING CHECKLIST INSTRUCTION SHEET

*One tool shall be completed for each patient at every Interdisciplinary Treatment Team (IDTT) at all levels of care, including MHCB, CCCMS, EOP (PSU, ASU-EOP), or RC (when IDTT is being held in RC).*

➢ Check applicable: place a check in the box to indicate if it is the patient's initial, weekly, 30 day, 60 day, 90 day, 1-year or other time line IDTT, according to the level of care the patient is at and the IDTT requirement for that level of care. Be sure to specify if the IDTT is not a routine IDTT.

➢ Current LOC: Write on the line the current level of care the patient is assigned (CCCMS, EOP, MHCB).

➢ Total length of time at LOC: Write in how much time the patient has been at that level of care in total, include if the patient has transferred from one institution to another and maintained that level of care: Example: patient was at EOP level of care for 6 months at SQ and transferred to SOL EOP. He has now been at SOL for 3 months. His total length of time at EOP LOC is 9 months.

➢ Parole Date: Enter parole date if known

➢ Unit Health Record (UHR) not available: Check box if UHR is not available.

CHECK – This tool is intended to assist in screening patients for potential referral to an intermediate level of care facility. It is not intended to supersede clinical judgment. One or more yes answers may warrant consideration for a referral to ICF. If a decision is made by the IDTT to not refer the patient, the team shall document a clinical rationale for the non–referral at the bottom of the form.

➢ Questions:  Yes or no questions regarding the patient's behavior. The questions may require review of the patient's unit health record and/or C-file and are not limited to only the time the patient has been at the current location.

➢ If any of the questions are checked **yes** it indicates that the patient may be a good candidate for referral to ICF.

➢ MOU Criteria: The next step is to determine if the patient meets DMH-ICF MOU referral criteria. The MOU referral criterion has been provided for reference on page 2 of the screening checklist. Review the MOU criteria and check yes if the patient meets the criteria and check no if the patient does not meet the MOU criteria.

➢ Referral to DMH-ICF: This question is asking if the patient meets both clinical and MOU criteria for referral to DMH-ICF, and if so, is a referral going to be made, yes or no.

➢ APP Referral: This question is asking if the patient met above criteria, but was not referred to ICF, was the patient referred to an Acute Psychiatric Program instead.

➢ DOCUMENTATION FOR NON-REFERRAL: This area is to be used to document why a patient was not referred to DMH-ICF if they met clinical and MOU criteria for referral. *Be specific in the justification for the non-referral.*

➢ Institution:  Document full name of institution patient is housed.

➢ IDTT Date: Document date IDTT held.

➢ Name:  Document last and first name of patient.

➢ CDC#: Document CDC# of patient.

➢ DOB:  Document date of birth of patient.

## Department Of Mental Health  Referral Form
## ~ ~ ~ Intermediate Care/Non-Acute Program  ~ ~ ~

Referral for:    ☐ Atascadero State Hospital  (**ASH**)    ☐ Patton State Hospital (**PSH**)

☐ Vacaville Psychiatric Program (**VPP**)    ☐ Salinas Valley Psychiatric Program (**SVPP**)

Referring Prison: _____ Date: _____

Current Custody/Clinical Placement:    ☐ CCCMS    ☐ EOP    ☐ Ad-Seg EOP    ☐ PSU    ☐ MHCB    ☐ APP

---

Inmate Name: _____    CDC#: _____    Date of Birth: _____

DDP: _____    **Due Process:** ☐ Yes    ☐ No    Date: _____    Ethnicity: _____

***KEYHEA:** ☐ Yes ☐ No ☐ In Process (incl. supporting documentation!)   Date Initiated: _____   Date Expires: _____

Housing: _____    Education: (years) _____    GED: ☐ YES ☐ NO    Literate: ☐ YES ☐ NO

---

(Please Print)
Referring Clinician: _____    Ph _____    Pgr _____    Fax _____

Tx Psychiatrist:_____    Ph _____    Pgr _____    MH Secretary Ph _____

---

<u>Current Psychiatric Diagnosis:</u>    |    <u>Current Psych Medications</u>:  (name, dosage, freq, duration, target sxs)

