# EXHIBIT A



PANNONE

LOPES

DEVEREAUX &

WEST llc

*counselors at law*

Mohamedu Jones, Esq.
Senior Counsel
mjones@pldwlaw.com

April 21, 2009

<u>*Via Electronic Mail*</u>

Sharon Aungst
Chief Deputy Secretary
California Department of Corrections
and Rehabilitation
501 J Street Sacramento
P.O. Box 942883
Sacramento, CA 94283-0001

Cindy Radavsky
Assistant Deputy Director
Department of Mental Health
Long Term Care Services
1600 9th Street
Sacramento, CA 95814

Debbie J. Vorous
Deputy Attorney General
State of California
Department of Justice
1300 I Street
Sacramento CA 94244-2550

Scott Kernan
Undersecretary, Operations
California Department of Corrections &
Rehabilitation
1515 S Street
Suite 502-S
Sacramento, CA

Jeffrey Steele, Esq.
Deputy Attorney General
Office of Attorney General
1300 I Street
Sacramento, CA 94244-2550

RE: Coleman v. Schwarzenegger

Dear Ms. Aungst, Ms. Radavsky, Mr. Kernan, Ms. Vorous, and Mr. Steele:

As you are already aware, the court in <u>Coleman v. Schwarzenegger</u> court entered a comprehensive order on March 30, 2009 with regard to the defendants' duty to provide necessary mental health beds to members of the <u>Coleman</u> plaintiff class. One of the specific dictates within that order was that a modified assessment be conducted by both CDCR and DMH clinicians to determine whether there are unmet needs for inpatient care among members of the <u>Coleman</u> plaintiff class. Any inmates identified by the assessment shall be referred to DMH on an expedited basis for appropriate inpatient care.

The modified assessment process shall be carried out in two general phases. The first phase is identification of inmates to be reviewed for possible referral to DMH. The second phase is for assessment and referral of identified inmates to DMH for mental health inpatient care. Both

phases will take place at 12 institutions: CMF, MCSP, CSP/Sac, SQ, CSP/LAC, RJD, CSP/Corcoran, CCI, CIM, CMC, WSP, and SVSP, according to the schedule shown on the attached calendars. (Exhibits A and B). Identification and assessment activities shall be observed and supervised by the Office of the Coleman Special Master and it experts and monitors, but the identification, assessment, and referral process shall be conducted by CDCR and DMH clinicians.

*Phase One*: In the first or identification phase, CDCR will employ the criteria that were developed by the Utilization Management (UM) Unit in the mental health program which was derived from the Unidentified Needs Assessment (UNA) study. Inmates with histories of prior DMH referrals will be included among the criteria for identification. Lists of inmates who have been identified for potential referral will be compiled from a number of sources, as specified on pages 1-2 of the CDCR/DMH memorandum of April 10, 2009 (Exhibit C). The Office of the Special Master submits the attached form (Exhibit D) for use in compilation of these lists. It also submits a form for use in consideration of inmates for identification, which includes a list of various criteria for identification that have been assembled by the Special Master's experts. (Exhibit E) The identification lists will then be merged into a master list for each institution. If any inmate who appears on the list is already in the process of being referred, that information will be flagged on the list and that inmate's case will not be reviewed by the assessment team in the second phase.

CDCR custody staff will provide any necessary escort for the Coleman experts and/or monitors, and will complete case factor sheets for each inmate identified on the master lists. Preparation of these sheets will be supervised by a correctional counselor II. Custody factors shall not be used to exclude any inmate from being placed on the master list to be considered for DMH referral.

During phase one, CDCR DCHCS will identify to the Office of the Special Master those CDCR staff members who will be responsible for supervising the process of utilizing the criteria, establishing the list, and facilitating the identification process and assessment procedures. A Coleman expert and/or monitor will visit the institutions on a preliminary basis to examine the list of inmates who have been identified and determine whether the process appropriately employed the identification criteria, and may advise CDCR regarding the list. During this visit, should they request such access, the Coleman expert and/or monitor will be afforded access to EOP housing units, MHCB Units, and to staff including clinicians, psych techs, and correctional officers, as well as inmates' Unit Health Records (UHRs). Supervisors in the mental health program will meet with the Coleman representative(s) to review the list. Institutional staff will escort the Coleman representatives, as needed, and will coordinate the availability of a workspace and requested documents.

