# EXHIBIT B

**KAMALA D. HARRIS**
*Attorney General*

**State of California**
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 324-5345
Facsimile: (916) 324-5205
E-Mail: Debbie.Vorous@doj.ca.gov

June 8, 2011

Via E-Mail

Matthew A. Lopes, Jr.
Special Master
Pannone Lopes & Devereaux, LLC
317 Iron Horse Way, Suite 301
Providence, RI 02908

RE: Coleman, et al. v. Schwarzenegger, et al.
U.S. District Court, Eastern District of California, Case No. 2:90-cv-00520 LKK JFM P

Dear Special Master Lopes:

This letter follows-up on my voicemail message to you yesterday and our discussion today confirming that Defendants do not agree to your anticipated recommendation to the Court that it is necessary for your experts to repeat the 2009 assessment in fourteen prisons to determine any unmet needs for inpatient care among members of the *Coleman* class. As described below, efforts to confirm systematic improvements in the referral process, as well as to identify any continuing problems on a facility, or provider-specific basis, should be designed with regards to the process improvements resulting from the two prior assessments, utilize the efficiencies in the increased access to data, enhance the current management systems within CDCR, and minimize the interference in clinical operations and treatment that results from monitoring.

Thus, Defendants are agreeable to working with you and your experts to conduct an assessment that more pointedly focuses on the procedure that Defendants have put in place to manage, audit, and monitor referrals by CDCR to DMH. This assessment, which involves six steps, is summarized as follows:

1. CDCR Division of Correctional Health Care Services (DCHCS) will generate for each of the fourteen institutions that will be visited as part of the assessment, a list of the inmate-patients who should be identified for review for referral to a higher level of care. DCHCS will generate this list using three reports. First, DCHCS will generate a list of Enhanced Outpatient Program (EOP) inmates who have not engaged in ten hours of structured activities for the past three consecutive months as a result of not participating in fifty percent of the treatment services provided. Second, DCHCS will generate a list of inmate-patients who have been placed in a

Matthew A. Lopes, Jr.
June 7, 2011
Page 2

medical setting three or more times in the last six consecutive months. DCHCS will generate these reports from MHTS.net. Last, the Division of Adult Institutions will provide a list of inmate-patients who have received three or more Rules Violation Reports in the last six consecutive months.

2. DCHCS will compare the names on the three reports generated in the first step with the DMH Acute Psychiatric Program (APP) and Intermediate Care Facility (ICF) referral lists in order to determine which of the inmate-patients identified in the reports, if any, were not referred by the respective institution's Interdisciplinary Treatment Team (IDTT) for DMH APP or ICF level of care.

3. DCHCS will identify the inmate-patients who were not referred for DMH APP or ICF level of care and request that the relevant institution send a scanned copy of the inmate-patient's most recent CDCR Form 7388B to DCHCS.

4. CDCR Regional Directors will review the CDCR Form 7388Bs identified in the third step and decide which cases, if any, do not contain sufficient rationale to justify non-referral for DMH APP or ICF level of care.

5. DCHCS will provide to each of the fourteen institutions the list of inmate-patients generated as a result of the fourth step.

6. The last step will involve a collaborative interaction between the *Coleman* experts, the DCHCS Regional Directors, and the members of each institution's IDTT. On the days scheduled for the visits, this group will review and consider for potential referral to a higher level of care, those inmate-patients identified through the process set forth above.

The expected outcome of each site visit is to support the institution's efforts to establish a sustainable process among the clinical staff to conduct thorough assessments, formulate diagnoses, develop appropriate treatment plans, and refer inmate-patients to a higher level of care when necessary.

As we discussed, Defendants do not agree to your recommendation to conduct another assessment for the following reasons. First, Defendants have not yet received the Special Master's Monitoring Report for the 23rd Round, which we understand is, in part, the impetus for this recommendation. Second, Defendants have not had a reasonable opportunity to fully implement and audit the tools they developed in the context of their ICF and APP Waitlist Plan. Finally, Defendants believe that having another assessment mirror the 2009 assessment by using a team from CDCR and DMH Headquarters to identify inmate-patients for referral (under the observation and consultation of the experts) is contrary to the procedures that Defendants have put in place to establish a sustainable process for the institution's IDTT to identify and refer those inmate-patients who need a higher level of care. This process should be allowed to succeed.

Matthew A. Lopes, Jr.
June 7, 2011
Page 3


       Thank you for your consideration of this modified approach to the assessment of inpatient needs. Please contact me if you have any questions.

                                Sincerely,

                                DEBBIE J. VOROUS
                                Deputy Attorney General

                       For    KAMALA D. HARRIS
                                Attorney General

DJV:

cc:    Mohamedu Jones
       Benjamin Rice
       Sharon Aungst
       Cynthia Rodriguez
       Cynthia Radavsky