1   DONALD SPECTER – 083925              MICHAEL W. BIEN – 096891
    STEVEN FAMA – 099641                 ERNEST GALVAN – 196065
2   PRISON LAW OFFICE                    JANE E. KAHN – 112239
    1917 Fifth Street                    LISA ELLS – 243657
3   Berkeley, California  94710-1916     AARON J. FISCHER – 247391
    Telephone:   (510) 280-2621          ROSEN, BIEN & GALVAN, LLP
4                                        315 Montgomery Street, Tenth Floor
                                         San Francisco, California  94104-1823
5                                        Telephone:   (415) 433-6830

6   CLAUDIA CENTER – 158255              WARREN E. GEORGE – 053588
    THE LEGAL AID SOCIETY –              BINGHAM McCUTCHEN LLP
7   EMPLOYMENT LAW CENTER                Three Embarcadero Center
    180 Montgomery Street, Suite 600     San Francisco, California  94111-4066
8   San Francisco, California  94104-4244   Telephone:   (415) 393-2000
    Telephone:   (415) 864-8848
9
    Attorneys for Plaintiffs
10

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  RALPH COLEMAN, et al.,               Case No. Civ S 90-0520 LKK-JFM

15          Plaintiffs,                  **DECLARATION OF AARON J.
                                         FISCHER IN SUPPORT OF
16      v.                               PLAINTIFFS' RESPONSE TO
                                         SPECIAL MASTER'S REPORT ON
17  EDMUND G. BROWN, Jr., et al.,        DEFENDANTS' PLAN RE: ICF AND
                                         ACUTE INPATIENT WAIT LISTS**
18          Defendants.[1]

19

20

21

22

23

24

25

26  _____

27  [1] The names of Defendants currently serving and their official capacities have been
    substituted pursuant to Fed. R. Civ. P. 25.

28

[515417-3]

DECL. OF AARON J. FISCHER ISO PLS.' RESPONSE TO SPECIAL MASTER'S REPORT ON DEFS.' PLAN RE
ICF AND ACUTE INPATIENT WAIT LISTS

1    I, Aaron J. Fischer, declare:

2    1.    I am an attorney admitted to practice law in California, a member of the bar

3   of this Court, and an associate in the law firm of Rosen, Bien & Galvan LLP, counsel of

4   record for Plaintiffs.  I have personal knowledge of the matters set forth herein, and if

5   called as a witness I could competently so testify.  I make this declaration in support of

6   Plaintiffs' Response to Special Master's Report on Defendants' Plan Re:  ICF and Acute

7   Inpatient Wait Lists.

8    2.    As part of Defendants' monthly production in *Coleman*, Defendants provide

9   to the Special Master and Plaintiffs' counsel the Department of Mental Health (DMH)

10  Monthly Bed Utilization Report, which includes, *inter alia*, data as to CDCR prisoners

11  housed in inpatient facilities, CDCR prisoners referred for inpatient care and on an

12  inpatient wait list, and information as to the status of referrals for inpatient care.

13   3.    Defendants file their DMH Monthly Bed Utilization Report under seal

14  because it includes a complete list of all class members placed in an inpatient facility,

15  referred for inpatient hospitalization, or currently waiting for transfer to any level of

16  inpatient hospitalization.

17   4.    The most recent DMH Bed Utilization Report data provided by Defendants

18  covers the month of May 2011.  This report was filed under seal with the Court on June 15,

19  2011.  (Dkt. No. 4021.)  Plaintiffs received a copy of the May 2011 DMH Monthly Bed

20  Utilization Report on June 17, 2011.  I have reviewed DMH Monthly Bed Utilization

21  Reports for every month from January 2010 to May 2011.

22   5.    The May 2011 DMH Monthly Bed Utilization data establishes that more

23  than one hundred (100) beds designated for male *Coleman* class members are vacant.  The

24  date shows that *none* of the fifty (50) Coalinga State Hospital (CSH) beds designated for

25  *Coleman* class members is filled with a *Coleman* class member, and that fifty-eight (58) of

26  the 256 Atascadero State Hospital (ASH) beds designated for *Coleman* class members are

27  currently vacant.

28

[515417-3]

DECL. OF AARON J. FISCHER ISO PLS.' RESPONSE TO SPECIAL MASTER'S REPORT ON DEFS.' PLAN RE
ICF AND ACUTE INPATIENT WAIT LISTS

6.    The DMH Monthly Bed Utilization data for the last sixth months for which DMH has provided data (December 2010 to May 2010) shows that zero *Coleman* class members have been admitted at CSH during that time period.  For the 256 ASH beds designated for *Coleman* class members, the census on the final day of each reporting period has been as follows:  December 2010 – 214 patients; January 2011 – 198 patients; February 2011 – 214 patients; March 2011 – 219 patients; April 2011 – 202 patients; May 2011 – 198 patients.  The average census of *Coleman* class members at ASH during this sixth-month period is 207.5, leaving an average of 48.5 vacant beds.

7.    Defendants have treated female mentally ill prisoners requiring inpatient hospitalization at Patton State Hospital (PSH) since 1992.  *See* Special Master's Interim Report On DMH Inpatient Care at 4, Dkt. No. 1143, Mar. 31, 2000 (45 beds designated for state prisoners to receive acute and intermediate inpatient care).  There are currently thirty (30) beds designated for female *Coleman* class members at PSH.

8.    A true and correct copy of Chapter 6 (Department of Mental Health Inpatient Program) of the Mental Health Services Delivery System's Program Guide (2009 Revision), which was provided to Plaintiffs' counsel by Defendants, is attached as **Exhibit A**.  According to Chapter 6 of the Program Guide, the inpatient hospitalization program at PSH provides longer-term mental health intermediate and non-acute inpatient (ICF) treatment for female prisoners who have a serious mental disorder requiring treatment that is not available within the California Department of Corrections and Rehabilitation (CDCR).  *See* Mental Health Services Delivery System Program Guide at 12-6-6.  PSH is currently the *only* facility that provides ICF inpatient treatment to female prisoners in CDCR.

9.    Among the criteria for DMH inpatient hospitalization is that the patient "is a danger to self or others as a consequence of a serious mental disorder."  *See* Mental Health Services Delivery System Program Guide at 12-6-2.

10.    Attached as **Exhibit B** is a true and correct copy of the CDCR-DMH Memorandum of Understanding:  Intermediate Care/Non-Acute Services, dated July 5,

2

1    2010, which was provided to Plaintiffs' counsel by Defendants.  The document provides

2    that:  "Inmate-patients who are deemed a significant assault risk, have a history of

3    victimizing other inmate-patients (including inciting others to act in a dangerous manner),

4    or present a high escape risk, shall not be referred to the State hospitals.  In these cases, the

5    psychiatric programs, VPP or SVPP, shall provide mental health services."  The identified

6    alternative program placements in the CDCR-DMH MOU – VPP and SVPP – provide

7    inpatient care to *male* prisoners only.

8          11.     These bases for excluding *Coleman* class members from DMH inpatient

9    facilities significantly predate the July 5, 2010 CDCR-DMH MOU.  Attached as

10   **Exhibit C** is a true and correct copy of the "Memorandum of Understanding:  California

11   Department of Corrections and California Department of Mental Health, Intermediate

12   Care/Non-Acute Services," dated June 8, 2005 and provided to Plaintiffs' counsel by

13   Defendants.  The June 8, 2005 document includes exclusionary criteria similar to those

14   identified in the July 5, 2010 CDCR-DMH MOU, as follows:  "Inmate-patients who are

15   deemed a significant assault risk, have a history of victimizing other inmate-patients

16   (including inciting others to act in a dangerous manner) or present a high escape risk, shall

17   be referred to the SVPP Intermediate Program.  CDC refers to these inmate-patients's as

18   high custody inmate-patients."

19         12.     Between January 2010 and May 2010, Defendants provided the Court and

20   Plaintiffs' counsel with documentation of three (3) rejections for female *Coleman* class

21   members referred for inpatient hospitalization at PSH for which the stated reason was the

22   patient's risk of assault or violence.

23         13.     Since June 2010, Defendants have provided the Court and Plaintiffs' counsel

24   sixteen (16) DMH rejection letters for fourteen (14) different female *Coleman* class

25   members referred for inpatient hospitalization at PSH.  Fifteen (15) of these rejections are

26   based on the 2010 CDCR-DMH MOU and a determination that the patient poses a risk of

27   assault or violence, as follows:  June 2010 (1 rejection); July 2010 (2 rejections);

28

[515417-3]

3

DECL. OF AARON J. FISCHER ISO PLS.' RESPONSE TO SPECIAL MASTER'S REPORT ON DEFS.' PLAN RE
ICF AND ACUTE INPATIENT WAIT LISTS

September 2010 (3 rejections); December 2010 (2 rejections); February 2011 (1 rejection); March 2011(2 rejections); April 2011 (2 rejections); and May 2011(2 rejections).

14.    Among the fifteen (15) rejections between June 2010 and May 2011, two patients were referred twice for inpatient hospitalization at PSH; these women were rejected both times.  One of these women was referred and rejected for inpatient hospitalization at PSH a *third* time, in January 2010.

15.    Each of the female *Coleman* class members rejected by DMH based on risk of violence or assault was referred for DMH inpatient care by CDCR clinicians.  The DMH rejection letters make no reference to DMH clinicians observing or evaluating these women following referral in order to assess current mental condition, including current risk of violence or assault.

16.    By way of example of the circumstances under which female class members are rejected from inpatient psychiatric hospitalization, one rejected patient was referred for PSH inpatient hospitalization in April 2011 based on "auditory hallucinations, delusional thinking, and impulse control difficulties []including self-injurious hitting, disrobing, and aggressive behavior."  "Acute psychotic symptoms" included "command-hallucination, paranoia, and delusions leading to self-injury, violence, medication noncompliance, and disorganized behavior."  Her treatment expectations were identified as "decrease psychotic symptoms, largely auditory hallucinations and delusional thinking, to a level that [she] is able to cope with appropriately.  Increased impulse control and refraining from inappropriate behaviors . . . ."  She was rejected based on the 2010 CDCR-DMH MOU's provision regarding security considerations.  DMH cited the patient's "History of severe violence at PSH":  "[The patient] was admitted to PSH as a PC1370 from 2/9/10 to 5/7/10. The following is taken from her discharge summary:  'It is important to note that during her stay in the hospital there was an instance when she assaulted a female peer (same peer twice). . . There was another incident on 04/25/2010 when it was believed that during a visit, her visitor gave her a 20-dollar bill without approval of the hospital staff.  Also, [the patient] was suspected of smoking on the unit multiple times, although it was not officially

proven.'" Although the reported violent incidents were based on the patient's "delusional beliefs that EOP officers are telling her to hit others" and that she is "receiving 'messages from her mother inside her head to take care [of] certain inmates," she was rejected from PSH inpatient admission following clinical referral, with a notation that a "decrease in her risks of violence is necessary prior to reconsideration of this referral." The DMH rejection letter is included with the DMH Bed Utilization Report data provided by Defendants for April 2011. This report was filed under seal with the Court on May 16, 2011. (Dkt. No. 4006.)

17. Another female *Coleman* class member was rejected in March 2011, though she had three prior PSH hospitalizations, the most recent of which was in 2007. She had a long history of psychotic symptoms, carrying diagnoses that include Schizophrenia, Schizoaffective Disorder, Bipolar Disorder, Psychotic Disorder NOS, and Polysubstance Dependence. At the time of the referral, her primary diagnosis was Bipolar I most recent episode manic, severe with psychotic features. Her symptoms have included mania, psychosis including agitation; loud, fast, rapid, pressured speech; tangential thought process; responding to internal stimuli; delusions that "people are reading my mind"; bizarre behavior including disrobing, and smearing blood; poor hygiene; and decreased sleep. She was rejected based on the 2010 CDCR-DMH MOU's provision regarding security considerations. The cited episodes of recent "significant violence" were "str[i]k[ing] a male officer in the face, and grabb[ing] another officer's gluteus maximus," "tr[ying] to run and push her way out of her cell, and almost [running] into her psychiatrist," and "push[ing] her arm through the food port and attempt[ing] to grab [her psychiatrist]." While she had several CDCR disciplinary violations with offenses that include fighting and "mutual combat," there is no documentation in the DMH rejection letter of violent or assaultive behaviors during her previous PSH hospitalizations. The basis for her referral for DMH inpatient care was "inadequate functioning in the prison milieu, and persistent requirement for MHPBU services/failure to transition to EOP treatment setting." She was placed on a *Keyhea* involuntary medication order on

1    March 24, 2011, the day before she was rejected from DMH inpatient hospitalization.  The

2    DMH rejection letter is included with the DMH Bed Utilization Report data provided by

3    Defendants for March 2011.  This report was filed under seal with the Court on April 15,

4    2011.  (Dkt. No. 3999.)

5           18.    Another female *Coleman* class member was rejected in February 2011

6    following referral for PSH inpatient hospitalization, following *nine (9) MHCB admissions*

7    in eight months due to self-injurious behavior and self-harm.  She was rejected based on

8    "significant behavioral problems" during a PSH hospitalization approximately one year

9    earlier, during which time she had "episodes of assaultive behavior" requiring physical

10   restraint.  She was rejected based on the 2010 CDCR-DMH MOU's provision regarding

11   security considerations.  The DMH rejection letter noted that she had not manifested

12   violent behavior for several months, yet based the rejection on her history of violence.  The

13   DMH rejection letter is included with the DMH Bed Utilization Report data provided by

14   Defendants for February 2011.  This report was filed under seal with the Court on March

15   15, 2011.  (Dkt. No. 3992.)

16          19.    Another female *Coleman* class member was referred and rejected in

17   December 2010 and again in May 2011.  She had eight (8) prior inpatient hospitalizations

18   between 1989 and 2007, including three (3) hospitalizations at PSH.  In the five (5) months

19   prior to referral, she had ten (10) Outpatient Housing Unit admissions, primarily for

20   "suicidality and self-injury," including "carv[ing] letters and symbols on her thighs."

21   DMH rejected the referral based upon an "elevated risk of assault."  In May 2011, she was

22   again referred for inpatient hospitalization at PSH.  The reason for referral included the

23   following:  "When she has a supportive environment, the patient is able to engage and

24   would benefit from a lesser restrictive unit with other peers.  [Patient] would also benefit

25   from assistance with medication management and compliancy issues with treatment."  The

26   May 2011 referral noted that "Patient struggles in a closed environment with few choices

27   and assistance with learning to transition in an open environment may provide benefit to

28   her self-concept, as well as reduce her issues with paranoia and lower development status."

[515417-3]

1  CDCR clinicians noted that "[i]t is hoped that the patient will benefit from a least

2  restrictive environment with the ability to have opportunity for structured activities with

3  peers similar to her."  DMH again rejected the referral based upon an "elevated risk of

4  assault," citing the 2010 CDCR-DMH MOU's provision regarding security considerations.

5  The DMH rejection letters are included with the DMH Bed Utilization Report data

6  provided by Defendants for December 2010 and May 2011.  The December 2010 report

7  was filed under seal with the Court on January 18, 2011.  (Dkt. No. 3975.)  The May 2011

8  report was filed under seal with the Court June 15, 2011.  (Dkt. No. 4021.)

9       20.    The PSH census of *Coleman* class members has substantially decreased over

10  the past year.  The census has steadily dropped from twenty-seven (27) at the end of the

11  June 2010 reporting period to twelve (12) at the end of the May 2011 reporting period.

12  According to the most recent DMH Monthly Bed Utilization Report, there were eighteen

13  (18) vacant PSH beds designated for female *Coleman* class members.

14       21.    On June 2, 2011, Defendants provided Plaintiffs a copy of the updated

15  activation schedules for Court-ordered projects.  A true and correct copy of Defendants'

16  Letter to Special Master re:  *Coleman* Construction Activation Schedules, and attached

17  exhibits, is attached as **Exhibit D**.

18       I declare under penalty of perjury under the laws of the United States and the State

19  of California that the foregoing is true and correct, and that this declaration is executed at

20  San Francisco, California this 1st day of July, 2011.

21

22                               */s/ Aaron J. Fischer*

                             Aaron J. Fischer

23

24

25

26

27

28

DECL. OF AARON J. FISCHER ISO PLS.' RESPONSE TO SPECIAL MASTER'S REPORT ON DEFS.' PLAN RE
ICF AND ACUTE INPATIENT WAIT LISTS

# EXHIBIT A

# MENTAL HEALTH SERVICES DELIVERY SYSTEM

# PROGRAM GUIDE

## 2009 REVISION



## Division of Correctional Health Care Services

## Department of Corrections & Rehabilitation

# TABLE OF CONTENTS

CHAPTER 1 ..................................................................... Program Guide Overview

CHAPTER 2 ...................................... Reception Center Mental Health Assessment

CHAPTER 3 ................................. Correctional Clinical Case Management System

CHAPTER 4 ........................................................... Enhanced Outpatient Program

CHAPTER 5 ..................................................................... Mental Health Crisis Bed

CHAPTER 6 ................................ Department of Mental Health Inpatient Program

CHAPTER 7 ................................................................. Administrative Segregation

CHAPTER 8 ........................................................................ Security Housing Unit

CHAPTER 9 ...................................................................... Psychiatric Services Unit

CHAPTER 10 ...................................................... Suicide Prevention and Response

APPENDIX A ........................................................................... Glossary of Terms

ATTACHMENT A ......................................................... Confidentiality Guidelines

ATTACHMENT B ....................................................... Inmate Disciplinary Process

ATTACHMENT 1 .......................... Department of Mental Health Contraband List

ATTACHMENT 2 .............. Department of Mental Health Transfer/Discharge List

ATTACHMENT 3 ............... Dept. of Mental Health Day Treatment Referral Form

ATTACHMENT 4 ................................ Other Department of Mental Health Forms

ATTACHMENT 5 .......................................................................... MHSDS Forms

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

# CHAPTER 6
## Department of Mental Health Inpatient Program

A. **INTRODUCTION**

The California Department of Corrections and Rehabilitation (CDCR) is responsible for providing acute and intermediate inpatient care, in a timely manner, to those CDCR inmates clinically determined to be in need of such care. CDCR currently maintains a contract with the California Department of Mental Health (DMH) to provide acute and long-term intermediate inpatient mental health care to inmate-patients. Referrals to a DMH facility may be made by CDCR clinicians for inmate-patients who are so severely disturbed or suicidal that their treatment needs cannot be met in a CDCR treatment program or who may require a comprehensive psychiatric assessment.

1. Inmate-patients who have had repeated admissions to a CDCR Mental Health Crisis Bed (MHCB) or have been in an MHCB for longer than ten days shall be considered for such a referral.

2. The following DMH institutions are available for referrals for the indicated level of care:

   Acute Psychiatric Care: Vacaville Psychiatric Program (VPP), Acute Psychiatric Program (APP) (males only);

   Emergency Acute Psychiatric care: (Mental Health Crisis Beds) ASH and VPP under the conditions prescribed in the acute Memorandum of Understanding (MOU);

   Intermediate Care: Atascadero State Hospital (ASH) (males only); Coalinga State Hospital (CSH) (males only); Patton State Hospital (PSH), (females only); Salinas Valley Psychiatric Program (SVPP), (high security males only); Vacaville Psychiatric Program (VPP); and

   Day Treatment: Vacaville Psychiatric Program, Day Treatment Program (DTP) (males only).

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

## B. OVERALL TREATMENT CRITERIA

### *Inpatient Placement General Requirements*

The inmate-patient to be referred must have a Serious Mental Disorder (See Mental Health Services Delivery System [MHSDS] Program Guides, Chapter 1, Program Guide Overview) and:

1. Have marked impairment and dysfunction in most areas (daily living activities, communication and social interaction) requiring 24-hour inpatient care, or

2. Is a danger to self or others as a consequence of a serious mental disorder, or

3. Meets admission criteria for any of the DMH programs.

## C. DMH ACUTE PSYCHIATRIC PROGRAM (APP)

The APP is a short-term, intensive-treatment program with stays usually up to 30 calendar days to 45 calendar days provided. Actual length of stay shall be determined by the Interdisciplinary Treatment Team on a case-by-case basis. Inmate-patients in the APP who are determined to need long-term mental health inpatient care shall be referred to an appropriate DMH intermediate care program.

Referral to the APP is considered when, in the judgment of the CDCR treating clinician, the inmate-patient meets the following DMH admission criteria:

### *Admission Criteria*

1. Any inmate-patient (age 18 or older) who suffers impairment of functioning with signs and symptoms that may be attributed to either an acute major mental disorder or an acute exacerbation of a chronic major mental illness, as defined by the current Diagnostic and Statistical Manual of Mental Disorders (DSM). Such signs and symptoms of illness may render the inmate-patient:

   - Unable to carry out adequately the normal routines of the institution,

   - Unable to provide for his basic needs or use the supportive treatment resources available to him, or

   - A significant risk of harming himself or others.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

2. Any inmate-patient who has been assessed as a severe suicidal risk.

3. Additional factors that justify consideration for referring an inmate to the APP include:

   - The inmate-patient has symptoms or secondary conditions that require inpatient mental health treatment.

   - The inmate-patient engages in self-injurious behavior that has not responded to treatment in a CDCR facility. Without mental health treatment, the inmate is likely to develop serious medical complications or present a threat to his life.

4. Each inmate-patient referred from another CDCR institution who is not accepted for direct placement-evaluation to the APP due to lack of an available bed shall be retained at the sending institution until a bed is available.

5. Inmate-patients admitted to the APP shall be inmates anticipated to be stabilized sufficiently for release from DMH within 30 to 45 days.

### *Referral Procedure*

1. Each referral to the APP is the responsibility of CDCR clinical staff. Referrals shall be made whenever in the judgment of the treating clinician the inmate-patient's condition warrants inpatient care and meets the admission criteria for APP. Referrals generally are made by a clinician working in a CDCR MHCB Program or Enhanced Outpatient Program (EOP). Referrals must be completed within two working days of identification.

2. CDCR shall transmit standardized referral information to the appropriate DMH program on the DMH Referral Form/Acute Psychiatric Care. The referral packet shall be sent to the APP Admission and Discharge Coordinator.

3. DMH shall review the referral packet within one working day of receipt. DMH staff shall immediately notify the referring institution on the DMH Referral Decision Form by fax of their decision. The decision shall provide the detailed reasons for any rejections.

4. An inmate-patient considered for transfer to the APP must sign a consent to treatment at DMH or is entitled to a hearing in accordance with Title 15, Section 3369.1 (a) unless the inmate waives the hearing. Documentation of the hearing shall be processed in accordance with Department Operations Manual Section 62030.4.2. Written consent shall be obtained, or the hearing shall be conducted by the prison prior to transfer.

---

| Department of Mental Health<br>Inpatient Program | Mental Health Services Delivery System |
|---|---|

5.  The referral packet shall be completed fully and include all required information as follows:

- If the inmate-patient is referred from a **Mental Health Crisis Bed (MHCB)**, then the referral packet shall only include the following three items with their sub-components:

    a.  Written consent OR documentation of the required due process hearing, or a valid waiver of the due process hearing if the inmate-patient refuses to sign consent to transfer;

    b.  Custody Case Factor Sheet; and

    c.  Mental Health Crisis Bed Inpatient Record including but not limited to:

    > **Admission summary**
    > **Progress Notes**
    > **Orders and lab orders**
    > **Interdisciplinary treatment plan**
    > **Interdisciplinary Treatment Team notes**
    > **Discharge summary**

- If the inmate-patient is referred from **any other level of care (EOP, Correctional Clinical Case Management System [CCCMS]) or other location,** then the referral packet shall include:

    a.  Written consent OR documentation of the required due process hearing (CDCR 128-MH6), or a valid waiver of the due process hearing if the inmate-patient refuses to sign consent to transfer;

    b.  Custody Case Factor Sheet;

    c.  CDCR suicide risk assessment including a Suicide Risk Assessment Checklist (SRAC);

    d.  Current Treatment Plan – CDCR 7388-MH, *Mental Health Treatment Plan*

    e.  Transfer Medical Summary or Health and Physical (H&P);

    f.  Pharmacy Profile or Medication Administration Record (MAR);

| Department of Mental Health | Mental Health Services Delivery System |
|---|---|
| Inpatient Program | |

  g. Supporting Keyhea documentation or Keyhea Order (when relevant for involuntary medications); and

  h. TB chrono from the referring institution.

### *Admission Procedure*

1. The APP shall notify the referring institution in writing of the decision on a referral (accept, deny, defer) within one (1) calendar day of the referral including, if accepted, the APP bed number. Inter-institutional endorsements for transfer of inmate-patients accepted into the APP are processed by the Classification and Parole Representative (C&PR) at California Medical Facility (CMF).

2. Inmate-patients who have been accepted shall be moved via special transport to DMH within 72 hours of bed assignment. In any event all transfers shall be accomplished within 10 days of the date of the referral.

3. Referred inmate-patients who are accepted into the APP are transferred from the referring institution as "psych and return" cases (i.e., in most circumstances the inmate-patient will be returned to the referring institution provided that institution can provide appropriate treatment and custody). Inmate-patients referred to the APP, who are accepted but are deferred for lack of bed availability, are retained at the referring institution pending a bed assignment.

4. APP staff and the CMF Chief Deputy, Clinical Services, or designees, shall prioritize, on a daily basis, any inmate-patient awaiting transfer into the APP. Prioritization for admission is based upon the clinical acuity of the inmate-patient, the length of time the inmate-patient has been on the waiting list, and the availability of mental health staff at the referring institution. APP staff shall separately review, on a weekly basis, APP inmate-patients who are clinically ready to be discharged to a CDCR institution.

5. DMH is responsible for completing any referral of an APP inmate-patient to any other DMH program.

### *Discharge Procedures*

1. The APP will contact the receiving institution's designated "DMH Contact" and fax the clinical discharge summary with continuing care recommendations to the designated clinician at the institution. The discharging clinician shall also telephone the designated clinician at the receiving institution to notify that institution of the impending discharge of the inmate-patient and describe the inmate-patient's recommended aftercare plan.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

2. For each inmate-patient returning to CDCR from the APP the following documents shall be transferred with the inmate-patient to the respective CDCR institution:

- Psychiatric Discharge Summary or Recommended Continuing Care Plan (RCCP);

- Nursing Assessment or Discharge Summary;

- Current physician's orders and/or MAR;

- Current Treatment Plan; and

- Keyhea Order (if applicable).

The inmate-patient shall not be placed in the transport vehicle without the above documents.

In addition, a discharge packet will be faxed by DMH within two weeks of discharge. The discharge packet shall include:

- Interdisciplinary Notes for past 15 days;

- Physician Progress Notes for past 15 days;

- Relevant Consults; and

- If applicable, forms specific to psych and return, mental health placement and transfer information for parolees.

All DMH programs shall provide written copies of the aforementioned cited materials. Due to its proximity to CMF, VPP shall provide the entire Inpatient Medical Record for review by the CMF Chief of Mental Health instead of the materials cited above.

## D. DMH INTERMEDIATE CARE FACILITIES: ASH, CSH, PSH, SVPP, and VPP

The Intermediate Care Programs (ICF) at ASH, CSH, SVPP and VPP are for male inmate-patients; the program at PSH is for female inmate-patients. These programs provide longer-term mental health intermediate and non-acute inpatient treatment for inmate-patients who have a serious mental disorder requiring treatment that is not available within CDCR. There will not be direct admissions from CDCR to CSH at this time.

Male inmate-patients who require close or high custody shall be referred only to SVPP.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

Custody Level IV male inmates that do not require close or high custody may be referred to ASH or VPP.

The ICF programs have a full complement of mental health staff including psychiatrists, psychologists, clinical social workers, rehabilitation therapists, psychiatric technicians, and registered nurses. Most housing is dormitory-type rooms. The inmate-patients have access to the day room, supervised yard access and are fed in a dining room. The inmate-patients receive a multidisciplinary assessment. From this information an individualized treatment program is developed from a wide variety of treatment modalities including group and individual psychotherapy, medication management, depression and crisis management, training in daily living skills and interpersonal skills, substance abuse, management of assaultive behavior, supportive counseling, modification of maladaptive behaviors, and educational and vocational programs.

### *Admission Criteria*

Referral to an ICF is considered when in the judgment of the CDCR treating clinician the inmate-patient meets the following DMH admission criteria:

1. An Axis I major (serious) mental disorder with active symptoms and any one of the following:

   - As a result of the major mental disorder, the inmate-patient is unable to adequately function within the structure of the CDCR EOP level of care.

   - The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder, serious to major impairment of functioning in most life areas, stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior, or stabilization of refractory psychiatric symptoms.

   - The inmate-patient requires a neurological/neuropsychological consultation.

   - The inmate-patient requires an inpatient diagnostic evaluation.

   - The inmate-patient would benefit from a comprehensive treatment program with an emphasis on skill (i.e., coping, daily living, medication compliance) development with increased programming and structured treatment environment.

   - The inmate-patient's psychiatric medication history indicates that a clozapine trial might be useful.

| Department of Mental Health<br>Inpatient Program | Mental Health Services Delivery System |
|---|---|

- Inmate-patients, who are deemed a significant assault risk, have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner) or present a high escape risk, shall be referred to the SVPP Intermediate Program. CDCR refers to these inmate-patients as high custody inmate-patients.

- The inmate-patient's Global Assessment of Functioning indicates behavior that is considerably influenced by psychotic symptoms; OR serious impairment in communication or judgment; OR inability to function in almost all areas.

- For SVPP only, the inmate-patient is medically appropriate as determined by the receiving prison medical staff. The program psychiatrist will determine mental health suitability. If agreement is not reached refer to the Coordinated Clinical Assessment Team (CCAT) process in Section VI. Any denial for medical reasons will be immediately referred to the, Assistant Deputy Director, CDCR, Division of Correctional Health Care Services (DCHCS).

2. In addition to a primary Axis I disorder, admission to VPP and SVPP shall be considered when:

- The patient engages in ritualistic or repetitive self-injurious/suicidal behavior that has not responded to treatment in a CDCR facility. Without inpatient mental health treatment, the inmate-patient is likely to develop serious medical complications or present a threat to his life.

- The patient is chronically suicidal and has had repeated admissions to a Mental Health Crisis Bed (MHCB).

3. Inmate-patient committed to DMH by the courts as being incompetent to stand trial per Penal Code, Section 1370.

Inmate-patients who commit an offense while in CDCR, are referred to the District Attorney for prosecution, and are found by the court to be incompetent to stand trial per Penal Code, Section 1370 will first be considered for the SVPP. If there are no custodial or clinical reasons for admission to SVPP, they will then be considered for other DMH programs.

4. Whenever the CDCR institution referring clinician is in doubt concerning the appropriateness of referring a particular patient, or the appropriate DMH program to meet the inmate-patient's custody needs, the referring clinician will discuss the case with the

| Department of Mental Health | Mental Health Services Delivery System |
|---|---|
| Inpatient Program | |

interdisciplinary treatment team (IDTT). If the IDTT does not reach consensus, or does not agree regarding the appropriate DMH program, a case conference shall be scheduled with a clinical facilitator from the headquarters DCHCS office. Case conference calls can be requested by calling the Mental Health Program Specialist at DCHCS headquarters.

5.  Inmate-patients shall be eligible for admission to a DMH program regardless of parole date. CDCR will provide all discharge and community planning. CDCR will transfer the inmate-patient from the DMH program to a CDCR institution for release at least one calendar day prior to the release date.

6.  Inmate-patients who are serving a Security Housing Unit (SHU) term and are clinically appropriate for placement in an ICF, shall be referred to the sending institution's Institutional Classification Committee (ICC). The IDTT/ICC shall consider suspension of the SHU term.

    •  When the sending institution's IDTT/ICC decides to suspended the SHU term, the inmate-patient shall be eligible to participate in the entire ICF program upon arrival at the receiving institution.

    •  It is not necessary for the sending institution's ICC to suspend a determinate or indeterminate SHU term prior to transferring the inmate-patient if the ICC is disinclined to take such action due to safety and/or security concerns. The inmate-patient shall be transferred to DMH with the SHU term in place

    •  In cases where the sending institution's IDTT/ICC elects not to suspend the SHU term, the inmate-patient may participate in only Phase I of the ICF program. The inmate-patient will be evaluated in Phase I and a decision regarding suspension of the SHU term will be made by the receiving institution's IDTT/ICC.

*Referral Procedure*

Referrals must be completed within five working days of identification by IDTT if inmate-patient consent is obtained and within ten working days of identification if due process hearing is required.

The following CDCR institutions retain Unit Health Records (UHR) for inmate-patients referred to ASH/PSH. California Men's Colony (CMC) shall retain records of inmate-patients referred to ASH. California Institution for Women (CIW) shall retain records for female inmate-patients referred to PSH.

---

| Department of Mental Health | Mental Health Services Delivery System |
|---|---|
| Inpatient Program | |

1. All referrals shall be made on the required referral form – <u>Department of Mental Health Referral Form-Intermediate Care Program.</u> The referral packet shall be sent to the DMH Forensic Coordinator or the Admission and Discharge Coordinator. The form shall be fully completed and include all required information as follows:

   - Transfer Medical Summary or History & Physical for Transfer to DMH. The H&P is required for SVPP and must have been completed within the last 30 days;

     **Current Treatment Plan – CDCR 7388-MH, *Mental Health Treatment Plan*;**

   - Due Process documentation of the hearing OR Written consent (Use CDCR 128C until CDCR 128-MH6 is implemented), or a valid waiver of the due process hearing is required for referral if the patient refuses to sign consent to transfer;

     **Pharmacy Profile;**
     **Supporting Keyhea documentation or a Keyhea Order (when relevant);**
     **Interdisciplinary Progress Notes for past 15 days (May be less for new arrival to reception center);**
     **TB chrono from the referring institution;**
     **Abstract of Judgment (For State Hospitals only);**
     **Legal Status Summary (For State Hospitals only);**
     **Chrono History (For State Hospitals only);**
     **Custody Case Factor Sheet;**
     **CDCR Suicide Risk Assessment.**

2. Any CDCR clinical concerns regarding the referral shall be discussed with the Chief of Mental Health, or designee, at DCHCS, prior to completion of the referral form. Questions regarding the transfer process shall be discussed with Health Care Placement Oversight Program (HCPOP), or designated Central Office Staff. (See also CCAT below).

3. DMH shall review the referral packet within three working days of receipt, and shall immediately notify the referring institution by fax of the decision to accept or reject. The decision shall provide detailed reasons for any rejections.

***Transfer Procedure***

1. The CDCR institution shall provide for transportation of a patient between a DMH program and a CDCR institution or DMH psychiatric program. The parole unit or region shall provide for transportation of a parolee between a DMH program and a local

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

detention facility or community placement.  Transfer must take place within 30 days of referral if accepted at DMH.

2. A transfer schedule shall be established by the CDCR referring institution and the respective DMH program.

3. Inmate-patients who have been accepted shall be transported to DMH within 72 hours of bed assignment.

4. Each patient or parolee admitted to a DMH program shall have with him/her, unless already sent, all documentation listed in Section V. B. 4.  If, following the patient's admission, it is determined by assessments of the DMH staff that the patient does not meet admission criteria for the inpatient mental health program CDCR will transport the inmate-patient back to an institution on expedited basis but no more than 72 hours.

   If the admission was based on a 5150 evaluation by the state hospital and the patient does not meet criteria for continued hospitalization or conservatorship.  CDCR/Parole will transport the patient back to prison or the inmate-patients county of residence within 24 hours.  The state hospital cannot retain a patient beyond 24 hours and if the inmate-patient is not picked up within this time period, it may become necessary for the state hospital to discharge the inmate-patient to the street.

5. A patient who has been found to pose an unusual and severe security risk to the DMH program in which he/she is housed shall be transferred by CDCR to a CDCR institution within 24 hours.  However, if the security risk is on the basis of mental disorder rather than criminality or personality disorder, DMH shall make every effort to retain and treat the patient or parolee in the DMH hospital.

6. A patient or parolee's personal property and funds are to accompany him/her at the time of delivery to and from the DMH hospital.

   • Property, other than legal materials, shall be limited to no more than can be stored within six cubic feet.

   • The property box from CDCR shall be inventoried and sealed.  Any Board of Control Claim resulting from items missing from a patient or parolee's property upon admission to the DMH hospital is the responsibility of CDCR.

   • CDCR shall ensure that items on the DMH Hospital Contraband List (see Attachment # 1-Contraband List) are not transferred to a DMH hospital with the patient or parolee's personal property.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

7. Each patient or parolee shall be subject to TB evaluation by DMH upon admittance.

### *Utilization Management (UM)*

1. CDCR reserves the right to inspect, monitor, and perform utilization reviews prospectively, concurrently, or retrospectively regarding the courses of treatment or inpatient care provided to CDCR's inmate-patient. Such reviews shall be undertaken to determine whether the course of treatment or services was prior authorized, medically necessary and performed in accordance with CDCR rules and guidelines. DMH agrees to make available, upon request by CDCR, for purposes of utilization review, an individual patient's medical record and any committee reviews and recommendations related to a CDCR patient.

2. DMH acknowledges and agrees that concurrent utilization management review shall not operate to prevent or delay the delivery of emergency treatment.

3. DMH acknowledges that the care of a patient at DMH shall be reviewed by CDCR Utilization Management (UM) nurses or designated party and by a Joint CDCR/DMH Review Process.

4. CDCR UM nurses or designated party will gather data and review cases of CDCR inmate-patients in DMH programs. CDCR UM nurses or designated party will report their findings and make recommendations to the CDCR Health Care Manager and CDCR Chief Psychiatrist or their designee(s). CDCR and DMH managers or their designees will meet monthly to review the data. Each DMH program also will have a joint CDCR/DMH UM process that will review individual cases.

   If there is a disagreement about discharge, the UM nurse will review the patient's record and forward a recommendation to the Joint CDCR/DMH UM Review Process. If there continues to be disagreement, the recommendation will be conveyed to the CCAT.

### *Discharge Criteria*

1. The inmate-patient has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which hospitalization was required is in substantial remission, and the remaining symptoms are those of a disorder for which continued DMH inpatient care is not necessary, the inmate-patient will be returned to CDCR for ongoing treatment; or

2. Evaluation during hospitalization has resulted in a change of diagnoses such that continued hospitalization is not appropriate or necessary.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

3. If requested by DMH, an inmate-patient who has withdrawn informed consent for mental health treatment or psychiatric medication, but for whom continued treatment is otherwise recommended, may be returned to CDCR after all other clinical and legal avenues to obtain authorization to treat have been exhausted, if the following two criteria have been met:

- Withdrawal of informed consent shall be demonstrated by seven calendar days of continuous refusal to take oral medication or 30 calendar days of continuous refusal to accept scheduled depo-injectable medication, and documentation of discussions between treating DMH psychiatrists and other team members and the patient regarding the risks and benefits of continuing medication.

- Documentation that the patient has not met criteria for involuntary treatment for at least the last seven calendar days.

### *Discharge Procedure*

1. Inmate-patients will be returned to the institution from which they came per the "psych and return" policy provided that institution can meet the level of care and security needs of the inmate-patient. Generally most inmate-patients will be returned to an institution that has an EOP. The EOP IDTT may decide to discharge the inmate-patient to a lower level of care after the initial 14-28 day evaluation period.

2. Inmates who are paroling and require ongoing treatment will be referred to the Parole and Community Services Division (P&CSD) Transition Case Management Program and to a Parole Outpatient Clinic or to a State hospital per Penal Code 2974.

3. DMH shall fax a copy of the Discharge Summary to the designated "DMH contact", of the receiving institution at the time of notification of discharge. DMH shall also call the receiving institution. The inmate-patient shall then be returned to the CDCR institution within five working days after the time of notification, or resolution of any appeal, whichever occurs later.

4. Appeals for denial of return to CDCR will be reviewed by the Coordinated Clinical Assessment Team (CCAT), Part V of this document.

5. Emergency returns to CDCR, shall be accomplished within twenty-four hours. Such returns will be with prior notification and approval by telephone of the CDCR institution's C&PR staff and Mental Health Program Director, or designee. DMH shall call the receiving institution to provide continuity of care including medication.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

A dictated, typed discharge summary shall follow as soon as practicable, but not more than fourteen days after return.

6. Discharge Information: For each inmate-patient returning to CDCR from a DMH program, DMH shall ensure that the following documents be shall be transferred with the inmate-patient to the respective CDCR institution:

- Psychiatric Discharge Summary;

- Nursing Assessment or Discharge Summary;

- Current Physicians orders and/or MAR;

- Current Treatment Plan;

- Keyhea Order (if applicable).

The inmate-patient shall not be placed in the transport vehicle without the above documents. For each parolee returning to (P&CSD) supervision, DMH shall ensure that the parolee's documents shall be forwarded to the Chief Psychiatrist of the respective Parole Region.

In addition, a DMH discharge packet will be faxed within two weeks of discharge. The discharge packet shall include but not be limited to (see Attachment #2-DMH Discharge Checklist:

- Interdisciplinary Notes for past 15 days;

- Physician Progress Notes for past 15 days;

- Relevant Consults;

- If applicable, forms specific to psych and return, mental health placement and transfer information for parolees.

The DMH psychiatric programs will include in their discharge packets, the forms specific to psych and return, mental health placement and transfer information for parolees.

All DMH programs shall provide written copies of the aforementioned cited materials. For VPP and SVPP, due to their close proximity to CMF and SVSP, shall provide the

| Department of Mental Health | Mental Health Services Delivery System |
|---|---|
| Inpatient Program | |

entire UHR for review by the CMF and SVSP Chief of Mental Health instead of the above.

7. When an inmate returns to a prison from DMH, the Receiving & Release nurse shall notify Mental Health Service upon arrival. The inmate shall be evaluated by a mental health clinician within 24 hours of arrival. Medications shall be continued according to Inmate Medical Services Policies and Procedures, *Volume 4, Chapter 11, Medication Management.*

## E. DMH DAY TREATMENT PROGRAM (DTP) at CMF

The DTP is a comprehensive treatment program with an emphasis on skill development. This program provides treatment for inmate-patients who require a higher LEVEL OF CARE than is provided in EOP but do not require 24-hour nursing care. The program includes increased programming and supervision to improve level-of-functioning, reduce further need for inpatient treatment and promote successful adjustment to the EOP, CCCMS, GP or parole environment.

### *Admission Criteria*

To be accepted the inmate-patient:

1. Has an Axis I major (serious) mental disorder with active symptoms.

2. Does not require 24-hour nursing supervision.

3. Suffers from mild to moderate impairment of functioning in most life areas that would benefit from focused and comprehensive skill development to improve functioning within the prison setting or in preparation for parole, and/or requires continuing stabilization of psychiatric symptoms in a more structured setting.

4. Is able to function in a structured therapeutic setting with minimal staff prompting.

5. Is able to participate in own treatment planning.

6. Has had no serious suicide attempts in the past 30 days.

7. Has no acute medical issues.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

## Referral Process

All referrals shall include a completed DTP referral form and a referral packet, which consists of:

1. Medical H&P for Transfer to DMH;

2. Current Treatment Plan – CDCR 7388;

3. Due process or written consent;

4. Pharmacy profile;

5. Interdisciplinary Progress Notes for past 15 days;

6. TB chrono from the referring institution;

7. Custody Case Factor Sheet; and

8. CDCR Suicide Risk Assessment (including a SRAC).

DMH psychiatric programs (VPP and SVPP) shall require only a transfer form (see Attachment #3-DMH Referral/Transfer Form) and case factor sheet for DMH-to-DMH transfers.

All male CDCR institutions shall provide written copies of the aforementioned cited materials except for CMF where due to their proximity they shall provide the entire UHR for review by the DTP Admission and Discharge Coordinator or designee.

## Discharge Process

DTP options for return to CDCR:

1. Return to the sending institution provided that institution can meet the treatment needs.

2. If the inmate-patient requires continued mental health care, transfer to an appropriate LEVEL OF CARE (see Chapter 3, CCCMS, and Chapter 4, EOP, for inclusion criteria).

3. Discharge to parole with a referral to a Parole Outpatient Clinic as needed.

| **Department of Mental Health**<br>**Inpatient Program** | **Mental Health Services Delivery System** |
|---|---|

4. The inmate-patient shall be returned to the CDCR institution on an expedited basis but no later than 5 working days after the time of notification.

### *Discharge Procedure*

1. For each inmate-patient returning to CDCR from the DTP, the DTP shall ensure that the following documents be shall be transferred with the inmate-patient to the CDCR institution (see Attachment #2-DMH Discharge Checklist):

   - Psychiatric Discharge Summary;

   - Nursing Assessment or Discharge Summary;

   - Current Physicians orders and/or MAR;

   - Current Treatment Plan; and

   - Keyhea Order (if applicable).

   The inmate-patient shall not be placed in the transport vehicle without the above documents. For each parolee returning to P&CSD supervision, the DTP shall ensure that the parolee's documents shall be forwarded to the Chief Psychiatrist of the Parole Region.

   In addition, a discharge packet will be faxed within two weeks of discharge. The discharge packet shall include but not be limited to:

   - Interdisciplinary Notes for past 15 days;

   - Physician Progress Notes for past 15 days;
   - Relevant Consults;

   - If applicable, forms specific to psych and return, mental health placement and transfer information for parolees.

   The DTP shall provide written copies of the aforementioned cited materials except for CMF where due to their proximity; they shall provide the entire UHR for review by the CMF Chief of Mental Health or designee.

| Department of Mental Health Inpatient Program | Mental Health Services Delivery System |
|---|---|

## F. PROCESS FOR CENTRALIZED DECISION MAKING FOR REJECTIONS AND INCOMPLETE PACKETS-CCAT

The Coordinated Clinical Assessment Team (CCAT) shall review referrals of CDCR inmate-patients that were rejected by DMH, and referrals where incomplete items were not resolved within two working days. Conducted by members of both the DMH and CDCR DCHCS, CCAT provides a centralized approach to expedite the review and decision making process for inmate-patients referred to DMH.

When any DMH program rejects an inmate-patient for admission, or is unable to resolve incomplete referral items within two days after referral, a designee from DMH Long Term Care shall contact a designee from CDCR DCHCS to initiate the CCAT process. The CDCR, DCHCS designee shall facilitate a telephone or videoconference to discuss the case with involved clinical and custody staff.

The CCAT shall include (but not be limited to):

- Senior mental health clinician(s) from DCHCS

- CDCR HCPOP representative(s)

- CDCR Classifications Services Unit representative(s)

- The referring clinician and supervising clinician(s) from the referring CDCR institution, and

- Senior clinician(s) from the relevant DMH programs.

When reviewing a rejection, a senior clinician from each potentially relevant DMH program shall participate in the review. When reviewing an incomplete packet, only the DMH senior clinician from the affected state hospital or psychiatric program shall be required to participate.

Case Conferences: The CDCR, DCHCS designee shall schedule case conferences upon request by DMH and/or CDCR clinicians regarding a difficult or perplexing inmate-patient case, including repeated admissions of the same inmate-patient in a short time frame.

## G. HEALTH CARE PLACEMENT OVERSIGHT PROGRAM

The HCPOP shall assist institution staff in referring and placing an inmate-patient in a DMH facility in the following ways:

| Department of Mental Health | Mental Health Services Delivery System |
|---|---|
| Inpatient Program | |

1. Assist field staff with DMH intermediate or acute LEVEL OF CARE referrals

   - Coordinate with mental health staff at DCHCS headquarters for proper determination of appropriate DMH LEVEL OF CARE and subsequent placement determination.

   - Assist field staff concerning the referral process for the different DMH placement settings.
   - Assist field staff regarding Program Guide and MOU placement requirements such as timelines and means of transportation.

2. HCPOP staff shall assist field staff with appeals of referrals denied by DMH for clinical and custody reasons

   - Assist field staff regarding the DMH appeal process as appropriate (e.g., DMH contact persons, obtain written denial).

   - Coordinate with headquarters DCHCS mental health staff for determination of appealing referrals denied by DMH for clinical and/or custody reasons.

# EXHIBIT B

| Page Old | Page New | Section in New MOU | Change | Comment |
|---|---|---|---|---|
| NA | 2 | Glossary of Terms | Glossary Added | There was no "Glossary of Terms" in the March 2009 version |
| NA | 1 | Table of Contents | Table of Contents added | There was no "Table of Contents'" in the March 2009 version |
| NA | 44 | List of Attachments | List of Attachments added | There was no "List of Attachements" in the March 2009 version |
| 1 | 4 | II., A., 1 | Content changed | There is new language which explains the protocal for any addendum. |
| 2 | 5 | II., D. | Editorial changed | The way the MHSDS Program Guide is described is different |
| 2 | 5 | II., E. | Content added | New language regarding Revocation Hearings is added |
| 2 | 5 | II., F. | Editorial Changed | "Director of Corrections" is changed to "Secretary of CDCR" |
| 2 | 5 | II., G. | Content changed/Content added | New language regarding medical conditions which may preclude placement into ICF Services.  New steps also added regarding how disagreements will be settled. |
| 3 | 7 | II., L. 6 | Editorial changed | "Chief of Mental Health" changed to "Statewide Director of Mental Health" |
| 3 | 7 | II., M. | Content changed | Content changed regarding training space |
| 4 | N/A | II. | Content changed | Section O in the March 2009 MOU has been omitted |
| 4 | 8 | II., S. | Content change/Content added | Content changed regarding an inmate dying at a DMH hospital |
| 5 | 8 | II., S., 6 | Editorial changed | "Deputy Director, Institutions Division" changed to "Deputy Director, Division of Adult Institutions" |
| NA | 9 | II., W | Content added | New section added regarding dictation and transcription services |
| 6 | 10 | III | Format changed/Content added | "Due Process Procedures for Admission to DMH" is now Section III and "Due Process for Involuntary Medications" is now Section IV in the July 2010 MOU. |
| 6 | 11 | V | Format changed | "Safety and Security" in the March 2009 MOU was Section III, in the July 2010 MOU it is Section V. |
| 7 | 12 | V., C. | Content removed | The last sentence in letter C of the March 2009 MOU has been removed. |
| 7 | 12 | V., D., 1 | Content changed | Acute was changed to Intermediate |
| 8 | 12 | V., G., 1 | Content added | Facility C was added |
| 8 | 13 | V., G., 1., a | Content added | Facility C was added |
| 8 | 13 | V., G., 1., c | Content added | "Charlie" was added |
| 8 | 13 | V., G., 1., d | Content added | "Charlie" was added |
| 8 | 13 | V., G., 1., e | Content changed | Content change regarding DMH Clinical access to both Delta and Charlie Yards |
| 8 | 13 | V., G., 1., f | Content added | "Charlie" was added |
| 8 | 13 | V., G., 1., g | Content changed | Content chage regarding Delta and Charlie Yard Post Orders |

| Page (Old) | Page (New) | Section in New MOU | Change | Comment |
|---|---|---|---|---|
| 9 | 14 | VI., A., 4 | Content added | Content added to the end of the sentence |
| 9 | 15 | VI., A., 9 | Content changed | Section referenced has been changed to reflect the July 2010 MOU format |
| 10 | 16 | VI., C., 2., a., b., c | Content added | Steps added regarding documentation that should be provided for inmates being admitted to a State Hospital or psychiatric program |
| 10 | 16 | VI., C., 3 | Content added | New subsection "3" added for the discharge of the PC 1370 inmates |
| 11 | 17 | VII., A., Intro | Content added | Content added before Section A |
| 12 | 17 | VII., A., 4., a. | Content removed | Content regarding the Medical Transfer Summary has been revised. |
| 15 | 21 | VII., C., 5 | Content changed/added | Section referenced has been changed to reflect the July 2010 MOU format, also content has been added regarding emergency returns to CDCR |
| 16 | 22 | VIII., C | Editorial changed | "DMH Program" changed to "DMH State Hospital or Psychiatric Program" |
| 18 | 23 | X., A., 3 | Editorial changed | "P&CSD" changed to "DAPO" |
| 18 | 24 | X., B | Content added | New section added regarding inmates returning from ASH and CSH |
| 19 | 25 | X., F | Content added | New section added regarding requirements prior to the physical discharge of a patient |
| 19 | 26 | X., G., 1., 2. | Content change | Content chaged regarding emergency return to CDCR (previously language stipulated routine return to CDCR |
| 20 | 27 | X., H., 4., a., b. | Content added/changed | Content added to reflect the use of formulary and non-formulary medications |
| 21 | 28 | X., H., 6., h | Content added | Content added regarding discharge documents |
| 21 | 29 | XI., A. | Content added | Content added regarding appropriate mode of transportation when discharging patient |
| 22 | 29 | XI., E. | Content added/Editorial changed | Content added regarding appropriate mode of transportation when discharging patient and "CDCR Parole" changed to "CDCR Parole Agent" |
| 22 | 29 | XI., G. | Content changed | Content changed regarding personal property of inmate-patients when admitted to SVPP and VPP ICF Units |
| 22 | 30 | XI., G., 2. | Content added | Content added specific to SVPP and VPP |
| 23 N/A | | XII – XV | Content Removed | All Sections regarding PC 2974 have been removed and will be addressed in a different document. |
| 0 | 30 | XII | Content Added | Section regarding Re-Entry Services has been added |
| 31 | 37 | XV., C | Content added/changed | Content added and changed regarding formulary and non-formulary medication |

| Page | | Section in New MOU | Change | Comment |
|---|---|---|---|---|
| Old | New | | | |
| 33 | 37 | XVI | Content added | Section added regarding "Imaging Studies" |
| 33 | 38 | XVII | Content added | Section added regarding "Consultative Services" |
| 33 | 38 | XVIII | Content added | Section added regarding "Public Health and Infection Control" |
| 34 | 39 | XIX. D., 1., 2., 3., 4 | Content added/Format changed | Conent added regarding VPP and SVPP maintained records, also the format of the paragraph has been changed. |
| 34 | 39 | XIX., E., 1. | Format changed/Section added | Section "E" has been added regarding "State Hospital maintained records" and it has been further broken down into sub-section number "1". |
| 36 | 41 | XX... Intro | Content added | Additional institutions have been specifically named regarding "Specialized Antipsychotic Medications" |
| 40 | 43+B2 | Signators | Signators changed/added | Brenda Epperly Ellis has been changed to Sharon Aungst and Terri McDonald has been added. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# *MEMORANDUM OF UNDERSTANDING*
## *Intermediate Care/Non-Acute Services*

CALIFORNIA DEPARTMENT OF CORRECTIONS
AND REHABILITATION
AND
CALIFORNIA DEPARTMENT OF MENTAL HEALTH

California Department of Corrections and Rehabilitation and
Department of Mental Health

TABLE OF CONTENTS

Glossary of Terms ................................................................................................. 2

I.      INTENT ................................................................................................. 4

II.     GENERAL PROVISIONS ................................................................................ 4

III.    DUE PROCESS PROCEDURES FOR ADMISSION TO DMH ........................... 10

IV.     DUE PROCESS PROCEDURES FOR INVOLUNTARY MEDICATIONS ........... 11

V.      SAFETY AND SECURITY ISSUES ................................................................ 11

VI.     CRITERIA FOR INTERMEDIATE CARE/NON-ACUTE ADMISSION ................. 14

VII.    REFERRAL AND ADMISSION PROCESS-INTERMEDIATE CARE/NON-ACUTE
        ................................................................................................................. 17

VIII    COORDINATED CLINICAL ASSESSMENT TEAM ......................................... 21

IX      UTILIZATION MANAGEMENT ....................................................................... 22

X.      RETURN TO CDCR ....................................................................................... 23

XI.     TRANSFER ARRANGEMENTS TO AND FROM CDCR ................................. 29

XII.    RE-ENTRY SERVICES ................................................................................. 30

XIII.   MEDICAL AND SURGICAL HEALTH CARE .................................................. 34

XIV.    PHARMACY SERVICES FOR PSYCHIATRIC PROGRAMS (VPP and SVPP) .. 35

XV.     PHARMACY SERVICES FOR DMH HOSPITALS ........................................... 37

XVI.    IMAGING STUDIES ...................................................................................... 37

XVII.   CONSULTATIVE SERVICES ........................................................................ 38

XVIII.  PUBLIC HEALTH AND INFECTION CONTROL .............................................. 38

XIX.    HEALTH RECORDS ..................................................................................... 38

XX.     SPECIALIZED ANTIPSYCHOTIC MEDICATIONS .......................................... 41

XXI.    SUICIDE ..................................................................................................... 41

XXII.   COMPLIANCE ............................................................................................. 42

XXIII.  TRAINING ................................................................................................... 42

XXIV.   PROVISION FOR SERVICES UNDER PC §§ 2960-81 ................................... 43

XXV.    TERMINATION ............................................................................................ 43

TABLE OF ATTACHMENTS* ................................................................................... 44

California Department of Corrections and Rehabilitation and
Department of Mental Health

## Glossary of Terms

| Acronym | Term |
|---------|------|
| ADC | Admission and Discharge Coordinator |
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| ASU | Administrative Segregation Unit |
| AWOL | Absence Without Leave |
| BPH | Board of Parole Hearing |
| C&PR | Classification and Parole Representative |
| CAT | Clinical Assessment Team |
| CCAT | Coordinated Clinical Assessment Team |
| CCR | California Code of Regulation |
| CDCR | California Department of Corrections and Rehabilitation |
| CIW | California Institution for Women |
| CMC | California Men's Colony |
| CMH | Chief of Mental Health |
| CMF | California Medical Facility |
| CONREP | Conditional Release Program |
| COR | California State Prison, Corcoran |
| CSH | Coalinga State Hospital |
| CSR | Classification Staff Representative |
| CSU | Classification Services Unit |
| CTC | Correctional Treatment Center |
| DA | District Attorney |
| DAPO | Division of Adult Parole |
| DCHCS | Division of Correctional Health Care Services |
| DGS | Department of General Services |
| DMH | Department of Mental Health |
| DOM | Department Operations Manual |
| EOP | Enhanced Outpatient Program |
| EPRD | Earliest Possible Release Date |
| GAF | Global Assessment of Functioning |
| GC | Government Code |
| GP | General Population |
| H&P | History and Physical |
| HCM | Health Care Manager |
| HC-POP | Health Care Placement Oversight Program |
| HIMD | Health Information Management Department |
| HQ | Headquarters |
| ICF | Intermediate Care Facility |
| IDTT | Interdisciplinary Treatment Team |
| ISRA | Integrated Suicide Risk Assessment |
| LPS | Lanterman-Petris-Short Act |

California Department of Corrections and Rehabilitation and
Department of Mental Health

| Acronym | Term |
|---------|------|
| LTCS | Long Term Care Services |
| MAR | Medication Administration Record |
| MHCB | Mental Health Crisis Beds |
| MHDS | Mental Health Documentation System |
| MOU | Memorandum of Understanding |
| MSH | Metro State Hospital |
| MTA-P | Medical Technical Assistant – Psychiatric |
| MTR | Medication Treatment Record |
| NSH | Napa State Hospital |
| OPPM | Operational Policies and Procedure Manual |
| P&T | Pharmacy and Therapeutics Committee |
| PA | Parole Agent |
| PAC | Pharmacy Advisory Committee |
| PATS | Parole Automated Tracking System |
| PC | Penal Code |
| PCH | Probable Cause Hearing |
| POC | Parole Outpatient Clinic |
| PSH | Patton State Hospital |
| PSU | Psychiatric Services Unit |
| RCCP | Recommended Continuing Care Plan |
| RH | Revocation Hearing |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP | Salinas Valley State Prison |
| TB | Tuberculosis |
| T-CON | Temporary Conservatorship |
| TTA | Triage Treatment Area |
| UHR | Unit Health Record |
| UM | Utilization Management |
| VPP | Vacaville Psychiatric Program |
| WIC | Welfare and Institutions Code |

California Department of Corrections and Rehabilitation and
Department of Mental Health

## MEMORANDUM OF UNDERSTANDING
## CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
## AND
## CALIFORNIA DEPARTMENT OF MENTAL HEALTH

### *Intermediate Care/Non-Acute Services*

## I.  INTENT

It is the intent of the California Department of Corrections and Rehabilitation (CDCR) and the California Department of Mental Health (DMH) by entering into this Memorandum of Understanding (MOU) to provide the legal framework by which the parties function cooperatively to provide inpatient mental health services to those individuals under CDCR's jurisdiction.  These services shall be clinically appropriate and effective; conform to all legal requirements; and make optimum use of available resources for mental health evaluation and treatment.

Intermediate Care Facility (ICF) mental health services are provided for male inmate-patients at Atascadero State Hospital (ASH), Coalinga State Hospital (CSH), Salinas Valley Psychiatric Program (SVPP), and Vacaville Psychiatric Program (VPP) and for female inmate-patients at Patton State Hospital (PSH).

## II.  GENERAL PROVISIONS

    A.  This MOU, when signed and approved, is effective from the date this MOU is signed and approved by CDCR and DMH for a period of three years.  Should either or both parties deem it necessary to review and revisit the terms of this agreement, they agree to address their concerns through the addendum process set forth directly below

        1.  Should an addendum to this MOU be required as a result of changes in State statute or regulation, DMH or CDCR policy, or court orders, a sub-committee shall be appointed by the executive staff of DMH and CDCR headquarters.  This sub-committee shall be composed of both DMH and CDCR headquarters staff and shall develop the addendum for presentation to the executive staff of the two Departments.  Upon approval, the addendum shall be signed by the Deputy Director of DMH Long Term Care, the Chief Deputy Secretary of CDCR Division of Correctional Health Care Services, and the *Plata* Federal Receiver, who will continue to sign any addendum  until the *Plata* court terminates the  Receivership or the parties agree that the Receiver no longer needs to be a signatory to the addendum.  The signed addendum shall be forwarded to the Deputy Attorney General for forwarding to the *Coleman* Special Master.

California Department of Corrections and Rehabilitation and
Department of Mental Health

B. Long Term Care Services (LTCS) shall represent DMH in this contractual agreement with CDCR. The Division of Correctional Health Care Services (DCHCS) shall represent CDCR.

C. This MOU refers to Penal Code (PC) §2684 and PC §2685 transfers and returns between CDCR and DMH hospitals. PC §§2960-2981 shall be covered in a separate or separate MOUs. In accord with the joint *Valdivia* and *Coleman* court order of August 8, 2008, a CDCR parolee who is awaiting a revocation hearing is an inmate-patient for purpose of access to mental health care under PC §2684. This MOU also refers to mental health treatment between CDCR and DMH psychiatric programs that do not fall under PC §2684 or PC §2685.

D. DMH may provide treatment services to CDCR parolees prior to their Probable Cause Hearing (PCH) or Revocation Hearing (RH). (*See* Section W below.) Acceptance of the CDCR referral of any such parolees prior to their PCH or RH shall be determined by the clinical and custody criteria stated in the most recent CDCR Mental Health Services Delivery System Program Guide.

E. Revocation hearings will be held either at DMH or CDCR facilities depending upon the unique circumstances of the RH and the parolee's mental health needs. For RHs involving witnesses, the Board of Parole Hearings (BPH) will coordinate with Division of Adult Parole (DAPO), DMH, CDCR, and the parolee's attorney to determine the best location for the RH on a case-by-case basis. Options for RHs may include but are not limited to the use of video-conferencing for witness testimony and holding hearings in non-traditional locations.

F. The Secretary of CDCR holds custodial authority over each CDCR inmate-patient at the DMH operated VPP at California Medical Facility (CMF) and the SVPP at Salinas Valley State Prison (SVSP).

G. Inmate-patients whose primary treatment needs are medical rather than psychiatric shall not be admitted to an intermediate care psychiatric service. In addition, some inmate-patients with psychiatric needs may have medical/nursing conditions that preclude placement in an intermediate care psychiatric service such as serious medical conditions that are chronic/progressive in nature and/or involve cognitive deterioration. If there is disagreement regarding eligibility for admission or continued hospitalization in a psychiatric unit, the following steps shall be taken:

  1. The DMH clinician(s) shall discuss the case with CDCR clinician(s). If an agreement is not reached:

---

California Department of Corrections and Rehabilitation and
Department of Mental Health

      2.   The DMH Chief Psychiatrist and Director of Nursing shall discuss the case with the CDCR Chief Medical Officer or Health Care Manager and Director of Nursing.  If an agreement is not reached:

      3.   The case shall be referred to the Coordinated Clinical Assessment Team (CCAT) process.

H.   Treatment authority for each DMH program is authenticated by DMH staff prior to admission.  CDCR staff must obtain either a signed informed consent (CDCR form 128-MH9, Transfer to DMH – Due Process Chrono) or documentation that the due process procedures specified in California Code of Regulations (CCR), Title 15 §3369.1,  have been complied with.

I.   Treatment authority for the administration of psychotropic medication in each CDCR institution is established by CDCR staff either by obtaining a signed voluntary informed consent of the inmate-patient or by procedures developed pursuant to the *Keyhea v. Rushen* (Keyhea) injunction, as codified under PC §2600.

J.   Existing Keyhea procedures shall be used, as appropriate, by DMH and CDCR.  The CDCR Legal Affairs Division, or other counsel, in accordance with current State policy, shall represent CDCR at Keyhea hearings involving a CDCR inmate-patient.  DMH shall provide the necessary treatment and clerical resources for the Keyhea process in DMH programs.

K.   An inmate-patient admitted to VPP and/or SVPP does not require PC §2684 authority for placement.  Proposed transfers of an inmate-patient from CDCR to any DMH State hospital shall be accomplished under the authority of PC §2684.

L.   CDCR institutions at the local level shall maintain an administrative liaison function for all DMH hospitals and psychiatric programs specified in this MOU. This liaison is designated as the DMH coordinator.  The DMH coordinator at each CDCR institution is generally a CDCR clinician trained to facilitate referral and transfer to DMH hospitals and psychiatric programs.  DMH facilities shall maintain an administrative liaison function for coordination of inmate-patient care with CDCR.  DMH shall specify in writing any changes in its administrative liaison person to the Statewide Director of Mental Health at DCHCS, CDCR (or designee).  CDCR shall specify, in writing, any changes to its administrative liaison person to DMH headquarters.  The administrative responsibility of each liaison shall include, but not be limited to:

      1.   Coordinating the flow of inmate-patient referrals and transfers;

      2.   Arranging for the transfer of an inmate-patient;

      3.   Ensuring the orderly processing of inmate-patient records;

California Department of Corrections and Rehabilitation and
Department of Mental Health

    4.   Communicating any procedural problems affecting the referral and transfer process as appropriate to the Statewide Director of Mental Health at DCHCS, CDCR (or designee), or Assistant Deputy Director, LTCS, DMH;

    5.   Proposing such procedures as may be required to facilitate the placement, treatment and transfer of a mentally ill inmate-patient; and,

    6.   Communicating issues relating to the quality management system as appropriate to the Statewide Director of Mental Health at DCHCS, CDCR (or designee), or Assistant Deputy Director, LTCS, DMH (or designee), who shall determine an appropriate response.

M.  Office and training space shall be coordinated through the institution Space Committee for VPP and SVPP executive, administrative, and clinical staff within CMF and SVSP.

N.  CDCR and DMH administrative liaisons shall maintain a list of the names and CDCR numbers of each inmate-patient who has been classified and is awaiting transfer to a DMH program.

O.  In order to ensure prompt access to needed care in DMH hospitals and psychiatric programs, CDCR shall maintain expeditious referral and classification procedures. These referral and classification procedures shall ensure that inmate-patients who meet the admission criteria, as specified in Section III below, are transferred from CDCR facilities to DMH hospitals and psychiatric programs within 72 hours of notification of an available bed. CSH does not receive direct referrals from CDCR but does accept direct admissions based on referrals from ASH.

P.  If an inmate-patient is hospitalized in a DMH hospital or psychiatric program and is required to be on leave to court or for other legal requirements, DMH hospital or psychiatric program staff should make every effort to assure continuity and proper level of care.

Q.  In the event of escape or Absence Without Leave (AWOL) of a CDCR inmate-patient from a DMH psychiatric program operated inside a CDCR facility, the DMH Executive Director, or designee, shall notify the Institution Watch Commander/custody staff immediately so that the escape procedures can be initiated. In the event of escape or AWOL of a CDCR inmate-patient from a DMH State hospital, the DMH Executive Director (or designee) shall immediately notify CDCR Identification Unit by telephone at (916) 445-6713. The telephone line is staffed 24 hours per day. The Identification Unit is responsible for notifying the appropriate CDCR staff.

California Department of Corrections and Rehabilitation and
Department of Mental Health

R. Inmate-patients who commit a crime while hospitalized in a DMH hospital or psychiatric program may be charged with a felony, misdemeanor, or infraction as determined by the District Attorney (DA).

S. If a CDCR inmate-patient dies while housed at a DMH hospital (ASH, CSH or PSH), or if the death occurred following transfer from a DMH hospital to a community medical facility, the DMH hospital responsible shall notify the coroner and local law enforcement agencies of the death according to each hospital's policies and procedures. Initial notification shall be by telephone, direct communication, or written/faxed notification to the following:

For Inmate-Patients:

1. Coroner

2. County office of the District Attorney

3. County Sheriff

4. Chief of Police (if the location of death is within the city limits of an incorporated city)

5. Mental Health Program Director, DCHCS

6. Deputy Director, Division of Adult Institutions

7. Watch Commander of the referring prison

8. Chief Medical Officer of the referring prison

   Additionally, a written report shall be transmitted within eight hours to the above listed authorities and to the Warden of the CDCR referring institution. The Warden shall notify the Attorney General within 10 calendar days of a death of all known facts concerning that death.

For Inmate-Patients who are Parolees:

1. Local Parole Unit for parolee

2. Parole Outpatient Clinic Liaison

3. Chief Psychiatrist for appropriate Parole Outpatient Clinic (POC) Region

T. In the case where a CDCR inmate-patient housed at CMF is found unresponsive, VPP staff shall follow the emergency procedure policy that is in place at CMF, then shall transfer the inmate-patient to the CMF Emergency

California Department of Corrections and Rehabilitation and
Department of Mental Health

Clinic. In the case where a CDCR inmate-patient housed at SVSP is found unresponsive, SVPP staff shall follow the emergency procedure policy that is in place at SVSP, then shall transfer the inmate-patient to the SVSP Triage Treatment Area (TTA) in the Correctional Treatment Center (CTC). Appropriate clinical staff shall determine whether the inmate-patient is deceased. The involved CDCR institution shall complete all required notifications in accordance with the CDCR Department Operations Manual (DOM) §51070.

U.  Inpatient records for all inmate-patients shall be in compliance with CCR, Title 22, Division 5, Chapter 1, Article 7, Administration. DMH staff shall be responsible for maintaining and completing all DMH inpatient mental health records for each inmate-patient residing in a DMH program, following the Mental Health Documentation System (MHDS).

V.  For the psychiatric programs (VPP and SVPP), DMH shall be responsible for recruiting and hiring staff. Personnel issues of the hospital and psychiatric program staff shall be the responsibility of DMH. Pursuant to Government Code (GC) §§1029 and 1031, CDCR shall provide an expedited selection process for all Medical Technical Assistant-Psychiatric (MTA-P) applicants. This process includes conducting the written psychological exam; risk assessment and physical abilities test; vision test; fingerprinting; background investigation; pre-employment medical examination; and oral psychological examination process. DMH shall provide timely and appropriate clinical training for the DMH staff.

W.  A parole RH may occur at DMH when the inmate-patient is receiving DMH inpatient care.

1.  The RH is the responsibility of CDCR, and shall be documented by CDCR.

2.  CDCR will coordinate with DMH to schedule the hearing and reserve a hearing room at DMH.

3.  All parolees pending revocation have appointed counsel. DMH will provide the inmate-patient's counsel with access to their client and to their client's clinical file prior to the hearing in accord with established DMH attorney visiting and file review procedures that exist at each DMH institution.

4.  If the RH is scheduled to be held in a DMH facility, the inmate-patient shall be escorted by DMH staff to the RH unless the hearing is waived by the inmate-patient.

California Department of Corrections and Rehabilitation and
Department of Mental Health

    5. RHs will be held either at DMH or CDCR facilities depending upon the unique circumstances of the RH and the parolee's mental health needs. For RHs involving witnesses, BPH will coordinate with DAPO, DMH, CDCR, and the parolee's attorney to determine the best location for the RH on a case by case basis. Options for RHs may include but are not limited to the use of video conferencing for witness testimony and the holding of hearings in non traditional locations.

X. CDCR shall provide admission and discharge dictation and transcription services for CDCR inmate-patients who are admitted to the VPP and SVPP ICF units.

## III. DUE PROCESS PROCEDURES FOR ADMISSION TO DMH

A. Treatment authority for each DMH hospital and psychiatric program is authenticated by DMH staff prior to admission. CDCR staff must obtain either a signed informed consent or documentation that the due process procedures (Vitek Hearing or pre Vitek certification) specified in California Code of Regulations, Title 15, Section 3369.1, or in Section 3363, Right to Refuse Treatment, are followed:

B. The emergency certification is described in the Acute MOU and is not a process used for ICF care.

    1. A Vitek hearing provides the due process requirement when the inmate-patient does not provide informed consent for placement in a DMH hospital and/or psychiatric treatment program.

        a) The Vitek hearing shall occur within 72 hours prior to admission to DMH. This hearing is the responsibility of CDCR, and shall be documented using a CDCR Form 128C.

        b) The hearing officer shall be the Warden or designee. In no event shall the hearing officer be the referring mental health clinician(s) or that clinician's immediate supervisor.

        c) A staff assistant, usually the inmate-patient's correctional counselor, shall be appointed by the hearing officer to assist the inmate-patient at the hearing.

        d) The inmate-patient shall be present at the due process hearing unless the hearing is waived by the inmate-patient.

        e) The inmate-patient may present evidence, including witnesses, to show he should no longer be involuntarily hospitalized, and he may refute evidence and cross-examine witnesses.

California Department of Corrections and Rehabilitation and
Department of Mental Health

      f)   A written decision shall be provided to the inmate-patient no later than 72 hours from the conclusion of the hearing, signed by the hearing officer. The hearing officer must document all evidence relied upon and the reason(s) for his/her decision.

C.   Inmate-patients shall be informed any time they are the object of particular mental health diagnosis or treatment procedures. Such inmate-patients shall have the right to refuse assignment to such a program for diagnosis or treatment without being subject to discipline or other deprivation, except as indicated in the following:

    1.   When a mental health evaluation is required by law or ordered by a court;

    2.   When an inmate-patient is placed in a mental health program for diagnostic study by the action of a classification committee, which acted upon documented information or observations that gave reasonable cause to believe the inmate-patient was suffering from a mental illness that poses a danger to self or others, or is gravely disabled; or

    3.   When the diagnostic study has led to a diagnosis of existing or recurrent mental illness that renders the inmate-patient dangerous to self or others, or gravely disabled.

## IV. DUE PROCESS PROCEDURES FOR INVOLUNTARY MEDICATIONS

A.   Treatment authority for the administration of psychotropic medication in each CDCR institution is established by CDCR staff via signed voluntary informed consent of the inmate-patient or by procedures developed pursuant to the *Keyhea v. Rushen* (Keyhea) injunction, as codified under PC §2600.

    1.   Existing Keyhea procedures shall be used, as appropriate, by DMH and CDCR. The CDCR Legal Affairs Division or other counsel, in accordance with current state policy, shall represent CDCR at Keyhea hearings involving a CDCR inmate-patient. DMH shall provide the necessary treatment and clerical resources for the Keyhea process in DMH hospitals and psychiatric programs.

## V. SAFETY AND SECURITY ISSUES

A.   DMH acknowledges that the delivery of mental health treatment in a prison setting entails security considerations.

B.   CDCR recognizes that the provision of ICF Psychiatric Inpatient Services in the State hospital setting presents safety and security issues that are

---

California Department of Corrections and Rehabilitation and
Department of Mental Health

different than DMH inpatient programs and services based within a State prison setting. CDCR shall include a thorough custody review of safety and security factors for each inmate-patient prior to sending a referral. Inmate-patients who are deemed a significant assault risk, have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner), or present a high escape risk, shall not be referred to the State hospitals. In these cases, the psychiatric programs, VPP or SVPP, shall provide mental health services.

C.  Any nominal medical and/or surgical care or treatment, except for life-threatening conditions, shall normally be provided within the secure perimeter of the State hospitals; or for the psychiatric programs within the secure perimeters of CDCR designated prisons. Except for emergency care, the transport to any outside medical treatment of any ICF psychiatric inmate-patient shall be the responsibility of CDCR custody officers, and shall require the prior authorization of the CDCR Health Care Manager (HCM).

D.  There shall be no temporary community release of a CDCR inmate-patient receiving ICF psychiatric care at a State hospital. If CDCR has a need to exercise a Temporary Removal under the DOM §62070, the inmate-patient shall first be returned to CDCR custody pursuant to PC §2685 procedures.

1.  CDCR inmate-patients remain subject to all regulations and requirements governing CDCR inmate-patients in so far as they may be reasonably applied in the State hospital-based setting in order to permit intermediate psychiatric treatment at ASH, CSH and PSH.

E.  CDCR shall maintain a custody counselor liaison for each State hospital and psychiatric program in order to facilitate necessary custody/classification procedures for CDCR inmate-patients receiving ICF psychiatric treatment.

F.  If, after admission to a State hospital, it is determined that an inmate-patient is a significant risk to assault, victimize, or escape, the referring prison shall provide emergency custody and transport to California Men's Colony or another CDCR institution. If the threat is considered to be imminent, transport shall be provided on the day of notification. In all other such notifications, the inmate-patient will be picked-up by CDCR within 24 hours. The inmate-patient will be evaluated for transfer to VPP or SVPP by the referring CDCR institution. If necessary, the case will be referred for discussion of appropriate placement at the CCAT.

G.  FOR SVPP only

1.  SVSP shall provide "reasonable access equal to that afforded with the free standing treatment center" to inmate-patients receiving ICF level of care in Facility D and in Facility C, once activated.

California Department of Corrections and Rehabilitation and
Department of Mental Health

a) All MTA-Ps on duty shall be issued keys to all inter pod doors, which include A, B, & C pod doors, dining room doors and concrete yard doors that have access to outside group rooms. The same policy shall be afforded to the SVPP staff for Facility C.

b) SVPP clinical and administrative staff shall have "reasonable access" to the D Vocational office area through the D-Vocational sally port in order to provide treatment to SVPP inmate-patients.

c) The treatment hours in Delta Five and Six and in Charlie Five and Six dayrooms shall be extended from 2000 hours to 2100 hours to provide additional inmate-patient treatment.

d) The availability of use of Delta Yard and Charlie Yard shall be extended from one hour per day to a minimum of two hours per day with additional time provided on Sundays and holidays. SVSP shall provide control booth coverage as needed.

e) DMH clinical staff is permitted to provide treatment to DMH inmate-patients on the Delta Yard and Charlie Yard.

f) The Delta Yard and Charlie Yard shall be available to inmate-patients on Confined to Quarters and/or Discretionary Program Status as determined by SVPP inmate-patient treatment needs and not by SVSP determinations.  SVSP shall provide control booth coverage as needed.

g) All Delta Yard and Charlie Yard Post Orders related to SVPP shall be provided to SVPP management for review and input prior to approval by CDCR.  Any requests by SVPP to include a SVSP custody officer in an inmate-patient's treatment team conference (IDTT) shall follow the SVPP Operational Policies and Procedures Manual (OPPM).  The SVPP OPPM shall include a clear statement of the expectations being placed on CDCR staff.  Any resulting changes shall be vetted through the Labor Relations process prior to implementation.

h) The timelines for SVSP classification to clear inmate-patients for programming shall not exceed 10 working days from admission.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## VI. CRITERIA FOR INTERMEDIATE CARE/NON-ACUTE ADMISSION

A. Criteria for inpatient care in a DMH hospital or psychiatric program requires an Axis I major (severe) mental disorder with active symptoms (the definition of a major mental illness is based on the CDCR Program Guide) and any one of the following:

1. As a result of the major mental disorder, the inmate-patient is unable to adequately function within the structure of CDCR's Enhanced Outpatient Program (EOP) level of care.

2. The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms.

3. The need for neurological and/or neuropsychological consultation services, which are available at ASH, PSH, and VPP. Referrals for these services may be requested for inmate-patients accepted to SVPP.

4. The inmate-patient requires an inpatient diagnostic evaluation because of the complexity of the case.

5. The inmate-patient would benefit from a comprehensive treatment program with an emphasis on skill (i.e. coping, daily living, medication compliance) development with increased programming and structured treatment environment; and the need cannot be met by CDCR.

6. The inmate-patient's psychiatric medication history indicates that a Clozapine trial may be useful.

7. Inmate-patients (male only) who are deemed a significant assault risk; have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner); or present a high escape risk; shall be referred to SVPP. CDCR refers to these inmate-patients as high custody inmate-patients.

8. The inmate-patient's Global Assessment of Functioning (GAF) indicates behavior that is considerably influenced by psychotic symptoms; serious impairment in communication or judgment; or inability to function in almost all areas.

California Department of Corrections and Rehabilitation and
Department of Mental Health

9. For SVPP only, the inmate-patient is medically appropriate as determined by the receiving Prison medical staff. The SVPP Forensic team will determine mental health suitability. If agreement is not reached, CDCR and DMH will follow the CCAT process set forth below in Section VIII. Any denial for medical reasons will be immediately referred to the Director, Statewide Mental Health Program.

B. In addition to a primarily Axis I disorder, admission to a DMH hospital or psychiatric program shall be considered when:

   1. The inmate-patient engages in ritualistic or repetitive self-injurious/suicidal behavior that has not responded to treatment in a CDCR facility. And without inpatient mental health treatment the inmate-patient is likely to develop serious medical complications or present a threat to their life.

   2. The inmate-patient is chronically suicidal and has had repeated admissions to a Mental Health Crisis Bed (MHCB).

C. Inmate-patients committed to DMH by the courts as being incompetent to stand trial per PC §1370.

   Inmate-patients who commit an offense while in CDCR, are referred to the DA for prosecution, and are found by the court to be incompetent to stand trial per PC §1370, will first be considered for the SVPP. If there are no custodial or clinical reasons for admission to the SVPP, the inmate-patients will then be considered for other PC §1370 programs in DMH.

   1. Whenever the CDCR institution referring clinician is in doubt concerning the appropriateness of referring a particular inmate-patient, the referring clinician will call the Chief of Health Care Placement Oversight Program (HC-POP) or designee then, if necessary, will call the State Hospital's PC §2684 screening clinician or the psychiatric program's Admission and Discharge Coordinator (ADC) to clarify the adequacy of the referral before formally submitting the referral.

   2. When an inmate-patient is admitted to either a State hospital or psychiatric program as a PC §1370, the sending CDCR institution shall provide all the documentation that would be required if the inmate-patient were being admitted to DMH for ICF mental health care. This includes but is not limited to the following:

California Department of Corrections and Rehabilitation and
Department of Mental Health

        a) Updated information involving current treatment, medications, diagnosis, suicide risk, violence risk, Keyhea information, and presentation.

        b) History and Physical (H & P) to determine medical ability to be housed at SVPP.

        c) Updated case factor information, enemies at SVPP/SVSP, updated Earliest Possible Release Date (EPRD), and alert information, etc.

3. At the time of discharge of a PC §1370 inmate-patient, the following is needed:

        a) Out-to-court status and discharge clarification.

        b) A Minute Order from the court in charge of the case.

D. For SVPP only: This section specifies additional guidelines to maximize occupancy of the four-man cells.

1. If there is a waiting list, inmate-patients on the referral waiting list will be reviewed in the daily program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. The movement on the SVPP waitlist requires that a two or three paragraph note be faxed providing the rationale for the request.

2. If all clinical factors are equal, priority shall be assigned based on current placement in the following order: Psychiatric Services Unit (PSU); MHCB; other DMH placement (Vacaville Acute Psychiatric or Intermediate Program or ASH); Administrative Segregation (ASU)-EOP Hub; ASU; EOP; and General Population (GP).

3. To maximize occupancy within the SVPP four-man cells, the SVPP CAT may elect to accept admissions outside of the placement order as defined above.

4. SVPP CAT may accept EOP referrals provided such single cell admissions do not occupy more than four cells within SVPP.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## VII. REFERRAL AND ADMISSION PROCESS-INTERMEDIATE CARE/NON-ACUTE

The following CDCR institutions retain Unit Health Records (UHR) for inmate-patients transferred:

> ASH = California Men's Colony (CMC)
> CSH = California State Prison, Corcoran (COR)
> PSH = California Institution for Women  (CIW)

A. REFERRAL PROCESS:

The DMH and CDCR referral system uses documents and telephone conferences for referral and transfer of each CDCR inmate-patient.  CSH does not accept direct referrals from CDCR but does accept direct admissions from CDCR institutions.

1. CDCR shall transmit standardized referral information to the appropriate DMH program (*see* Attachment #1 – DMH Referral Form Intermediate Care/Non-Acute Program).  The referral packet (*see* Attachment #2- DMH ICF/Non-Acute Referral Check List) shall be sent to the DMH Forensic Coordinator or the Admission and Discharge Coordinator (ADC).

2. DMH shall review the referral packet within three working days of receipt.  DMH staff shall immediately notify the referring institution (*see* Attachment #3 – DMH Referral Decision Form) by fax of their decision.  The decision shall provide the detailed reasons for any rejections.

3. Each referral for evaluation to an intermediate/non-acute program shall be the responsibility of CDCR clinical staff.  Referrals to DMH should be based on the need for the ICF level of care.  Determination for admission to the intermediate/non-acute program shall be the responsibility of the DMH Forensic Coordinator or the ADC.

4. All referrals shall include a completed DMH referral form and a referral packet (*see* Attachment #2 – DMH ICF/Non-Acute Referral Check List), which consists of:

   a) H&P for Transfer to DMH.  The H&P must have been completed within 30 days.  If the inmate-patient is placed on a waitlist, the H&P must have been updated within the last 30 days;

   b) Current Treatment Plan (updated within 30 days) – CDCR Form 7388-MH;

California Department of Corrections and Rehabilitation and
Department of Mental Health

    c)   Due Process documentation of the hearing or written consent–CDCR Form 128-MH9—or a valid waiver of the due process hearing is required for referral if the inmate-patient refuses to sign a consent to transfer;

    d)   Current Medication Administration Record (MAR);

    e)   The Clozaril Checklist should be completed for an inmate-patient being referred for a Clozaril trial;

    f)   Supporting Keyhea documentation or a Keyhea Order (when relevant);

    g)   Interdisciplinary Progress Notes for past 15 days (may be less for new arrival to reception center);

    h)   Tuberculosis (TB) chrono from the referring institution;

    i)   Abstract of Judgment (for State Hospitals only);

    j)   Legal Status Summary (for State Hospitals only);

    k)   Chrono History (for State Hospitals only);

    l)   Custody Case Factor Sheet (updated within 30 days); and

    m)   CDCR Suicide Risk Evaluation.

5.   DMH psychiatric programs (VPP and SVPP) shall require the DMH referral form, decision form, and Case Factor Sheet for a DMH State hospital or psychiatric program transfer to another State hospital or psychiatric program. CMF and SVSP, due to their close proximity to VPP and SVPP, shall provide the entire Unit Health Record (UHR) and the Case Factor Sheet for review by the VPP and SVPP ADC in lieu of the documents listed above.

6.   If there is a waiting list, inmate-patients on the referral waiting list will be reviewed in the daily program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. The movement on the SVPP waitlist requires that a two or three paragraph note be faxed providing the rationale for the request.

California Department of Corrections and Rehabilitation and
Department of Mental Health

For SVPP:

If there is a waiting list, inmate-patients on the SVPP CAT referral waiting list will be reviewed in the daily Program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. Institutions may petition the SVPP Executive Director, Assistant Director, or Program Director to move an inmate-patient to the top of the waiting list based on clinical need. The CDCR requesting institution shall send a short memo (two or three paragraphs) to SVPP providing the rationale for the inmate-patient to be considered a priority for admission.

For VPP:

If there is a waiting list for the VPP, the referral waiting list will be reviewed in the daily Program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. Institutions may request that an inmate-patient be moved to the top of the waiting list based on clinical need. The CDCR institution should contact the VPP CAT or ADC and verbally request the change followed by an updated referral packet.

7. At the time the CDCR treatment team determines that a referral to a DMH inpatient program is necessary, only one referral to either the acute program or the ICF program shall be necessary. The team shall not send referrals to both the acute and ICF programs at the same time.

8. If the condition of the inmate-patient changes while the inmate-patient is on the waitlist, the CDCR treatment team may request a case conference to discuss the case. The inmate-patient may be placed on a different program waitlist as a result of the case conference.

9. Inmate-patients who have been referred to ICF, and are subsequently admitted to an Acute Psychiatric Program (APP) because of a change in their mental health status before being placed into ICF, shall be considered for ICF placement when discharged from APP. If the APP CAT team determines that return to CDCR without ICF treatment is indicated, the case shall be referred

California Department of Corrections and Rehabilitation and
Department of Mental Health

to the CCAT.   The ICF referral shall only be rescinded upon agreement by both CDCR and DMH during the CCAT discussion.

B.  ADMISSION PROCEDURE:

1.  Classification Staff Representatives (CSR) from Classifications Services Unit (CSU) will be responsible for endorsing inmate-patients from the CDCR institution to the DMH program.   These endorsements may be done on site when a CSR is available or via Teletype process when a CSR is not available on site.

2.  The following procedures shall take place prior to actual admission of each inmate-patient accepted for treatment or evaluation by the intermediate/non-acute program:

a)  The DMH Forensic Coordinator or ADC shall determine the location of the bed for the inmate-patient.

b)  Upon admission, the appropriate psychiatrist shall assume immediate responsibility for the respective inmate-patient's care and treatment.

c)  The admitting psychiatrist shall document the inmate-patient's mental health status in the medical record at the time of admission.

C.  TREATMENT PLANNING:

1.  Each inmate-patient admitted to an intermediate care psychiatric services program shall be evaluated and have a treatment plan within 72 hours of admission.   The treatment plan shall include a plan to stabilize the inmate-patient's symptoms and discharge to a lower level of care.   For those inmate-patients residing in a DMH hospital, the treatment plan will be predicated on the outlined criteria in the Administrative Directives of the State hospital.

2.  The treatment plan and the inmate-patient's progress shall be reviewed and updated within 10 days.   The treatment plan and the inmate-patient's progress shall again be updated at 30 days, then quarterly or at any time there is a change in the inmate-patient's treatment needs (for SVPP, every 30 days per CTC license regulations).

3.  The inmate-patient's progress shall be clearly documented in the medical record.

California Department of Corrections and Rehabilitation and
Department of Mental Health

4.  Inmate-patients who have been clinically discharged but not yet transferred shall continue to receive all evaluations and treatment procedures appropriate to their clinical needs until they leave the institution.

5.  Except for emergency returns to CDCR (covered in Section X., G. below), all inmate-patients being discharged from ICF psychiatric care services to CDCR shall, subject to the availability of a CDCR bed that is consistent with the *Coleman* mandates and the needs of the inmate-patient, be transported within 72 hours of notification to CDCR that the inmate-patient is being discharged.   Emergency returns shall be transferred within 24 hours.

## VIII    COORDINATED CLINICAL ASSESSMENT TEAM

All rejections will be automatically submitted by DMH to the CCAT within 24 hours of rejection. The team will be comprised of the following CDCR staff: senior mental health clinicians from DCHCS; HC-POP representative-DCHCS; CSU representative-CDCR; the institution Warden or designee; referring clinician and supervising clinician from the referring institution-CDCR. The team will also be comprised of the following DMH staff: the Assistant Deputy Director- LTCS (or designee); a senior clinician; CSH; and the Executive Director (or designee) and Program Director (or designee) for the respective hospital or psychiatric program. When reviewing a rejection, all DMH senior clinicians will participate in the review.

A.  DCHCS will notify all CCAT members, as well as the referring institution, to call into a specific phone number at a designated time. It is mandatory that the referring clinician be in attendance at this call as well as the Chief Psychiatrist and/or Psychologist and/or Senior Psychiatrist/Psychologist.

B.  The CCAT will review all pertinent information and seek clarification from the referring clinician as well as the DMH clinicians in order to determine the appropriate outcome for the case.  In all cases in which medical or nursing issues are involved, the California Prison Health Care Services representative from the institution and a DMH nursing representative shall be in attendance.   Decisions regarding admission or non-admission will be rendered by the CCAT at the conclusion of the meeting unless additional information is required.  For those cases where the CCAT cannot come to agreement, the Assistant Deputy Director, LTCS-DMH (or designee), and the Statewide Director, Mental Health, DCHCS-CDCR (or designee), will be contacted and the case turned over to them and their respective Deputy Directors to reach a final decision. The final decision will be rendered within 2 working days from the date all supporting documentation is received.

California Department of Corrections and Rehabilitation and
Department of Mental Health

C. CCAT will also schedule and review all cases where the DMH state hospital or psychiatric program requested additional information and the information has not been received from the referring institution. In these cases, the referring clinician should be prepared to provide, at the time of the CCAT review, any material that has not been provided to DMH.

D. The DCHCS shall schedule case conferences upon request by DMH and/or CDCR clinicians regarding a difficult or perplexing inmate-patient's case, including repeated admissions of the same inmate-patient in a short time frame.

## IX    UTILIZATION MANAGEMENT

A. Utilization Management (UM) is based on an average length of stay of 180 to 240 days for ASH, CSH, PSH, SVPP, and VPP. CDCR reserves the right to inspect, monitor, and perform utilization reviews prospectively, concurrently, or retrospectively regarding the courses of treatment or inpatient care provided to CDCR's inmate-patients. Such UM reviews shall be undertaken to determine whether the course of treatment or services was previously authorized, medically necessary and performed in accordance with the agreed upon rules and guidelines between DMH and CDCR. DMH agrees to make available, upon request by CDCR, for purposes of UM review, an individual inmate-patient's medical record and any committee reviews and recommendations related to that inmate-patient.

B. DMH acknowledges and agrees that a concurrent UM review shall not operate to prevent or delay the delivery of emergency treatment.

C. DMH acknowledges that the care of an inmate-patient at DMH shall be reviewed by CDCR UM nurses or designated parties and by a joint CDCR and DMH review process.

1. UM will focus on outcome analysis. The optimum outcome for an inmate-patient treated at DMH is to return them to CDCR at the highest possible level of functioning and their being able to remain in the least restrictive environment.

2. To measure outcome, each discharged inmate-patient's use of resources (days in ICF treatment at DMH hospitals and psychiatric programs) will be tabulated to assess the effectiveness of any program innovations, i.e., having a higher percentage of inmate-patients placed on Keyhea with regular renewals, wider use of depo (depo-injectable) medications, and instituting policies in which medication regimens that have been successful in stabilizing inmate-patients in the hospital setting are routinely continued by outpatient clinicians (allowing for changes due to compelling reasons).

California Department of Corrections and Rehabilitation and
Department of Mental Health

3. Information gathered from the data analysis shall be shared between DMH and CDCR. The departments will work together to implement changes indicated by favorable outcome data. The UM staff from each department will collaborate to integrate care between providers and departments in order to achieve bed utilization efficiency, optimal inmate-patient outcomes, and promote continuity across the care continuum.

4. CDCR UM nurses or designated parties will report their findings and make recommendations to the CDCR HCM, CDCR Chief Psychiatrist (or their designee(s)), and the DMH treatment team. CDCR and DMH managers (or their designees) will meet monthly to review the data.

5. Each DMH program also will have a joint CDCR and DMH UM process that will review individual cases.

6. If there is a disagreement about discharge, the UM nurse will review the inmate-patient's record and forward a recommendation to the joint CDCR and DMH UM review process. If there continues to be disagreement, the recommendation will be conveyed to the CCAT. If a CCAT is scheduled by the receiving CDCR treatment team, the UM nurse shall participate in that CCAT.

## X.    RETURN TO CDCR

A. Criteria for return to CDCR:

1. If the inmate-patient has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which inpatient care was required is in substantial remission, and the remaining symptoms are those of a disorder for which DMH inpatient care is not necessary, the inmate-patient will be returned to CDCR for ongoing treatment; or

2. Evaluation during inpatient care has resulted in a change of diagnoses such that the DMH program is not appropriate or necessary; or

3. When further involuntary inpatient care is unnecessary, will provide no further benefit, or a court has denied further treatment (*see also* 4. below) and re-incarceration or release to parole is required, the release or re-incarceration shall be coordinated by the Classification and Parole Representative (C&PR). When appropriate, the C&PR shall ensure notice to CDCR DAPO utilizing a CDCR Form 611, Release Program Study.

4. If requested by DMH, an inmate-patient who has withdrawn informed consent for mental health treatment or psychiatric medication, but for

California Department of Corrections and Rehabilitation and
Department of Mental Health

whom continued treatment is otherwise recommended, may be returned to CDCR under PC §2685 after all other avenues to obtain authorization to treat have been exhausted, if the following two criteria have been met:

a) Withdrawal of informed consent shall be demonstrated by 14 calendar days of continuous refusal to take oral medication or 30 calendar days of continuous refusal to accept scheduled depo-injectable medication, and documentation of discussions between treating DMH psychiatrists and other team members and the inmate-patient regarding the risks and benefits of continuing medication; AND

b) Documentation that the inmate-patient has not met criteria for involuntary treatment for at least the last 14 calendar days.[1]

B. Inmate-patients returning to CDCR from ASH or CSH will normally return to their sending institution, if that institution has the appropriate level of care (usually EOP). If the sending institution cannot provide the appropriate level of care (EOP, Clozapine therapy, etc.) or if there are enemy concerns or other custody factors prohibiting return to the sending institution, then the assistance of the Health Care Placement Unit will be requested to endorse the inmate-patient for return to an appropriate CDCR facility. Emergency or urgent returns to custody from ASH will be routed initially to CMC, and emergency or urgent returns to custody from CSH will be routed initially to COR, where they will remain until transfer to the most appropriate CDCR facility

C. The treatment team for the inmate-patient being considered for discharge from an ICF level of inpatient care shall consider what lower level of care is appropriate to meet the inmate-patient's mental health needs. The treating physician will clearly document in the Discharge Summary the rationale for their recommendation to a lower level of care, which includes consideration of transfer to the EOP at the receiving CDCR institution.

D. At the time that the DMH Interdisciplinary Treatment Team (IDTT) determines that discharge to CDCR is appropriate and the C&PR's office has designated the receiving CDCR institution, the DMH Forensic office shall contact the DMH Coordinator at the receiving institution to discuss the transfer.

---

[1] The two 14-calendar day time periods expand the time periods set forth in the Mental Health Services Delivery System Program Guide (2009 Revision) from 7 calendar days to 14 calendar days. (Program Guide, pg. 12-6-13.) CDCR and DMH agree that CDCR, in making subsequent revisions to the Program Guide, will take steps to include this expansion in such revisions, unless otherwise modified or rescinded by CDCR and DMH.

California Department of Corrections and Rehabilitation and
Department of Mental Health

E.  The DMH Coordinator at the CDCR institution shall notify the Chief of Mental Health (CMH) or designee of the probable discharge.  The information from the discussion that occurred at the time of the initial notification of the discharge shall be shared with the receiving clinical team.

F.  Requirements Prior to Physical Discharge of the Inmate-Patient:

1.  The DMH clinical team shall determine that the inmate-patient is ready for discharge and recommend a level of care that is appropriate for that inmate-patient.  The DMH Medical Director or designee shall be notified of the team decision and confer with the team about the recommendation.

2.  For a Security Housing Unit SHU inmate-patient at the DMH ICF psychiatric programs, the forensic coordinators or CAT Teams shall notify the C&PR Office two weeks prior to the physical discharge of the patient to allow the ICC to determine if the case factors are still appropriate to return the inmate-patient back to the sending institution.

3.  The C&PR's office shall review the inmate-patient's custody file and determine to which institution that inmate-patient should be returned. The location of the institution that the inmate-patient will be transported to after discharge from DMH shall be communicated back to the DMH Admission and Discharge Unit as soon as possible.

4.  Upon being notified that the C&PR's office has determined the appropriate CDCR institution for the inmate-patient to return, the DMH VPP CAT or the DMH Forensic Office shall notify the CDCR DMH Discharge Coordinator at the receiving institution of the pending discharge.

5.  After the C&PR's office has designated the receiving CDCR Institution, DMH shall transmit by fax or electronically (if technologically possible) the following documents to the DMH coordinator at CDCR:

,a)  The Discharge Summary Draft Template, which shall include the discussion and recommendation of appropriate level of care following discharge from ICF services.

b)  The Mental Health Summary/Discharge Contact Form (*see* Attachment #4 – Mental Health Summary/Discharge Telephone Contact Form). This form is to be used at the time of the DMH team clinician-to-CDCR team clinician contact as an aid for discussion.  This contact shall take place after the inmate-patient has returned to CDCR.

California Department of Corrections and Rehabilitation and
Department of Mental Health

c) If appropriate, the Non Formulary Drug Request Form (CDCR Form 7374)(*see* Attachment # 6)

6. The institution has 72 hours after the C&PR's office receives the discharge chrono from DMH to pick up the inmate-patient from DMH and transport the inmate-patient to the identified institution.

7. If the required pre-discharge documents are not received by the DMH Coordinator's office, the Coordinator shall contact the DMH State hospital or psychiatric program to have the material faxed.

8. The lack of any one of these documents shall not delay transfer of the inmate-patient to CDCR unless the DMH State hospital or psychiatric program mutually agrees.

G. Emergency Return Criteria:

1. The inmate-patient shall be returned to the CDCR institution on an expedited basis of 24 hours if an emergency exists, and within 72 hours after the time of notification of the discharge to the C&PR's office.

2. Emergency returns to CDCR including POC, shall be accomplished within 24 hours. Such returns will be with prior notification and approval by telephone of the CDCR institution's C&PR staff and Chief of Mental Health or designee. A dictated, typed Recommended Continuing Care Plan (RCCP) and/or discharge summary shall follow as soon as practicable, but not more than 14 days after return.

3 For each inmate-patient returning to CDCR from a DMH program, DMH shall ensure that the following documents shall be transferred with the inmate-patient to the respective CDCR institution (*see* Attachment #5 – ICF DMH Patient Discharge Checklist):

a) Psychiatric Discharge Summary (shall include the discussion and recommendation of appropriate level of care following discharge from ICF, usually an EOP level);

b) Nursing Assessment or Discharge Summary;

c) Current Physician's orders;

d) Medication Administrative Record (MAR) or the Medication and Treatment record (MTR);

California Department of Corrections and Rehabilitation and
Department of Mental Health

    e)   Current Suicide Risk Assessment; and for VPP, the Integrated Suicide Risk Assessment (ISRA);

    f)   Current Treatment Plan and behavior plans;

    g)   Psychological Assessments (if available); and

    h)   Keyhea Order or supporting Keyhea documentation (if applicable).

4.   The DMH prescriber will document in the discharge summary the necessity of all psychotropic medications by providing justification per the Enhancement Plan requirements and the non-formulary criteria of the CDCR Statewide Pharmacy and Therapeutics (P&T) committee. In addition, a CDCR Non Formulary Drug Request Form will be completed and returned with the discharge summary.

    a)   If a non-formulary medication is in use and it is recommended that it should be used after the discharge back to a CDCR institution, the CDCR Non Formulary Drug Request Form (*see* Attachment #6) shall be completed and returned with the discharge summary.

    b)   If a CDCR non-formulary medication is recommended for use after discharge back to the CDCR institution, the DMH primary clinician for the inmate-patient or designee shall write a prescription for the medication to be used in CDCR. That prescription shall cover five consecutive days allowing CDCR to order and receive the medication from the CDCR pharmacy services.

        (1) If the inmate-patient is being discharged from SVPP, the prescription shall be placed in the CDCR pharmacy services computer system. This same process shall be used at VPP once the CDCR pharmacy services system is available at CMF.

        (2) VPP, ASH, CSH and PSH shall provide the receiving CDCR institution with a written prescription for the non-formulary medications. This shall be part of the discharge packet that accompanies the inmate-patient.

5.   The inmate-patient shall not be placed in the transport vehicle without the above documents. For each parolee returning to DAPO's supervision, DMH shall ensure that the parolee's documents shall be forwarded to the Parole Outpatient Clinic Liaison of the respective Parole Region.

California Department of Corrections and Rehabilitation and
Department of Mental Health

6.  Notwithstanding paragraph 3. above, a DMH discharge packet shall accompany the inmate-patient at discharge and be faxed to the receiving CDCR institution no later than 2 weeks after discharge. The discharge packet shall include but not be limited to (*see* Attachment #5 – ICF DMH Patient Discharge Checklist):

   a)  Interdisciplinary Notes for past 15 days.

   b)  Physician Progress Notes for past 15 days.

   c)  Psychological Assessments (if available).

   d)  Relevant Consults.

   e)  If applicable, forms specific to psych and return, mental health placement, and transfer information for parolees.

   f)  In addition, the DMH hospitals and psychiatric programs will include in their discharge packets the forms specific to psych and return, mental health placement, and transfer information for parolees.

   g)  All DMH hospitals and psychiatric programs shall provide written copies of the aforementioned cited materials. For VPP and SVPP, due to their close proximity to CMF and SVSP, they shall provide the entire UHR for review by the CMF and SVSP Chief of Mental Health instead of the above.

   h)  If the receiving CDCR institution is aware that the inmate-patient has been transferred to another CDCR institution, the discharge documents shall be forwarded by the receiving CDCR institution to the inmate-patient's current residence.

7.  Once the inmate-patient is transferred back to the CDCR institution, the receiving team clinician, on a timely basis but no later than 5 working days after the time of notification and after evaluation of this patient at the receiving institution, shall contact the discharge team clinician for further information and consultation. If the CDCR team clinician does not contact the DMH team clinician within 10 days of the inmate-patient discharge to CDCR, the DMH clinician shall attempt to contact the CDCR team clinician at least once via the DMH Coordinator at the receiving institution. The DMH clinician-to-clinician contact form shall be used as a guideline during this conversation.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## XI. TRANSFER ARRANGEMENTS TO AND FROM CDCR

A. The CDCR institution shall provide for transportation of an inmate-patient between a DMH State hospital and a CDCR institution or DMH psychiatric program. The parole unit or region shall provide for transportation of a parolee inmate-patient between a DMH program and a local detention facility or community placement when mode of transportation is appropriate for the discharging inmate-patient.

B. A transfer schedule shall be established by the CDCR referring institution and the respective DMH program.

C. The referring CDCR institution and DMH shall coordinate a transfer schedule, normally allowing for transfer of an inmate-patient within 72 hours of acceptance, and return from DMH within 72 hours of discharge. DMH facilities are staffed to receive and admit inmate-patients between 8:00 AM and 4:00 PM, Monday – Friday except when a State holiday falls on a weekday.

D. Each inmate-patient admitted to a DMH program shall have with him/her, unless already sent, all documentation listed in Section VII.A.4. If, following the inmate-patient's admission, it is determined by assessments of the DMH staff that the inmate-patient does not meet admission criteria for the inpatient mental health program; CDCR will transport the inmate-patient back to prison on an expedited basis but no more than 72 hours.

E. If the admission was based on a WIC § 5150 evaluation by the State hospital and the inmate-patient does not meet criteria for continued hospitalization or conservatorship, a CDCR Parole Agent will transport the inmate-patient back to prison or to the inmate-patient's county of residence within 24 hours, but only when the mode of transportation is appropriate for discharging the inmate-patient. The State hospital cannot retain an inmate-patient beyond 24 hours and if the inmate-patient is not picked up within this time period, it may become necessary for the State hospital to discharge the inmate-patient to the street.

F. An inmate-patient who has been found to pose an unusual and severe security risk to the DMH program in which he/she is housed shall be transferred by CDCR to a CDCR institution within 24 hours. However, if the security risk is on the basis of mental disorder rather than criminality or personality disorder, DMH shall make every effort to retain and treat the inmate-patient in the DMH hospital.

G. Personal property of inmate-patients admitted to SVPP and VPP ICF units on Psych and Return shall be retained at the sending institution pending return

California Department of Corrections and Rehabilitation and
Department of Mental Health

of the inmate-patient. Inmate-patients formally endorsed for permanent housing at SVSP and CMF shall be transferred with all personal property.

    1. Property, other than legal materials, shall be limited to no more than can be stored within six cubic feet.

    2. When an inmate-patient is received by SVPP or VPP with personal property, the property box from CDCR shall be inventoried and sealed. Any Victims Compensation and Government Claims Board claim that results from items missing from an inmate-patient's property upon admission to the DMH hospital is CDCR's responsibility.

    3. CDCR shall ensure that items on the DMH Hospital Contraband List (*see* Attachment(s) #7a.,b.,c.- Contraband List(s)) are not transferred to a DMH hospital with the inmate-patient or parolee's personal property.

H. Each inmate-patient or parolee shall be subject to a TB evaluation by DMH upon admittance.

## XII. RE-ENTRY SERVICES

The parties to this MOU concur that planning and preparation is integral and necessary for successful transition to the community for an inmate-patient receiving mental health treatment during their incarceration.

CDCR, except to the extent stated below, is primarily responsible for providing or contracting to provide, services for all CDCR inmate-patients receiving care within DMH. Services will commence at 120 days or less prior to an inmate-patient's scheduled release and return to the community.

Re-Entry Services and responsibilities will consist of the following:

A. Identification of CDCR Inmate-Patients at DMH
    1. Automated to the extent possible, CDCR will identify inmate-patients at DMH that have 120 days or less until their scheduled parole-release date.

B. Benefit Entitlements Application Process

    1. CDCR will utilize contracted or staffed Benefit Workers for the preparation and submittal of benefit entitlement applications. To the extent possible, inmate-patients identified as potentially eligible shall be provided the opportunity to participate in the pre-release benefit application process. Such benefits include: Social Security benefits; such as Social Security, Supplemental Security Income (SSI), or Social

California Department of Corrections and Rehabilitation and
Department of Mental Health

Security Disability Income (SSDI), California State sponsored Medi-Cal benefits, and Veterans Affairs (VA) benefits. Inmate-patient participation in this program is voluntary, and requires the inmate-patient to sign both an authorization to release information and an appointment of representative form.

At 120 days or less prior to the scheduled release date, Benefit Workers will initiate the screening process to determine which inmate-patients are potentially eligible for benefit entitlements.

The application process for inmate-patients at DMH requires a collaborative effort by CDCR and DMH. Specifically, the responsibilities of CDCR and DMH include:

C.  CDCR Responsibilities

1.  Identification of inmate-patients admitted to DMH with impending release dates, and disability evidence.

2.  Obtaining a signed Release of Information and Appointment of Representative form from the participating inmate-patient. When an inmate-patient is unable to make a decision for them self, the benefit worker will request the treating psychiatrist write a notation that the inmate-patient applicant is unable to sign and/or make decisions for self due to mental illness and sign below the statement on the required forms.

3.  Determination of which benefit the inmate-patient is most likely eligible for based on medical/mental disability, financial status, and/or age.

4.  Gathering necessary information for the benefit applications, (i.e., data required in the benefit application fields, and supporting disability documentation).

5.  Completion and submission of benefit applications (web based initiation for Social Security).

6.  Facilitation of telephone interviews between the inmate-patient and Social Security staff after a SSI application has been submitted and the inmate-patient is able to participate.

7.  Tracking of application processes and outcomes.

D.  DMH Responsibilities

California Department of Corrections and Rehabilitation and
Department of Mental Health

To assist with the successful implementation of this program and for the Benefit Workers to adequately perform their duties the following must be provided:

1.  Dedicated Office space with;

    a) Desk.

    b) Desk chair and guest/inmate-patient chair.

    c) Internet access.

    d) Speaker phone with voicemail.

    e) Locking file drawer or cabinet.

    f) Interview room with outside phone line and speaker phone if dedicated office space cannot be utilized for inmate-patient telephone interviews with the Social Security Administration.  The room requires confidentiality due to the medical, personal, and financial information disclosure.  However, the room must be located in an area that will be observed by custody staff and have inmate-patient accessibility.

2.  Other needs for the benefits workers are as follows;

    a) Facility access.

    b) Access to the inmate-patients.

    c) Access to fax and copying machine.

    d) An assigned mail box.

    e) Use of facility's effective communication resources.

    f) Access to health records.

    g) Occasional assistance from DMH treatment staff on completion of documentation describing disabilities.

California Department of Corrections and Rehabilitation and
Department of Mental Health

When CDCR or DMH is unable to provide the office space or other needs for the benefits workers as outlined above, the departments will collaborate to develop a mutually agreeable solution for the provision of these resources.

E. Pre-Release Disposition Review

    1. At 60 days prior to the scheduled release date, DMH staff shall complete a pre-release dispositional review of all CDCR inmate-patients in their care and fax the review to the DCHCS headquarters office at (916) 445-0601, and then email the CCAT Coordinator notifying the Coordinator that the dispositional review was sent.

F. Process for Providing Services Other than Benefit Applications

    1. The CCAT format will be utilized to develop release plans for paroling inmate-patients at DMH. DCHCS shall determine the necessity for, and schedule a CCAT for inmates who are within 45 days of paroling upon receipt of the dispositional review from DMH. DCHCS will coordinate the participants for the individual CCATs, and determine participants on a case by case basis. Participants shall include representatives from DMH and CDCR; however, the participants may also include representatives from the inmate-patient's county of record, and/or contracted or other potential community-based mental health providers.

    The CCAT will also be utilized to confirm county of residence, parole unit assignment, pending disciplinary actions, law enforcement warrants and holds, and whether an inmate-patient requires Mentally Disordered Offender and/or Sexually Violent Predator Screening. These items shall be referred to the C&PR or designee for an expeditious disposition as needed.

G. Process to Use When an Inmate-Patient is a Danger to Self or Others/Gravely Disabled

    1. At 30 days prior to an inmate-patient's scheduled parole date, in cases in which it is determined that an inmate-patient will likely meet the involuntary placement criteria as set forth in the Lanterman-Petris-Short Act, the DMH treatment team shall provide CDCR with a mental health evaluation indicating that the inmate-patient presents a grave disability and/or danger to self or others sufficient to serve as probable cause for WIC §5150 placement, a historical course of the inmate-patient's mental disorder (WIC §5150.05), pertinent copies of medical records (if applicable), and a discharge plan. During a CCAT, when it is determined that an inmate-patient will likely meet this criteria, CDCR

California Department of Corrections and Rehabilitation and
Department of Mental Health

will identify the location to which DMH will forward the required documentation.

H. Transportation upon Release to Parole

1. For inmate-patients returning to a prison for release processing, transportation shall be coordinated by CDCR. At no less than 14 calendar days prior to the scheduled release date, DMH staff shall verbally advise the prison clinical liaison if an inmate-patient is unable to navigate public transportation at time of release. The CDCR clinician shall then document the transportation need and provide it to the C&PR by the next business day.

## XIII. MEDICAL AND SURGICAL HEALTH CARE

CDCR acknowledges that it refers CDCR inmate-patients to DMH for mental health treatment only. Medical care that is not routinely provided or available at a State hospital shall be the responsibility of CDCR. CDCR shall provide medical care for VPP and SVPP. CDCR and DMH agree that the transfer of a CDCR inmate-patient from a DMH State hospital to a community health facility for medical care does not vacate the inmate-patient's transfer from CDCR to DMH pursuant to PC §2684.

A. CDCR shall provide a list of CDCR contract community health facilities and identify the ones nearest to each DMH State hospital. Except when the need for emergency medical care prevents it, DMH State hospitals shall refer CDCR inmate-patients to a CDCR contract community health facility. CDCR shall instruct CDCR contract community health facilities and providers that all the medical bills for the care of CDCR inmate-patients referred to the contractor by DMH shall be submitted to CDCR for payment pursuant to CDCR's contract.

B. DMH shall obtain prior approval for non-emergency offsite medical care from the CDCR referring institution's HCM (or designee). If emergency offsite medical care is required, DMH shall notify the CDCR referring institution HCM (or designee), within one working day of the emergency transfer (applies to psychiatric programs only).

C. When the need for emergency medical care prevents a DMH State hospital from transferring a CDCR inmate-patient to a CDCR contract community health facility, the State hospital shall arrange for such emergency medical care at a local non-CDCR contract health facility. The DMH State hospital shall notify the non-CDCR contract health facility that CDCR is responsible for all emergency care of the inmate-patient and that all medical invoices will

California Department of Corrections and Rehabilitation and
Department of Mental Health

be sent to CDCR. The DMH State hospital will notify CDCR, and CDCR will attempt to obtain a contract for these services.

D.  CDCR's HCM in conjunction with CDCR UM staff shall be responsible for monitoring the inmate-patient's care while in a community health facility. Recommendations regarding care and continued stay may be made to the attending physician at the community facility, the Chief Medical Officer of the referring CDCR institution, and the Medical Director of the referring DMH State hospital.

## XIV.  PHARMACY SERVICES FOR PSYCHIATRIC PROGRAMS (VPP and SVPP)

A.  CDCR will provide a statewide pharmaceutical care service. This includes coordination through the CDCR Central Pharmacy Administration, CDCR Statewide Pharmacy and Therapeutics Committee, and CDCR pharmaceutical purchasing contracts to assure continuity of pharmaceutical care consistent with the program provided for all inmate-patients.

B.  The CDCR Statewide P&T will establish the formulary of drugs, pharmacy related policies and procedures and disease management medication guidelines. DMH will have representation on the P&T committee as a voting member.

C.  Use of formulary medications shall be encouraged. If a DMH clinician believes that a non-formulary medication is necessary to stabilize the mental health of an inmate-patient, the clinician may request to use the non-formulary medication by completing a CDCR non-formulary request. In addition, the DMH clinician is required to document the inmate-patient's medication history specific to the mental health condition being treated to include treatment effect, and provide justification for the non-formulary medication. This non-formulary request shall be approved or denied by the DMH Medical Director or designee.

D.  As the inmate-patient's mental health stabilizes, the use of CDCR non-formulary medications will be reviewed to determine if a CDCR formulary medication could be successfully used to maintain the inmate-patient's mental health. This team discussion shall be documented in the patient's chart and specify the CDCR non-formulary medication discussed and the rationale for use or non-use with the inmate-patient. All documentation related to use of the CDCR non-formulary medications will be provided to CDCR prior to discharge and at the time of discharge.

E.  If a CDCR non-formulary medication is recommended for use after discharge back to the CDCR institution, the DMH facility shall write a prescription for the medication to be used in CDCR. That prescription shall cover five

California Department of Corrections and Rehabilitation and
Department of Mental Health

consecutive days allowing CDCR to order and receive the medication from CDCR pharmacy services.

F.  Upon admission, based on clinical need, the administration of medication by VPP and SVPP clinical staff shall be prioritized in the following order:

1.  use of injectables;

2.  use of a liquid concentration; and

3.  use of crushed medications with the exception of those medications such as time-released that are not amenable to this form of ingestion.

As the inmate-patient's mental health stabilizes, the delivery of medication will be reviewed for appropriateness.

G.  All pharmacies will be CDCR pharmacies and shall be in compliance with applicable regulations.

H.  The CDCR pharmacies shall be licensed by the California Board of Pharmacy.

I.  The CDCR facility level Pharmacist-In-Charge, who directly supervises the pharmacy staff, shall be under the supervisory direction of the Statewide CDCR Director of Pharmacy and local CDCR supervisor as stipulated in the CDCR Pharmacy Organizational Chart.

J.  A detailed accounting of all pharmaceutical costs, volume ordered, dispensed and to which inmate-patients, will be maintained by the Department of Pharmacy.  Said accounting shall also contain a detail of any supplied pharmaceutical material destroyed and the procedure followed for such destruction.

K.  Access to after-hours pharmaceuticals shall be provided following the CDCR Statewide Pharmacy After-Hours Medication Policy and Procedure.

L.  Controlled Substance records shall be maintained as required by CDCR Statewide Policy and Procedure.

M.  An annual inventory of pharmaceuticals will be conducted consistent with CDCR Statewide Pharmacy Policy and Procedure.

N.  CDCR Pharmacy will be responsible for ordering all pharmaceutical products consistent with CDCR Statewide Pharmacy Policy and Procedure.

O.  CDCR will be responsible to approve the order and the payment of all invoices for pharmaceuticals.

California Department of Corrections and Rehabilitation and
Department of Mental Health

P.  CDCR Pharmacy staff will be responsible for receiving ordered products from the vendor's delivery consistent with CDCR Statewide Pharmacy Policy and Procedure.

Q.  CDCR Pharmacy shall promptly forward the original copies of the invoices received and their corresponding purchase orders/printouts to CDCR Accounts payable consistent with CDCR Statewide Pharmacy Policy and Procedure.

## XV.    PHARMACY SERVICES FOR DMH HOSPITALS

A.  DMH State hospitals utilize the statewide Common Drug Formulary.  DMH, as a member of the Pharmacy Advisory Committee (PAC), will work with the Department of General Services (DGS) to implement and administer a statewide pharmaceutical program and a statewide medical supply program. This includes coordination to develop a governing structure to establish pharmaceutical requirements for DGS contracts that shall be established and implemented.   One goal of the PAC is the development of a statewide Common Drug Formulary.

B.  If the DMH hospital clinician has determined that  a non-formulary medication is necessary to stabilize the mental health of an inmate-patient, the clinician may use the medication but is required to document the inmate-patient's medication history specific to the mental health condition being treated to include treatment effect, and provide justification for the non-formulary medication.

C.  As the inmate-patient's mental health stabilizes, the use of CDCR non-formulary medications will be reviewed to determine if a CDCR formulary medication could be successfully used to maintain the inmate-patient's mental health.  This team discussion shall be documented in the inmate-patient's chart and specify the CDCR non-formulary medication discussed and the rationale for use or non-use with the inmate-patient.   All documentation related to use of the CDCR non-formulary medications will be provided to CDCR at the time of discharge.

## XVI.    IMAGING STUDIES

A.  Imaging studies including but not limited to x-rays, MRI, CT, ultrasound, and Dexa Scan shall only be requested by a clinician, and only when determined to be clinically necessary.  Imaging studies shall be requested utilizing the established CDCR process, and shall include completion of all required forms.  Requests for imaging studies will be subject to established CDCR utilization management criteria.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## XVII.   CONSULTATIVE SERVICES

A.   Specialty consultative services shall only be requested by a clinician, and only when determined to be clinically necessary.  Consultative services shall be requested utilizing the established CDCR process, and shall include completion of all required order forms.  Requests for consultative services will be subject to established CDCR utilization management criteria, to include InterQual

## XVIII.   PUBLIC HEALTH AND INFECTION CONTROL

A.   DMH shall maintain an active public health program.  This program shall collaborate with CDCR public health staff in ensuring compliance with all applicable Infection Control policies, procedures, laws and regulations.

## XIX.   HEALTH RECORDS

A.   ACCESS BY CDCR TO DMH MEDICAL RECORDS

In all cases, the Executive Director of the State Hospital or Psychiatric Program, or designees shall be notified prior to access of medical records.

1.   In medical emergencies or urgent need, the Chief Executive Officer of Medical Services or designees, shall have immediate on-site 24-hour access to the DMH program and/or State hospital health record for each CDCR inmate-patient.  These individuals may also contact the State hospital or psychiatric program by telephone and request that critical portions of the health record be faxed to an appropriate CDCR clinician.

2.   At all other times, the Statewide Director, Mental Health, DCHCS (or designee) shall have access to the DMH program or State hospital health record, or faxed or otherwise copied portions thereof, for each CDCR inmate-patient upon four hours notice.

B.   The CMF Health Records Director is the custodian of all health records for health care rendered at the CMF institution; the SVSP Health Records Director is the custodian of all health records for health care rendered at the SVSP institution.  The VPP and SVPP Health Information Management Department (HIMD) Supervisors shall be the sub-custodians of record for each inmate-patient who is in treatment in intermediate psychiatric care services at VPP and SVPP.  The State hospital Health Records Directors are the custodians of all health records for health care rendered at ASH, CSH and PSH.

California Department of Corrections and Rehabilitation and
Department of Mental Health

C. DMH staff shall be responsible for maintaining and completing each DMH health record following the MHDS. Each record shall be legibly handwritten, typewritten or computer stored.

D. VPP and SVPP maintained records:

1. VPP and SVPP staff shall be responsible for each inmate-patient's health record, beginning with the admission process and finishing when the inmate-patient is released to CDCR, or other DMH institution, and for ensuring that all discharge materials are completed.

2. The VPP and SVPP HIMD Offices shall assist DMH clinical staff with documentation requirements through concurrent and retrospective audits.

3. After the VPP HIMD completes the record, the CMF Health Record Department may audit documentation to ensure complete and accurate records and that each documentation requirement is met. CMF Health Records Director, or designee, shall review final coding and complete all indices. The completed record and all indices shall be the property and responsibility of the CMF Health Records Department.

4. After the SVPP HIMD completes the record, the SVSP Health Record Department may audit documentation to ensure complete and accurate records and that each documentation requirement is met. SVSP Health Records Director, or designee, shall review final coding and complete all indices. The completed record and all indices shall be the property and responsibility of the SVSP Health Records Department.

E. State hospital maintained records:

1. The State hospital HIMD staff shall be responsible for each inmate-patient's record, beginning with the admission process and finishing when the inmate-patient is released to CDCR. The HIMD is to ensure that all discharge materials are completed and assure that the documentation requirements are met through concurrent and retrospective audits. HIMD is responsible for the final coding and completion of indices. The competed record shall be maintained by HIMD.

F. The CMF Health Records Director and VPP HIMD Supervisor shall work together to provide optimal services to the DMH clinical staff. For each CDCR inmate-patient returning to CMF or another CDCR institution from the VPP, VPP shall ensure that the inmate-patient's complete health record is

California Department of Corrections and Rehabilitation and
Department of Mental Health

transferred to CDCR in accordance with Title 22. VPP shall also prepare an updated Discharge Summary pursuant to Section X above.

If an inmate-patient is a direct transfer from ASH to another State hospital, the complete medical record is transferred to the receiving State hospital. The original record is to remain at ASH if the inmate-patient is transferred to CDCR or to parole. Pertinent photocopies of the medical record are provided to the receiving agencies to assure continuity of care.

G. A copy of the Discharge Summary and any relevant psychological testing reports and other evaluations shall be transferred to the CMF Health Records Manager at the time the inmate-patient is discharged to a CDCR facility. The VPP HIMD Supervisor shall be responsible for ensuring that the Discharge Summary and other relevant reports shall be filed in the inmate-patient's Section of the CDCR Unit Health Record.

A copy of the Discharge Summary/RCPP and any relevant psychological testing reports and other evaluations shall be transferred to the CDCR facility whenever the inmate-patient is transferred from ASH to CDCR.

H. After notifying the DMH Executive Director, CDCR staff shall have continuous physical access to the specific VPP health care records as long as needed to complete the designated task.

Access to State hospital health records is limited to members of the hospital staff and CDCR staff who have legitimate reasons to have the records in their possession (e.g. treatment, payment, health care operation, community placement planning, and benefit entitlement applications).

I. Each VPP Health Record procedure regarding maintenance of VPP health records for the VPP shall be approved through the MHDS Statewide Committee in conjunction with the CMF Health Records Director. CMF Medical Staff shall maintain a current MHDS Manual in the VPP Chief of Staff's Office. Any requirement believed necessary to be implemented in the VPP Health Record procedure by CMF Staff shall be requested in writing to, and reviewed by, the VPP HIMD Supervisor, Medical Director, and must be approved by the VPP Executive Director. After approval, the VPP HIMD Supervisor and CMF Health Record Director shall work in concert to draft a policy for submission to the CMF Health Record Committee for approval prior to implementation.

J. VPP is responsible for MHDS training and Quality Assessment and Improvement auditing to monitor for compliance. The State hospital HIMD and Standards Compliance staff, and other key individuals when indicated, share responsibility fro documentation training, quality assessment and improvement auditing to monitor for compliance.

California Department of Corrections and Rehabilitation and
Department of Mental Health

K.  When the VPP Medical Director determines that an inmate-patient is to be returned to CMF, the Discharge Review staff shall be notified. At that time, CMF shall be provided with the mental health discharge summary and all other pertinent medical data.

L.  At the time of an inmate-patient's discharge, the VPP Medical Director shall ensure that VPP records are complete pursuant to CDCR Health Record Policy before inclusion in the CDCR health record.

M.  At the time of an inmate-patient's discharge, the HIMD staff at the State hospitals will follow procedures for completing health records in accordance with health record policies. The State hospital records remain at the hospital; they are not included in the CDCR health record.

## XX.  SPECIALIZED ANTIPSYCHOTIC MEDICATIONS

Inmate-patients who require initiation of Clozapine shall generally be referred for treatment at a DMH program. To provide continuity of care, CDCR inmate-patients who have been placed on Clozapine while in the DMH program will be returned to the following institutions based on their medical, security, and classification needs:

>California Medical Facility
>California Medical Facility, Mental Health Crisis Bed Unit
>California State Prison – Corcoran;
>California State Prison – Sacramento;
>California State Prison – San Quentin;
>North Kern State Prison;
>Mule Creek State Prison; and
>California Institution for Women

CDCR retains the right to add or delete institutions from the above list. CDCR shall provide notification of these changes via written communication to concerned parties including DMH. CDCR Mental Health Program will work with HC-POP and CSU to ensure proper placement.

For inmate-patients who will be discharged to parole on Clozapine therapy, if the parole date is known in advance, clinical staff from Program shall notify a POC liaison from the appropriate parole region clinic at least 30 days in advance of release, to ensure continuity of Clozapine therapy upon parole.

## XXI.  SUICIDE

In the case of an inmate-patient death by suicide, at either a State Hospital or Psychiatric Program, DMH and CDCR shall jointly review the case. DMH shall furnish to a CDCR reviewer a copy of any reports regarding the suicide that have been provided to the Department of Public Health. The CDCR reviewer will discuss initial findings with DMH executive staff prior to leaving the site. CDCR retains the right to

California Department of Corrections and Rehabilitation and
Department of Mental Health

make recommendations that it deems appropriate in keeping with licensing standards concerning the care of suicidal inmate-patients. The DMH Deputy Director, LTCS, and the Executive Director of the program will be furnished with a copy of the CDCR "Suicide Report" and the "Executive Summary of Suicide" along with attachments. DMH shall review the CDCR report, and shall include corrective steps if indicated. The DMH program shall furnish a follow up report along with supporting documents to the CDCR Mental Health Suicide Prevention Coordinator, DCHCS, within 90 days of receiving the Suicide Report (within 180 days of date of death). The follow up report shall include measurable goals, outcome criteria, and targeted timelines for implementation.

In cases when an inmate-patient has died within 30 days of discharge from a DMH hospital or psychiatric program, DMH shall be provided the CDCR mortality review as part of DMH's agreement with the United States Department of Justice's Consent Judgment.

    A. In the case of a suicide of an inmate-patient within a DMH program, CDCR may review and copy the inmate-patient's DMH medical record upon notification to the hospital's Medical Director. For an inmate-patient who commits suicide at a State hospital, the Senior Special Investigator shall be contacted to make arrangements to review and copy the inmate-patient's medical record.

    B. In the case of a suicide of an inmate-patient treated within a DMH program, when the suicide occurs within 30 days after discharge, CDCR shall notify the Chief of Correctional Services and Support at DMH Headquarters. DMH shall complete a death review that includes documentation indicating the level of functioning at the time of discharge from DMH and the justification for the recommended level of treatment at the time of the discharge.

## XXII. COMPLIANCE

CDCR and DMH shall regularly monitor compliance with this MOU. Any failure to comply with the terms of the MOU shall be reported for action to the respective department Deputy Directors.

Representatives from the State hospitals, psychiatric programs and prisons making direct referrals shall meet quarterly in Interagency Performance Improvement Meetings. These meetings may be held by videoconference and will be hosted on an alternate basis by CDCR HQ and DMH HQ.

## XXIII. TRAINING

CDCR and DMH shall distribute copies of this MOU to all CDCR institutions, Parole Regions and to relevant DMH hospitals and psychiatric programs. CDCR and DMH shall conduct system-wide training for institutional clinicians on the nature, extent and

California Department of Corrections and Rehabilitation and
Department of Mental Health

availability of inpatient DMH care, and on the admission criteria and procedure for
admission to each DMH program.

## XXIV.  PROVISION FOR SERVICES UNDER PC §§ 2960-81

Agreements between CDCR and DMH regarding individuals under PC §§2960-2981 are
covered in a separate or separate MOUs between CDCR and DMH.

## XXV.  TERMINATION

CDCR may terminate any program referenced in this MOU in whole or in part, upon 60-
calendar days written notice to DMH.  All programs, in whole or in part, not terminated
pursuant to this provision, shall remain in full force and effect.

SIGNATORS


_____          _____
SHARON AUNGST                            Date of Signature
Chief Deputy Secretary
Division of Correctional Health Care Services
California Department of Corrections and Rehabilitation



_____          _____
CYNTHIA A. RADAVSKY                      Date of Signature
Deputy Director
Long Term Care Services
California Department of Mental Health



_____          _____
J. CLARK KELSO                           Date of Signature
Federal Receiver
California Prison Health Care Services



_____          _____
TERRI MCDONALD                           Date of Signature
Chief Deputy Secretary
Adult Operations

California Department of Corrections and Rehabilitation and
Department of Mental Health

## TABLE OF ATTACHMENTS*

Attachment # 1 – DMH Referral Form/Intermediate Care/Non-Acute Program
Attachment # 2 – DMH ICF/Non-Acute Referral Check List
Attachment # 3 – DMH Referral Decision Form
Attachment # 4 – Mental Health Summary/Discharge Telephone Contact Form
Attachment # 5 – ICF DMH Patient Discharge Checklist
Attachment # 6 - Non-Formulary Drug Request  (CDCR Form 7374)
Attachment(s)  # 7 a., b., c. - Contraband List(s) for ASH, PSH, and SVPP/VPP


* Note that CDCR and DMH are in the process of reviewing these attachments to
ensure that they are consistent with the MOU and will, as necessary, revise them
accordingly.

**Department Of Mental Health Referral Form**
ICF MOU Attachment #1
# ~ ~ ~ Intermediate Care/Non-Acute Program ~ ~ ~

Referral for: ☐ Atascadero State Hospital **(ASH)**          ☐ Patton State Hospital **(PSH)**
☐ Vacaville Psychiatric Program **(VPP)**: ☐ Salinas Valley Psychiatric Program **(SVPP)**
          ☐ Cells ☐ Dorms **[*PLEASE specify*]**

Referring Prison: _____ Date: _____

Date of Referral IDTT: _____ **[*Attach IDTT as part of Mental Health Treatment Plan*]**

Current Custody/Clinical Placement: ☐ CCCMS  ☐ EOP  ☐ Ad-Seg EOP  ☐ PSU  ☐ MHCB  ☐ APP

Inmate Name: _____ CDC#: _____ Date of Birth: _____

DDP: _____ **Due Process:** ☐ Yes ☐ No **Date:** _____ Ethnicity: _____

**\*KEYHEA:** ☐ Yes ☐ No ☐ In Process (incl. supporting documentation) Date Initiated: _____ Date Expires: _____

Housing: _____ Education: (years) _____ GED: ☐ YES ☐ NO  Literate: ☐ YES ☐ NO

(Please Print)
Referring Clinician: _____ Ph _____ Pgr _____ Fax _____

Tx Psychiatrist: _____ Ph _____ Pgr _____ MH Secretary Ph _____

**Current Psychiatric Diagnosis:**                    **Current Psych Medications:** (name, dosage, freq, duration, target sxs)

Axis I      _____                _____

            _____                _____

Axis II     _____                _____

Axis III    _____                _____

Axis IV     _____                _____

Axis V      _____                _____

**Reason For Referral:** (check all that apply and supply *detailed* narrative)

☐ **Inadequate level of functioning in EOP:** _____
_____

☐ **Requires 24–hour nursing care:** _____
_____

☐ **Requires neurological/neuropsychiatric/diagnostic testing:** _____
_____

☐ **Would benefit from focused skills development not currently available in EOP:** _____
_____
_____

☐ **Clozapine trial:** _____

**DMH Referral, continued**

**History of Present Illness and Past Psychiatric History:**    (Must Fill Out Completely)

Hx and Recent **Suicidal Ideation/Attempt:** _____

 **Ritualistic or Repetitive Self-Injurious Behaviors:** _____

_____

_____

_____

Hx and Current **Violence and Behavioral Alerts:** _____

_____

_____

_____

Hx and Current **Substance Abuse:** _____

_____

_____

Hx and Current **Psychiatric Treatment / MHCB / Hospitalization:** _____

_____

_____

_____

_____

Hx and current **Medication Compliance** (Document blood level verification of compliance): _____

_____

_____

<u>**Current Mental Status Exam:**</u>
<u>**Please use statements that indicate observed behavior**</u>
<u>**DO NOT USE WNL**</u>

Appearance: _____

Orientation:_____

Speech: _____

Attention/concentration: _____

 Memory:_____

**DMH Referral, continued**

Fund of Information: _____

Affect: _____

Mood: _____

Sleep: _____ Appetite: _____

Form of Thought: _____

Content of Thought: _____

Perceptual Disturbance: _____

Reality Contact: _____

Insight & Judgment: _____

Interview Attitude: _____

Reliability (Historian): ☐ Good  ☐ Fair  ☐ Poor _____
*Suicidal and Homicidal Ideation*: SEE BELOW        .

What are desired **Treatment Outcome Expectations?** (be very specific)

_____

_____

_____

**CDCR Referring Clinician:** Comments Regarding *Clinical Criteria / Factors / Signs / Symptoms* for DMH Placement Consideration

_____

_____

_____

_____

_____

_____

What are desired **Treatment Outcome Expectations?** (Be very specific)

_____

_____

**Referring Clinician Signature:** _____  **Date :** _____

ICF MOU Attachment #2
March 2010

# Department of Mental Health **ICF/Non-Acute** Referral Check List

~ For use *first* by the CDC sending institution, *then* the DMH receiving facility ~

| | |
|---|---|
| Inmate's Name: | |
| CDC No: | |
| Referring CDC Institution: | |
| DMH Facility: | |

This checklist is to be utilized by a CDC institution when compiling a referral packet to DMH. In order for this process to be the most efficient and expeditious, the referring CDC institution, before sending to DMH, must include **ALL** applicable items. **Incomplete packets are unacceptable.** The process of tracking down missing items wastes valuable clinical and administrative time and resources, *and,* most importantly, it delays the patient getting to the needed level-of-care. DMH should never have to check the "needed" column because a required document did not arrive in the referral packet. To ensure that referral packets are completed before sending, a CDC clinical supervisor or manager **shall** co-sign along with the referring clinician, certifying that the packet is complete. This checklist, with the two required signatures, is then sent to the appropriate DMH facility as part of the referral packet.

N/A = Not Applicable

| **Required Information: Clinical** | | Included √ | N/A √ | Needed √ | Comments: |
|---|---|---|---|---|---|
| 1 | Referral Form for ICF/Non-Acute | | ■ | | |
| 2 | Transfer Medical Summary **or** History and Physical – (must be within 30 days of referral) **H&P is Required for SVPP** | | ■ | | |
| 3 | Current Treatment Plan | | ■ | | |
| 4 | IDTT Screening Checklist | | ■ | | |
| 5 | Due Process – documentation (chrono) or written consent | | ■ | | |
| 6 | Pharmacy Profile (computer printout) | | ■ | | |
| 7 | Keyhea Order - or documentation supporting obtainment of a Keyhea Order *(CRITICAL)* | | ■ | | |
| 8 | Interdisciplinary Progress Notes – for the past 15 days plus most recent psychiatrist note (RC's may have less for new arrivals) | | ■ | | |
| 9 | Tuberculosis Chrono | | ■ | | |
| 10 | Suicide Risk Assessment – most recent | | ■ | | |
| 11 | This completed checklist form w/ dual sig's | | ■ | | |
| **Required Information: Central File** | | Included √ | N/A √ | Needed √ | Comments: |
| 12 | Placement Screening Form for DMH Placement | | ■ | | |
| 13 | Abstract of Judgment (State Hospital only) | | | | |
| 14 | Legal Status Summary (State Hospital only) | | | | |
| 15 | Chrono History (State Hospital only) | | | | |

| **CDC Referring Clinician:** | Print Name & Title: | | Phone number: | |
|---|---|---|---|---|
| | Signature: | | Pager number: | |
| Supervisor or Manager: | Signature Certification: | | **Date sent:** ☐ Fax ☐ Overnight Mail ☐ Both | |
| Referral Coordinator | Print Name & Title: | | Phone number: | |
| | | | Pager number: | |
| Date Received by **DMH**: | | Date Completed: | | |
| Reviewed by: (Coordinator Signature) | | Comments: | | |

ICF MOU Attachment #3

## Department of Mental Health Referral Decision Form

Inmate or Parolee's Name: _____

CDCR No: _____

Referring CDCR Institution or POC Region: _____

DMH Facility: _____

**DMH Reviewing Clinician:** _____

_____

_____

_____

_____

_____

_____

_____

**DMH Decision:**  ☐ Clinically Accepted (Pending Custody Approval)       Date: _____

☐ Clinically Accepted <u>but</u> Medically Deferred       Date: _____

☐ Not Accepted       Date: _____

**Detailed Reason for Medical Deferment**
Please indicate expectations of the patient's condition when admission shall be reconsidered.

_____

_____

_____

_____

_____

_____

**Detailed Reason _Not_ Accepted:**  Please use official letterhead to write the rationale for the rejection

_____

**DMH Clinician:** _____       Date: _____

**DMH Coordinator:** _____       Date: _____

**Fax to 1) referring CDCR institution and 2) If a <u>REJECTION</u> fax to DMH HQ 916-653-6376**

December 2009                          Page 1 of 1

ICF MOU Attachment #4

## Mental Health Summary/Discharge Telephone Contact Form
Department of Mental Health    &    Department of Corrections and Rehabilitation

| Date: | Time: |
|---|---|
| DMH Clinician: | DMH Facility: |
| CDCR Clinician: | CDCR Facility or Parole Region: |
| Patient Name: | CDCR #: |
| Primary Admitting Dx: | Reason for DMH Admission: |

Please type information for clarity. Check that each item has been discussed and provide details/comments when needed:

☐ Primary discharge diagnosis and level of care recommendation:

_____

☐ DMH medication changes/trials and patient's response

_____

☐ Current medications and targeted symptoms, including time sensitive medications that require administration upon arrival:  :

_____

_____

☐ Use of CDCR non-formulary medication rationale:

_____

_____

☐ Therapy provided, individual and/or group, and patient's response: _____

_____

☐ Environmental and behavioral conditions that lead to identified problematic behaviors:

_____

☐ Symptom and Functioning Change:  ☐ Improved  ☐ No change  ☐ Uncooperative  ☐ Assaultive/Disruptive/Destructive

Describe, and include any Rules Violations or District Attorney referrals:

_____

_____

☐ Continuing MH treatment goals and recommended follow-up (include rationale for change in level of care):

_____

_____

☐ Clinicians agree to follow-up plan:  ____ ☐ Refer to DMH Acute– ☐ Refer to DMH Intermediate  ☐ Retain in current program

January 2010

ICF MOU Attachment #4

☐ Refer to DMH Intermediate    ☐ Retain in current program

~ or ~

☐ Clinicians do not agree → ☐ Refer to Coordinated Clinical Assessment Team    ☐ Faxed on this date: _____

Notes: _____

January 2010

ICF MOU Attachment #5

# ICF
# DMH PATIENT DISCHARGE CHECKLIST

Patient Name: _____    ID Number: _____

CDCR Number: _____    Discharge Date: _____

                                         **DATE**              **INITIALS**

## Sent 5-7 days prior to discharge (when possible)

1. The CDCR-DMH summary/phone contact form    _____    _____
2. The non-formulary medication form (if necessary)    _____    _____
3. The Discharge Summary    _____    _____

## Sent with inmate-patient upon discharge:

1. Psychiatric Discharge Summary    _____    _____
2. Nursing Assessment and/or Discharge Summary    _____    _____
3. Current Physicians Orders    _____    _____
4. MAR    _____    _____
5. Current Suicide Risk Assessment    _____    _____
6. Current Treatment Plan    _____    _____
7. Current Treatment Plan and behavior plans    _____    _____
8. Psychological Assessments if available    _____    _____
9. Keyhea Order (if applicable)    _____    _____
10. "Request for Non-Formulary Medication Use"    _____    _____

## Within 2 weeks of Discharge:

11. Interdisciplinary Notes for past 15 days    _____    _____
12. Physician Progress Notes for past 15 days    _____    _____
13. Relevant Consults    _____    _____

## If applicable:

14. Psych and Return (128C)    _____    _____
15. MH Placement (128C)    _____    _____
16. For Parolees Only (CDCR 7371)    _____    _____

Staff member verifying packet contents: _____

Date: _____

Attachment 9:    December 2009

ICF MOU Attachment #6

**CDCR Drug Formulary**                                    **Health Care Services**

## NON FORMULARY DRUG REQUEST (CDCR Form 7374)

**TO BE COMPLETED BY PRESCRIBER:**

1    This form must be completed before the pharmacy can acquire non-formulary drug for dispersing.

2    A 24 to 48 hour advance notice may be required before approved non-formulary drug request items can be obtained by the pharmacy for dispensing. The pharmacy will notify the prescriber in all cases of delay.

3    A therapeutically equivalent agent may be available in the formulary. Please call your pharmacist for assistance in making this determination.

| TO:  Chief Medical Officer<br>Chief Psychiatrist<br>Director of Pharmacy<br>Chair, Pharmacy and Therapeutics Committee | FROM (Physician, Dentist or other authorized prescriber):<br><br>Name:<br><br>Signature:                                   Date: |
|---|---|

The inmate named below has therapeutic requirements that cannot be met by currently available standard stock resources; therefore, the acquisition of the following agent(s) is requested:

| Patient's Name: | CDCR Number: | Housing: | |
|---|---|---|---|
| Medication Requested: | | Strength: | Dosage Form: |

Indication: _____

Expected Duration of
Therapy: _____

Formulary Medications Already
Tried: _____
_____

Reason(s) Why Formulary Medications Are Not Suitable:
_____
_____
_____

AUTHORIZATION FOR ACQUISITION:

☐   APPROVED

☐   DISAPPROVED
Reasons for disapproval: _____
_____

_____          _____
Facility Medical Authority/Chief Psychiatrist/              Date
Pharmacy and Therapeutics Committee

Revised August 2008                                                      9-8-3

When providing justification on non-formulary requests, the following additional criteria needs to be included by the provider.

| WELLBUTRIN (Buprorion) | SEROQUEL (Quetiapine) |
|---|---|
| ☐ Documented history of an Axis I diagnosis of Major Depressive Disorder (MDD) or Attention Deficit Hyperactivity Disorder (ADHD). | ☐ Documented history of an Axis I diagnosis with a psychotic component or bipolar disorder. There **MUST** be documentation of a thought disorder and/or mood disorder, such as delusions, disorganization, loosing of associations, hallucinations, signs/symptoms of schizophrenia, mania, depression or grandiosity. |
| ☐ Documentation of the severity of impairment and how it interferes with the patient's ability to function and /or program in the correctional setting. | ☐ Documentation of the severity of impairment and how it interferes with the patient's ability to function and/or program in the correctional setting. |
| ☐ If requesting for MDD, documented history of 3 failed antidepressant therapies (i.e. selective serotonin reuptake inhibitors, serotonin norepinphrine reuptake inhibitors, and/or Remeron (Mirtazapine)) at maximum tolerated dose for a clinical trial period of no less than six to eight weeks and blood levels are to be obtained to confirm compliance with the clinical trial. | ☐ To be used only in inmate/patients who have failed to respond adequately to treatment with appropriate courses of standard drug treatment indicated for the above mentioned Axis I diagnosis, either because of insufficient effectiveness or the inability to achieve an effective dose due to intolerable adverse effects from those drugs. |
| ☐ If requesting for ADHD, documented history of a failed trial of Strattera (Amoxipine) approved for the treatment of ADHD at maximum tolerated dose for a clinical trial period of no less than six to eight weeks and blood levels are to be obtained to confirm compliance with the clinical trial. | ☐ If requesting for a psychotic disorder, documented history within CDCR, Department of Mental Health (DMH) and/or parole out patient (POC) settings or documentation from a community setting of at least 3 failed trials of an antipsychotic each given for a minimum of six weeks at maximum therapeutic doses and blood levels are to be obtained to confirm compliance with the clinical trial. "Maximum therapeutic doses" are defined as those listed in the Physician's Desk Reference for that medication, or the maximum dose that can be given the particular inmate/patient without intervening unacceptable side effects. |
| ☐ No documented history of institutional drug abuse in the last 2 years. | ☐ If requesting for Bipolar Disorder, documented history either from within CDCR, DMH and/or POC settings or from a community setting of 3 failed mood stabilizing therapies (i.e. Lithium, Depakote (Valproate), Tegratol (Carbamazepine), Trileptal (Oxy-carbamazepine), Zyprexa (Olanzapine) and/or Lamictal (Lamotrigine) at maximum tolerated dose for a clinical trial period of no less than six to eight weeks and blood levels are to be obtained to confirm compliance with the clinical trial. Documentation must also include doses used, duration of treatment, side effect experienced and the response of each. |
| ☐ **NO** history of medication misuse or hoarding. | ☐ May not be used for insomnia only. |
| ☐ **NO** history of seizure or bulimia disorders. | ☐ **NO** documented history of institutional drug abuse and no history of out of correctional illicit drug abuse in the last 1 years. |
| ☐ Wellbutrin MUST be ordered as crushed and added to fluid; (exceptions Wellbutrin SR and XL). | ☐ **NO** history of medication misuse or hoarding. |
| ☐ Wellbutrin SR and XL should not be prescribed beyond the transition period for Reception and Receiving | ☐ Patients currently on Seroquel (Quetiapine) and not approved for continuation should be tapered off and switched to another agent as clinically indicated. |
| ☐ Patients currently on Wellbutrin (Buprorion) and not approved for continuation should be gradually tapered off as clinically indicated. | ☐ Seroquel (Quetiapine) **MUST** be ordered as crushed and add to **Water** (exception Seroquel XR). |
| ☐ If you have a patient that you believe there is a significant clinical basis for continuation, the above process for non-formulary medications must take place immediately. | ☐ Seroquel (Quetiapine) XR should not be prescribed beyond the transition period for Reception and Receiving. |
| | ☐ If you have a patient that you believe there is a significant clinical bases for continuation, the above process for non-formulary medications must take place immediately. |

ICF MOU Attachment #7a.

Atascadero State Hospital

**OPERATING MANUAL**

SECTION - SECURITY
ADMINISTRATIVE DIRECTIVE No. 805

Effective Date:  December 16, 2009

**SUBJECT:    CONTRABAND**

Cancellation:    This directive cancels Administrative Directive No. 805 dated November 4, 2009, same subject.

I.      DEFINITION

All material or articles listed in this directive are contraband.  Items that can reasonably be considered dangerous, injurious, or a threat to the security of the hospital shall be temporarily removed from the individual.  Such items shall be submitted to the Hospital Advisory Council (HAC) Prep Workgroup for evaluation and possible addition to this directive.  When any item not listed is restricted from an individual, a Denial of Rights for good cause will be filed (refer to A.D. No. 602.1, Complaint Procedure, Patients).

II.     EMPLOYEES

A.      All staff members shall recognize the importance of the control of contraband.  No employee shall knowingly allow contraband to be in the possession of any individual except under direct supervision, control, prescription, and when necessary, in the performance of duty.

B.      All employees shall receive in-service training on control of contraband during their orientation to the hospital.  Additionally, all employees (including those on probation) shall receive training in accordance with the hospital's mandatory training standards.

C.      Plant Operations employees in conjunction with the Department of Police Services (DPS) will be responsible for instructing outside contractors as to contraband and special precautions that need to be taken.

D.      Staff shall not bring more personal medication into the security area than is required for two shifts, i.e., their scheduled shift and an overtime shift. For prescription medication, a pharmacy-issued prescription slip is to be carried for verification.  Staff shall advise their supervisor of any medication being brought into security.

E.      Any missing contraband or lost items which may cause a breach in security or potential danger to patients and staff shall immediately be reported to the DPS Dispatch Center at 2366.  DPS will maintain a record of all recovered and non-recovered items.

III.    RESTRICTED AND CONTROLLED ITEMS

A.      Class I - Not Allowed on Hospital Grounds:

Unless specifically authorized by the Executive Director, the following items shall not be brought on the hospital grounds:

ICF MOU Attachment #7a.

1. Drugs

   a. All illegal drugs, including but not limited to: narcotics, marijuana, hallucinogenic and unprescribed medications.

   b. Alcoholic beverages.

2. Explosives (excluding combustible fuels).

3. Firearms and ammunition (shall not apply to law enforcement officers).

4. Weapons designed to inflict bodily harm (e.g., swords, spears, daggers, mechanically projected missiles, explosives, etc.)

B. Class II - Not Allowed Inside Security:

Unless specifically authorized in writing by the Executive Director, the following items shall not be brought inside the sallyport interiors and the Visiting Room by anyone:

1. Chemical dispensing control devices, such as mace, pepper spray, or tear-gas, except as used by DPS in the control of special incidents.

2. Ammonia, in pure form or any other chemicals not approved by Health and Safety.

3. Chewing Gum

4. Combs, metal

5. Fingernail files, metal over l.5 inches long.

6. Fountain pens (bulb type) (except those being utilized with controls in Graphic Arts, or with on-unit controls such as calligraphy pen sets).

7. Knives (except when authorized otherwise by policy, outlining strict control and accountability procedures).

8. Material giving instructions on escape, bomb making, bugging, surveillance, surreptitious entry, acts of violence, or any illegal activity, to include "Shot Gun News" and Maxim magazines.

9. Balloons

10. Umbrella

11. Local, County, Newspapers/Tabloids - any newspapers, magazines, coupon books, etc. originating from the County of San Luis Obispo, or copies obtained from the Internet or other sources.

12. An individual may be allowed to have in his possession a photocopy of an article from a local newspaper about patients or about the hospital with Program Director approval, except for articles that include information about individual staff. He may not have the original article in his possession.

13. Excess clothing: If an employee requires excess clothing inside security, they will have written permission from the Program Director on file with Police Services.

14. Cell Phones (except for official business with approval by the Executive Director).

15. Strapping Tape or other tapes containing fiberglass or other reinforcing fibers.

16. Charcoal lighter fluid (refer to A.D. No. 344, Fire Inspections)

17. All lighters and lighter fluid.

18. Personal electronic devices capable of downloading information, including, but not limited to personal computers, palm pilots, and planners, unless provided by the hospital.

19. All tobacco products, except as authorized by the Executive Director for Native American Spiritual Ceremonies

20. Eating/cutting utensils containing metal or ceramic materials.

C. <u>Class III - Not Allowed in Patients' Possession</u>:

At no time will patients be allowed to have in their possession:

1. Luggage, including gym bags, valises, attaché cases, backpacks, and fanny-packs.

2. Matches (any type).

3. Alarm clocks, other than battery operated solid state.

4. Combs, hairbrushes, and personal care items in an individual's possession should be made of flexible plastic materials and not exceed 7 inches in overall length. No wooden brushes. No personal care items in an individual's possession shall be made of brittle plastic. Personal care product containers - except those purchased in the Canteen, or in containers that do not allow for visual examination of contents.

5. Drugs or medicated products (except as prescribed by a hospital employed medical doctor).

6. Herbal teas, other than those brands purchased in the canteen or from an approved vender.

7. Keys or key rings (see exceptions in Class V).

8. Legal documents (including, but not limited to):

    a. Driver's license

    b. Birth certificates (all kinds)

    c. Bonds

    d. Social Security cards and credit cards

    e. Bank books

    f. Check books

ICF MOU Attachment #7a.

g.   Power of Attorney

h.   Any form of identification, including passports, except hospital issued.  If in question, contact the Trust Office.

9.   Letter openers

10.   Make-up, commercial or materials being used as makeup.

11.   Maps of San Luis Obispo County, any source literature, including local maps.

12.   As determined by the treatment team, any sexually explicit image or sexually provocative or nude images of children, or material that is in violation of the condition of parole.

13.   Any material that depicts a rape, beating, sadomasochistic act, child erotica, crime of violence or any photo of the individual's victim(s).

14.   Metal picture frames and metal prong fasteners, paper clips, and staples (except those staples that are intact in magazines)

15.   Mirrors

16.   Sunglasses that are reflective or too dark to assess the individual's eyes; sunglasses with exposed metals (not those encased in plastic).

17.   Money, money orders, or copies of money, including foreign (see A.D. No. 619, Trust Office/ Patients' Accounts Functions).

18.   All personal civilian clothing

19.   Pictures of the individual alone or of another hospitalized individual, except for the individual's hospital identification card.

20.   Pressurized dispensers

21.   Products that contain an alcohol content sufficient to be combustible.

22.   Cable boxes, VCR tapes (modified or not), CDs, DVD , or personal cameras.

23.   LCD, Battery-operated appliances, including recording or electronic or mechanical transmitting devices, personal electrical appliances requiring cords, metal antennas, or remote speakers to operate; radios or scanning/monitoring devices capable or receiving law enforcement/fire emergency broadcasts; compact disk players.  Allowable items include: personal radios and cassette players that are no larger than 6¼"x6¼'"x3", operated with headphones.  Headphones are not to be worn or used in the hallways, canteen, kitchen, dining rooms, or the auditorium.  Headphones shall not contain:  (a) steel in the headband, and the wire from the headsets are limited to 48 inches in length or less; (b) a heavy cord, or (c) cover the ear in such a way as to block out sound from the environment.  Calculators, LCD appliances, and program approved electronic games are allowed.

24.   Rubber bands

25.   Saw blades or jeweler's wire (for exceptions see Class IV).

26.   Styrofoam in any form.

27.   Shoehorns

28.   Blank State of California or other hospital-related letterhead or stationery.

29.   Telephone directories

30.   Thermo cups

31.   Concentrated cleaning chemicals

32.   Pens exceeding 3 l/2 inches

33.   Biohazardous waste (as except by the medical needs of the individual)

34.   Hair-care products that have caustic or toxic chemicals

35.   Correcting fluid/tape (White-out)

36.   Battery chargers

37.   Musical or recordable greeting cards

38.   Shoelaces (when removed from the shoe)

39.   Collectable/trading cards.  Not to include "magic" cards or similar cards used to play card games.   (Individuals may have in their possession up to 1,000 "magic" cards.)

40.   Spices and pepper (except in ready-mix packets, or flavor packets as issued in the canteen and dining rooms).

41.   Aluminum foil, plastic wrap

42.   Reinforced envelopes

43.   Adhesive mailing labels

44.   Any altered clothing

45.   Athletic supporters (a suspensory may be prescribed by a physician for a medical need as described in a physician's progress note).

46.   Beading needles, metal

47.   Sleep masks

48.   Plastic binding stays (once removed from legal papers)

49.   Remote control toys

50.   Belts

51.   Corrugated cardboard, and all cardboard that has been altered from its original use.

52.   Any container( including plastic bags) with a solid frozen  content. Individuals assisting staff with ice runs are exempt.

53. No candy, sucker or other foods with sticks or handles attached or any other similar items

54. Personal information of any nature (including, but not limited to home addresses, telephone numbers, and photos) of any staff member, volunteer, or contract employee of the Department of Mental Health.

D. <u>Class IV – Supervised Items:</u>

Responsible individuals under the direct supervision of an employee may use the following materials and tools. It shall be the responsibility of the employee to assure that all items are used for the purpose intended and accounted for and secured after their use.

1. The following items may be used on the units by responsible patients under the direct supervision of an employee.

    a. Aerosol dispensers

    b. Sports, recreational, and work assignment equipment that could possibly be used as a weapon or an escape tool.

    c. Any ready to use cleaning substances containing potentially harmful ingredients, such as bleach, ammonia, alcohol, etc.

    d. Compass (drawing)

    e. Dental floss

    f. Ink (marking), pastels (colored chalk)

    g. Hypodermic needles when authorized by a physician's order

    h. Disposable Razors

    i. Sandpaper and emery cloth

    j. Scissors (safety scissors)

    k. Utensils for unit barbecues

    l. Electrical appliances

    m. Gloves for specific work assignments

    n. Pencils, colored and regular, no longer than 3½ inches, only under the direct supervision of a group provider during a planned scheduled treatment activity on the unit.

2. In addition, the following items may be used by a responsible patient only in the appropriate Recovery and Mall Services (RMS) or Vocational Service area, under the direct supervision of an employee.

    a. Combustible or inflammables

    b. Electronic gear and parts

ICF MOU Attachment #7a.

    c.    File (steel construction type)

    d.    Glass, containers, and fragments including ceramics

    e.    Glue and acetone

    f.    Metal containers and scraps

    g.    Paints, lacquers, shellac, and solvents

    h.    Rope, twine, ladders

    i.    Sandpaper and emery cloths

    j.    Tools, except when being transported in a locked box.

    k.    Calligraphy pens

    l.    Pencils: No longer than 3½ inches

    m.    Carbon paper

    n.    Needles: blunted tapestry, wax thread, leather lacing (Art Center), and upholstery (Upholstery Shop)

E.    <u>Class V - Controlled Items</u>:

Control and accountability will be provided by staff for the items listed in this section so that they are used properly and safely and are dispensed in acceptable quantities.

1.    Denture cleaner

2.    Dice

3.    All musical instruments

4.    Keys: Locker, bathroom pass keys, cabinet or desk (permitted if duplicate is in the Unit Office, shop office, or Police Services Key Control).

5.    Phonograph records or tapes

6.    Razors (electric), including cords

7.    Shoe polish

8.    Tape of any kind

9.    Toothbrushes longer than 4" in length

10.    All plastic bags (Exception: Small sandwich-type bags that are currently used for the transfer of coffee and other bottled items.)

11.    Fingernail clippers.

Acceptable methods for controlling the use of the items listed in this section are:

1.   Direct observation/supervision (one-to-one or group activity).

2.   Checking the item out from the nurse's station and in from the individual.

3.   Supervising the amount of the item taken by the individual.

4.   Monitoring the accumulation of items (items: 1, 5, 8, 9 and 10) via random shakedown.

IV.   <u>CONTROLS</u>

A.   Photos or other images depicting sexually explicit material or frontal nudity may be offensive to others and shall not be displayed where individuals or staff might see them and be made uncomfortable.

B.   All donations must be cleared through the HAC Prep workgroup prior to distribution to the patient. Gifts or donations will not be given directly to the individual. All gifts and donations shall be received and handled through one of the three receiving channels: 1) Mail Center, 2) Volunteer Services, and 3) DPS.

C.   Newly admitted individuals shall be thoroughly searched by Nursing Services. DPS will thoroughly search all property and possessions.

D.   All items given to individuals in the visiting room must be approved by the Visiting Room Officer, and individuals will be subject to search when leaving the visiting room.

E.   All persons and property passing through the sallyports are subject to inspection for contraband as per AD No. 803, Security Sallyports.

F.   All areas of the hospital shall be periodically inspected for hidden contraband. Inspections may be made at any time by DPS personnel or other employees in their area of responsibility.

G.   All contraband items shall be confiscated immediately by an employee and turned over to the DPS Watch Sergeant as soon as possible. A record shall be maintained of dates and places of seizure. If confiscated from an individual, a Special Incident Report must be written. If from an employee, appropriate disciplinary action shall be taken.

H.   The Canteen will contact the HAC Prep workgroup when there are proposed or new items to be added to the inventory list.

I.   If, during the course of or as a result of a formal shakedown procedure, specific contraband items are found in an individual's possession, documentation shall be entered in each his medical record and in the body of the Shakedown Report. This documentation shall preclude the necessity for individualized Special Incident Report (SIR) documentation of contraband items found in each individual's possession.

V.   <u>DISPOSITION</u>

A.   <u>Class I and Class II Contraband</u>, not allowed on hospital grounds and not allowed inside security, will be disposed of at the discretion of DPS. (Firearms will be disposed of in accordance with California Penal Code, Sections 799, 800, 801, 802, 1417, 1417.1, 1417.5, 1417.6, 12028 and 12032, as well as the Welfare and Institutions Code, Section 8102.)

B.  Class III Contraband, not allowed in an individual's possession, may be stored until returned to the individual at the time of his release, mailed, destroyed, or turned over to his guardian. Determination of disposition will be made by the individual if within the rules and regulations of Atascadero State Hospital.

C.  Class IV and Class V Contraband, supervised and controlled items which have been confiscated, shall not be returned until adequate supervision or control has been restored.

D.  Money (Cash), or other Legal Tender:  When money, cash, or legal tender is obtained or found through shakedowns or by other means, all moneys will be turned in to DPS to ascertain whether a crime may be involved.  When the source of legal ownership has been determined, the money will be placed in the individual's account.  If the source of legal ownership cannot be determined, the money will be deposited in the Patients' Benefit Fund account.

E.  The record will clearly indicate the final disposition of or destruction of all contraband.  If there has been a Denial of Patients' Rights, the material confiscated will be retained.

F.  Items retained from patients by Police Services staff as part of an investigation will require a receipt to be given to the individual until the item is returned to him.

VI.  PROCESS FOR REVIEWING ITEMS TO BE ADDED TO A.D. NO. 805

A.  The item and written justification for making the item contraband is referred to the HAC Prep workgroup.  This can be done by submitting the item to the Chairperson or requesting to attend the HAC Prep meeting.

B.  The HAC Prep workgroup will review the justification and discuss the ramifications for making the item contraband, i.e., patients' rights issue, security and legal aspect, etc.  The chairperson will assign a subcommittee if needed.

C.  After careful consideration, the Committee will recommend a change in policy and forward the proposal to the Security Committee for recommendation to the Policy Management Conference.

D.  If the item is approved, either a new policy will be completed or an addendum will be sent out to all manual holders.

E.  Items being referred to the HAC Prep work group for review should be items that, if allowed in an individual's possession, could cause a danger/hazard to others or could be used to breach the security of the hospital.


JON DE MORALES
Executive Director


Updated

Cross Reference(s):
A.D. No. 602.1 -   Complaint Procedure, Patients
A.D. No. 610    -   Personal Property
A.D. No. 619    -   Trust Office/ Patients' Accounts Functions
A.D. No. 713    -   Visiting Regulations
A.D. No. 803    -   Security Sallyports

ICF MOU Attachment #7b

Revised 05/07/10

## Allowable Property/Contraband

Any item that constitutes safety or security concerns can be denied and confiscated. Those items received that re not listed are subject to return to sender or donation to charity. All items need to be from an approved source. (EXCEPTION – Personal property received upon admission from a DMH State Hospital may be considered allowable from an approved source after thorough inspection by hospital staff.)

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | | MONITORING REQUIREMENTS<br>C = Controlled Item    S = Direct Supervision | COMMENT<br>(Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | | | |
| ADDRESS BOOK | X | X | X | | | | | No metal binding |
| ALBUM, PHOTO | *X | X | *X | US | | | | No metal binding, limit one (1) |
| APPLIANCES, ENTERTAINMENT | | | | | | | | |
| Alarm clocks | | X | *X | | | | | Appliances MAY be battery operated, come with an attached cord, or come with a detachable cord. |
| Calculators, Translator, Hand Held Organizer (e.g. Palm Pilot) | | X | X | US | | | | Wind up or Battery operated only. |
| | | | | | | | | Hand held. No wireless or remote internet capability or camera capability. Limit of one (1) each |
| Detachable Cords | | X | *X | | WRT prior to purchase | | C | Individual must have system requiring the detachable cord.<br>Prior to the Individual ordering and/or receiving the item as personal property, the WRT shall assess the Individual's ability to access the item as a controlled item. If item is denied the WRT will document the reason for the denial on PSH 7130. |
| Detachable Antennas | | | X | | WRT | | C | Individual must have system requiring the detachable antenna.<br>Prior to the Individual ordering and/or receiving the item as personal property, the WRT shall assess the Individual's ability to access the item as a controlled item. If item is denied the WRT will document the reason for the denial on PSH 7130. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item  S = Direct Supervision | COMMENT |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | (Information on limits, containers, etc.) |
| MP3 Player | | X | *X | | | | The only allowed MP3 player are the Archos models (sole source) – which do not have wireless or remote internet capability. |
| Radio, Audio CD/ tape player, | | X | *X | US | | | Limit of one (1) each (max. size limit of 21x10x15 inches – No exceptions for larger size will be allowed) without detachable speakers, external-recording devices (however, audio equipment which can record directly from an internal source-radio or CD to tape only is acceptable). |
| Remote Controls | | X | *X | US | | | Must have own system(s) requiring the remote control. |
| Television/LCD DVD Player | | X | *X | US | WRT prior to purchase of TV | | All TV's must be pre-approved by the WRT prior to purchase and/or delivery. The WRT will approve type of TV and size (TV must fit in Individual's personal locker). Individuals must sign a Liability Waiver. Limit one (1) TV. The TV may have built in radio/DVD player. No built in VHS player. No individual VHS Players allowed. Limit of one (1) LCD DVD player. |
| Typewriter/word processor | | X | *X | US | | | Limit of one (1). |
| Typewriter/word processor print wheels and ribbons | | X | *X | US | | | Individual must have typewriter/word processor for use with this item and must turn in used print wheel/ribbon to staff in-order to have access to replacement item. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item  S = Direct Supervision | COMMENT |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | (Information on limits, containers, etc.) |
| USB Memory sticks/cards | | | X | | | | "Kingston" flash drives are the only flash drives which will work on the Unit computers that are available for the Individuals. Individuals may still purchase other brands for use with their own personal equipment. |
| Video games system | X | X | *X | US | | | Limit of one (1) each of a hand held and/or console system. Must have own system and TV (if required) to utilize games. No wireless or remote internet capability or that which can be converted into having such capability. / The XBOX Elite, Play Station PSP, & Nintendo DS are not allowed as they have remote internet capability. / Currently there is a freeze on all XBOX 360 Pro which is the ONLY is the only model of game system that is allowed. / Individuals that currently have the XBOX 360 are allowed to keep and use their system but no other Individuals can receive the system at this time |
| Walkman/Discman/DVD type radio/player | | X | *X | US | | | Limit of one (1) of each Walkman, Discman/DVD and/or Walkman Satellite type radio that must not include voice over feature. No CB amateur radio, walkie-talkie or police band, but alarm functions are acceptable. |
| Walkman type Satellite radio | | | *X | US | | | |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item   S = Direct Supervision | COMMENT (Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| BATTERIES | *X | X | X | | | | No 6-volt batteries will be allowed. Only the required number of batteries needed for the appliance will be allowed in the Individual's possession. One extra set may be kept in the Nurses station. |
| BEANIES (Knit cap) | STATE ISSUE ONLY | | | | | | |
| BELTS OR BELT BUCKLES | | | X | US | | | Belt - Not to exceed one and one-half inches in width, limit one (1) Buckles - 2X3 inch limit, no sharp edges |
| BEVERAGES | | X | X | | | | Ice tea, juice, nectar, and soda. All plastic containers (no metal lid or tops) |
| LED BOOK LIGHT | *X | X | *X | US | | | For reading at night in bed (limit of 1). |
| CALENDARS | *X | X | X | | | | Without metal binding |
| CARDS, GREETING | *X | X | X | | | | No foil wrappers or parts. Includes boxes that are factory sealed. No musical or light up cards. |
| CARDS, PLAYING | *X | X | *X | | | | Regular, Pinochle, Old Maid, Uno, etc. |
| CHAP STICK | | X | X | | | | |
| CHARGER, BATTERY (With or Without Cords) | *X | X | X | | | | Kept in Nursing Station and controlled by Nursing Staff. |
| CLOTHING (Shirts/Blouses, Pants, Shorts, Jackets/sweatshirts, etc.) | STATE ISSUE ONLY NO EXCEPTIONS | | | | | | Uniform is provided by the state (see undergarments below for clothing items which can be purchased). State clothing may not be altered. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item   S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT (Information on limits, containers, etc.) |
| COFFEE/TEA, DECAF, INSTANT, &/OR INDIVIDUAL PACKET/BAGS | | X | *X | | | | Not to exceed three (3) pounds or 100 bags. Decaffeinated only in non-contraband containers. May not contain any pharmaceutically active substance. |
| COLOGNE, PERFUME, AFTERSHAVE | | X | X | | | | No alcohol will be permitted. Plastic containers only. |
| COMPACT DISKS/DVD'S, FLOPPY DISKS, CARTRIDGE OR CASSETTE TAPES (Audio, Computer, or Video Game) *For the purpose of this directive these items are considered to be media | | X | *X | US | US | | Limit of thirty (any combination totaling 30). Any media (exception for music CD's), which depicts or encourages sexual acts with children or sexual acts with tissue damage (including penetration of any body cavity) will be considered contraband. Any publication that does not depict or encourage the above behavior may only be denied following procedures for denial of rights for cause. |
| BLANK CASSETTE TAPES/ RE-WRITABLE CD's | | X | *X | US | US | | Individuals may have CD's which are provided through PSH Video Productions – these CD will have a Video Productions Label with the Individual's name. |
| CONTAINERS, PLASTIC | X | X | X | | | | Must be able to fit in 1' x 1' x1' locker. |
| CONVERTERS FOR RADIOS, TV'S, GAMES, ETC. | | X | *X | US | | | Must have own system to utilize item. |
| CRAFT PROJECTS | | | *X | | | S | Non-contraband containers. |
| CUP OR TUMBLER, SOFT PLASTIC | X | X | X | US | | S | Limit of two (2). Sport containers are permitted. Thermal cups/tumblers must be plastic with no false bottoms. |
| CURLING/STYLING IRON | | | X | US | | S | Limit of one (1). |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU: Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item   S = Direct Supervision | COMMENT (Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| DENTAL FLOSS | STATE ISSUE ONLY | | | | | C | Staff will issue out one length of floss, as needed and Individual shall return floss when finished. |
| DENTURE ADHESIVE | | X | | | | S | Tablets only. |
| DENTURE CLEANSERS | | X | | | | S | |
| EMERY BOARDS | X | X | X | | | | No metal nail files. |
| EYE GLASSES | X | X | X | US | | | Limit one (1) pair.  Wire frames permitted.  Prescription glasses will be delivered to Medical Services. |
| FOOD, PACKAGED | | | | | | | Must be in Non-Contraband Container and cannot require refrigeration after opening.  All items sold by Canteen are allowed. |
| Cheese/Cheese Spreads | | X | *X | | | | Can Not Require Refrigeration after opening |
| Creamer, Cocoa Mix, Honey | | X | *X | | | | Creamer not to exceed 2 pounds. |
| Vegetables, Beans, Chili, Rice | | X | *X | | | | Non-contraband container (no cans) |
| Dry Meats, Dry Milk, Dry Fruit | | X | *X | | | | Dry milk not to exceed 2 pounds. |
| Nuts, Cereal | | X | *X | | | | No shells (exception for Sunflower seeds) |
| Cake, Candy, Chips, Cookies, Jerky, Popcorn, Ramen Noodles, Gum | | X | *X | | | | |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item   S = Direct Supervision | COMMENT (information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| Protein Drinks/Powders, Nutrition Supplements, or vitamins | | | *X | | X | C or S | Individual's treating physician must document approval for such items and include the not to exceed information in the approval (e.g. NTE "X" per month) |
| Punch Mix, Soda | | X | *X | | | | Punch Mix not to exceed 3 pounds. Soda in plastic bottles only. |
| Sauces, Condiments | | X | *X | | | | Non-contraband container/can not require refrigeration after opening. |
| Sugar/Substitute Packets | | X | *X | | | | Sugar or substitute not to exceed 1 pound. |
| MISCELLANEIOUS GAMES AND SPORTS EQUIPMENT (Board Games, Chess, Checkers, Hacky Sacs, etc.) | *X | X | *X | | | | For electronic games see appliances. |
| GLOVES, PLAIN (includes mittens) | X | X | X | US | | | One (1) pair only. Cloth only - No leather or simulated leather, studs, jewelry, etc. Must be only single thickness (one layer). |
| GLOVES, WEIGHT LIFTING | | | X | US | | | Two (2) pairs only. Leather is allowed. |
| HAIR CARE/GROOMING PRODUCTS | | | | | | | |
| Hair - Brush, Pick, Plastic Comb Grooming Aids (includes body/hand lotion/creams & Vaseline) | | X | X | | | | Limit one (1) of each item. No metal parts. Items in glass/metal containers will be transferred to small plastic containers by canteen staff prior to purchase. Vendor items must be received in non-contraband containers. Hair spray must be non-aerosol, plastic container only. |
| Hair Dryer, Rollers & Spray | | X | X | | | S | Powders (e.g.; baby, talcum) and baby oil are not allowed |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7h

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item  S = Direct Supervision | COMMENT (Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| HATS | X | X | X | US | | | Limit two (2). No offensive logos, wire parts, head wraps, do rag, bandanas, or scarves are allowed. Cloth hair band are allowed - limit of three (3). Beanies are state issued ONLY |
| HAT PINS | X | X | X | | | | Logo type pins (e.g. Veterans pins). |
| HEAD PHONES | *X | X | X | US | | | Limit two (2). No longer than six (6) foot cord. Non-metal banded only. |
| HYGIENE PRODUCTS Soap, Deodorant, Toothpaste, Kleenex, Tampons, Sanitary Napkins | | X | X | | | | Non-aerosol products, plastic container only. |
| INSTRUMENTS, MUSICAL | | X | X | | WRT prior to purchase | C | Prior to the individual ordering and/or receiving the item as personal property, the WRT shall assess the individual's ability to access the item as a controlled item. If item is denied the WRT will document the reason for the denial on PSH 7130. |
| GUITAR | | | | | | S | |
| GUITAR STRINGS | | | X | US | | S | Must have own guitar to utilize item. |
| JEWELRY | X | X | X | | | | Requires a Liability Waver when valued at $100 or more |
| Chains, necklaces | X | X | X | | | | Single strand only. No sharp edges or lockets. |
| bracelets | X | X | X | | | | No solid metal bracelets allowed. No sharp edges. Only bracelets made of the following: single strand chain, leather, nylon, or plastic are allowed |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.

(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.

Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS<br>C = Controlled Item   S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT (Information on limits, containers, etc.) |
| rings | X | X | X | US | | | Limit two (2). |
| Earrings | X | X | X | | | | Must be no larger than a quarter or must be breakaways. |
| watch | X | X | X | US | | | Limit one (1). Alarm and stop watch features and all band types (including metal) are allowed. |
| MAKE-UP, COSMETICS | | X | X | | | | Compacts may NOT contain glass mirrors. |
| Make up liners (for eyes &/or lips) – retractable type only | | X | X | | | C | Make-up pencils which require sharpening are not allowed. |
| MONEY (this does not include checks or money orders) | | X | | | | | Individuals served may only be in possession of a maximum of $15.00 in coin (quarters, dimes, nickels, and pennies only; no paper money) |
| PEN & PENCIL & PLASTIC PAPER CLIPS | STATE ISSUE ONLY | | | | | | Limit one (1) each of pen & pencil. Plastic paper clips shall be issued as needed – Individuals shall not be given entire box. |
| PHOTOS | X | | | | | | No photos of Individuals served that might pose a threat to security, such as being used to make an employee ID badge. No Polaroid Photos allowed. |
| PIPE, SMOKING | | X | X | | | | No ceramics |
| PLASTIC SPOON | STATE ISSUE ONLY | | | | | | Individuals shall receive approved plastic spoon with each sack lunches. This spoon is to be thrown away once the lunch is consumed. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item  S = Direct Supervision | COMMENT (Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY US Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| PLASTIC SPORK | STATE ISSUE ONLY | | | | | | Individuals shall be issued one spork upon admission for use with snack items purchased by the Individual. |
| POLISH REMOVER, NAIL | | X | X | | | S | Clear plastic container only. ACETONE FREE ONLY. |
| POLISH, NAIL | | X | X | US | | S | Limit three (3). Glass containers allowed. |
| PUBLICATIONS (Includes newspapers and religious publications) | | | X | US | | | Any publication, which depicts or encourages sexual acts with children or sexual acts with tissue damage (including penetration of any body cavity) will be considered contraband. Any publication that does not depict or encourage the above behavior may only be denied following procedures for denial of rights for cause. Limit of ten (10) total for all publications (exception - clipping are not counted in regards to limit). |
| newspaper clippings | X | | | | | | |
| Books, magazines, or catalogs | | | X | US | | | |
| PSH Library Books | STATE ISSUE ONLY | | | | | | PSH Library books are not to be included in the amount allowed as they are not the property of the Individual. Overdue books will be returned to PSH Library when found. |
| PURSE, BOOK BAG, CLUTCH, FANNY PACKS, OR WALLETS | | X | X | US | | | Limit one (1). No metal frame, chains, clasps, or detachable straps on purses/book bags/fanny packs allowed.  Back packs are NOT allowed. |
| RAZORS, ELECTRIC | | X | X | | | S | |
| RELIGIOUS ITEMS | X | | X | | | | Includes items allowed on A.D. #15.36 – Native American Spiritual Items and other religious items such as prayer beads. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item   S = Direct Supervision | COMMENT (Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| SHAMPOO/ CONDITIONER, NON-MEDICATED | | X | X | | | C or | |
| SHAVING CREAM AND POWDERS | | X | X | | | S | |
| SHOES/ FOOTWEAR | | X | X | US | | | Limit four (4) pairs of shoes including tennis shoes. Limit one (1) pair wedge shoes not to exceed one (1) inch in height. No boots, pointed toe, or heel over one (1) inch. No steel shanks or hollow heels. No magnetic components allowed in any shoe. |
| SHOE LACES | | X | X | US | | | Must have personally owned shoes requiring laces as state issued shoes do not have laces (except work boots – these laces are supplied by the state) Limit of one (1) set per pair of shoes |
| SOAP BOX | | X | X | US | | | Soft plastic only.  Limit of one (1) |
| STAMPS | | X | X | | | | Equivalent of 20 first-class stamps in possession at any one time. Pre-stamped embossed envelopes may be substituted for stamps. Stamps may not be mailed from family member or friend only from vendor. |
| STATIONERY Note Cards, Envelopes, Writing Paper, etc. | *X | X | *X | | | | Includes boxes that are factory sealed. |
| SUNGLASSES | X | X | X | US | | | Limit one (1) pair.  Wire frames permitted. |
| SUSPENDERS | STATE ISSUE ONLY | | | | | | |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b
A.D.#15.16
ATTACHMENT A
Page 12 of 12
Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item   S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT (Information on limits, containers, etc.) |
| TOOTHBRUSH | | X | X | | | | Limit one (1) upon exchange |
| TOOTHPASTE | | X | *X | | | | |
| UNDERGARMENTS            Bras | *X | | *X | US | | | Limit of ten (10), no under wires. |
| Men's Underwear or Women's Panties | *X | | *X | US | | | Limit of twelve (12), non-white is acceptable. |
| Socks | *X | | *X | US | | | Limit twelve (12), no women's nylons or nylon knee highs allowed. |
| Tee Shirt (includes Tank Top or long sleeve type) | *X | | *X | US | | | Limit of ten (10), KHAKI COLOR ONLY |
| Thermal Underwear | *X | | *X | US | | | Limit of two (2), natural color only. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.
For items which require the Unit Supervisor's/Wellness & Recovery Team approval the Unit Supervisor shall send a copy of the approved MH 5216 to the Mailroom –Contraband Desk prior to the purchase and arrival of the item.

ICF MOU Attachment #7c.

SALINAS VALLEY PSYCHIATRIC PROGRAM

INTERMEDIATE INPATIENT TREATMENT FACILITY

PROGRAM MANUAL

PROCEDURE: 6.15

**SUBJECT:**         PATIENT PROPERTY

**RESPONSIBLE:**     Health Program Coordinator, Sr. Medical Technical Assistant

Signature:

**CROSS-REFERENCE:**                     Title:

Program Director

## POLICY

It is the policy of the Salinas Valley Psychiatric Program to establish procedures to allow patients to have their approved personal and state property, which does not impede the safety and security of the institution.

## PROCEDURE

### A.   PROCESSING OF ALLOWABLE PATIENT PROPERTY

1.   The Salinas Valley Psychiatric Program (SVPP) Property officer will inventory all allowable property and maintain an property log for each SVPP-DMH patient. The property officers shall issue allowable property to the patient upon approval from IDTT..

2.   A 2.5 x 2.5 foot space above the patient's bed area can be utilized for displaying approved pictures or art work.

3.   With the exception of legal property, the total volume of in-cell patient property is limited to that which can be contained in two 10"x 12"x 15" boxes.

4.   Personal possessions exceeding amounts/volume designated in this policy will be stored in the SVPP patient property room.

5.   Additional property may be authorized by Treatment Team, based from individual needs. stage appropriateness, patient behavior and according to SVPP Policy and Procedure.

6.   A copy of all Property Chronos and a record of any other unique property allowance(s), shall be filed in the individual patient chart.

7.   Before confiscating patient property, staff will consult the individual patient chart to ensure that the item to be confiscated has not been allowed via Property Chrono or Treatment Team decision and in accordance with Program Manual policy 6.07.

8.   Food items available to patients through the approved SVPP Incentive Program may require prior approval of the Dietician. The total amount of

food items allowed in the patient's cell at any given time shall not exceed two (2) cubic feet.

### B.   ALLOWABLE PATIENT PROPERTY

1.    Patients that are assigned to the Salinas Valley Psychiatric Program may be permitted, with the approval of IDTT, to possess the following personal property items :

**a.  STAGE 1/DPS/New Arrival:**

- (1) Pen fillers (One for one exchange)
- Inmate 602 forms (2 per week)
- Inmate request for interview forms (6 per week)
- (1) Address book
- (20) Postage stamps, (20) Metered envelopes, (10) Sheets of paper
- Eyeglasses/Sunglasses/Dentures/Prescribed prosthetics (artificial limbs). Medically prescribed aides such as walkers, crutches, braces, or wheelchairs, only as deemed essential for constant possession by medical staff.
- State Issued Clothing

  (1) Blue jeans

  (1) Blue shirt

  (1 Pair) Socks

  (1) Undershirt

  (1) Underwear

  (1 Pair) State-Issued Tennis Shoes, unless otherwise medically indicated by a physician.

  (1 Pair) Shower shoes

- Grooming items (clear only) limited to one (1) of each type (unless otherwise specified)

  1 Shampoo

  1 Bar of soap

  1 Lotion

  1 Deodorant (Stick or roll-on in a clear container only)

  1 Toothbrush (1 for 1 exchange). Toothbrush must be state issued only.

  1 Toothpaste (1 for 1 exchange).

  1 Roll of toilet paper

- (1) Soft covered book (1 for 1 exchange).
- (1) Bible or religious book

**a. STAGE 1/DPS/New Arrival continued:**

- (1) Periodicals (to include magazines) (1 for 1 exchange).
- Miscellaneous personal papers, letters, artwork, personal photos, etc.

- Legal materials limited to those necessary to complete Preferred Legal Users (PLU) cases. This will not exceed one (1) cubic foot of materials without approval by Executive Director or designee.
- Allowable Incentive Store purchases in accordance with the SVPP Stage and Incentive Program policy (3.12).

b. **STAGE 2**:

- All privileges gained in STAGE 1
- (2) Pen fillers (1 for 1 exchange).
- (20) Family photos
- (1) Religious medallion (Chain must have religious medallion)
- Personal Clothing
  - (1) Baseball hat
  - (1) Sweat suit (one sweatpants and one sweatshirt)
  - (1) Long-sleeve T-shirt
  - (1) Pair gym shorts
  - (1) Pair socks
  - (1) Beanie
  - (1) Pair of Tennis shoes
  - (1) Pair of thermal underwear
- Grooming items (clear only) limitations listed below
  - (2) Bars of soap
  - (2) Toothpaste (1 for 1 exchange).
  - (1) Shampoo
  - (1) Conditioner
  - (1) Hair Grease
  - (1) Baby Powder
- (5) Soft covered books (1 for 1 exchange).
- (10) Periodicals (To include magazines) (1 for 1 exchange).
- (1) Plastic cup

**b. STAGE 2 continued:**

- (1) Plastic bowl
- (1) Wedding band (if married)
- (1) Watch
- (1) Wave cap (Black, white or gray only)

ICF MOU Attachment #7c.

- Allowable Incentive Store purchases in accordance with the SVPP Stage and Incentive Program policy (3.12).

**c.  STAGE 3 (SINGLE CELL):**

- All privileges gained in STAGE 1 and STAGE 2
- Personal Clothing

  (3 Pair) Socks

  (3) Undershirt

  (3) Underwear

  (1 Pair) Tennis shoes

  (1 Pair) Shower shoes

  (1) Baseball hat (White or light gray only)

  (1) Sweat suit (one sweatpants and one sweatshirt) (White, light gray or off white only)

  (1 Pair) Thermals (one shirt and one pant) (White, light gray only or off-white)

  (1) Beanie (White, light gray only or state issue blue)

- (1) Calculator
- Patients designated "Single Cell" status per CDCR Classification Committee may be eligible for a TV loaner upon approval from IDTT.
- Annual Package
- Allowable Incentive Store purchases in accordance with the SVPP Stage and Incentive Program policy (3.12).

**d.  STAGE 3 (DORM):**

- All privileges gained in STAGE 1, STAGE 2 and STAGE 3 (SINGLE CELL)
- (Limited to 2) Electrical appliances.  (1) TV (DMH issued only), (1) CD player with headphones (DMH issued only)
- (5 Total) CD's

# EXHIBIT C

# CDC-DMH
# ICF MOU

California Department of Corrections and
Department of Mental Health

## MEMORANDUM OF UNDERSTANDING
## CALIFORNIA DEPARTMENT OF CORRECTIONS
## AND
## CALIFORNIA DEPARTMENT OF MENTAL HEALTH
### Intermediate Care/Non-Acute Services

I.    **INTENT**

It is the intent of the California Department of Corrections (CDC) and the California State Department of Mental Health (DMH) by entering into this Memorandum of Understanding (MOU) to provide the legal framework by which the parties function cooperatively to provide inpatient mental health services to those individuals under the jurisdiction of CDC. These services shall be clinically appropriate and effective; conform to all legal requirements; and, make optimum use of available resources for mental health evaluation and treatment.

II.   **GENERAL PROVISIONS**

A.    This MOU, when signed and approved, is effective from May 1, 2005 through June 30, 2008.

B.    Long Term Care Services (LTCS) shall represent DMH in this contractual agreement with CDC. The Health Care Services Division (HCSD) shall represent CDC.

C.    This MOU refers to PC § 2684, § 2685, and § 2974 between CDC and DMH. PC § 2960-81 (excluding § 2974) shall be covered in a separate MOU.

D.    CDC and DMH shall participate in ongoing discussions with the intention of establishing future agreements or procedures to facilitate the appropriate transfer and treatment of a mentally ill patient and parolee (PC § 2684, 2685, and 2974). It is further expected that clinical staff from DMH programs, CDC institutions, and Parole Outpatient Clinics (POCs) shall participate in ongoing case review functions that may lead to recommendations for changes or modifications to existing agreements or procedures.

E.    Custodial authority over each CDC inmate-patient, at the DMH operated Vacaville Psychiatric Program (VPP) at California Medical Facility (CMF) and the Salinas Valley Psychiatric Program (SVPP), is held by the Director of CDC. Custodial authority is transferred to DMH under the provisions of Penal Code (PC) § 2684 and §2974 and shall be relinquished by DMH for PC § 2684 cases under PC § 2685 while CDC maintains jurisdiction over the inmate-patient.

ICF-1

6/8/05

California Department of Corrections and
Department of Mental Health

F.  Treatment authority for each DMH program is authenticated by DMH staff prior to admission.  CDC staff must obtain either a signed informed consent or documentation that due process procedures specified in Title 15, California Code of Regulations (CCR), § 3369.1 (CDC Form 128 C will continue to be used until CDC 128-MH6 is approved) have been complied with.  Welfare and Institution Code (WIC) 5150 or Letters of Conservatorship shall constitute treatment authority for PC 2974.

G.  Treatment authority for the administration of psychotropic medication in each CDC institution is established by CDC staff either by obtaining a signed voluntary informed consent of the inmate-patient or by procedures developed pursuant to the *Keyhea v. Rushen* injunction, as codified under PC § 2600.  Treatment authority for the administration of psychotropic medication is found in the establishment of WIC 5150 or Conservatorship.

H.  Existing *Keyhea* procedures shall be used, as appropriate, by DMH and CDC.  The CDC Legal Affairs Division or other counsel, in accordance with current State policy, shall represent CDC at *Keyhea* hearings involving a CDC patient.  DMH shall provide the necessary treatment and clerical resources for the *Keyhea* process in DMH programs.

I.  A patient admitted to VPP and SVPP does not require PC § 2684 authority for placement.  Proposed transfers from VPP and SVPP to any DMH state hospital shall be accomplished under authority of PC § 2684, or § 2974.

J   CDC institutions and POCs shall maintain an administrative liaison function for all DMH programs specified in this agreement.  DMH shall specify in writing any changes in its administrative liaison person to the Chief of Mental Health at HCSD, CDC (or designee).  CDC shall specify any changes to its administrative liaison person to DMH headquarters.  The administrative responsibility of each liaison shall include, but not be limited to:

1.  Coordinating the flow of patient and parolee referrals and transfers;

2.  Arranging for the transfer of a patient or parolee;

3.  Ensuring the orderly processing of patient and parolee records;

4   Communicating any procedural problems affecting the referral and transfer process as appropriate to the Health Administrator P&CSD or to the Chief of Mental Health at HCSD, CDC (or designee), or Assistant Deputy Director, LTCS, DMH;

5.  Proposing such procedures as may be required to facilitate the placement, treatment and transfer of a mentally ill patient and parolee, and

6/8/05

California Department of Corrections and
Department of Mental Health

6.  Communicating issues relating to the quality management system as appropriate to the Health Administrator Parole and Community Services Division (P&CSD) or to the Chief of Mental Health at HCSD, CDC (or designee), or Assistant Deputy Director, LTCS, DMH, who shall determine an appropriate response.

K.  Each patient admitted to a DMH program shall be assessed by DMH as to the patient's or parolee's ability and need to participate in either a therapeutic work assignment or a voluntary work assignment. Each eligible patient who fully participates shall receive a day-for-day credit while an inpatient at a DMH program. Work incentive procedures within DMH shall be consistent with PC § 2933 et seq., Title 15, California Code of Regulations Section 3043 and CDC Department Operations Manual (DOM) Section 53130.

L.  If a patient or parolee is hospitalized in a DMH program and is required to be on leave to court or for other legal requirements, the DMH program staff should make every effort to assure continuity and proper level of care.

M.  In the event of escape or Absence Without Leave of a CDC patient or parolee from a DMH program, the DMH program Executive Director, or designee, shall immediately notify CDC Identification Unit by telephone at (916) 445-6713, 24-hours/day. The Identification Unit is responsible for notifying appropriate CDC staff.

N.  In any case in which a CDC patient or parolee dies during DMH hospitalization, or if the death occurred following transfer from a DMH program to a community medical facility, the DMH program responsible shall notify the coroner and local law enforcement agencies within two hours of the discovery of death. The initial notification must be transmitted by telephone, direct contact, or by written notification to the following:

**For Patient or Parolee:**

1.  Coroner;
2.  County Office of the District Attorney;
3.  County Sheriff; and
4.  Chief of Police (if the facility is located within the city limits of an incorporated City).

**For Patient:**

1.  Deputy Director, Health Care Services Division (HCSD);
2.  Deputy Director, Institutions Division);
3.  Watch Commander of CDC Referring Institution; and
4.  Chief Medical Officer (CMO) of CDC Referring Institution.

ICF-3

6/8/05

California Department of Corrections and
Department of Mental Health

**For Parolee:**

1.  Local Parole Unit for parolee
2.  Chief Psychiatrist for appropriate POC Region.

Additionally, a written report shall be submitted within eight hours to the above listed authorities and Warden of the CDC referring institution or Regional Administrator of the respective parole region. The Warden or Regional Administrator shall notify the Attorney General within 10 calendar days after the parolee's death of all facts concerning the death.

O.  In order to ensure prompt access to needed care in DMH programs, CDC, VPP and SVPP shall maintain expeditious referral and classification procedures (see Section V. C.). These referral and classification procedures shall ensure that inmate-patients who meet the admission criteria, as specified in Section IV below, are transferred from CDC facilities to DMH programs within 72 hours of acceptance.

P.  CDC and DMH administrative liaisons shall maintain a list of the names and CDC numbers of each patient who has been classified and is awaiting transfer to a DMH program.

Q.  Each temporary community release involving a CDC patient at a DMH program, under authority of PC § 2684, shall be in compliance with CDC's Temporary Community Leave policy described in CDC DOM Section 62070, Temporary Removals.

R.  Inpatient records for all inmate-patient's shall be in compliance with Title 22, Division 5, Chapter 1, Article 7, Administration. DMH staff shall be responsible for maintaining and completing all DMH inpatient mental health records for each patient or parolee residing in a DMH program, following the Mental Health Documentation System. In the case of a suicide of a patient within a state hospital, CDC may review the patient's DMH medical record upon notification to the hospital's Medical Director and under the supervision of the Medical Director.

1.  CDC and DMH Headquarters staff and other appropriate clinical and administrative staff shall meet within five working days of notification when, in the opinion of CDC, there has been a significant change in provision of DMH services to CDC.

2.  The Director of DMH shall ensure the inpatient mental health services contracted for by CDC shall be available to CDC inmate-patient and parolees who meet the clinical and other admission criteria outlined in this agreement.

ICF-4

6/8/05 CAN

California Department of Corrections and
Department of Mental Health

S.  For the psychiatric programs (VPP and SVPP), DMH shall be responsible for recruiting and hiring staff. Personnel issues of the Program staff shall be the responsibility of DMH. Pursuant to Government Code Sections 1029 and 1031, CDC shall provide an expedited selection process for all MTA-P applicants. This process includes conducting the written psychological exam; risk assessment and physical abilities test; vision test; fingerprinting; background investigation; pre-employment medical examination, and oral psychological examination process. DMH shall provide timely and appropriate clinical training for the Program staff.

## III    CRITERIA FOR INTERMEDIATE CARE/NON-ACUTE ADMISSION

A.  Criteria for inpatient care in the Program requires an Axis I major (severe) mental disorder with active symptoms and any one of the following:

1.  As a result of the major mental disorder, the patient is unable to adequately function within the structure of the CDC Enhanced Outpatient Program (EOP) Level of Care.

2.  The patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms.

3.  The patient requires a neurological/neuropsychological consultation.

4.  The patient requires an inpatient diagnostic evaluation.

5.  The patient would benefit from a comprehensive treatment program with an emphasis on skill (i.e. coping, daily living, medication compliance) development with increased programming and structured treatment environment.

6.  The patient's psychiatric medication history indicates that a clozapine trial might be useful.

7.  Inmate-patients who are deemed a significant assault risk, have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner) or present a high escape risk, shall be referred to the SVPP Intermediate Program. CDC refers to these inmate-patients's as high custody inmate-patients.

6/8/05

California Department of Corrections and
Department of Mental Health

8. The patient's Global Assessment of Functioning indicates behavior that is considerably influenced by psychotic symptoms; OR serious impairment in communication or judgment; OR inability to function in almost all areas.

9. For SVPP only, the patient is medically appropriate as determined by the receiving Prison medical staff. The Program Psychiatrist will determine mental health suitability. If agreement is not reached refer to the Coordinated Clinical Assessment Team (CCAT) process in Section VI. Any denial for medical reasons will be immediately referred to the CDC Assistant Deputy Director, HCSD.

B. In addition to a primarily Axis I disorder, admission to VPP and SVPP shall be considered when:

1. The patient engages in ritualistic or repetitive self-injurious/suicidal behavior that has not responded to treatment in a CDC facility. Without inpatient mental health treatment the inmate-patient is likely to develop serious medical complications or present a threat to his life.

2. The patient is chronically suicidal and has had repeated admissions to a Mental Health Crisis Bed (MHCB).

C. Inmate-patient committed to DMH by the courts as being incompetent to stand trial per Penal Code § 1370.

Inmate-patients who commit an offense while in CDC, are referred to the District Attorney for prosecution, and are found by the court to be incompetent to stand trial per Penal Code § 1370 will first be considered for the SVPP. If there are no custodial or clinical reasons for admission to SVPP, they will then be considered for other DMH programs.

1. Whenever the CDC institution referring clinician is in doubt concerning the appropriateness of referring a particular patient, the referring clinician will call the Chief, C&PR, or designee then if necessary will call the State Hospital's PC§ 2684 screening clinician or the psychiatric programs' admission and discharge coordinator (ADC) to clarify the adequacy of the referral before formally submitting the referral.

D. Inmate-patients shall be eligible for admission to a DMH program regardless of parole date. CDC will provide all discharge and community planning. CDC will transfer the inmate-patient from the DMH program to a CDC institution for release at least one calendar day prior to the release date.

IV. **REFERRAL AND ADMISSION PROCESS-INTERMEDIATE CARE/NON-ACUTE**

ICF-6

6/8/05 CM

California Department of Corrections and
Department of Mental Health

The following CDC institutions retain Unit Health Records for inmate-patients referred to ASH/PSH. California Men's Colony (CMC) shall retain records of inmate-patient referred to ASH.  California Institution for Women (CIW) shall retain records for female inmate-patient referred to PSH.

A.  Referral Process:

The DMH and CDC referral system uses documents and telephone conferences for referral and transfer of each CDC inmate patient.

1.  CDC shall transmit standardized referral information to the appropriate DMH program (See Attachment #1 – DMH Referral Form/ Intermediate Care Program).  The referral packet (See Attachment #2- Referral Checklist) shall be sent to the DMH Forensic Coordinator or the Admission and Discharge Coordinator.

2.  DMH shall review the referral packet within three working days of receipt.  DMH staff shall immediately notify the referring institution (See Attachment #3 – DMH Referral Decision Form) by fax of their decision. The decision shall provide the detailed reasons for any rejections.

3.  Each referral for evaluation to an intermediate/non-acute program shall be the responsibility of CDC clinical staff.  Referrals to DMH should be based on the need for the ICF level of care.  Determination for admission to the intermediate/non-acute program shall be the responsibility of the DMH Forensic Coordinator or the Admission and Discharge Coordinator.

4.  All referrals shall include a completed DMH referral form and a referral packet (see Attachment #2-Referral Checklist), which consists of:

a)  Transfer Medical Summary or History & Physical for Transfer to DMH.  The H&P is required for SVPP and must have been completed within the last 30 days;

b)  Current Treatment Plan – CDC 7388-MH Form (Use CDC Form MH 2 until CDC 7388-MH Form is implemented);

c)  Due Process documentation of the hearing OR Written consent (Use CDC 128C until CDC 128-MH6 is implemented), or a valid waiver of the due process hearing is required for referral if the patient refuses to sign consent to transfer;

d)  Pharmacy Profile;

ICF-7

6/8/05 CM

California Department of Corrections and
Department of Mental Health

    e)    Supporting Keyhea documentation or a Keyhea Order (when relevant);

    f)    Interdisciplinary Progress Notes for past 15 days (May be less for new arrival to reception center);

    g)    TB chrono from the referring institution;

    h)    Abstract of Judgement (For State Hospitals only);

    i)    Legal Status Summary (For State Hospitals only);

    j)    Chrono History (For State Hospitals only);

    k)    Custody Case Factor Sheet;

    l)    CDC Suicide Risk Assessment.

DMH psychiatric programs (VPP and SVPP) shall require only a transfer form (see Attachment 4- DMH Referral/Transfer Form) and case factor sheet for DMH to DMH transfers.

CMF and SVSP, due to their close proximity to VPP and SVPP, shall provide the entire Unit Health Record and the Case Factor Sheet for review by the VPP and SVPP Admission & Discharge Coordinator (ADC) instead of the above.

B.    Admission Procedure:

    1.    Classification Staff Representatives (CSR) from Classifications Services Unit will be responsible for endorsing inmate-patients from the CDC institution to the DMH program. These endorsements may be done on site when a CSR is available or via Teletype process when a CSR is not available on site.

    2.    The following procedures shall take place, prior to actual admission of each patient accepted for treatment or evaluation by the intermediate/non-acute program:

        a).    The DMH Forensic Coordinator or Admission and Discharge Coordinator shall determine the location of the bed for the patient.

        b).    Upon admission the appropriate psychiatrist shall assume immediate responsibility for the respective patient's care and treatment.

6/8/05

California Department of Corrections and
Department of Mental Health

    c).  The admitting psychiatrist shall document in the medical record at the time of admission.

3.    If there is a waiting list, inmate-patients on the SVPP Clinical Assessment Team (CAT) referral waiting list will be reviewed in the daily Program meetings. Prioritization for admission is based upon the clinical acuity of the patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs and any change of clinical conditions that justify moving the patient to the top of the list. Institutions may petition the HCSD Chief Psychiatrist or Chief Psychologist to move an inmate-patient-patient to the top of the waiting list based on clinical need.  If after review, the HCSD Chief Psychiatrist/Psychologist determines that the inmate-patient-patient should be a priority, they will contact the SVPP CAT team and have the patient moved to the top of the list.  If all clinical factors are equal, priority shall be assigned based on current placement in the following order: Psychiatric Services Unit (PSU); Mental Health Crisis Bed (MHCB); other DMH placement (Vacaville Acute Psychiatric or Intermediate Program or Atascadero State Hospital); Administrative Segregation Enhanced Outpatient Program (Ad Seg EOP) Hub; Administrative Segregation, General Population (Ad Seg GP); Enhanced Outpatient Program (EOP); and General Population (GP).

C.  TREATMENT PLANNING

1.    Each patient or parolee admitted to an intermediate/non-acute program shall be evaluated and have a treatment plan within 72 hours of admission.  The treatment plan shall include a plan to discharge to a lower level of care.

2.    The treatment plan and the patient's progress shall be reviewed and updated within 10 days.  The treatment plan and the patient's progress shall be updated at 30 days, then quarterly or at any time there is a change in the patient's treatment needs (For SVPP, every 30 days per CTC license regulations)

3.    The patient's progress shall be clearly documented in the medical record.

4.    Inmate-patients who have been clinically discharged but not yet transferred shall continue to receive all evaluations and treatment procedures appropriate to their clinical needs until they leave the institution.

6/8/05

California Department of Corrections and
Department of Mental Health

## V.    COORDINATED CLINICAL ASSESSMENT TEAM

All rejections will be automatically submitted by DMH to the Coordinated Clinical Assessment Team (CCAT) within 24 hours of rejection. The team will be comprised of senior mental health clinicians from HCSD, Health Care Placement Unit (HCPU) representative-HCSD, Classifications Services Unit (CSU) representative-CDC, referring clinician and supervising clinician from the referring institution-CDC, the Assistant Deputy Director (LTCS) or designee-DMH, and a DMH senior clinician from Atascadero State Hospital (ASH), Patton State Hospital (PSH), Vacaville Psychiatric Program (VPP), and the Salinas Valley Psychiatric Program (SVPP), the Executive Director or designee and Program Director or designee for the respective institutions. When reviewing a rejection, all DMH senior clinicians will participate in the review.

A.    HCSD will notify all CCAT members, as well as the referring institution, to call into a specific phone number at a designated time. It is mandatory that the referring clinician be in attendance at this call as well as the Chief Psychiatrist/Psychologist and/or Senior Psychiatrist/Psychologist.

B.    The CCAT will review all pertinent information and seek clarification from the referring clinician as well as the DMH clinicians in order to determine the appropriate outcome for the case. Decisions regarding admission or non-admission will be rendered by the CCAT at the conclusion of the meeting unless additional information is required. For those cases where the CCAT cannot come to agreement, the Assistant Deputy Director, LTCS-DMH or designee, and the Chief of Mental Health, HCSD, or designee, will be contacted and the case turned over to them and their respective Deputy Directors to reach a final decision. The final decision will be rendered within two working days from the date all supporting documentation is received.

C.    CCAT will also schedule and review all cases where the DMH program requested additional information and the information has not been received from the referring institution. In these cases, the referring clinician should be prepared to provide, at the time of the CCAT review, any material that has not been provided to DMH.

D.    The HCSD shall schedule case conferences upon request by DMH and/or CDC clinicians regarding a difficult or perplexing patient case, including repeated admissions of the same patient in a short time frame.

## VI.    CRITERIA FOR PC § 2974 REFERRAL

A.    Any patient nearing release or a parolee who is a danger to self or others, or gravely disabled as a result of a mental disorder and who does not come within the provisions of Section 2962 may, upon probable cause, be placed

6/8/05 CM

California Department of Corrections and
Department of Mental Health

or cause to be placed, by the Director of Corrections in a state hospital pursuant to the provisions of W&I Code, Division 5, Part 1, Section 5000 et seq. for Lanterman-Petris-Short (LPS) Act.  See section IV. A. 4. a – l. for referral forms and process.

B.   A parole violator or parolee in need of acute mental health care, agreeable to entering MSH or NSH voluntarily, suffers from an Axis I Major Mental Disorder and fulfills the DMH hospital admission criteria as defined in Section IV, for inpatient treatment of major mental disorders may be referred.  See Attachments #5- Parolee Referral Form and #6-Parolee Checklist for referral forms.

Parolees who have been convicted of rape, child molestation, other sexual offenses or murder may not be admitted to MSH.

VII.   **THE PC § 2974 REFERRAL AND ADMISSION PROCESS FROM INSTITUTIONS**

A.   2684 in State Hospital, Transferred Within 90 Days of Parole and Needs to Rollover to PC 2974.

   1.   Identification:

      a.   DMH clinician identifies a gravely disabled inmate-patient and notifies POC/HCSD.

      b.   C&PR notifies DMH the beginning of each month of all CDC inmate-patients that will be leaving in the next 90 days.  DMH will review those inmate-patients and advise the C&PR of the ones that appear unable to care for themselves. These inmate-patients will be referred to a case discussion with POC, HCSD, DMH and the Co. MH to determine if continued care per PC 2974 is needed.  If the release date changes, CDC will notify DMH.

   2.   Process of Conservatorship:

      a.   POC contacts County MH in the county to which the inmate-patient would have been assigned to discuss conservatorship as an option.

      b.   DMH clinician provides County Mental Health all pertinent historical psychiatric information regarding the inmate-patient in addition to any current behavioral observations.

      c.   POC clinician arranges with County Mental Health staff to conserve the inmate-patient and initiates the required process. Conservatorships must be in place 24 hrs before parole date to

ICF-11

6/8/05 CM

California Department of Corrections and
Department of Mental Health

remain in the state hospital. Otherwise, the inmate-patient is returned to the referring CDC institution.

d. POC clinician completes the application for admission to state hospital and obtains the necessary documents.

e. CDC provides transportation/security if the inmate-patient must attend a conservatorship hearing.

3. Rollover to 2974:

POC Region headquarters assigns the case to a POC clinician for monitoring care in the state hospital.

4. While Hospitalized:

a. County Mental Health staff maintains contact with clinical staff at the state hospital.

b. A POC case will be maintained in the parole unit to which the inmate-patient would have been assigned. The POC clinician will maintain contact with the hospital clinical staff in order to track progress towards discharge back to the community.

5. Discharge from State Hospital to Parole:

a. State Hospital notifies POC clinician, conservator and parole agent (in unit where parolee will reside) of intent to discharge patient.

b. Agent arranges initial appointment with POC clinician.

c. POC clinician working with the conservator makes referrals to or arranges for any community care necessary.

d. Parole agent transports parolee from state hospital to parole unit for initial POC appointment.

e. POC notifies County Mental Health and conservator that the patient is discharged and in POC care.

B. 2684 in State Hospital, Transferred Within 30 Days of Parole and Needs to Rollover to PC 2974

1. Identification
a. CDC clinician identifies a potentially gravely disabled inmate-patient to DMH.

ICF-12

6/8/05

California Department of Corrections and
Department of Mental Health

    b.   Inmate-patient will be reviewed immediately for the ability to care for themselves in the community by HCSD clinician. Those who appear unable and who have no community resources will be referred to a case discussion scheduled by HCSD with POC, HCSD, DMH and the County Mental Health to determine if continued care per PC 2974 is needed.

2. Process of Conservatorship:

    a.   HCSD contacts County Mental Health in the county of residence (where the parolee would be paroling) to discuss conservatorship as an option.

    b.   DMH clinician provides County Mental Health all pertinent historical psychiatric information regarding the inmate-patient in addition to any current behavioral observations.

    c.   HCSD clinician arranges with County Mental Health staff to conserve the inmate-patient and initiates the required process. Conservatorships must be in place 24-hrs before parole date to remain in state hospital. Otherwise, the inmate-patient is returned to the referring CDC institution.

    d.   HCSD clinician completes the application for admission to state hospital and obtains the necessary documents.

    e.   CDC provides transportation/security if an inmate-patient must attend a conservatorship hearing.

3. Rollover to 2974:

POC Region headquarters assigns the case to a clinician for monitoring care in the state hospital.

4. While Hospitalized:

    a.   State Hospital notifies POC clinician and parole agent (in unit where parolee will reside) of intent to discharge patient.

    b.   A POC case will be maintained in the parole unit to which the inmate-patient would have been assigned. The POC clinician will maintain contact with the hospital clinical staff in order to track progress towards discharge to the community.

5. Discharge from State Hospital to Parole:

6/8/05 CAR

California Department of Corrections and
Department of Mental Health

    a.  State Hospital notifies POC clinician, conservator and parole agent (in unit where parolee will reside) of intent to discharge patient.

    b.  Agent arranges initial appointment with POC clinician.

    c.  POC clinician makes referrals to or arranges for any community care necessary.

    d.  Parole agent transports parolee from state hospital to parole unit for initial POC appointment.

## VIII.  THE PC § 2974 REFERRAL AND ADMISSION PROCESS FROM PAROLE

    A.  Parolee in the Community to State Hospital per PC 2974

        1.  Identification

           a.  POC clinician or parole agent identifies a gravely disabled parolee and determines community treatment is not practical.

           b.  POC clinician contacts the contact person (may vary per region) at Parole Region headquarters and HCSD to request a bed at Napa (Northern) or Metro (Southern) State Hospital. Parolees who have been convicted of rape, child molestation, or other sexual offenses or murder may not be admitted to Metro State Hospital and will be referred to Napa.

        2.  Process of Conservatorship (Pre-admission to State Hospital):

           a.  POC clinician contacts County Mental Health Department for an evaluation per W&I 5150 (grave disability) or coordinates with the state hospital for 5150 (if the state hospital has 5150 authority).

           b.  POC clinician provides all pertinent historical psychiatric information regarding the parolee in addition to any current behavioral observations and collateral contact information from family members and/or parole agent.

           c.  POC clinician arranges with County Mental Health staff to conserve parolee.

           d.  POC clinician completes the application for admission to state hospital and obtains the necessary documents from the agent (field file) required by the state hospital.

6/8/05

California Department of Corrections and
Department of Mental Health

      e. POC provides transportation/security if an inmate-patient must attend a conservatorship hearing.

3. Referral Process:

The DMH and CDC referral system uses documents and telephone conferences for referral and transfer of each parolee.

      a. CDC-Parole Outpatient clinic shall transmit standardized referral information to the appropriate DMH program (See Attachment #5-DMH Parolee Referral Form. The referral packet (See Attachment #6-Parolee Referral Checklist) shall be sent to the DMH State Hospital, Forensic Coordinator.

      b. DMH shall review the referral packet within three working days of receipt. DMH staff shall immediately notify parole Region Headquarters (See Attachment #3-DMH Referral Decision) by fax of their decision. The decision shall provide the detailed reasons for any rejections.

      c. Each referral for evaluation to an intermediate care program shall be the responsibility of the POC clinical staff. Referrals to DMH should be based on the need for intermediate level of care. Determination for admission to the intermediate care program shall be the responsibility of the DMH Forensic Coordinator.

      d. All referrals shall include a completed DMH referral form and a referral packet which consists of:

         1. Medical history and Physical, if available;

         2. Initial Evaluation, if completed;

         3. Current medications prescribed by POC Physician;

         4. Parole Automated Tracking System (PATS) case notes for the past 15 days (new cases may have fewer case notes available);

         5. Probation Officer Report, if available;

         6. C II sheet.

4. Admission to State Hospital:

      a. If the state hospital has 5150 authority for parolee, the state hospital will take the patient directly from Parole If a PC 2974 bed is available. If a PC 2974 bed is not available, CDC will either direct DMH to discharge another CDC patient back to a CDC institution or send the parolee to the county 5150 facility.

      b. If the state hospital does not have 5150 authority for the parolee, the County Mental Health will do the 5150/5250/T-Con before the state

6/8/05 CAY

California Department of Corrections and
Department of Mental Health

hospital will accept the parolee. A T-Con is required for admission to the state hospital.

5.  While Hospitalized:

    a.  Initial Hospitalization

        1.  POC clinician coordinates with County Mental Health staff for assessments, evaluations, and attending court hearings to support conservatorship. State Hospital treatment team information can be utilized, if available.

        2.  If the patient stipulates to the conservatorship, the Public Defender can ask for a non-appearance hearing.

        3.  If the patient does not stipulate, a probable cause hearing is necessary.

    b.  Treatment Phase of Hospitalization

        1  POC case will be maintained in the parole unit from which the parolee was placed. The POC clinician will maintain contact with the hospital clinical staff in order to track progress towards discharge back to the community.

6.  Discharge from State Hospital to Parole:

    a.  State Hospital notifies POC clinician, conservator and parole agent (in unit where parolee will reside) of intent to discharge patient.

    b.  Agent arranges initial appointment with POC clinician.

    c.  POC clinician working with the conservator makes referrals to or arranges for any community care necessary.

    d.  Parole agent transports parolee from state hospital to parole unit for initial POC appointment.

    e.  POC notifies County Mental Health and conservator that the inmate-patient is discharged and in POC care.

B.  Inmate-patient in Crisis and Release Date Too Early for T-Con to be in Place

    1.  Identification:

        a.  Institution clinician identifies an inmate-patient in crisis that has an imminent parole date.

6/8/05

California Department of Corrections and
Department of Mental Health

    b.   Institution clinician contacts the contact person (may vary per region) at POC HQ and supervisor in the institution to request a bed at Napa (Northern) or Metro (Southern) State Hospital. Inmate-patients who have been convicted of rape, child molestation, or other sexual offenses or murder may not be admitted to Metro State Hospital and will be referred to Napa.

2.   Process of Conservatorship (Pre-admission to State Hospital):

    a.   Institution clinician contacts County Mental Health Department for an evaluation per W&I 5150 (grave disability) or coordinates with the state hospital for 5150 (if the state hospital has 5150 authority).

    b.   Institution clinician provides all pertinent historical psychiatric information regarding the inmate-patient in addition to any current behavioral observations and collateral contact information from family members and/or parole agent.

    c.   Institution clinician arranges with County Mental Health staff to conserve the inmate-patient.

    d.   Institution clinician completes the application for admission to state hospital and obtains the necessary documents that are required by the state hospital.

    e.   CDC/POC provides transportation/security if an inmate-patient must attend a conservatorship hearing.

3.   Admission to State Hospital:

    a.   If the state hospital has 5150 authority for parolee, the state hospital will take the patient directly from the institution on parole date if a PC 2974 bed is available. If a PC 2974 bed is not available CDC will either direct DMH to discharge another CDC patient back to a CDC institution or send the inmate patient to a County 5150 facility.

    b.   If the state hospital does not have 5150 authority for the inmate-patient, the County Mental Health will do the 5150/5250/T-Con before the state hospital will accept the parolee. A T-Con is required for admission to the state hospital.

4.   While Hospitalized:

    a.   Initial Hospitalization

6/8/05 CAd

California Department of Corrections and
Department of Mental Health

    1. Institution clinician coordinates with County Mental Health staff for assessments, evaluations, and attending court hearings to support conservatorship. State Hospital treatment team information can be utilized, if available.

    2. If the patient stipulates to the conservatorship, the Public Defender can ask for a non-appearance hearing.

    3. If the patient does not stipulate, a probable cause hearing is necessary.

  b. Treatment Phase of Hospitalization

    1. County Mental Health staff maintains contact with clinical staff at the state hospital.

    2. A POC case will be maintained in the parole unit where the parolee would have been placed. The POC clinician will maintain contact with the hospital clinical staff in order to track progress towards discharge back to the community.

5. Discharge from State Hospital to Parole:

  a. State Hospital notifies POC clinician, conservator and parole agent (in unit where parolee will reside) of intent to discharge patient.

  b. Agent arranges initial appointment with POC clinician.

  c. POC clinician working with the conservator makes referrals to or arranges for any community care necessary.

  d. Parole agent transports parolee from state hospital to parole unit for initial POC appointment.

  e. POC notifies County mental Health and conservator that the inmate-patient is discharged and in POC care.

## IX. TRANSFER ARRANGEMENTS TO AND FROM CDC

A. The CDC institution shall provide for transportation of a patient between a DMH program and a CDC institution or DMH psychiatric program. The parole unit or region shall provide for transportation of a parolee between a DMH program and a local detention facility or community placement.

6/8/05

California Department of Corrections and
Department of Mental Health

B.  A transfer schedule shall be established by the CDC referring institution and the respective DMH program.

C.  Inmate-patients who have been accepted shall be transported to DMH within 72 hours of acceptance.

D.  Each patient or parolee admitted to a DMH program shall have with him/her, unless already sent, all documentation listed in Section V. B. 4. If, following the patient's admission, it is determined by assessments of the DMH staff that the patient does not meet admission criteria for the inpatient mental health program CDC will transport the inmate-patient back to prison on expedited basis but no more than 72 hours.

If the admission was based on a 5150 evaluation by the state hospital and the patient does not meet criteria for continued hospitalization or conservatorship. CDC/Parole will transport the patient back to prison or the inmate-patients county of residence within 24 hours. The state hospital cannot retain a patient beyond 24 hours and if the inmate-patient is not picked up within this time period, it may become necessary for the state hospital to discharge the inmate-patient to the street.

E.  A patient who has been found to pose an unusual and severe security risk to the DMH program in which he/she is housed shall be transferred by CDC to a CDC institution within 24 hours. However, if the security risk is on the basis of mental disorder rather than criminality or personality disorder, DMH shall make every effort to retain and treat the patient or parolee in the DMH hospital.

F.  A patient or parolee's personal property and funds are to accompany him/her at the time of delivery to and from the DMH hospital.

1.  Property, other than legal materials, shall be limited to no more than can be stored within six cubic feet.

2.  The property box from CDC shall be inventoried and sealed. Any Board of Control Claim resulting from items missing from a patient or parolee's property upon admission to the DMH hospital is the responsibility of CDC.

3.  CDC shall ensure that items on the DMH Hospital Contraband List (see Attachment # 7-Contraband List) are not transferred to a DMH hospital with the patient or parolee's personal property.

G.  Each patient or parolee shall be subject to TB evaluation by DMH upon admittance.

6/8/05

California Department of Corrections and
Department of Mental Health

## X.    UTILIZATION MANAGEMENT

A.    CDC reserves the right to inspect, monitor, and perform utilization reviews prospectively, concurrently, or retrospectively regarding the courses of treatment or inpatient care provided to CDC's inmate-patient. Such reviews shall be undertaken to determine whether the course of treatment or services was prior authorized, medically necessary and performed in accordance with CDC rules and guidelines. DMH agrees to make available, upon request by CDC, for purposes of utilization review, an individual patient's medical record and any committee reviews and recommendations related to a CDC patient.

B.    DMH acknowledges and agrees that concurrent utilization management review shall not operate to prevent or delay the delivery of emergency treatment.

C.    DMH acknowledges that the care of a patient at DMH shall be reviewed by CDC Utilization Management (UM) nurses or designated party and by a Joint CDC/DMH Review Process.

D.    CDC UM nurses or designated party will gather data and review cases of CDC inmate-patients in DMH programs. CDC UM nurses or designated party will report their findings and make recommendations to the CDC Health Care Manager and CDC Chief Psychiatrist or their designee(s). CDC and DMH managers or their designees will meet monthly to review the data. Each DMH program also will have a joint CDC/DMH UM process that will review individual cases.

If there is a disagreement about discharge, the UM nurse will review the patient's record and forward a recommendation to the Joint CDC/DMH UM Review Process. If there continues to be disagreement, the recommendation will be conveyed to the CCAT.

## XI.    RETURN TO CDC

A.    Criteria for return to CDC:

1.    The patient has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which inpatient care was required is in substantial remission, and the remaining symptoms are those of a disorder for which DMH inpatient care is not necessary, the patient will be returned to CDC for ongoing treatment; or

2.    Evaluation during inpatient care has resulted in a change of diagnoses such that the DMH program is not appropriate or necessary; or

ICF-20

6/8/05 CAA

3. When further involuntary inpatient care is unnecessary, will provide no further benefit, or a court has denied further treatment (see also 4. below) and re-incarceration or release to parole is required, the release or re-incarceration shall be coordinated by the C&PR. When appropriate, the C&PR shall ensure notice to CDC Parole and Community Services Division (P&CSD) utilizing a CDC 611 "Release Program Study".

4. If requested by DMH, a patient who has withdrawn informed consent for mental health treatment or psychiatric medication, but for whom continued treatment is otherwise recommended, may be returned to CDC under PC § 2685 after all other avenues to obtain authorization to treat have been exhausted, if the following two criteria have been met:

   a. Withdrawal of informed consent shall be demonstrated by seven calendar days of continuous refusal to take oral medication or 30 calendar days of continuous refusal to accept scheduled depo-injectable medication, and documentation of discussions between treating DMH psychiatrists and other team members and the patient regarding the risks and benefits of continuing medication.

   b. Documentation that the patient has not met criteria for involuntary treatment for at least the last seven calendar days.

B. Returning a patient to CDC

   1. When the Medical Director of the DMH program determines that a patient is to be returned to CDC, the DMH program shall notify the Chief of Mental Health, or designee of the CDC referring institution. The Chief of Mental Health or designee shall assign an appropriate CDC clinician to contact DMH within two working days for a discharge conversation covering items on the Mental Health Summary/Discharge Contact Form (see Attachment #8-Discharge Contact Form). After evaluation of this patient at the receiving institution, the receiving clinician can appeal thru the CCAT committee.

   2. The patient shall then be returned to the CDC institution on an expedited basis but no later than 5 working days after the time of notification.

   3. Emergency returns to CDC including POC, shall be accomplished within 24 hours, per Section IX. E. Such returns will be with prior notification and approval by telephone of the CDC institution's C&PR staff and Mental Health Program Director, or designee. A dictated, typed Recommended Continuing Care Plan (RCCP) and/or discharge summary shall follow as soon as practicable, but not more than 14 days

California Department of Corrections and
Department of Mental Health

after return.

4.  For each inmate-patient returning to CDC from a DMH program, DMH shall ensure that the following documents be shall be transferred with the inmate-client to the respective CDC institution (see Attachment #9-DMH Discharge Checklist):

    a.  Psychiatric Discharge Summary;

    b.  Nursing Assessment or Discharge Summary;

    c.  Current Physicians orders and/or Medical Admission Record (MAR);

    d.  Current Treatment Plan;

    e.  Keyhea Order (if applicable).

    The inmate-patient shall not be placed in the transport vehicle without the above documents. For each parolee returning to Parole and Community Services Division (P&CSD) supervision, DMH shall ensure that the parolee's documents shall be forwarded to the Chief Psychiatrist of the respective Parole Region.

5.  A DMH discharge packet will be faxed within 2 weeks of discharge. The discharge packet shall include but not be limited to (see Attachment #9-DMH Discharge Checklist):

    a).  Interdisciplinary Notes for past 15 days;

    b).  Physician Progress Notes for past 15 days;

    c).  Relevant Consults;

    d).  If applicable, forms specific to psych and return, mental health placement and transfer information for parolees.

In addition, the DMH psychiatric programs will include in their discharge packets, the forms specific to psych and return, mental health placement and transfer information for parolees.

All DMH programs shall provide written copies of the aforementioned cited materials. For VPP and SVPP, due to their close proximity to CMF and SVSP, shall provide the entire Unit Health Record for review by the CMF and SVSP Chief of Mental Health instead of the above.

6/8/05

California Department of Corrections and
Department of Mental Health

XII.  **DMH HOSPITAL DISCHARGE TO COMMUNITY**

A.  DMH shall notify the appropriate Parole Region and POC Chief Psychiatrist or designee prior to each paroling patient's, parole violator's, or parolee's hospital discharge or transfer.

B.  Conditional Release Program (CONREP) policies shall be followed where applicable.

C.  CDC and POC shall assist DMH with pre-release planning for each inmate-patient, parole violator, or parolee in a DMH hospital who is to be released to parole. DMH shall provide such pre-release services as are usually provided by the DMH hospital, including Social Security applications on behalf of each inmate-patient, parole violator or parolee.

D.  For each PC § 2974 who is under conservatorship, it shall be the responsibility of the conservator working with the POC to secure appropriate post-hospital discharge placement. In cases when the conservator fails to accept this responsibility, the DMH caseworker shall assist the assigned parole agent and POC in arranging for appropriate post-hospital discharge placement and planning. If the parolee is placed on conservatorship while at a DMH hospital, CDC and POC shall be responsible for working with the conservator in securing appropriate placement when the DMH hospital determines the parolee is ready for discharge.

E.  Considering that CDC has a policy restricting use of tricyclic antidepressants, DMH clinicians will take this into consideration when developing treatment plans for inmate-patients that may be returning to CDC. CDC shall be notified prior to the return of each patient or parolee receiving non-FDA approved or non-CDC approved treatment. If CDC does not intend to continue this treatment, a mutually acceptable alternative treatment will be agreed upon prior to transfer of the paroling patient or parolee.

F.  Parole reporting instructions by CDC and pre-release hospital discharge planning by DMH shall be coordinated to prevent discrepancies in these arrangements.

G.  Community trips for each CDC patient at a DMH hospital under PC § 2684 shall not occur without written approval of the Warden at the CDC referring institution (DOM Section 62070, Temporary Removals). Each Parolee at a DMH hospital under PC § 2974 shall be eligible for the same privileges as an LPS patient, including community trips.

H.  The DMH hospital from which each PC 2684 or 2974 paroling patient, parole violator, or parolee is being released to the community as a parolee, shall provide a copy of the state hospital aftercare plan to the parolee and parole

6/8/05

California Department of Corrections and
Department of Mental Health

agent or appropriate POC Chief Psychiatrist and to the CDC sending institution at the time of discharge. If the referral is for evaluation, then the evaluation should be sent to CDC to the receiving institution.

## XIII.  MEDICAL AND SURGICAL HEALTH CARE

CDC acknowledges that it refers CDC inmate-patients to DMH for mental health treatment only. Medical care that is not routinely provided or available at a state hospital shall be the responsibility of the CDC. CDC shall provide medical care for VPP and SVPP. The CDC and the DMH agree that the transfer of a CDC patient from a DMH state hospital to a community health facility for medical care does not vacate the patient's transfer from CDC to DMH pursuant to PC 2684.

A.  CDC shall provide a list of CDC contract community health facilities and identify the ones nearest to each DMH state hospital. Except when the need for emergency medical care prevents it, DMH state hospitals shall refer CDC inmate-patients to a CDC contract community health facility. CDC shall instruct CDC contract community health facilities and providers that all the medical bills for the care of CDC inmate-patient referred to the contractor by DMH shall be submitted to CDC for payment pursuant to CDC's contract.

B.  DMH shall obtain prior approval for non-emergency offsite medical care from the CDC referring institution's Health Care Manager (HCM), or designee. If emergency offsite medical care is required, DMH shall notify the CDC referring institution HCM, or designee, within one working day of the emergency transfer (applies to psychiatric programs only).

C.  When the need for emergency medical care prevents a DMH state hospital from transferring a CDC patient to a CDC contract community health facility, the state hospital shall arrange for such emergency medical care at a local non-CDC contract health facility. The DMH state hospital shall notify the non-CDC contract health facility that CDC is responsible for all emergency care of the patient and that all medical invoices will be sent to CDC. DMH state hospital will notify CDC, and CDC will obtain a contract for these services.

D.  CDC's HCM in conjunction with the CDC Utilization Management staff shall be responsible to monitor the patient's care while in a community health facility. Recommendations regarding care and continued stay may be made to the attending physician at the community facility, the Chief Medical Officer of the referring CDC institution, and the Medical Director of the referring DMH state hospital.

6/8/05 CAL

California Department of Corrections and
Department of Mental Health

## XIV.   PHARMACY SERVICES FOR PSYCHIATRIC PROGRAMS (VPP and SVPP)

A.   The CDC and DMH as members of the Pharmacy Advisory Board will work with the Department of General Services to implement and administer a statewide pharmaceutical program and a statewide medical supply program. This includes coordination to develop a governing structure to establish pharmaceutical requirements for DGS contracts that shall be established and implemented. One goal of the Pharmacy Advisory Board is the development of a statewide Common Drug Formulary. This formulary will be utilized at VPP and SVPP.

B.   The CDC Pharmacy shall provide to VPP/SVPP all pharmaceuticals and supplies necessary to operate the department.

C.   The VPP/SVPP pharmacy shall be in compliance with Title 22, CCR.

D.   The California Board of Pharmacy shall license the VPP/SVPP pharmacy.

E.   There shall be one Pharmacy and Therapeutics (P&T) Committee, which shall provide the mechanism for the Medical Staff review of the VPP/SVPP Pharmacy and its programs.

F.   The VPP/SVPP Pharmacist II, who directly supervises the VPP/SVPP pharmacy staff, shall be under the clinical direction of the VPP/SVPP Medical Director. The VPP/SVPP pharmacy administrative responsibilities shall be under the direction of the VPP/SVPP Assistant Hospital Administrator.

G.   The VPP/SVPP pharmacy staff shall transmit or deliver each discharge medication order to the CMF main Computer Room daily. On a monthly basis and no later than the fifth working day of the following month, the VPP /SVPP Pharmacist II shall prepare and submit a detailed accounting of all pharmaceutical costs, volume ordered, dispensed and to which patient, to the CMF/SVSP Pharmacy Services Manager. Said accounting shall also contain a detail of any supplied pharmaceutical material destroyed and the procedure follow for such destruction. Said accounting shall be submitted in a legibly typewritten or computer-generated document usable by the CMF/SVSP pharmacy.

H.   A VPP/SVPP pharmacist shall be on-call/standby whenever the VPP/SVPP Pharmacy is closed, unless other coverage arrangement is agreed upon between the Chief Deputy of Clinical Services or the Health Care Manager and the Executive Director.

I.   Controlled Substance records shall be maintained and submitted monthly by the VPP/SVPP Pharmacist II to the CMF/SVSP Pharmacy Services Manager for reconciliation as required by law.

6/8/05 CM

California Department of Corrections and
Department of Mental Health

J.  On an annual basis and no later than five working days after the close of the fiscal year, the VPP/SVPP Pharmacist II, in conjunction with the primary vendor shall prepare and submit to the CMF/SVSP Pharmacy Services Manager, an inventory of all pharmaceuticals in stock on the closing date at the VPP/SVPP pharmacy.

K.  The Chief Deputy Clinical Services, CMF/SVSP, and/or designees, and the CMF/SVSP Pharmacy Services Manager, or designee, shall have physical access to the VPP/SVPP pharmacy without notice, 24 hours per day, seven days per week.

L.  VPP/SVPP Pharmacy (DMH) will be responsible for ordering all pharmaceutical products directly from the Primary Vendor, except for DEA-Controlled Substances. The pharmacy will utilize the current vendor's software and hardware.

M.  CMF/SVSP-Pharmacy (CDC) will be responsible to approve the order and the payment of all invoices for pharmaceuticals procured by VPP/SVPP. Appeal of orders not approved by CDC shall follow the above identified appeal process.

N.  VPP/SVPP staff will be responsible for receiving ordered products from the vendor's delivery personnel on the day after which the order has been transmitted.

O.  VPP/SVPP Pharmacy shall promptly forward the original copies of the invoices received and their corresponding purchase orders/printouts to CMF/SVSP-Pharmacy for payment. Such printouts shall bear the authorized signature of the DMH supervising pharmacist or designee.

P.  VPP/SVPP Pharmacy will acquire all DEA-Controlled Substances from the CMF/SVSP-Pharmacy according to the current DEA guidelines, provided that the amount distributed does not exceed 5% of the total number of dosage units dispensed by the CMF/SVSP-Pharmacy per calendar year.

## XV.  HEALTH RECORDS

A.  Access by CDC to DMH Medical Records

   1.  In medical emergencies or urgent need, the Chief, CP&P, HCSD, CDC, and/or designees, shall have immediate on-site 24-hour access to the DMH program health record for each CDC patient, or may request that critical portions of the health record be faxed to an appropriate CDC clinician.

ICF-26

6/8/05

2. At all other times, the Chief of Mental Health at HCSD, CDC (or designee) shall have access to the DMH program health record, or faxed or otherwise copied portions thereof, for each CDC patient upon four hours notice.

3. In the case of a suicide of a patient within a DMH program, CDC may review and copy the patient's DMH medical record upon notification to the hospital's Medical Director.

B. For a parolee, such access as stated above shall be by the Chief Psychiatrist, or designees, of the Parole Region. The CMF/SVSP Health Records Director is the custodian of all health records for health care rendered at the CMF/SVSP institution. The VPP/SVPP Health Information Management Department (HIMD) Supervisor shall be sub-custodian of records for each inmate-patient who is in treatment in the VPP/SVPP intermediate care/non-acute program.

C. Each VPP/SVPP record shall be in compliance with Title 22 Standards. DMH staff shall be responsible for maintaining and completing each VPP/SVPP health record following the Mental Health Documentation System (MHDS). Each record shall be legibly handwritten, typewritten or computer stored.

D. VPP/SVPP staff shall be responsible for each inmate-patient's DMH health record, beginning with the admission process and finishing when the inmate-patient/patient is released to CDC, parole, community or other DMH institution, and for ensuring that all discharge materials are completed. The VPP/SVPP HIMD Office shall assist DMH clinical staff with documentation requirements through concurrent and retrospective audits. After record completion by VPP/SVPP HIMD, the CMF/SVSP Health Record Department may audit documentation to ensure complete and accurate records and that each documentation requirement is met. CMF/SVSP Health Records Director, or designee, shall review final coding and complete all indices. The completed record and all indices shall be the property and responsibility of the CMF/SVSP Health Records Department.

E. The CMF/SVSP Health Records Director and VPP/SVPP HIMD Supervisor shall work together to provide optimal services to the DMH clinical staff. For each CDC inmate-patient returning to CMF/SVSP or another CDC institution from the VPP/SVPP, VPP/SVPP shall ensure that the inmate-patient's complete DMH health record is transferred to CDC, in accordance with Title 22. VPP shall also prepare an updated Discharge Summary pursuant to Part XI. Section C. above. A copy of the Discharge Summary and any relevant psychological testing reports and other evaluations shall be transferred to the CMF/SVSP Health Records Manager at the time the inmate-patient is discharged to a CDC facility. The VPP/SVPP HIMD Supervisor shall be

ICF-27

California Department of Corrections and
Department of Mental Health

responsible for ensuring that the Discharge Summary and other relevant reports shall be filed in the Inpatient Section of the CDC Unit Health Record.

F.  After notifying the DMH Executive Director, CDC staff shall have physical access to VPP/SVPP health care records, 24 hours per day, seven days per week.

G.  The DMH Medical Record Consultant and the CDC Health Record Consultant shall provide assistance when there is policy disagreement between the CMF/SVSP Health Records Director and VPP/SVPP HIMD Supervisor.  If the disagreement is not resolved, the CMF/SVSP Chief Deputy, Clinical Services, or designee and the Executive Director of VPP/SVPP or designee shall confer and resolve.

H.  Each VPP/SVPP Health Record procedure regarding maintenance of VPP/SVPP health records for the VPP/SVPP shall be approved through the MHDS Statewide Committee in conjunction with the CMF/SVSP Health Records Director.  CMF/SVSP Medical Staff shall maintain a current Mental Health Documentation System (MHDS) Manual in the VPP/SVSP Chief of Staff's Office.  Any requirement believed necessary to be implemented in the VPP/SVSP records by CMF/SVSP Staff, shall be requested, in writing, to and reviewed by the VPP/SVPP HIMD Supervisor, Medical Director, and must be approved by the VPP/SVPP Executive Director.  After approval, the VPP/SVPP HIMD Supervisor and CMF/SVSP Health Record Director shall work in concert to draft a policy for submission to the CMF/SVSP Health Record Committee for approval prior to implementation.

I.  VPP/SVPP is responsible for MHDS training and Quality Assessment and Improvement auditing to monitor for compliance.

J.  When the VPP/SVPP Medical Director determines that an inmate-patient/patient is to be returned to CDC, the Discharge Review staff shall be notified.  At that time, CMF/SVSP shall be provided with the mental health discharge summary and all other pertinent medical data.

K.  At the time of an inmate-patient's discharge, the VPP/SVPP Medical Director shall ensure that VPP/SVPP records are complete pursuant to CDC Health Record Policy before inclusion in the CDC health record.


## XVI. SPECIALIZED ANTIPSYCHOTIC MEDICATIONS

Inmate-patients who require initiation of clozapine shall generally be referred for treatment at a DMH program.  To provide continuity of care, CDC inmate-patients who have been placed on clozapine while in the DMH program will be returned to

6/8/05

California Department of Corrections and
Department of Mental Health

the following institutions based on their medical, security, and classification needs:

> California Medical Facility (CMF);
> California State Prison – Corcoran (COR);
> California State Prison – Sacramento (SAC);
> Pelican Bay State Prison (PBSP); and
> California Institution for Women (CIW).

Mental Health Services will work with the Health Care Placement Unit and Classifications to ensure proper placement.

For inmate-patient who will be discharged to parole on clozapine therapy, if the parole date is known in advance, clinical staff from the Program shall notify the Chief Psychiatrist, HCSD who will coordinate with a Chief Psychiatrist for the appropriate Parole Outpatient Clinic at least 30 days in advance of release, to ensure continuity of clozapine therapy upon parole.

## XVII. SUICIDE

A. In the case of patient death by suicide, DMH and CDC shall jointly review the case. DMH shall furnish to a CDC reviewer a copy of any reports regarding the suicide that have been provided to the Department of Health Services. The reviewer will discuss initial findings prior to leaving the site. CDC retains the right to make recommendations that it deems appropriate in keeping with licensing standards of care of suicidal inmate-patient. The DMH Deputy Director, LTCS, and the Executive Director of the program will be furnished with a copy of the CDC "Suicide Report" and the "Executive Summary of Suicide" along with attachments. DMH shall review the CDC report, and shall include corrective steps if indicated. The DMH program shall furnish a follow up report along with supporting documents to the Mental Health Suicide Prevention Coordinator, HCSD, within 90 days of receiving the Suicide Report (within 180 days of date of death). The follow up report shall include measurable goals, outcome criteria, and targeted timelines for implementation.

B. CDC may review the patient's DMH medical record upon notification to the programs Medical Director and under the supervision of the Medical Director.

## XVIII. COMPLIANCE

CDC and DMH shall monitor, on a regular basis, compliance with this MOU. Any failure to comply with the terms of the MOU shall be reported for action to the respective department Deputy Directors. This MOU may be amended, in writing

6/8/05 CM

California Department of Corrections and
Department of Mental Health

only, and when agreed upon by both CDC and DMH and signed by authorized signatories for CDC and DMH to adjust for changes required by State statute, DMH or CDC Regulations or court orders affecting the functioning of any part of this document herein.

Representatives from the state hospitals, psychiatric programs and prisons making direct referrals shall meet quarterly in Interagency Performance Improvement Meetings. These meetings may be held by videoconference and hosted on an alternate basis by CDC and DMH.

## XIX.  TRAINING

CDC and DMH shall distribute copies of this MOU to all CDC institutions and to relevant DMH programs. CDC and DMH shall conduct system-wide training for institutional clinicians on the nature, extent and availability of inpatient DMH care, and on the admission criteria and procedure for admitting to each DMH program.

## XX.  PROVISION FOR SERVICES UNDER PC § 2960-81 (EXCLUDING § 2974)

Agreements between CDC and DMH regarding individuals under PC § 2960-81 (excluding § 2974) are covered in a separate MOU C between CDC and DMH.

## XXI.  TERMINATION

CDC may terminate any program referenced in this MOU in whole or in part, upon 60-calendar days written notice to DMH. All programs, in whole or in part, not terminated pursuant to this provision, shall remain in full force and effect.

6/8/05

California Department of Corrections and
Department of Mental Health

SIGNATORS

_____

RENEE J. KANAN
Deputy Director (A)
Health Care Services Division
Department of Corrections

_____6|9|05_____

Date of Signature

_____

JOHN RODRIGUEZ
Deputy Director
Long Term Care Services
Department of Mental Health

_____6-10-05_____

Date of Signature

ICF-31

6/8/05

# Department Of Mental Health  Referral Form
## ~ ~ ~ Intermediate Care/Non-Acute Program  ~ ~ ~

**Referral for**:  ☐ Atascadero State Hospital **(ASH)** ☐ Patton State Hospital **(PSH)**

☐ Vacaville Psychiatric Program **(VPP)** ☐ Salinas Valley Psychiatric Program **(SVPP)**

**Referring Prison**: _____  Date: _____

**Current Custody/Clinical Placement**: ☐ CCCMS   ☐ EOP   ☐ Ad-Seg EOP   ☐ PSU   ☐ MHCB   ☐ APP

**Inmate Name**: _____   CDC#: _____   Date of Birth: _____

**DDP**: _____   **Due Process**: ☐ Yes ☐ No  Date: _____  Ethnicity: _____

**\*KEYHEA**: ☐ Yes ☐ No ☐ In Process (incl. supporting documentation!)  Date Initiated: _____  Date Expires: _____

Housing: _____   Education: (years) _____   GED: ☐ YES ☐ NO   Literate: ☐ YES ☐ NO

(Please Print)
**Referring Clinician**: _____ Ph _____ Pgr _____ Fax _____

**Tx Psychiatrist**: _____ Ph _____ Pgr _____ MH Secretary Ph _____

**Current Psychiatric Diagnosis**:                    **Current Psych  Medications**:  (name, dosage, freq, duration, target sxs)

Axis I  _____        _____

_____        _____

Axis II  _____        _____

Axis III  _____       _____

Axis IV  _____       _____

Axis V  _____       _____

**Reason For Referral**: (check all that apply and supply *detailed* narrative)

☐ **Inadequate level of  functioning in EOP**: _____

_____

☐ **Requires 24–hour  nursing care**: _____

_____

☐ **Requires neurological/neuropsychiatric/diagnostic testing**: _____

**Fax to 1) appropriate DMH facility and 2) Attn: Health Program Specialist, Health Care Services Division, at 916-322-2838**

☐ Would benefit from focused skills development not currently available in EOP: _____

_____

☐ **Clozapine trial:** _____

_____

### Current Mental Status Exam:

Appearance: ☐ WNL _____

Behavior: ☐ WNL _____

Speech: ☐ WNL _____

Mood: ☐ WNL _____

Affect: ☐ WNL _____

Sleep: ☐ WNL _____ Appetite: ☐ WNL _____

Cognition:    1) Fund of information: ☐ WNL _____

2) Intellectual Functions: ☐ WNL _____

3) Organization of Thought: ☐ WNL _____

4) Association of Thought: ☐ WNL _____

5) Reality Contact: ☐ WNL _____

6) Thought Quality: ☐ WNL _____

Perception Disturbances (Hallucinations): ☐ None _____

Thought Content (Delusions): ☐ None _____

Sensorium (Orient'n, Mem, Attent'n, Concent'n): ☐ WNL _____

Insight & Judgment: ☐ WNL _____

Interview Attitude: ☐ WNL _____

Reliability (Historian): ☐ Good ☐ Fair ☐ Poor _____

*Suicidal and Homicidal Ideation:* SEE BELOW

What are desired **Treatment Outcome Expectations?** (be very specific)

_____

_____

_____

**Fax to 1) appropriate DMH facility and 2) Attn: Health Program Specialist, Health Care Services Division, at 916-322-2838**

**History of Present Illness and Past Psychiatric History:**    (Must Fill Out Completely)

Hx and Recent **Suicidal or Axis I related Ritualistic or Repetitive Self-Injurious Behaviors**: _____

_____

_____

_____

Hx and Current **Violence and Behavioral Alerts**: _____

_____

_____

_____

Hx and Current **Substance Abuse**: _____

_____

_____

Hx and Current **Psychiatric Treatment / MHCB / Hospitalization**: _____

_____

_____

_____

_____

Hx and current **Medication Compliance**: _____

_____

_____

**CDC Referring Clinician:** Comments Regarding *Clinical Criteria / Factors / Signs / Symptoms* for DMH Placement Consideration

_____

_____

_____

_____

_____

_____

**Referring Clinician Signature:** _____    **Date :** _____

**Fax to 1) appropriate DMH facility and 2) Attn: Health Program Specialist, Health Care Services Division, at 916-322-2838**

# EXHIBIT D



**KAMALA D. HARRIS**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 324-5345
Facsimile: (916) 324-5205
E-Mail: Debbie.Vorous@doj.ca.gov

June 2, 2011

Matthew A. Lopes, Jr.
Special Master
Pannone Lopes & Devereaux, LLC
317 Iron Horse Way, Suite 301
Providence, RI 02908

RE:    Coleman, et al. v. Schwarzenegger, et al.
       U.S. District Court, Eastern District of California, Case No. 2:90-cv-00520 LKK JFM P

Dear Special Master Lopes:

Beginning July 1, 2009, Defendants are to report to you on a monthly basis all actions taken concerning the court-ordered projects and report whether each project remains on schedule or has been or can be accelerated. (Docket No. 3613 ¶ 2.) In addition, Defendants' reports are to be in the form of updates to the existing activation schedules. (*Id.*) Attached are updated activation schedules for the report period ending May 23, 2011.

Please contact me if you have any questions.

Sincerely,

DEBBIE J. VOROUS
Deputy Attorney General

For    KAMALA D. HARRIS
       Attorney General

DJV:

CF1997CS0003

## *Coleman* Construction Activation Schedules
## Table of Contents

Exhibit #1  Acronyms ............................................................................................ 1

Exhibit #2  *California Men's Colony*
50 Mental Health Crisis Beds ........................................................ 3

Exhibit #3  *Salinas Valley State Prison*
108 Enhanced Outpatient Program-General Population beds ........................ 7

Exhibit #4  *California State Prison, Sacramento*
Additional Treatment and Office Space............................................. 11

Exhibit #5  *California State Prison, Sacramento*
152 Psychiatric Services Unit beds ................................................ 14

Exhibit #6  *California Medical Facility*
Enhanced Outpatient Program Treatment and Office Space ............................ 18

Exhibit #8  *California Medical Facility*
64-bed Intermediate Care Facility for High Custody Inmates ........................... 22

Exhibit #9  *California State Prison, Los Angeles County*
Treatment Space for Enhanced Outpatient Program ......................................... 26

Exhibit #10  *California State Prison, Corcoran*
Treatment and Office Space for Administrative Segregation -
Enhanced Outpatient Program.......................................................... 30

Exhibit #11  *California Institution for Women*
45-bed Acute/Intermediate Care Facility ............................................. 34

Exhibit #13  *Consolidated Care Center /*
*California Health Care Facility*........................................................ 38

Exhibit #14  *Heman G. Stark*
30 Mental Health Crisis Beds ........................................................ 42

Exhibit #15  *Estrella*
150 Enhanced Outpatient Program – General Population and
40 Enhanced Outpatient Program - Administrative Segregation Unit beds....... 46

Exhibit #16  *Central California Women's Facility*
Treatment and Office Space for
Enhanced Outpatient Program- General Population ......................................... 50

Exhibit #17  *Dewitt Nelson*
375 Enhanced Outpatient Program –
General Population and
50 Enhanced Outpatient Program-
Administrative Segregation Unit beds ............................................... 54

# Exhibit #1

## Acronyms

## Acronym List

| Term | Definition |
|------|------------|
| A/E | Architectural / Engineering |
| AB | Assembly Bill |
| ADA | Americans With Disabilities Act |
| ASU | Administrative Segregation Unit |
| CCC | Consolidated Care Center (also known as California Health Care Facility) |
| CCPOA | California Correctional Peace Officers Association |
| CCWF | Central California Women's Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| CEQA | California Environmental Quality Act |
| CHCF | California Health Care Facility (also known as Consolidated Care Facility) |
| CIW | California Institution for Women |
| CMC | California Men's Colony |
| CMF | California Medical Facility |
| COBCP | Capital Outlay Budget Change Proposal |
| Compl. | Completed |
| Const. | Construction |
| COR | California State Prison, Corcoran |
| DGS | Department of General Services |
| DMH | Department of Mental Health |
| DOF | Department of Finance |
| DPH | Department of Public Health |
| EOP | Enhanced Outpatient Program |
| FPC&M | Facility Planning, Construction & Management |
| ICF | Intermediate Care Facility |
| ISP | Ironwood State Prison |
| IWL | Inmate Ward Labor |
| JLBC | Joint Legislative Budget Committee |
| LAC | California State Prison, Los Angeles County |
| LAO | Legislative Analysts Office |
| MHCB | Mental Health Crisis Bed |
| N. O. D. | Notice of Determination |
| NTP | Notice To Proceed |
| OSHPD | Office of Statewide Health Planning and Development |
| PC | Penal Code |
| PIA | Prison Industry Authority |
| PMIA | Pooled Money Investment Account |
| PMIB | Pooled Money Investment Board |
| PP | Preliminary Plans |
| PSU | Psychiatric Services Unit |
| PWB | Public Works Board |
| Resp. | Responsible |
| SAC | California State Prison, Sacramento |
| SFM | State Fire Marshal |
| SM | Special Master |
| SMY | Small Management Yard |
| SVSP | Salinas Valley State Prison |
| TBD | To Be Determined |
| VSPW | Valley State Prison for Women |
| WD | Working Drawings |

**Exhibit #2**

*California Men's Colony*
**50 Mental Health Crisis Beds**

**50 Bed Mental Health Crisis Hospital (Licensed Facility)[1]**

| | |
|---|---|
| Responsible Person: | Deborah Hysen/CDCR |
| Address of Resp. Person: | 9838 Old Placerville Rd., Suite B Sacramento California |
| Project Architect: | Nacht and Lewis Architects |
| Location: | California Mens Colony, San Luis Obispo (CMC) |
| Funding Source: | AB 900 (GC 15819.40) |

Report Period Ending: May 23, 2011

Jay Sturges /DOF
915 L Street, Sacramento California 95814

| Primary Tasks | Duration (cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | SM Completion to be Behind | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | | | | | 3/26/09 | 3/11/09 | | | | Develop Preliminary Program, Conceptual Scope, Schedule, and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | | | | | 3/26/09 | 3/25/09 | | | | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | Funding request package completed on 3/25/09. |
| Legislative Approval of Scope, Schedule and Cost | | | | | 4/10/09 | 4/10/09 | | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | |
| PWB Recognition of Project Scope, Cost, and Schedule | | 4/10/09 | 4/10/09 | | 4/10/09 | 4/10/09 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Scope, Cost, and Schedule. | |
| Request Loan from PMIA | | 4/1/09 | 4/1/09 | | 4/1/09 | 4/1/09 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account. (PMIA) | |
| Approval of PMIA Funding | | 4/15/09 | 4/15/09 | | 4/15/09 | 4/15/09 | | 4/23/09 | Director of Finance, State Controller and State Treasurer | Submit Loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | Next loan renewal March 2010 and every year thereafter for the duration of the project. |
| Architectural/Engineering Contracting | | 4/15/09 | 4/15/09 | | 4/15/09 | 4/15/09 | | 4/23/09 | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | Notice to Proceed (NTP) issued 4/15/09. |
| Preliminary Plans | 251 | 4/20/09 | 4/15/09 | (5) | 12/27/09 | 12/28/09 | 1 | | K. Beland | Circular/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule, Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | Preliminary plans are complete. |
| California Environmental Quality Act Compliance (CEQA) | 237 | 4/20/09 | 4/15/09 | (5) | 12/13/09 | 6/24/10 | 193 | | B. Sleppy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents, Circulate/Comment Period. File Notice of Determination (N, D, J.). Litigation Period. | Initial Study/Mitigated Negative Declaration public comment period ended 10/31/09. Delay due to responding to the large volume of public comments. NOD was filed 01/07/10. CCPOA filed litigation on 02/04/10. On 05/07/10 the case was transferred to the Eastern District Court. On 6/24/10, the parties to the CMC litigation stipulated to dismiss the action with prejudice. |
| JLBC Approval of Preliminary Plans | 45 | 12/28/09 | 12/28/09 | | 2/11/10 | 2/11/10 | | | JLBC | JLBC Approval, PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. JLBC responded prior to 45-day review. | Design schedule accelerated 45 days, based on early JLBC package submittal. |
| PWB Approval of Preliminary Plans | 45 | 12/29/09 | 1/7/10 | 9 | 2/12/10 | 2/16/10 | 4 | | C. Lief | PWB Approval. | PWB meeting changed to 02/16/10. There is no impact to the overall project schedule. |
| Working Drawings (Construction Documents) | 187 | 2/15/10 | 2/17/10 | 2 | 8/21/10 | 9/29/10 | 39 | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List, Update Project Schedule and Cost, Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | WD's are complete. The Construction Manager is selected and the contracts in process. The added scope from the SFM has changed the planned complete date of WD's to 09/29/10. |

5

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to MS | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bid and Award | 90 | 8/23/10 | 9/20/10 | 38 | 11/21/10 | 1/13/11 | 53 | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | The 53 days of delay was attributed to: a) SFM added scope (fire access road and modification to sally port gates, 39 days), and b) advertising, bidding & award of construction contract over the holiday period (14 days). |
| Construction² | 600 | 11/22/10 | 1/14/11 | 53 | 7/14/12 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record, Construct Project. Purchase and Install Group II Equipment. Testing of Systems (Fire alarm, Nurse Call etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMB for approval. | The NTP was issued on 01/14/11 to Sabek Pacific Construction. The revised planned complete date is 09/05/12. Site mobilization is complete and grading is continuing. The overall percentage of completion remains at 3%, due to asbestos contaminated soil discovered during site grading in both the new East & West parking lots. A remediation plan was prepared and approved by the Air Pollution Control District and abatement is underway. Potential impacts to schedule are being evaluated and will be finalized when contaminated soil abatement is complete. |
| Hire Staff | 543 | 1/10/11 | 1/10/11 | | 7/6/12 | | | | D. Sallade T. Gonzalez | Advertise, Hire, and Train Staff. | |
| Prepare Final Verified Office of Statewide Health Planning and Development (OSHPD) Reports | 600 | 11/22/10 | 1/14/11 | 53 | 7/14/12 | | | | D. Hysen | Including final as-built drawings. | See construction comment. |
| Staff Certification | 15 | 7/16/12 | | | 7/31/12 | | | | D. Hysen | | The revised planned start date is 09/05/12 and the revised planned complete date is 09/21/12. |
| License Approval | 7 | 8/1/12 | | | 8/8/12 | | | | D. Sallade T. Gonzalez | DPH Survey. DPH Approval. | Licensing approval planned start date adjusted to 8/03/12. Planned completion date remains the same. |
| Activation | 56 | 8/9/12 | | | 10/4/12 | | | | D. Sallade T. Gonzalez | Initial staff occupancy, staff orientation, develop policies and procedures, stock supplies/inventory, placement of Group II equipment. | Preactivation activities planned start date adjusted to 12/01/11 to reflect length of time associated with development of healthcare administration model. |
| Patient Admissions | 56 | 8/9/12 | | | 10/4/12 | | | | D. Sallade T. Gonzalez | Assumes Patients will be admitted at a rate of six per week. | The revised planned start date is 10/02/12 and the revised planned complete date is 11/27/12. |

¹ Court Order(s) filed 3/27/07, Docket No. #2173; filed 4/16/08, Docket No. #2737; and filed 10/20/08, Docket No. #1998
² Special Master shall receive updates on construction every 90 days.

Page 1

Project:    CMC 50 Bed Mental Health Crisis Facility (Licensed Facility)

Lead Person Roster

| Name | | | | Address | |
| Last | First | Agency/Dept. | Street | City | Zip |
|------|-------|-------------|--------|------|-----|
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Gonzalez (A) | Terri | CDCR/CMC | P.O. Box 8101 | San Luis Obispo | 93409 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |

6

Exhibit #3

*Salinas Valley State Prison*
108 Enhanced Outpatient Program-
General Population beds

Project: EOP-GP Mental Health Treatment and Office Space - Facility A[1]
Responsible Person: Deborah Hysen/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: Nacht and Lewis Architects
Location: Salinas Valley State Prison, Soledad (SVSP)
Funding Source: AB 900 (GC 15819.40)

Jay Sturges ITDOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion to Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Schedule and Budget for AB 900 30 Day Funding Request Package | 111 | 10/19/09 | 10/19/09 | | 2/7/10 | 2/8/10 | 1 | | K. Beland | Develop Preliminary Program, Conceptual Scope, Schedule and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | 30 | 2/8/10 | 2/8/10 | | 3/10/10 | 3/12/10 | 2 | | C. Lief | DOF review of funding request package. DOF prepares transmittal letter to legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost And PWB Recognition of Project Scope, Schedule, and Budget | 30 | 3/11/10 | 3/13/10 | 2 | 4/11/10 | 4/11/10 | | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Schedule, Budget. | |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 4/12/10 | 4/12/10 | | 4/12/10 | 4/12/10 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project, Scope, Cost, and Schedule. | |
| Request loan from PMIA | 21 | 3/30/10 | 3/15/10 | (15) | 4/20/10 | 4/20/10 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 1 | 4/21/10 | 4/21/10 | | 4/21/10 | 4/21/10 | | | Director of Finance, State Controller and State Treasurer | Submit Loan Documents to DOF and Obtain PWB Approval for Loan. Submit Loan application for initial design phase to PMIB for Approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 32 | 4/22/10 | 4/22/10 | | 5/24/10 | 6/24/10 | 31 | | J. Cummings | Select A/E firm, Negotiate Scope and Fee, Execute Contract(s). | |
| Preliminary Plans | 187 | 5/25/10 | 6/25/10 | 31 | 11/28/10 | 11/19/10 | (9) | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group I Equipment List, Update Staffing Requirements, Update Project Cost and Schedule. Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | |
| California Environmental Quality Act Compliance (CEQA) | 205 | 4/22/10 | 4/22/10 | | 11/13/10 | 12/8/10 | 26 | | B. Steppy | Select Consultant, Negotiate/Execute Contract, Prepare CEQA Documents, Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | The NOD was filed at the State Clearinghouse on 11/8/10. The 30-Day statute of limitations period expired on 12/9/10 with no public comment or litigation. There is no impact to the overall schedule. |
| JLBC Approval of Preliminary Plans | 45 | 11/29/10 | 11/19/10 | (10) | 1/3/11 | 1/13/11 | | | JLBC | JLBC Approval PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. | |
| PWB Recognition of Preliminary Plans | 45 | 11/30/10 | 11/19/10 | (11) | 1/14/11 | 1/14/11 | | | C. Lief | PWB Approval. | |
| Working Drawings (Construction Documents) | 221 | 1/18/11 | 1/18/11 | | 8/27/11 | | | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List, Update Project Schedule and Cost. Prepare Approval of Working Drawings and Process to Bid Package and Submit to DOF for approval. | Working Drawings are at 75% and are on schedule. |
| Bid and Award | 70 | 8/29/11 | | | 11/7/11 | | | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | |

Page 1

8

| Primary Tasks[2] | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Construction[1] | 630 | 11/8/11 | | | 7/30/13 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record, Construct Project. Purchase and install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call etc.). Punch list. SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. | |
| Hire Staff | 153 | 1/28/13 | | | 6/30/13 | | | | D. Sallade A. Hedgpeth | Advertise, Hire, and Train Staff. | |
| Activation | 63 | 7/31/13 | | | 10/2/13 | | | | D. Sallade A. Hedgpeth | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | |

[1] Court Order filed 1/4/10, Docket No. #3761
[2] Special Master shall receive updates on construction every 90 days.

Page 2

Project:                                          SVSP EOP/GP Housing Unit Conversion & Addition to Mental Health Services Building

## Lead Person Roster

| Name | | Agency/Dept. | Address | | |
|------|------|------|------|------|------|
| Last | First | | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 18 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd | Sacramento | 95827 |
| Hedgpeth | Anthony | CDCR/SVSP | P.O. Box 1020 | Soledad | 93960 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |

10

# Exhibit #4

## *California State Prison, Sacramento*
## Additional Treatment and Office Space

Project: Enhanced Outpatient Program Treatment and Office Space [1]
Responsible Person: Deborah Hysen/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite 5 Sacramento California
Project Architect: Nacht and Lewis Architects
Location: California State Prison, Sacramento (SAC)
Funding Source: General Fund

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

12

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion to Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Architectural/Engineering Contracting | | | | | | 12/16/08 | | | J. Cummings | Select A/E firm, Negotiate Scope and Fee, Execute Contract(s). | |
| Preliminary Plans | 131 | 12/17/08 | 12/17/08 | | 4/27/09 | 4/27/09 | | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule, Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | |
| California Environmental Quality Act Compliance (CEQA) | | | | | | 11/25/08 | | | B. Sleppy | Select Consultant, Negotiate/Execute Contract, Prepare CEQA Documents, Circulate/Comment Period, File Notice of Determination (N. O. D.), Litigation Period. | |
| JLBC Approval of Preliminary Plans | 45 | 5/25/09 | 5/26/09 | 1 | 7/9/09 | 7/9/09 | | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans | |
| Bid and Award | 71 | 12/15/09 | 10/14/10 | 303 | 2/24/10 | 10/27/10 | 245 | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | |
| Construction [2] | 390 | 2/25/10 | 10/28/10 | 245 | 3/22/11 | | | | P. Scott IWL | Mobilize Construction Contractor, Construction Manager, Inspector of Record, Construct Project, Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. | The 2010/11 Budget was signed on 10/08/10 and PWB approved the use of IWL for this project on 10/11/10. DOF approved the transfer of funds on 10/27/10. The new start date for construction is 10/28/10 and the planned completion date is 11/22/11. Construction is approximately 26% complete. |
| Hire Staff | 153 | 9/22/10 | 5/23/11 | 243 | 2/22/11 | | 90 | | D. Sallade T. Virga | Advertise, Hire and Train Staff. | The new planned Hire Staff start date is 5/23/11 and the new planned complete date is 10/21/11. |
| Activation | 61 | 3/23/11 | 5/23/11 | 61 | 5/23/11 | | | | D. Sallade T. Virga | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | The new planned Activation start date is 11/23/11 and the new planned complete date is 01/23/12. |

[1] Court Order(s) filed 7/8/09, Docket No. #2861; Stipulation filed 7/1/09, Docket No. #2860, order filed 10/18/07, Docket No. #2461
[2] Special Master shall receive updates on construction every 90 days.

Project:

SAC Enhanced Outpatient Program Treatment and Office Space

## Lead Person Roster

| Name | | Agency/Dept. | Address | | |
|------|------|--------------|---------|------|------|
| Last | First | | Street | City | Zip |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Scott | Paul | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Virga (A) | Tim | CDCR/SAC | P.O. Box 71 | Represa | 95671 |

13

14

**Exhibit #5**

*California State Prison, Sacramento*
**152 Psychiatric Services Unit beds**

| | | |
|---|---|---|
| Project: | 152 Psychiatric Services Unit (PSU) Treatment and Office Space [1] | Report Period Ending: May 23, 2011 |
| Responsible Person: | Deborah Hysen/CDCR | |
| Address of Resp. Person: | 9838 Old Placerville Rd., Suite B Sacramento California | Jay Sturges /DOF |
| Project Architect: | Cannon Design | 915 L Street, Sacramento California 95814 |
| Location: | California State Prison, Sacramento | |
| Funding Source: | AB 900 (GC 15819.40) | |

| Primary Task | Duration (Cal. Days) | Planned Start | Actual Start | Days Behind (Ahead) | Planned Complete | Actual Complete | Days Behind (Ahead) | Certification to Completion SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 114 | 8/17/09 | 8/17/09 | | 12/9/09 | 12/9/09 | | | K. Beland | Develop Preliminary Program, Conceptual Scope, Schedule, and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | 33 | 12/10/09 | 12/10/09 | | 1/12/10 | 1/12/10 | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule and Cost | 30 | 1/13/10 | 1/15/10 | 2 | 2/12/10 | 2/14/10 | 2 | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 2/16/10 | 2/16/10 | | 2/16/10 | 2/16/10 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | |
| Request Loan from PMIA | 20 | 1/27/10 | 1/27/10 | | 2/16/10 | 2/16/10 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 1 | 2/17/10 | 2/17/10 | | 2/17/10 | 2/17/10 | | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 90 | 2/18/10 | 2/18/10 | | 5/19/10 | 8/13/10 | 86 | | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | Additional A/E scope extended negotiations and contract development. Negotiations are complete and the contract was executed on 8/13/10. |
| Preliminary Plans | 248 | 5/20/10 | 8/16/10 | 88 | 1/23/11 | 2/15/11 | 23 | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review. Develop Initial Group II Equipment List. Update Staffing Requirements. Update Project Cost and Schedule. Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | The A/E design recovery schedule can recover 58 days in PP's. This will target the April 2011 PWB for approval of the PP's. PP's were completed 02/15/11. Mitigation of the remaining delay will be evaluated in the WD and construction phases. CDCR anticipates no impact to the overall schedule. |
| California Environmental Quality Act Compliance (CEQA) | 270 | 2/18/10 | 2/18/10 | | 11/15/10 | 12/21/10 | 36 | | B. Steppy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination. (N. O. ). Litigation Period. | The NOD was filed with the State Clearing House on 11/16/10 and the litigation period expired on 12/21/10. There is no impact to the overall schedule. |
| JLBC Approval of Preliminary Plans | 45 | 1/24/11 | 2/16/11 | 23 | 3/10/11 | 4/7/11 | 28 | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. | The JLBC submittal was released on 2/18/11. |
| PWB Approval of Preliminary Plans | 45 | 1/25/11 | 2/7/11 | 23 | 3/11/11 | 4/8/11 | 28 | | C. Lief | PWB Approval. | PP's were approved by PWB on 4/8/2011. |

Page 1

15

16

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days Behind (Ahead) | Planned Complete | Actual Complete | Days Behind (Ahead) | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Working Drawings (Construction Documents) | 180 | 3/14/11 | 4/11/11 | 28 | 9/10/11 | | | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List, Update Project Schedule and Cost, Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to SCR and obtain PWB approval for loan for the next 12 months. Submit loan application to PMIB for approval. | WD commenced 4/11/11 and are 30% complete and on schedule. |
| Bid and Award | 80 | 9/12/11 | | | 12/1/11 | | | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder. Request DOF Approval to Award, Award Contract. | |
| Construction² | 480 | 12/2/11 | | | 3/26/13 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record. Construct Project, Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | |
| Hire Staff | 150 | 9/27/12 | | | 2/24/13 | | | | D. Sallade / T. Virga | Advertise, Hire and Train Staff. | |
| Activation | 60 | 3/27/13 | | | 5/26/13 | | | | D. Sallade / T. Virga | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | |

¹ Court Order filed 1/4/10, Docket No #3761
² Special Master shall receive updates on construction every 90 days.

Page 2

Project:

SAC Psychiatric Services Unit (PSU) Treatment and Office Space

**Lead Person Roster**

| Name | | Agency/Dept. | Address | | |
|------|------|------|------|------|------|
| Last | First | | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Chiang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/OCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Virga (A) | Tim | CDCR/SAC | P.O. Box 71 | Represa | 95671 |

17

18

# Exhibit #6

## *California Medical Facility*
## Enhanced Outpatient Program
## Additional Treatment and Office Space

Project: Mental Health Treatment and Office Space[1]
Responsible Person: Deborah Hysen/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: Nacht and Lewis Architects
Location: California Medical Facility, Vacaville (CMF)
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion to Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | | | | | | | | | | Develop Preliminary Program, Conceptual Scope, Schedule and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | | | | | | 3/13/09 | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 3/25/09 | 3/25/09 | | 4/24/09 | 5/7/09 | 13 | | C. Lief | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | LAO had concerns with building costs. |
| PWB Recognition of Project Scope, Cost, and Schedule | | 5/8/09 | 5/8/09 | | 5/8/09 | 5/8/09 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | Reduced costs at PWB per LAO concerns. |
| Request Loan from PMIA | | | | | | 3/26/09 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 63 | 4/15/09 | 4/15/09 | | 4/15/09 | 6/12/09 | 58 | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | Loan request was made on 5/20/09 and was denied by PMIB on a 2-1 vote. Executive Order E 0809-09 authorized General Fund loan for Preliminary Plans (PP). On 7/15/09 PMIB approved the loan for PP funding, and General Fund loan will be retired. There is no impact to design or overall schedule. |
| Architectural/Engineering Contracting | 82 | 6/18/09 | 6/18/09 | | 9/8/09 | 9/17/09 | 9 | | J. Cummings | Select A/E firm, Negotiate Scope and Fee, Execute Contract(s). | Contract executed 09/17/09. No impact to overall schedule. |
| Preliminary Plans | 217 | 9/9/09 | 9/17/09 | 8 | 4/14/10 | 5/25/10 | 41 | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule, Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | Contract execution delayed start of PP and there is no impact to the overall schedule. PP phase is complete. |
| California Environmental Quality Act Compliance (CEQA) | 235 | 9/9/09 | 8/5/09 | (35) | 5/2/10 | 9/21/09 | (223) | | B. Sleppy | Select Consultant, Negotiate/Execute Contract, Prepare CEQA Documents, Circulate/Comment Period, File Notice of Determination (N. O. D.), Litigation Period. | Comment period complete, no protests filed. Accelerated time was gained by completing a less restrictive environmental document (Notice of Exemption v/s Initial Study/ Mitigated Negative Declaration). |
| JLBC Approval of Preliminary Plans | 45 | 4/26/10 | 5/27/10 | 31 | 6/10/10 | 7/9/10 | 29 | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans | The JLBC submittal was released on 05/27/10. There is no impact to the overall schedule. |
| PWB Approval of Preliminary Plans | 45 | 4/27/10 | 5/27/10 | 30 | 6/11/10 | 7/12/10 | 31 | | C. Lief | PWB Approval. | PP's were approved by PWB on 07/12/10. |
| Working Drawings (Construction Documents) | 187 | 6/14/10 | 7/13/10 | 29 | 12/18/10 | 12/18/10 | | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.). Finalize Group II Equipment List, Update Project Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | WD's commenced on 07/13/10. The design schedule recovery plan to accelerate WD's are complete. CDCR has hired a CM to review the construction documents for acceleration opportunities. |

20

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Behind)(Ahead) | Planned Complete | Actual Complete | Days (Ahead)Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bid and Award | 70 | 12/20/10 | 12/20/10 | | 2/28/11 | 3/10/11 | 10 | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | The pre-bid conference was held of 01/11/11. Bids were opened on 1/27/11. |
| Construction² | 720 | 3/1/11 | 3/11/11 | 10 | 2/18/13 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record, Construct Project. Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.) Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval | The NTP was issued 03/11/11 and the revised completion date is 12/30/12. The contractor has completed mobilization; asbestos abatement and site demolition are underway. The project is approximately 1% complete. |
| Hire Staff | 153 | 8/19/12 | | | 1/19/13 | | | | D. Sallade K. Dickenson | Advertise, Hire, and Train Staff. | Based on the revised construction completed date, revised hiring start and complete dates are being evaluated. |
| Activation | 59 | 2/19/13 | | | 4/19/13 | | | | D. Sallade K. Dickenson | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | Based on the revised activation start and complete dates are being evaluated. |

¹ Court Order(s) filed 10/7/08, Docket No. #3072, and filed 10/18/07, Docket No. #2461
² Special Master shall receive updates on construction every 90 days.

Project:

CMF Mental Health Treatment and Office Space

## Lead Person Roster

| Name | | Agency/Dept. | Address | | |
|------|------|------|------|------|------|
| Last | First | | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 18 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Dickinson | Kathleen | Warden, CMF | 1600 California Drive | Vacaville | 95696 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Steppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |

21

22

# Exhibit #8

*California Medical Facility*
**64-bed Intermediate Care Facility
for High Custody Inmates**

Project: 64 Bed Intermediate Care Facility (Licensed Facility) [1]
Responsible Person: Deborah Hysen
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: Nacht and Lewis Architects
Location: California Medical Facility, Vacaville (CMF)
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Date: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Certification to SM Completion | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PWB Recognition of Project Scope, Cost, and Schedule. | | 4/10/09 | 4/10/09 | | 4/10/09 | 4/10/09 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule | |
| Request Loan from PMIA | | 4/1/09 | 4/1/09 | | 4/1/09 | 4/1/09 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 63 | 4/15/09 | 4/15/09 | | 4/15/09 | 6/12/09 | 58 | | Director of Finance State Controller and State Treasurer | Submit Loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | Loan request was made on 5/20/09 and was denied by PMIB on a 2-1 vote. Executive Order E 08/09-136 authorized General Fund loan for Preliminary Plans. On 7/15/09 PMIB approved the loan for PP funding, and the General Fund loan will be retired. Design and construction schedule was revised based on 6/12/09 funding. There is no impact to overall schedule. |
| Architectural/Engineering Contracting | 2 | 6/17/09 | 6/12/09 | (5) | 6/19/09 | 7/9/09 | 20 | | J. Cummings | Select A/E firm, Negotiate Scope and Fee, Execute Contract(s) | Contract execution delayed due to year end work load issues. There is no impact to overall schedule. |
| Preliminary Plans | 422 | 9/8/07 | 9/8/07 | | 11/3/08 | 11/3/08 | | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review. Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule. Prepare JLBC and PWB Submittal Packages | Preliminary Plans funded in the 2006-07 Budget Act. |
| California Environmental Quality Act Compliance (CEQA) | | 3/5/09 | | | 3/5/09 | 3/5/09 | | | B. Sleppy | Select Consultant, Negotiate/Execute Contract, Prepare CEQA Documents, Circulate/Comment Period, File Notice of Determination (N, O, D.), Litigation Period. | |
| JLBC Approval of Preliminary Plans | 45 | 10/30/08 | 10/20/08 | | 12/14/08 | 12/14/08 | | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. | |
| PWB Approval of Preliminary Plans | | 4/10/09 | 4/10/09 | | 4/10/09 | 4/10/09 | | | C. Lief | PWB Approval. | Preliminary Plan approval occurred concurrent with the establishment of scope, cost, and schedule. |
| Working Drawings (Construction Documents) | 204 | 6/22/09 | 7/10/09 | 18 | 1/12/10 | 1/26/10 | 14 | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group III Equipment List, Update Project Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for Approval. Submit loan documents to DOF and obtain PWB approval for loan by the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | Contract execution delayed at start of working drawings. Working drawings are complete. There is no impact to the overall schedule. |
| Bid and Award | 90 | 1/13/10 | 2/3/10 | 21 | 4/13/10 | 4/15/10 | 2 | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | Bid and Award delayed due to SFM approval of working drawings. Bids opened on 3/16/10 and NTP issued 04/15/10. There is no impact to the overall schedule. |

Page 1

23

| Primary Tasks[1] | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Construction[1] | 841 | 4/14/10 | 4/15/10 | 1 | 8/2/12 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record. Construct Project. Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.). Punch list. SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PWB for approval. | The overall percentage of completion is 63%. The contractor has been granted a 28-day non-compensable time extension as resolution of the water line conflicts. The revised project completion date is 10/25/11. Project acceleration will not be pursued at this time based on limited project resources to complete the building and timing constraints associated with licensing activities. |
| Hire Staff | 485 | 3/6/12 | 4/20/10 | (310) | 7/3/12 | | | | S. Price, K. Dickinson | Advertise, Hire, and Train Staff. | The projected Hire Staff start date has been revised to 04/30/10 and ends on 08/28/11. |
| Prepare Final Verified Office of Statewide Health Planning and Development (OSHPD) Reports | 841 | 4/14/10 | 4/15/10 | 1 | 8/2/12 | | | | D. Hysen | Including final as-built drawings. | The revised completion date is 10/25/11. |
| Self Certification | 15 | 8/3/12 | | | 8/18/12 | | | | D. Hysen | | The revised start date is 10/26/11 and revised completion date is 11/15/11. |
| License Approval | 7 | 8/19/12 | | | 8/26/12 | | | | S. Price, D. Sallade, K. Dickinson | DPH Survey, DPH Approval. | Licensing approval planned start date adjusted to 11/28/11. The planned completion date adjusted to 12/22/2011. |
| Activation | 92 | 8/27/12 | | | 11/27/12 | | | | S. Price, K. Dickinson, D. Sallade | • Equipment identification, approval and procurement beginning 12/22/2011 with both CMF Mental Health Crisis Bed and DMH staff. • Policy and procedure development/review, and approval initiated 2/22/2011 with both CMF Mental Health Crisis Bed and DMH staff. • Formulate infrastructure and processes for support services such as housekeeping, dietary, laundry and pharmacy beginning 3/7/2011 with both CMF Mental Health Crisis Bed and DMH staff. • DMH Activation Activities starting 8/27/11: initial staff occupancy, staff orientation, stock supplies/inventory, cleaning, licensing preparation, overall patient program readiness. • Placement of Group II equipment by CMF Mental Health Crisis Bed and DMH staff as appropriate starting 8/27/2011. | Facility Activation planned start date adjusted to 01/02/11 to reflect length of time associated with development of healthcare administration model. Upon conditional occupancy approval from the SFM projected to be 9/26/11, the Activation Team and DMH will initiate activation activities. |
| Patient Admissions | 92 | 8/27/12 | | | 11/27/12 | | | | S. Price, K. Dickinson | Assumes Patients will be admitted at a rate of six per week. | The projected Patient Admission start date is revised to 12/5/11 with a last patient date of 2/17/2012. |

[1] Court Order filed 3/11/07, Docket No. #2154

[2] Special Master shall receive updates on construction every 90 days.

Project:

CMF 64 Bed Intermediate Care Facility (Licensed Facility)

**Lead Person Roster**

| Name | | Agency/Dept. | Address | | |
|------|------|------|------|------|------|
| Last | First | | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jack | CDCR/FPC&M | 9838 Old Placerville Rd | Sacramento | 95827 |
| Dickinson | Kathleen | CDCR/CMF | 1600 California Drive | Vacaville | 95896 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Ro. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Price (A) | Sterling | DMH | PO Box 1080 | Soledad | 93960 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |

25

# Exhibit #9

## *California State Prison, Los Angeles County*
### Treatment Space for Enhanced Outpatient Program

**Project:** Enhanced Outpatient Program Treatment and Office Space [1]
**Responsible Person:** Deborah Hysen/CDCR
**Address of Resp. Person:** 9838 Old Placerville Rd., Suite B Sacramento California
**Project Architect:** Nacht and Lewis Architects
**Location:** California State Prison, Los Angeles County, Lancaster (LAC)
**Funding Source:** AB 900 (GC 15819.40)

**Report Period Ending: May 23, 2011**

Jay Sturges /DOF
915 L Street, Sacramento California 95814

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Schedule and Cost for AB 900 30 Day Funding Request Package | | | | | | | | | | Develop Preliminary Program, Conceptual Scope Schedule and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter/ Funding Request. Submit to DOF for approval of initial. | |
| Review Funding Request Package | 46 | 4/24/09 | 4/24/09 | (1) | 4/23/09 | 4/23/09 | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 6/10/09 | 6/9/09 | | 6/9/09 | 6/9/09 | | | C. Lief | DOF Review and Submission to the Legislature, Legislative Approval of Scope, Schedule, Cost. | |
| PWB Recognition of Project Scope, Cost, and Schedule | | 7/10/09 | 7/14/09 | 4 | 7/10/09 | 7/14/09 | 4 | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | PWB meeting rescheduled to July 14. There is no impact to overall schedule. |
| Request Loan from PMIA | 67 | 5/6/09 | 5/6/09 | | 7/11/09 | 7/11/09 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | | 7/15/09 | 7/15/09 | | 7/15/09 | 7/15/09 | | | Director of Finance, State Controller and State Treasurer | Submit Loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 82 | 7/16/09 | 7/16/09 | | 10/6/09 | 10/22/09 | 16 | | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | Contract executed 10/22/09. No impact to overall schedule. |
| Preliminary Plans | 229 | 7/07/09 | 10/23/09 | 16 | 5/24/10 | 5/25/10 | 1 | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review. Develop Initial Group II Equipment List. Update Staffing Requirements. Update Project Cost and Schedule. Prepare JLBC 45-day notice and PWB Preliminary Plan Approval Submittal Package. | Contract execution delayed start of PP. PP phase is complete. |
| California Environmental Quality Act Compliance (CEQA) | 235 | 7/07/09 | 8/5/09 | (63) | 5/30/10 | 9/21/09 | (251) | | B. Sleppy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | Comment period complete, no protests filed. Accelerated time was gained by completing a less restrictive environmental document (Notice of Exemption vs. Initial Study/Mitigated Negative Declaration). |
| JLBC Approval of Preliminary Plans | 45 | 5/24/10 | 5/26/10 | 2 | 7/8/10 | 7/8/10 | | | JLBC | JLBC Approval. PC 7000 provides the JLBC 45-day review period before PWB can approve preliminary plans. | The JLBC submittal was released on 05/26/10. There is no impact to the overall schedule. |
| PWB Approval of Preliminary Plans | 45 | 5/25/10 | 5/26/10 | 1 | 7/9/10 | 7/12/10 | 3 | | C. Lief | PWB Approval. | PP were approved by PWB on 07/12/10. |
| Working Drawings (Construction Documents) | 203 | 7/12/10 | 7/15/10 | 3 | 1/31/11 | 11/29/10 | (63) | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List, Update PWB Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | WD's are complete and were approved by the SFM 11/29/10. The WD's and a request to use the IWL program for construction were approved by DOF on 01/25/11. |
| Bid and Award | 80 | 2/1/11 | N/A | N/A | 4/22/11 | N/A | N/A | | K. Beland | Advertise for Bid, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder. Request DOF Approval to Award. Award Contract. | This task is no longer necessary with the use of IWL to perform construction. See WD comment. |

Page 1

27

28

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days Behind (Ahead) | Planned Complete | Actual Complete | Days Behind (Ahead) | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Construction[2] | 440 | 4/25/11 | 3/14/11 | (42) | 7/8/12 | | | | K. Beland IWL | Mobilize Construction Contractor, Construction Manager, Inspector of Record. Construct Project. Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | Construction commenced 03/14/11 and is approximately 12% complete. |
| Hire Staff | 151 | 1/9/12 | | | 6/8/12 | | | | D. Sallade B. Cash | Advertise, Hire and Train Staff. | |
| Activation | 65 | 7/9/12 | | | 9/12/12 | | | | D. Sallade B. Cash | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | |

1 Court Order(s) filed 10/18/07, Docket No. #2461; filed 10/20/06, Docket No. #1998
2 Special Master shall receive updates on construction every 90 days.

Project:

LAC Enhanced Outpatient Program Treatment and Office Space

**Lead Person Roster**

| Name | | Agency/Dept. | Address | | |
|---|---|---|---|---|---|
| Last | First | | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Cash (A) | Brenda | CDCR/LAC | 44750 60th Street West | Lancaster | 93536 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Scott | Paul | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Cummings | Jack | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |

29

30

# Exhibit #10

## *California State Prison, Corcoran*
## Treatment and Office Space for Administrative Segregation - Enhanced Outpatient Program

Project: EOP-ASU Treatment and Office Space (for 45 bed EOP-ASU) [1]
Responsible Person: Deborah Hysen/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: HDR
Location: California State Prison, Corcoran
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Certification to Completion SW | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 87 | 9/13/09 | 9/13/09 | | 12/9/09 | 12/9/09 | | | K. Beland | Develop Preliminary Program, Conceptual Scope, Schedule, and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval | |
| Review Funding Request Package | 33 | 12/10/09 | 12/10/09 | | 1/12/10 | 1/12/10 | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 1/13/10 | 1/15/10 | 2 | 2/12/10 | 2/14/10 | 2 | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 2/16/10 | 2/16/10 | | 2/16/10 | 2/16/10 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | |
| Request Loan from PMIA | 20 | 1/27/10 | 1/27/10 | | 2/16/10 | 2/16/10 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 1 | 2/17/10 | 2/17/10 | | 2/17/10 | 2/17/10 | | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 90 | 2/18/10 | 2/18/10 | | 5/19/10 | 8/6/10 | 79 | | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | Additional A/E scope extended negotiations and contract development. Negotiations are complete and the contract was executed on 8/6/10. |
| Preliminary Plans | 220 | 5/20/10 | 8/6/10 | 78 | 12/26/10 | 1/23/11 | 28 | | K. Beland | Clinical/Architectural Programming. Schematic Design. Design Development. Design Review. Develop Initial Group II Equipment List. Update Staffing Requirements. Update Project Cost and Schedule. Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | The A/E design recovery schedule recovered 45 days of the 78 days lost in the execution of the contract. PP's are complete. Mitigation of the remaining delay will be recovered in the WD and construction phases. CDCR anticipates no impact to the overall schedule. |
| California Environmental Quality Act Compliance (CEQA) | 270 | 2/18/10 | 2/18/10 | | 11/15/10 | 3/29/10 | (231) | | B. Sleppy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents (Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | Notice of Exemption officially filed on 02/22/10. Statute of limitations ended 3/29/10 with no comments. Accelerated time was gained by completing a less restrictive environmental document (Notice of Exemption vs. Initial Study/ Mitigated Negative Declaration). |
| JLBC Approval of Preliminary Plans | 45 | 12/27/10 | 1/24/11 | 28 | 2/10/11 | 3/10/11 | 28 | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans | |
| PWB Approval of Preliminary Plans | 45 | 12/28/10 | 1/25/11 | 28 | 2/11/11 | 3/11/11 | 28 | | C. Lief | PWB Approval. | |

Page 1

31

32

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Working Drawings (Construction Documents) | 203 | 2/14/11 | 3/14/11 | 28 | 9/5/11 | | | | K. Beland | Complete Construction Documents. Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List. Update Project Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | WD's commenced 03/14/11 and are approximately 34% complete and on schedule. |
| Bid and Award | 73 | 9/6/11 | | | 11/18/11 | | | | K. Beland | Advertise for Bids. Hold Pre-Bid Conference. Receive Bids. Verify Lowest Responsive Bidder. Request DOF Approval to Award. Award Contract. | |
| Construction[2] | 450 | 11/21/11 | | | 2/13/13 | | | | K. Beland | Mobilize Construction Contractor; Construction Manager; Inspector of Record. Construct Project. Purchase and Install Group II Equipment. Testing of Systems (Fire alarm, Nurse Call, etc.). Punch list. SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | |
| Hire Staff | 150 | 8/17/12 | | | 1/14/13 | | | | D. Sallade R. Lopez | Advertise, Hire, and Train Staff. | |
| Activation | 60 | 2/14/13 | | | 4/15/13 | | | | D. Sallade R. Lopez | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | |

[1] Court Order filed 1/4/10, Docket No. #3761

[2] Special Master shall receive updates on construction every 90 days.

Page 2

33

Project:

COR ASU/EOP Treatment and Office Space

## Lead Person Roster

| Name | | Agency/Dept. | Street | Address | |
|------|-------|--------------|--------|---------|-----|
| Last | First | | | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Lopez | Raul | Warden (A), CSP COR | 4001 King Street | Corcoran | 93212 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |

34

# Exhibit #11

## *California Institution for Women*
### 45-bed Acute/Intermediate Care Facility

Project: 45 Bed Acute/Intermediate Care Facility (Licensed Facility) [1]
Responsible Person: Deborah Hysen/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: Nacht and Lewis Architects
Location: California Institution of Women, Chino (CIW)
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion SM | Certification to Completion SM? | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Schedule and Cost for AB 900 30 Day Funding Request Package | | | | | | | | | | | Develop Preliminary Program, Conceptual Scope, Schedule, and Cost, Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | | 4/15/09 | 4/15/09 | | 4/29/09 | 4/14/09 | | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 4/29/09 | 4/29/09 | | 5/29/09 | 5/29/09 | | | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Schedule, Cost. | |
| PWB Recognition of Project Scope, Cost, and Schedule | | 6/12/09 | 6/12/09 | | 6/12/09 | 6/12/09 | | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | |
| Request Loan from PMIA | 21 | 4/23/09 | 4/23/09 | | 5/20/09 | 5/20/09 | | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | | 6/17/09 | 6/17/09 | | 6/17/09 | 6/17/09 | | | | Director of Finance, State Controller and State Treasurer | Submit Loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 2 | 6/17/09 | 6/17/09 | | 6/19/09 | 7/14/09 | 25 | | | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | Contract execution delayed due to year end work load issues. There is no impact to the overall schedule. |
| Preliminary Plans | 663 | 11/15/06 | 11/15/06 | | 9/8/08 | 9/8/08 | | | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule, Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | Planned complete date for PP that was originally filed with the court was incorrect. The date listed now, 9/8/08, is the correct date. |
| California Environmental Quality Act Compliance (CEQA) | | | | | | 9/27/07 | | | | K. Beland | Select Consultant. Negotiate Scope. Execute Contract. Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | |
| JLBC Approval of Preliminary Plans | 45 | 9/9/08 | 9/9/08 | | 10/24/08 | 10/24/08 | 84 | | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. | |
| PWB Approval of Preliminary Plans | | 6/12/09 | 6/12/09 | | 6/12/09 | 6/12/09 | | | | C. Lief | PWB Approval. | Preliminary plan approval occurred concurrent with the establishment of scope, cost, and schedule. |
| Working Drawings (Construction Documents) | 170 | 6/22/09 | 7/15/09 | 23 | 12/9/09 | 3/3/10 | 84 | | | K. Beland | Complete Construction Documents. Obtain Regulatory Reviews (SFM, ADA, etc.). Finalize Group II Equipment List. Update Project Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | Delays are due to contract execution. CSFM stamped and DOF approved WD's and Proceed to Bid on 03/03/10. There is no impact to the overall schedule. |
| Bid and Award | 69 | 12/10/2009 | 3/4/10 | 84 | 2/17/10 | 5/20/10 | 92 | | | K. Beland | Advertise for Bids. Hold Pre-Bid Conference. Receive Bids. Verify Lowest Responsive Bidder. Request DOF Approval to Award. Award Contract. | Bid and Award delayed due to contract execution and SFM review and approval of WD. The bid opening was 04/29/10. There is no anticipated impact to the overall schedule. Further, the Construction Manager analysis of bid documents recommends reducing the construction timeline from 641 days to 540 days. The construction contract was awarded on 5/20/10. |

36

| Primary Tasks[2] | Duration (Cal. Days) | Planned Start | Actual Start | Days (Behind) (Ahead) | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Construction[2] | 661 | 2/18/10 | 5/21/10 | 92 | 12/11/11 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record, Construct Project. Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | The 540 days construction duration still meets the 12/11/11 completion. The overall percentage of completion is 48%. Discussions with contractor regarding the time impact analysis are underway and will be reported out next month. |
| Hire Staff | 364 | 11/12/10 | 12/1/10 | 19 | 11/1/11 | | | | D. Sallade G. Garcia | Advertise, Hire, and Train Staff. | Advertisement for staff began 12/1/10. CDCR is seeking hiring freeze exemptions for critical positions and is evaluating the impact of Executive Order B-3-11 on the project's staff hiring, license approval, and activation timeframes. |
| Prepare Final Verified Office of Statewide Health Planning and Development (OSHPD) Reports | 661 | 2/18/10 | 5/21/10 | 92 | 12/11/11 | | | | D. Hysen | Including final as-built drawings. | See comment on Construction above. |
| Self Certification | 15 | 12/12/11 | | | 12/27/11 | | | | D. Hysen | | |
| License Approval | 9 | 12/28/11 | | | 1/6/12 | | | | D. Sallade G. Garcia | DPH Survey, DPH Approval. | Licensing approval planned start date adjusted to 01/04/12. Planned completion date remains the same. |
| Activation | 60 | 1/9/12 | | | 3/9/12 | | | | D. Sallade G. Garcia | Initial staff occupancy, staff orientation, develop policies and procedures, stock supplies/inventory, placement of Group II equipment. | Activation planned start date adjusted to 03/01/11 to reflect length of time associated with development of healthcare administration model. Planned completion date remains the same. |
| Patient Admissions | 60 | 1/9/12 | | | 3/9/12 | | | | D. Sallade G. Garcia | Assumes Patients will be admitted at a rate of six per week. | |

[1] Court Order filed 3/1/07, Docket No. #2154

[2] Special Master shall receive updates on construction every 90 days.

Project:

CIW 45 Bed Acute/Intermediate Care Facility (Licensed Facility)

Lead Person Roster

| Name | | | Address | | |
|------|-------|--------------|---------------------------|------------|-------|
| Last | First | Agency/Dept. | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jack | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Garcia | Guillermo | CDCR/CIW | 16756 Chino-Corona Rd. | Corona | 92878 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Jones-Brown | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/OCHCS | 501 J Street | Sacramento | 95814 |

37

38

# Exhibit #13

## *Consolidated Care Center / California Health Care Facility*

39

Project: California Health Care Facility (CHCF) / Consolidated Care Facility (CCC) [1,2]
Responsible Person: Chris Meyer/CCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: Kitchell CEM  (Criteria Architect)
Location: Stockton, CA
Funding Source: AB 900 (GC 15819.40)

Jay Sturges / DOF
915 L Street, Sacramento California 95814

Report Date: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days Ahead/(Behind) | Planned Complete | Actual Complete | Days Ahead/(Behind) | % Completion to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 33 | 11/9/09 | 11/9/09 | | 12/9/09 | 12/9/09 | | | M. Meredith/ CPR | Develop Preliminary Program, Conceptual Scope, Schedule and Cost. Develop Preliminary Schedule for AB 900 30 Day Letter Funding Request. Submits to DOF for approval | |
| DOF Review and Approval of Design-Build approach | | | | | 12/7/09 | 12/7/09 | | | C. Lief | Pursuant to Government Code Section 14661.1 | |
| Review Funding Request Package | 32 | 12/10/09 | 12/10/09 | | 1/15/10 | 1/14/10 | 3 | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 1/12/10 | 1/15/10 | 3 | 2/11/10 | 6/11/10 | 120 | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule | AB 552 was signed into law and the project was placed on the June PWB agenda. |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 2/16/10 | 6/14/10 | 118 | 2/16/10 | 6/14/10 | 118 | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule | |
| Request Loan from PMIA | 20 | 1/27/10 | 1/13/10 | (14) | 2/16/10 | 6/16/10 | 119 | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA) | |
| Approval of PMIA Funding | 1 | 2/17/10 | 6/16/10 | 119 | 2/17/10 | 6/16/10 | 119 | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often until the sale of lease revenue bonds. | |
| California Environmental Quality Act Compliance (CEQA) | 31 | 10/20/09 | 10/19/09 | (1) | 11/20/09 | 6/29/10 | 221 | | B. Sleppy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | NOD filed 10/18/09. litigation period ended 11/18/09. Posted filed 11/17/09. Case was removed to Federal court 11/25/09. The litigation has been dismissed by an order adopted by Judge Lawrence Karlton on 06/29/10. There is no remaining CEQA litigation pending against this project. |
| Select Bridging Architect | 18 | 2/16/10 | 6/17/10 | 119 | 3/8/10 | 8/2/10 | 147 | | M. Meredith | Select A/E firm. Negotiate Scope and Fee. Execute Contract. Assumes CM/Bridging Architect selected from pre-approved list. | PRCM in-house A/E design for IWL work for the IWL site prework. DLR is A/E for the abatement/demolition design. Kitchell CEM is selected as the Bridging/Criteria Architect. The combination of phasing of multiple bid packages, acceleration of design and activation will mitigate the delay in the overall schedule. |
| Prepare Bridging Document | 136 | 2/16/10 | 6/17/10 | 121 | 7/2/10 | 2/7/11 | 220 | | M. Meredith | Includes development of basis of design, pre-qualification of Design-Build entities preparation of Bridging Documents including performance criteria | RFPs for abatement/demolition were approved at the 12/13/10 PWB. IWDs are complete and were released for bid on 07/11/11. The Design-Build package # 1 RFP is complete. Design-Build package #2 is complete and the RFP was issued on 02/20/11. The combination of phasing of multiple bid packages, acceleration of design and activation will mitigate the delay in the overall schedule. |
| PWB Approval | 45 | 7/2/10 | 12/13/10 | 164 | 1/14/11 | 1/14/11 | 151 | | C. Lief | PWB Approval of performance criteria | The Design-Build criteria was approved at the 12/14/11 PWB. |

40

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Projected Completion to SM Completion | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Design-Build Competition/Contractor Selection | 90 | 8/16/10 | 9/27/10 | 42 | 11/14/10 | | | 190 | M. Meredith | Selection of Design-Build entities. Firms submit Design-Build proposals. CDCR evaluates and selects contractor. | The Joint Venture of Grand/Hensel Phelps was announced on 4/8/2011 as the Design-Builder for DB #1 and contract award process is underway. DCR approval of contract award is targeted for May 2011. RWB project loan increase was approved May 16, 2011. The NTP for DB #1 is targeted for early June 2011. Proposals for DB #2 were received on 5/20/2011. This activity was delayed to conduct value engineering in order to comply with the contract stipulated sum. The targeted NTP for DB #2 is July 2011. Efforts such as phasing multiple bid packages, acceleration of design and activation activities are ongoing in order to mitigate any impact to the overall schedule. |
| Award Design-Build Contract | 28 | 11/14/10 | 9/27/10 | 190 | 12/12/10 | | 192 | | J. Cummings | Issue Notice to Proceed. Execute contract. | See comment on Design-Build Competition/Contractor Selection |
| Design-Build Duration ** | 816 | 12/12/10 | 4/4/11 | 113 | 3/7/13 | | | | M. Meredith | Mobilize Design-Build Entity. Construction Manager. Inspector of Record. Finalize programming and complete drawings. Construct Project. Purchase and install Group II Equipment. Testing of Systems (Fire Alarm, Nurse Call, etc.). Punch list. SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. This includes construction of the Design-Build portion of the project. | The NTP for the abatement and demolition contract was issued on 4/4/2011 and is targeted to complete in September 2011. The targeted start date for DB #1 is June 2011. The targeted start date for DB #2 is August 2011 and completion is the end of July 2013. The targeted start date for DB #2 is August 2011 and completion is the end of July 2013. Efforts such as phasing multiple bid packages, acceleration of design and activation activities are ongoing in order to mitigate any impact to the overall schedule. |
| Activation Planning/Workforce Development/Hire Staff/Procurement | 1041 | 2/17/10 | 8/16/10 | 118 | 12/24/12 | | | | D. Sallate C. Radavsky K. Baker | Schedule development, policy and procedures, workforce planning, activities, hire and train staff, group II/III equipment planning and procurement, long lead items acquisition, contracts/vendors, labor relations, training. This will impact DMH/DDS/CPHCS offices and activation has to be coordinated between the three departments. DMH does not have the lead on this but will provide technical assistance and comply with the agreed upon dates. | The coordination of phasing of multiple bid packages, acceleration of design and activation will mitigate the delay to the overall schedule. |
| Preparation of Final Verified Office of Statewide Health Planning and Development (OSHPD) Reports | 816 | 12/13/10 | | 161 | 3/8/13 | | | | M. Meredith | Including final as-built drawings. | See comment on Design-Build Competition/Contractor Selection |
| Self-Certification | 7 | 3/8/13 | | | 3/15/13 | | | | C. Meyer | | |
| Licensing Application & Approval | 60 | 1/11/13 | | | 3/12/13 | | | | D. Sallate C. Radavsky K. Baker | OPH initial licensing survey. Will license entire facility, suspend, then activate beds tied to a staff activation schedule. | Assume sufficient staffing to prepare for licensure and OPH Survey, etc. |
| Activation | 60 | 1/11/13 | | | 3/12/13 | | | | D. Sallate C. Radavsky K. Baker | Transitional training, initial staff occupancy, staff orientation, building acceptance/takedown, furniture/fixture installation, stock supplies/inventory, placement of Group II equipment. | Activation rate on a phased occupancy basis as building construction completes, subject to SFM approval. |
| Patient Admissions | 270 | 3/13/13 | | | 1/26/13 | | | | D. Sallate C. Radavsky K. Baker | This will impact DMH/DDS/CPHCS office and has to be coordinated between the three departments. DMH does not have the lead on this but will provide technical assistance. DMH reports to attend to meet and confer requirements per week for each licensed unit that is complete, staffed due to clinical and safety reasons. | The targeted date for completion of patient admissions is 3/25/13. DMH-Note: DMH will make every effort to comply with the proposed timelines but success is dependent on recruitment and staffing. |

* This facility is intended to include 137 MHCB, 43 Acute, 432 ICF-H and 1,110 non-mental health beds.
¹ Court Order filed 1/4/10, Docket No. #3761
² Special Master shall receive updates on construction every 90 days
³ Design-Build and construction contract for abatement & demolition is included

Page 1

Project:

California Health Care Facility (CHCF) / Consolidated Care Facility (CCC)

**Lead Person Roster**

| Name | | Agency/Dept. | Address | | |
|---|---|---|---|---|---|
| Last | First | | Street | City | Zip |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Baker | Karen | CPHCS-Receiver's Representative | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controler | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Meredith | Michael | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Meyer | Chris | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Radavsky | Cindy | DMH | 1600 9th Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Steppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| TBD | | Warden | | | |

41

42

# Exhibit #14

## *Heman G. Stark*
## 30 Mental Health Crisis Beds

43

Project: Stark 60 BED Correctional Treatment Center [1,2]
Responsible Person: Chris Meyer/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: TBD
Location: Heman G. Stark, Chino, CA
Funding Source: AB 900 (GC 15819.40)

Jay Sturges DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion to SM Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 94 | 11/6/09 | 11/6/09 | | 2/8/10 | 2/8/10 | | | S. Durham | Develop Preliminary Program, Conceptual Scope, Schedule, and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | 30 | 2/8/10 | 2/8/10 | | 3/11/10 | 3/11/10 | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 3/12/10 | 3/12/10 | | 4/11/10 | | 407 | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | The 30-Day Letter for the re-purposing of Stark was submitted to DOF on 7/8/10 for September PWB approval of scope, schedule and cost. The schedule was premised on September PWB approval. On 09/15/10, the JLBC notified DOF that it did not concur with the action to approve the scope, schedule, and cost. CDCR is continuing to work with the JLBC to obtain its approval to use AB 900 funds for the re-purposing of Stark. CDCR expects that the earlier removal of the amended Stark plan from the PWB's calendar based on the JLBC's inability to concur with the project will result in a "day-for-day" delay, commencing on the date that CDCR expected to receive PWB funding, that is from 9/23/10, until the project is resubmitted for PWB approval and receives PWB funding. CDCR is also evaluating alternatives for providing the Coleman beds targeted for Stark. |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 4/12/10 | | 406 | 4/12/10 | | 406 | | C. Lief | Upon legislative approval, obtain PWB recognition of Scope, Cost, and Schedule. | |
| Request Loan from PMIA | 20 | 3/31/10 | | 418 | 4/20/10 | | 398 | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 1 | 4/21/10 | | 397 | 4/21/10 | | 397 | | Director of Finance, State Controller and State Treasurer | Submit Loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 173 | 11/8/09 | 11/8/09 | | 4/30/10 | | 388 | | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | |
| Preliminary Plans | 330 | 5/3/10 | | 385 | 3/29/11 | | 55 | | C. Stevens | Clerical/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule, Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | |
| California Environmental Quality Act Compliance (CEQA) | 240 | 4/22/10 | | 396 | 12/18/10 | | 156 | | B. Sleppy | Select Consultant, Negotiate/Execute Contract, Prepare CEQA Documents, Circulate/Comment Period, File Notice of Determination (N. O. D.), Litigation Period. | |

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days [Ahead] Behind | Planned Complete | Actual Complete | Days [Ahead] Behind | Completion to Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| JLBC Approval of Preliminary Plans | 49 | 2/17/11 | | 95 | 4/7/11 | | | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. | |
| PWB Approval of Preliminary Plans | 49 | 2/18/11 | | 94 | 4/8/11 | | 46 | 45 | C. Lief | PWB Approval. | |
| Working Drawings (Construction Documents) | 209 | 4/11/11 | | 42 | 11/6/11 | | | | C. Stevens | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List, Update Project Schedule and Cost, Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months.  Submit loan application to PWB for approval. | |
| Bid and Award | 92 | 11/7/11 | | | 2/7/12 | | | | C. Stevens | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | |
| Construction[1] | 601 | 2/8/12 | | | 10/1/13 | 10/1/13 | | | C. Stevens | Mobilize Construction Contractor, Construction Manager, Inspector of Record, Construct Project, Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy.  Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months.  Submit loan application to PWB for approval. | |
| Hire Staff | 600 | 1/10/12 | | | 9/1/13 | | | | D. Sallade Warden | Advertise, Hire, and Train Staff. | |
| Prepare Final Verified Office of Statewide Health Planning and Development (OSHPD) Reports | 601 | 2/8/12 | | | 10/1/13 | | | | | Including final as-built drawings. | |
| Self Certification | 7 | 10/2/13 | | | 10/9/13 | | | | C. Meyer | | |
| License Approval | 60 | 8/12/13 | | | 10/10/13 | 10/10/13 | | | D. Sallade K. Baker Warden | DPH Survey, DPH Approval. | |
| Activation | 60 | 10/2/13 | | | 12/1/13 | 12/1/13 | | | D. Sallade K. Baker Warden | Initial staff occupancy, staff orientation, develop policies and procedures, stock supplies/inventory, placement of Group II equipment. | |
| Inmate Occupancy | 60 | 10/11/13 | | | 12/10/13 | 12/10/13 | | | D. Sallade K. Baker Warden | Assumes Patients will be admitted at a rate of six per week. | |

[1] This facility is intended to include 30 MHCB and 30 non-mental health beds.
[2] Court Order filed 1/4/10, Docket No. #3761
[3] Special Master shall receive updates on construction every 90 days.

Page 2

45

Project:                                Stark 60 BED Correctional Treatment Center

## Lead Person Roster

| Name | | Agency/Dept. | Address | | |
|------|------|------|------|------|------|
| Last | First | | Street | City | Zip |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Baker | Karen | CPHCS-Receiver's Representative | 9838 Old Placerville Rd | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Meyer | Chris | CDCR/FPC&M | 9838 Old Placerville Rd | Sacramento | 95827 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Steppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd | Sacramento | 95827 |
| Stevens | Chuck | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| TBD | | Warden | 15180 Euclid Ave. | Chino | 91710 |

46

# Exhibit #15

## *Estrella*

### 150 Enhanced Outpatient Program – General Population and 40 Enhanced Outpatient Program- Administrative Segregation Unit beds

Project: Estrella Health Care Facility "El Paso Robles Conversion" [1,3]
Responsible Person: Chris Meyer/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: DLR
Location: Paso Robles, CA
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Compliance Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 30 | 11/18/09 | 11/2/09 | (4) | 11/18/09 | 11/4/09 | (2) | | B. Khaghani | Develop Preliminary Program, Conceptual Scope. Schedule and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | 30 | 11/19/09 | 11/09/09 | 4 | 12/9/09 | 12/11/09 | 2 | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 12/10/09 | 12/14/09 | 4 | 1/9/10 | 6/2/10 | 144 | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | JLBC approved project 06/02/10. |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 1/11/10 | 6/14/10 | 154 | 1/11/10 | 6/14/10 | 154 | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | |
| Request Loan from PMIA | 20 | 12/20/09 | 12/1/09 | (29) | 1/19/10 | 12/15/09 | (35) | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 1 | 1/20/10 | 12/16/09 | (35) | 1/20/10 | 6/16/10 | 147 | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 7 | 1/21/10 | 6/21/10 | 151 | 1/28/10 | 7/27/10 | 180 | | J. Cummings | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). | The A/E contract was executed on 7/27/10. |
| Preliminary Plans – Bid Package Structure | 196 | 1/29/10 | 7/28/10 | 180 | 8/13/10 | 2/18/11 | 189 | | B. Khaghani | Clinical/Architectural Programming. Schematic Design, Design Development. Design Review. Develop Initial Group II Equipment List. Update Staffing Requirements. Update Project Cost and Schedule. Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | CDCR has completed analysis of the delay encountered obtaining JLBC project authorization and contract award. As a means to mitigate the delay, all 3 bid packages have been combined into only one bid package. The PIP phase was completed 02/18/11. CDCR will mitigate the delay in the WID phase. |
| California Environmental Quality Act Compliance (CEQA) | 153 | 8/3/09 | 8/3/09 | | 1/3/10 | 1/28/11 | 390 | | B. Slappy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | The NOD was filed 12/29/10 and the 30-day statute of limitations period expired on 01/28/11 with no public comment or litigation. Delay was due to issues encountered with the City of Paso Robles on water and sewer services and to address the volume of comments received on the Draft Environmental Impact Report. There is no impact to the overall project schedule. |

48

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| JLBC Approval of Preliminary Plans | 126 | 7/8/10 | 2/22/11 | 229 | 11/11/10 | 11/11/10 | 193 | | JLBC | JLBC Approval. | On 4/6/2011 the JLBC notified CDCR in writing that in light of the Governor's proposed realignment (AB109) and its potential impact to lower level offender beds, they could not support the project at this time. This project will be reexamined based on realignment-driven population projections and bed needs. CDCR expects that due to the JLBC's inability to concur with the project, it will result in a "day for day" delay until the project is resubmitted for PWB approval. |
| PWB Approval of Preliminary Plans - Bid Package Structure | 126 | 7/9/10 | | 318 | 11/12/10 | | 192 | | C. Lief | PWB Approval. | |
| Working Drawings (Construction Documents) - Bid Package Structure | 270 | 7/2/10 | | 325 | 3/29/11 | | 55 | | B. Khaghani | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List. Update Project Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PWB for approval. | |
| Bid and Award - Bid Package Structure | 116 | 11/18/10 | | 186 | 5/20/11 | | 3 | | B. Khaghani | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | |
| Construction Contractor Bid Package Structure | 397 | 2/8/11 | | 104 | 3/11/12 | 3/11/12 | | | B. Khaghani | Mobilize Construction Contractor, Construction Manager, Inspector of Record. Construct Project. Purchase and Install Group II Equipment. Testing of Systems (Fire alarm, Nurse Call, etc.). Punch list. SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PWB for approval. | |
| Hire Staff | 153 | 11/10/11 | | | 4/11/12 | 4/11/12 | | | D. Sallade (A) K. Baker Warden | Advertise, Hire, and Train Staff. | |
| Activation | 30 | 4/18/12 | | | 5/18/12 | 5/18/12 | | | D. Sallade (A) K. Baker Warden | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | |
| Patient Admissions | 120 | 5/19/12 | | | 9/16/12 | 9/16/12 | | | D. Sallade (A) K. Baker Warden | | |

[1] This facility is intended to include 150 EOP, 40 EOP/ASU, and 709 non-mental health beds.
[2] Court Order filed 1/4/10, Docket No. #3761
[3] Special Master shall receive updates on construction every 90 days.

Project:    Estrella Health Care Facility "El Paso de Robles Conversion"

49

## Lead Person Roster

| Name | | Agency/Dept. | Address | | |
| Last | First | | Street | City | Zip |
|---|---|---|---|---|---|
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Baker | Karen | CPHCS-Receiver's Representative | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Chang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Khaghani | Bobby | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Meyer | Chris | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| TBD | | Warden | 4545 Aiport Rd. | Paso Robles | |

50

# Exhibit #16

## *Central California Women's Facility*
### Treatment and Office Space for
### Enhanced Outpatient Program- General Population

Project: EOP-GP Treatment and Office Space
Responsible Person: Deborah Hysen/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: TBD
Location: Central California Women's Facility
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California 95814

Report Period Ending: May 23, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Certification to Completion SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 143 | 3/15/10 | 3/15/10 | (3) | 8/5/10 | 8/2/10 | (3) | | K. Beland | Develop Preliminary Program, Conceptual Scope, Schedule, and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval. | |
| Review Funding Request Package | 32 | 8/6/10 | 8/3/10 | (3) | 9/7/10 | 10/15/10 | 38 | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | DOF released the 30-Day notification to JLBC on 10/15/10. |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 9/8/10 | 10/18/10 | 40 | 10/8/10 | 11/12/10 | 35 | | JLBC | DOF Review and Submission to the Legislature, Legislative Approval of Scope, Cost, and Schedule. | |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 10/11/10 | 11/15/10 | 35 | 10/11/10 | 11/15/10 | 35 | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | PWB approved scope, schedule and cost on 11/15/10. Impact to overall schedule is under review. |
| Request Loan from PMIA | 20 | 9/29/10 | 10/13/10 | 14 | 10/19/10 | 10/13/10 | (6) | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | Funding was approved at the 12/15/10 PMIA meeting. |
| Approval of PMIA Funding | 1 | 10/20/10 | 10/14/10 | (6) | 10/20/10 | 12/15/10 | 56 | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| Architectural/Engineering Contracting | 90 | 10/21/10 | 12/16/10 | 56 | 1/19/11 | 3/29/11 | 69 | | J. Cummings | Select A/E firm, Negotiate Scope and Fee, Execute Contract(s). | A/E NTP was issued on 3/29/11. Project schedule recovered by restructuring A/E activities in PP & WD phases. There is no impact to overall schedule. |
| Preliminary Plans | 218 | 1/20/11 | 3/30/11 | 69 | 8/26/11 | | | | K. Beland | Clinical/Architectural Programming, Schematic Design, Design Development, Design Review, Develop Initial Group II Equipment List, Update Staffing Requirements, Update Project Cost and Schedule. Prepare JLBC 45-day notice and PWB Preliminary Plan approval Submittal Package. | Pre-design activities commenced on 3/30/11. PPs are approx 32% complete. The revised PP completion date is 9/22/11. |
| California Environmental Quality Act Compliance (CEQA) | 270 | 10/21/10 | 11/15/10 | 25 | 7/18/11 | 11/23/10 | (237) | | B. Siepsy | Select Consultant, Negotiate/Execute Contract, Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | The Notice of Exemption was filed and the litigation period expired on 11/23/10. Accelerated time was gained by completing a less restrictive environmental document (Notice of Exemption vs. Initial Study/ Mitigated Negative Declaration). The method and required time were not reported in the 11/22/10 action plan and the appropriate "days behind" calculation is included in this report. |
| JLBC Approval of Preliminary Plans | 45 | 8/29/11 | | | 10/13/11 | | | | JLBC | JLBC Approval. PC 7000 provides the JLBC a 45-day review period before PWB can approve preliminary plans. | The revised release of the PP-JLBC submittal is 9/26/11. |
| PWB Approval of Preliminary Plans | 45 | 8/30/11 | | | 10/14/11 | | | | C. Lief | PWB approval. | The revised PWB approval of PP is 11/10/11. |

52

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Working Drawings (Construction Documents) | 203 | 10/17/11 | | | 5/7/12 | | | | K. Beland | Complete Construction Documents, Obtain Regulatory Reviews (SFM, ADA, etc.), Finalize Group II Equipment List, Update Project Schedule and Cost. Prepare Approval of Working Drawings and Proceed to Bid Package and submit to DOF for approval. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | The completion date of WD is not impacted by the one month delay in PP. |
| Bid and Award | 90 | 5/8/12 | | | 8/6/12 | | | | K. Beland | Advertise for Bids, Hold Pre-Bid Conference, Receive Bids, Verify Lowest Responsive Bidder, Request DOF Approval to Award, Award Contract. | |
| Construction[1] | 450 | 8/7/12 | | | 10/31/13 | | | | K. Beland | Mobilize Construction Contractor, Construction Manager, Inspector of Record. Construct Project, Purchase and Install Group II Equipment, Testing of Systems (Fire alarm, Nurse Call, etc.), Punch list, SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy. Submit loan documents to DOF and obtain PWB approval for loan for the project's cash needs for the next 12 months. Submit loan application to PMIB for approval. | |
| Hire Staff | 151 | 5/3/13 | | | 10/1/13 | | | | D. Sallade M. Latimore | Advertise, Hire, and Train Staff. | |
| Activation | 60 | 11/1/13 | | | 12/31/13 | | | | D. Sallade M. Latimore | Initial staff occupancy, staff orientation, stock supplies/inventory, placement of Group II equipment. | |

[1] Special Master shall receive updates on construction every 90 days.

Page 2

Project:                        EOP-GP Treatment and Office Space

## Lead Person Roster

| Name | | Address | | | |
|------|------|---------|---------|------|-----|
| Last | First | Agency/Dept. | Street | City | Zip |
| Beland | Keith | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Borg | Dean | CDCR/FPC&M | 9839 Old Placerville Rd. | Sacramento | 95827 |
| Chiang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Hysen | Deborah | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lattimore | Mary | Warden (A) , CCWF | 23370 Rd 22 | Chowchilla, CA | 93610 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |

53

Exhibit #17

*Dewitt Nelson*

375 Enhanced Outpatient Program –
General Population and

50 Enhanced Outpatient Program-
Administrative Segregation Unit beds

55

Project: DeWitt Nelson Conversion[1]
Responsible Person: Chris Meyer/CDCR
Address of Resp. Person: 9838 Old Placerville Rd., Suite B Sacramento California
Project Architect: Kitchell CEM (Criteria Architect)
Location: DeWitt Nelson, Stockton
Funding Source: AB 900 (GC 15819.40)

Jay Sturges /DOF
915 L Street, Sacramento California

Report Date: May 21, 2011

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days Behind (Ahead) | Planned Complete | Actual Complete | Days Behind (Ahead) | % Completion to Certification to BW | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Develop Scope, Cost, and Schedule for AB 900 30 Day Funding Request Package | 153 | 11/6/09 | 11/6/09 | | 4/8/10 | 4/8/10 | | | M. Meredith | Develop Preliminary Program; Conceptual Scope, Schedule, and Cost. Develop Preliminary Staffing Requirements. Prepare 30 Day Letter Funding Request. Submit to DOF for approval | |
| DOF Review and Approval of Design Build Approach | | | | | | 10/22/10 | | | C. Lief | Pursuant to Government Code Section 14661.1.i | CDCR received approval for use of Design-Build from DOF on 10/22/10. |
| Review Funding Request Package | 32 | 4/9/10 | 4/12/10 | 3 | 5/11/10 | 5/13/10 | | | C. Lief | DOF review of funding request package. If package complies with applicable laws, the DOF prepares transmittal letter to the Legislature for approval. | |
| Legislative Approval of Scope, Schedule, and Cost | 30 | 5/12/10 | 5/14/10 | 2 | 6/11/10 | 6/11/10 | | | JLBC | DOF Review and Submission to the Legislature. Legislative Approval of Scope, Cost, and Schedule. | |
| PWB Recognition of Project Scope, Cost, and Schedule | 1 | 6/14/10 | 6/14/10 | | 6/14/10 | 6/14/10 | | | C. Lief | Upon legislative approval, obtain PWB recognition of Project Scope, Cost, and Schedule. | |
| Request Loan from PMIA | 21 | 5/25/10 | 5/11/10 | (14) | 6/15/10 | 6/15/10 | | | D. Borg | Submit Loan Documents to request loan from the Pooled Money Investment Account (PMIA). | |
| Approval of PMIA Funding | 1 | | | | 6/16/10 | 6/16/10 | | | Director of Finance, State Controller and State Treasurer | Submit loan application for initial design phase to Pooled Money Investment Board (PMIB) for approval. Note that PMIA loans are for the project's cash needs for the next 12 months and are renewed annually or more often, until the sale of lease revenue bonds. | |
| California Environmental Quality Act Compliance (CEQA) | 265 | 6/17/10 | 6/17/10 | 119 | 3/9/11 | 1/28/11 | (40) | | B. Sleppy | Select Consultant. Negotiate/Execute Contract. Prepare CEQA Documents. Circulate/Comment Period. File Notice of Determination (N. O. D.). Litigation Period. | The NOD was filed 12/29/10. The 30-Day statute of limitations period expired on 01/29/11 with no public comment or litigation. The final EIR was approved on 12/29/10. |
| Select Bridging Architect | 18 | 6/17/10 | 6/17/10 | | 3/8/10 | 8/2/10 | 147 | | M. Meredith | Select A/E firm. Negotiate Scope and Fee. Execute Contract(s). Assumes CM/Bridging Architect selected from pre-approved list. | Kitchell CEM was selected as the Criteria Architect. |
| Prepare Bridging Document | 249 | 6/17/10 | 8/3/10 | 47 | 2/21/11 | | 91 | | M. Meredith | Includes development of basis of design; pre-qualification of Design-Build entities. Preparation of Bridging Documents including performance criteria. | Documents are 99% complete. PWB approval of the RFP design criteria is expected to be requested for July 2011. The impact to overall schedule is being evaluated. |
| PWB Approval | 45 | 2/22/11 | | 90 | 4/8/11 | | 45 | | C. Lief | PWB Approval of performance criteria. | See Prepare Bridging Document status. |
| Design-Build Competition/Contractor Selection | 120 | 4/11/11 | | 42 | 8/9/11 | | | | M. Meredith | Selection of Design-Build entities. Firms submit Design-Build proposals. CDCR evaluates and selects contractor. | See Prepare Bridging Document status. |
| Award Design Build Contract | 11 | 8/10/11 | | | 8/24/11 | | | | J. Cummings | Issue Notice to Proceed. Execute contract. | See Prepare Bridging Document status. |

56

| Primary Tasks | Duration (Cal. Days) | Planned Start | Actual Start | Days (Ahead) Behind | Planned Complete | Actual Complete | Days (Ahead) Behind | Completion to Certification to SM | Lead Person | Key Sub-Tasks | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Design Build Duration [3] | 540 | 8/22/11 | | | 3/4/13 | | | | M. Meredth | Mobilize Design-Build Entity, Construction Manager, Inspector of Record. Finalize programming and complete drawings. Construct Project. Purchase and install Group II Equipment. Testing of Systems (Fire Alarm, Nurse Call, etc.). Punch list. SFM Temporary Certificate of Occupancy and Final Certificate of Occupancy | See Prepare Bridging Document status. |
| Activation Planning/Workforce Development/Hire Staff/Procurement | 540 | 10/4/11 | | | 3/27/13 | | | | D. Sallade C. Radavsky K. Baker | Schedule development, policy and procedures, workforce planning, advertise, hire and train staff, group II/III equipment planning and equipment certification, long lead items acquisition, contracts/vendors, labor relations, training. This will impact DMH/CDCR/Receivers office and has to be coordinated between the three departments. DMH does not have the lead on this but will provide technical assistance and comply with the agreed upon dates. | |
| Preparation of Final Verified Office of Statewide Health Planning and Development (OSHPD) Reports | 540 | 8/22/11 | | | 3/4/13 | | | | M. Meredth | Including final as-built drawings. | |
| Self Certification | 7 | 3/5/13 | | | 3/12/13 | | | | C. Meyer | | |
| Licensing Application & Approval | 45 | 3/13/13 | | | 4/27/13 | | | | D. Sallade C. Radavsky K. Baker | DPH initial licensing survey. Will license entire facility, suspend, then activate beds tied to a staff activation schedule. | |
| Activation | 32 | 3/28/13 | | | 4/29/13 | | | | D. Sallade C. Radavsky K. Baker | Transitional training, initial staff occupancy, staff orientation, building acceptance/shakedown, furniture/fixture installation, stock supplies/inventory, placement of Group II equipment. | |
| Patient Admissions | 112 | 4/28/13 | | | 8/18/13 | | | | D. Sallade C. Radavsky K. Baker | This will impact DMH/CDCR/CPHCS office and has to be coordinated between the three departments. DMH does not have the lead on this but will provide technical assistance. DMH expects to admit 5 inmate-patients per week for each licensed unit that is completely staffed due to clinical and safety reasons. | |

[1] This facility is intended to include 375 ECP, 50 ECP/ASU, and 708 non-mental health beds.
[2] Special master shall receive updates on construction every 90 days.
[3] Activation is contingent upon full activation of the California Health Care Facility construction project, which has a planned complete date of 03/12/2013.

Page 2

57

Project:    DeWitt Nelson Conversion

## Lead Person Roster

| Name | | Agency/Dept. | Address | | |
| Last | First | | Street | City | Zip |
|---|---|---|---|---|---|
| Borg | Dean | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Baker | Karen | CPHCS-Receiver's Representative | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Chiang | John | State Controller | 300 Capitol Mall, Suite 1850 | Sacramento | 95814 |
| Cummings | Jackson | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Lief | Christopher | DOF | 915 L Street | Sacramento | 95814 |
| Lockyer | Bill | State Treasurer | 915 Capitol Mall C-15 | Sacramento | 94209 |
| Matosantos | Ana J. | Director, DOF | 915 L Street | Sacramento | 95814 |
| Meredith | Michael | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Meyer | Chris | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| Radavsky | Cindy | DMH | 1600 9th Street | Sacramento | 95814 |
| Sallade (A) | Denny | CDCR/DCHCS | 501 J Street | Sacramento | 95814 |
| Sleppy | Bob | CDCR/FPC&M | 9838 Old Placerville Rd. | Sacramento | 95827 |
| TBD | | Warden | | | |