1   KAMALA D. HARRIS
    Attorney General of the State of California
    JONATHAN L. WOLFF
2   Senior Assistant Attorney General
    DEBBIE VOROUS - SBN 166884
3   WILLIAM KWONG - SBN 168010
    DANIELLE F. O'BANNON - SBN 207095
4   KYLE A. LEWIS - SBN 201041
    DAVID BRICE - SBN 269443
5   Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5500
7   Facsimile:  (415) 703-5843
    debbie.vorous@doj.ca.gov
8   kyle.lewis@doj.ca.gov

    HANSON BRIDGETT LLP
    JERROLD C. SCHAEFER – SBN 39374
    PAUL B. MELLO – SBN 179755
    WALTER R. SCHNEIDER – SBN 173113
    MEGAN OLIVER THOMPSON – SBN 256654
    SAMANTHA D. WOLFF – SBN 240280
    RENJU P. JACOB – SBN 242388
    PAUL B. GRUWELL – SBN 252474
    425 Market Street, 26th Floor
    San Francisco, CA  94105
    Telephone:   (415) 777-3200
    Facsimile:   (415) 541-9366
    pmello@hansonbridgett.com

9   Attorneys for Defendants

10              UNITED STATES DISTRICT COURT

11       FOR THE EASTERN DISTRICT OF CALIFORNIA

12       AND THE NORTHERN DISTRICT OF CALIFORNIA

13   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

14     PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| 15 | |
| 16 RALPH COLEMAN, et al., | No. 2:90-cv-00520 LKK JFM P |
| 17              Plaintiffs, | **THREE-JUDGE COURT** |
|         v. | |
| 18 EDMUND G. BROWN, JR., et al., | |
| 19              Defendants. | |
| 20 | |
| 21 MARCIANO PLATA, et al., | No. C01-1351 TEH |
| 22              Plaintiffs, | **THREE-JUDGE COURT** |
| 23         v. | **DEFENDANTS' REPORT IN RESPONSE TO JUNE 30, 2011 ORDER** |
| 24 EDMUND G. BROWN, JR. et al., | |
| 25              Defendants. | |
| 26 | |
| 27 | |
| 28 | |

- 1 -

Defendants file this report in response to the Court's June 30, 2011 order, which directed them to provide updated information about public safety realignment under Assembly Bill 109. Specifically, the Court directed Defendants to file a report on or before July 21, 2011, to address the following issues: (1) whether funding has been secured for AB 109; and, if so, when AB 109 is intended to go into effect; (2) the estimated reductions associated with AB 109 and all other population reduction measures being implemented by the State; and (3) whether Defendants expect to meet the December 27, 2011 population-reduction benchmark and, if not, what further actions are contemplated and the specific persons responsible for executing those actions. (Order Requiring Interim Reports at 2, June 30, 2011, *Plata* ECF No. 2374.)

In this filing, Defendants answer the Court's questions about AB 109's funding and effective date. They will also provide their best current projection of the impact AB 109 and other measures will have on the prison population. But Defendants will have a more current population projection completed in a few weeks, and will file a more complete report with those updated projections in early August. Once finished, the updated projections will allow Defendants to assess whether they expect to meet the Court's first benchmark on December 27, 2011, whether modifications to the benchmark schedule may be warranted, or whether any potential additional crowding-reductions measures may be needed or appropriate.

As for now, the short answers to the Court's questions are that AB 109 is now funded and will go into effect on October 1, 2011. While CDCR has not yet finished its population projections, CDCR preliminarily estimates that as of December 27, 2011, the in-state prison population will be reduced by approximately 8,400 inmates. CDCR also preliminarily estimates that its in-state institution population will achieve 167% of design capacity around January 27, 2012, one month after the Court's December 27, 2011 benchmark.

- 2 -

## I.    AB 109 Has Been Funded and Will Become Effective October 1, 2011.

As Defendants advised the Court in their earlier reports, this Spring, the Legislature passed and the Governor signed into law Assembly Bill 109.  (Defs.' Report in Response to Jan. 12, 2010 Order at 2-3, 6, June 7, 2011, Plata ECF No. 2365; Defs.' Report Responding to Paragraph 5 of Jan. 12, 2010 Order at 2-3, June 23, 2011, Plata ECF No. 2370.)  On June 30, 2011, the Governor made this realignment a reality by signing into law the funding for AB 109.  (*See* AB 118, Act of June 30, 2011, ch. 40, § 3 (to be codified at Cal. Gov't Code § 30025 et seq.).)

