KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE VOROUS - State Bar No. 166884
WILLIAM KWONG - State Bar No. 168010
DANIELLE F. O'BANNON - State Bar No. 207095
KYLE A. LEWIS - State Bar No. 201041
DAVID BRICE - State Bar No. 269443
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
debbie.vorous@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
MEGAN OLIVER THOMPSON - 256654
SAMANTHA D. WOLFF - 240280
RENJU P. JACOB - 242388
PAUL B. GRUWELL - 252474
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**AND THE NORTHERN DISTRICT OF CALIFORNIA**

**UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

**PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br>  v.<br>EDMUND G. BROWN, JR., et al.,<br><br>  Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>  Plaintiffs,<br>  v.<br>EDMUND G. BROWN, JR. et al.,<br><br>  Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF JAY ATKINSON IN SUPPORT OF DEFENDANTS' REPORT IN RESPONSE TO JUNE 30, 2011 ORDER** |

I, JAY R. ATKINSON, declare as follows:

1. I am the Acting Deputy Director of the Office of Research for the California Department of Corrections and Rehabilitation (CDCR). I have been employed in this position since January 1, 2011. I have been with the Office of Research and the Offender Information Services Branch of CDCR since 1999, and have assisted in gathering data maintained by CDCR on numerous occasions. I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' Response to the Court's June 30, 2011 order.

2. As Acting Deputy Director for the Office of Research, I am responsible for management and oversight of the Offender Information Services Branch that supplies research and analysis to CDCR and outside agencies regarding population estimates and projections. I am responsible for the development of CDCR's Spring and Fall population projections and I know how they are developed.

3. CDCR's Offender Information Services Branch compiles and retains summary statistical information about inmates and parolees. Population projections at CDCR are normally done every six months (end of February and August) and are referred to as the Spring and Fall population projections because of the time of the year they are released. Spring projections use the prior December 31 CDCR inmate population as its starting point and Fall projections use the prior June 30 CDCR inmate population as its starting point. The trend data used in the projections are also updated every six months so that each projection is based on the most current data available.

4. CDCR is expediting its efforts to issue its Fall 2011 projections so that the projections can be used as a baseline to project the in-state institution population in response to the Court's order. The Fall 2011 projections are normally issued at the end of August but we are making every effort to complete them a month early so that CDCR can provide them to the Court by early August.

5. CDCR will not be able to report upon the projected in-state population

- 2 -

using the Fall 2011 projections before early August for several reasons. First, the development of the Fall 2011 projection is a complex process that takes a significant amount of time. Specifically, the Fall 2011 projections require evaluation and modification of a simulation model that includes many variables and recent trends affecting population. After starting with CDCR's June 30, 2011 population, CDCR forecasts population levels by using a simulation model, which employs data trends and projected new admissions, to determine how long the new admissions will stay, the number of offenders who will be returned to prison, and how long they and the current inmates will stay. The inputs to the simulation model are modified from the previous Spring 2011 projection to account for recent trends and data. This simulation is repeated for each individual inmate until the total population is projected. After the Fall 2011 projection is completed, staff in the Office of Research will project the impact on CDCR's population that Assembly Bill 109, the realignment legislation, will have. From this projection, the CDCR's Population Management Unit develops a plan to place this population in available capacity and determines the in-state population.

6. Because the Fall 2011 projection is not yet available, my staff developed a projection that takes into account the estimated population impact of AB 109 using the existing Spring 2011 projection as a baseline. Our projection of the impact of AB 109 is based upon reasonable assumptions from the language of the legislation. However, the model is developed without the added benefit of data trends, which will become available over time as the legislation takes effect. After this projection was developed, it was provided to Ross Meier, Chief of the Population Management Unit, to develop a population management plan and ascertain the projected in-state institution population.

7. Using the Fall 2011 projection as a baseline will provide a better population forecast than the Spring 2011 projection for several reasons. The Fall 2011 projection will use the CDCR inmate population from June 30, 2011, rather than the less current population numbers from December 31, 2010. Further, the Fall 2011 projection benefits from contrasting the Spring 2011 projection with actual experience and data trends over

the past six months. For example, with the added benefit of the most current trend information, CDCR can make adjustments to its model to revise its prior projected impacts of various variables affecting population such as the impact of Senate Bill 18 (2010) (Ducheny, 3rd Ex. Sess.), which set forth new trends in sentencing, parole revocations, credit earning, and non-revocable parole. In addition, the Fall 2011 projection will take into account the impact of changes in admission rates to prison over the past six months.

8. The new projection that we will have completed in early August using the June 2011 population numbers will provide a better forecast of the impact of AB 109 because it will take into account seasonal variations from the revised October 1, 2011 implementation date. Further, it will take into account recent realignment legislative changes that did not exist when the prior projection was prepared. While it is difficult to project future population levels with precision, the new projections we will have completed shortly will provide a better and more current forecast.

9. I have access to CDCR population data and am able to ascertain some detail concerning CDCR's in-state institution population. Currently, CDCR houses in its 33 prisons, 13,371 non-lifers serving a revocation sentence or pending a revocation hearing and 18,597 inmates serving lower level offenses that are non-serious, non-violent, and non-sex related. As an illustration of AB 109's impact, if CDCR subtracted these 31,968 inmates from its current in-state prison population of 144,237, the population would be reduced to 112,269. So if its full impact was realized today, and all other things remained equal, AB 109 alone would reduce the prison population to 141% of design capacity.

10. I believe it will take a few years to realize the significant impact of AB 109, during which time all other population factors will not remain equal. For example, in the next few years, the reforms enacted through SB 18, SB 1266 and SB 1399 will continue to reduce prison crowding, and CDCR's housing capacity will increase as its construction projects are completed. In contrast, our available trend data indicates that the number of

- 4 -

1  inmates not impacted by realignment will grow over the next two years.

2      I declare under the penalty of perjury under the laws of the State of California
3  that the foregoing is true and correct. Executed in Sacramento, California on July 19,
4  2011.

*[signature]*

JAY R. ATKINSON