1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11            Plaintiffs,                No. 2:-90-cv-0520-LKK-JFM (PC)

12      vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14
             Defendants.              ORDER
15   _____/

16            Pursuant to an order of this court filed April 14, 2010, on September 27, 2010, the

17   special master filed a report and recommendations on defendants' review of their suicide

18   prevention policies, practices and procedures.  The report contains five recommendations for

19   orders by this court.  By order filed October 5, 2010, the parties were granted a period of thirty

20   days in which to file and serve responses to the special master's report and recommendations and

21   fifteen days thereafter in which to reply to any responses filed.  On November 4, 2010,

22   defendants filed an objection to one of the special master's recommendations.  Plaintiffs

23   interposed no objections to any of the recommendations.  On November 18, 2010, plaintiffs filed

24   a reply to defendants' objections.  On the same day, this court issued an order adopting in full the

25   recommendations to which no objections had been interposed.  The special master's remaining

26   recommendation is addressed in this order.

1

The special master's fourth recommendation is that defendants be directed to "submit a plan to furnish suicide-resistant beds in their mental health crisis bed (MHCB) units for any at-risk inmates who would otherwise not be provided with a bed while in an MHCB unit." Special Master's Report on Defendants' Review of Suicide Prevention Policies, Practices, and Procedures, filed September 27, 2010 (hereafter Report), at 38. The special master's recommendation is based on the following findings in his report:

> Plaintiffs request that suicide-resistant beds be furnished for MHCB units, and that those units at San Quentin State Prison and California Medical Facility which have such beds should make use of them. [Citation omitted.] This is an important concern that plaintiffs have raised previously with defendants, but which remains unresolved. There have been informal reports that in the absence of suicide-resistant beds in some MHCB units, suicidal patients are not provided with any beds at all. It is my understanding that CDCR's decision thus far not to provide suicide-resistant beds is based solely on cost, which I also understand is not prohibitively expensive.

> My experts advise me that the failure to provide suicide-resistant beds, and the practice of requiring suicidal MHCB patients to sleep on the floor, creates a needlessly harsh environment that does not serve therapeutic purposes. This practice, along with other punitive-type practices, may even contribute to an inmate's decision not to report thoughts of self-harm to staff. I have been advised that the default practice in an MHCB unit should be to provide a suicide-resistant bed unless clinically contraindicated.

Report, at 33.

Defendants object to this recommendation on two grounds. First, they contend providing only mattresses in MHCB units does not violate the Eighth Amendment. Second, defendants contend that an order to furnish a plan for providing suicide-resistant beds to at-risk inmates who would not otherwise be provided a bed contravenes the requirements of 18 U.S.C. § 3626(a)(1)(A) because it is "not narrowly drawn, extends further than necessary to correct the constitutional violation, and is not the least intrusive means necessary to correct the violation were one to exist." Id. at 3.

/////

In their objection, defendants define the question before the court as "whether the Eighth Amendment has been violated, or is being violated, by the failure to provide suicide resistant beds for what the Program Guide contemplates as short, at most ten-day stays in the MHCBs." Objection, at 5.[1] Defendants misperceive the constitutional duty at issue.

The question at bar is whether defendants are in compliance with their obligations under the Eighth Amendment concerning suicide prevention in their prison system. The Eighth Amendment requires "a basic program to identify, treat, and supervise inmates at risk for suicide." Coleman v. Wilson, 912 F.Supp. 1282, 1298 n. 10 (E.D.Cal. 1995) (citing Balla v. Idaho State Board of Corrections, 595 F.Supp. 1558, 1577 (D.Idaho 1984). The longstanding problem of inmate suicides in the California Department of Corrections and Rehabilitation (CDCR) is well-documented in the record. See Brown v. Plata, 131 S.Ct. 1910, 1924 (2011) ("[i]n 2006, the suicide rate in California's prisons was nearly 80% higher than the national average for prison populations; and a court-appointed Special Master found that 72.1% of suicides involved 'some measure of inadequate assessment, treatment, or intervention, and were therefore most probably foreseeable and/or preventable.'") The recommendation currently before the court, and the report on which it is based, are made pursuant to an April 14, 2010 order in which the court surveyed years of recommendations from the special master concerning deficiencies in defendants' suicide prevention system. In the same order, the court noted as "deeply troubling" "[t]he increase in both the inmate suicide rate and the percentage of suicide cases with 'at least some degree of inadequacy in assessment, treatment, or intervention'" and found that "'[t]he fundamental task at hand is for defendants to take all steps necessary to reduce

/////

---

[1] Defendants have installed suicide resistant beds in two MHCB units, one at San Quentin State Prison and one at California Medical Facility. Declaration of Jane Kahn in Support of Special Master's Recommendation that Defendants Submit a Plan to Furnish Suicide-Resistant Beds in Their Mental Health Crisis Bed Units to Reduce High Rate of Suicide, filed November 18, 2010 (Kahn Declaration), at ¶ 3.

