IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RALPH COLEMAN, et al., | | |
| | Plaintiffs, | No. 2:90-cv-0520 LKK JFM (PC) |
| vs. | | |
| EDMUND G. BROWN, JR., et al., | | |
| | Defendants. | ORDER |

   This matter is before the court on a report and recommendations from the special master concerning defendants' November 24, 2010 court-ordered plan to "reduce or eliminate the wait lists for inpatient [mental health] care and, in the interim, to better serve the treatment needs of <u>Coleman</u> class members placed on such lists." Plaintiffs have responded to the report and recommendations, and defendants have filed objections .

/////
/////
/////
/////
/////
/////

1

In March 2010, following completion of the second assessment of unmet needs for inpatient care for class members conducted in this action[1], the court held a status conference to

> hear from defendants concerning the steps they have taken and are taking to ensure that the referral and transfer of inmates to higher levels of care is proceeding in a way that will avoid the need for any future special assessments of unmet need and will ensure that those who required inpatient care are referred and admitted in a timely manner.

Order, filed January 27, 2010, at 7. Following the status conference, the court issued a written order with two provisions, both relevant to the matter at bar, as follows:

> 1. The special master shall monitor defendants' implementation of their policies and practices regarding referral and transfer of Coleman class members for inpatient care. This monitoring shall include, as necessary, collection, review and analysis of relevant data. If at any point during monitoring it becomes apparent to the special master that the sustainability of defendants' inpatient referral process is jeopardized by deficiencies uncovered during monitoring, he shall take all steps necessary to ensure that defendants correct such deficiencies. The special master shall report to the court on defendants' identification and referral process by the end of the year, either in his regular monitoring report or in a special report.
>
> 2. Within ninety days, under the guidance of the special master defendants shall work together to develop a plan to reduce or eliminate the wait lists for inpatient care and, in the interim, to better serve the treatment needs of Coleman class members placed on such lists. The special master shall consult with plaintiffs as appropriate during this process. The plan shall be filed with the court within one hundred twenty days from the date of this order.

Order filed March 31, 2010, at 3-4.

---

[1] The first Unidentified Needs Assessment (UNA) was conducted pursuant to an order of this court filed October 5, 2004. The UNA was completed in March 2005, and defendants then "reported to the special master that 400 inmates were identified through UNA who otherwise would not have been referred to higher levels of care." Special Master's Report on Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Wait Lists, filed June 13, 2011 (hereafter report), at 5. The second assessment, identified as the Mental Health Assessment and Referral Project (MHARP), was conducted pursuant to an order of this court filed March 31, 2009 and completed in December 2009. That assessment resulted in the referral of nearly 1,000 inmates to a higher level of care who otherwise would not have been. See Defendants' Request for Temporary Relief, filed December 31, 2009, at 7.

After receiving an extension of time, on November 24, 2010, defendants filed their Plan Re: Intermediate Care Facility and Acute Inpatient Waitlists (hereafter plan). The plan contains five elements: an Extended Enhanced Outpatient Program Care Plan (EECP); enhanced Utilization Management strategies involving conducting prospective, concurrent and retrospective reviews to "optimize inpatient care"; increased used of the Health Care Placement Oversight Program (HC-POP); activation of a new inmate patient information system called SharePoint; and the construction projects, both short and long-term, identified in defendants' previously filed bed plans.

On February 25, 2011, plaintiffs filed objections to the plan and on March 18, 2011, defendants filed a response to plaintiff's objections. By order filed April 28, 2011, defendants' plan was referred to the special master for a report and recommendations in light of plaintiffs' objections and defendants' response thereto.

The special master makes four recommendations, as follows:

1. That defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Wait List be approved. All parts of the plan should be implemented immediately with the condition that no inmates who are accepted and placed in the EECP shall be removed from the wait list.

2. That the special master should be ordered to monitor and conduct a review of the EECP, including but not limited to staffing. The special master should be ordered to report to the court either in his regular monitoring report or in a special report, whether inmates transferred to the EECP should be removed from the wait list.

3. The Court should set this matter for an evidentiary hearing for defendants to show cause why the 50 beds at Coalinga State Hospital designated for *Coleman* class members, as well as any other vacant beds at the facility, cannot be filled with high-custody CDCR inmates.

4. The defendants should be ordered to conduct a further assessment to determine whether there are unmet needs for inpatient care among the plaintiff class. The assessment should be modeled after MHARP which was conducted in 2009, and only at the original twelve identified male institutions and two female institutions and under the guidance of the special master. As part

of this process, the special master should also be directed to monitor the continued implementation and sustainability of defendants' policies and practices regarding referral and transfer of *Coleman* class members for inpatient care. The special master should be ordered to report to the court on defendants' identification and referral process either in his regular monitoring report or in a special report.

Report at 54.

In response to the first two recommendations, defendants have withdrawn the EECP from their plan. Defendants contend this moots the last sentence of the first recommendation and all of the second recommendation. It is unclear whether defendants are abandoning the EECP altogether or, instead, whether it will continue but they are no longer relying on it to meet their obligations under this court's March 31, 2010 order. Good cause appearing, defendants will be directed to inform the court in writing within ten days whether the EECP will continue.[2]

Defendants object to the special master's recommendation that the court conduct an evidentiary hearing concerning the use of vacant beds at Coalinga State Hospital (Coalinga) for Coleman class members on the wait list for inpatient care. The special master's recommendation is based on his finding that "the inaccessibility to DMH facilities is a primary cause of inmates lingering on the wait list" and that "[t]he only way to achieve any meaningful reduction of the wait list is by placing these inmates into inpatient beds." Report at 44. He

---

[2] In his report, the special master found that defendants' plan "complies with the spirit and intent of the March 31, 2010 court order .... to work under the guidance of the special master" to develop a plan to reduce the wait list. Report at 25. Given the special master's finding that the EECP played a central role in defendants' plan, see Report at 26, and the defendants' decision to withdraw the EECP following the filing of the special master's report, it is no longer clear whether defendants have in fact complied with the March 31, 2010 order. At this time, the court will not adopt the special master's recommendation to approve defendants' plan in its entirety. Instead, the court will approve the second, third and fourth parts of the plan and will direct that those elements be implemented forthwith. Defendants' construction projects are the subject of separate court orders. Approval of section III of the plan concerning interim treatment provided to inmate on the waitlists, and a final determination of whether defendants have complied with the March 31, 2010 order will be deferred pending clarification by defendants as to whether they intend to continue the EECP.

4

reports that the California Department of Mental Health (DMH) had 183 beds available at Coalinga as of June 8, 2011, id., that in April 2011 there were a total of 84 low-custody beds available at Atascadero State Hospital (ASH) and in the inpatient programs run by DMH for CDCR inmates, and that the 50 beds dedicated to Coleman class members at Coalinga State Hospital (Coalinga), another DMH facility, "have been vacant for nearly a year." Id. at 26.

      Defendants contend that setting such an evidentiary hearing would be "disregarding the wide deference given to prison officials in matters of prison security and safety." Defendants' Response and Objections to Special Master's Report on Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Wait Lists (Objections), filed July 11, 2011, at 5. The court cannot agree with defendants' contention. The case law holding that prison officials are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security", Bell v. Wolfish, 441 U.S. 520, 547 (1979), does not insulate the exercise of that judgment from judicial review. Rather, it sets the standard of review that applies when the exercise of that judgment conflicts with constitutional guarantees: "'Such considerations [safety and security] are peculiarly within the province and professional expertise of corrections officials, and, *in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'"* Id. at 548 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)) (emphasis added). The special master's recommendation and the foundation on which it is based demonstrates that, in view of the Eighth Amendment considerations at stake, testing defendants' exercise of that judgment through an evidentiary hearing is warranted at this time. Moreover, given the crisis nature of the wait list the court is not satisfied that "ordinary" rules should apply.

      Defendants also assert that the court's March 31, 2010 order "does not require that Defendants eliminate the waitlist nor does it specify that Defendants reduce the waitlist to a

1  number that the Special Master believes is 'reasonable'; it requires that Defendants develop a
2  plan that, in the interim, better serves the treatment needs of the inmate-patients placed on the
3  SVPP waitlist." Objections at 7.  Defendants misread the March 31, 2010 order: reduction or
4  elimination of the wait lists was to be an essential component of the plan.  See Order filed March
5  31, 2010, at 3.

6  As the special master describes in his report, "[t]he longstanding issues of lack of
7  access to higher levels of care for seriously mentally ill inmates in CDCR predated the UNA
8  study and have existed since the beginning" of this action.  Report at 5.  A report prepared for the
9  California Department of Corrections dated February 16, 1993 and offered into evidence at the
10 trial of this matter "termed access to acute inpatient care a 'major problem' with wait times of
11 several months for transfers to Atascadero State Hospital for inpatient hospitalization in 1992."
12 Report at 5-6 (citing Coleman v. Wilson, 912 F.Supp. 1282, 1309 (E.D. Cal. 1995).  It has now
13 been almost twenty years since those findings, and the problem of access to inpatient care,
14 evidenced in part by the wait lists for inpatient care for seriously mentally ill inmates and the
15 length of stay on those lists, continues.  Further delay in resolution of this problem, particularly
16 when empty inpatient beds exist, is unconscionable.

17 Defendants also contend that converting Coalinga into a place to safely house the
18 inmates on the wait list is not a practical short-term solution – in essence, that it would be too
19 expensive and take too much time to convert the hospital from dorms to celled housing, which
20 they contend these inmates require.  The special master's recommendation is that defendants be
21 ordered to show cause at an evidentiary hearing why beds at Coalinga cannot be filled with high-
22 custody CDCR inmates to alleviate the problem of inpatient wait lists.  Defendants may tender
23 any evidence relevant to resolution of that question at the evidentiary hearing.[3]

---

25 [3] Defendants also challenge the special master's finding that the Salinas Valley Psychiatric Program wait list "would remain relatively stagnant between 172 and 187" inmates until the new correctional health care facility is completed in 2013.  Objection at 9 (citing Report
26 at 42).  The special master's finding is taken directly from section IV of defendants' plan.  See

The special master's final recommendation is for a further assessment of unmet needs for inpatient care. Defendants also object to this recommendation, on two grounds. Defendants' first objection is that this recommendation is not properly included in the report and recommendation before the court, ostensibly because it exceeds the scope of the task delegated to the special master by the court's April 28, 2011 order. This objection is without merit.

As noted above, defendants' obligation to submit the plan that is the subject of the report and recommendations stems from the March 31, 2010 court order that followed the status conference held after conclusion of the 2009 MHARP. In that order, the court found that defendants had "taken 'incremental steps toward establishing a sustainable process of identification and referral for those inmate-patients who need a higher level of care.'" Order filed March 31, 2010, at 2. The court further found that "[a]t this juncture, it is critical that defendants continue that progress." Id. Accordingly, as noted above the court directed the special master to monitor defendants' implementation of their policies and practices regarding referral and transfer of class members for inpatient care. Id. In relevant part, the order provides that "*[i]f at any point during monitoring it becomes apparent to the special master that deficiencies in defendants' implementation of said policies and practices threaten the sustainability of the process, he shall take all steps necessary to ensure that defendants correct such deficiencies.*" Id. (emphasis added). The special master's decision to include in the current report concerns about the status and efficacy of defendants' referral process and to make a recommendation to the court thereon are entirely within the ambit of the March 31, 2010 order.[4]

Moreover, the relevant history of this litigation demonstrates that questions concerning the adequacy of defendants' referral process cannot be separated from the ongoing

---

Report at 42 n.33; Plan at 25, Table Columns 12/15/2011 through 3/15/2013.

[4] In March of this year, in his twenty-second round monitoring report, the special master signaled his concern about whether defendants' referral process had taken hold. See Twenty-Second Round Monitoring Report, filed March 9, 2011, at 438.

problem of inpatient wait lists – which, after all, are stark and ongoing evidence of defendants' inability to meet for over twenty years their constitutional obligation to provide timely access to necessary and adequate mental health care to members of the Coleman class in need of inpatient hospital care. The special master's report sets forth the history of unidentified need for inpatient mental health care that has plagued this litigation since its inception. The report provides particular detail on the concentrated efforts since the year 2000 of the special master, his staff, and defendants to break the cycle of unidentified need for inpatient hospital care. The special master has once again appropriately focused the court's attention on the likelihood that there is still significant unidentified need among members of the Coleman class for inpatient care.

Defendants also object that a repeat of the 2009 MHARP is unnecessary because they have "developed and implemented multiple steps to manage and sustain the referral process." Objection at 14. They contend that this is reflected in the rate of referrals to inpatient care since the special master completed his 2010 follow-up to MHARP. Id.[5] In response to the special master's decision to recommend a further MHARP, on June 8, 2011, defendants sent a letter to the special master outlining an alternative proposal for assessing unidentified need. See Ex. B to Report. Then, apparently after the special master's recommendation was pending before this court, defendants commenced that alternative assessment process. This alternative process differs significantly from the MHARP process. Compare Ex. A to Report with Ex. B to Report. Using apparently the same criteria as used in MHARP to determine whether an inmate's record should be examined for consideration of referral to inpatient care,[6] and drawing from the fourteen

---

[5] Defendants dispute the average monthly referral rate for the period from August 2010 to April 2011, reported by the special master as 54.7. Report at 49. Defendants contend their data shows an average rate for the same period of 80.22 referrals per month. Objections at 22.

[6] The criteria identify Enhanced Outpatient (EOP) inmate-patients who had one or more of the following (1) three or more admissions to a mental health crisis bed or placement in an outpatient housing unit (OHU) during the last six months; (2) an average of less than five hours of weekly programming for the last three months; and (3) three or more closed CDCR 115-MH Rules Violation Report: Mental Health Assessments during the last three months.

institutions the special master proposed to assess, defendants generated a list of inmate-patients. That list contains 2083 names meeting one or more of the relevant criteria. Of those, 1408 inmate-patients were randomly reviewed at the fourteen institutions. The institutions reported that the appropriate referral process had been completed for just 201 of the individuals. For 628 inmate-patients, the process was not completed, and the institutions have been given until the end of July to review these records and take further steps. The remaining 579 inmate-patients had transferred, paroled or did not meet the clinical indicators after review. There is no indication whether any follow-up was directed for those who had transferred to another institution.

    The special master's fourth recommendation is based on his finding that the bed need identified in MHARP more closely approximates the actual inpatient bed need than the referrals to inpatient care that are currently being generated. See Report at 2 (the numbers identified in the MHARP referral process "capture a more accurate picture of the true need for higher levels of care.") Although defendants dispute the special master's data on referrals, the numbers generated by defendants' own preliminary attempt at assessment, if anything, would seem to support this finding. Moreover, the initial results of defendants' assessment cast serious doubt on whether their referral process is working adequately to resolve the problem of unidentified need for inpatient care, a problem which has only become cyclical rather than constant as a result of the two assessments undertaken under the special master's supervision.

    The data resulting from defendants' initial steps in conducting their own assessment was not available to the special master when he filed his report. It appears from the record that given the steps defendants have taken in June, it may be redundant to start a further assessment process from the beginning. It further appears from the record, however, that the special master's concerns may be well-founded. Given the urgent need to ensure that all Coleman class members in need of inpatient care are properly identified and referred for such care, the court will set this matter for hearing on the assessment described by defendants in their objections and whether said assessment is appropriate to adequately identify Coleman class

members in need of inpatient care who should have but were not identified through defendants' referral process. Said hearing will be consolidated with the evidentiary hearing concerning use of beds at Coalinga State Hospital.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The June 13, 2011 recommendations of the special master are adopted in part;

2. The second, third, and fourth parts of defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Wait List are approved and shall be implemented immediately;

3. Within ten days from the date of this order defendants shall inform the court in writing whether the EECP will continue;

4. This matter is set for evidentiary hearing before the undersigned on August 17, 2011 at 10:00 a.m. in Courtroom # 4. At the evidentiary hearing, defendants shall show cause why the 50 beds at Coalinga State Hospital designated for *Coleman* class members, as well as any other vacant beds at the facility, cannot be filled with high-custody CDCR inmates. At the same time, the court will take evidence on the assessment described by defendants in their objections and whether said assessment is appropriate to adequately identify Coleman class members in need of inpatient care who should have been but were not identified through defendants' referral process.

DATED: July 22, 2011.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT