DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LAURA BOYSEN-ARAGON - 248083
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:    (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California  94104-4244
Telephone:    (415) 864-8848

WARREN E. GEORGE – 053588
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California  94111-4066
Telephone:    (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| RALPH COLEMAN, et al., | Case No. Civ S 90-0520 LKK-JFM |
|---|---|
| Plaintiffs, | **JOINT STATEMENT RE DISCOVERY DISAGREEMENT** |
| v. | |
| EDMUND G. BROWN, Jr., et al., | Judge:   Hon. John F. Moulds |
| Defendants.[1] | |

[1] The names of Defendants currently serving and their official capacities have been substituted pursuant to Fed. R. Civ. P. 25.

[534387-1]

1

## TABLE OF ABBREVIATIONS

2

| ASH | Atascadero State Hospital |
|-----|---------------------------|
| CDCR | California Department of Corrections and Rehabilitation |
| CSH | Coalinga State Hospital |
| DMH | Department of Mental Health |
| EECP | Extended Enhanced Outpatient Program Care Plan |
| MHARP | Mental Health Assessment and Referral Project |
| PSH | Patton State Hospital |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

[534387-1]

## I.     JOINT STATEMENT REGARDING THE NATURE OF THE CASE AND DISCOVERY DISPUTES

This dispute concerns discovery requested on July 1, 2011 in connection with an evidentiary hearing now set for August 17, 2011.  Because less than three weeks remain until the evidentiary hearing, Plaintiffs request that the court hear and consider this dispute on an expedited basis.

Plaintiffs are a class of state prisoners with serious mental illness.  Defendants are the Governor and officials from the California Department of Corrections and Rehabilitation (CDCR) and the California Department of Mental Health (DMH).  On March 31, 2010, the Court ordered Defendants to develop a plan to "reduce or eliminate the wait lists for inpatient care and, in the interim, to better serve the treatment needs of *Coleman* class members placed on such lists," Order at 3, Dkt. No. 3831, and to file their plan with the Court by June 29, 2010.  On November 24, 2010, Defendants submitted a Plan Re:  Intermediate Care Facility and Acute Inpatient Waitlists to the Court.  Dkt. No. 3962.  On February 25, 2011, Plaintiffs submitted their Objections to Defendants' Plan to Address Waitlists for Inpatient Care and to Reduce Harms Inflicted on Class Members on Waitlists, Dkt. No. 3987, to which Defendants responded on March 18, 2011.  Dkt. No. 3994.  On April 27, 2011, the Court directed the Special Master to file a report within 45 days "on the adequacy of defendants' plan and whether, in light of plaintiffs' objections, any modification(s) thereto should be required."  Order at 2, Dkt. No. 4004.

On June 13, 2011, the Special Master filed the Special Master Report on Defendants' Plan Re:  Intermediate Care Facility and Acute Inpatient Wait Lists

(hereinafter, the "Special Master Report"), Dkt. No. 4020, in which the Special Master

recommends the following:

1.  That defendants' Plan Re:  Intermediate Care Facility and Acute Inpatient Wait List be approved.  All parts of the plan should be implemented immediately with the condition that no inmates who are accepted and placed in the EECP[2] shall be removed from the wait list.

2.  That the special master should be ordered to monitor and conduct a review of the EECP, including but not limited to staffing.  The special master should be ordered to report to the court either in his regular monitoring report or in a special report, whether inmates transferred to the EECP should be removed from the wait list.

3.  The Court should set this matter for an evidentiary hearing for defendants to show cause why the 50 beds at Coalinga State Hospital designated for *Coleman* class members, as well as any other vacant beds at the facility, cannot be filled with high-custody CDCR inmates.

4.  The defendants should be ordered to conduct a further assessment to determine whether there are unmet needs for inpatient care among the plaintiff class.  The assessment should be "modeled after MHARP[3] which was conducted in 2009, and only at the original twelve identified male institutions and two female institutions and under the guidance of the special master.  As part of this process, the special master should also be directed to monitor the continued implementation and sustainability of defendants' policies and practices regarding referral and transfer of *Coleman* class members for inpatient care.  The special master should be ordered to report to the court on defendants' identification and referral process either in his regular monitoring report or in a special report.

_____

[2] Defendants designed the Extended Enhanced Outpatient Program Care Plan (EECP) with the intent of providing "treatment at select institutions for a sub-group of [Enhanced Outpatient Program] inmates who exhibit serious and persistent mental illness."  Special Master Report, Dkt. No. 4020 at 31.

[3] The Mental Health Assessment and Referral Project (MHARP) was a court ordered review by CDCR, both clinical and custody, and DMH "to determine the existence and extent of any previously unidentified need for inpatient beds among members of the *Coleman* plaintiff class."  Special Master Report, Dkt. No. 4020 at 7.

[534387-1]

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1  Special Master Report, Dkt. 4020 at 54.

2         The Court granted the parties the opportunity to file and serve responses to the

3  Special Master Report and the Special Master's recommendations contained therein no

4  later than July 1, 2011.  Dkt. No. 4025, June 17, 2011.  Plaintiffs submitted their response

5  to the Special Master Report and the Special Master's recommendations contained therein

6  on July 1, 2011.  Dkt. No. 4034 (hereinafter, "Plaintiffs' Response").  Defendants

7  submitted their response to the Special Master Report and the Special Master's

8  recommendations contained therein on July 1, 2011.  Dkt. No. 4035.

9         On July 1, 2011, Plaintiffs served on Defendants Plaintiffs' First, Second and Third

10  Requests for Inspection.  Galvan Decl. ¶¶ 2-4, Exhibits A, B, C.  Plaintiffs requested

11  inspections by Plaintiffs and Plaintiffs' experts of three DMH facilities, specifically,

12  Atascadero State Hospital (ASH), Coalinga State Hospital (CSH), and Patton State

13  Hospital (PSH), respectively.  *Id.*  As part of these inspections, Plaintiffs informed

14  Defendants that Plaintiffs' counsel and Plaintiffs' experts would "physically walk through

15  and observe" all areas of the DMH facility, review "operational and security documents,"

16  confer with DMH staff at the DMH facility, confer with *Coleman* class members, and

17  review *Coleman* class member records.  *Id.*  ASH, CSH and PSH are all run by DMH.  *Id.*

18  On July 12, 2011, Defendants provided Plaintiffs with Defendants' Responses and

19  Objections to Plaintiffs' First, Second, and Third Requests for Inspection.  Galvan Decl. ¶

20  5, Exhibit D.

21         On July 22, 2011, the district court issued an order setting an evidentiary hearing on

22  August 17, 2011.  (Docket No. 4045).  The order provides in pertinent part:

23

> This matter is set for evidentiary hearing before the
> undersigned on August 17, 2011 at 10:00 a.m. in Courtroom #
> 4. At the evidentiary hearing, defendants shall show cause why
> the 50 beds at Coalinga State Hospital designated for Coleman
> class members, as well as any other vacant beds at the facility,
> cannot be filled with high-custody CDCR inmates.

(Docket No. 4045 at 10).

## II.     JOINT STATEMENT REGARDING DETAILS OF THE MEET AND CONFER

During the week of July 11, 2011, Plaintiffs and Defendants met and conferred via teleconference on July 13, July 14, and July 15, as well as exchanged various other communications via email and telephone calls between individual counsel concerning numerous discovery issues, coming to agreement on some, and identifying a number to issues to bring before this Court for resolution. Galvan Decl. ¶ 6.

In a phone conference on July 15, 2011, the parties agreed that the remaining discovery disputes would need to be resolved by Magistrate Judge Moulds. *See* Galvan Decl. ¶ 6. Nine disputed issues remain contested by the parties and are described in Defendants' Responses and Objections to Plaintiffs' First, Second and Third Requests for Inspection. *See* Galvan Decl. ¶¶ 5, 7-9, Exhibits D, E, F, G.

After the Court issued its July 22, 2011 order, which addresses only Coalinga State Hospital, and not ASH and PSH, Plaintiffs informed Defendants that Inspection Requests Nos. 1 and 3 (concerning ASH and PSH, respectively), are withdrawn. This dispute now only concerns Inspection Request No. 2, regarding Coalinga State Hospital.

[534387-1]

5

III.    **DEFENDANTS' OBJECTIONS**

 A. **DEFENDANTS' GENERAL OBJECTION:**

> Defendants object to each and every request for inspection in
> its entirety because this case is in the post-judgment, remedial
> phase and discovery is closed. (See Docket No. 1988.)  Under
> the Federal Rules of Civil Procedure, there is no mechanism to
> seek discovery in the post-judgment, remedial phase of a case

  1. **PLAINTIFFS' POSITION**

   (a) **Defendants' Contention That Plaintiffs Are Not Entitled To
Any Post-Judgment Discovery Is Contrary To Applicable
Law And Procedure And The Holdings Of This Court, And
Discovery Is Warranted In This Case.**

Defendants have unreasonably delayed transferring Plaintiffs to available hospital beds.  Some have committed suicide while waiting for an inpatient bed.  When a prisoner faces a medical emergency that requires hospitalization they are immediately sent to hospital facilities with the appropriate level of care; anything less would be unconscionable and unconstitutional.  Plaintiffs face medical emergencies and require immediate mental health hospitalization, which has been prescribed by their physicians.   Yet, Defendants allow Plaintiffs to languish on a wait list, while beds that could provide necessary treatment for these ill individuals remain empty.  Defendants continued to delay the process of addressing this emergency, even after the district court  gave them a 120-day extension on submitting their plan.  The district court has ordered an evidentiary hearing on obstacles to access life-saving inpatient hospital beds.  Expert inspections are necessary to assist the Court in resolving the specific factual questions raised by the Special Master's recommendations regarding high-custody patient access to Coalinga State Hospital.

Federal Rule of Civil Procedure 26(b) provides in part, "For good cause, the court

1  may order discovery of any matter relevant to the subject matter involved in the action."

2  Although this case is post-trial, it is still in the remedial phase, and plaintiffs seek

3  discovery regarding the recommendations in the Special Master Report, specifically in

4  preparation for the proposed evidentiary hearing regarding the DMH wait list and empty

5  beds at CSH.  CSH has empty beds that *Coleman* class members cannot access because of

6  Defendants' exclusionary criteria and custody-related barriers.  Defendants  consistently

7  exclude *Coleman* class members from CSH despite the numerous vacant beds there.

8  Discovery by Plaintiffs is directly related to the inadequate treatment of seriously mentally

9  ill *Coleman* class members.  Discovery by Plaintiffs as to whether DMH has the ability to

10  safely and securely treat *Coleman* class members lingering on the DMH wait list is directly

11  relevant to the subject matter of this case, Plaintiffs' original complaint, the urgent issues

12  raised by the Special Master's new report and recommendations, and the district court's

13  order setting the evidentiary hearing for August 17, 2011. *See Palmer v. Rice*, 231 F.R.D.

14  21, 24 (D.D.C. 2005) (Under FED. R. CIV. P. 26, "plaintiffs are entitled to the requested

15  discovery because it is relevant to plaintiffs' original complaint and their claims of

16  discrimination [after the consent decree].").  At issue in this hearing is whether the

17  exclusionary criteria that Defendants' use to block access to these beds are reasonable in

18  light of the emergency shortage of beds.  Answering that question requires facts about the

19  hospital, not simply a reassertion of the exclusionary criteria.

20         Discovery is routinely available in post-judgment cases where the remedy is not yet

21  final, and as a result, litigation is ongoing. *See, e.g., Palmer*, 231 F.R.D. 21 (D. D.C. 2005)

22  (Court granted plaintiffs' motion for discovery nine years after approval of consent decree

23

1    and fifteen years after decision in case); *U.S. v. Cimino*, 219 F.R.D. 695 (N.D. Fla. 2003)

2    (post-judgment discovery in debtor case pursuant to Fed R. Civ. P. 25 and 45); *Rolland v.*

3    *Cellucci*, 151 F.Supp.2d 145, 157-58 (D. Mass. 2001) (plaintiffs' reliance on post-

4    judgment discovery and experts was appropriate and provided an appropriate background

5    to court's consideration of motion for post-judgment relief).  In *Palmer*, the Court granted

6    discovery where, "regardless of plaintiffs' entitlement to post-judgment discovery in the

7    generic sense, plaintiffs argue that they need this information in order to respond to

8    [Defendants' Motion to Terminate the Consent Decree]." 231 F.R.D. at 25.  Similarly, in

9    prison conditions litigation cases where defendants have moved to terminate a consent

10   decree or injunction pursuant to the Prison Litigation Reform Act, courts routinely hold

11   that plaintiffs are entitled to discovery and evidentiary hearings. *See Loyd v. Alabama*

12   *Dept. of Corrections*, 176 F.3d 1336 (11th Cir. 1999) (abuse of discretion for district court

13   to refuse to conduct evidentiary hearing concerning current conditions at prison and scope

14   of prospective relief to be terminated); *Ginest v. Bd. of County Commissioners of Carbon*

15   *County, Wyoming*, 295 F.Supp.2d 1274 (D. Wyoming 2003) (Court granted discovery,

16   noting the state would propose that the district court be forbidden from supplementing the

17   past record); *Ruiz v. Johnson*, 37 F. Supp. 2d 855 (S.D. Tex. 1999) (Court found that

18   plaintiffs were entitled to further discovery despite defendants' position that litigation was

19   years old, plaintiffs had time for discovery, and were entitled to no further discovery).

20   Moore's Federal Practice is in accord:

21           There is nothing in Rule 34 concerning its applicability once a
             judgment has been obtained. *However, Rule 69 explicitly*

22           *allows the use of the procedures set forth in the federal*
             *discovery rules in aid of enforcement of a judgment.*

23

1    7-34 Moore's Federal Practice—Civil § 34.03(d) (emphasis added).

2         While this discovery is not requested to oppose a motion to terminate, it is

3    requested in connection with the fashioning of a remedy by the Court and the necessary

4    consideration by the Court whether Defendants must fill vacant beds at DMH facilities

5    with *Coleman* class members on the DMH wait list who desperately need them.  The *Gates*

6    case included significant post-judgment litigation and findings by the Court on disputed

7    issues subsequent to evidentiary hearings and the testimony of experts retained by both

8    parties. *See, e.g., Gates v. Gomez*, 60 F.3d 525, 532 (9th Cir. 1995) (evidentiary hearing

9    and expert testimony regarding 37mm gun dispute).  In the *Coleman* case, the parties

10   recently completed extensive post-judgment discovery, including expert tours, to address

11   the Plaintiffs' request for an order setting a population cap.  *See Brown v. Plata,* 131 S.Ct.

12   1910, 1932-1936 (2011) (discussing evidence gathered by expert witnesses touring post-

13   judgment inspections of California prisons).

14        Contrary to Defendants' contentions, this Court has not ruled that discovery is

15   closed.  On the contrary, the district court issued an order on May 25, 2006 establishing a

16   procedure for discovery on disputed issues concerning the *Coleman* Program Guides.  Dkt.

17   No. 1822.  In its September 28, 2006 Order, this Court held that discovery remains

18   available "in a specific legal and factual context." Dkt. No. 1988 at 3.

19              **(b)    Plaintiffs' Request For Reasonable Discovery Concerning
                        Evidentiary Issues Raised By The Special Master's Report
20                      Is Appropriate and Should be Granted Because the Benefit
                        In This Case Far Outweighs Any Burden On Defendants.**

21

22        The appropriate standard for considering plaintiffs' discovery request is found in

23

1   Federal Rule of Civil Procedure 26(b)(2). Under that rule, requests for discovery may be

2   limited by the court if:

3       i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable

4   from some other source that is more convenient, less burdensome, or less expensive;

5       ii) the party seeking discovery has had ample opportunity by discovery in the action

6   to obtain the information sought; or

7       iii) the burden or expense of the proposed discovery outweighs its likely benefit,

8   taking into account the needs of the case, the amount in controversy, the parties' resources,

9   the importance of the issues at stake in the litigation and the importance of the proposed

10  discovery in resolving the issues.

11      In the Ninth Circuit, defendants have a heavy burden to show why discovery should

12  be denied. *See, e.g., Blankenship v. Hearst Corporation*, 519 F.2d 418, 429 (9th Cir. 1975)

13  ("Under the liberal discovery principles of the Federal Rules defendants were required to

14  carry a heavy burden of showing why discovery was denied."); *see also Hogan v.*

15  *Robinson*, 2006 U.S. Dist. LEXIS 33531, *5-6 (E.D. Cal. 2006) ("The party who resists

16  discovery has the burden to show that discovery should not be allowed, and has the burden

17  of clarifying, explaining, and supporting its objections," quoting *Oakes v. Halvorsen*

18  *Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Ca. 1998)).

19      In this case, Defendants are unable to meet this burden. The information sought is

20  discoverable only from Defendants as it relates to conditions at institutions for which

21  Defendants control access, and gathering data and information on policies again known

22  only to Defendants.  The head of the Department of Mental Health has been a Defendant in

23

1  this case since June 27, 2006. Dkt. 1855. The Court must allow Plaintiffs' an opportunity

2  to dispute the claims made by Defendants as to why they continue to refuse Plaintiffs

3  immediate, live-saving access to hospital care.

4        Plaintiffs have requested one inspection which will last less than a full day. This

5  discovery is vitally important to the key issues of this case. The importance of access to

6  appropriate levels of mental health treatment and care is of the utmost importance in this

7  case in which the lives of mentally ill plaintiffs are at stake. Plaintiffs' expert witnesses

8  have not had access to the DMH facilities, and cannot assist the Court in resolving these

9  disputed issues without evaluating the current security conditions at these facilities.

10        In short, there is no legal basis for Defendants' position that an absolute bar to post-

11  judgment discovery is appropriate here. Rather, this Court should rule that Plaintiffs have

12  a right to conduct reasonable discovery in order to prepare for the evidentiary hearing

13  concerning the DMH wait list and open beds at DMH facilities. Expert inspections are

14  necessary to assist the Court in resolving the specific factual questions raised by the

15  Special Master's recommendations regarding high-custody patient access to CSH.

16                **2.    DEFENDANTS' POSITION**

17        Rule 34 of the Federal Rules of Civil Procedure does not contemplate post-judgment

18  inspections. It is well settled that Rule 34 refers only to pre-trial discovery. "There is

19  nothing in Rule 34 concerning its applicability once a judgment has been obtained. . . .

20  After a litigation has concluded, discovery under Rule 34 is not permitted." 7-34 Moore's

21  Federal Practice – Civil § 34.03(d). Since Plaintiffs have withdrawn their requests for

22  inspection concerning Atascadero and Patton State Hospitals, Defendants' responses relate

23

1    to Coalinga State Hospital only.

2        Under Rule 16(b)(3) and 16(b)(4), the scheduling order must limit the time to

3    complete discovery and a scheduling order can only be modified for good cause and with

4    the court's consent.  Fed. R. Civ. P. 16(b)(3), (b)(4).  Here, discovery closed long ago and

5    has not been reopened.  Thus, this case can be distinguished from cases where discovery is

6    open.  Plaintiffs must show here why they need discovery reopened.

7         In the Special Master's recommendations regarding Coalinga State Hospital, he did

8    not recommend or request any additional inspections of Coalinga.  Thus, there is no need

9    for these inspections.

10       Plaintiffs' reliance on a 2006 order to contend that discovery is open is misplaced.

11   This Court recognized in 2006 that in order for Plaintiffs to obtain documents relating to

12   Program Guide revisions, it would have to "reopen discovery."1988 at 3: "Under the

13   circumstances of this case, the court finds it inappropriate to reopen discovery except,

14   perhaps, in a specific factual and legal context.")  But the Court did not find Plaintiffs had

15   made a showing that would justify reopening discovery regarding Program Guide

16   revisions.  1988 at 3.)

17       It is curious that Plaintiffs have not moved for leave to reopen discovery in this case,

18   instead relying on their own assertions that discovery should be allowed and a

19   misinterpretation of the Court's prior order.  In any event, discovery is closed and should

20   remain closed, as Plaintiffs have not shown that it is allowed or even necessary in this

21   post-judgment, remedial phase of the case.

22       It should be noted that the examples and authority that Plaintiffs rely on in support of

23

[534387-1]

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1   their request to reopen discovery all concern cases relating to the original facilities in the

2   respective lawsuits.  But here, Plaintiffs have asked to inspect state hospitals, which were

3   not part of the original *Coleman* case, and which have never been found to be

4   unconstitutional.  This difference is significant.

5       Plaintiffs argue that their experts need to evaluate the security level at CSH.  But the

6   real issue here, which Plaintiffs ignore, is the custody status of the inmate-patients on the

7   Salinas Valley Psychiatric Program waitlist for Intermediate Care Facility level of care.

8   Those custody factors require a celled prison setting, not a dormitory hospital setting.  See

9   Cal. Code Reg. tit. 15 § 3377 (Facility Security Levels); § 3377.1 (Inmate Custody

10  Designations); § 3375.1 (Inmate Placement); § 3375.3 (CDC Classification Score Sheet).

11  No one disputes that Coalinga is a hospital, not a prison.  Nor is there a dispute that

12  Coalinga does not have celled housing and is similar to a Level II CDCR facility.  (*See*

13  Docket 3994 at 23.)  The question is whether the inmates on the SVPP wait list require

14  celled housing—which California regulations require—not the security level of CSH.

15      The fact that Plaintiffs are requesting inspections of *state hospitals* operated by the

16  Department of Mental Health makes this different than tours of prisons run by the

17  Department of Corrections and Rehabilitation.  Tours of prisons were conducted during the

18  pre-trial discovery leading up to the trial in the Three Judge Court proceeding—not, as

19  Plaintiffs suggest, as part of *Coleman* itself.  The issue in the Three Judge Court

20  proceeding was overcrowding in state prisons, the same institutions that were the subject

21  of the *Coleman* and *Plata* lawsuits.  In the 1995 *Coleman* trial, the mental health treatment

22  in California *prisons* was held to fall below constitutional standards.  No such finding has

23

1    ever been made in regards to DMH's state hospitals.  DMH was brought into this case in

2    2006 to assist in the remedial phase of the case.  There has never been any holding that

3    DMH has provided care that violates the United States Constitution.  Therefore,

4    inspections of these hospitals are a completely different undertaking than a prison

5    inspection.

6

7    **B.    DEFENDANTS' SPECIFIC OBJECTION NO. 1:**

8        These requests violate the Order of Reference in this case (Dkt.
         No. 640) and invade the areas of authority of the Special
9        Master. These requests contemplate inspections at Department
         of Mental Health (DMH) facilities, meetings with DMH and
10       California Department of Corrections and Rehabilitation
         (CDCR) staff, and review of medical records, mental health
11       records, central files, and any other records. In this case, this
         type of inspection is exclusively under the authority of the
12       Special Master.

13       **1.    PLAINTIFFS' POSITION**

14       There is no specific language in the Order of Reference, Dkt. No. 640, prohibiting

15   inspections of DMH facilities by Plaintiffs' counsel or Plaintiffs' experts.  The Order of

16   Reference expressly recognizes that "this remains an adversarial proceeding where both

17   sides of the litigation are represented by counsel."  Dkt. No. 640 at 2.  The Order of

18   Reference thus recognizes that the parties are entitled to due process.  Where factual issues

19   are joined as they are here, and where one side has unique access to the facilities, staff and

20   documents, due process requires that the other side have access to information needed to

21   present its side of the facts.

22       Further, although the Special Master and his team engage in monitoring of CDCR

23   institutions on behalf of the Court, this arrangement does not foreclose discovery by

1    plaintiffs nor relieve plaintiffs' counsel of their obligation to conduct independent

2    discovery and monitoring.  In *Loyd*, 176 F.3d at 1342, the Attorney General of Alabama

3    argued that the plaintiff class was not entitled to an evidentiary hearing on the state's

4    motion to terminate under the PLRA because the record was current, in that the court-

5    appointed monitor had provided eleven reports to the court.  However, the Eleventh Circuit

6    held that "[a] report alone cannot be cross-examined or disputed.  The party opposing

7    termination must be given the opportunity to challenge or supplement the findings of the

8    monitor and to present evidence concerning the scope of the challenged relief…"  *Id.*

9    Similarly, this Court's May 24, 2006 Order sets forth a procedure for addressing disputed

10   issues that includes the appointment and depositions of expert witnesses, the presentation

11   of evidence, and an evidentiary hearing.   Dkt. 1822 at 2.  Further, this Court's September

12   28, 2006 Order states that discovery remains available "in a specific legal and factual

13   context."  Dkt. 1988 at 3.  If this procedure is to be meaningful, plaintiffs must be allowed

14   to conduct discovery.

15          The roles of Plaintiffs' counsel and the Special Master differ, and Plaintiffs' counsel

16   has an independent obligation to advocate on behalf of the class. This advocacy necessarily

17   includes investigating conditions which may violate the constitutional rights of class

18   members, and apprising the Court of violations and concerns. In similar prison conditions

19   class actions involving Defendants, this post-trial discovery routinely includes tours,

20   document production, and depositions, even where a Special Master has been appointed.

21   *See, e.g.*, *Armstrong* Post-Trial Disc. Stip.; *Valdivia* Order for Perm. Inj. Relief.  Dkt. No.

22   1034, March 9, 2004.

23

## 2.    DEFENDANTS' POSITION

Unlike *Valdivia* and *Armstrong*, this case has a Special Master who, with the aid of his team of experts and monitors, regularly conducts detailed inspections of state prisons in California.  What Plaintiffs are requesting closely tracks the Order of Reference and is the type of inspection that should be conducted by the Special Master and his team, if at all. The Special Master is in the position to advise the Court in this case.  This case is easily distinguishable from other institutional reform cases in that there is a Special Master who has spent years inspecting and reporting on large institutions in California, *i.e.* state prisons.  These proposed inspections of state hospitals could be undertaken, if ordered by the Court, by the Special Master's team.  Therefore, there is no need for the Plaintiffs' expert to inspect these hospitals.

Plaintiffs' reliance on the Court's order from May 24, 2006, is misplaced, because it sets out a procedure to resolve disputes relating to Program Guide revisions occurring in 2006.  (Docket No. 1822 at 2.)  That situation is completely irrelevant to the current request to inspect a state hospital.  Also, in the Court's September 28, 2006 order, the Court considers whether to "reopen discovery," meaning that discovery was closed. (Docket No. 1988 at 3.)


### C.    DEFENDANTS' SPECIFIC OBJECTION NO. 2:

> Under Rule 34, these requests for inspection are untimely.
> Rule 34(b)(2)(A) allows Defendants 30 days after service of a
> request for inspection to respond in writing. These requests
> were served on July 1,2011, with inspections scheduled for
> July 13, 14, and 15, which is less than 30 days. Thus, assuming
> arguendo that discovery is permitted, the requests are untimely.

1    The parties resolved this objection with an agreement that the inspection of

2    Coalinga, if any, would be rescheduled for a date after this Court resolved the disputes,

3    assuming the Court find in Plaintiffs' favor.

4    **D.    DEFENDANTS' SPECIFIC OBJECTION NO. 3:**

5        Plaintiffs' experts have not been disclosed. Under Rule
         26(a)(2), Plaintiffs must disclose the identities of their experts

6        and provide written reports. Defendants object to the
         attendance of any undisclosed experts at any inspections,

7        assuming arguendo that discovery is even permitted.

8    The parties resolved part of this objection with an agreement that any expert names

9    would be disclosed no later than 7 days before the inspection, if practicable.  Because the

10   evidentiary hearing has now been set for August 17, 2011, however, it may be necessary to

11   move the inspection closer to the disclosure.  Defendants, however, subsequently requested

12   during the meet and confer that Plaintiffs' experts be subject to deposition before any

13   evidentiary hearing.

14   **1.    PLAINTIFFS' POSITION**

15   Defendants have noticed no depositions.  In the event that depositions are noticed,

16   disputes regarding depositions can be resolved separately.  In any event, depositions are

17   not necessary in the period leading up to the August 17, 2011 evidentiary hearing.  Rather,

18   depositions will only lead to further needless delay in the receipt of essential mental health

19   treatment by *Coleman* class members.

20   **2.    DEFENDANTS' POSITION**

21   The parties have agreed that the Plaintiffs will disclose their expert or experts under

22   Rule 26 at least seven days before the inspection.  Defendants believe that this expert or

23   experts should also be made available for deposition before the evidentiary hearing on

1   August 17.  Fed. R. Civ. P. 26(b)(4)(A).  This is standard practice under Rule 26 for

2   retained experts, and Plaintiffs have not shown why a short, less than one-day deposition

3   of their expert witness before the evidentiary hearing would be such a burden.

4

5       **E.      DEFENDANTS' OBJECTION NO. 4:**

6           These requests are overbroad. These requests seek to inspect
            and walk through each entire facility, not just areas that may
7           house Coleman class members. Such requests implicate the
            privacy rights of hospital patients who are not CDCR inmates
8           or Coleman class members. The requests also seek to review
            operational and security documents, without limitation,
9           including post orders, program schedules, operating
            procedures, program guides, security procedures, perimeter
10          security procedures, safety procedures, and/or violence or
            critical incident procedures and policies. As such, these
11          requests amount to an impermissible fishing expedition,
            impermissibly intrude upon safety and security concerns, and
12          violate the official-information privilege.

13      **1.      PLAINTIFFS' POSITION**

14          **(a)      Plaintiffs' experts must inspect the entire facility.**

15      Inspection of the entire facility is necessary on the face of the Special Master's

16  recommendation and the district court's order setting the evidentiary hearing, both of

17  which refer to both the "50 beds at Coalinga State Hospital designated for *Coleman* class

18  members" and "any other vacant beds at the facility."  Dkt. No. 4020 at 54; Dkt No. 4050

19  at 10.  Plaintiffs' experts must have access to the entire facility in order to assist the Court

20  in finding the facts regarding areas that contain or may contain in the future "other vacant

21  beds."  In addition, the expert's evaluation reasonably includes the security measures

22  available throughout the facility to handle so-called "high custody" patients.  Additionally,

23  Defendants have repeatedly denied *Coleman* class members access to treatment at DMH

1   facilities based on custody status and status as a security risk. Plaintiffs' experts must be

2   able to evaluate the security measures available throughout the facility in order to assist the

3   Court regarding the Special Master's recommendations.

4       The privacy interests of non-*Coleman* patients do not preclude inspections.

5   Hospitals are regularly inspected as part of their licensing requirements and oversight by

6   agencies such as the state Department of Public Health. If patient privacy barred

7   inspections, state mental hospitals would become entirely closed worlds, completely

8   immune to outside review.

9              **(b)    Plaintiffs' experts must be able to review relevant**
                       **documents**

10      This entire dispute is about whether the DMH state hospitals can safely house

11  *Coleman* patients whom CDCR has identified as "high custody." The purpose of

12  inspecting the hospitals is to provide the Court with evidence regarding their existing

13  security measures. Prison and hospital security measures include written policies,

14  procedures, orders, and written protocols. Any expert evaluating available security

15  measures needs access to such documents.

16      The parties agreed that Plaintiff's experts need not review every document at the

17  facility, but rather those documents that directly address security and custody issues, as

18  well as those operational and programmatic documents that touch on security issues. For

19  example, operational documents regarding the hours of activity and patient access to the

20  treatment mall have obvious connections to security issues. The parties agreed that this

21  represents a limiting principle that avoids any implication that the expert will be reviewing

22  every piece of paper at the facility. Examples of documents that would not need to be

23

1  reviewed include employee personnel files, vendor records, and books of accounts.

2          Defendants raised the issue of safety and security information and protecting its

3  confidentiality.  Defendants stated that DMH will refuse to allow the expert access to any

4  documents that pertain to security of the facility.  The parties discussed entering a

5  protective order to maintain the confidentiality of such information, which would prohibit

6  any disclosure beyond counsel and counsel's staff, the Court and its staff, and expert

7  witnesses.  Disclosure to inmate-patients would also be prohibited.  Such a protective order

8  is already in place in similar cases.  In fact, the three-judge court in this case issued a

9  nearly identical protective order which includes "all documents and information. . .

10  reflecting architectural specifications, renderings blueprints, infrastructure layout, building

11  footprints, points of access and construction design details."  Dkt. 2833 at 8.  Plaintiffs are

12  prepared to enter into such an order in this case.

13          For the first time in this process, Defendants now raise the qualified privilege for

14  "official information."  None of the cases cited by Defendants hold that documents related

15  to the security measures at a facility are subject to the qualified privilege.  *See Kerr v.*

16  *United States District Court for the Northern District,* 511 F.2d 191 (9th Cir. 1975)

17  (concerning parole authority personnel files, and rejecting assertion of privilege); *Sanchez*

18  *v. City of Santa Ana,* 936 F.2d 1027 (9th Cir. 1990) (police personnel files); *Kelly v. City of*

19  *San Jose,* 114 FRD 653 (N.D. Cal. 1987) (police department citizen complaints).

20          Moreover, the cases demonstrate that Defendants cannot invoke the "official

21  information" privilege as blanket bar to an entire category of information.  An official

22  claiming the qualified privilege must "have seen and considered the contents of the

23

1   documents and himself formed the view that on the grounds of public interest they ought

2   not to be produced." *Kerr,* 511 F.2d at 199 (internal quotation marks omitted). A "blanket

3   objection" on the grounds of the qualified "official information" privilege is not permitted.

4   *Id.*

5          In addition, Defendants never invoked the qualified "official information" privilege

6   in their written objections to the inspection request. In order to avoid abuse of the

7   qualified privilege, government officials must assert it early, with their first responses to

8   the discovery request, with a sworn statement from a responsible official with personal

9   knowledge. *Kelly,* 114 FRD at 669-670. None of those requirements have been met here.

10          The fact that CDCR regularly allows inspection of security documents under a

11   protective order demonstrates that no "official information" privilege should apply here.

12   Whatever public interest might exist in the secrecy of state hospital security information,

13   the interest is at least as high or higher with regard to state prisons. The only difference is

14   that DMH simply chooses to obstruct access. That choice does not justify use of the

15   "official information" privilege to block access to information in a federal civil rights case

16   where human lives are at stake.

17

18          **2.      DEFENDANTS' POSITION**

19   **A.   The Burden of Plaintiffs' Far-ranging Proposed Inspection Far Outweighs Any
          Likely Benefit.**

20          Plaintiffs do not need to send their expert on an inspection of the entire Coalinga

21   State Hospital. This request is far broader than the Special Master's recommendation and

22   bears no relation to any prior order of this Court. At Coalinga State Hospital, 50 beds have

23

1   been designated for low custody ICF care for Coleman class members.  (See Order of May

2   2, 2006, Docket No. 1800 at 5:18-21, Fifty "intermediate inpatient beds shall be made

3   immediately available at Coalinga State Hospital for *appropriate* CDCR inmates."

4   (emphasis added)).  For good measure, Plaintiffs want to inspect the remaining beds as

5   well.  This is a tremendous waste of time and resources and is far broader than could

6   possibly be considered reasonably necessary.

7       Also, many of the activated beds at Coalinga are currently filled with civilly

8   committed sexually violent predators, none of whom are *Coleman* class members or

9   CDCR inmates. These individuals have privacy rights and treatment needs of their own

10  and should not be disturbed so that Plaintiffs' expert can go on a fishing expedition around

11  the hospital.  This is exactly the type of request that should be limited by the Court under

12  its Rule 26 powers to limit the extent of discovery where "the burden or expense of the

13  proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

14  **B.**    **The Official Information Privilege Bars Disclosure of DMH's Confidential
         Security Documents.**

15      In addition, Defendants assert the "official information privilege" and state that

16  privilege protects against disclosure of confidential security documents.  The potential

17  harm in disclosing documents that concern DMH's internal security operations far

18  outweighs any benefit from their production.  The documents that have been requested by

19  Plaintiffs involve the internal security procedures of state hospitals operated by DMH.

20  These state hospitals are secure facilities.  DMH has a duty to protect the public from the

21  individuals committed to its care.  Disclosure of these documents could jeopardize the

22  security of these, and other, state hospitals.

23

1    Federal common law recognizes a qualified privilege for "official information." *Kerr*

2    *v. United States Dist. Court Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975). Courts

3    must determine whether the potential benefits of disclosure outweigh the potential

4    disadvantages. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990).

5    Also, this request seeks documents protected by the state official information privilege in

6    California Evidence Code § 1040. Although the state privilege doctrine is not binding on

7    federal courts in civil rights cases brought under federal statutes, "federal courts generally

8    should give some weight to privacy rights that are protected by state constitutions or state

9    statutes." *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987).

10    The fact that CDCR may have made agreements to disclose its own security

11    documents in other cases is not relevant to this issue. DMH has its own security

12    procedures and documents and Plaintiffs cannot show that whatever minimal use these

13    documents might provide to their expert outweighs DMH's interest in preserving the

14    security of its hospitals. Again, there is no dispute that Coalinga is similar in security level

15    to a Level II CDCR prison. But, the issue is whether inmates requiring celled housing

16    should be placed in a dormitory setting, not whether Coalinga is secure.

17    Defendants concede that—due to the expedited nature of this request for inspection

18    and this joint statement, which has been filed within 30 days of service of the initial

19    requests for inspection—they have not complied with the procedural requirements of the

20    official information privilege. However, should the Court find this issue to be dispositive,

21    Defendants request leave to provide an appropriate declaration and privilege log relating to

22    the requested documents.

23

1

2    **F.    DEFENDANTS' SPECIFIC OBJECTION NO. 5:**

3          These requests are not relevant, nor are they reasonably
          calculated to lead to the discovery of admissible evidence.

4          Plaintiffs have not shown how any of the following items are
          relevant to the issues raised by the Special Master in his

5          recommendation: operational and security documents,
          including post orders, program schedules, operating

6          procedures, program guides, security procedures, perimeter
          security procedures, safety procedures, and/or violence or

7          critical incident procedures and policies. Nor have Plaintiffs
          shown the relevance of inspecting portions of these state

8          hospitals that do not house Coleman class members, including
          the exterior and outside perimeter of the facilities, areas in

9          which non-CDCR patients sleep, eat, bathe, exercise, program
          and/or receive mental health treatment or programming, or

10         areas in which non-CDCR patients are received at the hospital
          or processed for release from the hospital.

11         **1.    PLAINTIFFS' POSITION**

12    See Objections Section, D.1, *supra.*

13         **2.    DEFENDANTS' POSITION**

14         Defendants assert that any request for security documents is not relevant to the core

15    issue of the evidentiary hearing:  the custody status of the inmate-patients on the high-

16    custody ICF wait list.  Plaintiffs seek to inspect a host of security related documents, none

17    of which are relevant to the custody status of the inmate-patients on the wait list.  No one

18    disputes that Coalinga State Hospital is a hospital without celled housing.  It does not have

19    the same security capabilities as the Salinas Valley Psychiatric Program.  The issue is

20    whether inmates on the SVPP ICF waitlist who require celled housing should be placed

21    into this hospital setting.  The physical plant capabilities of Coalinga State Hospital are not

22    relevant to the Special Master's recommendations, nor are they contested.

23    [534387-1]

1

2

**G.    DEFENDANTS' SPECIFIC OBJECTION NO. 6:**

3

These requests violate the attorney-client and attorney work-product privileges because they contemplate that Plaintiffs' counsel and Plaintiffs' experts will confer with DMH and CDCR staff at the hospital without Defendants' counsel present and without prior notice to the staff members or to counsel. Further, the requests contemplate interviews with members of the hospital administration without Defendants' counsel present.

4

5

6

7

This Objection is resolved by the parties' agreement that defense counsel are to be

8

present at staff interviews, assuming they are ordered by the Court, but not at interviews of

9

*Coleman* class member patients.

10

**H.    DEFENDANTS' SPECIFIC OBJECTION NO. 7:**

11

Assuming arguendo that discovery is permitted, these requests violate Rule 30 of the Federal Rules of Civil Procedure by seeking to take improperly noticed oral depositions. The requests do not state with particularity which DMH and CDCR staff are to be interviewed, nor is any method of recording stated. Furthermore, the requests amount to requests for roving, unannounced depositions, which are Improper.

12

13

14

15

**1.    PLAINTIFFS' POSITION**

16

**(a)    Plaintiffs' Expert Inspections Will be Rendered Meaningless If Experts and Counsel are Not Permitted to Speak with DMH and CDCR Employees During The Inspections**

17

18

Plaintiffs informed Defendants that the interviews conducted on the DMH facility

19

inspections are not depositions, but rather are the types of informal discussions on which

20

expert witnesses regularly rely in forming their opinions.  In the ordinary course of an

21

expert inspection, these discussions are brief and undertaken with minimal interruption of

22

normal operations.  In large measure, these discussions are guided by the initial meeting

23

1   with the institution head and key staff, who assist the expert in identifying the areas to be

2   visited and personnel to be interviewed, and who facilitate these discussions in a way that

3   minimizes interruption of ordinary business.  Further, the issue of interviewing staff during

4   inspections has already been resolved in Plaintiffs' favor in the three-judge court

5   proceeding.  This Court reviewed the same contentions made by Defendants here

6   regarding "roving depositions" and disruption of ongoing operations, and ruled that expert

7   inspections may include conversations with staff.  *See* Order of Oct. 30, 2007, *Plata* Dkt.

8   No. 906/*Coleman* Dkt. No. 2495 ("In the context of these proceedings, questions by

9   experts directed to prison employees and to class members concerning those matters

10  identified in plaintiffs' inspection requests are properly included as part of an inspection of

11  "any operation" on the prison facilities to be inspected.").

12          Defendants' position flies in the face of the purpose and scope of Rule 34, which

13  "authorizes the broadest sweep of access, inspection, examination, testing, copying, and

14  photographing of documents or objects in the possession or control of another party."  8A

15  Charles Alan Wright et al., Federal Practice & Procedure § 2206 (2007).  The Ninth

16  Circuit has specifically stated that "Rule 34. . .is to be liberally construed" and concluded

17  consequently that "[t]he word 'inspection' has a broader meaning then [sic] just looking."

18  *Martin v. Reynolds Metals Corp*., 297 F.2d 49, 57 (9th Cir. 1961) (crediting dictionary

19  definition of "'inspect' as 'to examine carefully or critically, investigate and test officially,

20  as to inspect food' and . . . 'inspection' as 'especially, a critical investigation or scrutiny'").

21          A practical reading of the language of Rule 34 in the context of this case illustrates

22  why Defendants' position is incorrect.  Rule 34(a) specifically authorizes entry into the

23

1   DMH facilities "for the purpose of inspection . . . [of] the property or any designated

2   object or operation thereon." Fed. R. Civ. P. 34(a).  The central question before the Court

3   is the security of the DMH facilities.  In order to determine what security measures are in

4   place, the experts can either observe the facilities over days, and perhaps weeks, to

5   document various security measures—an impractical means of gathering information--or

6   they can proceed efficiently by asking the security officials at the facility to describe the

7   security measures in place.

8        In order to obtain the same information necessary for the experts to form their

9   opinions and prepare their reports, numerous depositions would be necessary and long

10  periods of observation would be necessary on each unit, as Plaintiffs and their experts

11  attempted to locate basic information readily available to Defendants.  There is insufficient

12  time for Plaintiffs' counsel and their experts to go through this needless exercise.  Such

13  depositions would impede the Federal Rules of Civil Procedure's fundamental goal of

14  "secur[ing] the just, speedy, and inexpensive determination of every action." Fed. R. Civ.

15  P. 1; *see also* Fed. R. Civ. P. 1 advisory committee's note (recognizing "the affirmative

16  duty of the court to exercise the authority conferred by these rules to ensure that civil

17  litigation is resolved not only fairly, but also without undue cost or delay"); *United States*

18  *ex rel. Englund v. L.A. County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) (explaining that "the

19  goal of the Rules [is] full and efficient discovery, not evasion and word play").

20       Moreover, Defendants' attempt to restrict Plaintiffs' experts' ability to speak with

21  DMH employees is not supported by the law.  Indeed, in a highly analogous case, a district

22  court concluded that the type of access Defendants seek to restrict here falls squarely

23

[534387-1]

27

within Rule 34's ambit.  In *Morales v. Turman*, 59 F.R.D. 157 (E.D. Tex. 1972), plaintiffs'

alleged systemic constitutional violations in Texas's juvenile detention facilities.

Recognizing there, as here, that "[w]hen important civil rights are in issue in complex

litigation of widespread concern, a court must make every effort to enhance the fact-

finding process available to counsel for both sides," *id*. at 159, the *Morales* court found

that Rule 34 authorized plaintiffs' experts to not only speak informally with juvenile

inmates and staff on an unrestricted basis, but to actually live in two detention centers for a

period of thirty days in order to observe and document all aspects of the center's

operations "for the purpose of determining the quality of life under the[] particular

conditions of confinement."  *Id*. at 158-60.  Moreover, in other cases similar to the one at

bar, courts have repeatedly held that such communication is proper even outside the

presence of defendants' attorneys. *See, e.g., N.Y. State Ass'n for Retarded Children Inc. v.*

*Carey*, 706 F.2d 956, 960-61 (2d Cir. 1983) (upholding district court order permitting

plaintiffs' counsel and experts to interview institutional defendants' employees during

tours while defense counsel was not present); *Lizotte v. N.Y.C. Health & Hosps. Corp.*,

1990 U.S. Dist. LEXIS 2747, *15 (S.D.N.Y. Mar. 13, 1990) (holding that "plaintiffs'

counsel and expert may communicate with any staff member of the HHC psychiatric

emergency rooms if that employee is willing or desires to talk to them," and that defense

counsel need not be present for such interviews).

     As the *Morales* court recognized, in cases raising serious constitutional questions of

great public concern, "[t]he trial court's discretion must be guided by considerations of

policy and of necessity, propriety and expediency in the particular case at hand." 59 F.R.D.

1    at 159 (internal quotation marks omitted). Given the case law supporting broad access to

2    institutional employees in similar cases, Plaintiffs' modest request that their experts be

3    permitted short, informal conversations with DMH employees in the presence of

4    Defendants' attorneys during the DMH facility inspection is the most expeditious method

5    of ensuring that the expert reports are comprehensive and amply supported by the case

6    law.

7        The Fourth Circuit's *Belcher* case, cited by Defendants, does not support blocking

8    an inspection of CSH.  In *Belcher,* the inspection request failed to specify any reason for

9    the inspections, and failed to specify the subject matters at issue in the inspections.

10   *Belcher v. Basset Furniture Industries, Inc.*, 588 F.2d 904, 906, 908 (4th Cir. 1978).

11   Moreover, *Belcher* was about unequal pay and promotion opportunities for African

12   American employees in a factory.  Inspections were deemed unnecessary because the

13   proof of unequal pay and promotion opportunities was more readily available from

14   personnel records.  *Id.* at 909.  Here, by contrast, even in Defendants' formulation, "the

15   issue is whether inmates on the SVPP ICF waitlist who require celled housing should be

16   placed into this hospital setting."  The Court should not be placed in the position of

17   deciding this question without factual information and expert testimony about the nature of

18   the "hospital setting."

19           **2.    DEFENDANTS' POSITION**

20       Plaintiffs are asking for a roving, improperly noticed deposition of anyone they or

21   their expert sees fit to interview.  First, any reference to orders issued in the Three-Judge

22   Court proceeding is misplaced, because the parties in that proceeding had agreed to certain

23

[534387-1]

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1   pretrial discovery.  No such agreement has been made here.  Furthermore, even assuming

2   *arguendo* that discovery is allowed, interviews of employees and staff members must be

3   subject to the Federal Rules of Civil Procedure's limitations on depositions and deposition

4   testimony.  Otherwise, Plaintiffs' request envisions a freewheeling, roving, unsworn, open-

5   ended deposition that will produce nothing but inadmissible hearsay and in which the

6   witnesses will not have the protections of the Federal Rules of Evidence.

7          This is exactly the type of request that the Fourth Circuit ruled was impermissible in

8   *Belcher v. Basset Furniture Industries, Inc.*, 588 F.2d 904, 909-910 (4th Cir. 1978).  In

9   *Belcher*, the plaintiffs wanted to send their expert in to conduct roving depositions of the

10  defendant's employees in an assembly line plant.  *Id.*  In fact, the court held that properly

11  noticed depositions under the Federal Rules of Civil Procedure would lead to better results.

12  "Indeed, it would seem that an expert's testimony on the basis of sworn testimony of actual

13  employees or former employees, given under oath at trial or by deposition, would be far

14  more reliable and persuasive in fact, less open to objections for admissibility than the

15  hearsay unrecorded statements of unidentified employees, about whose exact language

16  there might be serious dispute."  *Id.* at 909.

17         The Fourth Circuit in *Belcher* also set out a balancing test for inspections under Rules

18  26 and 34:  "the degree to which the proposed inspection will aid in the search for truth

19  must be balanced against the burdens and dangers created by the inspection."  *Id.* at 908.

20  Indeed, this balancing test was cited with approval by the Second Circuit in a case

21  involving similar roving deposition inspections.  *New York State Assoc. for Retarded*

22  *Children v. Carey*, 706 F.2d 956, 961 (2nd Cir. 1983) ("That decision [*Belcher*] correctly

23

1    states the standard to be used in deciding whether, under Fed. R. Civ. P. 26(c), a discovery

2    order such as this one is unduly burdensome.").

3        The balancing test as applied to this case tips in Defendants' favor.  Plaintiffs'

4    proposed inspections will aid little in the search for truth, while instead, serving to disrupt

5    Defendants' operations, burden staff members, and put institutional security at risk.

6        *Carey* is a useful contrast because, in that case, the Second Circuit allowed wide-

7    ranging, roving inspections of a state institution to take place, but under very different

8    conditions.  *Id*. at 960.  In *Carey*, there were allegations of severely unsanitary conditions

9    at the state school that was the basis of the litigation, to the extent that they presented a

10   hazard to the health of the residents.  *Id.* at 961-62.  This included rodent and cockroach

11   infestations, human feces and urine in the bathrooms, and accumulated food and trash.  *Id.*

12   Nothing remotely close to these conditions has been alleged at any DMH state hospital.

13   Completely to the contrary, Plaintiffs and the Special Master *want* inmate-patients placed

14   into DMH-run hospitals because they believe them to have superior treatment facilities.

15   Thus, *Carey* presents the opposite end of the spectrum, and clearly shows why inspections

16   should not be allowed in this case.

17       In short, the inspections requested by Plaintiffs in this case closely track the type of

18   inspections in *Belcher* that the Fourth Circuit held to "pose a risk of creating highly

19   unreliable evidence."  588 F.2d at 911.

20

21   **I.    DEFENDANTS' SPECIFIC OBJECTION NO: 8:**

22       These requests are unduly burdensome. If Plaintiffs seek
         documents related to the physical plant capabilities of these

23

hospitals, or policies and procedures, or specific class
members' records, requests for production of documents under
Rule 34 would provide the same information with less
disruption to the daily operations of Defendants than an all-day
inspection. For the reasons discussed above, these requests are
improper. Assuming arguendo that discovery is permitted, the
requests seek information that should be sought through more
narrowly targeted discovery methods, which would be less
oppressive and burdensome to Defendants.

### 1.    PLAINTIFFS' POSITION

Defendants clarified that the intention of this Objection is a document production in lieu of inspections.  Plaintiffs cannot agree to replace inspections with document production.  Plaintiffs' request for an inspection of CSH is an expeditious and efficient means for Plaintiffs' experts to collect necessary information.  Document production should be part of the inspection but cannot replace the assistance that the Court would receive by an expert's onsite observations and discussions.

Defendants' alternative is that the parties enter into a document discovery process. Turning this into a document-intensive dispute is the best way to prolong it for months and years.  Waging months of discovery battles to get documents that describe a physical location and its security measures is far less efficient than simply going to the place and looking.

### 2.    DEFENDANTS' POSITION

The Court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs have refused to limit their requests for inspection in any way.  In fact, they would now like to ask for production of documents *in addition to* the inspections.  This represents an incredible burden on DMH staff at the state hospitals, who are tasked with treating

1    mentally ill patients in a hospital setting, not with responding to Plaintiffs' every whim of

2    possible discovery request.  Because Plaintiffs will not in any way restrict their requests,

3    Defendants fear that staff may be forced to spend many precious hours of their time

4    responding to document requests on the spot, during the inspection, instead of treating

5    patients.  This is the very definition of an undue burden and should not be permitted.

6

7    **J.    DEFENDANTS' SPECIFIC OBJECTION NO. 9:**

8    > These requests are vague. The requests do not state with
     > reasonable particularity which areas, persons, or files are to be
9    > inspected, for instance, "any records relating to Coleman class
     > members' custody classifications or restrictions, mental health
10   > treatment, or programming." Also, these requests are not
     > limited in time or subject matter. See Fed. R. Civ. P.
11   > 34(b)(I)(A).

12   **1.    PLAINTIFFS' POSITION**

13       Plaintiffs clarified with Defendants that the documents to be inspected are the

14   records pertaining to *Coleman* class members, including the DMH equivalent of the CDCR

15   central file and unit health record, as well as documents that state custody, security or

16   classification restrictions on *Coleman* class members without referring to a specific patient.

17   Defendants further stated that Plaintiffs' experts would not have access to patient files

18   during the DMH facility inspections, and that these documents must be sought using the

19   standard document request procedure that Plaintiffs and Defendants engage in on a daily

20   basis, which often takes months before Plaintiffs receive the requested documents, if they

21   are received at all.  Defendants are attempting to stall the proceedings and prevent the

22   assistance this Court would receive from an expert's review of *Coleman* class member

23   files.

1

### 2. DEFENDANTS' POSITION

2
As Plaintiffs know, there is no dispute that there are currently no *Coleman* class

3
members housed at Coalinga State Hospital. The reason for this is that Coalinga can only

4
house inmates that qualify for dormitory housing—the inmates on the SVPP wait list

5
require celled housing. Thus, there are no *Coleman* class member records for Plaintiffs or

6
their experts to inspect at Coalinga. Furthermore, it is not clear why Plaintiffs or their

7
experts would need to inspect records concerning class members—records which, it should

8
be noted, are freely available to Plaintiffs' counsel through a regular, informal process of

9
document requests and production—when the stated purpose of these inspections is to

10
review the security capabilities of the facility. Furthermore, the requests for security

11
documents are not limited in time or subject matter.

12

13
DATED: July 28, 2011                        Respectfully submitted,

14
                                            ROSEN, BIEN & GALVAN, LLP

15
                                            By:  */s/ Ernest Galvan*_____
                                                 Ernest Galvan

16
                                            Attorneys for Plaintiffs

17
DATED:  July 28, 2011                       KAMALA D. HARRIS
                                            Attorney General of California

18

19                                          */s/ David Brice*_____
                                            David E. Brice

20                                          Deputy Attorney General

21                                          Attorneys for Defendants

22

23