KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' EX PARTE REQUEST TO VACATE AUGUST 17, 2011 EVIDENTIARY HEARING; UPDATE ON DEFENDANTS' STARK PROJECT** |

1

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re: Stark Project(2:90-cv-00520 LKK JFM P)

| Acronym List | |
|---|---|
| **Term** | **Definition** |
| CDCR | California Department of Corrections and Rehabilitation |
| Coalinga | Coalinga State Hospital |
| DMH | Department of Mental Health |
| DOF | Department of Finance |
| EOP | Enhanced Outpatient Program |
| EOP-ASU | Enhanced Outpatient Program-Administrative Segregation Unit |
| EOP-GP | Enhanced Outpatient Program-General Population |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| JLBC | Joint Legislative Budget Committee |
| MHARP | Mental Health Assessment Referral Project |
| MHCB | Mental Health Crisis Bed |
| SVPP | Salinas Valley Psychiatric Program |
| VPP | Vacaville Psychiatric Program |

# I. INTRODUCTION

After consulting with the Special Master, Defendants submit this request to vacate the August 17, 2011 evidentiary hearing on Coalinga State Hospital (Coalinga) and on Defendants' alternative assessment process for identifying whether California Department of Corrections and Rehabilitation (CDCR) clinicians are making appropriate referrals to inpatient treatment programs operated by the California Department of Mental Health (DMH). In addition, Defendants take this opportunity to update the Court on their Stark project to build four new housing units for the Enhanced Outpatient Program population and a new Mental Health Crisis Bed unit.

On March 31, 2010, this Court ordered that Defendants, under the guidance of the *Coleman* Special Master, develop a plan to reduce or eliminate the Salinas Valley Psychiatric Program (SVPP) and Vacaville Psychiatric Program (VPP) waitlists for inmate-patients referred to DMH operated Intermediate Care Facility and Acute Psychiatric Program treatment programs. The Court also ordered Defendants, in the interim, to better serve the treatment needs of the inmate-patients on those lists. Defendants worked diligently with the Special Master and his experts to complete their plan, and submitted it on November 24, 2010. Much has been accomplished to reduce the waitlists under this plan. For instance, as explained below, the SVPP waitlist was reduced 74 percent since March 2010. And Defendants have made additional improvements to their plan.

The Special Master's June 13, 2011 Report on Defendants' plan recommended that the Court set the matter for an evidentiary hearing on why Defendants cannot admit high-custody CDCR inmates into Coalinga. The Court adopted this recommendation and set a hearing for August 17, 2011. The Special Master's Report also recommended that the Court order Defendants to conduct a further unmet needs assessment modeled after the 2009 court-ordered Mental Health Assessment and Referral Project (MHARP) (hereafter 2009 MHARP). Because Defendants had commenced an alternative assessment process to identify whether CDCR clinicians are making appropriate referrals to DMH facilities, the Court declined to adopt

///

3

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re: Stark Project(2:90-cv-00520 LKK JFM P)

the Special Master's recommendation on repeating the 2009 MHARP, but ordered that Defendants present evidence of their assessment process at the August 17 evidentiary hearing.

Defendants request that the Court vacate the August 17 hearing on Coalinga and give them 90 days to work with the Special Master to develop a supplemental plan to address the inmate-patients on the SVPP waitlist. If, at the end of the 90-day period, Defendants and the Special Master have not agreed on a plan to further address the waitlist issue, Defendants agree that the Court should reset the evidentiary hearing on Coalinga to a date at least 30 days out.

Additionally, Defendants request that the Court vacate the August 17 hearing on Defendants' alternative assessment process. Defendants will meet with the Special Master over the next 90 days and describe their process to him. This 90-day period will also provide the Special Master with time to evaluate whether Defendants' process adequately identifies inmate-patients in need of a referral to a DMH facility.

Last, Defendants take this opportunity to update the Court on the Stark project. Specifically, Defendants are evaluating the continued need for the project because of realignment under Assembly Bill 109. And, given Defendants' inability to obtain funding for the Stark project in a timely manner, Defendants are working with the Special Master to develop alternatives to the Stark project should the population projections reflect a continued need for the mental health beds.

## II.   REQUEST TO VACATE THE AUGUST 17, 2011 EVIDENTIARY HEARING

### A.   Coalinga State Hospital.

Defendants complied with the Court's March 31, 2010 order to work under the guidance of the Special Master to develop a plan to address the SVPP waitlist. Good cause therefore exists to grant Defendants' request to vacate the evidentiary hearing on Coalinga in order to give Defendants and the Special Master adequate time to develop a supplemental plan to further address the treatment needs of the inmate-patients the SVPP waitlist.

Defendants have worked diligently to address the SVPP waitlist, which has resulted in a reduction of the waitlist from 542 inmate-patients on March 16, 2010, to 141 inmate-patients on June 29, 2011. (Docket No. 4035 at 12:14–20.) There are several reasons for this reduction.

4

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re: Stark Project(2:90-cv-00520 LKK JFM P)

First, with respect to the utilization management strategies set forth in Defendants' November 24, 2010 plan, Defendants are conducting prospective, concurrent, and retrospective reviews of the inmate-patients on the waitlists to optimize inmate-patient care. (Docket No. 3994 at 12:17–13:1; Docket No. 3962–1 at 11–17.) Defendants have also revised discharge and admission forms to facilitate admissions and discharges from DMH operated facilities. (Docket No. 3994 at 9:20–24; Docket No. 3962–1 at 9, 16.) Moreover, Defendants are now providing psychological assessments and testing on site at CDCR institutions rather than having all testing occur at DMH facilities. (Docket No. 3994 at 9:1–6, Docket No. 3962–1 at 10.) By gaining approval to initiate specialized drug treatment at several prisons, inmate-patients are diverted from the SVPP waitlist, opening up Intermediate Care Facility (ICF) beds for other inmate-patients. (*Id.* at 9:6–12; *Id.*) Last, by expanding Positive Behavioral Support Services, inmate-patients who have been higher users of the ICF program, will not have to return to DMH. (*Id.* at 9:13–17; *Id.* at 11.)

Second, Defendants have extended and expanded the ICF Pilot Program to maximize use of the dormitory beds at Atascadero State Hospital, Coalinga, and the Vacaville Psychiatric Program. (Docket No. 3994 at 11:3–19; Docket No. 3962–1 at 17–19; Docket No. 4035 at 11:23–12:9.) The Pilot Program allows CDCR Health Care Placement Oversight Program (HC-POP) to review all ICF referrals based on revised custody factors and guidelines and evaluate on a case-by-case basis select inmate-patients for possible referral to a low-custody dormitory bed in lieu of the celled housing at SVPP. (*Id.*) Starting in January 2011, HC-POP began reviewing the SVPP waitlist on a quarterly basis to determine if any ICF referrals not recommended for placement in a dormitory setting have had any recent case factor changes (i.e., custody level and placement score changes) that would warrant an evaluation for alternative dormitory placement. (Docket No. 4035 at 12:1–9.) CDCR and DMH now review the inmate-patients housed in SVPP for potential placement in a dormitory bed according to ICF Pilot Program criteria. (Docket 3994–1 at 59–61.)

Third, Defendants have activated the SharePoint system, which allows CDCR and DMH to electronically share inmate-patient information. (Docket No. 3994 at 9:17–20; 3962–1 at 19–20.)

5

Defendants have completed training on SharePoint and new referrals and discharges are placed onto the Sharepoint site, which has streamlined both the referral and discharge process by providing more comprehensive information to CDCR and DMH. (*Id.*)

Fourth, Defendants' construction projects are a vital means to address the bed shortage for inmate-patients who require celled housing and need ICF level of care. Defendants have completed two of their construction projects adding 116 new ICF beds and 32 new Acute Psychiatric Program beds. (Docket No. 3994 at 12:3–11.) An additional 64 ICF beds are scheduled for activation later this year. (*Id.*)

Fifth, Defendants have implemented multiple approaches to better serve the treatment needs of the inmate-patients on the SVPP waitlist pending construction of additional ICF beds for inmate-patients requiring celled housing. This is done by:

- conducting three review different reviews—prospective, concurrent, and retrospective—of the inmate-patients on the waitlists;
- improving communication between CDCR and DMH to facilitate admissions and discharges to and from DMH operated programs;
- providing interim services to the inmate-patients beyond Extended Outpatient Program (EOP) requirements such as increased Interdisciplinary Treatment Team appointments between the inmate-patient and their team of mental health care providers and daily clinician contacts, and
- providing EOP inmate-patients with chronic mental illness whose symptoms have stabilized but whose level of functioning is insufficient to allow General Population placement with supportive care, assistance with activities of daily living, recreational therapy, anger management, reality therapy, and programs related to symptom management. (Docket No. 3994 at 12:25–13:11; Docket No. 4053.)

Additionally, high-risk inmates are now being tracked with weekly high-risk progress notes. (*Id.* at 13:11–12.)

///

Defendants are also considering other options to provide interim care to the inmate-patients on the SVPP waitlist. (Aungst Decl. ¶ 4.) Specifically, Defendants are evaluating the possibility of DMH providing additional clinical care in CDCR facilities to the inmate-patients on the SVPP waitlist. (*Id.*) For instance, Defendants are looking at the potential to provide this care at California State Prison, Sacramento, due to its strong mental health care mission and high number of inmate-patients on the SVPP waitlist who are currently housed at that prison. (*Id.*) A team of five experts is studying whether CDCR's current classification system may be modified without jeopardizing institutional security or public safety. (Seale Decl. ¶ 4.) This study will investigate aspects of the Inmate Classification Score System by evaluating existing placement score cut-off points to make sure that inmates are appropriately housed in a cost-effective and security conscious manner, and to review custody designations and administrative determinants to determine their impact on in-custody housing level and behavior. (*Id.*) But CDCR will not know if the study will affect the inmate-patients on the SVPP waitlist until it is completed. (*Id.*) CDCR expects to receive preliminary results from the study within 90 days. (*Id.*)

Good cause exists for this Court to vacate the evidentiary hearing on Coalinga and give Defendants 90 days to work with the Special Master to further address the treatment needs of the inmate-patients on the SVPP waitlist. (Aungst Decl. ¶ 4.) If, at the end of this 90-day period, Defendants and the Special Master have not agreed upon a plan to further address the waitlist issue, Defendants agree that the Court should reset the evidentiary hearing on Coalinga to a date at least 30 days out. (*Id.*)

**B.   Defendants' Alternative Process to Manage and Sustain the Referral Process.**

As detailed in Defendants' July 1, 2011 filing, CDCR and DMH have, over the past three years, developed and implemented multiple steps to manage and sustain the referral process. (Docket No. 4035 at 17:20–23:25.) For instance, in June 2011, CDCR conducted a large scale audit activity based on audits conducted by 14 CDCR institutions. Given the timing of this audit activity, the Special Master did not have the results when he recommended that Defendants repeat the 2009 MHARP. (Docket No. 4045 at 9:19–20; Aungst Decl. ¶ 6.) Good cause exists to grant Defendants' request to vacate the evidentiary hearing on Defendants' alternative assessment

7

1  process to give them time to work with the Special Master and describe their alternative
2  assessment process.
3      CDCR's June 2011 review of the DMH referral process involved an assessment of the 14
4  institutions that the Special Master indicated would be part of a repeat of the 2009 MHARP.
5  (Docket No. 4035 at 22:13–16.) Specifically, CDCR audited 1408 inmate-patient charts,
6  including CDCR screening forms for referrals to higher levels of care. (*Id.* at 23:6.) Of that
7  number, 579 of the inmate-patients had transferred from the institution, paroled or did not meet
8  the clinical indicators after review. (*Id.* at 23:9–11.) Of the remaining 829 names, the audit
9  resulted in the following two findings:

- for 201 inmate-patients, the institutions reported that the clinical indicator or indicators for referral to a higher level of care on the CDCR screening forms were checked and justification was documented; and
- for 628 inmate-patients, the institutions reported that the clinical indicator or indicators on the CDCR screening forms were not checked and/or justification was not documented. (*Id.* at 23:6–9.)

16  For the 201 inmate-patients, CDCR directed the institutions to send the CDCR screening
17  forms to Headquarters so that it could review the forms to verify the institution's findings. (*Id.* at
18  23:11–13.) For the 628 inmate-patients, CDCR directed the institutions to review the inmate-
19  patient's Unit Health Record and determine whether the inmate-patient's clinical treatment team
20  should evaluate the inmate-patient for potential referral to a higher level of care. (*Id.* at 13–15.)
21  CDCR gave the institutions until the end of July to complete this review. (*Id.* at 16.) CDCR
22  Headquarters is in the process of following up with the institutions on this review, which it
23  expects to complete by the end of August. (Aungst Decl. ¶¶ 5–6.) This audit shows that CDCR
24  has the database capability to identify those inmate-patients who meet clinical indicators for
25  referrals to a higher level of care. (Docket No. 4035 at 23:17–25.) It also shows that CDCR now
26  has a process to monitor the results of its referral process, follow-up with the institutions where
27  necessary, and provide ongoing training. (*Id.*)
28  ///

8

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re: Stark Project(2:90-cv-00520 LKK JFM P)

The Court noted in its July 22, 2011 order that "[i]t appears from the record that given the steps defendants have taken in June, it may be redundant to start a further assessment process from the beginning," but that "[i]t further appears from the record, however, that the special master's concerns may be well-founded." (Docket No. 4045 at 9:19-23.)

Good cause exists to vacate the August 17, 2011 evidentiary hearing on the assessment process to give CDCR an opportunity to work with the Special Master over the next 90 days and describe its process to identify if appropriate referrals are being made to DMH facilities and allow the Special Master adequate time to evaluate the process. (Aungst Decl. ¶ 6.) During this 90-day period, CDCR can also share with the Special Master the reviews on the 628 inmate-patient audits referenced above. (*Id.*)

### III.   UPDATE ON DEFENDANTS' STARK PROJECT

Defendants proposed in November 2009 renovating the Stark Juvenile Justice Facility to an adult facility to house and treat Enhanced Outpatient Program-General Population (EOP-GP) and Enhanced Outpatient Program-Administrative Segregation Unit (EOP-ASU) inmates. (Docket No. 3724–2 at 7.) The Court declined to approve Defendants' proposal on January 4, 2010, and ordered them to submit an amended plan that "meets the concerns identified by the special master." (Docket No. 3761 ¶ 1.c.) On May 13, 2010, Defendants submitted an amended plan to the Court. (Docket No. 3845.) The amended plan proposes building four new housing units on the current Stark facility that will house 525 EOP-GP and 50 EOP-ASU inmates. (Docket No. 3845–2 at 4.) The amended plan also proposes to include the new 30-bed Mental Health Crisis Bed (MHCB) project previously approved by this Court on January 4, 2010. (*Id.* at 6.) Defendants proposed activation of the amended Stark plan was April 2014. (Docket No. 3941 at 4:1–4.) On August 30, 2010, Defendants informed the Court that a phased occupancy approach to the amended Stark plan could potentially accelerate the project for the four new EOP population housing units by four months—from April 2014 to December 2013. (*Id.* at 5:1–10.) This Court has not yet approved Defendants' Stark project to build the four new housing units for the EOP population.

///

9

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re: Stark Project(2:90-cv-00520 LKK JFM P)

This Spring, the Legislature passed and the Governor signed into law Assembly Bill 109. (Docket 4016 at 6:18–7:11.)  On June 30, 2011, the Governor made this realignment a reality by signing into law the funding for AB 109. (*See* AB 118, Act of June 30, 2011, ch. 40, § 3 (to be codified at Cal. Gov't Code § 30025 et seq.).)  The effective date of most of AB 109 is October 1, 2011. (*See, e.g.,* AB 117, §§ 2–3, 27–28, 37, 39, 45, 47, 52–53.)  Because of the expected reduction in CDCR inmate population as a result of AB 109, Defendants are evaluating whether there is still a need for all of the 525 EOP-GP beds, 50 EOP-ASU beds, and 30 MHCB beds planned for the Stark project. (Hysen Decl. ¶ 4.)  As this Court has previously indicated, revisions to the long-range bed plan should be considered if a change in the inmate population warrants such consideration. (Docket No. 3761 at 3:15–18.)  Specifically, CDCR is working with John Misener of McManis Consulting to provide projections of the impact AB 109 will have on the prison mental health population. (Hysen Decl. ¶ 4.)  CDCR expects to have these projections by the end of September 2011. (*Id.*)  These projections will allow CDCR to address whether the Stark project is still necessary given the anticipated impact of AB 109 and, if not, to seek a revision to the long-range mental health bed plan. (*Id.*)  Defendants will continue to update the Court on the status of updated population projections on mental health bed needs.

As previously indicated, Defendants intended to fund the amended Stark plan through AB 900 lease-revenue financing authority that the California Legislature appropriated to construct prison projects. (Docket No. 3845–2 at 8; Docket 3941 at 5:13–17; Hysen Decl. ¶ 5.)  Under state law, Joint Legislative Budget Committee (JLBC) approval is required for this AB 900 project to proceed. (Docket No. 3941 at 5:16–18; Hysen Decl. ¶ 5; Cal. Gov't Code § 15819.40(d).)  On October 19, 2010, Defendants informed the Court that on September 15, 2010, the JLBC notified the Department of Finance (DOF) that, at that time, the JLBC could not concur with CDCR's request for AB 900 funding for the amended Stark plan. (Docket No. 3941 at 6:1–6; Hysen Decl. ¶ 5.)  Defendants also informed the Court that CDCR was continuing to work with the JLBC to obtain its approval to use AB 900 funds for the amended Stark plan. (*Id.* at 6:11–12; *Id.*)  Thus, on November 9, 2010, DOF notified the JLBC of CDCR's request for reconsideration of its decision in regard to the Stark amended plan. (Hysen Decl. ¶ 5.)  Although the JLBC did

10

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re:  Stark Project(2:90-cv-00520 LKK JFM P)

not formally respond to CDCR's request for reconsideration, it has asked that CDCR demonstrate the impact of pending population reform measures on the mental health population. (*Id.*)

Due to these funding challenges, CDCR can no longer meet the construction and activation time lines provided to this Court. (Hysen Decl. ¶ 6.) As a result, CDCR has been exploring alternatives to the Stark project that meet the court-ordered occupancy timelines. (*Id.*) CDCR has considered building additional space at existing prisons, or expanding the scope of current AB 900 projects, where locating and operating a mental health facility would be feasible and within or close to the prescribed time frames for occupancy. (*Id.*) On Friday, July 29, 2011, CDCR met with the *Plata* Receiver and the Special Master to discuss the stalled JLBC approval of the Stark project and some potential alternatives to the Stark project, including a more cost-effective approach to providing these beds. (*Id.*) CDCR plans to wait on finalizing these alternatives until the population projections produced by McManis Consulting are validated and released. (*Id.*) Should the projections continue to justify the need for these mental health beds and treatment space, CDCR plans to move forward with these alternatives. (*Id.*)

## CONCLUSION

Because good cause exists, Defendants respectfully request that the Court vacate the evidentiary hearing set for August 17, 2011, on Coalinga State Hospital and Defendants' alternative assessment process.

Dated:  August 8, 2011                                          Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
31319359.doc

11

Defs.' Ex Parte Req. to Vacate Evid. Hearing; Update to Court Re:  Stark Project(2:90-cv-00520 LKK JFM P)