| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621 | MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>JANE E. KAHN – 112239<br>LISA ELLS – 243657<br>AARON J. FISCHER – 247391<br>LAURA BOYSEN-ARAGON – 248083<br>ROSEN, BIEN & GALVAN, LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, California 94104-1823<br>Telephone: (415) 433-6830 |
| CLAUDIA CENTER – 158255<br>THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>180 Montgomery Street, Suite 600<br>San Francisco, California 94104-4244<br>Telephone: (415) 864-8848 | WARREN E. GEORGE – 053588<br>BINGHAM McCUTCHEN LLP<br>Three Embarcadero Center<br>San Francisco, California 94111-4066<br>Telephone: (415) 393-2000 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>         Plaintiffs,<br><br>     v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>         Defendants.[1] | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST TO VACATE AUGUST 17, 2011 EVIDENTIARY HEARING** |

---

[1] The names of Defendants currently serving and their official capacities have been substituted pursuant to Fed. R. Civ. P. 25.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE REQUEST TO VACATE AUGUST 17, 2011
EVIDENTIARY HEARING

[537690-5]

## INTRODUCTION

Defendants' Ex Parte Request To Vacate August 17, 2011 Evidentiary Hearing And Update On Defendants' Stark Project ("Ex Parte Request") must be denied. Defendants offer no basis whatsoever to justify their requested delay of four months or more for this much needed evidentiary hearing, at which Defendants will finally be required to show cause why the hundreds of open and available inpatient psychiatric hospital beds at Coalinga State Hospital ("CSH" or "Coalinga") cannot be filled by high-custody *Coleman* class members languishing on the intermediate care facility ("ICF") waitlist. Nor should Defendants be permitted to delay substantiating their vague claims that their audit—initiated and conducted without consulting the Special Master—can cure the massive under-referral problem that exists today without additional oversight by the Special Master.

Once again, Defendants in their Ex Parte Request ignore the elephant in the room: There are, today, literally hundreds of open inpatient psychiatric beds in DMH hospitals, including Coalinga, that Defendants themselves are preventing acutely ill *Coleman* class members from accessing by applying exclusionary criteria that cannot be justified as a clinical or security matter. Defendants have not committed to taking any steps to ease those senseless restrictions and allow the hundreds of prisoners on the waitlist for inpatient beds to access the higher level of care DMH and CDCR clinicians have determined they need. In the meantime, those prisoners are suffering and, in some cases, dying, while waiting for months on end in inappropriate outpatient settings for treatment that some of them will not live to receive. Plaintiffs file herewith a trial brief, expert testimony, and other evidence establishing that the Court should proceed with the hearing and issue the necessary injunctive relief now.

In the meantime, neither CDCR nor DMH has committed to providing the prisoners on the waitlists with any additional treatment to mitigate the sometime irreversible harm caused by Defendants' refusal to provide constitutional mental health care. DMH is completely silent in Defendants' Ex Parte Request, and makes no promises to do anything.

Further, Defendants continue their confusing tap dance regarding the status of the one component of their court-approved plan intended to mitigate the harm caused by the waitlist, the EECP program. Despite the Court's specific request, it is still unclear whether or not the program exists, has been cancelled, is funded or has been replaced with some other program to provide care to inmate/patients "accepted" for inpatient care but unable to be transferred due to the shortage of high custody ICF beds.

Defendants' Ex Parte Request is nothing more than another attempt to kick the can a few more months down the road in order to avoid addressing the ongoing constitutional violations *Coleman* class members in need of inpatient care continue to suffer every day. The Court should reject Defendants' request and hold the evidentiary hearing as scheduled on August 17, 2011 so that appropriate orders concerning Coalinga and access to DMH inpatient beds can be entered and enforced.

**I. DEFENDANTS PROVIDE NO BASIS TO DELAY THE EVIDENTIARY HEARING REGARDING CUSTODIAL IMPEDIMENTS PREVENTING COLEMAN CLASS MEMBERS NEEDING INPATIENT CARE FROM ACCESSING VACANT BEDS IN DMH**

After having 17 months to develop their plan to address the SVPP waitlist, including multiple extensions requested of this Court that were granted, Defendants now ask for three more months to develop yet another "supplemental plan to further address the treatment needs of the inmate-patients on the SVPP waitlist." Ex Parte Request at 4.

Defendants spend pages espousing the virtues of all their efforts to date, but the cold hard facts remain: The SVPP waitlist remains at 171 as of the date of Defendants' filing.[2] There are over 400 open inpatient beds at Coalinga State Hospital today, and an

---

[2] In their Ex Parte Request, Defendants laud the fact that they have reduced the SVPP waitlist from 542 in March 16, 2010 to 141 inmate-patients on June 29, 2011. Ex Parte Request at 4. The very next morning after filing their Ex Parte Request, Defendants produced to Plaintiffs updated data reporting the SVPP waitlist to be 171 as of July 29, 2011. Even this number, however, significantly under-reports the level of need for ICF care, as discussed in Section II.

additional 73 at Atascadero State Hospital. Meanwhile, the one clinical component of Defendants' plan to mitigate the harm of that massive waitlist on the acutely ill men waiting months for inpatient care—EECP—appears to have been scrapped. Plaintiffs applaud Defendants' efforts to continue working to address the ICF waitlist, but their amorphous plans promise no tangible results. They are not responsive to this Court's order to show cause and do not justify moving the evidentiary hearing.

### A. Defendants' Existing Efforts are Insufficient to Justify Delay

Defendants describe various administrative and technological changes that they claim allow them to better manage the hundreds of men who need inpatient psychiatric care but are not getting it. Ex Parte Request at 4-6 (reporting on SharePoint system, utilization management efforts). None of these are new. They report on their court-ordered construction projects. Ex Parte Request at 6. But the beds that have opened have not come close to eliminating the ICF waitlist, and the additional 64 beds promised for later this year have not been expedited in any way. Defendants next describe their efforts to assess whether inmate-patients on the SVPP waitlist or in SVPP beds can be moved to the hundreds of open lower-custody beds despite their extremely restrictive custodial exclusionary criteria. Ex Parte Request at 5. But Defendants provide this Court no information about how many people have actually moved into an inpatient bed at ASH, CSH, or VPP under this process. What Defendants have not told the Court is that unnecessary and inappropriate custodial restrictions continue to prevent hundreds of men from accessing the hundreds of open, available DMH ICF beds at Coalinga and ASH today and that DMH and CDCR are *not* making timely and appropriate efforts to identify and transfer stabilized patients into those open beds from the SVPP ICF units or wait list, or from the CMF ICF units.

Finally, Defendants continue to tout the virtues of the "enhanced" EOP program that they first told the Court was being disbanded just last week, and then, *in the exact same pleading*, pledged to continue and possibly even expand so long as the Special Master does not monitor it. *Compare* Ex Parte Request at 6, *with* Defendants' Response

To Court's July 22, 2011 Order Re: Extended Enhanced Outpatient Program Care Plan (Docket No. 4053) at 1-3. But even if this program were fully supported and properly implemented, which Plaintiffs will prove it is not, it is little more than the EOP program Defendants should be providing under the Program Guide in the first place. In short, Defendants' description of the efforts they are currently undertaking are not responsive to the Court's order to show cause, and do not justify any further delay.

### B. Defendants' Proposal to Consider Additional Efforts to Address the SVPP Waitlist Do Not Justify Delaying the Hearing

Nor should this Court delay the evidentiary hearing based on Defendants' claim they need more time because they are "considering other options to provide interim care to the inmate-patients on the SVPP waitlist." Ex Parte Request at 7; Declaration of Sharon Aungst In Support of Defendants' Request To Vacate August 17, 2011 Evidentiary Hearing ("Aungst Decl.") ¶ 4.

#### 1. Defendants' Plan to "Evaluate" the "Potential of" Providing DMH Care to Waitlisted Men within CDCR Does not Justify Delaying the Hearing

Without making any representations that it will actually happen, much less when, Defendants report they are "evaluating the possibility" and "looking at the potential" of having DMH provide clinical care to waitlisted inmate-patients at CSP-Sacramento. Id. at 7. Despite the fact that Plaintiffs recommended Defendants implement this idea *6 months ago*, *see* Pls' Objections to Defs' Plan to Address DMH Waitlists (Docket 3987) at 22, Defendants now want to delay the scheduled evidentiary hearing so they can have even more time to contemplate whether or not they will agree to employ this program. This type of hedging, with no actual promise of any action, is par for the course. Notably, Defendants do not offer any evidence from DMH that it is at all willing or able to implement this new clinical program. In fact, DMH has reported to this Court just a month ago that they cannot spare even *two employees* to assist the Special Master with revisiting the MHARP. Defendants' Response And Objections To Special Master's DMH Report ("Defs' Response") (Docket No. 4035) at 25; Declaration of Cynthia Radavsky In Support

Of Defendants' Response And Objections To Special Master's DMH Report (Docket No. 4035-2) at ¶¶ 3-4. While Plaintiffs certainly support any plan to provide waitlisted *Coleman* class members with limited DMH care in their outpatient housing units until they transfer to inpatient care, Defendants' new pledge to "evaluate" and "look at" this proposal one week before the scheduled evidentiary hearing on this issue does not justify any further delay.

### 2.  The Hypothetical Possibility that Defendants' Unrelated Custodial Classification Score Review Might Affect the ICF Waitlist Does Not Justify Delaying the Hearing

Defendants' second reason for their requested delay—to permit them to determine whether a study of CDCR's current custody classification system might hypothetically affect individuals on the SVPP waitlist in some unknown way—similarly provides no reason to move the hearing. The custody score review process described in the declaration of Lee Seale is unrelated to the barriers to inpatient care Plaintiffs have repeatedly identified.

Plaintiffs encourage Defendants to revisit their overly restrictive custody restrictions that present barriers to constitutionally adequate care for hundreds of men. But Defendants do not represent that their existing classification score review will result in permitting a single waitlisted *Coleman* class members to access any of the open DMH beds lying fallow today. Ex Parte Request at 7; Declaration of Lee Seale In Support of Defendants' Request To Vacate August 17, 2011 Evidentiary Hearing ¶ 4. Nonetheless, they ask for a minimum 120-day delay just in case. Their request must be denied. If this unrelated custodial review process eventually makes a dent in the 171-deep waitlist for ICF care, so much the better. But in the meantime, Defendants must be held to show cause why they should be permitted to continue rejecting prisoners in desperate need of inpatient care from the hundreds of vacant DMH beds available today based on arbitrary, overbroad custodial restrictions of their own making.

It is not a coincidence that Defendants' Ex Parte Request comes the day after Plaintiffs' experienced custodial expert, Joe McGrath, the former Warden of Pelican Bay

1  State Prison, toured Coalinga State Hospital and saw firsthand how well-equipped the
2  facility and staff are to treat *Coleman* class members of all custody levels.  Plaintiffs'
3  expert will testify before this Court on August 17, 2011 to that fact.  He will also testify
4  that the exclusionary criteria Defendants employ to keep *Coleman* class members out of
5  the hundreds of open inpatient beds at Coalinga, Atascadero and Patton State Hospitals are
6  invalid and overly restrictive.  Mr. McGrath's expert declaration is filed herewith.  The
7  August 17, 2011 hearing date should stand, and Defendants' baseless request for a four-
8  month additional delay must be rejected.

## II. DEFENDANTS' PROVIDE NO BASIS TO DELAY THIS COURT'S CONSIDERATION OF EVIDENCE REGARDING THE SPECIAL MASTER'S RECOMMENDATION TO REVISIT THE MHARP

11  After undertaking a flawed audit of their broken DMH referral process without
12  informing or consulting the Special Master until after he filed his Report and
13  Recommendations, Defendants now demand an additional 90 days in order to "describe
14  their alternative assessment process to" the Special Master.  Defs' Proposed Order on Ex
15  Parte Request (Docket No. 4054-4) at 2.  Defendants notably do not address why they
16  delayed providing this information to the Special Master in the first place, and their desire
17  to share now does not justify their requested four-month delay.  In fact, Defendants
18  provide no additional information on the project in their Ex Parte Request other than what
19  they filed a month ago except to make clear that their assessment is already delayed.
20  Defendants should be required to provide this Court with concrete evidence about the
21  results of their assessment as planned on August 17, 2011 in order to allow this Court to
22  determine whether or not it is sufficient to address the chronic under-referral problem
23  plaguing the system today.
24  As Defendants attested both in the Ex Parte Request and their Report filed a month
25  ago, using a subset of the MHARP referral criteria, CDCR in June 2011 identified **2,083**
26  people at 14 of the 33 prisons who met one of three selected MHARP criteria for DMH
27  referral, but were not referred.  After examining a subset of those cases, Defendants
28  uncovered an abysmal rate of non-compliance with the referral process established by the

MHARP: Defendants found that in 75% of 829 cases they examined, clinicians had never properly considered a DMH referral, despite the fact that all of the inmate-patients objectively met the referral criteria. Ex Parte Motion at 8 (628 of 829 prisoners had not been considered for referral, while clinicians for remaining 201 inmate-patients had considered DMH and decided not to refer); *see* Aungst Decl. ¶ 5; Declaration of Lucinda McGill In Support Of Defendants' Response And Objections To Special Master's DMH Report ("McGill Decl.") (Docket No. 4035-3) ¶ 16. That appallingly bad referral rate alone justifies the evidentiary hearing on the Special Master's recommended intervention. Even the initial results of Defendants' own "alternative assessment" shows the existing system is completely broken.

Beyond this information clearly illustrating the MHARP's failure to create a self-sustaining referral process, which Defendants simply reiterate from their filing a month ago, Defendants' discussion of their assessment process in the Ex Parte Request provides literally no new information about the results of their audit. *Compare* Ex Parte Request at 8, *with* Defs' Response at 19-20. Defendants do not describe how many additional people were identified through the assessment who should have been referred for inpatient care, how many of those people have now been referred, or how many, if any, have been accepted to an inpatient psychiatric hospital bed.

If anything, their Ex Parte Request reveals further dysfunction and delay. Defendants' original description of the audit promised that, by the end of July, clinicians at the institutions would finish reevaluating the 628 identified inmate-patients who should have been considered for referral but were not, and would refer any of those people who still required inpatient care. McGill Decl. ¶ 16. Defendants also promised that, also by the end of last month, headquarters staff would review each of the 201 inmate-patients who met the MHARP referral criteria, but whose clinicians decided did not need to be referred to DMH. *Id.* Although the results of each of those review processes should now be available, Defendants now report that they need another month to "follow[] up with the institutions on this review." Ex Parte Request at 8; Aungst ¶¶ 5-6. Defendants' inability

to even keep their audit on track does not justify their requested delay.

The August 17, 2011 evidentiary hearing must not be delayed. At that hearing, Plaintiffs are prepared to prove that the existing referral process is irretrievably broken, that Defendants' "alternative assessment" is fundamentally flawed and cannot hope to fix it, and that the already huge DMH waitlist seriously under-represents the true need for inpatient care in the system today. These chronic problems must be addressed immediately, and Defendants should be required to substantiate their claims that they are willing and able to do so at next week's evidentiary hearing.

## CONCLUSION

Defendants provide no basis for an additional four-month delay of the evidentiary hearing addressing the crisis-level waitlist for inpatient care. The hearing should proceed as scheduled on August 17, 2011 and Defendants' Ex Parte Request must be denied.

DATED: August 11, 2011         Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs