1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  PRISON LAW OFFICE
   1917 Fifth Street
3  Berkeley, California  94710-1916
   Telephone:   (510) 280-2621
4

5

6

7  CLAUDIA CENTER – 158255
   THE LEGAL AID SOCIETY –
8  EMPLOYMENT LAW CENTER
   180 Montgomery Street, Suite 600
   San Francisco, California  94104-4244
9  Telephone:   (415) 864-8848

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
JANE E. KAHN – 112239
LISA ELLS – 243657
AARON J. FISCHER – 247391
LAURA BOYSEN-ARAGON – 248083
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830

WARREN E. GEORGE – 053588
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California  94111-4066
Telephone:   (415) 393-2000

10  Attorneys for Plaintiffs

11  UNITED STATES DISTRICT COURT

12  EASTERN DISTRICT OF CALIFORNIA

13

14  RALPH COLEMAN, et al.,

15          Plaintiffs,

16      v.

17  EDMUND G. BROWN, Jr., et al.,

18          Defendants.[1]

19

20

21

22

23

24

25

Case No. Civ S 90-0520 LKK-JFM

**EXHIBIT W TO THE DECLARATION
OF AARON J. FISCHER IN SUPPORT
OF PLAINTIFFS' BRIEF ON
EVIDENTIARY HEARING
REGARDING ORDER TO SHOW
CAUSE WHY EMPTY DMH BEDS
CANNOT BE FILLED WITH CDCR
INMATES AND IN SUPPORT OF
ADDITIONAL RELIEF**

Judge:  Hon. Lawrence K. Karlton
Date:     August 17, 2011
Time:    10:00 a.m.
Crtrm.:  4

26  [1] The names of Defendants currently serving and their official capacities have been
27  substituted pursuant to Fed. R. Civ. P. 25.

[534603-11]

28

EXHIBIT W TO THE DECLARATION OF AARON J. FISCHER IN SUPPORT OF PLAINTIFFS' BRIEF ON
EVIDENTIARY HEARING REGARDING ORDER TO SHOW CAUSE WHY EMPTY DMH BEDS CANNOT BE
FILLED WITH CDCR INMATES AND IN SUPPORT OF ADDITIONAL RELIEF

# EXHIBIT W

# *MEMORANDUM OF UNDERSTANDING*
# *Intermediate Care/Non-Acute Services*

## CALIFORNIA DEPARTMENT OF CORRECTIONS
## AND REHABILITATION
## AND
## CALIFORNIA DEPARTMENT OF MENTAL HEALTH

California Department of Corrections and Rehabilitation and
Department of Mental Health

## TABLE OF CONTENTS

Glossary of Terms ...................................................................................................... 2

I.      INTENT ........................................................................................................... 4

II.     GENERAL PROVISIONS ................................................................................ 4

III.    DUE PROCESS PROCEDURES FOR ADMISSION TO DMH ........................ 10

IV.     DUE PROCESS PROCEDURES FOR INVOLUNTARY MEDICATIONS ........... 11

V.      SAFETY AND SECURITY ISSUES ................................................................. 11

VI.     CRITERIA FOR INTERMEDIATE CARE/NON-ACUTE ADMISSION ................. 14

VII.    REFERRAL AND ADMISSION PROCESS-INTERMEDIATE CARE/NON-ACUTE
        ....................................................................................................................... 17

VIII    COORDINATED CLINICAL ASSESSMENT TEAM ........................................... 21

IX      UTILIZATION MANAGEMENT ........................................................................ 22

X.      RETURN TO CDCR ........................................................................................ 23

XI.     TRANSFER ARRANGEMENTS TO AND FROM CDCR ................................... 29

XII.    RE-ENTRY SERVICES ................................................................................... 30

XIII.   MEDICAL AND SURGICAL HEALTH CARE .................................................... 34

XIV.    PHARMACY SERVICES FOR PSYCHIATRIC PROGRAMS (VPP and SVPP) .. 35

XV.     PHARMACY SERVICES FOR DMH HOSPITALS ............................................ 37

XVI.    IMAGING STUDIES ........................................................................................ 37

XVII.   CONSULTATIVE SERVICES .......................................................................... 38

XVIII.  PUBLIC HEALTH AND INFECTION CONTROL ............................................... 38

XIX.    HEALTH RECORDS ....................................................................................... 38

XX.     SPECIALIZED ANTIPSYCHOTIC MEDICATIONS ........................................... 41

XXI.    SUICIDE ......................................................................................................... 41

XXII.   COMPLIANCE ................................................................................................ 42

XXIII.  TRAINING ...................................................................................................... 42

XXIV.   PROVISION FOR SERVICES UNDER PC §§ 2960-81 .................................... 43

XXV.    TERMINATION ............................................................................................... 43

TABLE OF ATTACHMENTS* ........................................................................................ 44

California Department of Corrections and Rehabilitation and
Department of Mental Health

## Glossary of Terms

| Acronym | Term |
|---------|------|
| ADC | Admission and Discharge Coordinator |
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| ASU | Administrative Segregation Unit |
| AWOL | Absence Without Leave |
| BPH | Board of Parole Hearing |
| C&PR | Classification and Parole Representative |
| CAT | Clinical Assessment Team |
| CCAT | Coordinated Clinical Assessment Team |
| CCR | California Code of Regulation |
| CDCR | California Department of Corrections and Rehabilitation |
| CIW | California Institution for Women |
| CMC | California Men's Colony |
| CMH | Chief of Mental Health |
| CMF | California Medical Facility |
| CONREP | Conditional Release Program |
| COR | California State Prison, Corcoran |
| CSH | Coalinga State Hospital |
| CSR | Classification Staff Representative |
| CSU | Classification Services Unit |
| CTC | Correctional Treatment Center |
| DA | District Attorney |
| DAPO | Division of Adult Parole |
| DCHCS | Division of Correctional Health Care Services |
| DGS | Department of General Services |
| DMH | Department of Mental Health |
| DOM | Department Operations Manual |
| EOP | Enhanced Outpatient Program |
| EPRD | Earliest Possible Release Date |
| GAF | Global Assessment of Functioning |
| GC | Government Code |
| GP | General Population |
| H&P | History and Physical |
| HCM | Health Care Manager |
| HC-POP | Health Care Placement Oversight Program |
| HIMD | Health Information Management Department |
| HQ | Headquarters |
| ICF | Intermediate Care Facility |
| IDTT | Interdisciplinary Treatment Team |
| ISRA | Integrated Suicide Risk Assessment |
| LPS | Lanterman-Petris-Short Act |

California Department of Corrections and Rehabilitation and
Department of Mental Health

| Acronym | Term |
|---------|------|
| LTCS | Long Term Care Services |
| MAR | Medication Administration Record |
| MHCB | Mental Health Crisis Beds |
| MHDS | Mental Health Documentation System |
| MOU | Memorandum of Understanding |
| MSH | Metro State Hospital |
| MTA-P | Medical Technical Assistant – Psychiatric |
| MTR | Medication Treatment Record |
| NSH | Napa State Hospital |
| OPPM | Operational Policies and Procedure Manual |
| P&T | Pharmacy and Therapeutics Committee |
| PA | Parole Agent |
| PAC | Pharmacy Advisory Committee |
| PATS | Parole Automated Tracking System |
| PC | Penal Code |
| PCH | Probable Cause Hearing |
| POC | Parole Outpatient Clinic |
| PSH | Patton State Hospital |
| PSU | Psychiatric Services Unit |
| RCCP | Recommended Continuing Care Plan |
| RH | Revocation Hearing |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP | Salinas Valley State Prison |
| TB | Tuberculosis |
| T-CON | Temporary Conservatorship |
| TTA | Triage Treatment Area |
| UHR | Unit Health Record |
| UM | Utilization Management |
| VPP | Vacaville Psychiatric Program |
| WIC | Welfare and Institutions Code |

California Department of Corrections and Rehabilitation and
Department of Mental Health

## MEMORANDUM OF UNDERSTANDING
## CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
## AND
## CALIFORNIA DEPARTMENT OF MENTAL HEALTH

### *Intermediate Care/Non-Acute Services*

## I.    INTENT

It is the intent of the California Department of Corrections and Rehabilitation (CDCR) and the California Department of Mental Health (DMH) by entering into this Memorandum of Understanding (MOU) to provide the legal framework by which the parties function cooperatively to provide inpatient mental health services to those individuals under CDCR's jurisdiction. These services shall be clinically appropriate and effective; conform to all legal requirements; and make optimum use of available resources for mental health evaluation and treatment.

Intermediate Care Facility (ICF) mental health services are provided for male inmate-patients at Atascadero State Hospital (ASH), Coalinga State Hospital (CSH), Salinas Valley Psychiatric Program (SVPP), and Vacaville Psychiatric Program (VPP) and for female inmate-patients at Patton State Hospital (PSH).

## II.   GENERAL PROVISIONS

A.  This MOU, when signed and approved, is effective from the date this MOU is signed and approved by CDCR and DMH for a period of three years. Should either or both parties deem it necessary to review and revisit the terms of this agreement, they agree to address their concerns through the addendum process set forth directly below

1.  Should an addendum to this MOU be required as a result of changes in State statute or regulation, DMH or CDCR policy, or court orders, a sub-committee shall be appointed by the executive staff of DMH and CDCR headquarters. This sub-committee shall be composed of both DMH and CDCR headquarters staff and shall develop the addendum for presentation to the executive staff of the two Departments. Upon approval, the addendum shall be signed by the Deputy Director of DMH Long Term Care, the Chief Deputy Secretary of CDCR Division of Correctional Health Care Services, and the *Plata* Federal Receiver, who will continue to sign any addendum    until the *Plata* court terminates the Receivership or the parties agree that the Receiver no longer needs to be a signatory to the addendum. The signed addendum shall be forwarded to the Deputy Attorney General for forwarding to the *Coleman* Special Master.

California Department of Corrections and Rehabilitation and
Department of Mental Health

B. Long Term Care Services (LTCS) shall represent DMH in this contractual agreement with CDCR. The Division of Correctional Health Care Services (DCHCS) shall represent CDCR.

C. This MOU refers to Penal Code (PC) §2684 and PC §2685 transfers and returns between CDCR and DMH hospitals. PC §§2960-2981 shall be covered in a separate or separate MOUs. In accord with the joint *Valdivia* and *Coleman* court order of August 8, 2008, a CDCR parolee who is awaiting a revocation hearing is an inmate-patient for purpose of access to mental health care under PC §2684. This MOU also refers to mental health treatment between CDCR and DMH psychiatric programs that do not fall under PC §2684 or PC §2685.

D. DMH may provide treatment services to CDCR parolees prior to their Probable Cause Hearing (PCH) or Revocation Hearing (RH). (*See* Section W below.) Acceptance of the CDCR referral of any such parolees prior to their PCH or RH shall be determined by the clinical and custody criteria stated in the most recent CDCR Mental Health Services Delivery System Program Guide.

E. Revocation hearings will be held either at DMH or CDCR facilities depending upon the unique circumstances of the RH and the parolee's mental health needs. For RHs involving witnesses, the Board of Parole Hearings (BPH) will coordinate with Division of Adult Parole (DAPO), DMH, CDCR, and the parolee's attorney to determine the best location for the RH on a case-by-case basis. Options for RHs may include but are not limited to the use of video-conferencing for witness testimony and holding hearings in non-traditional locations.

F. The Secretary of CDCR holds custodial authority over each CDCR inmate-patient at the DMH operated VPP at California Medical Facility (CMF) and the SVPP at Salinas Valley State Prison (SVSP).

G. Inmate-patients whose primary treatment needs are medical rather than psychiatric shall not be admitted to an intermediate care psychiatric service. In addition, some inmate-patients with psychiatric needs may have medical/nursing conditions that preclude placement in an intermediate care psychiatric service such as serious medical conditions that are chronic/progressive in nature and/or involve cognitive deterioration. If there is disagreement regarding eligibility for admission or continued hospitalization in a psychiatric unit, the following steps shall be taken:

    1. The DMH clinician(s) shall discuss the case with CDCR clinician(s). If an agreement is not reached:

California Department of Corrections and Rehabilitation and
Department of Mental Health

    2.   The DMH Chief Psychiatrist and Director of Nursing shall discuss the case with the CDCR Chief Medical Officer or Health Care Manager and Director of Nursing. If an agreement is not reached:

    3.   The case shall be referred to the Coordinated Clinical Assessment Team (CCAT) process.

H.  Treatment authority for each DMH program is authenticated by DMH staff prior to admission. CDCR staff must obtain either a signed informed consent (CDCR form 128-MH9, Transfer to DMH – Due Process Chrono) or documentation that the due process procedures specified in California Code of Regulations (CCR), Title 15 §3369.1, have been complied with.

I.  Treatment authority for the administration of psychotropic medication in each CDCR institution is established by CDCR staff either by obtaining a signed voluntary informed consent of the inmate-patient or by procedures developed pursuant to the *Keyhea v. Rushen* (Keyhea) injunction, as codified under PC §2600.

J.  Existing Keyhea procedures shall be used, as appropriate, by DMH and CDCR. The CDCR Legal Affairs Division, or other counsel, in accordance with current State policy, shall represent CDCR at Keyhea hearings involving a CDCR inmate-patient. DMH shall provide the necessary treatment and clerical resources for the Keyhea process in DMH programs.

K.  An inmate-patient admitted to VPP and/or SVPP does not require PC §2684 authority for placement. Proposed transfers of an inmate-patient from CDCR to any DMH State hospital shall be accomplished under the authority of PC §2684.

L.  CDCR institutions at the local level shall maintain an administrative liaison function for all DMH hospitals and psychiatric programs specified in this MOU. This liaison is designated as the DMH coordinator. The DMH coordinator at each CDCR institution is generally a CDCR clinician trained to facilitate referral and transfer to DMH hospitals and psychiatric programs. DMH facilities shall maintain an administrative liaison function for coordination of inmate-patient care with CDCR. DMH shall specify in writing any changes in its administrative liaison person to the Statewide Director of Mental Health at DCHCS, CDCR (or designee). CDCR shall specify, in writing, any changes to its administrative liaison person to DMH headquarters. The administrative responsibility of each liaison shall include, but not be limited to:

    1.   Coordinating the flow of inmate-patient referrals and transfers;

    2.   Arranging for the transfer of an inmate-patient;

    3.   Ensuring the orderly processing of inmate-patient records;

California Department of Corrections and Rehabilitation and
Department of Mental Health

    4.   Communicating any procedural problems affecting the referral and transfer process as appropriate to the Statewide Director of Mental Health at DCHCS, CDCR (or designee), or Assistant Deputy Director, LTCS, DMH;

    5.   Proposing such procedures as may be required to facilitate the placement, treatment and transfer of a mentally ill inmate-patient; and,

    6.   Communicating issues relating to the quality management system as appropriate to the Statewide Director of Mental Health at DCHCS, CDCR (or designee), or Assistant Deputy Director, LTCS, DMH (or designee), who shall determine an appropriate response.

M.  Office and training space shall be coordinated through the institution Space Committee for VPP and SVPP executive, administrative, and clinical staff within CMF and SVSP.

N.  CDCR and DMH administrative liaisons shall maintain a list of the names and CDCR numbers of each inmate-patient who has been classified and is awaiting transfer to a DMH program.

O.  In order to ensure prompt access to needed care in DMH hospitals and psychiatric programs, CDCR shall maintain expeditious referral and classification procedures. These referral and classification procedures shall ensure that inmate-patients who meet the admission criteria, as specified in Section III below, are transferred from CDCR facilities to DMH hospitals and psychiatric programs within 72 hours of notification of an available bed. CSH does not receive direct referrals from CDCR but does accept direct admissions based on referrals from ASH.

P.  If an inmate-patient is hospitalized in a DMH hospital or psychiatric program and is required to be on leave to court or for other legal requirements, DMH hospital or psychiatric program staff should make every effort to assure continuity and proper level of care.

Q.  In the event of escape or Absence Without Leave (AWOL) of a CDCR inmate-patient from a DMH psychiatric program operated inside a CDCR facility, the DMH Executive Director, or designee, shall notify the Institution Watch Commander/custody staff immediately so that the escape procedures can be initiated. In the event of escape or AWOL of a CDCR inmate-patient from a DMH State hospital, the DMH Executive Director (or designee) shall immediately notify CDCR Identification Unit by telephone at (916) 445-6713. The telephone line is staffed 24 hours per day. The Identification Unit is responsible for notifying the appropriate CDCR staff.

California Department of Corrections and Rehabilitation and
Department of Mental Health

R.  Inmate-patients who commit a crime while hospitalized in a DMH hospital or
    psychiatric program may be charged with a felony, misdemeanor, or infraction
    as determined by the District Attorney (DA).

S.  If a CDCR inmate-patient dies while housed at a DMH hospital (ASH, CSH or
    PSH), or if the death occurred following transfer from a DMH hospital to a
    community medical facility, the DMH hospital responsible shall notify the
    coroner and local law enforcement agencies of the death according to each
    hospital's policies and procedures. Initial notification shall be by telephone,
    direct communication, or written/faxed notification to the following:

    For Inmate-Patients:

    1.  Coroner

    2.  County office of the District Attorney

    3.  County Sheriff

    4.  Chief of Police (if the location of death is within the city limits of an
        incorporated city)

    5.  Mental Health Program Director, DCHCS

    6.  Deputy Director, Division of Adult Institutions

    7.  Watch Commander of the referring prison

    8.  Chief Medical Officer of the referring prison

        Additionally, a written report shall be transmitted within eight hours to
        the above listed authorities and to the Warden of the CDCR referring
        institution. The Warden shall notify the Attorney General within 10
        calendar days of a death of all known facts concerning that death.

    For Inmate-Patients who are Parolees:

    1.  Local Parole Unit for parolee

    2.  Parole Outpatient Clinic Liaison

    3.  Chief Psychiatrist for appropriate Parole Outpatient Clinic (POC)
        Region

T.  In the case where a CDCR inmate-patient housed at CMF is found
    unresponsive, VPP staff shall follow the emergency procedure policy that is in
    place at CMF, then shall transfer the inmate-patient to the CMF Emergency

California Department of Corrections and Rehabilitation and
Department of Mental Health

Clinic. In the case where a CDCR inmate-patient housed at SVSP is found unresponsive, SVPP staff shall follow the emergency procedure policy that is in place at SVSP, then shall transfer the inmate-patient to the SVSP Triage Treatment Area (TTA) in the Correctional Treatment Center (CTC). Appropriate clinical staff shall determine whether the inmate-patient is deceased. The involved CDCR institution shall complete all required notifications in accordance with the CDCR Department Operations Manual (DOM) §51070.

U. Inpatient records for all inmate-patients shall be in compliance with CCR, Title 22, Division 5, Chapter 1, Article 7, Administration. DMH staff shall be responsible for maintaining and completing all DMH inpatient mental health records for each inmate-patient residing in a DMH program, following the Mental Health Documentation System (MHDS).

V. For the psychiatric programs (VPP and SVPP), DMH shall be responsible for recruiting and hiring staff. Personnel issues of the hospital and psychiatric program staff shall be the responsibility of DMH. Pursuant to Government Code (GC) §§1029 and 1031, CDCR shall provide an expedited selection process for all Medical Technical Assistant-Psychiatric (MTA-P) applicants. This process includes conducting the written psychological exam; risk assessment and physical abilities test; vision test; fingerprinting; background investigation; pre-employment medical examination; and oral psychological examination process. DMH shall provide timely and appropriate clinical training for the DMH staff.

W. A parole RH may occur at DMH when the inmate-patient is receiving DMH inpatient care.

   1. The RH is the responsibility of CDCR, and shall be documented by CDCR.

   2. CDCR will coordinate with DMH to schedule the hearing and reserve a hearing room at DMH.

   3. All parolees pending revocation have appointed counsel. DMH will provide the inmate-patient's counsel with access to their client and to their client's clinical file prior to the hearing in accord with established DMH attorney visiting and file review procedures that exist at each DMH institution.

   4. If the RH is scheduled to be held in a DMH facility, the inmate-patient shall be escorted by DMH staff to the RH unless the hearing is waived by the inmate-patient.

California Department of Corrections and Rehabilitation and
Department of Mental Health

5.  RHs will be held either at DMH or CDCR facilities depending upon the
unique circumstances of the RH and the parolee's mental health
needs. For RHs involving witnesses, BPH will coordinate with DAPO,
DMH, CDCR, and the parolee's attorney to determine the best
location for the RH on a case by case basis. Options for RHs may
include but are not limited to the use of video conferencing for witness
testimony and the holding of hearings in non traditional locations.

X.  CDCR shall provide admission and discharge dictation and transcription
services for CDCR inmate-patients who are admitted to the VPP and SVPP
ICF units.

## III.  DUE PROCESS PROCEDURES FOR ADMISSION TO DMH

A.  Treatment authority for each DMH hospital and psychiatric program is
authenticated by DMH staff prior to admission. CDCR staff must obtain either
a signed informed consent or documentation that the due process procedures
(Vitek Hearing or pre Vitek certification) specified in California Code of
Regulations, Title 15, Section 3369.1, or in Section 3363, Right to Refuse
Treatment, are followed:

B.  The emergency certification is described in the Acute MOU and is not a
process used for ICF care.

1.  A Vitek hearing provides the due process requirement when the
inmate-patient does not provide informed consent for placement in a
DMH hospital and/or psychiatric treatment program.

a)  The Vitek hearing shall occur within 72 hours prior to admission
to DMH. This hearing is the responsibility of CDCR, and shall
be documented using a CDCR Form 128C.

b)  The hearing officer shall be the Warden or designee. In no
event shall the hearing officer be the referring mental health
clinician(s) or that clinician's immediate supervisor.

c)  A staff assistant, usually the inmate-patient's correctional
counselor, shall be appointed by the hearing officer to assist
the inmate-patient at the hearing.

d)  The inmate-patient shall be present at the due process hearing
unless the hearing is waived by the inmate-patient.

e)  The inmate-patient may present evidence, including witnesses,
to show he should no longer be involuntarily hospitalized, and
he may refute evidence and cross-examine witnesses.

California Department of Corrections and Rehabilitation and
Department of Mental Health

        f)   A written decision shall be provided to the inmate-patient no later than 72 hours from the conclusion of the hearing, signed by the hearing officer. The hearing officer must document all evidence relied upon and the reason(s) for his/her decision.

C. Inmate-patients shall be informed any time they are the object of particular mental health diagnosis or treatment procedures. Such inmate-patients shall have the right to refuse assignment to such a program for diagnosis or treatment without being subject to discipline or other deprivation, except as indicated in the following:

1. When a mental health evaluation is required by law or ordered by a court;

2. When an inmate-patient is placed in a mental health program for diagnostic study by the action of a classification committee, which acted upon documented information or observations that gave reasonable cause to believe the inmate-patient was suffering from a mental illness that poses a danger to self or others, or is gravely disabled; or

3. When the diagnostic study has led to a diagnosis of existing or recurrent mental illness that renders the inmate-patient dangerous to self or others, or gravely disabled.

## IV. DUE PROCESS PROCEDURES FOR INVOLUNTARY MEDICATIONS

A. Treatment authority for the administration of psychotropic medication in each CDCR institution is established by CDCR staff via signed voluntary informed consent of the inmate-patient or by procedures developed pursuant to the *Keyhea v. Rushen* (Keyhea) injunction, as codified under PC §2600.

1. Existing Keyhea procedures shall be used, as appropriate, by DMH and CDCR. The CDCR Legal Affairs Division or other counsel, in accordance with current state policy, shall represent CDCR at Keyhea hearings involving a CDCR inmate-patient. DMH shall provide the necessary treatment and clerical resources for the Keyhea process in DMH hospitals and psychiatric programs.

## V. SAFETY AND SECURITY ISSUES

A. DMH acknowledges that the delivery of mental health treatment in a prison setting entails security considerations.

B. CDCR recognizes that the provision of ICF Psychiatric Inpatient Services in the State hospital setting presents safety and security issues that are

California Department of Corrections and Rehabilitation and
Department of Mental Health

different than DMH inpatient programs and services based within a State prison setting. CDCR shall include a thorough custody review of safety and security factors for each inmate-patient prior to sending a referral. Inmate-patients who are deemed a significant assault risk, have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner), or present a high escape risk, shall not be referred to the State hospitals. In these cases, the psychiatric programs, VPP or SVPP, shall provide mental health services.

C. Any nominal medical and/or surgical care or treatment, except for life-threatening conditions, shall normally be provided within the secure perimeter of the State hospitals; or for the psychiatric programs within the secure perimeters of CDCR designated prisons. Except for emergency care, the transport to any outside medical treatment of any ICF psychiatric inmate-patient shall be the responsibility of CDCR custody officers, and shall require the prior authorization of the CDCR Health Care Manager (HCM).

D. There shall be no temporary community release of a CDCR inmate-patient receiving ICF psychiatric care at a State hospital. If CDCR has a need to exercise a Temporary Removal under the DOM §62070, the inmate-patient shall first be returned to CDCR custody pursuant to PC §2685 procedures.

　　1. CDCR inmate-patients remain subject to all regulations and requirements governing CDCR inmate-patients in so far as they may be reasonably applied in the State hospital-based setting in order to permit intermediate psychiatric treatment at ASH, CSH and PSH.

E. CDCR shall maintain a custody counselor liaison for each State hospital and psychiatric program in order to facilitate necessary custody/classification procedures for CDCR inmate-patients receiving ICF psychiatric treatment.

F. If, after admission to a State hospital, it is determined that an inmate-patient is a significant risk to assault, victimize, or escape, the referring prison shall provide emergency custody and transport to California Men's Colony or another CDCR institution. If the threat is considered to be imminent, transport shall be provided on the day of notification. In all other such notifications, the inmate-patient will be picked-up by CDCR within 24 hours. The inmate-patient will be evaluated for transfer to VPP or SVPP by the referring CDCR institution. If necessary, the case will be referred for discussion of appropriate placement at the CCAT.

G. FOR SVPP only

　　1. SVSP shall provide "reasonable access equal to that afforded with the free standing treatment center" to inmate-patients receiving ICF level of care in Facility D and in Facility C, once activated.

California Department of Corrections and Rehabilitation and
Department of Mental Health

a)  All MTA-Ps on duty shall be issued keys to all inter pod doors,
    which include A, B, & C pod doors, dining room doors and
    concrete yard doors that have access to outside group rooms.
    The same policy shall be afforded to the SVPP staff for Facility
    C.

b)  SVPP clinical and administrative staff shall have "reasonable
    access" to the D Vocational office area through the D-
    Vocational sally port in order to provide treatment to SVPP
    inmate-patients.

c)  The treatment hours in Delta Five and Six and in Charlie Five
    and Six dayrooms shall be extended from 2000 hours to 2100
    hours to provide additional inmate-patient treatment.

d)  The availability of use of Delta Yard and Charlie Yard shall be
    extended from one hour per day to a minimum of two hours per
    day with additional time provided on Sundays and holidays.
    SVSP shall provide control booth coverage as needed.

e)  DMH clinical staff is permitted to provide treatment to DMH
    inmate-patients on the Delta Yard and Charlie Yard.

f)  The Delta Yard and Charlie Yard shall be available to inmate-
    patients on Confined to Quarters and/or Discretionary Program
    Status as determined by SVPP inmate-patient treatment needs
    and not by SVSP determinations.  SVSP shall provide control
    booth coverage as needed.

g)  All Delta Yard and Charlie Yard Post Orders related to SVPP
    shall be provided to SVPP management for review and input
    prior to approval by CDCR. Any requests by SVPP to include a
    SVSP custody officer in an inmate-patient's treatment team
    conference (IDTT) shall follow the SVPP Operational Policies
    and Procedures Manual (OPPM).  The SVPP OPPM shall
    include a clear statement of the expectations being placed on
    CDCR staff. Any resulting changes shall be vetted through the
    Labor Relations process prior to implementation.

h)  The timelines for SVSP classification to clear inmate-patients
    for programming shall not exceed 10 working days from
    admission.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## VI. CRITERIA FOR INTERMEDIATE CARE/NON-ACUTE ADMISSION

A. Criteria for inpatient care in a DMH hospital or psychiatric program requires an Axis I major (severe) mental disorder with active symptoms (the definition of a major mental illness is based on the CDCR Program Guide) and any one of the following:

1. As a result of the major mental disorder, the inmate-patient is unable to adequately function within the structure of CDCR's Enhanced Outpatient Program (EOP) level of care.

2. The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms.

3. The need for neurological and/or neuropsychological consultation services, which are available at ASH, PSH, and VPP. Referrals for these services may be requested for inmate-patients accepted to SVPP.

4. The inmate-patient requires an inpatient diagnostic evaluation because of the complexity of the case.

5. The inmate-patient would benefit from a comprehensive treatment program with an emphasis on skill (i.e. coping, daily living, medication compliance) development with increased programming and structured treatment environment; and the need cannot be met by CDCR.

6. The inmate-patient's psychiatric medication history indicates that a Clozapine trial may be useful.

7. Inmate-patients (male only) who are deemed a significant assault risk; have a history of victimizing other inmate-patients (including inciting others to act in a dangerous manner); or present a high escape risk; shall be referred to SVPP. CDCR refers to these inmate-patients as high custody inmate-patients.

8. The inmate-patient's Global Assessment of Functioning (GAF) indicates behavior that is considerably influenced by psychotic symptoms; serious impairment in communication or judgment; or inability to function in almost all areas.

California Department of Corrections and Rehabilitation and
Department of Mental Health

9. For SVPP only, the inmate-patient is medically appropriate as determined by the receiving Prison medical staff. The SVPP Forensic team will determine mental health suitability. If agreement is not reached, CDCR and DMH will follow the CCAT process set forth below in Section VIII. Any denial for medical reasons will be immediately referred to the Director, Statewide Mental Health Program.

B. In addition to a primarily Axis I disorder, admission to a DMH hospital or psychiatric program shall be considered when:

1. The inmate-patient engages in ritualistic or repetitive self-injurious/suicidal behavior that has not responded to treatment in a CDCR facility. And without inpatient mental health treatment the inmate-patient is likely to develop serious medical complications or present a threat to their life.

2. The inmate-patient is chronically suicidal and has had repeated admissions to a Mental Health Crisis Bed (MHCB).

C. Inmate-patients committed to DMH by the courts as being incompetent to stand trial per PC §1370.

Inmate-patients who commit an offense while in CDCR, are referred to the DA for prosecution, and are found by the court to be incompetent to stand trial per PC §1370, will first be considered for the SVPP. If there are no custodial or clinical reasons for admission to the SVPP, the inmate-patients will then be considered for other PC §1370 programs in DMH.

1. Whenever the CDCR institution referring clinician is in doubt concerning the appropriateness of referring a particular inmate-patient, the referring clinician will call the Chief of Health Care Placement Oversight Program (HC-POP) or designee then, if necessary, will call the State Hospital's PC §2684 screening clinician or the psychiatric program's Admission and Discharge Coordinator (ADC) to clarify the adequacy of the referral before formally submitting the referral.

2. When an inmate-patient is admitted to either a State hospital or psychiatric program as a PC §1370, the sending CDCR institution shall provide all the documentation that would be required if the inmate-patient were being admitted to DMH for ICF mental health care. This includes but is not limited to the following:

California Department of Corrections and Rehabilitation and
Department of Mental Health

        a)  Updated information involving current treatment, medications, diagnosis, suicide risk, violence risk, Keyhea information, and presentation.

        b)  History and Physical (H & P) to determine medical ability to be housed at SVPP.

        c)  Updated case factor information, enemies at SVPP/SVSP, updated Earliest Possible Release Date (EPRD), and alert information, etc.

3. At the time of discharge of a PC §1370 inmate-patient, the following is needed:

        a)  Out-to-court status and discharge clarification.

        b)  A Minute Order from the court in charge of the case.

D. For SVPP only: This section specifies additional guidelines to maximize occupancy of the four-man cells.

1. If there is a waiting list, inmate-patients on the referral waiting list will be reviewed in the daily program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. The movement on the SVPP waitlist requires that a two or three paragraph note be faxed providing the rationale for the request.

2. If all clinical factors are equal, priority shall be assigned based on current placement in the following order: Psychiatric Services Unit (PSU); MHCB; other DMH placement (Vacaville Acute Psychiatric or Intermediate Program or ASH); Administrative Segregation (ASU)-EOP Hub; ASU; EOP; and General Population (GP).

3. To maximize occupancy within the SVPP four-man cells, the SVPP CAT may elect to accept admissions outside of the placement order as defined above.

4. SVPP CAT may accept EOP referrals provided such single cell admissions do not occupy more than four cells within SVPP.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## VII. REFERRAL AND ADMISSION PROCESS-INTERMEDIATE CARE/NON-ACUTE

The following CDCR institutions retain Unit Health Records (UHR) for inmate-patients transferred:

ASH = California Men's Colony (CMC)
CSH = California State Prison, Corcoran (COR)
PSH = California Institution for Women  (CIW)

A.  REFERRAL PROCESS:

The DMH and CDCR referral system uses documents and telephone conferences for referral and transfer of each CDCR inmate-patient.  CSH does not accept direct referrals from CDCR but does accept direct admissions from CDCR institutions.

1.  CDCR shall transmit standardized referral information to the appropriate DMH program (*see* Attachment #1 – DMH Referral Form Intermediate Care/Non-Acute Program).  The referral packet (*see* Attachment #2- DMH ICF/Non-Acute Referral Check List) shall be sent to the DMH Forensic Coordinator or the Admission and Discharge Coordinator (ADC).

2.  DMH shall review the referral packet within three working days of receipt.  DMH staff shall immediately notify the referring institution (*see* Attachment #3 – DMH Referral Decision Form) by fax of their decision.  The decision shall provide the detailed reasons for any rejections.

3.  Each referral for evaluation to an intermediate/non-acute program shall be the responsibility of CDCR clinical staff.  Referrals to DMH should be based on the need for the ICF level of care.  Determination for admission to the intermediate/non-acute program shall be the responsibility of the DMH Forensic Coordinator or the ADC.

4.  All referrals shall include a completed DMH referral form and a referral packet (*see* Attachment #2 – DMH ICF/Non-Acute Referral Check List), which consists of:

a)  H&P for Transfer to DMH.  The H&P must have been completed within 30 days.  If the inmate-patient is placed on a waitlist, the H&P must have been updated within the last 30 days;

b)  Current Treatment Plan (updated within 30 days) – CDCR Form 7388-MH;

California Department of Corrections and Rehabilitation and
Department of Mental Health

    c)   Due Process documentation of the hearing or written consent—CDCR Form 128-MH9—or a valid waiver of the due process hearing is required for referral if the inmate-patient refuses to sign a consent to transfer;

    d)   Current Medication Administration Record (MAR);

    e)   The Clozaril Checklist should be completed for an inmate-patient being referred for a Clozaril trial;

    f)   Supporting Keyhea documentation or a Keyhea Order (when relevant);

    g)   Interdisciplinary Progress Notes for past 15 days (may be less for new arrival to reception center);

    h)   Tuberculosis (TB) chrono from the referring institution;

    i)   Abstract of Judgment (for State Hospitals only);

    j)   Legal Status Summary (for State Hospitals only);

    k)   Chrono History (for State Hospitals only);

    l)   Custody Case Factor Sheet (updated within 30 days); and

    m)  CDCR Suicide Risk Evaluation.

5.   DMH psychiatric programs (VPP and SVPP) shall require the DMH referral form, decision form, and Case Factor Sheet for a DMH State hospital or psychiatric program transfer to another State hospital or psychiatric program. CMF and SVSP, due to their close proximity to VPP and SVPP, shall provide the entire Unit Health Record (UHR) and the Case Factor Sheet for review by the VPP and SVPP ADC in lieu of the documents listed above.

6.   If there is a waiting list, inmate-patients on the referral waiting list will be reviewed in the daily program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. The movement on the SVPP waitlist requires that a two or three paragraph note be faxed providing the rationale for the request.

California Department of Corrections and Rehabilitation and
Department of Mental Health

For SVPP:

If there is a waiting list, inmate-patients on the SVPP CAT referral waiting list will be reviewed in the daily Program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. Institutions may petition the SVPP Executive Director, Assistant Director, or Program Director to move an inmate-patient to the top of the waiting list based on clinical need. The CDCR requesting institution shall send a short memo (two or three paragraphs) to SVPP providing the rationale for the inmate-patient to be considered a priority for admission.

For VPP:

If there is a waiting list for the VPP, the referral waiting list will be reviewed in the daily Program meetings. Prioritization for admission is based upon the clinical acuity of the inmate-patient at the time of referral; the capabilities of the institution to provide mental health treatment and programs; and any change of clinical conditions that justify moving the inmate-patient to the top of the list. Institutions may request that an inmate-patient be moved to the top of the waiting list based on clinical need. The CDCR institution should contact the VPP CAT or ADC and verbally request the change followed by an updated referral packet.

7. At the time the CDCR treatment team determines that a referral to a DMH inpatient program is necessary, only one referral to either the acute program or the ICF program shall be necessary. The team shall not send referrals to both the acute and ICF programs at the same time.

8. If the condition of the inmate-patient changes while the inmate-patient is on the waitlist, the CDCR treatment team may request a case conference to discuss the case. The inmate-patient may be placed on a different program waitlist as a result of the case conference.

9. Inmate-patients who have been referred to ICF, and are subsequently admitted to an Acute Psychiatric Program (APP) because of a change in their mental health status before being placed into ICF, shall be considered for ICF placement when discharged from APP. If the APP CAT team determines that return to CDCR without ICF treatment is indicated, the case shall be referred

California Department of Corrections and Rehabilitation and
Department of Mental Health

to the CCAT.  The ICF referral shall only be rescinded upon agreement by both CDCR and DMH during the CCAT discussion.

B.  ADMISSION PROCEDURE:

1.  Classification Staff Representatives (CSR) from Classifications Services Unit (CSU) will be responsible for endorsing inmate-patients from the CDCR institution to the DMH program.  These endorsements may be done on site when a CSR is available or via Teletype process when a CSR is not available on site.

2.  The following procedures shall take place prior to actual admission of each inmate-patient accepted for treatment or evaluation by the intermediate/non-acute program:

   a)  The DMH Forensic Coordinator or ADC shall determine the location of the bed for the inmate-patient.

   b)  Upon admission, the appropriate psychiatrist shall assume immediate responsibility for the respective inmate-patient's care and treatment.

   c)  The admitting psychiatrist shall document the inmate-patient's mental health status in the medical record at the time of admission.

C.  TREATMENT PLANNING:

1.  Each inmate-patient admitted to an intermediate care psychiatric services program shall be evaluated and have a treatment plan within 72 hours of admission.  The treatment plan shall include a plan to stabilize the inmate-patient's symptoms and discharge to a lower level of care.  For those inmate-patients residing in a DMH hospital, the treatment plan will be predicated on the outlined criteria in the Administrative Directives of the State hospital.

2.  The treatment plan and the inmate-patient's progress shall be reviewed and updated within 10 days.  The treatment plan and the inmate-patient's progress shall again be updated at 30 days, then quarterly or at any time there is a change in the inmate-patient's treatment needs (for SVPP, every 30 days per CTC license regulations).

3.  The inmate-patient's progress shall be clearly documented in the medical record.

California Department of Corrections and Rehabilitation and
Department of Mental Health

4.  Inmate-patients who have been clinically discharged but not yet
    transferred shall continue to receive all evaluations and treatment
    procedures appropriate to their clinical needs until they leave the
    institution.

5.  Except for emergency returns to CDCR (covered in Section X., G.
    below), all inmate-patients being discharged from ICF psychiatric
    care services to CDCR shall, subject to the availability of a CDCR
    bed that is consistent with the *Coleman* mandates and the needs of
    the inmate-patient, be transported within 72 hours of notification to
    CDCR that the inmate-patient is being discharged.     Emergency
    returns shall be transferred within 24 hours.


## VIII    COORDINATED CLINICAL ASSESSMENT TEAM

All rejections will be automatically submitted by DMH to the CCAT within 24 hours of
rejection.  The team will be comprised of the following CDCR staff:  senior mental health
clinicians from DCHCS;  HC-POP representative-DCHCS; CSU representative-CDCR;
the institution Warden or designee; referring clinician and supervising clinician from the
referring institution-CDCR.  The team will also be comprised of the following DMH staff:
the Assistant Deputy Director- LTCS (or designee); a senior clinician; CSH; and the
Executive Director (or designee) and Program Director (or designee) for the respective
hospital or psychiatric program.  When reviewing a rejection, all DMH senior clinicians
will participate in the review.

A.  DCHCS will notify all CCAT members, as well as the referring institution, to
    call into a specific phone number at a designated time.  It is mandatory that
    the referring clinician be in attendance at this call as well as the Chief
    Psychiatrist and/or Psychologist and/or Senior Psychiatrist/Psychologist.

B.  The CCAT will review all pertinent information and seek clarification from the
    referring clinician as well as the DMH clinicians in order to determine the
    appropriate outcome for the case.  In all cases in which medical or nursing
    issues are involved, the California Prison Health Care Services
    representative from the institution and a DMH nursing representative shall be
    in attendance.  Decisions regarding admission or non-admission will be
    rendered by the CCAT at the conclusion of the meeting unless additional
    information is required.  For those cases where the CCAT cannot come to
    agreement, the Assistant Deputy Director, LTCS-DMH (or designee), and the
    Statewide Director, Mental Health, DCHCS-CDCR (or designee), will be
    contacted and the case turned over to them and their respective Deputy
    Directors to reach a final decision.  The final decision will be rendered within
    2 working days from the date all supporting documentation is received.

California Department of Corrections and Rehabilitation and
Department of Mental Health

    C.   CCAT will also schedule and review all cases where the DMH state hospital or psychiatric program requested additional information and the information has not been received from the referring institution. In these cases, the referring clinician should be prepared to provide, at the time of the CCAT review, any material that has not been provided to DMH.

    D.   The DCHCS shall schedule case conferences upon request by DMH and/or CDCR clinicians regarding a difficult or perplexing inmate-patient's case, including repeated admissions of the same inmate-patient in a short time frame.

## IX    UTILIZATION MANAGEMENT

    A.   Utilization Management (UM) is based on an average length of stay of 180 to 240 days for ASH, CSH, PSH, SVPP, and VPP. CDCR reserves the right to inspect, monitor, and perform utilization reviews prospectively, concurrently, or retrospectively regarding the courses of treatment or inpatient care provided to CDCR's inmate-patients. Such UM reviews shall be undertaken to determine whether the course of treatment or services was previously authorized, medically necessary and performed in accordance with the agreed upon rules and guidelines between DMH and CDCR. DMH agrees to make available, upon request by CDCR, for purposes of UM review, an individual inmate-patient's medical record and any committee reviews and recommendations related to that inmate-patient.

    B.   DMH acknowledges and agrees that a concurrent UM review shall not operate to prevent or delay the delivery of emergency treatment.

    C.   DMH acknowledges that the care of an inmate-patient at DMH shall be reviewed by CDCR UM nurses or designated parties and by a joint CDCR and DMH review process.

        1.   UM will focus on outcome analysis. The optimum outcome for an inmate-patient treated at DMH is to return them to CDCR at the highest possible level of functioning and their being able to remain in the least restrictive environment.

        2.   To measure outcome, each discharged inmate-patient's use of resources (days in ICF treatment at DMH hospitals and psychiatric programs) will be tabulated to assess the effectiveness of any program innovations, i.e., having a higher percentage of inmate-patients placed on Keyhea with regular renewals, wider use of depo (depo-injectable) medications, and instituting policies in which medication regimens that have been successful in stabilizing inmate-patients in the hospital setting are routinely continued by outpatient clinicians (allowing for changes due to compelling reasons).

California Department of Corrections and Rehabilitation and
Department of Mental Health

3. Information gathered from the data analysis shall be shared between DMH and CDCR. The departments will work together to implement changes indicated by favorable outcome data. The UM staff from each department will collaborate to integrate care between providers and departments in order to achieve bed utilization efficiency, optimal inmate-patient outcomes, and promote continuity across the care continuum.

4. CDCR UM nurses or designated parties will report their findings and make recommendations to the CDCR HCM, CDCR Chief Psychiatrist (or their designee(s)), and the DMH treatment team. CDCR and DMH managers (or their designees) will meet monthly to review the data.

5. Each DMH program also will have a joint CDCR and DMH UM process that will review individual cases.

6. If there is a disagreement about discharge, the UM nurse will review the inmate-patient's record and forward a recommendation to the joint CDCR and DMH UM review process. If there continues to be disagreement, the recommendation will be conveyed to the CCAT. If a CCAT is scheduled by the receiving CDCR treatment team, the UM nurse shall participate in that CCAT.

## X.    RETURN TO CDCR

A. Criteria for return to CDCR:

1. If the inmate-patient has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which inpatient care was required is in substantial remission, and the remaining symptoms are those of a disorder for which DMH inpatient care is not necessary, the inmate-patient will be returned to CDCR for ongoing treatment; or

2. Evaluation during inpatient care has resulted in a change of diagnoses such that the DMH program is not appropriate or necessary; or

3. When further involuntary inpatient care is unnecessary, will provide no further benefit, or a court has denied further treatment (see also 4. below) and re-incarceration or release to parole is required, the release or re-incarceration shall be coordinated by the Classification and Parole Representative (C&PR). When appropriate, the C&PR shall ensure notice to CDCR DAPO utilizing a CDCR Form 611, Release Program Study.

4. If requested by DMH, an inmate-patient who has withdrawn informed consent for mental health treatment or psychiatric medication, but for

California Department of Corrections and Rehabilitation and
Department of Mental Health

whom continued treatment is otherwise recommended, may be returned to CDCR under PC §2685 after all other avenues to obtain authorization to treat have been exhausted, if the following two criteria have been met:

a) Withdrawal of informed consent shall be demonstrated by 14 calendar days of continuous refusal to take oral medication or 30 calendar days of continuous refusal to accept scheduled depo-injectable medication, and documentation of discussions between treating DMH psychiatrists and other team members and the inmate-patient regarding the risks and benefits of continuing medication; AND

b) Documentation that the inmate-patient has not met criteria for involuntary treatment for at least the last 14 calendar days.[1]

B. Inmate-patients returning to CDCR from ASH or CSH will normally return to their sending institution, if that institution has the appropriate level of care (usually EOP). If the sending institution cannot provide the appropriate level of care (EOP, Clozapine therapy, etc.) or if there are enemy concerns or other custody factors prohibiting return to the sending institution, then the assistance of the Health Care Placement Unit will be requested to endorse the inmate-patient for return to an appropriate CDCR facility. Emergency or urgent returns to custody from ASH will be routed initially to CMC, and emergency or urgent returns to custody from CSH will be routed initially to COR, where they will remain until transfer to the most appropriate CDCR facility

C. The treatment team for the inmate-patient being considered for discharge from an ICF level of inpatient care shall consider what lower level of care is appropriate to meet the inmate-patient's mental health needs. The treating physician will clearly document in the Discharge Summary the rationale for their recommendation to a lower level of care, which includes consideration of transfer to the EOP at the receiving CDCR institution.

D. At the time that the DMH Interdisciplinary Treatment Team (IDTT) determines that discharge to CDCR is appropriate and the C&PR's office has designated the receiving CDCR institution, the DMH Forensic office shall contact the DMH Coordinator at the receiving institution to discuss the transfer.

---

[1] The two 14-calendar day time periods expand the time periods set forth in the Mental Health Services Delivery System Program Guide (2009 Revision) from 7 calendar days to 14 calendar days. (Program Guide, pg. 12-6-13.) CDCR and DMH agree that CDCR, in making subsequent revisions to the Program Guide, will take steps to include this expansion in such revisions, unless otherwise modified or rescinded by CDCR and DMH.

California Department of Corrections and Rehabilitation and
Department of Mental Health

E.  The DMH Coordinator at the CDCR institution shall notify the Chief of Mental
Health (CMH) or designee of the probable discharge. The information from
the discussion that occurred at the time of the initial notification of the
discharge shall be shared with the receiving clinical team.

F.  Requirements Prior to Physical Discharge of the Inmate-Patient:

1.  The DMH clinical team shall determine that the inmate-patient is ready
for discharge and recommend a level of care that is appropriate for
that inmate-patient.  The DMH Medical Director or designee shall be
notified of the team decision and confer with the team about the
recommendation.

2.  For a Security Housing Unit SHU inmate-patient at the DMH ICF
psychiatric programs, the forensic coordinators or CAT Teams shall
notify the C&PR Office two weeks prior to the physical discharge of
the patient to allow the ICC to determine if the case factors are still
appropriate to return the inmate-patient back to the sending institution.

3.  The C&PR's office shall review the inmate-patient's custody file and
determine to which institution that inmate-patient should be returned.
The location of the institution that the inmate-patient will be
transported to after discharge from DMH shall be communicated back
to the DMH Admission and Discharge Unit as soon as possible.

4.  Upon being notified that the C&PR's office has determined the
appropriate CDCR institution for the inmate-patient to return, the DMH
VPP CAT or the DMH Forensic Office shall notify the CDCR DMH
Discharge Coordinator at the receiving institution of the pending
discharge.

5.  After the C&PR's office has designated the receiving CDCR
Institution, DMH shall transmit by fax or electronically
(if technologically possible) the following documents to the DMH
coordinator at CDCR:

a)  The Discharge Summary Draft Template, which shall include
the discussion and recommendation of appropriate level of care
following discharge from ICF services.

b)  The Mental Health Summary/Discharge Contact Form (*see*
Attachment #4 – Mental Health Summary/Discharge Telephone
Contact Form). This form is to be used at the time of the DMH
team clinician-to-CDCR team clinician contact as an aid for
discussion. This contact shall take place after the inmate-
patient has returned to CDCR.

California Department of Corrections and Rehabilitation and
Department of Mental Health

        c)   If appropriate, the Non Formulary Drug Request Form (CDCR Form 7374)(*see* Attachment # 6)

6.   The institution has 72 hours after the C&PR's office receives the discharge chrono from DMH to pick up the inmate-patient from DMH and transport the inmate-patient to the identified institution.

7.   If the required pre-discharge documents are not received by the DMH Coordinator's office, the Coordinator shall contact the DMH State hospital or psychiatric program to have the material faxed.

8.   The lack of any one of these documents shall not delay transfer of the inmate-patient to CDCR unless the DMH State hospital or psychiatric program mutually agrees.

G.  Emergency Return Criteria:

1.   The inmate-patient shall be returned to the CDCR institution on an expedited basis of 24 hours if an emergency exists, and within 72 hours after the time of notification of the discharge to the C&PR's office.

2.   Emergency returns to CDCR including POC, shall be accomplished within 24 hours. Such returns will be with prior notification and approval by telephone of the CDCR institution's C&PR staff and Chief of Mental Health or designee. A dictated, typed Recommended Continuing Care Plan (RCCP) and/or discharge summary shall follow as soon as practicable, but not more than 14 days after return.

3   For each inmate-patient returning to CDCR from a DMH program, DMH shall ensure that the following documents shall be transferred with the inmate-patient to the respective CDCR institution (*see* Attachment #5 – ICF DMH Patient Discharge Checklist):

        a)   Psychiatric Discharge Summary (shall include the discussion and recommendation of appropriate level of care following discharge from ICF, usually an EOP level);

        b)   Nursing Assessment or Discharge Summary;

        c)   Current Physician's orders;

        d)   Medication Administrative Record (MAR) or the Medication and Treatment record (MTR);

California Department of Corrections and Rehabilitation and
Department of Mental Health

e)  Current Suicide Risk Assessment; and for VPP, the Integrated Suicide Risk Assessment (ISRA);

f)  Current Treatment Plan and behavior plans;

g)  Psychological Assessments (if available); and

h)  Keyhea Order or supporting Keyhea documentation (if applicable).

i)  Non-formulary Medication form (if applicable)

4.  The DMH prescriber will document in the discharge summary the necessity of all psychotropic medications by providing justification per the Enhancement Plan requirements and the non-formulary criteria of the CDCR Statewide Pharmacy and Therapeutics (P&T) committee. In addition, a CDCR Non Formulary Drug Request Form will be completed and returned with the discharge summary.

a)  If a non-formulary medication is in use and it is recommended that it should be used after the discharge back to a CDCR institution, the CDCR Non Formulary Drug Request Form (see Attachment #6) shall be completed and returned with the discharge summary.

b)  If a CDCR non-formulary medication is recommended for use after discharge back to the CDCR institution, the DMH primary psychiatrist for the inmate-patient or designee shall write a prescription for the medication to be used in CDCR. That prescription shall cover five consecutive days allowing CDCR to order and receive the medication from the CDCR pharmacy services.

(1) If the inmate-patient is being discharged from SVPP, the prescription shall be placed in the CDCR pharmacy services computer system. This same process shall be used at VPP once the CDCR pharmacy services system is available at CMF.

(2) VPP, ASH, CSH and PSH shall provide the receiving CDCR institution with a written prescription for the non-formulary medications. This shall be part of the discharge packet that accompanies the inmate-patient.

5.  The inmate-patient shall not be placed in the transport vehicle without the above documents. For each parolee returning to DAPO's supervision, DMH shall ensure that the parolee's documents shall be

California Department of Corrections and Rehabilitation and
Department of Mental Health

forwarded to the Parole Outpatient Clinic Liaison of the respective Parole Region.

6. Notwithstanding paragraph 3. above, a DMH discharge packet shall accompany the inmate-patient at discharge and be faxed to the receiving CDCR institution no later than 2 weeks after discharge. The discharge packet shall include but not be limited to (*see* Attachment #5 – ICF DMH Patient Discharge Checklist):

   a) Interdisciplinary Notes for past 15 days.

   b) Physician Progress Notes for past 15 days.

   c) Psychological Assessments (if available).

   d) Relevant Consults.

   e) If applicable, forms specific to psych and return, mental health placement, and transfer information for parolees.

   f) In addition, the DMH hospitals and psychiatric programs will include in their discharge packets the forms specific to psych and return, mental health placement, and transfer information for parolees.

   g) All DMH hospitals and psychiatric programs shall provide written copies of the aforementioned cited materials. For VPP and SVPP, due to their close proximity to CMF and SVSP, they shall provide the entire UHR for review by the CMF and SVSP Chief of Mental Health instead of the above.

   h) If the receiving CDCR institution is aware that the inmate-patient has been transferred to another CDCR institution, the discharge documents shall be forwarded by the receiving CDCR institution to the inmate-patient's current residence.

7. Once the inmate-patient is transferred back to the CDCR institution, the receiving team clinician, on a timely basis but no later than 5 working days after the time of notification and after evaluation of this patient at the receiving institution, shall contact the discharge team clinician for further information and consultation. If the CDCR team clinician does not contact the DMH team clinician within 10 days of the inmate-patient discharge to CDCR, the DMH clinician shall attempt to contact the CDCR team clinician at least once via the DMH Coordinator at the receiving institution. The DMH clinician-to-clinician contact form shall be used as a guideline during this conversation.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## XI. TRANSFER ARRANGEMENTS TO AND FROM CDCR

A.  The CDCR institution shall provide for transportation of an inmate-patient between a DMH State hospital and a CDCR institution or DMH psychiatric program. The parole unit or region shall provide for transportation of a parolee inmate-patient between a DMH program and a local detention facility or community placement when mode of transportation is appropriate for the discharging inmate-patient.

B.  A transfer schedule shall be established by the CDCR referring institution and the respective DMH program.

C.  The referring CDCR institution and DMH shall coordinate a transfer schedule, normally allowing for transfer of an inmate-patient within 72 hours of acceptance, and return from DMH within 72 hours of discharge. DMH facilities are staffed to receive and admit inmate-patients between 8:00 AM and 4:00 PM, Monday – Friday except when a State holiday falls on a weekday.

D.  Each inmate-patient admitted to a DMH program shall have with him/her, unless already sent, all documentation listed in Section VII.A.4. If, following the inmate-patient's admission, it is determined by assessments of the DMH staff that the inmate-patient does not meet admission criteria for the inpatient mental health program; CDCR will transport the inmate-patient back to prison on an expedited basis but no more than 72 hours.

E.  If the admission was based on a WIC § 5150 evaluation by the State hospital and the inmate-patient does not meet criteria for continued hospitalization or conservatorship, a CDCR Parole Agent will transport the inmate-patient back to prison or to the inmate-patient's county of residence within 24 hours, but only when the mode of transportation is appropriate for discharging the inmate-patient. The State hospital cannot retain an inmate-patient beyond 24 hours and if the inmate-patient is not picked up within this time period, it may become necessary for the State hospital to discharge the inmate-patient to the street.

F.  An inmate-patient who has been found to pose an unusual and severe security risk to the DMH program in which he/she is housed shall be transferred by CDCR to a CDCR institution within 24 hours. However, if the security risk is on the basis of mental disorder rather than criminality or personality disorder, DMH shall make every effort to retain and treat the inmate-patient in the DMH hospital.

G.  Personal property of inmate-patients admitted to SVPP and VPP ICF units on Psych and Return shall be retained at the sending institution pending return

California Department of Corrections and Rehabilitation and
Department of Mental Health

of the inmate-patient. Inmate-patients formally endorsed for permanent housing at SVSP and CMF shall be transferred with all personal property.

    1. Property, other than legal materials, shall be limited to no more than can be stored within six cubic feet.

    2. When an inmate-patient is received by SVPP or VPP with personal property, the property box from CDCR shall be inventoried and sealed. Any Victims Compensation and Government Claims Board claim that results from items missing from an inmate-patient's property upon admission to the DMH hospital is CDCR's responsibility.

    3. CDCR shall ensure that items on the DMH Hospital Contraband List (*see* Attachment(s) #7a.,b.,c.- Contraband List(s)) are not transferred to a DMH hospital with the inmate-patient or parolee's personal property.

  H.  Each inmate-patient or parolee shall be subject to a TB evaluation by DMH upon admittance.

## XII. RE-ENTRY SERVICES

The parties to this MOU concur that planning and preparation is integral and necessary for successful transition to the community for an inmate-patient receiving mental health treatment during their incarceration.

CDCR, except to the extent stated below, is primarily responsible for providing or contracting to provide, services for all CDCR inmate-patients receiving care within DMH. Services will commence at 120 days or less prior to an inmate-patient's scheduled release and return to the community.

Re-Entry Services and responsibilities will consist of the following:

  A.  Identification of CDCR Inmate-Patients at DMH
    1. Automated to the extent possible, CDCR will identify inmate-patients at DMH that have 120 days or less until their scheduled parole-release date.

  B.  Benefit Entitlements Application Process

    1. CDCR will utilize contracted or staffed Benefit Workers for the preparation and submittal of benefit entitlement applications. To the extent possible, inmate-patients identified as potentially eligible shall be provided the opportunity to participate in the pre-release benefit application process. Such benefits include: Social Security benefits; such as Social Security, Supplemental Security Income (SSI), or Social

California Department of Corrections and Rehabilitation and
Department of Mental Health

Security Disability Income (SSDI), California State sponsored Medi-Cal benefits, and Veterans Affairs (VA) benefits. Inmate-patient participation in this program is voluntary, and requires the inmate-patient to sign both an authorization to release information and an appointment of representative form.

At 120 days or less prior to the scheduled release date, Benefit Workers will initiate the screening process to determine which inmate-patients are potentially eligible for benefit entitlements.

The application process for inmate-patients at DMH requires a collaborative effort by CDCR and DMH. Specifically, the responsibilities of CDCR and DMH include:

C.  CDCR Responsibilities

1.  Identification of inmate-patients admitted to DMH with impending release dates, and disability evidence.

2.  Obtaining a signed Release of Information and Appointment of Representative form from the participating inmate-patient. When an inmate-patient is unable to make a decision for them self, the benefit worker will request the treating psychiatrist write a notation that the inmate-patient applicant is unable to sign and/or make decisions for self due to mental illness and sign below the statement on the required forms.

3.  Determination of which benefit the inmate-patient is most likely eligible for based on medical/mental disability, financial status, and/or age.

4.  Gathering necessary information for the benefit applications, (i.e., data required in the benefit application fields, and supporting disability documentation).

5.  Completion and submission of benefit applications (web based initiation for Social Security).

6.  Facilitation of telephone interviews between the inmate-patient and Social Security staff after a SSI application has been submitted and the inmate-patient is able to participate.

7.  Tracking of application processes and outcomes.

D.  DMH Responsibilities

California Department of Corrections and Rehabilitation and
Department of Mental Health

To assist with the successful implementation of this program and for the Benefit
Workers to adequately perform their duties the following must be provided:

1.  Dedicated Office space with;

   a)  Desk.

   b)  Desk chair and guest/inmate-patient chair.

   c)  Internet access.

   d)  Speaker phone with voicemail.

   e)  Locking file drawer or cabinet.

   f)  Interview room with outside phone line and speaker
       phone if dedicated office space cannot be utilized for
       inmate-patient telephone interviews with the Social
       Security     Administration.     The     room     requires
       confidentiality due to the medical, personal, and financial
       information disclosure.    However, the room must be
       located in an area that will be observed by custody staff
       and have inmate-patient accessibility.

2.  Other needs for the benefits workers are as follows;

   a)  Facility access.

   b)  Access to the inmate-patients.

   c)  Access to fax and copying machine.

   d)  An assigned mail box.

   e)  Use of facility's effective communication resources.

   f)  Access to health records.

   g)  Occasional assistance from DMH treatment staff on
       completion of documentation describing disabilities.

California Department of Corrections and Rehabilitation and
Department of Mental Health

When CDCR or DMH is unable to provide the office space or other needs for the benefits workers as outlined above, the departments will collaborate to develop a mutually agreeable solution for the provision of these resources.

E.  Pre-Release Disposition Review

1.  At 60 days prior to the scheduled release date, DMH staff shall complete a pre-release dispositional review of all CDCR inmate-patients in their care and fax the review to the DCHCS headquarters office at (916) 445-0601, and then email the CCAT Coordinator notifying the Coordinator that the dispositional review was sent.

F.  Process for Providing Services Other than Benefit Applications

1.  The CCAT format will be utilized to develop release plans for paroling inmate-patients at DMH.  DCHCS shall determine the necessity for, and schedule a CCAT for inmates who are within 45 days of paroling upon receipt of the dispositional review from DMH.  DCHCS will coordinate the participants for the individual CCATs, and determine participants on a case by case basis.  Participants shall include representatives from DMH and CDCR; however, the participants may also include representatives from the inmate-patient's county of record, and/or contracted or other potential community-based mental health providers.

The CCAT will also be utilized to confirm county of residence, parole unit assignment, pending disciplinary actions, law enforcement warrants and holds, and whether an inmate-patient requires Mentally Disordered Offender and/or Sexually Violent Predator Screening. These items shall be referred to the C&PR or designee for an expeditious disposition as needed.

G.  Process to Use When an Inmate-Patient is a Danger to Self or Others/Gravely Disabled

1.  At 30 days prior to an inmate-patient's scheduled parole date, in cases in which it is determined that an inmate-patient will likely meet the involuntary placement criteria as set forth in the Lanterman-Petris-Short Act, the DMH treatment team shall provide CDCR with a mental health evaluation indicating that the inmate-patient presents a grave disability and/or danger to self or others sufficient to serve as probable cause for WIC §5150 placement, a historical course of the inmate-patient's mental disorder (WIC §5150.05), pertinent copies of medical records (if applicable), and a discharge plan.  During a CCAT, when it is determined that an inmate-patient will likely meet this criteria, CDCR

California Department of Corrections and Rehabilitation and
Department of Mental Health

will identify the location to which DMH will forward the required documentation.

H. Transportation upon Release to Parole

1. For inmate-patients returning to a prison for release processing, transportation shall be coordinated by CDCR. At no less than 14 calendar days prior to the scheduled release date, DMH staff shall verbally advise the prison clinical liaison if an inmate-patient is unable to navigate public transportation at time of release. The CDCR clinician shall then document the transportation need and provide it to the C&PR by the next business day.

## XIII.   MEDICAL AND SURGICAL HEALTH CARE

CDCR acknowledges that it refers CDCR inmate-patients to DMH for mental health treatment only. Medical care that is not routinely provided or available at a State hospital shall be the responsibility of CDCR. CDCR shall provide medical care for VPP and SVPP. CDCR and DMH agree that the transfer of a CDCR inmate-patient from a DMH State hospital to a community health facility for medical care does not vacate the inmate-patient's transfer from CDCR to DMH pursuant to PC §2684.

A. CDCR shall provide a list of CDCR contract community health facilities and identify the ones nearest to each DMH State hospital. Except when the need for emergency medical care prevents it, DMH State hospitals shall refer CDCR inmate-patients to a CDCR contract community health facility. CDCR shall instruct CDCR contract community health facilities and providers that all the medical bills for the care of CDCR inmate-patients referred to the contractor by DMH shall be submitted to CDCR for payment pursuant to CDCR's contract.

B. DMH shall obtain prior approval for non-emergency offsite medical care from the CDCR referring institution's HCM (or designee). If emergency offsite medical care is required, DMH shall notify the CDCR referring institution HCM (or designee), within one working day of the emergency transfer (applies to psychiatric programs only).

C. When the need for emergency medical care prevents a DMH State hospital from transferring a CDCR inmate-patient to a CDCR contract community health facility, the State hospital shall arrange for such emergency medical care at a local non-CDCR contract health facility. The DMH State hospital shall notify the non-CDCR contract health facility that CDCR is responsible for all emergency care of the inmate-patient and that all medical invoices will

California Department of Corrections and Rehabilitation and
Department of Mental Health

be sent to CDCR. The DMH State hospital will notify CDCR, and CDCR will attempt to obtain a contract for these services.

D.  CDCR's HCM in conjunction with CDCR UM staff shall be responsible for monitoring the inmate-patient's care while in a community health facility. Recommendations regarding care and continued stay may be made to the attending physician at the community facility, the Chief Medical Officer of the referring CDCR institution, and the Medical Director of the referring DMH State hospital.

## XIV.  PHARMACY SERVICES FOR PSYCHIATRIC PROGRAMS (VPP and SVPP)

A.  CDCR will provide a statewide pharmaceutical care service. This includes coordination through the CDCR Central Pharmacy Administration, CDCR Statewide Pharmacy and Therapeutics Committee, and CDCR pharmaceutical purchasing contracts to assure continuity of pharmaceutical care consistent with the program provided for all inmate-patients.

B.  The CDCR Statewide P&T will establish the formulary of drugs, pharmacy related policies and procedures and disease management medication guidelines. DMH will have representation on the P&T committee as a voting member.

C.  Use of formulary medications shall be encouraged. If a DMH clinician believes that a non-formulary medication is necessary to stabilize the mental health of an inmate-patient, the clinician may request to use the non-formulary medication by completing a CDCR non-formulary request. In addition, the DMH clinician is required to document the inmate-patient's medication history specific to the mental health condition being treated to include treatment effect, and provide justification for the non-formulary medication. This non-formulary request shall be approved or denied by the DMH Medical Director or designee.

D.  As the inmate-patient's mental health stabilizes, the use of CDCR non-formulary medications will be reviewed to determine if a CDCR formulary medication could be successfully used to maintain the inmate-patient's mental health. This team discussion shall be documented in the patient's chart and specify the CDCR non-formulary medication discussed and the rationale for use or non-use with the inmate-patient. All documentation related to use of the CDCR non-formulary medications will be provided to CDCR prior to discharge and at the time of discharge.

E.  If a CDCR non-formulary medication is recommended for use after discharge back to the CDCR institution, the DMH facility shall write a prescription for the medication to be used in CDCR. That prescription shall cover five

California Department of Corrections and Rehabilitation and
Department of Mental Health

consecutive days allowing CDCR to order and receive the medication from CDCR pharmacy services.

F.  Upon admission, based on clinical need, the administration of medication by VPP and SVPP clinical staff shall be prioritized in the following order:

   1.  use of injectables;

   2.  use of a liquid concentration; and

   3.  use of crushed medications with the exception of those medications such as time-released that are not amenable to this form of ingestion.

As the inmate-patient's mental health stabilizes, the delivery of medication will be reviewed for appropriateness.

G.  All pharmacies will be CDCR pharmacies and shall be in compliance with applicable regulations.

H.  The CDCR pharmacies shall be licensed by the California Board of Pharmacy.

I.  The CDCR facility level Pharmacist-In-Charge, who directly supervises the pharmacy staff, shall be under the supervisory direction of the Statewide CDCR Director of Pharmacy and local CDCR supervisor as stipulated in the CDCR Pharmacy Organizational Chart.

J.  A detailed accounting of all pharmaceutical costs, volume ordered, dispensed and to which inmate-patients, will be maintained by the Department of Pharmacy.  Said accounting shall also contain a detail of any supplied pharmaceutical material destroyed and the procedure followed for such destruction.

K.  Access to after-hours pharmaceuticals shall be provided following the CDCR Statewide Pharmacy After-Hours Medication Policy and Procedure.

L.  Controlled Substance records shall be maintained as required by CDCR Statewide Policy and Procedure.

M.  An annual inventory of pharmaceuticals will be conducted consistent with CDCR Statewide Pharmacy Policy and Procedure.

N.  CDCR Pharmacy will be responsible for ordering all pharmaceutical products consistent with CDCR Statewide Pharmacy Policy and Procedure.

O.  CDCR will be responsible to approve the order and the payment of all invoices for pharmaceuticals.

California Department of Corrections and Rehabilitation and
Department of Mental Health

P.  CDCR Pharmacy staff will be responsible for receiving ordered products from
the vendor's delivery consistent with CDCR Statewide Pharmacy Policy and
Procedure.

Q.  CDCR Pharmacy shall promptly forward the original copies of the invoices
received and their corresponding purchase orders/printouts to CDCR
Accounts payable consistent with CDCR Statewide Pharmacy Policy and
Procedure.

## XV.  PHARMACY SERVICES FOR DMH HOSPITALS

A.  DMH State hospitals utilize the statewide Common Drug Formulary.  DMH,
as a member of the Pharmacy Advisory Committee (PAC), will work with the
Department of General Services (DGS) to implement and administer a
statewide pharmaceutical program and a statewide medical supply program.
This includes coordination to develop a governing structure to establish
pharmaceutical requirements for DGS contracts that shall be established and
implemented.   One goal of the PAC is the development of a statewide
Common Drug Formulary.

B.  If the DMH hospital clinician has determined that  a non-formulary medication
is necessary to stabilize the mental health of an inmate-patient, the clinician
may use the medication but is required to document the inmate-patient's
medication history specific to the mental health condition being treated to
include treatment effect, and provide justification for the non-formulary
medication.

C.  As the inmate-patient's mental health stabilizes, the use of CDCR non-
formulary medications will be reviewed to determine if a CDCR formulary
medication could be successfully used to maintain the inmate-patient's
mental health.  This team discussion shall be documented in the inmate-
patient's chart and specify the CDCR non-formulary medication discussed
and the rationale for use or non-use with the inmate-patient.   All
documentation related to use of the CDCR non-formulary medications will be
provided to CDCR at the time of discharge.

## XVI.  IMAGING STUDIES

A.  Imaging studies including but not limited to x-rays, MRI, CT, ultrasound, and
Dexa Scan shall only be requested by a clinician, and only when determined
to be clinically necessary.  Imaging studies shall be requested utilizing the
established CDCR process, and shall include completion of all required
forms.  Requests for imaging studies will be subject to established CDCR
utilization management criteria.

California Department of Corrections and Rehabilitation and
Department of Mental Health

## XVII.  CONSULTATIVE SERVICES

A.  Specialty consultative services shall only be requested by a clinician, and only when determined to be clinically necessary.  Consultative services shall be requested utilizing the established CDCR process, and shall include completion of all required order forms.  Requests for consultative services will be subject to established CDCR utilization management criteria, to include InterQual

## XVIII.  PUBLIC HEALTH AND INFECTION CONTROL

A.  DMH shall maintain an active public health program.  This program shall collaborate with CDCR public health staff in ensuring compliance with all applicable Infection Control policies, procedures, laws and regulations.

## XIX.  HEALTH RECORDS

A.  ACCESS BY CDCR TO DMH MEDICAL RECORDS

In all cases, the Executive Director of the State Hospital or Psychiatric Program, or designees shall be notified prior to access of medical records.

1.  In medical emergencies or urgent need, the Chief Executive Officer of Medical Services or designees, shall have immediate on-site 24-hour access to the DMH program and/or State hospital health record for each CDCR inmate-patient.  These individuals may also contact the State hospital or psychiatric program by telephone and request that critical portions of the health record be faxed to an appropriate CDCR clinician.

2.  At all other times, the Statewide Director, Mental Health, DCHCS (or designee) shall have access to the DMH program or State hospital health record, or faxed or otherwise copied portions thereof, for each CDCR inmate-patient upon four hours notice.

B.  The CMF Health Records Director is the custodian of all health records for health care rendered at the CMF institution; the SVSP Health Records Director is the custodian of all health records for health care rendered at the SVSP institution.  The VPP and SVPP Health Information Management Department (HIMD) Supervisors shall be the sub-custodians of record for each inmate-patient who is in treatment in intermediate psychiatric care services at VPP and SVPP.  The State hospital Health Records Directors are the custodians of all health records for health care rendered at ASH, CSH and PSH.

California Department of Corrections and Rehabilitation and
Department of Mental Health

C. DMH staff shall be responsible for maintaining and completing each DMH health record following the MHDS. Each record shall be legibly handwritten, typewritten or computer stored.

D. VPP and SVPP maintained records:

1. VPP and SVPP staff shall be responsible for each inmate-patient's health record, beginning with the admission process and finishing when the inmate-patient is released to CDCR, or other DMH institution, and for ensuring that all discharge materials are completed.

2. The VPP and SVPP HIMD Offices shall assist DMH clinical staff with documentation requirements through concurrent and retrospective audits.

3. After the VPP HIMD completes the record, the CMF Health Record Department may audit documentation to ensure complete and accurate records and that each documentation requirement is met. CMF Health Records Director, or designee, shall review final coding and complete all indices. The completed record and all indices shall be the property and responsibility of the CMF Health Records Department.

4. After the SVPP HIMD completes the record, the SVSP Health Record Department may audit documentation to ensure complete and accurate records and that each documentation requirement is met. SVSP Health Records Director, or designee, shall review final coding and complete all indices. The completed record and all indices shall be the property and responsibility of the SVSP Health Records Department.

E. State hospital maintained records:

1. The State hospital HIMD staff shall be responsible for each inmate-patient's record, beginning with the admission process and finishing when the inmate-patient is released to CDCR. The HIMD is to ensure that all discharge materials are completed and assure that the documentation requirements are met through concurrent and retrospective audits. HIMD is responsible for the final coding and completion of indices. The competed record shall be maintained by HIMD.

F. The CMF Health Records Director and VPP HIMD Supervisor shall work together to provide optimal services to the DMH clinical staff. For each CDCR inmate-patient returning to CMF or another CDCR institution from the VPP, VPP shall ensure that the inmate-patient's complete health record is

California Department of Corrections and Rehabilitation and
Department of Mental Health

transferred to CDCR in accordance with Title 22. VPP shall also prepare an updated Discharge Summary pursuant to Section X above.

If an inmate-patient is a direct transfer from ASH to another State hospital, the complete medical record is transferred to the receiving State hospital. The original record is to remain at ASH if the inmate-patient is transferred to CDCR or to parole. Pertinent photocopies of the medical record are provided to the receiving agencies to assure continuity of care.

G.  A copy of the Discharge Summary and any relevant psychological testing reports and other evaluations shall be transferred to the CMF Health Records Manager at the time the inmate-patient is discharged to a CDCR facility. The VPP HIMD Supervisor shall be responsible for ensuring that the Discharge Summary and other relevant reports shall be filed in the inmate-patient's Section of the CDCR Unit Health Record.

A copy of the Discharge Summary/RCPP and any relevant psychological testing reports and other evaluations shall be transferred to the CDCR facility whenever the inmate-patient is transferred from ASH to CDCR.

H.  After notifying the DMH Executive Director, CDCR staff shall have continuous physical access to the specific VPP health care records as long as needed to complete the designated task.

Access to State hospital health records is limited to members of the hospital staff and CDCR staff who have legitimate reasons to have the records in their possession (e.g. treatment, payment, health care operation, community placement planning, and benefit entitlement applications).

I.  Each VPP Health Record procedure regarding maintenance of VPP health records for the VPP shall be approved through the MHDS Statewide Committee in conjunction with the CMF Health Records Director.  CMF Medical Staff shall maintain a current MHDS Manual in the VPP Chief of Staff's Office.  Any requirement believed necessary to be implemented in the VPP Health Record procedure by CMF Staff shall be requested in writing to, and reviewed by, the VPP HIMD Supervisor, Medical Director, and must be approved by the VPP Executive Director.  After approval, the VPP HIMD Supervisor and CMF Health Record Director shall work in concert to draft a policy for submission to the CMF Health Record Committee for approval prior to implementation.

J.  VPP is responsible for MHDS training and Quality Assessment and Improvement auditing to monitor for compliance.  The State hospital HIMD and Standards Compliance staff, and other key individuals when indicated, share responsibility fro documentation training, quality assessment and improvement auditing to monitor for compliance.

California Department of Corrections and Rehabilitation and
Department of Mental Health

K. When the VPP Medical Director determines that an inmate-patient is to be returned to CMF, the Discharge Review staff shall be notified. At that time, CMF shall be provided with the mental health discharge summary and all other pertinent medical data.

L. At the time of an inmate-patient's discharge, the VPP Medical Director shall ensure that VPP records are complete pursuant to CDCR Health Record Policy before inclusion in the CDCR health record.

M. At the time of an inmate-patient's discharge, the HIMD staff at the State hospitals will follow procedures for completing health records in accordance with health record policies. The State hospital records remain at the hospital; they are not included in the CDCR health record.

## XX.    SPECIALIZED ANTIPSYCHOTIC MEDICATIONS

Inmate-patients who require initiation of Clozapine shall generally be referred for treatment at a DMH program. To provide continuity of care, CDCR inmate-patients who have been placed on Clozapine while in the DMH program will be returned to the following institutions based on their medical, security, and classification needs:

> California Medical Facility;
> California Medical Facility, Mental Health Crisis Bed Unit;
> California State Prison – Corcoran;
> California State Prison – Sacramento;
> California State Prison – San Quentin;
> North Kern State Prison;
> Mule Creek State Prison;
> California Institution for Women; and
> Central California Womens Facility.

CDCR retains the right to add or delete institutions from the above list. CDCR shall provide notification of these changes via written communication to concerned parties including DMH. CDCR Mental Health Program will work with HC-POP and CSU to ensure proper placement.

For inmate-patients who will be discharged to parole on Clozapine therapy, if the parole date is known in advance, clinical staff from Program shall notify a POC liaison from the appropriate parole region clinic at least 30 days in advance of release, to ensure continuity of Clozapine therapy upon parole.

## XXI.    SUICIDE

In the case of an inmate-patient death by suicide, at either a State Hospital or Psychiatric Program, DMH and CDCR shall jointly review the case. DMH shall furnish to a CDCR reviewer a copy of any reports regarding the suicide that have been provided to the Department of Public Health. The CDCR reviewer will discuss initial

California Department of Corrections and Rehabilitation and
Department of Mental Health

findings with DMH executive staff prior to leaving the site. CDCR retains the right to make recommendations that it deems appropriate in keeping with licensing standards concerning the care of suicidal inmate-patients. The DMH Deputy Director, LTCS, and the Executive Director of the program will be furnished with a copy of the CDCR "Suicide Report" and the "Executive Summary of Suicide" along with attachments. DMH shall review the CDCR report, and shall include corrective steps if indicated. The DMH program shall furnish a follow up report along with supporting documents to the CDCR Mental Health Suicide Prevention Coordinator, DCHCS, within 90 days of receiving the Suicide Report (within 180 days of date of death). The follow up report shall include measurable goals, outcome criteria, and targeted timelines for implementation.

In cases when an inmate-patient has died within 30 days of discharge from a DMH hospital or psychiatric program, DMH shall be provided the CDCR mortality review as part of DMH's agreement with the United States Department of Justice's Consent Judgment.

    A.  In the case of a suicide of an inmate-patient within a DMH program, CDCR may review and copy the inmate-patient's DMH medical record upon notification to the hospital's Medical Director. For an inmate-patient who commits suicide at a State hospital, the Senior Special Investigator shall be contacted to make arrangements to review and copy the inmate-patient's medical record.

    B.  In the case of a suicide of an inmate-patient treated within a DMH program, when the suicide occurs within 30 days after discharge, CDCR shall notify the Chief of Correctional Services and Support at DMH Headquarters. DMH shall complete a death review that includes documentation indicating the level of functioning at the time of discharge from DMH and the justification for the recommended level of treatment at the time of the discharge.

## XXII. COMPLIANCE

CDCR and DMH shall regularly monitor compliance with this MOU. Any failure to comply with the terms of the MOU shall be reported for action to the respective department Deputy Directors.

Representatives from the State hospitals, psychiatric programs and prisons making direct referrals shall meet quarterly in Interagency Performance Improvement Meetings. These meetings may be held by videoconference and will be hosted on an alternate basis by CDCR HQ and DMH HQ.

## XXIII. TRAINING

CDCR and DMH shall distribute copies of this MOU to all CDCR institutions, Parole Regions and to relevant DMH hospitals and psychiatric programs. CDCR and DMH shall conduct system-wide training for institutional clinicians on the nature, extent and

California Department of Corrections and Rehabilitation and
Department of Mental Health

availability of inpatient DMH care, and on the admission criteria and procedure for
admission to each DMH program.

## XXIV.   PROVISION FOR SERVICES UNDER PC §§ 2960-81

Agreements between CDCR and DMH regarding individuals under PC §§2960-2981 are
covered in a separate or separate MOUs between CDCR and DMH.

## XXV.   TERMINATION

CDCR may terminate any program referenced in this MOU in whole or in part, upon 60-
calendar days written notice to DMH.  All programs, in whole or in part, not terminated
pursuant to this provision, shall remain in full force and effect.

SIGNATORS

_____          8-23-10
SHARON AUNGST                              _____
Chief Deputy Secretary                     Date of Signature
Division of Correctional Health Care Services
California Department of Corrections and Rehabilitation


_____          8-18-10
CYNTHIA A. RADAVSKY                        _____
Deputy Director                            Date of Signature
Long Term Care Services
California Department of Mental Health


_____          9-13-2010
J. CLARK KELSO                             _____
Federal Receiver                           Date of Signature
California Prison Health Care Services


_____          8/24/10
TERRI MCDONALD                             _____
Chief Deputy Secretary                     Date of Signature
Adult Operations

California Department of Corrections and Rehabilitation and
Department of Mental Health

## TABLE OF ATTACHMENTS*

Attachment # 1 – DMH Referral Form/Intermediate Care/Non-Acute Program
Attachment # 2 – DMH ICF/Non-Acute Referral Check List
Attachment # 3 – DMH Referral Decision Form
Attachment # 4 – Mental Health Summary/Discharge Telephone Contact Form
Attachment # 5 – ICF DMH Patient Discharge Checklist
Attachment # 6 - Non-Formulary Drug Request  (CDCR Form 7374)
Attachment(s) # 7 a., b., c. - Contraband List(s) for ASH, PSH, and SVPP/VPP

**Department Of Mental Health Referral Form**    ICF MOU Attachment #1
# ~~~ Intermediate Care/Non-Acute Program ~~~

**Referral for:**    ☐ Atascadero State Hospital (ASH)    ☐ Patton State Hospital (PSH)
☐ Vacaville Psychiatric Program (VPP):    ☐ Salinas Valley Psychiatric Program (SVPP)
☐ Cells ☐ Dorms [*PLEASE specify*]

**Referring Prison:** _____    **Date:** _____

**Date of Referral IDTT:** _____ *[Attach IDTT as part of Mental Health Treatment Plan]*

**Current Custody/Clinical Placement:** ☐ CCCMS    ☐ EOP    ☐ Ad-Seg EOP    ☐ PSU    ☐ MHCB    ☐ APP

---

**Inmate Name:** _____ **CDC#:** _____ **Date of Birth:** _____

**DDP:** _____ **Due Process:** ☐ Yes ☐ No **Date:** _____ **Ethnicity:** _____

**\*KEYHEA:** ☐ Yes ☐ No ☐ In Process (incl. supporting documentation) **Date Initiated:** _____ **Date Expires:** _____

**Housing:** _____ **Education: (years)** _____ **GED:** ☐ YES ☐ NO    **Literate:** ☐ YES ☐ NO

(Please Print)
**Referring Clinician:** _____ **Ph** _____ **Pgr** _____ **Fax** _____

**Tx Psychiatrist:** _____ **Ph** _____ **Pgr** _____ **MH Secretary Ph** _____

---

**Current Psychiatric Diagnosis:**    **Current Psych Medications:** (name, dosage, freq, duration, target sxs)

**Axis I** _____    _____
_____    _____

**Axis II** _____    _____

**Axis III** _____    _____

**Axis IV** _____    _____

**Axis V** _____    _____

---

**Reason For Referral:** (check all that apply and supply *detailed* narrative)

☐ **Inadequate level of functioning in EOP:** _____

_____

☐ **Requires 24–hour nursing care:** _____

_____

☐ **Requires neurological/neuropsychiatric/diagnostic testing:** _____

_____

☐ **Would benefit from focused skills development not currently available in EOP:** _____

_____

_____

☐ **Clozapine trial:** _____

**DMH Referral, continued**                                                              ICF MOU Attachment #1

**History of Present Illness and Past Psychiatric History:**     (Must Fill Out Completely)

Hx and Recent Suicidal Ideation/Attempt: _____

   **Ritualistic or Repetitive Self-Injurious Behaviors:** _____

   _____

   _____

   _____

Hx and Current **Violence and Behavioral Alerts:** _____

   _____

   _____

   _____

Hx and Current **Substance Abuse:** _____

   _____

   _____

Hx and Current **Psychiatric Treatment / MHCB / Hospitalization:** _____

   _____

   _____

   _____

   _____

Hx and current **Medication Compliance** (Document blood level verification of compliance): _____

   _____

   _____

**Current Mental Status Exam:**
**Please use statements that indicate observed behavior**
**DO NOT USE WNL**

Appearance: _____

Orientation: _____

Speech: _____

Attention/concentration: _____

Memory: _____

**DMH Referral, continued**                                    ICF MOU Attachment #1

Fund of Information: _____

Affect: _____

Mood: _____

Sleep: _____    Appetite: _____

Form of Thought: _____

Content of Thought: _____

Perceptual Disturbance: _____

Reality Contact: _____

Insight & Judgment: _____

Interview Attitude: _____

Reliability (Historian): ☐ Good ☐ Fair ☐ Poor _____
*Suicidal and Homicidal Ideation*:  SEE BELOW

What are desired **Treatment Outcome Expectations?** (be very specific)

_____

_____

_____

_____

**CDCR Referring Clinician:** Comments Regarding *Clinical Criteria / Factors / Signs / Symptoms* for DMH Placement
Consideration

_____

_____

_____

_____

_____

_____

_____

What are desired **Treatment Outcome Expectations?** (Be very specific)

_____

_____

**Referring Clinician Signature:** _____    **Date :** _____

ICF MOU Attachment #2
. March 2010

# Department of Mental Health **ICF/Non-Acute** Referral Check List

~ For use *first* by the CDC sending institution, *then* the DMH receiving facility ~

| | |
|---|---|
| Inmate's Name: | |
| CDC No: | |
| Referring CDC Institution: | |
| DMH Facility: | |

This checklist is to be utilized by a CDC institution when compiling a referral packet to DMH. In order for this process to be the most efficient and expeditious, the referring CDC institution, before sending to DMH, must include ALL applicable items. **Incomplete packets are unacceptable. The process of tracking down missing items wastes valuable clinical and administrative time and resources,** *and,* most importantly, it delays the patient getting to the needed level-of-care. DMH should never have to check the "needed" column because a required document did not arrive in the referral packet. To ensure that referral packets are completed before sending, a CDC clinical supervisor or manager **shall** co-sign along with the referring clinician, certifying that the packet is complete. This checklist, with the two required signatures, is then sent to the appropriate DMH facility as part of the referral packet.

N/A = Not Applicable

| | Required Information: Clinical | Included √ | N/A √ | Needed √ | Comments: |
|---|---|---|---|---|---|
| 1 | Referral Form for ICF/Non-Acute | | | | |
| 2 | Transfer Medical Summary **or** History and Physical -- (must be within 30 days of referral) **H&P is Required for SVPP** | | | | |
| 3 | Current Treatment Plan | | | | |
| 4 | IDTT Screening Checklist | | | | |
| 5 | Due Process – documentation (chrono) or written consent | | | | |
| 6 | Pharmacy Profile (computer printout) | | | | |
| 7 | Keyhea Order - or documentation supporting obtainment of a Keyhea Order *(CRITICAL)* | | | | |
| 8 | Interdisciplinary Progress Notes – for the past 15 days plus most recent psychiatrist note (RC's may have less for new arrivals) | | | | |
| 9 | Tuberculosis Chrono | | | | |
| 10 | Suicide Risk Assessment – most recent | | | | |
| 11 | This completed checklist form w/ dual sig's | | | | |
| | **Required Information: Central File** | Included √ | N/A √ | Needed √ | Comments: |
| 12 | Placement Screening Form for DMH Placement | | | | |
| 13 | Abstract of Judgment (State Hospital only) | | | | |
| 14 | Legal Status Summary (State Hospital only) | | | | |
| 15 | Chrono History (State Hospital only) | | | | |

| CDC Referring Clinician: | Print Name & Title: | | Phone number: | |
|---|---|---|---|---|
| | Signature: | | Pager number: | |
| Supervisor or Manager: | Signature Certification: | | **Date sent:** ☐ Fax  ☐ Overnight Mail  ☐ Both | |
| Referral Coordinator | Print Name & Title: | | Phone number: | |
| | | | Pager number: | |
| Date Received by **DMH**: | | | Date Completed: | |
| Reviewed by: (Coordinator Signature) | | | Comments: | |

ICF MOU Attachment #3

## <u>Department of Mental Health Referral Decision Form</u>

| | |
|---|---|
| Inmate or Parolee's Name: | |
| CDCR No: | |
| Referring CDCR Institution or POC Region: | |
| DMH Facility: | |

**<u>DMH Reviewing Clinician:</u>**

_____

_____

_____

_____

_____

_____

**DMH Decision:**  ☒ Clinically Accepted (Pending Custody Approval)        Date: _____

                 ☒ Clinically Accepted <u>but</u> Medically Deferred        Date: _____

                 ☒ Not Accepted        Date: _____

**Detailed Reason for Medical Deferment**
Please indicate expectations of the patient's condition when admission shall be reconsidered.

_____

_____

_____

_____

_____

_____

**Detailed Reason _Not_ Accepted:**   Please use official letterhead to write the rationale for the rejection

_____

| | |
|---|---|
| **DMH Clinician:** _____ | Date: _____ |
| **DMH Coordinator:** _____ | Date: _____ |

**Fax to 1) referring CDCR institution and 2) If a <u>REJECTION</u> fax to DMH HQ 916-653-6376**

ICF MOU Attachment #4

## Mental Health Summary/Discharge Telephone Contact Form
### Department of Mental Health    &    Department of Corrections and Rehabilitation

| Date: | Time: |
|---|---|
| DMH Clinician: | DMH Facility: |
| CDCR Clinician: | CDCR Facility or Parole Region: |
| Patient Name: | CDCR #: |
| Primary Admitting Dx: | Reason for DMH Admission: |

Please type information for clarity.  Check that each item has been discussed and provide details/comments when needed:

☐ Primary discharge diagnosis and level of care recommendation:

☐ DMH medication changes/trials and patient's response

☐ Current medications and targeted symptoms, including time sensitive medications that require administration upon arrival:

☐ Use of CDCR non-formulary medication rationale:

☐ Therapy provided, individual and/or group, and patient's response:

☐ Environmental and behavioral conditions that lead to identified problematic behaviors:

☐ Symptom and Functioning Change:  ☐ Improved  ☐ No change  ☐ Uncooperative  ☐ Assaultive/Disruptive/Destructive

Describe, and include any Rules Violations or District Attorney referrals:

☐ Continuing MH treatment goals and recommended follow-up (include rationale for change in level of care):

☐ Clinicians agree to follow-up plan:  ──── ☐ Refer to DMH Acute ☐ Refer to DMH Intermediate  ☐ Retain in current program

January 2010

ICF MOU Attachment #4

☐ Refer to DMH Intermediate       ☐ Retain in current program

~ or ~

☐ Clinicians do not agree → ☐ Refer to Coordinated Clinical Assessment Team     ☐ Faxed on this date: _____

Notes: _____

ICF MOU Attachment #5

# ICF
# DMH PATIENT DISCHARGE CHECKLIST

Patient Name: _____    ID Number: _____

CDCR Number: _____    Discharge Date: _____

<u>DATE</u>                    <u>INITIALS</u>

**<u>Sent 5-7 days prior to discharge (when possible)</u>**

1. The CDCR-DMH summary/phone contact form    _____    _____
2. The non-formulary medication form (if necessary)    _____    _____
3. The Discharge Summary    _____    _____

**<u>Sent with inmate-patient upon discharge:</u>**

1. Psychiatric Discharge Summary    _____    _____
2. Nursing Assessment and/or Discharge Summary    _____    _____
3. Current Physicians Orders    _____    _____
4. MAR    _____    _____
5. Current Suicide Risk Assessment    _____    _____
6. Current Treatment Plan    _____    _____
7. Current Treatment Plan and behavior plans    _____    _____
8. Psychological Assessments if available    _____    _____
9. Keyhea Order (if applicable)    _____    _____
10. "Request for Non-Formulary Medication Use"    _____    _____

**<u>Within 2 weeks of Discharge</u>:**

11. Interdisciplinary Notes for past 15 days    _____    _____
12. Physician Progress Notes for past 15 days    _____    _____
13. Relevant Consults    _____    _____

**<u>If applicable</u>:**

14. Psych and Return (128C)    _____    _____
15  MH Placement (128C)    _____    _____
16  For Parolees Only (CDCR 7371)    _____    _____

Staff member verifying packet contents: _____

Date: _____

Attachment 9:                                    December 2009

# NonFormulary Drug Request
## CDCR Form 7374

ICF MOU Attachment #6  **Nov.08**

---

**Nonformulary Drug Request Process:**

1. This form must be completed and sent to the Facility Medical Authority (CMO, Chief Psychiatrist, Regional Dentist) along with the prescription (Physicians Order Form 7221).
2. If approved, the Facility Medical Authority shall forward the nonformulary request and the prescription to the pharmacy for dispensing (forms 7374 and 7221).  If denied, the request and prescription should be returned to the requesting provider with reason for denial.
3. This form must be completed before the pharmacy can acquire a nonformulary drug for dispensing.
4. A 24 to 48 hour advance notice may be required before approved nonformulary drugs can be obtained by the pharmacy for dispensing.
5. A therapeutically equivalent agent may be available on the formulary.  Please consult your pharmacist for assistance in formulary selection.

---

REQUESTING PROVIDER:                    CONTACT NO.:                    DATE OF REQUEST:

## DRUG REQUESTED

| Medication Requested: | Strength: | Dosage Form(s): |
|---|---|---|
| | | |

## PATIENT INFORMATION & JUSTIFICATION

| Patient's Name: | CDCR Number: | Housing: |
|---|---|---|

1. Indication:

2. Expected Duration of Therapy:

3. Does the patient have a documented allergy or adverse reaction to the formulary alternative(s) which precludes its use?  Document the offending agent(s) and the reaction below.

4. Does the patient have a documented therapeutic failure with the formulary alternative(s)?  Document previous medication trials including dose, duration and measures for which failure was based (blood pressure, lab values, etc.).

5. Have other nonformulary medications been tried for this indication?  List all previous medications tried including dose, duration and response.

6. Other justification.  Please explain below.

7. Does the requested medication require any special monitoring or follow-up by specialist?  If yes, please indicate monitoring parameter, frequency and follow-up plan.

## FACILITY REVIEW AND APPROVAL

☐ Approved          ☐ Denied          Length of Approval Granted (if different from that requested on Rx):

Comments:                                                                        [maximum 6 months]

_____    _____
Facility Medical Authority              Date

ICF MOU Attachment #7a.

Atascadero State Hospital

**OPERATING MANUAL**

SECTION - SECURITY
ADMINISTRATIVE DIRECTIVE No. 805

Effective Date:  December 16, 2009

**SUBJECT:    CONTRABAND**

Cancellation:    This directive cancels Administrative Directive No. 805 dated November 4, 2009, same subject.

I.    DEFINITION

All material or articles listed in this directive are contraband.  Items that can reasonably be considered dangerous, injurious, or a threat to the security of the hospital shall be temporarily removed from the individual.  Such items shall be submitted to the Hospital Advisory Council (HAC) Prep Workgroup for evaluation and possible addition to this directive.  When any item not listed is restricted from an individual, a Denial of Rights for good cause will be filed (refer to A.D. No. 602.1, Complaint Procedure, Patients).

II.    EMPLOYEES

A.    All staff members shall recognize the importance of the control of contraband.  No employee shall knowingly allow contraband to be in the possession of any individual except under direct supervision, control, prescription, and when necessary, in the performance of duty.

B.    All employees shall receive in-service training on control of contraband during their orientation to the hospital.  Additionally, all employees (including those on probation) shall receive training in accordance with the hospital's mandatory training standards.

C.    Plant Operations employees in conjunction with the Department of Police Services (DPS) will be responsible for instructing outside contractors as to contraband and special precautions that need to be taken.

D.    Staff shall not bring more personal medication into the security area than is required for two shifts, i.e., their scheduled shift and an overtime shift. For prescription medication, a pharmacy-issued prescription slip is to be carried for verification.  Staff shall advise their supervisor of any medication being brought into security.

E.    Any missing contraband or lost items which may cause a breach in security or potential danger to patients and staff shall immediately be reported to the DPS Dispatch Center at 2366.  DPS will maintain a record of all recovered and non-recovered items.

III.    RESTRICTED AND CONTROLLED ITEMS

A.    Class I - Not Allowed on Hospital Grounds:

Unless specifically authorized by the Executive Director, the following items shall not be brought on the hospital grounds:

ICF MOU Attachment #7a.

1.   Drugs

   a.   All illegal drugs, including but not limited to:  narcotics, marijuana, hallucinogenic and unprescribed medications.

   b.   Alcoholic beverages.

2.   Explosives (excluding combustible fuels).

3.   Firearms and ammunition (shall not apply to law enforcement officers).

4.   Weapons designed to inflict bodily harm (e.g., swords, spears, daggers, mechanically projected missiles, explosives, etc.)

B.   Class II - Not Allowed Inside Security:

Unless specifically authorized in writing by the Executive Director, the following items shall not be brought inside the sallyport interiors and the Visiting Room by anyone:

1.   Chemical dispensing control devices, such as mace, pepper spray, or tear-gas, except as used by DPS in the control of special incidents.

2.   Ammonia, in pure form or any other chemicals not approved by Health and Safety.

3.   Chewing Gum

4.   Combs, metal

5.   Fingernail files, metal over I.5 inches long.

6.   Fountain pens (bulb type) (except those being utilized with controls in Graphic Arts, or with on-unit controls such as calligraphy pen sets).

7.   Knives (except when authorized otherwise by policy, outlining strict control and accountability procedures).

8.   Material giving instructions on escape, bomb making, bugging, surveillance, surreptitious entry, acts of violence, or any illegal activity, to include "Shot Gun News" and Maxim magazines.

9.   Balloons

10.  Umbrella

11.  Local, County, Newspapers/Tabloids - any newspapers, magazines, coupon books, etc. originating from the County of San Luis Obispo, or copies obtained from the Internet or other sources.

12.  An individual may be allowed to have in his possession a photocopy of an article from a local newspaper about patients or about the hospital with Program Director approval, except for articles that include information about individual staff.  He may not have the original article in his possession.

13.  Excess clothing:  If an employee requires excess clothing inside security, they will have written permission from the Program Director on file with Police Services.

14. Cell Phones (except for official business with approval by the Executive Director).

15. Strapping Tape or other tapes containing fiberglass or other reinforcing fibers.

16. Charcoal lighter fluid (refer to A.D. No. 344, Fire Inspections)

17. All lighters and lighter fluid.

18. Personal electronic devices capable of downloading information, including, but not limited to personal computers, palm pilots, and planners, unless provided by the hospital.

19. All tobacco products, except as authorized by the Executive Director for Native American Spiritual Ceremonies

20. Eating/cutting utensils containing metal or ceramic materials.

C. <u>Class III - Not Allowed in Patients' Possession:</u>

At no time will patients be allowed to have in their possession:

1. Luggage, including gym bags, valises, attaché cases, backpacks, and fanny-packs.

2. Matches (any type).

3. Alarm clocks, other than battery operated solid state.

4. Combs, hairbrushes, and personal care items in an individual's possession should be made of flexible plastic materials and not exceed 7 inches in overall length. No wooden brushes. No personal care items in an individual's possession shall be made of brittle plastic. Personal care product containers - except those purchased in the Canteen, or in containers that do not allow for visual examination of contents.

5. Drugs or medicated products (except as prescribed by a hospital employed medical doctor).

6. Herbal teas, other than those brands purchased in the canteen or from an approved vender.

7. Keys or key rings (see exceptions in Class V).

8. Legal documents (including, but not limited to):

   a. Driver's license

   b. Birth certificates (all kinds)

   c. Bonds

   d. Social Security cards and credit cards

   e. Bank books

   f. Check books

   g. Power of Attorney

ICF MOU Attachment #7a.

    h.    Any form of identification, including passports, except hospital issued.  If in question, contact the Trust Office.

9.    Letter openers

10.    Make-up, commercial or materials being used as makeup.

11.    Maps of San Luis Obispo County, any source literature, including local maps.

12.    As determined by the treatment team, any sexually explicit image or sexually provocative or nude images of children, or material that is in violation of the condition of parole.

13.    Any material that depicts a rape, beating, sadomasochistic act, child erotica, crime of violence or any photo of the individual's victim(s).

14.    Metal picture frames and metal prong fasteners, paper clips, and staples (except those staples that are intact in magazines)

15.    Mirrors

16.    Sunglasses that are reflective or too dark to assess the individual's eyes; sunglasses with exposed metals (not those encased in plastic).

17.    Money, money orders, or copies of money, including foreign (see A.D. No. 619, Trust Office/ Patients' Accounts Functions).

18.    All personal civilian clothing

19.    Pictures of the individual alone or of another hospitalized individual, except for the individual's hospital identification card.

20.    Pressurized dispensers

21.    Products that contain an alcohol content sufficient to be combustible.

22.    Cable boxes, VCR tapes (modified or not), CDs, DVD , or personal cameras.

23.    LCD, Battery-operated appliances, including recording or electronic or mechanical transmitting devices, personal electrical appliances requiring cords, metal antennas, or remote speakers to operate; radios or scanning/monitoring devices capable or receiving law enforcement/fire emergency broadcasts; compact disk players.  Allowable items include: personal radios and cassette players that are no larger than 6¼"x6¼""x3", operated with headphones.  Headphones are not to be worn or used in the hallways, canteen, kitchen, dining rooms, or the auditorium.  Headphones shall not contain:  (a) steel in the headband, and the wire from the headsets are limited to 48 inches in length or less; (b) a heavy cord, or (c) cover the ear in such a way as to block out sound from the environment.  Calculators, LCD appliances, and program approved electronic games are allowed.

24.    Rubber bands

25.    Saw blades or jeweler's wire (for exceptions see Class IV).

26.    Styrofoam in any form.
27.    Shoehorns

28.  Blank State of California or other hospital-related letterhead or stationery.

29.  Telephone directories

30.  Thermo cups

31.  Concentrated cleaning chemicals

32.  Pens exceeding 3 l/2 inches

33.  Biohazardous waste (as except by the medical needs of the individual)

34.  Hair-care products that have caustic or toxic chemicals

35.  Correcting fluid/tape (White-out)

36.  Battery chargers

37.  Musical or recordable greeting cards

38.  Shoelaces (when removed from the shoe)

39.  Collectable/trading cards.  Not to include "magic" cards or similar cards used to play card games.   (Individuals may have in their possession up to 1,000 "magic" cards.)

40.  Spices and pepper (except in ready-mix packets, or flavor packets as issued in the canteen and dining rooms).

41.  Aluminum foil, plastic wrap

42.  Reinforced envelopes

43.  Adhesive mailing labels

44.  Any altered clothing

45.  Athletic supporters (a suspensory may be prescribed by a physician for a medical need as described in a physician's progress note).

46.  Beading needles, metal

47.  Sleep masks

48.  Plastic binding stays (once removed from legal papers)

49.  Remote control toys

50.  Belts

51.  Corrugated cardboard, and all cardboard that has been altered from its original use.

52.  Any container( including plastic bags) with a solid frozen  content. Individuals assisting staff with ice runs are exempt.

53.  No candy, sucker or other foods with sticks or handles attached or any other similar items

ICF MOU Attachment #7a.

54. Personal information of any nature (including, but not limited to home addresses, telephone numbers, and photos) of any staff member, volunteer, or contract employee of the Department of Mental Health.

D. <u>Class IV – Supervised Items:</u>

Responsible individuals under the direct supervision of an employee may use the following materials and tools. It shall be the responsibility of the employee to assure that all items are used for the purpose intended and accounted for and secured after their use.

1. The following items may be used on the units by responsible patients under the direct supervision of an employee.

    a. Aerosol dispensers

    b. Sports, recreational, and work assignment equipment that could possibly be used as a weapon or an escape tool.

    c. Any ready to use cleaning substances containing potentially harmful ingredients, such as bleach, ammonia, alcohol, etc.

    d. Compass (drawing)

    e. Dental floss

    f. Ink (marking), pastels (colored chalk)

    g. Hypodermic needles when authorized by a physician's order

    h. Disposable Razors

    i. Sandpaper and emery cloth

    j. Scissors (safety scissors)

    k. Utensils for unit barbecues

    l. Electrical appliances

    m. Gloves for specific work assignments

    n. Pencils, colored and regular, no longer than 3½ inches, only under the direct supervision of a group provider during a planned scheduled treatment activity on the unit.

2. In addition, the following items may be used by a responsible patient only in the appropriate Recovery and Mall Services (RMS) or Vocational Service area, under the direct supervision of an employee.

    a. Combustible or inflammables

    b. Electronic gear and parts

    c. File (steel construction type)

    d.    Glass, containers, and fragments including ceramics

    e.    Glue and acetone

    f.    Metal containers and scraps

    g.    Paints, lacquers, shellac, and solvents

    h.    Rope, twine, ladders

    i.    Sandpaper and emery cloths

    j.    Tools, except when being transported in a locked box.

    k.    Calligraphy pens

    l.    Pencils: No longer than 3½ inches

    m.    Carbon paper

    n.    Needles:  blunted tapestry, wax thread, leather lacing (Art Center), and upholstery (Upholstery Shop)

E.    <u>Class V - Controlled Items</u>:

Control and accountability will be provided by staff for the items listed in this section so that they are used properly and safely and are dispensed in acceptable quantities.

1.    Denture cleaner

2.    Dice

3.    All musical instruments

4.    Keys:  Locker, bathroom pass keys, cabinet or desk (permitted if duplicate is in the Unit Office, shop office, or Police Services Key Control).

5.    Phonograph records or tapes

6.    Razors (electric), including cords

7.    Shoe polish

8.    Tape of any kind

9.    Toothbrushes longer than 4" in length

10.    All plastic bags (Exception:  Small sandwich-type bags that are currently used for the transfer of coffee and other bottled items.)

11.    Fingernail clippers.

Acceptable methods for controlling the use of the items listed in this section are:

1.    Direct observation/supervision (one-to-one or group activity).

2.    Checking the item out from the nurse's station and in from the individual.

3.    Supervising the amount of the item taken by the individual.

4.    Monitoring the accumulation of items (items: 1, 5, 8, 9 and 10) via random shakedown.

IV.    <u>CONTROLS</u>

A.    Photos or other images depicting sexually explicit material or frontal nudity may be offensive to others and shall not be displayed where individuals or staff might see them and be made uncomfortable.

B.    All donations must be cleared through the HAC Prep workgroup prior to distribution to the patient. Gifts or donations will not be given directly to the individual. All gifts and donations shall be received and handled through one of the three receiving channels: 1) Mail Center, 2) Volunteer Services, and 3) DPS.

C.    Newly admitted individuals shall be thoroughly searched by Nursing Services. DPS will thoroughly search all property and possessions.

D.    All items given to individuals in the visiting room must be approved by the Visiting Room Officer, and individuals will be subject to search when leaving the visiting room.

E.    All persons and property passing through the sallyports are subject to inspection for contraband as per AD No. 803, Security Sallyports.

F.    All areas of the hospital shall be periodically inspected for hidden contraband. Inspections may be made at any time by DPS personnel or other employees in their area of responsibility.

G.    All contraband items shall be confiscated immediately by an employee and turned over to the DPS Watch Sergeant as soon as possible. A record shall be maintained of dates and places of seizure. If confiscated from an individual, a Special Incident Report must be written. If from an employee, appropriate disciplinary action shall be taken.

H.    The Canteen will contact the HAC Prep workgroup when there are proposed or new items to be added to the inventory list.

I.    If, during the course of or as a result of a formal shakedown procedure, specific contraband items are found in an individual's possession, documentation shall be entered in each his medical record and in the body of the Shakedown Report. This documentation shall preclude the necessity for individualized Special Incident Report (SIR) documentation of contraband items found in each individual's possession.

V.    <u>DISPOSITION</u>

A.    <u>Class I and Class II Contraband</u>, not allowed on hospital grounds and not allowed inside security, will be disposed of at the discretion of DPS. (Firearms will be disposed of in accordance with California Penal Code, Sections 799, 800, 801, 802, 1417, 1417.1, 1417.5, 1417.6, 12028 and 12032, as well as the Welfare and Institutions Code, Section 8102.)

ICF MOU Attachment #7a.

B.  Class III Contraband, not allowed in an individual's possession, may be stored until returned to the individual at the time of his release, mailed, destroyed, or turned over to his guardian. Determination of disposition will be made by the individual if within the rules and regulations of Atascadero State Hospital.

C.  Class IV and Class V Contraband, supervised and controlled items which have been confiscated, shall not be returned until adequate supervision or control has been restored.

D.  Money (Cash), or other Legal Tender:  When money, cash, or legal tender is obtained or found through shakedowns or by other means, all moneys will be turned in to DPS to ascertain whether a crime may be involved.  When the source of legal ownership has been determined, the money will be placed in the individual's account.  If the source of legal ownership cannot be determined, the money will be deposited in the Patients' Benefit Fund account.

E.  The record will clearly indicate the final disposition of or destruction of all contraband.  If there has been a Denial of Patients' Rights, the material confiscated will be retained.

F.  Items retained from patients by Police Services staff as part of an investigation will require a receipt to be given to the individual until the item is returned to him.

VI.  PROCESS FOR REVIEWING ITEMS TO BE ADDED TO A.D. NO. 805

A.  The item and written justification for making the item contraband is referred to the HAC Prep workgroup.  This can be done by submitting the item to the Chairperson or requesting to attend the HAC Prep meeting.

B.  The HAC Prep workgroup will review the justification and discuss the ramifications for making the item contraband, i.e., patients' rights issue, security and legal aspect, etc.  The chairperson will assign a subcommittee if needed.

C.  After careful consideration, the Committee will recommend a change in policy and forward the proposal to the Security Committee for recommendation to the Policy Management Conference.

D.  If the item is approved, either a new policy will be completed or an addendum will be sent out to all manual holders.

E.  Items being referred to the HAC Prep work group for review should be items that, if allowed in an individual's possession, could cause a danger/hazard to others or could be used to breach the security of the hospital.


JON DE MORALES
Executive Director


Updated

Cross Reference(s):
A.D. No. 602.1 -  Complaint Procedure, Patients
A.D. No. 610  -  Personal Property
A.D. No. 619  -  Trust Office/ Patients' Accounts Functions
A.D. No. 713  -  Visiting Regulations
A.D. No. 803  -  Security Sallyports

ICF MOU Attachment #7b.

Revised 05/07/10

## Allowable Property/Contraband

Any item that constitutes safety or security concerns can be denied and confiscated. Those items received that re not listed are subject to return to sender or donation to charity. All items need to be from an approved source. **(EXCEPTION** – Personal property received upon admission from a DMH State Hospital may be considered allowable from an approved source after thorough inspection by hospital staff.)

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | | |
|---|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | | COMMENT (Information on limits, containers, etc.) |
| ADDRESS BOOK | X | X | X | | | | No metal binding | |
| ALBUM, PHOTO | *X | X | *X | US | | | No metal binding, limit one (1) | |
| APPLIANCES, ENTERTAINMENT | | | | | | | Appliances MAY be battery operated, come with an attached cord, or come with a detachable cord. | |
| Alarm clocks | | X | *X | | | | Wind up or Battery operated only. | |
| Calculators, Translator, Hand Held Organizer (e.g. Palm Pilot) | | X | X | US | | | Hand held. No wireless or remote internet capability or camera capability. Limit of one (1) each | |
| Detachable Cords | | X | *X | | WRT prior to purchase | C | Individual must have system requiring the detachable cord. Prior to the Individual ordering and/or receiving the item as personal property, the WRT shall assess the Individual's ability to access the item as a controlled item. If item is denied the WRT will document the reason for the denial on PSH 7130. | |
| Detachable Antennas | | | X | | WRT | C | Individual must have system requiring the detachable antenna . Prior to the Individual ordering and/or receiving the item as personal property, the WRT shall assess the Individual's ability to access the item as a controlled item. If item is denied the WRT will document the reason for the denial on PSH 7130. | |

**(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.**
**(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS<br>C = Controlled Item    S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail<br>*Factory Sealed | Purchased Through Canteen | Purchased Through Vendor<br>*Factory Sealed | LIMIT ISSUE ONLY<br>Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT<br>(Information on limits, containers, etc.) |
| MP3 Player | | X | *X | | | | The only allowed MP3 player are the Archos models (sole source) – which do not have wireless or remote internet capability. |
| Radio, Audio CD/ tape player, | | X | *X | US | | | Limit of one (1) each (max. size limit of 21x10x15 inches – No exceptions for larger size will be allowed) without detachable speakers, external-recording devices (however, audio equipment which can record directly from an internal source-radio or CD to tape only is acceptable). |
| Remote Controls | | X | *X | US | | | Must have own system(s) requiring the remote control. |
| Television/LCD DVD Player | | X | *X | US | WRT prior to purchase of TV | | All TV's must be pre-approved by the WRT prior to purchase and/or delivery. The WRT will approve type of TV and size (TV must fit in Individual's personal locker). Individuals must sign a Liability Waiver. Limit one (1) TV. The TV may have built in radio/DVD player. No built in VHS player. No individual VHS Players allowed. Limit of one (1) LCD DVD player. |
| Typewriter/word processor | | X | *X | US | | | Limit of one (1). |
| Typewriter/word processor print wheels and ribbons | | X | *X | US | | | Individual must have typewriter/word processor for use with this item and must turn in used print wheel/ribbon to staff in-order to have access to replacement item. |

**(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.**
**(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT (Information on limits, containers, etc.) |
| USB Memory sticks/cards | | | X | | | | "Kingston" flash drives are the only flash drives which will work on the Unit computers that are available for the Individuals. Individuals may still purchase other brands for use with their own personal equipment. |
| Video games system | | X | *X | US | | | Limit of one (1) each of a hand held and/or console system. Must have own system and TV (if required) to utilize games. No wireless or remote internet capability or that which can be converted into having such capability.\n\nThe XBOX Elite, Play Station PSP, & Nintendo DS are not allowed as they have remote internet capability.\n\nCurrently there is a freeze on all XBOX 360 Pro which is the ONLY is the only model of game system that is allowed.\n\nIndividuals that currently have the XBOX 360 are allowed to keep and use their system but no other Individuals can receive the system at this time |
| Walkman/Discman/DVD type radio/player | | X | *X | US | | | Limit of one (1) of each Walkman, Discman/DVD and/or Walkman Satellite type radio that must not include voice over feature.  No CB amateur radio, walkie-talkie or police band, but alarm functions are acceptable. |
| Walkman type Satellite radio | | | *X | US | | | |

(S) Supervised Items – **Items which will only be used under the direct supervision of treatment staff.**
(C) Controlled Items – **These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT (Information on limits, containers, etc.) |
| BATTERIES | *X | X | X | | | | No 6-volt batteries will be allowed. Only the required number of batteries needed for the appliance will be allowed in the Individual's possession. One extra set may be kept in the Nurses station. |
| BEANIES (Knit cap) | STATE ISSUE ONLY | | | | | | |
| BELTS OR BELT BUCKLES | | | X | US | | | Belt - Not to exceed one and one-half inches in width, limit one (1) Buckles - 2X3 inch limit, no sharp edges |
| BEVERAGES | | X | X | | | | Ice tea, juice, nectar, and soda. All plastic containers (no metal lid or tops) |
| LED BOOK LIGHT | | | *X | US | | | For reading at night in bed (limit of 1). |
| CALENDARS | *X | X | X | | | | Without metal binding |
| CARDS, GREETING | *X | X | X | | | | No foil wrappers or parts. Includes boxes that are factory sealed. No musical or light up cards. |
| CARDS, PLAYING | *X | X | *X | | | | Regular, Pinochle, Old Maid, Uno, etc. |
| CHAP STICK | | X | X | | | | |
| CHARGER, BATTERY (With or Without Cords) | *X | X | X | | | | Kept in Nursing Station and controlled by Nursing Staff. |
| CLOTHING (Shirts/Blouses, Pants, Shorts, Jackets/sweatshirts, etc.) | STATE ISSUE ONLY NO EXCEPTIONS | | | | | | Uniform is provided by the state (see undergarments below for clothing items which can be purchased). State clothing may not be altered. |

**(S) Supervised Items – Items** which will only be used under the direct supervision of treatment staff.
**(C) Controlled Items –** These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | | |
|---|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | | COMMENT (Information on limits, containers, etc.) |
| COFFEE/TEA, DECAF, INSTANT, &/OR INDIVIDUAL PACKET/BAGS | | X | *X | | | | | Not to exceed three (3) pounds or 100 bags. Decaffeinated only in non-contraband containers. May not contain any pharmaceutically active substance. |
| COLOGNE, PERFUME, AFTERSHAVE | | X | X | | | | | No alcohol will be permitted.  Plastic containers only. |
| COMPACT DISKS/DVD'S, FLOPPY DISKS, CARTRIDGE OR CASSETTE TAPES (Audio, Computer, or Video Game) *For the purpose of this directive these items are considered to be media | | X | *X | US | US | | | Limit of thirty (any combination totaling 30).  Any media (exception for music CD's), which depicts or encourages sexual acts with children or sexual acts with tissue damage (including penetration of any body cavity) will be considered contraband. Any publication that does not depict or encourage the above behavior may only be denied following procedures for denial of rights for cause. |
| BLANK CASSETTE TAPES/ RE-WRITABLE CD's | | X | *X | US | | | | Individuals may have CD's which are provided through PSH Video Productions – these CD will have a Video Productions Label with the Individual's name. |
| CONTAINERS, PLASTIC | X | X | X | | | | | Must be able to fit in 1' x 1' x1' locker. |
| CONVERTERS FOR RADIOS, TV'S, GAMES, ETC. | | X | *X | US | | | | Must have own system to utilize item |
| CRAFT PROJECTS | | | *X | | | S | | Non-contraband containers. |
| CUP OR TUMBLER, SOFT PLASTIC | X | X | X | US | | | | Limit of two (2).  Sport containers are permitted.  Thermal cups/tumblers must be plastic with no false bottoms. |
| CURLING/STYLING IRON | | | X | US | | S | | Limit of one (1). |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | | |
|---|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | | COMMENT (Information on limits, containers, etc.) |
| DENTAL FLOSS | STATE ISSUE ONLY | | | | | C | | Staff will issue out one length of floss, as needed and Individual shall return floss when finished. |
| DENTURE ADHESIVE | | X | | | | S | | |
| DENTURE CLEANSERS | | X | | | | S | | Tablets only. |
| EMERY BOARDS | X | X | X | | | | | No metal nail files. |
| EYE GLASSES | X | X | X | US | | | | Limit one (1) pair.  Wire frames permitted.  Prescription glasses will be delivered to Medical Services. |
| FOOD, PACKAGED | | | | | | | | Must be in Non-Contraband Container and cannot require refrigeration after opening. All items sold by Canteen are allowed. |
| Cheese/Cheese Spreads | | X | *X | | | | | Can Not Require Refrigeration after opening |
| Creamer, Cocoa Mix, Honey | | X | *X | | | | | Creamer not to exceed 2 pounds. |
| Vegetables, Beans, Chili, Rice | | X | *X | | | | | Non-contraband container (no cans) |
| Dry Meats, Dry Milk, Dry Fruit | | X | *X | | | | | Dry milk not to exceed 2 pounds. |
| Nuts, Cereal | | X | *X | | | | | No shells (exception for Sunflower seeds). |
| Cake, Candy, Chips, Cookies, Jerky, Popcorn, Ramen Noodles, Gum | | X | *X | | | | | |

**(S) Supervised Items** – Items which will only be used under the direct supervision of treatment staff.
**(C) Controlled Items** – These items are to be checked out by the individual daily and returned prior to bed time each day.
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE Package Received by mail *Factory Sealed | SOURCE Purchased Through Canteen | SOURCE Purchased Through Vendor *Factory Sealed | ACCESS REQUIREMENTS LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | ACCESS REQUIREMENTS APPROVAL BY US OR WRT (as designated) Prior to access | MONITORING REQUIREMENTS C or S | COMMENT (Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| Protein Drinks/Powders, Nutrition Supplements, or vitamins | | | *X | | X | | Individual's treating physician must document approval for such items and include the not to exceed information in the approval (e.g. NTE "X" per month) |
| Punch Mix, Soda | | X | *X | | | | Punch Mix not to exceed 3 pounds. Soda in plastic bottles only. |
| Sauces, Condiments | | X | *X | | | | Non-contraband container/can not require refrigeration after opening. |
| Sugar/Substitute Packets | | X | *X | | | | Sugar or substitute not to exceed 1 pound. |
| MISCELLANEIOUS GAMES AND SPORTS EQUIPMENT (Board Games, Chess, Checkers, Hacky Sacs, etc.) | *X | X | *X | | | | For electronic games see appliances. |
| GLOVES, PLAIN (includes mittens) | X | | X | US | | | One (1) pair only. Cloth only - No leather or simulated leather, studs, jewelry, etc. Must be only single thickness (one layer). |
| GLOVES, WEIGHT LIFTING | | | X | US | | | Two (2) pairs only. Leather is allowed. |
| HAIR CARE/GROOMING PRODUCTS | | | | | | | Limit one (1) of each item. No metal parts. Items in glass/metal containers will be transferred to small plastic containers by canteen staff prior to purchase. Vendor items must be received in non-contraband containers. Hair spray must be non-aerosol, plastic container only. |
| Hair - Brush, Pick, Plastic Comb Grooming Aids (includes body/hand lotion/creams & Vaseline) | | X | X | | | | |
| Hair Dryer, Rollers & Spray | | X | X | | | S | Powders (e.g.; baby, talcum) and baby oil are not allowed |

**(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.**
**(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | | |
|---|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | | COMMENT (Information on limits, containers, etc.) |
| HATS | | X | X | US | | | | Limit two (2). No offensive logos, wire parts, head wraps, do rag, bandanas, or scarves are allowed.  Cloth hair band are allowed - limit of three (3).  Beanies are state issued ONLY |
| HAT PINS | X | X | X | | | | | Logo type pins (e.g. Veterans pins). |
| HEAD PHONES | *X | X | X | US | | | | Limit two (2). No longer than six (6) foot cord.  Non-metal banded only. |
| HYGIENE PRODUCTS     Soap, Deodorant, Toothpaste, Kleenex, Tampons, Sanitary Napkins | | X | X | | | | | Non-aerosol products, plastic container only. |
| INSTRUMENTS, MUSICAL | | X | X | | WRT prior to purchase | C | | Prior to the Individual ordering and/or receiving the item as personal property, the WRT shall assess the Individual's ability to access the item as a controlled item.  If item is denied the WRT will document the reason for the denial on PSH 7130. |
| GUITAR | | | | | | S | | |
| GUITAR STRINGS | | | X | US | | S | | Must have own guitar to utilize item. |
| JEWELRY | X | X | X | | | | | Requires a Liability Waiver when valued at $100 or more |
| Chains, necklaces | X | X | X | | | | | Single strand only.  No sharp edges or lockets. |
| bracelets | X | X | X | | | | | No solid metal bracelets allowed, No sharp edges. Only bracelets made of the following: single strand chain, leather, nylon, or plastic are allowed |

**(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.**
**(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS C = Controlled Item    S = Direct Supervision | | |
|---|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | | COMMENT (Information on limits, containers, etc.) |
| rings | X | X | X | US | | | | Limit two (2). |
| Earrings | X | X | X | | | | | Must be no larger than a quarter or must be breakaways. |
| watch | X | X | X | US | | | | Limit one (1). Alarm and stop watch features and all band types (including metal) are allowed. |
| MAKE-UP, COSMETICS | | X | X | | | | | Compacts may NOT contain glass mirrors. |
| Make up liners (for eyes &/or lips) – retractable type only | | X | X | | | C | | Make-up pencils which require sharpening are not allowed |
| MONEY (this does not include checks or money orders) | | X | | | | | | Individuals served may only be in possession of a maximum of $15.00 in coin (quarters, dimes, nickels, and pennies only; no paper money) |
| PEN & PENCIL & PLASTIC PAPER CLIPS | STATE ISSUE ONLY | | | | | | | Limit one (1) each of pen & pencil. Plastic paper clips shall be issued as needed – Individuals shall not be given entire box. |
| PHOTOS | X | | | | | | | No photos of Individuals served that might pose a threat to security, such as being used to make an employee ID badge. No Polaroid Photos allowed. |
| PIPE, SMOKING | | X | X | | | | | No ceramics |
| PLASTIC SPOON | STATE ISSUE ONLY | | | | | | | Individuals shall receive approved plastic spoon with each sack lunches. This spoon is to be thrown away once the lunch is consumed. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS<br>C = Controlled Item    S = Direct Supervision | COMMENT<br>(Information on limits, containers, etc.) |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | |
| PLASTIC SPORK | STATE ISSUE ONLY | | | | | | Individuals shall be issued one spork upon admission for use with snack items purchased by the Individual. |
| POLISH REMOVER, NAIL | | X | X | | | S | Clear plastic container only. ACETONE FREE ONLY. |
| POLISH, NAIL | | X | X | US | | S | Limit three (3). Glass containers allowed. |
| PUBLICATIONS<br>(Includes newspapers and religious publications) | | | X | US | | | Any publication, which depicts or encourages sexual acts with children or sexual acts with tissue damage (including penetration of any body cavity) will be considered contraband.  Any publication that does not depict or encourage the above behavior may only be denied following procedures for denial of rights for cause.  Limit of ten (10) total for all publications (exception - clipping are not counted in regards to limit). |
| newspaper clippings | X | | | | | | |
| Books, magazines, or catalogs | | | X | US | | | |
| PSH Library Books | STATE ISSUE ONLY | | | | | | PSH Library books are not to be included in the amount allowed as they are not the property of the Individual.  Overdue books will be returned to PSH Library when found. |
| PURSE, BOOK BAG, CLUTCH, FANNY PACKS, OR WALLETS | | X | X | US | | | Limit one (1). No metal frame, chains, clasps, or detachable straps on purses/book bags/fanny packs allowed.  Back packs are NOT allowed |
| RAZORS, ELECTRIC | | X | X | | | S | |
| RELIGIOUS ITEMS | X | | X | | | | Includes items allowed on A.D.#15.36 – Native American Spiritual Items and other religious items such as prayer beads. |

**(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.**
**(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.

Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS<br>C = Controlled Item    S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY<br><br>Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT<br>(Information on limits, containers, etc.) |
| SHAMPOO/ CONDITIONER, NON-MEDICATED | | X | X | | | | |
| SHAVING CREAM AND POWDERS | | X | X | | | S | |
| SHOES/ FOOTWEAR | | X | X | US | | | Limit four (4) pairs of shoes including tennis shoes. Limit one (1) pair wedge shoes not to exceed one (1) inch in height. No boots, pointed toe, or heel over one (1) inch. No steel shanks or hollow heels.  No magnetic components allowed in any shoe. |
| SHOE LACES | | X | X | US | | | Must have personally owned shoes requiring laces as state issued shoes do not have laces (except work boots - these laces are supplied by the state) Limit of one (1) set per pair of shoes |
| SOAP BOX | | X | X | US | | | Soft plastic only.  Limit of one (1) |
| STAMPS | | X | X | | | | Equivalent of 20 first-class stamps in possession at any one time. Pre-stamped embossed envelopes may be substituted for stamps. Stamps may not be mailed from family member or friend only from vendor. |
| STATIONERY<br>Note Cards, Envelopes, Writing Paper, etc. | *X | X | *X | | | | Includes boxes that are factory sealed. |
| SUNGLASSES | X | X | X | US | | | Limit one (1) pair.  Wire frames permitted. |
| SUSPENDERS | STATE ISSUE ONLY | | | | | | |

**(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.**
**(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.**
**Liability Waiver is required for all items valued at $100.00 or more.**

ICF MOU Attachment #7b.
A.D.#15.16
ATTACHMENT A
Page 12 of 12
Revised 05/07/10

| Approved Items | SOURCE | | | ACCESS REQUIREMENTS | | MONITORING REQUIREMENTS  C = Controlled Item  S = Direct Supervision | |
|---|---|---|---|---|---|---|---|
| | Package Received by mail *Factory Sealed | Purchased Through Canteen | Purchased Through Vendor *Factory Sealed | LIMIT ISSUE ONLY Requires US approval via e-mail or FAX | APPROVAL BY US OR WRT (as designated) Prior to access | C or S | COMMENT (Information on limits, containers, etc.) |
| TOOTHBRUSH | | X | X | | | | Limit one (1) upon exchange |
| TOOTHPASTE | | X | *X | | | | |
| UNDERGARMENTS          Bras | *X | | *X | US | | | Limit of ten (10), no under wires. |
| Men's Underwear or Women's Panties | *X | | *X | US | | | Limit of twelve (12), non-white is acceptable. |
| Socks | *X | | *X | US | | | Limit twelve (12), no women's nylons or nylon knee highs allowed. |
| Tee Shirt (includes Tank Top or long sleeve type) | *X | | *X | US | | | Limit of ten (10), KHAKI COLOR ONLY |
| Thermal Underwear | *X | | *X | US | | | Limit of two (2), natural color only. |

(S) Supervised Items – Items which will only be used under the direct supervision of treatment staff.
(C) Controlled Items – These items are to be checked out by the individual daily and returned prior to bed time each day.
Liability Waiver is required for all items valued at $100.00 or more.
For items which require the Unit Supervisor's/Wellness & Recovery Team approval the Unit Supervisor shall send a copy of the approved MH 5216 to the Mailroom – Contraband Desk prior to the purchase and arrival of the item.

ICF MOU Attachment #7c.

**SALINAS VALLEY PSYCHIATRIC PROGRAM**

**INTERMEDIATE INPATIENT TREATMENT FACILITY**

**PROGRAM MANUAL**

**PROCEDURE:  6.15**

**SUBJECT:**          PATIENT PROPERTY

**RESPONSIBLE:**     Health Program Coordinator, Sr. Medical Technical Assistant

Signature:

**CROSS-REFERENCE:**          Title:

Program Director

**POLICY**

It is the policy of the Salinas Valley Psychiatric Program to establish procedures to allow patients to have their approved personal and state property, which does not impede the safety and security of the institution.

**PROCEDURE**

**A.   PROCESSING OF ALLOWABLE PATIENT PROPERTY**

1.   The Salinas Valley Psychiatric Program (SVPP) Property officer will inventory all allowable property and maintain an property log for each SVPP-DMH patient. The property officers shall issue allowable property to the patient upon approval from IDTT..

2.   A 2.5 x 2.5 foot space above the patient's bed area can be utilized for displaying approved pictures or art work.

3.   With the exception of legal property, the total volume of in-cell patient property is limited to that which can be contained in two 10"x 12"x 15" boxes.

4.   Personal possessions exceeding amounts/volume designated in this policy will be stored in the SVPP patient property room.

5.   Additional property may be authorized by Treatment Team, based from individual needs, stage appropriateness, patient behavior and according to SVPP Policy and Procedure.

6.   A copy of all Property Chronos and a record of any other unique property allowance(s), shall be filed in the individual patient chart.

7.   Before confiscating patient property, staff will consult the individual patient chart to ensure that the item to be confiscated has not been allowed via Property Chrono or Treatment Team decision and in accordance with Program Manual policy 6.07.

8.   Food items available to patients through the approved SVPP Incentive Program may require prior approval of the Dietician.  The total amount of

food items allowed in the patient's cell at any given time shall not exceed two (2) cubic feet.

**B.   ALLOWABLE PATIENT PROPERTY**

SVPP Program Manual
Revised 1/25/2010

ICF MOU Attachment #7c.

1. Patients that are assigned to the Salinas Valley Psychiatric Program may be permitted, with the approval of IDTT, to possess the following personal property items :

   a. **STAGE 1/DPS/New Arrival:**

   - (1) Pen fillers (One for one exchange)
   - Inmate 602 forms (2 per week)
   - Inmate request for interview forms (6 per week)
   - (1) Address book
   - (20) Postage stamps, (20) Metered envelopes, (10) Sheets of paper
   - Eyeglasses/Sunglasses/Dentures/Prescribed prosthetics (artificial limbs). Medically prescribed aides such as walkers, crutches, braces, or wheelchairs, only as deemed essential for constant possession by medical staff.
   - State Issued Clothing

        (1) Blue jeans

        (1) Blue shirt

        (1 Pair) Socks

        (1) Undershirt

        (1) Underwear

        (1 Pair) State-Issued Tennis Shoes, unless otherwise medically indicated by a physician.

        (1 Pair) Shower shoes

   - Grooming items (clear only) limited to one (1) of each type (unless otherwise specified)

        1 Shampoo

        1 Bar of soap

        1 Lotion

        1 Deodorant (Stick or roll-on in a clear container only)

        1 Toothbrush (1 for 1 exchange). Toothbrush must be state issued only.

        1 Toothpaste (1 for 1 exchange).

        1 Roll of toilet paper

   - (1) Soft covered book (1 for 1 exchange).
   - (1) Bible or religious book

   **a. STAGE 1/DPS/New Arrival continued:**

   - (1) Periodicals (to include magazines) (1 for 1 exchange).
   - Miscellaneous personal papers, letters, artwork, personal photos, etc.

SVPP Program Manual
Revised 1/25/2010

ICF MOU Attachment #7c.

- Legal materials limited to those necessary to complete Preferred Legal Users (PLU) cases. This will not exceed one (1) cubic foot of materials without approval by Executive Director or designee.
- Allowable Incentive Store purchases in accordance with the SVPP Stage and Incentive Program policy (3.12).

**b.  STAGE 2:**

- All privileges gained in STAGE 1
- (2) Pen fillers (1 for 1 exchange).
- (20) Family photos
- (1) Religious medallion (Chain must have religious medallion)
- Personal Clothing
    - (1) Baseball hat
    - (1) Sweat suit (one sweatpants and one sweatshirt)
    - (1) Long-sleeve T-shirt
    - (1) Pair gym shorts
    - (1) Pair socks
    - (1) Beanie
    - (1) Pair of Tennis shoes
    - (1) Pair of thermal underwear
- Grooming items (clear only) limitations listed below
    - (2) Bars of soap
    - (2) Toothpaste (1 for 1 exchange).
    - (1) Shampoo
    - (1) Conditioner
    - (1) Hair Grease
    - (1) Baby Powder
- (5) Soft covered books (1 for 1 exchange).
- (10) Periodicals (To include magazines) (1 for 1 exchange).
- (1) Plastic cup

**b. STAGE 2 continued:**

- (1) Plastic bowl
- (1) Wedding band (if married)
- (1) Watch
- (1) Wave cap (Black, white or gray only)

ICF MOU Attachment #7c.

- Allowable Incentive Store purchases in accordance with the SVPP Stage and Incentive Program policy (3.12).

**c.   STAGE 3 (SINGLE CELL):**

- All privileges gained in STAGE 1 and STAGE 2
- Personal Clothing

    (3 Pair) Socks

    (3) Undershirt

    (3) Underwear

    (1 Pair) Tennis shoes

    (1 Pair) Shower shoes

    (1) Baseball hat (White or light gray only)

    (1) Sweat suit (one sweatpants and one sweatshirt) (White, light gray or off white only)

    (1 Pair) Thermals (one shirt and one pant) (White, light gray only or off-white)

    (1) Beanie (White, light gray only or state issue blue)

- (1) Calculator
- Patients designated "Single Cell" status per CDCR Classification Committee may be eligible for a TV loaner upon approval from IDTT.
- Annual Package
- Allowable Incentive Store purchases in accordance with the SVPP Stage and Incentive Program policy (3.12).

**d.   STAGE 3 (DORM):**

- All privileges gained in STAGE 1, STAGE 2 and STAGE 3 (SINGLE CELL)
- (Limited to 2) Electrical appliances.  (1) TV (DMH issued only), (1) CD player with headphones (DMH issued only)
- (5 Total) CD's