IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

              Plaintiffs,                No. 2:90-cv-0520 LKK JFM (PC)

     vs.

EDMUND G. BROWN, JR.,
et al.,

            Defendants.           <u>ORDER</u>

_____/

          Defendants have filed a request to vacate the evidentiary hearing set for August 17, 2011, set by this court in an order filed July 22, 2011.  Plaintiffs oppose the request.

          The purpose of the evidentiary hearing is for defendants to show cause why fifty beds at Coalinga State Hospital (Coalinga) designated for <u>Coleman</u> class members, as well as any other vacant beds at the facility, cannot be filled with high-custody CDCR inmates, and for the court to take evidence on whether the alternative assessment process described by defendants in an earlier filing is appropriate to adequately identify <u>Coleman</u> class members in need of referral to inpatient care.  Defendants seek a period of ninety days to work with the special master on a supplemental plan to reduce the wait list for inpatient mental health care and to present their alternative referral assessment process to the special master for evaluation.  Defendants represent that if at the end of that ninety day period there is no agreement with the special master on a plan

to further address the wait list issues the evidentiary hearing should be reset at a time at least thirty days thereafter.

As all parties to this action know, defendants were ordered over sixteen months ago to work with the special master to come up with a plan to reduce or eliminate the wait list for inpatient care and to better serve the treatment needs of inmates on the wait list. See Order filed March 31, 2010, at 3. The original time frame for development of the plan was ninety days. See id. In August 2010, the parties stipulated to a one hundred twenty day extension of time for development and filing of the plan, and the stipulation was approved by this court in an order filed August 4, 2010. Defendants filed their plan in November 24, 2010, almost eight months after the March 31, 2010 order was filed.

The first element of defendants' plan was an Extended Enhanced Outpatient Program Care Plan (EECP) "designed to provide treatment interventions targeted to the subgroup of EOP inmate-patients who exhibit serious *and* persistent mental illness, and whose level of functioning is insufficient to allow general population placement." Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Waitlists, filed November 24, 2010, at 4. At the time they filed their plan, defendants had identified 68 inmate-patients on the waitlist as meeting criteria for EECP placement. Id. at 5. The EECP was also part of defendants' plan to provide better mental health treatment for inmates on the waitlist. Id. at 23; but cf. Defendants' Response to Court's July 22, 2011 Order Re: EECP, filed August 4, 2011, at 3.

In objections filed February 25, 2011, plaintiffs contended, inter alia, that the EECP was not supported by sufficient staff or other resources to justify removing inmates from the waitlist for intermediate inpatient hospital care. Plaintiffs' Objections to Defendants' Plan to Address Waitlists for Inpatient Care and to Reduce Harms Inflicted on Class Members on Waitlists, filed February 25, 2011, at 9-11. By order filed April 28, 2011, defendants' plan was referred to the special master for review of its adequacy and whether, in light of objections raised by plaintiffs, any modifications to the plan should be required.

1    The special master filed his report and recommendations on June 13, 2011, noting
2    the large role that the EECP played in defendants' wait list plan.  See Special Master's Report on
3    Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Wait Lists, filed June 13,
4    2011 (Report), at 26.  In his first two recommendations, the special master recommended that no
5    inmates placed in the EECP be removed from the wait list, and that he be ordered to monitor and
6    review the EECP including staffing and to report to the court thereafter on whether inmates
7    transferred to the EECP should be removed from the wait list.  Id. at 54.

8    After eight months of work by defendants as well as the special master and his
9    staff, and an additional forty-five days spent by the special master and his staff reviewing the
10   EECP and other components of the wait list plan, defendants' response to the special master's
11   recommendations was to withdraw the EECP from their wait list plan.  The asserted reason for
12   withdrawal of the EECP from the wait list plan was that the special master's first
13   recommendation "defeats the purpose of the EECP" while the second recommendation for
14   monitoring was "redundant."  Defendants' Response and Objections to Special Master's Report
15   on Defendants' Plan Re: Intermediate Care Facility and Acute Inpatient Wait Lists, filed July 1,
16   2011, at 4.  The special master's recommendation that inmates transferred to the EECP remain
17   on the waitlist was clearly intended as part of the process of evaluating the efficacy of the EECP
18   as an alternative to inpatient hospital care.  See Report at, e.g., 51-52.  Thus, defendants'
19   assertion that the special master's recommendation "defeats the purpose of the EECP" was
20   unfounded.

21   Moreover, pursuant to court order, defendants have subsequently represented that
22   they "still intend[] to provide EECP-type services to EOP inmate-patients with chronic mental
23   illness whose symptoms have stabilized but whose level of functioning is insufficient to allow
24   general population placement" and that they will continue with the "interim process to treat
25   inmate-patients on the SVPP waitlist who can safely program at the four EECP institutions with
26   existing EECP inmate-patients."  Defendants' Response to Court's July 22, 2011 Order Re:

1   Extended Enhanced Outpatient Program Care Plan, filed August 4, 2011, 2.  To the extent that

2   the EECP may serve as an alternative to inpatient hospital care for some members of the

3   Coleman class, defendants should be tracking whether in fact the EECP adequately serves that

4   function as part of their overall obligation to ensure that all members of the plaintiff class receive

5   timely access to necessary mental health care.[1]

6          In their opposition to defendants' request, plaintiffs inform the court that data

7   provided by defendants shows that the wait list has grown to 171 inmate-patients as of July 29,

8   2011.  Plaintiffs represent that there are 400 empty hospital beds at Coalinga and 73 empty

9   hospital beds at Atascadero State Hospital (ASH).  Plaintiffs' evidentiary hearing brief, filed with

10  their opposition, is a powerful condemnation of defendants' failure to meet their constitutional

11  obligations to some of the most seriously ill members of the plaintiff class.  It also suggests non-

12  compliance with orders of this court and defendants' own representations about efforts to address

13  this crisis.

14         It appears from the record before the court that defendants have wasted a

15  substantial amount of the special master's time and efforts, and their own, on a plan to reduce or

16

17         [1]  In the July 22, 2011 order, the court deferred approval of section III of defendants' plan concerning interim treatment for inmates on the wait list and a final determination of whether
18  defendants have complied with the March 31, 2010 order pending clarification by defendants as to whether they intend to continue the EECP.  Order filed July 22, 2011 at 4 n.2.  The record
19  before the court suggests that defendants have wasted a substantial amount of the special master's time supervising, reviewing, and assessing the EECP as part of the overall effort to
20  solve the ongoing problem of access to inpatient care.  Defendants' August 4, 2011 filing suggests that they intend to continue at least some part of the EECP.  Defendants' obligation
21  under the March 31, 2010 order is to devise a plan that will reduce or eliminate the wait list for inpatient care and better serve the treatment needs of class members  placed on the wait list.
22  Order filed March 31, 2010 at 3.  In that order, the court specifically noted that defendants' short-term bed projects would not eliminate the wait list and the long-term bed projects were then three
23  years from activation.  Id.  The focus of defendants' efforts over the next ninety days must be on developing strategies that will increase **in the near term** the number of hospital beds available to
24  class members in need of inpatient care and that will provide better care for any class members who must still wait for admission to a hospital bed.  Should those efforts fail to yield concrete
25  results, the court may have no alternative but to order full implementation of the EECP, and to make such further orders addressing defendants' continued failure to address their constitutional
26  obligations as may be required.

1    eliminate the wait list that, as it stands, is insufficient.  The opposition to the request at bar

2    request suggests a failure to timely provide available solutions to the ongoing crisis of inadequate

3    access to inpatient care and its sequelae.  Against that backdrop, the court must now decide

4    whether to grant defendants even more time to work with the special master on a supplemental

5    plan.

6              If the request leads to a serious plan, it should be granted.  If the result is more

7    delay without solution it cannot be countenanced.  As the court noted in its July 22, 2011 order,

8    the serious problem with access to inpatient hospital care has plagued seriously mentally ill

9    inmates under defendants' jurisdiction for over twenty years and is ongoing.  The court meant

10   what it said:  further delay in resolution of this problem is unconscionable.

11             The remedial phase of this litigation has been guided by the court's core view that

12   the obligation to comply with the Constitution rests with the defendants and that it is defendants

13   who must choose and implement the mechanisms for meeting that obligation.  But the court's

14   patience is nearing its limit.  The crisis of a lack of adequate access to inpatient care must be

15   solved.

16             The special master has informed the court that within defendants' request there

17   are some proposals that warrant further consideration prior to a hearing on the use of beds at

18   Coalinga, including the possibility of having the Department of Mental Health provide additional

19   clinical care at certain prison institutions, including California State Prison-Sacramento, to

20   inmates on the wait list, and the ongoing review of the inmate classification system.  See Request

21   at 7.  In addition, on July 20, 2011, defendants reported to the three judge court on their initial

22   population reduction[2], which raises the question of whether celled housing units at Salinas Valley

23   State Prison or any other appropriate prison institution might be converted to hospital units to

24   reduce the wait list.  The special master also reports that the 45-bed hospital unit at California

---

26       [2]  Docket No. 4043.

Institution for Women scheduled to begin patient admissions in January 2012 may be a unit that could house male inmates if sufficient inpatient beds were available to female inmates at Patton State Hospital. The evidence tendered by plaintiffs concerning Coalinga must also be given serious consideration, as must plaintiffs' suggestion that the wait list can be reduced through identification and transfer of inmate-patients, stabilized at the Salinas Valley Psychiatric Program (SVPP), to ASH or Coalinga.

Given the possibility that there are solutions to the wait list problem not reflected in defendants' current plan, and good cause appearing, defendants' request will be granted. The court will not, however, vacate the evidentiary hearing entirely. By this order, the hearing will be reset to December 14, 2011 at 10:00 a.m. The court will not entertain any request to continue the hearing further and will only entertain a request to vacate the hearing if such a request is accompanied by a supplemental plan to reduce the wait list that has been approved by the special master. Moreover, given the urgency of the matter at bar and the necessity of avoiding further wasteful delays, the court will direct defendants to file a status report every thirty days until the time of the evidentiary hearing. If after reviewing any status report the court finds that defendants are not moving in good faith and making adequate progress toward development of a substantive supplemental plan, the court will terminate the ninety day period and reset the evidentiary hearing to an earlier date. The court also expects defendants to implement during that ninety day period any step approved by the special master that will make hospital beds immediately available to inmates on the wait list.

Defendants also seek an additional ninety days to demonstrate to the special master that their alternative assessment process for referring inmates to inpatient hospital care is adequate. As the court found in the July 22, 2011 order, the adequacy of the process used to refer inmates to inpatient hospital care is intertwined with the ongoing problem of inpatient wait lists and delays in access to inpatient care. What is at stake here is whether seriously mentally ill inmates who need hospitalization to treat their mental illness are being timely identified and

1    referred for such care.  The record suggests that once again they are not:  according to

2    defendants' July 1, 2011 response, institutional review of 628 inmates who met initial criteria for

3    referral to inpatient care was to be completed by the end of July.[3]  Defendants now "expect" to

4    complete this review by the end of August.

5              Seriously mentally ill inmates who need hospital care should not languish in

6    conditions where their treatment needs cannot be met.  They must be identified as needing that

7    care, they must be referred for that care, and they must be transferred to receive that care.  It is

8    past time for defendants to remedy this longstanding crisis.  Defendants must develop and fully

9    implement an adequate referral process that will ensure that all class members in need of

10   inpatient care are timely identified, referred, and transferred to such care.  The court cannot

11   permit an additional ninety day delay solely to determine whether defendants' proposed

12   assessment process is adequate.  For that reason, defendants will be directed to work with the

13   special master so that an assessment process that meets his approval has been conducted and

14   completed by December 9, 2011.[4]  The assessment process shall include referrals for all inmates

15   identified as needing inpatient care and, as appropriate, transfers to hospital beds.  All such

16   referrals shall be completed within the timelines set by the Revised Program Guide, and, as

17   appropriate, all transfers shall be completed within said timelines.  Defendants shall report to the

18   /////

19

20        [3]  Defendants actually generated a list of 2083 inmates meeting one or more of the
     relevant criteria for consideration of referral to inpatient care.  Of those, they elected to review
21   1408 inmate-patients as part of an audit of the alternative referral process they are developing.
     See Order filed July 22, 2011 at 8-9 and evidence cited therein.
22
          [4]  Pursuant to the Order of Reference referring the remedial phase of this action to the
23   special master, "[t]he principal responsibilities of the special master, ..., are to provide expert
     advice to defendants to ensure that their decisions regarding the provision of mental health care
24   to class members conforms to the requirements of the federal constitution and to advise the court
     regarding assessment of defendants' compliance with their constitutional obligations."  Order of
25   Reference, filed December 11, 1995, at 2.  The special master shall report to the court forthwith
     should there be any dispute remaining thirty days from the date of this order about the
26   assessment process to be followed.  See Order of Reference at ¶ 11.

7

1   court on the results of the assessment process, including referrals and transfers, at the time of the

2   evidentiary hearing.

3           It is impossible to overstate the urgency of this matter.  The court is not granting

4   defendants' request merely to permit them to consider alternatives.  The court is granting the

5   request to allow defendants to make substantive progress toward meeting their constitutional

6   obligation to provide timely access to inpatient care for all members of the plaintiff class in need

7   of such care.[5]

8           In accordance with the above, IT IS HEREBY ORDERED that:

9           1.  Defendants' August 9, 2011 request is granted in part.

10          2.  The evidentiary hearing set for August 17, 2011 is reset to December 14, 2011

11  at 10:00 a.m.

12          3.  During the next ninety days, defendants shall work with the special master to

13  develop a supplemental plan to reduce or eliminate the inpatient wait list and to better serve the

14  treatment needs of inmates on the wait list.  During that ninety day period defendants shall

15  implement any step approved by the special master that will make hospital beds immediately

16  available to inmates on the wait list.

17          4.  Defendants shall work with the special master so that an assessment process

18  that meets his approval has been conducted and completed by December 9, 2011.  The special

19  master shall report to the court forthwith should there be any dispute remaining thirty days from

20  the date of this order about the assessment process to be followed.  Defendants shall report to the

21  ────────────

22          [5]  The court expects that defendants' efforts, guided by the special master, will be
    successful.  However, if after **sixty days from the date of this order** the court is not satisfied

23  that defendants are making meaningful progress toward an adequate supplemental plan,
    defendants will be required, by further court order, to develop within forty-five days a plan to

24  provide adequate security at Coalinga in the event that the court determines that empty beds there
    must be used for <u>Coleman</u> class members in need of hospital care.  Should defendants be

25  required to develop that plan, it will be developed under the guidance of the special master and,
    in developing the plan, defendants will be required to give serious consideration to the evidence

26  tendered by plaintiffs in Opinion 1 of the Declaration of Joseph L. McGrath, filed August 11,
    2011.

court on the results of the assessment process, including referrals and transfers, not later than December 14, 2011.

       5. Defendants shall report to the court on the status of the development of the supplemental wait list plan and the assessment process every thirty days from the date of this order until the time of the evidentiary hearing.  The first status report shall be due on September 9, 2011, and each subsequent report shall be filed thirty days thereafter.  If after reviewing any status report the court finds that defendants are not moving in good faith and making adequate progress toward development of a substantive supplemental plan, the court will terminate the ninety day period for development of a supplemental wait list plan and will reset the evidentiary hearing to an earlier date.

       6. Plaintiffs shall be included in the foregoing processes at the discretion and direction of the special master.

DATED:  August 15, 2011.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT