KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE VOROUS - SBN 166884
WILLIAM KWONG - SBN 168010
DANIELLE F. O'BANNON - SBN 207095
KYLE A. LEWIS - SBN 201041
DAVID BRICE - SBN 269443
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
debbie.vorous@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - SBN 39374
PAUL B. MELLO - SBN 179755
WALTER R. SCHNEIDER - SBN 173113
MEGAN C. OLIVER THOMPSON - SBN 256654
SAMANTHA D. WOLFF - SBN 240280
RENJU P. JACOB - SBN 242388
PAUL B. GRUWELL - SBN 252474
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF JAY ATKINSON IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL REPORT IN RESPONSE TO JUNE 30, 2011 ORDER** |

I, JAY R. ATKINSON, declare as follows:

1. I am the Acting Deputy Director of the Office of Research for the California Department of Corrections and Rehabilitation (CDCR). I have been employed in this position since January 1, 2011. I have been with the Office of Research and the Offender Information Services Branch of CDCR since 1999, and have assisted in gathering data maintained by CDCR on numerous occasions. I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' Supplemental Response to the Court's June 30, 2011 order.

2. As Acting Deputy Director for the Office of Research, I am responsible for management and oversight of the Offender Information Services Branch that supplies research and analysis to CDCR and outside agencies regarding population estimates and projections. I am responsible for the development of CDCR's Spring and Fall population projections and I know how they are developed.

3. CDCR expedited its efforts to complete its Fall 2011 projections so that the projections could be used as a baseline to project the in-state institution population in response to the Court's order. Fall projections are normally completed at the end of August but we were able to complete the Fall 2011 projections in early August. The official "Fall 2011 Adult Population Projections" publication will be released soon.

4. The development of the Fall 2011 projection was a complex process. Specifically, the Fall 2011 projections required evaluation and modification of a simulation model that included many variables and recent trends affecting population, including the impact of prior legislation. After starting with CDCR's June 30, 2011 population, CDCR forecasted population levels by using a simulation model, which employed data trends and projected new admissions, to determine how long the new admissions will stay, the number of offenders who will be returned to prison, and how long they and the current inmates will stay. The inputs to the simulation model were then modified from the

1  previous Spring 2011 projection to account for recent trends and data, including the
2  impact of prior legislation affecting population. This simulation was repeated for each
3  individual inmate until the total population was projected. After the Fall 2011 projection
4  was completed, staff in the Office of Research projected the impact on CDCR's
5  population that AB 109 realignment legislation could have. In doing so, past conviction
6  and parole revocation data have been analyzed to make projections about what portion
7  of the offender population will be diverted to county jail or alternatives to incarceration –
8  i.e., will not be eligible to serve their time in CDCR institutions. From this projection,
9  Ross Meier, from CDCR's Population Management Unit, developed a plan to place this
10 population in available capacity and determined the in-state population.

11     5.    As a general matter, the projection developed for this report and the
12 projection developed for the prior July 20, 2011 report use the same methodology. This
13 projection included recent realignment legislative changes that did not exist when the
14 prior projection was prepared. Specifically, the current projection includes additional
15 crimes that are excluded from realignment. If subsequent realignment legislation is
16 enacted, there may be additional factors that could potentially impact CDCR's population
17 that would not be included in the current projection.

18     6.    Our projection of the impact of AB 109 is based upon reasonable
19 assumptions from the language of the legislation. However, the model is developed
20 without the added benefit of any data trends, which will only become available over time
21 as the AB 109 realignment legislation takes effect after October 1. In preparing prior
22 projections where a particular legislative change had been in effect for some time, CDCR
23 staff had the benefit of looking back at prior assumptions and contrasting those projected
24 figures with actual population counts in the various categories used to model the
25 population forecast. In essence, past experience informed decisions about assumptions
26 going forward. While CDCR has considered Legislative changes in making prior
27 projections, the scope of change brought about by AB 109 realignment is unprecedented.
28

-2-

1  This historic realignment impacts the analysis of new admissions for both parolees facing
2  revocation and individuals convicted of new offenses, since large numbers of these
3  individuals will be housed in county jails instead of CDCR prisons. While these
4  projections are based on reasonable assumptions, the projections cannot predict CDCR's
5  future population with certainty. Despite this inherent uncertainty with projections, we do
6  know that realignment will reduce prison crowding in a substantial way, even if we cannot
7  determine future population with precision on specific dates.
8      I declare under the penalty of perjury under the laws of the State of California that
9  the foregoing is true and correct. Executed in Sacramento, California on August 16
10 2011.

*(signature)*

JAY R. ATKINSON