O
R
I
G
I
N
A
L

Eduardo Alvarez, G-16059
David E. Anderson, T-41965
Fernando Arreola, J-49675
Jermain Davis, J-16857
Eric Einsmann, V-35695
Gerardo Estrada, D-58882
John D. Martin, J-87352
Edward J. Meister, G-35958
Lawrence Remsen, C-67186
Ricky Williver, V-08930
California Correctional Institution
Post Office Box Num. 608
Tehachapi, CA      93581
Phone No. (661) 822-4402

*FILED*
2011 JUL 15 P 3:41
RICHARD W. CLERK U.S. DISTRICT

**LETTER BRIEF:**

**NOTICE OF INTERVENTION ACTION IN CASE NO'S
C01-1351 TEH AND CASE NO. S-90-520 LKK JFM**

Re: Case No. **C01-1351** TEH and 9th Cir. No.
**09-15756**; **Cf.** Sup.Ct. **09-1233** (5/23/11).

July 10, 2011

The Honorable T.E. Henderson
Senior District Judge
450 Golden Gate Avenue
San Francisco, CA 94102-3483

The Honorable T.E. Henderson:

Greetings. We hope this finds you well and serving the United States Judicial System in the best interests of our Country, just as you have for the past four decades.

We are writing you today regarding the above entitled cases and to explain why we have not pursued our claims after we filed our Aug. 7, 2007 (POS-Date) arguments and documents in support of the "Plata" class of inmate in Case No. **C01-1351** (See: Addendum 1 - Notice on minimum space for imprisonment of State Prisoners.)

To begin with, we know the "Three Judge Panel" in this case, has reviewed thousands of documents, so we will get straight to the point. Thirty days from receipt of this "letter brief", as group of California prisoners claiming similarly situated interests in Case No's **C01-1351** and **S-90-520**, we intend to file a motion asking for "declarative and injunctive" relief on our showing that we are being confined under unconstitutional and inhumane conditions that violate our rights to like pains and penalties as guaranteed by the Fourteenth Amendment to the United States Constitution.

For your information, we have pursued our interests and continued our investigations since Aug. 1, 2007, into how and why the State's prison population has morphed into the unacceptable and extreme overcrowding conditions we are experiencing today (See: Addendum 1, supra - 2007 Notice of claims by extended class, without exhibits).

In addition to the above, this letter brief is to notice the "Three Judge Court" that in our intended prospective action we intend to file showing:

1. the parties now representing the "class of prisoners" in this matter have failed to represent State prisoners in a way that would invoke this

-1-

Court's power under the evolving standards of decency, to correct the State's overcrowding prison conditions according to each prison's designed square footage capacity requirements;

2. to bring to the attention of this esteemed Court our request the prison population reduction order be enforced according to United States Supreme Court precedent; requiring each prisoner receive "<u>like pains</u> and <u>penalties</u>" in accordance with each State prison's <u>minimum</u> square footage space requirement, so that each individual prisoner receives the same "<u>punishment</u>" for his crime in accordance with California's purpose and policy as declared by its lawmakers in Pen. Code § 1170(a)(1) (<u>See</u>: Stats 1977 C 165 § 15; <u>cf.</u> Senate Bill 42 [Ways & Means Bill] Seven Category Sentencing Structure at pp. 1-4);

3. to consider the question of whether or not the State prison population reduction order should take into account whether or not a State prisoner poses an unreasonable risk to public safety falls on the prisoner or his crime, but instead on the Department of Corrections and Rehabilitation (CDC&R), as set forth by California's Mentally Disabled Offender's laws.

In addition to the above, we intend to file a motion for:

1. this Court's order to protect our group of specifically named prisoners. In our next filing we intend to ask this Court for a protective order that we claim is necessary due to the nature and consequences of the filing information, the history of CDC&R for retaliation and deliberate indifference on the part of State officials. In short, we claim this Court's protection order is necessary to avoid retaliation that is sure to result once this sensitive information becomes public; and

2. request for Declarative and Injunctive Relief on the issues presented to the "Three Judge Court".

Please take notice that in our request for declarative and injunctive relief in the prospective action, we intend to show, inter alia, that:

1. the parties representing the "class of prisoners" in the above entitled class actions, failed to represent State prisoners in a way that has brought to this Court's attention factors tending to show the deliberate indifference on the part of the State's politically elected and appointed officials who knew of the unconstitutional conditions of confinement during their tenure, but did nothing to resolve the matter;

2. these same attorneys representing the State prisoners failed to argue minimum amount of space requirements for each prisoner that has resulted in the deterioration of the prisoners physical, mental, and emotional health; and

3. those representing the State prisoners who have received payment of millions of taxpayer dollars and who failed to properly defend the interests of the class as well as the crime victims; State and Federal taxpayers; prisoner's family members; and the prisoners themselves.

In our proposed upcoming action, we will present the "Three Judge Court"

-2-

with <u>Three</u> <u>Grounds</u>, that offer what we claims is indisputable factual evidence
showing that State elected and politically appointed officials have acted <u>arbitr-
arily</u>, <u>capriciously</u>, and with deliberate indifference, to deny members of our
group substantive due process and equal protection of the law guaranteed by the
First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Con-
stitution.  In the same action, we will attempted to prove that State actors
have unfairly and in bad faith applied for and accepted State taxpayer funds
and federal aid to further their own interests, based in part on the faulty prem-
ise that this State provides for "<u>Truth</u> <u>In</u> <u>Sentencing</u>", such as like pains and
penalties for State prisoners committing the same crimes.

   In addition to the matters previously mentioned -- as part of our request
for declarative and injunctive relief -- we will attempt to prove that the <u>only</u>
way to make sure the State adheres to the Court's order to reduce the State prison
population, is for this Court's prison population cap to be grounded on a minimum
of 60 square feet in a cell and 75 square feet in dorms for each State prison,
according to the amount of space each prison was designed to hold; based, inter
alia, on the agreement between the State and the standards of American Correction-
al Association, and according to United States Supreme Court precedent (<u>See</u>:
e.g., <u>Rhodes v. Chapman</u>, 467 U.S. 337, **345-47, 352** (1981); <u>cf</u>. Justice Brennan,
Blackmun, and Stevens join, concurring in the judgment at 452 U.S. pp. **356-59,**
citing: <u>Ramos v. Lamm</u>, 639 F.2d 559, **567** (10th Cir. 1981)).

   Next, due to the nature of the proposed declarative and injunctive proceed-
ings, our group will submit in our "<u>Three</u> <u>Grounds</u>" issues that deal with the
overcrowding conditions, as well as matters that demonstrate the cause and affects
of the overcrowding.

   Lastly, we have enclosed copies of the notices sent to State elected and
appointed officials concerning our "Whistle Blowers" claims tending to show the
willingness of State actors to apply, receive/accept state and federal taxpayer
dollars while at the same time working against the state taxpayers interests
with direct disregard to state prisoners health and safety interests; had these
matters been brought to the Court's attention, would have invoked the Court's
powers to enforce changes in the state prison system to protect the public and
State prisoners federally protected rights.  In short, had the State actors not
acted with deliberate indifference, our filing of prospective action may well
have proved unnecessary, the State and Federal taxpayer may have saved billions
of dollars and the deterioration of the prisoners health, safety, and their condi-
tions of confinement, might have been avoided.

   As examples, in our <u>GROUND</u> <u>ONE</u>, we proposed to offer what we claim is indis-
putable proof that the overcrowding of the State prisons is due in a large part
to the deliberate indifference on the part of those representing the class and
those who are responsible for the lawful imprisonment of the inmate population.
In our <u>GROUND</u> <u>TWO</u>, we will show that "<u>Truth</u> <u>In</u> <u>Sentencing</u>" for which State offi-
cials apply for and accept hundreds of millions of federal taxpayer dollars each
year, is nothing more than a myth.  That because state actors have condoned and
allowed the prison system to continue to expand while at the same time allowing
for different "<u>punishments</u>" to be served by different prisoners committing the
same offense in violation of the Legislative declaration contained in Pen. Code
§ 1170(a)(1) and the federal constitutions due process and equal protection clause
and as guaranteed by the Fourteenth Amendment to the United States Constitution,
has caused irreparable harm to every California citizen.  Furthermore, as the

-3-

basis for our Ground Two, we will offer proof that while prisoners were being
imprisoned under unconstitutional and overcrowded conditions, the State's Law-
makers continued to reduce the amount of overcrowding good-time and participat-
ion credits prisoners can earn and/or enforce the laws that empowered CDC&R to
retain **any** prisoner beyond his earned release date which, after a trial on the
issues of their danger to public safety, could have prevented the deaths of State
citizens by prisoners who would never have been released had CDC&R enforced the
MDO and MDSO laws according to their terms and provisions (See: Cal. Pen. Code
§§ 2960 and Heath and Welfare Code §§ 6600-6609.3; cf. People v. Talhelm, 85
CA4th 400 [102 C.R.2d 150] (2000) [Re: involuntary commitment under Sexually
Violent Predators Act; Note: in Attachment I, we have included our most recent
letter/notice to Governor Brown and Attorney General Kamala Harris; Attachment
II contains all our April 4, 2010 notices dealing with California's disparate
sentencing and parole laws.). Our GROUND THREE concerns the State's Determinate
Sentencing Law and the class of State prisoner whose sentence is derived form
the 1978 Prop. 7 Initiative Statute that we posit has created an unconstitutional
sentencing scheme. We intend to show that the way Senate Bill 42 in conjunction
with Prop. 7, are being implemented, has created an unconstitutional post-convic-
tion administrative process that has resulted in the further overcrowding of
the State's prison system.

Respectfully submitted,

| | | | |
|---|---|---|---|
| Eduardo Alvarez | Date | Gerardo Estrada | Date |
| David E. Anderson | Date | John D. Martin | Date |
| Fernando Arreola | Date | Edward J. Meister | Date |
| Jermain Davis | Date | Lawrence Remsen | Date |
| Eric Einsmann | Date | Ricky Williver | Date |

See: Addendum I - 2007 Prisoners in Intervention

Attachment I - Letters to Governor Brown and Attorney General Kamala Harris

Attachment II - Letter of Notice to State officials dated April 4, 2011.

CC: Hon. Stephen R. Reinhardt
    Hon. Lawrence K. Karlton
    Carol E. Lavacot, Trustee and Attorney at Law
    Jerry Allione, Trustee
    File

<u>DECLARATION OF SERVICE BY MAIL</u>

Case Name:        Plata, et al., v. Edmund G. Brown Jr., et al.

Case Number:      <u>C01-1351 TEH</u> AND <u>S-90-520 LKK JFM</u>

I declare

    I am incarcerated at the California Correctional Institution in Unit 2, Dorm 6, at Tehachapi, California.  I am 18 years or older and not a party to this matter.  I am familiar with the business practices for processing correspondence placed in the internal mail collection system at the Correctional Institution for mailing with the United States Postal Service.  In accordance with that practice, I placed correspondence in the internal mail collection system at the California Correctional Institution at Tehachapi, California, to be deposited with the United States Postal Service the same day in the ordinary course of business.

    On _July_ (Month) _14_ (Day), 2011, I served the attached **LETTER BRIEF AND ATTACHMENTS,** by placing a true copy thereof enclosed in a sealed envelope with the postage fully paid thereon, in the internal mail collection system at the California Correctional Institution at Tehachapi, CA 93581, addressed as follows:

**PARTIES SERVED**

| NAME | ADDRESS | DATE SERVED |
|---|---|---|
| U.S. District Court for the Northern Dist. of Calif. <u>Attn</u>: Clerk of the Court | U.S. Courthouse 450 Golden Gate Avenue San Francisco, CA 94102-3483 | 7/10/11 |
| U.S. Court of Appeals for the Ninth Circuit <u>Attn</u>: Clerk of the Court | 312 N. Spring Street Los Angeles, CA 90012-4701 | |
| U.S. District Court for the Eastern District of Calif. <u>Attn</u>: Clerk of the Court | 501 "I" St. #4-200 Sacramento, CA  95814 | |

    I declare under penalty of perjury and under the laws of the State of California, the foregoing is true and correct and that this declaration was executed on __July__ (Month) _14_ (Day), 2011, at the California Correctional Institution at Tehachapi, California.

Dean Ciccarelli

7/10/11
/Date

ADDENDUM - 1

COPY

Lawrence Remsen, C-67186
Gregory Watson, D-67547
Michael Matlock, D-14884
Gary J. Masse, D-43256
Post Office Box 409040
Ione, California 95640

August 1, 2007

To the Honorable
Stephen R. Reinhardt, Circuit Judge
for the United States Ninth Circuit
Court of Appeals,
312 North Spring Street
Los Angeles, California      90012

RECEIVED

AUG 0 3 2007

Rosen, Bien & Galvan

Re: Case # CO1-1351 TEH

To the Honorable Judge Reinhardt:

    On July 28, 2007, the above named California State prisoners became aware that a three judge panel was convened in the above entitled case (Plata v. Schwarzenegger).

    As State prisoners, we have a vested interest in the outcome of this matter -- providing the panel is considering fixing a population cap on California prisons -- due to the extreme over-crowded conditions subjecting prisoners to the cumulative impact, threatening their physical, mental, and emotional health.

    We would like to bring to your attention -- as well as to the attention of the rest of those involved with this matter -- that the State of California has adopted the "American Correc-tional Association Standards" as their guidelines for housing the State's prisoners (See: e.g., Manual of Standards for Adult Correctional Institutions, American Correctional Association Commission on Accreditation for Corrections, Standard 4142; see also: National Advisory Commission for Criminal Justice Standards and Goals, Corrections, Standard 11.1, page 353).

    As of this date, the Department of Corrections is continuing to broadcast to Mule Creek State prisoners -- on closed circuit television -- that they are going by the American Correctional Association Standards in their attempt to get volunteers to trans-fer out of state, which is, inter alia, why we ask you to consider the following:

        (1). According to the American Correctional Association Standards, as prisoners, we should be receiving 60 square feet in a cell and 75 square feet in the dorms (See: e.g., Balla, et al., v. Board of Corrections, et al., 656 F.Supp. 1108, 1110-1112 (1987) citing: Rhodes v. Chapman, 452 U.S. 337, 364 (1981); see also: Lareu v. Manson, 651 F.2d 96, 98-100, 105-108 (2nd Cir. 1981)).

-1-

(2). That Mule Creek State Prison continues to exceed its
designed capacity by over 200% (<u>See</u>: e.g., <u>Exhibit</u>
<u>1</u>. - Mule Creek State Prison Institution Profile dated
11/27/01).

(3). That based on the "evolving standards of decency"
standards, as set forth by California's courts, no
prison should contain more than its rated capacity,
except in emergency situations (<u>See</u>: <u>Inmates of River-</u>
<u>side County v. Clark</u>, 144 Cal.App. 3d 850, **858-864**
[192 C.R. 823] (1983)).

(4). That according to the "deliberate indifference" and
"conditions of confinement" policies as defined by
the United States Supreme Court, California has, since
1978, operated at over 179% of its designed capacity
and has shown no intention -- without federal oversight
-- to correct the prison overcrowding conditions.
Therefore, no prisoner should be sent to a prison
under conditions that exceed the designed capacity
for a minimum of "<u>60 square feet</u>" in a cell, and "<u>75</u>
<u>square feet</u>" in a dorm.    Those prisoners confined
at less than the acceptable minimums, are being punish-
ed <u>more</u> by having to be confined in space less than
that for which the prison was designed to accommodate
(<u>See</u>: <u>Battle v. Anderson</u>, 564 F.2d 388, **394-396** (10th
Cir. 1977); <u>see</u> also: Cal. Const. Art. 1 § <u>7(a)&(b)</u>;
and the 14th Amend. to the U.S. Const.)).

As prisoners being adversely impacted by the overcrowding,
we would ask this Court to take notice that California prisons
are inconsistent in their design. Some State prisons like San
Quentin and Folsom are housing two prisoners in less than 38
square feet, while new Folsom is housing prisoners in 80 square
feet. Mule Creek State Prison has 54 Square Feet in its cells
which were designed for one prisoner. The point is, we would
ask the Court in considering a population cap, to base its deci-
sion on the capacity of each prison based on its design, after
setting minimums of 63 square feet for double occupancy and a
minimum of 75 square feet of individual personal space for those
housed in dorms (<u>See</u>: <u>Balla et al., v. Board of Corrections,</u>
<u>et al.</u>, supra, 656 F. Supp. <u>id</u> at pp. 1110-1112; <u>Wilson v. Seiter</u>,
501 U.S. 294, **296-311** (1991) <u>Cf</u>. <u>Rhodes v. Chapman</u>, supra, 452
U.S. <u>id</u> at p. **364**).

For far too long California neglected to provide the minimum
space to house its convicted felons. It would seem that if two
prisoners convicted of the same offense are confined in a 38
square foot space, while two other prisoners with the same offense
are housed in an 80 square foot space, those housed in the lessor
space are being punished more. Moreover, it is a fact that while
the prisoner population was expanding, the State's legislature
decided to reduce the amount of credits a prisoner could earn
to reduce his sentence (<u>Note</u>: California's Legislature declared

-2-

it is a privilege to earn credits off a prison sentence, <u>see</u>, e.g., Pen. Code § 2933). In reducing the amount of credits a prisoner could earn based on his offense, the State called this "truth in sentencing". For that reason, the State received 352 million federal tax dollars. This nonsense flies in the face that during this same time frame, prisoners in State camps are currently receiving three days earned credit for each day served off their prison sentence. For this, we would ask the court to take judicial notice of California's State Constitution Article 1 Section 7(b), stating:

> "[A] citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges and immunities granted by the Legislature may be altered or revoked." (<u>See:</u> Cal. Const. Art. 1 § 7(b), as amended November 6, 1979; <u>Cf.</u> U.S. Const. 5th and 14th Amend.'s).

On April 17, 2006, prisoners at Mule Creek, notified the Court of the overcrowding conditions here at the prison (<u>See</u>: <u>Exhibit</u> 2). We are asking the Court to take into account that based on the policy of "evolving standards of decency" and because a person is sent to prison as "punishment for the crime itself", and not for punishment, the prisoner should not be punished more than what the capacity of each prison was built to house during the last three decades, and not before or during the overpopulation. Therefore, we are requesting the Court consider setting a prisoner cap at 75,000 (<u>Note</u>: In 1983, Florida's State Legislature enacted the "Correctional Reform Act of 1983. The Act created an emergency procedure to be followed whenever the population of the prisons exceeded 98 percent of the lawful capacity for both males and females [<u>see</u>: <u>Lynce v. Mathis</u>, 519 U.S. 433, **440--446** (1997); James S. Liebman, <u>FHCP&P</u>, Vol. 1 § 9.1 at p. 433 (2001)]).

For all the reasons expressed herein, as prisoners of the State of California who are being subjected to the cruel and unusual overcrowding conditions that are adversely affecting their mental, physical, and emotional well being, we ask this Court to act and correct the conditions of overcrowding by considering, inter alia, the matters raised in this notice and to set the population at a cap commensurate with the American Correctional Associations minimum standards.

Respectfully submitted,

## V E R I F I C A T I O N

As a Prisoner in the above entitled action, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on <u>Aug.</u> (Month)

-3-

_1_   (Day), 2007.


Lawrence Remsen                 8/1/07            Gregory Watson                  8/1/07
Lawrence Remsen        Date                       Gregory Watson         Date


Michael Mattlock                8-1-07            Gary Masse                      8/01/07
Michael Matlock        Date                       Gary J. Masse          Date


***********

-4-

## P R O O F   O F   S E R V I C E   B Y   M A I L

Case Name:                  PLATA - VALDIVIA, et al.,

                                       Plaintiffs

                                          vs.

                       ARNOLD SCHWARZENEGGER, et al,

                                    Defendants

Case Number:   <u>CO1-1351 TEH AND CIV S-94-0671 LLK</u>

        I ___<u>DAVID JONES,</u>___ declare and state as follows:  I am 18
years or older and not a party to this action.  My address is Post
Office Box Number 409040, Ione, California 95640

        On __<u>August</u>__(Month) __<u>1</u>__(Day), 2007, I served the attached
notice of <u>**PRISONER MEDICAL AND OVERCROWDING COMPLAINT**</u> by placing
a true copy enclosed in a sealed envelope with postage fully paid
thereon, in the United States Mail at Mule Creek State Prison, at
Ione, California addressed as follows:

### PARTIES SERVED

| NAME | ADDRESS | DATE SERVED |
|---|---|---|
| Office of the Clerk<br>U.S. Court of Appeals<br>for the Ninth Circuit | The Hon. Stephan R. Reinhardt<br>312 North Spring Street<br>Los Angeles, CA         90012 | 8-1-07 |
| Clerk of the Court<br>The Hon. L.K. Karlton<br>Chief Judge Emeritus | 501 I. Street, Suite 4-200<br>Sacramento, CA      95814 | |
| Clerk of the Court<br>The Hon. T.E. Henderson<br>Senior District Judge | 450 Golden Gate Avenue<br>San Francisco, CA 94102-3483 | |
| Jonathan Wolff<br>Deputy Attorney General | 455 Golden Gate Ave. Suite 11000<br>San Francisco, CA         94102 | |
| Robert Silen<br>Receiver, for CPHCRC | 1731 Technology Drive, Suite 700<br>San Jose, CA            95110 | |
| John Hagar,<br>Special Master | Judges Reading Room U.S.D.C.<br>450 Golden Gate Ave. 18th Fl.<br>San Francisco, CA         94102 | |
| Prison Law Office<br>Attn: Donald Specter | General Delivery<br>San Quentin, CA 94964 | |
| Michael Bien, | 155 Montgomery St. Floor 8 | 8-1-07 |

```
Rosen Bien & Asaro          San Francisco, CA 94104-4105        8-1-07

Pillsbury Winthrop          50 Fremont Street
Shawn Hanson, #109321       San Francisco, CA 94105

Bingham McCutchen           Three Embarcadero Center            8-1-07
Warren E. George            San Francisco, CA  94111
Bingham McCutchen           355 South Grand Avenue
John Morrisey #12219        Los Angeles, CA     90071
```

     I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

     Executed on ___August___ (Month) __\__ (Day), 2007, at Mule Creek State Prison, at Ione, California 95640-9000.

     DAVID JONES                          
                                     (Signature)

-6-

ATTACHMENT - I

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA      93581
Phone No. (661) 822-4402

June 27, 2011

Ms. Kamala Harris,                                  Re: Case No.   **09-15756**
California Attorney General
1300 "I" Street, STE 125
Post Office Box No. 944255
Sacramento, CA  94244-2550

Dear Kamala Harris:

     Greetings.  I hope this finds you well, settled into your new job, and taking
a "hands-on" approach to enforcing the State's sentencing laws according to their
terms and provisions.

     Because I have yet to receive a response on my April 4, 2011 letter from
you, and due to the importance of the issues raised in that correspondence, I
thought a second follow-up letter was warranted.

     To reiterate, my April 4th letter concerned our State's sentencing laws
and what I posit is the arbitrary manner in which these laws are being unequally
and unconstitutionally implemented (See: April 4, 2011 letter along with the
attached "LEGAL NOTICE" addressed to the Legislative Counsel).

     If for some reason you have not received my April 4, 2011 letter, along
with its attachments, I have enclosed a "second" duplicate copy of letters and
notices that went out on that date along with my June 20, 2011 letter to Diane
E. Boyer-Vine, the Legislative Counsel (See: Attachment).

     Ms. Harris, with all due respect, and in accord with due process — when
it comes to seeing that our State Sentencing Law are enforced -- I was taught
our laws are implemented based on the "Rule of Law" and the lawful enforcement
of our laws stops with the Attorney General.  As for standing to challenge the
way our sentencing laws are enforced, who has a greater interest in the way our
sentencing laws are being applied, than a person being subjected to those laws;
grounded, inter alia, on the claim that as a 1978 Prop. 7 sentenced person I
have been kept imprisoned long after my 1993 earned good-time and participation
date (See: 1978 Prop. 7 Initiative Statute; cf. Pen. Code §§ 1170(a)(1) and 2931,
stats 1977 C 165 §§ 15 & 38).

     In any case, I continue to posit that "truth in Sentencing" in California's
sentencing laws is a misstatement of fact and this State has no right to accept
the hundreds of millions in federal taxpayer funds for that purpose.  For example,
in my April 4, 2011 letter addressed to you, I claimed that "constructive fraud"
was committed by the Attorney General before you took office.  In any case, this
matter partially concerns the fact that the Attorney General misrepresented the
State's sentencing laws by claiming there was a penalty for first degree murder
and/or attempted murder of "**seven years to life**" (See: Swarthout v. Cooke, and
Matthew Cate v. Elijah Clay, (Slip Opinion) Case No. 10-333; 562 U.S. ____

                                    -1-

(2011)). As I stated in my April 4, 2011 letter to you in paragraph two, at the time the voters ratified the 1978 Prop. 7 Initiative Statute, this State only had **"two"** (2) ways in which a State prisoner could go out on parole before completion of the "punishment" for the offense (See: Pen. Code §§ 2931, et seq., and 3041(a)&(b); cf. SB-42 (1976) Categories One thru Four and Category Five; see also: Opening Brief in Case No. **09-15756** (9th Cir. 2009) at Addendum 4, p. 3; as for the State Supreme Court interpretation of the straight life **"FOR LIFE"** penalty see SB-42 at p. 3 and compare with In re Stanworth, 33 C.3d 176, **181-86** [187 C.R. 783] (1982); In re Jeanice D., 28 C.2d 210, **217** [168 C.R. 455] (1980) and People v. Walker, 18 Cal.3d 232, **243-44** [133 C.R. 520] (1976); cf. Pen. Code § 190, Stats 1978 C 579 § 2).

In regards to the U.S. Supreme Court's presumption of a 7 year to life penalty in California's sentencing laws and the disparate penalty for attempted murder, please note that at the time Prop. 7 was ratified by the voters in 1978, the penalty for attempted murder was a SB-42 Category Five crime with a penalty of one-half of a **"FOR LIFE"** term (See: Case No. **09-15756** Opening Brief at Addendum 4, supra). In 1977, the Legislature amended Pen. Code § 664 and fixed attempted murder at a term of 5, 6, or 7 years (See: Pen. Code § 664 @ Stats 1976 C 1139 § 265; cf. Pen. Code § 190, Stats 1978 C 579 §§ 2 & 27). In amending the penalty for attempted murder from 5, 6, or 7 years to 5, 7, or 9 years, the Legislature also changed the penalty for 2nd degree murder from 5, 6, or 7 years to 5, 7, or 11 years (Note: This amendment was part of the clean-up legislation for SB-42 and like AB-476, was designed to correct sentencing errors and create continuity in sentencing overlooked by SB-42 and AB-476. For example, there was no way to compute one-half of a "straight life" penalty for attempted crimes prior to SB-42 or Category Five **"FOR LIFE"** penalties for attempts codified by Pen. Code § 664. Therefore on Jan. 1, 1979, the date Pen. Code § 190, Stats 1978 C 579 § 2 was scheduled to go into effect, the Legislature placed the penalty for attempted murder into a separate category and this was the law after the enactment of Prop. 7. However, because the Legislature has no power to amend an initiative statute -- such as with Prop. 7's sentencing structure -- without voter approval, the penalties for first and second degree murder remained "...25 or 15 year terms, subject to good-time credits" (See: Case No. **09-15756** Opening Brief at Addendum 1 - 1978 Prop. 7; cf Cal. Const. Art. II § 10(c)). On January 1, 1994, the Legislature "changed" the penalty for attempted murder from 5, 7, or 9 years, back to a "straight life" **"FOR LIFE"** penalty with the possibility of parole. This once again created serious ambiguous inconsistencies in California's sentencing laws (See: Swarthout v. Cooke, and Matthew Cate v. Elijah Clay, supra; making it seem to the court that attempted murder had to be a lessor penalty than the penalties created by the voters of Prop. 7; when in point of fact, attempted murder is now a greater penalty fixed for the person's natural life (See: People v. Walker, supra, 18 Cal.3d at pp. **243-44**; Note: for continuity under Pen. Code § 1170(a)(1), the punishment for the crime was based on the "seriousness" of the offense, e.g., 1. involuntary manslaughter; 2. voluntary manslaughter; 3. second degree murder; 4. first degree murder; 5. first degree murder with special circumstance).

For the purpose of notice and so that there is no mistake on the matters being litigated, I have enclosed copies of my latest letter to the Legislative Counsel along with copies of the letters relating to the "Legal Notice" that went out with my April 4, 2011 letter to Diane E. Boyer-Vine.

Lastly, I am in the process of responding to a number of reporting media

-2-

on articles the've released dealing with the recent <u>Brown v. Plata</u>, case decided on May 23, 2011 (<u>Note</u>: I have attached a copy of a proposed letter to USA TODAY that you will note has no date and is unsigned because it has yet to be mailed.). You can see from its contents that some of the issues raised are somewhat contro- versial but they go directly to a few of the reasons this State is in so much financial difficulty. In any case, please understand that I have no reasons to want to air-out our State's dirty laundry but when a U.S. Citizen is kept unlawfully imprisoned beyond his earned release date just to further the political aspirations of those who have a financial interest in the prison business, I believe those persons should be held accountable.

If there are any questions you might have on any of my claims, please feel free to ask me. I have nothing to hide and I will respond to any and all your questions as candidly as I can. After all, the bottom line is that no one should go to prison today and wonder for 10, 20, or 30 years into the future, what "<u>pun- ishment</u>" he will serve for a criminal offense that for 60 years carried 5 years to life under the repealed ISL., 5, 6, or 7 years created by SB-42 in 1976, and, according to Prop. 7's Title, "25 or 15 year terms, <u>subject to good-time credits</u>", and nothing more (<u>See</u>: Pen. Code § 190.4, stating once the person has been found guilty of first degree murder and when special circumstances cannot be found true by a jury, the court will impose a "<u>term of 25 years</u>".).

Sincerely yours,

*Lawrence Remsen*

Lawrence Remsen


CC: Carol E. Lavacot, Trustee and Attorney at Law
    Jerry Allione, Trustee
    File


Attachments: 1. Proposed USA TODAY letter; 2. Copy of letters to State officials.

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA      93851
Phone No. (661) 822-4402

June 24, 2011

Edmund G. Brown Jr.,                              Re: Case No.  **09-15756**
Governor of California
State Capital Building
10 & L Streets
Sacramento, CA   95814

Dear Governor Brown:

    Greetings.  I hope this finds you well and that by the time you read this
you will have our State lawmakers working together to make this State as great
as it once was during the time you were in charge back in the late seventies.

    This is my second letter sent you since April 4, 2011.  As with my April
4th correspondence, this letter concerns my case pending review in the Ninth
Circuit Court of Appeals; that up until now, has never received a court decision
on the merits of my claims.  Since I have yet to received a response from you,
I have continued to litigate my claims with all due dilligence (Note: I am in
the process of submitting my habeas claims to be considered with the Three Judge
Panel overcrowding case that I intervened in back in 2007, which was recently
decided by the United States Supreme Court.).  In the meantime, I thought I would
try one last time to get your response regarding my habeas claims before they
go viral.

    Please take notice that because I was in a hurry to get all the April 4,
2011 notices out at the same time, I mistakenly summarized some parts my letter
to you on the subject of the State's sentencing laws, and how they are being
administered in violation of the "Rule of Law" (See: e.g., p. 2 at No. 1 - Prison-
er A).  I have corrected those errors and I have resubmitted that letter as cor-
rected (See: attached copy of my June 20, 2011 letter to Diane E. Boyer-Vine,
Legislative Counsel at Exhibit II contained therein).

    Governor Brown, for your information, I was almost 40 years old when I came
to prison for the commitment offense of second degree murder.  I am now almost
70 years old.  Since 1983, I have remained disciplinary free and have earned
nothing less than outstanding in my work supervisors reports since 1983 and my
threat level point ratio went from 83 to zero in 1993 (Note: All my Psych evalua-
tions say I pose a low risk to public safety if released.).  In short, according
to Pen. Code § 2931 as it was enacted in 1977 and adopted by the voters in the
Prop. 7 Initiative Statute, I should have been released on parole back in 1993;
according to the laws in effect on the date Prop. 7 was ratified and according
to the laws in effect at that time, I would have served one year on parole and
been discharged (See: Pen. Code § 2931, Stats 1977 C 165 § 38; cf. Pen. Code
§ 3000(a)(f), Stats 1977 C 165 § 42).

    What I find so crazy is the arbitrary and capricious way my penalty has
been administered as compared to other offenders who have been released after

-1-

having been sentenced to serve the same penalty for the same crime (See: Senate Bill 42 (1976) at p. 3 Category Four stating that this category carries the most serious crimes for which the penalty is less than **"life"**; cf. SB-42 Category Five). Now, when you compare the penalty for my offense against the 19 years, four months, and nine days served by "<u>Stanworth</u>" -- whose crime(s) were categorized in SB-42's Category Five -- who pled guilty to four counts of kidnap, two counts of first degree murder, two counts of attempted murder, oral copulation, robbery and rape, well, I get so mad I could chew nails if your get my meaning (<u>See</u>: <u>In re Stanworth</u>, 33 Cal.3d 176, **181-86** [187 C.R. 783] (1982)). As you can see for yourself, "<u>Stanworth</u>", supra, was given "straight life" **"FOR LIFE"** sentences; as opposed to a Prop. 7 penalty where a person is supposed to be released on parole "<u>subject to good-time credits</u>" (<u>Note</u>: somehow Stanworth was discharged off parole by the executive branch parole agency without constitutional authority and in violation of Art. V § 8(a) of the State Constitution; see <u>People v. Walker</u>, 18 Cal.3d 232, **243-44** [133 C.R. 520] (1976) [Held: "[A] term of life imprisonment expires or terminates <u>only</u> upon death or pardon, and **not** upon <u>parole</u>." [emphasis added]).

Governor Brown, with all due respect, every day I spend beyond my earned release date has been hell. Not only have I been deprived of my liberty and imprisoned in less than 15 square feet of space that I must share with another prisoner, but my son and daughter have been deprived of their father and my grandchildren have been deprived of ever knowing their grandfather (<u>Note</u>: I will not allow my family to visit me while I am in prison.). I pray you decide to intervene in this matter before it takes on a whole new meaning once the Ninth Circuit decides the issues raised in my case.

Respectfully submitted,

*Lawrence Remsen*

Lawrence Remsen


CC: Carol E. Lavacot, Trustee and Attorney at Law
    Jerry Allione, Trustee
    Thelton E. Henderson, U.S. Dist. Court Judge
    Peter Espinoza, Los Angeles Superior Court Judge
    File

Attachment: Copies of 1. Proposed News Release; 2. Letters; **3.** Notice, etc.

P/S: Governor Brown, you may want to consider the same gain time laws used to control overcrowding as Florida. They use credit earning to keep their prisoner population within 96% of their prison systems designed capacity based on a minimum of 60 square feet in a cell and 70 square feet in a dorm (<u>See</u>: American Correctional Association Standards adopted by this state and compare with <u>Plata v. Schwarzenegger</u>, Case No. C01-1351 TEH; <u>Rhodes v. Chapman</u>, 452 U.S. 337, **364** (1981). This might be a better solution to the overcrowding problems than sending "State" sentenced prisoners back to county where -- according to Pen. Code §§§ 3 and 18-19.2 -- the county no longer has jurisdiction over the State sentenced prisoner.

ATTACHMENT - II

C
O
P
Y

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA    93581
Phone No. (661) 822-4402

June 20, 2011

Office of Legislative Counsel                    Re: Case No. ___09-15756___
Attn: Ms. Diane E. Boyer-Vine
State Capitol Rm. 3021
925 L. Street
10 & L Streets
Sacramento, CA    95814

Dear Diane E. Boyer-Vine:

    I hope this finds you and the rest of our State Government Civil Servants
in good-health and doing the State's business to the best of their abilities.

    I am writing you in regards to my letter addressed to you dated April 4,
2011.  On April 15, 2011, your office responded to the **"LEGAL NOTICE"** addressed
to you on 4/4/11.  However, because of my ongoing litigation, I have not had
time to respond until now (Note: It was on Tuesday, the 19th of April, 2011,
that I received a response to my 4/4/11 letter from your office).  In the letter
from your office, it states receipt of my letter, but apparently misinterpreted
my "NOTICE" as some kind of request for legal assistance.  The action to my "no-
tice" taken by your office was to refer my letter back to me, stating that your
office was unable to fulfill my request (Note: The letter was signed by Dragomir
Cosanici, Librarian).  I would request that you note my 4/04/11, legal notice
addressed to you was not a request, infra.

    Please take notice that my letter dated April 4, 2011 addressed to you was
a **"LEGAL NOTICE"** designed to notify the Legislative Counsel that as a ministerial
agency created by the Legislature, the Parole Board is, and has been since 1977,
acting outside its conferred authority to make Rules and Regulations for parole
suitability hearings for Prop. 7 offenders; in violation of numerous provisions
of the State and Federal Constitution (See: Attached **1.** "News Release"; **2.** Letter
to Governor Brown dated 4/4/11; **3.** Letter to Kamala Harris, Attorney General).

    The purpose of the "Legal Notice" was so that the appointed and elected
officials who knew, or should have known that those persons subjected to the
terms and provisions of Prop. 7, are having the penalties unconstitutionally
administered by a ministerial agency acting in excess of its statutory authority
to fix terms of Prop. 7 offenders, after having their term fixing powers repealed
for abuse (See: "LEGAL NOTICE" mailed to your attention dated 4/4/11; cf. "News
Release" at ¶¶ 1 & 2; see: correspondence copies to Governor Brown; Ms. Kamala
Harris, Attorney General and letter to Robert Doyle, BPH Chairman).

    Please take notice that so we are on the same page regarding the purpose
of the **"LEGAL NOTICE"** sent to your attention on 4/04/11, was **not** a request for
legal help nor advice.  The legal notice was mailed to your attention specifically
so there is no mistake that you, as the Legislative Counsel, have been noticed
that Prop. 7 Offenders, inter alia, are having their sentences unconstitutionally

-1-

administered in violation of the "Rule of Law". Fundamentally, the "LEGAL NOTICE" was to let our appointed and elected officials as well as their appointed counsels know there are consequences for allowing United States Citizen to be imprisoned beyond their earned release dates (<u>See</u>: 1978 Prop. 7 Initiative's Title; Pen. Code § 2931; <u>Remsen v. Brown, et al.</u>, **09-15756** (9th Cir. 2009)).

Lastly, for your edification, it is my understanding that only the Legislature has the power to define a crime and fix the penalty of its offense and that this power cannot be delegated elsewhere; absent a constitutional amendment (<u>See</u>: e.g., Cal. Const. Art. III § 3; <u>cf</u>. <u>Witkin & Epstein</u>, Crim. Law 2ed Vol. 1 § 12 (1989)). In this case there was no delegation nor constitutional authorization to vest legislative and judicial powers to the executive branch Parole Agency (<u>See</u>: 1978 Prop. 7 Initiative; <u>cf</u>. Pen. Code § 2931 and § 3041(a)&(b)). In point of fact, Prop. 7 voters were not asked to reenact any part of the repealed ISL -- such as reinvesting the Parole Agency with term fixing powers -- nor were they asked to adopt Pen. Code § 3041(a)&(b) as the means for fixing Prop. 7 offenders parole release dates. As shown by Prop. 7, the voters were only asked to adopt Pen. Code § 2931 as their implementing mechanism for fixing the parole release dates for Prop. 7 offenders (<u>See</u>: Cal. Const. Art. 1 § 26; Art. 1 § 9; Art II §§ 8(d) & 10(c); <u>and</u> Art. III <u>§ 3</u>).

Ms. Boyer-Vine, please understand that our reasons for the "<u>LEGAL</u> <u>NOTICE</u>" is so that the Legislative Counsel is made aware of our claims and that we intend to bring all the federal constitutional powers at our disposal to hold accountable those responsible for the loss of billions of taxpayer dollars; as a result of incarcerating and imprisoning Prop. 7 offenders beyond their earned release dates (<u>See</u>: 1978 Prop. 7; Pen. Code §§ 1170(a)(1) & 2931; <u>cf</u>. SB-42 (1976)). What you decide to do with this notice is up to you but be assured there will be a hearing on these matters and those persons who knew, or should have known that billions of taxpayers dollars have been wasted just because our lawmakers would not enforce its laws as written will be held to answer under R.I.C.O.

As the Legislative Counsel, you have access to the record of the hearing in which Senator Briggs was sanctioned for violating his oath of office and placing Prop. 7 as an initiative in front of the voters which created the disparities in SB-42, when according to law, Briggs only had the power of referendum at his disposel. At that point, the Legislature should have petitioned the State Supreme Court to void Prop. 7 to protect SB-42 and its Seven Category Sentencing Structure that made up the Determinate Sentencing Law; so that the Legislature's "<u>purpose</u>" and "<u>policy</u>" declared in SB-42, would be enforced according to AB-476 codified at p. 3 in 1977 (<u>See</u>: Pen. Code § 1170(a)(1), Stats 1977 C 165 § 15). In short, this case shows that according to State and Federal law -- based on the Legislative declaration contained in Pen. Code § 1170(1)(1) -- there can be no "<u>uncertain</u>" penalties for crimes imposed on those whose offense was committed after July 1, 1977.

Sincerely yours,

*[signature]*

Lawrence Remsen

CC:  Edmund G. Brown Jr.
     Kamala Harris
     Robert Doyle, BPH Chairman
     Matthew Cate, Sec. CDC&R
     Honorable Peter Espinoza, Los Angeles Superior Court Judge
     File

## T A B L E   O F   E X H I B I T S

| EXHIBIT NO. | DESCRIPTION | NUM. OF PAGES |
|---|---|---|
| I. | "News Release" Regarding Case No. 09-15756 Ninth Circuit Court of Appeals. | 2 |
| II. | April 4, 2011 Letter to Governor Brown regarding Notice to Legislative Counsel and statement concerning disparities in the State's Sentencing Laws. | 4 |
| III. | April 4, 2011 letter to Kamala Harris, State Attorney General, regarding "LEGAL NOTICE" to Legislative Counsel.  Also statement on "constructive fraud" regarding misrepresentation of the law to the U.S. Supreme Court. | 2 |
| IV | Letter to Robert Doyle, BPH Chairman regarding "LEGAL NOTICE" to the Legislative Counsel and Parole Agency assuming powers where none was conferred resulting in Prop. 7 Offenders being imprisoned at taxpayer expense beyond their earned release date fixed by Pen. Code § 2931 as it was adopted by the voters as their means for fixing the parole release date for Prop. 7 offenders. | 3 |
| V. | Duplicate Copy of "LEGAL NOTICE" mailed to the Legislative Counsel on April 4, 2011. | 3 |
| VI | Copy of Letter from Legislative Counsel on April 15, 2011, misconstruing Plaintiff's "LEGAL NOTICE" dated April 4, 2011. | 1 |

E X H I B I T  -  I

NEWS RELEASE                    NEWS RELEASE                    NEWS RELEASE

    The following case now under review in the Ninth Circuit Court of Appeals, concerns the issue, of whether or not the way California State prisoners sentenced to serve "<u>punishment</u>" by imprisonment, as created by the 1978 Prop. 7 Murder Penalty Initiative Statute, are having their sentences constitutionally administered under the "Rule of Law" (<u>See</u>: CASE NO. <u>09-15756</u> (9th Cir. 2009).

    (1). As of July 1, 1977, California's Legislature declared that the purpose for imprisonment for crime is "<u>punishment</u>" for the crime itself (<u>See</u>: Pen. Code § 1170(a)(1), Stats 1977 C 165 § 15). On Nov. 7, 1978, California voters passed into law the 1978 Prop. 7 Murder Penalty Initiative Statute. In that initiative, the electorate approved of changing the penalty for first degree murder "from life", to "25 years to life" (<u>See</u>: 1976 Senate Bill 42 at Category Five; <u>cf</u>. 1978 Prop. 7's Title). In the same legislative act, and as stated in the initiative's title, the electorate approved of "<u>increasing</u>" the penalty for second degree murder from 5, 6, or 7 years, to a 15 year term, subject to good-time credits, before being released on parole (<u>See</u>: Prop. 7's Title and <u>cf</u>. Cal. Const. Art. II § 8(d)). After earned credits, this increased the penalty for second degree murder by 3½ years over the maximum 7 year term set in Senate Bill 42's Category Four list of crimes (<u>See</u>: SB-42 Ways & Means Bill @ p. 3). In the same initiative, the voters stated parole was prohibited except by service of "<u>25 or 15 year terms, subject to good-time credits</u>", and set the maximum term for first degree murder in Pen. Code § 190.4 -- when special circumstances are <u>not</u> found -- at "<u>a term of 25 years</u>" (<u>See</u>: Prop. 7's Title; Pen. Code § 2931, stats 1977 C 165 § 38 and Pen. Code § 190.4). Therefore, the question becomes how, under the "Rule of Law", can the finality of the Prop. 7 offender's "<u>punishment</u>" be determined by the same branch as charged with the prosecution; in a law where the voters adopted the State parole credit earning provisions of Pen. Code § 2931, created as the Determinate Sentencing Law's method of fixing the parole release dates for Category 1 thru 4 offenders as set forth in SB-42's Seven Category of Criminal Offenses (<u>See</u>: 1976 Senate Bill 42 Ways & Means Bill @ pp. 1-3; <u>cf</u>. Cal. Const. Art. III § 3).

    (2). By repealing the State's Indeterminate Sentencing Law and enacting the Determinate Sentencing Law, the Legislature "found and declared" that the "purpose of imprisonment for crime is punishment" (<u>Id</u>. at Pen. Code § 1170(a)(1), Stats 1977 C 165 § 15). Therefore, the question evolves itself into how the finality of a Prop. 7 prisoner's sentence can be imposed by a court of law -- as it must be under the "<u>purpose</u>" and "<u>policy</u>" of the Determinate Sentencing Law -- when the penalty to be inflicted is conditioned upon the arbitrary whim and caprice of an executive branch board. In short, how is it that in the case of a Prop. 7 offender, the actual penalty for crime is being determined by the same branch as those charged with his prosecution; when, under California law, the power to determine punishment for crime is strictly a Legislative function, and when the power to impose the actual penalty to be inflicted is strictly a judicial power. This seemingly proves that the way Prop. 7 offenders are now having their "punishment" decided by the same branch as charged with their prosecution, makes the penalty fixing process fundamentally unfair. This is especially true when there is no way to determine the will of the Legislature under its declared "<u>purpose</u>" of "<u>punishment</u>" for the crime itself; when each offender committing the same offense is having a different "<u>punishment</u>" inflicted for the same crime by the determinations of an executive branch board. The result is that those adversely affected are being denied equal protection of the law as well as due process against the prohibition of granting special privileges and like pains and penalties, in violation of the State and Federal Constitutions. As shown throughout Case No. <u>09-15756</u> (9th Cir. 2009), the way Prop. 7 offenders are now having the finality of their penalties determined -- 10, 20, or 30 years into the future by the ministerial board within the same branch charged with prosecution -- offends due process and equal protection of the law (<u>See</u>: 1976 Senate Bill 42; <u>cf</u>. Assembly Bill 476 at p. 17). Furthermore, the way a Prop. 7 offender is having his penalty fixed by the same agency who had its term fixing powers repealed for abuse, violates the State Constitution's Equal Protection and Separation of Powers Clauses under Art. 1 § 7(a)&(b) and Art. III § 3 (<u>See</u>: <u>Meyers v. State of Nebraska</u>, 262 U.S. 390, <b>399-400</b> [43 S.Ct. 625, 67 L.Ed. 1042] (1923) [Re: Equal Protection of the Law to like pains and penalties]; as to Separation of Powers see: <u>McHugh v. Santa Monica Rent Control Bd.</u> 49 Cal.3d 348, <b>355-62</b>, <b>364-70</b>, <b>379-80</b> [261 C.R. 318] (1989); <u>Bagley v. City of Manhattan Beach</u>, 18 Cal.3d 22, 24-31 [132 C.R. 668] (1976) [Re: unlawful delegation and standards and safeguards];

-- Page 1 of 2 --

People v. Clay, 18 C.A.3d 964, 968-71 [96 C.R. 213] (1971); cf. Salt Lake City v. Ohms, 881 P.2d 844, 846-48, 864-69 [245 Utah Adv. Rep. 22; 1994 Utah LEXIS 56] (Aug. 5, 1994, Utah Supreme Court) [Re: Unlawful usurpation and/or violation of Separation of Powers]; cf. Fed. Habeas Prac. & Proc. 3ed Vol. 2 (Randy Hertz & James Liebman) @ §§ 18.1b & 32.4 (2000)).

    (3). By enacting the 1978 Prop. 7 Initiative Statute, the voters were given only once choice as to the fixing of parole release dates for qualifying Prop. 7 offenders. As shown in the initiative, the electorate chose Pen. Code § 2931, as their means for fixing the parole release dates of Prop. 7 offenders not sentenced to serve a 1976 SB-42 "FOR LIFE" Category Five penalty (See: 1978 Prop. 7 Initiative and cf. 1976 SB-42 at p. 3). Furthermore, by the voters adoption of Pen. Code § 2931, as their implementing mechanism for fixing the offender's parole release date, the electorate excluded Pen. Code § 3041. Therefore, because Pen. Code § 3041 was not mentioned in the initiative, under the "Rule of Law", it must be excluded (See: Cal. Const. Art. I § 9; Art. II § 8(d); Art. II § 10(c); Note: the companion case to this case pending a decision in the Ninth Circuit was filed on Nov. 1, 2010, in the State Supreme Court and is in the process of being presented to the United States District Court for the Eastern District and/or combined with Case No. 09-15756).


Authored/Submitted by:


_Laurence Remsen_                    5/23/11
Laurence Remsen                      Date


CC:  Edmund G. Brown Jr.
     Tara G. Cantil-Sakauye
     Micheal D. Hawken
     Thelton E. Henderson
     Mirian Vogel
     Peter Espinoza
     Jerry Allione
     Carol E. Lavacot
     Eric Weaver
     Byrn Watson


---

NOTE: In the cases concerning Prop. 7 and the way the author and Prop. 7 offender's are having the sentences administered -- in violation of the State and Federal Constitutions -- the issues for review stems from the fact that in its 1976 Senate Bill 42, the State Legislature repealed the Indeterminate Sentencing Law (ISL), along with its "minimum to maximum" sentencing structure, which under the repealed law, was its main feature. Both cases argue that any attempt to reenact any part of the repealed ISL's "minimum to maximum" sentencing structure without the subject having been submitted to the Prop. 7 electorate, would be unconstitutional and void on its fact (See: Cal. Const. Art. I § 26; Art. II § 8(d); Art. IV § 9; Gov. Code § 9509; cf. Witkins, Const. Law Vol. 7 §§ 101-103 [Title/Subject/Reenactment/Single Subject]; 104-114 [vagueness & delegations]; 497 [adoption of repealed law]; 552 [right to judicial review]; & 556 [questions of law and fact] (1988); cf. Witkin & Epstein, Crim. Law 2ed Vol. 1 § 12 (1989) [Re: unlawful delegation]).

EXHIBIT - II

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA      93581
Phone No. (661) 822-4402

April 4, 2011

Edmund G. Brown Jr.,                           Re: Case No. __09-15756__
Governor of California
State Capital Building
10 & L Streets
Sacramento, CA   95814

Dear Governor Brown:

        Please find attached hereto **"LEGAL NOTICE"** mailed to the Legislative Counsel
along with notice of my "Opening Brief" filed in the above entitled case now
on review with the Ninth Circuit Court of Appeals.

        The Issues presented in the above entitled case have never been adjudicated
on their merits in a State court proceeding nor in any federal court where I
was a party.  This case deals with the way prisoners subjected to the 1978 Prop.
7 Initiative Statute are having their sentences administered (Note: There is
a more comprehensive brief filed as an original habeas requesting declarative
and injunctive relief in the process of being filed in the United States District
Court stemming from Case No. S187826, denied by the State Supreme without a ruling
on the merits (See: Cal. Const. Art. VI § 14).  Both cases claim there is "indis-
putable factual evidence" obtained from the State Archives that proves California
law no longer provides for uncertain penalties for crimes committed after July
1, 1977 (See: Ninth Circuit Case No. 09-15756 and cf. Cal. Supreme Case No. S187-
826, and exhibits attached thereto).

        I know you are very busy and since you are the one who signed the laws re-
pealing uncertain penalties for crime into affect, I won't make this into a book.
However, I would like you to pay special attention to the issues raised with
the Legislative Counsel.  For example, we have indisputable proof that as of
7/1/77, with the exception of Cal. Const. Art. V § 8, there were only two ways
a person could be released/paroled before completion of their sentence (See:
Attached Notice.).  This letter and the "notice", concerns the 1978 Prop. 7 Ini-
tiative and the fact that it was the voters who chose Pen. Code § 2931 as their
means for fixing the parole release dates for Prop. 7 offenders (See: 1978 Prop.
7's Title; cf. Pen. Code § 2931, Stats 1977 C 165 §§ 38 & 42).  Both my cases
show that by the "Rule of Law", it was the voter's choice to adopt Pen. Code
§ 2931 as their means for fixing Prop. 7 offenders' parole release dates.  They
did **not** choose Pen. Code § 3041(a)&(b).  It's that simple and according to United
States Supreme Court precedent on these matters, that is how my case should be
resolved (See: e.g., HAYWARD V. Marshall, 2010 (slip opinion) Case No. 06-55392
at pp. 18-22, filed April 22, 2010).

        After 10 years of working on this matter, I will be arguing a breach of
covenant and fair dealings along with being illegally imprisoned beyond my earned
release date.  I will also be asking the Court to take judicial notice of a "con-
structive fraud" committed by the State Attorney General in my case and in the

-1-

recent "Swarthout v. Cooke and Matthew Cate v. Elijah Clay cases heard in the
United States Supreme Court (See: Attached Notice). In my Ninth Circuit case,
I will ask the Court to certify the issues of law I am raising to the United
States Supreme Court to resolve -- to a finality -- such matters as are presented
to the Legislative Counsel and contained in the cases I have pending.

Lastly, I am claiming that for far too long, this State has allowed special
interest groups to pay off our law makers. This has made a mess of the state's
sentencing laws for which California has accepted over 350 million dollars in
federally funded tax dollars for "Truth in Sentencing". This has taken the penal-
ties originally fixed in SB-42's Seven Category Sentencing Structure and morphed
them into a system of penalties that is costing the State taxpayers billions
of dollars each year. As one quick example, lets take SB-42's Seven Category
Sentencing Structure. When the penalties for each crime was fixed and placed
into one of the Seven Categories, those penalties were fixed based on the amount
of time a person served for those offenses from 1918 through 1977 (See: SB-42,
Cf. 1975 Adult Authority Rule 75/30 fixing the terms after the first 90 days
of incarceration pursuant to In re Rodriquez, 14 Cal.3d 630, 652, n. 18, 653-54
[122 C.R. 552] (1975); Santa Clara Law Review Vol. 17 - "The End of the Indeterm-
inate Sentencing Law"). To further illustrate how terribly wrong the State's
Sentencing Laws have become, when the Legislature enacted SB-42, they fixed the
penalties for the first four categories based on the prisoner's ability to reduce
their sentences by 1/3, "subject to good-time and participation credits" (See:
Pen. Code § 2931 thru 2932, Stats 1977 C 165 §§ 37-39). Now, under following
sentencing guidelines, lets say we have four State prisoners all sentenced to
serve 10 years:

1. Prisoner A was sentenced on 7/1/77. Therefore his ten year sentence
   is subject to Pen. Code § 2931 credits and receives 1/3 off the ten year
   sentence. Based on the laws existing on July 1, 1977, that means he
   must serve 7 years plus 1 year on parole for a total of 8 years, two
   years less than the penalty for the crime;

2. Prisoner B's ten year sentence is subject to Pen. Code § 2933.1 credits
   because his crime is subject to the provisions of Pen. Code § 667.5.
   Therefore, he must serve 8 years plus 3 years on parole for a total of
   11 years, one year more than the penalty for his offense;

3. Prisoner C was sentenced after Jan. 1, 1983, and his ten year sentence
   is subject to Pen. Code § 2933 half-time credits and must serve 5 years
   on his ten year penalty plus 3 years on parole for a total of 8 years,
   two years less than the ten year sentence;

4. Prisoner D's ten year sentence is subject to Pen. Code § 2933 and must
   serve 5 years before being paroled but instead of serving parole, he
   is deported and serves only 5 years of the ten year penalty.

This gives you some idea of what a mess our sentencing laws are in, and
that is only the tip of the iceberg. In my own case, I was sentenced to serve
the penalty for second degree murder after July 1, 1977 and have now served almost
30 years for a crime that carried 5 to life under the ISL, prior to July 1, 1977,
5, 6, or 7 years under the DSL., and based on the uncertain minimum to maximum
penalty schemes adopted from a repealed laws sentencing structure by Senator
Briggs in his 1978 Prop. 7 Initiative -- a subject which was **not** submitted to

-2-

the voters -- I have been denied my vested right to be paroled according to law.
As far as what I have been able to discover, I should have been paroled according
to my earned credits in 1993. After all, the voters did chose Pen. Code § 2931
as their means for fixing Prop. 7's Offenders parole release dates (See: 1978
Prop. 7's Title; cf. Pen. Code § 2931). As for parole, 19 other states have
done away with parole without suffering any ill affects and we can't find where
parole in and by itself, has ever prevented a crime from being committed.
Therefore, unless California changes its direction, the taxpayers will continue
to suffer needless expenditures in this area; while at the same time, those who
are in need of our tax dollars continue to suffer and go without.

Governor Brown, in an abundance of caution, I have sent you a copy of the
"LEGAL NOTICE" sent to the Legislative Counsel because I believe you have the
power as well as the duty to correct the problems I have presented to you and
as set forth in my two ongoing cases (See: e.g., Ninth Circuit Case No. 09-15756;
cf. 2009 State Habeas now in the process of being filed in the U.S. District
Court). After all, the claims I am raising in both cases concern the same issues
you dealt with back in 1976 through 1977, when as Governor, you signed the legis-
lative repealing the State Indeterminate Sentencing Law.

Respectfully submitted,

Lawrence Remsen


Attachments: Legal Notice to Legislative Counsel


CC: Carol E. Lavacot, Trustee and Attorney at Law
    Karan Kelly, Attorney at Law
    Eric Weaver, Attorney at Law
    Jerry & Paul Allione, Trustee & Attorney at Law
    Daniel J. Broderick, U.S. Defender

    File

1    P R O O F   O F   S E R V I C E   B Y   M A I L

2    Case Name:                Lawrence Remsen,

3                    Petitioner and Appellant, in pro se

4                               vs.

5                    KAMALA HARRIS, Attorney General; MATT CATE,
                     Sec. of CDC&R; ROBERT DOYLE, BPH Chairman;
6                    F. GONZALES, Warden; & EDMUND G. BROWN JR.,
                     Governor of the State of California,
7
8                    Respondents and Appellees, et al.

9    Case Number:              09-15756

10       I GERARDO ESTRADA, declare and state as follows: I am 18 years or
     older and not a party to this action.  My address is Post Office Box No.
11   608, Tehachapi, California 93581.

12       On  April  (Month) ~4  (Day), 2011, I served the attached: OFFICIAL
     NOTICE WITH ATTACHED OPENING BRIEF WITH ADDENDA 1 THRU 10, by placing
13   a true copy enclosed in a sealed envelope with postage fully paid thereon,
     in the United States Mail, here at California Correctional Institution
14   (CCI), at Tehachapi, California, addressed as follows:

15                         PARTIES SERVED

16   NAME                        ADDRESS                       DATE SERVED

17   The Legislative Counsel     State Capitol, Rm. 3021           4/4/11
     Ms. Diane E. Boyer-Vine     Sacramento, CA  95814
18
     Edmund G. Brown Jr.         State Capitol Bld.                4/4/11
19   California Governor         10 & L Street
                                 Sacramento, CA  95814
20
     Kamala Harris,              1300 "I" Street, STE 125          4/4/11
21   Attorney General            Post Office Box No. 944255
                                 Sacramento, CA  94244-2550
22
     Matt Cate, Sec. of          Post Office Box No. 942883        4/4/11
23   CDC&R                       Sacramento, California 95814

24   Board of Parole Hearings    Post Office Box No. 4036          4/4/11
     Attn: Robert Doyle (C)      Sacramento, CA 95812-4036 .
25
         I declare under penalty of perjury and under the laws of the State
26   of California, the foregoing is true and correct and that this declaration
     was executed on  April  (Month) 4th  (Day), 2011, at the Tehachapi
27   Correctional Institution in Tehachapi, California.

28              GERARDO ESTRADA          G. Estrada
                                         (Signature)

E X H I B I T  -  III

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA        93581
Phone No. (661) 422-4402

April 4, 2011

Ms. Kamala Harris,                              Re: Case No. __09-15756__
California Attorney General
1300 "I" Street, STE 125
Post Office Box No. 944255
Sacramento, CA  94244-2550

Dear Kamala Harris:

     Please find attached hereto "LEGAL NOTICE" mailed to the Legislative Counsel
along with notice of the opening brief in the above entitled case now on review
in the Ninth Circuit Court of Appeals.

     The issues presented in the above entitled case have never been adjudicated
on their merits in a State court proceeding nor in any federal court where I was
a party.  This case deals with the way sentences for the offenders subjected to
the 1978 Prop. 7 Initiative Statute are being administered (Note: I also have
a more comprehensive brief filed as an original habeas and petition for declaratory
and injunctive relief pending in the State Supreme as Case No. **S187826**).  Both
pending cases have indisputable factual evidence obtained from the State Archives
proving that California law does not provide for uncertain penalties for crime
for those persons sentenced after July 1, 1977 (See: Ninth Circuit Case No. **09-
15756** and cf. Cal. Supreme Case No. **S187826**, and exhibits attached thereto).

     I know you are very busy so I won't make this into a book, but I would like
you to pay special attention to the issues I raised with the Legislative Counsel.
For example, on page 2, I bring up the fact that when Prop. 7 was ratified by
the voters, the State only had two ways in which a person could be released (parol-
ed) before completion of their valid sentences.  I posit that the voters chose
Pen. Code § 2931 as their means for fixing our parole release dates; **not** Pen.
Code § 3041(a)&(b).  It's that simple and according to United States Supreme Court
precedent on these matters, that is how this case should be resolved (See: e.g.,
Hayward v. Marshall, 2010 (slip opinion) Case No. **06-55392** at pp. 18-22, filed
on April 22, 2010).

     After 10 years of working on this matter, I will be arguing a breach of cove-
nant and fair dealings along with being illegally imprisoned beyond my earned
release date in this case.  I will also be asking the Ninth Circuit to take
judicial notice of a "constructive fraud" committed in the recent Swarthout v.
Cooke and Matthew Cate v. Elijah Clay matters heard by the United States Supreme
Court.  In my own Ninth Circuit case, I will ask the Ninth Circuit to certify
the issues of law I am raising to the United States Supreme Court to resolve to
a finality, such matters as are presented to the Legislative Counsel and contained
in both my pending cases.

     Lastly, I posit that for far too long, this State has allowed special interest
groups to pay off our legislators.  This has made a mess of the State's sentencing
laws for which California has accepted over 350 million in federally funded tax

-1-

dollars for "Truth in Sentencing". This has taken the penalties originally fixed
in SB-42's Seven Category Sentencing Structure and morphed them into a system
of penalties that is costing the State taxpayers billions of dollars each year.
Let me give you a quick example. Take SB-42's Seven Category Sentencing Structure.
When these penalties for the crimes in each category were fixed, those penalties
were fixed based on the amount of time a person served for those offenses from
1918 through 1977 (See: SB-42 and cf. Santa Clara Law Review Vol. 17 - The End
of the Indeterminate Sentencing Law" and Adult Authorities Rule 75/30 setting
each persons term within 90 days when the prisoner enters the custody of CDC;
pursuant to In re Rodriquez, 14 Cal.3d 630, **652. 653-54**, n. 18 [122 C.R. 552]
(1975)). To further illustrate how terribly wrong the State's Sentencing laws
have become, when the Legislature enacted SB-42, they fixed the penalties for
the first four categories based on the prisoner reducing by 1/3 the term, "subject
to good-time and participation credits" (See: Pen. Code §§ 2930 thru 2932, Stats
1977 C 165 §§ 3739). Now, lets say we have four State prisoners all sentenced
to serve 10 years:

1. Prisoner **A**'s ten year sentence is subject to Pen. Code § 2931's credits
   and receives one third off the ten year sentence. That means he must
   serve 7 years plus 3 years on parole for a total of ten years;

2. Prisoner **B**'s ten year sentence is subject to Pen. Code § 2933.1 and he
   must serve 8 years plus 3 years on parole for a total of 11 years, one
   year more than the penalty for his offense;

3. Prisoner **C**'s ten year sentence is subject to Pen. Code § 2933 half-time
   credits and must serve 5 years on his ten year penalty plus 3 years on
   parole for a total of 8 years, two years less than the ten year sentence;

4. Prisoner **D**'s ten year sentence is subject to Pen. Code § 2933 and must
   serve 5 years before being paroled but instead of serving parole, he is
   deported and served only 5 years of the ten year penalty.

This gives you some idea of what a mess our sentencing laws are in and that
is only the tip of the iceberg.

As for parole itself, 19 other States have done away with parole entirely
without suffering any ill affects. Parole has never stopped a crime from being
committed and unless California changes its direction, the taxpayers will continue
to suffer needless expenditures in this area; while at the same time, those who
are in need of our tax dollars continue to suffer and go without.

In a separate letter, I am sending Governor Brown a copy of the "LEGAL NOTICE"
to the Legislative Counsel. The difference is I am alluding to the fact that
the Governor has known all along of the issues I am now raising in the Ninth Cir-
cuit and pending in the State Supreme. After all, Governor Brown signed the legis-
lation that repealed the State Indeterminate Sentencing Law back in 1977.

Respectfully submitted,

*Lawrence Remsen*

Lawrence Remsen

CC: Karen Kelly, Attorney at Law
    Carol E. Lavacot, Trustee and Attorney at Law
    File

E X H I B I T  -  IV

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA      93581
Phone No. (661) 422-4402

April 4, 2011

Mr. Robert Doyle,                                    Re: Case No.   **09-15756**
Chairman of California
Board of Parole Hearings
Post Office Box No. 4036
Sacramento, CA 95812-4036

Dear Mr. Robert Doyle:

    Please find attached hereto "LEGAL NOTICE" mailed to the Legislative Counsel
along with notice of the opening brief in the above entitled case now on review
in the Ninth Circuit Court of Appeals.

    The issues presented in the above entitled case have never been adjudicated
on their merits in a State court proceeding nor in any federal court where I was
a party.  This case deals with the way those subjected to the 1978 Prop. 7 Initia-
tive Statute are having their sentences administered (Note: There is a more compre-
hensive brief filed as an original habeas and petition for declaratory and injunc-
tive relief pending in the State Supreme as Case No. **S187826**.).  Both pending
cases have indisputable factual evidence obtained from the State Archives proving
that California law no longer provides for uncertain penalties for crime for those
persons sentenced after July 1, 1977 (See: Ninth Circuit Case No. **09-15756** and
cf. Cal. Supreme Case No. **S187826**, and exhibits attached thereto).

    I know you are very busy but since the Parole Agency continues to assert
it has the power to make Rules and Regulations to make law that denies me my vested
rights, after the power to fix term under the ISL., was repealed, I thought you
should be aware that under California law, after 1977, uncertain penalties for
crime ceased to exist.  Therefore, I am asking you to pay special attention to
the issues I raised with the Legislative Counsel (See: Enclosed Notice).  For
example, as of the date this State repealed its Indeterminate Sentencing law,
State law only provided for two ways in which a person could be paroled before
completion of a valid sentence (See: Enclosed Notice).  This notice concerns Prop.
7 and the fact that when it was ratified by the voters, it was they who chose
Pen. Code § 2931 as their means for fixing Prop. 7's offenders parole release
dates; for those who qualified under Prop. 7 and **not** Pen. Code § 3041(a)&(b) (See:
1978 Prop. 7 Initiative's Title; cf. Pen. Code §§ 2931 together with 3000(a)&(f),
stats 1977 C 165 §§ 38 and 42).

    Mr. Doyle, since you are the Chairman responsible for confining the Parole
Agency's powers to SB-42 Category Five "**FOR LIFE**" offenders, you might want to
know that throughout my cases, I have offered what I posit is indisputable factual
evidence, that according to the "Rule of Law", the voters chose Pen. Code § 2931
as their means for fixing a Prop. 7 offender's parole release dates and it was
the voters who expressly excluded Pen. Code § 3041(a)&(b), et seq.  It's that
simple and according to United States Supreme Court precedent on these matters,
that is how this case should be resolved (See: e.g., Hayward v. Marshall, 2010

-1-

(slip opinion) Case No. <u>06-55392</u> at pp. 18-22, filed on April 22, 2010).

After 15 years of research and litigation on this matter, in both my cases, I will be arguing a breach of covenant and fair dealings by CDC&R and the BPT/PBH for their part in my being unlawfully incarcerated beyond my earned release date. Furthermore, I will be asking the Ninth Circuit for declaratory and injunctive relief and for them to take judicial notice of a "constructive fraud" committed by the BPH and State Attorney General in the recent <u>Swarthout v. Cooke</u> and <u>Matthew Cate v. Elijah Clay</u> cases recently decided by the United States Supreme Court (<u>See</u>: Enclosed Notice). In my own Ninth Circuit case, I will also ask the Ninth Circuit to certify some of my issues of law I am raising to the United States Supreme Court. I will move the Court(s) to resolve to a finality, such matters as are presented to the Legislative Counsel and contained in both cases I have pending.

Lastly, it is my position that for far too long this State has allowed special interest groups to pay off our legislators in violation of 501C3 of the federal income tax code. This has made a mess of the State's sentencing laws by our play for pay lawmakers for which California has accepted over 350 million in federally funded tax dollars for "Truth in Sentencing". This has taken the penalties originally fixed in SB-42's Seven Category Sentencing Structure and morphed them into a system of penalties that is costing the State taxpayers billions of dollars each year for no return on their investments.

As one quick example, lets take SB-42's Seven Category Sentencing Structure. When the penalties for each crime was fixed and placed into one of the Seven Categories, those penalties were fixed based on the amount of time a person served for those offenses from 1918 through 1977 (<u>See</u>: SB-42, <u>cf.</u> Santa Clara Law Review Vol. 17 - The End of the Indeterminate Sentencing Law", and Adult Authorities Rule 75/30 promulgated in 1976 and fixing the term for each prisoner within 90 days after entering CDC's custody; pursuant to <u>In re Rodriquez</u>, 14 Cal.3d 639, **652, 653-54**, n. 18 [122 C.R. 552] (1975)). To further illustrate how terribly wrong the State's Sentencing Laws have become, lets start with when the Legislature enacted SB-42. As declared in the first four of SB-42's Seven Category Sentencing Structure, the Legislature fixed the penalties, which included parole, based on the prisoner's ability to reducing their term by 1/3 "subject to good-time and participation credits" (<u>See</u>: Pen. Code §§ 2930 thru 2932, Stats 1977 C 165 §§ 37-39). Now, under current law as an example, say we have four State prisoners all sentenced to serve 10 years, to wit:

1. <u>Prisoner **A's**</u> ten year sentence subject to SB-42 and Pen. Code § 2931 credits receives one third off the ten year sentence. This means he must serve 7 years plus 3 years on parole for a total of ten years;

2. <u>Prisoner **B's**</u> ten year sentence is subject to Pen. Code § 2933.1. He must serve 8 years plus 3 years on parole for a total of 11 years, one year more than the penalty for his SB-42 Category of Crime;

3. <u>Prisoner **C's**</u> ten year sentence is subject to Pen. Code § 2933 half-time credits and must serve 5 years on his ten year penalty plus 3 years on parole for a total of 8 years, two years less than the ten year sentence;

4. <u>Prisoner **D's**</u> ten year sentence is subject to Pen. Code § 2933 and must serve 5 years before being paroled but instead of serving parole, he is

-2-

deported and serves only 5 years of the ten year penalty.

This may give you some idea of what a mess our sentencing laws are in and this is only the tip of the iceberg. In my own case, I was sentenced to serve the penalty for second degree murder after July 1, 1977 and have now served almost 30 years for a crime that carried 5 to life prior to July 1, 1977 under the ISL., and 5, 6, or 7 years under SB-42. Now, notwithstanding the fact I have performed according to what the voters were told in Prop. 7's title and Pen. Code § 2931, and maintained a clean record, due to the Parole Agency's usurpation of powers expressly repealed from them, I have been imprisoned 15 years beyond my earned release date unconstitutionally (See: Pen. Code § 2931).

As for the subject of parole, 19 other States have done away with parole entirely and without suffering any ill affects. As far as what I have been able to discover, Parole has never stopped a crime from being committed and unless California changes its direction, the taxpayers will continue to suffer needless expenditures in this area; while at the same time, those who are in need of our tax dollars continue to suffer and go without (Note: Through my 1983 trust estate, I pay an exorbitant amount of taxes and have a vested interest in this matter.).

Mr. Doyle, with an abundance of caution, I am sending you this letter along with a copy of the enclosed "LEGAL NOTICE"; I believe, in your individual capacity, you could be held accountable for not fulfilling the duty of implementing our sentences rightly in accordance with the "Rule of Law". Therefore, here is an opportunity to address the problems presented you herein, as well as set forth in my two ongoing cases (See: Ninth Circuit Case No. **09-15756** and Cal. Supreme No. **S187826**). After all, the issues I am raising in both cases concern areas of law you are responsible for dealing with since you became Chairman of the BPH. In short, you should be aware of the legislation that repealed the State's Inde-terminate Sentencing Law along with its purpose and policy, necessary for this kind of uncertain sentencing scheme.

Respectfully submitted,

*Lawrence Remsen*

Lawrence Remsen

CC: Micheal D. Hawkins, Ninth Circuit Court Of Appeals
    Mary M. Schroeder, Ninth Circuit Court of Appeals
    Joyce L. Kennard, Calif. Supreme Court
    Karen Kelly, Attorney at Law
    Carol E. Lavacot, Trustee and Attorney at Law
    File

EXHIBIT - V

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Calif. Correctional Inst.
Post Office Box Num. 608
Tehachapi, CA        93581
Phone No. (661) 422-4402

## LEGAL NOTICE

April 04, 2011

The Legislative Counsel                    Re: Case No.  09-15756
Ms. Diane E. Boyer-Vine
State Capitol, Rm. 3021
Sacramento, CA    95814

Dear Ms. Diane Boyer-Vine:

        Please find enclosed a copy of my opening brief in the above entitled case.
This case concerns my claim that as a Prop. 7 sentenced prisoner, I am having my
sentence unconstitutionally administered in violation of the "Rule of Law". Review
of my claims has been granted by the Ninth Circuit Court of Appeals.

        Please take notice that attached to the brief are addenda dealing with the
way a 1978 Prop. 7 offender is supposed to have his parole date fixed in accordance
with the "Rule of Law". At this point, you might be asking yourself why this case
has anything to do with the office of the legislative Counsel and/or yourself.
The answer is this. Back in 2007, I wrote you on behalf of Mr. Mike Matlock who,
as one of our group was imprisoned at Mule Creek State Prison. At that point in
time, I was handling Mr. Matlock's case along with eight (8) other state prisoners
(Note: you forwarded the claims made on behalf of our group to the BPT.). Since
2007, the issues we are raising have become even more exacerbated, and I have contin-
ued to litigate our claims so that at some point, we may have a decision on the
merits over all the issues decided by a court of law. One of those claims is based
on the 1978 Prop. 7 Initiative Statute whereby we posit that those serving 25 or
15 year penalties are having their sentences unconstitutionally administered by
a state-wide ministerial agency in violation of the "Rule of Law". We claim to
have indisputable factual evidence that the "Parole Agency" — who had its term
fixing powers repealed for abuse — is acting without authority of law. That this
agency has exceeded its authority, and made unauthorized rules and regulations,
that have resulted in the Prop. 7 offender being denied their earned liberty; not-
withstanding that Prop. 7 voters adopted Pen. Code § 2931 as their means for fixing
the offender's parole release date (See: ADDENDUM 1 - Prop. 7's Title; cf. Cal.
Const. Art. II § 8(d); see also: In re Neil, 114 C.A.3d 141, 144 [170 C.R. 452]
(1980); Way v. Superior Court, 74 Cal.App.3d 185, 168-72 [141 C.R. 383] (1977)).

        The enclosed "Opening Brief" speaks for itself, but for the purpose of brevity
I have included in the Addenda the legislative bills obtained from the State Archives
that support our claims. One of these claims is that on Nov. 8, 1978 — when Prop.
7 was ratified by the voters — the Parole Agency only retained the power to make
"Rules and Regulations" to consider the "Possibility" of parole for the SB-42 Cate-
gory Five offender sentenced "FOR LIFE" with the "possibility" of parole (See: ADDEN-
DUM 4 - SB-42 at p. 3; cf. In re Stanworth, 33 C.3d 178, 181-86 [187 C.R. 783]
(1982); People v. Walker, 18 Cal.3d 232, 243-44 [133 C.R. 520] (1976); People v.
Morse, 60 C.2d 631, 637-43 & n.'s 2-5 [388 P.2d 33] (1964)).

-1-

As shown by SB-42's Category Five, there is no question that the penalty "**FOR LIFE**" is now being misrepresented as a 7 year to life sentence by the State Attorney General (See: <u>Swarthout v. Cooke</u> and <u>Matthew Cate v. Elijah Clay</u>, in United States Supreme Court Case No. <u>10-333</u>, filed as a petition for certiorari by the Attorney General's Office on Sep. 2, 2010; <u>see</u>: 562 U.S. ____ (2011)). You may say, "how can we prove our allegations that a constructive fraud was committed by the State Attorney General against the United States Supreme Court?" Simply put, because the Attorney General represented to the United States Supreme Court that Gary Swarthout and Elijah Clay were sentence to serve a "**7 year to life sentence**", when there is no such penalty under California law, the Court was intentionally misled. This shows the Attorney General misled the Court to believe California has a "**7 year to life**" sentence, when, as California's Penal Law History shows, there is not now, nor has there ever been a "**7 year to life**" penalty under California law (See: Attached Opening Brief at <u>ADDENDUM</u> 4 – SB-42 at p. 3; <u>cf</u>. People v. Walker, supra, 18 Cal.3d at pp. 243-44; <u>People v. Morse</u>, surpa, 60 Cal.2d at pp. 637-43; <u>see</u> also: Pen. Code § 190, stats 1977 C 316 § 5).

The position taken in the "<u>Cooke</u>" and "<u>Clay</u>" case by the Attorney General, has resulted in the Court(s) misconstruing the "Legislative Intent" of parole for this kind of crime. For example, the position taken by the Attorney General and Respondents, made it seem that persons sentenced to serve a SB-42 Category Five penalty with a "**possibility**" of parole, had a liberty interest to parole after serving a 7 year minimum in spite of the "<u>straight life</u>" maximum. Logically, it would seem to the Court that a "**7 year to life**" penalty is less than a "**25 or 15 year to life penalty**", which is not the law of the case (See: <u>ADDENDA</u> **1** – Prop. 7 and <u>cf</u>. **2** – AB-476 at p. 17 and **4** – SB-42 at pp. 1-3; <u>cf</u>. People v. Walker, supra, 18 Cal.3d at pp. 243-44; People v. Morse, supra, 60 Cal.2d at pp. 637-43 % n.s 2-5; Note: <u>ADDENDUM</u> 2 – AB-476, codified People v. Walker, supra).

Please take notice that this case won't end with the Ninth Circuit's adjudication, and this brings us to the multiple reasons for this notice. First of all, once this case is adjudicated and we are vindicated, those responsible for failing to adhere to the "Rule of Law" will be held accountable. For example, I was entitled to have been released according to my earned credits back in 1993 (Note: At the time Prop. 7 was ratified by the voters, there were only two (2) ways a prisoner could be released on parole before completion of his sentence:

1.  by earned credits according to Pen. Code § 2931 (See: stats 1977 C 165 § 38; <u>ADDENDUM</u> 3 – Pen. Code § 2931); <u>and</u>

2.  that according to the provisions of Pen. Code § 3041(a)&(b), whether or not a "**FOR LIFE**" sentenced offender has served a long enough penalty for his offense –– Pen. Code § 3041(a) –– and/or whether or not the person poses an unreasonable risk to public safety to be paroled –– Pen. Code § 3041(b) (See stats 1977 C 165 § 45)).

As stated above, there are many reasons for this notice. One reason is to hold accountable those responsible for allowing U.S. citizens to be held beyond their earned release dates at taxpayer's expense. This has caused the loss of hundreds of millions of misused tax dollars as well as the loss of liberty of those adversely affected by their loss of credits; contracted and earned in accordance with Pen. Code § 2931's and its specific performance clause (See: Cal. Const. Art. 1 § 9 <u>cf</u>. Art. 1 § 10(1) of the U.S. Const.). For example, had the voters been presented the question of granting the "Parole Agency" the power to make "Rules

-2-

and Regulations" to hold their so-called suitability hearings for Prop. 7 offenders whose sentence is less than "**FOR LIFE**", it would have had to be a subject presented in Prop. 7 (See: ADDENDUM 1. Prop. 7). Instead, the drafter of Prop. 7 asked the voters to adopt Pen. Code § 2931 as their means for fixing the parole release date of Prop. 7 offenders entitled to earn credits for the "purpose" of early release on parole (See: ADDENDUM 3 - Pen. Code § 2931; cf. ADDENDUM 4 - SB-42 at p. 3, stating the crimes listed in SB-42 Category Four, are the most serious offenses that call for a penalty of less than "life" [emphasis added]).

In accord with the law of the case, at the time Prop. 7 was ratified, there were only two (2) ways a person imprisoned for violating one of the crimes listed in SB-42's first five categories could be paroled; before the completion of their sentences. Prop. 7 did not ask the voters to change or amend SB-42 except for Category Five which was changed from "**life**". Therefore, SB-42 offenders whose crime was listed in one of the first four categories could only be paroled once they had reduced their terms, subject to good-time and participation credits, while those whose crime fell into SB-42 Category Five, can only be paroled according to Pen. Code § 3041(a)&(b) (Note: SB-42 Category Five offenders are **not** eligible to earn Pen. Code § 2931 credits, see People v. Garcia, 115 C.A.3d 85, 112-13 [171 C.R. 169] (1979)). This shows that those whose crime fell into SB-42's Category Five, only have the "possibility" of being paroled according to the findings of the "Parole Agency" pursuant to Pen. Code § 3041(a)(b) (See: stats 1977 C 165 § 42; cf. stats 1977 C 165 §§§ 37-39).

We claim this case proves that the voters of Prop. 7 were **not** asked to repeal any part of the DSL, change its purpose and policy, nor were they asked to enlarge the Parole Agency's powers to include suitability hearings for Prop. 7 offenders (See: Attached brief at ADDENDUM 9 - Originally Filed Action).

As for those persons in State government who have failed and/or refused to act and have allowed the continued bleeding of California's tax dollars, there is no immunity. The way we read the law, once notified, every State official in a position to act, has a fiduciary duty to serve the best interest of their offices and to protect the public trust (See: 42 USC § 1983; R.I.C.O.).

Lastly, there should be no question that there are those now serving in State government who are aware that a fraud has been perpetrated on California taxpayers, Prop. 7's voters, victims of crime, the prisoners families and against the offenders themselves. However, nothing in this case limits the responsibility of each governmental official, elected or appointed, to resolve these matters.

Respectfully submitted,

*Lawrence Remsen*

Lawrence Remsen


CC: Edmund G. Brown Jr. - State Governor
    Kamala Harris - State Attorney General
    Matthew Cate - Director of CDC&R
    Robert Doyle - Chairman of BPH
    Eric Weaver - Attorney at Law
    Carol Lavacot - Trustee/Attorney at Law
    Karen Kelly - Attorney at law
    File

E X H I B I T  -  VI

LEGISLATIVE COUNSEL
Diane F. Boyer-Vine

CHIEF DEPUTIES
Jeffrey A. DeLand
Daniel A. Weitzman

PRINCIPAL DEPUTIES
Joe Ayala
Alvin D. Gress
Kirk S. Louie
William K. Stark

Cindy M. Cardullo
J. Christopher Dawson
Debra Zidich Gibbons
Baldev S. Heir
Michael R. Kelly
Thomas J. Kerbs
Diana G. Lim
Romulo J. Lopez
Robert A. Pratt
Patricia Gates Rhodes
Jeff Thom
Janice L. Thurston
Richard B. Weisberg

DEPUTIES
Stephanie L. Abel
Jennifer M. Barry
Michael P. Beaver
Vanessa S. Bedford
Ann M. Burastero
Noel A. Calvillo
Sergio F. Carpio
William Chan
Matthew F. Christy
Elaine Chu
Byron D. Damiani, Jr
Stephen G. Deitsch
Eric D. Dye
Sharon L. Everett
Krista M. Ferris
Sharon R. Fisher
Lisa C. Goldkuhl
Lauren S. Goshien
Mark C. Guzman
Maria Hilakos Hanke
Amy J. Haydt
Jacob D. Heninger
Stephanie E. Hoehn
Russell H. Holder
Valerie R. Jones
Patricia Hart Jorgensen
Lori Ann Joseph
Michael J. Kerns
Eve B. Krotinger
L. Erik Lange
Felicia A. Lee
Mira A. Macias
Mariana Marin
Anthony P. Marquez
Christine N. Marrueta
Claire Maynard
Fred A. Messerer
William E. Moddelmog
Sheila R. Mohan
Natalie R. Moore
Kendra A. Nielsam
Gerardo Partida
Sue-Ann Peterson
Michael L. Pinkerton
Lisa M. Plummer
Christina M. Renner
Cameron Rhudy
Robert D. Roth
Michelle L. Samore
Amy E. Schweitzer
Melissa M. Scolari
Aaron D. Silva
Jessica L. Steele
Mark Franklin Terry
Joanna E. Varner
Joyce Wallach
Bradley N. Webb
Rachelle M. Weed
Armin G. Yazdi
Jenny C. Yun
Jack Zorman

LEGISLATIVE
COUNSEL
BUREAU

A TRADITION OF TRUSTED LEGAL SERVICE
TO THE CALIFORNIA LEGISLATURE

LEGISLATIVE COUNSEL BUREAU
925 L STREET
SACRAMENTO, CALIFORNIA 95814
TELEPHONE (916) 341-8000
FACSIMILE (916) 341-8020
INTERNET WWW.LEGISLATIVECOUNSEL.CA.GOV

Friday 15, 2011

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L/CCI
California Correctional Inst.
PO Box 608
Tehachapi, CA 93581

Dear Mr. Remsen:

We have received your letter requesting information or research assistance, but are unable to fulfill your request. The Legislative Counsel Bureau is generally authorized to provide services only to Members of the Legislature and other designated entities of state government.

We have been asked in such cases to refer you to your prison librarian, as most have arrangements for reference assistance, on-site publications, and interlibrary loan materials.

We hope this is helpful to you.

Very truly yours,

Legislative Counsel

By
Dragomir Cosanici
Librarian

cc: Paul Allione – Attorney at Law
    Jerry Allione – Trustee

Lawrence Remsen, C-67186
Unit 2, Dorm 6-46L / CCI
Post Office Box Num. 608
Tehachapi, CA        93581
Phone No. (661) 822-4402

July 10, 2011

United States District Court         Re: Case No. **CO-1-1351** TEH and **S-90-520** LKK JFM
for the Northern District
<u>Attn</u>: Clerk of the Court
<u>U.S.</u> Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102-3483

Dear Clerk of the Court:

    Please find enclosed our "<u>LETTER BRIEF</u>" along with Addenda and two Attach-
ments.  We have included one extra front page copy of the brief along with a
SASE that we are requesting be stamped as received/filed and returned to us in
the stamped envelope we have provided for that purpose.

    Thank you in advance for your help in the above matter.

Sincerely yours,

Lawrence Remsen

CC: File

C
O
P
Y

Eduardo Alvarez, G-16059
David E. Anderson, T-41965
Fernando Arreola, J-49675
Jermain Davis, J-16857
Eric Einsmann, V-35695
Gerardo Estrada, D-58882
John D. Martin, J-87352
Edward J. Meister, G-35958
Lawrence Remsen, C-67186
Ricky Williver, V-08930
California Correctional Institution
Post Office Box Num. 608
Tehachapi, CA        93581
Phone No. (661) 822-4402

**LETTER BRIEF:**

**NOTICE OF INTERVENTION ACTION IN CASE NO'S
C01-1351 TEH AND CASE NO. S-90-520 LKK JFM**

Re: Case No. **C01-1351** TEH and 9th Cir. No.
**09-15756**; Cf. Sup.Ct. **09-1233** (5/23/11).

July 10, 2011

The Honorable T.E. Henderson
Senior District Judge
450 Golden Gate Avenue
San Francisco, CA 94102-3483

The Honorable T.E. Henderson:

Greetings.  We hope this finds you well and serving the United States Judi-
cial System in the best interests of our Country, just as you have for the past
four decades.

We are writing you today regarding the above entitled cases and to explain
why we have not pursued our claims after we filed our Aug. 7, 2007 (POS-Date)
arguments and documents in support of the "Plata" class of inmate in Case No.
**C01-1351** (See: Addendum 1 - Notice on minimum space for imprisonment of State
Prisoners).

To begin with, we know the "Three Judge Panel" in this case, has reviewed
thousands of documents, so we will get straight to the point.  Thirty days from
receipt of this "letter brief", as group of California prisoners claiming similar-
ly situated interests in Case No's C01-1351 and S-90-520, we intend to file a
motion asking for "declarative and injunctive" relief on our showing that we
are being confined under unconstitutional and inhumane conditions that violate
our rights to like pains and penalties as guaranteed by the Fourteenth Amendment
to the United States Constitution.

For your information, we have pursued our interests and continued our inves-
tigations since Aug. 1, 2007, into how and why the State's prison population
has morphed into the unacceptable and extreme overcrowding conditions we are
experiencing today (See: Addendum 1, supra - 2007 Notice of claims by extended
class, without exhibits).

In addition to the above, this letter brief is to notice the "Three Judge
Court" of our intended prospective action where we intend a showing that:

1. the parties now representing the "class of prisoners" in this matter
   have failed to represent State prisoners in a way that would invoke this

-1-