Axis I    _____    _____

_____    _____

Axis II    _____    _____

Axis III   _____    _____

Axis IV   _____    _____

Axis V    _____    _____

---

<u>Reason For Referral:</u> (check all that apply and supply *detailed* narrative)

☐ Inadequate level of  functioning in EOP: _____

_____

_____

☐ Requires 24–hour  nursing care: _____

_____

☐ Requires neurological/neuropsychiatric/diagnostic testing: _____

_____

☐ Would benefit from focused skills development not currently available in EOP: _____

**Fax to 1) appropriate DMH facility and 2) Attn: Health Program Specialist, Health Care Services Division, at 916-322-2838**

☐ Clozapine trial: _____

---

**Current Mental Status Exam:**

Appearance: ☐ WNL _____

Behavior: ☐ WNL _____

Speech: ☐ WNL _____

Mood: ☐ WNL _____

Affect: ☐ WNL _____

Sleep: ☐ WNL _____    Appetite: ☐ WNL _____

Cognition:      1) Fund of information: ☐ WNL _____

                2) Intellectual Functions: ☐ WNL _____

                3) Organization of Thought: ☐ WNL _____

                4) Association of Thought: ☐ WNL _____

                5) Reality Contact: ☐ WNL _____

                6) Thought Quality: ☐ WNL _____

Perception Disturbances (Hallucinations): ☐ None _____

Thought Content (Delusions): ☐ None _____

Sensorium (Orient'n, Mem, Attent'n, Concent'n): ☐ WNL _____

Insight & Judgment: ☐ WNL _____

Interview Attitude: ☐ WNL _____

Reliability (Historian): ☐ Good ☐ Fair ☐ Poor _____

*Suicidal and Homicidal Ideation*: SEE BELOW·

What are desired <u>Treatment Outcome Expectations?</u> (be very specific)

_____

_____

_____

Fax to 1) appropriate DMH facility and 2) Attn: Health Program Specialist, Health Care Services Division, at 916-322-2838

April, 2006                          Page 2 of 3                    Intermediate Care Program

History of Present Illness and Past Psychiatric History:     (Must Fill Out Completely)

Hx and Recent Suicidal or Axis I related Ritualistic or Repetitive Self-Injurious Behaviors: _____

_____

_____

_____

Hx and Current **Violence and Behavioral Alerts:**  _____

_____

_____

_____

Hx and Current **Substance Abuse:** _____

_____

_____

Hx and Current **Psychiatric Treatment / MHCB / Hospitalization:** _____

_____

_____

_____

_____

Hx and current **Medication Compliance** (Document blood level verification of compliance): _____

_____

_____

**CDC Referring Clinician:** Comments Regarding *Clinical Criteria / Factors / Signs / Symptoms* for DMH Placement Consideration

_____

_____

_____

_____

_____

_____

Referring Clinician Signature: _____     Date : _____

Fax to 1) appropriate DMH facility and 2) Attn: Health Program Specialist, Health Care Services Division, at 916-322-2838

April, 2006                                    Page 3 of 3                          Intermediate Care Program

ATTACHMENT 3

Institution _____

Date _____

# Department of Mental Health Referral Log

This log is for *referrals* for the month. Keeping a running account is acceptable but the Date Referred to DMH should be for the current month.

| Name | CDCR # | Current Housing | Level of Care (LOC) Needed | Date LOC Identified | Date Approved | Date Referred to DMH | DMH Institution | Accept or Reject | Reason for Rejection | Date of Accept/Rej | Date of CCAT | Bed Assign Date# | Date of Endt or Author | Transfer Date |
|------|--------|-----------------|----------------------------|---------------------|---------------|----------------------|-----------------|------------------|----------------------|--------------------|--------------|------------------|------------------------|---------------|
| | | Current housing level at CDCR institution, not housing needed | DMH Level of Care (Acute, ICF) | Committee Date where agreed LOC needed | Date Referral Approved by Chief of Mental Health or Designee | Date Packet left institution | A separate line for each DMH institution referred to | Status: Accept or Reject | If Rejected-Reason | This is date of DMH Acceptance or Rejection | If Rejected date CCAT conducted | Date DMH assigns bed number as well as the bed number if available | Date inmate endorsed or authorized to be transferred to DMH facility | Actual Transfer Date |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

Please fax to Sharon Riegel, HPSII, Mental Health Program, Division of Correctional Health Care Services, at (916) 928-7653, by the 5th day of each month.

Institution: _____

Department of Mental Health Referral Log

**INMATE-PATIENTS NOT REFERRED**

Date: _____

This log is for patients who met ICF screening checklist criteria but were *not* referred. This monthly report must be submitted to MH HQ by the 5th day of each month.

| Name | CDCR # | Current Housing | LOC | Criteria number(s) | IDTT DATE | Reason for Non-Referral |
|------|--------|-----------------|-----|--------------------|-----------|-------------------------|
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |
|      |        |                 |     |                    |           |                         |

The following column header descriptions appear above the table: Current housing level at CDCR institution, not housing needed; Current Level of Care; Criteria On Screening Checklist Met (numbers); IDTT Committee Date; Reason for Non-Referral.

ATTACHMENT 4
April, 2006

# Department of Mental Health ICF/Non-Acute Referral Check List

*~ For use first by the CDC sending institution, then the DMH receiving facility ~*

| | |
|---|---|
| Inmate's Name: | |
| CDC No: | |
| Referring CDC Institution: | |
| DMH Facility: | |

This checklist is to be utilized by a CDC institution when compiling a referral packet to DMH. In order for this process to be the most efficient and expeditious, the referring CDC institution, before sending to DMH, must include ALL applicable items. **Incomplete packets are unacceptable.** The process of tracking down missing items wastes valuable clinical and administrative time and resources, *and*, most importantly, it delays the patient getting to the needed level-of-care. DMH should never have to check the "needed" column because a required document did not arrive in the referral packet. To ensure that referral packets are completed before sending, a CDC clinical supervisor or manager **shall** co-sign along with the referring clinician, certifying that the packet is complete. This checklist, with the two required signatures, is then sent to the appropriate DMH facility as part of the referral packet.

N/A = Not Applicable

| | **Required Information: Clinical** | Included √ | N/A √ | Needed √ | Comments: |
|---|---|---|---|---|---|
| 1 | Referral Form for ICF/Non-Acute | | | | |
| 2 | Transfer Medical Summary **or** History and Physical – (must be within 30 days of referral) **H&P is Required for SVPP** | | | | |
| 3 | Current Treatment Plan | | | | |
| 4 | Due Process – documentation (chrono) or written consent | | | | |
| 5 | Pharmacy Profile (computer printout) | | | | |
| 6 | Keyhea Order - or documentation supporting obtainment of a Keyhea Order *(CRITICAL)* | | | | |
| 7 | Interdisciplinary Progress Notes – for the past 15 days plus most recent psychiatrist note (RC's may have less for new arrivals) | | | | |
| 8 | Tuberculosis Chrono | | | | |
| 9 | Suicide Risk Assessment – most recent | | | | |
| 10 | This completed checklist form w/ dual sig's | | | | |
| | **Required Information: Central File** | Included √ | N/A √ | Needed √ | Comments: |
| 11 | Custody Case Factor Sheet for DMH Placement | | | | |
| 12 | Abstract of Judgement (State Hospital only) | | | | |
| 13 | Legal Status Summary (State Hospital only) | | | | |
| 14 | Chrono History (State Hospital only) | | | | |

| CDC Referring Clinician: | Print Name & Title: | | Phone number: | |
|---|---|---|---|---|
| | Signature: | | Pager number: | |
| Supervisor or Manager: | Signature Certification: | | Date sent: ☐ Fax   ☐ Overnight Mail   ☐ Both | |
| Referral Coordinator | Print Name & Title: | | Phone number: | |
| | | | Pager number: | |
| Date Received by **DMH**: | | Date Completed: | | |
| Reviewed by: (Coordinator Signature) | | Comments: | | |

# Department of Mental Health Intermediate Care Facility
## Placement Screening Sheet

| Number: | Name: | | | | | | Release Date: ☐ RRD ☐ PRRD ☐ EPRD ☐ MEPD ☐ LWOP |
|---|---|---|---|---|---|---|---|

| te last received CDCR: | County of Commitment: | Length of Term or PV term: | PV Charge(s) (If applicable): |
|---|---|---|---|

| Offense(s): | | DOB: |
|---|---|---|

| Custody/Last Custody (If RC/PV): | | Single Cell: ☐ No | | High Notoriety/ ☐ No |
|---|---|---|---|---|

(S-Suffix)  ☐ Yes  Based On:   High Notoriety/Public Interest: ☐ No ☐ Yes

| Placement Score: | Level: | Level IV  180 ☐ 270 ☐ | Criteria Code: | SNY Placement: ☐ No ☐ Yes  Based On: |
|---|---|---|---|---|

| ASU: | ☐ No ☐ Yes  Basis for Placement: |
|---|---|

| SHU/PSU: ☐ No ☐ Yes  Basis for Placement: | Current MERD: |
|---|---|

| Enemies: ☐ None Noted  ☐ See 812  ☐ See 812-C | List enemy locations: |
|---|---|

Date of Last Review (Must be w/in 30 days):

| Gang Affiliation: ☐ No ☐ Yes  List: | Confidential File: ☐ Clear ☐ Noted | Arson History: ☐ No ☐ Yes  Details: |
|---|---|---|

| Sex Offense History: ☐ No ☐ Yes  Details: | Escape History: ☐ No ☐ Yes  Details: |
|---|---|

**Pending Disciplinary(s):**

*Brief Disciplinary History* (list violent, assaultive, pressuring behavior in last 18 mos., including SHU terms and expired MERDS):

| DDP Code: | DPP: ☐ No ☐ Yes  Code: | CDC 1845: ☐ No ☐ Yes | Impacts Placement: ☐ No ☐ Yes Explain: |
|---|---|---|---|

| MHSDS Level of Care: | Medical Status: |
|---|---|

| Holds, Warrants or Detainers: ☐ No ☐ Yes:  Pending Charges: |
|---|

| Comments: |
|---|

**Preclusions:**

☐ No Preclusions  ☐ Max custody due to threatening, assaultive, or inciting behavior  ☐ LWOP  ☐ S-Suffix due to non-clinical reasons  ☐ Close A Custody  ☐ Committed in-custody homicide  ☐ High Notoriety/ Public Interest  ☐ Active hold for an offense with potential sentence of: LWOP, multiple Life Term, 50 years or more, Life Term, or 15 years or more

*Refer for Case-by-Case Evaluation:* ☐ No  ☐ Yes

*Based On:* ☐ Max Custody (non-disciplinary reason)  ☐ Committed SHU-able offense(s) per CCR, § 3341.5 (9)  ☐ Level IV placement score  ☐ SNY/Safety Concerns  ☐ Close Custody ☐ A or ☐ B

*Refer to DMH Program at (Indicate lowest appropriate placement):*

☐ ASH  ☐ CMF/VPP (dorm)  ☐ CMF/VPP (cell)  ☐ SVSP/SVPP  ☐ PSH

| ...me/Title: | Date: | Referring Inst: |
|---|---|---|

| Reviewed By/Title (C&PR/CCIII signature required): | Date: | Telephone Contact # |
|---|---|---|

# DMH-ICF CUSTODY CRITERIA FOR ICF PILOT PROJECT

| Start | ASH | CMF-ICF *Dorms* | CMF-ICF *Cells* | SVPP |
|---|---|---|---|---|
| CDOR inmate who is 18 years of age or older has a mental illness that requires ICF level of care | **Refer case to ASH, unless:** | **Refer case to CMF-ICF Dorms if ineligible for placement at ASH, unless:** | **Refer case to CMF-ICF Cells if ineligible for placement at ASH or CMF-ICF Dorms, unless:** | **Refer all cases not eligible for placement at ASH or CMF-ICF, including, but not limited to:** |
| | Maximum Custody due to threatening, assaultive, or inciting behavior | Maximum Custody due to threatening, assaultive, or inciting behavior | LWOP (without DRB approval) | • LWOP status |
| | LWOP | LWOP | | |
| | S Suffix due to non-clinical reasons (clinical staff shall document I/P's clearance for dorm housing if "S" suffix is affixed for clinical reasons.) | S Suffix due to non-clinical reasons (clinical staff shall document I/P's clearance for dorm housing if "S" suffix is affixed for clinical reasons.) | | |
| | Close A Custody | | CMF-ICF cells may consider lower custody cases if: 1) the beds at ASH and CMF-ICF *dorms* are full, and 2) beds are available at CMF-ICF *cells*. Preference shall be given first to those that meet the case-by-case criteria for CMF-ICF *dorms*, and second to those that meet the criteria for ASH. | SVPP may consider lower custody cases if: 1) the beds at ASH and VPP are full, and 2) beds are available at SVPP. Preference shall be given first to those that meet the case-by-case criteria for CMF-ICF *dorms*, and second to those that meet the criteria for ASH. |
| | Committed in-custody homicide | | | |
| | High Notoriety/Public Interest | | | |
| | Active hold for an offense with potential sentence of: - LWOP - Multiple Life Term - 50 years or more - Life Term - 15 years or more | | | |
| | **CASE-BY-CASE EVALUATION** (Refer to Case-By-Case Placement Guidelines) • Maximum custody (based on non-disciplinary reason) • Committed SHU-able offense(s) per the CCR, title 15, § 3341.5 (9), provided that the SHU MERD has been expired for 12 to 18 months (depending on offense); • Level IV placement score • SNY or Safety concerns • Close B custody | **CASE-BY-CASE EVALUATION** (Refer to Case-By-Case Placement Guidelines) • Maximum custody (based on non-disciplinary reason) • Committed SHU-able offense(s) per the CCR, title 15, § 3341.5 (9), provided that the SHU MERD has been expired for at least 12 months; • Level IV placement score • SNY or Safety concerns • Close A custody | There will be no case-by-case evaluations for CMF-ICF *cells*. | There will be no case-by-case evaluations for SVPP. |

ATTACHMENT 7

# CASE-BY-CASE PLACEMENT GUIDELINES
## *For Atascadero State Hospital (ASH) and California Medical Facility-Vacaville Psychiatric Program (CMF-VPP) Intermediate Care Facility (ICF) Dorm Beds*

| | MAX CUSTODY (based on non-disciplinary reason) | RECENT SHUABLE OFFENSE | LEVEL IV ASSAULT RISK | SHU/SAFETY CONCERNS | CLOSE CUSTODY |
|---|---|---|---|---|---|
| **ASH ICF** | Non-adverse or administrative placements such as: • family member works at institution, • local safety/enemy concerns, or • SNY designation as basis for ASU placement are cases that should be evaluated on a case-by-case basis to consider the totality of case factors, prior to placement. | Inmates who have a recent history of a SHU-able offense can be considered for ASH placement after case-by-case review using the following timeframes: • Any Division A-1 or A-2 offense will be eligible for case-by-case review 18 months after expiration of SHU MERD, unless other factors preclude consideration, such as Close A custody or S-suffix. • Multiple (three or more) SHU-able offenses that involved violence against others within a 12-month period will be eligible for case-by-case review 18 months after expiration of SHU MERD, unless other factors preclude consideration, such as Close A custody or S-suffix. • All other SHU-able offenses will be eligible 12 months after expiration of SHU MERD.  Expiration of SHU MERD is defined as the date an active SHU term MERD expired or the date an active SHU term MERD is suspended, if not at an initial review. If a SHU term was suspended or commuted upon initial review, the case will be treated as if the inmate-patient did not have a SHU term. The behavior should still be considered as part of the totality of available information using sound correctional judgment and experience.  Case-by-case review shall consider the totality of case factors, prior to placement.  Emphasis is to be placed on the inmate's current demonstrated threat of assaultive behavior. | Level IV cases are eligible for ASH, except for cases that are identified as posing a serious assault risk.  Within one year of the referral, serious RVR offenses – CCR, § 3315 (2)(A)-(D), CCR, § 3323 (a)-(f) Division A, B, or D – which involved threatening, weapons, assaultive, or inciting behavior, will require case-by-case review to consider the totality of case factors, prior to placement. | Threat(s) by a group, gang, or unknown multiple parties due to verified information such as open court testimony, gang drop-out debriefing, etc. are excluded.  Other non-verified risk of assault or SNY designation due to committing offense will require case-by-case review to consider the totality of case factors, prior to placement.  Emphasis is to be placed on evidence of safety concern versus unsubstantiated fear. | Close B inmates will require case-by-case review for ASH placement.  Emphasis is to be placed on escape risk and management concerns, such as length of sentence/time to serve, time in custody, and felony holds. For review of escape risk, emphasis is to be placed on the inmate's current demonstrated threat and ability to escape from a secure perimeter facility.  *Close A inmates are excluded from ASH.* |
| **CMF/VPP ICF DORMS** | Non-adverse or administrative placements such as: • family member works at institution, • local safety/enemy concerns, or • SNY designation as basis for ASU placement are cases that should be evaluated on a case-by-case basis to consider the totality of case factors, prior to placement. | Inmates who have a recent history of a SHU-able offense can be considered for CMF-VPP dorm placement 12 months after expiration of SHU MERD with a case-by-case review, unless other factors preclude consideration, such as S-suffix.  If a SHU term was suspended or commuted upon initial review, the case will be treated as if the inmate-patient did not have a SHU term. | Level IV cases are eligible for CMF-VPP dorms, except for the following cases that require a case-by-case review prior to placement to determine if they pose a serious assault risk: • Inmate-patients who have received serious RVR offenses – CCR, § 3315 (2)(A)-(D), CCR, § 3323 (a),(f) Division A, B, or D – within six months of the referral if no SHU term. | Threat(s) by a group, gang, or unknown multiple parties due to verified information such as open court testimony, gang drop-out debriefing, etc. are excluded.  Other non-verified risk of assault or SNY designation due to committing offense will require case-by-case review to consider the totality of case factors, prior to placement. | Close A inmates will require case-by-case review for CMF-VPP dorm placement.  Emphasis is to be placed on escape risk and management concerns, such as length of sentence/time to serve, time in custody, and felony holds. For review of escape risk, emphasis is to be placed on the inmate's current demonstrated threat and ability to escape from a secure perimeter facility.  *Close B inmates are eligible for CMF-VPP dorms without case-by-case review.* |

# EXHIBIT 4

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
Assistant Secretary
P.O. Box 942883
Sacramento, CA 94283-0001



March 16, 2011

Ms. Debbie Vorous
Deputy Attorney General
Department of Justice
1300 I Street
Sacramento, CA 94244-2550

Dear Ms. Vorous:

Please find enclosed a proposed plan to review the current Salinas Valley Psychiatric Program Population, which supplements Defendants' December 7, 2010 Report to the Special Master on Outcome of Evaluation for Transfer of ICF Inmates.

Sincerely,

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Enclosures

**PLAN TO REVIEW THE CURRENT**
**SALINAS VALLEY PSYCHIATRIC PROGRAM POPULATION**
**RE: OCTOBER 5, 2010 *COLEMAN* COURT ORDER**

---

## BACKGROUND

On October 5, 2010, the Court ordered:

> 5.   Within seven days from the date of this order, [California Department of Corrections and Rehabilitation (CDCR)] and [Department of Mental Health (DMH)] defendants shall meet with the special master to develop a review program modeled on the DMH-[Intermediate Care Facility (ICF)] Pilot Program for evaluation of inmates presently housed in Level IV inpatient hospital facilities to determine whether any of those inmates can be transferred to another ICF facility. Within sixty days thereafter defendants shall complete the review and evaluation of inmates in Level IV DMH inpatient hospital facilities and shall report to the special master on the outcome of those evaluations.

On December 7, 2010, CDCR and DMH submitted their report on the outcome of the Court-ordered evaluations. CDCR and DMH reported that they were currently evaluating the review process that will be used on an ongoing basis. This Plan represents that process.

CDCR and DMH agree that the established ICF Pilot Program criteria and custody regulations must be adhered to in order to maintain the safety and security of inmate-patients and staff at DMH facilities. Therefore, custodial case factors—not ICF-distinct clinical criteria—shall determine the most appropriate ICF placement.

## PLAN

CDCR and DMH developed the following systematic plan for a continuous, ongoing review of the current population at the Salinas Valley Psychiatric Program (SVPP) for placement consideration at an alternate ICF program in dormitory housing at Atascadero State Hospital (ASH), Coalinga State Hospital (CSH), or the Vacaville Psychiatric Program (VPP) dorms. This plan includes:

- Review of cases scheduled for placement at SVPP within 30 days of transfer;
- Quarterly review of SVPP's population; and
- Ongoing review for alternate ICF program eligibility at the Initial, Annual, and Program Classification Committee Reviews.

Additionally, the CDCR Health Care Placement Oversight Program (HC-POP) has obtained a new permanent full-time Correctional Counselor III designated solely to work on evaluating DMH referrals under the ICF Pilot Program.

**Review of Cases Scheduled for Placement at SVPP within 30 Days of Transfer.**

Within 30 days of transfer, a HC-POP ICF Correctional Counselor III will, based on the ICF Pilot Program custody criteria, review updated Placement Screening Sheets and case factors for each inmate-patient scheduled for placement at SVPP. The purpose of this review is to determine whether any changes to an inmate-patient's case factors while on the SVPP waitlist may now make him eligible for placement consideration at an alternate ICF program at ASH, CSH, or the VPP dorms.

**Quarterly Review of the ICF Population at SVPP.**

A HC-POP Correctional Counselor III, in coordination with the SVPP Correctional Counselors, will conduct a quarterly review of the ICF population at SVPP. Considering the large number of inmate-patients housed at SVPP, the HC-POP Correctional Counselor III will review the SVPP census utilizing the Distributed Data Processing System and existing ICF Pilot Program criteria to filter out inmate-patients whose case factors would preclude them from alternate ICF placement in a dormitory setting. HC-POP will then provide this reduced list, or "short list," to SVPP staff to review based on their knowledge of additional case factors. All cases identified as not being eligible for ASH, CSH, or the VPP dorms will be clearly documented with the basis for the decision.

Those cases identified by the SVPP Correctional Counselors as potentially eligible for placement into an alternate ICF program will be referred to the SVPP staff designee for an Interdisciplinary Treatment Team (IDTT) conference. The SVPP Correctional Counselor shall be present during the IDTT along with the Central File for each case being reviewed for alternate ICF placement. Prior to the IDTT, a Risk Assessment shall be done by the team to assess the inmate-patient's ability to live in a less restrictive dormitory environment. Once it is determined that the inmate-patient is clinically appropriate for transfer to a less restrictive placement and that the inmate-patient may need additional ICF mental health care before treatment is complete, the IDTT will approve and recommend placement in a dormitory setting at ASH, CSH, or the VPP dorms.

**Ongoing Review for Alternate ICF Program Eligibility at the Initial, Annual, and Program Classification Committee Reviews.**

Each case will be reviewed during routine classification committee reviews—Unit Classification Committee / Institutional Classification Committee—for eligibility to an alternate ICF program. The assigned SVPP Correctional Counselor shall review each case that is seen at their Initial, Annual, or Program Review for alternate ICF placement utilizing the ICF Pilot Program custody criteria. When a case is identified as eligible for a possible alternate ICF placement, the assigned Correctional Counselor will notify the SVPP staff designee to schedule the case for the next regular IDTT for clinical review. The SVPP Correctional Counselor shall be present during the IDTT along with the Central File for each case being reviewed for alternate ICF placement.

**CASES IDENTIFIED AS ELIGIBLE FOR ALTERNATE ICF PLACEMENT**

Any cases identified as eligible for placement in an alternate ICF program during any of the three types of reviews outlined above shall be referred to HC-POP for formal ASH, CSH, or VPP dorm housing consideration utilizing the established ICF Pilot Program policies and procedures. HC-POP recommendations will be documented on a CDC 128B, General Chrono, and forwarded to the Salinas Valley State Prison (SVSP) requesting an Institutional Classification Committee (ICC) review for alternate ICF placement.  Upon receipt of HC-POP's CDC 128B, the SVPP ICC, with SVPP clinical representation present, will conduct a thorough case review considering, in addition to any other custodial/safety concerns, the ability of the inmate-patient to safely program in an open dormitory, dayroom, and yard program environment. Upon completing the ICC review, the completed CDC 128G, Classification Chrono, will be sent to HC-POP.  The CDC 128G will clearly document the committee's decision and the basis for this decision, including all cases where the ICC action differs from the HC-POP or SVPP clinical staff recommendation.  If there is a difference of opinion, the HC-POP Chief will participate in a case conference with the Division of Adult Institutions, Classification Services Chief, and, if necessary, the appropriate Division of Adult Institutions Associate Director for placement resolution.

HC-POP will, upon review of the CDC 128G, forward the necessary updated documents to the Mental Health Utilization Management Unit, who will then submit the necessary documentation to DMH for alternate ICF placement disposition.  HC-POP staff will document and track the results of each review.

The three review processes set forth in this Plan, however, are not expected to yield a high number of inmate-patients that would be eligible for placement in ASH, CSH, or the VPP dorms, for the following reasons:

1.  A review of the SVPP Waitlist dated January 11, 2011, with a total of 308 cases, resulted in eight cases being approved for ASH or VPP dorm placement.

2.  Reviewing cases scheduled for placement at SVPP within 30 days of transfer would ensure that case factors are current when an inmate-patient arrives at SVPP and are not likely to change during their stay at SVPP.  To date, only one case has been redirected to the VPP dorms during this transfer update review.

3.  SVPP clinical staff must concur that a transfer from SVPP to ASH, CSH, or the VPP dorms would not detrimentally impact the inmate-patient's continuity of care and that a transfer is in the best clinical interest of the inmate-patient. Rationale for transfer for clinical reasons may include extended discharge planning, increased socialization through dorm living, and opportunity to program in a less restrictive environment.

# EXHIBIT 5

CALIFORNIA DEPARTMENT OF

# Mental Health

1600 9th Street, Sacramento, CA 95814
(916) 654-2413

March 3, 2011

Debbie Vorous                          via:     Cynthia A. Radavsky
Deputy Attorney General                         Deputy Director
1300 I Street, Suite 125                        1600 Ninth Street, Rm. 250
P.O. Box 944255                                 Sacramento, CA 95814
Sacramento, CA  94244-2550

**RE:  Salinas Valley Psychiatric Program:  Completed Activation of Charlie Yards 5 and 6**

The Department of Mental Health is providing this notification in response to the *Coleman v. Schwarzenegger* court order filed by the United States Eastern District Court on June 18, 2009 to convert treatment space in Salinas Valley State Prison's Charlie Yards 5 and 6 (C5/C6) for use as inpatient intermediate care units by Salinas Valley Psychiatric Program.  I am pleased to inform you that the treatment space in C5/C6 was at a full census of 116 on Friday, February 25, 2011.

Admissions to the first 58 beds in this project began on September 21, 2010 and were filled as of December 3, 2010.  Admissions to the balance of 58 beds began on January 18, 2011 and were fully occupied on February 25, 2011.

If you have any questions please contact me at (916) 654-2413.

Respectfully,

CYNTHIA A. RADAVSKY
Deputy Director
Division of Long Term Care Services

Cc:  Cliff Allenby, Director (A), Department of Mental Health
       Cynthia Lusch, Executive Director (A), Salinas Valley Psychiatric Program

# EXHIBIT 6

CALIFORNIA DEPARTMENT OF
# Mental Health

1600 9th Street, Sacramento, CA  95814
(916) 654-2413

December 24, 2010

Debbie Vorous                              via:     Cynthia A. Radavsky
Deputy Attorney General                            Deputy Director
1300 I Street, Suite 125                           1600 Ninth Street, Rm. 250
P.O. Box 944255                                    Sacramento, CA 95814
Sacramento, CA  94244-2550

**RE:  Vacaville Psychiatric Program:  Activation of P-1 Wing for Provision of Acute Care**

The Department of Mental Health is providing this notification in response to the *Coleman v. Schwarzenegger* court order filed by the United States Eastern District Court on June 18, 2009 to convert treatment space in the P-1 wing at the Vacaville Psychiatric Program (VPP) from Intermediate Care to Acute Care.  I am pleased to inform you that the treatment space in P-1 was at a full census of 32 on December 17, 2010.  Additionally, the shower retrofit on P-1 was completed on December 20, 2010 and was available for use by inmate-patients the following day, December 21.  I would like to acknowledge the efforts of Victor Brewer and the staff at VPP for their work to activate the P-1 treatment space which was converted from general population housing to a licensed inpatient unit providing acute mental health care.

If you have any questions please contact me at (916) 654-2413.

Respectfully,

CYNTHIA A. RADAVSKY
Deputy Director
Division of Long Term Care Services

Cc:  Dr. Stephen W. Mayberg, Director, Department of Mental Health
        Victor Brewer, Executive Director, Vacaville Psychiatric Program