*Phase Two*: In the second or assessment and referral phase of the modified assessment process, custody staff will provide required escorts for DMH personnel, Coleman experts, and inmates for interviews. Both UHRs and Central Files will be pulled, as per the master list of identified inmates, before the arrival of the assessment and referral teams at the institutions, and will be made available for review. Assessments will be handled by designated teams to be organized by CDCR. These teams shall not reflect normal or usual IDTT composition or

agenda, but shall focus solely on clinical indication for DMH referral. Each team shall be comprised of a CDCR clinician and nurse consultant from DCHCS, a DMH clinician, and a DMH admissions/referral staff member. A correctional counselor II and a CDCR psychiatrist will be available at each institution for consultation or assistance as required. Coleman experts and/or monitors will also be on site to observe and to provide input as indicated. A DCHCS health program specialist will accompany the teams for support. A correctional counselor II will also be required to attend the assessment meeting for each inmate under review, and ensure that counseling staff and the inmate's Central File are present. The institutions will provide sufficient dedicated work and interview space for the teams, without compromising mental health programs at the institution.

The assessment will involve review of the lists and records of the identified inmates by CDCR/DMH clinical and nursing staff team members. Decisions to refer or not refer inmates will be made together by DMH and CDCR staff. The current clinical status of each inmate on the list will be determined by each member of the team, based on the available documentation and a summary discussion of the known clinical case factors. Then, the team members will discuss their respective clinical opinions and attempt to reach a consensus. If the team cannot arrive at a consensus, they will interview the inmate's primary case manager. If there is still no consensus, the team will conduct a limited interview with the inmate. If the team still cannot agree on whether to refer an inmate, the Coleman expert and/or monitor may request additional sources of information for the team, offer other issues to consider, ask questions, or otherwise direct the team's attention to pertinent information. The Special Master's experts and monitors may express clinical views and/or recommendations on specific referrals, as appropriate. All final decisions on referrals shall be made by CDCR and DMH personnel. Should there be any unresolved disagreements as to whom to refer or not refer, including for reasons related to custody factors, they shall be submitted to the correctional clinical assessment team (CCAT) for resolution. Final decisions (including failures to reach consensus) will be documented, described, and summarized in a report following the conclusion of the assessment.

*Conclusion*: At the conclusion of phase two, the assessment and referral teams will compile a list of case reviews and referrals for each institutional site visit. The institution will use that list will to follow up with the referrals. A copy of the list will be sent to the UM Unit at DCHCS for following up on completion and forwarding of the referral packets to DMH, and another copy will be forwarded to Nathan Stanley, Chief of Correctional Services and Support Unit of DMH. For those inmates determined to be in need of referral to intermediate or acute levels of care, a DMH referral packet will be completed within ten working days by assigned institutional staff. The chief medical officers at each institution will also be provided with the list in order to schedule expedited examinations of referred inmates. Records of these medical examinations will be included in the referral packets. Per usual practice, the institution's DMH coordinator will track referrals via the DMH referral log.

Referrals to DMH for intermediate inpatient care will be made in accordance with the existing Memorandum of Understanding between CDCR and DMH, except in those cases in which inmates' medical conditions may preclude or delay their admission to DMH care according to the terms of the memorandum of understanding.

DCHCS support staff will produce electronic documentation of the clinical summaries to be composed after each inmate encounter, maintain the list of the identified inmates to be seen for review, and track case reviews and decisions on the case review and referral list.

At the end of the project, DCHCS will submit a report describing and summarizing its outcome to the Special Master and the plaintiffs no later than June 8, 2009. The report will include data showing, institution by institution, the number of inmates identified in phase one, the number deemed appropriate for referral to DMH in phase two, and any accepted referrals and intermediate care placements with DMH that have occurred by that time. A later report by DCHCS, to be submitted by July 15, 2009 to the Special Master and the plaintiffs, will cover additional follow-up procedures and outcomes, the number of referrals accepted by DMH, and the inmates who are placed in intermediate care beds as a result of this project.

Sincerely,

*Mohamedu F. Jones*

Signed electronically to avoid delay

Mohamedu F. Jones, Esq.
Deputy Special Master

MFJ/fe

Enclosures

# EXHIBIT A

{}



April 2009
Mental Health Assessment and Referral Project-Phase 1: Identification Schedule

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 CMF (WA, TR) | 16 MCSP (WA) SAC (TR) | 17 | 18 |
| 19 | 20 SQ (WA) | 21 LAC (WA) | 22 RJD (WA) | 23 COR (WA) | 24 | 25 |
| 26 | 27 CCI (TR) CIM (WA) | 28 CMC (TR) WSP (WA) | 29 SVSP (WA) | 30 | | |

WA: William Alvarez
TR: Ted Ruggles

# EXHIBIT B

{}

# April 2009
## Mental Health Assessment and Referral Project-Phase 2: Assessment and Referral Schedule

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
|        |        |         | 1         | 2        | 3      | 4        |
| 5      | 6      | 7       | 8         | 9        | 10     | 11       |
| 12     | 13     | 14      | 15        | 16       | 17     | 18       |
| 19     | 20 CMF (KB,MP,TR) | 21 CMF (KB,MP,TR) | 22 MCSP (KB,MP, TR) | 23 MCSP (KB,MP, TR) | 24 | 25 |
| 26     | 27 CSP/SAC (KH,MW) | 28 CSP/SAC (KH,MW) | 29 CSP/SQ (TR,HD) | 30 CSP/SQ (TR,HD) | | |

WA: William Alvarez
KB: Kathy Burns
HD: Henry Dlugacz

YE: Yong Joo Erwin
KH: Kerry Hughes
JM: Jeffrey Metzner

TR: Ted Ruggles
AS: Angela Shannon
MW: Melissa Warren

## May 2009
## Mental Health Assessment and Referral Project-Phase 2: Assessment and Referral Schedule

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 CSP/COR (JM, MW) RJD (KH,AS) | 5 CSP/COR (JM, MW) RJD (KH,AS) | 6 CSP/LAC (KH, AS) | 7 CSP/LAC (KH, AS) | 8 | 9 |
| 10 | 11 WSP (KB,MP) CCI (YE,TR) | 12 WSP (KB,MP) CCI (YE,TR) | 13 CIM (KB,TR) | 14 CIM (KB,TR) | 15 | 16 |
| 17 | 18 CMC (WA,TR) | 19 CMC (WA,TR) | 20 SVSP (WA,TR) | 21 SVSP (WA,TR) | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

WA: William Alvarez
KB: Kathy Burns
HD: Henry Dlugacz

YE: Yong Joo Erwin
KH: Kerry Hughes
JM: Jeffrey Metzner

TR: Ted Ruggles
AS: Angela Shannon
MW: Melissa Warren

# EXHIBIT C

{}

## CDCR/DMH Mental Health Assessment and Referral Project

April 10, 2009

Background

On March 30, 2009, the court in *Coleman v. Schwarzenegger* issued its order based on the March 24, 2009 hearing to consider further steps required to insure timely compliance with the court's orders regarding provision of necessary mental health beds to members of the plaintiff class. Among other things, the court gave the following order:

> *Within sixty days, or on such schedule as the Special Master may direct, the California Department of Corrections and Rehabilitation (CDCR) and the Department of Mental Health (DMH) clinicians shall work together to conduct a modified assessment to determine whether there are unmet needs for inpatient care among members of the plaintiff class, and to refer on an expedited basis, any inmates identified during this modified assessment for appropriate inpatient care. The Special Master and his experts shall supervise the modified assessment.*

In response to the above order, Deputy Special Master Mohamedu Jones and court experts Dr. William Alvarez and Dr. Ted Ruggles convened separate meetings with CDCR as well as DMH representatives to discuss the parameters of the assessment process on Tuesday, April 7, 2009. The experts convened a joint meeting with the representatives of the two departments on Wednesday, April 8, 2009. In essence, the experts directed the representatives to design a two-phase process for conducting the assessment based on specified criteria. The purpose of this document is to provide the requested description of a proposed process by which the two Departments expect to generate lists of potential patients for DMH referrals, conduct the assessment, and expedite the referral process.

Proposal

**Phase 1:** *Identification of patients to be reviewed*

1. *Identification and listing of inmate-patients to be later assessed to determine whether they are appropriate for DMH referral*

CDCR will utilize criteria developed by the Utilization Management (UM) Unit in the Mental Health Program (MHP). These criteria were based on the methodology of the Unidentified Needs Assessment (UNA) study and, for the purpose of this project, will include history of prior DMH referrals as required in the Special Master's criteria. Sub-lists will be created for each of the following items:

   a) Enhanced Outpatient Program (EOP) primary clinicians will provide a list of inmate-patients on their caseload who demonstrate chronic psychiatric symptoms (disturbed emotions, perceptions, thought processes, and/or impaired cognitions)

who have not responded sufficiently to at least six months of treatment to a degree that facilitates adequate levels of functioning. As a result, the inmate-patient is unable to adequately function within the structure of the CDCR EOP level of care (LOC) and requires highly structured inpatient psychiatric care with 24-hour nursing supervision.

b) Mental Health staff will review Rules Violation Report (RVR) logs for the names of EOP inmates who received CDCR-115s during the months of January through March 2009 to identify those who received RVRs for three or more incidents during that three-month time period.

c) MHP supervisors will review Mental Health Tracking System (MHTS) data for EOP caseloads to determine inmate-patients whose participation or cooperation with programming and treatment plan has been less than 50 percent during the last three months. Where this MHTS data is not available, primary clinicians will identify these inmate-patients.

d) MHP supervisors will review MHTS reports or Mental Health Crisis Bed (MHCB) Admission/Discharge Logs to list inmate-patients with three or more admissions to a MHCB during the last six months.

e) MHP supervisors will review MHTS reports or MHCB Admission/Discharge Logs to identify inmate-patients currently placed in a MHCB for ten or more days for clinical issues, and who have not been stabilized.

f) EOP staff will indicate caseload inmates who need a comprehensive assessment for diagnostic clarification for neurological functioning (only available at Atascadero State Hospital, Patton State Hospital, and Vacaville Psychiatric Program).

g) EOP psychiatrists will forward the names of inmate-patients who require initiation of a trial of Clozapine, to program supervisors.

h) MHP supervisors, DMH Coordinators, and EOP supervisors will jointly create a list of inmate-patients who have had two or more admissions and/or referrals to a DMH facility during the last twelve months, have ever been referred to DMH but rejected, or have been accepted to DMH within the past year but ultimately not transferred. To accomplish this, the institution's DMH log and the EOP caseload will be reviewed.

The sub-lists will be compiled utilizing the format provided by the Special Master and names will be merged onto a Master List for each institution. Inmate-patients for whom a referral is already being processed will be included on the list but will be so indicated. The assessment teams will not review cases already in process.

2

2. *Custody Information*

During Phase I of the ICF Referral Assessment Project, custody staff will be required to provide escort, as needed, to the *Coleman* experts, and to complete Case Factor Sheets for all inmate-patients identified on the Master List, prepared by the institution. A Correctional Counselor II (CCII) will supervise completion of a Case Factor Sheet for each inmate-patient identified on the Master List for inclusion in a potential referral packet in order to expedite the referral process. The criteria applied will be the Case Factor Sheet currently used for the DMH referral process, and the sheets will be completed prior to arrival of assessment teams in Phase II to facilitate an expedited process.

During Phase II of the project, custody staff will provide required escorts of DMH Personnel, *Coleman* experts, and inmate-patients required for interviews. In addition, a CCII from the institution will be required to attend the Assessment meeting of each inmate-patient reviewed, with the Central File on-site. Finally, custody management will coordinate with mental health staff to ensure that sufficient space is available to conduct the assessments without impacting mental health programs at their institution.

3. *Preliminary Site Visits*

A *Coleman* expert/monitor will go to institutions for preliminary visits to examine the list of inmate-patients identified and to assess whether the process appropriately utilized the criteria. MHP supervisors will meet with the *Coleman* expert/monitor to discuss the list. During this visit, the expert/monitor will be afforded access to EOP housing units, MHCB Units, and to staff including clinicians, LPTs, and Correctional Officers, as well as Unit Health Records (UHR). To this end, institutional staff will escort the expert/monitor while on grounds and coordinate a workspace and requested UHR reviews.

4. *CDCR and DMH Staff Responsible for Project*

The following staff will be responsible for oversight and completion of this project. DMH staff are included in the below table for the joint oversight and completion of Phase II.

| Project Oversight | Marion Chiurazzi, Psy.D. | Statewide Director (A), Mental Health Program, DCHCS |
| | Nathan Stanley | Chief, Correctional Services and Support Unit, DMH |
| Facilitate Processes, Phase I Establish List | Andrew Swanson, M.D. | Deputy Director (A), Mental Health Program Clinical Services, DCHCS |
| Supervision of Utilization of Criteria | Dennis Beaty | Deputy Director, Mental Health Program Support Services, DCHCS |
| Custody Liaison | Joseph Moss | Associate Warden, DAI |

3

| Facilitate Processes, Phase 2 | Andrew Swanson, M.D. Char Schultz, Ed.D. | DCHCS DMH HQ |
|---|---|---|

*Phase 2: Assessment of patients for determination of DMH referral*

### 1. *Composition of Assessment and Referral Teams*

Each team will be comprised of a CDCR clinician and Nurse Consultant from Division of Correctional Health Care Services (DCHCS), a DMH clinician, and a DMH Admissions/Referral staff member. A CCII and a CDCR psychiatrist will be available at each institution for consultation or assistance as required. In addition, a DCHCS Health Program Specialist will accompany the teams to provide support. *Coleman* experts/monitors will also be on site to observe and to provide input when indicated.

### 2. *Logistics*

Access to and delivery of UHR and Central Files will be arranged by staff at each institution. In addition, dedicated work and interview space for the teams shall be provided the institutions. UHR and Central Files will be pulled, per Master List, prior to arrival of the Assessment and Referral Teams, and made available for review. Both files must be present in order to expedite the referral process.

### 3. *Methodology*

The CDCR/DMH clinical and nursing staff team members will review the records and all the sub-lists for inclusion of the identified inmate-patients. Based on the available documentation and a summary discussion of the clinical case factors known, an assessment of the current clinical status will be derived by each member of the clinical and nursing team. The team members will discuss their clinical opinions and attempt to form a consensus. If team members are unable to come to consensus, they will interview the inmate-patient's primary case manager to gather additional or conformational data to support or rule out the need for referral. If no consensus is achieved in this step, the team will conduct a limited interview with the inmate-patient. If consensus is still lacking, the *Coleman* expert/monitor will request additional sources of information for the team and/or render an opinion whether or not the inmate-patient should be referred to DMH. Final decisions for each case, including ultimate failure to arrive at consensus, will be documented, described, and summarized in a Project Report at the conclusion of this assessment.

The Assessment and Referral Teams will establish a Case Review and Referral List for each site visit. A copy of the list will remain at the institution for follow-through on referrals to be completed and a second copy will be forwarded to the UM Unit at DCHCS for follow-up to ensure that referral packets are completed and forwarded to DMH. A third copy will be forwarded to Nathan Stanley. Inmate-patients determined to be in need of a referral, will have a DMH referral packet completed by assigned institutional staff, that will be completed within ten working days for ICF and Acute LOC. Chief Medical Officers at each institution will be provided a copy of the Case Review and Referral List

4

to schedule expedited History and Physical Examinations for referred inmates for inclusion in the referral packet. The institution's DMH Coordinator will track referrals via the DMH Referral log as is customary.

Referrals to DMH for intermediate care facility (ICF) inpatient care shall be made in accordance with the terms and criteria in the proposed 2009 ICF Memorandum of Understanding between CDCR and DMH. Co-occurring medical conditions may impact inmate-patient placement in ICF as follows:

> *Inmate-patients whose primary treatment needs are medical rather than psychiatric shall not be admitted for intermediate care psychiatric services. In addition, some inmate-patients with psychiatric needs may have medical/nursing conditions that preclude placement in the ICF psychiatric unit such as stroke or dementia. Medical conditions that interfere with participation in treatment, such as dialysis, also may preclude admission.*

Under this provision of the ICF MOU, an inmate-patient may be accepted for admission on the basis of mental health clinical need but delayed until his/her medical condition is sufficiently stabilized.

Decisions concerning whether or not to refer an inmate-patient will be made by DMH and CDCR staff together. Classification staff will be available to the team when a referral is indicated to discuss custody factors that may be a barrier for DMH admission. Custody staff will be available to provide escorts for inmate-patients and staff as needed.

Support staff will be provided by DCHCS to produce electronic documentation of the clinical summary to be composed after each inmate-patient encounter and to maintain the list (Project Report) of the identified inmate-patients to be seen for review. In addition, they will be responsible for tracking case reviews and decisions on a Case Review and Referral List. Those cases not reviewed by the Assessment and Referral Team due to time constraints will be reviewed by the institution's EOP Interdisciplinary Treatment Team (IDTT) for possible referral to DMH. Outcomes of these subsequent IDTT reviews are to be reported to Lucinda McGill, UM Unit, at DCHCS and will be tracked for follow-up.

### Conclusion of Project

A report describing and summarizing the outcome of this project will be submitted to the Special Master by June 8, 2009 from DCHCS. The report will include data by institution reflecting the number of inmate-patients identified in Phase 1, as well as, the number of those identified for referral to DMH in Phase 2. Further, the report will provide information regarding any obstacles encountered in this project and any shortcomings. Accepted referrals and ICF placements that have occurred by that time will be included. A follow-up report will provide information about additional follow-up procedures and outcomes by DCHCS, the number of referrals accepted by DMH and inmate-patients

5

# EXHIBIT D

{}

## Inmate/Patients Meeting Criteria for DMH Consideration

Name of Institution: _____  Today's Date: _____

| This form is being completed for: | ☐ EOP | ☐ Ad-Seg EOP | ☐ PSU | ☐ MHCB | ☐ RC |

The following inmate-patients meet criteria for potential referral consideration:

| Name of Inmate-Patient: | CDC Number: | List criteria numbers met: (e.g.: 1, 2 & 7) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Primary Clinician: _____  Date: _____

Clinical Program Supervisor: _____  Date: _____

- 2 -

# EXHIBIT E

{}

# CDCR/DMH Mental Health Assessment and Referral Project

## I.    Criteria for Identifying Inmate-patients to Consider for *Potential* Referral to DMH for a higher Level-of-Care

- EOP Inmate-patients (I-P) at the project institutions shall be reviewed for overall criteria that warrant consideration of potential referral to a higher level-of-care at a facility operated by the Department of Mental Health (DMH).

- All clinicians shall have available to them a copy of the criteria information below during the review.

- Clinical staff participation/completion of the review shall be documented on page two (2) of this review form.

**Criteria for Identifying Inmate-Patients for *Consideration* of Referral to a DMH facility:**

| The I-P is currently at the **EOP LOC** and characterized by *at least one* of the following: | Any **EOP** Inmate-Patient who: |
|---|---|
| 1. Demonstrates chronic psychiatric symptoms (disturbed emotions, perceptions, thought processes, and/or impaired cognitions) that have not responded *sufficiently* to at least 6 months of treatment to a degree that facilitates *adequate* levels of functioning. <br> <u>Examples:</u> <br> → I-P is psychotic, refusing medications, does not presently meet Keyhea criteria, and consequently has significant impaired functioning <br> → I-P has been in remission, but despite continued treatment, is psychotic again <br> → I-P's current clinical condition is worse than the "baseline" condition that was established at the time of admission to the EOP/PSU/Ad-Seg EOP program <br> → I-P has been in a state of significant distress or apparent dysfunction for an extended period of time, as indicated by manifestations such as undue weight loss, extreme social withdrawal, debilitating paranoia, crystallized delusions that serve as obstacles to therapeutic engagement, poor hygiene and grooming, ritualistic or self-injurious behavior that is undiminished by response costs/negative consequences, etc... <br><br> 2. Inmate-patient has incurred three (3) or more **CDC-115** disciplinary charges during the last 3 months. <br><br> 3. I-P has less than 50% overall cooperation/participation with programming and/or the treatment plan during the last 3 months. (i.e., mental health issues substantially effect ability to actively participate in treatment, the I-P is non-compliant with medication, etc...) | 4. Has had three (3) or more admissions to a **MHCB** during the last six (6) months <br><br> 5. As of today, has been in a **MHCB** for ten (10) or more days, absent well documented clinical substantiation for such, and excluding administrative days <br><br> 6. Has had two (2) or more admissions and/or referrals during the last twelve (12) months to a **DMH** facility <br><br> 7. Has ever been referred to **DMH** but rejected <br><br> 8. Has been accepted to **DMH** within the past year but ultimately not transferred |