### A.    Funding

AB 118 provides the statutory framework, allocation method, and revenue to implement AB 109.  Specifically, AB 118 establishes the Community Corrections Grant Program, which was required for AB 109 to become operational.  (AB 118, § 3.)  It creates the Local Revenue Fund of 2011 in the State Treasury, and within the fund numerous sub-accounts, including the Trial Court Security Account, the Local Community Corrections Account, the Local Law Enforcement Services Account, the Mental Health Account, the District Attorney and Public Defender Account, the Juvenile Justice Account, the Health and Human Services Account, and the Reserve Account. (AB 118, § 3.)

Funding for the Local Revenue Fund of 2011 shall come from 1.0625% of the existing sales tax rate, which is projected to generate $5.1 billion in the 2011-12 fiscal year and increases to $6.4 billion in the 2014-15 fiscal year.  (AB 118, § 9 (to be codified at Cal. Revenue and Taxation Code § 6051.15); 2011-12 State Budget, at 2, http://www.ebudget.ca.gov/pdf/Enacted/BudgetSummary/FullBudgetSummary.pdf (last visited July 20, 2011).)  The fund is continuously appropriated.  (AB 118, § 3.)

### B.    Effective Date

The effective date of most of AB 109 is October 1, 2011.  (*See, e.g.,* AB 117, §§ 2-3, 27-28, 37, 39, 45, 47, 52-53.)  This date allows CDCR and county officials time to prepare for realignment.  (Don Thompson, *Calif. budget provides money for prison*

1 *changes*, San Jose Mercury News, July 4, 2011 at

2 http://www.mercurynews.com/breaking-news/ci_18406445 (last visited July 20, 2011)

3 (citing to Sen. Mark Leno).)

4 On October 1, state law will change so that most criminals convicted of a non-

5 serious, non-violent, or non-registerable sex crime will be incarcerated in a county jail

6 instead of in a CDCR prison. (AB 117 §§ 27-28 (to be codified in Cal. Pen. Code §

7 1170).)

8 Also, as of October 1, inmates whose current commitment offense is non-serious,

9 non-violent, and who have not been classified as high-risk sex offenders will be

10 supervised by the counties, not CDCR, when they are released from custody. (AB 117 §

11 37 (to be codified in Cal. Pen. Code § 3000.08); § 47 (to be codified in Cal. Pen. Code §

12 3451).) Revocation proceedings of these individuals will be conducted by hearing

13 officers appointed by the Superior Courts and revocation sentences will be served in

14 county jails, not in CDCR prisons. (AB 117 § 1 (to be codified in Cal. Gov't Code §

15 71622.5); § 38 (to be codified in Cal. Penal Code § 3000.08); § 44 (to be codified in Cal.

16 Penal Code § 3056); § 50 (to be codified in Cal. Penal Code § 3455).)

17 And as of July 1, 2013, inmates serving prison terms for serious or violent felonies

18 or who have been classified as high-risk sex offenders shall be subject to county

19 revocation proceedings in the Superior Court upon release from state prison. (AB 117 §

20 38.)

21 **II.    Defendants Are Providing Projections of the Impact AB 109 Will Have on the**
**Prison Population Based on Currently Available Data, and Will Provide A**
22 **Better Projection When Completed in a Few Weeks.**

23 The impact that AB 109 will have on CDCR's prison population will be significant.

24 Currently, CDCR houses in its 33 prisons 13,371 non-lifers serving a revocation

25 sentence or pending a revocation hearing and 18,597 inmates serving lower level

26 offenses that are non-serious, non-violent, and non-sex related. (Decl. of Jay Atkinson

27 in Support of Defs.' Report in Response to June 30, 2011 Order (Atkinson Decl.) ¶ 9.)

28 Once AB 109 has been fully implemented, these categories of inmates will not be

- 4 -

housed in CDCR prisons.  (*See* AB 117 §§ 1, 27-28, 38, 44, 50.)  As an illustration of AB 109's potential impact, if CDCR subtracted these 31,968 inmates from its current in-state prison population of 144,237, the population would be reduced to 112,269.  (Atkinson Decl. ¶ 9.)  So if its full impact was realized today, and if all other things remained equal, AB 109 alone would reduce the prison population to 141% of design capacity.  (*Id.*)

Of course, it will take a few years to realize the significant impact of AB 109, during which time all other things will not remain equal.  (Atkinson Decl. ¶ 10.)  For example, as previously reported, in the next few years, the reforms enacted through SB 18, SB 1266, and SB 1399 will continue to reduce prison crowding, and CDCR's housing capacity will increase as its construction projects are completed.  (*Id.;* Defs.' Report in Response to Jan. 12, 2010 Order at 4-6, June 7, 2011, *Plata* ECF No. 2365.)  At the same time, CDCR's available trend data indicates that the number of inmates not impacted by realignment will grow over the next two years.  (Atkinson Decl. ¶ 10.)  Thus, it is difficult to project future population levels with precision.  (*Id.* ¶ 8.)  But Defendants believe, based on CDCR's preliminary projections, the impact of realignment coupled with the other crowding-reduction measures will allow the state to achieve the final benchmark set by the Court.  (Decl. of Ross Meier in Support of Defs.' Report in Response to June 30, 2011 Order (Meier Decl.) ¶ 3.)

In a few weeks, CDCR will have more current population projections.  (Meier Decl. ¶ 4; Atkinson Decl. ¶¶ 4-6.)  These projections will take into account more recent population numbers, the final legislative modifications to AB 109, and better data assessing the impact of other recent population reduction measures.  (Atkinson Decl. ¶¶ 7-8.)  CDCR is working to have these new projections finished by early August.  (Meier Decl. ¶ 4; Atkinson Decl. ¶ 4.)  Once completed, Defendants will provide them to the Court in an updated report.  These updated projections will allow Defendants to better address the Court's questions about whether Defendants expect to meet the first benchmark on December 27, 2011, and about whether other potential crowding-reduction measures are necessary or appropriate.  Defendants will also advise the Court

- 5 -

if modifications to the benchmark schedule appear to be warranted.

Before CDCR can finalize these new projections, it must first complete its Fall 2011 projection, develop a supplemental projection to account for AB 109, and develop a population management plan. (Atkinson Decl. ¶ 5.) The Fall 2011 projections take into account many variables and recent trends affecting population. (*Id.*) After starting with CDCR's June 30, 2011 population, CDCR forecasts population levels by using recent data trends, projecting new admissions, and estimating how long inmates will remain in prison. (*Id.*) While CDCR ordinarily issues its Fall projections at the end of August, it is expediting efforts to complete these projections by early August. (*Id.* ¶ 4.) After the Fall 2011 projections are completed, CDCR can better project the impact that AB 109 will have on its population (*id.* ¶ 8), and determine how best to provide housing. (Meier Decl. ¶¶ 3-4.)

In the meantime, CDCR has developed preliminary projections based on older population numbers and the data available now. (Meier Decl. ¶ 3.) These preliminary projections indicate that CDCR's in-state institution population will be 135,263 inmates on December 27, 2011, or 170% of design capacity. (*Id.*) This is a projected reduction of approximately 8,400 inmates compared to today's in-state institution population. (*Id.*) This forecast indicates that CDCR will achieve 167% of design capacity in its in-state institutions around January 27, 2012. (*Id.*)

The finalized population estimates that Defendants will provide the Court in a few weeks will offer a better forecast. (Atkinson Decl. ¶¶ 7-8.) The Fall 2011 projection will use the CDCR inmate population from June 30, 2011, rather than the less current population numbers from December 31, 2010. (*Id.* ¶ 7.) Further, the Fall 2011 projection benefits from contrasting the Spring 2010 projection with actual experience and data trends over the past six months. (*Id.*) The new projection that CDCR will have completed in early August using the June 2011 population numbers will provide a better forecast of AB 109's impact because it will take into account seasonal variations from the revised October 1 implementation date. (*Id.* ¶ 8.) Further, it will take into account recent

- 6 -

1    realignment legislative changes that did not exist when the prior projection was

2    prepared.  (*Id.* ¶ 8.)

3    **III.    Conclusion**

4            AB 109 is now funded and will go into effect on October 1, 2011.  While it is too

5    early to have finalized population projections, CDCR preliminarily estimates that as of

6    December 27, 2011, the in-state prison population will be reduced by approximately

7    8,400 inmates.  CDCR also preliminarily estimates that its in-state institution population

8    will achieve 167% of design capacity around January 27, 2012, one month after the

9    Court's December 27, 2011 benchmark.  Defendants will file a supplement to this report

10   in early August after the final population projections are completed, and, at that time, will

11   provide the Court with a fuller answer to whether Defendants expect to meet the Court's

12   December 27, 2011 benchmark.

13   DATED:  July 20, 2011                         HANSON BRIDGETT LLP

14

15                                                          By: /s/ Paul B. Mello

16                                                          PAUL B. MELLO
                                                            Attorneys for Defendants
17                                                          Edmund G. Brown Jr., et al.

18   DATED:  July 20, 2011                         KAMALA D. HARRIS
                                                            Attorney General of the State of California
19

20

21                                                          By: /s/ Debbie Vorous

22                                                          DEBBIE VOROUS
                                                            Deputy Attorney General
23                                                          Attorneys for Defendants
                                                            Edmund G. Brown Jr., et al.

24

25

26

27

28

DEFS.' RESPONSE TO JUNE 30, 2011 ORDER
CASE NOS. 2:90-CV-00520 LKK JFM; C01-1351 TEH

3119601.1