1   both the inmate suicide rate and the inadequacies in assessment, treatment and intervention found

2   in an unacceptably high percentage of completed suicides." Order filed April 14, 2010 at 6-7.[2]

3           The special master has identified the provision of suicide resistant beds in MHCB

4   units as one of the necessary steps.  His recommendation is grounded in the constitutional

5   requirement to provide a system for identification and treatment of inmates at risk for suicide.

6   Specifically, as noted above he reports that his experts have advised that the absence of beds, and

7   the practice of requiring suicidal inmates to sleep on the floor "creates a needlessly harsh

8   environment that does not serve therapeutic purposes." Report at 33.  He further reports that the

9   absence of beds may hinder identification of suicidal inmates in that it "may even contribute to

10  an inmate's decision not to report thoughts of self-harm to staff." Id.  Given these

11  considerations, he reports, "the default practice in an MHCB should be to provide a suicide-

12  resistant bed unless clinically contraindicated." Id.

13          In support of their objection, defendants rely on three circuit court decisions,

14  including one from the United States Court of Appeals for the Ninth Circuit, all of which affirm

15  decisions to place suicidal inmates in cells without bedding.  All of the cases cited by defendants

16  stand for the proposition that the federal constitution is not violated by reasonable decisions

17  made and actions taken to protect the health and safety of inmates.  In Anderson v. County of

18  Kern, 45 F.3d 1310 (9th Cir. 1995), the United States Court of Appeals for the Ninth Circuit

19

---

20          [2]  In a report on completed suicides filed May 16, 2011, the special master's expert
    reported that the suicide rate in CDCR prisons in 2008 "was a continuation of the CDCR's
21  patterns of exceeding the national prison suicide rate" and that "[i]n 78.4 percent of the suicide
    cases in 2008, there was at least some degree of inadequacy in assessment, treatment, or
22  intervention...."  Report on Suicides Completed in the California Department of Corrections and
    Rehabilitation in Calendar Years 2008 and 2009, filed May 16, 2011, at 9.  In 2009, the rate of
23  suicides dropped to the lowest annual suicide rate since 2004 and was below the national average
    for the first time in the same period.  Id. at 5, 14.  However, "in 84 percent of the suicide cases in
24  2009, there was at least some degree of inadequacy in assessment, treatment, or intervention,
    which represented an increase from the rate of inadequacy" for 2008.  Id. at 14.  The average rate
25  of inmate suicide in the CDCR for the period from 2005 through 2009 was 21.8 suicides/100,000
    inmates, compared to the average rate of 16.2 suicides/100,000 inmates for the period from 1999
26  through 2004.  Id.

affirmed a district court decision not to enjoin county the County of Kern from ever using a padded cell, called a safety cell, to temporarily confine violent or suicidal prisoners so they could not hurt themselves.  The court's decision was based on findings of "ample testimony that some prisoners become so violent and such a danger to themselves that temporary placement in a safety cell was needed in order to deprive the prisoners of all means of harming themselves" and "sufficient evidence to support the district court's factual finding that the safety cell was used to control violent inmates, and that the inmates were confined to the safety cell only for short periods of time." Id. See also Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995) (prison officials were entitled to qualified immunity from liability on an Eighth Amendment claim brought by an individual prisoner who had been placed in a strip cell without clothing or bedding for four days; there is "no absolute Eighth Amendment right not to be put in a cell without clothes or bedding" and no evidence that the plaintiff in that case had suffered any injuries or that his health had been impaired); McMahon v. Beard, 583 F.2d 172 (5th Cir. 1978) (no constitutional violation in a case brought by a pretrial detainee who, after attempting suicide by hanging himself with strips made from sheets, was confined for up to three months in a cell without a mattress, sheets, or blankets; evidence showed that the decision to house the plaintiff under these conditions was made to protect the plaintiff, not to punish him, and that the housing properly continued as long as plaintiff remained suicidal).

        The special master's recommendation incorporates the principle for which these cases stand:  that a suicidal inmate may be removed to a cell without a bed or bedding if such placement is necessary to secure the inmate's health or safety.  However, none of the cases supports defendants' position that under the circumstances of this case failing, as a matter of

/////

/////

/////

/////

1    policy and practice, to have beds available in MHCB units for suicidal inmates satisfies the

2    Eighth Amendment.[3]

3           Defendants also contend that the recommended order does not meet the need-

4    narrowness-intrusiveness requirements of the Prison Litigation Reform Act, 18 U.S.C. §

5    3626(a)(1)(A) because it is not the "least intrusive" means to correct the Eighth Amendment

6    violation at issue.  In their objection, defendants state that "mandating suicide resistant beds is

7    not necessary because the clinician is currently managing the treatment of individual patients."

8    Objection at 7.  Apparently defendants' view is that clinical management of suicidal inmates is

9    the least intrusive remedy and nothing further is required.  This argument misses the mark.

10   Currently, it appears that clinicians managing the treatment of suicidal inmates in all MHCB

11   units except those at San Quentin and CMF do not have the option of placing those inmates in

12   any bed at all, let alone a suicide resistant bed.  More to the point, the special master has

13   recommended development of a plan to provide suicide resistant beds in MHCB units.  In

14   developing that plan, defendants can and should rely on the clinical judgment of those who are

15   involved in the difficult and delicate task of managing suicidal inmates in crisis beds.  Nothing in

16   the special master's recommendation precludes or discourages such reliance.

17          Finally, defendants contend that requiring them to develop a plan to provide

18   suicide resistant beds for at-risk inmates in MHCB units would "effectively declare portions" of

19   a state regulation unconstitutional.  Objection at 6.  Defendants make no cogent argument as to

20   how or why adopting the special master's recommendation would work this result. [4]

21

22          [3] Evidence before the court shows that most suicidal inmates placed in MHCBs are
     required to sleep on the floor, either directly on the concrete or with, at most, "a thin mattress, a
23   blanket and a suicide smock."  Kahn Declaration at ¶ 3.

24          [4] Defendants cite to Cal. Code Reg. tit 22, § 79829(a), which provides:

25          (a)  A clean, comfortable bed with a mattress, pillow, blankets, bed
             linen and provisions for the storage of personal items shall be
26           provided for each licensed bed.  All furnishings will be in good
             repair and suitable for special inmate-patient needs.

As the United States Court of Appeals for the Ninth Circuit has recently noted

> [i]n many cases it would not be possible for a district court to produce meaningful need-narrowness-intrusiveness findings concerning each isolated provision of a remedial order. Prospective relief for institutions as complex as prisons is a necessarily aggregate endeavor, composed of multiple elements that work together to redress violations of the law. This is all the more true when relief must be narrow and minimally intrusive: courts often must order defendants to make changes in several different areas of policy and procedure in order to avoid interjecting themselves too far into any one particular area of prison administration. In such circumstances, the necessity of any individual provision cannot be evaluated in isolation. What is important, and what the PLRA requires, is a finding that the set of reforms being ordered-the "relief"-corrects the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures.

Armstrong v. Schwarzenegger, 622 F.3d 1058, 1070-71 (9th Cir. 2010). "Intrusiveness is a particularly difficult issue for defendants to argue" where, as here, what is required is the development and promulgation of a plan. Id. at 1071.

As both the court and the special master have repeatedly found, defendants must take all steps necessary to reduce both the number of inmate suicides and the inadequacies in assessment, treatment and intervention found in an unacceptably high percentage of completed suicides. The special master's recommendation that one of those steps is the development of a plan to provide suicide resistant beds to suicidal inmates in crisis units unless such beds are clinically contraindicated is fully supported by the record, and defendants' objection to the recommendation is without merit.

Accordingly, IT IS HEREBY ORDERED that:

---

Cal. Code Reg. tit 22, § 79829(a). To put it mildly, defendants' citation to this regulation does not help their position. While the court's duty in this case extends only to enforcement of federal constitutional requirements, and not to state regulations, the cited regulation would appear to support entirely the special master's recommendation. That is, the regulation suggests that beds are to be provided in every licensed inmate-patient room, and such beds are to be "*suitable for special inmate-patient needs.*" If a suicidal inmate is placed in a licensed bed, the availability at least of a suicide-resistant bed would seem to be required by the regulation.

1.  The fourth recommendation in the special master's September 27, 2010 Report is adopted in full;

2.  Within sixty days from the date of this order defendants shall file with the court and submit to the special master a plan to furnish suicide-resistant beds in their MHCBs for any at-risk inmates who would otherwise not be provided with a bed while in an MHCB unit; and

3.  Within thirty days thereafter the special master shall report to the court on the adequacy of defendants' plan.

DATED:  July 21, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT